Guido Saveri (22349)
    *guido@saveri.com*
R. Alexander Saveri (173102)
    *rick@saveri.com*
Geoffrey C. Rushing (126910)
    *grushing@saveri.com*
Cadio Zirpoli (179108)
    *cadio@saveri.com*
Travis L. Manfredi (281779)
    *travis@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for the Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. CV-07-5944-SC<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>ALL DIRECT PURCHASER ACTIONS | **DECLARATION OF R. ALEXANDER SAVERI IN SUPPORT OF DIRECT PURCHASER MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Date:          October 23, 2015<br>Time:         10:00 a.m.<br>Judge:       Hon. Samuel Conti<br>Courtroom: 1 |

I, R. ALEXANDER SAVERI, declare:

1.      I am the managing partner of Saveri & Saveri, Inc. ("S&S"). I submit this declaration in support of Direct Purchaser Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses. Except as otherwise noted, I make this declaration of my own personal knowledge, and if called upon to do so, could and would testify competently to the facts contained herein.

2.      I, or members of my firm, have been involved in almost every aspect of this case since its inception. On May 9, 2008, the Court appointed founding partner Guido Saveri and S&S as interim lead counsel for the Direct Purchaser Plaintiff ("DPP") class. The background and experience of S&S and its attorneys and paralegals are summarized in the *curriculum vitae* attached hereto as Exhibit 1.

## I.      SAVERI & SAVERI, INC. ATTORNEYS' FEES AND EXPENSES

3.      Attached hereto as Exhibit 2 is my firm's total hours and lodestar, computed at historical rates, for the period of May 9, 2008 through July 31, 2015 (the "Relevant Period").[1] This period reflects the time spent after the appointment of lead counsel in this litigation. The total number of hours spent by S&S during this period of time was 30,107.80, with a corresponding lodestar of $14,073,846.00. This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm. The lodestar amount reflected in Exhibit 2 is for work performed by my law firm for the benefit of the Class.

4.      The hourly rates for the attorneys, paralegals and law clerks at my firm included in Exhibit 2 are the usual and customary hourly rates charged by S&S.

5.      Attached hereto as Exhibit 3 is a chart outlining the itemized costs and expenses incurred by S&S. My firm has expended a total of $357,573.90 in unreimbursed costs and expenses in connection with the prosecution of this litigation. They were incurred on behalf of DPPs by my firm on a contingent basis, and have not been reimbursed. The expenses incurred in this action are reflected on the books and records of my firm. These books and records are prepared from expense

---

[1] The Relevant Period for DPP firms other than S&S is May 9, 2008 through July 31, 2014.

vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

6. S&S contributed a total of $150,000.00 in assessments to the Litigation Fund.

7. I have reviewed the time and expenses reported by my firm in this case which are included in this declaration, and I affirm that they are true and accurate.

## II.   DPP COUNSEL ATTORNEYS' FEES AND EXPENSES

8. Attached hereto as <u>Exhibit 4</u> is a summary of the total hours, lodestar and expenses of all DPP Counsel that participated in the joint prosecution of this litigation. The total number of hours spent by all DPP Counsel, including S&S, during the Relevant Period was 95,229.33, with a corresponding lodestar of $43,335,517.50. All firms were instructed to only submit time and lodestar for work done during the Relevant Period (after the appointment of class counsel on May 9, 2008). All firms were instructed to cease work on the case in January, 2014, when the settlement with the last Defendant—Samsung SDI—was reached. The bulk of the work performed after this date related to obtaining Court approval of the last settlements and related issues. S&S performed the vast majority of this work. The declarations of all counsel seeking reimbursement are filed separately with this motion. The lodestar does not include time spent by counsel before the appointment of interim lead counsel. It therefore excludes substantial work by counsel in connection with their pre-filing investigation of the case, the JPML proceeding, and the organization of counsel. It also does not include substantial time spent by counsel relating to this application for a fee award and reimbursement of expenses.

9. <u>Exhibit 4</u> attached hereto contains a compilation of each firm's unreimbursed costs and expenses in the amount of $941,224.82. These costs and expenses are supported by each firm's separate declaration in support of fees and costs. The separate categories and totals are as follows:

| CATEGORY | AMOUNT |
|---|---|
| Court Fees (filing, etc.) | $6,352.59 |
| Experts/Consultants | $62,934.71 |
| Federal Express | $14,339.14 |
| Transcripts (Hearing, Deposition, etc.) | $7,467.22 |
| Computer Research | $245,126.87 |

| CATEGORY | AMOUNT |
|---|---|
| Messenger Delivery | $788.60 |
| Photocopies – In House | $140,085.84 |
| Photocopies – Outside | $12,083.24 |
| Postage | $1,331.39 |
| Service of Process | $22,789.36 |
| Telephone/Telecopier | $35,282.68 |
| Travel (Airfare, Ground Travel, Meals, Lodging, etc.) | $392,643.18 |
| | |
| **TOTAL:** | **$941,224.82** |

10.     The Chairman established a litigation fund to finance the joint prosecution of this litigation against the Defendants ("Litigation Fund"). Counsel, including S&S, contributed a total of $990,000.00 in assessments to the Litigation Fund. A total of $986,167.30 in necessary litigation costs and expenses was paid from the Litigation Fund. Attached hereto as <u>Exhibit 5</u> is an accounting of these costs and expenses. These amounts are supported by invoices which are available to the Court upon request. They include $512,231.69 for Experts, $242,053.26 for electronic document database, $7,387.64 for mediations, $167,727.20 for the special master, $11,771.14 for transcripts, and $44,996.37 for translation services. ($512,231.69 + $242,053.26 + $7,387.64 + $167,727.20 + 11,771.14 + $44,996.37 = $986,167.30) These expenses were reasonable and necessary for the prosecution of this action and are customarily approved by courts as proper litigation expenses. None of these expenditures has been included for reimbursement in any of the individual fee and expense declarations of any individual DPP Counsel. These expenses have been entirely financed by contributions from DPP Counsel. No reimbursement has been made for any of these expenses.

11.     The Court permitted DPP Counsel to withdraw funds from some of the escrow accounts for future litigation costs. *See* Dkt. Nos. 1506, 1507 and 1833. The Chairman established an escrow account to hold these withdrawals ("Future Expense Fund"). A total of $3,000,000.00 was paid into the Future Expense Fund from the settlements with Defendants. A total of $2,867,395.32 in necessary litigation expenses was paid from the Future Expense Fund for which DPPs now seek the Court's approval. Attached hereto as <u>Exhibit 6</u> is an accounting of the Future

Expense Fund. The Future Expense Fund was used to pay $2,501,340.45 in expert bills, $18,916.94 to JAMS Inc. for Special Master Charles Legge, $76,336.78 for Special Master Vaughn R. Walker, $147,073.10 for deposition transcripts, $82,086.80 for certified translations, and $41,641.25 in database management services ($2,501,340.45 + $18,916.94 + $76,336.78 + $147,073.10 + $82,086.80 + $41,641.25 = $2,867,395.32). These expenses were reasonable and necessary for the prosecution of this action and are customarily approved by courts as proper litigation expenses. None of these expenditures has been included for reimbursement in any of the individual fee and expense declarations of any individual DPP Counsel. These expenses have been entirely financed by the Future Expense Fund.

12.    Total expenses incurred by the DPPs for the prosecution of this case are $4,794,787.44. These expenses are calculated from the total of: (1) $941,224.82 in expenses and cost incurred by each firm (Exhibit 4); (2) $986,167.30 in Litigation Fund expenses (Exhibit 5); and (3) $2,867,395.32 in Future Expense Fund expenses (Exhibit 6) ($941,224.82 + $986,167.30 + $2,867,395.32 = $4,794,787.44).

13.    As set forth above, the total expenses incurred by Counsel in this litigation are $4,794,787.44 and reflect: (i) document management system and database costs of $283,694.51; (ii) mediation costs of $83,724.42; special masters costs of $186,644.14; (iv) translation services of $127,083.17; (v) Court filing fees and costs of $6,352.59; (vi) payments to experts of $3,076,506.85; (vii) federal express costs of $14,339.14; (viii) transcript costs of $166,311.46; (ix) online legal and factual research (e.g., LexisNexis and Westlaw) of $245,126.87; (x) messenger and delivery costs of $788.60; (xi) in-house copy charges (capped at 20 cents per page) of $140,085.84; (xii) professional copy charges of $12,083.24; (xiii) postage charges of $1,331.39; (xiv) service of process charges of $22,789.36; (xv) telephone and facsimile charges of $35,282.68; and (xvi) travel and meal charges of $392,643.18. These expenses were reasonable and necessary for the prosecution of this action and are customarily approved by courts as proper litigation expenses.

### III.    SAVERI & SAVERI, INC. AND DPP COUNSEL WORK PERFORMED

14.     S&S has prosecuted this litigation solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting claims against the Defendants. While S&S devoted its time and resources to this matter, it has foregone other legal work for which it would have been compensated.

15.     During the pendency of the litigation, the work of S&S and DPP Counsel included, without limitation, the following major tasks:

- Conducted an initial investigation of this case to develop the theories and facts that formed the basis of the allegations against Defendants. The research included a review of publicly available information regarding the CRT industry and consultation with industry experts and economists prior to the filing of the complaints;

- Drafted a comprehensive consolidated amended complaint detailing the Defendants' violations of the antitrust laws;

- Conducted exhaustive legal research regarding the class's claims and the defenses thereto;

- Successfully defended, over the course of nearly a year, a set of hard-fought motions to dismiss the complaint before the Special Master and this Court;

- Successfully defended, over the course of a year, a Summary Judgment motion by which the Defendants sought to deny any recovery for Finished Products, which constitute the majority of DPPs purchases;

- Propounded discovery that—after extensive research, negotiations with defendants, and motion practice—resulted in the identification of dozens of defendant-employee custodians and the production of millions of documents, as well as voluminous electronic transactional data;

- Reviewed and analyzed these documents (many of which were in foreign languages and required translation), as well as the transactional data;

- Propounded several sets of interrogatories on defendants and issued Rule 30(b)(6) deposition notices;

- Cooperated with the Indirect Purchaser Plaintiffs ("IPPs") and the Direct Action Plaintiffs ("DAPs") to take over one hundred depositions of employees and officers of Defendants;

- Contended with near-constant discovery disputes and motions to compel;

- Responded to Defendants' numerous document requests and interrogatories and prepared and defended the depositions of the class representatives;

- Prepared a motion for class certification and supporting materials, including over one hundred exhibits and the expert report of Dr. Jeffrey Leitzinger;

- Consulted extensively with experts on issues pertaining to liability, class certification,

and damages throughout the course of the Action and defended the deposition of DPPs' expert Dr. Leitzinger;

- Engaged in extensive settlement negotiations with each of the seven Defendant groups; and

- Documented each settlement and did the substantial work necessary to obtain final approval of each settlement—e.g., drafted and filed motions for preliminary and final approval, drafted class notices, and worked with the settlement administrator to provide notice to the class of each settlement.

16.     This case is notable for and characterized by the complex issues it has presented and the tenacity and creativity with which Defendants—all possessing enormous resources and represented by law firms among the best and largest in the world—have litigated those issues. Defendants have steadfastly opposed DPPs on many grounds. From the outset of the case, Defendants have contended that DPPs are entitled to little or no recovery because, *inter alia*, (1) the conspiracy was limited to Asia and did not affect the United States; (2) the FTAIA barred DPPs case; (3) DPPs lacked standing because the conspiracy did not extend to the Finished Products (i.e., computer monitors and televisions) most had purchased; (4) the vast majority of DPPs claims were barred by the statute of limitations; (5) the conspiracy involved only CDTs; and (6) that the conspiracy, if it existed, caused little or no damage to DPPs. In addition, most defendants asserted that they were not conspirators or had withdrawn from the conspiracy long ago. At every stage of this case, Defendants asserted these arguments as a basis to dismiss all or part of the case, to limit damages, or to deny or limit discovery. DPPs battled Defendants at every step, but the battles were difficult and drawn out. For example, Defendants' motions to dismiss ultimately entailed over 500 pages of briefing and took over a year to resolve. Defendants' summary judgment motion to eliminate Finished Products from the case—which would have gutted DPPs' case—also involved hundreds of pages of briefing and took almost a year to finally resolve.

17.     S&S managed the litigation effectively and efficiently. Among other things, work was assigned by S&S among the various firms to avoid duplication; as required by CMO 1, counsel kept contemporaneous time records and periodically reported their time to S&S; and wherever possible, DPPs coordinated with the Indirect Purchaser Plaintiffs ("IPPs") and the Direct Action Plaintiffs ("DAPs") to avoid duplication of effort.

6

**A.      Commencement of the Case**

18.      This multidistrict litigation arises from an alleged worldwide conspiracy to fix prices of Cathode Ray Tubes ("CRTs"). CRTs are the primary components of CRT televisions and computer monitors. The alleged conspiracy involved some of the largest companies in the world—Samsung SDI, Panasonic, LG, Toshiba, Hitachi, and Philips.

19.      After the United States Department of Justice ("DOJ") announced its investigation into the conspiracy in November of 2007, twenty direct purchaser plaintiff class action complaints were filed alleging a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15.[2]

20.      Plaintiffs commenced proceedings before the JPML, and on February 15, 2008, the JPML transferred all related actions to this Court. Dkt. No. 122. On May 9, 2008, the Court appointed Saveri & Saveri, Inc. ("S&S") Interim Lead Class Counsel for the putative nationwide class of direct purchasers. Dkt. No. 282. The Court's order tasked S&S with making sure the DPP action was prosecuted in an efficient manner, and required, among other things, the periodic collection of time and expenses from Class Counsel, and coordination of the work of Class Counsel.

21.      During this time, DPPs effected service of their complaints on Defendants. As to several, plaintiffs were required to utilize the procedures for international service of process set forth in the Hague conventions. This was a lengthy, time consuming, and, in certain instances, expensive endeavor requiring the appointment of a special international process server.

**B.      The DOJ Intervenes**

22.      On February 21, 2008, the DOJ moved to intervene in the litigation for the purpose of seeking a stay of the action pending its own investigation. As a result of the DOJ's request, with

---

[2] On February 10, 2009 and November 9, 2010, the DOJ announced the indictment of executives of Defendants Samsung SDI, LG Electronics and Chunghwa Picture Tubes for price fixing Cathode Display Tubes ("CDTs") used in computer monitors. Ultimately, the DOJ secured only a single conviction. Defendant Samsung SDI admitted to participation in a conspiracy to fix the prices of CDTs between January 1997 and March 2006. Amended Plea Agreement, *U.S. v. Samsung SDI Co.*, Case No. 11-cr-162-WHA (N.D. Cal. Aug. 8, 2011) (Dkt. No. 29). There were no indictments or guilty pleas with regard to Cathode Picture Tubes ("CPTs") used in televisions.

the exception of limited written discovery—i.e., interrogatories—the Court stayed discovery in the action. Ultimately, document discovery was stayed, for over two years, until March 8, 2010. Depositions of Defendants and their employees were stayed until March 11, 2011. Dkt. No. 798.

23.    S&S, and other DPP counsel, negotiated the terms of the stay with the DOJ and other parties.

**C.    DPPs File Their Consolidated Complaint; Defendants File Motions To Dismiss**

24.    On March 16, 2009, Plaintiffs filed their Consolidated Amended Complaint ("CAC") alleging an over-arching horizontal conspiracy among the Defendants and their co-conspirators to fix prices, restrict production, and to allocate markets and customers for the sale of CRTs and Finished Products in the United States from March 1, 1995 through November 25, 2007 (the "Class Period"). The CAC alleged, *inter alia,* that Plaintiffs and members of the Class were direct purchasers of CRTs and/or CRT Finished Products from Defendants and/or their subsidiaries and were injured because they paid more for CRTs and/or CRT Finished Products than they would have absent Defendants' illegal conspiracy. CAC ¶¶ 213–221. Plaintiffs sought, *inter alia*, treble damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. §§ 15 and 22. CAC at p. 47.

25.    S&S, with substantial assistance of other DPP firms, took the lead in drafting the CAC. S&S, and other DPP firms, also spent substantial time reviewing documents and other materials, including documents obtained as part of the Chunghwa settlement, as a basis for the allegations of the CAC.

26.    On May 18, 2009, beginning a process that would take almost a year to complete, Defendants filed a massive set of motions to dismiss the CAC. Defendants filed a joint motion, and nine individual motions. Their total briefing included 197 pages of argument and hundreds of pages of supporting material. *See* Dkt. Nos. 463–493. Defendants argued, *inter alia*, that the CAC failed to allege a plausible conspiracy, that the FTAIA barred DPPs' action, that DPPs lacked antitrust standing, and that DPPs had failed to allege fraudulent concealment of the conspiracy sufficient to avoid the bar of the statute of limitations.

27.    DPPs filed their opposition to Defendants' motions—118 pages of argument, along with over 250 pages of supporting declarations and other material—on August 3, 2009 (Dkt. Nos.

SAVERI DECL. ISO DPPs' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; Case No. 07-5944-SC

530, 531) and August 31, 2009 (Dkt. No. 537). Defendants' reply briefs totaled 132 pages of argument and hundreds more pages of supporting material. *See* Dkt. Nos. 545–561.

28.    A full-day hearing was held on October 5, 2009.[3] On February 5, 2010, Judge Legge issued his Report and Recommendation ("R&R") denying Defendants' motions. Dkt. No. 597. Defendants objected to virtually all of Judge Legge's recommendations. The parties filed briefs in support and in opposition to adoption of the R&R (approximately 80 pages of argument) (*See* Dkt. Nos. 605–641), and the Court conducted another hearing on March 18, 2010. Dkt. No. 656. On March 30, 2010, this Court adopted Judge Legge's ruling and recommendation granting in part and denying in part Defendants' Motions to Dismiss. Dkt. No. 665.

29.    Finally, on April 9, 2010, Defendants moved to certify the Court's order for interlocutory appeal. Dkt. No. 667. DPPs filed their opposition on April 27, 2010. Dkt. No. 673. The matter was heard on April 30, 2010. Dkt. No. 711. The Court denied the motion to certify on that date. *Id.*

30.    S&S, with the substantial assistance of other DPP firms, took the lead in preparing DPPs' briefing in regard to these motions. S&S drafted substantial parts of DPPs briefs. S&S assigned other parts of the briefing to other DPP counsel, but S&S spent substantial time editing and incorporating the drafts of other counsel into the final briefing. S&S attended the hearings and argued the motions, along with other DPP counsel.

**D.    Defendants' Rule 11 Motion**

31.    On April 12, 2011, certain Defendants moved to strike allegations of a finished product conspiracy from the CAC pursuant to FRCP 11. Dkt. No. 880. DPPs' opposition, filed under seal on April 20, 2011 (Dkt. No. 896) ("Rule 11 Opp."), explained that the motion was meritless for several reasons, namely: (1) DPPs' allegations that the conspiracy embraced Finished Products were supported by evidence and, therefore, not "baseless"; and (2) DPPs had conducted a reasonable investigation prior to filing the complaint. Rule 11 Opp. at 9–24. Defendants, therefore, did not satisfy either of the requirements of a Rule 11. DPPs also explained that, among other

---

[3] Defendants' motions to dismiss the Indirect Purchaser Plaintiffs' ("IPPs") complaint were also argued.

things, Defendants' motion was procedurally improper: Defendants had not properly followed the required "safe harbor" provisions, the motion was filed before DPPs' allegations—which this Court had already upheld as "plausible"—had been determined to lack merit, and Defendants were seeking to use the motion as, essentially, a summary judgment motion before DPPs had a chance to conduct meaningful discovery. *Id.* at 9.

32.     After a hearing on May 26, 2011, however, and despite finding that DPPs' had conducted a reasonable inquiry prior to filing their complaint, the Special Master recommended that the motion be granted. Dkt. No. 947. The Special Master recommended that DPPs' allegations of a finished products conspiracy be stricken from the complaint and certain discovery be disallowed, but did not recommend that DPPs be otherwise sanctioned. *Id.* at 14.

33.     On June 29, 2011, DPPs objected to the Special Master's R & R. Dkt. No. 957. DPPs explained, *inter alia*, that the Special Master's finding that they had conducted a reasonable investigation compelled the denial of the motion, that he had failed to credit the evidence adduced by DPPs, had misunderstood well-established antitrust law, and had applied an improper Rule 11 standard to conclude that DPPs' allegations were baseless. Defendants asked the Court to adopt the R& R the same day. Dkt. No. 953.

34.     The Court set the matter for hearing on September 2, 2011. Dkt. No. 968. Prior to the hearing, on August 26, 2011, the parties entered into a stipulation resolving the matter. It provided, among other things, that the Special Master's recommended finding that Plaintiffs violated Rule 11 be vacated, and that DPPs withdraw their allegations of a conspiracy encompassing Finished Products and certain discovery. Importantly, the stipulation preserved DPPs' damage claims based on their purchases of Finished Products. Dkt. No. 996.

35.     S&S, with the substantial assistance of other DPP firms, took the lead in preparing DPPs' briefing in regard to this motion and the objections to the Special Master's R&R. S&S attended the hearing and argued the motion, along with other DPP counsel.

**E.     Finished Products Summary Judgment Motion**

36.     On December 12, 2011, Defendants moved for Summary Judgment against Plaintiffs who purchased CRT Finished Products only. Dkt. No. 1013. Defendants contended, as

SAVERI DECL. ISO DPPs' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; Case No. 07-5944-SC

they had in their motions to dismiss, that DPPs could not bring claims under the federal antitrust law based on purchases of Finished Products containing price fixed CRTs. *Id.* at 5–12.

37. On February 24, 2012, DPPs filed their opposition under seal (*see* Dkt. No. 1057) arguing that, as the Court had noted in its Order on Defendants' motion to dismiss, purchasers of finished products containing price fixed goods had antitrust standing under *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980). In addition, DPPs submitted a massive declaration collecting evidence that each of the class representatives Defendants had moved against had purchased Finished Products from entities "owned or controlled" by an alleged conspirator. *See* Dkt. No. 1057. DAPs also opposed the motion. Dkt. No. 1056. The motion was heard on March 20, 2012.

38. On May 31, 2012, the Special Master issued his Report and Recommendation that the Court grant Defendants' motion for summary judgment and that judgment be entered against certain plaintiffs that purchased CRT Finished Products from defendants. Dkt. No. 1221. The parties filed briefs in support and in opposition to adoption of the R&R. On November 29, 2012, the Court declined to adopt the R&R, and ruled that the "Ownership and Control Exception" created in *Royal Printing*, 621 F.2d 323, and confirmed by the Ninth Circuit in *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012), conferred standing on Plaintiffs to sue "insofar as they purchased [Finished Products] incorporating the allegedly price-fixed CRTs from an entity owned or controlled by any allegedly conspiring defendant" (Dkt. No. 1470 at 16).

39. Finally, some Defendants asked the Court pursuant to 28 U.S.C. section 1292(b) to certify the Order for interlocutory appeal. Dkt. No. 1499. DPPs filed an opposing brief. Dkt. No. 1525. The Court denied defendants' request on February 13, 2013. Dkt. No. 1569.

40. S&S, with the substantial assistance of other DPPs firms, took the lead in preparing DPPs' briefing in regard to these motions. S&S drafted substantial parts of DPPs briefs. S&S assigned some of the briefing to other DPP counsel, but spent substantial time editing the final briefing. S&S attended the hearings and argued the motions, along with other DPP counsel.

**F.   Discovery**

41. Discovery in this action was extensive and hard-fought. Defendants opposed DPPs

11

at almost every step. Ultimately, DPPs—in cooperation with the IPPs and the DAPs—obtained millions of documents, took over one hundred depositions, and obtained important information via interrogatories and other discovery devices.

42.     S&S managed the overall discovery process as well as doing much of the ground level work. S&S assigned a DPP firm or firms to have the primary responsibility for obtaining discovery from a single defendant. This firm was charged with drafting discovery, identifying potential document custodians and witnesses, and negotiating with that Defendant regarding the myriad issues attendant to discovery in a complex case such as this one. S&S attorneys were charged with supervising this process, to ensure, among other things, that DPPs' positions on the various issues were coordinated and consistent. In this role, S&S attorneys participated in most of the negotiations with defense counsel. S&S performed a substantial amount of ground level work as well: S&S attorneys took depositions, drafted and propounded discovery requests, negotiated extensively with Defendants regarding discovery and took the lead in briefing and arguing discovery motions. S&S attorneys and paralegals also played a central role in the analysis of documents and other discovery, including the review and analysis of foreign language documents.

### 1.     Requests for Production of Documents and Interrogatories

43.     On March 12, 2010, after the partial stay of discovery was lifted, Plaintiffs propounded their Second Set of Document Requests and First Set of Interrogatories. Among other things, Defendants sought to limit the temporal and geographic scope of the discovery, and sought to avoid searching the files of some or all of their subsidiaries or related companies. DPPs, along with the IPPs, engaged in exhaustive separate negotiations with each Defendant group. Eventually, Defendants agreed to produce documents from the files of designated document custodians. These negotiations, however, were lengthy and difficult, and required motion practice before the Special Master. Ultimately, Defendants produced millions of documents.

44.     DPPs, with the IPPs, and DAPs, also spent substantial time obtaining Defendants' transactional data and negotiating a protocol relating to ESI. Dkt. No. 828.

45.     A substantial percentage of the documents produced in this action were in Korean, Chinese, or Japanese. DPPs utilized foreign language attorneys and paralegals both to review and

analyze these documents, as well as to translate working copies of important documents. In addition, DPPs, along with the other parties, worked with commercial translators in order to produce "certified translations" of thousands of evidentiary documents. Ultimately, all parties negotiated a Translation Protocol (as part of the larger discovery protocol). Dkt. No. 1128. This was a laborious process that involved, first, a proposed translation, then an opportunity for other parties to object, then a meet and confer process, and, ultimately, a procedure for the Court to resolve disputes. The protocol applied to all translated documents used at depositions, attached to motions, or which a party intended to use at trial. After the protocol was established, negotiation with the Defendants about translations was virtually continual. S&S attorneys participated extensively in this process.

46.     DPPs also sought and obtained access to documents produced in the TFT-LCD action. Certain Defendants were also defendants in that case, and had produced documents relevant to CRTs. S&S & DPPs, along with the IPPs, negotiated a stipulation with regard to the discovery of such documents, and spent substantial time identifying relevant LCD documents, and negotiating with Defendants regarding their production.

47.     DPPs and IPPs also obtained documents from the bankrupt joint venture between Defendants LG and Philips, LPD. DPPs negotiated with the bankruptcy trustees in Hong Kong and the Netherlands and took possession of 122 boxes of hard copies of LPD documents and some LPD servers containing massive amounts of electronic data and documents. S&S and DPPs spent substantial time reviewing and analyzing these documents and electronic files.

48.     DPPs, along with IPPs and others, also reviewed thousands of boxes of documents located in storage facilities around the world, including Finley, Ohio (LPD USA); Eindhoven, Netherlands (Philips); Buffalo Grove, Illinois (Toshiba); and Secaucus, New Jersey (Panasonic). DPPs spent substantial time reviewing and analyzing these documents.

### 2.     Depositions

49.     Beginning in June of 2012, after meeting and conferring with Defendants regarding the scope and topics of 30(b)(6) witnesses, Plaintiffs began taking 30(b)(6) depositions of Defendants. Beginning in December of 2012, Plaintiffs began taking merits depositions. DPPs

coordinated with DAPs and IPPs in the taking all of these depositions to avoid duplication of effort. Generally, one plaintiffs' firm representing the DAPs, IPPs or DPPs was designated to take the lead with regard to preparing for and taking each deposition. The non-lead plaintiffs would assist, as necessary, in the preparation for the depositions and the examination of the witnesses. Over one hundred depositions were taken. DPPs took the lead in over twenty-five depositions, and assisted the lead attorneys in most of the rest. DPPs participation in the depositions of some Defendants diminished after DPPs had settled with them.

### 3. Discovery of Plaintiffs

50. DPPs also spent substantial time responding to discovery propounded by Defendants. DPPs worked with each of the Class Representatives to collect and provide discoverable information and documents, object where appropriate, and meet and confer with Defendants. DPPs also briefed several discovery motions in connection with Defendants' discovery demands.

51. Defendants propounded eight sets of interrogatories (78 separate interrogatories, including contention interrogatories) and nine sets of document requests (75 separate document requests). Each of the ten Class Representatives participated in the collection of responsive hard copy documents and identification of ESI sources likely to contain responsive data. In total, the Class Representatives produced over twelve thousand pages of documents. These document requests required the Class Representatives to search for and produce both hard copy and, in certain circumstances, electronic documents from multiple sources.

52. The Class Representatives were also deposed. DPPs spent substantial time preparing each Class Representative for their deposition, and defending the depositions.

### 4. Discovery Motions

53. DPPs briefed, along with the IPPs where there was a common interest, numerous discovery motions. These included:

- Motion for discovery against Hitachi regarding "CRT Products" (*see* Dkt. No. 809);
- Motion to compel Hitachi to respond to discovery concerning foreign activities and data (*see id.*);

- Motion to compel Chunghwa to produced document translations (*see* Dkt. No. 810);

- Motion to compel Plaintiffs to produce evidence for Plaintiffs' allegations of conspiracy regarding "CRT Products" (*see id.*);

- Motion regarding designation of custodians (*see* Dkt. No. 877);

- Motion regarding last contact information of former employees (*see id.*);

- Motion regarding back-up tapes (*see id.*);

- Motion regarding search terms (*see id.*);

- Motion to compel discovery from Toshiba re specific custodians (*see* Dkt. No. 1149); and

- Motion for further discovery from the Hitachi defendants re transactional data, organizational charts, pass-through, and back-up taps (*see* Dkt. No. 1208).

**G.      Motion for Class Certification**

54.      DPPs filed a motion for class certification against Defendants Hitachi and Samsung SDI on May 14, 2013. Dkt. No. 1674. The motion was supported by the report of DPPs' expert economist, Dr. Jeffrey Leitzinger and a declaration of counsel attaching over 130 exhibits. DPPs' moving papers comprised in excess of 2,600 pages. Defendants filed their nearly fifty-page opposition to class certification, which included hundreds of pages of exhibits, as well as a 176 page expert report critiquing Dr. Leitzinger's report, on September 11, 2013. *See* Dkt. No. 1921. DPPs filed their reply brief and Dr. Leitzinger's rebuttal report on November 11, 2013. Dkt. Nos. 2208-3, 2208-4.

55.      DPPs spent an enormous amount of time drafting their motion for class certification, analyzing relevant evidence, working with Dr. Leitzinger and his associates, preparing Dr. Leitzinger for deposition and defending his deposition, and analyzing and responding to the Defendant's opposition papers and expert report.

56.      S&S took the lead with regard to this motion. S&S was the primary drafter of the motion papers and the primary liaison with Dr. Leitzinger and his associates.

57.      After the motion was filed, DPPs reached settlements with both Hitachi and Samsung SDI. DPPs reached agreement with Samsung SDI after the matter was fully briefed.

**H.      Settlements**

58.      DPPs spent substantial time in settlement negotiations throughout the litigation.

Ultimately, DPPs reached settlements with all of the Defendants who appeared in the action. S&S also took the lead with regard to settlement negotiations. S&S attorneys participated in every negotiation, attended every mediation session, and were generally the primary authors of every mediation statement. Other DPP counsel provided substantial assistance. S&S attorneys were also responsible for the motions for preliminary and final approval, class notice, and other matters necessary to obtain court approval of the settlements.

59.     DPPs first settled with Chunghwa, the amnesty applicant. The parties executed an agreement in April, 2009 after several months of negotiation. The settlement required Chunghwa to pay the class $10 million and to cooperate with DPPs in the prosecution of the case against the rest of the Defendants.

60.     DPPs next settled with Philips. The parties reached an agreement in principle in January, 2012, and executed a written agreement in February, 2012, after almost a year of negotiations. The settlement required Philips to pay the class $15 million (after an opt-out reduction) and cooperate with DPPs in the prosecution of the case against the remaining Defendants.

61.     DPPs moved for preliminary and final approval of the Chunghwa and Philips settlements in the summer of 2012. The Court certified settlement classes, notice was given to the classes, and, on October 19, 2012, the Court granted final approval of the two settlements.

62.     DPPs' next settled with Panasonic. The parties executed a settlement agreement in June, 2012 after several months of negotiation. The settlement required Panasonic to pay the class $17.5 million and to cooperate with DPPs in the prosecution of the case against the rest of the Defendants. After DPPs moved for preliminary and final approval of the settlement, certification of a settlement class and notice to the class, the Court granted final approval of the Panasonic settlement on December 27, 2012.

63.     DPPs executed a fourth settlement agreement with LG on August 13, 2012. The Court finally approved the LG settlement on April 1, 2013, after DPPs moved for preliminary and final approval of the settlement, certification of a settlement class and notice to the class. The settlement required LG to pay the class $25 million and to cooperate with DPPs in the prosecution

16

of the case against the rest of the Defendants.

64.     DPPs executed a fifth settlement with Toshiba on February 6, 2013. The settlement was reached as a result of a mediation before Mr. Eric Green. The parties exchanged mediation briefs and I attended a one-day mediation on October 3, 2012. While no settlement was reached at the mediation, we continued our discussions with the assistance of Mr. Green and eventually reached agreement. The Court finally approved the settlement on July 23, 2013, following DPPs' motions for preliminary and final approval of the settlement, certification of a settlement class and notice to the class. Toshiba agreed to pay $13.5 million and cooperate with DPPs in the prosecution of the case against the rest of the Defendants.

65.     DPPs next settled with Hitachi. DPPs engaged in settlement discussions with Hitachi over the course of the litigation. The settlement was finally reached as a result of mediation sessions conducted by Judge Vaughn Walker (Ret.). The parties exchanged mediation briefs and attended a mediation session on March 26, 2013. On May 14, 2013, the parties again exchanged briefs and attended another mediation session. While no settlement was reached at the mediation sessions, the parties continued their discussions with the assistance of Judge Walker and executed an agreement on November 29, 2013. Hitachi agreed to pay $13.45 million and cooperate in the prosecution of the case against the rest of the Defendants.

66.     DPPs settlement with Samsung SDI was also reached as a result of mediation sessions conducted by Judge Walker. The parties exchanged mediation briefs and attended a mediation session on March 19, 2013. On September 24, 2013, the parties again submitted briefs and attended another session. While no settlement was reached at the mediations, the parties continued their discussions with the assistance of Judge Walker and executed an agreement on February 11, 2014. Samsung SDI agreed to pay the class $33 million and to cooperate with DPPs in the prosecution of the case against other alleged conspirators.

67.     The Court granted preliminary approval, certified settlement classes, and approved class notice for the Hitachi and Samsung SDI settlements. After notice to the class, the Court held a final approval hearing on August 22, 2014. However, because of motion practice relating to DAP Sharp Corporation's failure to submit a timely request for exclusion from the settlement classes,

17

final approval of these settlements was delayed until July 22, 2015.

### I.   Miscellaneous Motions

68.    DPPs were involved in a number of other motions in addition to those described above. In February, 2014, two large purchasers of CRTs and CRT Products, Viewsonic and Unisys, who had opted out of the DPP settlements with Chunghwa, Philips, Panasonic, LG, and Toshiba, moved to withdraw their requests for exclusion and rejoin the settlement classes. Dkt. No. 2403. DPPs opposed the motion and the Court denied the motion. Dkt. Nos. 2417, 2517. S&S worked with other DPP counsel to oppose this motion.

69.    On August 8, 2012, Sharp Corporation—a large purchaser of CRTs that later filed its own action—served a subpoena on S&S seeking all discovery produced in the action for use in its Korean lawsuit. Defendants moved to quash the subpoena. Dkt. No. 1327. S&S refused to comply and Sharp moved to compel. Dkt. No. 1340. S&S opposed the motion (Dkt. No. 1340) and, following a hearing, on October 22, 2012, the Special Master filed a report and recommendation ("R&R") that the Court deny the motion (Dkt. No. 1415). On October 31, 2012, Defendants and S&S moved the Court to adopt the Special Master's R&R. Dkt. No. 1426. Thereafter, Sharp filed an objection to the R&R (Dkt. No. 1430) and an opposition to the motion to adopt the R&R (Dkt. No. 1432). Both Defendants and S&S filed responses to Sharp's objection to the R&R. Dkt. Nos. 1442, 1447. Sharp then sought leave to file a reply. Dkt. Nos. 1455, 1456. On January 17, 2013, the Court adopted the R&R, denying Sharp's motion to compel. Dkt. No. 1534. S&S briefed and argued these issues.

70.    In the summer of 2014, two DAPs with large CRT purchases—Sharp and Dell— who failed to submit timely requests for exclusion from the Hitachi and Samsung SDI settlement classes moved the Court for leave to submit late requests. Dkt. Nos. 2696, 2698. The Court granted Dell's request but denied Sharp's. Dkt. No. 2746. Sharp moved for leave to submit a late objection to the settlements and for reconsideration. Dkt. Nos. 2750, 2751. The DPPs submitted briefs in connection with these motions, as well as Sharp's later request for a status conference. Dkt. Nos. 2715, 2753, 3160. Sharp ultimately settled with Samsung SDI and Hitachi and thus mooted the question of Sharp's membership in the settlement classes. Dkt. No. 3842. These proceedings

18

1  delayed final approval for nearly a year. S&S briefed and argued these issues.

2        **J.    The Complaint Against Mitsubishi and Thomson**

3       71.    As the case progressed against the Defendants, it became clear that two additional

4  corporate groups—Mitsubishi and Thomson—also participated in the alleged conspiracy. DPPs

5  had tolling agreements with each group.

6       72.    On May 20, 2014, Plaintiffs filed their First Amended Direct Purchaser Plaintiffs'

7  Class Action Complaint Against Mitsubishi, Thomson, and TDA ("Mitsubishi/Thomson

8  Complaint"). *Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Elec.Corp., et al.*, Case No.

9  14-CV-2058 (SC) (N.D. Cal.) (Dkt. No. 14-3). This action, while also part of this MDL, is

10  proceeding as a separate action. DPPs have settled with Thomson—a hearing on final approval is

11  currently scheduled for October 23, 2015. The action against Mitsubishi continues. On July 8,

12  2015, the Court granted DPPs' motion for class certification against Mitsubishi. Dkt. No. 3902.

13  DPPs' motion to authorize notice to the class (Dkt. No. 3944) is pending.

14       73.    DPPs do not seek fees with regard to this action at this time, and, therefore have not

15  included time associated with the prosecution of this complaint in their lodestar.

16         **IV.   ADDITIONAL INFORMATION**

17       74.    The settlement fund confers a substantial and immediate benefit to class members,

18  and represents an excellent recovery, especially in light of the many risks involved in the action.

19  The quality of the recovery in this action is confirmed by the fact that in December of 2014,

20  sophisticated DAPs with large purchases who initially opted out of the first five settlements sought

21  to revoke their opt-out notices and rejoin the class in order to participate in the settlements. Dkt.

22  2403.

23       75.    Some Defendants—e.g., Hitachi, Philips, LG, and Panasonic—moved their CRT

24  businesses into separate entities in 2001–2004, and have argued (1) that they withdrew from the

25  conspiracy, and (2) because of the statute of limitations, have no liability.

26       76.    Some large CRT manufacturers/alleged conspirators—e.g., Daewoo and LPD, the

27  joint venture between LG and Philips—were bankrupt or essentially defunct by the time the case

28  was filed.

77.     DPPs estimate that finished products constitute at least 70% of class members' purchases.

78.     DPPs' fee request appears to have the near unanimous support of the class. Each of the five notices of settlement sent to the over sixteen thousand class members disclosed that class counsel would seek as much as one-third of the settlement fund as a fee, and no objections were received. *See* Dkt. Nos. 1323-3, Ex. A; 1464-2, Ex. A; 1573-2, Ex. A; 1757-2, Ex. A; 2728-2, Ex. A. Here, the class contains many large and sophisticated companies.

79.     Defendants also argued that the FTAIA and the statute of limitations bar some or all of DPPs alleged damages, and that the alleged conspiracy caused no harm to the class.

80.     Attached hereto as Exhibit 7 is a true and correct copy of the Order Granting Direct Purchaser Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Class Representative Incentive Awards in *In re Optical Disk Drive Antitrust Litig.*, Case No. 10-md-2143 RS (N.D. Cal. July 23, 2015) (Dkt. No. 1658).

81.     Attached hereto as Exhibit 8 is a true and correct copy of the Amended Plea Agreement in *U.S. v. Samsung SDI Co.*, Case No. 11-cr-162-WHA (N.D. Cal. Aug. 8, 2011) (Dkt. No. 29).

82.     Attached hereto as Exhibit 9 is a true and correct copy of the Order Awarding Class Counsel Attorneys' Fees, Reimbursement of Expenses and Incentive Award in *In re Static Random Access Memory (SRAM) Antitrust Litig.*, Case No. 07-md-1819-CW (N.D. Cal. June 30, 2011) (Dkt. No. 1370).

83.     Attached hereto as Exhibit 10 is a true and correct copy of the Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice in *Meijer v. Abbott Laboratories*, C-07-05985 (N.D. Cal. Aug. 11, 2011) (Dkt. No. 514).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 11th day of September, 2015 at San Francisco, California.

　　　　　　　　 */s/ R. Alexander Saveri*
　　　　　　　　　 R. Alexander Saveri

# EXHIBIT 1

# SAVERI & SAVERI, INC.

706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*SAVERI & SAVERI, INC.*, an AV-rated law firm, was established in 1959.The firm engages in Antitrust and Securities litigation, Product Defect cases, and in general civil and trial practice. For over fifty years the firm has specialized in complex, multidistrict, and class action litigation.

*GUIDO SAVERI*, born San Francisco, California, June 10, 1925; admitted to bar, 1951, California. *Education:* University of San Francisco (B.S., *summa cum laude*, 1947; LL.B., *summa cum laude*, 1950). *Member:* Bar Association of San Francisco; State Bar of California; American Bar Association (Member, Antitrust Section); Lawyers Club of San Francisco.

Mr. Saveri is a senior partner in the firm of Saveri & Saveri, Inc. He started the firm in 1959 and associated with Joseph L. Alioto, Esq., San Francisco, California, in the practice of antitrust and other corporate litigation. After law school in 1951 and up until the forming of his firm in 1959 he was associated with the law firm of Pillsbury, Madison &Sutro, San Francisco, California.

He has the highest rating in Martindale Hubbell, namely, "AV."

Mr. Saveri has testified before the Federal Judiciary Committee on antitrust matters and has lectured on antitrust matters before The Association of Trial Lawyers of America, the Federal Practice Institute, and other lawyer associations. Mr. Saveri has also written various periodicals on antitrust topics. Mr. Saveri was named the 2007 Antitrust Lawyer of the Year by the State Bar of California's Antitrust and Unfair Competition Section.

From the time he started his firm in 1959, Mr. Saveri has devoted practically all of his time to antitrust and other corporate and complex litigation. He has actively participated in antitrust cases involving the electrical industry, the water meter industry, scrap metal industry, liquid asphalt industry, dairy products industry, typewriter industry, vanadium industry, pipe-fitting industry, grocery business, liquor industry, movie industry, animal-raising business, chemical industry, snack food industry, paper label industry, chrysanthemum industry, drug industry, sugar industry, records industry, industrial gas industry, wheelchair industry, rope industry, copper tubing industry, folding cartons industry, ocean shipping industry, pancreas gland industry, corrugated container industry, glass container industry, fine paper industry, food additives industry, prescription drugs industry, medical x-ray film industry, computer chips and many others.

- 1 -

The following are some of the class actions in which Mr. Saveri actively participated:

*Nisley v. Union Carbide and Carbon Corp.*, 300 F. 2d 561 (10th Cir. 1960), and *Continental Ore. Co. v. Union Carbide and Carbon Corp.*, 370 U.S. 690 (1962). In 1960, Mr. Saveri was one of the trial attorneys in the above cases which are the forerunners of present class action litigation and are responsible not only for Rule 23 as it exists today but also for some of the more important rulings in the field of antitrust law. The *Nisley* case was a class action tried before a jury both on liability and damages and resulted in a verdict for the named plaintiffs and the entire class. It is considered one of the leading cases on class actions, is often referred to as a model for the trial of class actions, and has been followed in those antitrust class action cases which have gone to trial.

*Sacramento Municipal Utility District v. Westinghouse Elec. Corp.*, 1962 Trade Case. ¶ 70,552 (N.D. Cal. 1962). Mr. Saveri was one of the principal attorneys in several cases which have come to be known as the *Electrical Equipment* cases. In 1961–1965, Mr. Saveri represented such clients as the State of Washington, Sacramento Municipal Utility District and Modesto Irrigation District. Mr. Saveri was one of the attorneys who tried several of these cases and did very extensive work under a coordinated program instituted by the Murrah Committee under the direction of the then Chief Justice of the United States. This Committee later became the Judicial Panel for Multi-District Litigation. As a result of his experience in these cases, he participated in drafting proposed legislation creating the Panel on Multi-District Litigation.

*Nurserymen's Exchange v. Yoda Brothers, Inc.*, before Judge George R. Harris in San Francisco. Mr. Saveri was the sole attorney for a class of 10,000 chrysanthemum growers. This case was settled for substantial sums.

*City of San Diego, et al. v. Rockwell Manufacturing Company*, before Judge George H. Boldt of San Francisco. Mr. Saveri was Liaison and Lead Counsel in the above case involving water meters. This case was settled for substantial sums.

*In re Private Civil Treble Damage Actions Against Certain Snack Food Companies*, Civil No. 70-2121-R, in the United States District Court, Central District of California. Mr. Saveri was the lead attorney for the retail grocers' class comprised of all retail grocers in the states of California, Nevada, and Arizona certified by Judge Real involving the snack food industry. The case was settled for substantial sums.

*In re Sugar Antitrust Litigation*, MDL No. 201, in the United States District Court for the Northern District of California, before Judges Boldt and Cahn. Mr. Saveri was the lead attorney for the retail grocer classes in the Western Sugar litigation. In this litigation, he was a member of the Executive Committee, Steering Committee and Settlement Committee. This case settled for more than $35,000,000.

*Sun Garden Packing Co. v. International Paper Co., et al.*, C-72-52, U.S. District Court in San Francisco. In 1972 Mr. Saveri filed the first price fixing class action against the paper industry. He was the sole attorney representing all purchasers of lithograph paper labels in the United States. The lithograph paper labels case was settled at a substantial figure. The lithograph

paper labels case was responsible for subsequent government indictments in lithograph paper labels, folding cartons, small paper bags, and corrugated containers.

*In re Folding Carton Antitrust Litigation*, MDL No. 250, Eastern District of Illinois, Judges Will and Robson. Mr. Saveri was a member of the Executive Committee, Vice Chairman of Discovery and a member of the Trial Team in this action involving a horizontal conspiracy to fix prices for folding cartons. The case was settled for more than $200,000,000.

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* MDL No. 10, 4-72 Civ 435; Judge Lord, United States District Court, District of Minnesota, Fourth Division. Mr. Saveri was the attorney for the institutional class and consumer class for the States of Utah and Hawaii. These actions were settled for substantial sums.

*Building Services and Union Health and Welfare Trust Fund, Plaintiff, v. Charles Pfizer Company, et al.*, No. 4-71 Civ. 435; No. 4-71 Civ. 413, before Judge Lord in Minneapolis, Minnesota. Mr. Saveri was the sole attorney for a class of 9,000 health and welfare trust funds in the United States in this antitrust action against the drug companies. In 1974–1975 this class action went to trial before two juries at the same time and in the same court on liability and damages for the entire class and lasted ten months. It was settled for a substantial sum. Mr. Saveri was the sole attorney representing the plaintiff health and welfare trust fund class at trial.

*In re Corruagted Container Antitrust Litigation*, MDL No. 310, Southern District of Texas. Horizontal price fixing action. The case was settled for more than $400,000,000.

*In re Fine Paper Antitrust Litigation*, MDL No. 325, Eastern District of Pennsylvania. Mr. Saveri was a member of the Executive Committee and the trial team. The case was settled for approximately $80,000,000.

*In re Ocean Shipping Antitrust Litigation*, MDL No. 395, Southern District of New York. Mr. Saveri was a member of the Steering Committee and the Negotiating Committee. The firm understands this case was the first class action settlement involving claims by foreign companies. Mr. Saveri was appointed an officer of the New York Federal District Court to audit foreign claims in Europe. The case was settled for approximately $79,000,000.

*In re Corn Derivatives Antitrust Litigation*, MDL No. 414, United States District Court for the District of New Jersey. Mr. Saveri was Chairman of the Steering Committee and Executive Committee.

*In re Coconut Oil Antitrust Litigation*, MDL No. 474, Northern District of California. Mr. Saveri was Co-Lead Counsel.

*In re Itel Securities Litigation*, No.C-79-2168A, Northern District of California, Judge Aguilar. Mr. Saveri was a member of the Steering Committee.

***O'Neill Meat Co. v. Elitilly and Company, et al.***, No. 30 C 5093, United States District Court for the Northern District of Illinois, Judge Holderman. Mr. Saveri was Co-Lead Counsel for the class in this antitrust litigation involving pancreas glands.

***United National Records, Inc. v. MCA, Inc., et al.***, No.82 C 7589, United States District Court for the Northern District of Illinois; Mr. Saveri was a member of the Steering Committee in this records antitrust litigation. The class recovered $26,000,000 in cash and assignable purchase certificates.

***In re Industrial Gas Antitrust Litigation***, No. 80 C 3479, United States District Court for the Northern District of Illinois. Mr. Saveri was a member of the Steering Committee. The class recovered more than $50,000,000.

***Superior Beverages, Inc. v. Owens-Illinois, et al.***, No. 83-C512, United States District Court for the Northern District of Illinois; Mr. Saveri was a member of the Executive Committee in this antitrust litigation involving the price fixing of glass containers. The class recovered in excess of $70,000,000 in cash and coupons.

***In re Washington Public Power Supply Securities Litigation***, MDL No. 551, (W.D. Wash.).Mr. Saveri was one of the court appointed attorneys for the class.

***In re Ask Computer Systems Securities Litigation***, No. C-85-20207 (A) RPA, United States District Court for the Northern District of California. Mr. Saveri was Co-Lead Counsel for the class.

***Big D. Building Corp. v. Gordon W. Wattles, et al.***, MDL No. 652, United States District Court for the Middle District of Pennsylvania. Mr. Saveri was a member of the Steering Committee and Settlement Committee in this price fixing class action involving the rope industry.

***In re Insurance Antitrust Litigation***, MDL No. 767, Judge Schwarzer, United States District Court for the Northern District of California. Mr. Saveri was Administrative Liaison Counsel and a member of the Steering Committee.

***In re Sun Microsystems Securities Litigation***, No. C-89-20351, RMW, U.S. District Court for the Northern District of California; Mr. Saveri was Co-Lead Counsel.

***In re Infant Formula Antitrust Litigation***, MDL No. 878, United States District Court for the Northern District of Florida, Tallahassee Division. Mr. Saveri was one of the principal attorneys. The case was settled for $125,760,000.

***In re Carbon Dioxide Industry Antitrust Litigation***, MDL No. 878, Case No. 92-940, PHB, United States District Court for the Middle District of Florida, Orlando Division. Mr. Saveri was a member of the Steering Committee. The class recovered $53,000,000 and achieved significant therapeutic relief for the class.

*In re Medical X-Ray Film Antitrust Litigation*, No.CV 93-5904, FB, United States District Court for the Eastern District of New York. Mr. Saveri was a member of the Steering Committee.

*In re Baby Food Antitrust Litigation*, No. 92-5495, NHP, in the United States District Court for the District of New Jersey. Mr. Saveri was a member of the Steering Committee.

*In re Brand Name Prescription Drugs Antitrust Litigation*, MDL No. 997,94C 897, CPK, United States District Court, Northern District of Illinois, Eastern Division. Mr. Saveri was Co-Lead Counsel on behalf of approximately 50,000 retail pharmacies nationwide alleging an illegal cartel between seventeen drug manufacturers and six drug wholesalers in preventing discounts to retail pharmacies. The case was tried for eight weeks. The case was settled for $700,000,000 in cash and $25,000,000 in product. Mr. Saveri was one of four lead trial lawyers.

*In re Citric Acid Antitrust litigation*, MDL No. 1092, C-95-2963, FMS, United States District Court, Northern District of California. Mr. Saveri was Co-Lead Counsel representing a certified class of purchasers of citric acid throughout the United States against the citric acid manufacturers for violations of the Sherman Act for fixing the price of citric acid in the United States and around the world. The case was settled for $86,000,000.

*In re Methionine Antitrust Litigation*, MDL No. 1311, CRB, United States District Court, Northern District of California. A nationwide class action on behalf of direct purchasers of methionine alleging price-fixing. Saveri & Saveri, Inc. served as Co-Lead Counsel in this litigation. The case was settled for $107,000,000.

*In re Managed Care Litigation*, MDL No. 1334, Master File No. 00-1334-MD (Judge Moreno) United States District Court, Southern District of Florida. Mr. Saveri serves as a member of the Executive Committee representing the California Medical Association, Texas Medical Association, Georgia Medical Association and other doctors against the nation's HMOs for violations of the Federal RICO Act. The case was partially settled with benefits approximating $1 billion dollars.

*In re Dynamic Random Access Memory Antitrust Litigation*, MDL No. 1486 (Judge Hamilton) United States District Court, Northern District of California. Mr. Saveri serves as Co-Lead Counsel on behalf of direct purchasers of dynamic random access memory (DRAM)alleging a nationwide class for price-fixing. The case settled for more than $325 million in cash.

*In re Flash Memory Antitrust Litigation*, No. C 07-0086 SBA (Judge Armstrong) United States District Court, Northern District of California. Mr. Saveri serves as Co-Lead Counsel on behalf of direct purchasers of flash memory (Flash) alleging a nationwide class for price-fixing.

*In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917, Case No. C 07-5944 SC (Judge Conti) United States District Court, Northern District of California. Mr. Saveri

serves as Lead Counsel on behalf of direct purchasers of cathode ray tubes (CRTs) alleging a nationwide class for price-fixing.

*In re Optical Disk Drive (ODD) Products Antitrust Litigation*, MDL No. 2143; 10-md-02143-RS (Judge Seeborg) United States District Court, Northern District of California. Mr. Saveri serves as Chair of the Committee of Direct Purchaser Plaintiffs' Counsel on behalf of direct purchasers of optical disk drives (ODDs) alleging a nationwide class for price-fixing.

Mr. Saveri also has been and is involved in numerous other major class action litigation in the antitrust and securities fields.

**RICHARD SAVERI,** Partner, 1951–1999.

**R. ALEXANDER SAVERI**, born San Francisco, California, July 22, 1965; admitted to bar, 1994, California and U.S. District Court, Northern District of California; 1995, U.S. Court of Appeals, Ninth Circuit; 2000, U.S. District Court, Southern District of California; 2000, U.S. District Court, Central District of California; 2012, U.S. Court of Appeals, Third Circuit. *Education:* University of Texas at Austin (B.B.A. Finance 1990); University of San Francisco (J.D., 1994) University of San Francisco Maritime Law Journal 1993–1994.*Member:* State Bar of California, American Bar Association (Member, Antitrust Section), Association of Trial Lawyers of America, University of San Francisco Inn of Court, National Italian American Bar Association, University of San Francisco Board of Governors (2003–2006), Legal Aid Society (Board of Directors).

Mr. Saveri is the managing partner of Saveri & Saveri, Inc. After graduating from law school, he began working for his father and uncle at Saveri & Saveri, P.C. on antitrust and complex litigation. The current practice of Saveri & Saveri, Inc. emphasizes class action antitrust litigation.

He has the highest rating in Martindale Hubbell, namely, "AV."

Mr. Saveri has served or is serving as court-appointed Co-Lead or Liaison Counsel in the following cases:

*In re Lithium Ion Batteries*, Master Docket No. 4:13-md-2420-YGR, United States District Court, Northern District of California (antitrust class action on behalf of direct purchasers of lithium ion batteries).

*In re California Title Insurance Antitrust Litigation*, Case No. 08-01341 JSW, United States District Court, Northern District of California (antitrust class action involving federal antitrust laws and California statutory law for unlawful practices concerning payments for title insurance in California);

*In re Intel Corp. Microprocessor Antitrust Litigation*, MDL No. 05-1717 (JJF) United States District Court, District of Delaware (antitrust class action on behalf of all consumers in the United States that indirectly purchased Intel x86 microprocessors);

*In re Vitamin C Antitrust Litigation*, MDL No. 06-1738 (DTG)(JO), United States District Court, Eastern District Of New York (antitrust class action on behalf of all California indirect purchasers of vitamin C);

*In re Polychloroprene Antitrust Cases*, J.C.C.P. No. 4376, Los Angeles Superior Court (antitrust class action on behalf of all California indirect purchasers of polychloroprene rubber);

*In re NBR Cases*, J.C.C.P. No. 4369, San Francisco Superior Court (antitrust class action on behalf of all California indirect purchasers of NBR);

*Carpinelli et al. v. Boliden AB et al.,* Master File No. CGC-04-435547, San Francisco Superior Court (antitrust class action on behalf of all California indirect purchasers of copper tubing);

*Competition Collision Center, LLC v. Crompton Corporation et al.*, Case No. CGC-04-431278, San Francisco Superior Court (antitrust class action on behalf of all California indirect purchasers of plastic additives);

*In re Urethane Cases*, J.C.C.P. No. 4367, San Francisco Superior Court (antitrust class action on behalf of all California indirect purchasers of urethane and urethane chemicals);

*The Harman Press et al. v. International Paper Co. et al.*, (Consolidated Cases) Master File No. CGC-04-432167, San Francisco Superior Court (antitrust class action on behalf of all California indirect purchasers of publication paper);

*In re Label Stock Cases*, J.C.C.P. No. 4314, San Francisco Superior Court (antitrust class action on behalf of all California indirect purchasers of high pressure label stock);

*Richard Villa et al. v. Crompton Corporation et al.,* Consolidated Case No. CGC-03-419116, San Francisco Superior Court (antitrust class action on behalf of California indirect purchasers of EPDM);

*Russell Reidel et al. v. Norfalco LLC et al.*, Consolidated Case No. CGC-03-418080, San Francisco Superior Court (antitrust class action on behalf of California indirect purchasers of sulfuric acid);

*Smokeless Tobacco Cases I–IV*, J.C.C.P. Nos. 4250, 4258, 4259 and 4262, San Francisco Superior Court (certified antitrust class action on behalf of California consumers of smokeless tobacco products);

*Electrical Carbon Products Cases*, J.C.C.P. No. 4294, San Francisco Superior Court (Private Entity Cases) (antitrust class action on behalf of California indirect purchasers of electrical carbon products);

*The Vaccine Cases*, J.C.C.P. No. 4246, Los Angeles Superior Court (medical monitoring class action on behalf of children exposed to mercury laden vaccines);

*In re Laminate Cases*, J.C.C.P. No. 4129, Alameda Superior Court (antitrust class action on behalf of California indirect purchasers of high pressure laminate);

*Compact Disk Cases*, J.C.C.P. No. 4123, Los Angeles Superior Court (antitrust class action on behalf of California consumers of prerecorded compact disks);

*Sorbate Prices Cases*, J.C.C.P. No. 4073, San Francisco Superior Court (antitrust class action on behalf of California indirect purchasers of sorbate);

*In re Flat Glass Cases*, J.C.C.P. No. 4033, San Francisco Superior Court (antitrust class action on behalf of California indirect purchasers of flat glass products);

*Vitamin Cases*, J.C.C.P. No. 4076, San Francisco Superior Court (antitrust class action on behalf of California indirect purchasers of vitamins);

*California Indirect Purchaser MSG Antitrust Cases*, Master File No. 304471, San Francisco Superior Court (antitrust class action on behalf of California indirect purchasers of Monosodium Glutamate);

*In re Aspartame Indirect Purchaser Antitrust Litigation,* Master Docket No. 06-1862-LDD, United States District Court, Eastern District of Pennsylvania (antitrust class action on behalf of California indirect purchasers of aspartame); and

*GM Car Paint Cases*, J.C.C.P. No. 4070, San Francisco Superior Court (class action on behalf of all California owners of General Motors vehicles suffering from paint delamination).


**CADIO ZIRPOLI**, born Washington D.C., September 1, 1967; admitted to bar 1995, California and U.S. District Court, Northern District of California. *Education:* University of California, Berkeley (B.A. 1989); University of San Francisco (J.D., *cum laude*, 1995), U.S.F. Law Review 1992–1993. *Member*: State Bar of California; Assistant District Attorney, City and County of San Francisco 1996–2000.

He has the highest rating in Martindale Hubbell, namely, "AV."

—————————————————

**WILLIAM J. HEYE**, born Boston, Massachusetts, April 14, 1975 admitted to bar, 2004, California, and U.S. District Court, Northern and Central District of California. *Education*: Brown University (B.A. 1997); University Of California, Hastings College of the Law (J.D. *cum laude* 2004) Hastings International and Comparative Law Review. *Publication*: Note, *Forum Selection for International Dispute Resolution in China—Chinese Courts vs. CIETAC*, 27 Hastings Int'l & Comp. L. Rev. 535 (Spring 2004).

**MELISSA SHAPIRO**, born Los Angeles, California, May 27, 1980, admitted to bar 2006, California, and U.S. District Court, Northern and Central District of California. *Education*: University of Southern California (B.A. 2002); Pepperdine University School of Law (J.D. 2005) Pepperdine Law Review, *Publication*: Comment: *Is Silica the Next Asbestos? An Analysis of the Sudden Resurgence of Silica Lawsuit Filings*, 32 Pepp. L. Rev. 983 (2005).

**TRAVIS L. MANFREDI**, born Fresno, California, March 16, 1980, admitted to bar January 2012, California and U.S. District Court, Northern District of California. *Education*: University of California, Santa Cruz (B.A. 2004); University of San Francisco School of Law (J.D., *cum laude*, 2011): University of San Francisco Law Review Managing Editor, Vol. 45; Member of National Appellate Advocacy Competition team; Research assistant to Professor J. Thomas McCarthy, author of *McCarthy on Trademarks and Unfair Competition*. *Publications*: *Survey*, In re Spirits Int'l, N.V., 563 F.3d 1347 (Fed. Cir. 2009), 14 Intell. Prop. L. Bull. 71 (2009); Note, *Sans Protection: Typeface Design and Copyright in the Twenty-First Century*, 45 U.S.F. L. Rev. 841 (2011). *Member*: State Bar of California.

**DAVID HWU**, born Stanford, California, November 20, 1985; admitted to bar, 2011, California and U.S. District Court, Northern District of California. *Education:* University of California, Berkeley (B.A., 2008). University of San Francisco School of Law (J.D., 2011). *Member*: State Bar of California. *Language*: Chinese.

**CARL N. HAMMARSKJOLD,** born Detroit, Michigan, August 20, 1967; admitted to the bar 2011, California, and U.S. District Court, Northern District of California. *Education*: Pomona College (B.A., 1989); University of San Francisco School of Law (J.D., *summa cum laude*, 2011): Academic Excellence Award; John L. Brennan Award for Creativity and Innovation in Advocacy; Law Review Best Student Note Award; University of San Francisco Law Review (2009–2011); Executive Director, Moot Court Board of Directors (2010–2011); Judicial Extern to the Honorable William Alsup (2010).*Publication*: Comment, *Smokes, Candy, and the Bloody Sword: How Classifying Jailhouse Snitch Testimony as Direct, Rather than Circumstantial, Evidence Contributes to Wrongful Convictions*, 45 U.S.F. L. Rev. 1103 (2011). *Member*: State Bar of California.

**MATTHEW D. HEAPHY**, born Hartford, Connecticut, December 4, 1974, admitted to the bar December 1, 2003, California and U.S. District Court, Northern District of California. *Education*: Wesleyan University (B.A., 1997); University of San Francisco School of Law (J.D., *cum laude*, 2003): University of San Francisco Law Review; International & Comparative Law Certificate, with Honors. *Publications*: Comment: The Intricacies of Commercial Arbitration in the United States and Brazil: A Comparison of Two National Arbitration Statutes, 37 U.S.F. L. Rev. 441 (2003); Does the United States Really Prosecute its Servicemembers for War Crimes? Implications for Complementarity Before the ICC, 21 Leiden J. Int'l L. 165 (March 2008) (with Thomas Wayde Pittman); The United States and the 2010 Review Conference of the Rome Statute of the ICC, 81 Int'l Rev. Penal L. 77 (2010). *Member*: State Bar of California. *Languages*: French, Italian.

**DAVID DORR**, (Paralegal) born Philadelphia, Pennsylvania. *Education:* Arizona State University (B.S. 1987); Thunderbird, The American Graduate School of International

Management, (MBA 1998); The Chase Manhattan Bank, N.A. New York, New York, Senior Institutional Trust Administrator, 1990–1995; Charles Schwab Company, San Francisco, Trust Associate, 1996; Independent Corporate Marketing and Personal Finance consultant 1998–2002.

**JAE HYUN LIM**, (Paralegal) born Incheon, South Korea, July 9, 1988.*Education*: University of California, Berkeley (B.A. 2011), Team Waffle Intern Research Analyst (2011). *Language*: Korean.

**SHANNON EASTERLY**, (Paralegal) born Elko, Nevada, February 27, 1986.*Education*: California State University, Northridge (B.A. 2009).

**MICHAELA OGDEN**, (Paralegal) born San Diego, California, March 1, 1990.*Education*: University of Washington (B.A. 2012 with honors).

## OF COUNSEL

**GEOFFREY C. RUSHING,** born San Jose, California, May 21, 1960; admitted to bar, 1986, California and U.S. District Court, Northern District of California. *Education*: University of California, Berkeley, California (A.B. 1982 with honors); University of California, Berkeley, California, Boalt Hall (J.D. 1986).*Member*: State Bar of California.

**LISA SAVERI**, born San Francisco, California, April 10, 1956; admitted to bar, 1983, California and U.S. District Court, Northern District of California; 1987, U.S. District Court, Eastern District of California; 2002, U.S. Court of Appeals, Ninth Circuit and U.S. District Court, Central District of California. *Education:* Stanford University (A.B., Economics, 1978); University of San Francisco (J.D. 1983), U.S.F. Law Review. *Member:* State Bar of California. Associate, Pillsbury Madison & Sutro, 1983–1992; Legal Extern, Hon. Eugene F. Lynch, Judge, United States District Court, Northern District of California (1982); San Francisco Public Defender's Office (Summer 1989). *Publications*: G. Saveri & L. Saveri, <u>Pleading Fraudulent Concealment In An Antitrust Price Fixing Case: Rule 9(b) v. Rule 8</u>, 17 U.S.F. L. Rev. 631 (1983); L. Saveri, <u>Implications of the Class Action Fairness Act for Antitrust Cases: From Filing Through Trial</u>, 15 No. 1, *Competition: J. of the Antitrust and Unfair Competition Law Section of the State Bar of California* 23 (2006); L. Saveri & Co-Author, <u>Does the Cartwright Act Have A Future?</u>, 17 No. 2, *Competition: J. of the Antitrust and Unfair Competition Law Section of the State Bar of California* 31 (2008); L. Saveri & Co-Authors, "California State Antitrust and Unfair Competition Law," *California State Bar*, Chapter 21: Class Actions in Competition and Consumer Protections Cases (Dec. 2009) and 2010 Update; L. Saveri & Co-Authors, "California State Antitrust and Unfair Competition Law," *California State Bar*, Chapter 22: Indirect Purchaser Actions, 2010 Update. *Professional Affiliations:* United States District Court, Northern District of California, Special Master, Standing Committee on Professional Conduct (appointment)(2008–2011); State Bar of California, Antitrust and Unfair Competition Law Section, Executive Committee, Member (appointment)(2005–2010), Secretary (2007–2009), First Vice-Chair (2009–2010), Advisory Committee (2010– present).

# CLASS ACTION LITIGATION

The following are some additional class action cases in which the firm of Saveri & Saveri actively participated as class counsel:

*In re NASDAQ Market-Makers Antitrust Litigation*, MDL No. 1023, United States District Court, Southern District of New York. A nationwide class action on behalf of purchasers of securities on the NASDAQ market alleging a violation of the Sherman Act for fixing the spread between the quoted buy and sell prices for the securities sold on the NASDAQ market.

*In re Potash Antitrust Litigation*, MDL No. 981, United States District Court, District of Minnesota, Third Division. A class action on behalf of all direct purchasers of potash throughout the United States alleging a horizontal price fix.

*In re Airline Ticket Commission Antitrust Litigation*, MDL No. 1058, Untied States District Court, District of Minnesota. A class action alleging that the major airlines conspired to fix travel agents' commission rates.

*Pharmaceutical Cases I, II, and III*, Judicial Council Coordination Proceeding Nos. 2969, 2971, and 2972, San Francisco Superior Court. A certified class action on behalf of all California consumers against the major drug manufacturers for fixing the price of all brand name prescription drugs sold in California.

*Perish et. al. v. Intel Corporation*, Civ. No. 755101, Santa Clara Superior Court. A nationwide class action on behalf of purchasers of Intel Pentium chips alleging consumer fraud and false advertising.

*In re Carpet Antitrust Litigation*, MDL No. 1075, United States District Court, Northern District of Georgia, Rome Division. A nationwide class action on behalf of all direct purchasers of polypropylene carpet alleging a horizontal price fix.

*In re California Indirect-Purchaser Plasticware Antitrust Litigation*, Civ. Nos. 961814, 963201, 963590, San Francisco Superior Court. A class action on behalf of indirect purchasers of plasticware alleging price-fixing.

*In re Worlds of Wonder Securities Litigation*; No.C-87-5491 SC, United States District Court, Northern District of California.

*Pastorelli Food Products, Inc. v. Pillsbury Co., et al.*, No. 87C 20233, United States District Court, Northern District of Illinois.

*Red Eagle Resources Corp., et al. v. Baker Hughes Incorporated, et al.*, No. 91-627 (NWB) (Drill Bits Litigation) United States District Court, Southern District of Texas, Houston Division.

- 11 -

*In re Wirebound Boxes Antitrust Litigation*, MDL No. 793, United States District Court, District of Minnesota, Fourth Division. A nationwide class action on behalf of purchasers of wirebound boxes alleging a horizontal price fix.

*In re Bulk Popcorn Antitrust Litigation*, No. 3-89-710, United States District Court, District of Minnesota, Third Division.A nationwide class action on behalf of direct purchasers of bulk popcorn alleging price-fixing.

*Nancy Wolf v. Toyota Sales, U.S.A. and Related Cases*, No. C 94-1359, MHP, 1997 WL 602445 (N.D. Cal. 1997)United States District Court, Northern District of California. A nationwide class action on behalf of Toyota car purchasers alleging consumer fraud.

*Mark Notz v. Ticketmaster - Southern, and Related Cases*, No. 943327, San Francisco Superior Court. A consumer class action alleging a territorial allocation in violation of the Cartwright Act.

*Neve Brothers, et al. v. Potash Corporation, et. al.*, No. 959867, San Francisco Superior Court. A class action on behalf of indirect purchasers of potash in California for price-fixing.

*In re Chrysler Corporation Vehicle Paint Litigation*, MDL No. 1239.Nationwide class action on behalf of owners of delaminating Chrysler vehicles.

*Miller v. General Motors Corporation*, Case No. 98 C 7836, United States District Court, Northern District of Illinois. Nationwide class action alleging a defective paint process which causes automobile paint to peel off when exposed to ordinary sunlight.

## ANTITRUST LITIGATION

The following list outlines some of the Antitrust litigation in which the firm of Saveri & Saveri has been involved:

1.   *Union Carbide & Carbon Corp. v. Nisley*, 300 F. 2d 561 (10th Cir. 1960)

2.   *Continental Ore. Co. v. Union Carbide and Carbon Corp.*, 370 U.S. 690 (1962)

3.   *Public Service C. of N.M. v. General Elec. Co.*, 315 F.2d 306 (10th Cir. 1963)

4.   *State of Washington v. General Elec. Co.*, 246 F. Supp. 960 (W.D. Wash. 1965)

5.   *Nurserymen's Exchange v. Yoda Brothers, Inc.*

6.   *Bel Air Markets v. Foremost Dairies Inc.*, 55 F.R.D. 538 (N.D. Cal. 1972)

7.   *In re Western Liquid Asphalt Case*, 487 F.2d 191 (9th Cir. 1973)

8.   *In re Gypsum Cases*, 386 F. Supp. 959 (N.D. Cal. 1974)

9. *City of San Diego, et al. v. Rockwell Manufacturing Company*

10. *In re Private Civil Treble Damage Actions Against Certain Snack Food Companies*, Civil No. 70-2121-R

11. *In re Sugar Antitrust Litigation*, MDL No. 201, 559 F.2d 481 (9th Cir. 1977)

12. *Sun Garden Packing Co. v. International Paper Co., et al.*, No. C-72-52,

13. *In re Folding Carton Antitrust Litigation*, MDL No. 250

14. *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 4-72 Civ 435 et al.*, 410 F. Supp. 706 (D. Minn. 1975)

15. *Building Services and Union Health and Welfare Trust Fund, Plaintiff, v. Charles Pfizer Company, et al.*, No. 4-71 Civ. 435; No. 4-71 Civ. 413

16. *In re Fine Paper Antitrust Litigation*, MDL No. 325

17. *In re Armored Car Antitrust Litigation*, CA No. 78-139A, 472 F. Supp. 1357 (N.D. Ga. 1979)

18. *In re Ocean Shipping Antitrust Litigation*, MDL No. 395, 500 F. Supp. 1235 (3d Cir. 1984)

19. *In re Corn Derivatives Antitrust Litigation*, MDL No. 414, 500 F. Supp. 1235 (1980)

20. *In re Coconut Oil Antitrust Litigation*, MDL No. 474

21. *Garside v. Everest & Jennings Intern.*, 586 F. Supp. 389 (D.C. Cal. 1984)

22. *Lorries Travel & Tours, Inc. v. SFO Airporter Inc.*, 753 F.2d 790 (9th Cir. 1985)

23. *O'Neill Meat Co. v. Eli Lilly and Company, et al.*, No. 30 C 5093

24. *In re Records and Tapes Antitrust Litigation*, No.82 C 7589, 118 F.R.D. 92 (N.D. Ill 1987)

25. *In re Industrial Gas Antitrust Litigation*, No. 80 C 3479, 100 F.R.D. 280 (N.D. Ill 1987)

26. *Matter of Superior Beverages/Glass Container Consolidated Pretrial*, No. 83-C512, 137 F.R.D. 119 (N.D. Ill 1990)

27. *Big D. Building Corp. v. Gordon W. Wattles, et al.*, MDL No. 652

28. *In re Insurance Antitrust Litigation*, MDL No. 767

29. ***In re Wirebound Boxes Antitrust Litigation***, MDL No. 793

30. ***In re Domestic Air Transp. Antitrust Litigation***, MDL No. 861, 144 F.R.D. 421 (N.D. Ga. 1992)

31. ***In re Infant Formula Antitrust Litigation***, MDL No. 878

32. ***Finnegan v. Campeau Corp.***, 915 F.2d 824 (2d Cir. 1990)

33. ***In re Carbon Dioxide Industry Antitrust Litigation***, MDL No. 940, 155 F.R.D. 209

34. ***In re Medical X-Ray Film Antitrust Litigation***, No. CV 93-5904, FB

35. ***In re Bulk Popcorn Antitrust Litigation***, 792 F. Supp. 650 (D. Minn. 1992)

36. ***In re Baby Food Antitrust Litigation***, No. 92-5495, NHP

37. ***In re Potash Antitrust Litigation***, MDL No. 981

38. ***In re Brand Name Prescription Drugs Antitrust Litigation***, MDL No. 997

39. ***In re Citric Acid Antitrust litigation***, MDL No. 1092

40. ***In re NASDAQ Market-Makers Antitrust Litigation***, MDL No. 1023

41. ***In re Airline Ticket Commission Antitrust Litigation***, MDL No. 1058

42. ***Pharmaceutical Cases I, II, and III***, J.C.C.P. Nos. 2969, 2971, and 2972, San Francisco Superior Court

43. ***In re Carpet Antitrust Litigation***, MDL No. 1075

44. ***In re California Indirect-Purchaser Plastic Ware Antitrust Litigation***, Nos. 961814, 963201, 963590, San Francisco Superior Court

45. ***Pastorelli Food Products, Inc. v. Pillsbury Co., et al.***, No. 87C 20233

46. ***Red Eagle Resources Corp., et al. v. Baker Hughes Incorporated, et al.***, No. 91-627 (NWB) (Drill Bits Litigation)

47. ***Mark Notz v. Ticketmaster - Southern, and Related Cases***, No. 943327, San Francisco Superior Court

48. ***Neve Brothers, et al. v. Potash Corporation, et al.***, No. 959867, San Francisco Superior Court

49.   *Food Additives (Citric Acid) Cases*, J.C.C.P. No. 3625, Master File No. 974-120

50.   *Biljac v. Bank of America, et al.*

51.   *Diane Barela, et al v. Ralph's Grocery Company, et al.*, No. BC070061,Los Angeles
      Superior Court

52.   *Leslie K. Bruce, et al v. Gerber Products Company, et al.*, No. 948-857,San Francisco
      Superior Court

53.   *In re California Indirect Purchaser Medical X-Ray Film Antitrust Litigation*, Master
      File No. 960886

54.   *Lee Bright v. Kanzaki Specialty Papers, Inc., et al.*, No. 963-598,San Francisco Superior
      Court

55.   *Neve Brothers v. Potash Corporation of America, et al.*, No. 959-767,San Francisco
      Superior Court

56.   *Gaehwiler v. Sunrise Carpet Industries Inc., et al.*, No. 978345,San Francisco Superior
      Court

57.   *In re Commercial Tissue Products Antitrust Litigation*, MDL No. 1189

58.   *Sanitary Paper Cases I and II*, Judicial Council Coordination Proceedings Nos. 4019 &
      4027

59.   *Gaehwiler v. Aladdin Mills, Inc., et al.*, No. 300756,San Francisco Superior Court

60.   *In re Flat Glass Antitrust Litigation*, MDL No. 1200

61.   *Flat Glass Cases*, J.C.C.P. No. 4033

62.   *Sorbate Prices Cases*, J.C.C.P. No. 4073

63.   *In re Stock Options Trading Antitrust Litigation*, MDL No. 1283

64.   *In re Vitamin Antitrust Litigation*, MDL No. 1285

65.   *In re Sorbates Direct Purchaser Antitrust Litigation*, Master File No. C 98-4886 CAL

66.   *Vitamin Cases*, J.C.C.P. No. 4076

67.   *In re PRK/Lasik Consumer Litigation*, Master File No. CV 772894, Santa Clara
      Superior Court

68.     *In re Nine West Shoes Antitrust Litigation*, Master File No. 99-CV-0245 (BDP)

69.     *Food Additives (HFCS) Cases*, J.C.C.P. No. 3261

70.     *In re Toys "R" Us Antitrust Litigation*, MDL No. 1211

71.     *Cosmetics Cases*, J.C.C.P. No. 4056

72.     *In re Methionine Antitrust Litigation*, MDL No. 1311

73.     *Bromine Cases*, J.C.C.P. No. 4108

74.     *Fu's Garden Restaurant v. Archer-Daniels-Midland, et al.,* No. 304471,San Francisco Superior Court

75.     *Thomas & Thomas Rodmakers, Inc., et al. v. Newport Adhesives and Composites, Inc., et al.*, No. CV 99-07796 GHK

76.     *In re Monosodium Glutamate Antitrust Litigation*, MDL No. 1328

77.     *California Indirect Purchaser Auction House Cases*, Master Case No. 310313

78.     *In re Cigarette Antitrust Litigation*, MDL No. 1342

79.     *Cigarette Price Fixing Cases*, J.C.C.P. No. 4114

80.     *Microsoft Cases*, J.C.C.P. No. 4106

81.     *Compact Disk Cases*, J.C.C.P. No. 4123

82.     *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, MDL No. 1361

83.     *In re Ciprofloxacin Hydrochloride Antitrust Litigation*, MDL No. 1383

84.     *In re Buspirone Antitrust Litigation*, MDL No. 1413

85.     *In re K-Durr Prescription Drug Antitrust Litigation*, MDL No. 1419

86.     *Carbon Cases*, J.C.C.P. Nos. 4212, 4216 and 4222

87.     *In re Polychloroprene Antitrust Cases*, J.C.C.P. No. 4376

88.     *In re Urethane Cases*, J.C.C.P. No. 4367

89. ***The Harman Press et al. v. International Paper Co. et al.***, (Consolidated Cases) Master File No. CGC-04-432167

90. ***In re Label Stock Cases***, J.C.C.P. No. 4314

91. ***Richard Villa et al. v. Crompton Corporation et al.***, Consolidated Case No. CGC-03-419116, San Francisco Superior Court

92. ***Russell Reidel et al. v. Norfalco LLC et al.***, Consolidated Case No. CGC-03-418080, San Francisco Superior Court

93. ***Smokeless Tobacco Cases I-IV***, J.C.C.P. Nos. 4250, 4258, 4259, and 4262, San Francisco Superior Court

94. ***Natural Gas Antitrust Cases,*** J.C.C.P. No. 4312

95. ***In re Western States Wholesale Natural Gas Litigation***, MDL No. 1566

96. ***In re Automotive Refinishing Paint Cases***, J.C.C.P. No. 4199

97. ***Young et al. v. Federated Department Stores, Inc.***, No. C-04-3514-VRW, United States District Court, Northern District of California

98. ***In re Credit/Debit Card Tying Cases***, J.C.C.P. No. 4335

99. ***In re NBR Cases***, J.C.C.P. No. 4369

100. ***Competition Collision Center, LLC v. Crompton Corporation et al.***, No. CGC-04-431278, San Francisco Superior Court

101. ***In re Urethane Chemicals Antitrust Litigation***, MDL No. 1616

102. ***In re Rubber Chemicals Antitrust Litigation***, MDL No. 1648

103. ***Carpinelli et al. v. Boliden AB et al.,*** Master File No. CGC-04-435547, San Francisco Superior Court

104. ***Automobile Antitrust Cases I and II***, J.C.C.P. Nos. 4298 and 4303

105. ***In re Currency Conversion Fee Antitrust Litigation***, MDL No. 1409

106. ***In re Dynamic Random Access Memory (DRAM) Antitrust Litigation***, MDL No. 1486

107. ***In re Publication Paper Antitrust Litigation***, MDL No. 1631

108. ***In re Insurance Brokerage Antitrust Litigation,*** MDL No. 1663

109.   *In re Hydrogen Peroxide Antitrust Litigation*, MDL No. 1682

110.   *In re Intel Corp. Microprocessor Antitrust Litigation*, MDL No. 1717

111.   *In re Air Cargo Shipping Services Antitrust Litigation*, MDL No. 1775

112.   *In re International Air Transportation Surcharge Antitrust Litigation*, MDL No. 1793

113.   *Carbon Black Cases*, J.C.C.P. No. 4323

114.   *Madani, et al. v. Shell Oil Co., et al.*, No. 07-CV-04296 MJJ

115.   *In re Static Random Access Memory (SRAM) Antitrust Litigation*, MDL No. 1819

116.   *In re Flash Memory Antitrust Litigation,* No. 4:07-CV-00086 SBA

117.   *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827

118.   *In re Korean Air Lines Co., Ltd., Antitrust Litigation*, MDL No. 1891

119.   *In re Fasteners Antitrust Litigation*, MDL No. 1912

120.   *In re Transpacific Passenger Air Transportation Antitrust Litigation*, MDL No. 1913

121.   *In re Cathode Ray Tube (CRT) Antitrust Litigation,* MDL No. 1917

122.   *In re Chocolate Confectionary Antitrust Litigation,* MDL No. 1935

123.   *In re Flat Glass Antitrust Litigation (II),* MDL No. 1942

124.   *In re Municipal Derivatives Antitrust Litigation,* MDL No. 1950

125.   *In re Aftermarket Filters Antitrust Litigation,* MDL No. 1957

126.   *In re Puerto Rican Cabotage Antitrust Litigation,* MDL No. 1960

127.   *In re Hawaiian and Guamanian Cabotage Antitrust Litigation,* MDL No. 1972

128.   *In re California Title Insurance Antitrust Litigation,* No. 08-01341 JSW

129.   *In re Optical Disk Drive (ODD) Antitrust Litigation*, MDL. No. 2143

130.   *Kleen Products LLC, et al. v. Packaging Corporation of America, et al.*, No. 10-5711

131.   *In re Automotive Parts Antitrust Litigation*, MDL No. 2311

132.   *In re On-Line Travel Company (OTC)/Hotel Booking Antitrust Litigation*, MDL No. 2405

133.   *In re Lithium Ion Batteries Antitrust Litigation,* MDL No. 2420

# EXHIBIT 2

In re Cathode Ray Tube (CRT) Antitrust Litigation
**SAVERI & SAVERI, INC.**
Reported Hours and Lodestar
May 9, 2008 through July 31, 2015

**TIME REPORT**

| NAME | TOTAL HOURS | HOURLY RATE | LODESTAR |
|------|-------------|-------------|----------|
| ATTORNEYS | | | |
| Guido Saveri (P) | 1,956.90 | $950 | $1,859,055.00 |
| Guido Saveri (P) | 1,356.00 | $895 | $1,213,620.00 |
| R. Alexander Saveri (P) | 3,934.45 | $700 | $2,754,115.00 |
| R. Alexander Saveri (P) | 269.75 | $650 | $175,337.50 |
| Cadio Zirpoli (P) | 386.42 | $650 | $251,173.00 |
| Cadio Zirpoli (P) | 1,349.25 | $575 | $775,818.75 |
| Geoffrey C. Rushing (OC) | 3,528.00 | $700 | $2,469,600.00 |
| Geoffrey C. Rushing (OC) | 49.25 | $650 | $32,012.50 |
| Lisa Saveri (OC) | 12.00 | $675 | $8,100.00 |
| Lisa Saveri (OC) | 3.75 | $625 | $2,343.75 |
| Andrew Woodruff (A) | 6.00 | $250 | $1,500.00 |
| Carl Hammarskjold (A) | 12.50 | $350 | $4,375.00 |
| Charlotte Westfall (A) | 52.25 | $325 | $16,981.25 |
| Charlotte Westfall (A) | 417.00 | $250 | $104,250.00 |
| David Hwu  (A) | 538.25 | $350 | $188,387.50 |
| David Hwu  (A) | 2,068.00 | $300 | $620,400 |
| David Sims (A) | 182.25 | $450 | $82,012.50 |
| David Sims (A) | 258.25 | $325 | $83,931.25 |
| David Sims (A) | 1.00 | $250 | $250.00 |
| Gianna Grunewald (A) | 241.00 | $425 | $102,425.00 |
| Justin King (A) | 122.50 | $250 | $30,625.00 |
| Matthew Heaphy (A) | 16.25 | $475 | $7,718.75 |
| Matthew Shaftel (A) | 9.50 | $350 | $3,325.00 |
| Melissa Shapiro (A) | 1.50 | $450 | $675.00 |
| Melissa Shapiro (A) | 2,503.25 | $350 | $876,137.50 |
| Melissa Shapiro (A) | 128.75 | $325 | $41,843.75 |
| Robert Edmonds (A) | 25.00 | $325 | $8,125.00 |
| Robert Edmonds (A) | 143.25 | $250 | $35,812.50 |
| Travis Manfredi (A) | 19.50 | $400 | $7,800.00 |
| Travis Manfredi (A) | 1,637.50 | $350 | $573,125.00 |
| NON-ATTORNEYS | | | |
| Cara Goldenberg (PL) | 21.00 | $175 | $3,675.00 |
| David Dorr (PL) | 2,325.78 | $225 | $523,300.50 |
| Do Kyeom Kim (PL) | 12.00 | $200 | $2,400.00 |

| NAME | TOTAL HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Ella Wagner (PL) | 42.50 | $150 | $6,375.00 |
| Elle Curtain (PL) | 364.25 | $175 | $63,743.75 |
| Erica Schwartz (PL) | 9.50 | $175 | $1,662.50 |
| Erica Schwartz (PL) | 29.25 | $150 | $4,387.50 |
| Jae Hyun Lim (PL) | 2,235.25 | $200 | $447,050.00 |
| Kaitlyn Greer (PL) | 8.75 | $150 | $1,312.50 |
| Kelly Boyles (PL) | 69.75 | $150 | $10,462.50 |
| Maria Bahlol (PL) | 115.00 | $200 | $23,000.00 |
| Megan Gardner (PL) | 73.25 | $150 | $10,987.50 |
| Ryan Han (PL) | 2,417.25 | $195 | $471,363.75 |
| Reamonn Stynes (PL) | 1,117.75 | $150 | $167,662.50 |
| Rob Griffin (PL) | 12.25 | $150 | $1,837.50 |
| Shannon Crane (PL) | 25.00 | $150 | $3,750.00 |
| **TOTAL:** | **30,107.80** | | **$14,073,846.00** |

(P) Partner
(OC) Of Counsel
(A) Associate
(PL) Paralegal
(LC) Law Clerk

# EXHIBIT 3

In re Cathode Ray Tube (CRT) Antitrust Litigation
SAVERI & SAVERI, INC.
Reported Expenses Incurred on Behalf of DPPs

| CATEGORY | AMOUNT INCURRED |
|---|---|
| Court Fees (filing, etc.) | $2,060.00 |
| Experts/Consultants | $32,934.95 |
| Federal Express | $3,869.02 |
| Transcripts (Hearing, Deposition, etc.) | $1,017.70 |
| Computer Research | $127,758.15 |
| Messenger Delivery | $23.95 |
| Photocopies – In House ($0.20 per copy) | $78,705.80 |
| Photocopies – Outside | $1,061.00 |
| Postage | $657.06 |
| Service of Process | $20,427.71 |
| Telephone/Telecopier | $26,951.58 |
| Travel (Airfare, Ground Travel, Meals, Lodging, etc.) | $62,106.98 |
| | |
| TOTAL: | $357,573.90 |
| | |

# EXHIBIT 4

*In re Cathode Ray Tubes (CRT) Antitrust Litigation, MDL 1917*

| | FIRM | HOURS | LODESTAR | EXPENSES |
|---|---|---|---|---|
| 1 | Saveri & Saveri, Inc. | 30,107.80 | $14,073,846.00 | $357,573.90 |
| 2 | Kellogg, Huber, Hansen, Todd, Evans and Figel, PLLC | 10,158.80 | $4,249,481.50 | $78,118.18 |
| 3 | Hagens Berman Sobol Shapiro LLP | 9,948.50 | $3,592,541.50 | $68,171.30 |
| 4 | Pearson, Simon & Warshaw, LLP | 4,116.35 | $2,400,904.75 | $31,933.57 |
| 5 | Berger & Montague, PC | 5,007.90 | $2,077,561.50 | $59,111.99 |
| 6 | Freed Kanner London & Millen, LLC | 4,014.30 | $2,026,097.50 | $58,554.16 |
| 7 | Hadsell Stormer & Renick, LLP | 3,473.33 | $1,653,570.75 | $2,063.60 |
| 8 | Gustafson Gluek PLLC | 3,793.25 | $1,598,623.75 | $19,493.67 |
| 9 | Hausfeld LLP | 2,254.75 | $1,551,802.25 | $22,368.26 |
| 10 | Gross Belsky Alonso LLP | 2,773.80 | $1,334,634.50 | $16,043.00 |
| 11 | Kaplan Fox & Kilsheimer LLP | 1,938.50 | $1,185,518.75 | $42,762.36 |
| 12 | Heins Mills & Olson, PLC | 2,568.50 | $912,427.50 | $8,568.54 |
| 13 | Cotchett, Pitre & McCarthy, LLP | 1,834.30 | $840,188.50 | $37,699.15 |
| 14 | Reinhardt Wendorf & Blanchfield | 1,902.50 | $693,161.00 | $4,528.42 |
| 15 | Steyer Lowenthal Boodrookas Alvarez & Smith LLP | 909.75 | $616,848.75 | $6,710.25 |
| 16 | Grant & Eisenhofer PA | 1,440.40 | $608,671.00 | $7,673.74 |
| 17 | Polsinelli PC | 1,330.90 | $573,624.00 | $13,273.49 |
| 18 | Wolf Haldenstein Adler Freeman & Herz LLP | 998.50 | $561,377.50 | $44,542.36 |
| 19 | Spector Roseman Kodroff & Willis, PC | 1,505.60 | $551,528.75 | $267.30 |
| 20 | Murray Frank LLP | 1,003.10 | $481,565.00 | $2,082.72 |
| 21 | Bolognese & Associates, LLC | 753.50 | $358,393.75 | $1,755.45 |
| 22 | Berman DeValerio | 729.25 | $271,112.75 | $11,699.36 |
| 23 | Lockridge Grindal Nauen PLLP | 715.00 | $241,387.50 | $9,057.80 |
| 24 | Lieff Cabraser Heimann & Bernstein, LLP | 513.00 | $220,772.50 | $18,806.56 |
| 25 | Emerson Poynter LLP | 272.20 | $160,583.25 | $1,023.70 |
| 26 | Vanek, Vickers & Masini PC | 262.80 | $122,491.50 | $6,594.98 |
| 27 | Meredith & Narine | 273.50 | $96,862.50 | $0.00 |
| 28 | Edelson & Associates, LLC | 165.50 | $73,833.00 | $3,147.46 |
| 29 | Damrell, Nelson, Schrimp, Pallios, Pacher & Silva | 212.55 | $70,657.50 | $2,189.56 |
| 30 | Nussbaum LLP | 85.25 | $49,912.50 | $213.79 |
| 31 | Cohen Milstein Sellers & Toll PLLC | 48.50 | $25,200.00 | $3,556.25 |
| 32 | Meredith Cohen Greenfogel & Skirnick, PC | 40.75 | $25,135.00 | $525.80 |
| 33 | Law Offices of Mary Jane Fait | 21.00 | $17,115.00 | $0.00 |
| 34 | NastLaw LLC | 42.70 | $11,294.00 | $259.98 |
| 35 | Cafferty Clobes Meriwether & Sprengel LLP | 13.00 | $6,792.00 | $854.17 |
| 36 | Law Offices of Charles H. Johnson, PA | 0.00 | $0.00 | $0.00 |
| | **TOTALS** | **95,229.33** | **$43,335,517.50** | **$941,224.82** |

# EXHIBIT 5

*In re Cathode Ray Tubes (CRT) Antitrust Litigation, MDL 1917*

## SAVERI & SAVERI, INC.
## CRT ANTITRUST LITIGATION FUND EXPENSES

| | | | |
|---|---|---|---|
| **Total Assessments** | | | **$990,000.00** |
| **Expenses** | | | |
| 1) Experts: | | | |
| Econ One | $500,305.44 | | |
| OSKR | $11,926.25 | | |
| Total Experts | | $512,231.69 | |
| | | | |
| 2) Electronic Document Database: | | | |
| 4Discovery | $4,834.56 | | |
| Access Data | $16,654.00 | | |
| Action Uptime | $178,264.29 | | |
| Arrow | $1,969.78 | | |
| Baker Botts LLP | $9,969.40 | | |
| Document Service Company | $2,119.23 | | |
| Golden State Legal | $9,177.00 | | |
| Ricoh | $19,065.00 | | |
| Total Electronic Document Database | | $242,053.26 | |
| | | | |
| 3) Mediations: | | | |
| Resolutions LLC | $7,387.64 | | |
| Total Mediations | | $7,387.64 | |
| | | | |
| 4) Special Master: | | | |
| JAMS Inc. | $167,727.20 | | |
| Total Special Master | | $167,727.20 | |
| | | | |
| 5) Transcripts: | | | |
| Barkley Court Reporters | $4,201.75 | | |
| Belle Ball | $127.75 | | |
| Benchmark | $1,723.80 | | |
| Jan Marie Columbini | $382.40 | | |
| Legal Link | $649.00 | | |
| Lydia Zing | $129.67 | | |
| Margot Gurule | $25.20 | | |
| Perkins Coie | $364.72 | | |
| US Legal Support | $2,814.85 | | |
| Veritext | $1,352.00 | | |
| Total Transcripts | | $11,771.14 | |
| | | | |
| 6) Translations: | | | |
| Consorta Translation | $28,473.87 | | |
| Park IP Translations | $13,912.50 | | |
| Translation by Design | $2,610.00 | | |
| Total Translations | | $44,996.37 | |
| **Total Expenses** | | | **$986,167.30** |
| | | | |
| **Total Remaning Balance** | | | **$3,832.70** |

# EXHIBIT 6

*In re Cathode Ray Tubes (CRT) Antitrust Litigation, MDL 1917*

## SAVERI & SAVERI, INC.

## SETTLEMENT FUND EXPENSES

| | | | |
|---|---|---|---|
| **Total Deposits** | | | **$3,000,000.00** |
| **Expenses** | | | |
| 1) Experts: | | | |
| Econ One | $2,501,340.45 | | |
| Total Experts | | $2,501,340.45 | |
| | | | |
| 2) Electronic Document Database: | | | |
| Access Data | $15,000.00 | | |
| Action Uptime | $26,641.25 | | |
| Total Electronic Document Database | | $41,641.25 | |
| | | | |
| 3) Mediations: | | | |
| Federal Arbitration, Inc. | $76,336.78 | | |
| Total Mediations | | $76,336.78 | |
| | | | |
| 4) Special Master: | | | |
| JAMS Inc. | $18,916.94 | | |
| Total Special Master | | $18,916.94 | |
| | | | |
| 5) Transcripts: | | | |
| Barkley Court Reporters | $822.80 | | |
| US Legal Support | $1,672.75 | | |
| Veritext | $144,577.55 | | |
| Total Transcripts | | $147,073.10 | |
| | | | |
| 6) Translations: | | | |
| Consorta Translation | $74,393.56 | | |
| Park IP Translations | $7,693.24 | | |
| Total Translations | | $82,086.80 | |
| **Total Expenses** | | | **$2,867,395.32** |
| **Total Remaning Balance** | | | **$132,604.68** |

# EXHIBIT 7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE OPTICAL DISK DRIVE ANTITRUST LITIGATION | Case No. 3:10-md-02143 RS |
| | MDL No. 2143 |
| This Document Relates to:<br><br>ALL DIRECT PURCHASER ACTIONS | [~~PROPOSED~~] ORDER GRANTING DIRECT PURCHASER PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS<br><br>Date: ~~May 14, 2015~~<br>Time: 1:30 p.m.<br>Judge: Honorable Richard Seeborg<br>Courtroom: 3, 17th Floor |

1    The Court, having reviewed Direct Purchaser Plaintiffs' Motion for an Award of Attorneys'

2    Fees, Reimbursement of Expenses, and Class Representative Incentive Awards (March 16, 2015)

3    ("Motion"), the pleadings and other papers on file in this action, [the responses of class members],

4    and the statements of counsel and the parties, hereby finds that:

5        1.    The Motion requests an award of attorneys' fees in the amount of $11,370,000 or

6    30% of the $37,900,000 Settlement Fund.[1] Further, Direct Purchaser Plaintiffs ("DPPs") and their

7    counsel ("Class Counsel") request reimbursement of out-of-pocket litigation costs and expenses in

8    the amount of $1,687,905.17. In addition, DPPs request that the Court approve the $1,593,268.18

9    in expenses paid with settlement funds.  Lastly, DPPs request incentive awards for the Class

10   Representatives as follows: $5,000 for each of the three class plaintiffs named only in the Second

11   Consolidated Amended Complaint,[2] and $10,000 for each of the six class plaintiffs named in the

12   Third Consolidated Amended Complaint,[3] for a total of $75,000.

13       2.    The Court finds that DPPs' requested fee award of $11,370,000—30% of the

14   Settlement Fund—is fair and reasonable under the percentage-of-the-recovery method based upon

15   the following factors: (1) the results obtained by Class Counsel in this case; (2) the risks and

16   complex issues involved in this case, which were significant and required a high level of skill and

17   high-quality work to overcome; (3) that the attorneys' fees requested were entirely contingent upon

18   success—Class Counsel risked time and effort and advanced costs with no ultimate guarantee of

19   compensation; (4) that the range of awards made in similar cases justifies an award of 30% here;

20   and (5) that the class members have been notified of the requested fees and had an opportunity

21   inform the Court of any concerns they have with the request. These factors justify an upward

22   adjustment of the Ninth Circuit's 25% benchmark. As such, the Court finds that the requested fee

23   award comports with the applicable law and is justified by the circumstances of this case.

24

25   _____

26   [1] The "Settlement Fund" consists of the total proceeds of the following settlements: $26,000,000
     (HLDS), $5,750,000 (Panasonic), and $6,150,000 (NEC).

27   [2] Univision-Crimson Holding, Inc.; Warren S. Herman; and The Stereo Shop.

28   [3] JLK Systems Group, Inc. and Jeff Kozik; Meijer, Inc. and Meijer Distribution, Inc.; Paul
     Nordine; Seneca Data Distributors, Inc.; Gregory Starrett; and Ashely Tremblay.

3.     The Court has confirmed the reasonableness of DPPs' fee request by conducting a lodestar cross-check. The Court finds that Class Counsel's reasonable lodestar was $24,811,762.75 based on historic hourly rates for the period from the appointment of lead counsel until December 31, 2014. Class Counsel's requested fee award represents less than 50% of their reasonable lodestar. This further supports the reasonableness of Class Counsel's fee request here.

4.     The Court finds that Class Counsel incurred a total of $3,281,173.35 in litigation costs and expenses in prosecuting this litigation as of December 31, 2014. The Court finds that these costs and expenses were reasonably incurred in the ordinary course of prosecuting this case and were necessary given the complex nature and nationwide scope of the case.

5.     Pursuant to *Radcliffe v. Experion Information Solutions*, 715 F.3d 1157 (9th Cir. 2013), the Court has carefully considered the requested incentive awards. The Court deems the application for incentive awards reasonable and justified given: (1) the risks—reputational, financial, and otherwise—faced by class representatives in bringing this lawsuit; and (2) the work performed and the active participation in the litigation and settlement processes by the class representatives on behalf of members of the class.

6.     In sum, upon consideration of the Motion and accompanying Declarations, and based upon all matters of record including the pleadings and papers filed in this action, the Court hereby finds that the fee requested is reasonable and proper; the costs and expenses incurred by Class Counsel were necessary, reasonable, and proper; and that incentive awards are appropriate given the time and effort expended by the Class Representatives in the prosecution of this case.

Accordingly, it is hereby ORDERED and DECREED that:

7.     Class Counsel are awarded attorneys' fees of $11,370,000 (30% of the $37,900,000 Settlement Fund), together with a proportional share of interest earned on the Settlement Fund for the same time period and at the same rate as that earned on the Settlement Fund until dispersed to Class Counsel.

8.     Class Counsel are awarded reimbursement of their litigation costs and expenses in the amount of $1,687,905.17.

9.      The $1,593,268.18 in costs and expenses paid directly from the Court-ordered settlement funds are approved.

10.     The SCAC Class Representatives—Univision-Crimson Holding, Inc.; Warren S. Herman; and The Stereo Shop—shall each receive an incentive award in the amount of $5,000.

11.     The TCAC Class Representatives—JLK Systems Group, Inc. and Jeff Kozik; Meijer, Inc. and Meijer Distribution, Inc.; Paul Nordine; Seneca Data Distributors, Inc.; Gregory Starrett; and Ashely Tremblay—shall each receive an incentive award in the amount of $10,000.

12.     The attorneys' fees awarded, reimbursement of litigation costs and expenses, and incentive awards shall be paid from the Settlement Fund and the interest earned thereon.

13.     The fees and expenses shall be allocated among Class Counsel by the Chairman of the Executive Committee in a manner that, in the Chairman's good-faith judgment, reflects each firm's contribution to the institution, prosecution, and resolution of the litigation.

14.     This order shall be entered of this date pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court finding that there is no just reason for delay.

**IT IS SO ORDERED.**

Dated: July 23, 2015

_____
HON. RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

# EXHIBIT 8

LIDIA MAHER (CSBN 222253)
MAY LEE HEYE (CSBN 209366)
TAI S. MILDER (CSBN 267070)
Antitrust Division
U.S. Department of Justice
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
Telephone: (415) 436-6660

Attorneys for the United States

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>      v.<br><br>SAMSUNG SDI COMPANY, LTD.,<br><br>                Defendant. | Case No. CR 11-0162 (WHA) |

## AMENDED PLEA AGREEMENT

The United States of America and Samsung SDI Company, Ltd. ("defendant"), a corporation organized and existing under the laws of the Republic of Korea, hereby enter into the following Amended Plea Agreement ("Plea Agreement") pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

## RIGHTS OF DEFENDANT

1.     The defendant understands its rights:

        (a)     to be represented by an attorney;

        (b)     to be charged by Indictment;

        (c)     as a corporation organized and existing under the laws of the Republic of Korea, to decline to accept service of the Summons in this case, and to contest the jurisdiction of the United States to prosecute this case against it in the United States District Court for the Northern District of California;

PLEA AGREEMENT - SAMSUNG SDI - PAGE 1

(d)     to plead not guilty to any criminal charge brought against it;

(e)     to have a trial by jury, at which it would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for it to be found guilty;

(f)     to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

(g)     to appeal its conviction if it is found guilty; and

(h)     to appeal the imposition of sentence against it.

## AGREEMENT TO PLEAD GUILTY AND WAIVE CERTAIN RIGHTS

2.     The defendant knowingly and voluntarily waives the rights set out in Paragraph 1(b)-(g) above, including all jurisdictional defenses to the prosecution of this case, and agrees voluntarily to consent to the jurisdiction of the United States to prosecute this case against it in the United States District Court for the Northern District of California. The defendant also knowingly and voluntarily waives the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is consistent with or below the recommended sentence in Paragraph 8 of this Plea Agreement, regardless of how the sentence is determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b) and (c). Nothing in this paragraph, however, shall act as a bar to the defendant perfecting any legal remedies it may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty at arraignment to a one-count Information to be filed in the United States District Court for the Northern District of California. The Information will charge the defendant with participating in a conspiracy to suppress and eliminate competition by fixing prices, reducing output, and allocating market shares of color display tubes ("CDTs") sold in the United States and elsewhere, from at least as early as January 1997, until at least as late as March 2006, in violation of the Sherman Antitrust

PLEA AGREEMENT - SAMSUNG SDI - PAGE 2

1   Act, 15 U.S.C. § 1.

2        3.      The defendant, pursuant to the terms of this Plea Agreement, will plead guilty to

3   the criminal charge described in Paragraph 2 above and will make a factual admission of guilt to

4   the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

5                  **FACTUAL BASIS FOR OFFENSE CHARGED**

6        4.      Had this case gone to trial, the United States would have presented evidence

7   sufficient to prove the following facts:

8        (a)     For purposes of this Plea Agreement, the "relevant period" is that period from at

9   least as early as January 1997, until at least as late as March 2006. During the relevant period,

10   the defendant was a corporation organized and existing under the laws of the Republic of Korea.

11   The defendant has its principal place of business in Giheung, Republic of Korea. During the

12   relevant period, the defendant was a producer of CDTs, was engaged in the sale of CDTs in the

13   United States and elsewhere, and employed over 5,000 individuals.

14        (b)     CDTs are a type of cathode ray tube. Cathode ray tubes consist of evacuated glass

15   envelopes that contain an electron gun and a phosphorescent screen. When electrons strike the

16   screen, light is emitted, creating an image on the screen. CDTs are the specialized cathode ray

17   tubes manufactured for use in computer monitors and other products with similar technological

18   requirements. CDTs are distinguished from another type of specialized cathode ray tube product,

19   color picture tubes ("CPTs"), which are manufactured for use in televisions.

20        (c)     During the relevant period, the defendant, through its officers and employees,

21   including high-level personnel of the defendant, participated in a conspiracy among major CDT

22   producers, the primary purpose of which was to fix prices, reduce output, and allocate market

23   shares of CDTs sold in the United States and elsewhere. In furtherance of the conspiracy, the

24   defendant, through its officers and employees, engaged in discussions and attended meetings

25   with representatives of other major CDT producers. During these discussions and meetings,

26   agreements were reached to fix prices, reduce output, and allocate market shares of CDTs to be

27   sold in the United States and elsewhere.

28        (d)     During the relevant period, CDTs sold by one or more of the conspirator firms,

PLEA AGREEMENT - SAMSUNG SDI - PAGE 3

and equipment and supplies necessary to the production and distribution of CDTs, as well as payments for CDTs, traveled in interstate and foreign commerce. The business activities of the defendant and its co-conspirators in connection with the production and sale of CDTs that were the subjects of this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce. During the relevant period, the defendant's CDT sales, directly affected by the conspiracy, to customers in the United States totaled approximately $89 million.

(e)     Acts in furtherance of this conspiracy were carried out within the Northern District of California. CDTs that were the subject of this conspiracy were transported by one or more of the conspirators through this District.

## POSSIBLE MAXIMUM SENTENCE

5.     The defendant understands that the statutory maximum penalty which may be imposed against it upon conviction for a violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

(a)     $100 million (15 U.S.C. § 1);

(b)     twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

(c)     twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

6.     In addition, the defendant understands that:

(a)     pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years;

(b)      pursuant to §8B1.1 of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order it to pay restitution to the victims of the offense; and

(c)     pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction for the charged crime.

///
///

PLEA AGREEMENT - SAMSUNG SDI - PAGE 4

1

**SENTENCING GUIDELINES**

2       7.     The defendant understands that the Sentencing Guidelines are advisory, not

3 mandatory, but that the Court must consider the Guidelines in effect on the day of sentencing,

4 along with the other factors set forth in 18 U.S.C. § 3553(a), in determining and imposing

5 sentence. The defendant understands that the Guidelines determinations will be made by the

6 Court by a preponderance of the evidence standard. The defendant understands that although the

7 Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its

8 sentence must be reasonable based upon consideration of all relevant sentencing factors set forth

9 in 18 U.S.C. § 3553(a). Pursuant to U.S.S.G. §1B1.8, the United States agrees that

10 self-incriminating information that the defendant provides to the United States pursuant to this

11 Plea Agreement will not be used to increase the volume of affected commerce attributable to the

12 defendant or in determining the defendant's applicable Guidelines range, except to the extent

13 provided in U.S.S.G. §1B1.8(b).

14

**SENTENCING AGREEMENT**

15       8.     Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant

16 agree that the appropriate disposition of this case is, and agree to recommend jointly that the

17 Court impose, a sentence within the applicable Guidelines range requiring the defendant to pay to

18 the United States a criminal fine of $32 million, and no order of restitution ("the recommended

19 sentence"). The parties agree that there exists no aggravating or mitigating circumstance of a

20 kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission

21 in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. §5K2.0.

22 The parties agree not to seek or support any sentence outside of the Guidelines range nor any

23 Guidelines adjustment for any reason that is not set forth in this Plea Agreement. The parties

24 further agree that the recommended sentence set forth in this Plea Agreement is reasonable.

25          (a)     The defendant understands that the Court will order it to pay a $400

26         special assessment, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine

27         imposed.

28         (b)     Both parties will recommend that no term of probation be imposed, but the

PLEA AGREEMENT - SAMSUNG SDI - PAGE 5

1   defendant understands that the Court's denial of this request will not void this Plea

2   Agreement.

3          (c)     The United States and the defendant jointly submit that this Plea

4   Agreement, together with the record that will be created by the United States and the

5   defendant at the plea and sentencing hearings, and the further disclosure described in

6   Paragraph 9, will provide sufficient information concerning the defendant, the crime

7   charged in this case, and the defendant's role in the crime to enable the meaningful

8   exercise of sentencing authority by the Court under 18 U.S.C. § 3553. The United States

9   and defendant agree to request jointly that the Court accept the defendant's guilty plea

10  and impose sentence on an expedited schedule as early as the date of arraignment, based

11  upon the record provided by the defendant and the United States, under the provisions of

12  Fed. R. Crim. P. 32(c)(1)(A)(ii), U.S.S.G. §6A1.1, and Rule 32-1(b) of the Criminal

13  Local Rules. The Court's denial of the request to impose sentence on an expedited

14  schedule will not void this Plea Agreement.

15      9.      Subject to the ongoing, full, and truthful cooperation of the defendant described in

16  Paragraph 12 of this Plea Agreement, and before sentencing in the case, the United States will

17  fully advise the Court of the fact, manner, and extent of the defendant's cooperation and its

18  commitment to prospective cooperation with the United States' investigation and prosecutions,

19  all material facts relating to the defendant's involvement in the charged offense, and all other

20  relevant conduct.

21      10.     The United States and the defendant understand that the Court retains complete

22  discretion to accept or reject the recommended sentence provided for in Paragraph 8 of this Plea

23  Agreement.

24          (a)     If the Court does not accept the recommended sentence, the United States

25  and the defendant agree that this Plea Agreement, except for Paragraph 10(b) below, shall

26  be rendered void.

27          (b)     If the Court does not accept the recommended sentence, the defendant will

28  be free to withdraw its guilty plea (Fed. R. Crim. P. 11(c)(5) and (d)). If the defendant

PLEA AGREEMENT - SAMSUNG SDI - PAGE 6

withdraws its plea of guilty, this Plea Agreement, the guilty plea, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty plea or this Plea Agreement or made in the course of plea discussions with an attorney for the government shall not be admissible against the defendant in any criminal or civil proceeding, except as otherwise provided in Fed. R. Evid. 410. In addition, the defendant agrees that, if it withdraws its guilty plea pursuant to this subparagraph of the Plea Agreement, the statute of limitations period for any offense referred to in Paragraph 16 of this Plea Agreement shall be tolled for the period between March 10, 2011 and the date the defendant withdrew its guilty plea or for a period of sixty (60) days after the date of the signing of the Plea Agreement, whichever period is greater.

11.     In light of the civil class action cases filed against the defendant, including *In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. C07-5944 SC, MDL No. 1917, in the United States District Court, Northern District of California, which potentially provide for a recovery of a multiple of actual damages, and the opportunity for potential victims to pursue damages through non-class claims in the multidistrict litigation and other proceedings, the United States and the defendant agree that the recommended sentence provided for in Paragraph 8 of this Plea Agreement does not include a restitution order for the offense charged in the Information.

## DEFENDANT'S COOPERATION

12.     The defendant, its subsidiaries, and related corporate entities engaged in the sale or production of any cathode ray tube products, including CDTs and CPTs (collectively, "related entities") will cooperate fully and truthfully with the United States in the prosecution of this case, the conduct of the current federal investigation of violations of federal antitrust and related criminal laws involving the manufacture or sale of CDTs and CPTs in the United States and elsewhere, any other federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party ("Federal Proceeding"). The ongoing, full, and truthful cooperation of the defendant shall include, but not be limited to:

(a)     producing to the United States all non-privileged documents, information,

PLEA AGREEMENT - SAMSUNG SDI - PAGE 7

and other materials wherever located, in the possession, custody, or control of the defendant or any of its related entities, requested by the United States in connection with any Federal Proceeding; and

(b)     using its best efforts to secure the ongoing, full, and truthful cooperation, as defined in Paragraph 13 of this Plea Agreement, of the current and former directors, officers, and employees of the defendant or any of its related entities as may be requested by the United States – but excluding Jae-Sik Kim, Seung-Kyu Park, a.k.a. Sang-Kyu Park, a.k.a. Sky Park, Duck-Yun Kim, a.k.a. Deok-Yun Kim, a.k.a. Deok-Yeon Kim, and Hoo-Mok Ha, a.k.a. Hu-Mok Ha – including making these persons available in the United States and at other mutually agreed-upon locations, at the defendant's expense, for interviews and the provision of testimony in grand jury, trial, and other judicial proceedings in connection with any Federal Proceeding.

13.     The ongoing, full, and truthful cooperation of each person described in Paragraph 12(b) above will be subject to the procedures and protections of this paragraph, and shall include, but not be limited to:

(a)     producing in the United States and at other mutually agreed-upon locations all non-privileged documents, including claimed personal documents, and other materials, wherever located, requested by attorneys and agents of the United States;

(b)     making himself or herself available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States;

(c)     responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making false statements (18 U.S.C. § 1001) and obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(d)     otherwise voluntarily providing the United States with any non-privileged material or information not requested in (a) - (c) of this paragraph that he or she may have that is related to any Federal Proceeding;

PLEA AGREEMENT - SAMSUNG SDI - PAGE 8

(e)     when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402), and obstruction of justice (18 U.S.C. § 1503, *et seq.*); and

(f)     agreeing that, if the agreement not to prosecute him or her in this Plea Agreement is rendered void under Paragraph 15(c), the statute of limitations period for any Relevant Offense as defined in Paragraph 15(a) shall be tolled as to him or her for the period between the date of the signing of this Plea Agreement and six (6) months after the date that the United States gave notice of its intent to void its obligations to that person under the Plea Agreement.

## GOVERNMENT'S AGREEMENT

14.     Upon acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence, and subject to the cooperation requirements of Paragraph 12 of this Plea Agreement, the United States agrees that it will not bring further criminal charges against the defendant or any of its related entities for any act or offense committed before the date of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the manufacture or sale of any cathode ray tube products, including CDTs and CPTs, in the United States and elsewhere. The nonprosecution terms of this paragraph do not apply to civil matters of any kind, to any violation of the federal tax or securities laws, or to any crime of violence.

15.     The United States agrees to the following:

(a)     Upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of the recommended sentence and subject to the exceptions noted in Paragraph 15(c), the United States will not bring criminal charges against any current or former director, officer, or employee of the defendant or its related entities for any act or offense committed before the date of this Plea Agreement and while

PLEA AGREEMENT - SAMSUNG SDI - PAGE 9

that person was acting as a director, officer, or employee of the defendant or its related

entities that was undertaken in furtherance of an antitrust conspiracy involving the

manufacture or sale of any cathode ray tube products, including CDTs and CPTs, in the

United States and elsewhere ("Relevant Offense"), except that the protections granted in

this paragraph shall not apply to Jae-Sik Kim, Seung-Kyu Park, a.k.a. Sang-Kyu Park,

a.k.a. Sky Park, Duck-Yun Kim, a.k.a. Deok-Yun Kim, a.k.a. Deok-Yeon Kim, and Hoo-

Mok Ha, a.k.a. Hu-Mok Ha;

(b)     Should the United States determine that any current or former director,

officer, or employee of the defendant or its related entities may have information relevant

to any Federal Proceeding, the United States may request that person's cooperation under

the terms of this Plea Agreement by written request delivered to counsel for the

individual (with a copy to the undersigned counsel for the defendant) or, if the individual

is not known by the United States to be represented, to the undersigned counsel for the

defendant;

(c)     If any person requested to provide cooperation under Paragraph 15(b) fails

to comply with his or her obligations under Paragraph 13, then the terms of this Plea

Agreement as they pertain to that person, and the agreement not to prosecute that person

granted in this Plea Agreement, shall be rendered void;

(d)     Except as provided in Paragraph 15(e), information provided by a person

described in Paragraph 15(b) to the United States under the terms of this Plea Agreement

pertaining to any Relevant Offense, or any information directly or indirectly derived from

that information, may not be used against that person in a criminal case, except in a

prosecution for perjury (18 U.S.C. § 1621), making a false statement or declaration

(18 U.S.C. §§ 1001, 1623), or obstruction of justice (18 U.S.C. § 1503, *et seq.*);

(e)     If any person who provides information to the United States under this

Plea Agreement fails to comply fully with his or her obligations under Paragraph 13 of

this Plea Agreement, the agreement in Paragraph 15(d) not to use that information or any

information directly or indirectly derived from it against that person in a criminal case

PLEA AGREEMENT - SAMSUNG SDI - PAGE 10

1 | shall be rendered void;

2 | (f) The nonprosecution terms of this paragraph do not apply to civil matters of

3 | any kind, to any violation of the federal tax or securities laws, or to any crime of violence;

4 | and

5 | (g) Documents provided under Paragraphs 12(a) and 13(a) shall be deemed

6 | responsive to outstanding grand jury subpoenas issued to the defendant or any of its

7 | related entities.

8 | 16. The United States agrees that when any person travels to the United States for

9 | interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for

10 | meetings with counsel in preparation therefor, the United States will take no action, based upon

11 | any Relevant Offense, to subject such person to arrest, detention, or service of process, or to

12 | prevent such person from departing the United States. This paragraph does not apply to an

13 | individual's commission of perjury (18 U.S.C. § 1621), making false statements (18 U.S.C. §

14 | 1001), making false statements or declarations in grand jury or court proceedings (18 U.S.C. §

15 | 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or contempt (18 U.S.C. §§ 401-402) in

16 | connection with any testimony or information provided or requested in any Federal Proceeding.

17 | 17. The defendant understands that it may be subject to administrative action by

18 | federal or state agencies other than the United States Department of Justice, Antitrust Division,

19 | based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in

20 | no way controls whatever action, if any, other agencies may take. However, the United States

21 | agrees that, if requested, it will advise the appropriate officials of any governmental agency

22 | considering such administrative action of the fact, manner, and extent of the cooperation of the

23 | defendant and its related entities as a matter for that agency to consider before determining what

24 | administrative action, if any, to take.

25 | **REPRESENTATION BY COUNSEL**

26 | 18. The defendant has been represented by counsel and is fully satisfied that its

27 | attorneys have provided competent legal representation. The defendant has thoroughly reviewed

28 | this Plea Agreement and acknowledges that counsel has advised it of the nature of the charge,

PLEA AGREEMENT - SAMSUNG SDI - PAGE 11

any possible defenses to the charge, and the nature and range of possible sentences.

## **VOLUNTARY PLEA**

19.     The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement. The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## **VIOLATION OF PLEA AGREEMENT**

20.     The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant or any of its related entities have failed to provide full and truthful cooperation, as described in Paragraph 12 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant and its related entities shall be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The defendant may seek Court review of any determination made by the United States under this Paragraph to void any of its obligations under the Plea Agreement. The defendant and its related entities agree that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant or its related entities for any offense referred to in Paragraph 14 of this Plea Agreement, the statute of limitations period for such offense shall be tolled for the period between the date of the signing of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

21.     The defendant understands and agrees that in any further prosecution of it or its related entities resulting from the release of the United States from its obligations under this Plea Agreement, because of the defendant's or its related entities' violation of the Plea

PLEA AGREEMENT - SAMSUNG SDI - PAGE 12

1   Agreement, any documents, statements, information, testimony, or evidence provided by it, its

2   related entities, or current or former directors, officers, or employees of it or its related entities to

3   attorneys or agents of the United States, federal grand juries, or courts, and any leads derived

4   therefrom, may be used against it or its related entities in any such further prosecution. In

5   addition, the defendant unconditionally waives its right to challenge the use of such evidence in

6   any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

7                                      **ENTIRETY OF AGREEMENT**

8         22.     This Plea Agreement constitutes the entire agreement between the

9   United States and the defendant concerning the disposition of the criminal charge in this case.

10   This Plea Agreement cannot be modified except in writing, signed by the United States and the

11   defendant.

12         23.     The undersigned is authorized to enter this Plea Agreement on behalf of the

13   defendant as evidenced by the Resolution of the Board of Directors of the defendant attached to,

14   and incorporated by reference in, this Plea Agreement.

15         24.     The undersigned attorneys for the United States have been authorized

16   by the Attorney General of the United States to enter this Plea Agreement on behalf of the United

17   States.

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

PLEA AGREEMENT - SAMSUNG SDI - PAGE 13

1        25.    A facsimile or PDF signature shall be deemed an original signature for the

2   purpose of executing this Plea Agreement. Multiple signature pages are authorized for the

3   purpose of executing this Plea Agreement.

4

Respectfully submitted,

5

6 BY: _____     BY: _____

7   Sang Soo Noh                 Lidia Maher
    Vice President                 May Lee Heye

8   Samsung SDI Company, Ltd.       Tai S. Milder
    428-5 Gongse-dong           Attorneys

9   Giheung-gu, Yongin-si         U.S. Department of Justice
    Gyeonggi-do, 446-577         Antitrust Division

10  Republic of Korea            450 Golden Gate Avenue
                            Box 36046, Room 10-0101

11  DATED: ___5/12/2011___    San Francisco, California 94102
                            Tel: (415) 436-6660

12                             Fax: (415) 436-6687

13                            DATED: May 12, 2011

14

15 BY: _____

16  Gary L. Halling, Esq.
    Counsel for Samsung SDI Company, Ltd.
    Sheppard Mullin Richter & Hampton LLP

17  Four Embarcadero Center, 17th Floor
    San Francisco, California 94111

18  Tel: (415) 434-9100
    Fax: (415) 434-3947

19  DATED: May 12, 2011

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT - SAMSUNG SDI - PAGE 14

RESOLUTION OF THE BOARD OF DIRECTORS
OF
SAMSUNG SDI CO., LTD.


A meeting of the Board of Directors (the "Board") of SAMSUNG SDI, CO., LTD. (the "Company"), a Korean corporation, was held on March 9, 2011 at the Company's Seoul office having its address at 21st Fl., SEC Bldg., Samsung Seocho Tower, 1320-10 Seocho 2-Dong, Seocho-Gu, Seoul 137-965, Korea.


The following Directors of the Company were present and constituted a quorum:


MR. CHI HUN CHOI
MR. JUNG WHA LEE
MR. BYEONG BOK JEON
MR. YEONG KIL BAE
MR. JUNE CHULL CHANG
MS. HEE KYUNG KIM


The following resolutions are hereby adopted by the Board of the Company in accordance with the Commercial Laws of Korea:

WHEREAS, it is deemed in the best interest of the Company to enter a plea agreement with the United States Department of Justice;

NOW, THEREFORE, be it

RESOLVED, that execution, delivery and performance of a plea agreement, by and between the Company and the United States Department of Justice (the "Agreement"), in substantially the form made available to the Board, is

hereby approved; and

FUTHER RESOLVED, that MR. SANG SOO NOH, the Vice President of the Company, is hereby fully authorized to execute the Agreement and any other related documents on behalf of the Company and take all necessary actions, including representing the Company at any hearing in order to waive any and all rights of the Company referred to in the Agreement and to plead guilty on behalf of the Company according to the terms of the Agreement.

DATE:   MARCH 9, 2011


----------------------------          ----------------------------
MR. CHI HUN CHOI                      MR. JUNG WHA LEE


----------------------------          ----------------------------
MR. BYEONG BOK JEON                   MR. YEONG KIL BAE


----------------------------          ----------------------------
MR. JUNE CHULL CHANG                  MS. HEE KYUNG KIM

2/2

# EXHIBIT 9

1  Counsel Listed on Signature Page

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10                            **OAKLAND DIVISION**

11  **IN RE STATIC RANDOM ACCESS**      )   **Master File No. 4:07-md-01819-CW**
    **MEMORY (SRAM) ANTITRUST**         )
12  **LITIGATION**                      )   **MDL No. 1819**
                                        )
13  _____ )
                                        )   **ORDER AWARDING CLASS**
14  **This Document Relates to:**       )   **COUNSEL ATTORNEYS' FEES,**
                                        )   **REIMBURSEMENT OF EXPENSES AND**
15  **ALL DIRECT PURCHASER**            )   **INCENTIVE AWARD**
    **ACTIONS**                         )
16                                      )
                                        )
17                                      )
                                        )
18  _____ )

19

20

21

22

23

24

25

26

27

28

**ORDER AWARDING CLASS COUNSEL ATTORNEYS' FEES,**
**REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARD**
**Case No. 4:07-md-01819-CW; MDL No. 1819**

The Court, having considered Direct Purchaser Plaintiffs Motion for Award of Attorney's Fees, Reimbursement for Expenses, and Incentive Award (Dkt. No. 1334) (the "Motion") and the declarations in support thereof, in addition to the findings stated on the record at such hearing, hereby finds that:

1.      The Motion for Attorneys' Fees and Reimbursement of Expenses requests an award of attorneys' fees of 30% of Settlement Fund, which is comprised of all of the Settling Defendants' settlement payments ($76,872,476.99), as well as the interest earned thereon. Further, Plaintiff's counsel ("Class Counsel") request reimbursement of out-of-pocket litigation costs and expenses, as well anticipated expenses related to administration of the Settlement Fund, and an incentive award to the sole Class representative.

2.      The Court finds that the amount of fees requested is fair and reasonable under the "percentage-of-recovery" method, including as confirmed by a lodestar "cross-check."

3.      The attorneys' fees requested were entirely contingent upon success. Class Counsel risked time and effort and advanced costs and expenses with no ultimate guarantee of compensation. The award of 30% is warranted for reasons including: the result obtained for the class – payment by Defendants of more than $75 million; the quality and quantity of work performed by Class Counsel over more than four years of litigation – such as substantial motion practice on complex issues; the risks faced at the outset and throughout the litigation – such as proceeding after the Department of Justice closed its criminal investigation without seeking any indictments; and, the lodestar "cross-check" – which reveals a 1.01 multiplier for Class Counsel's more than 66,000 hours working on the case.

4.       Further, the expenses sought were or will be incurred in connection with the prosecution of the litigation or the anticipated administration of the Settlement Fund for the benefit of the Class (and that, before Settlement funds are distributed to Class members, Class Counsel will provide this Court with an accounting of the anticipated expenses that were actually incurred).

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

**ORDER AWARDING CLASS COUNSEL ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARD**
**Case No. 4:07-md-01819-CW; MDL No. 1819**

1

5. Since the filing of Direct Purchaser Plaintiffs Motion for Award of Attorney's Fees, Reimbursement for Expenses, and Incentive Award (Dkt. No. 1334), Direct Purchaser Plaintiffs received an invoice from Resonant Legal Media in connection with the prosecution of this litigation in preparation for trial in the amount of $38,205.66.

6. Additionally, the sole Class representative is entitled to the requested incentive award because of its work performed for the benefit of the Class and the risks undertaken.

7. In excess of 5,000 notices outlining Class Counsels' requests were provided to Class Members. No objections were received.

8. Upon consideration of the Motion and accompanying Declarations and based upon all matters of record including the pleadings and papers filed in this action, the Court hereby finds that the fee requested is reasonable and proper, that the costs and expenses incurred by Class Counsel were necessary, reasonable and proper, and that the incentive award is warranted.

**Accordingly, it is hereby ORDERED and DECREED that:**

A. Class Counsel are awarded attorneys' fees of thirty percent (30%) of the Settlement Fund ($76,872,476.99), including interest earned on the Settlement Fund up to the date of disbursement to Class Counsel.

B. Class Counsel are awarded reimbursement of their litigation costs and expenses in the amount of $570,174.61, and are authorized to pay from the Settlement Fund expenses related to administration of the Settlement Fund (that are actually incurred), but which will, except upon application to the Court, not exceed a total amount of $735,000.00.

C. The attorneys' fees awarded, reimbursement of litigation costs and expenses, and the incentive award, shall be paid from the Settlement Fund and the interest earned thereon.

D. The fees and expenses shall be allocated among Class Counsel by Lead Counsel (Cotchett, Pitre & McCarthy, LLP), in a manner which, in Lead Counsel's good-faith judgment, reflects each firm's contribution to the institution, prosecution and resolution of the litigation.

LAW OFFICES
COTCHETT,
PITRE, &
MCCARTHY, LLP

**ORDER AWARDING CLASS COUNSEL ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARD**
**Case No. 4:07-md-01819-CW; MDL No. 1819**                                    2

E.    Direct Purchaser Plaintiffs will pay the invoice from Resonant Legal Media in connection with the prosecution of this litigation in preparation for trial in the amount of $38,205.66 from the Settlement Fund.

F.    The sole Class representative, Westell, is awarded $50,000.00.

G.    This order shall be entered as of this date pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court finding that there is no just reason for delay.

**IT IS SO ORDERED**.

Date:   June 30, 2011

THE HONORABLE CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE

*Submitted by:*

JOSEPH W. COTCHETT (#36324)
STEVEN N. WILLIAMS (#175489)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577
jcotchett@cpmlegal.com
swilliams@cpmlegal.com

*Lead Counsel for the Direct Purchaser Class*



LAW OFFICES
COTCHETT,
PITRE, &
McCARTHY, LLP

**ORDER AWARDING CLASS COUNSEL ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARD
Case No. 4:07-md-01819-CW; MDL No. 1819**

3

# EXHIBIT 10

Joseph R. Saveri (State Bar No. 130064)
*jsaveri@lchb.com*
Brendan Glackin (State Bar No. 199643)
*bglackin@lchb.com*
Sarah London (State Bar No. 267083)
*slondon@lchb.com*
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Attorneys for Plaintiffs Meijer, Inc., et al. and the
Customer Plaintiff Class*

[Additional Counsel Appear or Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MEIJER, INC., *et al.,* on behalf of themselves and all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES,<br><br>Defendant. | Case No.: No C. 07-5985 CW<br><br>**CONSOLIDATED CASE**<br><br>[~~PROPOSED~~] ORDER GRANTING FINAL APPROVAL OF SETTLEMENT AND ENTERING FINAL JUDGMENT OF DISMISSAL WITH PREJUDICE<br><br>Date: August 11, 2011<br>Time: 2:00 p.m.<br>Courtroom: 2<br><br>The Honorable Claudia Wilken |

This matter has come before the Court to determine whether there is any cause why this Court should not approve the settlement with defendant Abbott Laboratories and Class Customer Plaintiffs, pursuant to Rules 23(e) and 54(b) of the Federal Rules of Civil Procedure, and in accordance with the terms of the Settlement Agreement, dated April 6, 2011. The Court, after carefully considering all papers filed and proceedings held herein and otherwise being fully informed in the premises, has determined: (a) the settlement is fair and reasonable and should be

finally approved; (b) the proposed plan of allocation of the Settlement Fund should be approved; (c) the proposed awards of attorneys' fees and reimbursement of the expenses to Class Counsel should be approved; (d) incentive awards should be awarded to the named plaintiffs; and (e) a final judgment terminating this litigation should be entered. Good cause appearing therefore, it is:

**ORDERED, ADJUDGED AND DECREED that:**

1.      This Court has jurisdiction over this Customer Class Action and each of the parties to the Settlement Agreement including all Class Members.

2.      This Order and Final Judgment incorporates by reference the definitions in the Settlement Agreement and all terms used herein shall have the same meanings set forth in the Settlement Agreement. As set forth in the Preliminary Approval Order [D.E. 508], dated April 20, 2011, the previously certified Class is defined as follows:

> All persons or entities in the United States who purchased Norvir and/or Kaletra directly from Abbott Laboratories ("Abbott") or any of its divisions, subsidiaries, predecessors, or affiliates during the period from December 3, 2003 through August 27, 2008 ("Class Period").

> Excluded from the Class are Abbott and its divisions, subsidiaries, predecessors or affiliates, all governmental entities, and the following additional entities: American Sales Company, Inc.; Caremark, L.L.C.; CVS Pharmacy, Inc., Eckerd Corporation; HEB Grocery Company LLP; JCG (PJC) USA, LLC; Maxi Drug, Inc. d/b/a Brooks Pharmacy; New Albertson's Inc.; Rite Aid Corporation; Rite Aid HDGTRS. Corp.; Safeway Inc.,; SmithKline Beecham Corp. d/b/a GlaxoSmithKline; The Kroger Co.; and Walgreen Co.

3.      The Court finds that due notice was given in accordance with the Preliminary Approval Order, and that the form and content of the Notice, Publication Notice, and Proof of Claim, and the procedures for publication, mailing, and distribution thereof as set forth in the Preliminary Approval order, satisfy the requirements of Fed. R. Civ. P. 23(e) and due process and constitute the best notice practicable under the circumstances.

                                                                       [PROPOSED] ORDER

4.     Due to the adequate notice of the proceedings having been given to the Class and a full opportunity having been offered to the Class to participate in the fairness hearing, and given that no members of the Class have opted out, it is hereby determined that all Class Members are bound by this Order and Final Judgment.

5.     The settlement of this Customer Class Action as to Abbott was not the product of collusion between Customer Plaintiffs and Defendant or its counsel, but rather was the result of *bona fide* and arm's-length negotiations conducted in good faith between Class Counsel and Abbott's Counsel.

6.     The Court has held a hearing to consider the fairness, reasonableness and adequacy of the proposed settlement, and has been advised that there have been no objections to the settlement from any members of the Class.

7.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finally approves in all respects the Settlement as set forth in the Settlement Agreement and finds that the Settlement is in all respects, fair, reasonable, adequate, and in the best interests of the Class.  The Court further approves the establishment of the Settlement Fund upon the terms and conditions set forth in the Settlement Agreement.  The parties are hereby directed to carry out the Settlement in accordance with its terms and provisions.

8.     The Court approves the Plan of Allocation of Settlement Proceeds as proposed by Class Counsel as fair and reasonable.  Epiq Systems, Inc., the company the Court previously appointed as claims administrator ("Claims Administrator"), is directed to administer the Settlement in accordance with the terms and conditions of the Settlement Agreement.  All expenses incurred by the Class Administrator must be reasonable, are subject to Court approval, and shall be payable solely from the Settlement Fund. The Claims Administrator will distribute the Settlement Funds to the Class on a *pro rata* basis in the manner described in the Plan of Allocation.

9.     All claims in the above-captioned action against Abbott are hereby dismissed with prejudice, and without costs, with the Court retaining jurisdiction for the limited purpose of enforcing compliance with the terms and conditions of the Settlement Agreement and this Order

1 and Final Judgment. All Released Claims of the Customer Plaintiffs and Customer Class in the

2 above-captioned Action are released and dismissed with prejudice, and, except as provided for in

3 the Settlement Agreement, without costs.

4        10.    All Class Members shall be forever enjoined and barred from asserting any of the

5 matters, claims or causes of action released by the Settlement Agreement, and all Class Members

6 shall be deemed to have forever release any and all such matters, claims and causes of action as

7 provided in the Settlement Agreement.

8        11.    Class Counsel are awarded Attorneys' Fees and Expenses in the amount of one-

9 third of the gross settlement amount – *i.e.*, one-third of $52 million, or $17,333,333.33 – for

10 attorneys' fees and reasonable costs and expenses of $1,901,251.13 incurred in the representation

11 of the Customer Class, for a total Attorneys' Fees and Expenses award of $19,234,584.46. The

12 Court finds that the amount of Attorneys' Fees and Expenses awarded is fair and reasonable. The

13 award of Attorneys' Fees and Expenses shall be allocated among Class Counsel in a fashion

14 which, in the opinion of Co-Lead Counsel, fairly compensates Class Counsel for their respective

15 contributions in the prosecution of this Action. The Attorneys' Fees and Expenses awarded shall

16 be paid out of the Settlement Fund.

17        12.    Neither this Order and Final Judgment, the Settlement Agreement, nor any of its

18 terms or the negotiations or papers related thereto shall constitute evidence or an admission by

19 any party or Release that any acts of wrongdoing have been committed, and they shall not be

20 deemed to create any inference that there is any liability therefore. Neither this Order and Final

21 Judgment, the Settlement Agreement, nor any of the terms or negotiations or papers related

22 thereto shall be offered or received in evidence or used for any purpose whatsoever, in this or any

23 other matter or proceeding in any court, administrative agency, arbitration or other tribunal, other

24 than as expressly set forth in the Settlement Agreement.

25        13.    Without affecting the finality of the judgment, the Court retains exclusive

26 jurisdiction over the Settlement Agreement, including the administration and consummation of

27 the Settlement Agreement, Plan of Allocation, and in order to determine any issues relating to the

28 attorneys' fees and expenses and any distribution to members of the Class. In addition, without

1  affecting the finality of this judgment, Defendants and each member of the Class hereby

2  irrevocably submit to the exclusive jurisdiction of the United States District Court for the

3  Northern District of California, for any suit, action, proceeding or dispute arising out of or

4  relating to the Settlement Agreement or the applicability of the Settlement Agreement, including,

5  without limitation any suit, action, proceeding or dispute relating to the release provisions therein.

6      14.    The Class Representatives Meijer Inc., Louisiana Wholesale Drug Co., Inc., and

7  Rochester Drug Cooperative are each hereby awarded $60,000, to be paid out of the Settlement

8  Fund, for representing the Customer Class, which amount is in addition to whatever monies these

9  plaintiffs will receive from the Settlement Fund pursuant to the Plan of Allocation.  This Court

10  finds these awards to be fair and reasonable.

11      15.    In the event the Settlement does not become final, this Order and Final Judgment

12  shall be rendered null and void as provided by the Settlement Agreement, shall be vacated, and all

13  orders entered and releases delivered in connection herewith shall be null and void to the extent

14  provided by and in accordance with the Settlement Agreement.

15      16.    The Court hereby directs that this judgment be entered by the clerk forthwith

16  pursuant to Federal Rule of Civil Procedure 54(b).

18      **SO ORDERED** this the **11th** day of **August**, 2011.

22  Hon. Claudia Wilken
23  U.S. District Court for the
    Northern District of California