Guido Saveri (Bar No. 22349)
R. Alexander Saveri (Bar No. 173102)
Geoffrey C. Rushing (Bar No. 126910)
Cadio Zirpoli (Bar No. 179108)
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, California 94111
Telephone: (415) 217-6810
Facsimile:  (415) 217-6813

*Interim Lead Counsel for the*
*Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CRT ANTITRUST LITIGATION | Master File No. CV-07-5944-SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>ALL DIRECT PURCHASER CLASS ACTIONS | **CLASS ACTION**<br><br>**DECLARATION OF ERIC FASTIFF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS** |

I, Eric Fastiff, declare and state as follows:

1. I am a member of the law firm of Lieff Cabraser Heimann & Bernstein, LLP. I submit this declaration in support of Direct Purchaser Plaintiffs ("DPP") joint application for an award of attorney fees in connection with the services rendered in this litigation. I make this Declaration based on my personal knowledge and if called as a witness, I could and would competently testify to the matters stated herein.

2. My firm has served as counsel to Nathan Muchnick, Inc. and as counsel for the class throughout the course of this litigation. The background and experience of Lieff Cabraser Heimann & Bernstein, LLP and its attorneys are summarized in the *curriculum vitae* attached hereto as Exhibit 1.

3. Lieff Cabraser Heimann & Bernstein, LLP has prosecuted this litigation solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting claims against the defendants. While Lieff Cabraser Heimann & Bernstein, LLP devoted its time and resources to this matter, it has foregone other legal work for which it would have been compensated.

4. During the pendency of the litigation, Lieff Cabraser Heimann & Bernstein, LLP performed the following work: Initial case investigation and filing; assisting with legal research in support of responding to motion practice by defendants; assisting in the prosecution of discovery and the formulation of discovery protocols.

5. Attached hereto as Exhibit 2 is my firm's total hours and lodestar, computed at historical rates, from May 9, 2008 through July 31, 2014. This period reflects the time spent after the appointment of Lead Counsel in the litigation. The total number of hours spent by Lieff Cabraser Heimann & Bernstein, LLP during this period of time was 513 with a corresponding lodestar of $220,772.50. This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm. The lodestar amount reflected in Exhibit 2 is for work assigned by Lead Class Counsel, and was performed by professional staff at my law firm for the benefit of the Direct Purchaser Plaintiff ("DPP") Class.

DECLARATION OF ERIC FASTIFF IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

6.      The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 2 are the usual and customary hourly rates charged by Lieff Cabraser Heimann & Bernstein, LLP.

7.      My firm has expended a total of $18,806.56 in unreimbursed costs and expenses in connection with the prosecution of this litigation. These costs and expenses are broken down in the chart attached hereto as Exhibit 3.  They were incurred on behalf of Direct Purchaser Plaintiffs by my firm on a contingent basis, and have not been reimbursed. The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

8.      Lieff Cabraser Heimann & Bernstein, LLP paid a total of $50,000.00 in assessments for the joint prosecution of the litigation against the defendants.

9.      I have reviewed the time and expenses reported by my firm in this case which are included in this declaration, and I affirm that they are true and accurate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 7, 2014 at San Francisco, California.

_____
ERIC B. FASTIFF

DECLARATION OF ERIC FASTIFF IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

# EXHIBIT 1

# EXHIBIT 1

# Lieff
# Cabraser
# Heimann&
# Bernstein

Attorneys at Law

275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone:  212.355.9500
Facsimile:  212.355.9592

One Nashville Place
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219-2415
Telephone: 615.313.9000
Facsimile: 615.313.9965

Email: mail@lchb.com
Website: www.lieffcabraser.com

## *FIRM PROFILE:*

Lieff Cabraser Heimann & Bernstein, LLP, is a sixty-plus attorney, AV-rated law firm founded in 1972 with offices in San Francisco, New York and Nashville.  We have a diversified practice, successfully representing plaintiffs in the fields of personal injury and mass torts, securities and financial fraud, employment discrimination and unlawful employment practices, product defect, consumer protection, antitrust and intellectual property, environmental and toxic exposures, False Claims Act, and human rights.  Our clients include individuals, classes or groups of persons, businesses, and public and private entities.

Lieff Cabraser has served as court-appointed Plaintiffs' Lead or Class Counsel in state and federal coordinated, multi-district, and complex litigation throughout the United States. With co-counsel, we have represented clients across the globe in cases filed in American courts.

Lieff Cabraser is among the largest firms in the United States that only represent plaintiffs.  Described by *The American Lawyer* as "one of the nation's premier plaintiffs' firms," Lieff Cabraser enjoys a national reputation for professional integrity and the successful prosecution of our clients' claims.  We possess sophisticated legal skills and the financial resources necessary for the handling of large, complex cases, and for litigating against some of the nation's largest corporations.  We take great pride in the leadership roles our firm plays in many of this country's major cases, including those resulting in landmark decisions and precedent-setting rulings.

1043044.1

Lieff Cabraser has litigated and resolved thousands of individual lawsuits and hundreds of class and group actions, including some of the most important civil cases in the United States over the past three decades.  We have assisted our clients recover over $91 billion in verdicts and settlements.  Twenty-two cases were resolved for over $1 billion; another 37 cases resulted in verdicts or settlements at or in excess of $100 million.

*The National Law Journal* has recognized Lieff Cabraser as one of the nation's top plaintiffs' law firms for eleven years and we are a member of its Plaintiffs' Hot List Hall of Fame. In compiling the list, *The National Law Journal* examines recent verdicts and settlements and looked for firms "representing the best qualities of the plaintiffs' bar and that demonstrated unusual dedication and creativity."

*U.S. News* and *Best Lawyers* have selected Lieff Cabraser as a national "Law Firm of the Year" each year the publications have given this award to law firms.  For 2011-2012, we were recognized in the category of Mass Torts Litigation/Class Actions – Plaintiffs.  For 2013, the publications selected our firm as the nation's premier plaintiffs' law firm in the category of Employment Law – Individuals.  For 2014, we have been again recognized in the category of Mass Torts Litigation/Class Actions – Plaintiffs.  Only one law firm in each practice area receives the "Law Firm of the Year" designation.

## CASE PROFILES:

## I.   Personal Injury and Products Liability Litigation

### A.   Current Cases

1.   ***In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation***, MDL No. 2151 (C.D. Cal.).  Lieff Cabraser serves as Co-Lead Counsel for the plaintiffs in the Toyota injury cases in federal court and we represent individuals and families of loved ones nationwide who died in Toyota unintended acceleration accidents.  Plaintiffs charge that Toyota knew of numerous complaints that its vehicles accelerated suddenly and could not be stopped by proper application of the brake pedal. Plaintiffs further charge that Toyota breached its duty to manufacture and sell safe automobiles by failing to incorporate within its vehicles a brake override system and other readily available safeguards that could have prevented unintended acceleration.  In 2010, the District Court denied Toyota's motion to the dismiss the lawsuits.  On December 12, 2013, the Federal and California Courts overseeing the majority of personal injury and wrongful death Toyota lawsuits issued orders announcing that Toyota had agreed to begin to settle the cases.  Toyota has begun settlement conferences on a case-by-case basis.

2.   ***Individual  General Motors Ignition Switch Defect Injury Lawsuits***.  Lieff Cabraser represents persons injured nationwide, and families of loved ones who died, in accidents involving the more than 2.6 GM vehicles sold in the U.S. that contained a defect in the ignition switch.

Without warning, the defect can cause the car's engine and electrical system to shut off, disabling the air bags.  For over a decade GM was aware of this defect and failed to inform government safety regulators and public.  The defect has been has been implicated in the deaths of over 300 people in crashes where the front air bags did not deploy.

3.     ***Injury and Death Lawsuits Involving Wrongful Driver Conduct and Defective Tires, Transmissions, Cars and/or Vehicle Parts (Seat Belts, Roof Crush, Defective seats, and Other Defects).***  Lieff Cabraser has an active practice prosecuting claims for clients injured, or the families of loved ones who have died, by wrongful driver conduct and by unsafe and defective vehicles, tires, restraint systems, seats, and other automotive equipment.  We also represent clients in actions involving fatalities and serious injuries from tire and transmission failures as well as rollover accidents (and defective roofs, belts, seat back and other parts) as well as defective transmissions and/or shifter gates that cause vehicles to self-shift from park or false park into reverse.   Our attorneys have received awards and recognition from *California Lawyer* magazine (Lawyer of the Year Award), the Consumer Attorneys of California, and the San Francisco Trial Lawyers Association for their dedication to their clients and outstanding success in vehicle injury cases.

4.     ***Actos Litigation.***  Lieff Cabraser represents patients who have developed bladder cancer after exposure to the prescription drug pioglitazone, sold as Actos by Japan-based Takeda Pharmaceutical Company and prescribed for patients with Type 2 Diabetes.  On April 7, 2014, a federal jury in Louisiana found Takeda failed to adequately warn about bladder cancer risks. Jurors also found that executives of Takeda acted with wanton and reckless disregard for patient safety and awarded a total of $9 billion in punitive damages.  Lieff Cabraser attorney Donald C. Arbitblit served as a member of the trial team working closely with lead trial counsel Mark Lanier.

5.     ***Fen-Phen ("Diet Drugs") Litigation.***  Since the recall was announced in 1997, Lieff Cabraser has represented individuals who suffered injuries from the "Fen-Phen" diet drugs fenfluramine (sold as Pondimin) and/or dexfenfluramine (sold as Redux).  We served as counsel for the plaintiff that filed the first nationwide class action lawsuit against the diet drug manufacturers alleging that they had failed to adequately warn physicians and consumers of the risks associated with the drugs.  In *In re Diet Drugs (Phentermine / Fenfluramine / Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Management Committee which organized and directed the Fen-Phen diet drugs litigation filed across the nation in federal courts.  In August 2000,

the Court approved a $4.75 billion settlement offering both medical monitoring relief for persons exposed to the drug and compensation for persons with qualifying damage.  We represented over  2,000  persons that suffered valvular heart disease, pulmonary hypertension or other problems (such as needing echocardiogram screening for damage) due to  and/or following exposure to Fen-Phen and obtained more than $350 million in total for clients in individual cases and/or claims.  We continue to represent persons that suffered valvular heart disease due to Fen-Phen and received compensation under the Diet Drugs Settlement who now require heart value surgery.  These persons may be eligible to submit a new claim and receive additional compensation under the settlement.

6.     ***DePuy Metal Hip Implants Litigation***.    Lieff Cabraser represents nearly 200 patients nationwide who received the ASR XL Acetabular and ASR Hip Resurfacing systems manufactured by DePuy Orthopedics, a unit of Johnson & Johnson.  In 2010, DePuy Orthopedics announced the recall of its all-metal ASR hip implants, which were implanted in approximately 40,000 U.S. patients from 2006 through August 2010.  The complaints allege that DePuy Orthopedics was aware its ASR hip implants were failing at a high rate, yet continued to manufacture and sell the device.  In January 2011, in *In re DePuy Orthopaedics, Inc.  ASR Hip Implant Products*, MDL No. 2197, the Court overseeing all DePuy recall lawsuits in federal court appointed Lieff Cabraser attorney Wendy R. Fleishman to the Plaintiffs' Steering Committee for the organization and coordination of the litigation.  In July 2011, in the coordinated proceedings in California state court, the Court appointed Lieff Cabraser attorney Robert J. Nelson to serve on the Plaintiffs' Steering Committee. In 2013, Johnson & Johnson announced its agreement to pay at least $2.5 billion to resolve thousands of defective DePuy ASR hip implant lawsuits.  Under the settlement, J&J offers to pay a base award of $250,000 to U.S. citizens and residents who are more than 180 days from their hip replacement surgery, and prior to August 31, 2013, had to undergo a second, or  revision, to take out their faulty DePuy hip ASR XL or ASR resurfacing hip. The $250,000 base award payment will be adjusted upward or downward depending on medical factors specific to each patient.  We also represent nearly 100 patients whose DePuy Pinnacle artificial hip with the metal insert, called the Ultamet metal liner, has prematurely failed.

7.     ***In re Engle Cases***, No. 3:09-cv-10000-J-32 JBT (M.D. Fl.).  Lieff Cabraser represents over 1,000 Florida smokers, and the spouses and families of loved ones who died, in litigation against the tobacco companies for their 50-year conspiracy of misrepresenting the dangers of smoking cigarettes.  In May 2014, a jury held R.J. Reynolds Tobacco Company ("RJR"), Philip Morris USA, Inc. ("Philip Morris"), and Lorillard Tobacco Co., liable for the Chronic Obstructive Pulmonary

Disease (COPD) developed by plaintiff Pauline Burkhart and awarded her $5 million in damages.  The jury found that Ms. Burkhart's addiction and smoking—and the defendants' concealment of, and conspiracy to conceal, the addictive nature and health risks of smoking—were legal causes of her COPD.  In April 2013, a jury held RJR and Philip Morris liable for the wrongful death of Carol LaSard.  The jury awarded $26 million in damages to Mrs. LaSard's daughter Cheryl Searcy, as representative of Mrs. LaSard's estate.  The verdict included $20 million in punitive damages.  Subsequently, in September 2013, the Court on defendants' motion for new trial reduced the total award to $4.34 million.  Also in April 2013, a jury returned a verdict of $5.9 million in compensatory damages against RJR to Thelma Ruth Aycock for the wrongful death of her husband.  In May 2013, a jury returned a verdict of $2.75 million to Earl Graham for the wrongful death of his wife, Faye Graham, in compensatory damages against RJR and Philip Morris.

In September 2013, in *RJR v. Walker*, 728 F.3d 1297 (11th Cir.), the Court of Appeals affirmed two plaintiffs' trial verdicts against defendant's due process challenges.  This was the first federal appellate decision to hold that the trial structure used in the Florida state and federal courts to make individual *Engle* plaintiffs damages trials feasible meets due process standards.  On June 9, 2014, the U.S. Supreme Court denied RJR's petition for writ of *certiorari.*

In May 2014, a jury returned a verdict against RJR, Philip Morris, and Lorillard Tobacco Company, awarding $7.5 million to Mrs. Pauline Burkhart for personal injuries caused by her addiction to cigarettes containing nicotine and punitive damages against all defendants.

8.  ***Stryker Metal Hip Implant Litigation.***  Lieff Cabraser represents hip replacement patients nationwide who received the recalled Stryker Rejuvenate and ABG II modular hip implant systems.  These patients have suffered tissue damage and have high metal particle levels in their blood stream.  For many patients, the Stryker hip implant failed necessitating painful revision surgery to extract and replace the artificial hip.

9.  ***Medtronic Infuse Litigation.***  Lieff Cabraser represents patients who have suffered serious injuries from the off-label use of the Infuse bone graft, manufactured by Medtronic Inc.  The Food and Drug Administration has approved Infuse for only one type of spine surgery, the anterior lumbar fusion.  Many patients, however, received an off-label use of Infuse were never informed of the off-label nature of the surgery.  Serious complications associated with Infuse include uncontrolled bone growth and chronic pain from nerve injuries.

10.    ***Mirena Litigation.***  A widely-used, plastic intrauterine device (IUD) that releases a hormone into the uterus to prevent pregnancy, Mirena is manufactured by Bayer Healthcare Pharmaceuticals.  Lieff Cabraser represents patients who have suffered serious injuries linked to the IUD.  These injuries include uterine perforation (the IUD tears through the cervix or the wall of the uterus), ectopic pregnancy (when the embryo implants outside the uterine cavity), pelvic infections and pelvic inflammatory disease, and thrombosis (blood clots).

11.    ***Simply Thick Litigation.***  Lieff Cabraser represents parents whose infants have died or suffered life-threatening injuries linked to Simply Thick, a thickening agent added to the feeding regimen of premature infants with difficulties swallowing.  Earlier versions of the product have been linked to necrotizing enterocolitis (NEC), a life-threatening condition characterized by the inflammation and death of intestinal tissue.

12.    ***Birth Defects Litigation.***  Lieff Cabraser represents children and their parents who have suffered birth defects as a result of problematic pregnancies and improper medical care, improper prenatal genetic screening, ingestion by the mother of prescription drugs during pregnancy which had devastating effects on their babies.  These birth defects range from heart defects, physical malformations, and severe brain damage associated with complex emotional and developmental delays.  Taking of antidepressants during pregnancy has been linked to multiple types of birth defects, neonatal abstinence syndrome from experiencing withdrawal of the drug, and persistent pulmonary hypertension of the newborn (PPHN).

13.    ***Vaginal Mesh Litigation.***  Vaginal mesh is a polypropylene material implanted as a treatment for pelvic organ prolapse or stress urinary incontinence.  Gynecare Transvaginal products, manufactured and sold by Johnson & Johnson, as well as mesh products made by Boston Scientific, AMS, Bard, Caldera, and Coloplast, have been linked to serious side effects including erosion into the vaginal wall or other organs, infection, internal organ damage, and urinary problems.

14.    ***St. Jude Heart Leads Litigation.***  We represent heart patients in individual personal injury lawsuits against St. Jude Medical, Inc. The lawsuits seek damages for the physical pain, mental anguish, and lost income the patients suffered due to faulty St. Jude Riata, Riata Optim and Durata heart leads, including failure of the leads to function properly, unnecessary and repetitive electrical shocks, and/or invasive surgery necessary to remove or replace the defective lead.

The complaints charge that numerous flaws in St. Jude's manufacturing process caused, among other things, the insulation on the heart lead wires

to break down and fracture and premature failure of the family of Riata and Durata leads. The complaints also allege that the erosion of the coating around the wiring of the Riata defibrillator leads was reported to St. Jude by physicians as early as 2006, and that St. Jude had been tracking problems with the leads for years while it continued to market and sell Riata and Durata leads to physicians and heart patients.

15.     ***Wright Medical Hip Litigation.*** The Profemur-Z system manufactured by Wright Medical Technology consists of three separate components: a femoral head, a modular neck, and a femoral stem. Prior to 2009, Profemur-Z hip system included a titanium modular neck adapter and stem which was implanted in 10,000 patients. Lieff Cabraser represents patients whose Profemur-Z hip implant has fractured, requiring a second hip replacement surgery.

16.     ***Yaz and Yasmin Litigation***. Lieff Cabraser represents women prescribed Yasmin and Yaz oral contraceptives who suffered blood clots, deep vein thrombosis, strokes, and heart attacks, as well as the families of loved ones who died suddenly while taking these medications. The complaints allege that Bayer, the manufacturer of Yaz and Yasmin, failed to adequately warn patients and physicians of the increased risk of serious adverse effects from Yasmin and Yaz. The complaints also charge that these oral contraceptives posed a greater risk of serious side effects than other widely available birth control drugs.

## B.     Successes

1.      ***Multi-State Tobacco Litigation***. Lieff Cabraser represented the Attorneys General of Massachusetts, Louisiana and Illinois, several additional states, and 21 cities and counties in California, in litigation against Philip Morris, R.J. Reynolds and other cigarette manufacturers. The suits were part of the landmark $206 billion settlement announced in November 1998 between the tobacco industry and the states' attorneys general. The states, cities and counties sought both to recover the public costs of treating smoking-related diseases and require the tobacco industry to undertake extensive modifications of its marketing and promotion activities in order to reduce teenage smoking. In California alone, Lieff Cabraser's clients were awarded an estimated $12.5 billion to be paid through 2025.

2.      ***In re Vioxx Products Liability Litigation***, MDL No. 1657 (E.D. La.). Lieff Cabraser represented patients who suffered heart attacks or strokes, and the families of loved ones who died, after having been prescribed the arthritis and pain medication Vioxx. In individual personal injury lawsuits against Merck, the manufacturer of Vioxx, our clients allege that Merck falsely promoted the safety of Vioxx and failed to disclose the full range of the drug's dangerous side effects. In April 2005, in the federal

multidistrict litigation, the Court appointed Elizabeth J. Cabraser to the Plaintiffs' Steering Committee, which has the responsibility of conducting all pretrial discovery of Vioxx cases in Federal court and pursuing all settlement options with Merck.  In August 2006, Lieff Cabraser was co-counsel in *Barnett v. Merck*, which was tried in the federal Court in New Orleans.  Lieff Cabraser attorneys Don Arbitblit and Jennifer Gross participated in the trial, working closely with attorneys Mark Robinson and Andy Birchfield. The jury reached a verdict in favor of Mr. Barnett, finding that Vioxx caused his heart attack, and that Merck's conduct justified an award of punitive damages.  In November 2007, Merck announced it had entered into an agreement with the executive committee of the Plaintiffs' Steering Committee as well as representatives of plaintiffs' counsel in state coordinated proceedings.  Merck paid $4.85 billion into a settlement fund for qualifying claims.

3.   ***In re Silicone Gel Breast Implants Products Liability Litigation***, MDL No. 926 (N.D. Ala.).  Lieff Cabraser served on the Plaintiffs' Steering Committee and was one of five members of the negotiating committee which achieved a $4.25 billion global settlement with certain defendants of the action.  This was renegotiated in 1995, and is referred to as the Revised Settlement Program ("RSP").  Over 100,000 recipients have received initial payments, reimbursement for the explanation expenses and/or long term benefits.

4.   ***Sulzer Hip and Knee Prosthesis Liability Litigation.***  In December 2000, Sulzer Orthopedics, Inc., announced the recall of approximately 30,000 units of its Inter-Op Acetabular Shell Hip Implant, followed in May 2001 with a notification of failures of its Natural Knee II Tibial Baseplate Knee Implant.  In coordinated litigation in California state court, *In re Hip Replacement Cases*, JCCP 4165, Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel and Co-Lead Counsel.  In the federal litigation, *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation*, MDL No. 1410, Lieff Cabraser played a significant role in negotiating a revised global settlement of the litigation valued at more than $1 billion.  The revised settlement, approved by the Court in May 2002, provided patients with defective implants almost twice the cash payment as under an initial settlement.  On behalf of our clients, Lieff Cabraser objected to the initial settlement.

5.   ***Aeroflot-Russian International Airlines Airbus Disaster***. Lieff Cabraser represented the families of passengers who were on Aeroflot-Russian International Airlines Flight SU593 that crashed in Siberia on March 23, 1994. The plane was en route from Moscow to Hong Kong. All passengers on board died.

According to a transcript of the cockpit voice recorder, the pilot's two

children entered the cockpit during the flight and took turns flying the plane. The autopilot apparently was inadvertently turned off during this time, and the pilot was unable to remove his son from the captain's seat in time to avert the plane's fatal dive.

Lieff Cabraser, alongside French co-counsel, filed suit in France, where Airbus, the plane's manufacturer, was headquartered. The families Lieff Cabraser represented obtained substantial economic recoveries in settlement of the action.

6.     ***Air Algerie Boeing 737 Crash***. Together with French co-counsel, Lieff Cabraser represented the families of several passengers who died in the March 6, 2003 crash of a Boeing 737 airplane operated by Air Algerie. The aircraft crashed soon after takeoff from the Algerian city of Tamanrasset, after one of the engines failed. All but one of the 97 passengers were killed, along with six crew members. The families represented by Lieff Cabraser obtained economic recoveries in a settlement of the case.

7.     ***In re Bextra/Celebrex Marketing Sales Practices and Products Liability Litigation***, MDL No. 1699 (N.D. Cal.).  Lieff Cabraser served as Plaintiffs' Liaison Counsel and Elizabeth J. Cabraser chaired the Plaintiffs' Steering Committee (PSC) charged with overseeing all personal injury and consumer litigation in Federal courts nationwide arising out of the sale and marketing of the COX-2 inhibitors Bextra and Celebrex, manufactured by Pfizer, Inc. and its predecessor companies Pharmacia Corporation and G.D. Searle, Inc.

Under the global resolution of the multidistrict tort and consumer litigation announced in October 2008, Pfizer paid over $800 million to claimants, including over $750 million to resolve death and injury claims.

In a report adopted by the Court on common benefit work performed by the PSC, the Special Master stated:

> [L]eading counsel from both sides, and the attorneys from the PSC who actively participated in this litigation, demonstrated the utmost skill and professionalism in dealing with numerous complex legal and factual issues.  The briefing presented to the Special Master, and also to the Court, and the development of evidence by both sides was exemplary.  The Special Master particularly wishes to recognize that leading counsel for both sides worked extremely hard to minimize disputes, and when they arose, to make sure that they were raised with a minimum of rancor and a maximum of candor before the Special Master and Court.

8.     ***Comair CRJ-100 Commuter Flight Crash in Lexington, Kentucky***. A Bombardier CRJ-100 commuter plane operated by Comair, Inc., a subsidiary of Delta Air Lines, crashed on August 27, 2006 shortly after takeoff at Blue Grass Airport in Lexington, Kentucky, killing 47 passengers and two crew members. The aircraft attempted to take off from the wrong runway. The families represented by Lieff Cabraser obtained substantial economic recoveries in a settlement of the case.

9.     ***Gol Airlines Flight 1907 Amazon Crash***. Lieff Cabraser served as Plaintiffs' Liaison Counsel and represents over twenty families whose loved ones died in the Gol Airlines Flight 1907 crash. On September 29, 2006, a brand-new Boeing 737-800 operated by Brazilian air carrier Gol plunged into the Amazon jungle after colliding with a smaller plane owned by the American company ExcelAire Service, Inc. None of the 149 passengers and six crew members on board the Gol flight survived the accident.

The complaint charged that the pilots of the ExcelAire jet were flying at an incorrect altitude at the time of the collision, failed to operate the jet's transponder and radio equipment properly, and failed to maintain communication with Brazilian air traffic control in violation of international civil aviation standards. If the pilots of the ExcelAire aircraft had followed these standards, plaintiffs charge that the collision would not have occurred.

At the time of the collision, the ExcelAire aircraft's transponder manufactured by Honeywell was not functioning. A transponder transmits a plane's altitude and operates its automatic anti-collision system. The complaint charged that Honeywell shares responsibility for the tragedy because it defectively designed the transponder on the ExcelAire jet, and failed to warn of dangers resulting from foreseeable uses of the transponder. The cases settled after they were sent to Brazil for prosecution.

10.    ***In re Guidant Implantable Defibrillators Products Liability Litigation***, MDL No. 1708.  Lieff Cabraser serves on the Plaintiffs' Lead Counsel Committee in litigation in federal court arising out of the recall of Guidant cardiac defibrillators implanted in patients because of potential malfunctions in the devices.  At the time of the recall, Guidant admitted it was aware of 43 reports of device failures, and two patient deaths. Guidant subsequently acknowledged that the actual rate of failure may be higher than the reported rate and that the number of associated deaths may be underreported since implantable cardio-defibrillators are not routinely evaluated after death.  In January 2008, the parties reached a global settlement of the action.  Guidant's settlements of defibrillator-related claims will total $240 million.

11.     ***Helios Airways Flight 522 Athens, Greece Crash***. On August 14, 2005, a Boeing 737 operating as Helios Airways flight 522 crashed north of Athens, Greece, resulting in the deaths of all passengers and crew. The aircraft was heading from Larnaca, Cyprus to Athens International Airport when ground controllers lost contact with the pilots, who had radioed in to report problems with the air conditioning system. Press reports about the official investigation indicate that a single switch for the pressurization system on the plane was not properly set by the pilots, and eventually both were rendered unconscious, along with most of the passengers and cabin crew.

Lieff Cabraser represented the families of several victims, and filed complaints alleging that a series of design defects in the Boeing 737-300 contributed to the pilots' failure to understand the nature of the problems they were facing. Foremost among those defects was a confusing pressurization warning "horn" which uses the same sound that alerts pilots to improper takeoff and landing configurations. The families represented by Lieff Cabraser obtained substantial economic recoveries in a settlement of the case.

12.     ***In re Copley Pharmaceutical, Inc., "Albuterol" Products Liability Litigation***, MDL No. 1013 (D. Wyo.).  Lieff Cabraser served on the Plaintiffs' Steering Committee in a class action lawsuit against Copley Pharmaceutical, which manufactured Albuterol, a bronchodilator prescription pharmaceutical.  Albuterol was the subject of a nationwide recall in January 1994 after a microorganism was found to have contaminated the solution, allegedly causing numerous injuries including bronchial infections, pneumonia, respiratory distress and, in some cases, death.  In October 1994, the district court certified a nationwide class on liability issues.  *In re Copley Pharmaceutical*, 161 F.R.D. 456 (D. Wyo. 1995).  In November 1995, the district court approved a $150 million settlement of the litigation.

13.     ***Legend Single Engine "Turbine Legend" Kit Plane Crash***. On November 19, 2005, a single engine "Turbine Legend" kit plane operated by its owner crashed shortly after takeoff from a private airstrip in Tucson, Arizona, killing both the owner/pilot and a passenger. Witnesses report that the aircraft left the narrow runway during the takeoff roll and although the pilot managed to get the plane airborne, it rolled to the left and crashed.

Lieff Cabraser investigated the liability of the pilot and others, including the manufacturer of the kit and the operator of the airport from which the plane took off. The runway was 16 feet narrower than the minimum width recommended by the Federal Aviation Administration. Lieff Cabraser

represented the widow of the passenger, and the case was settled on favorable, confidential terms.

14.     ***Lockheed F-104 Fighter Crashes***. In the late 1960s and extending into the early 1970s, the United States sold F-104 Star Fighter jets to the German Air Force that were manufactured by Lockheed Aircraft Corporation in California. Although the F-104 Star Fighter was designed for high-altitude fighter combat, it was used in Germany and other European countries for low-level bombing and attack training missions.

Consequently, the aircraft had an extremely high crash rate, with over 300 pilots killed. Commencing in 1971, the law firm of Belli Ashe Ellison Choulos & Lieff filed hundreds of lawsuits for wrongful death and other claims on behalf of the widows and surviving children of the pilots.

Robert Lieff continued to prosecute the cases after the formation of our firm. In 1974, the lawsuits were settled with Lockheed on terms favorable to the plaintiffs. This litigation helped establish the principle that citizens of foreign countries could assert claims in United States courts and obtain substantial recoveries against an American manufacturer, based upon airplane accidents or crashes occurring outside the United States.

15.     ***Manhattan Tourist Helicopter Crash***. On June 14, 2005, a Bell 206 helicopter operated by Helicopter Flight Services, Inc. fell into the East River shortly after taking off for a tourist flight over New York City. The pilot and six passengers were immersed upside-down in the water as the helicopter overturned. Lieff Cabraser represented a passenger on the helicopter and the case was settled on favorable, confidential terms.

16.     ***Mraz v. DaimlerChrysler***, No. BC 332487 (Cal. Supr. Ct.).  In March 2007, the jury returned a $54.4 million verdict, including $50 million in punitive damages, against DaimlerChrysler for intentionally failing to cure a known defect in millions of its vehicles that led to the death of Richard Mraz, a young father.  Mr. Mraz suffered fatal head injuries when the 1992 Dodge Dakota pickup truck he had been driving at his work site ran him over after he exited the vehicle believing it was in park.  The jury found that a defect in the Dodge Dakota's automatic transmission, called a park-to-reverse defect, played a substantial factor in Mr. Mraz's death and that DaimlerChrysler was negligent in the design of the vehicle for failing to warn of the defect and then for failing to adequately recall or retrofit the vehicle.

For their outstanding service to their clients in *Mraz* and advancing the rights of all persons injured by defective products, Lieff Cabraser partners Robert J. Nelson, the lead trial counsel, received the 2008 California Lawyer of the Year (CLAY) Award in the field of personal injury law, and

were also selected as finalists for attorney of the year by the Consumer Attorneys of California and the San Francisco Trial Lawyers Association.

In March 2008, a Louisiana-state jury found DaimlerChrysler liable for the death of infant Collin Guillot and injuries to his parents Juli and August Guillot and their then 3-year-old daughter, Madison. The jury returned a unanimous verdict of $5,080,000 in compensatory damages. The jury found that a defect in the Jeep Grand Cherokee's transmission, called a park-to-reverse defect, played a substantial factor in Collin Guillot's death and the severe injuries suffered by Mr. and Mrs. Guillot and their daughter. Lieff Cabraser served as co-counsel in the trial.

17. ***In re Telectronics Pacing Systems Inc., Accufix Atrial "J" Leads Products Liability Litigation***, MDL No. 1057 (S.D. Ohio). Lieff Cabraser served on the court-appointed Plaintiffs' Steering Committee in a nationwide products liability action alleging that defendants placed into the stream of commerce defective pacemaker leads. In April 1997, the district court re-certified a nationwide class of "J" Lead implantees with subclasses for the claims of medical monitoring, negligence and strict product liability. A summary jury trial utilizing jury instructions and interrogatories designed by Lieff Cabraser occurred in February 1998. A partial settlement was approved thereafter by the district court but reversed by the Court of Appeals. In March 2001, the district court approved a renewed settlement that included a $58 million fund to satisfy all past, present and future claims by patients for their medical care, injuries, or damages arising from the lead.

18. ***United Airlines Boeing 747 Disaster***. Lieff Cabraser served as Plaintiffs' Liaison Counsel on behalf of the passengers and families of passengers injured and killed in the United Airlines Boeing 747 cargo door catastrophe near Honolulu, Hawaii on February 24, 1989. Lieff Cabraser organized the litigation of the case, which included claims brought against United Airlines and The Boeing Company.

Among our work, we developed a statistical system for settling the passengers' and families' damages claims with certain defendants, and coordinated the prosecution of successful individual damages trials for wrongful death against the non-settling defendants.

19. ***Craft v. Vanderbilt University***, Civ. No. 3-94-0090 (M.D. Tenn.). Lieff Cabraser served as Lead Counsel of a certified class of over 800 pregnant women and their children who were intentionally fed radioactive iron without their consent while receiving prenatal care at defendant Vanderbilt's hospital in the 1940s. The facts surrounding the administration of radioactive iron to the pregnant women and their children *in utero* came to light as a result of Energy Secretary Hazel

O'Leary's 1993 disclosures of government-sponsored human radiation experimentation during the Cold War.  Defendants' attempts to dismiss the claims and decertify the class were unsuccessful.  The case was settled in July 1998 for a total of $10.3 million and a formal apology from Vanderbilt.

20.     ***U.S. Army Blackhawk Helicopter Tower Collision***. Lieff Cabraser represented the family of a pilot who died in the November 29, 2004 crash of a U.S. Army Black Hawk Helicopter. The Black Hawk was flying during the early morning hours at an altitude of approximately 500 feet when it hit cables supporting a 1,700 foot-tall television tower, and subsequently crashed 30 miles south of Waco, Texas, killing both pilots and five passengers, all in active Army service. The tower warning lights required by government regulations were inoperative. The case was resolved through a successful, confidential settlement.

21.     ***In re Zimmer Durom Cup Product Liability Litigation***, MDL No. 2158. Lieff Cabraser served as Co-Liaison Counsel for patients nationwide injured by the defective Durom Cup manufactured by Zimmer Holdings. First sold in the U.S. in 2006, Zimmer marketed its 'metal-on-metal' Durom Cup implant as providing a greater range of motion and less wear than traditional hip replacement components.  In July 2008, Zimmer announced the suspension of Durom sales.  The complaints charged that the Durom cup was defective and led to the premature failure of the implant.  In 2011 and 2012, the patients represented by Lieff Cabraser settled their cases with Zimmer on favorable, confidential terms.

22.     ***Flash Airlines Boeing 737 Air Disaster***. Lieff Cabraser represented the families of 122 of the victims of the January 3, 2004 Flash Airlines disaster. All of the 148 passengers and crew were killed when the Flash Airlines charter flight plunged into the Red Sea off the coast of Egypt. The passengers on board included entire families, mainly from France, who had been vacationing during the winter holidays at the sea resort of Sharm el Sheikh.

Lieff Cabraser represented these families alongside European solicitors. The aircraft, a Boeing 737-300 manufactured in 1992 in the United States, was owned by an aircraft leasing company in Los Angeles, and operated pursuant to a lease agreement by an Egyptian charter carrier, Flash Airlines. The case asserted that the air disaster was the result of mechanical failure. In 2009, settlements were achieved for all families.

23.     ***Advanced Medical Optics Complete MoisturePlus Litigation***. Lieff Cabraser represented consumers nationwide in personal injury lawsuits filed against Advanced Medical Optics arising out of the May 2007 recall of AMO's Complete MoisturePlus Multi-Purpose Contact Lens

Solution.  The product was recalled due to reports of a link between a rare, but serious eye infection, *Acanthamoeba keratitis*, caused by a parasite and use of AMO's contact lens solution.  Though AMO promoted Complete MoisturePlus Multi-Purpose as "effective against the introduction of common ocular microorganisms," the complaints charged that AMO's lens solution was ineffective and vastly inferior to other multipurpose solutions on the market.  In many cases, patients were forced to undergo painful corneal transplant surgery to save their vision and some have lost all or part of their vision permanently.  The patients represented by Lieff Cabraser resolved their cases with AMO on favorable, confidential terms.

24.     ***Luisi v. Medtronic,*** No. 07 CV 4250 (D. Minn.).  Lieff Cabraser represented over seven hundred heart patients nationwide who were implanted with recalled Sprint Fidelis defibrillator leads manufactured by Medtronic Inc.  Plaintiffs charge that Medtronic has misrepresented the safety of the Sprint Fidelis leads and a defect in the device triggered their receiving massive, unnecessary electrical shocks.  On October 14, 2010, Medtronic announced that it has entered into an agreement to settle the litigation, subject to certain conditions.  As of January 2013, the majority of claims have been paid through the Settlement Administration Process.

25.     ***Blood Factor VIII And Factor IX Litigation.***  Working with counsel in Asia, Europe, Central and South America and the Middle East, Lieff Cabraser represented over 1,500 hemophiliacs worldwide, or their survivors and estates, who contracted HIV and/or Hepatitis C (HCV), and Americans with hemophilia who contracted HCV, from contaminated and defective blood factor products produced by American pharmaceutical companies.  In 2004, Lieff Cabraser was appointed Plaintiffs' Lead Counsel of the "second generation" Blood Factor MDL litigation presided over by Judge Grady in the Northern District of Illinois.  The case was resolved through a global settlement signed in 2009.

26.     ***In Re Yamaha Motor Corp. Rhino ATV Products Liability Litigation,*** MDL No. 2016 (W.D. Ky.)  Lieff Cabraser served as Plaintiffs' Lead Counsel in the litigation in federal court and Co-Lead Counsel in coordinated California state court litigation arising out of serious injuries and deaths in rollover accidents involving the Yamaha Rhino.  The complaints charged that the Yamaha Rhino contained numerous design flaws, including the failure to equip the vehicles with side doors, which resulted in repeated broken or crushed legs, ankles or feet for riders.   Plaintiffs alleged also that the Yamaha Rhino was unstable due to a narrow track width and high center of gravity leading to rollover accidents that killed and/or injured scores of persons across the nation.  On behalf of victims and families of victims and along with the Center for Auto Safety, and the San Francisco Trauma Foundation, Lieff

Cabraser advocated for numerous safety changes to the Rhino in reports submitted to the U.S. Consumer Product Safety Commission (CPSC).  On March 31, 2009, the CPSC, in cooperation with Yamaha Motor Corp. U.S.A., announced a free repair program for all Rhino 450, 660, and 700 models to improve safety, including the addition of spacers and removal of a rear only anti-sway bar.

27.     ***In re ReNu With MoistureLoc Contact Lens Solution Products Liability Litigation***, MDL No. 1785 (D. S.C.).  Lieff Cabraser served on the Plaintiffs' Executive Committee in federal court litigation arising out of Bausch & Lomb's 2006 recall of its ReNu with MoistureLoc contact lens solution.  Consumers who developed *Fusarium keratitis*, a rare and dangerous fungal eye infection, as well as other serious eye infections, alleged the lens solution was defective.  Some consumers were forced to undergo painful corneal transplant surgery to save their vision; others lost all or part of their vision permanently.  The litigation was resolved under favorable, confidential settlements with Bausch & Lomb.

28.     ***In re Baycol Products Litigation***, MDL No. 1431 (D. Minn.).  Baycol was one of a group of drugs called statins, intended to reduce cholesterol.  In August 2001, Bayer A.G. and Bayer Corporation, the manufacturers of Baycol, withdrew the drug from the worldwide market based upon reports that Baycol was associated with serious side effects and linked to the deaths of over 100 patients worldwide.  In the federal multi-district litigation, Lieff Cabraser served as a member of the Plaintiffs' Steering Committee (PSC) and the Executive Committee of the PSC.  In addition, Lieff Cabraser represented approximately 200 Baycol patients who have suffered injuries or family members of patients who died allegedly as a result of ingesting Baycol.  In these cases, our clients reached confidential favorable settlements with Bayer.

## II.     <u>Securities and Financial Fraud</u>

### A.     Current Cases

1.     ***The Charles Schwab Corp. v. BNP Paribas Sec. Corp***., No. CGC-10-501610 (Cal. Super. Ct.); ***The Charles Schwab Corp. v. J.P. Morgan Sec., Inc.***, No. CGC-10-503206 (Cal. Super. Ct.); ***The Charles Schwab Corp. v. J.P. Morgan Sec., Inc.***, No. CGC-10-503207 (Cal. Super. Ct.); and ***The Charles Schwab Corp. v. Banc of America Sec. LLC***, No. CGC-10-501151 (Cal. Super. Ct.).  Lieff Cabraser, along with co-counsel, represents The Charles Schwab Corporation in four separate individual securities actions against certain issuers and sellers of mortgage-backed securities for materially misrepresenting the quality of the loans underlying the securities in violation of California state law.  Charles Schwab Bank, N.A., a subsidiary of The Charles Schwab Corporation, suffered significant damages by purchasing the securities in

reliance on defendants' misstatements.  The court largely overruled defendants' demurrers in January 2012.  Narrowed discovery regarding the defendants' loan files and documents from Charles Schwab pertaining to a potential statute of limitations defense commenced thereafter. Recently, the court opened discovery as to all issues.  The parties are currently negotiating a structure for a bellwether trial.

2.   ***In re Bank of New York Mellon Corp. Foreign Exchange Transactions Litigation***, Case No.  MD-12-2335-LAK (S.D.N.Y.). Lieff Cabraser is one of three firms serving on the Plaintiffs' Executive Committee in consolidated litigation against The Bank of New York Mellon Corporation ("BNY Mellon") and its predecessors and subsidiaries, in which plaintiffs allege that defendants charged custodial customers fictitious foreign currency exchange ("FX") rates in connection with the purchase and sale of foreign securities.  The actions allege that for the past decade, defendants consistently incorporated hidden and excessive mark-ups or mark-downs relative to the actual FX rates applicable at the times of the trades conducted for defendants' custodial FX clients, and that defendants allegedly kept for themselves, as an unlawful profit, the difference between the false and actual price for each FX transaction.  In addition to serving on Plaintiffs' Executive Committee, Lieff Cabraser is also co-lead class counsel for a proposed nationwide class of affected custodial customers of BNY Mellon, including public pension funds, ERISA funds, and other public and private institutions. Prior to the cases being transferred and consolidated in the Southern District of New York, Lieff Cabraser defeated, in its entirety, BNY Mellon's motion to dismiss claims brought on behalf of ERISA and other funds under California's and New York's consumer protection laws.  The firm's clients and proposed class representatives in the consolidated litigation, in which discovery is currently proceeding, include the Ohio Police & Fire Pension Fund, the School Employees Retirement System of Ohio, and the International Union of Operating Engineers, Stationary Engineers Local 39 Pension Trust Fund.  Motions to dismiss have largely been denied, and the parties are currently engaged in discovery.

3.   ***Ironworkers Local 580-Joint Funds, et al.  v. Linn Energy***, No. 1:13-cv-4857 (S.D.N.Y.).  Lieff Cabraser serves as Co-Lead Counsel in this securities class action against Linn Energy, LLC ("Linn"), its affiliate LinnCo, LLC ("LinnCo"), certain officers and directors of Linn, who also served as officers and directors of LinnCo, and the underwriters of LinnCo's initial public offering for violations of the federal securities laws.  Plaintiffs allege that Defendants significantly overstated Linn's available cash for distribution to its unitholders, including LinnCo, and misrepresented the true risk associated with Linn's ability to continue to issue stable or increasing distributions.  When Defendants' misconduct was finally revealed to the marketplace, the price of Linn units and

LinnCo shares declined significantly, thereby causing damages to Linn and LinnCo investors.  Defendants' motions to dismiss the complaint have been fully briefed and are pending.

4.  ***Dow 30�footnote Enhanced Premium & Income Fund. v. American International Group***, No. 1:13-cv-05612 (N.D. Ill.).  Lieff Cabraser represents 25 Nuveen funds in an individual action against American International Group, Inc. ("AIG") and certain of its officers and directors for misrepresenting and omitting material information about AIG's financial condition and the extent of its exposure to the subprime mortgage market.  The complaint charges defendants with violations of the Exchange Act, Illinois Securities Laws, as well as common law fraud and unjust enrichment.

5.  ***The Regents of the University of California v. American International Group***, No. 3:13-03653-MEJ (N.D. Cal.).  Lieff Cabraser represents The Regents of the University of California in an individual action against AIG and certain of its officers and directors.  The action arises from the same wrongdoing as alleged in *AIG-Nuveen*.  The complaint charges defendants with violations of the Exchange Act, as well as common law fraud and unjust enrichment.

6.  ***Arkansas Teacher Retirement System v. State Street Corp.***, No. 11cv10230 (MLW) (D. Mass.).  Lieff Cabraser is co-counsel for a proposed nationwide class of institutional clients of State Street, including public pension funds, who allege that defendants charged class members fictitious FX rates in connection with the purchase and sale of foreign securities.  The complaint charges that for the past decade, defendants consistently incorporated hidden and excessive mark-ups or mark-downs relative to the actual FX rates applicable at the times of the trades conducted for defendants' custodial FX clients.  Defendants allegedly kept for themselves, as an unlawful profit, the difference between the false and actual price for each FX transaction.  Plaintiffs seek recovery under Massachusetts' Consumer Protection Law and common law tort and contract theories.  Motions to dismiss have been fully briefed.  Lieff Cabraser is also actively involved in counseling other state pension and ERISA funds with respect to their potential exposure to FX manipulation by custodial service providers.

7.  ***In re Facebook, Inc. IPO Securities And Derivative. Litigation***, MDL No. 12-2389 (RWS) (S.D.N.Y.).  Lieff Cabraser serves as counsel for named plaintiffs alleging violations of the Securities Act of 1933 based on Facebook's initial public offering in May 2012.  In January 2014, the Court denied defendants' motions to dismiss plaintiffs' consolidated class action complaint.

8.   ***Biotechnology Value Fund, L.P. v. Celera Corp.***, 3:13-cv-03248-WHA (N.D. Cal.).  Lieff Cabraser represents a group of affiliated entities engaged in the business of investing in biotechnology companies in this individual action arising from misconduct in connection with Quest Diagnostic Inc.'s acquisition of Celera Corporation.  Defendants are charged with violations of Section 14(e) and 20(a) of the Exchange Act and breach of fiduciary duty.  In December 2013, the court dismissed plaintiffs' first amended complaint.  Plaintiffs recently filed a motion for leave to file a second amended complaint.

**B.   Successes**

1.   ***In re First Capital Holdings Corp. Financial Products Securities Litigation***, MDL No. 901 (C.D. Cal.).  Lieff Cabraser served as Co-Lead Counsel in a class action brought to recover damages sustained by policyholders of First Capital Life Insurance Company and Fidelity Bankers Life Insurance Company policyholders resulting from the insurance companies' allegedly fraudulent or reckless investment and financial practices, and the manipulation of the companies' financial statements.  This policyholder settlement generated over $1 billion in restored life insurance policies. The  settlement was approved by both federal and state courts in parallel proceedings and then affirmed by the Ninth Circuit on appeal.

2.   ***In re Broadcom Corporation Derivative Litigation***, No. CV 06-3252-R (C.D. Cal.).  Lieff Cabraser served as Court-appointed Lead Counsel in a shareholders derivative action arising out of stock options backdating in Broadcom securities.  The complaint alleged that defendants intentionally manipulated their stock option grant dates between 1998 and 2003 at the expense of Broadcom and Broadcom shareholders. By making it seem as if stock option grants occurred on dates when Broadcom stock was trading at a comparatively low per share price, stock option grant recipients were able to exercise their stock option grants at exercise prices that were lower than the fair market value of Broadcom stock on the day the options were actually granted.  In December 2009, U.S. District Judge Manuel L. Real granted final approval to a partial settlement in which Broadcom Corporation's insurance carriers paid $118 million to Broadcom.  The settlement released certain individual director and officer defendants covered by Broadcom's directors' and officers' policy.

Plaintiffs' counsel continued to pursue claims against William J. Ruehle, Broadcom's former Chief Financial Officer, Henry T. Nicholas, III, Broadcom's co-founder and former Chief Executive Officer, and Henry Samueli, Broadcom's co-founder and former Chief Technology Officer.  In May 2011, the Court approved a settlement with these defendants.  The

settlement provided substantial consideration to Broadcom, consisting of the receipt of cash and cancelled options from Dr. Nicholas and Dr. Samueli totaling $53 million in value, plus the release of a claim by Mr. Ruehle, which sought damages in excess of $26 million.

Coupled with the earlier $118 million partial settlement, the total recovery in the derivative action was $197 million, which constitutes the third-largest settlement ever in a derivative action involving stock options backdating.

3.   ***In re Scorpion Technologies Securities Litigation I***, No. C-93-20333-EAI (N.D. Cal.); ***Dietrich v. Bauer***, No. C-95-7051-RWS (S.D.N.Y.); ***Claghorn v. Edsaco***, No. 98-3039-SI (N.D. Cal.).  Lieff Cabraser served as Lead Counsel in class action suits arising out of an alleged fraudulent scheme by Scorpion Technologies, Inc., certain of its officers, accountants, underwriters and business affiliates to inflate the company's earnings through reporting fictitious sales.  In Scorpion I, the Court found plaintiffs had presented sufficient evidence of liability under Federal securities acts against the accounting firm Grant Thornton for the case to proceed to trial.  In re Scorpion Techs., 1996 U.S. Dist. LEXIS 22294 (N.D. Cal. Mar. 27, 1996).  In 1988, the court approved a $5.5 million settlement with Grant Thornton.  In 2000, the Court approved a $950,000 settlement with Credit Suisse First Boston Corporation.  In April 2002, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd.  The jury found that Edsaco aided Scorpion in setting up phony European companies as part of a scheme in which Scorpion reported fictitious sales of its software to these companies, thereby inflating its earnings.  Included in the jury verdict, one of the largest verdicts in the U.S. in 2002, was $165 million in punitive damages.  Richard M. Heimann conducted the trial for plaintiffs.

On June 14, 2002, U.S. District Court Judge Susan Illston commented on Lieff Cabraser's representation:  "[C]ounsel for the plaintiffs did a very good job in a very tough situation of achieving an excellent recovery for the class here.  You were opposed by extremely capable lawyers.  It was an uphill battle.  There were some complicated questions, and then there was the tricky issue of actually collecting anything in the end.  I think based on the efforts that were made here that it was an excellent result for the class. . .  [T]he recovery that was achieved for the class in this second trial is remarkable, almost a hundred percent."

4.   ***In re Diamond Foods, Inc., Securities Litigation,*** No. 11-cv-05386-WHA (N.D. Cal.).   Lieff Cabraser served as local counsel for Lead Plaintiff Public Employees' Retirement System of Mississippi ("MissPERS") and the class of investors it represented in this securities class action lawsuit arising under the PSLRA.  The complaint charged

Diamond Foods and certain senior executives of the company with violations of the Exchange Act for knowingly understating the cost of walnuts Diamond Foods purchased in order to inflate the price of Diamond Foods' common stock.  In January 2014, the Court granted final approval of a settlement of the action requiring Diamond Foods to pay $11 million in cash and issue 4.45 million common shares worth $116.3 million on the date of final approval based on the stock's closing price on that date.

5.  ***Merrill Lynch Fundamental Growth Fund and Merrill Lynch Global Value Fund  v. McKesson HBOC,*** No. 02-405792 (Cal. Supr. Ct.).  Lieff Cabraser served as counsel for two Merrill Lynch sponsored mutual funds in a private lawsuit alleging that a massive accounting fraud occurred at HBOC & Company ("HBOC") before and following its 1999 acquisition by McKesson Corporation ("McKesson").  The funds charged that defendants, including the former CFO of McKesson HBOC, the name McKesson adopted after acquiring HBOC, artificially inflated the price of securities in McKesson HBOC, through misrepresentations and omissions concerning the financial condition of HBOC, resulting in approximately $135 million in losses for plaintiffs.  In a significant discovery ruling in 2004, the California Court of Appeal held that defendants waived the attorney-client and work product privileges in regard to an audit committee report and interview memoranda prepared in anticipation of shareholder lawsuits by disclosing the information to the U.S. Attorney and SEC.  *McKesson HBOC, Inc. v. Supr. Court,* 115 Cal. App. 4th 1229 (2004).  Lieff Cabraser's clients recovered approximately $145 million, representing nearly 104% of damages suffered by the funds.  This amount was approximately $115-120 million more than the Merrill Lynch funds would have recovered had they participated in the federal class action settlement.

6.  ***Informix/Illustra Securities Litigation***, No. C-97-1289-CRB (N.D. Cal.).  Lieff Cabraser represented Richard H. Williams, the former Chief Executive Officer and President of Illustra Information Technologies, Inc. ("Illustra"), and a class of Illustra shareholders in a class action suit on behalf of all former Illustra securities holders who tendered their Illustra preferred or common stock, stock warrants or stock options in exchange for securities of Informix Corporation ("Informix") in connection with Informix's 1996 purchase of Illustra.  Pursuant to that acquisition, Illustra stockholders received Informix securities representing approximately 10% of the value of the combined company.  The complaint alleged claims for common law fraud and violations of Federal securities law arising out of the acquisition.  In October 1999, U.S. District Judge Charles E. Breyer approved a global settlement of the litigation for $136 million, constituting one of the largest settlements ever involving a high technology company alleged to have committed securities fraud.  Our

clients, the Illustra shareholders, received approximately 30% of the net settlement fund.

7. ***In re Qwest Communications International Securities and "ERISA" Litigation (No. II),*** No. 06-cv-17880-REB-PAC (MDL No. 1788) (D. Colo.).  Lieff Cabraser represented the New York State Common Retirement Fund, Fire and Police Pension Association of Colorado, Denver Employees' Retirement Plan, San Francisco Employees' Retirement System, and over thirty BlackRock managed mutual funds in individual securities fraud actions ("opt out" cases) against Qwest Communications International, Inc., Philip F. Anschutz, former co-chairman of the Qwest board of directors,  and other senior executives at Qwest.  In each action, the plaintiffs charged defendants with massively overstating Qwest's publicly-reported growth, revenues, earnings, and earnings per share from 1999 through 2002.  The cases were filed in the wake of a $400 million settlement of a securities fraud class action against Qwest  that was announced in  early 2006.  The cases brought by Lieff Cabraser's clients settled in October 2007 for recoveries totaling more than $85 million, or more than 13 times what the clients would have received had they remained in the class.

8. ***In re AXA Rosenberg Investor Litigation***, No. CV 11-00536 JSW (N.D. Cal).  Lieff Cabraser served as Co-Lead Counsel for a class of institutional investors, ERISA-covered plans, and other investors in quantitative funds managed by AXA Rosenberg Group, LLC and its affiliates ("AXA"). Plaintiffs alleged that AXA breached its fiduciary duties and violated ERISA by failing to discover a material computer error that existed in its system for years, and then failing to remedy it for months after its eventual discovery in 2009. By the time AXA disclosed the error in 2010, investors had suffered losses and paid substantial investment management fees to AXA. After briefing motions to dismiss and working with experts to analyze data obtained from AXA relating to the impact of the error, we reached a $65 million settlement with AXA that the Court approved in April 2012.

9. ***In re National Century Financial Enterprises, Inc. Investment Litigation***, MDL No. 1565 (S.D. Ohio).  Lieff Cabraser served as outside counsel for the New York City Employees' Retirement System, Teachers' Retirement System for the City of New York, New York City Police Pension Fund, and New York City Fire Department Pension Fund in this multidistrict litigation arising from fraud in connection with NCFE's issuance of notes backed by healthcare receivables.  The New York City Pension Funds recovered more than 70% of their $89 million in losses, primarily through settlements achieved in the federal litigation and another NCFE-matter brought on their behalf by Lieff Cabraser.

10.     ***BlackRock Global Allocation Fund v. Tyco International Ltd.,
        et al.***, No. 2:08-cv-519 (D. N.J.); ***Nuveen Balanced Municipal and
        Stock Fund v. Tyco International Ltd., et al.***, No. 2:08-cv-518 (D.
        N.J.).  Lieff Cabraser represented multiple funds of the investment firms
        BlackRock Inc. and Nuveen Asset Management in separate, direct
        securities fraud actions against Tyco International Ltd., Tyco Electronics
        Ltd., Covidien Ltd, Covidien (U.S.), L. Dennis Kozlowski, Mark H. Swartz,
        and Frank E. Walsh, Jr.  Plaintiffs alleged that defendants engaged in a
        massive criminal enterprise that combined the theft of corporate assets
        with fraudulent accounting entries that concealed Tyco's financial
        condition from investors.  As a result, plaintiffs purchased Tyco common
        stock and other Tyco securities at artificially inflated prices and suffered
        losses upon disclosures revealing Tyco's true financial condition and
        defendants' misconduct.  In 2009, the parties settled the claims against
        the corporate defendants (Tyco International Ltd., Tyco Electronics Ltd.,
        Covidien Ltd., and Covidien (U.S.).  The litigation concluded in 2010.  The
        total settlement proceeds paid by all defendants were in excess of $57
        million.

11.     ***Kofuku Bank and Namihaya Bank v. Republic New York
        Securities Corp.***, No. 00 CIV 3298 (S.D.N.Y.); and ***Kita Hyogo
        Shinyo-Kumiai v. Republic New York Securities Corp.***, No. 00
        CIV 4114 (S.D.N.Y.).  Lieff Cabraser represented Kofuku Bank, Namihaya
        Bank and Kita Hyogo Shinyo-Kumiai (a credit union) in individual
        lawsuits against, among others, Martin A. Armstrong and HSBC, Inc., the
        successor-in-interest to Republic New York Corporation, Republic New
        York Bank and Republic New York Securities Corporation for alleged
        violations of federal securities and racketeering laws.  Through a group of
        interconnected companies owned and controlled by Armstrong—the
        Princeton Companies—Armstrong and the Republic Companies promoted
        and sold promissory notes, known as the "Princeton Notes," to more than
        eighty of the largest companies and financial institutions in Japan.  Lieff
        Cabraser's lawsuits, as well as the lawsuits of dozens of other Princeton
        Note investors, alleged that the Princeton and Republic Companies made
        fraudulent misrepresentations and non-disclosures in connection with the
        promotion and sale of Princeton Notes, and that investors' moneys were
        commingled and misused to the benefit of Armstrong, the Princeton
        Companies and the Republic Companies.  In December 2001, the claims
        of our clients and those of the other Princeton Note investors were settled.
        As part of the settlement, our clients recovered more than $50 million,
        which represented 100% of the value of their principal investments less
        money they received in interest or other payments.

12.     ***Alaska State Department of Revenue v. America Online***,
        No. 1JU-04-503 (Alaska Supr. Ct.).  In December 2006, a $50 million
        settlement was reached in a securities fraud action brought by the Alaska

State Department of Revenue, Alaska State Pension Investment Board and Alaska Permanent Fund Corporation against defendants America Online, Inc. ("AOL"), Time Warner Inc. (formerly known as AOL Time Warner ("AOLTW")), Historic TW Inc.  When the action was filed, the Alaska Attorney General estimated total losses at $70 million.  The recovery on behalf of Alaska was approximately 50 times what the state would have received as a member of the class in the federal securities class action settlement.  The lawsuit, filed in 2004 in Alaska State Court, alleged that defendants misrepresented advertising revenues and growth of AOL and AOLTW along with the number of AOL subscribers, which artificially inflated the stock price of AOL and AOLTW to the detriment of Alaska State funds.

The Alaska Department of Law retained Lieff Cabraser to lead the litigation efforts under its direction.  "We appreciate the diligence and expertise of our counsel in achieving an outstanding resolution of the case," said Mark Morones, spokesperson for the Department of Law, following announcement of the settlement.

13.   ***Allocco v. Gardner***, No. GIC 806450 (Cal. Supr. Ct.).  Lieff Cabraser represented Lawrence L. Garlick, the co-founder and former Chief Executive Officer of Remedy Corporation and 24 other former senior executives and directors of Remedy Corporation in a private (non-class) securities fraud lawsuit against Stephen P. Gardner, the former Chief Executive Officer of Peregrine Systems, Inc., John J. Moores, Peregrine's former Chairman of the Board, Matthew C. Gless, Peregrine's former Chief Financial Officer, Peregrine's accounting firm Arthur Andersen and certain entities that entered into fraudulent transactions with Peregrine. The lawsuit, filed in California state court, arose out of Peregrine's August 2001 acquisition of Remedy.  Plaintiffs charged that they were induced to exchange their Remedy stock for Peregrine stock on the basis of false and misleading representations made by defendants.  Within months of the Remedy acquisition, Peregrine began to reveal to the public that it had grossly overstated its revenue during the years 2000-2002, and eventually restated more than $500 million in revenues.

After successfully defeating demurrers brought by defendants, including third parties who were customers of Peregrine who aided and abetted Peregrine's accounting fraud under California common law, plaintiffs reached a series of settlements.  The settling defendants included Arthur Andersen, all of the director defendants, three officer defendants and the third party customer defendants KPMG, British Telecom, Fujitsu, Software Spectrum and Bindview.  The total amount received in settlements was approximately $45 million.

14.     ***In re Cablevision Systems Corp. Shareholder Derivative Litigation***, No. 06-cv-4130-DGT-AKT (E.D.N.Y.).  Lieff Cabraser served as Co-Lead Counsel in a shareholders' derivative action against the board of directors and numerous officers of Cablevision.  The suit alleged that defendants intentionally manipulated stock option grant dates to Cablevision employees between 1997 and 2002 in order to enrich certain officer and director defendants at the expense of Cablevision and Cablevision shareholders.  According to the complaint, Defendants made it appear as if stock options were granted earlier than they actually were in order to maximize the value of the grants.  In September 2008, the Court granted final approval to a $34.4 million settlement of the action.  Over $24 million of the settlement was contributed directly by individual defendants who either received backdated options or participated in the backdating activity.

15.     ***In re Media Vision Technology Securities Litigation***, No. CV-94-1015 (N.D. Cal.).  Lieff Cabraser served as Co-Lead Counsel in a class action lawsuit which alleged that certain Media Vision's officers, outside directors, accountants and underwriters engaged in a fraudulent scheme to inflate the company's earnings and issued false and misleading public statements about the company's finances, earnings and profits.  By 1998, the Court had approved several partial settlements with many of Media Vision's officers and directors, accountants and underwriters which totaled $31 million.  The settlement proceeds have been distributed to eligible class members.  The evidence that Lieff Cabraser developed in the civil case led prosecutors to commence an investigation and ultimately file criminal charges against Media Vision's former Chief Executive Officer and Chief Financial Officer.  The civil action against Media Vision's CEO and CFO was stayed pending the criminal proceedings against them.  In the criminal proceedings, the CEO pled guilty on several counts, and the CFO was convicted at trial.  In October 2003, the Court granted Plaintiffs' motions for summary judgment and entered a judgment in favor of the class against the two defendants in the amount of $188 million.

16.     ***In re California Micro Devices Securities Litigation***, No. C-94-2817-VRW (N.D. Cal.).  Lieff Cabraser served as Liaison Counsel for the Colorado Public Employees' Retirement Association and the California State Teachers' Retirement System, and the class they represented.  Prior to 2001, the Court approved $19 million in settlements.  In May 2001, the Court approved an additional settlement of $12 million, which, combined with the earlier settlements, provided class members an almost complete return on their losses.  The settlement with the company included multi-million dollar contributions by the former Chairman of the Board and Chief Executive Officer.

Commenting in 2001 on Lieff Cabraser's work in *Cal Micro Devices*, U.S.

District Court Judge Vaughn R. Walker stated, "It is highly unusual for a class action in the securities area to recover anywhere close to the percentage of loss that has been recovered here, and counsel and the lead plaintiffs have done an admirable job in bringing about this most satisfactory conclusion of the litigation."  One year later, in a related proceeding and in response to the statement that the class had received nearly a 100% recovery, Judge Walker observed, "That's pretty remarkable.  In these cases, 25 cents on the dollar is considered to be a magnificent recovery, and this is [almost] a hundred percent."

17.   ***In re Network Associates, Inc. Securities Litigation***, No. C-99-1729-WHA (N.D. Cal.).  Following a competitive bidding process, the Court appointed Lieff Cabraser as Lead Counsel for the Lead Plaintiff and the class of investors.  The complaint alleged that Network Associates improperly accounted for acquisitions in order to inflate its stock price.  In May 2001, the Court granted approval to a $30 million settlement.

In reviewing the *Network Associates* settlement, U.S. District Court Judge William H. Alsup observed, "[T]he class was well served at a good price by excellent counsel . . .  We have class counsel who's one of the foremost law firms in the country in both securities law and class actions.  And they have a very excellent reputation for the conduct of these kinds of cases . . ."

18.   ***In re FPI/Agretech Securities Litigation***, MDL No. 763 (D. Haw., Real, J.).  We served as Lead Class Counsel for investors defrauded in a "Ponzi-like" limited partnership investment scheme. The Court approved $15 million in partial, pretrial settlements. At trial, the jury returned a $24 million verdict, which included $10 million in punitive damages, against non-settling defendant Arthur Young & Co. for its knowing complicity and active and substantial assistance in the marketing and sale of the worthless limited partnership offerings. The appellate court affirmed the compensatory damages award and remanded the case for a retrial on punitive damages. In 1994, the Court approved a $17 million settlement with Ernst & Young, the successor to Arthur Young & Co.

19.   ***Nguyen v. FundAmerica***, No. C-90-2090 MHP (N.D. Cal., Patel, J.), 1990 Fed. Sec. L. Rep. (CCH) ¶¶ 95,497, 95,498 (N.D. Cal. 1990).  Lieff Cabraser served as Plaintiffs' Class Counsel in this securities/RICO/tort action seeking an injunction against alleged unfair "pyramid" marketing practices and compensation to participants.  The District Court certified a nationwide class for injunctive relief and damages on a mandatory basis and enjoined fraudulent overseas transfers of assets.  The Bankruptcy Court permitted class proof of claims. Lieff Cabraser obtained dual District Court and Bankruptcy Court approval of settlements distributing over $13 million in FundAmerica assets to class members.

20. ***In re Brooks Automation, Inc. Securities Litigation***, No. 06 CA 11068 (D. Mass.).  Lieff Cabraser served as Court-Appointed Lead Counsel for Lead Plaintiff the Los Angeles County Employees Retirement Association and co-plaintiff Sacramento County Employees' Retirement System in a class action lawsuit on behalf of purchasers of Brooks Automation securities.  Plaintiffs charged that Brooks Automation, its senior corporate officers and directors violated federal securities laws by backdating company stock options over a six-year period, and failed to disclose the scheme in publicly filed financial statements.  Subsequent to Lieff Cabraser's filing of a consolidated amended complaint in this action, both the Securities and Exchange Commission and the United States Department of Justice filed complaints against the Company's former C.E.O., Robert Therrien, related to the same alleged practices.  In October 2008, the Court approved a $7.75 million settlement of the action.

21. ***In re A-Power Energy Generation Systems, Ltd. Securities Litigation***, No. 2:11-ml-2302-GW- (CWx) (C.D. Cal.). Lieff Cabraser served as Court-appointed Lead Counsel for Lead Plaintiff in this securities class action that charged defendants with materially misrepresenting A-Power Energy Generation Systems, Ltd.'s financial results and business prospects in violation of the antifraud provisions of the Securities Exchange Act of 1934.  The Court approved a $3.675 million settlement in August 2013.

22. ***Bank of America-Merrill Lynch Merger Securities Cases.***  In two cases -- *DiNapoli, et al. v. Bank of America Corp.*, No. 10 CV 5563 (S.D. N.Y.) and *Schwab S&P 500 Index Fund, et al. v. Bank of America Corp., et al.*, No. 11-cv- 07779 PKC (S.D. N.Y.). -- Lieff Cabraser sought recovery on a direct, non-class basis for losses that a number of public pension funds and mutual funds incurred as a result of Bank of America's alleged misrepresentations and concealment of material facts in connection with its acquisition of Merrill Lynch & Co., Inc.  Lieff Cabraser represented the New York State Common Retirement Fund, the New York State Teachers' Retirement System, the Public Employees' Retirement Association of Colorado, and fourteen mutual funds managed by Charles Schwab Investment Management.  Both cases settled in 2013 on confidential terms favorable for our clients.

23. ***Albert v. Alex. Brown Management Services; Baker v. Alex. Brown Management Services*** (Del. Ch. Ct.).  In May 2004, on behalf of investors in two investment funds controlled, managed and operated by Deutsche Bank and advised by DC Investment Partners, Lieff Cabraser filed lawsuits for alleged fraudulent conduct that resulted in an aggregate loss of hundreds of millions of dollars.  The suits named as defendants Deutsche Bank and its subsidiaries Alex. Brown Management Services and Deutsche Bank Securities, members of the funds' management

committee, as well as DC Investments Partners and two of its principals. Among the plaintiff-investors were 70 high net worth individuals. In the fall of 2006, the cases settled by confidential agreement.

## III.   Employment Discrimination and Unfair Employment Practices

### A.   Current Cases

1.   ***Chen-Oster v. Goldman Sachs***, No. 10-6950 (S.D.N.Y.). Lieff Cabraser serves as Co-Lead Counsel for plaintiffs in a gender discrimination class action lawsuit against Goldman Sachs. The complaint alleges that Goldman Sachs has engaged in systemic and pervasive discrimination against its female professional employees in violation of Title VII of the Civil Rights Act of 1964 and the New York City Human Rights Law. The complaint charges that, among other things, Goldman Sachs pays its female professionals less than similarly situated males, disproportionately promotes men over equally or more qualified women, and offers better business opportunities and professional support to its male professionals. The Court denied defendant's motion to strike class allegations and class certification briefing is underway.

2.   ***Ellis v. Costco Wholesale Corp.***, No. 04-03341-EMC (N.D. Cal.). Lieff Cabraser serves as Co-Lead Counsel for current and former female employees who charge that Costco discriminates against women in promotions to management positions. In January 2007, the Court certified a class consisting of over 750 current and former female Costco employees nationwide who were denied promotion to General Manager or Assistant Manager since January 3, 2002. Costco appealed. In September 2011, the U.S. Court of Appeals for the Ninth Circuit remanded the case to the district court to make class certification findings consistent with the U.S. Supreme Court's ruling in *Wal-Mart v. Dukes,* 131 S.Ct. 2541 (2011). In September 2012, U.S. District Court Judge Edward M. Chen granted plaintiffs' motion for class certification and certified two classes of over 1,250 current and former female Costco employees, one for injunctive relief and the other for monetary relief. On February 12, 2014, the Court granted preliminary approval to an $8 million settlement.

3.   ***Benedict v. Hewlett-Packard Company***, No. C13-0119 (N.D. Cal.). Lieff Cabraser represents former Hewlett-Packard ("HP") technical support employees who filed a nationwide class action lawsuit charging that HP failed to pay them and other former and current technical support employees for all overtime hours worked in violation of the federal Fair Labor Standards Act ("FSLA") and state law. HP employs several thousand technical support workers. The complaint charges that HP has a common practice of misclassifying its technical support workers as exempt and refusing to pay them overtime. On February 13, 2014, the

Court granted plaintiffs' motion for conditional certification of a FSLA overtime action.

4.    ***Zaborowski v. MHN Government Services***, No. 12-CV-05109-SI (N.D. Cal.)  Lieff Cabraser represents current and former Military and Family Life Consultants ("MFLCs") in a class action lawsuit against MHN Government Services, Inc., ("MHN") and Managed Health Network, Inc., seeking overtime pay under the federal Fair Labor Standards Act and state laws.   The complaint charges that MHN has misclassified the MFLCs as independent contractors and as "exempt" from overtime and failed to pay them overtime pay for hours worked over 40 per week.

5.    ***Tatum v. R.J. Reynolds Tobacco Company***, No. 1:02-cv-00373-NCT (M.D. N.C.).  Lieff Cabraser serves as Co-Lead Trial Counsel in this class action on behalf of over 3,500 employees of R.J. Reynolds Tobacco Company ("RJR") brought under the Employment Retirement Income Security Act.  Plaintiffs allege that RJR breached its duty of prudence in administering the employee 401(k) retirement plan when it liquidated two funds held by the plan on an arbitrary timeline without conducting a thorough investigation, thereby causing a substantial loss to the plan.  The 6-week bench trial occurred in January-February 2010 and December 2010, and post-trial briefing concluded in February 2011.

      In February 2013, the District Court issued a decision in favor of RJR.  The District Court found that RJR breached its fiduciary duty of procedural prudence but concluded that a reasonable and prudent fiduciary could have made the same decision as RJR made.  Plaintiffs appealed.  In August 2014, the U.S. Court of Appeals for the Fourth Circuit affirmed the holding that RJR breached its duty of procedural prudence and therefore bore the burden of proof as to causation.  The Court of Appeals found that the District Court failed to apply the correct legal standard in assessing RJR's liability, reversed the judgment in favor of RJR, and remanded the case to the District Court for further proceedings.

6.    ***Senne v. Major League Baseball***, No. 14-cv-00608 (N.D. Cal.).  Lieff Cabraser represents current and former Minor League Baseball players employed under uniform player contracts in a class and collective action seeking unpaid overtime and minimum wages under the Fair Labor Standards Act and state laws.  The complaint alleges that Major League Baseball ("MLB") and certain MLB franchises paid minor league players a uniform monthly fixed salary that, in light of the hours worked, amounts to less than the minimum wage and an unlawful denial of overtime pay.

### B.     Successes

1.     ***Butler v. Home Depot***, No. C94-4335 SI (N.D. Cal.).  Lieff Cabraser and co-counsel represented a class of approximately 25,000 female employees and applicants for employment with Home Depot's West Coast Division who alleged gender discrimination in connection with hiring, promotions, pay, job assignment, and other terms and conditions of employment.  The class was certified in January 1995.  In January 1998, the court approved a $87.5 million settlement of the action that included comprehensive injunctive relief over the term of a five-year Consent Decree.  Under the terms of the settlement, Home Depot modified its hiring, promotion, and compensation practices to ensure that interested and qualified women were hired for, and promoted to, sales and management positions.

On January 14, 1998, U.S. District Judge Susan Illston commented that the settlement provides "a very significant monetary payment to the class members for which I think they should be grateful to their counsel. . . . Even more significant is the injunctive relief that's provided for . . ."  By 2003, the injunctive relief had created thousands of new job opportunities in sales and management positions at Home Depot, generating the equivalent of over approximately $100 million per year in wages for female employees.

In 2002, Judge Illston stated that the injunctive relief has been a "win/win . . . for everyone, because . . . the way the Decree has been implemented has been very successful and it is good for the company as well as the company's employees."

2.     ***Rosenburg v. IBM,*** No. C 06-0430 PJH (N.D. Cal.).  In July 2007, the Court granted final approval to a $65 million settlement of a class action suit by current and former technical support workers for IBM seeking unpaid overtime.  The settlement constitutes a record amount in litigation seeking overtime compensation for employees in the computer industry. Plaintiffs alleged that IBM illegally misclassified its employees who install or maintain computer hardware or software as "exempt" from the overtime pay requirements of federal and state labor laws.

3.     ***Satchell v. FedEx Express***, No. C 03-2659 SI; C 03-2878 SI (N.D. Cal.).  In 2007, the Court granted final approval to a $54.9 million settlement of the race discrimination class action lawsuit by African American and Latino employees of FedEx Express.  The settlement requires FedEx to reform its promotion, discipline, and pay practices. Under the settlement, FedEx will implement multiple steps to promote equal employment opportunities, including making its performance evaluation process less discretionary, discarding use of the "Basic Skills

Test" as a prerequisite to promotion into certain desirable positions, and changing employment policies to demonstrate that its revised practices do not continue to foster racial discrimination. The settlement, covering 20,000 hourly employees and operations managers who have worked in the western region of FedEx Express since October 1999, was approved by the Court in August 2007.

4.     ***Gonzalez v. Abercrombie & Fitch Stores***, No. C03-2817 SI (N.D. Cal.). In April 2005, the Court approved a settlement, valued at approximately $50 million, which requires the retail clothing giant Abercrombie & Fitch to provide monetary benefits of $40 million to the class of Latino, African American, Asian American and female applicants and employees who charged the company with discrimination. The settlement included a six-year period of injunctive relief requiring the company to institute a wide range of policies and programs to promote diversity among its workforce and to prevent discrimination based on race or gender. Lieff Cabraser served as Lead Class Counsel and prosecuted the case with a number of co-counsel firms, including the Mexican American Legal Defense and Education Fund, the Asian Pacific American Legal Center and the NAACP Legal Defense and Educational Fund, Inc.

5.     ***Giles v. Allstate***, JCCP Nos. 2984 and 2985. Lieff Cabraser represented a class of Allstate insurance agents seeking reimbursement of out-of-pocket costs. The action settled for approximately $40 million.

6.     ***Calibuso v. Bank of America Corporation, Merrill Lynch & Co.***, No. CV10-1413 (E.D. N.Y.). Lieff Cabraser served as Co-Lead Counsel for female Financial Advisors who alleged that Bank of America and Merrill Lynch engaged in a pattern and practice of gender discrimination with respect to business opportunities and compensation. The complaint charged that these violations were systemic, based upon company-wide policies and practices. In December 2013, the Court approved a $39 million settlement. The settlement includes three years of programmatic relief -- to be overseen by an Independent Monitor -- regarding teaming and partnership agreements, business generation, account distributions, manager evaluations, promotions, training, and complaint processing and procedures, among other things. An Independent Consultant will also conduct an internal study of the bank's Financial Advisors' teaming practices.

7.     ***Frank v. United Airlines***, No. C-92-0692 MJJ (N.D. Cal.). Lieff Cabraser and co-counsel obtained a $36.5 million settlement in February 2004 for a class of female flight attendants who were required to weigh less than comparable male flight attendants. Former U.S. District Court Judge Charles B. Renfrew (ret.), who served as a mediator in the case, stated, "As a participant in the settlement negotiations, I am familiar with

and know the reputation, experience and skills of lawyers involved. They are dedicated, hardworking and able counsel who have represented their clients very effectively." U.S. District Judge Martin J. Jenkins, in granting final approval to the settlement, found "that the results achieved here could be nothing less than described as exceptional," and that the settlement "was obtained through the efforts of outstanding counsel."

8.  ***Barnett v. Wal-Mart***, No. 01-2-24553-SNKT (Wash.). The Court approved in July 2009 to a settlement valued at up to $35 million on behalf of workers in Washington State who alleged they were deprived of meal and rest breaks and forced to work off-the-clock at Wal-Mart stores and Sam's Clubs. In addition to monetary relief, the settlement provided injunctive relief benefiting all employees. Wal-Mart was required to undertake measures to prevent wage and hour violations at its 50 stores and clubs in Washington, measures that included the use of new technologies and compliance tools.

Plaintiffs filed their complaint in 2001. Three years later, the Court certified a class of approximately 40,000 current and former Wal-Mart employees. The eight years of litigation were intense and adversarial. Wal-Mart, currently the world's third largest corporation, vigorously denied liability and spared no expense in defending itself.

This lawsuit and similar actions filed against Wal-Mart across America served to reform the pay procedures and employment practices for Wal-Mart's 1.4 million employees nationwide. In a press release announcing the Court's approval of the settlement, Wal-Mart spokesperson Daphne Moore stated, "This lawsuit was filed years ago and the allegations are not representative of the company we are today." Lieff Cabraser served as court-appointed Co-Lead Class Counsel.

9.  ***Amochaev. v. Citigroup Global Markets, d/b/a Smith Barney***, No. C 05-1298 PJH (N.D. Cal.). In August 2008, the Court approved a $33 million settlement for the 2,411 members of the Settlement Class in a gender discrimination case against Smith Barney. Lieff Cabraser represented Female Financial Advisors who charged that Smith Barney, the retail brokerage unit of Citigroup, discriminated against them in account distributions, business leads, referral business, partnership opportunities, and other terms of employment. In addition to the monetary compensation, the settlement included comprehensive injunctive relief for four years designed to increase business opportunities and promote equality in compensation for female brokers.

10. ***Vedachalam v. Tata Consultancy Services***, C 06-0963 CW (N.D. Cal.). Lieff Cabraser served as Co-Lead Counsel for 12,700 foreign nationals sent by the Indian conglomerate Tata to work in the U.S. After 7

years of hard-fought litigation, the District Court in July 2013 granted final approval to a $29.75 million settlement.  The complaint charged that Tata breached the contracts of its non-U.S.-citizen employees by requiring them to sign over their federal and state tax refund checks to Tata, and by failing to pay its non-U.S.-citizen employees the monies promised to those employees before they came to the United States.  In 2007 and again in 2008, the District Court denied Tata's motions to compel arbitration of Plaintiffs' claims in India.  The Court held that no arbitration agreement existed because the documents purportedly requiring arbitration in India applied one set of rules to the Plaintiffs and another set to Tata.  In 2009, the Ninth Circuit Court of Appeals affirmed this decision.  In July 2011, the District Court denied in part Tata's motion for summary judgment, allowing Plaintiffs' legal claims for breach of contract and certain violations of California wage laws to go forward.  In 2012, the District Court found that the plaintiffs satisfied the legal requirements for a class action and certified two classes.

11.  ***Giannetto v. Computer Sciences Corporation***, No. 03-CV-8201 (C.D. Cal.).  In one of the largest overtime pay dispute settlements ever in the information technology industry, the Court approved a $24 million settlement with Computer Sciences Corporation in 2005.  Plaintiffs charged that the global conglomerate had a common practice of refusing to pay overtime compensation to its technical support workers involved in the installation and maintenance of computer hardware and software in violation of the Fair Labor Standards Act, California's Unfair Competition Law, and the wage and hour laws of 13 states.

12.  ***Church v. Consolidated Freightways***, No. C90-2290 DLJ (N.D. Cal.).  Lieff Cabraser was the Lead Court-appointed Class Counsel in this class action on behalf of the exempt employees of Emery Air Freight, a freight forwarding company acquired by Consolidated Freightways in 1989.  On behalf of the employee class, Lieff Cabraser prosecuted claims for violation of the Employee Retirement Income Security Act, the securities laws, and the Age Discrimination in Employment Act.  The case settled in 1993 for $13.5 million.

13.  ***Gerlach v. Wells Fargo & Co.,*** No. C 05-0585 CW (N.D. Cal.).  In January 2007, the Court granted final approval to a $12.8 million settlement of a class action suit by current and former business systems employees of Wells Fargo seeking unpaid overtime.  Plaintiffs alleged that Wells Fargo illegally misclassified those employees, who maintained and updated Wells Fargo's business tools according to others' instructions, as "exempt" from the overtime pay requirements of federal and state labor laws.

14. ***Buccellato v. AT&T Operations***, No. C10-00463-LHK (N.D. Cal.). Lieff Cabraser represented a group of current and former AT&T technical support workers who alleged that AT&T misclassified them as exempt and failed to pay them for all overtime hours worked, in violation of federal and state overtime pay laws. In June 2011, the Court approved a $12.5 million collective and class action settlement.

15. ***Buttram v. UPS***, No. C-97-01590 MJJ (N.D. Cal.). Lieff Cabraser and several co-counsel represented a class of approximately 14,000 African-American part-time hourly employees of UPS's Pacific and Northwest Regions alleging race discrimination in promotions and job advancement. In 1999, the Court approved a $12.14 million settlement of the action. Under the injunctive relief portion of the settlement, Class Counsel monitored the promotions of African-American part-time hourly employees to part-time supervisor and full-time package car drivers.

16. ***Goddard, et al. v. Longs Drug Stores Corporation, et al.***, No. RG04141291 (Cal. Supr. Ct.). Store managers and assistant store managers of Longs Drugs charged that the company misclassified them as exempt from overtime wages. Managers regularly worked in excess of 8 hours per day and 40 hours per week without compensation for their overtime hours. Following mediation, in 2005, Longs Drugs agreed to settle the claims for a total of $11 million. Over 1,000 current and former Longs Drugs managers and assistant managers were eligible for compensation under the settlement, over 98% of the class submitted claims.

17. ***Trotter v. Perdue Farms***, No. C 99-893-RRM (JJF) (MPT) (D. Del.). Lieff Cabraser represented a class of chicken processing employees of Perdue Farms, Inc., one of the nation's largest poultry processors, for wage and hour violations. The suit challenged Perdue's failure to compensate its assembly line employees for putting on, taking off, and cleaning protective and sanitary equipment in violation of the Fair Labor Standards Act, various state wage and hour laws, and the Employee Retirement Income Security Act. Under a settlement approved by the Court in 2002, Perdue paid $10 million for wages lost by its chicken processing employees and attorneys' fees and costs. The settlement was in addition to a $10 million settlement of a suit brought by the Department of Labor in the wake of Lieff Cabraser's lawsuit.

18. ***Gottlieb v. SBC Communications***, No. CV-00-04139 AHM (MANx) (C.D. Cal.). With co-counsel, Lieff Cabraser represented current and former employees of SBC and Pacific Telesis Group ("PTG") who participated in AirTouch Stock Funds, which were at one time part of PTG's salaried and non-salaried savings plans. After acquiring PTG, SBC sold AirTouch, which PTG had owned, and caused the AirTouch Stock

Funds that were included in the PTG employees' savings plans to be liquidated.  Plaintiffs alleged that in eliminating the AirTouch Stock Funds, and in allegedly failing to adequately communicate with employees about the liquidation, SBC breached its duties to 401k plan participants under the Employee Retirement Income Security Act.  In 2002, the Court granted final approval to a $10 million settlement.

19. ***In Re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation***, MDL No. 1439 (D. Ore.).  Lieff Cabraser and co-counsel represented claims representatives of Farmers' Insurance Exchange seeking unpaid overtime.  Lieff Cabraser won a liability phase trial on a classwide basis, and then litigated damages on an individual basis before a special master.  The judgment was partially upheld on appeal.  In August 2010, the Court approved an $8 million settlement.

20. ***Zuckman v. Allied Group***, No. 02-5800 SI (N.D. Cal.).  In September 2004, the Court approved a settlement with Allied Group and Nationwide Mutual Insurance Company of $8 million plus Allied/Nationwide's share of payroll taxes on amounts treated as wages, providing plaintiffs a 100% recovery on their claims. Plaintiffs, claims representatives of Allied / Nationwide, alleged that the company misclassified them as exempt employees and failed to pay them and other claims representatives in California overtime wages for hours they worked in excess of eight hours or forty hours per week.  In approving the settlement, U.S. District Court Judge Susan Illston commended counsel for their "really good lawyering" and stated that they did "a splendid job on this" case.

21. ***Thomas v. California State Automobile Association***, No. CH217752 (Cal. Supr. Ct.).  With co-counsel, Lieff Cabraser represented 1,200 current and former field claims adjusters who worked for the California State Automobile Association ("CSAA").  Plaintiffs alleged that CSAA improperly classified their employees as exempt, therefore denying them overtime pay for overtime worked.  In May 2002, the Court approved an $8 million settlement of the case.

22. ***Higazi v. Cadence Design Systems,*** No. C 07-2813 JW (N.D. Cal.).  In July 2008, the Court granted final approval to a $7.664 million settlement of a class action suit by current and former technical support workers for Cadence seeking unpaid overtime.  Plaintiffs alleged that Cadence illegally misclassified its employees who install, maintain, or support computer hardware or software as "exempt" from the overtime pay requirements of federal and state labor laws.

23. ***Sandoval v. Mountain Center, Inc., et al.,*** No. 03CC00280 (Cal. Supr. Ct.).  Cable installers in California charged that defendants owed them overtime wages, as well as damages for missed meal and rest breaks and reimbursement for expenses incurred on the job.  In 2005, the Court

approved a $7.2 million settlement of the litigation, which was distributed to the cable installers who submitted claims.

24. **Lewis v. Wells Fargo**, No. 08-cv-2670 CW (N.D. Cal.).  Lieff Cabraser served as Lead Counsel on behalf of approximately 330 I/T workers who alleged that Wells Fargo had a common practice of misclassifying them as exempt and failing to pay them for all overtime hours worked in violation of federal and state overtime pay laws.  In April 2011, the Court granted collective action certification of the FLSA claims and approved a $6.72 million settlement of the action.

25. **Kahn v. Denny's**, No. BC177254 (Cal. Supr. Ct.).  Lieff Cabraser brought a lawsuit alleging that Denny's failed to pay overtime wages to its General Managers and Managers who worked at company-owned restaurants in California.  The Court approved a $4 million settlement of the case in 2000.

26. **Wynne v. McCormick & Schmick's Seafood Restaurants**, No. C 06-3153 CW (N.D. Cal.).  In August 2008, the Court granted final approval to a settlement valued at $2.1 million, including substantial injunctive relief, for a class of African American restaurant-level hourly employees.  The consent decree created hiring benchmarks to increase the number of African Americans employed in front of the house jobs (*e.g.*, server, bartender, host/hostess, waiter/waitress, and cocktail server), a registration of interest program to minimize discrimination in promotions, improved complaint procedures, and monitoring and enforcement mechanisms.

27. **Sherrill v. Premera Blue Cross**, No. 2:10-cv-00590-TSZ (W.D. Wash.). In April 2010, a technical worker at Premera Blue Cross filed a lawsuit against Premera seeking overtime pay from its misclassification of technical support workers as exempt.  In June 2011, the Court approved a collective and class action settlement of $1.45 million.

28. **Holloway v. Best Buy,** No. C05-5056 PJH (N.D. Cal.).  Lieff Cabraser, with co-counsel, represented a class of current employees of Best Buy that alleged Best Buy stores nationwide discriminated against women, African Americans, and Latinos.  The complaint charged that these employees were assigned to less desirable positions and denied promotions, and that class members who attained managerial positions were paid less than white males.  In November 2011, the Court approved a settlement of the class action in which Best Buy agreed to changes to its personnel policies and procedures that will enhance the equal employment opportunities of the tens of thousands of women, African Americans, and Latinos employed by Best Buy nationwide.

29.     ***Lyon v. TMP Worldwide***, No. 993096 (Cal. Supr. Ct.).  Lieff Cabraser
served as Class Counsel for a class of certain non-supervisory employees
in an advertising firm.  The settlement, approved in 2000, provided
almost a 100% recovery to class members.  The suit alleged that TMP
failed to pay overtime wages to these employees.

Lieff Cabraser attorneys have had experience representing employees in additional cases,
including cases involving race, gender, and age discrimination, ERISA, breach of contract
claims, wage/hour claims and other violations of the law.  For example, as described in the
antitrust section of the resume, Lieff Cabraser serves as plaintiffs' Interim Co-Lead Counsel in a
consolidated class action charging that Adobe Systems Inc., Apple Inc., Google Inc., Intel
Corporation, Intuit Inc., Lucasfilm Ltd., and Pixar violated antitrust laws by conspiring
to suppress the pay of technical, creative, and other salaried employees.

We also represent employees who "blow the whistle" on wrongdoing by their company.
Our lawyers are dedicated to protecting employees who have been treated unfairly and
preventing retaliation against them for challenging illegal practices.  These cases are described
in the False Claims Act section of the resume.

Lieff Cabraser attorneys frequently write amici briefs on cutting-edge legal issues
involving employment law.  We are currently investigating charges of race, gender and/or age
discrimination, and wage/hour violations against several companies.

*U.S. News* and *Best Lawyers* selected Lieff Cabraser as a 2013 national "Law Firm of the
Year" in the category of Employment Law – Individuals.  *U.S. News* and *Best Lawyers* ranked
firms nationally in 80 different practice areas based on extensive client feedback and
evaluations from 70,000 lawyers nationwide.  Only one law firm in the U.S. in each practice area
receives the "Law Firm of the Year" designation.

*Benchmark Plaintiff*, a guide to the nation's leading plaintiffs' firms, has ranked our
employment practice group a Tier 1 national ranking, its highest ranking.  The *Legal 500* guide
to the U.S. legal profession has also recognized Lieff Cabraser as having one of the leading
plaintiffs' employment practices in the nation for the past three years.  The legal weekly *The
Recorder* selected our employment group as one of the top plaintiffs' employment practice
groups in the San Francisco Bay Area.

Kelly M. Dermody chairs the firm's employment practice group and leads the firm's
employment cases.  The *Daily Journal* has recognized her as one of the top 100 attorneys in
California, top labor and employment lawyers in California, and top women litigators in
California.  *Best Lawyers* and *Super Lawyers* have repeatedly recognized Ms. Dermody as one
of top lawyers in San Francisco and Northern California.  In 2007, *California Lawyer* magazine
awarded Ms. Dermody its prestigious California Lawyer Attorney of the Year (CLAY) Award.

## IV.    **Consumer Protection**

### A.    **Current Cases**

1.     ***Gutierrez v. Wells Fargo Bank***, No. C 07-05923 WHA (N.D. Cal.).
Following a two week bench class action trial, U.S. District Court Judge
William Alsup in August 2010 issued a 90-page opinion holding that

Wells Fargo violated California law by improperly and illegally assessing overdraft fees on its California customers and ordered $203 million in restitution to the certified class. Instead of posting each transaction chronologically, the evidence presented at trial showed that Wells Fargo deducted the largest charges first, drawing down available balances more rapidly and triggering a higher volume of overdraft fees.

Wells Fargo appealed. In December 2012, the appellate court issued an opinion upholding and reversing portions of Judge Alsup's order, and remanded the case to the district court for further proceedings. In May 2013, Judge Alsup reinstated the $203 million judgment against Wells Fargo.

For his outstanding work as Lead Trial Counsel and the significance of the case, *California Lawyer* magazine recognized Richard M. Heimann with a California Lawyer of the Year (CLAY) Award. In addition, the Consumer Attorneys of California selected Mr. Heimann and Michael W. Sobol as Finalists for the Consumer Attorney of the Year Award for their success in the case.

2. ***In re Checking Account Overdraft Litigation***, MDL No. 2036 (S.D. Fl.). Lieff Cabraser serves on the Plaintiffs' Executive Committee ("PEC") in Multi-District Litigation against 35 banks, including Bank of America, Chase, Citizens, PNC, Union Bank, and U.S. Bank. The complaints alleged that the banks entered debit card transactions from the "largest to the smallest" to draw down available balances more rapidly and maximize overdraft fees. In March 2010, the Court denied defendants' motions to dismiss the complaints. The Court has approved nearly $1 billion in settlements with the banks.

In November 2011, the Court granted final approval to a $410 million settlement of the case against Bank of America. Lieff Cabraser was the lead plaintiffs' law firm on the PEC that prosecuted the case against Bank of America. In approving the settlement with Bank of America, U.S. District Court Judge James Lawrence King stated, "This is a marvelous result for the members of the class." Judge King added, "[B]ut for the high level of dedication, ability and massive and incredible hard work by the Class attorneys . . . I do not believe the Class would have ever seen . . . a penny."

In September 2012, the Court granted final approval to a $35 million of the case against Union Bank. In approving the settlement, Judge King again complimented plaintiffs' counsel for their outstanding work and effort in resolving the case: "The description of plaintiffs' counsel, which is a necessary part of the settlement, is, if anything, understated. In my observation of the diligence and professional activity, it's superb. I know of no other class action case anywhere in the country in the last couple of

decades that's been handled as efficiently as this one has, which is a tribute to the lawyers."

3. ***Dover v. British Airways***, Case No. 1:12-cv-05567 (E.D.N.Y.). Lieff Cabraser represents participants in British Airways' ("BA") frequent flyer program, known as the Executive Club, in a breach of contract class action lawsuit. BA imposes a very high "fuel surcharge," often in excess of $500, on Executive Club reward tickets. Plaintiffs allege that the "fuel surcharge" is not based upon the price of fuel, and that it therefore violates the terms of the contract.

4. ***In re Carrier IQ Privacy Litigation***, MDL No. 2330. In class action litigation against Carrier IQ, Inc., and smartphone manufacturers, consumers allege defendants violated federal and state privacy statutes by installing Carrier IQ's user tracking software, called IQ Agent, on millions of cell phones and other mobile devices that use the Android operating system. IQ Agent records and transmits to cellular carriers data relating to customers' cellular phone use. The data are then analyzed and segmented, including by equipment and subscriber identification numbers. IQ Agent cannot be removed and cannot be detected by users lacking advanced computing skills. Users are not notified of its presence, nor are they asked to agree to its operation. In addition, the complaint alleges that IQ Agent intercepts electronic communications that users intend to be "secure," *e.g.*, bank account numbers, user names, passwords, and search terms.

5. ***In re Google Inc. Street View Electronic Communications Litigation***, Case No. 3:10-md-021784-CRB (N.D. Cal.). Lieff Cabraser represents persons whose right to privacy was violated when Google intentionally equipped its Google Maps "Street View" vehicles with Wi-Fi antennas and software that collected data transmitted by those persons' Wi-Fi networks located in their nearby homes. Google collected not only basic identifying information about individuals' Wi-Fi networks, but also personal, private data being transmitted over their Wi-Fi networks such as emails, usernames, passwords, videos, and documents. Plaintiffs allege that Google's actions violated the federal Wiretap Act, as amended by the Electronic Communications Privacy Act. On September 10, 2013, the Ninth Circuit Court of Appeals agreed with Plaintiffs that Google's actions are not exempt from the Act.

6. ***ING Bank Rate Renew Cases***, Case No. 11-154-LPS (D. Del.). Lieff Cabraser represents borrowers in class action lawsuits charging that ING Direct breached its promise to allow them to refinance their mortgages for a flat fee. From October 2005 through April 2009, ING promoted a $500 or $750 flat-rate refinancing fee called "Rate Renew" as a benefit of choosing ING for mortgages over competitors. Beginning in May 2009,

however, ING began charging a higher fee of a full monthly mortgage payment for refinancing using "Rate Renew," despite ING's earlier and lower advertised price.  As a result, the complaint alleges that many borrowers paid more to refinance their loans using "Rate Renew" than they should have, or were denied the opportunity to refinance their loan even though the borrowers met the terms and conditions of ING's original "Rate Renew" offer.  In August 2012, the Court certified a class of consumers in ten states who purchased or retained an ING mortgage from October 2005 through April 2009.  A second case on behalf of California consumers was filed in December 2012.  In May 2014, the Court granted preliminary approval to a $20 million settlement of the action.

7.    ***Telephone Consumer Protection Act Litigation***.  Lieff Cabraser represents consumers who have received debt collection, marketing, or other harassing pre-recorded calls to their cell phones without consenting to receive these calls.  The Telephone Consumer Protection Act ("TCPA") prohibits abusive telephone practices by lenders and marketers, and places strict limits on the use of autodialers to call or send texts to cell phones.  In a class action lawsuit against Sallie Mae, Inc., we represented student loanholders and other consumers who received automated calls on their mobile phones without their prior express consent from Sallie Mae or an affiliate or subsidiary of SLM Corporation. The firm's efforts resulted in a settlement of $24.15 million.

In December 2013, the Court preliminarily approved a $32 million settlement with Bank of America.  If granted final approval, the Bank of America settlement will surpass the Sallie Mae settlement as the largest monetary settlement in the history of the TCPA.  In addition to a $8.7 million settlement with Discover Bank, class settlements with Bank of the West, Capital One, Carrington Mortgage Services, HSBC, and JPMorgan Chase Bank are awaiting court approval.  Lieff Cabraser continues to litigate cases against Allstate, American Express, DIRECTV, Esurance, Farmers, Nationwide, State Farm, TD Auto Finance, and Wells Fargo Bank.

8.    ***Campbell v. Facebook***, No. 4:13-cv-05996 (N.D. Cal.).  Lieff Cabraser represents Facebook users in a nationwide class action lawsuit alleging that Facebook intercepts certain private data in users' personal and private e-mail messages on the social network and profits by sharing that information with third parties.  The complaint alleges that when a user composes a private Facebook message and includes a link to a third party website (a "URL"), Facebook does not treat this message as private.  Instead, Facebook scans the content of the message, follows the URL, and searches for information to profile the message-sender's web activity.  This enables Facebook to mine aspects of user data and profit from that

data by sharing it with third parties - namely, advertisers, marketers, and other data aggregators.

9.      ***Moore v. Verizon Communications***, No. 09-cv-01823-SBA (N.D. Cal.); ***Nwabueze v. AT&T***, No. 09-cv-1529 SI (N.D. Cal.); ***Terry v. Pacific Bell Telephone Co.***, No. RG 09 488326 (Alameda County Sup. Ct.).  Lieff Cabraser, with co-counsel, represents nationwide classes of landline telephone customers subjected to the deceptive business practice known as "cramming."  In this practice, a telephone company bills customers for unauthorized third-party charges assessed by billing aggregators on behalf of third-party providers.  A U.S. Senate committee has estimated that Verizon, AT&T, and Qwest place 300 million such charges on customer bills each year (amounting to $2 billion in charges), many of which are unauthorized.  Various sources estimate that 90-99% of third-party charges are unauthorized.  Both Courts have granted preliminary approval of settlements that allow customers to receive 100% refunds for all unauthorized charges from 2005 to the present, plus extensive injunctive relief to prevent cramming in the future.  The *Nwabueze* and *Terry* cases are ongoing.

10.     ***James v. UMG Recordings, Inc.***, No. CV-11-1613 (N.D. CAL); ***Zombie v. UMG Recordings, Inc.***, No. CV-11-2431 (N.D. CAL).  Lieff Cabraser and its co-counsel represent music recording artists in a proposed class action against Universal Music Group.  Plaintiffs allege that Universal failed to pay the recording artists full royalty income earned from customers' purchases of digitally downloaded music from vendors such as Apple iTunes.  The complaint alleges that Universal licenses plaintiffs' music to digital download providers, but in its accounting of the royalties plaintiffs have earned, treats such licenses as "records sold" because royalty rate for "records sold" is lower than the royalty rate for licenses.  Plaintiffs legal claims include breach of contract and violation of California unfair competition laws.  In November 2011 the court denied defendant's motion to dismiss plaintiffs' unfair competition law claims.

11.     ***White v. Experian Information Solutions***, No. 05-CV-1070 DOC (C.D. Cal.).  In 2005, plaintiffs filed nationwide class action lawsuits on behalf of 750,000 claimants against the nation's three largest repositories of consumer credit information, Experian Information Solutions, Inc., Trans Union, LLC, and Equifax Information Services, LLC.  The complaints charged that defendants violated the Fair Credit Reporting Act ("FCRA") by recklessly failing to follow reasonable procedures to ensure the accurate reporting of debts discharged in bankruptcy and by refusing to adequately investigate consumer disputes regarding the status of discharged accounts.  In April 2008, the District Court approved a partial settlement of the action that established an historic injunction.  This

settlement required defendants comply with detailed procedures for the retroactive correction and updating of consumers' credit file information concerning discharged debt (affecting one million consumers who had filed for bankruptcy dating back to 2003), as well as new procedures to ensure that debts subject to future discharge orders will be similarly treated.  As noted by the District Court, "Prior to the injunctive relief order entered in the instant case, however, no verdict or reported decision had ever required Defendants to implement procedures to cross-check data between their furnishers and their public record providers."  In 2011, the District Court approved a $45 million settlement of the class claims for monetary relief.  In April 2013, the Court of Appeals for the Ninth Circuit reversed the order approving the monetary settlement and remanded the case for further proceedings.

12.  ***In re Neurontin Marketing and Sales Practices Litigation***, No. 04-CV-10739-PBS (D. Mass.).  Lieff Cabraser serves on the Plaintiffs' Steering Committee in multidistrict litigation arising out of the sale and marketing of the prescription drug Neurontin, manufactured by Parke-Davis, a division of Warner-Lambert Company, which was later acquired by Pfizer, Inc.  Lieff Cabraser served as co-counsel to Kaiser Foundation Health Plan, Inc. and Kaiser Foundation Hospitals ("Kaiser") in Kaiser's trial against Pfizer in the litigation.  On March 25, 2010, a federal court jury determined that Pfizer violated a federal antiracketeering law by promoting its drug Neurontin for unapproved uses and found Pfizer must pay Kaiser damages up to $142 million.  At trial, Kaiser presented evidence that Pfizer knowingly marketed Neurontin for unapproved uses without proof that it was effective.  Kaiser said it was misled into believing neuropathic pain**,** migraines, and bipolar disorder were among the conditions that could be treated effectively with Neurontin, which was approved by the FDA as an adjunctive therapy to treat epilepsy and later for post-herpetic neuralgia, a specific type of neuropathic pain.  In November 2010, the Court issued Findings of Fact and Conclusions of Law on Kaiser's claims arising under the California Unfair Competition Law, finding Pfizer liable and ordering that it pay restitution to Kaiser of approximately $95 million.  In April 2013, the First Circuit Court of Appeals affirmed both the jury's and the district court's verdicts.  In July 2014, the Court granted preliminary approval to a $325 million settlement on behalf of a nationwide class of third party payors.

13.  ***Healy v. Chesapeake Appalachia***, No. 1:10cv00023 (W.D. Va.);  ***Hale v. CNX Gas***, No. 1:10cv00059 (W.D. Va.); ***Estate of Holman v. Noble Energy***, No. 03 CV 9 (Dist. Ct., Co.); ***Droegemueller v. Petroleum Development Corporation***, No. 07 CV 2508 JLK (D. Co.); ***Anderson v. Merit Energy Co.***, No. 07 CV 00916 LTB (D. Co.); ***Holman v. Petro-Canada Resources*** (USA), No. 07 CV 416 (Dist. Ct., Co.).  Lieff Cabraser serves as Co-Lead Counsel

in several cases pending in federal court in Virginia, in which plaintiffs allege that certain natural gas companies improperly underpaid gas royalties to the owners of the gas.  In one case that recently settled, the plaintiffs recovered approximately 95% of the damages they suffered.  Lieff Cabraser also achieved settlements on behalf of natural gas royalty owners in five other class actions outside Virginia.  Those settlements -- in which class members recovered between 70% and 100% of their damages, excluding interest -- were valued at more than $160 million.

14.     ***Adkins v. Morgan Stanley, No. 12 CV 7667 (S.D.N.Y.).***  Five African-American residents from Detroit, Michigan, joined by Michigan Legal Services, have brought a class action lawsuit against Morgan Stanley for discrimination in violation of the Fair Housing Act and other civil rights laws.  The plaintiffs charge that Morgan Stanley actively ensured the proliferation of high-cost mortgage loans with specific risk factors in order to bundle and sell mortgage-backed securities to investors.  The lawsuit is the first to seek to hold a bank in the secondary market accountable for the adverse racial impact of such policies and conduct.  Plaintiffs seek certification of the case as a class action for as many as 6,000 African-Americans homeowners in the Detroit area who may have suffered similar discrimination.  Lieff Cabraser serves as plaintiffs' counsel with the American Civil Liberties Union, the ACLU of Michigan, and the National Consumer Law Center.

15.     ***Hansell v. TracFone Wireless***, No. 13-cv-3440-EMC (N.D. Cal.); ***Blaqmoor v. TracFone Wireless***, No. 13-cv-05295-EMC (N.D. Cal.); ***Gandhi v. TracFone Wireless***, No. 13-cv-05296-EMC (N.D. Cal.).  In these related nationwide class actions against TracFone Wireless (and Wal-Mart Stores, in the *Hansell* action), plaintiffs allege that TracFone falsely advertises that its StraightTalk, Net10, and Simple Mobile cell phone plans provide "unlimited" data.  Contrary to this misrepresentation, plaintiffs allege that TracFone implements internally established data usage limits that it purposefully fails to disclose to consumers, and regularly "throttles" (i.e. significantly reduces the speed of) or terminates customers' data plans pursuant to the secret limits.  Plaintiffs legal claims include breach of contract and violation of California's and Florida's unfair competition and false advertising laws.

16.     ***Williamson v. McAfee, Inc.,*** No. 14-cv-00158-EJD (N.D.Cal.).  This nationwide class action alleges that McAfee falsely represents the prices of its computer anti-virus software to customers enrolled in its "auto-renewal" program.  Plaintiff alleges that McAfee's fraudulent pricing scheme operates on two levels: First, McAfee offers *non*-auto-renewal subscriptions at stated "discounts" from a "regular" sales price; however, the stated discounts are false because McAfee does not ever sell

subscriptions at the stated "regular" price to *non*-auto-renewal customers.  Second,  plaintiffs allege that McAfee charges the auto-renewal customers the amount of the false "regular" sales price, claiming it to be the "current" regular price even though it does not sell subscriptions at that price to any other customer.  Plaintiffs allege that McAfee's false reference price scheme violates California's and New York's unfair competition and false advertising laws.

## B.    Successes

1.    ***Kline v. The Progressive Corporation***, Circuit No. 02-L-6 (Circuit Court of the First Judicial Circuit, Johnson County, Illinois).  Lieff Cabraser served as settlement class counsel in a nationwide consumer class action challenging Progressive Corporation's private passenger automobile insurance sales practices.  Plaintiffs alleged that the Progressive Corporation wrongfully concealed from class members the availability of lower priced insurance for which they qualified.  In 2002, the Court approved a settlement valued at approximately $450 million, which included both cash and equitable relief.  The claims program, implemented upon a nationwide mail and publication notice program, was completed in 2003.

2.    ***Catholic Healthcare West Cases***, JCCP No. 4453 (Cal. Supr. Ct.).  Plaintiff alleged that Catholic Healthcare West ("CHW") charged uninsured patients excessive fees for treatment and services, at rates far higher than the rates charged to patients with private insurance or on Medicare.  In January 2007, the Court approved a settlement that provides discounts, refunds and other benefits for CHW patients valued at $423 million.  The settlement requires that CHW lower its charges and end price discrimination against all uninsured patients, maintain generous charity case policies allowing low-income and uninsured patients to receive free or heavily discounted care, and protect uninsured patients from unfair collections practices.  Lieff Cabraser served as Lead Counsel in the coordinated action.

3.    ***Sutter Health Uninsured Pricing Cases***, JCCP No. 4388 (Cal. Supr. Ct.).  Plaintiffs alleged that they and a Class of uninsured patients treated at Sutter hospitals were charged substantially more than patients with private or public insurance, and many times above the cost of providing their treatment.  In December 2006, the Court granted final approval to a comprehensive and groundbreaking settlement of the action.  As part of the settlement, Class members were entitled to make a claim for refunds or deductions of between 25% to 45% from their prior hospital bills, at an estimated total value of $276 million.  For a three year period, Sutter agreed to provide discounted pricing policies for uninsureds.  In addition, Sutter agreed to maintain more compassionate collections policies that

will protect uninsureds who fall behind in their payments.  Lieff Cabraser served as Lead Counsel in the coordinated action.

4.  ***Citigroup Loan Cases***, JCCP No. 4197 (San Francisco Supr. Ct., Cal.). In 2003, the Court approved a settlement that provided approximately $240 million in relief to former Associates' customers across America. Prior to its acquisition in November 2000, Associates First Financial, referred to as The Associates, was one of the nation's largest "subprime" lenders.  Lieff Cabraser represented former customers of The Associates charging that the company added unwanted and unnecessary insurance products onto mortgage loans and engaged in improper loan refinancing practices.  Lieff Cabraser served as nationwide Plaintiffs' Co-Liaison Counsel.

5.  ***Thompson v. WFS Financial.***, No. 3-02-0570 (M.D. Tenn.); ***Pakeman v. American Honda Finance Corporation***, No. 3-02-0490 (M.D. Tenn.); ***Herra v. Toyota Motor Credit Corporation***, No. CGC 03-419 230 (San Francisco Supr. Ct.).  Lieff Cabraser with co-counsel litigated against several of the largest automobile finance companies in the country to compensate victims of—and stop future instances of—racial discrimination in the setting of interest rates in automobile finance contracts.  The litigation led to substantial changes in the way Toyota Motor Credit Corporation ("TMCC"), American Honda Finance Corporation ("American Honda") and WFS Financial, Inc. sell automobile finance contracts, limiting the discrimination that can occur.

In approving the settlement in *Thompson v. WFS Financial*, the Court recognized the "innovative" and "remarkable settlement" achieved on behalf of the nationwide class.  In 2006 in *Herra v. Toyota Motor Credit Corporation*, the Court granted final approval to a nationwide class action settlement on behalf of all African-American and Hispanic customers of TMCC who entered into retail installment contracts that were assigned to TMCC from 1999 to 2006.  The monetary benefit to the class was estimated to be between $159-$174 million.

6.  ***In re John Muir Uninsured Healthcare Cases***, JCCP No. 4494 (Cal. Supr. Ct.).  Lieff Cabraser represented nearly 53,000 uninsured patients who received care at John Muir hospitals and outpatient centers and were charged inflated prices and then subject to overly aggressive collection practices when they failed to pay.  In November 2008, the Court approved a final settlement of the *John Muir* litigation.  John Muir agreed to provide refunds or bill adjustments of 40-50% to uninsured patients that received medical care at John Muir over a six year period, bringing their charges to the level of patients with private insurance, at a value of $115 million.  No claims were required.  Every class member received a refund or bill adjustment.  Furthermore, John Muir was

required to (1) maintain charity care policies to give substantial discounts—up to 100%—to low income, uninsured patients who meet certain income requirements; (2) maintain an Uninsured Patient Discount Policy to give discounts to all uninsured patients, regardless of income, so that they pay rates no greater than those paid by patients with private insurance; (3) enhance communications to uninsured patients so they are better advised about John Muir's pricing discounts, financial assistance, and financial counseling services; and (4) limit the practices for collecting payments from uninsured patients.

7. ***Providian Credit Card Cases***, JCCP No. 4085 (San Francisco Supr. Ct.).  Lieff Cabraser served as Co-Lead Counsel for a certified national Settlement Class of Providian credit cardholders who alleged that Providian had engaged in widespread misconduct by charging cardholders unlawful, excessive interest and late charges, and by promoting and selling to cardholders "add-on products" promising illusory benefits and services.  In November 2001, the Court granted final approval to a $105 million settlement of the case, which also required Providian to implement substantial changes in its business practices.  The $105 million settlement, combined with an earlier settlement by Providian with Federal and state agencies, represents the largest settlement ever by a U.S. credit card company in a consumer protection case.

8. ***In re Chase Bank USA, N.A. "Check Loan" Contract Litigation***, MDL No. 2032 (N.D. Cal.).  Lieff Cabraser served as Plaintiffs' Liaison Counsel and on the Plaintiffs' Executive Committee in Multi-District Litigation ("MDL") charging that Chase Bank violated the implied covenant of good faith and fair dealing by unilaterally modifying the terms of fixed rate loans.  The MDL was established in 2009 to coordinate more than two dozen cases that were filed in the wake of the conduct at issue.  The nationwide, certified class consisted of more than 1 million Chase cardholders who, in 2008 and 2009, had their monthly minimum payment requirements unilaterally increased by Chase by more than 150%.  Plaintiffs alleged that Chase made this change, in part, to induce cardholders to give up their promised fixed APRs in order to avoid the unprecedented minimum payment hike.  In November 2012, the Court approved a $100 million settlement of the case.

9. ***In re Synthroid Marketing Litigation***, MDL No. 1182 (N.D. Ill.). Lieff Cabraser served as Co-Lead Counsel for the purchasers of the thyroid medication Synthroid in litigation against Knoll Pharmaceutical, the manufacturer of Synthroid.  The lawsuits charged that Knoll misled physicians and patients into keeping patients on Synthroid despite knowing that less costly, but equally effective drugs, were available.  In 2000, the District Court gave final approval to a $87.4 million settlement

- 46 -

with Knoll and its parent company, BASF Corporation, on behalf of a class of all consumers who purchased Synthroid at any time from 1990 to 1999. In 2001, the Court of Appeals upheld the order approving the settlement and remanded the case for further proceedings. 264 F.3d 712 (7th Cir. 2001). The settlement proceeds were distributed in 2003.

10. ***R.M. Galicia v. Franklin; Franklin v. Scripps Health***, No. IC 859468 (San Diego Supr. Ct., Cal.). Lieff Cabraser served as Lead Class Counsel in a certified class action lawsuit on behalf of 60,750 uninsured patients who alleged that the Scripps Health hospital system imposed excessive fees and charges for medical treatment. The class action originated in July 2006, when uninsured patient Phillip Franklin filed a class action cross-complaint against Scripps Health after Scripps sued Mr. Franklin through a collection agency. Mr. Franklin alleged that he, like all other uninsured patients of Scripps Health, was charged unreasonable and unconscionable rates for his medical treatment. In June 2008, the Court granted final approval to a settlement of the action which includes refunds or discounts of 35% off of medical bills, collectively worth $73 million. The settlement also required Scripps Health to modify its pricing and collections practices by (1) following an Uninsured Patient Discount Policy, which includes automatic discounts from billed charges for Hospital Services; (2) following a Charity Care Policy, which provides uninsured patients who meet certain income tests with discounts on Health Services up to 100% free care, and provides for charity discounts under other special circumstances; (3) informing uninsured patients about the availability and terms of the above financial assistance policies; and (4) restricting certain collections practices and actively monitoring outside collection agents.

11. ***In re Lawn Mower Engine Horsepower Marketing and Sales Practices Litigation***, MDL No. 1999 (E.D. Wi.). Lieff Cabraser served as co-counsel for consumers that alleged manufacturers of certain gasoline-powered lawn mowers misrepresented, and significantly overstated, the horsepower of the product. As the price for lawn mowers is linked to the horsepower of the engine -- the higher the horsepower, the more expensive the lawn mower -- defendants' alleged misconduct caused consumers to purchase expensive lawn mowers that provided lower horsepower than advertised. In August 2010, the Court approved a $65 million settlement of the action.

12. ***Strugano v. Nextel Communications***, No. BC 288359 (Los Angeles Supr. Crt). In May 2006, the Los Angeles Superior Court granted final approval to a class action settlement on behalf of all California customers of Nextel from January 1, 1999 through December 31, 2002, for compensation for the harm caused by Nextel's alleged unilateral (1) addition of a $1.15 monthly service fee and/or (2) change from second-

by-second billing to minute-by-minute billing, which caused "overage" charges (*i.e.*, for exceeding their allotted cellular plan minutes).  The total benefit conferred by the Settlement directly to Class Members was between approximately $13.5 million and $55.5 million, depending on which benefit Class Members selected.

13.     ***Curry v. Fairbanks Capital Corporation***, No. 03-10895-DPW (D. Mass.).  In 2004, the Court approved a $55 million settlement of a class action lawsuit against Fairbanks Capital Corporation arising out of charges against Fairbanks of misconduct in servicing its customers' mortgage loans.  The settlement also required substantial changes in Fairbanks' business practices and established a default resolution program to limit the imposition of fees and foreclosure proceedings against Fairbanks' customers.  Lieff Cabraser served as nationwide Co-Lead Counsel for the homeowners.

14.     ***Payment Protection Credit Card Litigation.***  Lieff Cabraser represented consumers in litigation in federal court against some of the nation's largest credit card issuers, challenging the imposition of charges for so-called "payment protection" or "credit protection" programs.  The complaints charged that the credit card companies imposed payment protection without the consent of the consumer and/or deceptively marketed the service, and further that the credit card companies unfairly administered their payment protection programs to the detriment of consumers.  In 2012 and 2013, the Courts approved monetary settlements with HSBC ($23.5 million), Bank of America ($20 million), and Discover ($10 million) that also required changes in the marketing and sale of payment protection to consumers.

15.     ***California Title Insurance Industry Litigation.***  Lieff Cabraser, in coordination with parallel litigation brought by the Attorney General, reached settlements in 2003 and 2004 with the leading title insurance companies in California, resulting in historic industry-wide changes to the practice of providing escrow services in real estate closings.  The settlements brought a total of $50 million in restitution to California consumers, including cash payments.  In the lawsuits, plaintiffs alleged, among other things, that the title companies received interest payments on customer escrow funds that were never reimbursed to their customers.  The defendant companies include Lawyers' Title, Commonwealth Land Title, Stewart Title of California, First American Title, Fidelity National Title, and Chicago Title.

16.     ***Vytorin/Zetia Marketing, Sales Practices & Products Liability Litigation***, MDL No. 1938 (D. N.J.).  Lieff Cabraser served on the Executive Committee of the Plaintiffs' Steering Committee representing plaintiffs alleging that Merck/Schering-Plough Pharmaceuticals falsely

marketed anti-cholesterol drugs Vytorin and Zetia as being more effective than other anti-cholesterol drugs. Plaintiffs further alleged that Merck/Schering-Plough Pharmaceuticals sold Vytorin and Zetia at higher prices than other anti-cholesterol medication when they were no more effective than other drugs. In 2010, the Court approved a $41.5 million settlement for consumers who bought Vytorin or Zetia between November 2002 and February 2010.

17.   ***Morris v. AT&T Wireless Services***, No. C-04-1997-MJP (W.D. Wash.).  Lieff Cabraser served as class counsel for a nationwide settlement class of cell phone customers subjected to an end-of-billing cycle cancellation policy implemented by AT&T Wireless in 2003 and alleged to have breached customers' service agreements.  In May 2006, the New Jersey Superior Court granted final approval to a class settlement that guarantees delivery to the class of $40 million in benefits.  Class members received cash-equivalent calling cards automatically, and had the option of redeeming them for cash.  Lieff Cabraser had been prosecuting the class claims in the Western District of Washington when a settlement in New Jersey state court was announced.  Lieff Cabraser objected to that settlement as inadequate because it would have only provided $1.5 million in benefits without a cash option, and the court agreed, declining to approve it.  Thereafter, Lieff Cabraser negotiated the new settlement providing $40 million to the class, and the settlement was approved.

18.   ***Berger v. Property I.D. Corporation***, No.  CV 05-5373-GHK (C.D. Cal.).  In January 2009, the Court granted final approval to a $39.4 million settlement with several of the nation's largest real estate brokerages, including companies doing business as Coldwell Banker, Century 21, and ERA Real Estate, and California franchisors for RE/MAX and Prudential California Realty, in an action under the Real Estate Settlement Procedures Act on behalf of California home sellers. Plaintiffs charged that the brokers and Property I.D. Corporation set up straw companies as a way to disguise kickbacks for referring their California clients' natural hazard disclosure report business to Property I.D. (the report is required to sell a home in California). Under the settlement, hundreds of thousands of California home sellers were eligible to receive a full refund of the cost of their report, typically about $100.

19.   ***In re Tri-State Crematory Litigation***, MDL No. 1467 (N.D. Ga.).  In March 2004, Lieff Cabraser delivered opening statements and began testimony in a class action by families whose loved ones were improperly cremated and desecrated by Tri-State Crematory in Noble, Georgia.  The families also asserted claims against the funeral homes that delivered the decedents to Tri-State Crematory for failing to ensure that the crematory performed cremations in the manner required under the law and by

human decency.  One week into trial, settlements with the remaining funeral home defendants were reached and brought the settlement total to approximately $37 million.  Trial on the class members' claims against the operators of crematory began in August 2004.  Soon thereafter, these defendants entered into a $80 million settlement with plaintiffs.  As part of the settlement, all buildings on the Tri-State property were razed.  The property will remain in a trust so that it will be preserved in peace and dignity as a secluded memorial to those whose remains were mistreated, and to prevent crematory operations or other inappropriate activities from ever taking place there.  Earlier in the litigation, the Court granted plaintiffs' motion for class certification in a published order.  215 F.R.D. 660 (2003).

20.  ***In re American Family Enterprises***, MDL No. 1235 (D. N.J.).  Lieff Cabraser served as Co-Lead Counsel for a nationwide class of persons who received any sweepstakes materials sent under the name "American Family Publishers."  The class action lawsuit alleged that defendants deceived consumers into purchasing magazine subscriptions and merchandise in the belief that such purchases were necessary to win an American Family Publishers' sweepstakes prize or enhanced their chances of winning a sweepstakes prize.  In September 2000, the Court granted final approval of a $33 million settlement of the class action.  In April 2001, over 63,000 class members received refunds averaging over $500 each, representing 92% of their eligible purchases.  In addition, American Family Publishers agreed to make significant changes to the way it conducts the sweepstakes.

21.  ***Walsh v. Kindred Healthcare Inc.***, No. 3:11-cv-00050 (N.D. Cal.).  Lieff Cabraser and co-counsel represented a class of 54,000 current and former residents, and families of residents, of skilled nursing care facilities in a class action against Kindred Healthcare for failing to adequately staff its nursing facilities in California.  Since January 1, 2000, skilled nursing facilities in California have been required to provide at least 3.2 hours of direct nursing hours per patient day (NHPPD), which represented the minimum staffing required for patients at skilled nursing facilities.

The complaint alleged a pervasive and intentional failure by Kindred Healthcare to comply with California's required minimum standard for qualified nurse staffing at its facilities. Understaffing is uniformly viewed as one of the primary causes of the inadequate care and often unsafe conditions in skilled nursing facilities. Studies have repeatedly shown a direct correlation between inadequate skilled nursing care and serious health problems, including a greater likelihood of falls, pressure sores, significant weight loss, incontinence, and premature death.  The complaint further charged that Kindred Healthcare collected millions of

dollars in payments from residents and their family members, under the false pretense that it was in compliance with California staffing laws and would continue to do so.

In December 2013, the Court approved a $8.25 million settlement which included cash payments to class members and an injunction requiring Kindred Healthcare to consistently utilize staffing practices which would ensure they complied with applicable California law.  The injunction, subject to a third party monitor, was valued at between $6 to $20 million.

22.  ***Cincotta v. California Emergency Physicians Medical Group,*** No. 07359096 (Cal. Supr. Ct.).  Lieff Cabraser served as class counsel for nearly 100,000 uninsured patients that alleged they were charged excessive and unfair rates for emergency room service across 55 hospitals throughout California.  The settlement, approved on October 31, 2008, provided complete debt elimination, 100% cancellation of the bill, to uninsured patients treated by California Emergency Physicians Medical Group during the 4-year class period.  These benefits were valued at $27 million.  No claims were required, so all of these bills were cancelled.  In addition, the settlement required California Emergency Physicians Medical Group prospectively to (1) maintain certain discount policies for all charity care patients; (2) inform patients of the available discounts by enhanced communications; and (3) limit significantly the type of collections practices available for collecting from charity care patients.

23.  ***In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation***, MDL No. 1715.  Lieff Cabraser served as Co-Lead Counsel for borrowers who alleged that Ameriquest engaged in a predatory lending scheme based on the sale of loans with illegal and undisclosed fees and terms.  In August 2010, the Court approved a $22 million settlement.

24.  ***Yarrington v. Solvay Pharmaceuticals***, No. 09-CV-2261 (D. Minn.).  In March 2010, the Court granted final approval to a $16.5 million settlement with Solvay Pharmaceuticals, one of the country's leading pharmaceutical companies.  Lieff Cabraser served as Co-Lead Counsel, representing a class of persons who purchased Estratest—a hormone replacement drug.  The class action lawsuit alleged that Solvay deceptively marketed and advertised Estratest as an FDA-approved drug when in fact Estratest was not FDA-approved for any use.  Under the settlement, consumers obtained partial refunds for up to 30% of the purchase price paid of Estratest.  In addition, $8.9 million of the settlement was allocated to fund programs and activities devoted to promoting women's health and well-being at health organizations, medical schools, and charities throughout the nation.

25.  ***Reverse Mortgage Cases***, JCCP No. 4061 (San Mateo County Supr. Ct., Cal.).  Transamerica Corporation, through its subsidiary

Transamerica Homefirst, Inc., sold "reverse mortgages" marketed under the trade name "Lifetime."  The Lifetime reverse mortgages were sold exclusively to seniors, *i.e.*, persons 65 years or older.  Lieff Cabraser, with co-counsel, filed suit on behalf of seniors alleging that the terms of the reverse mortgages were unfair, and that borrowers were misled as to the loan terms, including the existence and amount of certain charges and fees.  In 2003, the Court granted final approval to an $8 million settlement of the action.

26.     ***Brazil v. Dell***, No. C-07-01700 RMW (N.D. Cal.).  Lieff Cabraser served as Class Counsel representing a certified class of online consumers in California who purchased certain Dell computers based on the advertisement of an instant-off (or "slash-through") discount.  The complaint challenged Dell's pervasive use of "slash-through" reference prices in its online marketing.  Plaintiffs alleged that these "slash-through" reference prices were interpreted by consumers as representing Dell's former or regular sales prices, and that such reference prices (and corresponding representations of "savings") were false because Dell rarely, if ever, sold its products at such prices.  In October 2011, the Court approved a settlement that provided a $50 payment to each class member who submitted a timely and valid claim.  In addition, in response to the lawsuit, Dell changed its methodology for consumer online advertising, eliminating the use of "slash-through" references prices.

27.     ***Hepting v. AT&T Corp***., Case No. C-06-0672-VRW (N.D. Cal.).  Plaintiffs alleged that AT&T collaborated with the National Security Agency in a massive warrantless surveillance program that illegally tracked the domestic and foreign communications and communications records of millions of Americans in violation of the U.S. Constitution, Electronic Communications Privacy Act, and other statutes.  The case was filed on January 2006.  The U.S. government quickly intervened and sought dismissal of the case.  By the Spring of 2006, over 50 other lawsuits were filed against various telecommunications companies, in response to a *USA Today* article confirming the surveillance of communications and communications records.  The cases were combined into a multi-district litigation proceeding entitled *In re National Security Agency Telecommunications Record Litigation*, MDL No. 06-1791.  In June of 2006, the District Court rejected both the government's attempt to dismiss the case on the grounds of the state secret privilege and AT&T's arguments in favor of dismissal.  The government and AT&T appealed the decision and the U.S. Court of Appeals for the Ninth Circuit heard argument one year later.  No decision was issued.  In July 2008, Congress granted the government and AT&T "retroactive immunity" for liability for their wiretapping program under amendments to the Foreign Intelligence Surveillance Act that were drafted in response to this litigation.  Signed into law by President Bush in 2008, the amendments effectively

terminated the litigation.  Lieff Cabraser played a leading role in the litigation working closely with co-counsel from the Electronic Frontier Foundation.

## V.  Economic Injury Product Defects

### A.  Current Cases

1.  ***Front-Loading Washer Products Liability Litigation***.  Lieff Cabraser represents consumers in multiple states who have filed separate class action lawsuits against Whirlpool, Sears and LG Corporations.  The complaints charge that certain front-loading automatic washers manufactured by these companies are defectively designed and that the design defects create foul odors from mold and mildew that permeate washing machines and customers' homes.  Many class members have spent money for repairs and on other purported remedies.  As the complaints allege, none of these remedies eliminates the problem.

2.  ***In Re General Motors LLC Ignition Switch Litigation***, 14-MD-2543 (JMF); 14-MC-2434 (JMF).  Lieff Cabraser serves as Temporary Co-Lead Plaintiffs Counsel in the class action lawsuits in federal court brought by consumers who purchased or leased a 2005-2010 Chevrolet Cobalt, 2006-2011 Chevrolet HHR, 2006-2010 Pontiac Solstice, 2003-2007 Saturn Ion, 2007-2010 Saturn Sky, 2005-2010 Pontiac G5, or any other GM vehicle containing the same ignition switch as in these cars.  The complaints allege that the ignition switches in these vehicles share a common, uniform, and defective design.  Without warning, the defect can cause the car's engine and electrical system to shut off, disabling the air bags.  As a result, these cars are of a lesser quality than GM represented, and class members overpaid for the cars.  Furthermore, GM's public disclosure of the ignition switch defect has further caused the value of these cars to materially diminish.  The complaints seek monetary relief for the diminished value of the class members' cars.

3.  ***Honda Window Defective Window Litigation.***  Case No. 2:21-cv-01142-SVW-PLA (C.D. CA).  Lieff Cabraser represents consumers in a class action lawsuit filed against Honda Motor Company, Inc. for manufacturing and selling vehicles with allegedly defective window regulator mechanisms. Windows in these vehicles allegedly can, without warning, drop into the door frame and break or become permanently stuck in the fully-open position.

The experience of one Honda Element owner, as set forth in the complaint, exemplifies the problem: The driver's side window in his vehicle slid down suddenly while he was driving on a smooth road. A few months later, the window on the passenger side of the vehicle also slid down into the door and would not move back up.  The owner incurred

more than $300 in repair costs, which Honda refused to pay for.  Discovery in the action is ongoing.

4.  ***In re Chinese-Manufactured Drywall Products Liability Litigation***, No. 10-30568 (E.D. La.).  Lieff Cabraser with co-counsel represents a proposed class of builders who suffered economic losses as a result of the presence of Chinese-manufactured drywall in homes and other buildings they constructed.  From 2005 to 2008, hundreds-of-millions of square feet of gypsum wallboard manufactured in China were exported to the U.S., primarily to the Gulf Coast states, and installed in newly-constructed and reconstructed properties. After installation of this drywall, owners and occupants of the properties began noticing unusual odors, blackening of silver and copper items and components, and the failure of appliances, including microwaves, refrigerators, and air-conditioning units. Some residents of the affected homes also experienced health problems, such as skin and eye irritation, respiratory issues, and headaches.

Lieff Cabraser's client, Mitchell Company, Inc., was the first to perfect service on Chinese defendant Taishan Gypsum Co. Ltd. ("TG"), and thereafter secured a default judgment against TG.  Lieff Cabraser participated in briefing that led to the district court's denial of TG's motion to the dismiss the class action complaint for lack of personal jurisdiction.  On May 21, 2014, the U.S. Court of Appeals for the Fifth Court affirmed a district court's default judgment against TG, finding that the district court had jurisdiction based on the company and its agent's ties with state distributors.

5.  ***McGuire v. BMW of North America***, No. 2:13-cv-07356 (D.N.J.).  With co-counsel, Lieff Cabraser represents the plaintiff in a class action lawsuit filed on behalf of all persons in the U.S. who own or lease a BMW vehicle equipped with BMW's Advanced Real-Time Traffic Information ("ARTTI") navigation system.  BMW markets ARTTI as providing reliable, accurate, and real-time traffic information, and that ARTTI will notify drivers of traffic congestion and accidents along their routes and automatically offer a new route to avoid the traffic incident.  The complaint alleges that ARTTI is defective in that it fails to display local real-time traffic information for the area, and fails to automatically re-route ARTTI-equipped vehicles to avoid traffic incidents along the vehicle's intended route.  The complaint further alleges that BMW was area of the defects in ARTII prior to marketing and selling vehicles equipped with the navigation system, and BMW has failed to repair or remedy the defect for plaintiff and class members who brought their vehicle to authorized BMW services centers to address the ARTTI defect.

### B.    Successes

1.    ***In re Mercedes-Benz Tele-Aid Contract Litigation***, MDL No. 1914
(D. N.J.).  Lieff Cabraser represented owners and lessees of Mercedes-
Benz cars and SUVs equipped with the Tele-Aid system, an emergency
response system which links subscribers to road-side assistance operators
by using a combination of global positioning and cellular technology.  In
2002, the Federal Communications Commission issued a rule, effective
2008, eliminating the requirement that wireless phone carriers provide
analog-based networks.  The Tele-Aid system offered by Mercedes-Benz
relied on analog signals.  Plaintiffs charged that Mercedes-Benz
committed fraud in promoting and selling the Tele-Aid system without
disclosing to buyers of certain model years that the Tele-Aid system as
installed would become obsolete in 2008.

In an April 2009 published order, the Court certified a nationwide class of
all persons or entities in the U.S. who purchased or leased a Mercedes-
Benz vehicle equipped with an analog-only Tele Aid system after
August 8, 2002, and (1) subscribed to Tele Aid service until being
informed that such service would be discontinued at the end of 2007, or
(2) purchased an upgrade to digital equipment.   In September 2011, the
Court approved a settlement that provided class members between a $650
check or a $750 to $1,300 certificate toward the purchase or lease of new
Mercedes-Benz vehicle, depending upon whether or not they paid for an
upgrade of the analog Tele Aid system and whether they still owned their
vehicle.   In approving the settlement, U.S. District Court Judge Dickinson
R. Debevoise stated,  "I want to thank counsel for the . . . very effective
and good work . . . .   It was carried out with vigor, integrity and
aggressiveness with never going beyond the maxims of the Court."

2.    ***McLennan v. LG Electronics USA***, No. 2:10-cv-03604 (D.
N.J.).  Lieff Cabraser represented consumers that alleged several LG
refrigerator models had a faulty design that caused the interior lights to
remain on even when the refrigerator doors were closed (identified as the
"light issue"), resulting in overheating and food spoilage. In March 2012,
the Court granted final approval to a settlement of the nationwide class
action lawsuit.  The settlement provides that LG reimburse class members
for all out-of-pocket costs (parts and labor) to repair the light issue prior
to the mailing of the class notice and extends the warranty with respect to
the light issue for 10 years from the date of the original retail purchase of
the refrigerator.  The extended warranty covers in-home refrigerator
repair performed by LG and, in some cases, the cost of a replacement
refrigerator.  In approving the settlement, U.S. District Court Judge
William J. Martini stated, "The Settlement in this case provides for both
the complete reimbursement of out-of-pocket expenses for repairs fixing
the Light Issue, as well as a warranty for ten years from the date of

refrigerator purchase. It would be hard to imagine a better recovery for the Class had the litigation gone to trial. Because Class members will essentially receive all of the relief to which they would have been entitled after a successful trial, this factor weighs heavily in favor of settlement."

3. ***Grays Harbor Adventist Christian School v. Carrier Corporation***, No. 05-05437 (W.D. Wash.).  In April 2008, the Court approved a nationwide settlement for current and past owners of high-efficiency furnaces manufactured and sold by Carrier Corporation and equipped with polypropylene-laminated condensing heat exchangers ("CHXs").  Carrier sold the furnaces under the Carrier, Bryant, Day & Night and Payne brand-names.  Plaintiffs alleged that starting in 1989 Carrier began manufacturing and selling high efficiency condensing furnaces manufactured with a secondary CHX made of inferior materials.  Plaintiffs alleged that as a result, the CHXs, which Carrier warranted and consumers expected to last for 20 years, failed prematurely.  The settlement provides an enhanced 20-year warranty of free service and free parts for consumers whose furnaces have not yet failed.  The settlement also offers a cash reimbursement for consumers who already paid to repair or replace the CHX in their high-efficiency Carrier furnaces.

An estimated three million or more consumers in the U.S. and Canada purchased the furnaces covered under the settlement.  Plaintiffs valued the settlement to consumers at over $300 million based upon the combined value of the cash reimbursement and the estimated cost of an enhanced warranty of this nature.

4. ***Carideo v. Dell***, No. C06-1772 JLR (W.D. Wash.).  Lieff Cabraser represented consumers who owned Dell Inspiron notebook computer model numbers 1150, 5100, or 5160.  The class action lawsuit complaint charged that the notebooks suffered premature failure of their cooling system, power supply system, and/or motherboards.  In December 2010, the Court approved a settlement which provided class members that paid Dell for certain repairs to their Inspiron notebook computer a reimbursement of all or a portion of the cost of the repairs.

5. ***Cartwright v. Viking Industries***, No. 2:07-cv-2159 FCD (E.D. Cal.)  Lieff Cabraser represented California homeowners in a class action lawsuit which alleged that over one million Series 3000 windows produced and distributed by Viking between 1989 and 1999 were defective.  The plaintiffs charged that the windows were not watertight and allowed for water to penetrate the surrounding sheetrock, drywall, paint or wallpaper.  Under the terms of a settlement approved by the Court in August 2010, all class members who submitted valid claims were entitled to receive as much as $500 per affected property.

6.    ***Pelletz v. Advanced Environmental Recycling Technologies***
(W.D. Wash.).  Lieff Cabraser served as Co-Lead Counsel in a case alleging
that ChoiceDek decking materials, manufactured by AERT, developed
persistent and untreatable mold spotting throughout their surface.  In a
published opinion in January 2009, the Court approved a settlement that
provided affected consumers with free and discounted deck treatments,
mold inhibitor applications, and product replacement and
reimbursement.

7.    ***Create-A-Card v. Intuit***, No. C07-6452 WHA (N.D. Cal.).  Lieff
Cabraser, with co-counsel, represented business users of QuickBooks Pro
for accounting that lost their QuickBooks data and other files due to faulty
software code sent by Intuit, the producer of QuickBooks.  In September
2009, the Court granted final approval to a settlement that provided all
class members who filed a valid claim with a free software upgrade and
compensation for certain data-recovery costs.  Commenting on the
settlement and the work of Lieff Cabraser on September 17, 2009, U.S.
District Court Judge William H. Alsup stated, "I want to come back to
something that I observed in this case firsthand for a long time now.  I
think you've done an excellent job in the case as class counsel and the
class has been well represented having you and your firm in the case."

8.    ***Weekend Warrior Trailer Cases***, JCCP No. 4455 (Cal. Supr. Ct.).
Lieff Cabraser, with co-counsel, represented owners of Weekend Warrior
trailers manufactured between 1998 and 2006 that were equipped with
frames manufactured, assembled, or supplied by Zieman Manufacturing
Company.  The trailers, commonly referred to as "toy haulers," were used
to transport outdoor recreational equipment such as motorcycles and all-
terrain vehicles.  Plaintiffs charged that Weekend Warrior and Zieman
knew of design and performance problems, including bent frames,
detached siding, and warped forward cargo areas, with the trailers, and
concealed the defects from consumers.  In February 2008, the Court
approved a $5.5 million settlement of the action that provided for the
repair and/or reimbursement of the trailers.  In approving the settlement,
California Superior Court Judge Thierry P. Colaw stated that class counsel
were "some of the best" and "there was an overwhelming positive reaction
to the settlement" among class members.

9.    ***Lundell v. Dell***, No. C05-03970 (N.D. Cal.).  Lieff Cabraser served as
Lead Class Counsel for consumers who experienced power problems with
the Dell Inspiron 5150 notebook.  In December 2006, the Court granted
final approval to a settlement of the class action which extended the one-
year limited warranty on the notebook for a set of repairs related to the
power system.  In addition, class members that paid Dell or a third party
for repair of the power system of their notebook were entitled to a 100%
cash refund from Dell.

10. ***Kan v. Toshiba American Information Systems***, No. BC327273 (Los Angeles Super. Ct.).  Lieff Cabraser served as Co-Lead Counsel for a class of all end-user persons or entities who purchased or otherwise acquired in the United States, for their own use and not for resale, a new Toshiba Satellite Pro 6100 Series notebook.  Consumers alleged a series of defects were present in the notebook.  In 2006, the Court approved a settlement that extended the warranty for all Satellite Pro 6100 notebooks, provided cash compensation for certain repairs, and reimbursed class members for certain out-of-warranty repair expenses.

11. ***Foothill/DeAnza Community College District v. Northwest Pipe Company***, No. C-00-20749 (N.D. Cal.).  In June 2004, the court approved the creation of a settlement fund of up to $14.5 million for property owners nationwide with Poz-Lok fire sprinkler piping that fails.  Since 1990, Poz-Lok pipes and pipe fittings were sold in the U.S. as part of fire suppression systems for use in residential and commercial buildings.  After leaks in Poz-Lok pipes caused damage to its DeAnza Campus Center building, Foothill/DeAnza Community College District in California retained Lieff Cabraser to file a class action lawsuit against the manufacturers of Poz-Lok.  The college district charged that Poz-Lok pipe had manufacturing and design defects that resulted in the premature corrosion and failure of the product.  Under the settlement, owners whose Poz-Lok pipes are leaking today, or over the next 15 years, may file a claim for compensation.

12. ***Toshiba Laptop Screen Flicker Settlement.***  Lieff Cabraser negotiated a settlement with Toshiba America Information Systems, Inc. ("TAIS") to provide relief for owners of certain Toshiba Satellite 1800 Series, Satellite Pro 4600 and Tecra 8100 personal notebook computers whose screens flickered, dimmed or went blank due to an issue with the FL Inverter Board component.  In 2004 under the terms of the Settlement, owners of affected computers who paid to have the FL Inverter issue repaired by either TAIS or an authorized TAIS service provider recovered the cost of that repair, up to $300 for the Satellite 1800 Series and the Satellite Pro 4600 personal computers, or $400 for the Tecra 8100 personal computers.  TAIS also agreed to extend the affected computers' warranties for the FL Inverter issue by 18 months.

13. ***McManus v. Fleetwood Enterprises, Inc.***, No. SA-99-CA-464-FB (W.D. Tex.).  Lieff Cabraser served as Class Counsel on behalf of original owners of 1994-2000 model year Fleetwood Class A and Class C motor homes.  In 2003, the Court approved a settlement that resolved lawsuits pending in Texas and California about braking while towing with 1994 Fleetwood Class A and Class C motor homes.  The lawsuits alleged that Fleetwood misrepresented the towing capabilities of new motor homes it sold, and claimed that Fleetwood should have told buyers that a

supplemental braking system is needed to stop safely while towing heavy items, such as a vehicle or trailer.  The settlement paid $250 to people who bought a supplemental braking system for Fleetwood motor homes that they bought new.

14.  ***Richison v. American Cemwood Corp.***, No. 005532 (San Joaquin Supr. Ct., Cal.).  Lieff Cabraser served as Co-Lead Class Counsel for an estimated nationwide class of 30,000 owners of homes and other structures on which defective Cemwood Shakes were installed.  In November 2003, the Court granted final approval to a $75 million Phase 2 settlement in the American Cemwood roofing shakes national class action litigation.  This amount was in addition to a $65 million partial settlement approved by the Court in May 2000, and brought the litigation to a conclusion.

15.  ***ABS Pipe Litigation***, JCCP No. 3126 (Contra Costa County Supr. Ct., Cal.).  Lieff Cabraser served as Lead Class Counsel on behalf of property owners whose ABS plumbing pipe was allegedly defective and caused property damage by leaking.  Six separate class actions were filed in California against five different ABS pipe manufacturers, numerous developers of homes containing the ABS pipe, as well as the resin supplier and the entity charged with ensuring the integrity of the product.  Between 1998 and 2001, we achieved 12 separate settlements in the class actions and related individual lawsuits for approximately $78 million.

Commenting on the work of Lieff Cabraser and co-counsel in the case, California Superior Court (now appellate) Judge Mark B. Simons stated on May 14, 1998: "The attorneys who were involved in the resolution of the case certainly entered the case with impressive reputations and did nothing in the course of their work on this case to diminish these reputations, but underlined, in my opinion, how well deserved those reputations are."

16.  ***Williams v. Weyerhaeuser***, No. 995787 (San Francisco Supr. Ct.).  Lieff Cabraser served as Class Counsel on behalf of a nationwide class of hundreds of thousands or millions of owners of homes and other structures with defective Weyerhaeuser hardboard siding.  A California-wide class was certified for all purposes in February 1999, and withstood writ review by both the California Court of Appeal and Supreme Court of California.  In 2000, the Court granted final approval to a nationwide settlement of the case which provides class members with compensation for their damaged siding, based on the cost of replacing or, in some instances, repairing, damaged siding.  The settlement has no cap, and requires Weyerhaeuser to pay all timely, qualified claims over a nine year period.  The claims program is underway and paying claims.

17.     ***Naef v. Masonite***, No. CV-94-4033 (Mobile County Circuit Ct., Ala.).
Lieff Cabraser served as Co-Lead Class Counsel on behalf of a nationwide
Class of an estimated 4 million homeowners with allegedly defective
hardboard siding manufactured and sold by Masonite Corporation, a
subsidiary of International Paper, installed on their homes. The Court
certified the class in November 1995, and the Alabama Supreme Court
twice denied extraordinary writs seeking to decertify the Class, including
in *Ex Parte Masonite*, 681 So. 2d 1068 (Ala. 1996).  A month-long jury
trial in 1996 established the factual predicate that Masonite hardboard
siding was defective under the laws of most states.  The case settled on the
eve of a second class-wide trial, and in 1998, the Court approved a
settlement.  Under a claims program established by the settlement that
ran through 2008, class members with failing Masonite hardboard siding
installed and incorporated in their property between January 1, 1980 and
January 15, 1998 were entitled to make claims, have their homes
evaluated by independent inspectors, and receive cash payments for
damaged siding.  Combined with settlements involving other alleged
defective home building products sold by Masonite, the total cash paid to
homeowners exceeded $1 billion.

18.     ***In re General Motors Corp. Pick-Up Fuel Tank Products
Liability Litigation***, MDL No. 961 (E.D. Pa.).  Lieff Cabraser served as
court-appointed Co-Lead Counsel representing a class of 4.7 million
plaintiffs who owned 1973-1987 GM C/K pickup trucks with allegedly
defective gas tanks.  The Consolidated Complaint asserted claims under
the Lanham Act, the Magnuson-Moss Act, state consumer protection
statutes, and common law.  In 1995, the Third Circuit vacated the District
Court settlement approval order and remanded the matter to the District
Court for further proceedings.  In July 1996, a new nationwide class
action was certified for purposes of an enhanced settlement program
valued at a minimum of $600 million, plus funding for independent fuel
system safety research projects.  The Court granted final approval of the
settlement in November 1996.

19.     ***In re Louisiana-Pacific Inner-Seal Siding Litigation***, No. C-95-
879-JO (D. Ore.).  Lieff Cabraser served as Co-Lead Class Counsel on
behalf of a nationwide class of homeowners with defective exterior siding
on their homes.  Plaintiffs asserted claims for breach of warranty, fraud,
negligence, and violation of consumer protection statutes.  In 1996, U.S.
District Judge Robert E. Jones entered an Order, Final Judgment and
Decree granting final approval to a nationwide settlement requiring
Louisiana-Pacific to provide funding up to $475 million to pay for
inspection of homes and repair and replacement of failing siding over the
next seven years.

20.     ***In re Intel Pentium Processor Litigation***, No. CV 745729 (Santa Clara Supr. Ct., Cal.).  Lieff Cabraser served as one of two court appointed Co-Lead Class Counsel, and negotiated a settlement, approved by the Court in June 1995, involving both injunctive relief and damages having an economic value of approximately $1 billion.

21.     ***Cox v. Shell***, No. 18,844 (Obion County Chancery Ct., Tenn.).  Lieff Cabraser served as Class Counsel on behalf of a nationwide class of approximately 6 million owners of property equipped with defective polybutylene plumbing systems and yard service lines.  In November 1995, the Court approved a settlement involving an initial commitment by Defendants of $950 million in compensation for past and future expenses incurred as a result of pipe leaks, and to provide replacement pipes to eligible claimants.  The deadline for filing claims expired in 2009.

22.     ***Hanlon v. Chrysler Corp.***, No. C-95-2010-CAL (N.D. Cal.).  In 1995, the district court approved a $200+ million settlement enforcing Chrysler's comprehensive minivan rear latch replacement program, and to correct alleged safety problems with Chrysler's pre-1995 designs.  As part of the settlement, Chrysler agreed to replace the rear latches with redesigned latches.  The settlement was affirmed on appeal by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (1998).

23.     ***Gross v. Mobil***, No. C 95-1237-SI (N.D. Cal.).  Lieff Cabraser served as Plaintiffs' Class Counsel in this nationwide action involving an estimated 2,500 aircraft engine owners whose engines were affected by Mobil AV-1, an aircraft engine oil.  Plaintiffs alleged claims for strict liability, negligence, misrepresentation, violation of consumer protection statutes, and for injunctive relief.  Plaintiffs obtained a preliminary injunction requiring Defendant Mobil Corporation to provide notice to all potential class members of the risks associated with past use of Defendants' aircraft engine oil.  In addition, Plaintiffs negotiated a proposed Settlement, granted final approval by the Court in November 1995, valued at over $12.5 million, under which all Class Members were eligible to participate in an engine inspection and repair program, and receive compensation for past repairs and for the loss of use of their aircraft associated with damage caused by Mobil AV-1.

## VI.    Antitrust/Trade Regulation/Intellectual Property

### A.     Current Cases

1.      ***In re High-Tech Employee Antitrust Litigation***, No. 11 CV 2509 (N.D. Cal.).  Lieff Cabraser serves as Co-Lead Class Counsel in a consolidated class action charging that Adobe Systems Inc., Apple Inc., Google Inc., Intel Corporation, Intuit Inc., Lucasfilm Ltd., and Pixar violated antitrust laws by conspiring to suppress the pay of technical,

creative, and other salaried employees.  The complaint alleges that the conspiracy among defendants restricted recruiting of each other's employees.  On October 24, 2013, U.S. District Court Judge Lucy H. Koh certified a class of approximately 64,000 persons who worked in Defendants' technical, creative, and/or research and development jobs from 2005-2009.

On May 22, 2014, class counsel filed a motion for preliminary approval of a $324.5 million settlement with Apple, Google, Intel, and Adobe.  Should the Court grant preliminary approval of the settlement, the Court will set a date for a hearing on final approval of the settlement and establish a program to provide notice to class members of the settlement and applicable deadlines.  Earlier, on May 16, 2014, the Court granted final approval to settlements valued at $20 million that had been reached in 2013 with Intuit, Lucasfilm, and Pixar.

2.     ***Charles Schwab Bank, N.A. v. Bank of America Corp.***, No. 11 CV 6411 (N.D. Cal.).  Lieff Cabraser serves as counsel for The Charles Schwab Corporation, its affiliates Charles Schwab Bank, N.A., and Charles Schwab & Co., Inc., which manages the investments of the Charles Schwab Bank, N.A. (collectively "Schwab") and several series of The Charles Schwab Family of Funds, Schwab Investments, and Charles Schwab Worldwide Funds plc ("Schwab Fund Series"), in three individual lawsuits against Bank of America Corporation, Credit Suisse Group AG, J.P. Morgan Chase & Co., Citibank, Inc., and additional banks for allegedly manipulating the London Interbank Offered Rate ("LIBOR").

The complaints allege that beginning in 2007, the defendants conspired to understate their true costs of borrowing, causing the calculation of LIBOR to be set artificially low.  As a result, Schwab and the Schwab Fund Series received less than their rightful rates of return on their LIBOR-based investments.  The complaints assert claims under federal antitrust laws, the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the statutory and common law of California.  The actions were transferred to the Southern District of New York for consolidated or coordinated proceedings with the LIBOR multidistrict litigation pending there.  The judge presiding over the MDL dismissed Schwab's antitrust claims and RICO claim, and declined supplemental jurisdiction over Schwab's state law claims.  That order is subject to appeal.  Schwab re-filed those claims (and a federal securities claim) in California Superior Court; the action was removed to federal court and recently transferred back to the Southern District of New York for consolidated or coordinated proceedings with the LIBOR multidistrict litigation.

3.     ***Cipro Cases I and II***, JCCP Nos. 4154 and 4220 (Cal. Supr. Ct.).  Lieff Cabraser represents California consumers and third party payors in a class action lawsuit filed in California state court charging that Bayer Corporation, Barr Laboratories, and other generic prescription drug manufacturers conspired to restrain competition in the sale of Bayer's blockbuster antibiotic drug Ciprofloxacin, sold as Cipro.  Between 1997

and 2003, Bayer paid its would-be generic drug competitors nearly $400 million to refrain from selling more affordable versions of Cipro.  As a result, consumers were forced to pay inflated prices for the drug -- frequently prescribed to treat urinary tract, prostate, abdominal, and other infections.

The trial court granted defendants' motion for summary judgment, which the appellate court affirmed in October 2011.  Plaintiffs sought review before the California Supreme Court and were successful.  Following briefing, the case was stayed pending the U.S. Supreme Court's decision in *FTC v. Actavis*.  After the U.S. Supreme Court in *Actavis* overturned the appellate court's ruling that pay-for-delay deals in the pharmaceutical industry are generally legal, plaintiffs and Bayer entered into settlement negotiations.  In November 2013, the trial court approved a $74 million settlement with Bayer.  The case continues against the other defendants with oral argument before the California Supreme Court expected to be held later this year.

4.     *In re Lithium-Ion Batteries Antitrust Litigation,* MDL No. 2420. Lieff Cabraser serves as Interim Co-Lead Indirect Purchaser Counsel representing consumers in a class action filed against Sony, Panasonic, Hitachi, LG Chem, Samsung, and Sanyo for allegedly conspiring to fix and raise the prices of lithium-ion rechargeable batteries in violation of U.S. antitrust law from 2002 to 2011.  The defendants are the world's leading manufacturers of lithium-ion rechargeable batteries, which provide power for a wide variety of consumer electronic products.  As a result of the defendants' alleged anticompetitive and unlawful conduct, consumers across America paid artificially inflated prices for lithium-ion rechargeable batteries.

5.     *In re Municipal Derivatives Litigation*, MDL No. 1950 (S.D.N.Y.).   Lieff Cabraser represents the City of Oakland, the County of Alameda, City of Fresno, Fresno County Financing Authority, and East Bay Delta Housing and Finance Agency in a class action lawsuit brought on behalf of themselves and California entities that purchased guaranteed investment contracts, swaps, and other municipal derivatives products from Bank of America, N.A.,  JP Morgan Chase & Co., Piper Jaffray & Co., Societe Generale SA, UBS AG, and other banks, brokers and financial institutions. The complaint charges that defendants conspired to give cities, counties, school districts, and other governmental agencies artificially low bids for guaranteed investment contracts, swaps, and other municipal derivatives products, which are used by public entities use to earn interest on bond proceeds. The complaint charges that defendants met secretly to discuss prices, customers, and markets of municipal derivatives sold in the U.S. and elsewhere; intentionally created the false appearance of competition by engaging in sham auctions in which the results were pre-determined or agreed not to bid on contracts; and covertly shared their unjust profits with losing bidders to maintain the

conspiracy.  In April 2010, the Court denied defendants' motions to dismiss.

6. ***Marchbanks Truck Service v. Comdata Network***, No. 07-cv-01078 (E.D. Pa.).   In March 2013, the Court granted preliminary approval to a $130 million settlement plus prospective relief in a class action lawsuit brought by truck stops and other retail fueling facilities that paid percentage-based transaction fees to Comdata on proprietary card transactions using Comdata's over-the-road fleet card.  The plaintiffs allege that Comdata imposed anticompetitive provisions in its agreements with class members that artificially inflated the fees these truck stops and other retail fueling merchants paid when accepting the card for payment.  The lawsuit also challenges allegedly anticompetitive arrangements among Comdata, its parent company Ceridian LLC, and three national truck stop chains: defendants TravelCenters of America LLC and its wholly owned subsidiaries, Pilot Travel Centers LLC and its predecessor Pilot Corporation, and Love's Travel Stops & Country Stores, Inc.

## B.   Successes

1. ***Natural Gas Antitrust Cases***, JCCP Nos. 4221, 4224, 4226 & 4228 (Cal. Supr. Ct.).  In 2003, the Court approved a landmark of $1.1 billion settlement in class action litigation against El Paso Natural Gas Co. for manipulating the market for natural gas pipeline transmission capacity into California.  Lieff Cabraser served as Plaintiffs' Co-Lead Counsel and Co-Liaison Counsel in the *Natural Gas Antitrust Cases I-IV.*

In June 2007, the Court granted final approval to a $67.39 million settlement of a series of class action lawsuits brought by California business and residential consumers of natural gas against a group of natural gas suppliers, Reliant Energy Services, Inc., Duke Energy Trading and Marketing LLC, CMS Energy Resources Management Company, and Aquila Merchant Services, Inc.

Plaintiffs charged defendants with manipulating the price of natural gas in California during the California energy crisis of 2000-2001 by a variety of means, including falsely reporting the prices and quantities of natural gas transactions to trade publications, which compiled daily and monthly natural gas price indices; prearranged wash trading; and, in the case of Reliant, "churning" on the Enron Online electronic trading platform, which was facilitated by a secret netting agreement between Reliant and Enron.

The 2007 settlement followed a settlement reached in 2006 for $92 million partial settlement with Coral Energy Resources, L.P.; Dynegy

Inc. and affiliates; EnCana Corporation; WD Energy Services, Inc.; and The Williams Companies, Inc. and affiliates.

2. ***Wholesale Electricity Antitrust Cases I & II***, JCCP Nos. 4204 & 4205 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Lead Counsel in the private class action litigation against Duke Energy Trading & Marketing, Reliant Energy, and The Williams Companies for claims that the companies manipulated California's wholesale electricity markets during the California energy crisis of 2000-2001.  Extending the landmark victories for California residential and business consumers of electricity, in September 2004, plaintiffs reached a $206 million settlement with Duke Energy Trading & Marketing, and in August 2005, plaintiffs reached a $460 million settlement with Reliant Energy, settling claims that the companies manipulated California's wholesale electricity markets during the California energy crisis of 2000-01.  Lieff Cabraser earlier entered into a settlement for over $400 million with The Williams Companies.

3. ***In re Brand Name Prescription Drugs***, MDL No. 997 (N.D. Ill.).  Lieff Cabraser served as Class Counsel for a class of tens of thousands of retail pharmacies against the leading pharmaceutical manufacturers and wholesalers of brand name prescription drugs for alleged price-fixing from 1989 to 1995 in violation of the federal antitrust laws.  Plaintiffs charged that defendants engaged in price discrimination against retail pharmacies by denying them discounts provided to hospitals, health maintenance organizations, and nursing homes.  In 1996 and 1998, the Court approved settlements with certain manufacturers totaling $723 million.

4. ***Microsoft Private Antitrust Litigation.***  Representing businesses and consumers, Lieff Cabraser prosecuted multiple private antitrust cases against Microsoft Corporation in state courts across the country, including Florida, New York, North Carolina, and Tennessee.  Plaintiffs alleged that Microsoft had engaged in anticompetitive conduct, violated state deceptive and unfair business practices statutes, and overcharged businesses and consumers for Windows operating system software and for certain software applications, including Microsoft Word and Microsoft Office.  In August 2006, the New York Supreme Court granted final approval to a settlement that made available up to $350 million in benefits for New York businesses and consumers.  In August 2004, the Court in the North Carolina action granted final approval to a settlement valued at over $89 million.  In June 2004, the Court in the Tennessee action granted final approval to a $64 million settlement.  In November 2003, in the Florida Microsoft litigation, the Court granted final approval to a $202 million settlement, one of the largest antitrust settlements in Florida history.  Lieff Cabraser served as Co-Lead Counsel in the New

York, North Carolina and Tennessee cases, and held leadership roles in the Florida case.

5.   ***In re TFT-LCD (Flat Panel) Antitrust Litigation***, MDL No. 1827 (N.D. Cal.).  Lieff Cabraser served as court-appointed Co-Lead Counsel for direct purchasers in litigation against the world's leading manufacturers of Thin Film Transistor Liquid Crystal Displays.  TFT-LCDs are used in flat-panel televisions as well as computer monitors, laptop computers, mobile phones, personal digital assistants, and other devices.  Plaintiffs charged that defendants conspired to raise and fix the prices of TFT-LCD panels and certain products containing those panels for over a decade, resulting in overcharges to purchasers of those panels and products.  In March 2010, the Court certified two nationwide classes of persons and entities that directly purchased TFT-LCDs from January 1, 1999 through December 31, 2006, one class of panel purchasers, and one class of class of buyers of laptop computers, computer monitors, and televisions that contained TFT-LCDs.  Over the course of the litigation, the classes reached settlements with all defendants except Toshiba.  The case against Toshiba proceeded to trial.  In July 2012, the jury found that Toshiba participated in the price-fixing conspiracy.  The case was subsequently settled, bringing the total settlements in the litigation to over $470 million.  For his outstanding work in the precedent-setting litigation, *California Lawyer* recognized Richard M. Heimann with a 2013 California Lawyer of the Year award.

6.   ***Sullivan v. DB Investments***, No. 04-02819 (D. N.J.).  Lieff Cabraser served as Class Counsel for consumers who purchased diamonds from 1994 through March 31, 2006, in a class action lawsuit against the De Beers group of companies.  Plaintiffs charged that De Beers conspired to monopolize the sale of rough diamonds in the U.S.  In May 2008, the District Court approved a $295 million settlement for purchasers of diamonds and diamond jewelry, including $130 million to consumers.  The settlement also barred De Beers from continuing its illegal business practices and required De Beers to submit to the jurisdiction of the Court to enforce the settlement.   In December 2011, the Third Circuit Court of Appeals affirmed the district court's order approving the settlement.  667 F.3d 273 (3rd Cir. 2011).

For sixty years, De Beers has flaunted U.S. antitrust laws.  In 1999, De Beers' Chairman Nicholas Oppenheimer stated that De Beers "likes to think of itself as the world's . . . longest-running monopoly.  [We seek] to manage the diamond market, to control supply, to manage prices and to act collusively with our partners in the business."  The hard-fought litigation spanned several years and nations.  Despite the tremendous resources available to the U.S. Department of Justice and state attorney generals, it was only through the determination of plaintiffs' counsel that De Beers was finally brought to justice and the rights of consumers were vindicated.  Lieff Cabraser attorneys played key roles in negotiating the

settlement and defending it on appeal.  Discussing the DeBeers case, *The National Law Journal* noted that Lieff Cabraser was "among the plaintiffs' firms that weren't afraid to take on one of the business world's great white whales."

7.     ***In re Linerboard Antitrust Litigation***, MDL No. 1261 (E.D. Pa.).  Lieff Cabraser served as Class Counsel on behalf of a class of direct purchasers of linerboard.  The Court approved a settlement totaling $202 million.

8.     ***Azizian v. Federated Department Stores,*** No. 3:03 CV 03359 SBA (N.D. Cal.).  In March 2005, the Court granted final approval to a settlement that Lieff Cabraser and co-counsel reached with numerous department store cosmetics manufacturers and retailers.  The settlement was valued at $175 million and included significant injunctive relief, for the benefit of a nationwide class of consumers of department store cosmetics.  The complaint alleged the manufacturers and retailers violated antitrust law by engaging in anticompetitive practices to prevent discounting of department store cosmetics.

9.     ***Haley Paint Co. v. E.I. Dupont De Nemours and Co. et al.***, No. 10-cv-00318-RDB (N.D. Md.).  Lieff Cabraser served as Co-Lead Counsel for direct purchasers of titanium dioxide in a nationwide class action lawsuit against Defendants E.I. Dupont De Nemours and Co., Huntsman International LLC, Kronos Worldwide Inc., Millennium Inorganic Chemicals, Inc., and The National Titanium Dioxide Company Ltd., alleging these corporations participated in a global cartel to fix the price of titanium dioxide.  Titanium dioxide, a dry chemical powder, is the world's most widely used pigment for providing whiteness and brightness in paints and other coatings.   Plaintiffs charged that defendants coordinated increases in the prices for titanium dioxide despite declining demand, decreasing raw material costs, and industry overcapacity.  Plaintiffs overcame attacks on the pleadings, discovery obstacles, and a rigorous class certification process that required two full rounds of briefing and expert analysis.  In August 2012, the Court certified the class.  In December 2013, the Court approved a series of settlements totaling $163 million with defendants.

10.    ***Pharmaceutical Cases I, II, and III***, JCCP Nos. 2969, 2971 & 2972 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Lead Counsel and Co-Liaison Counsel representing a certified class of indirect purchasers (consumers) on claims against the major pharmaceutical manufacturers for violations of the Cartwright Act and the Unfair Competition Act.  The class alleged that defendants unlawfully fixed discriminatory prices on prescription drugs to retail pharmacists in comparison with the prices charged to certain favored purchasers, including HMOs and mail order houses.  In April 1999, the Court approved a settlement providing $148 million in

free, brand-name prescription drugs to health agencies that served California's poor and uninsured.  In October 2001, the Court approved a settlement with the remaining defendants in the case, which provided an additional $23 million in free, brand-name prescription drugs to these agencies.

11.     ***In re Lupron Marketing and Sales Practices Litigation***, MDL No. 1430 (D. Mass.).  In May 2005, the Court granted final approval to a settlement of a class action lawsuit by patients, insurance companies and health and welfare benefit plans that paid for Lupron, a prescription drug used to treat prostate cancer, endometriosis and precocious puberty.  The settlement requires the defendants, Abbott Laboratories, Takeda Pharmaceutical Company Limited, and TAP Pharmaceuticals, to pay $150 million, inclusive of costs and fees, to persons or entities who paid for Lupron from January 1, 1985 through March 31, 2005.  Plaintiffs charged that the defendants conspired to overstate the drug's average wholesale price ("AWP"), which resulted in plaintiffs paying more for Lupron than they should have paid.  Lieff Cabraser served as Co-Lead Plaintiffs' Counsel.

12.     ***California Vitamins Cases***, JCCP No. 4076 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Liaison Counsel and Co-Chairman of the Plaintiffs' Executive Committee on behalf of a class of California indirect vitamin purchasers in every level of the chain of distribution.  In January 2002, the Court granted final approval of a $96 million settlement with certain vitamin manufacturers in a class action alleging that these and other manufacturers engaged in price fixing of particular vitamins.  In December 2006, the Court granted final approval to over $8.8 million in additional settlements.

13.     ***In re Buspirone Antitrust Litigation***, MDL No. 1413 (S.D. N.Y.).  In November 2003, Lieff Cabraser obtained a $90 million cash settlement for individual consumers, consumer organizations, and third party payers that purchased BuSpar, a drug prescribed to alleviate symptoms of anxiety.  Plaintiffs alleged that Bristol-Myers Squibb Co. (BMS), Danbury Pharmacal, Inc., Watson Pharmaceuticals, Inc. and Watson Pharma, Inc. entered into an unlawful agreement in restraint of trade under which BMS paid a potential generic manufacturer of BuSpar to drop its challenge to BMS' patent and refrain from entering the market.  Lieff Cabraser served as Plaintiffs' Co-Lead Counsel.

14.     ***In re Travel Agency Commission Antitrust Litigation***, MDL No. 1058 (D. Minn.).  Lieff Cabraser served as Co-Lead Counsel for a certified class of U.S. travel agents on claims against the major U.S. air carriers, who allegedly violated the federal antitrust laws by fixing the

commissions paid to travel agents.  In 1997, the Court approved an $82 million settlement.

15.   ***In re Commercial Explosives Antitrust Litigation***, MDL No. 1093 (D. Utah).  Lieff Cabraser served as Class Counsel on behalf of direct purchasers of explosives used in mining operations.  In 1998, the Court approved a $77 million settlement of the litigation.

16.   ***In re Toys 'R' Us Antitrust Litigation***, MDL No. 1211 (E.D. N.Y.). Lieff Cabraser served as Co-Lead Counsel representing a class of direct purchasers (consumers) who alleged that Toys 'R' Us conspired with the major toy manufacturers to boycott certain discount retailers in order to restrict competition and inflate toy prices.  In February 2000, the Court approved a settlement of cash and product of over $56 million.

17.   ***Meijer v. Abbott Laboratories***, Case No. C 07-5985 CW (N.D. Cal.). Lieff Cabraser served as co-counsel for the group of retailers charging that Abbott Laboratories monopolized the market for AIDS medicines used in conjunction with Abbott's prescription drug Norvir.  These drugs, known as Protease Inhibitors, have enabled patients with HIV to fight off the disease and live longer.  In January 2011, the Court denied Abbott's motion for summary judgment on plaintiffs' monopolization claim. Trial commenced in February 2011.  After opening statements and the presentation of four witnesses and evidence to the jury, plaintiffs and Abbott Laboratories entered into a $52 million settlement.  The Court granted final approval to the settlement in August 2011.

18.   ***In re Carpet Antitrust Litigation***, MDL No. 1075 (N.D. Ga.).  Lieff Cabraser served as Class Counsel and a member of the trial team for a class of direct purchasers of twenty-ounce level loop polypropylene carpet.  Plaintiffs, distributors of polypropylene carpet, alleged that Defendants, seven manufacturers of polypropylene carpet, conspired to fix the prices of polypropylene carpet by agreeing to eliminate discounts and charge inflated prices on the carpet.  In 2001, the Court approved a $50 million settlement of the case.

19.   ***In re High Pressure Laminates Antitrust Litigation***, MDL No. 1368 (S.D. N.Y.).  Lieff Cabraser served as Trial Counsel on behalf of a class of direct purchasers of high pressure laminates.  The case in 2006 was tried to a jury verdict.  The case settled for over $40 million.

20.   ***Schwartz v. National Football League***, No. 97-CV-5184 (E.D. Pa.). Lieff Cabraser served as counsel for individuals who purchased the "NFL Sunday Ticket" package of private satellite transmissions in litigation against the National Football League for allegedly violating the Sherman Act by limiting the distribution of television broadcasts of NFL games by satellite transmission to one package.  In August 2001, the Court

approved of a class action settlement that included: (1) the requirement that defendants provide an additional weekly satellite television package known as Single Sunday Ticket for the 2001 NFL football season, under certain circumstances for one more season, and at the defendants' discretion thereafter; (2) a $7.5 million settlement fund to be distributed to class members; (3) merchandise coupons entitling class members to discounts at the NFL's Internet store which the parties value at approximately $3 million; and (4) $2.3 million to pay for administering the settlement fund and notifying class members.

21.    ***In re Lasik/PRK Antitrust Litigation***, No. CV 772894 (Cal. Supr. Ct.).  Lieff Cabraser served as a member of Plaintiffs' Executive Committee in class actions brought on behalf of persons who underwent Lasik/PRK eye surgery.  Plaintiffs alleged that defendants, the manufacturers of the laser system used for the laser vision correction surgery, manipulated fees charged to ophthalmologists and others who performed the surgery, and that the overcharges were passed onto consumers who paid for laser vision correction surgery.  In December 2001, the Court approved a $12.5 million settlement of the litigation.

22.    ***Quantegy Recording Solutions, LLC, et al. v. Toda Kogyo Corp., et al.***, No. C-02-1611 (PJH).  In August 2006 and January 2009, the Court approved the final settlements in antitrust litigation against manufacturers, producers, and distributors of magnetic iron oxide ("MIO").  MIO is used in the manufacture of audiotape, videotape, and data storage tape.  Plaintiffs alleged that defendants violated federal antitrust laws by conspiring to fix, maintain, and stabilize the prices and to allocate the worldwide markets for MIO from 1991 to October 12, 2005. The value of all settlements reached in the litigation was $6.35 million. Lieff Cabraser served as Plaintiffs' Co-Lead Counsel.

23.    ***In re Static Random Access Memory (SRAM) Antitrust Litigation***, MDL No. 1819 (N.D. Cal.).  Plaintiffs allege that from November 1, 1996 through December 31, 2006, the defendant manufacturers conspired to fix and maintain artificially high prices for SRAM, a type of memory used in many products, including smartphones and computers.  Lieff Cabraser served as one of three members of the Steering Committee for consumers and other indirect purchasers of SRAM. In February 2008, U.S. District Court Judge Claudia Wilken denied most aspects of defendants' motions to dismiss plaintiffs' complaints.  In November 2009, the Court certified a nationwide class seeking injunctive relief and twenty-seven state classes seeking damages. In  2010, the Court granted final approval of a first set of settlements.   In October 2011, the Court granted final approval of settlements with the remaining defendants.

24. ***Carbon Fiber Cases I, II, III***, JCCP Nos. 4212, 4216 & 4222 (Cal. Supr. Ct.). Lieff Cabraser served as Co-Liaison Counsel on behalf of indirect purchasers of carbon fiber. Plaintiffs alleged that defendants illegally conspired to raise prices of carbon fiber. Settlements have been reached with all of the defendants.

25. ***Methionine Cases I and II***, JCCP Nos. 4090 & 4096 (Cal. Supr. Ct.). Lieff Cabraser served as Co-Lead Counsel on behalf of indirect purchasers of methionine, an amino acid used primarily as a poultry and swine feed additive to enhance growth and production. Plaintiffs alleged that the companies illegally conspired to raise methionine prices to super-competitive levels. The case settled.

26. ***McIntosh v. Monsanto***, No. 4:01CV65RSW (E.D. Mo.). Lieff Cabraser served as Co-Lead Counsel in a class action lawsuit against Monsanto Company and others alleging that a conspiracy to fix prices on genetically modified Roundup Ready soybean seeds and Yieldgard corn seeds. The case settled.

27. ***Tortola Restaurants v. Minnesota Mining and Manufacturing***, No. 314281 (Cal. Supr. Ct). Lieff Cabraser served as Co-Lead Counsel on behalf of indirect purchasers of Scotch-brand invisible and transparent tape. Plaintiffs alleged that defendant 3M conspired with certain retailers to monopolize the sale of Scotch-brand tape in California. The case was resolved as part of a nationwide settlement that Lieff Cabraser negotiated, along with co-counsel.

28. ***In re Compact Disc Antitrust Litigation***, MDL No. 1216 (C.D. Cal.). Lieff Cabraser served as Co-Lead Counsel for the direct purchasers of compact discs on claims that the producers fixed the price of CDs in violation of the federal antitrust laws.

29. ***In re Electrical Carbon Products Antitrust Litigation***, MDL No. 1514 (D.N.J.). Lieff Cabraser represented the City and County of San Francisco and a class of direct purchasers of carbon brushes and carbon collectors on claims that producers fixed the price of carbon brushes and carbon collectors in violation of the Sherman Act.

## VII.   Environmental and Toxic Exposures

### A.   Current Cases

1. ***In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico***, MDL No. 2179 (E.D. La.). Lieff Cabraser serves on the Court-appointed Plaintiffs' Steering Committee ("PSC") and with co-counsel represents fishermen, property owners, business owners, wage earners, and other harmed parties in class action litigation against BP,

Transocean, Halliburton, and other defendants involved in the Deepwater Horizon oil rig blowout and resulting oil spill in the Gulf of Mexico on April 20, 2010.  The Master Complaints allege that the defendants were insouciant in addressing the operations of the well and the oil rig, ignored warning signs of the impending disaster, and failed to employ and/or follow proper safety measures, worker safety laws, and environmental protection laws in favor of cost-cutting measures.

The Court has approved two class action settlements with BP that will fully compensate hundreds of thousands of victims of the tragedy. The settlements resolve the majority of private economic loss, property damage, and medical injury claims stemming from the Deepwater Horizon Oil Spill, and hold BP fully accountable to individuals and businesses harmed by the spill.  Under the settlements, there is no dollar limit on the amount BP will pay. BP must fully satisfy all qualified claims. To date businesses and individuals that suffered economic losses or property damage have received over $3.8 billion through the class action settlement program.

2.  ***Kingston, Tennessee TVA Coal Ash Spill Litigation***, No. 3:09-cv-09 (E.D. Tenn.).  Lieff Cabraser represents hundreds property owners and businesses harmed by the largest coal ash spill in U.S. history.   On December 22, 2008, more than a billion gallons of coal ash slurry spilled when a dike burst on a retention pond at the Kingston Fossil Plant operated by the Tennessee Valley Authority (TVA) in Roane County, Tennessee.   A wall of coal ash slurry traveled across the Emory River, polluting the river and nearby waterways, and covering nearly 300 acres with toxic sludge, including 12 homes and damaging hundreds of properties.  In March 2010, the Court denied in large part TVA's motion to dismiss the litigation.  In the Fall of 2011, the Court conducted a four week bench trial on the question of whether TVA was liable for releasing the coal ash into the river system.  The issue of damages was reserved for later proceedings.  In August 2012, the Court found in favor of plaintiffs on their claims of negligence, trespass, and private nuisance.  The case is now in mediation proceedings.

**B.   Successes**

1.  ***In re Exxon Valdez Oil Spill Litigation***, No. 3:89-cv-0095 HRH (D. Al.).  The *Exxon Valdez* ran aground on March 24, 1989, spilling 11 million gallons of oil into Prince William Sound.  Lieff Cabraser served as one of the court-appointed Plaintiffs' Class Counsel.  The class consisted of fisherman and others whose livelihoods were gravely affected by the disaster.  In addition, Lieff Cabraser served on the Class Trial Team that tried the case before a jury in federal court in 1994.  The jury returned an award of $5 billion in punitive damages.

In 2001, the Ninth Circuit Court of Appeals ruled that the original $5 billion punitive damages verdict was excessive.  In 2002, U.S. District Court Judge H. Russell Holland reinstated the award at $4 billion.  Judge Holland stated that, "Exxon officials knew that carrying huge volumes of crude oil through Prince William sound was a dangerous business, yet they knowingly permitted a relapsed alcoholic to direct the operation of the *Exxon Valdez* through Prince William Sound."  In 2003, the Ninth Circuit again directed Judge Holland to reconsider the punitive damages award under United States Supreme Court punitive damages guidelines.  In January 2004, Judge Holland issued his order finding that Supreme Court authority did not change the Court's earlier analysis.

In December 2006, the Ninth Circuit Court of Appeals issued its ruling, setting the punitive damages award at $2.5 billion.  Subsequently, the U.S. Supreme Court further reduced the punitive damages award to $507.5 million, an amount equal to the compensatory damages.  With interest, the total award to the plaintiff class was $1.515 billion.

2.  ***In re Imprelis Herbicide Marketing, Sales Practices and Products Liability Litigation***, MDL No. 2284 (E.D. Pa.).  Lieff Cabraser served as Co-Lead Counsel for homeowners, golf course companies and other property owners in a nationwide class action lawsuit against E.I. du Pont de Nemours & Company ("DuPont"), charging that its herbicide Imprelis caused widespread death among trees and other non-targeted vegetation across the country.  DuPont marketed Imprelis as an environmentally friendly alternative to the commonly used 2,4-D herbicide.  Just weeks after Imprelis' introduction to the market in late 2010, however, complaints of tree damage began to surface.  Property owners reported curling needles, severe browning, and dieback in trees near turf that had been treated with Imprelis.  In August 2011, the U.S. Environmental Protection Agency banned the sale of Imprelis.

The complaint charged that DuPont failed to disclose the risks Imprelis posed to trees, even when applied as directed, and failed to provide instructions for the safe application of Imprelis.  In response to the litigation, DuPont created a process for property owners to submit claims for damages.  Thus far, nearly $400 million has been paid to approximately 25,000 claimants.  In October 2013, the Court approved a settlement of the class action that substantially enhanced the DuPont claims process, including by adding an extended warranty, a more limited release of claims, the right to appeal the denial of claim by DuPont to an independent arborist, and publication of DuPont's tree payment schedule.

3.  ***In re GCC Richmond Works Cases***, JCCP No. 2906 (Cal. Supr. Ct.).  Lieff Cabraser served as Co-Liaison Counsel and Lead Class Counsel in

coordinated litigation arising out of the release on July 26, 1993, of a massive toxic sulfuric acid cloud which injured an estimated 50,000 residents of Richmond, California.  The Coordination Trial Court granted final approval to a $180 million class settlement for exposed residents.

4.  ***In re Unocal Refinery Litigation***, No. C 94-04141 (Cal. Supr. Ct.). Lieff Cabraser served as one of two Co-Lead Class Counsel and on the Plaintiffs' Steering Committee in this action against Union Oil Company of California ("Unocal") arising from a series of toxic releases from Unocal's San Francisco refinery in Rodeo, California.  The action was settled in 1997 on behalf of approximately 10,000 individuals for $80 million.

5.  ***West v. G&H Seed Co., et al.***, No. 99-C-4984-A (La. State Ct.).  With co-counsel, Lieff Cabraser represented a certified class of 1,500 Louisiana crawfish farmers who charged in a lawsuit that Fipronil, an insecticide sold under the trade name ICON, damaged their pond-grown crawfish crops.  In Louisiana, rice and crawfish are often farmed together, either in the same pond or in close proximity to one another.

After its introduction to the market in 1999, ICON was used extensively in Louisiana to kill water weevils that attacked rice plants.  The lawsuit alleged that ICON also had a devastating effect on crawfish harvests with some farmers losing their entire crawfish crop.  In 2004, the Court approved a $45 million settlement with Bayer CropScience, which during the litigation purchased Aventis CropScience, the original manufacturer of ICON.  The settlement was reached after the parties had presented nearly a month's worth of evidence at trial and were on the verge of making closing arguments to the jury.

6.  ***In re Sacramento River Spill Cases I and II***, JCCP Nos. 2617 & 2620 (Cal. Supr. Ct.).  On July 14, 1991, a Southern Pacific train tanker car derailed in northern California, spilling 19,000 gallons of a toxic pesticide, metam sodium, into the Sacramento River near the town of Dunsmir at a site along the rail lines known as the Cantara Loop.  The metam sodium mixed thoroughly with the river water and had a devastating effect on the river and surrounding ecosystem.  Within a week, every fish, 1.1 million in total, and all other aquatic life in a 45-mile stretch of the Sacramento River was killed.  In addition, many residents living along the river became ill with symptoms that included headaches, shortness of breath, and vomiting.  The spill considered the worst inland ecological disaster in California history.

Lieff Cabraser served as Court-appointed Plaintiffs' Liaison Counsel and Lead Class Counsel, and chaired the Plaintiffs' Litigation Committee in coordinated proceedings that included all of the lawsuits arising out of this toxic spill.  Settlement proceeds of approximately $16 million were

distributed pursuant to Court approval of a plan of allocation to four certified plaintiff classes: personal injury, business loss, property damage/diminution, and evacuation.

7.   ***Kentucky Coal Sludge Litigation***, No. 00-CI-00245 (Cmmw. Ky.). On October 11, 2000, near Inez, Kentucky, a coal waste storage facility ruptured, spilling 1.25 million tons of coal sludge (a wet mixture produced by the treatment and cleaning of coal) into waterways in the region and contaminating hundreds of properties.  This was one of the worst environmental disasters in the Southeastern United States.  With co-counsel, Lieff Cabraser represented over 400 clients in property damage claims, including claims for diminution in the value of their homes and properties.  In April 2003, the parties reached a confidential settlement agreement on favorable terms to the plaintiffs.

8.   ***Toms River Childhood Cancer Incidents***, No. L-10445-01 MT (Sup. Ct. NJ).  With co-counsel, Lieff Cabraser represented 69 families in Toms River, New Jersey, each with a child having cancer, that claimed the cancers were caused by environmental contamination in the Toms River area.  Commencing in 1998, the parties—the 69 families, Ciba Specialty Chemicals, Union Carbide and United Water Resources, Inc., a water distributor in the area—participated in an unique alternative dispute resolution process, which lead to a fair and efficient consideration of the factual and scientific issues in the matter.  In December 2001, under the supervision of a mediator, a confidential settlement favorable to the families was reached.

## VIII.   <u>False Claims Act</u>

### A.   **Current Cases**

1.   ***State of California ex rel. Associates Against FX Insider State Street Corp.***, No. 34-2008-00008457 (Sacramento Supr. Ct., Cal.) ("***State Street I***").  Lieff Cabraser serves as co-counsel for the whistleblowers in this action against State Street Corporation which serves as the contractual custodian for over 40% of public pension funds in the United States.  As the contractual custodian, State Street is responsible for undertaking the foreign currency exchange (FX) transactions necessary to facilitate a customer's purchases or sales of foreign securities.  The complaint charges that State Street violated the California False Claims Act by systematically manipulating the timing of its execution and reporting of FX trades in order to enrich itself, at the expense of California custodial public pension fund clients, including the California Public Employees' Retirement System and the California State Teachers' Retirement System.  The case is in the discovery stage after the trial court denied State Street's demurrer.

2.      **_In re Bank of New York Mellon Corporation False Claims Act Foreign Exchange Litigation_**, No. C-11-05683 (N.D. Cal.).  Lieff Cabraser serves as co-counsel for plaintiff and relator FX Analytics in a _qui tam_ suit filed on behalf of the Los Angeles County Employees' Retirement Association Fund ("LACERA") and nine other California municipal and county pension funds against The Bank of New York Mellon Corporation ("BNY Mellon") and its predecessors and subsidiaries, for alleged violations of the California False Claims Act and breach of contract and fiduciary duty.  The complaint charges that defendants created and carried out a fraudulent scheme, for over a decade, in which they charged plaintiffs fictitious foreign currency exchange ("FX") rates in connection with the purchase and sale of foreign securities.  The complaint further alleges that defendants consistently incorporated hidden and excessive mark-ups or mark-downs relative to the actual FX rates applicable at the times of the trades conducted for defendants' custodial FX clients.  Defendants allegedly kept for themselves, as an unlawful profit, the difference between the false and actual price for each FX transaction. LACERA and several other funds intervened in the case in late 2011. The case is now pending in MDL 2335 in the Southern District of New York.

3.      **_State of California ex rel. Sherwin v. Office Depot_**, Case No. BC410135 (Cal. Supr. Ct.).  With co-counsel, Lieff Cabraser represents a whistleblower and the City of Los Angeles, County of Santa Clara, Stockton Unified School District, and 16 additional California cities, counties, and school district in an action under the California False Claims Act ("CFCA"), Gov't Code § 12650 _et seq._, which authorizes private persons with knowledge of fraud, known as _qui tam_ plaintiffs or "relators," to sue on behalf of government victims.  The _qui tam_ plaintiff who brought the action was a former Office Depot account manager. The California cities, counties, and school districts intervened in this action to assert their claims (including common-law fraud and breach of contract) against Office Depot directly.   The governmental entities purchased office supplies from Office Depot pursuant to a nationwide supply contract known as the U.S. Communities contract.

Plaintiffs allege that under the contract, Office Depot promised that the pricing for office supplies would be Office Depot's best governmental pricing nationwide.  Plaintiffs further allege that Office Depot promised that if it offered lower pricing to a government customer outside the U.S. Communities contract, Office Depot would extend that lower pricing to its U.S. Communities contract customers.  The complaint charges that Office Depot knowingly overcharged plaintiffs on their purchases under the U.S. Communities contract.  The complaint specifically alleges that Office Depot repeatedly provided better pricing to non-U.S. Communities

contract governmental entities, and failed to extend the lower pricing to plaintiffs.

**B.      Successes**

1.    ***United States ex rel. Mary Hendow and Julie Albertson v. University of Phoenix***, No. 2:03-cv-00457-GEB-DAD (E.D. Cal.). Lieff Cabraser obtained a record whistleblower settlement against the University of Phoenix that charged the university had violated the incentive compensation ban of the Higher Education Act (HEA) by providing improper incentive pay to its recruiters.  The HEA prohibits colleges and universities whose students receive federal financial aid from paying their recruiters based on the number of students enrolled, which creates a risk of encouraging recruitment of unqualified students who, Congress has determined, are more likely to default on their loans.  High student loan default rates not only result in wasted federal funds, but the students who receive these loans and default are burdened for years with tremendous debt without the benefit of a college degree.

The complaint alleged that the University of Phoenix defrauded the U.S. Department of Education by obtaining federal student loan and Pell Grant monies from the federal government based on false statements of compliance with HEA.  In December 2009, the parties announced a $78.5 million settlement.  The settlement constitutes the second-largest settlement ever in a False Claims Act case in which the federal government declined to intervene in the action and largest settlement ever involving the Department of Education.   The University of Phoenix case led to the Obama Administration passing new regulations that took away the so-called "safe harbor" provisions that for-profit universities relied on to justify their alleged recruitment misconduct.  For his outstanding work as Lead Counsel and the significance of the case, *California Lawyer* magazine recognized Lieff Cabraser attorney Robert J. Nelson with a California Lawyer of the Year (CLAY) Award.

2.    ***State of California ex rel. Rockville Recovery Associates v. Multiplan***, No. 34-2010-00079432 (Sacramento Supr. Ct., Cal.).  In a case that received widespread media coverage, Lieff Cabraser represented whistleblower Rockville Recovery Associates in a *qui tam* suit for civil penalties under the California Insurance Frauds Prevention Act ("IFPA"), Cal. Insurance Code § 1871.7, against Sutter Health, one of California's largest healthcare providers, and obtained the largest penalty ever imposed under the statute.  The IFP A is designed to prevent fraud against insurers and, by extension, their policyholders, by imposing civil penalties payable to the State for false claims submitted to private insurers.

The complaint alleged that the 26 Sutter hospitals throughout California submitted false, fraudulent, or misleading charges for anesthesia services

(separate from the anesthesiologist's fees) during operating room procedures that were already covered in the operating room bill.

After Lieff Cabraser defeated Sutter Health's demurrer and motion to compel arbitration, California Insurance Commissioner Dave Jones intervened in the litigation in May 2011. Lieff Cabraser attorneys continued to serve as lead counsel, and litigated the case for over two more years. In all, plaintiffs defeated no less than 10 dispositive motions, as well as three writ petitions to the Court of Appeals. Because the IFPA was a largely untested statute, just about every aspect of the statute had to be litigated. One important ruling, critical to future litigants, was that the IFPA requires a trial by jury.

The parties reached a $46 million settlement that was announced in November 2013, shortly before trial was scheduled to commence. This is the largest award ever under the IFPA, and per the statute, will fund additional anti-fraud efforts by the State.

In addition, Sutter Health agreed to a comprehensive series of billing and transparency reforms, which California Insurance Commissioner Dave Jones called "a groundbreaking step in opening up hospital billing to public scrutiny." On the date the settlement was announced, the California Hospital Association recognized its significance by issuing a press release stating that the settlement "compels industry-wide review of anesthesia billing." Defendant Multiplan, Inc., a large leased network Preferred Provider Organization, separately paid a $925,000 civil penalty for its role in enabling Sutter's alleged false billing scheme.

3. ***United States ex rel. Dye v. ATK Launch Systems***, No. 1:06CV39TS (D. Utah). Lieff Cabraser served as co-counsel for a whistleblower who alleged that ATK Launch Systems knowingly sold defective and potentially dangerous illumination flares to the United States military in violation of the federal False Claims Act. The specialized flares were used in nighttime combat, covert missions, and search and rescue operations. A key design specification set by the Defense Department was that these highly flammable and dangerous items ignite only under certain conditions. The complaint alleged that the ATK flares at issue could ignite when dropped from a height of less than 10 feet – and, according to ATK's own analysis, from as little as 11.6 inches – notwithstanding contractual specifications that they be capable of withstanding such a drop. In April 2012, the parties reached a settlement valued at $37 million.

4. ***United States ex rel. Mauro Vosilla and Steven Rossow v. Avaya, Inc.***, Case No. Case No. CV04-8763 PA JTLx (C.D. Cal.). Lieff Cabraser represented whistleblower in litigation alleging that defendants Avaya, Lucent Technologies, and AT&T violated the Federal Civil False

Claims Act, 31 U.S.C. §§ 3729 *et seq.*, as amended, and the False Claims Acts of California and several other states.  The complaint alleged that defendants charged governmental agencies for the lease, rental, and post-warranty maintenance of telephone communications systems and services that the governmental agencies no longer possessed and/or were no longer maintained by defendants.  In November 2010, the parties entered into a $21.75 million settlement of the litigation.

## IX.   <u>International and Human Rights Litigation</u>

### A.   Successes

1.   ***Holocaust Cases***.  Lieff Cabraser was one of the leading firms that prosecuted claims by Holocaust survivors and the heirs of Holocaust survivors and victims against banks and private manufacturers and other corporations who enslaved and/or looted the assets of Jews and other minority groups persecuted by the Nazi Regime during the Second World War era.  We serve as Settlement Class Counsel in the case against the Swiss banks that the Court approved a U.S. $1.25 billion settlement in July 2000.  Lieff Cabraser donated its attorneys' fees in the Swiss Banks case, in the amount of $1.5 million, to endow a Human Rights clinical chair at Columbia University Law School.  We were also active in slave labor and property litigation against German and Austrian defendants, and Nazi-era banking litigation against French banks.  In connection therewith, Lieff Cabraser participated in multi-national negotiations that led to Executive Agreements establishing an additional approximately U.S. $5 billion in funds for survivors and victims of Nazi persecution.  Our website provides links to the websites of settlement and claims administrators in these cases.

Commenting on the work of Lieff Cabraser and co-counsel in the litigation against private German corporations, entitled *In re Holocaust Era German Industry, Bank & Insurance Litigation* (MDL No. 1337), U.S. District Court Judge William G. Bassler stated on November 13, 2002:

> Up until this litigation, as far as I can tell, perhaps with some minor exceptions, the claims of slave and forced labor fell on deaf ears.  You can say what you want to say about class actions and about attorneys, but the fact of the matter is, there was no attention to this very, very large group of people by Germany, or by German industry until these cases were filed. . . .  What has been accomplished here with the efforts of the plaintiffs' attorneys and defense counsel is quite incredible. . . .  I want to thank counsel for the assistance in bringing us to where we are today.  Cases don't get settled just by

litigants.  It can only be settled by competent, patient attorneys.

2. ***Cruz v. U.S., Estados Unidos Mexicanos, Wells Fargo Bank, et al.***, No. 01-0892-CRB (N.D. Cal.).  Working with co-counsel, Lieff Cabraser succeeded in correcting an injustice that dated back 60 years.  The case was brought on behalf of Mexican workers and laborers, known as Braceros ("strong arms"), who came from Mexico to the United States pursuant to bilateral agreements from 1942 through 1946 to aid American farms and industries hurt by employee shortages during World War II in the agricultural, railroad, and other industries.  As part of the Braceros program, employers held back 10% of the workers' wages, which were to be transferred via United States and Mexican banks to savings accounts for each Bracero.  The Braceros were never reimbursed for the portion of their wages placed in the forced savings accounts.

Despite significant obstacles including the aging and passing away of many Braceros, statutes of limitation hurdles, and strong defenses to claims under contract and international law, plaintiffs prevailed in a settlement in February 2009.  Under the settlement, the Mexican government provided a payment to Braceros, or their surviving spouses or children, in the amount of approximately $3,500 (USD).  In approving the settlement on February 23, 2009, U.S. District Court Judge Charles Breyer stated:

> I've never seen such litigation in eleven years on the bench that was more difficult than this one.  It was enormously challenging. . . .   It had all sorts of issues . . . that complicated it:  foreign law, constitutional law, contract law, [and] statute of limitations. . . .   Notwithstanding all of these issues that kept surfacing . . . over the years, the plaintiffs persisted.  I actually expected, to tell you the truth, at some point that the plaintiffs would just give up because it was so hard, but they never did.  They never did.  And, in fact, they achieved a settlement of the case, which I find remarkable under all of these circumstances.

**FIRM BIOGRAPHY:**

**PARTNERS**

***ELIZABETH J. CABRASER***, Admitted to practice in California, 1978; U.S. Supreme Court, 1996; U.S. Tax Court, 1979; California Supreme Court, 1978; U.S. District Court, Northern District of California, 1978; U.S. District Court, Eastern District of California, 1979; U.S. District Court, Central District of California and Southern District of California, 1992; U.S. District Court, Eastern District of Michigan, 2005; U.S. Court of Appeals, First Circuit, 2011;

U.S. Court of Appeals, Second Circuit, 2009; U.S. Court of Appeals, Third Circuit, 1994; U.S. Court of Appeals, Fifth Circuit, 1992; U.S. Court of Appeals, Sixth Circuit, 1992; U.S. Court of Appeals, Seventh Circuit, 2001; U.S. Court of Appeals, Ninth Circuit, 1979; U.S. Court of Appeals, Tenth Circuit, 1992; U.S. Court of Appeals, Eleventh Circuit, 1992; U.S. District Court, District of Hawaii, 1986; Fourth Circuit Court of Appeals, 2013.  *Education*:  Boalt Hall School of Law, University of California (J.D., 1978); University of California at Berkeley (A.B., 1975). *Awards and Honors*: "Lawyer of the Year," *Best Lawyers*, recognized in the category of Product Liability Litigation - Plaintiffs for San Francisco, 2014; Legal 500 recommended lawyer, *LegalEase*, 2013; AV Preeminent Peer Review Rated, Martindale-Hubbell; "Outstanding Achievement Award," *Chambers USA*, 2012; "California Litigation Star," *Benchmark Plaintiff*, 2012-2014;  *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*San Francisco's Best Lawyers*," 2005-2014; "Lawdragon 500 Leading Lawyers in America," *Lawdragon*, 2005-2011; "Margaret Brent Women Lawyers of Achievement Award," American Bar Association Commission on Women in the Profession, 2010; "Top 100 Attorneys in California," *Daily Journal*, 2002-2007, 2010-2012; "Top California Women Litigators," *Daily Journal*, 2007, 2010, 2012-2014; "Top 10 Northern California Super Lawyer," *Super Lawyers*, 2011-2013; "Northern California Super Lawyer," *Super Lawyers*, 2004-2013; "Top 100 Northern California Super Lawyers," *Super Lawyers*, 2005-2013; "Top 50 Female Northern California Super Lawyers," *Super Lawyers*, 2005-2013; "Edward Pollock Award," Consumer Attorneys of California, 2008; "Lawdragon 500 Leading Plaintiffs' Lawyers," *Lawdragon*, Winter 2007; "50 Most Influential Women Lawyers in America," *The National Law Journal*, 1998 & 2007; "Award For Public Interest Excellence," University of San Francisco School of Law Public Interest Law Foundation, 2007; "Top 75 Women Litigators," *Daily Journal*, 2005-2006; "Lawdragon 500 Leading Litigators in America," *Lawdragon*, 2006; "Distinguished Leadership Award," Legal Community Against Violence, 2006; "Women of Achievement Award," Legal Momentum (formerly the NOW Legal Defense & Education Fund), 2006; "100 Most Influential Lawyers in America," *The National Law Journal*, 1997, 2000, 2006, & 2013; "Top 30 Securities Litigator," *Daily Journal*, 2005; "Top 50 Women Litigators," *Daily Journal*, 2004; "Citation Award," University of California, Berkeley Boalt Hall, 2003; "Distinguished Jurisprudence Award," Anti-Defamation League, 2002; "Top 30 Women Litigators," *California Daily Journal*, 2002; "Top Ten Women Litigators," *The National Law Journal*, 2001; "Matthew O. Tobriner Public Service Award," Legal Aid Society, 2000; "California Law Business Top 100 Lawyers," *California Daily Journal*, 1998-2000; "California Lawyer of the Year (CLAY)," *California Lawyer*, 1998; "Presidential Award of Merit," Consumer Attorneys of California, 1998; "Public Justice Achievement Award," Public Justice, 1997. *Publications & Presentations*:  "Due Process Pre-Empted: Stealth Preemption As a Consequence of Agency Capture" (2009); "Just Choose: The Jurisprudential Necessity to Select a Single Governing Law for Mass Claims Arising from Nationally Marketed Consumer Goods and Services," *Roger Williams University Law Review* (Winter 2009); "California Class Action Classics," Consumer Attorneys of California (January/February Forum 2009); Co-Author with Joy A. Kruse, Bruce Leppla, "Selective Waiver: Recent Developments in the Ninth Circuit and California," (pts. 1 & 2), *Securities Litigation Report* (West Legalworks May & June 2005); "The Manageable Nationwide Class: A Choice-of-Law Legacy of Phillips Petroleum Co. v. Shutts," *University of Missouri- Kansas City Law Review*, Volume 74, Number 3, Spring 2006; Co-Author with Fabrice N. Vincent, "Class Actions Fairness Act of 2005," *California Litigation*, Vol. 18, No. 3 (2005); Editor-in-Chief, *California Class Actions Practice and Procedures* (2003); "A Plaintiffs' Perspective On The Effect of State Farm v. Campbell On Punitive Damages in Mass Torts" (May 2003); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law*, updated and re-published in *5 Newberg on Class Actions* (ABA 2001-2004); Co-Author, "Mass But Not (Necessarily) Class: Emerging Aggregation Alternatives Under the Federal Rules," *ABA 8th Annual National Institute on Class Actions*, New York (Oct. 15, 2004),

New Orleans (Oct. 29, 2004); Co-Author, "2004 ABA Toxicology Monograph-California State Law," (January 2004); "Human Rights Violations as Mass Torts: Compensation as a Proxy for Justice in the United States Civil Litigation System"; Co-Author with Fabrice N. Vincent, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-Author with Fabrice N. Vincent, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002); Coordinating Editor and Co-Author of California section of the *ABA State Class Action Survey* (2001-2002); "Unfinished Business: Reaching the Due Process Limits of Punitive Damages in Tobacco Litigation Through Unitary Classwide Adjudication," *36 Wake Forest Law Review 979* (Winter 2001); "Symposium: Enforcing the Social Contract through Representative Litigation," *33 Connecticut Law Review 1239* (Summer 2001); "Equity for the Victims, Equity for the Transgressor: The Classwide Treatment of Punitive Damages Claims," *74 Tulane Law Review 2005* (June 2000); "Class Action Trends and Developments After Amchem and Ortiz," in *Civil Practice and Litigation Techniques in Federal and State Courts* (ALI-ABA Course of Study 1999); Contributor/Editor, *Moore's Federal Practice* (1999); Co-Author, "Preliminary Issues Regarding Forum Selection, Jurisdiction, and Choice of Law in Class Actions," (December 1999); "Life After Amchem: The Class Struggle Continues," *31 Loyola Law Review 373* (1998); "Recent Developments in Nationwide Products Liability Litigation: The Phenomenon of Non-Injury Products Cases, the Impact of Amchem and the Trend Toward State Court Adjudication," *Products Liability* (ABA February 1998); Contributor/Editor, *California Causes of Action* (1998); "Beyond Bifurcation: Multi-Phase Structure in Mass Tort Class Actions," *Class Actions & Derivative Suits* (Spring 1997); "The Road Not Taken: Thoughts on the Fifth Circuit's Decertification of the Castano Class," *SB24 ALI-ABA 433* (1996); "Getting the Word Out: Pre-Certification Notice to Class Members Under Rule 23(d)(2)," *Class Actions & Derivative Suits Newsletter* (October 1995); "Mass Tort Class Action Settlements," *24 CTLA Forum 11* (January-February 1994); "Do You Know the Way from San Jose? The Evolution of Environmental and Toxic Nuisance Class Actions," *Class Actions & Derivative Suits* (Spring 1994); "An Oracle of Change? Realizing the Potential of Emerging Fee Award Methodologies for Enhancing The Role and Control of Investors in Derivative and Class Action Suits," *Principles of Corporate Governance* (ALI October 1994); "How To Streamline Complex Litigation: Tailor a Case Management Order to Your Controversy," *21 The Brief 12* (ABA/TIPS Summer 1992); "The Applicability of the Fraud-On-The-Market Theory to Undeveloped Markets: When Fraud Creates the Market," *12 Class Action Reports 402* (1989); "Mandatory Certification of Settlement Classes," *10 Class Action Reports 151* (1987). *Member*: American Academy of Arts and Sciences (Fellow); American Association for Justice (Fight for Justice Campaign; Women Trial Lawyers Caucus; California State Liaison); American Bar Association [Committee on Mass Torts, Past Co-Chair; Committee on Class Actions and Derivative Suits; Tort and Insurance Practice Section (TIPS); Rules & Procedures Committee, Past Vice-Chair; Civil Procedure & Evidence News Letter, Contributor; Business Law Section]; American Law Institute (Council; International Jurisdiction and Judgments and Aggregate Litigation Projects, Advisor); Association of Business Trial Lawyers; Bar Association of San Francisco (Past President, Securities Litigation Section; Board of Directors, 1997-1998; Judiciary Committee); Bar Association of the Fifth Federal Circuit; Bay Area Lawyers for Individual Freedom; California Constitution Revision Commission (1993-1996); California Women Lawyers; Consumer Attorneys of California; Federal Bar Association (Northern District of California Chapter); Federal Civil Rules Advisory Committee (Appointed by Supreme Court, 2011); National Center for State Courts Mass Tort Conference Planning Committee; Ninth Circuit Judicial Conference; Northern District of California Civil Justice Reform Act (Advisory Committee; Advisory Committee on Professional Conduct); Public Justice Foundation; Queen's Bench; State Bar of

California.

**RICHARD M. HEIMANN**, Admitted to practice in Pennsylvania, 1972; District of Columbia, 1974; California, 1975; U.S. District Court, Northern District of California, 1975; U.S. Court of Appeals, Ninth Circuit, 1975; U.S. Supreme Court, 1980; U.S. Court of Appeals, Second Circuit, 1980; U.S. District Court, District of Hawaii, 1986; New York, 2000; District of Colorado. *Education*: Georgetown University (J.D., 1972); *Georgetown Law Journal*, 1971-72; University of Florida (B.S.B.A., with honors, 1969). *Employment*: Mr. Heimann served as Deputy District Attorney and Acting Assistant District Attorney for Tulare County, California, 1974-75, and as an Assistant Public Defender in Philadelphia, Pennsylvania, 1972-74. As a private civil law attorney, Mr. Heimann has tried over 30 civil jury cases, including complex cases such as the successful *FPI/Agretech* and *Edsaco* securities class action trials.  In April 2002 in the *Edsaco* case, a federal jury in San Francisco, California returned a $170.7 million verdict against Edsaco Ltd., which included $165 million in punitive damages. *Awards & Honors*: "Top 100 Northern California Super Lawyers," *Super Lawyers,* 2013; Legal 500 recommended lawyer, *LegalEase*, 2013; AV Preeminent Peer Review Rated, Martindale-Hubbell; "California Litigation Star," *Benchmark Plaintiff*, 2013-2014; *Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*San Francisco's Best Lawyers*," 2007-2014; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2011; California Lawyer of the Year (CLAY) Award, California Lawyer, 2011, 2013; "Lawdragon Finalist," Lawdragon, 2009-2011; "Top 100 Attorneys in California," Daily Journal, 2010-2011; "Top Attorneys In Securities Law," Super Lawyers Corporate Counsel Edition, 2010, 2012; "Northern California Super Lawyer," Super Lawyers, 2004-2013. *Publications & Presentations:* Securities Law Roundtable, *California Lawyer* (March 2013); Securities Law Roundtable, *California Lawyer* (September 2010); Securities Law Roundtable*, California Lawyer* (March 2009); Securities Law Roundtable, *California Lawyer* (April 2008); Securities Law Roundtable, *California Lawyer* (April 2007); Co-Author, "Preliminary Issues Regarding Forum Selection, Jurisdiction, and Choice of Law in Class Actions" (December 1999). *Member*: State Bar of California; Bar Association of San Francisco.

**WILLIAM BERNSTEIN**, Admitted to practice in California, 1975; U.S. Court of Appeals, Ninth Circuit, 1987; U.S. District Court, Northern District of California, 1975; New York and U.S. Supreme Court, 1985; U.S. District Court, Central and Eastern Districts of California, 1991; U.S. District Court, Southern District of California, 1992; U.S. Court of Appeals, Third Circuit, 2008. *Education*: University of San Francisco (J.D., 1975); *San Francisco Law Review*, 1974-75; University of Pennsylvania (B.A., general honors, 1972). *Community Service*: Adjunct Professor of Law, University of San Francisco, Settlement Law, 2006-present; Judge Pro Tem for San Francisco Superior Court, 2000-present; Marin Municipal Court, 1984; Discovery Referee for the Marin Superior Court, 1984-89; Arbitrator for the Superior Court of Marin, 1984-1990. *Awards & Honors*: AV Preeminent Peer Review Rated, Martindale-Hubbell; *Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*San Francisco's Best Lawyers*," 2013-2014; "California Litigation Star," *Benchmark Plaintiff* (ranked as one of California's leading litigators in antitrust law); "Lawdragon Finalist," *Lawdragon*, 2009-2011; "Northern California Super Lawyer," *Super Lawyers*, 2004-2013; "Top Attorneys In Antitrust Law," *Super Lawyers Corporate Counsel Edition*, 2010, 2012; Princeton Premier Registry, Business Leaders and Professionals, 2008-2009; "Top 100 Trial Lawyers in California," American Trial Lawyers Association, 2008; *Who's Who Legal*, 2007; Unsung Hero Award, Appleseed, 2006. *Publications & Presentations*: "The Rise and Fall of Enron's One-To-Many Trading Platform," American Bar Association Antitrust Law Section, Annual Spring Meeting (2005); Co-Author with Donald C. Arbitblit, "Effective Use of Class Action Procedures in California Toxic Tort Litigation," *Hastings West-Northwest Journal of Environmental and*

*Toxic Torts Law and Policy*, No. 3 (Spring 1996). *Member*: Bar Association of San Francisco; Marin County Bar Association (Admin. of Justice Committee, 1988); State Bar of California.

**DONALD C. ARBITBLIT**, Admitted to practice in Vermont, 1979; California and U.S. District Court, Northern District of California, 1986. *Education*: Boalt Hall School of Law, University of California (J.D., 1979); Order of the Coif; Tufts University (B.S., *magna cum laude*, 1974). *Awards and Honors:* Legal 500 recommended lawyer, *LegalEase*, 2013; *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of *"San Francisco's Best Lawyers,"* 2012-2014; AV Preeminent Peer Review Rated, Martindale-Hubbell; "*Lawdragon* Finalist," *Lawdragon*, 2009-2011; "Northern California Super Lawyers," *Super Lawyers*, 2004, 2006-2008. *Publications & Presentations*: Co-Author with Wendy Fleishman, "The Risky Business of Off-Label Use," *Trial* (March 2005); "Comment on Joiner: Decision on the Daubert Test of Admissibility of Expert Testimony," *6 Mealey's Emerging Toxic Torts*, No. 18 (December 1997); Co-author with William Bernstein, "Effective Use of Class Action Procedures in California Toxic Tort Litigation," *3 Hastings West-Northwest Journal of Environmental Law and Policy*, No. 3 (Spring 1996); "The Plight of American Citizens Injured by Transboundary River Pollution," *8 Ecology Law Quarterly*, No. 2 (1979). *Appointments*: Co-Chair, California JCCP Yaz Science Committee, 2010-Present; Member of the Federal Court-appointed Science Executive Committee, and Chair of the Epidemiology/Clinical Trials Subcommittee, *In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D. La.); Member of the Federal Court-appointed Science and Expert Witness Committees in *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation*, MDL No. 1203 (E.D. Pa.), *In re Baycol Products Litigation,* MDL No. 1431 (D. Minn.) and *Rezulin Products Liability Litigation*, MDL No. 1348 (S.D.N.Y.). *Member*: State Bar of California; Bar Association of San Francisco.

**STEVEN E. FINEMAN,** Managing Partner. Admitted to practice in California, 1989; U.S. District Court, Northern, Eastern and Central Districts of California and U.S. Court of Appeals, Ninth Circuit, 1995; U.S. Court of Appeals, Fifth Circuit, 1996; New York, U.S. District Court, Eastern and Southern Districts of New York, U.S. District Court, District of Colorado, 2006; U.S. Court of Appeals, Second Circuit and U.S. Supreme Court, 1997; U.S. District Court for the District of Columbia, 1997. *Education*: University of California, Hastings College of the Law (J.D., 1988); University of California, San Diego (B.A., 1985); Stirling University, Scotland (English Literature and Political Science, 1983-84). *Awards & Honors*: "New York Litigation Star," *Benchmark Plaintiff*, 2013-2014; *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*The New York Area's Best Lawyers*," 2005-2014; Member, *Best Lawyers* Advisory Board, a select group of U.S. and international law firm leaders and general counsel, 2011-2012; "Lawdragon Finalist," *Lawdragon*, 2009-present; "New York Super Lawyers," *Super Lawyers*, 2006-2013; "Top Attorneys In Securities Law," *Super Lawyers Business Edition*, 2008-present; Consultant to the Office of Attorney General, State of New York, in connection with an industry-wide investigation and settlement concerning health insurers' use of the "Ingenix database" to determine usual and customary rates for out-of-network services, April 2008-February 2009; "100 Managing Partners You Need to Know," *Lawdragon*, 2008; "40 under 40," selected as one of the country's most successful litigators under the age of 40, *The National Law Journal*, 2002. *Publications & Presentations*: Global Justice Forum, Presented by Robert L. Lieff – Moderator of Financial Fraud Litigation Panel and Participant on Financing of Litigation Panel (October 4, 2011, Columbia Law School, New York, New York); The Canadian Institute, The 12th Annual Forum on Class Actions – Panel Member, *Key U.S. and Cross-Border Trends: Northbound Impacts and Must-Have Requirements* (September 21, 2011, Toronto, Ontario, Canada); Co-Author with Michael J. Miarmi, "The *Basic*s of Obtaining Class Certification in Securities Fraud Cases: U.S. Supreme

Court Clarifies Standard, Rejecting Fifth Circuit's 'Loss Causation' Requirement," *Bloomberg Law Reports* (July 5, 2011); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Representing Plaintiffs in Large-Scale Litigation (March 2, 2011, Stanford, California); Stanford University Law School — Panel Member, Symposium on the Future of the Legal Profession, (March 1, 2011, Stanford, California); Stanford University Law School, Member, Advisory Forum, Center of the Legal Profession (2011-Present); 4th Annual International Conference on the Globalization of Collective Litigation — Panel Member, Funding Issues: Public versus Private Financing (December 10, 2010, Florida International University College of Law, Miami, Florida); "Bill of Particulars, A Review of Developments in New York State Trial Law," Column, *The Supreme Court's Decisions in Iqbal and Twombly Threaten Access to Federal Courts* (Winter 2010); American Constitution Society for Law and Policy, Access to Justice in Federal Courts — Panel Member, The Iqbal and Twombly Cases (January 21, 2010, New York, New York); American Bar Association, Section of Litigation, The 13th Annual National Institute on Class Actions — Panel Member, Hydrogen Peroxide Will Clear It Up Right Away: Developments in the Law of Class Certification (November 20, 2009, Washington, D.C.); Global Justice Forum, Presented by Robert L. Lieff and Lieff, Cabraser, Heimann & Bernstein, LLP — Conference Co-Host and Moderator of Mediation/Arbitration Panel (October 16, 2009, Columbia Law School, New York, New York); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Courts/U.S. Lawyers in Foreign Courts (April 6, 2009, Stanford, California); Consultant to the Office of Attorney General, State of New York, in connection with an industry-wide investigation and settlement concerning health insurers' use of the "Ingenix database" to determine usual and customary rates for out-of-network services, April 2008-February 2009; Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Courts/U.S. Lawyers in Foreign Courts (April 16, 2008, Stanford, California); Benjamin N. Cardozo Law School, The American Constitution Society for Law & Policy, and Public Justice, Co-Organizer of conference and Master of Ceremonies for conference, Justice and the Role of Class Actions (March 28, 2008, New York, New York); Stanford University Law School and The Centre for Socio-Legal Studies, Oxford University, Conference on The Globalization of Class Actions, Panel Member, Resolution of Class and Mass Actions (December 13 and 14, 2007, Oxford, England); Editorial Board and Columnist, "Federal Practice for the State Court Practitioner," New York State Trial Lawyers Association's "Bill of Particulars," (2005-present); "Bill of Particulars, A Review of Developments in New York State Trial Law," *Federal Multidistrict Litigation Practice* (Fall 2007); "Bill of Particulars, A Review of Developments in New York State Trial Law," *Pleading a Federal Court Complaint* (Summer 2007); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Courts (April 17, 2007, Palo Alto, California); "Bill of Particulars, A Review of Developments in New York State Law," *Initiating Litigation and Electronic Filing in Federal Court* (Spring 2007); "Bill of Particulars, A Review of Developments in New York State Trial Law," Column, *Federal Court Jurisdiction: Getting to Federal Court By Choice or Removal* (Winter 2007); American Constitution Society for Law and Policy, 2006 National Convention, Panel Member, Finding the Balance: Federal Preemption of State Law (June 16, 2006, Washington, D.C.); Global Justice Forum, Presented by Lieff, Cabraser, Heimann & Bernstein, LLP — Conference Moderator and Panel Member on Securities Litigation (May 19, 2006, Paris, France); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's course on Complex Litigation, Foreign Claimants in U.S. Court (April 25, 2006, Stanford, California); Global Justice Forum, Presented by Lieff, Cabraser, Heimann & Bernstein, LLP — Conference Moderator and Speaker and Papers, The Basics of Federal Multidistrict Litigation: How Disbursed Claims are Centralized in U.S. Practice and Basic Principles of Securities Actions for Institutional Investors (May 20, 2005, London, England);

New York State Trial Lawyers Institute, Federal Practice for State Practitioners, Speaker and Paper, *Federal Multidistrict Litigation Practice*, (March 30, 2005, New York, New York), published in "Bill of Particulars, A Review of Developments in New York State Trial Law" (Spring 2005); Stanford University Law School, The Stanford Center on Conflict and Negotiation, Interdisciplinary Seminar on Conflict and Dispute Resolution, Guest Lecturer, In Search of "Global Settlements": Resolving Class Actions and Mass Torts with Finality (March 16, 2004, Stanford, California); Lexis/Nexis, Mealey's Publications and Conferences Group, Wall Street Forum: Mass Tort Litigation, Co-Chair of Event (July 15, 2003, New York, New York); Northstar Conferences, The Class Action Litigation Summit, Panel Member on Class Actions in the Securities Industry, and Paper, Practical Considerations for Investors' Counsel - Getting the Case (June 27, 2003, Washington, D.C.); The Manhattan Institute, Center for Legal Policy, Forum Commentator on Presentation by John H. Beisner, Magnet Courts: If You Build Them, Claims Will Come (April 22, 2003, New York, New York); Stanford University Law School, Guest Lecturer for Professor Deborah Hensler's Courses on Complex Litigation, Selecting The Forum For a Complex Case — Strategic Choices Between Federal And State Jurisdictions, and Alternative Dispute Resolution ADR In Mass Tort Litigation, (March 4, 2003, Stanford, California); American Bar Association, Tort and Insurance Practice Section, Emerging Issues Committee, Member of Focus Group on Emerging Issues in Tort and Insurance Practice (coordinated event with New York University Law School and University of Connecticut Law School, August 27, 2002, New York, New York); Duke University and University of Geneva, "Debates Over Group Litigation in Comparative Perspective," Panel Member on Mass Torts and Products Liability (July 21-22, 2000, Geneva, Switzerland); *New York Law Journal*, Article, Consumer Protection Class Actions Have Important Position, Applying New York's Statutory Scheme (November 23, 1998); Leader Publications, Litigation Strategist, "Fen-Phen," Articles, *The Admissibility of Scientific Evidence in Fen-Phen Litigation and Daubert Developments: Something For Plaintiffs*, Defense Counsel (June 1998, New York, New York); "Consumer Protection Class Actions Have Important Position, Applying New York's Statutory Scheme," New York Law Journal (November 23, 1998); The Defense Research Institute and Trial Lawyer Association, Toxic Torts and Environmental Law Seminar, Article and Lecture, A Plaintiffs' Counsels' Perspective: What's the Next Horizon? (April 30, 1998, New York, New York); Lexis/Nexis, Mealey's Publications and Conference Group, Mealey's Tobacco Conference: Settlement and Beyond 1998, Article and Lecture, The Expanding Litigation (February 21, 1998, Washington, D.C.); New York State Bar Association, Expert Testimony in Federal Court After Daubert and New Federal Rule 26, Article and Lecture, Breast Implant Litigation: Plaintiffs' Perspective on the Daubert Principles (May 23, 1997, New York, New York); Plaintiff Toxic Tort Advisory Council, Lexis/Nexis, Mealey's Publications and Conferences Group (January 2002-2005). *Member*: American Association for Justice; American Bar Association; American Constitution Society; Association of the Bar of the City of New York; Bar Association of the District of Columbia; Civil Justice Foundation (Board of Trustees, 2004-present); Fight for Justice Campaign; Human Rights First; National Association of Shareholder and Consumer Attorneys (Executive Committee, 2009-present); New York State Bar Association; New York State Trial Lawyers Association (Board of Directors, 2001-2004); New York State Trial Lawyers Association's "Bill of Particulars" (Editorial Board and Columnist, "Federal Practice for the State Court Practitioner," 2005-present); Plaintiff Toxic Tort Advisory Council (Lexis/Nexis, Mealey's Publications and Conferences Group, 2002-2005); Public Justice Foundation (President, 2011-2012; Executive Committee, July 2006-present; Board of Directors, July 2002-present); Co-Chair, Major Donors/Special Gifts Committee, July 2009-present; Class Action Preservation Project Committee, July 2005-present); State Bar of California; Supreme Court Historical Society.

**ROBERT J. NELSON**, Admitted to practice in California, 1987; U.S. District Court,

Central District of California, 1987; U.S. District Court, Northern District of California, 1988; U.S. Court of Appeals, Ninth Circuit, 1988; U.S. Court of Appeals, Sixth Circuit, 1995; District of Columbia, 1998; New York, 1999; U.S. District Court, Eastern District of New York, Southern District of New York, 2001; U.S. District Court, Eastern District of California, 2006; U.S. District Court, Northern District of Ohio; U.S. District Court, Southern District of Ohio; U.S. District Court, Middle District of Tennessee. *Education*: New York University School of Law (J.D., 1987): Order of the Coif, Articles Editor, *New York University Law Review*; Root-Tilden-Kern Scholarship Program. Cornell University (A.B., *cum laude* 1982): Member, Phi Beta Kappa; College Scholar Honors Program. London School of Economics (General Course, 1980-81): Graded First. *Employment:* Judicial Clerk to Judge Stephen Reinhardt, U.S. Court of Appeals, Ninth Circuit, 1987-88; Assistant Federal Public Defender, Northern District of California, 1988-93; Legal Research and Writing Instructor, University of California-Hastings College of the Law, 1989-91 (Part-time position). *Awards & Honors*: Legal 500 recommended lawyer, *LegalEase*, 2013; "California Litigation Star," *Benchmark Plaintiff*, 2013-2014; *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*San Francisco's Best Lawyers*," 2012-2014; "Lawdragon Finalist," *Lawdragon*, 2009-2011; "California Lawyer Attorney of the Year (CLAY)" Award, *California Lawyer*, 2008, 2010; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2007, 2010; "Northern California Super Lawyer," *Super Lawyers*, 2004-2013; "San Francisco Trial Lawyer of the Year Finalist," San Francisco Trial Lawyers' Association, 2007. *Publications:* False Claims Roundtable, California Lawyer (January 2013); False Claims Roundtable, California Lawyer (April 2012); False Claims Roundtable, California Lawyer (June 2011); False Claims Roundtable, *California Lawyer* (June 2010); Product Liability Roundtable, *California Lawyer* (March 2010); Product Liability Roundtable, *California Lawyer* (July 2009); "Class Action Treatment of Punitive Damages Issues after *Philip Morris v. Williams*: We Can Get There from Here," 2 Charleston Law Review 2 (Spring 2008) (with Elizabeth J. Cabraser); Product Liability Roundtable, California Lawyer (December 2007); Contributing Author, California Class Actions Practice and Procedures (Elizabeth J. Cabraser editor in chief, 2003); "The Importance of Privilege Logs," The Practical Litigator, Vol. II, No. 2 (March 2000) (ALI-ABA Publication); "To Infer or Not to Infer a Discriminatory Purpose: Rethinking Equal Protection Doctrine," 61 New York University Law Review 334 (1986). *Member*: State Bar of California; District of Columbia Bar Association; New York Bar Association; American Bar Association; Fight for Justice Campaign; Bar Association of San Francisco; Consumer Attorneys of California; American Association for Justice; San Francisco Trial Lawyers Association.

**KELLY M. DERMODY**, Admitted to practice in California (1994); U.S. Supreme Court (2013); U.S. District Court, Northern District of California (1995); U.S. District Court, Central District of California; U.S. District Court, Eastern District of California (2012); U.S. Court of Appeals for the First Circuit (2012); U.S. Court of Appeals for the Second Circuit (2010); U.S. Court of Appeals for the Third Circuit (2001); U.S. Court of Appeals for the Fourth Circuit (2008); U.S. Court of Appeals for the Sixth Circuit (2008); U.S. Court of Appeals for the Seventh Circuit (2006); U.S. Court of Appeals for the Ninth Circuit (2007); U.S. District Court of Colorado (2007). *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D. 1993); Moot Court Executive Board (1992-1993); Articles Editor, *Industrial Relations Law Journal/Berkeley Journal of Employment and Labor Law* (1991-1992); Harvard University (A.B. *magna cum laude*, 1990), Senior Class Ames Memorial Public Service Award. *Employment*: Law Clerk to Chief Judge John T. Nixon, U.S. District Court, Middle District of Tennessee, 1993-1994; Adjunct Professor of Law, Golden Gate University School of Law, Employment Law (Spring 2001). *Awards & Honors:* "Lawyer of the Year," *Best Lawyers*, recognized in the category of Employment Law – Individuals for San Francisco, 2014; Legal 500 recommended lawyer, *LegalEase*, 2013; "Top 100 Attorneys in California, *Daily Journal,* 2012;

"Top 75 Labor and Employment Attorneys in California," *Daily Journal*, 2011-2013; "Top California Women Litigators," *Daily Journal*, 2007, 2010, 2012-2014; AV Preeminent Peer Review Rated, Martindale-Hubbell; "California Litigation Star," *Benchmark Plaintiff*, 2013-2014; *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*San Francisco's Best Lawyers*," 2010-2014; "Northern California Super Lawyer," *Super Lawyers*, 2004-2013; "Women of Achievement Award," Legal Momentum (formerly the NOW Legal Defense & Education Fund), 2011; "Top 50 Female Northern California Super Lawyers," *Super Lawyers*, 2007-2013; "Top 100 Northern California Super Lawyers," *Super Lawyers*, 2007, 2009, 2011, 2013; "Lawdragon 500 Leading Lawyers in America," *Lawdragon*, 2010-2011; "Florence K. Murray Award," National Association of Women Judges, 2010 (for influencing women to pursue legal careers, opening doors for women attorneys, and advancing opportunities for women within the legal profession); "Irish Legal 100" Finalist, *The Irish Voice*, 2010; "Lawdragon Finalist," *Lawdragon*, 2007-2009; "Community Service Award," Bay Area Lawyers for Individual Freedom, 2008; "Community Justice Award," Centro Legal de la Raza, 2008; "Award of Merit," Bar Association of San Francisco, 2007; "California Lawyer Attorney of the Year (CLAY) Award," *California Lawyer*, 2007; "Lawdragon 500 Leading Plaintiffs' Lawyers," *Lawdragon*, Winter 2007; "Trial Lawyer of the Year Finalist," Public Justice Foundation, 2007; California's "Top 20 Lawyers Under 40," *Daily Journal*, 2006; "Consumer Attorney of the Year" Finalist, Consumer Attorneys of California, 2006; "Living the Dream Partner," Lawyers' Committee for Civil Rights of the San Francisco Bay Area, 2005; "Top Bay Area Employment Attorney," *The Recorder*, 2004. *Publications & Presentations*: "Class Actions: Latest Developments in Litigating and Settling Employment Discrimination Class Actions" American Bar Association Labor and Employment Section Equal Employment Opportunity Committee (Mid-Year Meeting 2001); "A Road Map to Discovery in Employment Discrimination and Wage/Hour Class Actions," with James M. Finberg, Glasser Legal Works Seminar (2000); "Employment Discrimination Class Actions in the Wake of *Allison v. Citgo Petroleum Corp.* and Fed.R.Civ.P. 23(f)," Federal Bar Association Convention (1999); Co-Author with James Finberg, "Discovery in Employment Discrimination Class Actions," *Litigation and Settlement of Complex Class Actions* (Glasser Legal Works 1998). *Member*: American Bar Association; Labor and Employment Law Section (Governing Council, 2009-present; Co-Chair, Section Conference, 2008-2009; Vice-Chair, Section Conference, 2007-2008; Co-Chair, Committee on Equal Opportunity in the Legal Profession, 2006-2007; Co-Chair Committee on Equal Employment Opportunity); Bar Association of San Francisco (Board of Directors, 2005-2012; President, 2011-2012; President-Elect, 2010-2011; Treasurer, 2009-2010; Secretary, 2008-2009; Litigation Section; Executive Committee, 2002-2005); Northern District of California Lawyer Representative to the Ninth Circuit Judicial Conference (2007-2010); Lawyers' Committee for Civil Rights of the San Francisco Bay Area (Board of Directors, 1998-2005; Secretary, 1999-2003; Co-Chair, 2003-2005); National Center for Lesbian Rights (Board of Directors, 2002-2008; Co-Chair, 2005-2006); National Association of Women Judges (Independence of the Judiciary Co-Chair, 2011-present; Resource Board, 2005-present; Co-Chair, 2009-2011); Carver Healthy Environments and Response to Trauma in Schools ("HEARTS") Project (Steering Committee, 2007-present); Pride Law Fund (Board of Directors, 1995-2002; Secretary, 1995-1997; Chairperson, 1997-2002); Pride Law Fund (Board of Directors, 1995-2002; Secretary, 1995-1997; Chairperson, 1997-2002); Equal Rights Advocates (Litigation Committee, 2000-2002); National Employment Lawyers Association; Consumer Attorneys of California; Bay Area Lawyers for Individual Freedom; Public Justice Foundation; State Bar of California.

**JONATHAN D. SELBIN**, Admitted to practice in California; District of Columbia; New York; U.S. Court of Appeals, Third Circuit; U.S. Court of Appeals, Fifth Circuit; U.S. Court of Appeals, Sixth Circuit; U.S. Court of Appeals, Seventh Circuit; U.S. Court of Appeals, Ninth

Circuit; U.S. Court of Appeals, Eleventh Circuit; U.S. District Court, Northern District of California; U.S. District Court, Central District of California; U.S. District Court, Northern District of Illinois; U.S. District Court, Southern District of New York; U.S. District Court, Eastern District of New York; U.S. District Court, Eastern District of Michigan; U.S. District Court, Northern District of Florida; U.S. Supreme Court; U.S. District Court, Eastern District of Wisconsin. U.S. Court of Appeals, Tenth Circuit, 2014.  *Education*:  Harvard Law School (J.D., *magna cum laude*, 1993); University of Michigan (B.A., *summa cum laude*, 1989). *Employment*:  Law Clerk to Judge Marilyn Hall Patel, U.S. District Court, Northern District of California, 1993-95.  *Awards & Honors*: "New York Litigation Star," *Benchmark Plaintiff*, 2013-2014; *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*The New York Area's Best Lawyers*," 2013; "New York Super Lawyers," *Super Lawyers*, 2006-2013; "*Lawdragon* Finalist," *Lawdragon*, 2009.  *Publications & Presentations*: On Class Actions (2009); Contributing Author, "Ninth Circuit Reshapes California Consumer-Protection Law," American Bar Association (July 2012); Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor-in-chief, 2003); "Bashers Beware:  The Continuing Constitutionality of Hate Crimes Statutes After R.A.V.," 72 *Oregon Law Review* 157 (Spring, 1993).  *Member*: American Association for Justice; American Bar Association; District of Columbia Bar Association; New York Advisory Board, Alliance for Justice; New York State Bar Association; New York State Trial Lawyers Association; State Bar of California.

**MICHAEL W. SOBOL**, Admitted to practice in Massachusetts, 1989; California, 1998; United States District Court, District of Massachusetts, 1990; U.S. District Court, Northern District of California, 2001; U.S. District Court, Central District of California, 2005; U.S. Court of Appeals for the Ninth Circuit (2009); U.S. Court of Appeals for the Eleventh Circuit (2012). *Education*: Boston University (J.D., 1989); Hobart College (B.A., *cum laude*, 1983).  *Prior Employment*: Lecturer in Law, Boston University School of Law, 1995-1997.  *Awards & Honors:* "Top 100 Northern California Super Lawyers," *Super Lawyers*, 2013; "Top 100 Attorneys in California," *Daily Journal*, 2012; *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*San Francisco's Best Lawyers*," 2013-2014; "California Litigation Star," *Benchmark Plaintiff*, 2013-2014; "Trial Lawyer of the Year Finalist," Public Justice, 2012; "Northern California Super Lawyer," *Super Lawyers*, 2012-2013; "Consumer Attorney of the Year Finalist," Consumer Attorneys of California, 2011; "*Lawdragon* Finalist," *Lawdragon*, 2009.  *Publications & Presentations*: Panelist, National Consumer Law Center's 15th Annual Consumer Rights Litigation Conference, Class Action Symposium; Panelist, Continuing Education of the Bar (C.E.B.) Seminar on Unfair Business Practices—California's Business and Professions Code Section 17200 and Beyond; Columnist, *On Class Actions*, Association of Business Trial Lawyers, 2005 to present; *The Fall of Class Action Waivers* (2005); *The Rise of Issue Class Certification* (2006); *Proposition 64's Unintended Consequences* (2007); *The Reach of Statutory Damages* (2008).  *Member*:  State Bar of California; Bar Association of San Francisco; Consumer Attorneys of California, Board of Governors, (2007-2008, 2009-2010); National Association of Consumer Advocates.

**FABRICE N. VINCENT**, Admitted to practice in California, 1992; U.S. District Court, Northern District of California, Central District of California, Eastern District of California, Ninth Circuit Court of Appeals, 1992.  *Education*: Cornell Law School (J.D., *cum laude*, 1992); University of California at Berkeley (B.A., 1989).  *Awards & Honors:* "Outstanding Subcommittee Chair for the Class Actions & Derivative Suits," *ABA Section of Litigation*, 2013; *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*San Francisco's Best Lawyers*," 2012-2014; "Northern California Super Lawyer," *Super Lawyers*, 2006–2013.  *Publications & Presentations*: Lead Author, *Citizen Report on Utility Terrain Vehicle (UTV) Hazards and Urgent Need to Improve Safety and Performance*

*Standards; and Request for Urgent Efforts To Increase Yamaha Rhino Safety and Avoid Needless New Catastrophic Injuries, Amputations and Deaths*, Lieff Cabraser Heimann & Bernstein, LLP (2009); Co-Author with Elizabeth J. Cabraser, "Class Actions Fairness Act of 2005," *California Litigation,* Vol. 18, No. 3 (2005); Co-Editor, *California Class Actions Practice and Procedures* (2003-06); Co-Author, "Ethics and Admissibility: Failure to Disclose Conflicts of Interest in and/or Funding of Scientific Studies and/or Data May Warrant Evidentiary Exclusions," *Mealey's December Emerging Drugs Reporter* (December 2002); Co-author, "The Shareholder Strikes Back: Varied Approaches to Civil Litigation Claims Are Available to Help Make Shareholders Whole," *Mealey's Emerging Securities Litigation Reporter* (September 2002); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," *Survey of State Class Action Law* (ABA 2000-09), updated and re-published in 5 *Newberg on Class Actions* (2001-09); Coordinating Editor and Co-Author of California section of the ABA State Class Action Survey (2001-06); Co-Editor-In-Chief, *Fen-Phen Litigation Strategist* (Leader Publications 1998-2000); Author of "Off-Label Drug Promotion Permitted" (Oct. 1999); Co-Author, "The Future of Prescription Drug Products Liability Litigation in a Changing Marketplace," and "Six Courts Certify Medical Monitoring Claims for Class Treatment," 29 *Forum* 4 (Consumer Attorneys of California 1999); Co-Author, *Class Certification of Medical Monitoring Claims in Mass Tort Product Liability Litigation* (ALI-ABA Course of Study 1999); Co-Author, "How Class Proofs of Claim in Bankruptcy Can Help in Medical Monitoring Cases," (Leader Publications 1999); Author, "AHP Loses Key California Motion In Limine," (February 2000); Co-Author, Introduction, "Sanctioning Discovery Abuses in the Federal Court," (LRP Publications 2000); "With Final Approval, Diet Drug Class Action Settlement Avoids Problems That Doomed Asbestos Pact," (Leader Publications 2000); Author, "Special Master Rules Against SmithKline Beecham Privilege Log," (November 1999). *Member*: American Association for Justice; Association of Business Trial Lawyers; State Bar of California; Bar Association of San Francisco; American Bar Association; Fight for Justice Campaign; Association of Business Trial Lawyers; Society of Automotive Engineers.

**DAVID S. STELLINGS**, Admitted to practice in New York, 1994; New Jersey; 1994; U.S. District Court, Southern District of New York, 1994. *Education*: New York University School of Law (J.D., 1993); Editor, *Journal of International Law and Politics;* Cornell University (B.A., *cum laude*, 1990). *Awards & Honors*: "Trial Lawyer of the Year Finalist," Public Justice, 2012; "New York Metro Super Lawyer," *Super Lawyers*, 2012-2013; "*Lawdragon* Finalist, *Lawdragon*, 2009. *Member*: New York State Bar Association; New Jersey State Association; Bar Association of the City of New York; American Bar Association.

**ERIC B. FASTIFF,** Admitted to practice in California, 1996; District of Columbia, 1997; U.S. Courts of Appeals for the Third, Ninth and Federal Circuit; U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California, District of Columbia; U.S. District Court, Eastern District of Wisconsin; U.S. Court of Federal Claims. *Education*: Cornell Law School (J.D., 1995); Editor-in-Chief, *Cornell International Law Journal;* London School of Economics (M.Sc.(Econ.), 1991); Tufts University (B.A., *cum laude, magno cum honore in thesi*, 1990). *Employment*: Law Clerk to Hon. James T. Turner, U.S. Court of Federal Claims, 1995-1996; International Trade Specialist, Eastern Europe Business Information Center, U.S. Department of Commerce, 1992. *Awards & Honors*: "California Litigation Star," *Benchmark Plaintiff*, 2013-2014; Legal 500 recommended lawyer, *LegalEase*, 2013; *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*San Francisco's Best Lawyers*," 2013-2014; "Northern California Super Lawyer," *Super Lawyers*, 2010-2013; "Top Attorneys in Business Law," *Super Lawyers* Corporate Counsel Edition, 2012; "*Lawdragon* Finalist," *Lawdragon*, 2009. *Publications & Presentations*: General Editor, *California Class Actions Practice and Procedures*, (2003-2009); Coordinating Editor and Co-Author of

California section of the *ABA State Class Action Survey* (2003-2008); Author, "US Generic Drug Litigation Update," 1 *Journal of Generic Medicines* 212 (2004); Author, "The Proposed Hague Convention on the Recognition and Enforcement of Civil and Commercial Judgments: A Solution to Butch Reynolds's Jurisdiction and Enforcement Problems," 28 *Cornell International Law Journal* 469 (1995). *Member*: American Antitrust Institute (Advisory Board); State Bar of California; District of Columbia Bar Association; Bar Association of San Francisco; Bar of the U.S. Court of Federal Claims; Children's Day School (Board of Trustees); Editorial Board Member, *Journal of Generic Medicines*, 2003-present; Jewish Home for the Aged (Board of Trustees); Menorah Park (Board of Trustees); SF Works (Board of Trustees).

**WENDY R. FLEISHMAN**, Admitted to practice in New York, 1992; Pennsylvania, 1977; U.S. Supreme Court, 2000; U.S. Court of Appeals 2nd Circuit, 1998; U.S. Court of Appeals 3rd Circuit, 2010; U.S. Court of Appeals 8th Circuit, 2009; U.S. Court of Appeals 9th Circuit, 2010; U.S. District Court, District of Arizona, 2013; U.S. District Court, Northern District of California; U.S. District Court, Western District of New York, 2012; U.S. District Court Eastern District of New York, 1999; U.S. District Court Northern District of New York, 1999; U.S. District Court Southern District of New York, 1995; U.S. District Court, Eastern District of Wisconsin, 2013; U.S. District Court, Eastern District of Pennsylvania, 1984; U.S. District Court, Western District of Pennsylvania, 2001; U.S. Court of Appeals 5th Circuit, March 5, 2014. *Education*: University of Pennsylvania (Post-Baccalaureate Pre-Med, 1982); Temple University (J.D., 1977); Sarah Lawrence College (B.A., 1974). *Employment*: Skadden, Arps, Slate, Meagher & Flom LLP in New York (Counsel in the Mass Torts and Complex Litigation Department), 1993-2001; Fox, Rothschild O'Brien & Frankel (partner), 1988-93 (tried more than thirty civil, criminal, employment and jury trials, and AAA arbitrations, including toxic tort, medical malpractice and serious injury and wrongful death cases); Ballard Spahr Andrews & Ingersoll (associate), 1984-88 (tried more than thirty jury trials on behalf of the defense and the plaintiffs in civil personal injury and tort actions as well as employment—and construction—related matters); Assistant District Attorney in Philadelphia, PA, 1977-84 (in charge of and tried major homicide and sex crime cases). *Awards and Honors*: "New York Litigation Star," *Benchmark Plaintiff*, 2013-2014; Legal 500 recommended lawyer, *LegalEase*, 2013; AV Preeminent Peer Review Rated, Martindale-Hubbell; "New York Super Lawyers," *Super Lawyers*, 2006-2013; Officer of New York State Trial Lawyers Association, 2010-present; New York State Academy of Trial Lawyers, 2011; "*Lawdragon* Finalist," *Lawdragon*, 2009. *Publications & Presentations*: "Where Do You Want To Be? Don't Get Left Behind, Creating a Vision for Your Practice," Minority Caucus and Women Trial Lawyers Caucus (July 22, 2013); Editor, Brown & Fleishman, "Proving and Defending Damage Claims: A Fifty-State Guide" (2007-2010); Co-Author with Donald Arbitblit, "The Risky Business of Off-Label Use," *Trial* (March 2005); Co-Author, "From the Defense Perspective," *Scientific Evidence, Chapter 6, Aspen Law Pub* (1999); Editor, *Trial Techniques Newsletter*, Tort and Insurance Practices Section, American Bar Association (1995-1996; 1993-1994); "How to Find, Understand, and Litigate Mass Torts," NYSTLA Mass Torts Seminar (April 2009); "Ethics of Fee Agreements in Mass Torts," AAJ Education Programs (July 2009). *Appointments:* Lead Counsel, Joint Coordinated California Litigation, *Amo Lens Solution Litigation*; Co-Liaison, *In re Zimmer Durom Cup Hip Implant Litigation*; Plaintiffs' Steering Committee, DePuy ASR Hip Implant Litigation; Liaison, NJ Ortho Evra Patch Product Liability Litigation; Co-Liaison, NJ Reglan Mass Tort Litigation; Co-Chair, Mealey's Drug & Medical Device Litigation Conference (2007); Executive Committee, *In re ReNu MoistureLoc Product Liability Litigation*, MDL; Discovery Chair, *In re Guidant Products Liability Litigation*; Co-Chair Science Committee, *In re Baycol MDL Litigation*; Pricing Committee, *In re Vioxx MDL Litigation*. *Member*: New York State Trial Lawyers Association (Treasurer, 2010-present; Board of Directors, 2004-Present); Association of the Bar of the City of New York (Product Liability Committee, 2007-present;

Judiciary Committee, 2004-Present); American Bar Association (Annual Meeting, Torts & Insurance Practices Section, NYC, Affair Chair, 1997; Trial Techniques Committee, Torts and Insurance Practices, Chair-Elect, 1996); American Association for Justice (Board of Governors); Pennsylvania Bar Association (Committee on Legal Ethics and Professionalism, 1993-Present; Committee on Attorney Advertising, 1993-Present; Vice-Chair, Task Force on Attorney Advertising, 1991-92); State Bar of New York; Federal Bar Association; Member, Gender and Race Bias Task Force of the Second Circuit, 1994-present; Deputy Counsel, Governor Cuomo's Screening Committee for New York State Judicial Candidates, 1993-94; New York Women's Bar Association; New York County Lawyers; Fight for Justice Campaign; PATLA; Philadelphia Bar Association (Member of Committee on Professionalism 1991-92).

**PAULINA do AMARAL**, Admitted to practice in New York, 1997; California, 1998; U.S. Court of Appeals, Ninth Circuit, 1999; U.S. District Court, Southern District of New York, 2004; U.S. District Court, Western District of Michigan, 2004; U.S. District Court, Eastern District of Michigan, 2007. *Education*: University of California Hastings College of Law (J.D., 1996); Executive Editor, *Hastings Constitutional Law Quarterly*; National Moot Court Competition Team, 1995; Moot Court Executive Board; University of Rochester (B.A., 1988). *Employment*: Law Clerk to Chief Judge Richard Alan Enslen, U.S. District Court, Western District of Michigan, 1996-98. *Awards & Honors:* Legal 500 recommended lawyer, *LegalEase*, 2013. *Member*: Association of the Bar of the City of New York, (2007-2010, Committee on the Judiciary); American Bar Association; State Bar of New York; State Bar of California; Bar Association of San Francisco; American Trial Lawyers Association; New York State Trial Lawyers Association.

**JOY A. KRUSE**, Admitted to practice in Washington, D.C., 1984; California; U.S. Supreme Court; U.S. Courts of Appeals for the Ninth and Federal Circuits; U.S. District Courts for the Northern, and Eastern Districts of California; U.S. District Court for the Central District of California, 2006; U.S. District Court, District of Colorado, 2006; U.S. District Court, Eastern District of Wisconsin, 2001. *Education*: Harvard Law School (J.D., 1984); Wellesley College (B.A., 1977). *Employment*: Assistant Federal Public Defender, Northern District of California, 1992-96; Public Defender Service, Washington D.C., 1984-89. *Awards & Honors:* AV Preeminent Peer Review Rated, Martindale-Hubbell; *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*San Francisco's Best Lawyers*," 2013-2014; "*Lawdragon* Finalist," *Lawdragon*, 2009. *Presentations & Publications*: Panelist, "Corporate Governance Litigation," PLI Securities Litigation & Enforcement Institute, San Francisco (October 15, 2009); Co-Author with Richard M. Heimann and Sharon M. Lee, "Post-*Tellabs* Treatment of Confidential Witnesses in Federal Securities Litigation," *Journal of Securities Law, Regulation, & Compliance* (Vol. 2, No. 3 June 2009); "*California Lawyer* Securities Law Roundtable" (October 2008); Co-Author with Elizabeth J. Cabraser, Bruce Leppla, "Selective Waiver: Recent Developments in the Ninth Circuit and California," (pts. 1 & 2), *Securities Litigation Report* (West Legalworks May and June 2005). *Member*: Phi Beta Kappa; State Bar of California; Bar Association of San Francisco; Equal Rights Advocate (Member; Board of Directors); Northern District of California Practice Program Committee (Member; Board of Directors).

**RACHEL GEMAN**, Admitted to practice in New York, 1998; Southern and Eastern Districts of New York, 1999; U.S. District Court, Eastern District of Michigan, 2005; U.S. District Court of Colorado, 2007; U.S. Supreme Court. *Education*: Columbia University School of Law (J.D. 1997); Stone Scholar; Equal Justice America Fellow; Human Rights Fellow; Editor, *Columbia Journal of Law and Social Problems*; Harvard University (A.B. *cum laude* 1993). *Employment*: Adjunct Professor, New York Law School; Special Advisor, United States Mission to the United Nations, 2000; Law Clerk to Judge Constance Baker Motley, U.S. District Court,

Southern District of New York, 1997-98. *Awards & Honors*: "Lawyer of the Year," *Best Lawyers*, recognized in the category of Employment Law – Individuals for San Francisco, 2014; "New York Super Lawyer," *Super Lawyers*, 2013; Legal 500 recommended lawyer, *LegalEase*, 2013; AV Preeminent Peer Review Rated, Martindale-Hubbell; *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*The New York Area's Best Lawyers*," 2011-2014; "Rising Stars for New York Metro," *Super Lawyers*, a publication of Thomson Reuters , 2011; *Distinguished Honor Award*, *United States Department of State*, 2001. *Publications & Presentations*: Author, "Whistleblower Under Pressure," *Trial Magazine* (April 2013); Panelist, "Class Certification Strategies: Dukes in the Rear View Mirror," Impact Fund Class Action Conference (2013); Author & Panelist, "Who is an Employer Under the FLSA?" National Employment Lawyers Association Conference (2013); Panelist, "Fraud and Consumer Protection: Plaintiff and Defense Strategies," Current Issues in Pharmaceutical and Medical Device Litigation, ABA Section of Litigation (2012); Participant and Moderator, "Ask the EEOC:  Current Insights on Enforcement and Litigation," ABA Section of Labor and Employment Law (2011); Panelist, "Drafting Class Action Complaints," New York State Bar Association (2011); Participant and Moderator, "Ask the EEOC: Current Insights on Enforcement and Litigation," ABA Section of Labor and Employment Law (2011); *The New York Employee Advocate*, Co-Editor (2005-2009), Regular Contributor (2008-present); Moderator, "Hot Topics in Wage and Hour Class and Collective Actions," American Association for Justice Tele-Seminar (2010); Author & Panelist, "Class Action Considerations: Certification, Settlement, and More," American Conference Institute Advanced Forum (2009); Panelist, "Rights Without Remedies," American Constitutional Society National Convention, Revitalizing Our Democracy: Progress and Possibilities (2008); Panelist, Fair Measure: Toward Effective Attorney Evaluations, American Bar Association Annual Meeting (2008); Panelist, "Getting to Know You: Use and Misuse of Selection Devices for Hiring and Promotion," ABA Labor & Employment Section Annual Meeting (2008); Author, "'Don't I Think I Know You Already?': Excessive Subjective Decision-Making as an Improper Tool for Hiring and Promotion," ABA Labor & Employment Section Annual Meeting (2008); Author & Panelist, "Ethical Issues in Representing Workers in Wage & Hour Actions," Representing Workers in Individuals & Collective Actions under the FLSA (2007); Author & Panelist, "Evidence and Jury Instructions in FLSA Actions," Georgetown Law Center/ACL-ABA (2007); Author & Panelist, "Crucial Events in the 'Life' of an FLSA Collective Action: Filing Considerations and the Two-step 'Similarly-Situated' Analysis," National Employment Lawyers Association, Annual Convention (2006); Author & Panelist, "Time is Money, Except When It's Not: Compensable Time and the FLSA," National Employment Lawyers Association, Impact Litigation Conference (2005); Panelist, "Electronic Discovery," Federal Judicial Center & Institute of Judicial Administration, Workshop on Employment Law for Federal Judges (2005); "Image-Based Discrimination and the BFOQ Defense," *EEO Today: The Newsletter of the EEO Committee of the ABA's Section of Labor and Employment Law*, Vol. 9, Issue 1 (2004); "Fair Labor Standards Act Overtime Exemptions: Proposed Regulatory Changes," *New York State Bar Association Labor and Employment Newsletter* (2004); Chair & Panelist, "Current Topics in Fair Labor Standards Act Litigation," Conference, Association of the Bar of the City of New York (2003); Moderator, "Workforce Without Borders," ABA Section of Labor & Employment Law, EEOC Midwinter Meeting (2003). *Member*: American Bar Association [Labor and Employment Law Section; Standing Committee on Equal Employment Opportunity (Co-Chair, 2009-present)]; Association of the Bar of the City of New York; National Employment Lawyers' Association/New York (Board Member); Public Justice Foundation.

**DANIEL P. CHIPLOCK**, Admitted to practice in New York, 2001; U.S. District Court, Southern District of New York, 2001; U.S. District Court, Eastern District of New York, 2001; U.S. District Court, District of Colorado, 2006; U.S. Court of Appeals for the Second Circuit,

2009; U.S. Court of Appeals for the Sixth Circuit, 2011; U.S. Supreme Court. *Education*: Stanford Law School (J.D., 2000); Article Review Board, *Stanford Environmental Law Journal*; Recipient, Keck Award for Public Service; Columbia University (B.A., *summa cum laude*, 1994); Phi Beta Kappa. *Member*:  State Bar of New York; American Association for Justice; Fight for Justice Campaign; Public Justice; National Association of Shareholder and Consumer Attorneys (Executive Committee/Secretary); American Constitution Society for Law and Policy (Advocate's Circle). *Classes/Seminars:* "Fraud on the Market," Federal Bar Council, Feb. 25, 2014 (CLE panel participant).

**STEPHEN H. CASSIDY**, Admitted to practice in California, 1989; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1997. *Education*: Hastings College of the Law (J.D., *magna cum laude*, 1989); Associate Managing Editor, *Hastings International and Comparative Law Review*, 1988-1989; Order of the Coif; Member, Thurston Society; Recipient, American Jurisprudence Awards for Real Property, Evidence and American Legal History; Georgetown University (B.S.F.S., 1986). *Employment*: Law Clerk to Magistrate-Judge Joan S. Brennan, U.S. District, Northern District of California, 1989-90; Alameda County Public Defender's Office (1990-1991); Marin County Public Defender's Office (1991-1992); Motions Attorney, U.S. Court of Appeals, Ninth Circuit, 1992-94, 1996-97. *Awards & Honors:* AV Preeminent Peer Review Rated, Martindale-Hubbell. *Publications & Presentations*:  TVA + Coal Ash, American Association for Justice, July 2013; "Magnetix Toy Injuries: A Failure to Inform Safety Regulators," OpEd News (2009); "Restoring Patient Rights and Promoting Safer Medical Device," OpEd News (2009); "Internet Marketing for Plaintiffs' Firms," CAOC Conference (May 2004); "Enhancing the Role of Law Firm Marketing Departments," LexisNexis Law Firm Marketers' Roundtable (November 2003); Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); Co-Author, "Decisions Interpreting California's Rules of Class Action Procedure," in *Survey of State Class Action Law* (ABA 2001); "The Newest Member of the Nuclear Club: Pakistan's Drive for a Nuclear Weapon's Capability," 12 *Hastings Int'l & Comp. L. Rev.* 679 (1989). *Member*:  State Bar of California; Bar Association of San Francisco; American Bar Association (Litigation Section); Public Justice; Fight for Justice Campaign; Consumer Attorneys of California; San Francisco Trial Lawyers Association; Alameda Contra Costa Trial Lawyers' Association; American Association for Justice

**ELIZABETH A. ALEXANDER,** Admitted to practice in Tennessee, 1998; U.S. Court of Appeals, Sixth Circuit, 2001; U.S. District Court, Middle District of Tennessee, 2000; U.S. District Court, Eastern District of Tennessee, 2002. *Education*: Vanderbilt University Law School (J.D., 1998); President, Criminal Law Association; Moot Court Board; Vanderbilt University Honor Committee; Hollins College (B.A., 1993). *Honors & Awards*: *Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*Nashville's Best Lawyers*," 2013-2014; "Top Attorneys In Environmental Law," *Super Lawyers* Corporate Counsel Edition, 2012; "Mid-South Super Lawyer," *Super Lawyers*, 2011-2013; National Trial Lawyer's Top 100 Trial Lawyers, 2011; "Mid-South Rising Stars," *Super Lawyers*, 2008-2010; "*Lawdragon* 500 New Stars" and "*Lawdragon* 3000 Leading Plaintiffs' Lawyers in America," *Lawdragon*, 2006-2007. *Publications & Presentations*: Advanced Federal Court Practice Seminar, Nashville Bar Association, November 2013; TVA + Coal Ash, American Association for Justice, July 2013; Editor, Tennessee Chapter of the *ABA Survey of State Class Action Law* (2003-2013); "Consumer Class Actions Against Financial Institutions," Lorman Education Services, July 2004; Panelist, National Consumer Law Center, Consumer Rights Litigation Conference, "Pleading Standards—the Impact of *Twombly* and *Iqbal* on Class Action Complaints." *Prior Employment*: Associate, Dodson, Parker, Dinkins & Behm (2002-03); Associate, Wyatt, Tarrant & Combs (2000-2002); Law Clerk, Honorable Thomas A. Higgins,

U.S. District Court for the Middle District of Tennessee (1998-2000). *Member*: American Bar Association (Labor and Employment Law Section Equal Employment Opportunity Committee, Co-Chair, Basics Committee 2005-2006; Chair of Internal Marketing and Mentoring Committee 2006-2007); Lawyers' Association for Women (Director, 2003-2005); Nashville Bar Association (Board of Directors, Young Lawyers Division, Fellow); National Bar Association; National Employment Lawyers' Association; Tennessee Association for Justice (Board of Governors, 2012); Tennessee Bar Association.

**MARK P. CHALOS**, Admitted to practice in Tennessee, 1998; U.S. Court of Appeals, Sixth Circuit, 1998; U.S. District Court, Middle District of Tennessee, 2000; U.S. District Court, Western District of Tennessee, 2002; U.S. District Court, Eastern District of Tennessee, 2006; U.S. District Court, Northern District of Florida, 2006; U.S. District Court, Northern District of California, 2007; U.S. Supreme Court, 2012. *Education*:  Emory University School of Law (J.D., 1998); Dean's List; Award for Highest Grade, Admiralty Law; Research Editor, *Emory International Law Review*; Phi Delta Phi Legal Fraternity; Vanderbilt University (B.A., 1995). *Honors & Awards*: "Tennessee Litigation Star," *Benchmark Plaintiff*, 2013-2014; *The Best Lawyers in America*, based on peer and blue ribbon panel review, selected for list of "*Nashville's Best Lawyers*," 2012-2014; "Mid-South Super Lawyers," *Super Lawyers*, 2011-2013; AV Peer Review Rated, Martindale-Hubbell; "Best of the Bar," *Nashville Business Journal*, 2008-2010; "Top 40 Under 40," *The Tennessean*, 2004; "Mid-South Rising Stars," *Super Lawyers*, 2008-2010. *Publications & Presentations*: "Supreme Court Limits The Reach Of Alien Tort Statute In Kiobel," Legal Solutions Blog, April 2013; "The Rise of Bellwether Trials," Legal Solutions Blog, March 2013; "Amgen: The Supreme Court Refuses to Erect New Class Action Bar," Legal Solutions Blog, March 2013; "Are International Wrongdoers Above the Law?," The Trial Lawyer Magazine, January 2013; "Kiobel v. Royal Dutch Petroleum: Supreme Court to Decide Role of US Courts Abroad," ABA Journal, January 2013. "Legislation Protects the Guilty [in Deadly Meningitis Outbreak]," Tennessean, December 2012; Litigating International Torts in United States Courts, 2012 ed., Thomson Reuters/West (2012); "Successfully Suing Foreign Manufacturers," TRIAL Magazine, November 2008; "Washington Regulators Versus American Juries: The United States Supreme Court Shifts the Balance in Riegel v. Medtronic," *Nashville Bar Journal*, 2008; "Washington Bureaucrats Taking Over American Justice System," *Tennessean.com* (December 2007); "The End of Meaningful Punitive Damages," *Nashville Bar Journal*, November 2001; "Is Civility Dead?" *Nashville Bar Journal*, October 2003; "The FCC: The Constitution, Censorship, and a Celebrity Breast," Nashville Bar Journal, April 2005. *Member*:  American Association for Justice; American Bar Association (Past-Chair, YLD Criminal & Juvenile Justice Committee; Tort Trial and Insurance Practice Section Professionalism Committee); First Center for the Visual Arts (Founding Member, Young Professionals Program); Harry Phillips American Inn of Court; Kappa Chapter of Kappa Sigma Fraternity Alumni Association (President); Metropolitan Nashville Arts Commission (Grant Review Panelist); Nashville Bar Association (YLD Board of Directors; Nashville Bar Association YLD Continuing Legal Education and Professional Development Director); Nashville Bar Journal (Editorial Board); Tennessee Association for Justice (Board of Directors, 2008-2011; Legislative Committee); Tennessee Bar Association (Continuing Legal Education Committee); Tennessee Trial Lawyers Association (Board of Directors); Historic Belcourt Theatre (Past Board Chair; Board of Directors); Nashville Cares (Board of Directors).

**KRISTEN LAW SAGAFI**, Admitted to practice in California (2002); U.S. District Court, Northern District of California (2002); U.S. District Court, Central District of California (2005); US District Court, Northern District of Florida (2009); U.S. Court of Appeals for the Eleventh Circuit (2010). *Education*:  Boalt Hall School of Law, University of California, Berkeley (J.D. 2002); Executive Editor, *Ecology Law Quarterly*; Moot Court Advocacy Award;

Moot Court Board; Hopi Appellate Clinic; Ohio Wesleyan University (B.A., *summa cum laude,* 1995); Presidential Scholar; Phi Beta Kappa. *Litigation Experience:* Ms. Sagafi and Lieff Cabraser received recognition in *The National Law Journal's* Plaintiffs' Hot List for their outstanding success in *Grays Harbor Adventis Christian School v. Carrier Corp.* The case resulted in a settlement worth $300 million for consumers who had purchased certain Carrier furnaces that were allegedly made with inferior materials that caused them to fail prematurely. *Honors & Awards*: "50 Lawyers on the Fast Track," *The Recorder*, 2012; "Rising Stars for Northern California," *Super Lawyers*, 2009-2013. *Member*: Phi Beta Kappa; State Bar of California.

**KENT L. KLAUDT,** Admitted to practice in California, 1996; U.S. District Court, Northern District of California, 1997; U.S. District Court, Eastern District of California, 1998; U.S. District Court, Central District of California, 2007; California Supreme Court, 1996; U.S. Supreme Court, 2013; U.S. District Court, Eastern District of Wisconsin, 2013. *Education*: University of Minnesota Law School (J.D., 1996); Outside Articles Editor, *Journal of Law & Inequality: A Journal of Theory & Practice*; National Association of Public Interest Law (Summer Fellowship), 1995); University of Minnesota (B.A., 1991). *Employment*: BlueDog, Olson & Small, PLLP, 1995-96; Cartwright & Alexander, LLP, 1996-2001; The Cartwright Law Firm, Inc., 2001-2004. *Honors & Awards: Best Lawyers*, based on peer and blue ribbon panel review, selected for list of "San Francisco's Best Lawyers," 2014; National Association of Public Interest Law Summer Fellowship, 1995. *Publications & Presentations*: Outside Articles Editor, *Journal of Law and Inequality: A Journal of Theory and Practice;* "Hungary After the Revolution: Privatization, Economic Ideology, and the False Promise of the Free Market," 13 *Law & Inequality: A Journal of Theory & Practice* 301. *Member*: American Association for Justice; American Trial Lawyers Association; Consumer Attorneys of California; Public Justice; San Francisco Trial Lawyers Association; National Lawyers Guild; State Bar of California.

**LEXI J. HAZAM**, Admitted to practice in California, 2003; U.S. District Court, Northern District of California, 2003; U.S. Court of Appeals for the Seventh Circuit, 2006; US District Court, Southern District of CA, 2013; U.S. Court of Appeals for the Second Circuit, 2008; U.S. Court of Appeals for the Eighth Circuit, 2008. *Education*: Stanford University (B.A., 1995, M.A., 1996), Phi Beta Kappa. Boalt Hall School of Law, University of California, Berkeley (J.D., 2001); *California Law Review* and *La Raza Law Journal* (Articles Editor); Berkeley Law Foundation Summer Grant for Public Service; Federal Practice Clinic; Hopi Appellate Clinic). *Employment*: Law Clerk, Mexican American Legal Defense and Education Fund, 1999; Law Clerk, Judge Henry H. Kennedy, Jr., U.S. District Court for the District of Columbia, 2001-2002; Associate, Lieff Cabraser Heimann & Bernstein, LLP, 2002-2006; Partner, Lieff Global LLP, 2006-2008. *Honors & Awards*: Legal 500 recommended lawyer, *LegalEase*, 2013; "Northern California Rising Stars," *Super Lawyers*, 2009-2011, 2013. *Member*: State Bar of California; American Association for Justice; Consumer Attorneys of California; Bar Association of San Francisco; San Francisco Trial Lawyers Association.

**BRENDAN P. GLACKIN**, Admitted to practice in California, 1998; New York, 2000; U.S. District Court, Northern, Central, Eastern and Southern Districts of California, 2001; U.S. Court of Appeals for the Ninth Circuit, 2004; U.S. District Court, Southern District of New York, 2001; U.S. District Court, District of Colorado, 2001; U.S. Court of Appeals for the Second Circuit, 2013; U.S. Court of Appeals for the Ninth Circuit. *Education*: Harvard Law School (J.D., *cum laude*, 1998); University of Chicago (A.B., Phi Beta Kappa, 1995). *Employment*: Contra Costa Public Defender, 2005-2007; Boies, Schiller & Flexner, 2000-2005; Willkie Farr & Gallagher, 1999-2000; Law Clerk to Honorable William B. Shubb, U.S. District Court, Eastern District of California, 1998-1999. *Awards & Honors:* "Northern California Super Lawyer," *Super*

*Lawyers,* 2013. *Member*: State Bar of California; BASF Antitrust Section, Executive Committee. *Seminars:* Ramifications of *American Needle, Inc. v. National Football League,* 2010; Antitrust Institute 2011: Developments & Hot Topics, 2011; Antitrust Trials: The View From the Trenches, 2013; Applying Settlement Offsets to Antitrust Judgments, ABA Spring Meetings, 2013; California Trial Advocacy, PLI, 2013; Building Trial Skills, NITA, 2013.

**DANIEL E. SELTZ**, Admitted to practice in New York, 2004; U.S. District Court, Southern District of New York; U.S. District Court, Eastern District of New York; U.S. Court of Appeals for the First Circuit; U.S. Court of Appeals for the Ninth Circuit. *Education*: New York University School of Law (J.D., 2003); *Review of Law and Social* Change, Managing Editor; Hiroshima University (Fulbright Fellow, 1997-98); Brown University (B.A., *magna cum laude*, Phi Beta Kappa, 1997). *Employment*: Law Clerk to Honorable John T. Nixon, U.S. District Court, Middle District of Tennessee, 2003-04. *Publications & Presentations*: Panelist, "Taking and Defending Depositions," New York City Bar, May 20, 2009; Contributing Author, *California Class Actions Practice & Procedures* (Elizabeth J. Cabraser, Editor-in-Chief, 2008); "Remembering the War and the Atomic Bombs: New Museums, New Approaches," in *Memory and the Impact of Political Transformation in Public Space* (Duke University Press, 2004), originally published in *Radical History Review*, Vol. 75 (1998); "Issue Advocacy in the 1998 Congressional Elections," with Jonathan S. Krasno (Urban Institute, 2001); *Buying Time: Television Advertising in the 1998 Congressional Elections*, with Jonathan S. Krasno (Brennan Center for Justice, 2000); "Going Negative," in *Playing Hardball*, with Kenneth Goldstein, Jonathan S. Krasno and Lee Bradford (Prentice-Hall, 2000). *Member*: American Association for Justice; State Bar of New York.

**TODD A. WALBURG**, Admitted to practice in California, 2001; U.S. District Court, Northern District of California, 2001; U.S. District Court, Eastern, Central and Southern Districts of California, 2006; U.S. Court of Appeals for the Ninth Circuit, 2001. *Education*: University of San Francisco School of Law (J.D. 1999); Founder and President, USF Student Chapter, Association of Trial Lawyers of America (1997-1999); Investigation Intern, San Francisco Public Defender's Office; Mediation Intern, San Francisco Small Claims Court; Mediation Intern, U.S. Equal Employment Opportunity Commission; University of California at Los Angeles (B.A., 1995). *Community Service*: Pro Bono Trial Attorney, Eviction Defense Project, Volunteer Legal Services Program of the Bar Association of San Francisco (2012-present). *Awards*: Elected to the Board of Directors of the San Francisco Trial Lawyers Association, 2013-present; Appointed to the Board of Governors of the Alameda-Contra Costa Trial Lawyers Association, 2012-present; "Rising Star for Northern California," *Super Lawyers*, 2010-2013; Leesfield / Association of Trial Lawyers of America Scholarship, National Winner (1998). *Prior Employment*: Partner, Emison Hullverson Bonagofsky, LLP (2007-2008); Associate, Lieff Cabraser Heimann & Bernstein, LLP, 2005-2007); Associate, Bennett, Johnson & Galler (2001-2005). *Publications and Presentations*: "Cutting Edge Damages," SFTLA/CAOC Webinar with NJP Litigation Consulting (February 2013); "Burn Injury Cases," SFTLA/CAOC Webinar (December 2012); "Toyota Unintended Acceleration Litigation," CAOC Annual Convention (November 2011); "Product Liability Strategies Before Trial," SFTLA Roundtable (October, 2008); "Powerful Mediation Briefs," in The Verdict (ACCTLA 2006). *Member*: Western Trial Lawyers Association; Public Justice; American Association for Justice (Attorneys Information Exchange Group; Burn Injury Litigation Group; Motor Vehicle Collision, Highway and Premises Liability Section; Products Liability Section; Section on Toxic, Environmental and Pharmaceutical Torts; Spinal Cord Injury Litigation Group); American Bar Association (Tort, Trial and Insurance Practice Section); Consumer Attorneys of California; State Bar of California; San Francisco Trial Lawyers Association (Board of Directors, 2013-Present; Experts Committee, 2012; Education Committee, 2005-2007, 2012; Carlene Caldwell

Scholarship Committee, 2005-2007); Alameda-Contra Costa Trial Lawyers Association (Board of Governors, 2003-2005, 2012-2013); Bar Association of San Francisco (Pro Bono Trial Attorney, Eviction Defense Project, Volunteer Legal Services Program); Consumer Attorneys Association of Los Angeles; Society of Automotive Engineers (SAE) International; Association of Business Trial Lawyers; The Melvin M. Belli Society.

**DANIEL M. HUTCHINSON**, Admitted to practice in California, 2005; U.S. District Court, Central District of California; U.S. District Court, Southern District of California; U.S. Court of Appeals for the First Circuit, 2012; U.S. Court of Appeals for the Ninth Circuit, 2005; U.S. District Court, Northern District of California, 2005; U.S. Court of Appeals for the Fourth Circuit, 2008; U.S. District, Northern District of Illinois, March 25, 2014. *Education:* Boalt Hall School of Law, University of California, Berkeley (J.D., 2005), Senior Articles Editor, *African-American Law & Policy Report*, Prosser Prizes in Constitutional Law and Employment Law; Boalt Hall Teaching & Curriculum Committee (2003-2004); University of California, Berkeley Extension (Multiple Subject Teaching Credential, 2002); Brown University (B.A., 1999), Mellon Mays Fellowship (1997-1999). *Employment*: Judicial Extern to the Hon. Martin J. Jenkins, U.S. District Court, Northern District of California, 2004; Law Clerk, Lewis & Feinberg, P.C., 2003-2004; Teacher, Oakland Unified School District, 1999-2002. *Honors & Awards*: "Rising Star," Law360, 2014; "Northern California Super Lawyer," *Super Lawyers*, 2013; Legal 500 recommended lawyer, *LegalEase*, 2013; "50 Lawyers on the Fast Track," *The Recorder*, 2012; "Northern California Rising Stars," *Super Lawyers*, 2009-2012. *Publications & Presentations:* Panelist, "Employment Discrimination Class Actions Post-*Dukes*," Consumer Attorneys of California 50th Annual Convention (2011); "Ten Points from *Dukes v. Wal-Mart Stores, Inc.*," 20(3) *CADS Report 1* (Spring 2010); Panelist, "Rethinking Pro Bono: Private Lawyers and Public Service in the 21st Century," UCLA School of Law (2008); Author and Panelist, "Pleading an Employment Discrimination Class Action" and "EEO Litigation: From Complaint to the Courthouse Steps," ABA Section of Labor and Employment Law Second Annual CLE Conference (2008); Co-Presenter, "Rule 23 Basics in Employment Cases," Strategic Conference on Employment Discrimination Class Actions (2008). *Member*: American Bar Association (Section of Labor & Employment Law Leadership Development Program); Association of Business Trial Lawyers (Leadership Development Committee, 2008-2010); Bar Association of San Francisco; Consumer Attorneys of California; Lawyer's Committee for Civil Rights of the San Francisco Bay Area (Co-Chair, 2013-Present; Board Secretary, 2011-2013; Board of Directors, 2009-2011); National Bar Association.

**SHARON M. LEE**, Admitted to practice in New York 2002; U.S. District Court, Southern District of New York, 2003; U.S. District Court, Eastern District of New York, 2003; Washington State, 2005. *Education*: St. John's University School of Law (J.D. 2001); *New York International Law Review*, Notes & Comments Editor, 2000-2001; St. John's University (M.A. 1998); St. John's University (B.A. 1997). *Employment*: Milberg Weiss & Bershad, LLP, 2003-2007. *Member*: American Bar Association; Washington State Bar Association; Asian Bar Association of Washington. *Publications & Presentations*: Author, *The Development of China's Securities Regulatory Framework and the Insider Trading Provisions of the New Securities Law*, 14 N.Y. Int'l L.Rev. 1 (2001); Co-author, *Post-Tellabs Treatment of Confidential Witnesses in Federal Securities Litigation*, 2 J. Sec. Law, Reg. and Compliance 205 (3d ed. 2009).

**HEATHER H. WONG**, Admitted to practice in California, 2005; U.S. Court of Appeals, Ninth Circuit, 2005; U.S. District Court, Central and Northern Districts of California, 2005, 2006; U.S. District Court, District of Colorado, 2006. *Education*:  University of San Francisco (J.D. & M.B.A., 2005); Beta Gamma Sigma Honor Society (2005); Technical Editor, *Maritime Law Journal*; Staff Editor, *Journal of Law and Social Challenges*; University of

California, Berkeley (B.A., 2000). *Awards & Honors*: "Northern California Super Lawyer," *Super Lawyers*, 2013; "Northern California Rising Stars," *Super Lawyers*, 2009-2012. *Publications & Presentations*: Panelist, "It Don't Matter If You're Black or White"—or Female or Older—Primer on Title VII and ADEA," ABA Section of Labor & Employment Law's 4th Annual CLE Conference, Chicago, IL (November 2010); Panelist, "Labor and Employment Law Career Opportunities," ABA Section of Labor & Employment Law's Outreach to Law School Students Task Force Seminar, Santa Clara, CA (March 2010); Presenter, "Rule 23 Basics in Employment Cases," Impact Fund's 8th Annual Employment Discrimination Class Action Conference, Oakland, CA (February 2010); Presenter, "Updates on Employment Law," ALRP MCLE Program, San Francisco, CA (December 2009); Panelist, "EEO Law: Overview and Current Issues under Title VII, the ADEA, and the ADA," ABA Section of Labor & Employment Law's 3rd Annual CLE Conference, Washington, D.C. (November 2009); Panelist, "The Nuts & Bolts of Class and Collective Actions," National Employment Lawyers Association's 19th Annual Convention, Atlanta, GA (June 2008). *Member*: American Association for Justice; American Bar Association (Co-Chair, Leadership Development Program; Young Lawyers Division; Labor & Employment Law Section; Section of Litigation; *Employment Discrimination Law Treatise*, Chapter Monitor, 2007-present); American Constitution Society (Mentor); Asian American Bar Association; Asian American Legal Defense and Education Fund; Association of Business Trial Lawyers; Bar Association of San Francisco (Barristers Club; Labor & Employment Law Section; Litigation Section); *California Class Action Practice and Procedure Treatise* (Chapter Editor, 2007-present); Carver Healthy Environments and Response to Trauma in Schools ("HEARTS") Project (Steering Committee, 2007-present); Consumer Attorneys of California (Women's Caucus, Community Service Coordinator); Legal Services for Children (Pro Bono Awards Luncheon Committee, 2010-present); Minority Bar Coalition (2008 Unity Conference Planning Committee); National Employment Lawyers Association; State Bar of California (Labor & Employment Law Section; Litigation Section).

**ROGER N. HELLER**, Admitted to practice in California, 2001; U.S. District Court, Northern District of California, 2001, U.S. Court of Appeals for the Ninth Circuit, 2001. *Education*: Columbia University School of Law (J.D., 2001); Columbia Law Review, Senior Editor. Emory University (B.A., 1997). *Employment*: Extern, Honorable Michael Dolinger, U.S. District Court, Southern District of New York, 1999; Associate, O'Melveny & Myers LLP, 2001-2005; Senior Staff Attorney, Disability Rights Advocates, 2005-2008. *Honors & Awards*: "Northern California Super Lawyer," *Super Lawyers*, 2013; "Trial Lawyer of the Year Finalist," Public Justice, 2012; "Northern California Rising Stars," *Super Lawyers*, 2011-2012; Harlan Fiske Stone Scholar, 1998-2001. *Publications & Presentations*: Co-author, Fighting For Troops on the Homefront, Trial Magazine (September 2006). *Member*: American Bar Association; Bar Association of San Francisco; Consumer Attorneys of California; State Bar of California.

**NIMISH R. DESAI**, Admitted to practice in California, 2006; US District Court, Northern District of California, 2007; US District Court, Central District of California, 2008; US District Court, Northern District of Florida, 2009; U.S. Court of Appeals, Ninth Circuit, 2009. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D., 2006), Finalist and Best Brief, McBaine Moot Court Competition (2006), Moot Court Best Brief Award (2004); University of Texas, Austin, (B.S. & B.A., High Honors, 2002). *Employment*: Extern, Sierra Club Environmental Law Program, 2004; Researcher, Public Citizen, 2003; Center for Energy and Environmental Resources, 2001-2002. *Awards & Honors*: "Northern California Super Lawyer," *Super Lawyers,* 2013; "Rising Star for Northern California," *Super Lawyers*, 2012. *Publications & Presentations*: "BP, Exxon Valdez, and Class-Wide Punitive Damages," 21 Class Action and Derivative Suit Committee Newsletter (Fall 2010); "American Chemistry Council v. Johnson: Community Right to Know, But About What? D.C. Circuit Takes Restrictive View of

EPCRA," 33 *Ecology L.Q.* 583 (Winter 2006); "Lessons Learned and Unlearned: A Case Study of Medical Malpractice Award Caps in Texas," *The Subcontinental*, (Winter 2004, Vol. 1, Issue 4, pp. 81-87); "Separation of Fine Particulate Matter Emitted from Gasoline and Diesel Vehicles Using Chemical Mass Balancing Techniques," *Environmental Science Technology*, (2003; 37(17) pp. 3904-3909); "Analysis of Motor Vehicle Emissions in a Houston Tunnel during Texas Air Quality Study 2000," *Atmospheric Environment*, 38, 3363-3372 (2004).  *Member*: State Bar of California; Bar Association of San Francisco; Consumer Attorneys of California; American Bar Association; American Constitution Society; East Bay Community Law Center (Board Member, 2010-present); South Asian Bar Association (Board Member, 2010-present).  *Languages*: Gujarati (conversational).

**MICHAEL J. MIARMI**, Admitted to practice New York, 2006; U.S. District Court, Eastern District of New York; U.S. District Court, Southern District of New York; U.S. Court of Appeals for the Second Circuit; U.S. Court of Appeals for the Third Circuit, 2007; U.S. Court of Appeals for the Sixth Circuit; U.S. Court of Appeals for the Eighth Circuit, 2007; U.S. Supreme Court. *Education*: Fordham Law School (J.D., 2005); Yale University (B.A., *cum laude*, 2000). *Awards & Honors:* "New York Rising Star," *Super Lawyers*, 2013. *Publications & Presentations*: Co-Author with Steven E. Fineman, "The *Basic*s of Obtaining Class Certification in Securities Fraud Cases: U.S. Supreme Court Clarifies Standard, Rejecting Fifth Circuit's 'Loss Causation' Requirement," *Bloomberg Law Reports* (July 5, 2011). *Employment*: Milberg Weiss LLP, Associate, 2005-2007.  *Member:* State Bar of New York; New York State Trial Lawyers Association; Public Justice Foundation; American Bar Association; New York State Bar Association.

**DEAN M. HARVEY**, Admitted to practice in California, 2007; U.S. District Court, Northern District of California; U.S. District Court, Central District of California; U.S. District Court, Eastern District of California; U.S. District Court, Southern District of California; U.S. Court of Appeals for the Ninth Circuit; U.S. District Court, Eastern District of Wisconsin, 2013. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D. 2006); Articles Editor, *California Law Review* (2005-2006); Assistant Editor, *Berkeley Journal of International Law* (2004); University of Minnesota, Twin Cities (B.A. *summa cum laude*, 2002).  *Prior Employment*: Partner, Lieff Cabraser Heimann & Bernstein, LLP (2013-Present); Associate, Lieff Cabraser Heimann & Bernstein, LLP (2009-2013); Associate, Boies, Schiller & Flexner LLP (2007-2008); Law Clerk, The Honorable James V. Selna, U.S. District Court for the Central District of California (2006-2007); Law Clerk, U.S. Department of Justice, Antitrust Division, San Francisco Field Office (2006); Summer Law Intern, U.S. Department of Justice (2005); Summer Associate, Boies, Schiller & Flexner LLP (2005).  *Awards & Honors*: "Super Lawyer for Northern California," *Super Lawyers*, 2013; "Lawyers on the Fast Track," The Recorder, 2013; "Rising Star for Northern California," Super Lawyers, 2010-2012; "William E. Swope Antitrust Writing Prize," 2006. *Publications*: Contributing Author, *The Class Action Fairness Act: Law and Strategy*, American Bar Association, 2013; Contributing Author, *Concurrent Antitrust Criminal and Civil Proceedings: Identifying Problems and Planning for Success*, American Bar Association (2013); Panelist, "If You Don't Steal My Employees, I Won't Steal Yours: The Antitrust Treatment of Non-Poaching and Non-Solicitation Agreements," American Bar Association (2013); Co-Editor, *California Class Actions Practice and Procedures* (2010-2013); Articles Editor, *Competition* (the Journal of the Antitrust and Unfair Competition Law Section of the State Bar of California) (2012); Contributing Author, *ABA Annual Review of Antitrust Law Developments* (2011); Panelist, "In the Wake of *AT&T Mobility v. Concepcion:* Perspectives on the Future of Class Litigation," American Bar Association (2011); *New Guidance for Standard Setting Organizations: Broadcom Corp. v. Qualcomm Inc. and In the Matter of Rambus, Inc., 5 ABA Sherman Act Section 1 Newsl.*

35 (2008); *Anticompetitive Social Norms as Antitrust Violations,* 94 Calif. L. Rev. 769 (2006). *Member*: American Bar Association (Antitrust Section); Bar Association of San Francisco; San Francisco Trial Lawyers Association.

**BRUCE W. LEPPLA**, Admitted to practice in California, New York, Ninth Circuit Court of Appeals, California District Courts (Northern, Central, Eastern), New York District Courts (Southern, Eastern), District of Colorado. *Education*: University of California (J.D., Boalt Hall School of Law, M.G. Reade Scholarship Award); University of California at Berkeley (M.S., Law and Economics, Quantitative Economics); Yale University (B.A., *magna cum laude*, Highest Honors in Economics). *Prior Employment*: California-licensed Real Estate Broker (2009-present); FINRA and California-licensed Registered Investment Adviser (2008-present); Chairman, Leppla Capital Management LLC (2008-present); Chairman, Susquehanna Corporation (2006-present); Partner, Lieff Cabraser Heimann & Bernstein, LLP (2004-2008), Counsel (2002-2003); CEO and President, California Bankers Insurance Services Inc., 1999-2001; CEO and President, Redwood Bank (1985-1998), CFO and General Counsel (1981-1984); Brobeck, Phleger & Harrison (1980); Davis Polk & Wardwell (1976-80). *Publications*: Author or co-author of 11 different U.S. and International patents in electronic commerce and commercial product design, including "A Method for Storing and Retrieving Digital Data Transmissions," United States Patent No. 5,659,746, issued August 19, 1997; "*Stay in the Class or Opt-Out? Institutional Investors Are Increasingly Opting-Out of Securities Class Litigation*," Securities Litigation Report, Vol. 3, No. 8, September 2006, West LegalWorks; reprinted by permission of the author in Wall Street Lawyer, October 2006, Vol. 10, No. 10, West LegalWorks; "*Selected Waiver: Recent Developments in the Ninth Circuit and California, Part I*;" Elizabeth J. Cabraser, Joy A. Kruse and Bruce W. Leppla; Securities Litigation Report, May 2005, Vol. I, No. 9, pp. 1, 3-7; "*Selected Waiver: Recent Developments in the Ninth Circuit and California, Part 2*;" Elizabeth J. Cabraser, Joy A. Kruse and Bruce W. Leppla; Securities Litigation Report, June 2005, Vol. I, No. 10, pp. 1, 3-9; Author, *"Securities Powers for Community Banks,"* California Bankers Association Legislative Journal (Nov. 1987). *Teaching Positions*: Lecturer, University of California at Berkeley, Haas School of Business, Real Estate Law and Finance (1993-96); Lecturer, California Bankers Association General Counsel Seminars, Lending Documentation, Financial Institutions Litigation and similar topics (1993-96). *Panel Presentations*: Union Internationale des Avocats, Spring Meeting 2010, Frankfurt, Germany, *"Recent Developments in Cross-Border Litigation;"* Union Internationale des Avocats, Winter Meeting 2010, Park City, Utah, *"Legal and Economic Aspects of Securities Class and Opt-out Litigation;"* EPI European Pension Fund Summit, Montreux, Switzerland, "*Legal and Global Economic Implications of the U.S. Subprime Lending Crisis*," May 2, 2008; Bar Association of San Francisco, "*Impact of Spitzer's Litigation and Attempted Reforms on the Investment Banking and Insurance Industries*," May 19, 2005; Opal Financial Conference, National Public Fund System Legal Conference, Phoenix, AZ, "*Basic Principles of Securities Litigation*," January 14, 2005; American Enterprise Institute, "*Betting on the Horse After the Race is Over— In Defense of Mutual Fund Litigation Related to Undisclosed After Hours Order Submission*," September 30, 2004. *Member*: State Bar of California; State Bar of New York; Member, Editorial Board, *Wall Street Lawyer*; National Association of Public Pension Attorneys; Union Internationale des Avocats (Seminar Chairman, 2012 Winter Corporate Governance Seminar); Yale University Alumni Board of Directors (Director, 2001-2005); California Bankers Association (Director, 1993-99); California State Small Business Development Board (1989-1997); University of California at Berkeley, Boalt Hall Alumni Board of Directors (1993-96); Leadership Council, San Francisco Chamber of Commerce (1990-1992); Community Reinvestment Institute (Founding Director, 1989-1990); Member, Yale Whiffenpoofs.

**NICHOLAS DIAMAND**, Admitted to practice in New York, 2003; England; Wales;

U.S. District Court, Southern, Eastern, Northern, and Western Districts of New York; US. Court of Appeals, Seventh Circuit; U.S. Supreme Court. *Education*: Columbia University School of Law (LL.M., Stone Scholar, 2002); College of Law, London, England (C.P.E.; L.P.C.; Commendation, 1997); Columbia University (B.A., *magna cum laude,* 1992). *Awards & Honors:* "New York Super Lawyer," *Super Lawyers*, 2013; "Rising Star for New York," *Super Lawyers*, 2012. *Employment*: Solicitor, Herbert Smith, London (1999-2001); Law Clerk to the Honorable Edward R. Korman, Chief Judge, U.S. District Court, Eastern District of New York (2002-03). *Publications & Presentations*: Speaker, International Corporate Governance Network Conference, 2014; "Fraud on the Market in a Post-*Amgen* World" (with M. Miarmi), Trial Magazine, November 2013; Contributing Author, *California Class Actions Practice and Procedure* (Elizabeth J. Cabraser, Editor-in-Chief), 2006; Panelist, "Obstacles to Access to Justice in Pharmaceutical Cases," *Pharmaceutical Regulation and Product Liability*, British Institute of International and Comparative Law, April 21, 2006; Panelist, "Pre-Trial Discovery in the United States," Union Internationale des Avocats, Winter Seminar, February 2006. *Member*:  New York City Bar Association; New York State Bar Association; Public Justice Foundation; International Corporate Governance Network.

**KENNETH S. BYRD**, Admitted to practice in Tennessee, 2004; U.S. District Court of Appeals, 6th Circuit, 2009; U.S. District Court, Western District of Tennessee, 2007; U.S. District Court, Eastern District of Tennessee, 2006; U.S. District Court, Middle District of Tennessee, 2005. *Education:* Boston College Law School (J.D., *cum laude*, 2004), Law Student Association (President, 2003-2004), National Moot Court Team (Regional Champion, 2003-2004), American Constitution Society (Secretary, 2002-2003), Judicial Process Clinic (2003), Criminal Justice Clinic (2003-2004); Samford University (B.S., *cum laude*, in Mathematics with Honors, minor in Journalism, 1995). *Employment:* Harwell Howard Hyne Gabbert & Manner, P.C., 2004-2010; Summer Associate, Harwell Howard Hyne Gabbert & Manner, P.C., 2003; Summer Associate, Edward, Angell, Palmer, Dodger, LLP, 2003. *Member:* American Bar Association; American Constitution Society, Nashville Chapter (Member & Chair of 2008 Supreme Court Preview Event); Camp Ridgecrest Alumni & Friends (Board Member); Harry Phillips American Inn of Court, Nashville Chapter (Associate Member, 2008-2010; Barrister, 2010-2014); Historic Edgefield, Inc. (President, 2009-2011); Nashville Bar Association; Tennessee Bar Association.

**JASON L. LICHTMAN**, Admitted to practice in Illinois; New Jersey; New York; U.S. Supreme Court; District of Columbia; U.S. Court of Appeals, Third Circuit; U.S. Court of Appeals, Sixth Circuit; U.S. Court of Appeals, Seventh Circuit; U.S. Court of Appeals, Ninth Circuit; U.S. District Court, Northern District of Illinois; U.S. District Court, New Jersey; U.S. District Court, Northern District of Ohio; U.S. District Court, Eastern District of New York, U.S. District Court, Southern District of New York; U.S. Court of Appeals, Eleventh Circuit, 2013; U.S. Court of Appeals, Tenth Circuit, 2014; U.S. District Court, Eastern District of Wisconsin, March 5, 2014. *Education*: University of Michigan Law School (J.D., *cum laude*, 2006), Campbell Moot Court Executive Board; Clarence T. Darrow Scholar; Northwestern University (B.A. in Economics, 2000). *Employment*: Judicial Law Clerk to Honorable Kathleen M. O'Malley, United States District Court, Northern District of Ohio, 2008-2010; Litigation Associate, Howrey LLP, 2006-2008; Summer Associate, Howrey LLP, 2005; Summer Associate, Reed Smith LLP, 2004. *Awards & Honors*: "New York Rising Star," Super Lawyers, 2013. *Member*: Bar Association of the District of Columbia; Bar Association of Illinois. *Publications and Presentations:* Contributing Author, "Ninth Circuit Reshapes California Consumer-Protection Law," American Bar Association (July 2012).

**ANNIKA K. MARTIN**, Admitted to practice in New York, 2005; U.S. District Court,

Southern District of New York, 2005; U.S. District Court Eastern District of New York. *Education:* Law Center, University of Southern California (J.D., 2004); Review of Law & Women's Studies; Jessup Moot Court; Medill School of Journalism, Northwestern University (B.S.J., 2001); Stockholm University (Political Science, 1999). *Publications & Presentations*: "Stick a Toothbrush Down Your Throat:  An Analysis of the Potential Liability of Pro-Eating Disorder Websites," *Texas Journal of Women & the Law* (Volume 14 Issue 2, Spring 2005); "Welcome to Law School," monthly column on www.vault.com (2001-2004). *Awards and Honors*: "New York Rising Star," Super Lawyers, 2013; 2005 Wiley W. Manuel Award for Pro Bono Legal Services awarded by the State Bar of California for voluntary provision of legal services to the poor. *Member*: New York State Bar Association; Swedish American Bar Association; American Association for Justice; New York State Trial Lawyers Association; New York County Lawyer's Association; New York City Bar Association. *Languages*: Swedish (fluent); French (DFA1-certified in Business French); Spanish (conversational).

### OF COUNSEL

**ROBERT L. LIEFF**, Admitted to practice in California, 1966; U.S. District Court, Northern District of California and U.S. Court of Appeals, Ninth Circuit, 1969; U.S. Supreme Court, 1969; U.S. Court of Appeals, Seventh Circuit, 1972; U.S. Tax Court, 1974; U.S. District Court, District of Hawaii, 1986. *Education*:  Columbia University (M.B.A., 1962; J.D., 1962); Cornell University; University of Bridgeport (B.A., 1958). Member, Columbia Law School Dean's Council; Member, Columbia Law School Board of Visitors (1992-2006); Member, Columbia Law School Center on Corporate Governance Advisory Board (2004). *Awards & Honors*:  AV Preeminent Peer Review Rated, Martindale-Hubbell; "Northern California Super Lawyers," *Super Lawyers*, 2005-09, "*Lawdragon* Finalist," *Lawdragon*, 2005. *Member*: Bar Association of San Francisco; State Bar of California (Member: Committee on Rules of Court, 1971-74; Special Committee on Multiple Litigation and Class Actions, 1972-73); American Bar Association (Section on Corporation, Banking and Business Law); Lawyers Club of San Francisco; San Francisco Trial Lawyers Association; California Trial Lawyers Association; Consumer Attorneys of California; Fight for Justice Campaign.

**LYDIA LEE**, Admitted to practice in Oklahoma 1983; U.S. District Court, Western and Eastern Districts of Oklahoma; U.S. Court of Appeals, 10th Circuit. *Education*: Oklahoma City University, School of Law (J.D., 1983); University of Central Oklahoma (B.A., 1980). *Prior Employment*: Partner, Law Office of Lydia Lee (2005-2008); Partner, Oklahoma Public Employees Retirement System (1985-2005); Associate, law firm of Howell & Webber (1983-1985). *Publications & Presentations*: "QDROs for Oklahoma's Public Pension Plans," *Oklahoma Family Law Journal*, Vol. 13, September, 1998; Co-Author, "Special Problems in Dividing Retirement for Employees of the State of Oklahoma," *OBA/FLS Practice Manual*, Chapter 27.3, 2002; Featured Guest Speaker, *Saturday Night Law*, KTOK Radio; Contributor and Editor, INFRE Course Books for CRA program. *Member*: Central Edmond Urban Development Board (2006-present); Oklahoma Bar Association (1983–present), Member OBA Women in Law Committee (2007-present); National Association of Public Pension Attorneys (1988-present), President (2002-2004), Vice-President (2001-2002), Executive Board member (1998-2004), Chair of Benefits Section, Emeritus Board member, (2004-present); Edmond Neighborhood Alliance Board of Directors (2005-present), President (2006-2007), Past President and Director (2007-present); Central Edmond Urban Development Board (2006-present); Midwest City Regional Hospital, Board of Governors (1992-1996), Served on Physician/Hospital Organization Board, Pension and Insurance Trust Committees, and Chairman of Woman's Health Committee; City of Midwest City, Planning Commission (1984-1998), Chairman (1990-1995), Vice-Chairman (1987– 1990), Served on Capital Improvement Committee, Airport Zoning

Commission (Tinker AFB), and Parkland Review Board, served on Midwest City Legislative Reapportionment Committee (1991).

**MORRIS A. RATNER**, Admitted to practice in California, 1991; District of Columbia, 1999; New York, 2000; U.S. District Court, Northern, Central, Eastern, and Southern Districts of California; and U.S. Court of Appeals, Second, Third, Sixth and Ninth Circuits; U.S. District Court, Southern District of New York; U.S. District Court, Eastern District of New York. *Education*: Harvard University (J.D., *cum laude*, Phi Beta Kappa, 1991); Stanford University (B.A., with distinction, 1988). *Publications & Presentations*: Contributing Author, *Holocaust Restitution: Perspectives on the Litigation and its Legacy*, Michael Bazyler and Roger P. Alford, Editors, New York University Press (2006), paperback (2007); Contributing Author, *California Class Actions Practice and Procedures (*Elizabeth J. Cabraser editor in chief, 2003); "Factors Impacting the Selection and Positioning of Human Rights Class Actions in United States Courts: A Practical Overview," 58 *New York University Annual Survey of American Law* 623 (2003); "The Settlement of Nazi-Era Litigation Through the Executive and Judicial Branches," 20 *Berkeley Journal of International Law* 212 (No. 1, March 2002). *Faculty Appointments*: University of California, Hastings College of the Law, Professor (2012-present): "Legal Profession," "Civil Procedure"; Harvard Law School, Visiting Professor (2010-2011): "Class Actions and Other Aggregate Litigation," "Remedies," "Legal Profession," and "Holocaust Litigation"; Harvard Law School, Visiting Lecturer on Law for Winter Term 2009, teaching "Holocaust Litigation." *Lectures*: Harvard Law School, Visiting Professor (2010-2011): "Class Actions and Other Aggregate Litigation," "Remedies," "Legal Profession," and "Holocaust Litigation"; Harvard Law School, Visiting Lecturer on Law (Winter Term 2009): "Holocaust Litigation"; Stanford University, History Department (guest lecturer, June 2008, re Holocaust-era litigation); UC Berkeley School of Law Boalt Hall (guest lecturer, 2007, re legal ethics); Columbia Law School (guest lecturer, 2004, re Holocaust litigation); New York University School of Law (guest panelist, 2003, re developments in international law). *Member*: State Bar of California; State Bar of New York; Bar of the District of Columbia.

**DAVID RUDOLPH**, Admitted to practice in California, 2004; U.S. District Court, Northern District of California, 2008; U.S. District Court, Southern District of California, 2008; U.S. Court of Appeals for the Ninth Circuit, 2009; U.S. Court of Appeals for the Federal Circuit, 2012. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D. 2004); Moot Court Board; Appellate Advocacy Student Advisor; *Berkeley Technology Law Journal; Berkeley Journal of International Law*. Rutgers University (Ph.D. Program, 1999-2001). University of California, Berkeley (B.A. 1998). *Employment*: Associate, Quinn Emanuel Urquhart & Sullivan, LLP, 2008-2012; Law Clerk to the Honorable Saundra Brown Armstrong, U.S. District Court for the Northern District of California, 2007-2008.

**JORDAN ELIAS**, Admitted to practice in California, 2003; U.S. Court of Appeals, Seventh Circuit, 2010; U.S. District Court, District of Arizona, 2009; U.S. District Court, District of Colorado, 2009; U.S. District Court, Southern District of Florida, 2009; U.S. District Court, District of Minnesota, 2009; U.S. District Court, District of Nevada, 2009; U.S. District Court, Eastern District of Pennsylvania, 2008; U.S. Court of Appeals for the Eleventh Circuit. *Education*: Stanford Law School (J.D., 2003); Member, *Stanford Law Review*; *Streetlaw Program; East Palo Alto Community Law Project*. Yale University (B.A., Phi Beta Kappa, *magna cum laude*, 1998); Phi Beta Kappa; awarded the Field Prize, Yale University's highest writing award, for best senior thesis or dissertation in the humanities; awarded the White Prize for best Yale College essay in American History. *Employment*: Associate, Wilson Sonsini Goodrich & Rosati, 2004-2008; Law Clerk to the Honorable Cynthia Holcomb Hall, U.S. Court of Appeals for the Ninth Circuit, 2003-2004; Law Clerk, City Attorney of San Francisco,

Summer 2002; Judicial Extern to the Honorable Charles R. Breyer, U.S. District Court, Northern District of California, Summer 2001; Website Editor, Public Agenda, 1999-2000. *Awards & Honors:* "Trial Lawyer of the Year Finalist," Public Justice, 2012; "Rising Star for Northern California," *Super Lawyers*, a publication of Thomson Reuters, 2012-2013. *Member*: State Bar of California; Arbitrator, Bar Association of San Francisco, Attorney-Client Fee Disputes Program; Member, Committee on *Iqbal v. Ashcroft*, Public Justice. *Publications & Presentations:* Co-Author with Jordan Elias, "The Limited Scope of the Ascertainability Requirement," American Bar Association, March 18, 2013.

### ASSOCIATES

**LISA J. CISNEROS**, Admitted to practice in California, 2007, U.S. District Court, Northern District of California, 2012; U.S. Court of Appeals for the First Circuit, 2012; U.S. Court of Appeals for the Eleventh Circuit, 2013; Supreme Court of California, 2007; U.S. Supreme Court, 2013. *Education:* Boalt Hall School of Law, University of California, Berkeley (J.D. 2007); Brown University (B.A. *cum laude*, 2001). *Employment:* Law Clerk to the Honorable Claudia Wilken, U.S. District Court, Northern District of California, 2010-2012; California Rural Legal Assistance and the National Center for Lesbian Rights, 2007-2010. *Awards & Honors*: Pride Law Fellowship, 2007-2009; Monterey County Democratic Central Committee 2009-2010; Local Heroes Award, *Monterey County Weekly*, 2009; Emerging Leadership Award, Chicana/Latina Foundation, 2009. *Publications & Presentations*: "Recognizing and Responding to the Needs of Low-Income Lesbian, Gay, Bisexual, and Transgender Clients," *Clearinghouse Review Journal of Poverty Law and Policy*, (March-April 2010). *Member:* National Center for Lesbian Rights, Board Member, 2013 – Present.

**DOUGLAS CUTHBERTSON**, Admitted to practice in New York, 2008; U.S. District Court, Eastern District of New York (2008); U.S. District Court, Southern District of New York (2008); U.S. District Court, District of Colorado (2013); U.S. District Court, Northern District of Illinois (2014). *Education:* Fordham University School of Law (J.D. *cum laude* 2007); President, Fordham Law School Chapter of Just Democracy; Senior Articles Editor, *Fordham Urban Law Journal;* Fordham University School of Law Legal Writing Award, 2004-2005; Legal Writing Teaching Assistant, 2005-2006; Dean's List, 2004-2007; *Alpha Sigma Nu Jesuit Honor Society*. Bowdoin College (B.A. *summa cum laude*, 1999), Sarah and James Bowdoin Scholar for Academic Excellence (1995-1999). *Employment*: Associate, Debevoise & Plimpton, LLP, 2009-2012; Law Clerk to Honorable Magistrate Judge Andrew J. Peck, U.S. District Court, Southern District of New York, 2007-2009. *Awards & Honors:* "Rising Star for Northern California," *Super Lawyers*, 2013. *Member:*  New York Civil Liberties Union Board of Directors.

**MELISSA GARDNER**, Admitted to practice in California, 3/18/2013; New York, 2/21/2013; U.S. District Court, Northern District of California, 3/28/2013. *Education:* Harvard Law School (J.D. 2011); Student Attorney, Harvard Prison Legal Assistance Project and South Brooklyn Legal Services; Semi-Finalist, Harvard Ames Moot Court Competition; *Harvard International Law Journal*. Western Washington University (B.A. *magna cum laude,* 2005). *Employment*: Associate, Emery Celli Brinckherhoff & Abady (2012); Law Clerk, South Brooklyn Legal Services (2011-2012); Peace Corps Volunteer, China (2005-2008).

**DANIEL R. LEATHERS**, Admitted to practice in New York, 2010; New Jersey, 2010; Pennsylvania, 2009; U.S. Court of Appeals, Third Circuit, 2012; U.S. District Court of New Jersey, 2010; U.S. District Court, Eastern District of New York, 2012; U.S. District Court, Southern District of New York, 2012; U.S. District Court, Eastern District of Wisconsin, 2013. *Education*: Case Western Reserve University School of Law (J.D., *cum laude*, 2009); Executive Articles Editor, *Case Western Reserve Journal of International Law*; Pennsylvania State

University (B.A. in History & Journalism, 2005). *Awards & Honors*: "New York Rising Star," Super Lawyers, 2013; International Academy of Trial Lawyers Award for overall Trial Advocacy excellence (May 2009); Paul J. Hergenroeder Award for excellence in Trial Tactics (May 2009); Federal Bar Association Award for excellence in Constitutional Law (May 2009); CALI Excellence for the Future Awards: Trial Tactics (May 2009), Constitutional Law I (May 2007), Constitutional Law II (December 2007). *Employment*: Judicial Law Clerk to Honorable Carol Higbee, New Jersey Superior Court, Vicinage I Civil Division Presiding Judge, 2009-2010; Summer Associate—Consumer Law Unit, The Legal Aid Society of Cleveland, 2008; Law Clerk, Zipkin Whiting Co., LPA, 2007. *Member*: New Jersey State Bar Association; New York State Bar Association, 2010; Pennsylvania State Bar Association, 2009; American Association for Justice; New Jersey Association of Justice; American Bar Association. *Publications*: "Giving Bite to the EU-U.S. Data Privacy Safe Harbor," 41 Case W. Res. J. Int'l L. 193, Vol. 41, No. 1 (2009).

**SARAH R. LONDON**, Admitted to practice in California, 2009; U.S. District Court, Northern District of California, 2009; U.S. Court of Appeals for the Ninth Circuit, 2009; U.S. District Court, Central District of California, 2010; U.S. Court of Appeals for the Eleventh Circuit, 2012. *Education*: Boalt Hall School of Law, University of California (J.D., 2009), Order of the Coif; Northwestern University (B.A., *cum laude*, 2002). *Awards & Honors*: " Rising Star for Northern California," Super Lawyers, 2012-2013. *Member*: Consumer Attorneys of California; San Francisco Trial Lawyers Association; State Bar of California.

**MARC A. PILOTIN**, Admitted to practice in California, 2009; U.S. Court of Appeals for the Ninth Circuit, U.S. District Court, Northern District of California; U.S. District Court, Southern District of California; U.S. District Court, Central District of California; U.S. District Court, Eastern District of California. *Education*: Boalt Hall School of Law, University of California, Berkeley (J.D., 2009); Supervising Editor, *California Law Review*; Executive Editor, *Berkeley Journal of Employment and Labor Law*; University of California, Los Angeles, Graduate School of Education and Information Studies (M.Ed., 2005); University of California, Los Angeles, College of Letters and Science (B.A., *cum laude* and College Honors, 2001). *Publications & Presentations*: "Finding a Common Yardstick: Implementing a National Student Assessment and School Accountability Plan Through State-Federal Collaboration," 98 Calif. L. Rev. 545 (2010). *Employment*: Law Clerk to the Honorable Claudia Wilken, U.S. District Court for the Northern District of California, 2009-2011; Graduate Student Instructor for Professor Goodwin Liu, Constitutional Law, 2008; Summer Associate, O'Melveny & Myers, LLP, 2008; Judicial Extern to the Honorable Edward M. Chen, U.S. District Court for the Northern District of California, 2007; Law Clerk, ACLU Foundation of Southern California, 2007; Teacher and Grade-Level Chairperson, Ninety-Sixth Street Elementary School, 2004-2006; Administrative Director, UCLA Center for American Politics and Public Policy, 2001-2003. *Awards & Honors:* "Rising Star for Northern California," Super Lawyers, 2013; "Consumer Attorney of the Year Finalist," Consumer Attorneys of the Year, 2013. *Member*: Filipino Bar Association of Northern California (Board Member, 2013-present).

**PHONG-CHAU G. NGUYEN**, Admitted to practice in California, 2012; U.S. District Court, Northern District of California, 2013; U.S. District Court, Central District of California, 2013; U.S. Court of Appeals for the Ninth Circuit, 2013. *Education:* University of San Francisco School of Law (J.D., 2012); Development Director, USF Moot Court Board; Merit Scholar; Zief Scholarship Recipient; University of California, Berkeley (B.A., Highest Honors; Distinction in General Scholarship, 2008). *Employment:* Attorney, Minami Tamaki, 2013; Post-Bar Law Clerk, Velton Zegelman PC, 2012; Law Clerk, Minami Tamaki, 2011-2012; Housing and Economic Rights Advocates, 2011; Greenlining Institute, 2008-2009, 2012. *Member:* State Bar

of California; Asian American Bar Association for the Greater Bay Area; San Francisco Trial Lawyers Association.

**NICOLE D. SUGNET**, Admitted to practice in California; U.S. Court of Appeals for the Ninth Circuit; U.S. District Court, Central District of California; U.S. District Court, Eastern District of California; U.S. District Court, Northern District of California, U.S. District Court, Eastern District of Wisconsin; U.S. District Court, Northern District of Illinois, April 1, 2014. *Education*: University of California, Hastings College of the Law (J.D., 2006); Moot Court Best Oral Advocate; Senior Articles Editor, *Hastings Law Journal*; Lewis & Clark College (B.A., *magna cum laude*, 2000). *Employment*: Associate, Green Welling, P.C., 2006-2012; Law Clerk, Family Violence Law Center, 2005; Law Clerk, Law Offices of Waukeen Q. McCoy, 2004. *Publications & Presentations*: Co-author with Kirsten Gibney Scott, "Consumer Protection and Employment Cases after Concepcion," *ABA Section of Litigation*, *Class Action & Derivative Suits Committee Newsletter* (Summer 2011); Co-Author of the California Section of the ABA State Class Action Survey (2012). *Awards & Honors*: "Rising Star for Northern California," Super Lawyers, 2013. *Member*: Antitrust and Unfair Competition Law Section of the California State Bar; Labor and Employment Law Section of the California State Bar; Consumer Attorneys of California; National Association of Consumer Advocates.

**ANNE SHAVER**, Admitted to practice in California, 2008; Colorado, 2008; U.S. District Court, Northern District of California, 2009; U.S. Court of Appeals for the Second Circuit, 2012; U.S. Supreme Court; U.S. Court of Appeals of the Ninth Circuit. *Education*: Boalt Hall School of Law, University of California (J.D., 2007), Order of the Coif; University of California, Santa Cruz (B.A. *cum laude*, 2003), Phi Beta Kappa. *Awards & Honors*: "Northern California Rising Star," *Super Lawyers,* 2013. *Employment:* Law Clerk to Honorable Betty Fletcher, U.S. Court of Appeals for the Ninth Circuit, 2008-2009; Davis, Graham & Stubbs, LLP, Litigation Associate, 2008; Public Defender's Office of Contra Costa County, 2007; Davis, Cowell & Bowe, LLP, Summer Law Clerk, 2006; Centro Legal de la Raza, Student Director, Workers' Rights Clinic, 2005-2006; Human Rights Watch, Legal Intern, 2005. *Publications*: "Winning Your Class Certification Motion Post-Brinker," Consumer Attorneys of California, November 2013 (panelist); "Counseling HR on National Origin & Language Issues in the Workplace," ABA Labor & Employment Section, November 2012 (moderator); "*U.S. v. Fort* and the Future of Work-Product in Criminal Discovery," 44 Cal. W. L. Rev. 127, 12293 (Fall 2007); "Rule 23 Basics," Impact Fund Class Action Training Institue, May 2011; "A Place At The Table? Recent Developments in LBGT Rights," ABA Labor & Employment Section Conference, April 2012 (moderator); "Transgender Workplace Issues After the EEOC's Landmark Macy Ruling," Bar Association of San Francisco, September 2012 (moderator); CAOC, "Latest Developments in Employment and Wage and Hour Law," February 25, 2014 (speaker). *Member*: Bar Association of San Francisco; National Employment Lawyers Association; American Bar Association's Equal Employment Opportunity Committee (Programs Committee).

**DARSANA SRINIVASAN**, Admitted to practice in New York, 2008; U.S. Court of Appeals for the Second Circuit, 2010; U.S. Court of Appeals for the Third Circuit, 2014; U.S. District Court, Southern District of New York, 2014; U.S. Supreme Court, New York, 2008. *Education:* Yale Law School (J.D., 2007); Mary A. McCarthy Fellowship in Public Interest Law; Project Manager, *Yale Law Journal*; Submissions Editor, *Yale Journal of Law & Feminism*. Stanford University (B.A., with Honors and with Distinction; 2003), Phi Beta Kappa. *Employment:* Assistant Solicitor General, New York State Office of the Attorney General Appeals & Opinions Bureau, 2009-2013; Assistant Attorney General, New York State Office of the Attorney General Civil Rights Bureau, 2008-2009; Health Law and Reproductive Rights Fellow, National Women's Law Center, 2007-2008.

**LIN Y. CHAN**, Admitted to practice in California; U.S. District Court, Northern District of California; U.S. District Court, Central District of California; U.S. Court of Appeals for the Fifth Circuit; U.S. Court of Appeals for the Ninth Circuit; U.S. Court of Appeals for the Tenth Circuit. *Education:* Wellesley College (B.A., *summa cum laude*, 2001); Stanford Law School (J.D., 2007); Editor-in-Chief, *Stanford Journal of Civil Rights and Civil Liberties*; Fundraising Chair, *Shaking the Foundations Progressive Lawyering Conference. Employment:* Associate, Goldstein, Borgen, Dardarian & Ho, 2008-2013; Associate, Goldstein, Demchak Baller Borgen & Dardarian, 2008-2012; Law Clerk to Judge Damon J. Keith, Sixth Circuit Court of Appeals, 2007-2008; Clinic Student, Stanford Immigrants Rights Clinic, 2006-2007; Union Organizer, SEIU Local 250, 2003-2004; Union Organizer, Service Employees International Union, 2002-2003; Wellesley-Yenching Teaching Fellow, Chinese University of Hong Kong, 2001-2002. *Presentations & Publications*: Author, "California Supreme Court Clarifies State Class Certification Standards in *Brinker*," American Bar Association Labor & Employment Law Newsletter (April 2013); Presenter, "Rule 23 Basics in Employment Cases," Impact Fund's 11th Annual Employment Discrimination Class Action Conference (February 2013); Chapter Author, The Class Action Fairness Act: Law and Strategies; Co-Author, "Clash of the Titans: Iqbal and Wage and Hour Class/Collective Actions," BNA, Daily Labor Report, 80 DLR L-1 (April 2010); Chapter Co-Chair, Lindemann & Grossman, Employment Discrimination Law Treatise, Fifth Edition; Chapter Monitor, Lindemann & Grossman, Employment Discrimination Law Treatise 2010 Cumulative Supplement. *Member:* American Association for Justice; Asian American Bar Association (Civil Rights Committee Co-Chair, 2011 – Present); Asian Americans Advancing Justice - Asian Law Caucus (Board Member, 2013 – present).

**JEROME MAYER-CANTÚ**, Admitted to practice in New York; California, 2013; U.S. District Court, Northern District of California; U.S. District Court, Central District of California; U.S. District Court, Southern District of New York; U.S. District Court, Eastern District of New York; U.S. Court of Appeals 11th Circuit. *Education:* Stanford Law School (J.D., 2010); top 30% of class (based on honors/pass system); *Stanford Law Review* (Executive Board, Senior Notes Editor); Stanford Latin-American Law Students Association. Georgetown University Law Center (1st year curriculum) 2007-2008; Dean's List; Recipient of Everett Merit Scholarship. University of California, Berkeley (B.A., 2005); Honors Thesis: *A Legal Analysis of the Darfur Crisis. Employment:* Law Clerk to Honorable Rudolph Contreras, U.S. District Court, District of Columbia, 2012; Law Clerk to Honorable Ricardo M. Urbina, U.S. District Court, District of Columbia, 2011-2012; Litigation Associate, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, 2010-2011; Intern to Chambers of Justice Carlos Moreno, Supreme Court of California, 2009; Intern to U.S. Department of Justice, Criminal Division, 2009; Summer Associate, Paul, Weiss, Rifkind, Wharton & Garrison, LLP, 2009; Intern to Chambers of Judge Milan D. Smith, Jr., U.S. Court of Appeals, 9th Circuit, 2008; Research Assistant to Professor Mariano-Florentino Cuellar, Stanford Law School, 2006-2007; Reporter, *Daily Star*, 2006; Researcher, Danish Refugee Council, 2006; Research Assistant, East-West Center, 2005; Legal Advisor, African & Middle Eastern Refugee Assistance, 2005. *Member:* Hispanic Bar Association of DC. *Languages:* Spanish (fluent), French (fluent), Portuguese (proficient), Arabic (proficient - Egyptian and Lebanese dialects).

**MARTIN DANIEL QUIÑONES**, *Education:* University of California, Berkeley, School of Law (J.D., 2013); First Year High Distinction (Top 10% of Class); First Prize: Mercer University 2011 Adam A. Milani Disability Law Writing Competition; Jurisprudence Award (Highest Grade in Course): Complex Civil Litigation, Spring 2012; Best Brief Award: Written and Oral Advocacy, Spring 2011; *California Law review* (Supervising Editor, Volume 101); *Berkeley Journal of Gender, Law, and Justice* (Marketing Editor, 2011-2012); Boalt Hall Queer

Caucus (Treasurer, 2011-2012); Law Students for Reproductive Justice (Chapter Board Member, 2010-2013). Brown University (B.A., 2008). *Employment*: Summer Associate, Lieff Cabraser Heimann & Bernstein, 2012; Spring Semester Law Clerk, Gender Equity and LGBT Rights Program, Legal Aid Society – Employment Law Center, 2012; Judicial Extern for the Honorable William Dorsey, U.S. Dept. of Labor, Office of Administrative Law Judges, 2011; Clinic Director (2011-2012), Volunteer Counselor (2010-2011), East Bay Workers' Rights Clinic, 2010-2012; Development Associate, Planned Parenthood League of Massachusetts, 2008-2010.

**JEREMY GLAPION,** Admitted to New York, 2013. *Education:* Harvard Law School (J.D., 2012); Dean's Scholar Prize; *Federal Litigation: Civil* (Spring 2010) HLS Exoneration Legal Project, President/Founder (2009-2011), Trial Advocacy Workshop (Fall 2011); HLS Student Government, Faculty Engagement (Fall 2010); *Journal of Sports & Entertainment Law*, Sub-citer. Louisiana State University (B.A., 2009); Golden Oaks Award – full merit scholarship. *Employment:* Law Clerk to Honorable Freda Wolfson, U.S. District Court, New Jersey, 2013; Litigation Associate, Gibson, Dunn & Crutcher, 2012-2013; Clinical Student, HLS Criminal Justice Institute, 2011-2012; Summer Associate, Smyser, Kaplan, & Veselka, 2011; Summer Associate, Gibson, Dunn & Crutcher, 2011; Lowenstein Sandler, Summer Associate/Lowenstein Sandler Scholar, 2010.

**KATHERINE LUBIN BENSON,** Admitted to California, 2008; Ninth Circuit Court of Appeals; Northern District of California. *Education:* University of California, Berkeley, Boalt Hall School of Law (J.D., 2008); Boalt Hall Mock Trial Team, 2006-2008; *First Place*, San Francisco Lawyer's Mock Trial Competition. University of California Los Angeles (B.A., Political Science, minor in Spanish, *cum laude*); Phi Beta Kappa; UCLA Honors Program; Political Science Departmental Honors; GPA 3.8. Universidad de Sevilla (2003). *Employment:* Associate, Orrick, Herrington & Sutcliff, LLP, 2008-2013; Summer Associate, Orrick, Herrington & Sutcliff, LLP, 2007; Judicial Extern to Honorable Dean D. Pregerson, 2006.

**KEVIN R. BUDNER,** Admitted to California; Northern District of California, 2014; Central District of California, 2014; U.S. District Court of Colorado, February 25, 2014. *Education:* University of California, Berkeley, Boalt Hall School of Law (J.D., 2012); American Jurisprudence Award in Advanced Legal Research (first in class); Prosser Prize in Negotiation (second in class); Edwin A. Heafey, Jr. Trial Fellowship Recipient; Board of Advocates Trial Team Member; American Association of Justice Trial Competition, 2012 National Semi-finalist, 2011 Regional Finalist; *Berkeley Journal of International Law,* Senior Editor. University of California Hastings fCollege of the Law (2009-2010); Class Rank 13/461 (top 3%); Legal Writing and Research (A+); CALI and Witkins Awards (first in class); Negotiation and Mediation Team, Board Member. Wesleyan University (B.A., Political Science). *Employment:* Judicial Clerk to U.S. District Judge Barbara M.G. Lynn, 2012-2013; Certified Student Counsel, East Bay Community Law Center, 2011-2012; Research Assistant, Duckworth Peters Lebowitz Olivier, LLP, 2011-2012; Summer Associate, Lieff Cabraser Heimann & Bernstein, LLP , 2011-2012; Judicial Extern to U.S. District Judge Phyllis J. Hamilton, 2010; Homeless Policy Assistant, Office of Mayor Gavin Newsom, 2009; Project Manager, Augustyn & Co. 2007-2009; Visiting Professor, University of Liberal Arts Bangladesh, 2006-2007; Researcher, Rockridge Institute, 2005, 2006. *Languages:* Spanish (proficient), Portuguese (proficient), Bengali (basic).

**JEREMY TROXEL**, Admitted to New York; New Jersey. *Education:*Harvard Law School (J.D., 2012); Harvard Civil Rights-Civil Liberties Law Review, Member; Prison Legal Action Program, Student Attorney; Problem Solving Workshop Case Study: *Early Stages of the Vioxx Injuries and MDL Litigation*. University of Hong Kong (Fall 2011); Visiting Scholar. New

York University (B.A., Politics, minors in Writing and History, 2009); Martin Luther King Jr. Social Justice Scholar; Sir Harold Acton Fellow; Catherine Reynolds Social Entrepreneurship Grant. New York University in Ghana (Fall 2007). New York University in Prague (Fall 2006). *Employment:* Associate, Morelli Ratner, P.C. (later known as Morelli Alters Ratner, P.C.), 2012-2013; Summer Associate, Lanier Law Firm, P.C., 2011; Student Attorney, Harvard Law Predatory Lending-Consumer Protection Clinic, 2010; Summer Associate, Beasley, Allen, Crow, Methvin, Protis & Miles, P.C., 2010; Animal Caregiver, Comunidad Inti Wara Yassi, Parque Ambue Ai Animal Refuge, 2009; Tutor & Assistant Teacher, America Reads, 2007; Assistant to Campaign Manager, Mark Green for Attorney General, 2006.

<u>Notice on the Firm's AV Rating</u>:  AV is a registered certification mark of Reed Elsevier Properties, Inc., used in accordance with the Martindale-Hubbell certification procedures, standards and policies.  Martindale-Hubbell is the facilitator of a peer review process that rates lawyers.  Ratings reflect the confidential opinions of members of the Bar and the Judiciary. Martindale-Hubbell Ratings fall into two categories—legal ability and general ethical standards.

# EXHIBIT 2

In re Cathode Ray Tube (CRT) Antitrust Litigation
Lieff Cabraser Heimann & Bernstein, LLP
Reported Hours and Lodestar
May 9, 2008 through July 31, 2014

| NAME | TOTAL HOURS | HOURLY RATE | LODESTAR |
|------|------------|-------------|----------|
| ATTORNEYS | | | |
| Richard Heimann (P) | 1.20 | $800 | $960.00 |
| Richard Heimann (P) | 0.50 | $825 | $412.50 |
| Richard Heimann (P) | 0.30 | $850 | $255.00 |
| Joseph Saveri (P) | 1.70 | $675 | $1,147.50 |
| Joseph Saveri (P) | 4.70 | $700 | $3,290.00 |
| Joseph Saveri (P) | 9.20 | $725 | $6,670.00 |
| Joseph Saveri (P) | 28.90 | $750 | $21,675.00 |
| Joseph Saveri (P) | 1.30 | $775 | $1,007.50 |
| Michele Jackson (P) | 13.00 | $675 | $8,775.00 |
| Michele Jackson (P) | 12.30 | $700 | $8,610.00 |
| Michele Jackson (P) | 2.00 | $750 | $1,500.00 |
| Michele Jackson (P) | 0.40 | $775 | $310.00 |
| Eric Fastiff (P) | 5.00 | $550 | $2,750.00 |
| Eric Fastiff (P) | 41.10 | $575 | $23,632.50 |
| Eric Fastiff (P) | 20.60 | $600 | $12,360.00 |
| Eric Fastiff (P) | 9.30 | $625 | $5,812.50 |
| Eric Fastiff (P) | 0.40 | $675 | $270.00 |
| Brendan Glackin (P) | 1.40 | $500 | $700.00 |
| Brendan Glackin (P) | 7.40 | $535 | $3,959.00 |
| Brendan Glackin (P) | 18.20 | $560 | $10,192.00 |
| Brendan Glackin (P) | 17.00 | $585 | $9,945.00 |
| Brendan Glackin (P) | 0.40 | $610 | $244.00 |
| Andrew Kingsdale (A) | 0.80 | $295 | $236.00 |
| Andrew Kingsdale (A) | 8.80 | $315 | $2,772.00 |
| Andrew Kingsdale (A) | 13.10 | $370 | $4,847.00 |
| Andrew Kingsdale (A) | 57.70 | $415 | $23,945.50 |
| Andrew Kingsdale (A) | 0.20 | $435 | $87.00 |
| Jordan Elias (A) | 20.80 | $410 | $8,528.00 |
| Jordan Elias (A) | 2.00 | $430 | $860.00 |
| Jordan Elias (A) | 0.30 | $475 | $142.50 |
| Lin Chan (A) | 7.20 | $435 | $3,132.00 |
| | | | |
| NON-ATTORNEYS | | | |
| Jacob Becklund (PL) | 27.70 | $180 | $4,986.00 |
| Brian Troxel (PL) | 3.00 | $215 | $645.00 |
| Brian Troxel (PL) | 14.30 | $225 | $3,217.50 |
| Brian Troxel (PL) | 20.90 | $235 | $4,911.50 |

EXHIBIT 2
1189759.1

| NAME | TOTAL HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| Brian Troxel (PL) | 15.80 | $260 | $4,108.00 |
| Brian Troxel (PL) | 22.90 | $285 | $6,526.50 |
| Brian Troxel (PL) | 24.20 | $295 | $7,139.00 |
| Brian Troxel (PL) | 8.50 | $305 | $2,592.50 |
| Alan Ruiz (PL) | 0.30 | $200 | $60.00 |
| Alan Ruiz (PL) | 0.30 | $225 | $67.50 |
| Stephen Shin (PL) | 2.20 | $225 | $495.00 |
| Yun Swenson (PL) | 14.10 | $270 | $3,807.00 |
| Samuel Deputy (PL) | 3.40 | $225 | $765.00 |
| Wenjie Cai (PL) | 11.00 | $250 | $2,750.00 |
| Renee Mukherji (PL) | 0.50 | $235 | $117.50 |
| Hisun Rim (PL) | 36.10 | $260 | $9,386.00 |
| Julie Zhu (PL) | 0.60 | $285 | $171.00 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| **TOTAL:** | 513.00 |  | $220,772.50 |

(P) Partner
(OC) Of Counsel
(A) Associate
(PL) Paralegal
(LC) Law Clerk

**EXHIBIT 2**
1189759.1

# EXHIBIT 3

In re Cathode Ray Tube (CRT) Antitrust Litigation
Lieff Cabraser Heimann & Bernstein, LLP
Reported Expenses Incurred on Behalf of DPPs

| CATEGORY | AMOUNT INCURRED |
|---|---|
| Court Fees (filing, etc.) | |
| Experts/Consultants | $10,833.00 |
| Federal Express | $52.71 |
| Transcripts (Hearing, Deposition, etc.) | |
| Computer Research | $1,403.99 |
| Messenger Delivery | |
| Photocopies – In House | $6,119.20 |
| Photocopies – Outside | |
| Postage | $1.05 |
| Service of Process | |
| Telephone/Telecopier | $129.80 |
| Travel (Airfare, Ground Travel, Meals, Lodging, etc.) | $266.81 |
| | |
| **TOTAL:** | $18,806.56 |
| | |

**EXHIBIT 3**
1189721.1