Guido Saveri (Bar No. 22349)
R. Alexander Saveri (Bar No. 173102)
Geoffrey C. Rushing (Bar No. 126910)
Cadio Zirpoli (Bar No. 179108)
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, California 94111
Telephone: (415) 217-6810
Facsimile:  (415) 217-6813

*Interim Lead Counsel for the*
*Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CRT ANTITRUST LITIGATION | Master File No. CV-07-5944-SC<br>MDL No. 1917 |
| This Document Relates to:<br><br>ALL DIRECT PURCHASER CLASS ACTIONS | **CLASS ACTION**<br><br>**DECLARATION OF JENNIFER W. SPRENGEL IN SUPPORT OF MOTION FOR  ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS** |

I, Jennifer W. Sprengel, declare and state as follows:

1.     I am a member of the law firm of Cafferty Clobes Meriwether & Sprengel LLP.  I submit this declaration in support of Direct Purchaser Plaintiffs ("DPP") joint application for an award of attorney fees in connection with the services rendered in this litigation. I make this Declaration based on my personal knowledge and if called as a witness, I could and would competently testify to the matters stated herein.

2.     My firm has served as counsel to Princeton Display Technologies, Inc. and as counsel for the class throughout the course of this litigation.  The background and experience of the Cafferty Clobes Meriwether & Sprengel LLP firm and its attorneys are summarized in the *curriculum vitae* attached hereto as Exhibit 1.

3.     Cafferty Clobes Meriwether & Sprengel LLP has prosecuted this litigation solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting claims against the defendants.  While Cafferty Clobes Meriwether & Sprengel LLP devoted its time and resources to this matter, it has foregone other legal work for which it would have been compensated.

4.     During the pendency of the litigation, Cafferty Clobes Meriwether & Sprengel LLP worked with co-counsel to coordinate litigation and discovery efforts.

5.     Attached hereto as Exhibit 2 is my firm's total hours and lodestar, computed at historical rates, from May 9, 2008 through July 31, 2014.  This period reflects the time spent after the appointment of Lead Counsel in the litigation.  The total number of hours spent by Cafferty Clobes Meriwether & Sprengel LLP during this period of time was 13 with a corresponding lodestar of $6,792.00.  This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm. The lodestar amount reflected in Exhibit 2 is for work assigned by Lead Class Counsel, and was performed by professional staff at my law firm for the benefit of the Direct Purchaser Plaintiff ("DPP") Class.

6.     The hourly rates for the attorneys and professional support staff in my firm included in Exhibit 2 are the usual and customary hourly rates charged by Cafferty Clobes

DECLARATION OF JENNIFER W. SPRENGEL IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF EXPENSES

Meriwether & Sprengel LLP.

7.    My firm has expended a total of $854.17 in unreimbursed costs and expenses in connection with the prosecution of this litigation. These costs and expenses are broken down in the chart attached hereto as Exhibit 3.  They were incurred on behalf of Direct Purchaser Plaintiffs by my firm on a contingent basis, and have not been reimbursed. The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

8.    Cafferty Clobes Meriwether & Sprengel LLP paid a total of $10,000 in assessments for the joint prosecution of the litigation against the defendants.

9.    I have reviewed the time and expenses reported by my firm in this case which are included in this declaration, and I affirm that they are true and accurate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 25, 2014 at Chicago, Illinois.

_____
Jennifer W. Sprengel

DECLARATION OF JENNIFER W. SPRENGEL IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS'
FEES AND REIMBURSEMENT OF EXPENSES

# EXHIBIT 1



**Chicago ● Philadelphia ● Ann Arbor**
www.caffertyclobes.com

## I.      Overview

Cafferty Clobes Meriwether & Sprengel LLP, which has offices in Chicago, Philadelphia, and Ann Arbor, combines the talents of attorneys with a wide range of experience in complex civil litigation. The skill and experience of CCMS attorneys has been recognized on repeated occasions by courts that have appointed these attorneys to major positions in complex multidistrict or consolidated litigation.   As the cases listed below demonstrate, these attorneys have taken a leading role in numerous important actions on behalf of investors, employees, consumers, businesses, and others. In addition, CCMS attorneys are currently involved in a number of pending class actions, as described on the Firm's web page.

## II.      Antitrust Class Actions and Litigation

*In re Insurance Brokerage Antitrust Litig.*, MDL No. 1663 (D.N.J.).   CCMS was appointed Co-Lead Counsel for plaintiffs who alleged that insurance brokers and insurers conspired to allocate customers in a complicated scheme to maximize their own revenues at the expense of class members.   The litigation concluded in August 2013 with final approval of last of five separate settlements that, in aggregate, exceeded $270 million.   *See:* (1) *In re Insurance Brokerage Antitrust Litig.,* MDL No. 1663, 2007 WL 542227, (D.N.J. Feb. 16, 2007) (approving $121.8 million settlement with the Zurich Defendants), *aff'd,* 579 F.3d 241(3d Cir. 2009);   (2) *In re Insurance Brokerage Antitrust Litig.,* MDL No. 1663, 2007 WL 2589950 (D.N.J. Sept. 4, 2007) (approving $28 million settlement with the Gallagher Defendants), *aff'd,* 579 F.3d 241(3d Cir. 2009); (3) *In re Insurance Brokerage Antitrust Litig.*, MDL No. 1663, 2009 WL 411877 (D.N.J. Feb. 17, 2009) (approving $69 million settlement with Marsh & McLennan Cos. Inc.); (4) *In re Insurance Brokerage Antitrust Litig.*, MDL No. 1663, 2012 WL 1071240 (D.N.J. Mar. 30, 2012) (approving $41 million settlement with several defendants, including AIG, Hartford, Fireman's Fund and Travelers); and (5) *In re Insurance Brokerage Antitrust Litig.*, MDL No. 1663, __ F. Supp. 2d __, 2013 WL 3956378 (D.N.J. Aug. 1, 2013) (approving $10.5 million settlement with ACE defendants, Chubb defendants and Munich Re defendants).   Judge Claire C. Cecchi recently observed that "Class counsel include notably skilled attorneys with experience in antitrust, class actions and RICO litigation."   *Id.* at *17; *see also In re Insurance Brokerage Antitrust Litig.*, MDL No. 1663, 2007 WL 1652303, at *6 (D.N.J. June 5, 2007).

*State of Indiana v. McWane*, Civ. No. 12-6667 (D.N.J.).   CCMS serves as counsel for the State of Indiana Attorney General, Greg Zoeller, in a case alleging that certain ductile iron pipe fittings ("DIPF") manufacturers conspired to fix prices and monopolize the market for DIPF through a series of agreements spanning several years.   The action further alleges that Indiana municipalities and political subdivisions overpaid for DIPF during that period as a result of the manufacturers' anticompetitive conduct.   The Honorable Anne E. Thompson denied the Defendants' motions to dismiss the State of Indiana's complaint as to all claims for damages as a result of those alleged overcharges.   *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Litig.*, Civ. No. 12-169, 2013 WL 5503308 (D.N.J. Oct. 2, 2013).



Chicago ● Philadelphia ● Ann Arbor
www.caffertyclobes.com

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL No. 1532 (D. Me.).  CCMS was appointed Class Counsel, together with other firms, in multidistrict litigation alleging that automobile manufacturers and other parties conspired to prevent lower priced new motor vehicles from entering the American market during certain periods, thereby artificially inflating prices.  *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 270 F.R.D. 30, 35 (D. Me. 2010).  On February 3, 2012, the court approved a $37 million settlement with Toyota and the Canadian Automobile Dealers' Association.  *In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL 1532, 2012 WL 379947 (D. Me. Feb. 3, 2012).

*In re TriCor Indirect Purchaser Antitrust Litig.*, No. 05-360 (D. Del).  CCMS was appointed Co-Lead Counsel for consumer and third-party payor plaintiffs who alleged that defendants engaged in unlawful monopolization in the market for fenofibrate products, which are used to treat high cholesterol and high triglyceride levels.  *See Abbott Laboratories v. Teva Pharmaceuticals, Inc.*, 432 F. Supp. 2d 408 (D. Del. 2006) (denying defendants' motions to dismiss).  On October 28, 2009, the court granted final approval to a $65.7 million settlement (an amount that excludes an initial payment to opt-out insurance companies).

*Nichols v. SmithKline Beecham Corp.*, No. Civ.A.00-6222 (E.D. Pa.).  CCMS served as Co-Lead Counsel for consumers and third-party payors who alleged that the manufacturer of the brand-name antidepressant Paxil misled the U.S. Patent Office into issuing patents that protected Paxil from competition from generic substitutes.  On April 22, 2005, Judge John R. Padova granted final approval to a $65 million class action settlement for the benefit of consumers and third-party payors who paid for Paxil.  *Nichols v. SmithKline Beecham Corp.*, No. Civ.A.00-6222, 2005 WL 950616, 2005-1 Trade Cas. (CCH) ¶74,762 (E.D. Pa. April 22, 2005). *See also Nichols v. SmithKline Beecham Corp.*, No. Civ.A.00-6222, 2003 WL 302352, 2003-1 Trade Cas. (CCH) ¶ 73,974 (E.D. Pa. Jan. 29, 2003) (denying defendant's motion to strike expert testimony).

*In re Relafen Antitrust Litig.* No. 01-12239 (D. Mass.).  On September 28, 2005, Judge William G. Young of the United States District Court for the District of Massachusetts granted final approval to a $75 million class action settlement for the benefit of consumers and third-party payors who paid for branded and generic versions of the arthritis medication Relafen.  In certifying an exemplar class of end-payors, the court singled out our Firm as experienced and vigorous advocates.  *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 273 (D. Mass. 2004).  In the opinion granting final approval to the settlement, the court commented that "Class counsel here exceeded my expectations in these respects [*i.e.*, experience, competence, and vigor] in every way."  *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 85 (D. Mass. 2005); *see also id.* at 80 ("The Court has consistently noted the exceptional efforts of class counsel.").  The litigation resulted in many significant decisions including:  286 F Supp. 2d 56 (D. Mass.  2003) (denying motion to dismiss); 346 F. Supp. 2d 349 (D. Mass. 2004) (denying defendant's motion for summary judgment).

*VisaCheck/MasterMoney Antitrust Litig.*, Master File No. 96-5238 (E.D.N.Y.).  CCMS's client, Burlington Coat Factory Warehouse, and the other plaintiffs alleged that Visa and MasterCard



violated the antitrust laws by forcing retailers to accept all of their branded cards as a condition of acceptance of their credit cards.  On June 4, 2003, the parties entered into settlement agreements that collectively provided for the payment of over $3.3 billion, plus widespread reforms and injunctive relief.  On December 19, 2003, the Settlement was finally approved by Judge John Gleeson.  On January 4, 2005, the Second Circuit Court of Appeals affirmed Judge Gleeson's decision.

*In re Warfarin Sodium Antitrust Litig.*, MDL 98-1232 (D. Del.).  Multidistrict class action on behalf of purchasers of Coumadin, the brand-name warfarin sodium manufactured and marketed by DuPont Pharmaceutical Company.  Plaintiffs alleged that the defendant engaged in anticompetitive conduct that wrongfully suppressed competition from generic warfarin sodium.  On August 30, 2002, the Court granted final approval to a $44.5 million settlement.  *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002).  On December 8, 2004, the Third Circuit upheld approval of the settlement. 391 F.3d 516 (3d Cir. 2004).

*In re Cardizem CD Antitrust Litig.*, MDL No. 1278 (E.D. Mich.).  Multidistrict class action on behalf of purchasers of Cardizem CD, a brand-name heart medication manufactured and marketed by Hoechst Marion Roussel, Inc.  Plaintiffs alleged that an agreement between HMR and generic manufacturer Andrx Corp. unlawfully stalled generic competition.  On October 1, 2003, Judge Nancy Edmunds granted final approval to an $80 million settlement for the benefit of consumers, third-party payors and state attorneys general.  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003), *app. dismissed*, 391 F.3d 812 (6th Cir. 2004).  The litigation resulted in several significant decisions, including: 105 F. Supp. 618 (E.D. Mich. 2000) (denying motions to dismiss); 105 F. Supp. 2d 682 (E.D. Mich. 2000) (granting plaintiffs' motions for partial summary judgment and holding agreement *per se* illegal under federal and state antitrust law); 200 F.R.D. 326 (E.D. Mich. 2001) (certifying exemplar end-payor class); 332 F.3d 896 (6th Cir. 2003) (upholding denial of motion to dismiss and grant of partial summary judgment).

*Blevins v. Wyeth-Ayerst Labs.*, No. 324380 (Sup. Ct. San Francisco Cty. CA).  Plaintiff alleged that Wyeth-Ayerst unlawfully monopolized the market for conjugated estrogen drug products through exclusive contracts with health benefit providers and pharmacy benefit managers.  On October 30, 2007, the court approved a $5.2 million settlement for a class of California purchasers of Wyeth-Ayerst's conjugated estrogen drug product.

*House v. GlaxoSmithKline PLC*, No. 2:02-cv-442 (E.D. Va.).  Plaintiffs alleged that GSK, which makes Augmentin, misled the United States Patent Office into issuing patents to protect Augmentin from competition from generic substitutes.  On January 10, 2005, the court entered and order approving a $29 million settlement for the benefit of consumers and third-party payors.

*In re Synthroid Marketing Litig.*, MDL No. 1182 (N.D. Ill).  This multidistrict action arises out of alleged unlawful activities with respect to the marketing of Synthroid, a levothyroxine product used to treat thyroid disorders.  On August 4, 2000, the court granted final approval of a consumer



settlement in the amount of $87.4 million.  *See* 188 F.R.D. 295 (N.D. Ill. 1999).  On August 31, 2001, approval of the settlement was upheld on appeal.  *See* 264 F.3d 712 (7th Cir. 2001).

*In re Lorazepam & Clorazepate Antitrust Litig.,* MDL 1290 (D.D.C.).  This multidistrict class action arose out of an alleged scheme to corner the market on the active pharmaceutical ingredients necessary to manufacture generic clorazepate and lorazepam tablets.  After cornering the market on the supply, defendants raised prices for generic clorazepate and lorazepam tablets by staggering amounts (*i.e.*, 1,900% to over 6,500%) despite no significant increase in costs.  On February 1, 2002, Judge Thomas F. Hogan approved class action settlements on behalf of consumers, state attorneys general and third party payors in the aggregate amount of $135 million.  *See* 205 F.R.D. 369 (D.D.C. 2002).

*In re Lithotripsy Antitrust Litig.,* No. 98 C 8394 (N.D. Ill.).  Antitrust class action arising out of alleged stabilization of urologist fees in the Chicago metropolitan area.  In granting class certification, Judge George Lindberg stated that "Miller Faucher [as CCMS was then known] is experienced in antitrust class action litigation and defendants do not dispute that they are competent, qualified, experienced and able to vigorously conduct the litigation."  *Sebo v. Rubenstien*, 188 F.R.D. 310, 317 (N.D. Ill. 1999).  On June 12, 2000, the court approved a $1.4 million settlement.  *In re Lithotripsy Antitrust Litig.*, 2000 WL 765086 (N.D. Ill. June 12, 2000).

*Brand-Name Prescription Drug Indirect Purchaser Actions*.  Coordinated antitrust actions against the major pharmaceutical manufacturers in ten states and the District of Columbia.  The actions were brought under state law on behalf of indirect purchaser consumers who obtained brand name prescription drugs from retail pharmacies.  In 1998, the parties agreed to a multistate settlement in the amount of $64.3 million, which was allocated among the actions. In approving state-specific settlements, the courts were highly complimentary of the performance of counsel.  In approving the Wisconsin Settlement, for example, Judge Moria G. Krueger commented that "this Court, in particular, has been helped along every step of the way by some outstanding lawyering and I believe that applies to both sides. ... You can hardly say that there's been anything but five star attorneys involved in this case".  *Scholfield v. Abbott Laboratories*, No. 96 CV 0460, Transcript of Hearing at 31 & 33 (Cir. Ct., Dane Co., Wisc., Oct. 5, 1998).  *See also McLaughlin v. Abbott Laboratories*, No. CV 95-0628, Transcript of Proceedings at 28 (Super. Ct., Yavapai County, Oct. 28, 1998) ("I think the quality of counsel is excellent.").  Reported decisions include: *Goda v Abbott Labs*, No. 01445-96, 1997 WL 156541, 1997-1 Trade Cas.  (CCH) ¶71,730  (Superior Court D.C., Feb 3, 1997) (granting class certification); *In re Brand Name Prescription Drugs Antitrust Litig.* (*Holdren, Yashin, Meyers*), 1998 WL 102734, 1998-1 Trade Cas.  (CCH) ¶72,140 (N.D. Ill., Feb. 26, 1998) (remanding three actions to state courts).

*In Re Cellular Phone Cases*, Coordination Proceeding No. 4000 (Superior Court, San Francisco County, Cal.).  Class action under California's Cartwright Act, which alleged price-fixing of cellular telephone service in the San Francisco area market.  On March 27, 1998, the court granted final approval to a settlement that provides $35 million in in-kind benefits to the Class and a release of debt in the amount of $35 million.



Chicago ● Philadelphia ● Ann Arbor
www.caffertyclobes.com

*Garabedian v. LASMSA Limited Partnership*, No. 721144 (Superior Court, Orange County, Cal.).  Class action under California's Cartwright Act which alleged price-fixing of cellular telephone service in the Los Angeles area market.  By order of January 27, 1998, the court granted final approval to two settlements that provide $165 million in in-kind benefits.

*Lobatz v. AirTouch Cellular*, 94-1311 BTM (AJB) (S.D. Cal.)  Class action alleging price-fixing of cellular telephone service in San Diego County, California.  On June 11, 1997, the court approved a partial settlement in the amount of $4 million.  On October 28, 1998, the Court approved another settlement that entailed $4 million worth of in-kind benefits.  In an order entered May 13, 1999, Judge Moskowitz stated that "[t]hrough the course of this complex and four-year long litigation, Class Counsel demonstrated in their legal briefs and arguments before this Court their considerable skill and experience in litigating anti-trust class actions..."

*In re Airline Ticket Commission Antitrust Litig.*, MDL No. 1058 (D. Minn.)  Antitrust class action on behalf of travel agents against the major airlines for allegedly fixing the amount of commissions payable on ticket sales. The action settled for $87 million. *See* 953 F. Supp. 280 (D. Minn. 1997).

## III.    Commodities and Securities Class Actions and Derivative Litigation

*In re Kaiser Group International*, Case No. 00-2263 (Bankr. D. Del.).  On December 7, 2005, Chief Judge Mary F. Walrath of the United States Bankruptcy Court for the District of Delaware granted final approval to a settlement that produced 175,000 shares of common stock for a class of former shareholders of ICT Spectrum Contructors, Inc. (a company that merged with ICF Kaiser Group International and ICF Kaiser Advanced Technology in 1998).  The settlement followed Judge Joseph J. Farnan's ruling which upheld the Bankruptcy Court's decision to award common stock of the new Kaiser entity (Kaiser Group Holdings, Inc.) to the Class of former Spectrum shareholders based on contractual provisions within the merger agreement.  *See Kaiser Group International, Inc. v. James D. Pippin* (*In re Kaiser Group International*), 326 B.R. 265 (D. Del. 2005).

*Danis v. USN Communications, Inc.,* No. 98 C 7482 (N.D. Ill.).  Securities fraud class action arising out of the collapse and eventual bankruptcy of USN Communications, Inc.  On May 7, 2001, the court approved a $44.7 million settlement with certain control persons and underwriters. Reported decisions:  73 F. Supp. 2d 923 (N.D. Ill. 1999); 189 F.R.D. 391 (N.D. Ill. 1999); 121 F. Supp. 2d 1183 (N.D. Ill. 2000).

*In re Sumitomo Copper Litig.*, 96 Civ. 4584(MP) (S.D.N.Y.).  Class action arising out of manipulation of the world copper market.  On October 7, 1999, the court approved settlements aggregating $134.6 million.  *See* 189 F.R.D. 274 (S.D.N.Y. 1999).  In awarding attorneys' fees, Judge Milton Pollack noted that it was "the largest class action recovery in the 75 plus year history of the Commodity Exchange Act". 74 F. Supp. 2d 393 (S.D.N.Y. Nov. 15, 1999).  Additional reported opinions: 995 F. Supp. 451 (S.D.N.Y. 1998); 182 F.R.D. 85 (S.D.N.Y. 1998).



*In re Exide Corp. Sec. Litig.,* No. 98-CV-60061 (E.D. Mich.).  Securities fraud class action arising out of sales and financial practices of leading battery manufacturer.  On September 2, 1999, Judge George Caram Steeh approved a settlement in the amount of $10.25 million.

*In re Caremark International Inc. Sec. Litig.,* No. 94 C 4751 (N.D. Ill.).  Securities fraud class action arising out of Caremark's allegedly improper financial arrangements with physicians.  On December 15, 1997, the court approved a $25 million settlement.

*In re Nuveen Fund Litig.,* No. 94 C 360 (N.D. Ill.).  Class action and derivative suit under the Investment Company Act arising out of coercive tender offerings in two closed-end mutual funds. On June 3, 1997, the court approved a $24 million settlement.  Magistrate Judge Edward A. Bobrick commented that "there's no question that the attorneys for the plaintiffs and the attorneys for the defendants represent the best this city [Chicago] has to offer ... this case had the best lawyers I've seen in a long time, and it is without question that I am committed to a view that their integrity is beyond reproach." (6/3/97 Tr. at 5-6.)

*In re Archer-Daniels-Midland, Inc. Sec. Litig.,* No. 95-2287 (C.D. Ill.).  Securities fraud class action arising out of the Archer-Daniels-Midland price-fixing scandal.  On April 4, 1997, the court approved a $30 million settlement.

*In re Soybean Futures Litig.,* No. 89 C 7009 (N.D. Ill.).  A commodities manipulation class action against Ferruzzi Finanziaria SpA and related companies for unlawfully manipulating the soybean futures market in 1989.  In December 1996, the court approved a settlement in the amount of $21.5 million.  *See* 892 F. Supp. 1025 (N.D. Ill. 1995).

*In re Prudential Securities Incorporated Limited Partnerships Litig.,* MDL 1005
(S.D.N.Y.).  A massive multidistrict class action arising out of Prudential Securities Incorporated's marketing and sale of speculative limited partnership interests.  On November 20, 1995, the court approved a partial settlement, which established a $110 million settlement fund.  *See* 912 F. Supp. 97 (S.D.N.Y. 1996).  On August 1, 1997, the court approved a partial settlement with another defendant in the amount of $22.5 million.

*Feldman v. Motorola, Inc.,* No. 90 C 5887 (N.D. Ill.)  Securities fraud class action against Motorola, Inc. and its high ranking officers and directors.  In June 1995, the court approved a $15 million settlement. *See* [1993 Transfer Binder], Fed. Sec. L. Rep. (CCH) ¶97,806 (N.D. Ill. Oct. 14, 1993).

*In re Salton/Maxim Sec. Litig.,* No. 91 C 7693 (N.D. Ill.).  Class action arising out of public offering of Salton/Maxim Housewares, Inc. stock.  On September 23, 1994, Judge James S. Holderman approved a $2.4 million settlement, commenting that "it was a pleasure to preside over [the case] because of the skill and the quality of the lawyering on everyone's part in connection with the case."



***Horton v. Merrill Lynch, Pierce Fenner & Smith, Inc.***, No. 91-276-CIV-5-D (E.D.N.C.).  A $3.5 million settlement was approved on May 6, 1994 in this securities fraud class action arising out of a broker's marketing of a speculative Australian security.  The Court stated that "the experience of class counsel warrants affording their judgment appropriate deference in determining whether to approve the proposed settlement." 855 F. Supp. 825, 831 (E.D.N.C. 1994).

***In re International Trading Group, Ltd. Customer Account Litig.***, No. 89-5545 RSWL (GHKx) (C.D. Cal.).  Class action alleging violation of the anti-fraud provisions of the Commodity Exchange Act.  The case settled with individual defendants and proceeded to a judgment against the corporate entity.  In that phase, the Court awarded the Class a constructive trust and equitable lien over the corporation's assets and entered a $492 million judgment in favor of the Class.  Approximately $7 million was recovered on the judgment.

***Hoxworth v. Blinder Robinson & Co.,*** No. 88-0285 (E.D. Pa.).  Securities fraud and RICO class action resulting from alleged manipulative practices and boiler-room operations in the sale of "penny stocks."  *See* 903 F.2d 186 (3rd Cir. 1990).  Judgment in excess of $70 million was obtained in February, 1992.  The judgment was affirmed by the Third Circuit Court of Appeals, 980 F.2d 912 (3rd Cir. 1992).  *See also Hoxworth v. Blinder,* 74 F.3d 205 (10th Cir. 1996).

***Benfield v. Steindler***, No. C-1-92-729 (S.D. Ohio).  Shareholder derivative suit on behalf of General Electric Corporation shareholders arising out of the sale of military aircraft engines to the government of Israel in violation of U.S. law.  On December 10, 1993, the Court approved a settlement in the amount of $19.5 million.  In a January 13, 1994 Report to the Court Concerning Attorney Fees, the Special Master characterized the firm as a "leading litigation" firm, and stated that the  "representation given plaintiff was first rate".

***In re Structural Dynamics Research Corporation Derivative Litig.***, No. C-1-94-650 (S.D. Ohio).  Shareholder derivative action arising out of Structural Dynamics's inaccurate reporting of its financial performance.  In approving a $5 million settlement on July 19, 1996, Judge Herman J. Weber stated that "in my mind the highest professional service a lawyer can give to his or her client is to terminate the litigation as early as possible and at the most economical cost to your clients.  The Court finds that the lawyers in this case have done just that..."

## IV.    Employee Benefits Class Actions

***Polk v. Hecht***, No. 92-1340 (D.N.J.).  Class action brought under the Employee Retirement Income Act of 1974 on behalf of all participants or beneficiaries under the Mutual Benefit Life Savings and Investment Plan for Employees on July 16, 1991, when Mutual Benefit Life Insurance Corporation was placed in rehabilitation.  On April 12, 1995, Judge Harold A. Ackerman approved a $4.55 million settlement, noting that "[c]ounsel did a darn good job, and the record should be clear on that point, that that is the opinion, for what it's worth, of this Court."



*In re Unisys Retiree Medical Benefits ERISA Litig.*, MDL No. 969 (E.D. Pa). Class action on behalf of over 25,000 retirees of Unisys Corporation concerning entitlement to retiree medical benefits. After trial, in November 1994, Chief Judge Cahn approved a partial settlement in the amount of $72.9 million. *See* 57 F.3d 1255 (3d Cir. 1995).

## V.    Consumer and Other Class Actions

*In re Midway Moving & Storage, Inc.'s Charges to Residential Customers*, No. 03 CH 16091 (Cir. Ct. Cook Cty., Il.). A class action on behalf of customers of Illinois' largest moving company whose final moving charges exceeded their pre-move written estimates. Plaintiffs alleged violation of the Illinois Consumer Fraud Act, breach of contract and breach of the covenant of good faith and fair dealing. A litigation class was certified and upheld on appeal. *See Ramirez v. Midway Moving and Storage, Inc.*, 880 N.E.2d 653 (Ill. App. 2007). On the eve of trial, the case settled on a class-wide basis. On October 12, 2012, the Court (Judge Richard J. Elrod) granted final approval and stated that CCMS is "highly experienced in complex and class action litigation, vigorously prosecuted the Class' claims, and achieved an excellent Settlement for the Class under which Class members will receive 100% of their alleged damages."

*Apple iPhone Warranty Litigation* (N.D. Cal.) On January 29, 2010, our firm, on behalf of Apple consumer Sean Pennington, filed the first of its kind class action against Apple in the Superior Court of Santa Clara County, with the goal of achieving a nationwide recovery for all similarly situated Apple consumers. The suit challenges Apple's policy of denying warranty claims based on liquid contact indicators located in headphone jacks and dock connector ports of iPhones and iPod touches. As alleged in Pennington's complaint, Apple's liquid contact indicators in the headphone jacks and dock connector ports do not indicate that a device has been abused or damaged by liquid. Rather, the location and nature of Apple's liquid contact indicators make them susceptible to turning pink due to humidity or red due to non-consequential amounts of liquid. This in turn leads to false indications of liquid damage or abuse. As a result, Pennington and other Apple consumers across the nation were improperly denied warranty coverage. After we filed the class action on behalf of Pennington, similar class actions were filed in federal courts on behalf of Apple consumers. Our firm coordinated discovery and settlement efforts with plaintiffs' counsel in the federal cases. Through investigation and discovery, our firm developed an extensive factual record supporting our goal of achieving a nationwide recovery by settlement or through litigation. Our firm, together with other counsel representing the state and federal plaintiffs, achieved a $53 million global settlement of the state and federal cases. On June 20, 2013, the Honorable Judge Richard Seeborg of the United States District Court for the Northern District of California entered an Order preliminarily approving the global settlement and appointing our firm State Plaintiffs' Liaison Counsel and Class Counsel, and appointing Sean Pennington and other plaintiffs as Class Representatives.

*Beattie v. CenturyTel, Inc.*, Civ. No. 02-10277 (E.D. Mich.). A class action on behalf of telephone customers in numerous states who were billed for an inside wire maintenance program improperly described in bills as "Non-Regulated Services." Plaintiffs alleged violation of the truth-in-billing requirements of the Federal Telecommunications Act. A litigation class was certified and



upheld on appeal.  *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007).  On July 9, 2010, the court granted final approval to a $13 million cash settlement.

***Grider v. Keystone Health Plan Central Inc. et al.***, Civ. No. 01-5641 (E.D. Pa.).  A class action filed on behalf of medical service providers who rendered services to patients insured by the defendants.  Plaintiffs alleged that the defendants improperly denied, delayed or reduced payments to medical providers for the services they rendered to class members.  On June 13, 2008, Judge Gardner, of the Eastern District of Pennsylvania, granted final approval to two settlements that fully resolved the case.  Under the terms of the settlement agreement, the defendants were required to pay class members almost $7.5 million and make substantial changes to the their business practices.  The estimated value of the business practice changes was $48 million.

***Walter Cwietniewicz d/b/a Ellis Pharmacy, et al. v. Aetna U.S. Healthcare***, June Term, 1998, No. 423 (Pa. Common Pleas).  On May 25, 2006, Judge Stephen E. Levin of the Court of Common Pleas of Philadelphia County, First Judicial District of Pennsylvania, Civil Trial Division, granted final approval to a settlement of a class action brought for the benefit of Pennsylvania pharmacies that participated in U.S. Healthcare's capitation program and had money withheld from capitation payments during the second half of 1996 and the first half of 1997.  The lawsuit alleged that participating pharmacies should have received certain semi-annual payments for these two six-month periods in order to be properly compensated for dispensing prescriptions to plan members.  At the final approval hearing, Judge Levin noted that "this particular case was as hard-fought as any that I have participated in" and with respect to the Class's reaction to the settlement achieved as a result of our firm's work: ". . . a good job, and the reason there should be no objection, they should be very very happy with what you have done."

***PrimeCo Personal Communications, L.P. v. Illinois Commerce Commission***, No. 98 CH 5500 (Circuit Court of Cook County, Ill.).  This class action sought recovery of an unconstitutional infrastructure maintenance fee imposed by municipalities on telephone and other telecommunications customers in the State of Illinois.  On August 1, 2002, the court granted final approval to a settlement of wireless telephone and pager customers' claims against the City of Chicago worth over $31 million.

***Gersenson v. Pennsylvania Life and Health Insurance Guaranty Assoc.***, No. 3468 (Pa. Common Pleas).  Class action against state insurance guaranty association brought on behalf of Pennsylvania resident insureds of Executive Life Insurance Co. for violating due process, and failing to pay required benefits and other monies.  Plaintiff's motion for summary judgment was granted and the court awarded plaintiff and the Class more than $18 million.  The judgment was upheld on appeal.

***Supnick v. Amazon.Com, Inc., and Alexa Internet***, No. 00-CV-221 (W.D. Wash.).  Class action against internet browsing service provider and its parent for violating user privacy by secretly collecting personally identifying information of users without informed consent.  On July 27, 2001, the court granted final approval to a settlement that included programmatic and monetary relief.



Chicago ● Philadelphia ● Ann Arbor
www.caffertyclobes.com

The FTC endorsed the settlement and elected to not prosecute defendants based, in part, on the relief achieved in the settlement with plaintiffs.

***Curley v. Cumberland Farms Dairy, Inc.***, No. 86-5057 (D.N.J.).  Class action arising out of convenience store chain's treatment of employees to prevent losses.  In September 1993, the court approved a settlement in the amount of $5.5 million.  In a November 12, 1993 opinion awarding attorneys fees, Judge Stanley S. Brotman noted that "petitioners [including Mr. Faucher and Ms. Meriwether] demonstrated in this case great skill and determination in representing their clients through the many stages of this lengthy and complex litigation."

## VI.    Individual Biographies

### PARTNERS

**PATRICK E. CAFFERTY** graduated from the University of Michigan, with distinction, in 1980 and obtained his J.D., *cum laude*, from Michigan State University College of Law in 1983.  In law school, he received the American Jurisprudence Award for study of commercial transactions law. From 1983 to 1985, he served as a prehearing attorney at the Michigan Court of Appeals and as a Clerk to Judge Glenn S. Allen, Jr. of that Court.  Mr. Cafferty is admitted to the state bars of Michigan and Illinois, the Supreme Court of the United States, the United States Courts of Appeals for the Federal, Second, Third, Fourth, Sixth and Seventh Circuits, and the United States District Courts for the Eastern District of Michigan, Western District of Michigan, and Northern District of Illinois.  In *In Telesphere Sec. Litig.*, Judge Milton I. Shadur characterized Mr. Cafferty's credentials as "impeccable." 753 F. Supp. 176, 719 (N.D. Ill. 1990).  In 2002, Mr. Cafferty was a speaker at a forum in Washington D.C. sponsored by Families USA and Blue Cross/Blue Shield styled "Making the Drug Industry Play Fair."  At the Health Action 2003 Conference in Washington D.C., Mr. Cafferty was a presenter at a workshop titled "Consumers' Access to Generic Drugs: How Brand Manufacturers Can Derail Generic Drugs and How to Make Them Stay on Track." In December 2010, Mr. Cafferty made a presentation on indirect purchaser class actions at the American Antitrust Institute's annual antitrust enforcement conference. *See Indirect Class Action Settlements* (Am. Antitrust Inst., Working Paper No. 10-03, 2010), *available at* http://www.antitrustinstitute.org/~antitrust/content/aai-working-paper-no-10-03-indirect-purchase-settlement-data-base-updated. Mr. Cafferty has attained the highest rating, AV®, from Martindale-Hubbell.

**BRYAN L. CLOBES** is a 1988 graduate of the Villanova University School of Law and received his undergraduate degree from the University of Maryland.  While in law school, Mr. Clobes clerked for Judge Arlin M. Adams of the United States Court of Appeals for the Third Circuit and Judge Mitchell H. Cohen of the United States District Court for the District of New Jersey.  In 1988, after graduating from law school, Mr. Clobes served as a law clerk to Judge Joseph Kaplan of the Maryland Circuit Court in Baltimore.  From 1989 through June, 1992, Mr. Clobes served as Trial Counsel to the Commodity Futures Trading Commission in Washington, D.C. Mr. Clobes authored *In the Wake of Varity Corp. v. Howe: An Affirmative Duty to Disclose Under ERISA,* 9 DePaul Bus. L.J.



Chicago ● Philadelphia ● Ann Arbor
www.caffertyclobes.com

221 (1997).  Mr. Clobes is also a member of the Amicus Committee of the National Association of Securities and Commercial Law Attorneys and he has authored briefs filed with the Supreme Court in a number of recent ERISA cases, including *Varity Corp. v. Howe* and *Schoonejongen v. Curtiss-Wright Corp.*  Mr. Clobes has attained the highest rating, AV®, from Martindale-Hubbell and has been named a "Pennsylvania Super Lawyer" in each of the past three years.  Mr. Clobes has been admitted to the bar in New Jersey and Pennsylvania, the Supreme Court of the United States, the United States Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Pennsylvania.

**ELLEN MERIWETHER** received her law degree from George Washington University, *magna cum laude*, in 1985.  She was a member of the *George Washington Law Review* and was elected to the Order of the Coif.  Ms. Meriwether received a B.A. degree, *with highest honors*, from LaSalle University in 1981.  She was an adjunct professor at LaSalle University teaching a course in the University's honors program from 1988-1993. Ms. Meriwether is a member of the Bar of the Commonwealth of Pennsylvania and is admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the Second, Third, Seventh, Tenth and Eleventh Circuits, and the United States District Court for the Eastern District of Pennsylvania. Ms. Meriwether is an active member of the Federal Courts Committee of the Philadelphia Bar Association, and has chaired several of its subcommittees. She is the course planner and moderator for the Committee's annual presentation of "My First Federal Trial," an award-winning program that gives young lawyers the opportunity to hear from a panel of federal judges from the Eastern District of Pennsylvania. She is a member of the Advisory Board of the American Antitrust Institute and is a frequent presenter on topics relating to complex, class action and antitrust litigation. She is a member of the Editorial Board for *Antitrust*, a publication by the section of Antitrust Law of the American Bar Association, and has published several articles in the magazine including "Putting the 'Squeeze' on Refusal to Deal Cases: Lessons from *Trinko* and *linkLine*," (Vol. 24, No. 2, Spring 2010) and "Rigorous Analysis in Certification of Antitrust Class Actions: A Plaintiff's Perspective." (Vol. 21, No. 3, Summer 2007).  In 2010, she was included in the US News and World Report Publication of "Best Lawyers in America" in the field of Antitrust Law, and in 2007, Ms. Meriwether was recognized in Philadelphia Magazine's Annual Survey as one of the "Top 50 Women Super Lawyers" in Pennsylvania.  Ms. Meriwether has been named a "Pennsylvania Super Lawyer" in each of the past five years, and has attained the highest rating, AV®, from Martindale-Hubbell.

**JENNIFER WINTER SPRENGEL** is a 1990 graduate of DePaul University College of Law, where she was a member of the *DePaul University Law Review*.  She received her undergraduate degree from Purdue University in 1987.  Ms. Sprengel has handled a variety of commercial litigation matters in both state and federal court. Ms. Sprengel is admitted to practice law in Illinois, the United States District Court for the Northern District of Illinois and the United States Court of Appeals for the Third and Seventh Circuits.  Ms. Sprengel currently serves as Co-Chair of the Class Action and Derivative Suits Committee of the American Bar Association's Litigation Section.

**ANTHONY F. FATA** is a 1999 graduate of The Ohio State University College of Law, where he graduated with honors and was elected to the Order of the Coif, served as Managing Editor of The



Ohio State Journal on Dispute Resolution, and earned the CALI award for Consumer Law and the CALI Excellence for the Future Award. Mr. Fata received his undergraduate degree from Miami University in 1995. Mr. Fata began his legal career in the trial and white collar practice groups at McDermott Will & Emery. Mr. Fata joined Cafferty Clobes Meriwether & Sprengel LLP in 2003. He has successfully prosecuted a wide range of commodities, securities, antitrust and consumer class actions. He has successfully represented the firm's business clients in a variety of commercial disputes and transactional matters and investor clients in securities arbitrations and regulatory proceedings. Among other publications, Mr. Fata authored *Doomsday Delayed: How the Court's Party-Neutral Clarification of Class Certification Standards in Wal-Mart v. Dukes Actually Helps Plaintiffs*," 62 DePaul Law Review 401 (Spring 2013), *Class Actions: Attaining Settlement Class Certification Under Amchem and Ortiz*, 19 *Product Liability Law & Strategy 1* (2001), and was a contributing author for *IICLE Securities Law*, Chapter 15 – Civil Remedies (2003). Among other speaking engagements, Mr. Fata was a panelist for the 22nd Annual DePaul Law Review Symposium, *Class Action Rollback? Wal-Mart v. Dukes and the Future of Class Action Litigation* (2012), and has been selected to serve as a panelist for the Practising Law Institute's *Internal Investigations: What to Do, and What Not to Do* (2013). Mr. Fata is admitted to the bar in Illinois, as well as the Sixth, Seventh and Ninth Circuit Courts of Appeals, the Northern District of Illinois (including the Trial Bar) and the District of Colorado.

**NYRAN ROSE RASCHE** received her undergraduate degree *cum laude* from Illinois Wesleyan University in 1995, and earned her law degree from the University of Oregon School of Law in 1999. Following law school, Ms. Rasche served as a clerk to the Honorable George A. Van Hoomissen of the Oregon Supreme Court. She is the author of *Protecting Agricultural Lands: An Assessment of the Exclusive Farm Use Zone System*, 77 Oregon Law Review 993 (1998). Ms. Rasche is admitted to practice in the state courts of Oregon and Illinois, as well as the United States District Courts for the Northern District of Illinois and the Southern District of Illinois. She is also a member of the American and Chicago Bar Associations.

**CHRISTOPHER B. SANCHEZ** is a 2000 graduate of the DePaul University College of Law, where he wrote for the *Journal of Art and Entertainment Law* and was the school's student representative for the Hispanic National Bar Association. He received his undergraduate degree, *cum laude*, from the University of New Mexico in 1996. Mr. Sanchez is admitted to practice in Illinois, as well as the United States District Court for the Northern District of Illinois and United States Court of Appeals for the Seventh Circuit. He is also a member of the Illinois State Bar Association and of the Hispanic National Bar Association.

## ASSOCIATES

**KELLY L. TUCKER** received her law degree from Fordham University School of Law in 2010, where she was an Executive Notes and Articles Editor of the Fordham Journal of Corporate and Financial Law and a member of the Executive Board of Fordham Law Moot Court. While in law school, Ms. Tucker published a Note on the subject of antitrust litigation entitled, *In the Wake of Empagran—Lights out on Foreign Activity Falling under Sherman Act Jurisdiction?*, 15 Fordham J. Corp. &



Fin. L 807 (2010) and served as a Judicial Intern to the Honorable Douglas Eaton, a Magistrate Judge in the District Court for the Southern District of New York. She earned her undergraduate degree from American University in 2003. Ms. Tucker joined the firm in 2011.

**DANIEL O. HERRERA** received his law degree, *magna cum laude*, and his MBA, with a concentration in finance, from the University of Illinois at Urbana-Champaign in 2008. Mr. Herrera received his bachelor's degree in economics from Northwestern University in 2004. Mr. Herrara joined CCMS as an associate in 2011 and is resident in its Chicago, Illinois Office. Prior to joining CCMS, Mr. Herrera was an associate in the trial practice of a Chicago-based national law firm, where he defended corporations in securities and antitrust class actions, as well as SEC and DOJ investigations and enforcement actions. Mr. Herrera also routinely handled commercial matters on behalf of corporate clients. Mr. Herrera is licensed to practice in Illinois and before the U.S. District Court for the Northern District of Illinois.

### OF COUNSEL

**DOM J. RIZZI** received his B.S. degree from DePaul University in 1957 and his J.D. from DePaul University School of Law in 1961, where he was a member of the *DePaul University Law Review*. From 1961 through 1977, Judge Rizzi practiced law, tried at least 39 cases, and briefed and argued more than 100 appeals. On August 1, 1977, Judge Rizzi was appointed to the Circuit Court of Cook County by the Illinois Supreme Court. After serving as circuit court judge for approximately one year, Judge Rizzi was elevated to the Appellate Court of Illinois, First District, where he served from 1978 to 1996. Judge Rizzi also teaches at both the undergraduate and graduate level: since 1980, he has been a part-time faculty member of the Loyola University School of Law and, since 1992, he has been a part-time faculty member at the University of Illinois-Chicago. Judge Rizzi became counsel to the firm in October, 1996.

# EXHIBIT 2

In re Cathode Ray Tube (CRT) Antitrust Litigation
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
Reported Hours and Lodestar
May 9, 2008 through July 30, 2014

| NAME | TOTAL HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| ATTORNEYS | | | |
| Bryan Clobes (P) | 1.2 | $585 | $702.00 |
| Bryan Clobes (P) | .4 | $600 | $240.00 |
| Bryan Clobes (P) | 7.3 | $625 | $4,562.50 |
| Bryan Clobes (P) | .6 | $650 | $390.00 |
| Emily Mirsky (A) | .3 | $475 | $142.50 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| NON-ATTORNEYS | | | |
| Ashleigh Latonick (PL) | .5 | $240 | $120.00 |
| Kathy Hollenstine (PL) | .8 | $230 | $184 .00 |
| Kathy Hollenstine (PL | 1.0 | $235 | $235.00 |
| Kathy Hollenstine (PL | .9 | $240 | $216.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **TOTAL:** | **13.0** | | **$6,792.00** |

(P) Partner
(OC) Of Counsel
(A) Associate
(PL) Paralegal
(LC) Law Clerk

# EXHIBIT 3

In re Cathode Ray Tube (CRT) Antitrust Litigation
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
Reported Expenses Incurred on Behalf of DPPs

| CATEGORY | AMOUNT INCURRED |
|---|---|
| Court Fees (filing, etc.) | $500.00 |
| Experts/Consultants | |
| Overnight Delivery | $22.50 |
| Transcripts (Hearing, Deposition, etc.) | |
| Computer Research | $72.08 |
| Messenger Delivery | $214.59 |
| Photocopies – In House | $45.00 |
| Photocopies – Outside | |
| Postage | |
| Service of Process | |
| Telephone/Telecopier | |
| Travel (Airfare, Ground Travel, Meals, Lodging, etc.) | |
| | |
| **TOTAL:** | $854.17 |
| | |