MARIO N. ALIOTO, ESQ. (56433)
JOSEPH M. PATANE, ESQ. (72202)
LAUREN C. RUSSELL, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA  94123
Telephone:  (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | ) Master File No. CV-07-5944 SC<br>)<br>) MDL No. 1917<br>)<br>) **DECLARATION OF RICHARD M.**<br>) **PEARL IN SUPPORT OF INDIRECT**<br>) **PURCHASER PLAINTIFFS' MOTION**<br>) **FOR ATTORNEYS' FEES,**<br>) **REIMBURSEMENT OF LITIGATION**<br>) **EXPENSES, AND INCENTIVE AWARDS**<br>)<br>)<br>) |
| **This document relates to:**<br><br>**ALL INDIRECT PURCHASER ACTIONS** | ) Hearing Date:  November 13, 2015<br>) Time:  10:00 a.m.<br>) Courtroom: One, 17th Floor<br>) Judge:  Honorable Samuel Conti<br>)<br>) |

1

I, Richard M. Pearl, declare:

1.      I am a member in good standing of the California State Bar.  I am in private practice as the principal of my own law firm, the Law Offices of Richard M. Pearl, in Berkeley, California.  I specialize in issues relating to court-awarded attorneys' fees, including the representation of parties in fee litigation and appeals, serving as an expert witness, and serving as a mediator and arbitrator in disputes concerning attorneys' fees and related issues.  In this case, I have been asked by Lead IPP Counsel for the Indirect Purchaser Plaintiffs ("IPP Lead Counsel") to render my opinion on the reasonableness of the percentage-based fee IPP Counsel are seeking from the $576.75 million common fund generated by the settlements in this matter and the lodestar-multiplier based fee they have submitted to the Court as a cross-check against the percentage-based fee.

**Professional Background**

2.      Briefly summarized, my background is as follows:  I am a 1969 graduate of Boalt Hall School of Law, University of California, Berkeley, California.  I took the California Bar Examination in August 1969 and passed it in November of that year, but because I was working as an attorney in Atlanta, Georgia for the Legal Aid Society of Atlanta (LASA), I was not admitted to the California Bar until January 1970.  I worked for LASA until summer of 1971, when I then went to work in California's Central Valley for California Rural Legal Assistance, Inc. (CRLA), a statewide legal services program.  From 1977 to 1982, I was CRLA's Director of Litigation, supervising more than fifty attorneys.  In 1982, I went into private practice, first in a small law firm, then as a sole practitioner.  Since 1982, my practice has been a general civil litigation and appellate practice, with an emphasis on cases and appeals involving court-awarded attorneys' fees.  Martindale Hubbell rates my law firm "AV."  I also have been selected as a Northern California "Super Lawyer" in Appellate Law for 2005, 2006, 2007, 2008, 2010, 2011, 2012, 2013, 2014, and 2015.  A copy of my current Resumé is attached hereto as Exhibit A.

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE
AWARDS – Master File No. CV-07-5944-SC

3.     I am the author of *California Attorney Fee Awards* (3d ed. Cal. CEB 2010) and its February 2011, 2012, 2013, 2014, and March 2015 Supplements, as well as all its previous editions and annual supplements.  California appellate courts have cited this treatise on more than 35 occasions.  *See, e.g., Graham v. DaimlerChrysler Corp.,* 34 Cal.4th 553, 576, 584 (2004); *Lolley v. Campbell,* 28 Cal.4th 367, 373 (2002); *Chacon v. Litke,* 181 Cal.App.4th 1234, 1259 (2010); *Syers Properties III, Inc. v. Rankin,* 226 Cal.App.4th 691, 698, 700 (2014).  I also have lectured and written extensively on court-awarded attorneys' fees.  I have been a member of the California State Bar's Attorneys' Fees Task Force and have testified before the State Bar Board of Governors and the California Legislature on attorneys' fee issues.  In addition, I authored a federal manual on attorneys' fees entitled *Attorneys' Fees:  A Legal Services Practice Manual*, published by the Legal Services Corporation.  I also co-authored the chapter on "Attorney Fees" in Volume 2 of CEB's *Wrongful Employment Termination Practice*, 2d Ed. (1997).

4.     More than 90% of my practice is devoted to issues involving court-awarded attorneys' fees.  I have been counsel in over **190** attorneys' fee applications in state and federal courts, primarily representing other attorneys.  I also have briefed and argued more than **40** appeals, at least 25 of which have involved attorneys' fees issues. I have been lead appellate counsel on numerous Ninth Circuit appeals involving attorneys' fees, including:

- *Davis v. City & County of San Francisco,* 976 F.2d 1536 (9th Cir. 1992);
- *Mangold v. CPUC,* 67 F.3d 1470 (9th Cir. 1995);
- *Velez v. Wynne,* 2007 U.S.App. LEXIS 2194 (9th Cir. 2007); and
- *Camacho v. Bridgeport Financial, Inc.,* 523 F.3d 973 (9th Cir. 2008).

5.     I also have successfully handled five cases in the California Supreme Court involving court-awarded attorneys' fees:

- *Maria P. v. Riles,* 43 Cal.3d 1281 (1987), a landmark early decision on the scope of California Code of Civil Procedure section 1021.5;

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE
AWARDS – Master File No. CV-07-5944-SC

1
2
3

- *Delaney v. Baker*, 20 Cal.4th 23 (1999), which held that heightened remedies, including attorneys' fees, are available in suits against nursing homes under California's Elder Abuse Act;

4
5
6
7
8

- *Ketchum v. Moses,* 24 Cal.4th 1122 (2001), which held, *inter alia*, that contingent risk multipliers remain available under California attorney fee law, despite the United States Supreme Court's contrary ruling on federal fee-shifting statutes (in *Ketchum*, I was primary appellate counsel in the Court of Appeal and "second chair" in the Supreme Court);

9
10
11

- *Flannery v. Prentice*, 26 Cal.4th 572 (2001), which held that in the absence of an agreement to the contrary, statutory attorneys' fees belong to the attorney whose services they are based upon; and

12
13
14

- *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 55 (2004), which held, *inter alia*, that the "catalyst" theory was still valid under California law despite contrary federal Supreme Court authority.

15  I also represented and argued on behalf of *amicus curiae* in *Conservatorship of McQueen*, 59
16  Cal.4th 602 (2014), and, along with Richard Rothschild, filed an *amicus curiae* brief in *Vasquez*
17  *v. State of California,* 45 Cal.4th 243 (2009).

18        6.        I also have briefed and argued many California Court of Appeal cases involving
19  attorneys' fees, including:

20
21

- *Center for Biological Diversity v. County of San Bernardino,* 185 Cal.App.4th 866 (2010);

22
23

- *Environmental Protection Information Center v. California Dept. of Forestry & Fire Protection, et al.*, 190 Cal.App.4th 217 (2010); and

24
25

- *Molina et al v. Lexmark International, et al.,* 2013 Cal.App.Unpub. LEXIS 6684 (2013).

26  For an expanded list of my representative decisions, *see* Exhibit A.

27

28

4

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS – Master File No. CV-07-5944-SC

7.    I have been retained by various governmental entities, including the State of California, at my then-current rates to consult with them regarding their affirmative attorney fee claims.  *See, e.g., In re Tobacco Cases I*, 216 Cal.App.4th 570, 584 (2013).

8.    I am frequently called upon to opine about the reasonableness of attorneys' rates and fees, and numerous federal and state courts have cited my testimony on that issue favorably. Perhaps most notably, my declaration testimony was cited favorably in the LCD Flat Panel litigation.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. M 07-1827 SI, MDL No. 1827 (N.D. Cal. 2013), Report and Recommendation of Special Master re Motions for Attorneys' Fees etc., filed Nov. 9, 2012, adopted in relevant part, 2013 U.S.Dist. LEXIS 49885.  My declaration testimony also has been cited favorably by the following federal courts:

- *Prison Legal News v. Schwarzenegger* 608 F.3d 446, 455 (9th Cir. 2010), in which the expert declaration referred to is mine;

- *Antoninetti v. Chipotle Mexican Grill, Inc.* (9th Cir. 2012), Order filed Dec. 26, 2012;

- *Holman et al v. Experian Information Solutions, Inc.,* No. 11-cv-0180 CW (DMR) 2014 U.S.Dist. LEXIS 173698 (N.D. Cal. 2014);

- *Rosenfeld v. United States Dept. of Justice,* 904 F. Supp. 2d 988 (N.D. Cal. 2012);

- *Stonebrae v. Toll Bros.,* No. C-08-0221 EMC, 2011 U.S.Dist. LEXIS 39832, at *9 (N.D. Cal. 2011) (thorough discussion), *aff'd* Nos. 11-16161, 11-16274, 2013 U.S.App. LEXIS 6369 (9th Cir. 2013);

- *Hajro v. United States Citizenship & Immigration Service,* 900 F.Supp.2d 1034, 1054 (N.D. Cal 2012);

- *Armstrong v. Brown* No. C 94-2307 CW, 2011 U.S.Dist. LEXIS 87428 (N.D. Cal. 2011);

- *Californians for Disability Rights, Inc. v. California Dept. of Transportation,* No. C 06-05125 SBA (MEJ), 2010 U.S.Dist. LEXIS 141030 (N.D. Cal. 2010);

5

1   • *Prison Legal News v. Schwarzenegger,* 561 F. Supp. 2d 1095 (N.D. Cal. 2008) (an

2   earlier motion);

3   • *Oberfelder v. City of Petaluma,* No. C-98-1470 MHP, 2002 U.S.Dist. LEXIS 8635

4   (N.D. Cal. 2002), *aff'd* Nos. 01-17302, 02-15423, 2003 U.S.App. LEXIS 11371

5   (9th Cir. 2003);

6   • *Bancroft v. Trizechahn Corp.,* No. CV 02-2373 SVW (FMOx), Order Granting

7   Reasonable Attorneys' Fees etc. (C.D. Cal. Aug. 14, 2006);

8   • *Willoughby v. DT Credit Corp.,* No. CV 05-05907 MMM (Cwx), Order Awarding

9   Reasonable Attorneys' Fees After Remand, (C.D. Cal. July 17, 2006);

10  • *A.D. v. California Highway Patrol,* No. C 07-5483 SI, 2009 U.S.Dist. LEXIS

11  110743 (N.D. Cal. 2009), *rev'd on other grounds,* 712 F.3d 446 (9th Cir. 2013),

12  *reaffirmed and additional fees awarded on remand,* at 2013 U.S.Dist. LEXIS

13  169275;

14  • *National Federation of the Blind v. Target Corp.,* No. C 06-01802 MHP, 2009

15  U.S.Dist. LEXIS 67139 (N.D. Cal. 2009).

16      9.      The reported cases referencing my testimony also include the following California

17  appellate court cases:

18  • *Laffitte v. Robert Half International Inc.,* 231 Cal.App.4th 860 (2014) (vacated

19  on grant of review);

20  • *In re Tobacco Cases I,* 216 Cal.App.4th 570 (2013);

21  • *Heritage Pacific Financial LLC v. Monroy,* 215 Cal.App.4th 972, 1009

22  (2013);

23  • *Children's Hospital & Medical Center v. Bonta*, 97 Cal.App.4th 740 (2002);

24  • *Wilkinson v. South City Ford,* 2010 Cal.App.Unpub. LEXIS 8680 (2010);

25  • *Church of Scientology v. Wollersheim,* 42 Cal.App.4th 628 (1996).

26  In addition, numerous trial courts have relied upon my testimony in unpublished fee orders.

27                                                          6

28  DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
    MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE
    AWARDS – Master File No. CV-07-5944-SC

**IPP Counsel's Request For A 33.3% Common Fund Fee Is Reasonable**

10.     In this case, I have been asked by IPP Counsel to express my opinion as to the reasonableness of the 33.3% percentage-based fee they are requesting and the lodestar – multiplier based fee they have presented as a cross-check.  To form this opinion, I have reviewed numerous documents in the case, including: the Indirect Purchasers' Motion for Preliminary Approval of Class Actions Settlements with the Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson, and TDA Defendants, including the approved Settlements; Indirect Purchaser Plaintiffs' [draft] Motion for Award of Attorneys Fees, Reimbursement of Litigation Expenses, and Incentive Awards to Class Representatives; and the draft declarations of numerous IPP Counsel, particularly the declaration of Lead IPP Counsel Mario N. Alioto, inlcuding the exhibits to Mr. Alioto's declaration.  I also have reviewed the court-approved website for the settlements, www.crtclaims.com.  I also have communicated about the case with Mr. Alioto and several IPP Counsel, including Dan Birkhaeuser, Lauren Capurro (Russell), Sylvie Kern, and Joe Patane.

11.     It is my understanding that IPP Counsel request a common fund attorneys' fee award of $192,250,000, which equates to one-third (33.3%) of the $576,750,000 fund provided by the Settlements in this matter.  I also have been informed that IPP Counsel's lodestar, using historical rates, is $83,753,999.05; the fee requested equates to a multiplier of 2.3 on this lodestar.  If current rates are used instead of historical rates, as is commonly done in class action common fund cases, the corresponding lodestar is $90,075,076.90, and the multiplier is only 2.13.

12.     In my opinion, a 33.3% fee from a $576,750,000 fund is well within the range of reasonable fee awards in comparable federal class actions.  For common fund fee applications like this one, district courts in the Ninth Circuit have the discretion to use either the lodestar method or the percentage-of-the-fund method in common fund cases. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  In light of the well-recognized disadvantages of the lodestar method  and the well-recognized advantages of the percentage-of-

7

1  the-fund method (*see* Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?*, 158 U.

2  Pa. L. Rev. 2043, 2051 (2010) [hereinafter "Class Action Lawyers"]), it is my opinion that courts

3  should generally use the percentage-of-the-fund method in common fund cases unless special

4  circumstances counsel otherwise (*e.g.*, the settlement calls for non-monetary relief that is more

5  substantial than the monetary relief but the non-monetary relief cannot be fairly valued).

6  Because there are no such special circumstances in this case, it is my opinion that the percentage-

7  of-the-fund method should be used here.

8         13.     Courts usually examine a number of factors when deciding what percentage to

9  award plaintiffs' counsel under the percentage-of-the-fund approach.  *See* Fitzpatrick, *An*

10  *Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811,

11  832 (2010) [hereinafter "Empirical Study"].  In the Ninth Circuit, courts use 25% as the "'bench

12  mark' percentage for the fee award," which "can then be adjusted upward or downward to

13  account for any unusual circumstances involved in the case."  *Paul, Johnson, Alston & Hunt v.*

14  *Graulty*, *supra,* 886 F.2d at 272; *see also Six Mexican Workers v. Arizona Citrus Growers*, 904

15  F.2d 1301, 1311 (9th Cir. 1990) (stating that the 25% benchmark percentage "should be adjusted

16  . . . when special circumstances indicate that the percentage recovery would be either too small or

17  too large in light of the hours devoted to the case or other relevant factors").

18         14.     In this District, many courts have concluded that the benchmark is actually closer

19  to 30%.  *See, e.g., In re Activision Secs. Litig.,* 723 F. Supp. 1373, 1377 (N.D. Cal. 1989)

20  (observing that "the benchmark is closer to 30%" and that the fee award in common fund cases

21  "almost always hovers around 30% of the fund created by the settlement"); *In re Omnivision*

22  *Techonologies*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (Conti, J.) ("in most common fund

23  cases, the award exceeds [the 25%] benchmark.").

24         15.     In various cases, the Ninth Circuit has identified several factors that district courts

25  may examine in deciding whether to increase or decrease an award from the benchmark:

26

27

28

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE
AWARDS – Master File No. CV-07-5944-SC

a. The results achieved by IPP Counsel.  *See Six Mexican Workers*, 904 F.2d at 1311; *Vizcaino, v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002);

b. The complexity of the case.  *See Six Mexican Workers*, 904 F.2d at 1311; *In re Pacific Enters. Securities Litig.*, 47 F.3d 373, 379 (9th Cir. 1995);

c. The risks the case involved.  *See In re Pacific Enters. Securities Litig.*, 47 F.3d at 379; *Vizcaino*, 290 F.3d at 1048-49;

d. The length of time the case has transpired.  *See Six Mexican Workers*, 904 F.2d at 1311; *Vizcaino,* 290 F.3d at 1050;

e. The non-monetary benefits obtained by IPP Counsel.  *See In re Pacific Enters. Securities Litig.*, 47 F.3d at 379; *Vizcaino*, 290 F.3d at 1049; *Staton v. Boeing*, 327 F.3d 938, 946 (9th Cir. 2003).

f. The percentages awarded in other class action cases.  *See Vizcaino*, 290 F.3d at 1050;

g. The percentages in standard contingency-fee agreements in similar individual cases. *See id.* at 1049; and

h. Plaintiffs' counsel's lodestar.  *See id.* at 1050-51.

16.     In my opinion, an award equal to 33.3% of the cash portions of each of the nine settlements here is within the range of reasonable fee awards under the Ninth Circuit's approach because the above factors strongly suggest that the award here should exceed the 25-30% benchmark, and 33.3% is a commonly awarded percentage in above-benchmark cases.  I base that opinion on the following  factors:

17.     **The Exceptional Results Obtained.**  In the legal marketplace, law firms that obtain excellent or exceptional results for their clients can and do expect that those exceptional results will be reflected in their fees.  Here, the results obtained are certainly exceptional: after eight years of litigation, much of it very intensive, counsel have achieved over $576 *million* in settlements, which, according to counsel, constitutes one of the largest indirect purchaser cash

9

1  settlement recoveries on record. These funds are non-reversionary, and IPP Counsel are confident

2  that the entire net fund will be claimed and distributed; in many cases, it appears very likely that

3  those who submit claims will be highly compensated for their losses.  This relief also goes far

4  beyond the relief obtained by government entities and provides significant incentive for

5  companies like the Defendants to avoid similar antitrust violations in the future.  In addition, IPP

6  Counsel have obtained non-monetary benefits in the form of the Defendants' agreement to

7  cooperate in securing similar relief from Defendants before they settled.  In my view, comparing

8  these exceptional results to the relief obtained in more typical class actions (*e.g.*, wage and hour

9  and securities class actions) provides strong support for adjusting the benchmark percentage

10  upward to 33.3%.

11      18.    **The Exceptional Novelty, Difficulty and Complexity of the Litigation.**  As the

12  Court is aware, both the legal and factual issues here were quite novel, difficult, and complex.

13  They are amply described in IPP Counsel's supporting memorandum and in Mr. Alioto's

14  declaration, and will not be repeated here.  Suffice it to say that they go far beyond the

15  complexities found in the vast majority of cases, a factor that also strongly justifies a significant

16  upward adjustment from the benchmark 25-30%.

17      19.    **The Extraordinary Risk Taken by IPP Counsel.**  In the legal marketplace,

18  lawyers who assume a significant financial risk on behalf of their clients rightfully expect that

19  their compensation will be significantly greater than it would be if no risk or delay were

20  involved, *i.e.*, under the traditional arrangement where the client is obligated to pay for costs and

21  fees incurred on a monthly basis, win or lose.  In my experience, attorneys are willing to take on

22  such contingent fee cases only if they can expect to receive significantly higher effective hourly

23  rates in successful cases, particularly in cases that are expected to be hard-fought and where the

24  result is uncertain, as was the case here.  As a result, in common fund cases, the risk taken by IPP

25  Counsel can and should be a significant factor in computing what percentage of the fund to

26  award.  *See, e.g., Allapattah Servs. Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 2004-05 (S.D. Fla.

27

28

10

1    2006) ("Factors indicating 'exceptional success' include success achieved under unusually

2    difficult or risky circumstances and the size of plaintiffs' recovery." [Citation omitted].)  As the

3    courts have recognized, fee awards that compensate for risk do not result in any "windfall" or

4    undue "bonus" for the attorney.  Rather, the fees awarded are *earned compensation*, reflecting the

5    need for the legal services market to compensate for the risk of non-payment for what can be

6    thousands of hours of time spent and many thousands of dollars in costs and expenses advanced.

7    Court-awarded fees that reflect that risk of loss simply make such representation competitive in

8    the legal marketplace.  *See Ketchum v. Moses,* 24 Cal.4th 1122, 1132-1138 (thorough discussion

9    of risk multipliers).

10           20.      Several factors made this case especially high risk:

11                    a.       The financial risk was staggering.  Over an eight-year period, IPP

12                             Counsel's law firms have expended approximately ***183,000 hours***, all on a

13                             contingent fee basis.  This is a tremendous commitment, much higher than

14                             in most cases, and consequently, one that imposed an exceptionally high

15                             risk: if this case had not been successful, IPP Counsel would have lost all

16                             of their lodestar totaling $83,753,999.05.  IPP Counsel also are out-of-

17                             pocket more than $3,174,647 for costs and expenses; these funds also

18                             would have been unrecoverable if the case had not been successfully

19                             resolved.

20                    b.       The legal obstacles were formidable.  As explained in IPP Counsel's

21                             memoranda and declarations, the difficulties and uncertainties of winning

22                             this case, in terms of unsettled antitrust law, unsettled class certification

23                             law, and difficult obstacles to obtaining facts, were far greater than in most

24                             class actions (many of which settle readily after class certification is

25                             decided).

26

27                                                                  11

28    DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
      MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE
      AWARDS – Master File No. CV-07-5944-SC

1         c.      Global entities such as many of the Defendants here had far more

2                 resources to resist suits of this nature than IPP Counsel had to prosecute it.

3                 Accordingly, Defendants were able to employ highly competent lawyers

4                 from many preeminent law firms to mount an aggressive defense.

5         d.      Settlement of the case came only after extensive, hard-fought litigation

6                 over discovery, class certification, and the merits, including preparation for

7                 a lengthy trial.  Contingent cases that must be tried or prepared for trial are

8                 always far riskier than cases that settle earlier in the process.  That is why

9                 contingent fee agreements call for higher percentages in cases that must be

10                tried or prepared for trial; the same principle applies here.

11 All of these facts show the extraordinary risk taken by IPP Counsel, justifying the lodestar

12 multiplier reflected in their percentage-based fee.

13      21.     **Percentage-Fees Approved in Other Cases.**  A 33.3% fee also is squarely in line

14 with the range of reasonable attorneys' fees awarded in other cases involving similar funds in

15 California and across the nation.  *See, e.g.,*:

16        •   *In re Pacific Enter. Sec. Litig.* , 47 F.3d 373 (9th Cir. 1995) (affirming 33-

17           percent fee award in shareholder derivative action);

18        •   *In re Vitamins Antitrust Litig.,* MDL 1285, 2001 WL 34312839, at *10

19           (D.D.C. 2001) (34.06% of $359,438,032);

20        •   *In Re IPO Secs. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (33.3% of

21           $510,253,000);

22        •   *In re Combustion, Inc.*, 968 F. Supp. 1116, 1136, 1142 (36% of

23           $127,396,000);

24        •   *In re Apollo Group, Inc. Secs. Litig.,* No. 04-2147, 2012 WL 1378677, at *7

25           (D. Ariz. 2012) (33% of $145 million);

26

27                                  12

28     DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
    MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE
    AWARDS – Master File No. CV-07-5944-SC

1    • *Allapattah Servs. v. Exxon,* 454 F. Supp. 2d at 1189 (31.33% of $1.075

2          billion).

3    22.     Surveys of class action recoveries nationwide also confirm that the fee requested

4    by IPP Counsel is reasonable.  According to Professor Fitzpatrick's empirical study, the most

5    common percentages awarded by all federal courts in 2006 and 2007 using the percentage-of-the-

6    fund method were 25%, 30%, and 33%, with nearly two-thirds of awards between 25% and 35%.

7    *See* Fitzpatrick, *Empirical Study, supra,* at 833-34, 838.  Professor Fitzpatrick also studied 111

8    settlements in the Ninth Circuit where the percentage-of-the-fund method was used, and the

9    resulting numbers were quite similar: the most common percentages were also 25%, 30%, and

10   33%, with the vast majority of awards also between 25% and 35%. *Ibid.*  Likewise, a 1999

11   analysis of 1,349 shareholder class actions conducted by National Economic Research Associates

12   concluded that "[f]ee amounts average approximately 32 percent of the settlement award."  D.

13   Martin, V. Juneja, T. Foster and F. Dunbar, *Recent Trends IV:  What Explains Filings and*

14   *Settlements in Shareholder Class Actions,* 5 Stan. J. L. Bus. & Fin. 121.

15   23.     Surveys of applicable reported fee decisions in California and throughout the

16   United States, as well as studies of both reported and unreported decisions, thus demonstrate that

17   common fund awards of 33.3%  have become frequent if not commonplace.  Placed within this

18   broader context, a fee of 33.3% of the fund for this long, heavily contested but highly successful

19   matter is certainly reasonable.

20   24.     **Percentages Used in Private Fee Arrangements.**  One object of a common fund

21   award is to set a fee that approximates the probable terms of a contingent fee contract negotiated

22   by sophisticated lawyers and clients in comparable private litigation, as evidenced by the terms of

23   such contingent fee contracts.  *See* Silver, *A Restitutionary Theory of Attorneys' Fees in Class*

24   *Actions* (1991) 76 Cornell L.Rev. 656, 702-703 (goal "is to pay attorneys on terms they would

25   probably accept in an ex ante bargain, before the outcome of litigation is known").  Private

26   contingent fee agreements in personal injury and other types of cases usually provide for fees of

27

28

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE
AWARDS – Master File No. CV-07-5944-SC

1   33-40%, with the higher percentages applied to cases resolved through litigation rather than early

2   settlement.  *See, e.g.*, Lester Brickman, *ABA Regulation of Contingency Fees:  Money Talks,*

3   *Ethics Walks*, 65 Fordham L. Rev. 247, 248 (1996) (noting that "standard contingency fees" are

4   "usually thirty-three percent to forty percent of gross recoveries" [emphasis omitted]); Herbert

5   M. Kritzer, *The Wages of Risk:  The Returns of Contingency Fee Legal Practice*, 47 DePaul L.

6   Rev. 267, 286 (1998) (reporting the results of a survey of Wisconsin lawyers, which found that

7   "[o]f the cases with a [fee calculated as a] fixed percentage [of the recovery], a contingency fee

8   of 33% was by far the most common, accounting for 92% of those cases").

9        25.    IPP Counsel's fee request is well within that range.  Here, it is beyond any

10   reasonable dispute that that if IPP Counsel had been able to negotiate a fee directly with the class

11   members, a 33.3% contingent fee would have been eminently reasonable for this complex a case,

12   one that seemed destined to result in a long trial. Given the prospective risks and difficulties of

13   this case, as well as the legal obstacles this case encountered until it was finally settled, for a class

14   member to obtain representation at no cost unless counsel was successful, and then at a cost of

15   only 33.3% of the total fund recovered, would have been quite reasonable. This is especially true

16   given the willingness of IPP Counsel's law firms to advance approximately 183,000 hours of

17   time spent on the case and $3,174,647 million in costs, with no hope of recovering those funds

18   unless the case was successful.

19        26.    I have reviewed extensive evidence of the contingency fee percentages charged by

20   law firms to sophisticated institutional clients in large damage cases.  In my experience, when

21   corporate or government clients hire law firms to litigate large claims on a contingent fee basis,

22   the contracts provide for fees in a range between 10 and 50 percent of the recovery.  *See* Fisk,

23   *Corporate Firms Try Contingency*, National Law Journal (Oct. 27, 1997) p. A-l.  Based on that

24   knowledge and my experience in the attorneys' fees field generally, it is my opinion that if

25   competent and experienced attorneys and a sophisticated client were to negotiate a contingency

26   fee agreement under the circumstances of this case, a sophisticated client would be more than

27

28

14

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE
AWARDS – Master File No. CV-07-5944-SC

1   willing to enter into a retainer agreement for a contingent fee under which: a) the client would

2   owe no fees unless the case was successful; b) the attorneys would pay all litigation expenses;

3   and c) the attorneys would recover, if successful, 33.3% of the total fund recovered.

4   **IPP Counsel's Lodestar/Multiplier Cross-Check Confirms That A 33.3% Fee Is**
**Reasonable**

5

6   27.   In my opinion, based on my extensive experience with attorneys' fee matters and

7   the legal marketplace, the reasonableness of counsel's percentage-based fee is confirmed by

8   cross-checking it against a lodestar-based fee: (a) The hourly rates utilized in the lodestar cross-

9   check are in line with those charged by comparably qualified attorneys for comparable work in

10  the legal marketplace; (b) the hours spent are consistent with those that would be expected in a

11  matter of this duration, complexity, and amounts at stake; and (c) regardless of whether historical

12  or current rates are used, the lodestar multipliers applied are consistent with the fees charged in

13  the legal marketplace and therefore reasonable. I base that opinion on the following:

14  **IPP Counsel's Hourly Rates Are Reasonable**

15  28.   I have reviewed a summary of the "Exhibit 2's" filed with each IPP Counsel

16  firm's declaration and from that review am aware of the hourly rates utilized by IPP Counsel in

17  their lodestar cross-check.  I am familiar with the backgrounds, qualifications, and rates of a

18  number of these firms, having served as an expert in the *TFT/LCD* matter.  I also have reviewed

19  the qualifications, background, and rates of the other firms who are submitting declarations, and

20  it is my opinion they are in line with the rates charged by comparably qualified attorneys in this

21  District for comparably complex work.

22  29.   Through my writing and practice, I have become familiar with the non-

23  contingent market rates charged by attorneys in California and elsewhere.  This familiarity has

24  been obtained in several ways:  (a) by handling attorneys' fee litigation; (b) by discussing fees

25  with other attorneys; (c) by obtaining declarations regarding prevailing market rates in cases in

26  which I represent attorneys seeking fees; and (d) by reviewing attorneys' fee applications and

27

28
DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE
AWARDS – Master File No. CV-07-5944-SC

1   awards in other cases, as well as surveys and articles on attorney's fees in the legal newspapers

2   and treatises.  I also have testified before trial courts or arbitrators on numerous occasions, and

3   have submitted expert testimony by declaration on hundreds of occasions: each of those efforts

4   require me to be aware of the hourly rates being charged.  The information I have gathered, some

5   of which is set forth below, shows that the rates requested by IPP Counsel are in line with the

6   non-contingent market rates charged in this District by attorneys of reasonably comparable

7   experience, skill, and reputation for reasonably comparable services.

8        30.      Comparable hourly rates have been found reasonable in numerous cases,

9   including the following:

10                                    **2015 Rates**

11       a.      *O'Bannon v. National Collegiate Athletic Assn.,* 2015 U.S. Dist. LEXIS

12       91514 (N.D. Cal. 2015), filed July 13, 2015, a group antitrust action, in which the court

13       found the following hourly rates reasonable:

14

| Years of Experience | Rate |
|---|---|
| 45 | $985 |
| 37 | 935-895 |
| 15 | 610-510 |
| 14 | 600 |
| 7 | 490 |
| 3 | 370 |
| Paralegals | 300-320 |
| Law Clerks | 325 |

25       b.      *Wynn v. Chanos,* 2015 U.S .Dist. LEXIS 80062 (N.D. Cal. 2015), filed

26       June 19, 2015, an anti-SLAPP fee award, in which the court found the following hourly

27                                         16

1    rates reasonable:

2

3
| Years of Experience | 2015/2014 Rates |
| --- | --- |
| 40 | $1085/1035 |
| 35 | 750 |
| 20 | 920/875 |
| 6 | 710/645 |
| 4 | 640/570 |

4

5

6

7

8

9

10    **2014 Rates**

11    a.    *Ammari v. Pacific Bell Directory,* Alameda Superior Court No.

12    RG05198014, Order Granting Plaintiffs' Application for Attorney's Fees, Reimbursement

13    of Costs, and Service Awards, filed January 5, 2015, a consumer class action, in which

14    the court found the following hourly rates reasonable:

15

16
| Years of Experience | Rate |
| --- | --- |
| 49 | $995 |
| 45 | 700 |
| 39 | 800 |
| 39 | 750 |
| 37 | 895 |
| 33 | 650 |
| 24 | 720 |
| 24 | 450 |
| 23 | 700 |
| 23 | 650 |

17

18

19

20

21

22

23

24

25

26

27

28

17

| | |
|---|---|
| 19 | 650 |
| 19 | 625 |
| 19 | 475 |
| 14 | 600 (as Partner) 475 (as Associate) |
| 12 | 340 |
| 11 | 500 |
| 9 | 375 |
| 8 | 655 |
| 4 | 375 |

b.    *Banas v. Volcano Corp.,* 47 F.Supp.3d 957 (N.D. Cal. 2014), a dispute over a merger agreement decided on summary judgment, in which the court found the following hourly rates reasonable:

| Years of Experience (in 2014) | 2012 | 2013 | 2014 |
|---|---|---|---|
| 31 | $975 | $1,035 | $1,095 |
| 17 | $670 | $710 | $770 |
| 9 | $550 | $645 | $685 |
| 7 | $500 | $585 | $685 |
| 6 | | $530 | $620 |
| 3 | | $355 | $445 |
| E-Discovery Staff Attorney | | $260 | $325 |
| Paralegal | $245 | $260 | $275 |
| Paralegal | | | $290 |

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS – Master File No. CV-07-5944-SC

**2013 Rates**

a.     *Ellis v. Costco Wholesale Corp.,* N.D. Cal. No. C04-3341 EMC, Order

Granting Motion for Final Approval of Class Action Settlement, filed May 27, 2014, an

employment class action, in which the court found the following hourly rates reasonable:

| Years of Experience | Rate |
|---|---|
| 38 | $700 |
| 35 | 825 |
| 30 | 650-825 |
| 29 | 875 |
| 19 | 725 |
| 9 | 500 |
| 8 | 460 |
| 7 | 425-575 |
| 6 | 435 |
| 3 | 315 |
| Paralegals | 155-295 |
| Law Clerks | 185-275 |

b.     *In re Pacific Bell Late Fee Litigation,* Contra Costa County Superior Ct.

No. MSC10-00840, Order Awarding Attorneys' Fees, Costs and Expenses and

Authorizing Payment of Incentive Award to the Class Representative, filed October 18,

2013, a consumer class action, in which the court found the following hourly rates

reasonable:

| Years of Experience | Rate |
|---|---|
| 17 | $850 |
| 16 | 680 |
| 11 (partner) | 680 |
| 36 | 675 |
| 32 | 675 |
| 28 (assoc.) | 620 |
| 4 | 400 |
| 3 | 390 |
| Paralegals and Litigation Support | 160-180 |

c.     *Reuters America LLC v. The Regents of the Univ. of Calif.*, Alameda County Superior Court No. RG12-613664, Order Granting in Part Motion of Plaintiff for Attorneys' Fees filed May 2, 2013, reversed on the merits sub nom *Regents of U.C. v. Superior Court*, 222 Cal.App.4th 383 (2014), a California Public Records Act action, in which the trial court found the following hourly rates reasonable, before applying a 1.3 lodestar multiplier:

| Years of Experience | Rate |
|---|---|
| 31 | $785 |
| 27 | 600 |
| 6 | 400 |

**2012 Rates**

a.     *In re TFT-LCD (Flat Panel) Antitrust Litigation,* 2013 U.S.Dist. LEXIS 49885 (N.D. Cal. 2013), an antitrust class action, in which the court found the following hourly rates reasonable:

20

**Zelle Hofman**

| Bar Admission | Rate |
| --- | --- |
| 1967 | $1000 |
| 1978 | 861 |
| 2001 | 619 |
| 2002 | 525 |
| 2005 | 500 |
| 2006 | 472 |
| 2009 | 417 |

**Stever, Lowenthal *et al.***

| Bar Admission | Rate 2012 | Rate 2011 | Rate 2010 |
| --- | --- | --- | --- |
| 1981 | $820 | $770 | $730 |
| 1995 | 660 | 640 | 590 |
| 2007 | 380 | 360 | 320 |
| 2008 | 380 | 360 | 320 |
| 1982 | 750 | 710 | 680 |
| Paralegal | 190 | | |

**Cooper & Kirkham**

| Bar Admission | Rates 2010-2012 |
| --- | --- |
| 1964 | $950 |
| 1975 | 825 |
| 2001 | 550 |

     b.     *Luquetta v. The Regents of the Univ. of California,* San Francisco Superior

Ct. No.CGC-05-443007, Order Granting Plaintiffs' Motion for Common Fund Attorneys'

Fees and Expenses, filed October 31, 2012, a class action to recover tuition overcharges, in which the court found the following hourly rates reasonable:

| Bar Admission | Rate |
| --- | --- |
| 1977 | $850 |
| 1986 | 785 |
| 1991 | 750 |
| 1994 | 700 |
| 1998 | 625 |
| 2000 | 570 |
| 2001 | 550 |
| 2002 | 520 |
| Law Clerks | 250 |
| Paralegals | 215 |

31.     Numerous other fee awards also show that counsel's historical rates for those periods are in line with rates found reasonable in other cases. These include:

- *Holloway et. al. v. Best Buy Co., Inc.,* No. 05-5056 PJH (N.D. Cal. 2011) Order dated November 9, 2011), a class action alleging that Best Buy discriminated against female, African American and Latino employees by denying them promotions and lucrative sales positions, in which the court approved a lodestar award based on rates of up to $825 per hour;

- *Californians for Disability Rights, Inc., et al. v. California Department of Transportation, et al.,* 2010 U.S.Dist. LEXIS 141030 (N.D. Cal. 2010), adopted by Order Accepting Report and Recommendation filed February 2, 2011, a class action in which the court found reasonable 2010 hourly rates of up to $835 per hour;

22

1      •   *Credit/Debit Card Tying Cases,* San Francisco County Superior Court, JCCP

2         No. 4335, Order Granting Plaintiffs' Motion for Attorneys' Fees, Expenses,

3         and Incentive Awards, filed August 23, 2010, an antitrust class action, in

4         which the court found reasonable 2010 hourly rates of $975 for a 43-year

5         attorney, $950 for a 46-year attorney, $850 for 32 and 38 year attorneys, $825

6         for a 35-year attorney, $740 for a 26-year attorney, $610 for a 13-year

7         attorney, $600 for a 9-year attorney, and $485 for a 5-year attorney, before

8         applying a 2.0 lodestar multiplier;

9      •   *Savaglio, et al. v. WalMart,* Alameda County Superior Court No. C-835687-7,

10         Order Granting IPP Counsel's Motion for Attorneys' Fees, filed September 10,

11         2010, a wage and hour class action, in which the court found reasonable rates

12         of up to $875 per hour for a 51-year attorney, $750 for a 39-year attorney, and

13         $775 for a 33-year attorney, before applying a 2.36 multiplier.

14    32.   I also base my opinion on several surveys of legal rates, including the following:

15      •   On January 5, 2015, the National Law Journal published an article about its

16         most recent rate survey entitled "Billing Rates Rise, Discounts Abound." A

17         true and correct copy of that article is attached hereto as Exhibit B. It contains

18         the rates charged by numerous law firms handling comparably complex

19         litigation in this area. IPP Counsel's attorneys' rates are well in line with

20         those rates.

21      •   On January 13, 2014, the National Law Journal published an article about its

22         most recent rate survey. That article included a chart listing the billing rates of

23         the 50 firms that charge the highest average hourly rates for partners. A true

24         and correct copy of that article is attached hereto as Exhibit C. Of the 50 firms

25         listed, several have offices in the San Francisco Bay Area and many others

26         have significant litigation experience in this area. And, although the rates that

27         some IPP Counsel are requesting here are considerably *lower* than  the rates

23

28

charged by the listed firms, the NLJ chart does show the rates requested here are in line with the rates charged by similarly qualified attorneys for similar services, which is the applicable standard. *See, e.g.*, *Davis v. City & County of San Francisco, supra,* 976 F.2d at 1547.

- The 2013 Real Rate Report Snapshot published by Ty Metrix/Legal Analytics summarizes the 2012 "real rates" for partners and associates in various cities. A copy of the relevant pages is attached hereto as Exhibit D.  It shows that for the San Francisco area law firms surveyed (309 partners, 327 associates), the Third Quartile partner rate in 2012 was **$800** per hour and the Third Quartile Associate rate in 2012 was **$525** per hour.  Given the excellent quality of the work performed and exceptional results obtained here, in my opinion the Third Quartile rates should serve only as a floor on counsel's rates – the primary attorneys in this matter would more appropriately be measured by the top ten percent (90th percentile) of attorneys.  Moreover, since 2012, many if not most California law firms have raised their rates by at least another 5-10%, with some raising them by 5% or so annually. Indeed, the Ty-Metrix survey shows that San Francisco partner rates rose 8.3% between 2010 and 2012, and associate rates rose 8.5% in the same period.

- In an article entitled "On Sale: The $1,150-Per Hour Lawyer," written by Jennifer Smith and published in the Wall Street Journal on April 9, 2013, the author describes the rapidly growing number of lawyers billing at $1,150 per hour or more revealed in public filings and major surveys.  A true and correct copy of that article is attached hereto as Exhibit E.  The article also notes that in the first quarter of 2013, the 50 top-grossing law firms billed their partners at an *average* rate between $879 and $882 per hour.

- On August 10, 2012, the San Francisco Daily Journal published an article summarizing the findings in the Valeo 2012 Halftime Report, a survey of legal billing rates conducted by Valeo Partners LLC.  A true and correct copy of

24

that article is attached hereto as Exhibit F.  That survey showed that in *2012*, the *average* partner and associate hourly rates in San Francisco were **$675** and **$482** respectively.  And again, **s**ince 2012, most firms have raised their rates by at least 5-10%.

- In an article published April 16, 2012, the Am Law Daily described the 2012 Real Rate Report, an analysis of $7.6 billion in legal bills paid by corporations over a five-year period ending in December 2011.  A true and correct copy of that article is attached hereto as Exhibit G.  That article confirms that the rates charged by experienced and well-qualified attorneys continued to rise over the five-year period between 2006 and 2011, particularly in large urban areas. It also shows, for example, that the top quartile of lawyers bill at an *average* of "just under $900 per hour."

- Similarly, on February 25, 2011, the Wall Street Journal published an on-line article entitled "Top Billers."  A true and correct copy of that article is attached hereto as Exhibit H.  That article listed the 2010 and/or 2009 hourly rates for more than 125 attorneys, in a variety of practice areas, who charged $1,000 per hour or more.

- On February 22, 2011, the ALM's Daily Report listed the 2006-2009 hourly rates of numerous San Francisco attorneys.  A true and correct copy of that article is attached hereto as Exhibit I.  Even though rates have increased significantly since that time (*see* Exhibit B), IPP Counsel's rates are well within the range of rates shown in this survey.

- The Westlaw CourtExpress Legal Billing Reports for May, August, and December 2009 (attached hereto as Exhibit J) show that in 2009, attorneys with as little as 19 years' experience were charging $800 per hour or more,

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS – Master File No. CV-07-5944-SC

and that the rates requested here are in line with  the range of those reported. Again, current rates are significantly higher.

- The National Law Journal's December 2010 nationwide sampling of law firm billing rates (Exhibit K) lists 32 firms whose highest rate was $800 per hour or more, eleven firms whose highest rate was $900 per hour or more, and three firms whose highest rate was $1,000 per hour or more.

- On December 16, 2009, The American Lawyer published an online article entitled "Bankruptcy Rates Top $1,000 in 2008-2009. That article is attached hereto as Exhibit L.  In addition to reporting that several attorneys had charged hourly rates of $1,000 or more in bankruptcy filings in Delaware and the Southern District of New York, the article also listed 18 firms that charged median partner rates of from $625 to $980 per hour.  Since by law, bankruptcy rates must be no higher than the rates charged for other types of similar work, these rates are probative here.

33.     Lastly, the standard hourly rates for litigation stated in court filings, depositions, surveys, or other sources by numerous law firms or law firms with offices or practices in California also support IPP Counsel's rates.  For example, numerous firms with offices in San Francisco, including  Altshuler Berzon LLP, Arnold & Porter LLP, Bingham McCutchen, Cooley LLP, Fenwick & West, and Rosen, Bien, Galvan & Grunfeld LLP, had numerous senior attorneys charging rates of $800 per hour or more in the 2007-2015 period.  A number of other California and San Francisco firms, some of whom represented Defendants in this litigation, including Gibson, Dunn & Crutcher LLP, Pillsbury Winthrop Shaw Pittman LLP, Sidley Austin, and Winston & Strawn, billed senior partners at rates in excess of $1,000 per hour during this period.

34.     More specifically, IPP Counsel's rates also are supported by the standard hourly non-contingent rates for comparable civil litigation stated in court filings, depositions, surveys, or

1  other reliable sources by numerous California law firms or law firms with offices or practices in

2  California. These rates include, in alphabetical order:

3

4  **Altshuler Berzon LLP**

| 2014 Rates: | Years of Experience | Rate |
|---|---|---|
|  | 38 | $895 |

| 2012 Rates: | Years of Experience | Rate |
|---|---|---|
|  | 34 | $850 |
|  | 26 | 785 |
|  | 21 | 750 |
|  | 18 | 700 |
|  | 14 | 625 |
|  | 12 | 570 |
|  | 11 | 550 |
|  | 10 | 520 |
|  | 6 | 410 |
|  | 5 | 385 |
|  | 4 | 335 |
|  | Law Clerks | 250 |
|  | Paralegals | 215 |

| 2011 Rates: | Years of Experience | Rate |
|---|---|---|
|  | 43 | $825 |
|  | 17 | 675 |
|  | 12 | 575 |
|  | 10 | 520 |
|  | Law Clerks | 225 |

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS – Master File No. CV-07-5944-SC

| | | | |
|---|---|---|---|
| 1 | | Paralegals | 215 |
| 2 | | | |
| 3 | **Arnold &** | | |
| 4 | **Porter LLP** | | |
| 5 | 2015 Rates: | Years of Experience | Rate |
| 6 | | 42 | $1,035 |
| 7 | | 41 | 990 |
| 8 | | 40 | 1,085 |
| 9 | | 22 | 875 |
| 10 | | 20 | 920 |
| 11 | | 6 | 710 |
| 12 | | 4 | 640 |
| 13 | | 3 | 500 |
| 14 | 2014 Rates: | Years of Experience | Rate |
| 15 | | 49 | $995 |
| 16 | | 41 | 985 |
| 17 | | 40 | 945 |
| 18 | | 39 | 1,035 |
| 19 | | 21 | 835 |
| 20 | | 19 | 875 |
| 21 | | 5 | 645 |
| 22 | | 3 | 570 |
| 23 | | 2 | 430 |
| 24 | | Legal Assistant | 300-325 |
| 25 | 2013 Rates: | | Rate |
| 26 | | | |
| 27 | | | |
| 28 | | | |

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS – Master File No. CV-07-5944-SC

| | | |
|---|---|---|
| 40 | | $955 |
| 20 | | 795 |
| Average Partner | | |
| | | 815 |
| Highest Partner | | 950 |
| Lowest Partner | | 670 |
| Average Associate | | 500 |

**The Arns Law Firm LLP**

| 2014 Rates: | Years of Experience | Rate |
|---|---|---|
| | 37 | $950 |
| | Law Clerks | 165 |

**Bingham McCutchen**

| 2013 Rates: | Average Partner | $795 |
|---|---|---|
| | Highest Partner | 1,080 |
| | Lowest Partner | 220 |
| | Average Associate | 450 |
| | Highest Associate | 605 |

**Burson & Fisher**

| 2013 Rates: | Years of Experience | Rate |
|---|---|---|
| | 16 | $680-850 |
| | 11 | 680 |
| | 4 | 400 |
| | 3 | 390 |

29

| | | | | |
|---|---|---|---|---|
| 1 | | 2 | | 375 |
| 2 | | 1 | | 300 |
| 3 | | Law Clerks | | 225 |
| 4 | | Litigation Support Specialists | | 180 |

**Cooley LLP**

| 2012-2014 Rates: | Years of Experience (in 2014) | 2012 | 2013 | 2014 |
|---|---|---|---|---|
| | 31 | $975 | $1,035 | $1,095 |
| | 17 | 670 | 710 | 770 |
| | 9 | 550 | 645 | 685 |
| | 7 | 500 | 585 | 685 |
| | 6 | | 530 | 620 |
| | 3 | | 355 | 445 |
| | Paralegal | | 260 | 325 |
| | Paralegal | 245 | 260 | 275 |
| | Paralegal | | | 290 |

**Cotchett, Pitre & McCarthy LLP**

| 2014 Rates: | Years of Experience | Rate |
|---|---|---|
| | 33 | $775 |
| | 22 | 775 |
| | 15 | 500 |
| | 4 | 360 |

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS – Master File No. CV-07-5944-SC

|  | Paralegals, case assistants, law clerks | 225-250 |
|---|---|---|

**Covington Burling**

| 2014 Rates | Level | Rate |
|---|---|---|
|  | Average Partner | $780 |
|  | Highest Partner | 890 |
|  | Lowest Partner | 605 |
|  | Average Associate | 415 |
|  | Highest Associate | 565 |
|  | Lowest Associate | 320 |

**Fenwick & West**

| 2014 Rates | Years of Experience | Rate |
|---|---|---|
|  | 29 | $825-930 |
|  | 17-18 | 715-750 |
|  | 9-11 | 660-690 |
|  | 5 | 375-560 |
|  | 3 | 505 |
|  | Paralegal | 240-345 |
|  | Staff Support | 290 |
| 2013 Rates | 18 | $755 |
|  | 11 | 595 |
|  | 2 | 425 |
| 2012 Rates | 40 | $865 |

31

| | | |
|---|---|---|
| | 17 | 755 |
| | 10 | 595 |

**Gibson Dunn & Crutcher LLP**

| 2015 Rates: | Years of Experience | Rate |
|---|---|---|
| | 37 | $1,125 |
| | 23 | 955 |
| | 3 | 575 |
| 2014 Rates | 36 | $1,080 |
| | 22 | 910 |
| | 9 (Of Counsel) | 740 |
| | 6 | 690 |
| | 2 | 485 |
| 2013 Rates | 35 | $1,040 |
| | 5 | 625 |
| | Paralegal | 345 |

**Hausfeld LLP**

| 2014 Rates | Years of Experience | Rate |
|---|---|---|
| | 45 | $985 |
| | 37 | 935-895 |
| | 15 | 610-510 |
| | 14 | 600 |
| | 7 | 490 |
| | 3 | 370 |
| | Paralegals | 300-320 |

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS – Master File No. CV-07-5944-SC

| | | | |
|---|---|---|---|
| | Law Clerks | | 325 |

**Irell & Manella**

| | | | |
|---|---|---|---|
| 2013 Rates | Average Partner | | $890 |
| | Highest Partner | | 975 |
| | Lowest Partner | | 800 |
| | Average Associate | | 535 |
| | Highest Associate | | 750 |
| | Lowest Associate | | 395 |

**Jones Day**

| | | | |
|---|---|---|---|
| 2013 Rates | Average Partner | | $745 |
| | Highest Partner | | 975 |
| | Lowest Partner | | 445 |
| | Average Associate | | 435 |
| | Highest Associate | | 775 |
| | Lowest Associate | | 205 |

**Kiesel, Boucher, Larson LLP**

| | | | |
|---|---|---|---|
| 2012 Rates | Years of Experience | | Rate |
| | Partners | | |
| | 27-28 | | $890 |
| | Associates | | 625-325 |

**Kingsley & Kingsley**

| | | | |
|---|---|---|---|
| 2010 Rates | Years of Experience | | Rate |

33

| | | |
|---|---|---|
| 14 | | $655 |
| 8 | | 475-515 |
| 7 | | 475 |
| 6 | | 485 |
| 5 | | 375 |
| 3 | | 350 |
| 2 | | 300 |

**Kirkland & Ellis**

| 2013 Rates | Average Partner | $825 |
|---|---|---|
| | Highest Partner | 995 |
| | Lowest Partner | 590 |
| | Average Associate | 540 |
| | Highest Associate | 715 |
| | Lowest Associate | 235 |

**Latham & Watkins**

| 2013 Rates | Average Partner | $990 |
|---|---|---|
| | Highest Partner | 1,100 |
| | Lowest Partner | 895 |
| | Average Associate | 605 |
| | Highest Associate | 725 |
| | Lowest Associate | 465 |

**Lieff Cabraser Heimann & Bernstein, LLP**

| 2014 Rates | Year of Bar Admission | Rate |
|---|---|---|

34

| | | |
|---|---|---|
| 1 | 1998 | $825 |
| 2 | 2001 | 600 |
| 3 | 2006 | 435 |
| 4 | 2009 | 415 |
| 5 | 2013 | 325 |
| 6 | Paralegal/Clerk | 305 |

| | | | |
|---|---|---|---|
| 7 | 2013 Rates | 1975 | $925 |
| 8 | | 1998 | 800 |
| 9 | | 2001 | 525 |
| 10 | | 2003 | 490 |
| 11 | | 2006 | 415 |
| 12 | | 2009 | 395 |
| 13 | | 2013 | 320 |
| 14 | | Paralegal/Clerk | 285 |

**Morrison Foerster LLP**

| 2013 Rates | Level | Rate |
|---|---|---|
| | Average Partner | $865 |
| | Highest Partner | 1,195 |
| | Lowest Partner | 595 |
| | Average Associate | 525 |
| | Highest Associate | 725 |
| | Lowest Associate | 230 |

**O'Melveny & Myers**

35

| 2013 Rates | Level | Rate |
|---|---|---|
| | Average Partner | $715 |
| | Highest Partner | 950 |
| | Lowest Partner | 615 |
| 2012 Rates: | Years of Experience | Rate |
| | 12 | $695 |
| | 4 | 495 |

**Orrick Herrington & Sutcliffe**

| 2014 Rates | Level | Rate |
|---|---|---|
| | Average Partner | $845 |
| | Highest Partner | 1,095 |
| | Lowest Partner | 715 |
| | Average Associate | 560 |
| | Highest Associate | 710 |
| | Lowest Associate | 375 |

**Paul Hastings LLP**

| 2014 Rates | Level | Rate |
|---|---|---|
| | Average Partner | $815 |
| | Highest Partner | 900 |
| | Lowest Partner | 750 |
| | Average Associate | 540 |
| | Highest Associate | 755 |
| | Lowest Associate | 595 |

36

**Pillsbury Winthrop Shaw Pittman LLP**

| 2013 Rates | Level | Rate |
|---|---|---|
| | Average Partner | $865 |
| | Highest Partner | 1,070 |
| | Lowest Partner | 615 |
| | Average Associate | 520 |
| | Highest Associate | 860 |
| | Lowest Associate | 375 |
| 2010 Rates | Partners | |
| | 30 | $705-775 |
| | Other Partners | 595-965 |
| | Associates | 320-650 |
| | Paralegals/Support Staff | 85-380 |

**Rosen, Bien, Galvan & Grunfeld LLP**

| 2015 Rates | Years of Experience | Rate |
|---|---|---|
| | Partners | |
| | 53 | $930 |
| | 35 | 840 |
| | 34 | 775 |
| | 31 | 710 |
| | 18 | 690 |
| | 9 | 525 |
| | Associates | 380-490 |
| | Paralegals | 250-295 |
| | Law Students | 275 |

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE
AWARDS – Master File No. CV-07-5944-SC

| | | | |
|---|---|---|---|
| 1 | | Support Staff | 85-220 |
| 2 | <u>2014 Rates</u> | Partners | |
| 3 | | 52 | $900 |
| 4 | | 34 | 800 |
| 5 | | 30 | 675 |
| 6 | | 17 | 650 |
| 7 | | Associates | 350-550 |
| 8 | | Paralegals | 230-290 |
| 9 | | Law Students | 260 |
| 10 | | Support Staff | 80-215 |
| 11 | <u>2013 Rates</u> | Partners | |
| 12 | | 51 | $875 |
| 13 | | 33 | 780 |
| 14 | | 29 | 660 |
| 15 | | 16 | 630 |
| 16 | | Of Counsel | |
| 17 | | 30 | 580 |
| 18 | | Associates | |
| 19 | | 20 | 550 |
| 20 | | 10 | 480 |
| 21 | | 9 | 465 |
| 22 | | 8 | 445-450 |
| 23 | | 7 | 440 |
| 24 | | 6 | 435 |
| 25 | | 5 | 405 |
| 26 | | 4 | 375 |
| 27 | | | |
| 28 | | | |

38

|  | | | |
|---|---|---|---|
| | | 3 | 355 |
| | | Paralegals | 220-280 |
| | | Litigation Support/ Paralegal clerk | 170 |
| | | Law Clerk/Students | 250 |
| | | Word Processing | 80 |
| | 2012 Rates | Partners | |
| | | 50 | $860 |
| | | 32 | 760 |
| | | 28 | 640 |
| | | 15 | 610 |
| | | Of Counsel | |
| | | 29 | 570 |
| | | Associates | |
| | | 19 | 540 |
| | | 10 | 470 |
| | | 9 | 460 |
| | | 7 | 400 |
| | | 6 | 400 |
| | | 5 | 380 |
| | | 4 | 360 |
| | | 3 | 340 |
| | | Paralegals | 215-280 |
| | | Litigation Support/ Paralegal clerk | 150 |
| | | Law Clerk/Students | 240 |
| | | Word Processing | 80 |

39

| | | |
|---|---|---|
| 2011 Rates | Partners | |
| | 49 | $840 |
| | 31 | 740 |
| | 27 | 625 |
| | 14 | 590 |
| | Of Counsel | |
| | 28 | 540 |
| | Associates | |
| | 18 | 525 |
| | 11 | 465 |
| | 10 | 450 |
| | 9 | 440 |
| | 8 | 420 |
| | 6 | 385 |
| | 5 | 365 |
| | 4 | 350 |
| | 3 | 325 |
| | 2 | 315 |
| | Paralegals | 205-275 |
| | Litigation Support/ Paralegal clerk | 140-220 |
| | Law Clerk/Students | 225 |
| | Word Processing | 75 |
| 2010 Rates | Partners | |
| | 48 | $800 |
| | 30 | 700 |
| | 26 | 575 |

40

| | | |
|---|---|---|
| 13 | | 560 |
| Of Counsel | | |
| 27 | | 520 |
| Associates | | |
| 17 | | 510 |
| 13 | | 490 |
| 9 | | 430 |
| 8 | | 415 |
| 7 | | 390 |
| 5 | | 360 |
| 3 | | 325 |
| 1 | | 285 |
| Paralegals | | 200-275 |
| Litigation Support/ Paralegal clerk | | 135-220 |

**Sidley Austin**

| 2010 Rates | Years of Experience | Rate |
|---|---|---|
| | Partners | |
| | 33 | $900 |
| | Senior Partners | 1,100 |
| | Legal Assistants | 120-280 |

**Skadden, Arps, Slate, Meagher & Flom**

| 2013 Rates | Average Partner | $1,035 |
|---|---|---|
| | Highest Partner | 1,150 |
| | Lowest Partner | 845 |

41

| | | |
|---|---|---|
| Average Associate | | 620 |
| Highest Associate | | 845 |
| Lowest Associate | | 340 |

**Wilson Sonsini Goodrich & Rosati PC**

| 2010 Rates | Years of Experience | Rate |
|---|---|---|
| | 28 | $875 |
| | Other Partners | 650-975 |
| | Associates | 290-610 |
| | Paralegals/Litigation Support | 120-300 |

35.    In addition, the rates charged by counsel in *Apple Inc. v. Samsung Electronics Co. Ltd.,* N.D. Cal. No. 11-cv—01846-LKK (PSG), support the rates requested here.  In that case, according to the declaration filed by Diane C. Hutnyan on July 22, 2012 (Dkt. No. 1275), Quinn Emanuel Urquhart & Sullivan LLP, counsel for defendant Samsung, charged median partner rates of $821 per hour and median associate rates of $448 per hour.

36.    The foregoing data shows that the non-contingent rates requested by IPP Counsel's attorneys for their work on behalf of Plaintiffs as part of their lodestar calculation are well within the range of non-contingent rates charged by comparably qualified attorneys for reasonably similar work.

37.    As noted, the hourly rates set forth above are those charged where full payment is expected promptly upon the rendition of the billing and without consideration of factors other than hours and rates.  If any substantial part of the payment were to be contingent or deferred for any substantial period of time, for example, the fee arrangement would be adjusted accordingly to compensate the attorneys for those factors.  *See* ¶¶ 39-46 *infra.*

**The Number Of Hours Is Within The Expected Range**

1    38.    Based on my review of the materials noted above, and my extensive experience

2  with comparable class action cases, the number of hours expended by IPP Counsel here appears

3  to be in the ballpark for a case of this broad scope, extreme complexity, and long duration, and

4  therefore reasonable.  I do not purport to have done a time entry by time entry type review of

5  counsel's time records or to have reviewed parts of the file not listed above.  I have, however,

6  reviewed a significant sample of the time allocations for many of the principal IPP Counsel firms

7  and they appear to be quite reasonable to me.  In addition, the vigorous defense tendered by the

8  Defendants, which were represented by numerous high caliber law firms, supports this view, as

9  does the exceptional work performed by all IPP Counsel, as set forth in detail in the Declaration

10 of Mario Alioto.  It also appears that IPP Counsel have exercised significant billing judgment,

11 both by eliminating all time devoted to internal matters and this motion, and by counsel's Audit

12 Committee's careful review of all the firms' time summaries.

13           **The Lodestar/Multiplier Is Reasonable**

14    39.    In my opinion, the 2.3 or 2.13 lodestar-multipliers reflected in a 33.3%

15 percentage-based fee (depending on whether current or historical rates are used) also are

16 consistent with the legal marketplace and eminently reasonable.  My opinion is based on the

17 following factors:  (a) the exceptional results obtained for the class; (b) the extremely complex

18 nature of this long-lasting litigation, and the difficulties and obstacles overcome; (c) the great risk

19 counsel took in pursuing this case on a wholly contingent basis; (d) the delay in payment (when

20 historical rates are used); (e) the continuing obligations of counsel to the class; (f) the public

21 service performed;  (g) a comparison to the lodestar multipliers applied in comparable cases; and

22 (h) the contingent fees charged in the private marketplace.

23    40.    Several of these factors have been discussed previously: the exceptional results

24 achieved for the class (¶ 17), the extremely complex and difficult nature of this lengthy litigation

25 (¶ 18), and the enormous financial risk taken by plaintiffs' counsel (¶¶ 19-20).  Those factors will

26 not be discussed again here; instead, the Court is respectfully referred to the cited paragraphs.

27

28  DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE
AWARDS – Master File No. CV-07-5944-SC

1    Other factors, however, are relevant primarily to a lodestar-multiplier determination, and they too

2    demonstrate that the multiplier applied here by a 33.3% fee is reasonable.  Those factors are:

3         41.    **The Delay in Payment.**  To the extent historical rates are used to calculate IPP

4    Counsel's lodestar, the plain fact is that those figures provide no compensation to IPP Counsel

5    for the long delays in receiving compensation for work done as long ago as 2007.  As the

6    Supreme Court has recognized: "Clearly, compensation received several years after the services

7    were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same

8    dollar amount received reasonably promptly as the legal services are performed, as would

9    normally be the case with private billings." *Missouri v Jenkins*, 491 U.S. 274, 283 (1989).   That

10   delay factor alone would account for a significant multiplier.

11        42.    **The Continuing Obligations of Counsel to the Class.**  IPP Counsel's requested

12   multiplier also is reasonable in light of the fact that a 33.3% fee awarded will compensate not

13   only the work already performed but possibly all future work as well, *i.e.*, their continuing

14   obligation to the class members to oversee the claims payment process.  In addition, since it is a

15   fair possibility that one or more objectors will challenge the settlement and perhaps appeal any

16   approval, IPP Counsel will likely be required to protect the class's interests before the Ninth

17   Circuit Court of Appeals.  In effect, this means that the current lodestar could actually be

18   understated, and the 2.13 or 2.3 multipliers may actually be lower.

19        43.    **The Public Service Performed by IPP Counsel.** The public interest served by

20   Plaintiffs' lawsuit also supports the fee sought.  *See State v. Meyer* (1985) 174 Cal.App.3d 1061,

21   1073 (the "public service element . . . and motivation to represent consumers and enforce laws"

22   may justify lodestar enhancement).  In this case, IPP Counsel have enforced our nation's antitrust

23   and consumer protection laws against some of the world's largest corporations.  The fundamental

24   importance of these laws has been repeatedly recognized: An award of the requested fee will

25   encourage other attorneys to take on similar cases and deter the Defendants and other

26   manufacturers from engaging in similar unlawful practices. *See, e.g., Chabner v. United of*

27
                                            44

1   *Omaha Life Ins. Co.*, 1999 U.S.Dist.LEXIS 16552 (N.D.Cal. 1999) at *19-21, *aff'd*, 225 F.3d

2   1042 (9th Cir. 2000).

3       44.    Moreover, by settling this case prior to trial rather than continuing to litigate issues

4   that remain somewhat unsettled, IPP Counsel have obtained exceptional results for the class at far

5   less expense to the parties, their counsel, and the Court.  They also have obtained those results

6   more quickly and surely than if the matter had been litigated to final resolution through the

7   appellate process.  This factor also supports the lodestar enhancement used in the cross-check.

8   *See Lealao v. Beneficial California, Inc.,* 82 Cal.App.4th 19, 51 (2000).

9       45.    **The Lodestar Multipliers Applied in Other Cases.** A comparison to the lodestar

10   multipliers applied in other cases also shows that either a 2.13 or 2.3 lodestar enhancement is

11   well within the range of multipliers applied in comparable cases.  *See, e.g.*, *Vizcaino v. Microsoft*

12   *Corp.*, 290 F.3d at 1050 (looking to multipliers awarded in comparable cases as evidence of

13   reasonableness).  Indeed, it is quite modest: significantly greater multipliers --  4.0 and above --

14   have often been applied in fee awards from common funds.  *See also Van Vranken v. Atlantic*

15   *Richfield Co.*, 901 F.Supp. 294, 298 (N.D. Cal. 1995) ("multipliers in the 3 – 4 range are

16   common lodestar awards in lengthy and complex class action litigation").  As the court observed

17   in *In re Nasdaq Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 489(S.D.N.Y. 1998):

18

19           The percentage fee award in this case represents a multiplier of
   approximately 3.97 times IPP Counsel's lodestar of $36,191,751. A

20           multiplier of 3.97 is not unreasonable in this type of case. Indeed,
   as noted by the Honorable Leonard B. Sand, "In recent years

21           multipliers of between 3 and 4.5 have become common." *Rabin v.
   Concord Assets Group, Inc.,* [1991-92 Transfer Binder] Fed. Sec.

22           L. Rep. (CCH) ¶ 96,471 (S.D.N.Y.1991) (applying a 4.4
   multiplier), *quoting O'Brien v. National Property Analysts,* 88 Civ.

23           4153, Tr. p. 72 (S.D.N.Y. July 27, 1989).

24   Numerous other fee awards confirm this point. For example, in *Craft v. County of San*

25   *Bernardino,* 624 F.Supp.2d 1113, 1125 (C.D. Cal. 2008), the Central District, citing a multitude

26   of cases, upheld a common fund award that equated to a lodestar multiplier of 5.2 :

27   45

28

A 25% of the fund award will result in a multiplier of approximately 5.2. While this is a high end multiplier, there is ample authority for such awards resulting in multipliers in this range or higher. *See, e.g., In Re Merry-Go-Round Enterprise, Inc.* (Bankr.D.Md.2000) 244 B.R. 327 (40% award for $71 million fund awarded, resulting in a cross-check <u>multiplier of 19.6</u>); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.,* 2005 WL 1213926 (E.D.Pa.) ($100 Million class fund in antitrust case, with an award of 20% of the fund, which amounted to a <u>multiplier of 15.6</u>); *In re Rite Aid Corp. Sec. Litig.,* 146 F.Supp.2d 706 (E.D.Pa.2001) (in $193 Million fund, IPP Counsel awarded fee of 25% of fund, which amounted to $48 Million and represented a <u>multiplier of 4.5-8.5</u>, which the court described as "handsome but "unquestionably reasonable"); *In re Cendant Corp. PRIDES Litigation,* 243 F.3d 722, 732 (3rd Cir.2001) (5.7% of $341,500,000 settlement awarded, resulting in <u>multiplier of 7</u>); *In re Rite Aid Corp. Sec. Litig,* 362 F.Supp.2d 587 (E.D.Pa.2005) (25% of $126,800,000 fund awarded; <u>multiplier of 6.96</u>); *In Re IDB Communication Group, Inc.,* Sec. Litig., No. 94-3618 (C.D.Cal. Jan. 17, 1997) (Hupp, J.), cited at 19 Class Action Reports 472-73 (1996) (16.5% of $83 Million fund awarded; <u>multiplier of 6.2</u>); *In re RJR Nabisco,* 1992 WL 210138 (25% of $72.5 Million fee awarded; <u>multiplier of 6</u>); *In re Charter Communications, Inc., Securities Litigation,* 2005 WL 4045741, 18 (E.D.Mo.2005) (20% of fund awarded in recovery of $146,250,000, <u>multiplier of 5.61</u>); *Roberts v. Texaco, Inc.,* 979 F.Supp. 185, 197 (S.D.N.Y.1997) (fee award of approximately 16.7% of the fund, <u>multiplier of 5.5</u>, plus fund set aside to compensate for post-settlement work); *Di Giacomo v. Plains All Am. Pipeline,* Nos. H-99-4137, H-99-4212, 2001 U.S. Dist. LEXIS 25532, at 31, 2001 WL 3463337 at 10 (S.D.Tex. Dec. 18, 2001) (awarding 30% of $29.5 Million fund; <u>multiplier of 5.3</u>); *In re Beverly Hills Fire Litigation,* 639 F.Supp. 915 (E.D.Ky.1986) (fee of $4,121,926 in settlement of $14 Million; <u>multiplier of 5 for lead counsel</u>); *Kuhnlein v. Department of Revenue,* 662 So.2d 309, 315 (Fla.1995) (class fund award of 10% of $188,100,000, resulting in multiplier of approximately 15, reduced by Fla. Supreme Court to <u>multiplier of 5 times lodestar,</u> because lodestar was proper method under Florida law); *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.,* 364 F.Supp.2d 980 (D.Minn.2005) (25% of $80M settlement; <u>multiplier of 4.7</u>); *Wilson v. Bank of Am. Natl. Trust & Savs. Assn.,* No. 643872 (Cal.Sup.Ct.9/16/82) (multiplier of 10 times then hourly rate of $150), cited in *Newberg,* 14:6, p. 578, F3d 373, 378-379. The 25% is substantially below the average

class fund fee fn.87; *Cosgrove v. Sullivan,* 759 F.Supp. 166, 167 n. 1 (S.D.N.Y.1991) (1% of $100 Million right to Medicare reimbursement awarded, resulting in <u>multiplier of 8.74</u>). (Emphasis added.)

*See also, e.g., In re Rite Aid Corp. Secs. Litig.* 396 F.3d 294, 298-99 (3d Cir. 2005 ("Performing a lodestar cross-check to confirm the fees' reasonableness, the court found a 'handsome,' yet 'fairly common' lodestar multiplier of 4.07 based upon 12,906 hours billed since the fee application in *Rite Aid I* at an hourly rate of $605."); *Vizcaino,* 290 F.3d at 1052-1054 (Appendix of 34 common fund cases between 1996 and 2001, showing lodestar multipliers ranging from 0.6 to 19.6); *In re WorldCom, Inc. Litig.*, 388 F.Supp.2d 319 (S.D.N.Y. 2005) (common fund award equivalent to 4.0 multiplier); *Maley v. Del Global Technologies Corp.,* 186 F.Supp.2d 358, 371 (S.D.N.Y. 2002 ("modest" multiplier of 4.65 "fair and reasonable"); *In re Linerboard Antitrust Lit.,* 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004) (noting that "during 2001-2003, the average multiplier approved in common fund class actions was 4.35 and during 30 year period from 1973-2003, the average multiplier approved in common fund class actions was 3.89. Stuart J. Logan, *et al., Attorney Fee Awards in Common Fund Class Actions,* 24 Class Action Reports 167 (2003).").

46.     To summarize, in my opinion, the lodestar cross-check supports the fairness and reasonableness of awarding IPP Counsel 33.3% of the settlement fund as their reasonable attorneys' fees for securing that fund.

47.     If called as a witness, I could and would competently testify from my personal knowledge to the facts stated herein.  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 23rd day of September 2015, in Berkeley, California.

RICHARD M. PEARL

DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS – Master File No. CV-07-5944-SC