Robert J. Bonsignore, Esq.
**BONSIGNORE TRIAL LAWYERS, PLLC**
3771 Meadowcrest Drive
Las Vegas, NV 89121
Phone: 781-856-7650
Email: rbonsignore@classactions.us

*Counsel for Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 3:07-cv-5944<br>MDL No. 1917<br><br>**CLASS ACTION** |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **DECLARATION OF ROBERT J. BONSIGNORE IN SUPPORT OF PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS**<br><br>Judge:  Honorable Samuel Conti<br>Courtroom One, 17th Floor |

I, Robert J. Bonsignore, declare as follows:

1. I am an attorney licensed to practice before the courts of New Hampshire and Massachusetts, as well as federal courts throughout the country. I am a partner in the law firm BONSIGNORE TRIAL LAWYERS, PLLC and have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them. I make this declaration in support of my firm's request for attorneys' fees and reimbursement of litigation expenses. The amount set forth in Plaintiffs' Application for Attorneys' Fees, Expenses and Incentive Awards is below that which we claim. We contest Lead Counsels fee and expense request and believe just cause compels a detailed auditing of Lead Counsels Fee Request that includes a cross check of the time his firm and that of his sometime partner, employee or associate Joseph Patane.

2. My firm is counsel of record in this case, and represents named plaintiff(s) Gloria Comeaux and Jeff Speaect. We also represented many other putative class representatives including those in the first complaints filed in this Multi District Litigation. For example, Rosemary Ciccone. Because Ms. Ciccone was involved and served as a named putative class representative and reserve putative class representative for so long a period we request she be awarded a $7500 class representative fee. We also request named class representatives Gloria Comeaux and Jeff Speaect each be awarded $10,000 because among other things, they had to respond to considerable discovery, had their depositions taken, had their names placed in the public domain. We also request that Brigid Terry of Wisconsin, Anthony Gianasca of Massachusetts, Brighid Flaherty of Arizona, Ten Eyckof Mississippi be awarded $2500 each because they served as named class representatives and otherwise satisfy the review criteria for the award of class representative incentive fees. (*See Terry et al v. LG Electronics, Inc. et al,* 08-cv-01559, Docket #1).

3. Lead Counsel Alioto advised me early on through to the end he would call upon my firm for class representatives. For what its worth, every time he spoke to me about class representatives he would use superlatives in reference to them. I understood this was because we

1  have represented consumers in many states and because they are always well screened, kept up to
2  date and otherwise well prepared for their service. I am, and have been for about fifteen years, the
3  author of a Mathew Bender chapter on Lay Witnesses and have spoken at Continuing Legal
4  Education programs across the country on the preparation and presentation at trial of lay witnesses.

5      4. This firm's compensation for services rendered in this case was wholly contingent
6  on the success of this litigation, and was totally at risk since 2007. To carry out our work in this
7  action, we turned down or were otherwise rendered unable to accept work in other paying cases.
8  Out firm previously represented the putative class representatives first used by the Alioto firm to
9  advance this action and secure lead counsel, with few exceptions. We were also engaged in pre
10  filing and early post filing investigation of the factual background and monetary losses of the
11  claims. During the litigation I advised Lead Counsel of several states that I believed had the right
12  to recover but were not included in this action, including New Hampshire and Missouri. I was
13  asked by lead counsel to research the law and did so. This firm has substantial experience in
14  complex litigation and consumer protection class action cases.  A firm CV is attached as Exhibit 1
15  and incorporated herein by reference.

16      5. Throughout the course of this litigation, my firm kept contemporaneously generated
17  time records as to all time spent, including tasks performed, and expenses incurred. BTL lawyers
18  and staff are required to only submit time that was generated contemporaneously and kept in tenths
19  of an hour. BTL lawyers and staff are also required to maintain time by activity category and the
20  categories we maintain are intended to track those recommended by the American Bar Association
21  and those traditionally used in Multi District Litigation.

22      6. The time categories maintained by my firm differed from those set out by Lead
23  Counsel Mario Alioto in this case. Our law firm has otherwise instituted a mandatory protocol that
24  requires a partner to review all time entries before they are submitted for payment. We delete time
25  not properly recorded or maintained as well as any submissions we otherwise deem not
26  compensable. The time categories maintained by my firm throughout this litigation drastically
27  differ from those mandated by Lead Counsel Mario Alioto in this case.

28

7.  All of the time and expenses reported by my firm were incurred for the benefit of the Indirect Purchaser Plaintiffs ("IPPs"). My firms hourly rates have been approved by courts throughput the country including Federal Courts in the 9th Circuit. My firm's hourly rates were reviewed by the 9th Circuit in relationship to MDL 1735 and our fee award was upheld. (*See* #11-17718). In addition to the expenses submitted by lead counsel, our records clearly establish we submitted a $25,000 check for case costs early in the litigation (2007) and that the check was cashed and cleared. We request reimbursement for that expenditure.

8.  During the course of this litigation, my firm has been involved in specific tasks and activities on behalf of the IPPs.  BTL's time submission is largely limited to tasks assigned by Lead Counsel or his designee, tasks otherwise necessary to carry out tasks assigned or called for by Lead Counsel or his designee, or to satisfy our ethical obligations to respond to client inquiries and keep putative class representative clients informed. Work not assigned by Lead Counsel was work carried out before Lead Counsel was appointed.

9.  My firm began researching and developing factual support for a class action complaint in 2007. Although our original submitted affidavit was correct, a small fraction of the unedited supporting detail we submitted to Lead Counsel contained errors that were corrected by myself. The edited time was not delivered to my office due to an error admitted to by the Post Master of a local postal branch. My request to submit the correct time entries was rejected by Lead Counsel Mario Alioto through his designee Robert Gralewski and my submission was roughly -halfed. I was originally advised that evidence the expense check cleared would be sufficient and later was told it was not.  We request our expenses and time be fully reimbursed and that we be awarded a fair multiplier.

10.  In 2007 in addition to extensive research and factual development I met with and discussed the cause with counsel who were in the process of filing and after they had filed. I also met with Mario Alioto who requested he be sole lead and promised me that following his appointment he would in turn appoint me as Chairperson of the Executive Committee. At that time I was Lead Counsel in MDL 1735 In re Wal-Mart Wage and Hour Practices Litigation, In re

Publication Paper Antitrust Litigation (Indirect Purchaser Class) and several other cases including In re Smokeless Tobacco (BTL certified state court based indirect purchaser classes in Massachusetts and New Hampshire – making new law that benefitted consumers I considered Mr. Alioto's request reasonable and agreed. At the request of Mario Alioto I referred to him putative class representatives in 12 states across the country and also obtained class representatives for almost all the states (25) that allow indirect purchaser actions to proceed. Several were included in the original complaint and others were "kept in reserve" by him. He clearly advised me to keep a stick of class representatives ready to go. This was accomplished through working our existing client base and also by reaching out and working with existing and new co-counsel. BTL also continued to carry out case related research.

11. After he was appointed Lead Counsel, Mr. Alioto had a change of heart and informed me that he would not appoint an Executive Committee. During 2009 we were apparently phased out of the litigation for reasons never disclosed by Lead Counsel and over our objection. Although our level of newly assigned work greatly decreased, we kept up on what Lead Counsel had previously assigned us and never rescinded. Even our requests for document review work were ignored.

12. In 2012 Mario Alioto contacted me and advised me that he needed Putative Class representatives in several states. Rather than get bogged down in the bizarre context of having been cut out of the case and then called in for help when he was "desperate", I focused my firms efforts on the needs of the consumers and the task at hand. Per lead counsels request I again worked our existing client base in the specific and limited states he needed and contacted existing co-counsel. Eventually, Lead Counsel accepted specific putative class representatives for Nevada and for South Dakota. Since my class representatives were to be deposed, I began working with them.

13. Atty. Gralewski advised me that my clients had done so well during their depositions that they were selected as trial witnesses. I was asked by Lead Counsel through Mr. Gralewski to work with then to arrange their schedule to include a March 2015 appearance in San

4
DECLARATION OF ROBERT J. BONSIGNORE IN SUPPORT OF PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS
Case No. 3:07-cv-5944 SC, MDL No. 1917

1  Francisco and began to prepare them to be trial witnesses. I was later informed that Ms. Comeaux
2  was a definite witness, and that Jeff Speaect of South Dakota was a back up witness. When the
3  cases settled I advised the class representatives and have kept them informed as the process has
4  continued.

5        14.    During a meeting that I had with Mario Alioto at Alioto's Restaurant 8 Fisherman's
6  Wharf San Francisco, early in the litigation I asked Mario Alioto- in his experience – what method
7  he used to track of his time.  He told me not to "worry about it", and that he "figure(s) time at the
8  end of every case".  My office keeps track of time in accordance with the ABA guidelines and
9  traditional categories used in class actions and more particularly in antitrust litigations.  Although
10 categories are tweak from time to time they have never come close to the Alioto reverse
11 engineering time keeping method he suggested, and we have never considered such proper.

12       15.    The timing of the CRT time submission to Atty. Alioto presented my office with an
13 obstacle because the review, checking and editing of the CRT time conflicting with my obligations
14 as Lead Counsel submission in the MDL 2566 and illness and death of my father-in-law.

15       16.    I was primarily responsible for the research, drafting and review of Plaintiffs'
16 Memorandum in Opposition to Certain Moving Defendants' Motions to Dismiss: Standing and
17 Personal Jurisdiction issues (*See In re TelexFree Securities Litigation,* MDL 02566, Docket #232),
18 and Plaintiffs' Memorandum in Opposition to the Moving Defendants' Motions to Dismiss:
19 Substantive Issues (*See In re TelexFree Securities Litigation,* MDL 02566, Docket #234), and the
20 Third Consolidated Amended (reverse or "Defendant Class Action") Complaint (*See In re
21 TelexFree Securities Litigation,* MDL 02566, Docket #252-254).  I was required to respond to 12
22 motions to dismiss filed by 17 major United States financial institutions Defendants amounting to
23 about 500 pages.

24       17.    The schedule attached as Exhibit 2, and incorporated herein, is a detailed summary
25 of the amount of time spent by my firm's partners, attorneys and professional support staff who
26 were involved in this litigation.  It does not include any time devoted to preparing this declaration
27 or otherwise pertaining to the Joint Fee Petition.  The lodestar calculation is based on my firm's
28

5
DECLARATION OF ROBERT J. BONSIGNORE IN SUPPORT OF PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS
Case No. 3:07-cv-5944 SC, MDL No. 1917

historical billing rates in effect at the time services were performed.  Exhibit 2 was prepared from contemporaneous time records regularly prepared and maintained by my firm. The hourly rates for my firm's partners, attorneys and professional support staff included in Exhibit 2 were at the time the work was performed the usual and customary hourly rates charged for their services in similar complex litigation.

18. The total number of hours reasonably expended on this litigation by my firm from inception to May 31, 2015 is 788.5 hours.  The total lodestar for my firm at historical rates is $382,485.00.  The total lodestar for my firm at current rates is $471,902.50.  Expense items are billed separately and are not duplicated in my firm's lodestar. My firm's lodestar at current rates is requested to the extent I understand that is what Lead and other counsel are requesting. That amount is $471,902.50.

19. The expenses my firm incurred in litigating this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, invoices, receipts, check records and other source materials and accurately reflect the expenses incurred. My firm's expense records are available for inspection by the Court if necessary.

20. My firm incurred a total of $33,386.12 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this litigation.  Of this amount, $25,000.00 was for assessment payments for common litigation expenses or direct payments to experts or other vendors made at the request of Lead Counsel, and an additional $8,386.12 was for non-common litigation expenses incurred by my firm, such as travel, meals and lodging, copying, legal research, telephone, etc.  A summary of those expenses by category is attached as Exhibit 3.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of September, 2015, in Las Vegas, Nevada.

*/s/ Robert J. Bonsignore*
Robert J. Bonsignore, Esq.

# CERTIFICATE OF SERVICE

I, Robert J. Bonsignore, hereby certify that on this 23rd day of September, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court by using the Case Management/Electronic Case Filing (CM/ECF) system, which will send a notice of electronic filing to all parties registered with the CM/ECF system in the above-captioned matter. A copy will be forwarded via first class mail, postage prepaid, to those parties not electronically registered.

*/s/ Robert J. Bonsignore*
Robert J. Bonsignore