Guido Saveri (22349)
  *guido@saveri.com*
R. Alexander Saveri (173102)
  *rick@saveri.com*
Geoffrey C. Rushing (126910)
  *grushing@saveri.com*
Cadio Zirpoli (179108)
  *cadio@saveri.com*
Travis L. Manfredi (281779)
  *travis@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for the Direct Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| *Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al.*, Case No. 14-CV-2058 (SC). | **DIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH THOMSON DEFENDANTS** |
| | Date:           October 23, 2015 |
| | Time:           10:00 a.m. |
| | Judge:          Honorable Samuel Conti |
| | Courtroom:  1 |

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.     INTRODUCTION ................................................................................................................. 1

II.    FACTUAL AND PROCEDURAL HISTORY .................................................................... 2

III.   THE TERMS OF THE SETTLEMENT ............................................................................ 7

IV.   ARGUMENT ...................................................................................................................... 8

   A.  The Settlement Class .................................................................................................. 9

   B.  The Court-Approved Notice Program Satisfies Due Process and Has Been Fully
       Implemented. ............................................................................................................ 10

   C.  The Settlement Is "Fair, Adequate And Reasonable" and Should Be Granted Final
       Approval. .................................................................................................................. 11

      1.  The Settlement Provides a Considerable Benefit to the Class ....................... 13

      2.  The Class Members' Positive Reaction Favors Final Approval ................... 14

      3.  The Settlement Eliminates Significant Risk to the Class. .............................. 15

      4.  The Settlement Is the Product of Arm's-Length Negotiations Between the Parties
          and the Recommendation of Experienced Counsel Favors Approval. ........................... 16

   D.  The Plan of Allocation Is "Fair, Adequate and Reasonable" and Therefore Should Be
       Approved. .................................................................................................................. 17

V.    NO OBJECTIONS BY CLASS MEMBERS ................................................................... 18

VI.   EXCLUSIONS ................................................................................................................. 18

VII.  CONCLUSION ................................................................................................................. 18

i

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH THOMSON DEFENDANTS; Master File No. CV-07-5944-SC

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Agretti v. ANR Freight System, Inc.*,
    982 F.2d 242 (7th Cir. 1992) ................................................................. 14

*Arnold v. Arizona Department of Public Safety*,
    No. CV-01-1463-PHX-LOA, 2006 WL 2168637 (D. Ariz. July 31, 2006) .............................. 15

*Bellows v. NCO Financial System*,
    2008 U.S. Dist. LEXIS 103525 (S.D. Cal. Dec. 2, 2008) ........................................ 16

*Bynum v. District of Columbia*,
    412 F. Supp. 2d 73 (D.D.C. 2006) ............................................................ 14

*Churchill Village L.L.C. v. General Electric*,
    361 F.3d 566 (9th Cir. 2004) ................................................... 10, 11, 14

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................................... 11

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980) ............................................................... 12

*Fisher Brothers v. Mueller Brass Co.*,
    630 F. Supp. 493 (E.D. Pa. 1985) ........................................................... 13

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988) .......................................................... 12, 14

*In re "Agent Orange" Product Liability Litigation*,
    818 F.2d 145 (2d Cir. 1987) ................................................................. 10

*In re Austrian and German Bank Holocaust Litigation*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ......................................................... 16

*In re Citric Acid Antitrust Litigation*,
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) ...................................................... 17

*In re Computron Software, Inc.*,
    6 F. Supp.2d 313 (D.N.J. 1998) ............................................................. 17

*In re Corrugated Container Antitrust Litigation*,
    Case No. M.D.L. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) ................................. 14

*In re Fleet/Norstar Securities Litigation*,
    935 F. Supp. 99 (D.R.I. 1996) .............................................................. 14

*In re Linerboard Antitrust Litigation*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ........................................................ 14

*In re Lloyds' American Trust Fund Litigation*,
    No. 96 Civ.1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ............................ 17

*In re Mid-Atlantic Toyota Antitrust Litigation*,
    564 F. Supp. 1379 (D. Md. 1983) ............................................................ 13

ii

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH THOMSON DEFENDANTS; Master File No. CV-07-5944-SC

*In re NASDAQ Market-Makers Antitrust Litigation*,
    187 F.R.D. 465 (S.D.N.Y. 1998)............................................................... 15

*In re PaineWebber Ltd. Partnerships Litigation*,
    171 F.R.D. 104 (S.D.N.Y. 1997)............................................................... 18

*In re Patriot American Hospitality Inc. Securities Litigation*,
    No. MDL C-00-1300 VRW, 2005 WL 3801594 (N.D. Cal. Nov. 30, 2005)........................... 15

*In re Sumitomo Copper Litigation*,
    189 F.R.D. 274 (S.D.N.Y. 1999)............................................................... 15

*In re Visa Check/Mastermoney Antitrust Litigation*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003)........................................................... 15

*In re Vitamins Antitrust Litigation*,
    No. 99-197 TFH, 2000 WL 1737867 (D.D.C. Mar. 31, 2000) ...................................... 17

*Larsen v. Trader Joe's Co.*,
    No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ............................. 15

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
    671 F. Supp. 819 (D. Mass. 1987)............................................................. 13

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) ............................................................. 10

*Marisol A. ex rel. Forbes v. Giuliani*,
    185 F.R.D. 152 (S.D.N.Y. 1999)............................................................... 16

*Mendoza v. Tucson School District No. 1*,
    623 F.2d 1338 (9th Cir. 1980) ............................................................... 10

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004).......................................................... 14, 16

*Officers for Justice v. Civil Service Commission*,
    688 F.2d 615 (9th Cir. 1982) ................................................................ 12

*Pallas v. Pacific Bell*,
    No. C-89-2373 DLJ, 1999 WL 1209495 (N.D. Cal. 1999).......................................... 15

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999)................................................................ 10

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002)............................................................... 16

*Torrisi v. Tucson Electric Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................. 10, 12

*Utility Reform Project v. Bonneville Power Administration*,
    869 F.2d 437 (9th Cir. 1989) ................................................................ 12

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ................................................................ 12

*Wilkerson v. Martin Marietta Corp.*,
    171 F.R.D. 273 (D. Colo. 1997)............................................................... 16

iii

**STATUTES**

Clayton Act, 15 U.S.C. § 15 ....................................................................................... 2

Sherman Act, 15 U.S.C. § 1 ........................................................................................ 2

**OTHER AUTHORITIES**

4 Albert Conte & Herbert Newberg, *Newberg on Class Actions* §§ 11.22, *et seq.* (4th ed. 2002) .... 9

**RULES**

Federal Rule of Civil Procedure 23 ...................................................................... 1, 10, 11

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH THOMSON DEFENDANTS; Master File No. CV-07-5944-SC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e) and the Court's Order granting preliminary approval of the proposed settlement (Docket No. 3872), Direct Purchaser Class Plaintiffs ("Plaintiffs") submit this memorandum in support of final approval of the settlement reached with Defendants Thomson SA (now known as Technicolor SA) Thomson Consumer Electronics, Inc. (now known as Technicolor USA, Inc.) (collectively "Thomson"); and Technologies Displays Americas LLC (formerly known as Thomson Displays Americas LLC) ("TDA") (collectively "Settling Defendants" or "Thomson Defendants").[1]

There are no objections to the settlement on any ground. Nor has any class member (or anyone else) filed a notice of intent to appear at the final approval hearing. Declaration of Ross Murray in Support of Final Approval of Class Action Settlement ("Murray Decl.") ¶ 10.

As explained in more detail below, the settlement provides a substantial benefit to the class and should be finally approved as fair and reasonable. Among other things, the settlement provides for payment to the class of $9,750,000 for a complete release of all class members' claims. Settlement Agreement ¶ 13. The Thomson Defendants have also agreed to cooperate with Plaintiffs in the prosecution of the case against the last remaining defendant. Settlement Agreement ¶ 24. Thomson's sales also remain in the case for the purpose of computing damages against the remaining defendant. Saveri Decl. ¶ 24.

This Court has already approved seven settlements with other Defendants in this MDL proceeding (the Chunghwa Defendants, the Philips Defendants, the Panasonic Defendants, the LG Defendants, the Toshiba Defendants, the Hitachi Defendants, and the Samsung SDI Defendants). Saveri Decl. ¶ 2.

---

[1] As provided in the Settlement Agreement, the inclusion of both Thomson and TDA among "Thomson Defendants" should not be construed to suggest, for purposes of this Action or any related proceedings, that Thomson and TDA are in any way related entities, have any authority to speak on behalf of the other, or share liability of defenses for any alleged conduct of the other. The Settlement Agreement, dated February 6, 2015, is attached as Exhibit 1 to the accompanying Declaration of R. Alexander Saveri in Support of Final Approval of Class Action Settlement with Thomson Defendants ("Saveri Decl.").

1

The Court preliminarily approved this settlement on June 12, 2015. Docket No. 3872. On that date, the Court also certified a Settlement Class, appointed Plaintiffs' Interim Lead Counsel as Settlement Class Counsel, approved the manner and form of providing notice of the Settlement to class members, established a timetable for publishing class notice and set a hearing for final approval. Dkt. No. 3872.

Plaintiffs have given notice to the class as ordered by the Court. As noted, no objections were received. Murray Decl. ¶ 10.

Plaintiffs respectfully request that the Court grant final approval of the Settlement on the grounds that it is fair, adequate, and reasonable to the class. Plaintiffs also ask that the Court approve the plan of distribution of the settlement proceeds to the class.

## II.    FACTUAL AND PROCEDURAL HISTORY

This multidistrict litigation arises from an alleged conspiracy to fix prices of Cathode Ray Tubes ("CRTs"). Saveri Decl. ¶ 3. In November of 2007, the first direct purchaser plaintiff filed a class action complaint on behalf of itself and all others similarly situated alleging a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15. *Id.* Thereafter, additional actions were filed in other jurisdictions. *Id.* The Judicial Panel on Multidistrict Litigation ("JPML") transferred all related actions to this Court on February 15, 2008. Dkt. No. 122; Saveri Decl. ¶ 3. On May 9, 2008, Saveri & Saveri, Inc. was appointed Interim Lead Class Counsel for the nationwide class of direct purchasers. Dkt. No. 282; Saveri Decl. ¶ 3.

On March 16, 2009, Plaintiffs filed the Consolidated Amended Complaint ("CAC") alleging an over-arching horizontal conspiracy among the Defendants and their co-conspirators to fix prices for CRTs and to allocate markets and customers for the sale of CRTs in the United States from March 1, 1995 through November 25, 2007 (the "Class Period"). Saveri Decl. ¶ 4. The CAC alleges that Plaintiffs and members of the Class are direct purchasers of CRTs and/or CRT Finished Products from Defendants and/or their subsidiaries and were injured because they paid more for CRTs and/or CRT Finished Products than they would have absent Defendants' illegal conspiracy. CAC ¶¶ 213–221; Saveri Decl. ¶ 4. Plaintiffs seek, *inter alia*, treble damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. §§ 15 and 22. CAC at p. 47; Saveri Decl. ¶ 4.

2

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH THOMSON DEFENDANTS; Master File No. CV-07-5944-SC

Defendants filed several motions to dismiss the CAC on May 18, 2009. *See* Dkt. Nos. 463–493; Saveri Decl. ¶ 5. On March 30, 2010, this Court entered its Order approving and adopting Judge Legge's previous ruling and recommendations granting in part and denying in part Defendants' Motion to Dismiss. Dkt. No. 665; Saveri Decl. ¶ 5. On April 29, 2010, Defendants answered the CAC. Saveri Decl. ¶ 5.

On March 12, 2010, after the partial stay of discovery was lifted, Plaintiffs propounded their Second Set of Document Requests and First Set of Interrogatories. Saveri Decl. ¶ 6. On October 27, 2011, after extensive meet and confers and several motions to compel, the Court issued its Report Regarding Case Management Conference No. 4 in which it set the middle of December, 2011 as the deadline for the completion of substantial discovery by all parties. Dkt. Nos. 1007, 1008; Saveri Decl. ¶ 6. Plaintiffs have now received over 5 million pages of documents produced by Defendants. Saveri Decl. ¶ 6.

On March 21, 2011, pursuant to FRCP 11, certain Defendants moved to strike allegations of a finished product conspiracy from the CAC. Dkt. No. 880; Saveri Decl. ¶ 7. After a hearing, the Special Master recommended that the motion be granted and that Plaintiffs' allegations of a finished products conspiracy be stricken from the complaint. Dkt. No. 947; Saveri Decl. ¶ 7. The Special Master also recommended that "the issue of the possible impact or effect of the alleged fixing of prices of CRTs on the prices of Finished Products shall remain in the case, and is a proper subject of discovery." Dkt. No. 947 at 14; Saveri Decl. ¶ 7.

On June 29, 2011, Defendants moved the Court to adopt the Special Master's Report and Recommendation (Dkt. No. 953), and Plaintiffs filed an objection (Dkt. No. 957). Saveri Decl. ¶ 8. The Court set the matter for hearing on September 2, 2011. Dkt. No. 968; Saveri Decl. ¶ 8. Prior to the hearing, on August 26, 2011, the parties entered into a stipulation providing, among other things: (1) that the Special Master's recommended finding that Plaintiffs violated Rule 11 be vacated; (2) that certain other aspects of the Special Master's recommendations be adopted; and (3) that Plaintiffs' "allegations of the Direct CAC purporting to allege a conspiracy encompassing Finished Products are Stricken from the Direct CAC, provided, however, that the issue of the possible impact or effect of the alleged fixing of prices of CRTs on the prices of Finished Products

3

shall remain in the case." Saveri Decl. ¶ 8. Plaintiffs agreed to withdraw discovery requests regarding the CRT Finished Product Conspiracy claims. Saveri Decl. ¶ 8. Defendants agreed that the issue of the impact of the CRT conspiracy on the prices of the Finished Products would remain in the case. Dkt. No. 996; Saveri Decl. ¶ 8.

On December 12, 2011 Defendants moved for Summary Judgment against Plaintiffs who purchased CRT Finished Products only. Dkt. No. 1013; Saveri Decl. ¶ 9. Plaintiffs and the Direct Action Plaintiffs ("DAPs") opposed the motion. Saveri Decl. ¶ 9. On March 20, 2012, Judge Legge heard argument from all parties. *Id.* On May 31, 2012, the Special Master issued his Report and Recommendation that the Court grant Defendants' motion for summary judgment and that judgment be entered against certain plaintiffs that purchased CRT Finished Products from defendants ("R&R"). Dkt. No. 1221; Saveri Decl. ¶ 9.

The parties filed briefs in support and in opposition to adoption of the R&R. Saveri Decl. ¶ 10. On November 29, 2012, the Court entered the Order Granting in Part and Denying in Part Defendants' Joint Motion for Summary Judgment (Dkt. No. 1470) ("Order"); Saveri Decl. ¶ 10. The Court found that Plaintiffs that purchased a Finished Product, were "in fact indirect purchasers for purposes of antitrust standing." Order at 6; Saveri Decl. ¶ 10. The Court further found that one of the three exceptions that permit indirect purchasers to pursue private treble-damages claims, outlined by the Ninth Circuit Court of Appeals in *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012), could apply to Plaintiffs. Saveri Decl. ¶ 10. The Court ruled that the "Ownership and Control Exception" created in *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980), conferred standing on Plaintiffs to sue "insofar as they purchased [Finished Products] incorporating the allegedly price-fixed CRTs from an entity owned or controlled by any allegedly conspiring defendant." Order at 16; Saveri Decl. ¶ 10. Certain defendants filed a motion under 28 U.S.C. section 1292(b) requesting that the Court certify the Order for interlocutory appeal. Dkt. No. 1499; Saveri Decl. ¶ 10. The Court denied defendants' request. Dkt. No. 1569; Saveri Decl. ¶ 10.

As the case progressed against the Defendants, Plaintiffs developed evidence that they believed established that two additional corporate groups—Mitsubishi and Thomson—also

1   participated in the alleged conspiracy. DPPs had tolling agreements with each group which had

2   been entered into in 2008. Saveri Decl. ¶ 11.

3          On May 20, 2014, Plaintiffs filed their First Amended Direct Purchaser Plaintiffs' Class

4   Action Complaint Against Mitsubishi, Thomson, and TDA ("Mitsubishi/Thomson Complaint").

5   *Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Elec.Corp., et al.*, Case No. 14-CV-2058

6   (SC) (N.D. Cal.) (Dkt. No. 14-3). Plaintiffs filed a motion for class certification on November 7,

7   2014. After the motion was filed, Plaintiffs and the Thomson Defendants reached the settlement

8   before the Court. On July 8, 2015, after full briefing, the Court granted DPPs' motion for class

9   certification against Mitsubishi. Dkt. No. 3902. DPPs' motion to authorize notice to the class (Dkt.

10  No. 3944) is pending. Saveri Decl. ¶ 12.

11         As with previous settlements, Plaintiffs hired Gilardi & Co, LLC ("Gilardi") to serve as the

12  Settlement Administrator. Murray Decl. ¶ 1. In accordance with the Court's order of preliminary

13  approval, on June 26, 2015, Gilardi mailed and e-mailed notice to each class member identified by

14  Defendants. Murray Decl. ¶¶ 4–5. On June 29, 2015, the Summary Notice was published in the

15  *New York Times* and the *Wall Street Journal*. *Id.* ¶ 8. A website was also established at

16  www.CRTDirectPurchaserAntitrustSettlement.com, which contains copies of the Settlement

17  Agreement, Class Notice, and Preliminary Approval Order. *Id.* ¶ 6. On or before June 26, 2015,

18  Gilardi caused the "Frequently Asked Questions" and "Dates to Remember" pages of the website

19  www.CRTDirectPurchaserAntitrustSettlement.com to be updated with all deadlines relevant to the

20  Thomson/TDA settlement, as well as the Fairness Hearing date. *Id.* The deadline for objections to

21  the Settlement, requests for exclusion from the Settlement Class, and filing of notices of intent to

22  appear at the fairness hearing was August 10, 2015. *Id.* ¶¶ 9–10. Gilardi received sixteen (16)

23  requests for exclusion and no objections. *Id.* No notices of intent to appear at the fairness hearing

24  were filed or sent to Gilardi. *Id.* ¶ 9; Saveri Decl. ¶ 21.

25         On October 19, 2012, the Court granted final approval of the first two settlements reached

26  in DPP's initial case with: (1) Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes

27  (Malaysia) Sdn. Bhd. ("CPT") ($10 million), and (2) Koninklijke Philips Electronics N.V., Philips

28

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH THOMSON DEFENDANTS; Master File No. CV-07-5944-SC

1   Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips

2   Da Amazonia Industria Electronica Ltda. ("Philips") ($15 million). Saveri Decl. ¶ 13.

3           On December 27, 2012, the Court granted final approval of a third settlement with

4   Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic Corporation of

5   North America, and MT Picture Display Co., Ltd., ("Panasonic") for $17.5 million. Saveri Decl.

6   ¶ 14.

7           On April 1, 2013, the Court granted final approval of a fourth settlement with defendants

8   LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd.

9   ("LG") for $25 million. Saveri Decl. ¶ 15.

10          On July 23, 2013, the Court granted final approval of a fifth settlement with defendants

11  Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America Consumer

12  Products, L.L.C., and Toshiba America Electronic Components, Inc. ("Toshiba") for $13.5 million.

13  Saveri Decl. ¶ 16.

14          On July 22, 2015, the Court granted final approval of the sixth and seventh settlements

15  with: (1) Defendants Hitachi, Ltd.; Hitachi Displays, Ltd. (n/k/a Japan Display Inc.) ("Hitachi

16  Displays"); Hitachi America, Ltd.; Hitachi Asia, Ltd.; Hitachi Electronic Devices (USA) Inc.

17  (collectively, "Hitachi") ($13,450,000); and (2) Defendants Samsung SDI Co. Ltd. (f/k/a Samsung

18  Display Devices Co., Ltd.); Samsung SDI America, Inc.; Samsung SDI Brasil, Ltd.; Tianjin

19  Samsung SDI Co., Ltd.; Samsung Shenzhen SDI Co., Ltd.; SDI Malaysia Sdn. Bhd.; SDI Mexico

20  S.A. de C.V. (collectively, "Samsung SDI") ($33,000,000). Saveri Decl. ¶ 17.

21          In the seven previous settlements, the Court certified a Settlement Class, appointed Saveri

22  & Saveri, Inc. as Settlement Class Counsel, and found that the manner and form of providing

23  notice of the settlements to class members was the best notice practicable under the circumstances

24  (*see* Dkt. Nos. 1412, 1508, 1621, 1791, 2311, 2534), and the Court entered final judgments of

25  dismissal with respect to the settling (and released) defendants (*see* Dkt. Nos. 1413, 1414, 1509,

26  1510, 1622, 1792, 3932, 3933); Saveri Decl. ¶ 18.

27

28

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH THOMSON DEFENDANTS; Master File No. CV-07-5944-SC

### III.  THE TERMS OF THE SETTLEMENT

In exchange for dismissal with prejudice and a release of all claims asserted in the FAC, Thomson has agreed to pay $9,750,000 in cash to settle all direct purchaser claims against it. Saveri Decl. ¶ 23. The funds have been deposited into a guaranteed escrow account pursuant to the Settlement Agreement. *Id.*

In addition, Thomson has agreed to cooperate with Plaintiffs in the prosecution of this action by: (1) providing copies of all discovery (including, *inter alia*, all documents, interrogatories, requests for admission, etc.) Thomson produces to any other party in the Action; (2) providing a declaration and/or custodian establishing the authenticity of Thomson's transactional data, and foundation of any Thomson document or data needed at summary judgment or trial; (3) allowing Counsel to question percipient witnesses noticed for deposition by any other party in the Action with whom Thomson has not settled; and (4) using its best efforts to make available two persons for trial testimony, each of whom is, at the time of trial, a director, officer, and/or employee of Thomson whom Lead Counsel reasonably believes to have knowledge regarding Plaintiffs' claims. Saveri Decl. ¶ 25.

Moreover, Thomson's sales remain in the case for the purpose of computing Plaintiffs' claims against the remaining non-settling Defendants. Saveri Decl. ¶ 24.

The Settlement between Plaintiffs and Thomson resolves all claims related to CRT Products (*i.e.*, CRTs and CRT Finished Products) brought by Plaintiffs against Thomson and entities that are defined in the Settlement Agreement to be "Thomson Releasees." Saveri Decl. ¶ 20. Upon the Settlement becoming final, Plaintiffs and Class members will relinquish any claims against Settling Defendants as described in paragraph 13 of the Settlement Agreement. Saveri Decl., Ex. 1 (paragraph 13 of the Settlement Agreement). The release, however, excludes claims for product defects or personal injury or breach of contract arising in the ordinary course of business or indirect purchaser claims for CRT Products that were not purchased directly from Defendants or their alleged co-conspirators. *Id.*

CRTs are defined to mean Cathode Ray Tubes of any type (*e.g.*, color display tubes and color picture tubes). Saveri Decl. ¶ 19. CRT Finished Products are those products that when

finished contain Cathode Ray Tubes—such as televisions and computer monitors. CRT Products means CRTs and/or CRT Finished Products. *Id.*

The Thomson Settlement becomes final upon: (i) the Court's approval of the Settlement pursuant to Rule 23(e) and the entry of a final judgment of dismissal with prejudice as to the Settling Defendants; and (ii) the expiration of the time for appeal or, if an appeal is taken, the affirmance of the judgment with no further possibility of appeal. Saveri Decl., Ex. 1 (paragraph 11 of the Settlement Agreement).

Subject to the approval and direction of the Court, the Settlement payment will be used to: (i) make a distribution to Class members in accordance with a proposed plan of allocation to be approved by the Court (Saveri Decl., Ex. 1 (paragraph 21 of the Settlement Agreement)); (ii) pay Class Counsel's attorneys' fees, costs, and expenses as may be awarded by the Court (Saveri Decl., Ex. 1, (paragraphs 22 and 23 of the Settlement Agreement)); and (iii) pay all taxes associated with any interest earned on the escrow account. Saveri Decl., Ex. 1, (paragraph 17(f) of the Settlement Agreement). In addition, the settlement provides that $300,000 may be used to pay for Notice costs and future costs incurred in the administration and distribution of the Settlement payments. Saveri Decl., Ex. 1, (paragraph 19(a) of the Settlement Agreement).

The settlement also allowed the Thomson Defendants, within a specified time, to terminate it if class members representing more than a specified amount of purchases opted out of the settlement. Thomson has not exercised this option, and the time to do so has expired. Settlement Agreement ¶ 18(a).

IV.    **ARGUMENT**

A class action may not be dismissed, compromised, or settled without the approval of the Court. Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined procedure and specific criteria for class action settlement approval. The Rule 23(e) settlement approval procedure includes three distinct steps:

1.    Certification of a settlement class and preliminary approval of the proposed settlement;

2.    Dissemination of notice of the settlement to all affected class members; and

3.    A formal fairness hearing, also called the final approval hearing, at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement.

This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* 4 Albert Conte & Herbert Newberg, *Newberg on Class Actions* §§ 11.22, *et seq.* (4th ed. 2002) ("*Newberg*").

### A. The Settlement Class

The Court here completed the first step in the settlement approval process when it granted preliminary approval of the Settlement.

With respect to the Thomson Settlement, the Court certified a Settlement Class consisting of:

> All persons and entities who, between March 1, 1995 and November 25, 2007, directly purchased a CRT or a CRT Product in the United States from any Defendant or any subsidiary or affiliate thereof, or any co-conspirator. Excluded from the Class are defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.

The term CRT Products refers to all forms of Cathode Ray Tubes (CRTs), as well as to devices that contain CRTs. Thus, CRT Products include color picture tubes (CPTs), color display tubes (CDTs), monochrome display tubes, and also the finished products that contain them—televisions and monitors. Dkt. No. 3872.

The Class definition encompasses those who bought a CRT Product directly from a Defendant and Co-Conspirator, even if the CRT contained therein was manufactured by an affiliated entity, principal, agent, or co-conspirator.

This Settlement Class is substantially the same as the seven settlement classes already

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH THOMSON DEFENDANTS; Master File No. CV-07-5944-SC

1   certified by the Court.[2]

2   **B.    The Court-Approved Notice Program Satisfies Due Process and Has Been**
3   **Fully Implemented.**

4         The second step in the settlement process has also been completed. The Court-approved

5   notice plan has been successfully implemented and class members have been notified of the

6   Settlement.

7         When a proposed class action settlement is presented for court approval, the Federal Rules

8   require:

9         [T]he best notice that is practicable under the circumstances, including individual
10        notice to all members who can be identified through reasonable effort. The notice
          must clearly and concisely state in plain, easily understood language: (i) the nature
          of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or
11        defenses; (iv) that a class member may enter an appearance through an attorney if
          the member so desires; (v) that the court will exclude from the class any member
12        who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii)
13        the binding effect of a class judgment on members under Rule 23(c)(3).

14   Fed. R. Civ. P. 23(c)(2)(B).

15        A settlement notice is a summary, not a complete source, of information. *See, e.g.*, *Petrovic*

16   *v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999); *In re "Agent Orange" Prod. Liability*

17   *Litig.*, 818 F.2d 145, 170 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004 (1988); *Mangone v. First USA*

18   *Bank*, 206 F.R.D. 222, 233 (S.D. Ill. 2001). This circuit requires a general description of the

19   proposed settlement in such a notice. *Churchill Vill. L.L.C. v. Gen. Elec. Co.*, 361 F.3d 566, 575

20   (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993); *Mendoza*

21   *v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980), *cert. denied sub nom. Sanchez v. Tuscon*

22   *Unified School District*, 450 U.S. 912 (1981).

23        The notice plan approved by this Court is commonly used in class actions like this one. It

24   _____

25   [2] *See* Dkt. Nos. 1179, 1280, 1441, 1603, 2311, 2534 (orders granting preliminary approval to CPT,
     Philips, Panasonic, LG, Toshiba, Hitachi, and Samsung SDI settlements); Dkt. Nos. 1412, 1508,
26   1621, 1791, 2311, 2534 (orders granting final approval to CPT, Philips, Panasonic, LG, Toshiba,
     Hitachi, and Samsung SDI settlements). While the class definition is slightly different than in the
27   other settlements—it expressly includes purchasers from Thomson, Mitsubishi, and TDA and their
     co-conspirators—Plaintiffs believe that the actual class members are substantially identical to the
28   previous settlement classes.

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH THOMSON DEFENDANTS; Master File No. CV-07-5944-SC

constitutes valid, due and sufficient notice to class members, and is the best notice practicable under the circumstances. The content of the court-approved notice complies with the requirements of Rule 23(c)(2)(b). Both the summary and long-form notices clearly and concisely explained in plain English the nature of the action and the terms of the Settlement. They provided a clear description of who is a member of the class and the binding effects of class membership. They explained how to exclude oneself from the class, how to object to the Settlement, how to obtain copies of papers filed in the case and how to contact Class counsel. *See* Murray Decl., Exs. A, B. The notices also explained that they provided only a summary of the Settlement, that the settlement agreement was on file with the District Court, and that the settlement agreement was available online at: www.CRTDirectPurchaserAntitrustSettlement.com. *See* Murray Decl., Exs. A, B. Consequently every provision of the Settlement was available to each class member.

The notice plan was implemented by the settlement administrator Gilardi & Co. LLC. Murray Decl. ¶ 1. Specifically, Gilardi printed and mailed 16,914 notices to class members through U.S. Mail and electronically mailed notices to 873 unique electronic mail addresses of class members. Murray Decl. ¶¶ 4–5. Gilardi also published notice in the June 29, 2015 editions of the *New York Times* and the *Wall Street Journal*. Murray Decl. ¶ 8, Ex. B. Gilardi also maintains the case website, at which class members can view and print the Class Notice, the Settlement Agreement, and the Preliminary Approval Order. Murray Decl. ¶ 6. Gilardi also established a toll-free telephone number to answer Class members' questions in both English and Spanish. Murray Decl. ¶ 7.

The notice plan is substantially similar to the notice plan approved by the Court for the CPT, Philips, Panasonic, LG, Toshiba, Hitachi, and Samsung SDI settlements. Saveri Decl. ¶ 28. The only significant difference is that the Thomson summary notice was published in two newspapers instead of one.

### C.     The Settlement Is "Fair, Adequate And Reasonable" and Should Be Granted Final Approval.

The law favors the compromise and settlement of class action suits. *See, e.g.*, *Churchill Village*, 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH THOMSON DEFENDANTS; Master File No. CV-07-5944-SC

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is 'exposed to the litigation and their strategies, positions and proof.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)). In exercising such discretion, courts should give "proper deference to the private consensual decision of the parties . . . . '[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Hanlon*, 150 F.3d at 1027 (citation omitted).

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625. "[T]here is an overriding public interest in settling and quieting litigation" and this is "particularly true in class action suits. . . ." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). In evaluating a proposed class action settlement, the Ninth Circuit has recognized that:

> [T]he universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted); *accord Torrisi*, 8 F.3d at 1375.

The court is entitled to exercise its "sound discretion" when deciding whether to grant final approval. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375. "Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel,

12

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH THOMSON DEFENDANTS; Master File No. CV-07-5944-SC

it is presumptively fair." *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987).

### 1.    The Settlement Provides a Considerable Benefit to the Class

The consideration for the Settlement is substantial and provides a considerable benefit for the class. The Thomson Settlement provides for a payment of $9,750,000. *See* Saveri Decl. ¶ 23. The Settlement also compares favorably to settlements finally approved in other price-fixing cases. *See, e.g.*, *Fisher Bros. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (recoveries equal to .1%, .2%, 2%, .3%, .65%, .88%, and 2.4% of defendants' total sales).

The cash payment of $9,750,000 is an excellent recovery for the class, in light of the serious obstacles Plaintiffs would face enforcing a judgment against Thomson. Thomson Consumer is not profitable as it is largely a holding company and has no material assets other than its interest in its U.S. subsidiaries. It has substantial debts and its most recent tax returns show the consolidated group in the U.S. has suffered substantial tax and operating losses.

Enforcement of a judgment against Thomson SA, a French company, in France would also present obstacles. That proceeding could take several years and it is possible that the French court would refuse to enforce the judgment.

Thomson could also seek insolvency protection, further precluding or delaying recovery by Plaintiffs. Thomson SA just emerged from French bankruptcy proceedings in July 2014, but it could return to bankruptcy at any juncture. Under French law, Thomson SA also has the option of filing for pre-judgment bankruptcy proceedings.

Collection of a judgment against TDA would also be difficult. It is a small company with few assets and significant debt.

Further, the Settlement calls for Thomson to cooperate with Plaintiffs. Saveri Decl. ¶ 25. This is a valuable benefit because it will save time, reduce costs, and provide access to information, witnesses, and documents regarding the CRT conspiracy that might otherwise not be available to Plaintiffs. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) (a defendant's agreement to cooperate with plaintiffs "is an appropriate factor for a court to consider in approving a settlement"). "The provision of such assistance is a substantial benefit to the classes

and strongly militates toward approval of the Settlement Agreement." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). *See also In re Corrugated Container Antitrust Litig.*, Case No. M.D.L. 310, 1981 WL 2093, at *16 (S.D. Tex. June 4, 1981) ("*Corrugated Container*") ("The cooperation clauses constituted a substantial benefit to the class."). In addition, "[i]n complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions.'" *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (quoting Manual for Complex Litigation Second, § 30.46 (1986)).

Finally, the Settlement preserves Plaintiffs' right to litigate against the non-settling defendants for the entire amount of Plaintiffs' damages based on joint and several liability. *See Corrugated Container*, 1981 WL 2093, at *17; Saveri Decl. ¶ 24 (Released claims do not preclude Plaintiffs from pursuing any and all claims against other non-settling defendants for the sales attributable to Thomson).

### 2.    The Class Members' Positive Reaction Favors Final Approval

There are no objections to the Settlement, and the reaction of the class to the Settlement supports this Court granting final approval. Murray Decl. ¶ 10. In determining the fairness and adequacy of a proposed settlement, the Court also should consider "the reaction of the class members to the proposed settlement." *Churchill Village*, 361 F.3d at 575; *Hanlon*, 150 F.3d at 1026. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *see also, In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 107 (D.R.I. 1996).

Pursuant to the Court's order, approximately 17,787 Class Notices were mailed or electronically mailed to class members throughout the United States. *See* Murray Decl. ¶¶ 4–5. When presented with the material financial terms of the proposed Settlement, no members of the class objected to the Settlement. Murray Decl. ¶ 10. In addition, only 16 class members opted out of the class. *See* Murray Decl. ¶ 9. The reaction of the class to the proposed Settlement therefore supports the conclusion that the proposed Settlement is fair, adequate and reasonable. *Bynum v. Dist. of Columbia*, 412 F. Supp. 2d 73, 77 (D.D.C. 2006) ("The low number of opt outs and

14

objectors (or purported objectors) supports the conclusion that the terms of the settlement were viewed favorably by the overwhelming majority of class members."); *Pallas v. Pac. Bell*, No. C-89-2373 DLJ, 1999 WL 1209495, at *8 (N.D. Cal. July 13, 1999) ("The small percentage—less than 1%—of persons raising objections is a factor weighing in favor of approval of the settlement."). *See also*, *Arnold v. Arizona Dept. of Pub. Safety*, No. CV-01-1463-PHX-LOA, 2006 WL 2168637, at *10 (D. Ariz. July 31, 2006); *In re Patriot Am. Hospitality Inc. Sec. Litig.*, No. MDL C-00-1300 VRW, 2005 WL 3801594, at *2 (N.D. Cal. Nov. 30, 2005). The inference of class's approval of the Settlement is even stronger where, as here, much of the class consists of sophisticated business entities. *See Linerboard*, 321 F. Supp. 2d at 629.

### 3.     The Settlement Eliminates Significant Risk to the Class.

While Plaintiffs believe their case is strong, the Settlement eliminates significant risks they would face if the action were to proceed. Plaintiffs would bear the burden of establishing liability, impact and damages. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("'Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.'" (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998))); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 283 (S.D.N.Y. 1999). This is an important consideration because Defendants have vowed to aggressively defend this action. Thus, the Settlement is in the best interest of the Class because it eliminates the risks of continued litigation, while at the same time creating a substantial cash recovery and obtaining cooperation from Thomson in the ongoing litigation.

Continued litigation against Defendants also would involve significant additional expenses and protracted legal battles, which are avoided through the Settlement. *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties, as well as conserve judicial resources . . . . Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement.") (cited authority omitted); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003), *aff'd 396 F.3d 96*

(2d Cir. 2005) ("The potential for this complex litigation to result in enormous expense, and to continue for a long time, was great."); *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 8 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."); *Marisol A. ex rel. Forbes v. Giuliani*, 185 F.R.D. 152, 163 (S.D.N.Y. 1999), *aff'd sub nom. Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) (noting that trial would last at least five months and require testimony from numerous witnesses and experts).

4.      **The Settlement Is the Product of Arm's-Length Negotiations Between the Parties and the Recommendation of Experienced Counsel Favors Approval.**

This class action has been vigorously litigated. Class Counsel has analyzed millions of documents produced by Defendants and others. They have also conducted an independent investigation of the facts and analyzed Defendants' sales and pricing data.

The negotiations leading to the Settlement were vigorous, informed, and thorough. The Settlement is the product of arm's-length negotiation by informed and experienced counsel. The Settlement was reached after the parties engaged in face-to-face negotiations as well as numerous telephone and email discussions. The negotiations were thorough and hard fought. They were contested and conducted at arm's-length in the utmost good faith. Saveri Decl. ¶ 22.

Counsel's judgment that the Settlement is fair and reasonable is also entitled to great weight. *See Nat'l Rural Telcomms. Coop.*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *accord Bellows v. NCO Fin. Sys.*, No. 3:07-dv-01413-W-AJB, 2008 U.S. Dist. LEXIS 103525, at *22 (S.D. Cal. Dec. 2, 2008); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288–89 (D. Colo. 1997).

While the Plaintiffs believe they have meritorious claims, Defendants have asserted that they have strong defenses that would serve to eliminate their liability and/or damage exposure to the Class. The parties entered into the Settlement to eliminate the burden, and expense and risks of further litigation.

16

1    For all of these reasons, the cash settlement obtained represents an excellent recovery and is

2    certainly "fair, adequate and reasonable" to the Class. Accordingly, final approval should be granted.

3    **D.    The Plan of Allocation Is "Fair, Adequate and Reasonable" and Therefore**
       **Should Be Approved.**

4

5    The Class Notice, which was disseminated in accordance with the Preliminary Approval

6    Orders, outlined the following proposed plan for allocating the settlement proceeds:

7        In the future, each Settlement Class member's *pro rata* share of the Settlement
         Fund will be determined by computing each valid claimant's total CRT Product
8        purchases divided by the total valid CRT Product purchases claimed. This
         percentage is multiplied to the Net Settlement Fund (total settlements minus all
9        costs, attorneys' fees, and expenses) to determine each claimant's *pro rata* share
         of the Settlement Fund. To determine your CRT Product purchases, CRT tubes
10       (color display and color picture) are calculated at full value (100%) while CRT
         televisions are valued at 50% and CRT computer monitors are valued at 75%. In
11       summary, all valid claimants will share in the settlement funds on a *pro rata* basis
         determined by the CRT value of the product you purchased — tubes 100%,
12       monitors 75% and televisions 50%.

13   *See* Murray Decl., Ex. A, ¶ 9.

14   Plaintiffs received no objection to the plan of allocation. *Id.* ¶ 10.

15   A plan of allocation of class settlement funds is subject to the "fair, reasonable and

16   adequate" standard that applies to approval of class settlements. *In re Citric Acid Antitrust Litig.*,

17   145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). A plan of allocation that compensates class members

18   based on the type and extent of their injuries is generally considered reasonable. *In re Computron*

19   *Software, Inc.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998). Here the proposed distribution will be on a

20   *pro rata* basis, with no class member being favored over others. This type of distribution has

21   frequently been determined to be fair, adequate, and reasonable. *See In re Dynamic Random Access*

22   *Memory (DRAM) Antitrust Litig.*, No. M-02-1486 PJH, Dkt. No. 2093, p.2 (Oct. 27, 2010) (Order

23   Approving Pro Rata Distribution); *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 WL

24   1737867, at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions

25   funds according to the relative amount of damages suffered by class members, have repeatedly

26   been deemed fair and reasonable."); *In re Lloyds' Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS,

27   2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata* allocations provided in the

28   Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating

17

1    the settlement benefits."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 135 (S.D.N.Y.

2    1997), *aff'd* 117 F.3d 721 (2d Cir. 1997) ("*pro rata* distribution of the Settlement on the basis of

3    Recognized Loss will provide a straightforward and equitable nexus for allocation and will avoid a

4    costly, speculative and bootless comparison of the merits of the Class Members' claims").

5         The Notice informed class members that they will submit their purchase information for

6    both CRT tubes and finished products—televisions and monitors containing CRTs. All class

7    members will share in the settlement funds on a *pro rata* basis determined by the CRT value of the

8    product they purchased—tubes 100%, monitors 75% and televisions 50%.

9         The proposed plan of allocation is identical to the plan of allocation previously approved by

10   the Court with CPT, Philips, Panasonic, LG Toshiba, Hitachi, and Samsung SDI settlements.

11   Saveri Decl. ¶ 29. Accordingly, the plan of allocation done on a *pro rata* basis in the instant case is

12   "fair, adequate and reasonable" to the Class and final approval of the plan of allocation should be

13   granted.

14   **V.    NO OBJECTIONS BY CLASS MEMBERS**

15        As indicated above, there were no objections to the Settlement. Murray Decl. ¶ 10.

16   **VI.    EXCLUSIONS**

17        Class members were advised of the right to be excluded from the Settlement Class, which

18   could be accomplished through mailing a request for exclusion to the Settlement Administrator

19   postmarked no later than August 10, 2015. Sixteen (16) requests for exclusion were received from

20   Class members. Murray Decl., ¶ 9, Ex. D.

21   **VII.    CONCLUSION**

22        For the foregoing reasons set forth herein, Plaintiffs respectfully submit that the Court

23   should enter an order granting final approval of the Settlement and final judgments of dismissal

24   with prejudice as to Thomson and TDA.

25

26

27

28

1    Dated: October 2, 2015

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

/s/ *R. Alexander Saveri*
Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Cadio Zirpoli (179108)
Travis L. Manfredi (281779)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel For Direct Purchaser Plaintiffs*

Joseph W. Cotchett
Steven N. Williams
Adam J. Zapala
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Bruce L. Simon
Aaron M. Sheanin
PEARSON, SIMON & WARSHAW LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

H. Laddie Montague, Jr.
Ruthanne Gordon
Candice Enders
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (800) 424-6690
Facsimile: (215) 875-4604

Michael P. Lehmann
HAUSFELD LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980

DIRECT PURCHASER PLAINTIFFS' MEMO ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT
WITH THOMSON DEFENDANTS; Master File No. CV-07-5944-SC

Gary Specks
KAPLAN FOX
423 Sumac Road
Highland Park, IL 60035
Telephone: (847) 831-1585
Facsimile: (847) 831-1580

Douglas A. Millen
William H. London
FREED KANNER LONDON & MILLEN
2201 Waukegan Road
Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4519

Eric B. Fastiff
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

W. Joseph Bruckner
Elizabeth R. Odette
LOCKRIDGE GRINDAL NAUEN P.L.L.P
100 Washington Avenue S
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

*Attorneys for Plaintiffs*