Guido Saveri (22349)
   *guido@saveri.com*
R. Alexander Saveri (173102)
   *rick@saveri.com*
Geoffrey C. Rushing (126910)
   *grushing@saveri.com*
Cadio Zirpoli (179108)
   *cadio@saveri.com*
Travis L. Manfredi (281779)
   *travis@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for the Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV- 07-5944-SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| *Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al.*, Case No. 14-CV-2058 (SC). | **DECLARATION OF R. ALEXANDER SAVERI IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH THOMSON DEFENDANTS** |
| | Date:          October 23, 2015 |
| | Time:          10:00 a.m. |
| | Judge:        Honorable Samuel Conti |
| | Courtroom:  1 |

I, R. Alexander Saveri, declare:

1.     I am a partner with Saveri & Saveri, Inc., Lead Counsel for Direct Purchaser Plaintiffs in this litigation. I am a member of the Bar of the State of California and an attorney admitted to practice in the Northern District of California. I make this Declaration in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement with Defendants Thomson SA (now known as Technicolor SA) and Thomson Consumer Electronics, Inc. (now known as Technicolor USA, Inc.) (collectively "Thomson"); and Technologies Displays Americas LLC (formerly known as Thomson Displays Americas LLC) ("TDA") (collectively "Settling Defendants" or "Thomson Defendants"). In accord with the Settlement Agreement, the inclusion of both Thomson and TDA among Thomson Defendants is not to be construed to suggest, for purposes of this Action or any related proceedings, that Thomson and TDA are in any way related entities, have any authority to speak on behalf of the other, or share liability of defenses for any alleged conduct of the other. Except as otherwise stated, I have personal knowledge of the facts stated below.

2.     Attached hereto as Exhibit 1 is the Settlement Agreement dated February 6, 2015 between Plaintiffs and Thomson ("Thomson Settlement Agreement"). The settlement memorialized in the Thomson Settlement Agreement is referred to herein as the "Thomson Settlement." To date, settlements with the Chunghwa Defendants, the Philips Defendants, the Panasonic Defendants, the LG Defendants, the Toshiba Defendants, the Hitachi Defendants, and the Samsung SDI Defendants have been finally approved by the Court.

3.     This multidistrict litigation arises from an alleged conspiracy to fix prices of Cathode Ray Tubes ("CRTs"). In November of 2007, the first direct purchaser plaintiff filed a class action complaint on behalf of itself and all others similarly situated alleging a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15. Thereafter, additional actions were filed in other jurisdictions. The Judicial Panel on Multidistrict Litigation ("JPML") transferred all related actions to this Court on February 15, 2008. Dkt. No. 122; On May 9, 2008, Saveri & Saveri, Inc. was appointed Interim Lead Class Counsel for the nationwide class of direct purchasers. Dkt. No. 282.

DECL. OF R. ALEXANDER SAVERI ISO OF FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH THOMSON DEFENDANTS; Master File No. CV-07-5944-SC

4.      On March 16, 2009, Plaintiffs filed the Consolidated Amended Complaint ("CAC") alleging an over-arching horizontal conspiracy among the Defendants and their co-conspirators to fix prices for CRTs and to allocate markets and customers for the sale of CRTs in the United States from March 1, 1995 through November 25, 2007 (the "Class Period"). The CAC alleges that Plaintiffs and members of the Class are direct purchasers of CRTs and/or CRT Finished Products from Defendants and/or their subsidiaries and were injured because they paid more for CRTs and/or CRT Finished Products than they would have absent Defendants' illegal conspiracy. CAC ¶¶ 213–221; Plaintiffs seek, *inter alia*, treble damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. §§ 15 and 22. CAC at p. 47;

5.      Defendants filed several motions to dismiss the CAC on May 18, 2009. *See* Dkt. Nos. 463–493; On March 30, 2010, this Court entered its Order approving and adopting Judge Legge's previous ruling and recommendations granting in part and denying in part Defendants' Motion to Dismiss. Dkt. No. 665; On April 29, 2010, Defendants answered the CAC.

6.      On March 12, 2010, after the partial stay of discovery was lifted, Plaintiffs propounded their Second Set of Document Requests and First Set of Interrogatories. On October 27, 2011, after extensive meet and confers and several motions to compel, the Court issued its Report Regarding Case Management Conference No. 4 in which it set the middle of December, 2011 as the deadline for the completion of substantial discovery by all parties. Dkt. Nos. 1007, 1008; Plaintiffs have now received over 5 million pages of documents produced by Defendants.

7.      On March 21, 2011, pursuant to FRCP 11, certain Defendants moved to strike allegations of a finished product conspiracy from the CAC. Dkt. No. 880; After a hearing, the Special Master recommended that the motion be granted and that Plaintiffs' allegations of a finished products conspiracy be stricken from the complaint. Dkt. No. 947; The Special Master also recommended that "the issue of the possible impact or effect of the alleged fixing of prices of CRTs on the prices of Finished Products shall remain in the case, and is a proper subject of discovery." Dkt. No. 947 at 14;

8.      On June 29, 2011, Defendants moved the Court to adopt the Special Master's Report and Recommendation (Dkt. No. 953), and Plaintiffs filed an objection (Dkt. No. 957). The

2

Court set the matter for hearing on September 2, 2011. Dkt. No. 968; Prior to the hearing, on August 26, 2011, the parties entered into a stipulation providing, among other things: (1) that the Special Master's recommended finding that Plaintiffs violated Rule 11 be vacated; (2) that certain other aspects of the Special Master's recommendations be adopted; and (3) that Plaintiffs' "allegations of the Direct CAC purporting to allege a conspiracy encompassing Finished Products are Stricken from the Direct CAC, provided, however, that the issue of the possible impact or effect of the alleged fixing of prices of CRTs on the prices of Finished Products shall remain in the case." Plaintiffs agreed to withdraw discovery requests regarding the CRT Finished Product Conspiracy claims. Defendants agreed that the issue of the impact of the CRT conspiracy on the prices of the Finished Products would remain in the case. Dkt. No. 996;

9.     On December 12, 2011 Defendants moved for Summary Judgment against Plaintiffs who purchased CRT Finished Products only. Dkt. No. 1013; Plaintiffs and the Direct Action Plaintiffs ("DAPs") opposed the motion. On March 20, 2012, Judge Legge heard argument from all parties. On May 31, 2012, the Special Master issued his Report and Recommendation that the Court grant Defendants' motion for summary judgment and that judgment be entered against certain plaintiffs that purchased CRT Finished Products from defendants ("R&R"). Dkt. No. 1221;

10.     The parties filed briefs in support and in opposition to adoption of the R&R. On November 29, 2012, the Court entered the Order Granting in Part and Denying in Part Defendants' Joint Motion for Summary Judgment (Dkt. No. 1470) ("Order"); The Court found that Plaintiffs that purchased a Finished Product, were "in fact indirect purchasers for purposes of antitrust standing." Order at 6; The Court further found that one of the three exceptions that permit indirect purchasers to pursue private treble-damages claims, outlined by the Ninth Circuit Court of Appeals in *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012), could apply to Plaintiffs. The Court ruled that the "Ownership and Control Exception" created in *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980), conferred standing on Plaintiffs to sue "insofar as they purchased [Finished Products] incorporating the allegedly price-fixed CRTs from an entity owned or controlled by any allegedly conspiring defendant." Order at 16; Certain defendants filed a

motion under 28 U.S.C. section 1292(b) requesting that the Court certify the Order for interlocutory appeal. Dkt. No. 1499; The Court denied defendants' request. Dkt. No. 1569;

11.     As the case progressed against the Defendants, Plaintiffs developed evidence that they believed established that two additional corporate groups—Mitsubishi and Thomson—also participated in the alleged conspiracy. DPPs had tolling agreements with each group which had been entered into in 2008.

12.     On May 20, 2014, Plaintiffs filed their First Amended Direct Purchaser Plaintiffs' Class Action Complaint Against Mitsubishi, Thomson, and TDA ("Mitsubishi/Thomson Complaint"). *Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Elec.Corp., et al.*, Case No. 14-CV-2058 (SC) (N.D. Cal.) (Dkt. No. 14-3). Plaintiffs filed a motion for class certification on November 7, 2014.  After the motion was filed, Plaintiffs and the Thomson Defendants reached the settlement before the Court. On July 8, 2015, after full briefing, the Court granted DPPs' motion for class certification against Mitsubishi. Dkt. No. 3902. DPPs' motion to authorize notice to the class (Dkt. No. 3944) is pending.

13.     On October 19, 2012, the Court granted final approval of the first two settlements reached in DPP's initial case with: (1) Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. ("CPT") ($10 million), and (2) Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips Da Amazonia Industria Electronica Ltda. ("Philips") ($15 million).

14.     On December 27, 2012, the Court granted final approval of a third settlement with Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic Corporation of North America, and MT Picture Display Co., Ltd., ("Panasonic") for $17.5 million.

15.     On April 1, 2013, the Court granted final approval of a fourth settlement with defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd. ("LG") for $25 million.

16.     On July 23, 2013, the Court granted final approval of a fifth settlement with defendants Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America

4

DECL. OF R. ALEXANDER SAVERI ISO OF FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH THOMSON DEFENDANTS; Master File No. CV-07-5944-SC

Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. ("Toshiba") for $13.5 million.

17.     On July 22, 2015, the Court granted final approval of the sixth and seventh settlements with: (1) Defendants Hitachi, Ltd.; Hitachi Displays, Ltd. (n/k/a Japan Display Inc.) ("Hitachi Displays"); Hitachi America, Ltd.; Hitachi Asia, Ltd.; Hitachi Electronic Devices (USA) Inc. (collectively, "Hitachi") ($13,450,000); and (2) Defendants Samsung SDI Co. Ltd. (f/k/a Samsung Display Devices Co., Ltd.); Samsung SDI America, Inc.; Samsung SDI Brasil, Ltd.; Tianjin Samsung SDI Co., Ltd.; Samsung Shenzhen SDI Co., Ltd.; SDI Malaysia Sdn. Bhd.; SDI Mexico S.A. de C.V. (collectively, "Samsung SDI") ($33,000,000).

18.     In the seven previous settlements, the Court certified a Settlement Class, appointed Saveri & Saveri, Inc. as Settlement Class Counsel, and found that the manner and form of providing notice of the settlements to class members was the best notice practicable under the circumstances (*see* Dkt. Nos. 1412, 1508, 1621, 1791, 2311, 2534), and the Court entered final judgments of dismissal with respect to the settling (and released) defendants (*see* Dkt. Nos. 1413, 1414, 1509, 1510, 1622, 1792, 3932, 3933);

19.     CRTs are defined to mean Cathode Ray Tubes of any type (*e.g.*, color display tubes and color picture tubes). CRT Finished Products are those products that when finished contain Cathode Ray Tubes—such as televisions and computer monitors. CRT Products means CRTs and/or CRT Finished Products.

20.     The Settlement between Plaintiffs and Thomson resolves all claims related to CRT Products (*i.e.*, CRTs and CRT Finished Products) brought by Plaintiffs against Thomson and entities that are defined in the Settlement Agreement to be "Thomson Releasees."

21.     No notices of intent to appear at the fairness hearing were filed.

22.     I participated in settlement negotiations with Thomson. The Settlement is the product of arm's-length negotiation by informed and experienced counsel. The Settlement was reached after the parties engaged in face-to-face negotiations as well as numerous telephone and email discussions. The negotiations were thorough and hard fought.  They were contested and conducted at arm's-length in the utmost good faith.

5

23.    In exchange for dismissal with prejudice and a release of all claims asserted in the FAC, Thomson has agreed to pay $9,750,000 in cash to settle all direct purchaser claims against it. The funds have been deposited into a guaranteed escrow account pursuant to the Settlement Agreement.

24.    Thomson's sales remain in the case for the purpose of computing Plaintiffs' claims against the remaining defendant.

25.    Thomson has agreed to cooperate with Plaintiffs in the prosecution of this action by: (1) providing copies of all discovery (including, *inter alia*, all documents, interrogatories, requests for admission, etc.) Thomson produces to any other party in the Action; (2) providing a declaration and/or custodian establishing the authenticity of Thomson's transactional data, and foundation of any Thomson document or data needed at summary judgment or trial; (3) allowing Counsel to question percipient witnesses noticed for deposition by any other party in the Action with whom Thomson has not settled; and (4) using its best efforts to make available two persons for trial testimony, each of whom is, at the time of trial, a director, officer, and/or employee of Thomson whom Lead Counsel reasonably believes to have knowledge regarding Plaintiffs' claims.

26.    It is my opinion that the Settlement is, in every aspect, fair, adequate and reasonable and in the best interest of the class members. My opinion is based, among other things, on my participation in virtually every aspect of this case, my review of all of the important evidence obtained to date and my experience in many other class action antitrust cases.

27.    The transactional data produced so far indicates that the Settlement Class contains thousands of members dispersed across the country who directly purchased CRT Products from the Settling Defendants and their co-conspirators from March 1, 1995 through November 25, 2007.

28.    The notice program is nearly the same as the one approved by the Court on May 3, 2012 (Chunghwa and Philips settlements), on August 27, 2012 (Panasonic settlement), on November 13, 2012 (LG Settlement), on March 18, 2013 (Toshiba settlement), on January 8, 2014 (Hitachi settlement), and on April 14, 2014 (Samsung SDI) namely direct notice to class members whose addresses can be reasonably obtained along with publication once in the national edition of the *Wall Street Journal*, together with appropriate listings on the Internet. The only significant

difference is that the Thomson summary notice was also published in the *New York Times*. This notice program is similar to that employed in the direct purchaser *DRAM*, *SRAM* and *LCD* class actions.

29.     The plan of allocation is the same procedure as approved by the Court on May 3, 2012 in connection with the CPT and Philips settlements, on August 27, 2012 in connection with the Panasonic settlement, on November 13, 2012 in connection with LG Settlement, on March 18, 2013 in connection with the Toshiba settlement, on January 8, 2014 in connection with the Hitachi settlement, and on April 14, 2014 in connection with the Samsung SDI settlement.

30.     Plaintiffs' plan of allocation is as follows: Each Settlement Class member's *pro rata* share of the Settlement Fund will be determined by computing each valid claimant's total CRT purchases divided by the total valid CRT purchases claimed. This percentage is multiplied against the Net Settlement Fund (total settlements minus all costs, attorneys' fees, and expenses) to determine each claimant's *pro rata* share of the Settlement Fund. To determine each class member's CRT purchases, CRT tubes (CPTs/CDTs) are calculated at full value while televisions are valued at 50% and computer monitors are valued at 75%. This approach is very similar to that approved by Judge Illston in the *LCD* litigation.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 2, 2015 in San Francisco, California.

                                    _____/s/ R. Alexander Saveri_____
                                            R. Alexander Saveri

DECL. OF R. ALEXANDER SAVERI ISO OF FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH THOMSON DEFENDANTS; Master File No. CV-07-5944-SC

# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | ) ) ) | Master File No. CV-07-5944 SC |
| THIS DOCUMENT RELATES TO: ALL DIRECT-PURCHASER ACTIONS | ) ) ) | MDL No. 1917 |

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this 6th day of February, 2015 by and between Thomson SA (now known as Technicolor SA) and Thomson Consumer Electronics, Inc. (now known as Technicolor USA, Inc.) (collectively "Thomson") and the direct-purchaser plaintiff class representatives ("Plaintiffs"), both individually and on behalf of a settlement class of direct purchasers of Cathode Ray Tube (CRT) Products ("the Class") as more particularly defined in Paragraph 1 below.

WHEREAS, Plaintiffs are prosecuting the above *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917 (N.D. Cal.) (the "Action") on their own behalf and on behalf of the Class against, among others, Thomson and Technologies Displays Americas LLC (formerly known as Thomson Displays Americas LLC) ("TDA");

WHEREAS, Plaintiffs allege that Thomson and TDA participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of CRT Products at artificially high levels in violation of Section 1 of the Sherman Act;

WHEREAS, Thomson and TDA deny Plaintiffs' allegations and have asserted defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that resolving claims against Thomson and TDA according to the terms set forth below is in the best interest of Plaintiffs and the Class;

1

WHEREAS, Thomson, despite its belief that it is not liable for the claims asserted and has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against Thomson and/or TDA, based on the allegations of the Action, as more particularly set out below;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Thomson Releasees, as defined below, and except as hereinafter provided, without costs as to Plaintiffs, the Class, Thomson, or TDA subject to the approval of the Court, on the following terms and conditions:

A.    Definitions.

1.    For purposes of this Agreement, "the Class" and "Class Period" are defined in the First Amended Direct Purchaser Plaintiffs' Class Action Complaint Against Mitsubishi and Thomson (filed May 20, 2014) ("FAC") or, if that complaint is amended, the operative complaint at the time this Agreement is presented for preliminary approval. The parties to this Agreement hereby stipulate for purposes of this settlement only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied.

2.    For purposes of this Agreement, "CRT Products" shall have the meaning as defined in the FAC or, if that Complaint is amended, the operative complaint at the time this Agreement is presented for preliminary approval.

3.    "Thomson Releasees" shall refer to the entities that are referred to collectively as "Thomson" in paragraph 28 of the FAC, TDA, and to all of Thomson's and TDA's respective past and present, direct and indirect, parents, subsidiaries, and affiliates, and all of their respective past and present, direct and indirect, parents, subsidiaries, affiliates, unincorporated entities, divisions, and groups; the predecessors, successors and assigns of any of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing.

2

"Thomson Releasees" does not include any defendant in the Action other than TDA and those entities defined in the FAC as "Thomson." The inclusion of both Thomson and TDA among the Thomson Releasees will not be construed to suggest, for purposes of this Action or any related proceedings, that Thomson and TDA are in any way related entities, have any authority to speak on behalf of the other, or share liability or defenses for any alleged conduct of the other.

      4.     "Class Member" means each member of the Class who has not timely elected to be excluded from the Class.

      5.     "Releasors" shall refer to the direct-purchaser plaintiff Class representatives and the direct-purchaser plaintiff Class Members, and to their past and present officers, directors, employees, agents, stockholders, attorneys, servants, representatives, parents, subsidiaries, affiliates, partners, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executives, administrators and assigns of any of the foregoing, as well as to anyone claiming by, for, or through the Releasors.

      6.     "The Settlement Fund" shall be $9,750,000 specified in Paragraph 16 plus accrued interest on said deposits set forth in Paragraph 17.

      7.     "Lead Counsel" shall refer to the law firm of:

> Guido Saveri
> R. Alexander Saveri
> Saveri & Saveri, Inc.
> 706 Sansome Street
> San Francisco, CA94111

**B.**    <u>Approval of this Agreement and Dismissal of Claims Against Thomson and TDA.</u>

      8.     Plaintiffs and Thomson shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the prompt, complete, and final dismissal with prejudice of the Action as to the Thomson Releasees only.

      9.     Plaintiffs shall submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all Class Members identified by the parties (the "Motion"). If notice to the Class is

given jointly with any other settling defendant, for purposes of Paragraph 19 below, the costs of notice and claims administration shall be prorated with any other such defendant based on their respective settlement amounts. The Motion shall include (i) a proposed form of, method for, and date of dissemination of notice; and (ii) a proposed form of order. The text of the foregoing items (i) and (ii) shall be agreed upon by Plaintiffs and Thomson before submission of the Motion, with the understanding that, among other things, individual notice of the settlement shall be mailed by regular mail or email, with appropriate notice by publication, with all expenses paid from the Settlement Fund subject to Paragraph 19(a). The Motion shall recite and ask the Court to find that the mailing of the notice of settlement to all members of the Class who can be identified upon reasonable effort constitutes valid, due and sufficient notice to the Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23.

        10.     Plaintiffs shall seek, and Thomson will not object unreasonably to the entry of, an order and final judgment, the text of which Plaintiffs and Thomson shall agree upon. The terms of that order and final judgment will include, at a minimum, the substance of the following provisions:

        a.     certifying the Class described in Paragraph 1, pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement as a settlement class;

        b.     as to the Action, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

        c.     as to the Thomson Releasees, directing that the Action be dismissed with prejudice and, except as provided for in this Agreement, without costs;

        d.     reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement, to the United States District Court for the Northern District of California; and

4

   e.  determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to the Thomson Releasees shall be final.

   11.  This Agreement shall become final when (i) the Court has entered a final order certifying the Class described in Paragraph 1 and approving this Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to Thomson Releasees against all Class Members and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to Thomson Releasees described in (i) hereof has expired or, if appealed, approval of this Agreement and the final judgment as to Thomson Releasees have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the date that Plaintiffs and Thomson have executed this Agreement, Plaintiffs and Thomson shall be bound by its terms and this Agreement shall not be rescinded except in accordance with Paragraphs 17(h), 18(a), 28, or 29 of this Agreement.

   12.  Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents and discussions associated with them, shall be deemed or construed to be an admission by Thomson (or the Thomson Releasees) or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Thomson (or the Thomson Releasees), or of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the Action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by any of the settling parties shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

C.      Release, Discharge, and Covenant Not to Sue.

13.      In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in Paragraph 11 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 16 of this Agreement, into the Settlement Fund, and for other valuable consideration, the Thomson Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, judgments, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to any act or omission of the Thomson Releasees (or any of them) concerning the CRT Products that are the subject of the Plaintiffs' FAC up to the date of execution of this Agreement, including but not limited to any conduct alleged, and causes of action asserted or that could have been alleged or asserted, in any class action complaints filed in the Action, other than claims for product defect or personal injury or breach of contract arising in the ordinary course of business or indirect purchaser claims for CRT Products that were not purchased directly from Defendants or their alleged co-conspirators (the "Released Claims"). However, the Released Claims shall not preclude Plaintiffs from pursuing any and all claims against other defendants for the sale of CRT Products by those defendants, or their co-conspirators, which contain Thomson's or TDA's CRT Products.  Releasors shall not, after the date of this Agreement, seek to establish liability against any Thomson Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims.  For purposes of clarity, the Released Claims shall include any claims under foreign antitrust or competition laws or state antitrust or competition laws (including indirect purchaser claims) that relate to or arise out of the sale of any of the CRT Products that are the subject of the Plaintiffs' FAC, but do not include any foreign antitrust or competition law claims or any state law indirect purchaser claims that relate to or arise out of the sale of CRT Products that: (a)

6

were not purchased from a Defendant or alleged co-conspirator in the Action; or (b) were not sold in the United States as either a CRT Product or as a component included within a CRT Product. The types of claims released in this Paragraph 13 are released regardless of the type of cause of action, common law principle, or statute under which they are asserted. For example, such claims are released whether asserted under any federal, state, international, foreign, or local antitrust, unfair competition, unfair practices, deceptive trade practices, price discrimination, unitary pricing, common law unjust enrichment, trade practice, racketeering, or civil conspiracy law, or similar law or regulation of any jurisdiction within the United States or elsewhere.

      14.    In addition to the provisions of Paragraph 13 of this Agreement, Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL
> RELEASE.  A GENERAL RELEASE DOES NOT
> EXTEND TO CLAIMS WHICH THE CREDITOR DOES
> NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT
> THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM MUST HAVE MATERIALLY
> AFFECTED HIS SETTLEMENT WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of the provisions of Paragraph 13 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of Paragraph 13 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

      15.    The release, discharge, and covenant not to sue set forth in Paragraph 13 of this Agreement does not include claims by any of the Class Members other than the Released Claims and does not preclude Class Members from pursuing

claims based on indirect sales or foreign sales of CRT Products so long as such claims are not based on the purchase of the same CRT Products included as part of the Released Claims defined in Paragraph 13.  The Releasors hereby covenant and agree that they shall not, hereafter, sue or otherwise seek to establish liability against any of the Thomson Releasees based, in whole or in part, upon any of the Released Claims.

      D.   <u>Settlement Amount.</u>

      16.   Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, Thomson shall pay the Settlement Amount of $9,750,000 in United States Dollars (the "Settlement Amount"). The Settlement Amount shall be paid into an escrow account in United States Dollars to be administered in accordance with the provisions of Paragraph 17 of this Agreement (the "Escrow Account") thirty (30) days after execution of this Agreement.

      17.   Escrow Account.

      (a)   The Escrow Account will be established at Citibank, N.A. – Citi Private Bank, San Francisco, California, with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to Plaintiffs' Lead Counsel and Thomson, such escrow to be administered under the Court's continuing supervision and control.

      (b)   The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and Standard & Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates.

      (c)   All funds held in the Escrow Account shall be deemed and considered to be in <u>custodia legis</u> of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

      (d)   Plaintiffs and Thomson agree to treat the Settlement Fund as being at all times a qualified settlement fund within the meaning of Treas. Reg. § 1.468B-1. In addition, the Escrow Agent and/or claims administrator shall timely make such elections

as necessary or advisable to carry out the provisions of this Paragraph 17, including the relation-back election (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent and/or claims administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(e)     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the administrator shall be the Escrow Agent and/or claims administrator.  The Escrow Agent and/or claims administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)(l)). Such returns (as well as the election described in Paragraph 17(d)) shall be consistent with Paragraph 17(d) and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 17(f) hereof.

(f)     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Thomson or any other Thomson Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 17(d) through 17(f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 17(f) ("Tax Expenses")), shall be paid out of the Settlement Fund.

(g)     Neither Thomson nor any other Thomson Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent and/or the claims administrator out of the Settlement Fund without prior order from the

9

Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). Neither Thomson nor any other Thomson Releasee is responsible nor shall they have any liability therefor. Plaintiffs and Thomson agree to cooperate with the Escrow Agent, the claims administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 17(d) through 17(f).

(h) If this Agreement does not receive final Court approval, including final approval of "the Class" as defined in Plaintiffs' FAC or, if that complaint is amended, the operative complaint at the time this Agreement is presented for preliminary approval, or if the Action is not certified as a class action for settlement purposes, then all amounts paid by Thomson into the Settlement Fund (other than costs expended in accordance with Paragraph 19(a)) shall be returned to Thomson from the Escrow Account by the Escrow Agent along with any interest accrued thereon within thirty (30) calendar days.

18. Exclusions.

(a) Within ten (10) business days after the end of the period to request exclusion from the Class, Lead Counsel will cause copies of timely requests for exclusion from the Class to be provided to counsel for Thomson. To the extent that Thomson determines in good faith that its sales of CRT Products during the Class Period to the potential members of the Class (or any of them) who have requested exclusion from the Class represent an amount of sales equal to or greater than 70% of Thomson's sales of CRT Products in the United States during the Class Period, Thomson may terminate the Agreement within thirty (30) days of receipt of the list of exclusions.

(b) If Thomson terminates this Agreement pursuant to Paragraph 18(a), then all amounts paid by Thomson into the Settlement Fund (other than notice costs expended in accordance with Paragraph 19(a)) shall be returned to Thomson from the Escrow Account by the Escrow Agent along with any interest accrued thereon within thirty (30) calendar days.

(c)     With respect to any potential Class member who requests exclusion from the Class, Thomson and TDA reserve all of their respective legal rights and defenses, including, but not limited to, any defenses relating to whether the excluded Class member is a direct purchaser of any allegedly price-fixed product and/or has standing to bring any claim and statutes of limitation.

19.     Payment of Expenses.

(a)     Thomson agrees to permit use of a maximum of $300,000 of the Settlement Fund towards notice to the class and the costs of administration of the Settlement Fund set forth in Paragraph 17.  The $300,000 in notice and administration expenses are not recoverable if this settlement does not become final to the extent such funds are expended for notice and administration costs. Other than as set forth in this Paragraph 19(a), neither Thomson nor any of the other Thomson Releasees under this Agreement shall be liable for any of the costs or expenses of the litigation of the Action, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements, or for Class administration and costs.

(b)     If Lead Counsel enter into any other settlements on behalf of the Class before notice of this Agreement is given to the Class, Lead Counsel shall use its reasonable best efforts to provide a single notice to prospective Class members of all of the settlements.

(c)     Following final approval of this Agreement by the Court, Thomson will not object to Lead Counsel using, subject to prior approval of the Court, up to $750,000 of the Settlement Fund for expenses incurred for prosecution of the Action on behalf of the Class against non-settling defendants.

E.     The Settlement Fund.

20.     Releasors shall look solely to the Settlement Fund for settlement and satisfaction against the Thomson Releasees of all Released Claims, and shall have no other recovery against Thomson or any other Thomson Releasee.

21.     After this Agreement becomes final within the meaning of Paragraph 11, the Settlement Fund shall be distributed in accordance with a plan to be submitted at the appropriate time by Plaintiffs, subject to approval by the Court. In no

11

event shall any Thomson Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration or any costs associated with the Escrow, with the sole exception of the provisions set forth in Paragraph 19(a) of this Agreement.

22.     Plaintiffs and Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses. The Thomson Releasees shall not be liable for any costs, fees, or expenses of any of Plaintiffs' or the Class' respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

23.     Class Counsel's Attorneys' Fees and Reimbursement of Expenses.

(a)     Class Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for distribution to them from the Settlement Fund and Thomson shall not oppose such application for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund; plus (ii) reimbursement of expenses and costs incurred in connection with prosecuting the Action, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award"). Class Counsel reserve the right to make additional applications for fees and expenses incurred, but in no event shall Thomson Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement Fund.

(b)     The Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund. After this Agreement becomes final within the meaning of Paragraph 11, the Fee and Expense Award shall be paid to Lead Counsel within ten (10) business days.  Lead Counsel shall allocate the attorneys' fees among Class Counsel in a manner which it in good faith believes reflects the contributions of such counsel to the prosecution and settlement of the Action.

(c)     The procedure for and the allowance or disallowance by the Court of the application by Class Counsel for attorneys' fees, costs and expenses to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application,

12

or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

(d)     Neither Thomson nor any other Thomson Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Class Counsel of any Fee and Expense Award in the Action.

(e)     Neither Thomson nor any other Thomson Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Class Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

F.     Cooperation.

24.     Thomson shall reasonably cooperate with Lead Counsel as set forth specifically below:

(a)     Thomson shall provide Lead Counsel with copies of all discovery (including among other things, all documents, interrogatories, requests for admission, etc.) Thomson produces to any other party in the Action;

(b)     Thomson agrees to provide a declaration and, if necessary, a document custodian to establish, to the best of their ability, the foundation and authenticity of Thomson's transactional data.  In addition, Thomson agrees to provide a declaration and, if necessary, a document custodian to establish, to the best of their ability, the foundation of any Thomson document or data Lead Counsel identify as necessary for summary judgment and/or trial.

(c)     Thomson agrees to allow Lead Counsel to ask a reasonable amount of questions not to exceed two hours of questioning and subject to discovery order provisions in this matter otherwise limiting permissible deposition time of any percipient witness from Thomson noticed for deposition by any other party in *In Re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917 (N.D. Cal.) (the " MDL Action") with whom Thomson has not settled, pursuant to the deposition procedures described in the Order Re Discovery and Case Management Protocol (ECF. No. 1128).

13

(d)   If the Plaintiffs proceed to trial against any of the remaining, non-settling defendants in the MDL Action, Thomson agrees to use its reasonable efforts to the best of its ability to make available for live testimony at trial at the United States Courthouse of the United States District Court for the Northern District of California, at Plaintiffs' expense, two (2) persons, each of whom is, at the time of trial, a director, officer, and/or employee of Thomson whom Lead Counsel, in consultation with Thomson, reasonably and in good faith believes to have knowledge regarding Plaintiffs' claims as alleged in the Plaintiffs' FAC.  At a reasonable time prior to his/her scheduled trial appearance, Plaintiffs may also meet with each of the two proposed trial witnesses to discuss his/her testimony.

(e)   Notwithstanding any other provision in this Agreement, Plaintiffs agree that they and Class Counsel shall maintain all statements made by Thomson's counsel as strictly confidential; and that they shall not use directly or indirectly the information so received for any purpose other than the prosecution of the Action.  The parties and their counsel further agree that any statements made by Thomson's counsel in connection with and/or as part of this settlement shall be protected by Federal Rule of Evidence 408, and shall in no event be discoverable by any person or treated as evidence of any kind, unless otherwise ordered by a Court.

(f)   If any document protected by the attorney-client privilege, attorney work-product protection, joint defense or any other protection, privilege, or immunity is accidentally or inadvertently produced under this Paragraph, the document shall promptly be returned to Thomson, and its production shall in no way be construed to have waived any privilege or protection attached to such document.

(g)   Plaintiffs and Lead Counsel agree they will not use the information provided by Thomson or the Thomson Releasees or their representatives under this Paragraph for any purpose other than the pursuit of the Action and, will not publicize the information beyond what is reasonably necessary for the prosecution of the action or as otherwise required by

law.  Any documents and other information provided will be deemed "Highly Confidential" and subject to the protective order entered in the Action as if they had been produced in response to discovery requests and so designated.

25.     In the event that this Agreement fails to receive final approval by the Court as contemplated in Paragraphs 8-11 hereof, including final approval of "the Class" as defined in Plaintiffs' FAC or, if that complaint is amended, the operative complaint at the time this Agreement is signed, or in the event that it is terminated by either party under any provision herein, the parties agree that neither Plaintiffs nor Plaintiffs' counsel shall be permitted to introduce into evidence, at any hearing, or in support of any motion, opposition or other pleading in the Action or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of this Action, any deposition testimony or any documents provided by the Thomson Releasees, their counsel, or any individual made available by the Thomson Releasees pursuant to the cooperation provisions of Paragraph 24.

26.     Except as provided in Paragraph 24 of this Agreement, Thomson, TDA and their respective officers, directors, and employees need not respond to discovery requests or demands from Plaintiffs or otherwise participate in the Action during the pendency of the Agreement. Neither Thomson nor TDA nor Plaintiffs shall file motions against the other during the pendency of the Agreement. In the event that the Agreement is not approved by the Court, or otherwise terminates, Thomson, TDA and Plaintiffs will each be bound by and have the benefit of any rulings made in the Action to the extent they would have been applicable to Thomson, TDA or Plaintiffs had Thomson and/or TDA been participating in the Action.

27.     Thomson and Plaintiffs agree not to disclose publicly or to any other defendant (except TDA) the terms of this Agreement until this Agreement is submitted to the Court for approval.

G.     Rescission if this Agreement is Not Approved or Final Judgment is Not Entered.

28.     If the Court refuses to approve this Agreement or any part hereof, including if the Court does not certify a settlement class in accordance with the specific class definition set forth in Plaintiffs' FAC, or if such approval is modified or set aside on

appeal, or if the Court does not enter the final judgment provided for in Paragraph 10 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, then Thomson and the Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety. Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 39. A modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

29.    In the event that this Agreement does not become final, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund caused to be deposited in the Escrow Account (including interest earned thereon) shall be returned forth with to Thomson less only disbursements made in accordance with Paragraph 19 of this Agreement. Thomson and TDA expressly reserve all of their respective rights and defenses if this Agreement does not become final.

30.    Further, and in any event, Plaintiffs and Thomson agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrong doing whatsoever by Thomson (or the Thomson Releasees), or of the truth of any of the claims or allegations contained in the complaint or any other pleading filed in the Action, or by any person or entity in any other action, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the Action or in any other action or proceeding. Further, this Agreement shall not be interpreted to acknowledge the jurisdiction of any court over Thomson SA, or concede the enforceability of any judgment against Thomson SA in any court in any jurisdiction, except as specified in Paragraph 34 below.

31.    This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Thomson Releasee as provided in this Agreement.

16

32.     The parties to this Agreement contemplate and agree that, prior to final approval of the settlement as provided for in Paragraphs 8-11 hereof, appropriate notice 1) of the settlement; and 2) of a hearing at which the Court will consider the approval of this Settlement Agreement will be given to Class members.

H.     <u>Miscellaneous</u>.

33.     This Agreement does not settle or compromise any claim by Plaintiffs or any Class Member asserted in the FAC or, if amended, any subsequent Complaint, against any defendant or alleged co-conspirator other than the Thomson Releasees. All rights against such other defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Class.  Thomson and TDA's sales to the Class shall not be removed from the Action.

34.     The United States District Court for the Northern District of California shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Thomson. This Agreement shall be governed by and interpreted according to the substantive laws of the state of California without regard to its choice of law or conflict of laws principles.

35.     This Agreement constitutes the entire, complete and integrated agreement among Plaintiffs and Thomson pertaining to the settlement of the Action against Thomson and TDA, and supersedes all prior and contemporaneous undertakings of Plaintiffs and Thomson in connection herewith.  This Agreement may not be modified or amended except in writing executed by Plaintiffs and Thomson, and approved by the Court.

36.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Thomson. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Plaintiffs, Lead Counsel or Class Counsel shall be binding upon all Class Members and Releasors. The Thomson Releasees (other than Thomson and TDA which are parties hereto) are third party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

17

37.     This Agreement may be executed in counterparts by Plaintiffs and Thomson, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

38.     Neither Plaintiffs nor Thomson shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

39.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by facsimile or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

40.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: February ___6___, 2015

_R. Alexander Saveri_
Guido Saveri
R. Alexander Saveri
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
Email: guido@saveri.com
Email: rick@saveri.com

*Lead Counsel and Attorneys for the Class*

_Kathy L. Osborn_
Kathy L. Osborn
Ryan M. Hurley
**FAEGRE BAKER DANIELS LLP**
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204

18

Telephone: (317) 237-0300
Facsimile: (317) 237-1000
Email: kathy.osborn@FaegreBD.com
Email: ryan.hurley@FaegreBD.com

*Attorneys for Defendants Thomson SA and Thomson Consumer Electronics, Inc.*

Donald Wall
**SQUIRE PATTON BOGGS (US) LLP**
1 E. Washington Street, Suite 2700
Phoenix, AZ 85004
Telephone: (602) 528-4000
Facsimile: (602) 253-8129
E-mail: donald.wall@squirepb.com

*Attorneys for Defendant Technologies Displays Americas, LLC*