# EXHIBIT 14

Final report of the Hearing Officer (¹)

TV and computer monitor tubes

(COMP/39.437) (²)

(2013/C 303/06)

This case concerns two cartels between Asian and European producers for colour display tubes used in computer monitors ('CDT') and colour picture tubes incorporated in colour televisions ('CPT').

## BACKGROUND

The Commission's investigation was triggered by an immunity application submitted by the Chunghwa group of companies ('Chunghwa') in March 2007. Chunghwa was subsequently granted conditional immunity. This was followed by inspections carried out on the premises of Samsung SDI Germany and [Philips/LGE joint venture]. In November 2007, the Samsung, Panasonic and Philips groups of companies each filed leniency applications followed by Technicolor SA in March 2008.

The Hearing Officer originally responsible for this case was Ms Karen Williams. After her departure from the Hearing Office in February 2010, I took over the case from 1 March 2010 onwards.

## PROCEDURE

### A. Statement of objections

On 23 November 2009, the Commission adopted a statement of objections ('SO') in which it came to the preliminary conclusion that two single and continuous infringements of Article 101(1) TFEU and Article 53(1) EEA had been committed.

The first infringement occurred in the CDT sector and lasted nine and a half years. It involved the four undertakings: Chunghwa (³), Samsung (⁴), Philips (⁵) and LGE (⁶).

The second infringement concerns the CPT sector and lasted nine years. The eight undertakings committing the infringement in addition to the four already mentioned were: Panasonic Corporation, Toshiba (⁷), their joint venture MT Picture Display Co. Ltd ('MPTD') and Technicolor.

All the undertakings mentioned (collectively referred to as 'the parties' below) received the SO in November 2009 and were invited to make known their views on the objections contained therein in accordance with Article 27(1) of Regulation (EC) No 1/2003 (⁸).

1. *Access to file*

Following receipt of the SO, the parties were granted access to documents in the Commission file via a DVD and to oral corporate statements on Commission premises. Three parties asked for additional access to file.

Toshiba requested further access to certain documents which the providers had partly redacted claiming confidentiality. After a review of the claims, DG Competition supplied Toshiba with new and less redacted non-confidential versions of the documents at issue.

---

(¹) Pursuant to Articles 16 and 17 of Decision 2011/695/EU of the President of the European Commission of 13 October 2011 on the function and terms of reference of the hearing officer in certain competition proceedings — OJ L 275, 20.10.2011, p. 29 (the 'terms of reference').
(²) Parts of this text have been edited to ensure that confidential information is not disclosed. Those parts are replaced by a non-confidential summary in square brackets or are shown as […].
(³) Chunghwa Picture Tubes Co. Ltd, Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. and CPTF Optronics Co. Ltd.
(⁴) Samsung SDI Co. Ltd., Samsung SDI Germany GmbH and Samsung SDI (Malaysia) Sdn. Bhd.
(⁵) Royal Philips Electronics NV.
(⁶) LG Electronics Inc., […].
(⁷) Toshiba Corporation and […].
(⁸) Council Regulation (EC) No 1/2003 of 16 December 2002 on the implementation of the rules on competition laid down in Articles 81 and 82 of the Treaty (OJ L 1, 4.1.2003, p. 1).

Panasonic and MTPD jointly submitted first a general request to be granted access to all exculpatory evidence contained in other parties' responses to the SO which was rejected by DG Competition. After having listened to the other parties' presentations at the oral hearing, Panasonic and MTPD filed a more detailed access request which was partially accepted. DG Competition provided Panasonic and MPTD with employee statements which Toshiba had annexed to its reply to the SO.

All three parties did not pursue their requests for additional file access any further. I consider the matter therefore as settled.

2. *Extensions of time limit for replies to the SO*

The recipients of the SO were originally given eight weeks for their reply from the day after the receipt of the DVD. All parties, except for Chunghwa, formally sought to be given additional time for their respective comments for various reasons. I partially accepted the requests and granted extensions ranging from two to six weeks. All parties responded in due time.

3. *Application for third person status*

[…]

B. **Oral hearing**

The oral hearing was scheduled for April but had to be postponed one month because the eruption of an Icelandic volcano did not allow many invited participants to come to Brussels. One invited party objected to the new date because one of its main representatives would not be able to attend the hearing. Given that the alternative dates considered would cause problems for other participants, I was unable to accede to the request.

As a preparation for the oral hearing, I asked the parties to focus in their presentations on the controversial link between the parties' discussions at locations in Asia and the price developments in Europe. Almost all parties expressed their views on this issue.

1. *Oral hearing of individuals*

The presentation of one party included statements of employees who had attended alleged cartel meetings. At the explicit wish of the party the names of the individuals making the statements were not inserted in the participants' list distributed to all attendees before the oral hearing. Their identity was known, however, by DG Competition, because the party had attached the employee statements to its written reply to the SO, as well as other addressees of the SO present at the hearing. This presentation as most of the other parties' presentations was subsequently subject to a number of questions by hearing participants. One party introduced with my consent a new document during one of the question times. The document was later added to the Commission file.

To listen to individuals close to the facts of the case as a part of the presentation of a party would seem to be part and parcel of the right to be heard orally. It is, however, probably in the interest of a transparent and fair procedure that in future all names of persons which a party brings to a hearing in order to corroborate certain facts set out in its written submission pursuant to Article 10(3) of Regulation (EC) No 773/2004 ([1]) are disclosed before participants convene for the hearing.

2. *Closed sessions*

Two parties had been given the opportunity to be partly heard in closed sessions upon their reasoned request. However, since the *in camera* presentation of one party contained a considerable number of points which obviously were not confidential, I asked the party to reiterate these points in the presence of all other parties, which it did.

3. *Letter of facts concerning decisive influence over MPTD*

On 22 December 2010, the Commission informed Toshiba, Panasonic and MPTD in a letter of facts that it intended to use in the final decision certain attached documents, which the three parties themselves had

---

([1]) Commission Regulation (EC) No 773/2004 of 7 April 2004 relating to the conduct of proceedings by the Commission pursuant to Articles 81 and 82 of the EC Treaty (OJ L 123, 27.4.2004, p. 18).

submitted to the Commission after the oral hearing. It explained that the information contained in the documents would corroborate and support the objections set out in the SO regarding the decisive influence of Toshiba and Panasonic over MPTD and hence their liability for the conduct of the joint venture. The parties were given three weeks to submit comments. This initial deadline was extended by another three weeks for Toshiba upon its reasoned request. All parties replied on time.

### C. Supplementary statement of objections

On 1 June 2012, the Commission adopted a supplementary statement of objections ('SSO'). In comparison with the SO, the SSO replaces one initial objection for another in regard of Philips and added an objection for LGE. Instead of being directly held liable for the infringement of Article 101(1) TFEU and Article 53 EEA before the joint venture [Philips/LGE joint venture] was created with LGE ([1]), Philips is now accused of being indirectly liable for the infringements as a parent company through certain individualised subsidiaries. LGE is no longer only alleged to have directly infringed the competition rules but now also accused to have indirectly infringed the law through certain individualised subsidiaries before the formation of [Philips/LGE joint venture]. The SSO furthermore adduces new evidence against LGE and Philips concerning their joint liability for the infringement committed by [Philips/LGE joint venture]. In that respect, the SSO represents a mere letter of fact.

Given that the new allegations altered only the legal position of two parties of the larger cartel proceeding on the basis of evidence which originates from LGE, Philips, their joint venture [Philips/LGE joint venture] and its [officer], and relates to these companies, the other addressees of the initial SO were not included in the supplementary proceeding. [Philips/LGE joint venture] was not a recipient of the SO or SSO.

1. *Supplementary access to file*

Along with the SSO, the two addressees were provided access via a DVD to documents relating to the respective supplementary objections concerning the liability of LGE and Philips gathered through the additional investigation. In addition, further access was given to documents which were already included in the previous access to file list at the time of the first SO. Since it regarded these parts of the documents as relevant for the supplementary objections, DG Competition obtained the consent of the providers of these documents to disclose information which was treated as confidential at the time of the first access to file. The limited access has been justified with reference to the Notice on best practices for the conduct of proceedings concerning Articles 101 and 102 TFEU which provides for limited access under certain circumstances ([2]).

LGE and Philips did not submit the matter to me, but I have doubts whether the limited access to file granted in this proceeding is fully compatible with EU law. When raising objections the rights of defence require the Commission normally to make available the entire investigation file. In the case of supplementary objections, access to all documents obtained, produced or assembled after the first access to file granted in the context of the SO should regularly be given.

The fact that the recipients of the SSO were only given limited access amounts in this case however to a mere procedural irregularity. My examination of the parts of the file which recipients did not see has not produced any elements of potentially exculpatory nature. Those elements which might possibly be considered as exculpatory were known by the parties. At any rate, even if LGE and Philips had been

---

[1] On 1 July 2001, LGE and Philips merged their respective CRT businesses into a joint venture, at the head of which was the company [Philips/LGE joint venture company], forming the [Philips/LGE joint venture] Group.
[2] See OJ C 308, 20.10.2011, p. 6, paragraph 112.

able to avail themselves of the not disclosed documents, the Commission's findings could not have been influenced by them ([1]). The right to be heard of Philips and LGE has thus not been violated through granting both addressees of the SSO only limited access to the file.

2. *Extensions of time limit for replies to the SSO*

Each of the two parties was afforded a period of four weeks for comments on the SSO. Both requested an extension and having been refused the prolongation by DG Competition referred their requests to me. Recognising some of the arguments of the parties and taking into account their commitments as to the timing of the oral hearing, I extended the deadline by two weeks. LGE and Philips responded in due time.

3. *Letter of facts concerning individuals participating in meetings*

On 5 July 2012, following the adoption of the SSO, the Commission informed all other parties about the updated version of a certain Annex 1 which identifies the individuals representing the LGE, [Philips/LGE joint venture] and Philips groups in their contacts with competitors as described in the SO. The original deadline to reply of two weeks was extended by another two weeks for Panasonic and MTPD upon their request. All parties replied in due time.

### D. **Supplementary oral hearing**

In their replies to the SSO, LGE and Philips requested a supplementary oral hearing which focused on the modified and additional objections raised against these two parties.

A few days before the Commission is supposed to decide on this case, Toshiba requested access to the recording as well as to submissions of MTPD and Panasonic relevant for the calculation of the fine potentially to be imposed on MTPD. It furthermore asked to be heard on the new start date for the alleged infringement of which it had learned in the state-of-play meeting. I consider these partly belated requests as unfounded. There has been no new evidence on which Toshiba has a right to be heard on. Partly Toshiba is requesting information from the Commission, access to which it could have ensured itself.

### E. **Issues regarding the exercise of procedural rights**

Philips and LGE criticised in their written comments and oral presentations the Commission, inter alia, for having breached their rights of defence and accuse it of unequal treatment.

1. *Breach of rights of defence*

LGE and Philips claimed that the Commission breached their rights of defence because it did not notify the SO and SSO to their former joint venture [Philips/LGE joint venture]. The latter company acquired the CDT and CPT businesses of LGE and Philips […]. Without being prosecuted [Philips/LGE joint venture] had no incentive to assist LGE and Philips in verifying the correctness of the facts used against them and adducing circumstances which could exonerate them from the alleged infringements or qualify as mitigating factors.

I consider the claim to be unfounded for the following reasons:

LGE and Philips have been granted access to file and, in particular, [Philips/LGE joint venture]'s responses to the Commission's requests for information. They have thus been given the opportunity to verify the evidence underlying the objections and to invoke evidence in the file which was not consistent with the inferences made by the Commission. Neither of the two parties alleges that the Commission's investigation has not been complete and impartial also in relation to [Philips/LGE joint venture].

---

([1]) See Case C-407/08 P *Knauf Gips* [2010] ECR I-06375, paragraph 23 et seq.

It is true that incentives may be different when an addressee replies to the SO and not only to a request for information. However, it falls within one undertaking on the legal persons belonging to the undertaking to organise their defence as they consider it necessary. LGE, Philips and [Philips/LGE joint venture] are thus themselves responsible for taking the appropriate measures to react to the SO and SSO. It is not for the Commission to take any steps to facilitate or to organise their defence, as both parties seem to suggest when they criticise the Commission for not having sent the SO and SSO to their joint venture [Philips/LGE joint venture].

It is also true that [Philips/LGE joint venture] has been declared bankrupt and its [officer] refused to assist LGE in its defence when asked to do so. However, this fact does not relieve LGE and Philips from their responsibility and charge the Commission instead. They could have secured themselves access to [Philips/LGE joint venture]'s files and employees, for instance, through contractual means when transferring their respective businesses to [Philips/LGE joint venture]. Furthermore, addressing the SO and SSO to [Philips/LGE joint venture] would not necessarily have improved LGE's and Philips' situation. Recipients of the SO and SSO are not obliged to make use of their rights of defence.

2. *Unequal treatment*

LGE and Philips furthermore submit that the Commission discriminated against them in two regards. It allegedly did neither equally accuse all companies directly involved in the suspected infringement, nor equally prosecute all parent companies the subsidiaries of which received the SO or SSO.

The Commission is obliged to treat all parties in similar situations equally, unless there is an objective justification to treat them differently (¹). The reasons for not prosecuting through this proceeding certain undertakings are based on the facts set out in the draft decision. To the extent undertakings in a similar situation are indeed treated differently the treatment appears to be sufficiently justified.

F. **Letter on the calculation of the sales value**

The Commission sent all parties a letter on 24 August 2011 announcing that it may use the data provided by them in reply to a simple request for information as the basis for calculating the value of sales for determining the fine. It furthermore announced to include certain indirect sales to the EEA in the calculation of a possible fine. The parties were given two weeks for any observations. All parties responded in time.

I consider that the Commission's letter of 24 August 2011 taken together with the request for information allowed the parties to understand and to comment on the facts and the methodology the Commission intends to use for the determination of the fines. The letter addressed in my view also LGE's complaint of 27 July 2011 that it has not been properly heard on the calculation of the fine.

THE DRAFT DECISION

After having heard the parties in writing and orally, the Commission revised the duration of the infringement for some parties. As a result, the duration of the direct participation of one party in the CPT cartel was shortened by 23 months. Furthermore, the liability for the participation of one joint venture was reduced by 2 months in the CDT cartel and 10 months in the CPT cartel to better take into account its entry into liquidation.

---

(¹) Case T-24/05 *Alliance One International, Inc.* [2010] ECR II-05329, paragraphs 157 and 218.

**CONCLUDING REMARK**

Pursuant to Article 16 of the terms of reference, I have examined whether the draft decision deals only with objections in respect of which the parties have been afforded the opportunity of making known their views, and I have come to a positive conclusion.

Overall, I find that all participants have been able to effectively exercise their procedural rights in this proceeding.

Brussels, 3 December 2012.

*Michael* ALBERS