Steve A. Miller (State Bar No. 171815)
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

Jonathan E. Fortman (40319MO)
Law Office of Jonathan E. Fortman, LLC
250 St. Catherine Street
Florissant, MO 63031
Ph# (314) 522-2312
Fax:  (314) 524-1519
Email:  jef@fortmanlaw.com

John C. Kress
The Kress Law Firm, LLC
4247 S. Grand Blvd
St. Louis, MO  63111
Ph.#:  (314) 631-3883
Fax:  (314) 332-1534
Email:  jckress@thekresslawfirm.com

Attorneys for Objectors John Finn and
Laura Townsend Fortman

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. CV-07-5944 SC; No. CV-13-03234 SC MDL No. 1917 |
| This Document Relates to: | OBJECTION TO COURT APPROVAL OF SETTLEMENT AGREEMENTS AND NOTICE OF INTENT TO APPEAR |
| All Indirect-Purchaser Class Actions *Luscher et al v. Videocon Industries Limited, et al.* | Hearing Date: November 13, 2015 Time: 10:00 a.m. Courtroom 1, 17th Floor. San Francisco Judge: Honorable Samuel Conti |

COMES NOW Class Members Laura Townsend Fortman and John Finn, by and through counsel, and hereby file their objections to the proposed class action settlements.  Class Member Laura Townsend Fortman states that she is a resident of the State of Missouri, and purchased products containing Cathode Ray Tubes (CRT's) within the defined class period in that she purchased at least one CRT television and at least one CRT computer monitor.  Class Member John Finn states that he is a resident of the State of California and products containing Cathode Ray Tubes (CRT's) within the defined class period in that he purchased at least one CRT television and at least one CRT computer monitor.[1]  Class Members Laura Townsend Fortman and John Finn intend on appearing at the Fairness Hearing through their counsel.  In support of their objections, Class Members Laura Townsend Fortman and John Finn state as follows:

**I.     The Proposed Settlement is unfair to the class members in the 22 omitted states, because they do not receive any benefits under the settlement, but release their claims against all the Defendants.**

Lead Counsel declares that this settlement is "one of the largest recoveries ever on behalf of indirect purchasers", touting that no coupons, voucher or cy pres distribution, or refund to any defendant will be distributed or occur (Doc #4071, Mtn for Attorneys' Fees, p. 9).  By all accounts an incredible settlement that should benefit all class members.  But, notice was only directly mailed and e-mailed to 10,082,690 "unique addresses." (Alioto Decl., Doc # 4071-1, p. 43).

Approval of this settlement cannot occur, because class members in 22 states are not receiving any notice at all, and in the event that they do receive notice of any sort, not one red cent will be paid to such class members.  These unfortunate persons are labeled here as part of the "22 Omitted States" -since they were intentionally excluded from the benefits of this settlement, and receive nothing, while releasing every claim they have against the Defendants:

---

[1] Laura Townsend Fortman and John Finn do not wish to disclose their home addresses in a publicly-filed document. Their home addresses are available through their attorneys of record.

**Omitted States:**

> Alabama, Arkansas, Colorado, Connecticut, Delaware, Georgia,
> Idaho, Kentucky, Louisiana, Massachusetts, Missouri, Montana,
> New Hampshire, New Jersey, Ohio, Pennsylvania, Rhode Island,
> South Carolina, Texas, Utah, Virginia, and Wyoming

Indeed, Class Counsel makes no secret of the fact that they only filed suit on behalf of 21 states and the District of Columbia, making such claims the basis for their fee petition (Doc # 4071, p. 9). More troublesome, is the failure to provide any explanation for why it was decided to ignore roughly half of the United States in this class action litigation for over eight (8) years and manage to call it a success. Suits were filed in a variety of federal courts beginning in November of 2007, and no fewer than four (4) amended complaints between March 16, 2009 and January 12, 2013 "asserting claims under the laws of 22 states." (Doc # 4071, p. 11). In the 4th Amended Complaint, Lead Counsel appears to give lip service to the concept of filing the class action on behalf of everyone in the United States, through the 31 named plaintiffs but the class definitions are different, and work to exclude rather than incorporate the 22 omitted states (Doc # 1526, p. 4, par. 1;  p. 59, par. 243-245).

The only relief or benefit that was contemplated by Lead Counsel in the 4th Amended Complaint for the 22 omitted states was a claim for "injunctive relief" ("Plaintiffs and the Nationwide Class seek the issuance of an injunction against Defendants, preventing and restraining the violations alleged herein.") (Doc # 1526, p. 64, par. 256). The Second Claim was for damages under various state laws concerning restraint of trade on behalf of the named plaintiffs identified in the 4th Amended Complaint- but 22 states were omitted here (Doc #1526, p.64- 84, par. 257-278). Why not add a claim for Missouri?  Alabama? Ohio?  Why were 22 states simply ignored by Lead Counsel in the 8 year quest to prosecute this action?  It appears that Lead Counsel either did not understand that other states had consumer protection statutes, or did not understand that they could seek monetary relief for these states as well. That is unlikely, given

the involvement of 50 law firms.  The only reason to omit 22 states is because it increased the payment of attorneys' fees to class counsel.

The Declaration of Robert J. Bonsignore, one of the many attorneys sharing fees with Lead Counsel, who sheds light on this important issue as recently as September 23, 2015. According to Class Counsel, claims were contemplated for Missouri, and New Hampshire, according to Mr. Bonsignore (Doc #4072, p. 3, par. 4).  These states "had a right to recover" but nothing was done on their behalf. *Id.*  States like Missouri were ignored for eight years, and instead their claims were thrown away when it was time to settle with Defendants.  The only time it was ever contemplated to include any omitted states, it was by addressing it in the Fee Declaration of Zelle Hoffman, where class counsel wants compensation for a variety of issues related to "work on preparing a complaint on behalf of Massachusetts class members". (Michelletti Declaration, Doc. # 4073-3, p. 9-10, par. 18).

This is also demonstrated by the Fourth Claim for Relief, "Unjust Enrichment and Disgorgement of Profits" that was filed on behalf of only those class members in the states of Arizona, California, District of Columbia, Iowa, Maine, Michigan, New Mexico and South Dakota (Doc # 1526, p. 96, par. 291).  These petitions were all crafted and designed to disenfranchise the 22 Omitted States, in anticipation of the collection of a larger fee award as a consequence and to provide further incentive for settlement by ignoring the claims of those states so that their class members would be without a legal remedy.

However, when such issues are discussed before this Court, Lead Counsel gives a beefed-up title to this group of consumers who not only get zero dollars, but now are without a legal remedy, and are called "Nationwide Class", as noted in the Detailed Notice, which gives the illusion that these class members actually receive some benefit from this settlement:

> Nationwide Class:
> The Nationwide Class includes any person or business that, during

> the period from March 1, 1995 and November 25, 2007, indirectly
> purchased in the United States (excluding Illinois, Oregon and
> Washington) for their own use and not for resale, a CRT Product
> manufactured or sold by any of the Defendants or their co-
> conspirators (listed in Question 6).

(Detailed Notice).  This gives a reader the impression they will actually receive something from this settlement- never mind that the Detailed Notice was never disseminated to the members of the 22 omitted states, since they were only included to "gin up" the attorney's fees paid out by Defendants, in exchange for releasing their claims for nothing.  It is only when a class member reads the section on "How to Get a Payment" in the Detailed Notice that it is clear that only members of the Statewide Damages Classes receive recovery under this $ 576 Million Settlement Fund.

Was it ever contemplated by Lead Counsel that the 22 omitted states would receive any of the benefits of this settlement?  No. Even the Motion filed recently in support of fees admits that Lead Counsel always knew that the "Nationwide Class" would get nothing, citing that "By the time this litigation began in 2007, cathode ray tubes as a display technology were almost obsolete in the United States and throughout the Western world. The vast majority of the Defendants were no longer active in the CRT business and had either spun off or sold their CRT business, entered bankruptcy, or simply closed down their factories and stopped selling CRTs. In fact, several major participants in the CRT conspiracy (including the largest CRT manufacturer in the world) were bankrupt or no longer existed." (Doc #4071, p. 24)  The recovery for the 22 Omitted States was never designed to be anything other than a bad joke: providing the "Nationwide Class" with injunctive relief by protecting them from Defendants who were no longer manufacturing and selling the outdated technology.

Zelle, assisting Lead Counsel and acting in concert with him, make additional self-laudatory claims, such as they "exploited their extensive experience" in cases that were

---

remarkably similar in nature where they served as lead or co-lead counsel concerning indirect

purchaser classes such as LCD, SRAM and Microsoft (Doc # 4073-3, p. 13, par. 26).

Such commentary only highlights the egregious nature of Zelle's insatiable desire for

payment in this case in exchange for selling out the class members in the omitted states. LCD,

SRAM and Microsoft involved class members from the entire United States receiving recovery.  It

is ironic that the cases which Zelle directs this Court to review to justify their fees and competence

at settling these matters is gutted by the fact that they were fully resolved for members of each and

every state.  Although Objectors acknowledge limitations with the type and variety of claims that

can be filed in certain states concerning indirect purchaser actions, it does not excuse Lead

Counsel's complete abandonment of 22 states where claims could have been raised either with the

assistance of the States' attorney generals, and/or through making claims under various consumer

protection statutes.

Here, "plaintiffs in a class action may release claims that were or could have been pled <u>in</u>

<u>exchange for settlement relief.</u>" *Wal-Mart Stores, Inc., v. Visa U.S.A., Inc., 396 F.3d 96, 106 (2nd*

*Cir. 2005)* (emphasis added).  The problem is the only people receiving "settlement relief" are

those members hailing from the Statewide Damages Classes (or having purchased a CRT product

in one of those states).  All the remaining class members consisting of those within the 22 Omitted

States get absolutely nothing. Rule 23(e) provides that "trial judges bear the important

responsibility of protecting absent class members," and must be "assured that the settlement

represents adequate compensation for the release of the class claims." *Sullivan v. DB Invs., Inc.,*

*667 F.3d 273, 319 (3rd Cir., 2010).* Here, the parties wish for this Court to approve settlement that

does not compensate approximately half of the United States, but destroys their respective rights

to relief and claims against Defendants.  A release of claims without consideration results in a

settlement that is not fair, reasonable or adequate, and is a settlement that a trial court cannot

approve. _Reynolds v. Beneficial Natl. Bank, et al.,_ 288 F.3d 277, 282-284 (7th Cir., 2002).

These are the standards that should exist in the 9th Circuit as well.

The categorical failure of Lead Counsel protect the interests of the members of the 22 Omitted States is ultimately fatal to his claim for fees, and he must step down.  As discussed next, unidentified class members cannot waive a potential conflict of interest. _Cal Pak Delivery, Inc., v. United Parcel Service, Inc.,_ 60 Cal. Rptr.2d 207, 213 (Cal. App. 1 Dist., 1997).

**II.     The Settlement cannot be approved by this Court due to the Conflict of Interest that exists between Lead Counsel and the  Nationwide Class ("22 Omitted States") and the named class representatives of the Statewide Damages Class.**

The categorical, and repeated failure of Lead Counsel to ensure that the Nationwide Class ("22 Omitted States") were adequately represented at all times is fatal to the ultimate approval of this settlement.  In a class action it is fundamental that "The Due Process Clause... requires that the named plaintiff at all times adequately represent the interests of the absent class members." _Hess v. Sprint Corp.,_ 598 F.3d 581, 590 (9th Cir. 2010); _Hanlon v.Chrysler Corp.,_ 150 F.3d 1011,1020 (9th Cir. 1998) ("To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them."); _Brown v. Ticor Title Ins. Co.,_ 982 F.2d 386, 390 (9th Cir. 1992) ("[I]f the plaintiff was not adequately represented in the prior action, or there was a denial of due process, then the prior decision has no preclusive effect.)  Here, it is unchallenged that none of the named plaintiffs in this suit currently are, or ever were, protecting the interests of the class members residing in the 22 omitted states, or the "Nationwide Class".

Class representation is inadequate if the named plaintiff fails to prosecute the action vigorously on behalf of the entire class or has an insurmountable conflict of interest with other class members. _Hess v. Sprint Corp.,_ 598 F.3d 581, 590 (9th Cir. 2010); _Hanlon v.Chrysler Corp.,_

*150 F.3d 1011,1020 (9th Cir. 1998).* Conflicts of interest may arise when one group within a larger class possesses a claim that is neither typical of the rest of the class nor shared by the class representative. *Hess,* 598 F.3d at 590, *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625-27, 117 S.Ct. 2231, 138 L.ED.2d 689 (1997).  Again, it is unchallenged and cannot be contested that no one has vigorously prosecuted this action on behalf of the 22 Omitted States. Furthermore, members of the 22 Omitted States possess claims for disgorgement and restitution that are not shared with the class representatives of the State Damage Claims.  The Supreme Court mandates that Class Counsel must show that "'the representative parties will fairly and adequately protect the interests of the class.'" *In re Pet Food Products Liab. Litig.,* 629 F.3d 333, 341 (3*rd* Cir., 2010). Lead Counsel's previous failure to identify and appoint class representatives during the last 8 years for the 22 Omitted States is fatal to the parties' settlement proposal before this Court.  This can be noted at all stages of this litigation, up to and including the Motion for Certification and pleadings filed in support thereon (Doc # 1388, p. 1-4, filed 10.01.12).

What is particularly troubling is that it is clear from documents filed with this Court that Class Counsel was aware of potential claims which could have been brought on behalf of residents of some of the Omitted States including the State of Missouri.  Robert J. Bonsignore, one of plaintiffs' attorneys, filed a declaration in which he stated:  "[d]uring the litigation I advised Lead Counsel of several states that I believed had the right to recover but were not included in this action, including New Hampshire and Missouri.  I was asked by lead counsel to research the law and did so."  ( Doc # 4072, ¶ 4).  Mr. Bonsignore understood that residents from at least some of the Omitted States could bring actions under their consumer protection statutes which would potentially entitle them to monetary recovery.  For example, claims could have been brought on behalf of a Missouri class under the Missouri Merchandising Practices Act, 407.020, R.S.Mo., *et seq.,* for the conduct set forth in Plaintiffs Complaint.   However, for whatever reason, Lead

Counsel chose to abandon any such claims. As a result, the statute of limitations on those claims has expired.

There is also nothing to indicate that Lead Counsel ever approached the attorneys general in the Omitted States to explore the possibility of claims on behalf of the citizens of the Omitted States under *parens patriae* doctrine. In fact, the only evidence concerning such interaction indicates that some dispute existed between Lead Counsel and the California attorney general who was proceeding with a claim on behalf of California citizens. The utter failure of Lead Counsel to do anything to protect the claims of those residing in the Omitted States is appalling.

The exacting standards in the 9th Circuit are that ""We review the district court's determination regarding adequacy of representation for an abuse of discretion." *Molski, et al., v. Gleich*, 307 F.3d 1155, 1175 (9th Cir., 2002); *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1464 (9th Cir. 1995). Here, "Adequate representation" depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive."" *Molski*, 307 F.3d 1175; *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994); accord *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234,1239 (C.A.9 (Cal.), 1998). Adequacy is measured by both class counsels' conduct and that of the class representatives. *Id.* It appears that Lead Counsel is unqualified, given his conduct in that he has ignored the interests of the 22 Omitted States during the course of this litigation, and paying them only lip service by establishing such states and their class members as a "Nationwide Class" when convenient to promote the interests of settling with the various Lead Counsel must step aside, and new counsel must be appointed if there is any hope of this settlement being approved in the future, with recovery provided to all the states.

Objectors do not advocate simply dismissing all 50 firms from representation in this case. That would be a colossal mistake. In the 9th Circuit there is room for the transition of the Lead Counsel away from the conflict, to allow other persons to take over:

> there is no per se rule that the continued participation by previous class counsel, whose conflict of interest led the district court previously to deny class certification, constitutes inadequate representation under Rule 23(a). The addition of new and impartial counsel can cure a conflict of interest even where previous counsel continues to be involved in the case. In fact, the continued involvement of previous counsel can be highly beneficial to the class.

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1240 (C.A.9 (Cal.). 1998), citing *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992). Here, an option for the Court to exercise to cure this conflict, short of destroying 8 years of progress toward a resolution with the Defendants in these cases, involves appointing new Lead Counsel who will zealously represent, and advocate for not only the State Damages Class, but also the Nationwide Class, or more accurately referred to herein as the 22 Omitted States. On December 12, 2014, Special Master Vaughn R Walker proposed that "Francis O Scarpulla and Josef D Cooper be designated as co-lead counsel for the IPPs to work with IPP's lead counsel as a committee for the purpose of assisting in the coordination of this litigation . . ." (Doc # 3200, p. 6 "Special Master's Report and Recommendation RE Settlement").

The *Linney* Court gives additional guidance on this subject, and explains why the appointment of another attorney would nullify, or cancel the conflict created:

> The addition of another class representative, together with his or her own counsel, circumvents any potential conflict. The addition of an impartial attorney ensures that vigorous prosecution of the class claims will continue.... Further, this course of action protects the class, which certainly would be prejudiced if compelled to retain new counsel, unfamiliar with the pending litigation....

Linney, 151 F.3d at 1240. If the Lead Counsel agreed to step aside and allow another suitable candidate to take over the case, this would "circumvent any potential conflict", along with allowing additional class representatives to be appointed for the 22 Omitted States, which would be suitable to protecting the class in accordance with the standards in <u>*Linney*</u>.  New Lead Counsel would then pursue the interests of all class members, including those of the 22 Omitted States.

If Lead Counsel insists on pursuing this case and ignoring the recommendations contained within this Objection, then this Court has no alternative then to deny settlement.  An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class. *Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir.1998)*.  The adequacy requirement is paramount, and applies to both the named plaintiff(s) and counsel. <u>*Amchem Prods., Inc. v. Windsor*</u>*, 521 U.S. 591, 626 (1997)*.  A primary purpose of the adequacy inquiry is to "uncover conflicts of interest between named parties and the class they seek to represent." <u>*Id.*</u> *at 625-626*. The adequate representation requirement "is typically construed to foreclose the class action where there is a conflict of interest between the named plaintiff and the members of the putative class." <u>*Gen. Tel. Co. of the Northwest, Inc. v. EEOC*</u>*, 446 U.S. 318, 331, 100 S.Ct. 1698, 1707 (1980);* <u>*Prado-Steiman ex rel. v. Bush*</u>*, 221 F.3d 1266, 1279 (11th Cir. 2000)* (noting that the "incentives" of the class representative must "align with those of absent class members so as to assure that the absentees' interests will be fairly represented").  Of course, Lead Counsel may argue that the lead plaintiffs identified in this case owe nothing to the putative class members from the 22 Omitted States- and that is exactly the point.  No one is looking out for the interests of class members residing in the 22 Omitted States.

The named plaintiffs must adequately represent the interests of the class, acting as fiduciaries on behalf of the class, without any conflicts with class interests. <u>*Williams v. L.A.*</u>

*Fitness Int'l, LLC, B225622, Dist. Div. 8, (Cal. App., 2011)*, citing *LaSala v. American Sav. & Loan Assn., 5 Cal. 3d 864 (1971).* What of the interests of the Nationwide Class? It cannot be disputed that the named plaintiffs from the Statewide Damages Class have a conflict with those putative class members from the 22 Omitted States who are destined to receive absolutely nothing from this proposed settlement, while giving up certain rights.

In California, Class Counsel has a duty of loyalty to all the clients in this litigation. *Rotenberg v. Brain Research Labs, LLC* Super. Ct. No. 30-2010-00401652, 4th App. Dist. Div. 3 (Cal. App., 2011). In the 9th Circuit, "The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Rodriguez v. West Publishing Corp., 563 F.3d 948, 967 (9th Cir., 2009);* citing *Kayes v. Pac. Lumber Co., 51 F.3d 1449, 1465 (9th Cir. 1995) (quoting Sullivan v. Chase Inv. Servs. Of Boston, Inc., 79 F.R.D. 246, 258 (N.D. Cal. 1978).* Given the demonstrated abandonment of any interest in the 22 Omitted States during the course of 8 years of litigation by failing to raise any of the claims for damages for which each of those respective states could raise, combined with using the 22 Omitted States only as a bargaining chip to settle with the Defendants is can lead only to the conclusion that Lead Counsel had a conflict of interest.

The Settlement Agreements entered into with these Defendants implicates California ethics rules that prohibit representation of clients with conflicting interests. *See Image Tech. Serv., Inc. v. Eastman Kodak Co., 136 F.3d 1354, 1358 (9th Cir.1998)* (noting that "[s]imultaneous representation of clients with conflicting interests (and without informed written consent) is an automatic ethics violation in California") and is grounds for disqualification. *Flatt v. Superior Court, 9 Cal.4th 275, 36 Cal.Rptr.2d 537, 885 P.2d 950, 955 (1994); accord Rodriguez v. West Publishing Corp., 563 F.3d 948, 967 (9th Cir., 2009).* All the claims of the indirect purchaser class are released, even those of the 22 Omitted States whose class members receive nothing from these

settlements.  An attorney "cannot recover fees for such conflicting representation." <u>Id.</u>  In the 9th

Circuit, "Class Counsel's fiduciary duty is to the class as a whole and it includes reporting

potential conflict issues." <u>*Rodriguez, 563 F.3d at 967.*</u>  Not only must Lead Counsel step down,

but he faces the reality that he cannot recover attorney's fees for his representation of the 22

Omitted States and the Statewide Damages Class.

      The general rule in California courts is that "where an attorney violates his or her ethical

duties to the client, the attorney is not entitled to a fee for his or her services. <u>*Cal Pak Delivery,*</u>

<u>*Inc.,*</u> *60 Cal. Rptr2d at 215;* <u>*Goldstein v. Lees*</u>*, 46 Cal. App. 3d 614 (1975);* <u>*Asbestos Claims*</u>

<u>*Facility v. Berry & Berry*</u>*, 219 Cal. App.3d 9, 26-27.*  A trial court finds no reasonable value of

attorneys' services because conflict of interest renders the services valueless. <u>*Day v. Rosenthal*</u>*,*

*170 Cal. App.3d 1125, 1162 (1985).*  Lead Counsel must forfeit his attorney's fees.

      Class counsel has a fiduciary duty to the class as a whole "and it includes reporting

potential conflict issues" to the district court. <u>*Radcliffe v. Experian Information Solutions Inc.*</u>*, 715*

*F.3d 1157, 1168 (9th Cir. 2013); Rodriguez I, 563 F.3d at 948;see also id. at 968* ("The

responsibility of class counsel to absent class members whose control over their attorneys is

limited does not permit even the appearance of divided loyalties of counsel." (quoting <u>Kayes v.</u>

<u>Pac. Lumber Co.</u>, 51 F.3d 1449, 1465 (9th Cir. 1995). Under the district court's local rules,

California law governs whether an ethical violation has occurred. <u>*Radcliffe*</u>*, 715 F.3d at 1168. See*

*C.D. Cal. R. 83–3.1.2; see also Rodriguez II, 688 F.3d at 656.*California Rule of Professional

Conduct 3–310(C) prohibits the representation of clients with actual or potential conflicts of

interest absent an express waiver. *See* <u>*Rodriguez II,*</u> *688 F.3d at 656–57* (collecting California

cases); See also <u>*Image Tech. Serv., Inc. v. Eastman Kodak Co.,*</u> *136 F.3d 1354, 1358 (9th Cir.*

*1998)* ) (noting that "[s]imultaneous representation of clients with conflicting interests (and

without informed written consent) is an automatic ethics violation in California"); <u>*Radcliffe,*</u> *715*

*F.3d at 1168; <u>Flatt v. Superior Court</u>, 9 Cal.4th 275, 36 Cal. Rptr.2d 537, 885 P.2d 950, 955 (1994).*  Not only did Lead Counsel fail to report the conflict of interest between the 22 Omitted States and the State Damages Class, he instead exploited that conflict by negotiating away the claims of the 22 Omitted States in exchange for payment to the Statewide Damages Classes and a hefty sum for attorneys' fees.

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has indicated that "the proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"   *In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000).*  Clearly, the named plaintiffs in this case and Lead Counsel have a conflict of interest with the putative members of the 22 Omitted States, as discussed above.  This settlement cannot be approved under these current conditions.

In order for this settlement to have any chance of this Court's approval, Lead Counsel must step down and new lead counsel must be appointed by this Court who must vigorously represent all class members, and negotiate a deal that benefits not only the Statewide Damages Classes but also the 22 Omitted States.

### III.  Class Counsels' Fee request is excessive.

"The district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328-1329 (9th Cir. 1999).  The district court must ensure that the fee award is fair and reasonable.  *Staton v. Boeing Co., 327 F.3d 938, 963-964 (9th Cir. 1999).*  Class Counsel is seeking a fee of one-third of the common fund, or $192,250,000.00.  Class Counsels position is that the

benchmark in this circuit is 25% of the common fund and that they are entitled to an enhancement. However, even if the 25% benchmark is applicable, there should be no enhancement as Lead Counsel has completely failed to provide any benefit to half of the class he purports to represent.

Relatively recent decisions in the Ninth Circuit indicate that the 25% benchmark may not be appropriate in megafund cases such as this. "Thus, for example, where awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead. " *In re Bluetooth Headset Product Liability Lit.*, 654 F.3d 935, 942-943 (9th Cir. 2011).  In this case, based upon the lack of any recovery on behalf of the Omitted States, awarding Class Counsel one-third of the common fund would be a windfall and would reward Class Counsel for abandoning the claims of millions of consumers.

The Ninth Circuit decision in *Washington Public Power Supply Litigation,* 19 F.3d 1291 (9th Cir. 1994) is instructive.  In that case, the court was called upon to consider a fee request representing 13.6% of a common fund of $687 million.  The court stated: "We agree with the district court that there is no necessary correlation between any percentage and a reasonable fee. With a fund this large, picking a percentage without reference to all circumstances, including the size of the fund, would be like picking a number out of the air. *Id.* at 1297.  "Because a court must consider the fund's size in light of the circumstances of the particular case, we agree with the district court that the 25 percent 'benchmark' is of little assistance in a case such as this." *Id.*  The court went even further and considered, as an example, what a reasonable fee award would be if the size of the common fund was doubled.  The court stated:  "Plainly a fee of $200 million for the same effort by counsel with the same level of skill would be a windfall rather than a reasonable fee. **In sum, the district court was correct that there is nothing inherently reasonable about an award of 13.6 percent of a fund regardless of its size."** *Id.* at 942.  (emphasis added).

Likewise, there is nothing inherently reasonable about utilizing a 25 percent benchmark in this mega-fund case.

Class Counsel relies in part on the decision of the court in *Allapattah Services v. Exxon Corp.*, 454 F.Supp. 2d 1185 (S.D. Fla. 2006), to justify the fee in this case. The reliance by Class Counsel on the *Allapattah* decision and its applicability to the facts in this case defy logic. If anything, *Allapattah* should stand as the authority for reducing the benchmark in this case well below 25%. The class in *Allapattah* recovered 100% of its loss as opposed to just a portion of the class receiving anything in this case. Secondly, the nature of the litigation in *Allapattah*, was not even remotely similar. The *Allapattah* case lasted longer, involved two trials and an appeal to the United States Supreme Court. Those are not insignificant facts when determining the applicability of the reasoning of the court in *Allapattah* to this case. If anything, *Allapattah* would indicate that the benchmark used in this case should be reduced by 50% to account for the fact that the litigation was not as involved and half of the class is receiving nothing. Under that scenario, the benchmark would be half of 33.33%, or 16.67%. Appellants submit that such a reduced percentage would be much more palatable and in accordance with Ninth Circuit jurisprudence. If this Court considers a 25% benchmark, then there should be no enhancement beyond such a percentage as Class Counsel has failed to provide any relief for residents in the Omitted States.

## Conclusion

WHEREFORE, for the foregoing reasons, Class Members John Finn and Laura Townsend Fortman object to the proposed settlement and request that the Court not approve the settlement.

1

2

3                                          Respectfully submitted,

4

5                                            /s/ Steve A. Miller
                                           Steve A. Miller (SBN 171815)
6                                          Steve A. Miller, PC
                                           1625 Larimer Street, No. 2905
7                                          Denver, CO 80202
                                           Ph# 303-892-9933
8                                          Fax: 303-892-8925
                                           Email: sampc01@gmail.com
9

10                                         Jonathan E. Fortman (40319MO)
                                           Law Office of Jonathan E. Fortman, LLC
11                                         250 St. Catherine Street
                                           Florissant, MO 63031
12                                         Ph# (314) 522-2312
                                           Fax:  (314) 524-1519
13                                         Email:  jef@fortmanlaw.com

14

15                                         John C. Kress
16                                         The Kress Law Firm, LLC
                                           4247 S. Grand Blvd
17                                         St. Louis, MO  63111
                                           Ph.#:  (314) 631-3883
18                                         Fax:  (314) 332-1534
                                           Email:  jckress@thekresslawfirm.com
19

20                                         Attorneys for Objectors John Finn and Laura
                                           Townsend Fortman
21

22                              **CERTIFICATE OF SERVICE**

23

24          I hereby certify that a true and accurate copy of the foregoing has been served upon all
    parties via the Court's ECF system this 8th day of October, 2015.

25

26
                                             /s/ Steve A. Miller
27                                         Steve A. Miller

28

---

Objection to Court Approval of Settlement Agreements          Case No. CV-07-5944-SC; MDL No. 1917

Comes now John Finn and declares that he is a member of the Class as defined in the Preliminary Approval Order in that he has purchased at least one television containing a Cathode Ray Tube and at least one computer monitor containing a Cathode Ray Tube during the class period.  For the foregoing reasons, I object to the proposed settlement.

_____

John Finn

Dated:  October 8, 2015

Comes now Laura Townsend Fortman and declares that she is a member of the Class as defined in the Preliminary Approval Order in that she has purchased at least one television containing a Cathode Ray Tube and at least one computer monitor containing a Cathode Ray Tube during the class period.  For the foregoing reasons, I object to the proposed settlement.

Laura Townsend Fortman

Dated:  October 8, 2015