Paul B. Justi (SBN 124727)
LAW OFFICES OF PAUL B. JUSTI
1981 North Broadway, Suite 250
Walnut Creek, CA 94596
Telephone: 925.256.7900
Facsimile: 925.256.9204
Email: pbjusti@comcast.net

Attorney for Class Member and Objector
DAN L. WILLIAMS & CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re:

CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION

Case No.: 3:07-cv-05944-SC

MDL No.: 1917

**OBJECTIONS TO PROPOSED CLASS ACTION SETTLEMENT AND TO ATTORNEY'S FEE AWARD**

This Document Relates to: All Indirect Purchaser Plaintiffs

Hearing Date: November 13, 2015
Time: 10:00 a.m.
Courtroom: One, 17th Floor
Judge: Hon. Samuel Conti

Class member Dan L. Williams & Co. ("Objector"), objects to the settlement proposed in this class action.

OVERVIEW OF OBJECTIONS

1.  The Objector, Dan L. Williams & Co. ("DanCo") is a class member, residing at 4834 Metropolitan Avenue, Kansas City, KS, 66106. DanCo purchased one cathode ray tube computer monitor during the period March 1, 1995 to November 25, 2007.

OBJS. TO PROP'D SETTLEMENT/DAN L. WILLIAMS & CO. - 1

2.  The claim form for this Objector is attached as Exhibit A.

3.  *First*, the amount of attorneys' fees that private counsel for the plaintiff class ("Class Counsel") is seeking from the class fund of approximately $576.75 million is excessive. Class counsel is seeking 33.3% of the total settlement fund ($192.25 million) as attorneys' fees, plus $3,174,647.55 million in expenses, as compared to what they have represented to the court to be billings among a number of firms totaling approximately $83,753,999 in attorneys' fees. A portion of the difference between those figures should be available as compensation to the plaintiff class of consumers eligible to participate in the settlement, rather than as distribution to their attorneys, well in excess of their claimed lodestar. In this circumstance, the Court should apply the "megafund" attorneys' fees principle that is applied by other federal circuit courts, which would reduce the benchmark percentage that class attorneys are permitted to claim against settlement funds in excess of $100,000,000 to a percentage below the percentage Class Counsel seek for this proposed Class Settlement, which is well beyond the 25% benchmark for a *non*-megafund case, and far beyond the pale for a megafund case like this one.

5.  Moreover, Class Counsel simply conclude that the lodestar multiplier of 2.3 is reasonable because that is the amount by which their purported bountiful quantity of hours would be multiplied to produce the same result as their proposed 33.3% (actually over 33.8 %) of the fund recovery. DE 4071 pp. 26-27. But this is not demonstrative of a functional cross-check. It simply assumes that the percentage they request is reasonable, rather than assuming the more logical conclusion that both the quantum of hours and the presumed fairness of a 33.3% recovery are unreasonable.

6. While Class Counsel may—in asserting that the benefit to the class is the full sum being paid by the defendants—argue that "[n]o cy pres distribution is contemplated," it is hard to imagine that all funds will be claimed, or that a pro-rata distribution of unclaimed funds will not result in a windfall—the result being that the supposedly uncontemplated will unavoidably occur. With regard to this issue, we respectfully acknowledge the Ninth Circuit's precedent in *Staton v. Boeing Co.*, 327 F.3d 938, 959–61 (9th Cir. 2003), that allows courts to credit *cy pres* monies, but urge for en banc and Supreme Court preservation purposes that the contrary rule in *Redman* is the more appropriate one.

7. Beyond this, we acknowledge the decisions in *Williams v. MGM–Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir.1997), *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir.1999); and *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007), that permit fee awards based on the total sum available to class members, rather than the sums actually claimed and received, but submit for en banc and Supreme Court preservation purposes that the contrary rule in *Redman v. Radioshack Corp.*, 768 F.3d 622, 629-31 (7th Cir. 2014) cert. denied nom. *Nicaj v. Shoe Carnival, Inc.*, 135 S. Ct. 1429 (2015) is the more appropriate one.

8. *Second*, the scope of the releases included in the Class Settlement appears overly broad because the releases state that the settling defendants will be released of, among other things, all claims:

> . . . arising out of or relating in any way to any act or omission of the Philips Releasees (or any of them) concerning the manufacture, supply, distribution, sale or pricing of CRT Products up to the date of execution of this Agreement, including but not limited to any conduct

> alleged, and causes of action asserted or that could have been alleged or asserted, in any class action complaints filed in the Action, including those arising under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, or trade practice law.

Philips Settlement Agreement §13 [Dkt. 3862-1]. This language is broad enough to release claims of claimants in states that are not even defined to be part of the class—including claimants who reside in states like Missouri, or those who purchased products in Missouri, but may reside in states included within the class definition, like DanCo. Missouri law provides consumer remedies for price-fixing to its citizens and others who were indirect purchasers of products in Missouri, such as the conduct alleged in this Litigation, and for which Missouri indirect purchaser claimants recovered in the parallel litigation in the same court. *See In re TFT-LCD (Flat Panel) Antitrust Litigation,* Case No. 3:07-MD-1827 SI (N.D. Cal. 2014).

9.  *Third,* the notice campaign preliminarily approved by the Court appears inadequate to inform all class members of the pendency of the settlement, and thus of their rights to make claims, opt out, or object to the settlement. The notice campaign thus does not appear to meet the federal standard of "the best practicable notice" pursuant to Federal Rule of Civil Procedure 23. Objector anticipates a claims rate so low as to require the appointment of an independent expert to analyze the results of the notice campaign. Therefore, Objector preserves this objection in anticipation of this low response rate to notification of the existence of this class.

## ARGUMENT

OBJECTION 1:
THE MEGA FUND CLASS ACTION PRINCIPLE SHOULD REDUCE THE PERCENTAGE OF THE FUND RECOVERY THAT WOULD OTHERWISE CONSTITUTE AN ABUSE OF DISCRETION AT THE PERCENTAGE OF THE FUND SOUGHT

In megafund class actions, the percentage of recovery should be inversely related to the size of the settlement fund, especially where the case settles before trial, and there is no appeal. This principle should be applied in this case as it generally is in other megafund cases. There is certainly no reason to deviate, where the fund is so great, from the 25% benchmark percentage of the fund awarded as fees in non-megafund cases. *In re Coordinated Pretrial Proceedings in Petrol. Prods Antitrust Lit.*, 109 F.3d 602, 607 (9th Cir. 1997) (citing *In re Washington Pub. Power Supply Sys. Sec. Lit.*, 19 F.3d 1291, 1294-95 n.2, 1295, 1297 (9th Cir.1994)) (*WPPSL*). ("A 25% benchmark might be reasonable in some cases, but arbitrary if the fund were extremely large."); *see also In re Bluetooth Headset Products Liability Lit.*, 654 F.3d 935, 942-43 (9th Cir. 2011) ("[W]here awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead.")

A majority trend exists that percentage of the fund awards in megafund cases (over $100 million) are awarded at a lesser percentage than non-mega common fund cases. Treatises have tracked and considered the award of fees to class counsel in common fund cases. 4 Newberg on Class Actions § 14.6 (4th ed.) ("Some courts utilize a lower percentage when common funds are very large, finding that a lower percentage sufficiently rewards class counsel in such 'mega-fund' cases."); Ann. Manual Complex Lit. §14.121 (2012 ed.) ("Accordingly, in 'mega-cases' in which large settlements or awards serve as the basis for calculating a percentage, courts have often found considerably lower percentages of recovery to be appropriate.")

Lead class counsel are well aware of this trend, given that their expert in another recent matter in this district (the LCD litigation), Brian Fitzpatrick, reviewed megafund fee awards (and super megafund fee awards) that demonstrated such awards have commonly been nowhere *near* 29.6% of the fund. In his "An Empirical Study of Class Action Settlements and their Fee Awards," he explained:

> fee percentages tended to drift lower at a fairly slow pace until a settlement of $100 million was reached, at which point the fee percentages plunged well below 20%, and by the time $500,000 million was reached, they plunged well below 15%, with most awards at that level under even 10%.

Fitzpatrick's study finding drastically *lower* percentage awards in megafund cases has been prominently utilized:

> According to one study, in cases involving common funds "from $500 million to $1 billion" in 2006 and 2007, "the mean and median awards were both 12.9%" of the fund. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F.Supp.2d at 1033 (citing Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical Legal Stud. 811, 839 (2010)).

*In re Black Farmers Discrimination Lit.*, 953 F.Supp.2d 82, 98 (D.C.D.C 2013) (July 11, 2013) (awarding 7.4 percent of the fund award constituting $90,835,000); *see also Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 1995) (antitrust megafund ($3.383 billion) class action in which lawyers who had "achieved extraordinary results" awarded 6.5% of the fund). The percentage of fees requested in the proposed settlement is thus too great and should be adjusted downward to an appropriate percentage.

In a case such as this, the reduction of the percentage fund recovered is particularly important because Class Counsel's fees derive from the fund and their fees directly reduce the amount of recovery to the class. Thus, unlike where the fee award is discrete, undetermined, and to be separately paid by the defendants subject to court approval, here the class suffers

directly from the award of a percentage of the fund that that would exceed that generally provided for in megafund cases as seen in the majority of jurisdictions.

To the extent that the Ninth Circuit has not yet formally followed the principle that would presumptively reduce the percentage of the fund recovered in a megafund case, it should adopt that approach here. Application of the megafund rule would be particularly wise in light of the fact that this multi-district matter could have been consolidated elsewhere; the class contains members from numerous other states territorially within the bounds of other federal circuits, where fees in megafund cases have been returned in percentages well below the 33.88% requested here by Class Counsel, let alone the 25% benchmark approved by the Ninth Circuit for smaller funds.

Moreover, the benchmark guideline of 25% recommended by the Ninth Circuit is well surpassed by the exorbitant recovery percentage requested. While that benchmark is not under guiding precedent, an established norm for megafund cases, nonetheless it too is exceeded by the largesse of Class Counsel's fee request. Indeed, even using their own advocacy as a guide, Class Counsel acknowledge that courts in the Northern District have recently awarded fees "ranging" from 28.6-33.3% of the common fund. The only percentage of the fund fee award identified as skying to 33.3% was for a $41,322,000 total fund, which is utterly dwarfed by the amount of the present fund. *See* DE 4071_IPP Motion for Award of Attorney's Fees, etc. at p. 9 n. 13, referencing *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 4:07-md-01819, Dkt. 1407 ¶A (N.D. Cal. Oct. 14, 2011). This provides more reason, not less, to apply a megafund reduction to this percentage of the fund recovery.

Rather than proving the validity of the percentage of the fund award proposed, this demonstrates that the presiding court should apply the reduced the percentage award of

attorneys' fees principle as has been done regularly in other federal circuits. This principle reduces the benchmark percentages that class attorneys are permitted to claim against settlement funds in excess of $100,000,000 to a percentage below the percentage class counsel are seeking in the Class Settlement. Objector believes that the attorney's fee award in this case should be calculated based on the majority rule that the percentage of a class fund awarded to counsel generally declines from the benchmark percentage in megafund cases like this—especially one that settled without any trial or any appeal.

### THE CLAIMED LODESTAR IS OF SUCH MAGNITUDE THAT IT WOULD REQUIRE A SIGNIFICANT AMOUNT OF TIME, DISCOVERY AND ANALYSIS TO JUSTIFY

The Objector also contends that the claimed $83,753,999.05 lodestar in this case should not be used to justify the fee award especially not without a genuine and sufficient opportunity to analyze that lodestar and conduct appropriate discovery. The s submit, however, that such an endeavor would be wasteful for a case of this size, and so the Court should apply the percentage-of-fund approach to determine the fees to be awarded here, but only do so cognizant of the declination in percentage appropriately awarded in a case where the settlement well exceeds $100,000,000. Otherwise, a more searching analysis of the reasonableness of the hours performed must be engaged in. Without such analysis, what is left is no more than a reverse-engineered result: a percentage of the fund has been identified by Class Counsel, and the multiplier for the loadstar has been calculated simply as a product of dividing the percentage of the fund proclaimed as reasonable by the hours submitted. This is not a meaningful approach to cross-checking the percentage of the fund that was preselected.

There is good reason to doubt the reasonableness of the claimed pre-trial lodestar of $83,753,999.05. By way of example, these reasons include:

a. The United States Department of Justice (DOJ) moved for a stay of all discovery in July, 2008, pending its criminal investigation into the CRT conspiracy. See DE 4071-01_Declaration of Mario N. Alioto ¶ 26. Discovery was stayed until almost two years later, March 12, 2010, for all document discovery, and the stay on deposition discovery lasted even a year longer, until March 1, 2011. (Id.) Thus, merits discovery was formally stayed between February 2008 and March 2010; that is, for over two years. In fact, deposition discovery was stayed as to defendants and their employees until March 11, 2011, just over three years from the initial stay. Moreover, according to Class Counsel, merits depositions did not commence until December 2012. Id. ¶ 47.

b. Indeed, without the need for any merits discovery, Class Counsel for plaintiffs reached one settlement in mid-2009. Id. ¶ 101. The next settlement was achieved in May, 2013, barely five months into merits discovery. ¶ 105.

c. While proclaiming their excellent result for those within the defined class, Class Counsel ignores deviations from practice such as that identified in our second Objection. Unlike a previous matter in this district, this class omitted at least some of those indirect purchasers who may have had claims for damages in states such as Missouri.

d. These exemplar arguments demonstrate that the lodestar proposed as reasonable by Class Counsel is not a reliable source on which to bolster a percentage-of –the-fund recovery approach that in a megafund situation well-exceeds the Ninth Circuit's 25% benchmark for lesser funds, here by asking for a 33.88% percentage fee on an almost $580 million fund. The lodestar should not be assumed reasonable

OBJS. TO PROP'D SETTLEMENT/DAN L. WILLIAMS & CO. - 9

based either upon the work performed relevant to the results achieved, or in relation to an inflated percentage of the fund recovery, or because *lead class counsel* have reviewed the time submitted and excluded some uncertain amount of it from their aggregate loadstar. It is, therefore, not an effectual cross-check on the percentage recovery demanded.

We acknowledge that to evaluate sufficiently the claimed $83,753,999.05 lodestar would require an enormous amount of time and effort; and, that the amount of time between class notice and the objection deadline is patently inadequate to do so. Indeed, to evaluate such a claimed lodestar would require a continuance of at least six months, so that all time records could be fully analyzed and all necessary discovery including depositions of counsel claiming significant time could be conducted. The law firms claiming the reasonableness of this lodestar should be ordered to produce all of their time records in searchable, electronic format, if the Court is to rely on that lodestar as a cross-check on the percentage of fund sought in this case. At a minimum, these records should be produced so that the Court can at least spot-check the time records and allow some depositions regarding the spot-check. Such an alternative approach would require much less time, albeit it would not be as robust as the primary approach proposed.

For the Court to rely on the claimed lodestar would deny due process unless there is a sufficient continuance for analysis and discovery. But, in order to avoid unnecessary waste and delay, class action-fee proceedings should not become major litigation in and of themselves. Given the stunning enormity of the pre-trial lodestar claimed by the proponents of the proposed class action settlement, any meaningful analysis of that claimed lodestar would require a tremendous and tremendously wasteful amount of ancillary litigation that most class members who object to the requested attorneys' fees lack the resources to afford. However, expense of

OBJS. TO PROP'D SETTLEMENT/DAN L. WILLIAMS & CO. - 10

review cannot insulate the claimed lodestar in this case from meaningful scrutiny *if* the Court is going to rely on that claimed lodestar to bolster the percentage-of-fund recovery demanded in excess of the percentage awarded in many other megafund cases, let alone the benchmark guidance established by the Ninth Circuit for lesser funds. We thus suggest that the fee request in a common fund case of this magnitude should be evaluated on a pure percentage-of-fund basis, and adjusted for the stage of the litigation when the case settled, the caliber of the representation, the risks of representation, the results obtained, and any other factor bearing on an appropriate percentage—specifically including the megafund rule.

Finally, we must add that the quality of Class Counsel's representation is tarnished by our point in Objection 2, below—the settlement agreement too broadly releases claims for those who purchased products in states not within the class—and that any determination of the appropriate fee award in this case should account for that shortcoming.

OBJECTION 2:
THE SETTLEMENT AGREEMENT TOO BROADLY RELEASES CLAIMS FOR THOSE WHO PURCHASED PRODUCTS IN STATES NOT WITHIN THE CLASS

As noted above, the Philips Settlement Agreement §13 [Dkt. 3862-1] broadly releases all claims, including those for claimants in states that are not even defined to be part of the class, including claimants who reside in states such as Missouri, or those who purchased products in Missouri, but may reside in states included within the class definition, such as this Objector. Any class member, such as this Objector, may under Rule 23(e)(5) protest the exclusion of these compensatory claims from the defined class.

Missouri law provides potent consumer remedies for price-fixing to its citizens and others who were indirect purchasers of products in Missouri. Missouri indirect purchaser claimants recovered for like claims in the parallel litigation in this Division. *See In re TFT-LCD (Flat*

*Panel) Antitrust Litigation,* Case No. 3:07-MD-1827 SI (N.D. Cal.). According to filings in that case from no less a source than the Attorney General of Missouri, that state's supreme court has authorized indirect purchasers to maintain private actions under Missouri's Merchandising Practices Act ("MMPA"). Mo. Rev. Stat. § 407.020 *et seq.* (Supp. 2010).

## OBJECTION 3:
### THE NOTICE CAMPAIGN WILL NOT IN ALL LIKELIHOOD CONSTITUTE THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES TO ABSENT CLASS MEMBERS

If the court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2)(B). *See also Silber v. Mabon,* 18 F.3d 1449, 1454 (9th Cir. 1994) (best notice practicable under the circumstances is the standard that applies to absent class members and consists of "what notice is reasonably certain to inform the absent members of the plaintiff class") (internal quote omitted). Rule 23(c)(2) governs both the form and content of a proposed notice.

The notice campaign preliminarily approved by the presiding court appears inadequate to inform all class members of the pendency of the settlement, and thus of their rights to make claims, opt out, or object to the settlement. Thus, the notice campaign does not appear to meet the federal standard of "the best practicable notice" pursuant to Federal Rule of Civil Procedure 23. Objector anticipates a claims rate so low as to require the appointment of an independent expert to analyze the results of the notice campaign.

Where notice to a class is inadequate because it results in a subpar response in claims, the court may reject the settlement or examine ways in which to find the best practicable notice that Rule 23 requires. *Kaufman v. American Express Travel Related Services, Inc.,* 283 F.R.D. 404,

OBJS. TO PROP'D SETTLEMENT/DAN L. WILLIAMS & CO. - 12

408 (N.D. Ill. 2012). In order to accomplish this obligation the court may appoint an expert in class notification, who will prepare a report on how best to undertake better notification efforts. *Id.*

Therefore, Objector preserves this objection and proposed procedure to remedy it, in anticipation of this low response rate to notification of the existence of this class.

ADOPTION OF OTHER OBJECTIONS

Objector hereby adopts and incorporates herein all other objections lodged with the Court with regard to the proposed settlement; to the extent such objections are not inconsistent with the objections raised herein.

Conclusion

The Court should not approve the settlement as proposed and should require that any final settlement remedy the shortcomings identified above. To the extent, if any, the Court relies in the lodestar that Class Counsel claim, the Court should allow sufficient discovery to ascertain and verify the true reasonable lodestar in this case; at a minimum, the Court should conduct a substantial spot-check of the time records submitted and allow sufficient verifying depositions.

Date: October 8, 2015

Respectfully Submitted,

LAW OFFICES OF PAUL B. JUSTI

By /s/ Paul B. Justi

Paul B. Justi

Attorneys for Class Member and Objector
DAN L. WILLIAMS & CO.

*I hereby object to the proposed settlement for the reasons stated above.*

OBJECTOR:

_____
Dan L. Williams

# Exhibit A

## In Re: Cathode Ray Tube (CRT) Antitrust Litigation (MDL No. 1917)
*(U.S. District Court for the Northern District of California)*

# CATHODE RAY TUBE (CRT) INDIRECT PURCHASER CONSUMER CLAIM FORM
## Deadline for Submission is December 7, 2015

### GENERAL INSTRUCTIONS

To get a payment from these settlements totaling $576.75 million, you must complete all four parts of the Claim Form. You may complete the Claim Form and submit it by mail to CRT Claims, c/o The Notice Company, P.O. Box 778, Hingham, MA 02043 OR you may submit your claim online, which is the easiest method, at www.CRTclaims.com.

It is expected that at least $25.00 will be paid to each eligible Class Member who submits a valid Claim Form. Your claim must be submitted online by, or mailed and postmarked by, **December 7, 2015**.

Consumers (individual or business) in 21 states and the District of Columbia who indirectly purchased Cathode Ray Tubes (CRT) Products are eligible to receive payment from the Settlements. CRT Products include CRTs and products containing CRTs, such as televisions and computer monitors. "Indirectly" means that you purchased the CRT Product from someone other than a Defendant or alleged co-conspirator; instead you purchased the CRT Product from a retail store, supplier, or some other seller.

**You must answer the Eligibility Questions below, by checking the appropriate boxes, to see if you are eligible. The Claim Form must be dated and signed by the Class Member (or, if deceased, by an estate representative).**

**Important Eligibility Note: Sony® branded televisions and monitors are NOT eligible to be included in this case. All other brands of CRT televisions and monitors are eligible.**

**THIRD-PARTY SUBMISSIONS: If you are submitting this Claim Form on behalf of someone else, you MUST complete the CLAIM SUPPLEMENT and send it along with the completed Claim Form.**

### PART 1: ELIGIBILITY QUESTIONS

1. **Did you purchase a CRT Product for your own use and not for resale in the following states:**

    a. Arizona, California, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, Wisconsin or the District of Columbia, between **March 1, 1995, and November 25, 2007?**

    [X] Yes [ ] No

    b. Hawaii between **June 25, 2002, and November 25, 2007?**

    [ ] Yes [X] No

    c. Nebraska between **July 20, 2002, and November 25, 2007?**

    [ ] Yes [X] No

    d. Nevada between **February 4, 1999, and November 25, 2007?**

    [ ] Yes [X] No

2. **Did you purchase a CRT Product from a retail store or someone other than a Defendant or an alleged co-conspirator?** For example, if you purchased a CRT television or computer monitor from a retailer like Best Buy or a computer manufacturer like Dell, then your answer should be "Yes." If you made no purchases from a retailer or other supplier and you only purchased a CRT television or computer monitor directly from a Defendant or an alleged co-conspirator, then your answer should be "No."

☒ Yes ☐ No

**You are eligible for payment only if you answered "Yes" for at least one state listed in Question 1 subparts (a), (b), (c) *or* (d), *AND* Question 2.** To get a payment you must submit your Claim Form online at **www.CRTclaims.com** or complete Parts 1, 2, 3 and 4 of this Claim Form and mail it to: CRT Claims, c/o The Notice Company, P.O. Box 778, Hingham, MA 02043.

If you have questions about your eligibility to participate or on how the Settlement Fund will be distributed, you should review the Class Notice and other documents at the website. You may also call 1-800-649-0963 if you have any questions.

## PART 2: PURCHASE INFORMATION

In order to make a valid claim, you must have purchased your CRT Product(s) in an eligible state during the specified time frames ("Claims Periods"). The Claims Period for the eligible states is between **March 1, 1995, and November 25, 2007**, except for purchases in Hawaii, Nebraska, and Nevada which have slightly shorter Claims Periods.

- Purchases in Hawaii must have been made between **June 25, 2002, and November 25, 2007**.
- Purchases in Nebraska must have been made between **July 20, 2002, and November 25, 2007**.
- Purchases in Nevada must have been made between **February 4, 1999, and November 25, 2007**.

Enter the total number of CRT Products you purchased between **March 1, 1995, and November 25, 2007** *(see modified class period dates above for purchases made in Hawaii, Nebraska, or Nevada)*. **Only include qualifying products for which you answered "Yes" to the Eligibility Questions in Part 1:**

Provide the total number of CRT Products purchased during the Claims Periods. For example, if you bought 3 computer monitors, write "3" in the corresponding space.

| Product Type | Number Purchased |
|---|---|
| Standard CRT Television (screen size less than 30 inches): | _____ purchased |
| Large CRT Television (screen size 30 inches or larger): | _____ purchased |
| CRT Computer Monitor: | 1 purchased |
| Other CRT Product(s) (please specify): _____ (Attach additional page(s) if necessary.) | _____ purchased |

**Important Notes:**
*All claims are subject to audit and large claims will require verification*
**Sony® branded televisions and monitors are NOT eligible to be included in this case**
***All claimants should keep any proof of purchase***

## PART 3: CLASS MEMBER INFORMATION

*Type or print neatly in blue or black ink.*

**Class Member's First Name**

**Class Member's Last Name**

**Suffix**

**Entity/Business Name of Class Member**
DAN L WILLIAMS & COMPANY, INC.

**Person to contact if there are questions regarding this claim:**
DAN L WILLIAMS

Specify one of the following – Class Member is:

☐ Individual  ☒ Business (1-10 Employees)  ☐ Business (11-50 Employees)  ☐ Business (Greater than 50 Employees)

**Class Member's (or Estate Representative's) Mailing Address: Number and Street or P.O. Box**
4834 METROPOLITAN AVENUE

**City**: KANSAS CITY  **State**: KS  **Zip Code**: 66106

**Telephone Number (Day)**: (913) 334-1600  **Email Address**: DLWTAX@AOL.COM

**Individuals:** Provide the last 4 digits of your Social Security Number: XXX-XX-____
OR Provide Date of Birth (Month and Year): XX/____

**Businesses:** Provide your Federal Taxpayer Identification Number: 48-1078765
OR Provide Date of Formation or Incorporation:

## PART 4: SIGN AND DATE CLAIM FORM

I declare under penalty of perjury under the laws of the United States of America, that the information provided in this Claim Form is true and correct to the best of my knowledge and belief.

Signature of Class Member (or Estate Representative)

Date (MM/DD/YY): 10/06/15

Print Name: DAN L WILLIAMS

Title *(if you are filling out this form for a business)*: PRESIDENT

**Claims may be audited and any false or fraudulent claim is subject to prosecution.**

### REMINDER

Please make sure that you:
1. Complete all four parts of this Claim Form;
2. Sign and date the Claim Form;
3. Submit your Claim Form on or before **December 7, 2015**, online or by mail to:

www.CRTclaims.com  OR  CRT Claims
c/o The Notice Company
P.O. Box 778
Hingham, MA 02043

4. Keep a copy of the completed Claim Form for your records;
5. Retain any proof of purchase documentation you may have for CRT Products until your claim is closed. You will be notified if you are required to provide this documentation during the claim verification process.