Vaughn R Walker
Law Office of Vaughn R Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA  94111
Tel:  (415) 871-2888
Fax:  (415) 871-2890
vrw@judgewalker.com

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No 1917 |
| This Order Relates to: | Master Case No 3:07-cv-05944SC |
| CERTAIN DIRECT ACTION PLAINTIFFS' ACTIONS | **ORDER RE PLAINTIFFS' MOTIONS TO COMPEL SUPPLEMENTAL DISCOVERY FROM TOSHIBA AND PANASONIC** |

On August 21, 2015, the undersigned issued a report and recommendation that parties in this MDL should be permitted to continue discovery motions that had been initiated by other parties who subsequently settled.  ECF No 4015 at 5.  Noting that no objections were filed, the court approved that R&R on September 11, 2015.  ECF No 4054.

Two of the DAPs – Sharp and Best Buy – have taken up two motions filed by the IPPs before they settled.  The motions seek to compel Toshiba[1] and Panasonic[2] to respond to certain discovery (interrogatories and requests for production of documents).[3] The DAPs request adjudication of these two motions with respect to a subset of discovery requests that they contend remain "highly relevant in many of the DAPs' litigation":

- September 12 Motion ("9/12 Motion"):  Interrogatories 9, 13-14 and 16 (sales of CRT products into the United States); and

- September 19 Motion ("9/19 Motion"):  (1) Toshiba's responses to RPDs 62-63 re statements to antitrust authorities; (2) Panasonic's response to RPD 62 re statements to antitrust authorities; and (3) Toshiba's responses to interrogatories regarding ownership and control issues relevant to MT Picture Display Co, Ltd ("MTPD").[4]

---

[1] "Toshiba" includes:  Toshiba Corp, Toshiba America, Inc, Toshiba America Information Systems, Inc, Toshiba America Consumer Products, LLC, and Toshiba America Electronic Components, Inc.  *See* 9/12 Motion at 1.

[2] "Panasonic" includes:  Panasonic Corp, Panasonic Corp of North America and MT Picture Display Co, Ltd ("MTPD").  *See* 9/12 Motion at 1.

[3] The two motions at issue here are:  (1) the IPPs' 9/12/14 motion to compel Toshiba's responses to interrogatories (Nos 7, 9, 13-14 and 16 from the IPPs' First Set of Interrogatories to Defendants and Nos 1-14 from the IPPs' First Set of Interrogatories to Toshiba Defendants) ("9/12 Motion"); and (2) the IPPs' 9/19/14 motion to compel Toshiba's responses to interrogatories (Nos 7 from the IPPs' First Set of Interrogatories to Defendants and Nos 1-14 from the IPPs First Set of Interrogatories to Toshiba Defendants) and Toshiba and Panasonic's responses to the IPPs' requests for production of documents Nos 62 and 63 (statements to government agencies) ("9/19 Motion").

[4] 6/11/15 Notice re Motion to Compel Toshiba Defendants submitted by Liaison Counsel for Direct Action Plaintiffs at 3.

Toshiba and Panasonic object to the DAPs' request.  Both defendants assert grounds of mootness and lack of relevance.

## I.  THE MOTIONS ARE NOT MOOT

Toshiba contends that the court's October 22, 2014 approval of their stipulation with the IPPs, withdrawing their 9/12 and 9/19 motions (ECF No 3812 at 7-8), mooted these motions.  The express terms of the stipulation, however, undermine Toshiba's mootness contention.  The stipulation provides: "the Toshiba Defendants and the IPPs do not seek to withdraw any motions to the extent that they pertain to any other plaintiff or any other defendant."  ECF No 3812 at 3.  The order approving withdrawal thus expressly limits withdrawal of motions to Toshiba and the IPPs, not motions pertaining to any other plaintiff or any other defendant.

Moreover, the cases Toshiba cites for mootness are distinguishable.[5]  These cases do not involve coordinated discovery in complex multi-district litigation ("MDL") where many parties remain in the litigation having ongoing interests in discovery motions after the filing party has since settled.[6]  In that situation, the court retains jurisdiction over discovery and pre-trial matters for all cases in the MDL.  To the extent a discovery motion filed by one party (who then settles) remains relevant to other parties, the Discovery Protocol (ECF No 1128) makes it appropriate for the court to retain jurisdiction over that discovery motion notwithstanding the withdrawal of the filing party's interest in the motion.

---

[5] *See* Toshiba and Panasonic's 6/19/15 letter to the undersigned.

[6] *Independent Union of Flight Attendants v Pan American World Airways, Inc*, 966 F2d 457, 459 (9th Cir 1992) (party's withdrawal of its action rendered a pending appeal moot, where there was no present controversy as to which effective relief could be granted); *Webster v Reproductive Health Serv*, 492 US 490, 512 (1989) (withdrawal of certain claims rendered issue moot); *Earth Island Institute v Albright*, 147 F3d 1352, 1356 (Fed Cir 1998) (trial court lacked jurisdiction after party withdrew its motion to enforce judgment – no other parties remained); *Henry v National Housing Partnership*, 2008 WL 2766067, at *1 (ND Fla June 27, 2008).

The Discovery Protocol (ECF No 1128), requires parties to coordinate discovery and not file duplicative discovery.  The parties thus designate certain parties to take the lead on various discovery issues.  Due to the number of parties and complexity of issues, the parties in this litigation have had to rely on each other to advance various discovery efforts.  The benefit redounds to all parties on both sides of the litigation, by conserving the efforts required by plaintiffs and protecting defendants against unnecessary duplication of effort.  As a result, parties in addition to those involved in making or resisting discovery requests have an interest in resolution of motions made or resisted by other parties.  This includes the DAPs here who seek to pursue the 9/12 and 9/19 motions.  *See* ECF 4015 at 5 (specifically referring to the 9/12 and 9/19 motions).

To the extent the court might, contrary to the foregoing, find some ground that ECF No 3812 rendered these motions moot, the undersigned recommends granting the DAPs' request to assume responsibility for these motions and granting the DAPs an extension of time for filing their discovery motion.  That unnecessary step can (and should) however, be avoided by simply allowing the DAPs to step into the IPPs' shoes to pursue the present motions.  The DAPs acted promptly in asserting their interest in these motions, responding quickly to the undersigned's request of all parties to address the issue of coordinated discovery.  It should be noted that only a few parties sought to take over responsibility for discovery motions initiated by settling parties and no party objected to ECF No 4015.

Against Panasonic, the DAPs assert only Request for Production No 62 in their 9/19 Motion.  Like Toshiba, Panasonic advances a mootness argument, contending that "by stipulation with the Panasonic Defendants, the IPPs withdrew their September 12, 2014 motion, which was approved by the court on October 22, 2014 [ECF 2935]."  6/19/15 Toshiba and Panasonic letter to the undersigned at 1.  This is true enough but beside the point as it is the 9/19 motion that the DAPs seek to assert against Panasonic, not the 9/12 Motion.  Therefore, the 9/19 Motion against Panasonic remains to be addressed.

Panasonic also asserts that the DAPs waived their right to pursue discovery on foreign investigations into Panasonic's CRT business, an argument that appears meritorious and will be addressed below.

## II.  DEFENDANTS' OTHER CONTENTIONS

### A.  Interrogatories Nos 9, 13-14 and 16

The interrogatories at issue are as follows:

**INTERROGATORY NO. 9**:  For each year during the Class Period, state by year how many CRT Products (in both number of units and revenue in U.S. dollars) that You:  (a) billed to and shipped to the United States; (b) billed to an address in the United States, but shipped to a location outside of the United States; (c) shipped to an address in the United States, but billed to a location outside of the United States; and (d) shipped and billed to a location outside of the United States.

**INTERROGATORY NO. 13**:  For each year during the Class Period, state by year Your total worldwide dollar amount of sales of CRT Products, both in the aggregate and by the size and type of CRT Product.

**INTERROGATORY NO. 14**:  For each year during the Class Period, state by year Your total dollar amount of sales of CRT Products by the size and type of CRT Products sold and by country of destination.

**INTERROGATORY NO. 16**:  For each year during the Class Period, state by year Your dollar amount of sales of CRT Products in the United States, both in the aggregate and by the size and type of the CRT Product.[7]

--------------------------------------------------

[7] Defendants' Attachment 4a (Toshiba's Objections and Responses to IPPs' First Set of Interrogatories to Defendants) at 13-14, 17-19.

Toshiba responded to these interrogatories by:  (1) asserting objections to each of these interrogatories as unduly burdensome and seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; and (2) making references to Toshiba's responses to Request No 5 of Direct Purchaser Plaintiffs' First Set of Requests for Production of Documents, Request Nos 5, 9 and 22 of Direct Purchaser Plaintiffs' Second Set of Requests for Production of Documents, and Interrogatory No 11 of Direct Purchaser Plaintiffs' First Set of Interrogatories.  *Id*.

### 1.   **Relevance of Interrogatories Nos 9, 13-14 and 16**

Toshiba attacks the relevance of these interrogatories on the ground that they seek information regarding sales outside the United States which would not be relevant to the issues in this case.  Toshiba also contends that sales information outside the United States would not likely lead to admissible evidence and would involve an unreasonable burden. Toshiba's 9/26/14 Opposition at 3-4.

DAPs contend that Toshiba's actual global sales figures are necessary to the calculation of damages and are relevant in evaluating the domestic effects of a global conspiracy.  DAPs cite *United States v Hui Hsiung*, 758 F3d 1074, 1093 (9th Cir 2014), discussing the domestic effects exception to the Foreign Trade Antitrust Improvements Act ("FTAIA") in LCD price fixing claims under the Sherman Act, directed at foreign sales of panels that would be incorporated overseas into finished consumer products that would ultimately be sold in the United States.  DAPs contend that most CRT Products assembled in Mexico were shipped to and consumed in the United States and that a portion of CRTs that Toshiba sold abroad are "highly likely to have been incorporated into CRT Products" purchased in the United States.[8]

---

[8] Plaintiffs' 10/3/14 Reply at 5-6.

Toshiba's CRT sales outside the United States appear relevant to damages. Toshiba's sales of CRT Products outside the United States may well be relevant to the domestic effects exception to the FTAIA or lead to the discovery of evidence about such effects.[9]  The undersigned finds that Interrogatories 9, 13-14 and 16 seek information that is relevant to this case.

### 2.  Whether Interrogatories Nos 9, 13-14 and 16 are Duplicative

Toshiba also contends that it has adequately responded to these interrogatories and that in view of Toshiba's prior discovery responses, these interrogatories are "unreasonably duplicative of prior discovery propounded by other plaintiffs in this litigation" and seek "information readily obtainable from the various sales and cost transactional databases produced to plaintiffs years ago in response to prior discovery requests propounded on defendants." [10]

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  FRCP 26(b)(1).  Relevant information need not be admissible if it appears "reasonably calculated to lead to the discovery of admissible evidence." *Id.*  Courts must weigh the burden of the discovery sought against its likely benefits.  FRCP 26(b)(2)(C).  Factors courts consider are:  "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  *Id.*

Essentially, Toshiba contends that Interrogatories Nos 9, 13-14 and 16 are duplicative of prior document requests and that the burden should be placed on plaintiffs to

_____

[9] Sharp's complaint alleges a violation of the Sherman Act (Case No 3:13-cv-01173-SC, ECF No 1, filed 3/15/13) and thus the domestic effects exception and the FTAIA appear at issue.
[10] Toshiba's 9/26 Opposition at 3.

search through Toshiba's document production to ascertain the answers to their

interrogatories.[11]  The prior discovery requests cited in Toshiba's objections are the following:

**Interrogatory No 11:** [12]

Identify the CRT and/or CRT Products You sold, marketed, or distributed for each

month within the Relevant Time Period, including the brand name, product number, and

intended use.

**Request No 5**: [13]

Documents and electronic data sufficient to identify or set forth your annual,

monthly and quarterly sales of CRT or CRT Products directly purchased in the United States and

that were either shipped to, and/or billed to said purchaser from January 1, 1991 through the

present.

**Request No 5**: [14]

All Documents and electronic data relating to Your sales of CRT or CRT Products

during the period January 1, 1991 through the present, including, but not limited to:

    a)  customer names, customer billing addresses, and customer ship-to

        addresses;

    b)  sales terms;

    c)  sales dates and shipment dates;

    d)  product type, class, category, description, and respective use;

---

[11] Plaintiffs argue that Toshiba failed to object on duplicativeness grounds and therefore waived the objection.  The undersigned shall nevertheless assess Toshiba's duplicativeness objection.

[12] Defendants' Attachment 7k (Toshiba's Objections and Responses to Direct Purchaser Plaintiffs' First Set of Interrogatories).

[13] Defendants' Attachment 7a (Toshiba's Objections and Responses to Direct Purchaser Plaintiffs' First Set of Requests for Production of Documents at 9).

[14] Defendants' Attachment 7h (Toshiba's Objections and Responses to Direct Purchaser Plaintiffs' Second Set of Requests for Production of Documents) at 10, 14, 26.

e)  sales volumes, unit price information, gross price, and actual net prices;

f)  discounts, credits, and rebates;

g)  shipping charges and terms;

h)  any other related charges; and

i)  amounts paid, dates paid, invoice numbers, and purchase order numbers.  If such data are not kept, or have not been kept, in electronic form in the ordinary course of Your business or are otherwise not available in electronic form, please produce such data in hard copy.

**Request No 9**:

All Documents relating to contracts, offers or proposals for CRT or CRT Products sales during the period January 1, 1991 through the present.

**Request No 22**:

Documents sufficient to show the regions or territories in which each type, class, or category of CRT or CRT Products are sold in the United States.

The prior Interrogatory No 11 only requested brand names, product numbers and uses of CRTs, without requesting information about dollar amounts of sales. Therefore, Interrogatories Nos 9, 13-14 and 16, which all require dollar amounts of sales, are not duplicative of prior Interrogatory No 11.

The prior document requests do not appear to be duplicative of the contested interrogatories here. The closest would be Request No 5 (from DPPs' First Set of Requests for Production of Documents), which is similar to Interrogatory No 16, but not duplicative because Interrogatory No 16 more specifically requires the dollar amount of sales by the size and type of CRT Product and Request No 5 more specifically requires *direct purchases in the United States* that were either shipped to or billed to said purchaser during a specified period.  While it may well be that Interrogatory No 16 and Request No 5 from the DPPs' First Set of Requests may

ORDER RE PLAINTIFFS' MOTIONS TO COMPEL
SUPPLEMENTAL DISCOVERY FROM TOSHIBA AND PANASONIC                         PAGE 9 OF 18

overlap, Toshiba has failed to show that this interrogatory and these requests call for information that is coextensive.

The undersigned has reviewed Toshiba's responses to the prior discovery it cites and finds those responses to be largely uninformative.  Toshiba's response to prior Interrogatory No 11 comprises mostly objections and a single responsive statement that it exited the CRT industry on a certain date.  Toshiba's responses to the requests for production of documents discussed above also comprise objections and an assertion that it will produce documents within a certain scope.

Toshiba's prior document productions may contain the information that would enable the DAPs to divine the sales information they seek.  The undersigned has not been informed and does not know the volume of materials produced by Toshiba in response to prior discovery requests.  But the interrogatories at issue here are more specific than the prior document requests cited by Toshiba.  Hence, the undersigned finds that Interrogatories Nos 9, 13-14 and 16 of the IPPs' First Set of Interrogatories to Defendants are not duplicative of earlier discovery served on Toshiba.

Rule 33(b)(3) requires that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  A responding party has the option to produce business records pursuant to Rule 33(d), if the answer may be determined by examining business records and if the burden of ascertaining the answer will be substantially the same for either party, in which case the answer may "specify[ ] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."  Based on the submissions, it appears that Toshiba has neither provided a full and separate answer under oath under Rule 33(b) nor an adequate business records response under Rule 33 (d).  While it is appropriate in general to respond to an interrogatory with reference to prior discovery responses, under these circumstances, Toshiba's responses are insufficient because the prior responses are not

duplicative and hence not responsive and Toshiba has failed to specify which documents would be responsive under Rule 33(d).  *See Pacific Lumber Co v Nat'l Union Fire Ins Co of Pittsburgh*, 2005 WL 318811, at 5* (ND Cal 2005) (interrogatory response referring to another interrogatory and referring to a "mountain" of documents without specificity is improper); *see also McConnell v PacifiCorp, Inc,* 2008 WL 3843003, at *3-4 (ND Cal 2008) (requiring responding party to identify specific documents in response to an interrogatory).

### 3.   Whether Interrogatories Seeking Worldwide Sales Are Unreasonably Burdensome

Toshiba next contends that these interrogatories seek information regarding sales outside of the United States and are therefore unreasonably burdensome.  Toshiba complains of having "to search several locations outside the United States and restore countless backup tapes."[15]  To the extent Toshiba complains of undue burden, Toshiba's submissions did not include a declaration to that effect and therefore it is assumed that the burden is not undue in light of the extent of discovery customarily involved in complex antitrust cases.

In weighing the burden of the discovery against its likely benefits, the undersigned finds that:  (1) the information sought, namely the amount and extent of dollar sales of CRT Products is relevant to damages and liability in this MDL; (2) the discovery would likely serve the needs of this MDL by assisting the parties' preparation for trial and case evaluation; (3) the damages sought are substantial; and (4) the parties' resources are substantial.

---

[15] Toshiba's 9/26/14 Opposition to the 9/12 Motion at 4.

The undersigned concludes that Toshiba's objections to Interrogatories 9, 13-14 and 16 are not substantially justified, Toshiba's answers to Interrogatories 9, 13-14 and 16 are insufficient under Rule 33 and the likely benefits of this discovery outweigh the burdens. Plaintiffs' motion to compel Toshiba's supplemental responses to Interrogatories 9, 13-14 and 16 should be granted, and Toshiba should serve answers fully compliant with Rule 33 no later than 30 days from the date of this order or such other date that the court or the undersigned, upon Toshiba's showing of good cause, directs.

### B.   Requests for Production Nos 62-63 re Statements to Antitrust Authorities

Plaintiffs' 9/19 Motion seeks to compel Toshiba to respond to Requests for Production Nos 62-63 and to compel Panasonic to respond to Request for Production No 62. These document requests are set forth below.

**REQUEST NO 62:**  All documents relating to or constituting statements to any Governmental Antitrust Authority relating to CRTs by any Employees of the following entities:

     i.       You; and/or

     ii.      MTPD.

**REQUEST NO 63**:

All documents relating to or constituting statements to any Governmental Antitrust Authority relating to CRTs by any employee of any Defendant.[16]

### 1.   Toshiba's Responses to Requests for Production Nos 62-63

Plaintiffs assert that despite evidence that a Toshiba employee had given a written statement, Toshiba has objected to producing that document and any documents

---

[16] Plaintiffs' 9/19 Motion, Appendix A (Toshiba Corporation's Objections and Responses to Indirect-Purchaser Plaintiffs' Fourth Set of Requests for Production of Documents) at 2.

responsive to RFP Nos 62-63 except statements given to the United States Department of Justice.[17]

Toshiba argues that:  (1) witness statements to foreign antitrust authorities relate solely to foreign markets and therefore are not relevant; and (2) principles of comity outweigh the need for discovery of statements to foreign antitrust authorities.

In support of its lack of relevance contention, Toshiba cites *In re Rubber Chemicals Antitrust Litig*, 486 F Supp 2d 1078, 1082-83 (ND Cal 2007) and Special Master Quinn's denial of a motion to compel documents submitted to foreign antitrust authorities in *In re TFT-LCD Antitrust Litig*, 07-md-01827-SI (ND Cal Apr 26, 2011), ECF No 2686 at 6 (Def Att 13).

*In re Rubber Chemicals* is distinguishable because there, the discovery sought, "communications between a defendant's affiliate and the European Commission," was broader and more invasive than what is sought here -- simply a defendant's statements to foreign antitrust authorities.  Also, in *In re Rubber Chemicals*, the European Commission opposed discovery of its documents.  486 F Supp 2d at 1080-81.  There, principles of international comity, respecting a sovereign interest expressed by a foreign state, were at stake.  Here, the discovery is limited to Toshiba's statements to any United States or foreign antitrust authority, so no issue of sovereign interests arises.  The undersigned is not aware of any foreign antitrust authority having objected to this discovery.

Special Master Quinn's denial of a motion to compel documents in the *TFT-LCD Antitrust Litigation*[18] is also factually distinguishable:   (1) the *TFT-LCD* motion to compel was directed to producing "all communications and documents exchanged" between a defendant and antitrust regulators at the European Commission ("EC") and the Japan Fair Trade Commission ("JFTC"); (2) the EC opposed disclosure of any documents exchanged with the

---

[17] Plaintiffs' 9/19 Motion at 5-6.
[18] Case 3:07-md-01827-SI, ECF 2686, filed 4/25/11.

defendant during the EC investigation and the court's proposed *in camera* review; (3) the JFTC submitted a letter to the court requesting that any future order not make reference to confidential information submitted under seal; and (4) Special Master Quinn reviewed the documents *in camera* to determine their relevance and importance to the litigation.  In both cases, the issue of comity arose due to the breadth of the discovery sought – including communications from foreign antitrust authorities.  But here, the discovery is narrowly limited to Toshiba's statements to antitrust authorities regarding CRTs.

The undersigned finds that:  (1) the information sought is likely to constitute relevant evidence because it involves a party's statements regarding the same CRT products at issue here and may contain admissions or lead to other admissible evidence; (2) the document requests are specific and narrowly tailored; (3) there is no evidence of alternative sources of this information; (4) no foreign antitrust authority has objected to this discovery; (5) there is no need to balance United States interests in enforcing antitrust laws against interests of foreign regulators in confidentiality because the statements are from Toshiba, not from a foreign antitrust authority, and (6) even if interests were balanced, the balancing would weigh strongly in favor of United States interests in enforcing antitrust laws and promoting reasonable discovery.  Accordingly, plaintiffs' motion to compel Toshiba's responses to Requests for Production Nos 62-63 should be **GRANTED**.

### 2.   Panasonic's Responses to Request for Production No 62

Panasonic contends that the DAPs agreed not to file any motion to compel or otherwise seek any information regarding Panasonic "relative to the Department of Justice or any foreign investigations or proceedings regarding CRTs," and thus waived their right to pursue such discovery.  6/19/15 Toshiba and Panasonic letter at 2, Attachment 4 (9/12/14 email from J Ross, Susman Godfrey, to M Donovan, Winston & Strawn (counsel for Panasonic) confirming

agreement purportedly on behalf of DAPs not to seek information regarding foreign

investigations re CRTs from Panasonic).

This email appears to be a waiver of the DAPs' rights to pursue the discovery

sought in Request for Production No 62 from Panasonic.  The DAPs have not filed any response

to Toshiba and Panasonic's 6/19/15 letter.  Their silence suggests that the DAPs concede this

point.  Accordingly, plaintiffs' motion to compel Panasonic's Responses to RFP No 62 should be

**DENIED**.


### C.   Interrogatories Nos 1-14 re Ownership and Control Relevant to MTPD

In addition to the IPPs' First Set of Interrogatories to Defendants ("Common

Interrogatories"), the IPPs also served a First Set of Interrogatories to Toshiba ("Supplemental

Interrogatories") directed to ownership and control of MTPD.[19]   Toshiba responded in part to

the Common Interrogatories, counting one interrogatory as seven due to multiple subparts, and

began objections to the Common Interrogatories at Interrogatory No 17, on the ground that

Rule 33(a) only allows 25 interrogatories per party and the plaintiffs had exceeded that number.

For the same reason, Toshiba objected to all of the Supplemental

Interrogatories.  Toshiba also asserts other objections, including duplicativeness, information

outside of the class period, and personal confidential information, but without any granularity.

Certainly if Toshiba had provided the purportedly duplicative prior discovery, the undersigned

would have been able to assess Toshiba's contention.  Since a party objecting to discovery

bears the burden of proving its objections, Toshiba's only seriously advanced objection is that

the Supplemental Interrogatories exceed the Rule 33(a) limit.

---

[19] MT Picture Display Co, Ltd, a subsidiary of Panasonic Corp, was founded in 2003 as Matsushita
Toshiba Picture Display Co.

Plaintiffs contend that they have not exceeded the limit of 25 interrogatories because Rule 33 specifies that the 25 interrogatory limit is "per party" and the IPPs comprise a number of plaintiffs, therefore, the IPPs as a group were entitled to serve more than 25 interrogatories.  *See Zamora v D'Arrigo Bros Co of Cal*, 2006 WL 931728, at *4 (ND Cal Apr 11, 2006) (class plaintiffs' 29 interrogatories, propounded before class certification, did not exceed Rule 33's 25-interrogatory limit because there were four named plaintiffs entitled to serve a total of 100 interrogatories on defendant); *see also Trevino v ACB American Inc*, 232 FRD 612, 614 (ND Cal 2006)(in a putative class action, where plaintiffs jointly served 32 interrogatories on one defendant and 34 on another defendant, court treated the first 25 interrogatories as served by one plaintiff and the remainder as served by another plaintiff).

Interrogatories Nos 1-14 of the Supplemental Interrogatories seek information on Toshiba's ownership and control of MTPD during the relevant period.  This appears to be an important issue in this case because Toshiba claims to have exited the CRT business upon forming MTPD in 2003 and that event constituted withdrawal from any alleged conspiracy.[20] Accordingly, the interrogatories seek relevant information.  In light of the *Zamora* and *Trevino* cases and in the interests of allowing reasonable discovery, the undersigned finds that the 14 Supplemental Interrogatories are not in excess of the Rule 33(a) limits.  As in *Zamora* and *Trevino*, the undersigned would treat the IPPs' Common Interrogatories as served by one of the indirect purchaser plaintiffs and the IPPs' Supplemental Interrogatories as served by another indirect purchaser plaintiff or by another plaintiff.

As discussed above, this is high-stakes antitrust litigation with parties possessing substantial resources and excellent counsel.  Responding to 14 interrogatories all on the same subject would not appear to be an undue burden in light of the strong relevance of the

---

[20] Toshiba's 11/7/14 Motion for Summary Judgment Concerning Withdrawal (ECF No 2995) at 7.

ORDER RE PLAINTIFFS' MOTIONS TO COMPEL
SUPPLEMENTAL DISCOVERY FROM TOSHIBA AND PANASONIC

information sought and the needs of the case.  Accordingly, plaintiffs' motion to compel

responses to the IPPs' First Set of Interrogatories to Toshiba is **GRANTED**.


**CONCLUSION**

Plaintiffs' 9/12 and 9/19 motions to compel are **GRANTED in part** and **DENIED in part**.  Plaintiffs' 9/12 motion to compel Toshiba's supplemental responses to Interrogatories 9, 13-14 and 16 (of the IPPs' First Set of Interrogatories to Defendants) is **GRANTED**.  Toshiba shall serve verified supplemental responses to Interrogatories 9, 13-14 and 16 consistent with this order no later than 30 days from the date of this order.  Plaintiffs' 9/19 motion to compel is **GRANTED** with respect to:  (1) Toshiba's responses to RPDs 62-63 re statements to antitrust agencies; and (2) Toshiba's responses to interrogatories regarding ownership and control issues relevant to MTPD**.**  Toshiba shall serve verified supplemental responses to these discovery requests no later than 30 days from the date of this order.

Plaintiffs' 9/19 motion to compel Panasonic's supplemental response to Request for Production of Documents No 62 is **DENIED.**

//
//
//
//
//
//
//
//
//
//
//

1          Plaintiffs' 9/12 and 9/19 motions to compel are **DENIED** in all other respects.

2   IT IS SO ORDERED.

3

4   Date:  October 21, 2015

5                               _____

6                                    Vaughn R Walker

                          United States District Judge (Ret)

7

8   The Recommended Order of the Special Master is Accepted and Ordered / Denied / Modified.

9   Date:  _____

10

11                             _____

12                               United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER RE PLAINTIFFS' MOTIONS TO COMPEL
SUPPLEMENTAL DISCOVERY FROM TOSHIBA AND PANASONIC