Josie Saik
1205 Cypress St., Space 122
San Dimas, CA 91773-3532
(909) 599-8505
Class Member/Objector
Appearing Pro Se[1]

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | ) ) Master File No. CV-07-5944-SC ) MDL No. 1917 |

### OBJECTION TO CLASS SETTLEMENT AND ATTORNEY'S FEES AND NOTICE OF INTENTION TO APPEAR AT FAIRNESS HEARING

Indirect Purchaser Class member Josie Saik, 1205 Cypress St., Space 122, San Dimas, CA 91773-3532 (909.599.8505), ("Objector") hereby objects to the conflict of interest created by the class settlement's fee provision as well as the reasonableness of class counsel's fee request. Objector hereby certifies, under penalty of perjury, that she purchased at least one qualifying Philips Cathode Ray television from a retailer in the state of California during the class period for her personal use.

I.   **The Attempt To Insulate The Parties' Agreement To Pay Class Counsel One-Third Of The Common Fund From The Settlement's Overall Fairness Has Triggered An Irreparable Conflict Of Interest That Destroys Class Counsel's Adequacy Of Representation.**

"It is desirable to have as broad a range of participants in the class action fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally ***." *Mirfasihi v. Fleet Mortg. Corp.,* 551 F.3d 682, 687 (7th Cir. 2008) (quoting *Reynolds v. Beneficial National Bank,* 288 F.3d 277, 288

---

[1] My objection and separately filed notice of intention to appear at fairness hearing were prepared by my

1

EXHIBIT 3

(7th Cir. 2002)). District courts must "appraise the reasonableness of particular class action settlements on a case-by-case basis, in light of all the relevant circumstances." *Evans v. Jeff D.,* 475 U.S. 717, 742, 106 S.Ct. 1531, 1531 (1986). In deciding whether to approve a class action settlement, the ultimate issue is whether the proposed settlement "is fair, adequate and reasonable." *Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983). To fully discharge its duty, the court must assess the reasonableness of attorney fees. *Strong v. BellSouth Telecomm., Inc.,* 137 F.3d 844, 849 (5th Cir. 1998).

Attorney fees provisions are key components in deciding whether to approve or deny a proposed class action settlement. *Staton v. Boeing Co.,* 327 F.3d 938, 963 (9th Cir. 2003). Courts must scrutinize the fee provision with a jealous regard for the rights of those who are interested in the settlement fund. *City of Detroit v. Grinnell Corporation,* 495 F.2d 448, 469 (2d Cir. 1974). In light of the potential conflict between class counsel and class members once an agreement is signed, the court must insure the fee will not frustrate the settlement's overall fairness. *Bowen v. SouthTrust Bank of Alabama,* 760 F.Supp. 889 (M.D.Ala. 1991). This fiduciary duty includes the obligation to explore the <u>manner</u> in which fees are paid and the <u>framework's</u> fundamental fairness to the class. *Foster v. Boise-Cascade, Inc.,* S.D.Tex.1976, 420 F.Supp. 674, 680, affirmed 577 F.2d 335, rehearing denied 581 F.2d 267; *Strong v. BellSouth Telecomm., Inc.,* 137 F.3d 844, 849–50 (5th Cir. 1998). In *Staton v. Boeing Co.,* 327 F.3d 938, 964 (9th Cir.2003), the court articulated the important rationale behind this inquiry:

> There is no exception in Rule 23(e) for fees provisions contained in proposed class action settlement agreements. Thus, to avoid

abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement.

It follows that a stipulated fee structure's impact on fundamental fairness must be examined as an *integral part* of the court's evaluation of the proposed settlement. As noted in the 2003 Note to Rule 23(h):

> In cases in which settlement approval is contemplated under Rule 23(e), notice of class counsel's fee motion should be combined with notice of the proposed settlement ***.

The importance of timely review is underscored by the court's inability to modify any term once a settlement is finalized. *Evans v. Jeff D.*, 475 U.S. at 726–27, 106 S.Ct. at 1537. This judicial impotence specifically precludes altering the parties' stipulated structure for determining fees after blessing the Agreement. *Id.* The U.S. Supreme Court explained why:

> Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but *** does not authorize the court to require the parties to accept a settlement to which they have not agreed ***. The District Court could not enforce the settlement on the merits and award attorney's fees any more than it could, in a situation in which the attorney had negotiated a large fee at the expense of the plaintiff class, preserve the fee award and order greater relief on the merits.

*Id.* As a result, judicial review is limited to approving or rejecting the whole package. 3B *Moore's Federal Practice* at ¶ 23.80[4] (2d ed. 1987). The proposed settlement on behalf of the IPP class undermines this important aspect of judicial scrutiny. Section E of Philip's Settlement Agreement establishes the parties' rights and obligations regarding the settlement fund. Paragraph 22 asserts that: "Plaintiffs' counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses." Paragraph 23 adds that Defendants will not oppose awarding class counsel a fee equal to

one-third of the fund. The same paragraph expressly releases Defendants from any further obligation to pay class counsel's fee for representing the class. However, in what can only be described as a drafter's "slight of hand", the parties then attempt to shield the foregoing stipulation from the Court's evaluation of the settlement's fairness:

> The procedure for and the allowance or disallowance by the Court of the application by Class Counsel for attorneys' fees, costs and expenses to be paid out of the Settlement Fund **are not part of this Agreement**, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement. (emphasis added)

This legal fiction defies both logic and law. While attorneys' fees may be awarded in a certified class action where so authorized by the parties' agreement, courts have an independent obligation to ensure that the award—like the settlement itself—is reasonable, even if the parties have already agreed to an amount. *See* Fed.R.Civ.P. 23(h); *Staton v. Boeing Co.*, 327 F.3d 938, 963-64 (9th Cir.2003); *Knisley v. Network Assoc.*, 312 F.3d 1123, 1125 (9th Cir.2002); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328-29 & n. 20 (9th Cir.1999). In *Bluetooth*, the Ninth Circuit affirmed the importance of evaluating class counsel's fee request within the context of the settlement's overall fairness:

> Approval of the settlement agreement was not conditioned on the award of attorneys' fees and costs or an incentive award, and therefore our vacatur of the fee award does not necessitate invalidation of the approval order. *See, e.g., Rodriguez*, 563 F.3d at 969 (affirming approval of the settlement but reversing and remanding the award of attorneys' fees). Nonetheless, because the parties expressly negotiated a possibly unreasonable amount of fees, and because the district court did not take this possibility into account in reviewing the settlement's fairness the first time around, we must vacate and remand the Approval Order as well, so that the court may appropriately factor this into its Rule 23(e) analysis.

4

\* \* \*

Furthermore, that a provision is severable does not render it irrelevant to the overall reasonableness of the agreement, for " [i]t is the settlement *taken as a whole, rather than the individual component parts,* that must be examined for overall fairness.... The settlement must stand or fall *in its entirety.* " *Hanlon,* 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.,* 688 F.2d 615, 628 (9th Cir.1982)).

*In re Bluetooth Headset Products Liability Litigation,* 654 F.3d 935 (9th Cir. 2011). Given the inverse relationship between the attorney's fees and the class award, absent members have a strong incentive to litigate the reasonableness and fairness of fees as a reflection of the settlement's fairness. *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir. 2000). This divergence creates the danger that "lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red carpet treatment for fees." *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 524 (1st Cir. 1991). Fee arrangements that implicate this concern require close judicial scrutiny. *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 216, 224 (2d Cir. 1987); *In re Rite Aid Corp. Securities Litigation,* 396 F.3d 294, 307 (3d Cir. 2005). When a district court fails to consider the effect of a conflict on the fee award, it abuses its discretion. *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 967 (9th Cir. 2009).

In the present case, the attempt to immunize IPP's fee provision from the Court's analysis of the settlement's overall fairness has triggered an incurable conflict of interest that destroys class counsel's adequacy of representation. By placing their own financial interest ahead of the class' right to a fair settlement, class counsel breached the most basic fiduciary duty owed to absent members—their exclusive loyalty. Because this Court

has no power to eliminate paragraph 23 from the parties' agreement, it has no choice but to reject the entire settlement for this fatal flaw.

## II. Neither Does This Mega-Fund Settlement Justify Exceeding The Ninth Circuit's Benchmark For Common Fund Awards By *$48 Million*.

The $192,250,000 fee award requested by IPP Counsel (purportedly representing a 2.3 lodestar multiplier) is blatantly excessive and unfair to class members for several reasons. First, it exceeds the Ninth Circuit's 25% benchmark for ordinary settlements without justification. At 33% of gross recovery, their request also ignores the longstanding principle that fee awards should be reduced when class funds exceed $100 million so that class members can benefit from the economies of scale afforded by class treatment. *See In re Synthroid Marketing Litig.*, 325 F.3d 974, 980 (7th Circuit 2003)("*Synthroid II*").

The case law supports Objector's position. In *Wal–Mart Stores v. Visa U.S.A., Inc.*, (approving district court's fees award of 6.5%), the world's largest retailer led a class of approximately five million merchants challenging the practices of Visa U.S.A. and MasterCard International as illegal tying arrangements and anti-competitive practices under the Sherman Act, 15 U.S.C. §§ 1, 2. The plaintiff's class sought billions of dollars in damages. *Wal–Mart,* 396 F.3d at 101. The Second Circuit affirmed the district court's fee award, agreeing that the *Goldberger*[2] factors "compel[led] an 'extraordinary' fee under [the] circumstances" in the case, which the court explained were:

> ... lead counsel devoted tremendous time and labor to this case for seven years; antitrust cases, by their nature, are highly complex; this case was especially large and complicated, involving almost every U.S. bank and more than five million U.S. merchants; the risk of the litigation was very high; lead counsel devoted 52% of its legal staff to work on a case that

---

[2] *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

6

spanned seven years without any guarantee of recovery; plaintiffs' counsel achieved extraordinary results; plaintiffs' counsel did not have the benefit of "piggybacking" off of a previous case-instead, the Government piggybacked off of plaintiffs' counsel's work by using it in *Government's Membership Rules;* even a very large fee award would be a small percentage of the settlement fund; and the Settlement produced "significant and lasting benefits for America's merchants and consumers."

*Wal-Mart*, at 396 F.3d at 122, (quoting *In re Visa Check/Mastermoney Antitrust Litigation*, 297 F. Supp.2d 503, 523-24 (E.D.N.Y. 2003)). Nonetheless, "[a]sserting its jealous regard for absent class members, the [district] court sought to compensate plaintiffs' counsel handsomely and at the same time limit the percentage of the award so that plaintiffs' counsel would not receive a windfall detrimental to the class":

> Were the Fund not so large, dwarfing the funds in all of the cases Lead Counsel have cited, a larger percentage might be appropriate. But given the circumstances as they are, my award is appropriate. Only in comparison to the amount sought can it be considered anything but generous.

*Wal-Mart*, 396 F.3d at 122, quoting *Visa Check III*, 297 F. Supp.2d at 525 (footnote omitted). Given the very large size of the fund in question, and "recognizing that economies of scale could cause windfalls in common fund cases," the district court reduced the requested fee percentage from 18.5% to 6%. *Id.* The Second Circuit agreed, explaining that:

> While courts in megafund cases often award higher percentages of class funds as fees than the district court awarded in this instance [internal citation omitted] the sheer size of the instant fund makes a smaller percentage appropriate. * * * [T]he district court's decision in favor of protecting the instant class from an excessive fee award militates against awarding attorneys' fees based purely on economic incentives.

*Id.* at 123. Furthermore, the Second Circuit could not imagine the reduction in fee would be a disincentive to other attorneys to pursue such claims. *Id.* It referred to the district court's pithy comment that:

> "If [this fee award] amounts to punishment, I am confident there will be many attempts to self-inflict similar punishment in future cases." We agree.

*Id.* Applying the same percentage recovery protocol to the present case would lead to a similar result. The chasm between 6.5% and 33% of fund fees in two complex anti-trust cases is too wide not to bend even the tolerance level afforded by the abuse of discretion standard. Professor Fitzpatrick's empirical study of megafund settlements bolsters Objector's position. In cases involving common funds "from $500 million to $1 billion" in 2006 and 2007, Fitzpatrick found that "the mean and median awards were both 12.9%" of the fund. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp.2d at 1033 (citing Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical Legal Stud. 811, 839 (2010)). This pattern reflects the widely-held belief that class-wide treatment of common issues should benefit the *class* rather than *counsel*:

> Where the common fund is worth many millions or even billions of dollars—in so-called 'megafund' cases—an appropriate fee may be considerably less than twenty percent of the fund," [where]"courts most stringently weigh the economics of scale inherent in class actions in fixing an appropriate per cent recovery for reasonable fees.

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 351 (N.D.Ga.1993). The point is that Civil Rule 23 promotes not only opportunities *for*—but efficiency *in*—class representation. While the size of the present fee request may create

an incentive for other litigators to follow, it violates other policy considerations designed to protect absent class members.

Courts police fee awards to assure that the mere size of the class action does not create a fee, whether termed windfall or not, that is based more on the arbitrary size of the class or the recovery, than on the efforts of counsel. *See Goldberger*, 209 F.3d at 52 ("Obviously, it is not ten times as difficult to prepare, and try or settle a 10 million dollar case as it is to try a 1 million dollar case." (internal quotation omitted)); *In re Prudential Ins. Co.*, 148 F.3d 283, 339 (reducing percentage of fee due to size of fund, explaining "the basis for this inverse relationship is the belief in many instances the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel.").

While Objector readily acknowledges a fee reduction is not mandated in every megafund case, neither is a court's formulaic approval based on a token percentage or lodestar cross-check. *See, e.g., Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (district courts may consider unusual circumstances that would "indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."); *see also Vizcaino*, 290 F.3d at 1047 (fund size may make 25% benchmark rate "inappropriate … starting point for analysis … in some cases.")

In *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 296 (N.D. Cal. 1995), the district court noted that "in megafund cases with class recoveries of $75-200 million, courts are even more stringent, and fees in the 6-10 percent range and lower are common." *Id.* at 298. In cases where the Ninth Circuit has addressed larger fee awards in class action matters, it has never treated even the 25% baseline as a foregone

conclusion. Its seminal analysis of class action fees demonstrates that no hard-and-fast rule makes sense in a mega-fund setting. *In re Bluetooth Headset Products Liability Lit.*, 654 F.3d 935, 942-43 (9th Cir. 2011). Though courts have discretion to choose which calculation method to use, their discretion must be exercised to achieve a reasonable result. *See, In re Coordinated Pretrial Proceedings,* 109 F.3d 602, 607 (9th Cir.1997) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1294–95 n. 2 (9th Cir.1994)); *Six Mexican Workers,* 904 F.2d at 1311; *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions,* 148 F.3d 283, 339 (3d Cir.1998) (explaining that basis for inverse relationship between size of fund and percentage awarded for fees is that "in many instances the increase in recovery is merely a factor of the size of the class and has no direct relationship to the efforts of counsel" (internal quotation marks omitted)).

In *Washington Public Power Supply Litigation*, 19 F.3d 1291 (9th Cir. 1994), one of the Ninth Circuit's large-fund formative decisions, the Court stated:

> We agree with the district court that there is no necessary correlation between any particular percentage and a reasonable fee. With a fund this large, picking a percentage without reference to all the circumstances, including the size of the fund, would be like picking a number out of the air. * * * Because a court must consider the fund's size in light of the circumstances of the particular case, we agree with the district court that the 25 percent 'benchmark' is of little assistance in a case such as this.

19 F.3d at 1297 (considering fee request representing 13.6% or $103 million of a $687 million settlement fund). The Court went on to consider the arbitrariness of settling upon a benchmark award in a large case where the legal work, though presumptively excellent, might return a considerably larger fee simply because the bond issue in

10

question there was double the size: "Plainly, a fee of $200 million for the same effort by counsel with the same level of skill would be a windfall rather than a reasonable fee. In sum, the district court was correct that there is nothing inherently reasonable about an award of 13.6 percent of a fund regardless of its size." 19 F.3d at 1298.

Similarly telling is the Ninth Circuit's oft-cited decision in *Vizcaino*, 290 F.3d at 1047, in which it made clear that in cases of great magnitude "fund size is one relevant circumstance to which courts must refer . . ." And that, "the 25% benchmark rate, although a starting point for analysis may be inappropriate in some cases." *Id.* at 1050 n.4 (affirming a $27 million fee award representing 28% of the settlement fund of $97 million supported by several factors including that the "award was within the range of fees awarded in settlements of comparable size.")

In the end, the greater weight of relevant authority leaves little doubt that class counsel's request to receive one-third of the settlement fund is patently unreasonable and excessive. To the extent that class counsel seeks to use its claimed lodestar amount to justify an upward departure from the megafund benchmark of 17%, the Court must perform a detailed review of class counsel's claimed hours and rates, and not simply accept their asserted lodestar total.

## CONCLUSION

For the foregoing reasons, this Court should REJECT the proposed settlement due to an inherent conflict of interest regarding the fee provision and/or REDUCE class counsel's fee award to a reasonable range between 17% (the common benchmark for mega-fund settlements) and 25% (the Ninth Circuit's 25% published benchmark for ordinary settlements). Objector hereby serves notice of her intent to attend the fairness hearing, by and through counsel, on November 13, 2015. *As proof of her membership in*

11

the Indirect Purchaser Class, Objector hereby swears (under penalty of perjury) that shw purchased a television for her personal use during the class period from a retailer in the State of California that contained a Cathode Ray Tube manufactured by Philips Electronics North America Corporation.

SO ATTESTED:

*Josie Saik*

Josie Saik
1205 Cypress St., Space 122
San Dimas, CA 91773-3532
(909) 599-8505
Class Member/Objector
Appearing Pro Se

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was mailed on October 7, 2015 by registered U.S. Mail to the Clerk of Court for filing by CM/ECF and as a result has been served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: *Josie Saik*
Josie Saik

Josie Saik
1205 Cypress St., Space 122
San Dimas, CA 91773-3532
(909) 599-8505
Class Member/Objector
Appearing Pro Se

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION.<br><br>This Document Relates to:<br><br>All Indirect-Purchaser Actions. | Master File No. 3:07-cv-5944 SC<br><br>MDL No.1917<br><br>NOTICE OF INTENTION TO APPEAR AT FAIRNESS HEARING<br><br>Date:       November 13, 2015<br>Time:       10:00 a.m.<br>Courtroom:  One, 17th Floor<br>Judge:      The Honorable Samuel Conti |

1  In accordance with the Amended Order Granting Preliminary approval of Class Action
2  Settlements with Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson and TDA
3  Defendants (Dkt. No. 3906), the undersigned hereby gives notice of her intention to appear at the
4  Fairness Hearing, by and through counsel, on November 13, 2015 at 10:00 a.m.

Dated October 7, 2015

Josie Saik

*Josie Saik*
Josie Saik
1205 Cypress St., Space 122
San Dimas, CA 91773-3532
(909) 599-8505
Class Member/Objector
Appearing Pro Se

1

# CERTIFICATE OF SERVICE

I certify that on October 7, 2015, I caused the foregoing NOTICE OF INTENTION TO APPEAR AT FAIRNESS HEARING to be electronically filed with the Clerk of the Court via CM/ECF by mailing this notice to the clerk by registered U.S. Mail. Notice of this filing will be sent by email to all counsel of record by operation of the Court's electronic filing system.

*Josie Saik*
Josie Saik

2