# ATTACHMENT 3B

NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2006-564

JAMES J. LACHANCE <u>&</u> <u>a</u>.

v.

UNITED STATES SMOKELESS TOBACCO CO. <u>&</u> <u>a</u>.

Argued:  March 21, 2007
Opinion Issued:  August 24, 2007

<u>Shaheen & Gordon</u>, of Dover (<u>Christine M. Craig</u> and <u>D. Michael Noonan</u> on the brief, and <u>Ms. Craig</u> orally), for the plaintiffs.

<u>McLane, Graf, Raulerson & Middleton, P.A.</u>, of Manchester (<u>Bruce W. Felmly</u> and <u>Jennifer L. Parent</u> on the brief), and <u>Latham & Watkins, LLP</u>, of Washington, D.C. and Los Angeles, California (<u>Margaret M. Zwisler</u> and <u>Charles H. Samel</u> on the brief, and <u>Mr. Samel</u> orally), for the defendants.

DUGGAN, J.  The plaintiffs, James J. LaChance and Chad Crossan, appeal an order of the Superior Court (<u>Fauver</u>, J.), denying their motion for class certification and granting judgment on the pleadings to the defendants, United States Smokeless Tobacco Company, United States Tobacco Sales and Marketing Company, United States Tobacco Manufacturing Company, and UST, Inc.  We reverse and remand.

I.  Background

        The following facts appear in the record.  The defendants sell smokeless
tobacco products using in-store display racks and advertising mechanisms.
The plaintiffs are purchasers of smokeless tobacco products from retailers
across New Hampshire.  Following a verdict unfavorable to the defendants in
antitrust litigation in another jurisdiction, see Conwood Co. L.P. v. United
States Tobacco Co., 290 F.3d 768, 777 (6th Cir. 2002), cert. denied, 537 U.S.
1148 (2003), the plaintiffs filed a civil action in the superior court, alleging that
the defendants also violated the New Hampshire Consumer Protection Act
(CPA), see generally RSA chapter 358-A (1995 & Supp. 2006).  More
specifically, they contended that the defendants engaged in conduct that
excluded competitors, limited customers' product choices, and negatively
affected the advertising and display of competing brands.  According to the
plaintiffs, the defendants "intentionally and routinely" removed competitors'
racks from retail stores and entered into agreements with store retailers to
restrict the sale, advertising and display of competing brands, as well as gave
retailers incentives to exclude competing brands from stores.  The defendants
also are alleged to have "increase[ed] . . . the price and limit[ed] and reduc[ed]
the supply of moist snuff tobacco products[,] [acts which] constitute[d] and
w[ere] intended to constitute unfair and deceptive competition and unfair and
deceptive business acts and practices within the meaning of RSA 358-A."  The
plaintiffs argued that, as a result of the defendants' conduct, they sustained
actual damages and non-economic harm because their "product choice ha[d]
been limited and each plaintiff ha[d] been wrongfully denied the free choice to
purchase a lower-priced consumer product."

        Over the course of litigating their case in superior court, the plaintiffs
moved to certify "a class of similarly situated New Hampshire purchasers of
moist snuff smokeless tobacco."  For their part, the defendants moved for
judgment on the pleadings, arguing, among other things, that the plaintiffs'
claims were barred by our decision in Minuteman, LLC v. Microsoft Corp., 147
N.H. 634 (2002).  The superior court denied the plaintiffs' motion and granted
the defendants' motion, ruling that the plaintiffs, as indirect purchasers, could
not pursue their claims.  The plaintiffs appeal both rulings.

II.  Procedural Posture

        Before reaching the parties' substantive arguments, we must resolve a
preliminary procedural issue.  In their objection to the defendants' motion for
judgment on the pleadings, the plaintiffs argued, among other things, that RSA
358-A:2, XIV (Supp. 2006) provided the authority needed to bring their claims
under the CPA.  RSA 358-A:2, XIV makes unlawful the "[p]ricing of goods or
services in a manner that tends to create or maintain a monopoly, or otherwise
harm competition."  The superior court "acknowledge[d] the legislature

expressly authorize[d] a plaintiff to bring an action for anticompetitive practices under the CPA by the specific language of [RSA 358-A:2, XIV]" but nevertheless concluded that "the plaintiffs' claims are barred by <u>Minuteman</u>."

In their opening brief, the plaintiffs did not address the applicability or effects of RSA 358-A:2, XIV.  The defendants cited it as part of their argument against class certification, but did not discuss whether it has any effect on whether indirect purchasers may pursue claims.  Recognizing the potential importance of RSA 358-A:2, XIV, we ordered the parties to submit supplemental memoranda addressing the following two issues:

> (1)   Whether this court should consider RSA 358-A:2, XIV in assessing whether the plaintiffs may bring their claims under the CPA; and

> (2)   Assuming this court should consider RSA 358-A:2, XIV, what effect, if any, RSA 358-A:2, XIV should have in determining whether the plaintiffs may bring their claims under the CPA.

In their memoranda, the plaintiffs, not unexpectedly, argue that RSA 358-A:2, XIV buttresses the argument that they may pursue their claims under the CPA.  The defendants make two rejoinders.  First, citing <u>Derosia v. Warden, N.H. State Prison</u>, 149 N.H. 579, 580 (2003), among other cases, they contend that the plaintiffs waived consideration of RSA 358-A:2, XIV by failing to raise it in their opening brief.  Second, they contend that, even if we consider RSA 358-A:2, XIV, it supports affirming the superior court's judgment.

The defendants' first argument is well-taken.  Generally, we do not consider arguments that have not been briefed.  <u>See</u> <u>Derosia</u>, 149 N.H. at 580.  However, the instant case is somewhat unusual in that we ordered the parties to address the effects of the statutory provision at issue, and they have done so.  Moreover, the issue was presented to the superior court, and thus should not come as a surprise to either side.

Faced with this procedural posture, we could decide the case without reference to RSA 358-A:2, XIV.  That approach, however, is an empty one because we would be ignoring a critical statutory provision in order to render an opinion that would be essentially meaningless outside the context of this case.  This would be a waste of judicial resources, a result we typically attempt to avoid.  <u>See</u> <u>Rochester School Bd. v. N.H. PELRB</u>, 119 N.H. 45, 50 (1979).

We could also remand to the superior court for it to consider, in the first instance, how RSA 358-A:2, XIV affects the application of <u>Minuteman</u> with respect to whether the plaintiffs may bring claims under the CPA.  This, too, would be a waste of judicial resources and unnecessarily burden the parties

3

because no matter what conclusion the superior court might reach, the parties likely would appeal, and we would once again be called upon to decide the issue.

Finally, we could decide the matter in the first instance.  This approach is the most sensible, so we opt for it.  The issue is now thoroughly briefed and ready for our consideration.  Deciding it now will avoid unnecessarily burdening the parties with additional steps in the litigation process.  Moreover, since the issue of who may bring claims under the CPA is one of statutory interpretation, we would review the matter de novo in any event.  Lower Bartlett Water Precinct v. Murnik, 150 N.H. 690, 692 (2004).

## III.  Discussion

### A.  Whether Indirect Purchasers May Bring Claims under the CPA

The question presented by this case – whether consumers, as indirect purchasers, may bring a cause of action under the CPA – arises from a controversy that began gathering steam in 1977.  At that time, in Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977), the United States Supreme Court held that indirect purchasers may not bring claims under the federal antitrust laws.  For purposes of the Illinois Brick rule, indirect purchasers are those who acquire a product not directly from a manufacturer, but from some intermediary in the chain of distribution.  Id. at 724-27.  In support of its holding, the Court cited the unique nature of antitrust litigation, issues of multiple recovery, and the problem of allocating damages if indirect purchasers were allowed to bring suit.  Id. at 737-38.  Later, the Court held that federal antitrust laws do not, however, preempt states from enacting statutes that allow indirect purchasers to recover damages for their injuries.  See California v. ARC America Corp., 490 U.S. 93, 101-02 (1989) (rejecting argument that California's antitrust law, which specifically allows indirect purchaser actions, was preempted by federal law).

In the wake of Illinois Brick and ARC America, states have been grappling with issues involving whether, and in what context, indirect purchasers may pursue their claims.  For example, at least thirty-three states and the District of Columbia have passed so-called Illinois Brick repealer statutes, permitting plaintiffs to bring their claims under state antitrust statutes.  Elkins v. Microsoft Corp., 817 A.2d 9, 18 (Vt. 2002).  Our legislature has not.  Other jurisdictions have ruled that Illinois Brick applies in both the antitrust and the consumer protection realms.  See, e.g., Sickles v. Cabot Corp., 877 A.2d 267, 274 (N.J. Super. Ct. App. Div.), cert. denied, 884 A.2d 1267 (N.J. 2005).  These courts reason that antitrust-type claims are unique and should be resolved under antitrust – as opposed to consumer protection – laws and principles.  Id.  They note that reaching a contrary conclusion would

undermine state antitrust acts and the jurisprudence construing such acts. Id.  By contrast, Vermont, Massachusetts and Florida follow a different approach.  Courts in all three states have allowed antitrust-type claims to be brought under the state's consumer protection act.  See Elkins, 817 A.2d at 16-17, 19-20; Ciardi v. F. Hoffmann-La Roche, Ltd., 762 N.E.2d 303, 311 (Mass. 2002); Mack v. Bristol-Myers Squibb Co., 673 So. 2d 100, 104 (Fla. Dist. Ct. App. 1996), rev. dismissed, 689 So. 2d 1068 (Fla. 1997).

We have never been called upon to decide whether indirect purchasers may bring claims under the CPA.  We have, however, held that indirect purchasers may not bring claims under the state antitrust statute, RSA chapter 356 (1995 & Supp. 2006).  Minuteman, 147 N.H. at 639.  In Minuteman, we adopted the reasoning of Illinois Brick, citing the unique nature of antitrust litigation and the potential complexities that would arise in awarding damages to indirect purchasers.  Id. at 638-39.

Against this backdrop, we turn to the case at hand.  As referenced above, the superior court granted judgment on the pleadings, holding that Minuteman applied to consumer protection claims and that the plaintiffs therefore could not pursue their claims.  In general, a motion seeking judgment based solely on the pleadings is in the nature of a motion to dismiss for failure to state a claim. Jenks v. Menard, 145 N.H. 236, 239 (2000).  In reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, we assume the truth of the facts alleged by the plaintiffs and construe all reasonable inferences in the light most favorable to them.  Paul v. Sherburne, 153 N.H. 747, 749 (2006).  If the facts do not constitute a basis for legal relief, we will uphold the granting of the motion to dismiss.  Id.

The plaintiffs contend that the superior court erred in granting judgment to the defendants because the plain language of the CPA supports their position.  The defendants counter that if we allow the plaintiffs to bring their claims under the CPA, we will be encouraging litigants to reframe antitrust claims as CPA claims, and thereby be enabling end runs around Minuteman. Citing public policy considerations and principles of statutory construction, the defendants urge us to reject the plaintiffs' arguments and to hold that the Minuteman rule applies in the CPA context.  They argue that such a result will produce a harmonious statutory scheme.

In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole.  Appeal of Town of Bethlehem, 154 N.H. 314, 319 (2006).  When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used.  Id.  We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.

We begin with the defendants' contention that antitrust claims should be brought and decided under antitrust statutes and principles.  The plaintiffs do not contend that they are not indirect purchasers within the meaning of Minuteman and Illinois Brick.  Indeed, it would seem to be because of our decision in Minuteman that the plaintiffs brought CPA – as opposed to antitrust – claims in the first place.

At first blush, the defendants' argument has some appeal.  Requiring antitrust-type actions to be brought under the state antitrust statute would be straightforward and simple.  However, the CPA does not envisage such rigidity.  Under the CPA, "[a]ny person injured by another's use of any method, act or practice declared unlawful under this chapter may bring an action for damages."  RSA 358-A:10, I (1995).  For purposes of the CPA, "unfair method[s] of competition or unfair or deceptive act[s] or practice[s] shall include . . . [the] [p]ricing of goods or services in a manner that tends to create or maintain a monopoly, or otherwise harm competition."  RSA 358-A:2, XIV.  By allowing consumer protection actions for the type of monopolistic or anticompetitive conduct set forth in RSA 358-A:2, XIV, it seems indisputable that our legislature intended to make actionable under the CPA at least some types of conduct that typically are associated with the antitrust realm.  Thus, we turn to the plain language of the CPA to determine whether indirect purchasers may assert these types of claims.

By allowing "any person injured" to bring an action, the plain language of RSA 358-A:10, I (emphasis added) does not suggest any legislative intent to limit who may bring a CPA claim to persons sustaining direct injuries.  See Remsburg v. Docusearch, 149 N.H. 148, 159-60 (2003) ("The statute defines who may bring a private action broadly, and by its plain meaning does not limit the class of persons who have standing to those in privity with the defendant." (citation omitted)).  The defendants, however, contend that in order to allow indirect purchasers to fall within the ambit of "any person injured," we would have to read the phrase "directly or indirectly" into the statute as a qualifier of "injured."  We disagree.

"Any person injured" is broad.  Cf.  Chroniak v. Golden Investment Corp., 133 N.H. 346, 349 (1990) (definition of lender as "'any person making a loan secured by a mortgage'" is "quite broad"); Estate of Gordon-Couture v. Brown, 152 N.H. 265, 270-71 (2005) (phrase "any person" is "broad and unqualified" but should be interpreted in its statutory context).  It does not differentiate between consumers directly and indirectly injured.  If we were to conclude, as the defendants urge, that the legislature intended to allow only those directly injured to bring suit, we would have to find some way to limit the statute's scope, most likely by reading the word "directly" into it, i.e. "any person directly injured."  This is not what the statute says, and it is not our practice to add words to statutes.  Bethlehem, 154 N.H. at 319.

6

Furthermore, we have never held that the CPA allows consumers to bring suit only against those from whom they have directly purchased a product. The defendants' argument essentially asks us to do just that, for if we read the word "directly" into the CPA for purposes of RSA 358-A:2, XIV or anticompetitive conduct generally, then we must do so for all private actions brought under RSA 358-A:10.  It would make no sense for the CPA to allow indirect actions under some circumstances but not others, yet not set forth in its text a basis upon which this distinction can be made.  Either the statute requires privity, or it does not.  We have held that it does not.  <u>See</u> <u>Remsburg</u>, 149 N.H. at 159-60.

The defendants also argue that even if we conclude that indirect purchasers may bring claims under the "any person injured" language of RSA 358-A:10, the plaintiffs still have failed to state a claim to the extent they rely upon RSA 358-A:2, XIV because their allegations concern anticompetitive agreements or combinations, while RSA 358-A:2, XIV is narrowly concerned with anticompetitive or predatory pricing instead.  Thus, citing federal authority, the defendants argue that in the absence of allegations of predatory pricing practices, the plaintiffs' complaint "is simply a naked attempt to re-package . . . anticompetitive conduct allegations as pricing claims while ignoring the text and purpose of the [consumer protection] statute."

The plain language of the statute is not, on its face, limited to predatory pricing.  Instead, it makes unlawful the "[p]ricing of goods or services in a manner that tends to create or maintain a monopoly, <u>or otherwise harm competition</u>."  RSA 358-A:2, XIV (emphasis added.)  To be sure, predatory pricing, one definition of which is "pricing below some appropriate measure of cost," <u>Matsushita Elec. Industrial Co. v. Zenith Radio</u>, 475 U.S. 574, 585 n.8 (1986), is among the types of conduct prohibited by RSA 358-A:2, XIV. However, since our CPA generally is given broad sweep, and since "or otherwise harm competition" is, on its face, broad, it would seem anomalous for us to hold that RSA 358-A:2, XIV contemplates only narrow protection.  We do, however, agree with the defendants that in order to prevail at trial on a claim brought under RSA 358-A:2, XIV, the plaintiffs will have to prove that pricing tended to create a monopoly, maintain a monopoly, or otherwise harm competition.  <u>See</u> RSA 358-A:2, XIV.

Here, the plaintiffs have alleged that the defendants' conduct in, among other things, "increasing . . . the price and limiting and reducing the supply of moist snuff tobacco products . . . constitute[d] and was intended to constitute unfair and deceptive competition and unfair and deceptive business acts and practices within the meaning of RSA 358-A."  At this early stage of the litigation, this allegation must be taken in a light most favorable to the plaintiffs.  <u>Paul</u>, 153 N.H. at 749.  Thus, to the extent the defendants argue that the plaintiffs will not be able to actually prove a violation of RSA 358-A:2, XIV, their argument is for summary judgment or trial.

Another aspect of the CPA's language also supports the conclusion that indirect purchasers may bring suit. RSA 358-A:2 makes it unlawful to "use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." RSA 358-A:1, II (Supp. 2006), defines "[t]rade" and "commerce" to "include any trade or commerce directly or indirectly affecting the people of this state." (Emphasis added.) Citing Blewett v. Abbott Laboratories, 938 P.2d 842, 846 (Wash. Ct. App. 1997), rev. denied, 950 P.2d 475 (Wash. 1998), the defendants contend that the phrase "directly or indirectly" has no bearing on who may bring suit and instead defines the types of business conduct regulated. Even if we adopt the defendants' position, it cannot be denied that the plaintiffs' allegations encompass conduct which was part of trade or commerce that had direct or indirect effects on the people of this state. Thus, if nothing else, "directly or indirectly" is further evidence of the broad sweep the legislature intended for the CPA. Similarly, in Ciardi, the Massachusetts Supreme Judicial Court noted that Massachusetts' consumer protection statute "regulates trade and commerce 'directly or indirectly affecting the people of this commonwealth,'" Ciardi, 762 N.E.2d at 308. It then concluded that although indirect purchasers are barred from bringing suit under the state antitrust act, they are not barred from bringing consumer protection claims.

The defendants try to distinguish Ciardi by pointing out that Massachusetts' Antitrust Act contains a provision stating that it should have "'no effect'" upon the state consumer protection statute, while our antitrust act does not. Ciardi, 762 N.E.2d at 311. Although neither RSA chapter 356 nor RSA chapter 358-A contains a provision similar to the one described in Ciardi, it is also true that neither chapter indicates that interpretations of one bind interpretations of the other.

Beyond the plain meaning of the statutory language, the defendants also argue that since our legislature has not passed an Illinois Brick repealer statute, it must have agreed with Minuteman, and therefore we should apply it in the context of the CPA. However, as the Massachusetts Supreme Judicial Court has persuasively reasoned,

> [t]he fallacy in the argument is that no one knows why the legislature did not pass [such a] . . . measure. The practicalities of the legislative process furnish many reasons for the lack of [passage] . . . of a measure other than legislative dislike for the principle involved in the legislation. One such reason is the belief that the matter should be left to be handled by the normal processes of judicial development of decisional law, including the overruling of outstanding decisions to the extent that the sound growth of the law requires.

<u>Ciardi</u>, 762 N.E.2d at 310 n.15 (quotations, citation, brackets and ellipsis omitted).  Moreover, any repealer statute that our legislature could have enacted would have modified RSA chapter 356, not the CPA.  <u>See id</u>.  It is also worth noting that the legislature approved RSA 358-A:2, XIV on May 18, 2002, and it became effective on July 17, 2002.  Laws 2002, 276:1.  <u>Minuteman</u> was decided on April 19, 2002.  <u>Minuteman</u>, 147 N.H. at 634.

The defendants also assert that general rules of statutory construction require us to decide in their favor.  Citing <u>Soraghan v. Mt. Cranmore Ski Resort</u>, 152 N.H. 399, 405 (2005), the defendants argue that since both RSA chapter 358-A and RSA chapter 356 seek to protect "person[s] injured," <u>see</u> RSA 356:11, II (1995); RSA 358-A:10, it follows that, consistent with our practice of attempting to construe statutes that deal with similar subject matter harmoniously, we must extend <u>Minuteman</u> and construe both statutes as precluding indirect purchaser actions.  We disagree.  For one thing, neither RSA chapter 356 nor RSA chapter 358-A contains a provision indicating that one is dependent upon the other.  Additionally, the legislature's purpose in enacting the CPA supports our plain meaning analysis.  The purpose of the CPA is to provide broad protection for consumers.  <u>See</u> <u>Hughes v. DiSalvo</u>, 143 N.H. 576, 578 (1999).  Accordingly, although the defendants correctly note that RSA chapter 356, like the CPA, uses the phrase "any person injured" to describe who may bring suit, <u>see</u> RSA 356:11, II, we cannot interpret a phrase in a statute without regard for the context in which it is found.  In the context of the CPA, which is to be construed broadly, <u>see</u> <u>Hughes</u>, 143 N.H. at 578, "any person injured" must encompass consumers, who are often the ultimate purchasers of goods and services in the marketplace.

Furthermore, to the extent RSA 358-A:2, XIV is at issue, its enactment demonstrates the legislature's clear desire to promote the consumer protection policy of competitive pricing.  To adopt the defendants' position and hold that indirect consumers are prohibited from bringing CPA claims would be to prevent the real victims – those who purchase goods at higher prices – from recovering damages for the injuries caused by an alleged violation of RSA 358-A:2, XIV.  Such a result would seriously undermine or erode the expansive remedial goals of the CPA.  <u>See</u> <u>Ciardi</u>, 762 N.E.2d at 313-14 n.19 ("[P]ermitting only direct purchasers to bring a cause of action and retain as damages the amount that they passed along to indirect purchasers . . . [would produce] a windfall at the expense of the true victims further down the distribution chain . . . .").

Our reasoning is supported by the holding in <u>Mack</u>.  There, the court

> f[ou]nd that there is no plain inconsistency or
> repugnancy between the Florida [consumer protection
> statutes] and Antitrust Act which must be

9

> harmonized. . . .  <u>ARC America</u> establishes that two
> statutes, both of which prohibit anticompetitive
> conduct, are not inconsistent merely because one
> allows indirect purchasers to sue for damages and the
> other does not. . . . [T]o accept the argument of the
> defendants, which would eliminate a remedy provided
> to an entire class of consumers – indirect purchasers
> who have been damaged by alleged illegal price-fixing –
> would be wholly contrary to the legislature's intent in
> enacting [Florida's consumer protection statutes].

<u>Mack</u>, 673 So. 2d at 110.

   The defendants argue, as a matter of public policy, that allowing indirect
purchasers to bring suit will have the effect of introducing complex issues of
duplicative liability.  Although this is a legitimate concern, we find persuasive
the Massachusetts Supreme Judicial Court's response to this argument:

> [I]t is the province of the . . . Legislature to make its
> own policy decisions about whether to permit claims
> by indirect purchasers for antitrust violations under
> [state] law.  We read the language of [the consumer
> protection act] as a clear statement of legislative policy
> to protect . . . consumers through the authorization of
> such indirect purchaser actions.  Any disagreement
> with the statute should be directed to the Legislature.

<u>Ciardi</u>, 762 N.E.2d at 314 (footnote omitted).  <u>Ciardi</u> also noted that the
Massachusetts legislature, like ours, eliminated some of the perceived difficulty
in apportioning damages between direct and indirect purchasers by allowing
consumers who prevail under the consumer protection statutes to recover
actual damages or a set dollar amount, whichever is greater.  <u>See</u> <u>id</u>. at n.20;
RSA 358-A:10 (actual damages or $1,000).  Thus, "[t]o the extent that the
plaintiff is able to prevail on the issue of liability but is unable to prove actual
damages, the Legislature has decided that she [or he] is entitled to a specified
remedy."  <u>Ciardi</u>, 762 N.E.2d at 314 n.20.

   Our overall analysis finds support in the Vermont Supreme Court's
decision in <u>Elkins</u>.  <u>Elkins</u>, 817 A.2d at 9.  There, a plaintiff brought a class
action suit against Microsoft under the Vermont Consumer Fraud Act (VCFA),
alleging that it had obtained monopoly power over the computer operating
systems market.  <u>Id</u>. at 11.  After analyzing the VCFA and its legislative history,
as well as <u>Illinois Brick</u>, the court concluded that indirect purchaser suits were
allowed under the VCFA.  <u>Id</u>.  The <u>Elkins</u> decision is persuasive, in part
because the VCFA and RSA chapter 358-A share similar attributes.  For
example, both are broadly worded, <u>id</u>. at 13; <u>Milford Lumber Co. v. RCB Realty</u>,

147 N.H. 15, 17 (2001); neither contains an express privity requirement, Elkins, 817 A.2d at 12; Remsburg, 149 N.H. at 159-60; and both have a similar purpose, Elkins, 817 A.2d at 13 ("'protect the public'"); Chase v. Dorais, 122 N.H. 600, 601 (1982) ("consumer protection").  The defendants are correct to point out that Vermont does not have an antitrust act and does have an Illinois Brick repealer statute, but this circumstance does not render the case any less persuasive.  Although Vermont had a statutory provision authorizing indirect purchaser suits under the VCFA, the court analyzed the issue as if it did not because the provision became effective after the plaintiff's alleged injury. Elkins, 817 A.2d at 17.

Although the defendants correctly note that courts in other jurisdictions have concluded that indirect purchasers may not bring consumer protection claims, their decisions are not persuasive in light of our statutory scheme.  For example, in Davidson v. Microsoft, 792 A.2d 336 (Md. Ct. Spec. App. 2002), cert. denied, 801 A.2d 1032 (Md. 2002), and Sickles, 877 A.2d at 267, the Maryland Court of Special Appeals and the Appellate Division of New Jersey's Superior Court concluded that indirect purchaser suits are barred under each state's consumer protection statute.  However, both courts based their decisions upon their respective consumer protection statute's failure to specify antitrust violations as actionable conduct.  Davidson, 792 A.2d at 344-45; Sickles, 877 A.2d at 276-77.  RSA 358-A:2, XIV, however, expressly includes antitrust violations under the CPA.

In Abbott Laboratories, Inc. v. Segura, 907 S.W.2d 503, 506 (Tex. 1995), the Texas Supreme Court held that indirect purchasers may not bring claims under the state antitrust act, and that allowing indirect purchaser suits under the consumer protection statutes "would essentially permit an end run around the policies allowing only direct purchasers to recover under the Antitrust Act." The court determined that the reasoning of Illinois Brick applied in the context of claims under the consumer protection statutes because those claims "are in essence antitrust claims."  Id. at 507.

The Segura decision is not particularly persuasive for several reasons. First, the Texas Consumer Protection Act defines who may bring suit much more narrowly than RSA chapter 358-A.  Compare TEX. BUS. & COM. CODE ANN. § 17.50 (Vernon 2002 & Supp. 2006) ("A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish . . . .") with RSA 358-A:10, I ("Any person injured").  Second, Texas' consumer protection statutes did not cover monopolistic and price-related conduct, see Segura, 907 S.W.2d at 513 (Gonzalez, J., concurring), whereas at least RSA 358-A:2, XIV does.  Third, two judges persuasively dissented, noting that just because conduct gives rise to an antitrust action should not mean that consumers are denied a remedy under a statute that was designed to protect them, whether they are direct or indirect consumers.  Id. at 516 (Gammage & Spector, JJ., dissenting).

11

Finally, the defendants rely upon <u>Vacco v. Microsoft Corp.</u>, 793 A.2d 1048, 1050 (Conn. 2002).  There, the Connecticut Supreme Court held that a "plaintiff is barred from bringing a claim under [the Connecticut Unfair Trade Practices Act (CUTPA)] because his alleged injuries are too remote with respect to the defendant's alleged conduct." <u>Id</u>.  The <u>Vacco</u> Court based its conclusion upon a three-part test for remoteness and proximate causation.  <u>Id</u>. at 1066-67.  To the extent the defendants argue that these particular plaintiffs cannot show a sufficiently close connection between themselves and the defendants' alleged conduct, their arguments relate to whether the plaintiffs can prove their claim under the CPA – not to whether they are entitled, as indirect purchasers, to bring that claim in the first place.  <u>See</u> <u>Illinois Brick</u>, 431 U.S. at 728 n.7 (explaining that who is "injured" is "analytically distinct from the question of which persons have sustained injuries too remote to give them standing to sue for damages . . . ."); <u>accord</u> <u>Ciardi</u>, 762 N.E.2d at 313.

Accordingly, given the broad protections afforded by RSA chapter 358-A, we conclude that the plaintiffs set forth sufficient allegations to survive the defendants' motion for judgment on the pleadings.

<u>B.  Class Certification</u>

RSA 358-A:10-a (1995 & Supp. 2006) governs when a class action may be maintained under the CPA.  It provides, "Persons entitled to bring an action under RSA 358-A:10 may, if the unlawful act or practice has caused similar injury to numerous other persons, institute an action as representative or representatives of a class of persons . . . to recover actual damages . . . ."  RSA 358-A:10-a, I.

The superior court observed that "RSA 358-A:2 expressly includes 'unfair method[s] of competition' in the types of claims that may be brought under the CPA.  In contrast . . . RSA 358-A:10-a . . . omits 'unfair method[s] of competition' in its statement of the types of claims that may be brought as class actions."  Thus, the court reasoned, if the plaintiffs' allegations involve only methods of competition, they may not bring a class action.  The superior court then determined that the plaintiffs' allegations did indeed encompass only unfair methods of competition, and therefore the plaintiffs were precluded from bringing a class action.  On appeal, the plaintiffs contend that their allegations need not be pigeonholed into a category of "unfair methods" because the conduct they allege against the defendants also constitutes unlawful acts and practices.

As the Massachusetts Supreme Judicial Court reasoned, "antitrust violations are actionable under [the consumer protection act] not only because they are unfair methods of competition, but also because they constitute unfair acts or practices, and because the Legislature did not explicitly preclude

antitrust activity as a violation of" the consumer protection act.  Ciardi, 762 N.E.2d at 311 n.17 (citation omitted).  This reasoning is compelling, given our statutory scheme.  RSA 358-A:10-a, I, permits class actions for "unlawful act[s] or practice[s]."  RSA 358-A:2 defines "**Acts Unlawful**" as "any unfair method of competition or any unfair or deceptive act or practice."  Thus, by its plain terms, "**Acts Unlawful**" includes "unfair method[s] of competition."  RSA 358-A:2; RSA 358-A:10-a, I.

Furthermore, to the extent the parties argue over the applicability of RSA 358-A:2, XIV, the statute specifically states that "unfair method of competition or unfair or deceptive act or practice shall include, but [not be] limited to . . . [the] [p]ricing of goods or services in a manner that tends to create or maintain a monopoly, or otherwise harm competition."  Thus, the legislature made no effort to force this type of antitrust activity into an "unfair method" category for purposes of the CPA.  To the contrary, the plain language of the statute indicates that "acts or practices" includes the conduct set forth in RSA 358-A:2, XIV.  We discern no principled reason to pigeonhole the conduct here alleged into the category of "unfair method" for purposes of the CPA.  To conclude otherwise would erode the broad remedial goals of the CPA and elevate form over substance.

Accordingly, we conclude that the superior court erred in ruling that the allegations against the defendants are not susceptible to class certification.  Thus, we reverse its ruling in this regard and remand for further proceedings consistent with this opinion.


## IV.  Conclusion

For the foregoing reasons we conclude that indirect purchasers may bring claims under the CPA.  We also conclude that they are not precluded from attempting to certify a class of indirect purchasers under RSA 358-A:10-a.

Reversed and remanded.

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.

13