1  ANDREA VALDEZ (Cal. Bar No. 239082)
   530 S. Lake Avenue, No. 574
2  Pasadena, CA 91101
   Tel: (626) 817-6547
3  andrea.valdez.esq@gmail.com

4  JOSEPH SCOTT ST. JOHN (*pro hac vice*)
   514 Mockingbird Drive
5  Long Beach, MS 39560
   Tel: 410-212-3475
6  jscottstjohnpublic@gmail.com

7  *Attorneys for Objector Douglas W. St. John*

8

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

                      SAN FRANCISCO DIVISION
11

12  **IN RE CATHODE RAY TUBE (CRT)**          Master File No. 3:07-cv-5944 JST
    **ANTITRUST LITIGATION**
13                                            MDL No. 1917

14                                            **OBJECTOR DOUGLAS W. ST. JOHN'S**
                                              **OPPOSITION TO IPP COUNSEL'S**
15                                            **STIPULTION TO MODIFY**
                                              **SCHEDULING ORDER**
16                                            **NO. 1 (D.E. 4172)**

17  This Document Relates To:               Judge: Hon. Jon S. Tigar
    All Indirect Purchaser Actions
18

19

20

21

22

23

24

25

26

27

28

# I.   SCHEDULING ORDER NO. 1 SHOULD NOT BE MODIFIED.

## A.   IPP Counsel do not even attempt to show good cause for modification.

The Federal Rules of Civil Procedure permit modification of a scheduling order "***only*** for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also, e.g., Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608, 610 (9th Cir. 1992). The requirement for good cause cannot be circumvented by a stipulated modification. *See, e.g., Chiropractic Alliance of N.J. v. Parisi*, 164 F.R.D. 618, 621 (D.N.J. 1996). Here, IPP Counsel proffer a stipulation to modify the Scheduling Order that does not even attempt to show good cause. Indeed, it does not even include those words.[1]

On the merits, "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the [modification]." *Johnson*, 975 F.2d at 609. "If that party was not diligent, the inquiry should end," and the request to modify should not be granted. *Id.* Here, IPP Counsel's sole rationale for modifying the Scheduling Order is that "eleven objections to the requested attorneys' fees and approval of the proposed settlements have been filed, three of which were not filed with the Court until long after the October 8, 2015 deadline for objections (*see* Dkt. Nos. 4128, 4140, and 4144)." Stipulation (D.E. 4172) at 1. But D.E. 4128 totaled only two pages and was filed on October 16; D.E. 4140 included only twelve substantive pages and was filed on October 24; and D.E. 4144 included only five substantive pages and was filed on October 26. IPP Counsel provide no explanation of why they were unable to meet the November 6 deadline if they diligently tried to do so, even vis-à-vis those three tardy objections. Indeed, it is hard to fathom how eleven days was not sufficient for IPP Counsel to respond to the latest of those short objections, particularly given that objectors had only fifteen days to analyze and object to IPP Counsel's 1500+ page fee request. But even if the Court concludes that the tardy objections warrant additional time, IPP Counsel's proffered rationale establishes good cause ***only*** with respect to the three tardy objections, not timely-filed objections such as Mr. St. John's.

---

[1]    Objectors are generally not considered parties to the litigation. Fed. R. Civ. P. 4(a)(1); *see generally Devlin v. Scardelletti*, 536 U.S. 1 (2002). It nevertheless seems odd to permit IPP Counsel to unilaterally stipulate with the settling defendants to modify a scheduling order that principally affects non-party objectors. *Cf.* Civ. L.R. 7-12 (stipulations must be "signed by all affected parties").

**B.    Objectors and their counsel will be prejudiced by the proposed modification.**

*First*, objectors had only 15 days to object to IPP Counsel's 1500+ page fee request, and the proposed schedule similarly provides objectors with only 12 days to reply. Yet IPP Counsel inexplicably try to grant themselves over **6 weeks** to draft oppositions to the handful of generally brief objections. Such disparate briefing periods are inherently unfair and prejudicial.

*Second*, some counsel undertook other obligations in reliance on the Court's Scheduling Order. St. John Dec. Ex. 2B (counsel noting that she would be out of the country). Many noted that IPP Counsel were needlessly attempting to burden objectors with quick-turn briefing over **both** Thanksgiving and Christmas. *Id.* at Ex. 2. The requirement that scheduling orders be modified only for good cause protect litigants and counsel from the prejudice of arbitrarily changing schedules. But that is precisely the result of IPP Counsel's proposal, and that prejudice is yet another reason to deny IPP Counsel's stipulation. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000).

## II.    IPP COUNSEL'S PROFFERED RATIONALE FOR MODIFICATION IS A FIG LEAF FOR THEIR NEED TO COUNTER THE RESULTS OF IMPROPER DISCOVERY.

IPP Counsel's untimely "stipulation" to delay responding to objections is not the first time they ignored the Court's scheduling orders. Discovery in this matter closed on September 5, 2014. Stipulation (D.E. 2459). But rather than seek an order authorizing discovery and modifying the Scheduling Order accordingly, IPP Counsel simply issued subpoenas to every objector and demanded that they submit to depositions before the November 6 deadline for IPP Counsel's responses. One of those depositions blew up in IPP Counsel's faces, and their proffered rationale for more time is almost certainly a fig leaf for more time to craft a response.

\*    \*    \*    \*    \*

Mr. St. John appeared involuntarily for deposition on Monday, November 2, although the subpoena directed to him was objectionable. *Cf. Theofel v. Farey-Jones*, 359 F.3d 1066, 1074-75 (9th Cir. 2004) ("Fighting a subpoena in court is not cheap, and many may be cowed into compliance with even overbroad subpoenas . . . ."). Mr. St. John's testimony turned out to be problematic for IPP Counsel: as detailed below, he called into question two representations by IPP Counsel that the Court expressly relied on in granting class certification. Of course, if the Court finds that IPP

Counsel made misleading representations, it would justify reducing or completely denying their fee request. *See Rodriguez v. Disner*, 688 F.3d 645, 653-58 (9th Cir. 2012).

Mr. St. John first testified regarding IPP Counsel's representation that the manufacturer of the CRT tube in a CRT product can be identified

> by using the product model number printed on the outside of the unit. The model number can be matched with the corresponding service guides, service manuals or other publicly available information to reveal the tube number, which is unique to a specific manufacturer.

Reply Br. ISO IPP's Mot. for Cert. (D.E. 1654) at 38. Mr. St. John testified that he believed that representation was misleading. St. John Dep. Vol. 4 27:08-38. He explained that some service manuals identify only the tube number, not the tube manufacturer. *Id.* at 27:38-28:09. Indeed, Mr. St. John testified that he was unable to identify the tube manufacturer for one of his own televisions despite reviewing the service manual and searching publicly available information. St. John Dep. Vol. 4 27:38-28:08, 22:30-39; *see also* J. St. John Dec. Ex. 3 (service manual not identifying tube manufacturer). Mr. St. John further explained that—in his experience—service manuals often must be purchased, i.e., they are not freely available to consumers. St. John Dep. Vol. 4 22:39-50.

Mr. St. John then testified about IPP Counsel's representation the manufacturer of the CRT in a CRT product can be identified

> by removing the screws from the back of the product and viewing the name of the tube maker or the tube number, which is typically printed in large, bold letters on the tube itself. Contrary to Defendants' assertions, this is a simple process that can be accomplished in a few moments with the use of a screwdriver.

Reply Br. ISO IPP's Mot. for Cert. (D.E. 1654) at 39. Mr. St. John testified that he believed this representation was misleading, too. St. John Dep. Vol. 4 28:12-29:14. Mr. St. John explained that his CRT televisions have warnings against opening the back of the television. *Id.*; *see also id.* at 18:25-55, 24:10-45; J. St. John Dec. Exs. 4, 5. He also testified the user manuals for those televisions warn consumers not to open the back due to the risk of electric shock. St. John Dep. Vol. 4 28:12-29:14; *see also id.* at 19:25-52, 25:00-50; J. St. John Dec. Exs 6, 7. Mr. St. John explained that the risk of shock is real, and it cannot be eliminated by simply unplugging the television. St. John Dep. Vol. 4

29:15-30:04. Finally, Mr. St. John testified that he believed it would be unsafe for consumers to open the back of their CRT televisions without professional assistance. *Id.* at 36:01-20.

Mr. St. John was not an ordinary witness on these issues: he has extensive experience with high voltage electronic equipment. That experience began in the late 1960s, when Mr. St. John was trained by the Air Force in the repair complex electronics, including the safe repair of high voltage electronic equipment. St. John Dep. Vol. 4 30:14-31:09. He was sufficiently skilled that the Air Force posted him to a remote duty station where he was the sole maintenance man for a navigation aid relied on by aircraft returning from combat missions over North Vietnam. *Id.* at 31:11-32:06.

After being discharged from the Air Force, Mr. St. John earned a B.S. and a M.S. in electrical engineering. St. John Dep. Vol. 4 32:58-33:12. He has 31 years of experience as an electrical engineer in the field of system protection, i.e., "power system . . . devices to detect [faults] and de-energize [the system] in the event something goes wrong." St. John Dep. Vol. 1 2:27-3:10, Vol. 4 35:31-40. He taught electrical engineering courses at the University of South Alabama and the University of Southern Mississippi, and he instructed apprentice electricians at a trade school. *Id.* at Vol. 4 33:56–35:00. Mr. St. John was responsible for training both his students and his subordinates on how to safely work on high voltage equipment. *Id.* at 33:45-56, 35:00-20. Mr. St. John has specific training in the repair of CRT televisions, and he has in fact repaired such televisions. *Id.* at 32:50-57. In short, Mr. St. John is undoubtedly qualified to testify on issues related to CRT television repair, including safety concerns with consumers opening the back of their CRT televisions.

IPP Counsel initially refused to proffer a reason for deposing Mr. St. John. J. St. John Dec. Ex. 8. Rather, IPP Counsel insisted they were "entitled" to do so. *Id.* IPP Lead Counsel Mario Alioto eventually explained that objectors were subpoenaed "to weed out guys that are off the wall," and that "a couple of objections drop[ped] out" as a result. J. St. John Dec. Ex. 11. That purpose was improper. *See, e.g.*, *Mattel, Inc. v. Walking Mtn. Prods., Inc.*, 353 F.3d 792, 813-14 (9th Cir. 2003).

In an attempt to avoid the time and expense of a deposition, IPP Counsel were provided an overview of Mr. St. John's likely testimony. *See* J. St. John Dec. Ex. 8. They nevertheless insisted on deposing Mr. St. John over his objection. *Id.*; *see also* St. John Dec. Ex. 12. Now that IPP Counsel's unauthorized and improper deposition has blown up in their face, they seek additional time to craft

a response, using the fig leaf of three minimally late objections that are in no way connected to Mr. St. John. Granting their request would be unfair, and it would allow IPP Counsel to avoid the consequences of their ill-thought campaign to discourage objectors via burdensome subpoenas.[2]

### III.   IPP COUNSEL FAILED TO TIMELY SEEK MODIFICATION OF THE SCHEDULING ORDER.

Viewed in context with the outcome of IPP Counsel's discovery campaign, the rationale for their proposal to modify the Scheduling Order is apparent. That does not excuse its untimeliness. IPP Counsel sat on the issue until 8:52 p.m. the night before their opposition was due, then attempted to present objectors with a *fait accompli* stipulation to amend the Scheduling Order, with the upshot of proposing new deadlines that would significantly burden objectors. When the objectors balked at that proposal, IPP Counsel proceeded to file a minimally revised stipulation at 4:31 p.m. the following day, i.e., the day their opposition was due, without consulting the objectors.

Prior to IPP Counsel's untimely filing, counsel for Mr. St. John objected and noted that "no order amending [the] Scheduling Order . . . has been entered." J. St. John Decl. Ex. 13. He specifically objected "to any opposition filed after the November 6, 2015, deadline set in Scheduling Order No. 1, including any factual or expert testimony (including via declarations) developed after that deadline." *Id.* Mr. St. John's counsel noted that his objection was timed "to permit IPP Counsel to comply with Scheduling Order No. 1." *Id.*

"A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610. IPP Counsel did precisely that. They consciously declined to timely file an opposition to Mr. St. John's objection **or** timely seek modification of Scheduling Order No. 1, despite specific objections on these points. Accordingly, IPP Counsel's proposed modification should be rejected, and the Court should strike any opposition filed and any evidence adduced after the November 6, 2015, deadline.

---

[2]   The record indicates that defendants held approximately 90% of the CRT market. Any misleading representations on these points thus do not necessarily undercut the ascertainability of the settlement class. *See Lilly v. Jamba Juice Co.*, No. 13-2998-JST 2014 WL 4652283, at *6 (N.D. Cal. Sept. 18, 2014) ("If the problem is that some absent class members may get less relief than they are entitled to, it would be a strange solution to deprive absent class members of any relief at all.").

Dated: November 9, 2015

Respectfully submitted,

/s/ Joseph Scott St. John

ANDREA VALDEZ (Cal. Bar No. 239082)
530 S. Lake Avenue, No. 574
Pasadena, CA 91101
Tel: (626) 817-6547
andrea.valdez.esq@gmail.com

JOSEPH SCOTT ST. JOHN (*pro hac vice*)
514 Mockingbird Drive
Long Beach, MS 39560
Tel: 410-212-3475
jscottstjohnpublic@gmail.com

*Attorneys for Objector Douglas W. St. John*