JOSEF D. COOPER (CA SB 53015)
TRACY R. KIRKHAM (CA SB 69912)
JOHN D. BOGDANOV (CA SB 215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA 94105
Telephone:   (415) 788-3030
Facsimile:    (415) 882-7040
Email:          jdc@coopkirk.com
                    trk@coopkirk.com
                    jdb@coopkirk.com

*Counsel for Indirect-Purchaser Plaintiffs*

FRANCIS O. SCARPULLA (CA SB 41059)
PATRICK B. CLAYTON (CA SB 240191)
LAW OFFICES OF FRANCIS O. SCARPULLA
456 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone:   (415) 788-7210
Facsimile:    (415) 788-0706
Email:          fos@scarpullalaw.com
                    pbc@scarpullalaw.com

*Counsel for Indirect-Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION. | **Master File No. 3:07-cv-5944 JST**<br><br>**MDL No. 1917** |
| This Document Relates to:<br><br>All Indirect-Purchaser Actions. | **OBJECTION TO STIPULATION AND [PROPOSED] ORDER AMENDING SPECIAL MASTER'S SCHEDULING ORDER NO. 1 AND REQUEST FOR ALTERNATIVE SCHEDULE**<br><br>Judge: The Hon. Jon S. Tigar<br>Special Master: Martin Quinn, Esq. |

## I. THE CURRENTLY PROPOSED SCHEDULE IS UNDULY BURDENSOME AND FAILS TO PROVIDE ADEQUATE TIME FOR A REASONED CONSIDERATION OF THE RELEVANT ISSUES

The Special Master's Scheduling Order No. 1 (Dkt. 4121) provided a schedule for the preparation and issuance of a Report and Recommendations on: (1) all issues related to the final approval of the proposed settlements, including the proposed plan for distributing the settlement proceeds, and (2) Indirect Purchaser Plaintiffs' ("IPP") Lead Counsel's Motion for Attorneys' Fees, Expenses, and Incentive Awards (Dkt. 4071) ("Lead Counsel's Fee Motion").[1]  The proposed settlements and Lead Counsel's Fee Motion are the subject of numerous objections filed by certain counsel of record for plaintiffs in this litigation, as well as by counsel for putative members of the proposed nationwide settlement class.  Some are directed to whether the proposed settlements should be recommended for final approval, including whether the proposed nationwide Settlement Class should be certified, and others directed to whether the Lead Counsel's Fee Motion should be granted.  All raise significant questions that must be resolved by this Court.

Lead Counsel have submitted a "Stipulation and [Proposed] Order Amending Special Master's Scheduling Order No. 1," (Dkt. 4172) that contains the following deadlines:

November 20, 2015 -- Briefs in opposition to objections to final approval of the proposed settlements and to Lead Counsel's Fee Motion.

---

[1]  The order of reference to Martin Quinn, as Special Master, (Dkt. 4053-1) includes these issues and also the task of recommending a division of an aggregate fee award among plaintiffs' counsel.  Following the entry of that order, the undersigned filed a request for modification of the schedule contained therein in which we advocated that the Fairness Hearing scheduled for November 13, 2015, be continued to allow a reasonable time for the Special Master to produce a Report and Recommendations on the issues (including anticipated objections) relevant to the Court's consideration of final settlement approval and the award of attorney's fees from the common fund. Dkt. 4062.  We also suggested that the apportionment of the aggregate fee award among plaintiffs' counsel be deferred for separate consideration by the Special Master after the Court determines an appropriate common fund fee.  Both of these suggestions were incorporated into the Special Master's Scheduling Order No. 1.

December 2, 2015 – Reply briefs by objectors.

December 23, 2015 – Special Master's Report and Recommendations.

January 12, 2016 – Objections to Report and Recommendations.

January 19, 2016 – Oppositions to objections to Report and Recommendations.

February 23, 2016 – Hearing on final approval of the proposed settlements, aggregated fees and costs and incentive awards.

This is an extremely tight schedule for the briefing of objections to the proposed settlements and Lead Counsel's Fee Motion. Not only is it onerous and burdensome on all objecting parties, putting their briefing periods during the Thanksgiving and Christmas holidays, it is not likely to provide sufficient time for the Special Master to fully evaluate the merits of the proposed settlements and the objections raised to final approval, and to generate complete and reasoned findings of fact, conclusions of law and recommendations for the Court. Add to this, the additional burden imposed by the schedule of evaluating Lead Counsel's Fee Motion, considering the objections thereto and performing the inquiry mandated by the Ninth Circuit in order to arrive at a recommendation on an aggregate fee, and the proposed schedule becomes totally unworkable.

The Special Master's Scheduling Order No. 1, entered on October 9, 2015, also set a very abbreviated schedule for consideration these issues, although it did provide that the "dates may be moved by the Special Master or the Court based on the future needs of the case." Dkt. 4121.[2] At 8:52 PM on November 5, 2015, the day before Lead Counsel's brief in opposition to the objections was due, the undersigned and other counsel who had filed objections were served by email with a draft of a "Stipulation and [Proposed] Order Amending the Special Master's Scheduling Order No. 1," which according to Lead Counsel contained dates received that day from the Special Master. The email informed counsel that the Special Master wanted the

---

[2] A chart with the scheduled and requested dates relevant to this Objection is included in the Declaration of Josef D. Cooper ("Cooper Decl."), filed concurrently herewith.

OBJECTION TO STIPULATION AMENDING        - 2 -    Master File No. 3:07-cv-5944 JST
SPECIAL MASTER'S SCHEDULING ORDER NO.              MDL 1917
1

1 Stipulation filed as soon as possible and that Lead Counsel intended to file it with the Court by
2 2:00 PM the following day.[3]

3       The proposed Order attached to Lead Counsel's email contained a briefing schedule that extended Lead Counsel's date for filing an opposition brief to the settlement objections by fourteen days, from November 6th to November 20th, the Friday before Thanksgiving Week. Objectors' reply briefs would be due on Monday, November 30th, the first business day after Thanksgiving Week.[4]  There followed a flurry of emails to both Lead Counsel and Martin Quinn, the Special Master, objecting to both this aspect of the proposed schedule and the fact that any objections to the Special Master's Report and Recommendations, which was scheduled to be filed on December 14th, would be due on December 30th, thus, necessitating briefing during the week between Christmas and New Year's Day.

      At 9:21 AM on November 6th, the Special Master emailed counsel saying that "you have been heard," and informing them that he had instructed Lead Counsel to revise the proposed schedule to provide "additional time" for objectors' briefing.  The result is the current Stipulation and [Proposed] Order, which gives objectors two additional business days after Thanksgiving and seven business days that are not in the week between Christmas and New Year's Day in which to draft briefs.

      This rushed schedule will not be conducive to a speedy resolution of the litigation, and should be rejected by the Court.  Rather, it will simply provide the impetus for objectors to argue on appeal that the Court failed to provide an adequate opportunity for their voices to be heard, but rather, forced them into an unduly burdensome and onerous briefing schedule designed to place

---

[3]  A true and correct copy of this email and copies of the other emails referred to herein are attached as exhibits to the Cooper Decl.

[4]  The designation of the proposed scheduling order as a "stipulation" was somewhat misleading since the parties stipulating with Lead Counsel to change the schedule were the settling defendants, rather than the objectors whose briefing schedule was at issue.

OBJECTION TO STIPULATION AMENDING    - 3 -    Master File No. 3:07-cv-5944 JST
SPECIAL MASTER'S SCHEDULING ORDER NO.    MDL 1917
1

them at a disadvantage in advocating for the best interests of other absent class members. There is simply no reason that this should become an issue.

As will be described below, there are serious questions that must be given thorough and measured consideration by this Court that go to the grant of final approval of these proposed settlements and/or to the distribution proposed for the settlement proceeds. These issues cannot be swept under the rug in a rush to judgment. It goes without saying, that if final approval of the proposed settlements cannot be granted, then there is no need to expend the judicial resources for the Special Master or the Court to determine a reasonable attorney's fee. Accordingly, undersigned counsel respectfully propose that any revision to Scheduling Order No. 1 set dates for briefing and issuance of a Report and Recommendations directed only to issues regarding the approval of the proposed settlements. The schedule for consideration of an appropriate aggregate attorney's fee award (and previously-filed objections to Lead Counsel's Fee Motion) should be set by the Court, if necessary, after the issues going to approval of the proposed settlements are resolved.

## II. A SCHEDULE THAT PROVIDES FOR SEPARATE CONSIDERATION OF THE ISSUES RELATING TO FINAL APPROVAL BEFORE FEE AWARD ISSUES IS LOGICAL AND WOULD BEST CONSERVE THE RESOURCES OF THE COURT, THE SPECIAL MASTER AND THE PARTIES

Twelve objections have been filed to the proposed settlements and Lead Counsel's Fee Motion.[5] Of these objections, nine raise issues concerning the terms of the proposed settlements and/or the proposed procedures for distributing the settlement proceeds. *See* Dkt. 4099; 4101; 4111; 4112; 4113; 4115; 4116; 4118; and 4144. Principally, these objections arise from the fact that, under the Proposed Settlements, all purchasers of CRT Products in the United States have or will provide defendants with the identical comprehensive release of all injunctive and monetary

---

[5] A chart briefly describing the principal issues raised in each of the objections is attached hereto for the Court's convenience.

OBJECTION TO STIPULATION AMENDING           - 4 -      Master File No. 3:07-cv-5944 JST
SPECIAL MASTER'S SCHEDULING ORDER NO.                  MDL 1917
1

claims, while the settlements provide no injunctive relief and the proposed plan of distribution gives all of the monetary consideration obtained in settlement to a subset of CRT Product purchasers in certain specified states. This means that the proposed nationwide settlement class includes a significant number of persons and entities who/that will receive no consideration or benefit in return for releasing the defendants. This lack of consideration raises significant Constitutional issues regarding the scope of the release, as well as issues going to the fairness, reasonableness and adequacy of the proposed settlements and plan of distribution.

Constitutional issues have also been raised in eight objections going to the adequacy of the Notice provided to the persons who will be bound by the settlements if approval is granted, including objections filed by the undersigned and the Attorney General of California. See Dkt. 4101; 4111; 4112; 4113; 4115; 4118; 4119; and 4128. The presence of these issues here presents particularly complex questions that must be addressed in the context of settlement approval, which differentiate this litigation from prior major antitrust cases where objections to approval of the settlements tended to fall more along the lines of "class counsel settled too cheaply because the litigation was really a slam dunk."

Eight objections were addressed to Lead Counsel's Fee Motion. *See* Dkt. 4099; 4101; 4106; 4111; 4112; 4115; 4128; and 4140. Certain of these objections are based on the assertion that this is a "mega-fund" case, and raise the issue of whether, as matter of law, an aggregate percentage of the fund fee award in "mega-fund" litigation should be below the Ninth Circuit's 25% benchmark. Other of the objections, however, are tied to the specific manner in which Lead Counsel chose to conduct the litigation, and challenge the assertions made in support of the requested aggregate fee of 33.3% of the settlement proceeds. The objection filed by the undersigned asserts that given the unique staffing decisions made by Lead Counsel in this litigation, an aggregate fee award arrived at through a "bottom-up" lodestar with multiplier enhancement process, rather than a "top-down" percentage of the fund analysis, would be more in the interests of the members of any settlement classes that may be certified. *See*, Dkt. 4115.

As discussed above, the currently proposed schedule requires that all of these issues be briefed by Lead Counsel by November 20, 2015, which date is the Friday before Thanksgiving, and that responses to Lead Counsel be filed by the third business day after the Thanksgiving week.[6] Leaving aside whether putting objectors to the task of working through the Thanksgiving holiday is unduly onerous, the undersigned submit that even eight business days is not sufficient time to adequately evaluate and address all of the issues implicated in the approval of the proposed settlements here and the award of an aggregate attorney's fee. Neither, we submit, is the twenty-one days provided in the proposed schedule for the Special Master to evaluate the record, consider the briefing, and produce his Report and Recommendations an adequate period to accomplish these tasks.[7]

Accordingly, we respectfully request the Court to set a schedule at this time solely for its consideration of issues related to final approval of the proposed settlements, including the plan of distribution and the adequacy of notice. There is no reason in law or practice to tie consideration of a fee award to the determination of whether or not to approve a settlement.

Indeed, the question of what fee should be paid from a common fund is not ripe for adjudication unless and until a common fund has been established by a court's determination to

---

[6] Many of the counsel wishing to be heard on the subjects of the settlement approval and fee award request have informed Lead Counsel and the Special Master that they have long-standing personal commitments with family during Thanksgiving week. We agree that forcing the briefing to occur during that time and to be done in the first three business days of the following week, seems unreasonably harsh. The two days added to the schedule after counsel's complaints are simply not adequate.

[7] As will be discussed below, the Hon. Charles B. Renfrew, Special Master, in *In re Dynamic Random Access Memory (DRAM) Antitrust Litig*, Master File No. M-02-1486 PH ("*DRAM*") spent years reviewing the record, conducting evidentiary hearings, encouraging negotiations and compromise among the constituencies before him, and writing hundreds of pages of findings of fact and conclusions of law on the issues of settlement approval and an aggregate fee award in that litigation. Although there were extenuating circumstances in *DRAM* that protracted the proceedings before Judge Renfrew, his work there does provide evidence that the schedule currently proposed here is not adequate.

OBJECTION TO STIPULATION AMENDING - 6 - Master File No. 3:07-cv-5944 JST
SPECIAL MASTER'S SCHEDULING ORDER NO. MDL 1917
1

give final approval to a settlement. Accordingly, and not surprisingly, the amount of attorney's fees to be awarded is not among the factors utilized to arrive at the determination to approve a settlement as an appropriate end to class litigation. Instead, "the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice v. San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

The factors to be balanced by the Court in deciding whether a settlement is fair, reasonable and adequate generally fall into the following categories:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 625 (internal citations omitted); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

The evaluation of a fee award request implicates an analysis of factors that are not considered for final approval of a settlement. Chief among them is a balancing the benefits that were obtained for the class against the efforts expended by class counsel. Looking at class counsel's lodestar, and deciding whether the lodestar reflects appropriate hourly rates and efficient staffing, or whether it should be reduced to account for duplicative efforts and other inefficiencies, is the method generally used to quantify those efforts. Other factors going to the award of fees are the percentages and fees awarded in similar cases, and the percentage fees generally provided in standard contingency-fee agreements. *See, e. g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049-1051 (9th Cir. 2002). Like the lodestar evaluation, none of these issues has any relevance to settlement approval.

Since the fee question is distinct from the final-approval analysis, even where they are considered as part of the same briefing and hearing schedule, courts inevitably analyze these issues serially. Indeed, as Judge Conti did in this litigation, it is not unusual for a court to

entertain and decide motions for final settlement approval months or even years before a fee request is filed. *See*, Dkts. 1105 and 2542.

This also occurred in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Master File No. M 07-1827 SI ("*LCD*"), where Judge Susan Illston gave final approval to the global settlement of the litigation in two distinct groupings, the first in 2012, and the second in 2013. Counsel's request for attorney's fees was filed following preliminary approval of the second group of settlements, but was considered separately by the court. Indeed, in *LCD*, Mr. Quinn, the Special Master here, was appointed by Judge Illston at the time the second group of settlements were under consideration, but only to make recommendations as to the motion for an aggregate attorney's fee, and the division of the aggregate fee award among counsel. There, he was not tasked with recommending whether the proposed settlements should be given final approval or the plans of distribution proposed by Co-lead Counsel should be adopted. *See, In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 49885 (N.D. Cal. Apr. 1, 2013).

Conversely, in *In re Dynamic Random Access Memory (DRAM) Antitrust Litig*, Master File No. M-02-1486 PH ("*DRAM*"), Judge Renfrew's reference as Special Master included making recommendations regarding approval of the proposed settlements and settlement classes, the fixing of plans of distribution, and an aggregate attorney's fee award, as well as determining the proper dissemination protocols and contents of class notices. [8] There, Judge Renfrew determined that these issues should be divided for consideration and logically sequenced. Accordingly, in early 2013, after many months of intensive work, Judge Renfrew issued a 200-page Report and Recommendations, Part I ("R&R I"), on final approval of the settlements, the certification of the settlement classes pursuant to Rule 23, and the determination of a fair and

---

[8] *DRAM* was unusual in that Chief Judge Hamilton referred the settlement issues to Judge Renfrew prior to making a determination of whether to preliminarily approve the settlements and order notice. *See, All Indirect Purchaser Actions v. Infineon Techs. AG (In re Dynamic Random Access Memory (Dram) Antitrust Litig.),* 2014 U.S. Dist. LEXIS 89622 at *85-86 (N.D. Cal. June 27, 2014), the Court's grant of final approval which notes that preliminary approval of the settlements was granted on January 17, 2014, following the filing of Parts I and II of the R&R.

OBJECTION TO STIPULATION AMENDING                - 8 -        Master File No. 3:07-cv-5944 JST
SPECIAL MASTER'S SCHEDULING ORDER NO.                          MDL 1917
1

1  adequate plan for distributing the settlement proceeds.  *See, All Indirect Purchaser Actions v.*

2  *Infineon Techs. AG (In re Dynamic Random Access Memory Antitrust Litig.),* 2013 U.S. Dist.

3  LEXIS 188116 (N.D. Cal. Jan. 7, 2013), which contains the R&R I in its entirety.   Six months

4  later, Judge Renfrew issued a somewhat shorter Report and Recommendations, Part II ("R&R II"),

5  on the issues of notice to the proposed settlement classes.  *See, All Indirect Purchaser Actions v.*

6  *Infineon Techs. AG (In re Dynamic Random Access Memory (Dram) Antitrust Litig.),* 2013 U.S.

7  Dist. LEXIS 188128 (N.D. Cal. June 24, 2013), which contains the R&R II in its entirety.

8  Following Chief Judge Hamilton's January 17, 2014, grant of preliminary approval, Judge

9  Renfrew issued a third part to his Report and Recommendations (longer than Part II, but shorter

10 than Part I), which contained his findings and recommendations as to an appropriate award of

11 aggregate attorneys' fees, cost reimbursement and incentive awards to the named plaintiffs.

12 Cooper Decl. at ¶ 4.

13     While the issues presented in this litigation may not require the same expenditure of time

14 and effort by the Special Master as those in *DRAM,* the undersigned submit that the schedule

15 currently proposed here simply does not provide sufficient time for the parties or the Special

16 Master to give the issues presented the required consideration. The currently proposed schedule

17 gives the Special Master a mere twenty-one days, ending two days before Christmas, from the

18 filing of briefs responsive to Lead Counsel's defense of the settlements and fee request in which to

19 evaluate the briefing, conduct any inquiries he may deem appropriate and draft and finalize his

20 Report and Recommendations.  By way of example, even if the Special Master rejects the

21 undersigned's suggestion that a lodestar-multiplier analysis be used to arrive at an appropriate

22 aggregate fee, scrutiny of the lodestar reported by Lead Counsel must be undertaken in the

23 "lodestar cross-check" mandated by the Ninth Circuit when the percentage of the fund approach is

24 employed.  *See, e.g., Vizcaino v. Microsoft Corp., supra,* 290 F.3d at 1048-50.  The amount of the

25 lodestar submitted by Lead Counsel is the subject of numerous objections, and a considered

26 evaluation of those objections, even in the context of a percentage of the fund award, will, at a

27 minimum, require scrutiny of the declarations of 49 law firms which run to nearly 1,300 pages in

28

OBJECTION TO STIPULATION AMENDING         - 9 -     Master File No. 3:07-cv-5944 JST
SPECIAL MASTER'S SCHEDULING ORDER NO.               MDL 1917
1

1  summary form.  *See* Dkt. 4073 (Compendium of IPP Counsel Declarations In Support of Motion
2  For Attorneys' Fees, Reimbursement of Expenses and Incentive Awards).[9]
3        Nowhere has Lead Counsel or the Special Master addressed the question of the necessity
4  or advisability of this Court's adopting the extraordinarily compressed schedule they have
5  proposed for hearing, evaluating, resolving and elucidating in findings of fact, conclusions of law
6  and recommendations, the significant number of complex issues that have been referred to the
7  Special Master.  Indeed, there is no need to rush the Special Master's work, or impose a briefing
8  schedule on objectors that on its face raises questions of whether a full and fair opportunity to be
9  heard was provided.  The settlement approval objections here raise serious Constitutional issues
10 regarding the certification of the proposed nationwide Settlement Class in light of the scope of the
11 release being given by all members of the Class, many of whom will receive no benefit from the
12 settlements under the currently proposed plan for distributing the settlement proceeds.  The fee
13 award objections call for a complete analysis of the hours offered by Lead Counsel as justification
14 for an aggregate fee that exceeds the Ninth Circuit benchmark.  Nothing can be gained other than
15 creating questions for resolution on appeal by cutting short a full consideration of these issues.

## III.   CONCLUSION

      Respectfully, the undersigned counsel request that the Special Master's Scheduling Order No. 1 be amended to set a reasonable schedule pursuant to which the Special Master will first prepare a Report and Recommendations on final approval of the proposed settlements, including certification of settlement classes and a plan for distributing the settlement proceeds.  Then, after these issues are resolved by the Court, the parties, including counsel for class member objectors, should be instructed to meet and confer with the Special Master to set a schedule for resolution of

---

[9] The undersigned have requested, unsuccessfully, on several occasions that Lead Counsel provide them with the contemporaneous time records, a review of which, we believe, is necessary to any determination of an appropriate lodestar in this matter.

OBJECTION TO STIPULATION AMENDING     - 10 -     Master File No. 3:07-cv-5944 JST
SPECIAL MASTER'S SCHEDULING ORDER NO. 1                          MDL 1917

objections to Lead Counsel's Fee Motion, and preparation of a Report and Recommendations on all attorney's fee issues.

Dated:  November 10, 2015              ____/s/ Josef D. Cooper_____

JOSEF D. COOPER (CA SB 53015)
TRACY R. KIRKHAM (CA SB 69912)
JOHN D. BOGDANOV (CA SB 215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA  94105
Telephone:     (415) 788-3030
Facsimile:     (415) 882-7040
Email:         jdc@coopkirk.com
               trk@coopkirk.com
               jdb@coopkirk.com

*Counsel for Indirect-Purchaser Plaintiffs*


FRANCIS O. SCARPULLA (CA SB 41059)
PATRICK B. CLAYTON (CA SB 240191)
Law Offices of Francis O. Scarpulla
456 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 788-7210
Facsimile:  (415) 788-0706
fos@scarpullalaw.com
pbc@scarpullalaw.com

*Counsel for Indirect-Purchaser Plaintiffs*

---

OBJECTION TO STIPULATION AMENDING        - 11 -    Master File No. 3:07-cv-5944 JST
SPECIAL MASTER'S SCHEDULING ORDER NO.               MDL 1917
1

| DATE FILED | DOCKET NUMBER | ISSUES |
|---|---|---|
| 10/7/2015 | 4099 | (1) Settlement is unfair to class members residing in states with stronger consumer protection laws, like CA, in that it treats all members of the damages class equally, although their legal claims are not equal.  Even among repealer states, the strength of individual claims varies.  Court should follow In re Relafen Antitrust Litigation.  (2) Settlement releases injunctive relief claims of individuals in non-repealer states who otherwise do not have standing to bring claims for damages in federal court.  Injunctive relief has little value to current class members as it only benefits future purchasers.  The recharacterization of those claims as injunctive-only contradicts the class cert order which allowed the case to go forward on a single theory of damages.  (3) Uncertain whether the class representatives advocated specifically based on the relative strength of their states' consumer protection laws.  Should have used subclasses reflecting strength of state law claims.  (4) Attorney fees are excessive.  This is a megafund case. |
| 10/7/2015 | 4101 | (1)  No notice given to non-US members of the statewide damages classes.  (2) Nationwide class members in non-repealer states were given no or inadequate consideration.  (3) These class members lack adequate representation and are entitled to formal subclassing and separate representation.  (4)  The settlement is not fair, adequate or reasonable to these class members.  (5)  The Court should use the procedures from In re High Sulfur Content Gasoline Liability Litigation, 517 F. 3d 220 (5th Cir. 2008) for guidance on how the Court should allocate attorney fees.  (6)  The Court should conduct a detailed lodestar analysis as in Rose v. Bank of America (N.D. Cal. 8/29/14).  Reference made to Bonsignore's declaration. |
| 10/8/2015 | 4106, 4017, 4018 | (1) Antitrust liability against Chunghwa, Samsung SDI and Philips was largely established by the DOJ, EC and Vichi Plaintiff.  (2) Aggregate attorney fee request is grossly excessive:  significant portion of recovery is attributable to "(1)"; settlement fund size due to pervasive nature of CRT products; should award 10% of this megafund.  (3) The lodestar should not be used as a cross-check; called into doubt by Bonsignore; 49 law firms; no multiplier warranted; request of TATP is flawed, seeking compensation at associate rates for contract attorneys, seeking fees from claims withdrawn in face of Rule 11 challenge, Bonsignore Declaration. |

| DATE FILED | DOCKET NUMBER | ISSUES |
|---|---|---|
| 10/8/2015 | 4111 | (1) Members of 22 states were ignored by lead counsel; they are receiving no notice and if they are, they are not receiving any money.  These members are within a nationwide injunctive relief class and receive nothing from the settlement.  Lead counsel admits that these class members will get nothing by noting himself that CRT manufacturers have stopped making CRT products.  (2) Zelle, assisting lead counsel and acting in concert with him, describes its work on LCD, etc. But LCD, SRAM and Microsoft involved class members in the entire US receiving recovery.  No excuse for complete abandonment of 22 states where claims could have been raised with assistance of States' AGs and/or consumer protection statutes.  Lead counsel should step down. (3) The categorical, repeated failure of lead counsel to ensure these 22-state class members were adequately represented at all times is fatal to the settlement - failure to prosecute the action vigorously or insurmountable conflict of interest with other class members.  (4) Members of 22 states have claims for disgorgement and restitution that are not shared with class reps of the state damages claims.  (5) Counsel was aware of potential claims per Bonsignore Declaration, such as MO, yet decided to abandon those claims.  [continued...] |
|  | 4111 (Cont.) | (6) Court should appoint new lead counsel for all.  Reference to Walker's proposal for Scarpulla and Cooper as additional lead counsel.  Otherwise, the court must deny approval of the settlement.  (7) In CA, counsel has duty of loyalty to all clients in the litigation - the abandonment of claims shows a violation here.  (8) CA ethics rules prohibit representation of clients with conflicting interests.  (9) Lead counsel must forfeit his attorney fees.  Not only did he fail to report the conflict of interest between the "22 Omitted States" and state damages class, he exploited the conflict by negotiating the claims of the "22 Omitted States" in exchange for payment to the statewide damages classes and a hefty fee.  (10) Requested fee is excessive.  This is a megafund. |

| DATE FILED | DOCKET NUMBER | ISSUES |
|---|---|---|
| 10/8/2015 | 4112 | (1) Attorneys fees are excessive.  Court should apply "megafund" attorney fees principle for recovery above $100M.  (2) 2.3 multiplier is not a functional cross-check - it simply validates the 33.3%.  (3) Hard to imagine there will be no cy pres.  Acknowledge precedent in Staton v. Boeing (9th Cir 2003) allowing such, but preserve for appeal that Redman v. Radioshack (7th Cir. 2014) cert denied, is the appropriate rule.  (4) Acknowledge courts permitting fee awards based on total sum available to class rather than that which is actually claimed and received, but reserve rule in Redman for appeal.  (5) Scope of releases is too broad, releasing claims of claimants that are not defined as part of the class, such as MO.  (6) Notice campaign appears inadequate and anticipates low response rate. |
| 10/8/2015 | 4113 | (1) Members of the Nationwide Class who are not members of a State Damages Class are receiving neither injunctive relief nor anything of monetary value.  (2) States such as MA were part of earlier state damage class definitions and removed subsequent to settlement.  (3) CPT settled a "50-state federal injunctive claim in exchange for monetary consideration."  Yet MA and MO indirect purchasers are precluded from receiving anything now.  Class Counsel neglected twice to notify defendants 30 days prior to the filing of an amended complaint, rendering the MA claims procedurally deficient.  The claims were dismissed with prejudice.  Class counsel did not inform MA residents of their right to file direct action suits.  (4) Class counsel failed to adequately represent Nationwide Class' interests in securing consideration for the release, and conflicts with at least MA and MO.  (5) The Notice is confusing and fails to state members of the Nationwide Class release all rights and receive nothing.  Members of MA and MO state classes were included as part of initial state damages settlement with CPT in 2009 and cannot make a claim.  IPPs in the Nationwide Class, including MA and MO are precluded from the claims process.  [continued...] |

| DATE FILED | DOCKET NUMBER | ISSUES |
|---|---|---|
|  | 4113 (Cont.) | (6)  The Nationwide class consists of persons who purchased back to 1995, so individual claimants could be 60 or older.  The Notice Plan should have included more Old Media rather than New Media (chart on Declaration). (7)  The Settlement Amount is insufficient to fairly compensate class members and defer similar conduct in the future.  It should be evaluated based on the potential 3x damages.  To settle this action against serial price fixers for 1/10 of potential damages is inappropriate.  LCD potential single damages were $800M less tha+H8n CRT, but settled for 2x CRT.  LCD recovered 1/2 single damages, and CRT recovered 1/5.  (8)  No objection to the 33.3% attorney fee request. |
| 10/8/2015 | 4115 | (1) Settlement class members changed to those who purchased, but not necessarily reside.  Notice was not published in other countries.  (2)  The reach of Notice may be insufficient - 58% reach via print and unsubstantiated estimate that it will increase to 80% via other media.  (3)  Demographic that the notice provider targeted may not have been the primary CRT TV purchaser - 10 years old at the time.  (3)  No Notice on TV.  (4)  No notice in Spanish print media, except PR which is not in a separate damage class.  No notice in Asian media.  Reserve right to supplement objections with expert testimony.  (5)  Lead Counsel only started settlement talks in earnest after 12/12/14.  Lead counsel got no consideration for class members in non-repealer states.  (6)  Lead counsel's unnecessary fight with CA AG might have lowered amount both received for their class members.  (7) Total fees here should be calculated on a lodestar times + or - multiplier.  In re High Tech Employee Antitrust Litig. (ND Cal 9/2/15).  Any firm working with DPPs or DAPs efficiently vs. firms who ran up fees or engaged in a learning experience, did not give $$ to the expense fund or created unnecessarily contentious issues.  [continued...] |

| DATE FILED | DOCKET NUMBER | ISSUES |
|---|---|---|
| | 4415 (Cont.) | (8) Time and expense monthly reports should be produced. (9) Lead counsel had never tried an antitrust case before, so he asked for outside help, rather than relying on existing counsel. The $4M lodestar tallied by the new counsel should be paid by Lead Counsel, not the class. (10) Excessive time by non-antitrust lawyers on a learning experience should not be charged to the class. (11) Time categories in the collective fee declarations are too broad. Where is the protracted fight with CA AG categorized? Probably buried in "Settlement". (12) Lead counsel did not put three attorney fee declarations on the website in contravention to the court's preliminary approval order. (13) Many firms did not pay assessments. A complete accounting of all expense accounts is necessary to know when deposits were made. (14) Any counsel with no contributions should receive a negative multiplier. (15) Certain DAP counsel purchased IPP work product, but no amounts have been accounted. (16) Reserves right to challenge feel allocations if percentage of fund is used in first instance rather than lodestar. |
| 10/8/2015 | 4116 | Settlements provide no relief for any member of the Nationwide Class who is not recovering as a member of the Statewide Damages Classes. The release of all equitable and monetary claims for no consideration in order for defendants to achieve "complete peace" is not a valid justification for approval. The undersigned raised their concerns in a letter dated 10/1/15. |
| 10/8/2015 | 4118 | Conditional objection on the basis the settled parties have not yet disclosed all the information needed to assess whether the interests of CA natural persons have been adequately met on issues of notice and distribution. No objection in the aggregate. Request for data required to assess should be disclosed as part of the Court process. Referencing California v. IntelliGender LLC (9th Cir. 2014). The fact that the distribution plan involves efforts to distribute all funds w/o addressing cy pres heightens concerns because CA supports cy pres distributions (there is always a residue of funds). In previous cases, Ps and CA AG have worked closely to develop the notice plan, claims process and distribution. Referencing DRAM R&Rs. The CA AG will withdraw the conditional objection if between now and the Fairness Hearing there is disclosure of the requested information, participation and input by the CA AG, and opportunity for AG to be heard. |

| DATE FILED | DOCKET NUMBER | ISSUES |
|---|---|---|
| 10/8/2015 | 4119 | (1) The proposed Nationwide Class is only a settlement class and is improper because it releases monetary and injunctive/equitable claims without any consideration.  (2)  No notice given to those outside the US.  (3)  Consumers in non-repealer actions have no damages claims and no standing in federal court.  Injunctive relief is of limited value because it only benefits future, not past, purchasers.  Court may not possess jurisdiction over those class members with no real claims because district court's jurisdiction is limited to actual controversies.  The recharacterization of those claims as injunctive-only essentially contradicted the court's class cert order which had allowed the case to go forward on a single theory of damages.  (4)  The settlements allow a non-resident to a portion of the fund while excluding other economically injured IPPs who have no recovery.  (5)  Lead counsel excluded economic recovery for certain IPPs in certain states even though he had putative class representatives for those states.  (6)  Lead counsel did not seek to certify damage classes for MO, MA or NH.  (7)  For these and other reasons, Lead Counsel should not receive a multiplier.  (8) Notice objections are cut-and-paste from Scarpulla/Cooper filing.  (9)  Fee award objections are cut-and-paste from Scarpulla/Cooper filing.  (10)  DAP purchase of IPP work product objection, cut-and-paste from Scarpulla/Cooper filing.  (11)  Allocation of fees objection, cut-and-paste from Scarpulla/Cooper filing. |
| 10/8/2015 | 4120 | **WITHDRAWN  Dkt. 4130.**  33.3% attorney fee is unwarranted and should be 25%.  Referencing In re High Tech Employees Antitrust Litigation.  Judge Koh rejected the 19% request and reduced it to 10% which was a $20M "enhancement" to counsel.  Here, Class Counsel seek a $108.5M "enhancement."  Lowering from 33.3% to 25% benchmark would result in $48M more to the class and a $60M enhancement for counsel. |

| DATE FILED | DOCKET NUMBER | ISSUES |
|---|---|---|
| 10/16/2015 | 4128 | (1) Information about making a claim is inconsistent and extremely confusing.  Re minimum payment of $25, not clear whether that is per claimant or per covered item purchased.  Also receiving pro rata portion of fund, it also states max payment will be 3x the estimated money damages for each claimant.  It is confusing what type of documentation will be required.  More time and effort was spent securing $200M attorney fees rather than ensuring claimants are not confused.  Need additional clarification in notice.  (2) $190M fee request is too high.  1/3 is typical for matters like car wrecks or personal injuries, and for one client.  This is inappropriate for a fund this large where I may receive $25.  Request any reduction in fees to go to claimants and not to defendants.  (3) Defendants have agreed not to challenge up to 1/3 fee.  (4) My fiancée who is a lawyer helped me with this. |
| 10/24/2015 | 4140 | *Cover Declaration states that objector mailed written notice to the ND Cal "Class Action Clerk" on 10/7/15 and attached delivery confirmation.*   (1) The attempt to insulate the fairness determination regarding the attorney fee agreement from an evaluation of the settlements' overall fairness triggered an irreparable conflict of interest that destroys class counsel's adequacy of representation.  (2) Citation to Philips agreement, paragraph 23:  "The procedure for and the allowance or disallowance by the Court of the application by Class Counsel for attorneys' fees, costs and expenses to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration [of the Settlement Agreement] ...."  (3) Because the court has no power to eliminate paragraph 23 from the agreement, it must reject the entire settlement.  (4)  The 33% request for fees exceeds the 25% benchmark for ordinary settlements.  It also runs afoul the longstanding principle that fee awards should be reduced when class funds exceed $100M so class members can benefit from economies of scale.  (5)  "While Objector readily acknowledges a fee reduction is not mandated in every megafund case, neither is a court's formulaic approval based on a token percentage or lodestar cross-check."  (6) Court should reduce the fee award to a reasonable range between 17% ("the common benchmark for megafund settlements") and 25% (the 9th Circuit published benchmark for mega-fund settlements). |

| DATE FILED | DOCKET NUMBER | ISSUES |
|---|---|---|
| **10/26/2015** | 4144 | "Supplemental Objection."  (1)  Objectors have requested Lead Counsel to work cooperatively to cure fatal defects including the arbitrary exclusion of IPPs from Missouri, New Hampshire and Massachusetts where IPPs have damages claims; not waste court/parties' resources; and not deposing class members who are not represented by professional objectors.  (2)  If Lead Counsel fails to correct defects, this Court should compel Lead Counsel to do so.  (3)  Lead Counsel has denied that he had independent knowledge of or was provided notice of causes of action in MO, NH, MA which were excluded from the damages class.  (4)  Lead Counsel flatly refuses to engage in settlement discussions to resolve these issues.  (5)  Attachment 2 is a related civil action filed by Alioto with assistance of Bonsignore establishing the efficacy of the MA consumer.  (6)  Exhibit 3A are copies of exemplar emails to Alioto notifying him regarding NH consumer.  (7)  Exhibit 3B is the NH opinion re indirect purchasers suing under NH consumer protection statute.  (8)  Attachment 4 contains 2012 emails related to a MO consumer.  (8)  In response to these types of communications, Alioto has always responded that he would "look into it" or "take appropriate action" but never has - and continues not to budge. |
|  |  |  |
|  |  |  |