Andrea Valdez (Cal. Bar No. 239082)
530 S. Lake Avenue, No. 574
Pasadena, CA 91101
Tel: (626) 817-6547
andrea.valdez.esq@gmail.com

Joseph Scott St. John (appearance *pro hac vice*)
514 Mockingbird Drive
Long Beach, MS 39560
Tel: 410-212-3475
jscottstjohnpublic@gmail.com

*Attorneys for Objector Douglas W. St. John*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 3:07-cv-5944 SC |
| | MDL No. 1917 |
| | **OBJECTOR DOUGLAS W. ST. JOHN'S NOTICE OF MOTION AND MOTION TO AMEND THE ORDER APPOINTING SPECIAL MASTER QUINN (D.E. 4077)** |
| | Hearing Date: January 7, 2016<br>Time: 2 p.m.<br>Courtroom: 9 |
| This Document Relates To: | Judge: Hon. Jon S. Tigar |
| All Indirect Purchaser Actions | |

**NOTICE OF MOTION AND MOTION TO AMEND THE ORDER APPOINTING SPECIAL MASTER QUINN (D.E. 4077)**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 2 p.m. on Thursday, January 7, 2015, or as soon thereafter as the Court may order, Objector Douglas W. St. John will move the Court, pursuant to Federal Rule of Civil Procedure 53, to amend the Order Appointing Special Master Quinn and to amend the Scheduling Order to the extent necessary to avoid prejudice. Mr. St. John is separately moving for an order to shorten time for IPP Counsel to respond to this motion.

The ground for this motion is that (a) the Appointment Order includes an ambiguous and improper provision regarding the compensation of the Special Master, (b) absent class member-objectors have been prejudiced as a result, such that corrective action is necessary, and (c) due to a conflict of interest that exists as a matter of law, IPP Counsel were unable to consent to clear error review of any fee award. This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the accompanying Declaration of Joseph Scott St. John, and any further papers filed in support of this motion, the argument of counsel, and all pleadings and records on file in this matter.

<u>**MEMORANDUM OF POINTS & AUTHORITIES**</u>

**I.     ISSUES TO BE DECIDED**

      1.     Whether the Order Appointing Special Master Quinn should be amended to specify that his compensation for work on IPP Counsel's Fee Motion must be paid by IPP Counsel alone.

      2.     Whether the Court should order corrective action to mitigate the prejudice to objecting class members resulting from the ambiguous and improper compensation provision in the Order Appointing Special Master Quinn.

      3.     Whether the Order Appointing Special Master Quinn should be amended to specify that the Court's review of the Special Master's factual findings—at least with respect IPP Counsel's Fee Motion—shall be de novo.

**II.    FACTS**

      Multiple large settlements were reached in this case, and IPP Counsel moved for preliminary approval of those settlements earlier this year. The Court granted that motion and approved the form of various notices to the class on July 9, 2015. None of the approved notices included any reference to the appointment or compensation of a special master. Amended Order Granting Preliminary Approval (D.E. 3906) at Exs. A-C; see also Order on Conditional Objections (D.E. 3903) at 2.

      On September 1, 2015, IPP Counsel, led by Mario Alioto, moved the Court to appoint "Martin Quinn as Special Master under Rule 53 . . . to assist the Court with respect to motions for settlement approval and awards of attorneys' fees, expenses and service awards, as well as anticipated objections thereto." IPPs' Notice of Motion and Motion (D.E. 4032) at 1. No other candidates were put forward. Objections to the settlements and IPP Counsel's Fee Motion weren't due for over a month, but Mr. Alioto averred that "[s]ettlements of this size typically draw objections" and spent a full paragraph attacking so-called "professional objectors" before reaching the merits of appointing a special master. *Id.* He finally urged "that the Court appoint Special Master Quinn as soon as possible." *Id.* at 2.

      The following day, the Court issued an Order to Show Cause re Appointment of Special Master Pursuant to Motion of Certain Parties (D.E. 4033). In its Order to Show Cause, the Court

1  specifically stated that "[t]he substance of an appointment order would be similar to the proposed

2  order attached to the motion to appoint Mr. Quinn . . . ." *Id.* at 1-2. Certain IPP Counsel, led by

3  Francis Scarpulla and Josef Cooper, objected to vague and self-serving provisions regarding the

4  allocation of any fee award that IPP Lead Counsel had included in his proposed order. Response to

5  Order to Show Cause (D.E. 4043). The only other objection was by DPP Counsel, who argued that

6  no special master was necessary for their group of cases. DPPs' Request for Clarification (D.E.

7  4046). On September 24, 2015, the Court entered an order accommodating or overruling the

8  objections and appointing Mr. Quinn as Special Master. Order Appointing Special Master (D.E.

9  4077) (hereinafter, "Appointment Order").

10 **III.    Good Cause Exists to Amend the Appointment Order**

11         IPP Counsel asked this Court to appoint a special master of their own choosing to preside

12 over their Fee Motion. Their nominee is unsurprising. *See* R & R re Motion for Attorneys' Fees

13 (D.E. 7127), *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL-1827 (N.D. Cal. Nov. 9, 2012) at

14 20 (Special Master Quinn recommending fee award of 28.5 % in megafund case). But in their

15 proposed order, IPP Counsel included self-serving provisions imposing part of the special master's

16 compensation on the class—or objectors—and granting their hand-chosen special master a highly

17 deferential standard of review. Proposed Order (D.E. 4032-2) at 3, 4. No IPP Counsel objected to

18 those self-serving provisions, with the only dispute being how the special master was to allocate any

19 fee award among IPP Counsel.

20         "[T]he relationship between [class] plaintiffs and their attorneys turns adversarial at the fee-

21 setting stage . . . ." *In re Mercury Interactive Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). Here, IPP

22 Counsel oddly requested the appointment of a special master **after** notice to the class was approved

23 but **before** most objectors appeared. The lack of objection to IPP Counsel's self-serving

24 compensation and review provisions thus becomes unsurprising: no one was representing the

25 interest of the class when the special master was appointed, and the request was timed so that

26 objectors would be unlikely to do so. *See, e.g.*, *In re Coordinated Pretrial Proceedings*, 109 F.3d 602, 608

27 (9th Cir. 1997) ("*CPP*") (the interests of the class "are not represented in the fee award proceedings

28 by the lawyers seeking fees from the common fund").

**A.** **IPP Counsel alone should compensate the special master for his work on a Fee Motion that benefits only IPP Counsel, not the class.**

      **1.** **The Appointment Order ambiguously requires the class or objectors to compensate the Special Master for work in connection with the Fee Motion.**

As proposed by IPP Counsel and entered by the Court, the Special Master's Appointment Order ambiguously provides that "[i]n connection with objections and discovery matters, *the parties* shall each pay an equal share of the cost." Appointment Order at § 7 (emphasis added). The referenced "parties" are unclear.

This issue was raised with IPP Lead Counsel Mario Alioto, who initially stated that IPP Counsel might be willing to accept full responsibility for compensating Special Master Quinn in connection with their Fee Motion. J. St. John Dec. Ex. 1 at 2. Mr. Alioto subsequently retracted that offer, and instead argued that that objectors should be responsible for half of the Special Master's compensation unless their counsel agreed "not . . . to seek anything." *Id.* at Ex. 2 at 1.

      **2.** **Using class funds to compensate the Special Master for work in connection with the Fee Motion is not permissible.**

Class funds may only be used for services that directly benefited the fund, i.e., services that "tended to create, increase, protect, or preserve the fund." *CPP*, 109 F.3d at 608; *see also Class Plaintiffs v. Jaffe & Schlessinger, P.A.*, 19 F.3d 1306, 1309 (9th Cir. 1994) (affirming denial of attorney fees for mere incidental benefit to the class). Thus, for example, "[t]ime spent obtaining an attorneys' fee . . . is not compensable because it does not benefit the plaintiff class." *CPP*, 109 F.3d at 610 (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)). Special master fees accrued in reviewing IPP Counsel's Fee Motion are logically no different: the class does not benefit, and those fees are not properly chargeable to the class.[1]

---

[1]       Section 7 of the Appointment Order also specifies that IPP Counsel shall pay the Special Master "from the Litigation Fund," which is not otherwise identified. To the extent the unidentified "Litigation Fund" consists of class funds such as escrowed funds from earlier settlements that the Court permitted to be used to cover IPP Counsel's expenses, *CPP* prohibits the expenditure of those funds in connection with IPP Counsel's Fee Motion. Mr. Alioto represented that the "Litigation Fund" includes only funds contributed by class counsel. *See* J. St. John Dec. Ex. 1 at 2. To the extent IPP Counsel are seeking reimbursement for contributions to the "Litigation Fund" that are ultimately expended in connection with their Fee Motion, that too is impermissible.

1                  **3.**      **Objectors should not be forced to compensate the Special Master for**
2                           **work that benefits only IPP Counsel.**
3

                   **a)**      **Requiring objecting class members to "pay-to-play" is**
                           **fundamentally unfair and violates their Due Process rights.**

4      At a fundamental level, IPP Counsel litigated in the names of class members— including

5  objectors—and the settlement funds belong to those class members. IPP Counsel then filed an

6  avaricious and facially defective Fee Motion seeking $192 million of the class's funds. *See generally* D.

7  St. John Obj. (D.E. 4106). If the Appointment Order—via the term "parties" in Section 7—is

8  construed to require objectors to compensate the Special Master, the effect would be allowing IPP

9  Counsel to tell class members: "You didn't hire us, but we decided to be your lawyers. We intend to

10  take 1/3 of your $25 claim. If you have a problem with that, you can pay the Special Master several

11  thousand dollars to listen to your concern." Such a pay-to-play scheme is manifestly and

12  fundamentally unfair, and it directly conflicts with class members' right to be heard. *See, e.g.*, *Phillips*

13  *Petrol. Co. v. Shutts*, 472 US 797, 812 (1985) (Absent class members "must receive notice plus an

14  opportunity to be heard and participate in the litigation," and "[t]he notice should describe the

15  action and the plaintiffs' rights in it."); *Mullane v. C. Hanover Bank & Trust Co.*, 339 U.S. 306, 315

16  (1950) (criticizing empty formalisms: "[P]rocess which is a mere gesture is not due process.").

17      IPP Counsel chose to engage in entrepreneurial litigation, and they used the class action

18  mechanism to foist their services on absent class members. *See CPP*, 109 F.3d at 608. The law

19  tolerates that imposition because low-value claims otherwise might not be pursued. *See, e.g.*, *Deposit*

20  *Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338 & n.9 (1980). It would be a queer result if class

21  counsel could suppress scrutiny of their own deeply conflicted Fee Motion by imposing high costs

22  on objections with low economic value to their individual proponents, but that may substantially

23  benefit the class as a whole.

24                     **b)**      **Even if otherwise permissible, the failure to include IPP**
                           **Counsel's pay-to-play scheme in the notices to class members**
25                             **violates due process.**

26      Even if the Court were to conclude that a subjecting objecting class members to a pay-to-

27  play scheme can be consistent with due process, it remains objectionable in this case due to lack of

28  notice to the class. Due process requires that class members be provided notice sufficient to permit

"intelligently and individually choos[ing] whether to continue in a suit as class members." *Hanlon v. Chrysler Corp*, 150 F. 3d 1011, 1024 (9th Cir. 1998); *see also Philips Petrol*, 472 U.S. at 812 ("The notice should describe the action and the plaintiffs' rights in it."). Consistent with that requirement, courts have long-required that class members be apprised of any risk of legal exposure from a lawsuit maintained as a class action. *See, e.g., Donson Stores, Inc. v. Am. Bakeries Co.*, 58 F.R.D. 485, 489-90 (S.D.N.Y. 1973) (noting that "the right to counterclaim is readily subject to abuse as a tactical device to encourage plaintiffs to opt out," but "reference to the counterclaims in the class action notice should [not] be eliminated" because "[t]he notice should contain appropriate mention of the entire scope of the case"); *cf. Philips Petrol.*, 472 U.S. at 810 & n.2 ("[Absent plaintiff class members] are almost never subject to counter claims or cross-claims, or liability for fees or costs."). Here, however, none of the notices approved by the Court made any reference to IPP Counsel's pay-to-play scheme. *See* Amended Order Granting Preliminary Approval (D.E. 3906) at Exs. A-C.

### 4. IPP Counsel alone should bear the burden of compensating the Special Master for work on the Fee Motion.

Who then should compensate the special master? IPP Counsel requested his appointment. His work on the Fee Motion is solely for the benefit of IPP Counsel. The potential benefit of the Fee Motion to IPP Counsel is over $192 million. Individual objectors, in contrast, may receive payments of a few tens of dollars. *Cf.* Fed. R. Civ. P. 53(g)(3); J. St. John Dec. Ex. 9 (Order (D.E. 116), *Morgan Hill Concerned Parents Ass'n v. Cal. Dep't Ed.*, No. 11-3471-KJM-AC (E.D. Cal. July 2, 2015) (requiring defendant to compensate special master where plaintiff had limited means and was litigating in the public interest)). And imposing the cost of reviewing deficiencies in the Fee Motion is appropriately imposed on IPP Counsel, who presumably had the experience to avoid those deficiencies. *See In re Imperial Corp. of Am.*, 181 B.R. 501, 508 (Bankr. S.D. Cal. 1995) (imposing costs on fee petitioner: "This motion, the discovery, the two hearings and the time necessary to review each entry of [petitioner's] fee application to determine amounts subject to disgorgement are tangible costs which [petitioner] has foisted upon this estate. These could have been avoided with appropriate disclosure . . . .").

1    In their motion to appoint Special Master Quinn, IPP Counsel favorably referenced Special

2    Master Quinn's appointment in the *TFT-LCD (Flat Panel) Antitrust Litigation*, which provided that

3    "[i]n connection with the review of the parties' request for expenses and attorneys' fees, the

4    monthly invoice shall be paid by plaintiffs, apportioned [between plaintiffs' counsel] as described

5    above" J. St. John Dec. Ex. 4 at § 13. The Court should amend the Appointment Order in this case

6    to achieve the same result.[2]

7    **B.    Objectors have been prejudiced by IPP Counsel's pay-to-play provision, and corrective action is needed.**

8

9    The concern with IPP Counsel's pay-to-play provision is not theoretical, and objectors—

10    including Mr. St. John—have been prejudiced in at least two ways.

11    *First*, IPP Counsel issued subpoenas to virtually every objector. *See, e.g.*, Notice of Intent to

12    Serve Subpoenas (D.E. 4124). But discovery in this matter closed over a year ago. *See* Stipulation

13    (D.E. 2459). IPP Counsel's subpoenas were therefore improper and unenforceable. *See, e.g.*, N.D.

14    Cal. Civ. L.R. 37-3. Moreover, the document requests tracked nearly verbatim requests that the

15    same special master had quashed or severely limited in a previous litigation. *Compare, e.g.* Notice of

16    Intent to Serve Subpoenas (D.E. 2459) at Ex. C *with* Special Master's Amended Order (D.E. 7011),

17    *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL 07-1827 (N.D. Cal. Oct. 19, 2012), *objections*

18    *denied* (D.E.7152) (N.D. Cal. Nov. 14, 2012) *with* Ex. 7 (D.E. 6884-10), *In re TFT-LCD (Flat Panel)*

19    *Antitrust Litigation*, MDL 07-1827 (N.D. Cal.). It appears that every objector nevertheless provided

20    discovery or withdrew their objection, an outcome that is not surprising given the risk of incurring

21    thousands of dollars in special master fees on top of the cost of opposition. *Cf. Theofel v. Farey-Jones*,

22

23    _____

24    [2]    In requesting appointment of a special master, IPP Counsel expressed concern with so-called "professional objectors," i.e., what one court has described as "objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests." *Shaw v. Toshiba Am. Info.*
25    *Sys. Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000). Good faith objectors can provide substantial benefits to the class by forcing the parties to materially improve the settlement terms and providing
26    an adversarial element that—as IPP Counsel demonstrated in connection with the Appointment Order—is often lacking. *See, e.g., id.* at 974. To the extent the Court receives "generic, unhelpful
27    protests" they can be quickly disregarded and, if disruptive, form the basis for sanctions. *See id.* at 974-75.

28

1    359 F.3d 1066, 1074-75 (9th Cir. 2004) ("Fighting a subpoena in court is not cheap, and many may

2    be cowed into compliance with even overbroad subpoenas . . . .").

3        *Second*, at least Mr. St. John believes that discovery is necessary to fully evaluate IPP

4    Counsel's Fee Motion. Mr. St. John asked IPP Counsel to voluntarily provide discovery, but he was

5    rebuffed. J. St. John Dec. Ex. 5. Accordingly, Mr. St. John prepared a motion for discovery, and

6    that motion was fully drafted and ready for filing, but he was deterred from proceeding due to the

7    risk of incurring large special master fees. *See* J. St. John Dec. ¶¶ 9 & 10 & Exs. 6-8.[3]

8        The Court should take action to mitigate the prejudice resulting from IPP Counsel's

9    insertion of an improper pay-to-play provision in the Appointment Order. Mr. St. John respectfully

10   requests that the Court amend the Order Establishing Schedule (D.E. 4185) to provide objectors

11   with an adequate opportunity to propose and undertake discovery.[4]

12       **C.    On these facts, clear error review of the Special Master's findings regarding
              IPP Counsel's Fee Motion is not permissible, and the Appointment Order
13            should be amended accordingly.**

14       Federal Rule of Civil Procedure 53(f)(3) provides that "[t]he court must decide de novo all

15   objections to findings of fact made or recommended by a master, unless the parties, with the

16   court's approval, stipulate that: (A) the findings will be reviewed for clear error; or (B) the findings

17   of a master appointed under Rule 53(a)(1)(A) or (C) will be final." Here, the Court apparently relied

18   on IPP Counsel to provide the requisite stipulation. *See* Appointment Order (D.E. 4077) at 1-2.

19       The problem is that IPP Counsel were heavily conflicted and acting in their own interest—

20   not in the interest of the class—when they sought to alter the standard of review for their hand-

21   picked special master. *See CPP*, 109 F.3d at 608. IPP Counsel were thus unable to provide the

22

23   _____

          [3]     One set of objectors—led by Francis Scarpulla—has sought discovery of IPP
24   Counsel's time records. *See* Motion to Compel (D.E. 4191). Those objectors are IPP Counsel. They
     thus have a substantial financial interest in this litigation, and they are very differently situated than
25   absent class member-objectors. *See* Scarpulla Dec. (D.E. 4069) at ¶ 7 (seeking at least $232,750);
     Cooper Dec. (D.E. 4073-6) at ¶ 9 (seeking at least $2,994,845). The Scarpulla objectors do not and
26   cannot adequately represent the interests of absent class member-objectors vis-à-vis the Fee
     Motion.

27          [4]     The Court could minimize any impact to the procedural schedule by *sua sponte*
     ordering the discovery sought by Mr. St. John. *See* Order to Show Cause (D.E. 4182); J. St. John
28   Dec. Ex. 8.

1    consent—via stipulation—that Rule 53 requires. *See Rodriguez v. West Publishing Corp.,* 563 F. 3d 948,

2    959 (9th Cir. 2009) ("An absence of material conflicts of interest . . . is central to adequacy and, in

3    turn, to due process for absent members of the class."). That conclusion necessarily follows from

4    the basic principles of agency.

5          *First,* "an agent is subject to a duty not to deal with his principal as an adverse party in a

6    transaction connected with his agency without the principal's knowledge." Restatement (Second) of

7    Agency § 389. That rule applies in a variety of situations, including "transactions . . . in which [the

8    agent] has such a substantial interest that it might reasonably affect his judgment." *Id.* at cmt. a. To

9    the degree the agent believes that circumstances warrant an exception, he bears the burden of

10   demonstrating as much. *Id.* at cmt. g. Applied here, the appointment of a special master to review

11   the Fee Motion was a transaction in which IPP Counsel had "such a substantial interest that it

12   might reasonably affect [their] judgment." Indeed, IPP Counsel's request for $192 million in class

13   funds is "a substantial interest" by any conceivable measure. Any purported consent or stipulation

14   on behalf of the class in connection with that transaction was therefore tainted, particularly given

15   IPP Counsel's failure to notify the class of their intent to seek appointment of a special master.

16         *Second,* "authority to act as an agent includes only authority to act for the benefit of the

17   principal." Restatement (Second) of Agency § 39. And "[t]o make evidence of an agent's statements

18   admissible against the principal . . . it is not enough that the principal is willing or permits the agent

19   to speak. The speaking must be done in the capacity of agent." Restatement (Second) of Agency §

20   288 cmt. c. IPP Counsel were, of course, conflicted and acting in their own interest in seeking

21   appointment of a special master vis-à-vis the Fee Motion. *See, e.g., CPP,* 109 F.3d at 608. They were

22   thus incapable of stipulating on behalf of the class in connection with that appointment.

23         Given the express requirement for stipulation and IPP Counsel's clear and direct conflict

24   with the class vis-à-vis the Fee Motion, more was required to alter the standard of review than a

25   simple order to show cause served only on counsel, followed by the consent of the same deeply

26   conflicted counsel. *See* Moore's Fed. Prac. 3d § 53.01[b] ("When express agreement is relied on to

27   validate the appointment of a special master, the trial court should take special precautions to assure

28   that the parties' consent is knowing and voluntary."). These issues would have been identified had

1  the context been adversarial, but **<u>no one</u>** was acting for the benefit of the class in connection with

2  the Appointment Order, and IPP Counsel's motion was timed to insure that no one would. The

3  class could not and did not consent to alter the standard of review.

4       The error can, however, be fixed: Rule 53 permits the Court to amend the Appointment

5  Order at any time. Fed. R. Civ. P. 53(b)(4). Further, the 2003 Advisory Committee Notes make

6  clear that the Court can "withdraw its consent to a stipulation for clear-error review or finality, and

7  then . . . decide de novo" questions of fact. The Court should do so here.

8  **IV.    CONCLUSION**

9       Rather than acknowledge their conflict of interest vis-à-vis the class but attempt to adhere

10  to their fiduciary duties, IPP Counsel embarked on a campaign to intimidate objectors. As part of

11  their campaign, IPP Counsel proposed a compensation provision ambiguously suggesting that

12  objectors could be subject to massive and disproportionate special master fees for having the

13  temerity to speak out against IPP Counsel's request for $192 million in fees. IPP Lead Counsel was

14  far less ambiguous, however, and directly suggested that objectors could and should be subject to

15  large special master fees. *See* J. St. John Dec. Ex. 2. IPP Counsel then leveraged the special master's

16  compensation provision to obtain improper discovery from objectors, while refusing to engage in

17  reciprocal discovery. That tilted process should not continue.

18       The Court should amend the Appointment Order to specify that (a) IPP Counsel alone are

19  responsible for all compensation due the Special Master in connection with the Fee Motion, and (b)

20  the Special Master's findings of fact vis-à-vis the Fee Motion shall be reviewed de novo. To the

21  extent necessary to ensure a fair process, the Court should re-evaluate the current procedural

22  schedule in light of the need for discovery. *See, e.g.*, *In re Mercury Interactive Sec. Litig.*, 618 F.3d 988,

23  994 (9th Cir. 2010) ("Allowing class members an opportunity thoroughly to examine counsel's fee

24  motion, inquire into the bases for various charges and ensure that they are adequately documented

25  and supported is essential for the protection of the rights of class members."). A proposed order is

26  attached as Exhibit 10.

1   Dated: November 20, 2015                       By:      /s/ Joseph Scott St. John

2                                                  _____

3                                                  ANDREA VALDEZ (Cal. Bar No. 239082)
                                                   530 S. Lake Avenue, No. 574
                                                   Pasadena, CA 91101
4                                                  Tel: (626) 817-6547
                                                   andrea.valdez.esq@gmail.com
5
                                                   JOSEPH SCOTT ST. JOHN (*pro hac vice*)
6                                                  514 Mockingbird Drive
                                                   Long Beach, MS 39560
7                                                  Tel: 410-212-3475
                                                   jscottstjohnpublic@gmail.com
8
                                                   *Attorneys for Objector Douglas W. St. John*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28