# EXHIBIT 6

1  ANDREA VALDEZ (Cal. Bar No. 239082)
   530 S. Lake Avenue, No. 574
2  Pasadena, CA 91101
   Tel: (626) 817-6547
3  andrea.valdez.esq@gmail.com

4  JOSEPH SCOTT ST. JOHN (*pro hac vice*)
   514 Mockingbird Drive
5  Long Beach, MS 39560
   Tel: 410-212-3475
6  jscottstjohnpublic@gmail.com

7  *Attorneys for Objector Douglas W. St. John*

8

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 3:07-cv-5944 JST |
| | MDL No. 1917 |
| | **OBJECTOR DOUGLAS ST. JOHN'S MOTION FOR DISCOVERY AND TO SHORTEN TIME FOR RESPONSE** |
| This Document Relates To: All Indirect Purchaser Actions | Judge: Hon. Jon S. Tigar |
| | Special Master: Hon. Martin Quinn |

**NOTICE OF MOTION AND MOTION FOR DISCOVERY AND TO SHORTEN TIME**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Objector Douglas W. St. John hereby moves Special Master Martin Quinn for an order authorizing discovery and directing IPP Counsel to produce discovery related to their Fee Motion. Mr. St. John further moves for an order shortening time.

The ground for this motion is that additional facts are necessary for the Court and the class to properly evaluate IPP Counsel's Fee Motion. This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the accompanying Declaration of Joseph Scott St. John, and any further papers filed in support of this motion, the argument of counsel, and all pleadings and records on file in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   ISSUE TO BE DECIDED**

1. Whether IPP Counsel should be ordered to produce discovery related to the Fee Motion.

2. Whether a shortened response time should be ordered.

**II.   FACTS**

Absent class member Douglas W. St. John timely filed an objection to IPP Counsel's Fee Motion. D. St. John Obj. (D.E. 4107). In his objection, Mr. St. John specifically reserved the right to seek discovery. *Id.* at 2. Other objectors affirmatively requested discovery in their objections. *See* Scarpulla Obj. (D.E. 4115) at ¶¶ 4-5.

Although fact discovery in this matter closed on September 5, 2014, IPP Counsel issued subpoenas to objectors, including Mr. St. John. *E.g.*, Notice of Intent to Serve Subpoenas (D.E. 4124); *see also* Stipulation and Order Regarding Scheduling (D.E. 2459); Alioto Dec. (D.E. 4071-1) at ¶ 54. Mr. St. John objected to the subpoena served on him as improper, but he nevertheless provided discovery. *See* J. St. John Dec. Ex. 4. Despite taking the position that IPP Counsel are "entitled" to discovery of objectors, IPP Counsel refused to consider reciprocal discovery related to their Fee Motion. *Id.* at Ex. 3 ("We will not agree to any 'reciprocal' discovery.").

**III.   LEGAL STANDARDS**

"As a fiduciary for the class, the district court must act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is." *In re Mercury Interactive Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). "Included in that fiduciary obligation is the duty to ensure that the class is afforded the opportunity to represent its own best interests." *Id.*

As part of duty to ensure that the class can represent its own best interests, "[t]he court may allow an objector discovery relevant to the objections." 2003 Advisory Committee's Notes on Fed. R. Civ. P. 23 ("2003 Adv. Comm. Notes"). "In determining whether to allow discovery, the court should weigh the need for the information against the cost and delay that would attend discovery." *Id.* "One factor in determining whether to authorize discovery is the completeness of the material submitted in support of the fee motion, which depends in part on the fee measurement standard applicable to the case." *Id.*

**IV. IPP COUNSEL SHOULD BE ORDERED TO PRODUCE DISCOVERY NECESSARY TO PROPERLY EVALUATE THEIR FEE MOTION.**

    **A. IPP Counsel improperly took discovery from objectors, but refused to provide reciprocal discovery related to their Fee Motion.**

Although discovery closed in this matter over a year ago, IPP Counsel issued subpoenas to multiple objectors without seeking leave to do so. Most objectors nevertheless complied. *Cf. Theofel v. Farey-Jones*, 359 F.3d 1066, 1074-75 (9th Cir. 2004) ("Fighting a subpoena in court is not cheap, and many may be cowed into compliance with even overbroad subpoenas . . . .").

Despite their eagerness to dash around the country deposing objectors, IPP Counsel refused to provide reciprocal discovery. J. St. John Dec. Ex. 3, 6. Of course, "discovery for me but not for thee" is manifestly unfair. IPP Counsel opened the door to discovery, and they did so with the stated purpose of "weed[ing] out" objectors. *Id.* at Ex. 5. IPP Counsel can hardly complain about objectors seeking discovery necessary to properly evaluate the IPP Counsel's Fee Motion.

    **B. The requested discovery is necessary for the Court and the class to meaningfully evaluate IPP Counsel's Fee Motion.**

        **1. Request No. 1:**

> All DOCUMENTS RELATING TO the REPRESENTATION by YOU of any PERSON IN RELATION TO the CRT ANTITRUST LITIGATION. For purposes of clarity, this Request includes, without limitation, any retainer agreements, fee-sharing agreements, and client consents to fee sharing.

*First*, retainer agreements and fee arrangements are generally not privileged. *E.g. Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC,* No. 08-1559, 2009 WL 3857425, at *1 (S.D. Cal. Nov. 16, 2009) ("The Ninth Circuit has repeatedly held retainer agreements are not protected by the attorney-client privilege or work product doctrine.").

*Second*, the California Supreme Court has explained that "[j]ust as a client has a right to know how his or her attorney's fees will be determined, he or she also has a right to know the extent of, and the basis for, the sharing of such fees by attorneys." *Chambers v. Kay*, 29 Cal. 4th 142, 156-57 (2002) (citation omitted); *see also* Cal. R. Prof. Conduct 2-200. This request seeks only what class members are already entitled to know.

*Third*, Federal Rule of Civil Procedure 23 contemplates the disclosure of fee-sharing agreements. 2003 Adv. Comm. Notes. Indeed, disclosure of fee-sharing agreements is necessary for the Court to properly act as a fiduciary of the class. *In re Agent Orange Prod. Liab. Litig.*, 818 F. 2d 216, 226 (2d Cir. 1987) ("[I]n all future class actions counsel must inform the court of the existence of a fee sharing agreement at the time it is formulated. This holding may well diminish many of the dangers posed to the rights of the class."); *see also In re FPI/Agratech Sec. Litig.* 105 F.3d 469, 474 (9th Cir. 1997) (affirming fee award contrary to fee-sharing agreement: "[T]he relative efforts of, and benefits conferred upon the class by, co-counsel are proper bases for refusing to approve a fee allocation proposal.").

*Fourth*, the record in this litigation includes a sworn statement that at least one fee-sharing agreement exists. Scarpulla Dec. (D.E. 4069) at ¶ 8. If such agreements were not properly disclosed to the class and IPP Counsel's individual clients, that failure may substantially impact the amount of fees properly claimable by IPP Counsel. Cal. R. Prof. Conduct 2-200; *see also, e.g.*, *Rodriguez v. Disner*, 688 F.3d 645, 653-58 (9th Cir. 2012) (applying California law and affirming denial of fees to class counsel who violated rules of professional conduct); *Huskinson & Brown, LLP v. Wolf*, 32 Cal. 4th 453, 464 (2004) (where fee sharing arrangement was not approved by client, lawyer could recover only in quantum meruit). That is particularly true of any IPP Counsel that does not have a class representative as a client. *See Strong v. Beydoun*, 166 Cal. App. 4th 1398, 1404 (2008) ("It makes no sense to allow an attorney whose only connection to the client is through an unenforceable fee-sharing agreement to recover fees directly from that client.").

*Fifth*, IPP Counsel implicitly conceded the relevance of this information by seeking it from objectors. Notice of Subpoenas (D.E. 4124-1) at Ex. C (subpoena with substantially identical document request directed to objector St. John); *see also Vetter v. Keate*, No. 09-137, 2010 WL 1566417, at *6 (D. Utah Apr. 16, 2010) (ordering mutual disclosure of tax returns where each party sought discovery but attempted to shield their own: "what's good for the goose is good for the gander").

**2.    Request No. 2:**

All DOCUMENTS RELATING TO the qualifications and compensation of each CONTRACT ATTORNEY for whose work YOU are seeking fees in the CRT ANTITRUST LITIGATION.[1]

As set forth in Mr. St. John's objection, at least some IPP Counsel appear to be seeking fees at white-shoe associate rates for work performed by low-level contract attorneys. D. St. John Obj. (D.E. 4106) at 21-23. Not surprisingly, IPP Counsel submitted little or no information regarding those contract attorneys' experience. *Id.* Absent discovery of the contract attorneys' experience and compensation, neither the Court nor the class will be able to appropriately assess IPP Counsel's Fee Motion. *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 983 (C.D. Cal. 2012) (the proper measure of hourly rates are those "for similar services of lawyers of reasonably comparable skill, experience, and reputation" in the same community); *see also, e.g.*, *City of Pontiac Gen. Employees Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276, 280 (S.D.N.Y. 2013) ("[T]he Court questions the reasonableness of a mark-up of these contract attorneys' rates to $295 to $435 per hour. * * * * [A] sophisticated client, knowing these contract attorneys cost plaintiff's counsel considerably less than what the firm's associate attorneys cost (in terms of both salaries and benefits) would have negotiated a substantial discount in the hourly rates charged the client for these services.").

**3.    Request No. 3:**

All contemporaneous time records relied on by IPP Counsel as a basis for seeking attorney fees.[2]

IPP Counsel claim to have spent 183,000 hours litigating this case. But rather than submit contemporaneous time records, IPP Counsel binned their hours into amorphous categories of minimal informative value.

---

[1] Disclosure of names and compensation rates in table form, together with contemporaneous resumes, would be adequate and would minimize the burden on IPP Counsel, objectors, and the Court. *See In re domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424-25 (N.D. Ga. 1992) (granting objector discovery via interrogatories).

[2] To the degree such billing records are kept in searchable form using commonly available software such as Microsoft Excel, they should be produced in that form. Otherwise, such records should be organized by firm, attorney, and month.

In his objection, Mr. St. John argued that the claimed expenditure of 183,000 hours on this litigation was grossly excessive. D. St. John Obj. (D.E. 4106) at 18-20. He further argued that IPP Counsel were seeking fees for time unreasonably expended, such as time spent pursuing claims that were withdrawn in the face of a Rule 11 motion. *Id.* at 23; *see also* Scarpulla Obj. (D.E. 4115) at ¶¶ 2, 5. Finally, Mr. St. John argued that IPP Counsel Robert Bonsignore's sworn statement that lead counsel Mario Alioto "told me not to 'worry about [timekeeping]', and that he 'figure(s) time at the end of every case'" raises serious doubts as to the entirety of IPP Counsel's claimed lodestar. D. St. John Obj. (D.E. 4106) at 24 (discussing Bonsignore Dec. (D.E. 4072) at ¶ 14)).

Consistent with Mr. St. John's objection that the claimed lodestar appears inflated, at least two of the IPP Counsel firms in this litigation have been chastised for grossly inflating their hours. *See In re Citigroup Sec. Litig.*, 965 F. Supp. 2d 369, 393 (S.D.N.Y. 2013) (criticizing Kirby McInerney LLP's fee request: "Two other contract attorneys, for example, appear to have spent over three weeks of eight-hour days each digesting a one-day deposition: 157.5 hours (for $66,937.50) for one attorney and 142.5 hours (for $53,437.50) for the other."); *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 843-44 (2001) ("This is not an isolated example of the manner in which Kassof and [Mario] Alioto not only duplicated the work of counsel for plaintiffs in other cases but duplicated each other's work."). IPP Counsel's claim that 183,000 hours were expended on this litigation suggests that similar inflations may infect the Fee Motion in this case. The vague time bins in the Fee Motion do not, however, allow the Court to evaluate that issue. Reviewing IPP Counsel's contemporaneous time records appears to be the only way for the Court and the class to test IPP Counsel's claims.

IPP Counsel will undoubtedly claim that their time records are privileged. But class members—including objectors—are owed a fiduciary duty by IPP Counsel, and it is from class funds that IPP Counsel seek a fee award. *Cf. Ideal Elec. Sec. Co. v. Int'l Fidelity Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997) ("IFIC may opt to withhold billing statements under a claim of attorney-client privilege; however, where IFIC's assertion of a privilege results in the withholding of information necessary to Ideal's defense to IFIC's claim against it, the privilege must give way to Ideal's right to mount a defense."). Any concerns with revealing IPP Counsel's litigation strategy, etc., can be

minimized via a protective order limiting disclosure of the time records to the Court and counsel for objectors.

    **4.**    **Request No. 4:**

> All DOCUMENTS relating to the financing of any part of the CRT ANTITRUST LITIGATION by any third party. For purposes of clarity, this Request includes, without limitation, any loan or fee-sharing agreements.

In their Fee Motion, IPP Counsel assert that "the risks assumed by IPP Counsel were enormous" and point to the contingent nature of their fee as justifying a larger fee than otherwise appropriate. Fee Mot. (D.E. 4071) at 23-24. That assertion directly put at issue whether IPP Counsel's work was truly uncompensated. Alternative litigation financing is increasingly common, whether through direct fee-sharing, non-recourse loans that are repayable only if the debtor attorney obtains a fee award, or other methods. *See, e.g.*, ABA Commission on Ethics 20/20 Working Group, Issues Paper Concerning Lawyer's Involvement in Alternative Litigation Financing (Nov. 23, 2010) at 2 ("ABA Issues Paper").[3] Neither the Court nor the class can adequately evaluate IPP Counsel's claim for a risk premium without discovery of any litigation financing.

    **5.**    **Request No. 5:**

> All DOCUMENTS disclosed to or received from any defendant or non-party reflecting or RELATING TO any valuation of the CRT ANTITRUST LITIGATION. For purposes of clarity, this Request includes, without limitation, any settlement presentations, materials related to litigation funding, and any expert reports on the of issue damages.

In their Fee Motion, IPP Counsel assert that the result achieved in this case was "exceptional" and "[l]iability was by no means a foregone conclusion." Fee Mot. (D.E. 4071) at 11-12, 21. IPP Counsel make those claims despite defendant Chunghwa settling early and cooperating with plaintiffs, defendant Samsung SDI pleading guilty to violating the Sherman Act, and defendant Philips being the subject of an adverse issue preclusion ruling in Delaware. Mr. St. John specifically raised these points in objecting to IPP Counsel's Fee Motion. D. St. John Obj. (D.E. 4106) at 3-11. Indeed, Mr. St. John pointed to the disproportionately large settlements—vis-à-vis their market

---

[3] Available at http://www.americanbar.org/content/dam/aba/migrated/ethics2020/alfposting.authcheckdam.pdf

share—obtained from Samsung SDI following its guilty plea and Philips following the adverse issue preclusion ruling as evidence that a significant portion of the settlement fund is not attributable to the efforts of IPP Counsel, and thus is not properly the subject of a fee award. *Id.*

Discovery of settlement-related documents is disfavored. *See Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F. 3d 1142 (9th Cir. 2000); *but see United States v. Union Pac. R. Co.*, No. 06-1740-FCD-KJM, 2007 WL 1500551, at *5 (E.D. Cal. May 23, 2007) (compelling disclosure: "Neither the Supreme Court nor the Ninth Circuit have recognized a blanket settlement privilege . . . ."). Here, however, IPP Counsel put at issue the factual basis for the disproportionate size of the Samsung SDI and Philips settlements by seeking a share of the entire fund, despite substantial indicia that those two settlements are attributable to the efforts of others. It would be unfair to permit IPP Counsel to argue that they alone are responsible for the size of the settlement fund while denying class members the opportunity to test that assertion. *Cf. Dairy Am., Inc. v. Hartford Cas. Ins. Co.*, No. 07-0537-LJO-SKO, 2010 WL 2923895, at *2 (E.D. Cal. July 23, 2010) (documents withheld as privileged during discovery excluded from trial; testimony on the same issue also excluded).

Even if the Court concludes that discovery of settlement-related documents is not appropriate, it should nevertheless permit discovery of any valuation-related documents sent-to or received from non-parties such as litigation financiers. As the American Bar Associate explained, litigation financiers "often, as part of their underwriting process, require [a] lawyer to release information or to provide a litigation assessment . . . ." ABA Issues Paper at 4. But "[s]uch disclosures also clearly involve potential waivers of confidentiality and privilege . . . ." *Id.* Indeed, the waiver is more than potential. *See, e.g.*, *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 375-77 (D. Del. 2010) (overruling objection to magistrate's order compelling production of documents related to litigation financing). Applied here, any documents exchanged with third-party litigation financiers regarding the valuation of the CRT Litigation and the rationale therefore would provide a far more objective reference than IPP Counsel's self-serving claims that they alone gave birth to the world.

Finally, expert reports on the issue of damages are clearly discoverable, and are relevant to the issue of IPP Counsel's claimed success.

**C.    The requested discovery will not cause unnecessary delay.**

In view of the Court's amended procedural schedule, the requested discovery should not delay the progress of this matter if the Special Master requires that documents be produced by C.O.B. on Monday, November 30, 2015. Moreover, the documents sought should not be difficult for IPP Counsel to gather: most of them should have been gathered and reviewed by IPP Counsel in the course of preparing their Fee Motion. These same considerations warrant shortening the time for IPP Counsel to respond.

The risk of burden and delay can best be minimized by the Special Master ordering production of the requested documents. *See* Order to Show Cause (D.E. 4182) (ordering production of time records by DPP Counsel); *In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 425 (N.D. Ga. 1992) (granting discovery: "The Court's ruling on discovery should permit objectors' meaningful participation in the fairness hearing without unduly burdening the parties or causing delay."). That risk can be further minimized by requiring production via an FTP accessible by the Special Master and the objectors.

## V.    CONCLUSION

At this stage of the litigation, IPP Counsel's interests are adverse to those of the class. *In re Mercury Interactive Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). Thus, "[a]llowing class members an opportunity thoroughly to examine counsel's fee motion, **inquire into the bases for various charges and ensure that they are adequately documented and supported** is essential for the protection of the rights of class members." *Id.* (emphasis added). "It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and **adequately-tested**, information to evaluate the reasonableness of a proposed fee." *Id.* (emphasis added).

Mr. St. John's objection set forth a strong case that IPP Counsel's Fee Motion includes inflated hours, that the Fee Motion facially fails to carry IPP Counsel's burden with respect to a number of the attorneys for whose work fees are claimed, and that a significant portion of the $576 million settlement fund is attributable to the efforts of the DOJ, the EC, and an unrelated Delaware litigant. The Special Master should order production of documents necessary to ensure adequate testing of IPP Counsel's extraordinary claim for an award of $192 million in class funds.

| | | |
|---|---|---|
| 1 | Dated: November __, 2015 | Respectfully submitted, |
| 2 | | /s/ Joseph Scott St. John |
| 3 | | ANDREA VALDEZ (Cal. Bar No. 239082)<br>530 S. Lake Avenue, No. 574 |
| 4 | | Pasadena, CA 91101<br>Tel: (626) 817-6547 |
| 5 | | andrea.valdez.esq@gmail.com |
| 6 | | JOSEPH SCOTT ST. JOHN (*pro hac vice*)<br>514 Mockingbird Drive |
| 7 | | Long Beach, MS 39560<br>Tel: 410-212-3475 |
| 8 | | jscottstjohnpublic@gmail.com |
| 9 | | *Attorneys for Objector Douglas W. St. John* |