# EXHIBIT

# 9

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   MORGAN HILL CONCERNED                      No. 2:11-cv-03471-KJM-AC
     PARENTS ASSOCIATION, an
12   unincorporated association, and
     CONCERNED PARENTS
13   ASSOCIATION, an unincorporated             ORDER
     association,
14
                    Plaintiffs,
15
            v.
16
     CALIFORNIA DEPARTMENT OF
17   EDUCATION and DOES 1 through 5,

18                  Defendants.

19

20          On May 15, 2015, the court issued an order directing the parties to file

21   simultaneous briefs on the question of compensation for the proposed special master by June 5,

22   2015.  (ECF No. 103 at 2.)  In the same order, the court also directed the parties to file focused

23   simultaneous briefs on the question of individual notice to and consent by affected students

24   regarding the potential release of personally identifiable information.  (*Id.*)  The parties have filed

25   their briefs.  (ECF Nos. 107–09.)

26          The court held a status conference on June 30, 2015, at which Rony Sagy and

27   Barbara Gately appeared for plaintiffs, Grant Lien appeared for defendant, and proposed special

28   master Winston Krone of Kivu Consulting Inc. appeared telephonically.  The court below

                                              1

addresses certain issues raised in the parties' briefs and appoints Mr. Krone as a special master in this case with the limited role of assisting the parties in developing an electronic discovery protocol.

## I.    SPECIAL MASTER'S APPOINTMENT

Having reviewed Mr. Winston Krone's proposed protocol and having discussed it with the parties, the court hereby APPOINTS Mr. Krone of Kivu Consulting, Inc. as the special master in this case for the limited purpose of facilitating the parties' development of an electronic discovery protocol.  Under Federal Rule of Civil Procedure 53(b)(2), the court hereby directs the special master to proceed with all reasonable diligence in performing his duties.

The court approves Mr. Krone's proposed protocol, attached as Exhibit A, in its entirety.  The court reiterates that it is not delegating to the special master any legal decision-making authority with respect to relevance, notice, or otherwise.

Mr. Krone will schedule his first meeting with the parties for the first week of August 2015.  Mr. Krone, or the parties themselves, will submit to the court a jointly agreed proposed protocol no later than September 11, 2015.  Once the court approves the protocol, discovery may resume in full.

## II.    SPECIAL MASTER'S COMPENSATION

Defendant argues the special master's fees should be split evenly between the parties or, in the alternative, plaintiffs should bear a greater share of the fees "because their overbroad discovery is a primary reason for the appointment of the special master."  (ECF No. 108 at 1–2.)  Plaintiffs claim defendant must "assume full responsibility for the master's fees and costs"; otherwise, due to hardship, plaintiffs "would be pressed to move for the appointment of a magistrate [judge] as special master . . . ."  (ECF No. 107 at 1–2.)

Federal Rule of Civil Procedure 53(g) provides as follows:

> **(1) *Fixing Compensation.***    Before or after judgment, the court must fix the master's compensation on the basis and terms stated in the appointing order, but the court may set a new basis and terms after giving notice and an opportunity to be heard.

>    **(2)** *Payment.*  The compensation must be paid either:

>        **(A)** by a party or parties; or

>        **(B)** from a fund or subject matter of the action within the
>            court's control.

>    **(3)** *Allocating Payment.*  The court must allocate payment among
>    the parties after considering the nature and amount of the
>    controversy, the parties' means, and the extent to which any party is
>    more responsible than other parties for the reference to a master.
>    An interim allocation may be amended to reflect a decision on the
>    merits.

Fed. R. Civ. P. 53 (emphasis in original)

>        While they have no force of law, the 2003 amendments to the advisory committee

notes provide a useful guide in ascertaining the meaning of the rule:

>        The amount in controversy and the means of the parties may
>        provide some guidance in making the allocation.  The nature of the
>        dispute also may be important—parties pursuing matters of public
>        interest, for example, may deserve special protection.   A party
>        whose unreasonable behavior has occasioned the need to appoint a
>        master, on the other hand, may properly be charged all or a major
>        portion of the master's fees.  It may be proper to revise an interim
>        allocation after decision on the merits.  The revision need not await
>        a decision that is final for purposes of appeal, but may be made to
>        reflect disposition of a substantial portion of the case.

>        The basis and terms for fixing compensation should be stated in the
>        order of appointment.  The court retains power to alter the initial
>        basis and terms, after notice and an opportunity to be heard, but
>        should protect the parties against unfair surprise.

Fed. R. Civ. P. 53 advisory committee's notes; *United States v. Petri*, 731 F.3d 833, 839 (9th Cir.

2013); *Clark v. Long*, 255 F.3d 555, 559 (8th Cir. 2001).

>        In sum, in allocating payment of the master's compensation the court is guided by

considering the nature and amount of the controversy, the parties' means, and the extent to which

any party is more responsible than others for the reference to a master.  For example, parties

pursuing matters of public interest may deserve special protection, but a party whose

unreasonable behavior has occasioned the need to appoint a master may properly be charged all

or a major portion of the master's fees.  An interim allocation may be amended to reflect a

decision on the merits.  The revision need not await a decision that is final for purposes of appeal

but may be made to reflect disposition of a substantial portion of the case.

3

1    District courts have "broad discretion to determine which of the parties to charge,

2    and the district court's decision will not be disturbed absent an abuse of that discretion." *Apponi*

3    *v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1220 (6th Cir. 1987); *see also Roy v. Cnty. of*

4    *Lexington, S. Carolina*, 141 F.3d 533, 549 (4th Cir. 1998) ("Although courts have construed a

5    special master's fees as 'costs' under the Federal Rules of Civil Procedure, the apportionment of a

6    special master's fees has always remained squarely within the trial court's discretion." (internal

7    citation and quotation marks omitted)); *Aird v. Ford Motor Co.*, 86 F.3d 216, 221 (D.C. Cir.

8    1996) (noting "the district court enjoys broad discretion to allocate the master's fees as it thinks

9    best under the circumstances of the case").

10    Here, the court finds defendant should bear the responsibility for special master's

11    fees at this stage of the case.[1]  First, it cannot be disputed that plaintiffs are nonprofit associations

12    that pursue a matter of public interest: a free appropriate public education on behalf of their

13    members' children with disabilities.  Second, plaintiffs' counsel represents they "are comparably

14    restrained in their ability to finance the services of a special master as they are presently receiving

15    no compensation for their time or reimbursement of costs."  (ECF No. 107 at 1.)  Finally, as of

16    the date of this order, the record is not yet developed enough to allow the court to determine if

17    one side is more  responsible for the special master referral.  Because the first two factors weigh

18    in favor of allocating the responsibility of paying special master's fees to defendant and because

19    the third factor is neutral, the court finds special master's fees should be allocated to defendant.

20    *See Reed v. Cleveland Bd. of Ed.*, 607 F.2d 737, 743 (6th Cir. 1979); *Fund for Accurate &*

21    *Informed Representation, Inc. v. Weprin*, No. 92-0593, 1992 WL 512410, at *5 (N.D.N.Y. Dec.

22    23, 1992).

23    However, this is an interim allocation, subject to future modification if warranted.

24    For example, if defendant prevails in this matter, it may arguably recover special master fees as

25    costs.  At the conclusion of this litigation, defendant may also ask the court to make a different

26    _____

27    [1]  This finding is limited to the issue of the special master's compensation and does not
mean that defendant shall always bear responsibility for costs in this case.  At the June 30, 2015
conference, plaintiffs acknowledged that the court's decision is not setting any precedent as to

28    payment of costs.

1  allocation, under all the circumstances existing at that time.  *See Loblaw Companies Ltd. v. Azimi*,

2  No. 00-3591, 2001 WL 36028015, at *2 n.3 (N.D. Cal. June 8, 2001) (quoting *Aird*, 86 F.3d at

3  220–22).

4              In a separate order, the court will provide instructions on the method by which

5  payment of the special master will be made.

6  III.    <u>NOTICE UNDER THE FAMILY EDUCATION RIGHTS AND PRIVACY ACT OF</u>

7          <u>1974 (FERPA)</u>

8              Defendant argues this court's tentative interpretation of FERPA to allow notice by

9  publication "contravenes the United States Department of Education's (USDOE) position that

10 individual notice by mails is required."[2]  (ECF No. 104 at 2.)  Defendant reasons this court should

11 require notice by mail because "USDOE's interpretation of FERPA merits deference . . . ."  (*Id.*)

12 Plaintiffs respond notice by publication is sufficient in light of the number of students implicated,

13 which they estimate exceeds 1 million.  (ECF No. 105 at 1–8.)  The court hereby confirms its

14 tentative interpretation, addressing defendant's primary objection below.  To the extent the court

15 does not address a party's argument, the argument raises an issue that can be resolved by the

16 magistrate judge in response to a properly framed discovery dispute after full discovery resumes.

17             As the court previously has noted, Congress enacted FERPA to protect the privacy

18 of students and their parents.  *See* 20 U.S.C. § 1232g; *United States v. Miami Univ.*, 294 F.3d 797,

19 806 (6th Cir. 2002); *Cherry v. Clark Cnty. Sch. Dist.*, No. 11-01783, 2012 WL 4361101, at *5 (D.

20 Nev. Sept. 21, 2012); *Rios v. Read*, 73 F.R.D. 589, 597–99 (E.D.N.Y. 1977); *Mattie T. v.

21 Johnston*, 74 F.R.D. 498, 501 (N.D. Miss. 1976).  FERPA conditions the receipt of federal

22 funding by educational institutions or agencies on their compliance with certain procedures

23 _____

24   [2]  Defendant asks that this court take judicial notice of four documents: (1) a letter of
   technical assistance (Opton letter) from the DOE's Family Policy Compliance Office (FPCO) to

25 the Regents of the University of California; (2) portions of a 2011 training presentation on
   FERPA by the FPCO; (3) portions of a 2012 FERPA presentation for elementary/secondary

26 school officials by the FPCO; and (4) information on California Concerned Parents Membership
   from its website.  (ECF No. 104-1, Exs. A–D.)  Plaintiffs do not oppose defendant's request.  The

27 court takes judicial notice of the Opton letter because it is a matter of public record.  The court
   does not take judicial notice of the remaining materials, however, because they do not satisfy the

28 requirements of Federal Rule of Evidence 201.

1    concerning the keeping of educational records.  *See* 20 U.S.C. § 1232g; *Miami Univ.*, 294 F.3d at

2    806.  These procedures are designed, among other things, to restrict access to students'

3    educational records by third parties without parents' consent.  20 U.S.C. § 1232g(b)(2).  If,

4    however, the students in question are eighteen years of age or older, the consent required under

5    FERPA is required of the students, rather than the parents.  *Id.* § 1232g(d).

6                 The consent requirement is subject to several exceptions. The most relevant

7    exception to this action allows for disclosure without consent if disclosure is to comply with a

8    judicial order or subpoena and the educational institution has made a reasonable effort at

9    notification.  34 C.F.R. § 99.31(a)(9).  Reasonable efforts to notify must be made in advance of

10   compliance, "so that the parent or eligible student may seek protective action . . . ." *Id.*

11   § 99.31(a)(9)(ii).  Confidential information may be disclosed if the notification requirements are

12   met and there is a protective order in place restricting disclosure.  *See*, *e.g.*, *Morton v. Bossier*

13   *Parish Sch. Bd.*, No. 12-1218, 2014 WL 1814213, at *4 (W.D. La. May 6, 2014); *C.T. v. Liberal*

14   *Sch. Dist*, No. 06-2093, 2008 WL 394217, at *4 (D. Kan. Feb. 11, 2008); *see also Rios*, 73 F.R.D.

15   at 602 (noting "the need for a protective procedure when disclosure to a private party is directed

16   by court order, it would seem sensible to require in the disclosure order that the recipients of the

17   student records avoid revealing the data to individuals unconnected with the litigation and destroy

18   the data when it is no longer needed.  But it is neither required nor necessary that the defendants

19   redact the names of the students from the records and substitute neutral identifying information").

20                The appropriate type of notice depends on the circumstances of each case.  *Rios*,

21   73 F.R.D. at 600.  For instance, "where exceptionally large numbers of students are involved, it

22   may be enough for a school or school district to publish notice in a newspaper." *Id.*  In *Rios*,

23   where the case "involve[ed] several hundred students," the court found "appropriate notice could

24   be effected either by publication or by mail." *Id.*  Here, the court understands that a very large

25   number of student records are affected by plaintiffs' discovery requests.  (*See* ECF No. 67.)

26   Notice by publication appears to be the only practical method of complying with the statute and

27   regulations, while allowing the case to move forward on a reasonable timetable.

28

1      The court finds that the educational records at issue here may be disclosed without

2   running afoul of FERPA as long as parents or students are notified of the disclosure by

3   publication and a protective order restricts the use of the information to this litigation only. *See*

4   *Liberal Sch. Dist*, 2008 WL 394217, at *4; *see also Moeck v. Pleasant Valley Sch. Dist.*, No. 13-

5   1305, 2014 WL 4988274, at *2 (M.D. Pa. Oct. 7, 2014); *Doe v. Ohio*, No. 91-0464, 2013 WL

6   2145594, at *9 (S.D. Ohio May 15, 2013); *Blunt v. Lower Merion Sch. Dist.*, No. 07-3100, 2009

7   WL 1259100, at *2 (E.D. Pa. May 7, 2009).  Here, there is a protective order in place governing

8   the disclosure of confidential information.  (ECF No. 60.)  That order is adequate to ensure the

9   information disclosed is not disseminated to others.  The court's ruling, however, is without

10   prejudice; it can be revisited if the facts of the case change significantly.

11      The court finds unpersuasive defendant's argument that this court should defer to

12   the DOE's FPCO opinion letter.  *See* note 2 *supra*.  That letter notes, "This Office has

13   consistently interpreted FERPA to require that students be notified in advance of the compliance

14   with a court order or subpoena by individual notice.  Notice on campus bulletin boards or in

15   campus newspapers would not be adequate to meet this requirement."  (ECF No. 104-1, Ex. A at

16   2.)  The FPCO letter has no force of law; it has only persuasive force and then only to the extent it

17   has "the power to persuade."  *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)

18   ("Interpretations such as those in opinion letters—like interpretations contained in policy

19   statements, agency manuals, and enforcement guidelines, all . . . lack the force of law . . .")

20   (internal quotation marks omitted).  Defendant conceded at hearing that the letter is not entitled to

21   deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 849

22   (1984).  *See Ohio*, 2013 WL 2145594, at *7.  For the reasons set forth above, this court finds the

23   letter's interpretation unpersuasive.

24   IV.   FURTHER STATUS

25      A further status conference is set for **October 15, 2015** at **2:30 p.m.**, for the

26   purpose of scheduling the balance of the case.

27   /////

28   /////

1        The Clerk of Court is directed to serve a copy of this order on Special Master

2   Winston Krone at the address shown on the attached Exhibit A.

3        IT IS SO ORDERED.

4   DATED:  July 2, 2015.

5

6                                                    _____

7                                                    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28