Guido Saveri (22349)
  *guido@saveri.com*
R. Alexander Saveri (173102)
  *rick@saveri.com*
Geoffrey C. Rushing (126910)
  *grushing@saveri.com*
Cadio Zirpoli (179108)
  *cadio@saveri.com*
Travis L. Manfredi (281779)
  *travis@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for the Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944 JST |
| | MDL No. 1917 |
| This Document Relates to: | |
| *Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al.*, Case No. 14-CV-2058 JST. | **DIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH THOMSON DEFENDANTS** |
| | Date:      December 15, 2015<br>Time:      10:00 a.m.<br>Judge:     Honorable Jon S. Tigar<br>Courtroom: 9 |

## I. INTRODUCTION

Direct Purchaser Plaintiffs' ("DPPs") submit this supplemental brief in response to the Court's Order Regarding Direct Purchaser Plaintiffs' Settlement with Thomson Defendants ("Order") (Nov. 18, 2015) (ECF No. 4194).

The Court ordered DPPs to provide information regarding their "potential recovery" if they prevail at trial and "[t]he likely recovery per plaintiff under the terms of the settlement." Order, p. 1:23–25. As to the first question, while a joint and several judgment against Thomson, after trebling, could exceed two billion dollars, as a practical matter DPPs' recovery would be limited by Thomson's ability to pay. DPPs believe that the $9.75 million settlement before the Court is a reasonable recovery in light of Thomson's financial condition.

As to the second question, the proposed plan of allocation provides for a *pro rata* distribution of the settlement proceeds. Each class member's share will therefore depend on the size of its claim and the total amount of claims submitted, as well as the Court's award of attorney fees and expenses. Class members accounting for the bulk of the commerce in the class, however, will receive substantial sums—e.g., tens or hundreds of thousands of dollars—from this settlement.

## II. THE BASIS FOR THE THOMSON SETTLEMENT

### A. Thomson's Financial Condition

As indicated in DPPs' preliminary and final approval memorandums, Thomson's financial condition was the primary consideration with regard to settlement. *See* Memo. of P. & A. in Supp. of DPPs' Mot. for Prelim. Approval of Class Action Settlement with the Thomson and TDA Defs. at p. 11:11–23 (Feb. 13, 2015) (ECF No. 3562) ("Prelim. Approval Mot."); DPPs' Memo. in Supp. of Final Approval of Class Action Settlement with Thomson Defs. at p. 13:10–22 (Oct. 2, 2015) (ECF No. 4091). At the time the settlement was reached in December 2014, DPPs concluded that a net *recovery* from the Thomson Defendants substantially in excess of the $9.75 million settlement amount was unlikely, even if they prevailed at trial, because of Thomson's financial condition. Declaration of R. Alexander Saveri in Support of DPPs' Supplemental Brief in Support of Final Approval of Class Action Settlement with Thomson Defendants ("Saveri Supp. Decl.") ¶ 2.

Thomson provided DPPs with credible information demonstrating that Defendant Technicolor USA, Inc. ("Thomson Consumer") could not withstand a significant judgment. Among other things, this documentation showed a negative cash flow in the three years preceding the settlement and that Thomson Consumer was significantly indebted to its French parent company, Defendant Technicolor SA ("Thomson SA"). *Id.* ¶ 3.

In addition, Thomson provided DPPs with credible information that DPPs would face substantial problems enforcing a significant judgment against Thomson SA, including that it had emerged from a French bankruptcy proceeding in July, 2014. Thomson SA's 2013 Annual Report[1] indicated that it had no net income (at p. 158), and had restructured debt exceeding one billion euros (p. 165), among other things. Saveri Supp. Decl. ¶ 4. Thomson SA also provided DPPs with information regarding its existing secured debt, including loan covenants that could be impacted by an adverse judgment. In addition, DPPs understood that it could re-enter bankruptcy at any time, and that French bankruptcy proceedings could easily take five to ten years, and, assuming money remained after payment of secured creditors, would likely result in the substantial reduction of any judgment DPPs might obtain, if not outright disallowance.[2] *Id.* ¶ 5.

Finally, DPPs understood that Thomson was also subject to the claims of the Direct Action Plaintiffs ("DAPs") and the Indirect Purchaser Plaintiffs ("IPPs"). Collectively, the commerce involved in the DAP claims was roughly equal to DPPs' claims; the IPPs' claims substantially exceeded DPPs' claims. Several of the DAPs were set for trial against Thomson (and other defendants) in March of 2015. Thomson's ability to satisfy a judgment would be further reduced by a judgment or settlement of these claims; a judgment might also trigger bankruptcy. *Id.* ¶ 6.

In these circumstances, DPPs concluded that there was a substantial possibility that they might not be able to collect anything from the Thomson Defendants regardless of the size of any judgment they obtained, and that the likelihood of netting substantially more than $9.75 million

---

[1] Technicolor SA, *Annual Report 2013*, Technicolor (Mar. 27, 2014), http://www.technicolor.com/en/download/file/fid/6517.

[2] Thomson also argued that they would have substantial arguments in a French court that any judgment DPPs obtained should not be recognized.

was low. *Id.* ¶ 7.[3]

## B. The Benefits to Class Members

As noted above, DPPs anticipate that the settlement proceeds, less court awarded attorney fees and litigation expenses, will be paid to class members who submit claims on a *pro rata* basis. Although potentially there are thousands of class members, DPPs' analysis of transactional data produced in the action indicates that a few hundred class members account for almost all of the purchases by the class. For example, the top twenty purchasers appear to account for nearly 50% of class purchases.[4] The average recovery from the Thomson settlement for each of these class members will therefore likely be approximately $240,000, less court awarded fees and expenses. The top 200 class members appear to account for over 75%. The 50th largest purchaser accounts for approximately 0.25% of class purchases—its likely payment would be approximately $24,000, less its share of attorney fees and expenses. Saveri Supp. Decl. ¶ 8.

## III. CONCLUSION

DPPs respectfully submit that this information provided above confirms that the Thomson settlement before the Court is fair and reasonable and should be finally approved.

Dated: December 1, 2015

Respectfully submitted,

/s/ *R. Alexander Saveri*
Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Cadio Zirpoli (179108)
Travis L. Manfredi (281779)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*

---

[3] The IPPs came to a similar conclusion. They settled with Thomson and TDA in June 2015 for $13.75 million. In their preliminary approval papers, IPPs set forth similar concerns about Thomson's ability to satisfy a judgment. *See* IPPs' Suppl. Memo. of P. & A. in Supp. of Prelim. Approval to Include Additional Settlements at p. 6:11–22 (June 13, 2015) (ECF No. 3875).

[4] While DPPs believe that the transactional data provides a reliable indication of class members' purchases, the final determination of each class member's pro rata share will depend on the actual claims submitted.

Joseph W. Cotchett
Steven N. Williams
Adam J. Zapala
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Bruce L. Simon
Aaron M. Sheanin
PEARSON, SIMON & WARSHAW LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

H. Laddie Montague, Jr.
Ruthanne Gordon
Candice Enders
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (800) 424-6690
Facsimile: (215) 875-4604

Michael P. Lehmann
HAUSFELD LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980

Gary Specks
KAPLAN FOX
423 Sumac Road
Highland Park, IL 60035
Telephone: (847) 831-1585
Facsimile: (847) 831-1580

Douglas A. Millen
William H. London
FREED KANNER LONDON & MILLEN
2201 Waukegan Road
Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4519

Eric B. Fastiff
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

W. Joseph Bruckner
Elizabeth R. Odette
LOCKRIDGE GRINDAL NAUEN P.L.L.P
100 Washington Avenue S
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

*Attorneys for Plaintiffs*