Guido Saveri (22349)
 *guido@saveri.com*
R. Alexander Saveri (173102)
 *rick@saveri.com*
Geoffrey C. Rushing (126910)
 *grushing@saveri.com*
Cadio Zirpoli (179108)
 *cadio@saveri.com*
Travis L. Manfredi (281779)
 *travis@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for the Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV- 07-5944 JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>*Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al.*, Case No. 14-CV-2058 JST. | **DECLARATION OF R. ALEXANDER SAVERI IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH THOMSON DEFENDANTS**<br><br>Date:         December 15, 2015<br>Time:        10:00 a.m.<br>Judge:      Honorable Jon S. Tigar<br>Courtroom: 9 |

I, R. Alexander Saveri, declare:

1. I am a partner with Saveri & Saveri, Inc., Lead Counsel for Direct Purchaser Plaintiffs ("DPPs") in this litigation. I am a member of the Bar of the State of California and an attorney admitted to practice in the Northern District of California. I make this Declaration in Support of DPPs' Supplemental Brief in Support of Final Approval of Class Action Settlement with Thomson Defendants. Except as otherwise stated, I have personal knowledge of the facts stated below.

2. At the time the settlement was reached in December 2014, DPPs concluded that a net *recovery* from the Thomson Defendants substantially in excess of the $9.75 million settlement amount was unlikely, even if they prevailed at trial, because of Thomson's financial condition.

3. Thomson provided DPPs with credible information demonstrating that Defendant Technicolor USA, Inc. ("Thomson Consumer") could not withstand a significant judgment. Among other things, this documentation showed a negative cash flow in the three years preceding the settlement and that Thomson Consumer was significantly indebted to its French parent company, Defendant Technicolor SA ("Thomson SA").

4. In addition, Thomson provided DPPs with credible information that DPPs would face substantial problems enforcing a significant judgment against Thomson SA, including that it had emerged from a French bankruptcy proceeding in July, 2014. Thomson SA's 2013 Annual Report[1] indicated that it had no net income (at p. 158), and had restructured debt exceeding one billion euros (p. 165), among other things.

5. Thomson SA also provided DPPs with information regarding its existing secured debt, including loan covenants that could be impacted by an adverse judgment. In addition, DPPs understood that it could re-enter bankruptcy at any time, and that French bankruptcy proceedings could easily take five to ten years, and, assuming money remained after payment of secured creditors, would likely result in the substantial reduction of any judgment DPPs might obtain, if not outright disallowance.[2]

---

[1] Technicolor SA, *Annual Report 2013*, Technicolor (Mar. 27, 2014), http://www.technicolor.com/en/download/file/fid/6517.

[2] Thomson also argued that they would have substantial arguments in a French court that any judgment DPPs obtained should not be recognized.

1

6.	Finally, DPPs understood that Thomson was also subject to the claims of the Direct Action Plaintiffs ("DAPs") and the Indirect Purchaser Plaintiffs ("IPPs"). Collectively, the commerce involved in the DAP claims was roughly equal to DPPs' claims; the IPPs' claims substantially exceeded DPPs' claims. Several of the DAPs were set for trial against Thomson (and other defendants) in March of 2015. Thomson's ability to satisfy a judgment would be further reduced by a judgment or settlement of these claims; a judgment might also trigger bankruptcy.

7.	In these circumstances, DPPs concluded that there was a substantial possibility that they might not be able to collect anything from the Thomson Defendants regardless of the size of any judgment they obtained, and that the likelihood of netting substantially more than $9.75 million was low.

8.	Although potentially there are thousands of class members, DPPs' analysis of transactional data produced in the action indicates that a few hundred class members account for almost all of the purchases by the class. For example, the top twenty purchasers appear to account for nearly 50% of class purchases.[3] The average recovery from the Thomson settlement of these class members will therefore likely be approximately $240,000, less court awarded fees and expenses. The top 200 class members appear to account for over 75%. The 50th largest purchaser accounts for approximately 0.25% of class purchases—its likely payment would be approximately $24,000, less its share of attorney fees and expenses.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 1, 2015 in San Francisco, California.

*/s/ R. Alexander Saveri*
R. Alexander Saveri

---

[3] While DPPs believe that the transactional data provides a reliable indication of class members' purchases, the final determination of each class member's pro rata share will depend on the actual claims submitted.