# Exhibit 11

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

October 3, 2014

**FILED UNDER SEAL**

**HIGHLY CONFIDENTIAL**

**Via Email: jay.weil@fedarb.com**

Hon. Vaughn R. Walker (Ret.)
c/o Mr. Jay Weil
FEDERAL ARBITRATION, INC.
288 Hamilton Avenue, 3rd Floor
Palo Alto, CA 94301

      Re:    *In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917 – Reply To The Toshiba Defendants' Response To IPPs' Motion to Compel Interrogatory Responses

Dear Judge Walker:

      Indirect Purchaser Plaintiffs ("IPPs") reply to the Toshiba Defendants' ("Toshiba") September 26, 2014 opposition to the IPPs' Motion to Compel Interrogatory Responses. ("Opp. Br.") Although the IPPs originally filed their motion on September 12th against Toshiba, Panasonic, and Philips, every other defendant *except* Toshiba has agreed to supplement and correct its earlier interrogatory responses. Accordingly, this letter only addresses Toshiba's insufficient responses.

      As discussed in Plaintiffs' Opening Brief, the IPPs seek judicial resolution of three issues related to their Common Interrogatories.[1]

- *First*, IPPs seek an order requiring Toshiba to answer Interrogatories Nos. 9, 13-14, and 16, either with a narrative or by specifically identifying responsive

---

[1] IPPs have filed a separate motion to compel with regard to interrogatories directed solely at the Toshiba Defendants (the "Supplemental Interrogatories"). That motion has not yet been fully briefed.

documents, pursuant to the business records option of Rule 33(d)(1) (the "Business Records Option").[2]

- *Second*, IPPs seek clarification regarding the defenses Toshiba has identified in response to Interrogatory No. 7.[3]

- *Third*, IPPs seek an order requiring Toshiba to respond to all remaining interrogatories that it has refused to answer based on the objection that IPPs served more than 25 interrogatories. Although Toshiba partially remedied its deficient responses regarding Interrogatory No. 7 *after* IPPs' motion was filed, this supplemental response was incomplete. The parties remain deadlocked on the remaining issues addressed below.

A. **Toshiba's Responses to Interrogatory Nos. 9, 13, 14 and 16 Are Deficient.**

1. **Toshiba Never Objected to Interrogatory Nos. 9, 13, 14 and 16 on Duplication Grounds and Has Therefore Waived This Objection.**

Toshiba argues that it has not invoked the Business Records Option under Rule 33(d) in responding to IPPs' Interrogatories. Toshiba contends that it "objected to the IPPs' discovery requests as unreasonable in that they are duplicative of prior discovery requests that had been issued in this litigation." Opp. Br. at 1. But Toshiba never asserted a duplication objection in the responses to Interrogatories Nos. 9, 13, 14 and 16.[4] Toshiba has therefore waived this objection. Toshiba cannot assert it now unless the waiver is excused for good cause.[5] Here, Toshiba has not even admitted its failure to assert this objection, let alone attempted to establish "good cause."

To be sure, duplication is a proper ground for objection. *See* Order re Discovery and Case Management Protocol Order (April 3, 2012), Dkt. No. 1128 at 14 ¶ E. ("Duplication is a proper objection to written discovery requests.") The problem is that Toshiba did not assert this

---

[2] *See* Appendix A-1 of IPPs' September 12, 2014 Motion to Compel, which includes the relevant interrogatories.

[3] *See* Appendix B of IPPs' September 12, 2014 Motion to Compel.

[4] Unlike the other Toshiba Defendants, Toshiba America Electronic Components, Inc. ("TAEC") *did* object to the interrogatories based on duplication. TAEC's response only highlights the other Toshiba Defendants' failure to object to these interrogatories based on duplication.

[5] *See* Rule 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, *for good cause*, excuses the failure.") (emphasis added); *Safeco Ins. Co. of Am. v. Rawstrom*, 183 F.R.D. 668, 671 (C.D. Cal. 1998) ("Both the language of Rule 33 and its promulgation history suggest that grounds for objection must be stated in a response filed within the period allowed for response, and that objections sought to be interposed later are waived unless the waiver is excused for good cause.").

objection initially. It only did so later, to rationalize its failure to respond. Toshiba knows how to articulate this objection. It did so in its other interrogatory responses, such as its response to Interrogatory No. 8:

> Toshiba . . . further **objects to Interrogatory No. 8 on the ground that it is duplicative of discovery served in this litigation, which is in contravention of the Discovery Protocol**, including Request No. 5 of Direct Purchaser Plaintiffs' First Set of Requests for Production of Documents; Request Nos. 5, 9, and 22 of Direct Purchaser Plaintiffs' Second Set of Requests for Production of Documents; and Interrogatory No. 11 of Direct Purchaser Plaintiffs' First Set of Interrogatories.

(emphasis added). *See, e.g.*, Def. Attachment 4a (Toshiba Corporation's Objections and Responses to Indirect-Purchaser Plaintiffs' First Set of Interrogatories To All Defendants). Again, Toshiba did not assert any such objection to the Interrogatories at issue here.

It is possible that Toshiba intended to rely upon one of its 28 "General Objections," which it purported to incorporate into each response.[6] The Ninth Circuit has made clear, however, that this type of boilerplate objection is insufficient.[7] As one court recently concluded, "as to the responses that are made 'subject to' and 'without waiving the foregoing objections,' they are improper, the objections are deemed waived, and the response to the discovery request stands."[8]

In short, Toshiba has waived any objection on duplication grounds. It cannot revise the litigation record and claim that it actually objected to Interrogatories Nos. 9, 13, 14, and 16 based on duplication, when it did not do so.

### 2. Toshiba Must Answer Interrogatories Nos. 9, 13, 14, and 16 or Specifically Identify Relevant Business Records in Accordance With Rule 33(d)(1).

Toshiba cannot sidestep its failure to specify documents responsive to the IPPs' Interrogatories in accordance with the Business Records Option in Rule 33(d).

---

[6] *See, e.g.,* Toshiba Corp. General Objections ¶ 16 ("Toshiba Corp. objects to the Interrogatories, including the Definitions and Instructions provided therein, to the extent they are cumulative to or duplicative of other Interrogatories or Document Requests.").

[7] *See Burlington Northern & Santa Fe Ry. v. U.S. Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005); *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999) ("Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all.").

[8] *Sherwin-Williams Co. v. JB Collision Servs.*, 2014 U.S. Dist. LEXIS 93368, at * 7-8 (S.D. Cal. July 9, 2014).

Hon. Vaughn R. Walker (Ret.)
October 3, 2014
Page 4 of 10

Rule 33(d) requires that the responding party specify "the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Toshiba has not done so. Instead, Toshiba generally refers IPPs to the business records it provided in response to the Direct Purchaser Plaintiffs' document requests and interrogatories. This response is insufficient. *See Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 284 (C.D. Cal. 1996) (holding in a Rule 33(d) context that "merely refer[ing] to documents [defendant] claims to be in the possession of plaintiff . . . [is] insufficient; defendant [] is required to produce documents he has in his possession, custody or control, regardless of whether he believes plaintiff already has those documents.")

While some of the material Toshiba produced might be helpful, IPPs have no way of knowing which of Toshiba's already-produced business records are responsive to the Interrogatories. When Toshiba produced its business records, it did not identify which documents were responsive to which request(s). Without specific Bates numbers, the IPPs cannot derive the necessary answers to their Interrogatories "as readily as [Toshiba] could." Toshiba is more familiar than the IPPs with its own internal business records, its internal business vernacular, and the acronyms it uses. This places Toshiba in a superior position to employ search terms to find specific, responsive documents. Searching is further complicated by the fact that most of the responsive documents are likely in Japanese.[9] The IPPs will also be unable to determine whether a given document should be considered a draft or a final version.[10]

Moreover, Toshiba must already know the Bates numbers for the documents responsive to IPPs' Interrogatories. Toshiba presumably confirmed that the documents it previously produced were actually responsive before referring the IPPs to those documents. Indeed, pursuant to Rule 33(b)(3) Toshiba was required to verify under oath that the information could

---

[9] As described in IPPs' opening brief, several courts have held that responding to interrogatories by identifying foreign language documents does not satisfy Rule 33(d)'s requirement that a party "provide documents from which the response to the interrogatory is clearly ascertainable," and have required that translations of the documents be produced. *See, e.g., E. & J. Gallo Winery v. Rallo,* No. 1:04cv5153 OWW DLB, 2006 U.S. Dist. LEXIS 84048, at *5 (E.D. Cal. Nov. 8, 2006); *Sungjin Fo–Ma, Inc. v. Chainworks, Inc.,* No. 08-CV-12393, 2009 U.S. Dist. LEXIS 58059, at *11-12 (E.D. Mich. July 8, 2009); *Nature's Plus Nordic A/S v. Natural Organics,* 274 F.R.D. 437, 440 (E.D.N.Y. 2011).

[10] For example, Interrogatory No. 16 requests: "For each year during the Class period, state by year Your dollar amount of sales of CRT Products in the United States, both in the aggregate and by the size and type of the CRT Product." The data produced by Toshiba is incomplete, so IPPs cannot determine the answer to this interrogatory from Toshiba's data. It is also unclear whether certain data and spreadsheets in Toshiba's production are final numbers, forecasts or some other preliminary analysis. IPPs need to determine what Toshiba considers its total dollar amounts of sales in the United States and not just its preliminary analysis.

Hon. Vaughn R. Walker (Ret.)
October 3, 2014
Page 5 of 10

be found in the documents it previously produced. But rather than share the Bates numbers for the documents it identified – which would have been consistent with its obligations under Rule 33(d)(1) –Toshiba chose to spend its time comparing IPPs' interrogatories with discovery requests from four years ago and refused to resolve this dispute with IPPs during their meet and confer, resulting in this motion. There is no question that simply providing the Bates numbers for the documents Toshiba has identified, as the other defendants have done, would have been less burdensome than motion practice.

### 3. Interrogatories Nos. 9, 13, 14 and 16 Are Not Unreasonably Burdensome

Toshiba also objects to Interrogatories Nos. 9, 13-14, and 16 on the basis that they are unreasonably burdensome and significantly expand the scope of discovery at the end of the discovery cutoff. Both objections are meritless.

"[T]he party opposing discovery has the burden of showing that the discovery should not be allowed, and also has the burden of clarifying, explaining or supporting its objections with competent evidence." *Khasin v. Hershey Co.*, No. 5:12–CV–01862 EJD, 2014 U.S. Dist. LEXIS 23886, at * 1 (N.D. Cal. Feb. 21, 2014) (citation omitted). Toshiba has provided no basis for its burdensomeness argument other than its unsupported assertion that it will have "to search several locations outside the United States and restore countless backup tapes in order to provide the IPPs with the information they seek." Without a declaration or any evidence, it is impossible to determine the alleged burden on Toshiba or to weigh these purported burdens against the needs of this complex case. Because Toshiba has not provided *any* competent evidence, it has not even *assumed* its burden, much less met it.

Furthermore, the information sought in Interrogatories Nos. 9, 13, 14, and 16 is not outside the scope of discovery merely because it seeks production of global, rather than U.S., sales figures. As the Expert Report of Janet Netz makes clear, the calculation of IPPs' damages begins with *estimated* global sales figures because the data produced by Toshiba and other defendants is incomplete.[11] Toshiba's statement under oath of its *actual* sales figures is relevant to those calculations.

Moreover, Toshiba sales to other countries are relevant in evaluating the domestic effects[12] of the global conspiracy. For example, sales that are billed to and/or shipped to Mexico

---

[11] *See* April 15, 2014 Expert Report of Janet S. Netz, Ph.D. at pp. 118-123 and exhibit 79 ("Class Share of Worldwide CRT Revenues").

[12] The Ninth Circuit recently discussed the domestic effects exception to the Foreign Trade Antitrust Improvements Act ("FTAIA") in the context of liquid crystal display price fixing claims under the Sherman Act, "which was ***directed at foreign sales*** of panels that would be incorporated overseas into finished consumer products that would ultimately be sold in the United States." *See U.S. v. Hui Hsiung*, 758 F.3d 1074, 1093 (9th Cir. 2014) (emphasis added). While not conceding applicability of the FTAIA to the IPP claims, Toshiba's sales data

are highly likely to involve the United States since most CRT Products assembled in Mexico are shipped to and consumed in the United States. Similarly, a portion of CRT sales that Toshiba billed to and/or shipped to anywhere else in the world are highly likely to have been incorporated into CRT Products that are purchased in the United States. Indeed, a substantial portion of CRT TVs assembled in North America use CRT tubes manufactured elsewhere (e.g., 25% in 2003). During the relevant period, the United States consumed approximately 33% of all CDTs and 14.5% of CPTs.[13]

Based on these facts, Toshiba's worldwide sales are relevant to the IPPs' damages calculation and the domestic effects associated with the global conspiracy. Accordingly, the information the IPPs have sought is fully justified by the needs of this case.

### B. Toshiba Has Failed to Provide the Necessary Factual Basis for Its Remaining Defenses in Response to Interrogatory No. 7.

The IPPs served Interrogatory No. 7 to determine, at the close of fact discovery, whether Toshiba had *evidence* to support its 102 affirmative defenses. Both Toshiba's responses to the interrogatory itself, and its opposition brief, obfuscate the issues instead of clarifying them.

In response to Interrogatory No. 7, Toshiba provided a substantive factual response regarding only *one* of its defenses (Affirmative Defense No. 37).[14] After Plaintiffs filed this motion, Toshiba supplemented its response to this interrogatory. It admitted that it did not have evidence to support 10 additional defenses. *See* Opp. Br. at 6 and Attachment 9. This leaves 91 defenses as to which Toshiba did not respond at all. Toshiba's explanation for this failure turns on the definition of an "affirmative defense."

"Affirmative defenses plead matters extraneous to the plaintiff's prima facie case, which deny plaintiff's right to recover, even if the allegations of the complaint are true." *Fed. Deposit Ins. Corp. v. Main Hurdman*, 655 F. Supp. 259, 262 (E.D. Cal. 1987); *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2005) ("a defense is an affirmative defense if it will defeat the plaintiff's claim even where the plaintiff has stated a prima facie case for recovery under the applicable law."). Defenses that merely point out some defect in Plaintiffs' claim are *not* affirmative defenses. As the Ninth Circuit explained, "[a] defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).

---

regarding similar foreign sales of CRTs is clearly relevant to an evaluation of the domestic effects in this case.

[13] *See* April 15, 2014 Expert Report of Janet S. Netz, Ph.D., Ex. 70 ("Class Share of Worldwide CRT Revenues").

[14] Even this response was inadequate. However, during the meet and confer process, Toshiba agreed to provide supplemental responses.

Toshiba explains its failure to provide facts supporting the remaining 91 defenses by contending that those defenses are not "affirmative." As Toshiba explains, it "did not provide a response for the remaining defenses because those remaining defenses were not affirmative in nature." Opp Br. at 5. Because Interrogatory No. 7 asked only for facts supporting Toshiba's affirmative defenses, Toshiba's position is that it was only obligated to respond regarding those defenses that Toshiba deemed to be "affirmative" in nature.

Be that as it may, there are consequences flowing from this characterization. Defenses that merely raise defects in a plaintiff's claims are not cognizable as part of an answer and will be stricken. *See Joe Hand Promotions, Inc. v. Nguyen*, No. CV–04745 RMW, 2012 WL 1183738, at *2 (N.D. Cal. Apr. 6, 2012); *Gibson Brands, Inc. v. John Hornby Skewes & Co. Ltd.*, No. CV 14-00609 DDP SSx, 2014 WL 4187979, at *3 (C.D. Cal. Aug. 22, 2014) (striking, without leave to amend, defenses that are not affirmative defenses); *Jacobson v. Persolve, LLC*, No. 14-CV-00735-LHK, 2014 WL 4090809, at *7 (N.D. Cal. Aug. 19, 2014) (granting motion to strike defense with prejudice because it is not an affirmative defense); *Spears v. First American eAppraiseIT*, No. 5-08-CV-00868-RMW, 2014 WL 4647679, at *13 (N.D. Cal. Sept. 16, 2014) ("the second portion of EA's defense is simply a general statement that EA did not violate any laws. As this is not a defense on which defendants have the burden of proof . . . it is STRICKEN from the [First Amended Answer]").

While Plaintiffs might dispute Toshiba's characterization of some of these defenses as not being true "affirmative defenses," two things are abundantly clear. First, Toshiba takes the position before this Court that none of these 91 defenses is an affirmative defense. Opp. Br. at 5. By taking this position as part of its defense to the Motion to Compel, judicial estoppel will preclude Toshiba from later changing its position to suit its needs. Therefore, Toshiba will not be prejudiced if the Court strikes the defenses now. Second, despite IPPs' efforts to meet and confer, and despite the filing of this Motion to Compel, Toshiba has not availed itself of the opportunity to supplement its responses to any of these 91 defenses and state the facts it may have to support them. For this reason, it is entirely appropriate to strike the defenses from Toshiba's answer at this time.[15]

### C. Toshiba Cannot Avoid Responding to the Remaining Interrogatories Because the 25-Interrogatory Limit in Rule 33(a)(1) Does Not Apply to Multiparty Litigation.

Toshiba's gamesmanship is in full display in the creative counting practices it has used in answering the IPPs' interrogatories. In particular, by unilaterally determining what constitutes an "affirmative defense," Toshiba is attempting to turn the discovery process on its head and force the IPPs to guess how many interrogatories they are permitted to serve. As Toshiba

---

[15] No motion is required for the Court to strike Toshiba's non-affirmative defenses. *See* Rule 12(f)(1) (authorizing the court to unilaterally strike from a pleading an insufficient defense). These defenses are: 1-5, 7-12, 16-20, 22-30, 33-36, 38-55, 57-68, 70-88, and 90-102.

Hon. Vaughn R. Walker (Ret.)
October 3, 2014
Page 8 of 10

confirmed in its Opposition Brief, Toshiba "identified 11 affirmative defenses in each of their answers. Therefore, Interrogatory No. 7 constitutes 11 separate interrogatories as to each Toshiba Defendant." Opp. Br. at 6. Under Toshiba's theory, Toshiba is the sole arbiter of the number of interrogatories the IPPs have served. Had Toshiba counted 15 affirmative defenses, then the IPPs would be deemed to have served 15, and so on.

The same analysis applies to the responses to Interrogatory No. 25, which seeks facts supporting the denial of any request for admission. Toshiba chose to deny the most basic facts—ones that Toshiba's own documents show are not even in dispute. For example, Request for Admission 21 asks: "Admit that YOU intended that CRT Products containing CRTs manufactured by YOU would be purchased at Retail Establishments in the United States during the Class Period." Toshiba denied that it intended its CRTs to be placed into CRT products and sold in the United States. Similarly, Toshiba denies that it "conducted market research regarding the United States retail market and consumer preferences for CRT Products." Suffice it to say that Toshiba's documents show otherwise.[16]

Admission requests serve purposes different from the purposes of other forms of discovery. "Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be." Advisory Committee Note to Rule 36(a), 48 F.R.D. 531, 533 (1970). "The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial." *Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir. 1981). The IPPs used Rule 36 correctly, and Toshiba failed to respond in kind. By denying facts that are not truly in dispute, Toshiba became the architect of its own "burden."

There is something very wrong with the discovery process if Toshiba's approach is deemed correct. Nevertheless, Toshiba's positions need not be addressed here, because the IPPs' interrogatories were well within the numerical limits of Rule 33.

The case law the IPPs cited in their opening brief fully supports the plain meaning of Rule 33(a)(1): that each "*party* may serve on *any other party* no more than 25 written interrogatories." (Emphasis added.) The rule confers on *each* class representative the right to assert 25 interrogatories on *each* defendant. Toshiba claims that a certified class action should be treated differently because "the issues of law and fact are by necessity common among the class, so the 25 interrogatory limit should also apply." Opp. Br. at 8. Toshiba has not cited a single case for this common-interest limitation. It is unlikely that any such cases can be found, because the proposition is contrary to Rule 33's language.

According to Toshiba's logic, although the putative plaintiffs in an uncertified class may serve 25 interrogatories apiece, the number of interrogatories the class as a whole is permitted to serve would shrink to 25 as soon as the Court certified a class. This cannot possibly be the rule.

---

[16] *See, e.g.,* TAEC-CRT-00065688, attached as Exhibit A to the Declaration of Jennifer S. Rosenberg In Support of Motion to Compel Further Responses and Production of Documents.

Hon. Vaughn R. Walker (Ret.)
October 3, 2014
Page 9 of 10

Moreover, according to this logic, the defendants would be precluded from serving a set of 25 interrogatories on each class representative; only 25 interrogatories could be served on the IPP class as a whole. It is doubtful that Toshiba, or any other rational defendant, would ever concede it was fair or appropriate to limit the interrogatories they could direct at each class representative in a multiparty class action.

Toshiba also misses the point of the cases cited by the IPPs. The IPPs cited to *Trevino v. ABC Am., Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006) not because that case involved a class action, but because the plaintiffs in *Trevino* served their interrogatories jointly. Toshiba claims that doing so limits the total number to 25,[17] but in *Trevino*, the District Court counted them separately for each plaintiff. Likewise, as the court in *Zamora v. D'Arrigo Bros. Co.*, No. C04-00047 JW (HRL), 2006 U.S. Dist. LEXIS 21208, at *10 (N.D. Cal. Apr. 11, 2006) made clear in the context of a certified class action, the number of interrogatories that may be served in collective actions is 25 multiplied by the number of parties. That the court in *Zamora* only allowed 29 interrogatories misses the point. *See* Opp. Br. at 8. The point is that courts in *this District* have interpreted Rule 33 in the same manner as the IPPs discussed in their opening brief.

Rather than accept the plain meaning of Rule 33, Toshiba concocts an absurd argument that the IPPs are somehow entitled to serve 28,125 interrogatories in this case. The IPPs certainly do not claim to have this right. Plaintiffs have served only 38 interrogatories on each Toshiba entity. Fact discovery is closed. The IPPs are unlikely to serve any more interrogatories.

Finally, requiring Toshiba to answer these remaining interrogatories, whether pursuant to Rule 33 or under the Court's discretionary powers, is reasonable in the context of this case. Indeed, the 1993 Advisory Committee Notes to Rule 33 directly address this discretionary power regarding the numerical limit:

> [L]eave to serve additional interrogatories is to be allowed when consistent with Rule 26(b)(2). The aim is not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device. In many cases it will be appropriate for the court to permit a larger number of interrogatories . . . .

Here, a larger number of interrogatories is justified strictly based on the complexities of this case. As the Court is aware, the discovery in this case has been massive. In fact, approximately 2 million documents (made up of 8,407,502 pages) have been produced to date, and approximately 150 depositions taken. Given these large numbers, the limited number of interrogatories served on Toshiba is extremely modest.

Accordingly, the IPPs respectfully request that your Honor recommend entry of an order compelling the Toshiba Defendants to fully respond to all of the IPPs' remaining interrogatories.

---

[17] *See* Opp. Br. at 8 citing *Pas Communications, Inc. v. Sprint Corp.*, No. 99-2182-JWL, 2000 WL 1867571, at *12 (D. Kan. Dec. 1, 2000).

Hon. Vaughn R. Walker (Ret.)
October 3, 2014
Page 10 of 10

        Sincerely,

        */s/* Mario N. Alioto_____
        Mario N. Alioto

        Lead Counsel for the Indirect Purchaser Plaintiffs

cc: All Counsel (*via* electronic mail)