# Exhibit 12

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

October 10, 2014

**FILED UNDER SEAL**
**HIGHLY CONFIDENTIAL**

**Via Email: jay.weil@fedarb.com**

Hon. Vaughn R. Walker (Ret.)
c/o Mr. Jay Weil
FEDERAL ARBITRATION, INC.
288 Hamilton Avenue, 3rd Floor
Palo Alto, CA 94301

> **Re:** *In re Cathode Ray Tube (CRT) Antitrust Litigation*, **MDL No. 1917 –**
> **Reply To Toshiba's and Panasonic's Joint Response To IPPs' Motion to Compel**
> **Further Interrogatory Responses**

Dear Judge Walker:

I write on behalf of the Indirect Purchaser Plaintiffs ("IPPs" or the "Plaintiffs") in reply to Toshiba's and Panasonic's October 3, 2014 opposition to the IPPs' Motion to Compel Interrogatory Responses. ("Opp. Br.").

Defendants' opposition raises no issues that would preclude the Court from granting the IPPs' motion.

First, with regard to Toshiba's response to Interrogatory No. 7, Toshiba has identified some defenses as "affirmative," and responded only as to those. In the "omnibus" motion, the IPPs have asked that the Court strike any defense that Toshiba has not identified as "affirmative." This relief can be granted in connection with the "omnibus" motion.

Second, Toshiba and Panasonic have provided no reason why they should be permitted to withhold statements of witnesses given to U.S. or foreign antitrust authorities regarding the CRT conspiracy. The CRT price fixing conspiracy was worldwide in scope. That any given regulatory agency is primarily interested in conduct having an effect or taking place within its national borders does not render witness statements about the conspiracy irrelevant to other aspects of the conspiracy or its effects on the United States. Furthermore, no government entity has taken a position against the production of the witness statements, nor is there any other indication that comity will be disserved by their production.

Hon. Vaughn R. Walker (Ret.)
October 10, 2014
Page 2

Finally, Toshiba contends that IPPs have waived their right to challenge its other objections to IPPs' First Set of Interrogatories to the Toshiba Defendants ("the Supplemental Interrogatories"). Toshiba is wrong. IPPs asked Toshiba during the meet and confers to discuss its other objections to these Interrogatories, but Toshiba insisted on standing on the sole objection that IPPs had served an excessive number of interrogatories. Toshiba has ceded any other objections by refusing to discuss them.

## I.      Interrogatory 7 Has Been Fully Briefed in the "Omnibus" Motion

Toshiba has finally explained that it is not standing on its "supernumeracy" objection with respect to Interrogatory Number 7. Opp. Br at 4-7. Moreover, Toshiba has admitted that 91 of its defenses do not constitute "affirmative defenses" under the Federal Rules. *Id.* Therefore, the IPPs agree with Toshiba that the issues relating to Interrogatory No. 7 have been fully briefed in the motion filed September 10, 2014. Rather than seeking an order requiring Toshiba to provide facts supporting these defenses, Plaintiffs simply request that those 91 defenses be stricken from Toshiba's answers on the Court's own motion, as permitted under Fed. R. Civ. Pro. 12(f)(1).

## II.      Toshiba and Panasonic Should Be Required to Produce Corporate and Witness Statements Made to Foreign Antitrust Regulators

Defendants' opposition to the motion to compel further response to Requests for Production Nos. 62 and 63 does not accurately represent the facts. This dispute is not like the one Special Master Quinn resolved in *In re TFT-LCD Antitrust Litigation* 07-cv-1827-SI (N.D. Cal. Apr. 26, 2011) (the "*LCD* Order"). Nor is it analogous to the ongoing dispute in this case between the Direct Action Plaintiffs and certain defendants, with respect to the production of the final decision by the European Commission ("EC") after its investigation of the CRT price fixing conspiracy in Europe (the "*EC Decision* Order").

Two important facts distinguish the *LCD* Order and the *EC Decision* Order.

First, no foreign governmental entity has taken a position in this dispute. In *LCD*, officials of both the EC and the Japan Fair Trade Commission ("JFTC") wrote to the Special Master and asked that the responding party not be ordered to produce the documents and that the Special Master not review them *in camera*. Likewise, a letter from the EC opposing discovery of the EC Decision in this case was the deciding factor in the Court's denial of the motion for production of the EC Decision. Had the governmental authorities in these disputes not intervened, it seems certain that the discovery would have been granted (*See* Toshiba's and Panasonic's attachments 13 and 14.) The same is true of the denial of discovery in *In re Rubber Chemicals Antitrust Litigation*, 486 F.Supp.2d 1078, 1084 (N.D. Cal. 2007), upon which defendants heavily rely: ("In this case, a foreign entity has taken a clear position and articulated reasons why it believes production of the requested documents would harm its interests").

Second, Plaintiffs are not asking that defendants produce or identify all of the documents they turned over to foreign antitrust authorities. Plaintiffs are asking only for documents that clearly

Hon. Vaughn R. Walker (Ret.)
October 10, 2014
Page 3

have *never* been produced – statements given by Toshiba or Panasonic-affiliated witnesses in the course of investigations into the CRT conspiracy.  Thus, Special Master Quinn's observations in *LCD* about the nature of the material he reviewed *in camera*, and his conclusion that most of the material sought probably duplicated what had already been produced, are not relevant here.

Similarly, Judge Conti denied the motion to compel in the EC Decision case without prejudice, because he relied on the defendants' representation that the EC would issue  a public version of the decision before the close of discovery in this case, and advised them "to assist in that task."  No such alternative route to discover the documents sought in Request Nos. 62 an 63 exists here.

With these facts in mind, it is apparent that Toshiba and Panasonic's arguments about relevance and comity must fail.

    A.    <u>Relevance</u>.

These witness statements exist.  Toshiba's witness Mr. Nishimura admitted as much during his deposition[1] and Panasonic confirmed their existence during the meet and confer process.[2]  Neither Toshiba nor Panasonic claims that they are not in possession of responsive documents.

Defendants know what information is contained in these witness statements.  If the statements only concerned conduct taking place outside the United States, that is the very first thing that defendants would have said. But they make no such assertion. Thus, it may be assumed that the statements are not limited to conduct in Asia or Europe.

Even if the Court is reluctant to make that assumption, there is no doubt that witness statements about the worldwide CRT conspiracy that is alleged in this action are discoverable under Fed. R. Civ. Pro. 26 (b)(1).  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. …. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Witness statements given to an investigating authority concerning the defendants' business conduct are likely to lead to the discovery of admissible evidence such as the identification of documents or previously undisclosed facts, the location of witnesses, or of party admissions.[3]

---

[1] Declaration of Daniel Birkhaeuser dated September 19, 2014, Exhibit D.

[2] *See* Reply Declaration of Jennifer Rosenberg, Exhibit R-1 (Sept. 18, 2014 letter from Eva Cole to the IPPs, stating that, "Panasonic Defendants are willing to confirm that certain employees of the Panasonic Defendants made statements to certain foreign Government Antitrust Authorities. . . .")

[3] Here, Your Honor will recall Toshiba's "cat and mouse" game concerning the location of its former employees, which forced IPPs to seek (and obtain) an order that they were either to be produced or their documents admitted at trial for all purposes because the employees are unavailable.

Hon. Vaughn R. Walker (Ret.)
October 10, 2014
Page 4

In *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 05-MD-1720 JG JO, 2010 WL 3420517 (E.D.N.Y., Aug. 27, 2010), plaintiffs in a price fixing case sought discovery of 1) the transcript of a hearing before the EC concerning MasterCard's anticompetitive conduct, and 2) the "Statement of Objections" (roughly analogous to a complaint and a set of findings) prepared by the EC concerning Visa's anticompetitive conduct.  The EC objected.

Considering similar issues to those defendants raise here, the District Court had no trouble determining that the documents meet Rule 26's standard of discoverability:

> Though the European investigation has a different geographic scope, the European documents are plainly relevant to this litigation, and hence are presumptively subject to disclosure by the defendants in this action. Visa and MasterCard operate across international borders, and their transaction-fee practices in the EU are at least similar to those in the United States. The MasterCard Oral Hearing recording may contain admissions by MasterCard that would constitute admissible evidence in this action. Similarly, the Visa Statement of Objections may include admissions by Visa, by MasterCard or by member banks collected by the Commission in the course of its investigation. And each document may alert plaintiffs to further relevant lines of inquiry.

*Id.* at *5.

The same analysis applies here.  While the EC or JFTC may be charged with investigating conduct or effect within their jurisdictional borders, the defendants "operate across international borders."  Defendants intended the price-fixing conspiracy in which they participated to have a worldwide effect, and they succeeded.  Defendants quote from a portion of the JFTC Order referring to sales of CPTs to "Japanese manufacturing and sales companies of CRT televisions by CRT manufacturing subsidiaries located in the Southeast Asian Region."  But that does not mean the effects of this conspiracy occurred only in Japan.  Indeed, defendants are very much aware that CRTs manufactured and sold in Japan were used to make CRT Products for customers in the United States.  As one example, prices for CRTs manufactured by Toshiba's CRT factories around the world were negotiated by Toshiba Corporation and Sharp Corporation at the headquarter level in Japan.[4]  These CRTs were then incorporated into TVs sold in the US:

> Q:      Do you know which Toshiba group companies sold CRTs to Sharp group companies?

> A:      First of all, the company in Thailand where I was working did sell to Sharp. And also I think there was a time when CPT manufactured in the Japanese plant of Toshiba was sold to Sharp. And I think there was sales(sic) to Sharp from the Indonesian factory as well.

[4] Reply Rosenberg Declaration, Exhibit R-2 (Deposition of Kazuhiro Nishimaru) at 467:4-468:5: "A: From the year 2000 and on Mr. Sato was assigned to Sharp, so I think Mr. Sato was involved in price negotiations with Sharp. Q: When you say he was assigned to Sharp, was it a particular company within the Sharp group or was it all of the Sharp group companies that -- that the Toshiba group did CRT business with? A: As far as I understand, although Sharp had many factories, price negotiations for CPT was done by Sharp headquarters. So at that time Mr. Sato was assigned to sales for Sharp headquarters and was engaged in all of those negotiations."

Hon. Vaughn R. Walker (Ret.)
October 10, 2014
Page 5

Q:      Any others that you remember?

A:      I think there was [sic] also sales of Braun[5] tube CPT from TDD American factory to Sharp as well.

Q:      And those sales from TDD American factory to Sharp occurred in the United States?

A:      I don't really have a good understanding, but I think the sales were perhaps to either the Sharp America or Sharp Mexico plants.

Q:      Is it your understanding that those sales were for CRT T.V.s to be sold in the United States?

A:      I don't have an exact understanding, but I think sales for T.V. sets to be sold in the U.S. was also included.[6]

Thus, although any given national antitrust investigation might focus on activity impacting that particular nation, the conspiracy cannot be so neatly divided.  Defendants' price-fixing activities in Japan or Europe had an impact on consumers in the United States – the IPPs.  Ultimately, the issue of domestic impact is a legal question that has yet to be decided in this case. The defendants cannot avoid their discovery obligations by challenging relevance based on their own, self-serving legal conclusions on that issue.

Finally, as the District Court in *Payment Card Interchange Fee* pointed out, the witness statements may contain admissions, they may identify other witnesses or documents, or they may provide a basis for impeachment of those or other witnesses at trial.  These are the very purposes for which parties conduct discovery.

B.      *Comity.*

There is a recognized five-part test for whether a court should "issue an order directing production of information located abroad:"[7]

In deciding whether to, and in framing such an order, a court or agency in the United States should take into account the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine

---

[5] "Braun" tubes is the Japanese term for CRTs.

[6] Exhibit R-2 at 465:6-466:6.

[7] Plaintiffs do not know whether the information sought is located abroad, but for purposes of this motion, assume so.

Hon. Vaughn R. Walker (Ret.)
October 10, 2014
Page 6

important     interests     of     the     state     where     the     information     is     located.[8]

Satisfying the first factor, the IPPs have already shown the relevance of the witness statements.  Contrary to defendants' assertions, this is not simply cumulative document discovery.  Witness statements are always of special interest to adversaries:  "Moreover, where access to witnesses or to their information is unequal, discovery of their statements is often granted solely to help a party prepare for trial regardless of any eventual evidentiary value of the out-of-court statements."  *U.S. v. Nobles* (1975) 422 U.S. 225, 251.  Here, particularly because Toshiba has made a practice of denying Plaintiffs access to witnesses, the witness statements to investigating agencies show particular promise of assisting the IPPs in trial preparation.

Second, IPPs' request is very specific.  In contrast to *LCD*, where the plaintiffs sought virtually all the documents that had been produced to the EC, here the IPPs seek **only** witness statements made to governmental antitrust agencies.  During the meet and confer process, the IPPs further narrowed the requests and clarified that they seek only statements made to **foreign** Governmental Antitrust Authorities.  *See* Rosenberg Declaration, Exhibit R-3 at p. 11.

Some or all of the information sought may have originated or been reviewed or handled in the United States. But even assuming that none did, that factor is far from weighty given that this dispute that involves Toshiba and Panasonic, two international conglomerates, and an international price fixing conspiracy. Witness statements should not be burdensome to produce no matter where they originated.  Moreover, regardless of where the witness statements originated, they should be produced as relevant to this proceeding because they likely discuss matters that had an impact on the United States.

Third, as the Court is aware, the IPPs have encountered extreme difficulties in securing the information from Toshiba and its witnesses by alternative means.  This Court has already had to declare certain witnesses unavailable because of Toshiba's recalcitrance.

Toshiba correctly observes that Your Honor's ruling at the Nishimura deposition only permitted Plaintiffs to question the witness about whether he had testified before foreign or U.S. governmental agencies.  That was the relief Plaintiffs requested at the time.  However, through that testimony, Plaintiffs have discovered that witnesses gave written statements to the authorities that have never been produced in this litigation.  Having now established this foundational fact, Plaintiffs seek the production of all such statements.

The statements are important to this litigation.  Although Mr. Nishimura spent 3 days preparing for his deposition (Rosenberg Decl., Exhibit R-4 at p. 27:6-7), there were many basic facts he did not recall.  For example, he was shown an exhibit memorializing a conspiratorial meeting that Mr. Nishimura had with co-defendant Chunghwa.  The witness did not recall whether the exhibit reflected the type of information exchanged with Chunghwa during such visits.  *Id.* at 106:6-8.  Similarly, Mr. Nishimura did not remember whether he received competitor information from his Toshiba colleagues.  *Id.* at 123:21-22.  Nor did he recall participating in certain meetings among competitors, called ASEAN meetings.  *Id.* at 222:3-5; 224:3-6.

---

[8] *In re Air Cargo Shipping Services Antitrust Litigation*, 278 F.R.D. 51, 52-53, (E.D.N.Y. 2010).

Hon. Vaughn R. Walker (Ret.)
October 10, 2014
Page 7

A statement made closer in time to the events in question may well refresh Mr. Nishimura's recollection. Moreover, the statement is in his own words and will be difficult to deny or refuse to explain. When permitting Plaintiffs to question Mr. Nishimura about foreign and U.S. governmental investigations, Your Honor ruled that the previous prohibition on such discovery should be lifted. Plaintiffs' request for the statements themselves is consistent with that ruling and is compelled by the circumstances.

With respect to Panasonic[9], plaintiffs have also encountered a lack of alternative means to discover the same information. Panasonic has refused to produce former employees or to provide last known addresses for them.

The JFTC issued a cease-and-desist order to MTPD and other CRT manufacturers in October 2009 and scheduled a hearing before the Commission for March 2010. Rosenberg Decl., Exhibits R-5, R-6. The named representative for MT Picture Display Co., Ltd. (Japan) was former MTPD President Tatsuo Tobinaga. Exhibit R-6.

Mr. Tobinaga, however, has not been made available for a merits deposition in this action. On July 16 and 17, 2012, Mr. Tobinaga testified on behalf of Panasonic Corporation as a Rule 30(b)(6) witness. Rosenberg Decl., ¶11. Because the Rule 30(b)(6) deposition was limited to issues relevant to class certification, Plaintiffs did not question Mr. Tobinaga regarding the CRT conspiracy. Mr. Tobinaga was included in a list of prospective deponents Plaintiffs provided to Panasonic on October 5, 2012. Rosenberg Decl., Exhibit R-7. Plaintiffs asked to schedule his deposition on July 25, 2013. *Id.,* Exhibit R.8. On July 31, Panasonic responded that Mr. Tobinaga was no longer employed by Panasonic and would not be made available for a merits deposition. *Id.* Thus, his witness statement is likely the only testimony or statement on the merits that the IPPs will obtain from Mr. Tobinaga.

Finally, the fifth factor, "the extent to which compliance with the request would undermine important interests of the state where the information is located," which tipped the scales in *LCD* and *Rubber Chemicals Antitrust Litigation* against production of the information, weighs in favor of production here. In those cases, as well as in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* the governmental entities themselves intervened and asked the courts not to order production of the materials.

Here, not one government agency has contacted the Court, indicating that production of the witness statements is not a concern to them. At least one of the agencies, the JFTC, has concluded its investigation and has already issued an order. None of the concerns invoked in the cases cited by defendants, such as illegality, cumulativeness, or hindrance to an ongoing investigation, has been invoked here.

Defendants merely speculate on what the governments might say. They are not deputized to protect the interests of foreign government investigation entities. Rather, they must comply with

---

[9] Panasonic includes Panasonic Corporation f/k/a Matsushita Electric Industrial, Panasonic Corporation of North America and MT Picture Display Co., Ltd. ("MTPD").

discovery given that none of these entities has "taken a clear position and articulated reasons why it believes production of the requested documents would harm its interests."[10]

### III. Defendants Have Failed to Support Their Objections to the Supplemental Interrogatories

In their initial meet and confer, counsel for the IPPs asked counsel for Toshiba to meet and confer about all of Toshiba's objections to the Supplemental Interrogatories, which address ownership and control over MTPD. Rosenberg Decl., ¶12. Toshiba's counsel *refused* to meet and confer about any objections other than whether Plaintiffs had exceeded a 25-interrogatory limit. Toshiba's refusal was confirmed in counsel's subsequent letter:

> "With respect to Toshiba's miscellaneous objections, including burden and duplicative discovery, to the First Set of Interrogatories to the Toshiba Defendants, you declined to negotiate with the object of reaching an agreement on serving responses notwithstanding those objections, preferring to wait until the supernumeracy issue is resolved.[11]

Toshiba did not dispute this summary of its position.[12]

Now Toshiba claims that IPPs "do not challenge the Toshiba Defendants' reliance on those other objections." Not so. IPPs tried to discuss these objections when the parties met and conferred on Toshiba's responses. Toshiba declined. Toshiba also could have defended its objections in its opposition objection to Your Honor, explaining why any specific objection should preclude production. Toshiba did not do so. IPPs should not be faulted for Toshiba's failure to substantiate its boilerplate objections.[13] Meanwhile, IPPs met and conferred in good faith with Panasonic to resolve similar objections to nearly identical discovery. In contrast, Toshiba's intransigence throughout the meet and confer process is reflected in its opposition brief., which *still* does not explain the basis for these boilerplate objections. Toshiba should not be rewarded for its failure to meet and confer in good faith, which has wasted IPPs' and the Court's time.

The IPPs therefore request that Your Honor issue an order requiring Toshiba to respond in full to Plaintiffs' Supplemental Interrogatories.

---

[10] *In re Rubber Chemicals Antitrust Litigation,* 486 F.Supp.2d at 1084.

[11] *See* Exhibit A to September 19, 2014 Declaration of Daniel E. Birkhaeuser in Support of this Motion.

[12] *See id.,* Exhibit B.

[13] "The objecting party has the burden to substantiate its objections. The litany of overly burdensome, oppressive, and irrelevant does not alone constitute a successful objection to a discovery request." *In re ATM Fee Antitrust Litigation*, 233 F.R.D. 542, 545 (N.D. Cal. 2005).

Hon. Vaughn R. Walker (Ret.)
October 10, 2014
Page 9

Very truly yours,

/s/ Mario N. Alioto
Mario N. Alioto
Lead Counsel for the Indirect Purchaser Plaintiffs

cc. All Counsel (*via* electronic mail)