UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917 |
| | Master Case No. C-07-5944 JST |
| | Case No. 14-cv-2058 JST |
| This Order Relates To:<br><br>Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al., Case No. 14-cv-2058 JST | **ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH THOMSON AND TDA DEFENDANTS** |

The Direct Purchaser Plaintiffs ("DPPs") move for Final Approval of Class Action Settlements with: Defendants Thomson SA (now known as Technicolor SA) and Thomson Consumer Electronics, Inc. (now known as Technicolor USA, Inc.) (collectively "Thomson"); and Technologies Displays Americas LLC (formerly known as Thomson Displays Americas LLC) ("TDA") (collectively "Settling Defendants" or "Defendants"). ECF No. 4091 ("Mot."). No objection to the settlement has been filed with the Court. See ECF No. 4091-2 ("Murray Decl.") ¶ 10. Only sixteen (16) class members have requested exclusion from the settlement class in response to the settlement notice, namely the Direct Action Plaintiffs ("DAPs"). Id. ¶ 9. The Court held a final fairness hearing on December 15, 2015. No objections were presented at that hearing. For the reasons set forth below, the Court hereby grants the Motion for Final Approval of Class Action Settlement.

**I.   BACKGROUND**

   **A.   Factual and Procedural Background**

This multidistrict litigation arises from an alleged conspiracy to fix prices of cathode ray tubes ("CRTs"). ECF No. 4094-1 ("Saveri Decl.") ¶ 3. The alleged conspiracy ran from March 1,

1995 through November 25, 2007.  Id. ¶ 4.  The first DPPs filed a class action complaint on behalf of itself and all others similarly situated in November 2007, alleging a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15.  Id.  Numerous additional actions followed.  Id.  The Judicial Panel on Multidistrict Litigation ("JPML") transferred all related actions to this Court on February 15, 2008.  ECF. No. 122; Saveri Decl. ¶ 3.  Saveri & Saveri, Inc. was appointed Interim Lead Class Counsel for the nationwide class of direct purchasers on May 9, 2008.  ECF No. 282; Saveri Decl. ¶ 3.

Discovery and motion practice in this Multidistrict Litigation case ("MDL") have included several motions to dismiss the Consolidated Amended Complaint ("CAC"), see ECF. Nos. 463-493, 665, interrogatories, Saveri Decl. ¶ 6, extensive meet and confer practice and several motions to compel, ECF Nos. 1007, 1008, motions to strike allegations from the CAC, ECF Nos. 880, 947, 953, 957, 968, and motions for summary judgment, ECF Nos. 1013, 1221, 1470; Saveri Decl. ¶ 9.  The DPPs have received over 5 million pages of documents produced by Defendants.  Saveri Decl. ¶ 6.

On May 20, 2014, the DPPs filed their First Amended Complaint against Mitsubishi and the Settling Defendants.  Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Elec.Corp., et al., Case No. 14-cv-2058 JST (N.D. Cal.) (ECF. No. 14-3).  The DPPs later filed a motion for class certification on November 7, 2014.  After that motion was filed, the DPPs and the Defendants reached the Settlement Agreement (or "Settlement") before the Court.  On July 8, 2015, the Court granted the DPPs' motion for class certification against Mitsubishi.  ECF No. 3902.  On November 9, 2015, the Court granted the DPPs' motion for authorization to send notice to the class.  ECF No. 4176.  However, notice was sent to class members regarding Thomson and TDA in response to the order preliminarily approving the Settlement.  See ECF No. 3872; see also Murray Decl. ¶¶ 4–5.

Notice has now been given to the class pursuant to the Court's order.  Murray Decl. ¶¶ 1-10.  Only 16 class members have requested exclusion from the class, and none have objected.  No notices of intent to appear at the fairness hearing were filed or sent to Gilardi.  Id. ¶ 9; Saveri Decl. ¶ 21.  No one appeared at the hearing to object.

1    There have been seven prior settlements between the DPPs and other defendants in this
2    case, valued at $10 million ("CPT" or "Chunhwa"),[1] $15 million ("Philips"),[2] $17.5 million
3    ("Panasonic"),[3] $25 million ("LG"),[4] $13.5 million ("Toshiba"),[5] $13.45 million ("Hitachi")[6] and
4    $33 million ("Samsung SDI"),[7] respectively.  Saveri Decl. ¶¶ 13-18.  In each of these prior DPP
5    settlements, the Court certified a settlement class, appointed Saveri & Saveri, Inc. as Settlement
6    Class Counsel, and found that the manner and form of providing notice of the settlements to class
7    members was the best notice practicable under the circumstances.  See ECF Nos. 1412, 1508,
8    1621, 1791, 2311, 2534.  For each, the Court also entered orders of final approval and final
9    judgments of dismissal with respect to the settling (and released) defendants.  See ECF Nos. 1413,
10   1414, 1509, 1510, 1622, 1792, 3932, 3933.

### B.   The Proposed Settlement

The Settlement provides that Defendants will pay the DPP class $9,750,000 in cash in exchange for dismissal with prejudice and a release of all claims asserted in the FAC.  Saveri Decl. ¶¶ 20, 23.  Defendants will also cooperate with the DPPs in the prosecution of this action by: (1) providing copies of all discovery (including all documents, interrogatories, requests for admission, etc.) Defendants produced to any other party in the Action; (2) providing a declaration and/or custodian establishing the authenticity of Defendants' transactional data, and foundation for any document or data authored by Defendants needed at summary judgment or trial; (3) allowing Counsel to question percipient witnesses noticed for deposition by any other party in the Action with whom Defendants has not settled; and (4) using their best efforts to make available two

---

[1] Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd.
[2] Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., and Philips Da Amazonia Industria Electronica Ltda.
[3] Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic Corporation of North America, and MT Picture Display Co., Ltd.
[4] LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd.
[5] Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.
[6] Hitachi, Ltd.; Hitachi Displays, Ltd. (n/k/a Japan Display Inc.) ("Hitachi Displays"); Hitachi America, Ltd.; Hitachi Asia, Ltd.; Hitachi Electronic Devices (USA) Inc.
[7] Samsung SDI Co. Ltd. (f/k/a Samsung Display Devices Co., Ltd.); Samsung SDI America, Inc.; Samsung SDI Brasil, Ltd.; Tianjin Samsung SDI Co., Ltd.; Samsung Shenzhen SDI Co., Ltd.; SDI Malaysia Sdn. Bhd.; SDI Mexico S.A. de C.V.

persons for trial testimony, each of whom will be, at the time of trial, a director, officer, or employee of Defendants whom Lead Counsel reasonably believes to have knowledge regarding the DPPs' claims. Saveri Decl. ¶ 25. Defendants' sales remain in the case for the purpose of computing the DPPs' claims against the remaining non-settling defendants, i.e., Mitsubishi. Saveri Decl. ¶ 24.

The Settlement becomes final upon approval by the Court, entry of final judgment of dismissal, and either expiration of any time to appeal or affirmance of the judgment on appeal with no further possibility of appeal. See Saveri Decl., Ex. 1 ("Settlement Agreement") ¶ 11. Upon the Settlement becoming final, Plaintiffs and Class members will relinquish any claims against Settling Defendants as described in the Settlement Agreement. See Settlement Agreement ¶ 13. The release, however, excludes claims for product defects or personal injury or breach of contract arising in the ordinary course of business or indirect purchaser claims for CRT Products that were not purchased directly from Defendants or their alleged co-conspirators. Id.

Subject to the approval and direction of the Court, the Settlement payment will be used to: (1) pay members of the class, Settlement Agreement ¶ 21; (2) pay attorneys' fees, costs, and expenses to the extent later awarded by the Court, id. ¶¶ 22-23; (3) pay all taxes associated with any interest earned on the escrow account, id. ¶ 17(f); and (4) up to $300,000 may be used to pay for Notice costs and future costs incurred in the administration and distribution of the Settlement payments, id. ¶ 19(a). Payments to the class will be on the basis of each class member's pro rata share of the total affected sales, with no portion reverting to Defendants. See Saveri Decl. ¶ 30.

### C. Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

## II. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is

fundamentally fair, adequate, and reasonable." Id. at 1026.  To assess a settlement proposal, the district court must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Id.

### B. Analysis

The Court finds that the class members have received adequate notice and that the proposed settlement is fair, adequate, and reasonable.[8]

#### 1. Adequacy of Notice

The Court previously approved the parties' proposed plan for providing notice to the class. ECF No. 3872 at 2-3.  The Court notes that the notice plan was substantially similar to the notice plan used in prior DPP settlements in this case.  See Saveri Decl. ¶ 28.  The DPPs have shown that the claims administrator has fulfilled the obligations of the notice plan by mailing and emailing notices to class members on June 26, 2015.  Murray Decl. ¶¶ 4-5.  Approximately 17,787 Class Notices were mailed or electronically mailed to class members residing throughout the United States.  See id.  A website and phone number for additional information were also established on or about June 7, 2012, where the same information could also be found.  Id. ¶¶ 6-7.  In addition, notice was published in two major newspapers on June 29, 2015.  See id. ¶ 8; id. Ex. B-C.

In light of the foregoing, the Court concludes that the parties have provided the best practicable notice to class members.

#### 2. Fairness, Adequacy, and Reasonableness

##### a. Strength of Plaintiffs' case

Approval of a class settlement is appropriate when plaintiffs must overcome significant

---

[8] The Court also finds that the scope of the Settlement Agreement's release, Settlement Agreement ¶ 13, is permissible because the proposed release only releases claims based on the factual predicate of the complaint.  See Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010).

5

barriers to make their case. Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Here, Plaintiffs believe that they have a strong case, but Defendants have asserted that they have strong defenses that would serve to eliminate or limit their liability or damage exposure. The strength of Plaintiffs' case and Defendants' defenses may depend largely on the motions still pending before the Court, making it difficult for the Court to determine the actual strength or weakness of one side versus the other without first deciding the motions. Thus, it is unclear the degree to which this factor weighs in favor of or against granting final approval.

### b. Risk of continued litigation

Difficulties and risks in litigating weigh in favor of approving a class settlement. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).

While Plaintiffs believe their case is strong, the Settlement eliminates significant risks they would face if the action were to proceed. Plaintiffs would bear the burden of establishing liability, impact, and damages. See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 118 (2d Cir. 2005) ("Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." (quoting In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 465, 475 (S.D.N.Y. 1998))). While parties moving for approval of a class action settlement frequently invoke such risks, they are made more tangible here by a recent, similar case in which a plaintiff recovered no damages despite winning at trial, due to the sheer size of the set-off resulting from prior class action settlements. Thus, the Settlement is in the best interest of the class "because it eliminates the risks of continued litigation, while at the same time creating a substantial cash recovery and obtaining cooperation from [Defendants] in the ongoing litigation." Mot. at 15.

The Settlement also avoids significant expenses and protracted legal battles. See Larsen v. Trader Joe's Co., No. 11-cv-05188 WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) ("the high risk, expense, and complex nature of the case weigh in favor of approving the settlement." (citing Rodriguez, 563 F.3d at 964)); In re Visa Check/Mastermoney Antitrust Litig., 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003), aff'd 396 F.3d 96 (2d Cir. 2005) ("The potential for

1  this complex litigation to result in enormous expense, and to continue for a long time, was
2  great."); see also In re Polyurethane Foam Antitrust Litig., No. 1:10 MD 2196, 2015 WL 7348208,
3  at *10 (N.D. Ohio Nov. 19, 2015) ("In re TFT-LCD (Flat Panel) Antitrust Litigation, No. 3:07-
4  md-01827 SI, [ECF No.] 4436 [¶ 3] (N.D. Cal. 2011), awarded class counsel 30 percent of a $405
5  million settlement. But even with that generous award, class counsel barely broke even.").

Therefore, this factor strongly favors granting final approval.

### c. Settlement amount

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc., 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting Officers for Justice v. Civil Service Comm'n of the City and Cnty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)). "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial. Id. (citing Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998)).

Here, the Settlement provides class members $9,750,000 in damages, excluding attorneys' fees, litigation expenses, and incentive awards for certain named plaintiffs. See Saveri Decl. ¶ 23. Counsel for the DPPs suggested in their motion that the Settlement "compares favorably to settlements finally approved in other price-fixing cases," Mot. at. 13, but offered little support for the assertion,[9] and originally provided no estimate of the percentage of theDPPs' total possible recovery. The Court ordered that this information be provided. See ECF No. 4194. Parties have since provided the information, ECF No. 4217 ("Supp. Brief"). Thus, the Court is now cognizant

---

[9] The statement is supported only by a citation to a thirty-year-old out-of-circuit district court case and seems to have been a cut-and-paste from briefs in other antitrust cases. See Mot. at 13 (citing Fisher Bros. v. Mueller Brass Co., 630 F. Supp. 493, 499 (E.D. Pa. 1985)). Professors Robert Lande and John Connor recently looked at settlements in 71 private United States cartel cases decided between 1990 and 2014 and found that the median average settlement was thirty-seven percent (37%) of single damages. John M. Connor & Robert H. Lande, Not Treble Damages: Cartel Recoveries Are Mostly Less Than Single Damages, 100 Iowa L. Rev. 1997, 1998 (2015). Even the weighted mean (a figure that weights settlements according to their sales) was nineteen percent (19%). Id. The present settlement is a substantially lower percentage of single damages.

that the DPPs' maximum possible recovery after trial "could exceed two billion dollars," meaning that the settlement of $9.75 million represents 0.4875% of the maximum possible recovery. See id. at 1; see also Fisher Bros. v. Mueller Brass Co., 630 F. Supp. 493, 498 (E.D. Pa. 1985) (settlement "represented approximately .2% of sales of $240 million" but "settlement [wa]s reasonable in light of Mueller's status in this case as well as its financial condition.").

Here, the DPPs state that "Thomson's financial condition was the primary consideration with regard to settlement." Mot. at 4. Absent a settlement, the DPPs assert that they may be unable to collect any judgment they do win, as Thomson is not profitable. Thomson is largely a holding company with no material assets other than its interest in its U.S. subsidiaries, Thomson has substantial debt, and Thomson has suffered substantial tax and operating losses. See Mot. at 13; Supp. Brief at 1-3. Thomson's financial problems are so great that they could seek insolvency protection, returning to bankruptcy (from which they only emerged in July 2014). Moreover, Thomson SA is a French company, which would substantially prolong recovery if a French court did not otherwise refuse recovery altogether. Collection of a judgment against TDA would also be difficult as it is another small company with few assets and significant debt. Mot. at 13. Collectability is a valid concern in determining whether to approve a class action settlement. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1377 (9th Cir. 1993) ("first, [plaintiffs' counsel] must prevail on the class claims, and then they must find some way to collect what they win"). Based on this and information provided with the Supp. Brief, ECF No. 4217-1 ¶¶ 2-7, the Court concludes that Thomson's financial condition is indeed poor and that the Settlement was the best one Plaintiffs' counsel could negotiate under the circumstances.

Beyond the monetary value of the settlement, the DPPs gain the value of Defendants' cooperation with Plaintiffs in pursuit of claims against the remaining defendant. Saveri Decl. ¶ 25. Settlement may save time, reduce the DPPs' costs, and provide information, witnesses, and documents that the DPPs may otherwise not be able to access. See In re Mid-Atlantic Toyota Antitrust Litig., 564 F. Supp. 1379, 1386 (D. Md. 1983) (a defendant's agreement to cooperate with plaintiffs "is an appropriate factor for a court to consider in approving a settlement"); In re Linerboard Antitrust Litig., 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ("The provision of such

1  assistance is a substantial benefit to the classes and strongly militates toward approval of the
2  Settlement Agreement."). In addition, "[i]n complex litigation with a plaintiff class, 'partial
3  settlements often play a vital role in resolving class actions.'" Agretti v. ANR Freight Sys., Inc.,
4  982 F.2d 242, 247 (7th Cir. 1992) (quoting 1–Part A Manual for Complex Litigation Second,
5  Moore's Federal Practice § 30.46 (1986)).

6  The Settlement also preserves the DPPs' right to litigate against the non-settling
7  defendants for the entire amount of Plaintiffs' damages based on joint and several liability. See
8  Saveri Decl. ¶ 24. Thus, this settlement provides increased value in another pending class action
9  suit in this case by creating added incentive for the remaining defendants to settle or allowing
10 greater recovery for the Plaintiffs at trial.

11 Based on the foregoing, the Court concludes that the cash payment of $9,750,000 is an
12 adequate, just, and fair recovery for the class, and that this factor favors final approval.

### d. Extent of discovery

14 "In the context of class action settlements, formal discovery is not a necessary ticket to the
15 bargaining table where the parties have sufficient information to make an informed decision about
16 settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (citation
17 omitted). However, the extent of discovery completed supports approval of a proposed settlement,
18 especially when litigation has "proceeded to a point at which both plaintiffs and defendants ha[ve]
19 a clear view of the strengths and weaknesses of their cases." McKee Foods, 716 F. Supp. 2d 851-
20 52 (internal quotation marks omitted).

21 Here, class counsel have taken depositions, briefed motions, participated in mediations or
22 negotiations, have received "over 5 million pages of documents produced by Defendants[,]" and
23 have "analyzed millions of documents produced by Defendants and others." See Saveri Decl. ¶ 5;
24 Mot. at 16. Both sides have conducted an independent investigation of the facts and analyzed
25 Defendants' sales and pricing data in advance of settlement discussions. See Mot. at 16. The
26 Court is persuaded that the DPPs have conducted sufficient discovery to make an informed
27 decision regarding the adequacy of the settlement. See In re Omnivision, 559 F. Supp. 2d 1036,
28 1042 (N.D. Cal. 2007) (finding the parties were sufficiently informed about the case prior to

1  settling because they engaged in discovery, took depositions, briefed motions, and participated in

2  mediation).

3        Accordingly, the Court finds that the extent of discovery strongly favors a finding that final

4  approval is appropriate.

### e. Counsel's experience

6  "The recommendations of plaintiffs' counsel should be given a presumption of

7  reasonableness." Id. at 1043 (citation omitted).[10] Lead class counsel here endorses the settlement

8  as fair, adequate, and reasonable. Mot. at 16-17. The Court is not aware of any evidence to

9  contradict this assertion. Accordingly, class counsel's endorsement weighs in favor of approving

10  the settlement. See In re Omnivision, 559 F. Supp. 2d at 1043 (finding class counsel's

11  recommendation in favor of settlement presumptively reasonable).

### f. Reaction of the class

13  Class members' positive reaction to a settlement weighs in favor of settlement approval;

14  "the absence of a large number of objections to a proposed class action settlement raises a strong

15  presumption that the terms of a proposed class settlement [] are favorable to the class members."

16  Id. (internal quotation marks omitted).

17        There are no objections to the Settlement and only 16 class members opted out of the class

18  (all of whom appear to be the DAPs). Murray Decl. ¶¶ 9-10. The reaction of the class to the

19  proposed Settlement therefore supports the conclusion that the proposed Settlement is fair,

20  adequate and reasonable. See Bynum v. Dist. of Columbia, 412 F. Supp. 2d 73, 77 (D.D.C. 2006)

21  ("The low number of opt outs and objectors (or purported objectors) supports the conclusion that

22  the terms of the settlement were viewed favorably by the overwhelming majority of class

23  members."); Pallas v. Pac. Bell, No. C-89-2373 DLJ, 1999 WL 1209495, at *8 (N.D. Cal. July 13,

24  1999) ("The small percentage--less than 1%--of persons raising objections is a factor weighing in

---

[10] Counsel suggest that its "judgment that the Settlement is fair and reasonable is also entitled to great weight." Mot. at 16 (citations omitted). The Court normally considers this factor -- as it must -- but gives it little weight. "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." Principles of the Law of Aggregate Litigation, supra n.3, § 3.05 comment a.

10

1   favor of approval of the settlement."); see also In re Patriot Am. Hospitality Inc. Sec. Litig., No.

2   MDL C-00-1300 VRW, 2005 WL 3801594, at *2 (N.D. Cal. Nov. 30, 2005).  As the DPPs argue,

3   where "much of the class consists of sophisticated business entities," the inference that the class

4   approves of the settlement is even stronger.  See Mot. at 15 (citing Linerboard, 321 F. Supp. 2d at

5   629).

6          Given the large number of notices provided and only 16 opt-outs, the opt-out rate is far less

7   than 1%.  Because the class members appear to have concluded that the settlement is favorable to

8   their interests, this factor favors approval of the settlement.  See, e.g., McKee Foods, 716 F. Supp.

9   2d at 852 (finding that 4.86% opt-out rate strongly supported approval); Churchill Vill. LLC v.

10  Gen. Elec., 361 F.3d 566, 577 (9th Cir. 2004) (approving a settlement with forty-five objections

11  and 500 opt-outs from a 90,000-person class, representing 0.05% and 0.56% of the class,

12  respectively).[11]

### g. Balancing the Factors

14         After reviewing all the factors, the Court finds that one factor is inconclusive and the

15  remainder clearly support granting the motion for final approval.  Accordingly, on balance, the

16  Court hereby finds that the settlement is fair, adequate, and reasonable, and grants Plaintiff's

17  motion for final approval of the settlement.

## III. FINAL APPROVAL OF PLAN OF ALLOCATION

20         "Approval of a plan of allocation of settlement proceeds in a class action . . . is governed

21  by the same standards of review applicable to approval of the settlement as a whole: the plan must

22  be fair, reasonable and adequate."  In re Omnivision, 559 F. Supp. 2d at 1045 (internal quotation

23  marks and citation omitted); see also In re Citric Acid Antitrust Litig., 145 F. Supp. 2d 1152, 1154

24  (N.D. Cal. 2001).  "It is reasonable to allocate the settlement funds to class members based on the

25  extent of their injuries or the strength of their claims on the merits."  In re Omnivision, 559 F.

26  Supp. 2d at 1045.

---

[11] Because no governmental actor is involved in this portion of the case, this factor is not material to settlement approval.

11

1    The plan of allocation proposed here meets these requirements. Per the notice to the class
2    approved by the Court, ECF No. 3872, each settlement class member's <u>pro rata</u> share will be that
3    member's total claim divided by the total number of valid claims, multiplied by value of the net
4    settlement fund. <u>See</u> Murray Decl., Ex. A, ¶ 9. Cathode Ray Tubes ("CRTs") purchased as
5    components will be calculated at full value (100%) while CRTs purchased as part of finished
6    products will be calculated at partial rates (CRT televisions are valued at 50% and CRT computer
7    monitors are valued at 75%). <u>Id.</u> No class member objected to the plan of allocation. <u>See</u> Murray
8    Decl. ¶ 10.

9    This type of distribution has frequently been determined to be fair, adequate, and
10   reasonable in comparable cases. <u>See</u> <u>In re TFT-LCD (Flat Panel) Antitrust Litig.</u>, No. M 07-1827
11   SI, 2013 WL 1365900, at *4 (N.D. Cal. Apr. 3, 2013) (approving similar plan of distribution); <u>In</u>
12   <u>re Dynamic Random Access Memory (DRAM) Antitrust Litig.</u>, No. M-02-1486 PJH, ECF No.
13   2093 at 2 (Oct. 27, 2010) (Order Approving Pro Rata Distribution); <u>In re Vitamins Antitrust Litig.</u>,
14   No. 99-197 TFH, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions,
15   such as this one, that apportions funds according to the relative amount of damages suffered by
16   class members, have repeatedly been deemed fair and reasonable."); <u>In re Lloyds' Am. Trust Fund</u>
17   <u>Litig.</u>, No. 96 Civ.1262 RWS, 2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("<u>pro rata</u>
18   allocations provided in the Stipulation are not only reasonable and rational, but appear to be the
19   fairest method of allocating the settlement benefits."). Moreover, the proposed plan of allocation
20   is the same as those approved with respect to the other settling defendants in the DPP case that
21   have been previously approved by the Court. <u>See</u> Saveri Decl. ¶ 29.

22   The Court finds that this plan "fairly treats class members by awarding a pro rata share" to
23   the class members based on the extent of their injuries. <u>See</u> <u>In re Heritage Bond Litig.</u>, No. 02-
24   ML-1475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005). Moreover, "[t]he fact that there
25   has been no objection to this plan of allocation favors" the Court's approval. <u>Id.</u> Accordingly, the
26   Court approves Plaintiff's proposed plan of allocation.

27   **IV.   ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS**
28   Attorneys' fees, expenses, and incentive awards will be addressed in a separate order.

## V. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. For the reasons set forth in its June 12, 2015 order, ECF No. 3872, the Court certifies the proposed class for settlement purposes only.

2. For the reasons set forth in its June 12, 2015 order, ECF No. 3872, the Court confirms its appointment of the law firm of Saveri & Saveri, Inc. as Class Counsel.

3. The Court grants final approval of the proposed settlement.

4. The class members who asked to opt out of the settlement are excluded from the class.

IT IS SO ORDERED.

Dated:  December 17, 2015

_____
JON S. TIGAR
United States District Judge