Charles B. Renfrew (State Bar No. 27389)
LEBOEUF, LAMB, GREENE & MACRAE, L.L.P.
A LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS
One Embarcadero Center, 4th Floor
San Francisco, California  94111
Telephone:  (415) 951-1100

Special Master

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ERIC LIVINGSTON and STEPHEN GROSSE,
individually and on behalf of others
similarly situated

     Plaintiff,

  v.

TOYOTA MOTOR SALES USA, INC., et al.

     Defendants.

Case No.
C-94-1377-MHP

ORDER OF SPECIAL
MASTER AWARDING
ATTORNEYS' FEES AND
COSTS

NANCY WOLF individually and on
behalf of others similarly situated

     Plaintiff,

  v.

TOYOTA MOTOR SALES USA, INC., et al.

     Defendants.

Case No.
C-94-1359 MHP

SHELLIE HACKWORTH, individually and
on behalf of others similarly
situated

     Plaintiff,

  v.

TOYOTA MOTOR SALES USA, INC., et al.

     Defendants.

Case No.
C-94-1960 MHP

Pursuant to the Final Judgement dated September 17, 1997 in the above-noted matter, Toyota placed $4.25 million into an interest-bearing escrow account at the Pacific Bank with Messrs. Joseph Cotchett, Guido Saveri and Francis Scarpulla as co-escrow agents. This sum was the amount awarded by the court for attorneys' fees and costs.

It had been the expectation of both the Court and the Special Master that the attorneys for the Class would be able to reach an agreement among themselves with respect to a division of the amount awarded as attorneys fees and costs. However, by letter dated December 3, 1997 from Francis Scarpulla, the Special Master was advised that the plaintiffs' attorneys had not been able to agree upon a division of fees among themselves. The Special Master was asked to determine an equitable allocation of fees.

Counsel were asked to submit their petitions for fees by December 15, 1997. The last Supplemental Declaration in Support of An Award of Attorneys' Fees was received on January 5, 1998.

At the outset, $250,000 shall be retained in the escrow account in order to pay for the future costs of the coupon redemption and the other costs necessarily incurred in carrying out the settlement provided for in the Final Judgement. The remainder of this amount, if any, after the settlement is concluded shall be distributed on the pro rata basis established by this Order to the plaintiffs' attorneys.

This leaves $4 million to be distributed among plaintiffs' attorneys, a sum which is much smaller than the total amount

which is sought by these attorneys.  Attached hereto as Exhibit
A is a chart which sets forth in tabular form the relevant data
from all of the fee applications and the amount awarded to each
firm.  Before making the actual allocations among the
petitioning law firms, several preliminary matters had to be
resolved.  First, while there were three separate actions
consolidated in this matter, the total attorneys fees to be
awarded were not divided by the number of actions and that sum
then awarded as a single amount to be subsequently split by the
firms who represented the named plaintiff in that particular
action.  Each petitioning law firm was awarded fees separately
based upon its contributions to the Class, not on its
relationship to the underlying separate action.

In this connection, Joseph Patane, by letter dated December
15, 1997, sought 25% to 27% of the total attorneys' fee award to
be distributed to the <u>Hackworth</u> plaintiffs' counsel.  He said
this consisted of Trump, Alioto, Trump & Prescott, Saveri &
Saveri and himself.  The allocation among the respective firms
of that amount was to be negotiated by them.  In response to a
request by the Special Master for further information, Mr.
Patane submitted a Revised Fee Petition and Declaration dated
December 31, 1997, in which he claimed a total of 226 attorney
hours allocated to this matter, a lodestar of $90,400, and costs
of $3,290.07.  He asked for attorneys fees of $225,000,
including costs, for both past and future work.

This fee request was startling.  It came as a complete
surprise to the Special Master.  I was not aware of any
appearance by Mr. Patane separate and distinct from the Trump,

Alioto, Trump & Prescott firm.   Indeed, Mr. Patane's name was not on all of the certificate of service lists of the mailings of the various pleadings and documents in this case.   When it was on the service list, it was always associated with the Trump firm.[1]   Mr. Patane and the Trump firm have the same address and telephone number.   His participation in the case was always in association with the Trump firm.   He must look to that firm for his share, if any, of the amount awarded to that firm.   A petition for attorneys' fees is not the time to announce separate representation and a different status from that which had been in effect during the course of the litigation.[2]

Second, the costs incurred by each law firm shall be paid by that firm out of its allocation of fees.

In arriving at the allocation of attorneys fees among plaintiffs' counsel in this matter, I have considered the relevant efforts and benefits conferred upon the Class by each firm.   The amount awarded is based upon each firm's involvement in the case and its contribution to the settlement.   In each case, the starting and ending point is the reasonableness of the

---

[1]    In such cases, the service list would show:

>        Mario N. Alioto
>        Joseph M. Patane
>        Trump, Alioto, Trump & Prescott
>        2280 Union St.
>        San Francisco, CA  94123
>        (415) 563-7200)

[2]    It is interesting to note that the certificate of service attached to Mario N. Alioto's Declaration in Support of Attorneys's Fees and Costs dated January 5, 1998, attached as Exhibit B, did not list Mr. Patane.

fees to be awarded.  This is not a common fund case, the attorneys' fees here were not awarded as a percentage of the benefit enjoyed by the Class which in this case are estimated to be between $117,638,500 to $152,351,500.  Instead, the amount of the attorneys fees was arrived at during the course of the settlement and approved by the Court.  The attorneys fees are paid by Toyota and not from defendant TDAs and dealers who are funding the recovery of the plaintiff Class.

Attorneys' fees can be awarded by either a "Lodestar" method or as a "reasonable percentage" of the amount recovered by the Class, however in this case attorneys' fees will be awarded as a percentage of the amount available for distribution to the attorneys, here $4 million.  It is the reasonableness of the attorneys fees awarded, not the method by which they were calculated that controls.  In re Washington P.U.B. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1296 (9th Cir. 1994).  The factors considered here were those enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

Having spent some considerable time with plaintiffs' counsel in the course of the negotiations which ultimately lead to the Final Settlement approved by the Court, the Special Master has had a unique opportunity to observe counsel and become familiar with their contributions to the settlement and the benefits provided to the Class.

Before awarding attorneys' fees, it may be helpful to review the chronological order of events in this litigation.

The first case was filed on April 11, 1994 by the Livingston plaintiffs in California state court.[3]  On April 20, 1994, the Wolf case[4] was filed in this Court.  The next day, April 21, 1994, the Livingston plaintiffs filed a companion federal action, and on June 2, 1994, the Hackworth case[5] was filed in this Court.

The Wolf plaintiffs filed a motion for preliminary approval of a proposed settlement on June 22, 1994.  On July 15, 1994, the Livingston plaintiffs filed an opposition to the proposed settlement, questioning the adequacy of the relief provided the Class.  The Saveri firm filed a motion on July 21, 1994 in support of the proposed settlement.

At the hearing on July 29, 1994, Judge Patel refused to give preliminary approval of the settlement.  She sought an expert to assist the Court in evaluating the economic value of the settlement.  The undersigned was appointed Special Master on October 11, 1994.  Thereafter, there were numerous meetings and negotiations between counsel for all the parties, including five meetings with the Special Master.  Ultimately, there was a proposed settlement with substantially improved terms.[6]  On May

---

[3]    Lead counsel, the Cotchett firm.

[4]    Lead counsel, Francis Scarpulla.

[5]    Lead counsel, Guido Saveri of Saveri & Saveri.

[6]    The face value of the amount of credit vouchers was increased from $100 to $150, it was made uniform throughout the country rather than vary from region to region, the parts and service minimum expenditure was lowered from $200 to $120, which was lower than the average cost of a non-warranty repair job, the
(continued...)

30, 1995, the undersigned made a report and recommended approval of the revised Settlement Agreement.   The Court, on July 5, 1995, issued preliminary approval of the revised proposed settlement and certified the plaintiff Class and two defendant Classes for settlement purposes.

Notice was sent to the Classes.   There were a number of objections to the proposed settlement and several objectors appeared at the fairness hearing.   The principle objector was, for practical purposes, Certificate Clearing Corporation, represented by Mr. Schoenfeld of Grippo & Elden[7], which raised concerns about the coupons and the coupon redemption process. These objections were dealt with and resolved.   The settlement was approved by the Court in its final judgement of September 17, 1997.

Subsequent to the final judgment, there were several disputes concerning the coupons and the coupon redemption process.   There was also an appeal by objector Stephen B. Wineberg.   The various disputes were resolved, the appeal withdrawn and the distribution of the coupons to the Class was commenced on December 4, 1997.

With respect to the petition of the Cotchett firm, its contributions were significant.   It was the lead counsel in the

_____

[6](...continued)
service redemption period was extended from six to 12 months, there was improved transferability of the coupons and the credit vouchers did not need to be presented until after payment was due on a purchase.

[7]     Victor di Maggio was the actual objector but it was clear to all that Certificate Clearing Corporation was the real party in interest.

<u>Livingston</u> case.  It initiated the litigation in the state
court.  A class was denied in that case, which was appealed.
The pendency of that action was a major factor in the decision
by defendants to settle because of the threat of similar suits
throughout the United States.  The firm opposed the initial
proposed settlement, obtained and worked with experts to
evaluate both the initial proposed settlement and the ultimate
final settlement.  It participated in the subsequent
negotiations which led to the substantial improvement of the
value of the coupons to the benefit of the Class.  They also
played a major role and participated in all aspects of the
litigation.  Mr. Cotchett was one of the three lead counsel.
His standing at the bar and experience in these cases, as well
as that of Guido Saveri and Francis Scarpulla were described in
the Special Master's Report and Recommendation of May 20, 1995.

    The hours, lodestar and expenses of this firm are set forth
in Exhibit A.  The firm is awarded 24.5% of the total fee
available, or $980,000.

    Saveri & Saveri was the <u>de facto</u> lead counsel for the
<u>Hackworth</u> case with Guido Saveri performing the vast majority of
the work for that firm.  That firm also made significant
contributions to the Class.  Mr. Saveri participated in every
hearing before the Special Master and the Court, he played a
leading role in all of the settlement negotiations, participated
in drafting almost all of the major motions and settlement
documents, dealt with the objectors and the short lived appeal
from the final judgment.  He performed the role and carried out
the responsibilities one would expect of lead counsel.

The hours, lodestar and expenses of Saveri & Saveri are shown on Exhibit A.  This firm is awarded 24.5% of the total fee available, or $980,000.

Francis O. Scarpulla was lead counsel for the <u>Wolf</u> plaintiffs.  His many contributions included negotiating the original settlement, appearing at every hearing before the Special Master and the Court, participating in the original and final settlement negotiations.  He played a major role in all of the motions and pleadings filed on behalf of the Class, and dealt with objectors and helped resolve the appeal taken in the case.  He also worked on the revisions to the coupon and the coupon redemption process and took the lead in handling inquiries from Class members awaiting the settlement and the issuance of the coupons.

Mr. Scarpulla's hours, lodestar and expenses are shown on Exhibit A.  Mr. Scarpulla spent significantly more time on this matter than any other attorney.  He is awarded 24.5% of the total attorneys fees available, or $980,000.

Stone and Moore also represented the <u>Wolf</u> plaintiffs.  They played a significant role in the early investigation, evaluation and negotiations, which led to the initial proposed settlement.  They also participated in all of the hearings and negotiations, which resulted in the final settlement agreement approved by the Court.  The firm contributed to and participated in all aspects of the litigation.

The firm's hours, lodestar and expenses are shown on Exhibit A.  It is awarded 14.25% of the total attorneys fees available, or $570,000.

Mr. Schoenfeld of Grippo & Elden did not come into the litigation until the fairness hearing, where he represented an objector, Victor di Maggio, however the real party in interest was Certificate Clearing Corporation. Almost all of his work on behalf of the Class related to the form of the coupon and the establishment of a coupon redemption process which would assist in creating a secondary market in order to provide the maximum benefit to the Class.

While the coupon and redemption process were established by and contained in the revised proposed settlement, Mr. Schoenfeld and his firm made important contributions to the final coupon and redemption process.

This firm's hours, lodestar and expenses are set forth in Exhibit A. They are awarded 3.75% of the total attorneys' fees available, or $150,000.

Trump, Alioto, Trump & Prescott asserted it was lead counsel for the <u>Hackworth</u> plaintiffs, however it did not play a leading role on behalf of those plaintiffs in any part of the proceedings of which the Special Master was aware. The leading role for those plaintiffs was performed by Guido Saveri.

This firm did perform services which were of benefit to the Class. These services were more in the nature of support services to the Saveri firm. While helpful and of benefit to the Class, they were not of the importance of the Saveri firm's contributions. A not insignificant amount of its time was reviewing the work of others.

This firm's hours, lodestar and expenses are shown on Exhibit A. It is awarded 3.75% of the total attorneys' fees available, or $150,000.

King, King & Fishleder was one of the firms representing the Wolf plaintiffs. Mr. King of that firm made meaningful contributions to the Class. He was the first attorney to investigate and identify the alleged antitrust violations in these cases. He worked with Stone & Moore and Francis Scarpulla, who he brought into the case to assist him in pursuing a class action antitrust suit.

His participation and contributions were principally in the early investigation, evaluation and preliminary settlement.

This firm's hours, lodestar and expenses are shown on Exhibit A. The firm is awarded 3.5% of the total attorneys' fees available, or $140,000.

Hinton & Alfert also represented the Livingston plaintiffs. It played an important role in prosecuting the state court action. While the class was denied in that case, that decision was on appeal during the negotiations and ultimate settlement of the federal case. The pendency of the state case was a significant factor in the decision by defendants to settle because of the likelihood of similar cases being filed throughout the United States. The firm also objected to the original proposed settlement, which after extensive negotiations resulted in improved benefits to the Class.

This firm was also careful not to duplicate the efforts of the Cotchett firm. Its hours, lodestar and expenses are shown

on Exhibit A.  It is awarded 1.25% of the total attorneys' fees

available, or $50,000.

Dated:  January 7, 1998                IT IS SO ORDERED:


_____
Charles B. Renfrew
Special Master

# ATTACHMENT 6

SUPERIOR COURT OF CALIFORNIA, COUNTY OF STANISLAUS

Coordination Proceeding Special Title (Rule 1550(b)):
--oOo--
FOOD ADDITIVES (HFCS) CASES

JCCP No. 3261

MINUTE ORDER RE:          ATTORNEY FEES          Master File No. 39693

JUDGE: WILLIAM A. MAYHEW      Bailiff: M. Emig      Date: Nov. 10, 2005
Clerk: K. Stein               Reporter: None        Ceres, Calif.

Appearances:

None.

The only issue remaining is the amount of attorney fees owing to TRUMP, ALIOTO, TRUMP & PRESCOTT.

It is clear from the information in the file that all of the firms involved were agreeable to the allocation of fees as proposed by lead counsel except the Trump firm.  It is also clear from the file that the Trump firm's contribution to the outcome of this case was fairly insignificant.  The Trump client was never deposed, the Trump firm did no substantive work during the litigation and the Trump firm failed to contribute its share of costs.

The $216,212.90 allocated to the Trump firm is a more than fair allocation of attorney fees.

The motion of lead counsel is **GRANTED**.

cc:  All Counsel

**MINUTE ORDER**

### PROOF OF SERVICE BY MAIL
### [1013a(3) C.C.P.]

STATE OF CALIFORNIA )
                 )  SS
COUNTY OF STANISLAUS)

I am over the age of 18 years and employed by the Superior Court of the State of California, County of Stanislaus, and not a party to the within action.  I certify that I served a copy of the attached **MINUTE ORDER RE:  ATTORNEY FEES** by placing said copy in an envelope addressed to the following:

### **Please see attached Proof of Service List**

Said envelope was then sealed and postage thereon fully prepaid, and thereafter was on November 10, 2005, deposited in the United States mail at Modesto, California.  That there is delivery service by United States mail at the place so addressed, or regular communication by United States mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 10, 2005 at Ceres, California

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF STANISLAUS

By _____
KELLEY K. STEIN, Deputy Clerk

PROOF OF SERVICE - #39693
Page One

Joseph W. Cotchett, Esq.,
Bruce L. Simon, Esq. &
Nancy L. Fineman, Esq.
*Attorneys for Plaintiffs, NU LAID FOODS, INC. & KAGOME FOODS, INC.*
COTCHETT, PITRE, SIMON & McCARTHY
840 Malcolm Rd., Ste. 200
Burlingame, CA  94010

Clinton Walker, Esq. &
Roger Schrimp, Esq.
DAMRELL, NELSON, SCHRIMP, PALLIOS & LADINE
*Counsel for Plaintiff, NU-LAID FOODS, INC.*
1061 "I" St., Fifth Fl.
Modesto, CA  95354-1110

James Belford Brown, Esq. &
Jennifer A. Scott, Esq.
*Lead Counsel for End User Plaintiffs*
HERUM CRABTREE BROWN
2291 W. March Ln., Ste. B100
Stockton, CA  95207

Mario N. Alioto, Esq. &
Joseph M. Patane, Esq.
*Counsel for End-User Plaintiffs*
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union St.
San Francisco, CA  94123

Francis O. Scarpulla, Esq.
*Counsel for End User Plaintiffs*
THE LAW OFFICES OF FRANCIS O. SCARPULLA
44 Montgomery St., Ste. 3400
San Francisco, CA  94104

William Bernstein, Esq.,
Joseph Saveri, Esq. &
Eric B. Fastiff, Esq.
*Counsel for End User Plaintiffs*
LIEFF, CABRASER, HEIMANN & BERNSTEIN
275 Battery St., 30th Fl.
San Francisco, CA  94111

Mark C. Rifkin, Esq.
*Lead Counsel for Consumer Plaintiffs*
WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ
270 Madison Ave.
New York, NY  10016

Giudo Saveri, Esq. &
R. Alexandre Saveri, Esq.
*Lead Counsel for Consumer Plaintiffs*
SAVERI & SAVERI
111 Pine St., Ste. 1700
San Francisco, CA  94111-5630

Andrew J. Ogilvie, Esq.
*Liaison Counsel for Consumer Plaintiffs*
KEMNITZER, ANDERSON, BARRON, & OGLIVIE
445 Bush St., 6th Fl.
San Francisco, CA  94108

John N. Zarian, Esq.
*Liaison Counsel for Consumer Plaintiffs*
FRIEDMANN, O'BRIEN, GOLDBERG & ZARIAN
445 S. Figueroa St., Ste. 3750
Los Angeles, CA  90071

Kevin M. Prongay, Esq.
*Liaison Counsel for Consumer Plaintiffs*
PRONGAY & BORDERUD
12121 Wilshire Blvd., Ste. 400
Los Angeles, CA  90025-1176

Lawrence G. Papale, Esq.
*Liaison Counsel for Consumer Plaintiffs*
1308 Main St., Ste. 117
St. Helena, CA  94574

J. Garrett Kendrick, Esq.
*Liaison Counsel for Consumer Plaintiffs*
KENDRICK, BONAS & NUTLEY
468 N. Camden Dr.
Beverly Hills, CA  90210

Edwin C. Schreiber, Esq.
*Liaison Counsel for Consumer Plaintiffs*
SCHREIBER & SCHREIBER
16501 Ventura Blvd., Ste. 401
Encino, CA  91436-2068

Stephen P. Oggel, Esq.
*Liaison Counsel for Consumer Plaintiffs*
550 W. "C" St., Ste 1850
San Diego, CA  92101

Brendan J. Dooley, Esq.
*Counsel for Defendant, ARCHER-DANIELS-MIDLAND CO.*
PLAGEMAND & LUND, LLP
1999 Harrison St., Ste. 2700
Oakland, CA  94612

Aubrey M. Daniel, III, Esq.,
John E. Schmidtlein, Esq. &
Steven R. Kuney, Esq.
*Counsel for Defendant, ARCHER-DANIELS-MIDLAND CO.*
WILLIAMS & CONNOLLY
725 12 St., N.W.
Washington, D.C. 20005

Mark W. Ryan, Esq. &
Gary A. Winters, Esq.
*National Counsel for Defendant, CARGILL, INC.*
MAYER BROWN & PLATT
1909 "K" St., N.W.
Washington, D.C.  20006

Charles F. Preuss, Esq.,
Vernon I. Zvoleff, Esq. &
Michael Storz, Esq.
*Counsel for Defendant, CARGILL, INC.*
PREUSS, WALKER & SHAHAGHER
225 Bush St., 15th Fl.
San Francisco, CA  94104-4207













ATTACHMENT 7b



























ATTACHMENT 7f























































**ATTACHMENT 10a**



# ATTACHMENT 10b





**ATTACHMENT H**













