Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for*
*Indirect Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-JST; No. CV-13-03234-JST |
| | MDL No. 1917 |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO MOTION RE: APPOINTMENT OF CO-LEAD CLASS COUNSEL FOR INDIRECT-PURCHASER PLAINTIFFS WITH CLAIMS IN NON-REPEALER STATES**<br><br>Hearing Date:  January 21, 2016<br>Time: 2:00 p.m.<br>Judge: Honorable Jon S. Tigar<br>Court: Courtroom 9, 19th Floor |

1    Indirect Purchaser Plaintiffs ("IPPs") respond as follows to the Motion Re: Appointment of

2    Co-Lead Class Counsel For Indirect Purchaser Plaintiffs With Claims In Non-Repealer States (the

3    "Motion") (Dkt. No. 4241).

4                                    **INTRODUCTION**

5         The IPPs' motion for settlement approval is currently pending before Special Master Quinn.

6    Lawyers Cooper and Scarpulla (or collectively "Objectors") have challenged settlement approval

7    and the proposed allocation of settlement proceeds, and the Special Master is considering their

8    objections as part of his review.  His Report and Recommendation ("R&R") is not due until January

9    15, 2016.  While the ink is barely dry on their objections before the Special Master, Objectors are

10   rasing the same arguments in seeking appointment from this Court as separate co-lead counsel for a

11   discrete group of class members—class members in non-repealer states.  The motion should be

12   denied.

13        First, the Motion is premature.  Objectors' attempts to leap-frog the existing framework for

14   settlement approval should be rejected.  The Court should await the Special Master's R&R, consider

15   any objections thereto, and only at that point in time contemplate the requested appointment of

16   additional counsel.  Addressing the Motion now would not be judicially efficient.

17        Second, in any event the motion must be denied on its merits.  The issues raised by Messrs.

18   Cooper and Scarpulla have been addressed in IPPs' papers in support of settlement approval, both in

19   filings in this Court and in documents lodged with the Special Master.  As those documents

20   demonstrate, the claims of class members in non-repealer states are not viable.  Thus, there is no

21   need for additional counsel to press those claims.

22        Finally, *even* if appointment of additional counsel were deemed necessary, the Court should

23   appoint independent counsel, not Messrs. Cooper and Scarpulla.  These lawyers have been serving

24   as counsel for indirect purchasers in this litigation.  They cannot now seek to represent a group of

25   claimants whose interests, under *their* scenario, would conflict with the interests of other class

26   members with respect to the allocation of settlement proceeds.

27

28
                                          1

1

**BACKGROUND**

2       IPPs provide the following background for the benefit of the Court, which may not yet be

3  fully familiar with this litigation.[1]

4       This litigation arises from an alleged international conspiracy to fix the prices of CRTs

5  during the period March 1, 1995 through November 25, 2007.  IPPs filed their original complaints in

6  late 2007 and early 2008.  All related indirect purchaser actions were consolidated and transferred to

7  the Northern District of California.

8       Mario N. Alioto of Trump, Alioto, Trump & Prescott, LLP and Francis O. Scarpulla, then of

9  Zelle, Hofmann Voelbel & Mason, LLP, filed competing motions for appointment as lead counsel

10  for the IPPs.  On May 9, 2008, the Court appointed Mr. Alioto as sole Interim Lead Counsel, noting

11  the Court's preference for "a single firm" as lead counsel, because it "will usually provide more

12  effective and efficient representation than a group of two or more firms."  (Dkt. No. 47, at 3.)

13       IPPs filed their consolidated amended complaint ("CAC") on March 16, 2009.  (Dkt. No.

14  437.)  The CAC alleged a claim for injunctive relief under the Sherman Act on behalf of a

15  nationwide class of indirect purchasers, and claims for damages under the laws of 21 states and the

16  District of Columbia.

17       IPPs entered into an early settlement with Chunghwa Picture Tubes, Ltd. for $10,000,000

18  cash and cooperation, which the Court finally approved on March 22, 2012 (Dkt. No. 1105).  In May

19  2013, while IPPs' motion for class certification was pending, IPPs entered into a settlement with LG

20  Electronics, Inc. and LG Electronics USA, Inc. (collectively, "LG") for $25,000,000 cash and

21  cooperation.  A few months later, on September 24, 2013, the Court certified the state damages

22  classes of indirect purchasers (the "Indirect Purchaser State Classes") and appointed Mr. Alioto as

23  Lead Counsel for the classes.  (Dkt. No. 1950.)  The Court thereafter finally approved the LG

24  settlement, on April 18, 2014 (Dkt. No. 2542).

25

26  _____

27  [1] The procedural and factual history of this litigation is set forth in extensive detail in IPPs' Motion
for Preliminary Approval (Dkt. No. 3861) and in the Declaration of Mario N. Alioto In Support of
IPPs' Motion for Attorneys' Fees (Dkt. No. 4071-1) ("Alioto Fee Decl. I").

28

1    Trial originally was scheduled to begin on March 9, 2015.  The pretrial schedule in effect in

2  the few months before trial was extremely compressed, with the trial scheduled to begin only weeks

3  after the hearing on the summary judgment motions.  During the Fall of 2014 and early 2015, IPPs

4  negotiated settlements with the remaining Defendants, totaling $541,750,000.  Together with the $35

5  million obtained from the first two settlements, the total recovery for the class is $576,750,000—the

6  second largest recovery ever for indirect purchasers.

7    While Lead Counsel was busy running the case and preparing for trial, former law partners

8  Mr. Scarpulla and Mr. Cooper (neither of whom did any substantive work in this case[2]) were

9  working behind the scenes on Mr. Scarpulla's second attempt to be appointed as lead counsel.

10  Messrs. Scarpulla and Cooper engaged in a series of *ex parte* communications with Special Master

11  Vaughn Walker during which they informed him of the manner in which the case was being run by

12  Lead Counsel, in their view.  Lead Counsel believes they attempted to convey the impression that

13  the case could be better handled if they were appointed co-lead counsel.  (*See* Dkt. 3200 (Special

14  Master Walker's Report & Recommendation (the "Walker R&R").)  The Court never adopted the

15  Walker R & R.  (*See* Dkt. No. 3376 ("the Court finds that no responsive briefing or objection need

16  be filed until further order of the Court.").)

17    IPPs then sought preliminary approval of the settlements.  Objectors filed "conditional"

18  objections that solely concerned attorneys' fees provisions.  (*See* Dkt. Nos. 3874, 3880.)  IPPs

19  obtained preliminary approval, and then moved for final approval.  IPPs also moved for an award of

20  attorneys' fees, and as part of that process, Lead Counsel made cuts to Mr. Scarpulla's lodestar.  *See*

21  Alioto Settl. Decl. ¶¶ 16-20.

22    Thereafter, Messrs. Cooper and Scarpulla, whose respective law firms have represented

23  certain indirect purchasers in this MDL, filed objections to the settlements (Dkt. No. 4116) (and to

24  the motion for fees, Dkt. No. 4115), raising entirely new objections purportedly on behalf of all

25  "Indirect Purchaser Plaintiffs."  And now, in a third attempt to become lead counsel, Mr. Scarpulla

26

27  [2] *See* Declaration of Mario N. Alioto In Support of Final Approval of Class Action Settlements with
   the Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson and TDA Defendants (lodged with
   the Special Master on November 20, 2015) ("Alioto Settl. Decl."), ¶¶ 16, 33.

28

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO MOTION RE: APPOINTMENT OF CO-LEAD CLASS
COUNSEL FOR INDIRECT-PURCHASER PLAINTIFFS WITH CLAIMS IN NON-REPEALER STATES – Master
File No. CV-07-5944-JST

1  moves for appointment as co-lead counsel with Mr. Cooper.  This time, they contend that the

2  proposed settlements and allocation of settlement proceeds are unfair to some members of the

3  proposed settlement class—nationwide class members who are not members of the Indirect

4  Purchaser State Classes—and that they should be appointed co-lead counsel to represent these class

5  members.

6                                                          **ARGUMENT**

7  **I.     THIS MOTION IS PREMATURE**

8           The Special Master, in his review of the motion for final approval and objections thereto, is

9  already addressing the very issues underlying the Motion—whether the settlements and allocation of

10  settlement proceeds are fair to class members.  But he has barely had a chance to review the

11  briefings submitted, let alone make a recommendation on settlement approval.  The last round of

12  filings only occurred on December 23, 2015, a hearing is set for January 5, 2016, and a Report &

13  Recommendation ("R&R") is not due until January 15, 2016.  Then, once the R&R issues, the

14  schedule in place provides for objections and responses.

15          Objectors are not content to await the Special Master's determination.  They want to the

16  Court to simultaneously make a determination on the very same issues currently before the Special

17  Master (since the Court cannot decide whether to appoint additional counsel without first

18  determining the need for such counsel).  Doing so now would subvert the review by the Special

19  Master and result in a tremendous waste of judicial resources.  The Court should await the Special

20  Master's Report and Recommendation, consider any objections thereto, and only at that point assess

21  the need for additional counsel.  It makes no sense to decide these issues now.

22  **II.    NO ADDITIONAL COUNSEL IS NECESSARY**

23          In the event the Court were to address the motion now on its merits, IPPs submit the

24  following points.

25          Preliminarily, IPPs object to the Motion because the arguments in support thereof are not

26  completely set forth.  Only two pages of the Motion are devoted to the merits; the rest of the Motion

27  recounts Objectors' credentials.  Objectors cite no cases and make no factual showing in support of

28

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO MOTION RE: APPOINTMENT OF CO-LEAD CLASS
COUNSEL FOR INDIRECT-PURCHASER PLAINTIFFS WITH CLAIMS IN NON-REPEALER STATES – Master
File No. CV-07-5944-JST

1   their claims.  Thus, IPPs do not know precisely what arguments to respond to beyond those

2   expressly raised in the Motion (discussed below).  IPPs are concerned that Objectors will raise new

3   arguments in their reply.  If that happens, the new arguments should not be considered, or IPPs

4   should be given an opportunity to respond.[3]

5          Further, the Motion's brevity belies the hefty record of briefs, declarations, and exhibits

6   lodged with the Special Master by IPPs, Objectors, and other parties.  Objectors' Motion should not

7   be considered out of context, solely on the basis of documents Objectors furnish to the Court.  To

8   ensure that the Court has access to a complete record, IPPs provide the Court with references to their

9   own briefings in support of preliminary settlement approval.  (*See* Dkt Nos. 3861, 3862 and exhibits

10  thereto, 3863 and exhibits thereto, 3875, 3876 and exhibits thereto, 3884, and 3884-1 and exhibits

11  thereto; and documents in support of final settlement approval provided to the Special Master on

12  November 20, 2015 and December 23, 2015.)

13         IPPs respond to the points expressly raised in the Motion as follows.

14     **A.     The Claims of Non-Repealer State Class Members Are Not Viable**

15         Objectors argue that Lead Counsel has failed to adequately represent those members of the

16  nationwide class who purchased products in non-repealer states because the settlements do not

17  provide for injunctive relief and those class members are not recovering funds under the proposed

18  plan of distribution.  Their argument is grounded in the belief "that the abandoned members of the

19  proposed Nationwide Class do, in fact, have significant claims that should be advanced." (Mot. at 3-

20  4.)

21         Objectors have presented these arguments to the Special Master.  As established in IPPs'

22  Reply thereto, the law and the facts are to the contrary, as summarized below.

23         *First,* Lead Counsel made a reasonable, good-faith judgment based on years of litigation and

24  discovery that, by the time of the settlements, there was no merit to—or practical need for—the class

---

[3] Objectors raised numerous, entirely new substantive arguments for the first time in their Reply in
support of objections to the settlements, lodged with the Special Master on December 9, 2015, and
IPPs had to seek leave from the Special Master to lodge their own reply (*see* referenced Reply in
note 4 of the Motion).

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO MOTION RE: APPOINTMENT OF CO-LEAD CLASS
COUNSEL FOR INDIRECT-PURCHASER PLAINTIFFS WITH CLAIMS IN NON-REPEALER STATES – Master
File No. CV-07-5944-JST

1   claims for injunctive relief.  Discovery revealed that: (1) the CRT conspiracy was no longer in

2   effect; and (2) the conduct was unlikely to recur because Defendants no longer sold any meaningful

3   volume of CRT products in the United States.  In other words, the CRT cartel had been exposed and

4   the industry was dying or dead, making it doubtful that the class could prevail on its claim for

5   injunctive relief.

6        *Second*, there is nothing unusual or improper about a settlement in which all claims that were

7   *or could have been* brought by class members are released, including the release of meritless,

8   speculative claims held by class members nationwide.  Release terms of this nature are standard and

9   unobjectionable features of many Rule 23 settlement classes, and, indeed, comport with Rule 23's

10  core goal of facilitating global peace.  Further, the mere fact that relief varies among different groups

11  of class members does not establish conflicts of interests within the class or adequacy of

12  representation issues.

13       *Third,* clear authority holds that private plaintiffs cannot pursue restitution or disgorgement

14  claims under the federal antitrust laws.  *See, e.g., In re Multidistrict Vehicle Air Pollution*, 538 F.2d

15  231, 234 (9th Cir. 1976).  Further, for states lacking repealer laws, monetary recovery by indirect

16  purchasers is barred, whether based on state law damage *or* equitable restitution/disgorgement/unjust

17  enrichment theories.  *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179,

18  1192 (N.D. Cal. 2009) ("permitting such [unjust enrichment] claims would allow plaintiffs to

19  circumvent limitations of state antitrust laws" in states that follow *Illinois Brick*); *In re K-Dur*

20  *Antitrust Litigation*, No. CIV.A. 01-1652 (JAG), 2008 WL 2660780, at *5 (D.N.J. Feb. 28, 2008)

21  ("where the applicable state law bars antitrust actions for damages by indirect purchasers . . . a

22  plaintiff cannot circumvent the statutory framework by recasting an antitrust claim as one for unjust

23  enrichment").

24       *Fourth,* to the extent any of the states allow indirect purchasers to bring claims for damages,

25  IPPs have determined that these claims have long been barred by their respective statutes of

26  limitations, or are purely speculative.

27

28

6

*Finally,* "'[i]t is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits.'"  *Booth v. Strategic Realty Trust, Inc.*, No. 13-cv-04921, 2015 WL 6002919, at *7 (N.D. Cal. Oct. 15, 2015) (Tigar, J.), quoting *In re Omnivision Technologies, Inc.,* 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008).

In light of the law and the facts relating to the injunctive relief claims and the equitable/monetary claims of class members in non-repealer states, it was fair and reasonable for Lead Counsel to value meritless claims at zero.  The best and most reasonable framework is to allocate the common fund recovery to those class members with substantively viable damages claims, *i.e.,* those claims arising in the *Illinois Brick* repealer states certified for trial by the District Court.  Messrs. Cooper and Scarpulla have not shown that Lead Counsel's analysis of the viability of claims and the proposed allocation are unreasonable.

### B.      Lead Counsel Adequately Represented All Class Members

Objectors misrepresent a statement made by Lead Counsel in an earlier brief that, *during the litigation phase of the case*, Lead Counsel had "no duty to represent purchasers" in states other than the Indirect Purchaser State classes.  (*See* Mot. at 3.)  The statement was in response to certain objectors' criticism that Lead Counsel had purportedly failed to approach attorneys general for the non-repealer states regarding the claims of those states' residents.  At the time, the Court had certified a litigation class on the merits, and that was the class to whom Lead Counsel's duties flowed for purposes of coordinating litigation issues such as whether (or not) to work with state attorneys general on various aspects of the case.  *At the settlement stage*, however, Lead Counsel had a duty to represent all members of the proposed settlement class vigorously and adequately, including class members not included in the litigation class, and that is exactly what Lead Counsel did.  (*See* Alioto Fee Decl. I (describing vigorous advocacy and adequate representation of *all* nationwide class members on all issues relating to settlement.)

The issue at the settlement approval stage is simply whether counsel acted reasonably—and adequately—in negotiating fair settlements for the class as a whole.  That is precisely what Lead Counsel did.  Consistent with the interests of *all* class members, the goal throughout settlement

7

1  negotiations was to extract maximum total value from the Defendants, which, with the extensive

2  involvement of experienced mediators, is just what the settlements achieved.  The results of that

3  process speak for themselves, and at this stage it is not enough for Objectors to point without more

4  to differences in claims, allocation amounts, or state laws to demonstrate a conflict of interest.

5          **C.      The LG Settlement Was Approved with an Identical Release**

6          Lastly, Objectors attempt to distinguish the LG settlement, which the Court finally approved

7  and which contained an identical release.  (*See* Mot. at 3, n.3.)  Contrary to their claims, the LG

8  notice clearly informed class members that only members of the Indirect Purchaser States Classes

9  would be eligible to submit claims for monetary relief. (*See* Dkt. No. 2511, Ex. A at 7, Section 9.)

10  That settlement was approved without a word of objection from either Mr. Cooper or Mr. Scarpulla,

11  further underscoring the questionable *post hoc* nature of their current position on the need for

12  injunctive relief.

13  **III.   EVEN IF ADDITIONAL COUNSEL WAS NECESSARY, THE COURT SHOULD
14          NOT APPOINT MR. COOPER OR MR. SCARPULLA**

15          Even if the Court were to conclude that appointment of additional counsel was appropriate,

16  Objectors are not suitable candidates for that position.  They have a conflict of interest and they are

17  not independent because they are already counsel of record in this case.

18          Messrs. Cooper and Scarpulla argue that class members from the non-repealer states are

19  entitled to additional counsel.  IPPs strongly dispute this assertion.  But even assuming they were

20  correct, these lawyers could not represent those class members.  Mr. Cooper's firm represents one of

21  the court-appointed class representatives for California, Steven Ganz, and Mr. Scarpulla's former

22  firm represented two former named plaintiffs from repealer states.  None of Objectors' objections to

23  final approval was filed on behalf of Mr. Ganz or those former plaintiffs.  Instead, they were filed on

24  behalf of "Indirect Purchaser Plaintiffs."

25          Objectors now take the position that class members from non-repealer states have viable

26  claims and that they should recover some of the settlement funds.  But, allocating settlement

27  proceeds to class members in non-repealer states with meritless claims would necessarily (and

28

8

1   unfairly) reduce the funds available to compensate class members in the Indirect Purchaser State

2   Classes.  In other words, their representation of class members from the non-repealer states would be

3   adverse to their representation of their current and former clients, since all class members seek

4   compensation from the same settlement proceeds.  *See* California Rules of Professional Conduct,

5   Rule 3-310 (C) (Avoiding the Representation of Adverse Interests), which states in relevant part:

6         A member shall not, without the informed written consent of each client:

7             (1) Accept representation of more than one client in a matter in which the

8             interests of the clients potentially conflict; or

9             (2) Accept or continue representation of more than one client in a matter in

10            which the interests of the clients actually conflict.

11  In a 2014 filing in *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* No. M-

12  02-1486 (Dkt. 2215 at 5), Mr. Cooper, as Co-Lead Counsel for the indirect purchaser plaintiffs in

13  that litigation, told the Court with respect to the appointment of separate counsel to represent the

14  interests of resellers (versus the interests of end-user class members), that "the parties felt that it was

15  preferable to find counsel for the resellers who had not been previously involved in the litigation."

16  The same should hold true here.  Even if separate counsel was necessary to represent the interests of

17  certain class members, in order to preclude even the appearance of impropriety, the Court should

18  appoint independent counsel, and not Messrs. Cooper or Scarpulla.

19  Lastly, the appointment of two counsel would be unnecessary.  Lead Counsel has

20  successfully handled this entire litigation alone over the past eight years.  There is no need for two

21  new lead counsel to handle one discrete settlement issue.

22  **<u>CONCLUSION</u>**

23  Based on the foregoing, IPPs respectfully request that the Court deny the Motion.

24  Dated:  December 28, 2015

25        Respectfully submitted,

26        */s/ Mario N. Alioto*

27        Mario N. Alioto (56433)
28        malioto@tatp.com

Joseph M. Patane (72202)
jpatane@tatp.com
Lauren C. Capurro (241151)
laurenrussell@tatp.com

TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415-346-0679

***Lead Counsel for Indirect Purchaser Plaintiffs***

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO MOTION RE: APPOINTMENT OF CO-LEAD CLASS
COUNSEL FOR INDIRECT-PURCHASER PLAINTIFFS WITH CLAIMS IN NON-REPEALER STATES – Master
File No. CV-07-5944-JST