JOSEF D. COOPER (53015)
TRACY R. KIRKHAM (69912)
JOHN D. BOGDANOV (215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA  94103
Telephone:  (415) 788-3030
Facsimile:  (415) 882-7040
jdc@coopkirk.com
trk@coopkirk.com
jdb@coopkirk.com


FRANCIS O. SCARPULLA (41059)
PATRICK B. CLAYTON (240191)
LAW OFFICES OF FRANCIS O. SCARPULLA
456 Montgomery Street, 17th Floor
San Francisco, CA  94111
Telephone:  (415) 788-7210
Facsimile:   (415) 788-0706
fos@scarpullalaw.com
pbc@scarpullalaw.com

*Counsel for Indirect-Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION.<br><br>This Document Relates to:<br><br>All Indirect-Purchaser Actions. | **Master File No. 3:07-cv-5944 JST**<br><br>**MDL No. 1917**<br><br>**REPLY IN SUPPORT OF MOTION RE: APPOINTMENT OF CO-LEAD CLASS COUNSEL FOR INDIRCT-PURCHASER PLAINTIFFS IN NON-REPEALER STATES**<br><br>Date:  January 21, 2016<br>Time:  2:00 p.m.<br>Judge:  Honorable Jon S. Tigar<br>Courtroom:  9, 19th Floor |

## I.      INTRODUCTION

This Court has a fiduciary obligation to ensure that the claims of all putative class members, including those class members in states not covered by the certified litigation classes, receive the full due process to which the Federal Rules of Civil Procedure entitle them.  No judicial act is more closely considered or scrutinized than the dismissal with prejudice of a claim as having no merit.  Accordingly, this determination generally requires the full employment of the procedures and standards embodied in Rules 12 and/or 56, F.R.Civ.P.  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 308 (Rendell, J.) and 377 (Sirica, J. concur) (3d Cir. N.J. 2011).

Here, Lead Counsel made the determination that the claims of millions of class members should be dismissed with prejudice as meritless in order to facilitate the payment of settlement monies to members of the certified litigation classes.  He claims that this determination was made in the course of "vigorously" advocating the claims of those "class members not included in the litigation class."[1]  As evidence of that vigorous advocacy, Lead Counsel points generally to his declaration submitted in support of the aggregate fee request.  The undersigned do not know what Lead Counsel intends by this citation, but could find no discussion of these claims in his declaration, nor are we aware of any attempt to advance these claims in the litigation.

Accordingly, the undersigned, in addition to objecting to the approval of the proposed settlements, moved, pursuant to Rule 23(g), Fed. R. Civ. P., to be appointed co-lead counsel for indirect purchasers in the putative nationwide class who are not also purchasers in one of the states covered by the proposed damages settlement classes (which are essentially co-extensive with the certified litigation classes).[2]  Three documents were filed in response to this motion.

---

[1]   "Indirect Purchaser Plaintiffs' Opposition to Motion re: Appointment of Co-Lead Counsel for Indirect-Purchaser Plaintiffs with Claims in Non-Repealer States," Dkt. No. 4272, at p. 7.  Incidentally, there were actually multiple individual statewide litigation classes certified, not a single litigation class, as Lead Counsel states.

[2]   "Notice of Motion and Motion re: Appointment of Co-Lead Counsel for Indirect-Purchaser Plaintiffs with Claims in Non-Repealer States," Dkt. No. 4241.  For the sake of brevity, the nationwide class

---

REPLY ISO MOTION RE:  APPOINTMENT OF          - 1 -          Master File No. 3:07-cv-5944 JST
CO-LEAD CLASS COUNSEL FOR IPP IN NON-                         MDL 1917
REPEALER STATES

1    As noted above, Lead Counsel filed an opposition to the motion.  That opposition advances

2    three arguments:  (1) that the motion is "premature" because the settlement approval process is

3    ongoing;  (2) that the motion is unnecessary because the non-repealer state purchasers are not in

4    need of representation since Lead Counsel has determined that their claims are "not viable;" and

5    (3) that if the Court is inclined to appoint counsel to represent their interests, "independent

6    counsel," not counsel presently in the case, should be appointed.  Dkt. 4272, at p. 1.  Defendants

7    with settlements pending final approval filed a "response" to the motion, which objects to the

8    appointment of the undersigned only "to the extent Objectors [movants] seek any power to rescind

9    or modify the IPP settlement agreements already preliminarily approved."[3]   Another plaintiffs'

10   counsel in the case, Robert J. Bonsignore, who has also objected to the proposed settlements, filed

11   a "joinder" that requests that his firm also be appointed co-lead counsel for the non-repealer state

12   purchasers.[4]

13   Finally, although the Attorneys General of Illinois, Oregon, and Washington did not file an

14   opposition to the motion, as mentioned therein (Dkt. 4241, at p. 4, n.5), the undersigned were

15   aware that these Attorneys General are pursuing independent litigation for their citizens and have

16   concerns about any appointment of counsel in this litigation to represent indirect purchasers in

17

18

19   _____

20   members the undersigned are seeking to represent as Co-Lead Counsel are being referred to as "non-
     repealer state" purchasers, although it should be noted that these class members include purchasers in at
21   least three states that are generally classified as repealer jurisdictions.

22   [3] "Settling Defendants' Response to Motion re: Appointment of Co-Lead Class Counsel for Indirect
     Purchaser Plaintiffs with Claims in Non-Repealer States," Dkt. No. 4269, at p. 2.  As to the Defendants'
23   objection, it has never been the intention of the undersigned that their appointment as co-lead counsel for
     non-repealer state purchasers would give them the power to modify or void the agreements signed by Lead
24   Counsel.  Those agreements are contracts entered into by Lead Counsel, who unquestionably had the
     authority to execute agreements on behalf of the classes plead in this litigation, subject to the approval of
25   the Court.  The undersigned agree that the approval process for those agreements will go on if their motion
     is granted.
26
     [4] "Joinder to Request for Appointment of Co-Lead Counsel for Excluded Plaintiffs' and Request for
27   Appointment," Dkt. No. 4271.

28   _____
     REPLY ISO MOTION RE:  APPOINTMENT OF          - 2 -          Master File No. 3:07-cv-5944 JST
     CO-LEAD CLASS COUNSEL FOR IPP IN NON-                        MDL 1917
     REPEALER STATES

their states.  The undersigned conferred with these Attorneys General, and have agreed to modify

their request to exclude the residents of these states.[5]

## II.    THIS COURT SHOULD APPOINT THE UNDERSIGNED AS CO-LEAD COUNSEL TO ADVOCATE THE INTERESTS OF THE NON-REPEALER STATE PURCHASERS AT THIS TIME

### A.    The Motion is Not Premature

Lead Counsel urges the Court to defer consideration of the appointment of lead counsel for

non-repeater state purchasers until after the Special Master's proceedings have concluded (Dkt.

4272 at p. 4).  However, the settlement approval process itself directly affects the claims of these

class members, and considerations of fundamental fairness, if not due process, requires that they

be represented in a more formal manner than simply having their interests raised by "objectors."

This matter is being addressed to this Court because Special Master Quinn's scope of authority

does not encompass appointment of counsel under Rule 23.  *See* Dkt. 4077 at § 1 (limiting Special

Master's duties to assisting the Court with the approval of the pending settlements and fee

motions).  Nothing in Lead Counsel's opposition demonstrates that the interests of these putative

class members were adequately represented in either the litigation or settlement processes.  While

commencing to litigate the claims of the non-repeater state class members while the settlement

approval process is ongoing would be premature, formally appointing counsel to represent them is

not.

### B.    Lead Counsel Has Not Demonstrated That The Claims of Non-Repealer State Purchasers Are So Patently Meritless That They Warrant Dismissal Without Any Sort of Adversarial Evaluative Process

Lead Counsel does not claim that any aspect of the non-repeater state purchasers' federal

monetary claims, whether for damages or for monetary equitable relief, were ever the subject of

litigation or discovery in these cases.  He makes that assertion only as to his "reasonable good-

---

[5]  A description of these communications appears in the "Declaration of Josef D. Cooper in Support of Motion Re: Appointment of Co-Lead Class Counsel for Indirect-Purchaser Plaintiffs with Claims in Non-Repeater States," filed concurrently herewith.

faith judgment" that "there was no merit to – or practical need for – the class claims for injunctive relief," which was "based on years of litigation and discovery."  Dkt. 4272 at p. 5.  Rather, his evaluation of the lack of merit of the non-repealer state purchasers' monetary claims appears limited to an interpretation of the cases cited in his opposition.  While these cases may be argued against the non-repealer state purchasers' monetary claims, they are not sufficiently dispositive to foreclose the need for an advocacy based evaluative process before such claims can be dismissed.

Lead Counsel cites *In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 234 (9th Cir. 1976) as eliminating the ability of this Court to order restitution or disgorgement as remedies in claim brought by indirect purchasers for violations of the federal antitrust laws.   However, this is far too broad a reading of *Vehicle Air Pollution*.  To begin, the Ninth Circuit specifically limited its holding to the "unique facts of these cases."  *Id*. at 233.  Those unique facts provide no guidance here since *Vehicle Air Pollution* did not involve the claims of victims of a price-fixing conspiracy.  Second, while denying the ability of the district court to order the defendants to reimburse class members for retrofit expenses they had voluntarily incurred, the Ninth Circuit distinguished the situation here by noting that the *Vehicle Air Pollution* "Defendants have not received from the car owners any money to which they are not entitled; plaintiffs do not claim that they have."  *Id*. at 234.  Finally, one of the "three major antitrust functions" for which the Ninth Circuit acknowledged that relief under Section 16 of the Clayton Act is available to private parties is exactly the situation here: "depriving violators of the benefits of their illegal conduct."  *Ibid*.

Further, it should be noted that in addition to bringing claims under Section 16, the non-repealer state purchasers are entitled to assert claims under Section 4 of the Clayton Act for monetary recovery for the injury they suffered to their business and property by paying illegally inflated prices for cathode ray tube devices.  While a motion brought pursuant to *Illinois Brick* might prevent them from recovering by offering proof that overcharges were passed on to them, nothing in *Illinois Brick* would foreclose this Court from providing them with any other form of monetary compensation that does not involve such proof, such as disgorgement and restitution,

since these remedies are part of the Court's inherent powers.  *Oregon v. AU Optronics Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.)*, 2011 U.S. Dist. LEXIS 76562 (N.D. Ca. July 11, 2011)

Lead Counsel's other two citations, *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 599 F. Supp 2d 1179, 1192 (N.D. Cal. 2009) and *In re K-Dur Antitrust Litigation*, No. CIV.A. 01-1652 (JAG), 2008 U.S.Dist. LEXIS 71768 (D.N.J. Feb. 28, 2008), are simply not on point.  In *LCD,* Judge Illston (who would later rule that disgorgement and restitution are available to indirect purchasers under federal law) was simply following the state courts of Arkansas, Virginia, Montana and Puerto Rico who refused to allow plaintiffs' to recast antitrust violations as common law unjust enrichment claims to circumvent application of *Illinois Brick*.  The same is true of the *K-Dur* Court in ruling that New Jersey, Pennsylvania and Delaware law does not permit antitrust claims to be brought as unjust enrichment claims.  Neither of these courts were considering the question of whether indirect purchasers alleging a violation of Section 1 of the Sherman Act can obtain monetary equitable relief.

The undersigned are not suggesting that there are no arguments to be made or cases to be cited in defense of the non-repealer state purchasers' claims for monetary or injunctive relief.  However, that is not the issue here.  The question here is whether Lead Counsel has demonstrated that his analysis of these claims was sufficiently thorough and compelling that his conclusion of their utter lack of worth is so unassailable that due process does not require further adversarial inquiry before the settlement releases can be effectuated.  Put another way, in order to deny non-repealer state purchasers representation as a futile act, Lead Counsel must provide this Court with adequate support for a finding that were they to litigate, the dismissal with prejudice of their equitable monetary claims would be such a foregone conclusion that releasing them without compensation in settlement is fair and reasonable.  Lead Counsel has failed to provide such a record or show that his evaluation of their claims adequately protected their interests.

**C.      The Undersigned Are Qualified to Serve as Co-Lead Counsel**

1   The undersigned have taken the lead role in advocating for the interests of the non-repealer

2   state purchaser class members by objecting to the release of their claims, and providing the Court

3   and Special Master with comprehensive briefing and evaluation of the merits of those claims.

4   Indeed, the advocacy of the other counsel raising this objection, including Mr. Bonsignore, who

5   requests that he also be appointed lead counsel, has been in the nature of a joinder or a repetition

6   of the work of the undersigned. The undersigned are uniquely qualified to serve as Co-Lead

7   Counsel for these class members, and do not require the addition of Mr. Bonsignore or any other

8   counsel in a leadership capacity.

9   In addition, Judge Vaughn Walker, acting as a Special Master, evaluated the qualifications

10  of the undersigned and recommended that they be appointed Co-Lead Counsel, albeit for a

11  different purpose.[6]  Lead Counsel suggests that Judge Walker's recommendation was the product

12  of a vendetta against Lead Counsel by the undersigned, in which they engaged in "*ex parte*

13  communications" designed to "convey the impression that the case could be better handled if they

14  were appointed co-lead counsel."  Dkt. 4272 at p. 3.  Even if Mr. Alioto's speculation were true,

15  and the undersigned were critical of Lead Counsel's performance in communications with Judge

16  Walker, the implication that this was all it took to produce Judge Walker's recommendation that

17  they be added as Co-Lead Counsel is absurd.  Vaughn Walker spent over twenty-one years on the

18  federal bench listening to advocacy, some of which was assuredly as self-serving as Lead Counsel

19  claims was the case here.  Notwithstanding, Judge Walker made determinations of the issues

20  before him on the basis of evidence and objective analysis, a practice he undoubtedly continues to

21  this day as a Special Master.

22  Moreover, Judge Walker stated that the genesis of his recommendation that the

23  undersigned be appointed co-lead counsel was a request by "the court" that he make

24  "recommendations that may assist the parties in reaching settlements where appropriate."  Dkt.

25

26  _____

27  [6] "Special Master's Report and Recommendation re Settlement," Dkt. 3200.

28

REPLY ISO MOTION RE:  APPOINTMENT OF          - 6 -          Master File No. 3:07-cv-5944 JST
CO-LEAD CLASS COUNSEL FOR IPP IN NON-                         MDL 1917
REPEALER STATES

3200 at p. 2.  As to the undersigned's alleged "*ex parte* communications," Lead Counsel forgets that Judge Conti's original order of reference to Judge Walker specifically authorized such contacts by the Special Master ("Order Appointing Special Master For Discovery," Dkt. No. 2272) and nothing about the subsequent reference to evaluate the settlement process rescinded that authority ("Order Requesting Report on Settlement Discussions," Dkt. No. 3118).

### D.    There is No Need to Bring in New Counsel to Represent The Non-Repealer State Purchaser Class Members

Finally, there is no potential or actual conflict of interest that would necessitate bringing in another counsel unfamiliar with the case.  The undersigned have never taken a position adverse to the interests of the non-repealer state purchasers.  In DRAM, where Judge Renfrew appointed a firm new to the litigation to advocate for reseller class members, all counsel in a leadership position were on record supporting a damage model antithetical to the reseller's interests.[7] However, it is not uncommon for counsel already in a case to be designated to advance the interests of a certain subset of the class.  *See, e.g., In re Relafen Antitrust Litigation*, 231 F.R.D. 52, 67-68 (D. Mass. 2005).

Lead Counsel asserts that the undersigned "are not suitable candidates" for the role of advocates for the non-repealer state class members because they "are already counsel of record in this case."  Dkt. 4272, at p. 8.  That fact alone allegedly creates "a conflict of interest."  *Ibid*. There is no authority for the proposition that an attorney of record in a class action is disqualified from being appointed Lead Counsel to advocate the interests of a portion of a class.  If this were so, would not the same disabling conflict apply to Lead Counsel himself since he also is "counsel of record in this case?"  Yet, Lead Counsel asserts that he properly and vigorously represented the interests of these class members in the settlement process.  Dkt. 4172, at p. 7.[8]

---

[7]  Lead Counsel concedes that neither of the undersigned has gone on record in this litigation taking a position contrary to the interests of the non-repealer state class members.  Indeed, he has repeatedly claimed that "neither of [the undersigned] did any substantive work in this case."  Dkt. 4272, at p. 3.

[8]  There is also the matter of Lead Counsel's rather bizarre attempt to back away from his assertion that he

1    The fact that the undersigned have clients who purchased in California and other repealer

2    states is similarly irrelevant.  Lead Counsel cites the California Rules of Professional Conduct on

3    avoiding representation of adverse interests, arguing that representation of the claims of non-

4    repealer state purchasers will diminish the recovery of the undersigned repealer state clients "since

5    all class members seek compensation from the same settlement proceeds."  Dkt. 4272 at p. 9.  This

6    argument seems to assume that the only purpose for which the undersigned would be designated

7    Co-Lead Counsel would be the renegotiation of the plan of distribution for the existing settlement

8    to compensate all members of the Nationwide Class.   The undersigned place no such restriction

9    on the potential outcome of their requested appointment.

10    Lead Counsel defines a conflict of interest as any situation in which the personal recovery

11    of one's client could be reduced by an attorney's action.  Applying this definition, class action

12    lawyers violate the Rules of Conduct every time we engage in a campaign to publicize a *pro rata*

13    settlement distribution, or solicit claims from class members other than our personal clients since

14    every claim paid reduces our clients' (and everyone else's) *pro rata* share of the settlement fund.

15    Insofar as Rule 3-310 (C) applies to counsel representing class representatives, it is satisfied by the

16    execution of a retainer agreement in which consent is given to undertake a class action, with its

17    attendant duties and responsibilities to absent class members and to the class as a whole.

18    It is well settled law that class representatives and class counsel agree to represent the

19    interests of the class – in this case, the entire Nationwide Settlement Class – even if this means

20    eschewing a settlement structure that would put the most money in the class representative's

21    pocket.  The primary responsibility of class counsel is to represent the entire class as he or she

22    _____

23    had no duty to represent purchasers in states other than the damage class states.  He claims that what he

24    meant to say was that he had no duty to them "during the litigation phase of the case," but as soon as he sat
     down at the settlement table, he "had a duty to represent all members of the proposed settlement class

25    vigorously and adequately."  Dkt. 4272, at p. 7.  This "swinging door" representation theory, while novel,
     lacks merit and authority, and ignores the practical reality that decisions made and actions taken during the

26    "litigation phase" of a case have very definite repercussions in the "settlement phase;" witness the fact that
     purchasers in Massachusetts, Missouri and New Hampshire find themselves on the no recovery list solely

27    because of decisions made in the litigation phase of the case.

28
     _____
     REPLY ISO MOTION RE:  APPOINTMENT OF         - 8 -        Master File No. 3:07-cv-5944 JST
     CO-LEAD CLASS COUNSEL FOR IPP IN NON-                     MDL 1917
     REPEALER STATES

believes appropriate.  See Advisory Committee Note, Fed. R. Civ. P. 23(g)  [*44] ("Paragraph

(1)… articulates the obligation of class counsel to represent the interests of the class, as opposed to

the potentially conflicting interests of individual class members."); see also *Newberg* at § 11.65

("The general rule is that the named plaintiff and counsel bringing the action stand as fiduciaries

for the entire class, commencing with the filing of a class complaint."); *Greenfield v Villager*

*Indus., Inc*., 483 F.2d 824, 832 (3d Cir. 1973) ("[C]lass action counsel possess, in a very real

sense, fiduciary obligations to those not before the court.").  Class counsel must make their own

determinations about the appropriate course of action, taking full account of their fiduciary

obligation to the class as a whole.  See *In re "Agent Orange" Prod. Liab. Litig*., 800 F.2d 14, 18-

19 (2d Cir. 1986).

There is no impediment to the appointment of the undersigned to represent the interests of

the non-repealer state purchaser class members.

## III.     EXCLUSION OF ILLINOIS, OREGON AND WASHINGTON RESIDENTS

The instant motion originally proposed the appointment of Co-Lead Counsel for all non-

repealer state purchaser members of the proposed Nationwide Class, including those with claims

in Illinois, Oregon and Washington.  Subsequently, the undersigned conferred with the Attorneys

General of Illinois, Oregon and Washington on three occasions regarding the representation of

class members in those States.  *See* Cooper Decl. at ¶ 2.  As a result of these discussions, the

undersigned believe that there is no need to include residents of Illinois, Oregon and Washington

in the group of the undersigned seek to represent.  Cooper Decl. at ¶ 3.

The Attorneys General of Illinois, Oregon and Washington have a significant interest in

pursuing these claims and have suits pending concerning the same subject matter in state court

pursuant to their respective state laws.[9]  These claims have been excluded from the Damages

---

[9] Under Oregon law, the Attorney General has the exclusive authority to bring an action for
damages on behalf of Oregon residents who were indirect purchasers and who were injured by one or more
of the defendants' violations of Oregon antitrust law.  ORS § 646.775.  The court must exclude from the
amount of monetary relief awarded any duplicate recovery "awarded for the same injury."  ORS § 646.775.

Classes in the current and prior settlements based upon rulings by the Court or subsequent

agreements between Lead Counsel and the Attorneys General of these States.  It should be noted

that the claims for relief pled here[10] for those nationwide class members who are not members of

one of the 22 State Damages Classes, include claims for injunctive and equitable monetary relief

under the federal Sherman Act that are not available to the Attorneys General in state court.  *See*

*Eichman v. Fotomat Corp.,* 759 F.2d 1434, 1437 (9th Cir. 1985) (explaining that "federal antitrust

claims are within the exclusive jurisdiction of the federal courts").  However, the claims being

prosecuted by the Attorneys General under state law are sufficiently similar to the claims the

undersigned would prosecute under federal law that the interests of those with claims in Illinois,

Oregon and Washington will be adequately represented by the Attorneys General in the state court

actions.  The Attorneys General have represented that they will continue to vigorously prosecute

these actions on behalf of their residents *parens patriae.*  Cooper Decl. at ¶ 4.  Carving out these

three States will limit potential inefficiencies and confusion among class members as to who is

representing their claims.  For these reasons, the undersigned are hereby modifying their requested

appointment to exclude those with claims in the States of Illinois, Oregon and Washington and

will submit a revised proposed form of order accordingly.

---

Section 7(2) of the Illinois Antitrust Act prohibits private class actions on behalf of indirect purchasers and authorizes only the Attorney General to maintain an indirect purchaser action *parens patriae.*  740 Ill. Comp. Stat. § 10/7(2).  Courts have further observed that "the Illinois [Antitrust Act] represents a policy judgment as to the feasibility of managing duplicative recovery, which the legislature has entrusted to the Attorney General but not to individual indirect purchasers."  *In re Wellbutrin XL Antitrust Litig.,* 756 F. Supp. 2d 670, 677 (E.D. Pa. 2010).  Similarly, courts in Washington have ruled that an indirect purchaser is not "injured in his or her business and property" to recover under Washington's Unfair Business Practices and Consumer Protection Act, but that "this requirement does not exist in the section of the Act that enables actions by the attorney general."  *Blewett v. Abbott Labs.,* 938 P.2d 842, 847 (Wash. Ct. App. 1997) (citing Wash. Rev. Code 19.86.080).  Washington law also excludes any recovery "that duplicates amounts that have been awarded for the same violation" and directs courts to "consider consolidation or coordination with other related actions, to the extent practicable, to avoid duplicate recovery."  Wash. Rev. Code 19.86.080.  *See also California v. Intelligender, LLC,* 771 F.3d 1169, 1179 (9th Cir. 2014) (ruling that final judgment in CAFA class settlement barred State of California from seeking restitution on behalf of members of the CAFA settlement class which had provided monetary recovery).

[10] *See* Indirect Purchaser Plaintiffs' Fourth Consolidated Amended Complaint (Dkt. 1526).

---

1    Dated: January 4, 2016                    Respectfully submitted,

2                                               /s/ Josef D. Cooper
                                                  Josef D. Cooper
3
                                              Josef D. Cooper (53015)
4                                             Tracy R. Kirkham (69912)
                                              John D. Bogdanov (215830)
5                                             COOPER & KIRKHAM, P.C.
                                              357 Tehama Street, Second Floor
6                                             San Francisco, CA 94103
                                              Telephone: (415) 788-3030
7                                             Facsimile: (415) 882-7040
                                              Email:  jdc@coopkirk.com
8

9                                              /s/  Francis O. Scarpulla
                                                  Francis O. Scarpulla
10
                                              Francis O. Scarpulla (41059)
11                                            Patrick B. Clayton (240191)
                                              LAW OFFICES OF FRANCIS O. SCARPULLA
12                                            456 Montgomery Street, 17th Floor
                                              San Francisco, CA 94104
13                                            Telephone: 415-788-7210
                                              Facsimile:  415-788-0706
14                                            fos@scarpullalaw.com

15        Pursuant to Civil L.R. 5-1(i), the filer attests that the concurrence in the filing of this
     document has been obtained from each of the above signatories.
16

17

18

19

20

21

22

23

24

25

26

27

28
     ─────────────────────────────────────────────────────────────────
     REPLY ISO MOTION RE:  APPOINTMENT OF          - 11 -          Master File No. 3:07-cv-5944 JST
     CO-LEAD CLASS COUNSEL FOR IPP IN NON-                         MDL 1917
     REPEALER STATES