Martin Quinn
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA94111
Telephone: (415) 774-2669
Fax: (415) 982-5287
Special Master

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917 <br><br> Case No. C-07-5944-SC |
| This Document Relates to: <br><br> ALL ACTIONS | **SPECIAL MASTER'S REPORT AND RECOMMENDATION RE REQUEST OF CALIFORNIA ATTORNEY GENERAL THAT FINAL DATE FOR SUBMITTING CLAIMS IN THE INDIRECT PURCHASER SETTELEMENT BE EXTENDED TO JUNE 30, 2016 (Hrg. 1/5/16)** |

I.   INTRODUCTION

On December 9, 2015, the California Attorney General filed a Supplemental Statement of Interest and supporting declaration with the Special Master.[1]  Among the issues raised is a request to move the deadline for filing claims in the Indirect Purchaser ["IPP"] settlement from December 7, 2015 to June 30, 2016.  On December 17, 2015, the Special Master had a

---

[1] In accordance with the Court's earlier order, the documents referred to herein were filed only with the Special Master, so there are no docket numbers for them.  They are being submitted as an Appendix to this Report & Recommendation.

conference call with counsel for the Attorney General and Lead Counsel to attempt to resolve informally the issues that the Attorney General raised.  This was unsuccessful.  On December 29, 2015, Lead Counsel for the IPP's responded.  On January 4, 2016, the Attorney General filed a Reply and supporting supplemental declaration.  On January 5, 2016, the Special Master conducted oral argument on the issue of extending the claim deadline, among other issues.

II.  SUMMARY OF RECOMMENDATION

The Special Master recommends that the Court pursuant to its equitable powers extend the deadline for filing claims in the IPP settlement for California natural persons only from December 7, 2015 to June 30, 2016.

II.  FACTUAL BACKGROUND

The State of California brought a parallel state court case, *State of California et. al. v. Samsung SDI, Co., Ltd.*, Case No. 11-51584 (California Superior Court, San Francisco) under its *parens patriae* authority to protect the interests of California residents.  This case was closely coordinated with this MDL proceeding with regard to discovery, mediation and settlement (same mediator was used in both cases).  [Varanini Decl., ¶1]  That case has been settled as to defendants LG, Hitachi, Panasonic, Toshiba and Samsung.[2]  The Attorney General will seek preliminary approval of the settlements in state court on January 27, 2016.  Assuming approval is granted, the Attorney General will need to send notice of the settlement to permit California natural persons the opportunity to object, opt out, or file a claim in the federal IPP settlement.  In accordance with the pattern of coordination of the cases, the Attorney General intends to provide potential claimants with a link to the IPP claims web site informing them that they can file a claim via that web site. [Varanini Decl., ¶11, 12]  IPP's acknowledge that California natural persons may submit claims to the federal settlement fund, since of course they are members of the IPP class.

---

[2] The Samsung settlement is still subject to final approval of the Attorney General.

Although California natural persons have already received notice of the IPP settlement, the Attorney General contends that the notice protocol was not adequately focused on reaching natural persons, as opposed to large entities. [Supp. Statement of Interest, pp. 9-11] The Attorney General originally requested in her Supplemental Statement that the claim deadline be extended for all claimants, inside and outside California. Following the conference call with the Special Master and Lead Counsel, the Attorney General now will be satisfied with an order that the deadline be extended only for California natural persons. [Reply in Support of Supp. Statement, pp. 2-3] The Attorney General argues that such a limited extension is justified because California is the only state that has brought a *parens* action on behalf of its citizens and is settling that action after the existing claim deadline has expired.

The Attorney General and Lead Counsel discussed extending the claim deadline, but on December 3, 2015 Lead Counsel informed the Attorney General that he would not agree to an extension. [Varanini Decl, ¶8]

Lead Counsel for the IPP's initially opposed any extension because of concerns that (a) an extension would permit large corporations and other entities, instigated by claim aggregators, to file more claims to the detriment of natural persons, and (b) disparate treatment of California natural persons in giving them a longer period to submit claims could provoke more objections. At the January 5 hearing, counsel for the IPP's did not oppose the limited extension although they did still express concern that it may engender objections.

III. RECOMMENDATION TO GRANT LIMITED EXTENSION

Coordination of federal and state price-fixing actions is essential to the efficient administration of justice. Apart from some rocky moments, coordination in this case between the Attorney General and the IPP's has been excellent. The settlements of the Attorney General are for modest amounts, since the real incentive for defendants to pay large amounts in settlement is the threat of defeat in the federal MDL. Therefore, the settlement fund received by the Attorney General is insufficient to support a robust independent claim process. All parties recognize that the only sensible approach is to have California persons obtain monetary relief for the *parens* action through the federal IPP settlement fund.

However, since preliminary approval of the *parens* settlement and notice process will not occur until after the federal claim deadline has expired, California residents will have no assurance of being able to submit claims pursuant to that state settlement.  It is possible that the IPP's will agree to accept late claims, as is common, but that is not guaranteed.  California purchasers will have had to submit claims pursuant only to the federal settlement, without obtaining any benefit from the Attorney General's successful efforts pursuant to her *parens* authority to enhance their rights to relief.

The Attorney General acknowledges that the IPP notice program satisfied due process and Rule 23 requirements.  [Supp. Statement, p. 10, fn. 12]  However, she maintains that the notice program was unduly directed toward corporations rather than natural persons.  Specifically she complains about the failure to use TV advertisements and local press releases and print ads.  Lead Counsel, in response to other objections, has presented evidence to the Special Master that the notice program comprised of a combination of national <u>and local</u> print ads, Internet ads and blogs, direct mail and e-mail obtained a reach of 83%, which is within the range of 70-95% range suggested by the Federal Judicial Center.  ["Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide", Federal Judicial Center (2010), at 1 (available at http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf]  The Special Master reaches no conclusion on that issue at this time, but believes that the requested extension is a sensible and harmless fix for any possible gaps in the notice process as it affects natural California persons.

The parties agree that the court has the equitable power to move claim deadlines in order to facilitate and encourage the filing of claims.  *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 195-196 (3d Cir.) [court had inherent discretion to allow late claims].  At the January 5 hearing, counsel for IPP's agreed with that principle.

Here, the only colorable objections would be that California natural persons are being favored by granting them several extra months to submit claims.  However, the Special Master concludes that this disparate treatment can be amply justified, should any objections be made, by the fact that California, and only California, brought a *parens* action.  If the settlement of that

*parens* action is to have any efficacy, a fair opportunity must be granted to the people on whose behalf it was brought to make claims against the settlement fund.

While concerned about potential disruption to his settlement plan, Lead Counsel at the January 5 hearing did not oppose this limited extension. Nor did counsel for any defendants or other parties.

## IV. CONCLUSION

The strongest reason to grant the Attorney General's requested limited extension is that she is entitled to expect the highest degree of cooperation from federal courts and litigants in pursuing common goals in related lawsuits in federal and state courts. This is particularly true where no party has articulated any meaningful prejudice from granting the extension. This cooperation has, with minor exceptions, been the rule in this case. And it should continue in connection with settlement protocols.

The secondary reason is to assuage any possible prejudice California residents may have suffered by the structure of the IPP notice program. As noted, the Attorney General's argument that the IPP notice program was legally defective is highly debatable, and the Special Master will consider alleged defects with the IPP notice program in a subsequent Report & Recommendation. But since no meaningful harm is caused by the extension, it is reasonable to grant it to correct any arguable prejudice to California natural persons.

### Recommended Order

Good cause appearing, it is recommended that the Court order that the deadline for submitting claims to the IPP settlement fund be extended for California natural persons only to June 30, 2016, and that Lead Counsel for the IPP's give notice of such extension on the IPP claim website, as well as any notice given by the Attorney General.

Dated: January 6, 2016

Martin Quinn, Special Master

**APPENDENDIX TO SPECIAL MASTER'S REPORT AND RECOMMENDATION RE REQUEST OF CALIFORNIA ATTORNEY GENERAL THAT FINAL DATE FOR SUBMITTING CLAIMS IN THE INDIRECT PURCHASER SETTELEMENT BE EXTENDED TO JUNE 30, 2016 (Hrg. 1/5/16)**

1. Supplemental Statement of Interest of the State of California

2. Declaration of Emilio E. Varanini in Support of Supplemental Statement of Interest

3. Indirect Purchaser Plaintiffs' Response to the California Attorney General's Statements of Interest

4. Reply in Support of Supplemental Statement of Interest of the State of California

5. Supplemental Declaration of Emilio E. Varanini in Support of Reply in Support of Supplemental Statement of Interest

# ATTACHMENT 1

1   KAMALA D. HARRIS
    Attorney General of California
2   MARK BRECKLER
    Chief Assistant Attorney General
3   KATHLEEN E. FOOTE
    Senior Assistant Attorney General
4   State Bar No. 65819
    ESTHER LA
5   State Bar No. 160706
    PAMELA PHAM
6   State Bar No. 235493
    EMILIO VARANINI
7   State Bar No. 163952
    Deputy Attorneys General
8    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
9    Telephone:  (415) 703-5908
     Fax:  (415) 703-5480
10   E-mail:  Emilio.Varanini@doj.ca.gov

11  *Attorneys for the State of California*

12              IN THE UNITED STATES DISTRICT COURT

13          FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                  SAN FRANCISCO DIVISION

15

16  | IN RE:  CATHODE RAY TUBE (CRT) | Master File No. 3:07-cv-05944-JST |

17  ANTITRUST LITIGATION,           MDL No. 1917

18                                  **SUPPLEMENTAL STATEMENT OF
                                    INTEREST OF THE STATE OF
19                                  CALIFORNIA**

20  This Documents Relates To:     Hearing Date:  March 15, 2015
                                    Time:          2 P.M.
21  ALL ACTIONS                     Courtroom:     Courtroom 9, 19th Floor
                                    Judge:         Honorable Jon S. Tigar
22                                  Special Master: Martin Quinn, JAMS

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

I.    The role of the Attorney General in exercising oversight on behalf of natural persons under both the CAFA and California statutory and common law as it pertains to her input into these proceedings............................................. 3

    A.    The role and powers of the Attorney General in exercising oversight under the class action fairness act ............................................. 3

    B.    The role and powers of the Attorney General in exercising oversight under her federally recognized *parens* authority........................ 7

II.    The allocation plan, as carried out through the notice and claims process, is sufficiently unfair and inequitable to natural persons on its face to warrant modification, and to warrant the Attorney General's receipt and review of claims and notice data, prior to final approval ......................................................... 8

III.    The final date for filing claims should be extended to June 30, 2016 as it would help increase claims from natural persons and would efficiently coordinate state and federal proceedings ............................................................. 16

    A.    The case law, and precedent from similar cases, supports extending the claims date for all claimants past the date for the final approval hearing to June 30, 2016 .......................................................................... 17

    B.    The need to coordinate state and federal proceeding also supports extension of the final date for submitting claims for all claimants to June 30, 2016 ............................................................................................ 17

CONCLUSION.................................................................................................................. 20

1

## TABLE OF AUTHORITIES

2

**Page**

3   CASES

4   *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.*
5        127 Cal.App.4th 387 (2005) ...............................................................13

6   *Consumer Defense Group v. Rental Housing Industry Members*
         137 Cal.App.4th 1185 (2006) .............................................................13
7
    *Diakos v. HSS Systems*
8        2015 WL 5921585 (S.D. Fla. Sept. 29, 2015) ........................................2

9   *Garcia v. World Sav., FSB*
         183 Cal.App.4th 1031 (2010) ..........................................................1, 19
10
    *Gebser v. Lago Vista Independent School Dist.*
11       524 U.S. 274 (1998) ...........................................................................6

12  *Grimes v. Vitalink Communications*
13       17 F.3d 1553 (3d Cir.1994) .................................................................8

14  *In re Cendant Corp. Prides Litig.*
         233 F.3d 188 (3rd Cir. 2000) ...........................................................8, 17
15
    *In re DRAM Antitrust Litig, Report and Recommendation, Part I*
16       (Jan. 8, 2013).......................................................................... *passim*

17  *In re DRAM Antitrust Litig, Report and Recommendation, Part II*
18       (June 24, 2013).........................................................................9, 10

19  *In re DRAM Antitrust Litig, Report and Recommendation, Part III*
         (Nov. 5, 2013) ...............................................................................11
20
    *In re Lupron Marketing and Sales Practices Litig.*
21       677 F.3d 21 (1st Cir. 2012) .............................................................13, 15

22  *In re Music Compact Disc Minimum Advertised Price Antitrust Litig.*
23       236 F.R.D. 48 (D. Maine May 25, 2006)................................................15

24  *In re TFT-LCD (Flat Panel) Antitrust Litig., Second Amended Order Granting*
         *Final Approval*
25       (Apr. 3, 2013).................................................................................9

26  *Lee v. Ocwen Loan Servicing LLC*
         2015 WL 5449813 (S.D. Fl. Sept. 14, 2015) ......................................6, 17
27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*M'Culloch v. Maryland*
   17 U.S. 316 (1819)......................................................................................5

4

*Marshall v. Holiday Magic, Inc.*
   550 F.2d 1173 (9th Cir. 1977).................................................................5, 9

5

6

*Moore v. Verizon Comm'ncs*
   2013 WL 4610764 (N.D. Cal. 2013).............................................................6

7

8

*Nakkhumpun v. Taylor*
   2015 WL 6889399 (D. Colo. Nov. 3, 2015) ..................................................2

9

*Ortiz v. Fiberboard*
   527 U.S. 815 (1999)......................................................................................5

10

11

*Stahlman v. FCC*
   126 F.2d 124 (D.C. Cir. 1942)......................................................................6

12

*State of Georgia v. Pennsylvania R. Co.*
   325 U.S. 439 (1945)......................................................................................7

13

14

*States of Washington & California v. Chimei Innolux Corp. et al.*
   659 F.3d 842 (9th Cir. 2011).........................................................................7

15

16

*Sullivan v. DB Investments, Inc.*
   667 F.3d 273 (3d Cir. 2011) *(en banc)* .........................................................6

17

18

*Thompson v. Key Health Medical Solutions*
   2015 WL 1292228 (M.D.N.C. Mar. 23, 2015) ............................................19

19

*Willner v. Manpower*
   2015 WL 3863625 (N.D. Cal. June 22, 2015) (Tigar, J.) ......................13, 15

20

21

**STATUTES**

22

15 U.S.C.
   § 15c(a)(1)....................................................................................................7

23

24

28 U.S.C.
   § 1715...........................................................................................................2

25

   § 1715(b) ......................................................................................................3
   § 1715(d) ......................................................................................................6

26

   § 1715(f) .......................................................................................................5

27

2 Am. Jur. 2d, Administrative Law, § 57 (2004) ...............................................5

28

iii

# TABLE OF AUTHORITIES
## (continued)

**Page**

Cal. Bus. & Prof. Code § 16760(a)(1) .................................................................7

Class Act. Fair. Act Legis. His. 31-B &32-B. Arnold & Porter LLP Legislative
History p. L. 109-2, Class Action Fairness Act ...........................................4

**COURT RULES**

Federal Rule of Civil Procedure Rule 23 .........................................................9, 11

**OTHER AUTHORITIES**

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION, FOURTH, § 20.32
(2004) ............................................................................................................18

NEWBERG ON CLASS ACTIONS, § 8.18 (5th ed. 2015) ...........................................5

S. REP. 109-14, 5, 2005 U.S.C.C.A.N. 3.................................................4, 7, 13

Emilio Varanini, *Exiting the Fun House of Mirrors: Clayworth v. Pfizer and the
Handling of Pass-On in Post-Trial Allocation Proceedings in State and
Federal Court*, 20 COMPETITION: J. ANTI & UNFAIR COMP. L. SEC. ST. B. CAL.
28, 34-35 (2011)............................................................................................8

Federal Judicial Center & National Center for State Judges, COORDINATING
MULTIDISTRICT LITIGATION, A POCKET GUIDE FOR JUDGES, 11 (2013)..................18

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION, FOURTH, § 20.32,
235-38 (2004) .................................................................................................18

Type Footer Info Here 2 («Matter Primary Court Case #»)

# INTRODUCTION

On October 8, 2015, the Attorney General of the State of California filed a statement of interest asserting conditional objections on behalf of California natural persons concerning potential deficiencies with the proposed allocation plan (including the notice/claims process) of the Indirect Purchaser Plaintiffs' settlements. Dkt. No. 4811.  The Attorney General filed in exercise of the oversight role over class settlements given expressly to her by Congress under the Class Action Fairness Act ("CAFA") and as protector of the interests of California natural persons as *parens patriae* under California law.  The first of these two oversight roles is important because the Attorney General has regularly played a special role in protecting the interests of natural persons so that they may have as fair an opportunity as corporate claimants to be compensated for their claims, a role confirmed by the CAFA.  The latter role is important here as well because the Attorney General has filed a *parens patriae* lawsuit in a parallel state proceeding that not only has been closely coordinated with this proceeding but in which the Attorney General relied on statements made by counsel for the Indirect Purchaser Plaintiffs in settling her case.

Based on experience in similar cases, the Attorney General cited possible deficiencies in the allocation plan, as carried out in the notice and claims process, for which she sought notice and claims data.  With that data, the Attorney General expected to offer the Special Master, and counsel for the Indirect Purchaser Plaintiffs, more measured advice on that plan to ensure a proper balancing of the interests of natural persons and corporate claimants.   In response, although Lead Counsel for the Indirect Purchaser Plaintiffs initially stated, at three different points in his motion for final approval, that he was working to produce this data to the Attorney General, 11/20/15 Indirect Purchaser Plaintiffs Motion for Final Approval, pp. 24 n.25, 26 n.35, 48:18, he then at the eleventh hour refused to produce that data.[1]  Decl. of Emilio E. Varanini

---

[1] This Office relied on these promises in continuing to engage in negotiations with the Indirect Purchaser Plaintiffs in lieu of filing a motion with the Special Master to require production of that data (assuming such a motion were required). *See, e.g.,* 11/20/15 Indirect Purchaser Plaintiffs' Motion for Final Approval, Decl. of Mario Alioto, ¶ 47 (disclosing these discussions).  To the extent that counsel for the Indirect Purchaser Plaintiffs may argue that such a motion is now required, and is out-of-time, they should be estopped from doing so given the Attorney General's detrimental reliance on those statements. *See, e.g., Garcia v. World Sav., FSB,*
(continued...)

1

1  ("Varanini Decl."), ¶¶ 5-7.  The Attorney General thus files this supplemental statement of

2  interest expanding on the concerns presented in her original statement.[2]

3      This supplemental statement first discusses the Attorney General's standing to be heard in

4  these proceedings.  It next offers more detail as to why the proposed allocation plan is inequitable

5  in its treatment of natural persons in the state-specific damage classes generally, and California

6  natural persons in particular.  *See, e.g., infra*, pp. 9-12, 15-17 (discussing lack of television

7  advertising and local media targeting to ensure natural persons are on the same footing as

8  corporate claimants, using trebled damages in lieu of single damages as the cap for claims, and

9  failing to allow for *cy pres* distribution of any residue).  Finally, to the extent questions have

10  been raised by others regarding whether counsel for the Indirect Purchasers Plaintiffs' request for

11  a very high 33 1/3% of the entire settlement fund for fees may include reimbursement of a

12  challenge directed against the Attorney General that may not have served the public interest, the

13  Attorney General provides the Court with a factual summary.  *See infra*, pp. 12-14.

14      The Attorney General also respectfully requests that the Special Master recommend that the

15  final date for the submission of claims be moved from December 7, 2015 to June 30, 2016, a few

16  months past the final approval hearing in this case.[3]  Moving the final claims date is well within

17  the equity powers of the Court and reflects the case law's encouragement of the submission of

---

18  (...continued)

19  183 Cal.App.4th 1031, 1040-41 (2010) (explaining doctrine of promissory estoppel under California law and noting that the doctrine does not require consideration to have been given in exchange for a promise).

20  [2] To the extent that counsel for the Indirect Purchaser Plaintiffs maintains these objections

21  should have been raised at preliminary approval, see 11/20/15 Indirect Purchaser Plaintiffs' Motion for Final Approval at 48, the Attorney General points out that such is not required as the

22  whole point of preliminary approval is to determine whether notice should issue so that objections may be heard at final approval. . *See, e.g., Nakkhumpun v. Taylor*, 2015 WL 6889399, *3 (D.

23  Colo. Nov. 3, 2015) (citing and discussing NEWBERG ON CLASS ACTIONS § 13:12 (5th ed. 2015)); *Diakos v. HSS Systems*, 2015 WL 5921585, *6 (S.D. Fla. Sept. 29, 2015).  Moreover, the CAFA

24  expressly contemplates that a state attorney general may object at final approval, after receipt of information from Defendants, without expressly or implicitly conditioning that objection on first

25  objecting at the preliminary approval stage. *See* 28 U.S.C. § 1715.
   [3] This Office had believed that the failure to move the final date for the submission of

26  claims at the same time that the date for the final approval hearing was moved to be clerical error given that it has been her experience that the claims period is often left open past the final

27  approval hearing and that late claims tend to be honored. *See* Varanini Decl., ¶¶ 8-9.  However, at the eleventh hour, Lead Counsel for the Indirect Purchaser Plaintiffs informed the Attorney

28  General that he was not amenable to moving the date. *Id.* ¶ 8.

2

1   claims so that these settlements may be seen to have value. Moreover, as discussed *infra* at pp.

2   19-21, the Attorney General will be moving for preliminary approval of several settlements of

3   *parens patriae* claims in the parallel proceeding in state court on January 27, 2015. Varanini

4   Decl., ¶ 11. In the notice regarding the release of *parens* claims, this Office would like to direct

5   California natural persons to the claims website of the Indirect Purchaser Plaintiffs so that these

6   natural persons can recover directly for their claims from the settlement funds of the Indirect

7   Purchaser Plaintiffs. *Id.* at ¶¶ 18, 20. By being able to issue such a simple *parens* notice, the

8   Attorney General would receive the benefit of relying on statements made by Lead Counsel for

9   the Indirect Purchaser Plaintiffs, and on the understanding reached with Settling Defendants, that

10  the primary remedy for California natural persons to make direct claims to obtain reimbursement

11  for their damages should be the federal class settlement fund. *Id.* at ¶ 19. As the Special Master

12  may be aware, the Attorney General has endeavored to keep her state case closely coordinated

13  with the federal MDL on a wide variety of fronts, including discovery and settlement through the

14  use of the same mediator. *Id.* at ¶ 1.[4]

15                                       **ARGUMENT**

16  **I.    THE ROLE OF THE ATTORNEY GENERAL IN EXERCISING OVERSIGHT ON BEHALF
         OF NATURAL PERSONS UNDER BOTH THE CAFA AND CALIFORNIA STATUTORY AND
17       COMMON LAW AS IT PERTAINS TO HER INPUT INTO THESE PROCEEDINGS**

18      **A.    The Role and Powers of the Attorney General in Exercising Oversight
                under the Class Action Fairness Act**

19

20      The CAFA expressly requires that the Attorney General be furnished with information

21  enumerated in the statute so that she may make an informed objection if she chooses where a

22  class settlement involves natural persons in her state. 28 U.S.C. § 1715(b). It further provides

23  that a sufficient amount of time must pass before final approval so as to afford the Attorney

24  General the opportunity to object. *Id.* As Congress has explained, the primary purpose of

25  _____

26  [4] The Attorney General's requests for the notice and claims data, and for the moving of
    the claims date, do require action that, to keep to the tight schedule in the state and federal cases
27  without moving the final approval date, takes place as soon as possible. If this supplemental
    statement of interest proves to be insufficient to resolve these requests, the Attorney General
28  would file motions on one or both subjects with the Special Master and/or with the Court.

1  "requiring that notice of class action settlements be sent to appropriate state and federal officials

2  [is] so that they may voice concerns if they believe that the class action is not in the best interest

3  of their citizens." S. REP. 109-14, 5, 2005 U.S.C.C.A.N. 3, 6. "[N]otifying the appropriate state

4  and federal officials of proposed class action settlements will provide a check against inequitable

5  settlements in these cases" and "will also deter collusion between class counsel and defendants to

6  craft settlements that do not benefit the injured parties." *See* S. REP. 109-14, 14-20, 28, 32-33,

7  35, 2005 U.S.C.C.A.N. 3, 17-21, 28, 31-32, 34.  It is plain that Congress believed that an

8  inequitable settlement could include a disproportionate amount of the fees allocated out of the

9  settlement funds.  *See* S. REP. 109-14, 14-20, 28, 32-33, 35, 2005 U.S.C.C.A.N. 3, 17-21, 28, 31-

10  32, 34 (regarding CAFA's aim to eradicate disproportionate allocation of the settlement fund as

11  fees).  The CAFA thus envisions that the Attorney General can exercise oversight over class

12  settlements by making her views known to the Court as to any potential unfairness or inequity

13  involving those settlements. *See, e.g.,* Class Act. Fair. Act Legis. His. 32-B. Arnold & Porter LLP

14  Legislative History P.L. 109-2, Class Action Fairness Act, Debate, Congressional Record –

15  Senate (February 9, 2005), *29 (remarks of Sen. Dianne Feinstein of California) ("And [the

16  CAFA] provides that State attorneys general can review settlements involving plaintiffs");[5] Class

17  Act. Fair. Act Legis. His. 31-B. Arnold & Porter LLP Legislative History P.L. 109-2, Class

18  Action Fairness Act, Debate, Congressional Record – Senate (February 8, 2005) at *21 (remarks

19  of Sen. Chuck Grassley of Iowa) ("Then our bill required the State attorneys general or other

20  responsible State government officials be notified of any proposed class settlement that would

21  affect the residents of their States. We included this provision to help protect class members

22  because such notice would provide State officials with an opportunity to object if the settlement

23  terms are unfair to their citizens.");[6] *id.* at *35 (remarks of Sen. Herb Kohl of Wisconsin) (". .

24  .this bill provides that state  attorneys general are notified of proposed class action settlements.

25  This encourages a neutral third party to weigh in on whether a settlement is fair for the plaintiffs

26  ───────────────
   [5] This legislative history is attached as Exhibit A to the Varanini Decl., see Varanini Decl.,
   ¶ 21.

27  [6] This legislative history is attached as Exhibit B to the Varanini Decl., see Varanini Decl.,
   ¶ 22.

28

4

1   and to alert the court if they do not believe that it is."); NEWBERG ON CLASS ACTIONS, §8.18 (5th

2   ed. 2015) (construing the provisions of the CAFA, including the provision imposing a mandatory

3   delay of 90 days between service of the required notice on state attorneys general and the grant of

4   final approval, as "spurring governmental, but nonjudicial, oversight of class action

5   settlements.").[7] And it has been long-standing law in this Circuit that, when the Attorney General

6   of a state such as California does so object on behalf of her natural persons in seeking a more

7   equitable settlement, "[t]he participation of a government agency serves to protect the interests of

8   the class members, particularly absentees, and approval by the agency is an important factor for

9   the court's consideration." *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

10  However, this raises the question of whether the Attorney General also enjoys any implied

11  powers necessary to discharge her duties if, as here, the proposed allocation plan appears on its

12  face to be inequitable. It is hornbook law that when a statute such as the CAFA grants to a

13  government agency the power to act, the statute includes (unless otherwise prohibited by its

14  express terms) all of the powers necessary to carry out the goals of the statute in question. *See,*

15  *e.g.,* 2 Am. Jur. 2d, Administrative Law, § 57 (2004) ("Generally, administrative agencies have

16  the implied or incidental powers necessary in order to carry out the powers expressly granted.

17  The reason for implied powers is that, as a practical matter, the legislature cannot foresee all of

18  the problems incidental to carrying out the duties and responsibilities of the agency." [Internal

19  footnotes omitted]); *see also M'Culloch v. Maryland*, 17 U.S. 316, 323-24 (1819) (finding that

20  the grant of express powers under the Constitution to the government, such as to Congress,

21  necessarily included all implied powers to carry those express powers out even absent the general

22  clause of the Constitution).)

23

24      [7] Although 28 U.S.C. § 1715(f) states that the CAFA does not expand the authority of, or
    impose any duties on, state attorneys general, that provision merely avoids either the CAFA
25  conferring duties as a federal matter on a state attorney general that a state attorney general may
    lack under his or her own state laws—*see Printz v. United States*, 521 U.S. 898, 905-925 (1997)
26  (unconstitutional to require state officials to execute obligations under federal law)— or the
    CAFA notices being used to bind state attorneys general as non-parties to class settlements—
27  *Ortiz v. Fiberboard*, 527 U.S. 815, 845-47 (1999)  (aggregating non-parties into a mandatory
    class action that they cannot opt out of violates due process).

28

1      Nothing in the CAFA's text bars the Attorney General from requesting relevant notice and

2  claims information and data from *counsel for class plaintiffs* as well, at least upon the filing of

3  conditional objections, so that she may discharge her duties to the Court contemplated by the

4  CAFA.  The CAFA accordingly can and should be interpreted as giving a state attorney general

5  furnished with notice the implied power to make such a request upon the filing of conditional

6  objections and upon production of that information, to be able to use it in offering meaningful

7  input before final approval is to be granted.  *See Gebser v. Lago Vista Independent School Dist.*,

8  524 U.S. 274, 284-85 (1998) (in determining judicially implied private right of action as well as

9  its scope in a statute, court "shapes a sensible remedial scheme that best comports with the

10  statute" and that is not "at odds" with "the statutory structure and purpose"); *cf. Stahlman v. FCC*,

11  126 F.2d 124, 127-28 (D.C. Cir. 1942) (power of FCC to grant licenses or to revoke licenses, and

12  to make regulations, necessarily implies the grant of all implied powers necessary to discharge its

13  express powers, including obtaining information from newspapers since the FCC was not aiming

14  at an objective outside the bounds of its authorizing act).[8]

15      Moreover, the CAFA itself sets out that final approval must be delayed so that state

16  attorneys general may analyze information received from defendants and meaningfully comment

17  on a class settlement. 28 U.S.C. § 1715(d).  Given that receiving information from plaintiffs is a

18  necessary but implied power to enable state attorneys general to comment meaningfully on a class

19

20      [8] The request for such data is certainly germane to the Special Master's crafting of
recommendations on the reasonableness of the proposed allocation plan. Provisional claims

21  information, for example, has been provided before a final hearing on a class settlement to
support a finding that the allocation plan is fair and equitable. *See, e.g., Lee v. Ocwen Loan*

22  *Servicing LLC*, 2015 WL 5449813, *22 (S.D. Fl. Sept. 14, 2015), *appeal filed* Oct. 14, 2015;
*Moore v. Verizon Comm'ncs*, 2013 WL 4610764, * 8 & n.11 (N.D. Cal. 2013). The better the

23  notice provided in ensuring that the disparate groups of the state-specific damages classes had a
fair and equitable opportunity to claim, the less the actual claims rate may matter at the end all

24  other things being equal. *See, e.g., Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 329 n.60 (3d
Cir. 2011) (*en banc*) (claims rates in consumer class actions "rarely exceed seven percent even

25  with the most extensive notice campaigns").  But that explains why the Attorney General has
requested both notice and claims data.  And the reference to "all other things being equal" is not

26  unimportant; allowing for a distribution of residual funds *cy pres* for example in lieu of
overpaying claimants responds to the objection that millions of people will not benefit from a

27  settlement at all no matter how extensive is the notice campaign by providing an indirect benefit
to the class. *Cf. id.* at 328-29 (referring to injunctive relief as playing a similar role in responding

28  to such an objection).

SUPPLEMENTAL STATEMENT OF INTEREST OF THE STATE OF CALIFORNIA
(Master File No. CV-07-5944-JST)

1  settlement, it logically follows that a federal court can and should delay final approval of the

2  allocation plan, if need be, to afford the Attorney General sufficient time to analyze the data and

3  offer meaningful, tailored advice to the Court in line with the CAFA's goals. *See* S. REP. 109-

4  14, 32, 2005 U.S.C.C.A.N. 3, 32 (The notice provision of the CAFA "is designed to ensure that a

5  responsible state and/or federal official receives information about proposed class action

6  settlements and is in a position to react if the settlement appears unfair to some or all class

7  members or inconsistent with applicable regulatory policies.").

8      **B.**    **The Role and Powers of the Attorney General in Exercising Oversight under Her Federally Recognized *Parens* Authority**

9

10        California has conferred on the Attorney General the statutory power to file a *parens*

11  *patriae* claim for compensatory damages on behalf of natural persons, Cal. Bus. & Prof. Code

12  §16760(a)(1), as she has done in her state case that was filed parallel to this federal action and

13  was coordinated with this federal action for certain purposes.  Varanini Decl., ¶ 1.  The Attorney

14  General's unique *parens* role in federal proceedings in acting on behalf of the People of her state

15  has been recognized and blessed by federal courts, *see, e.g., State of Georgia v. Pennsylvania R.*

16  *Co.*, 325 U.S. 439, 447-48 (1945), and by Congress, *see* 15 U.S.C. § 15c(a)(1) (Hart-Scott-

17  Rodino Act authorized *parens patriae* suits for damages under federal law).

18        In filing and maintaining *parens* actions, the Attorney General acts in the public interest.

19  *See, e.g., States of Washington & California v. Chimei Innolux Corp. et al.*, 659 F.3d 842, 848

20  (9th Cir. 2011).  Thus, when faced with parallel litigation involving her law enforcement case in

21  state court on behalf of natural persons and government entities, and a federal case filed by

22  private class counsel on behalf of natural persons in California (among others), the Attorney

23  General has sought as here to coordinate as closely as possible with private counsel in order to

24  serve the public interest most efficiently.  *See* Varanini Decl., ¶ 13.  That coordination can

25  involve, among other things, avoiding duplication by letting counsel for such private plaintiffs

26  take the lead in securing direct compensation (absent obstacles that may arise in federal court

27  such as a refusal to certify a class or a wholly inadequate recovery) while the Attorney General

28  ensures that the interests of natural persons are protected in that process.  *See id.*  The Attorney

7

1   General accomplishes this goal by, among other measures, making suggestions on the notice and

2   claims process to ensure natural persons are not at a disadvantage vis-à-vis corporate entities and

3   by adding *cy pres* protections so that the vast mass of natural persons receive at least some

4   indirect benefit from the settlements. *See id.* Indeed, as discussed below, the *parens* settlements

5   negotiated by this Office in this case reflect such coordination in reliance upon statements made

6   by counsel for the Indirect Purchaser Plaintiffs.

7   II.   **THE ALLOCATION PLAN, AS CARRIED OUT THROUGH THE NOTICE AND CLAIMS**
        **PROCESS, IS SUFFICIENTLY UNFAIR AND INEQUITABLE TO NATURAL PERSONS ON**
8       **ITS FACE TO WARRANT MODIFICATION, AND TO WARRANT THE ATTORNEY**
        **GENERAL'S RECEIPT AND REVIEW OF CLAIMS AND NOTICE DATA, PRIOR TO FINAL**
9       **APPROVAL**

10          Allocation plans are reviewed by a federal court for fairness and reasonableness.  However,

11   given that the review of allocation plans involve an equity proceeding in which the federal court

12   has discretion, the court can consider whether disparate groups within a settlement class are being

13   treated fairly and equitably—though without having to go through the formal process of

14   appointing separate counsel. *See, e.g.,* Report and Recommendation of Special Master, Part I, pp.

15   87-89, 144-45, 146-47, MDL No. 1486, *In re DRAM Antitrust Litig* (Jan. 8, 2013) (collecting and

16   discussing cases);[9] *see also In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 194 n. 7 (3rd Cir.

17   2000) ("Indeed, we have remarked in another context that class actions themselves are grounded

18   in equity. *See, e.g., Grimes v. Vitalink Communications,* 17 F.3d 1553, 1570 (3d Cir.1994)

19   ('[E]quity's long experience with the administration of estates commonly requiring resolution of

20   competing claims to a res among various kinds of creditors and classes of beneficiaries provide[s]

21   an additional underpinning for the remedy of class relief with its origin in equity.')".); Emilio

22   Varanini, *Exiting the Fun House of Mirrors: Clayworth v. Pfizer and the Handling of Pass-On in*

23   *Post-Trial Allocation Proceedings in State and Federal Court,* 20 COMPETITION: J. ANTI &

24   UNFAIR COMP. L. SEC. ST. B. CAL. 28, 34-35 (2011) (discussing how the partition of a settlement

25   _____

26   [9] The Reports and Recommendations are available at 2013 U.S. Dist. LEXIS 188116.
    These reports were approved by the United States District Court for the Northern District in both
    a preliminary approval order dated and a final approval order dated June 27, 2014.  The last
27  appeal of the final approval order was dismissed on December 1, 2015.  The orders can be
    provided upon request.
28

8

1   fund is an equitable issue).  On that subject, it is highly germane that the Attorney General has in

2   similar cases such as *DRAM* and *LCDs* played an important role in ensuring that natural persons

3   are treated fairly and equitably in allocation plans vis-à-vis corporate claimants.  *See, e.g.,* Report

4   and Recommendation of Special Master, Part I, pp. 2, 14-15, 20, 88-89, 120, 130, 142, 151-52,

5   MDL No. 1486, *In re DRAM Antitrust Litig* (Jan. 8, 2013).  Accordingly, the Attorney General

6   would respectfully urge the Special Master to regard her input as an important factor in this

7   Court's consideration of the reasonableness of the proposed allocation plan at bar.  *See Marshall,*

8   550 F.2d at 1178.

9        The class at issue here involves, in an overall general sense, every natural adult person who

10  was a resident in a state-specific damage class in the relevant period and who bought either a

11  television or a computer monitor containing CRTs.  Given the popularity of televisions and

12  computers then and now, it is fair to use cases such as *DRAM* and *LCDs*,[10] involving the price-

13  fixing of components in popular consumer products such as computers, computer monitors, and

14  televisions by similarly large percentages of the U.S. population, as benchmarks to judge if facial

15  concerns present themselves as to whether the notice plan affords an equal opportunity for natural

16  persons to claim along with corporations.

17       In contrast to the case at bar, cases such as *DRAM* and *LCDs* involved notice campaigns

18  that included television advertisements precisely to ensure adequate reach for claim purposes to

19  natural persons, who, after all, are in a very large group and bought the very same products that

20  would now serve as a medium for their notification.  *See, e.g.,* Report and Recommendation of

21  Special Master, Part II, pp. 5-6, 23-24, MDL No. 1486, *In re DRAM Antitrust Litig* (June 24,

22  2013); Appendix to Report and Recommendation of Special Master, Part II, Exh. 53, pp. 5-7

23  [Decl. of Shannon Wheatman at 4-6], MDL No. 1486, *In re DRAM Antitrust Litig* (June 24,

---

24       [10] *See, e.g.,* Report and Recommendation of Special Master, Part II, p. 22, MDL No. 1486,
    *In re DRAM Antitrust Litig* (June 24, 2013).  The Attorney General was deeply involved in both
25  cases and thus is in a position to comment on the applicability of those cases to the issues she has
    raised as to the equities involved with the allocation plan.  Varanini Decl., ¶¶ 1,14; *see, e.g.,*
26  Second Amended Order Granting Final Approval of Combined Class, Parens Patriae, and
    Governmental Entity Settlements, MDL No. 1827, *In re TFT-LCD (Flat Panel)* Antitrust Litig.
27  (Apr. 3, 2013), *available at* https://lcdclass.com/Portals/0/Documents/4-03-
    13%202nd%20Am%20Order% 20Final%20Approval.pdf, *last appeal dismissed* 2014.

28

SUPPLEMENTAL STATEMENT OF INTEREST OF THE STATE OF CALIFORNIA
(Master File No. CV-07-5944-JST)

1   2013)[11]; *id*, pp. 32-34 [Exh. 1 to Decl. of Shannon Wheatman at 22-23]; Decl. of Kathy Kinsella

2   at 3, ¶ 6, MDL No. 1827, *In re TFT-LCD (Flat Panel) Antitrust Litig.* (November 15, 2012),

3   *available at* https://lcdclass.com/Portals/0/Documents/2-7158%20Decl.%20Of%20

4   Katherine%20Kinsella%20re%20Implementation%20%20Of%20Second%20Ntc%20Program.pd

5   f; Decl. of Kathy Kinsella at 3, ¶ 10, MDL No. 1827, *In re TFT-LCD (Flat Panel) Antitrust Litig.*

6   (July 12, 2012), *available at* https://lcdclass.com/Portals/0/Documents/

7   20120712%20Dec%20of%20Katherine%20Kinsella%20Re-Second%20Notice%

8   20with%20Exhibits.pdf. In contrast to the case at bar, cases such as *DRAM* and *LCDs* involved

9   more targeted outreach to local communities with such measures as local press releases and print

10  ads. *See, e.g.,* Report and Recommendation of Special Master, Part II, pp. 5-6, MDL No. 1486,

11  *In re DRAM Antitrust Litig* (June 24, 2013); Appendix to Report and Recommendation of Special

12  Master, Part II, Exh. 53, pp. 5-7 [Decl. of Shannon Wheatman at 4-6] (June 24, 2013); *id*, pp. 39-

13  40 [Exh. 1 to Decl. of Shannon Wheatman at 29-30]; Decl. of Kathy Kinsella at 3, ¶ 6, MDL No.

14  1827, *In re TFT-LCD (Flat Panel) Antitrust Litig.* (November 15, 2012); Decl. of Kathy Kinsella

15  at 3, ¶ 6, MDL No. 1827, *In re TFT-LCD (Flat Panel) Antitrust Litig.* (Nov. 15, 2012); Decl. of

16  Kathy Kinsella at 3, ¶ 8, MDL No. 1827, *In re TFT-LCD (Flat Panel) Antitrust Litig.* (July 12,

17  2012).[12]

18      Other features of the proposed allocation plan work in concert with the gaps in the notice

19  plan to lessen the confidence that natural persons have had a fair and equitable opportunity to

20  claim or otherwise benefit from these settlements.  Most importantly, counsel for the Indirect

21  Purchaser Plaintiffs has disclaimed the need to do television ads on the ground of cost and

22  presumably would use the same rationale in explaining the lack of more targeted outreach to local

23      [11] Because the Attorney General does not believe that the Special Master has access to this
24  Appendix as opposed to the other DRAM documents cited herein, it is attached as Exhibit D to
    the Varanini Declaration, *see* Varanini Decl., ¶ 25
25      [12] The Attorney General is not objecting on the ground that the notice itself is insufficient
    for due process or for Federal Rule of Civil Procedure Rule 23 opt-out/objection purposes
26  because it did not include these advertisements. Varanini Decl., ¶ 2. But the absence of such
    notice in these circumstances means that the allocation plan did not give natural persons a
27  sufficiently fair and equitable chance to claim *vis-à-vis* corporations. *Id.; see id.,* ¶¶ 22-24 &
    Exh. C (statement from well-respected notice expert in class cases that use of notice to stimulate
28  claims is different than use of notice for due process and Rule 23 purposes).

1   communities. *See, e.g.,* 11/20/15 Indirect Purchaser Plaintiffs' Motion for Final Approval at 45-

2   46; *but see, e.g., id.* Exh. C (statement of notice class expert that expending monies to stimulate

3   claims is different than spending money to ensure notice is adequate for due process and Rule 23

4   purposes). However, Lead Counsel for the Indirect Purchaser Plaintiffs ("Lead Counsel") is, in

5   the same breadth, claiming 33 1/3% of the common fund for attorneys' fees. That percentage is

6   quite high when compared to cases of similar size and scope such as *DRAM* and *LCDs*. *See, e.g.,*

7   Report and Recommendation, Part III, MDL No. 1486, *In re DRAM Antitrust Litig* (Nov. 5, 2013)

8   (explaining why class counsel and the Attorneys General were asking for only 25% in attorneys'

9   fees via discussion of the case law and the 25% benchmark that applies in the Ninth Circuit);

10   Indirect Purchaser Class Plaintiffs' Notice of Motion and Motion for Attorneys' Fees and

11   Incentive Awards at 5-6, 19-20, 21-22, 27-29, 30-31, MDL No. 1827, *In re TFT-LCD (Flat Panel)*

12   *Antitrust Litig.* (September 7, 2012), *available at* https://lcdclass.com/Portals/0/

13   Documents/1.%20Notice%20of%20Motion%20and%20Motion%20for%20Attorneys'%20

14   Fees%20and%20Incentive%20Awards.pdf (explaining why class counsel were entitled to 28.5%

15   of the common fund for their fees "as a historic result" when the benchmark in the Ninth Circuit

16   is 25%). Objectors have questioned activities used to justify the request as not having been

17   carried out by Lead Counsel for the benefit of the public interest, with one example possibly

18   being the excessive litigation he conducted to overturn the Attorney General's early *parens*

19   settlements in state court.

20       To inform the Court, the Attorney General accordingly presents the following factual

21   summary as it may impact allocation. Lead Counsel's appearances, briefings, and ultimately his

22   appeal of settlements in the Attorney General's state case could be questioned given the

23   following:

24       (1) Before seeking preliminary approval of her *parens patriae* claims, the Attorney General

25   agreed to state, and stated on the record multiple times at preliminary and final approval, that a

26   *parens* release could not supplant or estop a parallel federal class case from going forward once a

27

28

11

1    class had been certified;[13]

2        (2) The state court found, and Lead Counsel conceded, that he was seeking an advisory

3    opinion given any state court ruling on potential estoppel effects could not bind the federal courts,

4    thus suggesting that Lead Counsel's extended litigation in state court may have been ill-

5    considered;[14]

6        (3) Lead Counsel relied on the representations of the Attorney General, which they urged

7    the federal court to treat as persuasive, in opposing a motion from Defendant Philips as to their

8    representation of California natural persons, suggesting those representations had value;[15] and

9    _____

10      [13] *See* Varanini Decl., ¶ 15; *id.* Exh. E [Reporter's Transcript at 28-32, 87-88, 181-82,
      212-14]; *id.* Exh. F [October 29, 2013 Reply Brief Regarding Final Approval of Philips'

11   Settlement at 16:22-23]. Counsel for the Indirect Purchaser Plaintiffs' statements on the record
      show he well understood the import of the representations made by the Attorney General. *See*
      Varanini Decl., Exh. E [Reporter's Transcript at 22-23, 122-123 and 195:8-17].

12      [14] *See, e.g.,* Varanini Decl., Exh. E [Reporter's Transcript at 172:3-177:23] (Lead Counsel
      acknowledges he is seeking an advisory opinion); *id.* Exh. E [Reporter's Transcript at 242:2-

13   243:10] (state court finds that to rule on the issue of whether a *parens* settlement estops a federal
      class from pursuing relief on behalf of California natural persons constitutes an advisory opinion).

14   Lead Counsel claims that he had to appear in the Attorney General's state court case (and by
      implication engage in the extensive activity therein in opposition to the Philips settlement)

15   because "Philips took the position that its $500,000 settlement with the AG released the claims of
      California natural persons [in the federal class action]." 11/20/15 IPP Reply Re: Fees Motion at

16   24:14-16. However, Philips also stated that the resolution in state court of the question of whether
      a *parens* release and *parens* settlement estops further federal class proceedings for California

17   natural persons constituted an advisory opinion that could not bind the federal court. *See*
      Varanini Decl., Exh. E [Reporter's Transcript at 49:3-50:12, 70:5-72:13, 182:20-184:1].) Thus,

18   the extended efforts of Lead Counsel in what was an advisory proceeding could be considered to
      be extremely disproportionate to the representation that they needed, and obtained early in the

19   state court proceedings, from the Attorney General. Throughout all of the proceedings in state
      court, counsel for both sides had to file a dozen or so briefs (containing hundreds of pages of

20   filings), go through four court appearances, and endure numerous court conferences, all directed
      at the Attorney General's settlement with just one Defendant—Philips. *See* Varanini Decl., Exhs.

21   E and G [Register of Action and Reporter's Transcript]. Moreover, of the 250 pages of hearing
      transcript prepared on the Attorney General's case, the views of Lead Counsel occupy more than

22   89 pages while the remaining 161 pages were shared by the court, counsel for the Attorney
      General, counsel for Philips, and counsel for the other early Settling Defendant, Chunghwa. *See*

23   Varanini Decl. Exh. E [Reporter's Transcript].) In fact, the state court and the settling parties had
      to spend a considerable amount of time at each hearing walking Lead Counsel through the

24   relevant laws concerning the interplay between *parens patriae* and class actions as well as on
      jurisdiction and contract interpretation. *See, e.g.,* Varanini Decl. Exh. E [Reporter's Transcript at

25   148:9-148:18, 154:18-155:1, 159:23-160:6, 123:24-124:6, 150:20-151:12, 172:3-177:23].)
      [15] *Compare* Dkt. 3034 (motion for summary judgment filed by Philips against Indirect

26   Purchaser Plaintiffs based on Attorney General early settlement with Philips in state court) *with*
      Dkt. 3247 at 3-4 (referencing representations of Attorney General); *id.* at 7 (same); *id.* at 10 n.10

27   (referencing that the interpretation of the Attorney General as to the scope of her own parens
      powers should be accorded great weight).

28
                                    12
     _____

1    (4) Lead Counsel settled with Philips following the submission of that opposition for the

2    sum of $175 million, thus further suggesting that the representations made by the Attorney

3    General had substantial worth.[16]

4        The Attorney General is not objecting to the size of the requested percentage of the

5    common fund for fees as such (*see* Dkt. No. 4811 n.3) because that requires consideration of a

6    myriad of factors that pertain to the Court's fiduciary assessment of that request.  Yet, the size of

7    this common fund request should not be used to obviate expending a reasonable amount of costs

8    in line with past similar cases to ensure natural persons have a fair and equitable opportunity to

9    make claims for damages they suffered, especially when that common fund fees request may

10   include expenditures that others have questioned as to their value to the public interest.[17]  *See*

11   *Willner v. Manpower*, 2015 WL 3863625, *6-7 (N.D. Cal. June 22, 2015) (Tigar, J.) (part of

12   monies requested in attorneys' fee request redirected in favor of an additional pro rata distribution

13   to claimants because of the  questionable value of a policy change resulting from the attorneys'

14   efforts); *see also, e.g.,* S. Rep. 109-14, 14-20, 28, 32-33, 35, 2005 U.S.C.C.A.N. 3, 17-21, 28, 31-

15   32, 34 (the Class Action Fairness Act, 28 U.S.C. § 1715, aims to eradicate the disproportionate

16   allocation of the settlement fund as fees).

17       A separate question concerns the wisdom of a trebled damages cap as such a cap

18   overcompensates existing claimants, especially corporate claims that tend to be much larger than

19   natural person claims.  While case law supported counsel for the Indirect Purchaser Plaintiffs

20   choosing a cap of single damages on claims filed by individual claimants and by corporations, *see*

21   *In re Lupron Marketing and Sales Practices Litig.*, 677 F.3d 21, 34-35 (1st Cir. 2012) (payment

22   of residual funds to *cy pres* recipients preferable to payment of trebled damages as such trebled

23   payment is overcompensation); *see also, e.g.,* Report and Recommendation of Special Master,

---

24       [16] *See* 11/19/2015 Decl. of Mario Alioto in Support of Final Approval, ¶ 46 & n.5.
         [17] There is support in the case law for the notion that these disproportionate efforts

25   engendered by Lead Counsel can be viewed as not being in the public interest.  *See, e.g.,*
     *Consumer Defense Group v. Rental Housing Industry Members*, 137 Cal.App.4th 1185, 1219-

26   1220 (2006); *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.*, 127
     Cal.App.4th 387, 399 (2005); *see also, e.g.,* Dkt. No. 4211 at 2:2-8 (noting the possibility that the

27   Indirect Purchaser Plaintiffs "mismanaged the case by ... (2) engaging in a contentious dispute
     with the California Attorney General").

28

13

1  Part I, pp. 151-52, 156-57, MDL No. 1486, *In re DRAM Antitrust Litig* (Jan. 8, 2013)

2  (summarizing case law supporting the imposition of a single damages cap in *DRAM* as a means of

3  balancing out the interests of small claimants against corporate claims), counsel for the Indirect

4  Purchaser Plaintiffs instead chose a cap of *trebled* damages on claims actually filed.  This means

5  that, rather than a corporate or individual claimant being paid only in full for the damages they

6  suffered from purchasing CRT products as part of any *pro rata* distribution of settlement funds,

7  they would receive trebled damages.  The payment of *trebled* damages may be justified in cases

8  such as *LCDs*, *see, e.g.,* Indirect Purchaser Plaintiffs' and Settling States' Joint Notice of Motion

9  and Motion for Final Approval of Combined Class, *Parens Patriae*, and Governmental Entity

10  Settlements at 12:5-9 (Nov. 15, 2012), *available at* https://lcdclass.com/Portals/0/Documents/1-

11  7158%20Copy%20of.pdf, in which optimal notice strategies were employed to reach as many

12  natural persons as possible even if additional costs had to be expended (*see, e.g.,* Decl. of Kathy

13  Kinsella at 3, ¶ 6, MDL No. 1827, *In re TFT-LCD (Flat Panel) Antitrust Litig.* (November 15,

14  2012)), and where counsel for the class displayed sensitivity to not requesting a (potentially) too

15  high a percentage of the common fund in fees (*see, e.g.,* Indirect Purchaser Class Plaintiffs'

16  Notice of Motion and Motion for Attorneys' Fees and Incentive Awards at 5, MDL No. 1827, *In*

17  *re TFT-LCD (Flat Panel) Antitrust Litig.* (September 7, 2012)). It certainly is not justified where

18  neither set of circumstances is present such as here.

19        On a related point, even if, at the end of the day, Lead Counsel can justify the refusal to

20  spend money on what has been standard notice in other comparable cases, the Attorney General

21  questions whether their desire—to avoid the creation of a residual fund from which *cy pres*

22  distributions may be made for the indirect benefit of natural persons—is an appropriate one.

23  The *cy pres* distribution of substantial proceeds has been blessed by precedent in this Circuit and

24  elsewhere, *see* Report and Recommendation of Special Master, Part I, pp. 157-62, MDL No.

25  1486, *In re DRAM Antitrust Litig* (Jan. 8, 2013) (collecting and discussing cases), let alone the

26  distribution of residual funds for which *cy pres* is universally accepted.  *See id.* (collecting and

27  discussing cases); *see also, e.g.,* Second Amended Order Granting Final Approval of Combined

28  Class, Parens Patriae, and Governmental Entity Settlements at 8, MDL No. 1827, *In re TFT-LCD*

1  *(Flat Panel) Antitrust Litig.* (Apr. 3, 2013) (noting that the distribution of residual funds

2  remaining at the end of court discretion may be subject to distribution in the court's discretion);

3  Order re: Indirect Purchaser Plaintiffs and State Attorneys General's Joint Motion for Interim

4  Reimbursement of Expenses at 3, MDL No. 1827, *In re TFT-LCD (Flat Panel) Antitrust Litig.*

5  (October 20, 2014), *available at* https://lcdclass.com/Portals/0/Documents/ 9273%20

6  Indirect%20Purchaser%20Plantiffs'...pdf. *Cy pres* distribution is an important component of state

7  laws in jurisdictions such as California, *see, e.g.,* Report and Recommendation of Special Master,

8  Part I, pp. 162-66, MDL No. 1486, *In re DRAM Antitrust Litig* (Jan. 8, 2013) (discussing

9  submission of California Attorney General on case law in California), and the Attorney General

10  has taken the position that state law in jurisdictions like California should control whether *cy pres*

11  distribution is appropriate, *see id.* at 166 n.231 (discussing position but finding that this issue

12  need not be addressed).  Should counsel for the Indirect Purchaser Plaintiffs satisfy the Special

13  Master that purchasing television and radio ads is just too costly even for the purpose of

14  increasing claims, then  the Attorney General would respectfully urge that reimbursement on

15  claims be capped at single damages, *see, e.g., In re Lupron Marketing and Sales Practices Litig.,*

16  677 F.3d at 34-35—or that the percentage of the common fund for fees be reduced, *see, e.g.,*

17  *Willner,* 2015 WL 3863625 at *6-7—so as to enable the creation of a residual fund to be

18  distributed *cy pres* for the indirect benefit of natural persons in the state-specific damages

19  classes.[18]

20      The information provided to date by counsel for the Indirect Purchaser Plaintiffs does not

21  provide reassurance that natural persons received fair and equitable treatment in the

22  implementation of the allocation plan.  For example, although counsel for the Indirect Purchaser

---

[18] As an alternative to *cy pres* distribution, the Attorney General would support such residual funds being distributed *pro rata* to the state attorneys general of those states for which there are state-specific damage classes—see *In re Music Compact Disc Minimum Advertised Price Antitrust Litig.,* 236 F.R.D. 48, 52-53 (D. Maine May 25, 2006), or if the amount of residual funds is simply too small for any feasible state-specific distribution at all, the Attorney General would support the designation of one or more nationwide *cy pres* recipients by the Court—*see In re Lupron Marketing and Sales Practices Litig.,* 677 F.3d at 34-35; see also In re Music Compact Disc, 236 F.R.D. at 52-53 (discussing distribution of left-over product to nationwide *cy pres* recipient—United Service Organization).

SUPPLEMENTAL STATEMENT OF INTEREST OF THE STATE OF CALIFORNIA
(Master File No. CV-07-5944-JST)

1   Plaintiffs reveal that they sent out 10 million e-mails to natural persons, we do not know how

2   many of those e-mails were opened, how many recipients clicked on the link provided by those e-

3   mail to the claims site, how many filed claims, and with respect to all of these figures, how many

4   of them were or might be California residents.  And, of course, no data has been provided to date

5   as to the actual claims rate, including the claims rate from natural persons versus corporate

6   claimants, or the claims rate from California natural person residents.  Given the repeated

7   representations made in the Indirect Purchaser Plaintiffs' motion for final approval that they

8   would work with the Attorney General to provide the notice and claims data requested by the

9   Attorney General, they should be ordered to provide this data immediately.

10  **III.    THE FINAL DATE FOR FILING CLAIMS SHOULD BE EXTENDED TO JUNE 30, 2016 AS
             IT WOULD HELP INCREASE CLAIMS FROM NATURAL PERSONS AND WOULD**

11  **EFFICIENTLY COORDINATE STATE AND FEDERAL PROCEEDINGS**

12          Although the hearing date for final approval of the Indirect Purchaser Plaintiffs' settlements

13  has been moved to March 15, 2016, the date for the final submission of claims has not been so

14  moved.  Previously, the Attorney General had no reason to believe that the failure to move the

15  final date for submitting claims in tandem with moving the date for final approval was anything

16  other than clerical.  Varanini Decl., ¶¶ 8-9.  However, at the eleventh hour, counsel stated that

17  they would not move the date.  *Id.*  The Attorney General respectfully requests that the Special

18  Master recommend the final date for the submission of claims for *all* claimants be moved from

19  December 7, 2015 to June 30, 2016 for the following reasons: (1) the court has the power at

20  equity to move the final date for the submission of claims to match the practice of similar cases;

21  (2) extending the date for the final submission of claims in fact could have a salutary effect in

22  encouraging more claims in this case so as to make sure that the settlement funds are given back

23  to as wide a group of claimants as possible; and (3) to extend this date would allow for the

24  efficient coordination of this federal settlement process with the upcoming approval process in

25  state court for the Attorney General's settlement proceedings.

26          ///

27          ///

28
                                            16

**A.   The Case Law, and Precedent From Similar Cases, Supports Extending the Claims Date for all Claimants Past the Date for the Final Approval Hearing to June 30, 2016**

Generally, the case law encourages the submission of claims against a settlement fund to ensure that as many eligible individuals and corporations can be compensated for the injury inflicted on them by the illegal acts of defendants, here the payment of overcharges arising from Defendant's cartel.   Accordingly, the United States Court of Appeals for the Third Circuit found that a district court has the discretion as an equitable matter to move the final date for submitting claims so as to allow late claims even faced with an argument from a defendant that such an extension violated the settlement agreement. *In re Cendant*, 233 F.3d at 190-91, 192-95.   Other courts have remarked that extending the claims date at least a couple of months after the final approval date can have the salutary effect of ensuring a sufficient claims rate to give value back to the class for the settlement obtained by class counsel. *See, e.g., Lee v. Ocwen Loan Servicing LLC*, 2015 WL 5449813, *22-23 (S.D. Fl. Sept. 14, 2015), *appeal filed* Oct. 14, 2015 (observing that the claims deadline being set after the final approval hearing has the "salutary" effect of "maximizing the claims period's duration" and that class counsel expects the claims rate will range between 10 to 15% by the end of the claims period).   And in the *DRAM* and *LCDs* cases, claims were accepted *at least* a few months after the deadline for final approval precisely to ensure a sufficient claims rate to give such value back to the class. *See, e.g.,* Order re: Indirect Purchaser Plaintiffs and State Attorneys General's Joint Motion for Interim Reimbursement of Expenses at 2, MDL No. 1827, *In re TFT-LCD (Flat Panel) Antitrust Litig.* (October 20, 2014) (claims filed up to June 6, 2014 were paid even though the final approval order issued April 3, 2013).   Given this case law and precedent, the Special Master can recommend the Court use its power at equity to move the claims date out a few months past the final approval hearing to June 30, 2016 as that will serve the best interests of the class as a whole in the federal proceedings.

**B.   The Need to Coordinate State and Federal Proceeding Also Supports Extension of the Final Date for Submitting Claims for all Claimants to June 30, 2016**

Coordination of parallel state and federal proceedings is an important goal of federal complex case management (as it is for state complex case management). *See* Federal Judicial

17

1   Center & National Center for State Judges, COORDINATING MULTIDISTRICT LITIGATION, A

2   POCKET GUIDE FOR JUDGES, 11 (2013) ("Coordination among courts is particularly beneficial as

3   the parties approach settlement."); Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION,

4   FOURTH, § 20.32, 235-38 (2004) (encouraging the coordination of state and federal cases,

5   including in the context of settlement).  The Attorney General will be moving for preliminary

6   approval of her settlements on January 27, 2016.  Varanini Decl., ¶ 11. The Attorney General

7   entered into these settlements in reliance on California natural persons being able to primarily

8   look to any settlements or any trial verdict achieved by counsel for the Indirect Purchaser

9   Plaintiffs for direct relief with the Attorney General protecting the interests of these natural

10   persons by weighing in on any allocation plan.  *Id.* ¶¶ 17-20.

11   More specifically, in the wake of Lead Counsel's prolonged litigation in state court against

12   the Attorney General's early *Philips* settlement described above, the Attorney General sought to

13   restore the traditional close coordination of private plaintiffs with the Attorney General by

14   agreeing to add specific language suggested by Lead Counsel to her later-in-time settlements with

15   defendants in her state proceeding. *See* Varanini Decl., ¶ 16.   That language, as set out in three

16   later-in-time settlements, Panasonic, Toshiba, and Samsung,[19]  states that the release of *parens*

17   *patriae* claims will not operate to displace or supplant the claims of the Indirect Purchaser

18   Plaintiffs. *Id.* ¶ 17.   And all of the later-in-time settlement agreements contain the understanding

19   of the Settling Defendants and the Attorney General that, while the Attorney General could

20   oppose a distribution/allocation plan proposed by the Indirect Purchaser Plaintiffs, she would not

21   oppose the underlying settlements in and of themselves between those defendants and the Indirect

22   Purchaser Plaintiffs. *Id.* ¶ 17.  Consequently, the language in these later-in-time settlement

23   agreements, when considered in their totality, reflects the Attorney General's traditional practice

24   of working with private counsel for the Indirect Purchaser Plaintiffs to aid them in recovering

25   large sums of monies that can be used for a direct distribution plan to natural persons and

26

27   [19] The settlement with Samsung is still an oral settlement-in-principle awaiting Attorney
     General approval.  The parties have, however, begun to negotiate a written settlement agreement
28   in the meantime.  Varanini Decl., ¶ 17 n.1.

SUPPLEMENTAL STATEMENT OF INTEREST OF THE STATE OF CALIFORNIA
(Master File No. CV-07-5944-JST)

1   corporations while weighing in on the proposed distribution/allocation plan, as in *DRAM* and

2   *LCDs*, to ensure that natural persons receive fair and equitable treatment in that plan. *Id.* ¶ 17.

3       In reliance on this understanding of this practice all of the parties, including Lead Counsel,

4   the Attorney General bargained for cash portions of her settlements that permit only a small

5   residue to be distributed *cy pres* for the indirect benefit of the California natural persons she

6   represents. *Id.* ¶ 18. Accordingly, for the Attorney General to obtain the benefit of her reliance

7   on the request of Lead Counsel, and on the understanding of all of the parties, it is important that

8   there be the opportunity to direct California natural persons to the fund created by the settlements

9   of counsel for the Indirect Purchaser Plaintiffs for direct relief by filing claims that will be treated

10   as being valid. *Id.* Should the Office be able to craft a *parens* notice that simply allows

11   California natural persons the opportunity to file claims against the federal settlement fund, the

12   Attorney General will have received the benefit of the bargain with counsel for the Indirect

13   Purchaser Plaintiffs. If not, California natural persons will face a confusing and highly uncertain

14   notice and objection process with unanswered questions and for at least some a lost opportunity to

15   file a claim. It is thus much more workable for the final claims submission date for all claimants

16   to be moved to June 30, 2016 so that the Attorney General may state in the *parens* notice that

17   natural persons wishing to recover monies for damages suffered can validly file a claim in the

18   parallel federal action and provide the appropriate links. Varanini Decl., ¶ 20. Indeed, insofar as

19   moving the claims date can be analogized to seeking a stay, such a move is appropriate to show

20   comity vis-à-vis the Attorney General's upcoming state settlement proceedings so that the state

21   and federal proceedings may remain closely coordinated as they have been throughout these

22   proceedings. *See Thompson v. Key Health Medical Solutions*, 2015 WL 1292228, *12-13

23   (M.D.N.C. Mar. 23, 2015) (staying federal class certification proceedings to accommodate state

24   class settlement proceedings in California).[20]

25       To move the final date for submitting claims to June 30, 2016 does not unduly favor

26   California natural persons, who will be receiving *parens* notice in the intervening time period.

27   ────────────────────
[20] The course of conduct here raises promissory estoppel concerns (*see, e.g., Garcia*, 183

28   Cal.App.4th at 1040-41) that also support the positions being taken here by the Attorney General.

SUPPLEMENTAL STATEMENT OF INTEREST OF THE STATE OF CALIFORNIA
(Master File No. CV-07-5944-JST)

1   The new date for submitting claims would apply to all claimants.  Further, providing the extra

2   time can allow for additional nationwide measures to be taken as to notice so as to maximize

3   potentially the claims rate and give value back to the class such as (but not limited to) those

4   suggested herein.

### CONCLUSION

6        The Attorney General respectfully requests that the Special Master take account of this

7   supplemental memorandum in crafting his recommendations, including whether additional notice

8   should be required in accordance with similar cases and whether certain aspects of the proposed

9   allocation plan should be redone to make more monies available for notice, for claims, and for a

10  *cy pres* distribution of residue.  The Attorney General also respectfully requests that this Special

11  Master order counsel for the Indirect Purchaser Plaintiffs to provide immediately notice and

12  claims data (along with a meaningful opportunity to respond) so that these  suggestions on the

13  allocation plan can be refined.  Finally, to remedy what appears to be a clerical error that has

14  important ramifications for providing an adequate opportunity for natural persons to make claims

15  and for coordinating state and federal proceedings, the Attorney General requests that the Special

16  Master recommend moving the final date for submitting claims for all claimants as soon as

17  possible (subject to the input of the Court) to June 30, 2016.

18

19  Dated:  December 9, 2015                    Respectfully submitted,

20                                             KAMALA D. HARRIS
                                               Attorney General of California
21

22                                             */s/ Emilio E. Varanini*
                                               EMILIO E. VARANINI
23                                             Deputy Attorney General
                                               *Attorneys for the State of California*
24

25  SF2011203501
    41432130.doc
26

27

28
                                           20

# ATTACHMENT 2

1
KAMALA D. HARRIS
Attorney General of California
2
MARK BRECKLER
Chief Assistant Attorney General
3
KATHLEEN FOOTE
Senior Assistant Attorney General
4
EMILIO VARANINI
Deputy Attorney General
5
State Bar No. 163952
 455 Golden Gate Avenue, Suite 11000
6
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5908
7
 Fax:  (415) 703-5480
 E-mail:  Emilio.Varanini@doj.ca.gov
8

9
*Attorneys for the State of California, et al.*

10
IN THE UNITED STATES DISTRICT COURT

11
FOR THE NORTHERN DISTRICT OF CALIFORNIA

12
SAN FRANCISCO DIVISION

13

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION,** | Master File No. 3:07-cv-05944-JST<br><br>MDL No. 1917<br><br>**DECLARATION OF  EMILIO E. VARANINI IN SUPPORT OF SUPPLEMENTAL STATEMENT OF INTEREST** |
| **This Document Relates To:**<br>**ALL ACTIONS** | |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

1      I, EMILIO E. VARANINI, declare as follows:

2      1.     I am a Deputy Attorney General with the California Attorney General's Office

3 ("Office") and am lead counsel for the California Attorney General in the parallel state court case

4 of *State of California et. al. v. Samsung SDI, Co., Ltd.,* Case No. 11-51584 (California Superior

5 Court, San Francisco). This case was closely coordinated with this Court's MDL No. 1917 for

6 purposes of fact and expert discovery as well as mediation and settlement, e.g., the same mediator

7 was used in the state court case as in the federal court case to help resolve both matters (albeit

8 separately). I have extensive experience in the Office's participating in, as well as leading, large

9 nationwide price-fixing cases in litigation, settlement, and distribution involving consumers and

10 government entities. I am admitted to this Court and could, if called as a witness, testify

11 competently to the matters set forth herein. I make this declaration under penalty of perjury under

12 the laws of the United States and the State of California.

13      2.     The Attorney General filed a statement of interest regarding the Indirect Purchaser

14 Plaintiff settlements in this proceeding on October 8, 2015. That statement does not object to the

15 settlements themselves. Nor does it object to the notice provided of those settlements on the

16 ground that the notice in question did not comply with due process and Rule 23 requirements.

17 Rather, it asserts conditional objections to the allocation plan proposed, including the

18 notice/claims process used to carry out the allocation plan, in asserting that natural persons,

19 including California natural persons, may not have been treated fairly and equitably in that plan.

20 It also asked for the production of notice and claims data to aid the Attorney General in offering

21 more tailored advice to the Special Master on the proposed allocation plan.

22      3.     Because discussions with the representative for Lead Counsel for Indirect

23 Purchaser Plaintiffs ("Lead Counsel"), the existence of which were disclosed by Lead Counsel in

24 his filings, failed at the end of last week as set out below, the Attorney General is filing a

25 supplemental statement. That supplemental statement expands on, and adds detail concerning,

26 the initially conditional objections made by the Attorney General to the proposed allocation plan

27 of the Indirect Purchaser Plaintiffs, including the notice/claims process. It reiterates the request

28 for the notice/claims data, noting that if the Attorney General is not provided the data forthwith

2

1    along with a meaningful opportunity to analyze it and comment, she may argue that the final

2    approval hearing should be delayed. And it requests that the final date for the submission of

3    claims, presently set for December 7, 2015 in what the Office believes to be a ministerial

4    oversight, be moved to June 30, 2016. Moving the date would have the salutary effect of

5    providing an opportunity for, and encouraging, the submission of additional claims by natural

6    persons while ensuring the effective coordination of state and federal proceedings.

7         4.    In response to the request made in that statement for the production of notice and

8    claims data, Lead Counsel initiated discussions with the Office regarding the production of that

9    data and regarding the various issues and concerns raised in that initial statement. *See, e.g.,*

10   11/20/15 Indirect Purchaser Plaintiffs' Motion for Final Approval, Decl. of Mario Alioto, ¶ 47

11   (disclosing these discussions).

12        5.    In his November 20, 2015 motion for final approval, Lead Counsel made the

13   following statements: (1) "The CA AG's Statement of Interest contains a 'conditional objection'

14   to the notice program subject to her receiving more information and assurances that the interests

15   of California natural persons are being protected. See Dkt. No. 4118. IPP Counsel is working with

16   the CA AG to provide this information." (11/20/15 Indirect Purchaser Plaintiffs' Motion for Final

17   Approval at 24 n.26); (2) "IPPs are working with the CA AG to provide the requested

18   information" (*id.* at 26 n.35); and (3) "IPPs are working with the CA AG to resolve any issues"

19   (*id.* at 48:13). These statements did not indicate that Lead Counsel planned to object to the

20   production of that data.

21        6.    And, while the discussions with the representative of Lead Counsel are privileged,

22   at no point was the Attorney General informed that the data would not be produced until

23   December 3, 2015, after it appeared that these aforementioned discussions would not lead to an

24   agreement, when the Office was informed via e-mail that Lead Counsel would not produce that

25   data. The Attorney General was not informed as to why that data could not be produced.

26        7.    Because the Office had no reason to believe that any problem existed with the

27   production of the data, and was engaged in what we believed to be good faith negotiations with

28   the representative for Lead Counsel, the Office did not file any motion to compel production

                                                   3

1   between the filing of the original statement of interest and the filing of this supplemental

2   statement of interest.  Though the Office does not believe the filing of such a motion should be

3   necessary, we are prepared to do so, with a request for an order shortening time, if counsel for the

4   Indirect Purchaser Plaintiffs continues to take the position that they will not produce the data.

5        8.    Early in the discussions with the representative for Lead Counsel, the Office raised

6   the issue of moving the final date for the submission of claims.  Those discussions are privileged;

7   the Office can state, however, that we had no reason to believe an agreement could not be reached

8   until the aforementioned e-mail that we received on December 3, 2015 from the representative for

9   Lead Counsel.  That e-mail did not disclose the legal basis for that ultimate refusal to move the

10   date.

11        9.    Before the receipt of that December 3 e-mail, the Office has no reason to believe

12   outside of her discussions with the representative for Lead Counsel that the failure to move the

13   final date for the submission of claims has been anything other than a clerical error.  It has been

14   customary in my experience not only to set the final date for the submission of claims at least a

15   couple of months after the date for final approval but also to accept and reimburse claims filed

16   after that date.  Once the date for the hearing on final approval was moved to March 15, 2016, the

17   Office had no reason to believe that the final date for the submission of claims would not be

18   moved in accordance with this practice.

19        10.    The Attorney General is requesting that the date for the final submission of claims

20   be moved from December 7, 2015 to June 30, 2016.  The Office has no reason to believe that any

21   Settling Defendant in these federal proceedings would oppose moving that date.  The Attorney

22   General is requesting the date be moved for the reasons stated below in addition to those set out

23   in her supplemental statement of interest.

24        11.    The Office will be moving for preliminary approval of settlements with the

25   following Defendants: LG, Hitachi, Panasonic, Toshiba, and, we believes, Samsung on January

26   27, 2015. The Attorney General will, assuming preliminary approval is granted, need to send out

27   notice of the release of the *parens patriae* claims to allow California natural persons the

28   opportunity to object or opt-out.

4

12.     It is important for the upcoming *parens* notice effort that the Office be able to provide a link to the claims web site of the Indirect Purchaser Plaintiffs, that the Office be able to inform California natural persons that, if they wish to make direct claims to obtain reimbursement for their damages, they can file a claim via that web site, and that any claims so filed will be treated as valid.  The reasons are as follows.

13.     When faced with parallel litigation involving her law enforcement case in state court on behalf of natural persons and government entities, and a federal case filed by private class counsel on behalf of natural persons in California (among others), the Attorney General has sought as here to coordinate as closely as possible with private counsel in order to serve the public interest most efficiently.  That coordination can involve, among other things, avoiding duplication by letting counsel for such private plaintiffs take the lead in securing direct compensation (absent obstacles that may arise in federal court such as a refusal to certify a class or a wholly inadequate recovery) while the Attorney General ensures that the interests of natural persons are protected in that process.  The Attorney General accomplishes this goal by, among other measures, making suggestions on the notice and claims process to ensure natural persons are not at a disadvantage vis-à-vis corporate entities and by adding *cy pres* protections so that the vast mass of natural persons receive at least some indirect benefit from the settlements.

14.     Indeed, in both of the *DRAM* and *LCDs* cases, which are similar to this case, the Office played that role in being deeply involved in both cases.  As I was Chair of the multistate group and Liaison Counsel in *DRAM*, and worked closely with lead counsel for California in *LCDs*, I can comment on the applicability of the allocation plans in those cases, and the notice/claims process used in those plans, to the proposed allocation plans in this case—including the notice/claims process in this case.

15.     When the Attorney General entered into early settlements with two defendants, Philips and Chunghwa, and then filed motions for preliminary approval, I had discussions with counsel for the Indirect Purchaser Plaintiffs on the issue of the estoppel effects of a *parens* release on a federal class as early as January of 2013.  In the course of discussions concerning these settlements, and their effects on the parallel federal MDL proceeding of the Indirect Purchaser

5

1   Plaintiffs, I informed counsel for the Indirect Purchaser Plaintiffs that I would state in open court

2   that a *parens* release could not supplant or estop a federal class case where the class was certified

3   and covered California natural persons.  Rather the remedy would be an offset per statutory law.

4   Cal. Bus. & Prof. Code § 16760(a)(1)(A).  As set out in the supplemental statement of interest to

5   which this declaration pertains, I made such representations at the state court hearing on

6   preliminary approval, in briefing prior to final approval, and at the state court hearing on final

7   approval.

8           16.     Subsequent to the *Philips* settlement hearings, I participated in discussions with

9   Lead Counsel where the Office endeavored to restore close coordination of the state case with the

10  federal Indirect Purchaser Plaintiff case.  (We continued to coordinate closely our case with

11  counsel for the Direct Purchaser Plaintiffs and the Direct Action Plaintiffs.)

12          17.     To that end, the Office agreed to add specific language suggested by Lead Counsel

13  to her later-in-time settlements with defendants in her state proceeding if possible. That language,

14  as set out in three later-in-time settlements, Panasonic, Toshiba, and Samsung,[1]  states that the

15  release of *parens patriae* claims will not operate to displace or supplant the claims of the Indirect

16  Purchaser Plaintiffs.  And all of the later-in-time settlement agreements contain the understanding

17  of the Settling Defendants and the Attorney General that, while the Attorney General could

18  oppose a distribution/allocation plan proposed by the Indirect Purchaser Plaintiffs, she would not

19  oppose the underlying settlements in and of themselves between those defendants and the Indirect

20  Purchaser Plaintiffs.  Consequently, the language in these later-in-time settlement agreements,

21  when considered in their totality, reflects the Attorney General's traditional practice of working

22  with private counsel for the Indirect Purchaser Plaintiffs to aid them in recovering large sums of

23  monies that can be used for a direct distribution plan to natural persons and corporations while

24  weighing in on the proposed distribution/allocation plan, as in *DRAM* and *LCDs*, to ensure that

25  natural persons receive fair and equitable treatment in that plan.

26  _____

27  [1]The settlement with Samsung is still an oral settlement-in-principle awaiting Attorney
    General approval.  The parties have, however, begun to negotiate a written settlement agreement

28  in the meantime.

VARANINI DECL. ISO SUPPLEMENTAL STATEMENT OF INTEREST (Master File No. CV-07-5944-JST)

1        18.      In reliance on this understanding of this practice all of the parties, including Lead

2  Counsel, the Attorney General bargained for cash portions of her settlement that permit only a

3  small residue to be distributed *cy pres* for the indirect benefit of the California natural persons she

4  represents.   Accordingly, for the Attorney General to obtain the benefit of her reliance on the

5  request of Lead Counsel, and on the understanding of all of the parties, it is important that she

6  have the opportunity to direct California natural persons to the fund created by the settlements of

7  counsel for the Indirect Purchaser Plaintiffs for direct relief by filing claims that will be treated as

8  being valid.

9        19.      Should a *parens* notice be crafted that simply allows California natural persons the

10  opportunity to file claims against the federal settlement funds, the Attorney General will have

11  received the benefit of the bargain with counsel for the Indirect Purchaser Plaintiffs. If not,

12  California natural persons will face a confusing and highly uncertain notice and objection process

13  with unanswered questions and for at least some a lost opportunity to file a claim.

14        20.      It is thus much cleaner for the final claims submission date for all claimants to be

15  moved to June 30, 2016 so that the Attorney General may state in her *parens* notice that natural

16  persons wishing to recover monies for damages suffered can validly file a claim in the parallel

17  federal action and provide the appropriate links. The extension requested builds in at least 90

18  days for *parens* notice from the grant of preliminary approval (which is anticipated to be the day

19  of the hearing or shortly thereafter) as well as a reasonable amount of extra time to address

20  problems that may arise in the course of providing that notice. It is designed to last at least a few

21  months past the new hearing date for final approval in the federal matter, March 15, 2016, as is

22  customary in these cases.

23        21.      Exhibits A and B are true and accurate copies of the legislative history concerning

24  the Class Action Fairness Act, specifically the debates in the U.S. Senate over passage of that

25  Act. The courts can and do take judicial notice of the legislative history of statutes. *See, e.g.,*

26  *Gonzalez v. Marriott International, Inc*, 2015 WL 6821303, *3 (C.D. Cal. November 4, 2015)

27  (discussing Federal Rule of Evidence 201).

28        22.      Exhibit C is a true and accurate copy of a document I received from Dr. Shannon

1   Wheatman on December 8, 2015.  That document discusses the difference between notice for due

2   process/Rule 23 purposes and notice for the purpose of increasing claims, explaining that paying

3   for notice geared towards increasing claims can, in fact, increase claims.  It is thus germane to the

4   objections set out in the Supplemental Statement of Interest.

5          23.     I am well-acquainted with Dr. Wheatman and her experience on notice and claims

6   issue as we used her as our notice and claims expert in the *DRAM* case.  The e-mail address from

7   which I received this document is Kinsella Media rust_mail@rustconsulting.com and the cover e-

8   mail containing a link to this document states that it is from Dr. Wheatman.   When the link is

9   clicked, the following web address appears to pop up, http://marketing.rustconsulting.com

10  /acton/attachment/2165/2165:f-014e/0/s-0120-1512/-/l-sf-cl-701000000006cpaAAA-127a/l-sf-cl-

11  701000000006cpaAAA-127a:17e/?sid=BDWs16NT9, before the user of a computer is asked if

12  he or she wishes to download the document in question.  I have spoken and communicated with

13  Dr. Wheatman in the past (though not about the receipt of this document) and have no reason to

14  believe that this e-mail came from anyone other than her or someone in her company with her

15  authorization and under her name.  I have no reason to believe that the information disclosed

16  therein that lists cases in which extra costs were paid to stimulate claims as well as the results

17  obtained thereto is anything other than truthful.  I did not solicit this document or otherwise ask

18  for it to be generated, had no hand in its preparation, and did not otherwise know of its existence

19  until I received it on December 8, 2015.

20         24.     Rather, from the face of the document, and the circumstances of its mailing, it is a

21  general solicitation for more business with the timing of my receiving it being a fortuity.  I have

22  received previous solicitations from Dr. Wheatman, or her company, generically disclosing facts

23  concerning their previous cases.  This document could be considered to pertain to legislative

24  facts, as the facts therein are relevant to legal reasoning and the judicial decision-making process.

25  *See* Fed. R. Evid. 201(a) Advisory Committee Note.  Legislative facts may be judicially noticed

26  though they are not subject to the restrictions of Rule 201.  *See, e.g., United States v. Hernandez-*

27  *Fundora*, 58 F.3d 802, 812 (9th Cir. 1995).

28         25.     Exhibit D is a true and accurate copy of  Dr. Wheatman's testimony in her

8

1    declaration in the *DRAM* case as the notice/claims expert for that case.  The courts can and do

2    take judicial notice of such records.  *See, e.g., Marriott International*, 2015 WL 6821303 at *3.

3         26.     Exhibits E, F, and G are true and accurate copies of documents from the state court

4    record in *State of California et. al. v. Samsung SDI, Co., Ltd.,* Case No. 11-51584 (California

5    Superior Court, San Francisco).  These records can be judicially noticed as well.  *See, e.g.,*

6    *Marriott International*, 2015 WL 6821303 at *3.

7         I declare under penalty of perjury under the laws of the United States and of the State of

8    California that the foregoing is true and correct and that this declaration was executed on

9    December 9, 2015 in San Francisco, California.

10

11   Dated:  December 9, 2015                    Respectfully submitted,

12                                               KAMALA D. HARRIS
                                                 Attorney General of California
13

14
                                                 _/s/ Emilio E. Varanini_____
15                                               EMILIO VARANINI
                                                 Deputy Attorney General
16                                               *Attorneys for Plaintiffs*

17   SF2011203501

18

19

20

21

22

23

24

25

26

27

28

9

VARANINI DECL. ISO SUPPLEMENTAL STATEMENT OF INTEREST (Master File No. CV-07-5944-JST)

# ATTACHMENT 3

1
2
3
4
5
6

Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

7
8

*Lead Counsel for*
*Indirect Purchaser Plaintiffs*

9

10

11

12

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO THE CALIFORNIA ATTORNEY GENERAL'S STATEMENTS OF INTEREST** |
| All Indirect Purchaser Actions | Hearing Date: January 5, 2016 |
| | Time: 10:00 am |
| | Court: JAMS |
| | Special Master: Martin Quinn, JAMS |
| | Judge:  Hon. Jon S. Tigar |

1    Class Counsel for the Indirect Purchaser Plaintiffs ("IPP Counsel" or "IPPs") submit this

2    memorandum in response to the California Attorney General ("AG")'s October 8, 2015

3    Statement of Interest ( "AG Statement," Dkt. No. 4118) and December 9, 2015 Supplemental

4    Statement of Interest ("AG Supp. Statement"), lodged with the Special Master.

5    **I.    Introduction**

6          State Attorneys General often provide an invaluable function as it relates to the review

7    and critique of proposed class action settlements.  And the legislative history of the Class Action

8    Fairness Act ("CAFA") supports the proposition that attorneys general may object when

9    inadequate, collusive settlements are reached or where class lawyers do not meet their fiduciary

10   obligations.

11         But none of these issues is presented here.  No one reasonably questions whether IPP

12   Counsel zealously and vigorously fought for the class over the thoroughly contested, eight-year

13   litigation history of this case.  Indeed, the comments submitted by the AG reinforce a number of

14   fundamental points *supporting* approval of the settlements.

15         First, far from being a collusive settlement entered at the expense of the class, the

16   aggregate value of $576,750,000, is clearly fair, reasonable and adequate. The AG does not

17   contend to the contrary. (*See*, AG Statement at 2 ("the Attorney General does not object to the

18   reasonableness of the settlements in the aggregate. . . .").)

19         Second, IPPs presented a notice plan when seeking preliminary approval of these

20   settlements.  That notice plan was approved by the Court and has now been implemented.  IPPs

21   submitted at the preliminary approval stage, and reiterate now, that the notice plan met the Fed.

22   R. Civ. P 23(c)(2)(B) requirement that the notice be the "best notice that is practicable under the

23   circumstances . . . ." The AG does not appear to dispute this point. (*See*, AG Supp. Statement at

24   10, n.12 (the AG "is not objecting on the ground that the notice itself is insufficient for due

25   process or for Federal Rule of Civil Procedure Rule 23 opt-out/objection purposes. . . .").)

26         Third, IPPs have submitted a fee application to the Court seeking a 33% fee award for the

27   exemplary settlement results obtained on behalf of the class.  The AG does not oppose this fee

28   award. (AG Supp. Statement at 13 (the AG "is not objecting to the size of the requested

1   percentage of the common fund for fees . . .").)

2       So if the aggregate settlement figure of $576 million was (clearly) adequate, notice to the

3   class met the requirements of Rule 23, and the contingent fee sought by Class Counsel is not

4   objectionable, what is the AG's objection?  In sifting through the AG's statements, two themes

5   emerge: (1) the allocation plan is purportedly unfair to natural persons because the notice plan

6   has not given them a "fair and equitable opportunity to claim" vis-à-vis business claimants; and

7   (2) the claim submission deadline of December 7, 2015 should be extended to facilitate

8   coordination with the AG's notice of her separate *parens patriae* settlement in a state court case.

9       To bolster these unsupported arguments, the AG seeks production of detailed claims data

10  to create a new evidentiary record.  That record would have been unavailable when the original

11  notice plan was submitted and approved for implementation by the Court at the preliminary

12  approval hearing. This type of retroactive litigation regarding the adequacy of notice would set a

13  dangerous precedent.  It would reopen litigation of notice campaigns after they have been

14  implemented, and enable hindsight critiques of notice implementation by objectors armed with

15  claims data that is unavailable when notice plans are being devised and implemented.  IPPs

16  respectfully submit that, once a Court determines that a notice plan meets the due process and

17  procedural requirements of Rule 23 (as conceded here by the AG), inquiries regarding notice

18  adequacy are at an end.  The AG has cited no authority to the contrary.

19      As set forth below, although these objections may be well-intentioned, they are not well-

20  founded in the procedural requirements of Rule 23 or related class action settlement

21  jurisprudence, and they should be rejected.

22  **II.**   **California's Recitations of CAFA and *Parens Patriae* Authority Have Nothing to do**
23          **With the Criteria for Evaluating Whether the Proposed Settlements Are Fair,**
            **Reasonable and Adequate.**

24      "Although Rule 23(e) is silent respecting the standard by which a proposed settlement is

25  to be evaluated, the universally applied standard is whether the settlement is fundamentally fair,

26  adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.

27  1982).

28

The AG discusses—at length—the legislative history of the CAFA, and her *parens patriae* authority. Neither modifies the "fair, reasonable and adequate" standard under which the Special Master, and ultimately the Court, are to determine whether to approve the proposed settlements. The AG recognizes, albeit in a footnote, that CAFA does not expand her authorities. (*See*, 28 U.S.C.A. §1715(f); AG Supp. Statement at 5, n.7.) And the reference to federal *parens patriae* authority conferred pursuant to 15 U.S.C. §15c(a)(1) for Sherman Act violations is confusing given that no one, including the AG, contends that federal law confers a *parens patriae* cause of action for damages for indirect purchasers.

Ultimately, the Special Master and the Court should evaluate the proposed settlements on the basis of whether they are fair, reasonable and adequate,[1] and the AG's lengthy recitation of CAFA and *parens* authority does nothing to modify that standard.

## III.   The Proposed Plan of Distribution is Fair, Reasonable and Adequate.

"A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, MDL No. 02-1486, 2013 U.S. Dist. LEXIS 188116, at *330-31 (N.D. Cal. Jan. 8, 2013) (citations omitted). The Plan of Distribution in this case proposes a threshold minimum recovery for any qualified claimant from one of the Indirect Purchaser States Classes. For all claimants damaged above this minimum threshold, all remaining net settlement funds will be distributed on a *pro rata* basis based upon the claimants' total purchases of CRT Products.[2] The AG does not object to the proposed *pro rata* method of allocation, which is the preferred method of distributing settlement proceeds.[3]

---

[1] The "fair, reasonable and adequate" standard is evaluated at length in IPPs' Memorandum in Support of Final Approval, submitted November 20, 2015, at 14-22.

[2] *See* IPPs' Motion for Preliminary Approval of Class Action Settlements with Philips, Panasonic, Hitachi, Toshiba and Samsung SDI Defendants (Dkt. No. 3861), at 26-29; IPPs' Memorandum in Support of Final Approval, submitted November 20, 2015, at 22-23.

[3] *See, e.g.*, *DRAM*, 2013 U.S. Dist. Lexis 188116, at 349 ("the proposed plan of distribution here is grounded in the educated prediction that all or virtually all of the settlement proceeds will be paid out *pro rata* to class members based upon the extent of damages suffered, which all counsel recognize as the preferred option in damage claim class action settlements.").

However, without any evidentiary basis for doing so, the AG posits a question "as to whether the notice plan affords an equal opportunity for natural persons to claim along with corporations." (AG Supp. Statement, at 9.) In support of this question, the AG notes that in other settlements (notably *DRAM* and *LCD*) the notice campaign included television advertising; whereas in this case, notice was effectuated primarily via print media, internet banner advertising, and direct mail/email notification.[4] *Id.* As television viewership becomes increasingly fragmented over hundreds of alternative television stations, with many viewers "cutting their cords" to cable altogether and downloading their television content commercial free via the internet, the choice to use alternative forms of media to reach indirect purchasers of CRT Products is an entirely defensible decision.

The AG argues that the use of these alternative forms of notice somehow placed the individual claimants at unfair disadvantage vis-à-vis corporate claimants. But the AG provides no evidence that any particular medium used to effectuate notice (print, television, radio, email, internet banner ad, etc.) disproportionately favors one type of claimant (corporation vs. natural person) over the other.

As set forth in the Federal Judicial Center's guidance documents on the subject, a notice should have an effective "reach" to its target audience of 70-95%. *See* Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges.* 3d ed. p. 27 (2010), http://www.fjc.gov/public/pdf.nsf/lookup/ClassGd3.pdf/$file/ClassGd3.pdf; *see also Swift v. Direct Buy, Inc.,* No. 2:11-cv-401-TLS, 2013 WL 5770633, at *3 (N.D. Ind. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class."). The only record evidence submitted demonstrates that the net reach of the notice campaign implemented here was 83%, well within

---

[4] Although the AG places great emphasis on the "coordination" of the AG's state court case with this action, she fails to explain why the AG's suggestions were not provided at the preliminary approval stage so they could be considered *before* notice was implemented. The AG received notice of the entire notice plan in late May 2015, when it was submitted as part of the motion for preliminary approval of the settlements, but she waited until after notice was implemented to raise the substantive critiques presented in the AG's Statements of Interest. This is neither coordinated, nor efficient.

the Federal Judicial Center's target range.  (*See* Declaration of Joseph M. Fisher Re: Cooper/Scarpulla Objection, ¶ 3, submitted to the Special Master on December 23, 2015.)  The *DRAM* notice campaign, which the AG suggests should have been emulated, had a virtually identical reach of 84.2%.[5]  The AG fails to explain how the 1.2% differential between the reach statistics obtained in the *CRT* notice plan, as compared to the *DRAM* notice plan, somehow deprived natural persons of an "equal opportunity" to claim vis-à-vis corporations.  Both notice campaigns meet the Federal Judicial Center's target range.  Thus, the pending settlements should be approved.

Finally, the AG suggests that if a distribution to claimants exceeds their single damages, any amount in excess of single damages should be distributed *cy pres* instead of directly to claimants. Although claims administration work is not yet complete, it appears based upon the claims that have been processed to date that claimants in this case will receive a distribution much closer to single than treble damages, potentially mooting the AG's argument.  But even if the distribution were theoretically closer to trebled damages, the AG recognizes that treble-damage based distributions were allowed in the *LCD* claims administration process. (*See* AG Supp. Statement, at 14.)

## IV.  The Claims Submission Deadline Should Not Be Extended Simply to Enable the AG to Provide Supplemental Notice in Her Unrelated *Parens* Settlements.

The AG also requests that the claims submission deadline be extended so that, when she implements notice of her settlements in her state court action, she may inform California natural persons that they may submit a claim for damages in *this* case. To be clear, none of the money recovered under the AG's settlements will be paid to California consumers.  However, she wants to give notice to California consumers that they can nevertheless obtain money by making a claim against the settlement fund in this case.  Arguing that the December 7, 2015 deadline was a "clerical error" (AG Supp. Statement, at 16), she seeks extension of the deadline to June 30, 2016 for this purpose (even though preliminary approval of her separate state court settlements has not yet been obtained).

---

[5] *See* Declaration of Shannon R. Wheatman, ¶18, attached as Exhibit D to the Declaration of Emilio Varanini in Support of Supplemental Statement of Interest.

First, there is no basis to conclude that the establishment of the December 7, 2015 claims submission deadline was a "clerical error," as suggested by the AG.  The December 7 deadline, 120 days after publication of notice, was specifically ordered by the Court on July 9, 2015. *See* Dkt. No. 3906, ¶ 19 ("The Notices shall inform putative members of the Settlement Classes that the deadline for the submission of Claim Forms is 120 days from the Notice Publication Date."). In accordance with the Court's Order, notices were mailed, emailed, posted in internet banner advertising and published in paid print advertising across the country within 30 days of the Court's Order.[6]

Moreover, although the AG points to instances where claims submission deadlines extend beyond the final approval hearing date, many class action settlements present claim submission deadlines that *precede, or are coterminous with,* final approval.[7]

But perhaps the single biggest reason to adhere to the existing claims submission deadline is that an extension of that deadline could result in a skewing of additional claims in favor of corporate claimants, to the detriment of existing timely claims submitted by both natural person and corporate claimants.  If the claims submission deadline is extended, with no corresponding notice of that extension provided to potential claimants (beyond the AG's notice to California natural persons), it stands to reason that consumers will be largely unaware that the deadline has been extended, resulting in only minimal additional consumer claimants.

That will not be the case for large corporate claimants.  There is a robust claims administration "aggregator" market that frequently targets such large corporate claimants and

---

[6] *See* Declaration of Joseph M. Fisher Reporting on Class Notice, submitted November 20, 2015, ¶¶ 8-16.

[7] District Courts for the Northern District of California have readily approved settlement approval motions proposing claim deadlines that preceded the final approval hearing. *See, e.g., In re Abbott Labs. Norvir Anti-Trust Litig.,* Docket No. 04-CV-1511-CW (August 6, 2009 settlement approval hearing; July 24, 2009 claim deadline); *In re VeriFone Holdings, Inc. Secs. Litig.,* Master File No. 3:07-cv-06140-EMC (February 6, 2014 settlement approval hearing; January 29, 2014 claim deadline) ($95,000,000 settlement); *Rosenbaum Capital, LLC, v. McNulty,* No. 07-CV-0392-SC, (Conti J.) (June 26, 2009 settlement approval hearing; April 25, 2009 claim deadline); *In re Clarent Corp. Secs. Litig.,* No. C 01-03361 CRB (JCS) (March 25, 2005 first settlement approval hearing; March 4, 2005 claim deadline / July 14, 2005 second settlement approval hearing; July 6, 2005 claim deadline).

1    offers to submit claims on their behalf in exchange for a fee. To the extent that such aggregators

2    stimulate the submission of substantial additional large corporate claims, with no similar

3    stimulation of additional consumer claims, the AG's requested extension may create precisely

4    the consequence of which she currently complains; large corporate claims will be spurred to the

5    detriment of consumer claimants, and will unfairly dominate the claims process.

6         The AG may respond that the claims submission deadline could be extended only for

7    natural persons, and not businesses. But such a modification would open up the settlement

8    administration process to objectors, who could claim that such a one-sided extension is unfair to

9    corporate claimants. Or, the AG could suggest that only California claimants should receive an

10   extension, but a non-California objector could then challenge the one-sided extension as being

11   skewed against claims submission in their respective states. ("Why do California claimants get

12   an extension but not claimants from my state?") Indeed, the AG's current proposal—to extend

13   the claims deadline but only give notice to California natural persons—also exposes IPPs to

14   objections that Californians are being favored over other states. While the AG's duty is only to

15   California natural persons, IPP Counsel have a fiduciary duty to protect the interests of *all* class

16   members, and cannot be seen to favor Californians over class members in other states.

17        "In designing a plan of distribution for a settlement such as this involving a large number

18   of different products and millions of class members, a delicate balance must be achieved

19   between precision and administrative feasibility." *DRAM*, 2013 U.S. Dist. LEXIS 188116, at

20   *330. The notice plan submitted at the preliminary approval stage, and approved and

21   implemented by the Court, was delicately balanced to facilitate the submission of *both* consumer

22   and business claimants in *all* states by the December 7, 2015 deadline. Modifying that plan, or

23   the claims administration deadline that was communicated to *both* consumer and business

24   claimants in conjunction with it—in accordance with the AG's request— may skew the claims

25   distribution process in unintended ways; expose the settlement administration process to *new*

26   class action objectors (whether their objections are legitimate or not); and may delay settlement

27   approval and implementation.

28

1    For these reasons, although IPP Counsel were originally hopeful that they could

2  accommodate the AG's requests, it now appears that such accommodation would be prejudicial

3  to the prompt approval of the pending settlements.

4  **V.      Conclusion**

5    The notice process submitted to the Court at the preliminary approval stage of these

6  proceedings was approved by the Court.  As implemented, it: (1) provided the "best notice

7  practicable," in conformity with Rule 23 and due process considerations; (2) exceeded the

8  minimum "reach" percentages specified by the Federal Judicial Center; and (3) enabled *both*

9  consumer *and* business claimants from *all* states to submit requests for compensation from the

10  net settlement fund by December 7, 2015.

11    The AG has not submitted an evidentiary basis for her challenge of the effectiveness of

12  the notice campaign or the claims administration process.  The only other reason articulated by

13  the AG for delaying the notice and claims administration process is to enable her to provide

14  additional notice to California natural persons in order to generate more claims, as part of a

15  separate state *parens* settlement that has yet to receive even preliminary approval from the state

16  court.  This is not a sound basis to delay a 22-state claims administration process, and potentially

17  open that administration process up to additional objections and litigation.

18    The IPPs have vigorously litigated this case and obtained an exemplary result for the

19  class.  The settlements should be approved, and no relief that could threaten or delay that

20  approval should be granted to the AG.

21  Dated:  December 29, 2015

22                                    Respectfully submitted,

23                                    */s/ Mario N. Alioto*

24                                    Mario N. Alioto (56433)
                                      malioto@tatp.com
25                                    Joseph M. Patane (72202)
                                      jpatane@tatp.com
26                                    Lauren C. Capurro (241151)
                                      laurenrussell@tatp.com
27                                    TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
                                      2280 Union Street
28                                    San Francisco, CA 94123

1

Telephone: 415-563-7200
Facsimile: 415-346-0679

2

***Lead Counsel for Indirect Purchaser Plaintiffs***

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT 4

1  KAMALA D. HARRIS
   Attorney General of California
2  MARK BRECKLER
   Chief Assistant Attorney General
3  KATHLEEN E. FOOTE  (State Bar No. 65819)
   Senior Assistant Attorney General
4  ESTHER LA  (State Bar No. 160706)
   PAMELA PHAM  (State Bar No. 235493)
5  EMILIO VARANINI
   State Bar No. 163952
6  Deputy Attorneys General
    455 Golden Gate Avenue, Suite 11000
7  San Francisco, CA  94102-7004
   Telephone:  (415) 703-5908
8  Fax:  (415) 703-5480
   E-mail:  Emilio.Varanini@doj.ca.gov
9
   *Attorneys for the State of California*
10

11              IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

15

| | |
|---|---|
| 16 **IN RE: CATHODE RAY TUBE (CRT)** **ANTITRUST LITIGATION,** | Master File No. 3:07-cv-05944-JST |
| 17 | MDL No. 1917 |
| 18 | **REPLY IN SUPPORT OF** **SUPPLEMENTAL STATEMENT OF** **INTEREST OF THE STATE OF** **CALIFORNIA** |
| 19 | |
| 20 | Hearing Date:  January 5, 2016 |
| 21 **This Document Relates To:** **ALL ACTIONS** | Time:          10:00 a.m. Courtroom:     JAMS Special Master: Martin Quinn, JAMS |
| 22 | |
| 23 | Judge:          Honorable Jon S. Tigar |

24

25

26

27

28

# INTRODUCTION

Ultimately, the Indirect Purchaser Plaintiffs ("IPPs") have failed to show why the Special Master should not recommend the extension of the claims deadline. In the first instance, the Special Master can simply recommend that the claims deadline be extended as to California natural persons because only those claimants are *additionally* covered by the Attorney General's *parens patriae* claim in state court. As previously discussed in the Attorney General's Supplemental Statement of Interest (AG Suppl. Stmt. at 17-20), the extension of time would serve the important interests of coordinating the settlement of the Attorney General's case with the IPPs' settlement to the benefit of California citizens.

Alternatively, the Special Master can recommend that the claims deadline be extended as to all claimants. Though the IPPs speculate, without providing any evidentiary support, that such an extension would inure to the benefit of corporations at the expense of natural persons outside of California, the Attorney General respectfully sets out two measures that the Special Master may adopt to militate against such an outcome. First, the Special Master can recommend that the IPPs provide the supplemental notice called for by the Attorney General in her Supplemental Statement of Interest. AG Suppl. Stmt. at 9-11 & n.12. Second, the Special Master can recommend that the Office of the California Attorney General contact the state attorneys general in those states covered by the IPPs' state-specific damages classes to encourage those state attorneys general to notify their citizens if they determine it to be in the public interest.

Significantly, the IPPs' response to the Supplemental Statement of Interest does not argue that any of the evidence submitted by the Attorney General on the issue of extending the claims date is inadmissible nor does it seek to controvert that evidence. The Special Master may therefore credit that evidence. *See* Fed. R. Evid. 103(a)(1)(A); *see also, e.g., Fisher Studio v. Loew's Inc.,* 232 F.2d 199, 203 (2d Cir. 1956).

Moreover, their response does not argue that the Special Master may not, as a matter of law, recommend an extension of the claims date. The Special Master may therefore regard the

1

1   IPPs as having admitted this point.   *See* Fed. R. Civ. P. 46; *see also, e.g.,* Arthur Miller, 9B Fed.

2   Prac. & Proc. Civ., Trials § 2472 (3d ed. 2015).[1]

3   　　　Because the Special Master allowed the Attorney General the opportunity to file a reply—

4   though only as to the extension of the claims deadline[2]—the Attorney General submits this reply

5   to respond more fully to the very narrow arguments made by the IPPs that (1) to extend the

6   claims deadline as to *all* claimants could be unfair to natural persons because corporations would

7   be better placed to take advantage of the extension vis-à-vis natural persons (IPP Resp. at 6-7);

8   and (2) to extend the claims deadline as to California natural persons only will raise the question

9   as to why *only* California natural persons should be given an extension of the claims date (IPP

10   Resp. at 7:9-12).

11   　　　　　　　　　　　　　　　**ARGUMENT**

12   **I.**   **THE SPECIAL MASTER CAN RECOMMEND THE EXTENSION OF THE CLAIMS DATE
         AS TO CALIFORNIA NATURAL PERSONS BECAUSE THE ATTORNEY GENERAL'S**
13   　　　**PARENS PATRIAE CLAIM UNIQUELY DISTINGUISHES THEM FROM ALL OTHER
         CLAIMANTS**
14

15   　　　Among all of the claimants in the states covered by a state-specific damages class in the

16   IPPs' proposed settlements, California natural persons can be distinguished in that they alone are

17   also represented by their state attorney general acting in a *parens patriae* capacity. *See* Suppl.

18   Declaration of Emilio E Varanini at ¶¶ 2-3 (hereinafter "Suppl. Varanini Decl."); *see also* Cal.

19   Bus. & Prof. Code § 16760(a)(1).  Based on this fact, the Special Master can recommend at the

20   very least that the claims deadline be extended as to California natural persons.

21   　　　Generally speaking, courts often accept filed late claims as to some claimants but not

22   others, the practical outcome of an extension of the claims deadline as to those claimants, after

23   _____

24   　　　[1] Lead Counsel for IPPs does point in passing to cases in which the claims deadline dates
     may have pre-dated the final approval hearing. *See* IPP Response at 6 n.7.  However, the IPPs do
25   not supply any details on how these cases may be more relevant than the *DRAM* and *LCDs* cases
     cited by the Attorney General. *Compare* IPP Response at 6 & n.7 *with, e.g.,* AG Suppl. Stmt. at
26   17.  The extremely cursory citation to these cases should not detain the Special Master long in
     crafting his recommendations on this issue. *See Independent Towers of Washington v.
27   Washington,* 350 F.3d 925, 929 (9th Cir. 2003).
     　　　[2] The December 17, 2015 Order of the Special Master permitted the IPPs to file a response
28   on December 29 and the Attorney General to file a reply, as to the extension issue, by January 4.

2

1    assessing the equities involved.  *See, e.g. In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127-28

2    (9th Cir. 1977) (discussing cases and Federal Rules of Civil Procedure 6(b)(2), 23, & 60); *see*

3    *also, e.g., In re Orthopedic Bone Screw Prods. Liability Litig.*, 246 F.3d 315, 316-17 (3d Cir.

4    2001); *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 195-96 (3d Cir. 2000).  As long as

5    similarly situated claimants are not being treated inconsistently, to allow just some late claims to

6    be accepted does not constitute an abuse of discretion.  *Gypsum*, 565 F.2d at 1128.  In fact,

7    differing facts underlying differing claims can warrant even a different payout on claims—though

8    an extension of the claims date as to some claims is not a different payout as such as to those

9    claims.  *See, e.g., In re Insurance Brokerage Antitrust Litig.*, 579 F.3d 241, 270-71 (3d Cir. 2009)

10   (payout on claims can vary with the type of insurance policy purchased).

11        Allowing the submission of claims from California natural persons pursuant to an extension

12   of the claims deadline for them alone does not constitute inconsistent treatment of similarly

13   situated claims.  Rather, it recognizes that the claims of California natural persons require a

14   specific accommodation to harmonize parallel federal and state settlement and notification

15   processes.  *See* AG Suppl. Stmt. at 18-20.[3]

16   II.   IN THE ALTERNATIVE, THE EXTENSION OF THE CLAIMS DATE AS TO ALL
          CLAIMANTS CAN BE ACCOMPLISHED IN A MANNER THAT DOES NOT UNDULY
17        FAVOR CORPORATIONS EVEN ASSUMING LEAD COUNSEL'S UNSUBSTANTIATED
          ASSERTIONS WERE GIVEN CREDENCE
18

19        The Special Master can, however, equally decide simply to recommend that the claims

20   deadline be extended as to all claimants.  Though Lead Counsel for the IPPs fears that such a

21   measure will cause claims aggregators to rush in to file claims on behalf of corporations at the

22   expense of natural persons outside of California—IPP Resp. at 6-7, that fear is an unsupported

23        [3] In the end, a constricted view of Federal Rule of Civil Procedure 23 should not be
     employed to limit or abridge the state substantive rights of California natural persons. 28 U.S.C.
24   § 2072; *see, e.g., Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417
     (2010) (Stevens, J., concurring). The ability of the Attorney General to pursue *parens* claims on
25   behalf of California natural persons defines the scope of those natural persons' substantive rights
     as it makes it easier for them to obtain compensation. *See Shady Grove*, 559 U.S. at 420-21
26   (Stevens, J., concurring). Accordingly, to extend the claims date would be to recognize, and then
     harmonize with these proceedings, the fact that the California Legislature has made a deliberate
27   choice to give California natural persons multiple vehicles to obtain reimbursement for their
     claims of overcharges. *See id.* at 420.

28
                                                3

1   one.  Lead Counsel does not offer any evidence either to explain either how he knows of

2   additional eligible corporations that missed the original deadline or how he knows that claims

3   aggregators will rush in *only* with claims for corporations.  It has been the experience of the

4   undersigned, for example, that claims aggregators can reach out to natural persons as well in these

5   large, nationwide price-fixing settlements.  Suppl. Varanini Decl. at ¶¶ 1, 4.  Thus, at the onset,

6   the Special Master can reject Lead Counsel's claim here on the ground that it is unsupported by

7   the evidence.  *Cf., e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 324-26 (1986) (nonmoving party

8   facing summary judgment must show through affidavits or other evidence that there is a genuine

9   triable issue of material fact).

10      Moreover, the Special Master could recommend two ancillary measures be taken that

11   would militate against such an alleged disproportionate effect.  First, as set out in the Attorney

12   General's supplemental statement, the IPPs could balance the ledger by engaging in supplemental

13   notice of the type routinely done in similar nationwide price-fixing cases in order to increase

14   claims from natural persons in the state-specific damages class.  *See* AG Suppl. Stmt. at 9-11 &

15   n.12.  The IPPs disclaimed the need for such customary notice because of cost—though they did

16   not provide any specifics.  *See id.* at 10.  In their response, the IPPs have doubled-down on that

17   refusal to provide specifics.  *Compare* IPP Resp. at 4-5 *with* AG Suppl. Stmt. at 11, 13-14.  The

18   Special Master can treat the refusal to provide specifics as cutting against the credibility of Lead

19   Counsel on the issue of costs in then finding that the IPPs themselves can mitigate any presumed

20   prejudice from an extension by conducting such a supplemental notice campaign.  *Cf. Biao Yang*

21   *v. Gonzales,* 496 F.3d 268, 273 (2d Cir. 2007) (*per curiam*) (an applicant's failure to corroborate

22   her testimony may bear on credibility).

23      Second, the Office of the Attorney General could aid the IPPs in trying to ensure natural

24   persons in other states received notice of the extension of the claims date through the following

25   expedient.  The Office could contact the offices of her sister state attorneys general in those states

26   and encourage them to provide press letting their citizens know of the extended opportunity to

27   make claims.  *See* Suppl. Varanini Decl. at ¶¶ 1-2, 5-6.  It has been the experience of the

28   undersigned that press releases from state attorneys general in these price-fixing cases can

4

1   generate favorable local press coverage that can in turn raise the claims rate from their local

2   residents. *Id.* at ¶6. Though a state attorney general cannot be required to issue such press as

3   states are sovereign entities, *see U.S. Term Limits, Inc. v. Thornton,* 514 U.S. 779, 838-40 (1995)

4   (Kennedy, J., concurring), it still follows that these state attorneys general are best placed to

5   decide in the public interest as chief law enforcement officers of their states, *see, e.g.,* N.Y.

6   Executive Law § 63, whether their citizens need to be notified of an extended opportunity to

7   claim. *See* Suppl. Varanini Decl. at ¶¶ 5-7.  In turn, deference may be given to their decisions in

8   that regard. *See Heckler v. Chaney,* 470 U.S. 821, 831-33 (1985) (a decision of an executive

9   agency, granted discretion, to refuse to undertake an enforcement action or institute proceedings

10  is generally unsuitable for judicial review); *see also* Suppl. Varanini Decl. at ¶ 7.

11  **CONCLUSION**

12      Based on the foregoing, the Attorney General respectfully renews her request that the

13  Special Master recommend moving the final date for submitting claims, either for California

14  natural persons only or for all claimants, to June 30, 2016.

15  Dated:  January 4, 2016                    Respectfully Submitted,

16                                             KAMALA D. HARRIS
                                               Attorney General of California

17

18

19                                             */s/ Emilio E. Varanini*
                                               EMILIO VARANINI
20                                             Deputy Attorney General
                                               *Attorneys for Plaintiffs*
21                                             *General Fund - Legal/Case Work*

22  SF2011203501
    41443225.doc
23

24

25

26

27

28
                                            5

# ATTACHMENT 5

1   KAMALA D. HARRIS
    Attorney General of California
2   MARK BRECKLER
    Chief Assistant Attorney General
3   KATHLEEN FOOTE
    Senior Assistant Attorney General
4   EMILIO VARANINI
    Deputy Attorney General
5   State Bar No. 163952
      455 Golden Gate Avenue, Suite 11000
6     San Francisco, CA 94102-7004
      Telephone: (415) 703-5908
7     Fax: (415) 703-5480
      E-mail: Emilio.Varanini@doj.ca.gov
8
    *Attorneys for the State of California, et al.*
9

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13

14

15   **IN RE: CATHODE RAY TUBE (CRT)**     Master File No. 3:07-cv-05944-JST
     **ANTITRUST LITIGATION,**
16                                          MDL No. 1917

17                                          **SUPPLEMENTAL DECLARATION OF**
                                            **EMILIO E. VARANINI IN SUPPORT OF**
18                                          **REPLY IN SUPPORT OF**
                                            **SUPPLEMENTAL STATEMENT OF**
19                                          **INTEREST**

20   **This Document Relates To:**
     **ALL ACTIONS**
21

22

23

24

25

26

27

28

1         I, EMILIO E. VARANINI, declare as follows:

2         1.    I am a Deputy Attorney General with the California Attorney General's Office

3    ("Office") and am lead counsel for the California Attorney General in the parallel state court case

4    of *State of California et. al. v. Samsung SDI, Co., Ltd.*, Case No. 11-51584 (California Superior

5    Court, San Francisco). This case was closely coordinated with this Court's MDL No. 1917 for

6    purposes of fact and expert discovery as well as mediation and settlement, e.g., the same mediator

7    was used in the state court case as in the federal court case to help resolve both matters (albeit

8    separately). I have extensive experience in the Office's participating in, as well as leading, large

9    nationwide price-fixing cases in litigation, settlement, and distribution involving consumers and

10   government entities. Several of those cases have involved joint settlements with other states and

11   with private plaintiffs such that I have become familiar with claims and distribution issues such as

12   the effect of the issuance of press releases by state attorneys general as well as the acceptance of

13   claims filed by claims aggregators on behalf of individuals and corporations. I am admitted to

14   this Court and could, if called as a witness, testify competently to the matters set forth herein. I

15   make this declaration under penalty of perjury under the laws of the United States and the State of

16   California.

17        2.    Among my responsibilities as Lead Counsel has been coordinating the state court

18   case with the federal MDL proceedings. Those responsibilities require me to track and address

19   actual and potential developments that may impact the federal MDL such as the filing of a state or

20   federal case by a state attorney general involving the same or similar allegations as those present

21   in the Office's state court case. Consonant with these responsibilities, I worked closely, for

22   example, to coordinate our state court case with the State of Florida's own federal case, prior to

23   the State of Florida's dismissal of that case, which had made allegations similar to those in our

24   state court case. Given my extensive interaction with the staff of other state attorneys general

25   through such vehicles as the National Association of Attorneys General's Antitrust Task Force, I

26   would expect to learn of, and then reach out to, the office of a state attorney general that had filed

27   allegations in a state or federal court similar to those filed in our state court case.

28

1

3.     Of all of the claimants in the states covered by a state-specific damages class in the IPPs' proposed settlements, California natural persons can be distinguished in that they alone are also represented by their state attorney general acting in a *parens patriae* capacity.  In other words, insofar as I am aware, no other group of claimants, be they natural persons or corporations, in a state-specific damages class covered by the Indirect Purchaser Plaintiffs' settlements is also covered by a *parens* lawsuit, or any other representative lawsuit, filed by a state attorney general.  Moreover, the California Attorney General does not represent California corporations when acting in her *parens* capacity and is not representing California corporations in a *parens* or representative capacity in her parallel state court case.

4.     Based on my background, I am also familiar with the issue of claims aggregators soliciting and filing claims on behalf of eligible class members.  Claims aggregators have solicited both individuals and corporations to file claims on their behalf.  When those individuals and corporations have been eligible class members, the claims by claims aggregators on behalf of those individuals and corporations have been accepted.  However, there have been instances in which claims were filed on behalf of corporations that were not eligible class members, in which instances those claims have not been accepted.

5.     Other state attorneys general, like the California Attorney General, are typically the chief law enforcement officer for their states.  They, like the California Attorney General, exercise their discretion in the public interest.

6.     Because of the stature that a state attorney general may enjoy in a state, when the office of a state attorney general issues a press release informing the citizens in a state of a price-fixing settlement and encouraging them to file claims, such a press release can trigger follow-on local press that can widely disseminate that press release within a state.  That press release can equally generate interest on the Internet itself through social media.  As a result, a state attorney general's press release, or his or her follow-on interaction with the press, can generate the filing of claims and/or an increase in the claims rate.  And, in fact, I have seen one case in which an increase in the filing of claims did, in fact, occur following supplemental press by state attorneys general.

2

1    7.    Nonetheless, a state attorney general may choose for a wide variety of reasons not to

2    wish to issue a press release even in a case in which he or she is a settling party.  In cases in

3    which I have been involved, the decision not to issue a press release has been honored as being

4    entirely within the discretion of that state attorney general even if that decision not to issue such a

5    release might conceivably be viewed as hindering those citizens from learning about the case, and

6    filing claims.

7         I declare under penalty of perjury under the laws of the United States and of the State of

8    California that the foregoing is true and correct and that this declaration was executed on January

9    4, 2016 in San Francisco, California.

10   Dated:  January 4, 2016                              Respectfully submitted,

11                                                        KAMALA D. HARRIS
                                                          Attorney General of California
12

13                                                        /s/ Emilio E. Varanini

14                                                        EMILIO VARANINI
                                                          Deputy Attorney General
15                                                        Attorneys for Plaintiffs

16   SF2011203501
     41443217.doc
17

18

19

20

21

22

23

24

25

26

27

28
                                                 3