UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917 <br> Case No. C-07-5944 JST |
| This Order Relates To: <br><br> ALL DIRECT ACTION PLAINTIFFS | **ORDER REGARDING ORAL ARGUMENT ON MOTIONS FOR SUMMARY JUDGMENT RELATING TO THE CONTROL EXCEPTION** |

On December 16, 2015, the Court issued an Order Regarding Scheduling of Oral Arguments on Motions for Summary Judgment, ECF No. 4253, scheduling oral argument on January 13, 2016 for the five motions relating to the control exception, ECF Nos. 2983, 3014, 3026, 3053, 3102. Oral argument will be structured as follows:

For each of the following numbered question sets 1-5, the Court allocates eight (8) minutes per side. Each side therefore will be permitted eight (8) minutes for question set 1, another eight (8) minutes for question set 2, and so forth. For each of the following numbered question sets 6-7, the Court allocates five (5) minutes per side. It is up to the parties to determine whether and how to divide their allotted time amongst themselves. Unused time in relation to any given numbered question set cannot be "saved" and used for another question set. Except as otherwise indicated, Defendants will address each question set first, followed by Plaintiffs. Defendants may reserve part of their eight minutes for rebuttal, but will not be permitted extra time for that purpose. The Court reserves the right to permit extra time should the Court conclude that an issue merits it, but otherwise the parties should expect to conclude when their eight minutes elapses for each question set.

The question sets are as follows:

1. Before the Court can determine whether there is a genuine dispute of material fact as to whether the control exception applies in a particular case, it must identify the appropriate test for the determination of control.

    - Should the test for the control exception be whether ownership or control forecloses a realistic possibility of suit by the direct purchaser? Why or why not?
    - If not, what should the test be?

2. The Ninth Circuit in In re ATM Fee Antitrust Litig., 686 F.3d 741, 757 (9th Cir. 2012), explained that "control" means "to exercise restraint or direction over; dominate, regulate, or command," or to have "the power or authority to guide or manage." Please address the following in reference to that definition:

    - What degree of control (i.e., how much control) is required to trigger the control exception?
    - Do you agree that the Court should consider any factor that is probative of control as defined in ATM Fee, or should the inquiry should be more limited? Why or why not?

3. Certain Defendants argue the control exception is premised on market forces being superseded. Please address the following on that topic:

    - What does it mean for market forces to be superseded by control?
    - Why does this happen, i.e., what are the mechanisms by which control causes market forces to be superseded? How can courts determine whether market forces have been superseded?
    - According to the "market forces are superseded" control exception theory, courts need not conduct pass-on calculations because the entirety of the overcharge is purportedly passed to indirect purchasers. Why is this the case?
    - The Ninth Circuit in Royal Printing Co. v. Kimberly Clark Corp., 621 F.2d 323, 326 n.4 (9th Cir. 1980), applied the control exception even though it found that market forces had not been superseded. How do you reconcile your position with this aspect of Royal Printing?

4. Certain Defendants argue the control exception should apply only where an alleged price fixer

2

controls the litigation decisions of the direct purchaser such that control makes suit by the direct purchaser unlikely. Please address the following on that topic:

- Why should courts focus exclusively on control over litigation decisions? Why not apply the control exception whenever control makes suit by the direct purchaser unlikely, regardless of whether the price fixer controls the direct purchaser's litigation decisions?
- Insofar as the only thing that matters is control over a direct purchaser's litigation decisions, can the control exception apply where control existed during the conspiracy period but not after? Can it apply where control existed after the conspiracy period but not during it? Why or why not?

5. Certain Defendants argue the control exception should apply only where an alleged price fixer controls the pricing decisions of the direct purchaser. Please address the following on that topic:

- Why should courts focus exclusively on control over pricing decisions? Is there an underlying policy rationale for limiting the control exception in this way?
- Insofar as the only thing that matters is control over a direct purchaser's pricing decisions, can the control exception apply where control existed during the conspiracy period but not after? Can it apply where control existed after the conspiracy period but not during it? Why or why not?

6. The following question relates to SDI Defendants' Motion for Partial Summary Judgment, ECF No. 2983. DAPs will address this question first.

- DAPs' expert, Dr. Haggard, asserts that Samsung Electronics Co. controls Samsung SDI, in part, because of various cross-shareholdings. Yet, Dr. Haggard never quantifies these cross-shareholdings. Is it DAPs' position that these cross-shareholdings, when combined with SEC's 20% direct ownership interest, amount to a greater than 50% ownership interest in SDI?

7. The following question relates to Chunghwa Defendants' Motion for Partial Summary Judgment, ECF No. 3102. DAPs will address this question first.

3

- Defendants' motion asks the Court to grant summary judgment as to purchases made from Tatung Company ("TCO"), Tatung Company of America, Inc. ("TUS"), and Jean Co., Ltd. ("Jean"). However, in its Opposition, ECF No. 3263, ViewSonic refers only to the "Tatung Company" and does not differentiate between TCO and TUS. By "Tatung Company," does ViewSonic mean TCO, TUS, or both combined? If it means both combined, why should the Court analyze them in combination? If ViewSonic only means TCO or TUS, is ViewSonic conceding that there is no control relationship as to the other?

IT IS SO ORDERED.

Dated: January 6, 2016

JON S. TIGAR
United States District Judge