William A. Isaacson
Kyle N. Smith
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Ave. NW, Suite 800
Washington, D.C. 20015
Telephone: (202) 237-2727
Facsimile: (202) 237-6131
Email: wisaacson@bsfllp.com
Email: ksmith@bsfllp.com

Philip J. Iovieno
Anne M. Nardacci
BOIES, SCHILLER & FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207
Telephone: (518) 434-0600
Facsimile: (518) 434-0665
Email: piovieno@bsfllp.com
Email: anardacci@bsfllp.com

*Liaison Counsel for the Direct Action Plaintiffs*

*Additional Counsel Listed on Signature Page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Case No. 07-5944 JT<br><br>MDL No. 1917<br><br>**DIRECT ACTION PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING MOTIONS RELYING UPON THE FTAIA**<br><br>Judge: Hon. Jon S. Tigar<br>Court: Courtroom 9, 19th Floor<br>Date: January 27, 2016<br>Time: 9:30 a.m. |
| This document relates to:<br><br>DIRECT ACTION PLAINTIFF CASES | |

**TABLE OF CONTENTS**

I. Defendants' Motion For Summary Judgment In All The DAPs' Cases Under The FTAIA [Dkt. 3008] and LG Electronics, Inc.'s Motion For Partial Summary Judgment On FTAIA Grounds [Dkt. 3032] .......................................................................... 1

    A. The Amended *Hsiung* and *Motorola* Opinions Have No Effect On The DAPs' Contention That Their Sherman Act Claims Are Based On "Import Commerce." .... 2

    B. The Amended *Hsiung* and *Motorola* Opinions Show That The DAPs' Sherman Act Claims Are Also Actionable Under The "Domestic Effects" Exception To The FTAIA ................................................................................................................ 3

II. Defendants' Motion For Summary Judgment In The Dell Case Under The FTAIA [Dkt. 3003] ........................................................................................................................ 4

    A. The Amended *Motorola* Opinion Addresses An Entirely Different Legal Theory Under the FTAIA's Domestic Effects Exception .......................................... 4

    B. The Amended *Hsiung* Opinion Bolsters Dell's Arguments ....................................... 8

III. Defendants' Motion For Summary Judgment In The ViewSonic Case Under The FTAIA [Dkt. 3108] ......................................................................................................... 10

IV. Defendants' Motion For Partial Summary Judgment Regarding The IPPs' and Certain DAPs' State Law Indirect Purchaser Claims [Dkt. 3005] .................................. 11

    A. The Amended *Hsiung* Opinion Confirms that the FTAIA is Inapplicable to the DAPs' State Law Claims Pursuant to the Domestics Effects Exception .................. 11

    B. The Amended *Motorola* Opinion Does Not Affect the Court's FTAIA Analysis of the DAPs' State Law Claims ............................................................................... 12

## **TABLE OF AUTHORITIES**

*Edelman v. Jordan*,
  415 U.S. 651 (1974) .................................................................................................... 6

*Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*,
  417 F.3d 1267 (D.C. Cir. 2005) .................................................................................. 7

*F. Hoffmann–La Roche Ltd. v. Empagran S.A.*,
  *supra,* 542 U.S., 124 S. Ct. 2359 ............................................................................ 6, 8

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
  995 F.2d 425 (3d Cir. 1993) ........................................................................................ 6

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02-cv-1486,
  2006 WL 515629 (N.D. Cal. Mar. 1, 2006) ................................................................ 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.* (*In re TFT-LCD (Dell)*),
  781 F. Supp. 2d 955 ............................................................................................ 8, 9, 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.* (*In re TFT-LCD (Motorola)*),
  822 F. Supp. 2d 953 (N.D. Cal. 2011) ........................................................................ 7

*In re Vitamin C Antitrust Litig.*,
  904 F. Supp. 2d 310 (E.D.N.Y. 2012) ........................................................................ 7

*Minn-Chem, Inc. v. Agrium, Inc.*,
  683 F.3d 845, 855 (7th Cir. 2012) ........................................................................... 6, 8

*Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816 (7th Cir. Jan 12,
  2015) *cert. denied*, 135 S. Ct. 2837 (June 15, 2015) .................................................. 1

*Motorola Mobility LLC v. AU Optronics Corp.*,
  No. 14-8003, 2014 WL 6678622 (7th Cir. Nov. 26, 2014) ......................................... 4

*Sun Microsystems Inc. v. Hynix Semiconductor Inc.*,
  534 F. Supp. 2d 1101 (N.D. Cal. 2007) ...................................................................... 9

*U.S. v. Van Drunen*,
  501 F.2d 1393 (7th Cir. 1974) ..................................................................................... 6

*United States v. Hui Hsiung*, 778 F.3d 738 (9th Cir. Jan 30, 2015) *cert. denied*,
  135 S. Ct. 2837 (June 15, 2015) .................................................................................. 1

*United States v. Hui Hsiung*,
  758 F.3d 1074 (9th Cir. 2014) ..................................................................................... 3

**STATUTES**

15 U.S.C. § 15 ...................................................................................................................... 7

15 U.S.C. § 6a ......................................................................................................... 6, 7, 8, 11

15 U.S.C. §§ 12, 15 .............................................................................................................. 7

**OTHER AUTHORITIES**

H.R. Rep. No. 97-686 ...................................................................................................... 7, 8

The Direct Action Plaintiffs ("DAPs")[1] hereby submit this supplemental brief regarding Defendants' motions for summary judgment that rely on the FTAIA, in response to the Court's December 10, 2015 Order [Dkt. 4232].

Defendants have made four separate and distinct motions based on the FTAIA. The DAPs address the effect of the amended appellate decisions in *United States v. Hui Hsiung* (the "Amended *Hsiung* Opinion")[2] and *Motorola Mobility LLC v. AU Optronics Corp.* (the "Amended *Motorola* Opinion")[3] on each of these motions below: (i) Defendants' motion for summary judgment in all the DAPs' cases under the FTAIA [Dkt. 3008] and LG Electronics, Inc.'s motion for partial summary judgment on FTAIA grounds [Dkt. 3032]; (ii) Defendants' motion for summary judgment in the Dell case under the FTAIA [Dkt. 3003]; (iii) Defendants' motion for summary judgment in the ViewSonic case under the FTAIA [Dkt. 3108]; and (iv) Defendants' motion for partial summary judgment regarding the IPPs' and certain DAPs' state law indirect purchaser claims [Dkt. 3005].

**I. Defendants' Motion For Summary Judgment In All The DAPs' Cases Under The FTAIA [Dkt. 3008] and LG Electronics, Inc.'s Motion For Partial Summary Judgment On FTAIA Grounds [Dkt. 3032]**

In these motions, Defendants argue that, *as a matter of law*, the DAPs have failed to present competent evidence of damages to allow their claims to be presented to the jury because the DAPs have failed to identify which of their purchases are actionable under the FTAIA and which are not. As set forth in their consolidated opposition to Defendants' motions [Dkt. 3272] (the "DAPs' Opposition"), the FTAIA does not bar any portion of the DAPs' Sherman Act claims, which are exclusively based on the DAPs' purchases directly from the Defendants and their affiliates in the United States, and which thus qualify as "import commerce."[4] Per the plain

---

[1] Because the Sharp case presents no FTAIA issues, *see* Dkt. 4192 at 7, the Sharp Plaintiffs take no position on this matter and do not join this submission.

[2] 778 F.3d 738 (9th Cir. Jan 30, 2015), *cert. denied*, 135 S. Ct. 2837 (June 15, 2015).

[3] 775 F.3d 816 (7th Cir. Jan 12, 2015) (Posner, J.), *cert. denied*, 135 S. Ct. 2837 (June 15, 2015).

[4] Defendants also challenge the DAPs' state law damages claims in these motions, as well as in a separate motion [Dkt. 3005]. Only three DAPs maintain state law damages claims at this time: Best Buy, BrandsMart, and Office Depot. The DAPs address the effect of the Amended *Hsiung* and *Motorola* Opinions on their state law claims in Section IV below.

terms of the FTAIA statute, the FTAIA's "domestic effects" requirements do not apply to "import commerce," and nothing in the Amended *Hsiung* Opinion or the Amended *Motorola* Opinion alters the conclusion that the DAPs' claims are actionable in their entirety as import commerce.

Even if the Court were to assume that an analysis of the "domestic effects" exception to the FTAIA was warranted with respect to these claims, the controlling analysis from *Hsiung*—as well as the reasoning of *Motorola*—only serves to bolster the conclusion that the DAPs' claims had the "direct, substantial, and reasonably foreseeable" domestic effect required by the FTAIA. The DAPs have presented ample evidence of such domestic effects at this stage of the case. They should be allowed to present that evidence to the jury—just as Defendants will have the opportunity to seek to rebut it with evidence of their own, if any exists.[5]

### A. The Amended *Hsiung* and *Motorola* Opinions Have No Effect On The DAPs' Contention That Their Sherman Act Claims Are Based On "Import Commerce."

The Amended *Hsiung* Opinion and the Amended *Motorola* Opinion have no effect on the DAPs' argument that their Sherman Act claims are actionable under the import commerce exclusion. The amendments to *Hsiung* do not relate to the Court's analysis of the scope of the import commerce exclusion, but instead, focus on the domestic effects exception. *See* 778 F.3d at 759-60. Likewise, the amendments to the *Motorola* decision focus on facts specific to that action—namely the proper treatment under the FTAIA of purchases made by foreign subsidiaries of an American plaintiff. *See Motorola*, 775 F.3d at 820, 822, 826. In *Motorola*, the purchases at issue were made by foreign subsidiaries of Motorola in overseas locations. In contrast, all of the DAPs' purchases at issue were made by the DAPs themselves in the United States directly from the Defendants or their subsidiaries and affiliates. *See* Dkt. 3272 at 10 & n.14 (citing evidence of the DAPs' purchases in the U.S.).[6] *See Hsiung*, 778 F.3d at 755 (finding that transactions

---

[5] The Seventh Circuit issued the Amended *Motorola* Opinion before Defendants filed their reply briefs and Defendants had the opportunity to and did in fact argue the importance of the *Motorola* amendments in their reply brief. *See* Dkt. 3442 at 2, 8, 12-13. Moreover, perhaps acknowledging the weakness of their argument with respect to the DAPs' Sherman Act claims, Defendants devoted the majority of their reply brief to the FTAIA's effect on *state law claims* rather than federal claims.

[6] To the extent Dell is seeking damages in connection with Purchases made by its Foreign Affiliates, those purchases were addressed in a Dell-specific FTAIA Motion [Dkt. 3003] and are addressed separately below.

1  between U.S. plaintiffs and defendant cartel members are U.S. commerce). Given the
2  fundamental difference between the facts of the Motorola case and the DAPs' actions, the
3  amendments to *Motorola* have no bearing on the DAPs' argument that their Sherman Act claims
4  are actionable in their entirety under the import commerce exclusion.

5  Because the DAPs' Sherman Act claims are based on import commerce and thus not
6  limited in any way by the FTAIA, Defendants' motion necessarily fails.

   **B. The Amended *Hsiung* and *Motorola* Opinions Show That The DAPs' Sherman Act Claims Are Also Actionable Under The "Domestic Effects" Exception To The FTAIA.**

9  The Ninth Circuit's amendments to *Hsiung* confirm that the DAPs' claims are also
10 actionable, in the alternative, under the domestic effects exception to the FTAIA. In its original
11 opinion in *Hsiung*, the Ninth Circuit sustained the verdict against the defendants under the import
12 commerce exclusion and thus did not address whether the verdict could also be sustained under
13 the domestic effects exception. *United States v. Hui Hsiung*, 758 F.3d 1074, 1078 (9th Cir. 2014).
14 However, in the Amended *Hsiung* Opinion, the Ninth Circuit ruled that the verdict could also "be
15 sustained under the FTAIA's domestic effects provision because the conduct had a 'direct,
16 substantial, and reasonably foreseeable effect on United States commerce.'" *Hsiung*, 778 F.3d at
17 743 (quoting 15 U.S.C. § 6a).

18 The Court's conclusion that the domestic effects exception was applicable supports the
19 DAPs' contention that it applies here, as well. The parties in *Hsiung* acknowledged that the
20 price-fixing conduct was both substantial and had a reasonably foreseeable impact on United
21 States commerce. *Id*. at 758. After assessing the facts related to the manufacture and sale of
22 LCD panels, the Court reasoned that the impact of the LCD conspiracy on the United States
23 market for LCD products was also direct and followed as an immediate consequence of the price
24 fixing given "the integrated, close and direct connection between the purchase of the price-fixed
25 panels, the United States as the destination for the products, and the ultimate inflation of prices in
26 finished products imported to the United States." *Id*. at 759. The Court concluded that "[t]he
27 direct connection was neither speculative nor insulated by multiple disconnected layers of
28 transactions." *Id*. This conclusion is equally applicable here given that the manufacturing and

sales processes for LCDs and CRTs are virtually indistinguishable. *See generally* Dkt. 3272 at 6-11, 21.

Notably, the Ninth Circuit distinguished the Amended *Motorola* Opinion's analysis of the domestic effects issue. *Hsiung*, 778 F.3d at 760. The Court noted that the Seventh Circuit found that Motorola's claim failed not because Motorola failed to show that the LCD price fixing conspiracy had a direct effect on the U.S. market, but rather, because *Illinois Brick* barred Motorola's claims as indirect purchases, *i.e.*, because Motorola's foreign subsidiaries purchased the LCD panels at issue. *Id.*[7] By contrast, here the DAPs purchased CRT Products in the United States directly from Defendants or their subsidiaries and affiliates, which had themselves imported the CRT Products into the United States. *See* Dkt. 3272 at 10 & n.14. In other words, the facts of Motorola's claim are again fundamentally different from the facts of the DAPs' claims here (as well as from the relevant facts in *Hsiung*).

Thus, for the reasons set forth in the DAPs' Opposition, under the controlling legal standard from *Hsiung* and predecessor case law, overwhelming evidence supports the DAPs' position that their Sherman Act claims satisfy the domestic effects exception to the FTAIA. Accordingly, Defendants' motions for summary judgment should be denied.

II.  **Defendants' Motion For Summary Judgment In The Dell Case Under The FTAIA [Dkt. 3003]**

   A. **The Amended *Motorola* Opinion Addresses An Entirely Different Legal Theory Under the FTAIA's Domestic Effects Exception.**

Defendants filed a separate motion for summary judgment against Dell to preclude Dell from recovering damages in connection with "CRT Monitors that [Dell's] Foreign Affiliates purchased abroad" and resold abroad based on the Foreign Trade Antitrust Improvement Act [Dkt. 3003 (the "Dell FTAIA Motion")].[8] Before Dell filed its opposition, the Seventh Circuit issued a decision in *Motorola Mobility LLC v. AU Optronics Corp.*, No. 14-8003, 2014 WL

---

[7] Further, Motorola's foreign subsidiaries incorporated the panels in finished products that they then sold to Motorola, only some of which Motorola ultimately imported into the United States for sales to consumers. *See Motorola*, 775 F.3d at 819-20.

[8] The Defendants' Dell FTAIA Motion did not seek to exclude Dell's purchases of products that were imported by Defendants or their co-conspirators into the United States.

DIRECT ACTION PLAINTIFFS' SUPPLEMENTAL
BRIEF REGARDING MOTIONS RELYING UPON      4               Case No. 07-5944
THE FTAIA                                                 MDL No. 1917

6678622 (7th Cir. Nov. 26, 2014), and found that Motorola's foreign purchases of LCDs were not recoverable under the FTAIA. As explained in Dell's opposition brief, this case is factually and legally distinguishable from *Motorola*, and in any event, this Court is bound by the decisions of the Ninth Circuit – not the Seventh Circuit. Dkt. 3235 at 14, fn. 20.[9] After Dell filed its opposition brief, the Seventh Circuit issued the Amended *Motorola* Opinion.[10] The amendments to the opinion confirm that the Seventh Circuit's decision was premised on finding that Motorola's "single integrated enterprise theory" failed to meet the FTAIA's domestic effects exception. *Motorola*, 775 F.3d at 820. Dell has never argued that it operates as a single integrated enterprise with its foreign affiliates, much less that its corporate relationship is a basis for allowing it to recover damages suffered by its foreign affiliates. The amendments to the *Motorola* decision make clear that the Seventh Circuit's opinion is premised on an entirely different theory of recovery advanced by Motorola.

Motorola argued that, when its foreign subsidiaries made purchases at prices set by Motorola in the United States, "Motorola was the real buyer of the panels and so the panels were really imported directly into the United States. . . ." *Motorola*, 775 F.3d at 822. In the Amended *Motorola* Opinion, the Seventh Circuit opined that "Motorola wants us to treat it and all of its foreign subsidiaries as a single integrated enterprise, as if its subsidiaries were divisions rather than foreign corporations. But American law does not collapse parents and subsidiaries (or sister corporations) in that way." *Motorola*, 775 F.3d at 820. The court pointed out that unlike some countries, the United States does not treat "multinational enterprises as integrated units." *Id.* Rather, "corporate formalities should be respected unless one of the recognized justifications for piercing the veil, or otherwise deeming a parent and a subsidiary one, is present." *Id.* at 820.[11]

Unlike Motorola, Dell does not contend that, because it negotiated a single worldwide

---

[9] The Seventh Circuit held that Motorola lacked standing to recover its foreign affiliates' purchases of price-fixed LCD panels.

[10] Defendants had the Amended Motorola Decision before their reply briefs were due and cited the opinion extensively in their reply brief. Dkt. 3447.

[11] The Seventh Circuit reasoned that, because other countries have antitrust laws, the United States is no longer the "world's competition policeman," and that to allow Motorola to pursue its claims in the United States would be tantamount to forum shopping. *See id.* at 826.

1  price for CRT products in the United States, it was the "real buyer" in interest such that its foreign
2  subsidiaries' purchases constitute import commerce. Nor does Dell seek to "treat it and all of its
3  foreign subsidiaries as a single integrated enterprise" and ignore corporate formalities. *Compare*
4  *Motorola*, 775 F.3d at 820. Instead, Dell contends that the FTAIA expressly allows its Foreign
5  Affiliates, as the direct purchasers of price-fixed CRT products, to sue for their antitrust injuries
6  in the United States as long as their injuries arose from conduct that had a "direct, substantial, and
7  reasonably foreseeable effect" on U.S. commerce, and that effect gave rise to their claims. 15
8  U.S.C. § 6a.[12] Indeed, Dell is not seeking to recover damages incurred by its affiliates as a
9  derivative injury; rather it is pursuing valid antitrust claims that belong to its affiliates, which
10 have been expressly assigned to Dell. *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace*
11 *Corp.*, 995 F.2d 425, 437 (3d Cir. 1993) ("There is no serious doubt that an antitrust claim can be
12 expressly assigned.").

13 The Amended Motorola Opinion does not address, much less dispute, the fact that
14 antitrust claims can be assigned. Though Motorola noted it obtained assignments of claims from
15 its foreign affiliates, the Seventh Circuit did not reach the effect of such an assignment because it
16 held that foreign customers cannot bring claims under U.S. antitrust law in the first instance:

> Whether or not Motorola was harmed indirectly, the immediate victims of the price fixing were its foreign subsidiaries, see *F. Hoffmann–La Roche Ltd. v. Empagran S.A., supra,* 542 U.S. at 173–75, 124 S. Ct. 2359, and as we said in the *Minn–Chem* case "**U.S. antitrust laws are not to be used for injury to foreign customers**," 683 F.3d at 858. Motorola's subsidiaries are governed by the laws of the countries in which they are incorporated and operate. . .

21 *Id.* at 820. Accordingly, it never addressed the assignment of claims to Motorola. *See U.S. v.*
22 *Van Drunen*, 501 F.2d 1393, 1397 (7th Cir. 1974) (recognizing that holdings that do not expressly
23 address a particular issue "'are not of the same precedential value'" as opinions expressly
24 addressing an issue) (quoting *Edelman v. Jordan*, 415 U.S. 651, 670-71 (1974)).[13]

---

[12] Unlike Motorola, Dell had contractual master purchase agreements ("MPAs") with Defendants and their co-conspirators. Pursuant to the MPAs, prices were set to Dell in the United States and were binding on Dell's Affiliates worldwide. Dkt. 3235 at 10-13 (explaining Dell's MPAs).

[13] The Seventh Circuit initially affirmed the district court's opinion without briefing. The Court subsequently allowed briefing, but Motorola did not raise the fact that it was pursuing its claims based on an express assignment, and thus the Seventh Circuit did not address it.

1   The FTAIA does not preclude foreign plaintiffs from recovering under U.S. antitrust law. *See Empagran S.A. v. F. Hoffmann-LaRoche, Ltd.*, 417 F.3d 1267, 1269 (D.C. Cir. 2005) (explaining that "the FTAIA's 'domestic effects' requirement "does not exclude all persons injured abroad from recovering under the antitrust laws of the United States"); *see also id.* at 1271; *In re Vitamin C Antitrust Litig.*, 904 F. Supp. 2d 310, 321-22 (E.D.N.Y. 2012) ("There is no dispute that a foreign entity can have standing under the U.S. antitrust laws," and explaining that because the claims satisfied the FTAIA's domestic effects exception, the "foreign purchaser claims [were] cognizable under the antitrust laws".). The Clayton Act dictates which persons can bring civil claims for antitrust damages in the United States, and, by its express terms, allows foreign customers to bring claims for injuries caused by conduct that is forbidden by U.S. antitrust laws. 15 U.S.C. §§ 12, 15. It states that "***any person*** who [is] injured in his business or property by reason of anything forbidden in the antitrust laws" may bring a suit for damages in the United States district courts. 15 U.S.C. § 15 (emphasis added). The term "person" is defined to include "corporations and associations existing under or authorized by the laws of . . . any foreign country." 15 U.S.C. § 12 (defining the word "person" or "persons" as used in the Clayton Act). Given the plain language of the Clayton Act, there is no doubt that foreign purchasers have standing to bring claims under U.S. antitrust laws.

The FTAIA does not modify the Clayton Act, but rather, defines whether and when foreign conduct can be subject to, and forbidden by, U.S. antitrust laws. *See* 15 U.S.C. § 6a. The fact that price fixing occurs overseas does not insulate such conduct from antitrust liability, nor does the location of the first sale. *See* H.R. Rep. No. 97-686, at 12 (explaining that, as long as the conduct has the requisite anticompetitive effects in the United States, there is no requirement "that the impact of the illegal conduct . . . be experienced by the injured party within the United States"). ***Indeed, the entire purpose of the FTAIA's domestic effects exception is to set forth the circumstances in which a party can be held liable for conduct that causes foreign injuries in foreign commerce (as opposed to domestic and import commerce)***. *See In re TFT-LCD (Flat Panel) Antitrust Litig.* (*In re TFT-LCD (Motorola)*), 822 F. Supp. 2d 953, 963–64 (N.D. Cal. 2011) (rejecting Defendants' attempt to limit recovery to purchases that ultimately made their

way into the United States because such a result "would all but eviscerate the distinction between the 'domestic injury' exception and 'import commerce,' which is not subject to the FTAIA."); *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 855 (7th Cir. 2012) (explaining that trade involving foreign sellers and "domestic buyers" is not subject to the FTAIA in the first instance). A party may be held liable for foreign conduct under U.S. antitrust laws where such conduct (1) has a "direct, substantial, and reasonably foreseeable effect" on American domestic or import commerce, which, in turn (2) gives rise to the plaintiff's antitrust injuries. 15 U.S.C. § 6a; *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 161–62 (2004).[14] Where, as here, that two-part test is satisfied, injured parties may bring claims under the Clayton Act regardless of where the injury occurred. *Empagran*, 417 at 1269 (rejecting defendants' suggestion that the domestic effects exception only applies to injuries that arise in U.S. commerce; noting that such a position has "no support from the text of the statute"; and holding that the foreign plaintiffs only needed to demonstrate that the "U.S. effects of the [defendants'] allegedly anticompetitive conduct gave rise to their claims"); *see also In re TFT-LCD (Flat Panel) Antitrust Litig.* (*In re TFT-LCD (Dell)*), 781 F. Supp. 2d 955, 964 (N.D. Cal. 2011). Dell's Foreign Affiliates have the right to sue for damages caused by conduct prohibited by the Sherman Act, and have assigned their claims to Dell.

### B. The Amended *Hsiung* Opinion Bolsters Dell's Arguments.

In the amendments to the *Hsiung* opinion, the Ninth Circuit addresses the application of the FTAIA's domestic effects exception to the very same price-fixing conspiracy that was at issue in the *Motorola* case, yet reaches the opposite conclusion. In *Hsiung*, the Ninth Circuit found that the FTAIA's domestic effects exception was satisfied notwithstanding the fact that the price-fixed goods were first sold to foreign customers. *Hsiung*, 778 F.3d at 759.

In finding that there was sufficient evidence from which a jury could find that the conspiracy had a direct effect on United States commerce, the court pointed to the fact that the price-fixing meetings "led to **direct negotiations with United States companies**, both

---

[14] The FTAIA was enacted to preclude recovery for foreign injuries arising out of "conduct with no anticompetitive effects in the domestic marketplace." *See* H.R. Rep. No. 97-686, at 11; *Empagran,* 542 U.S. at 159.

domestically and overseas, on pricing decisions." *Hsiung*, 778 F.3d at 759 (emphasis added). The fact that the panels were first sold overseas "to foreign subsidiaries of American companies or to systems integrators, and then incorporated into finished products," did not preclude application of the Sherman Act. *Id.* (citing Dell's procurement process as a specific example).[15] The Court explained that even though many of the price-fixed products were initially sold to foreign consumers, "[i]t was well understood that substantial numbers of finished products were destined for the United States and that the practical upshot of the conspiracy would be and was increased prices to customers in the United States." *Hsiung*, 778 F.3d at 759.  The location of the first sale was not dispositive, and did not preclude application of the Sherman Act.

Here, Defendants and their co-conspirators engaged in conduct that was intended to have a "direct, substantial, and reasonably foreseeable effect" on United States commerce by raising prices to customers, including Dell, in the United States. The setting of an unlawful price in the United States is a domestic effect under the FTAIA. *In re TFT-LCD (Dell)*, 781 F. Supp. 2d at 964 (finding that allegations that setting of a worldwide price in the United States was a domestic effect).[16] The unlawful prices set by Defendants with Dell in the U.S. were binding on purchases made by Dell's Foreign Affiliates. Thus, the domestic effect of Defendants' conduct – the setting of an unlawful price to Dell in the United States that applied to the monitors bought by Dell affiliates all over the world – is precisely what "gave rise to" Dell's Foreign Affiliates' injuries. In the LCD antitrust litigation, Judge Illston addressed virtually identical facts and held "that [Dell's] MPAs and subsequent price negotiations were a domestic effect of defendants'

---

[15] In *Hsiung*, the government's claims were premised on foreign sales of panels that were incorporated into finished consumer products ultimately sold in the United States. However, the Ninth Circuit did not hold that products must be imported back into the United States to be recoverable.

[16] Courts do not "draw a distinction between the setting of and the payment of higher prices and it would be inconsistent with prior decisions to find that the 'domestic effect' language of the FTAIA requires more—*i.e.*, that it requires actual payment of those prices." *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 534 F. Supp. 2d 1101, 1112 (N.D. Cal. 2007); *see id.* at 1113 (rejecting argument that "domestic effect" had to be the actual payment of higher prices in the United States and holding that "a domestic effect is established here by virtue of plaintiffs' allegations that defendants' conduct led to higher prices for DRAM in the United States, which in turn formed the predicate for plaintiffs' domestic agreements to pay higher prices for DRAM"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02-cv-1486, 2006 WL 515629, at *3 (N.D. Cal. Mar. 1, 2006), *aff'd*, 546 F.3d 981 (9th Cir. 2008).

anticompetitive conspiracy that proximately caused Dell's foreign injury" under the FTAIA. *See In re TFT-LCD (Dell)*, 781 F. Supp. 2d at 964. Accordingly, and consistent with Ninth Circuit precedent, it would not offend principles of international comity to hold Defendants liable for their conduct under the Sherman Act.

### III. Defendants' Motion For Summary Judgment In The ViewSonic Case Under The FTAIA [Dkt. 3108]

As explained in ViewSonic's opposition [Dkt. 3249], Defendants' motion is premised entirely on an inaccurate assertion that ViewSonic brings claims based on purchases of computer monitors containing price-fixed CRTs that were paid for and received by its Taiwanese subsidiary, ViewSonic International Corporation ("VSI"), which is not a party in this litigation. The complaint and discovery in this case, however, make clear that the claims asserted by ViewSonic are limited only to those arising from purchases of computer monitors that were ordered and paid for by ViewSonic America ("VSA") in the United States, and where title to such monitors transferred directly to VSA from Defendants and/or their affiliates and subsidiaries.[17] These facts are separate and apart from those addressed in *Motorola*, where the purchases at issue were ordered, paid for, and received by the foreign subsidiaries of an American plaintiff. *See Motorola*, 775 F.3d at 820, 822, 826. For the same reasons set forth in Section I above, because the *Motorola* amendments focus on the facts specific to that action, those amendments do not impact the analysis with respect to this motion. With respect to the *Hsiung* amendments, although ViewSonic believes that that the FTAIA should not apply to the transactions at issue in this case in the first instance, if it is deemed that the statute is applicable, then those amendments serve to support and bolster ViewSonic's argument that the "domestic effects" exception to the FTAIA brings its claims under the reach of the Sherman Act (Dkt. 3249 at 8-10) for the same reasons set forth in Section I(B) above.

---

[17] Defendants' arguments to the contrary misinterpret a handful of purchase orders issued by VSI, which sold monitors to ViewSonic's customers in certain parts of Asia, that happened to be captured in ViewSonic's larger document production in the case. ViewSonic's deponents repeatedly explained that VSI did not issue purchase orders for monitors that VSA bought and sold in the United States. *See* Dkt. 3249 at 4-6.

**IV. Defendants' Motion For Partial Summary Judgment Regarding The IPPs' and Certain DAPs' State Law Indirect Purchaser Claims [Dkt. 3005]**

**A. The Amended *Hsiung* Opinion Confirms that the FTAIA is Inapplicable to the DAPs' State Law Claims Pursuant to the Domestics Effects Exception**

As noted in Section I(B) above, in the Amended *Hsiung* Opinion, the Ninth Circuit adopted verbatim the entirety of its import commerce analysis from the original opinion, 778 F.3d at 753-56, and added an extensive analysis of the FTAIA's "domestic effects" exception in concluding that the defendants' conduct had a "'direct, substantial, and reasonably foreseeable effect on United States commerce,'" *id*. at 756-60 (quoting 15 U.S.C. § 6a). That amended analysis again confirms that, in addition to being excluded from the FTAIA's reach under the import commerce exclusion, all of the DAPs' state law claims satisfy the domestic effects exception.

Significantly, much as the Defendants do here, the defendants in *Hsiung* contended that "the offshore conduct is too attenuated from the United States and that the intervening development, manufacture, and sale of the products worldwide resulted in a diffuse effect."[18] The Ninth Circuit rejected the defendants' arguments, concluding that "[t]he constellation of events that surrounded the conspiracy leads to one conclusion—*the impact on the United States market was direct and followed 'as an immediate consequence' of the price fixing.*" *Hsiung*, 778 F.3d at 759-60 (discussing constellation of events, including that (a) LCD was a substantial cost component of finished products, (b) LCD conspiracy meetings took place all over the world and the United States, (c) conspirators did business directly with the US companies "both domestically and overseas", (d) conspirators also sold LCDs overseas to foreign subsidiaries of US companies that they understood would be incorporated into finished products for sale in the US market, and (e) conspirators knew their conspiracy would impact US commerce and customers, which was the intended result) (emphasis added).

Here, the DAPs have submitted extensive evidence regarding the same constellation of events, which demonstrate the CRT conspiracy's direct, substantial, and foreseeable effects on

---

[18] *Compare* the Amended *Hsiung* Opinion, 778 F.3d at 758, *with* Defendants' Reply Memorandum In Support Of Motion For Partial Summary Judgment On Plaintiffs' Indirect Purchaser Claims Based On Foreign Sales (the "Reply") [Dkt. 3442] at 10:21-11:16.

United States commerce: (1) CRT was a substantial cost component of the finished product (approximately 50%), (Dkt. 3287 at 3 n.5.); (2) conspiracy meetings took place in the United States and throughout the rest of the world, (*id.* at 3, 6 nn.3, 14); (3) conspirators did business directly with customers in the United States or through controlled subsidiaries and affiliates, (*id.* at 3-5, 7 nn.5-6, 10-11, 17); (4) the conspirators sold price-fixed CRTs to major foreign customers knowing they would be incorporated into CRT Products for sale in the United States market, (*id.* at 4-5, 7 nn.7-9, 11, 16, 19, 24); and (5) conspirators knew that their conspiracy would impact domestic commerce and in fact intended their conspiracy to have that result, (*id.* at 3-4, 7-9 nn.5, 7-12, 15-16, 19-22, 24-26; Dkt. 3272-3 at 7 n.7, 8 nn.9-11). Based on this extensive evidence, *Hsiung* compels the same result here. The DAPs' state law claims meet the FTAIA's "domestic effects" exception, and the Court should thus deny Defendants' FTAIA-related motions for summary judgment.

### B. The Amended *Motorola* Opinion Does Not Affect the Court's FTAIA Analysis of the DAPs' State Law Claims

Much as described in Section I above with respect to the DAPs' federal claims, the Seventh Circuit's amendments to its opinion in *Motorola* are also irrelevant to the Court's FTAIA analysis of the DAPs' state law claims. The amendments addressed Motorola's argument that it could sue on behalf of its foreign subsidiaries, which were the direct purchasers of LCD panels. *See Motorola*, 775 F.3d at 820-22. The Seventh Circuit disagreed: "But Motorola can't just ignore its corporate structure whenever it's in its interests to do so. It can't pick and choose from the benefits and burdens of United States corporate citizenship." *Id.* at 822. Unlike Motorola, the DAPs here are not asserting state law claims on behalf of foreign subsidiaries for purchases made overseas. Because the DAPs are U.S. entities that made domestic purchases resulting in domestic injury, *Motorola* is irrelevant.

| | | |
|---|---|---|
| 1 | Dated: January 11, 2016 | Respectfully submitted, |
| 2 | | */s/ Philip J. Iovieno* |
| 3 | | William A. Isaacson |
| 4 | | Kyle N. Smith<br>BOIES, SCHILLER & FLEXNER LLP |
| 5 | | 5301 Wisconsin Ave. NW, Suite 800<br>Washington, D.C. 20015 |
| 6 | | Telephone: (202) 237-2727<br>Facsimile: (202) 237-6131 |
| 7 | | Email: wisaacson@bsfllp.com<br>Email: ksmith@bsfllp.com |
| 8 | | Stuart Singer |
| 9 | | BOIES, SCHILLER & FLEXNER LLP<br>401 East Las Olas Blvd., Suite 1200 |
| 10 | | Fort Lauderdale, FL 33301<br>Telephone: (954) 356-0011 |
| 11 | | Facsimile: (954) 356-0022<br>Email: ssinger@bsfllp.com |
| 12 | | Philip J. Iovieno |
| 13 | | Anne M. Nardacci<br>BOIES, SCHILLER & FLEXNER LLP |
| 14 | | 30 South Pearl Street, 11th Floor<br>Albany, NY 12207 |
| 15 | | Telephone: (518) 434-0600<br>Facsimile: (518) 434-0665 |
| 16 | | Email: piovieno@bsfllp.com<br>Email: anardacci@bsfllp.com |
| 17 | | *Liaison Counsel for Direct Action Plaintiffs and* |
| 18 | | *Attorneys for Plaintiffs Electrograph Systems, Inc., Electrograph Technologies Corp., Office Depot,* |
| 19 | | *Inc., CompuCom Systems, Inc., Interbond Corporation of America, P.C. Richard & Son Long* |
| 20 | | *Island Corp., MARTA Cooperative of America, Inc., ABC Appliance, Inc., Schultze Agency* |
| 21 | | *Services LLC on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC, Tech Data Corp., and Tech* |
| 22 | | *Data Product Management, Inc.* |
| 23 | | */s/ Scott N. Wagner* |
| 24 | | Robert W. Turken |
| 25 | | Scott N. Wagner<br>BILZIN SUMBERG BAENA PRICE & |
| 26 | | AXELROD LLP |
| 27 | | 1450 Brickell Ave, Suite 2300<br>Miami, FL 33131-3456 |
| 28 | | Tel:     305-374-7580<br>Fax:    305-374-7593 |

DIRECT ACTION PLAINTIFFS' SUPPLEMENTAL
BRIEF REGARDING MOTIONS RELYING UPON     13                          Case No. 07-5944
THE FTAIA                                                             MDL No. 1917

Email: rturken@bilzin.com
Email: swagner@bilzin.com

*Attorneys for Plaintiffs Tech Data Corp. and Tech Data Product Management, Inc.*


/s/ Roman M. Silberfeld

Roman M. Silberfeld (SBN 62783)
David Martinez (SBN 193183)
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208
Telephone: (310) 552-0130
Facsimile: (310) 229-5800
Email: RMSilberfeld@rkmc.com
Email: DMartinez@rkmc.com

*Attorneys For Plaintiffs Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi, LLC*


/s/ Kenneth S. Marks

Kenneth S. Marks
Jonathan J. Ross
Johnny W. Carter
David M. Peterson
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
Email: kmarks@susmangodfrey.com
Email: jross@susmangodfrey.com
Email: jcarter@susmangodfrey.com
Email: dpeterson@susmangodfrey.com

Parker C. Folse III
Rachel S. Black
Jordan Connors
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
Email: pfolse@susmangodfrey.com
Email: rblack@susmangodfrey.com
Email: jconnors@susmangodfrey.com

*Attorneys for Plaintiff Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust*

| | |
|---|---|
| 1 | By: /s/ David. J. Burman |
| 2 | David J. Burman |
| | Cori G. Moore |
| 3 | Nicholas H. Hesterberg |
| | PERKINS COIE LLP |
| 4 | 1201 Third Avenue, Suite 4900 |
| | Seattle, WA 98101-3099 |
| 5 | Telephone:  (206) 359-8000 |
| | Facsimile:  (206) 359-9000 |
| 6 | Email:  DBurman@perkinscoie.com |
| | Email:  CGMoore@perkinscoie.com |
| 7 | Email:  NHesterberg@perkinscoie.com |
| 8 | *Attorneys for Plaintiff Costco Wholesale Corp.* |

By: /s/ Jason C. Murray

Jason C. Murray (CA Bar No. 169806)
CROWELL & MORING LLP
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: (213) 443-5582
Facsimile: (213) 622-2690
Email: jmurray@crowell.com

Jerome A. Murphy (*pro hac vice*)
Matthew J. McBurney (*pro hac vice*)
Astor H.L. Heaven (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: 202-624-2500
Facsimile:  202-628-5116
Email: jmurphy@crowell.com
         mmcburney@crowell.com
         aheaven@crowell.com

*Attorneys for Plaintiff ViewSonic Corp.*


By: /s/ William J. Blechman

Richard Alan Arnold
William J. Blechman
Kevin J. Murray
KENNY NACHWALTER, P.A.
201 S. Biscayne Blvd., Suite 1100
Miami, FL 33131
Tel: (305) 373-1000
Fax: (305) 372-1861
Email: kmurray@knpa.com
Email: wblechman@knpa.com
Email: rarnold@knpa.com

DIRECT ACTION PLAINTIFFS' SUPPLEMENTAL
BRIEF REGARDING MOTIONS RELYING UPON          15                              Case No. 07-5944
THE FTAIA                                                                     MDL No. 1917

|   |   |
|---|---|
| 1 | *Attorneys for Plaintiff Sears, Roebuck and Co. and Kmart Corp.* |
| 2 | |
| 3 | By: /s/ Debra D. Bernstein |
| 4 | Michael P. Kenny |
|   | Debra D. Bernstein |
| 5 | Rodney J. Ganske |
|   | Matthew D. Kent |
| 6 | Elizabeth Jordan |
|   | ALSTON & BIRD LLP |
| 7 | 1201 West Peachtree Street |
|   | Atlanta, Georgia 30309-3424 |
| 8 | Tel: (404) 881-7000 |
|   | Facsimile: (404) 881-7777 |
| 9 | mike.kenny@alston.com |
|   | debra.bernstein@alston.com |
| 10 | rod.ganske@alston.com |
|   | matthew.kent@alston.com |
| 11 | elizabeth.jordan@alston.com |

James M. Wagstaffe, Esq. (SBN 95535)
Kerr & Wagstaffe LLP
101 Mission Street, 18th Floor
San Francisco, California 94105-1576
Tel: (415) 371-8500
Facsimile: (415) 371-0500
wagstaffe@kerrwagstaffe.com

*Attorneys for Plaintiffs Dell Inc. and Dell Products L.P.*