1     [*Counsel Listed on Signature Pages*]

2

3

4

5

6                       UNITED STATES DISTRICT COURT

7                     NORTHERN DISTRICT OF CALIFORNIA

8                        SAN FRANCISCO DIVISION

9

10    IN RE: CATHODE RAY TUBE (CRT)          MDL No. 1917
      ANTITRUST LITIGATION
11                                            Case No. 3:07-cv-05944 JST (N.D. Cal.)

12    This document relates to:              **DEFENDANTS' SUPPLEMENTAL BRIEF
                                             REGARDING MOTIONS FOR
13    *All Direct Action Plaintiffs*          SUMMARY JUDGMENT RELYING ON
                                             THE FTAIA**
14
                                             Hearing Date:  January 27, 2016
15                                           Hearing Time:  9:30 a.m.
                                             Judge:    Hon. Jon S. Tigar
16                                           Crtrm.:  9, 19th Floor

17

18

19

20

21

22

23

24

25

26

27

28

29374864.1

Case No. 3:07-cv-05944-JST; MDL 1917
DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING MOTIONS FOR SUMMARY JUDGMENT RELYING ON THE FTAIA

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ....................................................................................................... 3

      A.    The Amendments to *Hsiung* Preclude DAPs' Expansive Interpretation of
            the "Import Commerce" Exclusion As Applying to Finished CRT Products .......... 3

      B.    The Amended *Hsiung* and *Motorola* Decisions Both Support a Finding That
            DAPs Cannot Meet the "Domestic Effects" Test .................................................. 6

            1.    Under the Amended Decisions, DAPs Cannot Show a Direct Effect
                  on U.S. Commerce ...................................................................................... 6

            2.    DAPs Cannot Meet the "Gives Rise To" Prong ........................................... 8

      C.    No Matter How They Are Interpreted, the Amended Decisions Do Not
            Remedy DAPs' Failure to Segregate Their Damages Calculations  by Those
            Actionable and Non-Actionable Under the FTAIA ............................................. 10

III.  CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ........................................................................................................12

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
    542 U.S. 155 (2004) ............................................................................................................9

*Jackson v. Virginia*,
    443 U.S. 307 (1979) ............................................................................................................4

*Minn-Chem, Inc. v. Agrium, Inc.*,
    683 F.3d 845 (7th Cir. 2012)..........................................................................................4, 8

*Motorola Mobility LLC v. AU Optronics Corp.*,
    775 F.3d 816 (7th Cir. 2015)..................................................................................  *passim*

*In re Rubber Chems. Antitrust Litig.*,
    504 F. Supp. 2d 777 (N.D. Cal. 2007) ..............................................................................12

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    No. 07-md-01819 CW, 2010 WL 5477313 (N.D. Cal. Dec. 31, 2010) ....................................12

*United States v. Hsiung*,
    758 F.3d 1074 (9th Cir. 2014)..........................................................................................4

*United States v. Hsiung*,
    778 F.3d 738 (9th Cir. 2015)...................................................................................  *passim*

*United States v. LSL Biotechnologies*,
    379 F.3d 672 (9th Cir. 2004)..........................................................................................6, 8

**FEDERAL STATUTES**

15 U.S.C. § 6a(1), (2) ...........................................................................................................2

## SUPPLEMENTAL BRIEF IN SUPPORT OF FTAIA MOTIONS

Pursuant to the Court's Order for Supplemental Briefing Regarding Motions Relying on the Foreign Trade Antitrust Improvements Act ("FTAIA"), *see* ECF No. 4232, Defendants submit this supplemental brief in support of their motions for summary judgment related to the FTAIA (collectively, the "FTAIA Motions").[1]  The brief is limited to a discussion of the effect of the amendments to two Circuit Court decisions, *United States v. Hsiung*, 778 F.3d 738 (9th Cir. 2015), and *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816 (7th Cir. 2015), on arguments made by the DAPs in opposition to the FTAIA Motions.  *See* ECF No. 4219.[2]

## I.    INTRODUCTION

The DAPs' price-fixing claims are based exclusively on their purchases of finished CRT Products, *i.e.*, televisions and monitors.  It is undisputed that the alleged price-fixing conduct in this case related not to those televisions and monitors but to the cathode ray tubes inside them, the

---

[1] These motions are (1) Defendants' Joint Motion re: Dell's Claim for Foreign Purchases (ECF Nos. 3003 (Motion), 3235 (Opposition), 3447 (Reply)); (2) Defendants' Joint Motion re: Plaintiffs' Indirect Purchaser Claims Based on Foreign Sales (ECF Nos. 3006 (Motion), 3287 (Opposition), 3452 (Reply)); (3) Defendants' Motion re: Plaintiffs' Failure to Distinguish Between Actionable and Non-Actionable Damages Under the FTAIA (ECF Nos. 3008 (Motion), 3272 (Opposition), 3442 (Reply)); (4) Defendants' Motion re: Failure to Establish "Gives Rise to" Prong of the FTAIA (ECF Nos. 3032 (Motion), 3272 (Opposition), 3443 (Reply)); and (5) Chunghwa's Motion re: Viewsonic's Foreign Purchases (ECF Nos. 3108 (Motion), 3249 (Opposition), 3477 (Reply)).

[2] "**DAPs**" as used herein include Electrograph Systems, Inc., and Electrograph Technologies Corp.; Office Depot, Inc.; CompuCom Systems, Inc.; Interbond Corporation of America; P.C. Richard & Son Long Island Corp.; MARTA Cooperative of America, Inc.; ABC Appliance, Inc.; Schultz Agency Services LLC on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC; Tech Data Corp. and Tech Data Product Management, Inc.; Best Buy Co., Inc., Best Buy Purchasing LLC, Best Buy Enterprise Services, Inc., Best Buy Stores, L.P., Bestbuy.com, L.L.C., and Magnolia Hi-Fi, LLC; Alfred H. Siegal, as Trustee of the Circuit City Stores, Inc. Liquidating Trust; Costco Wholesale Corp.; ViewSonic Corp.; Sears, Roebuck and Co. and Kmart Corp.; and Dell Inc. and Dell Products L.P.  "**Defendants**" include Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. (collectively, "Chunghwa"); LG Electronics, Inc.; Panasonic Corporation, Panasonic Corporation of North America, and MT Picture Display Co., Ltd.; Thomson SA and Thomson Consumer Electronics, Inc.; Toshiba Corporation, Toshiba America Electronic Components, Inc., Toshiba America, Inc., Toshiba America Consumer Products, LLC, and Toshiba America Information Systems Inc.; Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc., and Mitsubishi Electric Visual Solutions America, Inc.; Technologies Displays Americas LLC.; Samsung SDI America, Inc., Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Sdn. Bhd., Samsung SDI Mexico S.A. de C.V., Samsung SDI Brasil Ltda., Shenzhen Samsung SDI Co. Ltd. and Tianjin Samsung SDI Co., Ltd.; and Koninklijke Philips N.V., Philips Electronics North America Corporation, Philips Taiwan Limited, and Philips do Brasil, Ltda.

vast majority of which were manufactured and sold abroad.  These foreign transactions are governed by the FTAIA.  The FTAIA prohibits the imposition of antitrust liability for "conduct involving trade or commerce (other than import trade or import commerce) with foreign nations" unless that conduct had (1) "a direct, substantial, and reasonably foreseeable effect" on U.S. commerce, and (2) such effect "gives rise to" the plaintiff's claim.  *See* 15 U.S.C. § 6a(1), (2).  Taken together, these two elements are known as the "domestic effects" test.

As discussed in Part II-A below, the amended *Hsiung* decision, addressing criminal charges brought in connection with an alleged liquid crystal display ("LCD") panel conspiracy, puts to rest the DAPs' argument that they can proceed under the FTAIA's exclusion for "import commerce."  The DAPs advance this argument in all but one of their oppositions to the FTAIA Motions.[3]  But *Hsiung* explicitly limited "import commerce" to sales of price-fixed goods (in this case, tubes) by a foreign defendant to a United States customer.  No such transactions occurred between Defendants and DAPs here.

With respect to the type of foreign conduct that allegedly did occur here—price-fixing of a component part later incorporated into products sold to U.S. customers—the amended *Hsiung* decision held that under the facts of that criminal case, a rational jury "could have found" that such conduct, combined with direct imports of allegedly price-fixed components, had a "direct effect" on domestic commerce sufficient to satisfy the first element of the "domestic effects" test.  *Hsiung*, as amended, confirms that the only possible route to imposing antitrust liability for the foreign conduct at issue in this case is through the "domestic effects" exception.

DAPs have alternatively argued, in opposition to all of the FTAIA Motions, that their claims meet the "domestic effects" test.  As discussed in Part II-B below, however, both *Hsiung* and *Motorola* (as amended) impose additional roadblocks to these arguments.  Although DAPs might claim that the amended *Hsiung* decision supports their position regarding a direct domestic

---

[3] DAPs do not make the "import commerce" argument in opposition to the defense motion to exclude purchases by Dell's Foreign Affiliates outside the United States.  ECF Nos. 3003, 3235, 3447.  The effects of the amended *Motorola* decision on the Dell's Foreign Affiliates claims are discussed in the reply brief filed in connection with that motion and not repeated here.  *See* ECF No. 3447.  The effects of the decision on similar claims made by ViewSonic based on its foreign subsidiaries are discussed in ECF No. 3477.

effect, this is not correct. *Hsiung's* finding that the evidence sufficed to support the jury's finding was based in significant part on the presence of direct imports of price-fixed goods – facts that do not exist with respect to the foreign commerce at issue in these motions.  The amended *Hsiung* decision specifically re-affirmed a plaintiff's burden in the Ninth Circuit to prove a direct effect as an "immediate consequence" of the alleged price-fixing.  Even if DAPs here could make that showing under *Hsiung*, the amended *Motorola* opinion held that the standard for meeting the "domestic effects" exception in a private civil suit for damages is more stringent than in a criminal enforcement action brought by the U.S. Department of Justice.  *Motorola*, as amended, made clear that it is not enough to prove that foreign price-fixing conduct had *some* "direct, substantial and reasonably foreseeable" effects on commerce in the United States; DAPs must also prove that these direct effects "give rise to" each of their specific claims for damages.  That is not possible, as a matter of law, where, as here, DAPs are claiming only derivative injury based on the alleged "pass-through" of higher prices charged for allegedly price-fixed CRTs in foreign transactions.

The amended decisions confirm that DAPs' FTAIA arguments should be rejected.  At a minimum, as discussed in Part III-C below, the amendments do nothing to shore up DAPs' legally defective damages models or remedy their failure to segregate actionable versus non-actionable claims under the FTAIA.  Defendants' FTAIA Motions should therefore be granted.

## II.   ARGUMENT

### A.   The Amendments to *Hsiung* Preclude DAPs' Expansive Interpretation of the "Import Commerce" Exclusion As Applying to Finished CRT Products

DAPs try to avoid the FTAIA altogether by arguing that the alleged price-fixing of tubes manufactured abroad and incorporated into finished products sold to customers in the United States constituted "import commerce" excluded from the FTAIA.[4]  The Ninth Circuit's amended decision in *Hsiung* shows that DAPs' attempt to stuff the square peg of the foreign conduct at issue into the "import commerce" exclusion's round hole is without merit.

---

[4] *See* Opp. to Motion re: Pl.'s Indirect Purchaser Claims Based on Foreign Sales at 16-19 (ECF No. 3287); Opp. to Motion re: Pl.'s Failure to Distinguish Between Actionable and Non-Actionable Damages Under the FTAIA at 14-19 (ECF No. 3272); Opp. to Motion re: Failure to Establish "Gives Rise to" Prong of the FTAIA at 14-19 (ECF No. 3272); Opp. to Chunghwa's Motion re: Viewsonic's Foreign Purchases at 10-12 (ECF No. 3249).

Both the original and amended *Hsiung* decisions drew a clear distinction between "import commerce" and foreign non-import commerce subject to the "domestic effects" test.  The Ninth Circuit defined "import commerce" as "transactions between the foreign defendant producers of [LCD panels] and purchasers located in the United States."  *Hsiung*, 778 F.3d at 754-55 (citing and quoting *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 855 (7th Cir. 2012) ("[T]ransactions that are directly between the [U.S.] plaintiff purchasers and the defendant cartel members *are* the import commerce of the United States . . . .")); *see United States v. Hsiung*, 758 F.3d 1074, 1090 (9th Cir. 2014).[5]  On the other hand, "nonimport trade with foreign nations" is not subject to an antitrust claim unless the "domestic effects" test is met.  *Hsiung*, 778 F.3d at 756-57.  Under facts similar to those alleged here—an alleged conspiracy to fix prices of LCD panels later incorporated into finished LCD products—the *Hsiung* court found that claims based on "foreign sales of panels that were incorporated into finished consumer products ultimately sold in the United States" were subject to the "domestic effects" test and not the "import commerce" exclusion.  *Id.* at 758.

The January 2015 amendment to the *Hsiung* decision further underscored the need to analyze the foreign price-fixing of a component not sold directly into the United States under the "domestic effects" test and not as "import commerce."  In its original opinion, the court, analyzing the sufficiency of claims under the deferential standard applicable to criminal convictions, *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"), only addressed the proof offered regarding "import commerce."  Because evidence that one of the defendants "imported over one million price-fixed panels per month into the United States," 778 F.3d at 756, satisfied the import commerce exclusion, the court found it unnecessary to decide whether the evidence was sufficient to meet the "domestic effects" test.  *See Hsiung*, 758 F.3d at 1091-92 ("We do not need to reach . . . the defendants' sufficiency of the evidence challenge on domestic effects because sufficient evidence supported the alternate ground of conviction, the import trade

---

[5] The court noted that the Third Circuit has adopted a broader definition of "import commerce," but stated that it need not address the "outer bounds of import trade," since the transactions at issue involved the "heartland situation of the direct importation of foreign goods in the United States."  *Hsiung*, 778 F.3d at 755 n.8.

theory.").  In its amended decision, the court changed course and elected to decide the question of whether the evidence was sufficient to satisfy the "domestic effects" test, finding that "[l]ooking at the conspiracy as a whole" under the deferential *Jackson* standard, "the conduct was sufficiently 'direct, substantial and reasonably foreseeable' with respect to the effect on United States commerce."  *Hsiung*, 778 F.3d at 759.

Contrary to DAPs' arguments, the *Hsiung* court analyzed "the overseas sale of panels for incorporation into products destined for sale in the United States" and evidence that the conspirators understood "that the practical upshot of the conspiracy would be and was increased prices to customers in the United States" only in the context of determining whether the evidence supported the "domestic effects" exception.  *See id.* at 757, 759.  If the "import commerce" exclusion were as broad as DAPs say it is, the *Hsiung* court would have had no need to amend its opinion to discuss evidence supporting a "domestic effect" with respect to the overseas sales of panels incorporated into finished products sold in the United States, as those could simply have been included as "import trade."  *See id.* at 757 (noting that the indictment alleged "both import trade of panels and the effects of foreign sales on domestic commerce").

DAPs' opposition briefs confirm that their claims are based on domestic purchases of finished products, not the price-fixed tubes contained within those products.  *See, e.g.*, ECF No. 3272-3 at 1-2 n.2 (defining "CRT Products" as "finished products containing a CRT (*i.e.*, computer monitors and televisions)"; *id.* at 15 ("DAPs' Sherman Act claims are comprised entirely of purchases of Defendants' own CRT Products in the U.S. directly from the Defendants or their subsidiaries and affiliates"); *id.* at 4 ("Every single state law claim is based on antitrust injury arising out of the purchase of a CRT product *in the United States.*") (emphasis in original); *id.* at 19 ("every claim at issue is based upon Plaintiffs' purchases of CRT Products in the U.S.").  Because none of DAPs' claims involved the direct importation of price-fixed tubes, the import commerce exclusion does not apply.

**B.**   **The Amended *Hsiung* and *Motorola* Decisions Both Support a Finding That DAPs Cannot Meet the "Domestic Effects" Test**

**1.**   **Under the Amended Decisions, DAPs Cannot Show a Direct Effect on U.S. Commerce**

The evidence found sufficient in the amended *Hsiung* decision to prove a "direct effect" highlights the DAPs' comparable lack of proof with respect to the "domestic effects" exception here.  One of the first pieces of evidence cited by the Ninth Circuit to support its holding under the domestic effects exception was the fact that "some of the panels [more than one million per month by one of the charged defendants] were imported directly into the United States."  *See Hsiung*, 778 F.3d at 759.  The court also reviewed evidence as to the "variety of arrangements" as to where and how the panels were incorporated into finished products, specifically citing examples where there was no doubt that the LCD panels would enter the United States as finished products after only a single step between the foreign panel seller and the U.S. product buyer. *Id.*  Based on this evidence, the court concluded that "[l]ooking at the conspiracy as a whole," a rational jury "could have found" that the conspiracy had a direct effect on U.S. commerce.  *Id.*  The amended *Hsiung* decision nonetheless re-affirmed the Ninth Circuit's strict test for determining when an effect is direct: whether "it follows as an immediate consequence of the defendant[s'] activity."  *Id.* at 758 (quoting *United States v. LSL Biotechnologies*, 379 F.3d 672, 680-81 (9th Cir. 2004) ("*LSL*")).  Where the "direct connection" is "speculative" or "insulated by multiple disconnected layers of transactions," the FTAIA bars recovery.  *Hsiung*, 778 F.3d at 759.

By contrast, DAPs' briefing makes clear that they cannot show that any domestic effect was an "immediate consequence" of Defendants' foreign conduct for the simple reason that they have no evidence "that would allow the identification of *each* particular CRT contained in *each* of the millions of different CRT Products that were sold by Defendants and co-conspirators during the conspiracy period and, moreover, where that CRT was manufactured and first sold and to whom."  ECF No. 3272 at 30 (emphasis in original). In other words, DAPs have no way to prove which, if any, of their specific purchases of CRT products contain CRTs that could satisfy the "direct" domestic effects test.  Nor do DAPs dispute the evidence that the distribution chains for CRT products involved multiple steps and entities, including CRT distributors, original design

1  manufacturers, original equipment manufacturers, and electronic product distributors.  *See* ECF

2  No. 3006 at 3.  Given DAPs' admission that they cannot and never will be able to show how many

3  stops the tubes at issue made along this complex supply chain, neither this Court nor a jury will

4  ever be able to determine how many "layers of transactions"—how many intervening steps, third

5  parties, and independent pricing decisions—stood between Defendants and Plaintiffs.  *See Hsiung*,

6  778 F.3d at 759.

7          The above conclusion is also fully consistent with the amended decision in *Motorola*.

8  There, the Seventh Circuit rejected antitrust claims based on Motorola's purchases of non-price-

9  fixed cellphones from its own subsidiaries that had, in turn, purchased allegedly price-fixed LCD

10  panels from defendants abroad.  The court originally held that the effect of these foreign LCD

11  panels purchases on the U.S. cellphone market was indirect.  In the amended decision, the court

12  simply assumed that the "ripple effect" on the U.S. cellphone market from foreign LCD panel

13  sales "might well be" sufficient to satisfy the less stringent standard adopted by the Second and

14  Seventh Circuits for "directness" under the first prong of the domestic effects test, but nevertheless

15  held that this effect did not "give rise to" Motorola's claims.  *See Motorola*, 775 F.3d at 819; *see*

16  *also Hsiung*, 778 F.3d at 778 n.9 (explaining that the Ninth Circuit has adopted the "immediate

17  consequence" test for directness, which is stricter than the "reasonably proximate causal nexus

18  [test]" adopted by the Second and Seventh Circuits).  Although the Seventh Circuit noted that any

19  effect on the United States in that case was "less direct" than where cartelists sell a price-fixed

20  component directly to a plaintiff in the United States and "probably was modest," the court was

21  not prepared to hold that the FTAIA's "direct" effect requirement "would *definitely* block

22  liability" where there was only a single step between the defendants and the plaintiff, *i.e.*, where

23  the plaintiff's subsidiary directly purchased the price-fixed component and incorporated it into a

24  finished product then sold to the plaintiff.  775 F.3d at 819 (emphasis in original).

25          Unlike in *Motorola*, DAPs here do not and cannot contend that all of the CRT products

26  they purchased involved only a single step between them and Defendants; DAPs do not know

27  whether there was one step or many.  Nor do they dispute Defendants' evidence that CRTs and

28  CRT products were sold through various multi-step and multi-entity distribution chains.  As a

1   result, DAPs can offer no principled basis for a fact finder to conclude anything one way or

2   another about the "ripple effect" that alleged CRT price fixing abroad may have had on the prices

3   of CRT products sold in the United States or to find that the effect was "direct" enough to allow

4   DAPs' claims to proceed, under either the Seventh Circuit's more liberal standard or the stricter

5   "immediate consequences" standard imposed in the Ninth Circuit.  *See Motorola*, 775 F.3d at 819

6   (quoting *Minn-Chem*, 683 F.3d at 856-57) (effects on commerce must be "direct" rather than

7   "remote"); *LSL*, 379 F.3d at 681 ("An effect cannot be 'direct' where it depends on . . . uncertain

8   intervening developments."); *see also Hsiung*, 778 F.3d at 758 (government expert's ambiguous

9   testimony as to "'the exact flow of how panels go from the plants of the [conspiracy] participants

10  into a product' . . . raises a question regarding whether the effects were sufficiently direct to

11  uphold a verdict based on the domestic effects claim").[6]

### 2.   DAPs Cannot Meet the "Gives Rise To" Prong

13          Wholly apart from the "direct effect" test, the amended decisions support Defendants'

14  argument that summary judgment must also be granted against the DAP claims on an entirely

15  separate ground: the FTAIA's "gives rise to" requirement.  This requirement was not discussed at

16  any length in the amended *Hsiung* decision because, as the amended *Motorola* decision pointed

17  out, there are "differences between a private damages suit and a government suit seeking criminal

18  or injunctive remedies."  775 F.3d at 826.  It is not enough for DAPs to prove, as it was for the

19  government in *Hsiung*, that *some* requisite direct effects were felt in the United States; rather, the

20  FTAIA bars DAPs' private antitrust claims unless they prove that such effects gave rise to their

21  specific damages claims.  *See id.* at 818-20, 824-27 (Motorola's damages claims could proceed as

---

22  [6] The facts in this case also differ from *Motorola* in two significant ways.  First, there were only

23  two markets in *Motorola* – the panel market and the finished product (in that case, cellphones) market.  Motorola and its subsidiaries were both in the finished product market, eliminating further "ripples" from the defendants to the plaintiff.  *See* 775 F.3d at 819.  Here, Defendants were

24  in the CRT market, the tubes were sold into the finished product manufacturing market, and the manufacturers sold the finished products to the plaintiffs in the retail market or in some cases to distributors who in turn sold to plaintiffs,  Thus in this case at least one, and possibly many more,

25  layers were involved in the distribution chain.  Second, the U.S. plaintiff Motorola determined the price and quantity of LCD panels to be purchased by its subsidiaries and then purchased, for resale

26  in the United States, the cellphones incorporating those panels from its own subsidiaries.  *See id.*

27  at 822.  The alleged price-fixing therefore had a much more direct effect on a U.S. plaintiff than here, where the DAPs had no involvement in CRT price negotiations.

1  to the small number of LCD panels that were directly imported, but summary judgment was

2  required on all claims where the panels were first sold abroad); *see also F. Hoffmann-La Roche*

3  *Ltd. v. Empagran S.A.*, 542 U.S. 155, 174 (2004) ( "gives rise to" prong  requires that the

4  necessary effect on U.S. commerce gives rise to "'the plaintiff's claim'" or "'the claim at issue'");

5  *Hsiung*, 778 F.3d at 758-59 (confirming that "but-for" causation cannot suffice for the "gives rise

6  to" prong and that a proximate cause standard must apply).

7       The original and amended *Motorola* opinions both concluded that Motorola could not meet

8  the "gives rise to" prong of the FTAIA with respect to price-fixed sales overseas, because most of

9  Motorola's damages claims arose out of the foreign effect of LCD panel sales at inflated prices,

10  not from any anticompetitive effect in the U.S.  775 F.3d at 819-20.  After the original opinion

11  was issued, the DOJ joined others in asking the court to vacate its ruling.  The DOJ then filed an

12  amicus brief asking only that the court confirm that the government could seek "criminal or

13  injunctive remedies" if price-fixing had the "requisite statutory effect on cellphone prices in the

14  United States"; the DOJ did not request a finding "that the defendants' conduct gave rise to an

15  antitrust damages remedy for Motorola."  *See id.* at 825.  In its amended opinion the Seventh

16  Circuit agreed with this position, noting that the DOJ "was successful in its criminal prosecution

17  against AU Optronics [in the *Hsiung* case] for conduct that Motorola seeks, improperly as we

18  believe, to recover damages for in this case."  *Id.* at 826.

19       The amended *Motorola* decision recognized that, because the DOJ considers the views of

20  foreign nations before bringing enforcement actions, the court could permit DOJ prosecutions

21  "while addressing the concerns raised by China, Japan, Korea, and Taiwan about an unduly

22  expansive application of U.S. law that they claim would undermine principles of international

23  comity."  775 F.3d at 827 (internal quotation marks and citation omitted).  But "comity

24  considerations with private plaintiffs are quite different.  Private plaintiffs often are unwilling to

25  exercise the degrees of self-restraint and consideration of foreign governmental sensibilities

26  generally exercised by the U.S. Government."  *Id.* (internal quotation marks and citation omitted).

27       Under the amended *Motorola* decision, a private plaintiff is held to a strict showing that it

28  meets the "gives rise to" prong of the domestic effects exception.  A plaintiff may not meet the

1  "gives rise to" prong by relying on derivative or indirect harm or on generalized allegations that a

2  foreign conspiracy setting prices on component parts raised prices on finished products in the

3  United States.  *See* 775 F.3d at 819 (Motorola's claim that defendants' "conduct increased the cost

4  to Motorola of the cellphones it bought from its foreign subsidiaries" did not meet "gives rise to"

5  test where "the cartel-engendered price increase in the components and in the price of cellphones

6  that incorporated them occurred entirely in foreign commerce").[7]  Yet, as demonstrated in the

7  pending motions, DAPs rely solely on generic statistical models that use aggregate, worldwide

8  numbers to come up with average overcharge rates for television and monitor tubes, and then

9  estimate their supposed damages based only on industry-wide pass-through rates.  *See* ECF No.

10  3443 at 9-10.  The amended *Motorola* decision further supports the authorities cited in

11  Defendants' briefs and the conclusion that this type of derivative or indirect harm cannot satisfy

12  the "gives rise to" requirement in private antitrust suit.  *See id.*; *see also* ECF No. 3452 at 14-15.

13  **C.**   **No Matter How They Are Interpreted, the Amended Decisions Do Not
          Remedy DAPs' Failure to Segregate Their Damages Calculations
14        by Those Actionable and Non-Actionable Under the FTAIA**

15  Defendants anticipate that DAPs will argue for alternative interpretations of the amended

16  decisions that allegedly support their claims, *e.g.*, by arguing that any form of import commerce is

17  sufficient or that *Hsiung* and *Motorola* allow a finding that price-fixed sales overseas have direct

18  effects on U.S. commerce.  Regardless of whether the Court accepts Defendants' view of the

19  amendments or a DAP alternative, there is no reading of the amended decisions that helps DAPs

20  stave off summary judgment on all of their damages claims due to their incurable failure to

21  distinguish between actionable and non-actionable transactions under the FTAIA.  *See* Defs.' Mot.

22  for Summary Judgment Based Upon Pls.' Failure to Distinguish Between Actionable and Non-

23  Actionable Damages Under the FTAIA at 4-10 (ECF No. 3008).

24  The damages models that DAPs have submitted, and hence all of DAPs' damages claims,

25  fail under any interpretation of the amended decisions' discussions of the FTAIA—broad or

---

[7] Just as the Seventh Circuit in *Motorola* accepted *Hsiung's* decision allowing the DOJ to proceed, *see Motorola*, 775 F.3d at 827, the amended *Hsiung* opinion appears to endorse *Motorola's* amended opinion finding a direct effect on commerce that would suffice for criminal prosecution but not for a private antitrust claim.  *See Hsiung*, 778 F.3d at 760.

1  narrow—because DAPs' experts admit that they used global sales data to calculate an average

2  overcharge estimate. This worldwide data necessarily included sales of tubes that never entered

3  the United States. *See* ECF No. 3008 at 5-9. DAPs cannot contend that either of the amended

4  decisions would find overcharges on such purely foreign transactions to be actionable under the

5  FTAIA, yet DAPs have presented only a single lump sum overcharge estimate and have done

6  nothing to limit their analyses to tubes that immediately, or even eventually, ended up in the U.S.

7  *See* McClave Tr. 109:7-21, 110:12-15, June 25, 2014 (attached as Exhibit 7 to Declaration of

8  Jennifer M. Stewart in Support of Defendants' Joint Motion for Summary Judgment ("Stewart

9  Decl."), ECF Nos. 3007-1, 3008-2); Rao Tr. 239:3-10, 115:13-116:10, June 10, 2014 (attached as

10 Exhibit 8 to the Stewart Decl.).

11     If anything, the amended decisions further undercut DAPs' conclusory response to

12 Defendants' motion because each decision focuses on the distinct proof needed under different

13 aspects of the FTAIA, DAPs responded that their damages models pass muster under the FTAIA,

14 first, because they are relying on the import commerce exclusion. *See* ECF No. 3272 at 15 ("that

15 exclusion alone defeats Defendants' Motion with respect to such claims"). Assuming DAPs argue

16 that the amended decisions support that theory, then their inclusion of global data in calculating

17 damages (as distinct from data based on U.S. imports or domestic sales of tubes alone) is clearly

18 improper because none of the purely foreign sales of tubes relied on by the DAPs' experts to

19 calculate the alleged overcharge and damages could ever qualify as import commerce.

20     Alternatively, DAPs argued that both their Sherman Act and state law claims are all

21 actionable under the "domestic effects" exception. *Id.* at 19. Again assuming the DAPs interpret

22 the amended decisions as supporting this argument, their damages models would still be legally

23 deficient, as they include sales data for tubes that never entered the United States at all and thus

24 could not be actionable under even the broadest possible definition of the domestic effects

25 exception. *See id.*

26     Finally, even if DAPs could advance a colorable argument under the amended decisions

27 for applying the import commerce exclusion to some part of their damages and the domestic

28 effects exception to another portion, the global lump sum overcharge analyses they have presented

as their exclusive proof of damages nowhere make such a distinction.  Put another way, even if the jury wanted to award some amount of damages based on import commerce, and/or some amount based on the domestic effects theory, DAPs have provided no competent evidence from which the jury could determine which damages, if any, are allowable under which theory.  Global price data and alleged overcharges on all tubes sold worldwide cannot, by definition, create a proper model for damages that either did not involve foreign sales (DAPs' alleged "import commerce") or that DAPs can recover only by providing evidence to satisfy both the "direct" and "gives rise to" requirements of the  "domestic effects" exception.

In short, the amended decisions cannot save DAPs' damages models because, regardless of how the decisions are interpreted, there is no way for the jury to identify and disaggregate foreign purchases that are not actionable under the FTAIA from the overcharge calculations or to distinguish between damages recoverable under one theory but not another.  Such a damages model runs afoul of the Supreme Court's *Comcast* decision, which expressly held that antitrust experts cannot rely on damages models that include both actionable and nonactionable claims (in that case, under liability theories which plaintiffs had abandoned). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) ("any model supporting a 'plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation'"); *see also In re Rubber Chems. Antitrust Litig.*, 504 F. Supp. 2d 777, 784 (N.D. Cal. 2007) (rejecting plaintiffs' characterization of allegations under the Sherman Act and FTAIA as a "single 'claim' that cannot be split or analyzed for its separate domestic and foreign components"); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5477313, at *8 (N.D. Cal. Dec. 31, 2010) ("If IP Plaintiffs are unable to present sufficient evidence of this nature, and are unable to segregate foreign from domestic transactions, all of their damage claims would fail.").

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court grant the FTAIA Motions in their entirety.

1

DATED: January 11, 2016                        **MUNGER, TOLLES & OLSON LLP**

2
                                               By: */s/ Brad D. Brian*_____
3                                              BRAD D. BRIAN (SBN 079001)
                                               brad.brian@mto.com
4                                              GREGORY J. WEINGART (SBN 157997)
                                               gregory.weingart@mto.com
5                                              SUSAN E. NASH (SBN 101837)
                                               susan.nash@mto.com
6                                              E. MARTIN ESTRADA (SBN 223802)
                                               martin.estrada@mto.com
7                                              MUNGER, TOLLES & OLSON LLP
                                               355 South Grand Avenue, Thirty-Fifth Floor
8                                              Los Angeles, CA 90071-1560
                                               Telephone: (213) 683-9100
9                                              Facsimile: (213) 687-3702

10                                             *Attorneys for Defendant LG Electronics, Inc.*

11                                             **WINSTON & STRAWN LLP**

12
                                               By: */s/ Jeffrey L. Kessler*_____
13                                             JEFFREY L. KESSLER *(pro hac vice)*
                                               ALDO A. BADINI (257086)
14                                             EVA COLE *(pro hac vice)*
                                               MOLLY M. DONOVAN *(pro hac vice)*
15                                             WINSTON & STRAWN LLP
                                               200 Park Avenue
16                                             New York, New York 10166-4193
                                               Telephone: (212) 294-6700
17                                             Facsimile: (212) 294-4700
                                               Email: jkessler@winston.com
18
                                               STEVEN A. REISS *(pro hac vice)*
19                                             DAVID L. YOHAI *(pro hac vice)*
                                               ADAM C. HEMLOCK *(pro hac vice)*
20                                             WEIL, GOTSHAL & MANGES LLP
                                               767 Fifth Avenue
21                                             New York, New York 10153-0119
                                               Telephone: (212) 310-8000
22                                             Facsimile: (212) 310-8007
                                               Email: steven.reiss@weil.com
23
                                               *Attorneys for Defendants Panasonic Corporation*
24                                             *(f/k/a Matsushita Electric Industrial*
                                               *Co., Ltd.), Panasonic Corporation of North*
25                                             *America, and MT Picture Display Co., Ltd.*

26

27

28

**JENNER & BLOCK LLP**

By: /s/ *Terrence J. Truax*
JENNER & BLOCK LLP
Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
Gabriel A. Fuentes (*pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
ttruax@jenner.com
mbrody@jenner.com
gfuentes@jenner.com

Brent Caslin (Cal. Bar. No. 198682)
JENNER & BLOCK LLP
633 West Fifth Street, Suite 3600
Los Angeles, California 90071
Telephone: (213) 239-5100
Facsimile: (213) 239-5199
bcaslin@jenner.com

Harold A. Barza (Cal. Bar. No. 80888)
halbarza@quinnemanuel.com
Kevin Y. Teruya (Cal. Bar. No. 235916)
kevinteruya@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

Ryan S. Goldstein (Cal. Bar No. 208444)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
ryangoldstein@quinnemanuel.com
NBF Hibiya Building, 25F
1-1-7, Uchisaiwai-cho, Chiyoda-ku
Tokyo 100-0011, Japan
Telephone:     +81 3 5510 1711
Facsimile:     +81 3 5510 1712

*Attorneys for Defendants Mitsubishi Electric
Corporation, Mitsubishi Electric US, Inc., and
Mitsubishi Electric Visual Solutions America, Inc.*

1
                  **WHITE & CASE LLP**

2
                  By: */s/ Lucius B. Lau*

3
                  Christopher M. Curran (pro hac vice)
                  ccurran@whitecase.com
                  Lucius B. Lau (pro hac vice)

4
                  alau@whitecase.com
                  Dana E. Foster (pro hac vice)

5
                  defoster@whitecase.com
                  701 Thirteenth Street, N.W.

6
                  Washington, DC  20005
                  tel.: (202) 626-3600

7
                  fax: (202) 639-9355

8
                  *Attorneys for Defendants Toshiba Corporation,*
                  *Toshiba America, Inc., Toshiba America*

9
                  *Information Systems, Inc., Toshiba America*
                  *Consumer Products, L.L.C., and Toshiba America*

10
                  *Electronic Components, Inc.*

11
                  **GIBSON, DUNN & CRUTCHER LLP**

12
                  By: */s/ Rachel S. Brass*

13
                  JOEL S. SANDERS (Cal. Bar. No. 107234)
                  Email: jsanders@gibsondunn.com

14
                  RACHEL S. BRASS (Cal. Bar. No. 219301)
                  Email: rbrass@gibsondunn.com

15
                  AUSTIN V. SCHWING (Cal. Bar. No. 211696)
                  Email: aschwing@gibsondunn.com

16
                  GIBSON, DUNN & CRUTCHER LLP
                  555 Mission Street, Suite 3000

17
                  San Francisco, CA 94105
                  Telephone: (415) 393-8200

18
                  Facsimile: (415) 393-8306

19
                  WILLIAM S. FARMER, SBN 46694
                  Email: WFarmer@FBJ-law.com

20
                  DAVID BROWNSTEIN, SBN 141929
                  Email: DBrownstein@FBJ-law.com

21
                  JACOB ALPREN, SBN 235713
                  Email: JAlpren@FBJ-law.com

22
                  FARMER BROWNSTEIN JAEGER LLP
                  235 Montgomery Street, Suite 835

23
                  San Francisco California 94104
                  Telephone (415) 962-2876

24
                  Facsimile: (415) 520-5678

25
                  *Attorneys for Defendants Chunghwa Picture Tubes,*
                  *Ltd. and Chunghwa Picture Tubes (Malaysia) Sdn.*

26
                  *Bhd.*

27

28

**FAEGRE BAKER DANIELS LLP**

By: */s/ Kathy L. Osborn*
KATHY L. OSBORN (pro hac vice)
Email: kathy.osborn@FaegreBD.com
RYAN M. HURLEY (pro hac vice)
Email: ryan.hurley@FaegreBD.com
FAEGRE BAKER DANIELS LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000

JEFFREY S. ROBERTS (pro hac vice)
Email: jeff.roberts@FaegreBD.com
FAEGRE BAKER DANIELS LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
Telephone: (303) 607-3500
Facsimile: (303) 607-3600

*Attorneys for Defendants Thomson SA and Thomson Consumer Electronics, Inc.*

**SQUIRE PATTON BOGGS (US) LLP**

By: */s/ Nathan Lane, III*
MARK C. DOSKER
Email: mark.dosker@squirepb.com
NATHAN LANE, III
Email: nathan.lane@squirepb.com
275 Battery Street, Suite 2600
San Francisco, CA 94111
Telephone: (415) 954-0200
Facsimile: (415) 393-9887

DONALD A. WALL (pro hac vice)
Email: donald.wall@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
1 East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 528-4000
Facsimile: (602) 253-8129

*Attorneys for Defendant Technologies Displays Americas LLC with respect to all cases except Sears, Roebuck and Co., et al. v. Technicolor SA, et al.*

1

**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**

2

By: /s/ Jeffrey I. Zuckerman
3  Jeffrey I. Zuckerman (pro hac vice)
   1717 Pennsylvania Avenue, N.W.
4  Washington, D.C. 20006
   Telephone: (202) 452-7350
5  Facsimile: (917) 368-7350
   Email: jzuckerman@curtis.com

6

7  Arthur Gaus (SBN 289560)
   DILLINGHAM & MURPHY, LLP
8  601 California Street, Suite 1900
   San Francisco, California 94108
9  Telephone: 415.397.2700
   Facsimile: 415.397-3300
10  Email: asg@dillinghammurphy.com

11  *Attorneys for Defendant Technologies Displays
    Americas LLC with respect to Sears, Roebuck and*
12  *Co., et al. v. Technicolor SA, et al., and Office
    Depot, Inc. v. Technicolor, SA, et al.*

13  **BAKER BOTTS L.L.P**

14

By: /s/ John T. Taladay
15  JOHN M. TALADAY (*pro hac vice*)
    ERIK T. KOONS (*pro hac vice*)
16  BAKER BOTTS L.L.P.
    1299 Pennsylvania Ave., N.W.
17  Washington, DC 20004-2400
    Telephone: (202) 639-7700
18  Facsimile: (202) 639-7890
    Email: john.taladay@bakerbotts.com
19  Email: erik.koons@bakerbotts.com

20  JON V. SWENSON (SBN 233054)
    BAKER BOTTS L.L.P.
21  1001 Page Mill Road
    Building One, Suite 200
22  Palo Alto, CA 94304
    Telephone: (650) 739-7500
23  Facsimile: (650) 739-7699
    E-mail: jon.swenson@bakerbotts.com

24

*Attorneys for Defendants Koninklijke Philips N.V.,*
25  *Philips Electronics North America Corporation,
    Philips Taiwan Limited, and Philips do Brasil, Ltda.*

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

By:     */s/ Michael W. Scarborough*
GARY L. HALLING (66087)
Email:  ghalling@sheppardmullin.com
JAMES L. McGINNIS (95788)
Email:  jmcginnis@sheppardmullin.com
MICHAEL W. SCARBOROUGH (203524)
Email:  mscarborough@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:  (415) 434-9100
Facsimile:  (415) 434-3947

*Attorneys for Defendants Samsung SDI America, Inc., Samsung SDI Co., Ltd., Samsung SDI (Malaysia) Sdn. Bhd., Samsung SDI Mexico S.A. de C.V., Samsung SDI Brasil Ltda., Shenzhen Samsung SDI Co. Ltd. and Tianjin Samsung SDI Co., Ltd.*

13

14

15

Pursuant to Local Rule 5-1(i), the filer attests that the concurrence in the filing of this document has been obtained from each of the above signatories.

16

17

18

19

20

21

22

23

24

25

26

27

28

29374864.1

-18-

Case No. 3:07-cv-05944-JST; MDL 1917

DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING MOTIONS FOR SUMMARY JUDGMENT RELYING ON THE FTAIA