Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415-346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for*
*Indirect Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No.CV-07-5944-JST<br>MDL No. 1917 |
| This Document Relates to:<br>All Indirect Purchaser Actions | **CLASS ACTION**<br><br>**INDIRECT PURCHASER PLAINTIFFS' OBJECTION TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION RE: CALIFORNIA ATTORNEY GENERAL'S REQUEST FOR EXTENSION OF CLAIMS SUBMISSION DEADLINE**<br><br>Hearing Date:<br>Time:<br>Courtroom: Courtroom 9, 19th Floor<br>Judge: Hon. Jon S. Tigar<br>Special Master: Martin Quinn, JAMS |

On July 9, 2015, this Court issued an Order preliminarily approving a number of proposed settlements between the Indirect Purchaser Plaintiffs ("IPPs") and several Defendants in this litigation.  *See*, Amended Order Granting Preliminary Approval of Class Action Settlements with the Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson and TDA Defendants (the "Preliminary Approval Order") (Dkt. No. 3906). The Preliminary Approval Order authorized IPPs to notify class members of their opportunity to object, and of the deadline for submitting claims for purposes of sharing in the distribution of settlement funds.  Paragraph 19 of the Preliminary Approval Order set a deadline of "120 days from the Notice Publication Date," or December 7, 2015, for the submission of claims by class members.

The California Attorney General (the "CA AG") is litigating a companion *parens patriae* case in California state court, and has negotiated several settlements with many of the same Defendants involved in this case.  She seeks an extension of the December 7, 2015 claims submission deadline for California natural persons from December 7, 2015 to June 30, 2016.  The reason for the extension is to enable the CA AG to notify California natural persons in her proposed *parens patriae* settlements that they have an opportunity to submit a claim for damages in the settlements that are before the Court in this case.  IPPs have opposed this request.  *See* IPPs' Response to the California Attorney General's Statements of Interest (the "December 29, 2015 Filing"), attached hereto as Attachment A (*see also* Dkt. No. 4281 at 44).

On January 6, 2016, the Special Master issued a Report and Recommendation ("R&R") recommending the extension requested by the CA AG.  (Dkt. No. 4281.) For the reasons set forth herein, and as set out more fully in the December 29, 2015 Filing, IPPs object to this Recommendation.

In the R&R, Special Master Quinn notes "that the Court has the equitable power to move claim deadlines in order to facilitate and encourage the filing of claims." (R&R at 4.)  IPPs agreed with this contention at the hearing conducted before the Special Master and do not challenge it here.

In the R&R, Special Master Quinn also distinguishes between the posture of members of the IPP Settlement Class who are natural persons residing in California and those who reside

1

INDIRECT PURCHASER PLAINTIFFS' OBJECTION TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION RE CALIFORNIA ATTORNEY GENERAL'S REQUEST FOR EXTENSION OF CLAIMS SUBMISSION DEADLINES  -  Case No. 3:07-cv-5944-JST

elsewhere, because "California, and only California, brought a *parens* action." (*Id*.) IPPs recognize that the CA AG is the *only* attorney general pursuing a companion *parens patriae* suit in any of the 22 indirect purchaser states where qualifying claimants may also submit a claim for damages in the proposed settlements currently before this Court.

Perhaps because IPPs acknowledged the legitimacy of both of the above-referenced points, the Special Master also states that "Lead Counsel [for the IPPs] did not oppose this limited extension" of the deadline. (*Id.* at 5.) This is incorrect. Lead Counsel *did* oppose (and continues to oppose here) the proposed extension of the claims submission deadline. As the Special Master correctly notes, IPPs have voiced concern that the deadline extension "may engender objections" (*Id.* at 3) and cause "potential disruption to his settlement plan . . ." (*Id.* at 5). For these reasons, and as more fully stated in the December 29, 2015 Filing at 5-8, IPPs continue to oppose the requested extension of the claims deadline.

Accordingly, IPPs object to the Special Master's Recommendation and respectfully request that the Court review their December 29, 2015 Filing before acting on the R&R.

DATED: January 12, 2016

Respectfully submitted,

 */s/ Mario N. Alioto*
Mario N. Alioto (56433)
malioto@tatp.com
Joseph M. Patane (72202)
jpatane@tatp.com
Lauren C. Capurro (241151)
laurenrussell@tatp.com
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415-346-0679

***Lead Counsel for Indirect Purchaser Plaintiffs***

# ATTACHMENT A

1  Mario N. Alioto (56433)
2  Joseph M. Patane (72202)
   Lauren C. Capurro (241151)
3  TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
   2280 Union Street
4  San Francisco, CA 94123
   Telephone: 415-563-7200
5  Facsimile: 415- 346-0679
   Email: malioto@tatp.com
6  jpatane@tatp.com
   laurenrussell@tatp.com
7
   *Lead Counsel for*
8  *Indirect Purchaser Plaintiffs*

9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-JST<br><br>MDL No. 1917 |
|---|---|
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO THE CALIFORNIA ATTORNEY GENERAL'S STATEMENTS OF INTEREST**<br><br>Hearing Date: January 5, 2016<br>Time: 10:00 am<br>Court: JAMS<br>Special Master: Martin Quinn, JAMS<br><br>Judge:  Hon. Jon S. Tigar |

Class Counsel for the Indirect Purchaser Plaintiffs ("IPP Counsel" or "IPPs") submit this memorandum in response to the California Attorney General ("AG")'s October 8, 2015 Statement of Interest ("AG Statement," Dkt. No. 4118) and December 9, 2015 Supplemental Statement of Interest ("AG Supp. Statement"), lodged with the Special Master.

## I. Introduction

State Attorneys General often provide an invaluable function as it relates to the review and critique of proposed class action settlements. And the legislative history of the Class Action Fairness Act ("CAFA") supports the proposition that attorneys general may object when inadequate, collusive settlements are reached or where class lawyers do not meet their fiduciary obligations.

But none of these issues is presented here. No one reasonably questions whether IPP Counsel zealously and vigorously fought for the class over the thoroughly contested, eight-year litigation history of this case. Indeed, the comments submitted by the AG reinforce a number of fundamental points *supporting* approval of the settlements.

First, far from being a collusive settlement entered at the expense of the class, the aggregate value of $576,750,000, is clearly fair, reasonable and adequate. The AG does not contend to the contrary. (*See*, AG Statement at 2 ("the Attorney General does not object to the reasonableness of the settlements in the aggregate. . . .").)

Second, IPPs presented a notice plan when seeking preliminary approval of these settlements. That notice plan was approved by the Court and has now been implemented. IPPs submitted at the preliminary approval stage, and reiterate now, that the notice plan met the Fed. R. Civ. P 23(c)(2)(B) requirement that the notice be the "best notice that is practicable under the circumstances . . . ." The AG does not appear to dispute this point. (*See*, AG Supp. Statement at 10, n.12 (the AG "is not objecting on the ground that the notice itself is insufficient for due process or for Federal Rule of Civil Procedure Rule 23 opt-out/objection purposes. . . .").)

Third, IPPs have submitted a fee application to the Court seeking a 33% fee award for the exemplary settlement results obtained on behalf of the class. The AG does not oppose this fee award. (AG Supp. Statement at 13 (the AG "is not objecting to the size of the requested

1

INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO THE CALIFORNIA ATTORNEY GENERAL'S STATEMENTS OF INTEREST – Master File No. CV-07-5944-JST

percentage of the common fund for fees . . .").)

So if the aggregate settlement figure of $576 million was (clearly) adequate, notice to the class met the requirements of Rule 23, and the contingent fee sought by Class Counsel is not objectionable, what is the AG's objection? In sifting through the AG's statements, two themes emerge: (1) the allocation plan is purportedly unfair to natural persons because the notice plan has not given them a "fair and equitable opportunity to claim" vis-à-vis business claimants; and (2) the claim submission deadline of December 7, 2015 should be extended to facilitate coordination with the AG's notice of her separate *parens patriae* settlement in a state court case.

To bolster these unsupported arguments, the AG seeks production of detailed claims data to create a new evidentiary record. That record would have been unavailable when the original notice plan was submitted and approved for implementation by the Court at the preliminary approval hearing. This type of retroactive litigation regarding the adequacy of notice would set a dangerous precedent. It would reopen litigation of notice campaigns after they have been implemented, and enable hindsight critiques of notice implementation by objectors armed with claims data that is unavailable when notice plans are being devised and implemented. IPPs respectfully submit that, once a Court determines that a notice plan meets the due process and procedural requirements of Rule 23 (as conceded here by the AG), inquiries regarding notice adequacy are at an end. The AG has cited no authority to the contrary.

As set forth below, although these objections may be well-intentioned, they are not well-founded in the procedural requirements of Rule 23 or related class action settlement jurisprudence, and they should be rejected.

**II.   California's Recitations of CAFA and *Parens Patriae* Authority Have Nothing to do With the Criteria for Evaluating Whether the Proposed Settlements Are Fair, Reasonable and Adequate.**

"Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The AG discusses—at length—the legislative history of the CAFA, and her *parens patriae* authority. Neither modifies the "fair, reasonable and adequate" standard under which the Special Master, and ultimately the Court, are to determine whether to approve the proposed settlements. The AG recognizes, albeit in a footnote, that CAFA does not expand her authorities. (*See*, 28 U.S.C.A. §1715(f); AG Supp. Statement at 5, n.7.) And the reference to federal *parens patriae* authority conferred pursuant to 15 U.S.C. §15c(a)(1) for Sherman Act violations is confusing given that no one, including the AG, contends that federal law confers a *parens patriae* cause of action for damages for indirect purchasers.

Ultimately, the Special Master and the Court should evaluate the proposed settlements on the basis of whether they are fair, reasonable and adequate,[1] and the AG's lengthy recitation of CAFA and *parens* authority does nothing to modify that standard.

**III.   The Proposed Plan of Distribution is Fair, Reasonable and Adequate.**

"A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* MDL No. 02-1486, 2013 U.S. Dist. LEXIS 188116, at *330-31 (N.D. Cal. Jan. 8, 2013) (citations omitted). The Plan of Distribution in this case proposes a threshold minimum recovery for any qualified claimant from one of the Indirect Purchaser States Classes. For all claimants damaged above this minimum threshold, all remaining net settlement funds will be distributed on a *pro rata* basis based upon the claimants' total purchases of CRT Products.[2] The AG does not object to the proposed *pro rata* method of allocation, which is the preferred method of distributing settlement proceeds.[3]

---

[1] The "fair, reasonable and adequate" standard is evaluated at length in IPPs' Memorandum in Support of Final Approval, submitted November 20, 2015, at 14-22.

[2] *See* IPPs' Motion for Preliminary Approval of Class Action Settlements with Philips, Panasonic, Hitachi, Toshiba and Samsung SDI Defendants (Dkt. No. 3861), at 26-29; IPPs' Memorandum in Support of Final Approval, submitted November 20, 2015, at 22-23.

[3] *See, e.g., DRAM,* 2013 U.S. Dist. Lexis 188116, at 349 ("the proposed plan of distribution here is grounded in the educated prediction that all or virtually all of the settlement proceeds will be paid out *pro rata* to class members based upon the extent of damages suffered, which all counsel recognize as the preferred option in damage claim class action settlements.").

However, without any evidentiary basis for doing so, the AG posits a question "as to whether the notice plan affords an equal opportunity for natural persons to claim along with corporations." (AG Supp. Statement, at 9.)  In support of this question, the AG notes that in other settlements (notably *DRAM* and *LCD*) the notice campaign included television advertising; whereas in this case, notice was effectuated primarily via print media, internet banner advertising, and direct mail/email notification.[4] *Id*.  As television viewership becomes increasingly fragmented over hundreds of alternative television stations, with many viewers "cutting their cords" to cable altogether and downloading their television content commercial free via the internet, the choice to use alternative forms of media to reach indirect purchasers of CRT Products is an entirely defensible decision.

The AG argues that the use of these alternative forms of notice somehow placed the individual claimants at unfair disadvantage vis-à-vis corporate claimants.  But the AG provides no evidence that any particular medium used to effectuate notice (print, television, radio, email, internet banner ad, etc.) disproportionately favors one type of claimant (corporation vs. natural person) over the other.

As set forth in the Federal Judicial Center's guidance documents on the subject, a notice should have an effective "reach" to its target audience of 70-95%.  *See* Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges.* 3d ed. p. 27 (2010), http://www.fjc.gov/public/pdf.nsf/lookup/ClassGd3.pdf/$file/ClassGd3.pdf; *see also Swift v. Direct Buy, Inc.,* No. 2:11-cv-401-TLS, 2013 WL 5770633, at *3 (N.D. Ind. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class.").  The only record evidence submitted demonstrates that the net reach of the notice campaign implemented here was 83%, well within

---

[4] Although the AG places great emphasis on the "coordination" of the AG's state court case with this action, she fails to explain why the AG's suggestions were not provided at the preliminary approval stage so they could be considered ***before*** notice was implemented.  The AG received notice of the entire notice plan in late May 2015, when it was submitted as part of the motion for preliminary approval of the settlements, but she waited until after notice was implemented to raise the substantive critiques presented in the AG's Statements of Interest.  This is neither coordinated, nor efficient.

the Federal Judicial Center's target range. (*See* Declaration of Joseph M. Fisher Re: Cooper/Scarpulla Objection, ¶ 3, submitted to the Special Master on December 23, 2015.) The *DRAM* notice campaign, which the AG suggests should have been emulated, had a virtually identical reach of 84.2%.[5] The AG fails to explain how the 1.2% differential between the reach statistics obtained in the *CRT* notice plan, as compared to the *DRAM* notice plan, somehow deprived natural persons of an "equal opportunity" to claim vis-à-vis corporations. Both notice campaigns meet the Federal Judicial Center's target range. Thus, the pending settlements should be approved.

Finally, the AG suggests that if a distribution to claimants exceeds their single damages, any amount in excess of single damages should be distributed *cy pres* instead of directly to claimants. Although claims administration work is not yet complete, it appears based upon the claims that have been processed to date that claimants in this case will receive a distribution much closer to single than treble damages, potentially mooting the AG's argument. But even if the distribution were theoretically closer to trebled damages, the AG recognizes that treble-damage based distributions were allowed in the *LCD* claims administration process. (*See* AG Supp. Statement, at 14.)

### IV. The Claims Submission Deadline Should Not Be Extended Simply to Enable the AG to Provide Supplemental Notice in Her Unrelated *Parens* Settlements.

The AG also requests that the claims submission deadline be extended so that, when she implements notice of her settlements in her state court action, she may inform California natural persons that they may submit a claim for damages in *this* case. To be clear, none of the money recovered under the AG's settlements will be paid to California consumers. However, she wants to give notice to California consumers that they can nevertheless obtain money by making a claim against the settlement fund in this case. Arguing that the December 7, 2015 deadline was a "clerical error" (AG Supp. Statement, at 16), she seeks extension of the deadline to June 30, 2016 for this purpose (even though preliminary approval of her separate state court settlements has not yet been obtained).

---

[5] *See* Declaration of Shannon R. Wheatman, ¶18, attached as Exhibit D to the Declaration of Emilio Varanini in Support of Supplemental Statement of Interest.

First, there is no basis to conclude that the establishment of the December 7, 2015 claims submission deadline was a "clerical error," as suggested by the AG. The December 7 deadline, 120 days after publication of notice, was specifically ordered by the Court on July 9, 2015. *See* Dkt. No. 3906, ¶ 19 ("The Notices shall inform putative members of the Settlement Classes that the deadline for the submission of Claim Forms is 120 days from the Notice Publication Date."). In accordance with the Court's Order, notices were mailed, emailed, posted in internet banner advertising and published in paid print advertising across the country within 30 days of the Court's Order.[6]

Moreover, although the AG points to instances where claims submission deadlines extend beyond the final approval hearing date, many class action settlements present claim submission deadlines that *precede, or are coterminous with,* final approval.[7]

But perhaps the single biggest reason to adhere to the existing claims submission deadline is that an extension of that deadline could result in a skewing of additional claims in favor of corporate claimants, to the detriment of existing timely claims submitted by both natural person and corporate claimants. If the claims submission deadline is extended, with no corresponding notice of that extension provided to potential claimants (beyond the AG's notice to California natural persons), it stands to reason that consumers will be largely unaware that the deadline has been extended, resulting in only minimal additional consumer claimants.

That will not be the case for large corporate claimants. There is a robust claims administration "aggregator" market that frequently targets such large corporate claimants and

---

[6] *See* Declaration of Joseph M. Fisher Reporting on Class Notice, submitted November 20, 2015, ¶¶ 8-16.

[7] District Courts for the Northern District of California have readily approved settlement approval motions proposing claim deadlines that preceded the final approval hearing. *See, e.g., In re Abbott Labs. Norvir Anti-Trust Litig.,* Docket No. 04-CV-1511-CW (August 6, 2009 settlement approval hearing; July 24, 2009 claim deadline); *In re VeriFone Holdings, Inc. Secs. Litig.*, Master File No. 3:07-cv-06140-EMC (February 6, 2014 settlement approval hearing; January 29, 2014 claim deadline) ($95,000,000 settlement); *Rosenbaum Capital, LLC, v. McNulty,* No. 07-CV-0392-SC, (Conti J.) (June 26, 2009 settlement approval hearing; April 25, 2009 claim deadline); *In re Clarent Corp. Secs. Litig.*, No. C 01-03361 CRB (JCS) (March 25, 2005 first settlement approval hearing; March 4, 2005 claim deadline / July 14, 2005 second settlement approval hearing; July 6, 2005 claim deadline).

offers to submit claims on their behalf in exchange for a fee.  To the extent that such aggregators stimulate the submission of substantial additional large corporate claims, with no similar stimulation of additional consumer claims, the AG's requested extension may create precisely the consequence of which she currently complains; large corporate claims will be spurred to the detriment of consumer claimants, and will unfairly dominate the claims process.

The AG may respond that the claims submission deadline could be extended only for natural persons, and not businesses.  But such a modification would open up the settlement administration process to objectors, who could claim that such a one-sided extension is unfair to corporate claimants.  Or, the AG could suggest that only California claimants should receive an extension, but a non-California objector could then challenge the one-sided extension as being skewed against claims submission in their respective states.  ("Why do California claimants get an extension but not claimants from my state?")  Indeed, the AG's current proposal—to extend the claims deadline but only give notice to California natural persons—also exposes IPPs to objections that Californians are being favored over other states.  While the AG's duty is only to California natural persons, IPP Counsel have a fiduciary duty to protect the interests of *all* class members, and cannot be seen to favor Californians over class members in other states.

"In designing a plan of distribution for a settlement such as this involving a large number of different products and millions of class members, a delicate balance must be achieved between precision and administrative feasibility."  *DRAM,* 2013 U.S. Dist. LEXIS 188116, at *330.  The notice plan submitted at the preliminary approval stage, and approved and implemented by the Court, was delicately balanced to facilitate the submission of *both* consumer and business claimants in *all* states by the December 7, 2015 deadline.  Modifying that plan, or the claims administration deadline that was communicated to *both* consumer and business claimants in conjunction with it—in accordance with the AG's request— may skew the claims distribution process in unintended ways; expose the settlement administration process to *new* class action objectors (whether their objections are legitimate or not); and may delay settlement approval and implementation.

For these reasons, although IPP Counsel were originally hopeful that they could accommodate the AG's requests, it now appears that such accommodation would be prejudicial to the prompt approval of the pending settlements.

## V. Conclusion

The notice process submitted to the Court at the preliminary approval stage of these proceedings was approved by the Court. As implemented, it: (1) provided the "best notice practicable," in conformity with Rule 23 and due process considerations; (2) exceeded the minimum "reach" percentages specified by the Federal Judicial Center; and (3) enabled *both* consumer *and* business claimants from *all* states to submit requests for compensation from the net settlement fund by December 7, 2015.

The AG has not submitted an evidentiary basis for her challenge of the effectiveness of the notice campaign or the claims administration process. The only other reason articulated by the AG for delaying the notice and claims administration process is to enable her to provide additional notice to California natural persons in order to generate more claims, as part of a separate state *parens* settlement that has yet to receive even preliminary approval from the state court. This is not a sound basis to delay a 22-state claims administration process, and potentially open that administration process up to additional objections and litigation.

The IPPs have vigorously litigated this case and obtained an exemplary result for the class. The settlements should be approved, and no relief that could threaten or delay that approval should be granted to the AG.

Dated: December 29, 2015

Respectfully submitted,

*/s/ Mario N. Alioto*

Mario N. Alioto (56433)
malioto@tatp.com
Joseph M. Patane (72202)
jpatane@tatp.com
Lauren C. Capurro (241151)
laurenrussell@tatp.com
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123

Telephone: 415-563-7200
Facsimile: 415-346-0679

***Lead Counsel for Indirect Purchaser Plaintiffs***