UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917 |
| | Case No. C-07-5944 JST |
| This Order Relates To: | **ORDER ON DPP CLASS REPRESENTATIVE INCENTIVE AWARDS** |
| ALL DIRECT PURCHASER ACTIONS | |

Now before the Court is a motion for approval of incentive awards to each of ten Class Representatives for the Direct Purchaser Plaintiff ("DPP") class. See ECF No. 4056. The DPPs seek awards of $25,000 to each named Plaintiff, for a total of $250,000. No one has objected to the awards. See ECF No. 4114. The Court held oral argument on this motion on December 15, 2015. After careful consideration and good cause appearing, the Court now GRANTS the motion for the reasons set forth below.

I.  **BACKGROUND**

After eight years of litigation, the facts of this case are well known to parties. The Court recites only certain background facts to help explain the basis for this award.

The case is predicated upon an alleged conspiracy to price-fix cathode ray tubes ("CRTs"), a core component of tube-style screens for common devices including televisions and computer monitors.[1] This conspiracy ran from March 1, 1995 to November 25, 2007, involved many of the major companies that produced CRTs, and allegedly resulted in overcharges of millions, if not

---

[1] Perhaps ironically, CRT technology has now become largely obsolete. See J.R. Raphael, Obsolete Technology: 40 Big Losers, PC WORLD (Jan. 13, 2016, 9:12 AM), http://www.pcworld.com/article/169863/obsolete_tech.html?page=2.

1

billions, of U.S. dollars to domestic companies that purchased and sold CRTs or finished products containing CRTs for purposes of resale.[2]  A civil suit was originally filed in 2007, ECF No. 1, consolidated by the Joint Panel on Multidistrict Litigation shortly thereafter, see ECF No. 122, assigned to Judge Samuel Conti, see id., and ultimately transferred to the undersigned, see ECF No. 4162.

The Class Representatives named in the DPPs' Consolidated Amended Complaint ("DPCAC") for which incentive awards are sought are: (1) Crago, d/b/a Dash Computers, Inc.; (2) Arch Electronics, Inc.; (3) Hawel A. Hawel, d/b/a City Electronics; (4) Meijer, Inc. and Meijer Distribution, Inc.; (5) Nathan Muchnick, Inc.; (6) Princeton Display Technologies, Inc.; (7) Radio & TV Equipment, Inc.; (8) Royal Data Services, Inc.; (9) Studio Spectrum, Inc.; and (10) Wettstein and Sons, Inc. d/b/a Wettstein's (collectively, "Class Representatives" or "named Plaintiffs").  Settling Defendants include parent and/or subsidiary corporations of Chunghwa, Philips, Panasonic, LG, Toshiba, Hitachi, and Samsung SDI.  DPPs maintain their class suit against Mitsubishi and also have a settlement that was recently approved with Thomson and TDA.  See ECF No. 4260..

Given the length of the conspiracy, the resources of Defendants, and the potential value of recovery in this case, discovery has been unsurprisingly extensive.[3]  In connection with a separate motion, the parties noted that millions of pages of discovery have been produced and more than one hundred depositions have been taken.  See ECF No. 4055 at 9-10.  As relates to the instant motion, named Plaintiffs were required to spend time with their counsel reviewing drafts of the original complaint as well as the later-filed consolidated amended complaint; to review and respond to interrogatories and document requests; and to sit for deposition.  See ECF No. 4056-1 ("Zirpoli Decl.") ¶¶ 4-8.  Each named Plaintiff responded to a total of 75 separate document requests, and participated "in the collection of responsive hard copy documents and, in some cases,

---

[2] Products purchased for personal use fall within the scope of the Indirect Purchaser Plaintiff ("IPP") class and are not the subject of this order.
[3] Judicial resources expended on this case have also been significant.  During a period of eight years, the case has required consolidation by the Joint Panel on Multidistrict Litigation, assignment of two Article III judges to preside over just the Multidistrict Litigation, four Special Masters, support of uncounted staff assigned to the Special Masters, and continued work by approximately ten different judicial law clerks.

identification of ESI sources likely to contain responsive data, if applicable." Id. ¶ 5.  This sometimes required Class Representatives to "utilize[] software to extract extensive transactional database information . . . .  These document requests required the Class Representatives to search for and produce both hard copy and, in certain circumstances, electronic documents from multiple sources." Id.  In total, the Class Representatives produced over 12,000 pages of documents.  See id.

In addition to document requests, each Class Representative was required to review and respond to eight sets of interrogatories, totaling 78 separate interrogatories.  Id. ¶ 6.  Class Representatives also were required to keep abreast of major filings in the case -- the master docket for which spans over 4,000 entries -- and were required to review briefs and pleadings, consult with class counsel regarding litigation strategy or settlement negotiations, and discuss other matters with counsel. Id. ¶ 7.  Finally, each of the Class Representatives "spent a significant amount of time preparing for and being deposed."  Id. ¶ 8.[4]

None of the Class Representatives conditioned or were asked to condition their participation upon receipt of an incentive award or any benefit greater than that of any of the other class members.  Id. ¶ 3.  Even so, Class Representatives were required to devote a substantial amount of time and effort in this case not required of absent class members.

Absent class members will receive a pro rata share of the total class Settlement Fund (valued at $127.45 million).  The formula for each pro rata share is to take an individual's (or company's) purchase -- weighted at 100% of value for CRTs as components, 75% of value for computer monitors, and 50% of value for TVs -- divided by the total amount of (weighed) purchases in the entire class and multiply it by the value of the Settlement Fund.  See, e.g., ECF No. 2728 at 19.

/ / /

/ / /

/ / /

---

[4] A comparable account of time invested by the Class Representatives can be found in the declarations submitted with the previously referenced motion for attorneys' fees, ECF No. 4055-1 ¶¶ 51-52.

3

## II. LEGAL STANDARD

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). "Incentive awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. W. Pub. Corp., 563 F.3d 948, 958-59 (9th Cir.2009). Further,

> The district court must evaluate [incentive] awards individually, using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation.

Staton, 327 F.3d at 977 (citation and internal quotations and alterations omitted). District courts must scrutinize "all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1165 (9th Cir. 2013); see also id. at 1663; Staton, 327 F.3d at 977; Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 334-35 (N.D. Cal. Oct. 2, 2014).

## III. DISCUSSION

In this Circuit, an incentive award of $5,000 is presumptively reasonable, and an award of $25,000 or even $10,000 is considered "quite high." See Dyer, 303 F.R.D. at 335 (citing Harris v. Vector Mktg. Corp., No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)). Even so, upon consideration of each of the factors set forth in Staton, the Court finds that an incentive award of $25,000 per Class Representative is appropriate on the facts of this case.

First, the Class Representatives filed suit, thereby taking the first key step necessary to protect the interests of the class. Second, the class has benefited from these actions by receipt of a settlement currently valued at over $127 million dollars (and climbing). Third, and most importantly, the amount of time and effort each named Plaintiff expended in pursuing this litigation has been extensive. This litigation has continued far longer than most normal class actions and has required frequent and repeated work (document production, interrogatory responses, docket review, deposition preparation, etc.) in a volume greater than is normal for most

4

class action suits.  Class Representatives spent eight years responding to nine sets of document requests and eight sets of interrogatories totaling 78 separate interrogatory requests.  Named plaintiffs reviewed pleadings and motions, and sat for deposition.  Cf. Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 463 (E.D. Cal. 2013) (reducing named plaintiff's incentive award from the $7,500 requested to $2,500 because of disparity between the award to the named plaintiff and class members when there was "no evidence that plaintiff spent more time assisting counsel than occurs in the average case").  And fourth, the risk of retaliation was quite real.  Defendants are many of the larger names in the CRT-business industry.[5]  A Class Representative could reasonably have been concerned about a backlash from Defendants, reducing that Representative's business opportunities with respect to products manufactured, sold, or otherwise controlled by Defendants.

      Finally, the Court notes that the incentive rewards constitute a very small percentage of the class' total recover.  Given a recovery of over $127.45 million, a total of $250,000 spread among ten named plaintiffs is still only 0.196%.  C.f. Hopson v. Hanesbrands Inc., 2009 WL 928133, *10 (N.D. Cal. 2009) (approving $5,000 payment to plaintiff in wage and hour case, representing an unusually high but justified in the circumstances 1.25% of the settlement amount).

      When compared to other similar (or smaller) cases in this judicial district, the incentive awards here are well within the range of incentive awards granted by other courts.  See Harris, 2012 WL 381202, at *7 (collecting cases); In re High-Tech Employee Antitrust Litig., No. 11-CV-02509-LHK, 2015 WL 5158730, at *18 (N.D. Cal. Sept. 2, 2015) (awarding $120,000 and $80,000 to class representatives in a case that settled for $415 million, noting such awards were in line with "megafund" cases, and collecting cases); Glass v. UBS Fin. Servs., Inc., No. C-06-4068 MMC, 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007) aff'd, 331 F. App'x 452 (9th Cir. 2009) (approving award of $25,000 per class representative in a six-year case settling for $45 million where named plaintiffs provided help with informal discovery, insight into an industry, "placed something at risk by putting their names on a complaint against one of the largest brokerage

---

[5] For example, Samsung Group, part of the Samsung SDI Defendants, has $470.2 billion in assets and employs over 425,000 people.  See ECF No. 4055 at 18 n.6.

houses in America"); Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) ($50,000 to a class representative who assisted for four years in a case that settled for $65.5 million); see also Chu v. Wells Fargo Investments, LLC, Nos. C 05–4526 MHP, C 06–7924, 2011 WL 672645, *5 (N.D. Cal. Feb. 16, 2011) (awarding $10,000 to two plaintiff representatives involved in case for five years and $4,000 to three representative plaintiffs participating in case for two years, from a $6.9 million settlement fund); In re CV Therapeutics, Inc., Sec. Litig., No. C03-3709 SI, 2007 WL 1033478, at *2 (N.D. Cal. Apr. 4, 2007) (awarding $26,000 for reimbursement of time and expenses pursuant to statutory authority applicable to private securities litigation).

In light of the foregoing, the Court concludes that an award of $25,000 to each Class Representative is reasonable.

## IV. CONCLUSION

The Court hereby ORDERS that the Class Representatives shall each receive an incentive award in the amount of $25,000, for a total of $250,000. The incentive awards shall be paid from the Settlement Fund and the interest earned thereon.

IT IS SO ORDERED.

Dated: January 13, 2016

_____
JON S. TIGAR
United States District Judge