UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917 <br><br> Case No. C-07-5944 JST <br><br> **ORDER ON ATTORNEYS' FEES AND EXPENSES** |
| This Order Relates To: <br><br> ALL DIRECT ACTION PLAINTIFFS | |

Now before the Court is a motion for approval of attorneys' fees and reimbursement of expenses for the Direct Purchaser Plaintiff ("DPP") class. See ECF No. 4055 ("Mot."). DPPs originally sought $38,235,000 in combined attorneys' fees plus $1,927,392.12 in expenses, both to be paid from a settlement fund of $127,450,000.[1] No one objected. See ECF No. 4114 at 2. Plaintiffs subsequently reduced their expense demand to $1,534,748.94. See ECF No. 4264 ("Supp. Mot."). The Court held oral argument on this motion on December 15, 2015.

The Court has already granted final approval of the settlements and, by separate order, has approved incentive awards for ten named plaintiffs.[2] See ECF Nos. 4055-1 ¶¶ 59-67; 1412 (Chunghwa and Philips, settling for $10 million and $15 million, respectively); 1508 (Panasonic, settling for $17.5 million); 1621 (LG, settling for $25 million); 1791 (Toshiba, settling for $13.5 million); 3931 (Hitachi and Samsung SDI, settling for $13.45 million and $33 million, respectively), 4299 (approving incentive awards). After careful consideration and good cause

---

[1] Class Counsel already paid $2,867,395.32 in expenses directly from the Settlement Fund, as previously authorized by the Court. ECF Nos. 1506, 1507, 1833. In this motion, Class Counsel seek reimbursement of the balance of $1,927,392.12 that they advanced themselves.

[2] Since the instant motion was filed, the Court has granted final approval for a settlement between DPPs and Thomson. Fees for that settlement do not appear to be incorporated into this motion. See ECF No. 4260.

1

1  appearing, the Court now GRANTS the motion for attorneys' fees and reimbursement of expenses
2  for the reasons set forth below.

## I.   BACKGROUND

The parties are familiar with the facts of this case, and the Court has already summarized the relevant facts as to this settlement in a prior order.  See ECF No. 4260.

## II.   LEGAL STANDARD

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).  "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees.  Id. at 942.  "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."  Id.  "Applying this calculation method, courts [in the Ninth Circuit] typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."  Id. (citing Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)).  However, the benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors."  Six (6) Mexican Workers, 904 F.2d at 1311.  "[W]here awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead."  Id.; see also In re Bluetooth Headset Products Liab. Litig., 654 F.3d at 942 (9th Cir. 2011) (citing Six (6) Mexican Workers, 904 F.2d at 1311).

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client."  Harris v. Marhoefer, 24

1  F.3d 16, 19 (9th Cir. 1994) (citation omitted).  An attorney seeking an expense award should file
2  an itemized list of her expenses by category, listing the total amount advanced for each category,
3  allowing the Court to assess whether the expenses are reasonable.  Wren v. RGIS Inventory
4  Specialists, No. 06-cv-05778-JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011),
5  supplemented, No. 06-cv-05778-JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

**III.   DISCUSSION**

**A.   Attorneys' Fees**

DPPs move the Court for $38,235,000 in aggregate attorneys' fees, split among thirty-six (36) distinct law firms.  Mot. at 1.  The requested fee represents thirty percent of the overall $127,450,000 million settlement fund.

The "benchmark" percentage for an award of attorneys' fees in a class action in this circuit is 25 percent.  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d at 942.  But in a "megafund" settlement of this size, resort to the Ninth Circuit's 25 percent "benchmark" is of little use in determining an appropriate attorney's fee.  See In re Washington Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1297 (9th Cir. 1994) ("Because a court must consider the fund's size in light of the circumstances of the particular case, we agree with the district court that the 25 percent 'benchmark' is of little assistance in a case such as this.").  In fact, sometimes courts will award fees of less than 25 percent in megafund cases.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1052 (9th Cir.2002) (listing percentage of fund fee awards in cases with class funds of $50-$200 million from 1996-2001, showing approximately half above 25 percent and half below 25 percent).

Close examination of the cases listed in Vizcaino, however, shows that with only one exception, Fanning v. Acromed Corp., No. 1014, 2000 WL 1622741 (E.D. Pa. Oct. 23, 2000), the fees awarded in those cases were a multiple of the lodestar in the case.  And in the one exception, Fanning, the only reason the Court awarded an attorneys' fee in an amount lower than the attorneys' lodestar was that the Court lacked sufficient funds to make a more generous award.  Id. at *9 ("[T]he court is dealing with a limited fund and must apportion a fee award that totals only 12 percent of that fund, considerably less than either the current or historical lodestars.").  Indeed,

when objection is made to the use of a percentage award in a megafund case, it is usually on the ground that a flat percentage results in a windfall to plaintiffs' counsel relative to their lodestar. In re Washington Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1297 (9th Cir. 1994); see also 1 Robert L. Rossi, Attorneys' Fees § 7:9 (3d ed. 2015) (citing cases) (noting that because of economies of scale, "fee awards in 'megafund' common fund cases frequently represent much lower percentages of the total fund").

Here, the record supports an award of 30 percent, even given the size of the settlement fund. First, counsel here has expended far more work -- over ninety-five thousand hours -- and taken upon themselves more risk -- spanning eight years of litigation -- than is present in a normal class action suit. See Vizcaino, 290 F.3d at 1047-1050 (awarding a fee in excess of 25 percent for high risks, effort, sophisticated work, and good results obtained by counsel); see also In re Pac. Enters. Sec. Litig., 47 F.3d 373, 379 (9th Cir. 1995) (citing Six (6) Mexican Workers for the proposition that 25 percent is the benchmark in this circuit yet affirming an award of fees for 33 percent due, in part, to substantial risk undertaken by counsel). Second, no class member has objected to the proposed settlement or proposed fee award. ECF No. 4114; see Ching v. Siemens Indus., Inc., No. 11-CV-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014). Third, an award of fees of this size is consistent with decisions by Judge Illston in a similar multidistrict litigation case and awards by other judges in this district. See In re TFT-LCD (Flat Panel) Antitrust Litig. ("LCD"), No. MDL 3:07-MD-1827 SI, 2011 WL 7575003, at *1 (N.D. Cal. Dec. 27, 2011) (30 percent); LCD II, No. M 07-1827 SI, 2013 WL 149692, at *1-2 (N.D. Cal. Jan. 14, 2013) (30 percent); LCD III, No. M 07-1827 SI, 2013 WL 1365900, at *7-8 (N.D. Cal. Apr. 3, 2013), appeal dismissed (July 12, 2013), appeal dismissed (June 10, 2014), appeal dismissed (June 12, 2014), appeal dismissed (June 13, 2014) (28.6 percent); In re: Static Random Access Memory (SRAM) Antitrust Litigation, Case No. 07-md-1819-CW (N.D. Cal. June 30, 2011) (Dkt. No. 1370) (30 percent); In re Dynamic Random Access Memory (DRAM) Antitrust Litig., M-02-1486, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007), at *1 (25 percent); In re Optical Disk Drive Antitrust Litig., Case No. 10-md-2143 RS (N.D. Cal. July 23, 2015) (Dkt. No. 1658) (30 percent).

Lastly, and most importantly, the Court has cross-checked this award against DPPs'

lodestar.  The Court has reviewed the documentation provided by DPPs and agrees with their calculation of an anticipated lodestar of $43,335,517.50.  See Mot. at 1, 22; see also ECF No. 4055 Exs. 2, 4-38.  Thus, the fee multiplier is 0.8823.  This multiplier confirms the reasonableness of the award.  Cf. In re High-Tech Emp. Antitrust Litig., No. 11-CV-02509-LHK, 2015 WL 5158730, at *10-11 (N.D. Cal. Sept. 2, 2015) (approving attorneys' fees for less than 30 percent but with a lodestar multiplier of 2.5); see also Vizcaino, 290 F.3d at 1052-54 (conducing a survey of attorneys' fees in "megafund" cases and finding that 83 percent of such cases award a multiplier from 1.0-4.0).

### B. Expenses

DPPs originally requested a total of $4,794,747.44 in reimbursable expenses.  Of this amount, counsel seeks approval of the $2,867,395.32 already paid from the Settlement Fund, as previously authorized by the Court, ECF Nos. 1506, 1507, 1833, and reimbursement of the balance of $1,927,392.12 that they advanced themselves.  See Mot. at 23.  The aggregate itemized claimed costs were as follows:

1. Document management: $283,694.51
2. Mediation costs: $83,724.42
3. Special Masters: $186,644.14
4. Translation costs: $127,083.17
5. Court filing fees: $6,352.59
6. Expert witnesses: $3,076,506.85
7. FedEx costs: $14,339.14
8. Transcript costs: $166,311.46
9. Online legal research: $245,126.87
10. Messenger/Delivery: $788.60
11. In-house copying: $140,085.84
12. Professional copying: $12,083.24
13. Postage charges: $1,331.39
14. Service of Process: $22,789.36
15. Phone/Fax costs: $35,282.68
16. Travel/meal costs: $392,643.18

As discussed at the December 15, 2015 hearing, the claimed travel and meal costs included many items that were clearly inappropriate, including first class airfare, expensive meals and wine, social drinks with co-counsel, and hotel rooms costing upwards of $3,500 per night.  ECF No. 4266.  The Court expressed its unwillingness to approve these expenses, which one Plaintiffs'

lawyer correctly described as "pure nonsense." Id.  The Court further noted its reluctance to again spend the time poring over now-largely suspect meal and travel requests and gave counsel an opportunity to submit a revised request by December 22, 2015.  Id.  Counsel instead withdrew their request for reimbursement of meal and travel expenses.  ECF No. 4264.  The Court therefore removes that line item from counsel's expense request.

The Court finds the remaining expenses to be fair and reasonable, approves the $2,867,395.32 already paid from the Settlement Fund, and grants the motion for the reimbursement in the reduced amount of $1,534,748.94.

**IV. CONCLUSION**

The Court hereby grants in full the request for attorneys' fees in the amount of $38,235,000, approves the $2,867,395.32 already paid from the Settlement Fund, and grants reimbursement of all claimed expenses except those related to travel and meals in the amount of $1,534,748.94.  Therefore, the Court orders a total of $39,769,784.94 be paid from the settlement fund to counsel for DPPs for reallocation among the 36 firms consistent with its motion as modified, see Supp. Mot., and approved herein.

IT IS SO ORDERED.

Dated: January 14, 2016

_____
JON S. TIGAR
United States District Judge