# EXHIBIT

## 2

1  Mario N. Alioto (56433)
   Joseph M. Patane (72202)
2  Lauren C. Capurro (241151)
   TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
3  2280 Union Street
   San Francisco, CA 94123
4  Telephone: 415-563-7200
   Facsimile: 415- 346-0679
5  Email: malioto@tatp.com
   jpatane@tatp.com
6  laurenrussell@tatp.com

7  *Lead Counsel for the*
   *Indirect Purchaser Plaintiffs*

8

9

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12               **SAN FRANCISCO DIVISION**

13  | IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-JST |
    | --- | --- |
    | | MDL No. 1917 |

14

15  This Document Relates to:

16  All Indirect Purchaser Actions

**SUPPLEMENTAL DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS TO CLASS REPRESENTATIVES**

Hearing Date:  March 15, 2016
Time: 2:00 p.m.
Judge: Honorable Jon S. Tigar
Court: Courtroom 9, 19th Floor
Before: Special Master Martin Quinn, JAMS

18

19

20

21

22

23

24

25

26

27

28

I, Mario N. Alioto, declare:

1.    I am an attorney duly licensed by the State of California and am admitted to practice before this Court.  I am a partner with the law firm Trump, Alioto, Trump & Prescott, LLP and my firm serves as Lead Counsel for the Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned action.  The matters set forth herein are within my personal knowledge and if called upon and sworn as a witness I could competently testify regarding them.

2.    Notice was provided in accordance with the Preliminary Approval Order.  Class members were clearly informed that IPP Counsel would move for an award of attorneys' fees of up to one-third of the Settlement Fund.  The Fee Motion was also posted on the website more than 14 days before objections were due.

3.    Only nine objections to the attorney fee request were filed by a total of ten objectors, out of millions of indirect purchaser class members.[1]  Two of these objectors, Paul Palmer and Gordon Morgan, have moved to withdraw their objections.  (*See* Dkt. Nos. 4130 and 4165.)   Seven of the objections were filed by "serial" or "professional" class-action objectors who file boilerplate objections and subsequent appeals in order to extract a pay-off to drop the appeals.[2]  Another of the objections was filed by two attorneys from this case, whose motivations are similarly suspect.[3]  And

---

[1] Objections were filed by Donnie Clifton (Dkt. No. 4099); Sean Hull, Gordon Morgan (Dkt. No. 4101); Douglas St. John (Dkt. No. 4106); John Finn, Laura Townsend Fortman (Dkt. No. 4111); Dan L. Williams & Co. (Dkt. No. 4112); Francis Scarpulla and Josef Cooper (Dkt. No. 4115); Paul Palmer (Dkt. No. 4120); Josie Saik (Dkt. No. 4140-3); and Elizabeth Johnson (Dkt. No. 4128).

[2] Attorneys Miller, Kress, Fortman, Bandas, Hanigan, Palmer, Thompson, Westfall, Cochran and St. John routinely represent objectors challenging class action settlements by filing canned objections. *See* IPPs' Mot. For Final Approval of Class Action Settlements with Defendants ("Final App. Mot.") and Additional Declaration of Robert J. Gralewski in Support of IPPs' Mot. for Final Approval of Class Action Settlements with Defendants, and Appendices A through N thereto (filed herewith).  Mr. Palmer has already moved to withdraw his objection (Dkt. No. 4130), and Messrs. Bandas and Hanigan have moved to withdraw the objection of one of their clients, Gordon Morgan (Dkt. No. 4165).

[3] *See further* Final App. Mot.; Declaration of Mario N. Alioto in Support of Indirect Purchaser Plaintiffs' Motion for Final Approval of Settlements ("Alioto Settl. Decl. II.").

---

1

SUPPL. DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE
AWARDS – Master File No. CV-07-5944-JST

I believe the final objection (Williams) was filed at the behest of another attorney from this case who has objected to the Proposed Settlements.[4]

4.      In the *LCD* litigation, Best Buy went to trial against Toshiba.  During the trial, Toshiba presented evidence of its non-prosecution by the DOJ as part of its defense.  The jury returned a defense verdict in favor of Toshiba.  These facts of *non-prosecution* made IPPs' trial preparation and settlement negotiations far more difficult.

5.      I have reviewed the meeting reports produced by defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa").  Many of the meeting reports provided to IPPs by Chunghwa are duplicate reports of the same meeting; and while some of the meeting reports were helpful, many others were not.  Many indicated that (a) Defendants did not reach agreements on CRT prices; (b) the prices agreed to at the meetings were not implemented by Defendants; and (c) several Defendants did not participate in the meetings and/or they consistently undercut their competitors.

6.      Based upon my review, the Defendants' market shares changed fundamentally in the early 2000's as a result of Panasonic's exit from the CDT business; the formation of LPD by LG and Philips in 2001; Hitachi's exit from the CRT market in 2002; the formation of MTPD by Panasonic and Toshiba in 2003; and Thomson's exit from the CRT business in 2004.  As a result of this market consolidation, Samsung SDI's overall CRT market share in 2004 was 29%, and LPD's (for which IPPs held Philips responsible) was 27%.  Their shares of the CDT market were even higher: 42% (SDI) and 32% (LPD). In addition, each held even higher shares of the U.S. CRT market and, unlike some of the other Defendants, IPPs had strong evidence of their conspiratorial activities here in the U.S.  The settlement amounts paid by Samsung SDI and Philips are entirely consistent with their market shares and the liability evidence.

7.      An examination of the lodestars of each firm that submitted declarations in support of IPPs' Fee Motion establishes that each firm's lodestar is consistent with the work assignments made

---

[4] Objector Williams' counsel, Paul Justi, is acquainted with Theresa Moore, who is counsel of record in this case and has objected to the Proposed Settlements.  Mr. Justi and Ms. Moore have been co-counsel on several cases. *See* Alioto Settl. Decl. II.

SUPPL. DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS – Master File No. CV-07-5944-JST

1   by me.  Only four firms recorded very significant lodestars, and less than two dozen firms did the

2   overwhelming amount of the work.  None of it was duplicative or unnecessary.

3         8.     Most of the other firms with lodestars over $2 million were assigned a particular

4   defendant for the entire case.  For example, Straus & Boies handled discovery (including meet and

5   confers) with defendant Samsung SDI; prepared for Samsung SDI depositions (a Straus & Boies

6   associate who speaks Korean was invaluable to this team); led the foreign language document

7   review team; assisted with translation objections; prepared a comprehensive meeting grid; drafted

8   the opposition to Defendants' motion for summary judgment for lack of antitrust standing; and took

9   a lead role in the preparation of IPPs' trial exhibit list and otherwise preparing for trial.

10        9.     Kirby McInerney led all class representative discovery; led the FTAIA document

11  review team; prepared for and took the depositions of 12 Samsung SDI witnesses; led the DAP

12  deposition team; and was heavily involved in preparing for trial, including reviewing potential trial

13  exhibits, designating deposition testimony, preparing class representative witnesses and attending

14  mock trials.

15        10.    Zelle Hofmann handled Panasonic/MTPD discovery, including meet and confers,

16  written discovery, and prepared for and took the depositions of Panasonic/MTPD witnesses; expert

17  work and briefing at class certification and merits stages; expert depositions; and assisted with trial

18  preparation, including preparing Dr. Netz to testify at trial, trial exhibits and deposition designations

19  relevant to Panasonic/MTPD, and participating in the mock trials.

20        11.    KAG Law Group had a major role in the preparation of almost all briefings on behalf

21  of IPPs (such as oppositions to motions to dismiss and summary judgment motions); participated in

22  settlement negotiations and overall settlement strategy, and conferred with Lead Counsel on often a

23  daily basis; had primary responsibility for handling issues regarding the Philips/ California Attorney

24  General settlement; co-led the Hitachi document review team; and assisted in deposition and trial

25  preparation (including identifying trial exhibits and designating deposition testimony).

26        12.    Andrus Anderson LLP was assigned to defendant Hitachi (which includes five

27  separate entities); Bramson Plutzik was assigned to defendant Toshiba (four separate entities, as well

28

1   as its joint venture, MTPD); Glancy Prongay & Murray was assigned to defendant LG Electronics

2   (three separate entities, as well as its joint venture LPD); and Cooper and Kirkham was assigned to

3   defendant Philips (four separate entities, as well as its joint venture LPD).  This meant they handled

4   all document discovery (including lengthy meet and confers, document review and motions to

5   compel), depositions, summary judgment briefing and trial preparation (including identifying trial

6   exhibits and designating deposition testimony).

7       13.     Fine, Kaplan and Black ("FKB") is one of the trial team firms.  FKB oversaw the

8   review and selection of trial exhibits; oversaw the deposition designations; drafted the jury

9   instructions; took the lead on briefing the 64 motions *in limine*; and took a lead role in preparing the

10   presentations for the mock trials and preparing the case for trial.

11      14.     Other firms performed mainly document review, which was an essential part of this

12   case.

13      15.     Fifteen firms had minimal involvement, averaging less than $15,000 in lodestar per

14   year.  Many of these firms were the private lawyers for the more than 40 plaintiffs representing 22

15   states in the actions consolidated in this court pursuant to the Class Action Fairness Act of 2005.

16      16.     I am counsel of record in both the indirect purchaser *LCD* case and the indirect

17   purchaser *DRAM* case.  In the indirect purchaser *LCD* case, counsel billed 313,000 hours over six

18   years (two years less than this case) and, like here, the case settled just before trial.  In the indirect

19   purchaser *DRAM* case, counsel billed 152,349 hours.  The indirect purchaser *DRAM* case began in

20   late 2004 but slowed in mid-2007 when the court granted a motion for judgment on the pleadings,

21   and was stayed in 2009 pending an appeal.  No litigation class was certified and the parties never

22   reached summary judgment.

23      17.     My firm's total lodestar is much smaller than that of other firms who have served as

24   lead counsel in similar cases, such as indirect purchaser LCD and DRAM.  I have personal

25   knowledge of the lodestars of co-lead counsel in these cases.  My firm performed all the same duties

26   that these firms performed, yet my firm's lodestar is less than the lodestar of each of the co-lead

27   firms in LCD—Zelle Hofmann's lodestar was $22,269,333.50 and Joseph Alioto's lodestar was

28

$18,126,945.80.  In the indirect purchaser DRAM case, there are four co-lead firms and one liaison counsel.  The total lodestar for all five firms was $42,278,894.  My firm's lodestar here is only slightly more than that of Lead Counsel for the DPPs in this case ($14,073,846.00 vs. $15,745,591.25) even though the DPPs settled with most of the Defendants before merits depositions began.

18.     Attached as **Exhibit A** are resumés for the contract attorneys whose time is included in my firm's fee request.  Most of the contract attorneys hired to work on this case needed to be fluent in Chinese, Japanese or Korean because the vast majority of the important documents in this case were in these three foreign languages.  At the beginning of the document review, Joseph Patane of my office wrote to all of the firms in the case and asked if anyone had attorneys on staff who spoke one of these languages.  Out of the 49 firms, only two firms had an attorney on staff who spoke one of these languages.  Thus, in order to search, review and analyze the millions of pages of foreign language documents produced by defendants, my firm and other IPP firms were forced to hire contract attorneys who spoke one or more of these languages.

19.     The contract attorneys my firm hired were highly skilled and experienced.  In addition to their foreign language skills, many had valuable experience from the related *LCD* ligation (*e.g.* Natalie Kabasakalian, David Denison and Veronica Besmer), which meant that they were already familiar with many of the Defendants and players in the CRT conspiracy.  Others are experienced lawyers with years of practice under their belts either here or in their home countries.  For example, Silvia Yeuh-Yi Shih and Natalie Kabasakalian have both been practicing law for 20 years.  Veronica Besmer has been practicing law for eight years and is a former associate of Townsend and Townsend and Crew, LLP.  David Denison has been practicing law for seven years.  Most have multiple degrees from excellent institutions.  For example, Veronica Besmer holds degrees from the University of Southern California and the University of California Hastings College of the Law.  Bomsu Park holds a Masters of Law from Georgetown University Law Center.  Yoobin Kang holds degrees from the University of California Los Angeles, and Loyola Law School.

20.     Members of my firm and other IPP firms closely supervised the work of these contract attorneys.  My associate, Lauren Capurro, set up the document review and prepared a detailed "Coding Manual" that described how the attorneys were to review and code documents, both procedurally and substantively.  Ms. Capurro (with assistance from other IPP firms) also trained the attorneys on the database and provided them with the pleadings and memoranda regarding the case, the CRT industry, the Defendants and the various legal issues raised by the claims and defenses.  Ms. Capurro organized the document review into teams with senior attorneys from the IPP firms designated as team leaders who performed a second-level review of the coding done by their team members.  Ms. Capurro held frequent calls with team leaders, who in turn held weekly conference calls with the team members to provide guidance and feedback regarding the substance of the review.  The document review teams produced regular memoranda and list of "hot" documents, which allowed Ms. Capurro and the team leaders to track their progress.  Ms. Capurro also conducted spot checks of the coding in the database, and tracked the attorneys' time spent in the database.  Attorneys that were not performing adequately were removed from the review.

21.     Because most of the contract attorneys performed primarily document review, their rates were capped at $350 for English document reviewers and $400 for foreign language reviewers.  These rates are lower than the billing rates for associates of similar experience.  In fact, Lead Counsel billed several of their contract attorneys at less than these caps, *e.g.* Daifei Zhang ($375), Yoobin Yang ($375), Kelly Patane ($275/$300), and Bomsu Park ($375).  Only Veronica Besmer, Natalie Kabasakalian and David Denison were billed at more than $400 for time spent on higher level work.  Ms. Besmer is billed at $410 for only 12.3 hours spent on legal research in 2009 and $425 for 13.5 hours spent drafting discovery in 2010.  Ms. Kabasakalian's rate is more than $400 for only 2014 and 2015, and Mr. Denison only for 2015.  At that late stage in the case, Ms. Kabasakalian and Mr. Denison had been working on the case for several years and were core members of the team.  Both worked extensively on preparations for depositions and trial during this time, and Ms. Kabasakalian also worked on the oppositions to the motions for summary judgment.

22.    It was my reasoned judgment that it was necessary to bring additional experienced trial counsel into this case.  While I and some of the other attorneys already in the case have tried antitrust cases, this was a massive and highly complicated case involving 22 certified classes.  In fact, I am not aware of the trial of any post-CAFA case of this nature and magnitude.  I therefore believed it was in the best interests of the class to bring on board some of the only lawyers in the country who have successfully tried a complex national direct purchaser class action.  Joe Goldberg of Freedman Boyd was trial counsel and Fine Kaplan & Black was co-lead counsel in one of the few antitrust cases in recent years to go to trial.  The *Urethanes Antitrust Litigation* was tried in the District of Kansas in early 2013.  The four week trial resulted in a judgment of over $1 billion, which is believed to be the largest price-fixing verdict ever.

23.    The three trial firms did excellent work in a short amount of time to prepare the case for trial.  They were assisted by my firm and the core firms who had been involved in the case all along.  By waiting until only five months before trial to bring these firms on board, I believe I saved the Class money while at the same time ensuring that the case was properly prepared for trial.  In my opinion, bringing these three firms into the case, and demonstrating to the Defendants that IPPs were ready to go to trial, significantly improved the settlement value of this case with Defendants.  The three trial firms began work on this case in early October 2014, not the last two weeks of December 2014.

24.    The time categories used by IPP Counsel are the same time categories used and approved in the indirect purchaser *LCD* case, where Mr. Scarpulla was lead counsel.

25.    I was forced to intervene in the California Attorney General's case because Philips took the position that its $500,000 settlement with the AG released the claims of California natural persons in this MDL.  Had I not challenged the approval of that settlement, Philips would have had a strong argument at summary judgment that those claims had been released.  Indeed, Philips moved for summary judgment on California natural persons' claims, arguing that the judgment approving its settlement with the California Attorney General released those claims.  The ultimate settlement recovery of $175 million from Philips supports the merits of IPPs' position vis-à-vis Philips, namely

7

that the release of California natural persons' claims for less than $500,000 was not fair, adequate or reasonable. IPP Counsel's efforts benefited the class by preserving the claims of California natural persons.

26. Mr. Bonsignore is disgruntled because his fee declaration was not included in the joint fee motion. The Audit Committee determined that it could not submit certain items of Bonsignore's time and expenses to the Court as part of the joint lodestar. Mr. Bonsignore did not try to support his questioned time and expenses. Instead, he has embarked on a campaign of false and inflammatory statements. He has a track record of disruptive behavior in other cases as well. Attached hereto as **Exhibit B** is a true and correct copy of an Order by the Honorable Richard A. Kramer of the San Francisco Superior Court in which he sanctioned Mr. Bonsignore for disruptive behavior in a case entitled *Brock v. Honeywell Int'l, Inc.,* S.F. Super. Ct, No. CGC-04-436205.

27. I have maintained contemporaneous time records throughout this litigation. I have also conducted an audit of all firms' time records and cut duplicative and unnecessary time. I will make my firm's time records, and the Audit Committee's notes and communications regarding this audit available to the Special Master upon request.

28. With respect to IPPs' request for reimbursement of expenses, certain objectors have requested our accounting records. There is no basis to provide these records to the objectors. I will provide them to the Special Master upon request.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 19th day of November 2015 at San Francisco, California.

/s/       *Mario N. Alioto*
Mario N. Alioto

**Lead Counsel for the Indirect Purchaser Plaintiffs**