1  Mario N. Alioto (56433)
   Joseph M. Patane (72202)
2  Lauren C. Capurro (241151)
   TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
3  2280 Union Street
   San Francisco, CA 94123
4  Telephone: 415-563-7200
   Facsimile: 415- 346-0679
5  Email: malioto@tatp.com
   jpatane@tatp.com
6  laurenrussell@tatp.com

7  *Lead Counsel for the*
   *Indirect Purchaser Plaintiffs*

8

9                 **UNITED STATES DISTRICT COURT**

10              **NORTHERN DISTRICT OF CALIFORNIA**

11                  **SAN FRANCISCO DIVISION**

12  | IN RE: CATHODE RAY TUBE (CRT) | Master File No. CV-07-5944-JST |
13  | ANTITRUST LITIGATION | |
    | | MDL No. 1917 |
14  | | |

15  | This Document Relates to: | **DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER** |
16  | | **PLAINTIFFS' MOTION FOR FINAL** |
    | All Indirect Purchaser Actions | **APPROVAL OF CLASS  ACTION** |
17  | | **SETTLEMENTS WITH THE PHILIPS,** |
    | | **PANASONIC, HITACHI, TOSHIBA,** |
18  | | **SAMSUNG SDI, TECHNICOLOR, AND** |
    | | **TECHNOLOGIES DISPLAYS AMERICAS** |
19  | | **DEFENDANTS** |

20  Hearing Date:  March 15, 2016
    Time: 2:00 p.m.
21  Judge: Honorable Jon S. Tigar
    Court: Courtroom 9, 19th Floor
22  Before: Special Master Martin Quinn, JAMS

23

24

25

26

27

28  DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR
    FINAL APPROVAL OF CLASS ACTION SETTLEMENTS - Master File No. CV-07-5944-JST

I, Mario N. Alioto, declare:

1.      I am an attorney duly licensed by the State of California and am admitted to practice before this Court.  I am a partner with the law firm Trump, Alioto, Trump & Prescott, LLP and my firm serves as Lead Counsel for the Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned action.  The matters set forth herein are within my personal knowledge and if called upon and sworn as a witness I could competently testify regarding them; and as to matters on stated on information and belief, I believe them to be true.

2.      IPPs filed their motions for preliminary approval of the Proposed Settlements on May 29, 2015.  (Dkt. No. 3861.)  The Court granted preliminary approval on July 9, 2015.  (Dkt. No. 3906.)  Pursuant to the Preliminary Approval Order, I directed The Notice Company to provide notice to class members in accordance with the notice program approved by the Court.

3.      I am informed and believe that notice of the settlements was provided to class members in accordance with the notice program provided by the Court.  *See* Declaration of Joseph M. Fisher Reporting on Notice Program, filed herewith.

4.      Eleven objections on behalf of 22 objectors have been filed.  Only five requests for exclusion were received.  Two of the requests for exclusion were by Direct Action Plaintiffs ("DAPs") that are already pursuing their own cases.  Thus, there are actually only three requests for exclusions.  Pursuant to the Settlement Agreements, I have provided the list of exclusions to Defendants.  Copies of the exclusion letters are attached to the Declaration of Joseph M. Fisher Reporting on the Class Notice Program as Exhibit Y.

5.      Three of the objections were lodged by four attorneys who have represented class members in this litigation: Josef Cooper, Francis O. Scarpulla, Robert Bonsignore and Theresa Moore (the "Insider Objectors").

6.      Seven additional objections[1] were filed or orchestrated behind the scenes by so-called "professional objectors."  *See* Additional Declaration of Robert J. Gralewski, Jr. In Support of Indirect Purchaser Plaintiffs' Motion For Final Approval of Class Action Settlements

---

[1] Two of these, the Palmer and St. John objections, are directed at fees only—not the settlements.

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS - Master File No. CV-07-5944-JST

1   With Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson, and TDA Defendants,

2   Appendices A through N, filed herewith.  Many of the attorneys representing these objectors

3   have been reprimanded by courts for seeking personal gain at the expense of class members.  *Id.*

4   Two of the objectors, Paul Palmer and Gordon Morgan, have moved to withdraw their

5   objections.  (*See* Dkt. Nos. 4130 and 4165.)

6   **Insider Objectors**

7       7.      Before filing the motion for preliminary approval of the Proposed Settlements, my

8   office contacted Mr. Bonsignore and John Bogdanov, Mr. Cooper's partner,[2] along with other

9   counsel for the other Court-appointed class representatives, to obtain their and their clients' input

10  on the Proposed Settlements, the notice program and the plan of distribution.

11      8.      In an email dated May 27, 2015, my office sent Messrs. Bonsignore and

12  Bogdanov copies of the final preliminary approval papers and asked that they review them with

13  their clients and contact Lead Counsel to discuss any issues they might have.  Attached hereto as

14  **Exhibit A** are true and correct copies of an e-mail and a letter, both dated May 27, 2015, to Mr.

15  Bonsignore and Cooper, among others.

16      9.      Messrs. Bonsignore and Bogdanov did not respond to the May 27, 2015 email,

17  implicitly approving the settlement class definitions, the notice program, and the plan of

18  distribution.

19      10.     Ms. Moore has represented in recent court filings that she is counsel of record for

20  several class representatives: Brian Luscher (AZ); Margaret Slagle (VT); and Barry Kushner

21  (MN).  *See* Dkt. No. 4076.  Ms. Moore has never been the contact for these class representatives,

22  so she was not included on our May 27, 2015 email.  Ms. Moore's co-counsel for these class

23  representatives, Dan Karon, was served with the preliminary approval papers on May 27, 2015,

24  and did not voice any concerns on behalf of these class representatives.  The fact that Ms. Moore

25

26  _____

27  [2] Mr. Cooper's firm is counsel of record for one of the California class representatives, Steven
    Ganz.  My office sent the email to Mr. Cooper's partner, John Bogdanov, because he had
28  previously been the contact for Mr. Ganz.

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS - Master File No. CV-07-5944-JST

1    has now filed objections on behalf of different clients indicates that the class representatives did

2    not agree with her objections to the Proposed Settlements, or that she never represented them.

3        11.    In addition, IPPs' papers in support of preliminary approval, once filed on May

4    29, 2015, clearly explained the settlement terms, the notice program, and the plan of distribution.

5    (See Dkt. No. 3861.)  Thus, the Insider Objectors, all of whom receive notice of electronic filings

6    in this case through the Court's ECF notices, were able to review the proposed settlements and

7    the proposed notice plan.  None of them contacted Lead Counsel to voice concerns.

8        12.    Messrs. Scarpulla and Cooper filed "conditional objections" to the Proposed

9    Settlements and the motion for preliminary approval.  (Dkt. Nos. 3874 & 3880.)  These

10   conditional objections focused solely on the allocation of any prospective fee award by Lead

11   Counsel.  Thus, Messrs. Scarpulla and Cooper clearly read and paid close attention to the

12   Proposed Settlement terms and the motion for preliminary approval.  Yet, they raised none of the

13   issues they now raise regarding the settlement class definition, the notice program or the plan of

14   distribution.

15       13.    Similarly, Mr. Bonsignore and Ms. Moore never informed Lead Counsel of their

16   objections to the settlements until they filed those objections with the Court.  In addition to being

17   served with the preliminary approval papers, both Mr. Bonsignore and Ms. Moore were in

18   contact with Lead Counsel and/or members of the Audit Committee on multiple occasions during

19   the auditing process.  They had many opportunities to voice the concerns they now raise.  Yet

20   neither gave any indication that they planned to object to the Proposed Settlements until after

21   they were informed that their lodestars had been substantially reduced by the Audit Committee,

22   as further described below.

23       14.    Prior to filing the motion for attorneys' fees, my office instructed all counsel who

24   wished to be included in the joint fee motion to submit their time and expenses to me, and

25   complete a declaration in support of their firm's fee request.  I provided a template declaration

26   and instructed counsel to categorize their time for each year in one of 12 categories, and enter

27   those categories in a chart that my firm had prepared.  These 12 categories were utilized in the

28

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS - Master File No. CV-07-5944-JST

*LCD* case (where I was also counsel of record) and approved by the court in that case.  All
counsel were also instructed to calculate their lodestar using historical rates.

15.     I implemented a number of measures to ensure that the lodestar submitted to the
Court is fair and reasonable.  *See* Alioto Fee Decl. I ¶ 118.  One of these measures was the
formation of an Audit Committee to conduct an in-depth review of IPP Counsel's time records.
All firms were audited and most firms' lodestars were reduced – some substantially.  The Insider
Objectors ignored Lead Counsel's instructions for calculating their lodestars and failed to
implement the Audit Committee's proposed cuts.  All of the Insider Objectors' time records and
the Audit Committee's notes and communications with the Insider Objectors will be made
available to the Special Master for inspection upon request.

**Scarpulla**

16.     Mr. Scarpulla had only a very small role in this case.  In fact, he was completely
absent for most of 2010 through 2012 due to his lead role in the *LCD* case.  He did almost no
substantive work in this case.  The substantive work of his former firm, Zelle Hofmann, was
performed by other capable partners and associates at that firm, including Craig Corbitt,
Christopher Micheletti, Judith Zahid and Qianwei Fu.  The majority of Mr. Scarpulla's time
appears to have been spent discussing the case with other members of his firm (which is of
questionable value given that the case was already well-staffed by senior Zelle partners), and
most often with Assistant California Attorney General, Emilio Varanini.  Apart from reading the
public filings, Mr. Scarpulla has no personal knowledge of the work done in this case by any firm
other than his own, and no basis to make any of the accusations he makes in his objections to the
settlements.

17.     Mr. Scarpulla submitted all of his time, the vast majority of which was not
assigned by me or anyone at my firm, at his current hourly rate of $1250.  In addition, he did not
submit the chart categorizing his time and his declaration did not follow the template my firm had
provided.

18.     Members of the Audit Committee attempted to contact Mr. Scarpulla to discuss
the time he was seeking for work on this case.  Despite several attempts to contact Mr. Scarpulla,

1  they were unable to do so.  Shortly before filing the joint fee petition, I attempted to contact Mr.

2  Scarpulla to discuss his time, which was not in conformance with certain time reporting

3  guidelines the Audit Committee had established in this case.  I also was unable to contact Mr.

4  Scarpulla to discuss his time.  Attached hereto as **Exhibits B and C** are true and correct copies of

5  emails sent by me and the Audit Committee to Mr. Scarpulla regarding the problems with his

6  time.

7         19.    The Audit Committee reviewed Mr. Scarpulla's time records and cut entries

8  reflecting categories of time that I had instructed all IPP Counsel to exclude.  The Audit

9  Committee then calculated a much-reduced lodestar for Mr. Scarpulla using his more reasonable,

10 historical rates.  I included this reduced lodestar for Mr. Scarpulla in the total lodestar submitted

11 in the joint fee motion.

12        20.    Mr. Scarpulla filed a separate fee declaration and was not included in the joint fee

13 motion.  He did not file a motion for attorney's fees.  Mr. Scarpulla has embarked on a course of

14 action designed the delay the approval of the settlements and the award of attorneys' fees to

15 counsel in this case.

16        21.    Contrary to Mr. Scarpulla's assertions, I had the necessary experience and

17 resources to lead this case.  I have been involved in a number of jury trials in state and federal

18 court, including the trial of antitrust cases as the lead trial lawyer.  I have handled approximately

19 30 appeals as well.  I was counsel in the landmark decision *Crown Oil v. Superior Court*, 177

20 Cal. App. 3d 604 (1986), which upheld the right of indirect purchasers to sue under the

21 Cartwright Act after their claims had been barred under federal law by the decision in *Illinois*

22 *Brick v. Illinois*, 431 U.S. 720 (1977).  In addition to my appointment as sole Lead Counsel for

23 the Indirect Purchaser Plaintiffs in this case, I was appointed as co-lead counsel for the indirect

24 purchaser plaintiffs in two post-Class Action Fairness Act MDLs: *In re OSB Antitrust Litig.*,

25 Case No. 06-00826-PSD (E.D. Pa. 2007); and *In Re: Aftermarket Filters Antitrust Litig.*, Master

26 File No. 1:08-cv-4883-RWG, MDL 1957 (N.D. Ill. Oct. 7, 2008).  *See Curriculum Vitae* of

27 Mario N. Alioto, Dkt. No. 4073-1, Ex. 1.

28

1    22.    I did not abrogate my responsibility as the Court-appointed Lead Counsel in this

2    case, or ask any other firm to perform my duties, or make any "shadow" co-lead agreement with

3    any firm in this case.  I did not request the Zelle firm to exclude any time of Mr. Scarpulla,

4    although I am aware of the exclusion of this time by the Audit Committee in accordance with

5    guidelines that were implemented by the Audit Committee and applied generally to all firms in

6    this case.

7    **Bonsignore**

8    23.    Mr. Bonsignore submitted a fee declaration for inclusion in the joint fee petition.

9    The IPPs' Audit Committee could not include Mr. Bonsignore's fee declaration in the joint fee

10   petition because there were problems with both the time and expenses he reported.  Mr.

11   Bonsignore was afforded an opportunity to revise his fee declaration, but he refused to do so.[3]

12   Instead, he filed his own fee declaration separate from the joint fee petition.  He has not filed a

13   motion for attorneys' fees.

14   24.    Mr. Bonsignore is seeking the reimbursement of $25,000 he claims to have

15   contributed to the litigation fund in this case.  Our records do not show receipt of this amount

16   from Mr. Bonsignore.  We asked Mr. Bonsignore for a bank record showing proof that this

17   amount had been paid.  Mr. Bonsignore did not provide us with a bank record, only a self-

18   generated document referencing the $25,000 amount.  Since there is doubt as to whether Mr.

19   Bonsignore paid this amount, and since Mr. Bonsignore has not corroborated the payment, I have

20   not approved this amount for reimbursement to Mr. Bonsignore.

21   25.    As a result, Mr. Bonsignore has embarked on a campaign of false and derogatory

22   statements directed at undersigned counsel and other counsel in this case.  These are without any

23   evidentiary support and, as such, need not be addressed herein, other than to say they are

24   generally denied.  In addition, Mr. Bonsignore's claims as to his contributions to the case need

25   not be addressed herein.  They will be addressed at the fee allocation stage.

26   _____

27   [3] Robert Gralewski of Kirby McInerney was the member of the Audit Committee assigned to
     review Mr. Bonsignore's time and expense submissions.  Mr. Gralewski is filing a separate
28   declaration regarding his interactions with Mr. Bonsignore.

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS - Master File No. CV-07-5944-JST

26.     The Audit Committee informed Mr. Bonsignore of the cuts to his lodestar on September 16, 2015.  Two weeks prior to this, on August 31, 2015, Mr. Bonsignore posted information on his firm's website endorsing the Proposed Settlements and providing instructions for filing a claim.  Attached hereto as **Exhibit D** is a true and correct copy of a screen shot from Mr. Bonsignore's firm website.

27.     Mr. Bonsignore has submitted copies of two emails dated March 5, 2012 and March 6, 2012 (Dkt. Nos. 4144-3 and 4144-5, respectively), which are highly suspicious.  First, I do not have copies of these emails even though I have copies of other emails received from Mr. Bonsignore during this same time period.  Second, these emails appear to be cut and pasted together.  Third, the emails do not say what Mr. Bonsignore claims they say.

28.     I have never refused to add a viable plaintiff to this case.  I have never excluded a viable plaintiff from this case.  I have never committed to add a viable plaintiff to this case and then not done so.  I never asked Mr. Bonsignore to hold plaintiffs in reserve.  I never made a promise to Mr. Bonsignore of any specific involvement in this case.  I do recall a conversation with Mr. Bonsignore in which he inquired into his possible fee for working on this case.  I told him that fees, if any, could not be determined until the end of the case.  I never told him that I figure my time at the end of the case, and that is not the case.  I have maintained contemporaneous time records throughout the entire case.  I will make these time records available to the Special Master for review upon request.

29.     Mr. Bonsignore has been sanctioned by a California court for engaging in improper conduct in another class action.  Attached hereto as **Exhibit E** is a true and correct copy of an Order for Sanctions Under CCP 2023.030.  The order sanctioning Mr. Bonsignore requires him to disclose in a *Pro Hac Vice* application that he has been subject to disciplinary action by a California court.  Mr. Bonsignore failed to comply with this order in this case.

**Moore**

30.     Ms. Moore submitted a total lodestar of almost $220,000 despite having no client and no work assignments from me or anyone in my office.

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS - Master File No. CV-07-5944-JST

31.     The Audit Committee reviewed Ms. Moore's time sheets and requested that Ms. Moore remove time that did not comport with the instructions given to all counsel.  Ms. Moore re-submitted her time but only removed a very small amount of time and recast certain entries in an attempt to obscure the fact that they included time that is not compensable.  The Audit Committee removed the problematic time entries and informed Ms. Moore of her revised lodestar.  Ms. Moore refused to accept the cuts to her lodestar.  Attached hereto as **Exhibit F 1-F-5** are true and correct copies of correspondence exchanged between the Audit Committee and Ms. Moore.

32.     Before the cuts were made to Ms. Moore's lodestar, and after she had reviewed the motion for preliminary approval, Ms. Moore indicated that she approved the Proposed Settlements.  In an email to my associate, Lauren Capurro, dated July 29, 2015, Ms. Moore stated: "Thanks [sic] you very much, Congratulations and thank you for all your hard work over this extended period of time. Great job."  Attached as **Exhibit F-3** is a true and correct copy of that email.  Ms. Moore has never filed a motion for attorneys' fees.

**Cooper**

33.     In the entire eight-year duration of this case, I never made any work assignments to Mr. Cooper and Mr. Cooper never submitted any time to me.  Mr. Cooper did no substantive work in this case.

34.     Mr. Cooper's then associate (now partner) John Bogdanov billed a substantial number of hours in this case.  His role was limited, however, to discovery related to two defendants (Philips and LPD).  Mr. Cooper's law partner Tracy Kirkham performed a small, discrete work assignment early in the case.

35.     The Audit Committee did not make any cuts to Mr. Cooper's firm's lodestar.

**Massachusetts**

36.     Special Master Legge dismissed the Massachusetts claim because IPPs did not wait 30 days after serving a demand letter on Defendants.  We did not believe it was necessary to wait 30 days because it served no practical purpose in this case—by that time (May 2010), Defendants had had notice of IPPs' Massachusetts claim since for 2 ½ years and had not made a

1  settlement offer.  The purpose of a Chapter 93A demand letter is to encourage negotiation and

2  settlement of claims arising from allegedly unlawful conduct and to allow the defendant to limit

3  the damages a plaintiff might recover by making a reasonable offer of settlement.  *See Billingham

4  v. Dornemann*, 447 Mass. 1113 (2006).  No Defendant expressed any interest in discussing

5  settlement and no Defendant requested more time to do so after receiving the demand letter.

6      37.    Mr. Bonsignore claims that his client Mr. Gianasca was "vetted [and] ready to

7  serve" as the Massachusetts representative.  (Dkt. No. 4144, at p. 4.)  This is false.  After the

8  filing of the initial complaints, Mr. Bonsignore and Mr. Gianasca, never responded to our

9  requests for information necessary for initial disclosures and failed to complete the questionnaire

10  designed to vet potential class representatives.  They failed to even provide us with basic

11  information regarding Mr. Gianasca's claimed purchase of a CRT product.  As a result, Mr.

12  Gianasca was not named in the consolidated amended complaint.  I assumed Mr. Gianasca no

13  longer wished to serve as the Massachusetts representative and Mr. Bonsignore never informed

14  me otherwise.

15      38.    Ms. Moore never informed me that she had a Massachusetts client.  However, in

16  conjunction with recent proceedings in this case, Ms. Moore has stated that she has represented

17  clients in Missouri and Massachusetts for close to 15 years.

18  **Missouri**

19      39.    IPPs never asserted a Missouri claim because no Missouri plaintiff came forward

20  to represent a Missouri class, and the law of the case prevented me from asserting a Missouri

21  claim without a Missouri class representative.[4]

22      40.    Mr. Bonsignore's claims that he presented me with a viable Missouri class

23  representative in March 2012 are highly questionable.  I have no record of this communication

24  and it does not appear to be authentic.  The email itself contains no information regarding Mr.

25  Perriman and his suitability as a class representative or his claimed television purchase.  For

26

27  ─────────────────

28  [4] *See* Dkt. No. 768, p.5-6 (R&R dismissing state law claims were no plaintiff resided); and Dkt. No. 799 (Order adopting R&R).

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS - Master File No. CV-07-5944-JST

example, at a minimum, class representatives had to have proof of purchase.  Further, my previous experience with Mr. Bonsignore in this case indicated his claims that he represented possible class representatives were unreliable.

41.     At the beginning of this case, Mr. Bonsignore claimed to represent class representatives for Arizona, Massachusetts, Mississippi and Rhode Island.  But when we asked Mr. Bonsignore to provide information from these plaintiffs necessary for initial disclosures, and to complete a questionnaire designed to vet them for inclusion in the consolidated amended complaint, Mr. Bonsignore failed to respond.   As a result, none of these plaintiffs were included in the consolidated amended complaint.  And, even if it were true that Mr. Bonsignore had a viable Missouri class representative in 2012, there was nothing to stop Mr. Bonsignore from filing a case on behalf of Missouri.  He failed to do so.

**New Hampshire**

42.     IPPs never asserted a New Hampshire claim because no New Hampshire plaintiff came forward to represent a New Hampshire class, and the law of the case prevented Lead Counsel from asserting a New Hampshire claim without a New Hampshire class representative.

43.     Mr. Bonsignore's claims that he notified Lead Counsel of a viable New Hampshire class representative are highly questionable for the same reasons as Missouri.  Indeed, the email from Ms. Jorgenson indicates that she did not have proof of purchase.

*     *     *

44.     Certain objectors criticize me for failing to approach attorneys general of these other states.  I was appointed Lead Counsel to represent the interests of purchasers in the 22 indirect purchaser state classes.  As Lead Counsel I have no duty to represent purchasers in other states, and the objectors cite to no authority requiring Lead Counsel to approach state attorneys general with regard to the claims of those states' residents.  Nonetheless, I in fact notified several attorneys general when the complaints were filed, and when IPPs entered into settlements with Chunghwa and LG, it is my understanding that those Defendants sent notice to all state attorneys general pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS - Master File No. CV-07-5944-JST

45. Contrary to the claims of Messrs. Cooper and Scarpulla, I engaged in settlement negotiations with Defendants throughout the litigation. At the time of Judge Walker's R&R (Dkt. No. 3200), I had settled with three of the Defendants and was actively negotiating with other Defendants. All of the settlement negotiations were hard-fought and conducted before Judge Walker or Judge Fern Smith.

46. IPPs were forced to intervene in the California Attorney General's case because Philips took the position that its settlement with the AG released the claims of California natural persons in this case. Had we not challenged the approval of that settlement, Philips would have had a strong argument at summary judgment that those claims were released.[5] In my opinion, IPPs' ultimate settlement of $175 million from Philips supports the merits of our position vis-à-vis Philips, namely that the release of California natural persons' claims for less than $500,000 was not fair, reasonable or adequate. Our actions preserved the claims of California natural persons and increased the ultimate settlement from Philips.

47. My office, with the assistance of former Michigan Deputy Attorney General Paul Novak, is working with the California Attorney General's ("CA AG") office to address the Attorney General's conditional objection to the notice program and the plan of distribution.

48. Attached as **Exhibit G** is a true and correct copy of page 15 of California's Reply to Opposition of Objector Jeffrey Figone to Motion for Final Approval of the Philips Settlement, filed October 30, 2013 in *The State of California v. Chunghwa Picture Tubes, Ltd.,* No. CGC-11-515786, San Francisco Superior Court. In this document, the California Attorney General states that the scope of the release in the AG's settlement agreement with Philips "does not cover class claims" under the *parens patriae* and other causes of action she alleged, where, as in this MDL, "there is a certified class."

49. I was counsel in the case entitled *Thayer v. Wells Fargo Bank.* My co-counsel and I obtained free checking privileges for life for a class of Wells Fargo Bank customers. I received

---

[5] Philips moved for summary judgment on California natural persons' claims, arguing that the judgment approving its settlement with the California Attorney General released those claims. (*See* Dkt. No. 3034.)

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS - Master File No. CV-07-5944-JST

a fee award from the court, plus a multiplier.  The defendant Wells Fargo Bank paid the fee in the full amount.  I had no further involvement in that case, and was not involved in any way in the appeal of that case.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 19th day of November 2015 at San Francisco, California.


/s/      *Mario N. Alioto*
Mario N. Alioto

***Lead Counsel for the Indirect Purchaser Plaintiffs***

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS - Master File No. CV-07-5944-JST

# EXHIBIT A

**Lauren Capurro (Russell)**

| | |
|---|---|
| **From:** | Lauren Capurro (Russell) <LaurenRussell@tatp.com> |
| **Sent:** | Wednesday, May 27, 2015 9:02 PM |
| **To:** | 'tstack@rcalaw.com'; 'MMurphy@baileyglasser.com'; 'mmuecke@BFFB.com'; 'AMeyer@ForThePeople.com'; 'David Syrios'; Ike Diel; John D. Bogdanov; 'essenma2 @yahoo.com'; 'dkaron@karonllc.com'; 'smansfield@foleymansfield.com'; 'Bob Methvin'; 'joel@lkwfirm.com'; 'rbonsignore@class-actions.us'; Sylvie Kern (sylviekern@yahoo.com); 'lgpapale@papalelaw.com'; 'JWyatt@wyattlaw.net'; 'Joel@jeffrieslaw.com'; 'Brent Irby'; 'mkirkpatrick@vtlawfirm.com'; 'Kevin@facslaw.com'; msimon@facslaw.com; Jennie Lee Anderson; dbirkhaeuser@bramsonplutzik.com; Jennifer Rosenberg; Christopher T. Micheletti (CMicheletti@zelle.com); ncihlar@straus-boies.com; Diane Pritchard; 'pnovak@milberg.com'; Sylvie Kern (sylviekern@yahoo.com); Bob Gralewski; Brian S. Umpierre |
| **Cc:** | malioto@tatp.com; 'jpatane@tatp.com' |
| **Subject:** | In Re: Cathode Ray Tube (CRT) Antitrust Litig., MDL No. 1917/Letter dated May 27, 2015 |
| **Attachments:** | Letter dated May 27, 2015.pdf; Final CRT IPP Mtn for Preliminary Approval 5.27.15.pdf |

Dear Counsel:

Please see the attached letter from Mario Alioto.

Best regards,

Lauren

Lauren C. Capurro (Russell)
Attorney at Law
Trump, Alioto, Trump & Prescott, LLP
2280 Union Street
San Francisco, CA 94123
Tel: (415) 563-7200
Direct line: (415) 447-1496
Cell: (415) 860-5051
Fax: (415) 346-0679
E-mail: laurenrussell@tatp.com

This message is sent by a law firm and may contain information that is privileged or confidential.  If you received this transmission in error, please notify the sender by email and delete the message and any attachments.

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

May 27, 2015

**CONFIDENTIAL WORK PRODUCT COMMUNICATION**
**VIA EMAIL**

To:     All Indirect Purchaser Plaintiffs' Class Representatives' Counsel

Re:     ***In Re: Cathode Ray Tubes (CRT) Antitrust Litigation,* MDL 1917**

Dear Counsel:

I am very pleased to inform you that we have entered into settlement agreements with the Philips, Panasonic, Hitachi, Toshiba and Samsung SDI Defendants. These Defendants have agreed to pay a total of $528 million to settle our claims against them.

As you know, two defendants (Chunghwa and LGE) had previously agreed to pay $35 million to settle our claims against them. Thus, the total settlement fund in this matter is $563 million.

This is an excellent result that would not and could not have been achieved without the hard work and participation of you and your client(s). Thank you for your and your clients' efforts on behalf of consumers in their states.

We will be moving for preliminary approval of these recent settlements shortly. We have attached a copy of the memorandum in support of the motion for your review. The memorandum contains additional details regarding the settlements, the notice plan and the plan of distribution. If you or your client(s) have any questions or concerns, please do not hesitate to contact me (malioto@tatp.com) or Lauren Capurro of my office (laurenrussell@tatp.com).

Please know and advise your client(s) that, pursuant to the terms of the settlement agreements, the terms of these recent settlements are <u>confidential</u> until the preliminary approval motion is filed. In addition, the case is ongoing and we ask that you not make public statements about the case or talk to reporters.

I look forward to continuing to work with you as we work toward final resolution of this case.

Sincerely,

/s/ Mario N. Alioto
Lead Counsel for the Indirect Purchaser Class

# EXHIBIT B

**From:** Mario Alioto [mailto:MAlioto@TATP.com]
**Sent:** Friday, September 18, 2015 5:35 PM
**To:** 'Francis Scarpulla'
**Subject:** RE: CRT/Inclusion of Your Time in the Fee Petition

I'm sorry you were not able to speak with me regarding the inclusion of your time in the fee petition.

We understand that you have also declined to speak with Bob Gralewski regarding your fee declaration and your time.  Bob is a member of the audit committee that has been contacting all firms to discuss their time and ensure that the fee declarations are submitted in accordance with Lead Counsel's instructions (see attached letter).  The audit committee has been cutting certain categories of time from all firms according to a number of rules (most of which were included in the attached letter):

1.   Time spent on the lead counsel motions is to be removed on the grounds that this work did not benefit the class;

2.   Read and review time that was not done in connection with a specific assignment from Lead Counsel, on the grounds that it is duplicative of work done by other counsel;

3.   Other time that was unassigned or has not been approved by Lead Counsel; and

4.   Internal case management time, such as organizing internal files.

Your firm's time, like many firms, includes some of the aforementioned categories of time. Since all other firms have agreed to remove these categories of time, we cannot make an exception for you.

In addition, we asked that all firms submit their time at historic rates.  You did not do this.  You have submitted all of your time at your current rate of $1250 per hour.  We cannot submit all of your time at current rates since no other firm is doing this.  Moreover, your current rate is far higher than that of any other attorney who worked on this case.

Finally, you also did not include the lodestar summary chart that we asked all firms to submit (and which many courts require), and instead attached your daily time sheets.

Since you have not submitted your fee declaration in accordance with our instructions, and you have refused to speak with us regarding changes to your declaration and your time, we cannot include your fee declaration in the joint fee petition. We will, however, be including $64,708.75 in lodestar for your firm in the joint fee petition. Based on the audit committee's review of your time sheets, we have determined that you have 59.05 hours of compensable time. We applied the historic rates listed in your timesheets to calculate your lodestar.

Having said all of that (which was provided to me by the audit committee), I would like to include as much of your time as we can under the rules set out above. There have been a number of instances where we have questioned the time of other firms and ultimately allowed it after discussing it with them. So please call me so we can do this with your time. Thanks.

Mario N. Alioto

TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP

2280 Union Street

San Francisco, CA 94123

Telephone:415 447-1650

Facsimile:415 346-0679

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by e-mail and delete the message and any attachments.

# EXHIBIT C

From: **Francis Scarpulla** fos@scarpullalaw.com
Subject: Re: conference re CRT
Date: September 3, 2015 at 3:08 PM
To: Bob Gralewski bgralewski@kmllp.com
Cc: Cate Cusick cpc@scarpullalaw.com, Dan Hume dhume@kmllp.com



I don't think there is anything to discuss. If my time is not included I'll file my own petition.

On Sep 3, 2015, at 2:35 PM, Bob Gralewski <bgralewski@kmllp.com> wrote:

> Fran,
>
> I never heard back from you.
>
> We want to include your time in the fee petition but we need to discuss it with you first.  That conversation needs to happen today or tomorrow.  When do you have time to talk?  I'm always reachable on my mobile – 619–818–6255.  You could start with my office number first – 619–398–4340.  Or give me a time and number that works for you and I'll call you.
>
> Thanks Fran.
>
> Bob
>
>> On Aug 31, 2015, at 10:03 AM, Bob Gralewski <bgralewski@kmllp.com> wrote:
>>
>> Fran,
>>
>> Sorry we didn't connect last week.  How does today look for you?  I'm available all day.  Let me know.
>>
>> I'd like to discuss our fee petition.  We all want to include you and your time in it, and I want to understand if that's what you want as we have a hard deadline approaching.  I also want to discuss your request for everyone's time detail.
>>
>> Hope to talk today.
>>
>> Bob
>>
>>> On Aug 27, 2015, at 7:38 AM, Francis Scarpulla <fos@scarpullalaw.com> wrote:
>>>
>>> Today is not good for me. Tomorrow I have commitments for the last day my daughter is with us before returning to Rome.
>>>
>>> What is it you want to discuss about CRT?
>>>
>>>
>>> On Aug 27, 2015, at 7:07 AM, Bob Gralewski <bgralewski@kmllp.com> wrote:
>>>
>>> Sorry for the delay in replying.  Busy day yesterday.
>>>
>>> How about:
>>>
>>> today at 12:30 pm Pacific
>>> today at 6:00 pm Pacific or
>>> tomorrow at 8:00 am Pacific

When we land on a date/time, let's use:

866−398−2885
175−973#

Look forward to hearing back and talking.

On Aug 25, 2015, at 4:20 PM, Cate Cusick <cpc@scarpullalaw.com> wrote:

Mr. Gralewski,

Fran said he could speak with your regarding the above-referenced matter.   Would you please contact your colleague and let me know three dates/times that are available to each of you, and I will have Fran coordinate with you, unless Fran decides to contact you directly through this shared email.

Thank you.

Cate Cusick
Law Offices of Francis O. Scarpulla
(415) 788-7210

# EXHIBIT D



**BONSIGNORE**
**TRIAL LAWYERS**™
EST 1985

(http://class-actions.us)

in  f  g

(http://www.li
(http://www.fp
bonsignore/14

Walmart Scholarship |

📞 (866) 692-1745 (http://class-actions.us/contact-us/) |

🏠 Home (http://class-actions.us)  |  About Us (http://class-actions.us/about-us/)  |  Practice Areas  |

Current Cases (http://class-actions.us/current-cases/)  |  News Center (http://class-actions.us/news-center/)  |

Co-Counsel (http://class-actions.us/co-council/)  |  F.A.Q. (http://class-actions.us/f-a-q/)  |

Contact Us (http://class-actions.us/contact-us/)

In Re: Cathode Ray Tube (CRT) Antitrust Litigation (MDL No. 1917) -Update

HOME (HTTP://CLASS-ACTIONS.US) / CONSUMER PROTECTION (HTTP://CLASS-ACTIONS.US/CATEGORY/CONSUMER-PROTECTION/), IN PROGRESS (HTTP://CLASS-ACTIONS.US/CATEGORY/IN-PROGRESS/), LATEST NEWS (HTTP://CLASS-ACTIONS.US/CATEGORY/LATEST-NEWS/) / IN RE: CATHODE RAY TUBE (CRT) ...

AUGUST 31ST  BY ADMIN (HTTP://CLASS-ACTIONS.US/AUTHOR/ADMIN/)  💬 0  ❤ 0

Bonsignore Trial Lawyers announces that notice of the CRT Settlements has been published in accordance with the notice plan approved by the Court during August 2015. Class members may now file claims on the settlement website, www.CRTclaims.com (http://www.crtclaims.com/).

Consumers who purchased CRT televisions or computer monitors between INSERT DATE TO INSERT DATE may now file claims. If in doubt if your purchase was made in a state that was included in the settlement, refer to the Settlement FAQ, contact the Claims Administrator or honestly fill out the claim form.

There is a simple online claim form, which is available on the website and should only take a few minutes for an individual consumer to complete and submit. The claim form does not require proof of purchase, and we anticipate paying each claimant a minimum of $25.

The online claim form, which is available on the website, is said to be the easiest and fastest method to submit a claim. The claim form can also be downloaded from the website and completed in hard copy and submitted by mail.

Click here for a  a copy of the claim form. (http://class-actions.us/wp-content/uploads/2013/06/CRT_CLAIM_FORM_Final.pdf)

(http://class-actions.us/wp-content/uploads/2013/06/CRT_CLAIM_FORM_Final.pdf)

There is a list of Frequently Asked Questions and responses on the website that should answer any questions that you or potential claimants may have.

This claim process is intended to make sure that the settlement funds are properly paid to the consumer class members who were injured by the CRT conspiracy.

Related Posts

Investigating case on behalf of all current and former professional soccer players

BONSIGNORE INVESTIGATING CASE ON BEHALF OF ALL CURRENT AND FORMER PROFESSIONAL SOCCER PLAYERS  who from 2002 to the present played professional soccer for a team governed by FIFA, the United States Soccer Federation, or Major League Soccer.

Speak to an Attorney Toll Free

Call (866) 692-1745



**BONSIGNORE**
**TRIAL LAWYERS**™
— EST 1985 —

Get a Free Consultation

Contact us for a free, no obligation!
Name (required)

Email (required)

Phone (required)

EXHIBIT E

1
2
3
4
5
6
7

ENDORSED
F I L E D
San Francisco County Superior Court

SEP 2 0 2007

GORDON PARK-LI, Clerk
BY: _____ JOSE RIOS MERIDA _____
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

|  |  |
|---|---|
| BRYAN BROCK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HONEYWELL INTERNATIONAL INC. and DOES 1-100, inclusive,<br><br>Defendant. | Case No. CGC 04-436205<br><br>**ORDER FOR SANCTIONS UNDER C.C.P. 2023.030** |

On August 28, 2007, the Court held a hearing on the Order to Show Cause issued on July 16, 2007 to Robert Bonsignore ("OSC"). Mr. Bonsignore was present and was represented by Carolyn Beasley Burton, Esq. of Glynn & Finley LLP. Defendant Honeywell International Inc. ("Honeywell") appeared through its counsel Richard Parker, Esq. and Michael Tubach, Esq. of O'Melveny & Myers LLP and Eric Liebeler, Esq. Brian Barnhorst, Esq. of The Mogin Law Firm appeared on behalf of plaintiffs. Having considered the evidence and briefs submitted by the parties and the arguments of counsel, and good cause appearing, the Court hereby finds:

1    1. It has jurisdiction over Mr. Bonsignore for the purposes of the OSC and the

2    sanctions imposed herein by virtue of the activities found to have been conducted by Mr.

3    Bonsignore effecting this lawsuit as set forth below.

4    2. Mr. Bonsignore has had notice and an opportunity for a hearing on whether he

5    should be sanctioned pursuant to the OSC and as required by California Code of Civil

6    Procedure section 2023.030.

7    3. Mr. Bonsignore is an attorney admitted to practice in Massachusetts but not in

8    California and was never admitted *pro hac vice* in this case.

9    4. The original named plaintiff in this case is Bryan Brock. In a declaration filed

10   herein on June 14, 2007, Mr. Brock stated that he was "brought into this case" by Mr.

11   Bonsignore's law firm, Bonsignore and Brewer, and that he considered Mr. Bonsignore to

12   be his lawyer. (Declaration of Bryan Brock in Support of Opposition to the Motion of

13   Defendant Honeywell, Inc. for Sanctions, filed June 14, 2007, "Brock Decl.," par. 2 and

14   4.) California counsel of record for Mr. Brock, however, has been The Mogin Law Firm,

15   P.C.

16   5. Defendant Honeywell served a notice of Mr. Brock's deposition for October 18,

17   2006. Shortly thereafter,  Daniel Mogin, Esq. of The Mogin Law Firm ("Mr. Mogin")

18   called Mr. Brock to get available dates for his deposition. (Brock. Decl., par. 4.) Mr.

19   Brock told Mr. Mogin that all "future discussions and deposition scheduling" should be

20   with Mr. Bonsignore. Brock then called Mr. Bonsignore and asked that Brock only deal

21   with him. (*Id.*, par. and 5.) There is no indication in the record as to why Mr. Brock chose

22   to deal solely with Mr. Bonsignore, but as is set forth below, it is apparent that thereafter

23   the exclusive line of communication to Mr. Brock was through Mr. Bonsignore. Around

24   this time, Mr. Brock told Mr. Bonsignore that he no longer wanted to be involved in the

25   case. (*Id.*). .

26   6. On November 2 and 3, 2006, Mr. Mogin advised Honeywell's counsel that Mr.

27   Brock would not appear for a deposition because he wanted to withdraw as class

28   representative from the case. (Declaration of Ro Khanna in Support of Honeywell

2

International Inc.'s Notice of Motion and Motion for Sanctions, "Khanna Decl," Ex. 1 and 2.) Honeywell advised Mr. Mogin that it nonetheless wanted to take Mr. Brock's deposition and served Mr. Brock with a subpoena to appear for deposition on December 5, 2006. On December 4, 2006, The Mogin Law Firm filed a Motion for a Protective Order to preclude the Brock deposition on the grounds that Mr. Brock wished to withdraw from the case. (Khanna Decl., Ex. 3.)  The parties agreed to take the deposition off calendar but continued to discuss potential deposition dates while the Motion for a Protective Order was pending. In the course of those efforts, on February 14, 2007, Honeywell served Mr. Brock with a subpoena to appear at his deposition on April 3, 2007, and a proper notice of the deposition was served. (Khanna Decl., Ex. 7.)

7. The Motion for Protective Order was denied by this court on March 23, 2007 and Mr. Brock was ordered to appear for his deposition. At that hearing, Mr. Mogan advised the court that he had filed a motion to withdraw as counsel for Mr. Brock, and that he could make no representation that Mr. Brock would appear at his deposition.

8. On March 27, 2007, Honeywell's counsel advised Mr. Mogan that he intended to go forward with Mr. Brock's deposition on April 3, 2007. (Khanna Decl., Ex. 12.) In response, on March 27, 2007, Mr. Brian Barnhurst of The Mogan Law Firm sent an email to Honeywell's counsel stating "we can make no representation regarding Mr. Brock's availability for deposition" and that the Mogan Law Firm "has made and would continue to make every effort to inquire as to Mr. Brock's availability, but could make [sic, no] promises about the likelihood of success in determining his availability, let alone assuring his attendance on the day noticed." (Khanna Decl., Ex. 13.) The email made it clear that the problem was that The Mogan Law Firm could not communicate directly with Mr. Brock. Mr. Barnhurst stated "I have communicated to Jill Abrams (who is now on vacation) the result of Friday's hearing on the motion for the protective order. We have asked that she convey the information to Mr. Bonsignore, and that he convey it to Mr. Brock…she advised  that she had been in contact with Mr. Bonsignore before she left for vacation, and he told her  he would obtain available dates from Mr. Brock." (*Id.*) Ms.

1   Abrams was admitted *pro hac vice* in this case as co-counsel for Mr. Brock on June 11,
2   2007.

3       9. No alternative date was agreed upon for the deposition, although Mr. Barnhurst
4   did tell Honeywell's counsel that he could not assure Mr. Brock's attendance on April 3,
5   and that any assumption that Mr. Brock would show up would be "at your peril."
6   Declaration of Brian A. Barnhurst in Opposition to Motion for Sanctions, filed June 14,
7   2007 (Barnhurst Decl."), par. 14.

8       10. Richard Parker, Esq., counsel for Honeywell, works at his firm's office in
9   Washington, D.C. On April 2, 2007 while at the Washington Dulles airport and about to
10  board his flight to Sacramento, California for the deposition, his office phoned him and
11  said that Mr. Barnhurst had just called and said that Mr. Brock would not appear at the
12  deposition. Mr. Parker instructed his office to respond that it was too late to change the
13  deposition date. (Khanna Decl., Ex. 16, pg. 5, lines 2-13.)

14      11. Mr. Brock did not appear for his deposition. Mr. Brock stated that "[o]n the
15  evening of April 2, 2007, via e-mail from Mr. Bonsignore, I first became aware that my
16  deposition was supposed to occur on April 3, 2007. Up until that time, I believed that I
17  was no longer a class representative. I was informed by Mr. Bonsignore that this was
18  being handled and it was my understanding that I did not need to appear for the
19  deposition" (Brock Decl., par. 9 and 10.).

20      12. Mr. Barnhurst was present at the deposition despite the absence of Mr. Brock.
21  He had to interrupt a family vacation in Palm Springs in order to fly to Sacramento for the
22  deposition.  He apologized for the failure of Mr. Brock to appear and for any
23  inconvenience. He explained that Mr. Bonsignore had not timely made the necessary
24  arrangements for an agreed upon deposition date, that Mr. Bonsignore had instructed The
25  Mogan Law Firm not to contact Mr. Brock directly, and that communications with Mr.
26  Bonsignore were difficult to accomplish. (Khanna Decl., Ex. 16,  pg. 6-7. )

27      13. On April 5, 2007, Honeywell filed a Motion for Sanctions against Mr. Brock
28  and Mr. Bonsignore. The proof of service of the motion establishes that on April 5, 2007,

4

1    Mr. Bonsignore was served by email with a copy of all of the moving papers.  The motion

2    was not directed against the Mogan Law Firm. Mr. Bonsignore was mailed the papers in

3    support of the motion as a named recipient on the proof of service. The motion was heard

4    on June 27, 2007. Mr.Brock was present. Mr. Bonsignore neither appeared nor were any

5    papers filed on his behalf. In light of Mr. Brock's declaration quoted above and the

6    arguments of counsel, it did not appear that Mr. Brock could be faulted for his failure to

7    appear at his deposition. Accordingly, the motion for sanctions against him was denied.

8    The court announced its intention to issue the OSC directed to Mr. Bonsignore.

9          14. In response to the OSC, on August 24, 2007, Mr. Bonsignore through his

10   counsel filed a document entitled "Robert J. Bonsignore's Declaration in Response to

11   Order to Show Cause Re Contempt and in Opposition to Honeywell's *Ex Parte*

12   Application." The filing purports to be a declaration by Mr. Bonsignore, and Mr.

13   Bonsignore's name appears in script at the end following the statement: "I declare under

14   penalty of perjury under the laws of the State of California that the foregoing is true and

15   correct." There is a handwritten circle above the script name at the bottom of the

16   declaration with what appears to be the letters "SD" in it. None of Mr. Bonsigniore's

17   filings in response to the OSC explain this circle.

18         15. The hearing on the OSC occurred on August 28, 2007. In response to this

19   court's question regarding the circle above the script name, Mr. Bonsignore's counsel

20   explained that the declaration was signed for Mr. Bonsignore by Mr. Bonsignore's "legal

21   assistant" because he was busy with a personal family trip. This declaration is thus not

22   competent evidence.

23         16. Attached as Exhibit 1 to Mr. Bonsignore's  "declaration" is an email

24   establishing that Mr. Bonsignore was aware on March 23, 2007 that Mr. Brock would be

25   required to appear for his deposition and an affirming that Mr. Bonsignore that he would

26   assist in this matter. While this is not competent evidence, the filing of this "declaration"

27   on behalf of Mr. Bonsignore is a certification under C.C.P. § 128.7(b) by his counsel that

28   there is a factual basis for the veracity of Exhibit 1.

17. Upon the foregoing, this court finds that Mr. Bonsignore undertook to be the ultimate authority regarding the deposition of the named plaintiff Bryan Brock, counseled Mr. Brock in a manner akin to giving him legal advice regarding the deposition scheduling, prevented plaintiff's counsel of record from being able to interact effectively with plaintiff's counsel regarding the scheduled deposition, and despite knowing on March 23, 2007 that  Mr. Brock would have to attend his deposition, did not contact him until the evening before the scheduled deposition and, at that time, wrongfully led Mr. Brock to reasonably believe that he need not attend the deposition. These activities interfered with the taking of Mr. Brock's deposition and caused both Honeywell's counsel and Mr. Brock's co-counsel undue inconvenience and expense.

18. This court further finds that Mr. Bonsignore also interfered with the discovery management processes in this court in that he failed to provide any input to Honeywell Motion for Sanctions against him despite the fact that he had notice that his activities were the main focus of the motion, which failure necessitated the OSC. Mr. Bonsignore further failed to submit competent evidence in response to the OSC, allowed a declaration to be signed for him by another person, and did not disclose to this court that his "declaration" had not been signed by him.

Accordingly, it is hereby ordered:

A. Pursuant to Code of Civil Procedure Section 2023.030, Mr. Bonsignore shall pay sanctions of $10,000 to defendant Honeywell as reasonable costs for the failure of Mr. Brock to appear at his deposition on April 3, 2007, to be paid within twenty days of the date of this Order.

B. In any *pro hac vice* application that Mr. Bonsignore makes in any state or federal court in California within five years of this Order, Mr. Bonsignore shall disclose that he has been sanctioned and ordered to pay $10,000 to Honeywell by this Court pursuant to California Code of Civil Procedure section 2023.030.

C. The Court finds that it has not been proven beyond a reasonable doubt that Mr. Bonsignore committed a contempt of court under California Code of Civil Procedure

6

1   section 1209. Accordingly, the Order to Show Cause issued on July 16, 2007 is hereby

2   discharged.

3

4   Dated:  September 20, 2007

5                                                          Judge of the Superior Court

6                                                          RICHARD A. KRAMER

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

ORDER FOR SANCTIONS

# Superior Court of California
## County of San Francisco

| | |
|---|---|
| BRYAN BROCK, on behalf of himself and all others similarly situated, | Case Number: **CGC-04-436205** |
| Plaintiff(s) | |
| vs. | |
| | **CERTIFICATE OF MAILING** |
| HONEYWELL INTERNAITONAL, INC., et al., | (CCP 1013a (4) ) |
| Defendant(s) | |

I, Jose Rios Merida, a Deputy Clerk of the Superior Court of the City and County of San Francisco, certify that I am not a party to the within action.

On September 21, 2007, I served the attached ORDER FOR SANCTIONS UNDER C.C.P. 2023.030 by placing a copy thereof in a sealed envelope, addressed as follows:

Daniel J. Mogin
Brian A. Barnhorst
THE MOGIN LAW FIRM, P.C.
110 Juniper Street
San Diego, CA 92101
*Attorneys for plaintiffs Brian Brock & Class*

Julie D. Wood
Rohit Khanna
O'MELVENY & MYERS LLP
Embarcadero Center West
275 Battery Street
San Francisco, CA 94111-3305
*Attorneys for defendants Honeywell International*

Carolyn Beasley Burton
GLYNN & FINLEY, LLP
One Walnut Creek Center, Suite 500
100 Pringle Avenue
Walnut Creek, CA 94596
*Specially appearing for Robert Bonsignore*

D. Michael Noonan
Christine Craig
SHAHEEN & GORDON, P.A.
140 Washington Street
Dover, NH 03821-0977
*Attorneys for plaintiffs McKinnon Wright et al*

Richard G. Parker
O'MELVENY & MYERS, LLP
1625 Eye Street, N.W.
Washington, D.C. 20006-4001
*Attorney for defendants Honeywell International*

Eric C. Liebeler
HONEYWELL
1600 Utica Avenue South, Suite 750
St Louis Park, MN 55416
*House Counsel for Honeywell International*

Jill S. Abrams
ABBEY GARDY, LLP
212 East 39th Street
New York, New York 10016
*Attorney for plaintiffs Brian Brock & Class*

Robert Bonsignore
BONSIGNORE & BREWER
23 Forest Street
Medford, MA 02155
*Attorney for plaintiffs Fagan, Gianasca et al*

I then placed the sealed envelopes in the outgoing mail at 400 McAllister Street, San Francisco, CA. 94102 on the date indicated above for collection, attachment of required prepaid postage, and mailing on that date following standard court practices.

Dated:  September 21, 2007

GORDON PARK-LI, Clerk

By: _____

J. RIOS-MERIDA, Deputy

# EXHIBIT F-1

## Lauren Capurro (Russell)

| | |
|---|---|
| **From:** | Lauren Capurro (Russell) <LaurenRussell@tatp.com> |
| **Sent:** | Wednesday, June 24, 2015 10:45 PM |
| **To:** | Alexander E. Barnett; Bob Gralewski; Brent Irby; Brian Sund; bribarry1@yahoo.com; Bruce Mulkey; CCORBITT@zelle.com; Charles M. Kester; Christopher T. Micheletti (CMicheletti@zelle.com); Christy Crow; clovell@lshllp.com; craigessenmacher@yahoo.com; D. Syrios (dsyrios@ademilaw.com); Dan Gustafson; Daniel Hume; Daniel Karon; David Freedman; dbirkhaeuser@bramsonplutzik.com; Dennis J. Stewart (dstewart@hulettharper.com); Diane Pritchard; Donald Amamgbo (donald@amamgbolaw.com); Donna Solen; Eric Hoagland; Eric Pickar; Francis Scarpulla; Frank Balint; Guri Ademi; Ike Diel; James H. McManis (jmcmanis@mcmanislaw.com); Janelle Welling; Jeff Crabtree; Jeffrey Bartos; Jennie Lee Anderson; 'Joe Goldberg'; Joel Flom; Joel Smith; John D. Bogdanov; John G. Felder, Jr.; Josef D. Cooper; jpatane@tatp.com; jzahid@zelle.com; Kit Belt; knarine@kbnlaw.com; kvalinoti@valinoti-dito.com; laurenrussell@tatp.com; LGPapale@Papalelaw.com; malioto@tatp.com; Marvin A. Miller; Marwa Elzankaly (melzankaly@mcmanislaw.com); Mary Kirkpatrick; Matthew Duncan; msimon@facslaw.com; ncihlar@straus-boies.com; Paul Novak; ReggieT2@aol.com; Richard F. Horsley; Robert Bonsignore; Robert Bonsignore; Robert G. Methvin; Robert Gerard; Robert Pohlman; Robert S. Green; Rodney Ray; S. Randall Hood (rhood@mcgowanhood.com); sademi@ademilaw.com; Seymour Mansfield; Sheri Carter (scarter@straus-boies.com); Sherman Kassof; skupfer@glancylaw.com; Sylvie Kern (sylviekern@yahoo.com); terry@grossbelsky.com; Theresa Moore; Thomas A. Doyle; Timothy Battin; Veronica Besmer; W. Timothy Needham |
| **Cc:** | malioto@tatp.com |
| **Subject:** | CRT/Time & Expense Reports for Fee Petition |
| **Attachments:** | Letter dated 6.24.2015.pdf; CRT IPP Time & Expense Report Template.xls; CRT Example Fee Declaration.doc |

Dear Counsel:

Please see attached.

Best regards,

Lauren

Lauren C. Capurro (Russell)
Attorney at Law
Trump, Alioto, Trump & Prescott, LLP
2280 Union Street
San Francisco, CA 94123
Tel: (415) 563-7200
Direct line: (415) 447-1496
Cell: (415) 860-5051
Fax: (415) 346-0679
E-mail: laurenrussell@tatp.com

This message is sent by a law firm and may contain information that is privileged or confidential.  If you received this transmission in error, please notify the sender by email and delete the message and any attachments.

# EXHIBIT F-2

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

June 24, 2015

## CONFIDENTIAL WORK PRODUCT COMMUNICATION
## VIA EMAIL

To:      All Indirect Purchaser Plaintiffs' Class Counsel

Re:      *In Re: Cathode Ray Tubes (CRT) Antitrust Litigation,* **MDL 1917**

Dear Counsel:

As you know, we have filed a motion for approval of settlements with Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson and Technologies Displays America.

We intend to file a motion for attorneys' fees and reimbursement of expenses in connection with these settlements at the appropriate time. The exact timing will depend on when the Court grants preliminary approval of the settlements and when notice to class members is published.

Therefore, please make sure that your firm's time and expense reports are complete and up to date for the time period: Inception through May 31, 2015. At this time we are asking all firms to submit the following:

1. Summary time sheet listing each attorney's and non-attorney's time by year, in categories, using historical rates (*see* attached Excel template). We also ask that you provide a lodestar based on current billing rates, which we will report for comparison.
2. Detailed backup timesheets showing your daily time entries.
3. Cost summary using the attached template.
4. Signed Declaration (*see* attached template).

We will be reviewing your backup timesheets and expense summary. Please review your firm's time reports and eliminate any time for (1) work performed without authorization of Lead Counsel, including attendance at hearings or depositions that you were not specifically assigned to attend; (2) case management; and (3) "read and review" time that was not incurred in connection with a specific work assignment, or for which you cannot show the purpose of the review.

When submitting expenses, we ask all firms to do the following:

IPP Class Counsel
June 24, 2015
Page **2** of **2**

1. Any first class or business class airfare must be reduced to the equivalent of a non-refundable coach fare.
2. Excessive travel costs should be reduced (hotel, ground travel, etc.).
3. All in-house copy charges should be capped at $0.20 per page.

Please email the above requested documents no later than **July 27, 2015,** to Stephen J. Pelleriti at sjpcpa@earthlink.com and Lauren C. Capurro at laurenrussell@tatp.com.  It is essential that you provide the requested information by the deadline if you want to be included in the joint fee petition.

Sincerely,

/s/ Mario N. Alioto
Lead Counsel for the Indirect Purchaser Class

EXHIBIT F-3

**Lauren Capurro (Russell)**

| | |
|---|---|
| **From:** | Theresa Moore <tmoore@aliotolaw.com> |
| **Sent:** | Monday, August 17, 2015 5:43 PM |
| **To:** | Lauren Capurro (Russell) |
| **Cc:** | malioto@tatp.com |
| **Subject:** | Re: CRT/Time & Expense Reports for Fee Petition |

Hi Lauren-
I will double check everything when I get back to town. Just to clarify a couple things, as it states in my Declaration this is for me only not "my firm" Alioto Law Firm.

Just so you know I have never charged in any case, including this one, for looking at PHV motions or inconsequential Motions to Seal, and am not sure where you ( or whomever) got that impression, perhaps there was a mistaken assumption that the reviews were simultaneous to the time of filings? I don't know but just so you know that is not how I bill, and it is not at all reflected in this bill.  I do have a responsibility to clients, and do not remotely have things of that nature included.

I believe Ex 2 was the one you sent me to fill out which had all years.

With me being out of town Friday is tough timing, but the bill is small, so I would hope to get it out to you in time.

Thanks,
Theresa


On Aug 17, 2015, at 5:15 PM, Lauren Capurro (Russell) <LaurenRussell@tatp.com> wrote:

Theresa:

The audit committee has reviewed your fee declaration and your firm's time sheets and, pursuant to the instructions to all IPP counsel in our original June 24, 2015 letter, we ask that you remove the following categories of time entries:

1. **Unassigned read and review time**: there is a significant amount of time spent reviewing ECF filings for which your firm had no related assignment.  Indeed, many of the entries relate to inconsequential filings, such as PHV applications and motions to seal.  We cannot include this time in our fee petition because it is duplicative of time spent by lead counsel and the attorneys assigned to, for example, work on a particular motion.  It also provided no benefit to the Class.  In accordance with standard practice in these cases, we need to be able to represent to the court that duplicative, unnecessary time has been eliminated.

2. **Unassigned time**: there is also a significant amount of time spent meeting with unidentified co-counsel regarding the status of the case, conducting research etc.  Unless you had a specific assignment (which we don't believe you did), we cannot include this time in our fee petition.  Again, this time is duplicative and unnecessary unless it was assigned by lead counsel.

3. **Time after May 31, 2015**: we have instructed everyone to only include time up to **May 31, 2015**. Please remove all time after that date.

We have also decided not to include time spent on the lead counsel motions in our fee petition (including our own firm's time), on the grounds that such time did not benefit the Class. Please remove all of your firm's time devoted to the lead counsel motions as well.

Finally, Exhibit 2 of your declaration should include the lodestar charts by year as well as the summary of all years. The Court needs to be able to see the rates charged.

All of the above rules are being applied to all IPP counsel in this case. We must be consistent because it would be unfair if we allowed some firms to include these categories of time and not others. It is also in the interests of all firms that our joint fee petition be as clean as possible so that we can moot any possible objections.

If you want us to include your firm's time in the joint fee petition, we must receive your revised declaration and time sheets by **COB this Friday, August 21, 2015**. This is a hard deadline. We will not include your time if we don't hear from you by then.

Thank you for your prompt attention to this matter.

Best regards,

Lauren


Lauren C. Capurro (Russell)
Attorney at Law
Trump, Alioto, Trump & Prescott, LLP
2280 Union Street
San Francisco, CA 94123
Tel: (415) 563-7200
Direct line: (415) 447-1496
Cell: (415) 860-5051
Fax: (415) 346-0679
E-mail: laurenrussell@tatp.com


This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by email and delete the message and any attachments.

**From:** Theresa Moore [mailto:tmoore@aliotolaw.com]
**Sent:** Sunday, August 02, 2015 9:56 PM
**To:** Lauren Capurro (Russell)
**Cc:** sjpcpa@earthlink.com; malioto@tatp.com
**Subject:** Re: CRT/Time & Expense Reports for Fee Petition

…and here they are attached this time! in pdf.
Thanks,
Theresa

On Jul 30, 2015, at 11:15 AM, Lauren Capurro (Russell)
<LaurenRussell@tatp.com> wrote:

Thanks, Theresa.  I don't see your daily time sheets in what you sent me.  Can you
please send those?  Thank you.

Lauren

---

**From:** Theresa Moore [mailto:tmoore@aliotolaw.com]
**Sent:** Wednesday, July 29, 2015 6:07 PM
**To:** Lauren Capurro (Russell); sjpcpa@earthlink.com
**Cc:** malioto@tatp.com
**Subject:** Re: CRT/Time & Expense Reports for Fee Petition

Lauren-
I had this calendared for July 29, and just realized your letter states the 27th, I
expect that is not an issue.
Attached please find the requested documents, my Declaration with Exhibits and
time sheets, as well as the complete excel spreadsheet. This Declaration is for
myself only and not the entire firm.

Thanks you very much, Congratulations and thank you for all your hard work
over this extended period of time. Great job.
Best,
Theresa

Theresa D. Moore
Attorney at Law

**Alioto Law Firm**
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: 415 434-8900
Facsimile: 415 434-9200
www.AliotoLaw.com
tmoore@aliotolaw.com
www.linkedin.com/in/theresadriscollmoore

NOTICE:  This e-mail and any attachments is from the Alioto Law Firm and may contain
privileged or confidential material. It is solely intended for the addressee.  If you have
received this e-mail in error, please delete from your system without reading or copying,
and notify the sender by reply e-mail or by calling 415 434-8900.  Thank you.

On Jun 24, 2015, at 10:44 PM, Lauren Capurro (Russell)
<LaurenRussell@tatp.com> wrote:

# EXHIBIT F-4

**Lauren Capurro (Russell)**

| | |
|---|---|
| **From:** | Lauren Capurro (Russell) <LaurenRussell@tatp.com> |
| **Sent:** | Thursday, August 27, 2015 5:20 PM |
| **To:** | 'Theresa Moore' |
| **Cc:** | malioto@tatp.com |
| **Subject:** | RE: CRT Time and Expense Reports for Fee |

Theresa:

The audit committee has reviewed your revised declaration and time sheets.  Your time still includes the following categories of work that the audit committee has decided are not compensable and will not be included in the joint fee petition:

1. Time spent on the lead counsel motions;
2. Unassigned conferences/research with non-lead counsel; and
3. Unassigned read and review time, which was not for the purpose of updating a client and no work product was ever provided to lead counsel for the benefit of the Class.

Therefore, we have removed these categories of time and calculated the number of hours that we are prepared to include in the joint fee petition as follows:

2007: 9.5 hours x $600 =  $5700.00
2008: 23.75 hours x $725 = $17,218.75 (category 1 = 12 hours; category 3 = 1.1. hours; category 9 = 5 hours; category 10 = 5.65)

Total lodestar: $22,918.75

All of the cuts we have made to your time are consistent with the cuts made to other firms' time.

If you want to be included in the joint fee petition, please amend your declaration and resubmit my COB tomorrow.  Thank you.

Lauren


Lauren C. Capurro (Russell)
Attorney at Law
Trump, Alioto, Trump & Prescott, LLP
2280 Union Street
San Francisco, CA 94123
Tel: (415) 563-7200
Direct line: (415) 447-1496
Cell: (415) 860-5051
Fax: (415) 346-0679
E-mail: laurenrussell@tatp.com

This message is sent by a law firm and may contain information that is privileged or confidential.  If you received this transmission in error, please notify the sender by email and delete the message and any attachments.

**From:** Theresa Moore [mailto:tmoore@aliotolaw.com]
**Sent:** Friday, August 21, 2015 2:11 PM
**To:** LaurenRussell@tatp.com
**Subject:** CRT Time and Expense Reports for Fee

Lauren:
As requested, attached is the revised CRT Declaration with Ex 1 and Ex 2, along with the daily time records.

Best Regards,

Theresa



Theresa D. Moore
Attorney at Law

**Alioto Law Firm**
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: 415 434-8900
Facsimile: 415 434-9200
www.AliotoLaw.com
tmoore@aliotolaw.com
www.linkedin.com/in/theresadriscollmoore


NOTICE:  This e-mail and any attachments is from the Alioto Law Firm and may contain privileged or confidential material. It is solely intended for the addressee.  If you have received this e-mail in error, please delete from your system without reading or copying, and notify the sender by reply e-mail or by calling 415 434-8900.  Thank you.

EXHIBIT F-5

**Lauren Capurro (Russell)**

| | |
|---|---|
| **From:** | Theresa Moore <tmoore@aliotolaw.com> |
| **Sent:** | Friday, August 28, 2015 5:05 PM |
| **To:** | Lauren Capurro (Russell) |
| **Subject:** | CRT Time and Expense Reports for Fee |
| **Attachments:** | CRT Decl TDM 8.28.15.pdf |

Lauren-
As requested. Attached.


Theresa

Theresa D. Moore
Attorney at Law

**Alioto Law Firm**
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: 415 434-8900
Facsimile: 415 434-9200
www.AliotoLaw.com
tmoore@aliotolaw.com
www.linkedin.com/in/theresadriscollmoore


NOTICE:  This e-mail and any attachments is from the Alioto Law Firm and may contain privileged or confidential material. It is solely intended for the addressee.  If you have received this e-mail in error, please delete from your system without reading or copying, and notify the sender by reply e-mail or by calling 415 434-8900.  Thank you.

# EXHIBIT G



1  KAMALA D. HARRIS
   Attorney General of California
2  MARK BRECKLER
   Chief Assistant Attorney General
3  KATHLEEN FOOTE
   Senior Assistant Attorney General
4  PAUL A. MOORE (SBN 241157)
   PAMELA PHAM (SBN 235493)
5  NICOLE S. GORDON (SBN 224138)
   MICHAEL JORGENSON (SBN 201145)
6  EMILIO E. VARANINI (SBN 163952)
   455 Golden Gate Avenue, Suite 11000
7  San Francisco, CA  94102-7004
   Telephone:  (415) 703-5908
8  Fax:  (415) 703-5480
   E-mail:  Emilio.Varanini@doj.ca.gov
9  *Attorneys for Plaintiffs*
   State of California, *et al.*
10

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**OCT 30 2013**
Clerk of the Court
BY: JUDITH NUNEZ
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| **THE STATE OF CALIFORNIA, et al.;** | Case No. CGC -11-515786 |
| Plaintiffs, | [Related to Case No. CGC-11-515784] |
| **v.** | **CALIFORNIA'S REPLY TO OPPOSITION OF OBJECTOR JEFFREY FIGONE TO MOTION FOR FINAL APPROVAL OF THE PHILIPS SETTLEMENT** |
| **CHUNGHWA PICTURE TUBES, LTD., et al.,** | |
| Defendants. | Date:      December 5, 2013<br>Time:      9:30 a.m.<br>Dept:      303<br>Judge:     Richard A. Kramer |
| | Action Filed:  November 8, 2011 |

**(REDACTED VERSION)**

**Pursuant to Government Code section 12652, subdivision (c)(8)(D)(iii) and California Rules of Court, rule 2.573(a)(1) and (d)**

**C.   Only *Parens Patriae* Claims (As Opposed to Class Actions) Are Released By the Philips and Chunghwa Settlements Though Those Settlements Are Fair and Reasonable Regardless of the Scope of the Release.**

The scope of the release, as set out in the Attorney General's settlement agreement with Philips and Chunghwa, and in her settlement complaint with both, encompasses the Attorney General's *parens patriae* claims for overcharges and deadweight loss to natural persons under the Cartwright Act and her law enforcement restitutionary claims for those overcharges under the Unfair Competition Law ("UCL") and unjust enrichment.  It does not cover class claims under those causes of actions,[5] where, as here, there is a certified class.  First the Philips Settlement Agreement states on its face that the Attorney General is releasing only the claims she filed in her capacity as the State's Chief Law Enforcer and as "*parens patriae*."  (11/26/12 Varanini Decl. ¶ 6. Ex. B, Philips Settlement Agreement at p. 1.)  The agreement specifically defines "Releasor" specifically in terms of the Attorney General's chief law enforcement and *parens patriae* capacity:  "'Releasor' refers to (1) the State of California in its own behalf…; (2) the State acting parens patriae on behalf of all natural persons resident in California any time during the Relevant Period."  (11/26/12 Varanini Decl. ¶ 6. Ex. B, Philips Settlement Agreement at p. 4.)  The Release says nothing on its face about releasing class action claims in the event that there is a certified class; nor is a class action on behalf of natural persons under any of these theories alleged in the settlement complaint.

That is important.  First, with respect to the Attorney General's claims under the **Unfair Competition Law and the doctrine of unjust enrichment**, "a judgment for restitution secured by the Attorney General does not have any collateral estoppel effect on private actions for restitution."  (*Payne v. Nat'l Collection Systems, Inc.* (2001) 91 Cal.App.4th 1037, 1047.)  This is because:

> An action brought pursuant to Business and Professions Code section 17200 et seq. by a prosecutor is fundamentally different from a class action or other representative litigation. Unlike private litigants, the Attorney General has statutory authority to sue under the UCL and need not demonstrate standing. The Attorney General need not certify a class in order to recover on behalf of

[5] Deadweight loss cannot be obtained in a class action as Objector Figone admits.  (See Opp. at 1-3:11 and 8-13:2.)

15

1    **V.    CONCLUSION**

2           For the reasons stated here and in the underlying Motion, the Court should grant final

3    approval of the proposed settlements with Defendants Chunghwa and Philips.

4    Dated:  October 29, 2013                    Respectfully Submitted,

5                                                KAMALA D. HARRIS
                                                 Attorney General of California
6

7                                                /s/ Emilio E. Varanini

8                                                ————————————————————

9                                                EMILIO E. VARANINI
                                                 Deputy Attorney General
10                                               *Attorneys for Plaintiffs*

11   SF2011203501

12

13

14

15

16

17

18

19

20

21

22

23

24   ————————————————
     (…continued)
25   sufficient."].)  However, to the extent Objector is really seeking abstract guidelines from this
     Court concerning the Attorney General's authority to release her *parens patriae* claims, or the
26   scope of such release, for use in pending and future cases," that also is an improper de facto
     request for an advisory opinion and should be denied. (See *Southern California Edison Co. v.*
27   *State Farm Mut. Auto Ins. Co.* (1969) 271 Cal.App.2d 744, 747.["[I]t is well established that
     courts do not give advisory opinions."])
28
                                               24
     California's Reply to Opposition of Objector Jeffrey Figone to Motion for Final Approval of the Philips Settlement
                                                              Case No. CGC-11-515786