Robert J. Gralewski, Jr. (CA 196410)
KIRBY McINERNEY LLP
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: 619-398-4340
Email: bgralewski@kmllp.com

*Counsel for Kerry Lee Hall, Daniel Riebow and the*
*Certified Class of Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Case No. 3:07-cv-5944 JST<br>MDL No. 1917<br><br>**CLASS ACTION**<br><br>**ADDITIONAL DECLARATION OF ROBERT J. GRALEWSKI, JR. IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH PHILIPS, PANASONIC, HITACHI, TOSHIBA, SAMSUNG SDI, THOMSON, AND TDA DEFENDANTS**<br><br>Hearing Date: March 15, 2016<br>Time: 2:00 p.m.<br>Judge: Honorable Jon S. Tigar<br>Court: Courtroom 9, 19th Floor<br>Special Master: Martin Quinn, JAMS |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | |

I, Robert J. Gralewski, Jr., declare as follows:

1.   I am an attorney licensed to practice before all state and federal courts in the state of California, and I am a partner at Kirby McInerney LLP ("KM").  I have personal knowledge of the facts stated in this declaration, and if called as a witness, I could and would testify competently to them.  I make this declaration in support of the Indirect Purchaser Plaintiffs' ("IPPs") motion for final approval of settlements and, in connection with that motion, to offer facts that refute or undermine certain objections.

A.   The Audit Process and Robert Bonsignore

2.   At the direction of Lead Counsel, my firm and I audited several firms' time submissions including Robert Bonsignore's.  By way of background, every firm's time detail and related documentation was due to Lead Counsel on or before July 27, 2015.  Mr. Bonsignore missed this deadline.  After I attempted to communicate with him multiple times about providing the requested information, he finally submitted all of his time detail on September 8 and 9, 2015 – more than six weeks late.  Once I received his time detail, I objectively reviewed it for any billing inconsistencies or irregularities of which I discovered many.  On September 15, 2015, I emailed Mr. Bonsignore to inform him that as a result of the audit process, Lead Counsel was going to reduce his lodestar from $383,485 to approximately $234,265.  The next day we spoke on the phone more than once.  On the first call, Mr. Bonsignore was conciliatory and suggested a "compromise" and talked about "splitting it."  He ultimately proposed a lodestar of $305,000 to avoid "a round number."  I told him that I would present his proposal to Lead Counsel and get back to him.  I spoke with Lead Counsel and then phoned Mr. Bonsignore back to tell him that IPPs could not accept his proposal.  Immediately upon hearing this, Mr. Bonsignore became irate and made a number of threats of retaliation against Mario Alioto.  To be clear, at no time before I told him that IPPs would not "compromise" on his billing issues did Mr. Bonsignore ever state or even imply that he believed there were any defects with the settlement or that he would file an objection on behalf of his clients.

///

ADDITIONAL DECLARATION OF ROBERT J. GRALEWSKI, JR. IN SUPPORT OF INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS
Case No. 3:07-cv-5944 JST, MDL No. 1917

### B.  Objector Gianasca's Response to Being Served with a Subpoena

3.  I am informed and believe that on the morning of October 19, 2015, Anthony Gianasca called the Zelle Hofmann Voelbel & Mason LLP Framingham, Massachusetts' office regarding a subpoena I caused to be served which directed him to appear at that office on October 30, 2015. The Zelle Office Administrator spoke with Mr. Gianasca.  Mr. Gianasca told her he did not know anything about the matter and said he would appreciate a call back.  He gave her his number. After receiving the phone call from Mr. Gianasca and speaking to him, the Office Administrator reached out to me.  Before she had a chance to phone Mr. Gianasca back, he called again late in the afternoon of October 19, 2015.  The Office Administrator spoke with him again and told him she had passed his message along to the attorney who signed the subpoena (me).  He asked if the attorney (me) was located in Massachusetts, and was told no.  He asked again if the Office Administrator knew what the case was about, and she told him that she did not.  After finally speaking with me, the Office Administrator called Mr. Gianasca on the morning of October 21, 2015 and spoke with him.  After reminding him who she was, she asked him if he knew Robert Bonsignore.  He said he did.  She then told Mr. Gianasca that he would have to speak with Mr. Bonsignore for further information.  He said okay and the call ended.

### C.  Objector Ashkannejhad's Response to Being Served with a Subpoena

4.  On October 19, 2015, I received a phone call from Mina Ashkannejhad.  She said she had received a subpoena in the CRT matter.  (I had initiated efforts to formally serve Ms. Ashkannejhad a few days earlier.)  Once she identified herself, I immediately asked her if she was represented by Robert Bonsignore in the matter.  Her response was "I think my husband was."  At no time during the phone call did she ever indicate that she was represented by Mr. Bonsignore even though Mr. Bonsignore had filed an objection on her behalf at that point.  I told Ms. Ashkannejhad that because she knew of Mr. Bonsignore that she should talk to him.  I purposefully chose not to discuss her objection or the subpoena with her and the call ended.

///

///

2

ADDITIONAL DECLARATION OF ROBERT J. GRALEWSKI, JR. IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS
Case No. 3:07-cv-5944 JST, MDL No. 1917

### D. Bonsignore's Refusal to Cooperate in Connection with Facilitating the Depositions of Objectors Ciccone and Craig

5.  IPPs were not able to locate Objectors Ciccone and Craig in order to serve them with subpoenas.  After receiving their objections, on several occasions I asked Mr. Bonsignore if he would make these objectors available for deposition, if he would accept service of subpoenas for their deposition and production of certain documents, or if he would provide their addresses.  Each time I asked these questions Mr. Bonsignore ignored them and then on October 26, 2015 he specifically declined to accept service of the subpoenas.

### E. Darrell Palmer's $5,000 Offer

6.  On October 12, 2015, I wrote to Darrell Palmer to tell him that IPPs intended to take his client's (objector Paul Palmer) deposition.  I asked him if he would make his client available.  About 90 minutes later Mr. Palmer responded, "Never going to happen."  Given Mr. Palmer's response, I then initiated steps to formally serve Paul Palmer.  After taking these steps, I received an email from Mr. Palmer on October 15, 2015 that stated, "Bob please call me on my cell 6199851099".  I phoned Mr. Palmer, he answered, and we spoke.  Among other things, Mr. Palmer told me his client was his father and said we could "do a deal."  He then told me that in exchange for a $5,000 payment he would withdraw his father's objection.  Mr. Palmer called his proposal "the deal of the century."  I told him I would speak with lead counsel about his proposal.  I did and then wrote Mr. Palmer back shortly thereafter that same day.  I told him that IPPs rejected his proposal.  I also told him that if he wished to withdraw his client's objection he was free to do so but we had no control over that.  I did tell him that if he withdrew the objection we would not depose his client and would take no further action against either of them.  After a text message exchange on October 16, 2015, Mr. Palmer filed a notice seeking to withdraw his father's objection.

### F. Thompson Represents Johnson

7.  Elizabeth Kimberly Johnson's objection suggests that she filed her objection in pro per.  Since the filing of her objection, serial objector Charles M. Thompson has been in communication

with IPPs about her objection.  He agreed to accept service of a subpoena directed to Ms. Johnson, and on the morning of Ms. Johnson's deposition admitted that he does in fact represent her.

<div align="center">G. <u>Evidence of Serial Objections</u></div>

8.  Attached hereto as Appendices A-N are compilations, collected from numerous public sources and court filings, of other objections to class action settlements pursued by certain Objectors' Counsel and Objectors.  These appendices and the outcomes they describe demonstrate that these "serial" objectors repeatedly file frivolous or canned objections and then often leverage appeals to obtain a payment from the class without any intent to effectuate change.   The appendices attached hereto are as follows:

| Appendix | Objector | Title |
|---|---|---|
| A | Christopher Bandas (Counsel) | Examples of Cases in Which Christopher Bandas Filed Objections and Dismissed, Abandoned, or Withdrawn the Objections or Appeal Without Attaining Settlement Changes or Additional Benefits for the Class |
| B | Timothy R. Hanigan (Counsel) | Selected Objections to Settlements and Related Appeals Filed by Timothy R. Hanigan |
| C | Jonathan E. Fortman (Counsel) | Selected Objections to Settlements and Related Appeals Filed by Jonathan E. Fortman |
| D | John C. Kress (Counsel) | Objections to Settlements Filed by John C. Kress |
| E | Steve A. Miller (Counsel) | Examples of Cases in Which Steve A. Miller Filed Objections and Dismissed, Abandoned, or Withdrawn the Objections or Appeal Without Attaining Settlement Changes or Additional Benefits for the Class |
| F | Joseph Darrell Palmer (Counsel) | Examples of Cases in Which Joseph Darrell Palmer Filed Objections and Dismissed, Abandoned, or Withdrawn the Objections Without Attaining Settlement Changes or Additional Benefits for the Class |
| G | Charles M. Thompson (Counsel) | Selected Objections to Settlements and Related Appeals Filed by Charles M. Thompson |
| H | George W. Cochran (Counsel) | Objections to Settlements Filed by George W. Cochran |
| I | Jan L. Westfall (Counsel) | Objections to Settlements Filed by Jan L. Westfall |
| J | Joseph Scott St. John; (Counsel) Anna St. John | Objections to Settlements Filed by Joseph Scott St. John and Anna St. John |
| K | John Finn (Objector) | Objections to Settlements Filed by John Finn |
| L | Laura Townsend Fortman (Objector) | Objections to Settlements Filed by Laura Townsend Fortman |
| M | Sean Hull (Objector) | Objections to Settlements Filed by Sean Hull |
| N | Gordon B. Morgan (Objector) | Objections to Settlements Filed by Gordon B. Morgan |

ADDITIONAL DECLARATION OF ROBERT J. GRALEWSKI, JR. IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS
Case No. 3:07-cv-5944 JST, MDL No. 1917

H. <u>Appendix Highlighting Deposition Testimony of Objectors Taken in this Case</u>

9.   After reviewing the objections filed in this case, IPPs decided to take the depositions of several of the Objectors.   Attached hereto as Appendix O is a chart that I prepared highlighting certain testimony from the depositions or explaining why IPPs did not depose some Objectors.   All testimony summarized and cited in the chart is attached to the chart itself.

I declare under penalty of perjury that the foregoing is true and correct.   Executed this 19th day of November, 2015, in San Diego, California.

ROBERT J. GRALEWSKI, JR.

ADDITIONAL DECLARATION OF ROBERT J. GRALEWSKI, JR. IN SUPPORT OF INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENTS
Case No. 3:07-cv-5944 JST, MDL No. 1917

# APPENDIX A

## APPENDIX A

**Examples of Cases in Which Christopher Bandas Has Filed Objections and Dismissed, Abandoned, or Withdrawn the Objections Without Attaining Settlement Changes or Additional Benefits for the Class**

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| *Brown, et al. v. Wal-Mart Stores, Inc.*, No. 01 L 85 (Ill. Cir. Ct. Rock Island, Oct. 29, 2009). | Jill Carson | Relevant excerpts from 10/29/09 "Order Denying Objections to the Settlement and Fees and the Motion to Intervene and for *Pro Hac Vice* Admission": <br><br> "Christopher Bandas…is a Texas lawyer well known for his practice of routinely filing objections in class action settlements across the country." <br><br> "The Bandas Objection filed on behalf of Ms. Carlson is a generic boilerplate objection prepared and filed by attorneys working for their own personal benefit and not for the benefit of this Class or for those lawyers' client. The record before the Court demonstrates that Bandas is a professional objector who is improperly attempting to 'hijack' the settlement of this case from deserving class members and dedicated, hard working counsel, solely to coerce ill-gotten, inappropriate and unspecified 'legal fees.' Bandas has filed virtually identical, frivolous objections in South Carolina, Iowa, Missouri and Florida in settlements of similar wage and hour class actions against Wal-Mart." <br><br> "In Missouri, Bandas' local counsel appeared at the final fairness hearing but | Unknown | Unknown |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| **-continued-**<br>*Brown, et al. v. Wal-Mart Stores, Inc.*, No. 01 L 85 (Ill. Cir. Ct. Rock Island, Oct. 29, 2009). | | only to withdraw as counsel due to the fact that he could not in 'good conscience…continue to work toward the strategic outlined…by Mr. Bandas.' Judge Midkiff entered separate orders nullifying the Bandas objection and denying his motion for admission *pro hac vice*. … This did not dissuade Bandas from filing a Notice of Appeal (with new local counsel)…"<br><br>"The Court finds that a lack of involvement and participation by Ms. Carlson and her counsel, combined with their attempt to inject themselves at the last minute into this eight year litigation constitutes an effort to extort money from the Class and/or Class Counsel. Though filed by two lawyers, the Bandas Objection offers nothing in the way of specific criticisms of the proposed Settlement. The content of the Bandas Objection demonstrates that neither Ms. Carlson nor her counsel has ever visited the settlement website or read the Stipulation of Settlement in this case." (*See* Dkt. No. 1062-1 (Order entered in *Brown v. Wal-Mart Stores, Inc.*)<br><br>"In *In re: Dynamic Random Access Memory Antitrust Litigation*, filed in the Northern District of California, Bandas withdrew his objection after 'further investigation,' which revealed that Bandas wholly failed to adhere to his Rule 11 obligations to thoroughly | | |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| **-continued-** <br> *Brown, et al. v. Wal-Mart Stores, Inc.*, No. 01 L 85 (Ill. Cir. Ct. Rock Island, Oct. 29, 2009). | | investigate his client's claims." <br><br> "In Miller County, Arkansas, attorney Bandas filed a canned objection in *Lane's Gifts and Collectibles, LLC v. Yahoo! Inc*. The court denied the objection. Attorney Bandas then appealed, but he withdrew the appeal 48 hours later." <br><br> "Most recently, in March 2009, Bandas withdrew an objection to a proposed settlement he filed in a class action pending in Oklahoma, *Sacket v. Great Plains Pipeline Co., et al.* The withdrawal came only after counsel for the class vehemently opposed the objection, highlighting Bandas' history of filing canned objections at the last moment in an effort to extort attorneys' fees." | | |
| *Carter v. Wal-Mart Stores, Inc.*, No. 06-CP-I5-839 (S.C. Ct. Com. Pl. Colleton Cnty. June 3, 2009). | Tabitha Forward | Relevant excerpts from 6/3/09 "Order Denying Objections to Settlement Between Class Plaintiffs and Wal-Mart": <br><br> "The second objection … was purportedly filed on behalf of a class member by a member of the South Carolina Bar and Christopher Bandas, a Texas lawyer well known for his practice of routinely filing objections in class action settlements across the country. The Court was informed that Mr. Bandas and a Missouri attorney had filed a virtually identical objection in Hale v. Wal-Mart, pending in Missouri. Bandas' | Unknown filing date. | Appeal voluntarily dismissed on 11/19/09. |

Appendix A – Christopher Bandas

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| | | Missouri objection was nullified after his local counsel withdrew and no one appeared on Bandas' behalf at the Missouri Fairness Hearing." "[I]n spite of the fact that no one appeared to offer any evidence or testimony in support of the Bandas objection, in spite of the fact that the Bandas objection fails to meet the procedural requirements established by this Court, and in spite of the fact that Mr. Bandas is a serial professional objector, I have reviewed and considered the Bandas objection on its merits. The Court finds that, for a plethora of reasons, the Bandas objection lacks substantive merit." | | |
| *In re Cellphone Termination Fee Cases*, No. JCCP 4332J (Alameda Super. Ct. June 10, 2009). | Sulekha Anand | The 6/10/08 Final Approval Order and Judgment makes no mention of objections. | Filed 6/26/08 (Cal. App. 1st Dist., No. A122765). | The California Court of Appeal Affirmed the Judgment. 180 Cal. App. 4th 1110 (2009), rev. denied, 2010 Cal. LEXIS 3458 (Apr. 14, 2010). |
| *Checkmate Strategic Group, Inc. v. Yahoo! Inc.*, No. CV-05-4588 CAS (FMOx) Final Order Approving Settlement and Judgment of Dismissal with Prejudice (Dkt. No. 200) (C.D. Cal. March 26, 2007). | Backwater Safari Guide Service; Larry Ebest; Ruben Lerma | Other objectors to the settlement withdrew their objections prior to the entry of the 3/26/07 Final Approval Order and Judgment (Dkt. 200). | Filed 4/26/07 (9th Cir., No. 07- 55597). | Appeal voluntarily dismissed pursuant to stipulation (Dkt. 8, 7/31/07). |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| *Closson v. Bank of America*, No. CGC-436877 (San Francisco Super. Ct. Aug. 3, 2009). | Doris Saint; Aaron Petrus; Jan L. Petrus | All objections overruled (from the 8/3/09 Order of Final Approval). | Filed 9/1/09 (Cal. App. 1st Dist., No. A125963). | Voluntarily dismissed on 6/23/11. |
| *Conroy v. 3M Corporation*, No. C 00-2810 CW, 2006 U.S. Dist. LEXIS 96169 (N.D. Cal. Aug. 10, 2006). | Lillian Rogers | The Final Approval Order and Judgment was issued on 4/21/06.<br><br>On 8/10/06, the Court granted plaintiffs' motion requesting Bandas to post an appellate cost bond totaling $431,167.<br><br>"The Court finds that the Bandas Law Firm and Ms. Rogers' objections to the proposed settlement were unfounded, and therefore views their appeals as unlikely to succeed. … Ms. Rogers' objections were patently frivolous: her cookie-cutter written objection bore no particular relationship to the circumstances of the settlement here, and at the hearing, her counsel erroneously referred to this case as involving 'defective' tape." 2006 U.S. Dist. LEXIS 96169, at *10-11 (N.D. Cal. Aug. 10, 2006). | Bandas Law Firm, P.C. appeal of Final Approval Order filed 5/25/06 (9th Cir., No. 06- 15980).<br><br>The Bandas Firm filed Appeal of the Bond Order on 8/21/06 (9th Cir., No. 06-16627). | Appeal of Final Approval Order voluntarily dismissed on 9/22/06.<br><br>Appeal of bond order voluntarily dismissed 9/19/06. |
| *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008). | Erwin Bruder; Michael Richline, *d/b/a* Richline Technical Services | Bruder and Richline's objections were filed on 10/3/06 and withdrawn soon thereafter, on 10/31/06. | Not Filed | Not Applicable |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|----------------------|--------|-------------------|
| *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, Order Granting Settling Parties' Joint Motion for Final Approval of Class Settlement, at 34 (Dkt. No. 278) (N.D. Cal. July 3, 2008). | Mary Meyer | "[T]he Court has considered the objections that were made but none persuade the Court that the settlement should be further altered." | Appeal of Final Approval Order was filed on 7/23/08 (9th Cir., No. 08-16724).<br><br>Appeal of Fee Order filed 8/13/08 (9th Cir., No. 08-16995). | The parties stipulated to a settlement on 12/4/08 in which plaintiffs and defendants paid a combined $55,000 to Meyer's counsel, Bandas and Frank Liuzzi. Just a few days later, both appeals were voluntarily dismissed on 12/9/08. |
| *Hale v. Wal-Mart Stores, Inc.*, Nos. 01-CV-218710, 01-CV-227674, 2009 WL 2206959 (Mo. Cir. Ct. Jackson Cnty. May 15, 2009). | Debbie Taylor | Having reviewed the objection to the Settlement Agreement, the court granted final approval of the settlement on 5/15/09. | Filed 7/2/09. | Voluntarily dismissed on 11/10/09. |
| *Lane's Gifts and Collectibles, L.L.C. v. Yahoo! Inc.*, No. CV-2005-052-1 (Ark. Cir. Ct. Miller Cnty. 2006). | Depo Express; Christopher Bandas; Bandas Law Firm | The Final Approval Order and Judgment and Order Denying Objectors' Motion to Intervene were entered on 7/26/06 and 8/1/06, respectively. | Filed 8/23/06; withdrawn shortly thereafter. | Not Applicable |
| *In re: Managed Care Litig.*, No. 00-MD-01334, Order Approving Settlement and Directing Final Judgment, at 4 (Dkt. No. 2876) (S.D. Fla. filed March 15, 2006). | Ray G. Hooper, M.D. | The Court's Final Approval Order, entered on 3/15/06, states that it gave "fair consideration" to all objections before it found "the objections to the Settlement and the Settlement Agreement are overruled and denied in all respects." ((Dkt. No. 2876, at 4). | Filed 4/12/06 (11th Cir., No. 06-12354-E). | Voluntarily dismissed on or about 5/9/06. |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| *Mussmann v. Wal-Mart Stores, Inc.*, No. LACV-27486 (Iowa Dist. Ct., Clinton Cnty. Oct. 13, 2009). | Terry Healy | Relevant excerpts from 10/13/09 "Order Regarding Terry Healy's Objection and Motion to Intervene": <br><br> "Mr. Healy became involved in this lawsuit after being contacted by attorney Jim Roth at the request of Texas attorney Christopher Bandas. Attorney Bandas has filed objections in other similar lawsuits filed in other states. <u>Mr. Bandas is a professional objector counsel</u>." <br><br> "Mr. Healy knew from the first conversation with Mr. Roth that 'Mr. Bandas was behind this,' and that 'Mr. Bandas was doing this all across the country.' <br><br> "Neither attorney Bandas, nor attorney Roth advised Mr. Healy that attorney Bandas had been found by a Florida court in the Ouellette Order to be engaging in a conspiracy with his clients and co-counsel to extort money from class members and class counsel, through a similar practice of objecting to the proposed settlement in the Florida Wal-Mart lawsuit. " <br><br> "Terry Healy's 'canned' objection in this matter closely resembles the numerous other objections filed by attorney Bandas in other jurisdictions where Wal-Mart settlements have been finally approved, including South Carolina, Florida and Missouri. The consistency of attorney | Not Filed | Not Applicable |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| **-continued-** *Mussmann v. Wal-Mart Stores, Inc.*, No. LACV-27486 (Iowa Dist. Ct., Clinton Cnty. Oct. 13, 2009). | | Bandas' errors and the similarity between attorney Bandas' objections across different cases demonstrates the canned nature of the objection and reveals attorney Bandas' true motives." "It is obvious here that the attorneys initiating Mr. Healy's objection expended minimal time and resources, by filing a 'canned' objection to the proposed settlement and then not participating or appearing in any formal sense. In those circumstances, the merits of the objection appear to be of little consequence to the professional objector; causing delay in the settlement process generates their fees and payments, not proving to the trial court that the proposed settlement is inappropriate. … Upon filing the notice of appeal, the professional objector simply waits for class counsel to succumb to the pressure pay the extorted fees in return for dismissing the appeal and releasing the settlement funds." "[T]his Court concludes that attorney Christopher A. Bandas is a professional objector. The Court is concerned that attorney Bandas is seeking to wrongfully use the class action settlement and objection process for personal gain, and without any corresponding benefit to any individual objector or the settlement class as a whole. Attorney Bandas, acting | | |

Appendix A – Christopher Bandas

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| **-continued-** *Mussmann v. Wal-Mart Stores, Inc.*, No. LACV-27486 (Iowa Dist. Ct., Clinton Cnty. Oct. 13, 2009). | | through local counsel, Mr. Roth, contacted a class member who did not otherwise display any motivation to object or to intervene in the proposed class action settlement." "One Court describes these efforts by attorney Bandas and other professional objectors as 'extortion.'" (citing Ouellette)." Re the deposition of objector Healy: "Mr. Healy has no doubt in his mind that the Ouellette Court, when they are talking about extortion of money by these attorneys, including the action of Christopher Bandas. … Mr. Healy then wanted to stop the deposition, 'because I think it is a farce. … [T]he fact is that neither one of these two attorneys are willing to intercede on my behalf here, and there's something wrong with that. I'm sorry. So you know, you can bother someone else. I really don't care. … I was of the understanding I wouldn't have to give a deposition. That's a lie right there. … I'm here and neither one of these are available to help me out here. I don't really need this. So absolutely I don't want no more [sic] to [do] with this.'" | | |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| *Ouellette v. Wal-Mart Stores, Inc.*, No. 67-01-CA-326 (Fla. Cir. Ct., Washington Cnty. 2009). | Kevin Dimla | Relevant excerpts from 8/21/09 "Order and Final Judgment Approving Settlement Between Class Plaintiffs and Wal-Mart Stores, Inc.": <br><br> "The Court finds that all of the objections filed against the settlement of this case were all generic boilerplate objections prepared and filed by a group of attorneys who the Court finds have been working through collusion for their own personal benefit and not for the benefit of this class or their clients. … The Court finds that a lack of involvement and participation of the objectors and their counsel who were not present and a lack of involvement and participation of the attorneys that were present combined with their attempt to inject themselves at the last minute into this eight year litigation constitutes an effort to extort money from the class and/or class counsel. The court struck the objections … for failure of proof, failure to demonstrate participation in the class action on behalf of the class, and failure to appear at the fairness hearing. Further, the Court finds that all of the objections … have no substantive merit and the court overrules all of the objections on that additional ground." Slip op. at ¶¶19-20. | Filed 9/25/09 (Fla. App., 1st Dist., No. 1D09-4881). | Appeal voluntarily dismissed on 10/29/09. |

Appendix A – Christopher Bandas

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| *Savaglio v. Wal-Mart Stores, Inc.*, No. C-835687 (Alameda Super. Ct. 2010). | Lolita Wells | Final Approval of Settlement granted 4/8/10, overruling objections except as to amount of attorneys' fees. The 9/10/10 Order on Fees states that the Court "rejected all objections to the requested fee award." | Not Filed | Not Applicable |
| *In re Smokeless Tobacco Cases I, II* (San Francisco Super. Ct., JCCP Nos. 4250, 4258, 4259, 4262). | Sean Hull | Objection filed 2/4/08 *pro se*. Involvement of Bandas was divulged on 2/20/08 by Dennis Bartlett, a Denver attorney who was representing Hull. Final Approval was granted and fees awarded on 3/12/08. | Hull filed a Notice of Appeal on 4/11/08. | The appeal was voluntarily dismissed on 2/26/09. |
| *In re Wal-Mart Wage & Hour Employment Practices Litig.*, No. 6-CV-00225, Order Regarding Plaintiffs' Final Approval Motion (Dkt. No. 491) (D. Nev. Nov. 2, 2009). | Jessica Gaona | The Final Approval Order of 11/2/09 (Dkt. 491) indicated that the court had considered and rejected the objections.<br><br>After various objectors appealed the final approval order, the court granted plaintiffs' and defendant's motions for bond pending appeal, stating: "For the reasons articulated at the hearing conducted October 19, 2009, and for the additional reasons advanced by Plaintiff's co-lead class counsel and Defendant Wal-Mart in their respective motions for bond pending appeal, the Court finds that the objections are not supported by law or the facts and are indeed meritless."<br><br>"Objectors' counsel have a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients | Filed 11/23/09 (9th Cir., No. 09-17648). | Dismissed by summary affirmance of 11/2/09 Final Approval Order (Dkt. 47, 8/10/10). |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| **-continued-** *In re Wal-Mart Wage & Hour Employment Practices Litig.*, No. 6-CV-00225, Order Regarding Plaintiffs' Final Approval Motion (Dkt. No. 491) (D. Nev. Nov. 2, 2009). | | were compensated by the settling class or counsel for the settling class.<br><br>"In sum, this Court finds that the Appeals taken by Objectors Gaona, Swift, Andrews and Maddox, are frivolous and are tantamount to a stay of the Judgment entered by this Court on November 2, 2009 approving the comprehensive class settlement in this case which provides fair compensation to millions of class members, as well as injunctive relief ensuring against further loss to persons similarly situated. The Court further finds that the four Objectors should be required to file an appeal bond sufficient to secure and ensure payment of costs on appeals which in the judgment of this Court are without merit and will almost certainly be rejected by the Ninth Circuit Court of Appeal." 2010 U.S. Dist. LEXIS 21466 (D. Nev. March 8, 2010), stay denied, 2010 U.S. Dist. LEXIS 52001 (May 25, 2010). The objectors were ordered to pay an appeal bond of $500,000. 2010 U.S. Dist. LEXIS 21466, *18-19.<br><br>In the subsequent order on objectors' motion to stay the March 8, 2010 ruling, Judge Pro stated: "The argument's [sic] by Objectors counsel that they misunderstood the law with regard to their obligations to either to comply with this Court's Order that they post an appeal bond or otherwise seek relief | | |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| **-continued-** <br> *In re Wal-Mart Wage & Hour Employment Practices Litig.*, No. 6-CV-00225, Order Regarding Plaintiffs' Final Approval Motion (Dkt. No. 491) (D. Nev. Nov. 2, 2009). | | from that Order rings hollow. The conduct of Objectors and their counsel is compounded by their prior demand of $800,000 to cease their appeals. <br><br> The obligation of Objectors to comply with this Court's Order that they post an appeal bond and the justification for their failure to do so falls on the shoulders not only of the four objectors individually, but on those of their counsel." 2010 U.S. Dist. LEXIS 52001, *15-16. <br><br> On June 3, 2010, the Ninth Circuit stayed the May 25, 2010 bond order pending the appeal of the final approval order, and on August 10, 2010 affirmed the district court's order approving the settlement. | | |
| *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609 (N.D. Cal. 2007). | Nicole Clemente; Lolita Wells | Objections filed 9/7/10; withdrawn 11/6/10. | Not Filed | Not Applicable |
| *Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411, 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008). | Kervin M. Walsh | Objections overruled in Final Approval and Fee Order (Dkt. 170, 8/13/08). | Filed 9/11/08 (9th Cir., No. 08- 56542). | Appeal voluntarily dismissed per stipulation (Dkt. 18, 2/20/09). |
| *Yoo v. Wendy's Int'l.*, No. CV07-4515 (FMC (JCx) (C.D. Cal. 2009). | Kervin M. Walsh | Settlement approved and fees awarded 3/9/09 (order revised 3/13/09). | Filed 4/8/09 (9th Cir., No. 09- 55554). | Appeal voluntarily dismissed on 10/26/09. |

Appendix A – Christopher Bandas

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09CV1088 BTM KSC, 2013 WL 5275618 (S.D. Cal. Sept. 17, 2013).<br><br>- | Sasha McBean; Tim Blanchard | Here, Bandas did not file any objection on behalf of McBean and Blanchard; rather, serial objector Joseph Darrell Palmer did in a "broad-brush fashion" on 3/22/13 (from the Court's Order Striking Objections (Dkt. No. 242, at 2)).<br><br>In the Order Striking Objections, the Judge described testimony about a phone call between attorney Christopher Bandas and attorney David Reid of Newport Trial Group**,** who represented the defense in the objector issue.<br><br>The Judge wrote that Bandas said "he was willing to wager that Mr. Reid's client would gladly pay him somewhere in the neighborhood of $400,000 to make his objection go away — otherwise, he could hold the settlement process up for two to three years through the appeal process." (Dkt. 242, at 8).<br><br>"Mr. Reid asked Mr. Bandas what his issues were with the proposed settlement, Bandas said that he didn't care about changing one word of the settlement and that he filed the objections because it was a large settlement and Plaintiff's counsel stood to make millions of dollars." *Id.*<br><br>"According to Mr. Reid's testimony, which the Court finds credible, Mr. Bandas was attempting to pressure the parties to give him $400,000 as payment | Joseph Darrell Palmer filed objection on 3/22/13.  Palmer was referred to objectors by Bandas.<br><br>"In light of Mr. Bandas's scheme, the Court finds that Ms. McBean's objections were filed for the improper purpose of obtaining a cash settlement in exchange for withdrawing the objections."<br><br>Both objections were stricken on 9/17/13, in part to Bandas' "scheme," and the objectors lack of standing. | N/A |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| **-continued-**<br>*In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09CV1088 BTM KSC, 2013 WL 5275618 (S.D. Cal. Sept. 17, 2013). | | to withdraw the objections and go away. Mr. Bandas was using the threat of questionable litigation to tie up the settlement unless the payment was made.3 Even though Ms. McBean was Mr. Palmer's client, it is clear that Mr. Bandas was authorized to speak for Mr. Palmer on Ms. McBean's behalf." (Dkt. 242, at 9). | | |
| *In re LivingSocial Marketing and Sales Practices Litig.,* MDL No. 2254, 2013 WL 1181489 (D.D.C. Mar. 22, 2013). | Jeremy De La Garza | "…only four formal objections have been filed.  The objections to the settlement terms are largely meritless." (Final Judgment) | Appeal filed on 4/23/13. | On 11/19/13, Bandas filed a stipulated motion to voluntarily dismiss the appeal, and on 12/12/13, the Court dismissed the case. |
| *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 156 (S.D.N.Y. 2014). | Clarke Hampe | The district court granted class counsel's motion for an appeal bond to be posted by Hampe in the amount of $54,700, reasoning as state below.<br><br>Hampe filed his statement of objection *pro per* via letter in advance of the fairness hearing.  In its Final Order and Judgment, the Court noted that "Hampe made three conclusory objections…[a]ll three objections are frivolous, and thus Hampe's appeal is also frivolous… Moreover, it is totally lacking merit." *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 154 (S.D.N.Y. 2014). | | Hampe  moved to voluntarily dismiss his appeal on 3/11/14. |

Appendix A – Christopher Bandas

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| **-continued-** *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 156 (S.D.N.Y. 2014). | | "Moreover, while Hampe is appearing *pro se* before this Court, he admits that he is 'represented in this matter' by attorney Christopher A. Bandas ("Bandas"), who has been repeatedly admonished for pursuing frivolous appeals of objections to class action settlements. The Honorable Samuel Conti of the Northern District of California has stated: 'Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct.' I*n re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D.Cal.2012) (citation omitted). Even more recently, the Honorable Barry Ted Moskowitz of the Southern District of California conducted an evidentiary hearing regarding Bandas's practices in order to determine whether to strike an objection. After hearing testimony from Bandas and other witnesses, he struck the objection, having determined that '<u>Mr. Bandas was attempting to pressure the parties to give him $400,000 as payment to withdraw the objections and go away</u>' <u>and that 'Mr. Bandas was using the threat of questionable litigation to tie up the settlement unless the payment was made.</u>'" (citation omitted)  *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d at | | |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| **-continued-** <br> *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 156 (S.D.N.Y. 2014). | | 156. <br><br> "In judging the legitimacy of Hampe's motives in filing an appeal, it is also helpful to evaluate Hampe's personal stake in this class action. It is virtually non-existent. He is a member of the class because he purchased 0.06 shares of GE stock during the class period. Even had the settlement amount been $40 *billion,* and no attorney's fees awarded, he would have been entitled to less than $1.00, which would not have cleared the $10.00 threshold required for a claim payout. His legal interest in the outcome of this proceeding is therefore *de minimis.*" *Id.* | | |
| *Hamilton v. SunTrust Mortgage Inc.,* No. 13-60749-CIV, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014). | Amarli Jabrani; Janet Jabrani | "Although the Objectors list their counsel on the Objection as Mr. Santiago Cueto, they admitted in deposition that they only have an agreement with Mr. Christopher Bandas from Corpus Christi, Texas, who refused to enter his appearance in the District Court because he has repeatedly been recognized as a "professional objector." <br><br> "Of the just over 63,000 class members nationwide to whom notice was issued, there was only one objection on behalf of one married couple (Amirali and Janet Jabrani), which equates to less than .003% of the class… Neither the Jabranis nor their counsel attended the Final Fairness Hearing. Nevertheless, the | The Jabranis filed their Notice of Appeal *pro se*, on 10/28/14.  Soon thereafter, Mr. Bandas made his appearance in the Eleventh Circuit Court of Appeal on 11/4/14. | Appeal voluntarily dismissed on 1/23/15 (Dkt. No. 193). |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| **-continued-** *Hamilton v. SunTrust Mortgage Inc.,* No. 13-60749-CIV, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014). | | Court has reviewed all of the arguments and positions raised by the objectors. Their objections are overruled." *Hamilton v. SunTrust Mortgage Inc.,* No. 13-60749-CIV, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014). | | |
| *Fishbein v. All Market Inc.,* No. 1:11- cv-5580, Final Order and Judgment (Dkt. No. 52) (S.D.N.Y. Aug. 22, 2012). | Timothy Blanchard | The Court entered its Final Order Approving Class Action Settlement and Dismissing Class Action with Prejudice on 8/22/12. | Notice of Appeal entered on 9/17/12. Blanchard filed his objection *pro se*, but on 10/24/12, Blanchard notified the court that he retained attorney Christopher Bandas/ Bandas Law Firm, P.C. | Appeal voluntarily dismissed on 4/26/13. |
| *In re: Discover Payment Protection Plan Marketing and Sales Practices Litigation,* MDL 2217, No. 10-cv-6994, Final Order and Judgment (Dkt. No. 177) (N.D. Ill. May 10, 2012). | Aaron Petrus filed *pro se* | 5/10/12: Final Order and Judgment granting final approval to the class action settlement; Order awarding attorneys' fees, reimbursement of expenses, and service award | 6/15/12: disclosure statement in Appeal No. 12-2366 filed on behalf of Appellant Petrus by Christopher Andreas Bandas/ Bandas Law Firm, P.C. | Appeal voluntarily dismissed on 7/6/12. 6/28/12: Plaintiffs' motioned for objector Petrus to post appellate bond of $25,000, but the appeal dismissed before motion for bond was ruled on. |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|----------------------|--------|-------------------|
| *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.,* 792 F. Supp. 2d 1028 (N.D. Ill. June 2, 2011). | Mike Hale; Summer Hogan; Michael Schulz; Omar Rivero | 6/2/2011: Memorandum Opinion and Order (1) granting final approval of the class action settlement; and (2) grants in part and denies in part Class Counsel's motion for approval of attorneys' fees, costs, and expenses, and for approval of incentive awards for Class Representatives | Filed 7/12/11 | Appeal voluntarily dismissed on 12/6/11. |
| *In re TFT-LCD (Flat Panel) Antitrust Litigation,* MDL No. 1827, No. 3:07-md-1827 (Order Granting Final Approval Of Combined Class, Parens Patriae, and Governmental Entity Settlements; Final Judgment of Dismissal With Prejudice) (Dkt. No. 6130) (N.D. Cal. filed July 11, 2012). | Ira Conner Erwin; filed *pro se* Luis Mario Santana filed *pro se*; Stefan Rest filed *pro se* | 7/11/12: Final Judgment of dismissal with prejudice and Order granting Final Approval of combined class, *parens patrie,* and governmental entity settlements. | 9/10/12: notice of appearance in Appeal No. 12-16780 filed on behalf of Appellant Ira Erwin by Christopher Andreas Bandas/ Bandas Law Firm, P.C. | Appeal voluntarily dismissed on 6/11/14. |
| *Ko v. Natura Pet Products, Inc.,* No. 09-02619, 2012 WL 3945541 (N.D. Cal. Sept. 10, 2012). | Alfredo Walsh filed *pro se* | 9/10/2012: Order granting (1) motion for final approval of the class action settlement with Defendant Natura Pet Products, Inc.; (2) motion for attorneys' fees, costs, and incentive award.2 | 11/27/12: notice of appearance filed on behalf of Appellant Alfredo Walsh by Christopher Andreas Bandas/ Bandas Law Firm, P.C. | Appeal dismissed for failure to prosecute on 4/24/13. |
| *In re Google Buzz Privacy Litig.,* No. 10-00672, 2011 WL 7460099 (N.D. Cal. June 02, 2011). | Kervin Walsh filed *pro se* | 5/31/11: Order granting final approval of class action settlement, approval of cy pres awards, and awarding attorney fees.<br><br>6/2/11: Amended Order granting final approval of class action settlement, | 07/06/11: notice of appearance filed on behalf of Appellant Kervin Walsh by Christopher Andreas Bandas | Appeal voluntarily dismissed on 11/21/11. |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| **-continued-**<br>*In re Google Buzz Privacy Litig.*, No. 10-00672, 2011 WL 7460099 (N.D. Cal. June 02, 2011). | | approval of cy pres awards, and awarding attorney fees.<br><br>6/17/11: Order granting final application for reimbursement of expenses. | | |
| *In re Apple iPhone 4 Products Liability Litig.*, No. 5:10-md-02188, 2012 WL 3283432 (N.D. Cal. Aug. 10, 2012). | Burt Chapa filed *pro se* | 8/10/12: Order granting motion for final settlement approval and motion for attorneys' fees and costs. | 09/28/2012: notice of appearance filed on behalf of Appellant Bert Chapa by Christopher Andreas Bandas/ Bandas Law Firm, P.C | Appeal voluntarily dismissed 1/11/13. |
| *Adams v. AllianceOne Receivables Management, Inc.*, No. 3:08-cv-c00248(S.D. Cal. Feb. 8, 2008). | Gordon B. Morgan filed *pro se* | 9/28/2012: Order (1) granting joint motion for final approval of class action settlement; (2) granting class counsel's motion for attorneys' fees, costs, and service awards | 12/04/12: notice of appearance filed on behalf of Appellant Morgan by Attorney Christopher Andreas Bandas/ Bandas Law Firm, P.C.<br><br>12/4/2012: notice of appearance filed on behalf of Appellant Morgan in the district court by Attorney Joseph Darrell Palmer | Appeal voluntarily dismissed on 2/4/13. |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| *Gallucci v. Boiron, Inc.,* No. 11CV2039 JAH NLS, 2012 WL 5359485 (S.D. Cal. Oct. 31, 2012) *aff'd sub nom. Gallucci v. Gonzales*, 603 F. App'x 533 (9th Cir. 2015). | Israel Elizondo filed *pro se* | 10/31/2012: Final Judgment and Order granting Motion for approval of Class Action Settlement, awarding Class Counsel Fees and Expenses, awarding Class Representatives incentives, permanently enjoining parallel proceedings, and dismissing action with prejudice. | | Appeal dismissed on 6/3/13 for failure to prosecute. |
| *In re Classmates.com Consol. Litig.,* No. 2:09-cv-00045, 2012 WL 3854501 (W.D. Wash. June 15, 2012). | Michael J Schulz filed *pro se* | 06/15/2012: Order granting (1) motion for final approval of class action settlement; (2) motion for attorney fees, costs, and participation awards to class representatives; and (3) Order certifying settlement class; and (4) Judgment dismissing the case and entering the two year injunction | Notice of appeal filed *pro se*<br><br>On 8/14/12, Christopher A. Bandas filed a notice of appearance to serve as counsel on behalf of Objector-Appellant Schulz | Appeal voluntarily dismissed on 8/27/12. |
| *Dennings v. Clearwire Corp.,* No. 10-cv-1859, 2013 WL 1858797 (Order Granting Motion For Attorney's Fees And Expenses) (W.D. Wash. May 03, 2013). | Gordon Morgan; Jeremy De La Garza | 12/20/12: Settlement Order and Final Judgment granting motion for final approval of class action settlement.<br><br>5/3/13: Order granting motion for attorneys' fees and expenses. | Bandas filed an appeal of the Settlement Order on 1/18/13.<br><br>**(First Appeal)** 2/20/2013: Plaintiffs filed a motion requesting that the Court order Objectors, jointly and severally, to post an appellate cost bond of $41,150. | **(Second Appeal)** On 6/3/13, Bandas appealed the Order granting plaintiffs' motion for attorneys' fees.<br><br>Plaintiffs filed a similar motion requesting that the Court order objectors to post an appellate cost bond of $41,150, with respect to Bandas' second appeal on 6/3/13, and on 7/9/13, finding that the same arguments applied and the requested cost bond was |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| **-continued-**<br>*Dennings v. Clearwire Corp.*, No. 10-cv-1859, 2013 WL 1858797 (Order Granting Motion For Attorney's Fees And Expenses) (W.D. Wash. May 03, 2013). | | | On 3/11/2013, the Court ordered Objectors Morgan and De La Garza to either post a bond in the amount of $41,150 or dismiss their notice of appeal. The Court reasoned that (1) the "objectors' underlying objections were without merit; (2) there was a "risk of non-payment of appeal costs given that both objectors live in Texas, and it may therefore be difficult to enforce a cost order imposed upon them"; (3) the objectors appeared to have the ability to pay an appeal bond; and (4) there was evidence presented that the objectors "had vexatious intent in filing their notice of appeal . . ." *Bond Order* (Doc. #117) (filed Mar. 11, 2013). | appropriate, the Court ordered objectors Morgan and De La Garza to either post the bond or withdraw their objections within 5 days of the date of the Order.<br><br>4/22/13: Judgment of the district court affirmed per summary order. |

Appendix A – Christopher Bandas

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| *Herfert v. Crayola, LLC,* No. 2:11- cv-01301 (W.D. Wash. Aug. 5, 2011). | Amber Pederson filed *pro se* | 4/27/12: Final Order granting joint motion for Final Approval of Clasa Action Settlement and Motion for Attorney Fees, Expenses and Representative Plaintiff Award | On 5/24/12, Class Counsel was informed that Objector-Appellant Pederson would be represented by Christopher Bandas/ Bandas Law Firm, P.C<br><br>On 7/5/12, Attorney Darrell Palmer/Law Offices of Darrell Palmer (Solano Beach CA) filed Objector-Appellant's Response to the Parties' Motion for an appeal bond, and filed an application to appear *pro hac vice* on behalf of Objector-Appellant Amber Pederson.<br>Mr. Palmer's application was denied on 8/17/12 | Appeal voluntarily dismissed on 9/26/12.<br><br>6/21/12: Class Plaintiffs and Defendants filed a joint motion requesting that Objector Pederson and her counsel, Mr. Bandas, be jointly and severally liable to post an appeal bond of $20,000<br><br>7/31/12: Following oral argument at which neither Objector-Appellant nor her counsel appeared, Court granted the parties' joint motion and ordered Appellant Pederson and her attorney Christopher Bandas to file an appeal bond of $20,000. |
| *In re Netflix Privacy Litig.*, No. 5:11-CV-00379, 2013 WL 1120801 (N.D. Cal. March 18, 2013). | Bradley Schultz | Schultz filed his objection on 11/16/12. The Final Judgment and Order of dismissal with prejudice granting: (1) motion for final approval of class action settlement; and (2) motion for attorneys' fees, expenses and incentive award, was entered on 3/18/2013. | Bandas and Timothy R. Hanigan filed an appeal on behalf of Schultz on 4/16/13. | On 11/25/13, the Court granted Plaintiffs' Motion for Bond and extension of time to complete discovery.<br><br>Appellants moved to dismiss their consolidated appeals on 9/4/14. |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| *Montanez v. Gerber Childrenswear*, No 09-cv-07420 (C.D. Cal. Oct. 23, 2013). | Gabi Canales Morgan[i] | Gabi Canales Morgan was the only purported class member to object to the settlement.  Morgan submitted her objection letter dated 9/12/13, which was filed 10/16/13.<br><br>On 10/23/13, the Court granted Plaintiffs' Motion for Final Approval of Class Action Settlement and overruled Morgan's objection. | Timothy R. Hanigan filed a Notice of Appeal on 11/22/13 and on 12/16/13 - Bandas filed his Notice of Appearance as Lead Counsel for Appellant Morgan. | Pursuant to stipulation, the appeal was voluntarily dismissed on 6/4/14, the same day the appellate brief was due. |

---

[i] Gabi Canales Morgan is the wife of serial objector, Gordon Morgan – an objector in the instant action represented by Bandas and Hanigan.

# APPENDIX B

## APPENDIX B

**Selected Objections to Settlements and Related Appeals Filed by Timothy R. Hanigan**

| Case | Client(s) | Notes |
|---|---|---|
| *In re: Netflix Privacy Litig.*, No. 5:11-cv-00379, 2013 WL 1120801 (N.D. Cal. March 18, 2013). | Bradley Schultz | Schultz filed his objection on 11/16/12.  The Final Judgment and Order of dismissal with prejudice granting: (1) motion for final approval of class action settlement; and (2) motion for attorneys' fees, expenses and incentive award, was entered on 3/18/13.<br><br>Bandas and Timothy R. Hanigan filed an appeal on 4/16/13.  Appellants later moved to dismiss their appeal on 9/14/14, after posting bond per court order. |
| *In re Bank of Am. Credit Protection Mktg. & Sales Practices Litig.*, No. 3:11-md-2269, 2013 WL 174056 (N.D. Cal. January 16, 2013). | Beau Lochridge | On 1/16/13, the Court granted the Motion for Final Approval of Class Action Settlement; and (2) Motion for Attorney Fees, Reimbursement of Expenses, and Service Awards.  Hanigan was identified as counsel for Appellant Lochridge on Notice of Appeal, filed 1/24/13.  Shortly thereafter on 1/31/13, a Notice of Appearance by Christopher Bandas, substituting Hanigan, as counsel for Lochridge was filed.<br><br>This appeal was voluntarily dismissed on 4/10/13. |
| *Malta v. The Federal Home Loan Mortgage Corp.*, No. 10-cv-01290, 2013 WL5467425 (Final Judgment and Order of Dismissal with Prejudice) (Dkt. No. 60 (S.D. Cal. filed June 21, 2013). | Gordon Morgan | Hanigan filed an objection on behalf of Gordon Morgan on 6/5/13.   With little reference to objections, the Court issued its Final Judgment and Order of Dismissal with Prejudice on 6/21/13.<br><br>A Notice of Appeal was filed on 7/18/13 and the appeal voluntarily dismissed on 9/10/13. |
| *Franklin v. Wells Fargo Bank*, No. 14-cv-02349 (Motion for Final Approval of Class Action) (Dkt. No. 37) (S.D. Cal. filed July 20, 2015). | C. Jeffrey Thut | Pending |

| Case | Client(s) | Notes |
|------|-----------|-------|
| *Kacsuta v. Lenovo (United States) Inc.*, 2014 U.S. Dist. LEXIS 174510 (C.D. Cal. Dec. 16, 2014). | Douglass Quinn | Objection filed 11/20/14.<br><br>In its Final Approval Order for Class Settlement, dated 12/16/14, the Court noted that it received only two objections from class members, thus the "vast majority of class members who responded favor the settlement, and the two objectors make up less than 1% of the class members who have responded…After reviewing the objections submitted, the Court concludes that they do not pose a barrier to final approval of the settlement." (Order Granting in Part Plaintiffs' Motion for Final Approval of Class Action Settlement and Request for Attorney Fees, Dkt. No. 91, at 9 of 27). |
| *Roberts et al v. Electrolux Home Products, Inc.*, No. 12-cv-01644, 2014 WL 8097368 (Final Judgment) (Dkt. No. 64) (C.D. Cal. filed Sep. 15, 2014). | Daniel Hall | Hanigan filed an objection on behalf of Daniel Hall on 7/31/14<br><br>Soon after on 8/16/14, a stipulation of withdrawal of Hall's objection and of the sanctions requested by plaintiffs was entered. Nonetheless, in its Order granting Final Approval of Class Settlement and granting Attorneys' Fees, Costs, and Incentive Awards, the Court states that "[d]espite the withdrawal of this objection, the Court notes that the objection would have been overruled in its entirety. It is unclear whether Mr. Hall even had standing to object to the Settlement. The rest of Mr. Hall's objections misunderstand or misread the Settlement Agreement, or provide no evidence or support (besides attorney argument) to advance his objection. For example, the Court overrules Mr. Hall's characterization of the Settlement as providing only 'illusory value' to the Class—as stated herein—the benefits to the Class are substantial. Mr. Hall also misinterprets the Settlement Agreement concerning his objections related to the Fire Subclasses—no Class member is required to release his or her personal injury or property damage claims under the Settlement. Finally, no conflicts exist between Class Counsel, the Class Representatives, and the Class. As explained herein, Class Counsel's attorneys' fees request is reasonable and the Class Representatives' settlement of their individual claims does not render them inadequate." (Dkt. No. 64, p. 20 of 36, n.4).<br><br>"The objections submitted by these professional objectors do not seek to benefit the Class and appear to be made for the improper purpose of delaying the Settlement to extract a fee." (Dkt. No. 64, p. 20 of 36). |

| Case | Client(s) | Notes |
|------|-----------|-------|
| *Montanez v. Gerber Childrenswear*, No 09-cv-07420 (Order Granting Motion for Final Approval of Class Action Settlement) (Dkt. No. 280) (C.D. Cal. filed Oct. 23, 2013). | Gabi Canales Morgan[1] *Pro se* | Gabi Canales Morgan was the only purported class member to object to the settlement.  Morgan submitted her objection letter dated 9/12/13, which was filed 10/16/13.<br><br>On 10/23/13, the Court granted Plaintiffs' Motion for Final Approval of Class Action Settlement and overruled Morgan's objection.  Hanigan filed a Notice of Appeal on 11/22/13 and on 12/16/13, Christopher Bandas filed his Notice of Appearance as Lead Counsel for Appellant Morgan.<br><br>Pursuant to stipulation, the appeal was voluntarily dismissed on 6/4/14, the same date on which the appellate brief was due. |
| *Adams v. AllianceOne Receivables Management, Inc.*, No. 3:08-cv-00248 (Order Granting Joint Motion for Final Approval of Class Action Settlement; Granting Class Counsel's Motion for Attorneys' Fees, Costs, and Service Awards) (Dkt. No. 137) (S.D. Cal. filed Sept. 28, 2012). | Gordon Blaine Morgan *Pro se* | 9/28/2012: Order (1) granting joint motion for final approval of class action settlement; (2) granting class counsel's motion for attorneys' fees, costs, and service awards<br><br>Chris Bandas and Darrell both filed a Notice of Appearance on behalf of Appellant Morgan on 12/4/12.  Hanigan filed a Notice of Appearance on 12/21/12.<br><br>Class Counsel sought an appeal bond of $64,536.69 but Morgan voluntarily withdrew his appeal before the Court could rule |
| *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008). | Sean Hull | Hanigan filed a Statement of Representation of Hull on Appeal on 7/7/14, and Notice of Appeal on 7/18/14. -Pending |

Appendix B – Timothy R. Hanigan

| Case | Client(s) | Notes |
|------|-----------|-------|
| *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litig.*, No. 10-ml-02151 (Order Granting Motion for Final Approval of Proposed Class Action Settlement, and Granting Motion for Attorneys' Fees, Reimbursement of Expenses, and Compensation to Named Plaintiffs) (Dkt. No. 3933) (C.D. Cal. filed July 24, 2013). | Robert Bandas Victor Serafino | Of the 77 objections filed in this case, only 20 relate to the proposed fee award.  Two of these fee related objections were filed by Hanigan, yet at the fairness hearing on 6/14/13, none of the objectors who appeared addressed the Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensation to Named Plaintiffs.  The Court carefully considered all objections and found they lacked merit.<br><br>7/24/13 Final Approval of Class Settlement. |
| *In re Smokeless Tobacco Cases I, II,* JCCP Nos. 4250, 4258, 4259, 4262 (San Francisco Super. Ct.). | Sean Hull | Objection filed 2/4/08 pro se. Involvement of Bandas was divulged on 2/20/08 by Dennis Bartlett, a Denver attorney who was representing Hull. Final Approval was granted and fees awarded on 3/12/08. Hull appealed on 4/11/08 and the appeal was voluntarily dismissed on 2/26/09. |

---

[i] Gabi Canales Morgan is married to serial objector, Gordon Morgan – an objector in the instant action, represented by Bandas and Hanigan.

# APPENDIX C

## APPENDIX C

**Selected Objections to Settlements and Related Appeals Filed by Jonathan E. Fortman**

| Case | Client(s) | Notes |
|---|---|---|
| *In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330 (S.D. Fla. 2011). | Todd M. Spann | Objection filed 10/3/11 as part of group including clients of Kessinger and Kress. In the order granting final approval of the settlement and awarding attorneys' fees, the court stated: <br><br> "As Plaintiffs noted both in their pleadings, *see* Plaintiffs' Response to Objections to Motion for Final Approval of Settlement and Class Counsel's Application for Service Awards and Attorneys' Fees [DE # 2030] at 20–22, and at the Final Approval Hearing, *most if not all of the Objections are motivated by things other than a concern for the welfare of the Settlement Class. Instead, they have been brought by professional objectors and others whose sole purpose is to obtain a fee by objecting to whatever aspects of the Settlement they can latch onto.* The Court agrees with the court in *Barnes v. Fleet Boston Fin. Corp.,* 2006 U.S. Dist. LEXIS 71072, at *3–4 (D. Mass. Aug. 22, 2006), that, '[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing.' … The Court has nonetheless considered their objections on the merits, and rejects them for the reasons set forth herein. Should these or any other Objectors choose to persist in their objections in order to tie up the execution of this Settlement and further delay payment to the members of the Settlement Class, the Court will consider additional measures to make sure that the members of the Settlement Class are not further harmed as a result. *See* Supplemental Decl. of Prof. Brian T. Fitzpatrick [DE # 1885–7], ¶¶ 11–13 (discussing 'objector blackmail' and observing that courts have fought back by sanctioning professional objectors and requiring hefty appeal bonds)." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1361 n. 30 (S.D. Fla. 2011) (emphasis added). |

| Case | Client(s) | Notes |
|------|-----------|-------|
| **-continued-**<br>*In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330 (S.D. Fla. 2011). | | Notice of Appeal was filed on 12/21/11. On 2/14/12, the court granted Plaintiffs' Motion to Require Posting of Appeal Bonds by certain Objector-Appellants, including Todd M. Spann.  On 7/3/2012, the Court granted Appellant's motion to voluntarily dismiss his appeal. |
| *Fogel v. Farmers Group, Inc.*, No. BC300142 (Cal. Super. Ct. Los Angeles Cnty. 2011). | *Pro se* Objection | Objection dated 8/17/11.  Settlement approved and fees awarded on 12/21/11.  Fortman did not appeal. |
| *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997 (E.D. Wis. 2010). | Kent Stephens;<br>Douglas Hilbert;<br>Kelly Marie Spann | Objection and motion to intervene filed 6/7/10.  Final approval granted and fees awarded 8/16/10 (733 F. Supp. 2d 997).  Attorneys Fortman, Kress and Kessinger filed notice of appeal 9/14/10; appeal voluntarily dismissed on 2/10/11. |
| *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008). | George S. Bishop;<br>Jill R. Bishop;<br>Lon Wilkens;<br>Betty Wilkens | Objection filed in 2008. Fortman, Pentz and Kessinger together filed this objection.  On 9/8/08, all objections were overruled or found to be without merit in the order awarding fees (586 F. Supp. 2d 732) and the plan of allocation of the settlement proceeds (2008 U.S. Dist. LEXIS 84656).  Notice of appeal filed 10/3/08.  Stipulated dismissal filed 9/10/09. |
| *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL 1827, 3:07-md-1827, 2013 WL 1365900 ( N.D. Cal., April 03, 2013). | Shannon Cashion;<br>W. Christopher McDonough;<br>Kelly Kress;<br>Mark Schulte | Final Judgment was entered on 4/1/13 and an Amended Order Granting Final Approval on 4/3/13. Fortman filed this objection with serial objectors John Kress, Steve Miller and J. Scott Kessinger on 4/13/12.  Kress, Miller and Kessinger filed an appeal on 4/29/13 and on 6/10/14 moved to voluntarily dismiss their appeal. |
| *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015). | Laura Fortman | Fortman, Kress and Miller filed an objection on behalf of Laura Fortman on 10/6/14.  The Final Order of Dismissal and Final Judgment was entered on 3/17/15. The Court found that none of the objections were well founded and overruled each. |

| Case | Client(s) | Notes |
|------|-----------|-------|
| *Gehrich v. Chase Bank*, No. 12-cv-05510 (N.D. Ill. filed July 12, 2012). | Steve Purgahn | Objection filed 2/9/15.  The Final Approval Hearing was held on 10/22/15.  The deadline for Class Counsel to file a supplemental brief regarding attorneys' fees is 11/5/15.  The deadline for any objector to file a supplemental brief regarding attorneys' fees is 11/17/15. |
| *In re Pre-Filled Propane Tank Mktg. & Sales Practices Litig.*, 2010 U.S. Dist. LEXIS 106888 (W.D. Mo. Oct. 4, 2010). | Patrick Giratos | Objection filed 9/15/10.  Final approval was entered on 10/4/10, in which Judge Fenner writes, "the Court gives weight to the Class's reaction to the Settlement. A significant number of individuals have participated in the claims process. The opt-out rate is low. As to the objections received, the Court has reviewed and heard the objections to this Settlement, and they are hereby overruled." In re Pre-Filled Propane Tank Mktg. & Sales Practices Litig., 2010 U.S. Dist. LEXIS 106888, *13 (W.D. Mo. Oct. 4, 2010).<br><br>Notice of Appeal was entered on 11/10/10 and the appeal was voluntarily dismissed on 2/22/11. |
| *In re: Pre Filled Propane Tank Marketing and Sales Prac. Litig. (Ferrellgas Settlement)*, MDL No. 2086 (Order Granting Motion for Final Approval of Class Settlement and Plaintiffs' Motion for Approval of Attorneys' Fees) (Dkt. No. 530) (W.D. Mo. filed May 31, 2012). | Patrick Giratos; John Mihs; John C. Kress | Objection filed 1/10/12.  The Final Order of Judgment and Dismissal with Prejudice and Order Granting Final Approval of Class Settlement, Approval of Attorney's Fees and Setting Bond was entered on 5/31/12. Kress *et al* appealed to the Eighth Circuit Court of Appeal on 6/28/12.  All parties in the consolidated appeal moved to dismiss their appeal and on 11/23/12, the Court granted Appellants' motion to voluntarily dismiss. |
| *Allen v. JP Morgan Chase*, No. 13-cv-08285 (Minute Entry Regarding Granting of Plaintiffs' Motion for Final Approval) (Dkt. No. 91) (N.D. Ill. filed Oct. 21, 2015). | Enzo Anthony Sberna | Objection filed 9/4/15; All objections overruled and final approval granted on 10/21/15. |

| Case | Client(s) | Notes |
|------|-----------|-------|
| *Roberts et al v. Electrolux Home Products, Inc*., No. 12-cv-01644, 2014 WL 8097368 (Final Judgment) (Dkt. No. 64) (C.D. Cal. filed Sep. 15, 2014). | Kristina Newman; Joyce Miller | Final approval granted 9/15/2014; Fortman et al appealed on 10/9/14 and voluntarily dismissed appeal on 10/15/14. |
| *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013). | Jonathan E. Fortman (as Objector) | Objection filed 4/1/13<br><br>Final approval granted 8/26/13. Fortman *et al* did not file appeal. |
| *In re: Polyurethane Foam Antitrust Litig.*, No. 10-md-02196-JZ (Notice of Appearance of Counsel) (Dkt. No. 1962) (N.D. Oh. filed Nov. 12, 2015). | Kelly Marie Spann | Jonathan E. Fortman filed a notice of appearance on behalf of Objector Kelly Marie Spann on 11/12/15. |

Appendix C – Jonathan E. Fortman

# APPENDIX D

# APPENDIX D

### Objections to Settlements Filed by John C. Kress

| Case | Client(s) | Notes |
|------|-----------|-------|
| *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302 (S.D. Fla. 2010). | Daniel G. Repa | The objection was filed 10/3/11 as part of group including clients of Fortman and Kessinger. (See notes re Jonathan E. Fortman, supra.) |
| *Hale v. Wal-Mart Stores, Inc.*, 2009 WL 2206961 (Mo. Cir. Ct. June 17, 2009). | Brenda Crittendon; Marcella Hodgins; Linda Garrett | After Kress' clients failed to attend their scheduled May 11, 2009 depositions, the Court granted Plaintiffs' and Class Counsel's request for sanctions against these objectors and their counsel, Kress and J. Scott Kessinger, in the amount of $11,319.70, entered June 17, 2009. |
| *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997 (E.D. Wis. Aug. 16, 2010). | David Borgmeyer; Jarvis Gutridge; Earl Hortiz | Kress filed a Motion to Intervene and Objections to Class Action Settlement and Request for Attorney's Fees on 6/7/10.  On 8/16/10, the Court denied Kress' Motion to Intervene as moot and entered separate Orders and Final Judgments Approving Settlements.  Objectors filed their appeal on 9/14/10, which was voluntarily dismissed on 2/10/11. |
| *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL 1827, 3:07-md-1827, 2013 WL 1365900 ( N.D. Cal. April 03, 2013). | Kelly Kress; Channon Cashion; W. Christopher McDonough; Mark Schulte | Final Judgment was entered on 4/1/13 and an Amended Order Granting Final Approval on 4/3/13. Kress filed this objection with serial objectors Jonathan E. Fortman, Steve Miller and J. Scott Kessinger on 4/13/12.   Kress, Fortman, Miller, and Kessinger filed an appeal on 4/29/13 and on 6/10/14 moved to voluntarily dismiss their appeal. |
| *In re: Pre Filled Propane Tank Marketing and Sales Prac. Litig. (Ferrellgas Settlement)*, MDL No. 2086 (Order Granting Motion for Final Approval of Class Settlement and Plaintiffs' Motion for Approval of Attorneys' Fees) (Dkt. No. 530) (W.D. Mo. filed May 31, 2012). | John C. Kress *pro se* | Objection filed 1/10/12.  The Final Order of Judgment and Dismissal with Prejudice and Order Granting Final Approval of Class Settlement, Approval of Attorney's Fees and Setting Bond was entered on 5/31/12.  Kress et al appealed to the Eighth Circuit Court of Appeal on 6/28/12.  All parties in the consolidated appeal moved to dismiss their appeal and on 11/23/12, the Court granted Appellants' motion to voluntarily dismiss. |

| Case | Client(s) | Notes |
|------|-----------|-------|
| *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015). | Laura Fortman | Kress, Fortman, and Miller filed an objection on behalf of Laura Fortman on 10/6/14.  The Final Order of Dismissal and Final Judgment was entered on 3/17/15. The Court found that none of the objections were well founded and overruled each. |
| *Gehrich v. Chase Bank*, No. 12-cv-05510 (N.D. Ill. filed July 12, 2012). | Steve Purgahn | Objection filed 2/9/15.  The Final Approval Hearing was held on 10/22/15. The deadline for Class Counsel to file a supplemental brief regarding attorneys' fees is 11/5/15. The deadline for any objector to file a supplemental brief regarding attorneys' fees is 11/17/15. |
| *Roberts et al v. Electrolux Home Products, Inc.*, No. 12-cv-01644, 2014 WL 8097368 (Final Judgment) (Dkt. No. 64) (C.D. Cal. filed Sep. 15, 2014). | Kristina Newman; Joyce Miller | Final approval granted 9/15/14. Fortman et al appealed on 10/9/14 and voluntarily dismissed their appeal less than one week later on 10/15/14. |
| *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013). | Jonathan E. Fortman | Objection filed 4/1/13; Final approval granted 8/26/13. Fortman et al did not appeal. |
| *Allen v. JP Morgan Chase*, No. 13-cv-08285 (Minute Entry Regarding Granting of Plaintiffs' Motion for Final Approval) (Dkt. No. 91) (N.D. Ill. filed Oct. 21, 2015). | Enzo Anthony Sberna | Objection filed 9/4/15.  All objections were overruled and final approval granted on 10/21/15. |

# APPENDIX E

# APPENDIX E

**Examples of Cases in Which Steve A. Miller Has Filed Objections and Dismissed, Abandoned or Withdrawn the Objections Without Attaining Settlement Changes or Additional Benefits for the Class**

| Case | Client(s) | Objections | Outcome of Objections and/or Appeals |
|------|-----------|------------|--------------------------------------|
| *In re Am. Int'l Grp., Inc. Secs. Litig.*, 916 F. Supp. 2d 454 (S.D.N.Y. 2013). | Steve A. Miller, P.C. Profit Sharing Plan, Trustee | Objection filed 1/6/12. Final approval granted and fees awarded 2/2/12 (2012 WL 345509). | Miller filed a notice of appeal on 2/17/12. The appeal was voluntarily dismissed on 10/1/12. |
| *Nakash v. NVIDIA Corp.* No. 08-cv-04312-JW (Order Granting Plaintiffs' Motion for Final Approval) (Dkt. No. 319) (N.D. Cal. filed Dec. 20, 2010). | Chase A. Thompson[i] | Objection filed 11/2/10 (by Charles M. Thompson as counsel for his son). Final approval granted and fees awarded 12/20/10. | Miller/Thompson filed notice of appeal 1/19/11 (several other objectors also appealed, and the appeals were consolidated). Appeals were voluntarily dismissed on 3/28/12.<br><br>Judgment affirmed 9/4/13, No. 11-15186 (9th Cir. Sep 04, 2013) |
| *Blessing v. Sirius XM Radio Inc.*, 2011 U.S. Dist. LEXIS 94723, 2011-2 Trade Cas. (CCH) P77,579, 2011 WL 3739024 (S.D.N.Y. Aug. 24, 2011). | Jeannine Miller | Objection dated 6/20/11. Final approval granted and fees awarded on 8/24/11. | Miller filed a notice of appeal 9/29/11. The District Court's Judgment was affirmed by summary order on 3/13/13. |
| *White v. Cellco Partnership d/b/a Verizon Wireless*, No. RG04137699 (Cal. Sup. Ct. filed Nov. 6, 2008). | Ann Talley; John Talley | Objection filed 10/17/08. Final approval granted and fees awarded on 11/6/08. | Miller filed a notice of appeal 1/5/09. Judgment in *White* and related case affirmed by *Cellphone Fee Termination Cases*, 186 Cal.App.4th 1380 (2010). |
| *Cassese v. Washington Mut., Inc.*, 711 F. Supp. 2d 261 (E.D.N.Y. 2010). | John Henry Williams | Objection filed 9/8/11. | Miller filed a notice of appeal 10/19/11. The District Court's Judgment was affirmed by Summary Order on 11/20/12. |

| Case | Client(s) | Objections | Outcome of Objections and/or Appeals |
|---|---|---|---|
| *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, No. MDL 1532, 2011 WL 1398485, at *1 (D. Me. Apr. 13, 2011) *supplemented*, 800 F. Supp. 2d 328 (D. Me. 2011) and *aff'd*, No. 2:03-MD-1532-DBH, 2012 WL 379947 (D. Me. Feb. 3, 2012). | Joey Hutto; Jeanne Finn; Channing Carder; Deborah Colburn; Wayne Phillips/American Electric Moto Service | Filed 1/31/11. | From "Decision and Order on Proposed Settlements and Plan of Allocation": <br><br> "Joey Hutto, Jeanne Finn, Channing Carder, Deborah Colburn, Nancy Carder and Wayne Phillips d/b/a/ American Electric Motor Service, object in part because I am asked to award attorney fees before determining the value of benefits actually received by the class members, and because claim forms must be submitted before the settlement is finally approved. Objection to Proposed Settlement (internal citations omitted). <u>This is a specious argument</u>. It is because the claims have already been submitted that I can determine the actual value of benefits the class will receive, and obviously any subtraction for attorney fees must be made before checks can be distributed to class members. The benefits will be received by all who have filed claims (except those who fail to cash the claim check). Moreover, the class members had both notice and a reasonable amount of time to file claims." 2011 WL 1398485, at *3 n.22 (emphasis added). <br><br> "The Hutto, et al. objection, asserted on behalf of multiple clients residing in different states, is confusing. Objection (internal citations omitted). The objection asserts that the settlement is unfair to Alabama, but does not assert why. The objection goes on to complain that some |

| Case | Client(s) | Objections | Outcome of Objections and/or Appeals |
|------|-----------|------------|--------------------------------------|
| -continued-<br>*In re New Motor Vehicles Canadian Exp. Antitrust Litig.,* No. MDL 1532, 2011 WL 1398485 (D. Me. Apr. 13, 2011). | | | Toyota purchasers are not eligible to get a cash payment even though Toyota was the defendant who settled. I have previously considered and rejected the possibility that only Toyota purchasers should recover because the claims asserted are based on a |
| *In re: Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.,* 733 F. Supp. 2d 997 (E.D. Wis. 2010). | Jeannine Miller | Filed 6/4/10. | Final approval granted and fees awarded 8/16/10 (733 F. Supp. 2d 997).  Miller filed notice of appeal 9/14/10 and voluntarily dismissed 2/16/11. |
| *Credit/Debit Card Tying Cases* (San Francisco Super. Ct., J.C.C.P. No. 4335). | John Finn | Filed 5/20/10. | Settlement approved and fees awarded on 8/23/10; several appeals filed but none by Miller. |
| *In re Mattel, Inc. Toy Lead Paint Products Liability Litig.,* No. 07-01897 (Final Judgment of Dismissal With Prejudice) (Dkt. No. 250) (C.D. Cal. Mar. 26, 2010). | Chase A. Thompson | Filed 2/19/10<br>Judge Fischer of the Central District rejected objectors' claims that the deal amounted to a "coupon" settlement which the class members can only benefit if they purchase Mattel Products. (Dkt. No. 250). | Miller/Thompson filed a notice of appeal, followed by an amended version of same on 5/18/10.<br><br>A stipulated motion to dismiss the four appeals related to the Mattel MDL was filed on 11/10/10 and granted 11/19/10. |
| *In re Yahoo! Litig.,* No. CV 06-2737 CAS (FMOx) (Final Judgment and Order of Dismissal) (Dkt. No. 226) (C.D. Cal. filed Jan. 15, 2010). | LightTheNations.com; ChaseandSam.com **(Chase Thompson)**; Digital Playroom, Inc.; James Owens; Randal S. Ford | Dated 12/11/09 (not docketed): Class members who are not "out of business" receive no monetary compensation; settlement creates subclasses and therefore a conflict of interest for class counsel; excessive attorneys' fees and incentive awards. | Final judgment entered 1/15/10, approving settlement and awarding fees of $4.3 million (no mention of objections) (Dkt. No. 226).  Miller filed notice of appeal on 2/11/10; order re voluntary dismissal of Miller's appeal and two others entered 9/23/10. |

| Case | Client(s) | Objections | Outcome of Objections and/or Appeals |
|---|---|---|---|
| *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 2009 U.S. Dist. LEXIS 93162, Fed. Sec. L. Rep. (CCH) P95,369 (S.D.N.Y. 2009). | Steve A. Miller, P.C. Profit Sharing Plan | Filed 8/10/09 (letter to Court) | Final approval granted and fees awarded on 10/5/09.  Various appeals of that order filed in early November, including one by Miller on 11/3/09.<br><br>In the underlying matter, Judge Shira Scheindlin ruled on 6/17/10 that objectors must post a $25,000 bond (between them) (721 F. Supp. 2d 210; amended 7/20/10 (728 F. Supp. 2d 289)).  Miller is identified therein not as counsel but as an objector (along with his profit-sharing plan) represented by Jeffrey L. Weinstein. |
| *CLRB Hanson Inds., LLC v. Google, Inc.*, No. C 05-03649 JW PVT (Final Judgment and Attorney's Fees Orders) (Dkt. Nos. 346, 347) (N.D. Cal. filed Sep. 14, 2009). | Randy R. Lyon; Chase Thompson | Objection filed 7/10/09. After the fairness hearing, the district court issued its Final Judgment approving the settlement, finding "that said settlement is, in all respects, fair, just, reasonable and adequate to the Class, and in the best interests of the Class." (Dkt. 367, p. 2 of 12). | Settlement approved and fees awarded on 9/14/09.<br><br>Miller did not file an appeal. |
| *Milliron v. T-Mobile USA, Inc.*, 2009 U.S. Dist. LEXIS 101201, 2009 WL 3345762 (D.N.J. Sept. 10, 2009). | Thomas A. Carder; Kimberley Lyons; Aaron Miller | Objection filed 7/2/09.<br><br>In its Opinion and Order, the Court writes, "only five Class Members lodged objections to the amount of attorneys' fees requested, and none of those objections state a substantive ground to warrant denying the request." (2009 U.S. Dist. LEXIS 101201, *30, 2009 WL 3345762 (D.N.J. Sept. 10, 2009)). | Settlement approved and fees awarded on 9/10/09, with all objections overruled.<br><br>Various objectors appealed, including Steve Miller, on 10/7/09.<br><br>A stipulation for dismissal was filed on 3/23/11. |

| Case | Client(s) | Objections | Outcome of Objections and/or Appeals |
|------|-----------|------------|--------------------------------------|
| *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 49885, 2013-1 Trade Cas. (CCH) P78,318, 2013 WL 1365900 (N.D. Cal. Apr. 1, 2013) | Shannon Cashion; W. Christopher McDonough; Kelly Kress; Mark Schulte | Settlement #2: Settling Plaintiffs (Indirect Purchaser Plaintiffs and 8 Settling States) jointly agree to final settlement with Settling Defendants (remaining 3 of the 10 original named defendants)<br><br>3/29/13: Order Granting Final Approval Of Combined Class, *Parens Patriae*, And Governmental Entity Settlements With AUO, LG Display, And Toshiba Defendants; Final Judgment of Dismissal With Prejudice; Award of Attorneys Fees, Expenses, and Incentive Awards. An Amended Order was issued on 4/1/13 and a Second Amended Order on 4/3/2013 (2013 U.S. Dist. LEXIS 49885, 2013-1 Trade Cas. (CCH) P78,318, 2013 WL 1365900). | Miller filed appeal on 4/29/13, although John C. Kress was listed as counsel for objector Kelly Kress on appeal.<br><br>Appeal voluntarily dismissed on 6/10/14. |
| *In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729 (Final Settlement Approval Order) (Dkt. No 515) (N.D. Ill. Sep. 17, 2008). | Christi M. Copeland | Filed approximately 8/22/08. | Final approval order of 9/17/08 overruled all objections. Miller appealed on 10/15/08. The objectors subsequently reached a settlement with counsel and, on 7/30/09, a motion for voluntary dismissal was filed, which the 7th Circuit granted the next day. |

| Case | Client(s) | Objections | Outcome of Objections and/or Appeals |
|---|---|---|---|
| *Pecover v. Electronic Arts, Inc.*, No. 4:08-cv-2820 (Final Judgment and Order of Dismissal with Prejudice) (Dkt. No. 465) (N.D. Cal. May 30, 2013). | Aaron Miller | 5/30/13: Final Judgment and Order of dismissal granting final approval of class action settlement.<br><br>6/19/13: Order awarding attorneys' fees (Dkt. No. 467). | Appeal filed on 6/28/13 and voluntarily dismissed on 8/16/13. |
| *In re: Bextra and Celebrex Marketing Sales Practices and Product Liability Litig.*, MDL No. 1699, No. 3:05-md-01699(Second Revised Order and Final Judgment Approving Settlement and Awarding Attorneys' Fees) (Dkt. No. 3222) (N.D. Cal. filed Oct. 9, 2009). | Janice Johnson; Wilma Thompson | 9/28/2009: Order and Final Judgment granting motions for (1) final approval of the purchase claims class action settlement, and (2) attorney fees, reimbursement of expenses and compensation to named plaintiffs. (Dkt. No. 3206)<br><br>10/09/2009: Second Revised Order and Final Judgment approving the settlement between purchase claims classes and Defendant Pfizer, Inc. and awarding of attorneys' fees. | Appeal filed 10/27/09, voluntarily dismissed 11/12/09. |
| *In re: Netflix Privacy Litigation*, No. 5:11-cv-00379, cite (N.D. Cal. Jan. 26, 2011). | Stephen C. Grifffis; Hugh Ramsey | 3/18/2013: Final Judgment and Order of dismissal with prejudice granting: (1) motion for final approval of class action settlement; and (2) motion for attorneys' fees, expenses and incentive award | Miller appealed on 4/15/2013 and on 7/22/2013, John Pentz entered a Notice of Appearance for Appellants Griffis and Ramsey;<br><br>On 11/25/13, the district court granted Plaintiffs' motion for Appeal Bonds and additional discovery.  Each objector was ordered to post either $21,519 bond or file a notice of dismissal, on or before 12/20/13.<br><br>Appeal voluntarily dismissed on 12/6/13. |

| Case | Client(s) | Objections | Outcome of Objections and/or Appeals |
|---|---|---|---|
| *In re Bank of America Corporation Securities, Derivative, and Employee Retirement Income Security Act* (ERISA) *Litig.*, No. 1:09-md-2058 cite (S.D.N.Y. June 11, 2009). | Michael Washenik; Laurel Washenik | 4/8/2013: Order awarding attorneys' fees and expenses to co-lead counsel and awards to lead plaintiffs in the Consolidated Securities Actions.<br><br>4/9/2013: (1) Judgment granting final approval to the Class Action Settlement of the Consolidated Securities Actions; and (2) Order approving Plan of Allocation of the Net Settlement Funds. | Appeal filed 5/7/2013<br><br>The Court of Appeal for the Second Circuit considered all of objector-appellants' arguments and concluded they were without merit. Judgment of district court, affirmed. |
| *In Re: Hyundai and Kia Fuel Economy Litigation*, MDL No. 2:13-ml-2424, cite (C.D. Cal. date). | Antonio (Enzo) Sberna | Objection filed 3/5/15 by Miller, Jonathan E. Fortman and John Kress. | Notice of Appeal was filed on 7/1/15 , and on 9/3/15, an amended Notice of Appeal filed by Miller on 9/3/15. |

---

[i] Steve Miller has represented fellow objector Charles M. Thompson's son, Chase Thompson in filing various objections, including in *In re Mattel, Inc. Toy Lead Paint Products Liability Litig.*, MDL No. 1897 (Final Judgment of Dismissal with Prejudice) (Dkt. No. 250) (C.D. Cal. March 26, 2010); *In re Yahoo! Litig.*, No. CV 06-2737 CAS (FMOx) (Final Judgment and Order of Dismissal) (Dkt. No. 226) (C.D. Cal. Jan. 15, 2010); and *Nakash v. NVIDIA Corp.*, No. 08-cv-04312-JW(Order Granting Plaintiffs' Motion for Final Approval) (Dkt. No. 319) (N.D. Cal. Dec. 20, 2010).

# APPENDIX F

## APPENDIX F

**Examples of Cases in Which Joseph Darrell Palmer Filed Objections and Dismissed, Abandoned, or Withdrawn the Objections or Appeal Without Attaining Settlement Changes or Additional Benefits for the Class**

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| *Berger v. Property I.D. Corp.*, No. CV 05-5373 GHK (CWx) (Order Granting Award of Attorney Fees) (C.D. Cal. Jan. 28, 2009). | Joseph Palmer (actually Darrell Palmer, appearing pro per, under his first name) | Award of fees, to which Palmer had objected, granted 1/28/09 (Dkt. 899); final approval granted in separate order of that date (Dkt. 900). Objections not mentioned in either order. | Not filed. | Not applicable. |
| *In re Broadcom Corporation Class Action Litig.*, No. 06-cv-5036-R (CWx)) (Final Order and Judgment as to Broadcom Defendants) (Dkt. No. 357) (C.D. Cal. Aug. 11, 2010). | Smokestack Lightening Ltd. "Marisco" | Overruled and $10,000 appeal bond required (Dkt. 356; 8/11/10). | Filed 9/10/10 (9th Cir., No. 10-56435). | Voluntarily dismissed (Dkt. No. 8, 11/4/10). |
| *Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007). | Norman Palmer (Darrell Palmer's brother), Richard Oster; Jeff Heinrichs | Overruled (2007 U.S. Dist. LEXIS 86266; 11/16/07). | Filed 12/14/07 (9th Cir., No. 07-17326). | Voluntarily dismissed (Dkt. No. 12, 5/2/08). |
| *In re Cellphone Termination Fee Cases,* No. JCCP 4332) (Cal. Super. Ct. Alameda Cnty. July 21, 2010). | Carol Barrett; Robert R. Oubre, Sr. | Final approval granted and fees awarded 7/21/10 in separate orders. Objections not mentioned in either of the orders. | Filed 9/17/10 (Cal. App. 1st Dist., No. A129887). | Voluntarily dismissed on 3/10/11. |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|----------------------|--------|-------------------|
| *In re Chiron Shareholder Deal Litig.*, No. RG05230567 (Cal. Super. Ct. Alameda Cnty. July 25, 2006). | Carrie B. Savage | Final approval granted and fees awarded 7/25/06 in separate orders. Objections not mentioned in either of the orders. | Filed 9/6/06 (Cal. App. 1st Dist., No. A115432). | Abandonment of appeal filed 10/18/06. |
| *Collins v. American Honda Motor Co.*, No. RG03099677 (Cal. Super. Ct. Alameda Cnty. Dec. 28, 2006). | Elizabeth Blanks; Ancle W. Cummins, Jr.; Irving S. Bergrin | Final approval granted and fees awarded 12/28/06. The order states that the objections were considered but does not otherwise mention them. | Blanks/Cummins appeal filed 2/22/07 (Cal. App. 1st Dist., No. A117120); Bergrin appeal filed 2/26/07 (Cal. App. 1st Dist., No. A117125). | Blanks/Cummins and Bergrin appeals voluntarily dismissed 6/15/07. |
| *In re: Countrywide Financial Corp. Customer Data Security Breach Litig.*, No. 08-MD-01998 (Opinion on Final Approval and Fees) (Dkt. No. 297)(W.D. Ky. Aug. 23, 2010). | Winfield C. Scott | Memorandum Opinion on final approval and fees found objections to be without merit (Dkt. No. 297, 8/23/10). | Filed 9/22/10 (6th Cir., No. 10-6194). | Voluntarily dismissed (Doc. No. 006110805529, 12/2/10). |
| *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 2009 U.S. Dist. LEXIS 98291, 2009-2 Trade Cas. (CCH) P76, 787 (S.D.N.Y. 2009). | Richard Melton Construction, Inc.; Dirk F. Sutro | Final approval granted and fees awarded on 10/22/09 (263 F.R.D. 110). There were 76 objectors to the settlement. For each of their points, the court said the objections were either without merit or moot.<br><br>Certain objectors sought fees. "*The objectors in this case did little to aid this Court.* While there were modifications to the notice program, these modifications were entirely on the Court's initiative and devised by the Special Master and the parties. As | Not filed. | Not applicable. |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| **-continued-**<br>*In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 2009 U.S. Dist. LEXIS 98291, 2009-2 Trade Cas. (CCH) P76, 787 (S.D.N.Y. 2009). | | for fees, *the objections were so general and repetitive that they were of no assistance* to an area with which this Court is intimately familiar." *Id.* at 132  (emphasis added). | | |
| *Dervaes v. California Physicians' Service d/b/a Blue Shield of California*, No. RG06262733 (Cal. Super Ct. Alameda Cnty. April 2, 2010). | Alison H. Paul | Final approval granted and fees awarded 4/2/10.  Objections not mentioned in order and judgment. | Filed 6/1/10 (Cal. App. 1st Dist., No. A128696). | Abandonment of appeal filed 6/4/10. |
| *Elihu v. Toshiba America Information Systems*, No. BC328556 (Cal. Super. Ct. Los Angeles Cnty. May 31, 2007). | David Schaefer | Judgment entered 5/31/07. | Filed 7/27/07 (Cal. App. 2nd Dist., No. B201331). | Voluntarily dismissed 4/24/08. |
| *Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 586 F. Supp. 2d 732, 2008 U.S. Dist. LEXIS 84708 (S.D. Tex. 2008). | Larry Fenstad; Dorothy Lancaster McCoppin | On 9/8/08, all objections were overruled or found to be without merit in the order awarding fees (586 F. Supp. 2d 732) and the plan of allocation of the settlement proceeds (2008 U.S. Dist. LEXIS 84656). | Filed 10/3/08 (5th Cir., No. 08-20648). | Stipulated dismissal filed 9/10/09 (Doc. No. 0051920399). |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| *In re: Epson Ink Cartridges*, No. JCCP 4347 (Cal. Super. Ct. Los Angeles Cnty. Oct. 23, 2006). | Elaine Savage; Edward Siegel; Andy Lui; Albert Lui | Judgment entered 10/23/06. | Filed 12/18/06 (Cal. App. 2nd Dist., No. B195818). | Voluntarily dismissed (1/29/07 – Savage, Andy Lui and Albert Lui; 3/13/07 – Siegel). |
| *In re: Ford Explorer Cases*, JCCP Nos. 4266 and 4270 (Cal. Super Ct. Sacramento Cnty. 2008). | JWC Construction, Inc.; Misty Carter | Objections overruled in 6/27/08 fee order and 7/30/08 judgment. | Filed 9/26/08 (Cal. App. 3rd Dist., No. C060067). | Abandonment of appeal filed 11/21/08. |
| *Friedman v. 24 Hour Fitness USA, Inc.*, 2010 U.S. Dist. LEXIS 143816 (C.D. Cal. July 12, 2010). | Toni Ozen | Overruled 7/12/10. | Filed 8/11/10 (9th Cir., No. 10-56289). | Stipulated dismissal (Dkt. No. 3, 8/20/10). |
| *Gemelas v. Dannon Co.*, No. 08- CV-236 (Final Order and Decree) (Dkt. No. 71) (N.D. Ohio June 24, 2010). | Steven P. Cope | Judgment, Final Order and Decree (Dkt. 71, 6/24/10) indicates objections were considered.  In his Order on Plaintiff's Motion for a Bond to Secure Payment of Costs and Attorneys' Fees on Appeal, Judge Dan Aaron Polster stated, "The only objections to the settlement were lodged by what now appear to be 'serial objectors.'" *Gemelas v. Dannon Co.*, 2010 U.S. Dist. LEXIS 99503, 2010 WL 3703811 (N.D. Ohio Aug. 31, 2010) (emphasis added). | Not filed. | Not applicable. |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| *In re General Motors Dex-Cool Gasket Cases*, JCCP No. 4495 (Final Approval and Fee Order) (Alameda Super. Ct. Oct. 23, 2008). | Jonathan L. Booze | Overruled in 10/23/08 final approval and fee order.<br><br>On 12/5/08, all of the objectors filed a joint notice of withdrawal of their objections. | Not filed. | Not applicable. |
| *Hoffman v. Citibank (South Dakota) N.A.*, No. CV-06-00571 (C.D. Cal. Dec. 22, 2010). | Joseph Balla; Andrew J. Cesare; Todd Bates | Fees awarded (12/17/10 and 12/22/10) and settlement approved (12/22/10) in separate orders. Objections not mentioned in the orders. | Filed 1/18/11 (9th Cir., No. 11-55106). | Voluntarily dismissed (Dkt. 7, 3/23/11). |
| *Koller v. Int'l. Rectifier Corp.*, No. CV-07-02544 (Final Judgment and Order of Dismissal with Prejudice) (Dkt. No. 314) (C.D. Cal. Feb. 8, 2010). | Cascia II, LLC | Objection filed 1/25/10; withdrawn 2/1/10.<br>Final Approval granted on 2/8/10. | Not filed. | Not applicable. |
| *In re LifeLock, Inc. Marketing and Sales Practices Litig.*, No. MDL 08-1977, 2010 WL 3715138 (D. Ariz. Aug. 31, 2010). | Billy Daniels | The final approval and fee order of 8/31/10 (Dkt. 218) states: "[T]he Parties demonstrated in their Response to Objections that none of the asserted bases for objection is valid." Slip op. at 9. | Filed 9/30/10 (9th Cir., No. 10-17177). | Voluntarily dismissed (Dkt. No. 16, 1/5/11). |
| *In re Mercury Interactive Corp. Securities Litig.*, No. 5:05–cv– 03395–JF (N.D. Cal. 2011). | | Objection filed 1/13/11; withdrawn 2/25/11. | Not filed. | Not applicable. |

Appendix F – Joseph Darrell Palmer

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| *Papadakis v. Northwestern Mutual Life Ins. Co.*, No. BC322788 (Cal. Super. Ct. Los Angeles Cnty. Feb. 20, 2009). | Marci R. Frenkel; Eric Zeigenhorn; Norma Hoffman; Stuart Mintz; Kirk Stewart; Steven Sindell; Paul M. Kaufman | Objection filed 12/4/08.  Final approval order and judgment entered 2/20/09. | Filed 4/2/09 (Cal. App. 2nd Dist., No. B214789). | Voluntarily dismissed (8/24/10). |
| *Salcido v. Iovate Health Sciences USA, Inc.*, No. BC387942 (Cal. Super. Ct. Los Angeles Cnty. 2009). | Cassie Griffin | Objection filed 8/28/09; withdrawn 9/24/09. | Not filed. | Not applicable. |
| *Savaglio v. Wal-Mart Stores, Inc.*, No. C-835687 (Cal. Super. Ct. Los Angeles Cnty. 2010). | Joseph D. Wilkins; Evelyn Zientek | Final approval of settlement granted 4/8/10, overruling objections except as to amount of attorneys' fees.  The 9/10/10 order on fees indicated that the court had "rejected all objections to the requested fee award." | Not filed. | Not applicable. |
| *In re Smokeless Tobacco Cases I, II* (San Francisco Super. Ct., JCCP Nos. 4250, 4258, 4259, 4262). | Norman D. Palmer | At the 3/12/08 final approval hearing, Judge Richard A. Kramer questioned Darrell Palmer at length about Norman; the same day, the objection was withdrawn. | Not filed. | Not applicable. |
| *Troyk v. Farmers Group, Inc.*, No. GIC836844 (Cal. Super. Ct. San Diego Cnty. Nov. 23, 2010). | Arthur Carapia | Judgment entered 11/23/10. | Filed 1/15/10 (Cal. App. 4th Dist., Div. 1, No. D056803). | Abandonment of appeal filed (3/4/10). |

Appendix F – Joseph Darrell Palmer

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| *In re Vitamins Antitrust Litig.*, MDL No. 1285 (Final Approval Order) (Dkt. No. 4888) (D.D.C. filed June 25, 2010). | Neil Freedman; Teri Cunningham | Objections found to be without merit in final approval order (Dkt. No. 4888, 6/25/10). | Filed 7/23/10 (D.C. Cir., No. 10-7096). | Stipulated dismissal entered 9/2/10 (Doc. No. 1263938). |
| *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609 (N.D. Cal. 2007). | Joseph D. Wilkins; Nicole Clemente; Lolita Wells | Objections filed 9/7/10; withdrawn 11/6/10. | Not filed. | Not applicable. |
| *Wilson v. Airborne, Inc.*, 2008 U.S. Dist. LEXIS 110411, 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008). | Denise Fairbank; Falicia Estep | Objections overruled in final approval and fee order (Dkt. 170, 8/13/08). | Filed 11/4/08 (9th Cir., No. 08-56819). | Voluntarily dismissed (Dkt. 10, 2/20/09). |
| *Yeagley v. Wells Fargo & Co.*, No. C-05-3403-CRB (Memorandum and Order) (Dkt. No. 169) (N.D. Cal. filed Jan. 18, 2008). | Rose A. Munoz | Objection filed 6/8/07; withdrawn as indicated in 10/18/07 order stating that plaintiffs' counsel had agreed to pay the objectors' attorneys fees. | Not filed. | Not applicable. |
| *In re: AT&T Mobility Wireless Data Services Tax Litigation,* MDL 2147, No. 1:10-cv-02278 (N.D. Ill. Apr. 7, 2010). | Margaret Strohlein filed *pro se* | 6/2/11: Memorandum Opinion and Order (1) granting final approval of the class action settlement; and (2) grants in part and denies in part Class Counsel's motion for approval of attorneys' fees, costs, and expenses, and for approval of incentive awards for Class Representatives. | 10/11/11: disclosure statement in Appeal No. 11-2522 filed on behalf of Appellant Strohlein by Joseph Darrell Palmer | 12/6/11: Appeal No. 11-2522—voluntarily dismissed

7/22/11: Class Representatives moved court to order all six appellants to post appellate cost bond of |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|----------------------|--------|-------------------|
| **-continued-**<br>*In re: AT&T Mobility Wireless Data Services Tax Litigation,* MDL 2147, No. 1:10-cv-02278 (N.D. Ill. Apr. 7, 2010). | | | | $4,500 each.<br><br>7/28/11: Court ordered Objectors to post a bond of $4,500 each by 8/11/11 |
| *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.,* 733 F. Supp. 2d 997 (E.D. Wis.  Aug. 16, 2010). | Rosalie Borgarts; Paul Palmer; Irving S. Bergrin; Cory A. Buye; Jill Cannata; Robert Falkner; Thomas Basie | See also the five individual Orders and Judgments filed on 8/16/10 approving five settlement agreements between the plaintiff class and all defendants and awarding attorneys' fees and costs to class counsel, thereby resolving all actions that were transferred and consolidated for pretrial purposes by the Panel on Multidistrict Litigation into MDL 1999. | Appeal filed 8/23/10 | Appeal 2/16/11 voluntarily dismissed |
| *Stern v. Singular Wireless* Service, No. 8:09-cv-01112 (C.D. Cal. Dec. 15, 2009). | Gene Hopkins Marc Gambello | 11/22/10: Order granting (1) final approval to the UCC settlement and entering final judgment; and (2) application for award of attorneys' fees and reimbursement of expenses to class counsel, and incentive awards for class representatives. | Appealed 12/9/12 | 6/19/2012: Appeal No. 10- 56929—Judgment of the district court affirmed per unpublished opinion |
| *Batmanghelich v. Sirius XM Radio, Inc.,* 2011 U.S. Dist. LEXIS 155710 (C.D. Cal. Sept. 15, 2011). | Michelle Melton Edmund F. Bandas | 9/15/11: Final Order and Judgment granting (1) Plaintiff's motion for final approval of class action settlement; and (2) Plaintiff's unopposed application for attorneys' fees and costs, class representative's service payment, and settlement administration expenses | Appealed on 10/13/11: | 11/9/11: Appeal No. 11-56776—voluntarily dismissed |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| *Milgram v. Chase Bank USA, N.A.*, No. 2:10-cv-00336 (C.D. Cal. Jan. 15, 2010). | Andrew Cesare | 11/22/11: Final Approval Order granting final approval to the class action settlement, and awarding attorneys' fees, costs, and class representative's service award1 | Appeal filed 12/22/11 | 1/31/12: Appeal No. 12-55002—voluntarily dismissed |
| *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827, No. 3:07-md-1827 (Order Granting Final Approval Of Combined Class, Parens Patriae, and Governmental Entity Settlements; Final Judgment of Dismissal With Prejudice) (Dkt. No. 6130) (N.D. Cal. filed July 11, 2012). | Johnny Kessel Alison Paul[1] Leveta Chesser | 7/11/12: Final Judgment of dismissal with prejudice and Order granting final approval of combined class, parens patrie, and governmental entity settlements | Appeal filed 6/6/12 | 5/23/14: Appeal voluntarily dismissed |
| *Nakash v. NVIDIA Corp.*, No. 08-cv-04312-JW (Order Granting Plaintiffs' Motions for Final Approval) (Dkt. No 319) (N.D. Cal. filed Dec. 20, 2010). | Frank Barbara | 12/20/10: Final Judgment granting (1) settlement class plaintiffs/owners of class computers motions for final approval of class action settlement with Nvidia Corp., and (2) motion for attorney fees, expenses and reimbursements for plaintiffs. | Appeal filed 1/18/11 by Law Office of Darrell Palmer. | Judgment of district court affirmed on 9/4/13 |

---

[1] Objector Alison Paul is married to Joseph Darrell Palmer.

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|----------------------|--------|-------------------|
| *In re Wachovia Corp. "Pick–A–Payment" Mortgage Mktg. & Sales Practices Litig.*, 2011 WL 1877630 (N.D. Cal. May 17, 2011). | Robert E Flores, Sharon L Flores, James Rudolph Donald Smith | 5/17/11: Order and Judgment granting settlement class Plaintiffs' (1) motion for final approval of class action settlement with Defendant Wachovia Corporation; and (2) motion for attorneys' fees and costs and service payments to class representatives | Appeal filed 6/15/11 | Voluntarily dismissed 7/21/11 |
| *Fiori v. Dell, Inc.*, No. 5:09-cv- 01518 (Final Judgment and Order Granting Final Approval of Class Action Settlement) (Dkt. No. 216) (N.D. Cal. Apr. 7, 2009). | Margaret Munoz Cery Perle | 4/1/11: Final Judgment and Order granting final approval of class action settlement

7/6/11: Order granting motion for attorney fees, costs, and incentive awards | Appeal filed 4/26/11

8/5/11: appeal amended to add the 07/06/11 Order granting class counsel's motion for attorney fees | Appeal voluntarily dismissed on 9/7/11 |
| *In re: Online DVD Rental Antitrust Litigation,* No. 4:09-md-02029 (N.D. Cal. Apr. 13, 2009). | Maria Cope | 3/29/12: Order and Final Judgment granting: (1) motion for final approval of class action settlement between settlement class Plaintiffs and Wal-Mart Stores, Inc. and Walmart.com USA LLC; and (2) class counsel's motion for attorneys' fees, reimbursement of expenses, and payments to class representatives | Appeal filed 4/27/12 | Appeal No. 12-15996—pending |
| *Yingling v. eBay, Inc.*, No. 5:09-1733, 2011 WL 2790181 (N.D. Cal. July 5, 2011). | Joseph Balla | 3/31/11: Final Order and Judgment granting (1) Plaintiffs' motion for final approval of class action settlement with Defendant eBay; and (2) motion for attorney fees and expenses and class | Appeal filed 4/4/11

7/5/11: court orders Objector Balla to post an appeal bond in the | Appeal voluntarily dismissed on 8/12/11 |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| **-continued-**<br>*Yingling v. eBay, Inc.*, No. 5:09-1733, 2011 WL 2790181 (N.D. Cal. July 5, 2011). | | representative incentive compensation awards | amount of $5,000 on or before July 25, 2011<br><br>8/5/11: Palmer filed an amended notice of appeal to appeal from the courts' July 5, 2011 Order requiring Objector Balla to post an appeal bond. | |
| *Embry v. ACER America Corp.*, No. 5:09-cv-01808 (Order Granting Plaintiffs' Motion for Final Approval of Class Settlement and Attorney's Fees, Costs, and Incentive to Named Plaintiff) (Dkt. No. 218) (N.D. Cal. filed Apr. 24, 2009). | Christopher Bandas | 2/14/12: Order granting settlement class plaintiffs (1) motion for final approval of the class action settlement; and (2) motion for attorneys fees, costs and incentive to named plaintiff. | Appeal No. 12-15555 was dismissed on 04/18/2012 for failure to pay fees, and reinstated on 6/25/12 after Objector Bandas' payment of fees.<br><br>Notice of Appeal amended on 8/6/2012 (to include July 31, 2012 Bond Order) & 9/6/2012 (to include Aug. 31, 2012 Contempt Order) | 7/11/12: After the Ninth Circuit reinstated Bandas' appeal on June 25, 2012, Plaintiffs filed a motion for reconsideration requesting that the Court's June 5, 2012 Order to post a $70,650 appellate bond be applied, jointly and severally, to Bandas and his attorney Darrell Palmer.<br><br>7/31/12: court ordered Objector Bandas to post an appellate bond of $70,650 by Aug. 6, 2012, or file a notice of dismissal of his appeal |

# APPENDIX G

## APPENDIX G

### Objections to Settlements Filed by Charles M. Thompson

| Case | Client(s) | Notes |
|---|---|---|
| *Nakash v. NVIDIA Corp*. No. 08-cv-04312-JW (Order Granting Plaintiffs' Motion for Final Approval) (Dkt. No. 319) (N.D. Cal. filed Dec. 20, 2010). | Chase Thompson | Objection filed 11/2/10 (by Charles M. Thompson as counsel for his son). Final approval granted and fees awarded 12/20/10. Miller/Thompson filed notice of appeal on 1/19/11 (several other objectors also appealed, and the appeals were consolidated). Appeals were voluntarily dismissed on 3/28/12. |
| *Checkmate Strategic Group, Inc. v. Yahoo! Inc*., No. CV-05-4588 CAS (FMOx) (Final Order Approving Settlement and Judgment of Dismissal with Prejudice) (Dkt. No. 200) (C.D. Cal. March 26, 2007). | ChaseAndSam.com (Chase Thompson) | Objection filed 10/16/06. Chase Thompson objected under the guise of his Web site, ChaseAndSam.com, and was represented by his father, a Birmingham, AL attorney who has filed objections to a number of settlements. Final Approval Order and Judgment entered on 3/26/07. |
| *Blessing v. Sirius XM Radio Inc.*, No. 09 cv 10035, 2011 WL 3739024 (S.D.N.Y. Aug. 24, 2011). | Tom Cader | Final approval was granted on 8/24/11. Thompson filed a notice of appeal on 9/23/11. Judgment of the district court was affirmed by summary order on 3/13/13. |
| *Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F. Supp. 2d 942 (E.D. Tex. 2000). | JT Karney; Southern Network Services, Inc. | Finding that Thompson's objections were "obviously 'canned' objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests. *Shaw v. Toshiba Am. Info. Sys*., Inc., 91 F. Supp. 2d 942, 973-74, n.18 (E.D. Tex. 2000). "Take, for example, the Consolidated Objection, Memorandum and Motion for Limited and Expedited Discovery [162] filed by the Thompson-Hutsler law firm on behalf of J.T. Karney, Southern Network Services, Inc. In a paragraph complaining about coupons, this objector argues: 'it is abundantly clear that Sears will enjoy increased floor traffic in its stores from those class members who actually use the coupon thereby benefitting Sears even further.' *Id*. at P 7.b (emphasis added). Well, 'Sears' |

| Case | Client(s) | Notes |
|---|---|---|
| *-continued-*<br>*Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F. Supp. 2d 942 (E.D. Tex. 2000). | | has nothing to do with this particular lawsuit. Moreover, there is no evidence--nor did this objector offer any evidence--that there are Toshiba 'stores' that would enjoy 'increased floor traffic' from class members using their coupons (or Toshiba Bucks). Frankly, there is nothing 'abundantly clear' about this proposition as it relates to this case involving Toshiba--a manufacturer of the allegedly defective FDC's at issue in the proposed Settlement Agreement. This Court would venture to say this particular language has previously been filed in another class-action lawsuit involving 'Sears.' Perhaps that's where it should have stayed." *Shaw v. Toshiba Am. Info. Sys.,* 91 F. Supp. 2d 942, 973, n.18, 2000 U.S. Dist. LEXIS 2887, *97 (E.D. Tex. 2000). |
| *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231 (D. Del. 2002), *aff'd,* 391 F.3d 516 (3d Cir. 2004). | Jean Bradley | "The court finds unpersuasive the objections lodged to the attorneys' fees themselves. The court determines a reasonable award to the class counsel in the aggregate, and the counsel then determine how to allocate the award among themselves. Counsel asserts that there is no preexisting agreement as to the distribution of the fee award, but that the shared understanding is that it will be based on lodestar amounts as well as other factors. This is a private matter for the attorneys to resolve." *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 262 (D. Del. 2002). |
| *Thompson v. Metro. Life Ins. Co.,* 216 F.R.D. 55, 70 (S.D.N.Y. 2003). | Violett Martin | "[Thompson's clients] present nothing, besides conclusory allegations, that their interests were not adequately protected." (Motion to intervene) |
| *In re Relafen Antitrust Litig.,* 231 F.R.D. 52 (D. Mass. 2005). | Pamela Taylor | Overruling all objections and granting Final Approval of Proposed Settlement, Attorneys' Fees and Expenses, and Named Plaintiffs' Incentive Awards |

| Case | Client(s) | Notes |
|------|-----------|-------|
| *In re Universal Serv. Fund Tel. Billing Practices Litig.*, No. 02MD1468, 2008 WL 2604266 (D. Kan. Feb. 20, 2008). | Pam Hattaway; George Hattaway | The Hattaways filed their objections to settlement on 1/22/08. Soon after, on 2/20/08, Thompson submitted a motion for protective order and motion to quash the objectors' depositions. The following day the Court issued its Order finding the motion for protective order and to quash depositions moot since the objectors represented that they wanted to withdraw their objections, which they did on 3/3/08. (Order Granting Motion to Withdraw Objections by Objectors Pam Hattaway, George Hattaway (Dkt. No. 858). |
| *In re Diet Drugs Prod. Liab. Litig.*, 553 F. Supp. 2d 442, 448 (E.D. Pa. 2008). | Betty Jo Benson | Withdrew objection on 5/15/00. |
| *Faught v. Am. Home Shield Corp.*, No. 2:07-cv-1928-RDP, 2010 WL 10959223 (N.D. Ala. Apr. 27, 2010). | *Pro se* | Overruling all objections to the Settlement on 4/27/10. |
| *Lerma v. Schiff Nutrition Int'l, Inc.*, No. 11-cv-1056-MDD (Final Approval Order) (Dkt. No. 171) (S.D. Cal. Nov. 3, 2015). | *Pro se* | Thompson filed his objection on 9/28/15.  On 10/29/15, Thompson submitted his Hearing Brief. The Court rejected the Hearing Brief of *Pro Se* Objector Thompson due to its untimeliness, noting also that the issues raised in the document had already been raised by timely objectors. (See Notice of Document Discrepancy) (Dkt. No. 170). The Court granted Final Approval of Class Settlement and entered judgment on 11/2/15. |
| *Nwabueze v. AT&T Inc.*, No. C 09-01529 SI, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013). | *Pro se* | Thompson filed objection on 9/3/13, despite the fact that he clearly lacked standing to object to the proposed settlement. The Court quickly disposed of Thompson's objection finding that he did not incur any third-party charges during the class period, and therefore was not a member of the Settlement Class 2013 U.S. Dist. LEXIS 169270, *18-19, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013). All other objections were found to be without merit and overruled.  Final approval was granted on 11/27/13. |

| Case | Client(s) | Notes |
|---|---|---|
| *Talalai et al. v. Cooper Tire & Rubber Co.,* No. L-008830-00-MT (Final Order and Judgment) (Sep. 13, 2002, N.J. Super. Ct. Middlesex Cnty.). | Ben Hutsler | Objection filed on 1/15/02.   Final Order and Judgment was entered on 9/13/02. |
| *In re Currency Conversion Fee Antitrust Litig.,* 263 F.R.D. 110 (S.D.N.Y. 2009). | Thomas Cader; Judy Sargeant; Dylan L. Whisehunt; Gloria E. Wisehunt | The Order of Final Approval and Judgment was entered on 11/4/09.   Thompson and R. Stephen Griffin appealed on 11/18/09. |
| *Browning v. Yahoo! Inc.,* No. C04—1463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007). | Aaron Noelle Griffis | Notice of Appeal was entered on 12/17/07.   On 5/5/08, the Court dismissed the appeal by summary order (Dkt. No. 212). |
| *Azizian v. Federated Dept. Stores, Inc.,* 2006 WL 4037549 (N.D. Cal. Sept. 29, 2006). | Patricia Corbin (Coordinated Objectors) | Final Approval granted on 3/30/05 (Dkt. No. 447). |
| *Cooper v. Pac. Life Ins. Co.,* No. 2:03-cv-00131-AAA-JEG, 2007 WL 4604954 (S.D. Ga. Sept. 4, 2007). | Ruth Jones; Cynthia Widener | Final Approval granted on 10/2/07. |

| Case | Client(s) | Notes |
|------|-----------|-------|
| *Spahn v. Edward D. Jones & Co. L.P.*, No. 404CV00086, 2007 WL 5281756 (E.D. Mo. June 11, 2007). | Herbert Wayne Laye; Louise Gilford Laye; David Stokes; Sandra Stokes | Objections filed with respect to Proposed Class Settlement were overruled on 10/25/07 (Dkt. No. 232). |
| *Nieme v. Columbia House Co.*, No. A099606 No. A0996062002, WL 32363789 (Cal. Ct. App. Oct. 22, 2002). | Noelle Griffis (Aaron Noelle Griffis) | Mr. Thompson also represented Objector Noelle Griffis in *Browning v. Yahoo! Inc*., No. C04—1463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007). |

# APPENDIX H

# APPENDIX H

## Objections to Settlements Filed by George W. Cochran

| Case | Client(s) | Notes |
|------|-----------|-------|
| *In re Diet Drugs (Phentermine/ Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, MDL 1203, PTO No. 1295 (E.D. Pa. May 8, 2000). | Kim Heaton; Carl Wolf; Frances Rammage; Lynn Reed; Pam Butler; Phyllis M. Rodriguez; Sherri D. Wieneke; Sherrie Brichetto; Ted Doak | Cochran moved to intervene in the litigation on 3/28/00, almost a month after the deadline for filing objections. Class Counsel opposed George Cochran's late-filed motion and Chief Judge Bechtle denied the motion. Edward W. Cochran, a Cleveland-area attorney with a long history of filing objections to class action settlements, and brother of George W. Cochran, also filed an objection in this matter, representing other objectors. |
| *Schmidt v. AT&T*, No. CV-09- 688788) (Cuyahoga Cnty. (Oh.) Ct. Com. Pleas). | Adam Faulkner | George W. Cochran and Edward W. Cochran both appeared (representing different objectors). |
| *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL 1827, 3:07-md-1827, 2013 WL 1319653 (N.D. Cal. March 29, 2013). | Geri Maxwell; Maria Marshall; Wayne Marshall; Gerri Marshall | On 3/29/13, the Court issued its Order Granting Final Approval Of Combined Class, Parens Patriae, And Governmental Entity Settlements With AUO, LG Display, and Toshiba Defendants, and Final Judgment of Dismissal With Prejudice; Award of Attorney Fees, Expenses, and Incentive Awards. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL 1827, 3:07-md-1827, 2013 WL l319653 (N.D. Cal. March 29, 2013). <br><br> Cochran joined Pentz in the appeal filed on 4/29/13, representing their respective clients. <br><br> * John J. Pentz filed objections on behalf of **Barbara Cochran** and Kevin Luke. * The appeal for *Barbara Cochran et al* was voluntarily dismissed on 6/13/14. <br><br> *Pentz, George W. Cochran, and Edward W. Cochran all joined in filing objection in *In re Hyundai Fuel Economy Litigation* (See *infra*). |

| Case | Client(s) | Notes |
|------|-----------|-------|
| *In re National Football League Players' Concussion Injury Litig.*, No. 12-md-02323 (Amended Final Order and Judgment) (Dkt. No. 6535) (E.D. Pa. May 11, 2015). | Curtis L. Anderson | Objection filed 10/16/14.  Co-Lead Counsel moved to strike Anderson's late objection and it was granted on 11/17/14.  Final approval granted on 5/8/15 and an amended order clarifying its 5/8/15 Order was entered on 5/11/15.  Cochran appealed to the Third Circuit on 5/15/2015. Appeal pending.-<br><br>*Note-Attorneys Edward W. Cochran and John J. Pentz, associates of George W. Cochran, also filed objections in this case.* On 10/21/15, one of Pentz/E. Cochran's clients, Robert Jackson, voluntarily dismissed his appeal). |
| *Pappas v. Naked Juice Company of Glendora Inc, et al*, No. 11-cv-08276 (C.D. Cal. Jan. 1, 2014). | Bradley Henry; Sarah Henry | Objections filed *pro se* 11/11/13.  Final approval granted 1/22/14 and Cochran filed a Notice of Appearance as counsel for the Henrys on 3/4/14.  On 4/21/14, Cochran moved to dismiss the appeal. |
| *Hyundai and Kia Fuel Economy Litig.*, No. 2:13-ml-02424 (Order Granting Final Approval of Settlement) (C.D. Cal. June 11, 2015). | Caitlin Ahearn; Andrew York | Objection was filed by George W. Cochran, Edward W. Cochran, and John Pentz on 3/5/15.<br><br>Notice of appeal filed 6/20/15, and amended notice of appeal filed 9/11/15.  Appeal pending- |
| *Golloher v. Todd Christopher International*, No. 12-cv-06002 (N.D. Cal. April 25, 2014). | Jennifer Lynn Cochran | Objection filed by *pro se* on 2/4/14.  The Court considered all objections and found that "none of them raise issues that would warrant rejection of the settlement."  (Final Order and Judgment Approving Class Settlement) (Dkt. No. 79).  Jennifer Cochran filed her Notice of Appeal on 5/21/14, and on 7/16/14, George W. Cochran filed his Notice of Appearance on behalf of Appellant Jennifer Cochran with the Ninth Circuit Court of Appeal (Notice of Appearance of Counsel) (Dkt. No. 2-1).  Cochran's appeal was voluntarily dismissed on 9/16/14. |

Appendix H – George W. Cochran

# APPENDIX I

# APPENDIX I

## Objections to Settlements Filed by Jan L. Westfall

| Case | Client(s) | Notes |
|---|---|---|
| *Hoffman v. Bank of America*, No. 12-cv-00539 (Final Order Approving Class Action Settlement) (Dkt. No. 67) (S.D. Cal. Nov. 6, 2014). | Susan House | House objected to class action settlement on 8/21/14 and on 9/8/14, House lodged her objection to Plaintiffs' Motion for Final Approval and Attorneys' Fees. <br><br> Here, Darrell Palmer is listed as counsel for objector Susan House.  In his Declaration, Palmer states that he spent a total of 22 hours on this case, whereas his Associate Attorney, Jan Westfall, spent 28 hours (*See* Declaration of Darrell Palmer in Support of Plaintiff Schuyler Hoffman's Reply to Objector Susan House's Opposition to Plaintiff's Motion for Final Approval and Attorney's Fees) (Dkt. No. 63). <br><br> Following receipt of House's objection on 8/21/14, class counsel met with Palmer, after which they agreed to extend the claims period to 10/21/14, pending court approval.  House withdrew her objection on 10/1/14 after securing an extension of the claims period, *a fee award of $35,000 for Palmer and $500 of incentive awards for herself.* (See Declaration Of Abbas Kazerounian in Support of Plaintiff's Reply to Objector Susan House's Opposition to Plaintiff's Motion for Final Approval and Motion for Attorneys' Fees, Dkt. No. 62). |
| *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL 1309692 (N.D. Cal. Mar. 31, 2014). | Dave Carothers; Deliris Palmer | Objections on behalf of Carothers and Palmer were filed on 1/13/14.  Shortly thereafter, Westfall filed a Notice of Withdrawal of Palmer's objection on 1/31/14, and the Court granted Palmer's request for withdrawal on 2/3/14.  All other objections were overruled on 3/31/14 (Order Granting Motion for Attorney's Fees, Costs, and Service Award) (Dkt. No. 64). |

# APPENDIX J

# APPENDIX J

## Objections to Settlements Filed by Joseph Scott St. John and Anna St. John

| Case | Client(s) | Notes |
|---|---|---|
| *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-09544 (Amended Order Granting Preliminary Approval of Class Action Settlements) (Dkt. No. 3906) (N.D. Cal. filed July 9, 2015). | Douglas W. St. John | Joseph Scott St. John appears on behalf of his father, Douglas W. St. John in his present objection to the CRT Settlement (Ex. A, St. John Dep. 5:16-23). |
| *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Marketing and Sales Practices Litig.*, No. 12-md-02320 (Order Granting Motion for Certification of Settlement Class and Preliminary Approval of Proposed Class Settlement) (Dkt. No. 93) (D.N.H. filed June 5, 2015). | Anna St. John filed *pro se* | This objection was filed on 8/10/15, by Joseph Scott St. John's wife[1], Anna St. John, *pro se*.  The Final Approval Hearing was held on 9/28/15, and the Court has yet to issue an order.<br><br>Joseph Scott St. John's wife, Anna Wagner St. John, is an attorney employed with the Center for Class Action Fairness (CCAF).  CCAF is an organization with a history of making baseless objections to good settlements in an effort to further their crusade against class actions.  See, e.g., *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010) (rejecting CCAF brief accused of being "long on ideology and short on law").<br><br>Anna St. John began working with CCAF in March of 2015[2], yet since then, she has filed at least four objections to class action settlements and/or attorneys' fees, representing other CCAF attorneys and even a colleague's spouse as objectors.  See *In re Transpacific Passenger Air Transportation Antitrust Litig.*, *supra*; see also *In re Motor Fuel Temp. Sales Prac. Litig., supra*. |

---

[1] *See* Allen Johnson, *Anna Wagner and Scott St. John*, N.Y. Times, Jan. 22, 2009, http://www.nytimes.com/2006/01/22/fashion/weddings/22vows.html?pagewanted=all&_r=0.
[2] *See* COMPETITIVE ENTER. INST., https://cei.org/content/anna-st-john (last visited Nov. 19, 2015).

| Case | Client(s) | Notes |
|---|---|---|
| *In re Transpacific Passenger Air Transportation Antitrust Litig.*, (Order Granting Motion for Final Approval and Granting Motion for Fees) (Dkt. No. 1009) (N.D. Cal. May 26, 2015). | Amy Yang<br><br>(Represented by Anna St. John and Theodore H. Frank) | Anna St. John represented Amy Yang, the sole objector in a class of hundreds of thousands, and the wife of another attorney at the Center for Class Action Fairness (*See* Plaintiffs' Motion for Final Approval at 1) (Dkt. No. 999). Importantly, Ms. Yang agrees that CCAF is "in the business of objecting to settlements" (*See* Yang Tr. at 22:12-15). |
| *In re Motor Fuel Temp. Sales Prac. Litig.*, No. 07-1840-KHV, 2012 WL 1415508 (D. Kan. April 24, 2012). | Theodore (Ted) H. Frank; Melissa Holyoak; Adam Schulman<br><br>(Represented by Anna St. John) | Here, Anna St. John represented fellow professional objectors and her colleagues from CCAF, Ted Frank and Adam Schulman as well as Ms. Holyoak. |
| *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-2196 (Objection of Melissa Holyoak and John Tabin) (Dkt. No. 1960) (N.D. Cal. filed Nov.12, 2015). | John Tabin; Melissa Holyoak<br><br>(Represented by Anna St. John) | Objection filed on November 11, 2015. |

Appendix J – Joseph Scott St. John and Anna St. John

| Case | Client(s) | Notes |
|------|-----------|-------|
| *In re Transpacific Passenger Air Transportation Antitrust Litig.*, (Order Granting Motion for Final Approval and Granting Motion for Fees) (Dkt. No. 1009) (N.D. Cal. May 26, 2015). | Amy Yang<br><br>(Represented by Anna St. John and Theodore H. Frank) | Anna St. John represented Amy Yang, the sole objector in a class of hundreds of thousands, and the wife of another attorney at the Center for Class Action Fairness (*See* Plaintiffs' Motion for Final Approval at 1) (Dkt. No. 999). Importantly, Ms. Yang agrees that CCAF is "in the business of objecting to settlements" (*See* Yang Tr. at 22:12-15). |
| *In re Motor Fuel Temp. Sales Prac. Litig.*, No. 07-1840-KHV, 2012 WL 1415508 (D. Kan. April 24, 2012). | Theodore (Ted) H. Frank; Melissa Holyoak; Adam Schulman<br><br>(Represented by Anna St. John) | Here, Anna St. John represented fellow professional objectors and her colleagues from CCAF, Ted Frank and Adam Schulman as well as Ms. Holyoak. |
| *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-2196 (Objection of Melissa Holyoak and John Tabin) (Dkt. No. 1960) (N.D. Cal. filed Nov.12, 2015). | John Tabin; Melissa Holyoak<br><br>(Represented by Anna St. John) | Objection filed on November 11, 2015. |

Appendix J – Joseph Scott St. John and Anna St. John

# APPENDIX K

# APPENDIX K

### Objections to Settlements Filed by John Finn

| Case | Attorney(s) | Notes |
|---|---|---|
| *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302 (S.D. Fla. 2010). | Although no counsel is listed in Finn's objection, it was filed by Serial Objector, Steve A. Miller | On 11/22/11, the Court entered its Order of Final Approval of Settlement, Authorizing Service Awards, Granting Application for Attorneys' Fees, and Overruling Objections to Settlement (Dkt. No. 2150).  On the same date, the Court entered its Final Judgment dismissing the Action with Prejudice (Dkt. No. 2151).<br><br>Finn filed his notice of appeal in December 2011 and on 2/14/12, the Court granted Plaintiffs' motion to Require Posting of an Appeal Bond by Finn and other objectors. (Dkt. No. 2473) (S.D. Fl. filed Feb. 14, 2014).  Here, the Court ordered Objector/Appellants to post a bond in the amount of $616, 338, representing two years of compounded interest on the $280 million Settlement, minus attorneys' fees cost bond - in addition to the $5,000 cost bond - to be posted within 15 days of the Order. (Dkt. No. 2473, at 6).  Finn subsequently moved to voluntarily dismiss his appeal. (Dkt. No. 2797) (filed June 28, 2012). |
| *Credit/Debit Card Tying Cases* JCCP No. 4335(San Francisco Super. Ct. 2010). | Steve A. Miller | Objection filed on 5/20/10.  The Court granted Final Approval of Settlement and Award of Attorneys' Fees on 8/23/10. |
| *Demmick v. Cellco Partnership d/b/a Verizon Wireless*, No. 06-2163 (D.N.J. 2015). | Pro se<br><br>Appeal – Steve A. Miller | Finn's objection was entered with the Court on 4/2/15 and overruled in the Court's 5/1/15 Opinion, granting final approval of class settlement/final judgment, granting Plaintiffs' motion for incentive awards to class plaintiffs, approving plan of allocation and distribution of settlement funds, and granting class counsel's motion for attorneys' fees (Opinion) (Dkt. No. 181) (D.N.J. filed May 1, 2015).  The Court considered every relevant objection in turn and found each without merit (Dkt. No. 181, at 16 of 46).<br><br>Steve Miller is representing Finn on appeal (Ex. A, Finn Dep. 47:22-48:16). |

# APPENDIX L

# APPENDIX L

## Objections to Settlements Filed by Laura Townsend Fortman

| Case | Attorney(s) | Notes |
|------|-------------|-------|
| *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015). | Jonathan E. Fortman<br>John C. Kress<br>Steve A. Miller | Kress, Fortman, and Miller filed an objection on behalf of Laura Fortman on 10/6/14.  The Final Order of Dismissal and Final Judgment was entered on 3/17/15. The Court found that none of the objections were well founded and overruled each.  Specifically, in its Memorandum Opinion and Order for final approval of settlement and attorneys' fees, the Court takes issue with Mrs. Fortman's argument that the release contemplated by the Settlement was overbroad because it prohibited class members from making any claim based on the unlawful collection of debts owed by class members. (Dkt. No. 72, at 9-11).<br><br>"Fortman's assertion is incorrect and falls apart upon a more exacting review of the full release, rather than the abridged version Fortman quoted in her objection. As Class Counsel noted in their response to Fortman's objection, the release is expressly limited to claims "that arise out of" HSBC's "use of an 'automatic telephone dialing system' or an 'artificial or prerecorded voice,'" to make the calls at issue in this case. (Dkt. No. 82 at 31 (citing Settlement Agreement § III.R.).) Accordingly, the Settlement Agreement does not, as Fortman argues, release claims against HSBC (or Capital One) for unlawful collection efforts arising from different or additional factual circumstances." (Memorandum Opinion and Order) (Dkt. No. 117) (filed Feb. 27, 2015). |
| *Kardonick et al. v. JP Morgan Chase & Co & Chase Bank USA, N.A.*, No. 10-cv-23235 (Final Judgment and Order of Dismissal) (Dkt. No. 384) (S.D. Fl. Sep. 16, 2011). | Matt Weinstein<br>Paul M. Kade | Objection filed 8/19/11.  The Court overruled Fortman's objections and issued its Final Judgment and Order of Dismissal on 9/16/11 (Dkt. No. 384).  Notice of appeal was filed on 10/14/11.  Fortman subsequently moved to voluntarily dismiss her appeal pursuant to a settlement agreement reached between the parties. (Order of Dismissal by USCA Pursuant to Appellant's Motion to Voluntarily Dismiss their Respective Appeals) (Dkt. No. 450) (filed May 10, 2012). |

# APPENDIX M

# APPENDIX M

## Objections to Settlements Filed by Sean Hull

| Case | Attorney(s) | Notes |
|---|---|---|
| *In re: Groupon, Inc., Marketing and Sales Practices Litigation,* No. 3:11- md-02238 (S.D. Cal. June 2, 2011). | Objection filed *pro se* | Attorney Timothy R. Hanigan appeared on behalf of Hull on appeal. |
| *In re Smokeless Tobacco Cases I, II*, JCCP Nos. 4250, 4258, 4259, 4262 (San Francisco Super. Ct. 2008). | Objection filed *pro se*<br><br>Appeal - Timothy R. Hanigan;<br>Arthur Carvalho, Jr.;<br>Christopher Bandas | Objection filed 2/4/08 *pro se*.  Final Approval was granted and fees awarded on 3/12/08. Hull appealed on 4/11/08 and the appeal was voluntarily dismissed on 2/26/09. |
| *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129 (N.D. Cal. 2008). | Objection filed *pro se*<br><br>Appeal – Timothy R. Hanigan | *Pro se* objection filed on 5/5/14.  The Court overruled all objections and granted Final Approval of Settlement and Attorneys' Fees on 6/27/14.<br><br>Hanigan filed notice of appearance on behalf of Appellant Hull on 7/7/14. |

| Case | Attorney(s) | Notes |
|------|-------------|-------|
| *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531 (N.D. Cal. April 16, 2012) (Amended Order Granting Indirect Purchaser Plaintiffs' Motion to Compel Discovery from Objector Hull) (Dkt. No. 1155). | | Sean Hull filed his original objection as a *pro se* objector from Denver, Colorado where he lives and works, although Indirect Purchaser Plaintiffs submitted evidence that his objection letter was postmarked in Corpus Christi, Texas and mailed by attorney Christopher Bandas.  *See* Decl. of Mario N. Alioto (Dkt. No. 1062-1, Ex. 1) (filed Mar. 1, 2012).  In addition to finding that his objection was without merit, Judge Samuel Conti overruled Mr. Hall's objection "on the grounds that the objector has failed to submit proof or otherwise establish that he is a member of the Class, and therefore lacks standing to challenge the Settlement." *See* Order Granting Final Approval of Settlement with Chunghwa Picture Tubes, Ltd. (Dkt. No. 1105) (filed Mar. 22, 2012).<br><br>Judge Conti granted the Indirect Purchaser Plaintiffs' motion to compel discovery and ordered objector Hull to appear for a deposition and produce requested documents by May 11, 2012.  *See* Order Granting Indirect Purchaser Plaintiffs' Motion to Compel Discovery From Objector (Dkt. No. 1155) (filed Apr. 16, 2012). Judge Conti concluded that because the requests for documents and information sought by the Indirect Purchaser Plaintiffs focused "solely on the objector's standing, the bases for his current objections, his role in objecting to this and other class settlements, and his relationships with the counsel that are believed to be behind the scenes manipulating him," the requested information and documents are relevant, needed and reasonably narrowly tailored. *Id*.  In response to Objector Hull's refusal to appear for a deposition or produce documents by the Court's May 11, 2012 deadline and failure to provide any valid reason or justification for not doing so, Indirect Purchaser Plaintiffs filed a motion requesting the Court to order Hull to show cause why he should not be found in civil contempt and sanctioned in the amount of $5,000 in attorney's fees and $1,166.95 in costs for his failure to comply with the Court's direct order. (Dkt. No. 1199) (filed May 18, 2012). |

| Case | Attorney(s) | Notes |
|---|---|---|
| **-continued-**<br>*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531 (N.D. Cal. April 16, 2012) (Amended Order Granting Indirect Purchaser Plaintiffs' Motion to Compel Discovery from Objector Hull) (Dkt. No. 1155). | | On May 25, 2012, Special Master Legge granted the Indirect Purchaser Plaintiffs' motion and ordered Objector Hull to show cause why he should not be held in contempt for violating the Court's order compelling his deposition and response to discovery documents (Dkt. No. 1210) (filed May 25, 2012).<br><br>Joseph Darrell Palmer entered his appearance as counsel on behalf of Objector Hull on June 1, 2012  (Dkt. No. 1222) (filed June 1, 2012), and filed a Response to Plaintiffs motion for contempt arguing that plaintiffs' motion should be denied, the order for a deposition should be vacated as without jurisdiction and moot, and sanctions should be denied in their entirety. (Dkt. No. 1223) (filed June 1, 2012).<br><br>On June 20, 2012, Special Master Legge filed his Proposed Order Finding Objector Sean Hull in Civil Contempt and Awarding Sanctions to Indirect Purchaser Plaintiffs. (Dkt. No. 1234) (filed June 20, 2012). Before Judge Conti either adopted or rejected Special Master Legge's Proposed Order, Hull voluntarily dismissed his appeal pursuant to FRAP 42(b) on August 9, 2012. |

# APPENDIX N

## APPENDIX N

### Objections to Settlements Filed by Gordon B. Morgan

| Case | Attorney(s) | Notes |
|---|---|---|
| *Adams v. AllianceOne Receivables Management, Inc.*, No. 3:08-cv-00248 (S.D. Cal. Feb. 8, 2008). | Objection *pro se*<br><br>Appeal – Christopher Bandas | Morgan filed his objection and appeal *pro se*, but on 12/04/12, Attorney Christopher Andreas Bandas filed a notice of appearance on behalf of Appellant Gordon Morgan.  This appeal was voluntarily dismissed on 2/4/13.<br><br>Class Plaintiffs moved for a motion to strike the objection and appeal, purportedly signed by Gordon Morgan. (Dkt. No. 167-1), on the basis that Morgan did not sign these documents despite the fact that he represented to the Court that he did and these documents were filed *pro se*.  Morgan was deposed in another matter on December 17, 2012, during which Morgan was asked questions regarding the *AllianceOne* settlement and objection.  See *Bobowski v. Clearwire Corporation*, C-10-1586 JLR (W.D. Wash.) (See *Dennings v. Clearwire*, *supra*)  During the deposition, Morgan was unable to answer a question regarding what the *AllianceOne* objection was about and did not even believe he filed an objection in the matter.  Further, Morgan admitted he did not draft, nor sign his objection, but instead, gave Attorney Christopher Bandas permission to sign for him. (Class Plaintiffs' Points and Authorities in Support of Motion to Strike Objection and Notice of Appeal by Gordon B. Morgan) (Dkt. No. 167-1) (S.D. Cal. filed Feb. 4, 2013). |

| Case | Attorney(s) | Notes |
|------|-------------|-------|
| *Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270, 1271 (W.D. Wash. March 11, 2013). | Christopher Bandas | Finding that Morgan's objections to the settlement were "without merit" and requiring him to post an appeal bond of $41,150 based on "vexatious intent in filing [his] notice of appeal"); *Dennings v. Clearwire Corp.*, Case No. C10-1859 JLR, 2013 WL 3870799 at *2-3 (W.D. Wash. July 13, 2013) ("Objectors directly disobeyed a court order. They were ordered to either post a bond within five days or else withdraw their appeal. They did neither . . . . Objectors' decision to ignore the court's appeal bond order is only the most recent episode in Objectors' ongoing procedural machinations before this court and the Ninth Circuit. Objectors' strategy this time around is consistent with their behavior in these proceedings: they appear to believe that they do not need to follow court orders until they are threatened with sanctions for failing to do so . . . . This is not acceptable conduct for attorneys appearing before this court."). On July 19, 2013, the District Court issued an order for Objectors' counsel to appear on August 1 and show cause why they and their clients should not be sanctioned for failing to comply with a court order to post the $41,150 appeal bond. (Doc. #154)(filed July 19, 2013). On July 23, 2013, Objectors posted the appeal bond in full with the requested Court amount of $41,150 and Mr. Bandas requested that the Court vacate the order to appear and show cause arguing that sanctions are now unnecessary. (Doc. # 155) (filed July 25, 2013). On July 26, 2013, Judge Robart denied Objectors' motion to vacate the show cause order finding that the "fact that Objectors posted bond after being ordered to appear and face sanctions does not exonerate Objectors any more than it would exonerate a criminal defendant to return stolen property after being charged with theft. The punishable conduct has already occurred and cannot be taken back. Accordingly Objectors' counsel have been ordered to appear in court, explain their actions, and face sanctions should the court decide to impose them." (Doc. # 156) (filed July 26, 2013). Following the show cause hearing held on Aug. 20, 2013, the court heard from counsel regarding sanctions and concluded that the "appropriate sanction is to revoke Mr. Bandas' authorization to practice in the Western District of Washington." (Doc. #166) (Minute Entry for proceedings held on Aug. 20, 2013). |

| Case | Attorney(s) | Notes |
|------|-------------|-------|
| *Malta v. The Federal Home Loan Mortgage Corp.*, No. 10-cv-01290, 2013 WL5467425 (Final Judgment and Order of Dismissal with Prejudice) (Dkt. No. 91) (S.D. Cal. filed June 21, 2013). | Timothy R. Hanigan | All objections were overruled on 6/21/13, and Morgan (through Attorney Hanigan) appealed Final Judgment on 7/18/13 (Notice of Appeal) (Dkt. No. 104) (S.D. Cal. filed July 18. 2013).<br><br>On 7/23/13, Plaintiffs moved the Court to order Morgan to post an appeal bond but before the Court could rule on Plaintiffs' motion, Morgan voluntarily dismissed his appeal on 9/10/13 (Order of USCA as to Notice of Appeal to the Ninth Circuit filed by Gordon Morgan) (Dkt. No. 124). |
| *Nwabueze v. AT&T Inc.*, No. C 09-01529 SI, 2013 U.S. Dist. LEXIS 169270 (N.D. Cal. Nov. 27, 2013). | Christopher Bandas | Morgan filed his objection to the proposed class settlement on 9/3/13 (Dkt. No. 214).  In its Final Approval Order, dated 11/27/13, the Court states that "[h]is objections are largely conclusory and fail to provide legal support or evidence. Mr. Gordon has acted as an objector in at least two other cases within this Circuit… The Court finds that Mr. Morgan's objection is without merit and his objection is OVERRULED." 2013 U.S. Dist. LEXIS 169270, *29 (N.D. Cal. Nov. 27, 2013). |

# EXHIBIT O

# APPENDIX O

## Objector Deposition Testimony Highlights

| OBJECTOR | COUNSEL | TESTIMONY |
|---|---|---|
| 1.  Paul Palmer | Darrell Palmer | • Objector is counsel's father (Additional Declaration of Robert J. Gralewski, Jr. in Support of Indirect Purchaser Plaintiffs' Motion for Final Approval of Class Action Settlements with Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson, and TDA Defendants ("Gralewski Settl. Decl.") at 3)<br>• Once IPPs sought to serve deposition subpoena, Palmer offered to withdraw his father's objection for a $5,000 payment (*Id.*)<br>• After IPPs rejected that offer, Palmer filed a Notice of Withdrawal of his father's objection to avoid the deposition (*Id.* at 3-4; Dkt. No. 4130) |
| 2.  Gordon Morgan | Christopher Bandas<br>Tim Hanigan | • Objector admitted he objected because he seeks "a check" from his lawyer, Bandas, after they "settle out" the objection, just as they have done in numerous prior cases (37:9-38:10; 39:20-40:12)[1]<br>• Objector also admitted he planned to settle the objection in exchange for monetary payment—even "knowing that no other class member would benefit" (100:10-101:5; 101:16-21)<br>• Bandas limits his objectors' recovery "to a $5,000 check," and does not permit the objector to know or approve of the amount of "attorney's fees" taken by Bandas in "settling" the objection (41:8-42:15; 46:12-49:7)<br>• Objector testified that Hanigan does not represent him, was not known or disclosed to him, and does not know how Hanigan is being paid (21:22-25; 23:6-24:2; 49:22-51:16; 52:25-54:6)<br>• After Objector made these and other damning admissions, Hanigan filed a "Notice of Withdrawal" of Objector's objection however |

---

[1] All citations herein (except to the Gralewski Settl. Decl. and docket entries) are to the deposition transcripts (and/or deposition exhibits) taken of each objector and are attached to this summary chart as one compendium called Exhibit A.

| OBJECTOR | COUNSEL | TESTIMONY |
|---|---|---|
| -continued-<br>**Gordon Morgan** | | Bandas and Hanigan continue to pursue the same objection on behalf of Objector Sean Hull (Dkt. No. 4165)<br>• Objector is a former lawyer who voluntarily surrendered his law license after being accused of professional misconduct (84:24-85:12) |
| **3. Sean Hull** | Christopher Bandas<br>Tim Hanigan | • Objector is a serial objector who admittedly only objects through Bandas (37:20-38:5; 43:1-12)<br>• Objector admitted that his objections in other cases were "settled" by Bandas, that no changes were made to the class action settlements in such cases, and that Bandas "gifted" him a watch in connection with resolving his objection in the *Smokeless Tobacco* case (20:14-22; 21:23-23:6; 25:10-14; 38:12-20)<br>• Objector admitted he is comfortable with Bandas settling or dismissing his objections in exchange for nothing but monetary payment to the lawyers and has no problem with the plans of Objector Morgan and Bandas to settle objections in this case in exchange for money (57:7-59:7; 104:5-105:14; 106:2-15)<br>• Objector relies on Bandas to settle his objections, is never informed of the terms of the resolution, does not know how much his lawyers take in "fees," but is not bothered if it is 100% of any recovery (48:15-49:16; 64:1-66:22; 67:17-68:18)<br>• Objector does not know the specific terms of the class settlement he objects to in this case (defers to Bandas), but admits that multiple arguments in the written objection filed on his behalf do not even "apply" to him (26:18-24; 27:9-24; 28:20-29:22; 81:22-85:18) |

| OBJECTOR | COUNSEL | TESTIMONY |
|---|---|---|
| 4. **Laura Townsend Fortman** | Jonathan Fortman Steve Miller John Kress | • Objector is counsel's wife (5:14-18)<br>• Objector's husband has filed objections for her in the past to other settlements (13:25-14:24);<br>• Objector did not see her CRT objection before her husband filed it on her behalf (15:4-15)<br>• Objector did not know Steve Miller and John Kress represented her (7:4-9; 17:11-18) and Objector testified that she has had dinner with them and her husband in the past (15:24-17:7) |
| 5. **John Finn** | Jonathan Fortman Steve Miller John Kress | • Objector testified that he has objected to three class action settlements (20:13-18 and Depo. Exs. 2 and 3<br>• Objector's attorney (Steve Miller) is Objector's wife's cousin (12:19-13:1)<br>• Miller represented Finn in an appeal from his objection in a class action against Verizon (48:14-19; 50:19-51:24)<br>• Objector admitted that he would consider dismissing his objection or appeal for a monetary payment (46:14-18)<br>• Objector has no retainer agreement (21:25-22:5) |
| 6. **Douglas St. John** | Joseph Scott St. John Andrea Valdez | • Objector is Joseph Scott St. John's father (5:16-23)<br>• Objector admitted that other than the size of the fee, he has no objection to the settlement (101:9-14)<br>• Objector believes the IPPs' attorneys should not receive more than 10% of the fund (47:1-9; 64:12-65:6)<br>• Objector does not want his objection to be a vehicle to undermine the settlement or the ability of consumers to recover or make claims (101:15-102:9) |
| 7. **Dan L. Williams & Co.** | Paul Justi | • Objector first heard about the CRT lawsuit in early October from an attorney who recommended that objector contact Justi (but Justi would not allow objector to identify the referring attorney during the deposition) (18:7-22:2)<br>• Objector did not know Justi at the time of his retention (28:18-24) |

Appendix O – Objection Deposition Testimony Highlights

| OBJECTOR | COUNSEL | TESTIMONY |
|---|---|---|
| **8. Rockhurst University** | Theresa Moore | • The University of Santa Clara contacted Rockhurst University about the settlement and suggested that Rockhurst contact Ms. Moore (which was after the audit of Ms. Moore's time) (16:12-19:12; Declaration of Mario N. Alioto in Support of Indirect Purchaser Plaintiffs' Motion for Final Approval of Class Action Settlements with Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson, and TDA Defendants ("Alioto Settl. Decl. II")) <br>• Ms. Moore would not allow the email communication between Santa Clara (located in California) and Rockhurst University (located in Missouri) to be produced on privilege grounds (34:16-37:19) <br>• Ms. Moore prepared Rockhurst's Declaration (29:6-23) <br>• Rockhurst's representative testified that its only objection is that Missouri is "excluded" from the settlement (25:8-15) |
| **9. Garry Talewsky** | Theresa Moore | • Objector had no knowledge of the CRT case before September 2015 (and thus learned about it after the audit of Ms. Moore's time) (24:2-4; Alioto Settl. Decl. II) <br>• Objector does not object to fees or the overall recovery (38:21-39:7) <br>• Objector had a partner in his travel agency (on whose behalf he filed his objection) but the partner is not listed as an objector (12:5-25) <br>• Objector served as a plaintiff in an airlines merger case prosecuted by Moore's firm (4:11-5:22) |

Appendix O – Objection Deposition Testimony Highlights

| OBJECTOR | COUNSEL | TESTIMONY |
|---|---|---|
| **10. Harry Garavanian** | Theresa Moore | • Objector said he became involved in the CRT case in October, or possibly the end of September 2015 (which was after the audit of Ms. Moore's time) (17:16-18:11; Alioto Settl. Decl. II)<br>• Objector testified that the case was about faulty CRT monitors and stated he wanted his money back from monitors that did not work properly and the fact that companies did not stand behind their products (25:11-30:15)<br>• Objector is serving as a plaintiff in an airlines merger action being litigated by Moore's firm (31:9-32:25) and served as a plaintiff in a previous airlines merger case prosecuted by Moore's firm (*Id.*, 7:6-8:1) |
| **11. Donnie Clifton** | Jan Westfall | • Objector's main concern is limited to the amount of fees (43:1-44:3)<br>• Objector is unaware that Westfall previously represented Darrell Palmer's sister-in-law in her objection to a class action settlement and then quickly dismissed that objection (54:2-16) |
| **12. Mina Ashkannejhad** | Robert Bonsignore | • Objector never personally purchased a CRT product (so she lacks standing) (19:7-18)<br>• Objector is not the executor of her late husband's estate (contrary to what her objection states) (30:11-12)<br>• Objector testified that her husband purchased a CRT television and monitor but she has no idea what brand they were (17:22-25; 18:1-6; 18:12-15) or the date of purchase (17:20-21)<br>• Upon being served with the subpoena directed to her in this matter (after an objection was filed on her behalf), objector called the attorney who signed the subpoena instead of Bonsignore (Gralewski Settl. Decl. at 2); when asked if Bonsignore represented her, objector replied that she thought Bonsignore represented her late husband (*Id.*); and on that phone call – which was after her objection was filed but before her deposition -she never indicated she was represented by Bonsignore (*Id.*)<br>• Objector could not testify that she reviewed the objection before it was filed (21:6-20) |

Appendix O – Objection Deposition Testimony Highlights

| OBJECTOR | COUNSEL | TESTIMONY |
|---|---|---|
| **13. Anthony Gianasca** | Robert Bonsignore | • Objector and Bonsignore have been friends for 25 years (26:11-17) <br> • Bonsignore has also represented objector in an antitrust class action against Honeywell (27:14-16) <br> • Upon receiving the subpoena directed to him in this matter (after an objection was filed on his behalf), objector called Zelle Hofmann (where the deposition was noticed to take place) on October 19, 2015 and told the Office Administrator that he knew nothing about the matter and would appreciate a call back.  Objector then called again and asked the Office Administrator if she knew what the case was about. (Gralewski Settl. Decl. at 2) |
| **14. Rosemary Ciccone** | Robert Bonsignore | • IPPs were unable to conduct a deposition of Objector because Bonsignore would not accept service of subpoena or provide address (*Id*. at 3) |
| **15. Jeff Craig** | Robert Bonsignore | • IPPs were unable to conduct a deposition of Objector because Bonsignore would not accept service of subpoena or provide address (*Id*.) |
| **16. Jeff Speaect** | Robert Bonsignore | • IPPs chose not to conduct the deposition of Objector, an appointed class representative, who did not have any issue with the settlement until Bonsignore learned the results of an audit of his time (Alioto Settl. Decl. II) |
| **17. Gloria Comeaux** | Robert Bonsignore | • IPPs chose not to conduct the deposition of Objector, an appointed class representative, who did not have any issue with the settlement until Bonsignore learned the results of an audit of his time (*Id*.) |

Appendix O – Objection Deposition Testimony Highlights

| OBJECTOR | COUNSEL | TESTIMONY |
|---|---|---|
| **18. Josie Saik**[2] | George Cochran | • Papers filed "pro se" but Objector is actually represented by Cochran, a serial objector<br>• Objector is counsel's sister's "best friend"<br>• Objector testified that she was motivated to object, in part, to make more money than an individual class member will receive |
| **19. Elizabeth Kimberly Johnson**[3] | Charles M. Thompson | • Objector provided an improper address in her objection (filed in pro per) that seriously delayed the service of the subpoena directed to Objector<br>• Objector's deposition will not be taken until November 19, 2015 because Objector claims, through Thompson, to be unavailable until then<br>• Serial objector Thompson is engaged to be married to the Objector, assisted her with her papers, accepted service of the subpoena on her behalf, and, on the morning of Ms. Johnson's deposition, admitted that he represents her |

---

[2] The final transcript of Ms. Saik's deposition is not available at the present time.  IPPs will supplement this chart with cites to Ms. Saik's transcript when it becomes available.
[3] The final transcript of Ms. Johnson's deposition is not available at the present time.  IPPs will supplement this chart with cites to Ms. Johnson's transcript when it becomes available.

Appendix O – Objection Deposition Testimony Highlights

# EXHIBIT A

```
                                                    Page 1
 1                 UNITED STATES DISTRICT COURT
                           FOR THE
 2              NORTHERN DISTRICT OF CALIFORNIA
 3
    IN RE: CATHODE RAY TUBE    *  CIVIL ACTION NO:
 4  (CRT) ANTITRUST            *  07-CV-05944-SC;
    LITIGATION                 *  MDL NO. 1917
 5                             *
                               *
 6
    ****************************************************
 7
                    ORAL DEPOSITION OF
 8                    GORDON MORGAN
                    OCTOBER 30, 2015
 9
    ****************************************************
10
            ORAL DEPOSITION of GORDON MORGAN, produced as a
11  witness at the instance of the Defendant, and duly
    sworn, was taken in the above-styled and numbered cause
12  on the 30th day of October, 2015, between the hours of
    12:56 p.m. and 3:21 p.m., before JULIE WINSTON, CSR, in
13  and for the State of Texas, reported by machine
    shorthand, at Embassy Suites by Hilton, 4337 S. Padre
14  Island Drive, Corpus Christi, Texas, in accordance with
    the Texas Rules of Federal Procedure and the provisions
15  stated on the record or attached hereto.
16
17
18
19
20
21
22
23
24
25
```

```
                                               Page 21
 1       A.    Yes.

 2       Q.    And do you know when that was?

 3       A.    I don't remember the date.

 4       Q.    Do you remember the date that you first talked

 5   to Chris?  Mr. Bandas?

 6       A.    No, I don't remember.  I don't remember the

 7   date.

 8       Q.    But it's your testimony that that -- that you

 9   talked to him after receiving notice of the settlement?

10       A.    Yes.

11       Q.    Okay.  And you called him?

12       A.    Yes.

13       Q.    Okay.  Did anyone contact you with respect to

14   the settlement in this case?

15       A.    No, not that I'm aware of.

16       Q.    Okay.  So you haven't -- other than your

17   lawyers, you haven't discussed -- and when I say your

18   lawyers, I mean Mr. Howard and Mr. Bandas at this point.

19   You didn't discuss objecting to the settlement with

20   anybody else?

21       A.    No.

22       Q.    And are you represented by anyone else other

23   than Mr. Bandas and Mr. Howard in connection with this

24   settlement?

25       A.    No.
```

                                                      Page 23

1   representing you at this deposition here today?

2                   MR. HOWARD:  I'm going to instruct you not

3   to answer.  The only way you can know that is by

4   Mr. Bandas telling him.

5                   MR. BUETZOW:  Okay.

6        Q.   (BY MR. BUETZOW) Do you know anyone by the name

7   of Tim Hanigan?

8        A.   I don't.

9        Q.   You don't.  Would it surprise you to learn that

10  Mr. Hanigan purports to represent you in this case?

11       A.   Unless he's a member of some sort of team with

12  Chris Bandas and Mr. Howard, I don't know him.

13       Q.   You don't know him?

14       A.   No.

15       Q.   Has he ever represented you before?

16       A.   No.

17       Q.   So it would surprise you to learn that

18  Mr. Hanigan is the one that actually filed your

19  objection and signed it as the lawyer representing you

20  in this case?

21       A.   It wouldn't surprise me if Chris authorized him

22  to do that.

23       Q.   But you've never met Mr. Hanigan before?

24       A.   No.

25       Q.   And it's your testimony Mr. Hanigan, to your

Page 24

1   knowledge, has never represented you before in any case?

2       A.   Not to my knowledge.

3       Q.   Okay.  And can you list the cases that

4   Mr. Bandas has represented you before?

5       A.   I can't list them, but I think that it was

6   provided to you.

7       Q.   Okay.

8       A.   The list.

9       Q.   We'll get to that document.  But just off the

10  top of your head, could you estimate how many cases

11  Mr. Bandas has represented you in connection with class

12  action settlements?

13      A.   I think four maybe.

14      Q.   Four?  Okay.  And you couldn't name them off

15  the top of your head?

16      A.   No.

17      Q.   Okay.  We can go over that document.

18           Have you ever objected to a class action

19  settlement and been represented by anyone other than

20  Mr. Bandas?

21      A.   No.

22      Q.   Do you know Sean Hull?

23      A.   I don't.

24      Q.   You've never met him?

25      A.   No.

1    Q.   You would like -- well, put it this way.  You

2    would like a new settlement to be made that comports

3    with what you believe is a fair settlement; is that

4    correct?

5    A.   Yes.

6    Q.   Okay.  And has that ever happened in any case

7    in which you have filed an objection?

8    A.   I have no idea.

9    Q.   No idea.  Do you hope to receive any --

10   anything as a result of your objection?

11   A.   I hope to receive something.

12   Q.   And who would that be from?

13   A.   Eventually the settlement or whatever check I

14   get comes from Chris Bandas.  But I don't -- I imagine

15   it comes through the defendants pulling their money to

16   settle out the class members.

17   Q.   And how many instances have you received checks

18   from Chris Bandas?

19   A.   I want to say four.

20   Q.   And what is your understanding of what that

21   money is for?

22   A.   My -- my personal settlement of the objection

23   on that class case.

24   Q.   So it's your settlement of the objection?

25   A.   Of my objection, yes.

```
                                           Page 38
 1      Q.   And when that happens, you aren't aware of any
 2   changes being made to the settlement, correct?
 3      A.   No, I'm not.
 4      Q.   And you say that the checks that you receive
 5   are directly from Mr. Bandas?
 6      A.   Correct.
 7      Q.   And this is what you hope to achieve in this
 8   case; is that correct?  To receive a check from
 9   Mr. Bandas?
10      A.   To -- right.  To settle out my objection.
11      Q.   Okay.  And it doesn't concern you one way or
12   the other whether a change is made to the settlement or
13   a new settlement is made as a result of your objection
14   for the settlement thereof?
15      A.   I don't -- I don't understand exactly what it
16   is that you're saying, but I don't know that it's
17   something that I need to be concerned with.
18      Q.   Okay.  Let me put it this way.  If you receive
19   a check from Mr. Bandas and no changes are made to the
20   class action settlement, that is perfectly okay with
21   you?
22      A.   Once again, I don't understand what you're --
23   I've never been involved in that side of these class
24   cases.  So when you say change to the settlement, I
25   don't understand if that's a positive change; that
```

 1   there's something positive going on; that they're

 2   restructuring the settlement to pay people that they

 3   weren't going to pay.

 4          Or is that a negative thing that the settlement

 5   itself is no longer in existence or the class is -- I

 6   don't know what it is that you're saying.

 7      Q.   Well, whether it's a positive or a negative, I

 8   don't know that that's really relevant.  But I guess

 9   what I'm trying to get at, Mr. Morgan, is that you --

10   you've received monetary payment from Mr. Bandas in each

11   case in which you've objected; is that correct?

12      A.   That's not correct.

13      Q.   That is not correct?

14      A.   No, not -- not each case.

15      Q.   Okay.  And --

16      A.   This one right here was dismissed.

17      Q.   Okay.  And you did not receive a payment in

18   that case?

19      A.   No.

20      Q.   But in your other cases in which you've

21   objected, you've received a monetary settlement?

22      A.   Yes.

23      Q.   In the form of a check from Mr. Bandas?

24      A.   That's correct.

25      Q.   And you have no knowledge of whether or not a

```
                                          Page 40
 1   change was made to the settlement?
 2        A.   I do -- I don't.
 3        Q.   And do you care?
 4        A.   It's not a matter of caring.  I mean, I don't
 5   know that there's something to care about is what I'm
 6   trying to say.
 7        Q.   Okay.
 8        A.   I don't know what it means.
 9        Q.   But it's your hope in this case that you
10   receive a check from Mr. Bandas as a result of your
11   objection?
12        A.   Yes.
13        Q.   Did you authorize your lawyers to file the
14   written objection on your behalf in this case?
15        A.   Yes.
16        Q.   And do you recall when that was?
17        A.   I would think it's in the last three weeks it
18   seems.
19        Q.   And have you reviewed the objection that was
20   filed in your name?
21        A.   Yes.
22        Q.   When was the first time you reviewed that?
23        A.   Probably about just before it was filed.
24        Q.   Do you remember the date?
25        A.   No.
```

1        Q.    And as we sit here today, do you still object

2    to the settlement in this case?

3        A.    Yes.

4        Q.    And I believe the -- strike that.

5              So could we just talk about again in your own

6    words what your objection is to the settlement in this

7    case?

8        A.    I don't believe that it's fair that this case

9    is basically settling out.  I was a consumer, I was a

10    part of this class, but yet I received nothing from the

11    settlement.

12        Q.    Okay.  Anything else?

13        A.    No.

14              MR. BUETZOW:  This would be a good time to

15    take a break.  Can we go off the record?

16                    (Short break taken)

17              MR. BUETZOW:  Back on the record.

18        Q.    (BY MR. BUETZOW) Mr. Morgan, if your objection

19    is dismissed in this case in exchange for monetary

20    settlement, you would receive a portion of that

21    settlement, correct?

22        A.    Yeah.  I think so, if I understand your

23    question.

24        Q.    What about my question don't you understand?

25        A.    If -- if my objection is dismissed based on a

```
 1    monetary settlement, I would get a portion of the

 2    settlement.

 3             Are you talking about if Mr. Bandas resolved

 4    the objection, and he would pay me a portion of the

 5    resolution?  Or...

 6        Q.   Yes.  I'm asking you if that's how it works?

 7        A.   As far as I understand.

 8        Q.   Okay.  And do you know of the overall sum that

 9    is paid, what portion do you expect to receive?

10        A.   Oh, I don't -- I don't have any idea.

11        Q.   You don't know?  So if you -- if your objection

12    is settled or dismissed in this case in exchange for a

13    payment, you don't know what portion you would expect to

14    receive?

15        A.   No, I don't.

16        Q.   You were previously referred to a retainer

17    agreement that was produced.  This one is between you

18    and Mr. Bandas.

19             MR. BUETZOW:  I'd like to mark it as the

20    next exhibit, Exhibit 3.

21                  (Exhibit No. 3 marked)

22        Q.   Mr. Morgan, have you seen this document before?

23        A.   Yes, I have.

24        Q.   And is that your signature on the fourth page?

25        A.   Yes.
```

Page 46

1    know when you're finished.

2        A.    Yes.

3        Q.    Okay.  So that section provides that no

4    settlement or resolution will be made of your objection

5    or any appeal therefrom without your prior approval.

6    That's correct?

7        A.    That's what it -- yes, that's what it reads.

8        Q.    So does your approval right include the right

9    to approve the amount of attorneys' fees that Mr. Bandas

10   would take from a settlement of your objection?

11       A.    I don't know that.

12       Q.    Under your understanding of the agreement, do

13   you believe you have that right to approve Mr. Bandas'

14   attorney's fees portion from any settlement that is

15   received?

16       A.    No.

17       Q.    No what?

18       A.    I don't believe that I have the right to

19   determine the amount of attorney's fees he is going to

20   receive.

21       Q.    Okay.  So what is your understanding of your

22   right to approve the settlement in this section?

23       A.    I know that I'm contacted when the case is

24   going to be -- when the objection is going to be

25   settled, and I always say that's fine.  And then, you

```
                                                      Page 47
 1    know, the case is settled.  Mr. Bandas tells me, you
 2    know --
 3               MR. HOWARD:  Let's not talk about what
 4    you've talked about with Mr. Bandas.
 5        A.   Anyway, I'm -- I'm informed that I have a
 6    settlement check.  I'm assuming everything is taken care
 7    of on the class action side, and I receive a check.
 8        Q.   And you're never informed how much Mr. Bandas
 9    takes --
10        A.   No.
11        Q.   -- in connection with your settlement?
12             So under this agreement in total, how do you
13    understand that your lawyers are paid in connection with
14    your settlement?
15        A.   The only -- my only understanding is that they
16    take a portion of whatever the settlement is and that
17    anybody that -- I guess that they've signed up as an
18    objector in the case receives, under 3.2, up to a $5,000
19    check.
20        Q.   And it's your understanding that the settlement
21    portion to the objectors never exceeds $5,000?
22        A.   That's what 3.2 says.
23        Q.   And again it's your testimony that you have no
24    right to know or approve the amount of attorneys' fees
25    that are paid out of that settlement?
```

1      A.    That's correct.

2      Q.    So is your testimony that you don't know how

3  your lawyers have been paid in the past cases in which

4  you've objected?

5      A.    I don't know.

6      Q.    And you don't know the portions of the

7  settlements --

8      A.    No.

9      Q.    -- that they take as fees?

10     A.    No, I don't.

11     Q.    So in the event of a settlement, is it your

12 understanding -- strike that.

13          In the event of a settlement, what portion do

14 you expect to receive?  You personally?

15     A.    I just -- whatever it says in this 3.2.  Up to

16 $5,000.

17     Q.    Okay.  And so it's not a percentage so to

18 speak?  It's $5,000 not to be exceeded?

19     A.    It's not a percentage.  It doesn't exceed

20 $5,000.

21     Q.    Okay.  Just so I'm clear, it's again your

22 testimony that you don't have any right to know the

23 amount of attorneys' fees that Mr. Bandas or your

24 lawyers will take in connection with your settlement?

25 I'm sorry.  In connection with settlement of your

Page 49

1    objection?

2         A.    I don't have any knowledge of what they take.

3         Q.    And do you have any right to know?

4         A.    I don't see that anywhere in this agreement.

5         Q.    So under your understanding of this agreement,

6    you don't have that right?

7         A.    Correct.

8         Q.    Now, a retainer with Mr. Howard's firm was also

9    produced.  I don't know that we need to mark that as an

10   exhibit, but have you seen that document?

11        A.    I have.

12        Q.    And you signed and dated that document?

13        A.    Yes.

14        Q.    Okay.  And are you responsible for any of the

15   portion of the payment to Mr. Howard's firm --

16        A.    No.

17        Q.    -- for his hourly fees in connection with

18   this -- with this deposition?

19        A.    No.

20        Q.    That is all being paid by Mr. Bandas?

21        A.    That's my understanding, yes.

22        Q.    Okay.  I would like to now direct you to

23   section 5.2 of your agreement with Mr. Bandas' firm.  It

24   is entitled Association of Co-counsel.  Have you

25   finished reviewing that?

1          A.    I have.

2          Q.    Okay.  Mr. Morgan, is it your understanding

3    that this section requires your separate agreement in

4    writing before any other counsel is associated to

5    represent you or your objection?

6          A.    It says that in the first sentence.

7          Q.    Okay.  And do any such separate written

8    agreements exist?

9          A.    Not to my knowledge.

10         Q.    Okay.  So did you ever give separate written

11   approval as described in section 5.2 to authorize the

12   association of any co-counsel?

13         A.    I haven't, no.

14         Q.    Is there any other agreement besides this

15   agreement that is in writing between you and Mr. Bandas?

16         A.    No.

17         Q.    So, Mr. Morgan, I have to ask, you don't have

18   any knowledge of how Mr. Hanigan came to appear on your

19   behalf?

20         A.    I don't have any knowledge.

21         Q.    Okay.  And you did not give any approval

22   pursuant to this section to authorize Mr. Bandas to

23   associate Mr. Hanigan to appear on your behalf?

24         A.    I haven't.

25         Q.    So you don't know the terms of -- you don't

Page 51

1    know -- you don't know Mr. Hanigan?  You don't know

2    whether he represents you or not?

3        A.    I don't know Mr. Hanigan.

4        Q.    Do you know whether he represents you or not?

5        A.    I don't know that.

6        Q.    Okay.  You don't know how he is being paid in

7    connection with your objection?

8        A.    I have no idea.

9        Q.    So you don't have any other agreements with any

10   other lawyers other than the agreement between you and

11   Mr. Bandas and Mr. Bandas' agreement with Mr. Howard's

12   firm in connection with this case?

13       A.    That's correct.

14       Q.    Are you aware of any verbal agreements with

15   anyone that pertain to this case?

16       A.    I'm not.

17       Q.    So you don't have any verbal or unwritten

18   agreements with anyone pertaining to this case?

19       A.    No.

20       Q.    Aside from your lawyers, have you ever

21   discussed with anyone receiving money in connection with

22   filing this objection?

23       A.    I have not.

24       Q.    Under your understanding of your agreements

25   with your lawyers, who is responsible for any cost that

```
                                                           Page 52
 1    your attorney incurs in connection with your objection?

 2         A.   My understanding is Mr. Bandas is responsible.

 3         Q.   Okay.  So are you aware of any arrangements

 4    between your lawyers and any other lawyers in connection

 5    with this case?

 6         A.   I am not.

 7         Q.   Are you aware of any arrangements among your

 8    lawyers and any other objectors in this case other than

 9    Mr. Hull?

10         A.   I am not.  I'm not even aware of him.

11         Q.   Okay.  Have you received any money or payment

12    to date from anyone in connection with your objection in

13    this case?

14         A.   I have not.

15         Q.   Okay.  I'm going to mark this next document as

16    Exhibit 4.

17                    (Exhibit No. 4 marked)

18         Q.   And have you seen this document before?

19         A.   I have not.  Well, I -- I may have seen this

20    document.

21         Q.   And when was the first time that you saw it?

22         A.   Can I have a second to look it over?

23         Q.   Sure.  Absolutely.

24         A.   I have seen it.

25         Q.   Okay.  Do you know what this document is?
```

1      A.    It's the objection that's filed in this CRT

2   case.

3      Q.    Do you understand that's the objection that was

4   filed in your name with the court?

5      A.    Yes, yeah.  My signature is on the back.

6      Q.    And when was the first time you saw this

7   document?

8      A.    Probably October 5th or maybe 4th.

9      Q.    Okay.  And who wrote it?

10     A.    Who wrote the document?

11     Q.    Correct.

12     A.    I don't know.

13     Q.    You don't know.  You didn't write the document?

14     A.    No, I did not write the document.

15     Q.    Okay.  Let's see.  And just briefly, if you can

16  flip to page seven where you'll see a signature of the

17  attorney that submitted the document.

18     A.    (Witness complying.)

19     Q.    Do you see where it says, Respectfully

20  submitted Timothy R. Hanigan?

21     A.    Yes.

22     Q.    And again you don't know who Mr. Hanigan is?

23     A.    No.

24     Q.    You have never met Mr. Hanigan?

25     A.    I have never met Mr. Hanigan.

1        Q.    You have never signed a retainer agreement with

2    Mr. Hanigan?

3        A.    Never signed a retainer agreement.

4        Q.    Do you know how Mr. Hanigan came to submit this

5    objection in your name?

6        A.    I have no idea.

7        Q.    Turn to the very last page.

8        A.    (Witness complying.)

9        Q.    Is that your signature, Mr. Morgan?

10       A.    Yes.

11       Q.    Okay.  And you dated that October 6th?

12       A.    That's correct.

13       Q.    And did you review this document before

14   executing that signature page?

15       A.    Yes.

16       Q.    So is there anything in this document that is

17   inaccurate or is there anything that you disagree with?

18       A.    I've read it several times, a couple times, and

19   I -- there's nothing that I disagree with.

20       Q.    Do you know what the settlement class is with

21   respect to the settlement agreement to which you object?

22   Do you know who was in the class?

23              MR. HOWARD:  I'm sorry.  What was the

24   question?

25              MR. BUETZOW:  Does he know the class?

1      Q.    That's your wife?

2      A.    Yeah.

3      Q.    Okay.  So you guys practice law together?

4      A.    Yes.  We -- we practice law in the same office.

5  Her name is Gabbie Canales-Morgan.

6      Q.    So you practice law together under one firm?

7      A.    No, we're totally separate, but we practice

8  together.  Same -- same suite, same building, same

9  office.

10      Q.    Okay.  And when did she join your practice or

11  your office?

12      A.    She -- probably 2005, maybe 2006.

13      Q.    Okay.  And is your testimony that she had a

14  separate practice from yours?

15      A.    Yes.

16      Q.    Okay.  Did you share office space?

17      A.    Yes.

18      Q.    Okay.  But they were separate legal entities?

19      A.    That's correct.

20      Q.    Okay.  And did you work for anyone else until

21  you resigned in 2012?

22      A.    No.

23      Q.    Okay.  So what led to your resignation from the

24  practice of law in 2012?

25      A.    Failure to timely pay medical expenses in an

Page 85

1    accident case.

2        Q.    And failure to timely pay whom?

3        A.    Medical care providers.

4        Q.    Were these medical care providers for your

5    clients?

6        A.    Yes.

7        Q.    And was there one instance of this or multiple

8    instances?

9        A.    It was one case.  Two -- two clients.

10       Q.    Okay.  And was there any other basis for your

11   resignation?

12       A.    No.

13       Q.    Did you ultimately pay the medical expenses

14   that were at issue?

15       A.    They had been paid.  It's a timely thing.  I

16   don't know if you have ever practiced injury law.

17       Q.    I have not.

18       A.    Well, there's real strict -- real strict time

19   frames, and I kind of got in a situation where they

20   weren't paid timely.

21       Q.    Okay.

22       A.    Timely is like within weeks of settlement.

23       Q.    Okay.

24       A.    But they were all paid.

25       Q.    They were all paid.  Was there any allegation

1           MR. BUETZOW:  Correct.  In this case.

2      A.   It bothers me.

3      Q.   It bothers you?

4      A.   Yeah.

5      Q.   Okay.  And if I told you that none of your

6  objections in your prior cases have resulted in any

7  changes for any other member of the class, would that

8  bother you?

9      A.   Yes.

10     Q.   Yes.  But you don't know whether members of the

11  class have in any way benefited from your objections in

12  the past?

13     A.   I do not know.

14     Q.   You don't know.  Have you ever tried to find

15  out?

16     A.   No.

17     Q.   Okay.  Would you continue to object and accept

18  financial payment in exchange for dismissing your

19  objection if you knew that the rest of the settlement

20  class would not receive any benefit from that objection?

21           MR. HOWARD:  Objection.  Calls for

22  speculation.

23     A.   I would continue with my objection.

24     Q.   You would?

25     A.   Yes.

Page 101

1     Q.   Knowing that no other class member would
2  benefit?
3              MR. HOWARD:  Objection.  Calls for
4  speculation.
5     A.   I would continue forward.
6     Q.   And is that because you receive monetary
7  compensation for your purchases?  For your objection
8  rather?
9     A.   That's part of it.  And I would hope that
10  others would receive as well.  But if you're -- if what
11  you're saying is that no one else is going to receive
12  anything based on my objection, I would still move
13  forward.
14     Q.   You would?
15     A.   Yes.
16     Q.   Okay.  And you would still resolve your
17  objection in exchange for monetary payment knowing that
18  the class members would not receive any other benefit?
19              MR. HOWARD:  Objection.  Calls for
20  speculation.
21     A.   Yes.
22              MR. BUETZOW:  No further questions.
23              MR. HOWARD:  I'm good.
24
25              (Deposition Concluded)

Page 1

1   UNITED STATES DISTRICT COURT
    NORTHERN DISTRICT OF CALIFORNIA
2   SAN FRANCISCO DIVISION
3   Case No. CV-07-5944-SC

    _____
4

    DEPOSITION OF SEAN KENNETH HULL   November 2, 2015
5   _____
6   IN RE: CATHODE RAY TUBE (CRT)
    ANTITRUST LITIGATION
7   _____
8   This Document Relates to:
9   All Indirect-Purchaser Actions.
10  _____
11  APPEARANCES:
12        ZELLE HOFMANN VOELBEL & MASON LLP
              By Eric W. Buetzow, Esq.
13                44 Montgomery Street, Suite 3400
                  San Francisco, California  94104
14                (415) 693-0700
                     Appearing on behalf of Plaintiffs.
15
          LISKOW & LEWIS
16            By Wade T. Howard, Esq.
                  1001 Fannin Street, Suite 1800
17                Houston, Texas  77002
                  (713) 651-2900
18                   Appearing on behalf of Deponent.
19
20
21
22
23
24
25

```
                                               Page 20
 1        A       I'm not aware of any of those documents
 2    and did not find any.
 3        Q       But you looked for them?
 4        A       Yes.
 5        Q       Okay.  So you've received settlement
 6    checks from your lawyers in connection with the
 7    settlement of your objections, correct?
 8        A       No.
 9        Q       You've never received a check in
10    connection with any of your settlements in the
11    last 10 -- I'm sorry, any of your objections in
12    the last 10 years?
13        A       Never a check.
14        Q       Never a check.  Have you ever received
15    monetary compensation in the last 10 years?
16        A       I received a gift for one, a watch for
17    one objection case.
18        Q       So you received a gift in the form of a
19    watch?
20        A       Correct.
21        Q       And what case was that for?
22        A       Smokeless tobacco.
23        Q       Okay.  And it's your testimony that
24    with respect to all of your other objections, you
25    have never received any monetary payment
```

```
                                               Page 21
 1   whatsoever?
 2        A     Do the deposition -- the deposition
 3   checks don't count?
 4              MR. HOWARD:  I don't think so.
 5        Q     (By Mr. Buetzow)  I would not include
 6   deposition.
 7        A     Okay.  No.
 8        Q     And that is even after the settlement
 9   of your objection?
10        A     That's correct.
11        Q     Okay.  So do I understand your
12   testimony that after your objection has been
13   settlement -- I'm sorry, after your objection has
14   been settled, you have received no portion of any
15   proceeds obtained for settling that objection?
16              MR. HOWARD:  So are you representing to
17   him that his -- there have been some of his
18   objections that have been settled?
19              MR. BUETZOW:  I'm asking him.
20              MR. HOWARD:  Okay.  Well, I think that
21   would be the first question to ask before you ask
22   him if he got a check after his --
23        Q     (By Mr. Buetzow)  Mr. Hull, you
24   understand that numerous of your objections have
25   been settled in the past; is that correct?
```

```
 1       A     Yes.
 2       Q     Okay.  So is it your position that with
 3   the exception of the gift of a watch that you
 4   received in the smokeless tobacco case, you have
 5   never received any form of monetary compensation
 6   following the settlement of those cases?
 7       A     That's correct.
 8       Q     Okay.  So you have received zero
 9   portion of any settlement proceeds that were
10   obtained for settling your objection?
11       A     Correct.
12       Q     Do you know where those proceeds went?
13       A     No.
14       Q     You don't know?
15       A     No.
16       Q     Okay.  So your lawyer -- your lawyers
17   settled your objections in many of these cases in
18   which you objected, and you don't know where any
19   of the money went?
20       A     No.  It's -- my reason for objecting is
21   not to increase monetary compensation or get
22   monetary compensation.
23       Q     Okay.  So does -- do -- do you know if
24   the monetary compensation received in exchange for
25   settlement of your objections was retained by your
```

                                                    Page 23

1   lawyers?

2       A     I don't know.

3       Q     You don't know?

4       A     I don't know.

5       Q     They've never told you?

6       A     I've never asked.

7       Q     You never asked.  Do you understand if

8   you have the right to know that information?

9       A     It's, again, not something I'm

10  concerned with.

11      Q     Okay.  So how would you describe your

12  motivation in objecting in the prior cases in

13  which a settlement of your objection was the

14  resolution of that objection?

15      A     I think every case had a different

16  motivation.  You want to talk about a specific

17  case?

18      Q     Sure.  We can talk about them

19  specifically in a bit.  I was just wondering if

20  there was a general motivation, if you had a

21  specific aversion to class objections or what your

22  motivation was, but if it's case specific, we can

23  go through those.

24            THE DEPONENT:  Is it okay to be

25  general?

Page 25

1       Q      By a judge?

2       A      By a judge.

3       Q      Okay.  And would that be just the trial

4    court judge?

5       A      Or the appellate court judge depending

6    on how far the case goes.

7       Q      Or the appellate judge.  But do you

8    understand that when your settlement is dismissed

9    following a settlement -- I'm sorry, strike that.

10              Do you understand that when your

11    objection is settled and thereafter dismissed,

12    that no change is made to the class action

13    settlement?

14       A      So in some cases, yes.

15       Q      Okay.

16       A      But we have also been successful,

17    too --

18       Q      Right.

19       A      -- in getting the settlement changed.

20       Q      So in the instances in which your

21    objections have been -- have been settled, why did

22    you approve a settlement that made no change to

23    the class action settlement?

24       A      Because it accomplished my goal of

25    having an initial inspection.

                                                          Page 26

1        Q      And that is the only goal of your
2    objections, normally?
3        A      Ideally if -- you know, it's not for me
4    to decide ultimately if the judge finds it
5    incorrect, but it's, you know . . .
6        Q      Okay.  Okay.  So let's set aside
7    Exhibit 1 for a second.
8               Mr. Hull, when did you first learn of
9    the settlement in this CRT case?
10       A      I can't recall exactly.
11       Q      You don't recall.  Could you estimate
12   generally whether it was in the last two months,
13   the last four months, the last six months?
14       A      I'm not sure.
15       Q      Okay.  Do you recall how you learned
16   about it?
17       A      No, I don't.
18       Q      Okay.  So in determining that you
19   objected to the settlement, what did you review?
20       A      I don't recall.
21       Q      You don't recall a single document that
22   you reviewed in determining that you objected to
23   the settlement?
24       A      I don't recall exactly what I reviewed
25   in this case.

Q Okay. Do you know what the terms of the settlement are generally?
A Yes.
Q Okay. And could you just generally describe them in your own words?
A I know there's a remedy for purchasers -- for members of the class to receive nominal monetary compensation.
Q Okay. And what terms do you object to?
A I believe it's stated in my objection.
Q Okay. But I'm asking you, without -- without your written objection, in your own words, what -- what are the terms that you object to?
A I believe my goal is to have it looked at more closely by a judge.
Q Okay. But you can't describe the specific terms that you object to?
A No.
Q Okay. And then I take it you can't describe what you think the terms of the settlement should be?
A I had a verbal discussion with Mr. Bandas regarding what I objected to, and he prepared the objection for me.
Q Okay. But other than what is stated in

Page 28

```
 1   your written objection, you cannot state what you
 2   believe the terms of the settlement should be?
 3        A     Well, I believe there are certain
 4   aspects of the settlement that are unfair to me
 5   and to other members of the class.
 6        Q     And can you just -- all I'm looking for
 7   is what aspects you believe are unfair.
 8        A     I believe the monetary compensation is
 9   not substantial.
10        Q     Okay.
11        A     I believe some of the requirements
12   around foreign nationals are not appropriate.
13        Q     Anything else?
14        A     That's all I can recall.
15        Q     Okay.
16        A     But I did have a conversation regarding
17   the objection.
18        Q     Okay.  So when you determined that you
19   wanted to object to the settlement -- I'm sorry,
20   do you recall when you determined that you wanted
21   to object to the settlement?
22        A     No.
23        Q     Do you recall what caused you to object
24   to the settlement?
25        A     No.
```

```
                                            Page 29

 1        Q      Okay.  So you can't say why you decided
 2   to take the affirmative step of objecting in this
 3   case?
 4        A      Well, I objected because I didn't agree
 5   with the terms of the settlement and thought that
 6   they should -- they warranted further inspection.
 7        Q      Okay.  And then what did you do?
 8        A      I contacted Mr. Bandas.
 9        Q      Okay.  So you initiated contact with
10   Mr. Bandas after reviewing something or getting
11   some sort of a verification?
12        A      Mr. Bandas is my attorney, and I have
13   frequent conversations with him.  I don't recall
14   exactly when we initiated this conversation.
15        Q      Okay.  But is it your testimony that
16   you initiated the conversation with Mr. Bandas?
17        A      Regarding this?
18        Q      Yes.
19        A      Yes.
20        Q      And you don't recall what caused you to
21   initiate that conversation with Mr. Bandas?
22        A      No.
23        Q      Has anyone else contacted you with
24   respect to this litigation or the class settlement
25   besides your lawyers?
```

Page 37

1    strike that.

2              Did you object in all of the cases that

3    are listed in this letter?

4         A    Some of them are familiar.

5         Q    But you don't know?

6         A    Some of these don't look familiar at

7    all, so no.

8         Q    Okay.  Let's go through them.  The

9    first case is the "Aetna UCR Litigation."  Did you

10   file an objection in that case?

11        A    I can't recall.

12        Q    So you have no idea whether you

13   objected?

14        A    I think I did, actually.

15        Q    Okay.

16        A    Yeah.

17        Q    And was Mr. Bandas your lawyer in that

18   case?

19        A    I think so.  I -- he's my lawyer.

20        Q    Has he been your lawyer in every case

21   in which you have presented an objection?

22        A    Yes --

23        Q    Okay.

24        A    -- other than his cocounsel like

25   Mr. Howard or Hanigan.

Page 38

1        Q      But I guess my point is, Mr. Bandas is
2    the common denominator.  He has represented you in
3    every case, but there may have been others that he
4    has --
5        A      Yes.
6        Q      Okay.  And do you know what the result
7    of your objection in this case was?
8        A      I don't recall.
9        Q      Okay.  So you don't recall whether your
10   objection was settled in this case?
11       A      That one, no, I don't.
12       Q      Okay.  Do you recall whether you
13   received anything, whether it be a watch or a
14   check or cash, in connection with the settlement
15   of this case?
16       A      Like I stated before, I received
17   something once.
18       Q      Okay.  And that was only for smokeless
19   tobacco?
20       A      Correct.
21       Q      Are you hoping to receive any
22   compensation in connection with this case?
23       A      No.
24       Q      You're not hoping to receive another
25   watch from Mr. Bandas?

```
                                                   Page 43

 1        Q     So as far as cases in which you've
 2   objected, we have "Aetna," "Groupon," "DRAM," and
 3   the "U-Hall" case, as far as this list goes.
 4        A     Yes, and the smokeless is not on this
 5   list.
 6        Q     And smokeless tobacco.  That's five
 7   cases when you combine the district court
 8   proceedings and the appellate court proceedings.
 9        A     Uh-huh.
10        Q     Are there any others that you can
11   remember?
12        A     Not that I can remember.
13        Q     Okay.  So does five objections over the
14   last 20 years or so, does that sound accurate?
15        A     There could be more.  Those are the
16   ones I can remember.
17        Q     Okay.  And you can't recall whether and
18   how many of these five cases your objections were
19   settled and dismissed?
20        A     I believe -- well, I know Groupon
21   resulted in a change in the settlement.  As far as
22   I know, the other ones did not.
23        Q     Okay.  And so the other cases in which
24   no changes were made --
25        A     I don't know if no changes were made.
```

```
                                                Page 48
 1        A       I don't know.
 2        Q       You don't know.  And in the cases in
 3   which you do appeal, what is the purpose of the
 4   appeal?
 5        A       To see that the case is reviewed and
 6   that hopefully the terms of the settlement change
 7   for the members of the class.
 8        Q       And you -- and do I take it that you're
 9   going to give that answer for all of the cases in
10   which you have filed an objection?
11        A       That would be a safe assumption, yes.
12        Q       Okay.  In the cases -- you acknowledge
13   that there have been cases that have -- strike
14   that.
15               You acknowledged earlier that you have
16   settled and dismissed some of your class action
17   objections, correct?
18        A       Yes.
19        Q       Yes.  Okay.  And did you approve those
20   settlements?
21        A       I'm sure I did, yeah.  I don't recall
22   approving them.
23        Q       You don't recall whether you approved
24   them or not?
25        A       They were dismissed.  Do I have to?  I
```

```
                                    Page 49
 1    don't know.  I don't recall approving them.
 2         Q    Okay.  So you -- you haven't -- you
 3    don't recall approving a single settlement of any
 4    of your objections?
 5         A    Specifically, no, I don't.
 6         Q    Okay.  And so is it safe to assume that
 7    you don't know what the terms of the settlement of
 8    your objection was?
 9         A    I leave that to the attorneys.
10         Q    Okay.  So you -- you leave that aspect
11    to the attorneys, and as a consequence, you never
12    know what the terms of the settlement of your
13    objection are?
14         A    No.
15         Q    I'm sorry, "No," you do not know?
16         A    I do not know.
17         Q    Okay.  So when a case -- strike that.
18              So when an objection that you have
19    filed is settled and dismissed, you do not know
20    and you never have known the terms of the
21    settlement of that objection?
22         A    I have a -- typically I would have a
23    conversation with my attorney, Mr. Bandas, and
24    review the terms of the settlement, but I don't
25    recall the specifics of the terms of each
```

Page 57

1    objection.

2         Q     Okay.

3         A     And ideally, I'm not selfish.  I would

4    hope that the terms of the settlement would

5    improve for all members of the class, not just

6    myself.

7         Q     Okay.  Are you aware of instances in

8    the past in which Mr. Bandas or Mr. Hanigan have

9    dismissed objections without any changes being

10   made to the settlement and only obtaining

11   financial payment for themselves?

12        A     I'm not aware.

13        Q     If there were such instances, would

14   that bother you?

15        A     No.

16        Q     Why not?

17        A     I'll use a bit of a baseball analogy.

18   You can't -- you know, you have to step up to the

19   plate to hit a home run, right?  So to win a case

20   like Groupon, sometimes you might have to go

21   through other ones that aren't going to be

22   successful.

23        Q     And in those cases in which you say are

24   not successful, you're okay with a resolution that

25   only provides monetary compensation to the -- to

Page 58

1    your lawyers?

2        A      The compensation to Mr. Bandas and my

3    attorneys is really not my concern.

4        Q      Okay.  You're not concerned with it?

5        A      No, I'm not.

6        Q      So would you ever settle and dismiss

7    your objection in this case if you knew that the

8    only thing that would be obtained in exchange

9    would be monetary compensation to your lawyers?

10       A      That's a hypothetical situation that

11   hasn't come up, so are you asking in the future if

12   I would do that?

13       Q      I'm asking if -- if given -- given your

14   response that you're not concerned with instances

15   in the past in which your lawyers have objected to

16   class action settlements in exchange for only

17   obtaining monetary compensation for themselves,

18   you would have no problem doing that in this case,

19   correct?

20       A      It would depend on -- we would have a

21   discussion regarding the case, and if everything

22   had been exhausted and there was no other

23   alternative, again, I'm not really concerned about

24   how my attorney gets paid.

25       Q      Okay.  So you're not concerned if your

Page 59

1   attorney gets paid but no result is otherwise
2   obtained?
3       A    The attempt is made to change the
4   result.  If it's not successful, he should still
5   get compensated.
6       Q    So are you okay with that?
7       A    I am okay with that, yes.
8       Q    Okay.  If your objection is overruled
9   by the district court, the trial court in this
10  case, do you plan to appeal?
11      A    I would have a discussion with my
12  attorneys and decide whether an appeal was
13  warranted based on the facts of the specific case.
14      Q    Okay.  And as you sit here today, do
15  you have an understanding of why you might appeal?
16      A    For this case, no.
17      Q    Okay.  What about in prior cases, do
18  you have an understanding of why appeals were
19  taken?
20      A    We've had discussions as to why appeals
21  were taken.
22      Q    Okay.  And by we you mean between you
23  and your attorneys?
24      A    Correct.
25      Q    Okay.  Outside of discussions between

                                        Page 64

1       Q      In cases -- prior cases in which you've

2    objected and that objection was settled by your

3    attorneys --

4       A      Uh-huh.

5       Q      -- did you approve the amount of

6    attorneys' fees that would be received by your

7    attorneys, Mr. Bandas and his firm?

8       A      I approved the settlement, but I'm not

9    sure if it included attorneys' fees.  I don't have

10   any recollection of it including attorneys' fees.

11      Q      In your understanding of your agreement

12   with Mr. Bandas, do you have the right to approve

13   the attorneys' fees that he can receive in

14   connection with your settlement objection?

15      A      I don't know.

16      Q      You don't know?

17      A      No.

18      Q      So if your objection in this case was

19   settled by Mr. Bandas, what percentage of the

20   settlement would you expect to receive?

21      A      I don't expect to receive any

22   percentage of the settlement.

23      Q      Okay.  So that would be zero?

24      A      Yes.

25      Q      Okay.  And your lawyers would receive

Page 65

1   100 percent of any monetary compensation?

2        A     I don't really get involved with what

3   they get paid.

4        Q     Okay.  Would it be okay with you if

5   they received 100 percent of the compensation of

6   any settlement?

7        A     I'm not sure.  I've never had that

8   happen, if they've received 100 percent in the

9   past, so . . .

10       Q     I'm sorry, can you say that again?

11       A     So would I be okay if they received

12  100 percent of the compensation?  Again, I'm not

13  in this to get compensated.

14       Q     I understand that.  My question is

15  would you be okay if they took 100 percent of any

16  monetary compensation that was obtained in

17  connection with settling your objection?

18       A     Yes.

19       Q     In the event of a settlement of your

20  objection, what's your understanding of how your

21  lawyers get paid under this agreement?

22       A     I haven't really asked, so I don't

23  know.

24       Q     You don't know?

25       A     No.

Page 66

```
 1       Q     And when you signed this agreement, did
 2   you have any understanding of that?
 3       A     I understood that I was not responsible
 4   to pay attorneys' fees.
 5       Q     Okay.
 6       A     But no, I don't know.
 7       Q     So if your objection is settled on
 8   appeal, for example, you don't have an
 9   understanding how your lawyers would be paid under
10   this agreement?
11       A     No.
12       Q     And, again, do you have the right to
13   know the amount of fees that your lawyers will be
14   paid in connection with a settlement of your
15   objection as you understand the terms of this
16   agreement?
17       A     I -- I -- I don't care, but I don't
18   understand -- you know, I don't understand if I
19   have a right to know or not.
20       Q     Okay.
21       A     But regardless, I wouldn't be concerned
22   about it.
23       Q     But under your understanding of the
24   agreement, you can't point to any provision that
25   confers that right, can you?
```

Page 67

1        A       No.

2        Q       And you don't know whether Section 2.3

3    confers that right?

4        A       Sorry, I'm not sure what the last

5    sentence refers to, but it could refer to that.

6        Q       So you understand that you do have the

7    right to approve the amount of attorneys' fees?

8        A       Yes.  Sorry, I didn't mean to nod.

9        Q       And those attorneys' fees could be in

10   connection with the settlement of your objection,

11   correct?

12       A       Yes.

13       Q       Okay.  But it's your testimony that you

14   just don't know whether you have ever approved the

15   amount of attorneys' fees in the past?

16       A       I don't -- I don't recall.

17       Q       So is it your testimony that you don't

18   know how your lawyers have been paid in past cases

19   in which you've objected?

20       A       That is correct.  I never asked,

21   though, either.

22       Q       Understood.  And you don't have an

23   understanding of what percentage of any monetary

24   compensation that was obtained in connection with

25   your objection that was retained by the lawyers as

Page 68

1    attorneys' fees?

2         A     No.   I understand -- I've read the --

3    the initial class action settlement and understood

4    what the plaintiffs were getting.   Is that what

5    you're asking?

6         Q     No, I'm not asking that.   I'm asking --

7    you just testified that you're not aware of how

8    your lawyers were paid in past cases in which

9    you've objected, and these objections were

10   settled, correct?

11        A     Correct.

12        Q     Okay.   So is it fair to also say that

13   you don't know the portion of any monetary

14   compensation that your lawyers took that was

15   received in connection with settling that

16   objection?

17        A     Correct, I do not know the portion my

18   attorneys received.

19        Q     Okay.   Let's set that exhibit aside.   I

20   don't know that we need to mark it as an exhibit,

21   but, Mr. Hull, did you sign a retainer with

22   Mr. Howard's firm in connection with depositions

23   in this case?

24        A     Yes.

25        Q     Okay.   And how do you understand that

Page 81

1      Q      (By Mr. Buetzow)  You don't know why?

2      A      No.

3      Q      Okay.  But is it accurate that you do

4  not intend to appear at the hearing?

5      A      That is accurate.

6      Q      And you understand that no counsel will

7  be appearing on your behalf at the hearing?

8      A      I understand.

9      Q      Okay.  And are you okay with that?

10      A      Yes.

11      Q      And if you feel strongly about your

12  objection, Mr. Hull, why are you okay with that?

13      A      My goal is to have this reviewed by

14  another court, and I don't see that it requires my

15  attending the objection hearing to accomplish

16  that.

17      Q      And what about your lawyers'

18  attendance?

19      A      That's a decision for my lawyers.

20  That's up to my lawyers.  They're the legal

21  experts.

22      Q      Okay.  I'd like you to turn to the next

23  page, please.  And do you see the heading of

24  Section 1 that is entitled, quote, The Lack Of

25  Adequate Notice To Non-US Residents?

Page 82

```
 1       A       Yes.
 2       Q       Mr. Hull, does this section apply to
 3   you?
 4       A       I am a U.S. resident, so I would have
 5   to read it.  It does not.
 6       Q       So if this section does not apply to
 7   you, do you personally object on this basis?
 8       A       Yes.
 9       Q       Okay.  And why is that?
10       A       I don't believe it's fair to
11   residents -- or to people that may have purchased
12   the product in this state and then moved.
13       Q       And when you say, "this state," what do
14   you mean?
15       A       One of the states included in the
16   class.
17       Q       Okay.  And as you stated, you are a
18   U.S. resident, correct?
19       A       Correct.
20       Q       You currently live in Colorado?
21       A       Correct.
22       Q       You presently -- or previously lived in
23   California?
24       A       Yes.
25       Q       So why is it that you're concerned with
```

```
                                          Page 83
 1    the notice that was received or not received by
 2    non-U.S. class members?
 3         A     I think I stated that I don't believe
 4    it was -- it -- if they purchased in one of the
 5    states under the class, they should still be
 6    eligible for a settlement --
 7         Q     Okay.
 8         A     -- regardless of where they live today.
 9         Q     But when you just testified before that
10    this section doesn't apply to you, do you mean
11    that you are not personally affected by the notice
12    that was given to residents of foreign countries?
13         A     That is correct.
14         Q     Okay.  And given your understanding
15    that you are not in any way affected by the notice
16    given to non-U.S. residents, do you still object
17    on this basis?
18         A     Yes.
19         Q     I'd like you to look at Section 2 on
20    the following page, please.  The section is
21    entitled, "The Release Of Claims By Outside
22    Nationwide Class Members."  Do you see that?
23         A     Yes.
24         Q     Okay.  And can you explain what is
25    meant by this portion of your objection?
```

1    A    It means that people who purchased the
2  product indirectly outside of the states listed
3  are not eligible to file a claim in a post
4  settlement.
5    Q    And does this section apply to you?
6    A    No.
7    Q    Okay.  And is that because you made
8  your purchases within a state that was listed in
9  the previous section as being in the statewide
10  damages class, correct?
11    A    Correct.
12    Q    And that would be the state of
13  California?
14    A    That's correct.
15    Q    So the purchases that you're claiming
16  with respect to your membership in the class
17  originate in California?
18    A    Yes.
19    Q    Okay.  So you agree, then, that this
20  section does not apply to you?
21    A    That's correct.
22    Q    But, Mr. Hull, is it personally a
23  grounds for your objection?
24    A    I still object in that I don't think
25  it's fair to members of the class in that

Page 85

1    situation.

2        Q     Okay.  But when you said this section

3    does not apply to you, again, you understand that

4    you are not affected by claims outside of states

5    in which you purchased, correct?

6        A     Sure, but I think I mentioned my goals

7    were not really to specifically increase

8    compensation for myself but to help other members

9    of the class as well.

10       Q     I understand that.

11       A     Sure.

12       Q     I just want to make sure we're on the

13   same page --

14       A     Okay.

15       Q     -- that this -- you are not personally

16   affected by the arguments that are contained in

17   Section 2.

18       A     Correct.

19       Q     Okay.  Now, you mentioned just a second

20   ago that CRT is an outdated technology that's

21   essentially no longer used, correct?

22       A     Yes.

23       Q     Okay.  And do you understand that the

24   -- in the other states that this Section 2 applies

25   to, that those states do not permit any antitrust

1    instruct the witness not to answer because the

2    only way he could know that would be based on

3    correspondence or communication with his attorney.

4              MR. BUETZOW:   Okay.   Fair enough.

5         Q    (By Mr. Buetzow)  Mr. Hull, if I told

6    you that on Friday Mr. Morgan testified that he

7    hopes to receive a check from Mr. Bandas after

8    Mr. Bandas settled his objection, would that

9    bother you?

10        A    No.

11        Q    And why doesn't that bother you?

12        A    Because my goals are not to receive

13   monetary compensation for myself but to improve

14   the benefits for all the members of the class and

15   make sure they're all treated fairly.

16        Q    But you're okay if that is Mr. Morgan's

17   objective?

18        A    Yeah.

19        Q    Okay.  You're okay if it's Mr. Morgan's

20   objective to receive a check from Mr. Bandas after

21   Mr. Bandas settles the objection?

22        A    I'm fine with that.

23        Q    Okay.  And you're aware that

24   Mr. Morgan's name is on your objection?

25        A    Yes, I am.

1      Q      And, again, that doesn't bother you?

2      A      No.  People have different motivations

3  for doing things.

4      Q      So if the resolution in this case was a

5  settlement of the objection by Mr. Bandas and a

6  payment of some form to Mr. Morgan, you would --

7  would you be okay with that?

8              MR. HOWARD:  Objection, calls for

9  speculation.  You can go ahead and answer if you

10  can answer.

11     A      I really wouldn't be concerned.

12     Q      (By Mr. Buetzow)  You couldn't be

13  concerned?

14     A      No.

15     Q      Okay.  But if Mr. Bandas settles the

16  objection, wouldn't your objection go away as

17  well?

18              MR. HOWARD:  Objection, calls for

19  speculation.

20     A      I -- I don't understand how, you know,

21  if one objector settles, the other one stays on.

22  I don't understand the legal mechanism behind

23  that.

24     Q      (By Mr. Buetzow)  Okay.  So we

25  previously talked about how you're unaware of any

Page 106

1  cases in which -- strike that.

2          We previously talked about how you

3  don't know how the lawyers were paid in the cases

4  in which you've objected, but the objections were

5  settled and dismissed, correct?

6      A    Correct.

7      Q    Okay.  And if that happened in this

8  case and Mr. Morgan received a check from

9  Mr. Bandas as a result and Mr. Bandas and

10 Mr. Hanigan took the remainder of any monetary

11 compensation under the settlement, that would not

12 bother you?

13         MR. HOWARD:  Objection, calls for

14 speculation.  You can answer if you can.

15     A    Honestly, it wouldn't bother me.

16     Q    (By Mr. Buetzow)  Okay.

17     A    My motivation is not really to receive

18 additional monetary compensation for myself.

19     Q    Okay.  But you're okay if others

20 associated with the objection receive monetary

21 compensation for themselves?

22     A    The agreements -- yeah, I don't care.

23 It wouldn't bother me.

24         MR. BUETZOW:  Okay.  All right.

25 Mr. Hull, I have no further questions.

Page 1

1          IN THE UNITED STATES DISTRICT COURT

          FOR THE NORTHERN DISTRICT OF CALIFORNIA

2

3

4   IN RE:

    CATHODE RAY TUBE (CRT)

5   ANTITRUST LITIGATION

6             Civil Action No. 07-CV-05944-SC; MDL NO. 1917

7

8           DEPOSITION OF LAURA FORTMAN

               October 28,2015

9

             Jo Ann Dickson, CCR 1085

10

11   (Whereupon, the deposition commenced at 1:00 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
                                               Page 5
 1                  IT IS HEREBY STIPULATED AND AGREED, by and

 2        between counsel that the deposition of LAURA FORTMAN may be

 3        taken in shorthand by Jo Ann Dickson, a certified shorthand

 4        reporter, and afterwards transcribed into typewriting; and

 5        the signature of the witness is expressly waived.

 6                            * * * * *

 7                          LAURA FORTMAN,

 8        of lawful age, being produced, sworn and examined:

 9                        DIRECT EXAMINATION

10        BY MR. SCHIRMER:

11             Q    Would you please state your name for the

12        record.

13             A    Laura Fortman.

14             Q    Ms. Fortman, do you have a lawyer here

15        representing you today?

16             A    Yes.

17             Q    Who is it?

18             A    My husband.

19             Q    Your husband, okay.  I understand that you

20        have -- do you understand why you're here today?

21             A    Yes.

22             Q    And you understand that you're here pursuant

23        to the subpoena?

24             A    Yes.

25                  MR. SCHIRMER:  Would you please mark this as
```

Page 7

1          Q    -- to the settlement to the in re:  Cathode

2     Ray Antitrust Litigation, am I right?

3          A    Yes.

4          Q    And in connection with your objection to the

5     settlement in the cathode ray, CRT case, if you don't mind

6     if I can use that the rest of the day, are there any other

7     attorneys representing you in connection with your

8     objection and response?

9          A    No.

10              (Thereupon, Exhibit 2 was marked for

11     identification.)

12     BY MR. SCHIRMER:

13          Q    Before today -- what is Number 2, do you know,

14     what has been marked as Exhibit Number 2?

15          A    This is the objection, isn't it?

16          Q    I'm not trying to fool you.  Have you seen

17     this before today?

18          A    Yes.

19          Q    Do you know when you first saw this?

20          A    I don't remember exactly.  Maybe a week ago

21     maybe.  I don't really remember exactly.

22          Q    Okay.  Let's set this aside.  I promise you

23     we'll come back to both of these.

24          A    Okay.  Great.

25          Q    Now, I take it you and your husband live here,

```
                                                    Page 13
 1        why I do.  So we'll try and keep breaks -- give you a
 2        couple of breaks.  It's not going to be very long, just a
 3        couple of hours today.
 4                A    Okay.
 5                Q    So we'll be done soon I hope.
 6                A    Okay.
 7                Q    Everyone always asks this, I don't know why,
 8        are you using any medication that might interfere with your
 9        ability to testify truthfully or to remember things?
10                A    No.
11                Q    Is there any other reason you can't testify,
12        that you feel uncomfortable testifying here today?
13                A    No.
14                Q    Now, you said you have been a named party to a
15        lawsuit.  That's the divorce, is that right?
16                A    Yes.
17                Q    Okay.  Other than that have you, I've got to
18        follow-up, have you ever been involved in any other
19        lawsuits?  Have you ever been sued by anybody else?
20                A    No.
21                Q    Have you ever sued anybody else?
22                A    Well, I mean --
23                Q    Other than the --
24                A    Other than the objection, no.
25                Q    Now, you said you have been -- you have
```

```
 1       objected to the settlement of a class action lawsuit

 2       before, am I right?

 3              A    Yes.

 4              Q    And you don't remember what it was about

 5       anymore?

 6              A    Not really.  I mean not the details.  It's

 7       been a long time.

 8              Q    Do you remember whether the court adopted the

 9       objection you made last time?

10              A    I have no idea.

11              Q    Did you receive anything as a result of that

12       case, any money?

13              A    Yes.

14              Q    What did you receive?

15              A    I think I received a -- I think I received a

16       check but I'm not really sure.

17              Q    What was the check for?

18              A    I really don't remember that much about it

19       because like I said it's been a really long time ago.

20              Q    Were you married to Mr. Fortman at the time?

21              A    Yes.

22              Q    Do you know if he received any compensation

23       for his work in that case?

24              A    No, I don't know.

25              Q    Now, I take it you understand that you filed
```

Page 15

1          an objection to the settlement in the case, in the CRT

2          antitrust litigation case.  I think we already said yes.

3                    A    Yes.

4                         (Thereupon, Exhibit 3 was marked for

5          identification.)

6          BY MR. SCHIRMER:

7                    Q    Showing what has been marked as Exhibit

8          Number 3.  What is it?

9                    A    The objection.

10                   Q    Okay.  Now, if you'll turn -- before this

11         objection was filed, do you know whether you saw it before

12         it was filed?

13                   A    The objection?

14                   Q    Yeah.

15                   A    After.

16                   Q    Okay.  But you obviously authorized it being

17         filed on your behalf before it was filed?

18                   A    I'm sorry?

19                   Q    You said you saw it first after it was filed?

20                   A    Yes.

21                   Q    I just asked, you obviously authorized it to

22         be filed on your behalf before it was filed.

23                   A    Yes.

24                   Q    Now, if you look at Page 17 for just a moment,

25         it says -- it lists three attorneys.  Jonathan E. Fortman,

```
                                                        Page 16
 1          I assume that's your husband right there?

 2               A    Yes.

 3               Q    Who's Mr. Miller?

 4               A    I know him.  He works with my husband.

 5               Q    Do they have a partnership?  Do you know the

 6        nature of the arrangement?

 7               A    I don't know any of the nature of the

 8        arrangement.  I don't know much about his business, but I

 9        just know him.  We had dinner once or twice with him.

10               Q    Okay.  How about Mr. Crest, do you know

11        Mr. Crest?

12               A    Yes.  He works with my husband.

13               Q    Do you understand the nature of the work they

14        do together?

15               A    No, I really don't.

16               Q    Okay.  Do you understand the nature of the

17        business that your husband does?

18               A    To some degree.  We keep, like I said, we keep

19        business and personal separate, just, you know, it's just

20        better for a marriage I believe.  But I do know he does

21        franchise law basically.

22               Q    So you obviously know he's a lawyer?

23               A    Well, yes.

24               Q    And does he have -- does he have any -- he

25        sometimes works was Mr. Miller and Mr. Crest is your
```

Page 17

```
1     understanding?

2            A    I don't know if they -- I mean, I don't know

3     if they work together.  I just know, I think they -- I've

4     been to dinner with both of them on occasion a couple of

5     times.  I know, I think they've done some work together.

6     That's about all I know.  I don't know what type of

7     anything like that.

8            Q    All right.  Now, so this is -- let's go back

9     to the objection for just a minute.

10           A    Yes.

11           Q    So this was filed on your behalf by -- did you

12    understand that Mr. Miller and Mr. Crest were also

13    representing you in making this objection, because they are

14    submitting this objection on your behalf?

15           A    Yes.

16           Q    So when did you come to that understanding, at

17    or around the time it was filed, before?

18           A    I'm not really sure on that.

19           Q    All right.  Now, if you turn to the very last

20    page, that's your signature?

21           A    Yes, sir.

22           Q    You say that comes now Laura Townsend Fortman

23    and declares she's a member of the class as defined in the

24    preliminary approval order.  Which preliminary -- which

25    class?  Do you have -- have you seen the preliminary
```

Page 1

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                SAN FRANCISCO DIVISION

4

5    IN RE: CATHODE RAY TUBE          )
     (CRT) ANTITRUST LITIGATION       ) Case No:
6    _____) CV-07-5944 SC;
                                      )
7                                     ) CV-13-03234 SC
     This Document Relates To:        )
8    All Indirect-Purchaser Class     ) MDL No. 1917
     Actions Luscher, et al. v.       )
9    Videoton Industries Limited,     )
     et al.                           )
10                                    )
     _____)
11

12

13              DEPOSITION OF JOHN FINN

14                ANAHEIM, CALIFORNIA

15             THURSDAY, OCTOBER 29, 2015

16

17

18

19

20

21

22   Reported by:
     DENISE HESS
23   CSR NO. 7564

24

25

```
                                      Page 12
 1            A    Yes.

 2            Q    And that caused you to be concerned

 3    about the reasonableness of the settlement,

 4    correct?

 5            A    I looked at it to reply to it myself.

 6    And I realized that it was a very legally

 7    technical thing, that I may need some -- to

 8    consult some legal advice.

 9            Q    Okay.  So your first instinct was

10    that you would file an objection on your own

11    behalf without the necessity of a lawyer; is

12    that right?

13            A    Yes.

14            Q    And then you felt that it was a

15    little bit too complex of a situation.  And you

16    thought an attorney would be better served to

17    help you; is that right?

18            A    Yes.

19            Q    Okay.  And what made you choose Steve

20    Miller?

21            A    I knew Steve Miller for over 40 years

22    from when I lived in Colorado.

23            Q    Okay.  And were you friends back in

24    Colorado?

25            A    We were friends in the fact that my
```

```
                                        Page 13
 1      wife was a first cousin of his wife.
 2              Q    And had you ever retained Mr. Miller
 3      on any other occasion other than this occasion?
 4              A    When you say retained, are you
 5      meaning did I pay him, or did I ever talk to him
 6      about legal matters?
 7              Q    Did you ever hire him?
 8                   Forget the payment issue.
 9                   Did you ever hire him for legal
10      advice before?
11              A    No.
12              Q    Okay.  And I think what you're saying
13      is, over the 40 years, because he's a lawyer,
14      you may have asked him on occasion, party or
15      some function, about some general matter, but
16      actually never hired him.
17                   Is that what you're saying?
18              A    Yes.
19              Q    Okay.  Are you currently married?
20              A    Yes.
21              Q    And what is her name?
22              A    Jeanne.
23              Q    And do you know if Jeanne has ever
24      filed any objections to class actions?
25              A    No.
```

                                                    Page 20

 1     there be an equitable solution.

 2            Q     Okay.  And you just don't have an

 3     opinion right now as to what that might be; is

 4     that right?

 5            A     No.

 6            Q     Okay.  And you're willing to accept a

 7     lower amount in payment of claims to yourself so

 8     that citizens of the other states might

 9     participate; is that right?

10            A     Yes.

11            Q     Okay.  And why is that?

12            A     It's reasonable.

13            Q     Okay.  You've filed objections in

14     other cases before, correct?

15            A     Yes.

16            Q     And how many times?

17            A     A total of three, this plus two

18     others.

19            Q     And what was the outcome of those

20     other two objections?

21            A     I never received any compensation.

22            Q     What was the -- I'm trying to ask you

23     a different question.

24                  You filed two other objections other

25     than this objection, correct?

Page 21

1          A    Yes.

2          Q    And do you know whether the clerk

3     found your objections to have any merit?

4          A    No.

5          Q    You don't know?

6          A    I do not know.

7          Q    Okay.  And did you file those with

8     any law firms, or were they filed just by

9     yourself?

10          A    By myself.

11          Q    Okay.  And did you follow -- after

12     you filed the objection, did you follow-up to

13     find out what the court's rulings were?

14          A    Yes.

15          Q    Do you recall what the court's

16     rulings were on those objections?

17          A    No.

18          Q    Did you file any appeals?

19          A    No.

20          Q    Do you have an understanding of

21     whether or not in California there is an

22     obligation to have a written retainer agreement

23     with your attorneys?

24          A    No.

25          Q    Do you have a written retention

```
                                              Page 22
 1      agreement with your attorneys?
 2              A    No.
 3              Q    Do you have any agreement with your
 4      attorneys?
 5              A    No.
 6              Q    How do you expect that they will be
 7      paid in this case?
 8              A    I don't.
 9              Q    You think they are doing it for free?
10              A    I don't -- I don't know.
11              Q    And you --
12              A    I don't believe they are.
13              Q    How do you understand them to expect
14      payment in this case?
15              A    I never had a discussion with them on
16      that point.
17              Q    Okay.  But you did know that
18      Mr. Miller has had instances where he has filed
19      objections on behalf of other people in other
20      cases?
21              A    Not sure.
22              Q    So when you called him about this
23      case, you had no understanding of his firm's
24      having filed objections on behalf of others; is
25      that right?
```

                                        Page 46

1                   MR. HULETT:  You're instructing him
2        not to answer --
3                   MR. MILLER:  He's already answered
4        it.
5                   MR. HULETT:  No, he has not.
6                   MR. MILLER:  He has, Counsel.
7                   MR. HULETT:  Okay.
8                   THE WITNESS:  I have already answered
9        it one time.  Look at your notes.
10       BY MR. HULETT:
11           Q    Answer it again, please.
12           A    Would you rephrase it for me, please?
13           Q    Sure.
14                Would you be willing to accept a
15       payment of money to dismiss that appeal that did
16       not benefit the other class members?
17           A    Don't know, because it would be
18       conditional on terms of the settlement.
19           Q    And, to your knowledge, were any of
20       the other objections that you filed appealed?
21           A    No.
22           Q    Okay.  So your understanding is that
23       the only appeal that has ever been lodged on
24       your behalf of your objections is the one that
25       you filed in the matter of Demmick versus Cellco

```
                                    Page 48
 1            Q    It's the one that's attached -- it's
 2     this one, the Verizon one we're talking about.
 3            A    Yes.
 4            Q    You authorized him to file?
 5            A    Yes.
 6            Q    Okay.  And in authorizing him to do
 7     that, did you understand that you were hiring
 8     him to represent you?
 9            A    I didn't understand the term "hire."
10     I understood that he would assist.
11            Q    Okay.  And do you understand that his
12     firm is on the appeal, or is he just --
13            A    Yes.
14            Q    Okay.  So his firm filed an appeal on
15     your behalf, correct?
16            A    Yes.
17            Q    Okay.  And you just don't understand
18     how he's going to get paid to do that?
19            A    That's correct.
20            Q    Do you know whether he's made a
21     monetary demand to settle that case?
22            A    No.
23            Q    Have you authorized him to do that?
24            MR. MILLER:  Objection.  That calls
25     for attorney-client privilege.
```

```
                                          Page 50

 1          A    No.

 2          Q    Okay.  And when was the last time you

 3     reviewed those objections?

 4          A    Ten days ago.

 5          Q    What was the purpose of that?

 6          A    I got it in the mail.  I opened the

 7     mail, and I read it.

 8          Q    Have you ever been convicted of a

 9     felony?

10          A    No.

11               MR. HULETT:  No further questions.

12               THE WITNESS:  Thank you.

13               MR. MILLER:  I have one follow-up

14     question.

15

16                    *EXAMINATION*

17

18     BY MR. MILLER:

19          Q    Mr. Finn, look at Exhibit 3, which is

20     the objection that you testified you filed in

21     the Federal Court in Florida.

22               Do you see that one?

23          A    Yes.

24          Q    Is it true that after you filed this

25     objection, you asked me to represent you in the
```

Page 51

```
 1    Florida matter, including taking an appeal?
 2          A    I believe I do now.
 3               MR. MILLER:  Okay.  That's all.
 4               MR. HULETT:  Okay.
 5
 6               *FURTHER EXAMINATION*
 7
 8    BY MR. HULETT:
 9          Q    And what was the outcome of that
10    appeal?
11          A    I have no idea.  I never heard
12    anything.
13          Q    Okay.  So you authorized Mr. Miller
14    to file an appeal in that case in Florida,
15    right?
16          A    Yes.
17          Q    And did you have any sort of an
18    agreement on fees with him on that case?
19          A    No.
20          Q    And you don't know the outcome of
21    that appeal?
22          A    No.
23          Q    You don't know if it was settled?
24          A    I have no idea.
25          Q    And when was the last time that you
```

```
                                              Page 1

 1              UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA
 2                  SAN FRANCISCO DIVISION
 3
    IN RE CATHODE RAY TUBE (CRT)
 4  ANTITRUST LITIGATION                            PLAINTIFF
 5  VERSUS       CIVIL ACTION NO:  07-CV-05944-SC; MDL NO.1917
 6  THIS DOCUMENT RELATES TO:
    ALL INDIRECT PURCHASER ACTIONS                  DEFENDANT
 7
 8  -----------------------------------------------------------
               DEPOSITION OF DOUGLAS W. ST. JOHN
 9  -----------------------------------------------------------
10          Taken at 4302 W. Beach Boulevard,
            Wingate Beach Hotel, Gulfport, Mississippi,
11          Monday, November 2, 2015, beginning at 10:02 a.m.
12
    APPEARANCES:
13
    REPRESENTING PLAINTIFF:
14          MARK J. SCHIRMER, ESQUIRE
            Straus & Boies, LLP
15          1355B Lynnfield Road, Suite 245
            Memphis, Tennessee  38119
16          mschirmer@straus-boies.com
17
    REPRESENTING DOUGLAS W. ST. JOHN:
18          JOSEPH SCOTT ST. JOHN, ESQUIRE
            514 Mockingbird Drive
19          Long Beach, Mississippi  39560
            jscottsjohnpublic@gmail.com
20
21  REPORTED BY:
            JENNIFER RAY, CCR, RPR
22          CCR # 1419
23
24
25
```

Page 5

1   certification, you owe a fiduciary duty to the
2   class members, including the witness, conflicted
3   with him as a matter of law.  And Mr. St. John,
4   the witness, is not here voluntarily.  Shorter
5   terms, you're deposing your own client.
6           MR. SCHIRMER:  I disagree.  I think
7   the law is 100 contrary to what you just said,
8   but I'm not gonna argue with you on the record at
9   all today.  I really do want to get him out of
10  here early.
11          MR. JOSEPH ST. JOHN:  I was obligated
12  to make the objection to the qualification.
13          MR. SCHIRMER:  You've made it in
14  writing.  I saw it.
15  BY MR. SCHIRMER:
16      Q.  Sir, I know that -- I know this is
17  gonna sound odd.  You two have the same last
18  name.  How do you know your lawyer?  Other than
19  being your lawyer, do you two have any
20  relationship?
21      A.  Yes.
22      Q.  What is it, sir?
23      A.  He is my son.
24      Q.  Oh.  And I was gonna ask you how long
25  you've known him, but your answer would probably

Page 47

1          Q.   Do you have an opinion as to what
2     would be an appropriate percentage for counsel in
3     this particular matter?
4          A.   I can tell you -- all I can tell you
5     is what -- as a layman what I have read and seen.
6     My understanding is that the larger the
7     settlement, the smaller the percentage.  It's a
8     sliding scale.  And when the settlement gets
9     extremely large, it may be less than ten percent.
10         Q.   Should attorneys be paid --
11    compensated for the work they do?
12         A.   Yes.
13         Q.   Is this an extremely large settlement,
14    as far as you know?
15         A.   Yes.
16         Q.   You were an engineer, sir?
17         A.   Yes.
18         Q.   Okay.  Did you happen to see whether
19    ten percent would be more or less than the
20    attorneys' hourly rates would have been in this
21    matter?
22              MR. JOSEPH ST. JOHN:  Objection.
23    Calls for speculation, facts not in evidence,
24    lack of foundation.
25              MR. SCHIRMER:  No.  It's absolutely --

```
                                          Page 64
 1    defenses the defendants made in this case?
 2           A.  No, sir.
 3           Q.  Do you know anything about the --
 4    their arguments against treating these cases as
 5    class cases?
 6           A.  No, sir.
 7           Q.  Do you know whether they contended
 8    that the prices, the effects of the cartel and
 9    their conspiracy could not be measured in a
10    reasonable manner at the consumer level?
11           A.  No, sir.
12           Q.  You said -- do you have an -- I think
13    I may have asked this, but I know I didn't follow
14    up on it right away.  Do you have an opinion as
15    to what would be a reasonable percentage of the
16    fee, of the fund in this case?
17           A.  You asked me that.
18           Q.  I'm sorry?
19           A.  You did ask me that.
20           Q.  Yeah.  I don't remember whether you
21    said you didn't -- you thought -- I think you
22    said that there was a sliding fund --
23           A.  It's my understanding there is a
24    sliding scale.
25           Q.  Okay.  Do you have an opinion as to
```

```
                                         Page 65
 1   where on the sliding scale this case should fall?
 2         A.  You asked for my opinion?
 3         Q.  Yes.
 4         A.  Yes, sir.
 5         Q.  What's your opinion?
 6         A.  Ten percent or less.
 7         Q.  Should attorneys be able to be
 8   compensated when they do a really good job?
 9         A.  Yes, sir.
10         Q.  Should they get more when they do a
11   good job or get a great result in general?
12         A.  You're asking for my opinion?
13         Q.  Your opinion, sir.
14         A.  Repeat that question.
15         Q.  Sure.  When attorneys have gotten a
16   great result for their clients in litigation --
17   let's use litigation only -- should they be
18   compensated more than when they don't get a great
19   result for their clients?
20         A.  That would depend on what the initial
21   agreement was.
22         Q.  Say they agreed to -- on a
23   contingency, should they be entitled to that
24   contingency fee?
25         A.  If the -- if the percentage was set,
```

Page 101

```
 1          A.   Other than the size of the attorneys'
 2     fees --
 3          Q.   That's correct.
 4          A.   -- no, sir.
 5          Q.   Do you have an -- do you have an
 6     opinion as to whether 576,000,000 is a fair and
 7     adequate settlement?
 8          A.   I don't know, sir.
 9          Q.   I'm trying to understand one other
10     thing.  Is -- are you -- so you don't have any
11     beef with the settlement other than the size of
12     the attorneys' fees and what you've listed here;
13     is that right?
14          A.   That's correct.
15          Q.   Okay.  And do you through this intend
16     to reduce the amount that individual consumers
17     could recover as part of the -- from the
18     settlement?
19          A.   No, sir.
20          Q.   Would that be contrary to your wishes?
21          A.   I have no objection to the size of the
22     settlement.
23          Q.   Is it your purpose to make it so that
24     individual consumers who made claims cannot
25     receive as much money as they might otherwise
```

Page 102

1  receive?

2         A.   Sir?

3         Q.   In other words, is it your purpose to

4  make it so that consumers receive less money

5  under the settlement or none?

6         A.   No.

7              MR. SCHIRMER:   I'm done.

8              MR. JOSEPH ST. JOHN:   No further

9  questions.   We do not waive reading and signing.

10                          - - -

11       (Deposition concluded at 12:22 p.m.)

12

13

14

15

16  _____

       DOUGLAS W. ST. JOHN

17

18

19  Subscribed and sworn to before me

20  this     day of              , 201_.

21

22

    _____

23       NOTARY PUBLIC

24

25

Page 1

1    UNITED STATES DISTRICT COURT

   FOR THE NORTHERN DISTRICT OF CALIFORNIA

2     SAN FRANCISCO DIVISION

3

 IN RE CATHODE RAY TUBE (CRT)  )

4 ANTITRUST LITIGATION    )No. 14-CV-2058(SC)

 ------------------------------)

5 THIS DOCUMENT RELATES TO: )MDL No. 1917

           )

6 ALL INDIRECT PURCHASER ACTIONS)

 ------------------------------

7

8

9

10      DEPOSITION OF

11  DAN L. WILLIAMS & COMPANY, by and through its

12   designated representative, DAN L. WILLIAMS

13

14  TAKEN ON BEHALF OF THE INDIRECT PURCHASER

15      PLAINTIFFS

16     OCTOBER 30, 2015

17

18

19

20

21

22

23

24

25

```
                                              Page 18

 1        A.    Yes, sir.

 2        Q.    And that's all I wanted.  I'm not trying

 3   to get you with something else.  It's your

 4   understanding, it's not going to be wrong, it's

 5   just your understanding, okay.

 6        A.    That is correct.

 7        Q.    And then your third issue was that the

 8   notice plan, something with the notice plan, you

 9   thought it was inadequate?

10        A.    I don't understand.

11        Q.    The -- how people found out about the CRT

12   lawsuit, you had a problem with that?

13        A.    Yes, I do.

14        Q.    Okay.  What's your problem with that?

15        A.    My problem is that I found out about it

16   accidentally and just barely in time to raise

17   objections because if it wasn't well published and

18   no one else talked about it, and I actually

19   mentioned it to a couple of my clients who had

20   never heard of it before and they're way past any

21   time to object.  So I definitely have a problem

22   with the fact that many of my client base don't

23   have a clue that that exists.

24        Q.    How did you find out about it?

25        A.    It was one of my client attorneys had
```

Page 19

1  mentioned it to me.

2      Q.   Who mentioned it to you?

3              MR. JUSTI:  I'm going to object at

4  that point, instruct him not to answer.  They're

5  both -- Mr. Williams and his attorney/client have

6  privacy issues about the representation.  And

7  also, because it was ultimately apart of seeking

8  legal representation that resulted in my

9  retention, it would also be protected by the

10  attorney/client privilege.

11     Q.   (By Mr. Diel)  Who was the attorney

12  friend of yours that mentioned it?

13             MR. JUSTI:  Same objections.  I'll

14  instruct the witness not to answer.

15             MR. DIEL:  You're going to

16  instruct him not to answer on the existence of the

17  individual?  There's no communication involved

18  there, there's no substance involved in that.

19             MR. JUSTI:  That's actually one of

20  the issues.  The other issue is that the identity

21  of that person as a client of Mr. Williams is

22  confidential information.  That attorney has a

23  privacy right in his identity not being disclosed

24  in what very well could be a public proceeding and

25  Mr. Williams has a privacy interest in not

```
                                             Page 20
 1   disclosing the identity of his clients.
 2                  MR. DIEL:  Well, I won't argue
 3   with you.  I'll oppose but I'll move on.
 4                  MR. JUSTI:  All right.
 5       Q.   (By Mr. Diel)  As a result of a
 6   conversation you had with a client who was an
 7   attorney of yours, you found out about the CRT
 8   settlement; is that correct?
 9       A.   Yes, sir.
10       Q.   And when was that?
11       A.   I believe it was -- our response deadline
12   was October the 8th so it was probably four or
13   five days before the deadline.
14       Q.   And when you say the response deadline,
15   are you saying the deadline for objecting to the
16   settlement?
17       A.   Yes, sir.
18       Q.   Okay.  And what did you do after you had
19   that conversation with your client who was an
20   attorney?
21       A.   Sought legal counsel.
22       Q.   Okay.  How did you manage to find
23   Mr. Justi as your legal counsel?
24                  MR. JUSTI:  And I'll -- same --
25   same concerns that I previously articulated.  I'll
```

Page 21

1  allow him just to describe it in general terms but
2  I don't want to get into identities of individuals
3  and things like that.
4      Q.    (By Mr. Diel)  All I'm trying to figure
5  out, he's a Kansas City, Kansas guy in a Kansas
6  City, Kansas business, and Mr. Justi is from San
7  Francisco or the Walnut Creek area of California.
8      A.    Uh-huh.
9      Q.    There's not a logical tie as to why you
10  would go necessarily to Mr. Justi right off the
11  bat.  So that's my question.
12      A.    Through, again, legal counsel here
13  locally and referral.
14              MR. DIEL:  Okay.  And, Mr. Justi,
15  you're going to instruct him not to answer who the
16  attorney here in town is that referred him to you?
17              MR. JUSTI:  That's correct.
18      Q.    (By Mr. Diel)  Were you involved in
19  preparing the objection?
20      A.    No, sir.
21      Q.    Who prepared the objection?
22              MR. JUSTI:  Well, I'm going to
23  object, vague and ambiguous.  As he testified, he
24  did review it so that could be considered
25  involvement, but you may answer the question.

Page 22

1      A.    I didn't physically type it out but I did

2   defer to counsel to handle those matters for me.

3      Q.    (By Mr. Diel)  Let me hand you what we'll

4   mark as Deposition Exhibit No. 2.

5                     (Williams Exhibit 2 was marked for

6            identification by the reporter.)

7      Q.    (By Mr. Diel)  You're being handed what's

8   been called -- these are the objections to the

9   proposed class action settlement and to the

10  attorney's fee award that you authorized filing on

11  behalf of Dan L. Williams and Company; is that

12  correct?

13     A.    Yes, sir.

14     Q.    And go to the very back page.  Is that

15  your signature?

16     A.    Yes, sir.

17     Q.    I just wanted to make sure.

18                     MR. JUSTI:  You know, I believe

19  that -- I'm noticing -- this is the copy that was

20  obviously generated off the Court's files and it

21  should have the claim form attached.  I don't know

22  if it was --

23                     MR. DIEL:  I've got it.

24                     MR. JUSTI:  Perfect.

25                     MR. DIEL:  I just separated them

Page 28

1    purchased a CRT in Missouri.  Where would you have

2    purchased a CRT in Missouri?

3         A.    That would have been at Sam's Club

4    probably purchased it or it's possible Best Buy.

5    Which of course has outlets on both side of the

6    state line.

7         Q.    Right.  You filed a claim in this case,

8    right?

9         A.    Correct.

10        Q.    And that claim lists one CRT --

11        A.    Correct.

12        Q.    -- is that right?

13              Where did you buy that one CRT?

14        A.    I don't specifically recall.

15              MR. JUSTI:  Just best

16    recollection.  If you know.

17        A.    Probably on the Kansas side.

18        Q.    (By Mr. Diel)  Okay.  Prior to this

19    objection had you ever had any contact with

20    Mr. Justi?

21        A.    No.

22        Q.    Did you know of Mr. Justi prior to this

23    objection?

24        A.    No.

25        Q.    Have you ever served as a class

Page 1

1          UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF CALIFORNIA
2              SAN FRANCISCO DIVISION
3

   IN RE CATHODE RAY TUBE (CRT)  )
4  ANTITRUST LITIGATION          )No. 14-CV-2058(SC)
   ------------------------------)
5  THIS DOCUMENT RELATES TO:     )MDL No. 1917
                                 )
6  ALL INDIRECT PURCHASER ACTIONS)
   ------------------------------
7
8
9
10                  DEPOSITION OF
11      ROCKHURST UNIVERSITY, by and through its
12   designated representative, MATTHEW W. HEINRICH
13     TAKEN ON BEHALF OF THE INDIRECT PURCHASER
14                    PLAINTIFFS
15              OCTOBER 29, 2015
16
17
18
19
20
21
22
23
24
25

Page 16

1      A.    Yes.

2      Q.    And again, during the 2005 to the present

3  time period, who were those people that had to

4  approve it as well?

5      A.    2005 to current time period would have

6  been Guy Swanson, who was the CFO at the time

7  until Gerald Moench took over about a year ago.

8      Q.    And again, Guy Swanson at that time as

9  CFO would report to the president --

10     A.    Yes.

11     Q.    -- of the university?  Okay.

12           Okay.  Do you understand why you're here

13  today being deposed?

14     A.    Yes.

15     Q.    Tell me what your understanding of that

16  is.

17     A.    Missouri was excluded from the CRT

18  settlement case.  They were involved in the

19  nationwide class but not in the individual state

20  class.

21     Q.    When you say they were -- they were

22  involved in the nationwide class, what -- do you

23  have an understanding of what that nationwide

24  class -- the claims involved with that?

25     A.    Not 100 percent, no.

Page 17

```
 1      Q.   Okay.  So you don't know whether that

 2   claim involves injunctive relief or a damage

 3   claim, the nationwide class?

 4      A.   I don't believe there were any damage

 5   claims in the nationwide.

 6      Q.   Okay.  And it's your understanding that

 7   Missouri was excluded from any of the state class

 8   damage --

 9      A.   Yes.

10      Q.   -- claims?  Okay.

11           And how did you get that understanding?

12      A.   I heard about this from a sister school

13   and the CFO asked me if I should check into it,

14   and I went out and did a Google search on CRT

15   claims, looked at the claim form and saw that

16   Missouri was not one of the states listed.  Then I

17   contacted the attorney.

18      Q.   Great.  Who -- do you recall the sister

19   school?

20      A.   Santa Clara.

21      Q.   Do you recall who at Santa Clara?

22      A.   No, I don't remember the name.  It came

23   via e-mail.

24      Q.   And did the e-mail come to you or the

25   CFO?
```

Page 18

```
 1        A.    CFO.
 2        Q.    And at that point in time was that Guy
 3   Swanson?
 4        A.    No, that would have been Gerald Moench.
 5        Q.    Gerald Moench, okay.
 6              And do you recall what time period that
 7   was?
 8        A.    Within the last two or three weeks.
 9        Q.    Oh, really?
10        A.    Yeah, fairly recently.
11        Q.    And then Dr. Moench asked you to look
12   into it?
13        A.    Yes.
14        Q.    And what did you do to look into it?
15        A.    I did the Google search, was not sure
16   exactly if I was reading the exact action that
17   Santa Clara had mentioned so I got in touch with
18   the attorney.
19        Q.    And by "attorney," do you mean Ms. Moore?
20        A.    Yes.
21        Q.    And how did you know Ms. Moore?
22        A.    I did not know Ms. Moore.
23              MS. MOORE:   I think you have to be
24   careful not to go into attorney/client privilege.
25              MR. DIEL:   Yeah.
```

```
                                            Page 19

 1                   MS. MOORE:  I think --

 2        Q.   (By Mr. Diel)  I don't want you to go

 3   into any substance of your communications with

 4   Ms. Moore.  I'm just asking -- you know, you had a

 5   question and you went to an attorney.  So why

 6   would that have been Ms. Moore necessarily?

 7        A.   The law firm was mentioned in the

 8   original e-mail from Santa Clara.

 9        Q.   Her law firm or her name or -- I mean

10   Ms. Moore.

11        A.   Her name was mentioned in the e-mail from

12   Santa Clara.

13        Q.   And do you -- do you recall what the

14   e-mail said?

15                   MS. MOORE:  I don't think you can

16   go any further without going into attorney/client

17   privilege so I'm going to instruct you not to

18   answer any further questions.

19                   MR. DIEL:  And, Theresa, the only

20   thing I'm trying to get at is the Santa Clara

21   representative, what the e-mail said to Guy

22   Swanson.  That's --

23                   MS. MOORE:  I understand but I'm

24   going to instruct him not to answer.

25                   MR. DIEL:  Okay.  All right.  By
```

                                    Page 25

1    settlement agreement briefly in the past couple of

2    days, correct?

3         A.    Uh-huh.

4         Q.    But you didn't read the settlement

5    agreement prior to the objection being filed?

6         A.    I reviewed it.  I didn't read it in

7    depth.

8         Q.    Okay.  What issues did you have with the

9    settlement -- the CRT settlement prior to filing

10   the objection?

11        A.    That Missouri was excluded from the state

12   group.

13        Q.    Okay.  Any other issues with the CRT

14   settlement?

15        A.    No.

16        Q.    Did you read the objection before it was

17   filed?

18        A.    Yes.

19        Q.    And do you recall when that was?

20        A.    No.  I'm sure the document's dated.

21        Q.    And you're being represented by Ms. Moore

22   here today?

23        A.    Yes.

24        Q.    And by "you" I mean you in your capacity

25   as a representative of Rockhurst University?

```
 1       Q.   -- and get money?
 2            That's what you -- you want -- that's
 3  what Rockhurst wants --
 4       A.   Yes.
 5       Q.   -- out of this objection?  Okay.
 6            Let me hand you what's been marked as
 7  Deposition Exhibit No. 2.  That appears to be a
 8  Declaration of Matthew Heinrich in Support of
 9  Objection to the Proposed Class Action Settlement
10  Agreement by Objector Rockhurst University and
11  Objector Gary Talewski (ph).
12            Did I read that correctly?
13       A.   Yes.
14       Q.   Do you know Gary Talewski?
15       A.   I do not.
16       Q.   Is that your signature on the affidavit?
17       A.   Yes.
18       Q.   And is the information provided in this
19  document true and accurate?
20       A.   Yes.
21       Q.   Who prepared the first draft of this
22  document?
23       A.   I believe Ms. Moore did.
24       Q.   And then she sent that to you via e-mail?
25       A.   Yes.
```

```
                                        Page 34
 1        Q.    Did you meet with her at Rockhurst?

 2        A.    Yes.

 3        Q.    And was that the first time you'd

 4   actually met had Ms. Moore in person?

 5        A.    Yes.

 6        Q.    And you've only known of Ms. Moore since

 7   four weeks or a month ago?

 8        A.    Yes.

 9                    MS. MOORE:   Asked and answered.

10                    MR. DIEL:   Let me take a break

11   real quick and go over the documents and then we

12   may be done.

13                    (Recess.)

14                    (Heinrich Exhibits 3 & 4 were

15           marked for identification.)

16        Q.    (By Mr. Diel)  Mr. Heinrich, earlier

17   today you mentioned an e-mail was sent -- or was

18   received by Mr. Moench at Rockhurst University

19   from an individual at Santa Clara University

20   regarding the CRT case; is that correct?

21        A.    Yes.

22        Q.    And do you have a copy or have you been

23   able to put your hands on a copy of that e-mail?

24        A.    Yes.

25        Q.    Have you brought that e-mail with you
```

Page 35

1  here today?

2              MS. MOORE:  Have you brought it?

3      A.   I have not brought it, no.

4      Q.   (By Mr. Diel)  I don't see it in the

5  documents so that is my question.

6              MS. MOORE:  There's an

7  attorney/client privilege issue and common

8  interest attorney/client privilege.

9              MR. DIEL:  Okay.  Let me just make

10  sure I understand it.  This is an e-mail sent from

11  a representative of Santa Clara to the CFO of

12  Rockhurst University regarding the CRT settlement

13  and you are objecting on attorney/client

14  privilege?

15              MS. MOORE:  Correct.

16              MR. DIEL:  We'll oppose that.  And

17  so, you are withholding that document today --

18              MS. MOORE:  Correct.

19              MR. DIEL:  -- based upon

20  attorney/client privilege?

21      Q.   (By Mr. Diel)  You have provided two

22  e-mails to us today and one is marked Exhibit 3

23  and that's an e-mail from you to Gerald Moench --

24  well, there are two e-mails actually.  One from

25  Gerald Moench to you dated October 1, 2015, at

Page 36

1    11:54 a.m. that notes:  See below.  Have you heard

2    of this, should we inquire?

3            And your response on the same day at

4    12:19 to Mr. Moench is:  I've not heard about it.

5    I'll follow-up.

6            Did I read that correctly?

7        A.   Yes.

8        Q.   And is this in relation to -- is this --

9    these two e-mails -- are these two e-mails in

10   relation to the e-mail that was sent to Mr. Moench

11   by the Santa Clara representative?

12                MS. MOORE:  You can't --

13   attorney/client privilege, don't answer that

14   question.

15       Q.   (By Mr. Diel)  The next e-mail that you

16   provided us is labeled Exhibit 4 and this is again

17   two more e-mails between you and Mr. Moench.  The

18   first e-mail again appears to be at 11:54 and it

19   notes:  See below.  Have you heard of this, should

20   we inquire?

21            And then you respond to Mr. Moench, at

22   12:31 with:  I sent off an e-mail but it may be

23   this one.  Missouri isn't listed as one of the

24   states but still worth checking into.  And then

25   you list a website.

1          Is that correct?

2      A.    Yes.

3      Q.    Okay.  From looking at this document and

4  from your recollection, did Mr. Moench forward to

5  you the e-mail from the Santa Clara University

6  representative and is it redacted from this

7  document?

8      A.    Yes.

9                MR. DIEL:  Theresa, we would

10  request -- formally request that that document be

11  produced.  Again, I'm not going to argue with you

12  here today but we'll make that formal request and

13  I'll let the --

14                MS. MOORE:  Yes.

15                MR. DIEL:  -- higher-ups deal with

16  you on that.

17                MS. MOORE:  I'll provide a log.

18  And, again, it's withheld on the basis of

19  attorney/client privilege and common interest.

20                MR. DIEL:  Okay.

21      Q.    (By Mr. Diel)  Let me hand you what we'll

22  mark as Exhibit 5.

23                (Heinrich Exhibit 5 was marked for

24        identification.)

25      Q.    (By Mr. Diel)  And you indicated that you

Page 1

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3             SAN FRANCISCO DIVISION

4

5   _____

6   IN RE:  CATHODE RAY TUBE (CRT)        Case No.

7   ANTITRUST LITIGATION              3:07-cv-5944

8   This Document Relates To:         MDL No. 1917

9   All Indirect Purchaser Actions

10  _____

11

12

13

14

15          DEPOSITION OF GARY TALEWSKY

16      Tuesday, November 3, 2015, 9:50 a.m.

17       ZELLE HOFMANN VOELBEL & MASON LLP

18        600 Worcester Road, Suite 101

19        Framingham, Massachusetts  01702

20

21

22      -----REPORTER:  Sonya Lopes, RPR, CSR-----

23

24

25

```
                                          Page 4

 1                     GARY TALEWSKY,

 2           having been satisfactorily identified,

 3           was examined and testified as follows:

 4                       EXAMINATION

 5    BY MS. WEDGWORTH:

 6        Q.  Could you state your name for the record.

 7        A.  Yeah.  Gary Talewsky.

 8        Q.  And could you also state your home address?

 9        A.  Home address is 12 Cortland Drive

10    Extension, Sharon, Mass.

11        Q.  And, Mr. Talewsky, as I told you earlier,

12    I'm Peggy Wedgworth.  I'm one of the attorneys who

13    represent the plaintiffs in the CRT antitrust

14    litigation.  We are here today concerning an

15    objection you have filed in that litigation.  Have

16    you testified in a deposition before?

17        A.  I do not believe so.

18        Q.  So let me just give you a couple of rules

19    about the deposition.  As you and I are talking

20    today, I'll be asking questions; you answer.  If you

21    can --

22        A.  I take that back.  I did one other time.

23        Q.  Okay.  So one of the things I was going to

24    say is we don't want to talk over each other so the

25    court reporter can get it.
```

Page 5

1          In the one time that you now recall, do you
2     recall what the matter involved?
3        A.  I think it's confidential.
4        Q.  Actually, your attorney will tell you if
5     you can't answer it.  Since she hasn't objected or
6     said anything, you can answer the question, which
7     is:  Do you recall what the matter was about?
8              MS. MOORE:  Can I instruct him?  I think
9     the subject matter is what she's asking.  Is that
10    right?
11             MS. WEDGWORTH:  Correct.
12       A.  Okay.  I believe that was an issue with a
13    merger for Delta and Northwest Airlines at the.
14       Q.  And in that matter, who were you
15    represented by?
16       A.  I was represented by the Alioto Law Firm.
17       Q.  Was Ms. Moore involved --
18       A.  Yes.
19       Q.  -- in that?
20       A.  Uh-huh.
21       Q.  How was Ms. Moore involved in that?
22       A.  She's part of the legal team of the firm.
23             MS. MOORE:  Peggy, can I interrupt for
24    one second?  We have an agreement that we will not
25    go into legal matters within -- I've represented the

Page 12

1      Q.   "Carlson" with a C?

2      A.   "Carlson" with a C.   Next word "Wagonlit"

3  with l-i-t at the end.   Actually pronounced Vagonlit

4  (phonetic), but everyone pronounces it Wagonlit.

5      Q.   How long did you have the travel agency

6  called Carlson Wagonlit Travel?

7      A.   Let's see.   We started -- trying to think.

8  We started as Travel Agents International.   I think

9  the Carlson name was probably around -- I don't know

10  -- 10 years, 12 years, that neighborhood.

11      Q.   Were you the sole owner of the travel

12  agency?

13      A.   I was the president of the company, but I

14  did have partners.

15      Q.   Were you a partner of Carlson Wagonlit

16  Travel?

17      A.   It was a franchise.

18      Q.   And were you owner of the franchise with

19  other partners?

20      A.   I was president, yes.

21      Q.   And how many other partners did you have?

22      A.   One point, there were three.

23      Q.   And those partners were who?

24      A.   Alan Talewsky, Winston Watson, Maura

25  Watson.

```
                                                  Page 24
 1    allowed to file a claim.  To me, that's not right.
 2         Q.  When is the first time you went online to
 3    look at the settlement concerning CRT?
 4         A.  I believe sometime in September.
 5         Q.  So you mentioned September 11th.  If we use
 6    that kind of as --
 7         A.  I don't know the exact.
 8         Q.  -- point of reference --
 9         A.  I really don't know if it was before or
10    after.
11         Q.  So it could have been before.  It could
12    have been after.
13         A.  I really don't know.  Uh-huh.
14         Q.  Okay.  What caused you to look at that CRT
15    settlement online?
16              MS. MOORE:  Without revealing any
17    attorney-client privileged information.  Question's
18    vague.  If it requires attorney-client privilege
19    information to answer it the way you understand the
20    question, I would say I would instruct you not to
21    answer.
22         A.  Then I'm not going to answer.
23    *    Q.  Is it fair to say without speaking to
24    attorneys, you would have no reason to go to the CRT
25    settlement information online?
```

```
 1   Mr. Garavanian filing an objection in the CRT
 2   litigation?
 3       A.  I'm not sure.  I was traveling away.  I was
 4   out of the country for a while.  So I'm not sure
 5   what day he did.
 6       Q.  You were in Bangkok?
 7       A.  I was in China and Thailand, yes.
 8       Q.  In September when you first heard about
 9   this litigation, do you know if Mr. Garavanian was
10   aware of the litigation at the time in September
11   that you first became aware of it?
12       A.  At some point in September, he would have
13   been aware.  I can't say exactly when.  But I'm
14   assuming he was aware then, yes.
15              MS. MOORE:  I'm going to object as lack
16   of foundation for personal knowledge.  Move to
17   strike.
18       Q.  Do you know if Mr. Garavanian found out
19   about this litigation before you did?
20       A.  No idea.
21       Q.  Do you have an opinion as to whether or not
22   the legal fees requested in this case by the
23   attorneys is appropriate?
24       A.  I don't know.  I'm not a lawyer.  I have no
25   idea.
```

```
                                                      Page 39
 1    *    Q.   Okay.  Are you aware if your objection
 2    includes an objection to the attorney's fees in this
 3    litigation that have been requested?
 4         A.   Am I aware of what?  I'm sorry?
 5                   THE WITNESS:  Could you read it back?
 6                   *   (Question read back)
 7         A.   I do not believe I am aware.  Yeah.  I
 8    mean, I'm not an attorney.  When I read through all
 9    this, I, you know --
10         Q.   Have you been promised anything for
11    objecting to the CRT settlement?
12         A.   No.
13         Q.   Do you expect to receive anything as a
14    result of your objection?
15         A.   I would hope.
16         Q.   What do you expect?
17         A.   Whatever the, you know, the claim is.
18         Q.   The claim is actually different than an
19    objection.  Do you understand that?
20         A.   Yes.
21         Q.   What do you expect to get out of the
22    objection?
23         A.   Out of the objection?  Well, if I
24    understand it correctly, the right to file a claim
25    if they include Massachusetts.
```

Page 1

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              SAN FRANCISCO DIVISION

4

5   _____

6   IN RE:  CATHODE RAY TUBE (CRT)        Case No.

7   ANTITRUST LITIGATION                  3:07-cv-5944

8   This Document Relates To:             MDL No. 1917

9   All Indirect Purchaser Actions

10  _____

11

12

13

14

15          DEPOSITION OF HARRY GARAVANIAN

16        Tuesday, November 3, 2015, 1:10 p.m.

17         ZELLE HOFMANN VOELBEL & MASON LLP

18          600 Worcester Road, Suite 101

19          Framingham, Massachusetts  01702

20

21

22      -----REPORTER:  Sonya Lopes, RPR, CSR-----

23

24

25

1      Q.   Are you represented by counsel with regard

2  to your objection?

3      A.   Yes.

4      Q.   Who is your attorney?

5      A.   That would be Theresa.

6      Q.   How long have you known Theresa?

7      A.   For about 15 years.  We had -- it was about

8  15 years.

9      Q.   How do you know Theresa?

10     A.   On a separate case with -- regarding

11  travel.

12     Q.   And what was the travel?  Was it the Delta,

13  Northwest merger or something else?

14     A.   No.  That's pretty much it.

15     Q.   What was your involvement there?

16     A.   Just as one of the plaintiffs.

17     Q.   Okay.  Did Ms. Moore represent you there?

18     A.   No.

19     Q.   Who represented you?

20          THE WITNESS:  Would it be the firm, the

21  whole firm?

22          MS. MOORE:  Yes.

23     A.   Okay.  Yeah.  Alioto.

24          MS. MOORE:  To clarify, tell the name of

25  the firm.

Page 8

1      A.   Joe Alioto Firm.

2      Q.   Okay.  In that case, you didn't give a

3  deposition?

4      A.   No.

5      Q.   And you didn't testify?

6      A.   No.

7      Q.   Do you know the outcome of that case?

8      A.   Yes.

9      Q.   What was the outcome?

10      A.   There was a small agreement for them to

11  cease what was.

12      Q.   Okay.  Now, I think you said you hadn't

13  spoken to anyone else about this CRT litigation

14  other than attorneys; is that correct?

15      A.   Yes.

16      Q.   But you have spoken to Mr. Talewsky; is

17  that correct?

18      A.   I knew that he was coming, but that's about

19  it.  I didn't talk to him.  I haven't talked to him

20  about it.  He actually -- he was in Vietnam.  He

21  just came back.

22      Q.   So you haven't talked to Mr. Talewsky about

23  the CRT litigation?

24      A.   No.

25      Q.   Did you have dinner with Mr. Talewsky and

Page 17

1  not to answer as attorney-client privileged

2  information.

3      Q.  How many times did you speak with

4  Mr. Talewsky about the CRT litigation?

5      A.  Not prior to last night.

6      Q.  Are you sure?

7      A.  Yup.  Because he's been in Vietnam.  I

8  haven't seen him.  We talk weekly business wise

9  because he -- he's traveled extensively.  He's been

10  an empty nester.  He's traveled extensively.  He's

11  had groups.  I've had groups.

12          My guys are younger so -- it's interesting.

13  Like I said, he just came back from Vietnam.  He did

14  China before that.  When he talks, it's basically on

15  travel, business.

16      Q.  So the first time you ever spoke to

17  Mr. Talewsky about the CRT litigation was last

18  night?  Is that your testimony?

19      A.  Yeah, pretty much.

20      Q.  And you understand you're under oath here,

21  that you're sworn to tell the truth.  Do you

22  understand that?

23      A.  Yes.

24      Q.  I'll represent to you Mr. Talewsky said you

25  all spoke at a minimum in September about CRT

Page 18

1  litigation, and he was under oath.  Was he wrong?

2           MS. MOORE:  I think that may misstate

3  the testimony from this morning, but you can answer

4  the question.

5       Q.  I think you can answer the question.

6       A.  We weren't even involved with it in

7  September.  That's the thing.  We didn't -- we're in

8  November now.  We didn't even --

9           MS. MOORE:  Just answer the question.

10      A.  I don't believe so.  I really don't believe

11  I talked to him in September about it.

12      Q.  When did you decide to file an objection?

13      A.  It was about a month ago.

14      Q.  Okay.  So if today's November 3rd,

15  somewhere around October 3rd --

16      A.  Yeah.

17      Q.  -- 2005 was when you first decided to file

18  an objection; is that correct?

19      A.  Yeah.  Yeah.  Because I know September's

20  not --

21           MS. MOORE:  No question pending.

22      Q.  So is it your testimony, then, other than

23  last night, you have never spoken to Mr. Talewsky

24  about the CRT litigation in any fashion?

25           MS. MOORE:  Asked and answered.  He

1      Q.  Do you know when your objection -- if there

2   was one even filed, do you know when that objection

3   was filed?

4      A.  I can't be accurate, no.

5      Q.  Well, to the best of your memory, do you

6   know?  I'm not asking for complete accuracy.

7      A.  A month ago.  I don't know.  Sorry.  I'll

8   speak up.

9      Q.  What do you hope to achieve from your

10   objection?

11      A.  Awareness.  Like I said, I wasn't too happy

12   with reliability of the product.  Personally, I

13   mean, I bought the stuff.  I mean, the Gateway ones

14   I got were brutal.  They were absolutely useless.  I

15   then got the Dell.  And, you know, it goes on.

16         So just that's the way I look at it.  Felt

17   I was violated with the stuff, you know.  I know all

18   the other stuff going on, but the product wasn't

19   that great.  They didn't stand up behind it.

20      Q.  So when you say "violated," you mean the

21   computers -- the monitors didn't work well?

22      A.  Yeah.  We had some that lasted, like, three

23   months.  I mean, it's like when you buy a vehicle, I

24   mean, these guys -- so, you know, that's part of the

25   things.  That's why I'm standing here.  Say I'm not

Page 26

```
 1    -- that's one of my concerns.

 2        Q.   Meaning your concern is the product didn't

 3    do what it was supposed to do?

 4        A.   Yeah.

 5        Q.   Do you have any understanding of what the

 6    plaintiffs claimed in the CRT litigation itself?

 7        A.   Yeah.

 8        Q.   What is your understanding?

 9        A.   Not -- I can't think.  Can I go back to

10    that question?

11        Q.   Sure.

12        A.   I just mentally have to just --

13             MS. MOORE:  It's okay.  You can relax.

14    Take a minute.  Breathe.  Relax.  You seem nervous.

15    Don't be nervous.  It's okay.

16        Q.   I'm not pushing you.  But I have to ask

17    these question, and you have to answer them.  So

18    let's try another question.

19        A.   Okay.

20        Q.   When you were on the Website -- you said

21    you went to the Website on a computer concerning CRT

22    litigation; is that right?

23        A.   Yeah.

24        Q.   And you read the material on the Website?

25        A.   Yeah.
```

1          Q.   In reading that material on the Website

2     concerning the CRT litigation, what was your

3     understanding as to what the plaintiffs allege that

4     defendants did wrong in this litigation?  "In this

5     litigation" meaning CRT litigation.

6          A.   One thing I did notice is they control the

7     market.   They -- I mean, Gateway got booted out.

8     Then Dell came in so that, you know -- this is what

9     I was looking at is the way these guys are gobbling

10    each other up.   They are all, on my standpoint --

11    again, I was frustrated with the reliability of the

12    product.   And I look at these guys who are making

13    money.   No one's standing behind the product, and

14    they look like guys that are just cornering the

15    market.

16         Q.   Was it your understanding that the CRT

17    litigation where you've made an objection in this

18    case had anything to do with the products not

19    working correctly?

20         A.   That was part of it, working.   Right.

21         Q.   When you say "part of it," is there any

22    other part of the litigation you're aware of?

23         A.   I'd say I just need a second to --

24         Q.   I'm not pushing.

25         A.   I know.   Just a phrase -- I'm trying to

Page 28

1   figure out how to phrase this.  I mean, I look -- in

2   the time period of that ten years, I watched Digital

3   become Compaq.  I see Dell, all these different

4   companies.  And they -- the way I look at it is that

5   two or three guys are controlling the entire market.

6           That's -- it bothered -- that bothered me.

7   And the reliability of the product, those are the

8   two things that really set me off.

9       Q.  And when you say "the two or three guys

10  controlling the market," your understanding of those

11  two three or guys were who?

12      A.  Like a Dell.  Compaq came in.  Then it

13  dropped.  So it's just, I guess, started -- that's

14  just the way I look at these -- the power guys that

15  are coming in.

16      Q.  So if I get back to the question I asked a

17  while ago when I asked "What do you hope to achieve

18  in this" -- "through your objection to this class

19  action settlement," you said "awareness."  What does

20  "awareness" mean?

21      A.  Obviously, this -- I'm not -- for the

22  consumers to see what's -- how these businesses have

23  behaved.  Compensation, I'm not looking -- I'm not

24  looking for, you know, as far as -- I'm just

25  looking, like, if anything, just recouping costs to

Page 29

1   travel to do this.  But I'm -- that's the way I'm

2   viewing it.

3           Way I define "awareness" is being a

4   spokesman.  Like Massachusetts has totally blocked

5   us out.  I mean, that was one of the things that

6   didn't make me happy.  So that's one of the reasons

7   I stepped up so -- for the state, which I don't --

8   well, I don't go through it.

9       Q.  In general terms, do you know what your

10  objections says or what arguments are made against

11  the class action settlement in CRT?

12      A.  Yeah.

13      Q.  What are they?

14      A.  As far as recouping the cost of these

15  products.  We have -- I probably bought -- I bought

16  probably at least a dozen, I mean, for the office.

17  And then I got, you know, at home got -- had a

18  couple and TVs.  They were pretty expensive when

19  they first came out too.  They weren't cheap.

20          I wasn't too happy with -- I'm going to

21  bring Gateway up again.  I wasn't too happy with

22  that.  Dell was a little bit better, but Gateway was

23  brutal.  That was absolutely --

24      Q.  All right.  So you hope to recoup the cost

25  of the monitors, CRT monitors, that you purchased.

Page 30

```
 1   Is that a fair statement?
 2        A.   Yes, that's it.
 3        Q.   And why do you think you're entitled to
 4   recoup that cost?
 5        A.   Because ethically, I didn't think the
 6   product was a fair -- I don't feel when you purchase
 7   something -- I don't feel it was a fair sale because
 8   the reliability and the life of a product should
 9   last more than -- I mean, some of this stuff lasted
10   less than a year.
11        Q.   So it wasn't a fair sale because the
12   product quit working --
13        A.   Yeah.
14        Q.   -- within a year --
15        A.   Yeah.
16        Q.   -- or shorter or longer?
17        A.   I define it -- I'll define it like buying a
18   vehicle, a car.  I mean, your car lasts for three
19   months, falls apart.  You've invested a substantial
20   amount of money.  Plus, it was detriment on my
21   business.  If I'm paying an employee to use a
22   computer that's not working, they're looking at the
23   ceiling.  I mean, all of a sudden, the monitors
24   would go out.
25        Q.   Did you contact Ms. Moore, or did she
```

```
                                           Page 31

 1    contact you about participating in this CRT
 2    litigation?
 3                MS. MOORE:  It's attorney-client
 4    privileged information.  He's an ongoing client.
 5    I'm going to instruct him not to answer.
 6        Q.  Are you going to follow your counsel's
 7    instruction?
 8        A.  Yes.
 9        Q.  Ms. Moore just said you're an ongoing
10    client.  Do you have any idea what that means?
11        A.  Yes.  We've had a relationship for the last
12    14, 15 years.
13        Q.  With regard to what?
14        A.  Travel related.
15        Q.  What does that mean?
16        A.  With -- we had the issue, like I said, with
17    the Delta.
18        Q.  Which was 14 or 15 years ago?
19        A.  I think ten years ago.
20        Q.  Ten years?
21        A.  Yeah.
22        Q.  Anything since then?
23        A.  We've just had -- there was -- we have
24    another issue pending as far as with a merger.
25        Q.  And what is that issue?
```

```
                                            Page 32
 1      A.   It's -- there's an issue with the latest
 2   merger with American and US Air.
 3      Q.   And that is still pending?
 4      A.   Yes.
 5      Q.   And is Ms. Moore your counsel in that?
 6      A.   She's part of it, yeah.
 7      Q.   Well, you testified earlier that Mr. Alioto
 8   was your counsel in the Delta, Northwest issue; is
 9   that --
10      A.   Yes.
11      Q.   -- right?  Is he your counsel in the
12   pending --
13      A.   Yes.
14      Q.   Okay.  And Ms. Moore is as well?
15      A.   She's not the lead.  But she's part, you
16   know, part of it.
17      Q.   It's a simple question.  Is she your
18   attorney in the -- in that merger litigation that is
19   currently ongoing?
20      A.   Joe Alioto's the lead.  I don't know how to
21   explain any better.  But that's how we've -- we've
22   been with Theresa.  But they're a team.  But Joe's
23   -- that's -- Joe tends to be the person I
24   communicate with.  I don't know how to answer any
25   straighter than that.
```

Page 1

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3            SAN FRANCISCO DIVISION

4

5

  IN RE:  CATHODE RAY TUBE (CRT)

6  ANTITRUST LITIGATION,

                          No. 3:07-cv-5944

7                          MDL NO. 1917

  This Document Relates to:

8  All Indirect Purchaser Actions

9

10

11  _____

12

13          DEPOSITION of DONNIE CLIFTON

14            San Diego, California

15         Wednesday, November 4, 2015

16

17

18

19

20

21

22  Reported by:

  Kae F. Gernandt

23  RPR, CSR No. 5342

24

25

1          Q.   Mr. Clifton, previously you testified you

2     approached Miss Westfall concerning your dissatisfaction

3     with the CRT settlement.  What, in particular in regards

4     to the CRT settlement, led you to be dissatisfied?

5          A.   Well, the first thing was the -- what I

6     consider to be the egregious amount of attorneys' fees

7     that --

8          MS. WESTFALL:  Take your hand away.

9          THE WITNESS:  -- that were being asked for.  And

10    as I read it, I saw that there were certain -- there's a

11    certain group of states that -- and again, I can't put

12    this in legal terms, but it looked to me like there were

13    a group of states that weren't going to be able to get

14    the monetary compensation, and another group of states

15    were.  And I thought that was odd because it looked like

16    a nationwide settlement.  And there was another group of

17    states that were grouped up somehow that were going to

18    benefit from the settlement.  California was one of

19    them.

20               And then I got to thinking about the

21    consumer protection laws, and I couldn't understand why

22    California would get consumer protection laws, be

23    grouped up with other states that weren't.  So, I

24    scratched my head on those.

25               But my main objection was I thought a third

Page 44

1    of -- I think it -- I can't remember, I think it was

2    $500 million, and a third of that for attorneys' fees,

3    to me, seemed outrageous.

4    BY MR. MUECKE:

5         Q.   Mr. Clifton, these concerns with the

6    settlement -- scratch that.

7              You had these concerns with the CRT

8    settlement prior to approaching Miss Westfall concerning

9    the CRT settlement; is that correct?

10        A.   Yes.  I read them.

11        Q.   Did you file anything documenting your

12   objection to the CRT indirect purchaser settlement?

13        A.   Yeah.  We -- I filed a -- what's it

14   called? -- an objection to the settlement.

15        Q.   Mr. Clifton, in your own words, why do you

16   believe you're an appropriate person to object to the

17   CRT indirect purchaser settlement?

18        A.    'Cause I'm a member of the class.  I bought

19   a TV.

20             MR. MUECKE:  Mark this as Exhibit 2, please.

21             (Deposition Exhibit 2 marked for

22   identification.)

23   BY MR. MUECKE:

24        Q.   Mr. Clifton, we have just handed you a

25   document entitled "Objection to Proposed Class Action

Page 54

1    those payments to the class members, yep.

2         Q.   Are you aware that Miss Westfall has

3    previously represented an objector in a different class

4    action case?

5         A.   I don't -- I am not aware of that, no.

6         Q.   Prior to Miss Westfall representing you in

7    your objection to the CRT litigation, you had no idea

8    that she had previously represented an objector in a

9    different class action case?

10        A.   That is exactly what I just stated.

11        Q.   Mr. Clifton, were you aware that

12   Miss Westfall withdrew an objection from a class action

13   case only a few weeks after it was initially filed?

14        A.   If I didn't know she was objecting, how

15   could I know she withdrew?  The answer to your question

16   is no.

17        MR. MUECKE:  I'm going to go off the record for

18   about ten minutes and review my notes and see if I can

19   wrap up here in the next session here.  Thank you.

20             (A brief recess was taken.)

21        MR. MUECKE:  We can go back on the record.

22             At this point, Mr. Clifton, I have no

23   further questions.  And at this time, I'll defer to

24   Miss Westfall if you had any.

25        MS. WESTFALL:  No, that's fine.  I think we'll

Page 1

1            UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3              SAN FRANCISCO DIVISION

4

5   IN RE: CATHODE RAY TUBE (CRT)  ) Case No. 3:07-cv-5944
    ANTITRUST LITIGATION,          ) MDL No. 1917
6                                  )
                                   )
7                                  )
                                   )
8   _____)

9

10

11          DEPOSITION OF MINA ASHKANNEJHAD

12   TAKEN ON BEHALF OF THE INDIRECT-PURCHASER PLAINTIFFS

13               AT MOSCOW, IDAHO

14          OCTOBER 29, 2015, AT 10:15 a.m.

15

16

17

18

19

    REPORTED BY:

20

    PATRICIA L. PULLO, CSR

21   Notary Public

22

23

24

25

```
                                            Page 17
```

1          Q.    Okay.  Did you reach out to Mr. Bonsignore or
2     did he reach out to you?
3          A.    He reached out to me.
4          Q.    And, again, that wasn't really a clear
5     question.  But Mr. Bonsignore reached out to you to
6     discuss objecting to the settlement?
7          A.    Yes.
8          Q.    In Exhibit 2 -- sorry -- Exhibit 1 on page 2,
9     the very bottom.
10         A.    Mm-hmm.
11         Q.    It says, "Both Ashkannejhad and Edwards have
12    indirectly purchased CRT products in Missouri."  Do you
13    see that at the very bottom.  It's the very last line.
14         A.    Okay.  Gotcha.
15         Q.    Did you purchase a CRT product in Missouri?
16         A.    Well, my husband did.  So we were married.
17         Q.    Yeah.  So your husband purchased a CRT
18    product in Missouri?
19         A.    Yes.
20         Q.    Do you recall in what year?
21         A.    I don't have any idea.
22         Q.    Do you recall what product it was?
23         A.    You know, I know he had, like, the TV and he
24    had the computer, the big screens.  Like, he had all
25    that stuff.  I don't have any idea.  He liked -- Deryl

1    was a shopper.  He liked to buy things.  And so he was

2    constantly buying all of the -- anything that would

3    come out he would buy.

4           Q.    Okay.  Do you know who manufactured the CRT

5    products that he purchased?

6           A.    I don't have any idea.

7           Q.    To the best of your recollection, it's a

8    television set?

9           A.    Well, I know he had one of the big old TVs.

10   And I know, like, in the office he had those big

11   monitors too.  So I would say both computer and TV.

12          Q.    Okay.  But you don't remember the

13   manufacturer of the television set?

14          A.    Right.

15          Q.    And you don't remember the manufacturer of

16   the monitor?

17          A.    I don't have any idea.

18          Q.    Okay.  And neither of those products exist

19   today -- strike that.

20                You don't possess either of those products

21   today, do you?

22          A.    No.  I've moved since --

23          Q.    Yeah.  Have you looked to see whether you

24   have any receipts for any of those products?

25          A.    I have looked.  And I've talked to the estate

```
 1    to look as well.  So it's in the works.  I haven't
 2    found anything yet, but I know they're working on it
 3    too.
 4        Q.   You haven't found any receipts in your
 5    personal -- your personal papers?
 6        A.   Not -- yeah.
 7        Q.   And, again, to the best of your recollection,
 8    you did not personally purchase any CRT product in
 9    Missouri?
10            MR. BONSIGNORE:  Objection.
11    Mischaracterization of her testimony.
12            THE WITNESS:  Do I answer?
13    BY MR. BIRKHAEUSER:
14        Q.   Yes.
15        A.   Okay.  Like I say, I don't think I went to
16    the store and bought that.  But we were married.  So if
17    Deryl bought something, you know, it's mine and vice
18    versa.
19        Q.   Right.  I just wanted to make sure there
20    weren't other CRT products that you purchased
21    individually.
22        A.   (Nodding.)
23        Q.   So we're just talking about the two, the
24    television set and the monitor?
25        A.   Yes.
```

```
                                        Page 21
 1        Q.    And it's your belief that those states should

 2   get damages?

 3        A.    Correct.

 4        Q.    Okay.  Do you remember looking -- strike

 5   that.

 6              Do you believe that you first looked at

 7   Exhibit 1 after it had already been filed with the

 8   court?

 9        A.    I don't know.  I don't know if it had been

10   filed or it was a draft.  I'm not sure.

11        Q.    Do you recall anybody telling you, I want you

12   to look at this; it was filed on the 8th of October,

13   2015?

14        A.    I don't know.  Sorry.

15        Q.    Do you recall ever being asked to look at

16   Exhibit 1 to see if it was correct before it was filed?

17        A.    I don't know.  I'm sorry.  I get -- I have --

18   there's all sorts of legal documents in my life right

19   now.  And I just assume that my lawyers are going to do

20   my -- what's in my best interest.

21        Q.    Sure.  And sometimes lawyers will send you

22   something and say, Hey, look, we're going to file --

23        A.    Take a look at this and -- yeah.  I don't

24   know.  I'm sorry.

25        Q.    That's okay.  I do have to ask the
```

Page 30

1   everyone in Missouri and, you know, states that were

2   excluded.  But I think she -- I want to make sure it's

3   clear.

4   BY MR. BIRKHAEUSER:

5       Q.   So my question really was more directed

6   towards your belief that your husband performed legal

7   work on the case, was an attorney representing somebody

8   in the CRT case.  Do you have -- and let me just back

9   up a minute.

10          Are you the executor of your husband's

11  estate?

12      A.   I am not.

13      Q.   Okay.  But obviously you're involved in -- in

14  the estate?

15      A.   I'm a beneficiary, yes.

16      Q.   You're a beneficiary of the estate.  And you

17  talk to lawyers about the estate?

18      A.   Yeah.  There's a bunch of lawyers involved.

19      Q.   And that's what you were referring to before

20  when you said you get stuff from lawyers a lot?

21      A.   Yes.

22      Q.   Do you expect that your husband will be --

23  your husband's estate will receive money in the form of

24  attorney's fees from the CRT litigation?

25      A.   I don't have -- I'm not sure what his

Page 1

1

2

3                UNITED STATES DISTRICT COURT

4              NORTHERN DISTRICT OF CALIFORNIA

5                 SAN FRANCISCO DIVISION

6                     NO. C-07-5944-SC

7                      MDL NO. 1917

8

9    ************************************

10   IN RE CATHODE RAY TUBE (CRT)

11   ANTITRUST LITIGATION

12

13   THIS DOCUMENT RELATES TO:

14   ALL INDIRECT PURCHASER ACTIONS

15   ************************************

16

17             Deposition of Anthony Giannasca

18              Tuesday, November 3, 2015

19         Zelle Hofmann Voelbel & Mason LLP

20           600 Worcester Road, Suite 101

21          Framingham, Massachusetts 01702

22          ------Kristen C. Krakofsky------

23                   Court Reporter

24                      VERITEXT

25                  (800) 227-8440

Page 26

1    filing a claim in the Honeywell case?

2        A.    No.

3        Q.    Have you ever filed an objection to any

4    class-action settlement in any case before this one?

5        A.    I don't believe so.

6        Q.    Do you know what this case is about?

7        A.    Yes.  Consumers' rights and price --

8        Q.    Generally describe it for me.

9        A.    Price fixings, basically ripping off a

10   consumer with price fixing.

11       Q.    When did you first learn about the case?

12       A.    I've been friends with Mr. Robert

13   Bonsignore for many years, and he had mentioned it to

14   me and I insisted to be included in this case.

15       Q.    How do you Mr. Bonsignore?

16       A.    I've known Mr. Bonsignore since 1990, many

17   years.

18       Q.    And how did you first meet Mr. Bonsignore?

19       A.    Through a mutual friend.

20       Q.    Who was that friend?

21       A.    An ex-girlfriend.

22       Q.    Do you remember her name?

23       A.    Trisha Morrissey.

24             MR. BONSIGNORE:  We'll never forget it.

25       A.    I still talk to her.  She's a good kid.

Page 27

```
 1        Q.   Do you and Mr. Bonsignore reside in the
 2   same town in Massachusetts?
 3        A.   We used to, yes.  He now is a big man, and
 4   he travels the world.  I'm stuck in Medford.
 5        Q.   And did Ms. Morrissey also reside in
 6   Medford at the time?
 7        A.   She did, yes.  Originally, yes.
 8        Q.   Has Mr. Bonsignore ever represented you in
 9   any legal action before?
10        A.   Yes.  I had a tenant issue a few years
11   back, and his office helped me out with that.
12        Q.   Any other matters?
13        A.   I don't recall, actually.
14        Q.   Did Mr. Bonsignore represent you in the
15   Honeywell case?
16        A.   Yes.
17        Q.   Do you know if -- is Mr. Bonsignore
18   representing you in this case, in the CRT case?
19        A.   Yes.
20        Q.   And is he representing you today in this
21   deposition?
22        A.   Yes.
23             MR. BONSIGNORE:  We've stipulated in
24   the last case to provide a copy of the retention --
25   the signed, executed retention agreement.  And
```