Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the
Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All Indirect Purchaser Actions | Master File No. CV-07-5944-JST<br><br>MDL No. 1917<br><br>**SUPPLEMENTAL DECLARATION OF RICHARD M. PEARL IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS TO CLASS REPRESENTATIVES**<br><br>Hearing Date: March 15, 2016<br>Time: 2:00 p.m.<br>Judge: Honorable Jon S. Tigar<br>Court: Courtroom 9, 19th Floor<br>Before: Special Master Martin Quinn, JAMS |

## SUPPLEMENTAL DECLARATION OF RICHARD M. PEARL

I, Richard M. Pearl, do hereby declare:

1. This declaration supplements my previous declaration filed in this matter on September 23, 2015 (Doc. No. 4071-15). Its purpose is to address certain statements made in the Objection of Class Member Douglas W. St. John to IPP Motion for Award of Attorneys' Fees and Conditional Objection to Settlement (Dkt No. 4106) in opposition to Indirect Purchaser Counsel's ("IPP Counsel") motion for an award of reasonable attorney's fees. If called as a witness, I could and would competently testify based on my personal knowledge to the facts stated below.

2. Mr. St. John expresses various objections pertaining to my September 23 declaration (Pearl 9/23/15 Decl.), claiming that it is not sufficient evidence of the reasonableness of the attorneys' fees requested by IPP Counsel in this matter. Each of his objections pertaining to my declaration lacks merit. (St. John's other objections will be addressed separately by IPP Counsel)

### I. My Expertise on the Fee Issues Presented Here Is Well-Recognized and Soundly Based

3. Most fundamentally, Mr. St. John questions my expertise to opine on factual issues pertaining to the reasonableness of attorneys' fees. Obj. at 19, fn. 7. This assertion is baseless:

- My September 23 declaration fully set forth the bases for my expertise on these matters. As noted: "More than 90% of my practice is devoted to issues involving court-awarded attorneys' fees. I have been counsel in over **190** attorneys' fee applications in state and federal courts, primarily representing other attorneys. I also have briefed and argued more than **40** appeals, at least 25 of which have involved attorneys' fees issues." Pearl 9/23/15 Decl., ¶ 4. For virtually every one of these cases – and my practice has been much the same for the past 25 years or so -- I must be aware of the hourly rates charged by the attorneys, the hours they have spent, the risks they have taken, etc., as well as the facts asserted by the fee opponent.

- Similarly, my expert opinion on the reasonableness of attorneys' fees has been recognized and adopted in more than 20 reported decisions, as well as countless unreported trial court decisions. Pearl 9/23/15 Decl., ¶¶ 8 -9.

- Indeed, as noted my opinions on hourly rates and risk multiplier were specifically cited and followed by Special Master Quinn in the recent *LCD* fee award on the same topics testified to here. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, MDL No. 1827 (N.D. Cal. 2013), Report and Recommendation of Special Master re Motions for Attorneys' Fees, filed Nov. 9, 2012, Dkt. No. 7127 ("*LCD R&R*"), at pp. 14, 17.  Those findings were then adopted by the Court.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827, MDL No. 1827, 2013 U.S.Dist. LEXIS 49885 (N.D. Cal. 2013).  Although my opinion was not specifically cited as to the court's other findings in the *LCD* case (*i.e.,* reasonable hours, appropriate percentage), the court's findings were perfectly consistent with my opinion.

- Similarly, my opinion on hourly rates was expressly relied on by Judge William H. Alsup in a case cited by Objector, *Gutierrez v. Wells Fargo National Bank, N.A.*, No. 07-cv-05923-WHA, 2015 U.S.Dist.LEXIS 67298 at *14 (N.D. Cal. 2015).

- As my September 23 declaration also explained (¶ 7), I have consulted with and been retained by numerous government entities on their fee applications, including the states of California and Vermont.

- I also have testified in person about the reasonableness of fees in court or in arbitrations on more than a dozen occasions.

As far as I can recall, my qualification to testify as an expert on the reasonableness of attorneys' fees has never been rejected.

**II.     My Opinion That a 33.3% Fee Is Reasonable Is Well-Supported.**

4.      Mr. St. John also asserts that my opinion that a 33.3% fee is reasonable here conflicts with studies showing that in megafund cases, the percentages tend to decrease below the 25% benchmark, citing Judge Koh's recent fee award in *In re High-Tech Employees Antitrust*

*Litigation*, 2015 U.S.Dist.LEXIS 118052 (N.D. Cal. 2015) ("*High-Tech*").  That objection also is fallacious:

- As numerous studies, commentaries, and cases explain, including Judge Koh's decision in *High-Tech*, the ultimate goal of choosing a method for determining common fund fees is to ensure that the fees are reasonable and that they do not result in "windfalls" to the attorneys in light of the hours they have spent. See *High Tech*, 2015 U.S.Dist.LEXIS 118052 at *23.  To that end, courts rely on cross-checking any percentage fee sought against the reasonable lodestar to determine if the percentage fee is reasonable in that particular case.  *Ibid.*

- Because the reasonableness of the percentage used will depend in part on the lodestar in the particular case, the studies, commentaries, and cases all confirm that there is no rule that automatically reduces the proper percentage-based fee in so-called megafund cases simply because other megafund cases use lower percentages. Indeed, the Ninth Circuit has expressly rejected Objector's argument. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (rejecting rule cited by Objector, holding that determination of percentage must depend not just on fund size but on "all the circumstances"). *See also, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d at 284 n.55 ("Th[e] position [that the percentage of a recovery devoted to attorneys' fees should decrease as the size of the overall settlement or recovery increases] . . . has been criticized by respected courts and commentators, who contend that such a fee scale often gives counsel an incentive to settle cases too early and too cheaply." [bracketed text in original]); *Newberg on Class Actions,* §15:80 (5th ed.).   Mr. St. John's failure to even cite *Vizcaino* is to me a quite telling indication that his objection is invalid.

- Mr. St. John fails to recognize that the reason percentage fees tend to be lower in megafund cases is that the lodestars in those cases tend to be a smaller percentage of the recovery – *i.e.,* generally, securing a $500 million recovery doesn't take 50 times more hours than securing a $10 million recovery.   As a result, the multiplier

- 3 -

generated in the lodestar cross-check may be significantly higher in such cases, leading courts to reduce the percentage to bring the multiplier down to a reasonable number. See, e.g., Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008*, 7 J. EMPIRICAL LEGAL STUD. 248 (2010) at 273-74 (finding "a strong negative correlation between the lodestar multiplier . . . and the percentage fee awarded").

- Indeed, that is precisely what happened in *High-Tech.* The 19.5% fee sought by the plaintiffs would have resulted in a 4.8 multiplier; the court found that such a high multiplier was unjustified in that case and would have resulted in a windfall to the attorneys. 2015 U.S.Dist.LEXIS 118052 at * 28. Accordingly, the percentage was reduced to 10.5% because that would result in a multiplier of only 2.2 – 2.5, which the court expressly found was well within the range of multipliers approved in other megafund cases. *Id.* at *41-42, citing *Vizcaino.* Here, of course, IPP Counsel's 33.3% fee equates to a multiplier of only 2.3.

- The same circumstances explain the holding in another case cited by St. John, *Gutierrez v. Wells Fargo Bank,* 2015 U.S.Dist.LEXIS 67298. In *Gutierrez,* plaintiffs' counsel sought a 25% fee from a $203 million fund. That fee, however, would have resulted in a lodestar multiplier of 10.38. *Id.* at *12-13. For that reason, the court choose to use the lodestar method, awarding plaintiffs' principal counsel their full lodestar, including rates up to $975 per hour, plus a 5.5 multiplier. *Id.* at *22-23. As a *cross-check*, the court noted that the fee amounted to only 9% of the fund. *Id.* at *25. However, that percentage was not chosen because it was a "megafund" case. Rather, it was simply confirmation that the lodestar-based fee, including a 5.5 multiplier, was reasonable. As such, it primarily reflected the fact that it took a relatively low number of hours in comparison to the size of the fund to win the case, as well as the limited scope of the class. *Id.* at *27-28. Here, of course, the multiplier is only 2.3 and unlike *Gutierrez,* the scope of the class is immense.

- *In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp. 2d 752 (S.D. Ohio 2007), cited by Objector, also is illustrative. There, plaintiffs requested 24.167% of a $600 million settlement fund, equating to a multiplier of 7.89. The Court rejected this as excessive and awarded 18% ($108 million) equating to a multiplier of 5.9, even though the case lasted for less than 3 years and the court found that counsel faced less risk because they "piggybacked" on the SEC action. *Id.* at 766-68.

- My opinion also is supported by the fee award in the *LCD* case. In that case, the Court awarded the indirect purchasers and the State Attorney Generals 30% of the $1.082 billion settlement fund, amounting to a multiplier of 2.4 (current rates) and 2.6 (historical rates) of private counsel's lodestar. All of the case complexities and risks that Special Master Quinn found supported the 30% fee award in *LCD II* are present here, and as IPPs have explained, were even greater here. *See* Alioto Fee Decl. I ¶¶ 5-8; 99. These additional complexities and risks justify the one-third fee request here.

- My opinion that a 33.3% fee is reasonable here, based on the factors set out in my declaration (Pearl 9/23/15 Decl., ¶¶ 10- 26), as well as lodestar cross-check showing that the 33.3% fee would result in no more than a 2.3 multiplier of IPP Counsel's historical rates (*id.,* ¶¶ 11-45), is firmly grounded in both the relevant standards and the facts. I stand by that opinion.

### III. My Observation That The Number of Hours Appears Reasonable Is Well-Supported.

5. Mr. St. John also questions my opinion (Pearl 9/23/15 Decl., ¶ 38) that for purposes of the lodestar cross-check, the number of hours expended by IPP Counsel "appears to be in the ballpark for a case of this broad scope, extreme complexity, and long duration, and therefore reasonable." Obj. at 19. He claims that: a) my opinion is not probative because I have never personally managed a large complex class action; and b) other cases involved fewer hours. *Id.* Neither objection has merit.

6. First, although I *have* managed large class actions (*see*, *e.g.*, *California Employment Dev. Dept. v. Superior Court,* 30 Cal.3d 256 (1981)), my expertise and relevant

experience is far broader than that. As an attorneys' fee specialist for the past 30 years or so, I have reviewed and testified in numerous cases of comparable complexity, including the fee requests in the *LCD* case and similar class actions against Microsoft, RJ Reynolds, Pacific Bell, and other large companies and/or government entities. From that work, I have a solid basis for opining that the number of hours claimed here is reasonable.[1]

7. Second, the cases St. John cites are hardly comparable. *In re High-Tech,* 2015 U.S.Dist.LEXIS 118052, for example, was not an indirect purchaser case, was actively litigated for less than four years against only seven domestic defendants, and involved current facts and no foreign language issues. The instant case involved 48 defendants from around the world sued under the laws of 22 states, with many documents and witnesses in other languages and many others no longer available because of the litigation's timing. Likewise, *In re Currency Conversion Antitrust Litig.,* 263 F.R.D. 110 (S.D.N.Y. 2009) involved only domestic defendants and no foreign language issues. It also settled before summary judgment and was not an indirect purchaser case involving numerous class representatives and differing state laws.

8. The far more apt comparator is the *LCD* litigation which involved similar numbers and types of defendants, similar translation issues, and numerous other similar complexities. In the *LCD* case, the court found as part of its lodestar cross-check that plaintiffs' counsel had reasonably expended at least 313,000 hours. *See LCD R&R*, p. 10. The instant case involves 41% fewer hours – 183,000 here vs. 313,000 in *LCD* – and the case was litigated for two years longer than *LCD*. It also results in a lower lodestar multiplier -- 2.3 here as opposed to 2.6 in *LCD*. Again, I stand by my opinion.

## IV. IPP Counsel's Hourly Rates Are Not "Premium" Rates.

9. Mr. St. John claims that my testimony supporting counsels' hourly rates is based on a comparison of counsels' rates to the rates charged by "the nation's premier white shoe law

---

[1] It also bears noting that my opinion pertains to the number of hours in the context of a cross-check to the requested percentage-based fee. In those circumstances, the review of hours is not as demanding or rigorous as it might be in a case based solely on the lodestar-method. See, *e.g., In re Rite Aid Corp. Sec. Litig.* (3rd Cir. 2005) 396 F.3d 294, 306-307.

firms" and that those rates are only paid for cases that achieve "extraordinary results in exceptionally complex cases." Objs. at 20. Again, that objection lacks merit.

10. Initially, the fact is that counsel here *did* achieve an extraordinary result in an exceptionally complex case, in a case where many of the defendants were represented by the very white shoe law firms St. John presumably is referring to (e.g. Gibson, Dunn & Crutcher, LLP; White & Case, LLP; Sheppard Mullin Richter & Hampton, LLP; Baker Botts, LLP; and Winston & Strawn, LLP). There is no reason IPP Counsel should recover any lower rates than these firms charge. *See, e.g.*, *Davis v. City & County of San Francisco,* 976 F.2d 1536, 1545 (9th Cir. 1992) ("rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity"), *affirming in relevant part*, *United States v. City & County of San Francisco*, 748 F.Supp. 1416, 1431 (N.D. Cal. 1990) (class action attorneys "entitled to value their rates at the same level as corporate attorneys of equal caliber.")

11. Second, IPP Counsel's rates are generally significantly *lower* than the large firm rates. For example, IPP Counsel's lead attorney, Mario Alioto, is currently billing $875 per hour. Moreover, Mr. Alioto's time is billed here at historical rates ranging from $750 to $875. At large firms like Cooley or Gibson Dunn, his hourly rate would be at least $975 per hour and as high as $1,125. *See* Pearl 9/23/15 Decl., ¶ 34. Other law firms included in IPP Counsel's joint fee motion also are charging considerably lower rates than "big firm" rates, with only a few individual attorneys billing above $800 per hour   In fact, the average hourly rate is only $457.67.

12. Third, my September 23 declaration (¶ 34) compares IPP Counsel's billing rates charged by many smaller sized law firms, including Altshuler Berzon LLP, The Arns Law Firm LLP, Burson & Fisher, and several others.

13. IPP Counsel's rate also compare favorably to the rates the court, citing my declaration, recently found reasonable in *Gutierrez v. Wells Fargo Bank, N.A..,  See* 2015 U.S.Dist.LEXIS 67298 at *14-15 (approving billing rates for partners ranging from $475 to $975; $300 to $490 for associates; and $150 to $430 for support staff, and applying 5.5 multiplier to those rates). Those rates were then cited and followed in *In re High-Tech. Employees,* 2015 U.S.

Dist. LEXIS 118052 at *33-34 (approving billing rates for partners ranging from $490 to $975; $310 to $800 for associates, with most below $500; and $190 to $430 for support staff, with most in the $300 range, and applying a 2.2 multiplier to those rates).

## V. Counsel's Billing for Contract Attorneys Is Consistent with the Legal Marketplace and California Law

14. Mr. St. John also objects to counsel billing the work of contract attorneys at associate rates. Obj. at 21-22. That objection too is unfounded.

15. In my experience, virtually every law firm I know of bills the work of contract attorneys at *market* rates – *i.e.*, the rates charged for attorneys of comparable experience, and expertise for comparable work. That is the applicable standard here. *See Blum v Stenson*, 465 US 886, 895 n. 11 (1984).

16. Moreover, that practice is perfectly legal and ethical. *See Shaffer v. Superior Court,* 33 Cal. App. 4th 993 (1995). Indeed, Rule 4-200(B) of the California Rules of Professional sets out eleven relevant factors for determining whether a lawyer's fee is conscionable: none of them refer, directly or indirectly, to the firm's costs or more specifically, to the cost of hiring associates, contract attorneys, or other billers.

17. IPP Counsel's practice also is consistent with both federal and California law, which proscribe rate determinations based on the cost of providing services. *See Blum v Stenson, supra; Serrano v. Unruh,* 32 Cal.3d 621, 643 (1982) (rejecting cost-based method for calculating rates of public interest attorneys); *PLCM v. Drexler Group, Inc.* (same re in-house counsel); *Copeland v. Marshall,* 641 F.2d 880, 894 (D.C. Cir. 1980); *Dennis v. Chang,* 611 F.2d 1302 (9th Cir. 1980). *See generally* Pearl, *California Attorney Fee Awards, 3d. Ed.* (Cal. Cont. Ed. Bar 2010, 2015 Supp.), §9.103, p. 9-91. The cases St. John cites for a rule limiting contract attorney rates are New York cases, and thus inapplicable here. Other federal authorities are contrary. *See, e.g., In re Tyco Int'l, Ltd., supra; In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 783 (S.D. Tex. 2008) *Carlson v. Xerox Corp.,* 596 F. Supp. 2d 400, 409-410 (D. Conn. 2009). The two local examples Objector cites, *Banas v. Volcano Corp.,* 47 F.Supp.3d 957 (N.D. Cal. 2014) and *Apple, Inc. v. Samsumg Elec. Co.,* 2012 U.S.Dist. LEXIS 16068, only indicate that

there is a range of rates charged; that some attorneys choose to bill contract attorneys at "cost" or at a discounted rate does not mean that the rates requested here are not "in line with" the *range* of rates charged by local attorneys for similar services. In my experience and opinion, the rates requested here are well within that range.

## VI. My Opinion That IPP Counsel's Hours Are Adequately Documented Is Well-Supported.

18. In my opinion, the time summaries filed here, which are based on contemporaneous time records and records reconstructed from the files, are perfectly adequate. They readily identify "the general subject matter of [counsel's] time expenditures." *See, e.g., Fischer v. SJB-P.D. Inc.* (9th Cir. 2001) 214 F.3d 1111, 1121, citing *Hensley v. Eckerhart* (1983) 461 U.S. 424, 437. And, as noted, they are consistent with the documentation previously approved by the federal courts. *See, e.g.*, *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *In re Rite Aid Corp. Sec. Litig.*, *supra,* 396 F.3d at 306-07 (3d Cir. 2005). *See also Lobatz v. U.S. W. Cellular of California, Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000) (affirming denial of "request for discovery of class counsel's contemporaneous time records").

19. This approach is consistent with my own experience. In my experience, such time summaries by category, rather than individual time entries, are more useful for evaluating the reasonableness of time spent on a case rather than having to examine many individual, day-by-day time entries describing work performed.

## VII. Counsel's Risk Multiplier Is Consistent with the Legal Marketplace.

20. Lastly, Objector also asserts that a multiplier should be denied because IPP Counsel supposedly are claiming high hourly rates. Objs. at 20-21. As demonstrated in Section IV *infra*, that assertion is false. It also fails to account, *inter alia,* for the contingent risk IPP Counsel took in handling this case entirely on a contingent fee basis. The factual basis for my opinion is set out in my September 23 declaration (at ¶¶ 19-20), and more importantly, in the declarations and arguments of IPP Counsel.

21. As a legal matter, Objector simply ignores the fundamental economic premise that underlies risk multipliers. That analysis was thoroughly explored by the California Supreme

Court in *Ketchum v. Moses,* 24 Cal.4th 1122 (2001), and *Graham v. DaimlerChrysler Corp.,* 34 Cal.4th 553, 579 (2004), and is equally applicable here. There, the California Supreme Court recognized that the purpose of a lodestar multiplier is to "fix a fee at the fair market value for the particular action." *Graham,* 34 Cal.4th at 579. The "unadorned lodestar reflects the general local hourly rate for a *fee-bearing case*; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider." *Ketchum,* 24 Cal.4th at 1138 (emphasis in original).

22.     *Ketchum* and *Graham* both recognize that lodestar multipliers are essential to the purposes of fee-shifting statutes: "'A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.'" *Ketchum,* 24 Cal.4th at 1133. Because they reflect market value, lodestar enhancements are not a "bonus" or "windfall"; they are "*earned compensation.*" *Id.*

23.     The hourly rates IPP Counsel have requested here are based on the *non-contingent* rates charged by comparably qualified attorneys for comparably complex work. They represent the rates that would be paid if IPP Counsel's attorneys had had, as Defendants' attorneys had, clients willing and able to pay their market rates. The fact that any fee recovery was contingent on significant success has no bearing on those rates, except to illustrate the necessity to provide additional compensation to attorneys willing to take the risk that IPP Counsel took here.

24.     Contingent risk is the most common and important lodestar enhancement factor. *See Graham,* 34 Cal.4th at 579. It alone would justify a multiplier of at least 2.0. *See Cazares v. Saenz,* 208 Cal.App.3d 279, 288 (1989) ("in theory, a contingent fee in a case with a 50 percent chance of success should be twice the amount of a noncontingent fee for the same case"). In fact, many other cases apply significantly *higher* multipliers, based largely on contingent risk. *See, e.g.*, *Vizcaino,* 290 F.3d at 1051 (affirming $27 million fee award that equaled multiplier of 3.65 and listing 24 other cases, most with multipliers of 1.5 – 3.0); *Gutierrez v. Wells Fargo Bank N.A., supra,* 2015 U.S.Dist.LEXIS 67298, at *23 (applying 5.5 multiplier to lead counsel's lodestar and 2.2 multiplier to replaced counsel's, despite dissatisfaction with its performance); *Craft v County*

*of San Bernardino,* 624 F.Supp.2d 1113, 1125 (C.D. Cal. 2008) (finding 25 percent of fund recovered -- constituting 5.2 multiplier -- reasonable).

      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 6th day of November, 2015, in Berkeley, California.

                                      ___*/s/ Richard M. Pearl*____
                                          Richard M. Pearl

SUPP. DECL. OF RICHARD M. PEARL ISO IPP'S REPLY RE MOT. FOR ATTORNEY'S FEES, REIMBURSEMENT OF LITIG. EXPENSES, AND INCENTIVE AWARDS – MASTER FILE NO. CV-07-5944-JST