George W. Cochran
1385 Russell Drive
Streetsboro, Ohio 44241
Telephone: 330.607.2187
Facsimile: 330.230.6136
lawchrist@gmail.com

Attorney for Class Member/
Objector Josie Saik

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | ) <br> ) Master File No. CV-07-5944-SC <br> ) MDL No. 1917 |

**OBJECTOR SAIK'S RESPONSE TO 01/28/16 REPORT AND RECOMMENDATION OF SPECIAL MASTER REGARDING SETTLEMENTS WITH CERTAIN DEFENDANTS AND FEE AWARDS TO CLASS COUNSEL**

Indirect Purchaser Class Member/Objector Josie Saik ("Saik") hereby timely responds to the Special Master's report and recommendations regarding the proposed settlements with certain Defendants and fee awards to class counsel.

**I.     Saik's Challenge To Adequacy Of Representation Based On The Irreparable Conflict Of Interest Between Class Counsel And Absent Members Created By The Settlement's Fee Structure Has Not Been Addressed.**

Saik's first objection highlighted the attorney fee provision as a key component of the settlements' fundamental fairness. *Staton v. Boeing Co.,* 327 F.3d 938, 963 (9th Cir. 2003). In light of the potential conflict between class counsel and class members once an agreement is signed, the court must insure the fee will not frustrate the settlement's overall fairness. *Bowen v. SouthTrust Bank of Alabama*, 760 F.Supp. 889 (M.D.Ala. 1991). This fiduciary duty includes the obligation to explore the manner in

1

which fees are paid and the <u>framework's</u> fundamental fairness to the class. *Foster v. Boise-Cascade, Inc.*, S.D.Tex.1976, 420 F.Supp. 674, 680, affirmed 577 F.2d 335, rehearing denied 581 F.2d 267; *Strong v. BellSouth Telecomm., Inc.,* 137 F.3d 844, 849–50 (5th Cir. 1998). In *Staton v. Boeing Co.,* 327 F.3d 938, 964 (9th Cir.2003)*,* the court articulated the important rationale behind this inquiry:

> There is no exception in Rule 23(e) for fees provisions contained in proposed class action settlement agreements. Thus, to avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement.

It follows that a stipulated fee structure's impact on fundamental fairness must be examined as an *integral part* of the court's evaluation of the proposed settlement. As noted in the 2003 Note to Rule 23(h):

> In cases in which settlement approval is contemplated under Rule 23(e), notice of class counsel's fee motion should be combined with notice of the proposed settlement ***.

The importance of timely review is underscored by the court's inability to modify any term once a settlement is finalized. *Evans v. Jeff D.,* 475 U.S. at 726–27, 106 S.Ct. at 1537. This judicial impotence specifically precludes altering the parties' stipulated structure for determining fees after blessing the Agreement. *Id*. The U.S. Supreme Court explained why:

> Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but *** does not authorize the court to require the parties to accept a settlement to which they have not agreed ***. The District Court could not enforce the settlement on the merits and award attorney's fees any more than it could, in a situation in which the attorney had negotiated a large fee at the expense of the plaintiff class, preserve the fee award and order greater relief on the merits.

Id. As a result, judicial review is limited to approving or rejecting the whole package. 3B *Moore's Federal Practice* at ¶ 23.80[4] (2d ed. 1987). The proposed settlement on behalf of the IPP class undermines this important aspect of judicial scrutiny. Section E of Philip's Settlement Agreement establishes the parties' rights and obligations regarding the settlement fund. Paragraph 22 asserts that: "Plaintiffs' counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses." Paragraph 23 adds that Defendants will not oppose awarding class counsel a fee equal to one-third of the fund. The same paragraph expressly releases Defendants from any further obligation to pay class counsel's fee for representing the class. However, in what can only be described as a drafter's "slight of hand", the parties then attempt to <u>shield</u> the foregoing stipulation from the Court's evaluation of the <u>settlement's</u> fairness:

> The procedure for and the allowance or disallowance by the Court of the application by Class Counsel for attorneys' fees, costs and expenses to be paid out of the Settlement Fund **are not part of this Agreement**, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement. (emphasis added)

This legal fiction defies both logic and law. While attorneys' fees may be awarded in a certified class action where so authorized by the parties' agreement, courts have an independent obligation to ensure that the award—like the settlement itself—is reasonable, even if the parties have already agreed to an amount. *See* Fed.R.Civ.P. 23(h); *Staton v. Boeing Co.,* 327 F.3d 938, 963-64 (9th Cir.2003); *Knisley v. Network Assoc.,* 312 F.3d 1123, 1125 (9th Cir.2002); *Zucker v. Occidental Petroleum Corp.,* 192 F.3d 1323, 1328-29 & n. 20 (9th Cir.1999). In *Bluetooth*, the Ninth Circuit affirmed the

importance of evaluating class counsel's fee request <u>within the context</u> of the settlement's overall fairness:

> Approval of the settlement agreement was not conditioned on the award of attorneys' fees and costs or an incentive award, and therefore our vacatur of the fee award does not necessitate invalidation of the approval order. *See, e.g., Rodriguez,* 563 F.3d at 969 (affirming approval of the settlement but reversing and remanding the award of attorneys' fees). Nonetheless, because the parties expressly negotiated a possibly unreasonable amount of fees, and because the district court did not take this possibility into account in reviewing the settlement's fairness the first time around, we must vacate and remand the Approval Order as well, so that the court may appropriately factor this into its Rule 23(e) analysis.
>
> * * *
>
> Furthermore, that a provision is severable does not render it irrelevant to the overall reasonableness of the agreement, for " [i]t is the settlement *taken as a whole, rather than the individual component parts,* that must be examined for overall fairness.... The settlement must stand or fall *in its entirety.* " *Hanlon,* 150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.,* 688 F.2d 615, 628 (9th Cir.1982)).

*In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935 (9th Cir. 2011). Given the inverse relationship between the attorney's fees and the class award, absent members have a strong incentive to litigate the reasonableness and fairness of fees as a reflection of the settlement's fairness. *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir. 2000). This divergence creates the danger that "lawyers might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red carpet treatment for fees." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991). Fee arrangements that implicate this concern require close judicial scrutiny. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 216, 224 (2d Cir. 1987); *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 307 (3d Cir. 2005).

When a district court fails to consider the effect of a conflict on the fee award, it abuses its discretion. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).

In the present case, the attempt to immunize IPP's fee provision from the Court's analysis of the settlement's overall fairness has triggered an incurable conflict of interest that destroys class counsel's adequacy of representation. By placing their own financial interest ahead of the class' right to a fair settlement, class counsel breached the most basic fiduciary duty owed to absent members: exclusive loyalty. Nonetheless, the Special Master's Report fails even to *mention*—much less *address*—Saik's objection in his brief discussion of adequate representation. (See Report & Recommendations, at 52). Because this Court has no power to eliminate paragraph 23 from the parties' agreement, it has no choice but to reject the entire settlement for this fatal flaw.

## II. The Special Master's Recommended Fee Award Does Not Adequately Address The Megafund Principle Or Class Counsel's Purported Lodestar.

The Special Master's 30% fee award clearly applies the Ninth Circuit's 25% benchmark for *ordinary* settlements to a *megafund* settlement without properly scrutinizing class counsels' purported lodestar. It has long been recognized that fee awards should be reduced when class funds exceed $100 million so *class members* benefit from the resulting economies of scale—not class counsel. *See In re Synthroid Marketing Litig.*, 325 F.3d 974, 980 (7th Circuit 2003)("*Synthroid II*").

The case law supports Objector's position. In *Wal–Mart Stores v. Visa U.S.A., Inc.,* (approving district court's fees award of 6.5%), the world's largest retailer led a class of approximately five million merchants challenging the practices of Visa U.S.A. and MasterCard International as illegal tying arrangements and anti-competitive practices

under the Sherman Act, 15 U.S.C. §§ 1, 2. The plaintiff's class sought billions of dollars in damages. *Wal–Mart,* 396 F.3d at 101. The Second Circuit affirmed the district court's fee award, agreeing that the *Goldberger*[1] factors "compel[led] an 'extraordinary' fee under [the] circumstances" in the case, which the court explained were:

> . . . lead counsel devoted tremendous time and labor to this case for seven years; antitrust cases, by their nature, are highly complex; this case was especially large and complicated, involving almost every U.S. bank and more than five million U.S. merchants; the risk of the litigation was very high; lead counsel devoted 52% of its legal staff to work on a case that spanned seven years without any guarantee of recovery; plaintiffs' counsel achieved extraordinary results; plaintiffs' counsel did not have the benefit of "piggybacking" off of a previous case-instead, the Government piggybacked off of plaintiffs' counsel's work by using it in *Government's Membership Rules;* even a very large fee award would be a small percentage of the settlement fund; and the Settlement produced "significant and lasting benefits for America's merchants and consumers."

*Wal-Mart,* at 396 F.3d at 122, (quoting *In re Visa Check/Mastermoney Antitrust Litigation*, 297 F. Supp.2d 503, 523-24 (E.D.N.Y. 2003)). Nonetheless, "[a]sserting its jealous regard for absent class members, the [district] court sought to compensate plaintiffs' counsel handsomely and at the same time limit the percentage of the award so that plaintiffs' counsel would not receive a windfall detrimental to the class":

> Were the Fund not so large, dwarfing the funds in all of the cases Lead Counsel have cited, a larger percentage might be appropriate. But given the circumstances as they are, my award is appropriate. Only in comparison to the amount sought can it be considered anything but generous.

*Wal-Mart,* 396 F.3d at 122, quoting *Visa Check III*, 297 F. Supp.2d at 525 (footnote omitted). Given the very large size of the fund in question, and "recognizing that economies of scale could cause windfalls in common fund cases," the district court

---

[1] *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

reduced the requested fee percentage from 18.5% to 6%. *Id*. The Second Circuit agreed, explaining that:

> While courts in megafund cases often award higher percentages of class funds as fees than the district court awarded in this instance [internal citation omitted] the sheer size of the instant fund makes a smaller percentage appropriate. * * * [T]he district court's decision in favor of protecting the instant class from an excessive fee award militates against awarding attorneys' fees based purely on economic incentives.

*Id*. at 123. Furthermore, the Second Circuit could not imagine the reduction in fee would be a disincentive to other attorneys to pursue such claims. *Id*. It referred to the district court's pithy comment that:

> "If [this fee award] amounts to punishment, I am confident there will be many attempts to self-inflict similar punishment in future cases." We agree.

*Id*. Applying the same percentage recovery protocol to the present case would lead to a similar result. The chasm between 6.5% and 30% of fund fees in two complex anti-trust cases is too wide not to bend even the tolerance level afforded by the abuse of discretion standard. Professor Fitzpatrick's empirical study of megafund settlements bolsters Objector's position. In cases involving common funds "from $500 million to $1 billion" in 2006 and 2007, Fitzpatrick found that "the mean and median awards were both 12.9%" of the fund. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp.2d at 1033 (citing Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical Legal Stud. 811, 839 (2010)). "Where the common fund is worth many millions or even billions of dollars—in so-called 'megafund' cases—an appropriate fee may be considerably less than twenty percent of the fund [where] courts most stringently

weigh the economics of scale inherent in class actions in fixing an appropriate per cent recovery for reasonable fees." *In re Domestic Air Transp. Antitrust Litig*., 148 F.R.D. 297, 351 (N.D.Ga.1993). The point is that Civil Rule 23 promotes not only opportunities *for*—but efficiency *in*—class representation. While the size of the present fee request may create an incentive for other litigators to follow, it violates other policy considerations designed to protect absent class members.

Courts police fee awards to assure that the mere size of the class action does not create a fee, whether termed windfall or not, that is based more on the arbitrary size of the class or the recovery, than on the efforts of counsel. *See Goldberger,* 209 F.3d at 52 ("Obviously, it is not ten times as difficult to prepare, and try or settle a 10 million dollar case as it is to try a 1 million dollar case." (internal quotation omitted)); *In re Prudential Ins. Co.*, 148 F.3d 283, 339 (reducing percentage of fee due to size of fund, explaining "the basis for this inverse relationship is the belief in many instances the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel.").

While Saik readily acknowledges a fee reduction is not mandated in every megafund case, neither is a court's formulaic approval based on a token percentage or lodestar cross-check. *See, e.g., Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990) (district courts may consider unusual circumstances that would "indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."); *see also Vizcaino*, 290 F.3d at 1047 (fund size may make 25% benchmark rate "inappropriate … starting point for analysis … in some cases.")

In cases where the Ninth Circuit has addressed larger fee awards in class action matters, it has never treated even the 25% baseline as a foregone conclusion. Its seminal analysis of class action fees demonstrates that no hard-and-fast rule makes sense in a mega-fund setting. *In re Bluetooth Headset Products Liability Lit.*, 654 F.3d 935, 942-43 (9th Cir. 2011). Though courts have discretion to choose which calculation method to use, their discretion must be exercised to achieve a reasonable result. *See, In re Coordinated Pretrial Proceedings,* 109 F.3d 602, 607 (9th Cir. 1997) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig,* 19 F.3d 1291, 1294–95 n. 2 (9th Cir. 1994)); *Six Mexican Workers,* 904 F.2d at 1311; *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions,* 148 F.3d 283, 339 (3d Cir. 1998) (explaining that basis for inverse relationship between size of fund and percentage awarded for fees is that "in many instances the increase in recovery is merely a factor of the size of the class and has no direct relationship to the efforts of counsel" (internal quotation marks omitted)).

In *Washington Public Power Supply Litigation*, 19 F.3d 1291 (9th Cir. 1994), one of the Ninth Circuit's large-fund formative decisions, the Court stated:

> We agree with the district court that there is no necessary correlation between any particular percentage and a reasonable fee. With a fund this large, picking a percentage without reference to all the circumstances, including the size of the fund, would be like picking a number out of the air. * * * Because a court must consider the fund's size in light of the circumstances of the particular case, we agree with the district court that the 25 percent 'benchmark' is of little assistance in a case such as this.

19 F.3d at 1297 (considering fee request representing 13.6% or $103 million of a $687 million settlement fund). The Court went on to consider the arbitrariness of settling upon a benchmark award in a large case where the legal work, though presumptively

excellent, might return a considerably larger fee simply because the bond issue in question there was double the size: "Plainly, a fee of $200 million for the same effort by counsel with the same level of skill would be a windfall rather than a reasonable fee. In sum, the district court was correct that there is nothing inherently reasonable about an award of 13.6 percent of a fund regardless of its size." 19 F.3d at 1298.

Similarly telling is the Ninth Circuit's oft-cited decision in *Vizcaino*, 290 F.3d at 1047, in which it made clear that in cases of great magnitude "fund size is one relevant circumstance to which courts must refer . . ." And that, "the 25% benchmark rate, although a starting point for analysis may be inappropriate in some cases." *Id.* at 1050 n.4 (affirming a $27 million fee award representing 28% of the settlement fund of $97 million supported by several factors including that the "award was within the range of fees awarded in settlements of comparable size.")

Neither does the Special Master's lodestar cross-check relieve the tension. If anything, his cursory review of the numerous objections to class counsel's submitted time and expenses calls for *greater* scrutiny before it can offset the exorbitant percentage of recovery he has recommended. In the end, the greater weight of relevant authority leaves little doubt that a 30% fee award in the present case is patently unreasonable and excessive. Finally, Saik joins in and incorporates by reference all other responses to the Report and Recommendations filed or submitted by any other objectors in the above-referenced matter that are not inconsistent with Saik's original objection.

## CONCLUSION

For the foregoing reasons, this Court should REJECT the proposed settlement due to an inherent conflict of interest regarding the fee provision and/or REDUCE class counsel's fee award to a reasonable range between 17% (the common benchmark for mega-fund settlements) and 25% (the Ninth Circuit's 25% published benchmark for ordinary settlements).

Respectfully Submitted,

DATE:  February 9, 2016        /s/ George W. Cochran
                               George W. Cochran
                               1385 Russell Drive
                               Streetsboro, Ohio 44241
                               Telephone: 330.607.2187
                               Facsimile: 330.230.6136
                               lawchrist@gmail.com

                               Attorney for Class Member/
                               Objector Josie Saik


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed via CM/ECF on February 9, 2016 and as a result has been served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                               By: /s/ George W. Cochran
                                   George W. Cochran