Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the*
*Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-JST; No. CV-13-03234-JST |
| | MDL No. 1917 |
| This Document Relates to: | **CLASS ACTION** |
| All Indirect Purchaser Actions | **INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO OBJECTOR DOUGLAS ST. JOHN'S OBJECTION TO REPORT AND RECOMMENDATION RE: OUTSTANDING MOTIONS** |
| | Judge:  Hon. Jon S. Tigar<br>Special Master: Martin Quinn |

**INTRODUCTION**

Objector Douglas W. St. John ("St. John") asks the Court to reject the Special Master's Report and Recommendation regarding outstanding motions based on a misguided interpretation of the Special Master's powers and responsibilities, an imaginative revisiting of procedural history, and a desire to suppress evidence he considers unhelpful to his cause. The Special Master acted well within the discretion granted him by Fed. R. Civ. P. 53(f)(5) when he requested the supplemental briefing and evidence St. John continues to challenge. Further, St. John's suggestion that such supplemental briefing was integral to the Special Master's Report and Recommendation regarding a fee award is belied by the record. St. John's procedural maneuvering must be rejected.

**BACKGROUND**

On September 23, 2015, IPP Counsel moved for an award of attorneys' fees. *See* Dkt. No. 4071. On October 8, 2015, St. John filed an objection to IPP Counsel's request. *See* Dkt. No. 4106. As part of that objection, St. John argued that the Samsung and Philips settlement amounts were both disproportionately large and attributable to factors other than the efforts of IPP Counsel, namely Samsung's guilty plea, the factual findings by the European Commission ("EC") regarding Philips, and the holding in *Vichi v. Koninklijke Philips Elecs., 85 A.3d 725 (Del. Ch. 2014)*. *Id.* at 11-12.

On November 20, 2015, IPP Counsel lodged with the Special Master their Reply Re: Motion for Fees (the "Fee Reply") and a supporting declaration by Mario N. Alioto. (*See* Dkt. Nos. 4363 and 4373.) IPP Counsel provided a detailed response explaining why the guilty plea, the EC Decision, and the *Vichi* case did not play a significant role in this litigation. (*See* Fee Reply at 9-14.) IPPs also addressed St. John's objection about the purported "disproportionate contributions" of Samsung and Philips to the settlement fund, explaining that their market shares increased significantly when various Defendants exited the CRT business and/or formed joint ventures in the early 2000's.[1] *See* Fee Reply at 14, n. 31.

As IPP Counsel further explained:

---

[1] IPPs noted that Philips and LG formed a CRT joint venture in 2001 called LG.Philips Displays ("LPD"), and that IPPs held Philips responsible for LPD's market share. *Id.*

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO OBJECTOR DOUGLAS ST. JOHN'S OBJECTION TO REPORT AND RECOMMENDATION RE: OUTSTANDING MOTIONS
- Master File No. CV-07-5944-JST

> As a result of this market consolidation, Samsung SDI's overall CRT market share in 2004 was 29%, and LPD's (for which IPPs held Philips responsible) was 27%. Their shares of the CDT market were even higher: 42% (SDI) and 32% (LPD). In addition, each held even higher shares of the U.S. CRT market and, unlike some of the other defendants, IPPs had strong evidence of their conspiratorial activities here in the U.S. The settlement amounts paid by Samsung SDI and Philips are entirely consistent with their market shares and the liability evidence.  Alioto Fee Decl. II ¶ 6.

*Id.*

On December 9, 2015, St. John filed a reply brief in support of his objection, arguing for the first time that the disproportionate size of the Samsung and Philips settlements, compared to the market shares held by Samsung and Philips in 2000, showed that the settlements with *other Defendants* were inadequate.  *See* December 9, 2015 Reply in Support of Objection, Dkt. No. 4369-4 ("St. John Reply") at 11.[2]  He also challenged the statements made in the Alioto Fee Declaration regarding the market share and liability evidence against Samsung and Philips/LPD as not being in "Mr. Alioto's personal knowledge."  *Id.* at 10.

IPPs sought permission to file a reply in support of final approval of the settlements to address new arguments raised by various objectors.  (*See* Dkt. No. 4367 at 11.)  On December 14, 2015, the Special Master ordered IPPs to provide a "further Response" to specifically address, among other things, St. John's argument on "the disproportionate size of the Samsung and Phillips [sic] settlements."  *See* December 14, 2015 Special Master's Order at 2 (Dkt. No. 4367 at 13).

On December 23, 2015, IPPs complied with the Special Master's Order and filed a reply in support of final approval, along with a supporting declaration and exhibits containing evidence of Samsung's and Philips/LPD's increasing market shares post-2000 (in fact, their combined market share was 60%-70% or more for a significant part of class period), their lead roles in the conspiracy, and the strength of the FTAIA evidence against them, all of which refuted St. John's new argument.[3] The majority of these documents and testimony were already in the record and the remaining

---

[2] St. John's original objection (Dkt. No. 4106) addressed IPPs' fee request only.  It did not address the adequacy of the settlements.

[3] *See* Dkt. No. 4369-10 (Dec. 23, 2015 Reply Re: Final Approval of Class Settlements at 16-18 (the "IPP Reply")), and Dkt. No. 4369-11 (Declaration of Mario N. Alioto In Support of IPP Reply ("Alioto Settl. Decl.")) (filed under seal).

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO OBJECTOR DOUGLAS ST. JOHN'S OBJECTION TO
REPORT AND RECOMMENDATION RE: OUTSTANDING MOTIONS
- Master File No. CV-07-5944-JST

1    exhibits merely provided support for the averments by Lead Counsel in support of IPP Counsel's

2    request for attorneys' fees.[4]

3            On January 4, 2016, St. John moved to strike what he deemed to be "new" evidence in the

4    IPP Reply.[5]  IPPs opposed the motion.  *See* Dkt. No. 4369-16.

5            On January 21, 2016, the Special Master denied the motion to strike on the grounds that it

6    was within his discretion to request a further submission from Lead Counsel in response to issues

7    "raised for the first time" or discussed "far more thoroughly than . . . in their original Objections."

8    *See* Jan. 21, 2016 Special Master's Corrected Report and Recommendation Re: Outstanding Motions

9    ("R&R Re: Outstanding Motions").

10           On January 28, 2016, the Special Master issued his Report and Recommendation ("R&R")

11   on final approval and fees.  *See* Dkt. No. 4351.  The Special Master rejected St. John's argument that

12   the Samsung and Philips settlements were disproportionate to the size of their market shares, and

13   that the other settlements were inadequate.  *See id.* at 24.  Although he cited to the IPP Reply in his

14   discussion evaluating the fairness of the settlements with the other Defendants, he did not

15   specifically refer to the evidence submitted with the IPP Reply.  *Id.*

16           On February 4, 2016, St. John objected to the R&R Re: Outstanding Motions.  *See* Dkt. No.

17   4369 ("Obj.").  He argues that the Special Master abused his discretion in denying the motion to

18   strike, and permitting IPPs to respond to new arguments raised in St. John's Reply with evidence—

19   even though that evidence is indisputably relevant to evaluating St. John's objections to the fairness

20   of the settlements and the requested attorneys' fees.  He asks the Court to reject the R&R Re:

21   Outstanding Motions and grant his motion to strike sur-reply evidence.

22                                        <u>ARGUMENT</u>

23   **I.      STANDARD OF REVIEW**

24           The standard of review applicable to the Special Master's ruling is abuse of discretion.

25   Pursuant to Fed. R. Civ. P. 53, this Court appointed Special Master Quinn to adjudicate a number of

---

27   [4] *See further,* Indirect Purchaser Plaintiffs' Opposition to Motion to Strike Sur-Reply Evidence (Dkt. No. 4369-16) ("MTS Opp."), at 5.

28   *See* St. John Motion to Strike Sur-Reply Evidence (Dkt. No. 4369-15).

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO OBJECTOR DOUGLAS ST. JOHN'S OBJECTION TO
REPORT AND RECOMMENDATION RE: OUTSTANDING MOTIONS
- Master File No. CV-07-5944-JST

matters, including the fairness of the proposed settlements and the amount and reasonableness of the

aggregate attorneys' fee award.  (Dkt. No. 4077 at 2:24-3:6).  Under Rule Fed. R. Civ. P. 53(f)—

specifically incorporated by the Court in its order appointing the Special Master—the Court "may set

aside a master's ruling on a procedural matter only for an abuse of discretion."  Fed. R. Civ. P.

53(f)(5)).

St. John's objection relates to a procedural matter, and St. John concedes as much.  *See* Obj.

at 3&4 (arguing that the Special Master "abused his discretion"); *see also* R&R Re: Outstanding

Motions at 1 ("The issue here is whether the Special Master has the discretion to request further

briefing on certain issues and to cut off briefing after that.").

## II.      THE SPECIAL MASTER DID NOT ABUSE HIS DISCRETION

### A.      The Evidence St. John Challenges Responds to the New Argument St. John Made in His Reply Brief

St. John asserted for the first time in his reply that the "disproportionate size" of the Samsung

and Philips settlements vis-à-vis their market shares raises doubts about the *fairness and adequacy of*

*the settlements,* not just the appropriateness of the attorneys' fee.[6]  He also expanded upon his

argument with the inclusion of a table comparing the IPP and DPP settlements.  *See* St. John Reply

at 10.  Further, St. John challenged the competence of Lead Counsel's declaration regarding

Samsung and Philips' increasing market shares and these defendants' lead roles in the conspiracy,

and submitted new deposition testimony in support of his challenge to Lead Counsel's declaration.

*See id.* at 10-11.[7]

---

[6] *Compare* St. John's original objection (Dkt. No. 4106) at 11-12 (directed only at IPP Counsel's fee request), *with* St. John's Reply (Dkt. No. 4369-4) at 9-11, (attacking the settlements).  *See id.* at 11 ("Absent explanation, wildly different settlements raise doubts as to the fairness of the smaller settlements.").  This was an about-face for Mr. St. John.  At his November 2, 2015 deposition, St. John testified that other than the size of the fee request, he had no objection to the settlements.  *See* Dkt. No. 4370-2 (Additional Declaration of Robert J. Gralewski In Support of Indirect Purchaser Plaintiffs' Motion for Final Approval of Class Action Settlements, Appendix O).

[7] Contrary to St. John's claims, IPP Counsel did not concede that the evidence was proffered only in response to St. John "highlighting IPP Counsel's evidentiary failure." Obj. at 1. IPPs argued, as they do here, that the evidence was submitted at the request of the Special Master following his determination that St. John had made new arguments on reply.  *See* MTS Opp. at 2-3.

1    The Special Master found that St. John's Reply "raise[s] for the first time a few issues and

2    discuss[es] issues previously mentioned far more thoroughly than [he] did in [his] original

3    Objections"; and he concluded that "his Report will benefit from obtaining Lead Counsel's further

4    views on certain issues." December 14, 2015 Order (Dkt. No. 4367 at 13).  The Special Master then

5    expressly ordered that "Lead Counsel *shall file* a further Response" on the newly-raised issues,

6    including "the disproportionate size of the Samsung and Phillips settlements (section C of the St.

7    John brief)." *Id.* at 2 (emphasis added).[8]

8    St. John now seeks to suppress the very evidence that he demanded.  Significantly, he does

9    not attempt to provide countervailing evidence of his own; rather he seeks to prevent consideration

10   of evidence fatal to his arguments.  Given the new and expanded arguments in St. John's Reply, the

11   Special Master acted well within his discretion when he determined that IPPs were entitled to

12   respond.

13   **B.  The Special Master Properly Requested, and Considered, the Supplemental Evidence Presented by IPPs**

14

15   It is well within the Special Master's discretion to request additional briefing or evidence,

16   particularly where, as here, St. John presented a new argument in his Reply.

17   First, the Court's Order appointing the Special Master provided him with the authority to

18   take any evidence deemed necessary and to oversee the motion practice before him.  *See* Order

19   Appointing Special Master, Dkt. No. 4077-1 at 5:9-12 ("In connection with his duties, the Special

20   Master is authorized to employ such processes, and to request such evidence and information, in

21   whatever form is appropriate, as will contribute to a fair and efficient resolution of such issues.").

22   St. John has cited no Ninth Circuit law barring the consideration of responsive evidence that is

23   submitted at the request of a special master.[9]

24   ───────────────

25   [8] The alternative would have been for the Special Master to "not consider" the issues that St. John

26   and others improperly raised in reply, as St. John's own authorities provide.  *See* Obj. at 3, citing

     *Banga v. First USA NA*, 29 F. Supp. 3d 1270, 1276 (N.D. Cal. 2014) ("If a party raises a new

27   argument or presents new evidence in a reply brief, a court may consider these matters *only* if the

     adverse party is given an opportunity to respond.") (Emphasis added??]).

28   [9] St. John's citation to *In re Mercury Interactive Corp. Secs. Litig.* is inapposite.  The issue in that

     case was whether the "district court erred in setting the objection deadline for class members on a

1    Second, the Court has an "independent obligation" to ensure that a settlement is fair and an

2    attorneys' fee award reasonable.  *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941

3    (9th Cir. 2011).  This independent obligation supports the Special Master's consideration of all

4    relevant evidence.  *See Allen v. Bedolla*, 787 F.3d 1218, 1223-24 (9th Cir. 2015) (finding that, as a

5    fiduciary for the class, the Special Master must "explore[] comprehensively all factors, and must

6    give a reasoned response to all non-frivolous objections"); *Clayton v. Knight Transportation*, No.

7    1:11–cv–00735–SAB, 2014 WL 1154098, at *5 (E.D. Cal. March 12, 2014) ("consider[ing] the

8    totality of the circumstances in the award of attorney fees").  The Special Master's request for

9    additional information was well within these bounds.

10   St. John does not dispute these propositions.  Instead, he argues that the Special Master's

11   independent obligation (and accompanying discretion) permits the consideration of supplemental

12   evidence only if it benefits the class, as opposed to IPP Counsel.  *See* Obj. at 6-7. Aside from the

13   absurdity of allowing evidence only if it supports one particular point of view, St. John's argument

14   exhibits two major flaws.

15   To begin, the Special Master used the evidence primarily to determine whether the

16   settlements were fair to the class—not to help justify Class Counsel's fees.  For example, while the

17   Special Master referred to the market share evidence in the section of the R&R addressing attorneys'

18   fees, he actually relied upon it to justify the fairness of the settlements.[10]  He did *not* cite the market

19   share evidence in rejecting St. John's argument that the fee should be reduced because the Samsung

20

21

---

22   date before the deadline for lead counsel to file their fee motion."  618 F.3d 988, 993 (9th Cir. 2010).
     The court held that a notice procedure is inadequate if "by the time [class members] were served

23   with the motion, the time within which they were required to file their objections had already

24   expired."  *Id.*  That is plainly not the case here.  There is no dispute that St. John had more than
     ample time to respond to Lead Counsel's comprehensive fee motion, which of course led to the issue

25   at bar.  Thus, there is no support for St. John's assertion that evidence related to market share should

26   have been included in Lead Counsel's initial brief in anticipation of a later challenge to the fee
     request.

27   [10] *See* R&R at 58-59 ("There is no evidence that, because whopping settlements were obtained
     against two defendants, Class Counsel sold out the class by agreeing to lowball settlements with the

28   others.")

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO OBJECTOR DOUGLAS ST. JOHN'S OBJECTION TO
REPORT AND RECOMMENDATION RE: OUTSTANDING MOTIONS
- Master File No. CV-07-5944-JST

1    and Philips settlements were attributable to factors other than IPP Counsel's contributions. *See id.*

2    57-58.

3           Further, in a common fund case, the class benefits when counsel's fee is fair and reasonable.

4    Contrary to St. John's insinuations, the Special Master's obligation to the class does not require him

5    to consider only evidence tending to undermine counsel's fee application.  Rather, the law requires

6    that the Court and the Special Master exercise their powers to ensure that the fee award is

7    reasonable. *See Vizcaino v. Microsoft Corporation*, 290 F.3d at 1048 (court must examine "all of the

8    circumstances of the case" in determining fees' reasonableness).  The Special Master cannot know

9    how such evidence will bear on the fee determination until *after* it is reviewed.  Given the Special

10   Master's independent obligation to ensure that the fee was reasonable, it was not an abuse of

11   discretion for him to consider this evidence when evaluating the fee request.

12          Finally, St. John tries to sidestep the Special Master's ruling by arguing that he is not

13   challenging the Special Master's right to solicit supplemental *argument*, but rather the right to solicit

14   supplemental *evidence*.  This is a distinction without a difference.  The Special Master had discretion

15   to consider supplemental argument *and* evidence, especially since St. John had raised new

16   arguments and had directly challenged the evidentiary underpinnings supporting Lead Counsel's

17   declaration.

18          **C.     Much of the "New" Evidence St. John Challenges was Already in the Record**

19          Much of the evidence St. John challenges was already in the record through counsel

20   declarations in support of class certification, oppositions to motion to dismiss and summary

21   judgment, expert reports, and Defendants' submissions. *See further,* MTS Opp. at 5.

22          IPPs also provided detailed market share information in their Fee Reply and the Alioto

23   Declaration in support thereof.  *See* Alioto Fee Decl. ¶ 6 (Dkt. No. 4373-1) ("As a result of this

24   market consolidation, Samsung SDI's overall CRT market share in 2004 was 29%, and LPD's (for

25   which IPPs held Philips responsible) was 27%. Their shares of the CDT market were even higher:

26   42% (SDI) and 32% (LPD). In addition, each held even higher shares of the U.S. CRT

27

28

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO OBJECTOR DOUGLAS ST. JOHN'S OBJECTION TO
REPORT AND RECOMMENDATION RE: OUTSTANDING MOTIONS
- Master File No. CV-07-5944-JST

1    market . . .").[11]  The market share evidence supplied with IPPs' supplemental response merely

2    provided backup for these averments by Lead Counsel.  *See, e.g.,* Alioto Settl. Decl., ¶¶ 2-3, Exs. 1-2

3    (Dkt. No. 4369-11).  Thus, IPPs advanced no "new" arguments or evidence, and the Special Master

4    was entitled to consider all such information in the record.[12]

5    **D.    The Special Master Properly Refused to Strike Foreign-Language Exhibits**

6    St. John makes much ado about some foreign-language documents in the supplemental

7    submission by Lead Counsel.  But he cannot show prejudice.  The market share figures evidenced in

8    the documents were already in the record (*see* Section C, *supra*), and the relevant parts of the

9    documents (charts and graphs showing Samsung and Philips/LPD's market shares) were in English

10   and use Arabic numerals, so they could easily be read and understood.  IPPs also directed the reader

11   to the relevant part of the documents.  *See, e.g.,* Alioto Settl. Decl. ¶ 2 (Dkt. No. 4369-11) (directing

12   the reader to Slide 10 of the PowerPoint presentation in Exhibit 2, which contains the relevant

13   market share data; Slide 10 states, *in English*: "CRT Total & CPT: M/S No. 1 in Y2004," and

14   contains two graphs showing market share data for Samsung SDI and Philips/LPD for the years

15   2000-2004).

16   Moreover, the strict time constraints and cost considerations inherent in the briefing and

17   review process at this stage of the case made it impractical for IPPs to seek certified translations of

18   the documents.  *See, e.g.,* November 28, 2015 Special Master's Order re Motion to Compel Lead

19

20   [11] St. John does not dispute that the Special Master and the Court are entitled to rely upon the
     experience and views of Lead Counsel in evaluating the evidence in support of a settlement. "In

21   evaluating a proposed settlement, the Court may—indeed ought to—consider the views of class
     counsel in light of his experience." *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 932 (E.D. Mich.

22   2007) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (listing "the experience
     and views of counsel" among the factors the court is to consider)). In addition, "the degree of

23   deference afforded counsel should correspond to the amount of discovery completed and the
     character of the evidence uncovered." *Id.* (internal quotes omitted). *See also Nat'l Rural Telecomms.*

24   *Coop. v. DIRECTV Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the
     recommendation of counsel, who are most closely acquainted with the facts of the underlying

25   litigation.").

26   [12] Nor is the fact that IPP Counsel did not present entire court record in support of their initial fee
     motion evidence of "attorney hand-waiving" [sic], as St. John claims.  *See* Obj. at 5, n. 3.  The

27   suggestion that IPP Counsel should have submitted their expert report and numerous other
     voluminous filings containing highly confidential, sealed evidence in support of their fee motion is

28   ludicrous.

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO OBJECTOR DOUGLAS ST. JOHN'S OBJECTION TO
REPORT AND RECOMMENDATION RE: OUTSTANDING MOTIONS
- Master File No. CV-07-5944-JST

Counsel to Produce IPP Counsels' Time-and-Expense Reports, Dkt. No. 4211 ("This process in which the Special Master is evaluating a large fee request has been given a tight schedule by the Court, and there simply is not time for normal motion and meet-and-confer practice.").

Finally, IPPs offered to provide translations of the documents at the request of the Special Master.  *See* Alioto Decl. in Support of Supplemental Response, at 2, n. 1.  No such request was made by the Special Master, indicating that he was able to review and understand the documents without translations.

### E.    St. John Had the Opportunity to Address the New Evidence at the January 5, 2016 Hearing and Will Have the Opportunity to Address it in Future Filings

St. John had the opportunity to address the claimed "new" evidence presented in the IPP Reply at the hearing before the Special Master on January 5, 2016.  He concedes that Lead Counsel filed and served the IPP Reply on December 23, 2015, more than 12 days before the January 5 hearing.  *See* Obj. at 2.  With ample time to prepare, St. John had his chance to discuss or respond to these issues at the hearing.  He chose not to do so. He should not now be heard to complain on the grounds that he did not have an opportunity to respond.

Further, as a result of the unique procedure here—where the motions for final approval and attorneys' fees were presented first to the Special Master and now will be reviewed *de novo* by the Court—objectors are getting a third opportunity to present their objections to the Court.  Thus, St. John could simply respond to the evidence in the IPP Reply along with his objections to the R&R on final approval and fees, due February 12, 2016.  The fact that he instead chooses to engage in procedural maneuvering, to prevent the Court from considering the complete evidentiary context of the settlements, indicates that he cannot rebut the evidence on the merits.

### F.  Any Error In Any Event Would Be Harmless

Although it is irrefutable that Special Master Quinn acted well within his discretion in reviewing the contested evidence, even if he had erred, such error would be harmless.  *See Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1159 (9th Cir. 2010) (error deemed harmless where the same result would have been reached regardless of whether the evidence was admitted).

1      St. John's arguments lack merit, regardless of any considerations about Samsung's and

2    Philips' market shares.  Indeed, the Special Master made no mention of either company's market

3    share in finding that the settlements' value was attributable to IPP Counsel's work rather than

4    Samsung SDI's guilty plea or the EC's findings.  *See* R&R at 57-58 ("[t]o suggest that the Samsung

5    guilty plea meaningfully detracts from the quality of IPP counsel's efforts to produce the settlement

6    is ludicrous"; *id.* at 58 ("[i]t is the height of Monday-morning quarterbacking, not sound legal

7    analysis or common sense, for St. John to suggest that IPPs' result was generated in a meaningful

8    way by [the guilty plea or the EC's findings] as opposed to counsel's eight-year sustained efforts.").

9      Given that the Special Master did not rely upon the market shares of either company when

10   unequivocally finding that the large settlement amounts should be attributed to IPP Counsel's work,

11   there is little room to conclude that the Special Master would have reached a different result if he

12   had struck the market share evidence provided in the IPP Reply.  As discussed above, the Special

13   Master could independently rely upon the averment by Lead Counsel.  *See* n. 11, *supra*.

### CONCLUSION

15     Based on the foregoing, IPPs respectfully request that the Court adopt the Report and

16   Recommendation and overrule St. John's Objection.

Dated:  February 11, 2016

                                   Respectfully submitted,

                                    */s/ Mario N. Alioto*

                                   Mario N. Alioto (56433)
                                   malioto@tatp.com
                                   Joseph M. Patane (72202)
                                   jpatane@tatp.com
                                   Lauren C. Capurro (241151)
                                   laurenrussell@tatp.com
                                   TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
                                   2280 Union Street
                                   San Francisco, CA 94123
                                   Telephone: 415-563-7200
                                   Facsimile: 415-346-0679

                                   *Lead Counsel for Indirect Purchaser Plaintiffs*