Jan L. Westfall (SBN 241106)
29896 Blue Water Way
Menifee, CA 92584
Tel: 619-940-2880
Email: jlwestfall.esq@gmail.com

*Attorney for Objector Donnie G. Clifton*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>―――――――――――――――<br>This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | Master File No. CV-07-5944-JST<br><br>MDL No. 1917<br><br>**OBJECTOR DONNIE CLIFTON'S OBJECTION TO REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE MOTIONS (1) APPROVE SETTLEMENTS, (2) AWARD OF ATTORNEYS' FEES**<br><br>Hearing: 2 P.M., March 15, 2015<br>Judge: Hon. Jon S. Tigar<br>Courtroom 9, 19th Floor<br>Special Master: Martin Quinn, JAMS |

Objector Donnie Clifton confirms and restates his objections to the proposed settlement

as stated in his Objection to Proposed Class Action Settlement (Dkt. No. 4099) and in his Reply

to Opposition to Objections (filed December 9, 2015 with the Special Master through the JAMS

electronic filing system, and subsequently filed with this Court by class counsel as Dkt. 4367,

pages 1-10),  as if fully set forth herein (subject to the exception and qualifications noted herein

and in the Reply).   In addition, Clifton responds specifically to the Special Master's Report as
follows:

## INTRODUCTION

Charged with fairly and objectively evaluating the settlement and request for attorneys'
fees, Special Master Quinn compares Class Counsel's role in securing this "extraordinary"
settlement to General Eisenhower's success in Normandy.

> Lead Counsel need not be Clarence Darrow reborn. . . . Lead Counsel must instead
> embody General Eisenhower who succeeded at Normandy because he could shape the
> disparate American, English, French and other forces and huge egos into a cohesive force
> with a common objective. *The evidence is overwhelming that Lead Counsel pulled this
> off*. (emphasis added)

Dkt. 4351, page 70.  The suggestion that Lead Counsel Mario Alioto's success in leading
this litigation is at all analogous to General Eisenhower's in World War II is profoundly
troubling, indicating a distorted view of class action litigation in general, not to mention the
success achieved through this litigation.  The very hollow "common objective" here—a few
dollars for some class members and nothing for many, plus, don't forget, a huge paycheck for
class counsel—highlights the absurdity of the analogy.  Moreover, the analogy is particularly
inappropriate given the dissension within the group of firms representing the settlement classes,
as evidenced by the presence of the "disgruntled 'insider objectors'." Dkt. 4370.  One wonders
what might have happened if, for example, instead of landing on Juno Beach (the second most
heavily defended beach on D-Day, next to Omaha), the Canadian forces – who were the only
forces to meet their D-Day goals – had withdrawn from the Allied Forces and actively opposed
the invasion?  Suffice it to say, Alioto's success at marshalling forces in pursuit of a common
objective pales in comparison to the shared commitment of Allied Forces under General
Eisenhower.  The analogy highlights what should be painfully obvious, that in most respects

OBJECTION TO REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE MOTIONS (1)
APPROVE SETTLEMENTS, (2) AWARD OF ATTORNEYS' FEES
(Master File No. CV-07-5944-JST)

Special Master Quinn is extremely deferential to class counsel and gives the settlement a presumption of fairness that is not warranted.

### A.  THE STRUCTURE OF THE SETTLEMENT IS UNFAIR, AND THE PROCEDURAL SAFEGUARDS OF RULE 23 WERE NOT OBSERVED

Clifton's Objection and Reply focused chiefly on the structural unfairness of the settlement and his objection to the attorneys' fees.  Structurally, this settlement provides a classic example of the sort of fundamental intra-class conflict that renders certification of settlement classes improper, and approval of a settlement unfair.

Clifton pointed out that the legal rights and remedies of class members from different states differ substantially and prevent certification of the settlement classes.  He noted that if the individual states had been adequately represented, this would have been reflected in the structure of the settlement.  The Special Master criticizes Clifton's objection by saying "The problem with Clifton's objection is that this approach was expressly rejected in *Sullivan*, 67 F. 3d. at 327-28. (*Citing Sullivan v. DB Investments, Inc*., 66 F. 3d 273 (3rd Cir. 2011).  Respectfully, the problem with *this* analysis, is that *Sullivan* is not binding in the Ninth Circuit.  Moreover, the contentious background to the Third Circuit's decision in *Sullivan*, including the earlier Third Circuit opinion that was eventually overturned, *Sullivan v. DB Investments, Inc*., 613 F.3d 134 (2010), indicates this is hardly an area where the law is settled.  In addition, the Special Master only makes reference to Clifton's initial Objection, and does not respond to the additional briefing Clifton provided on this issue in his December 9, 2015 Reply.  Dkt. 4367, pages 4-5.

Should this Circuit determine *Sullivan* is binding or authoritative, the failure to include non-repealer states in the damages class was also an error – for in *Sullivan* the indirect purchaser damages class included consumers located throughout the United States, not just those residing

in or making their purchases in repealer states.  The approach in *Sullivan* supports objectors'

claim in the instant case that it would be unfair to release claims of purchasers in the non-

repealer states for no compensation.  That is not what happened in *Sullivan*.

The Special Master also misleadingly claims "Clifton. . . does not dispute that every class

representative was represented by counsel whose adequacy he does not challenge."  Dkt. 4351,

page 60.  Again, the Special Master misrepresents the record.  Not only did Clifton claim the

representation of repealer states was inadequate, he also pointed out that prior to settlement,

residents of non-repealer states received <u>no</u> representation at all.  Clifton's Reply, filed

December 9, 2015, quoted class counsel's acknowledgement that he only represented purchasers

in 22 states:  "Lead Counsel was appointed to represent the interests of purchasers in the 22

indirect purchaser state classes. He has no duty to represent purchasers in other states . . . "

Reply, Dkt. 4367, page 3, quoting Motion for Final Approval, Dkt. 4370, page 50 (fn. 71).  In his

later filed Motion Re: Appointment of Co-Lead Counsel for Indirect-Puchaser Plaintiffs with

Claims in Non-Repealer States, filed on December 11, 2015, Objector Francis Scarpulla pointed

out the very same admission.  Dkt. 4241, page 4.  (Although we agree with Mr. Scarpulla that

lead counsel essentially abandoned consumers in the non-repealer states , and at the very least

did not adequately represent them, we also agree with the Court's determination that *ex post*

*facto* appointment of counsel to represent the non-repealer states would not help matters at this

late stage.  Dkt. 4377.)

Despite the fact that IPP Counsel did not represent the interests of purchasers in

approximately half the country, he negotiated a settlement that will release their claims.  The

assertion that their claims are worthless ignores the due process concerns that are paramount to

the fairness evaluation of a class action settlement.  As noted by the Second Circuit in *Wal-Mart*

OBJECTION TO REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE MOTIONS (1)
APPROVE SETTLEMENTS, (2) AWARD OF ATTORNEYS' FEES
(Master File No. CV-07-5944-JST)

*Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2005), "due process requires that released claims

be adequately represented".  As stated before:

> The settlement is objectionable because class members were not adequately represented
> by named plaintiffs or class counsel, and the resulting settlement is unfair to all class
> members – particularly those who will receive nothing from this settlement – but also for
> members of the damages class, because class counsel abandoned all efforts to represent
> them in the settlement negotiations.

Reply, Dkt. 4367, page 2.  The intra-class conflict is evident when evaluating this

settlement (1) under Rule 23(a), subsections (2) ,(3) and (4), as the claims of class members lack

commonality and typicality, and because individual class members were not adequately

represented, and (2) for overall fairness under  Rule 23(e).   As Clifton has previously argued, the

failure to observe the procedural requirements of Rule 23 renders the settlement unfair on due

process grounds.  For these reasons the court must reject the settlement.

## B.  THE ATTORNEYS' FEE REQUEST IS EXCESSIVE, AND THE SPECIAL MASTER'S DECISION TO REDUCE THE FEES SOMEWHAT DOES NOT GO FAR ENOUGH

The Special Master's comparison of class counsel to General Eisenhower is particularly

troubling given that the Special Master was charged with reviewing class counsel's fee request.

Viewing Alioto's accomplishments as analogous to those of General Eisenhower – the only

General who also became a U.S. President in the Twentieth Century (indicating heroic stature on

a par with General George Washington), it's not surprising the Special Master finds class

counsel's fee request essentially reasonable (albeit with some minor modifications).  Instead of

the $192.25 million fee request, i.e., 33% of the total settlement fund, the Special Master has

recommended a slightly-reduced fee of $173.25 million dollars, or 30% of the settlement fund.

We think this is still too much.

To begin, we AGAIN acknowledge an error made in Clifton's original objection. The

OBJECTION TO REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE MOTIONS (1)
APPROVE SETTLEMENTS, (2) AWARD OF ATTORNEYS' FEES
(Master File No. CV-07-5944-JST)

Special Master's report repeats an error in Clifton's Objection – an error that Clifton specifically acknowledged, and withdrew – in his December 9, 2015 Reply. The Special Master also erroneously refers to "Objector Westfall" in mentioning this error, confusing the Objector, Donnie Clifton, with his counsel. As the Special Master did not take cognizance that Clifton previously acknowledged the error in his Objection, we repeat, as stated in the December 9 Reply:

> "In calculating the average hourly rate requested by IPP counsel, we incorrectly entered the total number of hours DPP Plaintiffs claimed to have spent prosecuting this action (95,229.33) (See DPP NOMAM for an Award of Attorney's Fees, Dkt. 4055, Page 21), rather than the 183,000 hours Indirect Purchaser Plaintiffs claim to have spent prosecuting this action, yielding an average hourly rate of $879.50 rather than the correct average hourly rate claimed of $457.67."

Clifton December 9 Reply, Dkt. 4367, page 6. Accordingly, Mr. Clifton AGAIN withdraws his statement as to the inappropriateness of the average hourly rate in so far as this comment was based on an $879.50 average hourly rate.

After the Special Master's adjustment of class counsel's lodestar, the average billing rate is $443 at current rates. Dkt. 4351, page 77. This is still a high hourly rate. And although the Special Master reduced class counsel's lodestar somewhat, from $90,075,076.90 to 81,067,569.20, the lodestar multiplier for the fee award is 2.14. Application of this multiplier yields an average hourly fee of $948.02. Again, we note, this is on average – and includes billing for contract attorneys (whose real billing rates are still typically well below $100 per hour even if hired to do foreign language review) and paralegals who are paid a fraction of this rate. An attorney billing 2,000 hours per year at a rate of $948.02 would bill $1,896,040. Agai,n using the Special Master's analogy, by contrast 4 Star Generals currently earn $184,809.60 per year. *See https://www.military-ranks.org/army/general-pay ay levels for generals, visited Feb. 12, 2016*.). Class counsel's average hourly rates are too high for policy reasons, so no multiplier

is warranted.  Clifton, a longtime union member and labor activist, supports fair pay at both ends of the pay spectrum.

Otherwise, we note that the Special Master is too dismissive of other issues raised by the fee request.  First, the Special Master minimizes the role that government enforcement actions played in achieving this settlement.  Clifton addressed these issues previously.  See Reply, Dkt. 4367, page 6.  For example, on the one hand, the Special Master claims that Chunghwa's cooperation was apparently of little help in securing settlements with other defendants, because the next settlement didn't occur until four years later.  Looked at differently, might he just as readily have determined that since it took several more years to secure settlements with the other parties, perhaps class counsel had not made any progress with those defendants prior to the Chunghwa Settlement?  At any rate, we renew our contention that the substantial work done by regulatory bodies worldwide certainly did assist IPP plaintiffs with this litigation.  We are by no means asserting class counsel simply rode on the coattails of the regulatory enforcement actions, but they did benefit from them.  This should be taken into account in considering the reasonableness of a fee request that is higher than the Ninth Circuit benchmark, particularly where the settlement involves a megafund such as this.

### C.  CLASS COUNSEL SHOULD NOT RECEIVE FEES AS A PERCENTAGE OF THEIR OWN EXPENSES AND THE PARTIES SHOULD BE REQUIRED TO DESIGNATE *CY PRES* RECIPIENTS OF FUNDS THAT CANNOT BE DISTRIBUTED TO THE CLASS.

The Special Master notes that there were no objections to Class Counsel's expenses. However, Clifton objected to the payment of attorneys' fees based on the total settlement fund, including settlement administration expenses, the costs to provide notice to the class, and class counsel's own litigation expenses.  Objection, Dkt. 4099, page 11, and Reply, Dkt. 4367, page 9. We acknowledge that this approach has been upheld in this Circuit.  *See, e.g., In re Online DVD-*

OBJECTION TO REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE MOTIONS (1) APPROVE SETTLEMENTS, (2) AWARD OF ATTORNEYS' FEES
(Master File No. CV-07-5944-JST)

*Rental Antitrust Litig.*, 779 F. 3d 934 (9th Cir. 2015) and *Staton v. Boeing Co.*, 327 F.3d 938 (2003).

Despite the existence of authority supporting this approach, we think it is wrong. This approach essentially gives class counsel a commission on their own expenses. We ask the court to consider whether it is appropriate to reward plaintiffs' lawyers with a commission on other people's work – in essence turning a portion of the fee award into a high commission broker's fee. Here, the attorneys' seek reimbursement of litigation expenses of $7,634,372.50, not even to mention the costs of notice and settlement administration. The fees attributable to the expenses alone are $2.29 million. When considering such a large settlement, the unfairness of this approach becomes obvious – these expenses are not insignificant; and that money should go to the class.

Finally, the parties have represented that no *cy pres* distribution has been provided for because they expect to distribute the entire settlement fund to the class. Although this is a worthy objective, in practice, in a settlement of this size, there will inevitably be uncashed checks and undistributed funds. The uncashed checks will no doubt eventually be distributed *cy pres*. The parties' failure to designate the eventual cy pres recipients – so that class members have an opportunity to review the designation --violates Ninth Circuit precedent. As noted in *Dennis v. Kellogg, Co.,* 697 F.3d 858 (2012), "To avoid the 'many nascent dangers to the fairness of the distribution process,' we require that there be 'a driving nexus between the plaintiff class and the *cy pres* beneficiaries.' *Nachshin v. AOL*, 663 F.3d 1034, 1038 (9th Cir. 2011). A *cy pres* award must be 'guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," *Id.* at 1039, and must not benefit a group 'too remote from the plaintiff class,' *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th

OBJECTION TO REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE MOTIONS (1)
APPROVE SETTLEMENTS, (2) AWARD OF ATTORNEYS' FEES
(Master File No. CV-07-5944-JST)

Cir.1990)."  In *Dennis*, failure to identify the *cy pres* recipients was found to be reversible error, in part because it prevented meaningful review at the appellate level.

## CONCLUSION

For the foregoing reasons, and other reasons stated in Clifton's earlier Objections and Reply, as well as those stated in other meritorious objections to the Settlement, Clifton reiterates his request that the court reject the settlement, or in the alternative, substantially reduce the attorneys' fee award.  Clifton also joins in and incorporates by reference all meritorious objections to the Special Master's Report and Recommendation and to the settlement.

Dated:   February 12, 2016                              Respectfully submitted,

                                                        *  /s/ Jan L. Westfall        *
                                                        Jan L. Westfall
                                                        *Counsel for Objector Donnie G. Clifton*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Objection To Report and Recommendations of Special Master Re Motions (1) Approve Settlements, (2) Award Of Attorneys' Fees was filed via the court's ECF filing system on February 12, 2016, and that as a result electronic notice of the filing will be served upon all attorneys of record in this action.

                                                        *  /s/ Jan L. Westfall        *
                                                        Jan L. Westfall

OBJECTION TO REPORT AND RECOMMENDATIONS OF SPECIAL MASTER RE MOTIONS (1)
APPROVE SETTLEMENTS, (2) AWARD OF ATTORNEYS' FEES
(Master File No. CV-07-5944-JST)