Theresa D. Moore (99978)
Jill T. Lin (284962)
Attorneys At Law
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
tmoore@aliotolaw.com
jill.tan.lin@gmail.com

*Counsel for Objectors Rockhurst University,
Harry Garavanian, and Gary Talewsky*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT ANTITRUST LITIGATION | Case No. 3:07-cv-5944-JST<br>MDL No. 1917 |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **<u>CLASS ACTION</u>**<br><br>**OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO APPROVE INDIRECT PURCHASER PLAINTIFFS' SETTLEMENTS WITH THE PHILLIPS, PANASONIC, HITACHI, TOSHIBA, SAMSUNG SDI, TECHNICOLOR AND TECHNOLOGIES DISPLAYS AMERICAS DEFENDANTS, AND (2) FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS TO CLASS REPRESENTATIVES BY OBJECTOR ROCKHURST UNIVERSITY, OBJECTOR GARY TALEWSKY, AND OBJECTOR HARRY GARAVANIAN**<br><br>Judge:  Honorable John S. Tigar<br>Courtroom 9-19th Floor<br>Special Master: Martin Quinn, JAMS |

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................... 1

II.    ARGUMENT ............................................................................................................ 2

       A.     Class Counsel Bears A Fiduciary Duty To All Class Members Including the
              Abandoned and Lost States As Well As The Nationwide Class Omitted States ... 2

       B.     Inter and Intra Class Conflicts Render the Statewide Damages Class Plaintiffs and
              Their Counsel Inadequate Representatives for the Abandoned and Lost States As
              Well As the Nationwide Class Omitted States……………………………………4

              1. The Abandoned and Lost States……………………………………………4

              2. Massachusetts……………………………………………………………5

              3. The Backdated Stipulation and Order………………………………………7

              4. Missouri and New Hampshire……………………………………………10

       C.     Notice and Statute of Limitations……………………………………………11

              1. Notice of Prior Settlements Do Not Impute To Putative Class Members In A
              Different Settlement With Different Defendants And Different Terms and
              Different Classes……………………………………………………………11

              2. The Statute of Limitations Has Not Run As Stated In The Special Master
              Report and Recommmendation……………………………………………13

       D.     The Duty To Vigorously Prosecute A National Antitrust Indirect Purchaser Case
              Includes The Duty To Prepare For All Indirect Purchaser Victim States….13

       E.     This Court's Duty To The Class In A Settlement Class Certification and
              Approval………………………………………………………………16

       F.     The Nationwide Class Omitted States Lack a Case or Controversy and The Court
              Has No Jurisdiction To Release The Claims……………………………19

       G.     The Settlement Amount………………………………………………21

       H.     Joinder………………………………………………………………22

III.   CONCLUSION.................................................................................................... 233

OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO
APPROVE IPPS' SETTLEMENTS WITH DEFENDANTS, AND (2) FOR AWARD OF FEES AND EXPENSES
BY OBJECTORS ROCKHURST UNIVERSITY, GARY TALEWKSY, AND HARRY GARAVANIAN

# TABLE OF AUTHORITIES

**Cases**

*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)........................................................13, 18

*Amchem Products v. Windsor*, 521 U.S. 591 (1997) ...........................................................17, 20

*Brown v. Ticor Title Ins. Co.*, 982 F.2d 386. 390 (9th Cir. 1992) ...............................................18

*Crown v Parker*, 462 U.S. 345 (1983)...........................................................................................13

*Daniels v. Aeropostale West, Inc.*, No. 12-05755-WHA, 2014 U.S. Dist. LEXIS 74081, at *8 (N.D. Cal. May 29, 2014)...............................................................................................20

*Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 331 (1980)...................................18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ................................................17

*Hess v. Spring Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ...........................................................17

*Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977) ..............................................................22

*In re Agent Orange Product Liability Litigation*, 800 F.2d 14, 19 (2d Cir. 1986) ................2, 15

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)................3, 14

*In re Community Bank of Northern Virginia*, 418 F.3d 277, 303-308 (3rd Cir. 2005) .................4

*In re General Motors Corp. Pick-up Truck Fuel Tank*, 55 F.3d 768, 801 (3rd Cir. 1995). 2, 3, 14, 18

*In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 257 (3d Cr. 2009) ..............................18

*Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995)..............................................3, 9

*Nguyen v.Radient Pharmaceuticals Corp.*, No. SAVC 11-00406 (DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014) .................................................................................21

*Officers for Justice v. Civil Serv. Comm'n of the City and Cnty of San Francico,* 688 F.2d 615,624 (9th Cir. 1982). ..............................................................................................19

*Pearl v. Allied Corp.*, 102 F.R.D. 921, 923 (E.D. Pa. 1984) .......................................................5

*Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 314 (1978)............................................................22

*Radcliff v. Experian Information Solutions, Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) ..........3, 9

*Rand v. Monsanto Co.*, 926 F.2d 596, 600 (7th Cir. 1991)........................................................15

*Reynolds v. Beneficial Natl. Bank, et al.*, 288 F.3d 277, 282-284 (7th Cir. 2002) .....................20

*Smith v. Sprint Communications Co., L.P.* 387 F.3d 612 (7th Cir. 2004) .....................................4

*Southern Pac. Co. v McAdoo*, 82 F.2d 121 (9th Cir. 1936)........................................................20

OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO APPROVE IPPS' SETTLEMENTS WITH DEFENDANTS, AND (2) FOR AWARD OF FEES AND EXPENSES BY OBJECTORS ROCKHURST UNIVERSITY, GARY TALEWKSY, AND HARRY GARAVANIAN

*Sullivan v. DV Invs., Inc.*, 667 F.3d 273, 319 (3d Cir. 2010)........................................................ 16

*Yoshioka v. Charles Schwab Corp.*, No. 11-1625-EMC, 2011 U.S. Dist. LEXIS 147483, at
  *40 (N.D. Cal. Dec. 22, 2011).......................................................................................... 20

**Statutes**

Class Action Fairness Act, Pub. L. No. 109-2, 119 Stat. 4.............................................. 1, 6

Case No. 3:07-cv-5944-JST, MDL No. 1917

OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO
APPROVE IPPS' SETTLEMENTS WITH DEFENDANTS, AND (2) FOR AWARD OF FEES AND EXPENSES
BY OBJECTORS ROCKHURST UNIVERSITY, GARY TALEWKSY, AND HARRY GARAVANIAN

1   I.   **INTRODUCTION**

2   Objectors herein object to the Report and Recommendation of Special Master for Final

3   Approval (Dkt. 4351) for, among other reasons, that the proposed settlement does not represent a

4   fair, adequate and reasonable recovery for all putative and named class members. There are two

5   distinct proposed settlement classes: a State Damages Class and a Nationwide Injunctive Class.

6   At the final stages of this litigation, it has become apparent that the proposed distribution favors

7   the State Class over the Nationwide Class, favors some states over other states, and intentionally

8   excludes State Class members from any possible recovery. These issues presented by Objectors

9   concerning the settlement classes highlight serious problems and unfairness, which the Class

10  Action Fairness Act, Pub. L. No. 109-2, 119 Stat. 4 (hereinafter "CAFA") was designed to curtail.

11  These issues raise questions of whether or not a subclass should exist to protect class members

12  interests which are in conflict or have been harmed by inadequate representation by a Class

13  Representative and/or Counsel.

14  The evidence fails to demonstrate why this Court should find that the proposed settlement

15  is fair, adequate and reasonable, and treats class members equitably relative to each other. The

16  failure is entrenched in the fact that the proposed settlement is patently unfair to class member

17  states of Massachusetts, Missouri and New Hampshire (collectively "Abandoned and Lost

18  States"). These class member states were unfairly excluded from recovery due to legal error on

19  two fronts, coupled with subsequent further damaging acts, which ensured this issue was not

20  brought to light until the time of proposed distribution, and Class Counsels' failure to include and

21  file well established and robust legal causes of action. These three Repealer States were

22  abandoned and lost by Indirect Purchaser Class Counsel who was charged with protecting the

23  Indirect Purchasers, and these Repealer States should have been, and should be, included in the

24  monetary recovery.

25  Beyond these state class members, the proposed settlement is additionally unfair to the

26  remainder of State Class members in the Nationwide Injunctive Class not named in the Statewide

27  Damages Class ("Nationwide Class Omitted States"). The Nationwide Class Omitted States are

28

OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO
APPROVE IPPS' SETTLEMENTS WITH DEFENDANTS, AND (2) FOR AWARD OF FEES AND EXPENSES
BY OBJECTORS ROCKHURST UNIVERSITY, GARY TALEWKSY, AND HARRY GARAVANIAN

presently denied *any* value or consideration, monetary or otherwise, in exchange for the complete release of all of their Federal and state rights against the Settling Defendants, despite past filings to the Court that indicated consideration was contemplated and would be given, and despite the fact that Class Counsel has readily admitted to the Court that the injunction claim is meaningless.

Under Rule 23, an attorney acting as class counsel represents all class members, including unnamed class members. *In re Agent Orange Product Liability Litigation*, 800 F.2d 14, 19 (2d Cir. 1986). The claims of the Nationwide Class Omitted States have been compromised in favor of members of the Statewide Damages Classes, leaving absent class members without any value in exchange for the release of their legal rights. The interests of the Abandoned and Lost States of Massachusetts, Missouri, New Hampshire and the Nationwide Class Omitted States were not adequately represented, and this litigation was settled without securing any value for these subclasses.

To protect these absent class members, Objectors request the Court deny final approval as it presently stands, certify subclasses, appoint representatives of these subclasses, and, either send the parties back to the negotiating table to assure a fair, reasonable, adequate and conflict free settlement, or send them back for trial.

## II.   ARGUMENT

### A.   Class Counsel Bears A Fiduciary Duty To All Class Members Including the Abandoned and Lost States As Well As The Nationwide Class Omitted States

Once Interim Class Counsel is appointed to lead the class, a fiduciary duty is born for all prospective and unnamed class members. Courts recognize the general existence of a fiduciary duty to unnamed class members once a class action suit is filed. *See, e.g., In re General Motors Corp. Pick-up Truck Fuel Tank*, 55 F.3d 768, 801 (3rd Cir. 1995) (stating that class attorneys owe the entire class a fiduciary duty once the class complaint is filed), cert. denied, 516 U.S. 824, 116 S. Ct. 88, 133 L. Ed. 2d 45. As one court has articulated:

> [W]e may venture a few statements about the scope of the fiduciary duty owed by class counsel to putative class members prior to class certification. In short, the scope of those duties is limited to protecting the substantive legal rights of putative class members that form the basis of the class action suit from prejudice

in an action against the defendant resulting from the actions of class counsel. Where the actions of class counsel put those rights at risk, class counsel must at a minimum put absent class members on notice and provide them with an opportunity to object. Where they fail to do so, class counsel exposes itself to potential liability for breach of its fiduciary duties.

*Schick v. Berg*, No. 1:03-cv-05513-LBS, 2004 U.S. Dist. LEXIS 6842 (S.D.N.Y. Apr. 20, 2004), *aff'd* 430 F.3d 112 (2d Cir. 2005). A number of courts have held that class counsel owes a fiduciary duty to unnamed class members in the pre-certification period. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement."); *In re General Motors Corp. Pick-Up Truck Fuel Prod. Liab. Litig.*, *supra*, 55 F.3d at 801 ("Beyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed.").

On May 8, 2008 the Court appointed Class Counsel for the subclass of Indirect Purchaser Plaintiffs ("IPP"), and laid out the duties and responsibilities of counsel, including, "*To otherwise advance and protect the interests of the putative class in all respects* and to honor all of its responsibilities, including making sure that all representations and commitments made on its behalf are honored." The Court included in its analysis the FRCP 23 requirements to "*work in identifying and investigating potential claims*" and "*to best protect the interest of the putative class members.*" Dkt. 282 (emphasis added).

By foregoing any potential reparation claims for the Abandoned and Lost States, Lead Counsel effectively waived these State Class claims. Class Counsel's actions during this litigation, which includes failing to present issues to the Court's attention for ruling, and entering into a binding stipulation, which does not directly name, yet prevents recovery for Massachusetts, Missouri and New Hampshire, necessarily prejudiced these Abandoned and Lost States' substantive legal rights to recovery. Class Counsel's duty was to prosecute vigorously on behalf of putative class members but they instead have forged deep conflicts among the class members and counsel that mandates disapproval of this settlement as it stands.

There is no evidence that anyone has been watching out for the rights of these victims. Now is the time and opportunity for this Court to apply its fiduciary duties and powers to protect the rights of these victims.

**B.      Inter and Intra Class Conflicts Render the Statewide Damages Class Plaintiffs and Their Counsel Inadequate Representatives for the Abandoned and Lost States As Well As the Nationwide Class Omitted States**

Where a proposed class action settlement does not adequately protect the interests of a subset of class members who have additional claims not pursued by Class Counsel and not compensated in the settlement, the adequacy of representation requirement is not satisfied. *See, e.g., In re Community Bank of Northern Virginia*, 418 F.3d 277, 303-308 (3rd Cir. 2005) (class representatives provided inadequate representation by failing to assert colorable federal statutory claims of some class members); *see also Smith v. Sprint Communications Co., L.P.* 387 F.3d 612 (7th Cir. 2004) (reversing nationwide settlement class due to inadequate representation of plaintiffs pursuing other competing class actions whose claims were compromised by settlement). The record establishes that a divergent and conflicting interest has arisen between the classes. No recovery was sought for the distinct economic injuries suffered by the Abandoned and Lost States, nor for the Nationwide Omitted States that receive no recovery or value for the release of their claims.

**1.      The Abandoned and Lost States**

Lead Class Counsel bears a fiduciary duty to the entire class, including absent putative class members both by case law and by Order of this Court. Dkt. 282. Class Counsel was appointed to prosecute and protect the rights of the Indirect Purchaser Class.  Repealer States allow indirect purchaser antitrust actions and include Massachusetts, Missouri, and New Hampshire. There are a finite number of repealer states. Massachusetts, Missouri, and New Hampshire were not pursued by and were abandoned by Class Counsel. Courts have ruled that the abandonment of uncertified claims raises issues pertaining to the adequacy of class counsel and the class representatives. *See, e.g., Pearl v. Allied Corp.*, 102 F.R.D. 921, 923 (E.D. Pa. 1984). Class Counsel's acts, which worked to the detriment of absent class members, are detailed below

and reveal legal antagonism to absent class members that demonstrates unfairness and inadequacy, as well as multiple conflicts.

### 2. Massachusetts

Interim Lead IPP Class Counsel filed their Consolidated Amended Complaint on March 16, 2009 and included an allegation of a Massachusetts Consumer Protection Claim, which is a very robust, strong and vibrant statute. Dkt. 437. Following a Motion to Dismiss, the Special Master Recommended in a Report and Tentative Ruling, among other rulings, that the Massachusetts claim be dismissed with leave to amend because Class Counsel had failed to plead that Plaintiffs had notified Defendants 30 days prior to filing the Complaint, as required by law. Dkt. 597. Class Counsel thereafter filed a Second Consolidated Amended Complaint ("2CAC"), but repeated the exact same legal error and again failed to comply with the same procedural requirements and properly plead that they had notified Defendants 30 days before filing the 2CAC. Dkt. 768, at p. 12-13; Declaration of Theresa D. Moore ("Decl. Moore"), Ex. A. Following the repeated error, the Special Master thereafter recommended in a Report and Tentative Ruling that the Massachusetts claim be dismissed with prejudice stating that, "Since Plaintiffs have now had two opportunities to comply and plead compliance, the Special Master recommends that the allegations under the Massachusetts consumer protection statute be dismissed with prejudice." Dkt. 768, at p. 12-13; Decl. Moore, Ex. A. The Special Master was aware that another action could be filed and raised the issue in his Recommendation: "While certainly no procedural dismissal of this nature should bar the filing of a truly new suit…." *Id*. Nothing indicates Class Counsel filed anything, or notified anyone, to adequately inform Massachusetts claimants of their right and need to file a new lawsuit. Class Counsel missed and failed to take their second chance to correct this legal error on behalf of Massachusetts.

Class Counsel was handed another opportunity to correct the damage from the error to include class members in Massachusetts, to whom they owed a fiduciary duty, but Class Counsel failed to act on behalf of these putative class members. Class Counsel claims they presented the Special Master with valid arguments against the dismissal. *See* Indirect Purchaser Plaintiffs'

Motion for Final Approval of Settlements. Yet, Class Counsel neither objected to nor appealed the Special Master's Tentative Ruling to the Court. Instead Class Counsel presented a Stipulation and Proposed Order to the Court for signature wherein Counsel agreed to the dismissal of Massachusetts. Counsel never presented any arguments on behalf of Massachusetts to the Court for ruling, and simply stipulated to the Special Master's Report and Tentative Ruling.[1]  Dkt. 796, Decl. Moore, Ex. B, *see infra.*

In reality, what Class Counsel did stipulate and agree to in its Stipulation and Proposed Order submitted to the Court, is add a plaintiff for Maine, which is currently a State in the Settlement Class, and dismiss Massachusetts. From the record, it appears that Class Counsel traded Massachusetts for Maine, rather than advocate and fight for Massachusetts. This is a blatant demonstration of intra class and counsel conflict.[2] As a co lead counsel for the TFT-LCD case, counsel for the Objectors is very familiar with and worked very closely with both the litigation and distribution of the $1.1 billion recovery in that case—which constituted the same conspiracy as CRT transmuted into flat panel LCD technology and has similar, if not the same, victims.[3] Distribution is complete in TFT-LCD and investigation of records reflect over a $41 million distribution to the Abandoned and Lost States of Massachusetts and Missouri, and a *de minimis* $340 thousand distribution to Maine consumers. Decl. Moore, ¶11.[4] There were no legitimate reasons to not object or appeal the tentative ruling. It would have cost the class essentially nothing if Class Counsel had objected to or appealed the Special Master's Recommendation and Tentative Ruling of dismissal to the Court, and then lost. There was no reason for Class Counsel not to

---

[1] Class counsel has retained their appellate rights per Dkt. 796, ¶ 4.

[2] This is precisely why CAFA was instituted, and what it was designed to prevent, e.g. "(A) counsel are awarded large fees, while leaving class members with…awards of little or no value; (B) unjustified awards are made to certain plaintiffs at the expense of other class members…. The purposes of the Act are to (1) assure fair and prompt recoveries for class members with legitimate claims." Pub. L. No. 109-2, 119 Stat. 4.

[3] The TFT-LCD litigation had earlier developed the facts of the CRT conspiracy.

[4] Class Counsel refers to the Chunghwa $10 million distribution changes as "de minimis" to a settlement allocation" in its February 5, 2016 letter to Special Master filed on CaseAnywhere.

OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO APPROVE IPPS' SETTLEMENTS WITH DEFENDANTS, AND (2) FOR AWARD OF FEES AND EXPENSES BY OBJECTORS ROCKHURST UNIVERSITY, GARY TALEWKSY, AND HARRY GARAVANIAN

object to the dismissal on behalf of putative Repealer class of Massachusetts, to whom Class Counsel owed a fiduciary duty.

### 3. The Backdated Stipulation and Order

The Stipulation and Proposed Order which dismissed Massachusetts and was later signed by the Honorable Judge Samuel Conti, never mentioned Massachusetts. It was not apparent from the face of the Order itself that Massachusetts had been dismissed, nor was it apparent that that it could have been resurrected. *See supra.* Dkt. 796; Decl. Moore Ex. E.

Even more troubling is that this October 27, 2010 Stipulation and Order was misfiled and misnumbered on the Docket and on the document itself. Thus for the last 5 plus years, a different document appeared under the heading and as Docket Entry number 799 for this Order. The Stipulation and Order informing of the abandonment and dismissal of Massachusetts did not appear in the MDL docket under the heading "ORDER Modifying and Adopting Special Master's Report" as Docket Entry 799 as it should have. It suddenly appears now, *over 5 years later*, but backdated to 2010 and backnumbered to 799.

It is more than concerning that recently the docket filings on the Official Docket regarding these events have been altered, rearranged, substituted, deleted and backdated without any indication on the Docket Description, or any other notification, that it has been done.[5] The only indication of the switching around of the backdated documents is that the computer added the initials of the current Judge assigned to the case, who was not a US District Court Judge on October 27, 2010, the date of the backdated documents, and he only took over this case in November 2015. The newly substituted backdated and backnumbered documents have an incorrect new number and filing date of October 27, 2010, not post November 2015, when they were actually recently filed.

---

[5] Lead Counsel asserts, and the Special Master adopts this view in his Ruling and Recommendation, that Objectors should have been cognizant of their rights and had the acuity to assert their own rights in this litigation. In light of the serious issues and confusion in the record, it is hard to fathom how imposing the burden of figuring out the proceedings when they are not even correct on the docket on the absent class member –an average consumer, already unsavvy in litigation – is fair and what was intended under CAFA.

OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO
APPROVE IPPS' SETTLEMENTS WITH DEFENDANTS, AND (2) FOR AWARD OF FEES AND EXPENSES
BY OBJECTORS ROCKHURST UNIVERSITY, GARY TALEWKSY, AND HARRY GARAVANIAN

For purposes of notice, what was contained in the Stipulation and Order's place on the docket was *not* the signed Stipulation and Order, it was a different document. What was there since October 27, 2010 until now is no longer there, and a new document has been put in its place, although the Docket Descriptions have remained the same. Decl. Moore, ¶7. For instance, the Official Docket Entry 799 is described as,

> **ORDER** Modifying and Adopting Special Master's Report, Recommendations and Tentative Rulings re: Defendants' Joint Motion to Dismiss the Second Consolidated Amended Complaint of the Indirect Purchaser Plaintiffs. Signed by Judge Samuel Conti on 10/27/2010. (sclc2, COURT STAFF) (Filed on 10/27/2010) (Entered: 10/27/2010)

However the new Stipulated Signed Order that now appears when one clicks on Docket Entry 799 is a different document than what was there when these Objections to Final Approval were originally filed on October 8 2015, and is different from what has been there since October 27, 2010 to at least November 3, 2015, when the current Judge's initials JST would have started to appear on documents. Dkt. 4164. What was there before was a completely different document, and not the Court signed Stipulation and Order for this situation.

The Stipulated Signed Order by Judge Conti that is there now has altered and different markings than before and shows that it was filed on October 27, 2010 under Docket Entry 799, but in reality, it was not filed there on October 27, 2010 –it was filed there in 2015.

Further, the Docket Entry number 796 on the Stipulation and Order shows and has showed since 2010 the following incorrect and different description in Docket Entry 796 of "*Proposed* Order":

> **STIPULATION & [Proposed] Order** Modifying & Adopting Special Masters Report by Samsung SDI (Malaysia) Sdn Bhd., Samsung SDI America, Inc.(("Samsung America") is a California corporation), Samsung SDI Brasil Ltda., Samsung SDI Co., Ltd., Samsung SDI Mexico S.A. de C.V., Shenzhen Samsung SDI Co. Ltd, Tianjin Samsung SDI Co., Ltd.. (Scarborough, Michael) (Filed on 10/25/2010) (Entered: 10/25/2010)

Thus the Stipulation and Order informing of the abandonment and dismissal of Massachusetts did not appear in the MDL docket under the heading "ORDER Modifying and Adopting Special

Master's Report" and as Docket Entry 799 as described on the Docket. It only suddenly appears now, *over 5 years later*.[6]

Even given these multiple turn of events Class Counsel had yet another opportunity while representing this putative class to correct the continued and multiple errors done to Massachusetts and still could have included Massachusetts in the Settlement classes for recovery, but Class Counsel again did not do so.

Massachusetts is a very important state in antitrust law, with a very high concentration of victims, small businesses, families, students, faculty, universities and medical facilities. It is a travesty that they cannot participate when they are just as damaged as all other consumers, and they have strong Repealer laws allowing them to recover for indirect purchaser antitrust claims. To add insult to injury, Class Counsel is now requesting that the Court release all of Massachusetts *State indirect purchaser claims* and Federal claims as part of the Nationwide Injunctive Class. Such arguments that are so antagonistic to Counsel's own class are themselves an indication of grave conflict.

Class Counsel has a fiduciary duty to the class as a whole "and it includes reporting potential conflict issues" to the district court. *Radcliff v. Experian Information Solutions, Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013); *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995)("The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." "[P]re-certification class counsel owe a fiduciary duty not to prejudice the interests that putative class members have in their class action litigation. These duties arise because class counsel acquires certain limited abilities to prejudice the substantive legal interests of putative class members even prior to class certification. In electing to put themselves forward as class counsel, they assume the duty of not harming those rights." *Schick v. Berg*, *supra*, 2014 U.S. Dist. LEXIS 6842, at *5-6.

---

[6] Objectors herein continue to use the Docket Entry numbers in effect in all of Objectors prior filings, documents which existed at the time of Objectors original writing, and which have been in effect for the last 5 ½ years. The newly filed but back dated documents and corresponding DE numbers did not exist during the period of time in question from Oct 2010 until late 2015.

OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO
APPROVE IPPS' SETTLEMENTS WITH DEFENDANTS, AND (2) FOR AWARD OF FEES AND EXPENSES
BY OBJECTORS ROCKHURST UNIVERSITY, GARY TALEWKSY, AND HARRY GARAVANIAN

Class Counsel was provided multiple opportunities to salvage a Massachusetts state claim but forfeited any claims under Massachusetts law by twice committing procedural error, not filing a new action, stipulating to dismissal, trading for a *de minimis* state, not adding Massachusetts to the settlement class, improper and/or no notification *supra and infra*, and remarkably affirmatively waiving any rights for the state, all the while having accepted the position to act as a fiduciary to the putative indirect purchaser Repealer State classes. Dkt. 282, 284. Thus, contrary to Lead Counsel's assertion that the shortcomings of Massachusetts' claim warranted abandonment, Massachusetts actually had a strong and viable claim but was quietly dropped because of legal error, and all opportunity to include them has been ignored.

### 4. Missouri and New Hampshire

Despite being appointed and agreeing to represent the putative class, Lead Counsel never included Repealer states Missouri, or New Hampshire, in the Consolidated Amended Complaint ("CAC") filed on March 16, 2009, (Dkt. 437), nor in the subsequent Consolidated Amended Complaints filed on May 10, 2010, December 11, 2010, or January 10, 2013. A New Hampshire claim was filed in an action filed in 2007 and transferred to this MDL but Class Counsel never picked up the count in a Class Complaint.

Further, in Stipulation and Order discussed *supra.* Dkt. 796, Decl. Moore, Ex. B. Class Counsel also stipulated to not add any more claims, which permanently waived the rights of the Repealer State Missouri and New Hampshire victims. Lead Counsel stipulated and the Court therefore accordingly ordered that any amendments to future complaints were limited to "[a]mendments adding or dropping named plaintiffs with respect to claims and states already at issue (i.e., no new claims or states").[7] *See Schick v. Berg, supra,* 2004 U.S. Dist. LEXIS 6842, at *5-6. And, like Massachusetts, Class Counsel did not object or appeal for the Court to rule on the

---

[7] By this Stipulation Class Counsel shows they do not have an issue adding or changing plaintiffs, yet it would be "scour[ing] to dredge up a plaintiff[s]"  to add plaintiffs for the 3 abandoned Objector Repealer States (SM R&R, Dkt. 4351 p 41 ln 5-6) see *infra*

Special Master's Recommendation and Tentative Ruling. Again, there was no downside to doing so, and adequate notice was not given to the class.

Lead Counsel now argues that the Law of the Case from the same Stipulation and Order of October 27, 2010 prevented them from adding the claims for Missouri or New Hampshire, but in reality Counsel was responsible for filing these claims over a full year and a half before that ruling came down, when they filed their original CAC in March of 2009, or when they filed their 2CAC on May 10, 2010.  Despite arguing that they could not add due to the Law of The Case, Class Counsel added plaintiffs to dismissed claims of Illinois and Maine after that Order came down, and agreed to add plaintiffs of an inconsequential value without objecting, appealing or adding the remaining Repealer States of Missouri and New Hampshire to the Settlement Class. Dkt. 796, Decl. Moore, Ex. B.

Lead Counsel abandoned the Lost States' rights to pursue their own state claims and now further asks them to relinquish their rights to pursue a claim by including them in the Nationwide Injunctive Class but requiring a release of State and Federal rights.

**C.      Notice and Statute of Limitations**

**1.      Notice of Prior Settlements Does Not Impute To Putative Class Members In A Different Settlement With Different Defendants And Different Terms And Different Classes**

Special Master Quinn imputes the prior CPT and LG notices to the Abandoned and Lost States as well as the Nationwide Class in this distinct and separate settlement for the proposition that the CPT and LG settlements provided notice to Objectors herein of their exclusion and non payment of compensation, and thus an unnamed putative class member should have filed their own case and has no right to be included.  However, the law requires a new notice for the reason that an old notice for another defendant, time frame and amount and considerations and cannot ascribe to be adequate notice for another settlement. The fact that Objectors did not object to the Chunghwa ("CPT") and LG's notice is irrelevant and improperly considered in the context of this

OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO
APPROVE IPPS' SETTLEMENTS WITH DEFENDANTS, AND (2) FOR AWARD OF FEES AND EXPENSES
BY OBJECTORS ROCKHURST UNIVERSITY, GARY TALEWKSY, AND HARRY GARAVANIAN

1  case at bar, which is why the law clearly requires new notice for new settlements with new

2  defendants.

3        The Chunghwa and LG settlements were different than the proposed settlement, and were

4  also different from each other in multiple ways, as a partial example,

5  • CPT and LG each supplied consideration of evidence for the National Class and State

6      classes by way of providing evidence proffers, and witnesses for the prosecution of the

7      case. No such consideration exists here.

8  • The CPT notice did not mention any state or national class on its homepage and informed

9      visitors that no claim could be made at that time. So, no average class member would

10     scroll through multiple levels of links to read irrelevant legalese. *See* Decl. Moore, Ex. F:

11     Home page as it existed during the notice period.

12 • CPT filings indicated monetary compensation were contemplated.  *See, supra,* p. 18.

13 • The LG notice homepage describes an "Overview of the Settlement "by describing a

14     Nationwide Class and in that same section further states, "Money will not be distributed

15     to Settlement Class members **yet**."  Thus indicating the Nationwide Class would be

16     receiving monetary compensation. The notice does not list any state name. *See* Decl.

17     Moore, Ex. F: Home page as it existed during the notice period.

18 • The current settlement has more State Classes than the prior two settlements, and has

19     different consideration for the Nationwide Class, and altered Class definitions.

20 • The current settlement notice is the only one for distribution, and is the first that requires

21     action by a claimant if they want to make a claim.

22       It is unfair to bind Objectors for claims against different defendants, and the past notices

23 should not be used as being "instructive"  as to Objections for this specific and current settlement

24 at bar.

25 \\

26 \\

27

28

OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO
APPROVE IPPS' SETTLEMENTS WITH DEFENDANTS, AND (2) FOR AWARD OF FEES AND EXPENSES
BY OBJECTORS ROCKHURST UNIVERSITY, GARY TALEWKSY, AND HARRY GARAVANIAN

### 2.    The Statute of Limitations Has Not Run As Stated In The Special Master Report And Recommendation

The commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action. Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974); *Crown v Parker*, 462 U.S. 345 (1983).

### D.    The Duty To Vigorously Prosecute A National Antitrust Indirect Purchaser Case Includes The Duty To Prepare For All Indirect Purchaser Victim States

Even though there is a known finite number of Repealer States, Special Master Quinn concludes that Lead Counsel does not have a duty to include all indirect purchaser putative class members and "scour these three states to dredge up a plaintiff" (Dkt. 4351, p. 41, ln. 5-6), yet the Report supplies no law to support such a statement. And Special Master similarly ruled if a plaintiff does not "step forward" Class Counsel does not have a duty to represent those Indirect Purchaser Repealer States' victims, and a victim should initiate their own direct actions that could have been joined with the MDL. *See* Report and Recommendation of Special Master Re Motion to Approve IPP Settlements.

Such a cavalier comment contradicts Orders, case law, and public policy. The Courts Order appointing Interim Class Counsel for the subclass of Indirect Purchaser Plaintiffs ("IPP"), specifically includes as duties, "*To otherwise advance and protect the interests of the putative class in all respects* and to honor all of its responsibilities, including making sure that all representations and commitments made on its behalf are honored." The Court included in its analysis FRCP 23 requirements for Lead Counsel to **"work in identifying and investigating potential claims"** and "*to best protect the interest of the putative class members.*" Dkt. 282, emphasis added. Class Counsel affirmatively accepted such appointment. Dkt. 284. A "putative" class member is a possible or potential class member and in antitrust law only Indirect Purchaser Plaintiffs from the Repealer States may file a suit for damages. So, it is a finite, well known, and

identifiable group of states.  To say that Indirect Purchaser Plaintiffs Class Counsel does not have the duty to prosecute on behalf of all the Repealer State victims is directly contrary to the public policy of Class Actions and specifically of the Class Action Fairness Act enacted in 2005 to counter the abuses in class actions which served to damage victims, as was done herein.[8]  A putative class is a potential class, which means everybody, all Repealer States. Such a rule as proposed in the Report and Recommendation allows a Lead Counsel for a National Antitrust Indirect Purchaser Class to pick and choose which states to include.  If that were so, then every class case would be frivolous and simply could be decided by a Lead Counsel. That would allow Lead Counsel to claim for only one Repealer State, and release for nothing and bind all the other Repealer States who have the exact same injury, an absurd effect of such a rule. A Lead Counsel could ignore potential and putative Class members and pretend they are not there.

A number of courts have held that class counsel owes a fiduciary duty to unnamed class members in the pre-certification period. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement."); *In re General Motors Corp.*

---

[8] The Class Action Fairness Act was enacted in 2005 to counteract the abuse of class actions and the destructive effects on consumers and on the American Justice system.  In enacting the law Congress specifically found, and enacted CAFA to counteract the following: "(1) Congress finds the following: (1) Class action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a singe action against a defendant that has caused harm,….. (2) Over the past decade, there have been abuses of the class action device that have (A) harmed class members with legitimate claims and defendants that have acted responsibly; (B) adversely affected interstate commerce; and (C) undermined public respect for our judicial system. (3) Class members often receive little or no benefit from class action, and are sometimes harmed, such as where- (A) counsel are awarded large fees, while leaving class members with…awards of little or no value; (B) unjustified awards are made to certain plaintiffs at the expense of other class members…. The purposes of the Act are to (1) assure fair and prompt recoveries for class members with legitimate claims; (2) restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance … ( 3) benefit society by encouraging innovation and lowering consumer prices" <u>Pub. L. No. 109-2</u>, <u>119 Stat. 4</u>

---

OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO APPROVE IPPS' SETTLEMENTS WITH DEFENDANTS, AND (2) FOR AWARD OF FEES AND EXPENSES BY OBJECTORS ROCKHURST UNIVERSITY, GARY TALEWKSY, AND HARRY GARAVANIAN

*Pick-Up Truck Fuel Prod. Liab. Litig.*, *supra*, 55 F.3d at 801 ("Beyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed.").

To blame the abandonment and failure to file claims of class Indirect Purchaser's on the victim and say they should file their own case is directly contradictory to the policies of class action law suits and would give free passage for massive amounts of a multiplicity of law suits. Such statements encourage a colossal amount of unnecessary litigation, and there is no authority for it as it contradicts Rule 23 and CAFA which encourage the complete opposite. Rule 23 was designed for the nation as a whole. *Rand v. Monsanto Co.*, 926 F.2d 596, 600 (7th Cir. 1991). An attorney acting as class counsel represents all class members, including unnamed class members. *In re Agent Orange Product Liability Litigation*, 800 F.2d 14, 19 (2d Cir. 1986).

Ultimately, the duties owed by Class Counsel must reflect the capacity for that counsel to affect the substantive rights of the putative class member. In electing to put themselves forward, Class Counsel assumes the duty of *not harming those rights*, as stated in Judge Conti's appointment order referred to above. Yet the rights of victims from these three Repealer States have been harmed to the point of a loss of over $41 Million. In a case where the damages are $2.7 Billion, $8.1 Billion trebled, and the defendants (one of whom is the third most valuable company in the world) are paying only a very small fraction of 1/5 of the damages, this should not be allowed to stand to the detriment of Repealer State class members who were literally abandoned by Class Counsel.[9]

The evidence herein reveals that there were in fact plaintiffs for each of the abandoned and lost Repealer State claims. *See e.g.*, Dkt  4144-1 to 4144-5, 4144. However, even if there were not an existing plaintiff, it would not be an issue, and a rule such as that contemplated by Special Master would runs afoul of Fed R. Civ. P. 23 (g) (2) and case law which imposes a strict fiduciary duty to vigorously prosecute and protect the substantive legal rights on behalf of a

---

[9] *See* Dkt. 1388 Plaintiffs' expert Dr. Janet S. Netz, Ph.D. estimated the total class damages to be $2.768 billion. *See also* Dkt. 3861 at 14, fn. 31.

OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO APPROVE IPPS' SETTLEMENTS WITH DEFENDANTS, AND (2) FOR AWARD OF FEES AND EXPENSES BY OBJECTORS ROCKHURST UNIVERSITY, GARY TALEWKSY, AND HARRY GARAVANIAN

putative class and not put those rights at risk. *Schick v. Berg*, 2014 U.S. LEXIS 6842, at *5-6. It also runs afoul of the duty of Interim Lead Counsel whose role is to *lead* to a positive conclusion both the State and Federal Indirect Purchaser price fixing claims per FRCP 23 and CAFA.

It is important to remember the purpose in enacting CAFA in the world of complex litigation, and to remember the specific facts of the case involved herein.  It is undisputed that the sales of CRTs were massive. CRT televisions and monitors were the dominant form of display screens in the United States and world wide until 2004. Indeed, for most of the relevant period, North Americans purchased more CRT monitors than did consumers in any other region in the world. Between 2000 and 2006, defendants controlled nearly 90% of worldwide CRT commerce. Dkt. 1742, p.4, ln. 4-9.

Plaintiffs maintain that the evidence demonstrating the existence and effectiveness of this conspiracy is compelling, and that the overwhelming corpus of evidence is common to all putative class members. Plaintiffs assert defendants own documents, data and testimony unequivocally demonstrate that they conspired to fix the prices of CRTs and that this illegal conduct harmed members of the putative classes. Plaintiffs contend that this indirect purchaser case is the best vehicle to compensate American consumers who paid substantial overcharges as a result of defendants' unlawful conduct." Dkt. 1743, p.3, ln. 6-13. There is $2.7 Billion in damages. Each consumer is anticipated to get at least a $25.00 payment.

### E.    This Courts Duty To The Class In a Settlement Class Certification and Approval

Even if Special Master Quinn's proposed rule were in effect, and Class Counsel did not have the fiduciary duty and obligation to protect the rights of all of the putative class members and file cases on their behalf, this Court does have such a fiduciary duty to protect these class members. Consistent with the Federal Rules of Civil Procedure, "trial judges bear the important responsibility for protecting absent class members," and must be "assured that the settlement represents adequate compensation for the release of the class claims." *Sullivan v. DV Invs., Inc.*, 667 F.3d 273, 319 (3d Cir. 2010).

This Court must take on this responsibility of protecting these class members. The Courts have extraordinary power in class cases, and the Court is the protector and has the obligation to look at the absentee putative members who are not there. And if someone is a putative member the Court has the obligation to protect them.

The reason that it is required that the Court grant Final Approval is because the people who bring the matter into the courthouse already agree, and this Court is the only one who is present for and can independently protect the thousands or millions of absentee victims in States throughout the nation who be affected by this case, who have and have had no voice.  It is left to only this Court to judge and determine the fairness of what has occurred.

When a class is certified for settlement only, courts must give heightened attention to the adequacy of representation requirement to protect the interests of absent class members. Objectors assert that there appear to be irreconcilable conflicts, indeed, clashing interests, between the plaintiff classes, that their economic interests are not aligned, and that the intra-class conflicts at least require the certification of separately represented subclasses for the Massachusetts, Missouri and New Hampshire Abandoned and Lost State Classes, as well as the Nationwide Omitted States Classes. Indeed, courts "must pay 'undiluted, even heightened, attention' to class certification requirements in a settlement context." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), quoting *Amchem*, supra, 521 U.S. at p. 620; *accord Ortiz v. Fibreboard Corp*, 527 U.S. 815, 848-849 (1999) ["When a district court ... certifies for class action settlement only, the moment of certification requires 'heightene[d] attention,' [citation] to the justifications for binding the class members"].

The settlement herein draws into question whether the Abandoned and Lost States, and the Nationwide Class, were adequately represented at all times. Rule 23(a) requires that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Due Process Clause…requires that the named plaintiffs at all times adequately represent the interests of the absent class members." *Hess v. Spring Corp.*, 598 F.3d 581, 590 (9th Cir. 2010); *Hanlon v. Chrysler Corp.*, *supra,* 150 F.3d at 1020 ("To satisfy constitutional due

1    process concerns, absent class members must be afforded adequate representation before entry of

2    a judgment which binds them"); *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386. 390 (9th Cir.

3    1992)("[I]f the plaintiff was not adequately represented in the prior action, or there was a denial

4    of due process, then the prior decision has no preclusive effect.). The adequate representation

5    requirement "is typically construed to foreclose the class action where there is a conflict of interest

6    between the named Plaintiff and the members of the putative class." *Gen. Tel. Co. of the*

7    *Northwest, Inc. v. EEOC*, 446 U.S. 318, 331 (1980).  The crucial inquiry is "whether a proposed

8    class has sufficient unity so that absent members can fairly be bound by decisions of class

9    representatives. That dominant concern persists when settlement, rather than trial, is proposed."

10   *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621.

11        Special Master characterizes the failure of the three Repealer to States to collect

12   reparations as an "allocation issue". However, it is not an allocation problem it is a settlement

13   class certification issue. These 3 Repealer State Classes have not been included as State Class

14   members, the issue is that these states have the same valid claims and injuries and are being

15   excluded unfairly from the class for monetary settlement. It has nothing to do with the value they

16   will get for their price fixed purchase injury, it is the fact that they cannot participate at all yet

17   "they suffer the same injury" (Dkt. 4351 p19 line 9), nor are they being compensated as a

18   Nationwide Class member, yet as a Nationwide Class member are being required to release their

19   State as well as their Federal Claims.

20        When a request for class certification is submitted as part of a proposed class settlement,

21   the propriety of certification must be considered separately from the fairness of the settlement. *In*

22   *re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, 257 (3d Cr. 2009). In determining adequacy

23   of representation, however, the "court may take the terms of the proposed settlement into

24   consideration." *In re Community Bank of Northern Virginia*, 418 F.3d 277, 300 (3d Cir. 2005);

25   *In re General Motors Corp. Pick-up Truck Fuel Tank,* 55 F.3d 768, 801 (3rd Cir. 1995) (finding

26   inadequate representation due to "conspicuous evidence of ... an intra-class conflict in the very

27   terms of this settlement"). "[A] judge must focus on the settlement's distribution terms (or those

28

OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO
APPROVE IPPS' SETTLEMENTS WITH DEFENDANTS, AND (2) FOR AWARD OF FEES AND EXPENSES
BY OBJECTORS ROCKHURST UNIVERSITY, GARY TALEWKSY, AND HARRY GARAVANIAN

sought) to detect situations where some class members' interests diverge from those of others in the class. For example, a settlement that offers considerably more value to one class of plaintiffs than to another may be trading the claims of the latter group away in order to enrich the former group." *In re General Motors, supra,* 55 F.3d at p. 797.

Here, inherent conflicts have arisen, an intra-class conflict exists because the Nationwide Class is precluded from any recovery under the proposed Settlement. Class Counsel's proposed Plan of Distribution provides only compensation to "members of the Statewide Damages Classes…who claim a pro-rata share of the Settlement Fund based on the number of valid claims filed…" Dkt. 3862, at ¶ 43. Members of the Nationwide Class receive nothing in return for their release of claims. For instance, members of the Massachusetts Statewide Class were included as part of the class when initial settlement with Chunghwa Picture Tubes ("CPT") was signed in April 2009 Dkt. 3861, at 1. CPT settled the "50-state federal injunctive claim in exchange for monetary consideration." Dkt. 942, at 3. In light of "a colorable monetary claim in all 50 states," CPT "settle[d] all those claims—known or unknown, weak or strong, foreseen or unforeseen, based on existing law or the creation of new law—that arise in a litigation." *Id.,* at 4. Yet, indirect purchaser plaintiffs in Massachusetts, Missouri and New Hampshire are precluded from the claims process and receiving any monetary compensation or consideration in exchange for the release of their injunctive and monetary claims despite the fact that the parties represented to the court that CPT settled for a "50-state federal injunctive claim in exchange for monetary consideration." Dkt. 942, at 3.

Rule 23 (e)(2)'s primary concern is "the protection of those class members…whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty of San Francico,* 688 F.2d 615,624 (9th Cir. 1982).

### F.     The Nationwide Class Omitted States Lack a Case or Controversy and The Court Has No Jurisdiction To Release The Claims

The US Constitution Article II, §2 extends jurisdiction to the Courts only over cases and controversies. This action on behalf of the Nationwide Injunctive Class was instituted under

1   Section 16 of the Clayton Act, 15 U.S.C. § 26, to obtain injunctive relief for violations of Section
2   1 of the Sherman Act, 15 U.S.C. §1.

3          Class Counsel has been clear and has repeated multiple times in signed filings to the Court
4   that an injunction would be fruitless, there is nothing to enjoin since the CRT's are no longer
5   made and many of the companies are no longer in business. Class Counsel does not even request
6   an injunction, admitting that Section 1 must be dismissed. IPP Reply Brief to Motion Final
7   Approval, Dkt. 4351, p. 34.

8          Thus, it is clear, there is no case or controversy, or threat of it, for this claim. Pursuant to
9   the US Constitution Article II, §2 since there is no case or controversy, this court has no
10  jurisdiction and thus cannot certify and cannot release the requested "State and Federal" Claims
11  of this Nationwide Class.  A court is not allowed to give advisory opinions, or take any action
12  where there is no jurisdiction.  Unless proceedings presents an actual case or controversy, within
13  meaning of Art. III, § 2, cl. 1, it is not within jurisdiction of any federal court. *Southern Pac. Co.
14  v McAdoo*, 82 F.2d 121 (9th Cir. 1936). Cases and controversies are intended claims or
15  contentions of litigants brought before courts for adjudication by regular proceedings established
16  for protection or enforcement of rights, or prevention, redress, or punishment of wrongs. *Smith v
17  Adams*, 130 US 167 (1889).

18         In addition, a release of claims without consideration results in a settlement that is not fair,
19  reasonable or adequate, and is a settlement that a trial court cannot approve. *See Reynolds v.
20  Beneficial Natl. Bank, et al.*, 288 F.3d 277, 282-284 (7th Cir. 2002). Lack of value exchanged for
21  a release of claims renders a settlement unreasonable and unfair, at least with respect to those
22  disadvantaged members of the class. *See, e.g., Amchem Products v. Windsor*, 521 U.S. 591
23  (1997); *see also Yoshioka v. Charles Schwab Corp.*, No. 11-1625-EMC, 2011 U.S. Dist. LEXIS
24  147483, at *40 (N.D. Cal. Dec. 22, 2011) (denying final settlement approval where "uncertain
25  value of the settlement ma[de] the release given in exchange therefore problematic"); *Daniels v.
26  Aeropostale West, Inc.*, No. 12-05755-WHA, 2014 U.S. Dist. LEXIS 74081, at *8 (N.D. Cal. May
27  29, 2014) (denying approval of a Fair Labor Standards Act (FLSA) settlement and stating that

28

OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO
APPROVE IPPS' SETTLEMENTS WITH DEFENDANTS, AND (2) FOR AWARD OF FEES AND EXPENSES
BY OBJECTORS ROCKHURST UNIVERSITY, GARY TALEWKSY, AND HARRY GARAVANIAN

"[n]o one should have to give a release and covenant not to sue in exchange for [nothing]"). And the *Nguyen v.Radient Pharmaceuticals Corp.*, No. SAVC 11-00406 (DOC (MLGx), 2014 WL 1802293 (C.D. Cal. May 6, 2014) case cited by Class Counsel is easily distinguishable particularly in light Class Counsel's arguments of clear liability and damages which demonstrate no problems of proof. *supra*

In this matter the amount of settlement was benchmarked on a National single damage number of $2.7 billion. Each defendant's proportional amount of settlement contribution was based on their National market share. *See* Report and Recommendation of Special Master, IPP's Response to St. John Objection, IPP's Motion for Lead Counsel. The current distribution at issue is on a National pro rata basis. Payments to claimants of up to treble damages are requested. Thus excluding Repealer states Massachusetts, Missouri and New Hampshire from the monetary settlement class was not the fair and equitable action to take. As a fiduciary to Massachusetts, Missouri and New Hampshire the required path for Class Counsel would have been to include all of the Repealer states, and not to pit one state against another, and randomly exclude states. [10] The monetary distribution should include these states.

### G.    The Settlement Amount

The Objectors further submit that the settlement should be evaluated against the treble damages potentially available to this class, and the policy of antitrust joint and several liability. Treble damages are a fact of life in antitrust litigation. In some cases courts asked to approve a settlement may believe the class's claim is so strong that the merits of the amount negotiated cannot reasonably be evaluated without measuring it against the likelihood of a treble as well as a single damages recovery.  Such is the case herein.

Plaintiffs' expert estimated the total class damages to be $2.768 Billion. Dkt. 3861, at p. 14, fn. 31. The total class damages, trebled, is $8.3 Billion and represents Defendants' potential

---

[10] IPP Counsel has abandoned any distribution on a state by state proportional population as in the  CPT Settlement notice; and Mass was part of class complaint when settlement was signed in April of 2009

OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO APPROVE IPPS' SETTLEMENTS WITH DEFENDANTS, AND (2) FOR AWARD OF FEES AND EXPENSES BY OBJECTORS ROCKHURST UNIVERSITY, GARY TALEWKSY, AND HARRY GARAVANIAN

liability. To settle this important matter against serial price fixers for one-tenth of the potential damages seems not appropriate, particularly where joint and several liability is in play.  Although Class Counsel likens this action to the *In re TFT-LCD (Flat Panel) Antitrust Litigation* and cites similar problems, in reality, the CRT conspiracy continued for a much longer period of time and was much better organized than the LCD conspiracy. In LCD, the potential single damages were approximately $800 million less than CRT, but LCD settled for almost twice the CRT settlement. LCD settled at $1.1 Billion, and CRT $576 million.  Moreover, the LCD litigation recovered one-half of single damages, but the CRT recovered only one-fifth of single damages.

While a large number, Objectors believe the $576 million settlement fund is insufficient to fairly compensate the class members and deter similar conduct in the future. The Supreme Court has said that private civil antitrust suits serve two purposes: to compensate the victims of antitrust violation and to "deter violators and deprive them of 'the fruits of their illegality.'"[11] *Pfizer, Inc. v. Gov't of India*, 434 U.S. 308, 314 (1978) (quoting *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977)). This settlement does not deprive those defendants of "the fruits of their illegality"—if anything, it may provide reinforcement that further antitrust violations can be settled for a fraction of their value, even in the face of compelling evidence of liability and damages. Given the strength of the evidence, Objectors submit that the amounts the Defendants have agreed to pay to settle this case is not enough.

### H.    Joinder

Pursuant to the Court's expressed desire at the December 15, 1015 hearing Objectors have attempted to avoid duplicative briefing, and as such Objector herein joins in fellow Objectors briefing with regard to Notice, the Chunghwa Distribution and Attorney Fees and Issues to the extent they do not conflict with Objectors stated Objections.

---

[11] The evidence shows that the defendants continued with their price fixing conspiracies in the newer and more modern LCD technologies. *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 07-md-01827 (N.D. Cal.).

## III.   CONCLUSION

This is the opportunity for the Court to rescue all of the victims of Massachusetts, Missouri and New Hampshire.  The Court's protection is vitally needed at this point, and Objectors request the Court deny Final Approval in light of the unfair and inadequate treatment of class members. These states may have no other recourse that this Court's protection herein.

The settlement terms are patently unfair to the Abandoned and Lost States as well as the Nationwide Omitted States Class, who must forfeit their rights against the settling defendants in exchange for nothing. During the past eight years of litigation, no one has looked out for the interests of these unnamed class members. Because there is no injunctive relief and members of the Nationwide Class received no value for their release, the Motion for Final Approval of the class action settlement must be denied.

Objector further respectfully requests that the Court deny Final Approval, certify subclasses, appoint Objectors counsel for the Abandoned and Lost Repealer States, send the parties back to the negotiating table and set the matter for trial.

Respectfully submitted,

Dated: February 12, 2016

/s/ Theresa D. Moore               .
Theresa D. Moore (Cal. Bar. No. 99978)
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
tmoore@aliotolaw.com

*Counsel for Objectors Rockhurst University, Harry Garavanian, and Gary Talewsky*

OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO
APPROVE IPPS' SETTLEMENTS WITH DEFENDANTS, AND (2) FOR AWARD OF FEES AND EXPENSES
BY OBJECTORS ROCKHURST UNIVERSITY, GARY TALEWKSY, AND HARRY GARAVANIAN