Andrea Valdez (Cal. Bar No. 239082)
530 S. Lake Avenue, No. 574
Pasadena, CA 91101
Tel: (626) 817-6547
andrea.valdez.esq@gmail.com

Joseph Scott St. John (appearance *pro hac vice*)
514 Mockingbird Drive
Long Beach, MS 39560
Tel: 410-212-3475
jscottstjohnpublic@gmail.com

*Attorneys for Objector Douglas W. St. John*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 3:07-cv-5944 SC |
| | MDL No. 1917 |
| | **OBJECTOR DOUGLAS W. ST. JOHN'S REPLY ISO OBJECTION TO REPORT AND RECOMMENDATION RE OUTSTANDING MOTIONS** |
| This Document Relates To: | Judge: Hon. Jon S. Tigar |
| All Indirect Purchaser Actions | Special Master: Hon. Martin Quinn |

## INTRODUCTION

IPP Counsel argue for the stunning proposition that they can **consciously choose** not to include evidence with an opposition brief, then sandbag an opponent on sur-reply when the resulting evidentiary failure is called to the Court's attention. The law does not permit that result. IPP Counsel nevertheless try to get there by arguing that the Court and objectors should have ignored the consequences of IPP Counsel's vague and fee-driven suggestion that powerful evidence—including a **guilty plea by a defendant for the same criminal conduct** that underlies the class's claims—did not impact IPP Counsel's valuing of settlement.

IPP Counsel compounded their sandbagging problem by submitting untranslated foreign language documents. But "[i]t is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English," and the rule is "well-settled . . . that parties are required to translate all foreign language documents into English." *United States v. Rivera-Rosario*, 300 F.3d 1, 5, 6 n.4 (1st Cir. 2002). IPP Counsel claim their untranslated documents are duplicative of evidence already in the record, but they provide no corresponding citations to where **those specific documents** are supposedly located. Of course, if translations of those foreign language documents are already in the record, IPP Counsel should have no problem with the Court striking the untranslated versions.

## ARGUMENT

**I.  IPP COUNSEL DO NOT CONTEST THAT THE LAW REQUIRES ENGLISH TRANSALATIONS, AND DO NOT IDENTIFY ANY RECORD TRANSLATIONS OF THE DOCUMENTS AT ISSUE.**

IPP Counsel do not dispute that Alioto Supp. Dec. (D.E. 4362-3/4/5) Exhibits 1, 2, 4, 5, and 6 are untranslated foreign language documents, nor do they dispute that no English translations of those documents are in the record. *See* Mot. Opp. (D.E. 4395) at 7-9. IPP Counsel also do not dispute the applicable legal rule: "It is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English," and the rule is "well-settled . . . that parties are required to translate all foreign language documents into English." *United States v. Rivera-Rosario*, 300 F.3d 1, 5, 6 n.4 (1st Cir. 2002). And they similarly do not dispute that documents violating that rule

1  must be stricken. *See, e.g., Heary Bros. Lightning Protection Co. v. Lighting Protection Institute*, 287 F. Supp.
2  2d 1038, 1074 (D. Ariz. 2003) (*sua sponte* striking foreign language documents submitted without
3  English translations).
4      IPP Counsel seek to avoid that result by claiming "the market share figures evidenced in the
5  [foreign language] documents were already in the record," supporting that statement only with a
6  cross-reference to another portion of their opposition brief, which cross-references yet another
7  brief, which in turn cross-references still other briefs. R&R Obj. Opp. (D.E. 4395) at 7, 8; *see also*
8  MTS Opp. (D.E. 4369-16) at 5. Nowhere do IPP Counsel state that the specific foreign language
9  documents at issue—Alioto Supp. Dec. (D.E. 4362-3/4/5) Exs. 1, 2, 4, 5, and 6—are actually in the
10 record. IPP Counsel certainly do not identify where in the record translations of those documents
11 supposedly can be found. Indeed, such translations actually were in the record, there would be no
12 need for IPP Counsel to make excuses for their failing to obtain translations before submitting their
13 documents to the Special Master. *Cf.* R&R Obj. Opp. (D.E. 4395) at 8-9. Rather, IPP Counsel
14 could simply point to the docket entries where the translations could be found. Of course, IPP
15 Counsel's preference for engaging in hand-waiving rather than providing support for their
16 assertions is precisely how this issue ended up in front of the Court.
17     IPP Counsel also suggest that the prohibition on untranslated foreign language documents
18 should not apply because portions of their foreign language documents include Arabic numerals
19 and a smattering of English phrases. IPP Counsel cite no authority for that argument, and there are
20 a handful of cases are to the contrary. *See, e.g.*, *Continental Ill. Corp. v. C.I.R.*, 1989 WL 99426, 57
21 T.C.M. (CCH) 1464 (U.S. Tax Ct. 1989) ("The untranslated financial statements of CFE cannot
22 properly be made a part of this record because neither respondent nor this Court reads the language
23 in which those financial statements are written."); *United States v. Garcia*, 15 M.J. 685, 689 (1983)
24 (holding that palm print was inadmissible where the print card included untranslated foreign
25 language notations).
26     Consideration of the foreign language market share documents at issue here presents
27 obvious problems. For example, despite the smattering of English:
28

- Does the data represent historic data or an executive's hopeful projection?
- What, precisely, does the data include or the graph show?
- What is the source of that data, particularly vis-à-vis competitors?

Indeed, the example cited in IPP Counsel's opposition includes unknown foreign language characters directly above the English phrases. *See* Alioto Supp. Dec. (D.E. 4369-11) Ex. 1. Contrary to IPP Counsel's arguments, that document provides no English-language basis to identify the other party in the graphs as Philips/LPD. *Id.* It goes downhill from there: The graph cited by IPP Counsel at slide 2 of Alioto Supp. Dec. Exhibit 2 is labelled in English characters "FCST," is covered in foreign characters, and provides no basis for identifying the products and companies that are represented. *Id.* at Ex. 2. In short, there is no reason for the Court to deviate from the "well-settled" English translation rule. The untimely foreign-language documents should be stricken.

## II. THE SPECIAL MASTER ABUSED HIS DISCRETION BY BOTH DECLINING TO STRIKE IPP COUNSEL'S NEW SUR-REPLY EVIDENCE AND DENYING MR. ST. JOHN THE OPPORTUNITY TO RESPOND TO THAT EVIDENCE.

### A. Mr. St. John did not make an impermissible new argument.

In a section of their underlying opposition titled "The Evidence Was Provided in Response to St. John's Own Objection," IPP Counsel unequivocally stated that "[t]he supplemental evidence was provided in direct response to [Mr. St. John's] contention that Lead Counsel's declaration was not sufficient." MTS Opp (D.E. 4369-16) at 3. IPP Counsel apparently now realize that IPP Lead Counsel's declaration was lacking in evidentiary value, and that Mr. St. John's making that point provided no basis for backfilling the record sur-reply. IPP Counsel thus pivot to a very different argument: alleging that "[t]he evidence St. John challenges responds to [a] new argument St. John made in his reply brief." *Id.* at 4.

Specifically, IPP Counsel appear to point to a single paragraph in Mr. St. John's reply in support of his objection:

> Absent explanation, wildly differing settlements raise doubt as to the fairness of the smaller settlements. See In re Corrugated Container Antitrust Litig., 643 F. 2d 195, 218 (5th Cir. 1981). IPP Counsel try to avoid that result by averring that "unlike some of the other Defendants, IPPs had strong evidence of [Samsung SDI's and Philips's] conspiratorial activities here in the U.S." Alioto Dec. at ¶4. But that proves too much: as part of its plea agreement, Samsung SDI admitted that "acts in furtherance of [the CDT] conspiracy were carried out within the [U.S.]." J. St. John Dec. Ex. 10 (D.E. 4108-10) at ¶ 4(e). And the Commission Decision makes clear that Samsung SDI's and Philips's unlawful activities expressly targeted the United States. The points to which IPP Counsel attribute value were thus established by the efforts of the DOJ, the Commission, and—less directly—the *Vichi* plaintiff. If the Samsung SDI and Philips settlements were not greater based on these facts, that too would raise fairness issues.

Obj. Reply (D.E. 4369-4) at 11. But it was not an impermissible new argument to note that **arguments made in IPP Counsel's opposition** have unacknowledged consequences that the Court must consider. *See, e.g.*, *Calderon v. Experian Info. Solutions, Inc.*, 290 F.R.D. 508, 515 (D. Idaho 2013) ("A reply necessarily raises facts and issues, for the first time, that are germane to the opposition. If the evidence and argument included with a motion were required to anticipate the arguments a respondent might raise in opposition to the motion, the court would not permit the movant to file a reply to any opposition."). That is precisely the case here, where IPP Counsel remarkably suggested in their opposition that, e.g., a **guilty plea by a defendant for the same criminal conduct** that underlies the class's claims was not included in their valuing the settlement of the class's claims.

      Mr. St. John's use of the word "fairness" in a single paragraph addressing the consequences of IPP Counsel's remarkable suggestion did not raise a new argument. Rather, that paragraph makes clear that IPP Counsel are attempting to steer an unnavigable course between (a) reducing the portion of the settlement attributable to IPP Counsel's efforts—and thus their permissible fees—by acknowledging the value of exogenous factors such as Samsung SDI's guilty plea, and (b) raising fairness issues by denying that the value of such powerful evidence was included in the value of the settlements. Mr. St. John's point is that IPP Counsel's assignment of value to undefined "strong evidence of [Samsung SDI's and Philips's] conspiratorial activities in the United States" **must** include exogenous factors such as Samsung SDI's guilty plea, because any other reading of would raise serious fairness issues. It is not a new argument to respond to IPP Counsel's attempt to blur

1  the sources of settlement value by pointing out the unacknowledged consequences of their

2  argument.

### B. Even if the Court construes Mr. St. John's responsive point about the consequences of IPP Counsel's opposition as a new argument, IPP Counsel's new sur-reply evidence is not responsive to that point.

Even assuming arguendo that Mr. St. John did, in fact raise a new argument by noting that IPP Counsel's fee argument has consequences for fairness, IPP Counsel's new sur-reply evidence is not responsive to that argument. Rather, IPP Counsel are seeking to submit evidence on a factual issue—certain defendants' market share—that was raised in Mr. St. John's opening objection, and was addressed by IPP Counsel in their opposition. *See* St. John Obj. (D.E. 4106) at 12; IPP Obj. Opp. (D.E. 4369-2) at 14 n.31. That Mr. St. John may have raised some other new argument—he did not—does not provide IPP Counsel *carte blanche* to backfill the record with new market share evidence.

IPP Counsel also quixotically urge that it was a new argument for Mr. St. John to challenge the competency and credibility of their declarant. R&R Obj. Opp. (D.E. 4395) at 4. But commentary on evidentiary defects and declarant credibility are paradigmatic examples of responsive arguments for which sur-reply is not permitted. *See, e.g.*, *Johnson v. Cate*, 2015 WL 5321784, at *3 (N.D. Cal. Sept. 10, 2015) (recommending that sur-reply evidence be stricken where it was improper attempt to backfill evidentiary deficiencies identified in reply); N.D. Cal. L.R. 7-3(c) ("Any evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum."). IPP Counsel identify no authority to the contrary. And IPP Counsel's argument that their new sur-reply evidence was mere "backup for . . . averments by Lead Counsel" fails for a similar reason: it makes clear that IPP Counsel are attempting to impermissibly backfill evidence that they reviewed in drafting Lead Counsel's declaration, but **consciously chose** not to submit. *See* Obj. Opp. (D.E. 4395) at 7-8.

### C. The Special Master did not and could not solicit a single, cherry-picked evidentiary point conveniently supporting IPP Counsel's fee arguments.

Seeking some lawful basis to support their backfill operation, IPP Counsel next point to the Special Master's authority to solicit additional evidence. R&R Obj. Opp. (D.E. 4395) at 5-7. But

1  regardless of what the Special Master could have ordered, what he did was order IPP Counsel to
2  "file a further Response" addressing certain issues, and he did so under the heading "Request for
3  Further Briefing." Special Master's Order (D.E. 4369-9) at 2. The contrast between the Special
4  Master's response to IPP Counsel's "Request for Further Briefing" and his simultaneous order
5  soliciting additional evidence could not be more stark. *See id.* at 2 ("The Special Master ORDERS
6  that all fee agreements among class counsel relating to a division or treatment of fees to be awarded
7  to IPP Counsel be filed with the Special Master forthwith.").
8        To the extent the Special Master was soliciting additional evidence based on his
9  independent authority or the Court's independent fiduciary obligation to the class, permitting IPP
10 Counsel to cherry pick a single data point that best supports their fee request is inconsistent with
11 either basis. Indeed, IPP Counsel cite *Allen v. Bedolla*, 787 F.3d 1218, 1223-24 (9th Cir. 2015), for
12 the principal that the Court is obligated to "explore comprehensively all factors, and must give a
13 reasoned response to all non-frivolous objections." R&R Obj. Opp. (D.E. 4395) at 6. Allowing
14 class counsel to submit a single cherry-picked data point in defense of their fee request is not
15 "comprehensively exploring" whether the settlements reasonably align with the defendants' market
16 shares and damages. *Cf. In re Wash. Pub. Power Sup. Sys. Lit.*, 19 F. 3d 1291, 1302 (9th Cir. 1994)
17 (discounting class counsel's uncontroverted affidavits based on conflict with the class at the fee
18 stage). The lack of comprehensive exploration is highlighted by the record evidence that Samsung
19 SDI and Phillips had markedly lower market shares earlier in the class period, when the total CRT
20 market was much greater.

    **D.    The Special Master specifically prohibited supplementation of the record at the hearing.**

23     IPP Counsel implicitly concede that Mr. St. John had no opportunity to respond to their
24 new evidence in advance of the Special Master's January 5, 2016, hearing. *Cf.* R&R Obj. (D.E. 4369)
25 at 2 n.1 (noting that deadline set by Fed. R. Civ. P. 6(c) fell two business days after IPP Counsel's
26 new evidence was served). IPP Counsel do suggest that Mr. St. John should have responded to that
27 evidence at the hearing itself, i.e., seven business days after they improperly attempted to dump the
28 new evidence into the record. *See* R&R Obj. Opp. at 9. Setting aside the farce of expecting Mr. St.

John to respond to documents in unknown foreign languages despite IPP Counsel's conceded (and still uncured) inability to obtain translations:

- In advance of the hearing, the Special Master denied a request by objecting IPP Counsel Scarpulla and Cooper to respond in writing to IPP Counsel's sur-reply. Special Master's Order (D.E. 4369-9) at 2; *see also* Letter (D.E. 4369-8).

- In an email that was circulated to counsel in advance of the hearing, the Special Master made clear that "[t]here will be no formal examination or cross-examination" at the hearing; rather "[t]his is an opportunity for reasoned legal argument." Email (D.E. 4369-13).

- The Special Master denied one objector's request to supplement the record at the hearing, ordering that **"[a]ny requests to supplement the record should be made in writing.**" Hr'g Transcript (D.E. 4406-5) at 68:13-14.

IPP Counsel's suggestion that Mr. St. John should have responded to their sur-reply evidence at the hearing—***in direct contravention of the Special Master's clear order to the contrary***—is disingenuous. While the Special Master misconstrued Mr. St. John's Motion to Strike as a request to reply, *see* R&R (D.E. 4329) at 1-2, the effect of his ordering that "any requests to supplement the record . . . be in writing" then denying what he construed to be just such a request makes clear that Mr. St. John had no opportunity to address IPP Counsel's improper attempt to sandbag with new sur-reply evidence.

### E. The error is not harmless.

There can be no doubt that the Samsung SDI and Philips SDI settlements are far larger than the other six settlements. Indeed, those two settlements alone account for **69.3**% of the total settlement fund. And they are **6.8** and **6.5** times, respectively, the corresponding DPP settlements, in contrast to the 1.0 – 2.0 multiplier for most of the remaining settlements. *See* St. John Reply (D.E. 4369-4) at 10 (Table). Part of Mr. St. John's objection was that the Samsung SDI and Philips settlements also appear to be disproportionately greater than their market shares, and Mr. St. John supported that point with market share data from 1997 and 2001. *See* D. St. John Obj. (D.E. 4106) at 12. Mr. St. John then noted that the discrepancy in settlement value is best explained by Samsung SDI's guilty plea and an issue preclusion holding against Philips vis-à-vis findings of anticompetitive conduct by the European Commission. *Id.* at 11-12. The settlement value attributable to such

1  exogenous factors cannot, however, be included in the benefit attributable to IPP Counsel in
2  awarding them fees. *See, e.g.*, *In re Cendant Corp. PRIDES Litig.*, 243 F. 3d 722, 741 (3d Cir. 2001).
3  　　　　　Despite Mr. St. John's documentary market share evidence and the obvious impact of, e.g.,
4  a guilty plea for the same criminal conduct that underlies the class's claims, the Special Master
5  accepted—indeed, quoted verbatim—Lead Counsel's unsupported averments explaining away the
6  discrepancy between the 69.3% of the settlement fund attributable to Philips and Samsung and
7  their much lower market shares. R&R re Settlements and Fees (D.E. 4351) at 58-59. That was an
8  abuse of the Special Master's discretion to which Mr. St. John has objected. *See* Obj. R&R re Fees
9  (D.E. 4406) at 10-23. If Mr. St. John's Motion to Strike were granted—as it should have been—the
10 only market share data in the record will be 1997 and 2001 data that he supplied, a gap attributable
11 to IPP Counsel's conscious choice to submit an unsupported declaration rather than support their
12 assertions with the market share data they claim to uniquely possess. *Compare* Fee Mot. (D.E. 4071)
13 at 17 (emphasizing that "third party data providers of industry information, such as Display Search
14 and iSupply, no longer had data on the CRT industry") *with* Netz Dec. (D.E.1527-1) at 36 & Exs. 1,
15 5, 10, 12 (discussing and illustrating Defendants' combined market share throughout the class
16 period).[1]

### CONCLUSION

For the foregoing reasons, Mr. St. John respectfully requests that the Court overrule the Special Master's Report & Recommendation, and grant Mr. St. John's Motion to Strike IPP Counsel's new sur-reply evidence.

---

[1] IPP Counsel's suggestion that "the Special Master [or the Court] could independently rely upon the averment by lead counsel" is erroneous. R&R Obj. Opp. (D.E. 4395) at 10. IPP Counsel cite only cases dealing with approval of settlements in support. *Id.* at 8 n.11. The Ninth Circuit has suggested precisely the opposite in connection with fee motions due to the inherent conflict between class counsel and the class. *In re Wash. Pub. Power Sup. Sys. Lit.*, 19 F. 3d 1291, 1302 (9th Cir. 1994). Reliance on unsupported averments regarding facts that are not in lead counsel's personal knowledge is even more dubious.

| | | |
|---|---|---|
| 1 | Dated: February 18, 2016 | By:   /s/ Joseph Scott St. John |
| 2 | | _____ |
| 3 | | ANDREA VALDEZ (Cal. Bar No. 239082)<br>530 S. Lake Avenue, No. 574<br>Pasadena, CA 91101 |
| 4 | | Tel: (626) 817-6547<br>andrea.valdez.esq@gmail.com |
| 5 | | |
| 6 | | JOSEPH SCOTT ST. JOHN (*pro hac vice*)<br>514 Mockingbird Drive |
| 7 | | Long Beach, MS 39560<br>Tel: 410-212-3475 |
| 8 | | jscottstjohnpublic@gmail.com |
| 9 | | *Attorneys for Objector Douglas W. St. John* |