JOSEF D. COOPER (53015)
TRACY R. KIRKHAM (69912)
JOHN D. BOGDANOV (215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA  94103
Telephone:  (415) 788-3030
Facsimile:  (415) 882-7040
jdc@coopkirk.com
trk@coopkirk.com
jdb@coopkirk.com


FRANCIS O. SCARPULLA (41059)
PATRICK B. CLAYTON (240191)
LAW OFFICES OF FRANCIS O. SCARPULLA
456 Montgomery Street, 17th Floor
San Francisco, CA  94111
Telephone:  (415) 788-7210
Facsimile:   (415) 788-0706
fos@scarpullalaw.com
pbc@scarpullalaw.com

*Counsel for Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All Indirect-Purchaser Actions | **Master File No. 3:07-cv-5944 JST**<br>**MDL No. 1917**<br><br>**OBJECTIONS TO REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS (1) TO APPROVE INDIRECT PURCHASER PLAINTIFFS' SETTLEMENTS AND (2) FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS TO CLASS REPRESENTATIVES**<br><br>Hearing Date: March 15, 2016<br>Time:  2:00 p.m.<br>Courtroom:  9, 19th Floor<br>Judge: Honorable Jon S. Tigar |

**TABLE OF CONTENTS** <u>Page</u>

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     RELEASING CLAIMS OF NON-REPEALER-STATE CLASS MEMBERS
        WITHOUT CONSIDERATION IS ERROR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.      The Claims of the Non-Repealer State Members of the Nationwide Class
                are Not Being Settled --They are Being Dismissed with Prejudice . . . . . . . . . 1

        B.      The Special Master Failed to Properly Recognize and Value the
                Federal Equitable Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

                1.  The Claims for Equitable Monetary Relief . . . . . . . . . . . . . . . . . . . . . . 3

                2.  The Claims for Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        C.      This Court's Awarding Disgorgement Would be Appropriate . . . . . . . . . . . . .6

III.    THE NOTICE PROGRAM FAILED TO PROVIDE ADEQUATE
        NOTICE TO AN ACCEPTABLE PERCENTAGE OF CLASS MEMBERS . . . . . . . 9

IV.     THE SPECIAL MASTER ERRED IN AWARDING A PERCENTAGE-OF-THE-FUND
        AS ATTORNEYS' FEES, AND FAILED TO PROPERLY ADJUST THE
        LODESTAR FOR WORK THAT DID NOT BENEFIT THE CLASS. . . . . . . . . . . 11

        A.      The Special Master Erred In Applying The
                Percentage-Of-The-Fund Method . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

        B.      The Special Master Failed To Apply An Appropriate Fee Reduction
                Based On Billing Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

        C.      The Special Master Failed To Apply An Appropriate
                Fee Reduction For Duplicative Trial Preparation . . . . . . . . . . . . . . . . . . . . . . 12

        D.      The Special Master Failed To Apply An Appropriate Fee Reduction For
                Unnecessary Disputes With the California Attorney General . . . . . . . . . . . . . 13

V.      THE SPECIAL MASTER FAILED TO ADDRESS OBJECTIONS
        TO EXPENSES, COMPLIANCE WITH THIS DISTRICT'S GUIDANCE ON
        CLASS ACTION APPROVAL, AND TO PROVIDE A COMPLETE
        RECORD TO THE COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . .13

        A.      The Special Master Failed To Address Objections To The Expense Request ..13

        B.      Lead Counsel and the Special Master Have Failed To Address
                This District's Guidance On Class Action Approval . . . . . . . . . . . . . . . . . . . . 14

        C.      The Special Master Relied On Documents And
                Communications Not In The Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

VI.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**TABLE OF AUTHORITIES** <u>Page</u>

<u>Cases</u>

*Anderson v. Beland (In re Am. Express Fin. Advisors Secs. Litig.)*
    672 F.3d 113 (2d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Apple, Inc. v. Samsung Electronics Co.*
    2012 WL 5451411 (N.D. Cal. Nov. 7, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*California v. ARC America Corp.*
    490 U.S. 93 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*FTC v. Amy Travel Service, Inc.*
    875 F.2d 564 (7th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*FTC v. Gem Merchandising Corp.*
    87 F.3d 466 (11th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*FTC v. H. N. Singer, Inc.*
    668 F.2d 1107 (9th Cir.1982. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

*FTC v. Mylan Labs., Inc.*
    62 F. Supp. 2d 25, 41 (D.D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*FTC v. Security Rare Coin & Bullion Corp.*
    931 F.2d 1312 (8th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*FTC v. Southwest Sunsites, Inc.*
    665 F.2d 711 (5th Cir.) (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3-4

*FTC v. United States Oil & Gas Corp.*
    748 F.2d 1431 (11th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Hajro v. U.S. Citizenship & Immigration Servs.*
    900 F.Supp.2d 1034 (N.D. Cal. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Illinois Brick Co. v. Illinois*
    431 U.S. 720 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*
    Master File No. M-02-1486-PJH (MDL No. 1486),
    2013 U.S. Dist. LEXIS 188116  (N.D. Cal. Jan. 8, 2013). . . . . . . . . . . . . . . . . . . . 4, 5, 6

*In re High-Tech Employee Antitrust Litig.*
    Case No. 11-CV-2509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015). . . . . . . . . 11

*In re Lorazepam & Clorazepate Antitrust Litig.*
    205 F.R.D. 369 (D.D.C. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Multidistrict Vehicle Air Pollution Litigation*
    538 F.2d 231 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*
    350 F. Supp. 2d 160 (D. Me. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Syncor ERISA Litig.*
    516 F.3d 1095 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*In re Toys 'R' Us Antitrust Litig.*
    191 F.R.D. 347 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*
    396 F.3d 922 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*Kansas v. Nebraska*
    135 S. Ct. 1042 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Kaufman v. Am. Express Travel Related Services, Inc.*
    283 F.R.D. 404 (N.D. Ill. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Kaufman v. Am. Express Travel Related Services, Inc.*
    No. 07-C-1707 (N.D. Ill. Aug. 8, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Midwest Paper Prods. Co. v. Cont'l Group*
    596 F.2d 573 (3d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*
    2015 WL 4274370 (N.D. Cal. July 13, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Oregon v. AU Optronics Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.)*
    MDL No. 1827, No. C 10-4346 SI, 2011 U.S. Dist. LEXIS 76562,
    2011 WL 2790179 (N.D. Cal. July 11, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Porter v. Warner Holding Co.*
    328 U.S. 395 (U.S. 1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 8

*Sullivan v. DB Investments, Inc.*
    667 F.3d 273 (3rd Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*United States v. Apple, Inc.,* No. 12 Civ. 2826, 3396 (DLC),
    2015 WL 5970345 (S.D.N.Y. Oct. 13, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Keyspan Corp.*
    763 F. Supp. 2d 633 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 6

*United States Gypsum Co. v. Indiana Gas Co.*
    350 F.3d 623 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

*Walter v. Hughes Communications, Inc.*
    No. 09-2136-SC, 2011 WL 2650711 (N.D. Cal. July 6, 2011) . . . . . . . . . . . . . . . . .10

## **RULES**

Federal Rules of Civil Procedure

    Rule 23(c)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

## **STATUTES**

15 U.S.C. § 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1

## **OTHER AUTHORITIES**

Antitrust and Unfair Competition Law Treatise
California State Bar, Chapter 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Judges' Class Action Notice and Claims Process Checklist and Plain Language
Guide (hereinafter, "Notice and Claims Process Checklist"),
Federal Judicial Center (2010), at 3 (available at
http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf) . . . . . . .10

Procedural Guidance for Class Action Settlements (N.D. Cal.),
(available at http://www.cand.uscourts.gov/ClassActionSettlementGuidance) . . . . . . .14

*Restatement (Second) of Contracts*, § 71 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## I.      INTRODUCTION

The undersigned object to the Special Master's Report and Recommendations ("R&R") on the grounds that the proposed settlements are not fair, reasonable, and adequate because: (1) releasing the claims of the class members in "non-repealer" states is improper; (2) the notice program was flawed; (3) the award of a percentage-of-the-fund as attorneys' fees is unwarranted in this case.  Further, the Special Master ignored objections to the expense award, failed to address compliance with the Northern District's guidance on class action settlement procedures, and improperly relied upon communications and material not available to this Court and the parties.

## II.     RELEASING CLAIMS OF NON-REPEALER-STATE CLASS MEMBERS WITHOUT CONSIDERATION IS ERROR

It is undisputed that Lead Counsel negotiated these settlements on the assumption that the claims of over one-half of the Nationwide Class have zero value because they arise in states that have adopted *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ("non-repealer" states"). Therefore, the proposed settlements release all claims for non-repealer state class members without any consideration at all.   However, the primary claims of these class members are federal equitable claims that **do not arise under state law, and do not present any *Illinois Brick* issues.** Rather, they are claims that were asserted under Section 16 of the Clayton Act, 15 U.S.C. § 26, on behalf of all a putative nationwide litigation class.  *See* IPP 4th Consol. Am. Cmpl. (Dkt. 1526) ¶¶ 5, 247-256 ("First Claim for Relief: Violation of Section 1 of the Sherman Act").

The law has been well-settled since the Third Circuit decided *Midwest Paper Prods. Co. v. Cont'l Group*, 596 F.2d 573, 594 (3d Cir. 1979), that the concerns expressed in *Illinois Brick* have no relevance to indirect purchasers seeking relief under Section 16 for Sherman Act violations. *See, e.g., United States Gypsum Co. v. Indiana Gas Co*., 350 F.3d 623, 627 (7th Cir. 2003) ("the direct-purchaser doctrine does not foreclose equitable relief").

### A.      The Claims of the Non-Repealer State Members of the Nationwide Class are Not Being Settled – They Are Being Dismissed With Prejudice

There are no factual differences between repealer and non-repealer state members of the Nationwide Class.  All have alleged the identical predicate for their claims, *i.e.*, that the Settling

Defendants fixed prices of cathode ray tubes, causing them to pay illegally high prices for CRT products. *See, e.g.,* R&R, Dkt. 4351 at 26 and 28.  As the Special Master found, the sole factor distinguishing members of the Nationwide Class who are slated to receive compensation from those whose claims are being dismissed without consideration is whether a particular class member purchased in a "repealer" or "non-repealer" state.  R&R, Dkt. 4351 at 40.  (A "repealer state" is one whose judiciary or legislature has declined to follow *Illinois Brick.*)  With three exceptions, all repealer state purchasers are members of one of 22 statewide damage settlement classes to whom all of the settlement proceeds will be paid.  For them, certification of the Nationwide Class serves absolutely no purpose.  The Nationwide Class is solely a vehicle for delivering the releases of non-repealer state class members' claims,  No other case comes to mind where millions of people are being brought into a "settlement" class for the sole purpose of having their unadjudicated and uncompensated claims dismissed with prejudice.

A guiding principle of class action law is that "a class action settlement is a private contract negotiated between the parties." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005).  *See also*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  Accordingly, "the starting point for interpreting settlement agreements is general contract-law principles." *Anderson v. Beland (In re Am. Express Fin. Advisors Secs. Litig.)*, 672 F.3d 113, 136 (2d Cir. 2011).  The exchange of consideration is fundamental to contract formation.  *See*, *Restatement (Second) of Contracts*, § 71.  While it is true that the adequacy of consideration in a class action is analyzed on the exchange between the defendants and the class as a whole, here, the only consideration offered is not being given to the Nationwide Class, but to the members of **different** classes – the repealer state-wide damage classes.  The fact that the Nationwide Class is defined to include persons in these 22 other classes does not mean that there is settlement consideration flowing to the Nationwide Class as a whole.  This makes their releases essentially a dismissal with prejudice, without due process, not a settlement.

### B.   The Special Master Failed to Properly Recognize and Value the Federal Equitable Claims

The Special Master analyzed the fairness of the settlements (and the plan of distribution)

1   almost exclusively from the perspective of whether Nationwide Class members' **state law**

2   monetary claims have value.  He dismissed with only cursory consideration the proposition that

3   valuable federal law claims are being released.  This analysis is incorrect.

4        **1. The Claims for Equitable Monetary Relief**

5        Common law and statutory interpretation have long provided that where a person is

6   entitled to invoke the equitable jurisdiction of a federal court, such court possesses inherent

7   powers to fashion and afford that litigant the full measure of relief available at equity, including

8   monetary remedies such as restitution and disgorgement.  Thus, statutes, including Clayton Act,

9   Section 16, that authorize an injunction to compel or forestall behavior, have been construed to

10  trigger the availability of a much broader range of equitable relief.  This concept is neither new,

11  nor controversial.  The Supreme Court's seminal decision is *Porter v. Warner Holding Co*., 328

12  U.S. 395 (U.S. 1946), where a World War II price control law authorizing injunctive relief was

13  construed to encompass an order for the defendant to disgorge illegal rents.  The Court held that

14  unless otherwise explicitly restricted by statute, District Courts may exercise all inherent equitable

15  powers to fashion relief, including ordering the payment of money (*id* at 387-99):

16       Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied
17       or limited in the absence of a clear and valid legislative command. Unless a
     statute in so many words, or by a necessary and inescapable inference, restricts
18       the court's jurisdiction in equity, the full scope of that jurisdiction is to be
     recognized and applied.  * * * [*W*]*here, as here, the equitable jurisdiction of the*
19  *court has properly been invoked for injunctive purposes, the court has the power*
     to decide all relevant matters in dispute and *to award complete relief even though*
20  *the decree includes that which might be conferred by a court of law*. *Alexander v.*
     *Hillman*, 296 U.S. 222, 241-242.

21       Relying on *Porter*, the Ninth Circuit similarly construed Section 13(b) of the Federal Trade

22  Commission Act (which authorizes the FTC to seek injunctions against practices that violate laws

23  enforced by the Commission), holding that a request for injunctive relief is sufficient to trigger the

24  full panoply of a District Court's equitable powers, including restitution.  *FTC v. H. N. Singer,*

25  *Inc*., 668 F.2d 1107, 1112 (9th Cir. 1982).   Numerous other Circuit Courts of Appeal have agreed.

26  *See, e.g., FTC v. Amy Travel Service, Inc.*, 875 F.2d 564, 571-72 (7th Cir.), *cert. denied*, 493 U.S.

27  954, (1989); *FTC v. Southwest Sunsites, Inc*., 665 F.2d 711, 717-19 (5th Cir.), *cert. denied*, 456

28

U.S. 973, (1982); *FTC v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984), *FTC v. Gem Merchandising Corp.*, 87 F.3d 466, 468-469 (11th Cir. 1996); and *FTC v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir. 1991). In *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 289 (1960), the Supreme Court confirmed that the Fair Labor Standards Act authorized reimbursement of lost wages, relying exclusively on language granting courts authority "to restrain violations of [the FLSA]."

In 2011, the Southern District of New York applied this rationale to provide the federal government with disgorgement as ancillary equitable relief under Section 4 of the Clayton Act for antitrust violations. *United States v. Keyspan Corp.*, 763 F. Supp. 2d 633, 639 (S.D.N.Y. 2011). The *Keyspan* court (id, at 639-640) held that equitable disgorgement is particularly in harmony with principles of antitrust law:

> [D]isgorgement comports with established principles of antitrust law. When fashioning a consent decree in an antitrust action, district courts "are invested with large discretion to model their judgments to fit the exigencies of the particular case." *Int'l Boxing Club of N.Y., Inc. v. United States*, 358 U.S. 242, 253, 79 S. Ct. 245, 3 L. Ed. 2d 270 (1959) (quotations omitted).

See also *United States v. Grinnell Corp.*, 384 U.S. 563, 577, 86 S. Ct. 1698, 16 L. Ed. 2d 778 (1966) ("[A]dequate relief in a monopolization case should put an end to the combination and deprive the defendants of any of the benefits of the illegal conduct . . . ."). Disgorgement accomplishes that goal.

Later that year, Judge Illston of this Court ruled that an indirect-purchaser private litigant seeking equitable relief under Section 16 of the Clayton Act could also obtain disgorgement of the defendants' ill-gotten gains, *Oregon v. AU Optronics Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.)*, MDL No. 1827, No. C 10-4346 SI, 2011 U.S. Dist. LEXIS 76562, 2011 WL 2790179 (N.D. Cal. July 11, 2011). In 2013, Judge Charles B. Renfrew (Ret.), acting as a Special Master in *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, Master File No. M-02-1486-PJH (MDL No. 1486), 2013 U.S. Dist. LEXIS 188116 at *190, *207 (N.D. Cal. Jan. 8, 2013) found that both repealer and non-repealer state indirect purchasers in a nationwide settlement class had alleged colorable federal equitable monetary claims for restitution and

---

1   disgorgement.  This finding, adopted by Chief Judge Hamilton, formed part of the basis for class

2   certification and a plan of distribution that paid DRAM claimants *pro rata* without regard to

3   repealer or non-repealer state status.  *DRAM* at *339-40.

4        Recently, Chapter 23 of the 2015 edition of the California State Bar's Antitrust and Unfair

5   Competition Law Treatise added a discussion of the availability of disgorgement as a remedy

6   under a court's inherent equitable powers:

7        Under federal law, disgorgement of profits may take various forms. Thus, for
         example, where injunctive relief is not available (such as where it is moot),
8        disgorgement of *all* profits of a company engaged in illegal conduct (as opposed to
         the damages or overcharges resulting from the illegal conduct) is particularly
9        appropriate (*see Kansas v. Nebraska*, 135 S. Ct. 1042, 1056-59 (2015)), * * *
         Where injunctive relief is available, disgorgement of profits and overcharges
10       arising from the illegal conduct is available as *ancillary* relief that can be obtained
         in addition to any other remedies, such as an order barring future misconduct by a
11       defendant. [Citations omitted.]

12   The Treatise is available on LEXIS at 1-23 CA Antitrust and Unfair Competition Law § 23.02.

13        The Special Master improperly found that no viable claim for disgorgement could be made

14   here.  He dismissed *Keyspan* and *TFT-LCD* on the grounds that "[b]oth these cases involve

15   government enforcement efforts and are thus distinguishable for the private indirect purchaser

16   action here."  R&R, Dkt. 4351 at 44.  That statement is factually incorrect with regard to *TFT-*

17   *LCD,* where the State of Oregon was not exercising its police powers, but was in federal court as a

18   private plaintiff.  As Judge Illston noted, "Oregon brought suit on behalf of itself, 'its agencies,

19   political subdivisions, and local governments, and all natural persons residing in Oregon who were

20   indirect purchasers of . . . products containing LCD panels . . . .' See Complaint, ¶1."  *TFT-LCD*

21   *(Flat Panel) Antitrust Litig*., 2011 U.S. Dist. LEXIS at *52.   Moreover, equitable monetary relief

22   is available under a District Court's inherent powers, which are not contingent on the identity of

23   the plaintiff.  Rather, as Judge Illston found, "[b]ecause chancery courts possessed the power to

24   order equitable disgorgement in the eighteenth century" therefore, "contemporary federal courts

25   are vested with the same authority by the Constitution and the Judiciary Act."  *Id* at *61.

26        The Special Master ignored Judge Hamilton's adoption of Judge Renfrew's R&R in

27   DRAM because he misconstrued the references to equitable monetary relief as applying solely to

28   state law consumer protection claims.  R&R, Dkt. 4351 at 45.  However, Judge Renfrew was

1  clearly addressing "all injunctive claims," highlighting those asserted "under the federal antitrust

2  laws, including the entire range of relief that can be obtained as part of such claims [citing

3  *Keyspan*, *supra*, and *TFT-LCD*, *supra*]." Moreover, he explicitly found that "[u]nder the

4  particular facts and circumstances of this case, the injunctive claims are *sufficiently viable* such

5  that the certification of a nationwide class under Rule 23(b)(2) in order to execute a global release

6  is appropriate." *DRAM, supra*, 2013 U.S. Dist. LEXIS 188116, at *190 (emphasis added).

7  ## 2. The Claims for Injunctive Relief

8  The Special Master found that because CRTs are an outmoded technology, "the

9  unlikelihood of future violations makes an injunction basically worthless and probably impossible

10  to obtain." R&R, Dkt. 4351, at 42-43. He also dismissed an injunction requiring antitrust

11  compliance training as having "little practical value to the class" because it would occur "20 years

12  after this conspiracy began." Both of these findings contain non-sequiturs. Even if defendants are

13  not selling CRT televisions or monitors in the United States, they are still doing business here with

14  the same executives and sales departments that master-minded the CRT conspiracy (and, for some,

15  the LCD and DRAM conspiracies). The defendants haven't dissolved, they are just marketing

16  other products. Surely, employee antitrust education and injunctions requiring compliance with

17  U.S. law would assist in preventing future anticompetitive abuses. *See, e.g., United States v.*

18  *Apple, Inc.*, No. 12 Civ. 2826, 3396 (DLC), 2015 WL 5970345 (S.D.N.Y. Oct. 13, 2015).

19  The Attorney General of California believes that injunctive relief against these defendants

20  is both available and valuable. In its proprietary and *parens patrae* litigation, California has

21  obtained stipulated injunctions enjoining these defendants from engaging in illegal conduct with

22  regard to all display screens, not simply CRT technology, as well as requiring antitrust compliance

23  training across all product lines. (See, accompanying Request for Judicial Notice of California

24  settlement documents.) Similar remedies are available to the Nationwide Class here.

25  ## C. This Court's Awarding Disgorgement Would be Appropriate

26  The unspoken assumption underlying the Special Master's R&R is that *Illinois Brick*

27  articulates a public policy of hostility to any monetary compensation for indirect purchasers

28  victimized by antitrust violations. Allegedly, any such remedy for consumers, including equitable

relief, is suspect as an attempt to circumvent or "end run" *Illinois Brick*.  This assumption has been made in two reported decisions by district courts in Maine and the District of Columbia. However, neither court considered whether *Illinois Brick* constituted the "clear and valid legislative command" required by *Porter, supra*, 328 U.S. at 399, to constrain a federal court's general ancillary equitable powers.  *See, FTC v. Mylan Labs., Inc.,* 62 F. Supp. 2d 25, 41 (D.D.C. 1999) (*Illinois Brick* would foreclose disgorgement to indirect purchasers because it "raise[s] the specter of duplicative recoveries"); and *In re New Motor Vehicles Canadian Exp. Antitrust Litig*., 350 F. Supp. 2d 160 (D. Me. 2004), (where the *Illinois Brick* bar to recovery was not even contested: "Certainly no restitutionary remedy can escape the limitations  . . . [of] *Illinois Brick*, and the plaintiffs do not argue that it can").  Both of these cases and the R&R here are based on an incorrect reading of the policy considerations underlying *Illinois Brick*.

Neither the purpose nor the rationale of *Illinois Brick* is disenfranchising indirect purchasers or insulating price-fixers from their reach.  As the Third Circuit, *en banc*, recognized in *Sullivan v. DB Investments, Inc*., 667 F.3d 273, 313 (3rd Cir. 2011), the direct-purchaser rule of *Illinois Brick* "does not reflect a categorical policy judgment that indirect purchasers do not merit antitrust protection."  Rather, *Illinois Brick* is essentially a rule of evidence, arising from "prudential concerns for manageability," and applicable only to the proof of damages recoverable under Section 4 of the Clayton Act.  *Id*. at 313-314, 316-317.

The equitable remedies of restitution and disgorgement do not trigger the need to adjudicate complex economic forces that determine what portion of an illegal overcharge moves down a product's chain of distribution.  This is what the Supreme Court sought to banish through the "direct purchaser rule," and the *Illinois Brick* Court had no objection to indirect purchasers obtaining monetary relief as long as these matters will not burden federal courts.  *Illinois Brick* itself invites "end-runs," carving out exceptions where the complexity of proof would be demonstrably lessened, such as pre-existing cost-plus contracts, cases "where the direct purchaser is owned or controlled by its customer," and other "situation[s] in which market forces have been superseded."  *Illinois Brick, supra*, 431 U.S. at 736 and n. 16.  Nothing evidences the Supreme Court's lack of intent to foreclose monetary recovery by consumers more than its reversal of the

1   Ninth Circuit's pre-emption ruling in *California v. ARC America Corp.,* 490 U.S. 93 (1979).  The

2   Supreme Court was offered the ultimate circumvention of *Illinois Brick* – an amendment of the

3   Cartwright Act to explicitly permit recovery of pass-on damages – and decided that the

4   amendment was not pre-empted.  *ARC America* rejected each of the Ninth Circuit's reasons for

5   pre-empting the Cartwright Act, including the rationale of *FTC v. Mylan Labs, supra,* that indirect

6   purchaser recovery would "subject antitrust defendants to multiple liability, in contravention of the

7   'express federal policy' condemning multiple liability."  *Id.* at 104-105.  *Illinois Brick* is not

8   evidence of a clear legislative command to remove restitution and disgorgement from this Court's

9   arsenal of equitable remedies in indirect purchaser litigation.

10       Although the Special Master invalidated the Nationwide Class's equitable monetary claims

11   solely on *Illinois Brick* grounds, a brief discussion of whether these are "forward looking

12   remedies" is appropriate.  *In re Multidistrict Vehicle Air Pollution Litigation*, 538 F.2d 231, 233-

13   34 (9th Cir. 1976), is a Ninth Circuit decision, and, as the *Mylan Labs* Court noted (62 F. Supp2d

14   at 40), "the sole [appellate] opinion addressing restitution and/or disgorgement under § 16."

15   There, in what is arguably dicta in "a somewhat confusing opinion," the Ninth Circuit described

16   restitution and disgorgement as beyond the purview of Section 16 because they are not directed at

17   "threatened loss or damage."  *Ibid*.  However, the facts of *Air Pollution* make it self-limiting, and

18   as the *Mylan* Court observed: "[the Ninth Circuit's] language suggests that a typical restitution or

19   disgorgement scenario might fit within the contours of § 16, such as where plaintiffs seek to

20   deprive antitrust violators of the benefits of their illegal conduct."  *Ibid*.  The *Mylan* Court did not

21   attempt to resolve this question, instead basing its denial of the remedies on *Illinois Brick*.

22       Section 16 of the Clayton Act provides for equitable relief directed to preventing future

23   anticompetitive harm.  The Supreme Court in *Porter, supra*, 328 U.S. 395, 400, resolved any

24   doubt that restitution and disgorgement play such a role when it held that providing restitution or

25   disgorgement "may be considered as an order appropriate and necessary to enforce compliance"

26   with a statute.  "Future compliance may be more definitely assured if one is compelled to restore

27   one's illegal gains." *Ibid*.  *See also, Kansas v. Nebraska*, 135 S. Ct. 1042, 1058 (2015)

28   ("disgorgement will serve to stabilize a compact by conveying an effective message to the

1   breaching party that it must work hard to meet its future obligations").

2        The Special Master's conclusion that the non-repealer state class members' equitable

3   claims have zero settlement value is only proper if controlling law clearly foreclosed such relief.

4   Neither *Illinois Brick* or *Air Pollution* does so.  Re-allocation of the settlement proceeds across the

5   entire Nationwide Class cannot cure this problem because the record is clear that the settlement

6   consideration was negotiated solely as compensation for overcharges to the 22 state damage

7   classes.  The proposed settlement should be denied final approval.

8   **III.    THE NOTICE PROGRAM FAILED TO PROVIDE ADEQUATE NOTICE TO AN
           ACCEPTABLE PERCENTAGE OF CLASS MEMBERS**

9
10       Objections were raised to the adequacy of the notice plan (Dkt. 4115 at 3-4), particularly,

11  the demographic audience targeted and the notice administrator's calculation of the percentage of

12  that target actually reached.  Dkt. 4364 at 33-37.  In response, the notice administrator (Mr. Fisher)

13  lodged a supplemental declaration defending his target demographic and contending that the

14  calculated reach of his "digital notice" was accurate.  Dkt. 4368 at 1-8.  Mr. Fisher's supplemental

15  declaration included, for the first time, examples of the "digital notices" displayed on the Internet.

16  *Id* at 8.  The Special Master relied upon this declaration to recommend overruling all objections to

17  the notice program.  R&R, Dkt. 4351 at 54-59.

18       Under the Constitution, if notice is a person's due, due process requires proper notice.

19  Rule 23(c)(2)(B), specifies that notice to class members "must clearly and concisely state . . . (i)

20  the nature of the action; (ii) the definition of the class certified; (ii) the class claims, issues, or

21  defenses; (iv) that a class member may enter an appearance through an attorney; (v) that the court

22  will exclude from the class any member who requests exclusion; (vi) the time and manner for

23  requesting exclusion; and (vii) the binding effect of a class judgment."  The paid print notice plan

24  satisfied the Rule 23(c)(2)(B) requirements.  The digital "banner ads" did not.  Dkt. 3863-3.  No

25  T.V. notice was provided.  Thus, only the Rule 23-compliant paid print publication is notice.

26       According to Mr. Fisher, publication of the court-approved short-form notice reached 57%

27  of the targeted demographic (*i.e.*, persons aged at least 30 who own TVs or computers with a

28  household income of at least $60,000).  Dkt. 4371 at 13, ¶ 18 c.  This level of reach is inadequate

to satisfy due-process.  "The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class.  It is reasonable to reach between 70-95%."  Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide ("Notice Checklist"), Federal Judicial Center (2010), at 3 (http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf)).  *See also, Walter v. Hughes Communications, Inc.*, No. 09-2136-SC, 2011 WL 2650711 at *15 (N.D. Cal. July 6, 2011) (citing "Notice Checklist" in rejecting a proposed notice plan as inadequate).

To augment the inadequate publication reach, Mr. Fisher undertook a digital advertising campaign.  Dkt. 4371 at 10, ¶ 11.  These banner ad, which Mr. Fisher equates with notice, were never submitted to the Court and are not Rule 23-compliant.  Nonetheless, Mr. Fisher combines this digital "notice" with the print notice to achieve an alleged 83% reach of the targeted demographic.  *Id* at 14, ¶ 18 d.  Mr. Fisher's supplemental declaration put exemplars of the banner ads into the record for the first time.  The briefest asks:  "Did YOU have a Cathode Ray Tube TV or Computer Monitor?  CRTclaims.com."  *See* Dkt. 4368 at 8.  The lengthiest states:  "Did YOU have a Cathode Ray Tube TV or Computer Monitor? FILE A CLAIM! $576 Million, Learn More CRT Claims.com, Authorized by U.S. District Court."  *Id*.  While the banner ads may encourage the submission of claims, they do not contain the information required by Rule 23(c)(2)(B).  The Special Master denied the undersigned the opportunity to point out that these ads are not Rule 23-compliant notice.  Dkt. 4367 at 13.  The most that can be said is that a Court-approved notice reached 57% of the targeted demographic.  This level of reach does not demonstrate that the notice program was the best notice practicable under the circumstances.

"Where notice to a class has been inadequate, it may be appropriate to reject the settlement in its entirety."  *Kaufman v. Am. Express Travel Related Services, Inc.*, 283 F.R.D. 404, 408 (N.D. Ill. 2012).  The *Kaufman* Court observed that a weak notice program, combined with a "very low" response rate, put the grant of final approval in jeopardy.  The little claims information in this record is that a total of 109,709 timely claims have been received.  By comparison, this is 47% of the 233,473 valid claims after audit in *TFT-LCD*.  Dkt. 4403-1, Ex. A, ¶7.  Instead of denying final approval, the *Kaufman* Court appointed an expert in class notification to recommend

additional steps to notify the class.  *Kaufman v. Am. Express Travel Related Services, Inc.*, No. 07-C-1707 (N.D. Ill. Aug. 8, 2012) (Dkt. 398) (minute order appointing Todd Hilsee of Hilsee Group).  Dkt. 4403-1, Ex. B.  In the event the Court does not disapprove the proposed settlements, the undersigned respectfully renew the suggestion made initially to the Special Master, that one of the two nationally-recognized experts considered by the *Kaufman* Court be engaged to provide recommendations on how to make the notice here Rule 23-compliant.

## IV.   THE SPECIAL MASTER ERRED IN AWARDING A PERCENTAGE-OF-THE-FUND AS ATTORNEYS' FEES, AND FAILED TO PROPERLY ADJUST THE LODESTAR FOR WORK THAT DID NOT BENEFIT THE CLASS

The R&R largely agrees with the undersigned's objections regarding fees.  The Special Master found excess billing (R&R, Dkt. 4351 at 80), problematic record-keeping practices (*id.* at 79), dubious staffing decisions (*id.* at 80), and a "rocky" relationship with the California AG (*id.* at 81).  He therefore declined to recommend the 33.3% Lead Counsel requested.  In light of the Special Master's findings, the proper approach would be to adjust the lodestar to reflect a reasonable number of hours.  *See In re High-Tech Employee Antitrust Litig.*, Case No. 11-CV-2509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015).

### A.   The Special Master Erred In Applying The Percentage-Of-The-Fund Method

The Special Master applied a percentage-of-the-fund approach to determine the aggregate award, but intends to use a more-searching lodestar method to allocate that award to individual firms, noting that at that time, he will perform a "more meticulous scrutiny to each firm's billing [and] will take note of a particular firm's inefficiency, inexperience or bad judgment."  R&R, Dkt. 4351 at 63.  But if time is not compensable in an allocation proceeding, how can it be used to support an aggregate fee award?  These are not hypothetical concerns.  The Special Master observed that "[t]hirteen firms did virtually nothing, billing less than $75,000 each.  Another nineteen firms billed less than $1 million.  Thus, the real work of the case was limited to about sixteen firms that billed over $2 million."  *Id.* at 80.  Though he recommended less than sought, that $19 million reduction is insufficient to address the non-compensable time identified.

**B.**     **The Special Master Failed To Apply An Appropriate Fee Reduction Based On Billing Records**

The R&R confirms the existence of questionable billing practices, conceding that block-billing "occurred," "but not to any egregious extent."  R&R, Dkt. 4351 at 81.  As to quarter-hour increments, the Special Master opined that "this is also a common practice that *O'Bannon* said had been allowed by courts in the Ninth Circuit."  *Id.*  However, reliance on *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 2015 WL 4274370 at *6 (N.D. Cal. July 13, 2015), is misplaced.  The *O'Bannon* court ultimately rejected a reduction due to block billing because the entries were "adequately detailed to permit the Court to assess the reasonableness of the hours expended."  *Id*. at *7.  The Special Master did not make such a finding.  The *O'Bannon* court did not "bless" quarter-hour billing, but applied a 5% reduction to all such entries.  *Id*. at *8.

The Special Master did apply a 10% across-the-board lodestar reduction not attributed to any particular billing practice (R&R, Dkt. 4351 at 81-82).  This was error.  Courts generally apply separate reductions in excess of 10% to problematic billing practices.  *See, e.g., Apple, Inc. v. Samsung Electronics Co.*, 2012 WL 5451411, at *5 (N.D. Cal. Nov. 7, 2012) ("in light of the evidence that block-billing inflates hours by between 10% and 30%, the court trims 20% from the block-billed hours in Samsung's request"); *Hajro v. U.S. Citizenship & Immigration Servs.*, 900 F.Supp.2d 1034, 1053 (N.D. Cal. 2012) ("the court exercises its discretion to reduce the hours for these block-billed entries by twenty percent, the amount noted by the Ninth Circuit as the middle range for time increases that occurs through block-billing").  In addition to block billing and quarter-hour increments, and perhaps more troublingly, the Special Master observed that there is "evidence of unnecessary duplication of effort (multiple lawyers attending a deposition, excessive number of document reviewers, etc.)."  R&R, Dkt. 4351 at 80.  Although he acknowledged all of the problems with the billing records, the Special Master failed to appropriately reduce the claimed lodestar.  This was error.

**C.**     **The Special Master Failed To Apply An Appropriate Fee Reduction For Duplicative Trial Preparation**

Lead Counsel decided to associate three additional firms as "trial counsel" on the eve of trial.  The Special Master observed that "[t]he trial preparation that these three firms did would

---

have had to be done by some other lawyers had they not been on board." *Id*. at 72.  This

observation, coupled with the Special Master's conclusion that there is evidence of "unnecessary

duplication of effort" (*id*. at 80), raises the probability that the class is being asked to pay for the

same trial-preparation multiple time.

> **D.     The Special Master Failed To Apply An Appropriate Fee Reduction For Unnecessary Disputes With the California Attorney General**

Lead Counsel's unusually contentious and "rocky" (R&R, Dkt. 4351 at 81) relationship

with the California Attorney General is plain for all to see.  In the latest chapter, the California AG

was forced to file briefs challenging the adequacy of the notice plan and successfully move (over

Lead Counsel's opposition) to extend the claims-filing deadline.  *See* Dkt 4339.  The class is asked

to compensate Lead Counsel for time spent creating an unnecessary conflict where none should

have developed.  The need for cooperation and coordination between the private plaintiffs'

antitrust bar and the Attorneys General is a fact of life in consumer antitrust cases, and an

important factor in the approval of any consumer settlement.  *See, e.g., In re Toys 'R' Us Antitrust

Litig.*, 191 F.R.D. 347, 351 (E.D.N.Y. 2000) ("participation of the State Attorneys General

furnishes extra assurance that consumers' interest are protected."); *In re Lorazepam &

Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 380 (D.D.C. 2002) (citing same).  Failure to reduce

the fee award for the mismanagement of this vital relationship is error.

## V.     THE SPECIAL MASTER FAILED TO ADDRESS OBJECTIONS TO EXPENSES, COMPLIANCE WITH THIS DISTRICT'S GUIDANCE ON CLASS ACTION APPROVAL, AND TO PROVIDE A COMPLETE RECORD TO THE COURT

Several issues raised before the Special Master were not addressed in the R&R.

Additionally, the Court and the parties do not seem to have a complete record of the documents

upon which the R&R was based.

> **A.     The Special Master Failed To Address Objections To The Expense Request**

The Special Master recommends approval of $7,634,372.50 in reimbursement of out-of-

pocket expenses, stating that, "[n]o one has objected to approval of these expenses."  R&R, Dkt.

4351 at 82-83. Moreover, $4,495,878.02 of these expenses are described as "settlement proceeds"

deducted from the early Chunghwa and LG settlement funds, and "placed in the Future Expense

Fund."  These monies do not appear to be out-of-pocket expenses, but funds that belong to class members.  The undersigned objected to the reimbursement of the claimed expenses without a proper accounting.  *See* Dkt. 4115 at 7-8.

**B.    Lead Counsel and the Special Master Have Failed To Address This District's Guidance On Class Action Approval**

Lead Counsel did not comply with the Northern District's Procedural Guidance for Class Action Settlements, which directed him to include in his settlement approval papers, *inter alia*, "[t]he likely recovery per plaintiff under the terms of the settlement and the potential recovery if plaintiffs were to prevail on each of their claims."  Dkt. 4364 at 14-15; *see also* Dkt. 4194.  The Special Master also failed to address these guidelines.

**C.    The Special Master Relied On Documents And Communications Not In The Record**

At the January 5, 2016 hearing before the Special Master, the undersigned noted that emails containing the agenda for the hearing had not been disseminated to all counsel, and raised concerns regarding the protocols for communicating with the Special Master.  *See* 1/5/16 JAMS Hearing Tr. at 118:15-23, Kirkham Decl., Dkt. 4402-1, Exhibit 1.  The Special Master acknowledged this problem, concluding that "from now on any email exchange with me, either email or letter exchange with me should be posted on Case Anywhere on the JAMS website."  *Id.* at 119:13-15.  The Special Master stated in his R&R that all proceedings before him have been filed on Case Anywhere "with a few inadvertent immaterial exceptions and routine e-mails about scheduling and other ministerial matters."  R&R, Dkt. 4351 at 21.  However, that does not appear to be the case.

By way of example, a reference to "Alioto Ltr. Dtd. 1/7/16 to Special Master, e-filed at JAMS" appears in the R&R (R&R, Dkt. 4351 at 83), but no such letter was posted on the JAMS Case Anywhere site, nor is it one of the 19 document produced as exhibits in the Appendix of documents cited in the R&R filed with this Court.  Dkts. 4363-4368.  The R&R also states: "Lead Counsel have offered to provide the Special Master with all the backup expenses invoices, or to sample them.  But given the review conducted by Lead Counsel, the lack of an objection and the cost-benefit calculation of investing that time, the Special Master declined to conduct a more in-

depth review." R&R, Dkt. 4351 at 83.  There is no email, letter or other communication regarding this offer posted on Case Anywhere.  Similarly, a January 7, 2016 email posted on Case Anywhere from the Special Master to Ms. Capurro requested sample billing records for seven randomly selected firms.  Dkt. 4402-1, Ex. 3.  The R&R, however, states that "the Special Master has been provided the raw billing entries for every firm" (R&R, Dkt. 4351 at 78), although nothing in the record reflects this.

Apparently, not all documents submitted to the Special Master have been made part of the record, and non-administrative *ex parte* communications have occurred without the required notice or consent from all interested parties.  *See* Dkt. 4077 at ¶ 4 a. & ¶ 6.  Accordingly, the undersigned respectfully request that prior to the March 15, 2016 Fairness Hearing, the record be supplemented with: (1) the Alioto letter and all additional materials, including time records, submitted to and considered by the Special Master, and all communications, letters, emails and text messages between the Special Master and Counsel that were posted on Case Anywhere; and (2) all notes and entries in the Special Master's time records which memorialize communications with Counsel.

## VI.    CONCLUSION

For all of the foregoing reasons, the undersigned respectfully urge the Court to sustain their objections to the R&R and disapprove the Proposed Settlements.


Dated: February 26, 2016                    Respectfully submitted,

                                             /s/ Josef D. Cooper
                                            Josef D. Cooper

                                            Josef D. Cooper (53015)
                                            Tracy R. Kirkham (69912)
                                            John D. Bogdanov (215830)
                                            COOPER & KIRKHAM, P.C.
                                            357 Tehama Street, Second Floor
                                            San Francisco, CA 94103
                                            Telephone: (415) 788-3030
                                            Facsimile: (415) 882-7040
                                            Email:  jdc@coopkirk.com


                                             /s/  Francis O. Scarpulla
                                            Francis O. Scarpulla

                                            Francis O. Scarpulla (41059)

1         Patrick B. Clayton (240191)
          LAW OFFICES OF FRANCIS O. SCARPULLA
2         456 Montgomery Street, 17th Floor
          San Francisco, CA 94104
3         Telephone: 415-788-7210
          Facsimile:  415-788-0706
          fos@scarpullalaw.com

Pursuant to Civil L.R. 5-1(i), the filer attests that the concurrence in the filing of this document has been obtained from each of the above signatories.

---