1  **Robert J. Bonsignore, Esq.**
   **BONSIGNORE TRIAL LAWYERS, PLLC**
2  **3771 Meadowcrest Drive**
   **Las Vegas, NV 89121**
3  **Phone: 781-856-7650**
   **Facsimile: 702-852-5726**
4  **Email: rbonsignore@classactions.us**

5  *Counsel for Indirect Purchaser Plaintiffs*

6

7

8

9

10

11              **UNITED STATES DISTRICT COURT**

12             **NORTHERN DISTRICT OF CALIFORNIA**

13               **SAN FRANCISCO DIVISION**

14  **IN RE: CATHODE RAY TUBE (CRT)**       Case No. 3:07-cv-5944
    **ANTITRUST LITIGATION**                MDL No. 1917
15
                                            **CLASS ACTION**
16
                                            OBJECTION TO SPECIAL MASTER'S REPORT
17  This Document Relates to:               AND RECOMMENDATION ON FINAL
                                            APPROVAL OF CLASS ACTION SETTLEMENT
18  All Indirect Purchaser Actions          AND AWARD OF ATTORNEYS' FEES AND
                                            OTHER EXPENSES AND AWARDS AND
19                                          REQUEST FOR DE NOVO ORDER

20                                          Hearing Date: March 15, 2016
21                                          Time Set: 2:00 p.m.
                                            Judge: Honorable John S. Tigar
22                                          Courtroom: 9-19th Floor
                                            Special Master: Martin Quinn, JAMS
23

24

25

26

27

28

# Table of Contents

Page(s)

STANDARD OF REVIEW ................................................................................................ 1

OBJECTION 1

THE SPECIAL MASTER INCORRECTLY FOUND THAT THE SETTLEMENT
AGREEMENT WAS FAIR DESPITE THE RELEASE OF ALL RIGHTS AND TOTAL
ABSENCE OF AN ECONOMIC RECOVERY BY THE EXCLUDED PLAINTIFFS .............. 1

    A.    The Special Master Erred In Concluding That The Settlement's Treatment
           of Identical Class Members Differently Satisfied Rule 23's Fairness
           Requirements ................................................................................................ 2

    B.    The Special Master Erred In Concluding That Lead Counsel's Failure
           To Pursue The Excluded States' Class Members' Claims Was Fair,
           Adequate and Reasonable ............................................................................ 3

    C.    The Special Master Erred In Concluding That Lead Counsel's Declaration
           That He Was Unaware Of Any Viable Plaintiffs In The Three Excluded
           States Was Sufficient To Validate His Breach Of Duty To Vigorously
           Represent Their Class And His "Unawareness" Is Disproven By The Record
           .................................................................................................................... 5

    D.    The Special Master Erred In Concluding That Lead Counsel's Failure
           To Pursue The Excluded State Claims Should Have Been Remedied By
           Other Attorneys .......................................................................................... 7

    E.    The Statutes of Limitations Provide No Safe Harbor For Lead Counsel's
           Failure To Pursue The Excluded States' Claims ....................................... 8

OBJECTION 2

THE SPECIAL MASTER INCORRECTLY FOUND THAT
THE NOTICE PLAN WAS REASONABLE ............................................................... 8

    A.    The Notice Plan Was Inadequate ........................................................... 9

    B.    The Master's Failure To Engage A Neutral Expert To Evaluate The Notice
           Program Renders His Determination That It Was Reasonable Defective ........... 10

OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND OTHER EXPENSES AND AWARDS AND REQUEST FOR DE NOVO
ORDER / Case No. 3:07-cv-5944, MDL No. 1917

OBJECTION 3

THE SPECIAL MASTER'S ATTORNEYS' FEES AWARD WAS NOT SUPPORTED BY ADEQUATE EVIDENCE OF HOURLY RECORD KEEPING ................................................. 11

OBJECTION 4

THE SPECIAL MASTER ERRED IN FAILING TO INCLUDE THE EXCLUDED PLAINTIFFS IN THE AWARD OF INCENTIVE FEES ......................................................... 12

OBJECTION 5

THE SPECIAL MASTER ERRED IN FINDING THAT LEAD COUNSEL COULD CORRECT THE DUE PROCESS VIOLATIONS COMMITTED BY DEVISING AN ALLOCATION PLAN THAT ABANDONED CHUNGHWA CLASS MEMBERS ................ 12

CONCLUSION ................................................................................................................ 14

**Table of Authorities**

**<u>Case</u>**                                                                                                                    **<u>Page</u>**

*Campbell v. Hope Community Credit U.*, No. 10–2649–STA, 2012 WL 2395180
(W.D. Tenn. June 25, 2012) ....................................................................................................4

*Crown, Cork Seal Company, Inc v. Parker*, 462 U.S. 345 (1983)...............................................8

*Hajro v. U.S. Citizenship & Immigration Servs.*, 900 F. Supp. 2d 1034
(N.D. Cal.2012)......................................................................................................................12

*Henson v. Fid. Nat. Fin. Inc.*, No. 2:14-CV-01240-ODW, 2014 WL 1246222
(C.D. Cal. Mar. 21, 2014) .......................................................................................................8

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir.), *cert. denied*, 562 U.S. 1003 (2010)....................3

*In re Avon Securities Litigation*, No. 91 CIV. 2287(LMM), 1998 WL 834366
(S.D.N.Y. Nov. 30, 1998)........................................................................................................4

*In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013) .....................................................4

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*,
55 F.3d 768 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995) .......................................................3, 11

*In re Initial Pub. Offering Secs. Litig.*, 224 F.R.D. 550 (S.D.N.Y. 2004) ...................................4

*In re Ivan F. Boesky Secs. Litig.,* 948 F.2d 1358 (2d Cir. 1991) ................................................7

*In re Northwest Airlines Corp. Antitrust Litig.*, 221 F.R.D. 593 (E.D. Mich. 2004)....................4

*Kaufman v. American Express Travel Related Servs., Inc.*, 283 F.R.D. 404
(N.D. Ill. 2012)...................................................................................................................10, 11

*Kayes v. Pac. Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995) .......................................................8, 9

*Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157 (9th Cir. 2013) .......................................3

*Reynolds v. Beneficial Natl. Bank*, 288 F.3d 277 (7th Cir. 2002)................................................4

*Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181 (D.D.C. 2013).......................................4

*Sullivan v. DV Invs., Inc.*, 667 F.3d 273 (3d Cir. 2010), *cert. denied sub nom.*,
*Murray v. Sullivan*, 132 S. Ct. 1876 (2012)..............................................................................2, 4

*UAW v. General Motors Corp.,* 235 F.R.D. 383 (E.D. Mich. 2006) ......................................6, 11

*Union Assets Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) ....................6, 11

iv

OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND AWARD OF ATTORNEYS' FEES AND OTHER EXPENSES AND AWARDS AND REQUEST FOR DE NOVO ORDER
Case No. 3:07-cv-5944, MDL No. 1917

*U.S. v. Thoreen,* 653 F.2d 1332 (9th Cir. 1981) ..........................................................................4

*Welch v. Met. Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007)), *overruled on other grounds,*
*Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014)..........................................................12

<u>Statutes and Rules</u>

ABA Model Rule 1.5, comment 5 ..................................................................................................12

California Rules of Professional Conduct 3-500 ............................................................................4

California Rules of Professional Conduct 3-510 ............................................................................4

Fed. R. Civ. P. 23 .......................................................................................................................8, 9

Fed. R. Civ. P. 53 ...........................................................................................................................1

<u>Other Authority</u>

*Manual for Complex Litigation (Third)*, § 30.16 ........................................................................4

1    Class members and indirect purchasers of Cathode Ray Tubes, Anthony Gianasca, Gloria

2    Comeaux, Mina Ashkannejhad individually and/or as Administrator of the Estate of the Late R.

3    Deryl Edwards, Jr., Jeffrey Speaect, Rosemary Ciccone and Jeff Craig, (the "Excluded Plaintiffs")

4    by and through their counsel Bonsignore Trial Lawyers, PLLC, pursuant to Fed. R. Civ. P. 53(f)(2)

5    and this Court's orders (*See* Doc. Nos. 4286, 4298), file this Objection ("Objection") to Special

6    Master Martin Quinn's Report and Recommendation Re Motions (1) To Approve Indirect

7    Purchaser Plaintiffs' Settlements with the Phillips, Panasonic, Hitachi, Toshiba, Samsung SDI,

8    Technicolor, and Technologies Displays Americas Defendants (the "Settlement Agreement"), and

9    (2) For Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Incentive Awards

10   to Class Representatives (the "Report").  In support hereof, the Excluded Plaintiffs state as follows:

11   The Excluded Plaintiffs object to the Report on multiple grounds and request de novo

12   review.  To avoid repetition to the greatest degree possible, rather than repeat argument, the

13   Excluded Plaintiffs join and incorporate by reference the objections to the Report filed by the other

14   objectors to the extent they supplement and do not conflict with the arguments herein.

### STANDARD OF REVIEW

16   On January 13, 2016, this Court ordered that objections to the Master's Report and

17   Recommendations will be reviewed de novo.  *See* Doc. No. 4298 at 3.  Under Federal Rules of

18   Civil Procedure 53(f), a court must review the factual findings and legal conclusions of a special

19   master *de novo* absent stipulation to the contrary.  *See* Fed. R. Civ. P. 53(f)(3)-(4).  The Court must

20   "give the parties notice and an opportunity to be heard" and "may receive evidence; and may adopt

21   or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions."[1]

22   Fed. R. Civ. P. 53(f)(1).

### OBJECTION 1
### THE SPECIAL MASTER INCORRECTLY FOUND THAT THE SETTLEMENT
### AGREEMENT WAS FAIR DESPITE THE RELEASE OF ALL RIGHTS AND TOTAL
### ABSENCE OF AN ECONOMIC RECOVERY BY THE EXCLUDED PLAINTIFFS

---

[1]Given the seriousness of the issues and rights at issue, striking the objectors' briefs, allowing only 15 pages to challenge the Report and providing such a short time period to re-file that coordination between objectors of responses was unfeasible was an abuse of discretion here.

This Court is presented with a settlement agreement that, despite its creation of a nearly $577 million settlement fund, indisputably disregards the concededly valid damages claims of end use indirect purchaser class members in three states - Massachusetts, Missouri and New Hampshire - and indirect resellers in a previous settlement. This patently unfair and disparate treatment is a direct result of the literal abandonment of those class members by lead counsel Mario Alioto and his firm ("Lead Counsel"). The duties of full and zealous representation possessed by lead counsel to unnamed class members is a cornerstone of class litigation. Here, Lead Counsel does not dispute that class members from the Excluded States possess claims that are as equally valid under the law as the class members in the other "repealer" states. Yet he seeks to be relieved of any duty to pursue their damages claims by trumpeting that no fully vetted, "viable" representative from those three states appeared at his doorstep. The singular duty of lead counsel to vigorously pursue unnamed class members rights does not countenance such passive representation. Lead Counsel knew equally valid damages claim existed in the Excluded States and it was his obligation to at least make an attempt – which Lead Counsel has never represented he made – to identify a class representative prior to sacrificing their claims. Lead Counsel's failure to pursue the Excluded States claims has created a fatal conflict of interest.

Yet another particularly egregious circumstance exists here: willing and viable class representatives did appear at his doorstep. Lead Counsel's fast and loose claims of unawareness of "viable" representatives was the direct result of his failure to attempt to determine the viability of individuals standing in front of him. The defects in this Settlement Agreement are a direct result of Lead Counsel's abandonment of the absent class members he proclaims to represent. Granting final approval would be error because, among other things, it would serve to obliterate the protections mandated by Rule 23.

**A.    The Special Master Erred In Concluding That The Settlement's Treatment of Identical Class Members Differently Satisfied Rule 23's Fairness Requirements**

"[T]rial judges bear the important responsibility for protecting absent class members," and must be "assured that the settlement represents adequate compensation for the release of the class claims." *Sullivan v. DV Invs., Inc.*, 667 F.3d 273, 319 (3d Cir. 2010), *cert. denied sub nom.*,

*Murray v. Sullivan*, 132 S. Ct. 1876 (2012).  A settlement that releases the claims of class members without consideration or for lack of value exchanged is unreasonable, unfair and inadequate.  *See Reynolds v. Beneficial Natl. Bank*, 288 F.3d 277, 282-284 (7th Cir. 2002).  Here, absent this Court's intervention, the Excluded Plaintiffs and the absent similarly situated class members will be forced to release their claims without monetary compensation for which their states provided. That an injunction against Defendant's future misconduct will be entered is insufficient to justify the release of their viable money damages claims without consideration and alone renders the Agreement unfair.  *See Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181 (D.D.C. 2013).

The Settlement Agreement is fatally flawed for the additional reason that it treats the State Damage Class members more favorably than the Excluded Plaintiffs and similarly situated class members with respect to claims that were equally valid.  *See In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013).  The only cure is to include them in the State Damages Class; allow them eligibility to a monetary recovery; re-notice the class, and extend the claim period.

**B.    The Special Master Erred In Concluding That Lead Counsel's Failure To Pursue The Excluded States' Class Members' Claims Was Fair, Adequate and Reasonable**

Lead Counsel in a nationwide class action is obligated to represent the interests of all class plaintiffs, including the unnamed plaintiffs, in every state encompassed within the class he or she has agreed to represent.  *See Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157 (9th Cir. 2013). It was Lead Counsel's duty to vigorously pursue all class members' claims here.  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010).  Lead Counsel violated his duties and obligations to Excluded Plaintiffs and the similarly situated absent class members by entering into an agreement by which their claims have been traded away in favor of his favored State Damages Class members.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 797 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995).

The Special Master erred in finding that Lead Counsel's abandonment of the Excluded Plaintiffs' claim was proper partly because he did not focus his evaluation on the Lead Counsel's conduct.  Lead Counsel takes the position, which the Special Master adopted, that he owed no duty to represent those class members with respect to their damages claims at all.  Rather, he asserts

1    that it was incumbent upon the class members in those states to shore up a class representative if

2    they wanted their right to damages to be pursued.  *See* Report at 39-41 (Master refusing to make

3    Lead Counsel "scou[r] these three states to dredge up a plaintiff").  This position conflicts with the

4    realities of class representation where there is no collective body acting to make sure their rights

5    are pursued.  That is precisely the role of Lead Counsel, one which was accepted by Alioto and his

6    firm.  *See* Doc. No. 282 at 5-6 (Alioto responsible "[t]o otherwise advance and protect the interests

7    of the putative class in all respects and to honor all of its responsibilities.").

8         These duties coincide with the fiduciary duties borne by lead counsel to a nationwide class.

9    Lead counsel simply may not sit back and passively wait for a viable class representative to appear

10   before him.  Such passive representation directly breaches their fiduciary duty.  *See In re Avon*

11   *Secs. Litig.*, No. 91 CIV. 2287(LMM), 1998 WL 834366 at 10 (S.D.N.Y. Nov. 30, 1998); *see also*

12   *Manual for Complex Litigation (Third)* § 30.16 at 222.[2]  Mr. Alioto was also required to follow the

13   California Rules of Professional Conduct.  *See* Cal. R. Prof. Conduct 3-500, 3-510.  Cases

14   interpreting the rules have made clear that Counsel also has a duty of zealous representation.  *See*

15   *U.S. v. Thoreen,* 653 F.2d 1332, 1339 (9th Cir. 1981).

16        In endorsing Lead Counsel's actions, the Special Master ignores that Mr. Alioto was Lead

17   Counsel to a Nationwide Class, which included all the Excluded States.  As their fiduciary

18   representative, it was incumbent upon him to vigorously pursue their state law-based money

19   damages claims.  Not to do so creates the exact conflict identified above.  In addition to being

20   speculative, the Master's position does not take into account this Court's responsibility to absent

21   class members.  *Sullivan v. DV Invs., Inc.*, 667 F.3d 273, 319 (3d Cir. 2010), *cert. denied sub nom.*,

22   *Murray v. Sullivan*, 132 S. Ct. 1876 (2012).  This is true regardless of Lead Counsel's actual

23   knowledge of particular viable representatives in the Excluded States because he has conceded that

24   he had knowledge that class members in those states possessed viable damages claims against the

25

26   [2] *See* cases noting extraordinary effort of counsel to locate representative:  *In re Northwest Airlines Corp. Antitrust Litig.*, 221 F.R.D. 593 (E.D. Mich. 2004); *In re Initial Pub. Offering Secs. Litig.*,

27   224 F.R.D. 550, 553 (S.D.N.Y. 2004; *Campbell v. Hope Community Credit U.*, No. 10–2649–STA, 2012 WL 2395180, at *7 (W.D. Tenn. June 25, 2012).

28

1   Defendants.  *See* Indirect Purchaser Plaintiffs' Reply Re: Final Approval Of Class Settlements,

2   dated December 23, 2015, filed on JAMS, at p.12 ("Massachusetts, Missouri, and New Hampshire

3   claims are a somewhat different case because, in theory, these states allow indirect purchasers to

4   recover damages.").  It was therefore his affirmative duty to vigorously pursue those class

5   members' claims and take the necessary steps to identify a suitable representative for them.  In the

6   alternative, Lead Counsel cannot ignore a potential Repealer state seeking economic damages and

7   then later include that Repealer State in a non-economic recovery settlement class.

8   **C.      The Special Master Erred In Concluding That Lead Counsel's Declaration That He
9            Was Unaware Of Any Viable Plaintiffs In The Three Excluded States Was Sufficient
            To Validate His Breach Of Duty To Vigorously Represent Their Class And His
10           "Unawareness" Is Disproven By The Record**

11          To the extent that Lead Counsel's failure to pursue identifying any class representatives for

12  the Excluded States is somehow deemed insufficient to breach his duty to them, the Master's

13  finding that Lead Counsel was in fact not aware of any viable plaintiffs is flatly contradicted by the

14  record.  *See* Report at 40-41.  The sole evidentiary basis for the Master's finding is a self-serving

15  declaration submitted by Lead Counsel denying that any viable plaintiffs *came forward* in such

16  states.  *See id.* at 40.  Lead Counsel did not state that he was unaware of any of the individual

17  plaintiffs identified to him but merely that he was unaware of their viability.  *Id.*  This is a critical

18  distinction.  The identification of potentially viable candidates at a minimum imposed upon him

19  the duty to investigate their claims.  *See* Doc. No. 282 at 6.  Additionally, as further detailed

20  below, documentary evidence in the record flatly contradicts the notions that Lead Counsel was

21  unaware of viable or potentially viable plaintiffs and that none ever came forward.

22          With respect to Massachusetts, it was not difficult or burdensome to identify a

23  representative plaintiff given that Lead Counsel represented two:  Mr. Gianasca and Ms. Caldwell.

24  *See* Doc. No. 4144, Attachment 2, ¶ 12; Doc. No. 716, ¶ 31.  Lead Counsel did not ensure during

25  the required vetting process that they satisfied the pre-suit Chapter 93A demand requirement, and

26  those individuals' claims were later dismissed for failure to send that simple prior letter.  *See*

27  Report at 39; *see also* Doc. No. 597 at 29-30 (Report and Recommendation dismissing claims);

28  Doc. No. 665 at 24 (court dismissal).  Lead Counsel did not serve the letters or take any of the

5

OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND AWARD OF ATTORNEYS' FEES AND OTHER EXPENSES AND AWARDS AND REQUEST FOR DE NOVO ORDER
Case No. 3:07-cv-5944, MDL No. 1917

1   corrective actions available to him to protect the rights of these absent class members but instead,

2   abruptly abandoned the Massachusetts absent class members.  The failure of those plaintiffs to be

3   viable was Lead Counsel's fault, not theirs.  Both the filed complaints as well as Alioto's

4   appointment as Lead Counsel to the Nationwide Class establish that Lead Counsel Alioto was

5   indeed their counsel.[3]  It was incumbent upon Lead Counsel to do the required due diligence under

6   the Federal Rules of Civil Procedure prior to filing those lawsuits to vet his clients.  *See* Fed. R.

7   Civ. P. 11(b).  Here, Mr. Alioto filed suit without having determined if a pre-suit Chapter 93A

8   demand had been served on Mr. Gianasca's or Ms. Caldwell's behalf.  When his failing resulted in

9   dismissal, he alone chose not to remedy the error.  Any plaintiff from Massachusetts would have

10  been subject to the identical requirement of sending a demand letter.  Disqualification of the entire

11  Massachusetts state class as viable based upon the fact that Lead Counsel needed to satisfy the

12  most basic formality of a pre suit demand letter is patently illogical.

13          The Special Master similarly based his endorsement of the discarding of the Missouri class

14  members upon Lead Counsel's misleading declaration stating that no viable candidate came

15  forward.  However, documentary evidence existed establishing that Alioto was indeed informed

16  about a Missouri individual who possessed a vetted claim as well as the related purchase records.

17  *See* Doc. No. 4144, Attachment 4.  The Special Master disregarded that email as "unauthenticated"

18  and lacking indication that the client purchased any CRT products.  Report at 40.  However, the

19  Federal Rules of Evidence do not apply at a Fairness Hearing.  *UAW v. General Motors Corp.,* 235

20  F.R.D. 383, 386-87 (E.D. Mich. 2006); *Union Assets Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d

21  632 (5th Cir. 2012).  In addition, to the extent that identification of a potential plaintiff by Alioto

22  was insufficient, viability was also established by that document; the Special Master ignored the

23  presence of a pdf file at the bottom.  To address the perceived deficiencies in documentary

24  evidence Bonsignore PLLC has requested an IT specialist to retrieve archived records.  *See*

25

26  ───────────────

    [3] An attorney-client relationship is memorialized in a written agreement executed by Alioto and
27  Gianasca.  Evidence of that document was incorrectly excluded by the Special Master at the
    fairness hearing and it is properly before this Court in considering this Objection.  *See* attachment
28  4 to Affidavit of Robert J. Bonsignore - GIANASCA FEE AGREEMENT and depo testimony.

Attachment 5 to Aff. of Robert J. Bonsignore – Dec. of Josh Mansfield Re: Archive Emails.

The Master dismissed email evidence identifying a New Hampshire plaintiff to Alioto and concluded that no New Hampshire plaintiff came forward. *See* Report at 40. The Master faults the email as not showing "when the possible client bought a CRT product or that she had proof of purchase." *See id.* at 40-41. For the reasons above, that email was sufficient to place a duty upon Alioto to investigate her claim regardless of the proof supplied. Lead Counsel's protest that he was not aware of her viability is his failing – one that could have been remedied by a simple inquiry – not the representative's. *See also* Attachment 5 to Aff. of Robert J. Bonsignore – Decl. of Josh Mansfield Exhibits 1-4.

The frailty of the Master's findings is further underscored by the fact that he incorrectly refused to permit rebuttal evidence at the Final Approval Hearing regarding Alioto's claims of unawareness despite the Master's heavy reliance upon Alioto's declaration to brush aside the Excluded Plaintiffs' claims.[4] The Master's failure to compile a full record was a disregard of the duty to ensure that a pre-certification settlement agreement is fair, adequate and reasonable.

**D.      The Special Master Erred In Concluding That Lead Counsel's Failure To Pursue The Excluded State Claims Should Have Been Remedied By Other Attorneys**

The Special Master gave Lead Counsel Alioto a pass on his failure to include the Excluded Plaintiffs in the State Damages Class because either Attorney Bonsignore or Attorney Moore could "have initiated direct actions that could have been joined with the MDL." *See* Report at 39-41. There is no legal principle that allows a court to substitute in a speculative course of action by someone other than Lead Counsel to excuse Lead Counsel's breach fiduciary duty to his class. Black letter law provides that Lead Counsel controls the class litigation, not the individual attorneys. *See In re Ivan F. Boesky Secs. Litig.*, 948 F.2d 1358, 1365 (2d Cir. 1991). Bonsignore and Moore were powerless to file an amended class action complaint in the MDL to have the

---

[4] At that Hearing, counsel requested permission to submit critical documentary evidence that directly contradicted Alioto's sworn statement that he never excluded a viable plaintiff, including a written retention agreement executed by Lead Counsel with Massachusetts plaintiff Gianasca and deposition transcripts in which Mr. Gianasca states that he provided Alioto with evidence of his

Excluded Plaintiffs' claims included. *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449 (9th Cir.), *cert. denied*, 516 U.S. 914 (1995)  In any event, documentary evidence was submitted demonstrating that Lead Counsel provided continued assurances to outside counsel that he was pursuing the Excluded Plaintiffs' claims, obviating the need for a direct action. *See* Doc. No. 4144.

**E.    The Statutes of Limitations Provide No Safe Harbor For Lead Counsel's Failure To Pursue The Excluded States' Claims**

The Special Master incorrectly concluded that the statutes of limitations barred suits in Massachusetts, Missouri and New Hampshire. *See* Report at 39-41.  The actions of the Defendants were fraudulently concealed and Mr. Alioto himself relied upon a fraudulent concealment tolling argument in the Complaint, which could have been relied upon. *See* Doc. Nos. 1 (3:08-cv-01559-JST), ¶¶ 155-58; Doc. No. 437 (3:07-cv-05944-SC), ¶¶ 288-91; Doc. No. 716 (3:07-cv-05944-SC), ¶¶ 290-93; Doc. No. 827 (3:07-cv-05944-SC), ¶¶ 284-87; Doc. No. 1526 (3:07-cv-05944-SC), ¶¶ 293-96.  Courts always retain the power to conform judgments to the evidence presented.  Any addition of state law claims would have related back to the filing of the class complaint. *See* Fed. R. Civ. P. 15(b) and (c)(1)(B); *Crown, Cork Seal Company, Inc v. Parker*, 462 U.S. 345, 350 (1983); *see also Henson v. Fid. Nat. Fin. Inc.*, 2014 WL 1246222, at *5 (C.D. Cal. Mar. 21, 2014).

<u>**OBJECTION 2**</u>
**THE SPECIAL MASTER INCORRECTLY FOUND THE NOTICE PLAN REASONABLE**

In his Report, the Special Master incorrectly found that the program through which notice of the Settlement Agreement (the "Notice") was issued to the Class (the "Notice Program") was reasonable.  This Court should reject the Report and require re-noticing of the Agreement.

Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," must be given.  In his Report, the Special Master found that the Notice Program complied with that standard in exclusive reliance upon a declaration filed by Fisher. *See* Report at 46.  That finding and exclusive reliance were in error.

---

valid purchases.  Also included in that Request were further emails and photographs of CRT products to support the viability of the claims of the identified representatives.

**A.     The Notice Plan Was Inadequate**

The Notice Program was defective in several key respects and the evidence provided by Joseph Fisher of Lead Counsel's notice provider, The Notice Company of its reasonableness was insufficient.  *See* Decl. of Joseph M. Fisher Re: Notice Program (Doc. No. 3863) ("Fisher Decl."). First, Mr. Fisher claims that the print Notice reached 58% of class members over the age of 30 who own televisions or computers with household incomes of at least $60,000.  That reach is insufficient to satisfy Rule 23 and due process.   "It is reasonable to reach between 70-95%."[5]  To reach that reasonableness standard, Mr. Fisher represents that "paid Internet advertising" consisting of digital advertisements will increase the Notice's reach to 80% of the target audience and cites digital media analysis to support it.  *See* Fisher Decl. at 11, ¶ 24; 12, n.9.  However, this form of data regarding Internet-based notice programs has been criticized and such programs yield very low response rates.  *See* Notice Checklist at 4.  Moreover, Mr. Fisher's figure fails to take into account the overlap between print media and paid Internet advertising.  *See id.* at 3.  The proper method for determining if the Program was sufficient is for the administrator to state the current number of individual claims received to date.

Review by an independent claims expert is required because of the major faults highlighted herein and by other objecting class members including class counsel, and because the Notice or Claim Program, or both failed as objectively evidenced by the reported claims rate.  Excluded Plaintiffs and the other objectors, including Class Counsel, request that this Court appoint an independent and further request it give serious consideration to the Hilsee Group as an independent evaluator of the class notice program and the claims rate.  *See* Attachment 1 to Aff. of Robert J. Bonsignore-Hilsee Group Website, http://www.hilseegroup.org/contact.php.  The Federal Judicial Center's Notice Checklist recommends that judges critically review a proposed notice program and ask: "Do you have unbiased evidence supporting the plan's adequacy?"  *See* Notice Checklist at 2.

---

[5] "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" ("Notice Checklist"),  Fed. Judi. Center (2010), at 3 (available at http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf).  *See also Walter v. Hughes Comms., Inc.*, No. 09-2136-SC, 2011 WL 2650711 at *15 (N.D. Cal. July 6, 2011).

1   It lists questions the Independent should be asked to answer.  Objectively, there is no evidence in

2   the record that Fisher had the capacity and experience to handle this job.

3      Second, the Notice Program was also flawed because the targeted demographic was not the

4   primary purchasers of CRT TVs, which were products at the low-end of the television market

5   during the Class Period.  The Notice was directed to households with adults aged 30+ years old at

6   the start of the Class Period.  Those targets are now over 50 years old with an average $60,000 in

7   household income.  Lower-income families were not targeted by the Notice Program.  Fisher and

8   Lead Counsel provide no reliable evidence establishing that the undisputed demographic *at the*

9   *time of purchase* likely received notice as a result of the Notice Program that took no account of

10   the passage of up to 25 years.  In addition, no explanation is given as to why the class member

11   demographic was not the starting point from which the Notice Program was designed.

12      Third, the means of notice excluded a critical outlet.  Given the CRT product in issue,

13   television is obviously among most likely sources of Notice to reach a class of TV purchasers.

14   There was no evidence in the record that established that Notice was published on TV.  Fourth, a

15   large segment of the putative class did not speak English as a first language. There is no evidence

16   in the record that establishes that Notice was given in any language but English, or that it was even

17   considered.  Fifth, there is insufficient evidence that the Notice reached foreign residents.  The

18   Master relied upon the Fisher representation that claims by non-United States residents had been

19   submitted.  The mere fact that some persons in a certain foreign country received Notice simply is

20   not dispositive evidence that the Notice reached any sizable segment of that population.

21      "Where notice to a class has been inadequate, it may be appropriate to reject the settlement

22   in its entirety."  *Kaufman v. American Express Travel Related Servs., Inc.*, 283 F.R.D. 404, 408

23   (N.D. Ill. 2012).  Such is the precise case here, and the Settlement Agreement should be rejected.

**B. The Master's Failure To Engage A Neutral Expert To Evaluate The Notice Program**
24     **Renders His Determination That It Was Reasonable Defective**

25

26      The Excluded Plaintiffs specifically objected to the representations made by Fisher,

27   described the Notice Program flaws, and sought appointment of a neutral expert to support their

28   objections.  *See* Doc. No. 4119.  That request was denied, and the Master issued the Report

1  discounting their objections, finding an expert to be "unnecessary in light of the persuasive

2  evidence before him" and notice reasonable without the benefit of a contrary view.[6]  *See* Report at

3  49.  Incredibly, on the Report's very next page, the Master faults the objectors for not providing

4  expert testimony, stating that "Objectors could have, but did not, submit any contrary expert

5  evidence."  *See id.* at 50; *compare with* Special Master's position in Hearing Tr. at 82:22-25; 83:1-

6  2.  The responsibilities and fiduciary duty this Court has toward absent class members is well-

7  established and previously addressed in detail.  The Master's Report itself acknowledges the

8  importance that expert testimony had and could have had upon his endorsement of the Notice

9  Program.  *See, e.g.*, *Kaufman v. Am. Exp. Travel Related Servs., Inc*., 283 F.R.D. 404, 405 (N.D.

10 Ill. 2012).  His failure to engage a neutral expert to assist him in that analysis was fatal error.

## OBJECTION 3
### THE SPECIAL MASTER'S ATTORNEYS' FEES AWARD WAS NOT SUPPORTED BY ADEQUATE EVIDENCE OF HOURLY RECORD KEEPING

13          In recommending approval of the attorneys' fees award requested by Lead Counsel, the

14 Special Master specifically endorsed class counsel's billing records as "highly reliable and

15 detailed."  *See* Report at 73.  That finding was in error.  The Master endorsed the billing records of

16 Lead Counsel Alioto despite evidence that he admitted that he did not keep contemporaneous time

17 records.  *See id.* at 71.  Counsel for the Excluded Plaintiffs submitted a declaration stating that

18 Alioto expressly told him he did not perform that task.  The Special Master brushed aside his

19 declaration, finding it to be "unsupported hearsay."  However, the Federal Rules of Evidence do

20 not apply at a fairness hearing.  *UAW v. General Motors Corp.,* 235 F.R.D. 383, 386-87 (E.D.

21 Mich. 2006); *Union Assets Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012).

22 Notably, Lead Counsel has stated that it required all indirect product purchaser counsel to submit

23 contemporaneously made time entries.  *See* IPP Mot. for Attorneys' Fees (Doc. No. 4071) at 26.

24          Also, Lead Counsel and so-called trial counsel have demanded a significant multiplier.

25 Lead Counsel did not do his job because he excluded absent class members from an economic

---

[6] The Special Master delayed the request to hire a neutral expert to evaluate the Notice Program until it was too late for the Excluded Plaintiffs to react and respond.  Hearing Tr. 82:11-25; 83:1-2.

recovery class and because he did not manage the litigation excellently as otherwise detailed by the Excluded Plaintiffs and the other objecting class members.  For example, Lead Counsel needlessly called in trial counsel.

The Special Master erroneously permitted block billing as an endorsed practice.  *See* Report at 73.  Courts have discretion to reduce block billed hours because they render it difficult to determine whether fees are unnecessarily duplicative or unreasonable.  *See Welch*, 480 F.3d at 948; *Hajro v. U.S. Citizenship & Immigration Servs.*, 900 F. Supp. 2d 1034 (N.D. Cal. 2012). Despite this criticism, the Special Master found it "silly" to require a lawyer to show the specific amount of time spent on each action during the day.  *See* Report at 73.  Block billing is grounds to reject a fee request for Lead Counsel here.  *See* ABA Model Rule 1.5, comment 5.

## OBJECTION 4
## THE SPECIAL MASTER ERRED IN FAILING TO INCLUDE THE EXCLUDED PLAINTIFFS IN THE AWARD OF INCENTIVE FEES

The Special Master awarded two types of incentive payments:  $25,000 to the 25 court-appointed class representatives and $5000 to an additional 15 individuals who were not appointed by the court but had been named plaintiffs for various states for a period of time.  *See* Report at 75. His award to the non-appointed state representatives was apparently based upon the more than perfunctory efforts they undertook in connection with this case.  It was improper to exclude Massachusetts state representative Gianasca.  Mr. Gianasca was a named plaintiff in one of Lead Counsel's complaints.  *See* Doc. No. 4144, Attachment 2, ¶ 12 .  Like all other non-appointed state representatives who received an award, he "searched for documentation and worked on discovery responses" and was deposed.  *See* Report at 75-76.  Mr. Gianasca should be treated equally with the other non-appointed state representatives who expended significant efforts in connection with this litigation.  In addition, the remaining Excluded Plaintiffs also deserve $5000 incentive awards for their effort in bringing similarly situated class members' interests before this Court.

## OBJECTION 5
## THE SPECIAL MASTER ERRED IN FINDING THAT LEAD COUNSEL COULD CORRECT THE DUE PROCESS VIOLATIONS COMMITTED BY DEVISING AN ALLOCATION PLAN THAT ABANDONED CHUNGHWA CLASS MEMBERS

1    In addition to his abandonment of the Excluded Plaintiffs, Lead Counsel similarly

2  disregarded certain claims to a portion of the settlement proceeds that he himself previously

3  negotiated for from defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa"), noticed and sought

4  court approval.  His failure to provide for the proper distribution of that portion of the Settlement

5  Agreement funds renders the distribution plan defective and the proposed notice inaccurate.  In his

6  Report, the Special Master correctly found that the Settlement Agreement's plan of allocation

7  violated due process.  *See* Report at 44.  Yet he then committed legal error in concluding that Lead

8  Counsel can correct the defects by using an approach that would result in those Chunghwa class

9  members being treated differently than others.  Lead Counsel's breach of fiduciary duty, and the

10  violations of due process it has created, dictate the wholesale rejection of the Agreement.[7]

11    Prior to reaching the current Agreement with the Defendants, Lead Counsel negotiated a

12  settlement with defendant Chunghwa providing for the creation of a net settlement fund of no less

13  than $5 million.  The Settlement Agreement includes that $5 million within its plan of distribution

14  and allocates it the same as the funds received from the Defendants.  However, the Chunghwa

15  settlement (the "Chunghwa Agreement") and the current Settlement Agreement differ in two key

16  respects.  First, the agreements bind and benefit different classes of indirect purchasers.  The

17  Settlement Agreement defines its classes as including indirect purchasers of CRT products bought

18  only "for their own use and not for resale."  *See* Report at 43.  This directly conflicts with the

19  terms of the Chunghwa Agreement, which includes payment terms for all indirect purchasers,

20  including both end-users and resellers.  *See* Doc. No. 884-1 at Ex. 1, ¶ 1.  The court-approved

21  notice published for the Chunghwa Agreement explicitly stated that "[b]oth consumers and

22  resellers are included in the Settlement Class."  *See* Doc. No. 1063, Ex. B; *see also* Doc. No. 1105,

23  ¶ 6.  Also, the Chunghwa Agreement includes Illinois and Oregon in its damages distribution

24  which are not included in the Agreement's State Damages Class.  *See* Doc. No. 993, ¶ 10.

25    Second, the method of dividing up the settlement funds is defined differently by each

26

27  [7] In the alternative, the Excluded Plaintiffs request this Court order: 1) the Chunghwa and

28  Excluded Plaintiffs from Massachusetts, Missouri, and New Hampshire be included in the

settlement.  The current Settlement Agreement's plan of distribution provides for a pro-rata

division by claim; whereas under the court-approved Chunghwa plan,

> [e]ach State listed in the operative complaint for which damage claims are being
> asserted, plus the states of Illinois and Oregon, shall receive a pro rata share of the
> Net Settlement Fund.  Each state's pro rata share shall be determined by computing
> its population as a percentage of the total population of all states.

*See* Doc. No. 993 at ¶ 10.  The court-approved notice explicitly stated this. *See* Doc. No. 1063 at 4.

If the Settlement Agreement's plan is approved, resellers of CRT products who released all

their rights against Chunghwa in exchange for the right to share in the $5 million settlement will

receive nothing.  All indirect purchasers, both consumers and resellers, in Illinois and Oregon will

receive nothing.  For those Chunghwa Class members lucky enough to qualify for damages under

the Settlement Agreement, their bargained-for state-based pro rata share in the $5 million

settlement proceeds will be discarded and a new pro-rata by total claims rate of compensation

imposed.  All of the foregoing will be imposed in derogation of the notice given to the Chunghwa

Class members and approved by the Court.  The impermissible conflicts of interests that infected

the allocation plan extend to each part of the Settlement Agreement and cannot be remedied.  The

due process violations and fiduciary duty breaches dictate as wholesale rejection of the Agreement.

## CONCLUSION

For the foregoing reasons, Plaintiffs request the Court reject the Special Master's Report

and Recommendation and reject the proposed Settlement Agreement, reduce or reject Lead

Counsel's fee application, and, further order:

1. Monetary compensation, re-notice and an extension of the claims period for the
   Chunghwa Settlement Class, and the Excluded Massachusetts, Missouri and New
   Hampshire Settlement Classes;

2. The appointment by this Court of a qualified expert on class action notice
   programs and claims rates so that a full evaluation of the Notice Program
   including claims rates can be carried out.  The Excluded Plaintiffs request this
   Court give serious consideration to appointing the Hilsee Group as an
   independent evaluator of the Class Notice program and the claims rate.  *See*
   http://www.hilseegroup.org/contact.php;

---

monetary recovery distribution; 2) re-notice; 3) the claim period be extended.

3.     Lead Counsel and the claims administrator to immediately disclose full and complete claims rate data, the details of the Class Notice, and any and all other information deemed necessary and reasonable by a court appointed qualified expert on class action notice programs and claims rates for a full evaluation of the Notice Program and claims rate to be carried out on behalf of absent or excluded members;

4.     In the alternative grant, the authority, full disclosure of the underlying data, and time for a retained expert to prepare a related report for objecting class members. Specifically, if this Court will not retain the Hilsee Group as an independent evaluator of the Notice Program and claims rate, allow the objecting class members, to hire an expert and provide them with sufficient data to perform an evaluation;

5.     Re-notice and an extension of the claims period for the entire "Economic Recovery Class" using an experienced and qualified claims administrator and a notice plan that satisfies the Federal Judicial Center's criteria and otherwise addresses the deficiencies raised by the objecting class members, including the Excluded Plaintiffs and Class Counsel; *See* Attachment 2 to Affidavit of Robert J. Bonsignore http://www.fjc.gov/public/home.nsf/autoframe?openform&url_l=/public/home.nsf/inavgeneral?openpage&url_r=/public/home.nsf/pages/376;

6.     Otherwise, that the objectively unacceptable claims rate be investigated and addressed after full disclosure of the underlying data is provided to the objecting class members (*see* Attachment 3 – Shannon Wheatman, *Accurately Reporting Notice Results to Courts,* Rust Kinsella Consulting Media, December 2015);

7.     Lead Counsel to provide to all objecting class members full and complete time, billing and expense records for the entire period for which compensation is claimed;

8.     The Court will carry out a full detailed review of the IPP Counsels' time records and expenses in accordance with the ABA Attorney Billing Guidelines;

9.     Incentive award granted to the Excluded Plaintiff Anthony Gianasca and the Excluded Plaintiffs; and

10.    Attorney fees and costs for the Excluded Plaintiffs because their good faith objection has brought about a benefit to the class.

and grant such further and other relief as this Court deems just and proper.

Dated: February 26, 2016          Robert J. Bonsignore

/s/ Robert J. Bonsignore
Robert J. Bonsignore (NH No. 21241)
Bonsignore Trial Lawyers, PLLC
3771 Meadowcrest Drive
Las Vegas, NV 89121
Telephone:  (781) 856-7650
Facsimile: (702) 852-5726

rbonsignore@class-actions.us

1

**<u>CERTIFICATE OF SERVICE</u>**

2

3

I, Robert J. Bonsignore, hereby certify that on this 26th day of February, 2016, I caused the

4

foregoing to be electronically filed with the Clerk of the Court by using the Case

5

Management/Electronic Case Filing (CM/ECF) system, which will send a notice of electronic

6

filing to all parties registered with the CM/ECF system in the above-captioned matter.  A copy will

7

be forwarded via first class mail, postage prepaid, to those parties not electronically registered.

8

9

10

*/s/ Robert J. Bonsignore*
Robert J. Bonsignore

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND AWARD OF ATTORNEYS' FEES AND OTHER EXPENSES AND AWARDS AND REQUEST FOR DE NOVO ORDER
Case No. 3:07-cv-5944, MDL No. 1917