# ATTACHMENT 3



# Accurately Reporting Notice Results to Courts
## What We've Noticed

December 2015

by Shannon Wheatman, Ph.D. and Alicia Gehring

## ABOUT WHAT WE'VE NOTICED

*What We've Noticed* is a periodic publication from Rust Consulting and Kinsella Media highlighting current trends and best practices.

## ABOUT THE AUTHORS



**Shannon Wheatman, Ph.D.**, is the president of Kinsella Media. Dr. Wheatman uses her analytical expertise in designing, developing, analyzing, and implementing large-scale legal notification plans. She has implemented numerous programs using creative techniques that have successfully stimulated claims.
**D:** 202.379.1150
**E:** swheatman@kinsellamedia.com



**Alicia Gehring** manages a team of media planners while staying on top of the ever-evolving trends in media. She has worked in the advertising industry for more than 20 years, overseeing high-profile national campaigns as well as working with regional clients. Before coming to Kinsella Media, Alicia held positions at recognized ad agencies in New York, Louisville, and Washington D.C.
**D:** 202.686.4111
**E:** agehring@kinsellamedia.com

## ABOUT RUST CONSULTING AND KINSELLA MEDIA

The nation's leading class action administration and notification firms, Rust Consulting and Kinsella Media also provide companies an array of non-settlement solutions. With skills and expertise in project and data management, plain language, notice program design and implementation, contact centers, claims processing, and fund distribution, we manage unexpected crisis communications or administrative needs so you can focus on your core business functions. Our non-settlement services include data breach responses, plain language services, product recalls, and remediation programs.



@RustConsulting
@KinsellaMedia



linkedin.com/company/
rust-consulting

linkedin.com/company/
kinsella-media-llc

# Accurately Reporting Notice Results to Courts

## What We've Noticed

December 2015

by Shannon Wheatman, Ph.D. and Alicia Gehring

While the industry publicly debates questions of notice—direct versus media notice; the appropriate mix of print, broadcast, and online delivery; acceptable minimum notice reach—a more troublesome trend simmers beneath the surface: increasingly, false information is being reported to courts. Presumably unintentionally, unqualified notice providers are making serious errors in their affidavits and declarations. Here are two recent examples:

## Food Case

70%+ reach reported to the court.

**KM estimated the actual measured reach was 16%.**

Incorrectly combined online and print media reach by using two different target audiences that could not be combined. Also assumed every impression delivered online would reach a class member.

## Pharmaceutical Case

80%+ reach reported to the court.

**KM analyzed the notice program and determined the actual measured reach was 67%.**

Errors were found in the calculation of online media as well as the estimated reach from direct mail.

The Federal Judicial Center's Notice Checklist recommends that judges critically review a proposed notice program and ask: "Do you have unbiased evidence supporting the plan's adequacy?"[1]  The FJC Checklist also warns judges to "[b]e careful if the notice plan was developed by a vendor who submitted a low bid and might have incentives to cut corners [in order to win the administration] or cover up any gaps in the notice program."

As noted above, the most obvious issue resulting in inaccuracies is incorrect measurement of the online notice's effectiveness. An experienced media professional relies on trusted third-party tools to correctly measure and report total reach against a correctly defined target audience, including tools to measure online delivery. Online now provides unprecedented targeting capabilities, but reporting that delivery must represent the entirety of the class that can be measured across all media: digital, print, and broadcast.

Further compounding the problem are digital challenges including ad fraud, relevancy, and transparency. Today's digital capabilities make it crucial to rely on correctly reported online reach and to be diligent in watching for incorrectly reported figures. A challenge such as ad fraud (ads being served to 'bots,' or non-human traffic) requires experienced digital professionals to closely monitor online activity. Media professionals must also closely monitor campaigns to ensure ads are delivered in relevant, trusted editorial environments and deliver what was promised.

Asking pertinent questions will help practitioners vet notice providers (or preferably, notice experts) and ensure the resulting programs are reported accurately and found acceptable to courts.

---

[1] Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, available at http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf, at 2.

# WHO IS A NOTICE EXPERT?

All of this begs the question, who should be trusted as a notice expert? Many claims administrators have become "notice experts" overnight, providing courts with case citations their firm administered … without clarifying that they did not opine to these notice programs. At a minimum, a notice expert should possess all of the following traits:

- Recognition by courts of expert status through court testimony.
- Training and/or in-depth experience in media planning and paid media measurement.
- Thorough knowledge of Rule 23 and particularly of 23(c)(2)(B) requirements for notice.
- Ability to translate complicated legal issues into accurate plain language that facilitates class member understanding of the litigation and their legal rights.
- Creation of effective print, Internet, radio, and TV notices consistent with best advertising practices.
- Understanding of direct notice deliverability issues that affect notice sufficiency, whether in email, postcard, or other mailed notice formats.
- Ability to combine direct notice reach, when known, with media reach to ascertain overall unduplicated reach of class members.

## VETTING NOTICE PROVIDERS: SAMPLE QUESTIONAIRRE

- **Is the notice provider's CV limited to cases on which they worked on a notice program as an expert?**
  Or does it include cases administered, without rendering an opinion?

- **Who calculated the reach of the notice program?**
  If an outside vendor, find another expert because you are not relying on an outside vendor for an opinion.

- **What target audience is being used for measurement?**
  Is it different for print and online? If so, ask the notice provider how he/she can combine apples and oranges?

- **What tools or software are being used to evaluate reach and frequency?**
  Are they industry standard (GfK MRI, comScore)?

- **Does the plan provide a mix of media?**
  Some notice providers are pushing online-only plans (without any direct notice) despite the fact that 100% of class members are not online when ads are being delivered. Almost 17% of Adults 18+ have not used the Internet in the last 30 days and that number increases to 30% for Adults 50+ and 45% for Adults 65+.[2]

- **Does the plan include reach from a press release, search ads, or other online media where reach cannot be measured?**
  Don't include reach from media that cannot be measured at the beginning of the notice program. If you include it as a measured reach at the end, your expert needs to detail how reach was calculated.

- **Does the plan factor out duplication?**
  *E.g.*, 50% reach online + 30% reach direct mail does not equal 80%. (It equals 65% because of duplication.)

- **How was the reach of Internet components calculated?**
  Notice providers must rely on trusted measurement tools such as Comscore, the leading Internet analytics company and the standard tool for measuring online media reach. A plan should reference which online measurement software was used in reach calculations to ensure best practices are used.

---

[2] GFK MRI 2015 Doublebase.