Martin Quinn
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
Telephone: (415) 774-2669
Fax: (415) 982-5287
Special Master

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917<br>Case No. C-07-5944-SC |
| This Document Relates to:<br><br>ALL ACTIONS | **SPECIAL MASTER'S SUPPLEMENTAL REPORT AND RECOMMENDATION RE CHUNGHWA ALLOCATION ISSUE IN CONNECTION WITH INDIRECT PURCHASER PLAINTIFFS' SETTLEMENT** |

Introduction

The Special Master's Report & Recommendation regarding the IPP settlement (Dkt. No. 4351) ("R&R") disapproved the proposed plan of allocation because it failed to distribute the $10 million fund from the Chunghwa settlement in accordance with the judgment that approved its terms. (R&R, pp. 42-46). In accordance with the direction in the R&R, Lead Counsel submitted a proposal to remedy the perceived defects. (Alioto ltr. dtd. 2/5/16, filed on Case Anywhere)[1] Objectors Cooper and Scarpulla submitted objections to Lead Counsel's proposal.

---

[1] The documents filed on Case Anywhere in connection with this issue are attached hereto for the Court's convenience.

(Cooper ltr. dtd. 2/12/16, filed on Case Anywhere). Lead Counsel submitted a timely Reply. (Alioto ltr. dtd. 2/23/16, filed on Case Anywhere). No other comments or objections were submitted on this issue.

For the following reasons, the Special Master recommends that the Court find that Lead Counsel's proposal, with some minor refinements, does adequately cure the deficiencies of the prior allocation plan. The Special Master finds there is no need to separate the consideration of this issue from the rest of the IPP settlement as Lead Counsel proposes, and unless the Court determines it needs more time both issues should proceed to resolution on the current schedule.

## Analysis

The R&R found that the allocation plan was faulty in two respects. First, it did not provide any distribution to resellers as contemplated by the Chunghwa settlement. Second, it distributed the entire net Overall Settlement Fund *pro rata* to approved end user claimants in the 22 settlement class states, thus ignoring the Chunghwa judgment that called for distributing the Chunghwa Net Settlement Fund to end user claimants in 24 states *pro rata* in accordance with the population of each state.[2]

### Lead Counsel's Proposal

Reseller Issue. Lead Counsel proposes to cure the reseller omission as follows. The Court would order the claim period reopened for 120 days for resellers in the 24 Chunghwa settlement states. Notice would be provided to resellers by e-mail and regular mail, press release, on the settlement website, and by print media. Resellers would have 60 days to object to the settlement. Approved reseller claimants could receive a maximum of three times their proved damages. The total amount distributable to all retailers would be 50% of the Net Chunghwa Settlement Fund, which the Chunghwa approved settlement provides will be no less than $5 million. Thus, Lead Counsel proposes distributing up to $2.5 million to approved claimant resellers. Any part of the $2.5 million remaining after payment of all approved reseller claims would be moved to the Chunghwa fund for distribution to end users (described below).

---

[2] The 24 Chunghwa states are identical to the 22 settlement class states for the overall settlement, with the addition of Illinois and Oregon which are not part of the larger settlement class.

<u>End User Issue</u>. Lead Counsel deals with the allocation to end users as follows. First, he recommends dividing the Chunghwa Net Settlement Fund of at least $5 million 50/50 between resellers and end users. Second, since Illinois and Oregon were to receive funds under the Chunghwa settlement but are not included in the larger settlement class, Lead Counsel would pay to the Attorneys General of those two states the percentage shares of the Net Settlement Fund they would have received based on their populations under the Chunghwa deal. Lead Counsel calculates that Illinois would have received 8.59% ($429,500) and Oregon 2.37% ($118,500). Third, Lead Counsel proposes that the balance of the end users' 50% portion (and any undistributed amount from the reseller 50% portion) be paid to the other 22 states as provided in the Chunghwa settlement, *pro rata* in accordance with their populations. Fourth, notice would be provided to end users in two ways: on the settlement website that all class members have been repeatedly instructed to check, and by e-mail and regular mail to every approved claimant to the Overall Settlement Fund. The Claims Administrator will calculate each state's share and account for the distributions.

The bottom line of Lead Counsel's proposal is that the Chunghwa Net Settlement Fund of no less than $5 million will be distributed precisely in accordance with the approved Chunghwa settlement terms — with one exception. The concept of dividing the distribution 50/50 between resellers and end users is new; it was not part of the original Chunghwa deal. Originally the Net Settlement Fund would have been divided among the 24 states by population, and all claimants in each state, reseller and end user alike, would have shared *pro rata* in the amount allocated to that state.

<u>Treatment of Expenses</u>. The Chunghwa settlement deducted from the $10 million settlement fund 25% for attorneys' fees and attorneys' expenses, and a $2.5 million set aside to pay future litigation costs, leaving a Net Settlement Fund of no less than $5 million. Lead Counsel represents that all the set aside has been spent on litigation expenses, leaving $5 million as the net amount. Lead Counsel has offered to provide an accounting of the expenditures.

//

//

## Cooper/Scarpulla Objections

Mr. Cooper's letter raises five objections and questions about Lead Counsel's plan. First, he asks that the claim period be reopened for 120 days for all claimants, not just resellers. Second, he reserves the right to object to the adequacy of the proposed notice once Lead Counsel provides details. Third, he asks that all additional costs of notice and administration be borne not by the settlement class but by Lead Counsel. Fourth, he objects that charging the Chunghwa settlement class with approximately $2.5 million of the total $7,634,372.50 of litigation expenses disproportionately burdens the Chunghwa settlement class, and specifically the resellers. Fifth, he contends there is no rational basis for the 50/50 split between end users and resellers.

## Whether Lead Counsel's Proposal Is Fair and Reasonable

Reopening the Claim Period.  Cooper/Scarpulla offer no compelling reason to reopen the claim period for all claimants.  To date, the Court has only reopened the claim period to remedy a discrete need — for California residents to coordinate with the companion California state court action.  It should now only reopen the claim period for another discrete need — to give resellers their first opportunity to submit claims under the Chunghwa settlement.  End users have had a fair opportunity to submit claims and have done so.  No one claims that the period for submitting claims was unduly short.  Cooper/Scarpulla argue that the claims response — about 109,000 claims covering 19 million CRT's — was anemic, but they offer no basis for their conclusion other than a very imperfect comparison to the *LCD* case.  Lead Counsel persuasively noted that the claims period in this case stretches back 20 year and the product is obsolete.  Lead Counsel represents that the 19 million CRTs for which claims were submitted compares favorably with the 9 million LCD panels claimed for in that case.  In short, there is no compelling reason to incur the significant cost and delay of reopening the claim period for claimants other than resellers.  The 120 day claim period for resellers and the 60 day period within which to object is fair and reasonable.

Adequacy of Notice.  The proposed notice to resellers seems on its surface fully adequate:  mail and e-mail to known resellers (who tend to be known large entities), print media, the settlement website and a press release.  This quite robust multi-faceted notice is appropriately

4

targeted to reach a group that has never had an opportunity to submit claims. However, Lead Counsel should submit with his proposed form of notice a declaration that details the proposed reach and completeness of this notice.

The notice proposed for end users is far more limited — notification on the settlement website and mail and e-mail notice to approved claimants. However, end users are being informed only of a few very minor new facts: (1) that the total amount to be distributed to them will be diminished by about $2.8 million (Lead Counsel's estimate) as a result of the carve-out of funds for resellers, that a tiny amount of their distribution will be divided pro rata among states by population rather than pro rata to claimants, and that they will receive about $19 million more than anticipated as a result of the trimming of attorneys' fees. This is hardly earth-shaking news that is likely to move any end user to take action. Moreover, the notice will be sent directly to those end users who have demonstrated their interest in the settlement by submitting approved claims. The plan is commendably cost-effective. *See In re Groupon Mktg. Sales Practices Litig.*, 594 Fed. App. 699,701 (9th Cir. 2015) (courts permitted to make *de minimis* alterations in class settlement allocation plan without providing additional notice).

The Court will fully evaluate the adequacy of proposed notice when Lead Counsel submits his motion for its approval with the form of notice and supporting declarations. But subject to that detailed evaluation the Special Master recommends approval of Lead Counsel's planned notice to both resellers and end users. Cooper/Scarpulla should have an opportunity to comment on the proposed form of notice when it is filed.

Who Pays for Increased Notice/Administration Costs. Lead Counsel estimates that the increased notice cost will be about $100,000. Presumably there will be some minor increased cost to administer the more complex Chunghwa state-by-state distributions. Cooper/Scarpulla want Lead Counsel to pay these costs out of his attorneys' fee award; unsurprisingly Lead Counsel urges that any added cost come out of the settlement fund.

This is an issue of very little financial impact to either the settlement fund or in relation to Lead Counsel's likely fee. It is, however, a matter of fairness. First, it is relevant that the real added cost is very small. The estimated $100,000 in new costs is undoubtedly almost entirely

due to notice to resellers since the proposed notice to end users is virtually cost-free. Even if Lead Counsel had properly proposed notice to resellers as part of the original notice program, much of that cost would have been incurred anyway. Second, there is no evidence of genuine misconduct or bad faith by Lead Counsel. The Special Master has concluded that Lead Counsel made an error in judgment in determining that the Chunghwa distribution plan was so *de minimis* that it could be ignored. But there is no evidence that it was anything other than an error or oversight. However, in the final analysis an error is an error, and there is no reason to burden the class even slightly with the cost of putting it right. Therefore, the Special Master concludes that Lead Counsel should provide an accounting of the cost of notice and added administration costs, including an estimate from the notice company of what portion of the costs would not have been incurred had the original allocation program provided for the Chunghwa settlement terms. All additional notice and administration costs caused by the delay in conforming the Chunghwa settlement terms to the overall proposed allocation shall be deducted from the attorney fee award, not from the amount available for distribution to the settlement class.[3]

Misallocation of Litigation Expenses. This is Cooper/Scarpulla's most cogent criticism. Some ambiguity lingers in Lead Counsel's proposed treatment of expenses, but he appears to propose that the Chunghwa $2.5 million set-aside that was all spent on litigation costs reduces the $10 million Chunghwa total settlement. The Special Master assumes that the $2.5 million set-aside is about one-third of the total of $7,634,372.50. Shrinking the Net Settlement Fund for the Chunghwa class by this reduction largely impacts the resellers.[4] Mr. Cooper estimates that a more equitable allocation of expenses would increase the Net Settlement Fund from $5 million to about $7.3 million.

It is difficult to see a justification for burdening the Chunghwa resellers with $2.5 million of the total of $7,634,372.50 in litigation expenses. It is more appropriate to allocate total

---

[3] Mr. Cooper proposes that Lead Counsel bear the added cost, but the Special Master believes it is fairer to charge the costs to the attorneys' fee award generally. Lead Counsel was not in this alone; his faulty allocation plan was presumably known to and approved by numerous other class counsel.
[4] The only negligible impact on end users is that a smaller amount is distributed by the Chunghwa formula (*pro rata* by states) rather than the overall allocation formula (*pro rata* by claimants).

6

litigation costs in proportion to the $10 million Chunghwa settlement amount and the remaining overall settlement amount of $566 million. Therefore, the Special Master recommends that total litigation expenses be apportioned pro rata between the Chunghwa class and the overall class so that the $2.5 million set-aside be charged only with any Chunghwa-specific expenses and a pro rata share of general litigation expenses. Lead Counsel should provide an estimate of that calculation which shall include an accounting of any Chunghwa-specific expenses to be charged against the set-aside. It is unnecessary for reasons stated in the R&R to provide any further details of overall litigation expenses.

Fairness of 50/50 Split. Cooper/Scarpulla do not argue that the proposed 50/50 split of distributable Chunghwa funds between resellers and end users is unfair. They simply argue it is arbitrary and lacks an adequate factual support for Court approval. They are right that Lead Counsel offered no empirical support for a 50/50 split, and relied solely on another court's approval of such a split. See Sullivan v. DB Investments, Inc., 667 F.3d 273 (3rd Cir. 2011) (en banc). Other than 50/50 there are two ways to divide the Chunghwa distribution amount: choose a different percentage split, or distribute the entire amount pro rata to end users and resellers alike. One could also defer a decision on the split until claims have been submitted in order to evaluate the volume of reseller vs. end user claims. And as Cooper/Scarpulla urge one could expend time and expense taking evidence, briefing and arguing the issue.

Given these alternatives, the very small amount at stake and the negligible impact on claimants of choosing some other alternative, the Special Master concludes that the proposed 50/50 split is likely to be as effective and fair as any other, and that expending further counsel and Court time on the issue is not cost-effective. Moreover, the 50/50 split has one important feature – it protects end users in the Chunghwa distribution pool from being overwhelmed by large volume claims from big resellers.

### Conclusion

Good cause appearing, the Special Master recommends that the Court ORDER:

1. Lead Counsel's proposal for an allocation that complies with the Chunghwa settlement terms be approved except as stated herein;

2. Lead Counsel shall file a proposed form of notice and supporting justification by March 7, 2016.

3. Lead Counsel shall provide by March 7, 2016 estimated details of additional notice and administration expenses to be incurred, and supplement this information when actual expenses have been incurred. All additional costs resulting from the delay in incorporating the Chunghwa terms shall be charged against the attorney fee award, not against the funds available for the settlement class.

4. Lead Counsel shall provide by March 7, 2016 an accounting of any Chunghwa-specific litigation expenses and a calculation of the Chunghwa Net Settlement Fund after applying the Special Master's recommendation for charging expenses against the Chunghwa set-aside.

Dated: February 29, 2016

Martin Quinn, Special Master

# ATTACHMENT 1

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

February 23, 2016

<u>**VIA JAMS E-FILING**</u>

Martin Quinn, Special Master
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

**Re:**   *In Re: Cathode Ray Tubes (CRT) Antitrust Litigation,*
      **Case No. 07-cv-5944 JST, MDL 1917**

Dear Special Master Quinn:

Pursuant to the Special Master's January 28th R&R, on February 5, 2016, Class Counsel set forth a detailed plan to address the Special Master's concern relating to the allocation of $5 million in Chunghwa settlement funds (the "Net Settlement Fund").

By letter dated February 12, 2016, Joseph Cooper and Fran Scarpulla ("Cooper/Scarpulla") made certain "comments\objections" to Lead Counsel's proposal. Importantly, they did not object to the Special Master issuing a brief supplemental R&R advising Judge Tigar that the Chunghwa allocation issues be addressed on a separate track by the Special Master and that Judge Tigar should proceed with his analysis of the pending settlements, aggregate fee, and non-Chunghwa distribution issues. Thus, all are in agreement that the Chunghwa allocation issues should be on a separate track.

The four arguments raised in Cooper\Scarpulla's "comments\objections" to Lead Counsel's detailed proposal should be rejected.

<u>**Claims Period**</u>

Cooper/Scarpulla's suggestion that the claims period be reopened for all class members is unnecessary. The Special Master identified a discrete issue, namely, that the proposed Chunghwa allocation did not include resellers. Lead Counsel addressed that issue by proposing the reopening of the claims period for 120 days for purposes of collecting claims from resellers. None of Cooper/Scarpulla's arguments for reopening claims more broadly make sense.

- First, while it's true that objections were "interposed to the original notice program," (Cooper/Scarpulla Ltr. at 1), the Special Master recommended that "all notice objections be overruled" because "of the persuasive evidence before him to conclude that the Notice Program that has been implemented is fair, adequate and reasonable under the tenets of Rule 23."

R&R at 49, 51. Thus, the unfounded objections to the original notice program provide no basis for reopening the claims process generally.

- Second, Cooper/Scarpulla are wrong when they state that there has been a "poor claims experience to date." Cooper/Scarpulla Ltr. at 1. In fact, more than 100,000 timely claims submissions have been filed and, and as of mid-January, the processed claims totaled over 19 million CRT units. *See* Declaration of Joseph M. Fisher dated January 15, 2016.[1]

- Finally, the fact that the claims period was extended for California residents – again to address a discrete issue – does not mean that the claims process should be reopened for all. Cooper/Scarpulla Ltr. at 1. The Special Master has already determined (and the Court has overruled the objection to this determination) that the claims deadline does not require extension for all Class Members simply because the deadline was extended for California residents, and there is no sound reason for changing course now. The claims deadline has passed. The timely claims that have been made should be processed and tabulated without further delay.

---

[1] Cooper/Scarpulla's comparison to the *LCD* claims rate is both irrelevant and erroneous for several reasons. First, *post hoc* analysis of claims rates is not the proper metric for evaluating whether a notice program was reasonable. Claims rates are a function of numerous factors beyond the notice program, including the size of a consumer's expected recovery, the passage of time since the product was purchased, and many other case- and class-specific considerations. The simple fact is that most consumers never bother to file claims in many cases—even after proper notice. But that hardly makes the notice itself defective. Second, the claims rate here is strong. The number of claims received as of December 7, 2015 deadline was 109,709 timely claims with a total of 19.9 million CRT units claimed. *See* Declaration of Joseph M. Fisher Reporting on Claims Submissions, Dkt. No. 4402-1 at 180 ¶ 4b. Third, the *LCD* claims rate cited by Cooper/Scarpulla is an apples-to-oranges comparison. For example, Objectors fail to disclose that the *LCD* settlement fund continued accepting claims for eighteen months after the original Court-ordered claims deadline. *See In re TFT-LCD Antitrust Litig.*, No. 07-cv-10827, Dkt. No. 9217-2 at 2, Exhibit A Claims Summary (N.D. Cal. 2012). Obviously a substantially longer claims period is likely to yield more claims. Moreover, the actual number of units claimed in LCD was only 9.6 million—far less than the 19.9 million CRT units claimed here. *Id.* at Dkt. No. 7572, page 2. The LCD claims process also started in 2012 for a class period of 1999-2006, meaning claimants were more likely to have retained the relevant products and/or purchase records, which makes filing a claim more likely. Here, in contrast, the products (CRT televisions and monitors) are largely obsolete and the start of the class period dates back more than 20 years. *LCD* was simply a different case, and the claims experience there has little relevance to the claims experience here— let alone to the adequacy of the CRT notice program. There is no basis for attributing the different claim rates to ineffective notice.

## Notice Costs

Cooper/Scarpulla next raise the "question of whether it is appropriate to charge the settlement fund for this new round of notice." Cooper/Scarpulla Ltr. at 2. The answer is yes. Revised notices have been required in many cases and paid for out of settlement funds. *See, e.g., In re Cassesse v. Washington Mut., Inc.*, 27 F. Supp. 3d 335, 338 (E.D.N.Y. 2014); *In re WorldCom, Inc. Securities Litig.*, 388 F. Supp. 2d 319, 328, 359-60 (S.D.N.Y. 2005). *See also* MANUAL FOR COMPLEX LITIGATION, FOURTH § 13.312 ("The parties generally use the settlement agreement to allocate the cost of supplemental notices.").[2]

## Chunghwa Fund Accounting

In requesting an accounting of the Chunghwa settlement funds and suggesting that the overall expenses in the case should be deducted from the Chunghwa settlement only on a "pro rata" basis, Cooper/Scarpulla appear to misunderstand the $5 million Net Chunghwa Settlement Fund. Cooper/Scarpulla Ltr. at 2. Lead Counsel did not calculate the $5 million figure for purposes of its February 5, 2016 letter. To the contrary, the amount was arrived at and documented by Court order in 2011, when the settlement was approved. Specifically, the Court stated that: "[t]he Net Settlement Fund means the $10,000,000 settlement amount, plus interest, minus 25% for attorneys' fees, reimbursement of expenses, $2.5 million for a costs set-aside, including the costs of giving notice to class members and administration of the settlement fund, all of which shall be subject to court approval. The Net Settlement Fund shall be no less than $5 million." (Dkt. 993, at 4 n. 2).

Such cost set-asides are common in ice breaker settlements. As contemplated by the 2011 Court order, the $2.5 million costs set-aside here was used to fund the litigation, including expert fees, certified translations, deposition costs and document review databases. The entire $2.5 million was spent by July 2014. Thus, under the terms of the Court's Order, the Net Settlement Fund is $5 million.

Although Lead Counsel would be happy to provide an accounting and any back up if the Special Master would find it helpful, we respectfully submit that this is

---

[2] As a practical matter, the notice will be cost effective. *See* Alioto February 5, 2016 Letter at 2-3 (proposing website notice, print publication, a nationwide press release, and direct email notice to the list of large resellers notified in the first Chunghwa settlement). Lead Counsel is currently working with The Notice Company to formalize a plan for the supplemental Chunghwa notice, and Lead Counsel believes that, in addition to the types of notice listed above, it will be possible to obtain an email listserv that facilitates direct email notice to the vast majority of resellers nationwide. The cost of all supplemental Chunghwa-related notice efforts is currently estimated at approximately $100,000. Lead Counsel intends to finalize the details of the Chunghwa supplemental notice plan as promptly as possible for submission to the Special Master and, ultimately, the Court.

unnecessary for the same reasons that the Special Master "declined to conduct a more in-depth" review of expenses generally. R&R at 75.

## Chunghwa Allocation

Cooper/Scarpulla also half-heartedly take issue with Lead Counsel's practical solution to split the settlement fund 50/50 between consumers and resellers as was done in *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 290 (3d Cir. 2011) (en banc). Cooper/Scarpulla Ltr. at 3. They do not suggest that the proposed split is inadequate, or propose a split of their own, or propose a process for coming up with a split other than the one proposed by Lead Counsel. Indeed, they acknowledge that "spending great sums of money litigating the division of a comparatively small recovery should be avoided[.]" Scarpulla/Cooper Ltr. at 3. That is precisely Lead Counsel's basic point: that it makes little if any sense to engage in protracted and costly proceedings to arrive at some marginally different formula for distributing a very small percentage of the overall settlement funds to a nationwide class that (already) exceeds 100,000 end-user claimants. Instead, the proposed allocation "need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Rieckborn v. Velti PLC*, No. 13-cv-03889, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015)

Cooper/Scarpulla's suggestion that "it certainly can be argued that separate counsel need to be appointed to represent the interests of resellers" also should be rejected for the same reason that their recent application to be appointed co-lead counsel for indirect purchaser plaintiffs in non-repealer states was rejected. Dkt. No. 4377.

\* \* \* \*

In short, there is no basis in the Cooper/Scarpulla letter for rejecting Lead Counsel's proposal that (1) the Special Master should issue a brief supplemental R&R advising Judge Tigar that the Chunghwa allocation issues will be addressed on a separate track by the Special Master and that Judge Tigar should proceed with his analysis of the pending settlements, aggregate fee and non-Chunghwa distribution issues; (2) Lead Counsel will submit for Court approval a proposed form of notice regarding the revised Chunghwa plan of distribution, the dissemination of which will reopen the 120-day claims period for reseller claims from the Chunghwa fund; and (3) Chunghwa class members should be afforded 60 days to file objections to the Chunghwa plan described in the February 5, 2016 letter, which objections shall be considered by the Special Master.

Respectfully submitted,

*/s/ Mario N. Alioto*
Mario N. Alioto

Lead Counsel for the Indirect Purchaser Plaintiffs

# ATTACHMENT 2

Law Offices
## COOPER & KIRKHAM, P.C.
357 TEHAMA STREET, SECOND FLOOR
SAN FRANCISCO, CALIFORNIA 94103
(415) 788-3030
FAX (415) 882-7040

WRITER'S DIRECT CONTACT
(415) 788-3030 ext. 305
jdc@coopkirk.com

February 12, 2016

**VIA JAMS E-FILING**

Martin Quinn, Special Master
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

Re:   *In re: Cathode Ray Tubes (CRT) Antitrust Litig.,*
      Case No. 07-cv-5944 JST, MDL No. 1917

Dear Special Master Quinn:

This letter is filed in response to the letter brief submitted by Lead Counsel regarding suggested revisions in the proposed Plan of Distribution of the settlement funds to accommodate the previously approved settlement with Chunghwa Picture Tubes, Ltd. (hereinafter "Chunghwa"). Lead Counsel's revisions follow your adoption of the objection made by the undersigned to Lead Counsel's originally proposed Plan of Distribution as it related to the Chunghwa settlement. *See*, R&R at 41-46. As you are aware, our objection pointed to two due process defects in the distribution plan: (1) the absence of reseller participation in the Chunghwa proceeds; and (2) the division of the Chunghwa proceeds *pro rata* among all claimants in 24 jurisdictions, rather than the required initial division into 24 sub-pots based on each jurisdiction's year 2000 population. In the R&R, you found that these defects raised "troublesome due process issues" (R&R at 42:1), and directed "Lead Counsel . . . to propose a detailed plan to correct the[se] due process problems . . . ." (R&R at 46:16-17).

Lead Counsel has submitted his proposal for a revised Plan of Distribution and requested that you issue a supplemental Report and Recommendation approving the new plan. You then "invit[ed] comments and objections" to Lead Counsel's proposals. The undersigned make the following comments/objections thereto:

1. Lead Counsel proposes that "[r]esllers would be notified" and the claims period reopened "for 120 days" solely for the purpose of collecting claims from resellers. However, given the objections that have been interposed to the original notice program and the poor claims experience to date (CRT claims were received at less than half the rate received in *LCD*), coupled with the fact that the claims period for California residents is already being extended, we submit that the claims

period should be re-opened for all putative members of the state settlement classes, and proper notice thereof disseminated.

2. It is unclear exactly what Lead Counsel is proposing as the content of this new notice, or the precise dissemination method he proposes to use. Accordingly, the undersigned reserve their right to comment or object when a specific form of notice and notice plan are proposed. The undersigned do wish to bring to your attention the question of whether it is appropriate to charge the settlement fund for this new round of notice. Lead Counsel was surely aware of the need to fashion a Plan of Distribution that would accommodate the fact that resellers were included in the Chunghwa settlement, as well as the formula for the division of the Chunghwa settlement by state population to which he had agreed. He chose to deal with these issues by ignoring them, and not disclose this course of action to the Court. The fact that this was a poor choice should not be the responsibility of the members of the classes, and should not operate to reduce their recoveries in the event that the settlements are given final approval by the court.

3. Lead Counsel states that "[a]fter deducting attorneys' fees, expenses, costs etc., the Chunghwa Net Settlement Fund" is "approximately $5 million." Lead Counsel has provided no information about how he calculated the $5 million number. We note that taking the gross Chunghwa settlement amount of $10 million, and deducting the maximum 25% fee provided for in the Chunghwa settlement approval order leaves a net fund of $7.5 million. Deducting the Chunghwa settlement's *pro rata* share of the litigation expenses ($7,634,372.50 x ($10,000,000/$576,750,000)) and incentive awards ($45,000 x ($10,000,000/$576,750,000)) approved in the R&R, reduces the net fund to $7,359,828.83. We recognize that there may have been notice costs and claims administration expenses that were paid out of the settlement proceeds and were not included in the amounts considered by the Special Master. However, we question the equity of Lead Counsel's apparently allocating over $2.6 million of these costs to a fund that is approximately 2% of the total settlements achieved. This has the effect of disproportionately burdening the reseller claimants' recoveries. The Chunghwa Preliminary Approval order, which discussed the potential uses of the Chunghwa settlement fund, specifically states that all charges against the gross fund "shall be subject to court approval," and that the net fund "shall be no less that $5 million" (Dkt. 993, at 4 n.2), and we wonder if Lead Counsel simply settled on this number without doing an appropriate apportionment. We urge the Special Master to request an accounting of Lead Counsel's computation of the Net Chunghwa Settlement Fund, and to apply the proper *pro rata* allocation to all cost items so as not to unfairly burden the only fund available for reseller recovery.

4. Lead Counsel proposes to divide the net Chunghwa settlement fund 50/50 between consumers and resellers. His sole basis for this division is that it was recommended by the Special Master and accepted by the District Court in

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 290 (3d Cir. 2011) (*en banc*). However, as is clear from the *Sullivan* opinion, that division was litigated and the Special Master listened to argument and took evidence about the diamond and jewelry industries, including expert testimony, before arriving at the roughly 50/50 division recommended there. While we agree that spending great sums of money litigating the division of a comparatively small recovery should be avoided, Lead Counsel has made absolutely no effort to demonstrate that any aspect of the facts or record here support a finding that applying the *Sullivan* result would be fair, reasonable and adequate. We have nothing except Lead Counsel's *ipse dixit* adoption of the *Sullivan* allocation. This is simply not an adequate basis upon which the Special Master can recommend an appropriate division of the Chunghwa settlement fund between resellers and consumers. Moreover, it certainly can be argued that separate counsel need to be appointed to represent the interests of resellers.

Respectfully submitted,

/s/ Josef D. Cooper
Josef D. Cooper

/s/ Francis O. Scarpulla
Francis O. Scarpulla

Cc: All Counsel via JAMS Case Anywhere Service

# ATTACHMENT 3

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

February 5, 2016

**VIA JAMS E-FILING**

Martin Quinn, Special Master
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

**Re:**  ***In Re: Cathode Ray Tubes (CRT) Antitrust Litigation,***
   ***Case No. 07-cv-5944 JST, MDL 1917***

Dear Special Master Quinn:

   The Special Master in his January 28th R&R has expressed concerns about the allocation of $5 million in Chunghwa settlement funds (the "Net Settlement Fund"), and asked for Lead Counsel's proposal to resolve these concerns. (*See* R&R at 41-46.)  Lead Counsel proposes the following solution.

**Background**

   In April 2009, IPPs entered into a $10 million settlement agreement with Chunghwa.  Unlike subsequent settlements, the Chunghwa settlement released not only end-user claims but also reseller claims.  The Court approved a plan of distribution with the following terms:

- After deducting attorneys' fees, expenses, costs, etc., the Chunghwa Net Settlement Fund of approximately $5 million is to be distributed pro rata to 24 states based on a population-based formula. (*See* ECF No. 993 ¶ 10.)

- That distribution plan includes an 8.59% distribution to the Illinois Attorney General and 2.37% to the Oregon Attorney General (or $429,500 and $118,500, respectively)—two states not included in the litigation class or the distribution of non-Chunghwa settlement funds.

   At the time, Chunghwa class members were notified that Chunghwa settlement funds may or may not be distributed to the class (*see* ECF No. 1063-1, Chunghwa Notice at p.4, Q.10), and that class members should monitor the settlement website for updates on the distribution plan. (*Id.* at p.4, Q.6.)

   The Chunghwa settlement was finally approved on March 22, 2012. (ECF Nos. 1105-06.)

After settlements were reached with the remaining defendants, Lead Counsel proposed a plan of distribution under which the total common fund of $576.75 million (including Chunghwa funds) would be distributed to end-user (but not reseller) class members on a pro rata basis, after deducting court-approved attorneys' fees, costs, and expenses. Lead Counsel believes that plan was fair and reasonable for the reasons previously explained. *See, e.g.,* January 13, 2016 Letter to Special Master Quinn from Lead Counsel.

The Special Master, however, has expressed concerns about whether this plan is consistent with the Chunghwa notice and plan of distribution. In particular, the Special Master has expressed concerns about the fact that the proposed plan of distribution does not provide for payment to resellers, and is not in accord with the state-by-state allocation set forth in the Chunghwa Preliminary Approval Order.

The Special Master has requested proposals concerning the scope of corrective notice (if any) required on these issues and the timeline for additional procedures concerning the Chunghwa portion of the distribution.

## Lead Counsel's Response

These issues can be resolved by separating the Chunghwa distribution issues from all other settlement and attorney fee issues, and making modest adjustments to the plan of distribution for the Chunghwa Net Settlement Fund, as described in more detail below.

*First*, the $5 million Chunghwa distribution issue should be treated on a separate track and should not delay Judge Tigar's consideration of the other settlements and aggregate fee award. (*See also* R&R at 45-56, noting that Chunghwa issue (the "tail") should not wag the dog.) The Chunghwa distribution issue has no material bearing on (1) the Court's final approval of the other pending settlements, (2) the plan of distribution for those settlements (*i.e.,* the non-Chunghwa common fund of $566.75 million), and (3) the aggregate attorneys' fee award. Lead Counsel respectfully suggests that the Special Master enter a brief supplemental R&R recommending this procedure to Judge Tigar.

*Second*, as to the treatment of the Chunghwa Net Settlement Fund on a separate track, Lead Counsel proposes the following framework:

### A. *Claims Period for Resellers*

- The claims period should be re-opened for 120 days to allow reseller members of the Chunghwa Settlement Class to submit claims against the Chunghwa Net Settlement Fund.

- Resellers would be notified of this change through several means, including print publication, a nationwide press release, and online and email notices targeted to the reseller community located in the 22 states eligible to submit claims. The Claims Administrator would also send mailed notice to the same list of large

resellers that were sent mailed notice of the Chunghwa Settlement in 2011.[1] The notice will be in both English and Spanish. Further, the settlement website would be updated to inform resellers that they will be permitted to submit a claim against the Chunghwa fund during the 120-day period. In the context of a $5 million Net Settlement Fund—and a case in which multiple notices have been disseminated nationwide directing potential class members to the website for information about the case—these efforts constitute the best notice practicable to resellers about the change to the Chunghwa distribution plan.

### B. *Chunghwa Allocation*

The next question is how to allocate the $5 million Chunghwa Net Settlement Fund among end-users, resellers, and the states in a manner consistent with the Court's Orders regarding the Chunghwa Settlement. Lead Counsel proposes the following:

- Consistent with the state-by-state formula approved by the Court, the Attorneys General of Illinois and Oregon should be allocated 8.59% and 2.37% of the Chunghwa fund ($429,500 and $118,500, respectively).

- The balance of the Chunghwa Net Settlement Fund ($4.452 million) will then be allocated according to the state-by-state percentage formula, creating separate "funds" for each state. This will not require actually setting up separate funds, but will be an accounting function performed by the Claims Administrator.

- Each state's fund will be allocated 50-50 between end user and reseller claimants – that is, 50% of each state's fund will be allocated pro rata amongst already-existing end-user claimants from that state, and the other 50% will be allocated pro rata amongst reseller claimants from that state.[2]

---

[1] As part of the notice program for the Chunghwa Settlement, The Notice Company identified the 100 largest resellers of consumer electronic products in the United States (not owned by any federal, state or local governmental entity) for purposes of dissemination of notice. *See* Declaration of Joseph M. Fisher Reporting on the Class Notice Program for Settlement with Defendant Chunghwa Picture Tubes, Ltd. (ECF No. 1063), ¶12(d).

[2] A 50% allocation for resellers is fair and reasonable based on past practice in indirect purchaser litigation. *See, e.g., Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 290 (3d Cir. 2011) (en banc) (50.3% for resellers, 49.7% for consumers). While one could argue for a higher or lower percentage allocation for resellers, it makes little sense to engage in additional allocation proceedings for the sake of divvying up less than $5 million in funds. The better approach is to follow the precedent cited above and divide each state's fund 50-50 between end-user and reseller claimants. *See generally Rieckborn v. Velti PLC*, No. 13-cv-03889, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3,

- Reseller claimants, like end-user claimants, will be limited to a maximum payment of three times their estimated damages. In the event that reseller claimants do not exhaust a particular state's reseller fund, the residue will be distributed pro rata to existing end-user claimants from that state.

- For example, California's fund will be $1,171,000 (23.42% of $4.452 million). Thus, 50% of California's fund, or $585,500, will be allocated pro rata amongst the already-existing end-user claimants from California, and the other 50% will be allocated pro rata amongst reseller claimants from California. In the event reseller claims do not exhaust the $585,500 fund, the residue will be added to the California end-user's $585,500 fund and distributed pro rata to already-existing end-user claimants from California.

- End-user claimants will also receive their pro rata share of the other net settlement funds, as set forth in the most recent notice.

This framework is consistent in all respects with the Chunghwa settlement approval orders, and addresses the Special Master's concerns about reseller recovery and the state-by-state allocation formula.

### C. Fairness to End-User Class Members

The next issue is whether this modification is fair to end-user members of the Chunghwa settlement class and end-user members of the pending settlements. Practically speaking, these end-user class members are one and the same. But for purposes of analyzing the notice and fairness issues raised by the Special Master, it is necessary to consider them separately.

#### 1. End-User Members of the Chunghwa Settlement Class

End-user members of the Chunghwa Settlement Class were previously given notice of the state-by-state allocation, and that they may have to share the Chunghwa Net Settlement Fund with resellers. No one objected to this plan of distribution and it was finally approved. Thus, there is no unfairness to anyone associated with correcting the present Chunghwa allocation plan now in a manner consistent with the original Chunghwa notice and the Court's Orders on the Chunghwa Settlement.

In the most recent notice, end-user class members were told that the $5 million Chunghwa Net Settlement Fund would be distributed pro rata to end users only, along with the funds from the other settlements. This can be corrected through notice to all

2015) ("Courts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.").

end-user class members who submitted valid claims (as further described below), and by
providing an opportunity to object to the allocation of the Chunghwa Net Settlement
Fund between resellers and end-users.[3]

The corrective notice and the opportunity to object address any due process
concerns as to end-user members of the Chunghwa Settlement Class.

## 2. End-User Members of the Pending Settlement Class

In the most recent notice, end-user members of the pending Settlement Class were
told that the $576.75 million in total settlement funds, net of attorneys' fees and
expenses, would be distributed pro rata to end-user claimants. Under the revised plan of
allocation, all settlement funds other than Chunghwa (*i.e.*, $566.75 million in total) will
be distributed in precisely the manner described in the notice. But the Chunghwa
settlement fund will be treated differently, resulting in a slightly diminished total fund for
end-users. In other words, the Net Chunghwa Settlement Fund of $5 million will be
allocated first to the states and then 50% of each state's fund will be allocated to resellers.
The practical effect of this revised plan is that the total amount available for distribution
to end-users is approximately $2.8 million less than before (*i.e.*, less than 0.5% of the
$576.75 million settlement fund).[4] The revised plan is fair to end-users for the following
reasons:

- First, *de minimis* adjustments to a settlement allocation plan do not typically
  raise fairness or due process concerns, or require extensive additional
  procedures. Settlement approval routinely involves such issues, which can be
  addressed through a tailored supplemental notice without the need for a start-
  from-scratch notice, objection, or opt-out period for the class as a whole.[5]

---

[3] Because the Chunghwa Settlement is final, members of the Chunghwa
Settlement Class cannot opt out of the Chunghwa Settlement or object to the plan of
distribution approved by the Court in the Chunghwa Preliminary Approval Order. They
can only object to the one aspect of the Chunghwa plan of distribution that remained to
be determined – the allocation between resellers and end-users.

[4] The $2.8 million figure is calculated by adding the $548,000 payment to the
Illinois and Oregon Attorneys General to the $2.226 million maximum payment to
resellers, which equals $2,774,000, or approximately $2.8 million. The $2,226,000
maximum payment to resellers is calculated as follows: The $5 million Net Settlement
Fund, minus the $548,000 total payments to the Illinois and Oregon Attorneys General,
equals $4,452,000. Up to 50% of this $4,452,000 is payable to resellers under our
present proposal, which equals $2,226,000.

[5] *See, e.g., In re BankAmerica Corp. Sec. Litig.*, 227 F.Supp.2d 1103 (E.D.
Missouri 2002) (modest allocation change effectuated with simple supplemental notice);
*Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 641 (5th Cir. 2012)
(affirming district court's conclusion that change to plan of allocation would not require

That is particularly true where, as here, the change is truly *de minimis*, involving re-allocation of approximately $2.8 million – or less than 0.5% of the $576.75 million settlement fund.

- Second, due to the Special Master's fee recommendation, end-users now stand to recover *more* than they would have expected to receive under the previously-proposed plan of distribution. Whereas the class notice told end-users that their total recovery would be a function of up to one-third attorneys' fees, the Special Master's 30% fee recommendation means that, if the Court adopts the R&R, end-users will recover an additional $19 million above and beyond what the notice advised them to expect (*i.e.*, $192 million in requested fees versus $173 million awarded). In these circumstances, there can be no unfairness to end-users concerning their expected bottom-line recovery in the case.

These factors support separate consideration of the Chunghwa allocation issues. The proposed modification has no material bearing on the non-Chunghwa settlements, the distribution of non-Chunghwa settlement funds, or any class members' decision whether to opt out or object to those settlements. The Chunghwa allocation issues are wholly distinct, and could not reasonably have influenced any class members' thinking on the other settlements. *See generally In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (adequate notice does not require "provid[ing] an exact forecast of how much each class member would receive"). Accordingly, the suggested modification will not prevent the Court's final approval of the other pending settlements, the plan of distribution for those settlements (*i.e.*, the non-Chunghwa common fund of $566.75 million), and the aggregate attorneys' fee award.

### D. Notice to End-User Class Members and Subsequent Procedures

All Chunghwa class members (resellers and end-users alike) were told to monitor the settlement website for updates on the distribution plan. Moreover, that message was reinforced for all end-user class members in the recent comprehensive notice program. Accordingly, the best and most reasonable notice under the circumstances is to simply update the settlement website to inform all end-user class members of this relatively minor adjustment to the Chunghwa distribution formula.

---

additional class notice); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 285 (D. Minn. 1997) (rejecting due process objection to notice because the "less than one percent" reduction in the overall settlement fund was "*de minimis*"). *See also Principles of the Law of Aggregate Litigation*, § 3.05(f) ("For class members who did not opt out of the class, *new notice and opt out rights are not required* when, as a result of a fairness hearing, a settlement is revised and the new terms would entitle such class members to *benefits not substantially less than those proposed in the original settlement*.") (Emphases added).

In addition, Lead Counsel proposes to send direct mail or email notice to **all** end-user class members who submitted valid claims, advising these claimants of the change concerning Chunghwa funds, and their right to object to the change. This simple supplemental notice and limited right to object to the reseller allocation is more than sufficient where, as here, the dollar recoveries for end-user claimants will not be substantially less than originally proposed. *See note 6, supra.*

In terms of additional procedures, Lead Counsel proposes that (1) the Special Master should issue a brief supplemental R&R advising Judge Tigar that the Chunghwa allocation issues will be addressed on a separate track by the Special Master and that Judge Tigar should proceed with his analysis of the pending settlements, aggregate fee and non-Chunghwa distribution issues; (2) Lead Counsel will submit for Court approval a proposed form of notice regarding the revised Chunghwa plan of distribution, the dissemination of which will reopen the 120-day claims period for reseller claims from the Chunghwa fund; and (3) Chunghwa class members should be afforded 60 days to file objections to the Chunghwa plan described in this letter, which objections shall be considered by the Special Master.

Under no circumstances, however, should the Chunghwa issue be permitted to delay (let alone derail) approval of the other settlements.

Respectfully submitted,

*/s/ Mario N. Alioto*
Mario N. Alioto

Lead Counsel for the Indirect Purchaser Plaintiffs