Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the
Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-JST<br><br>MDL No. 1917<br><br>**CLASS ACTION** |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO OBJECTIONS TO JANUARY 28, 2016 REPORT AND RECOMMENDATION OF SPECIAL MASTER RE MOTIONS: (1) TO APPROVE INDIRECT PURCHASER PLAINTIFFS' SETTLEMENTS WITH THE PHILIPS, PANASONIC, HITACHI, TOSHIBA, SAMSUNG SDI, TECHNICOLOR AND TECHNOLOGIES DISPLAYS AMERICAS DEFENDANTS; AND (2) FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND INCENTIVE AWARDS TO CLASS REPRESENTATIVES**<br><br>Hearing Date:  March 15, 2016<br>Time: 2:00 p.m.<br>Judge: Honorable Jon S. Tigar<br>Court: Courtroom 9, 19th Floor |

I, Mario N. Alioto, declare:

1. I am an attorney duly licensed by the State of California and am admitted to practice before this Court. I am a partner with the law firm Trump, Alioto, Trump & Prescott, LLP and my firm serves as Lead Counsel for the Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned action. I submit this Declaration in support of IPPs' Response to Objections to the January 28, 2016 Report & Recommendation. The matters set forth herein are within my personal knowledge and if called upon and sworn as a witness I could competently testify regarding them.

2. Eleven objections on behalf of 22 objectors were originally filed. Two of the objectors, Paul Palmer and Gordon Morgan, have moved to withdraw their objections. (*See* Dkt. Nos. 4130 and 4165.) Three of the remaining objections were lodged by four attorneys who have represented class members in this litigation: Josef Cooper, Francis O. Scarpulla, Robert Bonsignore and Theresa Moore (the "Insider Objectors").

3. Only five requests for exclusion were received. Two of the requests for exclusion were by Direct Action Plaintiffs ("DAPs") that are already pursuing their own cases. Thus, there are actually only three requests for exclusion. Copies of the exclusion letters are attached to the Declaration of Joseph M. Fisher Reporting on the Class Notice Program as Exhibit Y (Dkt. No. 4371).

4. There have been notice efforts above and beyond the formal notice program approved by the Court. For example, the 83% reach does not include an e-mail campaign that I arranged which resulted in the dissemination of 417,993 emails to *DRAM* claimants notifying them of the CRT Settlements.

5. Lead Counsel never instructed IPP Counsel to exclude *all* "in-house multi-lawyer conferences." Some such conferences were excluded by the Audit Committee during the audit of IPP Counsel's time, but only if they were judged to be "internal case management" conferences, as opposed to in-house conferences about active assignments in the case.

6. Certain objectors have challenged work by IPP Counsel on matters involving the California Attorney General ("AG"). Throughout this litigation, IPPs tried to accommodate the

interests of the AG as best as possible, while also foremost protecting the interest of the indirect purchaser class. For example, regarding an extension of the claims submission deadline, we negotiated with the AG for several weeks, but ultimately were concerned that the extension would spur additional objections, which it did. *See, e.g.*, Dkt. No. 4312.

7. IPPs, Philips and the AG also litigated certain issues pertaining to the approval of a settlement between the AG and Philips in a related lawsuit brought by the AG in state court. For reasons explained below, IPPs were forced to intervene in that action. Their involvement has been defensive in nature, and essential. The Special Master has stated in the R&R that "the state judge refused to issue [] an 'advisory opinion'" "that no estoppel would result" from that settlement (R&R (Dkt. No. 4351) at 65). However, further explanation is necessary. The threat posed to IPPs from settlement approval was quite real.

8. In May 2012—long after IPPs had initiated their litigation—the AG filed in San Francisco Superior Court an antitrust action alleging claims stemming from the alleged CRT price-fixing conspiracy alleged in this MDL. This action included *parens patriae* claims against Philips Electronics North America Corporation ("PENAC"), one of the defendants named in this MDL. *See The State of California v. Chunghwa Picture Tubes, Ltd.,* No. CGC-11-515786, San Francisco County Superior Court. The AG brought these claims on behalf of California "natural persons." These consumers are also represented by IPPs in the MDL.

9. In November 2012, the AG moved for preliminary approval of a settlement she had reached with PENAC and other Philips entities (collectively "Philips"). The settlement called for a total payment of $500,000, none of which would go to consumers. In exchange, the AG gave Philips releases of her claims. According to Philips, the releases extinguished not only the *parens patriae* claims but also totally extinguished the federal class claims against it by California consumers in the MDL. In short, this settlement was about to jeopardize all of the rights of the California consumer class against Philips in the federal action, with no money allocated to these consumers.

10. On behalf of one of the representatives of the California class in this MDL, Jeffrey Figone, I appeared at the hearings on settlement approval and objected to the *parens patriae*

settlement. Figone contended that Philips' interpretation of the release had no support and that the settlement did not release the federal class claims. And, if the settlement did release the class claims, the settlement was unreasonable and could not be approved by the court, because Philips would have offered far too little ($500,000) for what it received. (Indeed, IPPs ultimately settled with Philips for $175 million. While that sum covers nationwide claims, the value of California claims is much greater than the $500,000 settlement amount.)

11. Figone appeared and objected before the superior court. Subsequently, the trial court granted preliminary approval and approved publication of a notice to consumers. In September 2013, Figone filed a timely objection to final settlement approval on his own behalf and on behalf of all individuals residing in the State of California. A fairness hearing was held in December 2013. Figone again appeared to object to the Philips settlement and asked the trial court to determine the scope of the release. The trial court expressly declined to do so, approved the settlement as being fair, adequate and reasonable, and entered judgment. This decision was not a mere "advisory opinion." In fact, as we have previously stated, Philips has taken the position that the judgment barred the claims of California natural persons. *See* Dkt. No. 3034 (Philips summary judgment motion, stayed pending settlement approval).

12. Figone appealed from the judgment. *See The State of California v. Philips Electronics North America Corp.*, California Court of Appeal, First Appellate District, Division Five, No. A140908. The AG moved to dismiss the appeal on the ground that Figone was not an aggrieved party and had no standing. On July 9, 2014, the Court of Appeal denied the motion, because "Jeffrey Figone has shown that he is potentially bound by the judgment under the doctrine of res judicata." Capurro Decl. in support of Request for Judicial Notice, Ex. A at 1. The appeal is pending but as a practical matter, proceedings are stayed in light of the pending settlements.

13. Chunghwa's amnesty applicant status was not known at the time IPP Counsel filed their original complaints in November 2007, and the settlement with Chunghwa did not come until April 2009—a year and a half later.

14. I have become aware that my previous declaration (Dkt. No. 4071-1 at ¶ 118) states that Lead Counsel "(e) included hours only through May 31, 2015 for IPP Counsel." This statement is inconsistent with statements made in three contemporaneous declarations. My firm included time from inception to September 15, 2015 (*See* Dkt. No. 4073-1 at ¶ 6.) The firm of Sharp McQueen PA included time from inception to June 5, 2015. (*See* Dkt. No. 4073-17 at ¶ 6.) The firm of Kern Antitrust Global (KAG Law Group) included time from inception to July 15, 2015. (*See* Dkt. No. 4073-7 at ¶ 6.)

15. I have made certain references to certain "serial" or "professional" class action objectors in this case (including counsel Joseph Scott St. John). I have stated that they file boilerplate objections and subsequent appeals in order to extract a pay-off to drop the appeals, and I have also stated that these objectors routinely represent objectors challenging class action settlements by filing canned objections. Mr. St. John has brought to my attention that he has never appeared as counsel for an objector before and has not engaged in the conduct I have attributed to the other objectors. Accordingly, my statements shall not apply to Mr. St. John.

16. On November 20, 2015, IPPs filed the Additional Declaration of Robert J. Gralewski, Jr. In Support Of Indirect Purchaser Plaintiffs' Motion For Final Approval Of Class Action Settlements With Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson, And TDA Defendants ("Additional Gralewski Declaration," (Dkt. No. 4370-2).) Appendix O to the Additional Gralewski Declaration is a chart highlighting certain testimony from depositions taken of certain objectors. The deposition transcripts summarized in the chart are attached to the chart itself. At the time the Additional Gralewski Declaration was filed, IPPs did not have copies of the final deposition transcripts for Objectors Josie Saik or Elizabeth Kimberly Johnson. IPPs summarized testimony from the Saik and Johnson depositions, and on page vii of Appendix O, IPPs stated that they would supplement the chart with cites to the transcripts when the transcripts became available. Now that the transcripts are available, IPPs submit the cites to the previously

4

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
RESPONSE TO OBJECTIONS TO JAN. 28, 2016 R&R - Master File No. CV-07-5944-JST

summarized testimony as well as the true and correct pages from the transcripts. *See* **Exhibit A**, attached hereto.[1]

17. Attached as **Exhibit B** is a true and correct copy of a January 11, 2016 letter regarding treble damages from me to the Special Master.

18. Attached as **Exhibit C** is a true and correct copy of IPPs' January 13, 2016 response on the Chunghwa allocation of funds from me to the Special Master.

19. Attached as **Exhibit D** is a true and correct copy of IPPs' February 5, 2015 letter regarding the Chunghwa allocation of funds from me to the Special Master.

20. I received a letter dated February 18, 2016 from Frank Warner, one of the former named plaintiffs for whom IPPs have requested a $5,000 incentive award. In his letter, Mr. Warner objects to the $5,000 incentive award and asks the Court to award $100,931.25 to each of the 25 class representatives and the 15 named plaintiffs. Mr. Warner's objection is untimely and I do not believe there is any support for his request. A true and correct copy of Mr. Warner's letter is attached to the Alioto Decl. re: Response as **Exhibit E**.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of March, 2016 at San Francisco, California.

/s/   *Mario N. Alioto*
         Mario N. Alioto

***Lead Counsel for the Indirect Purchaser Plaintiffs***

---

[1] Upon receiving and reviewing the final transcripts, IPPs have changed a reference to Saik's testimony from "'best friends'" to "friends."