# EXHIBIT A

| OBJECTOR | COUNSEL | TESTIMONY |
|---|---|---|
| **18. Josie Saik** | George Cochran | <ul><li>Papers filed "pro se" but Objector is actually represented by Cochran, a serial objector (11:22-24; 15:12-23)</li><li>Objector is counsel's sister's friend (10:14-21)</li><li>Objector testified that she was motivated to object, in part, to make more money than an individual class member will receive (18:16-20:1)</li></ul> |
| **19. Elizabeth Kimberly Johnson** | Charles M. Thompson | <ul><li>Objector provided an improper address in her objection (filed in pro per) that seriously delayed the service of the subpoena directed to Objector (4:9-19; 8:17-20; 45:7-19)</li><li>Objector's deposition will not be taken until November 19, 2015 because Objector claims, through Thompson, to be unavailable until then</li><li>Serial objector Thompson is engaged to be married to the Objector, assisted her with her papers, accepted service of the subpoena on her behalf, and, on the morning of Ms. Johnson's deposition, admitted that he represents her (7:8-12; 15:2-20)</li></ul> |

1      UNITED STATES DISTRICT COURT
2      NORTHERN DISTRICT OF CALIFORNIA
3      SAN FRANCISCO DIVISION
4
5
6   IN RE:  CATHODE RAY TUBE (CRT)
    ANTITRUST LITIGATION,
                                    No. 3:07-cv-5944
7                                   MDL NO. 1917
    This Document Relates to:
8   All Indirect Purchaser Actions
    _____
9
10
11
12
13         DEPOSITION OF JOSIE SAIK
14            San Dimas, California
15         Monday, November 16, 2015
16
17
18
19
20
21
22   Reported by:
     VALERIE D. GRANILLO
23   CSR No. 11469
24
25

1    versus perhaps other cases?
2        A    Because I'm one of the people that bought a
3    television.
4        Q    Okay.  And have you filed a claim for -- in this
5    case asking for money back for the TV that you purchased?
6        A    No.
7        Q    Do you intend to do so?
8        A    I believe the attorney will handle the right
9    paperwork that needs to get processed.
10       Q    And that attorney is who?
11       A    Mr. Cochran.
12       Q    Do you know where Mr. Cochran's offices are?
13       A    In Ohio.
14       Q    And how did you come in contact with Mr. Cochran?
15       A    He's the brother of a friend.
16       Q    Okay.  And is the friend here in California?
17       A    Yes.
18       Q    And who's that friend?
19       A    Barbara Cochran.
20       Q    And how long have you known Barbara Cochran?
21       A    Since 1981.
22       Q    And did you speak to Ms. Cochran about the CRT
23   case before speaking with her brother?
24       A    Oh, yes.
25       Q    And tell me about that conversation.  How did

Page 11

1   that come about?  What'd you say and what did she say?
2       A   We talk regularly, and she said, "Hey, did you
3   ever have one of these TVs?" and she listed them.  And I
4   said, "Yeah."  "When did you buy it?"  And I said, "Well,
5   remember when I -- when we were on Maryland Way, so I
6   think like '97/'98."  She says, "Oh, my gosh.  Do you know
7   what happened there?"  And she proceeded to tell me the
8   story, and she said that her brother was handling it.  And
9   I said, "Well, could you have him contact me?  I'd like to
10  talk to him."  So he e-mailed me.
11      Q   Okay.
12      A   Yeah.
13      Q   And did Ms. Cochran explain to you that she felt
14  that there was some unfairness or something wrong with the
15  settlement in that discussion?
16      A   No, no.  She didn't have an opinion on it.  She
17  just wanted me to know about it.
18      Q   And then you say that Mr. Cochran then e-mailed
19  you or you e-mailed him?  I forgot what you said.
20      A   I asked Barbara to have him contact me, call or
21  e-mail.  And he e-mailed me.
22      Q   Okay.  And have you hired Mr. Cochran to
23  represent you in this case?
24      A   Yes.
25      Q   And what are the terms of that engagement?  What

1          MR. COCHRAN:  Sure.
2          MR. HULETT:  And it also includes proof of
3  delivery of the document and also the certified mail
4  certificate.  Okay.
5          MR. COCHRAN:  Right, okay.
6          MR. HULETT:  So it's the whole submission of
7  documents.
8          MR. COCHRAN:  All right.
9          (Exhibit 1 was marked for identification by
10         the court reporter and is attached hereto.)
11 BY MR. HULETT:
12    Q    You filed this appearing pro se, according to the
13 documents.  You see that on the cover page?
14    A    I'm looking.
15    Q    At the very top.
16    A    Yes.
17    Q    You said "appearing pro se" under your name.  Do
18 you know what pro se means?
19    A    My Latin is rusty.  If you give me the English
20 term, I can verify if that's what I agree on.
21    Q    Who drafted these documents?
22    A    Mr. Cochran presented it to me.  I'm assuming
23 either himself or one of the staff.
24    Q    Okay.
25    A    I didn't.

Page 18

1  said, "Come to the lobby.  I'd like you to meet my
2  brother."
3      Q    Okay.  Any other times?
4      A    No.
5      Q    Okay.  Are you currently employed?
6      A    Yes.
7      Q    With whom?
8      A    I'm at Bishop Amat Memorial High School, which is
9  part of the Archdiocese of Los Angeles.
10     Q    And how long have you been employed with Bishop
11 Amat?
12     A    29 years for the archdiocese.  I've been at the
13 Bishop Amat location for about eight years.
14     Q    And what's your job responsibility or title?
15     A    I'm the registrar.
16     Q    If your objection is sustained by the court, do
17 you have any expectation that you personally will receive
18 any money in addition to the amounts you'd otherwise get
19 as a class member?
20     A    When you say "sustained," does that mean a yes or
21 no?
22     Q    Yes.  It means yes.
23     A    I kind of remember that from Perry Mason, but I
24 don't remember.
25     Q    And that's a perfect example of asking for

1   clarification because it's using a technical term.
2       A    Sustained.  So would I get money while -- well,
3   they're supposed to give us $25.
4       Q    Correct.
5       A    Right.
6       Q    And you get that regardless of whether your
7   objection is sustained or not?
8       A    Right.
9       Q    And I'm trying to understand, do you have an
10  understanding that if your objection is agreed with by the
11  court that you would receive something in addition to the
12  $25?
13      A    I would, yes.
14      Q    And what do you expect to receive in addition?
15      A    I don't expect anything.  I've looked at other
16  cases.  It could be anywhere from tens, hundreds or even
17  thousands of dollars.  I don't expect anything.  I just
18  want the right thing to happen.
19      Q    But as one of the events, in the event that the
20  court were to sustain and agree with your objection, you
21  would be making a request for additional monies, correct?
22      A    Yes.
23      Q    Okay.  And is that one of the reasons that you've
24  decided to object in the case?
25      A    My main reason is for to go the right way for

1    that, justice.  But money doesn't hurt.
2        Q    Right.
3        A    It doesn't hurt at all.
4        Q    And has Mr. Cochran promised to pay you any
5    amounts of money regardless of the outcome your objection?
6        A    No, no.
7        Q    Has he agreed to split with you any of the fees
8    that he may request?
9        A    No.
10            You still there, George?
11            MR. COCHRAN:  I'm awake.
12            THE WITNESS:  Okay.
13            MR. HULETT:  I told you I don't ask objectionable
14   questions.
15       Q    Now, you indicated earlier that you just want the
16   award of attorney's fees to be reasonable and fair and
17   that you think 33 percent is unreasonable and unfair,
18   correct?
19       A    Yes.
20       Q    And do you have an opinion as to what amount
21   would be fair?
22       A    No.
23       Q    In the event that the court does sustain -- let
24   me rephrase the question.
25            In the event that the court does not accept your

1           I, the undersigned, a Certified Shorthand
2   Reporter of the State of California, do hereby
3   certify:
4           That the foregoing proceedings were taken
5   before me at the time and place herein set forth;
6   that any witnesses in the foregoing proceedings,
7   prior to testifying, were administered an oath; that
8   a record of the proceedings was made by me using
9   machine shorthand which was thereafter transcribed
10  under my direction; that the foregoing transcript is
11  a true record of the testimony given.
12          Further, that if the foregoing pertains to
13  the original transcript of a deposition in a Federal
14  Case, before completion of the proceedings, review
15  of the transcript [ ] was [ ] was not requested.
16          I further certify I am neither financially
17  interested in the action nor a relative or employee
18  of any attorney or any party to this action.
19          IN WITNESS WHEREOF, I have this date
20  subscribed my name.
21  Dated: November 18, 2015.
22
23          _Valerie D. Granillo_
24          VALERIE D. GRANILLO
25          CSR No. 11469

Page 1

1            UNITED STATES DISTRICT COURT FOR THE
2               NORTHERN DISTRICT OF CALIFORNIA
3
4    CIVIL ACTION NUMBER:  07-CV-05944-SC; MDL NO. 1917
5
6    IN RE:
7          CATHODE RAY TUBE (CRT)
8          ANTITRUST LITIGATION,
9                Plaintiff,
10               vs.
11         THIS DOCUMENT RELATES TO:
12         ALL INDIRECT ACTIONS,
13               Defendant.
14
15   DEPOSITION OF:  Elizabeth Kimberly Johnson
16   DATE:  November 19, 2015
17   TIME:  1:42 p.m.
18   PLACE: Wiggins, Childs, Pantazis, Fisher & Goldfarb
19          The Kress Building
20          301 19th Street North
21          Birmingham, Alabama, 35203
22
23
24
25

Page 4

1           ELIZABETH JOHNSON,
2  being first duly sworn, was examined and testified as
3  follows:
4
5  EXAMINATION BY MS. WEDGWORTH:
6
7       Q.    Could you state your name for the record?
8       A.    Elizabeth Kimberly Johnson.
9       Q.    Ms. Johnson, what is your home address?
10      A.    82 Standifer Drive, Odenville.
11      Q.    Do you presently reside there?
12      A.    Not at the moment.
13      Q.    Where do you presently reside?
14      A.    1221 Berwick Road, Hoover.
15      Q.    Is that 35242?
16      A.    35242, yes.
17      Q.    For the purposes of this litigation, if
18  someone needs to find you, is 1221 Berwick Road --
19      A.    For the time being, yes.
20      Q.    Do you know how long you'll be at that
21  location?
22      A.    No, I don't.
23      Q.    Does someone live at 82 Standifer Drive?
24      A.    My sons.
25      Q.    Your sons currently live there; is that

Page 7

| | | |
|---|---|---|
| 1 | Q. | Have you been involved in any litigation |
| 2 | or lawsuit? | |
| 3 | A. | Divorce. |
| 4 | Q. | Other than divorce? |
| 5 | A. | No. |
| 6 | Q. | Okay.  Do you have an attorney today? |
| 7 | A. | Yes. |
| 8 | Q. | Who is your attorney? |
| 9 | A. | Charles Thompson. |
| 10 | Q. | Do you also have any other relationship |
| 11 | with Mr. Thompson? | |
| 12 | A. | He is my fiancé. |
| 13 | Q. | How long have you been engaged? |
| 14 | A. | May 8th. |
| 15 | Q. | Of this year? |
| 16 | A. | Last year. |
| 17 | Q. | Okay.  So, May 8th, 2014? |
| 18 | A. | Uh-huh. |
| 19 | Q. | And how did it come about that |
| 20 | Mr. Thompson is representing you in this matter? | |
| 21 | | MR. THOMPSON:  We live together |
| 22 | sometimes.  Duh. | |
| 23 | Q. | (BY MS. WEDGWORTH)  Sadly, I have to ask |
| 24 | you the questions and not your fiancé slash attorney. | |
| 25 | A. | Because I know him and he is my fiancé |

```
                                                      Page 8
 1   and I trust him.
 2        Q.    Okay.  Okay.  Is your current phone
 3   number 205-500-2496?
 4        A.    Yes.
 5        Q.    Is that the best way to reach you?
 6        A.    Yes.
 7        Q.    Is there any other way to reach you by
 8   phone?
 9        A.    No.
10        Q.    And do you have an email address that you
11   can be reached?
12        A.    Yes.
13        Q.    What is that email address?
14        A.    Lilredsunshine.
15        Q.    I'm sorry?
16        A.    Redsunshine1964@yahoo.com.
17        Q.    Ms. Johnson, are you aware of the fact
18   that we tried to serve a subpoena on you at the
19   Standifer Drive address?
20        A.    I have heard.
21        Q.    And have you seen the subpoena in this
22   case?
23        A.    No, I have not.
24        Q.    You haven't seen any document
25   concerning --
```

1        A.    I don't recall.
2        Q.    Do you understand what you've done in
3   this litigation, what papers you've filed in this
4   litigation, if any?
5        A.    I did file a piece of paper that I wrote
6   myself, and then, he refined.
7              MR. THOMPSON:  When you say he, it would
8   be good --
9        A.    My --
10             MR. THOMPSON:  -- if you said my --
11       A.    My --
12             MR. THOMPSON:  -- name or something.
13       A.    -- fiancé refined for me.
14       Q.    (BY MS. WEDGWORTH)  Do you have an
15  understanding of what that document is called or
16  referred as?
17       A.    An objection.
18       Q.    Whose idea was it to file the objection?
19       A.    It was my thought, and I discussed it
20  with him as to what could be done.
21       Q.    Now, I think you said you wrote on a
22  piece of paper, and then, your fiancé refined it for
23  you.  What did you write on the piece of paper?
24       A.    That's been a long time ago.  I don't --
25  I don't really recall what my exact words were.

```
 1   want that.
 2        A.    I would say within the week.
 3        Q.    Of October 16th?
 4        A.    Of October 16th.
 5        Q.    Is this the document that Christie typed?
 6        A.    Yes.
 7        Q.    And in October of 2015, were you living
 8   on Berwick Road?
 9        A.    Yes.
10        Q.    Is there a reason that you listed your
11   current address as Standifer Drive in Odenville?
12        A.    That is my address.  That is where I've
13   lived.  I'm -- that's my address.
14        Q.    You said you live there or it's just your
15   address?
16        A.    That's my legal address.
17        Q.    Okay.  But you were living on Berwick in
18   October?
19        A.    Yes.  Convalescing.
20        Q.    If we look at the first page and you go
21   to the first big paragraph kind of in the middle of the
22   page that begins my primary --
23        A.    Uh-huh.
24        Q.    -- that first sentence says, my primary
25   objection is that the information about making the claim
```

Page 59

1          C E R T I F I C A T E
2    STATE OF ALABAMA     )
3    JEFFERSON COUNTY     )
4
5              I hereby certify that the above and
6    foregoing deposition was taken down by me in stenotype,
7    and the questions and answers thereto were transcribed
8    by means of computer-aided transcription, and that the
9    foregoing represents a true and correct transcript of
10   the testimony given by said witness upon said hearing.
11                   I further certify that I am neither of
12   counsel, nor of kin to the parties to the action, nor am
13   I an anywise interested in the result of said cause.
14
15
16
17
18                    s/s Michelle L. Parvin
19                       MICHELLE L. PARVIN
20                    Certified Court Reporter
21                     License Number 126
22                  Commission expires 9/30/16
23                 Notary Public expires 1/26/18
24
25