# EXHIBIT B

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

January 11, 2016

**VIA JAMS E-FILING**

Martin Quinn, Special Master
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

**Re:**   ***In Re: Cathode Ray Tubes (CRT) Antitrust Litigation,***
         ***Case No. 07-cv-5944 JST, MDL 1917***

Dear Special Master Quinn:

        At the hearing on January 5, 2016, Paul Novak on behalf of Indirect Purchaser
Plaintiffs made reference to certain cases holding that it is appropriate for a district court
to award up to treble damages under the antitrust laws as an alternative to distributing any
remaining settlement monies on a *cy pres* basis.  You requested that we provide the cases
to you after the hearing. *See* Rough Hearing Tr., 98:9-12; 119:5-9.

        Cases recognizing a court's ability to allow treble damage distribution to antitrust
plaintiffs include the following: *Masters v. Wilhemina Model Agency, Inc.*, 473 F.3d 423
(2d Cir. 2007) ("a treble damages award did lie within the ambit of the District Court's
discretion and should be considered on remand"); *In re Publ'n Paper Antitrust Litig.,*
Nos. 3:04 MD 1631 (SRU), 3:05 CV 1339 (SRU), 3:05 CV 1339 (SRU), NO. 3:05 CV
1358 (SRU), 3:05 CV 1381 (SRU), 2009 U.S. Dist. LEXIS 66654, at *23 (D. Conn.
2009) ("In assessing the proper disbursement of excess settlement funds, along with any
*cy pres* award, I am to consider other options, including where applicable the
disbursement of excess funds directly to plaintiffs.  For instance, in actions such as this
one brought under the Clayton Act, I am to consider whether an award of treble damages
is warranted." (citing *In re Folding Carton Antitrust Litig.,* 557 F. Supp. 1091, 1104-07
(N.D. Ill. 1983))).[1]

//

---

[1] The California Attorney General's Supplemental Statement of Interest, p.14, also recognizes the propriety
of distributing up to treble damages to class members in certain instances, noting that the "payment of
*trebled* damages may be justified in cases such as *LCDs* . . . ."

Special Master Martin Quinn
January 11, 2016
Page 2 of 2

These cases are attached for the Special Master's convenience.

Respectfully submitted,

*/s/ Mario N. Alioto*
Mario N. Alioto

Lead Counsel for the Indirect Purchaser Plaintiffs

● Warning
As of: January 7, 2016 4:04 PM EST

# *Masters v. Wilhelmina Model Agency, Inc.*

United States Court of Appeals for the Second Circuit

May 19, 2006, Argued ; January 4, 2007, Decided

Docket Nos. 05-2897-cv(L); 05-5766-cv(CON)

**Reporter**
473 F.3d 423; 2007 U.S. App. LEXIS 191; 2007-1 Trade Cas. (CCH) P75,542

AMANDA MASTERS, on her own behalf and on behalf of a class of similarly situated persons, JUSTIN KLENTNER, on own behalf and on behalf of a class of similarly situated persons, LORELEI SHELLIST, on own behalf and on behalf of a class of similarly situated persons, BARBARA CHEESEBOROUGH, on own behalf and on behalf of similarly situated persons, CARLA GROSS, on own behalf and on behalf of a class of similarly situated persons, doing business as Sebastian Cardon, SIMON BEARDMORE, SZUZANNA BOROS, THOMAS BRADLEY, JENNIFER CURRAN, VALARIE GARDANAO, BILL GOINS, ELEANORA MILLER, also known as Elle Miller, VIRGINIA NELSON, ALICIA PINE, ANNE ROGAN, ANGELA SHELTON, SHOEMAKER LAURA, TODD SNYDER, HILLARY SWAY and MONICA WALKER, Plaintiffs, CAROLYN FEARS, DONNA GIBBS, SHARON SIMON, CAROL MCILVAINE, also known as Carol Alston and TIFFANY CONNOR, on their own behalf and on behalf of a class of similarly situated persons, Plaintiffs-Appellants, BOIES, SCHILLER & FLEXNER LLP, Appellant, AMY HABERMAN, THOMAS PRESTON and EDMUND FLORY, Consolidated Plaintiffs, v. WILHELMINA MODEL AGENCY, INC., also known as Wilhelmina Artist Management LLC, FORD MODELS, INC., formerly known as Ford Model Agency, ELITE MODEL MANAGEMENT, INC., CLICK MODEL MANAGEMENT, INC., NEXT MANAGEMENT COMPANY, BOSS MODELS, INC., GERARD W. FORD, DNA MODEL MANAGEMENT, LLC, IMG MODELS, INC., ZOLI MANAGEMENT, INC. and IMAGES MANAGEMENT, INC., Defendants-Appellees, THE MFME MANAGEMENT, LTD., Q MODEL MANAGEMENT, LLC and MODEL MANAGEMENT CORPORATION, formerly known as International Model Managers Association, Inc., Defendants.

**Subsequent History:** On remand at, Costs and fees proceeding at, Request granted, in part, Request denied by, in part *Fears v. Wilhelmina Model Agency, Inc., 2007 U.S. Dist. LEXIS 48151 (S.D.N.Y., July 5, 2007)*

**Prior History:** [**1] Plaintiffs-appellants and their counsel appeal from orders entered in the United States District Court for the Southern District of New York (Baer, J.) approving settlements in a class action brought against defendant modeling agencies for conspiracy to fix commissions charged to models in violation of the Sherman Act, awarding attorneys' fees, and denying reconsideration of those orders, and from an order allocating the proceeds of settlement with a bankrupt defendant, the appellants contending on appeal that the District Court erred in (1) ordering the distribution from settlement proceeds in excess of recognized losses to various charities rather than to class members as treble damages and prejudgment interest; (2) allocating funds derived from the estate of a bankrupt defendant without additional notice to the class; and (3) applying the wrong standard in awarding counsel fees, with the result that the fee allowance was inadequate.

*Fears v. Wilhelmina Model Agency, Inc., 2005 U.S. Dist. LEXIS 7961 (S.D.N.Y., May 5, 2005)*
*Fears v. Wilhelmina Model Agency, Inc., 2005 U.S. Dist. LEXIS 10764 (S.D.N.Y., June 6, 2005)*

**Disposition:** Affirmed in part, vacated and remanded in part.

# Case Summary

**Procedural Posture**

Appellants, a class of professional models and their counsel, sought review of orders of the United States District Court for the Southern District of New York approving settlements and awarding attorneys' fees in a class suit against appellee modeling agencies for an alleged conspiracy to fix commissions. Appellants also sought review of an order denying reconsideration and an order allocating the proceeds of settlement with a bankrupt agency.

**Overview**

After extensive discovery, the parties settled the suit, which alleged excessive commission charges in violation of the

473 F.3d 423, *423; 2007 U.S. App. LEXIS 191, **1

Sherman Act. The approved settlement contained several injunctive provisions, provided a pro rata distribution to class members based on excessive commissions previously paid, distributed residual or unclaimed funds to named charities under the Cy Pres doctrine, and awarded counsel fees based on funds claimed. On appeal, the court vacated in part. As to the distribution of remaining funds, the court found that the district court had failed to recognize the extent of its discretion, which included the fact that it was empowered to allocate funds to class members as treble damages. The court also found that the district court erred in calculating attorney's fees based on the percentage of the claims made against the fund, rather than on the entire fund, and by including conduct for which counsel already was sanctioned when it set the percentage fee. However, the court rejected appellants' notice claim, finding that the class received adequate notice under Fed. R. Civ. P. 23(e)(B) of a bankrupt agency's settlement through the bankruptcy court proceedings.

**Outcome**

The court vacated the district court's orders insofar as they related to the distribution of settlement proceeds and the award of counsel fees and remanded the case to the district court for reconsideration of those matters. The court affirmed the district court's orders in all other respects.

**Counsel:** PAUL R. VERKUIL (Christina M. Lewicky, on the brief), Boies, Schiller & Flexner LLP, New York, New York, for plaintiffs-appellants and appellant.

DAVID ELBAUM (Kenneth R. Logan, on the brief), **[**2]** Simpson, Thacher & Bartlett LLP, New York, New York, for defendants-appellees Ford Models, Inc. and Gerard W. Ford.

PHILIP BENTLEY (Jack Hazan, on the brief), Kramer, Levin, Naftalis & Frankel LLP, New York, New York, for defendant-appellee EMMC, Inc., f/k/a Elite Model Management Corporation.

JEROME GOTKIN, Mintz, Levin, Cohen, Ferris, Glovsky & Popeo P.C., New York, New York, for defendant-appellee Next Management, LLC, f/k/a Next Management Company.

Aaron Richard Golub, Law Office of Aaron Richard Golub, New York, New York, for defendant-appellee Click Model Management, Inc.

Andrew W. Hayes, Andrew W. Hayes P.C., New York, New York, for plaintiffs-appellants.

Anthony J. Bolognese, Bolognese & Associates LLC, Philadelphia, Pennsylvania, for plaintiffs-appellants.

David Bosman, Boss Models, New York, New York, for defendant-appellee Boss Models, Inc.

Judah S. Shapiro, Law Offices of Judah S. Shapiro, New York, New York, for defendant-appellee Boss Models, Inc.

Merill G. Davidoff, Berger & Montague P.C., Philadelphia, Pennsylvania, for plaintiffs-appellants.

Olav A. Haazen, Boies, Schiller &, Flexner LLP, Armonk, New York, for plaintiffs-appellants.

**[**3]** Richard S. Oelsner, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, White Plains, New York, for defendant-appellee IMG Models, Inc.

Sandor Frankel, (M. Breeze McMennamin, on the brief), Frankel & Abrams, New York, New York, for defendant-appellee Wilhelmina Model Agency, Inc., a/k/a Wilhelmina Artist Management LLC.

Thomas M. Lopez, Katsky LLP, New York, New York, for defendant-appellee DNA Model Management LLC.

David Blasband, McLaughlin & Stern LLP, New York, New York, for defendant-appellee Zoli Management, Inc.

**Judges:** Before: MINER, POOLER, Circuit Judges, and RAKOFF, Judge. *

**Opinion by:** MINER

# Opinion

[*425]  MINER, *Circuit Judge*:

Plaintiffs-appellants, members of a class of present and former professional models, and their counsel appeal from two orders entered in the United States District Court for the Southern District of New York (Baer, *J.*) approving settlements and awarding attorneys' fees in a class action brought against defendant modeling agencies for conspiracy to fix commissions charged to members of plaintiff class, in

---

*    The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

473 F.3d 423, *425; 2007 U.S. App. LEXIS 191, **3

violation [**4] of the Sherman Act. Also before us are appeals from an order denying reconsideration of those orders and an order allocating the proceeds of settlement with a bankrupt defendant. The appellants contend that the District Court erred in (1) ordering the distribution of settlement proceeds in excess of recognized losses to various charities rather than to the class members as treble damages and prejudgment interest; (2) allocating the funds derived from the estate of a bankrupt defendant without additional notice to the class; and (3) applying the wrong standard in awarding counsel fees, with the result that the fee allowance to counsel for plaintiffs-appellants is inadequate.

[*426] For the reasons that follow, we vacate the orders appealed from insofar as they relate to the distribution of settlement proceeds and the award of counsel fees and remand the case to the District Court for reconsideration of those matters; and we affirm the orders in all other respects.

## BACKGROUND

### A. Litigation and Settlement

In 2001 plaintiffs' counsel [1] began to investigate various business practices in the modeling agency industry. Through this investigation, plaintiffs' counsel purportedly [**5] developed evidence that the leading New York modeling agencies, acting in concert since the mid-1970s, (1) falsely claimed exemption from the 10% commission rate cap imposed on "employment agencies" under Article 11 of the New York General Business Law by asserting that they were "managers" and only incidentally involved in procuring employment for their models, and (2) raised the "standard rate" of model commissions from 10% to 20%, where it has stayed since the late 1980s. No government agency participated in the investigation or the ensuing litigation.

The plaintiffs filed their first complaint alleging violation of Section 1 of the Sherman Act, New York General Business Law Article 11, and New York common law on June 25, 2002. The plaintiffs alleged that the defendants conspired to uniformly charge models a commission of 20% [**6] - exceeding the 10% maximum allowed by New York law for employment agencies - and that the defendants used their trade association, Model Management Corporation (f/k/a "International Model Managers Association"), to advance their collusive scheme. This action eventually was consolidated with four similar actions. On September 24, 2002, the plaintiffs filed their First Consolidated Amended

Complaint. On November 15, 2002, the District Court determined that it would address class certification before permitting discovery on the merits. The District Court referred discovery matters relating to class certification to Magistrate Judge Henry B. Pitman.

Responding to various motions to dismiss the complaint, the District Court, by opinion and order dated January 16, 2003, declined to exercise jurisdiction over the state law claims, denied the motion to dismiss as to the claims of price-fixing under the Sherman Act within the period allowed by the four-year statute of limitation, and gave leave to re-plead the tolling of claims arising prior to June 25, 1998. *Masters v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911, 2003 U.S. Dist. LEXIS 698, 2003 WL 145556 (S.D.N.Y. Jan. 17, 2003).* In a later order, [**7] the District Court dismissed claims accruing prior to June 25, 1998 as barred by the statute of limitations. *Masters v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911, 2003 U.S. Dist. LEXIS 7143, 2003 WL 1990262 (S.D.N.Y. Apr. 29, 2003).*

A Second Consolidated Amended Complaint was filed on February 5, 2003 and a third on April 30, 2003. The District Court granted the motion for class certification on July 15, 2003, certifying a plaintiff class consisting of current and former models who had oral or written contracts with any of the defendants from June 1998 onward. *Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911, 2003 U.S. Dist. LEXIS 11897, 2003 WL 21659373 (S.D.N.Y. July 15, 2003).* Appellant, Boies, Schiller & Flexner LLP ("Appellant" or "Boies Schiller"), was approved as lead class counsel. *2003 U.S. Dist. LEXIS 11897, [WL] at *7.* Thereafter, defendant-appellee Next petitioned this Court for interlocutory review of the [*427] District Court's July 15 Class Certification Order. The petition was denied on December 31, 2003.

The District Court then permitted discovery on the merits to proceed, again with Magistrate Judge Pitman supervising the process. The discovery process was a long and difficult one, marked by delay and [**8] resistance. During the process, Magistrate Judge Pitman admonished both sides and twice sanctioned plaintiffs' attorneys for their discovery practices. In the course of discovery, the plaintiffs identified, obtained, inspected and analyzed more than 32,000 pages of documents produced by the defendants and nonparties. There were 25 formal conferences, as well as several informal conferences, before Magistrate Judge Pitman during merits discovery. These conferences were required in order

---

[1] Plaintiffs' counsel consists of several attorneys and firms. For ease of reference, this Opinion will refer only to the collective "plaintiffs' attorneys" or "class attorneys."

473 F.3d 423, *427; 2007 U.S. App. LEXIS 191, **8

to resolve disputes relating to interrogatories, document production, and depositions. Toward the end of the discovery process, Magistrate Judge Pitman imposed a $ 25,000 sanction against plaintiffs' attorneys and ordered them to exclude certain of their time from their fee petition as a further sanction.

At the conclusion of merits discovery, motions by defendants for summary judgment were filed and the submissions were voluminous. On March 22, 2004, the District Court denied summary judgment as to all but defendant Q Model Management on plaintiffs' price-fixing claims. *Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911, 2004 U.S. Dist. LEXIS 4502, 2004 WL 594396 (S.D.N.Y. Mar. 23, 2004).* The Court determined [**9] that Q Model Management was founded long after the formation of the alleged conspiracy and never held membership in the trade association. With regard to the other defendants, the District Court determined that plaintiffs' evidence would support a jury finding that the modeling agency business was an industry "inundated with collusion." *2004 U.S. Dist. LEXIS 4502, [WL] at *13.*

Settlement negotiations began with certain defendants only after the court denied defendants' motions for summary judgment and were heavily influenced by the real prospect of the defendants' bankruptcy. From late March 2004 until the scheduled trial date of June 1, 2004, the plaintiffs reached preliminary settlements with all defendants except for Click. These preliminary settlements took the form of letter agreements (the "Letter Agreements") signed in or about May of 2004 by the attorneys for each of the settling defendants and the class attorneys. The Letter Agreements outlined the settlement terms, including the amount of each defendant's contribution and the manner of payment. Each of these agreements included the following provision:

> 11. This is a binding agreement. Any future disagreement(s) as to the form or content [**10] of the formal settlement agreement and final judgment, and/or any other ancillary papers, will be resolved by the Honorable Harold Baer, Jr., without right of appeal.

Jury selection for the trial against Click commenced on June 1, 2004, and opening statements were delivered on June 3, 2004. The plaintiffs presented lay witnesses during the first day of trial, including two of the class representatives, Carolyn Fears and Tiffany Connor. On June 3, 2004, the plaintiffs reached a settlement with Click, and the jury was dismissed. The parties thereafter proceeded to negotiate a formal Settlement Agreement to be presented to the District Court for approval. A sticking point in the negotiations was

the disposition of unclaimed or unpaid funds (the "Excess Funds") that might remain after payment to the class members of their actual losses. Appellants accused defendant Next of a last-minute repudiation of [*428] the settlement for failure to provide for the reversion of Excess Funds. Next denies that its repudiation was "last minute," contending that its counsel had notified all other counsel in the case three months before the Settlement Agreement was signed that his client was not "on board" [**11] with regard to the proposed disposition of Excess Funds.

In any event, the Final Settlement Agreement (the "Agreement") was signed on October 12, 2004 with (i) Boss Models, Inc.; (ii) Click Model Management, Inc.; (iii) DNA Model Management, LLC; (iv) Ford Models, Inc.; (v) Gerard W. Ford; (vi) Images Management; (vii) IMG Models, Inc.; (viii) IMG Worldwide, Inc.; (ix) Next Management Co.; and (x) Wilhelmina International, Ltd.; and (xi) Zoli Management, Inc. The Agreement created a settlement fund in excess of $ 21,855,000, which was to be distributed pro rata to class members based on the amount of commissions paid by each member in excess of 10%, plus interest.

As to distribution of the settlement fund, paragraph D. 2 of the Agreement specifically provided:

> (b) Every Authorized Claimant shall be paid from the Net Settlement Fund a portion of his or her "Total Recognized Loss," which shall be calculated as follows:
>
>> (1) An Authorized Claimant's "Recognized Loss" for any transaction on which he or she paid a commission to a defendant during the Relevant Period shall be the difference, if any, between (A) the commission that the Authorized Claimant paid to the [**12] defendant and (B) ten percent of the amount of the transaction. There shall be no Recognized Loss for any transaction on which the Authorized Claimant paid no commission, or for any transaction on which the Authorized Claimant paid a commission of ten percent or less.
>
>> (2) An Authorized Claimant's "Total Recognized Loss" shall be the sum of all of his or her Recognized Losses.
>
>> (3) If the sum of the Total Recognized Losses of all Authorized Claimants who submit valid and timely proof of claim forms is equal to or greater than the amount of the Net Settlement Fund, then the net settlement fund shall be distributed to all authorized claimants on a pro rata basis. . . .

(4) If the sum of the Total Recognized Losses of all Authorized Claimants who submit valid and timely proof of claim forms is less than the amount of the Net Settlement Fund, then the Court shall, in its discretion, determine the disposition of the amount representing the difference between the two figures, after hearing the views of the parties hereto as to such disposition.

As to awards to counsel and certain representative plaintiffs, the agreement provided:

E.1 Plaintiffs' Settlement Counsel [**13] may submit an application or applications (the "Fee and Expense Application") for distributions from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) reimbursement of expenses incurred in connection with prosecuting the Action; (c) plus any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court; and (d) for incentive awards and reimbursement of expenses to certain Representative Plaintiffs in prosecuting the Action. Plaintiffs' Settlement [*429] Counsel reserve the right to make additional applications for fees and expenses incurred. However, fees or expenses of Plaintiffs' Counsel may be paid from the Settlement Fund only after the Final Settlement Date occurs for a Settling Defendant from whose settlement payments such fees or expenses will be paid.

E.2 The portion of the Fee and Expense Award attributable to any Settling Defendant shall be paid to Plaintiffs' Settlement Counsel from the Settlement Fund, as ordered, after the Final Settlement Date for such Settling Defendant, and after the Court executes a written order awarding such fees and expenses, notwithstanding [**14] the existence of any timely filed objections thereto, or potential appeal therefrom, subject to the joint and several obligation of Plaintiffs' Settlement Counsel to make appropriate refund repayments to the Settlement Fund as more particularly set forth below in [paragraph] E. 3. Plaintiffs' Settlement Counsel shall thereafter allocate the attorneys' fees amongst Plaintiffs' Counsel in a manner in which Plaintiffs' Settlement Counsel in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the Action.

The Agreement also provided for a number of injunctive provisions that were designed to address and end certain practices which disadvantaged models prior to the commencement of the litigation. Such provisions included disclosure by Settling Defendants of all bookings and compensation received for each model, utilization of contracts with models specifying relevant compensation terms and practices and management services, and a prohibition against joining any model agencies' or managers' trade associations in the United States.

B. Approval of the Settlement

A motion for preliminary approval of the settlement proposed in the [**15] Agreement and for authorization to disseminate notice and claims forms was granted by the District Court by Order dated October 12, 2004. By that Order, the District Court found "that the proposed settlements with the Settling Defendants set forth in the Settlement Agreement, subject to final determination following a hearing after notice to the Class, is sufficiently fair, reasonable and adequate to authorize dissemination of the notice." The Order specified the form and manner of service of the notice and cut-off dates for filing objections to the Settlement, exclusion from the Class, and papers in support of the Settlement. It fixed December 20, 2004 for a hearing to determine whether the Settlement should be approved and whether the motion of plaintiffs' counsel for an award of attorneys' fees and expenses and for payments to certain representative plaintiffs should be granted.

By affidavit dated December 9, 2004, the Claims Administrator appointed by the Court reported that 16,512 notices had been mailed to potential class members by first-class mail and that a summary notice of the proposed settlement had been published in *USA Today* on October 25, 2004. The notice advised [**16] that the deadline for filing proofs of claim had been fixed at January 6, 2005. By Opinion and Order dated May 5, 2005, the District Court granted in part and denied in part the motion originally filed by plaintiffs on December 13, 2004 for approval of the final proposed settlement, including incentive awards and distributions to claimants, attorneys' fees and expenses and distribution of residual funds. *Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911, 2005 U.S. Dist. LEXIS 7961, 2005 WL 1041134 (S.D.N.Y. May 5, 2005).*

[*430]  C. Opinion and Order Approving Settlement and Directing Distribution

With respect to the terms of settlement, the Court reviewed the provisions of the Settlement Agreement providing for the creation of a $ 21,855,000 Settlement Fund and injunctive and equitable relief. The Court observed that "[t]he non-monetary portion of the Agreement may prove more

473 F.3d 423, *430; 2007 U.S. App. LEXIS 191, **16

valuable to the models than the monetary settlement and should not be overlooked in any analysis of the success of this lawsuit." *2005 U.S. Dist. LEXIS 7961, [WL] at *1*. In approving the settlement as reasonable, the Court found as follows:

> This case involves an alleged price-fixing scheme in the modeling industry by some of the **[**17]** industr[y's] most powerful agencies. The issues were thoroughly investigated and aggressively litigated. Plaintiffs' success was never assured and, if the case had continued, plaintiffs would have had to prove a complex conspiracy to artificially fix the commission structure in the modeling industry. *See, e.g.*, *In re Visa Check/Master-money Antitrust Litig., 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003)* ("The complexity of federal antitrust law is well known"). Settlement negotiations were conducted over months, at arm's length, and between experienced and skilled attorneys with frequent pretrial conferences and motion practice.

> Based on all these findings, the Agreement is reasonable.

*2005 U.S. Dist. LEXIS 7961, [WL] at *3.*

Included in the settlement approval were incentive awards in the sum of $ 25,000 for each of the two named plaintiffs who were deposed and $ 15,000 for each of the two trial witnesses and eight class representatives. *Id.* The Court noted that incentive awards were related to the individual's personal risk and additional efforts to benefit the lawsuit. *Id.* The District Court conditioned its overall settlement approval upon the maintenance of a database **[**18]** by the Claims Administrator. *2005 U.S. Dist. LEXIS 7961, [WL] at *2.* The Court noted that the Claims Administrator had incurred $ 25,000 in expenses to the date of the Opinion and Order and had "estimated an additional $ 50,000 to $ 75,000 in reimbursable fees and expenses related to the distribution of funds, tracking the issuance and deposits of checks to class members, and preparation of interim and final reports." *2005 U.S. Dist. LEXIS 7961, [WL] at *3.*

In its decision, the District Court noted that defendant Elite had filed a Chapter 11 Petition in the Bankruptcy Court for the Southern District of New York on February 11, 2004; that pursuant to the Bankruptcy Organization Plan, the model representative would be deemed to have an unsecured claim of $ 2,575,000; and that, based upon an estimated distribution, it was anticipated that the model representative would receive a cash distribution on the allowed model claims of between $ 847,000 and $ 1,673,750. *2005 U.S. Dist. LEXIS 7961, [WL] at *1 n. 3.* The total Settlement

Fund of $ 21,855,000 would be increased by the bankruptcy settlement, which provided that the settlement proceeds be held in escrow pending the entry of an "allocation order" by the District Court. *Id.* The Bankruptcy Court Order approved **[**19]** the proposed settlement with Elite as "fair, reasonable and in the best interest of the Debtor's estate and creditors." *Id.* That Order included the following provision:

> To the extent the Allocation Order directs that all or a portion of the Model Distribution be distributed (a) to charity or (b) to holders of any Class 4 Claim other than claim No. 50 filed on behalf of the class of plaintiffs in the Fears Action (the "Individual Model Claims"), that portion of the Model Distribution (the "Excess Distribution") shall be redistributed to the Plan Administrator for **[*431]** a pro rata distribution to the holders of Individual Model Claims to the extent they are Allowed Class 4 Claims in the Bankruptcy Case. . . . Upon payment in full of all Allowed Individual Model Claims, any remaining Excess Distribution shall be distributed on a *pro rata* basis to

certain other creditors and in accordance with the distribution priorities set forth in the Plan approved by the Bankruptcy Court.

Accordingly, the District Court concluded that while it was required to allocate the proceeds of the Elite settlement among the plaintiffs in this action, "review of the substantive fairness **[**20]** of the settlement between plaintiffs and [Elite] is unnecessary" in view of the Bankruptcy Court Settlement Order. *Fears, 2005 U.S. Dist. LEXIS 7961, 2005 WL 1041134, at *1 n. 3.* The District Court observed that it was empowered by the Elite Reorganization Plan to "approve and direct the allocation of the proceeds" of that Settlement in this action, designated the *Fears* action. *Id.*

Turning to the question of attorneys' fees, the District Court recognized the claim of plaintiffs' counsel to a fee award of 33.33% of the fund of $ 21,855,000 ($ 7,285,000) plus unreimbursed expenses ($ 1,590,164.65) for a total of $ 8,875,164.65. *2005 U.S. Dist. LEXIS 7961, [WL] at *9.* The District Court also recognized that the lodestar calculation (number of hours reasonably expended times reasonable hourly rate), involving approximately 28,000 professional hours, plus the expenses claimed, totaled $ 10,702,324.65. *2005 U.S. Dist. LEXIS 7961, [WL] at *6, *9.* The Court observed that the percentage fee award plus expenses requested was 40% of the total fund and that the lodestar amount alone was substantially more than the amount of the claims filed to the date of the District Court's opinion - $ 9,338,958.29. *2005 U.S. Dist. LEXIS 7961, [WL] at *9.*

473 F.3d 423, *431; 2007 U.S. App. LEXIS 191, **20

Evaluating the factors to [**21] be considered in fixing a reasonable common-fund fee, the District Court first addressed the time and labor expended by counsel.

In determining a reasonable attorneys' fee, the District Court considered several factors, including (1) the time and labor expended by counsel; (2) the magnitude of the litigation; (3) the risk of litigation; and (4) the quality of representation. In examining the time and labor factor, the District Court reviewed the hours spent and rates charged by each of the law firms representing the plaintiffs in computing their lodestar claims. Because, as will be seen, the District Court ultimately resolved the fee issue by awarding fees on the basis of a percentage of "claims made," the District Court determined that "the lodestar calculation is primarily for crosscheck purposes." *2005 U.S. Dist. LEXIS 7961, [WL] at *6*.

As to the magnitude of the litigation, the District Court took note of plaintiffs' allegations that they were confronted with the need to establish a wide-ranging price-fixing conspiracy that existed over a period of thirty years and involved as defendants "some of the most venerable names in the modeling industry." *2005 U.S. Dist. LEXIS 7961, [WL] at *7*. As to the risk of litigation factor, [**22] the District Court referred to the numerous motions to dismiss and for summary judgment, the extensive discovery conducted, the contingent nature of the litigation, and the advancement of tens of thousands of dollars in disbursements by Class Counsel. *See id.* The District Court thereupon concluded that "the manner in which this case unfolded demonstrates the significant possibility that Class Counsel could have failed to achieve any recovery at all and, consequently, no compensation." *2005 U.S. Dist. LEXIS 7961, [WL] at *8*.

Finally, the District Court found that the quality of representation by Class Counsel in this case "appears to be satisfactory." *Id.* The court further remarked that "in having brought this lawsuit, the [*432] plaintiffs' lawyers performed a valuable public service for which they are to be commended." *Id.* The court, however, "tempered" this praise by referring to the conduct of the plaintiffs' counsel during the discovery process and by imposing sanctions as a result of that conduct. *Id.* The court opined that "attorneys' conduct throughout the litigation must be factored into the quality of representation analysis" and, accordingly, "reduced the sought-for-fee award to include [**23] and emphasize [its] concern on this score." *2005 U.S. Dist. LEXIS 7961, [WL] at *9*.

The District Court ultimately "conclude[d] that a fair and appropriate fee is 40% of the [claims made against the

Settlement Fund], including [a separate] mediated settlement [in another action against IMG Models, among other defendants]." *2005 U.S. Dist. LEXIS 7961, [WL] at *16*. "If translated into a percentage of the entire Fund this would equal 17.2%, or $ 3,759,583.16." *Id.* The court determined that all claimed expenses would be allowed, bringing the fees and expenses total to $ 5,349,747.81. *Id.* It also found that the estimated cost of Fund administration - $ 75,000-$ 100,000 - was "within acceptable limits" and noted that the Fund might be increased by any contribution to be made by Elite. *2005 U.S. Dist. LEXIS 7961, [WL] at *16 & n. 17*.

In deciding to award fees on the basis of funds claimed rather than on the basis of the Settlement Fund created, the District Court recognized a split in authority, with the Supreme Court yet to weigh in on the issue. In declining to award fees on the basis of the total Fund available, the court noted that "court authorization of what can be analogized as a windfall to the attorneys would violate . . . the Second [**24] Circuit's clear intention to avoid such awards." *2005 U.S. Dist. LEXIS 7961, [WL] at *4*. The District Court also found support for its position in the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (Dec. 22, 1995) ("PSLRA") and in the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (Feb. 18, 2005) ("CAFA"). *See id.* (examining Congressional intent).

Turning to the question of distribution of the residual or unclaimed funds, the District Court noted that the Settlement Agreement conferred discretion upon the Court with regard to the disposition of such funds "after hearing the views of the parties hereto as to such disposition." *2005 U.S. Dist. LEXIS 7961, [WL] at *10*. According to the Court,

> [m]ost Defendants . . . voiced concerns about the models being awarded any more than the amount of money arrived at by the agreed upon formula for their claim and some sought to have money returned to their clients, they then went on to suggest preferred charitable contributions.

*Id.*

The Court determined to distribute the Excess Funds under the Cy Pres Doctrine. *2005 U.S. Dist. LEXIS 7961, [WL] at *10-*11*. The Court met with representatives of various organizations designated [**25] by the parties and others to identify charities that would directly or indirectly benefit members of the class with the least administrative costs. The District Court chose the following organizations to receive the residual funds and provided a brief description of their

473 F.3d 423, *432; 2007 U.S. App. LEXIS 191, **25

purposes and goals and the manner of allocation of the funds to be distributed: Beth Israel Medical Center's Continuum Women's Cardiac Care Network; Columbia Presbyterian Medical Center's Eating Disorders Program; Columbia Presbyterian Medical Center's Division on Substance Abuse; Columbia Presbyterian Medical Center's Ovarian Cancer Repository; New York University Medical Center; Civil Division of the Legal Aid Society; and The Heart Truth. *See 2005 U.S. Dist. LEXIS 7961, [WL] at *11-*16.*

[*433]  D. Proceedings Following the Opinion and Order

On May 19, 2005, plaintiffs moved for reconsideration of the Opinion and Order approving the Settlement and directing distribution. "Overlooking the motion's procedural deficiencies in the interest of deciding matters on the merits," *Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911, 2005 U.S. Dist. LEXIS 10764, 2005 WL 1325297, at *2 (S.D.N.Y. Jun. 6, 2005),* the Court rejected the contentions of [**26] error in the Court's decision to award single, rather than treble, damages and in its failure to award prejudgment interest. *See 2005 U.S. Dist. LEXIS 10764, [WL] at *3.* The Court reasoned that the unambiguous terms of the Settlement Agreement made no provision for the distributions sought and that it was bound under the circumstances to approve or disapprove the Settlement negotiated by the parties. *See id.* Reviewing its decision to award counsel fees equivalent to 17.2% of the entire Fund, the Court determined that it had overlooked no decisions that might have directed a different outcome. *See id.*

In reaffirming the decision to distribute Excess Funds under the Cy Pres Doctrine, the Court noted that the Settlement Agreement included a specific provision allowing for the Court to distribute such funds in the exercise of its discretion. The District Court also noted that "[p]laintiffs' counsel gave at least tacit approval to the distribution scheme by proposing charitable organizations of his own." *2005 U.S. Dist. LEXIS 10764 , [WL] at *4.* The Court denied the motion for reconsideration in all respects, except that it granted the motion to the extent of clarifying the incentive awards to class representatives. [**27]  *See 2005 U.S. Dist. LEXIS 10764 , [WL] at *5.*

Final Judgment Orders were entered on May 6, 2005 as to defendants Click Model Management, Boss Models, DNA Model Management, Ford Models, Gerard Ford, Images Management, and IMG Models; and on May 9, 2005 as to Next Management, Zoli Management and Wilhelmina International. On July 12, 2005, a Settlement Allocation Order was entered as to defendant Elite Management. It

noted that residual funds were to "be distributed to a variety of charitable organizations" and provided that "the 'Settlement Escrow Account' (Elite's contribution to the *Fears* Settlement) shall be released to the [Elite] Plan Administrator and the Elite New York Settlement proceeds shall be available for distribution" according to the Bankruptcy Court Order.

Subsequent Court Orders authorized the Claims Administrator to begin mailing distributions to class members in accordance with their claims. The various charities designated as recipients of the Excess Funds have been advised that distribution to them must await this appeal. We have been advised of a motion pending in the District Court to allow the filing of sixty-six claims received from December 1, 2005 (the outside date for [**28]  filing fixed by the District Court) through June 27, 2006. Before this Court are pending motions by plaintiffs to supplement the record with five letters sent to the District Court from counsel for plaintiffs, a renewed motion for the same relief, and a motion by defendant Next to strike a portion of the appellants' reply brief.

**ANALYSIS**

I. Of the Notice of Appeal and the Issues Presented.

The Notice of Appeal filed in the District Court on October 25, 2005 refers to an earlier Notice of Appeal filed on June 3, 2005 and addressed to the May 5, 2005 Order approving the settlement. It recites that the briefing schedule relating to the earlier appeal was stayed to ensure the finality of district court proceedings. It  [*434]  further states: "The District Court entered Final Judgment Orders dismissing plaintiffs' claims against the two remaining defendants [Elite Model Management, Inc. and Model Management Corporation] on September 29, 2005. Therefore, Final Judgments have been entered on all claims against all defendants in the underlying action." Included in the Notice of Appeal is a reservation of the right to move for supplemental attorneys' fees and expenses. It appears [**29]  that the Notice of Appeal of October 25, 2005 was timely filed, and no challenge has been raised as to its timeliness.

In the Notice of Appeal, plaintiffs and their counsel challenge:

(1) the District Court's Opinion and Order dated May 5, 2005, [insofar as that Order (a) denied plaintiffs' request for payment of up to treble damages and prejudgment interest to class members, (b) denied in part plaintiffs' motion for attorneys' fees, (c)

473 F.3d 423, *434; 2007 U.S. App. LEXIS 191, **29

prematurely determined that there were "unclaimed" funds and allocated those funds to charities;

(2) the District Court's Opinion and Order dated June 6, 2005 denying plaintiffs' motion for reconsideration of the May 5 Order; and

(3) the District Court's Elite Model Management Settlement Allocation Order dated July 12, 2005, denying plaintiffs' request for entry of an allocation order regarding funds to be received from the bankrupt estate of EMMC, Inc., formerly known as (and sued here as) Elite Model Management, Inc.

II. Of the Distribution of Remaining Funds.

The Settlement Agreement approved by the District Court clearly contemplated the need to provide for the distribution of any Excess Funds that might [**30] remain after all class members were fully compensated for their actual losses. If those losses, designated as "Total Recognized Losses," were less than the amount of the "Net Settlement Fund," the Agreement provided for the Court to "determine the disposition of the amount representing the differences between the two figures, after hearing the views of the parties hereto as to such disposition." Of course, it was not certain at the time the Agreement was entered into whether there would be Excess Funds, and the Agreement accordingly provided that if Total Recognized Losses exceeded the Net Settlement Fund, the class members would receive distribution on a pro rata basis.

In support of their contention that the Excess Funds should be applied toward treble damages rather than allocated to charities under the Cy Pres Doctrine, plaintiffs bring to our attention the Supreme Court's observation that "the antitrust private action was created primarily as a remedy for the victims of antitrust violations. Treble damages 'make the remedy meaningful by counter-balancing the difficulty of maintaining a private suit' under the antitrust laws." *Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp., 456 U.S. 556, 575, 102 S. Ct. 1935, 72 L. Ed. 2d 330 (1982)* [**31] (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 485-86, 97 S. Ct. 690, 50 L. Ed. 2d 701 & n. 10 (1977)*) (citations and internal quotation marks omitted). We have noted that "[f]ull restitution of plaintiffs' losses is a no less central objective of the treble damage provision than the encouragement of private antitrust enforcement." *Hydrolevel Corp. v. Am. Soc'y of Mech. Eng'rs, Inc., 635 F.2d 118, 127 (2d Cir. 1980)*.

The defendants contend that the Letter Agreements that preceded the Settlement Agreement established the District Court [**435] as the final authority for the resolution of any disagreement as to the distribution of the Excess Funds, since they provide that "[a]ny future disagreements as to the form or content of the formal settlement agreement . . . will be resolved by the [district court] without right of appeal." Assuming that the Letter Agreements are binding at this point, the defendants' contention is based on a misreading of the Agreements. The parties that signed the Letter Agreements (and not all of them did) do not disagree as to the form or content, both of which are plain. The District Court, after hearing the views of [**32] the parties, is vested with discretion as to the disposition of the Excess Funds. Defendants argue that the District Court acted reasonably in applying the Cy Pres Doctrine and that plaintiffs were among those who recommended specific charitable organizations. They find support for their position in the fact that the Settlement Agreement makes no provision for treble damages and that one of the counsel for plaintiffs said that "[t]reble damages are only achieved if you go through, you win your trial, you win your appeal everything becomes final and you actually collect the money." They contend that the Settlement Agreement refers only to actual losses.

While it is true that the Settlement Agreement reposes discretion in the District Judge as to the disposition of Excess Funds, that discretion is not absolute. Where we find an abuse of discretion in our review of the allocation of funds derived from class settlements, the scheme adopted by the District Court will not be upheld. *In re Agent Orange Prod. Liab. Litig. VI, 818 F.2d 179, 181 (2d Cir. 1987)*. We have concluded that a district court abuses its discretion when "(1) its decision rests on an error of law (such [**33] as application of the wrong legal principles) or a clearly erroneous factual finding, or (2) its decision - though not necessarily the product of a legal error or a clearly erroneous factual finding - cannot be located within the range of permissible decisions." *Zervos v. Verizon New York, Inc., 252 F.3d 163, 169 (2d Cir. 2001)*. In its original Opinion approving settlement, the District Court considered only the following dispositions: (i) the return of excess settlement funds to the defendants on a pro rata basis; or (ii) in the exercise of its equitable powers, distribution of the funds to charitable organizations. The court stated: "Having adopted the charitable route for these funds, it is my view that wherever possible, the cy pres doctrine should be invoked." *Fears, 2005 U.S. Dist. LEXIS 7961, 2005 WL 1041134, at *11*. The court then went on, in accordance with the Cy Pres Doctrine, to allocate the funds to those charities thought to benefit the class, either directly or indirectly. *2005 U.S. Dist. LEXIS 7961, [WL] at *12*.

We are not yet prepared to say that the District Court abused its discretion in allocating the Excess Funds under the Cy

473 F.3d 423, *435; 2007 U.S. App. LEXIS 191, **33

Pres Doctrine. It does appear, however, that the District [**34] Court was not aware of the extent of its discretion, failing to recognize that it was empowered to allocate funds to the members of the class as treble damages. The District Court ultimately held that the terms of the Settlement Agreement barred it from even considering such an alternative. Responding to the motion for reconsideration, the court stated:

> Here, the Settlement Agreement lacks any mention of either treble damages or pre-judgment interest. The thirty-page agreement is noticeably silent as to damages, treble or otherwise. As such, the Court did not insert treble damages or prejudgment interest into the four corners of the Settlement Agreement, and it would have been wrong to do so.

*Fears, 2005 U.S. Dist. LEXIS 10764 , 2005 WL 1325297, at *3*.

While it is true that the Clayton Act does not allow for prejudgment interest in [*436] the absence of a finding of bad faith on the part of defendants causing a material delay in the adjudication of the dispute, *15 U.S.C. § 15(a)*, a finding not made here, a treble damages award did lie within the ambit of the District Court's discretion and should be considered on remand. *See*, *e.g.*, *In re Folding Carton Antitrust Litig., 557 F. Supp. 1091, 1104-07 (N.D.Ill. 1983)* [**35] (recognizing the district court's discretion to consider whether excess funds in antitrust class action settlement could be awarded equitably as treble damages after claimants were paid in full), *aff'd in part, vacated in part on other grounds*, *744 F.2d 1252 (7th Cir. 1984)*.

In exercising its discretion, the District Court should bear in mind that the purpose of Cy Pres distribution is to "put[] the unclaimed fund to its *next best* compensation use, e.g., for the aggregate, indirect, prospective benefit of the class." 2 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 10:17 (4th ed. 2002) (emphasis supplied). Cy Pres means "as near as possible," and "[c]ourts have utilized Cy Pres distributions where class members are difficult to identify, or where they change constantly, or where there are unclaimed funds." *Id*. at § 10:16 n. 1. In this connection, we take note of the recent Draft of the Principles of the Law of Aggregate Litigation by the American Law Institute. With respect to the approval of settlements providing for a Cy Pres remedy, the Draft proposes a rule limiting Cy Pres "to circumstances in which direct distribution to individual [**36] class members is not economically feasible, or where funds remain after class members are given a full opportunity to make a claim."

Draft § 3.08, entitled "Cy Pres Settlements." This proposed rule is consonant with the observation of our sister circuit that "[f]ederal courts have frequently approved [the Cy Pres] remedy in the settlement of class actions where the proof of individual claims would be burdensome or distribution of damages costly." *Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1305 (9th Cir. 1990)*. In the case before us, neither side contends that a Cy Pres distribution is appropriate because it would be onerous or impossible to locate class members or because each class member's recovery would be so small as to make an individual distribution economically impracticable. We are confident that the district court, fully aware of the breadth of its discretion, will see to an appropriate distribution of the funds remaining after the models have been compensated for their actual losses.

### III. Of Counsel Fees.

The District Court properly utilized the "percentage of the fund" method in calculating counsel fees, applying the lodestar [**37] method "as a 'cross check' on the reasonableness of the requested percentage." *Goldberger v. Integrated Res., Inc., 209 F.3d 43, 49-50 (2d Cir. 2000)*. Of course, courts may continue to use the lodestar approach alone in calculating attorneys fees in common fund cases. *See* *Wal-Mart Stores, Inc. v. Visa, USA, Inc., 396 F.3d 96, 121 (2d Cir. 2005)*. Whatever method is used, the reasonableness of a common fund fee award is governed by the so-called *Goldberger* factors: (1) counsel's time and labor; (2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the requested fee to the settlement; and (6) considerations of public policy. *Id. at 121*. We recognize that "courts have traditionally awarded fees for common fund cases in the lower range of what is reasonable." *Id. at 122*.

In this case, the District Court calculated the percentage of the Fund on the basis of the claims made against the Fund, [*437] rather than on the entire Fund created by the efforts of counsel. We hold that this was error. We also hold, on the record before us, that it was error [**38] for the District Court to take into account, in setting the percentage fee, the conduct for which counsel already was sanctioned. The Magistrate Judge assessed a substantial fine and ordered the exclusion of certain time charges from the fee petition, and it would be unfair to "double count" for the sanctioned conduct.

In computing the fees on the basis of claims made against the Fund rather than on the basis of the entire Fund, the

473 F.3d 423, *437; 2007 U.S. App. LEXIS 191, **38

District Court recognized a split of authority on the subject. *See generally* 7B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1803.1 (2d ed. 2004). In siding with courts that compute fees as a percentage of claims made, the District Court saw the alternative procedure as creating a "windfall" for the attorneys. We disagree. The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not. We side with the circuits that take this approach. *See Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1295 (11th Cir. 1999);* [**39] *Williams v. MGM-Pathe Commc'ns Co., 129 F.3d 1026, 1027 (9th Cir. 1997).*

Our own cases refer to "percentage *of the fund,*" *Wal-Mart Stores, 396 F.3d at 121* (emphasis supplied), and "percentage *of the recovery,*" *Goldberger, 209 F.3d at 47* (emphasis supplied). We take these references to be to the whole of the Fund. Use of the entire Fund as a basis for the computation does not necessarily result in a "windfall" because the court may always adjust the percentage awarded in order to come up with a fee it deems reasonable in light of the *Goldberger* factors. Accordingly, we have held that a "district court did not abuse its discretion in awarding plaintiffs' counsel a generous fee based on a somewhat low percentage of the fund." *Wal-Mart Stores, 396 F.3d at 123.*

In support of its decision that counsel fees should be computed on the basis of funds claimed by class members, the District Court referred to the PSLRA provision entitled "Restriction on Payment of Attorneys' Fees and Expenses." *Fears, 2005 U.S. Dist. LEXIS 7961, 2005 WL 1041134, at *4.* According to that provision, "[t]otal attorneys' fees and expenses awarded [**40] by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." *15 U.S.C. § 78u-4(a)(6).* But the PSLRA is not applicable to antitrust class actions such as the one before us. It was designed "to reform abusive securities class action litigation" and "to exercise supervision and control of the lawyers for the class." H.R. REP. NO. 104-369, at 32 (1995) (Conf. Rep.), *as reprinted in* 1995 U.S.C.A.A.N. 730, 731 (relating to Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67). The House of Representatives Conference Report also observed that "counsel in securities class actions often receive a disproportionate share of settlement awards" and indicated

that the PSLRA is intended to "limit[] the award of attorney[s'] fees and costs to counsel for a class . . . to a reasonable percentage of the amount of recovery awarded to a class." *Id.* at 736.

The fee restrictions described in the PSLRA do not apply in any context other than securities class actions, and, even if they did, it is not clear how they would apply. The statute speaks [**41] in terms of a percentage of damages "actually paid to the class." But the entire fund created by [*438] the efforts of counsel presumably is "paid to the class," even if some of the funds are distributed under the Cy Pres Doctrine. The PSLRA would not allow for the computation of fees on the basis of such non-damages items as discounts on coupons received in settlement. A key consideration required by the PSLRA "is the result actually achieved for class members, a basic consideration in any case in which fees are sought on the basis of a benefit achieved for class members." Advisory Comm. Notes to Fed. R. Civ. P. 23, 2003 Amendments. Arguably, the entire Settlement Fund is a "benefit achieved for class members."

The District Court's reliance on the CAFA is also misplaced. The CAFA recites as its purpose the following: "To amend the procedures that apply to consideration of interstate class actions to assure fairer outcomes for class members and defendants, and for other purposes." Class Action Fairness Act, Pub. L. No. 109-2, 119 Stat. 4 (2005). However, the only mention of fees to be allowed to class counsel deals with the award of fees in coupon [**42] settlement cases. *See 28 U.S.C. § 1712(a)-(c).* [2]

IV. Of the Elite Model Management Settlement Allocation Order.

Appellants contend that "[t]he [district] court's entry of the Allocation Order [of July 12, 2005] sending the funds received from the Elite Settlement back to the bankruptcy court, without notice to the class or an opportunity to submit claims against those funds, was contrary to the plain language and clear intent of the notice provisions of Fed. R. Civ. P. 23(e)." Brief of Plaintiffs-Appellants at 27. But Rule 23(e)(1)(B) provides only that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement." We have interpreted this provision as follows: [**43]

The standard for the adequacy of a settlement notice in a class action under either the *Due Process Clause* or

---

[2]   It may be, in any event, that upon remand the entire settlement amount will be paid over to the individual claimants, thereby mooting the whole question of what basis should be used for the computation of fees.

473 F.3d 423, *438; 2007 U.S. App. LEXIS 191, **43

the Federal Rules is measured by reasonableness. There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." Notice is "adequate if it may be understood by the average class member."

*Wal-Mart Stores, 396 F.3d at 113-14* (internal citations omitted). Moreover, a district court's decision regarding the form and content of notices sent to class members is reviewed only for an abuse of discretion. *In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 145, 168 (2d Cir. 1987).*

In this case, the District Court clearly felt that the class would have received adequate notice of the Elite Settlement through the Bankruptcy Court proceedings. During the course of this litigation, defendant Elite filed its petition for bankruptcy, and this filing stayed this class action as [**44] to Elite. The Bankruptcy Court ordered that all proofs of claim against Elite, including those of the certified class, be filed by June 7, 2004. Thereafter, Elite sent a notice through the Bankruptcy Court to its would-be creditors, including those of the certified class through the Claims Administrator appointed by the District Court.

[*439] On April 29, 2004, one of the attorneys representing the plaintiff class informed the District Court of the mailing of the notice and asserted that Elite had violated an Order of the District Court regarding class notices. The District Court responded by letter the same day, informing the attorney that it had consulted with the Bankruptcy Court upon receipt of the letter and that it had been determined that, absent an objection in Bankruptcy Court, lead counsel in the class action would submit a "single class-wide proof of claim" and would "send a second notice to class members, informing them that it would be submitting a joint proof of claim." Counsel for the class, as well as individual models, filed proofs of claim.

In February 2005, Elite and the class settled their claims and the Bankruptcy Court permitted one claim for the class. Because the [**45] claim payment was included as part of a settlement confirmation order, the Bankruptcy Court approved the settlement pursuant to *Fed. R. Bankr. P. 9019.* Settlement proceeds were to be held in escrow pending the entry of an "allocation order" by the District Court. The 9019 order provided that, to the extent the allocation order directed that all or a portion of the Elite settlement was to be distributed to charity or to holders of other claims besides the class in District Court, such amounts instead would be returned to the Elite estate. No objections to, or appeal from, this order were taken.

The District Court approved the Elite settlement, like all the other settlements, on May 6, 2005. Not until June 2005, when plaintiffs' attorneys alleged that the class had never received notice of the Elite settlement, was any issue of notice raised. The basis for this argument apparently is that an earlier class notice from the District Court regarding the Settlement Agreement stated (because the action had been stayed as to Elite) that it did not settle claims against Elite. However, it is undisputed that notice was sent through the bankruptcy proceedings, [**46] in which class counsel was participating, to all models who had claims against Elite, both as part of the class and as part of a parallel state action.

We agree with the apparent understanding of the District Court that the class had received adequate notice of the Elite settlement through the Bankruptcy Court proceedings and find no abuse of discretion in this regard. Moreover, appellants' argument here seems to be less directed at a supposed lack of notice and more at the fact that the District Court returned the remainder of the Elite settlement fund to the Bankruptcy Court after determining that the settlement fund would be adequately funded to pay actual damages even without the remainder of Elite's settlement. This concern is part-and-parcel of appellants' argument that class members should receive treble damages - a topic which we have dealt with earlier. In any event, we find that the measure of "reasonableness" that we require in cases of this nature has been satisfied and that the notice to the class members with respect to the Elite settlement was in all respects adequate.

## CONCLUSION

The orders of the District Court appealed from are affirmed in part and vacated [**47] in part, and the case is remanded to the District Court for further proceedings in accordance with the foregoing. All pending motions are denied.

● Warning

As of: January 7, 2016 4:07 PM EST

# *In re Publ'n Paper Antitrust Litig.*

United States District Court for the District of Connecticut

July 30, 2009, Decided; July 30, 2009, Filed

Docket No. 3:04 MD 1631 (SRU); NO. 3:05 CV 1267 (SRU); NO. 3:05 CV 1339 (SRU); NO. 3:05 CV 1358 (SRU); NO. 3:05 CV 1381 (SRU)

**Reporter**

2009 U.S. Dist. LEXIS 66654

IN RE PUBLICATION PAPER ANTITRUST LITIGATION

**Subsequent History:** Summary judgment granted by *Parliament Paper, Inc. v. Stora Enso Oyj (In re Publ'n Paper Antitrust Litig.), 2010 U.S. Dist. LEXIS 131931 (D. Conn., Dec. 14, 2010)*

**Prior History:** *In re Publ'n Paper Antitrust Litig., 2005 U.S. Dist. LEXIS 19896 (D. Conn., Sept. 6, 2005)*

**Counsel:** **[\*1]** For Charles J. Gardella, Jr., o/b/o himself & all others similarly situated, formerly doing business as FCP Webindery Inc, Plaintiff (3:04-md-01631-SRU): Alex C. Turan, Thomas P. Dove, LEAD ATTORNEYS, The Furth Firm, San Francisco, CA; Christopher L. Lebsock, Jon T. King, Michael P. Lehmann, LEAD ATTORNEYS, Hausfeld LLP, Washington, DC; Eric L. Palmquist, LEAD ATTORNEY, Izard Nobel PC-Htfd, Hartford, CT.

For Technolith Inc, o/b/o himself & all others similarly situated, formerly doing business as FCP Webindery Inc, Plaintiff (3:04-md-01631-SRU): Alex C. Turan, Henry A. Cirillo, Thomas P. Dove, LEAD ATTORNEYS, The Furth Firm, San Francisco, CA; Christopher L. Lebsock, Jon T. King, Michael P. Lehmann, LEAD ATTORNEYS, Hausfeld LLP, Washington, DC; Craig C. Corbitt, LEAD ATTORNEY, Zelle, Hofmann, Voelbel, Mason & Gette LLP, San Francisco, CA; Eric L. Palmquist, LEAD ATTORNEY, Izard Nobel PC-Htfd, Hartford, CT; Brian P. Daniels, Brenner, Saltzman & Wallman, New Haven, CT.

For Larry Weiss, o/b/o himself & all others similarly situated, formerly doing business as Forms Inc, Plaintiff (3:04-md-01631-SRU): Eric L. Palmquist, Jeffrey S. Nobel, LEAD ATTORNEYS, Izard Nobel PC-Htfd, Hartford, CT; **[\*2]** Jeffrey B. Gittleman, Mark R. Rosen, LEAD ATTORNEYS, Barrack, Rodos & Bacine, Philadelphia, PA.

For Acorn/Parliament Paper Inc, o/b/o itself & all others similarly situated, Plaintiff (3:04-md-01631-SRU): Barbara J. Felt, Katherine T. Kelly, LEAD ATTORNEYS, Heins Mills & Olson, PLC-MN, Minneapolis, MN; Brian P. Daniels, David R. Schaefer, LEAD ATTORNEYS, Brenner, Saltzman & Wallman, New Haven, CT; George F. Farah, Kathleen Konopka, LEAD ATTORNEYS, Cohen Milstein Sellers & Toll-DC, Washington, DC; Henry A. Cirillo, LEAD ATTORNEY, The Furth Firm, San Francisco, CA; Steven J. Greenfogel, LEAD ATTORNEY, Meredith Cohen Greenfogel & Skirnick, P.C., Philadelphia, PA; Joseph Goldberg, Freedman Boyd Daniels Hollander & Goldberg, PA, Albuquerque, NM.

For Laurence J. Hyman, formerly doing business as Woodford Publishing, formerly doing business as Woodford Publishing Inc, formerly doing business as Woodford Press, formerly doing business as Laurence J Hyman Prod, Fremontia, o/b/o all others similarly situated, Plaintiff (3:04-md-01631-SRU): Bruce Wecker, George Frost, LEAD ATTORNEYS, Hosie Frost Large & McArthur, San Francisco, CA.

For Steven L. Reynolds, o/b/o himself & all others similarly situated, **[\*3]** doing business as North Star Printing Co, Plaintiff (3:04-md-01631-SRU): Alex C. Turan, Thomas P. Dove, LEAD ATTORNEYS, The Furth Firm, San Francisco, CA; Christopher L. Lebsock, Jon T. King, Michael P. Lehmann, LEAD ATTORNEYS, Hausfeld LLP, Washington, DC; Craig C. Corbitt, LEAD ATTORNEY, Zelle, Hofmann, Voelbel, Mason & Gette LLP, San Francisco, CA; Eric L. Palmquist, Izard Nobel PC-Htfd, Hartford, CT.

For ICS Corp, o/b/o itself & all others similarly situated, Plaintiff (3:04-md-01631-SRU): Ethan A. Levin-Epstein, Joseph D. Garrison, LEAD ATTORNEYS, Garrison Levin-Epstein Chimes & Richardson, New Haven, CT; Jennifer Gross, LEAD ATTORNEY, Lieff, Cabraser, Heimann & Bernstein, LLP-NY, New York, NY.

For Copyrite Inc, o/b/o themselves and all others similarly situated, Richard Bentley, o/b/o himself & all others similarly

situated, Plaintiffs (3:04-md-01631-SRU): Bernard Persky, Hollis L. Salzman, LEAD ATTORNEYS, PRO HAC VICE, Labaton Sucharow LLP-NY, New York, NY; Brian P. Daniels, LEAD ATTORNEY, Brenner, Saltzman & Wallman, New Haven, CT; Henry A. Cirillo, LEAD ATTORNEY, The Furth Firm, San Francisco, CA.

For Twin Palms Inc, o/b/o itself & all others similarly situated, doing business  [*4] as Access Direct Group, Plaintiff (3:04-md-01631-SRU): David A. Slossberg, J. Daniel Sagarin, LEAD ATTORNEYS, Hurwitz Sagarin Slossberg & Knuff LLC, Milford, CT; Jason S. Hartley, LEAD ATTORNEY, Ross Dixon & Bell, San Diego, CA.

For Digital Color Imaging, Inc, o/b/o itself & all others similarly situated, Plaintiff (3:04-md-01631-SRU): Brian P. Daniels, David R. Schaefer, LEAD ATTORNEYS, Brenner, Saltzman & Wallman, New Haven, CT; Brian Ratner, LEAD ATTORNEY, Cohen Milstein Sellers & Toll-DC, Washington, DC; Henry A. Cirillo, LEAD ATTORNEY, The Furth Firm, San Francisco, CA; Michael D. Hausfeld, Hilary K. Ratway, Andrea Lynn Hertzfeld, LEAD ATTORNEYS, Hausfeld LLP, Washington, DC.

For Presswrite Printing Inc, o/b/o itself and all others similarly situated, Plaintiff (3:04-md-01631-SRU): Eric L. Palmquist, Jeffrey S. Nobel, LEAD ATTORNEYS, Izard Nobel PC-Htfd, Hartford, CT; Henry A. Cirillo, LEAD ATTORNEY, The Furth Firm, San Francisco, CA; Brian P. Daniels, Brenner, Saltzman & Wallman, New Haven, CT.

For Lane Press Inc, o/b/o itself and all others similarly situated, Plaintiff (3:04-md-01631-SRU): Brian P. Daniels, LEAD ATTORNEY, Brenner, Saltzman & Wallman, New Haven, CT.

For Austin Printing  [*5] Co. Inc, individually and o/b/o all others similarly situated, Plaintiff (3:04-md-01631-SRU): Barbara J. Felt, Katherine T. Kelly, LEAD ATTORNEYS, Heins Mills & Olson, PLC-MN, Minneapolis, MN; Beth J. Kushner, LEAD ATTORNEY, Von Briesen & Roper SC, Milwaukee, WI; Charles N. Nauen, W. Joseph Bruckner, LEAD ATTORNEYS, Lockridge Grindall Nauen PLLP, Minneapolis, MN; Daniel Gustafson, LEAD ATTORNEY, PRO HAC VICE, Gustafson Gluek PLLC-MN, Minneapolis, MN; Dianne M. Nast, LEAD ATTORNEY, Erin C. Burns, Roda Nast PC, Lancaster, PA; George F. Farah, Kathleen Konopka, LEAD ATTORNEYS, Cohen Milstein Sellers & Toll-DC, Washington, DC; Gerald J. Rodos, Jeffrey B. Gittleman, Mark R. Rosen, LEAD ATTORNEYS, Barrack, Rodos & Bacine, Philadelphia, PA; Henry A. Cirillo, LEAD ATTORNEY, The Furth Firm, San Francisco, CA; Renae D.

Steiner, LEAD ATTORNEY, Gustafson Gluek PLLC-MN, Minneapolis, MN; Seymour J. Mansfield, LEAD ATTORNEY, Mansfield Tanick & Cohen, P.A, Minneapolis, MN; Brian P. Daniels, Brenner, Saltzman & Wallman, New Haven, CT.

For Three Z Printing Co on behalf of itself and all others similarly situated, Plaintiff (3:04-md-01631-SRU): James W. Bergenn, Ross H. Garber, LEAD ATTORNEYS, Shipman  [*6] & Goodwin -ConstPlza-Htfd, Hartford, CT; Mary Jane Fait, LEAD ATTORNEY, Wolf Haldenstein Adler Freeman Herz-IL, Chicago, IL; Shana-Tara Regon, LEAD ATTORNEY, National Association of Criminal Defense Lawyers, Washington, DC.

For Nies Artcraft Companies, Inc, o/b/o itself and all others similarly situated, Plaintiff (3:04-md-01631-SRU): James W. Bergenn, Ross H. Garber, LEAD ATTORNEY, Shipman & Goodwin -ConstPlza-Htfd, Hartford, CT; John A. Kilo, LEAD ATTORNEY, Kilo, Flynn, Billingsley, Trame & Brown, P.C, St. Louis, MO; Mary Jane Fait, LEAD ATTORNEY, Wolf Haldenstein Adler Freeman Herz-IL, Chicago, IL; Shana-Tara Regon, LEAD ATTORNEY, National Association of Criminal Defense Lawyers, Washington, DC.

For MMP BALA Inc, o/b/o itself and all others similarly situated, Plaintiff (3:04-md-01631-SRU): Anthony D. Shapiro, Steven W. Berman, LEAD ATTORNEYS, Hagens Berman, LLP, Seattle, WA; Evan J. Smith, LEAD ATTORNEY, Brodsky & Smith, LLC-PA, Bala Cynwyd, PA; Henry A. Cirillo, LEAD ATTORNEY, The Furth Firm, San Francisco, CA; Brian P. Daniels, Brenner, Saltzman & Wallman, New Haven, CT.

For Newtown Business Forms Corp, o/b/o itself and all others similarly situated, Plaintiff (3:04-md-01631-SRU):  [*7] Anthony D. Shapiro, Steven W. Berman, LEAD ATTORNEY, Seattle, WA; Daniel Richard Karon, LEAD ATTORNEY, Goldman Scarlato & Karon PC, Cleveland, OH; Douglas A. Abrahams, LEAD ATTORNEY, Kohn, Swift & Graf, Philadelphia, PA; Isaac Diel, LEAD ATTORNEY, Diel & Seelman, Prairie Village, KS; Joseph C. Kohn, William E. Hoese, LEAD ATTORNEY, PRO HAC VICE, Kohn, Swift & Graf, Philadelphia, PA; Krishna B. Narine, LEAD ATTORNEY, Law Office of Krishna B. Narine, Elkins Park, PA; Stephen E. Connolly, LEAD ATTORNEY, Barroway, Topaz, Kessler, Meltzer & Check LLP, Radnor, PA; W. Joseph Bruckner, LEAD ATTORNEY, Lockridge Grindal Nauen PLLP, Minneapolis, MN.

For T & W Printing Inc, o/b/o itself and all others similarly situated, Plaintiff (3:04-md-01631-SRU): Henry A. Cirillo,

LEAD ATTORNEY, The Furth Firm, San Francisco, CA; Joseph M. Patane, LEAD ATTORNEY, Law Office of Joseph M. Patane, San Francisco, CA; Mario N. Alioto, LEAD ATTORNEY, Trump Alioto Trump & Prescott LLP, San Francisco, CA; Brian P. Daniels, Brenner, Saltzman & Wallman, New Haven, CT.

For Custom Printing of Willmar, Inc, o/b/o itself and all others similarly situated, Plaintiff (3:04-md-01631-SRU): Peter A. Pease, LEAD ATTORNEY, Berman [*8] DeValerio -MA, Boston, MA; Samuel D. Heins, Vincent J. Esades, LEAD ATTORNEYS, Heins Mills & Olson, PLC-MN, Minneapolis, MN.

For Service Web Offset Corp, o/b/o itself and all others similarly situated, Plaintiff (3:04-md-01631-SRU): Gary L. Specks, LEAD ATTORNEY, Kaplan Fox & Kilsheimer LLP-HgldPk IL, Highland Park, IL; Gregory A. Arenson, Robert N. Kaplan, LEAD ATTORNEYS, Kaplan Fox & Kilsheimer, LLP- NY, New York, NY; Henry A. Cirillo, LEAD ATTORNEY, The Furth Firm, San Francisco, CA; James B. Sloan, LEAD ATTORNEY, Pedersen & Houpt, P.C.-IL, Chicago, IL; Brian P. Daniels, Brenner, Saltzman & Wallman, New Haven, CT.

For DCI, Inc, o/b/o itself and all others similary situated, Plaintiff (3:04-md-01631-SRU): Joseph J. DePalma, LEAD ATTORNEY, Lite, DePalma, Greenberg and Rivas, LCC, Newark, NJ.

For Star Printing Co, Inc, o/b/o itself and all others similarly situated, Plaintiff (3:04-md-01631-SRU): Howard J. Sedran, LEAD ATTORNEY, Levin, Fishbein, Sedran & Berman, Philadelphia, PA; Steven A. Asher, LEAD ATTORNEY, Weinstein Kitchenoff LLC-PA, Philadelphia, PA.

For Champion Printing Corp, Plaintiff (3:04-md-01631-SRU): Ann D. White, LEAD ATTORNEY, Ann D. White Law Offices, PC, Jenkintown, [*9] PA; Daniel Richard Karon, LEAD ATTORNEY, Goldman Scarlato & Karon PC, Cleveland, OH; Eugene A. Spector, William G. Caldes, LEAD ATTORNEYS, Spector, Roseman & Kodroff, Philadelphia, PA; Garrett D. Blanchfield, LEAD ATTORNEY, Reinhardt, Wendorf & Blanchfield, St. Paul, MN; Jeffrey J. Corrigan, LEAD ATTORNEY, Spector, Roseman & Kodroff, PC, Mark Reinhardt, LEAD ATTORNEY, Reinhardt & Anderson, St. Paul, MN; Susan G. Kupfer, LEAD ATTORNEY, Glancy & Binkow, San Francisco, CA.

For Kukla Press Inc, o/b/o itself and all others similarly situated, Plaintiff (3:04-md-01631-SRU): Arthur T. Susman,

LEAD ATTORNEY, Susman & Watkins, Chicago, IL; James B. Sloan, LEAD ATTORNEY, Pedersen & Houpt, P.C.-IL, Chicago, IL; John A. Cochrane, LEAD ATTORNEY, Cochrane & Bresnahan, St. Paul, MN; Robert E. Davy, LEAD ATTORNEY, Robert E. Davy, Jr. & Associates, Chicago, IL; William T. Gotfryd, LEAD ATTORNEY, Susman & Watkins-IL, Chicago, IL.

For Conley Printing LLC, Garvey Group LLC, Tru-Line Lithographics, Inc, Johnson Litho Graphics of Eau Claire, Ltd, Plaintiffs (3:04-md-01631-SRU): David R. Schaefer, LEAD ATTORNEY, Brenner, Saltzman & Wallman, New Haven, CT; John T. Cusack, Steven S. Shonder, LEAD ATTORNEYS, [*10] Gardner, Carton & Douglas LLP - IL, Chicago, IL.

For Three Z Printing Co, Nies Artcraft Companies, Inc, Plaintiffs (3:04-md-01631-SRU): David A. Slossberg, J. Daniel Sagarin, LEAD ATTORNEYS, Hurwitz Sagarin Slossberg & Knuff LLC, Milford, CT; Mary Jane Fait, LEAD ATTORNEY, Wolf Haldenstein Adler Freeman Herz-IL, Chicago, IL.

For Barbara Aceto, o/b/o herself and all others similarly situated, Joan Guarino, o/b/o herself and all others similarly situated, Chris Young, Adrienne Nicole-Sffridge, Indirect Purchaser Plaintiff, Marc Beitia, Indirect Purchaser Plaintiff, Chris Young, Indirect Purchaser Plaintiff, Heather Brittain, Indirect Purchaser Plaintiff, Ann Weathersbee, Indirect Purchaser Plaintiff, Jonathan M Benfield, Indirect Purchaser Plaintiff, Bridget Roberts, Indirect Purchaser Plaintiff, Luke Capazzolli, Indirect Purchaser Plaintiff, Stacey Hayashi, Indirect Puchaser Plaintiff, Laura Sakalauskas, Indirect Purchaser Plaintiff, Arlene Andrews, Indirect Purchaser Plaintiff, Richard Pratt, Indirect Purchaser Plaintiff, Lucile DiPietro, Indirect Purchaser Plaintiff, Alice Campos, Indirect Purchaser Plaitiff, Amy Manning, Indirect Purchaser Plaintiff, Sandra Farmer-Jova, Indirect Purchaser [*11] Plaintiff, Thomas Muldoon, Indirect Puchaser Plaintiff, Timothy Spears, Indirect Purchaser Plaintiff, William Harold Lee, Indirect Purchaser Plaintiff, William Friedlander, Indirect Purchaser Plaintiff, Heather Jens, Indirect Purchaser Plaintiff, Susan Morris, Indirect Purchaser Plaintiff, Therese Armbruster, Indirect Purchaser Plaintiff, Brighid Flaherty, Angela Votta, Ryan Allder, Plaintiffs (3:04-md-01631-SRU): Robert J. Bonsignore, LEAD ATTORNEY, Bonsignore & Brewer, Medford, MA.

For Jorine Lowry, o/b/o herself and all others similarly situated, Plaintiff (3:04-md-01631-SRU): D. Michael Noonan, LEAD ATTORNEY, Shaheen & Gordon, P.A., Dover, NH.

2009 U.S. Dist. LEXIS 66654, *11

For Shelly Smith, o/b/o herself and all others similarly situated, Donna McCann, o/b/o herself and all others similarly situated, Plaintiffs (3:04-md-01631-SRU): Arend R. Tensen, LEAD ATTORNEY, Cullenberg & Tensen, PLLC, Lebanon, NH; D. Michael Noonan, LEAD ATTORNEY, Shaheen & Gordon, P.A, Dover, NH.

For Beth Mahoney, Plaintiff (3:04-md-01631-SRU): D. Michael Noonan, LEAD ATTORNEY, Shaheen & Gordon, P.A, Dover, NH; Robert J. Bonsignore, LEAD ATTORNEY, Bonsignore & Brewer, Medford, MA.

For International Paper Co., Defendant (3:04-md-01631-SRU): **[*12]** Daniel W. Nelson, James R. Loftis, III, LEAD ATTORNEYS, Gibson, Dunn & Crutcher - DC, Washington, DC; John T. Sartore, LEAD ATTORNEY, PRO HAC VICE, Paul Frank & Collins PC, Burlington, VT; Joshua Lipton, LEAD ATTORNEY, PRO HAC VICE, Gibson, Dunn & Crutcher - DC, Washington, DC; Michael J. Connolly, LEAD ATTORNEY, PRO HAC VICE, Hinkley Allen & Snyder - NH, Concord, NH; Robert M. Langer, LEAD ATTORNEY, Wiggin & Dana, Hartford, CT.

For Meadwestvaco Corp, Defendant (3:04-md-01631-SRU): Alan M. Wiseman, Joseph A. Ostoyich, LEAD ATTORNEYS, Howrey, Simon, Arnold & White - DC, Washington, DC; Andrew Benjamin Nevas, Frank J. Silvestri, Jr., LEAD ATTORNEYS, Levett Rockwood, Westport, CT; Eric S. Berman, Vanessa H. Forsythe, LEAD ATTORNEYS, Howrey, LLP - DC, Washington, DC; Lisa C. Sullivan, LEAD ATTORNEY, Howrey, Simon, Arnold & White LLP-IL, Chicago, IL; Madeleine F. Grossman, LEAD ATTORNEY, Levett Rockwood, PC, Westport, CT.

For Norske Skogindustrier ASA, Defendant (3:04-md-01631-SRU): Dan E. LaBelle, LEAD ATTORNEY, Halloran & Sage, Westport, CT; Marc D. Ashley, LEAD ATTORNEY, Shearman & Sterling - NYC, New York, NY; James T. Shearin, Pullman & Comley, Bridgeport, CT.

For Norske Skog NA LLC, **[*13]** Defendant (3:04-md-01631-SRU): Dan E. LaBelle, LEAD ATTORNEY, Halloran & Sage, Westport, CT; Hugh F. Bangasser, LEAD ATTORNEY, Preston Gates & Ellis-WA, Seattle, WA; Martha Van Oot, LEAD ATTORNEY, Orr & Reno, Concord, NH; Theresa L. Keyes, LEAD ATTORNEY, Preston, Gates & Ellis-Spokane-WA, Spokane, WA.

For Norske Skog (USA) Inc, Defendant (3:04-md-01631-SRU): Dan E. LaBelle, LEAD ATTORNEY, Halloran & Sage, Westport, CT; Jerome S. Fortinsky, Marc D. Ashley, LEAD ATTORNEYS, Shearman & Sterling - NYC, New York, NY; Kenneth M. Kramer, LEAD ATTORNEY, Shearman & Sterling, New York, NY; James T. Shearin, Pullman & Comley, Bridgeport, CT.

For Norske Skog Canada Ltd, Defendant (3:04-md-01631-SRU): Karen McAndrew, LEAD ATTORNEY, PRO HAC VICE, Dinse, Knapp & McAndrew, P.C.-VT, Burlington, VT; Steven David Ecker, LEAD ATTORNEY, Cowdery, Ecker & Murphy, L.L.C., Hartford, CT.

For Norske Skog Canada (USA) Inc, Defendant (3:04-md-01631-SRU): Diane E. Pritchard, Jesse W. Markham, Stuart C. Plunkett, LEAD ATTORNEYS, Morrison & Foerster, LLP-San, CA, San Francisco, CA; Jennifer L. Parent, LEAD ATTORNEY, McLane, Graf, Raulerson & Middleton, Manchester, NH; Kenneth M. Kramer, LEAD ATTORNEY, Shearman & Sterling, **[*14]** New York, NY; Steven David Ecker, LEAD ATTORNEY, Cowdery, Ecker & Murphy, L.L.C., Hartford, CT.

For Stora Enso Oyj, Defendant (3:04-md-01631-SRU): Alex V. Hernandez, LEAD ATTORNEY, Pullman & Comley - Bpt, Bridgeport, CT; Amy J. Carletti, LEAD ATTORNEY, McDermott Will & Emery - IL, Chicago, IL; David Marx, Jr., LEAD ATTORNEY, McDermott Will & Emery, Chicago, IL; Diane Woodfield Whitney, Lee D. Hoffman, LEAD ATTORNEYS, Pullman & Comley - Htfd, Hartford, CT; Nicole Lauren Castle, LEAD ATTORNEY, McDermott, Will & Emery-DC, Washington, DC; Adam J. Cohen, James T. Shearin, Pullman & Comley, Bridgeport, CT.

For Stora Enso NA Corp, Defendant (3:04-md-01631-SRU): Adam J. Cohen, LEAD ATTORNEY, James T. Shearin, Pullman & Comley, Bridgeport, CT; Alex V. Hernandez, LEAD ATTORNEY, Pullman & Comley - Bpt, Bridgeport, CT; Amy J. Carletti, LEAD ATTORNEY, McDermott Will & Emery - IL, Chicago, IL; David Marx, Jr., LEAD ATTORNEY, McDermott Will & Emery, Chicago, IL; Diane Woodfield Whitney, Lee D. Hoffman, LEAD ATTORNEYS, Pullman & Comley - Htfd, Hartford, CT; Nicole Lauren Castle, LEAD ATTORNEY, McDermott, Will & Emery-DC, Washington, DC; Shelley R. Sadin, LEAD ATTORNEY, Zeldes, Needle & Cooper, Bridgeport, **[*15]** CT.

For Sappi Ltd, Defendant (3:04-md-01631-SRU): Jonathan S. Katz, Jacobs, Grudberg, Belt, Dow & Katz, P.C., New Haven, CT.

2009 U.S. Dist. LEXIS 66654, *15

For SD Warren Co, Defendant (3:04-md-01631-SRU): David L. Belt, LEAD ATTORNEY, Jacobs, Grudberg, Belt, Dow & Katz, P.C., New Haven, CT; Julie B. Rottenberg, Mark R. Merley, LEAD ATTORNEYS, Arnold & Porter - DC, Washington, DC; Thomas Laprade, LEAD ATTORNEY, Lambert Coffin, Portland, ME; Jonathan S. Katz, Jacobs, Grudberg, Belt, Dow & Katz, P.C., New Haven, CT.

For M-Real Corp, Defendant (3:04-md-01631-SRU): Edward D. Hassi, LEAD ATTORNEY, PRO HAC VICE, O'Melveny & Myers LLP - NYC, New York, NY; Helena Almeida, Olivier N. Antoine, LEAD ATTORNEYS, Simpson Thacher & Bartlett LLP-NY, New York, NY; Mark G. Cunha, LEAD ATTORNEY, Simpson, Thacher & Bartlett, New York, NY; James R. Fogarty, Fogarty, Cohen, Selby & Nemiroff, Greenwich, CT.

For M-Real USA Corp, Defendant (3:04-md-01631-SRU): Edward D. Hassi, LEAD ATTORNEY, PRO HAC VICE, O'Melveny & Myers LLP - NYC, New York, NY; Helena Almeida, Olivier N. Antoine, LEAD ATTORNEYS, Simpson Thacher & Bartlett LLP-NY, New York, NY; James R. Fogarty, LEAD ATTORNEY, Fogarty, Cohen, Selby & Nemiroff, Greenwich, CT; Mark G. Cunha, [*16] LEAD ATTORNEY, Simpson, Thacher & Bartlett, New York, NY.

For UPM-Kymmene Corp, Defendant (3:04-md-01631-SRU): Carrie L. Kiedrowski, L. Trammell Newton, Jr., LEAD ATTORNEYS, Jones Day-GA, Atlanta, GA; Edwin L. Fountain, LEAD ATTORNEY, Jones Day, Washington, DC; John M. Majoras, Michael J. Will, LEAD ATTORNEYS, Jones Day-DC, Washington, DC; Melissa J. Nandi, LEAD ATTORNEY, Jones Day-OH, Cleveland, OH; Timothy P. Jensen, LEAD ATTORNEY, Hinckley, Allen & Snyder, LLP, Hartford, CT; Michael G. Caldwell, LeClairRyan, A Professional Corporation, New Haven, CT.

For Myllykoski Corp, Madison Intl Sales Co, Defendants (3:04-md-01631-SRU): Clifford E. Nichols, III, Jonathan B. Tropp, Kenneth W. Ritt, LEAD ATTORNEYS, Day Pitney LLP-Stmfd-CT, Stamford, CT.

For Bowater, Inc, Defendant (3:04-md-01631-SRU): Shelley R. Sadin, LEAD ATTORNEY, Zeldes, Needle & Cooper, Bridgeport, CT.

For UPM-Kymmene, Inc, Defendant (3:04-md-01631-SRU): Brian J. Murray, LEAD ATTORNEY, Jones Day-Wacker Dr.-IL, Chicago, IL; Carrie L. Kiedrowski, L. Trammell Newton, Jr., LEAD ATTORNEYS, Jones Day-GA, Atlanta, GA; Edwin L. Fountain, LEAD ATTORNEY, Jones Day, Washington, DC; John M. Majoras, Michael J. Will, LEAD

ATTORNEYS, Jones [*17] Day-DC, Washington, DC; Melissa J. Nandi, LEAD ATTORNEY, Jones Day-OH, Cleveland, OH; Michael G. Caldwell, LeClairRyan, A Professional Corporation, New Haven, CT; Timothy P. Jensen, Hinckley, Allen & Snyder, LLP, Hartford, CT.

For NewPage Corporation, Defendant (3:04-md-01631-SRU): Alex V. Hernandez, LEAD ATTORNEY, Pullman & Comley - Bpt, Bridgeport, CT; Amy J. Carletti, Holland M. Tahvonen, LEAD ATTORNEYS, McDermott Will & Emery - IL, Chicago, IL; David Marx, Jr., LEAD ATTORNEY, McDermott Will & Emery, Chicago, IL; Nicole Lauren Castle, LEAD ATTORNEY, McDermott, Will & Emery-DC, Washington, DC.

For MDL Panel, Defendant (3:04-md-01631-SRU): MDL Panel, LEAD ATTORNEY, Washington, DC.

For Barbara Aceto, o/b/o themselves and all others similarly situated, Joan Guarino, o/b/o themselves and all others similarly situated, Plaintiffs (3:05-cv-01267): Robert J. Bonsignore, LEAD ATTORNEY, Bonsignore & Brewer, Medford, MA.

For MDL Panel, Notice (3:05-cv-01267): MDL Panel, LEAD ATTORNEY, Judicial Panel on MDL Office of the Clerk, Washington, DC.

For Jorine Lowry, o/b/o herself and all others similarly situated, Plaintiff (3:05-cv-01339-SRU): D. Michael Noonan, LEAD ATTORNEY, Shaheen & Gordon, P.A., [*18] Dover, NH.

For Stora Enso North America Corp., Defendant (3:05-cv-01339-SRU):David Marx, Jr., LEAD ATTORNEY, McDermott Will & Emery, Chicago, IL; Margaret M. O'Keefe, LEAD ATTORNEY, Pierce, Atwood LLP, Portland, ME.

For SD Warren Co, Defendant (3:05-cv-01339-SRU): Julie B. Rottenberg, Mark R. Merley, LEAD ATTORNEYS, Arnold & Porter - DC, Washington, DC; Thomas Laprade, LEAD ATTORNEY, Lambert Coffin, Portland, ME.

For MDL Panel, Notice (3:05-cv-01339-SRU): MDL Panel, LEAD ATTORNEY, Judicial Panel on MDL Office of the Clerk, Washington, DC.

For Shelly Smith, o/b/o herself and all others similarly situated, Donna McCann, o/b/o of herself and all others similarly situated, PlaintiffS (3:05-cv-01358-SRU): Arend

R. Tensen, LEAD ATTORNEY, Cullenberg & Tensen, PLLC, Lebanon, NH; D. Michael Noonan, LEAD ATTORNEYS, Shaheen & Gordon, P.A., Dover, NH.

For International Paper Co., Defendant (3:05-cv-01358-SRU): John T. Sartore, LEAD ATTORNEY, PRO HAC VICE, Paul Frank & Collins PC, Burlington, VT.

For Norske Skog Canada (USA) Inc, Defendant (3:05-cv-01358-SRU): Diane E. Pritchard, Jesse W. Markham, LEAD ATTORNEYS, Morrison & Foerster, LLP-San, CA, San Francisco, CA.

For Norske Skog Canada Ltd, Defendant [*19] (3:05-cv-01358-SRU): Karen McAndrew, LEAD ATTORNEY, PRO HAC VICE, Dinse, Knapp & McAndrew, P.C.-VT, Burlington, VT.

For MDL Panel, Notice (3:05-cv-01358-SRU): MDL Panel, LEAD ATTORNEY, Judicial Panel on MDL Office of the Clerk, Washington, DC.

For Beth Mahoney, Plaintiff (3:05-cv-01381-SRU): D. Michael Noonan, LEAD ATTORNEY, Shaheen & Gordon, P.A., Dover, NH.

For International Paper Co., Defendant (3:05-cv-01381-SRU): Daniel W. Nelson, LEAD ATTORNEY, Gibson, Dunn & Crutcher - DC, Washington, DC; Michael J. Connolly, LEAD ATTORNEY, PRO HAC VICE, Hinkley Allen & Snyder-NH, Concord, NH.

For Norske Skog North America LLC, Defendant (3:05-cv-01381-SRU): Hugh F. Bangasser, LEAD ATTORNEY, Preston Gates & Ellis-WA, Seattle, WA; Martha Van Oot, LEAD ATTORNEY, Orr & Reno, Concord, NH.

For Norske Skog (USA) Inc, Defendant (3:05-cv-01381-SRU): Kenneth M. Kramer, LEAD ATTORNEY, Shearman & Sterling, New York, NY.

For Norske Skog Canada (USA) Inc, Defendant (3:05-cv-01381-SRU): Diane E. Pritchard, Jesse W. Markham, LEAD ATTORNEYS, Morrison & Foerster, LLP-San, CA, San Francisco, CA; Jennifer L. Parent, LEAD ATTORNEY, McLane, Graf, Raulerson & Middleton, Manchester, NH.

For Stora Enso NA Corp, Defendant [*20] (3:05-cv-01381-SRU): David Marx, Jr., LEAD ATTORNEY, McDermott Will & Emery, Chicago, IL.

For MDL Panel, Notice (3:05-cv-01381-SRU): MDL Panel, LEAD ATTORNEY, Judicial Panel on MDL Office of the Clerk, Washington, DC.

**Judges:** Stefan R. Underhill, United States District Judge.

**Opinion by:** Stefan R. Underhill

# Opinion

## ORDER REGARDING DISBURSEMENT OF SETTLEMENT FUNDS

Plaintiffs Brighid Flaherty, Stacey Hayashi, Chris Young, Heather Brittain, Barbara Aceto, Laura Sakalauskas, Arlene Andrews, Richard Pratt, Angela Votta, Ryan Allder, Beth Mahoney, Amy Manning, Sandra Farmer-Jova, Heather Jens, Jonathan M. Benfield, Timothy Spears, and Therese Armbruster (collectively "Plaintiffs"), on behalf of themselves and a conditionally certified Class of indirect end users of certain grades of Publication Paper, entered into a Settlement Agreement with defendants UPM--Kymmene Corporation and UPM-Kymmene, Inc. (collectively "UPM") to fully and finally resolve the plaintiffs' claims against UPM. On May 26, 2009, I granted the plaintiffs' motion for final approval of that settlement.

When I approved that settlement, I approved the escrow account established by the parties, and into which UPM deposited the $ 700,000.00 settlement proceeds, [*21] as a qualified settlement fund pursuant to *Internal Revenue Code Section 468B* and the Treasury regulations promulgated thereunder. I also retained jurisdiction over, inter alia, the distribution of the settlement proceeds and any awards of attorneys' fees and expense reimbursements.

I now order that the settlement money currently held in escrow be distributed in the following manner:

A. Attorneys' Fees

An attorney whose work creates a common fund is "entitled to a reasonable fee ... taken from the fund." *Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000).* A district court may use its discretionary powers to determine what is a reasonable and fair award from a common fund. *See, e.g., In re Combustion, Inc.,* 968 F. Supp. 1116 (W.D. La. 1997) (citing Newberg on Class Actions (3d ed.)). Plaintiffs' counsel has submitted a request for an award of attorneys' fees of $ 233,100, which constitutes approximately one-third of the total settlement fund amount. That request is approved.

2009 U.S. Dist. LEXIS 66654, *21

B. Incentive Award to Class Representatives

Plaintiffs' counsel has requested that an incentive award of $ 20,000 be distributed to the class representatives. Such an award is within my discretion, [*22] and the proper amount for an incentive award is related to the "personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001); *see Sheppard v. Consolid. Edison Co. of N.Y., Inc., 2002 U.S. Dist. LEXIS 16314, 2002 WL 2003206, at *6 (E.D.N.Y. Aug. 1, 2002)* (citing cases approving incentive awards). An incentive award of $ 20,000 is appropriate in this case.

C. Payment to Class Members

Plaintiffs' counsel has indicated that the aggregate amount of $ 76,422 should be paid to the plaintiff class members. That request is approved.

D. Treble Damages

Plaintiffs' counsel suggests that the remainder of the settlement funds be distributed among various charitable organizations under the cy pres doctrine. Where, as here, settlement funds remain after distribution to the plaintiffs, cy pres distribution is warranted in order to

"put[] the unclaimed fund to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class." 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 10:17 (4th ed.2002) (emphasis supplied). Cy Pres means "as near as possible," [*23] and "[c]ourts have utilized Cy Pres distributions where class members are difficult to identify, or where they change constantly, or where there are unclaimed funds." *Id.* at § 10:16 n. 1. In this connection, we take note of the recent Draft of the Principles of the Law of Aggregate Litigation by the American Law Institute. With respect to the approval of settlements providing for a Cy Pres remedy, the Draft proposes a rule limiting Cy Pres "to circumstances in which direct distribution to individual class members is not economically feasible, or where funds remain after class members are given a full opportunity to make a claim." Draft § 3.08, entitled "Cy Pres Settlements."

*Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 436 (2d Cir. 2007)*. In assessing the proper disbursement of excess settlement funds, along with any cy pres award, I am to consider other options, including where applicable the disbursement of excess funds directly to plaintiffs. For instance, in actions such as this one brought under the Clayton Act, I am to consider whether an award of treble damages is warranted. *Id. at 435-36. See also In re Folding Carton Antitrust Litig., 557 F. Supp. 1091, 1104-07 (N.D. Ill. 1983)* [*24] (recognizing the district court's discretion to consider whether excess funds in antitrust class action settlement could be awarded equitably as treble damages after claimants were paid in full).

*Section 4* of the Clayton Act provides in relevant part that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." Because treble damages are available under the Clayton Act, and because I am only to authorize a cy pres award where direct distribution to individual class members is not economically feasible, I award treble damages to the class members. Accordingly, the total amount of recovery to the class members from the settlement funds is three times $ 76,422, or $ 229,266.

E. Cy Pres Award

As discussed above, where settlement funds remain, an award under the Cy Pres doctrine is appropriate to put the remainder to its next best compensation [*25] use. Because the plaintiffs' claims here are based on antitrust injury, the next best use for the settlement funds is to disburse those funds to charitable institutions designed to guard against antitrust injury and protect consumers.

Accordingly, the remaining $ 217,634 should be disbursed as follows: (1) the American Antitrust Institute is awarded $ 175,000; (2) Public Justice is awarded $ 28,000 to support its Class Action Preservation Project; and (3) Consumer Watchdog is awarded $ 14,634. In addition, any accrued interest or refunded funds shall be awarded to Consumer Watchdog until no settlement funds remain.

It is so ordered.

Dated at Bridgeport, Connecticut, this 30th day of July 2009.

/s/

Stefan R. Underhill

2009 U.S. Dist. LEXIS 66654, *25

United States District Judge