# EXHIBIT C

*Trump Alioto Trump & Prescott*

ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

January 13, 2016

**VIA JAMS E-FILING**

Martin Quinn, Special Master
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

**Re:**    *In Re: Cathode Ray Tubes (CRT) Antitrust Litigation,* **07-cv-5944 JST**

Dear Special Master Quinn:

        As you requested at the January 5, 2016 hearing, I write regarding the claimed "inconsistencies" between the proposed Plan of Distribution and the Court-approved plan of distribution for the Chunghwa Net Settlement Fund.[1]  As I stated at the hearing, there are no such inconsistencies.

**I.    Resellers**

        Messrs. Cooper and Scarpulla contend that the proposed Plan of Distribution is inconsistent with the Chunghwa plan of distribution because the Chunghwa plan provided for payment to resellers and the current plan does not.  They further contend that "the Chunghwa notice told resellers they would be paid at a later date" (January 5, 2016 Hearing Tr., 89:14-15), and that "there was a final judgment approving the settlement with Chunghwa which provided for a payment to resellers." *Id.*, 92:15-18.  They are wrong.

        First, Objectors are wrong that the notice of the Chunghwa settlement (ECF No. 1063-1) "told resellers they will be paid at a later date."  To the contrary, the notice clearly informed resellers that there may *not* be a distribution in the future, and that the question would be determined later in light of any additional settlements.  *See* Chunghwa Notice at p.4, Q.10:

----

[1] The Net Settlement Fund is defined as "the $10,000,000 settlement amount, plus interest, minus 25% for attorneys' fees, reimbursement of expenses, $2.5 million for a costs set-aside, including the costs of giving notice to class members and administration of the settlement fund, all of which shall be subject to court approval.  The Net Settlement Fund shall be no less than $5 million."  Order Granting Preliminary Approval of Class Action Settlement with Defendant Chunghwa Picture Tubes, Ltd. (ECF No. 993) ("Preliminary Approval Order"), ¶10. The Court granted IPPs' request to use $2.5 million of the Chunghwa settlement to fund the litigation.  *See* ECF No. 1334.

Special Master Quinn
January 13, 2016
Page 2 of 5

No money will be distributed to Settlors yet. The lawyers will pursue the lawsuit against the Non-Settling Defendants to see if any future settlements or judgments can be obtained in the case and then be distributed together to reduce expenses. It is possible that money will be distributed to organizations who are, as nearly as practicable, representative of the interests of indirect purchasers of CRT Products instead of Settlors themselves if the cost to process claims would result in small payments to Settlors.[2]

In other words, the Chunghwa notice clearly informed resellers that (1) they might not get any money; (2) they would not know until after final approval of the Chunghwa settlement whether they were getting any money; and (3) if they didn't like that plan, they should opt out or object.  A number of resellers opted out of the Chunghwa settlement, but none objected.[3]

Second, neither the Chunghwa Settlement Agreement (ECF No. 884-1), nor the plan of distribution, nor any Chunghwa-related settlement approval order requires payment to resellers.  The Settlement Agreement itself says nothing about the plan of distribution, let alone whether resellers are to receive any of the settlement funds.  The Chunghwa plan of distribution is set forth in Paragraph 10 of the Chunghwa Preliminary Approval Order (ECF No. 993), and it too makes no mention of payment to resellers. Instead, the Order stated explicitly that the details of any future distribution of Chunghwa funds would be "deferred until a later date when there might be additional settlement funds."  *Id.* at ¶ 11.[4]

Third, and contrary to Mr. Scarpulla's claims at the hearing, neither the Final Approval Order (ECF No. 1105) nor the Final Judgment (ECF No. 1106) says anything about distributing the settlement funds to resellers.  The Final Judgment merely reserves "continuing jurisdiction over . . . any distribution to Class Members pursuant to further

---

[2] *See also id.* at p.3, Q.4 ("Additional money *may* become available in the future as a result of a trial or future settlements, *but there is no guarantee that this will happen*.") (emphasis added); p. 4, Q.6 ("*If* the Plaintiffs obtain additional money or benefits as a result of a trial or future settlement(s), you will be notified about how to ask for a share or what your other options are at that time. *These things are not known right now*.") (emphasis added).

[3] *See* Order Granting Final Approval of Settlement with Chunghwa Picture Tubes, Ltd., Exhibit 1 (ECF No. 1105) (listing reseller entities that excluded themselves from the Chunghwa settlement).

[4] Far from requiring payment to resellers, the focus of the Chunghwa plan of distribution was simply on the state-by-state allocation of funds—whether through *cy pres* distributions or a future class member claims process. *Id*. at ¶ 10.  This state-by-state allocation is not inconsistent with the proposed Plan of Distribution.  *See* Section II, *infra*.

Special Master Quinn
January 13, 2016
Page 3 of 5

orders of this Court" (*id.* ¶10(a)), explicitly reserving the issue for later consideration – which is precisely what we are doing now.

In sum, none of the Chunghwa settlement documents provides for payment to resellers. Thus, there is no inconsistency between the proposed Plan of Distribution and the Chunghwa plan of distribution.

Nor is it unfair or unreasonable to exclude resellers from the Plan of Distribution.[5] In proposing the Plan of Distribution, Lead Counsel considered the following factors and concluded, in the exercise of his judgment, that excluding resellers was consistent with the law and the facts:[6]

1. The Chunghwa settlement is the only settlement that includes resellers. As a result, only a very small amount of funds (the $5 million Net Settlement Fund minus amounts payable to consumers) would be potentially available for distribution to resellers. The cost involved to calculate the allocation to resellers vs. consumers and conduct a claims process far outweigh the small benefit (if any) that resellers would receive. This is particularly true given the evidence that resellers were not injured by the CRT conspiracy because they passed on the overcharges to consumers.[7]

2. Resellers received fair notice that they may not recover from the Chunghwa fund and that a specific plan of distribution would be proposed later in the case—a proposal to which no reseller objected at the time.

3. Resellers that were interested in this case opted out of the Chunghwa settlement and pursued their own actions, and most of them voluntarily dismissed their indirect purchaser claims due to the problem of proving pass-through. *See, e.g.,* ECF Nos. 3406, 3527.

4. Because resellers were not included in the settlements with the other Defendants, they were free to bring their own actions against those Defendants and hold them jointly and severally liable.

5. Resellers that remained part of the Chunghwa settlement class received the benefit of Chunghwa's proffer – a benefit which is commensurate with the value of their claims.

---

[5] The plan of distribution is "governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable, and adequate." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (Conti, J.).

[6] *See Rieckborn v. Velti PLC*, No. 13-cv-03889, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) ("Courts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.")

[7] *See In re Omnivision*, 559 F. Supp. 2d at 1045 ("it is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits.")

Finally, the Chunghwa notice also advised class members that "[i]mportant information about the case will be posted on the website. . . .  Please check the website to be kept informed about any future developments."  ECF No. 1063-1, at p. 4, Q.6.  Resellers were therefore on notice that they should check the website regarding any future allocation of the Chunghwa settlement proceeds.  Moreover, IPPs gave extensive notice of the proposed Plan of Distribution, including direct mail and/or email notice to millions of companies, some of which are sophisticated companies that likely resold CRT Products.[8]  The notice is clear that only consumers may make a claim under the proposed Plan of Distribution (*see id.*, Exhibit A (Detailed Notice)), yet no reseller has objected to it.

In light of the foregoing, no changes to the Plan of Distribution to compensate resellers are warranted.

## II.    <u>Allocation to States</u>

Messrs. Cooper and Scarpulla also contend that the proposed Plan of Distribution does not account for the Chunghwa state-by-state plan of distribution, which requires that the Chunghwa settlement funds be allocated pro rata amongst 24 states before any distribution to individual claimants.  *See* Preliminary Approval Order, ¶10. This too is incorrect.

The Chunghwa plan of distribution was the result of objections to the Chunghwa settlement filed by the Attorneys General of Illinois, Oregon and Washington.  *See* ECF Nos. 909-1, 922.  Under the direction of Special Master Legge, Lead Counsel negotiated a resolution of the State AG's objections, which involved allocating the Chunghwa settlement funds amongst the 22 states alleged in the operative complaint, Illinois and Oregon.[9]  The Chunghwa notice clearly described this plan of distribution to class members,[10] there were no objections to it, and the plan is now final.

Because class members had already been given notice of the Chunghwa plan of distribution and it had already been finally approved, it was not necessary to spell it out again in the current Detailed Notice.  The current Detailed Notice is not, however, inconsistent with the Chunghwa plan of distribution and does not ignore it.  The notice

---

[8] *See* Declaration of Joseph M. Fisher Reporting on Class Notice (referred to in the settlement approval papers as "Fisher Decl. II"), ¶¶ 7-16 (describing comprehensive notice plan, including direct mail notice to every Fortune 500 company nationwide for each year of the class period).

[9] IPPs were unable to reach an agreement with the Washington AG.

[10] *See* Chunghwa Notice (ECF No. 1063-1), at p.5, Q.10 ("[T]he money from the current settlement, will first be allocated amongst the 24 states listed on page 1 of this notice, so that each state receives its pro rata share. Each state's pro rata share shall be determined by computing its population as a percentage of the total population of all 24 states using census figures from the year 2000.")

Special Master Quinn
January 13, 2016
Page 5 of 5

states: "The combined Settlement Fund totaling $576,750,000 will be used to pay eligible claimants *in the states involved in this litigation*."[11]  Pursuant to the Chunghwa Preliminary Approval Order, the "states involved in this litigation" include Illinois, Oregon and the 22 Indirect Purchaser State Classes.[12]

Moreover, nowhere in the current Detailed Notice does it state that the entire $576,750,000 will be distributed pro rata to individual claimants.  In fact, the Detailed Notice is clear that the amount of the net settlement fund available for distribution is inherently uncertain.[13]  Thus, carving out the payments to Illinois and Oregon (approximately $600,000) in accordance with the Chunghwa Preliminary Approval Order will not require additional notice.[14]

In short, the claimed "inconsistencies" between the proposed Plan of Distribution and the Chunghwa plan of distribution are not borne out by the facts.  The mere fact that the current Detailed Notice did not set forth the Chunghwa plan of distribution in detail is not sufficient to require additional notice – particularly when class members already received adequate notice of the Chunghwa plan and it has been finally approved.

The proposed Plan of Distribution is fair, adequate and reasonable and should be approved.

Respectfully submitted,

Mario N. Alioto

Lead Counsel for the Indirect Purchaser Plaintiffs

---

[11] *See* Fisher Decl. II, Exhibit A (Detailed Notice at p. 7, Q. 8) (emphasis added).

[12] Once the final Chunghwa Net Settlement Fund is known, the money will be allocated amongst the 24 states in accordance with Paragraph 10 of the Chunghwa Preliminary Approval Order.  The Illinois and Oregon AGs will receive their states' pro rata shares (based on a Net Settlement Fund of $5 million, their shares will be $429,500 and $118,500, respectively).  The other 22 states will receive their pro rata shares as part of the pro rata distribution to claimants in those states.

[13] *See* Detailed Notice at p. 7, Q.8 (informing class members that unknown amounts for "the cost to administer the Settlements as well as attorneys' fees, litigation expenses and payments to the Class Representatives will come out of the combined Settlement Fund" before any distribution is made); *id.* at Q.9 ("At this time, it is unknown how much money each Class Member will recover.")

[14] *See In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 946 (9th Cir. 2015) (adequate notice does not require "provid[ing] an exact forecast of how much each class member would receive").