# EXHIBIT D

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

February 5, 2016

**VIA JAMS E-FILING**

Martin Quinn, Special Master
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111

**Re:**  *In Re: Cathode Ray Tubes (CRT) Antitrust Litigation,*
Case No. 07-cv-5944 JST, MDL 1917

Dear Special Master Quinn:

The Special Master in his January 28th R&R has expressed concerns about the allocation of $5 million in Chunghwa settlement funds (the "Net Settlement Fund"), and asked for Lead Counsel's proposal to resolve these concerns. (*See* R&R at 41-46.) Lead Counsel proposes the following solution.

**Background**

In April 2009, IPPs entered into a $10 million settlement agreement with Chunghwa. Unlike subsequent settlements, the Chunghwa settlement released not only end-user claims but also reseller claims. The Court approved a plan of distribution with the following terms:

- After deducting attorneys' fees, expenses, costs, etc., the Chunghwa Net Settlement Fund of approximately $5 million is to be distributed pro rata to 24 states based on a population-based formula. (*See* ECF No. 993 ¶ 10.)

- That distribution plan includes an 8.59% distribution to the Illinois Attorney General and 2.37% to the Oregon Attorney General (or $429,500 and $118,500, respectively)—two states not included in the litigation class or the distribution of non-Chunghwa settlement funds.

At the time, Chunghwa class members were notified that Chunghwa settlement funds may or may not be distributed to the class (*see* ECF No. 1063-1, Chunghwa Notice at p.4, Q.10), and that class members should monitor the settlement website for updates on the distribution plan. (*Id.* at p.4, Q.6.)

The Chunghwa settlement was finally approved on March 22, 2012. (ECF Nos. 1105-06.)

After settlements were reached with the remaining defendants, Lead Counsel proposed a plan of distribution under which the total common fund of $576.75 million (including Chunghwa funds) would be distributed to end-user (but not reseller) class members on a pro rata basis, after deducting court-approved attorneys' fees, costs, and expenses. Lead Counsel believes that plan was fair and reasonable for the reasons previously explained. *See, e.g.,* January 13, 2016 Letter to Special Master Quinn from Lead Counsel.

The Special Master, however, has expressed concerns about whether this plan is consistent with the Chunghwa notice and plan of distribution. In particular, the Special Master has expressed concerns about the fact that the proposed plan of distribution does not provide for payment to resellers, and is not in accord with the state-by-state allocation set forth in the Chunghwa Preliminary Approval Order.

The Special Master has requested proposals concerning the scope of corrective notice (if any) required on these issues and the timeline for additional procedures concerning the Chunghwa portion of the distribution.

**Lead Counsel's Response**

These issues can be resolved by separating the Chunghwa distribution issues from all other settlement and attorney fee issues, and making modest adjustments to the plan of distribution for the Chunghwa Net Settlement Fund, as described in more detail below.

*First*, the $5 million Chunghwa distribution issue should be treated on a separate track and should not delay Judge Tigar's consideration of the other settlements and aggregate fee award. (*See also* R&R at 45-56, noting that Chunghwa issue (the "tail") should not wag the dog.) The Chunghwa distribution issue has no material bearing on (1) the Court's final approval of the other pending settlements, (2) the plan of distribution for those settlements (*i.e.*, the non-Chunghwa common fund of $566.75 million), and (3) the aggregate attorneys' fee award. Lead Counsel respectfully suggests that the Special Master enter a brief supplemental R&R recommending this procedure to Judge Tigar.

*Second*, as to the treatment of the Chunghwa Net Settlement Fund on a separate track, Lead Counsel proposes the following framework:

### A. *Claims Period for Resellers*

- The claims period should be re-opened for 120 days to allow reseller members of the Chunghwa Settlement Class to submit claims against the Chunghwa Net Settlement Fund.

- Resellers would be notified of this change through several means, including print publication, a nationwide press release, and online and email notices targeted to the reseller community located in the 22 states eligible to submit claims. The Claims Administrator would also send mailed notice to the same list of large

Special Master Quinn
February 5, 2016
Page 3 of 7

resellers that were sent mailed notice of the Chunghwa Settlement in 2011.[1] The notice will be in both English and Spanish. Further, the settlement website would be updated to inform resellers that they will be permitted to submit a claim against the Chunghwa fund during the 120-day period. In the context of a $5 million Net Settlement Fund—and a case in which multiple notices have been disseminated nationwide directing potential class members to the website for information about the case—these efforts constitute the best notice practicable to resellers about the change to the Chunghwa distribution plan.

### B. *Chunghwa Allocation*

The next question is how to allocate the $5 million Chunghwa Net Settlement Fund among end-users, resellers, and the states in a manner consistent with the Court's Orders regarding the Chunghwa Settlement. Lead Counsel proposes the following:

- Consistent with the state-by-state formula approved by the Court, the Attorneys General of Illinois and Oregon should be allocated 8.59% and 2.37% of the Chunghwa fund ($429,500 and $118,500, respectively).

- The balance of the Chunghwa Net Settlement Fund ($4.452 million) will then be allocated according to the state-by-state percentage formula, creating separate "funds" for each state. This will not require actually setting up separate funds, but will be an accounting function performed by the Claims Administrator.

- Each state's fund will be allocated 50-50 between end user and reseller claimants – that is, 50% of each state's fund will be allocated pro rata amongst already-existing end-user claimants from that state, and the other 50% will be allocated pro rata amongst reseller claimants from that state.[2]

---

[1] As part of the notice program for the Chunghwa Settlement, The Notice Company identified the 100 largest resellers of consumer electronic products in the United States (not owned by any federal, state or local governmental entity) for purposes of dissemination of notice. *See* Declaration of Joseph M. Fisher Reporting on the Class Notice Program for Settlement with Defendant Chunghwa Picture Tubes, Ltd. (ECF No. 1063), ¶12(d).

[2] A 50% allocation for resellers is fair and reasonable based on past practice in indirect purchaser litigation. *See, e.g., Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 290 (3d Cir. 2011) (en banc) (50.3% for resellers, 49.7% for consumers). While one could argue for a higher or lower percentage allocation for resellers, it makes little sense to engage in additional allocation proceedings for the sake of divvying up less than $5 million in funds. The better approach is to follow the precedent cited above and divide each state's fund 50-50 between end-user and reseller claimants. *See generally Rieckborn v. Velti PLC*, No. 13-cv-03889, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3,

- Reseller claimants, like end-user claimants, will be limited to a maximum payment of three times their estimated damages. In the event that reseller claimants do not exhaust a particular state's reseller fund, the residue will be distributed pro rata to existing end-user claimants from that state.

- For example, California's fund will be $1,171,000 (23.42% of $4.452 million). Thus, 50% of California's fund, or $585,500, will be allocated pro rata amongst the already-existing end-user claimants from California, and the other 50% will be allocated pro rata amongst reseller claimants from California. In the event reseller claims do not exhaust the $585,500 fund, the residue will be added to the California end-user's $585,500 fund and distributed pro rata to already-existing end-user claimants from California.

- End-user claimants will also receive their pro rata share of the other net settlement funds, as set forth in the most recent notice.

This framework is consistent in all respects with the Chunghwa settlement approval orders, and addresses the Special Master's concerns about reseller recovery and the state-by-state allocation formula.

### C. *Fairness to End-User Class Members*

The next issue is whether this modification is fair to end-user members of the Chunghwa settlement class and end-user members of the pending settlements. Practically speaking, these end-user class members are one and the same. But for purposes of analyzing the notice and fairness issues raised by the Special Master, it is necessary to consider them separately.

#### 1. End-User Members of the Chunghwa Settlement Class

End-user members of the Chunghwa Settlement Class were previously given notice of the state-by-state allocation, and that they may have to share the Chunghwa Net Settlement Fund with resellers. No one objected to this plan of distribution and it was finally approved. Thus, there is no unfairness to anyone associated with correcting the present Chunghwa allocation plan now in a manner consistent with the original Chunghwa notice and the Court's Orders on the Chunghwa Settlement.

In the most recent notice, end-user class members were told that the $5 million Chunghwa Net Settlement Fund would be distributed pro rata to end users only, along with the funds from the other settlements. This can be corrected through notice to all

---

2015) ("Courts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.").

Special Master Quinn
February 5, 2016
Page 5 of 7

end-user class members who submitted valid claims (as further described below), and by providing an opportunity to object to the allocation of the Chunghwa Net Settlement Fund between resellers and end-users.[3]

The corrective notice and the opportunity to object address any due process concerns as to end-user members of the Chunghwa Settlement Class.

### 2. End-User Members of the Pending Settlement Class

In the most recent notice, end-user members of the pending Settlement Class were told that the $576.75 million in total settlement funds, net of attorneys' fees and expenses, would be distributed pro rata to end-user claimants. Under the revised plan of allocation, all settlement funds other than Chunghwa (*i.e.*, $566.75 million in total) will be distributed in precisely the manner described in the notice. But the Chunghwa settlement fund will be treated differently, resulting in a slightly diminished total fund for end-users. In other words, the Net Chunghwa Settlement Fund of $5 million will be allocated first to the states and then 50% of each state's fund will be allocated to resellers. The practical effect of this revised plan is that the total amount available for distribution to end-users is approximately $2.8 million less than before (*i.e.*, less than 0.5% of the $576.75 million settlement fund).[4] The revised plan is fair to end-users for the following reasons:

- First, *de minimis* adjustments to a settlement allocation plan do not typically raise fairness or due process concerns, or require extensive additional procedures. Settlement approval routinely involves such issues, which can be addressed through a tailored supplemental notice without the need for a start-from-scratch notice, objection, or opt-out period for the class as a whole.[5]

---

[3] Because the Chunghwa Settlement is final, members of the Chunghwa Settlement Class cannot opt out of the Chunghwa Settlement or object to the plan of distribution approved by the Court in the Chunghwa Preliminary Approval Order. They can only object to the one aspect of the Chunghwa plan of distribution that remained to be determined – the allocation between resellers and end-users.

[4] The $2.8 million figure is calculated by adding the $548,000 payment to the Illinois and Oregon Attorneys General to the $2.226 million maximum payment to resellers, which equals $2,774,000, or approximately $2.8 million. The $2,226,000 maximum payment to resellers is calculated as follows: The $5 million Net Settlement Fund, minus the $548,000 total payments to the Illinois and Oregon Attorneys General, equals $4,452,000. Up to 50% of this $4,452,000 is payable to resellers under our present proposal, which equals $2,226,000.

[5] *See, e.g., In re BankAmerica Corp. Sec. Litig.,* 227 F.Supp.2d 1103 (E.D. Missouri 2002) (modest allocation change effectuated with simple supplemental notice); *Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 641 (5th Cir. 2012) (affirming district court's conclusion that change to plan of allocation would not require

Special Master Quinn
February 4, 2016
Page 6 of 7

> That is particularly true where, as here, the change is truly *de minimis*, involving re-allocation of approximately $2.8 million – or less than 0.5% of the $576.75 million settlement fund.

- Second, due to the Special Master's fee recommendation, end-users now stand to recover *more* than they would have expected to receive under the previously-proposed plan of distribution plan. Whereas the class notice told end-users that their total recovery would be a function of up to one-third attorneys' fees, the Special Master's 30% fee recommendation means that, if the Court adopts the R&R, end-users will recover an additional $19 million above and beyond what the notice advised them to expect (*i.e.*, $192 million in requested fees versus $173 million awarded). In these circumstances, there can be no unfairness to end-users concerning their expected bottom-line recovery in the case.

These factors support separate consideration of the Chunghwa allocation issues. The proposed modification has no material bearing on the non-Chunghwa settlements, the distribution of non-Chunghwa settlement funds, or any class members' decision whether to opt out or object to those settlements. The Chunghwa allocation issues are wholly distinct, and could not reasonably have influenced any class members' thinking on the other settlements. *See generally In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (adequate notice does not require "provid[ing] an exact forecast of how much each class member would receive"). Accordingly, the suggested modification will not prevent the Court's final approval of the other pending settlements, the plan of distribution for those settlements (*i.e.*, the non-Chunghwa common fund of $566.75 million), and the aggregate attorneys' fee award.

### D. *Notice to End-User Class Members and Subsequent Procedures*

All Chunghwa class members (resellers and end-users alike) were told to monitor the settlement website for updates on the distribution plan. Moreover, that message was reinforced for all end-user class members in the recent comprehensive notice program. Accordingly, the best and most reasonable notice under the circumstances is to simply update the settlement website to inform all end-user class members of this relatively minor adjustment to the Chunghwa distribution formula.

---

additional class notice); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 285 (D. Minn. 1997) (rejecting due process objection to notice because the "less than one percent" reduction in the overall settlement fund was "*de minimis*"). *See also Principles of the Law of Aggregate Litigation,* § 3.05(f) ("For class members who did not opt out of the class, *new notice and opt out rights are not required* when, as a result of a fairness hearing, a settlement is revised and the new terms would entitle such class members to *benefits not substantially less than those proposed in the original settlement.*") (Emphases added).

In addition, Lead Counsel proposes to send direct mail or email notice to **all** end-user class members who submitted valid claims, advising these claimants of the change concerning Chunghwa funds, and their right to object to the change. This simple supplemental notice and limited right to object to the reseller allocation is more than sufficient where, as here, the dollar recoveries for end-user claimants will not be substantially less than originally proposed. *See* note 6, *supra.*

In terms of additional procedures, Lead Counsel proposes that (1) the Special Master should issue a brief supplemental R&R advising Judge Tigar that the Chunghwa allocation issues will be addressed on a separate track by the Special Master and that Judge Tigar should proceed with his analysis of the pending settlements, aggregate fee and non-Chunghwa distribution issues; (2) Lead Counsel will submit for Court approval a proposed form of notice regarding the revised Chunghwa plan of distribution, the dissemination of which will reopen the 120-day claims period for reseller claims from the Chunghwa fund; and (3) Chunghwa class members should be afforded 60 days to file objections to the Chunghwa plan described in this letter, which objections shall be considered by the Special Master.

Under no circumstances, however, should the Chunghwa issue be permitted to delay (let alone derail) approval of the other settlements.

                                                Respectfully submitted,

                                                */s/ Mario N. Alioto*
                                                Mario N. Alioto

                                                Lead Counsel for the Indirect Purchaser Plaintiffs