# EXHIBIT A

**Robert J. Bonsignore, Esq.**
**BONSIGNORE TRIAL LAWYERS, PLLC**
**3771 Meadowcrest Drive**
**Las Vegas, NV 89121**
**Phone: 781-856-7650**
**Email: rbonsignore@classactions.us**

*Counsel for Indirect Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Case No. 3:07-cv-5944<br>MDL No. 1917 |
| | **CLASS ACTION** |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **DECLARATION OF ROBERT J. BONSIGNORE IN SUPPORT OF JOINDER AND REPLY OF OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES**<br><br>Judge: Honorable Samuel Conti<br>Courtroom One, 17th Floor |

I, Robert J. Bonsignore, declare as follows:

1.      I am an attorney licensed to practice before the courts of New Hampshire and Massachusetts, as well as federal courts throughout the country. I am a partner in the law firm BONSIGNORE TRIAL LAWYERS, PLLC and have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them.  I make this declaration in support of my firm's Joinder and Reply in Support of Objection to Proposed Class Action Settlement and Motion for Attorneys' Fees.

2.      My firm is counsel of record in this case, and represents named plaintiff(s) Gloria Comeaux, Jeff Speaect, Rosemary Ciccone, Anthony Gianasca, Jeff Craig, and Mina Ashkannejhad individually and/or as Administrator of the Estate of the Late R. Deryl Edwards, Jr. The following are true and accurate copies that were kept in the ordinary course of business:

3.      Attachment 1 – A Gianasca Retention Agreement dated March 20, 2008. Mr. Alioto asked at the time for me to "do him a favor" and add his name to the retention agreement, which I did without hesitation.

4.      Attachment 2 – *Fulton, Mehring & Hauser Co., Inc., et al. v. The Stanley Works, et al.,* Case No. 90-0987-C(5), Memorandum of Points and Authorities in Opposition to the Motion of Trump, Alioto & Trump for an Order Requiring Meet and Confer of Plaintiffs' Counsel and for other Relief.

5.      Attachment 3 – *In Re California Indirect-Purchaser X-Ray Film Antitrust Litigation*, Master File No. 960886, Memorandum of Points and Authorities in Opposition to Trump, Alioto, Trump & Prescott's Motion for an Accounting and Reallocation of Attorneys Fees.

6.      Attachment 4 – *Ernest M. Thayer et al, v. Wells Fargo Bank, N.A.*, Case No. A090429, Case Summary.

7.      Attachment 5 – *Eric Livingston and Stephen Grosse, et al. v. Toyota Motor Sales USA, Inc., et a.*, Case No. C-94-1377-MHP, *Nancy Wolf v. Toyota Motor Sales USA, Inc., et al.*, Case No. C-94-1359 MHP and *Shellie Hackworth v. Toyota Motor Sales USA, Inc. et al.*, Case No. C-94-1960 MHP, Order of Special Master Awarding Attorneys' Fees and Costs.

8.      Attachment 6 – Coordination Proceeding Special Title (Rule 1550 (b)), Minute Order, Master File No. 39693, JCCP No. 3261.

9.      Attachment 7 (a)-(g) – Pages 21-24, 29-30, 34-35, 37-38, 46-48, 52, 59, 60, 63, 65, and Attachments 4 of the November 3, 2015 Deposition of Massachusetts Putative Class Representative Anthony Gianasca.[1]

10.     Attachment 8 – Chain of emails between Bonsignore and Alioto dated March 1, 2012.

11.     Attachment 9 Photographs of CRT devices produced by the estate of the Late Deryl Edwards thus far by the Estate of the Late Deryl Edwards evidencing his purchases. The estate has advised me that although much has been thrown out, a dusty warehouse can be searched for more purchases. Although her deposition has not been provided to her, his widow, Mina Ashkannejhad testified at deposition that Mr. Edwards spoke of the CRT case and made related purchases.

12.     Attachment 10 (a)-(c) – Email to Lead Counsel Alioto dated November 9, 2015 and photos of a Gianasca TV.

13.     Attachment 11 – Email to Lead Counsel Alioto dated December 15, 2015.

14.     Attachment 12 – Exhibit 3A and Attachment 4 to the Supplemental Objection (Doc. 4144).

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 15th day of December 15, 2015, in Las Vegas, Nevada.


*/s/ Robert J. Bonsignore*_____
Robert J. Bonsignore, Esq.

---

[1] The attachments to the Gianasca deposition were incomplete. Bonsignore PLLC still has not received the deposition transcript or attachments for the Putative Missouri class Representative Mina Ashkannejhad individually and/or as Administrator of the Estate of the Late R. Deryl Edwards, Jr. This attachment will be filed separately.  As of today, neither the Plaintiff nor the counsel has received the deposition transcripts and/or exhibits.  Despite the fact that it has been requested several times and it has been over two months since the deposition was taken.

DECLARATION OF ROBERT J. BONSIGNORE IN SUPPORT OF JOINDER AND REPLY OF OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FESS
Case No. 3:07-cv-5944 SC, MDL No. 1917

1

2

**<u>CERTIFICATE OF SERVICE</u>**

3       I, Robert J. Bonsignore, hereby certify that on this 15th day of December 2015, I caused the

4   foregoing to be electronically filed with the JAMS Electronic Filing ("JAMS") System, which will

5   send a notice of electronic filing to all parties registered with the JAMS system in the above-

6   captioned matter.  A copy will be forwarded via first class mail, postage prepaid, to those parties

7   not electronically registered.

8

9

10                                              */s/ Robert J. Bonsignore*
                                                 Robert J. Bonsignore

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ROBERT J. BONSIGNORE IN SUPPORT OF JOINDER AND REPLY OF OBJECTION TO
PROPOSED CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FESS
Case No. 3:07-cv-5944 SC, MDL No. 1917

# ATTACHMENT 1

ATTORNEY REPRESENTATION AGREEMENT

RE:

| | |
|---|---|
| **Case Name:** | MDL No. 1917 In Re: Cathode Ray Tube (CRT) Antitrust Litigation |
| **Case Number:** | 3:07-cv-05944-SC |
| **Filer:** | Indirect Purchaser Plaintiffs |

     I, Anthony Gianasca, ("CLIENT") retain Mario Alioto of Trump, Alioto, Trump & Prescott, LLP and Robert Bonsignore of BONSIGNORE & BREWER (hereinafter "ATTORNEYS"), to be my attorney in connection with the above-referenced action.

     1.    ATTORNEYS shall undertake and use their best efforts to obtain certification of the plaintiff class to which I belong and/or to achieve a fair and equitable settlement of this case.  Because it is possible that certification of the class may not be granted, I am aware that ATTORNEYS may endeavor and agree to individually represent other members of the class in this litigation.

     2.    If the action is certified as a class action, I will retain the right, as a class member, under the class action rules, to support, oppose, or comment upon any proposed settlement of all or part of the class action, and to support, oppose, or comment upon any application for compensation made by ATTORNEYS. .  ATTORNEYS will advance all costs related to the prosecution of the action at their sole expense (to the extent applicable law and ethics rules allow), and, should the class/client recover the attorneys will be entitled to recover out of pocket expenses together with interest  If the action is certified as a class action, and if a monetary recovery is obtained therein for the plaintiff class, either by settlement or judgment, ATTORNEYS will apply to the court for the entirety of their compensation on a reasonable percentage of recovery basis out of such recovery, and/or by defendants if allowed by statue and case law.

     3.    If the above action is not certified as a class action, ATTORNEYS agree to continue to represent me on an individual basis.  If a monetary recovery is obtained therein for me, either by settlement or judgment, ATTORNEYS will be entitled to compensation for their services in an amount of one-third (33 1/3%) of net settlement proceeds or forty percent (40%) of judgment proceeds.

     4.    ATTORNEYS' compensation shall not exceed any limits on compensation imposed by law.  The contingent percentage of recover set forth in this paragraph is not set by law, but is negotiable between ATTORNEYS and CLIENT prior to signing this agreement.

5.    ATTORNEYS shall seek appointment by the Court as class counsel, and agree to undertake the representation of all members of the plaintiff class. ATTORNEYS emphasize class action practice and therefore reserve the right to determine litigation tactics on behalf of all clients, and the class. I understand that if a dispute arises between or among clients of the firm, ATTORNEYS cannot act on behalf of any CLIENT in connection with that dispute. It is also understood that if a difference of opinion arises between me and ATTORNEYS, on a significant issue, ATTORNEYS shall have the right to withdraw as my counsel of record. Likewise, I have the right to discharge ATTORNEYS, as my individual counsel, but I understand that class counsel serves by order of the Court.

6.    I understand the effect of joint representation on ATTORNEY-CLIENT confidentiality. ATTORNEY-CLIENT communications are privileged and are protected against disclosure to a third party. Under this agreement, I may be one of multiple Plaintiffs being jointly represented by ATTORNEYS. By entering into this agreement, I waive any right I may have to require that ATTORNEYS disclose to me any confidences ATTORNEYS have obtained from any other Plaintiff in connection with the subject matter of this agreement.

7.    ATTORNEYS shall have the right to associate other attorneys at no additional expense to CLIENT.

DATED: _3-20-08_          _____
                          CLIENT SIGNATURE

                          _10 Joseph st_____
                          MAILING ADDRESS

                          _Medford    Ma    02155_
                          CITY        STATE    ZIP

                          _____
                          HOME TELEPHONE (Include Area Code)

                          _617-429-6600_____
                          WORK TELEPHONE (Include Area Code)

ACCEPTED BY ATTORNEYS:

BONSIGNORE & BREWER/TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
By: _____

Duties of Class Representatives

1.      A class representative represents the interest of all members of the class in litigation to recovery money damages for the class.

2.      A class representative has claims which are typical of those of the class, and thus involve <u>common issues</u> of law or of fact.  For example, as a class representative, your claims against the defendants are <u>typical</u> of the class claims against them, because each class member incurred damage or injuries as a result of a common event.

3.      A class representative always considers the interests of the class just as the class representative would consider his or her own interests.

4.      A class representative participates actively in the lawsuit, such as by testifying at deposition and trial, answering written interrogatories, and by keeping generally aware of the status and progress of the lawsuit.

5.      A class representative recognizes and accepts that any resolution of the lawsuit, such as by settlement or dismissal, is subject to court approval, and must be in the best interests of the class as a whole.

6.      A class representative accepts the possibility that, in the event the case is lost, the court may assess certain defendants' costs of litigation against the class representatives.

7.      A class representative is not required to be particularly sophisticated or knowledgeable with respect to the subject of the lawsuit.  However, the class representative should be interested, on a continuous basis, in the progress of the lawsuit, and must make every effort to provide class counsel and the court with all relevant facts of which the class representative is aware.

8.      A class representative volunteers to represent many other people with similar claims and damages, because the class representative believes that it is important that all benefit from the lawsuit equally, because a class lawsuit will save time, money, and effort, and thus will benefit all parties, and the court, and because the class action is an important tool to assure compliance with the law, applicable standards and duties of care, and to ensure just compensation to all those similarly situated.

I have reviewed and acknowledge my duties as a class representative in the _____ proceedings.

Dated:   _3-20-08_____          _Airth Sen_____
                                                              Signature

C:\Client files\Class Actions\CLASSACTIONFEEAGREEMENT.doc

3

Attorney Representation Agreement

# ATTACHMENT 7a

1    Q.  Are you single?

2    A.  Of course.

3    Q.  What do you do for a living?

4    A.  Electrician, contractor.

5    Q.  What's your educational background?  Did

6  you finish high school?

7    A.  Yes.

8    Q.  Any post-high school education?

9    A.  Continuing education for electrical and the

10  trades after high school.

11    Q.  And what is your annual salary,

12  approximately?

13    A.  About $100,000.

14    Q.  Between the years of 1995 and 2007, have

15  you ever purchased a TV with a cathode ray tube in

16  it?

17    A.  Yes.

18    Q.  In what states did you make those

19  purchases?

20    A.  Massachusetts.

21    Q.  How many CRT TVs do you think you purchased

22  between that time period?

23    A.  I'd have to estimate about four or five?

24    Q.  Do you remember where you purchased them?

25    A.  Mostly Lechmere Sales over in Cambridge.

1    Q.  Do you still have any receipts from any of

2  those purchases?

3    A.  I believe so.  I'd have to research it.  I

4  also sent receipts to the lawyer, Alioto, back a

5  while ago, and I'm not sure if I still have the

6  originals.

7    Q.  Do you remember when you sent those

8  receipts in?

9    A.  Long time ago.  It'd have to be around

10  2008, 2009, possibly, at the beginning.

11    Q.  Okay.  Between 1995 and 2007, did you

12  purchase any computer monitors that had a Cathode Ray

13  Tube?

14    A.  I believe so, yes.

15    Q.  In what states did you make those

16  purchases?

17    A.  Massachusetts.

18    Q.  And how many computer monitors do you think

19  you purchased during that time period?

20    A.  That would be two, roughly.

21    Q.  Two?

22    A.  Probably a couple.

23    Q.  Where did you buy them?

24    A.  That, I'm not sure.  Primary place would

25  have been Lechmere, but I'm not 100 percent sure on

1 that one.

2   Q. Do you have any receipts for the purchases

3 of the computer monitors?

4   A. I don't think they're in my possession

5 anymore. I think I sent all the receipts -- I

6 forwarded all the receipts. I have to double check

7 my files to make sure I didn't miss anything.

8   Q. Did you purchase any products with CRTs in

9 it besides TVs or computer monitors?

10   A. I may have. I'm not sure exactly.

11   Q. Okay.

12   A. Are you -- specific products --

13   Q. No, I don't have anything specific in mind.

14 Are you aware of any other products that you have?

15   A. You know what, those two are probably the

16 main ones.

17   Q. Did you purchase any products, including

18 TVs or computer monitors, with CRTs in them in any

19 state other than Massachusetts?

20   A. No.

21   Q. Do you know what a class action is, sir?

22   A. Yes.

23   Q. Do you have an opinion of class actions?

24      MR. BONSIGNORE: Objection.

25      You can answer.

1    A.  I guess I have no opinion.  I don't have a
2  legal opinion on that one.
3    Q.  Do you have an opinion as a lay person as
4  to class actions?
5    A.  Class actions don't really help the average
6  person.  They help the attorneys.  The average person
7  that fights for consumer rights usually gets shafted
8  at the end is what my feeling is, my personal feeling
9  on that.
10   Q.  Do you know anything about what notice is
11 typically provided in class-action settlements?
12   A.  A lot of notices do not get provided, and
13 that's part of the problem here.  There's a lot of
14 unethical behavior with -- by attorneys that are
15 involved not producing proper documents to affected
16 people.
17   Q.  Do you have anything specific in mind when
18 you say that?
19   A.  Specifically, a lot of people have been
20 left out of this class action.  This is a class
21 action, I believe, in many ways.  A lot of people
22 have not been notified.  There's states that have
23 been left out, including Massachusetts, and that
24 seems to be unethical to me.
25   Q.  Okay.  Do you have an opinion about

# ATTACHMENT 7b

1  front of Judge Hillman in the federal court in

2  Worcester. So I didn't get a chance to manipulate

3  that fine copying this morning.

4       BY MR. DEVER:

5    Q. Okay. Mr. Giannasca, do you know if a

6  complaint was ever filed on your behalf in this case?

7    A. I believe my attorney has filed complaints

8  on my behalf.

9    Q. Did you authorize him to file those

10  complaints?

11   A. Yes.

12   Q. Do you remember when he filed those

13  complaints?

14   A. I think we just went through that. There's

15  many times --

16       MR. BONSIGNORE: There's other

17  documents here that we can introduce. That's

18  probably the one you're looking for.

19   A. Most recently was the (indecipherable)

20  complaint.

21       (Clarification requested by the court

22  reporter.)

23       MR. BONSIGNORE: Case 3-08-CV-054 --

24  sorry. Case 308-CV-01559-SC, Document 1, filed

25  3/21/08.

1        It's a 34-page complaint filed by

2   Mario Alioto, Lauren Russell; Trump, Alioto, Trump &

3   Prescott; and then Joseph Patane, Law Office of

4   Joseph Patane. Terry -- Brigid Terry, Anthony

5   Giannasca, Brigid Flaherty, and Brigid Ten Eyck

6   against LG and a litany of defendants. And for

7   whatever -- there's other signatures at the back on

8   page 33. And my signature -- my name is on page 34.

9        MR. DEVER: Okay. Thank you.

10   BY MR. DEVER:

11   Q. So the document that was just produced is

12   from 2008. Do you recall having anything to do with

13   this matter after the initial complaint was filed in

14   2008?

15   A. Yes.

16   Q. What did you do?

17   A. I contacted my attorney. We talked before

18   and after, and that's what I -- what do we do, and

19   went forward with the case.

20   Q. And then did anything else happen in the

21   case -- did you personally do anything relating to

22   the case then --

23        MR. BONSIGNORE: Objection; asked and

24   answered. He said I sent things --

25   A. Well, I talked to my attorney.

# ATTACHMENT 7c

Page 34

1 first found out. Do you remember if it was in
2 September?

3    A.  That was before. Might have been -- could
4 have been July.

5    Q.  And how did you find out about the
6 settlement?

7    A.  Contact with my attorney.

8    Q.  Did you call him, or did he call you?

9    A.  I don't recall. I think we were just
10 talking and it came up. I don't recall who called
11 who.

12    Q.  Generally speaking, how often do you speak
13 to Mr. Bonsignore?

14    A.  Periodically. Two times a year, I guess.

15    Q.  And what caused you to object to the
16 settlements?

17    A.  It was my understanding that my name was
18 left out of the -- was pulled out of the class action
19 for no reason. And I was always told that it would
20 be straightened out, but I realize now that it was
21 still an issue.

22    Q.  Okay. So you're objecting because your
23 name was taken out?

24    A.  I was removed for some unknown reason.

25    Q.  Is that the basis for your objection to the

1  settlement?

2     A.  I believe so, yes.

3         MR. BONSIGNORE:  I'm going to object to

4  the extent that it calls for a legal analysis.

5     BY MR. DEVER:

6     Q.  And what do you hope to achieve as a result

7  of your objection?

8     A.  Fairness for all consumers.

9     Q.  Do you know if there was a written

10  objection made on your behalf to the settlements?

11    A.  Yes, I believe so.

12    Q.  And do you know what arguments were made in

13  that objection?

14    A.  Is there a specific one, or ...

15    Q.  I just want to know what --

16    A.  The arguments that basically my name was

17  removed, and that was the main thing, I believe.

18    Q.  Okay.  Whose idea was it to file the

19  objection?

20    A.  Mine.  My idea.

21    Q.  And have you ever received the actual

22  objection that was filed on your behalf?

23    A.  I did look through it, but again, I don't

24  like to read too many documents.  I scan through

25  them.  I don't have time to read every little piece.

# ATTACHMENT 7d

Page 37

1  there?

2  A.  Supplemental?  You mean after this one?

3  Q.  Yes.

4  A.  I'm not sure.  I don't remember that.  I

5  just know I objected.  How many objections?  I'm not

6  100 percent sure about that.

7  Q.  Okay.  The objection in your hand,

8  Exhibit 2 there, did you authorize your attorney to

9  file that objection?

10  A.  Yes.  I told him to object, and I believe

11  this is it.

12  MR. DEVER:  Okay.  Now I'm going to

13  mark Exhibit 3.

14  (Exhibit 3, Supplemental Objection to

15  Proposed class-action settlement and Award of

16  Attorneys' Fees, marked for identification.)

17  BY MR. DEVER:

18  Q.  Exhibit 3, what is that?

19  A.  It looks like a -- "supplemental objection"

20  is what it says.

21  Q.  Have you ever seen this before?

22  A.  I must have.  It's an objection.  I thought

23  it was one and the same, but obviously it's an

24  additional one.

25  Q.  Do you know if you reviewed that

Page 38

1 supplemental objection before it was filed.

2    A.  Yes.  It looks familiar, yes.

3    Q.  And did you authorize the filing of this
4 supplemental objection?

5    A.  Let me look through it.  It looks like it,
6 yeah.  Definitely looks familiar, yes.

7    Q.  And what did you hope to achieve by filing
8 this supplemental objection?

9    A.  Well, my name is left out, and it's unfair.
10 And a lot of other people have been left out, and
11 it's very unfair to the consumer.  And it's awarding
12 attorneys' fees for doing the -- for not doing their
13 job.  Basically giving an award for bad behavior, as
14 far as I can see.  So I want to achieve fairness, in
15 answer to your question.

16    Q.  Okay.  Do you know what arguments are made
17 in the supplemental objection?

18    A.  It's coming down to the same thing.  You
19 know, it's about a consumer rights and the attorneys'
20 fees, that they're looking for attorneys' fees, and
21 they left out certain states and a lot of people.
22 And that's my objection to that.

23    Q.  And do you know why the arguments that you
24 made in the supplemental objection weren't made in
25 the initial objection?

# ATTACHMENT 7e

1   A.  Not that I can recall.  And, again, I don't
2  recall names very well, as you can see.
3   Q.  Do you know how much time the attorneys
4  spent on this case?
5   A.  Not specifically, but I would assume it's a
6  long time.  It was many hours.
7   Q.  And do you -- have you reviewed any firm's
8  fee affidavit in this case?
9   A.  No, I have not.
10   Q.  Do you know what any of the firms' hourly
11  rates are?
12   A.  No, I do not.
13   Q.  Are you objecting to the lead counsel's
14  process of accepting and rejecting certain firms'
15  time in this case?
16   A.  Which counsel?
17   Q.  The lead counsel, Trump, Alioto.
18   A.  Yes.
19   Q.  And why?  Why are you objecting to that?
20       MR. BONSIGNORE:  Objection; calls for a
21  legal conclusion.
22       But go ahead.
23   A.  Due diligence.  They did not do any due
24  diligence in notifying the proper affected people in
25  many states, removing names.  They -- very unethical

1  behavior.

2       So, again, getting back to my answer

3  before, they're awarded for bad behavior. I think

4  that's wrong. A lot of attorneys do that. And I'm

5  not -- no insult to you or anybody in this room, but

6  that's bad practice, which is rampant.

7     Q. So my question is actually a little bit

8  different. Are you objecting to the way the lead

9  counsel decides to split any fee that they receive

10 among the various firms that helped them on the case?

11      MR. BONSIGNORE: Objection; asked and

12 answered.

13    A. I'm objecting to fairness to all consumers

14 that were eliminated or not included or notified.

15 And his fee is in direct relation to bad behavior.

16    Q. Okay. Take a look at Exhibit 2, if you

17 would, the little objection, the smaller one.

18    A. Okay. What page?

19    Q. If you look at page 3 --

20    A. Okay.

21    Q. -- this is the California paper, so you can

22 see the eighth line down.

23    A. I can see what.

24    Q. The eighth line down?

25    A. Yes.

1    Q.  Oh, I'm sorry.

2    A.  Number eight?

3    Q.  Yeah.  Where it says, "The nationwide
4  class."

5    A.  I'm sorry.  Point it out.

6    Q.  I'm sorry.  It's page 4 on the top, page 3
7  on the bottom.  Sorry about that.  Do you see where
8  it says, "The nationwide class is improper because it
9  requires members of the injunctive release settlement
10  class to release both monetary and
11  injunctive/equitable claims without any consideration
12  for such releases?"  Do you see that?

13    A.  Yes, I see it.

14    Q.  Do you understand what that means?

15    A.  It sounds like a lot of legal mumbo jumbo,
16  but I'd have to refer to my attorney to explain it in
17  better detail.

18    Q.  Okay.  Is that a no?  You don't understand
19  what it means?

20    A.  Well, let me just read it again.

21        All right.  It's basically telling me, I
22  think, that a lot of people are being left out of
23  this and monetary payment is being considered without
24  the class of -- the affected class, is what I'm
25  reading.

# ATTACHMENT 7f

1  not for his TV, if that's what you're worried about.

2     A.  Like I said, similar.

3        MR. DEVER:  Oh, I'm not worried about

4  that, but that's what I'm trying to establish.

5     BY MR. DEVER:

6     Q.  So this does not have to do with your TV,

7  then, Exhibit 4?

8     A.  No, it's not my TV, no.  But it's similar

9  to what my -- you said does it look familiar.

10    Q.  Oh, sorry.  Yeah.  So you think you have a

11  receipt that looks like this someplace?

12    A.  It's obvious to me that's the back of a TV

13  with a serial number, and then you've got the front

14  of the TV.  So I am sure I can take pictures of TVs I

15  have that will be similar to that.

16    Q.  Do you still have CRT TVs in your home?

17    A.  Yes, I believe I do.

18    Q.  Okay.  You can put that down now.

19        MR. DEVER:  I'm going to mark

20  Exhibit 5.

21        (Exhibit 5, email from Mr. Alioto to

22  Mr. Bonsignore dated March 5, 2012, marked for

23  identification.)

24    BY MR. DEVER:

25    Q.  What is Exhibit 5?

1 complaint. Could you elaborate?

2    A. Well, I was cut out as a consumer, and

3 everybody else in Massachusetts was left out.

4    Q. So when you were saying the words you were

5 cut out, you meant --

6       (Multiple parties speaking.

7 Interruption by the court reporter.)

8    BY MR. BONSIGNORE:

9    Q. What did you mean by saying you were cut

10 out?

11    A. The people in Massachusetts and other

12 states as well, as I understand.

13    Q. Because you were a class representative?

14    A. Yes.

15    Q. You received, in advance, the first

16 objection. I think it's Exhibit 1. And I think we

17 said that there were no changes. Did you have

18 anything that you wanted to add at the time to

19 Exhibit 2?

20    A. That's what it says.

21    Q. Okay. Exhibit 2, when we discussed it, did

22 you have anything that you wanted to add in there

23 about behavior or anything?

24    A. Well, like I mentioned before, I thought it

25 was a lot of unethical stuff happening against the

Page 60

1 consumer and consumer rights and people not being
2 notified.

3    Q.  But your suggestion was not included in
4 that?

5    A.  Yes.

6    Q.  Throughout the years, you've dealt with a
7 number of the people in my office with regard to the
8 CRT case?

9    A.  Okay.

10    Q.  Do you recognize the name Kelly?

11    A.  Yes.  Kelly sounds familiar, yeah.

12    Q.  Do you recognize the name Rick?

13    A.  Yes.

14    Q.  And Robin?

15    A.  Robin is your ex-wife, right, I believe
16 you're talking about.

17    Q.  You've got to bring it up.

18    A.  Oh, I'm sorry.

19    Q.  I was having a good day.  I was just merely
20 miserable.

21    A.  But the answer is yes.

22    Q.  And you've had occasion to discuss the case
23 with them?

24    A.  I believe so.

25        MR. BONSIGNORE:  That's all that I have

Page 63

1   A.  No.

2   Q.  Was she an attorney?

3   A.  She might have been.

4   Q.  Do you know if she was an attorney?

5   A.  I'm not sure.

6   Q.  Do you know if she was a paralegal?

7   A.  It's possible.  It looked like she knew

8 what she was doing.  I don't know.

9   Q.  How about Rick?  Do you know what his

10 position was?

11   A.  No.

12   Q.  And how about Robin?  Do you know what her

13 position was?

14   A.  I know she was an attorney.

15   Q.  And then in response to Mr. Bonsignore's

16 questioning, you just said you had some things that

17 you suggested adding to the initial objection; is

18 that correct?

19   A.  I think I answered that.  Adding the part

20 that -- unethical behavior and the fees being awarded

21 for not properly doing the correct job as a lawyer

22 and not informing people.  I mean, I think I already

23 said -- I said all that.

24      MR. BONSIGNORE:  Objection; asked and

25 answered.

1    BY MR. BONSIGNORE:

2    Q.  When you were taken out of the case, you

3  testified earlier that you were advised directly or

4  indirectly that Mario Alioto said not to worry about

5  it and that he would take care of it.  Did you have

6  any reason to believe that Court appointed lead

7  counsel would cut you and the State of Massachusetts

8  out of the economic class?

9         MR. DEVER:  Object to the form.

10    A.  No.  Because I was told not to worry about

11  it and I just assumed it would be taken care of and

12  that justice would prevail for all consumers.  But I

13  guess -- I think we're here today because of the

14  objections and me objecting and obviously raising

15  these issues.

16    Q.  Would you be happy if Mario Alioto, as lead

17  counsel, acted in the best interest of your behalf

18  and the other Massachusetts and New Hampshire and

19  Missouri and other states and put them back into the

20  economic class?

21    A.  I think someone needs to step up to the

22  plate and do what's right for all consumers, and that

23  has not happened.  And it looks like it's not going

24  to happen.  And there's obviously a class that's not

25  worth anything.  There's a worthless class here

# ATTACHMENT 7g



Trial Lawyer
Bonsignore and Brewer
193 Plummer Hill Road
Belmont, NH 03220
(781) 856 7650 (cell)
Sent from my iPhone

Begin forwarded message:

**From:** Office <deryl@dedwardslaw.com>
**Date:** March 6, 2012 9:44:26 PM EST
**To:** Robert Bonsignore <rbonsignore@class-actions.us>
**Subject: Fwd: David Perriman TV Purchase History**

Sent from my iPhone

Begin forwarded message:

**From:** <office@dedwardslaw.com>
**Date:** March 6, 2012 6:21:14 PM CST
**To:** "Karl Dickhaus" <karl@faxlaw.com>, "Office" <deryl@dedwardslaw.com>
**Subject: David Perriman TV Purchase History**

David Perriman
27300 Maple Road
Carl Junction, MO 64834
Telephone: 417-365-3652

Sarah Goolsby

Secretary for Deryl Edwards, Jr.

606 S. Pearl

Joplin, MO 64801

(417) 624-1962

Fax: (417) 624-1965

deryl@dedwardslaw.com



Perriman TV Purchase 3-
6-2012.pdf



IN ORDERING PARTS SHOW MODEL NO.

PHILIPS CONSUMER ELECTRONICS COMPANY
KNOXVILLE, TENNESSEE 37914

MODEL NUMBER
25TR15 C122

SERIAL NUMBER
167223332

ASSEMBLED IN
MEXICO

1.50 AMPS
60HZ
120V

TX FCC ID:

This device complies with Part 15 of the FCC Rules.
Operation is subject to the following two conditions:
(1) This device may not cause harmful interference, and
(2) this device must accept any interference received,
including interference that may cause undesired operation.

DATE CODE

MANUFACTURED    JANUARY 1999

14.190252I

CHASSIS
MODEL NO.
25B800-7562

TV RECEIVER
LISTED 247H
E10369











# ATTACHMENT 8



From: **Robert Bonsignore** rbonsignore@class-actions.us
Subject: Re:
Date: March 1, 2012 at 9:39 PM
To: Mario N. Alioto malioto@tatp.com
Cc: rbonsignore@classactions.us

This is the first I've been advised of the need for anything. No requests were ever sent to me. I think you are missing states such as New Hampshire.

Robert J. Bonsignore
Trial Lawyer
Bonsignore and Brewer
193 Plummer Hill Road
Belmont, NH 03220
(781) 856 7650 (cell)
Sent from my iPhone

On Mar 1, 2012, at 9:03 PM, "Mario N. Alioto" <malioto@tatp.com> wrote:

> Attached is the chart summarizing the responses to the questionnaire sent out to class reps in August 2008 which I referred to in our call today.
>
> Mario N. Alioto, Esq.
> TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
> 2280 Union Street
> San Francisco, CA 94123
> Telephone:415 447-1650
> Facsimile:415 346-0679
>
> This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by e-mail and delete the message and any attachments.
>
> <CRT--Analysis of Indirect Purchaser States & Class Reps.doc>

# ATTACHMENT 9



Robert Bonsignore <rbonsignore@class-actions.us>

---

**CRT screen**
1 message

---

**Deryl Edwards** <deryled@swbell.net>                                    Tue, Dec 15, 2015 at 4:45 PM
To: rbonsignore@class-actions.us

Robert,

Attached are the pictures of the CRT screens.  I took a picture of the front and back of each monitor.   If you need any additional information, please advise.

Very truly yours,

R. Deryl Edwards
Attorney at Law
606 South Pearl Ave.
P.O. Box 760
Joplin, Missouri 64802
Tel: (417) 624-8099
Fax: (417) 624-1965

**CONFIDENTIALITY NOTICE:** This electronic communication originates from R. Deryl Edwards, Attorney at Law, and is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this electronic communication; any part of it; or any attachments thereto. Unauthorized retransmission, reproduction, distribution or other use of the confidential information contained herein is strictly prohibited and may be unlawful. If you have received this electronic communication in error, please *delete it* (and any attachments) from your computer systems without reading the content, and *immediately notify the sender of the inadvertent transmission.* There is no intent on the part of the sender to waive any evidentiary or other common law privilege (including the attorney-client privilege) that may attach to this communication.

The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication; that it may be copied and held by any computer through which it passes; and that persons not participating in the communication may intercept the communication.  Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent. Thank you for your cooperation.

---

**8 attachments**



**KDS Avitron screen 1 CRT (back).jpg**
1207K



**KDS Avitron screen 1 CRT (front).jpg**
1037K



**KDS Avitron screen 2 CRT (back).jpg**
1233K



**KDS Avitron screen 2 CRT (front).jpg**
891K



**KMD Plug and Play screen CRT (back) .jpg**
1511K



**techmedia screen CRT (front) .jpg**
939K



**techmedia screen CRT (back) .jpg**
1212K



**KMD Plug and Play screen CRT (front) .jpg**
1198K















# ATTACHMENT 10a



Robert Bonsignore <rbonsignore@class-actions.us>

---

### CRT - GIANASCA TV
1 message

---

**Robert Bonsignore** <rbonsignore@class-actions.us>                                      Mon, Nov 9, 2015 at 12:26 AM
To: Mario Alioto <malloto@tatp.com>
Bcc: rbonsignore@class-actions.us, fos@scarpullalaw.com

Robert J. Bonsignore
Bonsignore Trial Lawyers, PLLC
(781) 856 7650 cell

visit our new website at
www.classactions.us

RECEIPT OF THIS EMAIL INCLUDING ATTACHMENTS DOES NOT CREATE OR INFER LEGAL REPRESENTATION. WE
ONLY REPRESENT CLIENTS WHO HAVE EXECUTED A WRITTEN RETENTION AGREEMENT.

GENERAL NOTICE: This e-mail, including any attachment(s) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§
2510-2521, is confidential and may be legally privileged.  If you are not the intended recipient, you are hereby notified that any retention,
dissemination, distribution, or copying of this communication is strictly prohibited.
Please reply to the sender that you have received the message in error, then delete it. Thank you.

NOTICE TO CLIENTS: This e-mail has been sent as a confidential communication by the law office of Bonsignore and Brewer in furtherance
of and for the purpose of facilitating the rendition of professional legal services.  If you are a client, this e-mail may be protected by the attorney-
client privilege and the work product doctrine.  Do not share this e-mail with opposing parties, opposing counsel or any other third-person or
entity. Copies of this e-mail should not be kept in your regular files.  If you print a copy of this e-mail, place it in a separate file labeled "Attorney-
Client Privilege."
DO NOT PRODUCE A COPY OF THIS E-MAIL IN DISCOVERY.

Please consider the environment before you print this email.


Begin forwarded message:

**From:** Anthony <agelectricalmechanical@gmail.com>
**Subject: Crv**
**Date:** November 3, 2015 at 5:43:22 PM EST
**To:** Robert Bonsignore <rbonsignore@classactions.us>



# ATTACHMENT 10b



TOSHIBA

TELEVISION RECEIVER

ASSEMBLED IN U.S.A. ENSAMBLADO EN U.S.A.

MODEL NO.    SERIAL NO.    CHASSIS NO.
32A41        1561718       TAC   0101

120 VAC 60Hz, 1.8A, 96W AVERAGE POWER

COMPLIES WITH DHHS RADIATION PERFORMANCE STANDARDS
21 CFR SUBCHAPTER J.
CABLE COMPATIBLE TELEVISION APPARATUS.
TELEVISION CABLOCOMPATIBLE, CANADA

MANUFACTURED:  MARCH 2002                           G

THIS DEVICE COMPLIES WITH PART 15 OF THE FCC RULES
OPERATION IS SUBJECT TO THE FOLLOWING TWO CONDITIONS:
(1) THIS DEVICE MAY NOT CAUSE HARMFUL INTERFERENCE, AND
(2) THIS DEVICE MUST ACCEPT ANY INTERFERENCE RECEIVED,
INCLUDING INTERFERENCE THAT MAY CAUSE UNDESIRED
OPERATION.

DISTRIBUTED BY:   TOSHIBA AMERICA CONSUMER PRODUCTS, INC.
                  82 TOTOWA RD WAYNE, NJ 07470, U.S.A.
                  TOSHIBA OF CANADA LTD, MARKHAM, ONTARIO, CANADA
MFR. BY: TOSHIBA AMERICA CONSUMER PRODUCTS, INC., LEBANON, TN U.S.A.

# ATTACHMENT 10c



# ATTACHMENT 12

# ATTACHMENT 3A



From: **Robert Bonsignore** rbonsignore@class-actions.us
Subject: CRT TV
Date: March 5, 2012 at 5:30 PM
To: Carolyn Jorgensen cjorgensen@class-actions.us
Cc: Alioto Mario malioto@tatp.com
Bcc: Robert Bonsignore rbonsignore@class-actions.us

Ok do you remember where you bought it and how much you paid?

Robert J. Bonsignore
Trial Lawyer
Bonsignore and Brewer
193 Plummer Hill Road
Belmont, New Hampshire 03220
781 856 7650 CELL
rbonsignore@class-actions.us

On Mar 2, 2012, at 1:33 PM, Carolyn Jorgensen wrote:

TV is a Sanyo

July 1995
serial # V5290486805519

What a MONSTER!  I do not believe I have the manual...

~ Carolyn

**Case Number:** 3:07-cv-05944-SC
**Filer:** Indirect Purchaser Plaintiffs

I, *CAROLYN L. DESCALSEAT* ("CLIENT") retain the law firms of and Robert Bonsignore of BONSIGNORE & BREWER (hereinafter "ATTORNEYS"), to be my attorney in connection with the above-referenced action.

7.    ATTORNEYS shall have the right to associate other attorneys at no additional expense to CLIENT.

DATED: 3/6/2012

_____
CLIENT SIGNATURE

75 Franklin St
_____
MAILING ADDRESS

Laconia NH 03246
_____
CITY            STATE       ZIP

(603) 527-0009
_____
HOME TELEPHONE (Include Area Code)

(603) 630-0532
_____
WORK TELEPHONE (Include Area Code)

ACCEPTED BY ATTORNEYS:

BONSIGNORE & BREWER/

By: _____

2
Attorney Representation Agreement

# ATTACHMENT 4



**From:** **Robert Bonsignore** rbonsignore@class-actions.us
**Subject:** Fwd: David Perriman TV Purchase History
**Date:** March 6, 2012 at 9:49 PM
**To:** Mario Alioto malioto@tatp.com

Robert J. Bonsignore
Trial Lawyer
Bonsignore and Brewer
193 Plummer Hill Road
Belmont, NH 03220
(781) 856 7650 (cell)
Sent from my iPhone

Begin forwarded message:

> **From:** Office <deryl@dedwardslaw.com>
> **Date:** March 6, 2012 9:44:26 PM EST
> **To:** Robert Bonsignore <rbonsignore@class-actions.us>
> **Subject: Fwd: David Perriman TV Purchase History**
>
>
> Sent from my iPhone
>
> Begin forwarded message:
>
> > **From:** <office@dedwardslaw.com>
> > **Date:** March 6, 2012 6:21:14 PM CST
> > **To:** "Karl Dickhaus" <karl@faxlaw.com>, "Office" <deryl@dedwardslaw.com>
> > **Subject: David Perriman TV Purchase History**
> >
> > David Perriman
> > 27300 Maple Road
> > Carl Junction, MO 64834
> > Telephone: 417-365-3652
> >
> > Sarah Goolsby
> >
> > Secretary for Deryl Edwards, Jr.
> >
> > 606 S. Pearl
> >
> > Joplin, MO 64801
> >
> > (417) 624-1962
> >
> > Fax: (417) 624-1965
> >
> > deryl@dedwardslaw.com
> >
> > 
> > Perriman TV Purchase 3-
> > 6-2012.pdf