Josef D. Cooper (53015)
Tracy R. Kirkham (69912)
John D. Bogdanov (215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA 94103
Telephone: (415) 788-3030
Facsimile: (415) 882-7040
Email: jdc@coopkirk.com
       trk@coopkirk.com
       jdb@coopkirk.com

Francis O. Scarpulla (41059)
Patrick B. Clayton (240191)
LAW OFFICES OF FRANCIS O. SCARPULLA
456 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 788-7210
Facsimile:   (415) 788-0706
Email: fos@scarpullalaw.com
       pbc@scarpullalaw.com

*Counsel for Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 3:07-cv-5944-JST <br><br> MDL No. 1917 |
| This Document Relates to: <br><br> All Indirect Purchaser Actions | **COMMENTS/OBJECTIONS TO SPECIAL MASTER'S CORRECTED SUPPLEMENTAL REPORT AND RECOMMENDATION RE CHUNGHWA ALLOCATION ISSUE IN CONNECTION WITH INDIRECT PURCHASER SETTLEMENT** <br><br> Date:  April 19, 2016 <br> Time: 2:00 p.m. <br> Courtroom: 9, 19th Floor <br> Judge:  Honorable Jon S. Tigar |

The Special Master: (1) sustained the undersigned's objection that the proposed plan of allocation did not comport with the Chunghwa settlement judgment; (2) directed Lead Counsel to submit a proposal to fix the problem; and (3) invited comments and objections. Dkt. 4351 at 42-46. The undersigned objected to aspects of Lead Counsel's proposal. Dkt. 4445, Attachments 2 and 3. The Special Master agreed with us as to the calculation of the available Chunghwa fund and not charging the class with the cost of supplemental notice, but rejected our other objections.

## I.  THE PROPOSED 50/50 SPLIT BETWEEN RESELLERS AND CONSUMERS

The Special Master concluded that despite "Lead Counsel offer[ing] no empirical support for a 50/50 split," it is nonetheless "as effective and fair as any other." R&R, Dkt. 4445 at 7. This conclusion was based solely on the finding that "expending further counsel and Court time on the issue is not cost-effective." *Ibid*. He also found that a 50/50 split "protects end users in the Chunghwa distribution pool from being overwhelmed by large volume claims from big resellers," presumably a reference to the alternative of paying out the Chunghwa money *pro rata* without regard to a claimant's reseller or consumer status. The Special Master rejected the suggestion that some factual showing should be made on the allocation issue, for which resellers and consumers should have separate representation.

The Chunghwa net settlement proceeds will be approximately $7.3 million. See, R&R, Dkt. 4445 at 6-7. No one is suggesting that a million dollars be spent on a process to arrive at an evidence-based allocation between resellers and end users. But there is a huge gulf between spending large sums of money and the Special Master's good-enough-for-government-work conclusion that there is no "cost-effective" means of adjudicating this issue. At this point, there is absolutely nothing in the record from which to determine the cost of an evidentiary process. For example, if the work already performed by plaintiffs' damage expert provides a basis for estimating the portion of the alleged overcharge that resellers absorbed or passed on, such evidence could be obtained at minimal additional cost. It might well be that if counsel were appointed to represent the resellers and consumers, they would be able to agree on a fair split, as happened in the *DRAM* Litigation. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 188116, at *96-97 (N.D. Cal. Jan. 8, 2013) (Report and

1  Recommendations, adopted at 2014 U.S. Dist. LEXIS 89662 (N.D. Cal. June 27, 2014)).

2  A $7 million settlement fund is not a *de minimus* amount. Pulling an allocation fraction out
3  of thin air fails to afford due process to either CRT Product resellers or consumers, even if the split
4  was supported by evidence of a wholly unrelated product market in another case. An evidence-
5  based division here might be 30/70 resellers to consumers, or 80/20 or 50/50. The point is that no
6  one knows, and without independent representation of the antagonistic interests of resellers and
7  consumers, no one is likely to ever know. There is simply no basis for the conclusion that
8  spending time and money to develop empirical support for the allocation is not cost-effective.

9  **II.   NEW NOTICE AND CLAIMS PERIOD**

10  The Special Master rejected the suggestion that the claims period be reopened since new
11  notice is going to be given to both resellers and consumers. In our letter regarding the Chunghwa
12  issue, we cited concerns about the adequacy of the original notice, and noted that the number of
13  claims received here is less than half the number approved after audit in the *TFT-LCD* litigation.
14  R&R, Dkt. 4445, Attachment 2 at 1. Lead Counsel countered that: (1) the number of claims
15  received is not an indication of the robustness of the notice program or claims response; (2) the
16  *TFT-LCD* Court allowed claims submitted over an eighteen month period; and (3) the *TFT-LCD*
17  claims period started in 2012, which was closer to its 1999-2006 conspiracy period. According to
18  Lead Counsel, this "mean[t] claimants were more likely to have retained the relevant products
19  and/or purchaser records" in *TFT-LCD,* which presumably allowed more of them to file. R&R,
20  Dkt. 4445, Attachment 1 at 4, fn. 1. However, retaining either the CRT products or purchase
21  records is irrelevant to household consumers and small business end users since their claims were
22  permitted here (as was true in *TFT-LCD*) on the basis of a good-faith recollection of the number of
23  products purchased with no invoices or other records required. Having records would only
24  influence the claims rate from large end-users who might expect to be audited. The fact that
25  109,709 claims amount to 19.9 million CRT units, an average of 181.4 televisions, monitors or
26  other products per claim, indicates that a substantial number of them are from large end-users, and
27  not the household consumers and small businesses for whom wide-reach notice is critical.
28  The Special Master's decision to reject reopening the claims period for consumers was

based principally on Lead Counsel's argument that the number of LCD panels claimed "was only 9.6 million – far less than the 19.9 million CRT units claimed here," and that "the claims period in this case stretches back 20 years and the product is obsolete." R&R, Dkt. 4445, at 4.  Since all that is required for households and small businesses to claim is a few moment's reflection to remember how many CRT televisions and computer monitors were owned during the class period, it is difficult to see how the time since the conspiracy and the obsolescence of CRT TVs and monitors would substantially discourage the submission of claims.  Whether claims for 19.9 million CRT units compares favorably to 9.6 million LCD panels depends upon context – otherwise, Lead Counsel has proved nothing more than that 19.9 is a bigger number than 9.6.   Unfortunately, the key information about CRT sales required to put this comparison into context was put in the record under seal, and therefore the undersigned are not at liberty to discuss it in any detail.  However, if the Court looks at the work of plaintiffs' economist, it will see that commerce in CRT units during the conspiracy period was many multiples larger than commerce in LCD panels between 1999 and 2006, when that was still a relatively new technology.  *See* April 15, 2014 Expert Report of Janet S. Netz, Ph.D, attached as Exhibit 3 to the Declaration of Mario N. Alioto In Support of Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment on Indirect Purchaser Claims Based on Foreign Sales, at *e.g.* Exhs. 13, 14, 25 & 26 (filed under seal December 23, 2014); Dkt. 3286 (Plaintiffs' Administrative Motion to Seal Documents); Dkt. 3287 n.4 (identifying location of expert report within compendium of sealed documents).  The fact that 10 million more CRTs than LCDs were claimed is not indication of an adequate notice or a robust claims rate.  Rather, in light of the record on the adequacy of notice (see, Dkt. 4437), this Court should reject the Special Master's recommendation that reopening the claims period be limited to resellers.  The undersigned also suggest that the Court inquire into the need to keep the information about commerce in CRT Products under seal.  As Lead Counsel repeatedly reminds us, it is 20-year-old data about an obsolete product.  Making this information publically available would assist anyone interested in evaluating the adequacy of notice and the claims response in this case.

Although complimentary of the notice plan outlined by Lead Counsel, the Special Master reserved a final evaluation of Lead Counsel's proposal until submission of his motion for Court

3

1  approval.  The undersigned believe that similar restraint should have been exercised on the
2  question of who should bear the costs of this additional notice.  We are pleased that the Special
3  Master adopted our request that class members not have their recovery debited for this expense.
4  However, although relegated to a footnote, it appears that the Special Master has prematurely
5  decided to deduct these costs from the aggregate attorney's fee award so that all counsel pay a *pro*
6  *rata* share.  The Special Master asserts that this is fair because "[Lead Counsel's] faulty allocation
7  plan was presumably known to and approved by numerous other class counsel."  R&R, Dkt. 4445
8  at 6, fn. 3.  We object to the premature allocation of the additional notice costs to all counsel since
9  there is nothing in the record to support the Special Master's underlying presumption of fairness.
10 The undersigned believe that an inquiry would show that only a handful of counsel actually had
11 input into or advance knowledge of Lead Counsel's decision to send out a notice and propose a
12 plan of distribution that ignored the Chunghwa settlement terms.

Dated: March 3, 2016                              Respectfully submitted,

                                                   /s/ Josef D. Cooper
                                                      Josef D. Cooper

                                                  Josef D. Cooper (53015)
                                                  Tracy R. Kirkham (69912)
                                                  John D. Bogdanov (215830)
                                                  COOPER & KIRKHAM, P.C.
                                                  357 Tehama Street, Second Floor
                                                  San Francisco, CA 94103
                                                  Telephone: (415) 788-3030
                                                  Facsimile: (415) 882-7040
                                                  Email:  jdc@coopkirk.com


                                                   /s/  Francis O. Scarpulla
                                                      Francis O. Scarpulla

                                                  Francis O. Scarpulla (41059)
                                                  Patrick B. Clayton (240191)
                                                  LAW OFFICES OF FRANCIS O. SCARPULLA
                                                  456 Montgomery Street, 17th Floor
                                                  San Francisco, CA 94104
                                                  Telephone: 415-788-7210
                                                  Facsimile:  415-788-0706
                                                  fos@scarpullalaw.com

Pursuant to Civil L.R. 5-1(i), the filer attests that the concurrence in the filing of this document has been obtained from each of the above signatories.