Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the*
*Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-JST; No. CV-13-03234-JST |
| | MDL No. 1917 |
| | **CLASS ACTION** |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO COMMENTS/OBJECTIONS TO SPECIAL MASTER'S R&R RE CHUNGHWA ALLOCATION ISSUE (DKT. NO. 4445)**<br><br>Date: April 19, 2016<br>Time: 2:00 p.m.<br>Judge: Honorable Jon S. Tigar<br>Court: Courtroom 9, 19th Floor<br>Special Master: Martin Quinn (JAMS) |

This response is submitted to the Comments/Objections of Cooper & Scarpulla (Dkt. No. 4453) filed with respect to the Special Master's Corrected Supplemental Report and Recommendation Re Chunghwa Allocation Issue In Connection With Indirect Purchaser Plaintiffs' Settlement, filed February 29, 2016, ECF No. 4445 ("R&R").

**BACKGROUND**

The Special Master recently issued a supplemental R&R addressing the plan of distribution for approximately $6,867,631 in Chunghwa net settlement funds.[1]  (For background, *see* Dkt. No. 4351 at 41-46 (original R&R); Dkt. No. 4445 (supplemental R&R, with letter briefing attached)).

While Lead Counsel continues to believe the original plan of distribution was fair, reasonable, and consistent with the Chunghwa final approval order, Lead Counsel prefers to keep the case moving toward final settlement approval and, accordingly, does not object to the Special Master's recommendation.[2]

Despite the Special Master's careful efforts to resolve this issue, Cooper and Scarpulla continue to object.  Their latest argument is that (1) it is unreasonable to allocate the Chunghwa funds 50/50 between end-users and resellers, and (2) a comparison of claims rates with the *LCD* case requires a new notice and claims period for all class members.  (*See* Dkt. No. 4453.)  The first point was rejected squarely by the Special Master.  (*See* Dkt. No. 4445 at 7 ("the proposed 50/50 split is likely to be as effective and fair as any other, [and] expending further counsel and Court time on this issue is not cost-effective").)  And the second has little to do with Chunghwa; it is merely an attempted sur-reply on notice issues briefed in connection with final approval. (*See* Dkt. No. 4449 at

---

[1] In accordance with the Special Master's R&R, Lead Counsel has calculated the Chunghwa Net Settlement Fund by removing only Chunghwa-specific expenses and the Chunghwa Settlement's pro rata share of all other litigation expenses.

[2] Lead Counsel does, however, disagree with the Special Master's statement that "Lead Counsel made an error in judgment in determining that the Chunghwa distribution plan was so *de minimis* that it could be ignored." (*Id.* at 6.)  That statement is not accurate.  Lead Counsel proposed a plan of distribution of the Chunghwa Settlement based on several factors.  There was never any intention to ignore the Chunghwa distribution plan that was previously approved because it was so *de minimis*.  (*See, e.g.*, Dkt. No. 4449-4 (January 13, 2016 IPP response re: Chunghwa allocation of funds).)  Moreover, as noted, Lead Counsel continues to believe the proposed plan of distribution was fair and appropriate for the Chunghwa funds.  Accordingly, to the extent Objectors continue to raise Chunghwa-related issues before this Court or on appeal, Lead Counsel reserves the right to defend the original plan.

24-28 (addressing the same notice issues at length).)  Regardless, the Special Master properly rejected these arguments as well.  (*See* Dkt. No. 4445, at 4 (approving Chunghwa notice plan and emphasizing that "Cooper/Scarpulla offer no compelling reason to reopen the claim period for all claimants").)

## ARGUMENT

### I.   THE CHUNGHWA ALLOCATION IS FAIR AND REASONABLE

A plan of allocation for settlement funds "is governed by the same standards of review applicable to approval of the settlement as a whole:  the plan must be fair, reasonable and adequate." *In re CRT Antitrust Litig.*, No. 14-CV-2058 JST, 2015 WL 9266493, at *7 (N.D. Cal. Dec. 17, 2015) (citation omitted); *see also Rieckborn v. Velti PLC*, No. 13-cv-03889, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) ("Courts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.")

The plan proposed here—essentially a 50/50 split between resellers and end-user class members for the $6.9 million Chunghwa net settlement fund—is reasonable and rational in all respects.  As Lead Counsel explained to the Special Master, "[a] 50% allocation for resellers is fair and reasonable based on past practice in indirect purchaser litigation. *See, e.g., Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 290 (3d Cir. 2011) (en banc) (50.3% for resellers, 49.7% for consumers)."  (Dkt. No. 4445, Attachment 3 at n.2 (Lead Counsel letter to Special Master).)  And while it is true that one could argue (theoretically) for a different percentage allocation, it makes no sense to spend additional time and class funds on contested allocation proceedings to reach some marginally different split.

Allocation disputes are costly and time-consuming—involving Special Master fees, expert costs and significant attorney time—all of which delays the class distribution and depletes the settlement fund.  Avoiding this type of inefficient quibbling is precisely why the standard for a plan of allocation is flexible, requiring only a reasonable, rational basis and the recommendation of experienced counsel.  *See, e.g., Rieckborn*, 2015 WL 468329, at *10 (approving plan as fair and reasonable even though alternatives "could be created" that would allocate funds in a different way); *In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18,

2

INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S R&R RE CHUNGHWA ALLOCATION ISSUE (DKT. NO. 4445) - Master File No. CV-07-5944-JST

2002) (rejecting alternative allocation proposal for which administrative costs "would eat further into the relatively small settlement fund"); *Careccio v. BMW of N. Am. LLC,* No. CIV. A. 08-2619, 2010 WL 1752347, at *6 (D.N.J. Apr. 29, 2010) (approving plan of allocation that "avoid[s] a costly, speculative and bootless comparison of the merits of the Class Members' claims").

Consider the Chunghwa distribution in context. To date, approximately 109,709 end-user claims have been timely filed, representing approximately 19.9 million CRT units. Based on this claims rate, the proposed 50% end-user share of the Chunghwa fund is worth approximately $28 for the average end-user claimant (*i.e.*, $3,057,569 divided by 109,709), or approximately 15 cents per CRT unit ($3,057,569 divided by 19.9 million).[3] An alternative Chunghwa allocation will not have any substantial impact on class members—perhaps a few cents one way or the other for individual consumers and perhaps a few dollars for institutional claimants.

For all of these reasons, the Special Master correctly concluded that:

> Given these alternatives, the very small amount at stake, and the negligible impact on claimants of choosing some other alternative, the Special Master concludes that the proposed 50/50 split is likely to be as effective and fair as any other, and that expending further counsel and Court time on the issue is not cost-effective. Moreover, the 50/50 split has one important feature—it protects end-users in the Chunghwa distribution pool from being overwhelmed by large volume claims from big resellers.

Dkt. No. 4445, at 7.

Objectors cite the *DRAM* case as one in which contested proceedings were used to arrive at the split for end-users and resellers, but they fail to mention that *DRAM* involved a settlement fund of $310 million—which of course is far removed from the situation here. *See* No. 4:02-md-01486 PJH, Dkt. No. 2174, at Exhibit B (N.D. Cal. Jan. 17, 2014) (*DRAM* preliminary approval order and class notice). Moreover, the *DRAM* allocation ultimately treated reseller and end-user claims *equally* for purposes of a *pro rata* distribution, *see id.* at page 6 of *DRAM* class notice, which only reinforces the reasonableness of the 50/50 split proposed here.

---

[3] The $3,057,569 amount for distribution to claimants is calculated as follows: $6,867,631 minus the allocations to the Illinois and Oregon Attorneys General ($589,930 and $162,763, respectively), equals $6,114,938, divided by two, equals $3,057,569.

1  Cooper/Scarpulla also fail to mention that the "fair split" agreed to in *DRAM* only came after
2  almost *three years* of extremely complex proceedings, including multiple, competing expert reports
3  from the end-users and resellers, voluminous briefing and two Special Master reports totaling almost
4  300 pages. (*See* Dkt. No. 2132 at 114-44 (Report & Recommendation, Part 1, describing the
5  complex history of the allocation proceedings).) This tremendous expenditure of time and resources
6  is precisely what Lead Counsel seeks to avoid here by proposing a fair and reasonable compromise
7  upfront. Indeed, in presenting the agreed-upon plan of allocation to the *DRAM* court, Mr. Cooper
8  argued: "'[*A*] ***Plan of Allocation need not be, and cannot be, perfect.***' *In re Cendant Corp. Secs.*
9  *Litig.*, 109 F. Supp. 2d 235, 272 (D.N.J. 2000), *aff'd*, 264 F.3d 201 (3d Cir.), *cert. denied*, 535 U.S.
10 929 (2002). ***Neither need, nor can, a plan of distribution be optimal from the perspective of each***
11 ***and every individual potential claimant***. In many cases, if not in most cases, perfection to
12 everyone's satisfaction is unattainable." (No. 4:02-md-01486 PJH, Dkt. No. 2215 at 3-4 (emphasis
13 added).) It is unclear why Mr. Cooper is advocating a different standard here.

14 **II. OBJECTORS' NOTICE ARGUMENTS ARE MERITLESS**

15 The balance of the Cooper/Scarpulla objection contends that the claims period should be re-
16 opened for all class members (presumably to make claims from all settlement funds, not merely the
17 Chunghwa fund) because, according to Objectors, the notice program did not stimulate a sufficient
18 number of claims to date. But that is not really a Chunghwa issue. Rather, it is an attempted sur-
19 reply on various notice and claims-rate objections raised by Cooper and Scarpulla in connection with
20 final approval of the other pending settlements. (*See* Dkt. No. 4077 (no provision for replies in
21 support of objections to Special Master's recommendations).) Lead Counsel has responded to most
22 of these arguments fully in recent filings and need not repeat the discussion here. (*See* Dkt. No.
23 4449 at 24-28 (explaining that Cooper and Scarpulla are wrong about the efficacy of the notice
24 program and the claims rate).) As the Special Master correctly explained, "Cooper/Scarpulla offer
25 no compelling reason to reopen the claim period for all claimants"—both because the original notice
26 program was both adequate and effective, and because Objectors' comparison to *LCD* is inapposite
27 on numerous grounds. (*See* Dkt. No. 4445, at 4.)
28

Two new arguments merit a brief response.  Cooper/Scarpulla argue it is "irrelevant" to the claims rate that most class members no longer have their CRT Products because of the age of this case, and because CRT Products are obsolete.  (Dkt. No. 4453 at 2:20-24.)  But their speculative assertion that "all that is required . . . is a few moment's reflection to remember how many CRT televisions and computer monitors were owned during the class period" (*id.* at 3:3-5) is contrary to Lead Counsel's and the Claims Administrator's experience in dealing directly with claimants.  In our experience, claimants had difficulty remembering how many qualifying products they purchased and, accordingly, were hesitant to file claims without being sure.

Cooper/Scarpulla are also wrong to suggest that in assessing the CRT claims response, they're "not at liberty to discuss [the CRT sales data] in any detail" because it was filed in the record under seal. (Dkt. No. 4453 at 3:9-11.)  They can, of course, say anything they want about the CRT sales data contained in Dr. Netz's damages report as long as they file it under seal.

Nor should the Court countenance their improper request to unseal the Netz report.  (*Id.* at 3:22-26.) This information was filed under seal at the request of the Defendants, not Lead Counsel.  If Cooper/Scarpulla believed the Netz report should be unsealed, they should have moved to unseal it long before now.  They failed to do so.  Indeed, they have never raised this issue before now.  They are doing so now in an attempt to create the impression that important information necessary to evaluate the notice program is somehow being withheld from class members.  That is not the case.  The CRT sales data contained in the Netz report will not inform the question of whether the notice program satisfies due process.  Thus, it will be of no benefit to anyone to unseal the Netz report.[4]

## **CONCLUSION**

The Court should overrule the Chunghwa-related Objections and approve Special Master Quinn's plan for resolving these issues, which Lead Counsel intends to implement as promptly as possible upon entry of an appropriate order.

---

[4] Cooper and Scarpulla's final argument is that Lead Counsel alone should bear the costs of additional Chunghwa notice, as opposed to class counsel generally.  As Objectors recognize, however, this argument goes to the allocation of attorneys' fees and is thus premature.  (Dkt. No. 4453 at 4.)  The allocation of attorneys' fees and any objections thereto will be considered by the Special Master at the appropriate time.  (*See* Dkt. No. 4077 at 3-4.)

5

INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S R&R RE CHUNGHWA ALLOCATION ISSUE (DKT. NO. 4445) - Master File No. CV-07-5944-JST


Dated: March 7, 2016

Respectfully submitted,

 /s/ Mario N. Alioto

Mario N. Alioto (56433)
malioto@tatp.com
Joseph M. Patane (72202)
jpatane@tatp.com
Lauren C. Capurro (241151)
laurenrussell@tatp.com
**TRUMP, ALIOTO, TRUMP & PRESCOTT LLP**
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415-346-0679

*Lead Counsel for Indirect Purchaser Plaintiffs*

6

INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO SPECIAL MASTER'S R&R RE CHUNGHWA ALLOCATION ISSUE (DKT. NO. 4445) - Master File No. CV-07-5944-JST