Paul B. Justi (SBN 124727)
LAW OFFICES OF PAUL B. JUSTI
1981 North Broadway, Suite 250
Walnut Creek, CA 94596
Telephone: 925.256.7900
Facsimile: 925.256.9204
Email: pbjusti@comcast.net

Attorney for Class Member and Objector
DAN L. WILLIAMS & CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>All Indirect Purchaser Plaintiffs | Case No.: 3:07-cv-05944-JST<br><br>MDL No.: 1917<br><br>**DAN L. WILLIAMS & CO.'S AMENDED (PER COURT DIRECTIVE) OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATIONS**<br><br>**FILED PURSUANT TO THE COURT'S 3/7/16 ORDER (DKT. 4464) GRANTING DAN L. WILLIAMS & CO.'S MOTION FOR LEAVE TO FILE LATE OBJECTION TO REPORT AND RECOMMENDATIONS** |

DAN L. WILLIAMS & CO.'S AMENDED (PER COURT DIRECTIVE) OBJS. TO R&R- 1

**TABLE OF CONTENTS**

ARGUMENT ………………………………………………………………………………4

    I.     Attorneys' Fees and Related Expenses  ……………………………………4

    II.    The Report Would Release All Missouri Claims (Which Are Actionable Under Missouri Law) Without Compensation  …………………………….6

    III.   The Notice Campaign Is Inadequate ………………………………………8

ADOPTION OF OTHER OBJECTIONS  ……………………………………………………8

CONCLUSION ……………………………………………………………………………9

# TABLE OF AUTHORITIES

CASES                                                                                             PAGE(s)

*In re High-Tech Employees Antitrust Litig.*,
2015 WL 5158730 (N.D. Cal. Sept. 2, 2015)………………………………….....5

*In re Lithium Ion Batteries Antitrust Litig.*,
2014 WL 4955377 (N.D. Cal., Sept. 2, 2014)………………………………………7

*In re TFT-LCD (Flat Panel) Antitrust Litigation,*
Case No. 3:07-MD-1827 SI (N.D. Cal. 2014)…………………………………….....7

*Mazur v. eBay Inc.*,
257 F.R.D. 563 (N.D. Cal. 2014)………………………….......................7

*Redman v. Radioshack,*
768 F.3d 622 (7th Cir. 2014)…………………………………………………...6

*Santillan v. Gonzales,*
388 F. Supp. 2d 1065 (N.D. Cal. 2005)………………………………………..8

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003)…………………………………………………...6

*Willaims v. MGM-Pathe Comm-c'ns Co.,*
129 F.3d 1026 (9th Cir. 1997)…………………………………………………...6


OTHER AUTHORITIES
Ann.manual complex Lit §14.121 (2012 ed.)……………………………………....4

Mo. Rev. Stat. § 407.020……………………………………………………….....7

NEWBERG ON CLASS ACTIONS § 14.6 (4thed)…………………………………4

Class member Dan L. Williams & Co. (Williams), objects to the report and recommendation of the special master filed on January 28, 2016 (Dk 4351).

**ARGUMENT**

I. Attorneys' Fees and Related Expenses

Class Counsel sought a fee of $192.25 million dollars, *i.e.*, 33% of the total settlement fund. The Special Master has recommended a slightly-reduced fee of $173.25 million dollars. This recommended fee still amounts to 30% of what the Special Master has repeatedly noted is the second-largest indirect purchaser antitrust settlement in history. However, the excessive amount of attorneys' fees that private counsel for the plaintiff class is seeking from the settlement fund is not mitigated by the cosmetics of a 10% across-the-board reduction, as the R&R proposes. Even according to the Special Master's calculation, this adjusted sum is still a percentage of the fund award that results in a multiplier of approximately 2.14 on Class Counsel's $81,067,569.20 lodestar.

The Court should apply the "megafund" principle—applied by other federal circuit courts—that in order for class members to benefit from economies of scale, fee awards to class counsel should generally decline when class funds exceed $100 million. 4 NEWBERG ON CLASS ACTIONS § 14.6 (4th ed.) ("Some courts utilize a lower percentage when common funds are very large, finding that a lower percentage sufficiently rewards class counsel in such 'mega-fund' cases."); ANN. MANUAL COMPLEX LIT. §14.121 (2012 ed.) ("in 'mega-cases' in which large settlements or awards serve as the basis for calculating a percentage, courts have often found considerably lower percentages of recovery to be appropriate.") Application of the megafund principle reduces the benchmark percentage that class attorneys may reasonably claim against settlement funds in excess of $100,000,000 to a percentage below the percentage that Class

Counsel seek for this proposed Class Settlement—a sum that is still 5% above the 25% benchmark the Ninth Circuit adopted for *non*-megafund cases. The special master's conclusion that his recommendation is supported by *High-Tech*[1] is not plausible. There, the percentage of the fund was drastically lower (10.5%), so the lodestar multiplier aligned with a sensible aggregate fee for a total fund of $415 million.

The Special Master elected to use a percentage-of-the-fund method to determine appropriate fees for class counsel.  He elected to cross-check this analysis against a lodestar with a multiplier. The Special Master relied almost entirely upon Class Counsel's own declarations in determining that counsel's time was reasonable and reliable.  While the Special Master stated that he spot-checked these declarations by reviewing contemporaneous billing entries, his review was admittedly limited to only 8 of the 50 firms involved.  Thus, for 42 of the class firms, the review went no further than reviewing the firm's own declaration. Further, although recognizing that Lead Counsel appointed an Audit Committee to review Class Counsel's time, the Special Master did not even review the committee's work.  Thus, to the extent the Court decides to buttress its fee award determination with the Special Master's recommended lodestar of $81,067,569.20 (and a multiplier of 2.14), Objector Williams conditionally moves to intervene and for leave to conduct limited discovery, including production of all time records in searchable, electronic format; sufficient time to review and analyze those records; and then sufficient time to depose appropriate counsel; and then to prepare any papers regarding the true reasonableness of the lodestar claimed.  Without at least limited discovery, there is no

---

[1] *In re High-Tech Employees Antitrust Litig.*, 2015 WL 5158730 (N.D. Cal. No.-11-cv-2509, Sept. 2, 2015).

meaningful "cross-check," as nothing is actually checked other than arithmetic applied to an asserted lodestar.

While Class Counsel may—in asserting that the benefit to the class is the full sum being paid by the defendants—argue that "[n]o cy pres distribution is contemplated," it is hard to imagine that all funds will be claimed, or that a pro-rata distribution of unclaimed funds will not result in a windfall—the result being that what is supposedly not contemplated will unavoidably occur. With regard to this issue, we respectfully acknowledge the Ninth Circuit's precedent in *Staton v. Boeing Co.*, 327 F.3d 938, 959–61 (9th Cir. 2003), that allows courts to credit cy pres monies, but urge for en banc and Supreme Court preservation purposes that the contrary rule in *Redman v. RadioShack*, 768 F.3d 622 (7th Cir. 2014) is the more appropriate. We acknowledge the decision in *Williams v. MGM–Pathe Comm-c'ns Co.*, 129 F.3d 1026, 1027 (9th Cir.1997) that permits fee awards based on the total sum available to class members, rather than the sums actually claimed and received, but submit for en banc and Supreme Court preservation purposes that the contrary rule in *Redman* is the more appropriate one.

II. The Report Would Release All Missouri Claims (Which Are Actionable Under Missouri Law) Without Compensation:

The special master's R&R does not solve the point of the objection that the releases included in the Class Settlement are overly broad because the releases (as in the case of the Philips Settlement quoted below) state that the settling defendants will be released of, among other things, all claims:

> arising out of or relating in any way to any act or omission of
> the Philips Releasees (or any of them) concerning the
> manufacture, supply, distribution, sale or pricing of CRT
> Products up to the date of execution of this Agreement,
> including but not limited to any conduct alleged, and causes of
> action asserted or that could have been alleged or asserted, in

DAN L. WILLIAMS & CO.'S AMENDED (PER COURT DIRECTIVE) OBJS. TO R&R- 6

> any class action complaints filed in the Action, including those arising under any federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, or trade practice law.

Philips Settlement Agreement §13 [Dkt. 3862-1]. This language is broad enough to release claims of claimants in states that are not even defined to be part of the class—including claimants who reside in states like Missouri, or those who purchased products in Missouri, but may reside in states included within the class definition, like Williams, a resident of Kansas.

Missouri law provides consumer remedies for price-fixing to its citizens and others who were indirect purchasers of products in Missouri and for which Missouri indirect purchaser claimants recovered in the parallel LCD litigation in the same court. *See In re TFT-LCD (Flat Panel) Antitrust Litigation,* Case No. 3:07-MD-1827 SI (N.D. Cal. 2014). Missouri's Supreme Court has authorized indirect purchasers to maintain actions under Missouri's Merchandising Practices Act. Mo. Rev. Stat. § 407.020 et seq. (Supp. 2010). *See also In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) at * 19.

The fact that these legitimate claims (for purchases made in Missouri) are given up without compensation does not comport with due process and is a formidable taking without just compensation. The payment of claims from the fund is not apportioned by states, so that there seems to have been no logical reason in the first place, and certainly none in retrospect, to insist on a subclass representative for claims from purchases in Missouri. The Settlement Class could simply include all individuals that made qualifying purchases in any state that would allow antitrust relief through state antitrust laws or their counterpart consumer protection statutes. The Court has the power to change the class definition. *Mazur v. eBay Inc.*, 257 F.R.D. 563, 568 (N.D. Cal. 2009). Even if a subclass representative was necessary, the court can divide a class

into subclasses on its own volition. *Santillan v. Gonzales*, 388 F. Supp. 2d 1065, 1072 (N.D. Cal. 2005).

III. The Notice Campaign Is Inadequate:

The notice campaign does not meet the federal standard of "the best practicable notice" pursuant to Federal Rule of Civil Procedure 23. It is telling that although the deadline for disclosure has passed, we still have absolutely no information regarding the actual claims yield. Based upon the assorted problems with the notice campaign, Williams anticipates a claims rate so low as to require the appointment of an independent expert to analyze the results of the notice campaign. The Court should require that the number of claimants (including the number of CRTs per claimant) be disclosed to help determine whether the notice campaign was adequate. Therefore, Objector preserves this objection in anticipation of a low response rate to notification of the existence of this class, particularly among individual claimants and small business.

### ADOPTION OF OTHER OBJECTIONS

The Objectors hereby adopt and incorporate herein all other objections lodged with the Court with regard to the proposed settlement, to the extent such objections are consistent with Williams' previously raised objections.

///

///

///

///

///

///

///

DAN L. WILLIAMS & CO.'S AMENDED (PER COURT DIRECTIVE) OBJS. TO R&R- 8

CONCLUSION

The Court should not approve the settlement as proposed and should require that any final settlement remedy the shortcomings identified above.

DATED: March 4, 2016.

                Respectfully submitted,

                LAW OFFICES OF PAUL B. JUSTI

                /s/ Paul B. Justi_____
                Paul B. Justi
                *Counsel for Objector Dan L. Williams & Co.*