1    **Robert J. Bonsignore, Esq.**
     **BONSIGNORE TRIAL LAWYERS, PLLC**
2    **3771 Meadowcrest Drive**
     **Las Vegas, NV 89121**
3    **Phone: 781-856-7650**
     **Facsimile: 702-852-5726**
4    **Email: rbonsignore@classactions.us**

5    *Counsel for Indirect Purchaser Plaintiffs*

6

7

8                      **UNITED STATES DISTRICT COURT**
9
                       **NORTHERN DISTRICT OF CALIFORNIA**
10
                          **SAN FRANCISCO DIVISION**
11

| | |
|---|---|
| 12   **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Case No. 3:07-cv-5944 MDL No. 1917 |
| 13 | **CLASS ACTION** |
| 14   This Document Relates to: | **OBJECTION TO SPECIAL MASTER'S CORRECTED SUPPLEMENTAL REPORT AND RECOMMENDATION RE CHUNGHWA** |
| 15   All Indirect Purchaser Actions | **ALLOCATION ISSUE IN CONNECTION WITH INDIRECT PURCHASER PLAINTIFS' SETTLEMENT** |
| 16 | |
| 17 | |
| 18 | Hearing Date: March 15, 2016 |
| 19 | Time Set: 2:00 p.m. Judge:  Honorable John S. Tigar |
| 20 | Courtroom: 9, 19th Floor Special Master: Martin Quinn, JAMS |
| 21 | |

22

23

24

25

26

27

28

1

2

**Table of Contents**

3

Page(s)

4

STANDARD OF REVIEW ................................................................................................. 1

5

INTRODUCTION.............................................................................................................. 2

6

FACTUAL BACKGROUND ............................................................................................. 2

7

OBJECTION 1

8

THE SPECIAL MASTER ERRED IN FINDING THAT LEAD COUNSEL
COULD CORRECT THE DUE PROCESS VIOLATIONS HE COMMITTED

9

BY DEVISING A RE-NOTICE AND REALLOCATION PLAN .................................................. 4

10

OBJECTION 2

11

THE SPECIAL MASTER ERRED IN FINDING THAT
LEAD COUNSEL'S REALLOCATION PROPOSAL WHICH ALTERS

12

THE CHUNGHWA DISTRIBUTION TERMS WAS ACCEPTABLE ....................................... 6

13

OBJECTION 3

14

THE SPECIAL MASTER ERRED IN FINDING THAT REOPENING THE
CLAIMS PERIOD ONLY FOR RESELLERS WAS ADEQUATE AND FAIR ..........................

15

OBJECTION 4

16

THE SPECIAL MASTER ERRED IN FINDING THAT THE VAGUE AND
AMBIGUOUS RE-NOTICE PLAN DEVISED BY LEAD COUNSEL

17

SATISFIED THE FEDERAL RULES OF CIVIL PROCEDURE ................................................

18

OBJECTION 5

19

THE SPECIAL MASTER'S IMPOSITION OF THE INCREASED COSTS
DUE TO LEAD COUNSEL'S DUE PROCESS VIOLATIONS UPON

20

ALL ATTORNEYS WAS IMPROPER ...................................................................................

21

22

23

CONCLUSION ....................................................................................................................

24

25

26

27

28

**Table of Authorities**

**Case**                                                                                                  **Page**

*Campbell v. Hope Community Credit U.*, No. 10–2649–STA, 2012 WL 2395180
(W.D. Tenn. June 25, 2012) ............................................................................................. 4

*Crown, Cork Seal Company, Inc v. Parker*, 462 U.S. 345 (1983) ................................................ 8

*Hajro v. U.S. Citizenship & Immigration Servs.*, 900 F. Supp. 2d 1034
(N.D. Cal.2012) ............................................................................................................... 12

*Henson v. Fid. Nat. Fin. Inc.*, No. 2:14-CV-01240-ODW, 2014 WL 1246222
(C.D. Cal. Mar. 21, 2014) ............................................................................................... 8

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir.), *cert. denied*, 562 U.S. 1003 (2010).................... 3

*In re Avon Securities Litigation*, No. 91 CIV. 2287(LMM), 1998 WL 834366
(S.D.N.Y. Nov. 30, 1998) ................................................................................................ 4

*Kayes v. Pac. Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995) ............................................................. 8, 9

Statutes and Rules

ABA Model Rule 1.5, comment 5 ................................................................................................ 12

California Rules of Professional Conduct 3-500.......................................................................... 4

California Rules of Professional Conduct 3-510.......................................................................... 4

Fed. R. Civ. P. 23 ...................................................................................................................... 8, 9

Fed. R. Civ. P. 53 ...................................................................................................................... 1

Other Authority

*Manual for Complex Litigation (Third)*, § 30.16 ....................................................................... 4

1    Class members and indirect purchasers of Cathode Ray Tubes, Anthony Gianasca, Gloria

2    Comeaux, Mina Ashkannejhad individually and/or as Administrator of the Estate of the Late R.

3    Deryl Edwards, Jr., Jeffrey Speaect, Rosemary Ciccone and Jeff Craig, (the "Excluded Plaintiffs")

4    by and through their counsel Bonsignore Trial Lawyers, PLLC, pursuant to Fed. R. Civ. P. 53(f)(2)

5    and this Court's orders (*See* Doc. Nos. 4286, 4298), file this Objection ("Objection") to Special

6    Master Martin Quinn's Corrected and Supplemental Report and Recommendation Re Chunghwa

7    Allocation Issue in connection with Indirect Purchaser Plaintiffs' Settlement (the "Chunghwa

8    Report") (Doc. No. 4443).  In support hereof, the Excluded Plaintiffs state as follows:

9        The Excluded Plaintiffs object to the Report on multiple grounds and request de novo

10   review.  To avoid repetition to the greatest degree possible, rather than repeat argument, the

11   Excluded Plaintiffs join and incorporate by reference the objections to the Report filed by the other

12   objectors and the filing of the Massachusetts Attorney General to the extent they supplement and

13   do not conflict with the arguments herein.  In addition, the Excluded Plaintiffs incorporate by

14   reference their Objection to the Master's Final Approval Report (Doc. No. 4440), to the extent it

15   addresses the Chunghwa-related issues as well as the fatal conflicts of interest possessed by Lead

16   Counsel Mario Alioto and his firm which dictate the wholesale rejection of the settlement

17   agreement at issue.

18                              **STANDARD OF REVIEW**

19       On January 13, 2016, this Court ordered that objections to the Master's factual findings and

20   legal conclusions will be reviewed de novo.  *See* Doc. No. 4298 at 3.  Federal Rules of Civil

21   Procedure 53(f) also provides that a court must review the factual findings and legal conclusions of

22   a special master *de novo* absent stipulation to the contrary.  *See* Fed. R. Civ. P. 53(f)(3)-(4).  The

23   Court must "give the parties notice and an opportunity to be heard" and "may receive evidence;

24   and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with

25   instructions."  Fed. R. Civ. P. 53(f)(1).

26       Here, the Excluded Plaintiffs object to the Special Master's Report and certain of his

27   factual findings and legal conclusions and request, pursuant to the Amended Order Appointing

28

OBJECTION TO SPECIAL MASTER'S CORRECTED AND SUPPLEMENTAL REPORT AND RECOMMENDATION RE CHUNGHWA
ALLOCATION ISSUE IN CONNECTION WITH INDIRECT PURCHASER PLAINTIFFS' SETTLEMENT
Case No. 3:07-cv-5944, MDL No. 1917

1  Special Master Quinn, de novo review by this Court.  *See* Doc. No. 4298 at 3.

2  **INTRODUCTION**

3  In his Report and Recommendation regarding Final Approval of the IPP settlement (the

4  "Final Approval Report") (Doc. No. 4351), the Special Master correctly found that the allocation

5  plan proposed by Lead Counsel violated due process.  In that settlement (the "IPP Settlement

6  Agreement"), Lead Counsel once again demonstrated his willingness to sacrifice the rights of any

7  class member that stood in the way of his lucrative settlement package obtained from the

8  Defendants.  Similar to his abandonment of the Excluded Plaintiffs' undeniably valid monetary

9  damages claims, Lead Counsel impermissibly disregarded entirely certain class members' claims

10  to a portion of the settlement proceeds received from defendant Chunghwa Picture Tubes, Ltd.

11  ("Chunghwa") that he himself previously negotiated on their behalf.  Lead Counsel sought and

12  received court approval of that settlement agreement and sent those class members notice

13  informing them of their entitlement to settlement proceeds.  Years later, when their claims became

14  inconvenient, Lead Counsel simply chose to abandon them.  The ease with which he could have

15  provided for the proper distribution to them in the Settlement Agreement is undeniable.  Indeed,

16  the Defendants themselves were open to "tweaking" the Agreement.  Nevertheless, Lead Counsel

17  chose instead to engage in a fruitless effort to dispose of the claims through a twisted reading of

18  the notice he himself advocated and the characterization of their claims as de minimus.  As the

19  Master stated in his Final Approval Report, "due process is due process," and due process here

20  dictates not the re-noticing and re-allocation band-aids endorsed by the Master, but the wholesale

21  rejection of the IPP Settlement Agreement.  Final Approval Report at 45.

22  **FACTUAL BACKGROUND**

23  Prior to reaching the IPP Settlement Agreement with the Defendants,[1] Lead Counsel

24  negotiated a settlement with defendant Chunghwa that provided for the creation of a $10 million

25  settlement fund (the "Chunghwa Settlement").  That Settlement defined the "Net Settlement

26

27  [1] The Defendants included in the IPP Settlement Agreement are Philips, Panasonic, Hitachi, Toshiba, Samsung, SDI, Thompson and TDA (the "Defendants").

28

OBJECTION TO SPECIAL MASTER'S CORRECTED AND SUPPLEMENTAL REPORT AND RECOMMENDATION RE CHUNGHWA ALLOCATION ISSUE IN CONNECTION WITH INDIRECT PURCHASER PLAINTIFFS' SETTLEMENT
Case No. 3:07-cv-5944, MDL No. 1917

1  Fund," which was to be distributed to qualifying class members, as "the $10,000,000 settlement

2  amount, plus interest, minus 25% for attorneys' fees, reimbursement of expenses, $2.5 million for

3  costs set-aside, including the costs of giving notice to class members and administration of the

4  settlement fund, all of which shall be subject to court approval." *See* Doc. No. 993, at 4 n.2.  It

5  further required that "[t]he Net Settlement Fund shall be no less than $5 million." *Id.*  The IPP

6  Settlement Agreement includes the Net Settlement Fund within its plan of distribution and

7  allocates it the same as the funds received from the Defendants.  However, the Chunghwa

8  Settlement and the IPP Settlement Agreement differ in two key respects.  First, the agreements

9  bind and benefit different classes of indirect purchasers.  The IPP Settlement Agreement defines its

10 classes as including indirect purchasers of CRT products bought only "for their own use and not

11 for resale." *See* Report at 43.  This directly conflicts with the terms of the Chunghwa Agreement,

12 which includes payment terms for all indirect purchasers, including both end-users and resellers.

13 *See* Doc. No. 884-1 at Ex. 1, ¶ 1.  The court-approved notice published for the Chunghwa

14 Settlement explicitly stated that "[b]oth consumers and resellers are included in the Settlement

15 Class." *See* Doc. No. 1063, Ex. B; *see also* Doc. No. 1105, ¶ 6.  Also, the Chunghwa Settlement

16 includes Illinois and Oregon in its damages distribution which are not included in the IPP

17 Settlement Agreement's state damages class.  *See* Doc. No. 993, ¶ 10.

18        Second, the method of dividing up the settlement funds is defined differently.  The IPP

19 Settlement Agreement's plan of distribution provides for a pro-rata division by claim; whereas

20 under the court-approved Chunghwa plan,

21        [e]ach State listed in the operative complaint for which damage claims are being
         asserted, plus the states of Illinois and Oregon, shall receive a pro rata share of the
22       Net Settlement Fund.  Each state's pro rata share shall be determined by computing
         its population as a percentage of the total population of all states.
23

24 *See* Doc. No. 993 at ¶ 10.  The court-approved notice explicitly stated this. *See* Doc. No. 1063 at 4.

25        Thus, as the Master correctly found, approval of the IPP Settlement Agreement would have

26 the following results, all of which directly violate the terms of the Chunghwa Settlement as well as

27 the notice provided to the beneficiaries of that Settlement:

28

OBJECTION TO SPECIAL MASTER'S CORRECTED AND SUPPLEMENTAL REPORT AND RECOMMENDATION RE CHUNGHWA
ALLOCATION ISSUE IN CONNECTION WITH INDIRECT PURCHASER PLAINTIFFS' SETTLEMENT
Case No. 3:07-cv-5944, MDL No. 1917

- Resellers of CRT products who released all their rights against Chunghwa in exchange for the right to share in the Net Settlement Fund will receive nothing.

- All indirect purchasers, both consumers and resellers, in Illinois and Oregon will receive nothing.

- For those Chunghwa Class members lucky enough to qualify for damages under the IPP Settlement Agreement, their bargained-for state-based pro rata share in the Net Settlement Fund will be discarded and a new pro-rata by total claims rate of compensation imposed.

The Special Master additionally found that any carve out of the Net Settlement Fund from the Settlement Agreement proceeds would "not address the problem that the current settlement class will be shortchanged" by any such carve out.  Final Approval Report at 45.  Moreover, any alteration to the allocation of the IPP Settlement Agreement proceeds, including the Net Settlement Fund, would violate the notice provided to the current class.  Nevertheless, the Master subsequently issued a report and recommendation endorsing just such a carve out.

Despite his finding that Lead Counsel had violated the due process rights of the Chunghwa Class, the Master failed to invalidate the IPP Settlement Agreement and adopted in large part Lead Counsel's proposed reallocation of that Settlement Agreement's proceeds and re-noticing of certain parties.  As demonstrated below, the Chunghwa Report should be rejected to the extent it endorsed any of Lead Counsel's proposals.

## OBJECTION 1

**THE SPECIAL MASTER ERRED IN FINDING THAT LEAD COUNSEL COULD CORRECT THE DUE PROCESS VIOLATIONS HE COMMITTED BY DEVISING A RE-NOTICE AND REALLOCATION PLAN**

In addition to his abandonment of the Excluded Plaintiffs in the IPP Settlement Agreement, Lead Counsel similarly disregarded certain claims to a portion of the settlement proceeds that he himself previously negotiated from defendant Chunghwa, noticed and sought court approval.  His failure to provide for the proper distribution of that portion of the IPP Settlement Agreement's funds renders its distribution plan defective and the proposed notice inaccurate.  In his Final Approval Report, the Special Master correctly found that the IPP Settlement Agreement's plan of allocation violated due process.  *See* Final Approval Report at 44.  Yet, as detailed in the Excluded

1   Plaintiffs' Objection to the Final Approval Report (Doc. No. 4440), he then committed legal error

2   in that Report by concluding that Lead Counsel could correct the defects in the IPP Settlement

3   Agreement, and ultimately approved a reallocation plan and re-notice.  (Doc. No. 4351).  The

4   complete abandonment of the Chunghwa Class is further evidence of Lead Counsel's willingness

5   to do whatever it took to secure his proposed lucrative Settlement Agreement with the Defendants.

6   Lead Counsel's breach of fiduciary duty and conflicts of interest, and the violations of due process

7   they have created, dictate the wholesale rejection of the Agreement.  In the alternative, the

8   Excluded Plaintiffs request this Court order: 1) the Chunghwa and Excluded Plaintiffs from

9   Massachusetts, Missouri, and New Hampshire be included in the monetary recovery distribution;

10  2) re-notice; 3) the claim period be extended.

11         "Class representation is inadequate if the named plaintiff fails to prosecute the action

12  vigorously on behalf of the entire class or has an insurmountable conflict of interest with other

13  class members." *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir.), *cert. denied*, 562 U.S. 1003

14  (2010).  Indeed, "a settlement that offers considerably more value to one class of plaintiffs than to

15  another may be trading the claims of the latter group away in order to enrich the former group." *In*

16  *re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 797 (3d

17  Cir.) (setting aside settlement not meeting adequacy of representation standards), *cert. denied*, 516

18  U.S. 824 (1995).

19         "The responsibility of class counsel to absent class members whose control over their

20  attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Kayes v.*

21  *Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) (citation omitted); *see also General Motors*,

22  55 F.3d at 801 (representation inadequate under Rule 23(a)(4) due to "conspicuous evidence of . . .

23  an intra-class conflict in the very terms of this settlement").  Lead Counsel in a nationwide class

24  action is obligated to represent the interests of all class plaintiffs, including the unnamed plaintiffs,

25  in every state encompassed within the class he or she has agreed to represent.  *See Radcliffe v.*

26  *Experian Info. Sols. Inc.*, 715 F.3d 1157 (9th Cir. 2013).  As such, it was Lead Counsel's duty here

27  to vigorously protect and pursue all class members' claims, including those of the abandoned

28

1   Chunghwa Class, the Excluded Plaintiffs and the similarly situated absent class members. *See*

2   *Hesse*, 598 F.3d at 589.

3         When evaluating a settlement class, "[c]ourts must be alert for "more subtle signs that class

4   counsel have allowed pursuit of their own self-interests and that of certain class members to infect

5   the negotiations." *Id.* at 947.  Although the benefits of allowing settlement classes are well-

6   documented, "their use has not been problem-free, provoking a barrage of criticism that the device

7   is a vehicle for collusive settlements that primarily serve the interests of defendants—by granting

8   expansive protection from law suits—and of plaintiffs' counsel—by generating large fees gladly

9   paid by defendants as a quid pro quo for finally disposing of many troublesome claims." *Fuel*

10  *Tank Products Liab. Litig.*, 55 F.3d 7at 778 (disparity in treatment of settlement classes implicated

11  adequacy of counsel and approval rejected).  The IPP Settlement Agreement is the result of these

12  feared abuses and must be rejected.  Lead Counsel violated his duties and obligations to the

13  abandoned Chunghwa Class members, the Excluded Plaintiffs and the similarly situated absent

14  class members by deserting them and their claims and rights in favor of the IPP Settlement

15  Agreement's favored state damages class.

16        The willful choice of excluding monetary recovery to those entitled to it under the law and

17  the Chunghwa Settlement, and only begrudgingly attempting to address it when directed by the

18  Master, created an obvious and irreparable conflict between Lead Counsel and yet another group

19  of absent class members.  The impermissible conflicts of interests that infected the allocation plan

20  extend to each part of the IPP Settlement Agreement and cannot be remedied.  The due process

21  violations and fiduciary duty breaches committed by Lead Counsel dictate a wholesale rejection of

22  that Agreement.

23                                    **OBJECTION 2**

24                    **THE SPECIAL MASTER ERRED IN FINDING THAT**
                    **LEAD COUNSEL'S REALLOCATION PROPOSAL WHICH ALTERS**
25                  **THE CHUNGHWA DISTRIBUTION TERMS WAS ACCEPTABLE**

26        The Master approved Lead Counsel's reallocation plan which indisputably altered the

27  terms of the Chunghwa Settlement.  *See* Chunghwa Report at 3.  The Chunghwa Settlement plan

28
                                          6

1    provided for (i) the division of the Chunghwa Net Settlement Fund among 24 states by population

2    and (ii) the pro-rata distribution of each state's share to all claimants, both resellers and end users.

3    Lead Counsel's reallocation plan calls for a 50-50 split of the Fund between resellers and end

4    users, as well as the limitation on reseller claims to three times their provable damages and a

5    windfall to end users, who would still split their pot on a pro rata basis, of any excess funds

6    remaining in the reseller pot after that now limited distribution.  The Master endorsed this

7    approach despite admitting that there was no rationale behind it or any empirical support submitted

8    by Lead Counsel whatsoever.  Chunghwa Report at 7.

9           In addition, the Master erroneously characterized the distribution as essentially being

10   "precisely in accordance with the approved Chunghwa settlement terms," brushing the above-cited

11   differences aside as a tiny single exception.  *See id.* at 3.  The complete alteration of the division of

12   the Fund is not a small exception.  Also, the Master ignores that such alteration will result in the

13   differential treatment of the Illinois and Oregon classes from the other state classes, a difference

14   that did not exist in the Chunghwa Settlement.  As proposed, the windfall received by end users of

15   any remaining funds in the reseller pot will not be shared with Illinois or Oregon claimants and

16   others.  Thus, their rights are also altered by Lead Counsel's arbitrary proposal.

17          It is hard to imagine the rationale behind Lead Counsel's and the Master's choice to deviate

18   from the plain, straightforward allocation plan that was specifically negotiated and court-approved

19   during the Chunghwa Settlement.  The Chunghwa reseller class and the Illinois and Oregon classes

20   were specifically promised that planned allocation in exchange for the release of their rights and

21   such plan should have been followed.  The Master's closing comment that the split has the added

22   benefit to end users of preventing the Chunghwa settlement pool from being overwhelmed by large

23   reseller claims is irrelevant and cannot justify the stripping away of rights owed to resellers.  *See*

24   *id.* at 7.  The new allocation plan simply was not the bargained for exchange for resellers and the

25   Illinois and Oregon classes or court-approved.  The liberty taken to rewrite that settlement

26   agreement should not be permitted.

27                                         **OBJECTION 3**

28

**THE SPECIAL MASTER ERRED IN FINDING THAT REOPENING THE CLAIMS PERIOD ONLY FOR RESELLERS WAS ADEQUATE AND FAIR**

The Master adopted Lead Counsel's proposal that the claims period be reopened for 120 days solely for resellers and specifically refused to similarly open that period for end users. *See* Chunghwa Report at 4. The Master found that significant cost and delay would be incurred by giving end users the opportunity to submit their claims. *Id.* That finding was erroneous, arbitrary, and capricious. It needlessly harms consumers who were subject to unlawful conduct and suffered economic harm.

Because the time period for the submission of end user claims would run concurrently with that of the resellers, no delay would result at all. In addition, the Master and Lead Counsel appear to have lost sight of the ultimate goal of this litigation and settlement:  to recompense individuals and entities who were victims of the Defendants' anti-competitive actions. In light of that goal, the reopening of the claim period presents the ideal opportunity to address the low level of claims presented. The claims rate is unacceptable low and the Objectors were denied access to information that would have allowed them to obtain data that would have facilitated a precise dissection of the Notice and Claims Rate. Lead Counsel concedes in his letter brief to the Master regarding his reallocation plan that "a substantially longer claims period is likely to yield more claims." Alioto Letter to Master, dated Feb. 23, 2016, filed on JAMS, at 2 n.1. In turn, providing an additional claims period for end users is likely to yield more claims. Moreover, the time period for California residents has already been extended, thereby negating arguments based upon delay. Finally, reopening the claims period also provides the opportunity to address Lead Counsel's failure to include the Excluded Plaintiffs and the other class members from the Excluded states of Massachusetts, Missouri and New Hampshire to allow them to participate in the settlement as is their right.

**OBJECTION 4**

**THE SPECIAL MASTER ERRED IN FINDING THAT
THE VAGUE AND AMBIGUOUS RE-NOTICE PLAN DEVISED
BY LEAD COUNSEL SATISFIED THE FEDERAL RULES OF CIVIL PROCEDURE**

1    It is beyond dispute that Lead Counsel's reallocation plan will change the terms of both the

2    Chunghwa Settlement and the IPP Settlement Agreement.  Changes to the allocation plan require

3    notice. To accomplish that, Lead Counsel proposed that notice to resellers be given through email

4    and regular mail, a press release, the settlement website and printed materials.  With respect to

5    Chunghwa end users and the IPP Settlement Agreement end users, Lead Counsel proposed that

6    only the settlement website and email notice to approved claimants be used.  While conceding that

7    re-notice is required, Lead Counsel failed to submit any proposed content or any supporting

8    declarations or evidence regarding the adequacy and reach of his notice plan.  As such, the

9    Master's endorsement of that "plan" was in error.

10    First, the notice plan is fatally vague and imprecise.  Lead Counsel failed to provide

11    specifics on the notice content or the particular outlets to be employed within either category, such

12    as "press releases."  Without supporting declarations, it was impossible for the Master to evaluate

13    the reach and effectiveness of the proposed notice, and his approval of the plan subject to review

14    of the notice content was thus improper.  The fact that this is a re-notice plan does not relax any of

15    the strict notice requirements for it to be valid under due process or the Federal Rules.  The

16    showing on this notice "plan" was bare-boned and the Master's approval erroneous.

17    Second, the Master did not provide for the opportunity to object to the evidence that it

18    ordered Lead Counsel to produce regarding the reach of the plan; rather he only permitted

19    objection to the form of the notice, limiting that objection to the Cooper & Kirkham, P.C. firm as

20    purportedly the only objecting counsel.  *See* Chunghwa Report at 5.  Counsel for the Excluded

21    Plaintiffs indeed filed an objection to Lead Counsel's proposal and should have been included in

22    the Master's grant of permission to object.  *See* Joinder to All Objections Chunghwa Submissions

23    and Submission, dated Feb. 12, 2016, filed on JAMS.  The objections permitted should also

24    include objections to targets and reach since no supporting evidence has previously been submitted

25    analyze and evaluate by other counsel.

26    Third, to the extent possible to discern the parameters of the propose notice, Lead Counsel

27    apparently intend to leave the resellers in Illinois and Oregon out.  *See* Fed. 7, 2016 JAMS Letter

28

OBJECTION TO SPECIAL MASTER'S CORRECTED AND SUPPLEMENTAL REPORT AND RECOMMENDATION RE CHUNGHWA
ALLOCATION ISSUE IN CONNECTION WITH INDIRECT PURCHASER PLAINTIFFS' SETTLEMENT
Case No. 3:07-cv-5944, MDL No. 1917

1    at 2 (notice targets resellers in "22 states").  With respect to end users, Lead Counsel improperly

2    conflates the Chunghwa end users with the IPP Settlement class members.  *See id.* at 4

3    ("Practically speaking, these end-user class members are one and the same.")  Once again, he

4    ignores the end users in Illinois and Oregon who are not part of the money damages class in the

5    IPP Settlement.  He fails to specify whether those class members will receive direct notice of the

6    changes in their allocation.  Potentially, his proposal is to send notice only to end-users who

7    submitted valid claims in connection with the IPP Settlement, which ignores that no claims would

8    be filed by end users in the two states as they do not share in the IPP Settlement fund.

9
                                              **OBJECTION 5**
10

11   **THE SPECIAL MASTER'S IMPOSITION OF THE INCREASED COSTS DUE TO LEAD
     COUNSEL'S DUE PROCESS VIOLATIONS UPON ALL ATTORNEYS WAS IMPROPER**

12           The Special Master properly found that the increased costs of notice and administration

13   caused by Lead Counsel's failure to protect the rights of the Chunghwa class members and

14   violations of due process he otherwise committed should not be borne by the class.  Chunghwa

15   Report at 6.  However, he improperly shifted those costs to all attorneys in this case, ordering that

16   they should be penalized for Lead Counsel's actions and that the costs be deducted from the total

17   attorney fee award rather than Lead Counsel's award alone.  That was in error.

18           To justify requiring all counsel to bear the burden of Lead Counsel's breach of fiduciary

19   duty, the Master found that there was "no evidence that it was anything other than an error or

20   oversight" by Lead Counsel.  *See id.* at 6.  To accept that finding, one would need to accept that

21   Lead Counsel inadvertently and understandably forgot about the claims of the resellers and Illinois

22   and Oregon class members to the Chunghwa Net Settlement Fund.  That fact is directly

23   contradicted by Lead Counsel's filings that actually defended his choice to disregard those claims.

24   Particularly troublesome is the fact that even in the face of the Defendants' expressed willingness

25   to "tweak" the IPP Settlement Agreement to respect the Chunghwa Settlement, Lead Counsel

26   continued to advocate the approach that ignored them altogether.  *See* Rough Transcript of Jan. 5,

27   2016 hearing before Special Master ("Hr'g Tr.") at 133:10-14 (noting Defendants' willingness to

28
                                                   10
     OBJECTION TO SPECIAL MASTER'S CORRECTED AND SUPPLEMENTAL REPORT AND RECOMMENDATION RE CHUNGHWA
     ALLOCATION ISSUE IN CONNECTION WITH INDIRECT PURCHASER PLAINTIFFS' SETTLEMENT
     Case No. 3:07-cv-5944, MDL No. 1917

1    "tweak" plan); *see also* Hearing Tr. at 30:13-16.

2         Lead Counsel's actions were not a mere oversight, and the costs of his choice to pursue a

3    path that was in blatant disregard for the rights of the very class members he was to be protecting

4    should not be borne by other counsel, many of whom objected to his actions.  The Special

5    Master's recommendation should therefore be rejected.[2]

6                                          **CONCLUSION**

7         For the foregoing reasons, the Plaintiffs request that this Court reject the Special Master's

8    Chunghwa Report and reject the proposed reallocation plan and notice plan as detailed in the

9    foregoing objections, and approve the Master's findings to the extent that it absolved the class

10   members from responsibility for the increased costs of administration and notice due to Lead

11   Counsel's due process violations and apportioned litigation costs between the Chunghwa

12   Settlement and the IPP Settlement pro rata, and further order:

13        1.   Monetary compensation, re-notice and an extension of the claims period for the
               entire Chunghwa Settlement Class, and the Excluded Massachusetts, Missouri and
14             New Hampshire Settlement Classes;

15        2.   Re-notice and an extension of the claims period for the entire "Economic Recovery
               Class" using an experienced and qualified claims administrator and a notice plan
16             that satisfies the Federal Judicial Center's criteria and otherwise addresses the
               deficiencies raised by the objecting class members, including the Excluded
17             Plaintiffs and Class Counsel; *See*
               http://www.fjc.gov/public/home.nsf/autoframe?openform&url_l=/public/home.nsf/i
18             navgeneral?openpage&url_r=/public/home.nsf/pages/376

19

20        3.   Allow objection by the Excluded Plaintiffs to the content and form of any notice
               proposed by Lead Counsel;

21
          4.   Attorney fees and costs for the Excluded Plaintiffs because their good faith
22             objection has brought about a benefit to the class.

23   and grant such further and other relief as this Court deems just and proper.

24

25   _____

     [2] Lead Counsel's attempt to impose one third of the costs of the total litigation expenses in the
26   MDL upon the Chunghwa class members, an amount completely disproportionate to the recovery
     secured for them verses the IPP Settlement class, is another example of his utter disregard of that
27   class.  The Special Master's holding that a pro rata apportionment should be performed should be
     upheld.  *See* Chunghwa Report at 7.
28
                                               11

     OBJECTION TO SPECIAL MASTER'S CORRECTED AND SUPPLEMENTAL REPORT AND RECOMMENDATION RE CHUNGHWA
     ALLOCATION ISSUE IN CONNECTION WITH INDIRECT PURCHASER PLAINTIFFS' SETTLEMENT
     Case No. 3:07-cv-5944, MDL No. 1917

1

2    Dated:  March 8, 2016                              Robert J. Bonsignore

3                                                       /s/ Robert J. Bonsignore
                                                        Robert J. Bonsignore (NH No. 21241)
4                                                       Bonsignore Trial Lawyers, PLLC
                                                        3771 Meadowcrest Drive
5                                                       Las Vegas, NV 89121
                                                        Telephone:  (781) 856-7650
6                                                       Facsimile: (702) 852-5726
                                                        rbonsignore@class-actions.us
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                              12

1

## CERTIFICATE OF SERVICE

2

3

    I, Robert J. Bonsignore, hereby certify that on this 8th of March, 2016, I caused the

4

foregoing to be electronically filed with the Clerk of the Court by using the Case

5

Management/Electronic Case Filing (CM/ECF) system, which will send a notice of electronic

6

filing to all parties registered with the CM/ECF system in the above-captioned matter.  A copy will

7

be forwarded via first class mail, postage prepaid, to those parties not electronically registered.

8

9

                                        */s/ Robert J. Bonsignore*
                                        Robert J. Bonsignore

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OBJECTION TO SPECIAL MASTER'S CORRECTED AND SUPPLEMENTAL REPORT AND RECOMMENDATION RE CHUNGHWA
ALLOCATION ISSUE IN CONNECTION WITH INDIRECT PURCHASER PLAINTIFFS' SETTLEMENT
Case No. 3:07-cv-5944, MDL No. 1917