UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: LITHIUM ION BATTERIES ANTITRUST LITIGATION**<br><br>This Order Relates to:<br><br>**All Direct and Indirect Purchaser Actions** | Case No.: 13-MD-2420 YGR<br><br>**ORDER DENYING TOSHIBA CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON WITHDRAWAL**<br><br>Re: Dkt. No. 735 |

On June 30, 2015, defendant Toshiba Corporation ("Toshiba") moved for summary judgment, arguing plaintiffs' claims are time-barred because Toshiba withdrew from any conspiracy by no later than 2004. (Dkt. No. 735.) Having carefully considered the papers submitted, the record in this case, and the arguments of counsel, and good cause shown, the Court **DENIES** the motion.

## I. BACKGROUND

This multidistrict litigation stems from allegations of a multi-year conspiracy, extending back to 2002, among Japanese and Korean corporations and their U.S. subsidiaries to fix the prices of lithium ion battery cells, the chemical core of rechargeable batteries found ubiquitously in consumer electronics products. Toshiba was purportedly a member of the conspiracy, and at the hearing appeared to stipulate to membership solely for purposes of resolving the instant motion. However, Toshiba asserts it withdrew from any conspiracy by the end of 2004 through the sale of its lithium ion cell manufacturing business.

Two groups of plaintiffs, denominated the direct purchaser plaintiffs ("DPPs") and indirect purchaser plaintiffs ("IPPs") (collectively, "plaintiffs"), seek to represent putative classes of persons, businesses, and, in the case of the IPPs, municipal and regional governments injured by the alleged overcharge. The DPPs sue for both injunctive relief and money damages under the

federal antitrust laws, and seek to represent classes of purchasers who bought certain lithium ion batteries and products containing them for purposes of resale. (Dkt. No. 1038 at vii.) The IPPs, by contrast, sue for injunctive relief under federal antitrust law, but seek money damages under state antitrust and consumer protection laws. The IPPs seek to represent classes of purchasers who bought certain lithium ion battery products and replacement batteries for their own use. (Dkt. No. 1036 at 1.) The Court has previously detailed the allegations. (Dkt. No. 512.)[1] Thus, the Court now summarizes the facts relevant to resolution of the instant motion.

On July 15, 2003, Toshiba met with alleged co-conspirator LG Chem to discuss a sale of Toshiba's lithium ion battery business. (SMF, Issue 1, Fact 6.)[2] On July 22, 2003, LG Chem sent a letter to Toshiba expressing its "great interest in acquiring the whole battery business [of] Toshiba Corporation as you proposed." (*Id.*, Issue 1, Fact 7.)

However, by December 2003, Toshiba instead reached an agreement with alleged co-conspirator Sanyo for the sale of Toshiba's cylindrical and electrode battery cell manufacturing equipment located at A&T Battery. (*Id.*, Issue 1, Fact 8.) On January 27, 2004, Toshiba's management approved the plan to transfer the equipment to Sanyo in June 2004. (*Id.*, Issue 1, Fact 10.) That same day, Toshiba notified the Tokyo Stock Exchange that it would "terminate its lithium-ion rechargeable battery business by December 2004" and "dissolve its subsidiary company A&T Battery Co., Ltd." (*Id.*, Issue 1, Fact 11.) The announcement was widely reported around the world and Toshiba likewise informed various customers, suppliers, and government agencies. (*Id.*, Issue 1, Facts 12-13.)

After announcing its plans to sell the business, Toshiba contacted alleged co-conspirators Sony and LG Chem to ascertain whether they could supply batteries to Toshiba's existing customers going forward. (*Id.*, Issue 1, Fact 14.) Toshiba also entered into discussions with at

---

[1] Subsequent consolidated complaints have been filed generally alleging the same conspiracy.

[2] "SMF" refers to the parties' chart of facts, including undisputed material facts, as reflected in Docket Number 957-1. Unless otherwise noted, the references to the material facts include the underlying evidence referenced by either party in support of the fact.

least one alleged conspirator regarding the sale of Toshiba's remaining battery cell manufacturing equipment. (*Id.*, Issue 1, Fact 15.) On July 1, 2004, Toshiba instead reached an agreement with Sojitz Machinery for the sale of that manufacturing equipment. (*Id.*, Issue 1, Fact 16.)

On July 22, 2004, Toshiba executed the previously contemplated asset transfer agreement with Sanyo. (*Id.*, Issue 1, Fact 17.) Toshiba discarded certain cell manufacturing equipment that Sanyo and Sojitz ultimately did not agree to purchase. (*Id.*, Issue 1, Fact 18.)

After selling its battery business, Toshiba remained a member of the trade group Battery Association of Japan (SMF, Add'l Fact 56), although Toshiba apparently withdrew from the Small Size Secondary Batteries Committee in September 2004 (Dkt. No. 993, Declaration of J. Frank Hogue, Ex. H at 259:5-260:13).

Toshiba also stored lithium ion battery cells it had previously manufactured for future use. (SMF, Add'l Fact 42.) It subsequently packed the cells and sold the completed lithium ion battery packs to customers through at least 2007. (*Id.*) A Toshiba witness, Daiichiro Eguchi, testified at a September 1, 2015 deposition that those sales totaled approximately $900,000:

> Q. So is your—is your testimony that Toshiba earned $900,000 in the sale of lithium ion battery packs between 2004 and 2007?
>
> A. It wasn't an earning. It was the total value of sales.
>
> Q. And—and how—what is the source of your information?
>
> A. That is my recollection.

(Dkt. No. 957-2, Declaration of Jessica Moy ("Moy Decl."), Ex. 13, at 190:24-191:6; *see also* SMF, Add'l Facts 45, 55.)

Furthermore, in the sales to Sanyo and Sojitz, Toshiba did not transfer its patents relating to lithium ion batteries. (SMF, Add'l Facts 47-48.) Toshiba referred to these hundreds of patents as "important IP," stating in an internal document that it had "not completely withdrawn from the [battery] business" as of August 9, 2005. (Moy Decl., Ex. 89; SMF Add'l Facts 47-48.) The Court acknowledges that some of these patents may have been subject to cross-license agreements with certain purported conspirators. (SMF, Add'l Facts 50-51.) Toshiba also considered going after Samsung and LG for millions of dollars in royalties for their purported use of covered

3

1 technologies in 2006 and potentially beyond. (*Id.*, Add'l Facts 52-53.)

2 The first complaint in this multidistrict litigation naming Toshiba as a defendant was filed
3 in December 2012. (*Id.*, Issue 2, Fact 25.)

## II. LEGAL STANDARD

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

Where the moving party will have the burden of proof at trial, it "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Here, Toshiba acknowledges (Dkt. No. 735 at 13) that it bears the initial burden. *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 820 F. Supp. 2d 1055, 1060 (N.D. Cal. 2011) ("[W]ithdrawal is an affirmative defense on which defendants bear the burden of proof.").

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson*, 477 U.S. at 250; *Soremekun*, 509 F.3d at 984; *see* Fed. R. Civ. P. 56(c), (e). The opposing party's evidence must be more than "merely colorable" and must be "significantly probative." *Anderson*, 477 U.S. at 249-50. Further, the opposing party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence showing a genuine dispute of material fact exists. *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Nevertheless, when deciding a summary judgment motion, a court must view the evidence

4

1  in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.
2  *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011). A
3  district court may only base a ruling on a motion for summary judgment upon facts that would be
4  admissible in evidence at trial. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010);
5  Fed. R. Civ. P. 56(c). It is not a court's task "to scour the record in search of a genuine issue of
6  triable fact," but rather the Court is entitled to "rely on the nonmoving party to identify with
7  reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91
8  F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th
9  Cir. 1995)); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir.
10 2001) ("The district court need not examine the entire file for evidence establishing a genuine
11 issue of fact, where the evidence is not set forth in the opposing papers with adequate references
12 so that it could conveniently be found.").

### III. DISCUSSION

Toshiba argues the claims against it should be dismissed with prejudice on statute of limitations grounds because it purportedly withdrew from the lithium ion battery industry—and therefore the alleged conspiracy—in 2004. Plaintiffs contend there are genuine disputes of material fact as to whether: (1) Toshiba effectively withdrew from the conspiracy in 2004; and, in the alternative, (2) Toshiba engaged in fraudulent concealment, such that the claims are timely even with a 2004 withdrawal. The parties also contest whether Toshiba can be liable, as a matter of law, for post-2004 conduct of alleged co-conspirators—an issue which turns on the threshold question of whether Toshiba in fact withdrew from the conspiracy. As the Court finds a genuine dispute of material fact as to whether Toshiba withdrew from the conspiracy by the end of 2004, it need not reach the other issues at this time.

#### A. Legal Framework

"A defendant can establish withdrawal from a conspiracy in various ways." *Virginia v. McKesson Corp.*, No. C 11-02782 SI, 2013 WL 1287423, at *3 (N.D. Cal. Mar. 28, 2013). Generally speaking, "[a]ffirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators" are typically

1  "sufficient to establish withdrawal or abandonment." *See United States v. U.S. Gypsum Co.*, 438

2  U.S. 422, 464-65 (1978); *see also United States v. Lothian*, 976 F.2d 1257, 1261 (9th Cir. 1992)

3  ("Withdrawal negates the element of agreement to the conspiracy's unlawful objective because it

4  'marks [the] conspirator's disavowal or abandonment of the conspiratorial agreement.'")

5  (alteration in original).

6      The Eleventh Circuit has held that a defendant's exit from "an otherwise legitimate

7  business enterprise" that is involved in a business conspiracy may constitute effective withdrawal

8  from the conspiracy where the defendant "retired from the business, severed all ties to the

9  business, and deprived the remaining conspirator group of the services which he provided to the

10  conspiracy." *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999)

11  *amended in part*, 211 F.3d 1224 (11th Cir. 2000); *see also United States v. Nerlinger*, 862 F.2d

12  967, 974 (2d Cir. 1988); *United States v. Steele*, 685 F.2d 793, 803 (3d Cir. 1982). "However, the

13  sale of an operating business does not automatically establish the defense." *In re Cathode Ray*

14  *Tube (CRT) Antitrust Litig.*, No. 07-5944 SC, 2010 WL 9543295, at *12 (N.D. Cal. Feb. 5, 2010)

15  ("There must be factual inquiries—again, with the burden of proof on the defendants—into such

16  subjects as the defendants' continued financial interest in the business that was sold, some

17  continued participation, or some continued benefit from the alleged conspiracy.").

18      **B. Analysis**

19      On the present record, although plaintiffs' evidence is hardly robust, genuine disputes of

20  material fact exist as to whether Toshiba continued to benefit from and participate in the purported

21  conspiracy. For instance, Toshiba potentially remained a member of and participated in a battery

22  trade association alongside alleged conspirators; held onto and selectively licensed "valuable IP"

23  relating to lithium ion battery technology; and discarded certain manufacturing equipment that

24  might have been sold to non-conspirators. Notably, Toshiba admittedly stored cells it had

25  produced prior to selling the manufacturing business, aggregated those cells into battery packs,

26  and sold the lithium ion battery packs through at least 2007—earning nearly $1 million in revenue.

27  Toshiba argues sales of packs in Japan are "irrelevant to whether Toshiba participated in any

28  conspiracy on the price of LiB Cells after 2004." (Dkt. No. 992 at 8.) At this juncture, however,

6

the Court does not resolve the question of whether sales of packed cells, as a matter of law, have no impact on the market for the cells that comprise them.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion. The Court declines to render any further preliminary findings at this time, as such issues must be resolved on a more fulsome record at trial.

This Order terminates Docket Number 735.

**IT IS SO ORDERED.**

Dated: March 16, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**