MARIO N. ALIOTO, ESQ. (56433)
JOSEPH M. PATANE, ESQ. (72202)
LAUREN C. RUSSELL, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA  94123
Telephone:  (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

*Class Counsel for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **NOTICE OF FILING BY INDIRECT PURCHASER PLAINTIFFS**<br><br>Hearing Date: None<br>Time: None<br>Court: Courtroom 9, 19th Fl.<br>Judge:  Hon. Jon S. Tigar |

1   Indirect Purchaser Plaintiffs ("IPPs") respectfully submit for filing the attached Declaration of Mario N. Alioto In Support of Indirect Purchaser Plaintiffs' Reply Re: Final Approval of Class Action Settlements with the Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson and TDA Defendants ("Alioto Reply Decl.").

The Alioto Reply Declaration was originally lodged with the Special Master on December 23, 2015 in support of IPPs' Reply Re: Final Approval of Class Action Settlements. The Declaration describes documents and deposition testimony that have been designated by certain Defendants as "Confidential" or "Highly Confidential" under the terms of the Stipulated Protective Order (ECF No. 306), and attaches those documents and deposition excerpts as exhibits. Thus, IPPs did not file the Alioto Reply Declaration on the JAMS Case Anywhere system, and only served it on counsel who had signed the Protective Order.

The Alioto Reply Declaration was subsequently filed in the Court record conditionally under seal by objector Douglas St. John as part of his Objection to Report and Recommendation re Outstanding Motions. (*See* ECF No. 4369-11.) As a result, IPPs did not submit the Alioto Reply Declaration with their Response to Objections to January 28, 2016 Report and Recommendation (ECF No. 4449 ("Response")), and used the St. John docket number to refer to the Alioto Reply Declaration in their Response. (*See, e.g.,* Response at 5, n.12.)

On March 9, 2016, the Court denied objector St. John's objections to the Report and Recommendations re Outstanding Motions and ordered that his sealing motion (ECF No. 4362) and the Alioto Reply Declaration (attached as Exhibit 10 to the Declaration of Joseph Scott St. John In Support of Objector St. John's Objection, ECF No. 4369-11) be stricken. (*See* ECF No. 4473, at 4.) The Court found that St. John had not properly supported his sealing motion and was concerned that Defendants, as the designating parties, may be penalized "by placing their trade secret, confidential, or otherwise protectable material in the public record." (*Id*.)

IPPs are re-filing the Alioto Reply Declaration with the Court because IPPs rely on the Alioto Reply Declaration in their Response, and because IPPs wish to ensure that the Court record is complete on IPPs' responses to the objections and for appellate purposes. There is no longer any need to file the Alioto Reply Declaration under seal because the Defendants that

1
**NOTICE OF FILING BY INDIRECT PURCHASER PLAINTIFFS – Master File No. CV-07-5944-JST**

designated the materials cited in the Declaration as Confidential or Highly Confidential have informed IPPs that they have no objection to these materials being filed in the public record.

Dated: March 31, 2016

Respectfully submitted,

*/s/ Mario N. Alioto*

Mario N. Alioto
Lauren C. Capurro
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
Email: malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs*

MARIO N. ALIOTO, ESQ. (56433)
JOSEPH M. PATANE, ESQ. (72202)
LAUREN C. RUSSELL, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA  94123
Telephone:  (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All Indirect Purchaser Actions | Master File No. CV-07-5944-JST<br><br>MDL No. 1917<br><br>**DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' REPLY RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH THE PHILIPS, PANASONIC, HITACHI, TOSHIBA, SAMSUNG SDI, THOMSON AND TDA DEFENDANTS**<br><br>Hearing Date: January 5, 2016<br>Time: 10:00 am<br>Court: JAMS<br>Special Master: Martin Quinn, JAMS<br><br>Judge:  Hon. Jon S. Tigar |

I, Mario N. Alioto, declare:

1. I am an attorney duly licensed by the State of California and am admitted to practice before this Court. I am a partner with the law firm Trump, Alioto, Trump & Prescott, LLP and my firm serves as Lead Counsel for the Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned action. The matters set forth herein are within my personal knowledge and if called upon and sworn as a witness I could competently testify regarding them.

2. Attached hereto as Exhibit 1 is a true and correct copy of SDCRT-0071129, which is a PowerPoint presentation produced in this litigation by Samsung SDI Co., Ltd. Slide 10 shows that Samsung SDI's global CRT market share in 2004 was 29%, and LPD's (for whose conduct IPPs held Philips responsible) was 27%.[1]

3. Attached hereto as Exhibit 2 is a true and correct copy of SDCRT-0009234, which is a PowerPoint presentation produced in this litigation by Samsung SDI Co., Ltd. Slide 2 shows that Samsung SDI held 42% of the CDT market in 2004 and LPD held 32%.

4. Attached hereto as Exhibit 3 is a true and correct copy of CHU00647932-43, which was produced in this litigation by defendant Chunghwa Picture Tubes, Ltd. The chart at CHU00647945 shows that Samsung SDI, LPD and Chunghwa accounted for almost 100% of the global CDT market as of 2004, which they carved up amongst themselves.

5. Attached hereto as Exhibit 4 is a true and correct copy of SDCRT-0203701, which was produced in this litigation by defendant Samsung SDI Co., Ltd. The document shows that in 1997, Samsung SDI held a 35.8% share of the North American 14" CDT market compared to 13.8% globally, and was projected to increase that share to 50.6% in 1998.

6. Attached hereto as Exhibit 5 is a true and correct copy of HDP-CRT00056081, which was produced in this litigation by defendant Hitachi Displays, Ltd. The document shows that Philips held a 21% share of the North American CPT market in 2000.

7. Attached hereto as Exhibit 6 is a true and correct copy of SDCRT-0062013, which was produced in this litigation by defendant Samsung SDI Co. Ltd. The document shows that in

---

[1] We did not have time to get translations of all of the exhibits provided here. We will get translations if requested by the Special Master.

2001, Samsung SDI held a 28.9% share of the North American CPT market, and was projected to increase that share to 31.9% in 2002.

8. Attached hereto as Exhibit 7 is a true and correct copy of PHLP-CRT-093612, which was produced in this litigation by defendant Koninklijke Philips Electronics N.V. The document shows that LPD held 35% of the Americas CPT market by 2005.

9. Attached hereto as Exhibit 8 is a true and correct copy of an excerpt of the December 12, 2013 Deposition of Jim Smith (former Philips and LPD Head of Sales) at 193:1-194:7. Mr. Smith testified that he took over the chairmanship of the Glass Meetings from David Chang, also formerly of Philips.

10. Attached hereto as Exhibit 9 is a true and correct copy of an excerpt of the Deposition of Samsung SDI's Rule 30(b)(6) Witness, who testified in June 2012 as follows: "Yes, basically all the meetings that are related to glass meetings, I attended all of them." Rule 30(b)(6) Deposition of Samsung SDI Co., Ltd., 31:5-7.

11. Attached hereto as Exhibit 10 is a true and correct copy of MTPD-0164693, which is a PowerPoint presentation produced by defendant MT Picture Display Co., Ltd. At Slide 3 there is a map of North America showing that in 1994 (just before the conspiracy period began), Philips had two CRT factories in the United States. By 2003, LPD and Samsung both had factories in Mexico.

12. Attached hereto as Exhibit 11 is a true and correct copy of an excerpt of the Deposition of Woong Rae (W.R.) Kim (former Samsung SDI America Sales Manager) at 251:10-16. IPP Counsel found Mr. Kim using a private investigator and subpoenaed his testimony. Mr. Kim testified that, during his time at Samsung SDI America, he was aware that CRT makers were meeting and agreeing on price:

> Q.  During your tenure at Samsung SDI America, you were aware that CRT makers were meeting with each other and agreeing on the price at which to charge for their CRTs, correct?
>
> A.  Yes.

13. Attached hereto as Exhibit 12 is a true and correct copy of SDCRT-0002526-28E, which was produced in this litigation by defendant Samsung SDI Co., Ltd. The document shows

that Samsung SDI and Philips met in the United States and discussed the "price trend" for 25V CPTs was "$102-103 (major customer, bottom price standard)." The document states: "Based on North America antitrust laws, CRT companies are not to discuss prices with each other, but in my opinion it appears to be the price we heard from Philips.")

14. Attached hereto as Exhibit 13 is a true and correct copy of SDCRT-0002506-08E, which was produced in this litigation by defendant Samsung SDI Co., Ltd. The document states: "It would be good if cooperation on price among companies in the CPT industry would be considered . . . . It was agreed that a cooperation meeting between SDI and PHILIPS would be held in our company's plant in Mexico since the locations of Mexico and Brazil are safe . . . ."

15. With regard to the factual assertions made by Messrs. Cooper and Scarpulla regarding Lead Counsel's time records, I respond as follows:

   a. Some of my firm's time records are dated the day of production because we had to run new reports for each timekeeper for the specific dates ordered by the Special Master (2014 through March 9, 2015), not because the time was not kept contemporaneously. All of the attorneys and other staff in my firm kept their time contemporaneously and submitted their time to me periodically throughout the course of the litigation.

   b. The Order Appointing Interim Lead Counsel provides it is the responsibility of Lead Counsel, "To record and administer all times and expenses of counsel and staff." (Dkt. No. 47, Section IV.) The Order does not require that any firm submit their time sheets to the accountant. That was simply a procedure I instituted to collect and monitor other firms' time. As Lead Counsel, we recorded and administered our own time and expenses as required by the Order.

   c. Internal case management meetings: I held intra-office meetings with my staff to discuss case organization, specific assignments to other firms and case strategy, all of which was required of us as Lead Counsel since we are charged with managing the entire case. We did not include clerical time spent on internal filing, downloading PACER filings etc. Other firms were instructed to remove time spent on internal case management because it's duplicative of the work the Court assigned to my firm as Lead Counsel.

    d. My firm's time was reduced pursuant to the Audit Committee's rules, which were applied equally to all firms. I removed over 200 hours of my firm's spent on the lead counsel motions. I also removed time spent on clerical tasks.

    e. As Lead Counsel, I was required to keep abreast of all developments in this case, which I did.

  16. I can state unequivocally that the three firms added to the trial team in Fall 2014 did not start work on this case from scratch. Rather, they worked closely and cooperatively with my firm and the other existing counsel in the case, not to learn the case from scratch, but to boil it down for trial.[2]

  17. I am prepared to supplement the record (at the scheduled hearing or otherwise) and explain the circumstances surrounding the addition of the "Late-Added Three," and address precisely the value they contributed to the litigation. Their value to the Class was exceptional, as was that of many others who built the case from the ground up.

  18. The lodestar incurred by IPP counsel in the last four months before the settlements was $11,453,589.20 versus $18,701,878.75 incurred by the top 26 firms in *LCD* for the same four month period before settlement.

  I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of December 2015 at San Francisco, California.

           /s/ Mario N. Alioto
            Mario N. Alioto

         ***Lead Counsel for the Indirect Purchaser Plaintiffs***

---

[2] The work done by the trial team (which included existing counsel) included, *inter alia*: Identifying trial-worthy exhibits and witnesses from an eight-year litigation record; cataloguing and addressing admissibility issues; designating and counter-designating thousands of pages of witness testimony; reviewing and cutting witness video; preparing experts and fact witnesses; preparing the named plaintiffs; preparing cross-examination outlines; mock trials and theme testing; graphic and demonstrative work; trial logistics and vendors; exhaustive pretrial briefing and evidentiary negotiations; pretrial conferences; overall strategy and order-of-proof development; and on and on—all of which was done while briefing a mountain of summary judgment, FTAIA, and other important pre-trial issues.

5

DECLARATION OF MARIO N. ALIOTO ISO INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS - Master File No. CV-07-5944-JST