```
                                              Pages 1 - 19

               UNITED STATES DISTRICT COURT

             NORTHERN DISTRICT OF CALIFORNIA

         BEFORE THE HONORABLE JON S. TIGAR, JUDGE

MDL NO. 1917 IN RE:  CATHODE     )
RAY TUBE (CRT) ANTITRUST         )
LITIGATION                       )   Case No. CV 07-5944-JST
                                 )
_____)

                              San Francisco, California
                              Monday, March 28, 2016
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:


For Plaintiff Costco:
        PERKINS COIE
        1201 Third Avenue, Suite 4900
        Seattle, Washington 98101-3099
    **BY:  CORI GORDON MOORE, ATTORNEY AT LAW**

For Defendant LG Electronics:
        MUNGER, TOLLES & OLSON
        560 Mission Street, 27th Floor
        San Francisco, California  94105-2907
    **BY:  LAURA K. LIN, ATTORNEY AT LAW**
        **BRAD BRIAN, ATTORNEY AT LAW**

(Appearances continued on next page)

Reported By:   Katherine Powell Sullivan, CSR #5812, RMR, CRR
               Official Reporter - U.S. District Court

**APPEARANCES (CONTINUED):**

<u>Also Present:</u>

For Plaintiff Sharp:
                TAYLOR & COMPANY
                One Ferry Building, Suite 355
                San Francisco, California  94111
       **BY:  CHERYL A. GALVIN, ATTORNEY AT LAW**

For Plaintiffs Sears and Kmart:
                KENNY NACHWALTER
                1441 Brickell Avenue, Suite 1100
                Miami, Florida 33131
       **BY:  KEVIN J. MURRAY**, **ATTORNEY AT LAW**

For Panasonic Defendants:
                WINSTON & STRAWN
                200 Park Avenue
                New York, New York  10166
       **BY:  MARTIN C. GEAGAN, ATTORNEY AT LAW**

```
 1  Monday, March 28, 2016                              2:04 p.m.
 2                        P-R-O-C-E-E-D-I-N-G-S
 3                              ---oOo---
 4       THE CLERK:  Calling civil case 07-5944, MDL number is
 5  1917, In re:  Cathode Ray Tube Antitrust Litigation.
 6       Counsel, will you please make your appearances.
 7       MS. GORDON MOORE:  Cori Gordon Moore, with Perkins
 8  Coie, for plaintiff Costco.
 9       MR. BRIAN:  Brad Brian, from Munger, Tolles & Olson,
10  for defendant LG.
11       MS. LIN:  Laura Lin, from Munger, Tolles & Olson, for
12  defendant LG.
13       THE COURT:  Welcome.
14       The matter is on calendar for what started out as many
15  motions about many claims and what has now been reduced to the
16  question of whether Costco is entitled to maintain its
17  California claims as a matter of due process and whether Costco
18  is entitled to maintain its claims as a matter of the
19  application of Washington's choice of law rules.  And even
20  though these started off as separate motions, they were
21  consolidated for reply and opposition.  So you might as well
22  argue them together.  Also, they sort of are two peas in a pod.
23       I'll let the moving party go first.  Consistent with my
24  practice at the other summary judgment motions in the case, I
25  am not going to give any indicated ruling.
```

1       **MS. LIN:**  Good afternoon, Your Honor.  Laura Lin, from
2  Munger, Tolles & Olson, for defendant LG Electronics.
3       As Your Honor recognized, the issues have now distilled to
4  Costco's California state law claim.
5       Defendants have moved on alternative grounds under choice
6  of law and due process.  Defendants believe the choice of law
7  motion is more straightforward with clearer law.  If Your Honor
8  decides the choice of law motion in LG's favor, you need not
9  reach the due process issues.
10      I'd like to reserve two minutes for rebuttal.
11          **THE COURT:**  I'm not going to set time limits.
12          **MS. LIN:**  Oh, excuse me.  I'm sorry.
13          **THE COURT:**  I'm just going to trust you both.
14          **MS. LIN:**  Understood.
15          **THE COURT:**  Yes.
16          **MS. LIN:**  Defendants believe that Washington and not
17 California law should govern Costco's California state law
18 claim.  The choice of law matters because Costco is seeking
19 approximately $50 million in indirect purchaser damages.  These
20 claims are barred under Washington law but permissible under
21 California law.
22      Costco and the defendants agree on fundamentals here,
23 which is that Washington's choice of law rules apply and that
24 Washington follows the most significant relationship test from
25 the restatement.

1       Your Honor often asked the parties to give them their best
2  case law on an issue.  Our best case for the choice of law
3  issue is Judge Illston's ruling in the *LCD* case.  The relevant
4  citation is 2011 Westlaw 5522966.  In that case, Judge Illston
5  considered nearly identical facts and nearly identical law when
6  she considered whether Washington or California law should
7  apply to Costco's state law claim in that case.
8       Judge Illston found that Washington law should apply
9  because Costco, as it did in this case, negotiated its relevant
10 purchases exclusively in Washington and issued its purchase
11 orders primarily from Washington, or directed their issuance
12 from Washington.
13      Judge Illston found that these connections showed that
14 Costco suffered any injury in Washington, and that the place of
15 injury was dispositive in her analysis.  The factual and legal
16 similarities here, we believe, should lead Your Honor to reach
17 the same result, which is to apply Washington and not
18 California law.
19      Moving into the most significant relationship test in the
20 restatement, the first factor examines the place of injury.
21 Here the relevant injury is a financial one.  Costco is
22 claiming that it overpaid for the products at issue.  That
23 overpayment, to the extent there was one, arose during price
24 negotiations and the resulting issuance of a purchase order.
25      The location of those activities was in Washington, where

1  Costco struck its bargain to purchase the televisions and
2  monitors at issue.  As a result, the relevant injury occurred
3  in Washington.  And the first factor weighs in favor of the
4  application of Washington law.
5      Costco would have Your Honor apply California law because
6  in focused on where it received the bulk of the products.  We
7  believe this is the wrong emphasis when you're analyzing injury
8  because Costco was not injured upon the receipt of the products
9  but, rather, in the process of bargaining for the products,
10 because --
11         **THE COURT:**  Well, isn't it -- it's injured at the
12 moment it actually makes payment.
13     I'll give you an example.  Let's say that you and I are
14 negotiating a contract and the contract is unfair to you in a
15 way that violates your rights.  It doesn't matter whether it's
16 antitrust or something else.  But let's assume that if we
17 consummated the contract I would be violating your rights in
18 some way.  The fact that we've negotiated it doesn't mean
19 you're injured yet, because the parties haven't performed.
20 It's only at the moment that we perform that you suffer some
21 detriment; right?
22     Let's say we hang up the phone.  No money has exchanged
23 hands.  No one has done anything.  How has an injury arisen?
24         **MS. LIN:**  I think Your Honor is right.  The injury
25 arises at the time the contract is consummated.  But here the

1  contract is put into place at the time that the purchase orders
2  are issued.  And the payment is ultimately sourced from
3  Washington, where Costco is headquartered and domiciled.
4      I think, Your Honor, it's helpful to maybe contrast this
5  to a personal injury lawsuit.  If the CRTs exploded upon
6  arrival, Costco would be injured in California.  But where the
7  complaint is that Costco overpaid for the products, we believe
8  that injury was suffered where Costco was based and where it
9  negotiated for the product purchases, which was in Washington.
10     Costco also argues that California law should apply
11 because a high volume of its sales occurred in California.  We
12 think that's irrelevant here where Costco claims an injury upon
13 the purchase of a product, not the point of sale to its
14 customers.
15     We think where Costco went on to sell the product is not
16 relevant to its injury claim.
17     For these reasons, we think the Court should follow the
18 *LCD* precedent and find that Costco's injury occurred in
19 Washington and that Washington law applied.
20     The second factor of the restatement test looks at the
21 place of the conduct causing the injury.
22     Here we think that factor deserves little weight because
23 the alleged conduct causing the injury occurred throughout the
24 world, with just a handful of alleged conduct occurring in
25 California.  That handful of conduct does not establish the

necessary significant relationship between California in this litigation.

The third factor involved the domicile of the parties. Here Costco is domiciled in Washington, and it is the sole plaintiff. The defendants are domiciled throughout the world with only a handful in California. This factor, on balance, we believe, weighs in favor of Washington.

Finally, the restatement asks the Court to examine where the relationship, if any, between the parties is centered. Here we believe there is no relevant relationship between the parties because the state law claim at issue involves indirect purchaser claims.

By definition, indirect purchases occurred without a relationship between defendants and Costco because the claims involved purchases Costco made from non-defendant third parties.

For all these reasons, we believe that the restatement factors weigh in favor of Washington law, and that Washington has the most significant relationship with this case.

Moving to the due process issue, we believe, alternatively, if the Court does not agree with the choice of law, it should grant summary judgment to LG Electronics because Costco could not satisfy due process over LG.

A plaintiff may invoke a state's law only where there's a significant contact or allegation of contacts between the state

1  on the one and the parties in the dispute on the other hand.
2     The Supreme Court and the Ninth Circuit have specified
3  that this test must be established as to each individual
4  defendant, and that the necessary contact may not be merely
5  slight and casual.
6     Here, LG Electronics lacks sufficient contacts with
7  California for due process purposes.  LG is headquartered
8  abroad and maintains no manufacturing facilities or offices in
9  California.
10     Costco points to LPD's contacts -- LPD being the joint
11 venture that LG owned along with Phillips -- in order to
12 attempt to establish due process.
13     Defendant does not believe that LG's contacts are
14 sufficient in order to invoke due process against LG, because
15 LPD was separately incorporated with its own management
16 structure.
17     The Supreme Court has emphasized that jurisdiction for due
18 process purposes must be assessed as to each particular
19 corporate entity.  Due process over one corporate entity does
20 not translate to due process over an affiliated entity.
21     **THE COURT:** Are the Hitachi defendants no longer
22 affected by this motion?
23     **MS. LIN:** That's correct, Your Honor.  The motion only
24 relates to the LG defendants.
25     The Supreme Court has specified that each defendant's

contacts with the forum state must be assessed individually. For that reason, we think that Costco needs to show a relationship between LG in California and not merely LPD in California. It has not done so. And, therefore, we believe due process is an alternative grounds under which Your Honor could grant summary judgment in LG's favor.

Barring any questions, I'll rest for rebuttal.

**THE COURT:** Thanks. I don't have anymore questions.

**MS. LIN:** Thank you, Your Honor.

**MS. GORDON MOORE:** Thank you, Your Honor. Cori Gordon Moore with Perkins Coie for plaintiff Costco.

I'll take the motions in the order that Ms. Lin did, starting with the choice of law motion.

Obviously, there's no dispute it's the four-factor test under Washington law that we're applying here. And I anticipated that LGE would invoke Judge Illston's *LCD* ruling as the best case for them.

So let me start there, because I think Judge Illston, in Costco's *LCD* case, erred with respect to the place of injury factor. And here's why:

She found that -- that single factor dispositive in that case. And that is inconsistent with a four-factor analysis. We think she placed too much emphasis on that single factor in the context of what should have been a four-factor analysis.

**THE COURT:** So I was reading the excerpts from

1  Geoffrey Shavey's deposition, that were submitted in connection
2  with this motion, over the weekend.
3       And it seems pretty clear that to the extent that anything
4  happened at a regional purchasing center for Costco, it wasn't
5  really in the nature of a purchase.  What happened is that, as
6  I read Mr. Shavey's deposition, Costco would negotiate these
7  purchases from its headquarters in Kirkland, Washington.  And
8  all the prices were set in those negotiations.  And he would
9  acquire the rights to a certain number of computer monitors or
10 TVs, or what have you.
11      And then he would distribute the right -- it was really,
12 sort of, an allocation of location.  So a regional purchasing
13 center might say, well, we would really like to have another
14 500 TVs.  And out of the total fixed amount that he negotiated,
15 he would take 500 hundred from somewhere else and give it to
16 them.
17      Is that understanding right, do you think?
18           **MS. GORDON MOORE:**  In part, Your Honor.
19      I think Mr. Shavey, both in his testimony and the
20 declaration we submitted, which I don't think are inconsistent,
21 outlined the process as being he, being the buyer for Costco's
22 warehouses nationwide, would negotiate with the vendors for the
23 terms for purchasing particular products, these CRT products,
24 including the price.
25      It was not a requirement, contract or the like.  There was

```
 1  no fixed volume under those item agreements.  And what he --
 2  what both, I think, his testimony says and what his declaration
 3  says is that from -- from headquarters they would try and
 4  allocate, you know, what they thought the volume would sell in
 5  their warehouses regionally.  But the actual issuance of
 6  purchase orders would be done primarily by the regional
 7  offices.  And there's three here in California during the
 8  relevant time frame.
 9      And what he also said in his declaration and in his
10  testimony is, look, there's going to be times where I may
11  think, you know, Mira Loma should get a hundred thousand CRT
12  televisions, and the people on the ground at the depot and in
13  the California warehouses may say, "Hey, we're blowing through
14  these; we need more," and he could reallocate that.
15      But what I think is important for the place of injury and
16  the place of purchase factor for choice of law purposes is the
17  purchase orders were issued, by and large, out of the
18  California regional buying offices.
19      And, moreover, under general commercial principles, both
20  Costco's standard terms with its vendors, as well as UCC
21  principles, once those purchase orders get issued and the
22  product hits the warehouse in California --
23          **THE COURT:**  You're focused on the moment of taking
24  title?
25          **MS. GORDON MOORE:**  Absolutely.
```

1  **THE COURT:** Yeah.
2  **MS. GORDON MOORE:** Because that's when the legal
3  obligation to pay -- what we think was an overcharge, but that
4  legal obligation to pay is created when we receive that
5  product --
6  **THE COURT:** Who makes the payment?
7  **MS. GORDON MOORE:** When does the legal obligation to
8  make that payment --
9  **THE COURT:** No, that's the question you're asking.
10 I'm the judge.  I'm asking a different question.
11    Who makes the payment?
12 **MS. GORDON MOORE:** Costco makes the payment, Your
13 Honor.
14 **THE COURT:** And isn't it a controller or someone
15 sitting in the treasury department up in Kirkland who's making
16 the payment?
17 **MS. GORDON MOORE:** The payments are made in
18 Washington, that's correct.  But in terms of where the purchase
19 orders are issued out of, California.
20 **THE COURT:** Yeah.
21 **MS. GORDON MOORE:** Where the product is received,
22 California.  Where the legal obligation for Costco to make that
23 payment is created is in California.
24    The second factor, the place where the conduct causing the
25 injury occurred, most of it was outside of the United States.

1  No dispute about that.  Some of it was in California.  None of
2  it was in Washington.
3      Factor three, it's much broader than just the place of
4  incorporation.  The factor reads "domicile, residence,
5  nationality, place of incorporation, place of business of the
6  parties."
7      And here's another distinction between this case and *LCD*.
8  The alleged conspiracy case -- or the alleged conspiracy period
9  in this case runs from 1995 forward.  In *LCD*, it was 1998.  And
10 that's important for Costco because in 1995 Costco did have
11 heritage Price Club functions in California.  There were
12 administrative functions because, as you may be aware from the
13 briefs, Costco is the result of a merger between two separate
14 companies, Costco and Price Club; Price Club being a California
15 company.  That merger occurred in 1993.  But in 1995, in the
16 beginning of this conspiracy period, there were still
17 administrative headquarters functions in California.
18      **THE COURT:**  Under the restatement, where there is --
19 where the plaintiff is injured across multiple states, isn't
20 the plaintiff's domicile the single most important contact for
21 determining the state applicable law?
22      In other words, I'm presented with a sort of scattershot
23 of possibilities.  Some of which are in California for the
24 reasons you're described.  Some of which are presumably in
25 other states.  Costco has stores elsewhere.  Don't I then just

1  default to the domicile?  And isn't that Washington?
2          **MS. GORDON MOORE:**  Well, I don't think you do.
3      First of all, Costco wasn't incorporated in Washington
4  until 1999.  At the beginning of the conspiracy, Costco was a
5  Delaware corporation, and reincorporated in Washington.
6      But putting that aside, I think that the Washington cases
7  we've cited make clear that the four factors, it really is
8  depending on the facts and circumstances of a particular case.
9      And I think here, where the place of incorporation isn't
10 the same throughout the alleged conspiracy and the facts giving
11 rise to these claims at the very least that makes that factor
12 weaker than some of the other factors, given the constellation
13 of facts here in the case.
14     Fourth factor, the place where the relationship, if any,
15 is centered.  My co-counsel is correct, Costco didn't have
16 direct purchases or direct business with respect to these
17 products with LG Electronics.  However, I would simply note
18 that Costco purchased more CRT products in California than in
19 any other single state throughout the conspiracy period.
20     Turning to due process, which is a little bit odd starting
21 with choice of law, since that's the meatier motion, I think.
22 But under the due process analysis I think the Ninth Circuit's
23 decision in *AT&T Mobility* largely answers that motion in
24 Costco's favor.  It's a highly permissive standard.
25     And we read *AT&T Mobility* to say either if there were

1  purchases that Costco made in California or looking at the
2  conduct giving rise to the claim, i.e. LGE's contacts with
3  California, either one satisfies the due process clause.
4       And I think, for the reasons we've just outlined, that
5  Costco's purchases in California are enough.
6           **THE COURT:**  Yeah.  Your opponent says it's about $50
7  million.  So that seems like a lot.
8           **MS. GORDON MOORE:**  Damages are $50 million.  We bought
9  a billion dollars worth of product in California.
10          **THE COURT:**  Okay.  Thank you very much.
11          **MS. GORDON MOORE:**  Thank you, Your Honor.
12          **THE COURT:**  Ms. Lin.
13          **MS. LIN:**  Thank you, Your Honor.
14      In keeping with the order we've been following, turning to
15  choice of law first, we'd like to point out that Costco has
16  identified no best case -- and we're also not aware of one --
17  finding that the receipt of products or the issuance of payment
18  is triggered upon receipt is sufficient to show that injury in
19  a particular state.
20      I also think counsel overlooks the restatement, section
21  172, which holds in a joint tortfeasor situation like this one
22  that the place of injury is typically dispositive and is the
23  most significant factor that should be analyzed in the
24  four-factor most-significant-relationship test.
25          **THE COURT:**  Give me one moment, please.

1          **MS. LIN:** Sorry.

2          **THE COURT:** Give me a second. I want to write
3  something down. And I'm a slow writer. Thanks.

4          **MS. LIN:** We think Costco is injured at the time that
5  it issued payment, as Your Honor noted, from Washington. Even
6  if it received the product and completed its contract with the
7  CRT product purchasers, Costco suffered its alleged injury when
8  it paid for the products, which it did from Washington.

9          I also think counsel misstates the record when she says
10 that purchase orders were primarily issued from California.
11 Mr. Shavey, in his declaration, stated that Washington was the
12 primary spot from which purchase orders were issued. The
13 purchase orders were sometimes issued from the regional
14 offices.

15         Further, I think his deposition makes clear that purchase
16 orders, when they were issued from the regional offices like
17 California, were merely done as an administrative matter, and
18 that the decision to issue the purchase orders always
19 originated from Washington.

20         Turning to the third factor of the test, Counsel noted
21 that Costco's place of incorporation did change throughout the
22 conspiracy period. We think that's right. We, nevertheless,
23 think that the domicile is the most significant, and that
24 Costco, throughout the relevant time period, was headquartered
25 in Washington.

1    And then, most critically, the facts at issue here, which
2 is the negotiation of purchases of CRT products and the payment
3 for the purchases of the CRT products throughout the time
4 period relevant here, all of that was done from Washington.  So
5 we think that tips the third factor, again, in favor of
6 applying Washington law.
7    So we think, primarily focused on those two factors, the
8 place of injury and the domicile of the parties both weigh in
9 favor of deciding the choice of law motion in LG's favor by
10 applying Washington law.
11    Finally, I think Your Honor and counsel for Costco are
12 right, that the *AT&T Mobility* due process standard is a highly
13 permissive one.  We recognize that this is typically an easy
14 bar to meet.
15    I do, however, read that case as saying there must be some
16 contact by defendants in a case like this one, where the
17 parties had no contact with one another in the state at issue
18 in California.
19    Costco and LG formed no relationship in California,
20 despite the fact that Costco was receiving products there that
21 purchased from other CRT product purchasers.
22    Here, I think *AT&T Mobility* requires the Court to identify
23 some contact, which is not slight and casual, in order to
24 establish due process over LG.  We think there is no such
25 slight and casual contact and, as a result, that due process is

```
 1  an alternative grounds to decide summary judgment in LG's
 2  favor.
 3      Barring any questions from the Court, I believe that's it.
 4          THE COURT:  Thanks.
 5          MS. LIN:  Thank you.
 6          THE COURT:  We should have more of these summary
 7  judgment motions.  They get better and better.
 8      We have the smallest audience.  Probably some of them are
 9  lawyers in this case.  We had lawyers that -- I could tell
10  neither of you are just out of law school, but you haven't been
11  out forever and ever like some of the lawyers in this case.
12  You're done at 2:25 p.m.  You both had, as far as I could tell,
13  a panoramic memory of the various materials that were submitted
14  in connection with this motion.  That was an absolutely
15  terrific 25 minutes.  So thank you, both.
16      I'm going to take this motion under submission.  I
17  promised everybody in the case I would resolve the IPP
18  settlement before I ruled on any summary judgment motion.  So
19  I'm going to keep that promise.
20      Thank you.
21          THE CLERK:  All rise.
22      (At 2:27 p.m. the proceedings were adjourned.)
23                         -  -  -  -
24
25
```

1
2                    **CERTIFICATE OF REPORTER**
3           I certify that the foregoing is a correct transcript
4    from the record of proceedings in the above-entitled matter.
5
6    DATE:    Tuesday, April 5, 2016
7
8
                          *Katherine Sullivan*
9
10   _____
11         Katherine Powell Sullivan, CSR #5812, RMR, CRR
                        U.S. Court Reporter
12
13
14
15
16
17
18
19
20
21
22
23
24
25