Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
White & Case LLP
701 Thirteenth Street, N.W.
Washington, DC 20005
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Counsel to Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*
*Information Systems, Inc., and Toshiba*
*America Electronic Components, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN FRANCISCO DIVISION)

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 JST<br>MDL No. 1917 |
| This Document Relates to<br>Case No. 13-cv-1173-JST (N.D. Cal.)<br><br>SHARP ELECTRONICS CORPORATION;<br>SHARP ELECTRONICS MANUFACTURING<br>COMPANY OF AMERICA, INC.,<br><br>               Plaintiffs,<br><br>    v.<br><br>HITACHI, LTD., *et al.*,<br><br>               Defendants. | **THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SHARP'S SECOND AMENDED COMPLAINT BASED ON A FORUM-SELECTION CLAUSE**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date:      June 9, 2016<br>Time:     2:00 p.m.<br>Courtroom: 9, 19th Floor<br><br>The Honorable Jon S. Tigar |

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

## **TABLE OF CONTENTS**

2

Page

3  NOTICE OF MOTION AND MOTION ..................................................................1

4  MEMORANDUM OF POINTS AND AUTHORITIES ........................................2

5  I.    STATEMENT OF THE ISSUE TO BE DECIDED.......................................2

6  II.   INTRODUCTION ...........................................................................................2

7  III.  FACTUAL BACKGROUND...........................................................................4

8
      A.   Sharp's Basic Transaction Agreement Requires Sharp's Joint-And-
9           Several Liability Claim To Be Litigated In The Osaka District Court
            In Japan ...................................................................................................4

10
      B.   In Prior Relevant Case Proceedings, The Court Dismissed Sharp's
11          Entire Complaint Pursuant To The BTA's Forum-Selection Clause
12          But Subsequently Allowed Sharp, Pursuant To The "Extreme
            Liberality Of Rule 15," To Amend Its Complaint To Resuscitate Its
13          Joint-And-Several Liability Claim Against Toshiba ...............................5

14  IV.  THE STANDARD OF REVIEW .....................................................................9

15  V.   ARGUMENT...................................................................................................11

16
      A.   The BTA's Forum-Selection Clause Is Valid, Mandatory, And
            Enforceable ............................................................................................12
17
      B.   Sharp's Antitrust Claims Relate To The BTA...................................13
18
19    C.   Sharp Is Bound By The BTA.................................................................14

20    D.   Toshiba Is Entitled To Enforce The Forum-Selection Clause............16

21
      E.   A Plain Reading Of The BTA, Supported By Sharp's Critical
22          Admission, Confirms That Sharp's Joint-And-Several Liability
            Claim Relates To The BTA And Is Subject To The BTA's Forum-
23          Selection Clause .....................................................................................18

24  CONCLUSION.........................................................................................................23

25

26

27

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SHARP'S
SECOND AMENDED COMPLAINT BASED ON A FORUM-SELECTION CLAUSE
Case No. 07-5944 JST
MDL No. 1917

1

## TABLE OF AUTHORITIES

2

CASES                                                                            PAGE(S)

*Adams v. Raintree Vacation Exch., LLC*,
　　702 F.3d 436 (7th Cir. 2012) ................................................................14, 15

*Algaier v. CMG Mortg., Inc.*,
　　No. 12-cv-0380, 2014 U.S. Dist. LEXIS 112363
　　(E.D. Wash. Aug. 13, 2014) ........................................................................10

*American Home Assurance Co. v. TGL Container Lines, Ltd.*,
　　347 F. Supp. 2d 749 (N.D. Cal. 2004) ...........................................................9

*Argueta v. Banco Mexicana*, S.A.,
　　87 F.3d 320 (9th Cir. 1996) ........................................................................12

*Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. Of Texas*,
　　134 S.Ct. 568 (2013)...........................................................................5, 9, 18

*Bense v. Interstate Battery Sys. of Am.*,
　　683 F.2d 718 (2d Cir. 1982) ........................................................................14

*Bremen v. Zapata Off-Shore Co.*,
　　407 U.S. 1 (1972)...............................................................................12, 13

*Castner v. First National Bank of Anchorage*,
　　278 F.2d 376 (9th Cir. 1960) ......................................................................11

*Chateau des Charmes Wines Ltd. v. Sabate USA, Inc*.,
　　No. C-01-4203 MMC, 2003 WL 22682483
　　(N.D. Cal. Nov. 10, 2003) ...........................................................................9

*Clinton v. Janger*,
　　583 F. Supp. 284 (N.D. Ill. 1984) ...............................................................15

*Committee for Immigrants Rights of Sonoma County v. County of Sonoma*,
　　No. C 08-4220 RS, 2010 WL 2465030 (N.D. Cal. June 11, 2010) ...............11

*Docksider, Ltd. v. Sea Tech., Ltd.*,
　　875 F.2d 762 (9th Cir. 1989) ......................................................................13

*DOE 1 v. AOL LLC*,
　　552 F.3d 1077 (9th Cir. 2009) ....................................................................18

*dpiX LLC v. Yieldboost Tech., Inc.*,
　　No. 14-cv-05382, 2015 U.S. Dist. LEXIS 117267
　　(N.D. Cal. Sept. 2, 2015) .............................................................................10

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SHARP'S
SECOND AMENDED COMPLAINT BASED ON A FORUM-SELECTION CLAUSE
Case No. 07-5944 JST
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ...................................................................... 6

*Fairbank v. Wunderman Cato Johnson*,
   212 F.3d 528 (9th Cir. 2000) ...................................................................... 11

*Fangman v. Genuine Title, LLC*,
   No. RDB-14-0081, 2015 U.S. Dist. LEXIS 165424
   (D. Md. Dec. 9, 2015)........................................................................... 22, 23

*Frietsch v. Refco Inc.*,
   56 F.3d 825 (7th Cir. 1995) ........................................................................ 13

*Hile v. Buth-Na-Bodhaige, Inc.*,
   No. C 07-00791 JSW, 2007 WL 4410774 (N.D. Cal. Dec. 14, 2007) ........... 13

*Holland America Line Inc. v. Wartsila North America, Inc.*,
   485 F.3d 450 (9th Cir. 2007) ...................................................................... 15

*Imemco Inc. v. Lumenis Inc., et al.*,
   No. SA CV 14-1877-DOC (DFMx), 2015 U.S. Dist. LEXIS 97803
   (C.D. Cal. July 27, 2015)............................................................................ 22

*In re Livent Inc. Sec. Litig.*,
   78 F. Supp. 2d 194 (S.D.N.Y. 1999) ........................................................... 10

*Ioannidis/RIGA v. M/V Sea Concert*,
   132 F. Supp. 2d 847 (D. Or. 2001) .............................................................. 10

*In re TFT-LCD (Flat-Panel) Antitrust Litig.*,
   No. 07-1827 SI, 2011 U.S. Dist. LEXIS 102958
   (N.D. Cal. Sept. 9, 2011) ............................................................................ 16

*In re: Titanium Dioxide Antitrust Litig.*,
   962 F. Supp. 2d 840 (D. Md. Aug. 26, 2013)............................................... 17

*Intermetals Corp. v. Hanover Int'l Aktiengesellschaft fur
Industrieversicherungen*,
   188 F. Supp. 2d 454 (D.N.J. 2001) .............................................................. 13

*Manetti-Farrow, Inc., v. Gucci America, Inc.*,
   858 F.2d 509 (9th Cir. 1988) ...................................................................... 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)................................................................................... 14

*Multimin USA, Inc. v. Walco Int'l, Inc.*,
   No. CV F 06-0226, 2006 WL 1046964 (E.D. Cal. Apr. 11, 2006) ................ 14

*Mundi v. Union Sec. Life Ins. Co.*,
   555 F.3d 1042 (9th Cir. 2009) .................................................................... 16

*N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*,
    69 F.3d 1034 (9th Cir. 1995) ....................................................................................13

*Northwest Administrators, Inc. v. B.V. & B.R., Inc.*,
    813 F.2d 223 (9th Cir. 1987) ....................................................................................20

*Ohkubo v. Antara Biosciences, Inc.*,
    364 Fed. Appx. 340 (9th Cir. 2010)...........................................................................13

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)....................................................................................................9

*Posern v. Prudential Securities, Inc.*,
    No. C-03-0507 SC, 2004 WL 1145877 (N.D. Cal. May 3, 2004) ...............................15

*Richards v. Lloyd's of London*,
    135 F.3d 1289 (9th Cir. 1998) .............................................................................14, 17

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974)..............................................................................................14, 16

*Sigma Six Tech., Inc. v. Nagarro, Inc.*,
    No. C 08-05633, 2009 WL 2031771 (N.D. Cal. July 9, 2009)....................................12

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ....................................................................................14

*TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*,
    915 F.2d 1351 (9th Cir. 1990) ..................................................................................12

*Tennecal Funding Corp. v. Sakura Bank*,
    No. 94-56515, 1996 WL 341957 (9th Cir. 1996) ......................................................10

*United States v. Seckinger*,
    397 U.S. 203 (1970)..................................................................................................20

*United States ex rel. Lee v. Corinthian Colleges*,
    655 F.3d 984 (9th Cir. 2011) ....................................................................................10

*Universal Grading Serv. v. eBay, Inc.*,
    No.  08-CV-3557 (CPS), 2009 WL 2029796
    (E.D.N.Y. June 10, 2009) ..........................................................................................15

*Van Cauwenberghe v. Biard*,
    486 U.S. 517 (1988)....................................................................................................9

*Varsity Gold, Inc. v. Lunenfeld & RND, Inc.*,
    No. CCB-08-550, U.S. Dist. LEXIS 100775 (D. Md. Dec. 12, 2008) ..........................23

*Villanueva v. Barcroft*,
    822 F. Supp. 2d 726 (N.D. Ohio 2011) .....................................................................18

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SHARP'S
SECOND AMENDED COMPLAINT BASED ON A FORUM-SELECTION CLAUSE
Case No. 07-5944 JST
MDL No. 1917
iv

White & Case LLP
701 Thirteenth Street NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Villar v. Crowley Maritime Corp.*,
     782 F.2d 1478 (9th Cir. 1986) ......................................................................................10

*Wells v. Regents of the Univ. of Cal.*,
     No. 15-cv-1700, 2015 U.S. Dist. LEXIS 150595
     (N.D. Cal. Nov. 5, 2015) ..............................................................................................10

*Williams v. California*,
     990 F. Supp. 2d 1009 (C.D. Cal. 2012) ........................................................................10

*Yavuz v. 61 MM, Ltd.*,
     576 F.3d 1166 (10th Cir. 2009) ......................................................................................9


**O**THER

14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal
Practice and Procedure § 3823 (3d ed. 2008) ............................................................................9

Fed. R. Civ. P. 15(a)(2)..........................................................................................................6

Restatement (Second) of Contracts § 202 (1981)...................................................................18

Restatement (Second) of Contracts § 203 (1981)...................................................................19

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SHARP'S
SECOND AMENDED COMPLAINT BASED ON A FORUM-SELECTION CLAUSE
Case No. 07-5944 JST
MDL No. 1917
v

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 9, 2016, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Jon S. Tigar, Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., and Toshiba America Electronic Components, Inc. (collectively, "Toshiba" or the "Toshiba Defendants") will and hereby do move the Court for an order dismissing the Second Amended Complaint of Sharp Electronics Corporation and Sharp Electronics Manufacturing Company of America, Inc. (collectively, the "Plaintiffs" or "Sharp") ("Complaint") as against the Toshiba Defendants pursuant to the doctrine of *forum non conveniens*.  The sole remaining claim against Toshiba in Sharp's Complaint must be dismissed because of a forum-selection clause that requires Sharp's joint-and-several liability claim against Toshiba to be resolved in the Osaka District Court in Osaka, Japan.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, accompanying declaration and exhibits, the complete files and records in this action, oral argument of counsel, and such other and further matters as this Court may consider.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2   **I.   STATEMENT OF THE ISSUE TO BE DECIDED**

3       Whether the Court should dismiss Sharp's sole remaining claim against Toshiba on the

4   grounds that a forum-selection clause requires Sharp's joint-and-several liability claim to be

5   resolved in the Osaka District Court in Osaka, Japan.

6   **II.   INTRODUCTION**

7       Since 1977, the business relationship between the Toshiba and Sharp group companies

8   has been governed by an agreement known as the Basic Transaction Agreement ("BTA").

9   The BTA contains a forum-selection clause, requiring generally that all "litigation related to

10  this Agreement" be resolved in Osaka, Japan, in the Osaka District Court.  In 2014, relying

11  upon the BTA's forum-selection clause, Judge Conti granted Toshiba's motion to dismiss and

12  dismissed Sharp's Complaint in its entirety.  ECF No. 2435.  In that order, Judge Conti held

13  that "Sharp's claims relate to and have their genesis in the BTA . . . ."  *See id.* at 8 (granting

14  Toshiba's motion to dismiss and ruling that Sharp's Complaint is "DISMISSED WITH

15  PREJUDICE").  Sharp then filed a motion for leave to amend its complaint.  ECF No. 2520.

16  Through that motion, Sharp sought leave to file an amended complaint that would "clarify that

17  Sharp has a remaining claim against Toshiba, but only based on Toshiba's joint-and-several

18  liability as a co-conspirator for sales made to Sharp by other conspirators."  *Id.* at 2.  Sharp

19  also proclaimed that the BTA has no bearing over Toshiba's purported joint-and-several

20  liability to Sharp because the commerce between Sharp and Toshiba's alleged co-conspirators

21  is "completely independent of Toshiba's commercial relationship with any Sharp entity."  *Id.*

22  at 5.  Judge Conti granted Sharp's motion, emphasizing he did so "under the extreme liberality

23  of Rule 15" and finding, based on Sharp's representations, that Sharp's  joint-and-several

24  liability claim against Toshiba was "distinct in scope" from its other claims.  ECF No. 2612,

25  at 8, 11, 13.

26      Toshiba now files this motion to dismiss because Sharp has since admitted — as

27  commonsense dictates it must — that its joint-and-several liability claim is not so distinct;

28  rather, its customer-supplier relationship with Toshiba, a relationship governed by the BTA, is

1  relevant to proving its joint-and-several liability claim against Toshiba.  For example, Sharp,

2  retreating from its prior, unsustainable position (ECF No. 2520), admitted in opposing

3  Toshiba's February 13, 2015 motion *in limine* (ECF No. 3577), that "the fact that Sharp was

4  one of Toshiba's CRT customers during the relevant period will be relevant at trial because

5  some of the evidence that will be offered to prove Toshiba's participation in the conspiracy –

6  which makes it jointly and severally liable for Sharp's damages based on CRT purchases from

7  other defendants and co-conspirators – also reflects a customer-supplier relationship between

8  Toshiba and an affiliate of the Sharp plaintiffs."  ECF No. 3695-3, at 3.  Furthermore, in the

9  present procedural posture of this action, Sharp is no longer entitled to the "extreme liberality

10  of Rule 15" and the presumption to allow pleading amendments; instead, Sharp's legal

11  arguments must rise or fall on their merits.  ECF No. 2612, at 13.

12      By properly dismissing Sharp's entire complaint, but then allowing Sharp to revive its

13  joint-and-several liability claim, Judge Conti created an anomalous situation that has since

14  characterized Sharp's claims against Toshiba:  Sharp's claims against all Defendants based on

15  its purchases from Toshiba have long since been dismissed, but its joint-and-several liability

16  claim against Toshiba has been allowed to continue.  The supposed rationales for this

17  dichotomy were that (1) Rule 15 offers a low bar to amendment, and (2) Sharp's joint-and-

18  several liability claim is not related to the BTA or Sharp's dismissed claims.  But Sharp no

19  longer benefits from the comfort of Rule 15.  And the latter rationale was never sound, and its

20  unsoundness has been laid bare by Sharp's admission that evidence of Sharp's purchases

21  from, and customer-supplier relationship with, Toshiba is relevant to its joint-and-several

22  liability claim.

23      Indeed, Sharp's belated admission further confirms what the plain language of the BTA

24  establishes: that Sharp and Toshiba, in executing the BTA, the umbrella agreement governing

25  their customer-supplier relationship, expressly decided that any "disputes," "doubts," or

26  "unsolved items" relating to that Agreement, such as Sharp's joint-and-several liability claim,

27  must be litigated in the Osaka District Court.  Accordingly, by proper operation of the BTA,

28  this Court should dismiss Sharp's sole remaining claim against Toshiba.

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## III.   FACTUAL BACKGROUND

### A.     Sharp's Basic Transaction Agreement Requires Sharp's Joint-And-Several Liability Claim To Be Litigated In The Osaka District Court In Japan

Sharp Corporation and Tokyo Shibaura Electric Co., Ltd. (now known as Toshiba Corporation) entered into the BTA on March 1, 1977.  *See* Toshiba Exhibit ("Toshiba Ex.") 1 (Declaration of Akihiko Kashiwagi in Support of the Toshiba Defendants' Motion to Dismiss Sharp's Complaint ("Kashiwagi Decl."); Kashiwagi Decl. at Ex. A (true and correct copy of the BTA)).   On the face of the document, it is apparent that the BTA is Sharp's form agreement and that it was drafted by Sharp.  Kashiwagi Decl. at Ex. A.  The BTA governs the entirety of the customer-supplier relationship between Sharp and Toshiba, and Sharp selected the Osaka District Court, its home prefecture, as the forum in which disputes must be resolved.  *See* Toshiba Ex. 2 ("Certified Translation") at Art. 1.1 (stating that "Party A and Party B shall set their foundation on mutual trust and respect for mutual benefits"); Art. 1.2 (stating that the BTA: "shall apply to any Individual Agreement between Party A and Party B . . ."), Art. 21.2 (identifying the selected forum).  The BTA was automatically renewed each year, and it was continuously in force between 1995 and 2007, the period covered by Sharp's Complaint.  *See* Kashiwagi Decl. ¶ 3; Certified Translation at Art. 22.

The BTA contains a mandatory forum-selection clause:

Article 21 (Resolution of Doubt or Disputes)

(1)   When there are disputes or doubts that arise in relation to this Agreement or individual Agreement, or when there are unsolved items in this Agreement or individual Agreement, resolutions shall be made between Party A and Party B in good faith.

(2)   In terms of litigation related to this Agreement or the individual Agreement, the Osaka District Court shall be the court of competent jurisdiction.

This clause extends not only to any dispute related to the "Agreement," but also to any disputes related to "individual Agreements," *i.e.*, agreements established pursuant to the BTA "upon the delivery of the purchase order describing the details of [transactions related to the parties' goods] by Party A and upon delivery of the order confirmation by Party B."  ECF No.

2435, at 7 (quoting Art. 2 of the BTA).  Art. 21.2. requires that those disputes be resolved in the Osaka District Court.

### B.   In Prior Relevant Case Proceedings, The Court Dismissed Sharp's Entire Complaint Pursuant To The BTA's Forum-Selection Clause But Subsequently Allowed Sharp, Pursuant To The "Extreme Liberality Of Rule 15," To Amend Its Complaint To  Resuscitate Its Joint-And-Several Liability Claim Against Toshiba

On October 7, 2013, Toshiba filed a motion to dismiss Sharp's original Complaint.  ECF No. 2000.  In support of that motion, as here, Toshiba relied upon the forum-selection clause of the BTA.

On November 6, 2013, Sharp opposed the motion to dismiss, arguing that the motion should be denied because:  (1) Plaintiffs are not parties to, or bound by, the BTA; (2) Sharp's claims do not relate to the BTA; and (3) enforcing the forum-selection clause of the BTA would violate public policy.  ECF No. 2195.  Sharp did not argue that the forum-selection clause of the BTA was unrelated to its alleged joint-and-several liability claim against Toshiba.

On December 9, 2013, Toshiba filed a motion for leave to amend its motion to dismiss in light of the Supreme Court's ruling in *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. Of Texas*, 134 S.Ct. 568 (2013), which held that the proper procedural grounds to enforce a forum-selection clause is by use of the doctrine of *forum non conveniens*.  ECF No. 2249.

On December 17, 2013, Judge Conti granted Toshiba's motion for leave to amend its motion to dismiss.  ECF No. 2273.

On December 24, 2013, Sharp responded to the amended motion to dismiss.  ECF No. 2292.  Again, Sharp made no effort to distinguish its joint-and-several liability claim against Toshiba from its claims based on purchases from Toshiba.

On January 13, 2014, Toshiba filed a supplemental reply in which Toshiba cited additional evidence from Sharp concerning the close relationship within the Sharp corporate

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    family.  ECF No. 2322-1, at 3.  Sharp responded to this brief on January 24, 2014.  ECF No.

2    2352.

3       On March 13, 2014, Judge Conti issued an Order Granting Toshiba's Motion To

4    Dismiss Sharp's First Amended Complaint.  ECF No. 2435 ("March 13, 2014 Order").  Judge

5    Conti considered and resolved all of the material arguments raised by Sharp.  *Id.* at 5-10.

6    Finding Sharp's arguments to be unpersuasive, and noting that the Osaka District Court is an

7    adequate forum to resolve Sharp and Toshiba's dispute, Judge Conti granted the motion to

8    dismiss:  "The complaint is DISMISSED WITH PREJUDICE."  *Id.* at 10.

9       On April 2, 2014, Sharp filed a motion for leave to file an amended complaint, stating

10    that its motion should be reviewed under Rule 15 of the Federal Rules of Civil Procedure, and

11    asserting that in that review the Court should "freely give leave to amend" pursuant to the

12    Ninth Circuit's policy to grant leave "'with extreme liberality.'"  ECF No. 2520 ("Sharp's

13    Motion for Leave"), at 5 (quoting Fed. R. Civ. P. 15(a)(2) and *Eminence Capital, LLC v.*

14    *Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)).  With that motion, Sharp sought to amend

15    its complaint "to eliminate all damages claims against any defendant based on sales made by

16    any Toshiba entity to any Sharp entity, and clarify that Sharp has a remaining claim against

17    Toshiba based upon Toshiba's joint and several liability as a co-conspirator for sales made to

18    Sharp by other conspirators."  *Id.* at 1.  Sharp also argued that "Toshiba is jointly and

19    severally liable under antitrust law for overcharges on that commerce because of its

20    participation in that conspiracy" (*id*. at 4), and the BTA has no bearing over Toshiba's

21    purported joint-and-several liability because the commerce between Sharp and Toshiba's

22    alleged co-conspirators is "completely independent of Toshiba's commercial relationship with

23    any Sharp entity" (*id*. at 5).

24       On April 16, 2014, Toshiba filed its opposition.  ECF No. 2538.  In that opposition,

25    Toshiba argued that: (1) Sharp waived arguments regarding its joint-and-several liability

26    claim because it never presented those arguments in opposing Toshiba's motion to dismiss or

27    amended motion to dismiss; and (2) Sharp's proposed amendments to its complaint were

28    futile because (i) the forum-selection clause of the BTA covered Sharp's joint-and-several

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1    liability claim, and (ii) the doctrine of *forum non conveniens* — separate and apart from the

2    forum-selection clause of the BTA — required dismissal of Sharp's joint-and-several liability

3    claim.

4        On April 23, 2014, Sharp filed its reply, in which it argued that its proposed

5    amendments are not futile because the BTA does not extend to Sharp's joint-and-several

6    liability claim, as "the BTA, on its face, governs only relations relating to the supply and

7    manufacture of goods."  ECF No. 2547, at 4.  Sharp also argued that the Court could not

8    dismiss its joint-and-several liability claim under the doctrine of *forum non conveniens*

9    because private and public interest factors weigh against consolidating Sharp's claims in the

10   Osaka District Court.  In that argument, Sharp stated:  "It is simply not true here that resolving

11   issues relating to Toshiba's sales to the Sharp Plaintiffs is 'integral' to its joint and several

12   liability for participating in a conspiracy.   To the contrary, Toshiba's joint-and-several

13   liability is completely independent of any sales that it made to the Sharp Plaintiffs." *Id*. at 10.

14       Because Sharp included new arguments in its reply, on April 30, 2014, Toshiba filed its

15   surreply in opposition to Sharp's motion for leave to amend (ECF No. 2553), and on May 5,

16   2014, Sharp filed its opposition (ECF No. 2563).

17       On June 9, 2014, Judge Conti issued the Order Granting Sharp's Motion for Leave to

18   Amend.  ECF No. 2612 ("June 9, 2014 Order").  In the order, Judge Conti held that Sharp was

19   entitled to amend its complaint because:  (1) Toshiba's interpretation of the BTA was "too

20   broad" as "any potential conspiracy-related joint and several liability Toshiba may have . . . is

21   distinct in scope"; and (2) despite the existence of an adequate alternative forum in the Osaka

22   District Court, private and public factors weigh in favor of rejecting Toshiba's argument on

23   futility.  *See id*. at 11, 12.  Critically, Judge Conti clearly articulated that his ruling was based

24   on his review of Sharp's proposed amendments under "the liberal standard of Rule 15,"

25   stressing that under that review leave is "freely given" "with extreme liberality."  *Id*. at 3-5.

26   Indeed, Judge Conti only assessed Sharp's proposed amendments under that extremely liberal

27   standard, as he refused to consider Toshiba's argument that Sharp waived its right to preserve

28

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1    that claim by not raising those arguments in opposing Toshiba's original motion to dismiss or

2    its amended motion to dismiss.  *Id.* at 5.

3        On June 13, 2014, Sharp filed its Second Amended Complaint.  ECF No. 2621 ("Sharp

4    Compl.").  In that amended complaint, Sharp withdrew its claims based on its direct purchases

5    from Toshiba, not just against Toshiba, but as to all Defendants.  *See* Sharp Compl. ¶¶ 62-68

6    (stating that "Sharp seeks no damages related to any transactions between any Sharp entity

7    and any Toshiba entity").  Toshiba answered the Second Amended Complaint, and this case

8    went forward in discovery on the basis that Toshiba's sales to Sharp had been excised from

9    the case.

10       Under the pretrial scheduling order (ECF No. 2459), on February 13, 2015, Toshiba

11   filed a motion *in limine* to exclude evidence of Toshiba's sales to Sharp based on the

12   dismissal of those sales from the case.  ECF No. 3577.   In that motion, Toshiba requested an

13   order precluding Sharp from presenting evidence or argument at trial regarding Sharp's

14   purchases of CRTs from Toshiba, as well as any evidence or argument regarding Sharp's

15   alleged damages resulting from those purchases, given that:   (1) the Court has already

16   determined that all litigation related to such purchases must be adjudicated in Japan; and

17   (2) Sharp has withdrawn all claims against all Defendants that are based upon Sharp's CRT

18   purchases from Toshiba.

19       On February 27, 2015, Sharp filed its opposition.  ECF No. 3695-3 ("Sharp Opp.").

20   Remarkably — after its entire complaint was dismissed and then its only remaining claim

21   against Toshiba was resuscitated by the "extreme liberality of Rule 15" based on Sharp's

22   representations to the Court that the claim was "completely independent" — Sharp argued that

23   Toshiba's sales of CRTs to Sharp *were* relevant to Sharp's joint-and-several liability claim

24   against Toshiba.   Sharp stated that, among other things, "the fact that Sharp was one of

25   Toshiba's CRT customers during the relevant period will be relevant at trial because some of

26   the evidence that will be offered to prove Toshiba's participation in the conspiracy – which

27   makes it jointly and severally liable for Sharp's damages based on CRT purchases from other

28

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SHARP'S
SECOND AMENDED COMPLAINT BASED ON A FORUM-SELECTION CLAUSE
Case No. 07-5944 JST
MDL No. 1917

1   defendants and co-conspirators – also reflects a customer-supplier relationship between
2   Toshiba and an affiliate of the Sharp plaintiffs." *Id*. at 3.

3       On March 6, 2015, Toshiba filed its reply. ECF No. 3753. That motion is now pending
4   before the Court. ECF No. 4547-1, at A-2.

5 **IV.   THE STANDARD OF REVIEW**

6       Toshiba files this motion to dismiss pursuant to the doctrine of *forum non conveniens*.
7 *See Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. Of Texas*, 134 S.Ct.
8 568, 580 (2013) (holding that the proper procedural grounds "to enforce a forum-selection
9 clause pointing to a [] foreign forum is through the doctrine of *forum non conveniens*" and
10 declining to consider whether a defendant could seek the same remedy pursuant to Rule
11 12(b)(6) of the Federal Rules of Civil Procedure). Importantly, motions to dismiss pursuant to
12 that doctrine are not bound by the usual strictures of Rule 12 of the Federal Rules of Civil
13 Procedure, including that "there is generally no time limit on when a motion to dismiss for
14 *forum non conveniens* must be made . . . ." *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1173 (10th
15 Cir. 2009) (quoting 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal
16 Practice and Procedure § 3823 (3d ed. 2008)); *see also Chateau des Charmes Wines Ltd. v.*
17 *Sabate USA, Inc.*, No. C-01-4203 MMC, 2003 WL 22682483, at *3 (N.D. Cal. Nov. 10, 2003)
18 (holding that defendants' motion to dismiss on *forum non conveniens* grounds was timely
19 even though it was filed twenty months after the complaint was filed and after the defendant
20 had submitted an answer to that complaint); *American Home Assurance Co. v. TGL Container*
21 *Lines, Ltd.*, 347 F. Supp. 2d 749, 766 (N.D. Cal. 2004) (holding that a party does not waive its
22 ability to seek dismissal on *forum non conveniens* grounds despite not asserting that argument
23 in its initial Rule 12 motion or its answer).

24       The standard of review under a motion to dismiss pursuant to *forum non conveniens* is
25 different than the standard of review concerning a Rule 12(b) motion. ***First***, courts are
26 "accorded substantial flexibility in evaluating a *forum non conveniens* motion," may consider
27 materials outside the pleadings, and need not accept the pleadings as true. *Van*
28 *Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988) (citing *Piper Aircraft Co. v. Reyno*, 454

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

U.S. 235, 249 (1981)); *see also Ioannidis/RIGA v. M/V Sea Concert*, 132 F. Supp. 2d 847, 852 (D. Or. 2001) (stating that "in reviewing [defendants'] Motion to Dismiss based on the forum-selection clause and *forum non conveniens* doctrine, the Court need not accept the pleadings as true and may consider facts outside the pleadings."). **Second**, "[t]he presumption on factual inferences does not apply to a *forum non conveniens* motion." *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 200 (S.D.N.Y. 1999). **Third**, a court may resolve factual disputes. *See Villar v. Crowley Maritime Corp.*, 782 F.2d 1478, 1479 (9th Cir. 1986) (stating that the doctrine of *forum non conveniens* would be frustrated if district courts could not resolve related factual disputes prior to trial); *Tenneco Funding Corp. v. Sakura Bank*, No. 94-56515, 1996 WL 341957, at *1 (9th Cir. 1996) (affirming dismissal on *forum non conveniens* grounds and declaring that "[i]n making the *forum non conveniens* determination, courts look to the parties' submissions of proof in support or in opposition to the motion").

Courts commonly grant motions to dismiss after granting leave to amend a complaint. *See, e.g., Wells v. Regents of the Univ. of Cal.*, No. 15-cv-1700, 2015 U.S. Dist. LEXIS 150595, at *4, *25 (N.D. Cal. Nov. 5, 2015) (granting in part defendants' motion to dismiss plaintiff's second amended complaint, which was filed pursuant to a grant of leave to amend); *Algaier v. CMG Mortg., Inc.*, No. 12-cv-0380, 2014 U.S. Dist. LEXIS 112363, at *4, *26 (E.D. Wash. Aug. 13, 2014) (granting in part defendants' motion to dismiss plaintiff's amended complaint, which was filed pursuant to a grant of leave to amend); *Williams v. California*, 990 F. Supp. 2d 1009, 1027 (C.D. Cal. 2012) (dismissing plaintiffs' First Amended Complaint after granting plaintiffs leave to amend their initial complaint because they repeated the theories from their initial complaint). Indeed, in contrast to the generous policy of granting leave to amend under Rule 15 of the Federal Rules of Civil Procedure, plaintiffs face a higher standard to survive a motion to dismiss. *See United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) ("The standard for granting leave to amend is generous."); *see also dpiX LLC v. Yieldboost Tech., Inc.*, No. 14-cv-05382, 2015 U.S. Dist. LEXIS 117267, at *11-12 (N.D. Cal. Sept. 2, 2015) (Tigar, J.) (granting plaintiffs' contested motion for leave to amend, but inviting defendant to file a motion to dismiss the

newly amended complaint, stating that "[t]he merits or facts of a controversy are not properly decided in a motion for leave to amend and should instead be attacked by a motion to dismiss for failure to state a claim or for summary judgment").

Because this Court is not bound by the prior rulings of Judge Conti, the Court is not precluded from revisiting the issues addressed in Judge Conti's June 9, 2014 Order in deciding the instant motion. *See Castner v. First National Bank of Anchorage*, 278 F.2d 376, 380 (9th Cir. 1960) ("The second judge must conscientiously carry out his judicial function in a case over which he is presiding. He is not doing this if he permits what he believes to be a prior erroneous ruling to control the case."); *see also Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 530, 533 (9th Cir. 2000) (describing *Castner* as the "leading Ninth Circuit case on the preclusive effect of an interlocutory holding by another court in the same case" and stating that "[u]nder *Castner* . . . the District Court in its discretion may revisit prior interlocutory decisions entered by another judge in the same case if there are cogent reasons or exceptional circumstances"); *Comm. for Immigrants Rights of Sonoma Cty v. Cty of Sonoma*, No. C 08-4220 RS, 2010 WL 2465030, at *1 (N.D. Cal. June 11, 2010) (holding that it is not an abuse of discretion for a judge assigned to an ongoing case to reconsider an order issued by his or her predecessor, even if the predecessor addressed all issues raised by the parties). In any event, as revealed by his repeated recitation of the liberal standard under Rule 15, Judge Conti acknowledged that his allowance of the pleading amendment was preliminary in the sense that he was allowing the amendment in light of the "extreme liberality" of that rule. June 9, 2014 Order, at 4, 5, and 13.

## V.   ARGUMENT

In contrast to Judge Conti's June 9, 2014 Order allowing Sharp to preserve its joint-and-several liability claim pursuant to the generous standard of Rule 15, Judge Conti's March 13, 2014 Order provides sound rulings that the Court should follow here. Specifically, in the March 13, 2014 Order, Judge Conti properly held that: (1) the BTA's forum-selection clause is valid, mandatory, and enforceable; (2) Sharp's antitrust claims relate to the BTA; (3) Plaintiffs are bound by the BTA; and (4) Toshiba can enforce the BTA's forum-selection

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1    clause.  The June 9, 2014 Order does not attack those findings; instead, it tentatively raises

2    only one question: whether Sharp's joint-and-several liability claim relates to the BTA.

3    Indeed, in raising that question, Judge Conti refused to consider that Sharp had waived its

4    arguments regarding its joint-and-several liability claim by failing to raise any of them in

5    briefing related to the original motion to dismiss or amended motion to dismiss.  *See* June 9,

6    2014 Order, at 5.

7        As explained below, a plain reading of the BTA confirms that Sharp's joint-and-several

8    liability claim does relate to the BTA (and purchase orders thereunder) and therefore should

9    be adjudicated in the parties' chosen forum, pursuant to the BTA's forum-selection clause.

10   That conclusion is further established by Sharp's newfound admission that its joint-and-

11   several liability claim is in fact related to its direct claims, in that both categories of claims

12   rely on evidence of Toshiba's direct sales to Sharp.

13   **A.    The BTA's Forum-Selection Clause Is Valid, Mandatory, And Enforceable**

14       In the March 13, 2014 Order, Judge Conti enforced the BTA's forum-selection clause

15   because Sharp and Toshiba "explicitly agree[d] to handle all litigation related to the BTA,

16   which includes individual Agreements (and purchase orders), in [the] Osaka District Court."

17   ECF No. 2435, at 6.  In doing so, Judge Conti recognized the clearly defined policy that

18   contractual forum-selection clauses are prima facie valid and enforceable.  *Id.* at 4 (citing

19   *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972); *see also Sigma Six Tech., Inc. v.*

20   *Nagarro, Inc.*, No. C 08-05633, 2009 WL 2031771, at *4 (N.D. Cal. July 9, 2009) ("A forum-

21   selection clause is presumptively valid and should be honored absent 'some compelling and

22   countervailing reason.'  This is true even when the forum selection clause specifies a forum

23   outside of the United States.") (quoting *Bremen*, 407 U.S. at 1, 3-4, 12-13)); *Argueta v. Banco*

24   *Mexicana*, S.A., 87 F.3d 320, 325 (9th Cir. 1996) ("[F]orum selection clauses are prima facie

25   valid and should not be set aside unless the party challenging enforcement of such a provision

26   can show it is 'unreasonable' under the circumstances."); *TAAG Linhas Aereas de Angola v.*

27   *Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990) (holding that "[t]he

28   expansion of American business and industry will hardly be encouraged if, notwithstanding

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SHARP'S
SECOND AMENDED COMPLAINT BASED ON A FORUM-SELECTION CLAUSE
Case No. 07-5944 JST
MDL No. 1917

solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts") (quoting *Bremen*, 407 U.S. at 9).

A plain reading of the BTA justifies Judge Conti's decision to enforce the BTA.  The BTA's forum-selection clause provides that "in terms of litigation related to this Agreement or the individual Agreement, the Osaka District Court *shall be the court of competent jurisdiction*." Certified Translation at Art. 21.2 (emphasis added).  Such language confers mandatory jurisdiction.  *See Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989); *Ohkubo v. Antara Biosciences, Inc.*, 364 Fed. Appx. 340, 341-42 (9th Cir. 2010); *Hile v. Buth-Na-Bodhaige, Inc.*, No. C 07-00791 JSW, 2007 WL 4410774, at *2 (N.D. Cal. Dec. 14, 2007) (citing *N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995)); *see also Frietsch v. Refco Inc.*, 56 F.3d 825, 829 (7th Cir. 1995) (Posner, C.J.) ("The absence of the indefinite article . . . implies that there is only one place of jurisdiction.").

In *Ohkubo*, the Ninth Circuit interpreted a contract translated from Japanese and held that the word "shall" is a mandatory term and held the phrase "the court with jurisdiction," almost exactly the same as the BTA's "the court of competent jurisdiction," indicates exclusivity.  364 Fed. Appx. at 342.  Other courts have found the phrase used in the BTA, "the court of [] jurisdiction," reflects an intent for the forum to be exclusive.  *See Intermetals Corp. v. Hanover Int'l Aktiengesellschaft fur Industrieversicherungen*, 188 F. Supp. 2d 454, 460-61 (D.N.J. 2001).

Therefore, Judge Conti's March 13, 2014 Order holding that the BTA's forum-selection clause is mandatory and should be enforced according to its terms is confirmed by this Circuit's clear precedent, as well as the plain language of the contract, structure of the contract, and fundamental principles of contract interpretation.

**B.    Sharp's Antitrust Claims Relate To The BTA**

Judge Conti also correctly held that all of Sharp's antitrust claims — including its joint-and-several liability claim — relate to the BTA.  *See* March 13, 2014 Order, at 7.   Again, this holding is solidly based on binding precedent.  *First*, both the Supreme Court and the Ninth

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

Circuit have recognized that agreements to arbitrate are a specialized form of a forum-selection clause and have interpreted and enforced both types of clauses in the same way. *See Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 (1974) (holding that an agreement to arbitrate before an international tribunal should be treated and enforced the same way as a forum-selection clause selecting an international venue); *Richards v. Lloyd's of London*, 135 F.3d 1289, 1295 n.4 (9th Cir. 1998) (citing *Scherk* for the same proposition); *see also Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 440 (7th Cir. 2012) (noting that "[t]he stakes are less in the present case, which involves a choice between courts rather than between a court and an arbitrator"). ***Second***, it is well-established that arbitration and forum-selection clauses requiring claims to be resolved in a foreign venue apply to antitrust claims. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985) (holding that "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes" require that federal antitrust claims subject to a valid arbitration provision be resolved in the parties agreed-upon venue); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 723 (9th Cir. 1999) (holding antitrust claims are arbitrable); *see also Multimin USA, Inc. v. Walco Int'l, Inc.*, No. CV F 06-0226, 2006 WL 1046964, at *7 (E.D. Cal. Apr. 11, 2006) ("[A] forum selection clause applie[s] to antitrust claims because a forum selection clause covers 'causes of action arising directly or indirectly from' the agreement.") (quoting *Bense v. Interstate Battery Sys. of Am.*, 683 F.2d 718, 720 (2d Cir. 1982)). Again, Judge Conti's March 13, 2014 order was soundly based in precedent, and the BTA's forum-selection clause was properly applied to all of Sharp's asserted antitrust claims, including its joint-and-several liability claim.

### C.   Sharp Is Bound By The BTA

Although the Plaintiffs are not signatories to the BTA, Judge Conti properly recognized that the BTA's forum-selection clause applies to them because "any relationship between the Sharp Plaintiffs and Toshiba took place 'as part of the larger contractual relationship' between the two parent companies." March 13, 2014 Order, at 6-7 (quoting *Manetti-Farrow, Inc., v.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   *Gucci America, Inc.*, 858 F.2d 509, 511 (9th Cir. 1988)).   Judge Conti relied on binding

2   precedent.   *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir.

3   2007) (holding that forum-selection clauses apply to non-signatories "where the alleged

4   conduct of the non-parties is closely related to the contractual relationship" and where such a

5   "close relationship" exists, "'a range of transaction participants, parties, and non-parties,

6   should benefit from and be subject to forum selection clauses'" (quoting *Clinton v. Janger*,

7   583 F. Supp. 284, 290 (N.D. Ill. 1984)); *Universal Grading Serv. v. eBay, Inc.*, No. 08-CV-

8   3557 (CPS), 2009 WL 2029796, at *16-17 (E.D.N.Y. June 10, 2009) (holding that when a

9   "close business relationship" exists between parties, one party's consent to a forum-selection

10  clause is sufficient to bind the non-signatory).

11      One particular circumstance where a forum-selection clause may properly be enforced

12  against a non-signatory is where the non-signatory is affiliated with a signatory:  "A forum

13  selection clause is sometimes enforced by or against a company that is under common

14  ownership (for example as parent and subsidiary) with — that is, an affiliate of — a party to a

15  contract containing the clause . . . ."  *Adams*, 702 F.3d at 439-40; *see also id.* at 441 ("Were it

16  not for judicial willingness in appropriate circumstances to enforce forum selection clauses

17  against affiliates of signatories, such clauses often could easily be evaded.").

18      In its Second Amended Complaint, as it did in in all of its previous complaints, Sharp

19  alleges that "Sharp Electronics is the wholly owned U.S. sales and marketing subsidiary of

20  Osaka-based Sharp Corporation."  Sharp Compl. ¶ 20.  Sharp further alleges that "SEMA is a

21  wholly owned subsidiary of Sharp Electronics" (Sharp Compl. ¶ 22) and that "Sharp

22  Electronics, directly ***and through its subsidiaries***, purchased substantial amounts of CRTs

23  manufactured by Defendants . . . ."  Sharp Compl. ¶ 25 (emphasis added).  These allegations

24  are binding and provide ample support for the conclusion that there is a close affiliation

25  between the Sharp Plaintiffs and Sharp Corporation regarding purchasing activity that relates

26  to the BTA.  *See Posern v. Prudential Securities, Inc.,* No. C-03-0507 SC, 2004 WL 1145877,

27  at *3 (N.D. Cal. May 3, 2004) (holding that "judicial estoppel bars Plaintiffs from making

28  factual assertions that contradict their own previous allegations").  Because Plaintiff Sharp

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1    Electronics is the "U.S. sales and marketing subsidiary" for Sharp Corporation in Japan, Sharp

2    Electronics engages in sales and marketing efforts on behalf of Sharp Corporation in the

3    United States.   Plaintiff Sharp Electronics accomplishes this goal by making its own

4    purchases of CRTs in the United States, but also by making such purchases "through its

5    subsidiaries" (*i.e.*, Plaintiff SEMA).  The admission that Plaintiff Sharp Electronics is making

6    purchases "through its subsidiaries" is another indication that there is a unity of interest

7    between Sharp Corporation (the signatory to the BTA) and Plaintiffs Sharp Electronics and

8    SEMA.  *See also* Toshiba Ex. 3 ("5 Insights from Sharp Electronics Deputy GC Deborah

9    Tyler," Law360.com, Jan. 19, 2016, http://www.law360.com/articles/746675/5-insights-from-

10   sharp-electronics-deputy-gc-deborah-tyler) (last visited Apr. 12, 2016) (further establishing

11   that Sharp Electronics Corp. and Sharp. Corp. share a unity of interest).

12         Accordingly, Judge Conti's March 13, 2014 Order soundly held that Sharp is bound by

13   the BTA, preventing Sharp Corporation from escaping its agreement to litigate claims in

14   Japan merely by asserting claims on behalf of its subsidiaries, and recognizing that the claims

15   asserted by those wholly owned subsidiaries stem from those parties' relationship with Sharp,

16   thereby rendering them subject to the forum-selection clause entered into by their parent

17   company.

18         **D.      Toshiba Is Entitled To Enforce The Forum-Selection Clause**

19         Lastly, Judge Conti properly held that all of the Toshiba Defendants, including the

20   Toshiba Defendants that are not signatories to the BTA, have the right to enforce the forum-

21   selection clause against Sharp. *See* March 13, 2014, at 10 (dismissing Sharp's complaint with

22   prejudice as to all Toshiba Defendants).  Indeed, caselaw is clear that "non-signatories can

23   enforce arbitration clauses where there is a 'close relationship between the entities involved,

24   as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties

25   in the contract and . . . the claims [are] intertwined with the underlying contractual

26   obligations.'"  *In re TFT-LCD (Flat-Panel) Antitrust Litig.*, No. 07-1827 SI, 2011 U.S. Dist.

27   LEXIS 102958, at *29 (N.D. Cal. Sept. 9, 2011) (quoting *Mundi v. Union Sec. Life Ins. Co.*,

28   555 F.3d 1042, 1046 (9th Cir. 2009)).  *See Scherk*, 417 U.S. at 519  (holding an agreement to

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1   arbitrate before an international tribunal should be treated and enforced the same way as a

2   forum selection clause selecting an international venue); *Richards*, 135 F.3d at 1295 n.4.

3       Another decision issued in this litigation offers further guidance, as Judge Conti's March

4   13, 2014 Order aligns with his January 28 2013 order (ECF No. 1543) allowing all of the

5   Toshiba Defendants to enforce an arbitration clause against Costco.  Costco alleged that

6   various Toshiba Defendants, nearly the same Toshiba entities as named in the Sharp

7   Complaint, engaged in a conspiracy to fix the price of CRTs, and in doing so alleged that each

8   of the Toshiba Defendants "acted as the principal, agent or joint venturer of, or for, other

9   Defendants," that each Defendant's corporate family "engaged in conspiratorial meetings on

10  behalf of every company in that family," and that "all entities within the corporate families

11  were active, knowing participants" in the alleged conspiracy.  Costco Compl. ¶¶ 55-57 (ECF

12  No. 1982).  In light of these allegations, even though only one Toshiba Defendant was a

13  signatory to the Vendor Agreement containing the arbitration clause at issue, Judge Conti

14  dismissed Costco's Complaint and compelled Costco to arbitrate its claims against all of the

15  Toshiba Defendants.  ECF No. 1543.  As justification for doing so, Judge Conti stated the

16  "Plaintiffs' claims against the Toshiba Defendants, per its own complaint . . . relate to their

17  interrelated behavior and capacities as agents."  ECF No. 1543, at 9.

18      The same rationale applies again, as Judge Conti correctly recognized that all of the

19  Toshiba Defendants are entitled to enforce the BTA's forum-selection clause against Sharp.

20  March 13, 2014 Order, at 10.  Corroborating that holding, the Sharp Plaintiffs use the exact

21  language that Costco uses to describe the relationship among the Toshiba Defendants.  *See*

22  Sharp Compl. ¶ 76 (each of the Defendants "acted as the principal, agent or joint venture of,

23  or for, other Defendants"), ¶ 177 (each Defendant's corporate family "engaged in

24  conspiratorial meetings on behalf of every company in that family"), and ¶ 192 (all Toshiba

25  entities "were active, knowing participants" in the alleged conspiracy).  Consequently, under

26  the precedent in this case and others, the BTA's forum-selection clause is binding on all

27  corporate affiliates of the signatory, Toshiba Corporation.  *See* ECF No. 1543, at 7-9; *see also*

28  *In re: Titanium Dioxide Antitrust Litig*., 962 F. Supp. 2d 840, 851 (D. Md. 2013) (applying

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SHARP'S
SECOND AMENDED COMPLAINT BASED ON A FORUM-SELECTION CLAUSE
Case No. 07-5944 JST
MDL No. 1917

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1   equitable estoppel to allow non-signatory defendants to enforce a forum selection clause);

2   *Villanueva v. Barcroft*, 822 F. Supp. 2d 726, 739 (N.D. Ohio 2011) (holding the theory of

3   equitable estoppel is appropriate for a non-signatory to enforce a forum-selection clause).

4       **E.      A Plain Reading Of The BTA, Supported By Sharp's Critical Admission,**
5   **Confirms That Sharp's Joint-And-Several Liability Claim Relates To The**
    **BTA And Is Subject To The BTA's Forum-Selection Clause**

6       In *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. Of Texas*, 134 S.Ct.

7   568, 582 (2013), the Supreme Court held that a forum-selection clause specifying a foreign

8   tribunal should be addressed under the rubric of *forum non conveniens* and that, if the clause

9   applies, it trumps other private factors.  The BTA contains such a clause.

10      The BTA (a uniquely Japanese contract) reflects the intent of two Japanese corporate

11  families to resolve their disputes in Osaka, Japan.  That intent is discerned by reference to the

12  language actually used by the parties.  *See DOE 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir.

13  2009) (interpreting a forum-selection clause: "Contract terms are to be given their ordinary

14  meaning, and when the terms of a contract are clear, the intent of the parties must be

15  ascertained from the contract itself.").

16      Article 21 of the BTA, entitled "Resolution of Doubt or Disputes," contains the forum-

17  selection clause at issue in this case:

18          (1) When there are disputes or doubts that arise in relation to this Agreement or
19              individual Agreement, or when there are unsolved items in this Agreement or
                individual Agreement, resolutions shall be made between Party A and Party B in
20              good faith.

21          (2) In terms of litigation related to this Agreement or the individual Agreement, the
22              Osaka District Court shall be the court of competent jurisdiction.

23  In determining the scope of the forum-selection clause, the Court should read the BTA

24  holistically.  *See* Restatement (Second) of Contracts § 202 (1981) ("A writing is interpreted as

25  a whole, and all writings that are part of the same transaction are interpreted together.").

26      Article 21 reveals the signatories' understanding that there might be different types of

27  disagreements that arise in relation to the BTA (or individual agreements under the BTA).

28  One type of disagreement would be a "doubt" or an "unsolved item."  By use of these terms,

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1  the parties understood that there might arise questions about the breadth or scope of the BTA

2  or an individual agreement.  Per Article 21.1, the parties agreed that they would resolve such

3  disputes, doubts, or unsolved items in good faith.  Per Article 21.2, any resulting litigation

4  would occur in the Osaka District Court.

5      Sharp's joint-and-several liability claim raises a "dispute" in relation to the BTA.  By

6  Article 1.1 of the BTA, entitled "Basic terms and conditions," the parties agreed to "set their

7  foundation on mutual trust and respect for mutual benefits."  Certified Translation, at Art. 1.1

8  (showing that the parties agreed to the terms as to how they would conduct themselves as to

9  each other as covenant, and did not simply frame that obligation as "whereas clause").  By its

10  Complaint, Sharp alleges that Toshiba entered into, and concealed, a price-fixing conspiracy

11  with other co-conspirators, thereby incurring joint-and-several liability.  *See, e.g.*, Sharp

12  Compl. ¶ 2 ("Defendants [including Toshiba] and their conspirators formed an international

13  cartel that conducted a long-running conspiracy . . . [t]he purpose and effect of this conspiracy

14  was to fix, raise, stabilize and maintain prices for CRTs."), ¶ 166 ("Defendants and co-

15  conspirators would also agree on what to say about price changes or output restrictions to their

16  customers in order to conceal their conspiracy.").  If such allegations are true, then Toshiba

17  violated its duty to act with "mutual trust and respect for mutual benefits" as to Sharp.  The

18  dispute over whether in fact Toshiba failed in that duty is a dispute that must be resolved by

19  the Osaka District Court.

20      Moreover, any "doubt" as to whether Sharp's joint-and-several liability claim is

21  covered by the BTA, also relates that claim to the BTA, as the BTA explicitly states that

22  doubts arising in relation to the BTA must be resolved by the Osaka District Court.  Even if it

23  is true that, in executing the BTA, the parties did not anticipate the possibility of a party

24  seeking joint-and-several liability related to the BTA, then such an issue still relates to the

25  BTA, as the BTA states that any "unsolved items" must also be resolved in the first instance

26  by the Osaka District Court.

27      It is a well-accepted tenet of contract law that all terms of a contract should be given

28  meaning.  *See* Restatement (Second) of Contracts § 203 (1981) ("[A]n interpretation which

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.").  Applying this principle, the Court should give meaning to the parties' use of the words "dispute," "doubt," and "unsolved item."  When all of these terms are given a reasonable construction, it is apparent that Sharp and Toshiba intended to send any and all of their disagreements, whether known or unknown at the time of the BTA's signing, to the Osaka District Court — in Sharp's home prefecture — for resolution, if those disputes could not be resolved by the parties in good faith.  Further, if the Court finds that some of the language contained in the BTA is ambiguous, that "ambiguous language should be interpreted against the drafter because that party was in the best position to prevent the ambiguity."  *Northwest Administrators, Inc. v. B.V. & B.R., Inc.*, 813 F.2d 223, 226 (9th Cir. 1987) (quoting *United States v. Seckinger*, 397 U.S. 203, 216 (1970)).  Because Sharp drafted the BTA, any ambiguity in interpreting the BTA should be interpreted in favor of Toshiba.

In the June 9, 2014 Order, citing the liberal standard to grant leave to amend under Rule 15, Judge Conti declined to apply this plain reading of the BTA, and created the anomalous situation where Sharp's joint-and-several liability claim would be tried separately from its claims based on its direct purchases from Toshiba.  In doing so, the Court accepted Sharp's representation that its joint-and-several liability claim was "completely independent of Toshiba's commercial relationship with any Sharp entity."  Sharp's Motion for Leave, at 5. Judge Conti determined that because Sharp's claims based on its direct purchases from Toshiba differed entirely from all other purchases, those claims could be tried separately.  *See* June 9, 2014 Order, at 8 ("Any potential conspiracy-related joint and several liability Toshiba may have in relation to other agreements is distinct in scope.").

Ten months after securing leave to amend its complaint, Sharp took a diametrically opposite position, stating, in the context of opposing Toshiba's February 13, 2015 motion *in limine* to preclude evidence of Toshiba's sales to Sharp, that: "the fact that Sharp was one of Toshiba's CRT customers during the relevant period will be relevant at trial because some of the evidence that will be offered to prove Toshiba's participation in the conspiracy – which

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

1   makes it jointly and severally liable for Sharp's damages based on CRT purchases from other

2   defendants and co-conspirators – also reflects a customer-supplier relationship between

3   Toshiba and an affiliate of the Sharp plaintiffs."  Sharp Opp. at 3.  Critically, in doing so

4   Sharp acknowledged — as it must — that there is a relationship between Sharp's direct and

5   joint-and-several liability claims as to Toshiba, such that both types of claims stand on

6   evidence of Toshiba's sales to Sharp, and therefore both types of claims implicate the BTA.

7       Indeed, Sharp left little doubt that its alleged joint-and-several liability claim was

8   intertwined with its claims based on direct purchases from Toshiba.  Abandoning its

9   representation that revived its only remaining claim against Toshiba, *i.e.*, that Sharp's

10  purchases from Toshiba were "completely independent" from Sharp's joint-and-several

11  liability claim, Sharp argued that there was a whole host of reasons why Sharp's purchases

12  from Toshiba were relevant to its joint-and-several liability claim.  Sharp Opp. at 1 ("Sharp's

13  purchases from Toshiba are relevant or potentially relevant to a number of issues that remain

14  in the case.").  ***First***, Sharp argued that "co-conspirator communications that refer to Sharp as

15  a customer of Toshiba are highly probative of Toshiba's participation in a far-reaching

16  conspiracy, and so help to establish that Toshiba is jointly and severally liable for Sharp's

17  damages based on CRT purchases from Toshiba's co-conspirators."  Sharp Opp. at 1-

18  2.  ***Second***, Sharp argued that data relating to Sharp's purchases from Toshiba are essential to

19  the joint-and-several liability damages calculation by Sharp's economist Dr. Jerry

20  Hausman:  "The prices Sharp actually paid for CRTs from all sellers – including entities like

21  Toshiba from whom Sharp is not seeking damages in this litigation – were a necessary input

22  into Dr. Hausman's econometric model."  Sharp Opp. at 4.  ***Third***, Sharp argued that Sharp's

23  purchases from Toshiba in the United States are relevant to show Toshiba's interest in the

24  U.S. CRT market:  "Regardless of whether Sharp seeks damages on the purchases, the *fact*

25  that Toshiba sold CRTs in the United States is relevant and beyond dispute."  Sharp Opp. at 5

26  (emphasis in original).  ***Fourth***, Sharp even suggested that there may be additional, not yet

27  apparent, reasons why Sharp's purchases from Toshiba may be relevant at a trial addressing

28  Sharp's joint-and-several liability claim.  Sharp Opp. at 5 ("Whether and how Sharp will

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

1   introduce this evidence – and whether there will be additional relevant and permissible uses

2   for evidence of Toshiba's sales to Sharp – will depend upon a wide variety of factors

3   ….").  Sharp failed to inform Judge Conti of *any* of these arguments in 2014 when it moved to

4   amend its complaint in an attempt to revive its case against Toshiba.  All told, less than a year

5   after broadly proclaiming that Sharp's purchases from Toshiba were wholly irrelevant to

6   Sharp's joint-and-several liability claim, Sharp did an abrupt about-face and was arguing that

7   Sharp's purchases from Toshiba were highly relevant to the joint-and-several liability claim

8   for a variety of reasons.

9       Sharp's belated admission acknowledges the self-evident:  where a defendant is alleged

10  to have participated in a price-fixing conspiracy and that defendant has sold allegedly price-

11  fixed goods to the plaintiff, the plaintiff's joint-and-several liability claims are inextricably

12  intertwined with the plaintiff's claims based on the defendant's sales.  If the claims based on

13  the defendant's sales are subject to a forum-selection clause, the joint-and-several liability

14  claims should be, as well.  There is no sound basis to split the claims between two different

15  fora, and doing so would undermine the parties' forum-selection clause.  Indeed, aside from

16  Judge Conti's June 9, 2014 Order, there is no precedent to do so.

17      Other courts have held that non-contractual claims are bound by forum-selection clauses

18  when those claims "relate[] in some way to rights or duties enumerated in the contract" or

19  "implicate the contract's terms."  *Imemco Inc. v. Lumenis Inc., et al.*, No. SA CV 14-1877-

20  DOC (DFMx), 2015 U.S. Dist. LEXIS 97803, at *7-8 (C.D. Cal. July 27, 2015) (holding that

21  plaintiff's claim was subject to the forum-selection clause contained in the underlying contract

22  between the parties because the claim was related to a right enumerated in the contract); *see

23  also Fangman v. Genuine Title, LLC*, No. RDB-14-0081, 2015 U.S. Dist. LEXIS 165424, at

24  *46 (D. Md. Dec. 9, 2015) ("[P]leading alternate non-contractual theories is not alone enough

25  to avoid a forum selection clause if the claims asserted arise out of the contractual relationship

26  and implicate the contract's terms") (internal citations and quotations omitted).  Because

27  Sharp's joint-and-several liability claim relates to or implicates the contractual relationship

28  between Sharp and Toshiba, including the parties obligation to base their relationship on

White & Case LLP
701 Thirteenth Street, NW
Washington, DC  20005

"mutual trust and respect for mutual benefits," as well as the obligation to send any disputes arising from the agreement to Osaka Japan, that claim is bound by the BTA's forum-selection clause.  *Id*. at *46 ("'Courts in this circuit have consistently found facially contractual forum selection clauses to apply to related tort claims.'") (quoting *Varsity Gold, Inc. v. Lunenfeld & RND, Inc.*, No. CCB-08-550, U.S. Dist. LEXIS 100775, at *9 (D. Md. Dec. 12, 2008)).

## <u>CONCLUSION</u>

For these reasons, the Toshiba Defendants' motion to dismiss should be granted and Sharp's complaint should be dismissed in its entirety with respect to the Toshiba Defendants.

Respectfully submitted,

Dated:  April 12, 2016                    **WHITE & CASE**LLP

By: */s/ Lucius B. Lau*
_____
Christopher M. Curran (*pro hac vice*)
ccurran@whitecase.com
Lucius B. Lau (*pro hac vice*)
alau@whitecase.com
Dana E. Foster (*pro hac vice*)
defoster@whitecase.com
701 Thirteenth Street, N.W.
Washington, DC  20005
tel.: (202) 626-3600
fax: (202) 639-9355

*Counsel to Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., and Toshiba America Electronic Components, Inc.*

White & Case LLP
701 Thirteenth Street, NW
Washington, DC 20005

## CERTIFICATE OF SERVICE

On April 12, 2016, I caused a copy of "THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SHARP'S SECOND AMENDED COMPLAINT BASED ON A FORUM-SELECTION CLAUSE" to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.

*/s/ Lucius B. Lau*
Lucius B. Lau

THE TOSHIBA DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SHARP'S
SECOND AMENDED COMPLAINT BASED ON A FORUM-SELECTION CLAUSE
Case No. 07-5944 JST
MDL No. 1917