Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the*
*Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All Indirect Purchaser Actions | Master File No. CV-07-5944-JST;<br>No. CV-13-03234-JST<br><br>MDL No. 1917<br><br>**CLASS ACTION**<br><br>**INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO STATEMENT PURSUANT TO ORDER RE: OBJECTION TO *EX PARTE* COMMUNICATIONS AND *IN CAMERA* REVIEW OF BILLING RECORDS**<br><br>Hearing Date: April 19, 2016<br>Time: 2:00 p.m.<br>Court: 9, 19th Floor<br>Judge: Hon. Jon S. Tigar<br>Special Master: Martin Quinn, JAMS |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................1

**ARGUMENT** ........................................................................................................................................1

I.    OBJECTORS' ARGUMENTS DO NOT JUSTIFY APPLICATION OF THE
      LODESTAR METHOD ...........................................................................................................1

      A.    The Special Master Properly Applied the Favored Percentage-of-the-Fund Method
            with a Lodestar Cross-Check ........................................................................................1

      B.    Objectors' Time-Entry Parsing is Inappropriate Under a Lodestar Cross-Check .........3

      C.    The Objections to IPP Counsel's Time Records Do Not Justify Application of the
            Lodestar Method Or Any Further Reduction in IPP Counsel's Lodestar .....................5

            1.    The Objections Regarding Lead Counsel's Case Management Lack Merit ......5

            2.    IPP Counsel's Use of Quarter-Hour Billing Did Not Inflate the Lodestar ........6

            3.    Block Billing Did Not Inflate IPP Counsel's Lodestar .....................................9

            4.    Lead Counsel Did Not Bill For "Clerical" or "Unproductive" Time ..............10

            5.    Objectors' Claims Regarding the California Attorney General Remain
                  Unsubstantiated ................................................................................................11

            6.    No IPP Firm's Lodestar Includes Time For Non-Substantive Work ...............13

            7.    Firms That Made No Financial Contribution to the Litigation Fund ..............14

II.   LEAD COUNSEL HAS ALREADY PROVIDED AN ACCOUNTING OF THE
      FUNDS ..................................................................................................................................15

**CONCLUSION** ................................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*A.D. v. State Highway Patrol*,
 No. 07-5483, 2009 U.S. Dist. LEXIS 110743 (N.D. Cal. Nov. 10, 2009)....................9

*Blum v. Stenson*,
 465 U.S. 886 (1984)........................................................................................................ 1

*Bobol v. HP Pavilion Mgmt.*,
 No. C 0400082 JW, 2006 WL 927332 (N.D. Cal. Apr. 10, 2006) ...................................... 6

*Fernandez v. Victoria's Secret Stores, LLC*,
 No. CV 06–04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008) ............................. 3

*Found. v. Office of Dir. of Nat'l Intelligence*,
 No. C 07-05278, 2008 WL 2331959 (N.D. Cal. June 4, 2008) ......................................... 6

*Fox v. Vice*,
 131 S. Ct. 2205 (2011)................................................................................................. 5

*Goldberger v. Integrated Resources, Inc.*,
 209 F.3d 43 (2d Cir. 2000) ........................................................................................ 4

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983)..................................................................................................... 2

*In re Activision Securities Litig.*,
 723 F. Supp. 1373 (N.D. Cal. 1989) ......................................................................... 1

*In re Automotive Refinishing Paint Antitrust Litig.*,
 No. MDL 1426, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008) ............................................... 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
 M-02-1486 (N.D. Cal. June 27, 2014)....................................................................... 2

*In re High Tech Employees*,
 Case No. 11–CV–02509–LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015)............................... 4

*In re Omnivision Technologies, Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................... 1

*In re Optical Disk Drive Antitrust Litig.*,
 Case No. 10-md-2143 RS (N.D. Cal. July 23, 2015) ................................................ 2

*In re Rite Aid Corp. Secs. Litig.*,
 396 F.3d 294 (3d Cir. 2005) ..................................................................................... 4

*In re TFT-LCD Antitrust Litig.*,
 No. 07-md-1827, ECF No. 7165 (N.D. Cal. 2012)................................................... 14

*In re Warfarin Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir. 2004) ................................................................................... 14

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. C-07-5944 JST, 2016 WL 183285 (N.D. Cal. Jan. 14, 2016) ...................................................... 2

*In re: Static Random Access Memory (SRAM) Antitrust Litig.*,
   No. 07-md-1819-CW (N.D. Cal. June 30, 2011) ............................................................................... 2

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07-1827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) .......................................... 2, 4, 14

*O'Bannon v. NCAA*,
   No. 09-cv-3329 CW, 2016 WL 1255454 (N.D. Cal. March 31, 2016) ................................... 7, 8, 9

*Perfect 10, Inc. v. Giganews, Inc.*,
No. CV 11-07098-AB SHX, 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015)……………………………9

*Prudential Ins. Co. of Am. v. Remington*,
   No. 2:12–cv–02821–GEB–CMK, 2014 U.S. Dist. LEXIS 9209 (E.D. Cal. Jan. 24, 2014) ............. 6

*Robinson v. Plourde*,
   717 F. Supp. 2d 1092 (D. Haw. 2010) ............................................................................................... 6

*Rosales v. El Rancho Farms*,
   2015 U.S. Dist. LEXIS 95756 (E.D. Cal. July 21, 2015) .................................................................. 6

*Secalt S.A. v. Wuxi Shenxi Const. Mach., Inc.*,
   668 F.3d 677 (9th Cir. 2012) .............................................................................................................. 9

*Six (6) Mexican Workers v. Arizona Citrus Growers,*
   904 F.2d 1301 (9th Cir. 1990) ............................................................................................................ 1

*Stormans Inc. v. Selecky*,
906 F. Supp. 2d 1093, 1104 (W.D. Wash. 2012)………………………………………………………..6

*United Steelworkers v. Retirement Income Plan,*
   512 F.3d 555 (9th Cir. 2008) .............................................................................................................. 9

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ........................................................................................................ 2, 4

*Welch v. Metro. Life Ins. Co.*,
   480 F.3d 942 (9th Cir. Cal. 2007) ................................................................................................... 6, 9

*Young v. Polo Retail, LLC,*
   No. C-02-4546 VRW, 2007 WL 951821 (N.D. Cal. March 28, 2007) ........................................... 3

**Other Authorities**

Task Force on Lawyer Business Ethics, *Statement of Principles*,
   51 Bus. Law. 1303 (1996) ................................................................................................................. 6

Third Circuit Task Force Report, 208 F.R.D. 340, 355 (2002) .......................................................... 2

1   Indirect Purchaser Plaintiffs ("IPPs") respond as follows to the Statement Pursuant to Order
2   Re: *Ex Parte* Communications and *In Camera* Review of Billing Records (ECF No. 4545-4)
3   ("Stmt."), filed by Objectors Cooper and Scarpulla ("Cooper/Scarpulla" or "Objectors").

## INTRODUCTION

For months, Objectors have insisted that access to IPP Counsel's time and expense records was germane to their objections.  They have now had the opportunity to review those records.  Yet, their arguments remain unsubstantiated and fail to bring anything new to the table.  Most objections have been raised before and continue to lack merit.  (*See, e.g.,* Dkt. No. 4437 at 11 (request for a lodestar analysis); *id.* at 12 (objection to block billing and quarter-hour increments); *id.* at 13 (objection regarding the California Attorney General ("CA AG") litigation.)  In addition, Objectors fail to explain why any new objections could not have been raised previously, in direct violation of this Court's Order. (*See* ECF No. 4508 at 2.) The objections should be overruled in their entirety.

## ARGUMENT

### I.   OBJECTORS' ARGUMENTS DO NOT JUSTIFY APPLICATION OF THE LODESTAR METHOD

#### A.   The Special Master Properly Applied the Favored Percentage-of-the-Fund Method with a Lodestar Cross-Check

In common fund cases, such as this one, the overwhelming weight of authority—in the Ninth Circuit and nationwide—holds that the preferred method for calculating an attorney fee award is the percentage-of-the-fund method with a lodestar cross-check.  *See Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990), citing *Blum v. Stenson,* 465 U.S. 886, 900 n. 16 (1984) ("Although statutory awards of attorneys' fees are subject to 'lodestar' calculation procedures, a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery."); *In re Activision Securities Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ("this court concludes that in class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%"), *cited with approval by In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("[U]se of the percentage method in common fund cases

appears to be dominant. . . . The Court finds [the] advantages persuasive, and adopts the percentage method in this matter.").[1]  In fact, virtually all of the recent attorney fee awards in antitrust class actions in this District—including in this case—have employed the percentage method to calculate the aggregate fee to class counsel.[2]  Thus, the Special Master was on firm ground when he elected to use the percentage method here.  (ECF No. 4351 ("R&R") at 53-55.)

The Special Master also performed a detailed analysis of the *Vizcaino* factors[3] to calculate a reasonable fee here, and appropriately gave the most weight to "[t]he most critical factor . . . the degree of success in achieving results for the class." (R&R at 56 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 434-436 (1983)).)  As the Special Master noted, there is no dispute that "the settlement amount of $576,750,000 is the second-largest monetary recovery in any indirect purchaser price-fixing case (after the *LCD* case)."  (R&R at 56.)  It is all cash.  No *cy pres* distribution is contemplated and there will be no reversion to the defendants under any circumstances.  (*Id.*)  It is an "unarguably superb result" for the class.  (*Id*. at 63.)

More than 4,000 docket entries highlight the eight years of work that led to that result, from multiple dispositive motions to worldwide discovery conducted in several foreign languages, class certification, FTAIA challenges, summary judgment, trial preparation, protracted settlement negotiations, and more. (*See* ECF No. 4071-1, ¶¶ 5-8.)  IPPs' claims were opposed at every turn by the most sophisticated (and well-compensated) defense lawyers in the country, making the case unusually protracted, risky, and expensive.  (*Id.*)  IPP Counsel in turn committed almost $2.5 million and tens of millions of dollars of professional time to prosecute the claims, all on contingency.  The

---

[1] *See also* Third Circuit Task Force Report, 208 F.R.D. 340, 355 (2002) ("A percentage fee, tailored to the realities of the particular case, remains superior to any other means of determining a reasonable fee for class counsel.").

[2] *See, e.g., In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 183285, at *1-3 (N.D. Cal. Jan. 14, 2016) (applying percentage method and awarding 30% fee to Direct Purchaser Plaintiffs); *In re TFT-LCD Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900, at *7-8 (N.D. Cal. Apr. 3, 2013) ("*LCD III*") (28.6% fee); *In re: Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-1819-CW (N.D. Cal. June 30, 2011) (ECF No. 1370) (30% fee); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* M-02-1486 (N.D. Cal. June 27, 2014*)* (ECF No. 2234) (25% fee); *In re Optical Disk Drive Antitrust Litig.*, Case No. 10-md-2143 RS (N.D. Cal. July 23, 2015) (Dkt. No. 1658) (30% fee).

[3] *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048-49 (9th Cir. 2002).

1  time and money advanced on class members' behalf, without any guarantee of a return, has been at
2  risk for many years.  The Special Master properly considered all of these circumstances and found
3  that the "superb result," together with the "extraordinary risks," complexity and eight-year duration
4  of this litigation, warrant an upward adjustment from the 25% benchmark.  (*Id.* at 69.)

Objectors ignore the clear preference for the percentage-of-the-fund approach in common fund cases, ignore the extraordinary risks and complexities faced by IPP Counsel, and belatedly attempt to belittle the result achieved.[4]  Their continued insistence that the Court should apply the lodestar method to calculate the fee here (Stmt. at 2-3) is at odds with the law, the general practice in this District and the facts of this case.  Objectors cite *no law* supporting their position that the Court should employ a strict lodestar analysis and make individual fee awards (including multipliers) to each of the 50 IPP firms.  Moreover, as further described in Section C below, despite having access to IPP Counsel's time records, Objectors still provide no factual support for their position beyond vague, *ad hominem* attacks on Lead Counsel and his running of the case.  These unsupported attacks on Lead Counsel provide no basis for this Court to depart from the well-accepted percentage method for calculating the fee award here.

**B.     Objectors' Time-Entry Parsing is Inappropriate Under a Lodestar Cross-Check**

The percentage method with a lodestar cross-check not only aligns class/lawyer interests in a sensible way, but avoids precisely the type of wasteful time entry-parsing in which Objectors seek to engage.  *See Young v. Polo Retail, LLC,* No. C-02-4546 VRW, 2007 WL 951821, at *6 (N.D. Cal. March 28, 2007) ("In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours."); *Fernandez v. Victoria's Secret Stores, LLC*, No. CV 06–04149 MMM (SHx), 2008 WL 8150856, at *14 (C.D. Cal. July 21, 2008) ("the lodestar 'cross-check' need not be as

---

[4] Objectors argue for the first time that the settlements "do[] not represent a superb recovery in this case" as compared to *LCD*.  (Stmt at 9.)  They do not and cannot explain why they could not make this objection before now. *See* ECF No. 4508 at 2 ("[A]ny such [new] objection must explain why it could not have been brought beforehand.") They are also wrong. *LCD* was more straightforward than this case. (*See* R&R at 57; ECF No. 4373 at 7-8 (describing additional obstacles in *CRT* vs. *LCD*.)) Similarly, IPP Counsel *has* provided information comparing the settlement amount with the amount that could have been achieved at trial.  (*See* ECF No. 4449 at 28.)

exhaustive as a pure lodestar calculation. . . . Instead, the lodestar calculation serves as a point of comparison by which to assess the reasonableness of a percentage award. As a result, the lodestar can be approximate and still serve its purpose."); *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) ("where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court"); *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.")  Under these standards, the Special Master's review of a limited subset of IPP Counsel's time records was more than sufficient.

The wastefulness of Objectors' proposed approach is highlighted by the fact that, even if the Court were to reduce IPP Counsel's lodestar by another 10%[5] (for the purpose of performing the cross-check analysis), the resulting multiplier of 2.4 would be well within the acceptable range.[6] *See* R&R at 74; *Vizcaino*, 290 F.3d at 1051.  Indeed, it would still be lower than the multipliers approved in recent antitrust cases in this District—cases of lower risk, lesser complexity and shorter duration. *See, e.g., In re High Tech Employees,* No. 11–CV–02509–LHK, 2015 WL 5158730, at *11 (N.D. Cal. Sept. 2, 2015) (2.5 multiplier in four year case that did not involve complex foreign language issues or differing indirect purchaser laws for 22 states); *LCD III,* 2013 WL 1365900 (2.6 multiplier in six year case, where the conspiracy was "much more recent, so proof problems were far easier," and "the Justice Department obtained dozens of guilty pleas, which eased the path to finding of liability." (R&R at 57.)).

Further, even in the context of a fee shifting statute in which the lodestar method is employed, the Supreme Court has emphasized that "the determination of fees 'should not result in a second major litigation.' [T]rial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

---

[5] The Special Master has already reduced IPP Counsel's lodestar by 10%; thus the total reduction would be 20%.

[6] A 20% reduction to IPP Counsel's original lodestar at current rates of $90,075,076.90 produces a reduced lodestar of $72,060,061.60, a reduction of over $18,000,000.  The resulting multiplier ($173,250,000 fee award divided by $72,060,061.60 reduced lodestar) is 2.4.

Finally, Objectors do not challenge a number of important findings by the Special Master. They do not contest, for example, his findings on billing rates. (*See* R&R at 69-70 (finding IPP Counsel's average hourly rate to be "reasonable and responsible"; *id.* at 70 ("Lead Counsel's rates were low"; "courts in the Northern District have repeatedly approved billing rates in the range seen in this case").) Nor do Objectors challenge the Special Master's finding that the 183,000 total hours spent on this litigation was reasonable in light of the eight year duration of the case, and when compared to the time expended in similar cases. (*See id.* at 71 (noting that in *LCD*, counsel "expended 313,000 hours over six years, or about 70% more time"; *id.* at 72 ("for the most part the case was staffed in a reasonably 'lean and mean manner'")); *see also* IPPs' Fee Reply at 18, ECF No. 4373 (noting that in the indirect purchaser *DRAM* case, counsel billed 152,349 hours even though they never reached the class certification stage).) Objectors' most recent objections do nothing to refute these findings, which confirm the appropriateness of the recommended aggregate fee award under both percentage-of-recovery and lodestar "cross check" standards.

### C. The Objections to IPP Counsel's Time Records Do Not Justify Application of the Lodestar Method Or Any Further Reduction in IPP Counsel's Lodestar

#### 1. The Objections Regarding Lead Counsel's Case Management Lack Merit

Once again, Objectors accuse Lead Counsel of "questionable staffing and strategic decisions." (Stmt. at 2.) Yet despite now having access to Lead Counsel's time records, they fail to cite even one example in support of their claim. Moreover, that claim is directly refuted by (1) the declarations of other IPP counsel who—unlike Objectors—worked extensively on this case (*see* ECF No. 4373-3 (Exs. B-J)); and (2) the findings of the Special Master. (*See, e.g.,* R&R at 60-62.) Likewise, they cite not one example of Lead Counsel "bill[ing] large amounts of time for unproductive review of other counsel's work product. . . ." (Stmt. at 2.)

Objectors' claim that Lead Counsel treated this case like a "Get-Rich-Quick" card is absurd. To the extent such hyperbole even warrants a response, the eight-year history of the litigation, thousands of docket entries, and findings of the Special Master make clear that the case was the antithesis of a "Get-Rich-Quick" card for Lead Counsel—or indeed for any IPP firm. The costs, risks, and work required are beyond reasonable dispute.

### 2. IPP Counsel's Use of Quarter-Hour Billing Did Not Inflate the Lodestar

Objectors again insist that a handful of firms' practice of recording time in quarter-hour billing increments "distorts the accuracy of the time records and has the effect of greatly increasing the overall amount of time for which compensation is sought. . . ." (Stmt. at 3.)  But Objectors misstate the applicable law and, in any event, fail to show any abusive billing practices.

First, there is no rule against quarter-hour billing.  Indeed, District Courts in the Ninth Circuit have found billing in quarter-hour increments to be reasonable.  *See, e.g.*, *Bobol v. HP Pavilion Mgmt.*, No. C 0400082 JW, 2006 WL 927332, at *5 (N.D. Cal. Apr. 10, 2006) (rejecting requested 20% reduction for billing in quarter hour increments as "unduly speculative and arbitrary" where the total hours claimed were reasonable); *Found. v. Office of Dir. of Nat'l Intelligence*, No. C 07-05278, 2008 WL 2331959, at*6 (N.D. Cal. June 4, 2008) ("[T]here is no evidence that plaintiff's use of quarter-hour increments posed a threat of over-billing."); *Stormans Inc. v. Selecky*, 906 F. Supp. 2d 1093, 1104 (W.D. Wash. 2012) ("quarter-hour billing increments are reasonable").  The key inquiry, as the American Bar Association explains, is whether "***the increments are unreasonably large or are used in an abusive manner.***" Task Force on Lawyer Business Ethics, *Statement of Principles*, 51 Bus. Law. 1303 (1996) (hereafter, "ABA Statement of Principles") at 10 (emphasis added).[7]

Second, in each of the cases cited by Objectors, class counsel's lodestar was reduced because the 15-minute increments *were* abusive and actually, or at least likely, resulted in the inflation of counsel's lodestar.  *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948-949 (9th Cir. Cal. 2007) (finding hours were inflated because counsel repeatedly billed more for tasks that took a fraction of the time); *Robinson v. Plourde*, 717 F. Supp. 2d 1092, 1100-1101 (D. Haw. 2010) (same); *Prudential Ins. Co. of Am. v. Remington*, No. 2:12–cv–02821–GEB–CMK, 2014 WL 294989, at *4 (E.D. Cal. Jan. 24, 2014) (same); and *Rosales v. El Rancho Farms*, No. 1:09-cv-00707, 2015 WL 4460635, at *30 (E.D. Cal. July 21, 2015) (same); *compare with O'Bannon v. NCAA*, No. 09-cv-

---

[7] "[L]awyers generally keep track of the time spent using standard increments of time, commonly six minutes (0.1 hour), ten minutes (1/6 hour) or fifteen minutes (1/4 hour). This approach is essential and should not be objectionable unless the increments are unreasonably large or are used in an abusive manner." *Id.* at 10.  *See also* Second Suppl. Decl. of Richard Pearl ("Pearl Decl.") ¶ 7 (submitted herewith).

1   3329 CW, 2016 WL 1255454, at *7 (N.D. Cal. March 31, 2016) (overruling quarter-time entry
2   objections because the practice did not result in any significant overstatement of hours spent on
3   tasks). Moreover, each of these cases (except *Rosales*) was a fee-shifting case applying the lodestar
4   method and requiring a more detailed analysis of the lodestar than is required here.

5         Here, Objectors fail to show that the quarter-hour increments were "used in an abusive
6   manner," or otherwise substantiate their assertion that IPP Counsel's use of quarter-hour billing has
7   "increase[ed] the overall amount of time for which compensation is sought." (Stmt. at 3.) Objectors
8   note that five firms[8] utilized quarter-hour billing. But none of the five firms mandated a minimum
9   quarter-hour billing increment, all applied billing judgment, and all made substantive, meaningful
10  contributions to the successful result. (*See* Alioto Decl., ¶¶ 2-6; Gralewski, Jr. Decl., ¶¶ 2-5; Green
11  Decl., ¶¶ 4-7; Novak Decl., ¶¶ 3-5; Battin Decl., ¶¶ 3-5, submitted herewith.)

12        Despite arguing that all five firms' lodestars should be reduced, Objectors provide only a
13  small sample of time records for Mr. Alioto (Stmt. at 3, Appendix A), and Ms. Capurro (Stmt. at 4,
14  Appendix C). Objectors provide no specific examples from Ms. Capurro's billing records in support
15  of their claims, and cite to only three entries from Mr. Alioto's billing records. (Stmt. at 3-4.)
16  Further, a review of those entries shows that Objectors misrepresent them. For example, the
17  November 18, 2010 entry, which Objectors claim "consists of the word 'JAMS' and a time amount
18  of '.25'" (*id.* at 3), in fact states at the bottom of the time slip "rev. + pay JAMS," indicating that Mr.
19  Alioto spent 15 minutes reviewing a JAMS bill and arranging for payment, in addition to a litany of
20  other tasks that same day. (Appendix A at 15; *see also* Alioto Decl. ¶¶ 3-4 (explaining Mr. Alioto's
21  time entries).) Similarly, Objectors claim that the November 22, 2010 entry "states 'Guido' and
22  gives a time amount of '.75.'" But the entry actually states: "t/c Guido re order transcript of J. Legge,
23  further action J. Legge orders, Lemstra retained in Netherlands." (*Id.* at 16.)

24        The October 3, 2014 entry mentioned by Objectors is not—as Objectors contend—any less
25  detailed than the entries from earlier in the case. It contains nine separate entries, all of which are

---

[8] Trump, Alioto, Trump & Prescott; Kirby McInerney; Straus & Boies; Green & Noblin; and Milberg LLP.

7
INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO STATEMENT PURSUANT TO ORDER RE: OBJECTION
TO EX PARTE COMMUNICATIONS AND IN CAMERA REVIEW OF BILLING RECORDS
Master File No. CV-07-5944-JST

1  detailed and clearly legible.  (*Id*. at 37.)  The same is true of Mr. Alioto's other 2014 entries.  They
2  are merely recorded in a slightly different format. (*See* Alioto Decl. ¶ 4 (explaining change in
3  format.)  And once again, Objectors misrepresent the entry, inferring that it states vaguely "f/n re
4  assignments."  (Stmt. at 3.)  The entry actually states: "Ltr fr Scarpulla et al re trial team; f/n re
5  assignments, D teams, issue teams."  (Appendix A at 37.)

6        In other words, Objectors have mined the time records, yet the examples they emphasize for
7  the Court are described in misleading and incomplete fashion in their briefs.  There is simply no
8  substance to these objections.  Objectors fail to show that any of Lead Counsel's—or any of the
9  other four firms'—entries reflect an unreasonable amount of time billed for a particular task.  Nor do
10  they contend that the total time billed by Lead Counsel or any other IPP Counsel on any given day is
11  unreasonable.  Moreover, Objectors' conclusory accusations are contrary to the findings of the
12  neutral Special Master, who found that IPP Counsel's billing records "appear highly reliable and
13  detailed and that the time spent and rates charges were reasonable for a case of this complexity."
14  (R&R at 73.)  The Special Master's assessment of the billing records here correlates with the recent
15  discussion of quarter hour billing in *O'Bannon v. NCAA*, 2016 WL 1255454 at *7, where the district
16  court rejected the NCAA's requested 20% reduction because the practice did not result in any
17  significant overstatement of hours.

18        In light of the foregoing, Objectors' proposal that the Court should reduce the five firms'
19  lodestars by an *additional* 20%—on top of the 10% already recommended by the Special Master, the
20  approximately 7% total reduction pursuant to the audit conducted by Lead Counsel, *and* the internal
21  audits that all IPP firms were instructed to conduct[9] —is misplaced.  The reductions already made to
22  IPP Counsel's lodestars are more than sufficient to address any purported inflation caused by billing
23  in quarter-hour increments.  In addition, where courts have made 20% reductions, they relied on
24  specific examples of excessive or unreasonable billing.  *See, e.g., Welch,* 480 F.3d at 949 (affirming

---

[9] *See* ECF No. 4071-1, ¶¶ 118-119 (describing instructions to IPP firms before they submitted their time to Lead Counsel to remove certain categories of time, and the audit conducted before submitting the joint fee petition to the Court); Alioto Decl. ¶ 11 (describing audit reductions); Gralewski, Jr. Decl., ¶ 5 (same); Green Decl., ¶ 7 (same); Novak Decl., ¶ 5 (same); Battin Decl., ¶ 3 (same).

20% reduction where the district court "expressly correlated its reduction for quarter hour billing to actual over-billing"). Here there is no basis for concluding that *any* abusive overbilling occurred, let alone overbilling on the order of 20%.

### 3. Block Billing Did Not Inflate IPP Counsel's Lodestar

Objectors contend—again without citation to *any* specific examples from IPP Counsel's billing records—that a further reduction to the lodestar is warranted due to "block billing." (Stmt. at 5-6.) However, reductions for block billing may only be applied to problematic block-billed entries; it is error to reduce non-problematic entries for block billing. *See* Pearl Decl. ¶ 2*; Welch,* 480 F.3d at 948 (reversing 20% reduction for block billing as excessive). Consequently, any block billing objection must specify and quantify the particular entries that supposedly constitute block billing and also specifically identify those portions that impede the determination of reasonable fees. *See* Pearl Decl. ¶ 2; *Secalt S.A. v. Wuxi Shenxi Const. Mach., Inc.,* 668 F.3d 677, 690 (9th Cir. 2012) (rejecting arguments that fees should have been reduced for insufficient description and block billing); *United Steelworkers v. Retirement Income Plan,* 512 F.3d 555, 565 (9th Cir. 2008) (same). Objectors have not shown which of IPP Counsel's supposedly blocked-billed entries are problematic, so no reduction is appropriate.

Moreover, as the Special Master recognized, numerous federal courts in the Ninth Circuit have found block billing perfectly acceptable where the entries are sufficiently detailed and do not impede the determination of reasonable hours. *See, e.g., United Steelworkers*, 512 F.3d at 565; *Secalt*, 668 F.3d at 690; *O'Bannon,* 2016 WL 1255454, *5-6 ("block billing is a typical practice in this district, and blocked-bills have been found to provide a sufficient basis for calculating a fee award"); *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2015 WL 1746484, at *25 (C.D. Cal. Mar. 24, 2015) (entries not block-billed because they "reflect itemized statements of the specific tasks defense counsel undertook"); *A.D. v. State Highway Patrol*, No. 07-5483, 2009 U.S. Dist. LEXIS 110743, at *11 (N.D. Cal. Nov. 10, 2009), *rev'd on other grounds*, 712 F. 3d 446 (9th Cir. 2013) ("block billing" summaries "sufficiently describe[d] the tasks performed" to enable review of fee petition). *See also* Pearl Decl. ¶¶ 4-6 (block billing is a common practice).

1   Here, as in the foregoing cases, IPP Counsel's billing records are "highly reliable and
2   detailed and [] the time spent . . . [was] reasonable for a case of this complexity."  (R&R at 73; *see*
3   *also* Pearl Decl. ¶3 (opining that the billings here are sufficiently detailed and many of the entries do
4   not even constitute block-billing.).)  Even a cursory review of Lead Counsel's time records in
5   Appendices A & C confirms these findings to be accurate.  Thus, no additional reduction in IPP
6   Counsel's lodestar is required for so-called "block-billing."

### 4. Lead Counsel Did Not Bill For "Clerical" or "Unproductive" Time

8   In a footnote, Objectors claim that "[b]oth Mr. Alioto and Ms. Capurro have extensive time
9   entries for clerical work—'organizing materials' and 'arranging files' for which they billed the Class
10  between $500/hour and $850/hour." (Stmt. at 4 n. 1.)  In support, they cite just two examples from
11  Lead Counsel's billing records, neither of which refers to "organizing materials" or "arranging
12  files."

13  Mr. Alioto's November 18, 2010 entry states: "further emails re establish d.b. [document
14  review database] + conf LR + JMP re inventory of all D docs to date."  (Appendix A at 15.) At the
15  time, Mr. Alioto was working with Milberg LLP to establish a database in which to store and review
16  Defendants' documents.  IPPs were also in the midst of extensive meet and confers with Defendants
17  regarding their document productions, and several Defendants were refusing to produce certain
18  categories of information or claimed the documents for certain important custodians could not be
19  found/had been destroyed.  Thus, it was necessary to "inventory" the substance of Defendants'
20  productions to see what had been produced, and what IPPs still needed to seek.  This was not a
21  clerical exercise, and did not involve organizing materials or arranging files.  (Alioto Decl. ¶ 7.)

22  Ms. Capurro's October 3, 2011 entry likewise involves neither organizing materials nor
23  arranging files.  Objectors appear to be referring to the following notation in the entry: "Various
24  emails to firms re start of doc review and docs they need to review to prepare for same, *review files*
25  *re same,* assign people to various issue teams etc., f/n re same." (Appendix C at 2, emphasis added.)
26  This merely indicates that Ms. Capurro reviewed her files to ensure she was providing the correct
27  materials (e.g. the operative Complaint, memoranda regarding the Defendants, various legal issues,

the CRT industry, etc.) to bring the new reviewers up-to-speed on the case for the document review. Again, this was not a clerical task. (Alioto Decl. ¶ 8.)

Objectors also object to time entries by Lead Counsel that contain the notation "f/n" ("file note"). (Stmt. at 6.) Despite admitting that they do not know what these entries mean, Objectors do not hesitate to condemn them as "unproductive" and surmise—wrongly—that Lead Counsel wasted time "writing notations in their files to memorialize pleadings, emails and/or telephone conversions." (*Id.*) Far from being unproductive, Lead Counsel's "file notes" were an extremely important and necessary part of managing this case. (Alioto Decl. ¶ 9.)

"File notes" included, *inter alia*, lists of action items, lists of assignments for future work, memoranda regarding various legal issues, notes memorializing meet and confer calls with opposing counsel and notes memorializing telephonic hearings or conference calls with the Special Masters. Taking notes of a meet and confer call, for example, was necessary for drafting the letter to opposing counsel memorializing the call, including the agreements reached and the disputes remaining. Such letters need to be accurate because they are often submitted to the Court as part of a later motion to compel. (*Id.*) Time spent on such tasks is properly included in Lead Counsel's lodestar.

In general, moreover, Objectors are wrong to challenge billing entries that fall under the category of managing and organizing a complex case. That is fundamentally Lead Counsel's job, which necessarily requires time-consuming work devoted to things like file notes, organizational planning, dealing with litigation support vendors, making assignments, monitoring the work of co-counsel, and much more—all of which is properly compensable attorney time.

### 5.   Objectors' Claims Regarding the California Attorney General Remain Unsubstantiated

Despite the Court's admonition that only new objections be raised, Objectors once again assert that Lead Counsel engaged in an "unnecessary fight" with the CA AG. (*See* Stmt. at 6-7; ECF No. 4437 at 13.) IPPs have already responded on this point, *see, e.g.*, ECF No. 4449 at 37-38 (IPP Response to Objections), and so only briefly respond below.

First, the Special Master already rejected Objectors' contention. (*See* R&R at 64-65.) As he noted, Objectors failed to submit any evidence to support their claim. (*See id.* at 64 ("the Special

1  Master cannot give credence to a criticism that is not backed up by factual detail in the record").)
2  Objectors' latest salvo again lacks an evidentiary basis. For example, although they claim that a
3  "substantial amount of time" was spent on the CA AG litigation, and although they now have had
4  access to all of IPP Counsel's time records—which they purportedly needed to review to substantiate
5  their claim—they cite to only one billing entry.

6  Nor do Objectors provide support for their contention that Lead Counsel's time spent on
7  settlement matters "was made up primarily of time Mr. Alioto spent fighting with the Attorney
8  General." (Stmt. at 6-7.) To the contrary, this time was spent "primarily" negotiating settlements
9  with nine groups of defendants, engaging in mediations before retired Judges Walker and Smith,
10 drafting settlement agreements, preparing settlement approval papers, defending the settlements
11 against attack (in the trial court and on appeal), and negotiating and obtaining proffers pursuant to
12 the settlements. This activity consumed Lead Counsel's attention for many months during the case.

13 Second, as IPPs have already demonstrated, and Objectors do not and cannot refute, IPPs'
14 involvement in the CA AG's state court litigation stems from *Philips*' (not the AG's) insistence that
15 its settlement with the CA AG would preclude claims of California indirect purchasers in this MDL.
16 (*See, e.g.*, ECF No. 3034 at 1 (Philips motion for summary judgment as to "claims of persons who
17 did not opt out of an action brought on their behalf by the Attorney General of California as *parens*
18 *patriae* asserting the same claims as those asserted here".) The IPPs had to take action. Had Philips'
19 argument carried the day, there was the real risk that the claims of California individuals in this case
20 could be released by the judgment in the California case. Indeed, as IPPs have shown, the California
21 Court of Appeal refused to dismiss an appeal, by a California indirect purchaser, from a judgment
22 following approval of the Philips/CA AG settlement, because he had "shown that he is potentially
23 bound by the judgment under the doctrine of res judicata." (*See* ECF No. 4449-1 (Alioto Decl. re:
24 Response to Objections, ¶¶ 6-12; ECF No. 4450-2 (Capurro Decl. Ex. A).)

25 By taking the action that he did, Lead Counsel protected the claims of California individuals.
26 While the CA AG has settled with Philips for $500,000 (none of which will go directly to California

individuals), Lead Counsel eventually obtained a $175,000,000 settlement from Philips, from which California individuals may recover. Thus, the objection should be overruled.

### 6. No IPP Firm's Lodestar Includes Time For Non-Substantive Work

Objectors are also wrong that certain firms did no substantive work and do not deserve a multiplier. (Stmt. at 7.) This argument is—once again—a rehash of their earlier objections (*see* ECF No. 4437 at 11), and—once again—they provide zero support from IPP Counsel's billing records. Objectors resort instead to mischaracterizing the Special Master's findings. For example, the Special Master's statement that certain firms "did virtually nothing" does not mean that these firms did no substantive work. The firms with very small lodestars that the Special Master was referring to are, for the most part, the private lawyers for the more than 40 plaintiffs representing the 22 states involved in this case. These lawyers provided discovery from their clients, assisted with preparing written discovery responses, assisted with preparing their clients for deposition and, in some instances, helped prepare their clients to testify at trial. This work can hardly be characterized as non-substantive—the case could not have proceeded without them. These firms should be compensated accordingly. Most of the other firms with lodestars of less than $2 million primarily performed document review, which was an essential part of this case. (Alioto Decl. ¶ 12.)

In addition, Lead Counsel has reviewed the work of all firms and has eliminated duplicative or unnecessary time, such as unassigned "read and review" of court filings, meetings of counsel unrelated to an assignment, and excessive billing for minor tasks. No firm's lodestar includes time for non-substantive work. (*Id.* ¶ 11.)

Finally, Objectors' concern regarding the multipliers to individual firms is premature. The analysis of each firm's relative contributions to the case, and the multipliers for individual firms, will be decided at the fee allocation stage. But that has yet to occur, and need not impact the aggregate fee award. "Courts generally approve joint fee applications which request a single aggregate fee award with allocations to specific firms to be determined by Co-Lead Counsel, who are most familiar with the work done by each firm and each firm's overall contribution to the litigation." *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, at *7 (E.D. Pa. Jan.

3, 2008); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 n.15 (3d Cir. 2004) (noting "the accepted practice of allowing counsel to apportion fees among themselves"). Indeed, in *LCD*, Mr. Scarpulla argued that the allocation of fees among counsel *did not* impact the aggregate fee award:

> Certain IPP Class Counsel may seek further review from the Special Master regarding the allocation to individual firms of the overall 28.5% attorneys' fee award, but this additional review of the firm-by-firm allocation does not affect the Special Master's analysis and recommendation as to the overall fee amount to be awarded to IPP Class Counsel.

*In re TFT-LCD Antitrust Litig.,* No. 07-md-1827, ECF No. 7165, at 2 (N.D. Cal. 2012).

Objectors will have an opportunity to object to the fee allocation at the appropriate time.

### 7. Firms That Made No Financial Contribution to the Litigation Fund

Objectors' arguments regarding the three trial team firms' and other firms' contributions to the litigation fund are likewise premature and wrong in substance. The respective risks borne by individual firms will be addressed at the fee allocation stage and Objectors will have an opportunity to voice their concerns then. Lead Counsel notes, however, that at the time the three trial team firms joined the litigation, there were only two settlements totaling $35 million, and an already-existing lodestar far in excess of that. Thus, the trial team faced the very real risk of recovering virtually nothing for their time. (Alioto Decl. ¶ 14.)[10]

In addition, the fee award for any particular law firm should be a function of that firm's *overall* contribution to the case and the class, and the factors bearing on that question are not limited to litigation financing. *See, e.g., LCD III*, 2013 WL 1365900, at *9 (approving Special Master's consideration of additional factors including "contribution to the joint IPP effort, as opposed to work performed solely for an individual client; performing higher-skill tasks (e.g., taking depositions) . . . demonstrating efficiency; high quality of work as reported to the Special Master by lead and liaison counsel"; etc.). There is no basis for short-circuiting the proper analysis by focusing solely on cash contributions to the case.

---

[10] While Mr. Scarpulla now criticizes Lead Counsel's decision to invite the three trial team firms into the case in late 2014 to assist with trial preparations, it was in fact Mr. Scarpulla who first contacted Mr. Goldberg to propose that he join the case. (*Id*. ¶ 15.)

Finally, the premise of Objectors' contention—that only those who contributed cash bore financial risk on behalf of the class— is demonstrably false. Time is money. And every IPP lawyer in the case devoted time and professional resources to the litigation, all on a contingency basis. This of course was a significant financial risk, and attorneys should be compensated in a manner commensurate with each firm's overall contributions as described above.

## II.     LEAD COUNSEL HAS ALREADY PROVIDED AN ACCOUNTING OF THE FUNDS

Lead Counsel has already provided an accounting of the expense funds. (*See* ECF No. 4071-1, ¶¶ 128-136.)  Objectors claim there is missing documentation for the assessments paid by certain firms and have raised a question about amounts paid by the DAPs to the IPPs.  (Stmt. at 8-9.)

There is no missing documentation.  Objectors point to a summary of expenses incurred by Mr. Patane, Appendix B, ECF No. 4545-7.  This summary does not purport to show the assessments paid by all other IPP Counsel.  It merely shows Mr. Patane's assessments (and other expenses). Objectors know this.  The assessments paid by all other IPP Counsel are set forth in their Declarations.  (*See* ECF No. 4073, Exs. 1-45.) These amounts have been cross-checked by Lead Counsel and were included in the total provided to the Court.  (ECF No. 4071-1, ¶ 128.)

IPPs have received two payments of $300,000 from the DAPs, for a total of $600,000.  This amount is being held on deposit as part of the Future Expense Fund.  (ECF No. 4071-1, ¶ 133.)

Thus, there is no need for any further accounting.  The Special Master denied Objectors' request for this accounting (ECF No. 4211), and Objectors did not appeal this ruling.  Moreover, Objectors have been provided with everything considered by the Special Master so there are no due process concerns.  Objectors' request should be denied.

## CONCLUSION

Based on the foregoing, IPPs respectfully request that the Court reject Objectors' objections to IPP Counsel's time and expense records.

Dated:  April 13, 2016

Respectfully submitted,

*/s/ Mario N. Alioto*

Mario N. Alioto (56433)

15
INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO STATEMENT PURSUANT TO ORDER RE: OBJECTION TO EX PARTE COMMUNICATIONS AND IN CAMERA REVIEW OF BILLING RECORDS
Master File No. CV-07-5944-JST

1
2
3
4
5
6
7

malioto@tatp.com
Joseph M. Patane (72202)
jpatane@tatp.com
Lauren C. Capurro (241151)
laurenrussell@tatp.com
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415-346-0679

*Lead Counsel for the Indirect Purchaser Plaintiffs*

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28