# EXHIBIT A

---

Kenneth A. Gallo (*pro hac vice*)
Joseph J. Simons (*pro hac vice*)
Craig A. Benson (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC  20006-1047
Telephone:  (202) 223-7300
Facsimile:  (202) 204-7420
Email: kgallo@paulweiss.com
Email: jsimons@paulweiss.com
Email: cbenson@paulweiss.com

Stephen E. Taylor (SBN 058452)
Jonathan A. Patchen (SBN 237346)
**TAYLOR & COMPANY LAW OFFICES, LLP**
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone:  (415) 788-8200
Facsimile:  (415) 788-8208
Email: staylor@tcolaw.com
Email: jpatchen@tcolaw.com

*Attorneys for Plaintiffs Sharp Electronics Corporation and*
*Sharp Electronics Manufacturing Company of America, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-cv-5944 JST<br>MDL No. 1917 |
| | **SHARP ELECTRONICS CORPORATION AND SHARP ELECTRONICS MANUFACTURING COMPANY OF AMERICA, INC.'S MOTION FOR RECONSIDERATION** |
| This Document Relates to:<br><br>*Sharp Electronics Corp.,* et al. v. *Hitachi Ltd.,* et al., Case No. 3:13-cv-01173-JST | |
| | Date:          June 16, 2016<br>Time:          2:00 p.m.<br>Courtroom:  9, 9th Floor<br><br>The Honorable Jon S. Tigar |

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1
2

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 3

PRELIMINARY STATEMENT ............................................................................................ 3

STATEMENT OF FACTS .................................................................................................... 5

ARGUMENT ...................................................................................................................... 10

I.    THE COURT COMMITTED CLEAR ERRORS OF LAW WHEN IT
      HELD THAT SEC AND SEMA ARE BOUND BY SHARP
      CORPORATION'S BTA .............................................................................. 11

      A.    The Court Clearly Erred When It Relied On A Footnote In *Comer v.
            Micor* While Ignoring The Ninth Circuit's Actual Holding In That Case ............. 11

      B.    The Court Clearly Erred When It Relied On *Holland* and *Manetti-Farrow*,
            Factually Inapposite Cases That Bound Signatories To Their Own
            Contracts ........................................................................................................ 13

      C.    The Court Clearly Erred In Binding SEC And SEMA To The BTA Merely
            Because They Are Subsidiaries Of Sharp Corporation ........................................ 14

      D.    The Court Failed To Properly Consider And Apply Public-Interest Factors
            As Required By The Supreme Court In Atlantic Marine ...................................... 15

II.   THE COURT COMMITTED CLEAR ERRORS OF FACT WHEN IT
      FOUND THAT SEC'S AND SEMA'S CLAIMS ARE RELATED TO THE
      BTA .............................................................................................................. 16

      A.    The Court Clearly Erred In Finding That The BTA Applied To Purchase
            Orders Entered Into By Sharp Corporation's Subsidiaries .................................. 17

      B.    The Court Clearly Erred In Finding SEC's And SEMA's Finished Product
            Claims (No Longer In The Case) Were Subject To The BTA .............................. 17

III.  NEW MATERIAL FACTS HAVE NEGATED A FACTUAL PREMISE
      FOR THE COURT'S DECISION ................................................................. 18

CONCLUSION ................................................................................................................... 18

27
28

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adams v. Raintree Vacation Exch., LLC,*
    702 F.3d 436 (7th Cir. 2012) ...............................................................14, 15

5

6

*Atl. Marine Constr. Co. v. U.S Dist. Ct. W. Dist. Tex.,*
    134 S. Ct. 568 (2013)................................................................6, 8, 13, 15

7

8

*Beverly Enters. v. Herman,*
    130 F.Supp.2d 1 (D.D.C. 2000) ...........................................................11, 14

9

*Carijano v. Occidental Petroleum Corp.,*
    643 F.3d 1216 (9th Cir. 2011) .....................................................................15

10

11

*Castner v. First Nat'l Bank of Anchorage,*
    278 F.2d 376 (9th Cir. 1960) .......................................................................10

12

*Champaign-Urbana News Agency v. J. L. Cummins News Co.,*
    632 F.2d 680 (7th Cir. 1980) .......................................................................10

13

14

*Comer v. Micor, Inc.,*
    436 F.3d 1098 (9th Cir. 2006) ............................................................ *passim*

15

16

*Decker Coal. Co. v. Commonwealth Edison Co.,*
    805 F.2d 834 (9th Cir. 1986) .......................................................................13

17

*Dennis v. Chappell,*
    No. 5:98-cv-21027-JF, 2014 WL 710102 (N.D. Cal. Feb. 24, 2014).....................17

18

19

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates,*
    269 F.3d 187 (3d Cir. 2001)..........................................................................12

20

21

*EEOC v. Waffle House, Inc.,*
    534 U.S. 279 (2002).......................................................................11, 12, 13

22

*Fairbank v. Wunderman Cato Johnson,*
    212 F.3d 528 (9th Cir. 2000) .......................................................................10

23

24

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.,*
    485 F.3d 450 (9th Cir. 2007) .............................................................. *passim*

25

26

*Letizia v. Prudential Bache Sec., Inc.,*
    802 F.2d 1185 (9th Cir.1986) .......................................................................11

27

28

*Manetti-Farrow, Inc. v. Gucci Am., Inc.,*
    858 F.2d 509 (9th Cir. 1988) .............................................................. *passim*

ii

*Minn. Supply Co. v. Mitsubishi Caterpillar Forklift Am. Inc.*,
   822 F.Supp.2d 896 (D. Minn. 2011) ..................................................................11, 14

*Murphy v. Schneider Nat'l Inc.*,
   362 F.3d 1133 (9th Cir. 2004) ...........................................................................15

*Richards v. Lloyd's of London*,
   135 F.3d 1289 (9th Cir. 1998) ......................................................................11, 16

*Scherk v. Alberto-Culver Co.*,
   417 U.S. 506 (1974) ............................................................................................11

*Shouse v. Ljunggren*,
   792 F.2d 902 (9th Cir. 1986) ..............................................................................11

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ..............................................................................16

*Smith v. Clark Cnty. Sch. Dist.*,
   727 F.3d 950 (9th Cir. 2013) ......................................................................10, 15

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*,
   64 F.3d 773 (2d Cir. 1997) .................................................................................11

*United States v. Ruiz-Gaxiola*,
   623 F.3d 684 (9th Cir. 2010) ..............................................................................18

*United States v. U.S. Gypsum Co.*,
   333 U.S. 364 (1948) ............................................................................................10

*Whetstone Candy Co., Inc. v. Kraft Foods, Inc.*,
   351 F.3d 1067 (11th Cir. 2003) ....................................................................11, 14

**Rules**

Federal Rule of Civil Procedure 54 .......................................................................1

Civil Local Rule 7-9 ............................................................................1, 10, 17, 18

1

## NOTICE OF MOTION AND MOTION

2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3              PLEASE TAKE NOTICE that on June 16, 2016 at 2:00 p.m., or as soon

4    thereafter as this matter may be heard before the Honorable Jon S. Tigar, District Judge in the

5    United States District Court for the Northern District of California, San Francisco Division, 450

6    Golden Gate Avenue, San Francisco, California 94102, Plaintiffs Sharp Electronics Corporation

7    ("SEC") and Sharp Electronics Manufacturing Company of America, Inc. ("SEMA") hereby

8    move the Court pursuant to Civil Local Rule 7-9 and Federal Rule of Civil Procedure 54(b) to

9    reconsider the March 13, 2014 Order Granting Toshiba's[1] Motion to Dismiss Sharp's First

10   Amended Complaint (ECF Nos. 2435, 2442[2]) ("Order").  The Court held that SEC's and

11   SEMA's claims should be dismissed under *forum non conveniens* doctrine because of a forum-

12   selection clause contained in a 1977 Basic Transaction Agreement ("BTA") between Sharp

13   Corporation and Tokyo Shibaura Electric Corporation.  SEC and SEMA maintain that the

14   Court's Order is clearly erroneous and results in a manifest injustice insofar as it concludes that:

15   (1) SEC and SEMA are bound by the BTA, even though they never executed it, and even though

16   Sharp Corporation—the signatory to the BTA—is not a party to the case and did not purchase

17   any cathode ray tubes ("CRTs") at issue; and (2) enforcing the forum-selection clause of the

18   agreement would not violate public policy.

19              SEC and SEMA ask for a ruling rescinding the Court's Order and denying the

20   Toshiba Defendants' Motion to Dismiss.  SEC and SEMA further request leave to amend their

21   Second Amended Complaint to reassert claims for damages based on their CRTs purchases from

22   Toshiba subsidiaries.

23

24   [1]      The Toshiba Defendants are Toshiba America, Inc., Toshiba America Information
     Systems, Inc., Toshiba America Electronic Components, Inc. (together or individually, "Toshiba
25   subsidiaries") and Toshiba Corporation.

26   [2]      On March 13, 2014, the Court filed its Order Granting Toshiba's Motion to Dismiss
     Sharp's First Amended Complaint.  (ECF No. 2435.)  Subsequently on that same day, the Court
27   filed a second order that corrected a reference in footnote 3 of the prior Order, which incorrectly
     referred to ECF No. 2352, rather than No. 2354.  (ECF No. 2442.)  The Court's Orders at ECF
28   Nos. 2435 and 2442 are otherwise identical.

1

SHARP ELECTRONICS CORPORATION AND SHARP ELECTRONICS MANUFACTURING COMPANY OF AMERICA, INC.'S
MOTION FOR RECONSIDERATION | CASE NO. 13-1173-JST
MASTER FILE NO. 07-CV-5944, MDL NO. 1917

1        This Motion is based upon this Notice of Motion and Motion, the accompanying

2    Memorandum of Points and Authorities in support thereof, and such arguments and authorities

3    as may be presented at or before the hearing.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

SHARP ELECTRONICS CORPORATION AND SHARP ELECTRONICS MANUFACTURING COMPANY OF AMERICA, INC.'S
MOTION FOR RECONSIDERATION │ CASE NO. 13-1173-JST
MASTER FILE NO. 07-CV-5944, MDL NO. 1917

**MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

Judge Conti granted the Toshiba Defendants' motion to dismiss SEC and SEMA's First Amended Complaint, on the ground that a forum-selection clause in a 39-year old agreement between non-party Sharp Corporation and Toshiba Corporation covered U.S. antitrust claims brought by nonsignatory plaintiffs SEC and SEMA. As a result of that ruling, no claims remain in the case for damages based on SEC's or SEMA's CRT purchases from any Toshiba entity, and the sole remaining damages claims against the Toshiba Defendants are for their joint and several liability for other conspirators' overcharges.

The effect of this ruling was to remove from the case ████████ in single damages (████ in treble damages) representing overcharges on CRTs the Toshiba subsidiaries sold to SEC and SEMA. As a result, the jury could be left with the mistaken impression that SEC and SEMA were directly harmed only by other conspirators and not by Toshiba. Toshiba, of course, recognizes the potential for this inference and seeks to amplify it, seizing on Judge Conti's ruling to argue that SEC and SEMA may not even mention at trial that any of the Toshiba Defendants ever made sales to SEC or SEMA at all. SEC and SEMA respectfully submit that reconsideration of Judge Conti's Order is now appropriate in this case, particularly as the September 2016 trial date approaches. Revisiting that erroneous decision now would avoid the prejudice to SEC and SEMA of litigating a trial under the shadow of a manifestly erroneous dispositive ruling, as well as the potential inconvenience and cost of a retrial if the Order is overturned on appeal.

The Court misapprehended material law and fact when it decided—without oral argument—that U.S.-based SEC's and SEMA's claims for U.S.-based transactions were barred by a 1977 Basic Transaction Agreement ("BTA") between Tokyo-based Tokyo Shibaura Electric Corporation (now known as Toshiba Corporation), and Osaka-based Sharp Corporation. The BTA designated Osaka District Court in Japan as the forum for certain litigation between the two Japanese signatories. Sharp Corporation is not, and has never been, a party to this action. And

1   none of the claims in this case involve purchases between Sharp Corporation and Toshiba

2   Corporation. All of the dismissed claims at issue on this motion arise out of SEC's and SEMA's

3   direct purchases of CRTs from Toshiba subsidiaries.

4           The Court materially misapprehended the law when it bound the U.S-based

5   subsidiaries, SEC and SEMA, to a foreign parent's contract that they did not sign. The Court

6   first erred by relying on a footnote in a relevant case to justify its position—*but ignoring the*

7   *contrary holding of that case.* The Court additionally erred by relying on two factually

8   inapposite cases that bound plaintiffs to forum-selection clauses in *agreements the plaintiffs*

9   *signed.* That is a far different proposition than binding *nonsignatory* plaintiffs like SEC and

10  SEMA, merely because their foreign parent entered into a contract in Japan nearly four decades

11  ago. The Court also failed to undertake the requisite analysis of public-interest factors that the

12  Supreme Court requires before a claim may be dismissed based on a forum-selection clause.

13          In any event, the Court was simply wrong when it found as a fact that Sharp

14  Corporation's BTA with Toshiba Corporation related to SEC's and SEMA's claims for their own

15  purchases from Toshiba subsidiaries. Contrary to the Court's findings, the BTA does not apply to

16  subsidiaries of Sharp Corporation, and Sharp Corporation did not buy any of the CRTs in this

17  case from Toshiba Corporation (or any Toshiba Defendant). All of the dismissed claims at issue

18  in this motion were based on SEC's and SEMA's purchases of CRTs directly from Toshiba

19  subsidiaries.

20          Moreover, changed circumstances have conclusively negated a factual premise of

21  the Court's Order—that SEC and SEMA's claims fall under the BTA because they engaged in

22  some inter-company transactions of finished television products with Sharp Corporation. The

23  Court's premise was wrong at the time, and it is without a doubt irrelevant now, since the inter-

24  company transactions involving Sharp Corporation have been removed from the case.

25

26

27

28

---

4

1                       **STATEMENT OF FACTS**

2         **The Toshiba Defendants' Motion to Dismiss.**  The Toshiba Defendants moved

3 to dismiss based on a forum-selection clause in the 1977 BTA between Toshiba Corporation (one

4 of four Toshiba Defendants in this action) and Sharp Corporation (not a party to this action).

5 (BTA, March 1, 1977, ECF No. 2000, Attach. 3 (filed under seal).)  Sharp Corporation is based

6 in Osaka, Japan, and is the ultimate corporate parent of the two U.S.-based plaintiffs, SEC and

7 SEMA.[3]  (SEC & SEMA's Second Am. Compl. ¶¶ 20–21, Apr. 2, 2014, ECF No. 2621 (filed

8 under seal).)

9               The BTA set forth "the basic terms and conditions related to the manufacture and

10 supply of the goods" between Toshiba Corporation and Sharp Corporation.  (BTA Preamble,

11 ECF No. 2000, Attach. 3.)  It included a forum-selection clause stating that "Osaka District Court

12 shall be the court of competent jurisdiction" for "litigation related to this Agreement or [an]

13 individual Agreement."  (*Id.* at Art. 21(2).)  The BTA defined "Individual Agreement" as an

14 agreement "established upon the delivery of the purchase order . . . by Party A [Sharp

15 Corporation] and upon delivery of the order confirmation by Party B [Toshiba Corporation]."

16 (*Id.* at Art. 2(2)–(3).)  The agreement does not state that it applies internationally, or to sales

17 made by Toshiba subsidiaries, or to any other purchaser entity besides Sharp Corporation.  SEC

18 purchased CRTs (not televisions) manufactured by Toshiba subsidiaries "directly and through *its*

19 subsidiaries" (i.e., through SEC's division SMCA and subsidiary SEMA), not through its parent,

20 Sharp Corporation.  (Second Am. Compl. ¶¶ 20–21, 25, ECF No. 2621 (emphasis added).)  Thus,

21 plaintiffs SEC and SEMA bought the CRTs at issue here directly from Toshiba subsidiaries.

22         **SEC's and SEMA's Opposition.**  SEC and SEMA opposed the motion,

23 explaining that SEMA and SEC were not bound by the BTA, that the conduct at issue was not

24 related to the BTA, that the commerce at issue was governed by separate agreements that were

25 ────────────────

26 [3]     The Complaint identifies SEC as the wholly owned "U.S. sales and marketing subsidiary of Osaka-based Sharp Corporation," and SEMA as a wholly owned subsidiary of SEC.  (Second

27 Am. Compl. ¶¶ 20–22, ECF No. 2621.)  SEC is a New York corporation with its principal place of business in Mahwah, New Jersey, and SEMA is a California corporation with its principal

28 place of business in San Diego, California.  (*Id.*)

1   inconsistent with the BTA, that Sharp Corporation is not a party to this case, and that Sharp

2   Corporation never made any CRT purchases at issue from Toshiba Corporation.  (SEC &

3   SEMA's Opp. to Toshiba Defs.' Mot. to Dismiss, Nov. 6, 2013, ECF No. 2195.)  Instead, SEC

4   and SEMA purchased all of the CRTs at issue on this motion directly from Toshiba subsidiaries.

5          On December 18, 2013, Toshiba amended its notice of motion and motion to

6   dismiss to address the Supreme Court's decision in *Atlantic Marine Construction Company v.*

7   *United States District Court for the Western District of Texas*, 134 S. Ct. 568 (2013).  (*See*

8   Toshiba Defs.' Am. Notice of Mot. & Mot. to Dismiss Sharp's Compl., Dec. 18, 2013, ECF

9   2274.)  On December 24, 2013, SEC and SEMA responded that *Atlantic Marine* provides

10  additional grounds that support denial of the motion to dismiss, because it requires courts to

11  consider various public-interest considerations before enforcing a forum-selection clause.  (SEC

12  & SEMA's Supp. Resp. to Toshiba Defs.' Am. Mot. to Dismiss at 1, Dec. 24, 2013, ECF No.

13  2292.)

14          **Supplemental Briefing on Finished Television Product Claims.**  In

15  supplemental briefing, the Toshiba Defendants cited an interrogatory response by SEC and

16  SEMA indicating that they purchased some finished television products from Sharp Corporation

17  containing price-fixed CRTs.  (*See* Toshiba Defs.' Supp. Reply ISO Am. Mot. to Dismiss Sharp's

18  Compl. at 1, Jan. 17, 2014, ECF No. 2336 (filed under seal).)  The Toshiba Defendants argued

19  that this showed SEC's and SEMA's claims were governed in part by the BTA.  (*See id.*)

20  However, the Toshiba Defendants did not even purport to establish that Sharp Corporation

21  purchased those televisions, or the CRTs in them, from Toshiba Corporation.

22          SEC and SEMA responded that none of their inter-company purchases of finished

23  television products from Sharp Corporation—which formed a very small portion of SEC's and

24  SEMA's claims at the time[4]—arose from or related to any transactions between Sharp

25

26  [4]      SEC and SEMA initially sought to recover three categories of damages from the Toshiba
    Defendants:  (1) ▇▇▇▇▇ in single damages (▇▇▇▇▇ after trebling) from overcharges
27  on CRTs that SEC and SEMA directly purchased from Toshiba subsidiaries (Supp. Expert Rep.
    of Jerry A. Hausman ¶ 9, July 3, 2014, ECF No. 3590-6, Ex. B (filed under seal)); (2) ▇▇▇▇
28  ▇▇▇▇ (▇▇▇▇▇ trebled) in joint and several damages from overcharges on CRTs that

                                                    6

1   Corporation and Toshiba Corporation. (SEC & SEMA's Resp. to Toshiba Defs.' Supp. Reply

2   ISO Am. Mot. to Dismiss Sharp's Compl. at 1–2, Jan. 27, 2014, ECF No. 2354, Ex. A.) Thus, as

3   SEC and SEMA explained, none of their claims are based on any purchases that could be subject

4   to the BTA. (*See id.* at 2.) This supplemental briefing on finished television product claims in

5   no way involved the vast majority of SEC's and SEMA's claims at the time (now, SEC's and

6   SEMA's only claims) that are based on SEC's and SEMA's direct purchases of CRTs.

7           **The Court's Order.** The Court granted the Toshiba Defendants' motion. It held

8   that the BTA's "forum-selection clause should be read to apply to the subsidiaries [i.e., SEC and

9   SEMA]" because their purchases from Toshiba subsidiaries "took place 'as part of the larger

10  contractual relationship' between the two parent companies" and were "closely related to the

11  contractual relationship." (Order at 6–7 (quoting *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,

12  485 F.3d 450, 456 (9th Cir. 2007)) (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509,

13  511 (9th Cir. 1988)).)

14          The Court supplied three bases for its "find[ing] that Sharp's [SEC's and SEMA's]

15  claims relate to and have their genesis in the BTA between Sharp Corporation and Tokyo

16  Shibaura." (*Id.* at 8.) *First*, the Court found that SEC's and SEMA's purchase orders with

17  Toshiba subsidiaries constituted "Individual Agreements" under the BTA. (*Id.* at 7.) *Second*, the

18  Court pointed to generalized language in the First Amended Complaint describing SEC as "the

19  wholly owned U.S. sales and marketing subsidiary of Osaka-based Sharp Corporation." (*Id.*

20  (citing SEC & SEMA's First Am. Compl. ¶¶ 22–23, Oct. 28, 2013, ECF No. 2030 (filed under

21  seal)).) *Third*, citing the parties' supplemental briefing concerning finished-television-product

22

23

24  SEC and SEMA directly purchased from non-Toshiba co-conspirators (*id.*); and (3) ████████
    (████████ trebled) in damages from overcharges on CRTs contained in finished television
25  products that SEC and SEMA acquired through inter-company purchases (Expert Rep. of Jerry
    A. Hausman ¶ 77, Apr. 15, 2014, ECF No. 3590-6, Ex. A (filed under seal)). Sharp
26  Corporation's limited role in inter-company sales addressed in the interrogatory answer relates
    solely to this third, finished-television-product category. The damages from that category thus
27  made up just three percent of SEC's and SEMA's damages at the time, and as explained *infra*
    Section III, are no longer part of the case for reasons unrelated to the Order.
28

1    claims, the Court asserted that SEC's and SEMA's "purchases that form the basis of their

2    antitrust claims against Toshiba were made from Sharp Corporation." (*Id.* at 8.)

3           The Court also stated that enforcing the BTA against SEC and SEMA would not

4    violate public policy. (*Id.* at 8.) But the Court did not explain how various public-interest factors

5    weighed in favor of the Court retaining jurisdiction over the matter pursuant to *Atlantic Marine*.

6           The Court concluded by dismissing SEC's and SEMA's First Amended Complaint

7    as against the Toshiba Defendants with prejudice. (Order at 10.)

8           **SEC's and SEMA's Motion for Leave to Amend Their Complaint.** In light of

9    the Court's Order, on April 2, 2014, SEC and SEMA filed a Motion for Leave to Amend their

10   First Amended Complaint to reinstate their claims against the Toshiba Defendants for joint and

11   several damages from CRT sales by their co-conspirators. (*See* SEC & SEMA's Mot. for Leave

12   to Amend, Apr. 2, 2014, ECF No. 2520 (filed under seal).) The motion stated that SEC and

13   SEMA "respectfully disagree with" the Court's ruling on the Toshiba Defendants' motion to

14   dismiss. (*Id.* at 2.) Nevertheless, to comply with the Court's Order, SEC and SEMA amended

15   their complaint to exclude damages claims against any defendant based on SEC's or SEMA's

16   purchases from with any Toshiba entity. (*Id.* at 2 & n.1; Second Am. Compl. ¶ 68, ECF No.

17   2621.) But SEC and SEMA argued they should still be able to pursue their claims for joint and

18   several liability based on purchases from non-Toshiba conspirators. (Mot. for Leave to Amend at

19   2–3, ECF 2520.) The motion noted that the Toshiba Defendants "did not argue that the BTA

20   affected [their] joint and several liability" in their briefing on the motion to dismiss. (*Id.* at 2.)

21          On June 9, 2014, the Court granted SEC and SEMA's Motion for Leave to

22   Amend. (Order Granting Sharp's Mot. for Leave to Amend at 13, Jun. 9, 2014, ECF 2612.) The

23   Court acknowledged that "the question of joint and several liability never arose" in the briefing

24   on the motion to dismiss, and, as a result, the Order "only discussed dismissal relative to the

25   BTA." (*Id.* at 3.) The Court concluded that amendment was proper, since, among other reasons,

26   the Court and Special Master were "well acquainted with the parties and the issues" from their

27   work on the MDL, and "this forum has a strong interest in resolving" SEC's and SEMA's

28

8

1  "allegations regarding joint and several liability [that] concern a worldwide conspiracy to fix

2  prices in the United States." (*Id.* at 12.)

3         The consequence of these rulings is that SEC's and SEMA's damages claims were

4  limited to joint and several liability for overcharges by non-Toshiba co-conspirators.  If granted,

5  this motion would re-insert into the case the Toshiba subsidiaries' overcharges on CRTs they

6  directly sold to SEC and SEMA as part of the same conspiracy.

7         **Subsequent Developments.**  On October 14, 2014, to eliminate any potential

8  disputes concerning FTAIA, SEC and SEMA informed all defendants that they were no longer

9  pursuing claims related to inter-company purchases of finished television products from Sharp

10  Corporation.  (*See* Letter from Craig A. Benson to Jeffrey L. Kessler et al. at 2, Oct. 14, 2014,

11  ECF No. 3283-5.)  As a result, SEC's and SEMA's damages claims were narrowed to include

12  only overcharges on directly-purchased CRTs, not finished television products.  This motion for

13  reconsideration in no way affects the withdrawn claims based on finished television products;

14  they will remain out of the case regardless of the Court's ruling on the instant motion.

15         **Trial and Trial Preparation.**  Trial in the Sharp case is anticipated to begin in

16  September 2016.  In February 2015, the Toshiba Defendants not only moved to exclude evidence

17  of *damages* from Toshiba sales to SEC and SEMA, but have also sought a broad declaration that

18  *any* "evidence of Toshiba's sales to Sharp is irrelevant," including any references to the basic fact

19  that SEC and SEMA were customers of Toshiba.  (Toshiba Defs.' Mot. in *Limine* to Exclude

20  Evid. of Toshiba's Sales to Sharp Corp. at 3, Feb. 13, 2015, ECF No. 3577; *see also* Reply ISO

21  Toshiba Mot. *in Limine* at 2–3, Mar. 6, 2015, ECF No. 3753.)  SEC and SEMA disagree that

22  Judge Conti's Order entitles Defendants to such a sweeping preclusion of evidence.  (*See* SEC &

23  SEMA's Opp. to Toshiba Mot. in *Limine*, Feb. 27, 2015, ECF No. 3695-3.)  The Order has thus

24  already introduced complications into the parties' trial preparations, and will undoubtedly

25  continue to do so throughout the upcoming trial.

26

27

28

**ARGUMENT**

Reconsideration is appropriate here. A district court may reconsider a prior decision if it "committed clear error or the initial decision was manifestly unjust." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). Clear error exists when, upon review of "the entire evidence," the court is "left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "It is common for both trial and appellate courts to reconsider and change positions when they conclude that they made a mistake. This is routine in judging, and there is nothing odd or improper about it." *Smith*, 727 F.3d at 955. Reconsideration can also be based on "the emergence of new material facts." Civ. L.R. 7-9(b)(2). Both situations apply here.

A successor judge may reconsider an opinion at any point prior to judgment to correct a "clear error" of fact or law, just like the original judge who decided a motion. *See Castner v. First Nat'l Bank of Anchorage*, 278 F.2d 376, 380 (9th Cir. 1960) (A second judge has "equal and coextensive" powers "to overrule the order of another" judge in the same case, and should not "permit[] what he believes to be a prior erroneous ruling to control the case."). Reconsideration of a prior judge's rulings is especially warranted when the issue is one affecting trial and appeal. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 530 (9th Cir. 2000) ("[U]ltimately the judge who enters the final judgment in the case is responsible for the legal sufficiency of the ruling, and is the one that will be reversed on appeal if the ruling is found to be erroneous."); *Castner*, 278 F.2d at 380 (Reconsideration is justified to "settle the questions presently without compelling the parties to proceed with what may be a futile and expensive trial."); *Champaign-Urbana News Agency v. J. L. Cummins News Co.*, 632 F.2d 680, 683 (7th Cir. 1980) ("The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await reversal."). Counsel for the Toshiba Defendants itself recently acknowledged that it is now appropriate for this Court to reconsider Judge Conti's earlier rulings, arguing that "law of the case doesn't even apply to a new judge who's come in." (Hrg. Tr. 30:10–13, Feb. 9, 2016 (statement of

1   Christopher M. Curran)); *accord Shouse v. Ljunggren*, 792 F.2d 902, 904 (9th Cir. 1986) ("law of

2   the case doctrine does not apply to pretrial rulings" by a different judge).

3   **I.      THE COURT COMMITTED CLEAR ERRORS OF LAW WHEN IT HELD**

4   **        THAT SEC AND SEMA ARE BOUND BY SHARP CORPORATION'S BTA**

5           **A.      The Court Clearly Erred When It Relied On A Footnote In *Comer v.***

6           **        *Micor* While Ignoring The Ninth Circuit's Actual Holding In That Case**

7                   In their briefing on the motion to dismiss, SEC and SEMA cited Supreme Court

8   precedent in *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002), for the general principle that

9   "a contract cannot bind a nonparty." (SEC & SEMA's Opp. at 5, ECF No. 2195.) SEC and

10  SEMA also provided examples of this rule specifically in the context of parents and subsidiaries.

11  (*See id.* at 5–6 (citing *Whetstone Candy Co., Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1074 (11th

12  Cir. 2003); *Minn. Supply Co. v. Mitsubishi Caterpillar Forklift Am. Inc.*, 822 F.Supp.2d 896, 904

13  (D. Minn. 2011); *Beverly Enters. v. Herman*, 130 F.Supp.2d 1, 22 (D.D.C. 2000)).)

14                  In an attempt to distinguish the rule in *Waffle House* as dicta, Judge Conti quoted

15  a footnote in *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.10 (9th Cir. 2006), for the proposition

16  that courts *can* sometimes hold nonparties liable under certain established "contract and agency

17  principles." (Order at 6.) In doing so, Judge Conti ignored the Ninth Circuit's actual holding in

18  *Comer* that the case "comes within the *general rule* that a nonsignatory is not bound by an

19  arbitration clause.[5]" 436 F.3d at 1103–04 (emphasis added). The five limited exceptions to this

20  rule under "contract and agency principles," which Judge Conti cited *Comer* for, are identified

21  by the Ninth Circuit as: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-

22  piercing/alter ego; and 5) estoppel." *Id.* at 1101 (quoting *Thomson-CSF, S.A. v. Am. Arbitration

23  *Ass'n*, 64 F.3d 773, 776 (2d Cir. 1997) and *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185,

24

25  ────────────────

    [5]     While *Comer* involved an arbitration clause, as Toshiba argued in its motion to dismiss,

26  "both the Supreme Court and the Ninth Circuit have recognized that agreements to arbitrate are a

    specialized form of a forum-selection clause and have interpreted and enforced both types of

27  clauses in the same way." (Toshiba Defs.' Mot. to Dismiss at 8–9, Oct. 7, 2013, ECF No. 2000

    (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) and *Richards v. Lloyd's of

28  *London*, 135 F.3d 1289, 1295 n.4 (9th Cir. 1998)).)

─────────────────────────────

                                                        11

1   1187 (9th Cir.1986)) (internal quotation marks omitted).  But the Court never held that any of

2   those specific and narrow exceptions apply here, nor could it.[6]  (*See* Order at 6–7.)

3          Moreover, the facts and holding of *Comer*—which were not addressed by Judge

4   Conti's Order—are instructive here.  The *Comer* plaintiff, a participant in an ERISA plan,

5   brought a suit against the plan's investment advisor alleging it had breached its fiduciary duty to

6   the plan.  436 F.3d at 1100.  The defendant sought to enforce an arbitration clause in its contract

7   with the plan's trustees against the nonsignatory plaintiff.  *Id.*  The Ninth Circuit held the

8   plaintiff could not be bound even though his "claim *arises out of* the underlying contract," *id.* at

9   1102 (emphasis in original) (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber &*

10  *Resin Intermediates*, 269 F.3d 187, 195 (3d Cir. 2001)), because that would fall short of meeting

11  any existing "contract or agency" exception, and would contradict the Supreme Court's holding

12  in *Waffle House*, which held a plaintiff not bound even though its suit "'arose from' an

13  employment agreement containing an arbitration clause," *id.* at 1103 (citing *Waffle House*, 534

14  U.S. at 294).  *Comer* is thus inconsistent with the Court's holding in this case that nonsignatory

15  plaintiffs SEC and SEMA can be bound to the BTA's forum-selection clause merely because the

16  Court finds their claims in some vague way "relate to" or "have their genesis in" that contract.

17  (Order at 7–8.)[7]

18  _____

19  [6]    None of these exceptions apply here.  Toshiba never presented evidence that any contract
    with SEC or SEMA explicitly incorporated by reference the BTA, or that SEC or SEMA

20  assumed responsibility for the BTA.  SEC or SEMA are not agents of Sharp Corporation.  (SEC
    & SEMA's Opp. 15–16, ECF No. 2195.)  As explained in SEC and SEMA's prior briefing, alter

21  ego theory is also inapplicable given the absence of "either fraud or a failure to observe corporate
    formalities." (*Id.* at 11 (quoting *Comer*, 436 F.3d at 1103).)  And equitable estoppel does not

22  apply when, as here, there is no evidence that SEC or SEMA "knowingly exploit[ed] the
    agreement." (*Id.* at 10–12 (quoting *Comer*, 436 F.3d at 1101–02).)  Just as the plaintiff in *Comer*

23  was held not to have "knowingly exploited" the contract by bringing a lawsuit based "on ERISA,
    and not on the investment management agreements," *Comer*, 436 F.3d at 1102, so too here, SEC

24  and SEMA base their lawsuit on the Sherman Act, and not on the terms of the BTA.  Moreover,
    Sharp presented evidence that SEC and SEMA were not even aware of the BTA, and operated

25  under entirely *different* contracts for the Toshiba transactions at issue.  (SEC & SEMA's Opp. at
    4–5, ECF No. 2195.)

26

27  [7]    *Comer* is also inconsistent with the Court's holding that SEC and SEMA are bound
    because their claims are "based partly on [their] corporate relationship with Sharp Corporation, a

28  party to the BTA."  (Order at 8.)  The *Comer* plaintiff's ERISA claims had a far closer

                                                    12

1

**B.    The Court Clearly Erred When It Relied On *Holland* and *Manetti-Farrow*,**
2      **Factually Inapposite Cases That Bound Signatories To Their Own Contracts**

3            Instead of applying *Comer* and *Waffle House* as it should have, the Court relied on

4   two factually inapposite cases to conclude that SEC and SEMA can be bound to the BTA's

5   forum-selection clause if their conduct is "closely related to" or "part of the larger contractual

6   relationship between the two parent companies."  (Order at 6–7 (quoting *Holland Am. Line, Inc.*

7   *v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007)) (internal quotation mark omitted)

8   (citing *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 511 (9th Cir. 1988)).)  But as SEC

9   and SEMA explained in their opposition brief, neither case involved the situation at hand, where

10  a defendant seeks to enforce a contractual provision against a plaintiff *that was not a party to the*

11  *agreement*.  (*See* SEC & SEMA's Opp. at 9, ECF No. 2195.)  Both cases instead address the

12  counterfactual situation where the plaintiff *was a party to the agreement* containing the forum-

13  selection clause, and nonsignatory defendants sought the ability to enforce that clause against

14  that signatory plaintiff.  *See Holland*, 485 F.3d at 455–56; *Manetti-Farrow*, 858 F.2d at 511, 514

15  n.5.  This distinction is significant because those plaintiffs in those cases—whose choice of

16  forum is ordinarily given weight, *see Decker Coal. Co. v. Commonwealth Edison Co.*, 805 F.2d

17  834, 843 (9th Cir. 1986)—had already consented to jurisdiction by signing the contract

18  containing the forum-selection clause.  *See Atl. Marine*, 134 S. Ct. at 582 ("when a plaintiff

19  agrees by contract to bring suit only in a specified forum—presumably in exchange for other

20  binding promises by the defendant—the plaintiff has effectively exercised its 'venue privilege'").

21  The courts in those cases merely allowed the nonsignatory defendants to "benefit from" a

22  contract under which they had been sued; they did not, as the Court did here, bind a

23  nonconsenting plaintiff to a contract it did not sign.  *See Manetti-Farrow*, 858 F.2d at 514 n.5;

24  *Holland*, 485 F.3d at 456.  *Comer*, where the Ninth Circuit declined to enforce the clause against

25  ───────────────────────────────────────────

26  relationship with the signatory plan, since the lawsuit was brought "for the making good *to the*
    *Plans*-not to Plaintiff himself-of any losses."  *Comer*, 436 F.3d at 1100, 1103.  Here, SEC and
27  SEMA bring claims to recover their own losses, and their relationship to Sharp Corporation is a
    run-of-the-mill parent-subsidiary relationship, which, as explained *infra* Section I.C, is not nearly
28  enough to bind them.

13

SHARP ELECTRONICS CORPORATION AND SHARP ELECTRONICS MANUFACTURING COMPANY OF AMERICA, INC.'S
MOTION FOR RECONSIDERATION │ CASE NO. 13-1173-JST
MASTER FILE NO. 07-CV-5944, MDL NO. 1917

1    a plaintiff absent narrow "contract and agency" exceptions, is far more analogous to the facts at

2    hand.  *See* 436 F.3d at 1101–04.

3          **C.     The Court Clearly Erred In Binding SEC And SEMA To The**
              **BTA Merely Because They Are Subsidiaries Of Sharp Corporation**
4

5                 The Toshiba Defendants also argued that the fact that SEC and SEMA were

6    subsidiaries of Sharp Corporation favored binding them to Sharp Corporation's agreement.  In

7    their brief, the Toshiba Defendants set up the following chain:  "SEC is the wholly owned U.S.

8    sales and marketing subsidiary of Osaka-based Sharp Corporation;" SEC "directly and through

9    its subsidiaries, purchased substantial amounts of CRTs manufactured by Defendants;" and

10   "SEMA is a wholly owned subsidiary of [SEC]."  (Toshiba Mot. to Dismiss at 10, ECF No. 2000

11   (quoting First Am. Compl. ¶¶ 22–24, 27, ECF No. 2030).)  The Court endorsed this argument,

12   citing the same generic complaint provisions, when it held that SEC's and SEMA's "claims are

13   based partly on its corporate relationship with Sharp Corporation, a party to the BTA."  (Order at

14   8 (citing First Am. Compl. ¶¶ 22–23, ECF No. 2030).)

15                 It is plain, however, that a subsidiary cannot be bound to a contract merely

16   because its parent signed it.  (*See* SEC & SEMA's Opp. at 5–6, ECF No. 2195 (citing *Beverly*

17   *Enters.*, 130 F.Supp.2d at 22 ("The relationship between a parent and a subsidiary alone is not

18   enough to render a subsidiary liable on a parent's contract."); *Whetstone Candy*, 351 F.3d at

19   1074; *Minn. Supply*, 822 F.Supp.2d at 904).)  Nonetheless, the Toshiba Defendants suggested

20   that *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436 (7th Cir. 2012) stood for the

21   proposition that corporate affiliation alone is sufficient to bind a nonsignatory to a forum-

22   selection clause.  (Toshiba Mot. to Dismiss at 10, ECF No. 2000 (citing *Adams*, 702 F.3d at 439–

23   40).)  *Adams* did no such thing, as SEC and SEMA explained in their opposition.  (*See* SEC &

24   SEMA's Opp. at 9–10, ECF No. 2195.)  Much like *Holland* and *Manetti-Farrow*, *Adams*

25   involved a nonsignatory defendant who wished to enforce an affiliated predecessor's contract

26   against plaintiffs *who had signed the contract*.  702 F.3d at 442.  This was a critical distinction on

27   which the Seventh Circuit's decision turned; in fact, the court considered a hypothetical much

28

1  like the facts at hand and concluded that a nonsignatory could *not* be bound to an affiliate's

2  contract. *Id.* at 441 ("Nor could *A*, the parent, be forced to litigate in France just because *B*, its

3  subsidiary, had agreed to litigate any dispute with *C* there. *A* had not signed the contract and thus

4  had not committed itself to litigate in France."). By contrast, the *Adams* plaintiffs could be

5  bound because they "*by signing the contracts* containing the forum selection clause [had] agreed

6  to litigate in [the foreign country]." *Id.* at 442 (emphasis added).

### D. The Court Failed To Properly Consider And Apply Public-Interest Factors As Required By The Supreme Court In *Atlantic Marine*

9  The Supreme Court in *Atlantic Marine* held that even as to signatories of a forum-

10 selection clause, the court must evaluate "various public-interest considerations" before

11 dismissing a claim on the ground of *forum non conveniens*. 134 S. Ct. at 581–82; *see also*

12 *Holland*, 485 F.3d at 457 (courts should decline to enforce forum-selection clauses where they

13 "would contravene a strong public policy of the forum in which suit is brought") (quoting

14 *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004)). In the Ninth Circuit, these

15 public-interest considerations include whether the forum has an interest in resolving the case, the

16 court's familiarity with the governing law, the burden on local courts and juries, congestion in

17 the court, and the costs of resolving a dispute unrelated to a particular forum. (*See* SEC &

18 SEMA's Supp. Resp. at 1–2, ECF No. 2292 (citing *Carijano v. Occidental Petroleum Corp.*, 643

19 F.3d 1216, 1232 (9th Cir. 2011)).)

20 The Court here failed to address those considerations at all in its Order granting

21 the Toshiba Defendants' motion to dismiss. Instead, the Court relied on decades-old case law

22 (again, addressing plaintiff signatories to the contract) to hold that enforcing the clause would not

23 contravene public policy because Japanese law, although lacking the treble damages remedy

24 available under U.S. antitrust law,[8] was not "so deficient that plaintiffs would be deprived of 'any

---

26 [8]  The fact that the Court's Order requires SEC and SEMA to litigate their claims based on
27 Toshiba sales in a separate trial, in a distant forum, with severely reduced remedies, works an
    injustice that renders reconsideration all the more appropriate. *See Smith*, 727 F.3d at 955
28 (reconsideration is warranted when "the initial decision was manifestly unjust").

1   reasonable recourse.'"  (Order at 9–10 (quoting *Richards*, 135 F.3d at 1295) (citing *Simula, Inc.*
2   *v. Autoliv, Inc.*, 175 F.3d 716, 723 (9th Cir. 1999)).)  But the Court's sparse analysis did not
3   address or even mention any of the above-described public-interest factors from Ninth Circuit
4   law.  By thus overlooking Supreme Court and Ninth Circuit precedent, the Court clearly erred.

5   **II.     THE COURT COMMITTED CLEAR ERRORS OF FACT WHEN IT FOUND**
6   **        THAT SEC'S AND SEMA'S CLAIMS ARE RELATED TO THE BTA**

7               Reconsideration is also warranted because, even assuming the legal standard
8   applied in *Holland* and *Manetti-Farrow* were appropriate in this case (it is not), the Court had no
9   valid factual basis to support its conclusion that SEC's and SEMA's claims were "closely related
10  to the contractual relationship" in the BTA.  (Order at 6 (quoting *Holland*, 485 F.3d at 456).)

11              *Holland* and *Manetti-Farrow* both involved claims that were inextricably tied to
12  the contract containing the forum-selection clause such that the "claims cannot be adjudicated
13  without analyzing whether the parties were in compliance with the contract."  *Manetti-Farrow*,
14  858 F.2d at 514; *accord Holland*, 485 F.3d at 456 n.2 (the plaintiff's "relationship with [the
15  nonsignatory defendants] arose out of and was intimately related to its relationship with [the
16  signatory defendant].").  In contrast, here, nothing about the BTA needs to be "analyz[ed],"
17  *Manetti-Farrow*, 858 F.2d at 514, to determine whether Defendants have violated U.S. antitrust
18  laws through horizontal price-fixing and/or information exchanges—those claims are
19  independent of, and require no interpretation of, the BTA's terms.  Moreover, as explained below,
20  none of the CRT purchases at issue are "closely related" to the BTA (or even related at all)
21  since—contrary to the Court's misconceptions—(1) subsidiaries of Sharp Corporation and
22  Toshiba Corporation are not subject to the BTA by its own terms, and (2) SEC's and SEMA's
23  claims do not involve any transactions between Sharp Corporation and Toshiba Corporation.
24  (*See* SEC & SEMA's Opp. at 7–8, ECF No. 2195.)

25

26

27

28

A.    **The Court Clearly Erred In Finding That The BTA Applied To
Purchase Orders Entered Into By Sharp Corporation's Subsidiaries**

The Court clearly erred when it held that SEC's and SEMA's purchase orders are governed by the BTA.  The Court stated that "orders like Sharp's PO are related to the BTA" because the BTA "also governs 'individual Agreements.'" (Order at 7.)  On the face of the contract, however, the BTA's terms only apply to "individual Agreements between Party A and Party B"—that is, between Sharp Corporation and Tokyo Shibaura (now Toshiba Corporation). (BTA Art. 1(2), ECF No. 2000, Attach. 3; *see also id.* at Art. 2(2)–(3); SEC & SEMA's Opp. at 4, ECF No. 2195.)  In this case, none of the purchases at issue are between Party A (Sharp Corporation) and Party B (Toshiba Corporation), and so do not qualify as "Individual Agreements" by the contract's own terms.

Because the Court acknowledged that SEC's and SEMA's antitrust claims must "involve the agreement itself to trigger a forum-selection clause governing litigation related to a contract," the Court's mistake of fact on this subject is fatal to its holding.  (Order at 7 (citing SEC & SEMA's Opp. at 7–8, ECF No. 2195)); *see also Dennis v. Chappell*, No. 5:98-cv-21027-JF, 2014 WL 710102, at *3 (N.D. Cal. Feb. 24, 2014) (a fact is "material" for purposes of Civil Local Rule 7-9 if it gives "rise to any potential for relief" as to the asserted claims).

B.    **The Court Clearly Erred In Finding SEC's And SEMA's Finished
Product Claims (No Longer In The Case) Were Subject To The BTA**

Based on SEC and SEMA's answer to Interrogatory 15 in the First Set of Interrogatories propounded by defendants MT Picture Display Co., Ltd. and LG Electronics USA, Inc. (not by Toshiba), the Court concluded that SEC's and SEMA's "purchases that form the basis of their antitrust claims against Toshiba were made from Sharp Corporation" such that their "claims relate to and have their genesis in the BTA."  (Order at 8; Toshiba Supp. Reply Ex. 1, at 14–15, ECF No. 2336 (filed under seal).)  Respectfully, this is not a proper reading of that interrogatory answer.

Defendants never argued, and the record does not show, that any of these inter-company television purchases from Sharp Corporation related to or arose from any transactions

17

1   between Sharp Corporation and Toshiba Corporation. (SEC & SEMA's Opp. at 1–4, ECF No.

2   2195). Instead, plaintiffs' foreign affiliates, Sharp Roxy Electronics Corporation and Nanjing

3   Sharp Electronics Co., Ltd., manufactured those televisions and sold them to SEC and SEMA via

4   inter-company transactions involving Sharp Corporation. (*See* First Am. Compl. ¶ 30, ECF No.

5   2030.) Sharp Corporation's involvement, therefore, was strictly on an inter-company basis, and

6   it engaged in no transactions with the Toshiba Defendants that could be subject to the BTA. (*See*

7   SEC & SEMA's Resp. at 2, ECF No. 2354, Ex. A.) The Court's statement that SEC's and

8   SEMA's claims depend on "purchases . . . made from Sharp Corporation" (Order at 8), was thus

9   factually unsupported and clearly erroneous. *See United States v. Ruiz-Gaxiola*, 623 F.3d 684,

10  693 (9th Cir. 2010) (a factual finding can be clearly erroneous where, even if there is some

11  evidence to support it, a review of the entire record shows a mistake has been made).

## III.   NEW MATERIAL FACTS HAVE NEGATED A FACTUAL PREMISE FOR THE COURT'S DECISION

14          Moreover, new material facts have emerged that conclusively negate the Court's

15  premise that Sharp Corporation's purchases relate to SEC's and SEMA's claims. *See* Civ. L.R. 7-

16  9(b). As noted above, the small volume of commerce that had involved inter-company transfers

17  of finished televisions with Sharp Corporation is now out of the case for reasons unrelated to the

18  Court's Order. (*See* Letter from Craig A. Benson at 2, ECF No. 3283-5.) As such, they cannot

19  serve as a basis for determining whether SEC's and SEMA's claims today are "related to" the

20  BTA (even if that were a sufficient legal basis to bind SEC and SEMA, which, as explained

21  above, it is not).

22          After correcting these factual errors, that leaves, as a basis for the Court's

23  conclusion that the conduct was "closely related to the BTA," only the fact that SEC and SEMA

24  are affiliates of Sharp Corporation. That is not enough. (*See supra* Section I.C.)

### CONCLUSION

26          For the foregoing reasons, the Court should grant this motion to reconsider Judge

27  Conti's Order and deny the Toshiba Defendants' Motion to Dismiss in its entirety. The Court

28

SHARP ELECTRONICS CORPORATION AND SHARP ELECTRONICS MANUFACTURING COMPANY OF AMERICA, INC.'S
MOTION FOR RECONSIDERATION │ CASE NO. 13-1173-JST
MASTER FILE NO. 07-CV-5944, MDL NO. 1917

1   should also permit SEC and SEMA to amend their Second Amended Complaint to reassert

2   claims based on purchases of CRTs from Toshiba subsidiaries.

3       DATED:  April 11, 2016            By:   /s/ Craig A. Benson

4

5                                    Kenneth A. Gallo (*pro hac vice*)
                                     Joseph J. Simons (*pro hac vice*)
6                                    Craig A. Benson (*pro hac vice*)
                                     PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
7                                    2001 K Street, NW
                                     Washington, DC  20006
8                                    Telephone: (202) 223-7300
                                     Facsimile: (202) 223-7420
9                                    Email: kgallo@paulweiss.com
                                     Email: jsimons@paulweiss.com
10                                   Email: cbenson@paulweiss.com

11                                   Stephen E. Taylor (SBN 058452)
12                                   Jonathan A. Patchen (SBN 237346)
                                     TAYLOR & COMPANY LAW OFFICES, LLP
13                                   One Ferry Building, Suite 355
                                     San Francisco, California  94111
14                                   Telephone:  (415) 788-8200
                                     Facsimile:  (415) 788-8208
15                                   Email: staylor@tcolaw.com
                                     Email: jpatchen@tcolaw.com
16

17                                   *Attorneys for Plaintiffs Sharp Electronics Corporation and*
                                     *Sharp Electronics Manufacturing Co. of America, Inc.*
18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

On April 11, 2016, I caused a copy of SEC and SEMA's Motion for

3

Reconsideration to be electronically filed via the Court's Electronic Case Filing System, which

4

constitutes service in this action pursuant to the Court's order of September 29, 2008.

5

6

DATED:  April 11, 2016          By: /s/ Craig A. Benson

7                                        Craig A. Benson

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20

SHARP ELECTRONICS CORPORATION AND SHARP ELECTRONICS MANUFACTURING COMPANY OF AMERICA, INC.'S
MOTION FOR RECONSIDERATION | CASE NO. 13-1173-JST
MASTER FILE NO. 07-CV-5944, MDL NO. 1917