Vaughn R Walker
Law Office of Vaughn R Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA 94111
Tel: (415) 871-2888
Fax: (415) 871-2890
vrw@judgewalker.com

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Order Relates To:<br><br>ALL DIRECT PURCHASER ACTIONS | MDL No 1917<br><br>Master Case No 3:07-cv-05944-JST<br><br>**ORDER RE MITSUBISHI'S MOTION TO COMPEL DIRECT PURCHASER PLAINTIFFS' DOCUMENT PRODUCTION AND RULE 30(B)(6) DEPOSITIONS** |

The Mitsubishi Defendants ("Mitsubishi") move to compel the Direct Purchaser Plaintiffs ("DPPs") to produce documents relating to the DPPs' "downstream" sales of CRTs and CRT Finished Products, including "competitive intelligence" activities. In particular, Mitsubishi seeks supplemental responses to its Requests for Production ("RFPs") Nos 12, 13, 14, 17, 19, 21 and 23.[1] Mitsubishi also moves to compel the DPPs to produce Rule 30(b)(6) witnesses for each of the nine DPP class representatives. The DPPs oppose on the grounds that the court's prior order in this case ruled that "downstream" sales discovery will not be granted due to lack of relevance and that the nine DPP class representatives have already been deposed before in this case by able counsel for defendants. The parties have fully briefed the issues and the matter is ready for resolution.

I. **Rule 30(b)(6) Depositions of Nine DPP Class Representatives**

Mitsubishi contends that it is entitled to depose the nine DPP class representatives because, *inter alia*: (1) when these representatives were deposed earlier, Mitsubishi had not yet been sued and therefore had not been able to participate; (2) Mitsubishi's interests in obtaining relevant discovery could not have been protected by other defendants' counsel however able; (3) Mitsubishi wishes to focus on "damages, topics critical to expert reports and motions for summary judgment, and the new documents DPPs should be compelled to produce, not to mention questions specific to Mitsubishi Electric" and (4) Mitsubishi cannot get answers to these questions through any other discovery. Reply at 4-5.

---

[1] Mitsubishi's 9/15/15 Motion to Compel Direct Purchaser Plaintiffs' Document Production and Rule 30(b)(6) Depositions ("Motion") originally sought responses to Requests Nos 2, 4, 5, 12, 13, 14, 17, 19, 20, 21 and 23 of Mitsubishi's 9/5/14 First Set of Requests for Production served on the DPPs. Motion at 2-3. In their 9/22/15 Opposition, the DPPs asserted that "[t]here is no dispute that class plaintiffs have agreed to produce and have produced all documents responsive to document requests numbers 2, 4 and 5." Opposition at 5. Mitsubishi's 9/28/15 Reply accepted the "DPPs' representation that they have produced all the documents they have responsive to Requests Nos 2, 4 and 5" and dropped those Requests from this motion. Reply at 1 and 5.

The DPPs oppose Mitsubishi's motion, arguing that: (1) Mitsubishi's deposition notices are largely duplicative of the notices of depositions already taken by the other defendants of the nine DPP class representatives; (2) Mitsubishi's deposition notices violate the court's Discovery Protocol (ECF No 1128); (3) further issue development occurs in all cases without justifying second depositions of the same witnesses; and (4) Mitsubishi has failed to show "good cause" for deposing the nine DPP class representatives a second time. Opposition at 9.

The relevant legal standard is not disputed by the parties. According to Mitsubishi, the legal standard is "good cause" under either the Discovery Protocol (ECF No 1128)[2] or pursuant to Federal Rule of Civil Procedure 30(a)(2), which requires leave of court for a second deposition of a party when, *inter alia*, a new party has been added to the case. Rule 30(a) (2) provides that if a "deponent has already been deposed in the case" and "the parties have not stipulated to the deposition," "[a] party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b) (1) and (2)." Rule 26(b) (1) (amended in 2015) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[2] The Discovery Protocol states: "[a] witness may be deposed only once in these proceedings, unless . . . by order of the Court or the Special Master based on a showing of good cause." ECF No 1128 at 5.

Rule 26(b) (2) places further limitations on discovery:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b) (1).

The factors outlined in Rule 26(b) (1) and (2) weigh in favor of granting Mitsubishi's motion to compel the Rule 30(b) (6) depositions of the nine DPP class representatives. The most compelling fact is that Mitsubishi was not a party to this MDL when those earlier depositions were taken. Notwithstanding any overlap between Mitsubishi's deposition topics and the prior topics in the earlier notices of Rule 30(b) (6) depositions of the nine class representatives, Mitsubishi should not be denied the opportunity to depose these DPP class representatives to protect its interests. While the DPPs may not have had a basis to bring suit before 2014, it was nonetheless the DPPs' choice to sue Mitsubishi when they did. Mitsubishi ought not to be foreclosed from appropriate discovery because other defendants were able to take discovery earlier.

Other factors also weigh in favor of granting the motion with respect to the Rule 30(b) (6) depositions. Although the DPPs are correct that Mitsubishi's deposition notices overlap with the deposition notices for the nine DPP class representatives already taken by other defendants, the noticed topics are not duplicative. *Compare* Exs 2 and 18, 9/22/15 Rushing Dec. The noticed topics raise issues important to the parties' claims or defenses, e g,

ORDER RE MITSUBISHI'S MOTION TO COMPEL DPPS' DOCUMENTS AND RULE 30(B) (6) DEPOS    PAGE **4** OF **13**

damages and liability.  The testimony of the nine DPP class representatives is likely to be important to resolving the issues in dispute and therefore likely to have significant value.  The amounts in controversy are extremely large, as are the parties' resources.  The DPPs have the best access to their internal information regarding their damages case and Mitsubishi cannot obtain this information from any other source.  The DPPs have not demonstrated that the depositions would be unreasonably cumulative, that there are alternative sources or that there would be undue burden or expense.  Most importantly, the DPPs cannot reasonably contend that denial of Mitsubishi's motion would not prejudice Mitsubishi.

Where a second defendant is added to a case after depositions have already been taken by the first defendant, courts have granted the second defendant leave to take second depositions.  *See e g, Perry v Kelly-Springfield Tire Co, Inc*, 117 FRD 425 (ND Ind 1987); *Christy v Penn Turnpike Comm'n*, 160 FRD 51, 53 (ED Pa 1995).  Similarly, here the Rule 30(b) (6) depositions of the nine DPP class representatives appear to be proportional to the needs of this case and the burden and expense appear reasonable and within the norms of complex antitrust litigation such as this.  Under these circumstances, the undersigned finds that Mitsubishi has shown good cause to take the Rule 30(b) (6) depositions of the nine DPP class representatives.

But some limitations on the scope of the inquiries are appropriate, including:  (a) restriction to the noticed topics; and (b) avoidance of duplicative questioning of witnesses.  *See id*.  For example, if a Rule 30(b) (6) witness was questioned about a topic that was already covered, there would be no reason to duplicate those questions.  As required by the Discovery Protocol in this case, counsel "shall engage in their best efforts to conduct discovery efficiently and without duplication."  ECF No 1128 at 14.  Mindful that such a limitation may not be self-enforcing, the undersigned offers the following guidance.  If a topic was covered in the individual DPPs' prior Rule 30(b) (6) deposition, it need not – and should not – be covered again in the deposition taken by Mitsubishi unless some aspect of the topic particularly pertains to Mitsubishi.  For example, if a DPP's purchases from other defendants were inquired into

previously, questions about those purchases should not be pursued by Mitsubishi. But of course, a DPP's purchases from Mitsubishi or of Mitsubishi's products are fair game. And plainly a topic not previously covered would be appropriate for Mitsubishi to pursue. While some differences between the parties as to what was covered and not covered in the earlier depositions may be expected, the able and professional counsel involved can be expected to work through any such differences.

Accordingly, Mitsubishi's motion to compel the Rule 30(b)(6) depositions of the nine class representatives should be granted. To ensure meaningful depositions, resolution of its motion to compel production of documents should occur first. To that, this order turns.

## II.     Requests for Production Nos 12-14, 17, 19-21 and 23

Mitsubishi's motion to compel also seeks supplemental responses to the following document requests:

**Request No 12:** "All Documents relating to Your corporate policies, practices and/or procedures whether formal or informal, for making decisions concerning the purchase or sale of CRTs or CRT Products including factors considered, purchasing methods, and procedures You currently use or have used at any time during the Relevant Period."

**Request No 13:** "All Documents relating to Your participation in any cooperative entity, trade association, symposium, conference, or other organization concerning CRTs and CRT Products."

**Request No 14:** "All reports, analyses, memoranda, Communications, and other discussions summarizing, describing, or referring to Your competitors and competition for the sale of CRT Products, including any Documents related to competitive intelligence You collected."

    **Request No 17:** "All Documents relating to any events or changes in the market(s) for CRTs or CRT Products during the Relevant Period that would or did affect the production, supply, demand, uses, or pricing of CRTs or CRT Products."

    **Request No 19:** "All Documents reflecting the effect, if any, of price changes of CRT Products, or any of their components, on the profit or loss You realized."

    **Request No 20:** "All Documents reflecting the effect, if any, of price changes of CRT Products, or any of their components, on the profit or loss You anticipated."

    **Request No 21:** "All Documents relating to Your decisions, if any, to pass through to Your customers any increase in the price of CRTs or CRT Products."

    **Request No 23:** "Separately for You and each of Your affiliates, divisions, or subsidiaries, all Documents concerning revenue, costs, profitability and margins (on a monthly or annual basis) for all CRTs and CRT Products You sold, used or distributed including but not limited to annual reports, balance sheets, financial statements and financial reports."  Motion at 3.

    With respect to these document requests, Mitsubishi seeks documents regarding:  (1) plaintiffs' "downstream" activities, i e, documents and information regarding plaintiffs' use and sales of allegedly price-fixed products after purchase and (2) plaintiffs' "competitive intelligence" activities, i e, monitoring prices of competitive products and competitors' practices.  Because "competitive intelligence" activities relate to setting and negotiating prices for selling CRT Products, they are a subset of a plaintiff's "downstream" activity.  To simplify matters, the "competitive intelligence" requests shall be considered before the other "downstream" requests.

    **A.  Document Requests re Competitive Intelligence:  Nos 12, 14 and 23**

    While Request No 14 most clearly seeks competitive intelligence documents, Requests Nos 12 and 23 may also encompass such information.

The DPPs contend that in response to Mitsubishi's Requests, they produced "documents related to purchases [of CRT Products] from Mitsubishi." Opposition at 3. The DPPs also assert that they have verified twice "that class plaintiffs have performed a reasonable search for responsive documents and produced everything they have found." Opposition at 6, Rushing Dec ¶27. And yet the DPPs also assert that they "have refused to produce such 'downstream' materials because, *inter alia*, they violate the prior order of the Court." Opposition at 6.

With respect to Request No 14, the DPPs contend that they searched for responsive documents, "documents relating to competitors and competition for the sale of CRT Products" – and do not have any such documents." Opposition at 6 (citing Rushing Dec ¶27).

Regarding Request No 13, documents relating to membership in trade associations concerning CRTs or Finished Products, the DPPs claim that they "agreed to produce documents responsive to request number 13 in their original responses dated October 2014, so there is "no dispute as to this request." Opposition at 6. The DPPs also contend that "to the extent that 'competitive intelligence' discovery could be relevant 'to rebut any argument that competitor communications and price monitoring are indicative of an improper conspiracy," "class plaintiffs do not have documents relating to contacts with their competitors. Rushing Decl. ¶27." Opposition at 8.

Mitsubishi replies that the DPPs cannot "sidestep producing documents relevant to competitive intelligence by asserting in a declaration that 'class plaintiffs do not have documents relating to contacts with their competitors.' Mitsubishi points out that competitive intelligence activities go beyond mere contacts with competitors, including "use of third-party data sources and market share/data analyses, as well as knowledge, use, and tracking of competitors' pricing for CRT finished products." Reply at 3.

As Judge Conti ruled in an earlier decision in this case, plaintiffs' "downstream" competitive intelligence activities would be relevant to "rebut any charges that competitive

contacts and price monitoring are circumstantial evidence of an illegal conspiracy.  See Urethane, 2011 WL 1327988, at *6."  In re Cathode Ray Tube (CRT) Antitrust Litigation, 301 FRD 449, 453 n 4 (ND Cal 2014) (ECF No 2714 at 8, n4) ("Best Buy Discovery Order").

In the Report and Recommendation on Mitsubishi's Motion to Compel Discovery re ViewSonic's Sales (ECF No 3401) ("ViewSonic Discovery Order"), the undersigned found that ViewSonic's "competitive intelligence information is relevant to rebut allegations that competitor contacts and price monitoring are indicative of a conspiracy.  Mitsubishi has limited its competitive intelligence discovery requests to only those sales-related documents necessary to conduct discovery on competitive intelligence."  ECF No 3401 at 5.  In the ViewSonic Discovery Order, the motion was granted with respect to Mitsubishi's Document Requests Nos 12, 14 and 23, all relating to competitive intelligence activities.  While there is language referring to ViewSonic's sales activities, the focus of the Order is on granting the limited sales-related documents necessary to conduct discovery on ViewSonic's competitive intelligence activities.

For the same reasons stated in the Best Buy and ViewSonic Discovery Orders, the DPPs' competitive intelligence activities are relevant to rebut an allegation that competitor contacts and price monitoring are indicative of a conspiracy.  The discovery sought appears to be proportional to the needs of the case, where the amounts in controversy are large, the parties' resources are also large, and the DPPs have not established that discovery into their competitive intelligence activities would cause undue burden, expense or be cumulative.  Under these circumstances, the undersigned finds that the relevance and benefit of the discovery sought outweigh any burden or expense.

Mitsubishi's motion to compel should be granted with respect to Requests Nos 12, 14 and 23, to the extent they encompass sales-related documents necessary to conduct discovery into the DPPs' competitive intelligence activities.  The undersigned agrees with Mitsubishi that the DPPs' assertion that they have no documents relating to contacts with

competitors is not fully responsive to Requests Nos 12, 14 and 23 because the DPPs' competitive intelligence activities are not limited to contacts with competitors. The DPPs should produce documents relating to their competitive intelligence activities, including price monitoring and participation in trade industry meetings to gather competitive intelligence on CRTs and CRT Finished Products during the relevant time period.

**B.  Document Requests re Downstream Discovery**

"Downstream" discovery refers to information regarding the DPPs' sales of CRT Finished Products after their purchase. Because the DPPs' competitive intelligence activities, if any, relate to monitoring competitors' prices for comparable CRT Finished Products to help set prices and hence sell CRT Finished Products, competitive intelligence activities are a subset of "downstream" discovery. As discussed above, competitive intelligence activities have been deemed relevant to rebut allegations that competitor contacts and price monitoring are indicative of a conspiracy.

The DPPs have refused to produce other "downstream" discovery in light of Special Master Legge's Report and Recommendation that discovery into downstream sales is not relevant (July 13, 2011, ECF No 966) and Stipulation and Order (ECF No 988) ("Downstream Discovery Order"). Reply at 1, 3.

Mitsubishi contends that the Downstream Discovery Order should not apply to or bind Mitsubishi because the DPPs did not sue Mitsubishi until May 2014, almost three years after this Stipulation. Further, Mitsubishi relies on two orders in this case clarifying that discovery into plaintiffs' downstream competitive intelligence activities is permissible, citing ECF No 2714 ("Best Buy Discovery Order") and ECF No 3401 ("ViewSonic Discovery Order"). Reply at 2. Mitsubishi contends that certain "plaintiffs in this MDL continue to assert state law claims against multiple defendants (e. g., Best Buy, Costco, and Interbond)," indicating that the downstream discovery could be relevant to pass-on in cases involving those plaintiffs. *Id*.

The DPPs contend that: (1) Special Master Legge's Report & Recommendation precludes discovery into "downstream" information; (2) neither the Best Buy nor the ViewSonic Discovery Order is applicable here; (3) when the ViewSonic Discovery Order was issued, "pass-on" was an issue but no longer is because the IPPs have settled, discovery in the Best Buy case is closed and discovery of class plaintiffs would add "no meaningful value with regard to issues of 'pass-on' in the Best Buy case, in light of the enormous amount of data relevant to those issues already produced." Opposition at 6-9.

In deciding this discovery dispute, the undersigned follows amended Rule 26(b) of the Federal Rules of Civil Procedure, requiring consideration of the relevance of the discovery sought, its proportionality to the needs of the case in light of a number of factors and the burden or expense of the proposed discovery in relation to its likely benefit.

With respect to relevance, as pointed out by Special Master Legge in an earlier order in this case, broad downstream discovery of an antitrust plaintiff is not relevant and can be unduly burdensome. ECF No 966 ("Downstream Discovery Order" at 3-4). Special Master Legge appears to have been applying the Supreme Court's guidance from the *Hanover Shoe, Inc v United Shoe Mach Corp*, 392 US 481 (1968) and *Illinois Brick Co v Illinois*, 431 US 720 (1977) cases and recognized that "cost-plus contracts" would be relevant and hence a form of "downstream" information that would be discoverable. The Best Buy and the ViewSonic Discovery Orders carve out another subset of "downstream" information that would be relevant and could be discoverable, namely a plaintiff's competitive intelligence activities. But the Best Buy and ViewSonic Discovery Orders are not otherwise inconsistent with the Downstream Discovery Order.

Mitsubishi has not provided any new basis for the relevance of downstream discovery (beyond competitive intelligence and cost-plus contracts). The DPPs do not assert any state law claims, so pass-on by any DPP would not be relevant to any claim or defense in the DPPs' case against Mitsubishi. Mitsubishi fails to explain how any DPP's pass-on of any

alleged Mitsubishi overcharges would be relevant to other plaintiffs' state law claims against certain other defendants, e g Best Buy, Costco or Interbond.  *See* Reply at 2.  Thus, the general "downstream" discovery sought does not appear to be relevant to the parties' claims or defenses in this case.  Accordingly, the "downstream" discovery sought appears to have little benefit to the issues in this case.

Moreover, the burden of gathering and producing broad downstream discovery from nine DPP class representatives would be substantial.  For example, Request No 12 asks for all documents regarding "corporate policies, practices and/or procedures whether formal or informal, for making decisions concerning the purchase or sale of CRTs or CRT Products," which would encompass a broad swath of documents regarding sales of CRT Products that would have no relevance to the issues in this case.  Request No 17, requesting documents "relating to any events or changes in the market(s) for CRTs or CRT Products during the Relevant Period that would or did affect the production, supply, demand, uses, or pricing of CRTs or CRT Products," is similarly overbroad and could encompass a large number of documents.  Parsing through these requests for "downstream" discovery would entail substantial time, effort and expense on the part of the DPPs' counsel as well as each of the DPPs.

The breadth and burden of responding to these "downstream" discovery requests and the questionable relevance and benefit of such discovery indicate that the discovery sought is not proportional to the needs of this case.  Although the amounts in dispute and the parties' resources are substantial, the balance of factors weigh in favor of denying Mitsubishi's motion to compel with respect to broad "downstream" discovery as reflected in Requests Nos 12-14, 17, 19-21 and 23.

**CONCLUSION**

Mitsubishi's motion is **GRANTED** with respect to Mitsubishi's notices of Rule 30(b) (6) depositions of the nine class representatives and with respect to Mitsubishi's Requests

for Production Nos 12, 14 and 23, to the extent they relate to the DPPs' competitive intelligence activities regarding CRT Products during the relevant time period that may rebut an allegation that competitive contacts and price monitoring are indicative of an illegal conspiracy. The DPPs' competitive intelligence activities regarding CRT Products shall include competitive intelligence activities that do not involve contacts with competitors, including price monitoring.

No later than April 29, 2016, the DPPs shall produce all documents regarding their competitive intelligence activities in response to Requests Nos 12, 14 and 23 to Mitsubishi. No later than May 16, 2016, the DPPs shall make available to Mitsubishi dates for Rule 30(b)(6) depositions of the nine DPP class representatives, which depositions shall occur no later than July 1, 2016 absent stipulation or leave of court. Mitsubishi's motion is **DENIED** in all other respects.

IT IS SO ORDERED.

Date: March 24, 2016

Vaughn R Walker
United States District Judge (Ret)

The Recommended Order of the Special Master is Accepted and Ordered / ~~Denied~~ / ~~Modified.~~

Date: April 18, 2016

Honorable Jon S Tigar
United States District Judge