Vaughn R Walker
Law Office of Vaughn R Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA  94111
Tel:  (415) 871-2888
Fax:  (415) 871-2890
vrw@judgewalker.com

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No 1917 |
| This Order Relates To: | Master Case No 3:07-cv-05944-JST |
| ALL DIRECT PURCHASER ACTIONS | **ORDER RE MITSUBISHI'S MOTION TO COMPEL DIRECT PURCHASER PLAINTIFFS TO SUPPLEMENT RESPONSES TO INTERROGATORIES** |

The Mitsubishi Defendants ("Mitsubishi") move to compel the Direct Purchaser Plaintiffs ("DPPs") to supplement their responses to two of Mitsubishi's September 5, 2014 interrogatories.  The motion was first submitted on August 4, 2015 and was at that time directed to five interrogatories (Nos 1, 19, 22, 23 and 24).  Shortly thereafter, the parties agreed to hold the motion in abeyance while they worked on a resolution.  On December 4, 2015, the DPPs served supplemental responses.  Then, on December 21, 2015, Mitsubishi renewed the motion as to two of the five previously contested interrogatories:  Nos 1 and 19.[1]  Briefing was completed in January 2016 and the motion is now ripe for decision.

Mitsubishi's criticism of the DPPs' responses can be stated simply:  While the DPPs have provided fairly lengthy responses to the interrogatories in question, the responses, according to Mitsubishi, fail to identify Mitsubishi's alleged participation in the conduct that is the subject of the interrogatories and thus fail to establish a factual basis for the DPPs' complaint against Mitsubishi.  The interrogatories in question follow:

**Interrogatory No. 1:**  Identify any alleged "Glass Meetings" (as alleged in ¶¶ 125-138 of the Complaint) that You contend Mitsubishi Electric Employees attended, by stating the time, date and location of the meeting, Identifying the Persons who attended any such "Glass Meetings," and identifying any statements that You contend were made by Mitsubishi Electric Employees that You contend constitute evidence in support of the conspiracy alleged in the Complaint.

**Interrogatory No. 19:**  Identify any meetings, communications, exchanges, agreements, or receipts of confidential information other than those specifically identified in ¶ 153 of the Complaint in which Mitsubishi Electric participated that Relate to a conspiracy for

---

[1] 12/21/15 Fuentes Letter ("Renewed Motion").

CRTs or CRT Products involving Mitsubishi Electric. For any meetings, communications, exchanges, agreements, or receipts of confidential information that you identify:

        a. Identify all Persons involved.

        b. Identify all Related Documents.

        c. Provide the date, time, and location.

        d. Identify all Related percipient witness statements or testimony.

        e. Describe all actions and statements that occurred.

        Turning first to Interrogatory No 1, it is fair to say that the DPPs' responses are nothing if not long. The DPPs' December 4, 2015 Supplemental Response to Interrogatory No 1 spans some 45 pages. *See* 12/21/15 Fuentes Dec in support of Renewed Motion, Ex 11 ("DPPs' Supplemental Response"). These pages include the usual recital of objections (pages 1 to 4); a reference to numerous documents that were produced by various parties through discovery in this litigation (pages 30 through 45); a listing of meetings attended by Mitsubishi and of communications by Mitsubishi with competitors (pages 27 to 30); a general description of the CRT and other antitrust conspiracies (pages 8 to 20) and a number of caveats, among which the following deserve note:

        Plaintiffs will not provide an exhaustive meeting by meeting, defendant by defendant account of the hundreds of meetings occurring over a 12 year period during the conspiracy. Such an account would be of little use but would require an enormous amount of work on behalf of Plaintiffs— work which Defendants and Co-conspirators are equally if not better able to perform themselves. Defendants and Co-conspirators are well aware of the overwhelming evidence in this case. While merits discovery is far from finished, participants in the conspiracy have described it extensively. In particular, the depositions of C.C. Liu, S.J. Yang, and Jason Lu contain information about the conspiracy. Plaintiffs direct Mitsubishi to all of the depositions of alleged conspiracy participants. (DPPs' Supplemental Response at 6).

        Worldwide government investigations have confirmed the existence of the conspiracy. Two Co-conspirators have confessed. Co-conspirator

Samsung SDI ("SDI") pleaded guilty to a criminal violation of Section 1 of the Sherman Act (15 U.S.C. § 1). Co-conspirator Chunghwa Picture Tubes, Ltd. ("Chunghwa") admitted participation in the conspiracy and has sought amnesty from the United States Department of Justice ("DOJ"). The DOJ has indicted former employees of SDI; Chunghwa; and Co-conspirator LG Electronics, Inc. ("LGE") and Co-conspirator LG Philips Displays ("LPD"). Foreign enforcement agencies have sanctioned Defendants and Co-conspirators hundreds of millions of dollars. (*Id* at 8).

Chunghwa disclosed the conspiracy to the DOJ when it applied for and received amnesty from criminal prosecution in 2007. In May of 2011, SDI pleaded guilty to participating in the CRT conspiracy and was fined $32 million.[1] The DOJ has also indicted six former executives of SDI, Chunghwa, LGE and LPD. The indictments allege, *inter alia*, agreements on prices, output, and market allocation; exchange of sales, production, market share and pricing data; auditing to verify compliance with conspiratorial agreements; and active concealment of the conspiracy. Exs. 5–8. When announcing the indictment of Co-conspirator Chunghwa's President, C.Y. Lin, for his participation, the DOJ was unambiguous: "[t]his conspiracy harmed countless Americans who purchased computers and televisions using cathode ray tubes sold at fixed prices." (*Id* at 8).

Given Mitsubishi's claim of inadequacy in the DPPs' response to Interrogatory No 1, the following assertion in the DPPs' response arguably supports Mitsubishi's claim:

Over the course of hundreds of "Glass Meetings" from March of 1995 to November of 2007, Defendants and Co-conspirators agreed to fix and stabilize CRT prices, limit production of CRTs, and allocate customers. (*Id* at 7).

What is lacking in the DPPs' Supplemental Response to Interrogatory No 1 concerning the "Glass Meetings," says Mitsubishi, is any reference to Mitsubishi. The DPPs recite Mitsubishi's involvement in meetings and communications (*Id* at 28-30, 46-59). But the recitals do not identify the meetings as "Glass Meetings," much less provide who from Mitsubishi was involved in these meetings or where and when the meetings occurred, or the Mitsubishi statements or communications allegedly related to "Glass Meetings."

"Glass Meetings" is a term that the DPPs use to designate a discrete series of meetings of CRT industry participants.  "Glass Meetings" are specifically alleged in paragraphs 125 through 138 of both the DPPs' original complaint against Mitsubishi (*Crago et al v Mitsubishi*, Civil Case No 14-cv-0258-JST (ND Cal), Doc No 1 at 34-37) and their first amended complaint (Doc No 34 at 34-37).  In their supplemental response to Interrogatory No 1, the DPPs described the conspiracy they allege:

> Plaintiffs allege that the alleged conspiracy involved, *inter alia,* group meetings of conspirators, some of which were referred to as "Glass Meetings," bilateral meetings between two conspirators, as well as email, telephone and other communications between conspirators.  While discovery is continuing and Plaintiffs' expect to discover additional conspiratorial contacts, as Plaintiffs' previous responses and this supplemental response show, Mitsubishi participated in over seventy conspiratorial  contacts including glass, group and bilateral meetings, conspiratorial communications, and other contacts with its coconspirators, including individuals who organized and participated in "Glass Meetings."  (DPPs' Supplemental Response at 46).

The DPPs' Supplemental Response then lists seventy-two meetings and communications in which Mitsubishi allegedly was involved.  Mitsubishi contends that these meetings and contacts are not identified as "Glass Meetings" and the DPPs have therefore failed to answer Interrogatory No 1.  *See* Renewed Motion at 4.  The DPPs responded by stating that:  "Mitsubishi had "sought a complete list of what DPPs contend are conspiratorial contacts, and that is [what] DPPs provided" in their list of seventy-two in the DPPs' supplemental response.  12/29/15 Saveri Letter ("Opposition") at 6.

It appears to the undersigned that the parties are engaged in a largely semantic quarrel.  The DPPs contend that Mitsubishi's participation in "Glass Meetings" is embraced in the list of seventy-two while Mitsubishi contends that whatever these seventy-two represent, they are not "Glass Meetings."  No doubt the term "Glass Meetings" possesses at least some elasticity.  Some, perhaps most, of the seventy-two items listed in the DPPs' supplemental response may not be "Glass Meetings," but instead bilateral contacts with other CRT industry participants.  Even if one assumes that none of the seventy-two items listed in the DPPs

supplemental response is a "Glass Meeting," this alone would not render the DPPs' interrogatory responses inadequate.  After all, the responses afford Mitsubishi notice of the DPPs' claims in this litigation.  That is what Mitsubishi is entitled to through discovery.  Whether an alleged conspiratorial contact is a "Glass Meeting" or something else does not determine the outcome of the DPPs' claims.

"Glass Meetings" have nonetheless assumed an important role in this litigation in part due to their centrality to the CRT conspiracy, as described by the European Commission. *See e g*, EC Press Release dated 5 December 2012 (http:/Europa.edu/rapid/press-release_IP-12-1317_en.htm).  No doubt, the DPPs desire to introduce at trial as much evidence as possible with reference to those meetings.  But evidence of participation in a "Glass Meeting" is not required to establish liability.

That said, the issue Mitsubishi raises is not wholly without significance.  There is no serious question that Interrogatory Nos 1 and 19 are so-called contention interrogatories.  The purpose of contention interrogatories is to narrow the issues to be addressed at trial and enable the propounding party to determine the proof required to rebut the responding parties' position.  *Lexington Ins Co v Commonwealth Ins Co*, 1999 WL 33292943, *7 (ND Cal Sep 17, 1999); *see also Former Shareholders of Cardiospectra, Inc v Volcano Corp*, 2013 WL 5513275 (ND Cal 2013).  As Special Master Martin Quinn wrote in the TFT-LCD Litigation, MDL No 1819, contention interrogatories are disfavored at an early stage of litigation and if overly broad, unduly burdensome and unlikely to produce material benefit are disfavored at any stage of litigation.  *In re TFT-LCD Antitrust Litigation*, N D Cal Civil Case No 07-cv-1827, Doc No 2114 at 3.  Interrogatory No 1 is not overly broad nor should it be unduly burdensome to specify the time, date, location and names of Mitsubishi participants of any "Glass Meeting" that the DPPs contend Mitsubishi attended.  At the very least, Mitsubishi should be provided this information if the DPPs contend that any of the seventy-two items on their list constitutes a "Glass Meeting."

What ultimately matters is not the label attached to the conduct that the DPPs list in their responses – "Glass Meetings" or otherwise – but the evidence of the conduct itself.

Yet Mitsubishi is entitled to know whether the DPPs seek to introduce evidence of Mitsubishi's participation in "Glass Meetings" or if the DPPs have no evidence of Mitsubishi's participation in a "Glass Meeting." Hence, the DPPs should be required simply to state whether any of the items listed in its list of seventy-two is or is not a "Glass Meeting," and, if so, the time, date and location thereof unless otherwise set forth in the DPPs supplemental response and the name of any Mitsubishi participants in such meeting as is available to the DPPs.

Possibly, the DPPs have already supplied the information that Mitsubishi requests. Several of the meetings identified in the DPPs supplemental responses might conceivably be characterized as "Glass Meetings." *See* DPPs' Opposition at 6 ("DPPs believe that the group meetings – see, e g – entry no 55 – could well be characterized as such [a Glass Meeting]"). If the DPPs so contend, they should so state with reference to this and any other meetings that they contend are "Glass Meetings."

Requiring the DPPs to identify "any statements that [the DPPS] contend were made by Mitsubishi Electric Employees" at "Glass Meetings" may be somewhat problematic. The absence of a detailed account of such statements might not render the DPPs' response inadequate as that information might not be available to the DPPs. As the DPPs have substantial information about the "Glass Meetings" from discovery in this litigation, however, to the extent the DPPs can ascribe statements at "Glass Meetings" to Mitsubishi, the DPPs should be required to do so.

Finally, the DPPs, noting that Interrogatory No 1 is a contention interrogatory, point out case and other authority that responses to such interrogatories are not due until close to trial. Federal Rule of Civil Procedure 33 provides that: "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." FRCP 33(a)(2). While no trial date has been set in this matter, substantial discovery has been conducted and this litigation is nearing its conclusion. It appears that the court will set a trial

date in the fairly near future.  To the extent that the DPPs claim a further response to Interrogatory No 1 need not be provided until later, the undersigned rejects that contention.

Turning to Interrogatory No 19, the parties narrowed their dispute to part d ("Identify all Related percipient witness statements or testimony") and then further in Mitsubishi's renewed motion to "to the witness testimony and statements the DPPs claim as support for the allegation, in the inadmissible Samsung SDI discovery response to the Dell Plaintiffs, that Samsung SDI conspired in the CRT case with 'at least one Mitsubishi entity.'" Renewed Motion at 5.  In response to the narrowed inquiry about support for the alleged Samsung SDI conspiracy with Mitsubishi, the DPPs provided the following:

> See supplemental response to Interrogatory No. 1, *supra*, entry nos. 1, 3–4, 6–16, 18–38, 40, 42–46, 48, 50–56, 58–60, 63–66, 68–72.

> Plaintiffs also direct Mitsubishi to Mitsubishi's Responses to DPPs' First Set of Interrogatories, including its Exhibit B, and all revisions and supplementations thereto.    Plaintiffs further direct Mitsubishi to the Supplemental Exhibit A to Various Direct Action Plaintiffs' Interrogatory Responses by Boies, Schiller & Flexner LLP, including all revisions and supplementations thereto.  (DPPs' Supplemental Response at 82-83).

Mitsubishi's beef here appears to be that this supplemental response does not specifically identify any percipient witnesses or statements supporting an admission by Samsung SDI of conspiratorial conduct with a Mitsubishi entity.[2]  Mitsubishi has requested that the DPPs "be compelled to answer by identifying any percipient witnesses (if any), and any statements or testimony from those witnesses (if any), supporting the hearsay statement by Samsung SDI that it conspired to fix CRT prices with 'at least one Mitsubishi entity.'"  *Id*.  The DPPs' supplemental response is what it is.  If that response fails to identify any percipient witnesses or any statements, then that failure is apparent on the face of the response.  It should be noted that the DPPs' supplemental response to Interrogatory No 19 refers specifically

---

[2] 1/5/16 Fuentes Letter ("Reply") at 3.

to certain entries in its supplemental response to Interrogatory No 1, which include citations to witness testimony and statements. *See e g*, DPPs' Supplemental Response, *supra*, at 54-56 (entries 48, 51, 55).  The issue here is not that the DPPs failed to respond to Mitsubishi's interrogatory.  Instead, Mitsubishi takes issue with the nature of the DPPs' response:  "the DPPs should be compelled to answer Interrogatory Nos. 1 and 19(d), even if the answer today is *nothing and no one*, and even if the DPPs retain their obligation to supplement their response if further discovery somehow yields further information."  Renewed Motion at 6.  If the items to which the DPPs refer fail to contain the requested information, it is doubtful that compelling a further response to Interrogatory No 19(d) at this time will fill the void that Mitsubishi claims.  Mitsubishi has its answer.  It is now up to Mitsubishi to argue that the items do not amount to what the DPPs contend.  The issue is not one of a failure of discovery, but maybe – if Mitsubishi is correct – a failure of proof.

This is not a case like *Tennison v City & County of San Francisco*, 226 FRD 615 (ND Cal 2005), where the defendants' motion to compel responses to contention interrogatories was granted in part due to the lack of a full and complete response.  The *Tennison* plaintiff's response consisted essentially of several objections and claims that "his damages stem from 13-1/2 years of wrongful incarceration."  226 FRD at 618.  In contrast, the DPPs' supplemental responses convey detailed information, including citations to witness statements and testimony.  A further response to Interrogatory No 19(d) at this time would unlikely add any information of value.

Now, therefore, Mitsubishi's motion to compel is **GRANTED in part** with respect to Interrogatory No 1.  The DPPs are ORDERED to state whether any of the seventy-two items identified in their supplemental response to Mitsubishi's Interrogatory No 1 is a "Glass Meeting" as that term is used in paragraphs 125 to 138 of their amended complaint.  With respect to any item identified as a "Glass Meeting," the DPPs are ORDERED to state the time, date and location of any such meeting, the persons who attended such meeting and any statements made by Mitsubishi employees that support the conspiracy alleged in the

1   complaint.   The DPPs' supplemental response to Interrogatory No 1 shall be served no later

2   than April 15, 2016.  Mitsubishi's motion to compel is otherwise **DENIED**.

3   IT IS SO ORDERED.

4

5   Date:   March 28, 2016

6
                                                    _____
7                                                       Vaughn R Walker
                                                    United States District Judge (Ret)
8

9   The Recommended Order of the Special Master is Accepted and Ordered / ~~Denied~~ / ~~Modified~~.

10
    Date:    April 18, 2016
11

12
                                                    _____
13                                                      Honorable Jon S Tigar
                                                       United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  ORDER RE MITSUBISHI'S MOTION TO COMPEL DPPS TO SUPPLEMENT
    RESPONSES TO INTERROGATORIES                                      PAGE **10** OF **10**