Pages 1 - 66

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Jon S. Tigar, Judge

MDL NO. 1917 IN RE:  CATHODE    )
RAY TUBE (CRT) ANTITRUST        )
LIGITATION,                     )
                                )    NO. C 07-05944 JST
                                )
                                )
_____)


San Francisco, California
Tuesday, April 19, 2016

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:
For DAP:
                                             BOIES, SCHILLER & FLEXNER, LLP
      30 South Pearl Street, 11th Floor
      Albany NY 12207
      **BY:  KYLE SMITH**
      **ATTORNEY AT LAW**
For Costco:
      PERKINS COIE LLP
      1201 Third Avenue - Suite 4900
      Seattle, Washington  98101
      **BY:  CORI GORDON MOORE**
      **ATTORNEY AT LAW**
For PPA:
      SAVERI & SAVERI, INC.
      706 Sansome Street
      San Francisco, California  94111
      **BY:  R. ALEXANDER SAVERI**
      **GUIDO SAVERI**
      **ATTORNEYS AT LAW**

For Viewsonic:
      CROWELL & MORING LLP
      515 South Flower Street, 40th Floor
      Los Angeles, CA 90071
      **BY:  JASON MURRAY**
      **ATTORNEY AT LAW**
Reported By:    Rhonda L. Aquilina, CSR #9956, RMR, CRR
      Official Court Reporter

**PLAINTIFF APPEARANCES:   (CONTINUED)**

For Sears and KMart:

                    KENNY, NACHWALTER
                    1100 Miami Center
                    201 South Biscayne Blvd
                    Miami, FL 33131-4327
            BY:  **WILLIAM BLECHMAN**
                 **SAMUEL RANDALL**
                 **ATTORNEYS AT LAW**

For PPA:

                    TRUMP, ALIOTO & TRUMP
                    2280 Union Street
                    San Francisco, CA 94123
            BY:  **MARIO ALIOTO**
                 **ATTORNEY AT LAW**

For Sharp:

                    PAUL, WEISS, RIFKIND, WHARTON
                      & GARRISON LLP
                    2001 K Street, NW
                    Washington, DC 20006
            BY:  **CRAIG BENSON**
                 **KEN GALLO**
                 **ATTORNEYS AT LAW**

For DPP:

                    COTCHETT, PITRE & MCCARTHY LLP
                    San Francisco Airport Office Center
                    840 Malcolm Road
                    Burlingame, California  94010
            BY:  **STEVEN N. WILLIAMS**
                 **ATTORNEY AT LAW**

For Dell:

                    ALSTON & BIRD LLP
                    Silicon Valley
                    275 Middlefield Road - Suite 150
                    Menlo Park, California  94025
            BY:  **DEBRA BERNSTEIN**
                 **ATTORNEY AT LAW**

For Plaintiffs:

                    LAW OFFICES OF FRANCIS O. SCARPULLA
                    44 Montgomery Street
                    San Francisco, CA 94104
            BY:  **FRANCIS O. SCARPULLA**
                 **ATTORNEY AT LAW**

For Plaintiffs:

                    SHERMAN KASSOF
                    954 Risa Road, Ste. B
                    Lafayette, CA 94549
            BY:  **SHERMAN KASSOF**
                 **ATTORNEY AT LAW**

**APPEARANCES: (CONTINUED):**

FOR CRT:

                                    LAW OFFICES OF JOSEPH M. PATANE
                                    2280 Union Street
                                    San Francisco, CA 94123
                        BY:  **JOSEPH PATANE**
                                    **LAUREN C. CAPURRO**
                                    **ATTORNEYS AT LAW**

For IPPs:

                                    ZELLE, LLP
                                    44 Montgomery Street, Ste. 3400
                                    San Francisco, CA 94104
                        BY:  **CHRISTOPHER MICHELETTI**
                                    **ATTORNEY AT LAW**

For Defendant Chungwha

                                    GIBSON, DUNN & CRUTCHER LLP
                                    555 Mission Street
                                    San Francisco, California  94105
                        BY:  **RACHEL S. BRASS**
                                    **ATTORNEY AT LAW**

For Defendant Samsung:

                                    SHEPPARD, MULLIN, RICHTER,
                                    & Hampton
                                    Four Embarcadero Center - 17th Floor
                                    San Francisco, California 94111
                        BY:  **MICHAEL SCARBOROUGH**
                                    **ATTORNEY AT LAW**

For Defendant Panasonic:

                                    WINSTON & STRAWN LLP
                                    200 Park Avenue
                                    New York, New York 10166
                        BY:  **JENNIFER M. STEWART**
                                    **ATTORNEY AT LAW**

For Defendant Mitsubishi:

                                    JENNER & BLOCK, LLP
                                    353 North Clark Street
                                    Chicago, IL 60654-3456
                        BY:  **MICHAEL T. BRODY**
                                    **TERRENCE J. TRUAX**
                                    **ATTORNEYS AT LAW**

**APPEARANCES: (CONTINUED):**

For Defendant Toshiba:

        WHITE & CASE, LLP
        701 Thirteenth Street, NW
        Washington, D.C. 20005-3807
    BY:  **CHRISTOPHER CURRAN**
        **ATTORNEYS AT LAW**


For Defendant Thomson:

        FAEGRE, BAKER, DANIELS
        300 N. Meridian Street, Ste. 2700
        Indianapolis, IN 46204-1750
    BY:  **KATHY OSBORN**
        **RYAN M. HURLEY**
        **ATTORNEYS AT LAW**

For Defendant LG:

        MUNGER, TOLLES & OLSON, LLP
        355 South Grand Avenue, 35th Floor
        Los Angeles, CA 90071-1560
    BY:  **SUSAN E. NASH**
        **BRAD D. BRIAN**
        **CATHLEEN HARTGE**
        **ATTORNEYS AT LAW**

For Defendant Hitachi:

        KIRKLAND & ELLIS LLP
        555 California Street
        San Francisco, CA 94104
    BY:  **ELIOT A. ADELSON**
        **ATTORNEY AT LAW**

For Objectors:

        COOPER & KIRKHAM, P.C.
        357 Tehama Street, Second Floor
        San Francisco, CA 94103
    BY:  **JOSEPH COOPER**
        **TRACY KIRKHAM**
        **JOHN BOGDANOV**
        **ATTORNEYS AT LAW**

For:

        KERR & WAGSTAFFE
        100 Spear Street - Suite 1800
        San Francisco, California 94105
    BY:  **JAMES  M. WAGSTAFFE**
        **ATTORNEY AT LAW**

For plaintiffs:

        BONSIGNORE TRIAL LAWYERS, PLLC
        23 Forest Street, #101
        Medford, MA 02155
    BY:  **ROBERT J. BONSIGNORE**
        **ATTORNEY AT LAW**

1   **Tuesday - April 19, 2016**                          **2:06 p.m.**

2                        **P R O C E E D I N G S**

3                            **---000---**

4        **THE CLERK:**  Calling civil case 07-5944, MDL

5   Number 1917 In re Cathode Ray Tube Antitrust Litigation.

6        Your Honor, appearances have already been taken.

7        **THE COURT:**  Thank you, Mr. Noble.

8        The courtroom is quite full.  I'd like to just let those

9   of you on this side of the bar know that we're in trial now,

10  and we're in a lengthy trial.  And I've let the lawyers in that

11  trial know that you'd be coming in but, nonetheless, they may

12  have had to leave some of their materials at counsel table.  I

13  know you can imagine how frustrating and terrifying it would be

14  if you were in a trial and thought something was somewhere and

15  it wasn't there when you came back.  So you will be doing me a

16  very great favor if you will respect their things.

17       Is there anyone here this afternoon in Cathode Ray Tube

18  Antitrust Litigation who is not a party to the case or a lawyer

19  for a party to the case, but who came here to be heard with

20  regard to the Chunghwa portion of the settlement, or anything

21  else about the case?

22       The record will reflect that no one has responded.

23       I think that there are two groups of things we need to

24  talk about with regard to the pending settlements.  The first

25  is the Chunghwa -- Madam Reporter, C-H-U-N-G-H-W-A -- plan of

1   distribution, notice, et cetera, the Chunghwa portion of the

2   settlement.

3          The second is whether there are arguments or objections

4   regarding attorneys' fees based on the material that I ordered

5   released to objectors' counsel.

6          I don't have strict time limits in mind.  I'm going to

7   trust you today to make only the points that you came to make,

8   that you need to make.  If I have to jump in at some point, I

9   will.  We have several housekeeping things to get to after

10  those arguments.

11         But let's take arguments first, and let me start with

12  Chunghwa, and let me start with objectors.

13         **MR. COOPER:**  Good afternoon, Your Honor.  Joseph

14  Cooper.

15         **THE COURT:**  Mr. Cooper, you can make any argument that

16  you came to make on the subject.

17         **MR. COOPER:**  Actually, Your Honor, I thought the

18  papers were pretty complete.  The one thing I think -- or one

19  of the things that I would stress is the point we have made in

20  our papers about the need for separate representation for the

21  resellers, that there is no one here who are representing them,

22  and there are proposals which affect their interests.  It seems

23  they should have some type of representation.  There is a

24  proposed form of notice which could solicit, if that's the way

25  Your Honor chose to go, representation for the group through

1  that notice.  In my experience, the Court has appointed counsel

2  for unrepresented people if there was no one who was appearing.

3  But lacking that, if Your Honor didn't want to appoint separate

4  counsel, then I would think it could be done through a notice

5  process that would solicit representation.  But there is no one

6  representing them.

7          THE COURT:  Well, you want that job, obviously.

8          MR. COOPER:  No.

9          THE COURT:  You don't want the job?

10          MR. COOPER:  I have other clients who can't be those

11  people.

12          THE COURT:  I see.

13          MR. COOPER:  I have consumer clients.

14          THE COURT:  What would the lawyers for the resellers

15  do in this case?

16          MR. COOPER:  Well, I think they would participate in

17  the determination of how the Chunghwa funds would be allocated.

18          THE COURT:  So the request -- you're making the

19  request that I essentially hold any further action with regard

20  to the Chunghwa settlement in abeyance, appoint counsel, let

21  them look things over, and then tell me if they thought I ought

22  to do something different.

23          MR. COOPER:  I don't know that you'd have to hold

24  everything in abeyance for a long period of time, Your Honor.

25  I think --

1          **THE COURT:**  I didn't say a long period of time.   But

2     I'd have to hold it in abeyance for some period of time.

3          **MR. COOPER:**  Well, there would have to be a period of

4     time for people to be appointed, presumably, yes.

5          **THE COURT:**  And then look into all these matters,

6     yeah, okay.

7          **MR. COOPER:**  Become familiar.

8          **THE COURT:**  Yes.  You make the argument that the

9     $500,000 sum that has been allocated to notice for the Chunghwa

10    plan of distribution is remarkably round as a number.  You make

11    that argument.

12         **MR. COOPER:**  The number that was in the pleadings,

13    yes.

14         **THE COURT:**  And you're requesting an accounting of

15    those funds; true?  You would like to know how that money will

16    be spent.

17         **MR. COOPER:**  I think that was the money that was spent

18    previously on notice, Your Honor, is how I understood that

19    number.  And we have suggested -- there has been a lot of back

20    and forth about how the Chunghwa money should be charged for

21    expenses in the case.  We made an objection about the entire

22    amount being taken out of the Chunghwa settlement, and the

23    special master made a recommendation which addressed that.  We

24    still have difficulty following the numbers, and how you get to

25    the number, which is proposed to be in the notice, would --

1  there's no arithmetic which shows you what the deductions,

2  specific deductions are and what they're for, and so it's

3  difficult to follow.

4       **THE COURT:**  This is expenses writ large you're talking

5  about now; right?

6       **MR. COOPER:**  Excuse me, Your Honor?

7       **THE COURT:**  You're talking about all of the expenses

8  charged by plaintiffs' counsel, not just the $500,000 in

9  Chunghwa; isn't that correct?

10       **MR. COOPER:**  I was referring there to all of the

11  expenses that were being charged against the Chunghwa

12  settlement, one of which is the amount that was being charged

13  for the costs of the first notice, yes.

14       **THE COURT:**  Okay.  All right.

15       **MR. COOPER:**  I think that, as I said, Your Honor,

16  everything is basically in the papers.  I don't want to repeat

17  it.  That was the one point that I thought was --

18       **THE COURT:**  Let me ask you to keep your place at the

19  podium.  I may want to come back to you after I have spoken to

20  lead counsel.

21       **MR. COOPER:**  Sure.

22       **THE COURT:**  Lead counsel, come to the microphone to

23  address these issues.

24       **MR. ALIOTO:**  Yes.  Good afternoon, Your Honor.

25      Mario Alioto on behalf of the Indirect Purchaser Class.

1          **THE COURT:**  Mr. Alioto, first, on the question of the

2     Chunghwa portion of this afternoon's proceedings, is there

3     anything -- any additional argument that you want to make --

4     and you're welcome to repeat what's in your papers for

5     emphasis -- but is there anything that you would like to argue

6     this afternoon on those issues?

7          **MR. ALIOTO:**  I would like to make one point, Your

8     Honor, and I'll note at the outset that it is not in the

9     papers, but it has to do with how I arrived at this plan and

10    why I'm proposing to the Court this solution to get the

11    Chunghwa settlement approved.

12         As you know, we've proposed a 50/50 split, which on its

13    face is pretty hard to argue with a 50/50 split, but there's

14    been some suggestion that this is out of thin air or some

15    flip-of-the-coin determination.  But, in fact, in making that

16    decision, I have the benefit of working on this case for eight

17    years, and a lot of information goes into making that

18    determination.

19         For example, in this Court's record are very extensive

20    reports by the plaintiffs' economic expert Janet Metz, who

21    opined on pass-through, in other words, the overcharge being

22    passed through down the chain of distribution and ultimately

23    being incurred by the end user.  We have very significant and

24    very exhaustive reports on that overcharge on the plaintiffs'

25    side.

1          We also have the benefit to show -- again, what went into

2    my thinking here -- we have this adversarial evidence from the

3    defendants' expert, Dr. Ordover, who opined on pass-through

4    down the chain of distribution.  And, actually -- well, it

5    comes as no surprise to Your Honor that he came up with a

6    slightly different analysis, and -- but he did opine that there

7    was very significant pass-through down the chain, and his

8    conclusion was that about 50 percent was pass-through.  Or, put

9    it another way, there would be 50 percent retention of the

10   overcharge in the chain, and 50 percent --

11            THE COURT:  At a particular point in the chain, or at

12   all of the points prior to?

13            MR. ALIOTO:  I believe --

14            THE COURT:  Please let's not talk over each other.

15         -- or at all points of the chain combined, save and except

16   for the end user.

17            MR. ALIOTO:  I think the analysis was that the last

18   level of the chain before it got to the consumer was only

19   50 percent passed down.  That was the report that I reviewed

20   recently.

21         And the point being that we have evidence in the record

22   that shows that this 50/50 split -- and we could just take a

23   step back -- that means that a reseller's claim, a reseller

24   would be subject to a defense or to a contention that they

25   didn't absorb all of the overcharge.  And as I said, it was

 1   roughly 50 percent not absorbed, was the conclusion of

 2   Dr. Ordover.   Then you have the conclusion of the plaintiffs'

 3   expert was that 50 percent was passed on.  So you have a

 4   hundred percent was passed on.

 5        So you have that conflict in the evidence, in the record

 6   adversarially.  This is not me just making this decision in

 7   trying to weigh these interests.  This is me looking at the

 8   adversarial evidence on the record trying to make a

 9   determination.  So that when you get right down to it, this

10   50/50 split not only is it fair on its face, but there is this

11   economic support in the record.

12        And I'll just add this, Your Honor, that the Metz report,

13   the plaintiffs' report, with the hundred percent pass-through,

14   is in the record.  Dr. Ordover's report was just exchanged

15   among counsel, and it is not in the record, so I don't think

16   that would be available to Your Honor, but we would certainly

17   be willing to make that available if you wanted to see it.

18        **THE COURT:**  These materials are not made available to

19   Special Master Quinn in connection with his review, are they?

20        **MR. ALIOTO:**  No, they were not.  But I'm telling

21   you --

22        **THE COURT:**  I don't think that's what de novo means.

23        **MR. ALIOTO:**  The only point I'm making, Your Honor, is

24   that when you make a decision based on your judgment and based

25   on your experience in the case, a lot of factors go into it.

1   This was one of the factors that went into it.  And yes, it was

2   not -- I did not set out A, B, C, D, E, F, G, H, I, J, K - all

3   of the factors, but that was one factor that went into the

4   analysis.

5            THE COURT:  Thank you.  I mean, I do appreciate that

6   the case -- and I'm not -- I don't have the name of the case at

7   the tip of my tongue, the case that objectors were relying on,

8   the amount of money at stake was 31 times, or some very large

9   multiple of the amount of money that's at stake here.  And it

10  does -- it does present a question -- I think it does present

11  the question is common sense enough?  If I were dividing up

12  310 million, how much money weight would I give common sense

13  versus 5 million or 10 million?  That's, I think, the question

14  before me.  I'd be hesitant to go outside the record, I think.

15           MR. ALIOTO:  Very good, Your Honor.

16           THE COURT:  Yeah.  Mr. Cooper, further words on that.

17           MR. COOPER:  I really don't have anything to add to

18  what Your Honor said.  This is the first time that we've heard

19  this explanation.  And our point was that there was nothing in

20  the record except the citation to another case, which had a

21  different factual basis, and that there needed to be something

22  in this record to justify the proposal.  That was our only

23  point, not that the proposal was bad, great, a different

24  proposal could have been made, but that the record needed to

25  reflect something.

1          **THE COURT:**  Is your position anything but 50/50?

2          **MR. COOPER:**  I don't have a position on it, Your

3    Honor.

4          **THE COURT:**  Well, shouldn't -- I mean, one question

5    that I would have for you is how much weight do I give an

6    objection if the basis of the objection is not that someone

7    else's interests are being injured?

8        I take your point, you don't think that the plaintiffs on

9    the one hand or Special Martin Quinn on the other had enough of

10   a basis to justify a 50/50 split, but whose interests are

11   injured by that split, anyone?

12         **MR. COOPER:**  Well, potentially the resellers and

13   potentially the consumers that split perhaps should be 90/10,

14   one way or the other.  I don't represent the resellers.  I'm

15   not trying to advocate for them, but I do -- we have pointed

16   out that there should be someone who should be advocating for

17   them, and that the record should reflect something, some

18   factual basis.

19         **THE COURT:**  You've been in the case for a while, have

20   you not?

21         **MR. COOPER:**  My firm has been in the case, yes.

22         **THE COURT:**  And even though they're not part of the

23   record with regard to this particular proceeding, are you

24   familiar with the report authored by -- I'm sorry.  Is it Metz?

25         **MR. ALIOTO:**  M-E-T-Z.

1          **THE COURT:**  -- Ms. Metz.  And is it Mr. Ordover?

2          **MR. COOPER:**  Mr. Ordover.

3          **THE COURT:**  And are you familiar with those reports,

4     generally?

5          **MR. COOPER:**  I don't believe the second one was

6     provided to us.  I believe the first one was provided to us in

7     redacted form.

8          **THE COURT:**  Yes.  If I were to sustain your objection

9     and then, I don't know, I suppose I could even send it back to

10    Mr. Quinn, and we could have many rounds of this, or I could

11    just keep this proceeding, and then Mr. Alioto were to put in

12    something that said, well, there are varying degrees of --

13    there are opinions supporting various degrees of pass-throughs

14    between resellers and end users, and there's a great deal of

15    uncertainty, in the face of that uncertainty and these

16    conflicting opinions, we think 50/50 is okay, what do you think

17    might happen then?

18         I mean, it's a good objection, potentially.  I'm just

19    trying to avoid a pointless exercise.

20         **MR. COOPER:**  I don't know what would happen then, Your

21    Honor.  In the *Sullivan* case there was actually litigated

22    between two groups of lawyers, of which I was one, and a

23    special master was appointed, and there were evidentiary

24    hearings, and there was a significant piece of litigation, but

25    it was resolved by a report from the special master that was

 1   adopted by the Court when no one objected.

 2        With regard to the DRAM litigation, which I think maybe

 3   what Your Honor was referring to --

 4             **THE COURT:**  I think it was.

 5             **MR. COOPER:**  -- there, Special Master Renfrew

 6   conducted proceedings, and there was evidence submitted.  He

 7   did appoint counsel for the resellers, because there was no one

 8   in the case.  First, he invited resellers to appear, and sent

 9   letters to a number of resellers, and one did appear, but that

10   person had a little peculiarity in their position in the

11   distribution chain, so he appointed a lawyer to represent

12   resellers generally.  And the -- it was actually a three-party

13   discussion, because there were 33 attorneys general, there was

14   private counsel for the class, and then there was now appointed

15   counsel of the resellers.  And a negotiation resulted in a plan

16   to resolve the distribution there, which was memorialized,

17   approved by and memorialized in Judge Renfrew's report and

18   adopted by Judge Hamilton.

19        So you can get to the conclusion in a compromised way.

20   I'm not suggesting that that's not unheard of or probably

21   preferable to litigating the issue.  But there has to be, in

22   our judgment, some basis for doing it other than saying it was

23   good enough in another case.

24             **THE COURT:**  Very good.

25        Mr. Alioto, let me ask you, a criticism from the objectors

1  is that $500,000 is allocated to notice costs in the Chunghwa

2  distribution; correct?

3          **MR. ALIOTO:**  Yes, Your Honor.

4          **THE COURT:**  And that it's a remarkably round number.

5          **MR. ALIOTO:**  Yes, sir.

6          **THE COURT:**  Why is that not a good criticism?

7          **MR. ALIOTO:**  Because the number was actually more, and

8  we told our notice administrator we were only paying 500.

9  That's why it's a round number.

10         **THE COURT:**  Mr. Cooper, would it solve your concerns,

11  just as to this one issue, if the -- if lead counsel were to

12  submit the notice materials that support what he just said to

13  me in-camera and I looked at them to make sure that what he

14  said was true?

15         **MR. COOPER:**  Certainly, Your Honor.

16         **THE COURT:**  Would you have any objection to my

17  ordering that procedure?

18         **MR. ALIOTO:**  No.  Just some confirmation of the amount

19  spent, Your Honor, is that it?

20         **THE COURT:**  Well, you have said that the amount spent

21  was more.

22         **MR. ALIOTO:**  The amount charged, Your Honor, was more.

23         **THE COURT:**  That's what I mean, the amount charged was

24  more, and that you told the administrator that you would only

25  pay 500, that's what got paid.

1          MR. ALIOTO:  Yes, Your Honor.

2          THE COURT:  So evidence in support of those three

3  things.

4          MR. ALIOTO:  Yes, Your Honor.

5          THE COURT:  And when do you think you could get that

6  submitted?

7          MR. ALIOTO:  Within a day or two.

8          THE COURT:  Terrific.  If we could get that on file by

9  April 22nd, then I'll look at it over the weekend or next week,

10  and at least I could have that issue behind me.

11          MR. ALIOTO:  Thank you.

12          THE COURT:  Good.  Okay.  Well, really, the only -- I

13  think that's it for me in terms of the Chunghwa part of it.

14  And I wanted to ask this question about the 500,000, and I

15  heard both of you make your arguments.

16      Let's turn to the question of fees and expenses argument.

17          MR. COOPER:  Mr. Scarpulla is going to address that,

18  Your Honor.

19          THE COURT:  All right.  Very good.

20          MR. SCARPULLA:  Good afternoon, Your Honor.

21      Francis Scarpulla.

22          THE COURT:  Mr. Scarpulla.

23          MR. SCARPULLA:  Yes, Your Honor.

24          THE COURT:  You have the floor.

25          MR. SCARPULLA:  Your Honor, I think, as Mr. Cooper

1    pointed out, I think we covered most of it in our written

2    submission, and I don't want to repeat that.  So if Your Honor

3    has questions, I'll be glad to try and answer them, and if you

4    don't, I will sit down and wait for Mr. Alioto to make his

5    presentation.

6         If I could have a short reply, I would appreciate it, if

7    you would let me do that.

8              **THE COURT:**  All right.  So ordered.

9              **MR. SCARPULLA:**  Thank you, Your Honor.

10             **THE COURT:**  Mr. Alioto.

11             **MR. ALIOTO:**  Thank you, Your Honor.

12        I have nothing to add to the papers.

13                       (Laughter)

14             **THE COURT:**  I knew that was going to be the --

15                       (Laughter)

16             **THE COURT:**  There we have it.  Okay.  That issue is

17   under submission.

18             **MR. SCARPULLA:**  Thank you, Your Honor.

19             **THE COURT:**  Very well.  Thank you.

20        Okay.  The first item on my housekeeping list has to do

21   with trial setting.  I had previously indicated that once we

22   got to this stage of the proceedings I would set some trial

23   dates in this case.  And I said before tentatively that I would

24   like to set consolidated pretrial hearings on August 10th and

25   11th of this year, that I would like to set the trial in the

1   Sharp case on September 9th of this year.   My list says

2   remaining DAP trials November 7, 2016, but isn't that just

3   Sears, K-Mart and LG.   And are there more -- is the DAP trials

4   column thicker than I thought?

5           **MR. BLECHMAN:**   William Blechman for plaintiff Sears

6   and K-Mart.

7       The answer to your question as of this hour is no.   There

8   are DAP cases, Direct Action Plaintiffs, who have filed their

9   cases in districts outside of the Northern District who would

10  seek to have those cases remanded for trial.   The two Direct

11  Action Plaintiffs' cases that remain pending in the Northern

12  District were the Sears, K-Mart case and the Viewsonic case,

13  and Viewsonic filed a notice within the last day or two

14  informing the Court that it had settled, which leaves Sears and

15  K-Mart as the standing plaintiffs.

16          **THE COURT:**   Yes, I'm familiar with the notice.

17  Mr. Brian.

18          **MR. BRIAN:**   Brad Brian for LG.

19      We agree with what's just been represented, Your Honor.

20          **THE COURT:**   Okay.   So that trial, November 7, 2016,

21  and then the Mitsubishi Direct Purchasers trial is January 9,

22  2017.   These are all, particularly the Sears, K-Mart,

23  Mitsubishi dates are soft dates.

24      There are lots of people on their feet.

25                          (Laughter)

1          **THE COURT:**  Before I go any further down my list, I

2     want to hear from the people on their feet.

3          Mr. Saveri.

4          **MR. SAVERI:**  Thank you, Your Honor.

5          Rick Saveri on behalf of the DPP group of class

6     plaintiffs.

7          Yeah, January 9, 2017 is what we understand to be our

8     trial date, and we are working with that date, and going to

9     meet with Mr. Truax to get a schedule to accomplish that goal,

10    Your Honor.

11         **THE COURT:**  Okay.

12         **MR. TRUAX:**  Your Honor, this is Terry Truax on behalf

13    of Mitsubishi Electric.

14         Your Honor, we -- you did signal the January date, and we,

15    in fact, have conferred with Mr. Saveri about some of the

16    scheduling issues.

17         Your Honor, just to remind the Court, Mitsubishi Electric

18    is situated a bit differently than some of the other defendants

19    in this case.  We were named as a defendant by the class in May

20    of 2014, so we are a new entrant, if you will, to this

21    proceeding.

22         **THE COURT:**  I don't think you are.  That's the effect

23    of anchoring.  It's only because this unwieldy case has been

24    pending for eight years that May 2014 sounds new.

25                              (Laughter)

1        **MR. TRUAX:**  I concede, Your Honor.

2        **THE COURT:**  If I were running this case from the

3   beginning, that would be a long time ago.

4        **MR. TRUAX:**  Understood, Judge.

5      Your Honor, I think, though, in terms of -- we are

6   prepared to move expeditiously, but where we sit -- and for the

7   Court's benefit, and I think Your Honor is aware of some of

8   this from Judge Walker's report and recommendation on some of

9   the discovery issues.

10        **THE COURT:**  That's right.  You recently got a grant

11   for discovery.

12        **MR. TRUAX:**  That's correct, Your Honor.  We don't

13   have -- right now we haven't finished fact discovery.  So what

14   I've discussed with Mr. Saveri, as recently as yesterday, is a

15   proposal.  And, actually, the plaintiffs, what they proposed to

16   me yesterday was cutting off fact discovery in mid September.

17   I suggested we do it sooner, at the end of August, but then

18   after that we have expert discovery, Judge.

19      And this is a complex, obviously, case, and while there's

20   been a lot of work done on it, we think if we do this in an

21   orderly fashion without -- we're not going to stand up here and

22   ask for a trial date two years out from now, but I think, Your

23   Honor, we've worked through a schedule in an orderly fashion

24   that's sensible, and Your Honor has invited, I think, us to

25   suggest that to you in the past.

1          What you do -- and I'm be happy to submit a proposed
2    schedule to you later this week, after conferring with
3    Mr. Saveri.  But, very basically, if fact discovery closes at
4    the end of August, as we suggest, or middle of September as
5    they suggest, and then you put in a relatively expedited expert
6    schedule, and I think at a minimum that would have to include
7    at least 60 days for us to respond to any expert reports given
8    the complex econometrics involved here, that effectively takes
9    you towards the end of the fall, if not the first of January.
10   Then you have, I think, the pretrial submissions, and then
11   we're going to have a round of a variety of motions, you know,
12   with respect to experts.  We don't know who their expert is
13   yet, but there will be other dispositive motions, motions in
14   limine, et cetera.  And I think, in our view, when you order
15   that all in an expeditious way, that gets you to a trial date
16   closer, probably, to late May or June, and that's what I
17   suggested to Mr. Saveri.

18         Your Honor, I'm not standing up here to say, Judge, let's
19   set a trial date in 2018, or something of that sort.  But I do
20   think something orderly, expeditiously moving forward gets you
21   to a date realistically, moving everybody along working hard,
22   gets you to this, you know, May/June date, is what we would
23   suggest, Your Honor.

24             **THE COURT:**  Mr. Saveri, did you know their request was
25   coming?

1          **MR. SAVERI:**  The request for -- yes, we met, talked

2   yesterday, Your Honor.

3          **THE COURT:**  Any thoughts regarding that?

4          **MR. SAVERI:**  Absolutely, Your Honor.

5          **THE COURT:**  Mr. Truax is --

6                    (Laughter)

7          **MR. SAVERI:**  We've been at this discovery two years

8   with these people.  They've done all the discovery for the DAP

9   cases.  And first of all, Your Honor --

10         **THE COURT:**  Then why do they have to go to Judge

11  Walker to get the discovery they thought they were entitled to?

12         **MR. SAVERI:**  Your Honor, they're re deposing our

13  plaintiffs who have already been deposed.

14         **THE COURT:**  Yes, I know they did that.  But Judge

15  Walker -- I mean, my point is just if they were done, then how

16  come they were able to get relief from Judge Walker, and no one

17  even objected?

18         **MR. SAVERI:**  Well, Your Honor, we did in front of -- I

19  apologize.

20         **THE COURT:**  All I'm trying to signal to you is, and

21  I'm not doing it very well, is you have a tough time persuading

22  me that somehow it's their fault that they find themselves in

23  the circumstances that they're in relative to the trial date,

24  because a judicial colleague thought they were entitled to do

25  more discovery, and they're doing it.

1          **MR. SAVERI:**  Your Honor, and that's fine, and there is

2      some more wrap-up discovery.  There's a few more Mitsubishi

3      people, but we can get that done by August, Your Honor.  Our

4      proposal would be fact discovery cutoff in August, and then a

5      schedule whereby we do some expert discovery, and summary

6      judgment, which they've already briefed in all the DAP cases.

7          **THE COURT:**  Yes.

8          **MR. SAVERI:**  They know our expert.  They deposed him

9      in the class cert., so they have a report already.

10         **THE COURT:**  Yes.

11         **MR. SAVERI:**  So they've done a lot of this already,

12     Your Honor.

13         **THE COURT:**  Yes.

14         **MR. SAVERI:**  They're going to rehash the same summary

15     judgment motions that they did with the DAPs, so a lot of this

16     work has all been done, Your Honor.

17         **THE COURT:**  What assumptions are you making about the

18     volume and speed of the work required by the Court to get you

19     from the end of fact discovery to the successful completion of

20     a pretrial conference?

21         **MR. SAVERI:**  Well, Your Honor, I think the volume of

22     work, if I may work through that, a lot of it is going to be

23     done in this way, and if I may.  There's already a pending

24     summary judgment motion with Mitsubishi.  If Your Honor denies

25     that, they're going to repackage the same motion that there's a

1   triable issue of fact as to liability.  It's been done, Your

2   Honor, so that's already been resolved, and I'd be shocked if

3   they want to refile that same motion again.  We've done more of

4   discovery as far as participation in the conspiracy by

5   Mitsubishi.  There's many more contacts with the other

6   defendants, and so forth.  So that issue has already been

7   resolved.

8        As far as *Daubert* motions and experts, they've seen our

9   expert, as well as now addressing the experts related to the

10  Kaibol situation as that relates to the Samsung.  It's already

11  been done.  As it relates to the ownership and control issues,

12  all will be done, because that will be done with the DAP.

13       So this workload really would be, I think, minimal, Your

14  Honor.  I think it will be minimal to the extent that there's

15  going to be a tremendous roadmap here, there really will be,

16  with the DAP case and a lot of the issues resolved, and

17  Mitsubishi has been a part of that, and been heard on that.

18       So as far as our point coming in with a date in January,

19  which we've been operating under -- and Your Honor has told us

20  about this date for a long period of time.  So I feel that we

21  can have a discovery of August, which is five months away, to

22  wrap up anything that needs to be done, and Judge Walker's

23  order of getting the depositions of our plaintiffs again is to

24  be done by July, and we're going to give them dates in May and

25  June, and they can have those depositions.

1    So the work, I think, as it pertains to Your Honor,

2 there's got to be a tremendous roadmap that's been done, a lot

3 of it has got to be hashed out with the motions that I think,

4 once this IPP -- as I understand it -- what happens with the

5 IPP, then Your Honor will issue a lot of these rulings, as it

6 relates to the summary judgment issue, and it will very much

7 streamline our case.  So I don't think there's going to be a

8 tremendous amount of new material as it relates to our case,

9 but it's only one defendant, Mitsubishi.

10    And the other point, too, Your Honor, they're no longer in

11 any other cases, here, or going back to any other district.

12 And the last time that they were here they were concerned about

13 having to prepare for two cases at the same time.  None of that

14 exists anymore, Your Honor.  It's just us and Mitsubishi, and

15 we have now until January 9th to finish up a little bit of

16 discovery and get it ready for trial.  And I think there's

17 plenty of time to get that done, Your Honor.

18         **THE COURT:**  I won't decide the issue today.

19         **MR. TRUAX:**  Your Honor --

20         **THE COURT:**  Because nothing like this should be

21 decided on a pop quiz basis at a case management conference.

22    Mr. Truax, you can file a motion if your further meet and

23 confer efforts with Mr. Saveri are not successful.

24    Let me say a few things.  And as to some of these things

25 I'm repeating myself, and I'm sorry about that.

1          First, I'm a better chooser than I am a creator, so my

2     instincts are usually not to split the baby.  My instincts are

3     to pick one of the alternatives that's been given to me.  If

4     one of your alternatives is unrealistic, I simply will stop

5     considering it, and I will adopt your opponent's proposal even

6     if, left to my devices, I might have chosen or devised

7     something else.

8          Secondly, I like firm trial dates.  I just like firm trial

9     dates.  And, as my wife says, deadlines clarify the mind.  So I

10    like the clarifying effect on litigation that trial dates have.

11    I don't move trials lightly, but certainly when I said whatever

12    I said from the bench regarding the schedule of these other

13    trials, I didn't have it in mind that one of the parties would

14    still be conducting discovery in the summertime.  And that

15    doesn't mean I'm going to grant Mr. Truax's motion, it just

16    means that whatever I said before was based on different

17    information.

18         Assuming that no one folds his or her cards, I will be in

19    trial on a large antitrust case on September 9th, and then I

20    will be in trial on another large antitrust case on

21    November 7th, just a couple of weeks before Thanksgiving, and

22    then I will go sailing into the December holidays, having just

23    completed, if I'm lucky, two large antitrust cases.  The

24    holidays will come, and then if I were to hew closely to these

25    dates, just a few days after the ringing in of the New Year, I

1   would begin the DPP Mitsubishi trial.  Sometime between the

2   close of discovery and jury selection, I would have made room

3   for any additional summary judgment motions, rehashes though

4   they might be, the completion of expert discovery, resolution

5   of any motions in limine, and so forth, while doing these other

6   two antitrust cases and enjoying myself for the holidays.  It

7   sounds ambitious to me, is my point.  I'm not saying it can't

8   be done.

9        You'll send a proposal, Mr. Truax, that describes that

10  chronology in a realistic way.  If you're not able to work that

11  out, somebody will file a motion.  As of now, I intend to set

12  the date on January 9, 2017, as I said before.

13          MR. TRUAX:  Your Honor, just in terms of setting a

14  deadline for a motion.  Obviously, that will be up to us, but

15  may I suggest to the Court that we have a deadline to meet and

16  confer with Mr. Saveri by promptly early next week at the

17  latest, and that we file a motion by the end of next week.

18  Because I think it would be important for Your Honor to have

19  this presented to you as we need clarity, obviously, for our

20  own -- for the Court and also for our own preparation of this.

21          THE COURT:  Yes.  I should tell you I'll be out of

22  the -- a few days after the end of next week, I'm going to

23  leave the country.  I don't know if that's going to affect your

24  thinking.

25       Mr. Saveri, what do you think about that?

1          **MR. SAVERI:**  Your Honor, we're available.  We're happy

2     to meet and get this done this week.

3          **THE COURT:**  That's fine.  You could meet with

4     Mr. Saveri this week, and if he doesn't give you satisfaction,

5     you can file your motion.

6          **MR. TRUAX:**  Thank you, Your Honor.

7          **MR. SAVERI:**  Thank you, Your Honor.

8          **THE COURT:**  Mr. Brian.

9          **MR. BRIAN:**  Brad Brian for LG, and I want to clarify

10    one thing.

11         I believe when we were here on December 15th, and as

12    reflected in the Court's Minute Order following that

13    conference, you indicated that there would be a pretrial

14    conference in the Sharp case on August 10th and 11th, and that

15    you would set a pretrial conference in the -- I think you

16    actually talked about maybe a consolidated one of the DAP/DPP.

17    I don't think you actually selected a date.  We have a date to

18    propose, if you'd entertain that.

19         **THE COURT:**  Your comments are consistent --

20         And I apologize to the reporter for speaking over you.

21         Your comments are consistent with my recollection,

22    although not my notes, but I do recall having said that, that

23    there would be two -- there might be three trials but only two

24    pretrial conferences, and that the second one would encompass

25    both of these second two trials.

1     Does anyone -- I think, perhaps, the best thing is for me

2  to pick a date and throw it out there, and if people need to

3  move it, they'll tell me.

4          MR. BRIAN:  We've been discussing pretrial disclosures

5  and exchange, and my colleague, Ms. Hartge, is going to cover

6  that if it comes today.  We would propose a date of October

7  21st for the final pretrial conference.

8                      (Pause in the proceedings.)

9     If you're going to be in a fancy place, we could meet

10  there, Your Honor.

11                          (Laughter)

12                      (Pause in the proceedings.)

13          THE COURT:  I am going to be away on judicial business

14  on that day.

15          MR. BRIAN:  Do you have another date in mind, Your

16  Honor?

17          THE COURT:  Hold on.

18                      (pause in proceedings.)

19          THE COURT:  Well, bearing in mind -- what was the

20  parties' estimate on the Sharp trial, about four weeks?  I'm

21  doing that totally from recollection.

22     Mr. Curran, about four weeks?

23          MR. CURRAN:  In that ballpark, Your Honor, yes.

24          THE COURT:  Okay.  So we should be free and clear,

25  hopefully, if we go out into late October.

1    I'm not scheduled to be in trial at the moment on the week

2  of October 24th, so I actually would allocate a couple of days

3  to this purpose in case we needed them, and perhaps we could

4  set a pretrial conference on October 24th and 25th.

5          MR. BRIAN:  That's fine with us, Your Honor.

6          THE COURT:  Does that work?

7          MR. BLECHMAN:  Your Honor, William Blechman.

8    We had not heard about this date proposed by LG until just

9  now, but hearing it, two thoughts, if I might.  First is the

10 date itself is okay if it's okay with the Court.

11         Second thought was that we had shared with opposing

12 counsel that to the extent the Court was interested in

13 pre-trying the Sears and the Sharp cases together in August, if

14 it found that to be efficient, we would endeavor to do that,

15 and perhaps even to step into the Sharp trial date if Sharp

16 settled out.  That's something that LG --

17         THE COURT:  Oh, we'll get to that in a second, and

18 that is what happens if someone in front of you settles, which

19 is a topic we discussed, I think, last time.

20         MR. BLECHMAN:  And LG has told us they have a problem

21 with that.  I just wanted to -- I wasn't going to --

22         MR. BRIAN:  I can address that.

23         THE COURT:  Well, with regard -- I mean --

24         MR. BLECHMAN:  But we can do the October date, Your

25 Honor, if that works for the Court.

1              **THE COURT:**  Okay.

2          **MR. BLECHMAN:**  Subject to what the Court may do with

3   the trial date.

4          **THE COURT:**  I would like to set a second pretrial

5   conference, a second set of pretrial conference dates on

6   October 24 and 25 of 2016.

7          That does bring me to my next topic, which is to have a

8   30-day trigger such that if a trial settles with at least 30

9   days of lead time until the next otherwise scheduled trial, we

10  would just move the next trial up.

11         Mr. Blechman says you want to be heard on that issue,

12  Mr. Brian.

13         **MR. BRIAN:**  Well, in theory I have no problem with

14  that.  The only objection is that it's a practical one.  I have

15  a trial on September 26th in Los Angeles that I believe is

16  going to go.

17         **THE COURT:**  Yes.  I have to say, as I'm sitting -- as

18  I'm sitting here, functionally, in a case of this size, what's

19  the difference between a September 12th and a November 7th?

20  Why don't I leave these hard dates, and you can schedule your

21  experts and tell them, you know -- because the problem is, I'm

22  just thinking out loud, the problem is when you hire an expert,

23  you don't know what day the expert is going to testify.  You

24  say, look, I need you to be generally available during these

25  three or four weeks, that's plenty of time.  Just say, I need

 1  you to be generally available during the last quarter of 2016

 2  and going into January of 2017.  It sounds like I might be

 3  inviting more problems than I'm solving with this trigger.

 4        **MR. BLECHMAN:**  Your Honor, I don't disagree.  The

 5  reason I was suggesting the alternate proposal is simply if it

 6  would be more efficient for the Court.  I don't disagree with

 7  you that in the span of time, particularly in the span of time

 8  of this case, that it would make a difference.

 9        **THE COURT:**  Yeah, I know a lot more about this case

10  now than I did last December, and in December, you know, I knew

11  more than the time before.  I just think it makes more sense in

12  terms of planning.

13        **MR. BLECHMAN:**  Your Honor -- excuse me.

14        **THE COURT:**  If the parties are able to negotiate a

15  resolution of the Sharp trial before that case, I think I would

16  just leave the Sears, K-Mart trial where it was.

17        **MR. BRIAN:**  We would appreciate that, Your Honor.  We

18  did plan based on that.

19        And I agree with Your Honor, I think that firm trial dates

20  of this magnitude are very helpful to the Court and the parties

21  to negotiate, to plan and figure out experts and availability.

22        **THE COURT:**  My mind is not finally made up on this

23  topic.

24        Is there anyone in the room that wants to speak in favor

25  of moving trial dates?

1          Yes, that someone will come to the microphone.

2          **MR. CURRAN:**  Your Honor, Christopher Curran for the

3    Toshiba defendants.

4          **THE COURT:**  Yes.

5          **MR. CURRAN:**  As you may recall, Toshiba is a defendant

6    in the Sharp trial, and in no other trial.

7          First of all, I think I heard you say September 9th a

8    number of times today.

9          **THE COURT:**  The discussion should be September 12th,

10   because the 9th is a Friday.

11         **MR. CURRAN:**  Or September 6th, which is the Tuesday, I

12   think, after Labor Day, and September 6th is what you said

13   previously.

14         **THE COURT:**  I see.  The 9th is a typographical error

15   in my note.

16         **MR. CURRAN:**  So I guess that's point one,

17   September 6th.

18         **THE COURT:**  Okay.

19         **MR. CURRAN:**  Point two, Your Honor has probably

20   already thought about this, now that the DAP second trial is

21   just two remaining parties, Sears/K-Mart against LG, there's a

22   possibility -- Mr. Blechman may have been referring to, but the

23   possibility of putting that together with the Sharp trial.

24   Maybe I misheard.

25         **MR. BLECHMAN:**  You did.

1        **THE COURT:**  He might have been thinking it, but he

2   didn't say it.

3                              (Laughter)

4        **THE COURT:**  So you can say it.

5        **MR. CURRAN:**  Okay.  Again, Your Honor, I raised this

6   possibility in December, and Your Honor rejected it.  Back then

7   there were a lot more parties in the second trial.  So I

8   figured I'd raise again with Your Honor the possibility of you

9   trying the case once with those two cases, and that might be

10  more efficient for the Court and for everybody to address the

11  core allegations of conspiracy once rather than twice, and it

12  may be helpful in terms of efficiency and in terms of getting

13  all the appropriate witnesses to trial once.

14       **THE COURT:**  I appreciate the comment.

15       The case has so many moving parts, this also is not

16  something that I would decide on a pop quiz basis.  It's not

17  something that I took the bench prepared to consider or had any

18  notice that anyone would raise.  This distinguishes it, for

19  example, from the situation involving Mitsubishi, as I was

20  aware of Judge Walker's orders granting them additional

21  discovery.

22       I'm not quite sure what to do.  I know you have colleagues

23  who feel otherwise.

24       **MR. CURRAN:**  I think several.

25                              (Laughter)

1              **THE COURT:**  This is sort of a rematch of sorts for you

2      and Mr. Gallo.

3              **MR. CURRAN:**  No, I think you're mistaken about that.

4      I have never tried a case against Mr. Gallo.  It was

5      Mr. Silverfeld from Best Buy whom I had the most recent trial

6      against.

7              **THE COURT:**  I see.  Anyway, I appreciate the comment.

8      It's not something I'm inclined to do on the spur of the

9      moment.  You're free to, obviously, make a motion to

10     consolidate the trials or otherwise, but I don't have anything

11     further to say now.

12             **MR. CURRAN:**  I understand that.

13         I guess one final observation.  The possibility of this

14     has really only emerged in the last few days with additional

15     settlements lining up, including the settlement of Chunghwa and

16     Viewsonic.  So I don't think it was appropriate or even

17     possible to raise this possibility earlier, but it's something

18     I wanted to bring up now.

19             **THE COURT:**  Very good.  Thank you.

20             **MR. CURRAN:**  Thank you.

21             **THE COURT:**  I think counsel to my left was next in

22     line.

23         I've forgotten your name, but you're from Thomson, aren't

24     you.

25             **MS. OSBORN:**  I am.  Kathy Osborn, Your Honor.  Thank

1   you.

2            **THE COURT:**  Yes, Ms. Osborn.

3            **MS. OSBORN:**  I wanted to raise another issue just for

4    your consideration as you think about setting these trial

5    dates.  It's a rather delicate issue, but my client, in-house

6    counsel at Technicolor, has recently received a very serious

7    health diagnosis that will require a couple of surgeries in the

8    next week and treatment over the next weeks and months.  She

9    has been key to this case in that there's no one else at

10   Technicolor who has her knowledge of the matter, the documents,

11   the witnesses.  She was the corporate witness for Technicolor

12   about a year ago.  Because there's no one else in the company

13   who knows anything about CRTs, that industry has been dead, and

14   the company --

15           **THE COURT:**  You're a defendant in the Sharp case,

16   aren't you?

17           **MS. OSBORN:**  Yes, Your Honor.  I'm sorry.  I should

18   have clarified that.

19           **THE COURT:**  No, that's okay, I remember.

20           **MS. OSBORN:**  So there's no one else at Technicolor who

21   knows about this industry.  It's been dead in the company for

22   well over a decade.

23       So she very much wants to be the corporate representative

24   at trial and helping us make decisions at trial.  We think if

25   the Sharp trial were moved even a couple of months to the

1  November date, that she may be then in a position to be at full

2  power again.  And so I ask you to consider that as you set

3  trial dates.

4      **THE COURT:**  Have you raised this issue with your

5  colleagues and opponents?

6      **MS. OSBORN:**  I did.  I talked with Mr. Gallo about it

7  this morning.

8      **THE COURT:**  All right.  So your colleagues in the room

9  have not had very much time, if they've had any, to consider

10  this issue?

11      **MS. OSBORN:**  That is correct.  I also talked with

12  Mr. Curran about it this morning, so...

13      **THE COURT:**  Okay.  Well, I'm glad you brought it to my

14  attention, just so it's on everyone's radar screen.  I don't

15  think I can say anything further about it.  It's certainly a

16  non-frivolous request.  And I've been a partner at a law firm,

17  and I know what it's like to have one -- a particular client

18  contact own a piece of litigation, so the circumstances you're

19  describing in that regard are familiar to me.

20      I don't have any opinion about what the right thing to do

21  is, except to say it's something that we need to resolve pretty

22  quickly, I would say even more quickly, if we can, than the

23  question of, for example, what happens to the DPP Mitsubishi

24  trial that's now scheduled for January 2017, because the Sharp

25  trial is scheduled to start much sooner than that, and it's

1   also first in order.  So, you know, what happens then?  Do we

2   move Sharp, and then does that change the order of the trials.

3   And your colleagues in the room may have views about whether

4   that injures their tactical interests.  They may not want to go

5   first, or maybe some of them really do want to go first.  You

6   take my point.

7           MS. OSBORN:  I do.

8           THE COURT:  Is there -- perhaps what we'll do is we'll

9   finish up some of these other matters, and we'll take a

10  ten-minute break so that Ms. Aquilina can rest her fingers, and

11  you can talk to your colleagues and maybe devise a briefing

12  schedule on this issue, to give you a chance to talk to them

13  further, and then they don't have to take the quiz in front of

14  me.

15          MS. OSBORN:  I understand, Your Honor.

16          THE COURT:  All right.

17          MS. OSBORN:  And if I may, I'll just add a couple of

18  options that I have considered would be either flipping the

19  Sharp and DAP trials as they're currently scheduled or

20  supporting Mr. Curran's argument that we combine them and move

21  them all to the November date.

22          THE COURT:  I see.  All right.  Okay.  I won't say

23  anything further on that, because I want your colleagues to

24  have a chance to digest this information.

25          MS. OSBORN:  Understood.  Thank you, Your Honor.

1            **THE COURT:**  Very good.  Mr. Gallo.

2          **MR. GALLO:**  Thank you, Your Honor.

3       I will wait to comment on the issue --

4            **THE COURT:**  Ken Gallo for Sharp.

5          **MR. GALLO:**  Thank you, Your Honor.

6       I'll wait to comment on the issue just raised, and we'll

7    talk at the break.

8       I do feel a need to comment very briefly on this new

9    request to combine these trials.  This will be the third time

10   this issue -- if a motion is filed, it will be the third time

11   the issue will have been litigated on the question of whether

12   the trials should be separate or not.  And the first two times,

13   the first time Judge Conti ruled on it, and then the time you

14   gave us your views on it, none of the views that were expressed

15   by the Court related to the number of parties in the case, it

16   related to the fact that there was evidence in the cases that

17   are very different.  Sharp does not have the pass-on issue.

18   Sharp does not have the FTAIA issue.  None of that has changed.

19   And so while I guess people can file motions if they wish to

20   file motions, it will be the third time that you've been --

21   that the Court has been asked to rule on that issue.  Thank

22   you.

23           **THE COURT:**  Thank you.  Mr. Brian.

24         **MR. BRIAN:**  Brad Brian for LG.

25      Mr. Gallo took the words out of my mouth.  I was just

 1   going to make the same points.  We concur with his views.

 2           **THE COURT:**  I trust Mr. Curran's judgment, if he

 3   doesn't have anything really novel to say.  And given the value

 4   of credibility in the long pending case, I suspect he won't

 5   file a motion.

 6       Okay.  I think you all filed an updated list of

 7   settlements recently, and you continue to get breaking news on

 8   that front.  I just wanted to confirm, if I can, that certain

 9   motions are moot.  This is a little different than moot, but

10   there is kind of a one-off motion, what I see as sort of a

11   one-off motion.  I'm wondering can I issue an order on this

12   summary judgment motion, notwithstanding the fact that the IPP

13   settlement remains under submission, and that is the Costco

14   state law choice of law due process motion.  Is there any

15   reason why I couldn't get that order out today if I wanted to?

16           **UNIDENTIFIED SPEAKER:**  No reason, Your Honor.

17           **MR. BRIAN:**  No reason, Your Honor.

18           **THE COURT:**  Okay.  That's likely to occur.

19       Then I don't know if you'll be able to do this just based

20   on having identified these from the bench, but I think the

21   following motions appear to be moot.  And I made a list of

22   docket numbers, and my law clerk made a list of docket numbers,

23   and then I printed out the first page of the relevant motion.

24       Defendant Chunghwa picture tubes -- I wonder, is this the

25   motion that I was just referring to?  I switched the orders.

```
 1   So the Chunghwa motion for summary judgment on Direct Action
 2   Plaintiffs' state law claims on due process grounds; is that
 3   motion still alive?
 4           MS. BRASS:   That motion is moot, Your Honor.
 5       This is Rachel Brass for the Chunghwa defendants.
 6           THE COURT:   Thank you, Ms. Brass.
 7       Next in order, captioned attorneys were Panasonic, but
 8   there were additional moving defendants.   This is defendants'
 9   motion for partial summary judgment against Indirect Purchaser
10   Plaintiffs and certain Direct Action Plaintiffs for lack of
11   antitrust injury and antitrust standing under federal and
12   certain state laws, at docket 3050.   It's not the most specific
13   title in the world.
14       Yes.   Would you identify yourself, please.
15           MR. MURRAY:   Yes, Your Honor.   Jason Murray for
16   Viewsonic Corporation.
17           THE COURT:   Mr. Murray.
18           MR. MURRAY:   At least as to Viewsonic Corporation, it
19   is certainly moot.   It's one of the ones we listed in the
20   letter to Your Honor yesterday.
21           THE COURT:   Yes.   I think I just want to make sure
22   that it's not live as to any other party.
23           MR. CURRAN:   Your Honor, you made the cautionary
24   comments before about deciding things on the fly.   I have a
25   concern right now, because a number of these motions may relate
```

 1    to, for example, cases that are going to be remanded to other

 2    courts, and I, frankly, would like to consider and consult with

 3    my colleagues about what may or may not be moot.

 4            **THE COURT:**  Sure.  I'd like that.  Actually, that's a

 5    very good idea.

 6         Maybe I could do this.  I'd like to read you a list of the

 7    numbers that I think are moot, and then let's just set a

 8    deadline for people to tell me whether they're not.  And I

 9    apologize if I'm supposed to know the answer to this just by

10    reading the docket, but it seems like a good idea to check.

11         I believe the following motions are moot:  Docket

12    number 2973, docket number 3050, docket number 3102, docket

13    3108.  Again:  2973, 3050, 3102, 3108.

14         And I think that the Court has resolved by order of

15    stipulation the following three motions, even though the order

16    may not have addressed these docket numbers directly, by other

17    order or other court action I believe these were resolved:

18    Docket 3048, which is the motion for summary judgment on

19    liability; 2978, which is a motion for partial summary judgment

20    as to Indirect Purchasers and certain Direct Action Purchasers'

21    state law claims on statute of limitations grounds, and that's

22    by a stipulation at docket 4335; and pursuant to the same

23    stipulation, I believe the Court need not take further action

24    regarding 3031.  And in light of the Chunghwa/Viewsonic

25    settlement 3008, 3526, I don't think -- at least 3008 I don't

```
1    think is moot, but 3008 and 3526.

2            MR. MURRAY:  Yes, Your Honor.

3            THE COURT:  As to Viewsonic, removed.

4            MR. MURRAY:  Yes, Your Honor.

5            THE COURT:  The question is, is it moot as to anyone

6    else.

7       I don't have in front of me a list of which parties

8    attached each of these numbers, so I'm sort of throwing out

9    these numbers.

10      And I would just ask -- can I appoint a representative in

11   the room to just file something and then set a deadline?

12   Ms. Nash and Mr. Curran and Mr. Blechman.  Ms. Nash --

13   Mr. Curran and Mr. Blechman sit down.

14      Ms. Nash.

15           MS. NASH:  We would be happy to file something.  I

16   just didn't catch what the Court just said.

17           THE COURT:  You said 3008 and 3526 actually I don't

18   think are moot, but I just want to make sure.

19           MS. NASH:  Okay.  So you'd like us to file something

20   on the status of each of those?

21           THE COURT:  Terrific.  That would be great.

22      End of the week long enough?

23           MS. NASH:  That's fine.

24           THE COURT:  Very good.  April 22.

25      Why don't we let Ms. Aquilina rest her fingers for a
```

1    minute.

2         Ms. Osborn can talk to you all about setting up a briefing

3    schedule.  Maybe Mr. Truax and Mr. Saveri can make some

4    progress on that too.  I have a couple of more things to talk

5    about when I take the bench.

6         Let's be in recess for ten minutes.

7                    (Recess taken at 3:03 p.m.)

8                 (Proceedings resumed at 3:20 p.m.)

9         **THE COURT:**  Okay.  Let's go back on the record.

10        I'd like to make a further comment with regard to trial

11   scheduling and the various comments that have been made so far

12   today.  And I want to start by emphasizing -- and what I'm

13   about to say is not an expression of an opinion that I think it

14   would be good or that I want anybody to do this, but two

15   different sets of concerns were raised today with regard to the

16   trial schedule, and so anticipating that both Mitsubishi for

17   its part and Thomson for its part, in addition to whatever is

18   said by anybody about trial order, and on that I have no reason

19   right now to think that I would change the trial order, but

20   that both of these parties are saying essentially can't we push

21   things back a couple of months.

22        And given how crowded my schedule is, I just, at the

23   break, wanted to take a look and see what that would look like,

24   and so I'll tell you what those dates would look like, even

25   though I'm not endorsing these dates.  I'm not rejecting them

1    either, and I'm not taking a position, but I think I know what

2    those dates would look like if you were to move everything back

3    at least a couple months, or excuse me, approximately a couple

4    months.

5         We'd have a pretrial conference on October 17 and 18.  I'm

6    playing a little bit of chicken with my own calendar by

7    suggesting those dates, but I have to do that sometimes.  The

8    Sharp trial would -- we would move it to November 7th.  We

9    would move it to the Sears/K-Mart date.  And we would move the

10   Sears/K-Mart trial to January 9th.  And then the DPP Mitsubishi

11   trial would start on March 6th.  The consolidated second

12   pretrial conference that we had talked about putting in late

13   October instead we would have on December 12th and 13th, not

14   quite two months, but, as you know, December gets to be

15   challenging if you go much past those two dates I just gave

16   you.  I'm not expressing an opinion, but that's what I think

17   what those dates would look like.

18        Ms. Osborn, I would expect that any motion that your

19   client made to continue the trial for the sake of the illness

20   of your client representative -- and I'm very sorry about those

21   circumstances -- that it would acknowledge that if the Court

22   granted a continuance, that at some point before that new trial

23   date, or pretrial conference date, or what have you, once it

24   became apparent, if it did, and I hope it doesn't, that the

25   client representative was not going to be able to fulfill her

1    responsibilities with regard to the new date, that at that

2    point the client would probably substitute someone else in.   In

3    other words, this would be -- that whatever amount -- let me

4    say it a different way.   Whatever amount of continuance you

5    asked for -- and maybe if you file a motion it won't be for a

6    couple months, it will be something else -- but for whatever

7    amount of continuance you ask for, it would be on the

8    assumption that I just identified.   Does that make sense?

9              MS. OSBORN:   It does, Your Honor.

10             THE COURT:   All right.

11             MS. OSBORN:   May I approach?

12             THE COURT:   Sure.

13             MS. OSBORN:   We have conferred during the break, and I

14   think have discussed exactly what you previewed, that the

15   possibility that one of the trials would go forward on the

16   November 7th date, and the other trial would go forward on the

17   January date, what everyone wants to assess and wants to

18   discuss with their clients, because not everyone has a client

19   here today.

20        And we also weren't clear of what your schedule was in the

21   next couple weeks, and I know that you want to get this firmed

22   up quickly.   So we discussed the possibility of defendants, to

23   the extent we have information and could present it, would

24   either submit something to you that was an agreed document or

25   pretrial or trial schedule on Monday, and that plaintiffs would

respond to that on Friday.  And there may be some movement on

that based on the ability of some folks to talk to their

clients in the middle of next week.

Another option, depending on your schedule, is defendants

saying something next Friday and plaintiffs saying something

the following week.

**THE COURT:**  Okay.  I learned not to make promises to

anybody about when I will decide something.  I will tell you

I'm in trial right now, and I leave the country very early on

the morning of May 5th, and the trial might go as late as the

that until I leave.  And I have some other cases, too, in

addition to this and that trial date.

Obviously, I know this case is very important to very many

people here, and there is a lot of utility in my deciding these

issues quickly.

**MS. OSBORN:**  I understand.

**THE COURT:**  Mr. Brian.

**MR. BRIAN:**  Just briefly, Your Honor.

I think we had the same thought that you had about those

dates.  And the only thing I wanted to add to it is that while

we don't think the cases should be consolidated, for the

reasons Mr. Gallo said, and Your Honor has previously

articulated, if it worked better for Ms. Osborn's client to

take that later date, the January 9th date, LG would be willing

to try and go first and take the November 7th date and try the

1   Sears/K-Mart versus LG case first.  It may not be necessary,

2   but that would be an accommodation to Ms. Osborn's client if

3   she needs that additional time.

4        THE COURT:  Let's let everyone go and talk to their

5   clients and their trial teams and their experts, and what have

6   you, and set a sensible schedule for the parties to put

7   something in to the Court.

8        I think Ms. Osborn suggested that the plaintiffs could put

9   something in on Monday, April 25th, and that if it were not the

10  subject of a stipulation, that any response could come in on

11  Friday, April 29th; is that right, Ms. Osborn?

12       MS. OSBORN:  Yes, Your Honor.  We had actually

13  contemplated defendants saying something on the 25th and

14  plaintiffs saying something on the 29th.

15       THE COURT:  You did say that, and I reversed it.

16       MS. OSBORN:  Yes, you did.

17       THE COURT:  Okay.  So defendant saying something on

18  the 25th, and then if there are response on the plaintiffs'

19  side, then it would come in on the 29th.  Does anyone object to

20  that schedule?

21       MR. TRUAX:  Your Honor, Mr. Truax from Mitsubishi.

22       Would that apply also to the Mitsubishi issue?

23       THE COURT:  No, I'm going to get to that in a second.

24  This is just with regard to -- well, I actually ought to

25  consider these things together, as I started by doing.  So the

1    question is -- thank you for that clarification.  Is there any

2    reason why I couldn't impose the same schedule on this

3    Mitsubishi DPP issue?

4            **MR. SAVERI:**  Rick Saveri for the plaintiffs.

5        That schedule is great, Your Honor.

6            **THE COURT:**  Mr. Truax.

7            **MR. TRUAX:**  Happy to file something by Monday, Your

8    Honor.

9            **THE COURT:**  Terrific.  Okay.  Good.

10       Previously, I've said more than once, and this is at your

11   request, that the Court would not issue orders on any of the

12   pending summary judgment motions until the Court had decided

13   and gotten an order out on the IPP settlement.

14       My question about that is now we have some additional

15   settlements that have come in that are described as being

16   settlements in principle that are still being documented.  Does

17   anyone here -- and I don't know that there's any risk of this

18   actually coming to pass that I'll get any of these orders out

19   in the immediate future, but does anyone want the Court to

20   withhold ruling on any summary judgment motion or other pending

21   motions because of these pending not documented settlements?

22           **MR. MURRAY:**  Your Honor, Jason Murray for Viewsonic

23   Corporation again.

24           **MS. BRASS:**  Rachel Brass again for the Chungwha

25   Picture Tube defendants.

1              **MR. MURRAY:**  And we did identify in the letter we

2    filed yesterday five motions that we would ask the Court's

3    forbearance on.  We believe we won't need more than two weeks

4    to finalize the agreed-upon terms in principle, and so we would

5    ask forbearance on those one, two, three, four -- five for that

6    time.

7              **THE COURT:**  May 2nd.

8              **MR. MURRAY:**  Yeah, that should do it, Your Honor.

9              **THE COURT:**  May 2nd, that's the Court's order.  In

10   other words, it's not an order.

11             **MR. MURRAY:**  Right.

12             **THE COURT:**  I'm just telling you, to the extent that I

13   have anything in the shute ready to be issued, and I'm not

14   saying I do, but if I do, at the end of the day on May 2nd I'll

15   feel free to issue it.

16             **MR. MURRAY:**  Thank you, Your Honor.

17             **MS. BRASS:**  Thank you, Your Honor.

18             **THE COURT:**  Okay.

19             **MR. BRIAN:**  Brad Brian for LG.

20      I need to think about that question.  Could we have until

21   May 2nd as well?

22             **THE COURT:**  Think about what?

23             **MR. BRIAN:**  The question of whether there's any reason

24   to hold off on any other motions, any of the rulings.

25             **THE COURT:**  I might address it today.

1    I'll leave a couple days after May 2nd.  So if by May 2nd

2    your client has a thought about it that they can share with me,

3    I don't know --

4         **MR. BRIAN:**  I don't need anything past May 2nd.  I

5    don't think I need it past this week.  But you asked whether

6    you should hold off on any other rulings --

7         **THE COURT:**  Yes.  What I'm saying is I won't -- I'm

8    happy not to issue anything until after May 2nd; does that

9    solve your concern?

10        **MR. BRIAN:**  Yes.

11        **THE COURT:**  Okay, good.

12        **MR. BRODY:**  Good afternoon, Your Honor.

13    Michael Brody for the Mitsubishi Electric defendants.

14        **THE COURT:**  Mr. Brian -- I'm sorry, Mr. Brody -- let

15    me just clarify for the record.  We already discussed this

16    Costco choice of law due process motion.  I'm going to get that

17    order out today.  I'm assuming that doesn't fit into the

18    category that we were just discussing.

19        **MR. BRIAN:**  That's correct, Your Honor.

20        **THE COURT:**  Good.  Sorry, Mr. Brody.

21        **MR. BRODY:**  Thank you, Judge.  We have two motions

22    that pertain to us.  We would prefer that you not rule on them

23    until May 2nd.  We are one of the parties with a motion or a

24    settlement in principle, and we're in the process of

25    documenting it.

1          **THE COURT:**  Very good.  I think, as I've indicated to

2    Mr. Brian, I won't get -- except for the one exception, I won't

3    get any orders out on any of these motions until May 2nd.

4          **MR. BRODY:**  That will be sufficient.

5          **THE COURT:**  Thanks.  Okay.  I think I just have one

6    thing left on my housekeeping list, and that's to tell you that

7    in light of the condition of my calendar, I honestly don't know

8    when I would schedule a hearing on any of these motions in

9    limine.

10         I like hearings, but I don't know that I have the

11   bandwidth to have any of them in your case on the pending

12   motions in limine.  I say that with some regret, but I say it

13   nonetheless.

14         With regard to motions -- let me start again.

15         Some of you have asked for permission to file additional

16   motions.  I don't have a view yet as to whether any of those

17   motions, if filed, will be heard.  I haven't gotten to that

18   yet.

19         That's my list.

20         Other matters for discussion today.  Ms. Nash?

21         **MS. NASH:**  Good afternoon, Your Honor.

22         The Court issued an order on April 4th asking the parties

23   to be prepared to address the joinder issue.

24         **THE COURT:**  Yes.

25         **MS. NASH:**  So I'm prepared to do that, if that's on

```
 1    your list.
 2            THE COURT:  It was, and I don't remember why I took it
 3    off of my own list.
 4                              (Laughter)
 5            THE COURT:  But if you came to tell me something, you
 6    have an awful lot of paper.
 7                              (Laughter)
 8            THE COURT:  I want you to tell me all of the things
 9    that you came to tell me.
10            MS. NASH:  Thank you, Your Honor.
11         I have prepared a chart in order to -- I thought that this
12    might simplify things for the Court.  I realize it's another
13    piece of paper, but I shared it with the plaintiffs yesterday.
14            THE COURT:  Let me ask a pragmatic, totally pragmatic
15    question.  There are an awful lot of joinders that came in,
16    some of them late.  Do I care?  Can't I just say if someone
17    joined in a motion, fine, I'll just decide the motion?  Does
18    anyone want me to do anything further than what I just said?
19    Do you want me to?
20            MS. NASH:  I do not.  That would be our position, and
21    I could explain why.  But if you wanted to hear from the other
22    side first, that's fine too.
23            THE COURT:  I have a feeling that someone does want to
24    address this from the other side.
25            MR. RANDALL:  Good afternoon, Your Honor.
```

1          Samuel Randall on behalf of Sears and K-Mart.

2          The issue that we have, practically speaking, there were a

3     number of motions filed on behalf of individual defendants

4     only, and then Toshiba filed a timely joinder to certain of

5     those motions.  So because Toshiba is in the case still, for

6     instance, the motions filed by Hitachi only and filed by

7     Mitsubishi only are kept alive to the extent it was joined by

8     Toshiba.

9          But there are two motions that we've identified that we

10    think pending settlements will add to the list of motions that

11    will be mooted, those are docket 3026, which is the ownership

12    and control motion as to NEC, and docket 3037, which is the

13    Mitsubishi liability motion that Toshiba didn't join either of

14    those motions.  And so we think, practically speaking, that if

15    these other defendants who filed untimely joinders can free

16    ride off of the original motion or the timely joinder that's --

17    I mean, I think that's procedurally the right result to apply a

18    ruling.  But we don't want motions that otherwise would become

19    mooted to be kept alive to become sort of zombie motions, for

20    lack of a better term, because of these untimely joinders.

21          **THE COURT:**  And Mr. Randall, am I right that your

22    concern is specifically addressed to the motions in docket

23    numbers 3026 and 3037?

24          **MR. RANDALL:**  As of today, yes.  If, for instance,

25    Toshiba were to settle out, I think that list would grow

1   considerably, because right now it looks like Chunghwa,

2   Mitsubishi, and Hitachi have all settled out or reached

3   settlement in principle as to all the DAP claims.  So the list

4   could grow substantially as settlements continue to happen.

5   And so we think the right result is just to strike the untimely

6   joinders, and to rely on what's been filed timely, so we could

7   prepare a new chart of pending motions that would accurately

8   reflect the joinders that were filed timely.

9           THE COURT:  All right.  I suppose someone should be

10  heard on the other side of that argument.

11          MS. NASH:  Yes, Your Honor.

12      The two motions that were filed by Mitsubishi are both the

13  subject of joinders by LG and by Thomson.  Those were filed in

14  June of 2015.  There was also a joinder to one of those motions

15  by Panasonic to which the DAPs have not objected.

16      Putting all of that aside, I think the Court has to look

17  at two basic questions:  Are these joinders timely, and should

18  the Court go ahead and decide them anyway.

19      And on the question of timeliness, the Court -- we've

20  cited cases and the other side has cited cases -- these courts

21  have looked at the practical effect of whether or not the

22  joinder makes any difference.  So the key factors here are that

23  our joinder make no new arguments, there's no prejudice to the

24  plaintiffs from allowing the joinder, and the Court has had a

25  full hearing on these issues already.  So what happens if you

1    don't decide them, Your Honor?  Here's what happens.

2        The Mitsubishi motion, 3026, is an ownership or control

3    motion directed at purchases from NEC entities.  Across all of

4    the plaintiffs, that's at least $40 million in damages.  The

5    Ninth Circuit has made clear that the question of standing to

6    pursue that type of claim must be decided by the Court.  It's a

7    question of law, including disputed issues of fact.  This Court

8    has had a full hearing on that motion.  If you do not decide

9    the motion, then we will be in a position of going to five or

10   six trial courts around the country making the identical

11   arguments that were made in 3026, and asking those courts to

12   make decisions on whether or not there's standing to pursue

13   those claims.  That's the practical approach I'd ask this Court

14   to take.

15       I would also argue that the joinders were timely.  And I

16   think I won't, at this point, go back through the cases that

17   we've cited, except to say we've cited district court cases,

18   and they have cited district court cases, and I'd ask the Court

19   to look at the *City of Colton* case, which is a Ninth Circuit

20   case, 614 F. 3d 998.  And in that case the defendants in the

21   case had filed a motion for summary judgment, some of the other

22   parties had not, some of the other defendants, and the Ninth

23   Circuit -- the district court in that case *sua sponte* granted

24   summary judgment for the non-moving parties.

25       In the second Ninth Circuit case -- and I promise this is

1    the last one -- the *Cool Fuel* case, 685 F. 3d 309, the

2    plaintiff in that case filed a motion for summary judgment.

3    The Court had a full hearing on the merits, and not only did it

4    deny the plaintiff's motion, the Ninth Circuit affirmed the

5    granting *sua sponte* of summary judgment in favor of the

6    defendants.

7            THE COURT:  Without anyone having filed a motion?

8            MS. NASH:  That's exactly right.

9        Let me read to you from that case, 685 F. 3d 309.  The

10   Ninth Circuit said -- in that case the defendant was the IRS.

11   The taxpayer moved for summary judgment.

12           (reading) The IRS made no motion, except a possible

13       oral motion during argument.  In this circuit oral motions

14       for summary judgment are not authorized.  It is,

15       nevertheless, true that the overwhelming weight of

16       authority supports the conclusion that if one party moves

17       for summary judgment and, at the hearing, it's made to

18       appear there's no genuine issue of fact, the Court can

19       grant it.

20           THE COURT:  That's a totally different issue, I think,

21   than how I deal with joinders.  I mean, it's nice to know, I

22   suppose, that I have this authority you just told me about.

23           MS. NASH:  Sure.

24           THE COURT:  And I could go around granting summary

25   judgments to people who didn't move for them.

1                      (Laughter)

2        **THE COURT:**  Okay, right.  It's like that Shakespeare

3  line:  You want to have a giant's power, but it is tyrannous to

4  use it like a giant.

5     Anyway, okay, fine, so I can do that.  But is it a joinder

6  case?

7        **MS. NASH:**  That is not a joinder case, but I do have a

8  joinder case for you.  My point there, Your Honor, is just --

9        **THE COURT:**  Isn't the *City of Colton* a joinder case?

10        **MS. NASH:**  I'm sorry?

11        **THE COURT:**  The *City of Colton* is a joinder case.

12        **MS. NASH:**  The *City of Colton* is a --

13        **THE COURT:**  You don't even need to file a joinder in

14  the *City of Colton* case.

15        **MS. NASH:**  My point --

16        **THE COURT:**  You may just be in the courtroom and your

17  friend filed one, and then you could get it too.

18        **MS. NASH:**  But my point, Your Honor, is that we don't

19  even need to have filed a joinder.  And so the Court has had a

20  full hearing on these motions, and if you are about to

21  conclude, or you're at the point where you believe there's no

22  genuine issue of material fact, there would be no point in

23  requiring trial courts around the country to revisit all of

24  those issues.

25     But on a specific question of joinder, we both cited

1   district court cases.  I think we have the better of the

2   argument there as well.  There's a case from the Northern

3   District.  It's called Lievox 2006 Westlaw 83058.

4           **THE COURT:**  Okay.

5           **MS. NASH:**  And in that case some of the defendants

6   moved for summary judgment, another party filed a joinder after

7   the dispositive motion was filed, and the Court said that

8   joinder was not a true joinder in the sense that it raised new

9   arguments.  Ours did not.  So what the Court did was say that

10  to the extent that joinder adopted the moving papers, the Court

11  permits it.  The Court disallowed it only to the extent it

12  raised new arguments.

13          **THE COURT:**  Very good.  Thanks.

14          **MR. RANDALL:**  Judge, what we're not hearing is cases

15  addressing whether a joinder could keep alive a motion that

16  otherwise would be moot, and that's our concern.  Yes,

17  practically speaking the LG --

18          **THE COURT:**  But why is it -- let me ask you a

19  question.  Why is that the issue?

20      Let's say that on Monday -- I guess I could pick two

21  people in the courtroom -- on Monday Mr. Blechman files a

22  motion, and Mr. Gallo should have filed his joinder on Tuesday,

23  but he doesn't, he files it on Wednesday.  That's not timely,

24  but he files it.  The Court decides, nonetheless, that the

25  joinder is effective.  It makes that decision before there's a

1   settlement or anything else.  It just decides that's the way

2   it's going to come down in the law, because the Court agrees

3   with Ms. Nash.

4        Well, if the joinder was effective, why does it matter

5   anymore if Blechman settles?  Why does it matter to the

6   analysis?  If the joinder is effective, then Mr. Gallo has just

7   as much right to have the Court decide the question as

8   Mr. Blechman.  It seems that if he has that right, how does a

9   settlement of another party extinguish that right?  That's

10  where I need your help.

11       **MR. RANDALL:**  Well, that's -- and I think that's the

12  key point there, is that no one -- just as an example, Sears

13  and K-Mart, by the time that LG had filed their joinder, had

14  settled with Toshiba, Panasonic, Chunghwa, Hitachi, Samsung,

15  and Philips.  So there was -- we had effectively negotiated to

16  eliminate the risk presented by those motions provided that

17  other parties settled out.  It's something that we were aware

18  of -- that's something that we would get the benefit of if that

19  came to pass.  For instance, if other parties would settle,

20  that would moot the Mitsubishi motion.

21       **THE COURT:**  But isn't that part of the consideration

22  for the settlement only if it's clear to everyone in the room

23  in your negotiation, and all the people that are not in the

24  room but are also in the case, that you're correct about what

25  the joinder rule is.  In other words, you're saying, *Judge, I*

1    *settled these cases, because I thought it was going to make*

2    *their motions go away*.  Well, that's a separate legal issue

3    that has to be decided by the Court.  I don't know if I'm

4    articulating this very well.

5          **MR. RANDALL:**  Right.  But I think what's crucial here

6    is that in this case LG had joined after we had reached all

7    those settlements, after we had filed stipulations of dismissal

8    for most of those settlements.

9          **THE COURT:**  I see.  So let me make sure.  I'm sorry to

10   interrupt you, but I think I'm understanding your argument, and

11   I want to make sure that's true.

12       Your point is whatever the equities might be, if someone

13   files a joinder to a motion that was filed by a party that's

14   still in the case, you can't revive a motion after a party has

15   filed a notice of dismissal, and that's what happened here.

16         **MR. RANDALL:**  Almost, yes.

17         **THE COURT:**  They didn't file a notice of dismissal?

18         **MR. RANDALL:**  The motions had not yet become mooted.

19   The motions have just recently become mooted.  So LG is arguing

20   that its motion should be able to have that effect.  It was

21   filed after the settlements were reached, but that it can go

22   forward and prop up these zombie motions that otherwise would

23   become mooted by the settlements of the moving parties and the

24   timely joining parties.  So we now have motions that are mooted

25   or should be mooted based on the parties that joined it, or

1    based on the parties that timely joined it, or the parties that

2    filed it, that the Court will rule on based on untimely

3    joinders only, and that's what we have an issue with.  We're

4    not talking about for parties that remain in the case, where

5    the ruling is going to come down anyway, applying that ruling

6    to our case.  We agree that's the right result.  What we don't

7    want is rulings coming down for motions that should be moot

8    based on settlements.

9              THE COURT:  Okay.  Ms. Nash.

10             MS. NASH:  Your Honor, I don't think the timing is set

11   out in the record anywhere the way Mr. Randall is describing it

12   to you.  What I would say to you is that our joinder was filed

13   in June of 2015, well before there were any arguments on these

14   motions.  And it's only in the last couple of days that the

15   actual moving party, Mitsubishi, has dropped out of the whole

16   panoply of MDL cases.  So I don't think it's accurate to say

17   that Sears relied on invalidity of joinders in reaching

18   settlements.  There's just no evidence in the record that would

19   allow the Court to make that conclusion.

20             THE COURT:  Ms. Nash, is it your -- is it a logical

21   inference from your argument that if Mr. Randall -- it's

22   Mr. Randall?

23             MR. RANDALL:  Yes.

24             THE COURT:  -- Mr. Randall or one of his colleagues

25   thought the motions were moot, they should have said so before

 1   allowing you to take argument.

 2          **MS. NASH:**  I think that's a very good inference, Your

 3   Honor.  Yes, I think that --

 4          **THE COURT:**  Mr. Randall, why is this thought that I

 5   plucked from Ms. Nash's brain wrong?

 6                          (Laughter)

 7          **THE COURT:**  I mean, I'm wondering if you're right,

 8   what was I doing here?  How come you didn't tell me then?

 9          **MR. RANDALL:**  Well, we did say that, respectfully,

10   Your Honor.  We did file an opposition to LG's joinder in June,

11   within a week, I think, of when the joinder happened, and so,

12   you know, we've acted on the presumption --

13          **THE COURT:**  Back in 2015 you mean?

14          **MR. RANDALL:**  Correct, back in 2015.

15          **THE COURT:**  But, I mean, I'm admin in our 5,000 item

16   docket.  I haven't memorized all the things, okay, I'm working

17   on it.  Did anyone bring to my attention, when we were setting

18   up this comprehensive schedule of hearings and dividing summary

19   judgment into tranches and so forth, did anybody say, oh, by

20   the way, Judge, you actually don't need to have a hearing on

21   this motion, particular motion, because it's not alive in the

22   case anymore.  Did anybody say that?

23          **MR. RANDALL:**  No, your Honor.  But the events that

24   make it no longer alive just happened recently.

25          **THE COURT:**  Since I had the hearing?

1    **MR. RANDALL:**  Correct.  I think it's the Best Buy

2  settlement that effectively mooted the motions that are now

3  moot.

4    **THE COURT:**  All right.  I think we've covered this

5  waterfront.  I won't decide the issue.  I have some --

6  Mr. Randall, I need to think about your position a little bit.

7  It seems tough to me, honestly.  We actually had the motion, we

8  had an argument, and if there is -- if I'm to pay as much

9  attention to the equity, as Ms. Nash said, if I have the

10  discretion that she's implying, I don't know if at this late

11  date I'll find that the motions that I've heard are, but I'll

12  take a close look.

13    Other issues that need to be discussed today?

14    All right.  Not hearing any, thank you all very much.

15  Court is in recess.

16    (Proceedings adjourned at 3:48 p.m.)

17    ---oOo---

18

19

20

21

22

23

24

25

1

2

3                    **CERTIFICATE OF REPORTER**

4           I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:   Thursday, April 21, 2016

8

9

10

11    _____

12           Rhonda L. Aquilina, CSR No. 9956, RMR, CRR
                       Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25