# EXHIBIT 3
(Redacted)

**January 8-9, 2015**

**Meggan Ehret, Thomson SA's Corporate Designee**
**Notes Regarding Certain Thomson SA 30(b)(6) Deposition Topics**

      1.     The following notes on certain of the Plaintiffs' Fed. R. Civ. R. 30(b)(6) topics are intended solely to aid the witness's recollection of specific factual material discovered in the course of Thomson SA's investigation in this matter. These notes are not intended to provide any testimony on Thomson SA's behalf, exhaust its knowledge or provide a comprehensive response to any answer.

      2.     Thomson SA does not accept Plaintiffs' premise that there was a conspiracy to fix prices or reduce production of CRTs and denies that it participated in any such conspiracy that violated the antitrust laws of the United States.

      3.     Thomson SA states that these notes, if produced, and any testimony provided in reliance on these notes and in conjunction with any testimony will be subject to the Stipulated Protective Order entered in this action.

**Topic No. 3.**

      Your policies applicable to communications with competitors, including Your policies applicable to communications with competitors regarding production, pricing, development costs, marketing or distribution of CRT Products, Your policies regarding the use of competitors' CRT Products prices obtained directly from competitors in setting the Prices of CRTs You quoted to customers or prospective customers, and Your policies regarding the use of competitors' CRT Products prices obtained directly from competitors in setting the prices of CRTs You quoted to customers or prospective customers.

     **NOTES:**

      Compliance with the antitrust laws of the countries in which Thomson SA and its affiliates do business has long been part of Thomson SA's policy guidelines.

- Employees of Thomson SA's United States subsidiary, Thomson Consumer, received regular training on their obligation to comply with the antitrust laws of

**TSA-CRT HIGHLY CONFIDENTIAL**

1



the United States. Current or former Thomson Consumer employees such as Jackie Taylor-Boggs, Jack Hirschler, Tom Carson, and Alex Hepburn have reported that they received antitrust and Robinson-Patman Act training while working for the company. (Hepburn Depo. at 111:3-6; Carson Depo. at 355:10-13)

- Ms. Taylor-Boggs also recalls that she instructed the employees that she supervised not to discuss prices with competitors.

- Similarly, former Thomson Consumer CPT salesman John "Jack" Hirschler has reported that throughout his career with Thomson Consumer, employees received regular training on antitrust compliance and were informed as to what they could and could not do when selling Thomson Consumer products. Employees were all made aware of the penalties the company and individual employees could be subject to in the event of non-compliance with these rules. Thomson Consumer employees were strongly encouraged to do nothing to jeopardize the corporation.

**Topic No. 4.**

All internal communications within Thomson related to the production, pricing, sale, marketing, or distribution of CRT Products.

**NOTES:**

- One form of internal communication included monthly PSI (Production, Sales, and Inventory) meetings during which Thomson SA's subsidiaries' sales, product, and plant managers would meet to discuss supply, demand, production, inventory levels and other issues regarding their operations.

**Topic No. 8.**

Any joint ventures, partnerships or other collaborative business relationships, or acquisitions related to CRT Products production, sale, marketing, or distribution, either undertaken or considered by you with respect to: (a) any other defendant or co-conspirator

named in *In re Cathode Ray Tube (CRT) Antitrust Litigation*, U.S. Dist. Ct., Northern District of California, MDL-1917, (b) any competitor, or (c) any other person.

**NOTES:**

- In or about 1998, Thomson SA's wholly-owned subsidiary, Thomson Tubes & Displays S.A. ("TTD") entered into a joint venture with the state-owned Foshan Color Picture Tube Co., to manufacture CPTs in Foshan, China, resulting in the formation of Thomson Foshan Color Picture Tube Co. Ltd. ("Thomson-Foshan"). Thomson-Foshan later also owned a factory in Dongguan, China. TTD managed and owned a majority interest in Thomson-Foshan until it sold its CPT-related business and assets to Videocon in 2005.

- In 2001-2003, representatives of Thomson SA and its subsidiary Thomson Consumer had numerous meetings with representatives of Matsushita for purposes of exploring and negotiating a possible CPT joint venture and/or collaborative business relationship between the companies. The potential collaborative business relationship was referred to as project "Blue Sky." Thomson SA and Thomson Consumer representatives who participated in meetings and/or negotiations regarding the project included Giles Taldu, Fredric Jarsaillon, Tom Carson, Jack Brunk, and J.P. Hanrahan. *See e.g.*, MTPD-0570796E.

- As a result of these negotiations, Thomson SA and Matsushita executed a Memorandum of Understanding (MOU) which established a reciprocal preferred supplier relationship for CPTs and CPT components, and thereby enhanced the competitiveness of each company's CPT business. *See* MTPD-0346703.

- In September 2003, Thomson SA had discussions with IRICO about a possible joint venture, focused on tube production in China, but no such partnership or joint venture was undertaken. *See* TCE-CRT 0021286 (IRICO proposal re

Fortune takeover); TCE-CRT 0026166 (presentation re possibility of IRICO JV – Sept. 2003); TCE-CRT 0026167 (presentation re "Project Ice –Tea" JV with IRICO).

- In June 2004, Thomson SA and its subsidiaries and affiliates transferred all television manufacturing operations to TCL-Thomson Electronics ("TTE"), in which Thomson SA maintained a minority interest. Thomson SA's CPT-related subsidiaries and affiliates maintained a preferred supplier relationship with TTE until the disposition of the Thomson tube business in September 2005.



- Thomson SA and/or certain subsidiaries and affiliates maintained a preferred supplier relationship with the Videocon CPT business for certain components

including glass, cathodes, electron guns and yokes and related research and development for various periods throughout 2005 and 2006. As discussed below, Thomson SA also agreed to provide certain transition services for a limited period following the closing.

- In early 2002, Thomson SA purchased Hitachi's only US CPT production line from Hitachi in Greenville, South Carolina, and transferred that line to Foshan, China. An ancillary provision to the asset sale agreement provided that Hitachi would not compete in the US CPT market with Thomson Consumer in the United States. The purchase of the CPT production line and ancillary provisions were negotiated at arm's length and were in conformity with United States antitrust laws.

- Thomson SA is aware that at various times, other producers may have expressed interest in joint ventures, partnerships, or collaborative business relationships, including Toshiba and Thai CRT, but it is not clear that Thomson SA or its affiliates seriously considered any such proposals.

## Topic No. 9.

If you contend that you withdrew from any meeting, conspiracy, understanding, or agreement related to the production, sale, marketing, or distribution of CRT Products, all facts regarding the date and circumstances of your withdrawal from the meeting, conspiracy, understanding, or agreement, how you withdrew from the meeting, conspiracy, understanding, or agreement, the identity of persons who withdrew from the meeting, conspiracy, understanding, or agreement on your behalf, and the identity of any documents that support your contention that you withdrew from the meeting, conspiracy, understanding, or agreement.

### NOTES:

- Thomson SA did not knowingly join any unlawful meeting, conspiracy, understanding, or agreement related to the production, sale, marketing, or

distribution of CRTs involving the US market or the plaintiffs in this matter and therefore did not need to withdraw from any such conspiracy.

- ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████   ██████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████

- After September 2005, however, Thomson SA was not responsible for the management of Videocon's newly-acquired CPT assets and Thomson SA was not responsible for the production, pricing, and sales of CPTs Videocon manufactured or sold.

- ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  ██████

- As part of the asset sale, Videocon acquired the right to use the Thomson brand name for a certain period.  Accordingly, after September 2005, Videocon sold CPTs it manufactured that bore the Thomson brand name.  However, such CPTs were not manufactured, marketed, priced, or sold by Thomson SA (n/k/a Technicolor SA) or its subsidiaries or affiliates.

TSA-CRT HIGHLY CONFIDENTIAL

- Moreover, after the asset sale closed in September 2005 numerous employees of Thomson SA and its subsidiaries and affiliates transitioned to work for the Videocon-owned business.   These employees worked for Videocon-owned entities, not Thomson SA, during this period.

## Topic No. 10.

Your knowledge or beliefs related to the illegality or impropriety of exchanging information or entering into any understanding, agreement, commitment, or contract with any of the defendants or co-conspirators named in *In re Cathode Ray Tube (CRT) Antitrust Litigation*, U.S. Dist. Ct., Northern District of California, MDL-1917, related to the production, pricing, sale, marketing, or distribution of CRT Products.

**NOTES:**

- Thomson SA did not knowingly join any conspiracy, understanding, or agreement related to the production, sale, marketing, or distribution of CRTs or CRT Products in any way involving the United States or the plaintiffs in this matter.

## Topic No. 11.

If you contend that any or all of the Plaintiffs knew or should have known of any meeting, conspiracy, understanding, or agreement related to the production, sale, marketing, or distribution of CRT Products prior to November 2007, the circumstances under which Plaintiffs became aware, or should have become aware, of your involvement in the meeting, conspiracy, understanding, or agreement, and the documents that support your contention.

**NOTES:**

- Thomson SA did not knowingly join any conspiracy, understanding, or agreement related to the production, sale, marketing, or distribution of CRTs or CRT Products in any way involving the United States or the plaintiffs in this matter and therefore Plaintiffs could not have been aware of Thomson SA's involvement in such a conspiracy.

- █████████████████████████████████████
- █████████████████████████████████████
- █████████████████████████████████████
- ████████████████████████████

- For additional evidence and argument in support of its claim that Plaintiffs' claims are barred in whole or in part by this defense may also be found, see Thomson SA's Supplemental Response to Interrogatory No. 3 of Sharp's First Set of Interrogatories to Thomson SA; see also Defendants' Joint Motion for Partial Summary Judgment Against Dell and Sharp Plaintiffs On Statute of Limitations Grounds (Dkt. No. 3041-4).

## Topic No. 12.

The identity and general description of the CRTs you manufactured, purchased, sold, or distributed.

### NOTES:

- Neither Thomson SA nor its subsidiaries or affiliates ever manufactured, sold, or purchased CDTs during the Relevant Period. Thomson SA subsidiaries and affiliates only manufactured, sold, or purchased CPTs for use in televisions.

- To the extent such documents still exist and are in its possession, custody, or control, Thomson SA and Thomson Consumer have produced documents to the Plaintiffs that identify the CPTs they manufactured and sold during the Relevant Period.

- The majority of CPTs manufactured and sold by Thomson SA's subsidiaries and affiliates during the Relevant Period were curved CPTs 25" or larger.

- Before 2001, Thomson SA's subsidiaries manufactured a relatively small number of 21" CPTs.  Because Thomson SA's subsidiaries manufactured few if any CPTs smaller than 21" during the Relevant Period, it purchased CPTs smaller than 21" from third-parties, including other defendants in this litigation.  ██████████



- Between 2002 and 2005 an increasing percentage of the CPTs Thomson SA's subsidiaries and affiliates manufactured and sold were True Flat, as this new type of tube replaced traditional curved CPTs in an ultimately unsuccessful attempt to compete with emerging technologies like LCD and Plasma.

**Topic No. 15.**

The policy and process by which prices, including list prices and actual selling prices, for each CRT Product were set and by whom, including the location of negotiations for sales of CRT Products to Plaintiffs, OEMs, or ODMs; the location of your sales offices in the United States; all factors, formulas, or guidelines you considered in determining prices you charged for each CRT Products; the pricing authority given to employees/affiliates at all levels of the sales and marketing organization; and how pricing decisions were implemented, including any benchmarks (*e.g.*, industry-wide, specific customers, spot market, discounts or rebates) used when establishing and/or negotiating prices.

**NOTES:**

- Thomson SA did not produce, market, sell, or distribute CPTs in the United States during the Relevant Period. Accordingly, Thomson SA did not have sales offices in the United States.

- Neither Thomson SA nor its subsidiaries or affiliates ever manufactured, sold, or purchased CDTs or CDT Products during the Relevant Period. Accordingly,

neither Thomson SA nor its subsidiaries and affiliates negotiated or set the price of CDTs sold in the United States at any time.

- For information regarding Thomson SA's subsidiaries and affiliates' CPT operations in North America, see Notes Regarding Certain Thomson Consumer Rule 30(b)(6) Deposition Topics.

- Based on its investigation conducted to date, Thomson SA is not aware of evidence indicating that its subsidiaries and affiliates set the price of CPTs using a rigid list of factors, formulas, or guidelines. Instead, they primarily set prices based on the price demands of their customers and its desire to earn a profit on their tube sales.

**Topic No. 16.**

The relationship between the price of CRTs sold by you and the price of CRT Finished Products sold by you or your domestic and/or international affiliates including, but not limited to: (i) the percentage of the total cost of the CRT Finished Products made up by the CRTs; and (ii) the effect that a change in the price of the CRTs had on the price of the CRT Finished Products.

**NOTES:**

- For CPTs manufactured by Thomson SA's subsidiaries, although the exact percentage varied by model, size and tube type, the cost of a CPT accounted for 45-75% of the total cost of a television. *See* TCE-CRT 0029077.

- The cost of CPTs was just one factor in determining the price of televisions sold by Thomson SA's subsidiaries. Worldwide television markets were very competitive, and television prices of Thomson SA's subsidiaries reflected that competition.

**Topic No. 17.**

The extent to which the prices charged for CRTs were passed on through the distribution chain by you or your domestic and/or international affiliates.

**NOTES:**

- When the television manufacturing divisions of Thomson SA's subsidiaries and affiliates purchased CPTs manufactured by Thomson SA's subsidiaries and affiliates, the television manufacturing division paid a price for these CPTs that was consistent with prevailing market rates in the relevant geographic market.

**Topic No. 18.**

Meetings and other communications between you and any Plaintiff.

**NOTES:**

- For information regarding Thomson SA's subsidiaries and affiliates' CPT operations in North America, see Notes Regarding Certain Thomson Consumer Rule 30(b)(6) Deposition Topics.

- Thomson SA's CPT subsidiaries and affiliates routinely met and communicated with their customers, including Plaintiffs in this action who purchased CPTs, particularly Sharp.

**Topic No. 19.**

Negotiations and other communications between you and OEMs or ODMs regarding the sale of CRTs.

**NOTES:**

- Thomson SA's subsidiaries and affiliates sold CPTs to numerous different television manufacturers during the Relevant Period including Sanyo, JVC, Daewoo, Sharp, Toshiba, Hitachi, Matsushita, Samsung, Philips, and Zenith. *See, e.g.*, TCE-000001–475.

- To complete these sales Thomson SA subsidiaries and affiliates engaged in negotiations and communications with television manufacturers regarding product specifications, delivery and terms of sale, pricing, volume rebates and discounts, product returns, quality related issues, product availability, and warehousing. *See e.g.*, TCE-CRT 0005265, TCE-CRT 0008629–32, TCE-CRT 0008877–80, TDA

00738, TDA00772, TDA 00784, TDA 708, TCE-CRT 000825, TCE-CRT 0008626, TCE-CRT 0008641, TCE-CRT 0008687.

**Topic No. 22.**

Policies, practices, or requirements relating to Your participating in negotiations, entering into, or signing contracts for, Your subsidiaries, including Thomson Consumer or Technologies Displays.

**NOTES:**

- Thomson SA did not own or control Technologies Displays after Thomson Displays America, LLC was transferred to a Videocon subsidiary in September 2005.

- Thomson SA did not have a written policy during the Relevant Period regarding "participating in negotiations, entering into, or signing contracts for" its subsidiaries.

**Topic No. 23.**

The role of current and former directors, officers, employees, agents, or other representatives with any managerial responsibility for recommending, reviewing, setting or approving prices, bids, quotes, or rebates for Your CRTs or CRT Products, or those of Thomson Consumer, TDA, Technologies Displays, or Videocon Industries, Ltd., during the Relevant Period for the U.S. market.

**NOTES:**

- While they were employed with Thomson SA or its subsidiaries or affiliates, Thomson SA employees played no role in negotiating or setting the prices of CPTs that may have been sold by Technologies Displays or Videocon Industries, Ltd.

- During the portions of the Relevant Period before September 2001, the individual who set the prices of CPTs sold by Thomson Consumer subsidiaries in North America was Tom Carson. Before September 2001, Thomson Consumer's CPT

business in North America was managed almost exclusively by Thomson Consumer employees in the United States and Thomson SA had no involvement in managing the day-to-day operations of Thomson Consumer's CPT business.

- After September 2001, the CPT and CPT components businesses of Thomson SA's subsidiaries around the world were reorganized and consolidated into a company-wide displays and components group headed by Didier Trutt.   See TSA-CRT 000011552 – 000011554. However, in practice, Thomson SA's various subsidiaries continued to be regionally managed.   Accordingly, the individual who set prices for Thomson Consumer's CPT business in the United States after September 2001 was J.P. Hanrahan. (Hanrahan Depo. at 73:2-78-7; Brunk Depo. at 287:5 -289:6).

- The price of CPTs sold by Thomson Consumer in the United States during the Relevant Period was set following negotiations between a Thomson Consumer sales person and the customer and as a general matter, Thomson SA representatives had no involvement in these negotiations.   Thomson SA is only aware of a single instance during the Relevant Period in which a Thomson Consumer sales person received direction from a Thomson SA representative that Thomson Consumer could not provide the price demanded by the customer. (See Id.)

**Topic No. 26.**

Your instructions, directions, policies, or procedures to or from domestic and/or international affiliates related to the production, pricing, negotiation, sale, marketing, or distribution of CRT Products.

**NOTES:**

- After September 2001, the CPT and CPT components businesses of Thomson SA's subsidiaries around the world were reorganized and consolidated into a companywide displays and components group headed by Didier Trutt.   See TSA-

CRT 000011552 – 000011554. However, in practice, Thomson SA's various subsidiaries continued to be regionally managed. Accordingly, the individual who set prices for Thomson Consumer's CPT business in the United States after September 2001 was J.P. Hanrahan. (Hanrahan Depo. at 73:2-78-7; Brunk Depo. at 287:5 -289:6).

- No instructions regarding specific prices at which sales team members should sell tubes in various regional market.

- Thomson SA desired its CPT operations to be competitive and expected its CPT-related subsidiaries to lower prices to be more competitive.

- Thomson SA's and its CPT-related subsidiaries' policy was that CPT sales to its internal TV manufacturing division (before the sale of that business in June 2004) were set at market level.

- For information regarding Thomson SA's subsidiaries and affiliates' CPT operations in North America, see Notes Regarding Certain Thomson Consumer Rule 30(b)(6) Deposition Topics. If at all, only a de minimis number of CPTs manufactured in Europe or Asia by subsidiaries of Thomson SA were sold in North America.

- CPTs manufactured at Thomson SA's European and Chinese plants were primarily sold in Europe and Asia by its sales team members in each location.

## Topic No. 27.

Your use of discounts or rebates in connection with the sale of its CRT Products, including how such discounts or rebates were recorded by You and the identity and location of documents or data recording discounts or rebates.

**NOTES:**

- For information regarding Thomson SA's subsidiaries' CPT operations in North America, see Notes Regarding Certain Thomson Consumer Rule 30(b)(6)

Deposition Topics. Thomson SA and its European and Asian subsidiaries did not directly sell CPTs to customers in the United States.

**Topic No. 28.**

The electronic data processing systems, programs, and outputs that you used to record, store, compute, analyze, or retrieve any information relating to the production, pricing, marketing, sale, distribution, profitability, or inventory of CRT Products, including systems shared with your domestic and/or international affiliate(s) or any other company; a description of the meaning of the fields in any electronic data you produced to Plaintiffs; an explanation of how to read or interpret transactional or financial data you produced to Plaintiffs (including sales information, cost information cost accounting reports, and production information); the authors of the entries into the databases; and/or instructions for entry of data.

**NOTES:**

- Thomson SA exited the CRT industry in 2005 when it sold its CPT assets and most of its employees who were involved in its former CPT businesses to Videocon.  Now, almost ten years after Thomson SA exited the business, information regarding electronic data processing systems Thomson SA used to record or analyze information relating to the production, pricing, marketing, sale, distribution, profitability, or inventory of CPTs is not reasonably available.

**Topic No. 29.**

The nature of the records of your sale of CRT Products (including, but not limited to, sales to domestic and/or international affiliated entities and other defendants in this litigation) during the Relevant Period, including data which shows the types of CRT Products sold, the volume of sales for each type of CRT Products and the prices at which your CRT Products were sold.

**NOTES:**

- For information regarding Thomson SA's subsidiaries' CPT operations in North America, see Notes Regarding Certain Thomson Consumer Rule 30(b)(6) Deposition Topics.

**Topic No. 30.**

The nature of the records of your purchases of CRT Products (including, but not limited to, purchases from domestic and/or international affiliated entities and other defendants in this litigation) during the Relevant Period, including data that relates to the types of CRT Products purchased, the volume of purchase for each type of CRT Products, the prices at which you purchased those CRT Products and the sellers from whom you purchased each type of CRT Products.

**NOTES:**

- For information regarding Thomson SA's subsidiaries' CPT operations in North America, see Notes Regarding Certain Thomson Consumer Rule 30(b)(6) Deposition Topics.

**Topic No. 32.**

The officers and directors of Thomson SA during the Relevant Period.

**NOTES:**

- The terms "officers and directors" are vague and undefined when applied to Thomson SA, which is a French entity.

- For purposes of providing testimony on this topic (1) a director is a "person appointed or elected to sit on a board that manages the affairs of a corporation or company by electing and exercising control over its officers." and (2) an officer is "a person elected or appointed by the board of directors to manage the daily operations of a corporation, such as a CEO, president, secretary, or treasurer. *See Black's Law Dictionary* (2nd pocket ed. 2001).

- During the Relevant Period, the following individuals were officers and/or directors of both Thomson Consumer and Thomson SA:

| Name | Role with Thomson SA | Role with Thomson Consumer |
|------|---------------------|----------------------------|
| Thierry Breton | President (1997-2002) | President (12/31/1998 – 10/10/2002) |
| Olivier Mallet | CFO (1997-2001) | Director (12/31/1998 – 5/30/2001) |
| Charles Dehelly | CEO (10/2002 – 9/2004) | Director (10/10/2002 – 12/31/2004) |
| Julian Waldron | CFO (6/2001 – 2008) CEO (3/2008 – 9/2008) | Director (1/8/2002 - 5/9/2008) |

**Topic No. 33.**

Thomson SA's ownership interest in Videocon Industries, Ltd. during the Relevant Period.

**NOTES:**

- 

**Topic No. 34.**

The transfer of Thomson SA managers, agents, or employees to Videocon Industries, Ltd.

**NOTES:**

- Thomson SA transferred the legal entities comprising its former CPT operations to Eagle Corp., Ltd. in September 2005. Mangers, agents, and employees of those entities continued in their respective positions unless or until dismissed by Videocon.

- Several former Thomson SA employees transferred to Videocon-owned entities following the transfer of CRT operations.

- To the best of Thomson SA's knowledge, individuals employed by Thomson SA subsidiaries that were transferred to Videocon in September 2005 continued to work for those entities.

- The employment contracts of certain CPT employees, including ███████████ a member of the Asian sales team, may have been assigned to Videocon-owned entities following the September 2005 disposition the CRT business. Thomson SA in not aware of what services ██████████ provided to Videocon after September 2005 and Thomson SA did not supervise or control any such services.

- Thomson SA is aware that ██████████ transitioned to work for Videocon-owned entities when CRT operations were sold in 2005.  Thomson SA is not aware of the precise nature of his duties throughout the remained of the relevant period, but believes that his role in CRT sales remained the same for a period following the transfer of CRT operations.

- Thomson SA is aware that other Thomson SA or TTD employees including but not limited to ████████████████████████ ██████████████████████████ worked for Videocon's CRT operations and remained there for at least a portion of the Relevant Period before returning to work for Thomson SA.  Other than documents in its possession, Thomson SA has no independent knowledge of what services these individuals provided to Videocon after September 2005 and Thomson SA did not supervise or control any such services.  Thomson SA has, however, produced numerous documents from this period that may have remained in possession of these individuals when they Thomson SA.

## Topic No. 35.

The involvement of Thomson SA in the management, sales, marketing, or other corporate responsibilities of Videocon Industries, Ltd. during the Relevant Period.

   **NOTES:**

- Thomson SA did not have any role in the management, sales, marketing, or other corporate responsibilities of Videocon Industries, Ltd. during the Relevant Period.

- ███████████████████████████████████████████████

  ███████████████████████████████████████████████

  ███████████████████████████████████████████████

  ████████████████████████  ███████████████████████

  ███████████████████████████████████████████████

  ███████████████████████████████████████████████

  ██████████████████████████████████████  ██████████

  ███████████████████████████████████████████████

  ███████████████████████████████████████████████

  ████████████████████████ Thomson SA is aware that certain CPT employees who remained with Thomson SA, including Didier Trutt and Christian Lissorgues, were copied on various planning e-mails and may have provided services until at least the end of 2005. Other than what is reflected in documents produced, Thomson SA lacks knowledge of the exact extent of the services provided under the Services Agreement.

- To the extent that certain Thomson SA employees may have provided services under contract for Videocon's CPT subsidiaries, Thomson SA did not supervise or control that provision of services. On one or more occasions, however, Thomson SA may have assisted Videocon in administrative aspects of such individuals' employment.

- After the transfer of TTD to Videocon, employees of TTD continued to use e-mail addresses with the "Thomson.net" domain while they transitioned to the use of the "ttdco.net" and "ttdco.com domains. Thus, e-mails sent or received by individuals with Thomson.net e-mail addresses during this period do not reflect

continued involvement of Thomson SA in the management, sales, marketing, or other corporate responsibilities of Videocon.

**Topic No. 36.**

A description of Your CRT Product production facilities, including: (a) the location of each facility; (b) the start and end date of production operations at each facility; (c) the products produced at each facility; (d) the number of manufacturing lines at each facility and products produced by line; and (e) the capacity utilization rates for each facility and manufacturing line within each facility.

**NOTES:**

- For information regarding Thomson SA's subsidiaries' CPT operations in North America, see Notes Regarding Certain Thomson Consumer Rule 30(b)(6) Deposition Topics.

- Thomson SA's European subsidiary Thomson Tubes & Displays SA owned entities that operating CPT production facilities outside of North America. These included Videocolor SpA, which operated a CPT manufacturing plant in Anagni, Italy; Thomson Polkolor Sp z.o.o which operated a CPT manufacturing plant in Piaseczno, Poland; and Thomson Foshan Color Picture Tube Co. Ltd. (later Thomson Guangdong Display Co. Ltd.) which operated a CPT manufacturing plant in Foshan and Dongguan, China.

- The Anagni facility primarily manufactured 24W, 28W, 32W, and 34F CPTs until it was transferred to a subsidiary of the Videocon Group in February 2005.

- The Piaseczno facility primarily manufactured 20 and 21 inch CPTs until it was transferred to a subsidiary of the Videocon Group in September 2005.

- TTD invested in the Foshan, China, facility as a joint venture with Foshan Color Picture Tubes in 1999 and that facility was owned and operated by the joint venture until it was transferred to a subsidiary of the Videocon Group in

September 2005.   The Foshan facility primarily manufactured 29 inch CPTs for sale into the domestic Chinese CPT market.

- The Donguan facility was acquired from Fortune Company by the Thomson-Foshan joint venture in 2003 and was owned and operated by the joint venture until it was transferred to a subsidiary of the Videocon Group in September 2005. The Donguan facility primarily manufactured 21 and 25 inch CPTs.

- Thomson SA has not located any comprehensive reports regarding the capacity utilization rates of its subsidiaries' CPT plants throughout the entire Relevant Period.  However, capacity information may be found in documents produced in this litigation by Thomson SA and Thomson Consumer.

## Topic No. 37.

Your policies and practices for setting the production levels for CRT Products, including policies and practices for increasing, decreasing, and/or shutting down production (for any amount of time greater than 24 hours), and all formulas and factors considered in making such production decisions as well as the names of the individuals with authority to implement or deviate from these policies and practices for setting production levels for CRT Products.

**NOTES:**

- For information regarding Thomson SA's subsidiaries' CPT operations in North America, *see* Notes Regarding Certain Thomson Consumer Rule 30(b)(6) Deposition Topics.

- Thomson SA's subsidiaries set production levels in Europe and Asia based on the current and projected demand for its CPTs, existing inventory levels, and its desire to earn a profit on the CPTs it manufactured over and above the high fixed costs it incurred operating its plants.

- Based on its diligent investigation conducted to date, Thomson SA is not aware of evidence indicating that it set the production levels using a rigid list of factors,

formulas, or guidelines. Instead, it primarily set production levels based on the demands of its customers and its desire to earn a profit on its CPT sales.

- Thomson SA's subsidiaries set the production levels of their plants independently. At no time were the production levels of its CPT plants based in any way on an unlawful agreement or conspiracy with any other manufacturer of CPTs.

- For information regarding Thomson SA's subsidiaries' CPT operations in North America, see Notes Regarding Certain Thomson SA 30(b)(6) Deposition Topics.

## Topic No. 38.

The method(s) used by Your Company to track production capacity for each CRT Product manufacturing facility and each manufacturing line, the method(s) used by Your Company to track inventory levels, link returns and sales, and monitor product margins of CRT Products You purchased, sold or distributed, the method(s) by which Your Company tracked shutdowns at any of Your CRT Products manufacturing facilities.

**NOTES:**

- Thomson SA's CPT subsidiaries in various locations used standard and proprietary software systems to track inventory and data related to CPT operations.

- Such information was also tracked in reports and spreadsheets that tracked margins on the CPTs it manufactured, many of which have been produced by Thomson SA in this litigation.

## Topic No. 39.

The typical amount of time and production costs it takes to produce different types of CRT tubes and the typical amount of time after manufacturing of a CRT tube was initiated until manufacturing reached the planned capacity at your manufacturing facilities, and the typical capital costs for building and improving Your CRT manufacturing facilities.

**NOTES:**

- Neither Thomson SA nor its subsidiaries manufactured CDTs during the Relevant Period. Its subsidiaries only manufactured CPTs and did not incur costs to modify its plants so that they could manufacture CDTs instead of CPTs.

- Thomson SA is not aware of a "typical" practice because the cost and time associated with bringing new CPTs to market varied throughout the Relevant Period as CPT technology and production changed.

- For information regarding Thomson SA's subsidiaries' CPT operations in North America, see Notes Regarding Certain Thomson Consumer Rule 30(b)(6) Deposition Topics.

- To the extent this topic is directed at the transition from manufacturing traditional curved CPTs to flat CPTs, Thomson SA states that between 2003 and 2005 Anagni plant began producing an increasing number of True Flat and/or wide CPTs.

**Topic No. 40.**

The production costs and typical amount of time needed to switch Your production from one type of CRT to a different type of CRT.

**NOTES:**

- Neither Thomson SA nor its subsidiaries manufactured CDTs during the Relevant Period. Its subsidiaries only manufactured CPTs and did not incur costs to modify its plants so that they could manufacture CDTs instead of CPTs.

- For information regarding Thomson SA's subsidiaries' CPT operations in North America, see Notes Regarding Certain Thomson Consumer Rule 30(b)(6) Deposition Topics.

- To the extent this topic seeks information regarding the cost and time needed to switch its CPT production from traditional curved CPTs to newer flat CPTs, Thomson SA states that it took several years and required large capital

investments for Thomson SA's subsidiaries to successfully begin producing flat CPTs.

## Topic No. 41.

Whether: (a) particular manufacturing facilities specialized in a particular CRT specification or whether multiple CRT specifications are produced at a single plant, and (b) CDTs and CPTs are, or were, produced at the same manufacturing facilities.

**NOTES:**

- Neither Thomson SA nor its subsidiaries manufactured CDTs during the Relevant Period.  Its subsidiaries only manufactured CPTs.

- For information regarding the sizes of CPTs manufactured at Thomson SA's subsidiaries in Poland, Italy, and China see Topic No. 36 above.

- For information regarding Thomson SA's subsidiaries' CPT operations in North America, *see* Notes Regarding Certain Thomson Consumer Rule 30(b)(6) Deposition Topics.

## Topic No. 42.

The extent to which a CRT made by Your Company can be used in a CRT Finished Product made by another CRT Product manufacturer, including the defendants in this litigation.

**NOTES:**

- Thomson SA's subsidiaries manufactured CPTs in industry standard sizes and sold those CPTs both internally to Thomson SA's CRT television manufacturing divisions, prior to Thomson's exit from the CRT television business in 2004, and externally to other manufacturers of CRT televisions, including certain plaintiffs and defendants in this litigation.

- For information regarding Thomson SA's subsidiaries' CPT operations in North America, *see* Notes Regarding Certain Thomson Consumer Rule 30(b)(6) Deposition Topics.

- CPTs of like size and design (rounded, true flat, widescreen) were sometimes usable interchangeably, but Thomson SA's subsidiaries also manufactured CPTs according to the particular specifications of its customers. Therefore, a CPT manufactured for one customer was not necessarily interchangeable with a CPT of like size manufactured for another customer. *See, e.g.*, TCE-CRT 0008728 (discussing particular needs for CPTs for Samsung Mexico).

## Topic No. 43.

The existence and/or function of any department at Your company with responsibility for accounting software and/or electronically stored information.

### NOTES:

- Thomson SA or its subsidiaries maintained accounting systems to track its CRT operations throughout the period it manufactured and sold CPTs. The systems formerly used to track its former CPT business are no longer in operation and are not maintained by any department of Thomson SA.

- Thomson SA exited the CRT industry in 2005 when it sold its CPT assets and most of its employees who were involved in its former CPT businesses to Videocon. Now, almost ten years after Thomson SA exited the business, information regarding any department at Thomson SA that may have had responsibility for accounting software and/or electronically stored information related to Thomson SA's former CPT businesses is not reasonably available.

## Topic No. 44.

The use and existence of third-party data sources and other sources of market share data/analyses for CRT Products.

### NOTES:

- For information regarding Thomson SA's subsidiaries' CPT operations in North America, see Notes Regarding Certain Thomson Consumer Rule 30(b)(6) Deposition Topics.

**TSA-CRT HIGHLY CONFIDENTIAL**                25

- Thomson SA obtained information about the European and Asian CPT markets through its participation in trade association activities, including EECA meetings and joint meetings between the European, Japanese, and/or Korean trade associations. *See e.g.* TSA-CRT 000034712-000034715; TSA-CRT 00000492 – 0000518; TSA-CRT 00000417-0000448.

- Thomson SA and its subsidiaries would sometimes also obtain information about the CPT market from glass component suppliers and from customers.  For example, during negotiations a customer might claim that it could obtain a particular CPT from a Thomson competitor at a certain price.  Such information might help it assess how prices for CPTs were trending in the market.  *See e.g.* TDA 00805 (Sharp providing current market pricing to Thomson sales representative in Japan regarding market prices of various sizes of CPTs); TCE-CRT 00018929 (reflecting CPT and Television market information obtained from Schott Glass).