UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917<br>Case No. C-07-5944 JST |
| This Order Relates To:<br><br>ALL DIRECT ACTION PLAINTIFFS | **ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGEMENT RELATING TO STATE LAW CLAIMS** |

## I. INTRODUCTION

Now before the Court are two motions for summary judgment asking the Court to dismiss Direct Action Purchaser ("DAP") Costco's state law claims on due process, ECF Nos. 3029 ("DP Mot."), and choice-of-law grounds, ECF No. 2997 ("COL Mot."). The parties submitted a consolidated Opposition, ECF No. 3264 ("Opp'n"), and consolidated Reply, 3469 ("Reply"), to both motions. Due to various settlements and dismissals after the filing of these motions, Costco's California claims are the only remaining claims at issue. Oral argument was held on March 28, 2016. Defendants' choice-of-law motion is GRANTED, and their due process motion is DENIED as MOOT.[1]

## II. FACTS

The history of this case is well known to parties. By way of summation, this case is predicated upon an alleged conspiracy to price-fix cathode ray tubes ("CRTs"), a core component of tube-style screens for common devices including televisions and computer monitors. This

---

[1] The Court previously filed this order provisionally under seal on April 19, 2016. ECF No. 4582. No party has filed a motion to seal any part of that order. Accordingly, pursuant to ECF No. 4477 ¶ 5, the Court now files the motion on the public docket.

conspiracy ran from March 1, 1995 to November 25, 2007 (the "Conspiracy Period"), involved many of the major companies that produced CRTs, and allegedly resulted in overcharges of billions of U.S. dollars to domestic companies that purchased and sold CRTs or products containing CRTs ("CRT Finished Products") for purposes such as personal use. A civil suit was originally filed in 2007, ECF No. 1, consolidated by the Joint Panel on Multidistrict Litigation shortly thereafter, see ECF No. 122, assigned as a Multidistrict Litigation case ("MDL") to Judge Samuel Conti, see id., and ultimately transferred to the undersigned, see ECF No. 4162.

In addition to two class actions, this MDL involves various direct actions from individual plaintiffs who have opted out of the class actions. Each DAP alleges that it bought at least one CRT Finished Product from a Defendant or an entity owned or controlled by a Defendant. The DAPs, despite their moniker, are classified as indirect purchasers under antitrust law -- not direct purchasers. Defendants bring the instant motions against DAP Costco.

Costco filed indirect purchaser claims under California law for CRT Finished Product purchases it made during the Conspiracy Period for its stores throughout the United States. Because Costco filed its lawsuit in Washington before the case was transferred to this Court, Washington's choice-of-law rules apply. In re Nucorp Energy Sec. Litig., 772 F.2d 1486, 1492 (9th Cir. 1985) (holding that courts apply the choice-of-law rules of each state where the individual actions of an MDL were originally filed). Defendants argue in their choice-of-law motion that Washington's choice-of-law rules dictate that Washington law should apply. Accordingly, they ask the Court to dismiss Costco's California claims. In their due process motion, Defendants argue that Costco's California claims should be dismissed for the independent reason that they violate due process. Insofar as Washington law applies, however, Defendants' due process motion is moot.

The instant motions turn on California's and Washington's respective contacts with the parties and the underlying transactions. In 1993, Costco merged with Price Club, a California company, and incorporated in Delaware. In 1999, however, Costco reincorporated in Washington. Costco's headquarters were located in Washington throughout the Conspiracy Period, though Costco states that some executive offices were also located in California for an unspecified

2

amount of time after the merger with Price Club.

Costco's purchases of CRT Finished Products started with a buyer located in its Washington headquarters who chose vendors and negotiated price, quantity, and time of delivery. Purchase orders were then created in and issued directly to the vendor from either Costco's headquarters in Washington or Costco's regional offices throughout the country. Once a purchase order was issued, the product was delivered directly to Costco's depots or stores. Personnel at those locations signed the bill of lading or other shipping document and accepted delivery, at which point Costco's payment obligation arose and title transferred. Payment was then remitted from Costco's Washington headquarters.[2] Costco purchased and received more than four million CRT Finished Products for its California locations using this process, more than its stores in any other state.

Although Defendants allegedly engaged in conspiratorial conduct throughout the world, Costco presents evidence that some of this activity occurred in California. For example, on June 20, 2000, San Diego-based HED(US) employee Yuri Mitsumoto circulated an email containing future production capacity plans of competitor American Matsushita Electronics Company. See ECF No. 3265-8, Ex. 29. In addition, on July 24, 2001, Mitsumoto sent HED(US) employee Tom Heiser an email confirming that he "talked with Samsung Chunghwa sales manager on the phone" and reported to Heiser the CRT pricing plans he had obtained. See ECF No. 3265-8, Ex. 28. Finally, Hirokazu Nishimaya from Panasonic testified that he exchanged "production information and capacity" with Hitachi employees at a trade-association meeting in La Quinta, California. ECF No. 3265-8, Ex. 32 at 508:20-514:13.

## III. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

---

[2] For a more detailed description of Costco's purchasing processes, see generally, ECF No. 3264-1 (Shavey Decl.).

3

1    accord Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). "A party asserting that a fact
2    cannot be or is genuinely disputed must support the assertion by" citing to depositions, documents,
3    affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party also may show that such
4    materials "do not establish the absence or presence of a genuine dispute, or that an adverse party
5    cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is
6    "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-
7    moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is
8    "material" if the fact may affect the outcome of the case. Id. at 248. "In considering a motion for
9    summary judgment, the court may not weigh the evidence or make credibility determinations, and
10   is required to draw all inferences in a light most favorable to the non-moving party." Freeman v.
11   Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). However, unsupported conjecture or conclusory
12   statements do not create a genuine dispute as to material fact and will not defeat summary
13   judgment. Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).

14   For claims on which the defendant does not carry the ultimate burden of persuasion,
15   defendant as the moving party has the burden of producing evidence that negates an essential
16   element of each claim on which it seeks judgment or showing that the plaintiff cannot produce
17   evidence sufficient to satisfy the burden of proof at trial. See Nissan Fire & Marine Ins. Co. v.
18   Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies its initial burden of
19   production, then the nonmoving party must produce admissible evidence to show that a genuine
20   issue of material fact exists. Id. at 1102-1103. The non-moving party must "identify with
21   reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91
22   F.3d 1275, 1279 (9th Cir. 1996). "Specific citations, not bulk references, are essential to pinpoint
23   key facts and factual disputes. [A] district court [i]s not required to put the puzzle together from a
24   boxful of facts, and . . . may permissibly decide the motion without mining [an] entire document
25   for more substantiation" when a citation offers only a "breezy reference" to a part of an "82-page
26   report" not otherwise cited or explained in briefing. Stanislaus Food Products Co. v. USS-POSCO
27   Indus., 803 F.3d 1084, 1094-95 (9th Cir. Oct. 13, 2015). "A mere scintilla of evidence will not be
28   sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving

party must introduce some significant probative evidence tending to support the complaint." Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation omitted).  If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**IV.  DISCUSSION**

For the reasons provided below, the Court will grant Defendants' choice-of-law motion. This ruling moots the due process motion, so the Court declines to address the merits thereof.

Where there is an actual conflict between the laws or interests of Washington and that of another state, Washington follows the "most significant relationship test" from the Restatement (Second) on Conflict of Laws.  Johnson v. Spider Staging Corp., 87 Wash. 2d 577, 580 (1976) (citing Restatement (Second) of Conflict of Laws § 145 (1971)).  Here, an actual conflict exists because California allows indirect purchaser suits, whereas Washington does not.  Accordingly, the Court must determine which state -- California or Washington -- has the most significant relationship by comparing those states' contacts with the occurrence and the parties.  Id.  In performing that analysis, the goal "is not merely to count contacts, but rather to consider which contacts are most significant and to determine where these contacts are found."  Id. at 581.

The "most relevant relationship test" requires a comparison of each state's contacts with (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered.  Id. at 580-81.

As a preliminary matter, Costco argues Defendants' California-based conspiratorial conduct is the most important contact to consider in the choice-of-law analysis.  There is some support for its position.  See id. § 145, cmt. c ("If the primary purpose of the tort rule involved is to deter or punish misconduct . . . the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship"); id., cmt. e (stating that "the place where the conduct occurred is given particular weight" where there is "no one clearly demonstrable place of injury").  Here, however, Defendants did not focus their collusive activity

5

in any particular state; rather, their conspiratorial conduct allegedly spanned the globe. Further,

> where the acts of the defendants take place in a different state than that where the plaintiff suffered injury, the local law of the state of injury will be applied unless some other state, which would usually be the state where the defendants acted, has a more significant relationship to the occurrence and the parties with respect to the particular issue.

Id., § 172, cmt. b (emphasis added). The place of injury is particularly important, moreover, because where, as here, "two or more persons are liable to a third person for the acts of each other . . . [t]he applicable law will usually be the local law of the state where the injury occurred." Id., § 172(2). The place of Costco's injury is therefore the most important contact in the choice-of-law analysis.

Plaintiffs bringing antitrust claims "are deemed to be injured in the states where they agreed to pay inflated prices for products." In re TFT-LCD (Flat Panel) Antitrust Litig., MDL No. 1827, 2012 WL 3727221, at *3 (N.D. Cal. Aug. 27, 2012). It is undisputed that Costco agreed to pay and paid inflated prices from its Washington headquarters. See COL Opp'n at 3; see also ECF No. 3264-1 ("Shavey Decl.") ¶ 12. Costco was therefore injured in Washington.

Costco argues that its place of injury was California because it bought and sold more CRT Finished Products in California than in any other state; because it issued purchase orders for these products, in part, from its California offices; because Costco purchased a significant amount of CRT Finished Products from California-based vendors, and because title transferred to Costco when the CRT Finished Products were delivered, many of which were delivered to California locations. These considerations, however, bear no legal weight. See also In re TFT-LCD (Flat Panel) Antitrust Litig., No. C 11-0058 SI, 2011 WL 3809767, at *3 (N.D. Cal. Aug. 29, 2011) (citing Pecover v. Electronic Arts Inc., 633 F. Supp. 2d 976, 984 (N.D.Cal.2009); In re Graphics Processing Units Antitrust Litig. ("GPU"), 527 F. Supp. 2d 1011, 1027–29 (N.D. Cal.2007)) ("Thus, the ultimate destination of the panels does not have any part in Costco's antitrust injury or in its state-law claims."). Rather, as Judge Illston found in LCD, Washington is the place of injury because

> [a]lthough sales of . . . products in California may constitute a

> significant portion of Costco's business, those products were selected in Washington, the negotiation over the terms of purchase took place in Washington, the invoices were sent to Washington, and payment issued from Costco's Washington headquarters. . . . [T]hese events are all more significant to Costco's claims than the issuance of a purchase order.

In re TFT-LCD (Flat Panel) Antitrust Litig., No. C 11-0058 SI, 2011 WL 5922966, at *2 (N.D. Cal. Nov. 28, 2011). Accordingly, the "place of injury" factor weighs heavily in favor of granting Defendants' motion.

Next, the Court examines the place of Defendants' conduct. Costco claims that the conspiratorial conduct "was focused in California." Costco Opp'n at 19. Although there is evidence that some conspiratorial activity occurred in California, the vast majority of the conduct causing Costco's injury took place outside of California. This factor therefore does not weigh in favor of either side.

The Court next looks at the domicile, residence, nationality, place of incorporation, and place of business of the parties. Although Costco was incorporated in Delaware early on in the conspiracy, it was headquartered and incorporated in Washington for the vast majority of the Conspiracy Period. None of the Defendants were headquartered or incorporated in California or Washington.

Costco notes that where the interest affected "is a business or financial one, such as in the case of unfair competition, . . . the place of business is the more important contact." Restatement (Second) of Conflict of Laws § 145, cmt. e (1971). Costco, however, did business across the country. Moreover, even if "during the early years of the [Conspiracy] Period, Costco maintained executive functions in both California and Washington," Costco COL Opp'n at 20, Costco's Washington operation was much more substantial and continued throughout the Conspiracy Period. In addition, whereas Costco's contacts with California were limited only to those CRT product purchases destined for California stores, Washington directed the purchase of every CRT product that Costco made for its stores across the country. This factor therefore weighs in favor of granting Defendants' motion.

Finally, the Court looks to the place where the relationship between the parties was centered. The purchase of CRT Finished Products was controlled by Costco's headquarters in

7

Washington, and payment was remitted from Washington.  Thus, even though California offices were involved in the purchasing process for CRT Finished Products destined for California stores, Costco's relationship with Defendants was centered in Washington.  See also LCD, 2011 WL 3809767, at *4 ("[T]he relationship between [Costco and the LCD defendants] was centered in Washington.").

While the parties' contacts with California were not insubstantial, "the facts that Costco is located in Washington, that Costco was injured in Washington, and that the relationship between the parties was centered in Washington lead the Court to conclude that Washington law governs Costco's claims." Id. at *4-5.

## V.   CONCLUSION

Defendants' choice-of-law motion is GRANTED, and Costco's California claims are dismissed.  Defendants' due process motion on Costco's California claims is DENIED as MOOT.

IT IS SO ORDERED.

Dated:  April 19, 2016

_____
JON S. TIGAR
United States District Judge