UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917 |
|---|---|
| | Case No. C-07-5944 JST |
| This Order Relates To: | **ORDER ON ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS RE: INDIRECT PURCHASER PLAINTIFF SETTLEMENTS** |
| ALL INDIRECT PURCHASER ACTIONS | |

The Court has previously approved eight settlements, resolving all cases brought by the Indirect Purchaser Plaintiffs ("IPPs"). See ECF Nos. 992 (Chunghwa for $10,000,000), 2542 (LG Electronics for $25,000,000), 4712 ("IPP Settlement Order") (Philips for $175,000,000, Panasonic for $70,000,000, Hitachi for $28,000,000, Toshiba for $30,000,000, Samsung SDI for $225,000,000, and Thomson and TDA for $13,750,000).[1]

Now before the Court is a motion for approval of attorneys' fees, reimbursement of expenses incurred by Class Counsel for the IPP class, and incentive awards for certain named plaintiffs, ECF No. 4071 ("Mot."), as framed by the Report and Recommendation from Special Master Martin Quinn. See ECF No. 4351 ("R&R"). Class Counsel for the IPPs originally sought $192,250,000 (33.3 percent) of an aggregate common fund of $576,750,000, but Special Master Quinn instead recommended the Court award $173,025,000 (30 percent) in attorneys' fees, plus $7,634,372.50 in expenses, and $450,000 in aggregate incentive awards to individual plaintiffs.

---

[1] The Court uses the same abbreviations for corporate defendants it used in its prior order. . See, e.g., IPP Settlement Order at 2-3 nn. 2-9 (incorporating by reference the definition and abbreviation of all names of corporate defendants). The Court has not fully resolved all matters related to the Chunghwa settlement. See id. at 37. Even so, the Court has enough information to determine a proper fee award now.

See R&R at 77.  The R&R sparked numerous objections: one from Mr. Mario Alioto, Lead Counsel for IPPs, and the remainder from non-party objectors.[2]  The Court also ordered disclosure of certain billing records, ECF Nos. 4508, 4522, which led to further briefing.[3]  The Court held oral arguments on March 15, 2016 and April 19, 2016.  Following oral arguments, Class Counsel filed additional evidence at the direction of the Court in support of the notice costs for the separate Chunghwa settlement.  See ECF Nos. 4572 at 2 ¶ 2, 4584, 4592.

For the reasons set forth below, the Court grants the motion for attorneys' fees, reimbursement, and incentive awards as modified by the R&R.  However, the Court lowers the fees as originally requested by Class Counsel from 33.3 percent of the common fund to 27.5 percent of the common fund.  Accordingly, the Court awards Class Counsel an aggregate fee award of $158,606,250.  The Court further awards $7,634,372.50 in expenses and $450,000 in aggregate incentive awards to certain individual plaintiffs.

I.  **BACKGROUND**

The parties are familiar with the facts of this case.  The Special Master sets them out in detail, see R&R at 5-17, and the Court has already summarized the relevant facts as to the settlements or adopted relevant portions of the R&R in the IPP Settlement Order.

As related to fees, expenses, and incentive awards, Lead Counsel moves the Court to provide for these expenditures from the aggregated common fund, valued at $576,750,000. Special Master Quinn recommends an award of $173,250,000 in Attorneys' Fees.  This represents 30 percent of the aggregate value of all eight settlements, and a fee multiplier of roughly 2.14 (using a lodestar as recalculated at current rates and then reduced 10 percent by Special Master Quinn).  Lead Counsel also requests reimbursement of expenses in the amount of $7,364,372.50. Finally, Lead Counsel requests incentive awards on behalf of twenty-five (25) Court-appointed

---

[2] Briefs objecting to the R&R include ECF Nos. 4400 ("IPP Obj."), 4401 ("Clifton Obj."), 4384 ("Saik Obj."), 4101 ("Hull Obj."); 4436 ("RU Obj."); 4437 ("C-S Obj."); 4439 ("St. John Obj."); 4440 ("Bonsignore Obj."), and 4466 ("Williams Obj.").  The Hull objection is actually an objection litigated before Special Master Quinn but incorporated by reference any objections re-made in response to the publication of the R&R.  See ECF No. 4394 at 1. Responsive briefs include ECF Nos. 4449 ("IPP Resp.") and 4431 ("C-S Resp.").
[3] ECF Nos. 4545-4 ("C-S Supp. Obj."), 4558 ("IPP Supp. Resp.").

2

Class Representatives[4] and another fifteen (15) named plaintiffs who were not appointed by the Court but acted as state representatives for a period of time.[5] Lead Counsel requests that those in the former group receive $15,000 each, totaling $375,000, and that those in the latter group receive $5,000 each, totaling an additional $75,000. All told, the aggregate incentive award requested is $450,000, which is 0.07 percent of the grand total of the litigation fund.

## II. LEGAL STANDARD

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. Id. at 942. "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." Id. "Applying this calculation method, courts [in the Ninth Circuit] typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." Id. (citing Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)). However, the benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." Six (6) Mexican Workers, 904 F.2d at 1311. "[W]here awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should

---

[4] Brian Luscher, Jeffrey Figone, Steven Ganz, Lawyer's Choice Suites, Inc., David Rooks, Daniel Riebow, Travis Burau, Southern Office Supply, Inc., Kerry Lee Hall, Lisa Reynolds, David Norby, Barry Kushner, Charles Jenkins, Steven Fink, Gloria Comeaux, Craig Stephenson, Janet Ackerman, Louise Wood, Patricia Andrews, Gary Hanson, Jeff Speaect, Albert Sidney Crigler, Margaret Slagle, John Larch, and Brigid Terry.

[5] Frank Warner, Samuel Nasto, Carman Gonzales, Dana Ross, Ryan Rizzo, Misti Walker, Comad Carty, Bedrock Management Company, Inc., Brady Lane Cotton, Colleen Sobotka, Steven Hawley, Daniel Hergert, Chad Klebs, Donna Marie Ellingson, and Jerry Cook.

3

Case 4:07-cv-05944-JST Document 4745-3 Filed 08/04/16 Page 4 of 20
Case 3:07-cv-05944-JST Document 4740 Filed 08/03/16 Page 4 of 20

adjust the benchmark percentage or employ the lodestar method instead." Id.; see also In re Bluetooth Headset Products Liab. Litig., 654 F.3d at 942 (citing Six (6) Mexican Workers, 904 F.2d at 1311). A district court's "award of fees and costs to class counsel, as well as its method of calculation" are reviewed for abuse of discretion. In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 942 (9th Cir. Feb. 27, 2015).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted). An attorney seeking an expense award should file an itemized list of her expenses by category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. Wren v. RGIS Inventory Specialists, No. 06-cv-05778-JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), supplemented, No. 06-cv-05778-JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

Finally, "named plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). "Incentive awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. W. Pub. Corp., 563 F.3d 948, 958-59 (9th Cir. 2009). Further,

> The district court must evaluate [incentive] awards individually, using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation.

Staton, 327 F.3d at 977 (citation, internal quotation marks, and alterations omitted). District courts must scrutinize "all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1165 (9th Cir. 2013); see also id. at 1663; Staton, 327 F.3d at 977; Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 334-35 (N.D. Cal. 2014).

Here, the Court reviews these questions as framed by Special Master Quinn's Report and

Recommendations and the objections to it. The Court reviews Special Master Quinn's findings of fact and conclusions of law de novo, and his rulings on procedural matters for abuse of discretion. See ECF No. 4077 at 7, amended by ECF No. 4298 at 3. The Ninth Circuit "usually impose[s] the burden on the party objecting to a class action settlement." See United States v. Oregon, 913 F.2d 576, 581 (9th Cir. 1990).

### III. DISCUSSION

#### A. Attorneys' Fees

Class Counsel move the Court for $173,025,000 in aggregate attorneys' fees (as adjusted by Special Master Quinn).[6] Mot. at 1. This revised fee request represents 30 percent of the overall $576,750,000 settlement fund.

##### 1. Proper Methodology

In determining the appropriate fee to be taken from a common fund settlement, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method." Bluetooth, 654 F.3d at 942. As "the benefit to the class is easily quantified in common-fund settlements," the Court here exercises its discretion "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." Id.[7]

##### 2. Benchmark Analysis

In the Ninth Circuit, the "benchmark" percentage for an award of attorneys' fees in a class action is 25 percent. Id.. This benchmark is just a starting place, however, and the Court must determine the appropriate percentage by "tak[ing] into account all of the circumstances of the case." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002). Typically, the Court analyzes the following factors in performing its analysis: (1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill,

---

[6] This order does not decide how the aggregate fee is to be allocated among the many firms that represented the class. "The Special Master reserved jurisdiction on the issue of allocation of attorneys' fees to decide after the Court issues its final award on approval of the settlement and attorneys' fees/costs and incentive awards." R&R at 11 n.14.
[7] Cooper and Scarpulla argue that "the Special Master erred in applying the percentage-of-the-fund method," C-S Obj. at 11, but cite no case in support of this argument. The objection is overruled.

5

experience, and performance of counsel (both sides); (4) the contingent nature of the fee; and (5) fees awarded in comparable cases. See id. at 1048-49; Bluetooth, 654 F.3d at 941-42.[8] These factors are known as the "Kerr factors." Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000) (citing Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.1975), abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557, 112 S.Ct. 2638(1992)).

### a. Results Achieved for the Class

The most important factor is the results achieved for the class. See In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); Bluetooth, 654 F.3d at 942. Outstanding results merit a higher fee. See Omnivision, 559 F. Supp. 2d at 1046 (awarding a fee of 28 percent where class counsel achieved "triple the average recovery in securities class action settlements"). On the other hand, "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." Hensley v. Eckerhart, 461 U.S. 424, 440 (1983).

As the Court previously noted in its order approving the IPP settlement, the result here – $576,750,000 – represents a large sum of money. ECF No. 4712 at 10. But the reason the settlement is so large is that the injury was so large; the settlement represents 20 percent of an antitrust injury that Plaintiffs' counsel estimated to be $2.78 billion before trebling.[9] See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 339 (3d Cir. 1998) ("In many instances the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel.") (citations omitted). Thus, the settlement represents a good result, but not one on par with the 50 percent of potential recovery achieved in the LCD

---

[8] Kerr applied these factors to the lodestar analysis. Vizcaino reviews a case where the lodestar method was used, but the analysis appears to relate to the percentage method. Omnivision cites Vizcaino and expressly applies the factors to the percentage-of-the-fund method. In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Special Master Quinn also evaluates the factors with respect to the percentage method. See R&R at 55-69. As the analysis is the same as applied to either method and it helps the Court evaluate "all the circumstances of the case[,]" Vizcaino, 290 F.3d at 1048, the Court considers the factors here.

[9] As the Special Master noted, the settlement also provides for non-monetary compensation in the form of cooperation agreements, which will assist IPP counsel in concluding their actions against remaining defendants. R&R at 56.

6

litigation, In re TFT-LCD (Flat Panel) Antitrust Litig., No. 07-md-1827 SI, 2013 WL 1365900, at *7 (N.D. Cal. Apr. 3, 2013), or the settlement in Omnivision, in which counsel obtained "triple the average recovery" for that kind of case, Omnivision, 559 F. Supp. 2d at 1046. In those cases, the courts awarded 28.6 percent and 28 percent, respectively. LCD, 2013 WL 1365900 at *20; Omnivision, 559 F. Supp. 2d at 1046.

Some objectors argue that the results achieved for the class were deficient because certain class members were required to surrender their claims but received no compensation. See, e.g., Hull Obj. at 4-5. Also, individuals in three states that permit the recovery of damages by indirect purchasers – the so-called omitted repealer states of Massachusetts, Missouri, and New Hampshire – received no compensation. See, e.g., St. John Obj. at 6. The Court has already addressed these criticisms in the context of the approval of the overall IPP settlement. ECF No. 4712. Turning to these criticisms' relationship to the fee request, the Court agrees that Class Counsel would have achieved a better result for the class if they had obtained compensation for the omitted repealer states. However, because Class Counsel's failure to do so lowered the size of the total settlement fund, thereby lowering the proportional fee that could be awarded to Class Counsel, the Court concludes that a reduction in the percentage used to calculate the attorneys' fees is unnecessary.

Overall, the Court concludes that the results obtained for the class support a modest increase over the Ninth Circuit benchmark.

### b.  Complexity of the Case

The Court agrees with the Special Master's analysis of the complexity of the case, as well as his conclusion that the risk and expense to counsel of litigating it was significant, and no one has objected to his analysis or conclusions. The Court adopts the relevant discussion in the R&R at 59-60. As did the Special Master, the Court concludes that this factor weighs slightly in favor of an upward adjustment of the 25 percent benchmark for attorneys' fees.

### c.  Skill, Experience, and Performance of Counsel

The Special Master concluded that, with certain exceptions addressed in the R&R, "the entire record of the litigation viewed fairly demonstrates that Class Counsel managed this case diligently and efficiently for the benefit of the class." R&R at 60. In support of this conclusion,

7

he pointed to Lead Counsel's 30 years of experience in antitrust cases, as well as his management of the class action among the various participating law firms. Id. at 60-61. As noted, the "prosecution of the case was divided in a sensible way among class counsel law firms, both by defendant and by task." Id. at 61. "Class Counsel was superb at coordinating the class effort so that the team remained united in its objectives, and avoided squabbling over strategy, finances, personalities, and the like." Id. As the case approached trial, Lead Counsel retained three very experienced antitrust trial firms, which deepened Class Counsel's bench by "add[ing] focus, intensity and recent trial experience." Id. at 63-64.

Notwithstanding this finding, the Special Master found that this factor supported neither an increase to nor a decrease from the Ninth Circuit's 25 percent benchmark. Id. at 64. He was not troubled by either Class Counsel's failure to obtain recovery for the omitted repealer states or the release of certain claims without compensation. He found, however, that Class Counsel's failure to integrate the Chunghwa plan of allocation with the notice plan adopted for the settlements as a whole "tarnish[ed] somewhat the glow of success that Lead Counsel might otherwise bathe in." Id. at 63. The Court agrees with these conclusions.

### d. Contingent Nature of the Fee

The Court agrees with the Special Master's analysis of the contingent nature of the fee and adopts it. See R&R at 66-67. Some objectors complain that the case was made easier for Class Counsel by government enforcement actions, which increased the likelihood that plaintiffs would achieve a certain degree of success, and that made the case less contingent. See, e.g., Clifton Obj. at 7. Objectors make a similar point with regard to the decision by the European Commission, which found the existence of a conspiracy and leveled fines equivalent to more than $1 billion, ECF No. 4108-15 at 5, and the Delaware Chancery Court's order in Vichi v. Koninklijke Philips Elec., N.V., 85 A.3d 725 (Del. Ch. 2014), giving preclusive effect to the European Comission decision. See, e.g., St. John Obj. at 11-14. The objections have some force because these decisions increased the legal risk for defendants. But the fact remains that it was Class Counsel's multi-year litigation effort, and not these other events, that produced the settlement in this case. This was a sprawling, eight-year litigation defended vigorously by aggressive, competent antitrust

counsel. Most of the defendants did not plead guilty to any antitrust violation, and most were prepared to prove that they did not participate in any conspiracy and that whatever conspiracy was proven inflicted no damage on the class. In other words, the actual litigation risks borne by Class Counsel as chronicled by the R&R were significant, and the out-of-pocket costs of undertaking and maintaining the litigation were unusually high, justifying the Special Master's conclusion that "this factor weighs strongly in favor of an increase from the Ninth Circuit 25% benchmark for attorney's fees." R&R at 67.

### e. Award in Comparable Cases

Finally, the Court reviews fees awarded in comparable cases. SRAM awarded 30 percent. In re: Static Random Access Memory (SRAM) Antitrust Litigation, Case No. 07-md-1819-CW (N.D. Cal. June 30, 2011) (Dkt. No. 1370). DRAM awarded 25 percent. In re Dynamic Random Access Memory (DRAM) Antitrust Litig., M-02-1486, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007), at *1. ODD awarded 30 percent to attorneys for each of two classes. In re Optical Disk Drive Antitrust Litig., Case No. 10-md-2143 RS (N.D. Cal. July 23, 2015) (Dkt. No. 1658); id., Dkt. No. 1841, (N.D. Cal. April 14, 2016). But most similar to the facts of this case is LCD. There, Judge Illston awarded 30 percent for some class settlements, see In re TFT-LCD (Flat Panel) Antitrust Litig. ("LCD"), No. 07-md-1827 SI, 2011 WL 7575003, at *1 (N.D. Cal. Dec. 27, 2011); LCD II, No. 07-md-1827 SI, 2013 WL 149692, at *1-2 (N.D. Cal. Jan. 14, 2013) (30 percent), but only awarded 28.6% for the IPP class, which received the largest IPP recovery in history for any case of this kind. See LCD III, No. 07-md-1827 SI, 2013 WL 1365900, at *7-8 (N.D. Cal. Apr. 3, 2013).

On balance, the Court finds on one hand that the complexity, risk, and contingent nature of the fee all suggest an award above the 25 percent benchmark. On the other hand, the size of the settlement as a percentage of the total potential recovery, the awards in comparable cases, and the need to conduct further litigation and provide additional notice related to the Chunghwa settlement – which will have the effect of delaying implementation of the overall settlement – suggest that any increase be modest in size. The Court finds that a fee of 27.5 percent strikes a fair balance, and thus concludes the Kerr factors justify an aggregate fee of $158,606,250.

### f. The "Megafund Principle"

Because the settlement is large enough to constitute a "megafund," the Court cannot merely apply the Kerr factors to determine an appropriate fee. "[W]here awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." Six (6) Mexican Workers, 904 F.2d at 1311. Some objectors urge the Court either not to use a percentage-of-recovery method, or to reduce the award, because this is a megafund case. See, e.g., Hull Obj. at 6; Saik Obj. at 5-10.

Rather than abandon the percentage-of-recovery method, the best way to guard against a windfall is first to examine whether a given percentage represents too high a multiplier of counsel's lodestar. See Vizcaino, 290 F.3d at 1052-54 (conducting a survey of attorneys' fees in "megafund" cases and finding that 83 percent of such cases award a multiplier from 1.0-4.0)). In Wal-Mart Stores, for example, the court awarded fees constituting only 6.5 percent of a $3.05 billion fund, but the multiplier was 3.5. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 106, 123 (2d Cir. 2005). In High-Tech, Judge Koh approved a 10.5 percent aggregate fee, with a multiplier of 2.5. In re High-Tech Employee Antitrust Litig., No. 11-CV-02509-LHK, 2015 WL 5158730, at *11-12 (N.D. Cal. Sept. 2, 2015).

In the present case, the Court does not need to reduce the fee award below the 25 percent benchmark to achieve a reasonable multiplier. Unlike some megafund cases, this one did not result in a huge payout to the class after the passage of little time or the expenditure of little effort. Class Counsel worked for eight years and fought almost to the edge of trial. A multiplier of 2.14, as recommended by Special Master Quinn, would fit well within the Vizcaino parameters, as would the multiplier of 1.96 that results from this Court's fee award. Any objections based on the megafund principle are accordingly overruled.

### 3. Lodestar Comparison

The Court performs a lodestar cross-check to ensure the reasonableness of its selected percent-of-the-fund award. To "determin[e] the amount of a reasonable fee" a court takes "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."

10

Hensley, 461 U.S. at 433 (1983). A district court must then "exclude from this initial fee calculation hours that were not 'reasonably expended.'" Id. at 434 (citation omitted). Even so, when determining the correct number of hours and fees associated with proper billing for those hours, "the determination of fees 'should not result in a second major litigation'" and "trial courts need not, and indeed should not, become green-eyeshade accountants." Fox v. Vice, 563 U.S. 826, 838, (2011) (quoting Hensley, 461 U.S. at 437). Rather, the Court seeks to "do rough justice, not to achieve auditing perfection." Fox, 563 U.S. at 838.

The Court has already addressed the parameters of a reasonable cross-check fee multiplier once the underlying lodestar is determined. See supra, sec. III.A.2.f. Here, the Court examines the Special Master's conclusions as to Class Counsel's billing rates and hours in light of concerns raised by objectors to determine an appropriate lodestar. The Court then evaluates the lodestar multiplier created by the selected percentage of the settlement fund.

### a. Billing Rates

The first question in determining an appropriate lodestar is whether counsel's billing rates are reasonable. In determining the proper billing rate,

> courts must "[refer] to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." Davis v. City and County of San Francisco, 976 F.2d 1536, 1545 (9th Cir. 1992). Additionally, courts must consider the ability of counsel, the amount involved, customary charges for similar services, and the results obtained to determine a reasonable fee. Oberfelder v. City of Petaluma, [No. 98-cv-1470 MHP, 2002 WL 472308, at *4 (N.D. Cal. Jan. 29, 2002) aff'd sub nom. Oberfelder v. Bertoli, 67 F. App'x 408 (9th Cir. 2003)].

Lopez v. San Francisco Unified Sch. Dist., 385 F. Supp. 2d 981, 988 (N.D. Cal. 2005). "[T]he fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." Jordan v. Multnomah Cty., 815 F.2d 1258, 1263 (9th Cir. 1987). The Civil Local Rules also require "a brief description of relevant qualifications and experience and a statement of the customary hourly charges of each

11

such person or of comparable prevailing hour rates or other indication of value of the services." Civil L.R. 54-5(b) (emphasis added).

Special Master Quinn evaluated the evidence submitted by counsel, surveyed recent cases in which attorneys' billing rates were at issue, and found the Class Counsel's billing rates to be reasonable. See R&R at 69-70. He found that billing rates between $350 and $875 are reasonable within this legal market for cases of this size, type, and complexity. Finally, he applied current, not historic, billing rates "in order to account for the delay of up to eight years for some firms in receiving payment." Id. at 55 (citing Fischer v. Equitable Life Assur. Soc., 307 F.3d 997 (9th Cir. 2002)).

Objectors raise several concerns regarding the proposed billing rates, which the Court now addresses.

### i. Average Rates Are Too High

Objector Clifton agrees with the Special Master's conclusions regarding the billing rates, but argues that once a multiplier is applied, counsel's average hourly rate becomes $948.02 However, at current rates and including the Special Master's reduction, the proposed lodestar represented an average rate of $443 per hour prior to application of the multiplier. See Clifton Obj. at 6. As a result, this is really an objection to the use of a multiplier, not to Class Counsel's hourly rates, and the Court overrules the objection.

Objector St. John also objects that even if this was a complex case, the results were good, and quality of representation was high, those facts are already reflected in the high hourly rates charged by counsel, and therefore no multiplier should be awarded. See St. John Obj. at 6-7. This objection fails to consider that Class Counsel took the case on contingency, and that the litigation has been pending for eight years. Had Class Counsel recovered nothing for the class, the labor they expended for those years would have gone uncompensated. As the Supreme Court observed nearly 30 years ago, "an enhancement for contingency, whether calculated as an increase in the reasonable hourly rate used to arrive at the lodestar or added to the lodestar as a bonus or a multiplier, is not designed to be a 'windfall' for the attorney of the prevailing party. Rather, it is designed to ensure that lawyers who take cases on contingent bases are properly compensated for

12

1 the risks inherent in such cases." Pennsylvania v. Delaware Valley Citizens' Council for Clean
2 Air, 483 U.S. 711, 753 (1987). The Court overrules this objection.

### ii. Contract Attorneys' Fees

Objector St. John objects that Class Counsel used contract attorneys to prosecute the case, and paid them at contract attorney rates, but assigned much higher hourly rates to those lawyers for purposes of calculating Class Counsel's lodestar. See St. John Obj. at 2-3; see also Clifton Obj. at 6. The Special Master reviewed the evidence in support of this objection and concluded that there was "not the slightest justification to downgrade [contract attorneys'] billing rates or not apply a multiplier to them." R&R at 73. Objectors now renew their objection.

The courts have not spoken with one voice concerning the proper treatment of contract attorney costs in the calculation of a lodestar. Many courts hold that contract attorneys' hours should be billed at market rates and included in the lodestar without regard to the wage actually paid to the contract attorney. See, e.g., Charlebois v. Angels Baseball LP, 993 F. Supp. 2d 1109, 1124 (C.D. Cal. 2012); In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F.Supp.2d 249, 272 (D.N.H. 2007). In the view of these courts, "[t]he lodestar calculation is intended not to reflect the costs incurred by the firm, but to approximate how much the firm would bill a paying client." Tyco Int'l, 535 F. Supp. 2d at 272. Accordingly, "it is not objectionable *per se* . . . to apply a multiplier to a lodestar that includes work performed by contract attorneys, even though the profit margin for the firms employing them was greater than the profit margin the firms would have had for work done by full-time employees." Carlson v. Xerox Corp., 596 F. Supp. 2d 400, 410 (D. Conn. 2009), aff'd, 355 F. App'x 523 (2d Cir. 2009). Not surprisingly, this is the position taken by Class Counsel. See IPP Resp. at 35 ("[I]f the contract lawyer is billed as just another lawyer whose work makes up the fee for the matter, the firm may bill the client any reasonable rate for the services just as it does for one of its associates.") (quoting Legal Ethics, Law. Deskbk. Prof. Resp. § 1.5-4(e) (2015-2016 ed.)).

Some courts, by contrast, are unwilling to calculate a lodestar at higher associate market rates when contract attorneys themselves billed at much lower rates. See, e.g., City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp., 954 F. Supp. 2d 276, 280 (S.D.N.Y. 2013).

13

1  The reasoning of these courts is that some tasks in document-intensive litigation can and should be
2  performed by "low-cost, low-overhead" contract attorneys, "and there is absolutely no excuse for
3  paying those temporary, low-overhead employees $40 or $50 an hour and then marking up their
4  pay ten times for billing purposes." In re Citigroup Inc. Sec. Litig., 965 F. Supp. 2d 369, 395–96
5  (S.D.N.Y. 2013). Also, "a sophisticated client, knowing these contract attorneys cost plaintiff's
6  counsel considerably less than what the firm's associate attorneys cost (in terms of both salaries
7  and benefits) would have negotiated a substantial discount in the hourly rates charged the client
8  for these services." City of Pontiac, 954 F. Supp. 2d 276.

9  The Court need not weigh in on this conflict, however, because even if the Court were to
10 reduce the Plaintiffs' lodestar to reflect the contract attorneys' lower billing rates, the multiplier
11 that would result would still be well within an acceptable range. For example, if the Court were to
12 reduce the lodestar by another 15 percent to account for the use of contract attorneys, the total
13 lodestar would be $68,907,433.82, and the multiplier would be 2.3. A lodestar reduction is
14 unnecessary when the effect on the multiplier is not material. See Carlson, 596 F. Supp. 2d at 409
15 (D. Conn.) ("[I]f the charges for the contract attorney time were decreased, the multiplier in this
16 case would still be a reasonable multiplier.").

### b. Hours

18 Class Counsel recorded 183,000 hours on this case through May 2015, when the settlement
19 was reached. The Court agrees with Special Master Quinn that the number of hours was necessary
20 given the size and scope of the litigation. See R&R at 71. The hours also compare favorably with
21 the LCD case, which required 313,000 hours over six years – about 70 percent more time. See id.
22 The Court also agrees that Class Counsel's staffing decisions minimized duplication of effort. Id.
23 at 72.

24 Special Master Quinn found that the time was recorded "in a professional, detailed manner
25 by almost all lawyers[,]" with the rare exception of two unspecified more senior counsel. Id. He
26 reached this conclusion after receiving detailed submissions from each of the 50 class counsel
27 firms, breaking down hours by year, timekeeper, and categories. He also received raw billing
28 entries for each firm and spot-audited 50 months of billing from "a range of about eight class

14

1 counsel firms." R&R at 71.

2     Objectors level several criticisms at this conclusion: (1) that time recorded in quarter-hour increments should be reduced, C-S Supp. Obj. at 3; (2) that the Court should reduce the lodestar to account for "block billing," C-S Supp. Obj. 5; (3) that "time entries that demonstrate unproductive time should be eliminated from the lodestar computation," C-S Supp. Obj. at 6; (4) that "Lead Counsel's unnecessary fight with the California Attorney General should not be charged to the class," C-S Supp. Obj. at 6; (5) that "a significant number of the firms whose lodestars were included in the Special Master's computation did no substantive work that benefitted the settlement classes," C-S Supp. Obj. at 7; and (6) that "the lodestars of the late-added trial counsel and counsel who made no financial contribution to the litigation should be subject to a multiplier," C-S Supp. Obj. at 7.

    The Special Master has already addressed most of these objections, and the Court adopts his analysis in full, but adds a few additional observations. With regard to the third objection, no objector has suggested the amount by which the lodestar should be reduced, or even identified a significant number of entries showing "unproductive time." Moreover, the Special Master already reduced the overall lodestar "10% across-the-board to account for inefficiencies and work that did not benefit the class," ECF No. 4351 at 4, so this objection has already been accounted for. In support of their fifth objection, Objectors state only that because the Special Master opined that "the real work of the case was limited to about sixteen firms that billed over $2 million," C-S Supp. Obj. at 7 (quoting ECF No. 4351 at 72), the efforts put in by all the remaining firms were "not real work." Id. This *ipse dixit* assertion is not supported by reference to actual billing entries, and it simply cannot be the case that all the work by firms whose billings fell below an artificial threshold did nothing to advance the case. Moreover, even if there were merit to the objection, it has already been addressed by the Special Master's lodestar reduction.

    These objections are overruled.

                  **c.    Lodestar Reduction and Cross-Check**

    Special Master Quinn recognized that "there are bound to be inefficiencies and wasted time for which it is appropriate to make an across-the-board reduction to the lodestar," and in

15

consideration of the "rocky relationship between IPP counsel and the California Attorney General" and problematic features of the allocation plan, he therefore recommended a 10 percent across-the-board reduction. Id. at 73-74. At current rates, this reduces the lodestar from $90,075,076.90 to $81,067,569.20. The Court agrees with the Special Master's analysis of the bills submitted by Class Counsel and the proposed solution, and adopts the R&R on this point. Applying this lodestar to a 27.5 percent fee of $158,606,250 results in a multiplier of 1.96, which is well within the range of acceptable multipliers.

### 4. Fees as a Percentage of Costs

The attorneys' fees recommended by the Special Master, as well as those adopted by this order, were both calculated as a percentage of the entire settlement before the deduction of costs. Objector Clifton recognizes that Ninth Circuit cases support this approach, Clifton Obj. at 7 (citing Online DVD, 779 F.3d at 946; Staton v. Boeing Co., 327 F.3d 938, 974-75 (9th Cir. 2003)), but nonetheless objects on the ground that this approach "essentially gives class counsel a commission on their own expenses." Clifton Obj. at 8. He asks that the Court instead calculate the fee on the settlement fund after expenses have been deducted.

The Court cannot sustain an objection that is unsupported by Ninth Circuit law. The objection is overruled.

### 5. Other Objections

To the extent any objections remain which have not been explicitly or implicitly addressed by the foregoing, these objections are overruled.

## B. Expenses

Class Counsel originally requested a total of $7,670,525.57 in reimbursable expenses. Lead Counsel established a Litigation Expense Fund which collected $2,405,000 from certain IPP firms. The Court also authorized payments of certain funds from the Settlement Fund into a Future Expense Fund to pay for then-future litigation costs, totaling $6,250,000. See ECF Nos. 1334, 2618, 2944, 3524. Together, Class Counsel have spent $6,900,878.02 from these two funds. In addition, IPP firms have separately incurred $733,494.48 for individual expenses such as travel, photocopying, overnight mail, computer research, and filing fees that were not billed to either the

1   Litigation Expense Fund or the Future Expense Fund.[10]  Counsel now seeks approval of the

2   $4,495,878.02 already paid from the Future Expense Fund, as previously authorized by the

3   Court,[11] and reimbursement of the balance of $3,174,647.55 that they advanced themselves as part

4   of the Litigation Expense Fund or the "individual expenses."  See Mot. at 29; ECF No. 4071-1 ¶¶

5   134-36.  The aggregate itemized claimed costs from the Litigation Expense Fund and the Future

6   Expense Fund, per ECF No. 4071-14 at 2-3, were as follows:

|     |                           |                |
| --- | ------------------------- | -------------- |
| 1.  | Expert witnesses:         | $5,767,600.46  |
| 2.  | Special Masters:          | $171,481.80    |
| 3.  | Mediation costs:          | $25,555.00     |
| 4.  | Document management:      | $636,931.13    |
| 5.  | Translation costs:        | $142,500.08    |
| 6.  | Court Reporters:          | $125,874.69    |
| 7.  | Deposition related costs: | $18,865.78     |
| 8.  | Court filing fees:        | $3,696.10      |
| 9.  | Witness fees:             | $264.47        |
| 10. | Service of Process:       | $1,136.73      |
| 11. | Conference call costs:    | $1,487.40      |
| 12. | Miscellaneous:            | $5,484.38      |
|     | Total:                    | $6,900,878.02  |

Two objections were raised related to the payment of these expenses.  The first objection echoes Objector Clifton's objection regarding the calculation of fees before the deduction of expenses, see supra section III.A.4., adding only that the notice should have clearly set forth the method of calculation.  See C-S Obj. at 13-14.  The Court finds the notice did warn class members that up to one-third of the settlement fund plus litigation expenses could be awarded during or following the Fairness Hearing.  See, e.g., ECF Nos. 3862-6 at 2, 3876-3 at 7-9, 3929-1 at 5-10, 3934 (approving claim form).  This objection is overruled.

---

[10] IPPs originally requested $769,647.55 in expenses.  After the Court expressed serious concerns about the travel and personal reimbursement expenses submitted by counsel for the DPPs, Lead Counsel performed a review of this request which "was meticulous and conservative."  See R&R at 74-75.  The Special Master was satisfied with this review, which removed $36,153.07 from the cost, and the Court is satisfied as well.

[11] Of the monies initially authorized, $1,754,121.98 remains in the Future Expense Fund.  The Court approves of IPPs' proposal that such monies be retained to fund ongoing litigation and file a supplemental report after ongoing litigation is concluded to account for the monies retained.  As Lead Counsel proposes, "[t]o the extent additional money remains in the Fund at the end of the litigation, the money will become part of the common fund for distribution to the class."  IPP Resp. at 48.

1    Second, Messrs. Cooper and Scarpulla argue that a complete "accounting of the sources

2  and uses of all funds expended in the prosecution of the action should be undertaken to determine

3  the appropriate reimbursable out-of-pocket expenses." See C-S Supp. Obj. at 1-2; see also id. at

4  8-9. The issues they raise, however, turn out on close inspection not to be problematic. See IPP

5  Supp. Resp. at 15. Lead Counsel has adequately explained the few entries that Cooper and

6  Scarpulla question. Id. This objection is overruled.

7    The Court finds the expenses to be fair and reasonable, approves the $4,495,878.02 already

8  paid from the Future Expense Fund, and grants the motion for the reimbursement in the reduced

9  amount of $3,174,647.55.

10   **C.    Incentive Awards**

11   "Incentive awards are payments to class representatives for their service to the class in

12  bringing the lawsuit." Radcliffe, 715 F.3d at 1163. "It is well-established in this circuit that

13  named plaintiffs in a class action are eligible for reasonable incentive payments, also known as

14  service awards." Wren v. RGIS Inventory Specialists, No. 06-cv-05778 JCS, 2011 WL 1230826,

15  at *31 (N.D. Cal. Apr. 1, 2011), supplemented, No. 06-cv-05778 JCS, 2011 WL 1838562 (N.D.

16  Cal. May 13, 2011). An incentive award of $5,000 is presumptively reasonable, and an award of

17  $25,000 or even $10,000 is considered "quite high." See Dyer, 303 F.R.D. at 335 (citing Harris v.

18  Vector Mktg. Corp., No. 08-cv-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)).

19   Nonetheless, a higher award may be appropriate where class representatives expend

20  significant time and effort on the litigation and face the risk of retaliation or other personal risks;

21  where the class overall has greatly benefitted from the class representatives' efforts; and where the

22  incentive awards represent an insignificant percentage of the overall recovery. ECF No. 4399 at

23  4-5; Wren, at *32. With regard to the Direct Purchaser Plaintiff ("DPP") settlement, the Court

24  previously approved an incentive award of $25,000 per Class Representative. ECF No. 4299 at 4.

25   Class Counsel request $15,000 for each of 25 Court-appointed class representatives and

26  $5,000 for an additional 15 named plaintiffs not appointed by the court but who acted as state

27  representatives for a period of time before being replaced. This totals $450,000 (0.07% of the

28  settlement fund). Id. The Special Master approved this request after considering the factors set

18

forth above, R&R at 75-76, and no one has objected to his recommendation. The Court approves these payments.[12]

Objector Bonsignore has asked that several more names be added to the "additional named plaintiffs" list, including that of a potential Massachusetts client. Bonsignore Obj. at 12. These persons were never class representatives and never provided "service to the class in bringing the lawsuit." Radcliffe, 715 F.3d at 1163. The Court construes Bonsignore's request as an objection, and overrules it.

The Court authorizes total incentive payments of $450,000 as set forth above.

## IV. CONCLUSION

The Court orders as follows:

1. The Court hereby grants the request for attorneys' fees in the amount of $158,606,250, which will be paid from the settlement fund to Class Counsel. Class Counsel shall submit a plan for allocation among the 50 firms in the first instance to Special Master Quinn. The schedule for those proceedings shall be set at the discretion of the Special Master.

2. The Court approves the $4,495,878.02 already paid from the Future Expense Fund, and grants reimbursement of all claimed expenses in the amount of $3,174,647.55.

3. The Court approves the requested incentive awards in the aggregate amount of $450,000. The incentive awards shall be paid from the Settlement Fund.

4. Notwithstanding any other provision of this order, no funds are to be distributed until the Court lifts the stay described in the IPP Settlement Order at page 37, or by further order of the Court.

5. The Court expressly approves the distribution of incentive awards as described herein, and up to $500,000 previously approved for Class Counsel's notice costs in connection

///

///

---

[12] One named plaintiff filed an objection, requesting that the Court pay named plaintiffs a full 1 percent of the aggregate settlements. See ECF No. 4484. Such a vastly disproportionate payment of $5,767,500 is excessive on its face. To juxtapose, the total, aggregate payment to all IPPs' experts was $5,767,600.46. The objection is overruled, and the request is denied.

19

1  with the pending portion of the Chunghwa settlement.  No other funds are authorized for

2  distribution at this time.

3      IT IS SO ORDERED.

4  Dated:  August 3, 2016

                             JON S. TIGAR
                         United States District Judge