BRAD BRIAN (State Bar No. 079001)
brad.brian@mto.com
GREGORY J. WEINGART (State Bar No. 157997)
gregory.weingart@mto.com
SUSAN E. NASH (State Bar No. 101837)
susan.nash@mto.com
E. MARTIN ESTRADA (State Bar No. 223802)
martin.estrada@mto.com
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone:      (213) 683-9100
Facsimile:      (213) 687-3702

*Attorneys for Defendant LG Electronics, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **SEALED EXHIBITS A - F AND PUBLIC EXHIBITS G - I TO DECLARATION OF CATHLEEN H. HARTGE IN SUPPORT OF DEFENDANT LG ELECTRONICS, INC.'S MOTION FOR BIFURCATION AND BENCH TRIAL** |
| *Sears, Roebuck and Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514 | |
| | Judge:  Honorable Jon S. Tigar |
| | Date:  September 22, 2016 |
| | Time:  2:00 p.m. |
| | Courtroom:  9, 19th Floor |

**EXHIBITS A – I TO DECLARATION OF CATHLEEN HARTGE IN SUPPORT OF DEFENDANT LG ELECTRONICS, INC.'S MOTION FOR BIFURCATION AND BENCH TRIAL**

# EXHIBIT A

## FILED UNDER SEAL

# EXHIBIT B

## FILED UNDER SEAL

# EXHIBIT C

## FILED UNDER SEAL

# EXHIBIT D

# FILED UNDER SEAL

# EXHIBIT E

## FILED UNDER SEAL

# EXHIBIT F

## FILED UNDER SEAL

# EXHIBIT G

Page 1

1                    UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
2                      SAN FRANCISCO DIVISION
                   CASE NO. 3:07-CV-05944-SC
3                        MDL NO. 1917
4
5    IN RE: CATHODE RAY TUBE (CRT)
6    ANTITRUST LITIGATION
7    _____
8    This Document Relates to:
9    ALL ACTIONS
10   _____/
11
12                         Kenny Nachwalter, P.A.
                           201 South Biscayne Boulevard
13                         Suite 1100
                           Miami, Florida 33131
14                         Tuesday, November 4th, 2014
                           12:58 p.m. - 1:45 p.m.
15
16            DEPOSITION OF PATRICK BARRETT
17        as 30(b)(6) representative of Hitachi, Ltd.
18
19           Taken before Beverly Bourlier James,
20    Registered Professional Reporter, Certified Realtime
21    Reporter and Notary Public in and for the State of
22    Florida at Large, pursuant to Notice of Taking
23    Deposition filed in the above-mentioned cause.
24
25

1    Electronic Devices (USA), Inc. to increase or

2    decrease prices for the CRTs sold by Hitachi

3    Electronic Devices (USA), Inc.?

4         A.    No.

5         Q.    During the relevant period, did Hitachi

6    Displays, Ltd. have the ability to determine or

7    modify budgetary decisions made by Hitachi Electronic

8    Devices (USA), Inc.?

9         A.    No.

10        Q.    Between January 1, 1995 and September 30,

11   2002, what was the percentage amount, if any, of

12   Hitachi, Ltd.'s ownership share in Shenzhen SEG

13   Hitachi Color Display Devices, Ltd.?

14        A.    Hitachi, Ltd. had a 25 percent ownership

15   share in Shenzhen SEG Hitachi Color Display Devices,

16   Ltd. from January 1, 1995 to September 30, 2002.

17        Q.    Between October 1, 2002 and November 7,

18   2007, what was the percentage amount, if any, of

19   Hitachi, Ltd.'s ownership share in Shenzhen SEG

20   Hitachi Color Display Devices, Ltd.?

21        A.    Hitachi, Ltd. had no ownership share of

22   Shenzhen SEG Hitachi Color Display Devices, Ltd. from

23   October 1, 2002 to November 7, 2007.

24        Q.    Between October 1, 2002 and November 7,

25   2007, what was the percentage amount, if any, of

Page 29

1    Hitachi Display, Ltd.'s ownership share in Shenzhen

2    SEG Hitachi Color Display Devices, Ltd.?

3          A.      Hitachi Displays, Ltd. had a 25 percent

4    ownership share in Shenzhen SEG Hitachi Color Display

5    Devices, Ltd. from October 1, 2002 to November 7,

6    2007.

7          Q.      When, if ever, did Hitachi, Ltd. sell its

8    ownership share in Shenzhen SEG Hitachi Color Display

9    Devices, Ltd.?

10         A.      Hitachi, Ltd.'s Display Group was spun off

11   to form Hitachi Displays, Ltd. on October 1, 2002.

12   At that time, Hitachi, Ltd.'s ownership share in

13   Shenzhen SEG Hitachi Color Display Devices, Ltd. was

14   transferred to Hitachi Displays, Ltd.

15         Q.      When, if ever, did Hitachi Displays, Ltd.

16   sell its ownership share in Shenzhen SEG Hitachi

17   Color Display Devices, Ltd.?

18         A.      Hitachi Displays, Ltd. sold its minority

19   ownership share in Shenzhen SEG Hitachi Color Display

20   Devices, Ltd. through an agreement executed on

21   November 8, 2007.

22         Q.      Between January 1, 1995 and November 7,

23   2007, did Hitachi, Ltd. have the ability to remove

24   officers or directors at Shenzhen SEG Hitachi Color

25   Display Devices, Ltd.?

```
                                                    Page 39

 1                  C E R T I F I C A T E

 2

 3      STATE OF FLORIDA:

 4      COUNTY OF MIAMI-DADE:

 5

 6              I, the undersigned authority, certify that

 7      PATRICK BARRETT personally appeared before me on

 8      November 4, 2014 and was duly sworn by me.

 9

10              WITNESS my hand and official seal this 4th

11      day of November, 2014.

12

13

                            BEVERLY BOURLIER JAMES

14                          My Commission #EE091768

                            Expires September 9th, 2015

15

16

17

18

19

20

21

22

23

24

25
```

Page 40

1                    C E R T I F I C A T E

2

3        STATE OF FLORIDA:

4        COUNTY OF MIAMI-DADE:

5                I, BEVERLY BOURLIER JAMES, a Notary Public

6        for the State of Florida at Large, hereby certify

7        that I reported the deposition of PATRICK BARRETT;

8        and that the foregoing pages constitute a true and

9        correct transcription of my shorthand report of the

10       deposition by said witness on this date.

11               I further certify that I am not an attorney

12       or counsel of any of the parties, nor a relative or

13       employee of any attorney or counsel connected with

14       the action nor financially interested in the action.

15               WITNESS my hand and official seal in the

16       State of Florida, this 4th day of November, 2014.

17

18                     _____

19                     BEVERLY BOURLIER JAMES

                       Registered Professional Reporter

20                     Certified Realtime Reporter

                       Certified LiveNote Reporter

21                     Florida Professional Reporter

                       NCRA Realtime Systems Administrator

22

23

24

25

# EXHIBIT H

Page 1

```
 1        IN THE UNITED STATES DISTRICT COURT

 2          NORTHERN DISTRICT OF CALIFORNIA

 3             SAN FRANCISCO DIVISION

 4     _____

 5     IN RE: CATHODE RAY TUBE (CRT) )

 6     ANTITRUST LITIGATION          ) No. 3:03-cv-05944 SC

 7                                    ) MDL No. 1917

 8     _____

 9     This Document Relates to:     )

10     ALL PENDING ACTIONS           )

11     _____

12

13

14        VIDEOTAPED DEPOSITION OF WAYNE PARK

15             Los Angeles, California

16           Tuesday, November 17, 2015

17                  Volume I

18

19

20

21     Reported by:

22     JUDITH A. MANGO

23     CSR No. 5584

24     Job No. 2187495

25     PAGES 1 - 148
```

CERTIFIED TRANSCRIPT

1   CRT, which Zenith used to buy from Toshiba.

2       Q    And do you recall buying CRTs from Toshiba

3   in 1999?

4       A    In 1999 I got out of Zenith, so I cannot

5   tell.  But before, we bought from.                10:22:13

6       Q    When did you leave Zenith in 1999?

7       A    End of '98 I left.

8       Q    And where did you go?

9       A    LG -- back to LG Electronics.  At that time

10  I was transferred to the appliance OEM division    10:22:28

11  located in Chicago area.

12      Q    Who informed you of your transfer out of

13  Zenith?

14      A    Michael Ahn notified me that I'm being

15  transferred out of Zenith.                         10:22:49

16      Q    And would that have come from above him at

17  LG, from Mr. Cho or from Mr. Koo?

18      A    Yeah.

19           MR. ESTRADA:  Objection; calls for

20  speculation.                                       10:23:00

21           THE WITNESS:  Executive level movement is

22  always reported and approved by CEO.

23  BY MR. RANDALL:

24      Q    And did you know whether Mr. Koo approved

25  that transfer for you in 1998, 1999?               10:23:10

1    Q    Could LG headquarters tell you what price

2   to set for a Zenith CRT-based television?

3    A    They -- they cannot, because -- I have to

4   be clear.  We -- we might be a little bit confused.

5        When I was doing the sales-related job in    14:02:59

6   2001, 2000, Zenith stopped manufacturing TV sales --

7   TV product and Zenith outsourced its TV product.

8        So I have to make -- if I have to sell TV

9   at a certain price, and if it -- the loss is too

10  big, then I would rather reduce the volume or    14:03:33

11  renegotiate with the outsourcing factory to cut the

12  cost down.

13       If they cannot cut the cost down, then I

14  would probably reduce the volume to reduce the limit

15  of the loss to -- to make my business plan P&L, not    14:03:51

16  target.

17   Q    Let me ask you about that, because you

18  mentioned when you went back to Zenith in 2000 --

19   A    Uh-hmm.

20   Q    -- Zenith was no longer making its own    14:04:03

21  tubes; is that right?

22   A    Right.

23   Q    So at that point Zenith was outsourcing the

24  making of televisions, CRT-based televisions --

25   A    Uh-hmm.    14:04:14

1      Q      -- and the tubes that would go into those

2    CRT-based televisions; is that right?

3      A      Uh-hmm.

4      Q      Before that point in time Zenith was making

5    its own tubes --                                          14:04:23

6      A      Yes.

7      Q      -- is that right?

8            And I think you testified that there was a

9    certain percentage of large size tubes, 32-inch,

10   36-inch, that were made by Toshiba.                       14:04:34

11     A      Yes, I recall that.

12     Q      Was that a major percentage of the

13   CRT-based televisions sold by Zenith?

14     A      No.  As you have seen in the exhibit in the

15   past, it was like -- target quantity was like a           14:04:45

16   hundred thousand units of 32-inch and 40,000 units

17   in the 36-inch.

18            Generally the target quantity is the

19   optimistic number, right?  So the actual production

20   per year must have been smaller than that.  And that      14:05:06

21   number is a very small portion of Zenith's total

22   business volume.  Very small portion.

23     Q      When you say "very small portion," what

24   percentage would you put as an estimate?

25     A      Estimate, less than ten percent, I should        14:05:20

1    say.

2        Q    Now, after the point when you came back in

3    2000, Zenith was no longer making its own tubes and

4    they were outsourcing that production.

5        A    Uh-hmm.                                    14:05:37

6        Q    Where, geographically speaking, did they

7    outsource their production?

8        A    In North America, either -- mostly in

9    Mexico border area, U.S./Mexico border area.

10       Q    Why was it important that the outsourcing   14:05:53

11   happen in North America?

12       A    The biggest reason was the NAFTA tariff.

13   NAFTA imposed import duty of five percent for every

14   TV set we are importing out of North Ameri -- North

15   American territory.                                 14:06:16

16            And, as I told you, in this

17   highly-competitive TV market where operating budget

18   is so thin, five percent gap is a very big

19   disadvantage.  And also TV price is always eroding.

20   But if you buy from offshore, from Far East, Asia,  14:06:36

21   you have longer lead time, meaning you have a higher

22   risk of price erosion longer than other people and

23   also shipping cost addition.

24            So all the economy reasons dictate --

25   almost dictate you buy from North American facility. 14:06:53

Page 148

1          I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby

3    certify:

4          That the foregoing proceedings were taken

5    before me at the time and place therein set forth;

6    that any witnesses in the foregoing proceedings,

7    prior to testifying, were administered an oath; that

8    a record of the proceedings was made by me using

9    machine shorthand which was thereafter transcribed

10   under my direction; further, that the foregoing is a

11   true record of the testimony given.

12          Further, that if the foregoing pertains to

13   the original transcript of a deposition in a Federal

14   Case, before completion of the proceedings, review

15   of the transcript [ ] was [ ] was not requested.

16          I further certify I am neither financially

17   interested in the action nor a relative or employee

18   of any attorney or any party to this action.

19          IN WITNESS WHEREOF, I have this date

20   subscribed my name.

21

22   Dated: 12/1/2015

23

24                     JUDITH A. MANGO

25                     CSR No. 5584

# EXHIBIT I

# United States District Court

### WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| COSTCO WHOLESALE CORPORATION, | **JUDGMENT IN A CIVIL CASE** |
| Plaintiff, | CASE NUMBER:  C13-1207RAJ |
| v. | |
| AU OPTRONICS CORPORATION, AU OPTRONICS CORPORATION AMERICA, LG DISPLAY CO., LTD., and LG DISPLAY AMERICA, INC., | |
| Defendants. | |

__X__ **Jury Verdict**. This action came before the Court for a trial by jury.   The issues have been tried and the jury has rendered its verdict.

____ **Decision by Court**.  This action came to consideration before the Court.  The issues have been considered and a decision has been rendered.

THE COURT HAS ORDERED THAT

Based on the jury's October 23, 2014 verdict and the court's June 4, 2015 findings of fact and conclusions of law, the court enters judgment for Plaintiff and against Defendants for $61,971,040.

Dated this 4th day of June, 2015.


WILLIAM M. MCCOOL
Clerk


/s Lynn Kandziora
Deputy Clerk