ANDREA VALDEZ (Cal. Bar No. 239082)
530 S. Lake Avenue, No. 574
Pasadena, CA 91101
Tel: (626) 817-6547
andrea.valdez.esq@gmail.com

JOSEPH SCOTT ST. JOHN (*pro hac vice*)
514 Mockingbird Drive
Long Beach, MS 39560
Tel: 410-212-3475
jscottstjohnpublic@gmail.com

*Attorneys for Objector Douglas W. St. John*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 3:07-cv-5944 JST |
| | MDL No. 1917 |
| | **OBJECTOR DOUGLAS W. ST. JOHN'S MOTION FOR ATTORNEY'S FEES AND EXPENSES** |
| This Document Relates To: All Indirect Purchaser Actions | Date: Thursday, September 22, 2016 Time: 2 p.m. Courtroom: 9 Judge: Hon. Jon S. Tigar |

**NOTICE OF MOTION AND MOTION FOR**
<u>**ATTORNEY FEES AND EXPENSES**</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 22, 2016, at  or as soon thereafter as the Court may order, Objector Douglas W. St. John will move the Court for an award of attorney fees in the amount of 1.5% of the benefit attributable to his efforts, i.e., $216,281, plus interest; reimbursement of litigation expenses in the amount of $3,407.11; and additional relief regarding unascertained Special Master fees.

This motion is brought pursuant to Federal Rules of Civil Procedure 23(h), 54(b) and 54(d)(2). The grounds for the motion are: (a) such fees are fair and reasonable in light of Mr. St. John's efforts in conferring a substantial benefit upon the class; (b) the requested fees comport with Ninth Circuit law in common fund cases; and (c) the expenses for which reimbursement is sought were reasonably and necessarily incurred in connection with Mr. St. John' s objection. This motion is based on this Notice of Motion and Motion; the supporting Memorandum of Points and Authorities; the accompanying Declarations of Joseph Scott St. John ("St. John Dec.") and Andrea Valdez ("Valdez Dec."); and any further papers filed in support of this motion, the argument of counsel, and all pleadings and records on file in this matter.

**PLEASE TAKE FURTHER NOTICE** that the undersigned consents to disposition of this motion on the papers in accordance with Local Rule 7-1(b).[1]

---

[1] The Special Master's Appointment Order provides the scope of his reference:

Pursuant to Rule 53(b)(2)(A), the Special Master shall adjudicate all designated posttrial matters. These matters shall include assisting the Court with the approval of the pending settlements in the Indirect-Purchaser Cases, the determination of a fair, reasonable, and adequate aggregate award of attorneys' fees and the reimbursement of expenses to all ***plaintiffs' counsel***, a fair and reasonable division of the aggregate award among plaintiffs' counsel, and service awards to the named plaintiffs, including any objections to these matters, and dealing with any other matters that the Court may direct him to undertake.

Order (D.E. 4077) (emphasis added) *as amended* (D.E. 4298). The Court correctly classed Mr. St. John as a "non-party objector[]" rather than a plaintiff. Order (D.E. 4740) at 2; *see also, e.g.,* Fed. R. Civ. P. 4(a). Accordingly, Mr. St. John's motion for attorney fees does not fall within the matters referred to the Special Master.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

The Court reduced the Special Master's recommended fee award to IPP Counsel by over $14 million. The primary basis for that reduction appears to be that the result achieved by IPP Counsel supports only "a modest increase over the Ninth Circuit benchmark." More specifically, the Court concluded that "the size of the settlement as a percentage of the total potential recovery [and] the awards in comparable cases . . . suggest that any increase [over the benchmark] be modest in size." In contrast, the Special Master concluded the result achieved "weighs heavily in favor of an upward adjustment." The different conclusions reached by the Court and the Special Master derive from their different factual findings.

It does not appear that the Special Master's factual findings were clearly erroneous, and IPP Counsel concede as much. The Court was therefore empowered to revisit those findings only as a result of Mr. St. John's successfully moving to amend the Special Master's Appointment Order to provide for de novo review. *See, e.g.*, *United States v. Hinkson*, 585 F.3d 1247, 1250 (9th Cir. 2009) (en banc). Accordingly, Mr. St. John is entitled to a reasonable attorney's fee in light of the $14 million reduction in class counsel's fee award. *See Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012). That Mr. St. John accomplished his mission—more funds for the class, less for the lawyers—via a procedural mechanism does not alter that conclusion.

### LEGAL STANDARDS

"Under certain circumstances, attorneys for objectors may be entitled to attorneys' fees from the fund created by class action litigation." *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012) ("*Rodriguez II*"). Indeed, if the efforts of objectors "result in an increase to the common fund, the objectors may claim entitlement to fees on the same equitable principles as class counsel." *Id*. A reduction in class counsel's claim for attorneys fees is just such an increase to the common fund. *Id*. at 559. When an objector's efforts benefit the fund by reducing class counsel's award of attorney's fees, the court errs if it denies that objector's request for fees. *Id*. at 659-660.

**ARGUMENT**

I.  **MR. ST. JOHN IS ENTITLED TO FEES FOR THE $14,418,750 BENEFIT HE PROVIDED TO THE CLASS.**

    A.  **The Court's factual conclusions differed from those of the Special Master, resulting in a $14,418,750 reduction in IPP Counsel's fee award.**

        In making his fee recommendation, the Special Master correctly focused on the result achieved for the class, which is the most important factor justifying any fee award in excess of the 25% benchmark. R & R (D.E. 4351) at 56-57. But in doing so, he focused on the sheer size of the $576 million settlement. *Id.* Indeed, the Special Master expressly discounted objectors' concerns that the settlement amounts to only 20% of the class's estimated damages, finding that the settlement "measures up well" against the settlement in the *LCD* litigation, a significantly larger settlement that amounted to nearly 50% of the class's estimated damages. *Id.* at 56. The Special Master then characterized the settlement in this case as an "extraordinary achievement" before finding that the result "weighs <u>heavily</u> in favor of an upward adjustment of the Ninth Circuit 25% benchmark." *Id.* at 56, 59 (emphasis in original). Maintaining his blinkered focus on the size of the settlement, the Special Master again emphasized the "unarguably superb result of recovering . . . the second largest indirect purchaser price fixing settlement in history" before concluding that "a fee award of 30% of the settlement fund, or $173,025,000, is appropriate." *Id.* at 69.

        The Court was more measured. Order (D.E. 4740). Taking an approach opposite that of the Special Master, the Court focused on the middling recovery as a portion of damages. Indeed, on the same record, the Court expressly found that "the reason the settlement is so large is that the injury was so large; the settlement represents 20 percent of an antitrust injury that [IPP Counsel] estimated to be $2.78 billion before trebling." *Id.* at 6. The Court then found that "the settlement represents a good result, but not one on par with the 50 percent of potential recovery achieved in the *LCD* litigation or the settlement in *Omnivision*, in which counsel obtained 'triple the average recovery' for that kind of case" *Id.* at 6-7. In contrast to the Special Master's conclusion that the size of the settlement "weighs heavily in favor of an upward adjustment," the Court found support for only "a modest increase over the Ninth Circuit benchmark." *Id.* at 7. More specifically, the Court noted that "the size of the settlement as a percentage of the total potential recovery [and] the awards in

comparable cases . . . suggest that any increase [over the benchmark] be modest in size." *Id.* at 9. The Court then concluded that an award of 27.5% of the settlement fund, or $158,606,250, to be appropriate. *Id.* at 9. The Court's award was $14,418,750 less than the award recommended by the Special Master.[2]

**B.    The Court presumably relied on its de novo review to make factual findings differing from those of the Special Master.**

The factual findings underlying the Court's fee award differ from the Special Master's findings in key respects, including the Court's overall characterization of the settlement as "good, but not on par" with the settlements in the *LCD* case or the *Omnivision* case. Indeed, that characterization—whether the result achieved is extraordinary, superb, or good—is itself a question of fact. *See Sorenson v. Mink*, 239 F. 3d 1140, 1147 (9th Cir. 2001). Unless the Court concludes that the Special Master's findings were clearly erroneous, the different factual findings must be attributable to the Court's de novo review of IPP Counsel's fee request.

The standard of review—de novo vs. clear error—governs the very "power" of a reviewing court to reach particular issues. *United States v. Hinkson*, 585 F.3d 1247, 1250 (9th Cir. 2009) (en banc). Any standard of review other than de novo limits the reviewing court's power "to substitute [its] view of the facts, and the application of those facts to the law, for that of the [tribunal under review]."

Here, the Court originally adopted the clear error standard of review proposed by IPP Counsel. *See* Order Appointing Special Master (D.E. 4077) at 7. Under that standard, the Court could revisit the Special Master's factual findings **only** if it found those findings "illogical,

---

2        The Court's reasoning was consistent with Mr. St. John's arguments. In his objection, Mr. St. John argued, among other things, that IPP Counsel's request for 33% of the $576,750,000 fund was excessive because "the size of the settlement fund was driven by the pervasive nature of CRT products and a class that included nearly every household in 21 states." St. John Obj. (D.E. 4106) at 13 & n.6 (citing Census statistics). Thus, "the size of the settlement fund in this case provides little if any evidence" of the exceptional results that must underlie such a massive fee award. *Id.* Mr. St. John maintained that point in his Objection to the Special Master's R & R re Fees (D.E. 4406) at 9 n.5. He again made the same point in his Shortened Objection to the Special Master's R & R re Fees (D.E. 4439) at 6, noting "the not-particularly-extraordinary results of this case: settlements amounting to only 20% of untrebled damages, and only about 25% greater than the statutory penalties in the small state of Mississippi alone."

implausible, or without support in the record." *Rodriguez II*, 688 F.3d at 653 (citing *Hinkson*, 585 F.3d at 1262); *see also Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").[3]

## C.   The Court was empowered to conduct a de novo review of the Special Master's factual findings only because Mr. St. John successfully moved to alter the standard of review.

Although the Court did not fully disclose its reasoning in revisiting the Special Master's factual findings, it does not appear that his findings were so far afield as to be clearly erroneous. IPP Counsel concede as much during meet-and-confer preceding this motion. The Court was thus empowered to review the Special Master's factual findings only as a result of Mr. St. John's successfully moving to amend the Special Master's Appointment Order to provide for de novo review.

As noted above, the Court originally adopted the clear error review proposed by IPP Counsel. *Compare* Proposed Order (D.E. 4032-2) at 4 *with* Order (D.E. 4077) at 7 ("Appointment Order"). But shortly after filing his objection, Mr. St. John moved to amend the Appointment Order to provide for de novo review of the Special Master's factual findings. Motion to Amend (D.E. 4203) at 7-9. Class counsel opposed Mr. St. John's motion. IPP Op. (D.E. 4227). No other objector participated in Mr. St. John's motion, although the Scarpulla-Cooper objectors filed a joinder to make sure their objection would also be subject to de novo review. *See* Joinder in Part (D.E. 4221).

In his Motion to Amend, Mr. St. John argued that Rule 53 requires the consent of the parties for the Special Master's findings to be subject to clear error review, and IPP Counsel were unable to provide the requisite consent. *Id.* The Court agreed. Order (D.E. 4298) at 3; *see also* Hr'g Tr. (D.E. 4266) 19:1-3 ("[I]t would make my life easier if you didn't have to have de novo review, but I think that's what the rule requires . . . ."). The Court accordingly ordered that "the Court shall review findings of fact made or recommended by the Special Master de novo." Order (D.E. 4298) at 3. The

---

[3]      Were the Court to conclude that the Special Master's findings on such a basic yet key question as the result achieved by IPP Counsel were so flawed as to be clearly erroneous, i.e., the findings were illogical, implausible, or without support in the record, it would raise doubt as to continuing the Special Master's reference. It would also raise doubt as to the Special Master's compensation. *See, e.g., Glidden Co. v. Hellenic Lines, Ltd.*, 315 F. 2d 162, 164 n.1 (2d Cir. 1963).

Court's power to revisit the Special Master's findings and reduce IPP Counsel's fee award by over $14 million is a direct consequence of that order.

The Ninth Circuit addressed objector causation in *Rodriguez v. West Pub. Co.*, 563 F. 3d 948 (9th Cir. 2009) (*Rodriguez I*). In that case, the district court found that objectors "'did not add anything' to its decision to deny incentive awards," and denied fees on that basis. *Id.* at 963. The Ninth Circuit found that finding clearly erroneous, noting that the district court "was not focused on the incentive agreements before Objectors took exception to them." *Id.* It thus remanded the issue and instructed the district court "to reconsider the extent to which Objectors added value . . . and award attorney's fees accordingly." *Id.*

In this case, the causation is far stronger than it was in *Rodriguez I*. Mr. St. John did not merely focus the Court's attention on a problem. Rather, Mr. St. John successfully induced the Court to alter an existing order so as to provide for de novo review of the Special Master's findings. The Court then relied on that standard of review to alter the Special Master's findings and reduce IPP Counsel's fee award.

### D.    Mr. St. John is entitled to a fee award because he realized a substantial pecuniary benefit to the class.

Mr. St. John's altering the standard of review from clear error to de novo was highly significant. *See, e.g.*, *United States v. Boyd*, 55 F.3d 239, 242 (7th Cir. 1995) (suggesting "there are operationally only two degrees of review, plenary . . . and deferential."); Michael E. Tigar, FEDERAL APPEALS: JURISDICTION & PRACTICE § 5.03 (2d ed. 1993) ("The standard of review is among the most important factors influencing the decision about whether to take an appeal. Where the appellate court has considerable latitude to change the result below, an appeal is more attractive . . . ."). Indeed, Mr. St. John effected a change in the Court's <u>power</u> that resulted in a $14,418,750 benefit to the class. Whether measured in absolute terms or in comparison to Mr. St. John's fee request, the $14,418,750 benefit is clearly substantial. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (explaining that objectors who produce an "improvement in the settlement more than the fee they are seeking" conferred a substantial benefit and are entitled to attorney's fees). That Mr. St. John's ultimate victory resulted from a procedural motion does not affect that analysis: Mr. St. John

achieved his goal of reallocating funds from IPP Counsel to the class. *See, e.g.*, *Lewis v. Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982) ("[E]ven if a plaintiff does not ultimately prevail, attorneys' fees are nonetheless awardable if his action creates a substantial benefit.").

Judge Breyer recently awarded fees to an objector under analogous circumstances in *In re Transpacific Passenger Air Transportation Antitrust Litigation*, No. 07-05634, 2015 WL 4776946 (N.D. Cal. Aug. 13, 2015). In that case, the objector's substantive objections were overruled. *Id.* at *1 n.1. The objector prevailed, however, in having the court disallow class counsel's untimely addition of $1,021,882.28 in expenses, an issue which the objector first raised at the fairness hearing. *See id.* at *1. Judge Breyer nevertheless awarded the objector $90,000 in attorney fees. *Id.* at *2. In doing so, he acknowledged her counsel's concession that "very little" time was spent identifying the untimely expenses, but he credited her counsel's argument that "it would have been quite impossible . . . to raise the Rule 23(h)(1) violation with the Court if her attorneys had not spent the initial 200+ hours preparing a timely objection and defending Ms. Yang from . . . discovery." *Id.* at *2.

Like in *Transpacific*, Mr. St. John's specific objections to the Special Master's Report & Recommendation were overruled. But the Court nevertheless reached the result Mr. St. John was aiming for—more funds for the class, less for the lawyers—and the Court relied on the procedural effect of Mr. St. John's altering the standard of review to do so. Also like in *Transpacific*, it would have been quite impossible for Mr. St. John to raise that procedural point had his counsel not spent hundreds of hours preparing a timely objection, defending Mr. St. John from discovery, and drafting the successful procedural motion itself.

## II.   MR. ST. JOHN'S REQUESTS FOR ATTORNEY FEES AND REIMBURSEMENT OF EXPENSES ARE REASONABLE.

### A.   Mr. St. John reasonably requests attorney fees amounting to 1.5% of the benefit attributable to his efforts.

Mr. St. John seeks attorney fees amounting to 1.5% of the benefit attributable to his efforts, i.e., $216,281. Mr. St. John's counsel performed over 433.3 hours of work in this matter. St. John Dec. at ¶¶ 9-11, 21-23. That work included preparing a detailed, fact specific objection and reply, and providing oral argument supporting that objection; responding to a subpoena; preparing and defending Mr. St. John at a deposition; researching and drafting a motion to amend the Special

Master's Appointment Order, and providing oral argument supporting that motion; researching and drafting a motion to strike untimely evidence submitted by IPP Counsel; researching and drafting a detailed objection to the Special Master's Report & Recommendation re Fees; and providing oral argument at the fairness hearing. *Id.* at ¶¶ 9-10. And while Mr. St. John's counsel has been retained for matters in California federal courts at rates of up to $600 per hour, he is only claiming a rate of $500 per hour for purposes of a lodestar crosscheck, which is consistent with the hourly rates claimed by IPP Counsel for associate attorneys of similar tenure. *Id.* at ¶¶ 16-21.

Mr. St. John's fee request for attorney's fees is reasonable by any measure. Mr. St. John was represented by experienced counsel, and the requested fees are less than his counsel's lodestar. St. John Dec. ¶¶ 4-8, 21, 24; Valdez Dec. ¶¶ 4-7. The requested fees do not take into account the contingent nature of his counsel's fee, the substantial risk of nonpayment, and the substantial risk to his counsel's professional reputation attendant in representing a class action objector. *Id.* at ¶¶ 16-17, 21, 26-27. The requested fee is but a fraction of the pecuniary benefit Mr. St. John provided to the class. And it is comparable to or less than the awards to objectors in other cases. *See, e.g., McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 662-63 (E.D. Pa. 2015) (awarding objector $742,500 in attorney's fees for 649.8 hours that resulted in at least a $7.5 million benefit to the class, i.e., 4.9% or 9.9% of the benefit conferred depending on how calculated); *In re Apple, Inc. Sec. Litig.*, No. 5:06-cv-05208, 2011 WL 1877988, at *5 (N.D. Cal. May 17, 2011) (awarding objector $87,000 in attorney's fees for 104 hours of work that resulted in a $2.5 million benefit to the class: "an hourly rate of approximately $836 . . . is generous, but not overly so"); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 456-57, 466-68 & n.20 (D.P.R. 2011) (awarding objectors $305,000 in attorney's fees for work that resulted in a $3,050,000 reduction in class counsel's fees, i.e., 10% of the benefit conferred).

### B.   Mr. St. John reasonably requests reimbursement of $3,407.11 in expenses.

Mr. St. John's counsel incurred over $3,407.11 in ascertainable reimbursable expenses in the course of pursuing his objection, including expenses associated with three trips to San Francisco for oral argument before the Court or Special Master. St. John Dec. at ¶¶ 28-33 and Ex. 1. Courts routinely award expenses to objectors who increase the value of the fund. *See, e.g., Sobel v. Hertz Corp.*,

53 F. Supp. 3d 1319, 1334 (D. Nev. 2014) (awarding objector expenses in the amount of $1,098.05). The Court should do so here and award Mr. St. John $3,407.11 in expenses.

### C.    Additional relief is necessary because IPP Counsel refuse to identify whether Mr. St. John is chargeable with any reimbursable Special Master fees.

IPP Counsel sought and were awarded reimbursement for Special Master fees. *See* Order (D.E. 4740) at 17-18. Mr. St. John requests the same with respect to any Special Master fees for which he may be charged.

Unfortunately, Mr. St. John is unable to identify to the Court any such amount, or even *if* he is responsible for any such fees. In correspondence requesting a meet-and-confer regarding this motion, Mr. St. John's counsel asked IPP Lead Counsel Mario Alioto to "please let me know if you contend I or my client are responsible for any costs, expenses, etc., together with the specific amount in question, as I will likely seek reimbursement of those amounts as well." St. John Dec. Ex. 2. Receiving no response, Mr. St. John's counsel raised the issue during the meet-and-confer, inquiring if Mr. Alioto believed Mr. St. John or his counsel were obligated for any Special Master fees. *Id.* Mr. Alioto offered no response other than "maybe" and refused to specify any amount because he "[hasn't] addressed that yet" and [doesn't] want to proceed piecemeal," despite objectors no longer being before the Special Master. *Id.*

In its Appointment Order, the Court directed the Special Master to "prepare a monthly invoice for his services" and submit that invoice to Mr. Alioto for payment. Appointment Order (D.E. 4077) at 8. Yet Mr. Alioto refuses to disclose the amount owed—or even IPP Counsel's position as to whether <u>any</u> amount is owed—for no apparent reason.[4]

---

[4]    This is not the first time IPP Counsel have been coy with their position on payment of Special Master fees by objectors. *Compare* Exhibit (4203-2) ("[Mr. Alioto] stated that IPP Counsel may be willing to accept full responsibility for compensating Special Master Quinn in connection with their Fee Motion.") *with* Exhibit (D.E. 4203-4) at ECF p.3 ("[Mr. Alioto] opened the discussion with the position that objectors should be responsible for 50% of Special Master Quinn's compensation . . . unless their counsel agreed 'not . . . to seek anything.'") *with* Order (D.E. 4298) at 2 n.1 (noting that "IPP Counsel intend to pay for all expenses related exclusively to their fee requests, such as compensation of the Special Master for his work on the Fee Motion.").

In view of the foregoing, Mr. St. John requests that the Court determine that Mr. St. John is not responsible for any Special Master fees. *Cf.* Appointment Order (D.E. 4077) ("The Court will protect against unreasonable expenses and delay . . . ."). Alternatively, Mr. St. John requests the Court to authorize a supplemental request for reimbursement of expenses after IPP Counsel provide the Special Master's detailed invoices and proposed allocation of his fees. *See* Fed. R. Civ. P. 23(h); 54(d).[5]

## CONCLUSION

Courts and class action attorneys often bemoan the poor quality of objections. Here, Mr. St. John retained experienced, high quality counsel who prepared a detailed, fact-intensive objection to assist the Court in review IPP Counsel's Fee Motion. While the Court did not agree with Mr. St. John on every point, Mr. St. John identified and successfully litigated a procedural issue that empowered the Court to reach the result Mr. St. John sought, yielding a $14,418,750 benefit to the class. Mr. St. John requests that he be awarded attorney's fees and expenses accordingly.

---

[5]     Mr. St. John renews his objection to any assessment of the Special Master's compensation against an objector because, *inter alia*, such an assessment against a non-party objector is not authorized by Rule 53. *See generally* Motion to Amend (D.E. 4203); Reply ISO Motion to Amend (D.E. 4234). Rule 53 provides that a Special Master's "compensation **must** be paid either: (A) by a <u>party</u> or parties; or (B) from a fund or subject matter of the action within the court's control." Fed. R. Civ. P. 53(g)(2) (emphasis added). Rule 53 also provides that "[b]efore appointing a master, the court **must** give the parties notice and an opportunity to be heard." Fed. R. Civ. P. 53(b)(1) (emphasis added). In its Order on Mr. St. John's Motion to Amend, the Court found "the record does not clearly show that all potential objectors were served with the motion [to appoint the Special Master] or the Order to Show Cause" and "there is no way for the Court to conclude that all affected parties received notice of the clear error standard of review . . . ." Order (D.E. 4298) at 3. Consistent with that conclusion, Mr. St. John received no such notice and opportunity to be heard. *See* St. John Dec. at ¶ 36. But if Mr. St. John is to be considered a "party" for purposes of the Special Master's compensation, he must also be considered a party who was entitled to notice and an opportunity to be heard **before** the Special Master was appointed. *See, e.g., Hayden v. United States*, No. 14-cv-1060-AC, 2015 WL 350665, at *4 (D. Or. Jan. 26, 2015) ("[I]t is inconsistent and unsupportable under the Rules to apply different standards to identical terms used in the same Rule.") Accordingly, responsibility for compensating the Special Master should fall to IPP Counsel. *Adventures in Good Eating v. Best Places to Eat*, 131 F. 2d 809, 815 (7th Cir. 1942) ("The plaintiff having asked for a reference [that was not authorized by Rule 53], and the court having granted it on plaintiff's motion, the costs of such reference should be charged to the plaintiff.")

        Not only does Rule 53 not authorize requiring Mr. St. John to compensate the Special Master, it also appears that the lack of notice and opportunity to be heard renders the Special Master's appointment defective, at least vis-à-vis Mr. St. John. *See generally Burlington N. R.R. v. Wash. Dep't of Revenue*, 934 F. 2d 1064 (9th Cir. 1991). For the avoidance of doubt: Mr. St. John objects to having this motion heard by the Special Master.

1    Dated: August 17, 2016                     Respectfully submitted,

2                                               /s/ Andrea Valdez

3                                               ANDREA VALDEZ (Cal. Bar No. 239082)
                                                530 S. Lake Avenue, No. 574
4                                               Pasadena, CA 91101
                                                Tel: (626) 817-6547
5                                               andrea.valdez.esq@gmail.com

6                                               JOSEPH SCOTT ST. JOHN (*pro hac vice*)
                                                514 Mockingbird Drive
7                                               Long Beach, MS 39560
                                                Tel: 410-212-3475
8                                               jscottstjohnpublic@gmail.com

9                                               *Attorneys for Objector Douglas W. St. John*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Andrea Valdez, declare as follows:

I am counsel of record for Objector Douglas W. St. John. I am over the age of eighteen years and not a party to this action.

On August 17, 2016, I caused the foregoing OBJECTOR DOUGLAS W. ST. JOHN'S MOTION FOR ATTORNEY'S FEES AND EXPENSES to be served via the Court's CM/ECF system.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FOREGOING IS TRUE AND CORRECT.

Executed at Pasadena, California on August 17, 2016.

*/s/ Andrea Valdez*