1  ANDREA VALDEZ (Cal. Bar No. 239082)
   530 S. Lake Avenue, No. 574
2  Pasadena, CA 91101
   Tel: (626) 817-6547
3  andrea.valdez.esq@gmail.com

4  JOSEPH SCOTT ST. JOHN (*pro hac vice*)
   514 Mockingbird Drive
5  Long Beach, MS 39560
   Tel: 410-212-3475
6  jscottstjohnpublic@gmail.com

7  *Attorneys for Objector Douglas W. St. John*

8

9                UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                SAN FRANCISCO DIVISION

12 **IN RE CATHODE RAY TUBE (CRT)**      Master File No. 3:07-cv-5944 JST
   **ANTITRUST LITIGATION**
13                                       MDL No. 1917

14                                       **DECLARATION OF**
                                         **JOSEPH SCOTT ST. JOHN ISO**
15                                       **OBJECTOR DOUGLAS W. ST. JOHN'S**
                                         **MOTION FOR ATTORNEY'S FEES**
16                                       **AND EXPENSES**

17 This Document Relates To:            Judge: Hon. Jon S. Tigar
   All Indirect Purchaser Actions
18                                       .

19

20

21

22

23

24

25

26

27

28

I, Joseph Scott St. John, declare and state as follows:

1.      I am an attorney duly licensed in the State of Mississippi (admitted 2008), the District of Columbia (admitted 2009, inactive as of 2016), and Louisiana (admitted 2015). I represent Douglas W. St. John, a resident of the State of Mississippi, in connection with the above-captioned matter.

2.      I make this declaration in support of Objector Douglas W. St. John's Motion for Attorney's Fees and Expenses.

3.      I have personal knowledge of the facts stated herein, and if called and sworn as a witness, I would testify truthfully as follows.

## COUNSEL'S BACKGROUND, SKILL, AND EXPERIENCE

4.      I earned a Bachelor of Science in Systems Engineering, with merit, from the United States Naval Academy in 2003. I served as an active duty naval officer from 2003 until 2005. I earned a Juris Doctor from The George Washington University Law School, with honors, in 2008.

5.      From 2008 until 2010, I practiced law as an associate in the Washington, DC, office of Kirkland & Ellis LLP. From 2010 until 2011, I served as a law clerk to the Honorable Arthur J. Gajarsa of the United States Court of Appeals for the Federal Circuit. From 2012 until 2015, I practiced law as an associate in the Washington, DC, office of Covington & Burling LLP.

6.      I have significant experience litigating in federal courts. I also have significant experience litigating complex, multi-party, and multi-forum matters. I have advised large, sophisticated clients regarding antitrust issues.

7.      I have served as lead trial counsel in a matter tried to jury verdict; as lead outside counsel in a federal judicial mediation; and the lead associate on multiple large matters. Over the course of my career, I have engaged in all aspects of discovery; prepared expert reports; taken and defended depositions; authored numerous procedural, discovery, summary judgment, and appellate briefs; engaged in numerous oral arguments; and reviewed outgoing bills.

8.      While employed at a large law firm, I frequently prepared pitch and bid packages for existing and prospective clients. On multiple occasions, large, sophisticated clients specifically requested that I be assigned to their matters, including at least one matter in California.

## **LODESTAR CROSS-CHECK**

### HOURS REASONABLY EXPENDED

9.      Throughout my involvement in this litigation, I maintained contemporaneous records of all time spent, including the tasks that I performed.

10.      I served as the lead attorney for Mr. St. John in this matter. In the course of this matter, I expended over 433.3 hours of attorney time briefing and arguing Mr. St. John's Objection (D.E. 4106, 4107, 4108) and Reply (D.E. 4406-2); responding to IPP Counsel's subpoena and defending Mr. St. John at a deposition; briefing and arguing a successful Motion to Amend Special Master Quinn's Appointment Order (D.E. 4203, 4204, 4234); briefing a Motion to Strike supplemental materials submitted by IPP Counsel (D.E. 4369); and briefing and arguing an Objection to the Special Master's R&R re Fees (D.E. 4406, 4439).

11.      The amount of time necessary to competently litigate this matter was greatly increased by IPP Counsel's decision to seek appointment of a Special Master (complicating and effectively doubling the amount of briefing); IPP Counsel's inducing the Court to erroneously order clear error review of the Special Master's findings; and IPP Counsel's demand for document discovery and a deposition of my client. Indeed, IPP Counsel candidly admitted that they were engaging in burdensome discovery of every objector to "weed out guys that are off the wall" and that "a couple of objections drop[ped] out" as a result. Composite Ex. 11 (D.E. 4174-12).

12.      The reasonableness of my time expenditure is supported by comparison to the recent fee award to an objector in *In re Transpacific Passenger Air Transportation Antitrust Litigation*, No. 07-05634, 2015 WL 4776946 (N.D. Cal. Aug. 13, 2015). In *Transpacific*, Judge Breyer awarded the objector $90,000 in attorney fees for 224.8 hours of work, which included time spent preparing the objection and defending the objector from discovery requests. The *Transpacific* objector was represented by the non-profit Center for Class Action Fairness, which is led by noted class action lawyer Theodore Frank. Mr. Frank and his organization have numerous class action victories under their belt at both the trial and appellate levels. *E.g.*, *In re HP Inkjet Printer Litig.*, 654 F.3d 935 (9th Cir. 2013); *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935 (9th Cir. 2011); *see also* Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES (Aug. 13, 2013) (describing Mr. Frank as

1  "the leading critic of abusive class action settlements"). Despite not having the benefit of Mr.

2  Frank's experience, I spent only 252.4 hours performing similar objection and discovery tasks in this

3  matter.[1]

4      13.  Other awards to objectors support the reasonableness of my time expenditure,

5  hourly rate, and my client's request for attorney's fees amounting to 1.5% of the pecuniary benefit

6  he provided to the class. *See, e.g., In re High-Tech Employees Antitrust Litig., McDonough v. Toys "R" Us,*

7  *Inc.*, 80 F. Supp. 3d 626, 662-63 (E.D. Pa. 2015) (awarding objector $742,500 in attorney fees for

8  649.8 hours of work that resulted in at least a $7.5 million benefit to the class, i.e., 4.9% or 9.9% of

9  the benefit conferred depending on how calculated); *Cohorst v. BRE Props., Inc.*, No. 10-cv-2666, 2012

10  WL 2001754, at *3 (S.D. Cal. June 5, 2012) (awarding objector half of the 28% fee award associated

11  with the benefit to the class); *In re Apple, Inc. Sec. Litig.*, No. 5:06-cv-05208, 2011 WL 1877988, at *5

12  (N.D. Cal. May 17, 2011) (awarding objector $87,000 in attorney fees for 104 hours of work that

13  resulted in a $2.5 million benefit to the class: "an hourly rate of approximately $836 . . . is generous,

14  but not overly so"); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 456-57, 466-68 &

15  n.20 (D.P.R. 2011) (awarding objectors $305,000 in attorney fees for work that resulted in a

16  $3,050,000 reduction in class counsel's fees, i.e., 10% of the benefit conferred, but noting that "the

17  objectors were overzealous in spending 865.5 hours for developing their arguments"); *In re Prudential

18  Ins. Co. of Am. Sales Practices Litig.*, 273 F.Supp.2d 563, 572 (D.N.J. 2003) (awarding objector 1.4% of

19  class counsel's fees, i.e., $1,260,000, where objector increased common fund by 1.4%).

20      14.  Mr. St. John's Motion for Attorney's Fees and Expenses is principally based on Mr.

21  St. John's successfully moving to amend the Special Master's Appointment Order to provide for de

22  novo review of the Special Master's factual findings. The time directly associated with the Motion to

23  Amend accounts for only a portion of the time I devoted to this case. However, Mr. St. John's

---

[1]  The $90,000 award yields an hourly rate of $400. Declarations made in support of the fee request in *Transpacific* indicate that the objector's non-profit counsel were limiting their fee request to $90,000, i.e., less than their lodestar, based on a combination of IRS regulations and public interest concerns.

successful motion would not have occurred had I not spent hundreds of hours researching and drafting his objection, responding to a subpoena, defending him at a deposition, etc.

15.     In view of the foregoing and my own experience, I believe that 433.3 hours represents a reasonable and efficient expenditure of attorney time in prosecuting my client's objection.

## REASONABLE HOURLY RATE

16.     In 2015, I was retained to represent a client before the United States District Court for the Southern District of California at a rate of $600 per hour on a non-contingent monthly billing basis. I have represented other clients before state and federal courts in California, including before this Court. Upon information and belief, those matters were billed at similar rates on a non-contingent monthly billing basis.

17.     In my experience, a rate of $600 per hour is a reasonable non-contingent billing rate in the Northern District of California for an attorney of my background, skill, experience, and reputation.

18.     Consistent with my experience, the declaration of IPP Counsel's fee expert, Mr. Richard Pearl, identified the following cases as exemplifying reasonable fees:

- *Wynn v. Chanos*, 2015 U.S .Dist. LEXIS 80062 (N.D. Cal. June 19, 2015) (identified by Mr. Pearl as an "anti-SLAPP fee award" in which the court found $710 per hour to be a reasonable 2015 rate for an attorney with 6 years of experience)

- *O'Bannon v. National Collegiate Athletic Assn.*, 2015 U.S. Dist. LEXIS 91514 (N.D. Cal. July 13, 2015) (identified by Mr. Pearl as a "group antitrust action" in which the court found $490 to be a reasonable 2015 rate for an attorney with 7 years of experience)

- *Ammari v. Pacific Bell Directory*, No. RG05198014, Order Granting Plaintiffs' Application for Attorney's Fees, Reimbursement of Costs, and Service Awards (Alameda Superior Court, filed January 5, 2015) (identified by Mr.

Pearl as a "consumer class action" in which the court found $655 to be a reasonable 2014 rate for an attorney with 8 years of experience)

- *Banas v. Volcano Corp.*, 47 F.Supp.3d 957 (N.D. Cal. 2014) (identified by Mr. Pearl as a "dispute over a merger agreement decided on summary judgment" in which the court found $685 to be a reasonable 2014 hourly rate for an attorney with 7 years of experience and $620 to be a reasonable hourly rate for an attorney with 6 years of experience)

Declaration of Richard M. Pearl in Support of Indirect Purchaser Plaintiffs' Motion for Attorneys' Fees (D.E. 4071-15) at ¶ 30.

19.     I note that IPP Counsel claimed non-contingent rates in the $500 per hour range for a number of associate attorneys, and the Court implicitly accepted as reasonable those claimed rates in performing its lodestar crosscheck. For example, the firm of Zelle, Hofman, Voelbel & Mason LLP claimed a non-contingent 2014 hourly rate of $505 for Heather Rankie—a senior associate in the firm's San Francisco office—who is a 2009 graduate of the University of Washington School of Law. *See* Declaration of Christopher T. Micheletti (D.E. 4073-3) at Exs. 1 & 2. The same firm claimed a non-contingent 2012 hourly rate of $505 for Eric Beutzow—also a senior associate in the firm's San Francisco office—who is a 2007 graduate of the University of California Hastings College of the Law. *See* Declaration of Christopher T. Micheletti (D.E. 4073-3) at Exs. 1 & 2.

20.     IPP Counsel claimed non-contingent rates of nearly $450 per hour for contract attorneys who appear to have significantly less experience than I have. For example, the firm of Andrus Anderson LLP claimed a non-contingent 2015 hourly rate of $445 for Jubilee Menzies. *See* Declaration of Jennie Lee Anderson (D.E. 4073-9) at Ex. 2. Although IPP Counsel failed to provide biographical information for Ms. Menzies, her LinkedIn profile states that she graduated from Boston College Law School in 2010 and works for Andrus Anderson LLP as a contract attorney. The Law Offices of Sherman Kassof even claimed a non-contingent 2012 hourly rate of $350 for a 2009 graduate of the University of Alabama School of Law who worked in this litigation as a document reviewer. *See* Declaration of Sherman Kassof (D.E. 4073-14) at Ex. 2. Although IPP Counsel again failed to provide biographical information for that attorney, his LinkedIn profile

indicates that he had no prior substantive legal experience. *See* Declaration of Joseph Scott St. John (D.E. 4369-5) at Ex. 1.

**LODESTAR CALCULATION**

21.     My lodestar, broken down by general task, is:

| TASK | HOURS | LODESTAR ($600/HR) | LODESTAR ($500/HR) |
|---|---|---|---|
| Initial Objection, Reply, and Oral Argument | 200.0 | $120,000 | $100,000 |
| Discovery (Document and Deposition) | 52.4 | $31,440 | $26,200 |
| Motion to Amend, Motion for Discovery, and Oral Argument | 70.6 | $42,360 | $35,300 |
| Motion to Strike and Objection to R&R re Same | 32.5 | $19,500 | $16,250 |
| Objection to R&R re Fees and Oral Argument | 77.8 | $46,680 | $38,900 |
| **TOTAL** | 433.3 | $259,980 | $216,650 |

22.     My lodestar excludes time spent travelling (60.9 hours, including travel to and from San Francisco, California—roughly 9.5 hours each way—for oral argument on three separate occasions); time spent conferring with local counsel (5.1 hours); time spent conferring with my client other than for deposition preparation (9.1 hours); and time spent on tasks that in my judgment did not adequately benefit the class (22.6 hours). My lodestar does not include any time related to this fee application.

23.     My lodestar excludes time spent performing paralegal-level work. *Cf., e.g.,* Declaration of IPP Lead Counsel Mario N. Alioto (D.E. 4073-1) at Ex. 2 (claiming a 2015 rate of $275 per hour for paralegal work).

24.     If the Court awards Mr. St. John attorney's fees in the amount of 1.5% of the benefit to the class attributable to his efforts, i.e., $216,281, it would correspond to a multiplier of 0.83 at a reasonable rate of $600 per hour and a hair below lodestar at a reasonable rate of $500 per hour. Because this request is below lodestar, the fee is presumptively reasonable. *See, e.g., Fischel v. Equitable Life Ins. Assurance Soc.*, 307 F.3d 997, 1007 (9th Cir. 2002) ("There is a strong presumption that the lodestar figure represents a reasonable fee.").

25.     Mr. St. John is principally relying on the percentage-of-the benefit approach to justify fees, so I am not submitting detailed time entries at the present time. Doing so would require time-consuming redaction in order to maintain the attorney-client privilege and work-product protections. *See, e.g., Clark v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (noting that "time records which . . . reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the [attorney-client] privilege"). Consistent with the Court's practice in this matter, I will submit detailed time entries for *in camera* review if the Court so requests. *See, e.g.*, Order (D.E. 4508) at 4-5. To facilitate the Court's lodestar cross-check and to provide an alternative basis for awarding fees, I am summarizing my time records below.[2]

---

[2]     In the telephonic meet-and-confer preceding this motion and follow-on correspondence, IPP Lead Counsel Mario Alioto took the position that he is "entitled" to my time records, despite my client's pursuing fees as a percentage of the benefit and the substantial burden that redaction of my time records would impose. Mr. Alioto also rejected as inadequate my offer to provide a time summary broken out by general task. Not so long ago, Mr. Alioto urged the Special Master that "time discovery is unnecessary and should be denied." To wit:

"[T]he determination of [attorney's] fees should not result in a second major litigation," *Fox v. Vice*, 131 S.Ct. 2205, 2210 (2011), yet that is what objectors have in mind with their request to review "all counsel's timesheets." To be clear, **IPP Counsel are happy to submit additional time detail for in camera review if the Court believes such information would be helpful. But discovery on these issues is neither necessary nor wise.** *Lobatz v. U.S. W. Cellular of California, Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000) (affirming denial of "request for discovery of class counsel's contemporaneous time records"); *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 872 (8th Cir. 2014) ("discovery in connection with fee motions is rarely permitted") (citations omitted).

As *Lobatz* explains, the discovery sought by objectors often "impose[s] on district courts, as well as litigants, a rigid process . . . of little benefit" in evaluating the reasonableness of a fee award. 222 F.3d at 1148.  That is particularly so where, as here, the objectors fail "to show any legitimate need for the records[.]"  *Id.*  No objector in this case has explained why discovery of class counsel's time detail—as opposed to prompt in camera review by an experienced Special Master—is necessary or appropriate. This is nothing more than a fishing expedition. **Time record discovery is all the more unwarranted in light of the preference for the percentage plus lodestar cross-check method typically employed in this type of case.** *See Vizcaino*, 290 F.3d at 1051; Fee Motion, at 10 (collecting many cases). The percentage plus multiplier cross- check method not only aligns class/lawyer interests in a sensible way, but avoids precisely the type of time entry-parsing in which objectors seek to engage.  *See In re Activision Securities Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989), cited with approval by *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d at 1046 ("The Court finds [the] advantages persuasive, and adopts the percentage method in this matter.").

## THE CIRCUMSTANCES SUPPORT A FEE AWARD AND A POSITIVE LODESTAR MULTIPLIER

26.     The risk of nonpayment was high. I was retained in this matter on a pure contingency basis.[3] Accordingly, I would receive no payment unless I succeeded in providing a substantial benefit to the class. *See McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626, 661 (E.D. Pa. 2015) (finding that risk of nonpayment weights in favor of fee award because "unless they add value to the settlement, objectors generally are not compensated"). I also bore the cost of my client's objection, including thousands of dollars in travel expenses and local counsel fees, and the Court's orders suggest that I could be responsible for some thousands of dollars in Special Master fees. At least one attorney declined to become involved in this matter on a contingency or flat fee basis. Significantly, my client was objecting to a request for $192 million in fees by class counsel who were strongly and obviously incentivized to defend their request. I was aware of at least the risk of nonpayment at the time I was retained in this matter, and accordingly contemplated a risk multiplier if I was successful. These circumstances support a positive lodestar multiplier to account for the contingent nature of my fee and the substantial risk of nonpayment. *Stanger v. China Elec. Motor, Inc.*, 812 F. 3d 734, 741 (9th Cir. 2016) ("[T]he district court ***must*** apply a risk multiplier to the lodestar when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky."(emphasis added)); *Fischel v. Equitable Life Assur. Soc.*, 307 F.3d 997, 1008-1010 (9th Cir. 2002) (district court erred by failing to appropriately consider contingency fee arrangement and risk of nonpayment).

---

IPP Reply re Motion for Award of Attorney Fees (D.E. 4373) at 26-27. IPP Counsel prevailed on this issue. *See* R & R re Motion to Compel (D.E. 4211) at 4-5 (denying time discovery sought by certain objectors and ordering IPP Counsel Josef Cooper and Fran Scarpulla "to keep those [time] records confidential and not to share them with other objectors or class counsel"). Under the law cited by IPP Counsel, as a matter of basic "good for the goose good for the gander" fairness, and as a matter of judicial estoppel, IPP Counsel should not receive discovery of time records.

[3]        My retention agreement did include provisions required by Mississippi ethics rules regarding how I would be compensated if the matter ended other than by resolution on the merits. Miss. R. Prof. Conduct 1.5; *see also* Miss. Ethics Op. No. 144 (Mar. 11, 1988, amended Apr. 6, 2013).

27.    I assumed a substantial risk of harm to my professional reputation by undertaking this representation. I have never previously served as counsel in connection with a class action objection, and I have never filed a class action objection on my own behalf. The professional hostility to counsel for objectors is so great that IPP Counsel attacked two of their own colleagues as having "suspect" motives in filing objections, and attacked a third objecting colleague for merely being "acquainted" with counsel for another objector. IPP Reply (D.E. 4373) at 2 & n.5. These circumstances support a positive lodestar multiplier to account for the risk of harm to my professional reputation. *See, e.g., Kerr v. Screen Extras Guild, Inc.*, 526 F. 2d 67, 70 (9th Cir. 1975) (court should consider "the 'undesirability' of the case" in setting fee award).

## UNREIMBURSED EXPENSES

28.    Throughout my involvement in this litigation, I kept contemporaneous records of all expenses incurred.

29.    I incurred $3,407.11 in expenses, all of which were reasonable and necessary for the prosecution of my client's objection. My unreimbursed expenses, broken down in the same categories as IPP Counsel's expense requests, are:

| TYPE OF EXPENSE | TOTAL |
| --- | --- |
| Outside copies | $26.30 |
| In-house Reproduction / Copies | $385.20 |
| Court Costs & Filing Fees (including JAMS CaseAnwhere) | $252.80 |
| Computer Research (including PACER) | $237.30 |
| Postage / Express Delivery / Courier | $282.87 |
| Travel: Airfare | $1,237.12 |
| Travel: Lodging / Meals | $616.58 |
| Travel: Other (including mileage) | $127.60 |
| Car Rental / Cabfare / Parking | $241.34 |
| **TOTAL** | $3,407.11 |

30.     My unreimbursed expenses include 3,852 pages of in-house black and white copies at $0.10 per page. The relatively high number of copies is due to the combination of (a) the extensive factual support submitted with Mr. St. John's objection and (b) the requirement for courtesy copies under this Court's Local Rules. The weight of those courtesy copies and the requirement for their prompt delivery to chambers account for the relatively high postage expenses.

31.     My expenses include travel to San Francisco to argue before the Court or the Special Master on three separate occasions. All air travel was at non-refundable coach fares. Ground travel in the San Francisco area was primarily via BART or UberX.

32.     I have excluded unreimbursed expenses of $130.64 that I do not believe a reasonable attorney would pass through to a paying client, even if those expenses are nominally reimbursable.

33.     An itemized list of my unreimbursed expenses is attached as Exhibit 1.

**MEET AND CONFER**

34.     N.D. Cal. Civ. L. R. 54-5 provides that "counsel for the respective parties must meet and confer for the purpose of resolving all disputed issues relating to attorney's fees before making a motion for award of attorney's fees."

35.     I engaged in a telephonic meet and confer with IPP Lead Counsel Mario Alioto on August 10, 2016. At the start of the call, Mr. Alioto stated that he opposed Mr. St. John's fee request. Mr. Alioto refused to take a position as to whether any fee award should come from the common fund or IPP Counsel's fee award. A true and correct copy of correspondence memorializing that meet and confer is attached as Exhibit 2.

**MISCELLANEOUS**

36.     I had no actual notice of IPP Counsel's Motion for Appointment of Martin Quinn (D.E. 4032), the Court's Order to Show Cause re Appointment of a Special Master (D.E. 4033), or the Court's September 11, 2015, Hearing, or the Court's Order Appointing Special Master (D.E. 4077) until after the Special Master was appointed, i.e., after September 24, 2015.

37.     Further declarant sayeth naught.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in New Orleans, Louisiana, the 17th day of August, 2016

/s/ Joseph Scott St. John

_____

Joseph Scott St. John