Richard Alan Arnold, Esquire
William J. Blechman, Esquire
Kevin J. Murray, Esquire
Samuel J. Randall, Esquire
KENNY NACHWALTER, P.A.
1441 Brickell Avenue
Suite 1100
Miami, Florida 33131
Tel:    (305) 373-1000
Fax:    (305) 372-1861
E-mail:   rarnold@knpa.com
            wblechman@knpa.com
            kmurray@knpa.com
            srandall@knpa.com

***Counsel for Plaintiffs Sears, Roebuck and Co.
and Kmart Corporation***

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-5944 (JST) MDL No. 1917 |
| This Document Relates to: *Sears, Roebuck & Co., and Kmart Corporation v. LG Electronics, Inc., et al.*, Case No. 11-cv-5514 (JST) | |

## PLAINTIFFS' OPPOSITION
## TO LG'S MOTION FOR BIFURCATION

# <u>TABLE OF CONTENTS</u>

I.    BIFURCATION IS LEGALLY IMPROPER BECAUSE PLAINTIFFS HAVE A
      SEVENTH AMENDMENT RIGHT TO TRIAL BY JURY ON OWNERSHIP/
      CONTROL ISSUES ....................................................................................................... 2

      A.    The Ninth Circuit Has Never Held that Facts Relevant to Establishing Antitrust
            Standing Must Be Decided by the Court and Not a Jury ...................................... 3

      B.    Questions of Fact Relevant to Establishing Antitrust Standing Must Be Decided
            by the Jury .......................................................................................................... 5

II.   AS OTHER COURTS HAVE FOUND, A PRELIMINARY BENCH TRIAL ON
      "ANTITRUST STANDING" ISSUES WOULD INEFFICIENTLY AND
      UNNECESSARILY DUPLICATE THE PROCEEDINGS BEFORE THIS COURT .............. 7

III.  A PRELIMINARY BENCH TRIAL IN PLAINTIFFS' TRIAL WOULD REDUCE
      EFFICIENCY AND ECONOMY WITHOUT NARROWING ANY ISSUES FOR THE
      JURY'S CONSIDERATION ...................................................................................... 9

      A.    LG, Philips, Panasonic, Toshiba, and Hitachi ...................................................... 9

      B.    JVC, Daewoo, and Samsung ................................................................................ 11

      C.    Zenith ................................................................................................................. 14

IV.   LG DOES NOT DEMONSTRATE THAT UNDUE PREJUDICE WOULD RESULT
      FROM TRYING THE EVIDENCE OF CORPORATE RELATIONSHIPS JUST ONCE .... 15

V.    A SIMULTANEOUS BENCH AND JURY TRIAL ON ANTITRUST STANDING
      WOULD BE SUPERIOR TO A PRETRIAL BENCH TRIAL ON ANTITRUST
      STANDING IN EVERY WAY .................................................................................... 16

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
   821 F.3d 352 (2d Cir. 2016)..................................................................... 6

4

*Am. Steel & Stairways, Inc. v. Lexington Ins. Co.*,
5
   No. 12-cv-03103-JST, 2013 WL 4425704 (N.D. Cal. Aug. 14, 2013)........................... 3, 10, 12, 16

6

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006) .............................................................................. 5, 6

7

*Ayala v. United States*,
8
   550 F.2d 1196 (9th Cir. 1977) ................................................................. 4

9

*Ballesteros v. Am. Standard Ins. Co. of Wisc.*,
   436 F. Supp. 2d 1070 (D. Ariz. 2006) ..................................................... 4

10

*Beacon Theatres, Inc. v. Westover*,
11
   359 U.S. 500 (1959).............................................................................. 3

12

*Best Life Assurance Co. v. Comm'r*,
   281 F.3d 828 (9th Cir. 2002) .................................................................. 4

13

*Cetacean Cmty. v. Bush*,
14
   386 F.3d 1169 (9th Cir. 2004) ............................................................... 5, 6

15

*Chappell v. Mandeville*,
   706 F.3d 1052 (9th Cir. 2013) ................................................................ 4

16

*Danjaq LLC v. Sony Corp.*,
17
   263 F.3d 942 (9th Cir. 2001) .................................................................. 3

18

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*,
   438 U.S. 59 (1978) ................................................................................. 5

19

*Electrograph Systems, Inc., v. Epson Imaging Devices Corporation*,
20
   Case No. 09-cv-04845-JMA, ECF No. 417 (E.D.N.Y. Mar. 6, 2016) ........................... 8

21

*Export Group v. Reef Indus., Inc.*,
   54 F.3d 1466 (9th Cir. 1995) .................................................................. 4

22

*Haase v. Sessions*,
23
   835 F.2d 902 (D.C. Cir. 1987) ................................................................ 5

24

*Hangarter v. Provident Life & Acc. Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ................................................................. 16

25

*In re ATM Fee Antitrust Litig.*,
26
   686 F.3d 741 (9th Cir. 2012) .............................................................. 1, 3, 4

27

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   289 F.3d 98 (D.C. Cir. 2002) .................................................................. 6

28

---

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
   Case No. 07-1827, ECF No. 8282 (N.D. Cal. July 8, 2013)............................................7

*Interbond Corporation v. AU Optronics Corporation*,
   Case No. 11-cv-61264-WPD, ECF No. 77 (S.D. Fla. July 13, 2015) ...........................8

*Lerner v. Fleet Bank, N.A.*,
   318 F.3d 113 (2d Cir. 2003)............................................................................................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   __ U.S. __, 134 S. Ct. 1377 (2014) ................................................................................6

*Standard Oil Co. of Cal. v. Arizona*,
   738 F.2d 1021 (9th Cir. 1984) ........................................................................................3

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011)............................................................................................6

*Tech Data Corp. v. AU Optronics Corporation*,
   Case No. 11-cv-2454-VMC, ECF No. 78 at 20 (M.D. Fla. July 14, 2015) ....................8

*United States v. Johnson*,
   256 F.3d 895 (9th Cir. 2001) ..........................................................................................4

*Warth v. Seldin*,
   422 U.S. 490 (1975)........................................................................................................5

Plaintiffs Sears, Roebuck and Co. ("Sears"), and Kmart Corporation ("Kmart") (collectively, "Plaintiffs") respectfully submit this memorandum in opposition to Defendant LG Electronics Inc.'s ("LG") Motion to Bifurcate, ECF No. 4759 (the "Motion").   The Motion should be denied for several reasons.

First, as a threshold matter, the Motion is premised on an incorrect statement of the governing law.   The foundation of LG's Motion is the Ninth Circuit's decision in *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012).   But *ATM Fee* itself makes clear that the passage upon which LG relies is dicta, and neither *ATM Fee* nor other Ninth Circuit cases hold that the district court is the necessary trier of disputed facts relevant to antitrust standing.   Instead, as many courts have expressly recognized, antitrust standing – as opposed to traditional "constitutional" standing that is needed to provide an Article III "case or controversy" – does not affect the subject-matter jurisdiction of federal courts.   Instead, antitrust standing is related to the merits of a claim for damages under the Sherman and Clayton Acts.   LG conflates these principles, to the detriment of Sears' and Kmart's constitutional right to a jury trial on all contested facts related to the antitrust standing inquiry.   For this reason, the Court does not even need to address Rule 42(b)'s fairness and efficiency factors that govern bifurcation; a bench trial on antitrust standing would be unconstitutional and on that basis alone the Motion must be denied.   But even if the Court declines to recognize Plaintiffs' right to a jury trial on the ownership or control issues, the Rule 42(b) factors nonetheless compel the denial of LG's Motion for a preliminary bench trial covering "ownership or control" issues,[1] and instead favor the post-verdict resolution of issues related to antitrust standing.

Second, as the district courts presiding over the *LCD* litigation held, any preliminary bench trial on antitrust standing would be antithetical to concerns over judicial economy, and would instead be, in Judge Ilston words, "a cumbersome and repetitive process to resolve what [Defendants]

---

[1]        As the Court has recognized, Plaintiffs are entitled to proceed to trial on the *Royal Printing* "ownership or control" exception to the general bar on indirect purchaser standing under the antitrust laws.  *See* ECF No. 4742, Order on Defendants' Motions For Summary Judgment Relating To Standing And The Direct Purchaser Rule ("Antitrust Standing Order").

characterize as unresolved issues about standing." Exhibit 1. This is why both Judge Ilston and Judge Jones declined to hold preliminary bench trials on antitrust standing in the *LCD* litigation.

<u>Third</u>, as explained below in Section III, LG's arguments regarding efficiency are premised on a mischaracterization of the logical relationship between the evidence of corporate ownership to other contested factual issues (such as the lack of withdrawal by certain conspirators). The evidence of corporate relationships that would comprise a bench trial on antitrust standing must necessarily come into evidence during the jury trial as well. For this reason, a preliminary bench trial would result in litigating the evidence of corporate relationships twice – an outcome that is demonstrably inefficient. Moreover, a preliminary bench trial would achieve this inefficiency without narrowing any triable issues; in any bench trial, the Court would have to resolve issues that are likely to be obviated by the jury's verdict. By deferring the resolution of antitrust standing issues until after the jury reaches its verdict, the Court will promote efficiency by resolving only those ownership or control issues that are necessary to the entry of judgment.

<u>Fourth</u>, LG does not demonstrate any unavoidable prejudice that would result from trying the corporate relationship evidence once. It would be a highly rare event if the plaintiff and defendant in a civil case agreed about the amount of damages sought; the fact that there is disagreement here does not constitute prejudice to LG, let alone undue prejudice that is sufficient to justify bifurcation. Further, the timing of the proposed bench trial – between Thanksgiving and the December 12–13 pretrial conference – would be burdensome and prejudicial to Plaintiffs as it would take away resources from preparing for the jury trial commencing on January 9, 2017.

Accordingly, both legal and practical concerns compel the denial of LG's Motion. Issues related to ownership or control should either be submitted to the jury, or barring that, decided by the Court after the jury reaches its verdict.

## I.    BIFURCATION IS LEGALLY IMPROPER BECAUSE PLAINTIFFS HAVE A SEVENTH AMENDMENT RIGHT TO TRIAL BY JURY ON OWNERSHIP/CONTROL ISSUES

As a threshold matter, a bench trial on ownership or control is improper because it would improperly deprive Plaintiffs of their constitutional right to a jury trial on the issue of ownership or

control and the *Royal Printing* exception to the bar on indirect purchaser antitrust standing.  *See Am. Steel & Stairways, Inc. v. Lexington Ins. Co.*, No. 12-cv-03103-JST, 2013 WL 4425704, at *2 (N.D. Cal. Aug. 14, 2013) ("a court may not bifurcate a trial in a way which interferes with a defendant's Seventh Amendment right to a trial by jury") (Tigar, J.) (citing *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961-62 (9th Cir. 2001)).

   The Court has already ruled that there are triable issues of fact with respect to multiple conspirator/vendor control relationships.  *See* ECF No. 4742, Antitrust Standing Order at 33-43 (denying summary judgment motions directed at the control relationships between Panasonic and Sanyo; Samsung SDI and Samsung Electronics; and Mitsubishi and NMV).  Further, it is well settled that an antitrust plaintiff suing for damages under the Sherman and Clayton Acts has a constitutional right to a jury trial.  *See Standard Oil Co. of Cal. v. Arizona*, 738 F.2d 1021, 1028 (9th Cir. 1984) (holding that the Seventh Amendment protects litigants' right to a jury trial on Sherman and Clayton Act claims); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959) ("the right to trial by jury applies to treble damage suits under the antitrust laws, and is, in fact, an essential part of the congressional plan for making competition rather than monopoly the rule of trade").

   As explained below, LG's Motion relies on non-precedential dicta from *ATM Fee* that incorrectly conflates antitrust standing (which relates to the merits of a federal antitrust claim) with constitutional standing (which bears on the Court's jurisdiction under Article III).  Because antitrust standing is not jurisdictional, removing this issue from the jury's consideration would violate Plaintiffs' Seventh Amendment right.

**A.**   **The Ninth Circuit Has Never Held that Facts Relevant to Establishing Antitrust Standing Must Be Decided by the Court and Not a Jury**

   LG's Motion relies entirely on the faulty premise that *ATM Fee* dictates that this Court, and not the jury, resolve issues related to ownership or control.  LG asserts that "[t]he Ninth Circuit has specifically held that '[s]tanding is a question of law for the district court to decide.'"  Motion at 4 (quoting *ATM Fee*, 686 F.3d at 747).  But the Ninth Circuit *held* no such thing.

Although LG correctly quotes from *ATM Fee*, it counsels error with its characterization of the quoted language as the Ninth Circuit's holding.  Contrary to LG's contention, *ATM Fee* makes clear that its language about the appropriate arbiter of facts related to standing was necessarily unnecessary to its ultimate result.  As the Court commented:

> We need not decide whether the district court must conduct additional evidentiary inquiries or the necessary extent of those inquires when resolving issues of material fact at the summary judgment stage, because our holding confronts no genuine issue of material fact and does not rely on factual findings of the district court.

*Id.* at 748.  LG's Motion is therefore entirely reliant on dicta.[2]

And because the relevant portion of *ATM Fee* is dicta, it is not binding on this Court.  *See Chappell v. Mandeville*, 706 F.3d 1052, 1068 (9th Cir. 2013) ("none of these cases directly address the issue, and their statements [on the law] are dicta, not binding on this panel or on district courts within the circuit") (Graham, S.J., concurring); *Ayala v. United States*, 550 F.2d 1196, 1200 (9th Cir. 1977) ("we conclude here that we are not bound by new dictum" from the Supreme Court), *writ of certiorari dismissed*, 435 U.S. 982 (1978); *Ballesteros v. Am. Standard Ins. Co. of Wisc.*, 436 F. Supp. 2d 1070, 1077 (D. Ariz. 2006) (declining to follow as non-precedential appellate court's dicta concerning issue not raised on appeal).

LG thus presents as controlling precedent a sentence from *ATM Fee* that commented on an issue that was not before that Court and irrelevant to its holding.  But the Ninth Circuit has never decided a case that turned on whether the Court or the jury is the proper trier of facts related to the *Royal Printing* exception.  The Court is therefore not bound by the *ATM Fee* dicta relied on by LG as the premise for its entire Motion and is instead free to determine *ab initio* whether Plaintiffs have a constitutional right to a jury trial on contested factual issues related to antitrust standing.

---

[2]     *See, e.g., Best Life Assurance Co. v. Comm'r*, 281 F.3d 828, 834 (9th Cir. 2002) (defining dictum as "a statement 'made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential ...' ") (quoting Black's Law Dictionary 1100 (7th ed.1999)); *Export Group v. Reef Indus., Inc.*, 54 F.3d 1466, 1472 (9th Cir. 1995) (holding that statements were dicta when they "were not necessary to the decision"); *United States v. Johnson*, 256 F.3d 895, 919-21 (9th Cir. 2001) (en banc) (Tashima, J., concurring).

**B.** **Questions of Fact Relevant to Establishing Antitrust Standing Must Be Decided by the Jury**

LG's Motion is premised on the notion that the Court, and not the jury must resolve factual disputes related to ownership or control.   This contention conflates antitrust standing with constitutional standing.[3] It is also an incorrect statement of Ninth Circuit law, and conflicts with binding precedent that predates *ATM Fee.  See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1175 (9th Cir. 2004) (holding that although porpoises, dolphins, and whales do not have statutory standing to sue in federal court, the absence of such standing is not jurisdictional in nature).   Whereas constitutional standing is necessary to create a case or controversy sufficient to invoke an Article III Court's limited jurisdiction (and is therefore an issue for determination by the Court), antitrust standing relates only to whether a plaintiff has stated a claim for relief (and is therefore a question for the jury).   Binding Supreme Court precedent and well-reasoned decisions from multiple Circuit Courts establish that *ATM Fee*'s "less than meticulous" discussion of standing confuses the former with the latter.

As Justice Ginsburg demonstrates in *Arbaugh v. Y&H Corp.*, LG makes the same mistake that many other federal courts (including the Supreme Court, as set forth below) have made with the "merits versus jurisdiction" characterization:

> On the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been *less than meticulous*. 'Subject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief – a merits-related determination.' We have described such unrefined dispositions as 'drive-by jurisdictional rulings' that should be accorded 'no precedential effect' on the question whether the federal court had authority to adjudicate the claim in suit.

546 U.S. 500, 511 (2006) (citations omitted and emphasis added).

And far from being an academic debate on an esoteric point of law, this distinction between constitutional standing and the merits of a federal statutory claim is dispositive as to the appropriate

---

[3]      The cases relied on by *ATM Fee* for the proposition that the Court is the appropriate arbiter of fact questions relevant to standing all analyze *constitutional* standing, and not *antitrust* standing.  *See Haase v. Sessions*, 835 F.2d 902, 904 (D.C. Cir. 1987); *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 79 (1978); *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

1   trier of fact for the ownership or control issue.  As Justice Ginsburg further explained on behalf of a

2   unanimous Court in *Arbaugh*, "in some instances, if subject-matter jurisdiction turns on contested

3   facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own.  If

4   satisfaction of an essential element of a claim for relief is at issue, however, the jury is the proper

5   trier of contested facts."  *Id.* at 514.

6       When the *Arbaugh* "merits versus jurisdiction" analysis is conducted with respect to antitrust

7   standing, it is apparent that contested facts relevant to the ownership or control issue are not needed

8   to establish a case or controversy.  Indeed, this result is compelled by Ninth Circuit law.  *See*

9   *Cetacean Cmty*, 386 F.3d at 1175 ("[I]f a plaintiff has suffered sufficient injury to satisfy Article III,

10  a federal court must ask whether a statute has conferred 'standing' on that plaintiff.... If a plaintiff

11  has suffered sufficient injury to satisfy the jurisdictional requirement of Article III but Congress has

12  not granted statutory standing, that plaintiff cannot state a claim upon which relief can be granted.")

13      Applying this legally correct treatment of non-constitutional standing, the Second, Third, and

14  D.C. Circuits have expressly recognized that antitrust standing is not jurisdictional in nature.  *See*

15  *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 129 (2d Cir. 2003) (holding that standing under the

16  Sherman and Clayton Acts "is essentially indistinguishable from the merits of the action," and that

17  "its absence is not a jurisdictional bar to suit, but a failure to state a claim."); *Sullivan v. DB Invs.,*

18  *Inc.*, 667 F.3d 273, 307 (3d Cir. 2011) ("[L]ack of antitrust standing affects a plaintiff's ability to

19  recover, but does not implicate the subject matter jurisdiction of the court."); *In re Lorazepam &*

20  *Clorazepate Antitrust Litig.*, 289 F.3d 98, 107-08 (D.C. Cir. 2002) ("Unlike constitutional standing,

21  this court's jurisdiction does not turn on antitrust standing."); *see also Am. Psychiatric Ass'n v.*

22  *Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) ("[W]hat has been called "statutory

23  standing" in fact is not a standing issue, but simply a question of whether the particular plaintiff "has

24  a cause of action under the statute.") (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*,

25  ___ U.S. ___, 134 S. Ct. 1377, 1387 (2014)).

26      Thus, the Ninth Circuit, along with the Second, Third, and D.C. Circuits, all confirm the

27  legally correct conclusion that a case or controversy exists with respect to Sears' and Kmart's claims

28

1  against LG even if Plaintiffs do not have antitrust standing under *Royal Printing* for certain of their

2  purchases.   As the Court has already held, "there is substantial evidence that the conspiracy

3  adversely and measurably impacted [Plaintiffs]," and that Plaintiffs have submitted sufficient

4  evidence to demonstrate injury in fact.  *See* Antitrust Standing Order at 32.  The Court therefore has

5  subject-matter jurisdiction over the entirety of Sears' and Kmart's antitrust claims, independent of

6  the outcome of the *Royal Printing* "ownership or control" inquiry.  For that reason, Plaintiffs have a

7  Seventh Amendment right to have a jury determine contested issues of fact that are part of that

8  analysis.

9      LG's request for bifurcation would deprive Plaintiffs of that right, and the Motion should

10  therefore be denied.

## II.   AS OTHER COURTS HAVE FOUND, A PRELIMINARY BENCH TRIAL ON "ANTITRUST STANDING" ISSUES WOULD INEFFICIENTLY AND UNNECESSARILY DUPLICATE THE PROCEEDINGS BEFORE THIS COURT

13      Although the Court need not consider the Rule 42(b) factors if it determines that Plaintiffs

14  have a right to a jury trial on antitrust standing issues, even if the Court rejects Plaintiffs' Seventh

15  Amendment argument, any preliminary bench trial on ownership/control would be, in the well-put

16  words of Judge Ilston, "a cumbersome and repetitive process."  *See In re TFT-LCD (Flat Panel)*

17  *Antitrust Litigation*, Case No. 07-1827, ECF No. 8282 (N.D. Cal. July 8, 2013) (Exhibit 1).

18      LG suggests that efficiency is served by conducting a bench trial on contested issues related

19  to antitrust standing between Thanksgiving and the winter holidays, one month prior to the parties'

20  January trial.  But as the Court is well aware, evidence of corporate ownership is central to multiple

21  issues in this case beyond those that would be part of the bench trial proposed by LG.  *See, e.g*

22  Antitrust Standing Order (discussing evidence of ownership or control in the context of antitrust

23  standing); ECF No. 4786, Order on Defendants' Motions For Summary Judgment Relating to

24  Withdrawal and the Statute of Limitations (discussing evidence of ownership or control in the

25  context of the "withdrawal" affirmative defenses) ("Withdrawal Order").  For this reason, even if the

26  Court were to conduct a bifurcated bench trial on antitrust standing issues, Plaintiffs would still be

27

28

required to re-introduce nearly all the "ownership or control" evidence from the bench trial into evidence during the jury trial.

This is why this request for a bench trial has been repeatedly rejected by the federal courts that have considered the remedy sought by LG's Motion.  In addition to characterizing the requested proceeding as "cumbersome and repetitive," Judge Ilston determined that all factual findings relevant to the ownership or control inquiry should be submitted to the jury.  *See* Exhibit 1.  And although Judge Jones stood as trier of fact for the ownership/control inquiry in the Costco/LG trial (Costco did not raise the Seventh Amendment argument made by Plaintiffs here),[4] he also rejected LG's request for a pre-verdict determination of the issue:

> The court will follow the proposal it outlined to the parties as to resolving the application of the control exception after the jury's verdict, if necessary.  Defendants articulated no specific prejudice to them from that proposal, and instead articulated reasons that the court should direct a verdict in their favor as to the participation of several entities in the conspiracy.  The court declines to direct a partial verdict.... [The Court's instructions to the jury] will permit the court, if necessary, to apply the control exception to the jury's verdict before the entry of judgment.

Exhibit 2.  Indeed, even where (for what were likely tactical reasons)[5] the plaintiffs agreed that a pretrial determination of antitrust standing was appropriate, the *LCD* remand court denied Defendants' motion for a bench trial on ownership/control issues.  *See* Exhibit 3 (denying motion for bench trial).

---

[4]     As best as Plaintiffs can tell, Judge Jones and Judge Ilston are the only district judges within the Ninth Circuit to preside over trials, post-*ATM Fee*, that required a determination of whether the court or the jury should serve as trier of fact for issues related to ownership or control.

[5]     Attorneys from Boies Schiller & Flexner, who represented essentially the same litigation group in *LCD* as they do in *CRT*, opposed any bifurcation of the ownership/control issues on behalf of all other clients that they represented, consenting to the proceeding only on behalf of Tech Data.  Other than in the Tech Data action, all other cases settled before any district court resolved the issue of bifurcation.  *Compare Tech Data Corp. v. AU Optronics Corp.*, Case No. 11-cv-2454-VMC, ECF No. 78 at 20 (M.D. Fla. July 14, 2015) ("Tech Data has no objection to a pretrial ruling on which of its purchases it can include as part of its damages claim."); *with Electrograph Sys., Inc., v. Epson Imaging Devices Corp.*, Case No. 09-cv-04845-JMA, ECF No. 417 (E.D.N.Y. Mar. 6, 2016) (opposing motion for bench trial); *and Interbond Corp. v. AU Optronics Corp.*, Case No. 11-cv-61264-WPD, ECF No. 77 (S.D. Fla. July 13, 2015) (same).

### III.   A PRELIMINARY BENCH TRIAL IN PLAINTIFFS' TRIAL WOULD REDUCE EFFICIENCY AND ECONOMY WITHOUT NARROWING ANY ISSUES FOR THE JURY'S CONSIDERATION

The bench trial suggested by LG is even more inefficient in this case than it would have been in *LCD*, given the relevance of corporate ownership to the many withdrawal affirmative defenses that LG asserts, and the increased complexity of the Samsung SDI/Samsung Electronics control relationship (which was not at issue in LCD).  The colossal inefficiency that a preliminary bench trial would bring to the upcoming proceedings before this Court (even more than in the *LCD* actions) is best demonstrated by discussing the bundles of conspirator/vendor pairs implicated by LG's Motion.

#### A.   LG, Philips, Panasonic, Toshiba, and Hitachi

The bulk of LG's Motion is directed at vendors for which LG contends that there was a "lack of control during part of the alleged conspiracy."  *See* Motion at 6.  LG discusses Hitachi and Toshiba as two examples of such vendors, but it is clear from the Motion that LG's argument applies to all vendors that supposedly "withdrew" from the conspiracy, notwithstanding their continued ownership in CRT joint ventures formed with other conspiring Defendants.  Thus, LG's Motion implicates the control relationships with respect to Panasonic,[6] Philips, and LG itself,[7] in addition to Toshiba and Hitachi.

Given the scope of manufacturer/vendor relationships that the Motion implicates, it is apparent that no efficiency will be achieved by bifurcating the trial proceedings as requested by LG.  LG asserts that "it makes no sense to add complicated issues of corporate structure to an already lengthy trial involving allegations that scores of companies conspired to fix tube prices over the course of more than twelve years."  Motion at 9.  This statement reflects an apparent confusion regarding the logical relevance of the evidence of corporate relationships to the withdrawal affirmative defenses that LG asserts.  If LG were to get its wish, this Court would need to issue

---

[6]      Panasonic was the majority owner of MTPD, the Panasonic/Toshiba controlled joint venture. *See* Withdrawal Order at 15-18.

[7]      Together, LG and Philips controlled LG Philips Displays.  *See* Antitrust Standing Order at 44-46; Withdrawal Order at 19-25.

findings of fact and conclusions of law on the bench trial in December, before the start of the parties' January trial.  And then, regardless of the Court's verdict in the bench trial, the jury would still be required to hear the same evidence in order to resolve any contested factual issues related to the "withdrawal" affirmative defenses.[8]  *See* Withdrawal Order at 12-13 ("HDP did not sever all ties because it continued to own a 25% interest in a co-conspirator – Hitachi Shenzhen"); *id.* at 16 ("As a result of their shared ownership and control of MTPD with alleged coconspirator Matsushita, not only did Toshiba Defendants retain a significant ownership interest in a conspiring corporation, they continued to actively participate in the CRT industry beyond their purported 'exit.'"); *id.* at 20 ("LGE did not sever ties with the CRT industry or its CRT manufacturing business.  Instead, it transferred its CRT business to a joint venture that it owned and controlled jointly with another coconspirator."); *id.* at 23 ("As part of Royal Philips' joint venture agreement with LGE, all of the CRT operations of the Philips Subsidiaries were transferred to LPD in June 2001.").

Because this duplication of the presentation of evidence is highly inefficient and would require the parties to litigate certain evidence twice, bifurcation would be inappropriate.  *See Am. Steel & Stairways*, 2013 WL 4425704, at *3 (denying motion to bifurcate where "bifurcation would likely lead to unnecessary repetition in evidence and arguments," including requiring certain witnesses to testify twice).

But beyond doubling the time necessary to cover evidence of certain corporate relationships, the bench trial requested by LG would achieve this dubious feat without narrowing any issues for the jury's consideration.  The assertion to the contrary in LG's Motion is based on an apparent confusion about the scope of its joint and several liability for its co-conspirators' conduct.  LG incorrectly asserts that "Sears/Kmart must present evidence that this minority share in fact gave Hitachi the

---

[8]   Plaintiffs do not concede that the jury should be instructed on these withdrawal defenses, given the undisputed evidence of the conspirators' continued ownership in active members of the CRT cartel.  Plaintiffs believe that this evidence of ownership precludes LG from meeting its burden in demonstrating a prima facie case of withdrawal.  *See, e.g.,* Withdrawal Order at 24 (finding that a prima facie showing of withdrawal is established only on evidence of a conspirators' exit from the CRT industry coupled with an absence of any evidence of continued ownership in another conspirator).

1   ability to control SEG in order to recover based on post-March 2003 purchases from Hitachi finished

2   product vendors under the control exception."  Motion at 7.

3        That is wrong.

4        Assuming that Plaintiffs demonstrate that Hitachi (for instance) joined the CRT conspiracy,

5   LG is jointly and severally liable for all overcharges paid by Plaintiffs to Hitachi-controlled vendors

6   unless LG first establishes that all Hitachi entities (HTL, HDP, and HEDUS) withdrew from the

7   conspiracy upon their purported "exit" from the CRT manufacturing industry in 2003.  *Cf.*

8   Withdrawal Order at 4 ("Once a corporation has joined a price-fixing conspiracy, it is jointly and

9   severally liable for any actions taken in furtherance of the conspiracy until the objectives of the

10  conspiracy are completed or the defendant withdraws.").  This result applies with equal force to

11  Toshiba, Philips, and Panasonic.  In other words, even if it were determined that Toshiba did not

12  control MTPD after 2003, LG would still be liable for all of Toshiba's sales to Sears and Kmart,

13  unless LG meets the "high bar" needed to establish Toshiba's withdrawal.  *See* Withdrawal Order at

14  18.

15       There is no good reason for the Court to resolve before trial the issue of ownership or control

16  with respect to the bulk of the conspirator/vendor pairings that would be the subject of any

17  preliminary bench trial on antitrust standing.  The inefficiency in LG's request for bifurcation is

18  quantifiable: for these five conspirator-vendor pairings, the parties and the Court would have to try

19  the same evidence twice: once for the Court alone, and then again for the jury.  In exchange for this

20  inefficiency, the Court would not narrow a single issue that would need to be submitted to the jury

21  regardless of the outcome of the bench trial.  Any suggestion that this cumbersome and repetitive

22  process would promote efficiency therefore strains all credulity.  No matter the outcome of LG's

23  proposed bench trial, all the evidence relevant to these vendor/conspirator pairings – including the

24  damage estimates about which LG cries prejudice – would necessarily still be presented to the jury.

25       **B.   JVC, Daewoo, and Samsung**

26       LG identifies two vendors in its Motion for which it asserts that a bench trial is necessary

27  because there was "control during no part of the alleged conspiracy:" JVC and Daewoo.  LG also

28

1   neglects to mention Samsung Electronics, a third vendor that is the subject of a disputed control

2   relationship.

3        The efficiency argument discussed *infra* in Section III.A of this opposition applies with equal

4   force to these vendors.  Sears and Kmart will likely still need to explain to the jury the corporate

5   relationships that justify Plaintiffs' recovery based on purchases from these CRT Product vendors.

6   Accordingly, the parties would need to litigate the evidence of corporate ownership of these entities

7   twice if Sears and Kmart were to prevail on any of these vendors.  This result also compels the

8   denial of the Motion.  *See Am. Steel & Stairways*, 2013 WL 4425704, at *3 ("It makes little sense to

9   require those witnesses to testify twice, when once would be sufficient.").

10       Further, although the evidence of corporate ownership of JVC and Daewoo will be relatively

11   brief and straightforward, as the Court is already well aware, the evidence with respect to the

12   relationship between Samsung SDI and Samsung Electronics is more complex, and will require the

13   direct testimony and cross-examination of an expert witness, Dr. Stephan Haggard.  *See* Antitrust

14   Standing Order at 35-42.  Further, for evidence of corporate ownership, Plaintiffs currently intend to

15   rely primarily on the testimony of their summary witness, Dan Gill, who will provide visual aids that

16   help demonstrate the nature of the corporate relationships between the relevant entities.  Thus, from

17   a timing standpoint, the bench trial will be based mostly on live testimony (including expert

18   testimony), and not merely on stipulated facts as LG contends.

19       LG does not demonstrate any good reason why the parties and the Court must litigate this

20   evidence in open court twice.  Its primary argument is, apparently, that this process was inefficient in

21   LG Display's trial against Costco in the LCD litigation before Judge Jones.  But the only support for

22   this claim of inefficiency is the fact that Judge Jones' entry of final judgment was issued roughly

23   seven months after the verdict.  *See* Motion at 9 & LG's Exhibit I.  This argument is specious, given

24   that Judge Jones' Order was devoted mostly to addressing *other* post-trial issues raised by LG

25   Display; the bench trial findings of fact and conclusions of law on ownership and control occupy just

26   two pages out of a 12-page Order.  *See* Order Entering Judgment, Exhibit 4.  As Judge Jones

27   expressly indicated in a post-trial order requiring the parties to submit supplemental briefing, the

28

1  issue of corporate ownership was very simple; instead, the supplemental briefing was necessary to

2  address new arguments raised by Defendants related to standing that required analysis of the entire

3  factual record before the Court:[9]

> The "dispute" upon which the parties focused with respect to the control exception was whether the six vendors were in control relationships with conspirators. In the court's view, that was never much of a dispute, or at least not much of a dispute for the court. It was the jury's job to decide (among other things) who participated in the conspiracy. Once it did, however, the court's factual findings were simple. Five of Costco's six vendors were (according to a stipulation the parties reached in the third week of trial) at all relevant times either wholly-owned subsidiaries of a conspirator or wholly-owned subsidiaries of a conspirator's wholly-owned subsidiary. The determination as to whether JVC was in a control relationship with a conspirator was slightly more complicated, but only slightly. The court's assumption, based on the parties' focus on Costco's vendors, was that all that remained before the entry of judgment was for the court to formalize the conclusion that all six vendors were in control relationships with conspirators. Not so, insist the Defendants.

12  *See* Order Re Supplemental Briefing, Exhibit 5. Moreover, LG's argument that its proposed bench

13  trial is the best course defies logic. To the extent that resolution of the ownership and control issues

14  will actually require many months for *this* Court to resolve, the preliminary bench trial on antitrust

15  standing would surely delay the jury trial on liability that would follow just one month later, after the

16  winter holidays.

17       LG should not be able to use its request for a bench trial to raise issues now that should have

18  been part of the summary judgment motions filed in 2014. LG claims that it does not believe that

19  Plaintiffs have evidence to establish Panasonic's control over JVC and that "[it] is not aware of any

20  admissible evidence establishing that [Daewoo] was controlled by an alleged conspirator." (LG's

21  bluster on this point should be tempered by the fact that Judge Jones found that a control relationship

22  existed between Panasonic and JVC in the LCD litigation based on essentially the same facts of

23  corporate ownership that will be introduced in the trial on Sears' and Kmart's claims). This would

24  have been a perfectly valid basis to seek summary judgment on the ability of all plaintiffs in this

---

[9]       The new standing argument raised by Defendants was that Costco was not a direct purchaser because some of the price-fixed panels in the televisions bought by the retailer may have been first sold to original equipment manufacturers before being sold to the downstream owned/controlled vendors. In rejecting this argument, Judge Jones was required to consider the full factual record at trial, beyond just evidence of corporate ownership. *See* Exhibit 4.

MDL to recover based on indirect purchases from these vendors and it would have allowed for a pretrial ruling that would apply across all Plaintiffs in the MDL.  But LG should not be able to literally double the time it will take the parties to litigate evidence of corporate ownership because it declined to file such a motion two years ago, and its cries of prejudice should ring hollow for that reason alone.

### C.   <u>Zenith</u>

Finally, LG suggests that Sears and Kmart cannot recover from it based on purchases from Zenith, its own wholly-owned subsidiary.[10]  *See* Motion at 7-8.  LG's asserted reason is that "[t]he evidence will show that a sizeable portion of Sears/Kmart's purchases from Zenith were not indirect purchases of price-fixed products at all."

As initial matter, LG is legally precluded from raising this argument, which is essentially a "tracing" argument.  Like all other Defendants in this MDL, in response to a Request for Admission served by Plaintiffs, LG admitted, without qualification, that it "[could] not identify the CRT Manufacturer of the CRT used in any given CRT Product manufactured or sold by you."  *See* LG's Response to Plaintiffs' Request for Admission No. 30, Exhibit 6.  This admission notwithstanding, LG now seeks to contend that Sears' and Kmart's purchases from Zenith (its wholly-owned subsidiary) are not recoverable because it can now identify the CRT manufacturer in "90% of the finished [CRT] products that Zenith produced before 1999."  *See* Motion at 7-8.  To the extent that LG could identify the CRT manufacturer in the CRT Products sold by Zenith, its wholly-owned subsidiary, it was obligated to so indicate in response to the RFA.  Because LG cannot escape its unqualified admission to a Rule 36 RFA, it cannot make this argument at trial, and it has no legal basis to contest Plaintiffs' antitrust standing to recover based on this purchases from LG's wholly-owned subsidiary.

But even if LG were permitted to make this argument – and it should not be – the place to suggest that certain tubes were not part of a price-fixing conspiracy is to the jury.  Indeed, LG cites

---

[10]     LG held a majority ownership interest in Zenith between 1995 and 1999, and it has retained a 100% ownership interest (either direct or indirect) in Zenith since 1999.

1   no precedent whatsoever for its apparent contention that this core question of liability relates to

2   antitrust standing.

3          Accordingly, there is no basis for a bench trial on any vendor identified by LG's Motion and

4   the request for bifurcation should be denied.  If the Court determines that it, and not the jury,[11] is the

5   appropriate trier of these issues, then the evidence should be heard just once, during a bench trial that

6   is conducted simultaneously with the jury trial.

7   **IV.   LG DOES NOT DEMONSTRATE THAT UNDUE PREJUDICE WOULD RESULT
        FROM TRYING THE EVIDENCE OF CORPORATE RELATIONSHIPS JUST**

8   **    ONCE**

9          The requested bifurcation is also improper because LG does not establish that any

10  demonstrable prejudice would occur by conducting a preliminary bench trial on antitrust standing.

11  As the Court is well aware, LG has filed or joined roughly 60 pretrial motions aimed at reducing all

12  or part of Plaintiffs' claims.  But LG never filed any *Daubert* or *in limine* motion challenging the

13  damages calculations sought by Plaintiffs, and it did not raise any issue about the majority of the

14  conspirator/vendor pairings that would be the subject of any bench trial.  Instead, LG now files the

15  instant Motion in another attempt to atomize Plaintiffs' claims and interject a new hoop to jump

16  through before Plaintiffs can present their claims to a jury.

17         The supposed basis of the instant Motion – "prejudice"– is equally without merit.  If a

18  dispute by the defendant over the amount of a plaintiff's damages were sufficient to justify

19  bifurcation, then *every* trial would bifurcate damages issues from liability.  Here, LG does not even

20  request full bifurcation; instead, it wishes a pretrial proceeding to take a 61st (or thereabouts) crack

21  at what it contends amounts to 30% of Sears' and Kmart's combined damages claims.[12]   LG

22  therefore fails in its attempt to demonstrate prejudice.

23

---

24         [11]      Even if the Court makes such a determination, there is nothing preventing the Court
    from submitting the ownership/control issues to the jury in an advisory capacity, and then relying on
25  (or rejecting) the jury's verdict for the purposes of the Court's own findings of fact and conclusions
    of law.  This approach would have the added benefit of documenting for any reviewing appellate
26  court what the result would have been under both the jury trial approach and the bench trial
    approach.

27         [12]      As discussed in Section III.A, even with a preliminary bench trial, the majority of the
28  damages disputed by LG would still to go to the jury, because a finding of control with the

Further, even if LG could show some prejudice – and it cannot – it does not establish *undue* prejudice that would warrant bifurcation under Rule 42(b).  *See Am. Steel & Stairways*, 2013 WL 4425704, at *2 (requiring a showing of *undue* prejudice and commenting that: "This Court is not persuaded that potential prejudice to the Defendants cannot be cured [with a limiting instruction], and the Court will not bifurcate the claims because of a mere possibility of prejudice.  Rule 42(b) merely *allows*, but does not require, a trial court to bifurcate cases 'in the furtherance of convenience or to avoid prejudice.'") (quoting *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004)) (emphasis in original).

## V.   A SIMULTANEOUS BENCH AND JURY TRIAL ON ANTITRUST STANDING WOULD BE SUPERIOR TO A PRETRIAL BENCH TRIAL ON ANTITRUST STANDING IN EVERY WAY

To the extent that the Court is not persuaded that Plaintiffs have a constitutional right to a jury trial on contested factual issues related to antitrust standing and instead decides to resolve these factual disputes itself, Plaintiffs respectfully submit that a preliminary bench trial is improper under Rule 42(b), for the reasons raised in Sections II, III, and IV of this brief.

The central question on efficiency presented by LG's Motion is whether the parties should litigate the evidence of corporate relationships at issue once, or whether they should litigate it twice.  LG suggests that doing it twice is better.  Plaintiffs disagree.

Instead, Plaintiffs believe that interests of efficiency and judicial economy are best served if the Court and the jury hear this evidence once, at the same time.  Thus, Plaintiffs will introduce their evidence of corporate ownership and control, including the summary witness testimony of Mr. Gill, the expert testimony of Dr. Haggard, and other evidence in a trial proceeding with the jury present. The Court can then issue any necessary findings of fact and conclusions of law after the jury returns its verdict.

Beyond providing for a process that is unquestionably more efficient, this process will also allow the Court to decide only those issues that are necessary to the entry of judgment.  For example,

---

conspiring joint venture at issue (*e.g.*, Toshiba/MTPD) is not a prerequisite to establishing standing for Plaintiffs' purchases from conspirator-owned vendors.

1  to the extent that the jury (or the Court as a matter of law) rejects LG's affirmative defenses of

2  withdrawal as to any conspirator, this would obviate the need to decide certain control relationships

3  (as discussed in Section II.B, *supra*).

4     Accordingly, Plaintiffs submit that the simultaneous consideration by the jury and the Court

5  of the evidence of corporate relationships is the superior approach to a preliminary bench trial.  It

6  avoids the duplication of the trial proceedings, and allows the Court to resolve only those issues that

7  actually require resolution in order to enter judgment.

8     LG's Motion for Bifurcation should therefore be denied.

9  Dated: August 30, 2016                    Respectfully submitted,

10                                           KENNY NACHWALTER, P.A.

11

12                                           By:  _____

13                                                Richard Alan Arnold, Esquire
                                                  William J. Blechman, Esquire

14                                                Kevin J. Murray, Esquire
                                                  Samuel J. Randall, Esquire

15                                                1441 Brickell Avenue
                                                  Suite 1100

16                                                Miami, Florida  33131
                                                  Tel:   (305) 373-1000

17                                                Fax:   (305) 372-1861
                                                  E-mail:  rarnold@knpa.com

18                                                         wblechman@knpa.com

19                                                         kmurray@knpa.com
                                                           srandall@knpa.com

20                                                *Counsel for Plaintiffs Sears, Roebuck and Co.
                                                  and Kmart Corporation*

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

On August 30, 2016, I caused a copy of the foregoing Opposition to LG's Motion for Bifurcation to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 29, 2008.

By: _____

Samuel J. Randall

548234.1