# Exhibit 5

HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COSTCO WHOLESALE CORPORATION,

        Plaintiff,

     v.

AU OPTRONICS CORPORATION, et al.,

        Defendants.

CASE NO. C13-1207RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on the parties' joint statement regarding the entry of judgment. Dkt. # 643. In light of that statement, the court rules that it cannot yet enter judgment, and orders the parties to submit supplemental briefing as described in this order. The clerk shall CREATE A MOTION CALENDAR for May 1, 2015 to address the supplemental briefing.

## II. BACKGROUND

### A. Application of the control exception

Following five weeks of trial, the jury concluded that Defendants conspired with many others to fix the prices of TFT-LCD panels. The jury also concluded that Costco paid more than $36 million in overcharges as a result of that conspiracy.

The jury's verdict, however, was not a sufficient basis for the court to enter judgment. Running parallel to the jury trial was a non-jury dispute about the application of what the court has called the "control exception" to the general rule that only direct

ORDER – 1

purchasers of price-fixed goods have standing to invoke federal antitrust laws. Costco was undisputedly not the direct purchaser of anything from Defendants. Instead, Costco bought finished products containing price-fixed panels from six vendors incorporated in the United States. Those vendors were Samsung Electronics America, Inc., Sharp Electronics Corporation, two Toshiba entities whom the court treats as a single vendor it calls "Toshiba America," Panasonic Corporation of North America, and JVC. The parties disputed whether those purchases fell within the scope of the control exception. Resolution of that dispute was thus a precursor to the entry of judgment.

As the court explained in a September 11, 2014 order (Dkt. # 558) the general rule (first established in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)) is that only direct purchasers of price-fixed goods have standing to invoke federal antitrust laws. The control exception permits an indirect purchaser of a price-fixed good to sue where it purchased that good from a direct purchaser in a "control relationship" with a price fixer. The parties disagree about what constitutes a "control relationship," although the court resolved most of those disagreements in the September 11 order. But, to give an uncontroversial example, a plaintiff who purchases price-fixed goods from the wholly-owned subsidiary of a price fixer can invoke the Clayton Act even though it is not a direct purchaser. The logic behind the control exception is that an direct purchaser under the control of a price fixer will never sue, so unless courts extend standing to indirect purchasers, the price fixer would be immune from federal antitrust liability.

Application of the control exception was the court's job. Ninth Circuit precedent dictates that the court, not the jury, must decide factual issues necessary to resolving the application of the control exception. *Martinez v. Concord EFS, Inc. (In re ATM Fee Antitrust Litig.)*, 686 F.3d 741, 747 (9th Cir. 2012) ("Because the court (and not a jury) decides standing, the district court must decide issues of fact necessary to make the standing determination."). The process of placing the control exception issues before the

ORDER – 2

court was difficult. To make a very long story short, the court had yet to decide those issues when the jury trial concluded.

The "dispute" upon which the parties focused with respect to the control exception was whether the six vendors were in control relationships with conspirators. In the court's view, that was never much of a dispute, or at least not much of a dispute for the court. It was the jury's job to decide (among other things) who participated in the conspiracy. Once it did, however, the court's factual findings were simple. Five of Costco's six vendors were (according to a stipulation the parties reached in the third week of trial) at all relevant times either wholly-owned subsidiaries of a conspirator or wholly-owned subsidiaries of a conspirator's wholly-owned subsidiary. The determination as to whether JVC was in a control relationship with a conspirator was slightly more complicated, but only slightly. The court's assumption, based on the parties' focus on Costco's vendors, was that all that remained before the entry of judgment was for the court to formalize the conclusion that all six vendors were in control relationships with conspirators.[1] Not so, insist the Defendants.

Defendants point out that the focus on Costco's vendors obscures that Costco was obligated to prove that the vendors were themselves direct purchasers of price-fixed goods. Defendants have at least two formulations of this assertion. First, they argue that it matters that the vendors bought only finished products (televisions, monitors, and the like), not the price-fixed panels themselves. Joint Stmt. at 1 ("Costco was required to show . . . that the vendors themselves were direct purchasers of LCD panels, not just of the finished products."). An alternate formulation, however, is Defendants' contention that as to an unspecified portion of Costco's purchases, the finished products in question were manufactured by ODMs (original design manufacturers) who were themselves the direct purchasers of the price-fixed panels. The first formulation does not concern the

---

[1] The record before the court is sufficient to permit it to reach findings and conclusions as to the six vendors' control relationships with conspirators. The court does not need additional input from the parties.

ORDER – 3

court, at least at this stage.  The second formulation, however, convinces the court that it cannot enter judgment without receiving supplemental briefing.

To the extent Defendants and their conspirators used each other or entities under their control to assemble price-fixed panels into finished products, they cannot escape liability.  As a hypothetical example, if a conspirator sold price-fixed panels to a wholly-owned subsidiary who assembled the panels into finished products that it sold to Costco, Costco has standing to sue the conspirator.  That hypothetical ruling has two parts.  The first is that it makes no difference for purposes of assessing standing that Costco bought finished products instead of price-fixed panels.  The second is that although the direct purchaser is the wholly-owned subsidiary, Costco has standing to sue via the control exception.  The first part is a legal ruling, one that the court strongly suspects the MDL court made many times before this case arrived here for trial.  In any event, Defendants had years to convince the MDL court to dispense with Costco's claims on the grounds that it purchased finished products, not panels.  The court will not give Defendants another opportunity to do so on the eve of judgment.  The second part, however, incorporates a factual ruling that the subsidiary was the direct purchaser.  Costco, as the next-most-direct purchaser, can rely on the control exception for its standing.

What the court calls the "next-most-direct purchaser rule" is as follows:  Costco's burden to prove standing at trial included the burden to prove that for the finished products it purchased from the six vendors, it was the first purchaser "outside the conspiracy" of the panels incorporated in those products.  A purchase is "outside the conspiracy" when a purchaser who is neither a conspirator nor an entity in a control relationship with a conspirator makes it.  So, if Defendants correctly assert that independent ODMs purchased panels from conspirators and used them to manufacture finished products, Costco is not the next-most-direct purchaser of those panels, even if it ultimately bought the finished products containing those panels from a conspirator or entity in a control relationship with a conspirator.

ORDER – 4

The court cannot rule, at this time, that Costco is (or is not) the next-most-direct purchaser of the finished products it bought from the six vendors. Costco must point the court to evidence in the record that would permit it to reach that conclusion, and the court will give Defendants the opportunity to point to contrary evidence.

The court disagrees with Costco's assertion that Defendants waived application of the next-most-direct purchaser rule by not preserving it at trial. Costco bore the burden to prove the facts necessary to establish its standing. Defendants had no obligation to tell Costco what it needed to prove to meet that burden. Moreover, Costco repeatedly kept the jury from seeing evidence relevant to the supply chain. Often it did so on the grounds that Defendants were attempting to introduce prohibited "pass-through" evidence to the jury. *See* Sept. 17, 2014 ord. (ruling on motions in limine, excluding evidence that overcharges on panels did not pass through the supply chain to Costco). But on at least one occasion, Costco kept supply chain evidence from the jury on the grounds that the evidence related only to issues that the court must decide. Defendants proposed to have an expert witness, Dr. Edward Snyder, testify about slides showing the complexities of the supply chain by which the conspirators' panels moved from manufacture to their incorporation into finished products and eventually to Costco. Costco objected:

> There's no apparent way in which that relates to any issue which this jury needs to decide. It appears to simply be [a way] to circumvent the decisions on – your decisions that will be coming on ownership and control and the decision you've already made on pass-through.

> It's an attempt to suggest to the jury that the way in which these panels got into finished products and got to Costco is so complicated that the jury should do some deduction from the six vendors we have identified. If a deduction is going to be done because of the ownership and control complication, the court will do that.

Trial Tr. 2547-48 (Oct. 15).[2] The court would strongly have preferred the parties to have already pointed the court to the evidence necessary to make that determination, especially

---

[2] The court cites the trial transcript as it now appears on the docket. The parties should do the same in supplemental briefing. Previous versions of the transcript that Defendants cited in the joint statement have page numbering that restarts on each trial day.

ORDER – 5

given the parties' protracted battle over the comparatively simple dispute over who controlled Costco's vendors. That ship has sailed, however, and the court must now resolve the issue.[3] It cannot do so without supplemental briefing.

**B.    Settlement Offset**

An unrelated dispute that the parties raised in the joint statement is over the appropriate offset from the verdict to account for compensation Costco received from defendants who settled. The parties agree that Costco received approximately $47,750,000 in cash payments from those settlements, along with a small amount of product for resale. The parties are also in agreement that once the court has calculated an appropriate offset, the court should subtract it from Costco's damage award (after first trebling that award in accordance with § 4 of the Clayton Act, 15 U.S.C. § 15) to determine the amount of the judgment.

The parties have several disputes as to whether the offset should be adjusted upward or downward from the sum of the cash and in-kind payments Costco received. Defendants contend that the amount should be adjusted upward to account for the non-monetary benefits of the settlements. The only non-monetary benefit Defendants identify is the cooperation that settling defendants provided. Costco, for its part, argues that the court should adjust the offset downward to account for its expenses in obtaining those settlements. It is not clear what Costco means by "expenses" in this regard, and the court has no idea how Costco intends to demonstrate that the payments it received in connection with its settlement were not complete compensation for those expenses. Costco also argues that the offset should be adjusted downward because its settlements included compensation not just for the resolution of Costco's claims in this lawsuit, but

---

[3] Defendants, for their part, have been inconsistent as to whether the court or the jury should decide who was the next-most-direct purchaser of the price-fixed panels. When they moved for a directed verdict, one of the grounds was that "Costco has failed to prove that its vendors were direct purchasers of panels." Trial Tr. 3166 (Oct. 21). They argued that "this relates to the ownership and control exception, *although it's not part of the ownership and control trial . . . ." Id.* (emphasis added). *Id.*

ORDER – 6

for the resolution of claims in which Costco was an indirect purchaser of finished products.

The parties will submit supplemental briefing to decide the question of offsets.

### III. SUPPLEMENTAL BRIEFING

The court orders supplemental briefing as follows. The court's deadlines are arbitrary; the parties may adjust them (within reasonable limits) by stipulation.

1) No later than April 20, 2015, the parties shall each submit a supplemental brief of 20 pages or fewer addressing these issues:

   a) Is there any dispute that the court must determine whether Costco was the next-most-direct purchaser of the finished products it acquired from the six vendors? Is there any dispute that the jury did not make that determination?

   b) Is the next-most-direct purchaser rule an accurate statement of law?

   c) What evidence in the trial record supports (or undermines, in the case of Defendants' supplemental brief) the conclusion that Costco was the next-most direct purchaser of the finished products it acquired from the six vendors?

   d) What adjustments to the damage figures in the jury's verdict are appropriate because of the application of the next-most-direct-purchaser rule?

After reviewing these initial briefs, the court will issue a brief order guiding the parties in preparing responsive briefs, which will be due on May 1.

2) No later than April 15, Costco shall submit a brief of 15 pages or fewer as to the proper offset to be made from the trebled jury verdict. Defendants shall respond in a joint brief subject to the same page limits by April 27. Costco may submit a reply of 7 pages or fewer by May 1.

ORDER – 7

For these supplemental briefs, and any briefing in the future, the parties shall cite the trial transcript as the court has described in this order, and the parties shall not attach copies of any excerpt of the trial transcript to declarations supporting their briefing.  To the extent the parties rely on trial exhibits, however, they shall identify those exhibits by their trial exhibit numbers, but shall also include those exhibits (or excerpts thereof, where appropriate) as attachments to the brief in which the exhibit is cited.  No declaration is necessary to authenticate trial exhibits.

### IV.  CONCLUSION

The parties shall complete supplemental briefing as described above.  The clerk shall CREATE A MOTION CALENDAR for May 1, 2015 to address the supplemental briefing.

DATED this 3rd day of April, 2015.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 8