Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the*
*Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-JST; No. CV-13-03234-JST |
| | MDL No. 1917 |
| This Document Relates to: All Indirect Purchaser Actions | **INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO OBJECTOR DOUGLAS ST. JOHN'S MOTION FOR ATTORNEY'S FEES AND EXPENSES** |
| | Hearing Date: October 18, 2016<br>Time: 2:00 p.m.<br>Court: Courtroom 9, 19th Fl.<br>Judge: Hon. Jon S. Tigar |

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................2

I.      Objector St. John Is Not Entitled to an Award of Attorney's Fees............................................2

      A.      Objectors Are Generally Not Entitled to Attorney's Fees ...............................................2

      B.      St. John Has Not Conferred a "Substantial Benefit" on the Class Such that an Award of Attorneys' Fees is Warranted ...................................................................................4

            1.      The Court's Reduction of the Fee Award to IPP Counsel Was Not Based Solely on the Result Achieved..............................................................................4

            2.      The Evaluation of the Result Achieved by IPP Counsel was a Mixed Question of Law and Fact, Subject to De Novo Review....................................................5

            3.      The Court Had the "Power" to Change the Standard of Review *Sua Sponte* and Review the Special Master's Findings of Fact De Novo .............................6

            4.      St. John's Authorities Are Distinguishable........................................................8

II.     The Amount of Attorney's Fees Requested by St. John is Excessive .........................................9

      A.      All of St. John's Substantive Objections to IPP Counsel's Fee Request Were Rejected and Cannot be the Basis for an Attorney Fee Award......................................................9

      B.      Any Fee Award Should be Based on St. John's Unenhanced Lodestar and Should Only Include Time Spent on Successful Objections......................................................11

III.    The Court Should Deny St. John's Request for Reimbursement of Expenses ........................14

IV.    It is Premature to Determine the Allocation of the Special Master's Fees .............................14

CONCLUSION..............................................................................................................................15

i

IPPS' OPPOSITION TO OBJECTOR ST. JOHN'S MOTION FOR ATTORNEY'S FEES AND EXPENSES
- Master File No. CV-07-5944-JST, MDL NO. 1917

# TABLE OF AUTHORITIES

Cases

*Arnett v. Bank of Am., N.A.*, No. 3:11-CV-1372-SI, 2014 WL 5419125 (D. Or. Oct. 22, 2014 ...........3

*Associated General Contractors v. Cal. State Council of Carpenters,* 459 U.S. 519 (1983)................6

*Bennett v. Yoshina*, 98 F. Supp. 2d 1139 (D. Haw. 2000), aff'd, 259 F.3d 1097 (9th Cir. 2001)......6, 7

*Burlington N. R.R. Co.v. Dep't. of Revenue of the State of Washington*, 934 F.2d 1064
(9th Cir. 1991)..................................................................................................................................7

*Comcast v. Behrend,* 133 S. Ct. 1426 (2013)..................................................................................5

*Falkowski v. Demske,* No. CIV–80–983E, 1985 WL 5574 (W.D.N.Y. Nov. 23, 1985) .......................7

*Fraley v. Facebook, Inc.*, No. C 11-1726 RS, 2014 WL 806072 (N.D. Cal. Feb. 27, 2014) ................4

*In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 4513608
(D. Ariz. Oct. 2, 2012) .....................................................................................................................4

*In re Apple Inc. Sec. Litig.*, No. 5:06-CV-05208-JF HRL, 2011 WL 1877988
(N.D. Cal. May 17, 2011) ................................................................................................................8

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)...........................................7

*In re Citigroup Inc. Sec. Litig.*, No. 1:07-cv-09901, D.E. 181 (S.D.N.Y. Dec. 27, 2012) .................10

*In re Countrywide Fin. Corp. Customer Data Litig.*, No. 3:08–MD–01998, 2010 WL 3328249
(W.D.K.Y. Aug. 24, 2010)...........................................................................................................3, 8

*In re Leapfrog Enterprises, Inc., Sec. Litig*., No. C-03-05421 RMW, 2008 WL 5000208
(N.D. Cal. Nov. 21, 2008)................................................................................................................3

*In re Polyurethane Foam Antitrust Litig.,* No. 1:10 MD 2196, 2016 WL 951057
(N.D. Ohio Mar. 14, 2016) ..............................................................................................................6

*In re Polyurethane Foam Antitrust Litig.,* No. 1:10-md-02196-JZ, ECF No. 1960
(N.D. Ohio Nov. 12, 2015) ............................................................................................................10

*In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448 (D.P.R. 2011).............................8

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) .......................................................3

*In re Riverstone Networks, Inc.*, 256 Fed. App'x 168 (9th Cir. 2007) ...............................................12

*In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 CRB,
2015 WL 4776946 (N.D. Cal. Aug. 13, 2015) ..........................................................................9, 13

*In re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291 (9th Cir.1994)..................13

*Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010) .................................12, 14

*McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626 (E.D. Pa. 2015)....8

*Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816 (7th Cir. 2015) ....5

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) ....2, 4, 8, 9, 11

*Rodriguez v. W. Publ'g Corp.*, 602 F. App'x 385 (9th Cir. 2015).... 12

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ....8

*Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2015 WL 2379562 (N.D. Cal. May 18, 2015) ....4, 6

*Santos v. Camacho*, Nos. 04–00006, 04–00038, 04–00049, 2008 WL 8602098 (D. Guam Apr. 23, 2008)....12

*Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319 (D. Nev. 2014) ....12

*Spark v. MBNA Corp.*, 289 F. Supp. 2d 510 (D. Del. 2003)....2

*United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009)....1, 5

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).... passim

*Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115 (9th Cir. 2002) ....2, 12, 14

Rules

Adv. Comm. Notes to 2003 Amendments to former Fed.R.Civ.P.53(g)....1, 7

Adv. Comm. Notes to Fed.R.Civ.P. 23(h) ....7

Other Authorities

Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 473 (2003)....15

Lead Counsel for the Indirect Purchaser Plaintiffs ("IPPs") hereby opposes Objector Douglas St. John's Motion for Attorneys' Fees and Expenses, ECF No. 4779 ("Mot."), as set forth below.

### INTRODUCTION

St. John's fee motion hinges on his contention that the Court's reduction of the Special Master's recommended fee award for IPP Counsel is entirely attributable to St. John moving to amend the Order Appointing Special Master, ECF No. 4077 ("Appointment Order") to provide for de novo review of factual findings. (Mot. at 1.) More specifically, St. John contends that the reason the Court reduced the fee award "*appears to be*" that the Court disagreed with the Special Master's "factual findings" regarding the result achieved by IPP Counsel. He further contends that the Court would not have had the "power" to overturn those findings absent his motion to amend the Appointment Order to provide for de novo review. (*Id.* at 1-3 (emphasis added).) St. John's contention that he alone *caused* the reduction in IPP Counsel's fee award is not only highly speculative, it is completely unsupported by the record.

As further explained below, the Court's conclusion that an award of 27.5 percent of the settlement fund was appropriate was *not* based solely on its evaluation of the result achieved by IPP Counsel. Rather, the Court weighed a number of factors in reaching its conclusion. (*See* Order on Attorneys' Fees, Expenses, and Incentive Awards Re: Indirect Purchaser Plaintiff Settlements, ECF No. 4740 ("Fee Order"), at 9.) Moreover, the Special Master's evaluation of the result achieved involved a mixed question of law and fact, which was always subject to de novo review. *See United States v. Hinkson*, 585 F.3d 1247, 1259-60 (9th Cir. 2009). Finally, even assuming *arguendo* that the Court's reduction of the fee award *was* based on the result achieved, *and* that the evaluation of the result achieved involved a simple question of fact, St. John did not empower the Court to revisit that finding. The Court always had the power to review factual findings de novo (*see* Adv. Comm. Notes to 2003 Amendments to former FRCP 53(g) [now Rule 53(f)] ("the court is free to withdraw its consent to a stipulation for clear-error review or finality, and then to decide de novo"), and likely would have done so given its fiduciary duty to the Class and its independent obligation to closely scrutinize the fee application—particularly in a case like this with so much at stake and where multiple appeals were likely to be (and have been) taken.

Because St. John cannot claim that the reduction in IPP Counsel's fee award is attributable to his motion to amend the standard of review, he cannot claim that he conferred a substantial benefit on the Class. His attorney fee motion must be denied. *See Rodriguez v. Disner*, 688 F.3d 645, 659 (9th Cir. 2012), citing *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 (9th Cir. 2002) ("objectors who do 'not increase the fund or otherwise substantially benefit the class members' are not entitled to fees, even if they bring 'about minor procedural changes in the settlement agreement.'").

In addition, all of St. John's substantive objections to IPP Counsel's fee request were rejected. Yet St. John asserts that all of the time spent by his counsel on those objections should be paid for by class members at a rate of $500 per hour. (Mot. at 6-7.) This is excessive and contrary to the law. These objections provided no benefit to the Class, and as further explained below, cannot be the basis of an attorney fee award.

There is nothing in the record indicating that *any* of St. John's objections are responsible for the Court's reduction in IPP Counsel's fee award. But if the Court feels that St. John did assist it and that some attorney fee award is warranted, the amount of that fee must be calculated based on St. John's unenhanced lodestar, and can only include the time spent on successful objections that substantially enhanced the benefits to the Class. *See Wininger v. SI Mgmt. L.P., 3*01 F.3d 1115, 1125–26 (9th Cir. 2002).

## **ARGUMENT**

### I. Objector St. John Is Not Entitled to an Award of Attorney's Fees

#### A. Objectors Are Generally Not Entitled to Attorney's Fees

Objectors to class action settlements are generally not entitled to an award of attorney's fees. *Vizcaino*, 290 F.3d at 1052 ("In the absence of a showing that objectors substantially enhanced the benefits to the class under the settlement, as a matter of law they are not entitled to fees[.]"); *Spark v. MBNA Corp.,* 289 F. Supp. 2d 510, 513-15 (D. Del. 2003) ("[C]ases in which objectors are awarded attorney's fees are few and far between. In such cases, the objectors expended large amounts of time, money and resources, aided the court considerably in its consideration of proposed settlement and fee awards, and the class members were ultimately benefitted as a result of the objectors' efforts."); *In re Leapfrog Enterprises, Inc., Sec. Litig.*, No. C-03-05421 RMW, 2008 WL 5000208, at *3 (N.D.

Cal. Nov. 21, 2008) (denying fees to objectors even though objections were meritorious, because "the test is not whether the objections were meritorious or whether they helped the court in some way, but whether they conferred a 'substantial benefit' on the class or contributed to the common fund."); Newberg on Class Actions § 15:60 (5th ed.) ("Objector's counsel may also seek fees but their entitlement also rests upon their having conferred some benefit on the class—monetary or not—by virtue of their objection, *a mark few objectors hit.*") (emphasis added).

Moreover, objectors are not deemed to have conferred a substantial benefit on the class if they have merely raised an issue that the court would have addressed in the absence of the objection. *See In Re Countrywide Fin. Corp. Customer Data Litig.*, No. 3:08–MD–01998, 2010 WL 3328249 at *1 (W.D.K.Y. Aug. 24, 2010) (denying fees to an objector because "[t]he Court does not believe that [the objector] raised any issues that the Court would not have considered otherwise when addressing the fairness, reasonableness, and adequacy of the settlement."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 520 (W.D. Pa. 2003) (finding that objectors were not entitled to attorneys' fees when counsel's reduction of attorneys' fees was not premised on the objections and where "irrespective of the objections, [the court] likely would have arrived at the same fee award").

Indeed, courts in the Ninth Circuit routinely reject requests for fees predicated solely on objections to class counsel's fees and costs because, as guardians of the class, district courts have a preexisting fiduciary duty to scrutinize requests for attorneys' fees and costs from a common fund:

> The critical point in *Rodriguez,* however, is that the district court was not focused on the incentive awards until the objections raised the issue. **That is not the case with attorney's fees requests that seek an upward departure from the 25 percent benchmark fee award because district courts in the Ninth Circuit are obligated to carefully consider such requests.**
>
> . . .
>
> [Objector's] interpretation of *Rodriguez* would lead to the untenable result that in every class action settlement in which an upward departure from the 25 percent benchmark fee award is requested, objectors would race to file their objections and simply list the factors a district court is required to review in considering such a departure, and a court, after performing its required duty to review those factors, would be obligated to award attorney's fees to the objectors and thereby reduce the common fund and its benefit to the class.

*Arnett v. Bank of Am., N.A.*, No. 3:11-CV-1372-SI, 2014 WL 5419125, at *3-5 (D. Or. Oct. 22,

2014) (emphasis added); *Fraley v. Facebook, Inc.*, No. C 11-1726 RS, 2014 WL 806072, at *2 (N.D. Cal. Feb. 27, 2014) (denying fees even though the objection was sustained: "While it may be that this particular issue had not previously been raised by the Court, and was not addressed by the parties or other objectors, it does not support a fee award."); *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 4513608, at *1 (D. Ariz. Oct. 2, 2012) (denying objector's fee request even though "there was a reduction in the total amount of costs awarded to Class Counsel").

Similarly, if the "court's rationale differ[s] from [that presented in the] objection" or if the "court did not rely on the Objectors' arguments in issuing its decision," no fee award is warranted. *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2015 WL 2379562, at *2 (N.D. Cal. May 18, 2015). "Nor is it error to deny fees to objectors whose work is duplicative, or who merely echo each other's arguments and confer no unique benefit to the class." *Rodriguez v. Disner,* 688 F.3d at 658-59.

**B.     St. John Has Not Conferred a "Substantial Benefit" on the Class Such that an Award of Attorney's Fees is Warranted**

**1.     The Court's Reduction of the Fee Award to IPP Counsel Was Not Based Solely on the Result Achieved**

Contrary to St. John's contentions, the Court's conclusion that a 27.5 percent fee award was more appropriate than the 30 percent recommended by the Special Master was *not* based solely on its evaluation of the result achieved by IPP Counsel. Nowhere in the Court's Order does it state that it's evaluation of the result achieved is the sole reason for the lesser fee award. Rather, as the Court explicitly stated, it weighed a number of factors in reaching its conclusion:

> On balance, the Court finds on one hand that the complexity, risk, and contingent nature of the fee all suggest an award above the 25 percent benchmark. On the other hand, the size of the settlement as a percentage of the total potential recovery, the awards in comparable cases, and the need to conduct further litigation and provide additional notice related to the Chunghwa settlement – which will have the effect of delaying implementation of the overall settlement – suggest that any increase be modest in size. The Court finds that a fee of 27.5 percent strikes a fair balance . . . .

Fee Order at 9.

In addition, given the volume of briefing and arguments before the Court, it is likely there were many other considerations of law and fact that went into the Court's conclusion but were not

reflected in the Fee Order. To that extent, it is impossible to say that St. John is responsible for the Court's entire thought process. To claim otherwise, as St. John does, is not supported by the record.

### 2. The Evaluation of the Result Achieved by IPP Counsel Involved a Mixed Question of Law and Fact, Subject to De Novo Review

The Special Master's evaluation of the result achieved by IPP Counsel did not involve, as St. John claims, a simple question of fact reviewable under the clearly erroneous standard before St. John moved to amend the Appointment Order. It involved a mixed question of law and fact that was always subject to de novo review. *See* ECF No. 4077 at 7; *see also United States v. Hinkson*, 585 F.3d at 1259-60 (describing the difference between findings of fact reviewable under the clearly erroneous standard, and mixed questions of fact and law that require the court "to exercise judgment about the values that animate legal principles," which must be reviewed de novo, and noting, "[t]his category includes questions such as whether defendants' conduct constituted a conspiracy in violation of the Sherman Act.")

In order for a court to properly evaluate whether a settlement is good, bad or extraordinary, it may not simply draw a bare bones comparison with settlements achieved in other cases where the circumstances may have differed substantially. The court must also exercise judgment regarding the various legal principles in the case before it, including, *inter alia*, the strength of the parties' claims and defenses.

Here, the Special Master's evaluation of the result achieved by IPP Counsel properly included an analysis of the "risks and complexities in the case (*see* VIII.C.2 below and V.A.1 & 2 above)"—which included various changes in the applicable law[1]—and "in particular the challenge of formulating a credible calculation of pass-through overcharges." (R&R at 56, ECF No. 4351.) In other words, in evaluating the result achieved by IPP Counsel, the Special Master exercised his judgment regarding the strength of IPPs' claims against Defendants, including the legal challenges

---

[1] These "risks and complexities" included the legal challenges faced by IPPs at class certification, such as the changing appellate precedent caused by *Comcast v. Behrend*, 133 S. Ct. 1426 (2013) and Defendants' *Daubert* motion attacking IPPs' expert's methodology for proving injury and damages to indirect purchasers on a classwide basis. (R&R at 59.) Similarly, the Special Master noted the unfavorable appellate rulings regarding the Foreign Trade Antitrust Improvement Act ("FTAIA"), which have made litigation involving international price-fixing cartels more challenging. (*Id.* at 60, citing *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816 (7th Cir. 2015).)

IPPs faced in proving injury and damages on a classwide basis and overcoming Defendants' motions for summary judgment, which argued a myriad of legal issues—the FTAIA, antitrust standing under *Associated General Contractors v. Cal. State Council of Carpenters,* 459 U.S. 519 (1983), withdrawal from the conspiracy, and statute of limitations. Under *Hinkson,* these are mixed questions of law and fact that require the court "to exercise judgment about the values that animate legal principles." 585 F.3d at 1259-60; *see also Bennett v. Yoshina*, 98 F. Supp. 2d 1139, 1145-46 (D. Haw. 2000), aff'd, 259 F.3d 1097 (9th Cir. 2001) (Special Master's findings on mixed questions of law and fact are reviewed de novo). As such, the result achieved as evaluated by the Special Master was always subject to de novo review by the Court, regardless of St. John's objection.

For this reason alone, St. John's motion for attorneys' fees and expenses must be denied because his objection to the standard of review for factual findings did not cause the Court to award a smaller fee to IPP Counsel. Thus, he did not confer a substantial benefit on the Class. *See Vizcaino*, 290 F.3d at 1052 ("In the absence of a showing that objectors substantially enhanced the benefits to the class under the settlement, as a matter of law they are not entitled to fees[.]"); *Rose v. Bank of Am. Corp.*, 2015 WL 2379562, at *2 (if the "court did not rely on the Objectors' arguments in issuing its decision," no fee award is warranted); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2016 WL 951057, at *5 (N.D. Ohio Mar. 14, 2016) (denying fees to objector because "the Court's analysis was not substantially enhanced *because of* CCAF's Objection, nor was the fee reduction ordered by this Court *attributable to* CCAF's arguments.")

### 3. The Court Had the "Power" to Change the Standard of Review *Sua Sponte* and Review the Special Master's Findings of Fact De Novo

St. John's contention that the Court was "*empowered* to review the Special Master's factual findings only as a result of Mr. St. John's successfully moving to amend the Special Master's Appointment Order to provide for de novo review" (Mot. at 4, emphasis added) is also wrong. St. John misapprehends the difference between an appellate court (a court of limited jurisdiction) reviewing a district court's findings, versus a district court reviewing the findings of a Special Master, who serves at the discretion of the Article III Judge under Fed.R.Civ.P. 53. Unlike an appellate court, the district court always retains the "power" to *sua sponte* change the standard of review of a Special Master's findings, and decide all issues de novo:

> Even if no objection is made, the court is free to decide the facts de novo; to review for clear error if an earlier approved stipulation provided clear-error review; ***or to withdraw its consent to a stipulation for clear-error review or finality, and then to decide de novo***.

Adv. Comm. Notes to 2003 Amendments to former FRCP 53(g) [now 53(f)] (emphasis added).

Moreover, even under the clear error standard, a thorough and independent review of the Special Master's findings by the Court would have been required without any action by St. John. "A district court should never act as a rubber stamp for the findings and conclusions of a Special Master." *Bennett v. Yoshina*, 98 F.Supp.2d at 1145; *Burlington N.R.R. Co.v. Dep't. of Revenue of the State of Washington*, 934 F.2d 1064, 1072 (9th Cir. 1991) ("the district court's 'rubber stamp' of the master's order is an inexcusable abdication of judicial responsibility and a violation of article III of the Constitution"). The Court performed this thorough and independent review of the Special Master's findings. St. John cannot claim credit for this.

Indeed, as the Court emphasized in its Fee Order, the need for a thorough and independent review is particularly important on attorney fee motions. *See* Order at 3, citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable. . . ."). *See also Vizcaino*, 290 F.3d at 1052 ("the district court must assume the role of fiduciary for the class plaintiffs . . . [and] fee applications must be closely scrutinized. Rubber stamp-approval, even in the absence of objections, is improper."); Adv. Comm. Notes to Fed.R.Civ.P. 23(h) ("In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility."); *Falkowski v. Demske,* No. CIV–80–983E, 1985 WL 5574 (W.D.N.Y. Nov. 23, 1985) (the special master's findings "are subject to close review and, particularly when weighing the special master's legal conclusions and recommendations concerning costs and attorney's fees, the report and recommendation should be considered de novo").

Thus, even assuming *arguendo* that the evaluation of the result achieved involved a simple question of fact and would have been subject to clear error review, the Court always had the power to change the standard of review without an objection from St. John. Moreover, it is highly unlikely that the Court would have limited itself to clear error review given the Court's fiduciary duty to the

1   Class and its independent obligation to closely scrutinize the fee application—particularly in a case
2   like this with so much at stake and where multiple appeals were likely to be (and have been) taken.
3   Where, like here, an objection is merely consistent with a district court performing its duty to
4   carefully scrutinize an attorney fee request, and the court would have arrived at the same fee award
5   irrespective of any objections, no fee award for the objector is warranted.  *See In Re Countrywide*,
6   2010 WL 3328249 at *1 (denying fees to an objector because "[t]he Court does not believe that [the
7   objector] raised any issues that the Court would not have considered otherwise when addressing the
8   fairness, reasonableness, and adequacy of the settlement.")

9           Because St. John cannot claim that the reduction in IPP Counsel's fee award is attributable to
10  his motion to amend the standard of review, he cannot claim that he conferred a substantial benefit
11  on the Class.  His attorney fee motion must be denied.  *See Rodriguez v. Disner*, 688 F.3d at 659,
12  citing *Vizcaino* at 1051 ("objectors who do 'not increase the fund or otherwise substantially benefit
13  the class members' are not entitled to fees, even if they bring 'about minor procedural changes in the
14  settlement agreement.'").

### 4.     St. John's Authorities Are Distinguishable

16          The cases cited by St. John where the court awarded attorneys' fees to objectors are
17  distinguishable.  In each of them, the objectors raised an issue that the court would otherwise have
18  been unaware of, and/or they successfully appealed, leading to increased monetary benefits for the
19  class. In fact, in several of the cases, the benefit to the class was so clear that class counsel conceded
20  a fee award to the objector was proper.  *See, e.g., Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 963
21  (9th Cir. 2009) (objectors successfully appealed and the district court "was not focused on the
22  incentive agreements before Objectors took exception to them"); *McDonough v. Toys R Us, Inc.*, 80
23  F. Supp. 3d 626, 662 (E.D. Pa. 2015) (objectors successfully appealed and caused the parties to
24  restructure the settlements on remand, leading to higher direct benefits for the class); *In re Puerto
25  Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 467 (D.P.R. 2011) (Lead Counsel lowered the
26  total value of the settlements and their fee request in response to objections, and conceded that
27  objectors were entitled to fees); *In re Apple Inc. Sec. Litig.*, No. 5:06-CV-05208-JF HRL, 2011 WL
28  1877988, at *4-5 (N.D. Cal. May 17, 2011) (class counsel removed *cy pres* distribution in response

to objection, thereby increasing the direct benefit to the class, and class counsel did not object to objector fees); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 CRB, 2015 WL 4776946, at *1 (N.D. Cal. Aug. 13, 2015) (objector alerted the court to the untimely addition of expenses).

Here, in contrast, the causal link between the motion to amend the standard of review and the Court's reduction in the fee award is not supported by the record. *See* Sections I. B. 1-3, above.

## II. The Amount of Attorneys' Fees Requested by St. John is Excessive

All of St. John's substantive objections to IPP Counsel's fee request were rejected. Yet St. John asserts that all of the time spent by his counsel on those objections should be paid for by class members at a rate of $500 per hour. (Mot. at 6-7.) This is excessive and contrary to the law. These objections provided no benefit to the Class, and as further explained below, cannot be the basis of an attorney fee award.

There is nothing in the record indicating that *any* of St. John's objections are responsible for the Court's decision to award IPP Counsel a smaller fee than that recommended by the Special Master. But if the Court feels that St. John did assist it and that some attorney fee award is warranted, the amount of that fee must be calculated based on St. John's unenhanced lodestar, and can only include the time spent on objections that substantially enhanced the benefits to the Class.

### A. All of St. John's Substantive Objections to IPP Counsel's Fee Request Were Rejected and Cannot be the Basis for an Attorney Fee Award

Aside from a footnote asserting that the Court's reasoning regarding the size of the settlement fund was consistent with St. John's arguments (Mot. at 3, n.2), St. John does not argue that any of his other objections to IPP Counsel's motion for attorneys' fees conferred any benefit—much less a substantial benefit—on the Class.[2] Nor could he, since every single one of St. John's other many objections was rejected. Indeed, the Special Master rejected certain of St. John's objections as "without merit," "ludicrous," "the height of Monday-morning quarterbacking, not sound legal

---

[2] The fact that one of St. John's arguments regarding the size of the settlement fund was consistent with the Court's reasoning is not a basis for a fee award. Other objectors also made this argument (*see* ECF No. 4113 at 8-9) and it is one that is commonly-made by objectors where there is a large settlement fund. *See Rodriguez v. Disner,* 688 F.3d at 658-59 ("Nor is it error to deny fees to

analysis or common sense," and "lack[ing] any factual basis or common sense."  (R&R at 57-59.) Undeterred, St. John continued to press those objections before the Court, which also rejected them.

Many of St. John's objections are boilerplate objections regularly made to class action settlements in other cases.  For example, St. John's mega-fund objection and his objections to IPP Counsel's rates—particularly those of so-called "contract attorneys"—are very similar to the objections made by an objector represented by Anna St. John of the Center for Class Action Fairness ("CCAF") in *In re Polyurethane Foam Antitrust Litig.,* No. 1:10-md-02196-JZ, ECF No. 1960 (N.D. Ohio Nov. 12, 2015), and those made by Ted Frank of CCAF in *In re Citigroup Inc. Sec. Litig.*, No. 1:07-cv-09901, ECF No. 181 at 8-10 (S.D.N.Y. Dec. 27, 2012).[3]

In addition, St. John's objections often misstated the law and had little or no application to the facts of this case.  For example, despite having apparently spent "hundreds of hours" researching his client's objections (Mot. at 6), and despite the Ninth Circuit's clear instructions that the Court must consider the totality of the circumstances in awarding attorneys' fees (*see Vizcaino,* 290 F.3d at 1048) and rejection of a categorical "mega-fund" rule (*id*. at 1047), St. John argued that because this was a mega-fund case, the Court should award no more than 10% of the fund based on empirical studies and cases that had no application to the facts of this case.  (*See* ECF No. 4106 at 14-15.) Similarly, St. John repeatedly attacked IPP Counsel's "white shoe" rates even though they were supported by an expert and were *below* the rates approved in recent antitrust cases in the Northern District of California.  (*See* ECF No. 4106 at 20-21 (St. John's original objection to IPP Counsel's rates); R&R at 70 ("It requires little discussion to conclude that these billing rates are reasonable and responsible."); ECF No. 4439 at 2-4 and 6-7 (St. John's objection to R&R regarding rates).)

Other objections—such as his attacks on IPP Counsel's lodestar and his assertions of excessive billing and mismanagement—were nothing more than baseless speculation and constituted

---

objectors whose work is duplicative, or who merely echo each other's arguments and confer no unique benefit to the class.")

[3] *Compare* ECF No. 4106 at 14-15 and 21-23, *with* Anna St. John's objections in *In re Polyurethane Foam* at 6-9 and 15-22, and Ted Frank's objections in *In re Citigroup* at 8-10 and 10-14, which are attached as Exhibits A and B, respectively, to the Declaration of Mario N. Alioto ISO Opposition to Objector St. John's Motion for Attorney's Fees and Expenses ("Alioto Decl.").

unnecessary and unwarranted ad hominem attacks on Lead Counsel.[4]  If St. John's counsel had really spent any time reviewing the record in this case (much of which was under seal, yet St. John never sought to unseal it[5]), and had compared it to similar indirect purchaser cases, such as *LCD,* he would have discovered that 49 firms and 183,000 hours was more than reasonable for a case of this length and complexity.  (*See* R&R at 71, noting that counsel in *LCD* expended 70% more time even though the case only lasted for six years versus eight years for *CRT*.)

St. John also wasted time moving to strike evidence submitted by Lead Counsel in response to his objections and at the request of the Special Master.  (ECF Nos. 4369-15.)  He then compounded the problem by objecting to the Special Master's denial of his motion (ECF No. 4369), and filing an unauthorized reply brief. (ECF No. 4415.)  The Court denied his motion to strike and struck his unauthorized brief.  (ECF No. 4473, n. 1.)

Not only did these unmeritorious objections benefit no one, they also caused the parties, the Special Master and the Court to have to waste an inordinate amount of time addressing them.  The law is clear that objectors cannot be rewarded for such behavior.  *Rodriguez v. Disner,* 688 F.3d at 659 ("we agree with the district court that, where objectors do not add any new legal argument or expertise, and do not participate constructively in the litigation or confer a benefit on the class, they are not entitled to an award premised on equitable principles.").  Yet St. John seeks fees for all of the time spent on these objections.  (Mot. at 6-7.)  There is no basis to award these fees.

**B.     Any Fee Award Should be Based on St. John's Unenhanced Lodestar and Should Only Include Time Spent on Successful Objections**

---

[4] *See, e.g.,* ECF No. 4106 at 16-17 (accusing IPP Counsel of deliberately exaggerating their lodestar and "feeding at the trough,"—even though Lead Counsel submitted a declaration averring that a detailed audit of IPP Counsel's time records had occurred before the lodestar was submitted to the Court)—and arguing that "[n]o paying client—sophisticated or otherwise—would tolerate the massive inefficiencies and coordination problems of having 49 distinct law firms work on a matter."); *id*. at 18-19 (accusing IPP Counsel of offering "no support" for the 183,000 hours worked beyond a "single paragraph of *ipse dixit* by their proffered expert, Mr. Pearl," when in fact, each of the 49 firms had submitted a very detailed declaration describing the work done by their firm); *id.* at 24 (questioning Lead Counsel's timekeeping based on unsupported hearsay, which has since been shown to be false (*see* R&R at 71)).

[5] St. John did request copies of sealed documents that IPP Counsel cited in response to his various objections.  But he otherwise made no attempt to review other crucial documents in this case which were under seal.

St. John seeks attorneys' fees amounting to 1.5% of what he claims to be "the benefit attributable to his efforts, i.e. $216,281." (Mot. at 6.)  For the purposes of the lodestar cross-check, St. John asserts that his counsel spent 433.3 hours working on this case, which includes all of the time spent on the unmeritorious objections detailed above, and claims a rate of $500 per hour.  (*Id*. at 6-7.)  This request is flawed in several respects.

First, while a "district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method[,]" *Vizcaino*, 290 F.3d at 1047, most courts use the lodestar method to calculate objector fee awards because counsel's investment in the litigation is minimal, and the benefit to the class is often difficult to quantify accurately.  *See, e.g., Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1333 (D. Nev. 2014) (applying lodestar method where objector's attorney's investment was minimal); *In re Riverstone Networks, Inc.*, 256 Fed. App'x 168, 170 (9th Cir. 2007) ("Where an attorney's investment in a case is minimal, the lodestar calculation may convince a court that a lower award is justified."); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 814 (N.D. Ohio 2010) (awarding objector's counsel his unenhanced lodestar "which will fairly compensate Objector . . . without over-stating his limited role in this marathon litigation[,]" and noting that Mr. Frank of CCAF "expressly admits . . . that there is a strong presumption that an unenhanced lodestar figure is a reasonable fee."); *Rodriguez v. W. Publ'g Corp.*, 602 F. App'x 385, 386-87 (9th Cir. 2015) (rejecting objectors' argument that the district court should have used the percentage of the fund method to calculate their fee award).

Second, the Ninth Circuit has stated in no uncertain terms that objectors may only be compensated for objections that "substantially enhanced the benefits to the class."  *Vizcaino*, 290 F.3d at 1052.  Thus, in calculating the lodestar, the Court should only include the time spent by St. John's counsel on successful objections.  *See Wininger v. SI Mgmt. L.P.,* 301 F.3d at 1125–26 (affirming district court's decision to exclude the majority of objector's time from the lodestar calculation where the "claimed hours were expended in unsuccessful efforts unrelated to their success challenging Plaintiffs' counsels' fee request")*; Rodriguez v. W. Publ'g Corp.*, 602 F. App'x at 387 (affirming district court's decision to "eliminate hours [from objector's fee application] for work which in its judgment did not benefit the class"); *Santos v. Camacho*, Nos. 04–00006, 04–

00038, 04–00049, 2008 WL 8602098, at *47 (D. Guam Apr. 23, 2008) (considering only objector's "hours 'reasonably' spent on the issue" on which the objection was successful).

St. John relies on *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 07-5634, 2015 WL 4776946, at *2 (N.D. Cal. Aug. 13, 2015) to support his claim that he should be compensated for work on unsuccessful objections. (Mot. at 6.) The *Transpac* court apparently found persuasive objector's argument that she could not have made the one successful objection had she not also spent time on the other objections. 2015 WL 4776946, at *2. This reasoning is in direct contravention of the Ninth Circuit's holding that, as a matter of law, an objector cannot recover fees unless his objections substantially enhanced the benefits for the class. *Vizcaino*, 290 F.3d at 1052. Moreover, it encourages objectors to run up time making every conceivable objection in the hopes that one might stick and allow them to be compensated for time spent on all objections, no matter how frivolous. This cannot be the law. Even if the Court were to adopt *Transpac's* reasoning (which it should not do), only the time spent by St. John prior to the motion to amend (i.e. the initial objection) and the time spent on the motion to amend itself could possibly be considered compensable. St. John would have been able to make his motion to amend without all of the time spent thereafter (e.g. objecting to the Special Master's R&R, moving to strike evidence and objecting to the recommended denial of that motion).

Third, because any fee award to St. John should be calculated based on his lodestar less the time spent on unsuccessful objections, St. John must produce his time records. "The party petitioning for attorneys' fees bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *In re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir.1994) (internal quotation marks omitted). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* During the meet and confer before the filing of this motion, Lead Counsel requested St. John's time records but St. John refused to provide them. (Alioto Decl. ¶ 4.) Lead Counsel is therefore unable to ascertain how much of the time claimed by St. John was spent on the motion to amend, and whether that time was reasonably spent. The Court should deny St. John's motion for this reason alone. Alternatively, the

1  Court should order St. John to produce his time records for *in camera* review, which St. John has
2  offered to do.  (*See* St. John Decl., ¶25 (ECF No. 4779-1).)
3         Finally, the $500 rate claimed by St. John's counsel is too high under the standards
4  articulated by St. John himself in his objections.  In his objection, St. John argued that IPP Counsel's
5  rates were comparable to those charged by "the nation's premier white shoe law firms. Clients do
6  not retain such firms—or pay those rates—with the expectation of obtaining anything less than
7  extraordinary results in exceptionally complex cases." (ECF No. 4106 at 20, citations omitted.)  Yet
8  St. John is now claiming those very same rates for work that courts generally characterize as
9  "straight-forward" (*see Lonardo*, 706 F. Supp. 2d at 814-816), and which produced overwhelmingly
10 *unsuccessful* results (all substantive objections rejected and only one procedural objection sustained).
11 Class members should not have to pay such a high rate for such work. *See Wininger,* 301 F.3d at
12 1127 (agreeing that objector's counsel was not entitled to a multiplier where their "efforts contesting
13 Plaintiffs' counsels' fee award involved issues of no particular difficulty and required no great time
14 commitment, and . . . achieved limited success").  An hourly rate of $350 would still be very
15 generous and only slightly less than that awarded to objector's counsel in *Transpac*, who St. John
16 candidly admits has much more experience than he does.  (*See* St. John Decl. ¶ 12.)

17 **III.    The Court Should Deny St. John's Request for Reimbursement of Expenses**
18        The Court should deny St. John's request for reimbursement of expenses for the same reason
19 as it should deny the motion for attorneys' fees—St. John did not succeed in providing a substantial
20 benefit for the Class.

21 **IV.    It is Premature to Determine the Allocation of the Special Master's Fees**
22        St. John claims that Lead Counsel "refuse[d] to disclose the amount [of Special Master's
23 fees] owed—or even IPP Counsel's position as to whether any amount is owed—for no apparent
24 reason." (Mot. at 8.)  This is false.  Lead Counsel never refused to disclose the amount owed.
25 (Alioto Decl. ¶ 5.)
26        As Lead Counsel explained to Mr. St. John, it is premature to allocate the Special Master's
27 fees because the Special Master's work is not yet complete.  Pursuant to this Court's Fee Order, and
28 the Special Master's Order Re Process for Allocating Attorneys' Fees (ECF No. 4748), Lead

1 Counsel recently filed a proposed allocation of the aggregate fee award to IPP Counsel. (ECF Nos. 4790, 4800.) Objections to that proposed allocation are due shortly, and the Special Master's Report & Recommendation is due by October 20, 2016.  (ECF No. 4748 at 2.)  Lead Counsel will propose an allocation of the Special Master's fees after the October 20, 2016 R&R.  (Alioto Decl. ¶ 6.)

In the meantime, Lead Counsel will provide St. John with the total amount charged by the Special Master to date, but this is not what St. John requested during the meet and confer.  (*Id*. ¶ 7.) There is no basis to revisit the Court's previous ruling on the allocation of the Special Master's fees, which provides that "the parties and objectors shall each pay an equal share of the cost [of the Special Master], unless the Special Master or the Court directs otherwise." (ECF No. 4298 at 3-4.) St. John had a full and fair opportunity to contest this provision as part of his motion to amend. Nothing has changed since then that requires reconsideration of the Court's Order.

## CONCLUSION

In considering whether objectors should receive attorney fees, "[c]ourts should adopt an approach that strictly evaluates the input of objectors to determine if it is of significant value in relation to the information already in the case. District judges need the discretion to deny any attorneys' fee request of any objector that does not genuinely help the case." Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 473 (2003).  Here, a strict evaluation of St. John's input on IPP Counsel's fee request compels the conclusion that he did not genuinely help the case.  The change in the standard of review did not empower the Court, or cause the Court, to award a smaller fee to IPP Counsel.  The Court was always obligated to conduct an independent and thorough review of the Special Master's recommendations, and award a reasonable fee.  St. John's motion for attorneys' fees and expenses must be denied.

Dated: August 31, 2016                              Respectfully submitted,

                                    By:     */s/ Mario N. Alioto*

                                            Mario N. Alioto (56433)
                                            malioto@tatp.com
                                            Joseph M. Patane (72202)
                                            jpatane@tatp.com
                                            Lauren C. Capurro (241151)

15

IPPS' OPPOSITION TO OBJECTOR ST. JOHN'S MOTION FOR ATTORNEY'S FEES AND EXPENSES
- Master File No. CV-07-5944-JST

laurenrussell@tatp.com
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415-346-0679

*Lead Counsel for Indirect Purchaser Plaintiffs*