# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| In re POLYURETHANE FOAM | |
| ANTITRUST LITIGATION | MDL Docket No. 2196 |
| | Index No. 10-MD-2196 (JZ) |
| This Document Relates to: | |
| INDIRECT DIRECT PURCHASER CLASS | |
| Case Nos. 1:10-pf-10007 (Vicky's Furniture); 1:11-pf-10002 (Gomez); 1:11-pf-10003 (Hudson); 1:11-pf-10010 (Beastrom) | |

---

### OBJECTION OF MELISSA HOLYOAK AND JOHN TABIN

---

Anna St. John
COMPETITIVE ENTERPRISE INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1899 L Street NW, 12th Floor
Washington, DC 20036
Phone: (917) 327-2392
Email: anna.stjohn@cei.org

*Attorney for Objectors John Tabin and Melissa Holyoak*

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................ i

**TABLE OF AUTHORITIES** ........................................................................................ ii

**SUMMARY OF ARGUMENT** ................................................................................... iix

**ARGUMENT** ................................................................................................................ 1

I.     Objectors Melissa Holyoak and John Tabin are members of the indirect purchaser class, and intend to appear through counsel at the fairness hearing. ........................................... 1

II.    A court owes a fiduciary duty to unnamed class members. ........................................... 3

III.   Attorneys' fees awarded under Rule 23 must be reasonable and based on the actual benefit conferred to the class. ........................................................................................ 4

IV.   Class counsel's $50.4 million fee request is excessive. ................................................. 5

A.    30% is not a reasonable percentage of $151 million. ................................................. 6

B.    Amounts that are contingent or due for payment in the future and all other amounts that the class will not actually receive should be excluded from the fee calculation. ............................. 9

C.    The purported lodestar should be disregarded because class counsel provided insufficient, conclusory summaries that deny the Court the information necessary to analyze the lodestar properly. ............................................................................................................ 12

D.    Class counsel inflates its lodestar with exaggerated hourly rates far above the market rate of what paying clients are willing to pay and other courts have awarded. ........................... 14

V.    Further fee reduction is necessary to deter overinflated fee requests in the future. ........... 23

VI.   The fee request fails to comply with Rule 23(h). ....................................................... 24

VII.  The Court should reject any proposal by class counsel to treat class counsel better than class members by paying the full amount of attorneys' fees and expenses before fully paying the class. ....................................................................................................................... 26

VIII. Class notice was defective because material aspects of the settlement were not publicized in the notice. ................................................................................................................. 28

**CONCLUSION** ........................................................................................................... 30

# TABLE OF AUTHORITIES

<u>Cases</u>

*Apple Inc. v. Samsung Elecs. Co.*,
    No. C 11-1846, 2012 U.S. Dist. LEXIS 160668 (Nov. 7, 2012) ............................................ 17, 21

*AT&T Mobility Wireless Data Serv. Sales Litig.*,
    No. 1:10-cv-02278, Dkt. 196 (N.D. Ill. June 2, 2011) .................................................................8

*In re Baby Prods. Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013) ......................................................................................................10

*In re Beacon Assocs. Litig.*,
    No. 09 Civ. 777, 2013 U.S. Dist. LEXIS 2450960 (S.D.N.Y. May 9, 2013) ........................ 17, 20

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ....................................................................................................25

*Blum v. Stenson*,
    465 U.S. 886 (1984) ..................................................................................................................22

*Bowling v. Pfizer, Inc.*,
    102 F.3d 777 (6th Cir. 1996) .......................................................................................... 7, 10, 25

*Braun v. Ultimate Jetcharters*,
    2014 U.S. Dist. LEXIS 103972 (N.D. Ohio July 30, 2014) ........................................................22

*In re Broadwing, Inc. ERISA Litig.*,
    252 F.R.D. 369 (S.D. Ohio 2006) ...............................................................................................9

*Brown v. Stackler*,
    612 F.2d 1057 (7th Cir. 1980) ..................................................................................................23

*In re Cardinal Health Inc. Secs. Litig.*,
    528 F. Supp. 2d 752 (S.D. Ohio 2007) ......................................................................................12

*In re Charles Schwab Corp. Secs. Litig.*,
    2011 U.S. Dist. LEXIS 44547 (N.D. Cal. Apr. 19, 2011) ..............................................................8

*In re Citigroup Inc. Bond Litig.*,
    988 F. Supp. 2d 371 (S.D.N.Y. Dec. 19, 2013)...................................................................... 4, 8

*In re Citigroup Inc. Secs. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) ..............................................................................passim

*In re Citigroup Inc. Secs. Litig.*,
    No. 07-cv-9901, Dkt. 286 (S.D.N.Y. Sept. 10, 2013) ...................................................................2

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ................................................................................6

*City of Pontiac Gen. Emples. Ret. Sys. v. Lockheed Martin Corp.*,
    954 F. Supp. 2d 276 (S.D.N.Y. 2013) ...............................................................18

*In re Classmates.com Consol. Litig.*,
    No. C09–45RAJ, 2012 U.S. Dist. 2012 WL 3854501 (W.D. Wash. June 15, 2012) ....................2

*Cobell v. Salazar*,
    679 F.3d 909 (D.C. Cir. 2012) ...........................................................................7

*Commonwealth Elec. v. Woods Hole*,
    754 F.2d 46 (1st Cir. 1985) ..............................................................................24

*Coulter v. Tennessee*,
    805 F.2d 146 (6th Cir. 1986) ............................................................................20

*Custom LEC v. eBay, Inc.*,
    2013 U.S. Dist. LEXIS 122022 (N.D. Cal. Aug. 27, 2013) ..............................29

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ............................................................................27

*In re Diet Drugs Prods. Liab. Litig.*,
    401 F.3d 143 (3d Cir. 2005) .............................................................................25

*In re DPL Inc. Secs. Litig.*,
    307 F. Supp. 2d 947 (S.D. Ohio 2004) .........................................................5, 22

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
    2001 U.S. Dist. LEXIS 8418 (S.D.N.Y. Jun. 21, 2001) ..................................18

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) .....................................................................2, 3, 27

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    989 F. Supp. 375 (D. Mass. 1997) ...................................................................10

*Employees Pension Fund v. Fruit of the Loom*,
    234 F.R.D. 627 (W.D. Ky. 2006) ......................................................................9

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ............................................................................27

*Felix v. Northstar Location Servs.*,
    290 F.R.D. 397 (W.D.N.Y. 2013) ....................................................................19

*In re First Fidelity Secs. Litig.*,
    750 F. Supp. 160 (D.N.J. 1990)...................................................................7

*Geier v. Sundquist*,
    372 F.3d 784 (6th Cir. 2004)...................................................................14

*In re Giant Interactive Group, Inc. Secs. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011).............................................................10

*Goldberger v. Integrated Resources, Inc.*,
    209 F.3d 43 (2d Cir. 2000) ............................................................... 4, 12

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...............................................................................20

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*,
    517 F.3d 220 (5th Cir. 2008)........................................................... 24, 25

*Hubbard v. Donahoe*,
    958 F. Supp. 2d 116 (D.D.C. 2013).......................................................20

*In re Indymac Mortgage-Backed Secs. Litig.*,
    94 F. Supp. 3d 517 (S.D.N.Y. 2015).......................................................7

*In re Johnson & Johnson Derivative Litig.*,
    No. 10-2033, 2013 U.S. Dist. LEXIS 167066 (D.N.J. Nov. 25, 2013) .........22

*In re Katrina Canal Breaches Litig.*,
    628 F.3d 185 (5th Cir. 2010)........................................................... 28, 29

*Keener v. Dep't of Army*,
    136 F.R.D. 140 (M.D. Tenn. 1991) .......................................................23

*Lacovara v. Hard Rock Cafe Int'l (USA)*,
    2012 U.S. Dist. LEXIS 24023 (S.D.N.Y. Feb. 24, 2012) ......................13

*Lil' Joe Wein Music, Inc. v. Jackson*,
    2008 WL 2688117 (S.D. Fla. July 1, 2008) ..........................................21

*Lola v. Skadden, Arps, Slate, Meagher & Flom*,
    No. 14-3845-cv, 2015 U.S. App. LEXIS 12755 (2d Cir. July 23, 2015)........17

*McDaniel v. County of Schenectady*,
    595 F.3d 411 (2d Cir. 2010).................................................................21

*In re Mercury Interactive Corp. Secs. Litig.*,
    618 F.3d 988 (9th Cir. 2010)..............................................3, 13, 24, 26

*Merkner v. AK Steel*,
No. 1:09-CV-423-TSB, 2011 U.S. Dist. LEXIS 157375 (S.D. Ohio Jan. 10, 2011) ..................... 8

*Michel v. Wm Healthcare Solutions*,
No. 1:10-cv-638, 2014 U.S. Dist. LEXIS 15606 (S.D. Ohio Feb. 7, 2014) ................................... 5

*Microsoft Corp. v. Computer Care Ctr., Inc.*,
06-CV-1429, 2008 U.S. Dist. LEXIS 112080 (E.D.N.Y. Apr. 8, 2008) ...................................... 18

*Mullane v. Central Hanover Bank*,
339 U.S. 306 (1950) ................................................................................................ 27, 28

*Nachshin v. AOL*,
663 F.3d 1034 (9th Cir. 2011) ......................................................................................... 29

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ....................................................................................... 7

*In re Online DVD*,
779 F.3d 934 (9th Cir. 2015) ........................................................................................... 12

*Pearson v. NBTY, Inc.*,
772 F.3d 778 (7th Cir. 2014) ...................................................................................... 11, 25

*Perdue v. Kenny A.*,
559 U.S. 542 (2010) .................................................................................................. 21, 22

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ..................................................................................................... 28

*Physicians of Winter Haven LLC v. Steris Corp.*,
No. 1:10 CV 264, 2012 U.S. Dist. LEXIS 15581 (N.D. Ohio Feb. 6, 2012) ................. 12, 13, 22

*Planned Parenthood of Cent. N.J. v. Attorney Gen. of N.J.*,
297 F.3d 253 (3d Cir. 2002) ........................................................................................... 18

*Precision Assocs. v. Panalpina World Transp., Ltd.*,
2013 U.S. Dist. LEXIS 121795 (E.D.N.Y. Aug. 27, 2013) ....................................................... 7

*In re Prudential Ins. Co. Am. Sales Practices Litig.*,
148 F.3d 283 (3d Cir. 1998) ............................................................................................. 5

*Ramey v. Cincinnati Enquirer, Inc.*,
508 F.2d 1188 (6th Cir. 1974) .................................................................................... 12, 22

*Rawlings v. Prudential-Bache Properties, Inc.*,
9 F.3d 513 (6th Cir. 1993) ........................................................................................... 3, 4

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ...........................................................................4, 13, 24, 26

*Reid v. Unilever United States, Inc.*,
    No. 12 C 6058, 2015 U.S. Dist. LEXIS 75383 (N.D. Ill. June 10, 2015) ............................ 15, 19

*Reynolds v. Benefit Nat'l Bank,*
    288 F.3d 277 (7th Cir. 2002) ...........................................................................................14

*Richardson v. L'Oreal USA, Inc.*,
    991 F. Supp. 2d 181 (D.D.C. Nov. 6, 2013) ........................................................................2

*In re Rite Aid Corp. Secs. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ............................................................................................13

*In re Royal Ahold NV Secs. & ERISA Litig.*,
    461 F. Supp. 2d 383 (D. Md. 2006) ................................................................................ 7, 8

*SEC v. Kirkland*,
    2008 U.S. Dist. LEXIS 123308 (M.D. Fla. June 30, 2008) ...................................................17

*Sobel v. Hertz*, No. 3:06-CV-00545,
    2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27, 2011) .......................................................22

*In re Sprint Comms. Co. LP*,
    No. 11-11563, 2012 U.S. Dist. LEXIS 163197 (E.D. Mich. Nov. 15, 2012) ...............................5

*Stewart v. USA Tank Sales & Erection Co.*,
    2014 WL 836212 (W.D. Mo. Mar. 4, 2014) .......................................................................10

*In re Synthroid Marketing Litig.*,
    264 F.3d 712 (7th Cir. 2001) ............................................................................................9

*In re Synthroid Marketing Litig.*,
    325 F.3d 974 (7th Cir. 2003) ............................................................................................9

*Tampa Bay Water v. HDR Eng'g. Inc.*,
    2012 U.S. Dist. LEXIS 157631 (M.D. Fla. Nov. 2, 2012) ....................................................17

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
    2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) .......................................................12

*In re Telectronics Pacing Sys.*,
    137 F. Supp. 2d 1029 (S.D. Ohio 2001) .............................................................................9

*Toussie v. County of Suffolk*,
    2012 U.S. Dist. LEXIS 127143 (E.D.N.Y. Sept. 6, 2012) ....................................................23

*United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.,*
 732 F.2d 495 (6th Cir. 1984) ................................................................ 12, 13

*United States Metro. Dist. Com.,*
 847 F.2d 12 (1st Cir. 1988) ..............................................................................18

*Ursic v. Bethlehem Mines,*
 719 F.2d 670 (3d Cir. 1983) ..............................................................................20

*Van Horn v. Nationwide Prop. & Casualty Ins. Co.,*
 No. 1:08-cv-605, 2010 U.S. Dist. LEXIS 42357 (N.D. Ohio Apr. 30, 2010) ..................... 14, 15

*Vassalle v. Midland Funding LLC,*
 708 F.3d 747 (6th Cir. 2013) ..............................................................................30

*In re VeriFone Holdings, Inc. Secs. Litig.,*
 2013 U.S. Dist. LEXIS 126988 (N.D. Cal. Sept. 5, 2013) ..............................................30

*In re Veritas Software Corp. Secs. Litig.,*
 496 F.3d 962 (9th Cir. 2007) ..............................................................................27

*In re Wachovia Preferred Securities & Bond/Notes Litigation,*
 2012 WL 2589230 (S.D.N.Y. Jan. 3, 2012) ..............................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
 396 F.3d 96 (2d Cir. 2005) ............................................................................ 5, 8

*In re Weatherford Int'l Secs. Litig.,*
 2015 U.S. Dist. LEXIS 3370 (S.D.N.Y. Jan. 5, 2015) ....................................................17

<u>Rules and Statutes</u>

Fed. R. Civ. P. 23(e)(3) ....................................................................................24

Fed. R. Civ. P. 23(h) .................................................................................. passim

Ohio. R. Prof. Conduct 1.5(e) ..............................................................................24

<u>Other Authorities</u>

2 Newberg on Class Actions, § 8.04 ........................................................................28

ALI Principles § 3.13 .......................................................................................5

Brunet, Edward,
 *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors,*
 2003 U. CHI. LEGAL F. 403 (2003) ........................................................................3

Burch, Elizabeth Chamblee
*Judging Multidistrict Litigation,*
90 N.Y.U. L. REV. 71 (2015)........................................................................................26

Conte, 1 Attorney Fee Awards § 2.05 ............................................................................5

Ellison, Zusha
*GCs Embrace Outsourced Work,*
THE RECORDER (Jan. 25, 2008) ....................................................................................16

Federal Judicial Center,
MANUAL FOR COMPLEX LITIGATION, FOURTH (2004) .......................................5, 10, 25

Fitzpatrick, Brian
*An Empirical Study of Class Action Settlements and Their Fee Awards,*
7 J. EMPIRICAL L. STUD. 811 (2010) ..............................................................................8

Fitzpatrick, Brian
*The End of Objector Blackmail?,*
62 VAND. L. REV. 1623 (2009) .......................................................................................3

IT-Lex Technology Law,
*The True Cost of Contract Attorneys Called into Question* (Apr. 26, 2013)................17

Karlsgodt, Paul & Chohan, Raj,
*Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval,*
BNA: Class Action Litig. Report (Aug. 12, 2011) ............................................................3

Liptak, Adam,
*When Lawyers Cut Their Clients Out of the Deal,*
N.Y. Times, Aug. 13, 2013 ..............................................................................................2

Logan, Stuart, et al.,
*Attorney Fee Awards in Common Fund Class Actions,*
24 Class Action Reports (March-April 2003) ..................................................................8

Ohio State Bar Association,
*The Economics of Law Practice in Ohio in 2013* ..........................................................15

Silver, Charles,
*Due Process and the Lodestar Method: You Can't Get There From Here,*
74 TUL. L. REV. 1809 (2000)...........................................................................................5

Timmons, Heather,
*Outsourcing to India Draws Western Lawyers,*
N.Y. TIMES B1 (Aug. 4, 2010).......................................................................................16

## SUMMARY OF ARGUMENT

Class counsel filed a fee request that seeks a whopping $50.4 million in fees and expenses—over 30% of the "mega-fund" in this case—and claims a lodestar of over $33 million. Rather than acknowledge that the request is excessive, class counsel ignores the voluminous case law and empirical data showing that in mega-fund settlements such as this one, an award of 10-15%, or an award based on diminishing marginal rates, is far more appropriate due to economics of scale. Class counsel fails to mention in either the notice (Dkt. 1751-9) or the fee petition (Dkt. 1908) that $10 million of the settlement is on a delayed-payment schedule such that full payment is not due for another two years, and another $9.25 million is contingent upon recovery by two of the defendants in separate actions against a third party. Yet class counsel's percentage calculation is based on the full $151 million settlement. Regardless of the percentage or methodology selected by the Court, Rule 23 demands that the fee award be based on the actual benefit to the class. Thus, any fee derived from future or contingent settlement amounts must be delayed until the amounts are actually paid by defendants for the benefit of the class. Class members John Tabin and Melissa Holyoak (collectively, "Tabin" or "Objectors") object to the excessive attorneys' fee award requested by class counsel and to any payment of fees that is not focused on the benefit to the class and favors class counsel at the expense of the class. *See* Sections III-IV.

Class counsel submitted a lodestar calculation ostensibly to enable the Court to conduct a "cross-check" to analyze the reasonableness of the fee. However, the information merely reinforces the excessiveness of the fee request. Flouting this Court's requirement that counsel show that their proposed hourly rates are reasonable and consistent with the market, class counsel submitted boilerplate summaries of their firms' experience and billing rates that overstate lodestar by millions of dollars. While the submission is devoid of key details that would allow the Court to better understand which portions of lodestar have been exaggerated, it is clear even from the sparse data submitted that

class counsel's lodestar figure is based on rates that no paying client would accept. In particular, Miller Law LLC and Schubert Jonckheer & Kolbe appear to have charged $250-$450/hour for contract attorneys, when the direct cost for such attorneys typically is well below $100/hour and the rate passed through by law firms to paying clients rarely exceeds $150/hour. These firms and a number of others also request billing rates for law firm attorneys, paralegals, and support staff well above market rate and what other courts have deemed reasonable. *See* Section IV.C.

The lodestar should be disregarded as useless, given the limited information submitted and the unreliable and inflated nature of the information that was submitted. But the Court should do more than simply disregard it. A sizable fee reduction should be imposed to deter class counsel from submitting overinflated fee requests in the future. Otherwise, class counsel incur no penalty and, as a result, rationally have no incentive not to submit excessive requests with the hope that a future court will grant those requests. *See* Section V.

Tabin further objects on behalf of the class to violations of Rule 23(h), in particular, the request by class counsel that the court delegate its Rule 23(h) duty by allowing class counsel to allocate any fee awarded among themselves, in secret and without judicial involvement, and the implicit request that class counsel receive better treatment than the class by recovering their full amount of fees and expenses before the class fully recovers. *See* Sections VI-VII.

Tabin also objects on behalf of the class to the defective notice. *See* Section VIII. As a matter of due process, "notice must be of such nature as to reasonably convey the required information." *Mullane v. Central Hanover Bank*, 339 U.S. 306, 314 (1950). But at least two material aspects of the settlement were not publicized in the notice: (i) over $9 million of the $151 million settlement amount set forth in the notice is contingent on the outcome of separate litigations, and another $10 million is on a delayed-payment schedule, and (ii) the identity of the potential *cy pres* beneficiaries is not disclosed—information material to a class member's decision to remain in the class or opt-out.

## ARGUMENT

## I. Objectors Melissa Holyoak and John Tabin are members of the indirect purchaser class, and intend to appear through counsel at the fairness hearing.

Objector John Tabin, a resident of Washington, DC, purchased, not for resale, an upholstered chair and sofa containing flexible polyurethane foam from a Room & Board store located in Washington, DC on July 22, 2014. Declaration of John Tabin ("Tabin Decl.") ¶ 3. According to tags located on the upholstered sofa, the sofa contains polyurethane foam supplied by Hickory Springs Manufacturing, which is one of the defendants in this action. Tabin Decl. ¶¶ 4-5. Tabin is not, nor is he a representative, parent, subsidiary, or affiliate of, a governmental entity, defendant, or a co-conspirator in this action. Tabin Decl. ¶ 9. Tabin therefore is a member of the settlement class with standing to object to the proposed settlements. Fed. R. Civ. P. 23(e)(5). Tabin's address is 1315 W St. NW, Apt. 243, Washington, DC 20009, and his telephone number is (443) 985-6656.

Objector Melissa Holyoak, a resident of the State of Missouri and an attorney with CCAF, purchased, not for resale, an upholstered sofa containing flexible polyurethane foam from the store I.O. Metro located in Columbia, Missouri on December 13, 2012. Declaration of Melissa Holyoak ("Holyoak Decl.") ¶¶ 3-4. Holyoak is not, nor is she a representative, parent, subsidiary, or affiliate of, a governmental entity, defendant, or co-conspirator in this action. Holyoak Decl. ¶ 6. According to a tag located on the upholstered sofa, the sofa contains polyurethane foam and was manufactured in the United States for I.O. Metro. Holyoak Decl. ¶ 5. Based on this information and the Consumer Proof of Claim and Release Form, Holyoak is a member of the settlement class with standing to object to the proposed settlements. Fed. R. Civ. P. 23(e)(5). Holyoak's business address is 1899 L St. NW, 12th Floor, Washington, DC 20036, and her telephone number is (537) 823-5377.

The Competitive Enterprise Institute's Center for Class Action Fairness ("CCAF"), through attorney Anna St. John, represents Tabin and Holyoak (collectively, "Tabin" or "Objectors") *pro bono*. St. John gives notice of her intent to appear at the fairness hearing in this case, where she wishes to discuss matters raised in this Objection. Tabin does not intend to call any witnesses at the fairness

---

hearing, but reserves the right to make use of all documents entered on to the docket by any settling party or objector. Tabin reserves the right to cross-examine any witnesses who testify at the hearing in support of final approval.

CCAF, which was founded in 2009 and became part of the non-profit Competitive Enterprise Institute on October 1, 2015, litigates on behalf of class members, which it represents *pro bono*, against unfair class-action procedures and settlements. *See e.g., In re Dry Max Pampers Litig.* (*"Pampers"*), 724 F.3d 713, 716-17 (6th Cir. 2013) (describing CCAF's client's objections as "numerous, detailed, and substantive") (reversing settlement approval and certification); *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. Nov. 6, 2013) (describing CCAF's client's objection as "comprehensive and sophisticated" and noting that "[o]ne good objector may be worth many frivolous objectors in ascertaining the fairness of a settlement") (rejecting settlement approval and certification); Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013, at A12 (calling CCAF's president "[t]he leading critic of abusive class-action settlements").

CCAF has won millions of dollars for class members. *See, e.g., In re Classmates.com Consol. Litig.*, No. C09–45RAJ, 2012 U.S. Dist. 2012 WL 3854501, at *9 (W.D. Wash. June 15, 2012) (noting that CCAF's client "was relentless in his identification of the numerous ways in which the proposed settlements would have rewarded class counsel … at the expense of class members" and "significantly influenced the court's decision to reject the first settlement and to insist on improvements to the second"); *In re Citigroup Inc. Secs. Litig.*, No. 07-cv-9901, Dkt. 286 (S.D.N.Y. Sept. 10, 2013) ("Frank's objections enhanced the adversarial process and played a not insignificant role in focusing the Court on instances of overbilling.").

Because it has been CCAF's experience that class action attorneys often employ *ad hominem* attacks in attempting to discredit objections, it is perhaps relevant to distinguish CCAF's mission from the agenda of those who are termed "professional objectors." A "professional objector" is a specific legal term referring to for-profit attorneys who attempt or threaten to disrupt a settlement unless

plaintiffs' attorneys buy them off with a share of the attorneys' fees. Some courts presume that such objectors' legal arguments are not made in good faith. Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n.150 (2003). This is not CCAF's *modus operandi*. Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) (distinguishing CCAF from professional objectors). CCAF refuses to engage in *quid pro quo* settlements, does not extort attorneys, and has never withdrawn an objection in exchange for payment. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees.

Nonetheless, to preempt any possibility of a false and unjustifiable accusation of objecting in bad faith and seeking to extort class counsel, Objectors are willing to stipulate to an injunction prohibiting themselves from accepting compensation in exchange for the settlement of this objection. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem). They bring this objection through CCAF in good faith to protect the interests of the class. Tabin Decl. ¶13; Holyoak Decl. ¶10.

## II. A court owes a fiduciary duty to unnamed class members.

A district court must act as a "fiduciary for the class," "with a jealous regard" for the rights and interests of such absent class members. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994-95 (9th Cir. 2010) (internal quotation and citation omitted). The fiduciary role is necessary because "[i]n class-action settlements, the adversarial process—or … 'hard fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is *allocated* between the class representatives, class counsel, and unnamed class members." *Pampers*, 724 F.3d at 718. *Acord Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) ("The interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. In addition, there is often no one to argue for the interests of the class (that their recovery should not be unfairly reduced), since it is to be expected

that class members with small individual stakes in the outcome will not file objections, and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel."); *see also Pampers*, 724 F.3d at 715 ("there is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own"). Encompassed within this fiduciary duty is "the Court's responsibility to avoid awarding plaintiffs' counsel a 'windfall' at the expense of the class—a special concern where 'the recovered fund runs into the multi-millions.'" *In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 374 (S.D.N.Y. Dec. 19, 2013) (quoting *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 52 (2d Cir. 2000)).

## III.  Attorneys' fees awarded under Rule 23 must be reasonable and based on the actual benefit conferred to the class.

Federal Rule of Civil Procedure 23(h) authorizes the court to award "reasonable attorney's fees." While the Sixth Circuit recognizes the lodestar and percentage-of-the-fund methods for calculating attorneys' fees, it instructs that district courts must "select the more appropriate [of the two methods] in light of the unique circumstances of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings*, 9 F.3d at 516. "[T]he percentage of the fund method more accurately reflects the results achieved," as compared to the lodestar method, which "better accounts for the amount of work done." *Id.*

The "fundamental focus" in awarding fees under Rule 23(h) "is on the result actually achieved for class members." Notes of Advisory Committee on 2003 Amendments to Rule 23(h); *accord Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014) ("[I]n determining the reasonableness of the attorneys' fee agreed to in a proposed settlement, the central consideration is what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation."). In accordance with Rule 23's focus on the result achieved, "numerous courts have concluded that the amount of the benefit conferred logically is the appropriate benchmark against which a reasonable common fund fee charge should be assessed." *In re Prudential Ins. Co. Am. Sales*

*Practices Litig.*, 148 F.3d 283, 338 (3d Cir. 1998) (quoting Conte, 1 *Attorney Fee Awards* § 2.05, at 37). *See also ALI Principles* § 3.13; Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION, FOURTH (2004), § 21.71 ("the fee awards should be based only on the benefits *actually delivered*"); Charles Silver, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809 (2000) (citing authorities that show a "broad consensus that percentage-based formulas harmonize the interests of agents and principals better than time-based formulas like the lodestar approach"). Judicial reliance on the lodestar tends to "create an unanticipated disincentive to early settlements, tempt lawyers to run up their hours, and compel district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

Consistent with the 2003 amendments to Rule 23 and critiques of the lodestar method, district courts in the Sixth Circuit generally utilize the percentage-of-the-fund method in common fund cases such as this, and use the lodestar method, if at all, only as a cross-check. *E.g.*, *In re DPL Inc. Secs. Litig.*, 307 F. Supp. 2d 947, 951-52 (S.D. Ohio 2004) ("the percentage of the fund method … should be used to compute attorneys' fees" and reducing 35% fee requested despite finding "this was an outstanding settlement"); *Michel v. WM Healthcare Solutions*, No. 1:10-cv-638, 2014 U.S. Dist. LEXIS 15606, at *52 (S.D. Ohio Feb. 7, 2014) (lowering the fee from 33.3% to 15% to "accomplish [the] important goals" of "augment[ing] the benefit to each Class Member" and "fairly compensat[ing] Class Counsel for the work done and the results achieved without providing them a windfall."); *In re Sprint Comms. Co. LP*, No. 11-11563, 2012 U.S. Dist. LEXIS 163197, at *7 (E.D. Mich. Nov. 15, 2012) ("adopt[ing] the percentage-of-the-fund approach" and awarding 18% of fund with negative multiplier).

## IV.  Class counsel's $50.4 million fee request is excessive.

No matter what methodology is selected, a court must assiduously discharge its duty to class members. It has been long recognized that "[f]or the sake of their own integrity, the integrity of the legal profession, and the integrity of Rule 23, it is important that courts should avoid awarding 'windfall

fees' and that they should likewise avoid every appearance of having done so." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974). Here, awarding plaintiffs' full fee request would result in an inappropriate windfall, overcompensating attorneys at the expense of the class. And accepting class counsel's purported lodestar at face value without significant reductions for the exaggerated submission would encourage litigants in future settlements to make similarly unreliable lodestar submissions to the Court and the class members.

This Court previously awarded attorneys' fees of 30% of the funds achieved on behalf of the direct purchaser class in this litigation. *See* Dkts. 598, 1534. Despite awarding direct-purchaser class counsel the fee they requested, the Court emphasized that the award "is not an indicator of future fee awards," and the Court "may adjust fee awards downward to achieve a reasonable benchmark and prevent windfall." Dkt. 1534 at 12-13 (quoting Dkt. 598 at 3). Today, such an adjustment is necessary to achieve those goals. In contrast to the Court's finding in connection the direct-purchaser fee petitions, indirect-purchaser counsel are not "under water" relative to their estimated lodestar. Rather, they are well in excess of a lodestar that is dramatically overstated, as discussed in Section IV.C below.

## A.     30% is not a reasonable percentage of $151 million.

Class counsel seeks $45,375,000, or 30% of $151,250,000, plus $5,115,811.72 in expenses—a total of 33.38%, or more than one-third, of the gross settlement fund.[1] This is not a reasonable percentage.

A reasonable percentage should be a sliding scale because of economies of scale to prevent a windfall for plaintiffs' attorneys at the expense of the class. "It is generally not 150 times more difficult

---

[1] Of the $151.25 million mega-fund, $9.25 million appears to be contingent upon Future Foam and Hickory's recovery from Dow Chemical in separate litigations. *See* Future Foam Settlement Agmt. (Dkt. 1854, Ex. C) ¶ 6; Hickory Settlement Agmt. (Dkt. 1751-3) ¶ 6. If the Court awards the entire amount of fees and expenses that plaintiffs request, and the $9.25 million is not recovered and paid into the settlement fund, plaintiffs will recover an extraordinary 35.6% of the fund, even before incentive payments and notice and other administrative expenses are properly eliminated.

to prepare, try and settle a $150 million case than it is to try a $1 million case." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998). Instead, high-dollar recoveries tend to be the result of class size rather than attorney skill, and, thus, "the percentage awarded ordinarily should decrease as the amount of the recovery rises, particularly in 'mega-fund' cases where the recovery is above $100 million." *In re Royal Ahold NV Secs. & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006) (reducing award to 12%). "There is considerable merit to reducing the percentage as the size of the fund increases. In many instances the increase is merely a factor of the size of the class and has no direct relationship to the efforts of counsel." *NASDAQ Market-Makers*, 187 F.R.D. at 486 (quoting *In re First Fidelity Secs. Litig.*, 750 F. Supp. 160, 164 n.1 (D.N.J. 1990)). Thus, "[i]n cases with exceptionally large common funds, courts often 'account[] for these economies of scale by awarding fees in the lower range.'" *Citigroup Inc. Bond Litig.*, 988 F. Supp. at 374 (quoting *Goldberger*, 209 F.3d at 52).

In accord with these principles and litigation realities, courts in this Circuit and others consistently reject fee requests in the range sought by class counsel in "mega-fund" cases involving recovery of over $100 million. In *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996), for example, the Sixth Circuit affirmed an award of 10% of a $102.5 million common fund where the district court recognized "the economics of scale involved in a class action of this size suggested that an award of 20% of the fund, *i.e.*, $33 million, would be excessive." *See also In re Indymac Mortgage-Backed Secs. Litig.*, 94 F. Supp. 3d 517 (S.D.N.Y. 2015) (reducing fees from the requested 13% of $346 million fund to 8.2%); *Precision Assocs. v. Panalpina World Transp., Ltd.*, 2013 U.S. Dist. LEXIS 121795 (E.D.N.Y. Aug. 27, 2013) (rejecting request for 33% of $87 million); *In re Wachovia Preferred Securities & Bond/Notes Litig.*, 2012 WL 2589230 (S.D.N.Y. Jan. 3, 2012) (awarding 12% of fund); *Cobell v. Salazar*, 679 F.3d 909 (D.C. Cir. 2012) (awarding 3% in fees for $1.512 billion of direct pecuniary relief and $1.9 billion for indirect relief); *AT&T Mobility Wireless Data Serv. Sales Litig.*, No. 1:10-cv-02278, Dkt. 196 at 8-9 (N.D. Ill. June 2, 2011) (fee of 25% was "unreasonable" and well above the mean and median fees awarded where recovery was likely to exceed $100 million); *In re Charles Schwab Corp. Secs. Litig.*, 2011

U.S. Dist. LEXIS 44547 (N.D. Cal. Apr. 19, 2011) (awarding attorneys' fees of 9.25% where fund equaled $235 million); *In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369 (S.D.N.Y. 2013) (awarding fees of 12%); *Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d at 373 (requested fee of 20% was "too high given the significant size of the fund"); *Royal Ahold*, 461 F. Supp. 2d at 387-88 (awarding 12% of net settlement fund); *Wal-Mart Stores*, 396 F.3d at 122-23 (upholding fee award of 6.5% of compensatory relief in "especially large and complicated" case); *see also Merkner v. AK Steel*, No. 1:09-CV-423-TSB, 2011 U.S. Dist. LEXIS 157375 (S.D. Ohio Jan. 10, 2011) (awarding 10%, inclusive of costs, of $91 million). Similar examples are numerous.

While class counsel will no doubt be able to cite a handful of cherry-picked examples where courts have awarded fees equal to or greater than the percentage they seek here, empirical research shows that such cases are outliers. The data show that in class actions "fee percentages tended to drift lower at a fairly slow pace until a settlement size of $100 million was reached, at which point the fee percentages plunged well below 20 percent." Brian Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811 (2010). In class actions in which the settlement equaled $100 to $250 million, the median fee award was 16.9% and the mean was 17.9%. *Id.* at 839. Other surveys support this analysis. *E.g.,* Logan, Stuart, *et al.*, *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Reports (March-April 2003) (empirical survey showed average recovery of 15.1% where recovery exceeded $100 million).

The relevant legal factors and empirical data counsel that a more appropriate fee award here is in the range of 10-16% of the fund on a flat-percentage basis or according to diminishing marginal rates that reflect the market, an approach utilized in the Seventh Circuit.[2] *See In re Synthroid Marketing*

---

[2] It is worth noting that even the 30%+ request would be slightly distended even if this case did not involve a mega-fund. *See, e.g.*, *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 1029, 1042 (S.D. Ohio 2001) (citing the Ninth Circuit's 25% benchmark and awarding 27% plus expenses); *Employees Pension Fund v. Fruit of the Loom*, 234 F.R.D. 627 (W.D. Ky. 2006) (25% awarded); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006) (23% awarded).

*Litig.*, 264 F.3d 712, 721 (7th Cir. 2001) ("*Synthroid I*") ("Both negotiations and auctions often produce diminishing marginal fees when the recovery will not necessarily increase in proportion to the number of hours devoted to the case."). In *In re Synthroid Marketing Litig.*, 325 F.3d 974, 980 (7th Cir. 2003) ("*Synthroid II*"), the Seventh Circuit awarded fees of 30% of the first $10 million, 25% of the next $10 million, 22% of the band from $20 million to $46 million, and 15% of the remainder on a fund totaling $88 million. Applying this same type of formula to this case, class counsel would receive:

| Recovery Tier | Rate | Fee |
|---|---|---|
| $0 to $10 million | 30% | $3,000,000 |
| $10 to $20 million | 25% | $2,500,000 |
| $20 to $46 million | 22% | $5,720,000 |
| $46 to $100 million | 15% | $8,100,000 |
| $100 to $127 million[3] | 10% | $2,700,000 |
| TOTAL | | $22,020,000 |

**B.    Amounts that are contingent or due for payment in the future and all other amounts that the class will not actually receive should be excluded when calculating fees.**

Given Rule 23's "fundamental focus" on "the result actually achieved for class members," the fees awarded should be a percentage of the amounts actually paid by the defendants to the fund for the benefit of the class. *See* Notes of Advisory Committee on 2003 Amendments to Rule 23(h) ("[I]t may be appropriate to defer some portion of the fee award until actual payouts to class members are known."). *See also Stewart v. USA Tank Sales & Erection Co.*, No. 12-05136, 2014 WL 836212, at *8 (W.D. Mo. Mar. 4, 2014) ("The Court is … reluctant to approve any settlement which allows counsel

---

[3] $127 million is estimated as the remaining funds after expenses, incentive awards, and the $19.25 million future and contingent portion of the settlements are deducted. To the extent there are additional administrative and notice costs, those, too should be deducted. *See* Section IV.B.

to receive 100% of their fees before the settlement process is completed. Holding back a percentage of the attorney fee award until all class members have received their settlement checks gives class counsel a financial incentive to monitor the settlement process and quickly respond to any client concerns."). Accordingly, a district court "evaluating a fee award … should begin by determining with reasonable accuracy the distribution of funds that will result from the claims process," which "may require it to 'delay a final assessment of the fee award to withhold all or a substantial part of the fee until the distribution process is complete.'" *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 179 (3d Cir. 2013) (quoting MANUAL FOR COMPLEX LITIG., FOURTH, § 21.71). The Sixth Circuit endorsed this approach in *Bowling*, where the court affirmed a decision that delayed payment to class counsel for annual contributions to a fund over a ten year period. Class counsel could petition to receive up to 10% of those annual payments over the ten-year period. 102 F.3d at 780; *see Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1283-84 (S.D. Ohio 1996). *See also Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 380 (D. Mass. 1997) (staging fee award based on actual value created for the class); *In re Giant Interactive Group, Inc. Secs. Litig.*, 279 F.R.D. 151 (S.D.N.Y. 2011) (holding half of the fee in abeyance "pending a report to the Court on the progress of the claims administration process" "because the touchstone of plaintiffs' counsel's entitlement to fees is the benefit actually conferred on the class"). Here, $10 million is not due to be fully paid by defendants until more than two years from now, and another $9.25 million is contingent on two defendants' recovery in separate actions against a third party.[4] Counsel is not entitled to a fee award based on funds that may never materialize and never benefit the class.

A proper calculation of attorneys' fees also must exclude any administrative costs or other amounts that the class will not actually receive. *See Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014)

---

[4] *See* Future Foam Settlement Agmt. (Dkt. 1854, Ex. C) ¶ 6; Hickory Settlement Agmt. (Dkt. 1751-3) ¶ 6; Woodbridge Settlement Agmt. (Dkt. 1751-7) ¶ 6.

(Posner, J.) ("administrative costs should not have been included in calculating the division of the spoils between class counsel and class members. Those costs are part of the settlement but not part of the value received from the settlement by the members of the class. The costs therefore shed no light on the fairness of the division of the settlement pie between class counsel and class members.") (internal quotation omitted). Class counsel asks for a percentage of the settlement *fund*, but the fund includes millions of dollars that will not be paid to the class—not least the request for over $5 million in expenses and $200,000 as an award to the class representatives (Dkt. 1908-1 ¶ 68), escrow fees, and notice and administration expenses.[5] Class counsel improperly excludes those costs from the *numerator* while simultaneously including them in the *denominator* of its fee calculation The calculation thus improperly inflates the fee award and deflates the percentage class counsel purports to claim and rewards class counsel with a commission on amounts paid to third parties.

"In order to determine a reasonable fee for the services of counsel, it is necessary to understand what counsel has actually accomplished for their clients, the class members. This can only be done when the expenses paid by the class are deducted from the gross settlement. The amount that remains, the adjusted gross settlement, represents what counsel has been able to achieve for the benefit of the class." *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, 2004 U.S. Dist. LEXIS 8608, at *20-*21 (S.D.N.Y. May 14, 2004). *See also In re Cardinal Health Inc. Secs. Litig.*, 528 F. Supp. 2d 752, 771 (S.D. Ohio 2007) ("The net recovery more truly approximates the amount of money that benefits the Class. Because the percentage approach is meant to align the attorneys' fees with the amount of money the class receives, the net recovery is a more appropriate metric."); *but see In re Online DVD*, 779 F.3d 934 (9th

---

[5] The class is only entitled to an allocation from the "Net Settlement Amount": the total settlement fund provided by each settlement agreement "less Court-approved attorneys' fees, reimbursement of costs and expenses, incentive awards, and fees and costs associated with issuing notice and claims administration." Plan of Allocation (Dkt. 1751-10) ¶ 4.

Cir. 2015) (holding it was not an abuse of discretion to use the gross settlement as a denominator without discussing contrary approach).

**C.    The purported lodestar should be disregarded because class counsel provided insufficient, conclusory summaries that deny the Court the information necessary to analyze the lodestar properly.**

In a settlement of this size, the lodestar crosscheck, or "the value of the services on an hourly basis," *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), is an important indicator of fee fairness. Class counsel claim a lodestar of $33,400,246. Declaration of Marvin A. Miller ("Miller Decl.") (Dkt. 1908-1) ¶ 59. The $33.4 million lodestar figure is drawn from conclusory summaries that prevent the Court from meaningfully reviewing the submission for instances of overbilling and inefficient and unnecessary hours billed to the class. This lack of information is particularly troubling where, as detailed below, a cursory review of the limited information class counsel did provide reveals that the figure is based in large part on fictional rates that paying clients would never tolerate.

The record presented by class counsel "does not permit any meaningful review of class counsel's attorneys' fees claims under the lodestar analysis," as a cross-check or otherwise, because plaintiffs provided only "sketchy, rudimentary summaries that provided no reviewable level of detail." *Physicians of Winter Haven LLC v. Steris Corp.*, No. 1:10 CV 264, 2012 U.S. Dist. LEXIS 15581, at *16 (N.D. Ohio Feb. 6, 2012). *Accord Goldberger*, 209 F.3d at 53 (2d Cir. 2000) (vindicating the court's "overarching concern for moderation" was made difficult because plaintiffs did not submit sufficiently detailed lodestar records to allow the court to vet them as a useful cross-check); *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984) ("The documentation offered in support of the hours charged *must* be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." (emphasis added)).

Indeed, in *United Slate*, the Sixth Circuit declared that a district court "would do violence to its judicial obligations were it to accept the amounts claimed at their value" "where the documentation is

inadequate." 732 F.2d at 502. Although it is true that when relying on the percentage-of-recovery to provide the primary methodology, it is acceptable to submit summaries rather than actual timesheets,[6] the declarations submitted by the majority of plaintiffs' counsel offer no specific breakdown at all; they merely list in abbreviated form each timekeeper's name, number of hours, and hourly rate— sometimes without even identifying the timekeeper's position and without other relevant details such as work performed or evidence to justify the requested rate. *See* Miller Decl. Ex. A (Dkt. 1908-2); *id.* Ex. E (Dkt. 1908-6). This is insufficient; the lodestar "serves little purpose as a cross-check if it accepted at face value." *Citigroup Secs. Litig.*, 965 F. Supp. 2d at 389. *See generally* Procedural Guidance for Class Action Settlements, *available at* http://cand.uscourts.gov/ClassActionSettlementGuidance ("All requests for approval of attorneys' fees awards must include detailed lodestar information, even if the requested amount is based on a percentage of the settlement fund."). Additional detail is necessary because a "summary spreadsheet reciting attorney names, hourly rates, and total hours spent" provides an "inadequate basis for the Court to place great weight on the lodestar as a valid cross-check." *Lacovara v. Hard Rock Cafe Int'l (USA)*, 2012 U.S. Dist. LEXIS 24023, at *7 (S.D.N.Y. Feb. 24, 2012); *see also Physicians of Winter Haven*, 2012 U.S. Dist. LEXIS 15581, at *20.[7] It is also not possible for the Court to conduct "any meaningful review of class counsel's attorneys' fee claims under the lodestar analysis" where counsel fails to provide a record "of the time spent by defense counsel" to enable a comparison to "gauge … reasonableness" and fails to provide a basis on which to determine if the rates sought "are reasonable for an attorney of his or her degree of skill, experience

---

[6] *E.g., In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005).

[7] Rule 23(h) fortifies this requirement by requiring that class members have notice of and an opportunity to object to all the fee motion papers. *Mercury Interactive*, 618 F.3d at 994-95; *accord Redman*, 768 F.3d at 637-38. It is not sufficient that class members are able to make "generalized arguments about the size of the total fee"; the notice must enable them to determine which attorneys seek what fees for what work. *Mercury Interactive*, 618 F.3d at 991. Even before the implementation of Rule 23(h) in 2003, it would have been improper to "paralyze objectors" by *in camera* submission of fee applications. *Reynolds v. Benefit Nat'l Bank,* 288 F.3d 277, 286 (7th Cir. 2002).

and reputation." *Id.* at *17. This lack of information is alone grounds for reducing the fee award by millions of dollars.

**D.** **Class counsel inflates its lodestar with exaggerated hourly rates far above the market rate of what paying clients are willing to pay and other courts have awarded.**

Compounding the problem with class counsel's lodestar is the overstated nature of even the limited information that was submitted, resulting in a lodestar that materially overstates the value of counsel's services. A reasonable hourly rate is usually "the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command in the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). While a district court has discretion to award a reasonable fee, "it remains important for the district court to provide an adequate explanation of the reasons for its award and the manner in which that award was determined." *Id.* (vacating hourly rate determination where court did not explain how or if it accounted for competing information about the market rate).

Here, the lodestar for a number of plaintiffs' firms is calculated based on billing rates that greatly exceed the rates that this Court has approved as reasonable and for which the firms have not met their burden of showing are justified. *See, e.g.*, *Van Horn v. Nationwide Prop. & Casualty Ins. Co.*, No. 1:08-cv-605, 2010 U.S. Dist. LEXIS 42357, at *14 (N.D. Ohio Apr. 30, 2010) (reducing hourly rates to $250 for an associate, $300 for a senior associate, $350 for a junior partner, $400 for a senior partner, and $450 for lead counsel, and citing multi-district class action applying "equalized" rates of $200 to $500/hour). For example, although Miller Law LLC failed to identify the position held by each timekeeper, the firm appears to request hourly rates of $815 to $250 for attorneys, $250 for paralegals, and $220 for law clerks, with no rate below $190, the billing rate of an "assistant document manager."[8]

---

[8] *See* St. John Decl. Ex. 3 (LinkedIn profile describing Ricky Amaro's position as assistant document manager); Dkt. 1908-2, Ex. 2.

These rates are excessive by any measure. In fact, earlier this year, a court reviewing lodestar submissions by Miller Law LLC reduced Mr. Miller's rate from the requested $815 to $650, Mr. Van Tine's rate from the requested $685 to $600, Ms. Fanning and Mr. Szot's rate from the requested $600 to $558, and both the $250 rate requested for paralegals and $220 for law clerks to $100. *Reid v. Unilever United States, Inc.*, No. 12 C 6058, 2015 U.S. Dist. LEXIS 75383, at *50-*60 (N.D. Ill. June 10, 2015). Applying those reductions alone, which are still well above the published market rates for attorneys in Ohio, the lodestar is reduced by over $1.3 million.[9] Far deeper reductions are necessary for a number of other firms that submitted excessive and unjustified hourly rates. *See, e.g.*, Dkt. 1908-4 at 20 (billing up to $695 for partners, $425 for associates/of counsel, $265 for paralegals, and $250 for "multi-media" staff); Dkt. 1908-6 at 17 (billing up to $900 for partners, $450 for associates, and $200 for paralegals); Dkt. 1908-9 at 12 (billing up to $700 for partners, $450 for associates/of counsel, and $200 for paralegals).

Perhaps even more problematically, both Miller Law and Schubert Jonckheer & Kolbe ("Schubert") appear to seek hourly rates for contract attorneys that are multiple times their market cost to the firm and equivalent to hourly rates awarded by this Court for partners. *Compare Van Horn*, 2010 U.S. Dist. LEXIS 42357, at *14, *with* Miller Decl. (Dkt. 1908-2, Ex. 2) (billing contract attorneys at hourly rates of $250-$450)[10] and Declaration of Dustin Schubert ("Schubert Decl.") (Dkt. 1908-6) at 18 (billing contract attorneys at hourly rates of $330-$350). Contract attorneys are hired to do relatively unskilled document review work that discerning paying clients refuse to pay a premium for

---

[9] *See* Ohio State Bar Association, *The Economics of Law Practice in Ohio in 2013*, *available at* https://www.ohiobar.org/NewsAndPublications/Documents/OSBA_EconOfLawPracticeOhio.pdf.

[10] *See* St. John Decl. Ex. 1 (LinkedIn profile describing Andrew Kanter's position in 2012-present as "Contract Attorney" with Miller Law LLC); *id.* Ex. 2 (LinkedIn profile describing Brian Kay's position in 2012-2013 as "Contract Attorney" with Miller Law).

and certainly cannot charge rates of $250-$450/hour, which is what Miller Law and Schubert request from the settlement fund.[11] Indeed, across the country, paying clients refuse to pay even as much as $150/hour for document review (even if law-firm attorneys conduct it)—and then only if the temporary attorneys are not billed directly to the client as a direct cost.[12]

As one court observed,

> [t]here is little excuse in this day and age for delegating document review (particularly primary review or first pass review) to anyone other than extremely low-cost, low-overhead temporary employees (read, contract attorneys)—and there is absolutely no excuse for paying these temporary, low-overhead employees $40 or $50 an hour and then marking up their pay ten times for billing purposes.

*In re Beacon Assocs. Litig.*, No. 09 Civ. 777, 2013 U.S. Dist. LEXIS 82192, at *86-*87 (S.D.N.Y. May 9, 2013). *See also Lola v. Skadden, Arps, Slate, Meagher & Flom*, No. 14-3845-cv, 2015 U.S. App. LEXIS 12755, at *4 (2d Cir. July 23, 2015) (observing that plaintiff contract attorney was paid $25 per hour, and holding that the work described was so devoid of legal judgment it may not even constitute the practice of law); *In re Weatherford Int'l Secs. Litig.*, 2015 U.S. Dist. LEXIS 3370, at *5 (S.D.N.Y. Jan. 5,

---

[11] *See* Heather Timmons, *Outsourcing to India Draws Western Lawyers*, N.Y. Times B1 (Aug. 4, 2010) (clients "don't need a $500-an-hour associate to do things like document review and basic due diligence"); Zusha Ellison, *GCs Embrace Outsourced Work*, The Recorder (Jan. 25, 2008) (quoting the associate general counsel of Del Monte Corp. stating, "it doesn't make sense to pay $150 to $250 an hour at some of the larger firms to do the document review—it just seems like overkill").

[12] The ABA Standing Committee on Ethics has ruled that "[i]n the absence of an agreement with the client authorizing a greater charge, the lawyer may bill the client only its actual cost plus a reasonable allocation of associated overhead, such as the amount the lawyer spent on any office space, support staff, equipment, and supplies for the individuals under contract." "The analysis is no different for other outsourced legal services, except that the overhead costs associated with the provision of such services may be minimal or nonexistent if and to the extent that the outsourced work is performed off-site without the need for infrastructural support. If that is true, the outsourced services should be billed at cost, plus a reasonable allocation of the cost of supervising those services if not otherwise covered by the fees being charged for legal services." St. John Decl. Ex. 4 (ABA Formal Op. 08-451).

---

2015) (finding staff attorney rates of $375 to $395 per hour marked up by "more than 600 percent of their direct cost to the firm" unreasonable and awarding an overall fee more than 23% less than requested). Courts and clients widely recognize that document review and contract-attorney work do not merit full-scale rates. *E.g.*, *Tampa Bay Water v. HDR Eng'g. Inc.*, 2012 U.S. Dist. LEXIS 157631 (M.D. Fla. Nov. 2, 2012) (contract attorney lodestar of $85/hour, less than half of regular associates); *Apple Inc. v. Samsung Elecs. Co.*, No. C 11-1846, 2012 U.S. Dist. LEXIS 160668, at *26 (Nov. 7, 2012) (Samsung's attorneys' fee request sought $125/hour for contract attorneys versus $500/hour for associates); *SEC v. Kirkland*, 2008 U.S. Dist. LEXIS 123308, at *5 (M.D. Fla. June 30, 2008) ("H&K anticipated using a senior associate whose rate was $245.00 per hour, a mid-level associate whose rate was $210.00 per hour, and contract attorneys at the rate of $125.00 per hour if extensive document review was required.").[13]

Although courts in other jurisdictions have awarded fees based on contract attorney rates of $125/hour and less, class counsel provided no evidence of the market rate for contract attorneys here. At a minimum, the court should reduce lodestar in accordance with the rates evidenced in those cases. Also, to understand the market rate for contract attorneys in this particular action, the rates that defense counsel billed to their clients for the work of contract attorneys would provide relevant evidence upon which the Court could base a further reduction in the lodestar.

Given the millions of pages of documents that the indirect purchaser plaintiffs reviewed independently, Miller Decl. (Dkt. 1908-1) ¶ 25, plaintiffs either inefficiently assigned the task to over-priced associates or assigned the task to contract attorneys (i) who are not necessarily identified as such in the fee petition, and (ii) whose hourly rates are exorbitantly higher than market rates. Reducing

---

[13] *See also* IT-Lex Technology Law, *The True Cost of Contract Attorneys Called into Question* (Apr. 26, 2013), *available at* http://www.foley.com/the-true-cost-of-contract-attorneys-called-into-question-04-26-2013/ ("Contract attorneys hired directly may charge … in the realm of $25-80 per hour).

the hourly rates for this work to the prevailing market rate would reduce the purported lodestar by millions of dollars. Even if the review of documents was assigned to full-time firm attorneys, many courts refuse to permit full lodestar rates to be charged, given that large-scale document review can be performed by non-professionals. *E.g.*, *City of Pontiac Gen. Emples. Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276, 280 (S.D.N.Y. 2013) ("a sophisticated client, knowing these contract attorneys cost plaintiff's counsel considerably less than what the firm's associates cost (in terms of both salaries and benefits) would have negotiated a substantial discount in the hourly rates charged the client for these services"); *Microsoft Corp. v. Computer Care Ctr., Inc.*, 06-CV-1429, 2008 U.S. Dist. LEXIS 112080, at *47 (E.D.N.Y. Apr. 8, 2008) (rejecting use of $385/hour associate for work a more junior attorney could have performed); *Planned Parenthood of Cent. N.J. v. Attorney Gen. of N.J.*, 297 F.3d 253, 266 (3d Cir. 2002) (remanding an award because appeals court was "unable to make a determination" whether plaintiff's attorney had improperly "billed hours for … such tasks as document review"); *United States Metro. Dist. Com.*, 847 F.2d 12, 19 (1st Cir. 1988) (approving lower rate for document review); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2001 U.S. Dist. LEXIS 8418, at *29-*30 (S.D.N.Y. Jun. 21, 2001) ($375/hour for "document review" unacceptable); *Weinberger v. Great N. Nekoosa Corp.*, 801 F. Supp. 804, 814 (D. Me. 1992) (disallowing hours for digesting depositions and reviewing documents).

Raising additional questions is the number of hours billed by contract attorneys in 2014. Schubert's submission indicates that contract attorneys billed *all* of their time—over 440 hours—in 2014. Schubert Decl. (Dkt. 1908-6) Ex. 2. This is more than double the number of hours that were billed in 2014 *collectively* by every other timekeeper whose records were submitted by the firm. This calls into question whether contract attorneys were used efficiently by the firms for document review and other relatively low-skill work, and whether their hours were run up after settlements had been reached in an effort to inflate lodestar. *See Citigroup Secs. Litig.*, 965 F. Supp. 2d at 373-74 (reducing

lodestar by millions of dollars "spent in pursuing discovery after the parties reached an agreement to settle their dispute").

Contrary to class counsel's fee application, no reasonable client would pay:

(i) $250 to $450 per hour for contract attorneys presumably primarily performing menial tasks such as document review and commanding market rates typically around $50/hour;

(ii) for any work performed by summer associates and law clerks;

(iii) for any work related to discovery after the parties agreed to settle their dispute; or

(iv) median rates of well over $600/hour for partners at Miller Law, Schubert, and Dickinson Wright, when court filings demonstrate that as recently as this year Miller Law's rates were reduced by another court, the Ohio State Bar Association's data on attorney billing rates show the mean rate for an attorney in Ohio with more than 36 years of experience is $261/hour, and class counsel did not make a showing that a higher rate is appropriate.[14]

In short, class counsel have exaggerated their true lodestar by millions of dollars between overstated hourly rates and the failure to provide relevant details such as the positions of many timekeepers, evidence of prevailing market rates, or, except with respect to Schiller & Schiller, PLLC, contemporaneous time entries. Counsel's failure to provide this information is particularly egregious in light of this Court's requests for similar information from attorneys requesting fees for the direct purchaser settlements. *See* Dkt. 1909. Court-ordered discovery undoubtedly would uncover additional evidence of class counsel's inflated lodestar. *See Felix v. Northstar Location Servs.*, 290 F.R.D. 397, 408 (W.D.N.Y. 2013) ("If plaintiffs and their attorneys are acting like they have something to hide from the absent class members, perhaps it's because they do.").

---

[14] *See* Ohio State Bar Association, *The Economics of Law Practice in Ohio in 2013*, *available at* https://www.ohiobar.org/NewsAndPublications/Documents/OSBA_EconOfLawPracticeOhio.pdf; *Reid*, 2015 U.S. Dist. LEXIS at *52; *see generally Gonter v. Hunt Valve Co.*, 510 F.3d 610, 619 (6th Cir. 2007) (affirming district court's reliance on Ohio State Bar survey to divine market rates).

Objectors suggest the following avenues for exploration that may well reveal that the proclaimed $33.4 million lodestar is further overstated in significant measure:

**1.** Were high-rate attorneys spending an excessive amount of time performing lower level tasks that are typically performed at an inexpensive rate? "Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *See Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983); *Beacon Assocs. Litig.*, 2013 U.S. Dist. LEXIS 2450960, at *18. Plaintiffs' submission hides the ball with respect to the number of document review attorneys and their amassed lodestar, yet emphasizes that "no less than 3.9 million pages of documents" were produced in this matter, making this is an area of concern. *See* Miller Decl. ¶ 25.

**2.** As evidence of the market rate for contract attorneys, what are the rates that defense counsel charged their clients for the work of contract attorneys in this matter?

**3.** Are there inefficiencies of duplication that need to be eliminated from the lodestar, especially in virtue of this being a settlement involving several cases, eleven firms, and over 100 timekeepers? In light of the substantial overlap with the direct purchaser case, are there inefficiencies due to the failure of class counsel for direct and indirect purchasers to coordinate their work to the benefit of both classes? *See, e.g.*, Miller Decl. ¶ 18 (despite overlap with direct purchase case, "Class Counsel solely prepared responses"); *id.* ¶ 25 (indirect purchaser "team worked independently to revise and analyze" millions of pages of documents even though only "some of the issues" differed from direct purchaser action. *See also Coulter v. Tennessee*, 805 F.2d 146, 152 (6th Cir. 1986) ("Where duplication of effort is a serious problem … the District Court may have to make across the board reductions by reducing certain items by a percentage figure, as Judge Morton did here in reducing this item by 50%."); *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (declaring that fees should exclude "hours that are excessive, redundant, or otherwise unnecessary"); *Citigroup Secs.*, 965 F. Supp. 2d at 390 (rejecting notion that would  "permit various competing firms to extract compensation for duplicative work"); *Hubbard v.*

*Donahoe*, 958 F. Supp. 2d 116, 125 (D.D.C. 2013) (evincing concern at overstaffing and vague billing).

**3.** How many hours were unreasonably expended after settlement was reached? *See Citigroup Secs.*, 965 F. Supp. 2d at 391-92 (eliminating post-settlement hours). More generally, were any hours expended that did not confer a benefit upon the putative class? *See, e.g., id.* at 373-74 (deducting value of "time that one plaintiffs' firm expended in an unsuccessful attempt to become Lead Counsel" and time "spent in pursuing discovery after the party reached an agreement to settle their dispute").

**4.** Did timekeepers block bill their time or enter individual entries for each task? Courts reviewing fee requests have found that "block-billing inflates hours by between 10% and 30%" and reduced fees accordingly. *E.g. Apple,* 2012 U.S. Dist. LEXIS 160668, at *30-*31 ("in light of the evidence that block-billing inflates hours by between 10% and 30%, the court trims 20% from the block-billed hours in Samsung's request); *Lil' Joe Wein Music, Inc. v. Jackson*, 2008 WL 2688117, at *13 (S.D. Fla. July 1, 2008) (20% across the board reduction because "[i]t is impossible to ascertain from the block billing entries whether the amount of time spent on any separate task performed as reasonable").

**5.** Did class counsel exercise sound "billing judgment"? *See Citigroup Secs.*, 965 F. Supp. 2d at 392-93.

**6.** What is a "reasonable allocation" of counsel's overhead associated with the contract attorneys who worked on the matter? Did the contract attorneys work on-site? Is the time spent by firm attorneys to supervise the contract attorneys accounted for in the lodestar? *See* ABA Formal Op. 08-451 (St. John Decl. Ex. 4).

**7.** When an actual base lodestar is deduced and the Court has made appropriate reductions, what is the real multiplier being sought by class counsel? Is this multiplier warranted? *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010) (lodestar enhancement is justified only in "rare and exceptional" circumstances where "specific evidence" demonstrates that unenhanced "lodestar fee would not have been adequate to attract competent counsel"); *McDaniel v. County of Schenectady*, 595 F.3d 411, 426 (2d Cir. 2010) (describing the "danger of 'routine overcompensation' for risk that has troubled this court

in the context of 'mega-fund' class actions" and holding that "an award of no lodestar multiplier at all is within the district court's discretion.").

In the face of excessive and misleading submissions, the Court has discretion to reduce hours across the board. *E.g.*, *Braun v. Ultimate Jetcharters*, 2014 U.S. Dist. LEXIS 103972 (N.D. Ohio July 30, 2014) (reducing hours by 50% across the board for "excessive and block billing, overstaffing, improvidently filed procedural motions, and the Court's overall lack of confidence in the accuracy and veracity of the billing records."). The Court also has discretion to disregard the lodestar entirely. Class counsel have not met the required showing that "hiring out of town attorneys was reasonable," and, more problematically, that "the rates sought by out of town counsel are reasonable for an attorney of his or her degree of skill, experience and reputations." *Physicians of Winter Haven*, 2012 U.S. Dist. LEXIS 15581 at *16-*17. In the absence of this showing, "the only method of reviewing the claimed attorneys' fees is by reference to their percentage of the common benefit award." *Id.* at *20.

~   ~   ~

The remaining *Ramey* factors cannot carry the weight of plaintiffs' excessive fee request. *See Sobel v. Hertz*, No. 3:06-CV-00545, 2011 U.S. Dist. LEXIS 68984, at *44 (D. Nev. Jun. 27, 2011) ("Class Counsel has requested for itself an uncontested cash award … with only a modest discount from the claimed lodestar amount. In other words, the class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case outright."). For example, "the complexity of the litigation," *Ramey*, 508 F.2d at 1196, is already reflected in the base lodestar through the number of hours worked, and such "factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar." *Kenny A.*, 559 U.S. at 546; *see also In re Johnson & Johnson Derivative Litig.*, No. 10-2033, 2013 U.S. Dist. LEXIS 167066, at *31 (D.N.J. Nov. 25, 2013); *Blum v. Stenson*, 465 U.S. 886, 898-99 (1984). So, too, is the quality of services rendered by counsel reflected in their hourly rates. *Kenny A.*, 559 U.S. at 553; *Johnson & Johnson*, 2013 U.S. Dist. LEXIS 167066, at *31. And notably absent

from class counsel's fee petition is a discussion of the recovery for the class as compared to its potential damages at trial, impeding the Court's analysis of the benefit to the class.[15]

Moreover, class counsel was able to "piggyback" on the work undertaken by class counsel for the direct purchasers to reduce their risk. *See, e.g.*, Dkt. 1408 at 85 (referencing indirect purchasers' statement that they had "worked closely … in developing the factual record" with the direct purchaser class and noting that indirect purchasers had even incorporated by reference direct purchasers' statement of facts and exhibits in their brief filed in support of their motion for class certification); *id.* (direct purchaser class and indirect purchaser class "bring similar claims against members of the same alleged conspiracy[;] Plaintiffs' common evidence with respect to liability is largely the same"). Both the classes of indirect and direct purchasers should be able to realize some gains through reduced expenditure of counsel time, but the fee papers, vague though they are, do not demonstrate that to be the case.

## V. Further fee reduction is necessary to deter overinflated fee requests in the future.

An appropriate sanction for the breach of fiduciary duty and for the original misleading fee petition is to reduce the multiplier below 1 on the uninflated lodestar amounts. If the only consequence from trying to claim more than what class counsel is entitled to is that class counsel will get what they would have been entitled to if they had filed a fair petition in the first place, there is no incentive to be forthright with a court in the original fee petition. On the rare occasions they get caught, they are no worse off; if no objector investigates, they receive a windfall. In the absence of a sanction, every class counsel is playing with house money when they try to artificially inflate their fee request. If "the

---

[15] Even where the settlement represents an "outstanding" result, courts will reduce fees well below the percentage sought by class counsel. *DPL Inc. Secs. Litig.*, 307 F. Supp. 2d at 951-52 & n.8 (reducing fee request of 35% to 20% despite finding the settlement "is a truly remarkable accomplishment" that represented between 62% and 145% of losses suffered, and also provided non-monetary benefits)

Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place. To discourage such greed a severer reaction is needful." *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980); *Keener v. Dep't of Army*, 136 F.R.D. 140, 150 (M.D. Tenn. 1991) (denying outrageous fee request entirely and ordering counsel to attend a CLE class in legal ethics); *Toussie v. County of Suffolk*, 2012 U.S. Dist. LEXIS 127143, at *15 (E.D.N.Y. Sept. 6, 2012) (failure to exclude excessive or redundant hours from request is grounds for sanctions). Public policy and the law demand that there be material consequences for the assertion that lodestar is over $33 million; "[o]utside-chance opportunity for a megabucks prize must cost to play." *Commonwealth Elec. v. Woods Hole*, 754 F.2d 46, 49 (1st Cir. 1985).

## VI.    The fee request fails to comply with Rule 23(h).

Rule 23(h) authorizes the Court to award "reasonable" attorneys' fees only when notice of the fee request is "directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h); *Redman*, 768 F.3d at 637-38. "Because members of the class have an interest in the arrangements for payment of class counsel whether that payment comes from the class fund or is made directly by another party, notice is required in all instances." Notes of Advisory Committee on 2003 Amendments to Rule 23. Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with that proposal." *Cf. also* Ohio. R. Prof. Conduct 1.5(e) (explaining heightened duties of client oversight where lawyers from different firms attempt to divide legal fees).

It is not sufficient that class members are able to make "generalized arguments about the size of the total fee"; the notice must enable them to determine which attorneys seek what fees for what work. *Mercury Interactive*, 618 F.3d at 994. The fee request in this case lacks basic information; it fails to provide even the bare bones of how any fee will be distributed, leaving such distribution to be made

---

Objection of Melissa Holyoak and John Tabin
Case No: 10-MD-2196 (JZ)                24

secretly amongst class counsel. Such an extra-judicial division of the award would undermine Rule 23(h)'s policy of "ensur[ing] that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested information to evaluate the reasonableness of a proposed fee." *Id.*

Rule 23(h) requires the district court to set and allocate the fee award. It is legal error for the court to delegate the allocation of that fee award to a non-judicial third party or to defer to the allocation proposed by the attorneys themselves. *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 229 (5th Cir. 2008).

> It is likely that lead counsel may be in a better position than the court to evaluate the contributions of all counsel seeking recovery of fees. But our precedents do not permit courts simply to defer to a fee allocation proposed by a select committee of attorneys, in no small part, because "counsel have inherent conflicts." As Judge Ambro noted, "They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?"

*Id.* at 234-35 (quoting *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005) (Ambro, J., concurring)). In the same vein, a Sixth Circuit decision predating Rule 23(h) upheld a district court's requirement of *in camera* disclosure of a fee-sharing arrangement even where it was of only "questionable relevance" and expressly noted that the determination of fees in response to other requests "might warrant disclosure of the agreements" to objectors. *Bowling*, 102 F.3d at 781.

In this MDL, there are at least 11 law firms who presumably will share any fee awarded by the court. Rather than asking for individual awards, the firms asked for a single lump sum of $50.4 million in fees and expenses, to be divided secretly among themselves. The *High Sulfur* fee agreement is comparatively inoffensive to the situation here: there, at least the judge had the fee committee's recommendation available. In contrast, the allocation in this case will be made by an *out of court* determination among plaintiffs' counsel without any judicial involvement. It is impossible to reconcile this with the *High Sulfur* requirement that the allocation of fee awards be done openly by the court.

There are good reasons why public policy should require a court to be the one allocating the fees. If one of the law firms has secretly agreed to accept a lower amount or percentage of its lodestar, it is the class that is entitled to that giveback, not a law firm that, unbeknownst to the class and the court, extracted a return greater than that believed by the Court. *Cf. Pearson*, 772 F.3d at 786; *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 949 (9th Cir. 2011) (givebacks to parties instead of class is a sign of impermissible self-dealing because "there is no apparent reason the class should not benefit from the excess allotted for fees"). Perhaps one firm is entitled to a larger percentage of its lodestar than another firm, or a disproportionate share of the lump sum awarded to counsel, but those reasons should be tested in court. *Cf.* MANUAL FOR COMPLEX LITIG., FOURTH, § 14.11 at 186; *see also generally* Elizabeth Chamblee Burch, *Judging Multidistrict Litigation*, 90 N.Y.U. L. Rev. 71 (2015) (illuminating repeat-player phenomenon and concluding that fees should be allocated "through a transparent process, not through the backdoor of settlement").

## VII. The Court should reject any proposal by class counsel to treat class counsel better than class members by paying the full amount of attorneys' fees and expenses before fully paying the class.

Rule 23(h)(1), on its face, requires notice "directed to class members in a reasonable manner" of a motion for fees and expenses. Here, class counsel filed their fee petition on September 30, 2015, but has failed to file the memorandum of law in support. *See* Fee Petition (Dkt. 1908). A Rule 23(h) award is inappropriate in the absence of giving class members a fair opportunity to object to the fee request, which necessitates class counsel's fee petition as well as the reasons and legal support for the fee petition being available to class members sufficiently in advance of the opt-out and objection deadlines. *Mercury Interactive*, 618 F.3d 988; *Redman*, 768 F.3d at 637-38.

One concern here, in particular, is that three of the proposed settlement agreements provide for payments by the defendants that are delayed for up to two years or are contingent upon the defendant's recovery in separate litigation. Specifically, the settlement with Future Foam provides that

Future Foam will pay $10.5 million; however, $2.5 million of that amount is not due until July 31, 2016, and $4 million is due for payment only when or if Future Foam recovers that amount in litigation against Dow Chemical. Future Foam Settlement Agmt. (Dkt. 1854, Ex. C) ¶ 6. The settlement with Hickory provides a delayed payment schedule for $3 million, with the last payment of $1.5 million due by June 30, 2017, and another $5.25 million due for payment only when or if Hickory recovers that amount in litigation against Dow Chemical. Hickory Settlement Agmt. (Dkt. 1751-3) ¶ 6. Likewise, the settlement with Woodbridge provides a delayed payment schedule for $4.5 million, with the last $2.25 million due two years after this Court enters final judgment but not later than December 31, 2017. Woodbridge Settlement Agmt. (Dkt. 1751-7) ¶ 6.

To the extent that class counsel seeks to recover the full amount of requested fees immediately while class members' payments remain contingent or are delayed for up to two years, such a payment structure is an impermissible breach of the attorneys' fiduciary duty. It is hard to conceive of a more blatant way for class counsel to signal that it has put its own interests ahead of those of its putative clients than to design a settlement which pays themselves almost immediately while making their clients wait years to recover their full claim allocation, if they ever fully recover. The Court should not countenance this unusual funding arrangement; instead, the Court should view it as one of the "signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations." *See Pampers*, 724 F.3d at 718 (internal quotation omitted); *Eubank v. Pella Corp.*, 753 F.3d 718, 724 (7th Cir. 2014) (settlement provision allowing payment of portion of attorneys' fees before class claims were paid was "suspicious").[16]

---

[16] Another warning sign of a class action settlement that is inequitable between class counsel and the class is also present in the settlement agreements and thus further warrants heightened review: a "clear sailing agreement" by which the defendants agree not to oppose class counsel's fee request. *See, e.g.*, Carpenter Settlement Agmt. (Dkt. 1751-2) ¶ 12 ("Carpenter shall not take any position with respect to Class Counsels' request for an award of attorneys' fees and for reimbursement of costs,

**VIII.  Class notice was defective because material aspects of the settlement were not publicized in the notice.**

The fundamental strictures of due process demand that notice to absent class members fairly apprise them of the terms of the settlements such that they have an opportunity to voice their objections. Under *Mullane v. Central Hanover Bank*, the constitutional imperative is that settlement "notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance." 339 U.S. 306, 314 (1950).[17] That standard is not met where the identity of a *cy pres* beneficiary and the contingent and delayed nature of the settlement amount are not disclosed.

Notice serves the purpose of allowing each class member to evaluate the settlement and reach an informed decision of their own. *In re Veritas Software Corp. Secs. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007) ("It is clear that the purpose of the notice requirement is to allow class members to evaluate a proposed settlement."); 2 NEWBERG ON CLASS ACTIONS, § 8.04 at 8-17 ("[T]he purpose [of notice is] allowing the parties to make conscious choices that affect their rights in a litigation context."). The crucial determination is whether the notice would have misled a reasonable individual, thereby causing her to surrender her opt-out or objection rights and submit to the class settlement on false pretenses. Notice allows class members a sound platform for assessing the strengths and weaknesses of the case, the merits and demerits of the settlement. Accordingly, when a settlement notice to absent class members includes material inaccuracies or omits salient information about the settlement, such notice does not comport with the *Mullane* standard. *E.g.*, *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 198 (5th Cir. 2010) (notice failed to clearly inform class members of the possibility of a *cy pres* distribution).

---

expenses and incentive awards"); Hickory Settlement Agmt. (Dkt. 1751-3) ¶ 11 (same); Woodbridge Settlement Agmt. (Dkt. 1751-7) ¶ 11 (same).

[17] Although *Mullane* did not involve a Rule 23 class action, it long as been held to apply equally to absent class members in such actions. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

The notice provided here is deficient under *Mullane* because it fails to provide the "required information" that is material to a reasonable class member's evaluation of the settlement, in determining whether to submit or object to the proposed settlements in two respects: (1) it does not disclose the identity of potential *cy pres* beneficiaries; and (2) it misleads class members regarding the size of the settlements by stating that the fund "total $151,250,000," when, in fact, over $9 million of that amount is contingent on defendants recovering funds in separate litigation against a third party.

After costs, attorneys' fees, and incentive awards have been paid from the settlement funds, "it is possible that any money remaining after claims are paid will be distributed to charities or other beneficiaries approved by the Court." Notice (Dkt. 1751-9) at 7. This is the only information provided to class members about the potential *cy pres* distribution. Neither the notice nor the settlement agreements reveal the identity of the potential recipients. Nor do the settlements provide any mechanism for class members to provide input on the selection of *cy pres* recipients or to receive notice of the identities of potential recipients once they are recommended to the Court.

The identity of a *cy pres* recipient is material to the fairness of a settlement. "To ensure that the settlement retains some connection to the plaintiff class and the underlying claims … a *cy pres* award must qualify as the next best distribution to giving the funds directly to class members." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). Where the parties do not establish that the potential recipient has an appropriate nexus to the putative class and their claims, the settlement cannot be approved. *Custom LEC v. eBay, Inc.*, 2013 U.S. Dist. LEXIS 122022, at *19-*20 (N.D. Cal. Aug. 27, 2013). *See also Dennis*, 697 F.3d at 867 (rejecting proposed settlement because "by failing to identify the *cy pres* recipients, the parties have restricted our ability to undertake the searching inquiry that our precedent requires"). In an opt-out settlement, providing the identity of potential *cy pres* recipients preserves the right of absent class members to distance themselves from causes or institutions that they would rather not support. The information can underpin a valid objection if there is an abuse of

the *cy pres* mechanism if, for example, the intended recipient is related to class counsel or a defendant, or when there is a geographic incongruence between the class and the recipient. *See Nachshin v. AOL*, 663 F.3d 1034 (9th Cir. 2011).

The notice is additionally defective because it fails to inform class members that a proclaimed benefit—namely, over $9 million—might not materialize. *See Katrina Canal Breaches*. 628 F.3d at 198 (notice was deficient where amount available for distribution might be greatly reduced by undisclosed costs and result in *cy pres* distribution). In *Vassalle v. Midland Funding*, 708 F.3d 747, 759 (6th Cir. 2013), the Sixth Circuit found that notice did not satisfy due process where it did not properly inform the class that they would give up their right to sue the defendant for conduct related to that underlying the action. The court reasoned that the settlement's provision of the release was a "principal ground" on which a class member might object. Likewise, the settlement amount for which class members are releasing their right to sue individually is a principal ground upon which they might object.

Class members have a right to know how much money is involved in the settlements, to whom their money is going, and how it will be utilized. *See In re VeriFone Holdings, Inc. Secs. Litig.*, 2013 U.S. Dist. LEXIS 126988, at *6 (N.D. Cal. Sept. 5, 2013) (what will happen to funds remaining after initial distribution must be specified). By failing to provide that information here, class members did not have sufficient information in regard to whether or not to waive their rights to sue and consent to the settlement agreement, and the notice was constitutionally defective.

## CONCLUSION

For the foregoing reasons, the settlements do not afford effective notice to the class, and, if the Court approves the settlements, Tabin requests that the Court refuse to approve the fee award as requested and reject any proposal that it delegate its Rule 23(h) duties or that treats class counsel better than the absent class members.

Dated: November 12, 2015

Respectfully submitted,

_/s/ Anna St. John_
Anna St. John
COMPETITIVE ENTERPRISE INSTITUTE
  CENTER FOR CLASS ACTION FAIRNESS
1899 L Street NW, 12th Floor
Washington, DC 20036
Phone: (917) 327-2392
Email: anna.stjohn@cei.org

_Attorney for Objectors Melissa Holyoak and John Tabin_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Objection of Melissa Holyoak and John Tabin, with accompanying declarations, was filed electronically with the Clerk of Court of the United States District Court for the Northern District of Ohio on this 12th day of November 2015 by using the CM/ECF system, which will automatically send a notice of electronic filing to all persons registered for ECF as of that date.

I further certify that I caused the foregoing Objection of Melissa Holyoak and John Tabin, with accompanying declarations, to be sent by overnight delivery by the U.S. Postal Service on this 12th day of November 2015 to the following:

| | |
|---|---|
| Clerk of the Court<br>U.S. District Court<br>Northern District of Ohio<br>United States Courthouse<br>1716 Spielbusch Avenue<br>Toledo, OH 43604 | Marvin A. Miller<br>Miller Law LLC<br>115 S. LaSalle Street, Suite 2910<br>Chicago, IL 60603 |

Dated: November 12, 2015

/s/ *Anna St. John*
Anna St. John