Vaughn R Walker
Law Office of Vaughn R Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA 94111
Tel: (415) 871-2888
Fax: (415) 871-2890
vrw@judgewalker.com

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No 1917 |
| This Order Relates to: | Master Case No 3:07-cv-05944-JST<br>Case No 3:14-cv-02058-JST |
| ALL DIRECT PURCHASER ACTIONS | **REDACTED - ORDER RE DIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS** |

REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

PAGE 1 OF 40

1        The Direct Purchaser Plaintiffs ("DPPs") move to compel the Mitsubishi

2  defendants ("Mitsubishi")[1] to provide further responses to three interrogatories[2] and for

3  evidentiary sanctions pursuant to Federal Rule of Civil Procedure 37, to wit, deeming Samsung

4  SDI's interrogatory responses                         [3] and "documents

5  evidencing Mitsubishi's contacts with competitors" admissible at trial against Mitsubishi.

6  Motion at 12, 14-16, 20; 1/8/16 DPPs' Reply ("Reply") at 12.

7        The parties' submissions provide substantial detail regarding the extensive

8  discovery motion practice over the past year and a half in this case, which is relevant to both

9  the DPPs' motion to compel and their motion for sanctions.[4]  Notwithstanding the lingering

10  complaints about compliance with meet-and-confer obligations,[5] the parties appear to agree

---

[1] The Mitsubishi defendants are Mitsubishi Electric Corporation ("MELCO"), Mitsubishi Electric US, Inc ("MEUS") and Mitsubishi Electric Visual Solutions America, Inc ("MEVSA"). *See* DPPs' 12/4/15 Motion to Compel Mitsubishi to Provide Full and Complete Responses to Discovery re Meetings with Competitors, Sales, and Destruction of Evidence and for Evidentiary Sanctions ("Motion") at 1 n 2.

[2] Interrogatories Nos 5, 12 and 16 from the DPPs' September 4, 2014 and December 14, 2014 Requests for Interrogatories.

[3] Due to the parties' submission of highly confidential information in connection with these motions, a redacted version of this order is submitted for filing in the public docket and the unredacted version is filed under seal.

[4] The parties' submissions regarding this motion exceed 3,600 pages, including multiple supplemental responses to discovery requests from each of the three Mitsubishi defendants and another party, prior discovery orders in this case, discovery correspondence between the parties, deposition excerpts, exhibits and declarations, including the 12/18/14 Saveri Declaration in support of DPPs' 12/18/14 motion to compel ("Saveri Dec"). The submissions include the DPPs' 6/30/16 supplemental briefing ("DPPs' Supp Brief") and Mitsubishi's 7/21/16 supplemental response ("Mitsubishi's Supp Brief"), providing updated information on these discovery issues (999 pages).

[5] *See, e g,* Mitsubishi's 12/23/15 Response to DPPs' Combined Motion to Compel and Motion for Sanctions ("Opposition") at 1 (asserting that the DPPs did not meet and confer); DPPs' 1/8/16 Reply ("Reply") at 13 n 8, citing Saveri Dec, Ex 11 (Nov 2014 meet and confer re Interrogatories 5 and 12), 12/4/15 Rushing Declaration in support of DPPs' Motion to Compel ("Rushing Dec"), ¶14, Ex 31 (July 2015 meet and confer re Interrogatories Nos 5, 12 and 16), Rushing Dec, Ex 44 (October 2015 request for confirmation that Mitsubishi's responses to interrogatories are current in light of recent document production) and Rushing Dec, ¶27 (Oct 2015 confirmation that Mitsubishi did not currently intend to update discovery responses). The undersigned has reviewed these exhibits and finds that the parties did meet and confer regarding Mitsubishi's responses to Interrogatories Nos 5, 12 and 16 at issue here.

REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

1  that the motions have now been fully briefed and are ripe for consideration.[6]  The parties have

2  provided supplemental submissions in support of and in opposition to these motions.[7]

3

4  **I.   DPPs' Motion to Compel Further Responses to Interrogatories Nos 5, 12 and 16**

5       While Mitsubishi has provided a number of supplemental responses to the three

6  interrogatories at issue, the DPPs contend that Mitsubishi's supplemental responses remain

7  deficient. In view of the discovery of previously undisclosed Mitsubishi documents and

8  information, the DPPs seek further responses to:  (1) Interrogatory No 5 regarding meetings or

9  communications between Mitsubishi and CRT competitors, (2) Interrogatory No 12 regarding

10  Mitsubishi's monthly sales of CRTs or CRT Products for the relevant period and (3) Interrogatory

11  No 16 regarding the loss and destruction of Mitsubishi's documents regarding its CRT business.

12  Mitsubishi contends that its responses are adequate in light of its exiting the CRT business in

13  2005, the loss of documents before its 2011 litigation hold and the inability of its witnesses to

14  recall events long past.  Notwithstanding the parties' very different contentions, the

15  interrogatories at issue appear fairly straightforward.

16

17

18  **A.  Mitsubishi's Responses to Interrogatory No 5 (Competitor Contacts)**

19       The DPPs' Interrogatory No 5 requests the following:

20

21       _____

22

23  [6] Mitsubishi asserts that the DPPs violated Local Rule 7-8(a) by filing their motion to compel in the same document as their sanctions motion. Opposition at 18, n2. The extensive motion practice and prior orders have afforded Mitsubishi full notice of the claimed deficiencies of its discovery responses.

24  The undersigned acknowledges Mitsubishi's point but finds it unnecessary to require the DPPs to file a separate motion for evidentiary sanctions in light of the circumstances set forth below.

25  [7] See 6/30/16 Saveri Letter ("DPPs' Supp Brief"), 6/30/16 Rushing Declaration ("Rushing Supp Dec"), 7/21/16 Brody Letter ("Mitsubishi's Suppl Brief") and 7/21/16 Fuentes Declaration ("Fuentes Supp Dec").

26

27  REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

28

**Interrogatory No 5.**  Identify any meeting or communication between You and other producers of CRT and/or CRT Products during the Relevant Time Period, including the named Defendants and Co-Conspirators in this coordinated proceeding, regarding CRT and/or CRT Product pricing, price increase announcements, terms or conditions of sales, profit margins or market share, production levels, inventory, customers, auctions, reverse auctions, dynamic bidding events, or sales, and for each such meeting or communication:

    **(a)** Provide the date and location of the meeting or communication;
    **(b)** Identify the person(s) who initiated, called, organized, attended or participated in the meeting or communication;
    **(c)** Describe the subject matter discussed and any information you provided or received;
    **(d)** Describe every action taken by you as a result of the meeting or communication; and
    **(e)** Identify all persons with knowledge relating to the meeting or communication.

*See* 12/4/15 Rushing Declaration in support of DPPs' Motion ("Rushing Dec"), Ex 24 (5/26/15 Mitsubishi's Third Supplemental Responses to DPPs' Interrogatories Nos 5, 10-12, at 7).

As this interrogatory has been the subject of prior discovery motion practice, a brief history suffices to provide context.  Based on the submissions, the undersigned makes the following findings of fact with respect to Interrogatory No 5.

    1.    On September 4, 2014, the DPPs served their first set of interrogatories, including Interrogatory No 5, on Mitsubishi.  Saveri Dec, Ex 1.

    2.    On September 5, 2014, Mitsubishi served a list of its competitor contacts in an Exhibit B to its responses to a similar interrogatory served by the Direct Action Plaintiffs ("DAPs") ("DAP Exhibit B").  Saveri Dec, Ex 16.  Mitsubishi's DAP Exhibit B contained a chart of 35 competitor contacts.  *Id.*

    3.    On October 6, 2014, Mitsubishi responded to the DPPs' Interrogatory No 5 with a paragraph of standard objections and the following:

    Subject to and without waiving the foregoing and general objections, Mitsubishi Electric has not completed its investigation of the

REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

PAGE **4** OF **40**

facts responsive to this Interrogatory and Mitsubishi Electric will identify information or documents responsive to this Interrogatory, if any, as soon as reasonably practicable.  (Saveri Dec, Ex 3 at 4-5).

Mitsubishi's October 6, 2014 response did not include any substantive information. *Id.*

4.      At a November 11, 2014 meet and confer, Mitsubishi informed the DPPs that it had provided answers to the DAPs' similar interrogatories and since the DPPs' Interrogatory No 5 was more expansive than the DAPs' similar interrogatory, agreed to provide an amended response to Interrogatory No 5 by November 18, 2014. *See* Saveri Dec ¶2, Ex 11 (11/14/14 Letter from R Saveri to M Brody).

5.      On November 18, 2014, Mitsubishi did not produce its supplemental response to Interrogatory No 5.

6.      On December 5, 2014, DPPs' counsel wrote to confirm a conversation in which Mitsubishi's counsel allegedly stated it would provide amended discovery responses by December 5, 2014.  Mitsubishi's counsel sought to clarify: "That is not exactly what I said," in that "we were supplementing with more information, and we planned to have things to you in a day or two" but had "sent them to the client for approval and verification" and hoped to "get a quick response" and "send them to you ASAP."  Saveri Dec, Ex 13 (12/5/14 M Brody email).

7.      On December 10, 2014, after the first deposition of Mitsubishi's witness Koji Murata (December 8-9, 2014, *see* Rushing Dec, Ex 22) and on the first day of Masahiko Konishi's deposition (*see* 1/8/16 Rushing Declaration ("Rushing Reply Dec"), Ex 1), Mitsubishi sent a supplemental response to the DPPs' Interrogatory No 5, which provided a paragraph of standard objections and the following:

REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

PAGE 5 OF **40**

Subject to and without waiving the foregoing and general objections, Mitsubishi Electric is aware of the meetings and or communications referred to in Exhibit B. Mitsubishi Electric has not completed its investigation of the facts responsive to this Interrogatory and reserves the right to supplement this response with additional responsive information as necessary. (Saveri Dec, Ex 14 at 7-8).

But Mitsubishi's 12/10/14 supplemental response did not contain an Exhibit B, which was "inadvertently not included."[8]

8.     On the same day, the DPPs notified Mitsubishi of the missing exhibits. Saveri Dec, Ex 15 (12/10/14 R Saveri email). The following day, Mitsubishi's counsel replied "Thanks for letting me know. We are looking into this and will get back to you on it as soon as possible." Saveri Dec, Ex 15 (12/11/14 J Hoffman email).

9.     On January 16, 2015, Mitsubishi served another supplemental response to the DPPs' Interrogatory No 5:

Subject to and without waiving the foregoing and general objections, Mitsubishi Electric is aware of the meetings and or communications referred to in Exhibit B.
Mitsubishi Electric directs the DPPs to the following documents, which have been used as Exhibits in depositions and are the subject of testimony, and may reflect meetings or communications responsive to this Interrogatory:
[6 lines of document production numbers and ranges].
Mitsubishi Electric directs the DPPs to the following documents produced by other Defendants, which may reflect communications responsive to this Interrogatory: [18 lines of document production numbers and ranges]. *See* Rushing Dec, Ex 21.

Exhibit B is a nine-page chart describing characteristics of at least 52, and possibly 57 competitor contacts. *Id*.

_____

[8] December 19, 2014 Letter from Mitsubishi's counsel. Rushing Dec, Ex 20.

REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

PAGE **6** OF **40**

10.     On April 28, 2015, the undersigned issued a recommended order granting the DPPs' motion to compel, inter alia, a further response to Interrogatory No 5 and directing Mitsubishi to produce the original Exhibit B that was missing from its December 10, 2014 supplemental response.  4/28/15 R&R Order re Direct Purchaser Plaintiffs' Motion to Compel Supplemental Discovery Responses from Mitsubishi, ECF No 3830 at 3-5 ("4/28/15 R&R Order").

11.     On May 26, 2015, Mitsubishi produced to the DPPs a chart entitled "Original Exhibit B" and "Updated Exhibit B to Mitsubishi Electric Corporation's Supplemental Response to DAPs' First Set of Interrogatories," which appears identical to Mitsubishi's DAP Exhibit B (6-page chart of 35 competitor contacts). [9] Compare Rushing Dec, Ex 24 (Mitsubishi's Third Supplemental Response to DPPs' Interrogatories Nos 5, 10-12, dated May 26, 2015) with Saveri Dec, ¶21, Ex 16 (Ex B to Mitsubishi's 9/5/14 Supplemental Response to DAPs' First Set of Interrogatories, marked as deposition Ex No 6120).

12.     On July 28, 2015, Mitsubishi served its Fourth Supplemental Response to DPPs' Interrogatories, including its response to Interrogatory No 5:

> Mitsubishi Electric states that it does not possess information responsive to the Interrogatory's request seeking identification of (1) who initiated, called, or organized the meetings identified in the Updated Exhibit B (served January 16, 2015); (2) any information Mitsubishi Electric received from those meetings; or (3) any action taken as a result of those meetings or communications."  12/23/15 Brody Dec, Ex 2 (7/28/15 Mitsubishi Electric's Fourth Supplemental Response to Direct Purchaser Plaintiffs' Interrogatories at 5 ("Mitsubishi's Fourth Supplemental Response").

---

[9] Mitsubishi provides no explanation why its original Exhibit B was not promptly produced after its absence was noted nor why motion practice was necessary for its production to the DPPs.

REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

1    In the present motion, the DPPs seek an order requiring Mitsubishi to provide a

2    full and complete list of Mitsubishi's contacts with competitors.  The DPPs note that the court

3    already ruled that Mitsubishi must reproduce witnesses due to its failure to provide full

4    information on competitor contacts.  Motion at 2, citing 4/28/15 R&R Order at 5 (Mitsubishi

5    "repeatedly delayed responding to valid discovery requests, effectively withholding relevant

6    discovery responses and preventing DPPs' counsel from examining Mitsubishi's witnesses on

7    relevant documents.")  The DPPs are correct that on April 28, 2015, Mitsubishi was ordered to

8    produce and serve original Exhibits A and B in verified responses and to make available at least

9    one witness for a second deposition due to Mitsubishi's delayed discovery.  *See* 4/28/15 R&R

10   Order.

11   The DPPs assert that Mitsubishi intentionally withheld responsive information by

12   repeatedly delaying full responses to Interrogatory No 5.  Motion at 7, 12.  The undersigned

13   agrees and makes the following additional findings:

14   13.    From October 6, 2014 to January 16, 2015, Mitsubishi delayed providing

15   substantive responses to Interrogatory No 5 despite having in its possession

16   responsive information in a chart called DAP Exhibit B served on the DAPs on

17   September 5, 2014.

18   14.    On December 10, 2014, Mitsubishi served a supplemental response to

19   Interrogatory No 5 referring to an Exhibit B that was "inadvertently not

20   included".

21   15.    Despite being notified of its error on December 10, 2014, Mitsubishi did

22   not produce original Exhibit B until May 26, 2015, after it had been ordered to do

23   so.

24   16.    Mitsubishi has provided no justification for its refusal to produce an

25   exhibit referred to in its December 10, 2014 supplemental response that should

26   have been produced promptly once its error was discovered.

27

17.     Mitsubishi's refusal to produce original Exhibit B required the DPPs to file a motion to compel discovery.

18.     Mitsubishi's course of conduct with respect to Interrogatory No 5 reflects an intentional delay in responding to a valid interrogatory.

Mitsubishi implies that its delayed responses to Interrogatory No 5 were due to its counsel's failure to realize that "the DPPs' Interrogatory No. 5 was broader than the DAP interrogatories," after which Mitsubishi Electric "expanded the listing to a total of 57 meetings and communications in its revised Exhibit B, served on January 16, 2015." *See* Opposition at 8. But the DPPs counter that Mitsubishi knew by November 11, 2014 that the DPPs' Interrogatory No 5 was broader than the DAPs' interrogatory and agreed to serve an amended response by November 18, 2014. *See* Reply at 2, n2; Saveri Dec, Ex 11 (11/14/14 R Saveri letter to M Brody). It appears that Mitsubishi should have expanded its list of contacts from 35 to 57 or more by November 18, 2014 at the latest.

Once again, the DPPs seek an order compelling Mitsubishi to supplement its response to Interrogatory No 5. The DPPs present a number of documents that appear to have been kept in the normal course of business by Mitsubishi and other defendants and testimony that tends to corroborate and does not contradict the occurrence of a number of Mitsubishi competitor contacts. In response, Mitsubishi has refused to supplement its response to Interrogatory No 5 and instead, provides a number of reasons.

First, Mitsubishi asserts that its responses were adequate and made "in good faith" because it could not swear to and include in discovery responses meetings that did not involve "conspiratorial" contacts. *See* 12/23/15 Opposition at 7-8, 10-14. But a fair reading of Interrogatory No 5 demonstrates that it is not limited to "conspiratorial" contacts and Mitsubishi has acknowledged as much. *See* Opposition at 7 ("Interrogatory No. 5 therefore called on Mitsubishi Electric to attempt to list every meeting any of its employees ever had with any other CRT producer about the CRT business, no matter how benign or non-conspiratorial

REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

PAGE 9 OF **40**

1 │ any of the meetings were."). To the extent Mitsubishi implicitly raises overbreadth and undue
2 │ burden objections,[10] the undersigned overrules such objections on the grounds that Mitsubishi
3 │ is the party in possession and control of information regarding its own competitor contacts,
4 │ such information is relevant and given the stakes at issue and the parties' resources, the
5 │ interrogatory request is neither overbroad nor unduly burdensome.

6 │     Next, Mitsubishi claims that it and its agents lacked knowledge of or failed to
7 │ recollect certain meetings so that Mitsubishi "cannot swear under oath that an event happened
8 │ if it does not know that it happened." *See* Opposition at 10-12; Reply at 2-3. The DPPs note
9 │ that Mitsubishi's employee      admitted that he likely attended a
10 │ meeting with    that Mitsubishi refuses to acknowledge. Reply at 3. The DPPs have
11 │ provided evidence of a number of competitor contacts that are uncontradicted by any
12 │ Mitsubishi declaration or testimony from its witnesses denying that these meetings occurred.
13 │ Reply at 4.

14 │     In their motion and reply briefs, the DPPs have presented substantial evidence of
15 │ 11 Mitsubishi contacts with CRT competitors, identified by date, location, document and
16 │ participant names, that Mitsubishi has refused to include in an updated response to
17 │ Interrogatory No 5. *See* Motion at 13-14; Reply at 5-8. These 11 meetings are reflected in
18 │ documents that appear to be business records (January 29, 2000, March 6, 2000, August 2,
19 │ 2001, April and October 2002, August 29, 2000, January 13, 2003 and August 30, 2004). In their
20 │ supplemental briefing, the DPPs have added evidence of 15 more alleged Mitsubishi competitor
21 │ contacts on the following dates: January 12-13, 1999, February 8, 1999, February 22-23, 1999,
22 │ August 12-14, 1999, September 20-22, 1999, January 12, 2002, June 19, 2003, October 13-14,
23 │ 2003, January 2000, January 24, 2001, March 6, 2001, December 26, 2002, March 13, 1998,

26 │ [10] *See* Opposition at 7-8.

27 │

1  May 27, 1998 and July 22, 2003).  DPPs' Suppl Brief at 2-3.  These competitor contacts also

2  appear to be supported by business records (e g, travel requests, meeting notes) reflecting

3  meetings or communications between at least one Mitsubishi employee and a CRT competitor,

4  dates, locations, attendees and subject matter of the meeting.

5

6

7          Mitsubishi's reasons for not including these alleged competitor contacts in its

8  responses to Interrogatory No 5 reflect a misapprehension of discovery obligations and a failure

9  to conduct a reasonably diligent investigation: "the documentary evidence of the meetings or

10 communications came not from Mitsubishi Electric but from another entity, or the Mitsubishi

11 Electric witness who was asked about the meeting or communication had no memory or

12 knowledge that it happened," or "did not clearly remember or know of it."  Opposition at 10-

13 11.  Mitsubishi asserts that it "could never have acknowledged [the 11 examples] under oath,

14 because the evidence, including the deposition testimony of Mitsubishi Electric witnesses, does

15 not support a conclusion that the events happened," citing *Noble v Gonzalez*, 2013 WL 4517774

16 at *18 (ED Cal Aug 26, 2013) (a party "is not required to speculate when responding to

17 interrogatories.").  Opposition at 10.  Mitsubishi contends that "[w]ithout any basis to conclude

18 that any of these meetings happened, Mitsubishi Electric did not violate any discovery

19 obligation by not stating under oath that they occurred."  Opposition at 13.

20          Mitsubishi ignores the appropriate legal standard.  A party must make

21 reasonable efforts to respond to interrogatories; reasonableness is determined by the size and

22 complexity of the case and the responding party's available resources.  *LH v Schwarzenegger*,

23 2007 WL 2781132, at *2 (ED Cal 2007).  The present antitrust litigation is highly complex, the

24 stakes are large and the defendants' resources substantial.  Therefore, the reasonable efforts

25 Mitsubishi must take include conducting a reasonably diligent investigation and search for

26 responsive information, including interviewing witnesses with knowledge.

27

1      Moreover, the *Noble* decision cited by Mitsubishi supports the DPPs' motion.  In
2   *Noble,* the plaintiff filed a motion to compel the defendant who had responded to
3   interrogatories by stating he had no relevant information that he was "aware of" and "does not
4   recall" any responsive information, which the court found "insufficient," stating "[d]iscovery is
5   not limited to that information which one easily recalls from memory.  The burden in
6   responding to discovery is greater than that and Defendant is required to make a reasonable
7   effort to respond" after "making a reasonable search of records to determine if information
8   exists responsive to the interrogatory." *Id* at *14, *16, *18.  The *Noble* court further explained
9   that "a party answering interrogatories cannot limit his answers to matters within his own
10  knowledge and ignore information immediately available to him or under his control" and "[i]f
11  a party cannot furnish details, he should say so under oath, and say why and set forth the
12  efforts used to obtain the information, and cannot plead ignorance to information that is from
13  sources within his control." *Id* at *12.
14      The *Noble* principles are applicable here.  Mitsubishi's justifications for its
15  inadequate responses to Interrogatory No 5 are insubstantial, at best.  Mitsubishi cannot rely
16  upon a few of its employees' failure to recall attendance at meetings as the basis to claim that it
17  has no knowledge or evidence of events ordinarily in its possession in the face of documentary
18  evidence that such meetings occurred.
19      It appears that Mitsubishi is claiming an ignorance of facts based on a failure to
20  conduct a reasonable investigation into information within its possession and control.  For
21  example, regarding a ███████████  meeting between Mitsubishi's ████████
22  ████████████ and ████████████████████, Mitsubishi contends
23  that Mr Nakajima "is retired and not available in this matter" ████████████
24  ████████████████████████████████████
25  ████████████████████████  Since Mr Konishi admitted there was a good
26  chance that he attended this meeting, it likely occurred.  Moreover, since Mr Konishi also
27
28

1

2

3 ████████████████████████████████████████ is apparently available when

4 convenient for Mitsubishi. Mitsubishi should have interviewed Mr Nakajima or searched for

5 other sources of information within its possession and control regarding this meeting.

6     The evidence cited by the DPPs in their briefs regarding the 26 Mitsubishi

7 contacts with CRT competitors appears sufficient to warrant inclusion of such contacts in

8 Mitsubishi's updated response to Interrogatory No 5, absent good reason not to include such

9 information. *See* Motion at 13-14; Reply at 5-8, Suppl Brief at 2-3. Even before being

10 presented with this evidence, much of which came from its own documents, Mitsubishi was

11 under an obligation to investigate. When presented with or aware of evidence in the form of a

12 business record that responsive information exists, a party must conduct a reasonably diligent

13 investigation, including interviewing knowledgeable persons to discover relevant information

14 that corroborates or contradicts these business records. If Mitsubishi cannot produce evidence

15 that these alleged competitor contacts did not occur, *e g*, a declaration from a participant that

16 he did not attend certain meetings, then a reasonable inference is that such contacts did occur

17 and Mitsubishi should supplement its response to Interrogatory No 5 to reflect the contacts

18 identified by the DPPs and any other competitor contacts of which Mitsubishi should be aware

19 after reasonably diligent investigation. Mitsubishi's continuing refusal to supplement its

20 response to Interrogatory No 5 in the face of business record evidence of a competitor contact

21 and its own witnesses' acknowledgement that he attended a particular meeting[11] or that there

22

23

24 _____

25

26 [11] *See, e g*, DPPs' Supp Brief at 2; Rushing Supp Dec, Ex 3 (Hideo Innami Depo Tr 199, 236-239 confirming the occurrence of ████████████████████████ competitor contacts).

27 REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

28

1    was a "good chance" that he attended a meeting,[12] is inexplicable.  Mitsubishi's supplemental

2    brief now appears to admit that two meetings did occur – on

3         Mitsubishi's Supp Brief at 4-5.  But this grudging, limited admission comes very late,

4    indeed.

5         Refusing to provide full responses to Interrogatory No 5 based on the lack of a

6    clear witness recollection despite documentary evidence to the contrary is inconsistent with a

7    party's federal discovery obligations.  See FDIC v Halpern, 271 FRD 191, 193 (D Nev 2010) ("A

8    party cannot limit its interrogatory answers to matters within its own knowledge and ignore

9    information immediately available to it or under its control.").  A claim of factual ignorance

10   cannot rest on turning a blind eye.

11         In its supplemental brief, Mitsubishi raises a new argument that a party need not

12   supplement a discovery response with information that the other party already obtained during

13   the discovery process, citing FRCP 26(e)(1)(A) and a number of cases.  Mitsubishi's Supp Brief at

14   3-4.  Mitsubishi contends that "the DPPs' learning of these contacts during the discovery

15   process negates any argument that Mitsubishi violated its discovery obligations, acted in bad

16   faith, or concealed anything" and that a "party's discovery, 'particularly during a deposition, of

17   information ordinarily subject to supplementation satisfies the Rule 26(e)(1) duty as sufficiently

18   as a formal filing."  Id.  FRCP 26(e)(1) provides:

19
20   > (1) **In General.**  A party who has made a disclosure under Rule 26(a) – or who
     > has responded to an interrogatory, request for production, or request for
     > admission – must supplement or correct its disclosure or response:
21   > (A) in a timely manner if the party learns that in some material respect the
     > disclosure or response is incomplete or incorrect, and if the additional or
22

23

24

25   ---

     [12] Mitsubishi witness Masahiko Konishi testified that he "may have" attended and there was a
26   "good chance" he attended a          meeting with          and with Hitoshi Nakajima.
     Opposition at 11 (citing Brody Dec, Ex 15, Konishi Dep Vol IV, 454-469).

27   REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS,
     SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS
28                                                                    PAGE **14** OF **40**

1          corrective information has not otherwise been made known to the other
           parties during the discovery process or in writing; or
2          (B) as ordered by the court.

3      The cases Mitsubishi cites do not support its failure to supplement its response

4  to Interrogatory No 5. *Nuance Comm'ns Inc v ABBYY Software House*, 2012 WL 2838431 (ND

5  Cal July 10, 2012), *Procongps, Inc v Skypatrol, LLC*, 2013 WL 4551828 (ND Cal August 27, 2013)

6  and *Vieste, LLC v Hill Redwood Development*, 2011 WL 2181200, at *2 (ND Cal, June 3, 2011), all

7  involved late or nondisclosure of trial witnesses required under FRCP 26(a) and an assertion

8  that FRCP 26(e )(1)(A) excused such nondisclosure because the information was disclosed in

9  discovery. In those cases, the adequacy of the discovery sufficient to put the opposing party on

10  notice of the trial witnesses was addressed. But Rule 26(a) disclosures of trial witnesses, *i e*, the

11  name, address and telephone number of each individual and the subject matter of the

12  information that the disclosing party may use to support its claims or defenses, is more limited

13  in scope than the information sought in Interrogatory No 5:   dates and locations of competitor

14  contacts, persons who participated, subject matter discussed, information provided or

15  received, actions taken resulting from the contact and all persons with knowledge.[13]

16  Furthermore, in this case, FRCP 26(e )(1)(A) does not apply because here Mitsubishi has already

17  been ordered to supplement its response to Interrogatory No 5. *See* 4/28/15 R&R Order (Ex B).

18      In the cases cited by Mitsubishi, the party seeking to excuse its failure to comply

19  with discovery obligations bore the burden of demonstrating that the responsive information

20  was revealed in other forms of discovery. Mitsubishi's single attempt to establish that alleged

21

22

23      [13] *Gomez v American Empress Ltd Partnership*, 189 F.3d 473 (9th Cir 1999), an unpublished
decision, affirmed a trial court's denial of a motion *in limine* to exclude evidence on affirmative defenses
24  provided by two trial witnesses since the defenses were disclosed in defendant's answer and disclosures
and supplementation of discovery responses to tell the plaintiff what the witnesses said in their
25  depositions was unnecessary. *Gomez* is similarly distinguishable because the court found that the
information sought in discovery was adequately disclosed in depositions. Here, no such showing has
26  been made.

27

1   competitor contacts that should have been disclosed in response to Interrogatory No 5 became

2   adequately known only through other discovery relates to ████████████████████████

3   ████████████████████████████████████████████████ Mitsubishi asserts that this

4   meeting was "already disclosed on its Revised Exhibit B" at Item 17 and that █████████████

5   ██████████████████████████████████████████████████████████████████████████

6   ████████ Mitsubishi's Supp Brief at 5. But Item 17 of Exhibit B only discloses a range of years

7   "1999-2000," during which ████████████████████████████ met in "Taiwan and Japan."

8   This entry does not adequately disclose ████████████████████

9   ████████████ Apart from this and citation of documents, Mitsubishi makes no meaningful

10  effort to identify how any of these contacts were adequately disclosed in discovery. For all

11  these reasons, Mitsubishi's attempt to rely on FRCP 26(e)(1)(A) fails. Accordingly, Mitsubishi is

12  not entitled to rely upon FRCP 26(e)(1)(A) to justify its failure to supplement its responses to

13  Interrogatory No 5. As the *Nuance* court noted, "[e]ven though FRCP 26 allows parties to

14  identify trial witnesses through the discovery process, the Court notes that this is not good

15  practice and parties should strive to always officially supplement earlier disclosures as soon as it

16  becomes warranted." *Nuance*, 2012 WL 2828431, at n2. Mitsubishi's resort to FRCP 26(e)(1)(A)

17  affords yet another example of Mitsubishi's ongoing attempt to sidestep its discovery

18  obligations.[14]

---

[14] Mitsubishi's argument that it "is not required 'to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made,'" and that it "either did not know about [these contacts] or had insufficient information to swear under oath in an interrogatory answer that they happened" (Mitsubishi's Supp Brief at 3) is similarly unpersuasive. A reasonably diligent effort must be made to procure responsive information, including investigating, seeking out the information from individuals or entities with which the responding party maintains a relationship, *e g*, former employees and related entities and providing fully responsive answers. *See FDIC v Halpern*, 271 FRD 191, 193-194, 198 (D Nev 2010).

REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

PAGE **16** OF **40**

1        In reviewing Mitsubishi's Exhibit B submitted in response to Interrogatory No 5,[15]

2   the undersigned notes that it contains six columns entitled:  "No.," "Date/Location," "Persons

3   Attending/With Knowledge," "Subject Matter," "Agreement Reached," and "Bates Number."

4   The third column, "Persons Attending/With Knowledge" contains mostly last names.

5   Mitsubishi's response to Interrogatory No 5 fails to "[i]dentify all persons with knowledge

6   relating to the meeting or communication" as required by 5(e).  The appropriate response to

7   Interrogatory No 5 would identify the full names and company affiliations of each person who

8   attended or participated in the meeting or communication in a separate column entitled

9   "Persons Attending" and the full names and company affiliations of each person with

10  knowledge of the meeting or communication in a column entitled "With Knowledge."

11  Mitsubishi should also provide the evidence supporting each competitor contact, including

12  documents and names of individuals with knowledge.

13       Mitsubishi is under an obligation to conduct a reasonably diligent investigation

14  by interviewing present and former employees with knowledge and searching its servers, back

15  up storage files and document files for information responsive to Interrogatory No 5.  A careful

16  review of Mitsubishi's briefing suggests that it has not conducted an adequate search for

17  responsive information, but has instead relied on insubstantial arguments to justify its lack of

18  disclosure.  Accordingly, Mitsubishi should conduct a new, reasonably diligent search for

19  responsive information and supplement its response to Interrogatory No 5 accordingly.

20  Mitsubishi's Fourth Supplemental Response stating that "it does not possess information

21  responsive to Interrogatory's request seeking identification of (1) who initiated, called, or

22  organized the meetings identified in the Updated Exhibit B (served January 16, 2015); (2) any

23  information Mitsubishi Electric received from those meetings; or (3) any action taken as a result

24

25

26       [15] Rushing Dec, Ex 21 (Exhibit B to Mitsubishi Electric Corporation's Supplemental Response to DPPs' First Set of Interrogatories, served January 16, 2015).

27  REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

28

1   of those meetings or communications," is inadequate and should be supplemented after a

2   reasonably diligent search for responsive information has been conducted and documented.

3        After refusing to produce its original Exhibit B that had been produced months

4   earlier to the DAPs, requiring the DPPs to file a motion to compel its production, conceding that

5   the DPPs' Interrogatory No 5 was more expansive than the DAPs' similar interrogatory yet

6   failing to supplement its response for several months and asserting insubstantial arguments in

7   support of its continuing refusal to provide a full response despite substantial evidence of such

8   competitor contacts, Mitsubishi must provide a supplemental response to Interrogatory No 5

9   that reflects a proper understanding of the scope of Interrogatory No 5 and a party's discovery

10  obligations under the Federal Rules of Civil Procedure.  For each competitor contact alleged by

11  DPPs, Mitsubishi shall not only investigate and serve a supplemental response, but it shall

12  provide a declaration under oath providing the following information with respect to each

13  competitor contact:  (1) the names of the persons who investigated the alleged competitor

14  contact; (2) the dates of investigation; (3) names of individuals interviewed re the alleged

15  contact and (3) discovery of any confirmatory or contradictory information regarding the

16  alleged contact.

17

18      **B.  Mitsubishi's Response to Interrogatory No 12 (CRT Sales Data)**

19       The DPPs' Interrogatory No 12, served September 4, 2014, seeks monthly sales

20  data for CRT and CRT Products:

21       **Interrogatory No 12.**  Provide Your sales of CRT and/or CRT Products to

22       the United States and globally for each month from January 1, 1991 to

23       the present.  For each month during this period, state the volume of

     sales, the U.S. dollar value of sales, the unit sale price, the per unit cost to

24       produce CRT and/or CRT Products, the per unit cost to distribute CRT

     and/or CRT Products (including overseas freight, tariff, customs, duties,

25       inland freight, storage, insurance, dealer commissions), and the per unit

26       profit earned.

27

28

1  Rushing Dec, Ex 24 (5/26/15 Mitsubishi's Third Supplemental Responses to DPPs'
2  Interrogatories Nos 5, 10-12, at 11).

3          Mitsubishi served its original response on October 6, 2014, and updated with
4  three supplemental responses, served on December 10, 2014, January 16, 2015 and May 26,
5  2015. See Rushing Dec, Ex 24 (Mitsubishi Electric's May 26, 2015 Third Supplemental Response
6  to DPPs' Interrogatories No 5, 10-12). Mitsubishi's first substantive response, served on
7  January 16, 2015, "refer[red] the DPPs to its production of sales data," listed Bates number
8  ranges representing what appears to be 703 pages and cited a footnote of an expert report.
9  Mitsubishi's May 26, 2015 Third Supplemental Response added 245 additional documents,
10  referred to "Exhibit A: Mitsubishi Electric's shipping and export documents," a 156-page list of
11  Bates numbered documents that was previously included in Mitsubishi's January 16, 2015
12  Supplemental Response and concluded that "Mitsubishi Electric has completed its investigation
13  into sales of CRTs and CRT Products. It does not possess any additional information responsive
14  to Interrogatory No 12." *Id* at 13.

15          The undersigned previously issued two orders addressing Mitsubishi's responses
16  to Interrogatory No 12, finding them "deficient" and "sparse." 4/28/15 Order re Direct
17  Purchaser Plaintiffs' Motion to Compel Supplemental Discovery Responses from Mitsubishi, ECF
18  No 3830 ("4/28/15 Order") at 3-5; 6/12/15 Order re DPPs' Motion to Compel Supplemental
19  Discovery Responses from Mitsubishi, ECF No 3873 ("6/12/15 Order") at 7-8. In reviewing
20  Mitsubishi's 1/16/15 supplemental response to Interrogatory No 12, the undersigned ordered
21  that: "all three Mitsubishi Defendants provide thorough and complete responses to
22  Interrogatory No 12, including new information and sales figures as well as original Exhibits A
23  and B in existence on 12/10/14 in verified supplemental responses served no later than 14 days
24  from the date of this order." 4/28/15 Order at 5.

25          Since then, further noteworthy events have developed, as described in the
26  following findings:

27  REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS,
SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS
28                                                       PAGE **19** OF **40**

1          1.      On July 16, 2015, the DPPs deposed Max Wasinger, a former MEVSA

2          employee (Western Regional Vice President at MCEA, a predecessor to MEVSA)

3          who supervised preparation of monthly sales reports. Brody Dec, Ex 7 (7/16/15

4          Wasinger Depo at 64-68). Mr Wasinger testified regarding monthly CRT sales

5          reports, corporate document retention policies requiring preservation of sales

6          reports in a period before Mitsubishi was involved in CRT litigation. Opposition

7          at 6. Mr Wasinger's testimony about the existence of monthly sales reports that

8          MEVSA later located, produced and relied upon was the basis for the MEVSA's

9          February 2016 supplemental response to Interrogatory No 12. Mitsubishi's Supp

10         Brief at 10 n6.

11         2.      On September 24, 2015, MEVSA produced additional responsive

12         documents resulting from its search of an off-site storage facility where 13 boxes

13         of potentially responsive information were found. Opposition at 6, Rushing Dec,

14         Ex 45. MEUS and MEVSA's further search for potentially responsive documents

15         was prompted by the Wasinger testimony. Opposition at 6.

16         3.      On October 14, 2015, Mitsubishi's counsel confirmed via telephone that

17         Mitsubishi had no present intention to update its discovery responses. Rushing

18         Dec, ¶27, Ex 44 (10/5/15 G Rushing letter).

19         4.      After identifying the 13 boxes of responsive paper documents, MEVSA

20         decided to search additional electronic materials, discovered electronic data

21         sources (a file server and selected imaged hard drives) and in early December

22         2015, coordinated with DPPs' counsel on search terms, resulting in retrieval of

23         an initial set of 18,000 documents. Opposition at 6, Brody Dec, Ex 9 (12/4/15 D

24         Millen email to J Hoffman). MEVSA produced documents on a rolling basis on

25         September 24, 2015, December 23, 2015 and January 14 and 30, 2016.

26         Mitsubishi's Supp Brief at 9.

27         REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS,
           SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

28                                                                          PAGE 20 OF 40

5.      On February 18, 2016, MEVSA served a supplemental response to

Interrogatory No 12 that was "based on documents MEVSA produced on a rolling

basis on September 24, 2015, December 23, 2015, and January 14 and 30 of

2016." Mitsubishi's Supp Brief at 9. MEVSA's 2/18/16 supplemental response

states:

> MEVSA notes that for a portion of the period referenced in the
> Interrogatory, Mitsubishi Consumer Electronics America, Inc., known as
> "MCEA," sold CRT televisions in the United States. MCEA no longer
> exists, as Mitsubishi Electric Corporation and its subsidiaries (MEVSA and
> Mitsubishi Electric US, Inc.) have not participated in the CRT business for
> many years. MEVSA is a successor to MCEA. MEVSA responds that
> documents from MEVSA's document production contain the following
> monthly sales figures
>
> [Chart entitled Monthly CRT Television Sales
>
> MEVSA further states that it has been unable to verify the accuracy of
> these CRT television sales figures as the business has long been closed.
> Rushing Supp Dec, Ex 1 (2/18/16 MEVSA's Third Supplemental Response
> to DPP's First Set of Interrogatories at 5-7).

6.      On July 20, 2016, Mitsubishi confirmed August 8, 2016 for the second

deposition of Max Wasinger, requested by the DPPs "because certain sales

documents were produced to the DPPs after his [July 16, 2015] deposition." *See*

Fuentes Supp Dec, Ex 8 (7/20/16 G Fuentes Letter to G Rushing).

In this motion, the DPPs contend that Mitsubishi's repeated prior

representations that it searched all of its records, most sales records have been lost and what

remains is not sufficient to provide meaningful responses to Interrogatory No 12, have been

shown to be false in light of subsequent discovery. Motion at 14. In support, the DPPs cite the

following:

(1) Max Wasinger, former vice president of sales, testified that he was never asked by Mitsubishi or its counsel to search for documents in his personal email account nor to preserve documents. *See* Motion at 14-15, Rushing Dec, Ex 35 (7/16/15 Wasinger Depo Tr at 25-26, 49, 66-67).

(2) Mitsubishi failed to search the hard drive belonging to Max Wasinger before his deposition. Motion at 14.

(3) Kiyoshi Furukawa, former VP of OEM sales for NEC-Mitsubishi Visual Systems America, Inc, testified that he was not asked to collect documents responsive to discovery in this litigation. *See* Motion at 14-15; Rushing Dec, Ex 34 (7/14/15 Furukawa Deposition Tr at 29-31, 37-38, 40-41, 73:21-74:25).

(4) Koji Murata, another Mitsubishi witness, testified that he was never asked to provide information relevant to this litigation and was never asked to search his personal email account used for Mitsubishi business. *See* Motion at 15 n12; Rushing Dec, Ex 22 (12/9/14 Murata Depo Tr at 167-168, 207-208).

(5) In September 2015, MEVSA produced documents containing sales records showing ███████████████████████ sales in the United States during the class period. *See* Motion at 11, 14-15, Rushing Dec, Exs 41-43.

Mitsubishi responds that "The Mitsubishi Electric Defendants Diligently Collected and Produced the Responsive Documents Known to Them and in Their Possession,"[16] and submits the declaration of Masaya Nakata, stating that Mitsubishi searched its former CRT manufacturing facility in Kyoto and its Tokyo headquarters, where hard copies of documents were discovered and produced, but that no electronic documents exist in Japan. 12/24/15 Nakata Dec, ¶¶3-4. The single-page Nakata Declaration fails to address the extent to which Mitsubishi's Kyoto and Tokyo offices were searched, whether there are any other locations in Japan or worldwide where responsive information may exist and the bases for his assertion that no responsive electronic documents exist in Japan. The undersigned finds that Mitsubishi's

---

[16] Opposition at 5.

REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

PAGE **22** OF **40**

1 Nakata Declaration fails to address adequately Mitsubishi's efforts to identify responsive
2 information in its possession, custody and control.

3       Mitsubishi asserts that MEVSA "learned of additional potentially responsive
4 documents after the deposition in July 2015 of a former MEVSA employee named Max
5 Wasinger." Opposition at 5. Mitsubishi claims that "[t]he Wasinger testimony prompted MEUS
6 and MEVSA to undertake, on their own and without any request by the DPPs or other Plaintiffs,
7 a further search for potentially responsive documents," and that "MEVSA searched an off-site
8 storage facility, and as a result of that search, MEVSA located 13 boxes that could contain
9 responsive information; MEVSA eventually identified and produced additional responsive
10 documents on September 24, 2015 from these materials." *Id* at 6. MEVSA then searched
11 additional electronic materials, discovered a server and hard drives containing responsive
12 documents, included the DPPs counsel in searching these electronic data sources and produced
13 documents on a rolling basis from September 2015 through January 2016. *Id;* Mitsubishi's Supp
14 Brief at 9.

15       Mr Wasinger departed the company "at the end of 2013,"[17] which was more
16 than a year after Mitsubishi received communications from the DPPs and the Indirect Purchaser
17 Plaintiffs in November 2011 that led it to institute "a series of litigation holds by the Mitsubishi
18 Electric Defendants."[18] Since both Mr Wasinger and Mr Furukawa were identified by Mitsubishi
19 as having CRT pricing authority,[19] Mitsubishi's failure to search their files for responsive
20 documents until after their depositions is at best, baffling.

21
22
23
24
       [17] *See* Opposition at 5-6.
25       [18] *Id* at 4.
26       [19] Rushing Dec, Ex 21 (1/16/15 Mitsubishi's Supplemental Response to DPPs' First Set of Interrogatories at 4-5).
27 REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS,
SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS
28                                                    PAGE **23** OF **40**

1    Mitsubishi's statement that it learned of additional potentially responsive

2    documents after the Wasinger deposition[20] suggests that Mitsubishi either failed to interview

3    Mr Wasinger in preparing its response to Interrogatory No 12 when it was due in October 2014

4    or that any document collection interview of Mr Wasinger was inadequate.  In either case,

5    these facts reflect poorly on the adequacy, reasonableness and diligence of Mitsubishi's search

6    for information responsive to Interrogatory No 12.

7    Based on these facts and the history of discovery disputes between the parties,

8    the undersigned is not persuaded by Mitsubishi's claim to have conducted an adequate search

9    for responsive documents and information.  Mitsubishi's identification of two high-level

10   executives with CRT sales and pricing authority and its failure to search those witnesses'

11   electronic and paper files for documents responsive to Interrogatory No 12, pending since

12   September 2014, until after their July 2015 depositions, alone illustrates Mitsubishi's

13   disquieting attitude toward its federal discovery obligations in this case.  But there is more.

14   After its May 2015 supplemental response that it "has completed its

15   investigation into sales of CRTs and CRT Products" and "does not possess any additional

16   information responsive to Interrogatory No. 12,"[21] Mitsubishi discovered 13 boxes of MEVSA

17   sales records in off-site storage.  See Rushing Dec, Exs 41-43.  And on November 3, 2015,

18   Mitsubishi informed the DPPs that it was reviewing "gigabytes" of records on a MEVSA

19   fileserver and certain MEVSA hard drives used by employees including Max Wasinger ▮

20   ▮ that had not previously been searched.  See Motion at 11, Rushing Dec, Ex 45 (11/4-

21   5/15 emails between G Rushing and G Fuentes).  Despite discovering these new sales data, in

22   December 2015 through January 2016, Mitsubishi continued its refusal to supplement its

23

24

25   [20] Opposition at 5.

26   [21] See Rushing Dec, Exs 25, 26 and 27 (MEUS, MEVSA and Mitsubishi Electric's 5/26/15
     Supplemental Responses to Interrogatory No 12).

27   REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS,
     SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS
28

response to Interrogatory No 12 to reflect the new information, asserting that it has "not been able to do more than guess or estimate as to its past CRT or CRT Product sales totals, absent expert testimony and analysis, which has not yet commenced in this action." *See* 12/23/15 Opposition at 15-16.

In an about-turn, in February 2016, Mitsubishi served MEVSA's supplemental response to Interrogatory No 12, providing a narrative description of ███████████ ████████████████████████████████████████████████████ Rushing Supp Dec, Ex 1 (2/18/16 MEVSA's Third Supplemental Response to DPP's First Set of Interrogatories at 5-7). Yet again, Mitsubishi took another untenable position – that it could not "verify the accuracy" of its own business records regarding relevant CRT sales. As the DPPs note, Max Wasinger is copied on these documents and should have been available to assist Mitsubishi in verifying their accuracy. *See* DPPs' Suppl Brief at 4, Rushing Dec, Exs 41-43. Mitsubishi provides no plausible justification for its claimed inability to verify its own business records.

The undersigned finds Mitsubishi's February 2016 MEVSA supplemental response to Interrogatory No 12 unresponsive for at least three reasons: (1) Mitsubishi's claimed inability to verify the accuracy of data from its own business records despite having access to individuals who can verify their accuracy (Messrs Wasinger and Furukawa); (2) the inadequacy of Mitsubishi's search and investigation for responsive information and (3) its failure to include in its chart monthly sales data for CRTs and CRT Products based on documents within its possession for a broader range of years within the relevant period, *e g*, the period April to June 2000, as reflected in a document produced by MEVSA and MEUS.[22]

---

[22] *See* DPPs' Supp Brief at 5, Rushing Supp Dec, ███████████████████████████ █████████████████████████████████ According to DPPs, this document indicates that Mitsubishi may have many similar documents that it has failed to produce to date. Mitsubishi responds that it produced these monitor sales data and more in 2014. Mitsubishi's Supp Brief at 11.

REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

PAGE **25** OF **40**

1    A party has an affirmative duty to provide all responsive information reasonably

2   available to it, within its possession, custody and control.  *Bryant v Armstrong*, 285 FRD 596,

3   603 (SD Cal 2012) (motion to compel interrogatory responses).  Rule 33 requires a party to

4   respond to each interrogatory "separately and fully in writing under oath."  Rule 33(b)(3).  As

5   the *Bryant* court explained, a party unable to respond to an interrogatory must state so under

6   oath and describe steps taken to obtain information to answer the interrogatories.  285 FRD at

7   612.  In the context of a motion to compel discovery, an "evasive or incomplete" response

8   "must be treated as a failure to disclose, answer, or respond."  Rule 37(a)(4).  The undersigned

9   finds Mitsubishi's supplemental response to Interrogatory No 12 evasive and incomplete.  Thus,

10  before Mitsubishi asserts it cannot verify the accuracy of its own business records, it must first

11  fulfill its duty to provide all responsive information reasonably available to it, *e g*, by making

12  reasonable efforts to determine from available witnesses whether there is any reason to doubt

13  the accuracy of its own records.  If Mitsubishi still cannot verify the accuracy of its records, it

14  must state so under oath and describe the steps taken to obtain that information.

15    For the same reasons, Mitsubishi's claims to be unable to respond fully to

16  Interrogatory No 12 are unpersuasive.  Mitsubishi is under an affirmative duty to locate and

17  produce information responsive to Interrogatory No 12 for the relevant period.  Since

18  Mitsubishi's earlier, repeated assertions regarding the adequacy of its searches have now been

19  proven unreliable, it must remedy the situation by conducting a reasonably diligent search.

20  Failing to search a key witness' files before his deposition alone may be understood as an

21  oversight, but failing to search three key witnesses' files before their depositions, later

22  discovery of responsive paper files and gigabytes of potentially responsive electronically stored

23  information, combined with Mitsubishi's prior representations that the search was complete

24

25

26  Mitsubishi should supplement its response to Interrogatory No 12 with a chart conveying all the
    responsive information available to it, not just the limited set of years in the current chart.

27  REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS,
    SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

28

1   and all sites have been searched establish that Mitsubishi's prior searches were inadequate.
2   The fact that Mitsubishi was able to locate responsive documents when its own witnesses
3   testified to their existence suggests that additional responsive documents in Mitsubishi's
4   possession, custody and control remain to be located.

5   Accordingly, the DPPs' motion to compel Mitsubishi to supplement its response
6   to Interrogatory No 12 is granted. In light of Mitsubishi's failure to conduct a reasonably
7   diligent search for responsive information, each Mitsubishi defendant should investigate all
8   locations worldwide where responsive documents did and may still be stored, including servers,
9   hard drives, paper files and other document storage repositories, including off-site locations
10  where backup electronic or other files are archived, and provide a declaration describing which
11  were searched, when and by whom and a list of those that were not searched. Mitsubishi's
12  search should focus on documents and things that would provide information responsive to any
13  DPP discovery request, including Interrogatories 5, 12 and 16. Mitsubishi must submit verified
14  supplemental responses providing all responsive information reasonably available to it,
15  including the documents cited by the DPPs.

16

17  **C. Mitsubishi's Response to Interrogatory No 16 (Document Loss and Destruction)**

18  The DPPs' Interrogatory No 16 requests a detailed explanation of the contents of
19  documents or information that were destroyed, discarded or otherwise lost, persons who had
20  any role or responsibility in the loss and the circumstances of the loss:

21

22  **Interrogatory No 16.** State whether any documents or information
        responsive to this set of interrogatories were destroyed, discarded,
23      erased, deleted, purged, or otherwise lost. If Your answer is in any way in
        the affirmative: (a) describe in detail the contents of each such
24      document or information and the date it was destroyed, discarded,
        erased, deleted, purged or lost; (b) identify each person who had any role
25      or responsibility in destroying, discarding, erasing, purging, deleting or
26      losing of each such document or information; and (c) describe in detail

27  REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS,
    SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS
28                                                                    PAGE **27** OF **40**

the circumstances under which each such document or information was destroyed, discarded, erased, deleted, purged, or lost.

Mitsubishi's most recent response to Interrogatory No 16 provides the following:

Mitsubishi Electric states that documents or information responsive to this Interrogatory *may have been* destroyed, discarded, erased, deleted, purged, or otherwise lost in the ordinary course of business under the following circumstances:

- In 1998, Mitsubishi Electric exited the CPT business. As a result, any responsive documents related to Mitsubishi Electric's CPT business were *likely* discarded in the ordinary course of business, before Mitsubishi Electric issued its Litigation Hold on November 9, 2011.

- On or about 2000, Mitsubishi Electric transferred its CRT monitor business, along with all relevant documents, to a joint venture called NEC-Mitsubishi Electronics Display of America, Inc. ("NMV"). In 2005, Mitsubishi Electric transferred its ownership interest in NMV to NEC Corporation.

- Other responsive documents or information were discarded in the ordinary course of business, before Mitsubishi Electric issued its Litigation Hold on November 9, 2011. Brody Dec, Ex 2 (7/28/15 Mitsubishi Electric's Fourth Supplemental Response at 5-6, emphasis added).

According to Mitsubishi, "it also discarded many documents in the ordinary course of closing the business, and it has no record identifying those documents or the documents which had been transferred to the NMV joint venture, never to be returned." Opposition at 4. Regarding Interrogatory No 16, Mitsubishi unabashedly asserts that "the DPPs never advance any reason to suggest that any of the Mitsubishi Electric Defendants would actually know what documents were discarded 10 years ago when the CRT business was shut down." Opposition at 16.

REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

PAGE **28** OF **40**

Mitsubishi contends that "[w]ithout knowing the facts about what documents were discarded, the Mitsubishi Electric Defendants have no basis upon which to supplement their answer to Interrogatory No. 16 as the DPPs are demanding, and there is no basis to compel them to provide information they do not possess. *See Noble*, 2013 WL 4517774, at *12 (E.D. Cal. Aug. 26, 2013) ("[W]here the answer states that no record exists, the court cannot compel the impossible")." Opposition at 16-17. This statement appears to admit that Mitsubishi has failed to investigate and conduct interviews regarding what categories of responsive documents existed, where they were stored, whether they were discarded, by whom, how and when. Mitsubishi cannot rely on its failure to investigate the "facts about what documents were discarded" as a basis for refusing to respond to Interrogatory No 16.

It is Mitsubishi's responsibility – not the DPPs -- to conduct an investigation into which responsive documents exist, which were discarded or lost, the individuals involved and the circumstances. A reasonably diligent search should uncover such facts. That Mitsubishi claims not to know those facts speaks volumes about the inadequacy of its discovery searches to date. It is inadequate to state that "any responsive documents related to Mitsubishi Electric's CPT business were *likely* discarded in the ordinary course of business, before Mitsubishi Electric issued its Litigation Hold on November 9, 2011." Mitsubishi Electric's Fourth Supplemental Response to DPPs' Interrogatories, at 6 (emphasis added). The existence, location and destruction or loss of corporate documents are facts uniquely within the possession of the Mitsubishi defendants. A discovery response that simply asserts that "responsive documents" "were likely discarded" coupled with other salient facts, such as a party's failure to search its witnesses' records and files for responsive documents before their depositions, bespeaks an intentional disregard of a party's discovery obligations under the Federal Rules of Civil Procedure. "A party answering interrogatories cannot limit his answers to matters within his own knowledge and ignore information immediately available to him or under his control." *Noble*, 2013 WD 451774, at *12.

REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

PAGE **29** OF **40**

1    Mitsubishi undoubtedly has access to information about what CRT and CRT

2  Product sales data it once possessed, how, when and by whom any such documents were

3  destroyed, discarded or lost, and those individuals at each Mitsubishi location who would be

4  knowledgeable about these events.[23]  In reviewing Mitsubishi's supplemental response to

5  Interrogatory No 16, the undersigned finds it unresponsive.  To the extent that Mitsubishi relies

6  heavily upon the passage of time, exiting the CRT business and loss of documents, it should be

7  required to provide a detailed response to Interrogatory No 16, by category of responsive

8  documents, describing the documents and records lost or destroyed and the nature of the

9  information those documents or records would have contained.  Moreover, the fact that

10  Mitsubishi transferred ownership of its CRT business in the "winter of 2005" does not establish

11  that it then destroyed responsive documents.  As noted, Mitsubishi's late discovery of

12  "gigabytes" of potentially responsive data from unsearched servers and thousands of

13  responsive sales documents from MEVSA belie the adequacy of its prior discovery efforts.

14  Mitsubishi should be required to establish the underlying facts regarding when such documents

15  were destroyed or transferred, the individuals at each of the Mitsubishi defendants who were

16  knowledgeable and involved and the relevant circumstances.

17    No later than September 30, 2016, Mitsubishi shall serve a full and complete

18  response to Interrogatory No 16, including a description of:  (1) the types of responsive records

19  (electronic and hard copy) re CRTs and CRT Products that it maintained during the relevant

20  period; (2) all locations worldwide (on-site or off-site) where such documents were kept, (3)

21  what department(s) and individuals were responsible for them or had access to them during

---

[23]

*See* DPPs' Supp Brief at 5-6.

REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

the relevant period; (4) what happened to such records as computer systems evolved; (5) when and how such records were preserved, backed up or discarded; and (6) individuals with knowledge of such electronic records.

After service of Mitsubishi's supplemental response to Interrogatory No 16, the DPPs may notice one or more Rule 30(b)(6) depositions to address the topics raised in Interrogatory No 16.

## II.      The DPPs' Motion for Evidentiary Sanctions

Pursuant to Federal Rule of Civil Procedure 37(b), the DPPs move for evidentiary sanctions, specifically, that Samsung SDI interrogatory responses identifying Mitsubishi as a co-conspirator[24] and "all documents evidencing Mitsubishi's contacts with competitors," "be deemed admissible at trial." Motion at 20.

Rule 37(b) authorizes sanctions against a party that fails to obey an order to provide or permit discovery under Rule 37(a), including:

(i)      directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)      prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence. Fed R Civ P 37(b)(2)(A).

Instead of or in addition to such sanctions, the court must order the disobedient party, its attorney or both to pay reasonable expenses, including attorney's fees, caused by the failure to follow the court order unless substantially justified or unjust. Fed R Civ P 37(b)(2)(C).

---

[24] *See* Motion at 17, citing MELCO's Motion for Summary Judgment (ECF No 3037 at 4-8) and MELCO's Motion *in Limine* No 1 (ECF No 3601).

REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

1    Courts consider the following factors in deciding a motion for sanctions under

2  Rule 37(b): "(1) the public's interest in expeditious resolution of litigation; (2) the court's need

3  to manage its docket; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public

4  policy favoring disposition of cases on their merits; and (5) the availability of less drastic

5  sanctions." *Tacori Enterprises v Beverlly Jewellery Co Ltd*, 253 FRD 577, 582 (CD Cal 2008); *see*

6  *also Hyde & Drath v Baker*, 24 F3d 1162, 1166 (9th Cir 1994) (requiring consideration before

7  issuing the sanction of case dismissal).  In the Ninth Circuit, if a Rule 37 sanction amounts to

8  dismissal of a claim, a district court must find the discovery violation involved "willfulness, bad

9  faith, or fault" of the disobedient party.  *R&R Sails, Inc v Insurance Co of Penn*, 673 F3d 1240,

10  1247 (9th Cir 2012); *United States v Kahaluu Constr*, 857 F2d 600, 603 (9th Cir 1988); *LH v*

11  *Schwarzenegger*, 2007 WL 2781132, at *8 (ED Cal 2007).  And in deciding a motion for

12  sanctions, a court may consider "all of a party's discovery misconduct."  *Payne v Exxon Corp*,

13  121 F3d 503 (9th Cir 1997).

14    The DPPs base their motion for sanctions on the following:  (1) Mitsubishi's

15  violation of two court orders (4/28/15 Order and 6/12/15 order) requiring all three Mitsubishi

16  defendants to provide thorough and complete responses to Interrogatory No 12, including new

17  information and sales figures and (2) Mitsubishi's interference with the DPPs' examination of

18  Mitsubishi's witness (Koji Murata), failure to search his email and improperly withholding

19  documents used to refresh his recollection.  Motion at 19.

20    Mitsubishi responds that the sanction of admitting into evidence the Samsung

21  SDI discovery answer implicating Mitsubishi would be potentially "case-dispositive,"

22  "tantamount to dismissal," which would be unjust since there is no bad faith and less drastic

23  sanctions are available, such as producing foreign-based witnesses for successive deposition

24  sessions.  Opposition at 18-20.  Mitsubishi further contends that the sanction sought does not

25  bear a nexus to the misconduct sought to be penalized.  In particular, Mitsubishi argues that

26  their responses to sales and document destruction interrogatories and the Murata deposition

27  REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS,
SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

28                                                                                      PAGE **32** OF **40**

issues do not have an adequate nexus or connection to the sanction of admitting the Samsung SDI discovery answer.  Opposition at 22-23.  Further, Mitsubishi asserts that the DPPs have had ample discovery and have not established prejudice.  Opposition at 20-21.

Before addressing the parties' arguments, the undersigned provides the following findings to assist the court regarding the DPPs' motion for evidentiary sanctions.

1.  Before filing this motion, the DPPs conferred and attempted to confer in good faith with Mitsubishi regarding its responses to Interrogatories Nos 5, 12 and 16.

2.  Mitsubishi's abrupt interruption of the deposition of Koji Murata during a line of questions on a document and refusal to allow Mr Murata to answer questions regarding his conversation with counsel during the break (as described in more detail in the 5/29/15 Order re DPPs' Motion to Compel Mitsubishi to Provide Testimony and Other Evidence from Koji Murata, ECF No 3859 ("5/29/15 Order")), led to the DPPs' motion to compel, which was granted.  *See* 5/29/15 Order at 9 ("events evidenced in the deposition transcript suggest a degree of attorney intervention and witness guidance inconsistent with appropriate norms").

3.  Mitsubishi's refusal to produce documents used to refresh witness Koji Murata's recollection before his deposition, violated the general rule in the Northern District of California that Federal Rule of Evidence 612 requires disclosure of documents that were used to and do refresh a witness' recollection before testifying, and resulted in an order granting the DPPs' motion to compel production of such documents and further deposition of Mr Murata.  *See* 5/29/15 Order at 7-10; *The United States v 22.8 Acres of Land*, 107 FRD 20 (ND Cal 1985).

REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

PAGE **33** OF **40**

4.      Mitsubishi repeatedly delayed serving full responses to Interrogatory No 5 (Mitsubishi's competitor contacts) despite possessing responsive information (DAP Exhibit B, served in September 2014).  These delays in producing Exhibit B led to repeat depositions of at least two Mitsubishi witnesses – Koji Murata and Masahiko Konishi.  *See* 4/28/15 Order at 2-4.

5.      Only after the 4/28/15 Order compelled Mitsubishi to produce original Exhibit B, did Mitsubishi produce it on May 26, 2015.

6.      Mitsubishi's unjustified and unexplained failure to produce discovery within its possession caused unnecessary motion practice and a discovery order that could have been avoided.  *See* 4/28/15 Order at 4, 7.

7.      Mitsubishi violated the court's 4/28/15 Order requiring "all three Mitsubishi Defendants [to] provide thorough and complete responses to Interrogatory No 12, including new information and sales figures" "in verified supplemental responses served no later than 14 days from the date of this order."  4/28/15 Order at 5.  At that point, all three Mitsubishi defendants were on notice that their responses to Interrogatory No 12 were "deficient," *i e*, non-responsive and each had a duty to conduct a reasonably diligent inquiry and investigation to provide full and complete responses to Interrogatory No 12.

8.      Mitsubishi's ongoing failure to supplement its "sparse" response to Interrogatory No 12, by failing to conduct adequate searches of key witnesses' files and failing to interview such witnesses about responsive documents, notwithstanding discovery of substantial relevant evidence, evinces Mitsubishi's intentional disregard of its discovery responsibilities, in violation of the 4/28/15 Order.

9.      MEVSA's 2/18/16 supplemental response to Interrogatory No 12 is evasive, incomplete and therefore nonresponsive.  MEVSA's response, stating

that "it has been unable to verify the accuracy of these CRT television sales figures as the business has long been closed" demonstrates bad faith because those sales figures are from Mitsubishi's own business records that could have been verified by knowledgeable and available witnesses, *e g*, Max Wasinger.  By this statement and its failure to conduct a reasonable investigation, MEVSA remains in violation of the 4/28/15 Order requiring a full and complete response to Interrogatory No 12.

10.     Mitsubishi's failure to provide full and complete response to Interrogatory No 16 violated its duties to conduct a reasonably diligent investigation and to supplement responses.  The undersigned finds Mitsubishi's last supplemental response to Interrogatory No 16 to be incomplete, evasive and nonresponsive.

Mitsubishi cites *R&R Sails, Inc v Insurance Co of Penn*, 673 F3d 1240 (9th Cir 2012) in support of its argument that admitting the Samsung SDI interrogatory answer at trial would be "case dispositive" and hence require a finding of "willfulness, fault or bad faith."  But *R&R Sails* is distinguishable because the sanction imposed there was evidence preclusion which amounted to dismissal of a claim.  Evidence preclusion is the opposite of what the DPPs seek here.  If the sanction of admitting evidence at trial were granted, Mitsubishi would still be able to attack the reliability and weight of the Samsung SDI interrogatory responses and other documents at trial.  Thus, the sanctions sought here are not "case-dispositive" nor "tantamount to dismissal" and a finding of "willfulness, fault or bad faith" should not be required to grant these sanctions.  Nevertheless, "willfulness" is "disobedient conduct not shown to be outside

1    the control" of the party.[25]  The undersigned finds that Mitsubishi's discovery violations here

2    were intentional and within its control and hence, willful.

3            Mitsubishi argues that less drastic sanctions, such as repeat depositions, are

4    available.  This argument is unpersuasive because:  (1) allowing repeat depositions as the only

5    sanction would merely reward Mitsubishi for its discovery misconduct; and (2) admitting

6    evidence for purposes of trial is already a less drastic sanction than others available under Rule

7    37, such as rendering a default judgment or striking pleadings.  The undersigned finds that the

8    sanctions recommended here are appropriately tailored to the discovery misconduct and the

9    prejudice caused.  *See General Atomic Co v Exxon Nuclear Co, Inc,* 90 FRD 290, 308-309 (SD Cal

10   1981) (granting Rule 37 sanction of deeming third-party documents "admissible in evidence as

11   a partial remedy to overcome the prejudice caused by the absence of the withheld [ ]

12   documents.").

13           Mitsubishi's next contention is that the evidentiary sanctions lack a nexus to the

14   discovery violations alleged and that Rule 37(b)(2) sanctions must be specifically related to the

15   particular "claim" at issue in the discovery order.  Opposition at 22-23.  Mitsubishi cites *Halaco*

16   *Engg Co v Costle,* 843 F2d 376, 381-82 (9th Cir 1988); *Fjelstad,* 762 F2d at 1342-43; and *Adriana*

17   *Intern Corp v Thoeren*, 913 F2d 1406, 1412 n6 (9th Cir 1990) (failure to produce documents in

18   discovery found related to court's sanction of striking party's answer and entry of default).  All

19   three cases involve due process challenges to dismissal or default sanctions, which are the

20   harshest Rule 37 sanctions and on that ground are distinguishable.  Moreover, the claim at

21   issue here involves violations of antitrust laws and the withheld discovery of competitor

22   contacts, sales and destruction of evidence all relate to the claim of an antitrust violation.

23   Hence the undersigned concludes that sanctions of admitting the SDI interrogatory response

24

25

26           [25] *Fjelstad v American Honda Motor Co, Inc*, 762 F2d 1334, 1341 (9th Cir 1985).

27.
     REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS,
28   SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

1 | and the various business records would be specifically related to the claim at issue – an
2 | antitrust violation.

3 |       With respect to Mitsubishi's assertion that the DPPs have suffered no prejudice,
4 | the undersigned finds that Mitsubishi's ongoing discovery misconduct has caused substantial
5 | prejudice to the DPPs, causing them to take depositions of key Mitsubishi witnesses without
6 | the benefit of relevant documents from their files, to take repeat depositions of several key
7 | Mitsubishi witnesses, to delay the advancement of their case and to spend valuable time and
8 | resources to enforce discovery orders and obtain responses to valid discovery requests. Even
9 | today, the DPPs have not received Mitsubishi's full and complete responses to Interrogatories
10 | Nos 5, 12 and 16, which has undoubtedly impaired the DPPs' ability to prepare their case and
11 | could, if left unaddressed, interfere with the rightful decision of the case.

12 |       Mitsubishi argues that it has shown that its discovery conduct is substantially
13 | justified for numerous reasons. The undersigned rejects Mitsubishi's justifications as further
14 | insubstantial and meritless argument in support of an ongoing strategy to delay and frustrate
15 | the DPPs' discovery efforts. Mitsubishi's discovery lapses bespeak an intentional disregard of
16 | discovery obligations and ongoing attempts to block reasonable discovery. Mitsubishi's
17 | conduct runs counter to the public interest in expeditious resolution of litigation and a court's
18 | need to manage its docket.

19 |       Mitsubishi has offered no reasonable explanation, much less a cogent one, for
20 | the delay in producing the now notorious original Exhibit B, for violating the orders regarding
21 | Interrogatory No 12, for interrupting and interfering with its witness' deposition, for not
22 | searching its key witnesses' files before their depositions, for asserting that its discovery was
23 | complete when it had not searched "gigabytes" of potentially responsive information in a
24 | MEVSA server and key witnesses' hard drives or emails and for repeatedly failing to respond
25 | fully and completely to interrogatories despite the belated discovery of a large number of
26 | previously unproduced documents. The undersigned understands that in an organization as

27 | REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS,
SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS
28 |

1   large and complex as is Mitsubishi, with possibly widely distributed recordkeeping facilities and
2   practices in numerous countries, a failure to uncover relevant litigation materials can happen
3   innocently.  But Mitsubishi has not favored the DPPs or the undersigned with any convincing
4   explanation for its discovery lapses.

5           The undersigned is persuaded by the facts establishing Mitsubishi's repeated
6   discovery violations that, as the DPPs assert, a sanction beyond "an order simply requiring
7   Mitsubishi to provide the discovery it withheld is necessary to ensure compliance with its
8   discovery obligations."  Reply at 13.  The evidentiary sanctions the DPPs seek are consistent
9   with the public policy favoring disposition of cases on their merits and the availability of less
10  drastic sanctions.

11          The undersigned nonetheless defers to the trial court, who is in the best position
12  to decide whether to admit or exclude the Samsung SDI interrogatory responses and other
13  documents evidencing Mitsubishi's competitor contacts for purposes of summary judgment or
14  trial.[26]  At summary judgment or trial, the trial court will have a much clearer picture of the
15  importance of the Samsung SDI interrogatory responses and other documents and be able to
16  weigh their importance and relevance to the whole body of evidence in the case.

17          But on this record, the undersigned finds a substantial basis to recommend[27]
18  that the court grant the DPPs' motion for evidentiary sanctions in full and to allow the DPPs to
19  submit to the court a list of the documents (identified by Bates or exhibit numbers) to be
20  deemed admissible at trial.  In the undersigned's view, Mitsubishi's discovery misconduct

21

22

23       [26] *See e g*, Mitsubishi's motion *in limine* regarding the Samsung SDI interrogatory responses (ECF
    No 3601).
24       [27] The undersigned serves by court-ordered appointment as special master over discovery
    matters in this MDL.  *See* Order Appointing Special Master, ECF No 2272.  While the order and Rule 53 of
25  the Federal Rules of Civil Procedure grant the special master authority to order "any noncontempt
    sanction provided by Rule 37 or 45," the undersigned defers to the court by recommending the
26  evidentiary sanctions here in light of their impact on the court's trial of the case.

27  REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS,
    SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS
28                                                                                    PAGE **38** OF **40**

affords a basis for admission of these materials in addition to the evidentiary value they may have in the case.

Furthermore, it appears that at a minimum, monetary sanctions under Rule 37(a)(5)(A) and 37(b)(2)(C), are appropriate given Mitsubishi's ongoing withholding of discovery and failures to comply with its discovery obligations, resulting in numerous court orders (*e g,* ECF Nos 3830, 3859, 3873 and this order) as well as the unnecessary expense and delays for the DPPs. The DPPs are afforded leave to submit a motion for monetary sanctions for expenses incurred by reason of Mitsubishi's repeated discovery violations.

Finally, in absence of full, complete and apparently good faith responses to the discovery ordered herein, the undersigned will consider measures to get to the bottom of the reasons Mitsubishi has so far fallen short of its discovery responsibilities. Such measures might include appointing a neutral forensic accountant to examine Mitsubishi's recordkeeping practices to determine whether those practices are such that Mitsubishi cannot provide reasonably adequate assurance to the court that it has been able to comply with discovery requests in this litigation. Mitsubishi and its counsel are warned that any further discovery lapses simply cannot be tolerated. Mitsubishi remains at risk of further sanctions being imposed pursuant to Rule 37 for its discovery lapses to date. Mitsubishi and its counsel should be highly incentivized to cooperate with the DPPs' discovery requests and to respond fully and completely after conducting a reasonably diligent and irreproachable search.

**CONCLUSION**

The DPPs' motion to compel Mitsubishi to serve supplemental responses to Interrogatories Nos 5, 12 and 16 is **GRANTED**. No later than September 30, 2016 or a date agreed upon by the parties, the Mitsubishi defendants shall serve supplemental responses to Interrogatories Nos 5, 12 and 16 with fully responsive and up-to-date information that reflects their state of discovery after having conducted reasonably diligent searches and investigations

REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS, SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

1   for responsive documents regarding competitor contacts, monthly and other sales data

2   regarding CRTs and CRT Products, and the circumstances of storage and destruction or loss and

3   locations of responsive documents during the relevant period.  No later than September 30,

4   2016, Mitsubishi shall provide the DPPs with multiple dates for depositions of Mitsubishi's Rule

5   30(b)(6) witness(es) prepared to provide full and complete responses to the DPPs'

6   Interrogatories Nos 5, 12 and 16.

7           The undersigned recommends that the court **GRANT** the DPPs' motion for

8   evidentiary sanctions in full and order the DPPs to submit to the court a list of documents (by

9   Bates or exhibit numbers) to be deemed admissible at trial as evidentiary sanctions sought by

10  their motion.  The undersigned **GRANTS** leave to the DPPs to file a motion for monetary and

11  alternative sanctions.

12  IT IS SO ORDERED.

13

14  Date:   August 29, 2016

15

16                          Vaughn R Walker
                            United States District Judge (Ret)

17

18  The Recommended Order of the Special Master is Accepted and Ordered / Denied / Modified.

19

20  Date: _____

21

22

23                          Honorable Jon S Tigar
                            United States District Judge

24

25

26

27  REDACTED ORDER RE DPPS' MOTION TO COMPEL MITSUBISHI DISCOVERY RE MEETINGS WITH COMPETITORS,
    SALES, DESTRUCTION OF EVIDENCE AND FOR EVIDENTIARY SANCTIONS

28                                                              PAGE **40** OF 40