BRAD D. BRIAN (State Bar No. 079001)
brad.brian@mto.com
GREGORY J. WEINGART (State Bar No. 157997)
gregory.weingart@mto.com
SUSAN E. NASH (State Bar No. 101837)
susan.nash@mto.com
E. MARTIN ESTRADA (State Bar No. 223802)
martin.estrada@mto.com
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Defendant LG Electronics, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944-JST<br>MDL No. 1917 |
| This Document Relates to:<br><br>*Sears, Roebuck and Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514 | **DEFENDANT LG ELECTRONICS, INC.'S MOTION FOR BIFURCATION AND BENCH TRIAL**<br>[Declaration of Cathleen H. Hartge and [Proposed] Order filed concurrently herewith]<br><br>Judge: Honorable Jon S. Tigar<br>Date: September 22, 2016<br>Time: 2:00 p.m.<br>Courtroom: 9, 19th Floor |

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

**NOTICE OF MOTION AND MOTION FOR BIFURCATION AND BENCH TRIAL**

PLEASE TAKE NOTICE THAT on September 22, 2016 at 2:00 p.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Jon S. Tigar, located at 450 Golden Gate Avenue, 19th Floor, Courtroom 9, San Francisco, California 94102, Defendant LG Electronics Inc. ("LGE") will move the Court, pursuant to ECF No. 4623 (May 5, 2016), for the relief requested below.

LGE will request that this Court hold a bench trial to resolve whether Plaintiffs Sears, Roebuck and Co. and Kmart Corporation ("Sears/Kmart") lack standing to sue LGE as to certain portions of their claim, and that such bench trial be held prior to the jury trial on liability and damages scheduled for January 9, 2017.

DATED:  August 12, 2016            Respectfully submitted,

                                   MUNGER, TOLLES & OLSON LLP
                                        BRAD D. BRIAN
                                        GREGORY J. WEINGART
                                        SUSAN E. NASH
                                        E. MARTIN ESTRADA


                                   By:      /s/ *Brad D. Brian*
                                        BRAD D. BRIAN

                                   *Attorneys for Defendant LG Electronics, Inc.*

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 1

INTRODUCTION .............................................................................................................................. 1

BACKGROUND ................................................................................................................................ 2

    I.    Factual Background .............................................................................................. 2

    II.    Legal Background ................................................................................................ 2

ARGUMENT ...................................................................................................................................... 4

    I.    This Court Should Bifurcate Proceedings and Rule on Sears/Kmart's Standing Prior to the Jury Trial on Liability and Damages ..................................... 4

        A.    Whether Sears/Kmart Have Standing to Sue Is a Question of Law for the Court to Resolve. ........................................................................ 4

        B.    Sears/Kmart's Standing to Sue As to a Significant Portion of Their Claims Is Disputed. ........................................................................... 4

        C.    This Court Should Resolve These Outstanding Questions Regarding Sears/Kmart's Standing in a Separate Bench Trial, Prior to the Jury Trial. ............................................................................................................ 8

    II.    LGE Proposes a One-to-Two-Day Bench Trial, Based Largely on Stipulated Facts. ...................................................................................................................... 10

CONCLUSION ................................................................................................................................. 11

APPENDIX A ................................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*In re ATM Fee Antitrust Litig.*,
  686 F.3d 741 (9th Cir. 2012) ................................................................................ 2, 3, 4, 6

*Bates v. United Parcel Serv.*,
  204 F.R.D. 440 (N.D. Cal. 2001) ........................................................................... 8

*Davis & Cox v. Summa Corp.*,
  751 F.2d 1507 (9th Cir. 1985) ............................................................................... 8

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977) ............................................................................................. 2, 3

*Kansas v. UtiliCorp United, Inc.*,
  497 U.S. 199 (1990) ............................................................................................. 3

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................................. 3

*Royal Printing Co. v. Kimberly-Clark Corp.*,
  621 F.2d 323 (9th Cir. 1980) ................................................................................ 3, 4, 5

**RULES**

Fed. R. Civ. P. 42(b) ................................................................................................... 1, 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Under federal law, indirect purchasers of a price-fixed good lack standing to sue alleged price-fixers except under limited circumstances. Sears/Kmart seek antitrust damages from LGE based on its alleged participation in a conspiracy to price-fix cathode ray tubes. But Sears/Kmart, having purchased only finished products containing these tubes and not the tubes themselves, are indirect purchasers. The parties disagree regarding the extent of Sears/Kmart's standing to sue. This motion argues that the Court should bifurcate the proceedings and resolve these threshold questions of standing in a bench trial before the jury trial on liability and damages.

It is black-letter law that only direct purchasers of a price-fixed product have standing to sue for alleged overcharges under the Sherman Act. There are only limited exceptions to this rule. One is the Ninth Circuit's control exception, which permits an indirect purchaser to sue for damages under the Sherman Act if it purchased the price-fixed good from an entity controlled by the conspiring seller of the price-fixed good. Sears/Kmart are indirect purchasers of cathode ray tubes—the good they allege to have been price-fixed by LGE and others—but assert standing to sue under the Ninth Circuit's control exception. LGE disagrees as to the applicability of the exception to a significant portion of Sears/Kmart's requested damages.

Ninth Circuit law is unambiguous that these unresolved questions related to standing must be resolved by the district court, not the jury. LGE requests this Court to make the standing determination through a bench trial prior to the jury trial on liability and damages. A bifurcated proceeding under Federal Rule of Civil Procedure 42(b) is necessary in order to avoid the prejudice to LGE that would result if Sears/Kmart is allowed to present a damages number to the jury that includes some ▇▇▇▇▇▇ that LGE believes Sears/Kmart lack standing to recover. A ruling pretrial excluding some or all of these damages will prevent Sears/Kmart from giving the jury an inflated and unjustified "starting point."

Bifurcation is also proper under Rule 42(b) in the interest of expediting a final resolution of these proceedings. A pre-jury trial ruling on the standing issues will give the parties a more realistic assessment of damages for purposes of evaluating settlement. And if the case goes to a

verdict, the Court will not need to prolong the proceedings by having to sort out the standing issues. By contrast, delaying or intertwining a resolution of the standing issues with the claims to be presented to the jury will confuse and extend trial proceedings that are already anticipated to last several weeks. LGE therefore requests that this Court adopt the bench trial procedure and schedule set forth *infra* in Part II of its Argument and in Appendix A.

## BACKGROUND

### I.   Factual Background

Sears/Kmart sell consumer electronics products, including televisions and monitors. They allege that, between March 1, 1995, and November 25, 2007, LGE conspired with other electronics manufacturers to fix the prices of cathode ray tubes ("CRTs" or "tubes"), a component used in manufacturing certain televisions and computer monitors ("finished products") that Sears/Kmart purchased. *See* Second Am. Compl. for Damages and Injunctive Relief Filed by Sears/Kmart ¶ 1 (Oct. 3, 2013), ECF No. 1973. Sears/Kmart do not allege that finished products vendors fixed the prices of those products. Rather, Sears/Kmart claim that they were harmed by the alleged tube price-fixing conspiracy and seek hundreds of millions of dollars in damages because the finished products they purchased contained price-fixed tubes. In the terminology of antitrust law, this means that Sears/Kmart are not "direct purchasers" from the alleged conspirators. Rather, they are "indirect purchasers," separated from the alleged conspiracy by one or more links in the chain of commerce.

### II.   Legal Background

As this Court is familiar with, and has recently set out the principles governing the applicability of, the control exception to the direct purchaser rule, the applicable law is discussed only briefly here. *See* ECF No. 4742 (Aug 4, 2016).

In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court held that only the direct purchaser of a price-fixed product has standing under the Sherman Act to recover alleged overcharges. *See In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 748 (9th Cir. 2012) (citing *Illinois Brick*, 431 U.S. at 745-46)). Accordingly, "indirect purchasers . . . have no standing to sue." *Id.* The Supreme Court has continued to uphold *Illinois Brick*'s bar against indirect purchaser suits, in

order to preserve the twin goals of preventing duplicative recovery and avoiding thorny questions of damages apportionment between plaintiffs at multiple levels in the distribution chain. *See Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 208 (1990).

Consistent with "the Supreme Court's admonition not to carve out exceptions to the [direct purchaser] rule," there are only "limited exceptions" to the indirect purchaser bar. *ATM Fee*, 686 F.3d at 755 n.7 (quoting *UtiliCorp*, 497 U.S. at 216) (internal quotation marks omitted); *id.* at 749. Sears/Kmart claim entitlement to recover here under the exception created in *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 326 (9th Cir. 1980). In the Ninth Circuit, "indirect purchasers may sue . . . when a conspiring seller owns or controls the direct purchaser" that served as the middleman.[1] *ATM Fee*, 686 F.3d at 749 (citing *Royal Printing*, 621 F.3d at 326). In carving out this exception, the court reasoned that even if a middleman-direct purchaser's pricing decisions were "determined by market forces," its "litigation decisions will usually be subject to [the] parental control" of the conspiring seller. *See Royal Printing*, 621 F.2d at 326-27. When that happens, there is "no realistic possibility of suit" by the direct purchaser, *ATM Fee*, 686 F.3d at 757, reducing the risk that defendants would be subjected to duplicative recovery, or that courts would have to grapple with complex questions of damages apportionment, *Royal Printing*, 621 F.2d at 326.[2]

Sears/Kmart bear the burden of establishing their standing under the control exception. *See, e.g.*, *ATM Fee*, 686 F.3d at 747 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). To meet this burden, they must present admissible evidence demonstrating that each vendor whose sales to Sears/Kmart comprise part of their damages claim has the requisite control relationship with a conspiring seller. *See id.* at 749 (citing *Royal Printing*, 621 F.2d at 326).

---

[1] LGE understands that this Court is bound by the Ninth Circuit's decision in *Royal Printing*. Given, however, the Supreme Court's post-*Royal Printing* warning against "allowing . . . exception[s]" to the rule against indirect purchaser suits at the risk of "undermin[ing] the rule," *UtiliCorp*, 497 U.S. at 216, LGE reserves the right to challenge *Royal Printing*'s continued viability on appeal. *See also, e.g.*, *Utilicorp*, 497 U.S. at 217 ("[W]e think it an unwarranted and counterproductive exercise to litigate a series of exceptions.").

[2] As this Court has already recognized, another exception, recognized in *Illinois Brick*, is when "market forces have been superseded." 431 U.S. at 736 n.16. Sears/Kmart does not invoke that exception here.

To the extent that Sears/Kmart fail to establish standing as to purchases from any particular vendor, that vendor's sales to Sears/Kmart must be removed from the overall volume of commerce upon which they base their damages request.  LGE estimates that Sears/Kmart's requested damages would be reduced by some 30%—in dollar terms, approximately ▮ prior to trebling—if they fail to establish their standing as to the control relationships that remain in dispute.

## ARGUMENT

### I. This Court Should Bifurcate Proceedings and Rule on Sears/Kmart's Standing Prior to the Jury Trial on Liability and Damages.

#### A. Whether Sears/Kmart Have Standing to Sue Is a Question of Law for the Court to Resolve.

The Ninth Circuit has specifically held that "[s]tanding is a question of law for the district court to decide." *ATM Fee*, 686 F.3d at 747.  In determining whether a plaintiff has standing to assert its claims, the court must also resolve any "issues of fact necessary to make the standing determination." *Id.*  Under *ATM Fee*, there is no question that the scope of Sears/Kmart's standing must be resolved by this Court rather than by a jury.

#### B. Sears/Kmart's Standing to Sue As to a Significant Portion of Their Claims Is Disputed.

Sears/Kmart assert standing to recover based on finished product purchases from ▮ distinct vendors spanning more than a decade. *See* Hartge Decl. Ex. C (Expert Report of Dr. Alan S. Frankel (Sears/Kmart), Apr. 15, 2014), Ex. 15.  But Sears/Kmart have standing to recover based only on purchases from vendors in a control relationship with a conspiring seller of tubes.[3]  *See ATM Fee*, 686 F.3d at 749.  LGE disputes that Sears/Kmart can meet this burden as to a large swathe of the purchases underpinning their damages claim.  LGE's anticipated challenges to Sears/Kmart's standing take several forms, as demonstrated by the examples provided below.

---

[3] LGE frames the test in this way in recognition that this Court has determined that the *Royal Printing* exception applies even where the direct purchaser owns or controls the conspiring seller. *See* ECF No. 4742 (Aug. 4, 2016).  LGE does not re-argue the issue here but preserves the argument for appeal.

1  While not exhaustive, these illustrative examples highlight the significant questions remaining as to Sears/Kmart's standing.

***Control during no part of alleged conspiracy.*** As LGE has asserted repeatedly throughout the MDL litigation, across multiple cases, many of the vendors at issue have only thin connections to alleged conspirators that do not meet the control test. *See, e.g.*, SDI Defendants' Motion for Summary Judgment for Lack of Standing, ECF No. 2983 (Nov. 7, 2014) (joinder filed by LGE at ECF No. 3864 (June 4, 2015), granted at ECF No. 4586 (Apr. 21, 2016)); Joint Case Status Conference at 8-11, ECF No. 3939 (July 28, 2015); Joint Case Management Conference Statement at 21-23, ECF No. 4192 (Nov. 17, 2015). The same is true of Sears/Kmart specifically.

By way of example, LGE disputes that Sears/Kmart can establish the requisite control relationship between the alleged Panasonic conspirators and the JVC vendors from which Sears/Kmart purchased televisions, *see* Hartge Decl. Ex. C (Expert Report of Dr. Alan S. Frankel (Sears/Kmart), Apr. 15, 2014), Ex. 15. Panasonic owned a bare majority interest of ~52% in the JVC entities during most of the alleged conspiracy period. *See* Hartge Decl. Ex. F (Nowicki (Panasonic 30(b)(6)) Dep. 10:25-11:8). Panasonic's interest dropped to a minority stake of 36.8% towards the end of the conspiracy period in August 2007, prior to the filing of the first class action complaint alleging a CRT price-fixing conspiracy in November of that year. *See id.* at 11:13-21; Class Action Compl., ECF No. 1 (Nov. 26, 2007). To recover based on its JVC purchases, Sears/Kmart must put forth evidence that this minority share nonetheless gave Panasonic the ability to control JVC's litigation decisions—evidence that LGE believes Sears/Kmart does not have. *See* ECF No. 4742 at 17-19 (Aug 4, 2016) (listing factors that might establish control and noting that "courts routinely engage in this type of analysis"). If the Court finds that Sears/Kmart cannot establish Panasonic's control over the JVC vendors for purposes of the *Royal Printing* exception, their damages claim will be reduced by nearly ▬▬▬ on this basis alone.[4]

---

[4] This figure and others in this motion represent LGE's best pre-trebling estimates based on the information provided by Sears/Kmart to date. Pursuant to a stipulation between the parties, Sears/Kmart are to provide LGE with a specific breakdown of their requested damages by vendor by early October. *See* ECF No. 4644 (May 10, 2016).

DEFENDANT LGE'S MOTION FOR BIFURCATION AND BENCH TRIAL

1    In another example, part of Sears/Kmart's claim is based on purchases from ▇▇▇ entities, described by their expert as ▇▇▇▇▇▇▇▇▇▇ or sometimes simply ▇▇▇. *See* Hartge Decl. Ex. C (Expert Report of Dr. Alan S. Frankel (Sears/Kmart), Apr. 15, 2014), Ex. 15. Although these damages (approximately ▇▇▇) are less significant, their inclusion illustrates the overbreadth of Sears/Kmart's claims, as LGE is not aware of any admissible evidence establishing that either vendor was controlled by an alleged conspirator.

***Lack of control during part of alleged conspiracy.***  LGE further contests Sears/Kmart's standing to recover from several additional vendors for a portion of the alleged conspiracy period. While Sears/Kmart may be able to show that several vendors had a control relationship with an allegedly conspiring tube-seller for *part* of the alleged twelve-year conspiracy, purchases made from vendors after the tube-seller stopped selling tubes must be removed from the volume of commerce.

The question whether a vendor was owned or controlled by a conspiring tube seller is distinct from the legal issue of whether certain alleged conspirators, by ceasing their tube operations, withdrew from the alleged conspiracy for purposes of asserting a withdrawal defense. Under *ATM Fee*, the relevant question is whether a finished products vendor was in a control relationship with a "conspiring [tube] *seller*," 686 F.3d at 749 (emphasis added), not whether the *former* tube seller remained a "conspirator."  *See id.* at 755-58 (rejecting the plaintiffs' argument that they had standing to recover from defendant banks solely because the banks were conspirators, and going on to conduct a control analysis between the banks and the ATM network that had allegedly fixed prices). In other words, it is not enough for Sears/Kmart to point to a control relationship between a vendor and a conspirator; that conspirator must *sell the price-fixed product*. Even if an alleged conspirator that stopped making or selling tubes failed to affirmatively withdraw from a conspiracy, a finished product vendor's control relationship with that conspirator would be insufficient for standing purposes because the conspirator was no longer a "seller." As a result, Sears/Kmart's purchases from vendors no longer in a control relationship with a conspiring seller of tubes must be removed from the volume of commerce.

1    One example of how this analysis could reduce Sears/Kmart's damages is their claim for
2 damages based on purchases from Hitachi vendors.  Sears/Kmart claim these damages for
3 purchases throughout the alleged conspiracy, even though no Hitachi entity made or sold tubes
4 after March 2003.  *See* Hartge Decl. Ex. B ¶¶ 15-16 (Expert Report of Vandy Howell, Ph.D.
5 (Hitachi), Apr. 15, 2014).  From that point on, Hitachi's only connection with a tube seller was its
6 25% stake in Chinese tube-maker Shenzhen SEG Hitachi Color Displays Devices, LTD ("SEG"),
7 *see* Hartge Decl. Ex. G (Barrett (Hitachi 30(b)(6)) Dep. 28:10-29:21; Second Am. Compl. for
8 Damages and Injunctive Relief Filed by Sears/Kmart ¶ 34 (Oct. 3, 2013), ECF No. 1973.  Again,
9 Sears/Kmart must present evidence that this minority share in fact gave Hitachi the ability to
10 control SEG in order to recover based on post-March 2003 purchases from Hitachi finished
11 product vendors under the control exception.  If this Court finds that evidence insufficient,
12 Sears/Kmart's damages claim would be cut by nearly ■■■■■.

13    Similarly, Toshiba transferred its CRT business to a separate entity, Matsushita Toshiba
14 Picture Display Co., Ltd. ("MTPD"), in March 2003.  *See* ECF No. 2995 (Nov. 7, 2014), Lau
15 Decl. Ex. E ¶¶ 2-3 (Decl. of Mio Tamba).  Toshiba owned only a one-third stake in MTPD, with
16 the remaining two-thirds owned by Panasonic.  *See* Hartge Decl. Ex. E (Nakano (Panasonic
17 30(b)(6)) Dep. 33:13-25).  According to Sears/Kmart, Toshiba nonetheless controlled MTPD.  *See*
18 Hartge Decl. Ex. A at 26 (Supplemental Attachment A to Certain Direct Action Plaintiffs'
19 Responses to Various Interrogatories, Sept. 5, 2014).  LGE disagrees.  If this Court determines
20 that Toshiba's 35.5% interest in tube-maker MTPD is insufficient to establish a control
21 relationship, then Toshiba vendors necessarily had no control relationship with a conspiring tube
22 seller after March 2003.  This standing dispute affects more than ■■■■■ of the damages at
23 issue.

24    ***No indirect purchase of price-fixed products.***  The evidence will show that a sizeable
25 portion of Sears/Kmart's purchases from Zenith were not indirect purchases of price-fixed
26 products at all.  Prior to 1999, Zenith—who is not an alleged conspirator—sourced more than 90%
27 of its tubes internally.  *See* Hartge Decl. Ex. H (Wayne Park (LGE) Dep. 40:2-7; 134:17-136:1).
28 In other words, more than 90% of the finished products that Zenith produced before 1999 were

1 | made with non-price-fixed tubes.  Sears/Kmart lack standing to recover any damages based on
2 | purchases of such finished products but continue to claim damages of more than ▮▮▮▮▮ based
3 | on Zenith purchases without any pre-1999 reduction.

### C. This Court Should Resolve These Outstanding Questions Regarding Sears/Kmart's Standing in a Separate Bench Trial, Prior to the Jury Trial.

Given the Ninth Circuit's clear command that the district court, not a jury, resolve the numerous areas of dispute as to Sears/Kmart's standing, the only remaining question is *how* the Court should do so.  LGE respectfully submits that both efficiency and fairness support bifurcating proceedings under Federal Rule of Civil Procedure 42(b), and holding a (1) separate bench trial on standing, (2) before the jury trial on liability and damages.

"The district court has broad discretion to order separate trials under Rule 42(b) of the Federal Rules of Civil Procedure." *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1517 (9th Cir. 1985), *superseded on other grounds by* 18 U.S.C. § 1961.  Under that rule, "[f]or *convenience*, to *avoid prejudice*, or to *expedite or economize*, the court may order a separate trial of one or more separate issues . . . ."  Fed. R. Civ. P. 42(b) (emphasis added); *see also, e.g.*, *Bates v. United Parcel Serv.*, 204 F.R.D. 440, 448 (N.D. Cal. 2001) ("Factors to be considered when determining whether to bifurcate a trial include: avoiding prejudice, separability of the issues, convenience, judicial economy, and reducing risk of confusion.").  Here, all of the rationales underpinning Rule 42(b) weigh in favor of bifurcation.

*Avoidance of prejudice.*  LGE requests a bench trial to resolve these standing questions before the jury trial for the simple reason that Sears/Kmart's counsel should not be allowed to present a vastly inflated and unjustified damages claim to the jury in their opening statement and, through its experts, during trial.  It is well-known that juries are prone to using the initial numbers as an "anchor" or starting point for damages, even if they eventually arrive at a point somewhere in the middle of the parties' positions.  While the exact amount of Sears/Kmart's damages claim is unclear, *see, e.g.*, Hartge Decl. Ex. D (Second Supplemental Expert Report of Dr. Alan S. Frankel (Sears/Kmart), Sept. 25, 2014, Ex. 20a ("Sears and Kmart Damages Summary"), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮), LGE believes that Sears/Kmart

intend to put forth a number somewhere in the ███████ million range.  To the extent that approximately one-third of these exorbitant claims are demonstrably improper, this Court should make that determination prior to trial so that the "starting point" is not inflated beyond what either Sears/Kmart's experts or the law can support.

*__Judicial Economy and Convenience.__*  LGE anticipates that Sears/Kmart will argue for alternative methods of resolving standing, such as deferring the determination of their standing until after the jury trial, in order to avoid a pre-trial damages cut.  The perils of leaving these issues until later are well illustrated in the *Costco* LCD trial,[5] during which Judge Richard Jones held a "mini-bench" trial during the jury trial and then deferred the control findings until after the verdict.  As a result of additional issues related to the control question identified in post-verdict briefing, this procedure ultimately resulted in a 7-month delay between the jury verdict and the entry of final judgment.  *See* Hartge Decl. Ex. I (Judgment in a Civil Case, *Costco Wholesale Corp. v. AU Optronics Corp.*, No. C13-1207RAJ (W.D. Wash. June 4, 2016), ECF No. 682).  Holding a bench trial after the jury trial is underway also causes delay and inconvenience to jurors, as time that could otherwise be devoted to presenting evidence to the jury must instead be used for proceedings outside the jurors' presence.

Nor is it reasonable to suggest that evidence going to the control exception be presented to the jury itself for an advisory opinion (an option that Judge Jones initially considered, but rejected in the *Costco* LCD case).  Aside from the clear Ninth Circuit directive that the jury *not* decide standing, it makes no sense to add complicated issues of corporate structure to an already lengthy trial involving allegations that scores of companies conspired to fix tube prices over the course of more than twelve years.  To resolve these allegations and determine whether Sears/Kmart is entitled to any damages, jurors will need to spend several weeks sitting through the presentation of numerous exhibits, and many hours of deposition testimony, on complex topics ranging from who participated in the conspiracy, and when; the extent to which foreign conduct affected domestic

---

[5] *Costco Wholesale Corp. v. AU Optronics Corp.* was one of the cases remanded from the LCD multidistrict litigation pending in the Northern District of California before Judge Susan Illston, *see In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07–1827 SI, MDL No. 1827.

1  commerce; the accuracy of plaintiffs' overcharge model; what sizes of tubes, if any, were affected
2  by the alleged conspiracy; and others.  It makes no sense to add the evidence on corporate
3  relationships—likely including stipulated facts, exhibits, and testimony regarding stock
4  ownership, observation of corporate formalities, the sourcing of tubes, and other topics relevant to
5  the establishment of control—to this mix.

6        Given the lack of overlap in evidence between control evidence and liability and damages
7  evidence, the control evidence can be readily and conveniently presented in a separate proceeding
8  to this Court, making bifurcation appropriate here.

## II. LGE Proposes a One-to-Two-Day Bench Trial, Based Largely on Stipulated Facts.

As far as the mechanics of the bench trial, LGE respectfully requests that the Court hold a brief, one-to-two-day proceeding in late November/early December.  As reflected in the proposed schedule attached as Appendix A, LGE anticipates that the parties will stipulate to certain control relationships, where Sears/Kmart could otherwise present admissible evidence confirming the applicability of the control exception, and to some of the facts regarding disputed control relationships.  For control relationships and related facts that remain in dispute, LGE proposes that the parties serve streamlined pretrial exchanges regarding the limited evidence to be provided to the Court to supplement these stipulated facts.  The bench trial would then consist of (a) filing of stipulated facts and exhibits with the Court; (b) filing of deposition designations and exhibits supporting conflicting positions on disputed control relationships; (c) brief (1-2 days) live testimony; (d) the submission of proposed findings of fact and conclusions of law and/or post-bench-trial briefs by each side; and (e) oral argument at the Court's discretion.[6]

---

[6] This proposal as to the mechanics has some similarities to that used in the *Costco* case, where the Court held a "mini-bench" trial that consisted of a set of stipulated facts and limited live testimony on control issues partway through the jury trial. In another of the *LCD* cases, the court ordered the parties to submit "dispositive motions" on the "the threshold issue of Plaintiffs' standing" to allow it to resolve the standing issues prior to trial. Endorsed Order, *Tech Data Corp. v. AU Optronics Corp et al.*, No. 8:11-cv-02454, ECF No. 80 (M.D. Fla. July 15, 2015).

-10-  3:07-cv-05944-JST; MDL 1917
DEFENDANT LGE'S MOTION FOR BIFURCATION AND BENCH TRIAL

## CONCLUSION

For the foregoing reasons, LGE requests that this Court bifurcate proceedings and hold a brief, separate bench trial in late November/early December 2016 to determine the scope of Sears/Kmart's standing, in accordance with the proposed schedule set forth in Appendix A.

DATED: August 12, 2016                    Respectfully submitted,

                                        MUNGER, TOLLES & OLSON LLP
                                            BRAD D. BRIAN
                                            GREGORY J. WEINGART
                                            SUSAN E. NASH
                                            E. MARTIN ESTRADA

                              By:        /s/ *Brad D. Brian*
                                       BRAD D. BRIAN

                              *Attorneys for Defendant LG Electronics, Inc.*

# APPENDIX A

**Sears/Kmart Bench Trial: Proposed Pretrial Exchange & Trial Schedule**

| Date | Description |
|---|---|
| 10/14/2016 | Sears/Kmart to serve:<br>1) Draft stipulation on control relationships upon which they base their damages request;<br>2) List of bench trial exhibits, with images;<br>3) List of written discovery designations;<br>4) List of deposition designations;<br>5) Live witness list |
| 11/4/2016 | LGE to serve:<br>1) Revisions to Sears/Kmart's draft stipulation on control relationships<br>2) List of bench trial exhibits, with images;<br>3) List of written discovery designations;<br>4) List of deposition designations;<br>5) Live witness list;<br>6) Counter-designations to Sears/Kmart's deposition designations;<br>7) Objections to Sears/Kmart's exchanges served on 10/14/2016 |
| 11/5/2016 – 11/17/2016 | Parties to meet and confer to create joint stipulation and streamline presentations to be submitted to Court |
| 11/18/2016 | Parties to submit to Court:<br>1) Joint stipulation on undisputed control relationships and/or undisputed facts;<br>2) Written evidence (exhibits, deposition designations, and written discovery) supporting their positions regarding disputed control relationships and facts<br>3) Live witness list |
| 11/30/2016 – 12/1/2016 | Bench trial |
| 12/9/16 | Parties to submit proposed findings of fact/conclusions of law (or, in the alternative, post-trial briefs) |