Francis O. Scarpulla (41059)
Patrick B. Clayton (240191)
LAW OFFICES OF FRANCIS O. SCARPULLA
456 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 788-7210
Facsimile:   (415) 788-0706
Email: fos@scarpullalaw.com
           pbc@scarpullalaw.com

Counsel for Indirect-Purchaser Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 3:07-cv-5944-JST <br><br> MDL No. 1917 |
| This Document Relates to: <br><br> All Indirect-Purchaser Actions | **DECLARATION OF FRANCIS O. SCARPULLA IN SUPPORT OF OBJECTIONS TO PROPOSED FEE ALLOCATIONS** <br><br> Judge:              The Honorable Jon S. Tigar <br> Special Master:  The Honorable Martin Quinn <br> Hearing Date:     TBD <br> Hearing Venue:   JAMS |

I, Francis O. Scarpulla, declare as follows:

1.   I am an attorney licensed to practice before Supreme Court of the State of California and all interior California State Courts, as well as the Supreme Court of the United States and many interior federal courts, including the United States District Court for the Northern District of California. I am the proprietor of the Law Offices of Francis O. Scarpulla. I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them. I make this declaration in support of the Objections to Proposed Fee Allocations filed concurrently herewith.

2.   Attached hereto as Exhibit 1 are true and accurate copies of the daily time sheets maintained contemporaneously by me in this proceeding during my association with Zelle Hofmann Voelbel & Mason ("Zelle"). The two separate totals show, first, the entire amount of hours I devoted to the case during the Zelle period, and second, the 50% of those hours which were to be attributed to me as The Law Offices of Francis O. Scarpulla.

3.   When I left Zelle on March 21, 2015, I entered into an agreement with that firm which provided, in relevant part, that one-half of Scarpulla's total Zelle-period lodestar was assigned to me and would be paid directly to me out of any fees awarded to Zelle, a minimum of $213,288.75 in accordance with the Zelle agreement, which was previously disclosed to this Court. Doc. No. 4073-3, p. 16:23-28. Any Zelle multiplier on its total lodestar also applies to the LOFOS-assigned lodestar amount because I was a Zelle partner at the time my lodestar was generated, so that if Zelle is entitled to a multiplier on its lodestar, so too am I entitled to the same multiplier.

4.   I provided to Lead Counsel my declaration in support of my firm's fee application showing the LOFOS-assigned hours (Doc. No. 4069), however Lead Counsel refused to include it in the fee petition (Doc. No. 4071).

5.   While at Zelle, I spent time from late 2007 through May 2008 drafting, editing and finalizing the original complaint by Zelle (which became the model for the various amended complaints filed throughout this case), as well as working on the MDL pleadings while being involved in all early pre-trial aspects of this case. Subsequently, I was involved in drafting and/or

1  editing the initial Case Management Conference Statement, attending the Conference, and
2  engaging in the Rule 26(f) disclosure issues.

3     6.   Then, on May 27, 2008, I participated in an initial conference with counsel for
4  Chunghwa regarding a possible early settlement, which would include cooperation from that
5  defendant; thereafter Scarpulla communicated that information to both Direct-Purchasers' counsel
6  and Indirect-Purchasers' co-counsel.  Following up on this proposed settlement with Chunghwa, I
7  worked on gathering information to evaluate the proposed settlement; he attended the settlement
8  conference with Chunghwa and participated in post-settlement meetings with his co-counsel.
9  Once the Chunghwa settlement was negotiated and the proffer from that defendant concluded,
10 Scarpulla then participated in opposing Defendants' Rule 12(b)(6) motions to dismiss, including
11 *Twombly* and FTAIA issues.

12    7.   In or around May of 2013, I became aware of the proposed settlement with LG, to
13 which I voiced my concerns because the settlement amount was so small from one of the main
14 defendants in the case.  Lead Counsel claimed the settlement was appropriate because it was pre-
15 class certification, which Scarpulla rejected as a valid reason for such settlement.  In *TFT/LCD,* I
16 negotiated a mediated settlement of $380,000,000 from LG; here, Alioto took $25,000,000.

17    8.   Subsequently, in April, 2013, I became aware of, and voiced my views about, the
18 proposed Philips settlement, including the problem created by Lead Counsel's refusal to work
19 cooperatively with the California Attorney General's ("AG") office on a joint settlement with
20 Philips, as well as Lead Counsel's unwillingness to work cooperatively with Direct-Purchaser
21 Plaintiffs' Counsel and Direct-Purchaser Plaintiffs' Counsel.

22    9.   When the California Attorney General ("AG") proposed an IPP/AG joint settlement
23 with Philips, I became aware that Lead Counsel refused to work cooperatively with this proposal.

24    10.  During this time period, I participated in the class certification motion filed by the
25 Indirect-Purchaser Plaintiffs, as well as in offering advice to the Zelle attorney who was preparing
26 the class certification argument before the Special Master.

11. After class certification and during August 2014, I was requested by Special Master, Judge Vaughn Walker, to participate in an informal conference among himself, Mr. Alioto and Emelio Varanini, from the AG's office, to attempt to resolve the conflict between IPP Co-Lead and the CA AG's office.

12. Despite repeated attempts by me, I was unable to persuade Mr. Alioto to cooperate with the AG's office even though there could be a benefit to the Class in his doing so.

13. Not only was there no agreement, the contentious situation became exacerbated.

14. I performed this work to find a reasonable resolution to this conflict at the request of the AG and the Special Master.

15. Subsequent to these failed attempts at coordination of the IPP and the CA AG, I received settlement communications from certain defense counsel who had reached an impasse with Mr. Alioto in their attempts to settle with the IPP. I suggested that Special Master, Judge Vaughn Walker, be informed of the problem.

16. At around this same time period, I became involved with giving advice about trial strategy issues to the IPP Counsel even as Special Master Walker requested I become more involved in resolving the case, primarily through settlement negotiations.

17. I, along with several co-counsel, wrote to Mr. Alioto on October 2, 2014, outlining the shortcomings of Mr. Alioto's approach and offering to work with him to either settle the case or get it prepared for trial. Attached hereto as Exhibit 2 is a true and accurate copy of the October 2, 2014 letter from various counsel to Mr. Alioto.

18. After Special Master Walker submitted a Report and Recommendation suggesting that I and Mr. Josef D. Cooper be appointed additional co-counsel to augment settlement negotiations, and that recommendation was not adopted, I continued to work with Mr. Varanini and defense counsel in an attempt to achieve settlement in the case.

19. Mr. Alioto is the only attorney in this litigation who did not submit typed, contemporaneously maintained time sheets. Those he did submit are illegible with time entries scrawled across the top or down one side of each separate report and illegible to the point that it is

1  uncertain that the work he described actually was a benefit to the Class.  Doc. Nos. 4545-5 and
2  4545-6.
3      20.    I have co-represented plaintiffs with Mr. Alioto over the years, and this is the first
4  case in my memory in which he has not submitted typed, legible timesheets.
5      21.    My cursory evaluation of Mr. Alioto's time entries which are illegible shows the
6  TATP lodestar would be reduced by as much as $5,892,781.25 to a new total of $9,952,810.00.
7      22.    In my estimation, Mr. Alioto was inefficient in the assignments he made, especially
8  to inexperienced attorneys.
9      23.    Attached hereto as Exhibit 3 is a chart proposing fee allocations which incorporates
10 the points made in the objection concurrently filed herewith.
11     The foregoing is true and accurate to the best of my belief and knowledge.  I make this
12 declaration under the penalty of perjury under the laws of the State of California.  Executed this 7th
13 day of September, 2016, at San Francisco, California.

                                                     /s/ Francis O. Scarpulla
                                                     Francis O. Scarpulla

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DECLARATION OF FRANICS O. SCARPULLA IN SUPPORT OF OBJECTIONS TO PROPOSED FEE ALLOCATIONS was filed via CM/ECF on September 7, 2016 and as a result has been served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Francis O. Scarpulla
Francis O. Scarpulla