# EXHIBIT A

KIRBY McINERNEY, LLP
Robert J. Gralewski, Jr. (196410)
600 B Street, Suite 1900
San Diego, CA 92101
Tel: (619) 398-4340
bgralewski@kmllp.com

*Counsel for Kerry Lee Hall, Daniel Riebow and the Certified Class of Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br>All Indirect Purchaser Actions | Case No. 3:07-cv-5944<br>MDL No. 1917<br><br>**CLASS ACTION**<br><br>**DECLARATION OF ROBERT J. GRALEWSKI, JR. IN SUPPORT OF PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS**<br><br>Judge: Honorable Samuel Conti<br>Courtroom One, 17th Floor |

---

1

DECLARATION OF ROBERT J. GRALEWSKI, JR. IN SUPPORT OF PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS
Case No. 3:07-cv-5944, MDL No. 1917

I, Robert J. Gralewski, Jr., declare as follows:

1. I am an attorney licensed to practice before all state and federal courts in the state of California, and I am a partner in the law firm Kirby McInerney LLP. I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them. I make this declaration in support of my firm's request for attorneys' fees and reimbursement of litigation expenses as set forth in Plaintiffs' Application for Attorneys' Fees, Expenses and Incentive Awards.

2. My firm is counsel of record in this case and represents named Plaintiffs Kerry Lee Hall (the Maine class representative) and Daniel Riebow (the Hawaii class representative). A brief description of my firm is attached as Exhibit 1 and incorporated herein by reference.

3. Throughout the course of this litigation, my firm kept files contemporaneously documenting all time spent, including tasks performed, and expenses incurred, and transmitted those reports on a regular basis to Lead Counsel. All of the time and expenses reported by my firm were incurred for the benefit of the Indirect Purchaser Plaintiffs ("IPPs").

4. During the course of this litigation, Kirby McInerney was one of a handful of firms regularly counted on by Lead Counsel to assist with the most important aspects of the case, from arguing at the class certification hearing before the Special Master to first-chairing numerous depositions of the largest defendant (Samsung SDI) to traveling to Fuzhou, China to meet with and prepare three cooperating Chunghwa Picture Tube employees for their direct trial testimony. What follows is a brief summary of the numerous tasks done by Kirby McInerney for the benefit of the Class, all of which were assigned and/or approved by Lead Counsel:

### A. Discovery and Depositions of Defendants

Because of expertise developed by working extensively on the In re TFT-LCD (Flat Panel) Antitrust Litigation case, Lead Counsel looked to me – along with my firm - for assistance from the very beginning of the review of Defendants' documents. In collaboration

---

2
DECLARATION OF ROBERT J. GRALEWSKI, JR. IN SUPPORT OF PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS
Case No. 3:07-cv-5944, MDL No. 1917

with Lead Counsel and other select firms, I was involved in establishing review protocols and procedures and then served as one of two lead attorneys formulating searches, creating batches of documents, and generally overseeing a team of lawyers tasked with identifying documents and organizing evidence pertaining to Defendants' Foreign Trade Antitrust Improvement Act defense. Lawyers from my firm served on this (FTAIA) issue team as well as other issue teams and were responsible for collecting pertinent evidence and drafting comprehensive liability and impact memoranda. Once depositions commenced, my firm and I continued to play an active role on behalf of the Class. While lawyers in my firm served on deposition preparation teams by reviewing thousands of documents pertaining to specific witnesses, I was eventually given the responsibility of conducting the Samsung SDI depositions. Personally selecting the deposition exhibits (with assistance from the Straus & Boies firm) and drafting detailed, hard-hitting outlines, I first-chaired every Samsung SDI deposition after the Direct Purchaser Plaintiffs settled their action against SDI (H.S. Chu, S.K. Sung, W.R. Kim, and J.S. Ahn). In fact, I played an instrumental role in locating, personally serving, and interviewing former employee W.R. Kim prior to taking his deposition. At the direction of lead counsel, I also deposed Samsung SDI witnesses Hoon Choi, K.C. Oh, J.I. Lee, and J.Y. Youn and Hitachi witness Thomas Schmitt and assisted with two Samsung SDI depositions in Seoul, South Korea (S.K. Park and D.Y. Kim) over the course of two weeks. I also interviewed two cooperating LG witnesses in Cabo San Lucas, Mexico (P.J. Lee and J.K. Chung) while also attending their depositions there. Elizabeth Brehm, also with my firm, summarized numerous depositions at the request of Lead Counsel, and it is my understanding that these depositions summaries were relied upon by the team of lawyers preparing the case for trial.

       B.  <u>Foreign Language</u>

   Many of the documents produced by Defendants were in foreign languages, including Japanese. Throughout the case, Kirby McInerney provided highly skilled, native speaking, Japanese lawyers to Plaintiffs' foreign language team. Known for their competence,

Kirby McInerney's Japanese lawyers were relied upon to perform a wide range of critical tasks including: (a) creating and reviewing hot document lists of Japanese documents in preparation for depositions; (b) translating Japanese documents into English; (c) proofreading English translations in preparation for obtaining certified translations; (d) providing analysis in response to objections to translations received from the Defendants; (e) formulating objections to translations to Defendants' English translations of deposition exhibits; (f) reviewing documents, drafting background memoranda, and generally assisting senior lawyers prepare to depose Japanese speaking employees of Defendants; (g) reviewing and providing analysis regarding Defendants' responses to interrogatories; and (h) serving as Plaintiffs' check translator at Japanese Defendant depositions.

### C. Discovery and Depositions of Plaintiffs

I was the point-person for all things pertaining to the more than 30 Plaintiffs. I collected, assembled, and produced documents on multiple occasions on behalf of the Plaintiffs. I also interfaced with each Plaintiff's counsel and was responsible for Plaintiffs' interrogatory responses. Perhaps most importantly, I coordinated the defense of the Plaintiffs' depositions including meeting in person with many of the Plaintiffs in advance of their depositions, preparing them for their depositions, and then traveling throughout the country (from Maine to Hawaii) to defend approximately 15 different Plaintiff depositions. In addition, under the guidance of Lead Counsel I sent regular updates regarding the status of the litigation to Plaintiffs and their counsel.

### D. Class Certification

Throughout the class certification phase of the case I worked closely with Lead Counsel to ensure that the best and most appropriate Plaintiffs from each state were selected to serve as class representatives. (In some cases, Lead Counsel made the strategic decision to substitute representatives in certain states, and I handled that contested process.) During the class certification briefing process and knowing each Plaintiffs' purchase history and CRT

products best, I assisted with the opening and reply briefing with respect to ascertainability and adequacy. Lead Counsel then selected me to present argument before the Special Master in connection with this work. During the class certification hearing, I argued effectively and succeeded in refuting Defendants' arguments.

### E. Depositions of Third Parties

During the course of the litigation, Defendants' noticed and conducted more than 50 depositions of Direct Action Plaintiffs and other third parties. Defendants deposed two Direct Action Plaintiffs (Costco and Best Buy) for the purpose of opposing Plaintiffs' class certification motion. All of the depositions were, in part, designed to develop contra economic evidence concerning pass through for Defendants' eventual decertification motion (as well as other attacks). I was asked by Lead Counsel to spearhead Plaintiffs' involvement in all of these depositions. Working with Plaintiffs' economics experts, I developed a series of deposition questions to ask the third parties to mitigate Defendants' attacks and to establish that pass through did in fact take place. I represented Plaintiffs at many of these depositions. William Harris, also with my firm, represented Plaintiffs at others. For the depositions that we could not participate in, I coordinated coverage by other Plaintiffs' counsel and trained them with respect to the strategy and questions to ask. Ultimately, I oversaw an effort by a team of Plaintiffs' lawyers (including Mr. Harris and others with my firm) to mine the numerous transcripts of these depositions for evidence to assist Plaintiffs' economic expert respond to attacks made by the Defendants.

### F. Motions, Memoranda in Support, and Letter Briefs

With assistance from my Kirby McInerney colleagues, I was responsible for several motions. Once Lead Counsel decided to substitute certain class representatives, I wrote and argued a successful motion to amend the complaint to add several class plaintiffs. I also met and conferred with Samsung SDI's lawyers and, together with the Straus & Boies firm, drafted several discovery motions that were presented to the Special Master including an

important motion to strike Samsung SDI's improper deposition errata (successful); a motion to compel the deposition of Samsung SDI employee J.S. Ahn (successful); and a series of motions concerning Defendants' improper approach to requests to authenticate documents and to stipulate to the business records status of them (pending at the time of final settlements). At the time a settlement was reached with Toshiba, I was drafting an opposition to a motion in limine to require Plaintiffs to bring all class representatives to testify live at trial. Throughout the course of the litigation, my firm and I also actively assisted with several other briefs including the class certification papers, mediation briefs, and an opposition to a motion to decertify the Class.

### G. Trial Preparation

My firm and I actively readied the case for trial. Along with a team of senior lawyers, I culled the large number of deposition exhibits and other key documents into a more manageable set of proposed trial exhibits. I assisted Lead Counsel and others select and rank trial witnesses. I designated and issue coded deposition testimony for trial. I reviewed and objected to Defendants' deposition designations. At the same time, Ms. Brehm and Mr. Harris were assisting in similar ways with the proposed trial exhibits. I was also chosen to interview three key cooperating witnesses from Chunghwa Picture Tubes. After selecting documents to discuss with them, I traveled to Fuzhou, China to conduct the interviews and prepare them for their direct trial testimony. And I also led the effort to vet and select the limited number of class representatives to testify live at trial. With assistance from others at my firm and Lead Counsel's trial and jury consultants, I prepared the video presentations of a limited set of class representatives to present during our mock jury exercise.

### H. Settlement

Lead Counsel was responsible for settlement negotiations. During the lengthy process, my firm and I assisted Lead Counsel with various mediation briefs, focusing mostly on highlighting the excellent evidence that we had helped to adduce during the litigation. Lead

1  Counsel also consulted with me and my partner Daniel Hume at various times during the
2  negotiations with various Defendants about settlement strategy, risks, interference by other
3  Indirect Purchaser Plaintiffs' counsel, timing, and positive or negative effects of the Direct
4  Purchaser and Direct Action Plaintiffs' litigation.

5. The schedule attached as Exhibit 2, and incorporated herein by reference, is a detailed summary of the amount of time spent by my firm's partners, attorneys and professional support staff who were involved in this litigation. It does not include any time devoted to preparing this Declaration or otherwise pertaining to the Joint Fee Petition. The lodestar calculation is based on my firm's historical billing rates in effect at the time services were performed. Exhibit 2 was prepared from contemporaneous time records regularly prepared and maintained by my firm. Those records have been provided to Lead Counsel, and I authorize them to be submitted for inspection by the Court if necessary. The hourly rates for my firm's partners, attorneys and professional support staff included in Exhibit 2 were at the time the work was performed the usual and customary hourly rates charged for their services in similar complex litigation.

6. The total number of hours reasonably expended on this litigation by my firm from inception to May 31, 2015 is 19,091.25 hours. The total lodestar for my firm at historical rates is $9,781,663.75. The total lodestar for my firm at current rates is $11,090,460.00. Expense items are billed separately and are not duplicated in my firm's lodestar.

7. The expenses my firm incurred in litigating this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, invoices, receipts, check records and other source materials and accurately reflect the expenses incurred. My firm's expense records are available for inspection by the Court if necessary.

8. My firm incurred a total of $221,357.08 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this litigation. Of this amount,

7
DECLARATION OF ROBERT J. GRALEWSKI, JR. IN SUPPORT OF PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS
Case No. 3:07-cv-5944, MDL No. 1917

$110,000.00 was for assessment payments for common litigation expenses or direct payments to experts or other vendors made at the request of Lead Counsel, and an additional $111,357.08 was for non-common litigation expenses incurred by my firm, such as travel, meals and lodging, copying, legal research, telephone, etc. A summary of those expenses by category is attached as Exhibit 3.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 9th day of September, 2015, in San Diego, California.

_____
ROBERT J. GRALEWSKI, JR.