# EXHIBIT B

KIRBY McINERNEY LLP
Robert J. Gralewski, Jr. (196410)
600 B Street, Suite 1900
San Diego, CA 92101
Tel: (619) 398-4340
bgralewski@kmllp.com

and

Daniel Hume
825 3rd Avenue
New York, NY 10022
Tel: (212) 371-6600
dhume@kmllp.com

*Counsel for Class Representatives*
*Kerry Lee Hall, Daniel Riebow, and the*
*Certified Class of Indirect Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CATHODE TUBE (CRT) ANTITRUST LITIGATION**<br><br>This Document Relates to:<br>All Indirect Purchaser Actions | Case No. CV-07-5944-JST<br>MDL No. 1917<br><br>**CLASS ACTION**<br><br>**DECLARATION OF ROBERT J. GRALEWSKI, JR. IN SUPPORT OF OBJECTION TO LEAD COUNSEL'S PROPOSED ALLOCATION OF AGGREGATE FEE AWARD TO INDIRECT PURCHASER PLAINTIFFS' COUNSEL**<br><br>Court: JAMS<br>Special Master: Martin Quinn, JAMS<br>Judge: Honorable Jon S. Tigar |

1      I, Robert J. Gralewski, Jr., declare as follows:

2      1.      I am an attorney licensed to practice before all state and federal courts in the state of

3 California, and I am a partner in the law firm Kirby McInerney LLP.  I have personal knowledge of

4 the facts stated in this declaration and, if called as a witness, I could and would testify competently

5 to them.  I make this declaration in support of my firm's objection to Lead Counsel's proposed

6 allocation of the aggregate fee award to Indirect Purchaser Plaintiffs' ("IPP") counsel.

7      2.      My firm is counsel of record in this case and represents named Plaintiffs Kerry Lee

8 Hall (the Maine class representative) and Daniel Riebow (the Hawaii class representative).

9                              Depositions

10      3.      As I previously stated in my September 9, 2015 Declaration, Lead Counsel gave my

11 firm responsibility for the Samsung SDI, Class Plaintiff, and Direct Action Plaintiff depositions.

12      4.      In connection with these assignments, my firm took or defended the following

13 depositions on behalf of the IPPs: H.S. Chu (SDI); S.K. Sung (SDI); W.R. Kim (SDI); J.S. Ahn

14 (SDI); Hoon Choi (SDI); K.C. Oh (SDI); J.I. Lee (SDI); J.Y. Youn (SDI); Thomas Schmitt

15 (Hitachi); Janet Ackerman (New York Class Representative); Albert Sidney Crigler (Tennessee

16 Class Representative); Jeffrey Figone (California Class Representative); Steven Fink (Nebraska

17 Class Representative); Steven Ganz (California Class Representative); Lawyer's Choice Suites,

18 Inc. (Washington D.C. Class Representative); Kerry Lee Hall (Maine Class Representative); Gary

19 Hanson (South Dakota Class Representative); Barry Kushner (Minnesota Plaintiff); John Larch

20 (West Virginia Class Representative); Southern Office Supply, Inc. (Kansas Class Representative);

21 Lisa Reynolds (Michigan Class Representative); Daniel Riebow (Hawaii Class Representative);

22 David Rooks (Florida Class Representative); Margaret Slagle (Vermont Class Representative);

23 Craig Stephenson (New Mexico Class Representative); Frank Warner (Tennessee Plaintiff); Louise

24 Wood (New York Class Representative); Target 30(b)(6); Costco 30 (b)(6); Best Buy 30 (b)(6)

25 (two separate depositions); Dell 30(b)(6); Circuit City 30(b)(6) (two witnesses); Michael Bone

26 (ABC Warehouse); David Dirven (ABC Warehouse); Aimee Fields (MARTA); Jeffrey Sokol

27                                   2
28 DECLARATION OF ROBERT J. GRALEWSKI, JR. IN SUPPORT OF OBJECTION TO LEAD
   COUNSEL'S PROPOSED ALLOCATION OF AGGREGATE FEE AWARD TO INDIRECT
   PURCHASER PLAINTIFFS' COUNSEL
   Case No. 3:07-cv-5944, MDL No. 1917

1  (MARTA); Christopher Groves (Best Buy); Todd Williams (Target); Kent Ashley (Target); John

2  LaRegina (P.C. Richards); Andrew Shulklapper (Circuit City); Rick Souder (Circuit City);

3  Kakanishi Toshihito (Sharp); Timothy Furey (Circuit City); Bryan Angus (BrandsMart); Paul

4  Garcia (BrandsMart); Robert Johnson (BrandsMart); and Wendy Linsky (Tech Data).

5       5.    In connection with taking or defending these depositions, I traveled within

6  California and to Arizona, Florida, Georgia, Hawaii, Kansas, Maine, Michigan, Minnesota,

7  Nebraska, New Mexico, New York, South Dakota, Tennessee, Vermont, Washington, Washington

8  D.C., and West Virginia.

9       6.    At the direction of Lead Counsel, I also traveled to South Korea, mainland China,

10  and Mexico to assist with depositions, interview Defendants' employees and take proffers, and

11  prepare key witnesses for trial.

12       7.    During the briefing on IPPs' motion for class certification, Lead Counsel asked me

13  to go to Seattle and Minneapolis to mitigate any damaging pass-through testimony that

14  Defendants' might be able to elicit from Costco and Best Buy.  In close consultation with IPPs'

15  economic expert, I developed and asked a series of questions at those 30(b)(6) depositions that did

16  just that.

17       8.    Lead Counsel ultimately selected me to be in charge of the entire defensive

18  discovery aspect of the case.  In connection with this assignment, I was responsible for: (a) all

19  written responses; (b) obtaining, reviewing, and producing documents; (c) interfacing with all local

20  counsel; and (d) coordinating all of the depositions of the Plaintiffs.  This work included meeting

21  with many of the Plaintiffs in person in their home towns to prepare them for their depositions.  I

22  also personally defended 18 out of the 27 Plaintiffs' depositions (67%).

23       9.    Lead Counsel put me in charge of handling Defendants' massive effort to depose

24  multiple employees at the numerous Direct Action Plaintiffs ("DAP") and other third party

25  witnesses.  Initially I covered all of these DAP depositions with my colleague William Harris, but

26  eventually these depositions started to be double and triple-tracked.  At that point, Lead Counsel

27

28

deferred to me to hand-pick a team of qualified lawyers from other IPP firms to cover the depositions, in addition to Mr. Harris and me.  In connection with this decision, I trained these lawyers and answered strategic questions in real-time during the course of the depositions. Ultimately, I oversaw an effort to mine all of the DAP/third party deposition transcripts for helpful economic evidence for IPPs' experts.

10.     After some modifications to IPPs' deposition teams, Lead Counsel entrusted me with the responsibility of taking all eight remaining Samsung SDI depositions on behalf of the IPPs.

11.     In connection with my leadership role in all of these depositions, interviews, and proffers, my firm incurred substantial travel-related costs in the amount of $82,588.  It is my understanding that between $5,000 and $6,000 of these costs were removed after a conservative audit of all IPP counsels' expenses.  It is also my understanding that Straus & Boies' expenses were reduced in a similar amount and about $1,000 was eliminated from Lead Counsel's expenses.

<u>Trial Preparation</u>

12.     Consistent with my September 9, 2015 Declaration, my firm was heavily involved in trial preparation.  Whenever my firm was asked to help, I allocated resources to ensure that all of the important jobs that Lead Counsel needed help with were properly staffed by myself and other experienced antitrust lawyers, foreign language attorneys, and support staff including: updating and completing IPPs' extensive conspiracy meeting grid (with Green & Noblin) and preparing the Samsung SDI, Toshiba, Chunghwa, Thomson, and Mitsubishi best evidence memoranda for use in IPPs' opposition to Defendants' motions for summary judgment; reviewing, designating, and ranking trial exhibits; designating and issue coding deposition testimony; objecting to Defendants' deposition designations; ranking trial witnesses; opposing certain motions in limine and Toshiba's motion to decertify the Class; and helping to assemble the numerous oppositions to Defendants' motions for summary judgment.

DECLARATION OF ROBERT J. GRALEWSKI, JR. IN SUPPORT OF OBJECTION TO LEAD COUNSEL'S PROPOSED ALLOCATION OF AGGREGATE FEE AWARD TO INDIRECT PURCHASER PLAINTIFFS' COUNSEL
Case No. 3:07-cv-5944, MDL No. 1917

13. As mentioned in ¶ 6, *supra*, Lead Counsel dispatched me to mainland China in early 2015 to interview three Chunghwa witnesses and prepare them for trial. Had the trial commenced, these witnesses would have undoubtedly been IPPs' most important live witnesses. While there, I sent regular updates to Lead Counsel and other members of the trial team about what each would be prepared to testify about so that that information could be factored into IPPs' trial preparation efforts.

14. I also had overall responsibility for all Plaintiff-related aspects of IPPs' mock jury exercise.

<u>Post-Settlement Work</u>

15. My firm's post-settlement lodestar is over $730,000, not including any time spent on this objection. My firm has also accumulated $21,389.62 in expenses during this period, including a $10,000 assessment requested by Lead Counsel.

16. At Lead Counsel's request and direction, my firm and I have worked very closely with Lead Counsel during the post-settlement period.

17. From the very beginning and throughout the settlement approval process, Lead Counsel consulted with me on a routine basis – often on a daily basis and at times on weekends – regarding overall strategy, especially with respect to the professional objectors.

18. My firm was one of three or four firms on the audit committee and, as a member, closely reviewed several firms' time and expense records and interfaced with those firms regarding any adjustments that needed to be made or additional detail that needed to be provided. As part of my firm's audit committee responsibilities, I was charged with speaking with Robert Bonsignore on several occasions about first obtaining his firm's time and then, after auditing it, discussing the results of the audit with him.

19. Lead Counsel put me in charge of all aspects of objector discovery. Thereafter, I quarterbacked this entire effort including locating the objectors, serving subpoenas and amended subpoenas, meeting and conferring with objectors' counsel, speaking with certain objectors'

5

DECLARATION OF ROBERT J. GRALEWSKI, JR. IN SUPPORT OF OBJECTION TO LEAD
COUNSEL'S PROPOSED ALLOCATION OF AGGREGATE FEE AWARD TO INDIRECT
PURCHASER PLAINTIFFS' COUNSEL
Case No. 3:07-cv-5944, MDL No. 1917

counsel about withdrawing their objections; obtaining and reviewing responsive documents, assembling and supervising a team of lawyers from various firms to conduct the objector depositions; preparing a uniform outline for the depositions; reviewing the transcripts of the objector depositions and extracting the pertinent testimony; researching the professional objectors' involvement in other cases and assembling a detailed compendium of those results; preparing and filing a substantive declaration regarding various objector-related issues in support of the settlement; and filing a motion to compel which is fully briefed but is still pending.

20.    I drafted, at Lead Counsel's request, sections of the Memorandum of Points and Authorities in Support of Indirect Purchaser Plaintiffs' Motion for Final Approval of Settlements with the Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Technicolor, and Technologies Displays Americas Defendants and my firm and I provided important legal research support regarding other aspects of the same brief.

21.    At Lead Counsel's request, I drafted and was directly responsible for several briefs related to Robert Bonsignore's improper attempts to submit evidence including: (1) Indirect Purchaser Plaintiffs' Opposition to Robert Bonsignore's Motion for Permission to File Reply in Support of Objections; Request to Strike; (2) Indirect Purchaser Plaintiffs' Opposition to Bonsignore's "Request to Submit Evidence Rebutting New Arguments Raised by Lead Counsel During Hearing;" Request to Strike and for Sanctions; and (3) Indirect Purchaser Plaintiffs' Motion to Strike Previously-Excluded Documents Attached Again to the Bonsignore Affidavit.

22.    At Lead Counsel's request, I initially drafted the motion to strike relating to Cooper & Kirkham's filings purporting to be on behalf of Steven Ganz.

23.    I attended the January 5, 2016 hearing before the Special Master and strategized with Lead Counsel and other firms the night before the hearing, during the hearing, and after the hearing.

DECLARATION OF ROBERT J. GRALEWSKI, JR. IN SUPPORT OF OBJECTION TO LEAD COUNSEL'S PROPOSED ALLOCATION OF AGGREGATE FEE AWARD TO INDIRECT PURCHASER PLAINTIFFS' COUNSEL
Case No. 3:07-cv-5944, MDL No. 1917

24.     Lead Counsel asked me to attend the March 15, 2016 Final Approval Hearing before Judge Tigar and asked me to be prepared to address a matter related to Incentive Awards, which I was.

25.     I attended the April 19, 2016 Final Approval Hearing by telephone and was prepared to address any issues related to a declaration regarding billing records that Lead Counsel asked me to submit.

<u>Fee Allocation</u>

26.     After Judge Tigar's August 3, 2016 order regarding attorneys' fees and at Lead Counsel's invitation, my firm participated in preliminary strategy sessions (along with Straus & Boies and KAG Law Group) regarding the allocation of fees.  And at Lead Counsel's invitation, I provided the first draft of the counsel tiers and multiplier ranges ultimately used by Lead Counsel in its Proposed Allocation.

27.     Prior to submitting its Proposed Allocation, Lead Counsel spoke with me and my partner Daniel Hume. Lead Counsel indicated that the quality of my firm's work was always excellent and its reliability throughout the case was exceptional.  However, Lead Counsel indicated that it would recommend a multiplier less than the other Core Group firms for three reasons: (1) my firm started working on the case "a little later;" (2) Lead Counsel had identified an error in my firm's reported current lodestar; and (3) my firm's senior foreign language attorneys' rate was too high.

28.     With respect to the error in my firm's total submitted current lodestar, it appears that when historical rates were converted to current, the document review cap of $350/hour for my colleagues William Harris and Karina Kosharskyy was not carried over.  Unfortunately, no one informed me of this error during the audit process before each firm submitted its final time and expenses.  As a result, my firm's correct current lodestar appears to be $10,337,201.25 instead of $11,090,460.  Accounting for the across-the-board 10% reduction in every firm's lodestar, my firm's lodestar for purposes of the Proposed Allocation therefore should be $9,303,481.

7

DECLARATION OF ROBERT J. GRALEWSKI, JR. IN SUPPORT OF OBJECTION TO LEAD COUNSEL'S PROPOSED ALLOCATION OF AGGREGATE FEE AWARD TO INDIRECT PURCHASER PLAINTIFFS' COUNSEL

Case No. 3:07-cv-5944, MDL No. 1917

29.    During the course of the litigation, my firm regularly submitted its time and expenses.  These submissions included each attorney's rates.  I do not recall Lead Counsel ever suggesting, prior to August 2016, that my firm's rate for our senior Japanese-language lawyers was too high.

30.    During the audit phase of the case, no one ever informed me that my firm's rate for our senior Japanese-language lawyers was too high.

31.    It is my understanding that among the three primary foreign languages involved in this case (Japanese, Korean, and Chinese), Japanese is the most demanding and complicated of the languages.  For example, written Japanese is more complicated than written Chinese because of its extensive use of honorific expressions and subtleties, which do not exist in Chinese.  It is, therefore, very difficult for a non-native speaker/reader of Japanese to grasp these differences.  Written Japanese is also more complicated than written Korean due to the fact that the Japanese written language uses many Chinese characters, combined with two sets of phonetic alphabets.  In most cases, current day written Korean uses very few, if any, Chinese characters, and only uses one phonetic alphabet.  As a result of this, most young Koreans, educated in Korea, do not have full grasp of Chinese characters.  Consequently, qualified Japanese-speaking lawyers are more difficult to employ.  This reality is often reflected in salaries paid and rates charged.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 7th day of September, 2016, in San Diego, California.

/s/ *Robert J. Gralewski, Jr.*

ROBERT J. GRALEWSKI, JR.

8

DECLARATION OF ROBERT J. GRALEWSKI, JR. IN SUPPORT OF OBJECTION TO LEAD COUNSEL'S PROPOSED ALLOCATION OF AGGREGATE FEE AWARD TO INDIRECT PURCHASER PLAINTIFFS' COUNSEL

Case No. 3:07-cv-5944, MDL No. 1917