ANDREA VALDEZ (Cal. Bar No. 239082)
530 S. Lake Avenue, No. 574
Pasadena, CA 91101
Tel: (626) 817-6547
andrea.valdez.esq@gmail.com

JOSEPH SCOTT ST. JOHN (*pro hac vice*)
514 Mockingbird Drive
Long Beach, MS 39560
Tel: 410-212-3475
jscottstjohnpublic@gmail.com

*Attorneys for Objector Douglas W. St. John*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 3:07-cv-5944 JST<br><br>MDL No. 1917<br><br>**OBJECTOR DOUGLAS W. ST. JOHN'S REPLY ISO MOTION FOR ATTORNEY'S FEES AND EXPENSES**<br><br>Date: Tuesday, October 18, 2016<br>Time: 2 p.m.<br>Courtroom: 9<br>Judge: Hon. Jon S. Tigar |
| This Document Relates To:<br><br>All Indirect Purchaser Actions | |

**INTRODUCTION**

After reviewing the Special Master's report, the Court reduced IPP Counsel's fee award by $14,418,750. In doing so, the Court made factual findings that differ from the Special Master's findings. For example, the Court found that "the reason the settlement is so large is that the injury was so large; the settlement represents [only] 20 percent of an antitrust injury that [IPP Counsel] estimated to be $2.78 billion before trebling . . . ." In contrast, the Special Master expressly discounted that fact, and instead focused only on the sheer size of the settlement fund. Unless the Special Master's findings were so far afield as to be clearly erroneous, the Court was able to make those different findings only because Mr. St. John successfully moved the Court to reverse an earlier order and review the Special Master's factual findings de novo. And it was the factors under which the Court made those different findings—the "results achieved" and the "awards in comparable cases" factors—that the Court pointed to in reducing IPP Counsel's fee award.

The essence of IPP Lead Counsel's response is that Mr. St. John's successfully moving the Court to change the standard of review from clear error to de novo was a meaningless formality. That argument is pragmatically undermined by Mr. Alioto's vehement resistance to Mr. St. John's motion to alter the standard of review. Abandoning his earlier position, Mr. Alioto now argues that the "result achieved" factor involves mixed questions of law and fact, such that it was always subject to de novo review. That argument is directly contrary to the Ninth Circuit's teaching that it "give[s] broad deference to the district court's determinations on fee awards because of [the district court's] superior understanding of the litigation and the desirability of avoiding frequent appellate review of **what are essentially factual matters**." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). Mr. Alioto finally turns to speculating over what the Court would have done if Mr. St. John not succeeded in altering the standard of review.

The remainder of Mr. Alioto's opposition follows from his mistaken belief that fee awards to objectors are somehow different than other fee awards. That is not the law. Rather, "objectors may claim entitlement to fees on the same equitable principles as class counsel." *Id.* at 658. Here, Mr. St. John conferred a substantial benefit by steering more money to the injured class members, and less to the attorneys. His request for slightly less than his counsel's lodestar should therefore be granted.

# ARGUMENT

## I. ALTERING THE STANDARD OF REVIEW MATTERS.

### A. IPP Lead Counsel's argument that the standard of review is a meaningless formality is undercut by his vehement resistance to de novo review.

IPP Lead Counsel Mario Alioto incredibly suggests that Mr. St. John's altering the standard of review was a meaningless formality. But that illogical argument is undercut by Mr. Alioto's own actions. If the difference between clear error and de novo review has no practical impact, Mr. Alioto would not have induced the Court to order clear error review in the first place, refused to correct that error via a stipulation, then jumped up and down defending that error in briefing. Indeed, Mr. Alioto argued that de novo review would negate the benefit "of having delegated [matters] to a Special Master in the first instance since the Court would have to perform its analysis anew." IPP Mot. Opp. (D.E. 4227) at 8. Mr. Alioto thus correctly believed that clear error review would be much more limited than de novo review, and he maintained that belief until it implied an objector should receive fees.

### B. The "result achieved" and the "awards in comparable cases" are "essentially factual matters" reviewed only for clear error by the Ninth Circuit.

IPP Lead Counsel does not dispute that the Court made different findings than did the Special Master. Rather, Mr. Alioto attempts to circumvent the impact of Mr. St. John's altering the standard of review by suggesting that the "result achieved" involved "a mixed question of law and fact that was always subject to de novo review." Opp. (D.E. 4806) at 5. But he points only to the Ninth Circuit's recitation of general principles for determining whether a particular application of law to facts is subject to de novo review. *Id.* (citing only *United States v. Hinkson*, 585 F. 3d 1247 (9th Cir. 2009)). Mr. Alioto does not identify a single case actually reviewing any *Kerr* factor de novo.

That lack of authority for Mr. Alioto's position is easily explained: the Ninth Circuit "give[s] broad deference to the district court's determinations on fee awards because of [the district court's] superior understanding of the litigation and the desirability of avoiding frequent appellate review of **what are essentially factual matters**." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012); *see also United States v. McConney*, 728 F. 2d 1195, 1202 (9th Cir. 1984) (en banc) ("If application of the rule

of law to the facts requires an inquiry that is 'essentially factual' . . . the district court's determination should be classified as one of fact reviewable under the clearly erroneous standard."). To that end, the Ninth Circuit has treated the "results" factor and the underlying facts as reviewable only for clear error. *See Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) (finding no abuse of discretion in fee award: "It is clear that the court considered Plaintiffs' degree of success; and its finding that Plaintiffs 'accomplished' their mission' is the functional equivalent of a finding that they achieved an 'excellent result.'"); *Harris v. McCarthy*, 790 F.2d 753, 758 (9th Cir. 1986) (characterizing the "benefit obtained" as one of the district court's "factual findings" and reviewing for clear error); *cf. Sablan v. Dept. of Fin. Of N. Mariana Islands*, 856 F.2d 1317, 1324 (9th Cir. 1988) ("The district court's factual determinations underlying its finding that Sablan is a 'prevailing party' . . . will not be set aside absent clear error.").

    **C.    IPP Lead Counsel offers no serious argument that the Court would have reduced IPP Counsel's fee award if the Special Master's factual findings were subject only to clear error review.**

As his final fallback, IPP Lead Counsel speculates that the Court would have departed *sua sponte* from the clear error standard that it had articulated in its own orders. Indeed, Mr. Alioto speculates that it is "highly unlikely" the Court would have confined itself to clear error review. Opp. (D.E. 4806) at 7. Yet the Court itself suggested it would not have performed a de novo review absent Mr. St. John's motion. Hr'g Tr. (D.E. 4266) 19:1-3 ("[I]t would make my life easier if you didn't have to have de novo review, but I think that's what the rule requires . . . .").

Nowhere in Mr. Alioto's speculation does he identify the standard of review the Court supposedly would have applied. *Cf. United States v. Boyd*, 55 F.3d 239, 242 (7th Cir. 1995) ("[W]e have sometimes heretically suggested there are operationally only two degrees of review, plenary . . . and deferential . . . ."). Nor does Mr. Alioto identify a single case in which a court has departed from its articulated standard of review of a special master's findings. Mr. St. John has not located any such case, either. For a contrary example, the Court need look no further than the *LCD* case, which IPP Counsel highlighted as an exemplar of reviewing a Special Master's findings for clear error. After expressly noting that no objections were received to the standard of review, the court spent only five paragraphs overruling objections to the Special Master's award of fees to IPP Counsel. *In re TFT-*

*LCD Antitrust Litig.*, No. 07-1827, 2013 WL 1365900, at *7-8 (N.D. Cal. Apr. 3, 2013). The court later spent less than a page analyzing a direct purchaser's objection to its fee award before concluding "the Special Master did not abuse his discretion or commit clear error . . . ." *In re TFT-LCD Antitrust Litig.*, No. 07-1827, 2014 WL 1991269, at *3 (N.D. Cal. May 12, 2014).

## II.   MR. ST. JOHN'S FEE REQUEST IS REASONABLE

### A.   The primary consideration is the benefit Mr. St. John provided to the class.

The primary consideration for Mr. St. John's fee request is whether he conferred a benefit on the class. IPP Counsel nevertheless seek to relitigate the merits of Mr. St. John's objections, then parse out which specific tasks resulted in a benefit to the class.[1] But it is not the work performed or the success on any particular claim that generates the entitlement to fees. Rather, it is the benefit conferred. *See, e.g.*, *Lewis v. Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982) ("[E]ven if a plaintiff does not ultimately prevail, attorneys' fees are nonetheless awardable if his action creates a substantial benefit."); *In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. 07-05634, 2015 WL 4776946, at *1-2 (N.D. Cal. Aug. 13, 2015) (awarding $90,000 in fees to objector who prevailed only on a procedural point, but thereby conferred a $1 million benefit).

---

[1]   In their effort at relitigation, IPP Lead Counsel bizarrely characterizes Mr. St. John's arguments as "without merit," "ludicrous," etc., Opp. (D.E. 4806) at 9-10, while studiously ignoring the Court's contrary characterizations. For example, Mr. St. John objected to the inflated rates for minimally experienced contract attorneys, and supported that objection with evidence the Court found "pretty good" and "a pretty effective point." Hr'g Tr. (D.E. 4512) at 56:12-16. In ruling on Mr. St. John's objection, the Court recognized that "[t]he courts have not spoken with one voice concerning the proper treatment of contract attorney costs . . . ." Order (D.E. 4740) at 13. And IPP Lead Counsel's opposition even points to cases in which objectors prevailed on the contract attorney issue with arguments he concedes were "very similar" to the arguments made by Mr. St. John. Opp. at 10 (referencing *In re Polyurethane Foam Antitrust Litig.*, No. 10-2196, 2016 WL 320182, at *22 (N.D. Ohio Jan. 27, 2016) and *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 374, 394-99 (S.D.N.Y. 2013)). Similarly, Mr. St. John relied on two cases from the Third Circuit to argue that the Court should discount any fee award to account for the impact of Samsung's guilty plea and the preclusive effect of a related European Commission decision. *See, e.g.* Obj. (D.E. 4106) at 11-12 (discussing *In re Prudential Ins. Co. of Am. Sales Litig.*, 148 F.3d 283 (3d Cir. 1998) and *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001); Reply ISO Obj. (D.E. 4439-2) at 4-5 (same); Obj. to R&R (D.E. 4439) at 7-8 (same). The Court noted that "[t]he[se] objections have some force because these decisions increased the legal risk for defendants." Order (D.E. 4740) at 8. IPP Counsel's other attacks on Mr. St. John's arguments equally miss the mark. One can disagree with Mr. St. John's objections. But arguments firmly grounded in the reasoning of other courts—including United States Courts of Appeals—can hardly be characterized as "without merit" or "ludicrous". Such intemperate remarks reflect neither on Mr. St. John nor his counsel.

### B.  Mr. St. John Conferred a Substantial Benefit on the Class.

This is not a case where Mr. St. John is seeking fees for points the Court can fairly say it would have reached on its own. Rather, the Court reached different conclusions than the Special Master on multiple factual issues, including one issue—whether the size of the fund was attributable to the size of the class—on which the Court made a finding directly contrary to the Special Master's finding. In sharp contrast to the Special Master's conclusion that the result achieved "weighs <u>heavily</u> in favor of an upward adjustment," the Court in turn concluded the result achieved supported only "a modest increase over the Ninth Circuit benchmark." The end result was that the Court reduced IPP Counsel's fee award by over $14 million. Unless the Special Master's findings were clearly erroneous, that reduction is directly linked to Mr. St. John's successfully urging the Court to review the Special Master's factual findings de novo. And what Mr. St. John accomplished—drawing the Court's attention to a legal error and inducing the Court to reverse its prior order, thereby achieving significant downstream consequences—fully justifies an award of fees. *See, e.g.*, *Rodriguez v. West Pub. Co.*, 563 F. 3d 948, 963, 968-69 (9th Cir. 2009) (reversing and remanding for determination of reasonable fee award: "The district court should have recognized that Objectors' position on the impropriety of incentive agreements had some effect on its decision to deny the request for incentive awards . . . .").

### C.  The Time Expended by Mr. St. John's Counsel Was Reasonable.

In support of his fee application, Mr. St. John provided a declaration by his counsel detailing the hours he expended by task. St. John Dec. (D.E. 4779-1) at ¶¶ 21-23. Those hours compare favorably with the hours expended by objectors in other cases. *See id.* at ¶ 13. Nowhere does Mr. Alioto suggest that any of those hours reflect an unreasonable expenditure of time vis-à-vis the tasks identified.

Having failed to undermine the reasonableness of Mr. St. John's fee request, Mr. Alioto instead suggests that an hour-by-hour parsing is required by Ninth Circuit law, misleadingly citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002). But *Vizicaino* case stands only for the proposition that an objector must confer a substantial benefit before being entitled to fees. *Vizcaino* in no way detracts from the rule that "objectors may claim entitlement to fees on the same equitable

principles as class counsel." *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012). To that end, Judge Breyer correctly and fully compensated an objector who conferred a $1,000,000 benefit by prevailing on a procedural issue. *In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. 07-05634, 2015 WL 4776946 (N.D. Cal. Aug. 13, 2015). It is Mr. Alioto's attack on Judge Breyer's opinion as "in direct contravention of Ninth Circuit law" that is entirely unsupported.[2]

### D. The Hourly Rate Claimed by Mr. St. John's Counsel Is Reasonable.

Although Mr. St. John's counsel has been retained by paying clients at non-contingent hourly rates of up to $600, he is only claiming $500 per hour for purposes of lodestar. *See* St. John Dec. (D.E. 4779-1) at ¶16. IPP Lead Counsel does not dispute that $500 per hour is a reasonable hourly rate for an attorney with the background, skill, experience, and reputation of Mr. St. John's counsel. Indeed, Mr. Alioto cannot given the numerous declarations by his colleagues—as well as by IPP Counsel's own expert—that such rates are reasonable for comparable attorneys. *See id.* at ¶¶ 18-20.

Instead, Mr. Alioto claims that the work performed by objectors is "generally characterized as 'straight forward,'" such that $350 per hour is an appropriate award Opp. (D.E. 4806) at 14. But if IPP Counsel's fee request posed only "straight forward" issues, why did that request need the support of a 50 page declaration by IPP Lead Counsel, a 142 page expert declaration, and a further 1,260 pages of declarations and (incomplete) exhibits, followed by backfill of yet more declarations? Why did IPP Counsel seek to impose the cost of a Special Master for such "straight forward" issues? And how can IPP Counsel then claim rates of up to $400 per hour for document review, i.e., work so "straight forward" that it may not even constitute the practice of law?

---

[2] Mr. Alioto does suggest that time expended after Mr. St. John's successful motion to amend should not be compensated, Opp. (D.E. 4806) at 13, as if Mr. St. John should not have vigorously pursued his goal of more funds for the class, less for the attorneys. Without a doubt, the effort required to pursue Mr. St. John's objection was significantly increased by IPP Counsel's seeking appointment of a Special Master, as well as IPP Counsel's demand for a document discovery and a deposition of Mr. St. John as part of their efforts to "weed out" objectors. *See* St. John Dec. at ¶¶ 10, 11, 21-23. The appropriate remedy for that increase is not to deny the associated fees to Mr. St. John, as IPP Lead Counsel suggests. Rather, the Court can assess some or all of any fee awarded to Mr. St. John's counsel against IPP Counsel's fee award. *See, e.g.*, *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 662 (E.D. Pa. 2015) ("I have reduced class counsel's requested fee award by the amount of [objector's] award.")

The work performed by Mr. St. John's counsel in identifying and successfully litigating an issue that yielded a $14 million benefit to the class was hardly straight-forward. Moreover, the return to the class on Mr. St. John's effort—$33,274 of benefit to the class per hour expended—far-exceeds that of IPP Counsel. Given facts such as these, it is hardly surprising that courts don't define success by ticking off arguments in briefing, as Mr. Alioto suggests. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) (holding that a litigant "who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised"); *Lewis v. Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982) ("[E]ven if a plaintiff does not ultimately prevail, attorneys' fees are nonetheless awardable if his action creates a substantial benefit.").

Mr. Alioto concludes by suggesting that *Transpacific* provides valuable guidance as to reasonable rates for attorneys similar to Mr. St. John's. Opp. (D.E. 4806) at 14. Mr. St. John agrees. The senior public interest attorney working on that objection claimed a private practice rate of $900 per hour, but sought only $750 per hour for his work. *In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. 07-05634 (N.D. Cal.) (ECF 1029-1) at ¶18. The attorney most comparable to Mr. St. John's—a former law clerk for a U.S. Court of Appeals with seven years of experience at a prominent law firm—claimed a private practice rate that "exceeded the $450 rate" she sought in *Transpacific. Id.* at ¶¶ 15-16. A third attorney who was five years out of law school ought $375 per hour. *Id.* at ¶19. Those attorneys claimed a combined lodestar of $107,872.50 for 224.8 hours of work that yielded a $1,021,882.28 benefit to the class. *Id.* at ¶20. As Mr. St. John's counsel noted in his original declaration, the *Transpacific* objectors sought only $90,000 in fees, i.e., less than lodestar, apparently based on a combination of public interest and tax law concerns. *Id.* at ¶¶ 12-14, 31; *see also* St. John Dec. (D.E. 4779-1) at ¶ 12 n.1. And despite the objectors prevailing only on a procedural point, Judge Breyer granted that request in full. *Transpacific*, 2015 WL 4776946 at *2-3. This Court should similarly grant Mr. St. John's request in full.[3]

## III. THE COURT SHOULD GRANT MR. ST. JOHN LEAVE TO FILE A SUPPLEMENTAL MOTION FOR EXPENSES

Notwithstanding IPP Lead Counsel's nonsequitur that "the Special Master's work is not complete," the Special Master's work *vis-à-vis* objectors has been complete for months. Objectors are not responsible for Special Master fees resulting from IPP Counsel's internecine squabbling over their fee award. *See, e.g.*, IPP Mot. Opp. (D.E. 4227) at 2 ("IPP Counsel intend to pay for all expenses related exclusively to their fee requests, such as compensation of the Special Master for his work on the Fee Motion."). But the Court need only grant Mr. St. John leave to file a supplemental motion for expenses to resolve this issue. See Fed. R. Civ. P. 23(h); 54(d).

## CONCLUSION

As noted in Mr. St. John's Motion, Courts and class action attorneys often bemoan the poor quality of objections. Here, Mr. St. John retained experienced, high quality counsel who prepared a detailed, fact-intensive objection to assist the Court in review IPP Counsel's Fee Motion. While the Court did not agree with Mr. St. John on every point, Mr. St. John identified and successfully litigated a procedural issue necessary for the Court to reach the result Mr. St. John sought, thereby yielding a $14,418,750 benefit to the class. Mr. St. John requests that he be awarded attorney's fees and expenses accordingly.

---

[3] Mr. Alioto also suggests that the Court should award Mr. St. John his counsel's "unenhanced lodestar". Mr. St. John request for $216,218 in attorney's fees is slightly below his counsel's lodestar at a rate of $500 per hour. *See* St. John Dec. (D.E. 4997-1) at ¶ 21. There is thus a "strong presumption" that the requested fee is reasonable. *Fischel v. Equitable Life Ins. Assurance Soc.*, 307 F.3d 997, 1007 (9th Cir. 2002). But if the Court exercises its discretion to use the lodestar method to award fees, the Court will err if it does not award a risk multiplier. *Compare* St. John Dec. (D.E. 4779-1) at ¶¶ 16, 26 *with Stanger v. China Elec. Motor, Inc.*, 812 F. 3d 734, 741 (9th Cir. 2016) ("'[T]he district court *must* apply a risk multiplier to the lodestar when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky."(emphasis added)).

Dated: September 7, 2016

Respectfully submitted,

/s/ Andrea Valdez

ANDREA VALDEZ (Cal. Bar No. 239082)
530 S. Lake Avenue, No. 574
Pasadena, CA 91101
Tel: (626) 817-6547
andrea.valdez.esq@gmail.com

JOSEPH SCOTT ST. JOHN (*pro hac vice*)
514 Mockingbird Drive
Long Beach, MS 39560
Tel: 410-212-3475
jscottstjohnpublic@gmail.com

*Attorneys for Objector Douglas W. St. John*

**CERTIFICATE OF SERVICE**

I, Andrea Valdez, declare as follows:

I am counsel of record for Objector Douglas W. St. John. I am over the age of eighteen years and not a party to this action.

On September 7, 2016, I caused the foregoing OBJECTOR DOUGLAS W. ST. JOHN'S REPLY ISO MOTION FOR ATTORNEY'S FEES AND EXPENSES to be served via the Court's CM/ECF system.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FOREGOING IS TRUE AND CORRECT.

Executed at Pasadena, California on September 7, 2016.

/s/ *Andrea Valdez*