1  BRAD D. BRIAN (State Bar No. 079001)
brad.brian@mto.com
2  GREGORY J. WEINGART (State Bar No. 157997)
gregory.weingart@mto.com
3  E. MARTIN ESTRADA (State Bar No. 223802)
martin.estrada@mto.com
4  355 South Grand Avenue
Thirty-Fifth Floor
5  Los Angeles, California 90071-1560
Telephone:     (213) 683-9100
6  Facsimile:      (213) 687-3702

7  *Attorneys for Defendant LG Electronics, Inc.*

8  UNITED STATES DISTRICT COURT

9  NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

10

| | |
|---|---|
| 11  IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944-JST |
| 12 | MDL No. 1917 |
| 13  This Document Relates to: | **DEFENDANT LG ELECTRONICS, INC.'S REPLY IN SUPPORT OF MOTION FOR BIFURCATION AND BENCH TRIAL** |
| 14  *Sears, Roebuck and Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd.*, No. 11-cv-05514 | [Supplemental Declaration of Cathleen H. Hartge filed concurrently herewith] |
| 15 | |
| 16 | |
| 17 | Judge: Honorable Jon S. Tigar |
| 18 | Date: September 20, 2016 |
| 19 | Time: 2:00 p.m. |
| | Courtroom: 9, 19th Floor |

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

    I.     The Scope of Sears/Kmart's Standing Is a Legal Question for the Court to Resolve. ........................................................................................................... 1

              A.     Sears/Kmart Ask The Court to Disregard Binding Precedent Set Forth in *ATM Fee*. .......................................**Error! Bookmark not defined.**

              B.     Other Circuits Are in Accord with *ATM Fee*. ............................................... 4

    II.    Holding a Separate Bench Trial on Control Relationships Prior to the Jury Trial on Liability and Damages Will Best Promote Judicial Efficiency.................. 5

              A.     Resolving the Scope of Sears/Kmart's Standing Prior to the Jury Trial Will Streamline Proceedings In This Case. .......................................... 5

              B.     Holding a Bench Trial on Standing Prior to the Jury Trial Will Not Result in Duplicative Evidentiary Presentations. ........................................... 8

    III.   A Pretrial Ruling on Control Relationships Is Necessary to Avoid Prejudice to LGE. .......................................................................................................... 10

CONCLUSION ..................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
   190 F.3d 1051 (9th Cir. 1999)................................................................3

*Arbaugh v. Y&H Corp.*,
   546 U.S. 500 (2006) ..........................................................................3

*In re ATM Fee Antitrust Litig.*,
   686 F.3d 741 (9th Cir. 2012)........................................................ *passim*

*Ballesteros v. Am. Standard Ins. Co. of Wisc.*,
   436 F. Supp. 2d 1070 (D. Ariz. 2006)....................................................3

*Barapind v. Enomoto*,
   400 F.3d 744 (9th Cir. 2005) (en banc)...............................................2, 3

*Bodie-Rickett & Assocs. v. Mars, Inc.*,
   957 F.2d 287 (6th Cir. 1992)................................................................5

*Cetacean Cmty. v. Bush*,
   386 F.3d 1169 (9th Cir. 2004)..............................................................2

*Chappell v. Mandeville*,
   706 F.3d 1052 (9th Cir. 2013)..............................................................3

*Davis & Cox v. Summa Corp.*,
   751 F.2d 1507 (9th Cir. 1985)..............................................................5

*Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*,
   523 F.3d 1116 (9th Cir. 2008)..............................................................3

*Glen Holly Entm't Inc. v. Tektronix Inc.*,
   352 F.3d 367 (9th Cir. 2003)................................................................3

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ..........................................................................3

*Jes Properties, Inc. v. USA Equestrian, Inc.*,
   458 F.3d 1224 (11th Cir. 2006)..........................................................4, 5

*Lerner v. Fleet Bank, N.A.*,
   318 F.3d 113 (2d Cir. 2003)................................................................4

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
   546 F.3d 991 (9th Cir. 2008)................................................................3

DEFENDANT LGE'S REPLY IN SUPPORT OF MOTION FOR BIFURCATION AND BENCH TRIAL

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Tippett*,
    542 F.3d 684 (9th Cir. 2008) ........................................................................2

*Todorov v. DCH Healthcare Auth.*,
    921 F.2d 1438 (11th Cir. 1991) .................................................................4, 5

*United States v. Johnson*,
    256 F.3d 895 (9th Cir. 2001) ........................................................................3

*United States v. Vidal-Mendoza*,
    705 F.3d 1012 (9th Cir. 2013) ......................................................................2

**RULES - OTHER**

Fed. R. Civ. P. 42(b) ..................................................................................1, 5, 10

**OTHER AUTHORITIES**

John J. Miles, 1 Health Care and Antitrust Law § 9:7 (2016) ............................4

Niall Lynch, *Managing Antitrust and Complex Business Trials—A View From the Bench*, 25 Competition 93 (2016) .........................................................10

**INTRODUCTION**

The parties agree that the outstanding standing disputes in this litigation are both significant and complex; indeed, they could lead to a roughly one-third reduction in the damages request that Sears/Kmart can present to the jury.  Accordingly, the concerns set forth in Federal Rule of Civil Procedure 42(b)—convenience, avoidance of prejudice, and expediting and economizing—all point in the same direction: this Court should resolve threshold questions of Sears/Kmart's standing in a separate bench trial, *before* the jury trial.

Nothing in Sears/Kmart's opposition papers raises any real doubt about this.  First, Sears/Kmart's constitutionality argument is little more than an inappropriate request that this Court disregard binding Ninth Circuit precedent that expressly holds that standing is a legal question for the Court to resolve.  Second, in arguing that a separate bench trial prior to a jury trial would be inefficient, Sears/Kmart's error is twofold—they fundamentally misapprehend the differences between withdrawal and control; and they fail to address the potential for devastatingly inefficient post-trial proceedings that could result from deferred control rulings.  Finally, Sears/Kmart's analogizing of LGE's standing challenges to run-of-the-mill damages disputes ignores the fundamental differences between a *standing* challenge that requires the Court's resolution, and a standard damages dispute that LGE agrees properly belongs in the jury's hands.  This Court should bifurcate proceedings and hold a brief bench trial before the jury trial to resolve the scope of Sears/Kmart's standing.

**ARGUMENT**

I.    **The Scope of Sears/Kmart's Standing Is a Legal Question for the Court to Resolve.**

    A.    **Sears/Kmart Ask The Court to Disregard Binding Precedent Set Forth in *ATM Fee*.**

In *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012), the Ninth Circuit's holding was unequivocal: "[s]tanding is a question of law for the district court to decide." *Id.* at 747.  "Because the court (and not a jury) decides standing, the district court must decide issues of fact necessary to make the standing determination." *Id.*  Sears/Kmart ask this Court to disregard this precedent, inviting it instead to treat *ATM Fee*'s lengthy discussion of the Ninth Circuit's

1    "Jurisdiction and Standard of Review" as mere dicta.  *See* Plaintiffs' Opposition to LG's Motion

2    for Bifurcation (Aug. 30, 2016), ECF No. 4804 (hereinafter "Opp'n") at 4.

3         Sears/Kmart's argument relies most fundamentally on a definition of "dicta" that the Ninth

4    Circuit itself has rejected.  According to Sears/Kmart, this Court can disregard the Ninth Circuit

5    on any holding "unnecessary to its ultimate result."  *Id.*  But as an *en banc* panel of the Ninth

6    Circuit has explained, the Circuit Court's expression of relevant law "bec[o]me[s] law of the

7    circuit, *regardless of whether it was in some technical sense 'necessary' to [its] disposition of the*

8    *case.*"  *Barapind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005) (en banc) (emphasis added).

9         In *Barapind*, the Ninth Circuit considered whether a prior panel's *entire* statement of law

10   was binding precedent, even though only *certain elements* of the legal standard that panel

11   announced were ultimately relevant to the disposition of the underlying case.  *See* 400 F.3d at 750-

12   51.  A lower court found that it was not bound by the earlier panel's statement of law, except for

13   those particular elements of the legal standard that came into play in the earlier panel's decision.

14   *Id.* at 750.

15        Sitting *en banc*, the Ninth Circuit issued a stern rebuke of the lower court's "mistaken

16   understanding of what constitutes circuit law."  *Id.*  In a *per curiam* opinion, *Barabind* explained

17   that the Ninth Circuit's "articulation" of the law "became law of the circuit," even as to those

18   portions of the legal standard not essential to the outcome of the appeal.  *Id.* at 750-51; *see also id.*

19   at 751 (contrasting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1173 (9th Cir. 2004), cited by

20   Sears/Kmart, and which involved "little more than rhetorical flourishes . . . . not intended to be a

21   statement of law, binding on future panels," *Bush*, 386 F.3d at 1174); *United States v. Vidal-*

22   *Mendoza*, 705 F.3d 1012, 1016 n.5 (9th Cir. 2013) ("Moreover, *Lopez-Velasquez*'s articulation of

23   the scope of an [immigration judge's] duty to inform is 'the law of the circuit, regardless of

24   whether it was in some technical sense "necessary" to our disposition of the case.'") (quoting

25   *Barapind*, 400 F.3d at 751); *In re Tippett*, 542 F.3d 684, 691 (9th Cir. 2008) ("Where a panel

26   confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned

27   consideration in a published opinion, that ruling becomes the law of the circuit, regardless of

28

1   whether doing so is necessary in some strict logical sense.") (internal quotation marks, alteration,

2   and citation omitted).

3        So too here.  The Ninth Circuit's conclusion that standing, including predicate fact

4   questions, are for the district court to resolve was a reasoned articulation of the scope and standard

5   of its review that is binding on this Court.  Although the *ATM Fee* panel did not have to resolve

6   disputed facts in order to determine standing in that case, its statement that "the court (and not a

7   jury) decides standing" is an unmistakable expression of the law that is to apply to the issue

8   arising in the appeal.  *ATM Fee*, 686 F.3d at 747.  Such a statement is not a dictum.[1]

9        In fact, before *ATM Fee*, the Ninth Circuit had already recognized that antitrust standing is

10  a question of law.  In *Delaware Valley Surgical Supply Inc. v. Johnson & Johnson*, 523 F.3d 1116

11  (9th Cir. 2008), the Ninth Circuit, in analyzing a plaintiff's antitrust standing to recover under

12  *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), stated at the outset: "Standing is a question of

13  *law* reviewed de novo."  *Del. Valley*, 423 F.3d at 1119 (emphasis added) (internal quotation marks

14  and citation omitted).  Ninth Circuit case law is otherwise replete with similar acknowledgements

15  that antitrust standing is a legal, not a jury, question.  *See, e.g.*, *Theme Promotions, Inc. v. News*

16  *Am. Mktg. FSI*, 546 F.3d 991, 999 (9th Cir. 2008) ("Antitrust standing is a question of law we

17  review de novo."); *Glen Holly Entm't Inc. v. Tektronix Inc.*, 352 F.3d 367, 368 (9th Cir. 2003)

18  (similar); *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999)

19  (similar).  So, while *ATM Fee* is the most recent and direct expression of circuit law on this issue,

20  it is merely one of many binding decisions indicating the same thing.  Sears/Kmart provide a

21  lengthy explication of the Supreme Court's decision in *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 511

22  (2006), which does not even contain the word "standing," but they cite not one Ninth Circuit

23

24

25  [1] It is telling that Sears/Kmart must resort to citation of a variety of non-precedential sources to
    support their (incorrect) description of what constitutes dicta in the Ninth Circuit.  *See* Opp'n at 4
26  & n.2 (citing *Chappell v. Mandeville*, 706 F.3d 1052, 1068 (9th Cir. 2013) (concurring opinion);
    *United States v. Johnson*, 256 F.3d 895, 919-21 (9th Cir. 2001) (concurring opinion); *Ballesteros*
27  *v. Am. Standard Ins. Co. of Wisc.*, 436 F. Supp. 2d 1070, 1077 (D. Ariz. 2006) (district court
    opinion)).  Sears/Kmart do not cite *Barapind*.
28

1   opinion casting doubt on the conclusions reached by the *ATM Fee* panel.  Nor can they—*ATM Fee*

2   is the law in the Ninth Circuit.

3         **B.      Other Circuits Are in Accord with *ATM Fee*.**

4         In support of their position, Sears/Kmart rely heavily on case law from the Second, Third

5   and D.C. Circuits that they assert distinguish between antitrust standing and "constitutional"

6   standing.[2]  Opp'n at 6.  Putting aside the fact that binding Ninth Circuit precedent already makes

7   clear that the court, not the jury, should resolve the scope of Sears/Kmart's standing, the

8   distinction set forth in these out-of-circuit cases is inapposite: LGE recognizes that different legal

9   standards apply to resolving questions of antitrust standing and "constitutional" standing.  *See,*

10  *e.g.*, John J. Miles, 1 Health Care and Antitrust Law § 9:7 (2016) ("Antitrust standing is far

11  narrower than constitutional standing under Article III of the Constitution.  Potential plaintiffs

12  may have Article III standing but not antitrust standing.").

13        While emphasizing these inapposite cases, Sears/Kmart omit discussion of authority from

14  other federal courts of appeals supporting the Ninth Circuit's clear statement in *ATM Fee* that

15  antitrust standing is a question of law for the court to resolve.  Eleventh Circuit law, for example,

16  is in accord not only with the Ninth Circuit's view, but also with the distinction drawn between

17  antitrust and constitutional standing in the Second, Third, and D.C. Circuit cases highlighted by

18  Sears/Kmart.  In *Jes Properties, Inc. v. USA Equestrian, Inc.*, 458 F.3d 1224 (11th Cir. 2006), the

19  Eleventh Circuit declared: "Whether a plaintiff has standing to prosecute an antitrust claim is a

20  question of law."  *Id.* at 1228 (citing *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1448

21  (11th Cir. 1991)).  The Eleventh Circuit went on, however, to distinguish between antitrust and

22  constitutional standing: "'Standing in an antitrust case involves more than the "case or

23  controversy" requirement that drives constitutional standing.'"  *Id.* (quoting *Todorov*, 921 F.2d at

24  1448).  "Rather, antitrust standing 'involves an analysis of prudential considerations aimed at

25  preserving the effective enforcement of the antitrust laws.'"  *Id.* (quoting *Todorov*, 921 F.2d at

26  _____

27  [2] Sears/Kmart's characterization of *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 129 (2d Cir. 2003) as "holding that standing under the Sherman and Clayton acts 'is essentially indistinguishable

28  from the merits of the action,'" Opp'n at 6, is curious—*Lerner* is a RICO, not an antitrust, case.

1448).  The Sixth Circuit has similarly concluded that "the question whether a plaintiff has

standing to sue under the Sherman and Clayton Acts is one of law." *Bodie-Rickett & Assocs. v.*

*Mars, Inc.*, 957 F.2d 287, 289 (6th Cir. 1992).

## II.   Holding a Separate Bench Trial on Control Relationships Prior to the Jury Trial on Liability and Damages Will Best Promote Judicial Efficiency.

As discussed in LGE's Motion, "[t]he district court has broad discretion to order separate

trials under Rule 42(b) of the Federal Rules of Civil Procedure," *Davis & Cox v. Summa Corp.*,

751 F.2d 1507, 1517 (9th Cir. 1985), *superseded on other grounds by* 28 U.S.C. § 1961, "[f]or

*convenience*, to avoid prejudice, *or to expedite or economize*," Fed. R. Civ. P. 42(b) (emphasis

added).  For the reasons discussed below, holding a separate bench trial on control prior to the jury

trial will best promote the Rule's goals of convenience, expedition, and economization.

### A.   Resolving the Scope of Sears/Kmart's Standing Prior to the Jury Trial Will Streamline Proceedings In This Case.

Definitively resolving the scope of Sears/Kmart's standing before the jury trial on damages

and liability will best promote the judicial efficiency goals underpinning Rule 42(b).  As an initial

matter, it could obviate the need for a jury trial altogether.  Much of the uncertainty remaining in

this litigation relates to the extent of Sears/Kmart's standing to sue.  Resolving that uncertainty

will give the parties greater clarity as to the strength of their respective positions heading into the

jury trial, further promoting settlement discussions—both for the Sears/Kmart case and for other

pending CRT cases to be remanded to other jurisdictions for trial.

If the jury trial does move forward, resolving outstanding control disputes prior to that trial

will have two important effects: streamlining the scope of purchases underpinning Sears/Kmart's

damages claim, and minimizing the risk of significant post-trial delays—including the risk that

post-trial control rulings may require a new jury trial altogether.

*Jury Trial Proceedings.*  It is beyond dispute that, if the Court concludes before the jury

trial that Sears/Kmart do not have standing to recover based on particular finished product

purchases, those purchases must be removed from the volume of commerce upon which they base

their damages claim.  If, for example, the Court concludes that no Hitachi entity was in a control

relationship with tube-maker SEG after March 2003, *see* Defendant LG Electronics, Inc.'s Motion

1   for Bifurcation and Bench Trial (Aug. 12, 2016), ECF No. 4759 ("hereinafter "Motion" or "Mot.")

2   at 7, then Sears/Kmart necessarily cannot seek damages based on any finished product purchases

3   from any Hitachi or Hitachi-controlled entity after that date.  To the extent that the Court

4   determines pretrial that Sears/Kmart fail to prove any particular standing relationship, the scope of

5   purchases at issue during the liability and damages jury trial will necessarily be narrower.

6       Sears/Kmart push back against this basic principle by pointing to LGE's joint-and-several

7   liability for acts of co-conspirators.  Opp'n at 10-11.  In so doing, they erroneously conflate LGE's

8   potential joint-and-several liability for the *tube* conspiracy with Sears/Kmart's standing to recover

9   based on certain *finished product* purchases.  *See, e.g.*, Opp'n at 15 n.12.  LGE does not dispute

10  that, for the time period as to which the jury finds that LGE participated in the conspiracy, it will

11  be jointly and severally liable for certain acts of co-conspirators.  But that has no bearing on

12  Sears/Kmart's standing to recover as to particular finished product purchases.  Going back to the

13  Hitachi example—if the jury determines that both Hitachi and LGE remained in the conspiracy

14  after March 2003, LGE would be liable for certain Hitachi acts in the *tube* conspiracy.  But that

15  does not change the fact that, if the Court determines pretrial that Sears/Kmart lack standing to

16  recover from Hitachi entities after March 2003, Sears/Kmart cannot recover any damages based on

17  any *finished product* purchases from Hitachi or Hitachi-controlled entities after that date.

18  Sears/Kmart may still attempt to present post-March-2003 evidence relating to Hitachi, but it

19  would be surprising to see them focus on Hitachi entities to the same degree once questions of

20  standing are resolved.

21      Sears/Kmart also fail to even mention, let alone meaningfully grapple with, the clear

22  language in *ATM Fee* that squarely contradicts their argument, and confirms that the relevant

23  control relationship must include the *seller* of the price-fixed product—not just a conspirator.  *See*

24  Mot. at 6 (citing discussion in *ATM Fee*, 686 F.3d at 755-58, where the Ninth Circuit rejected the

25  plaintiffs' standing argument as to defendant banks based on their allegation that these banks were

26  conspirators, and going on to conduct a control analysis between the banks and the ATM network

27  that had allegedly fixed prices); *see also ATM Fee*, 686 F.3d at 756 ("[W]hether a realistic

28  possibility of suit exists[] depends on the existence of ownership or control between the direct

purchaser and the *seller*.") (emphasis added); *id.* at 757 ("[T]his case deals with whether a realistic possibility of suit exists when a direct purchaser conspires with the *seller* to set a cost passed-on to Plaintiffs.") (emphasis added).  Again, using the Hitachi example, *ATM Fee* confirms that it would be insufficient for standing purposes to point to Hitachi's failure to withdraw from the alleged conspiracy; Sears/Kmart must also prove that Hitachi was in a control relationship with a seller of the price-fixed product.

     ***Post-Trial Proceedings.***  Resolving the scope of Sears/Kmart's standing prior to the jury trial will not only narrow the scope of purchases at issue during the jury trial; it will also streamline post-trial proceedings.

     The *Costco LCD* litigation before Judge Jones demonstrates why.  Consistent with *ATM Fee*, Judge Jones confirmed that it was up to him, not the jury, to hear evidence regarding and rule upon disputed control relationships.  *See* Opp'n at 8.  And he did so in a way similar to that requested by LGE here, in which the parties presented a set of stipulated facts and limited live testimony.  But rather than doing so pretrial, he held this "mini-bench" trial *during* jury proceedings, and did not rule on control relationships until *after* the jury verdict.  In addition to disrupting the jury trial and extending jurors' period of service, this procedure contributed to a seven-month post-verdict delay in entry of final judgment.

     Sears/Kmart quibble with this latter point, arguing that "*other* post-trial issues" contributed to the delay as well.  Opp'n at 12.  While the parties cannot parse with certainty the amount of delay attributable to control issues versus these "*other* post-trial issues," the fact is that even this seven-month delay could have been significantly worse.  Judge Jones ultimately concluded that the plaintiff had met its burden of proving antitrust standing as to all purchases underpinning its damages claim.  But had he concluded otherwise, the effect on the proceedings would have been disastrous—requiring that the court unravel, *post-hoc*, the jury's damages verdict and attempt to excise damages attributable to the offending purchases.  Without knowing, however, why the jury selected the damages award it did—whether because it adopted a certain overcharge rate, concluded that certain products were not affected by the conspiracy, or a combination of reasons—it likely would have been impossible for Judge Jones properly to adjust damages based

on the plaintiff's lack of standing to recover as to certain purchases. At worst, a new trial may have been required—one that properly limited the plaintiff's damages request to what it actually had standing to seek in the first instance.

That risk is present here. Beyond challenging Sears/Kmart's standing in a bench trial, LGE anticipates presenting a number of arguments to the jury as to why Sears/Kmart's damages request is inflated. The jury may accept Sears/Kmart's arguments; the jury may accept LGE's; it may accept some mix of both. If the jury ultimately awards damages, it will likely be all but impossible to determine, *post-hoc*, why the jury selected the precise amount that it did. If this Court determines post-trial that Sears/Kmart lack standing to recover as to certain purchases, determining the appropriate damages reduction will be a complex, time-consuming process—if even possible without an entirely new trial.[3] This Court should avoid this very real risk and resolve outstanding standing disputes prior to the jury trial.

> **B.** **Holding a Bench Trial on Standing Prior to the Jury Trial Will Not Result in Duplicative Evidentiary Presentations.**

Sears/Kmart assert repeatedly that even if this Court resolves the scope of Sears/Kmart's standing prior to the jury trial on liability and damages, they "would still be required to re-introduce nearly all the 'ownership or control' evidence from the bench trial into evidence during the jury trial." Opp'n at 7-8; *see also, e.g.*, *id.* at 12. Not so. The only reason that Sears/Kmart set forth for a potentially duplicative presentation of evidence is that similar evidence may be presented at the jury trial in the litigation of potential withdrawal defenses. *See id.* at 7-8. But any such overlap is far more limited than Sears/Kmart suggest—and possibly nonexistent. As an initial matter, it is unlikely that any disputed control relationship to be addressed in a bench trial would implicate a withdrawal defense to be litigated at the jury trial.[4] LGE does not currently

---

[3] For this same reason, this Court should reject Sears/Kmart's footnoted invitation to "submit[] the ownership/control issues to a jury in an advisory capacity," Opp'n at 15 n.11. In addition to providing no authority for this approach, Sears/Kmart fail to explain how this approach would eliminate the possibility that this Court would have to parse the jury's damages award *post-hoc*.

[4] One such control argument pertains to Sears/Kmart's finished product purchases from Zenith. *See* Mot. at 7-8. Sears/Kmart attack LGE's argument on the merits, pointing to a discovery

DEFENDANT LGE'S REPLY IN SUPPORT OF MOTION FOR BIFURCATION AND BENCH TRIAL

1   anticipate litigating before the jury the question whether Hitachi, Panasonic, Toshiba, or Philips

2   withdrew from the alleged conspiracy.  As to the remaining withdrawal argument that could

3   conceivably overlap with the bench trial—that as to LGE, related to the formation of LG.Philips

4   Displays ("LPD") in 2001—LGE does not, based on information currently available to it, plan to

5   challenge LGE's control over LPD.

6         What is more, it defies logic to suggest, even assuming some overlap between

7   Sears/Kmart's evidence on control relationships and withdrawal, that the evidence presented in

8   support of the latter would approach anything near the depth of the former.  As this Court has

9   already recognized, the issue of control is extraordinarily complex; the governing legal standards

10  required a twenty-page discussion in this Court's recent Order on Defendants' Motions for

11  Summary Judgment Relating to Standing and the Direct Purchaser Rule.  *See* ECF No. 4742 (Aug.

12  4, 2016) at 5-25.  In contrast, the legal test for a defendant's withdrawal from a conspiracy is well

13  established, entirely distinct from the control inquiry, and far more straightforward.  *See* ECF No.

14  4786 (Aug. 22, 2016) at 4-6 (two-page discussion of withdrawal legal standard).

15        In Sears/Kmart's own words, much of the evidence that they plan to present to prove their

16  standing is uniquely "complex."[5]  Opp'n at 12.  In support of their alleged standing to recover

17  based on purchases from Samsung Electronics, for example, Sears/Kmart intend to present "the

18

19

20

   _____

21  response in which LGE admitted, subject to a number of objections: "you cannot identify the CRT
    Manufacturer or the CRT used in any given CRT Product manufactured or sold by you."  Opp'n at
22  14 (quoting Opp'n Exhibit 6, at 25).  While LGE questions the propriety of litigating the merits of
    its control arguments at this stage, it feels compelled to point out that (1) in Sears/Kmart's
23  discovery requests, "you" was defined to include LGE and LG Electronics USA, Inc., not Zenith;
    *see* Supp'l Hartge Decl. Ex. 1, at 2-3; and (2) LGE's admission that it could not identify the
24  manufacturer of the tube in any *given* television or monitor is different from whether LGE is
    aware of aggregate patterns in Zenith's tube purchases.
25
   [5] The complexity of such evidence also defeats Sears/Kmart's argument that all standing disputes
26  "should have been part of . . . summary judgment," Opp'n at 13.  First, a party does not waive an
    argument by declining to raise it on summary judgment.  Second, Sears/Kmart's argument
27  squarely contradicts their assertions that the disputed control relationships present complex issues
    of fact that must be presented to the jury.
28

                                                  -9-                  3:07-cv-05944-JST; MDL 1917

1    direct testimony . . . of an expert witness, Dr. Stephan Haggard."[6]  *Id.*  "Further, for evidence of

2    corporate ownership, Plaintiffs currently intend to rely primarily on the testimony of their

3    summary witness, Dan Gill, who will provide visual aids that help demonstrate the nature of the

4    corporate relationships between the relevant entities."  *Id.*  Sears/Kmart anticipate that "the bench

5    trial will be based mostly on live testimony (including expert testimony)."  *Id.*  The complexity of

6    such evidence actually *supports* LGE's request for a separate, one-to-two day bench trial on

7    control relationships.  There is no reason that the *jury* should have to sit through "the direct

8    testimony and cross-examination of . . . Dr. Stephan Haggard," or Gill's anticipated testimony

9    regarding "evidence of corporate ownership," Opp'n at 12, where they will testify to issues that

10   the jury cannot even address.  Instead, the more efficient approach would be, like Judge Jones, to

11   hear evidence on control relationships outside the jury's presence.

12          As this Court has recognized, "in these big cases you have to make it easy for a jury . . . . If

13   you make it hard for them, they can't do a good job."  Niall Lynch, *Managing Antitrust and*

14   *Complex Business Trials—A View From the Bench*, 25 Competition 93, 95 (2016).  Imposing on

15   jurors an obligation to sit through evidence of control relationships would not only waste their

16   time, but threaten their ability to focus on evidence going to the complex issues that they *do* have

17   to resolve—which will already be challenging enough in a complicated, multi-week trial.

18   **III.    A Pretrial Ruling on Control Relationships Is Necessary to Avoid Prejudice to LGE.**

19          Just as a pretrial ruling on control relationships is the most "convenien[t]" option for the

20   parties and will "expedite and economize" proceedings, such a ruling will also "avoid prejudice"

21   to LGE that would result from Sears/Kmart's presentation of a damages request that it does not

22   even have the right, as a matter of law, to request.  *Cf.* Fed. R. Civ. P. 42(b).  Sears/Kmart attack

23   LGE's argument with a straw man, asserting: "If a dispute . . . over the amount of a plaintiff's

24   damages were sufficient to justify bifurcation, then *every* trial would bifurcate damages issues

25

26

27   _____

     [6] Dr. Haggard's proposed testimony is the subject of a pending motion *in limine*.  *See* ECF No.
28   3172 (Dec. 5, 2014).

1   from liability."  Opp'n at 15.  But the issue of Sears/Kmart's standing is no mere "dispute . . . over

2   the amount of [their] damages."  Damages are a jury question: standing is one for the Court.

3        LGE is not arguing that its disagreements with Sears/Kmart's expert models or allegations

4   regarding the scope of the conspiracy merit bifurcation; LGE fully recognizes that the resolution

5   of such questions is the jury's responsibility.  Instead, the issue is whether Sears/Kmart should be

6   able to put before the jury claims that LGE believes they have no right, as a matter of law, to bring

7   under clear Supreme Court precedent.  They should not.  And the best way to ensure that

8   Sears/Kmart do not present such claims to the jury—potentially amounting to some 30% of their

9   damages request—is to rule on outstanding control disputes before the jury trial on liability and

10  damages.

11                                    **CONCLUSION**

12        For the foregoing reasons, LGE requests that this Court bifurcate proceedings and hold a

13  brief, separate bench trial to determine the scope of Sears/Kmart's standing, in accordance with

14  the proposed schedule set forth in Appendix A of LGE's Motion.

15

16  DATED:  September 8, 2016                Respectfully submitted,

17                                           MUNGER, TOLLES & OLSON LLP
                                               BRAD D. BRIAN
18                                             GREGORY J. WEINGART
                                               E. MARTIN ESTRADA
19

20

21                                           By:      /s/ *Brad D. Brian*
                                                   BRAD D. BRIAN
22

23                                           *Attorneys for Defendant LG Electronics, Inc.*

24

25

26

27

28

DEFENDANT LGE'S REPLY IN SUPPORT OF MOTION FOR BIFURCATION AND BENCH TRIAL