1  CHRISTOPHER T. MICHELETTI (136446)
   JUDITH A. ZAHID (215418)
2  QIANWEI FU (242669)
   ZELLE LLP
3  44 Montgomery Street, Suite 3400
   San Francisco, CA 94104
4  Telephone: (415) 693-0700
   Facsimile:  (415) 693-0770
5  *cmicheletti@zelle.com*
   *jzahid@zelle.com*
6  *qfu@zelle.com*

7  *Counsel for Class Representative Kerry Lee Hall
   and Indirect Purchaser Plaintiffs*

8

9

                   **UNITED STATES DISTRICT COURT**
10
                  **NORTHERN DISTRICT OF CALIFORNIA**
11
                    **SAN FRANCISCO DIVISION**
12

13
   | **IN RE: CATHODE RAY TUBE (CRT)** | Master File No. 3:07-cv-5944 JST |
14 | **ANTITRUST LITIGATION** | |
   | | MDL No. 1917 |
15 | | |
   | This Document Relates to: | **RESPONSE OF ZELLE LLP TO CERTAIN** |
16 | | **OBJECTIONS TO LEAD COUNSEL'S** |
   | All Indirect Purchaser Actions | **PROPOSED ALLOCATION OF** |
17 | | **AGGREGATE FEE AWARD TO INDIRECT** |
   | | **PURCHASER PLAINTIFFS' COUNSEL** |
18 | | |
   | | Judge:    Honorable Jon S. Tigar |
19 | | |
   | | Before:   Special Master Martin Quinn, JAMS |
20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ...................................................................................................1

II.  GENERAL OVERVIEW OF ZELLE CASE CONTRIBUTIONS..........................................2

III. ARGUMENT ......................................................................................................3

    A.  Zelle Performed Extensive High-Level Work When the Case Was at Most Risk .............4

    B.  Zelle Had Primary Responsibility for Class Certification ....................................6

    C.  Zelle Handled Numerous Defendant and Expert Depositions...............................7

    D.  Zelle Conducted Efficient High-Level Document Review....................................8

    E.  Zelle's Invested in Substantial Post-Settlement Work........................................10

    F.  Response to Certain Objections of Other IPP Counsel.......................................10

IV.  CONCLUSION.....................................................................................................11

1    **I.      INTRODUCTION**

2           Pursuant to the Special Master's Order (Doc. 4748), Zelle LLP hereby responds to certain

3    objections to Lead Counsel ("LC")'s Proposed Allocation of Aggregate Fee Award to Indirect

4    Purchaser Plaintiffs' ("IPPs") Counsel.  Zelle trusts that LC made a good-faith effort to allocate

5    the fee award with the goal of fairly reflecting the relative contributions of the numerous firms

6    that participated in the prosecution of this litigation over the last nine years.  While Zelle

7    believes that its critical, high-level contributions were undervalued, and so advised LC, it did not

8    object to LC's allocation proposal in the interest of bringing the fee-related proceedings to an

9    expeditious closure.  However, Zelle is now compelled to respond to and contest meritless

10   objections filed by Kirby McInerney LLP ("Kirby") which directly and/or implicitly devalue

11   Zelle's contributions in the case, and to address Kirby's inflated lodestar and fee allocation due

12   to an error in Kirby's reported current rate lodestar.

13          Specifically, Kirby has submitted objections that (1) denigrate Zelle's vital role by

14   carving Zelle out of LC's designated "core" group of firms that contributed to the successful

15   prosecution of the case, and (2) devalue Zelle's case contributions by touting its own work as

16   having surpassed that of the other core firms.[1]  Kirby's overreach should be rejected.  By all

17   metrics applied by LC in its allocation and those emphasized in Kirby's objection, Zelle's

18   contributions were greater and more critical to the case success than those of Kirby.  As detailed

19   below, Zelle incurred risk early in the case by working on high-level case projects from the

20   outset in 2007; Zelle had primary or high-level responsibility, in collaboration with LC and other

21   core firms, for critical projects such as opposing motions to dismiss, class certification, expert

22   class and merits reports and related deposition discovery, and trial preparation, among other

23   tasks; and Zelle took 22 depositions of defendant witnesses and economic experts.  One reason

24   why Zelle was so integrally involved in key aspects of the litigation was because LC recognized

25

26   _____

27   [1] *See generally* Kirby Objection to LC's Proposed Allocation of Aggregate Fee Award to
     Indirect Purchaser Plaintiffs' Counsel (Doc. 4822).

28

RESPONSE OF ZELLE LLP TO CERTAIN OBJECTIONS TO LEAD COUNSEL'S PROPOSED FEE
ALLOCATION – CASE NO. 3:07-cv-5944, MDL No. 1917

1   the value of the knowhow and case strategies Zelle successfully implemented in the *LCDs* case

2   and other indirect purchaser ("IP") cases over the years.

3        As such, Zelle was justifiably and rightfully placed by LC among the "core" firms that

4   made major contributions to the case success[2], and its contributions are greater than, or at the

5   very least, equal to those of Kirby.  Indeed, inasmuch as LC assigned Zelle a higher multiplier

6   than Kirby, and Kirby acknowledges that its lodestar (to which that multiplier was applied) was

7   overstated due to a reporting error, there is ample basis here to reduce Kirby's fee allocation, and

8   increase Zelle's, to account for this error.[3]  Additionally, for all of the reasons detailed below,

9   any objections by other IPP counsel should have no negative impact on Zelle's fee allocation.

10  **II.      GENERAL OVERVIEW OF ZELLE CASE CONTRIBUTIONS**

11       Zelle's contributions to the success of this case are set out in detail in the firm's

12  declaration supporting IPPs' fee petition and Zelle's own fee petition.  *See* Declaration of

13  Christopher T. Micheletti in Support of Plaintiffs' Application for Attorneys' Fees, Expenses and

14  Incentive Awards (Doc. No. 4073-3), filed September 23, 2015 ("Micheletti Decl."), ¶¶ 6 – 35

15  (attached hereto as Exhibit 1).  In general, Zelle's roles in this litigation included assisting LC,

16  from inception through 2015, with the overall case strategy and direction; handling key elements

17  of defendants' pleading motions, including oral argument; major responsibilities for E-discovery,

18  including discovery protocols and database processes; supervision and pursuit of defendant and

19  third-party transactional data and related discovery; primary responsibility, with LC, for virtually

20  all aspects of the class certification proceedings, including the *Daubert* motion, expert work,

21  briefing, and oral argument; taking numerous Rule 30(b)(6) depositions of Panasonic and Philips

22  defendants and responsibility for *all* of the fact/merits depositions of Panasonic, a major

23  _____

24  [2] *See* LC's Proposed Allocation of Aggregate Award to Indirect Purchaser Plaintiffs' Counsel (Doc. 4790), at 3 and Ex. A.

25  [3] Because of an error in Kirby's reported current rate lodestar, Kirby's effective multiplier is
26  2.0986 instead of 1.9561.  *See* Kirby Objections to LC's Proposed Allocation of Aggregate Fee Award to Indirect Purchaser Plaintiffs' Counsel (Doc. 4822), at 11.  LC's proposed multiplier for Zelle is 1.9587.  *See* LC's [Revised] Proposed Allocation of Aggregate Fee Award to Indirect
27  Purchaser Plaintiffs' Counsel (Doc. 4790 and Doc. 4800), Ex. A.

28

RESPONSE OF ZELLE LLP TO CERTAIN OBJECTIONS TO LEAD COUNSEL'S PROPOSED FEE
ALLOCATION – CASE NO. 3:07-cv-5944, MDL No. 1917

1   defendant group; primary responsibility, with LC, for all the expert work in the case, including

2   expert merits reports and both offensive and defensive economic expert discovery; and,

3   significant roles in preparation for trial.  *See id*.

4         LC assigned major litigation tasks to Zelle, acknowledging the expertise Zelle acquired

5   from having already served significant roles on several IP cases arising out of the electronic

6   industry, including *In re: TFT-LCD (Flat Panel) Antitrust Litigation*, No. M 07-1827 SI, MDL

7   No. 1827 (N.D. Cal.) ("*LCDs*"), *In re Static Random Access Memory (SRAM) Antitrust*

8   *Litigation*, MDL No. 1819 (N.D. Cal.), and the *Microsoft I-V Cases*, J.C.C.P. No. 4106 (San

9   Francisco Super. Ct.).  As a result, from May 2008 to March 2015, LC repeatedly and

10  extensively conferred with Zelle about its experiences and successful strategies employed in

11  *LCDs* and other IP cases involving electronic component price-fixing claims.  By doing so, LC

12  made efficient and effective use of extensive and unique experience and valuable strategic

13  insights Zelle possessed and that would prove highly beneficial to the IPPs' litigation, from the

14  case inception to final resolution.  *See* Additional Declaration of Christopher T. Micheletti in

15  Support of Plaintiffs' Application for Attorneys' Fees, Expenses and Incentive Awards (Doc.

16  No. 4373-3), filed February 4, 2016 ("Supp. Micheletti Decl."), ¶ 6 (attached hereto as Exhibit

17  2); *see also* Micheletti Decl. ¶¶9, 11, 15, 26, 28 and 30 (referencing LC's use of Zelle's prior

18  case experience).

19  **III.   ARGUMENT**

20        By any measure, a review of the high-level work performed by Zelle justifiably places it

21  among the "core" firms that significantly contributed to the case's success, and belies any notion

22  that Kirby's contributions should be elevated above it.  Moreover, an examination of the metrics

23  upon which Kirby relies further supports maintaining Zelle's current multiplier or elevating it to

24  one that exceeds that of Kirby.

25

26

27

28

RESPONSE OF ZELLE LLP TO CERTAIN OBJECTIONS TO LEAD COUNSEL'S PROPOSED FEE
ALLOCATION – CASE NO. 3:07-cv-5944, MDL No. 1917

### A.   Zelle Performed Extensive High-Level Work When the Case Was at Most Risk

Zelle committed substantial resources on high-level work before the class was certified in 2013, when the case was at most risk.  One needs look no further than the outcomes of similar post-CAFA indirect-purchaser class actions in this district and others, where class certification was frequently denied.  Areeda *et al.* have observed that "most of the putative [IP] classes are not certified" due to judicial perception of their complexity, and views that whether a class-wide approach to proving damages "will work in an indirect purchaser case is highly questionable." Areeda & Hovenkamp, Antitrust Law:  An Analysis of Antitrust Principles and Their Application ¶ 396 (3d and 4th eds., 2016 Cum. Supp. 2010-2015).

While Kirby touts its "5-Year Total" of 1,819.25 hours from 2007 to 2011, it disingenuously omits Zelle's 4,192.40 hours worked for the same time period.  This early work by Zelle was complex work undertaken with enormous risk.  *See* Micheletti Decl. ¶¶ 6-18 (addressing Zelle work from 2007 to 2011).  Notably, 1,377 hours (76%) of Kirby's total reported time during those years was spent on document review.  In contrast, Zelle clocked less than 5% of its early time on document review, spending the majority of time on important pre-certification projects and assisting LC on critical case strategies.  *See id.*

LC valued Zelle's prior experience, and following its appointment, turned to Zelle for substantive discussions of case strategies.  These early discussions resulted in the retention of IPPs' expert whose work was instrumental in class certification and preparation of damages studies for trial.  Micheletti Decl. ¶ 9.  Zelle's early commitment is further reflected by its $25,000 contribution to the common litigation fund at initial assessment in mid-2008, on par with LC's contribution and at least five times the amount paid by all other firms at that time.[4]  *Id.*

---

[4] Zelle reported the 4th highest out-of-pocket expenses of all firms.  In addition to the initial assessment, it incurred $143,947 in travel, copying and miscellaneous expenses and paid an additional $10,000 post-settlement assessment.  Micheletti Decl. Ex. 3.

4

RESPONSE OF ZELLE LLP TO CERTAIN OBJECTIONS TO LEAD COUNSEL'S PROPOSED FEE ALLOCATION – CASE NO. 3:07-cv-5944, MDL No. 1917

During the pre-certification period (2007- June 2012), Zelle attorneys performed the following high-level tasks:

- **Case Strategies**.  Zelle frequently assisted LC with both overall *and* subject-specific case strategies and direction, with an eye toward class certification and subsequent merit litigation.  *See* Micheletti Decl. ¶¶ 9, 19, 12, 14-18, Ex. 2.

- **Expert Work**.  Zelle recommended and, with LC's authorization, retained applEcon as the economic expert─a significant commitment at an early stage of the case, given the millions of dollars of expert costs typically incurred in IP antitrust class actions.  *Id.* ¶ 9. Zelle worked closely with applEcon on tasks relating to class certification proceedings, including industry and market research, needed third-party discovery, and the development and assessment of evidence for measuring pass through.  *Id.* ¶10 – 11, 16, 18.

- **Pleadings & Motion Practice**.  At the direction of LC, Zelle assisted with and handled key elements of the pleadings, including service of process via Hague and Letters Rogatory on foreign defendants, motion for court-directed service pursuant to Fed. R. Civ. P. 4(f)(3), preparation of IPPs' Consolidated Amended Complaint and opposition to defendants' motion to dismiss (including legal sections on *AGC* and *FTAIA*), participation in oral argument before the Court on defendants' unsuccessful objections to the Special Master's report and recommendation, drafting state-law sections of IPPs' responses in the second round of motion to dismiss and presentation of oral argument on same.  *Id.* ¶¶ 8, 10, 12, 14, 16.

- **Strategies and Negotiation in Defendant, Plaintiff, and Third-Party Discovery**.  Zelle attorneys, together with its then-National Director of E-discovery, worked extensively on (i) the strategy, development, negotiation, and drafting of electronically stored information ("ESI") protocols; (ii) database, search term and document collection issues, strategies, and meet and confers; and (iii) document review planning and strategy.  *Id.* ¶¶ 15, 17.  In addition, Zelle assisted in the development of third-party discovery plan—to

5

obtain important downstream data for measuring pass through.  At LC's request and with

LC's oversight, Zelle also supervised other IPP counsel in their pursuit of third-party

discovery.  *Id.* ¶¶ 11, 13, 17.  At LC's further request, Zelle also advised co-counsel in

charge of class representative discovery responses on overall organization and strategies.

*See* Declaration of Christopher T. Micheletti in Support of Response of Zelle LLP to

Certain Objections to LC's Fee Allocation ("Micheletti Response Decl."), ¶ 10 (attached

hereto as Exhibit 3).  Zelle undertook these overarching tasks while concurrently

negotiating document and data productions with its own assigned defendants and third

parties, taking 30(b)(6) depositions, as well as responding to discovery on behalf of its

own clients.  Micheletti Decl. ¶¶ 13, 16, 18.

- ▪ ***Settlement Negotiations with Chunghwa***.  Zelle assisted LC in the research and
  evaluation of settlement possibilities with defendant Chunghwa Picture Tubes, Ltd.
  ("CPT"), attended CPT settlement meetings, and participated in multiple proffers by
  CPT.  *Id.* ¶¶ 10-11.  Zelle also assisted LC in obtaining the settlement approval and
  defeated the sole objector to the CPT settlement.  *Id.* ¶ 22.  This early settlement proved
  invaluable in drafting the consolidated amended complaint, moving for class certification,
  and pursuing discovery against other defendants.  The CPT settlement also made
  available $2.5 million to fund the IPP litigation.  *See* Order Approving Payment of
  Expenses from Settlement Fund (Doc. No. 1334).

## B.    Zelle Had Primary Responsibility for Class Certification

Zelle played a primary role in attaining the most important success in the case:  class

certification.  Class certification is the most critical pretrial aspect of a class action because the

case effectively ends if it is denied and no Rule 23(f) petition is granted, and it puts pressure on

the defendants to settle by increasing their liability at stake.  In 2012 - 2013, Zelle devoted

significant time and effort to class-certification-related tasks.  At LC's request, Zelle assumed the

responsibility of researching and drafting legal sections of the opening brief, supervising the

completion of expert reports concurrently submitted with the motion, preparing the reply brief

1    and oppositions to defendants' *Daubert* motion, arguing the certification and *Daubert* motions

2    before the Special Master at a lengthy six-hour hearing, opposing defendants' challenges to the

3    Special Master's R&R, and defeating defendants' Rule 23(f) petition.  Micheletti Decl. ¶¶ 23-26.

4    Throughout this time period, Zelle stayed in close consultation with LC and constant

5    communications with IPPs' expert, regarding both overall strategies and substantive issues.  *Id.*

6    Obtaining class certification and defeating defendants' 23(f) petition provided a foundation for

7    further settlement discussions and was vital to the ultimate success of the IPPs' case.  While

8    Kirby's work pertaining to class representatives and ascertainability issues were important

9    elements of the class certification proceedings, Zelle's far more significant contribution to this

10   critical stage of the case cannot be disputed.

11         **C.**     **Zelle Handled Numerous Defendant and Expert Depositions**

12        In its discussion of depositions, Kirby conveniently omits Zelle from the core group of

13   firms that took a significant number of depositions.  Kirby Objection, at 5.  In fact, Zelle first-

14   chaired and/or took the lead for IPPs in 22 depositions both before and after the class was

15   certified.  These included six 30(b)(6) depositions of Philips and Panasonic, ten merits

16   depositions of witnesses from Panasonic and Toshiba, all three depositions of defendants' joint

17   economic experts, and the three individual economic experts for Samsung, Philips and Hitachi.

18   *See* Micheletti Decl. ¶¶ 29, 31.  No firm in the case handled more substantive defendant

19   depositions than Zelle.  In comparison, Kirby took nine defendant depositions, all of which were

20   witnesses of SDI, a defendant that had already pleaded guilty.

21        While Kirby trumpeted its "lead role" in class representative depositions, such work is

22   often assigned to mid-level associates at Zelle, given the scripted and predictable approach taken

23   by defendants in these repetitive and generally uneventful depositions.  Micheletti Response

24   Decl. ¶ 11.  The same can be said about the Direct Action Plaintiff ("DAP") depositions, which

25   Kirby claims to potentially have had "grave implications for the economic aspects of IPPs'

26   case."  Kirby Objection, at 6.  As a member of Kirby's "hand-picked" team, Zelle also attended

27   several DAP depositions starting in March 2014, *in addition to* the 22 depositions mentioned

28

RESPONSE OF ZELLE LLP TO CERTAIN OBJECTIONS TO LEAD COUNSEL'S PROPOSED FEE
ALLOCATION – CASE NO. 3:07-cv-5944, MDL No. 1917

1    above. Micheletti Response Decl. ¶ 12.  These DAP depositions usually lasted at most a half-

2    day, requiring minimal advance preparation and generally no more than 15-minute real-time

3    examination by IPP counsel.  By August of 2014, at the direction of LC, IPP counsel

4    discontinued attending the DAP or third-party depositions because it was unnecessary to do so

5    any further, given the nature of the testimony being elicited.  *Id.*

6            **D.    Zelle Conducted Efficient High-Level Document Review**

7            Relatively little of Zelle's time is comprised of document review work.  This is

8    significant given LC's recognition that "drafting important briefs, taking or defending

9    depositions, working with experts, preparing for trial and involvement in the overall management

10   of the case and case strategy were valued higher than document review and routine discovery

11   work."  LC's Proposed Allocation, at 3.  Zelle reported 864.7 hours on document review (5.6%

12   of its total time), primarily conducted in 2011, 2012 and 2014.  Almost all 2011 document

13   review time was attributed to Zelle's two legal assistants on complex administrative tasks

14   associated with discovery.  Zelle's document review time in 2012 and 2014 was spent primarily

15   on high-level work, namely, supervising a tier-2 impact team and selecting trial exhibits,

16   respectively, at LC's request.  Micheletti Response Decl. ¶ 13.

17           By contrast, Kirby reported a total of 10,370.25 hours on document review (54.3% of its

18   total time), the majority of which were billed by Kirby's two Japanese reviewers.[5]  Indeed, the

19   document review teams were an indispensable part of the collaborative efforts and foreign

20   language reviewers provided additional value given the amount of foreign documents produced

21   in the case.  Kirby contributed reviewers, but the overall success of the review process and

22   management of the foreign review efforts are largely attributable to the leadership of Straus &

23   Boies LLP (another core firm) working in conjunction with LC, and not Kirby.

24

25   _____

26   [5] Curiously, Kirby was on the audit committee but failed to audit its own time which resulted in
     an error in Kirby's reported current rate lodestar.  *See* Kirby Objection, at 11 (stating that the
     document review cap for two of its attorneys failed to carry over and that its effective multiplier
27   is 2.0986).

28

RESPONSE OF ZELLE LLP TO CERTAIN OBJECTIONS TO LEAD COUNSEL'S PROPOSED FEE
ALLOCATION – CASE NO. 3:07-cv-5944, MDL No. 1917

1    Moreover, Kirby's ranking the work of Japanese reviewers above the reviewers of all

2    other foreign languages goes too far.  Kirby misrepresents that "Japanese is the most demanding

3    and complicated" of the three primary foreign languages involved in the case.  Although one can

4    have a linguistic debate on the hardest language to learn, the issue is irrelevant to a native

5    speaker of the foreign language.[6]

6    Notably, Zelle's advanced document review work in 2012 and 2014 was primarily

7    conducted by its bilingual attorney (Qianwei Fu), who, unlike Kirby's Japanese reviewers,

8    assumed many high-level responsibilities in all key aspects of the case.  *See* Micheletti Decl., Ex.

9    2.  As a member of the core team that successfully litigated *LCDs*, she brought tremendous

10   experience in prosecuting indirect-purchaser cases and working with economic experts.  *Id.,* Ex.

11   1.  Her knowledge about pass-through issues was highly regarded when LC requested her to

12   supervise the impact team while the team captains were temporarily assigned to 30(b)(6)

13   depositions in 2012.  Her extensive litigation experience and language ability was once again

14   proven valuable when LC needed trained eyes to review, designate, and rank trial exhibits in

15   2014.

16   Further exacerbating Kirby's excessive reliance on its document review work is the fact

17   that Kirby overstated the rates applicable to its document reviewers, and its lodestar by

18   $753,258.75.  As a result, Kirby actually received nearly a 2.1 multiplier on its true lodestar—a

19   vast portion of which was document review work.  For all of the reasons detailed herein, there is

20   no justification for elevating Kirby to this multiplier level above Zelle, and it would be entirely

21   reasonable for the Special Master to keep Kirby at a 1.9561 multiplier on its true lodestar,

22   thereby reducing its current fee allocation, and to distribute the difference to Zelle.

23

24

25

---

26   [6] One simple fact, as acknowledged by Kirby, refutes its own assertion: Chinese had a
     considerable influence on the vocabulary and phonology of Japanese.  *See* Kirby Objection, at
27   12 n.15 ("the Japanese written language uses many Chinese characters").

28

RESPONSE OF ZELLE LLP TO CERTAIN OBJECTIONS TO LEAD COUNSEL'S PROPOSED FEE
ALLOCATION – CASE NO. 3:07-cv-5944, MDL No. 1917

1

### E.     Zelle's Invested in Substantial Post-Settlement Work

2        Like other firms in the core group, Zelle invested in substantial post-settlement work

3  from June 1, 2015 through August 31, 2016, amounting to $470,366 lodestar at current rates.

4  Micheletti Response Decl. ¶ 4.  In that timeframe, Zelle has incurred additional expenses in the

5  amount of $13,937.70, including a $10,000 assessment payment requested by LC for Special

6  Master's fees.  *Id.*

7        Between June 2015 and August 2016, Zelle assisted LC in obtaining the final approval of

8  settlements with the remaining defendants.  In that regard, Zelle attorneys, among other things,

9  analyzed the objections to the settlements and plan of allocation, conducted discovery of certain

10  objectors, drafted sections in the final approval papers addressing objectors' arguments,

11  collaborated with LC on overall final approval arguments and strategies, prepared oppositions to

12  motions filed by objectors related to final approval, and assisted LC in further preparation for the

13  additional final approval-related hearing in March 2016 and related submissions requested by

14  Judge Tigar.  *See id.,* ¶¶ 7-8 (detailing Zelle's work on final approval of the settlements and

15  objectors' filings).  All such work was done at the request of, and in coordination with, LC.  *Id.,*

16  ¶ 8.  In addition, Zelle devoted substantial time on fee petition-related submissions.  *Id.,* ¶ 9.

17        Kirby touts its "leadership" role in post-settlement tasks and disregards other core firms'

18  collaborative efforts in, and contribution to, the same uncompensated work.  Kirby's

19  involvement in these tasks is no different in kind from other core firms and does not warrant

20  different treatment or a higher multiplier.

21

### F.     Response to Certain Objections of Other IPP Counsel

22        The objections made by certain other IPP counsel criticizing LC's application of its

23  allocation methodology also fail to recognize the nature and quality of work performed by

24  individual firms in each task category.  For instance, Law Office of Brian Barry contrasts Zelle's

25  document review rate and argues that the $350 per hour cap on its own document review time is

26

27

28

1  unfair.  *See* Objection of Law Office of Brian Barry (Doc. 4816), at ¶ 17.[7]  As detailed in Section

2  III.D., *supra*, Zelle only performed high-level document review tasks at LC's request, including

3  supervising Mr. Shea's work on the impact team.

4  **IV.    CONCLUSION**

5        For the foregoing reasons, Zelle respectfully submits that its multiplier and fee allocation

6  in the case either remain unchanged, or that it be increased at the expense of Kirby's allocation,

7  given that Kirby's lodestar was overstated, and that its actual multiplier unjustifiably exceeded

8  that of Zelle.

9  Dated: September 16, 2016                        Respectfully submitted,

10                                                   */s/ Christopher T. Micheletti*

11                                                  CHRISTOPHER T. MICHELETTI (136446)
                                                    JUDITH A. ZAHID (215418)
12                                                  QIANWEI FU (242669)
                                                    ZELLE LLP
13                                                  44 Montgomery Street, Suite 3400
                                                    San Francisco, CA 94104
14                                                  Telephone:     (415) 693-0700
                                                    Facsimile:     (415) 693-0770
15                                                  *cmicheletti@zelle.com*
                                                    *jzahid@zelle.com*
16                                                  *qfu@zelle.com*

17                                                  ***Counsel for Class Representative Kerry Lee Hall
                                                    and Indirect Purchaser Plaintiffs***

18

19

20

21  4815-9611-9096v1

22

23

24

25

26  _____
    [7] In his objection, Mr. Shea misstates the document review hours reported by Zelle attorneys.
27  *See* Objection of Law Office of Brian Barry (Doc. 4816), at ¶ 17; 9/23/15 Micheletti Decl., Ex.
    2.

28

RESPONSE OF ZELLE LLP TO CERTAIN OBJECTIONS TO LEAD COUNSEL'S PROPOSED FEE
ALLOCATION – CASE NO. 3:07-cv-5944, MDL No. 1917