MARIO N. ALIOTO, SBN: 56433
LAUREN C. CAPURRO, SBN: 241151
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679

*Lead Counsel for the Indirect Purchaser Plaintiffs*

JOSEPH GOLDBERG
FREEDMAN BOYD HOLLANDER
GOLDBERG URIAS & WARD P.A.
20 First Plaza N.W., Suite 700
Albuquerque, NM 87102
Telephone: (505) 842-9960
Facsimile: (505) 842-0761

*Attorneys for Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Case No. 3:07-cv-5944<br>MDL No. 1917 |
| | **CLASS ACTION** |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **DECLARATION OF JOSEPH GOLDBERG IN OPPOSITION TO OBJECTIONS TO IPP LEAD COUNSEL FEE ALLOCATION**<br><br>Judge:  Honorable Jon S. Tigar<br>Courtroom One, 17th Floor |

I, Joseph Goldberg, declare as follows:

1. I am a shareholder in the law firm of Freedman Boyd Hollander Goldberg Urias & Ward, P.A., in Albuquerque, New Mexico. I have been a lawyer for slightly more than 48 years. During that time, I have been a law clerk to a federal district court judge, a full-time law professor for more than 15 years, the cabinet secretary for the two largest state agencies in New Mexico (the New Mexico Human Services Department and the New Mexico Health and Environment Department), the General Counsel to the University of New Mexico and for the past twenty-five years or so in full-time private practice, focusing primarily on antitrust class actions.

2. Two objections (those of the Law offices of Francis Scarpulla and the Cooper & Kirkham law firm) to the proposed allocation of attorneys' fees by Lead Counsel address, among other things, the proposed allocations to my firm, as well as to the firms of Hulett Harper Stewart, LLP and Fine, Kaplan and Black R.P.C.. I submit this declaration to describe the circumstances of these three firms' advent to and participation in this case and to respond to certain assertions in Messrs. Scarpulla's and Cooper's objections.

3. While I was aware of this litigation for a number of years, neither I nor my firm was involved in the litigation until the second half of 2014. My first contact by any lawyer in the litigation was from Mr. Scarpulla, whom I had known from other litigation. Mr. Scarpulla called me in the summer of 2014, spoke to me about the upcoming trial then scheduled to commence in March 2015 and inquired whether I might be available to assist in trying the case. I told Mr. Scarpulla that I would be interested in assisting in the trial under the right circumstances. I did not hear from Mr. Scarpulla again about the trial, but sometime in late September or early October, I received a call from Mr. Alioto (whom I had not known prior to the call) who also asked me about my availability to assist in the trial of the case. I told Mr. Alioto the same thing that I told Mr. Scarpulla – that I would be interested in assisting in the right circumstances.

4. Over the next several weeks, I engaged in due diligence concerning how well the case had been worked up, and Mr. Alioto and I discussed various matters concerning the circumstances of I and my firm coming on board to assist in trying the case. It was my opinion

that, while there was much work to be done in preparing the case for trial, the evidence in the case had been worked up very well. Within several weeks, Mr. Alioto and I agreed (i) that I would be the lead trial lawyer at the trial; (ii) that if I determined that there was a need for more experienced resources for the trial, I could bring on the Fine Kaplan and Hulett Harper law firms; and (iii) about the details of the working relationship between Mr. Alioto and myself in the case.

5. My law firm is a relatively small law firm with a national practice that focuses on high stake civil and criminal litigation. While we have nine lawyers in the firm, I am the only lawyer whose practice focuses primarily on antitrust class actions. The decision that I would take on the responsibility of leading the trial preparation and trial in this matter had significant implications for me and my firm. It required me (and others in my firm) effectively to refuse other practice opportunities, to discontinue work on ongoing cases and transfer existing responsibilities that I had to other lawyers within my firm and in other firms. From my advent to this case in the Fall of 2014 until the middle of February 2015 (when the Court suspended the existing trial schedule), I "cleared my decks" and worked full-time on this case. I organized an excellent trial team (both for in-court and back office) of lawyers experienced in this case and trial tested, led the effort to organized the extensive discovery in this case to transmute facts into trial evidence, engaged excellent trial consultants and supervised the myriad of substantive tasks necessary to go to trial. By mid-February, we were prepared to go to trial starting in early March 2015. In addition, Mr. Alioto and I worked closely together and he came to consult with me extensively about settlement matters. I can think of no task that Mr. Alioto asked me to do that I refused.

6. From my due diligence, I determined that while this case had been well managed by Mr. Alioto and the discovery had been well developed, there was a need for trial lawyers with extensive experience in trying cases of this magnitude. After consulting with Mr. Alioto, I brought on the Fine Kaplan and Hulett Harper law firms. In my opinion and experience, both firms are among the best and trial tested antitrust law firms in the country. Dennis Stewart and the Hulett Harper law firm have tried multiple antitrust class actions in federal and state courts in California and around the country. I have known and worked with Mr. Stewart for many years and consider

him one of the best antitrust trial lawyers I know. I have also known the Fine Kaplan firm and Don Perelman and Matt Duncan within that firm for many years. I have had extensive experience with them and their firm, including in the *Urethanes* antitrust litigation in federal court in Kansas that resulted in a jury verdict against Dow Chemical Company in excess of $ 400 million and a judgment in excess of a billion dollars, affirmed by the Tenth Circuit. Mr. Perelman was a lead counsel in that case and I was the lead trial lawyer. Messrs. Stewart, Perelman and Duncan also cleared their decks, worked full-time on this case and added immeasurable value to the trial effort and team. Mr. Stewart and I would have led the in-court trial effort and Mr. Perelman would have led the back office.

7. Both Mr. Scarpulla and Mr. Cooper question the need to bring into this case my law firm and those of Fine Kaplan and Hulett Harper and insinuate that the time put into this case by the three firms was excessive. I note that it was Mr. Scarpulla who first approached me about taking command of the trial effort in this case. In that conversation in August 2014, Mr. Scarpulla told me that he felt that there were not sufficient trial-tested lawyers in this case to take on the task of readying a case as complex as this one for trial. I ultimately came to the same conclusion. That is what led me to the decision to bring on the Hulett Harper and Fine Kaplan firms. After my advent to this case and during the work-up to trial, I talked several times with Mr. Scarpulla and Mr. Cooper. Neither one objected to my (or the Fine Kaplan or Hulett Harper firms') presence in this case, and at that time both expressed approval and appreciation for the work we were doing. All three of our firms worked extensively, collegially and productively with the excellent lawyers who had been most involved in the case during the discovery phase. I believe the defendants in this case also recognized that we were effectively preparing the case for trial. At the time that our firms entered the case, the total settlements for the IPP class were $ 35 million. Within 9 months after our firms entering the case and commencing trial preparation, Mr. Alioto concluded settling with the remaining defendants for an additional $ 541.75 million.

8. Both Messrs. Scarpulla and Cooper insinuate that the lodestar of my firm and those of Hulett Harper and Fine Kaplan are excessive. The insinuation is incorrect. I requested all work

performed by both firms.  I reviewed all work performed by both firms and the time spent on the tasks was in my opinion very efficient and the quality of the work was outstanding, just as I expected.  The hourly rates charged by the Fine Kaplan and Hulett Harper firms are well within the hourly rates charged by other firms in this case, compare favorably to the hourly rates submitted by Messrs. Cooper and Scarpulla and I know have been approved by courts throughout the country in fee petitions.  As to my firm's hours and fees charged, every hour we submitted was devoted to necessary work for this case.  As to hourly rates, I made the decision many years ago that I would seek fees in common fund cases only at hourly rates that I charged the clients who paid hourly rates to my firm.  Thus, my hourly rate is $ 450 and is actually paid by numerous clients and has been approved by numerous courts around the country, including the *Urethanes* Court in Kansas this summer in approving attorneys' fees in that case.  I note that my hourly rate is far smaller (36 % and 54 %)  than those sought by Mr. Scarpulla ($ 1250) and Ms. Kirkham in Mr. Cooper's firm ($ 825) in this case.  My hourly rate is smaller than that of Mr. Bogdanov ($ 550), the associate in Mr. Cooper's office that Mr. Cooper attributes as having done the most work.

9. Mr. Cooper suggests that because our firms did not pay assessments to the common fund, we should not get multipliers but should be paid solely our hourly rates.  Mr. Cooper claims total of out-of-pocket expenses of $ 100,362, including a $ 50,000 assessment to the common fund.[1]  In the nine months or so that our firms were in this case, we expended $ 104,218 in out-of-pocket expenses.  If, in November 2014, Mr. Alioto had asked me to clear my decks and take over the trial effort in this case at solely my hourly rate (with no multiplier), I would have refused the request.

---

[1] Other firms also make objections to the fee allocation citing their contributions to the common fund.  For example, Robert Gralewski, throughout the objection filed on behalf of the Kirby McInerney firm, makes comparison of his firm's contributions to the common fund to my firm's contributions.  What Mr. Gralewski does not note, however, is the comparison in our hourly rates (Mr. Gralewski at $ 775 and my hourly rate at $ 450) or the comparison of expenses as a percentage of lodestar (2 % for Kirby McInerney and  7% for my firm).

4

DECLARATION OF JOSEPH GOLDBERG IN SUPPORT OF PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS
Case No. 3:07-cv-5944 SC, MDL No. 1917

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of September, 2016.

                 */s/ Joseph Goldberg*
                 JOSEPH GOLDBERG