Theresa D. Moore (99978)
Attorney At Law
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
tmoore@aliotolaw.com
*Counsel for Indirect Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Case No. 3:07-cv-5944 JST<br>MDL No. 1917<br><br>**CLASS ACTION** |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **REPLY OF THERESA D. MOORE, ESQ. TO LEAD COUNSEL'S PROPOSED ALLOCATION OF AGGREGATE FEE AWARD TO INDIRECT PURCHASER PLAINTIFFS' COUNSEL**<br><br>**Hearing Date Requested**<br>Time: None Set<br>Judge: Honorable John S. Tigar<br>Court :JAMS<br>Special Master: Martin Quinn, JAMS |

## INTRODUCTION

All of the facts detailed in my original papers remain uncontroverted, and demonstrate an eminently reasonable lodestar which reflects 9 years of my work that proved to be beneficial to all class members.

My original Fee Declaration given to Lead Counsel listed 250.6 hours of work over a 9 year period for a $209,768.65 lodestar. At the request of Lead Counsel I reduced my lodestar to $173,363.45, cut hours, voluntarily reduced my rate, and revised my Declaration twice. Lead Counsel then simply slashed the lodestar 70%, then further slashed it 10%, then gave me a negative multiplier, a further reduction, and finally settled at an even further reduced recommended allocation of $19,000.

---

Reply Of Theresa D. Moore, Esq. To Lead Counsel's Proposed Allocation Of Aggregate Fee Award To Indirect Purchaser Plaintiffs' Counsel
Case No. 3:07-cv-5944, MDL No. 1917

As detailed in my Declarations the amount is for the work I alone performed while at and on behalf of the Alioto Law Firm, from 2007 through May 2015. Lead Counsel (hereafter LC) is aware I am attorney of record on the docket for multiple class members, have related complaint on file reflected on the docket (e.g. Dkt 121), as well as a Notice of Appearance for the firm. (Dkt 189) Lead Counsel and I have had multiple communications regarding the case over the past 9 years, and is well aware I am an attorney of record on the case. I have conducted my self professionally, respectfully, courteously, at all times, and never with any animosity, acrimony or bald accusations. Everything I have put forth has always been strictly factual, in support of LC and the class members.

## MY WORK ON BEHALF OF THE CLASS MEMBERS CLIENTS

It is uncontroverted by LC that during the course of this 9 year litigation I never received any communications from LC telling me not to work on the case or read any document*s*. I was never told, nor did I ever receive anything that directed me to not read the docket or the filings LC served me with, or to limit my work in any way unless I was specifically told to do so by LC. As detailed in the opening papers, since LCs were not communicating, and no one seemed to have knowledge of the status of the case, I had an obligation to review the docket, and review particular filings. I needed to educate myself to fulfill my duty to the class and client class members. I was very prudent and discriminating in my reading of documents, and only did so when I felt it necessary for a legal or case strategic reason, and I did discuss and/or warn LC of certain issues that others did not see and advise him based on my experience in other antitrust cases and in LCD. All of my efforts were on behalf of class members and clients and in support of LC and the CRT case.

For 9 years I did keep up on the case; as a named attorney on the case I have a clear responsibility to the class and clients, and ethically cannot simply abandon my clients or the class for 9 years. Yet, in order to be efficient I only spent an average of 27 hours *per year* on the case. Or alternately stated, 2 hours per month.

2

Reply Of Theresa D. Moore, Esq. To Lead Counsel's Proposed Allocation Of Aggregate Fee Award To Indirect Purchaser Plaintiffs' Counsel

Case No. 3:07-cv-5944 SC, MDL No. 1917

In preparing my Fee Declarations I followed LC's requests at all times and removed time as instructed. (Dkt 4825-3 Decl Moore, Ex B, (final pages of exhibit)) I also further reduced my rate, and reduced my lodestar by nearly $40,000, approximately 20% of an already small lodestar, and gave a Declaration stating what Lead Counsel requested. For such a small lodestar the effect of doing so can have a harsh effect, and the result is dramatic and drastic. For example, LC complains that I did not do with my lodestar as they requested, and cites examples, yet 4 of their examples do not exist either in my original or revised sheets, 3 examples are Court Orders with .1 time allotted, 1 is a Defendants Decls ISO Motions also at .1.  The total time is absolutely minimal and not wasteful, and more accurately reflects the efficiencies I invoked.  I did everything LC asked, for instance all counsel were requested to remove PHVs, and I did in fact remove them when requested, as did the other counsel. Out of hundreds of PHV's filed, I had a total of 9 PHV entries in 2008 only representing less than 4 minutes, and there was a valid and strategic reason for each particular one. I have established a very good working relationship with multiple opposing counsel and attorneys general and strategies can alter depending on which lawyer is representing a client, knowing who your opposition or companion case lawyers are can affect and aid your actions to move the case forward. If I were in a particular position to help LC I needed to be aware of such, so for these few I opened it to see which attorney was representing a particular client.

## THE ATTORNEY FEE REQUEST IS DEMONSTRABLY REASONABLE

My fees requested are the sole fees requested by the firm. I am the only requesting attorney and the fees are not duplicative of work, and in fact are very conservative, amounting to only 27 hours per year for 9 years. (at least 2400 hours per year is a typical expected target for hours billed per year in an hourly law practice)

The hours, rates and lodestar herein are eminently reasonable, as exemplified and supported by Lead Counsel's own personal time sheets in LCD (Decl Moore, Ex A[1]), a case so often used as an exemplar, where LC's personal lodestar of  $232,325.00 for less than 5 ½ years

---

[1] Ex A filed conditionally under seal to give Counsel time determine whether to make a confidentiality designation

3

Reply Of Theresa D. Moore, Esq. To Lead Counsel's Proposed Allocation Of Aggregate Fee Award To Indirect Purchaser Plaintiffs' Counsel

Case No. 3:07-cv-5944 SC, MDL No. 1917

consists far and away of mostly "Rd further filings" or "Rd Rev", or "Rd" or "Rd Recent Filings", and where only a very much smaller portion reflects attorney or document review related entries. My lodestar for a smaller dollar amount is for a much longer 9 year period, effectively making my lodestar roughly one half, indicating these hours are efficient and necessary.  LC's personal LCD timesheets for all of this read and review was given a 1.8 multiplier.  There is no reason to do anything less herein, where LC's time sheets can serve as a model of the propriety of read and review of case documents.  Such a comparison with the above referenced time sheets also exemplifies the outstanding efficiency displayed in my lodestar, only 27 hours per year for 9 years.  There can be no wasted time for such a low billing level

This work was necessary on behalf of the class members and clients in order to abide by my ethical duty of representation. In addition, my CRT work and knowledge gained during this time proved worthy and ultimately did in fact result in the return of $14- $34 million to the class, thus demonstrating the value of my work from 2007 through May 2015 which is what is requested herein.

## KNOWLEDGE GAINED THROUGH THIS WORK SUBSTANTIALLY ENHANCED THE BENEFIT TO THE CLASS

The work performed during this period served as a foundation with knowledge of facts which were not previously provided to the court and which substantially enhanced the benefits to the class and contributed to the common fund.

In LCs Motions for Final Approval and for Attorney Fees LC consistently argued "exceptional results obtained for the Class", but did not inform the Court in its motions what the CRT damages were, and of the huge discrepancy with the LCD case to which it aligned itself. "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award" LC correctly argued, yet did not show the Court that the benefit was 20% of single damages.  Although the law was oft quoted, the omission of true facts which were legally required could have been interpreted as misleading to the Court. To avoid being reversed on appeal the Court needed to know the true and complete facts, especially because Counsel argued to the Court

4

Reply Of Theresa D. Moore, Esq. To Lead Counsel's Proposed Allocation Of Aggregate Fee Award To Indirect Purchaser Plaintiffs' Counsel

Case No. 3:07-cv-5944 SC, MDL No. 1917

that "The overall benefit to the class is the most critical factor" and comparison with similar cases to determine the benefit is a necessary factor.

The Court could not have been focused on, and had no accurate information about, the true monetary and damages comparison with LCD. Although counsel often equated CRT to the LCD case, the Motions for Final Approval and Attorney Fees failed to provide the Court with the necessary facts and amount that showed a true comparison and the Court would not have known these side by side comparisons if not shown by this counsel who was only aware of the CRT current proof and damage amounts through her work in staying abreast and well informed on CRT. In neither in its Motion for Final Approval nor in its Motion for Attorney Fees did LC ever tell the court the amount of the damages in CRT, yet the implication was the CRT damages were similar or less that the LCD damages, yet the opposite is the accurate fact, and in order to make the proper *Kerr* factors comparison the Court needed the facts which were only provided by this counsel and facts which were obtained through her 9 year work on the case. Due to this accurate factual comparison the court was able to make a determination with the necessary facts and well-informed comparison. With the evaluation of this information the court found,

 "On balance, the Court finds on one hand that the complexity, risk, and contingent nature of the fee all suggest an award above the 25 percent benchmark. On the other hand,

- *the size of the settlement as a percentage of the total potential recovery*,
- *the awards in comparable cases*, and
- *the need to conduct further litigation and provide additional notice related to the Chunghwa settlement*

which will have the effect of delaying implementation of the overall settlement suggest that any increase be modest in size. The Court finds that a fee of 27.5 percent strikes a fair balance." (formatting added for emphasis) (DKt 4740, at 9)

The Court relied on 3 factors to reduce the award granted in the Special Masters Report and Recommendation (Dkt 4351). The Court would and could not have addressed and relied on these issues of settlement percentage and awards in comparable cases without the facts detailed in my papers because the Court did not have the facts or complete information without my providing it to

5

Reply Of Theresa D. Moore, Esq. To Lead Counsel's Proposed Allocation Of Aggregate Fee Award To Indirect Purchaser Plaintiffs' Counsel

Case No. 3:07-cv-5944 SC, MDL No. 1917

the Court. In addition I was the first counsel to note the Chunghwa settlement was necessarily affected by this approval hearing, which subsequently led to the reseller notice issues. (Dkt 4113)

In essence the Court relied on the true facts and numbers that I provided which I only knew to present to the Court though the foundation gained through my 9 years of work on the case. I was only in possession of these facts from my work as a CRT IPP counsel. The Court's Order overruled a portion of the SM Report & Recommendation, lowered the fee award to 27.5% from the recommendation of 30% and returned a direct monetary benefit of $14 million to the class, it could also be said that $34 million was returned to the class since LC requested a 33% fee, and then objected to the SM R&R and again was requesting 33%.

Lead Counsel admits this counsel's role in returning the money to the class in previous filings while arguing that another filer had no hand in informing the Court of this information, and citing to my filing as having previously informed the Court. (Dkt 4806 fn 2, "see ECF No. 4113 at 8-9"). Although that filer may have generally echoed it at a later date, the facts were consistently presented by me alone on multiple occasions. Facts which LC never presented to Judge Tigar in either its Motion For Final Approval or Motion For Attorney Fees. (see e.g. Dkt 4113, 4436, 4436-4, Ex I, Ex J). The beneficiaries were the class members who saw their damage award rise by at least $14 million and up to $34 million, from the previously awarded fee.

Some exemplars of the facts and information not contained in the Motions before the Court, but known by this counsel as a CRT IPP Counsel, and given to the Court to properly evaluate the settlement approval request and the attorney fee, as required by case law, *and to avoid an appellate issue*, are:

> In a case where the damages are $2.768 Billion, $8.304 Billion trebled, and the defendants (one of whom is the third most valuable company in the world) are paying only a very small fraction of 1/5 of the damages, Dkt 4436 P12, 19-23
>
> Since Class Counsel likens this action so closely to the In re TFT-LCD (Flat Panel) Antitrust Litigation and cites similar problems, in order to grant final approval the court needs evidentiary support to understand why there is such a discrepancy in settlement. While a very large number, the evidence seems to show that $576 million settlement fund is insufficient to fairly compensate the class members and deter similar conduct in the future. In LCD, the potential

single damages were approximately $800 million less than CRT, but LCD settled for almost twice the CRT settlement. LCD settled at $1.1 Billion, and CRT $576 million. Moreover, the LCD litigation recovered one-half of single damages, but CRT recovered only one-fifth of single damages. In order to approve the settlement, the Court must be provided with the evidentiary foundation substantiating such a discrepancy. Dkt 4436-4 Ex J, p 14, 11-24,

Although Class Counsel likens this action to the *In re TFT-LCD (Flat Panel) Antitrust Litigation* and cites similar problems, in reality, the CRT conspiracy continued for a much longer period of time and was much better organized than the LCD conspiracy. In LCD, the potential single damages were approximately $800 million less than CRT, but LCD settled for almost twice the CRT settlement. LCD settled at $1.1 Billion, and CRT $576 million. Moreover, the LCD litigation recovered one-half of single damages, but the CRT recovered only one-fifth of single damages.

While a large number, ….the $576 million settlement fund is insufficient to fairly compensate the class members and deter similar conduct in the future. ….
"No objection is made as to Class Counsel's request of one-third of the total Settlement for attorneys' fees for the result they have achieved. Although it is a very large settlement, *it must be properly evaluated*, and as written above, the class deserves much more. Dkt 4113, p 8-9, 4436-4 Ex I ; p 8, 25 –p 9, 21-22 (emphasis in original)

LC had many opportunities to provide this further evidence, and was requested to do so on multiple occasions (see eg Tx 1.9.15), but the evidence was never presented. Thus the Court took these previously missing facts into consideration, and without any further explanation or evidence provided by LC, reviewed and reduced the 33% requested amount, and the 30% awarded by the SM Report and Recommendation (Dkt 4351), to 27.5% and returned the funds amounting to $14 to $34 million to the class.

The above makes abundantly clear that the factual and legal knowledge gained during the duration of this case benefited the class, and would not have otherwise occurred. The Court was not focused on and had no knowledge of all accurate facts for comparison until these true facts gained during the life of this case were provided. It is the proper evaluation that is key, if other evidence had been supplied, the Court could still have considered these facts but not reduced the fee, and the settlement would still have been protected from appeal on this issue.

## CONCLUSION

I am the only attorney from the law firm requesting fees.  No duplication of my efforts exists, and my reading and analyzing was targeted and focused, as were my ideas and advice relayed to LC.  My rates billed are strikingly economical and are in fact submitted at my 2008 hourly rates. My lodestar is one of the lowest and most efficient in the entire case.

As demonstrated in opening and reply papers, my work reflected in my lodestar was necessary for the class, my clients, and my ethical duty as an officer of the court and a protector of the class. I am the original and only attorney who consistently put forth the above facts leading to an increased and substantially enhanced benefit to the class based on the amount of class damage and recovery in CRT v LCD, the amount of CRT damages was not in LC's Motion for Approval nor Motion for Attorney Fees, as it should have been. I am the only one who consistently advocated that these facts be considered per instructional case law. By doing so an appellate issue was stopped in its tracks.  The standard is not whether a district court should or should not apply a particular percentage, but rather "whether in arriving at its percentage it considered *all the circumstances* of the case and reached a reasonable percentage"  Vizcaino v Microsoft Corp. (Vizcaino II) 290 F.3rd 1043, 1048  (9th Cir 2002) (emphasis added)

I have conducted myself professionally, respectfully, courteously, and truthfully at all times, and never with any animosity or acrimony. Everything I have put forth has always been strictly factual, without assumptions, denigrations, lack of foundation, or bald assertions, and has only been for the benefit of the class, and never at cross purposes to LC.

The requested amount is a valid and appropriate request, and is in fact in alignment with, and is even more conservative than LC's own personal request in LCD, which LC so often uses as a comparison. All of my efforts in CRT were targeted, strategic efforts to bolster and strengthen the case.

As stated in my opening papers, I request at minimum to be paid for my average 27 hours of work per year, during the course of this case per the attached Declarations plus a fair multiplier,

8

Reply Of Theresa D. Moore, Esq. To Lead Counsel's Proposed Allocation Of Aggregate Fee Award To Indirect Purchaser Plaintiffs' Counsel

Case No. 3:07-cv-5944 SC, MDL No. 1917

or a fair contingency of the fee awarded to IPP counsel.  A contingency of .75 as a percentage of the overall fee awarded is fair, but used as a negative lodestar multiplier as another means to reduce an efficient and fair lodestar, as was done to me here, is inappropriate, and unfair. I request my full and original lodestar of $209,768.65, with a positive multiplier attached that would also compensate for the dramatically reduced hours and rate cut by counsel, as well as the time delay. A multiplier in the 1.5 range for such a small lodestar would at least compensate for delay in receiving the money, and at 2.5-3.0  would also compensate for the drastically reduced rates and hours on an already low, efficient and fair lodestar.

Respectfully Submitted,

Dated: September 23, 2016

*/s/ Theresa D .Moore*
Theresa. D. Moore     (99978)
Attorney At Law
One Sansome Street, 35th Floor
San Francisco, CA 94104

*Counsel for Indirect Purchaser Plaintiffs*