KIRBY McINERNEY LLP
Robert J. Gralewski, Jr. (196410)
600 B Street, Suite 1900
San Diego, CA 92101
Tel: (619) 398-4340
bgralewski@kmllp.com

and

Daniel Hume
825 3rd Avenue
New York, NY 10022
Tel: (212) 371-6600
dhume@kmllp.com

*Counsel for Class Representatives*
*Kerry Lee Hall, Daniel Riebow, and the*
*Certified Class of Indirect Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br>All Indirect Purchaser Actions | Case No. CV-07-5944-JST<br>MDL No. 1917<br><br>**CLASS ACTION**<br><br>**KIRBY McINERNEY LLP'S RESPONSE TO LEAD COUNSEL'S OMNIBUS RESPONSE TO OBJECTIONS TO PROPOSED ALLOCATION OF AGGREGATE FEE AWARD TO INDIRECT PURCHASER PLAINTIFFS' COUNSEL**<br><br>Court: JAMS<br>Special Master: Martin Quinn, JAMS<br>Judge: Honorable Jon S. Tigar |

---

KIRBY McINERNEY LLP'S RESPONSE TO LEAD COUNSEL'S OMNIBUS RESPONSE TO OBJECTIONS TO PROPOSED
ALLOCATION OF AGGREGATE FEE AWARD TO INDIRECT PURCHASER PLAINTIFFS' COUNSEL
CASE NO. CV-07-5944-JST, MDL NO. 1917

**TABLE OF CONTENTS**

I. INTRODUCTION..................................................................................................................1

II. ARGUMENT........................................................................................................................1

    A.    Lead Counsel Relied on Kirby McInerney for Assistance with the Coding Manual, Coding Sheet, and Work Flows before the Tier 1 Document Review Commenced ..................................................................................................1

    B.    Lead Counsel and Zelle Relied on Kirby McInerney for Support with the Economic Issues Involved in Class Certification ......................................................2

    C.    Lead Counsel Acknowledges that the DAP Depositions Had Pass-Through Implications ..................................................................................................................2

    D.    Lead Counsel, Straus & Boies, and Other Senior Lawyers Relied on Kirby McInerney's Japanese Lawyers to Help Make Important Judgment Calls .............3

    E.    "Kirby McInerney Led All Class Representative Discovery" ...............................4

    F.    Kirby McInerney Performed a Myriad of High Level Trial Preparation Tasks......5

    G.    Lead Counsel and Mr. Goldberg Put Kirby McInerney in Charge of Testing the Class Representatives at IPPs' Mock Jury Exercise.................................................6

    H.    Kirby McInerney's Rates are Appropriate ............................................................6

    I.    Kirby McInerney Performed a Variety of Tasks After Settlement in Addition to Being Responsible for Objector Discovery............................................................7

III. CONCLUSION. ...................................................................................................................7

**I.      INTRODUCTION**

Kirby McInerney LLP ("KM") respectfully responds to and corrects certain mistaken factual assertions by Lead Counsel ("LC") in its Omnibus Response to Objections to Proposed Allocation of Aggregate Fee Award to Indirect Purchaser Plaintiffs' Counsel, Dkt. No. 4853 ("LC Brief"). Contrary to the picture LC now paints, KM performed high level work at great risk and worked cooperatively with the other core firms in doing so. Indeed, KM's work is one of the material causes for the excellent settlement achieved. As one of the select "outstanding contributors"[1] to the exceptional result in this case, KM should be awarded a multiplier more in line with LC and the other core firms.

**II.     ARGUMENT**

There is ample evidentiary support for each of KM's responses below in the form of email correspondence with LC and others that KM would consent to share with the Special Master on an *in camera* basis if requested. Declaration of Robert J. Gralewski, Jr. in Support of Kirby McInerney LLP's Response to Lead Counsel's Omnibus Response to Objections to Proposed Allocation of Aggregate Fee Award to Indirect Purchaser Plaintiffs' Counsel ("9/23/16 Gralewski Decl."), at ¶ 2.

**A.     Lead Counsel Relied on Kirby McInerney for Assistance with the Coding Manual, Coding Sheet, and Work Flows Before the Tier 1 Document Review Commenced**

LC downplays KM's assistance with the inception of the document review and claims to have worked with only three other firms (not KM) on this important foundational aspect of the case. LC Brief at 34. LC claims that KM had "no involvement" in "higher level work" like drafting the coding manual to be provided to all document reviewers or with establishing any of the review protocols. *Id.*

In fact, Mr. Gralewski was one of a limited number of senior lawyers who LC invited to participate in a preliminary review in order to refine the structure of the document review and

---

[1] *See* Supplemental Report and Recommendation of Special Master Re Allocation of Attorneys' Fees in the Indirect-Purchaser Class Action, ECF No. 7375, Case No. 3:07-md-01827, *In re TFT-LCD Antitrust Litig*.

coding sheet and to develop, test, and refine search terms.  In connection with this preliminary review, Mr. Gralewski, among other things, provided detailed comments related to specific issue codes and document types to include on a revised coding form and was asked to provide feedback with respect to the FTAIA for the coding manual.

### B. Lead Counsel and Zelle Relied on Kirby McInerney for Support with the Economic Issues Involved in Class Certification

LC argues that "Kirby's role at class certification was limited to providing factual information about the class representatives' CRT product purchases, and any testimony relevant to adequacy or ascertainability."[2]  LC Brief at 35.  Not so.

Shortly before opposing class certification, Defendants noticed the depositions of Costco and Best Buy.  At the time, LC acknowledged that these depositions sought discovery into issues raised in IPPs' pending class certification motion.  LC put KM in charge of these depositions.[3]  Ultimately, IPPs relied upon the testimony elicited by KM to rebut Defendants' assertions that the entirety of Dr. Janet Netz's qualitative and quantitative analyses of pass-through should be disregarded because of Costco's and Best Buy's testimony.  *See* Reply Brief in Support of Indirect-Purchaser Plaintiffs' Motion for Class Certification, Dkt. No. 1653, at 35.

### C. Lead Counsel Acknowledges that the DAP Depositions Had Pass-Through Implications

LC also downplays the importance of the DAP deposition effort that LC asked KM to lead. LC now suggests KM was just supposed to "monitor" the depositions and "simply listen."  LC Brief at 36.

---

[2] Adequacy and ascertainability were seriously contested.  In connection with this part of the motion, KM oversaw, with Lawrence Papale's help, the creation of a 24-page single-spaced appendix to LC's reply declaration. This appendix collected all of the unique evidence establishing each class representative's adequacy.  *See* Appendix A to Declaration of Mario N. Alioto in Support of Reply Brief in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Dkt. No. 1635. Mr. Gralewski also worked closely with IPPs' expert on developing ways to determine how to identify the manufacturers of the CRTs inside of products at issue, whether still in one's possession or not. 9/23/16 Gralewski Decl. at ¶ 3. And as the Special Master may recall, KM competently argued all of these issues at the hearing.

[3] Mr. Gralewski was familiar with Costco's pricing methodologies because Mr. Gralewski had conducted Costco's deposition in *In re Static Random Access Memory (SRAM) Antitrust Litig*.

LC acknowledges that the DAP depositions had potentially negative ramifications related to pass-through and assigned Mr. Gralewski to cover them. *Id.* If Mr. Gralewski was unable to do so, then LC asked that he be available to other IPP lawyers during the course of the depositions in case any issues arose.

In addition, Zelle relied on KM's assistance to mine the DAP depositions for economic evidence in connection with Dr. Netz's and Dr. Janusz Ordover's depositions.[4] Indeed, Dr. Ordover had cited deposition testimony from several of the DAP depositions in his report, and KM led the effort to provide the economic evidence to rebut those parts of the report.

LC also relied on the testimony that KM and other IPP lawyers were able to elicit during the DAP depositions when opposing Defendants' motions for summary judgment. And in connection with trial preparation, Defendants had heavily designated from the DAP depositions, and LC formed a team that included Mr. Harris to review those designations, object to the designations, and counter-designate helpful testimony elicited by KM and other IPP counsel regarding downstream pass-through.

### D. Lead Counsel, Straus & Boies, and Other Senior Lawyers Relied on Kirby McInerney's Japanese Lawyers to Help Make Important Judgment Calls

LC now asserts that KM's Japanese speaking lawyers Akiko Kikuchi and Sawaka Nagano "did not lead anything, and were 'in charge' of nothing and no one." LC Brief at 34. However, LC acknowledges that KM's Japanese speaking lawyers handled translation objections and served as check translators at depositions. *Id*.

Ms. Kikuchi and then Ms. Nagano both played an important role in the case. 9/23/16 Gralewski Decl. at ¶ 4. Both worked closely with Nathan Cihlar, the head of the team of Korean, Japanese, and Chinese lawyers. *Id*. Mr. Cihlar gave Ms. Kikuchi supervisory responsibilities that included overseeing the collection of evidence and other information from other Japanese reviewers on the team and summarizing the progress of all of the Japanese reviewers. *Id*. After Ms. Kikuchi left KM, Ms. Nagano replaced her on the foreign language team. *Id*. Because of her

---

[4] In addition to Mr. Gralewski, William Harris, Elizabeth Brehm, and Fatima Brizuela (all with KM) worked on this high level project.

superior Japanese language ability and her quick grasp of the case, Ms. Nagano was tasked with higher level assignments such as helping with transliteration for objection responses and serving as a check translator for depositions. *Id*. Ms. Nagano's higher level assignments included providing advice about judgment calls that were made at depositions and feedback to permit LC to decide whether to include particular Japanese documents on IPPs' trial exhibit list. In addition to these high level tasks, KM's Japanese lawyers were repeatedly called upon to do more sophisticated, nuanced document review.

### E. "Kirby McInerney Led All Class Representative Discovery"

LC claims that KM overstated its role with respect to defensive discovery because "a lot of the work was already done before Kirby got involved in the case." LC Brief at 33. Setting aside the fact that LC stated that, "Kirby McInerney led all class representative discovery" in Mr. Alioto's Supplemental Declaration in Support of Indirect Purchaser Plaintiffs' Motion for Award of Attorneys' Fees (Dkt. No. 4373-1, at ¶ 9), the fact of the matter is that all responses had to be amended and productions supplemented after KM took over this aspect of the case. In addition, more than one wave of new class representatives each necessitated a similar degree of attention. Finally, it's not entirely accurate to say that, "Lead Counsel and other IPP lawyers were heavily involved in preparing the class representatives, working with local counsel and attended many of the depositions." LC Brief at 33. Although it was important to have local counsel attend the depositions, they were not heavily involved. And Lead Counsel attended some but not "many" of the depositions which occurred in the Plaintiffs' home towns.[5]

With respect to the defense of the class representative depositions, LC asserts that, "it almost goes without saying that defending such depositions is not high level work." LC Brief at 35. This is certainly not the case generally and was not the case here. In fact, LC staffed these depositions with senior people for good reason as the testimony of class representatives is usually treated by defendants as a prime means of attacking plaintiffs' case.

//

---

[5] LC did defend two Plaintiff depositions.

4
KIRBY McINERNEY LLP'S RESPONSE TO LEAD COUNSEL'S OMNIBUS RESPONSE TO OBJECTIONS TO PROPOSED
ALLOCATION OF AGGREGATE FEE AWARD TO INDIRECT PURCHASER PLAINTIFFS' COUNSEL
CASE NO. CV-07-5944-JST, MDL NO. 1917

**F. Kirby McInerney Performed a Myriad of High Level Trial Preparation Tasks**

LC minimizes KM's trial preparation efforts by misstating some facts and ignoring others. For example, LC asserts that, in connection with trial preparation, "Straus & Boies also handled all of the translation objections – as [sic] massive task." LC Brief at 36. In fact, Straus & Boies – as they did throughout the case on matters pertaining to Japanese documents – turned to KM to handle the Japanese translation objections before trial. *See* 9/23/16 Gralewski Decl. at ¶ 4.

Towards the end of 2014 and the beginning of 2015, KM's associate-level lawyers including Mr. Harris and Ms. Brehm answered LC's repeated calls for help. They assisted with a variety of nuanced tasks including: searching for additional pass-through evidence to show impact; capturing all documents discussing price increases for CRT products; assembling a detailed evidentiary memorandum identifying all evidence to establish each class representative's standing; collecting conspiracy evidence specifically related to large screens; drafting thorough deposition summaries; gathering all fraudulent concealment evidence; assisting the experts; providing evidentiary support for the oppositions to Defendants' motions for summary judgment; and supporting the effort with legal research. All of these specific projects and others referenced in this Response (such as the mining of the DAP transcripts for economic evidence related to pass-through) including the important work done by Ms. Kikuchi and Ms. Nagano undermine LC's assertion that "over 60% of Kirby's very large lodestar is made up of lower level work." LC Brief at 32-33.[6]

In addition to completing Samsung SDI discovery, Mr. Gralewski contributed to the trial preparation efforts at a senior level. Along with Mr. Papale, Mr. Gralewski had overall responsibility for all affirmative designations, objections to Defendants' designations, and counter-designations with respect to all of the class representative depositions. Mr. Gralewski also had responsibility, along with Dennis Stewart, for Toshiba's Motion to Strike Class Representatives

---

[6] LC criticizes KM for assigning only one partner to the case. LC Brief at 32. LC claims that all of the other KM attorneys who worked on the case were junior-mid level associates. *Id*. Setting aside whether that assertion is accurate given Ms. Kikuchi's and Mr. Harris' seniority, KM staffed the case in a manner requested by LC, efficiently, and almost identically to Straus & Boies.

with Inadequate Proof of Purchases. Mr. Gralewski and Mr. Stewart worked together, at Mr. Goldberg's request, to prioritize the witness list. In addition, Mr. Gralewski provided FTAIA-related information to Mr. Stewart in connection with his preparation for the mock jury exercise. And LC ignores the fact that Mr. Gralewski was the only IPP lawyer to travel to mainland China to develop a relationship with and prepare three cooperating Chunghwa witnesses to testify live. Indeed, the trial team and Mr. Gralewski stayed in close contact during the trip.

### G. Lead Counsel and Mr. Goldberg Put Kirby McInerney in Charge of Testing the Class Representatives at IPPs' Mock Jury Exercise

LC asserts that "Kirby did not have 'overall responsibility for all Plaintiff-related aspects of IPPs' mock jury exercise.'" LC Brief at 37. In fact, KM was responsible for presenting the class representatives at the mock jury exercise with an eye towards trial testimony.

### H. Kirby McInerney's Rates are Appropriate

LC apparently made a downward adjustment to KM's proposed multiplier because of KM's rates. Specifically, LC indicates that KM's Japanese speaking attorneys' rate was too high, Mr. Gralewski's rate was too high, and KM avoided the English document review cap by categorizing some document review as "Deposition Preparation." LC Brief at 39.

KM thoroughly addressed LC's criticism with respect to KM's Japanese speaking attorneys' rate in its Objection and will not repeat those arguments here. *See* Objection to Lead Counsel's Proposed Allocation of Aggregate Fee Award to Indirect Purchaser Plaintiffs' Counsel, Dkt. No. 4822 at 12-14 ("Objection"). *See also* § II.D *supra*.

Next, Mr. Gralewski's rate ($775) is not high given the fact that he is an 18-year lawyer who has practiced antitrust law his entire career. Indeed, his rate is similar to other partners with approximately the same level of experience at other firms in the case such as Mr. Micheletti ($800), Ms. Anderson ($700), Ms. Wedgworth ($775), and Mr. Birkhaeuser ($745). Both Ms. Capurro and Mr. Cihlar are 12-year lawyers.

Last, LC claims that KM often categorized two of its lawyers' (Mr. Harris and Karina Kosharskyy) document review work in connection with depositions as "Deposition Preparation"

which allowed for a higher hourly rate. LC Brief at 39 (stating that "Lead Counsel took this into account in arriving at Kirby's multiplier"). This is not accurate. After seeking and receiving clarification from Ms. Capurro in July 2015, KM carefully re-categorized all of Mr. Harris' and Ms. Kosharskyy's document review in connection with deposition preparation as "Document Review." When LC then instituted the rate cap the following month, all of Mr. Harris' and Ms. Kosharskyy's time spent on document review done in connection with deposition preparation was automatically capped at $350. *See* 9/23/16 Gralewski Decl. at ¶ 5.

**I.     Kirby McInerney Performed a Variety of Tasks After Settlement in Addition to Being Responsible for Objector Discovery**

LC does not offer any credible evidence to dispute the long list of post-settlement tasks KM performed at LC's instruction. *See* Objection at 9-10. Instead, all LC does is state that "Kirby's assignment was limited to objector discovery." LC Brief at 37. This is not correct. In fact and among other things, LC asked Mr. Gralewski to be prepared to argue at the Fairness Hearing. In addition, Exhibit 2 to the Declaration of Mario N. Alioto in Support of Lead Counsel's Omnibus Response to Objections to Proposed Allocation of Aggregate Fee Award to Indirect Purchaser Plaintiffs' Counsel supports the fact that KM was a member of the Audit Committee. And the Special Master ruled on several motions pertaining to evidence attempted to be filed in support of objections that were briefed and filed by KM.

**III.    CONCLUSION**

For all of the reasons stated in its Objection and this Response, KM respectfully requests that the Special Master issue a Report & Recommendation that increases KM's multiplier in a manner consistent with its outstanding contributions to IPPs' overall effort.

Dated: September 23, 2016                                Respectfully submitted,

                                                         */s/ Robert J. Gralewski, Jr.*

                                                         Robert J. Gralewski, Jr.
                                                         **KIRBY MCINERNEY LLP**
                                                         Robert J. Gralewski, Jr. (196410)
                                                         600 B Street, Suite 1900

San Diego, CA 92101
Telephone: 619.398.4340

*Counsel for Class Representatives
Kerry Lee Hall, Daniel Riebow, and the
Certified Class of Indirect Purchaser Plaintiffs*

---

8

KIRBY McINERNEY LLP'S RESPONSE TO LEAD COUNSEL'S OMNIBUS RESPONSE TO OBJECTIONS TO PROPOSED
ALLOCATION OF AGGREGATE FEE AWARD TO INDIRECT PURCHASER PLAINTIFFS' COUNSEL
CASE NO. CV-07-5944-JST, MDL NO. 1917