Terrence J. Truax (*pro hac vice*)
ttruax@jenner.com
Charles B. Sklarsky (*pro hac vice*)
csklarsky@jenner.com
Michael T. Brody (*pro hac vice*)
mbrody@jenner.com
Gabriel A. Fuentes (*pro hac vice*)
gfuentes@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:   (312) 222-9350
Facsimile:   (312) 527-0484

ADDITIONAL COUNSEL IDENTIFIED
FOLLOWING SIGNATURE BLOCK

*Attorneys for Defendants Mitsubishi Electric Corporation,
Mitsubishi Electric US, Inc., and Mitsubishi Electric Visual
Solutions America, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | MDL No. 1917 |
| | Case No. 3:14-cv-02058-JST |
| CRAGO d/b/a DASH COMPUTERS, INC., et al., on its own behalf and on behalf of similarly situated parties, | Master File No. 3:07-cv-05944-JST |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF SPECIAL MASTER [DKT. 4802]** |
| v. | Judge:   Hon. Jon S. Tigar |
| MITSUBISHI ELECTRIC CORPORATION, et al., | [Proposed Order filed herewith] |
| Defendants. | [Declaration of Terrence J. Truax in support of the objections filed herewith] |
| | REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL |

1

2
## NOTICE OF MOTION

3
To all parties and their attorneys of record:

4
Please take notice that on November 3, 2016, at 9:00 a.m., before the Honorable Judge Jon S. Tigar,

5
U.S. District Court Judge, U.S. District Court for the Northern District of California, Courtroom No. 9 –

6
19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Mitsubishi Electric

7
Corporation, Mitsubishi Electric US, Inc., and Mitsubishi Electric Visual Solutions America, Inc. hereby

8
respectfully move this Court to deny the Direct Purchaser Plaintiffs' December 4, 2015 motion for

9
sanctions, Dkt. #4802.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... i

MOTION.........................................................................................................................1

I.      MELCO Did Not Engage in Any Sanctionable Conduct. ..........................................1

        A.      Sanctions Were Not Warranted Based on the Murata Deposition.....................1

        B.      Sanctions Were Not Warranted for MELCO's Responses to Interrogatory 5 ....4

        C.      Sanctions Were Not Warranted Based on MELCO's Response to Interrogatory 12. .........7

        D.      Sanctions Were Not Warranted Based on MELCO's Response to Interrogatory 16. .......11

II.     Even if There Were Some Basis for Sanctions, the Special Master's Recommended
        Sanction Should Not Be Imposed. ...............................................................................12

CONCLUSION.................................................................................................................17

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406 (9th Cir. 1990) .................................................14

*FDIC v. Halpern*, 271 F.R.D. 191 (D. Nev. 2010) ...............................................................9

*General Atomic Co. v. Exxon Nuclear Co., Inc.*, 90 F.R.D. 290 (S.D. Cal. 1981) ............................. 16-17

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir. 1986).....................................4

*Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73 (N.D.N.Y. 2003) ..........................................2

*In re Flonase Antitrust Litig.*, 723 F. Supp. 2d 761 (E.D. Pa. 2010) ..........................................3

*In re Stratosphere Corp. Secs. Litig.*, 182 F.R.D. 614 (D. Nev. 1998)..........................................2

*Internmatch, Inc. v. Nxtbigthing, LLC*, No. 14-cv-05438-JST, 2016 WL 491483 (N.D. Cal. Feb. 8, 2016) (Tigar, J.)..........................................................................13, 15

*Jackson Family Wines, Inc. v. Diageo N. Am., Inc.*, No. CV 11-5639 EMC, 2014 WL 595912 (N.D. Cal. Feb. 14, 2014) .........................................................14, 15

*Keithley v. Homestore.com, Inc.*, No. C-03-04447 SI (EDL), 2008 WL 4830752 (N.D. Cal. Sept. 6, 2008) .........................................................................14

*Korb v. Comm'r of Social Security*, No. 12-cv-03847-JST, 2016 WL 215542 (N.D. Cal. Jan. 19, 2016)...........................................................................6, 10

*Mformation Techs., Inc. v. Research in Motion Ltd.*, No. C08–04990 JW (HRL), 2011 WL 2940289 (N.D. Cal. July 20, 2011)...............................................................13, 14

*Miniace v. Pacific Maritime Ass'n*, No. C 04-03506 SI, 2006 WL 335389 (N.D. Cal. Feb. 13, 2006) ...........................................................................9

*Mitchell v. Acumed, LLC*, No. 11-cv-00752 SC (NC), 2012 WL 761705 (N.D. Cal. May. 8, 2012) ...........................................................................13

*Mixt Greens v. Sprout Café*, No. C–08–5175 EMC, 2010 WL 2555753 (N.D. Cal. June 21, 2010) ...........................................................................14

*Nat'l Semiconductor Corp. v. Ramtron Int'l Corp.*, 265 F. Supp. 2d 71 (D.D.C. 2003).........................11

*Rev 973 LLC v. Mouren-Larens*, No. CV 98–10690 AHM (Ex), 2009 WL 273205 (C.D. Cal. Feb. 2, 2009)...........................................................................14, 15

*Sporck v. Peil*, 759 F.2d 312, 318 (3d Cir. 1985) ...............................................................3

*Star Envirotech, Inc. v. Redline Detection, LLC*, No. SA CV 12-01861-JGB (DFMx), 2015 WL 9093561 (C.D. Cal. Dec. 16, 2015) ...................................................13

*Stevens v. Corelogic, Inc.*, No. 14cv1158 BAS (JLB), 2016 WL 397936 (S.D. Cal. Feb. 2, 2016)...........................................................................3

-i-

NOTICE OF MOTION AND MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER OF SPECIAL MASTER [DKT. 4802]
Case No. 3:14-cv-02058-JST; Master File No. 3:07-cv-05944-JST; MDL No. 1917

*Su v. NASA*, No. 5:09-cv-02838-EJD, 2016 WL 4719274 (N.D. Cal. Sept. 9, 2016) ...............................11

*United States v. Mazzam, Inc.*, No. C-06-07497 CW (JCS), 2009 WL 817264 (N.D. Cal. Mar. 27, 2009)...................................................................................................................... 15-16

*Waters v. Kohl's Dep't Stores, Inc.*, No. 14-cv-00043-KAW, 2015 WL 1519657 (N.D. Cal. Apr. 2, 2015) .................................................................................................................14, 15

**Other Authorities**

Fed. R. Civ. P. 37(b)(2)(A) ...........................................................................................................16

Fed. R. Civ. P. 37(c)(2)...................................................................................................................11

Fed. R. Civ. P. 37(e)(1)...................................................................................................................13

Fed. R. Evid. 804(b)(6) ...................................................................................................................16

NOTICE OF MOTION AND MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER OF SPECIAL MASTER [DKT. 4802]
Case No. 3:14-cv-02058-JST; Master File No. 3:07-cv-05944-JST; MDL No. 1917

## **MOTION**

Mitsubishi Electric Corporation ("Mitsubishi Electric"), Mitsubishi Electric US, Inc. ("MEUS"), and Mitsubishi Electric Visual Solutions America, Inc. ("MEVSA") (collectively, "MELCO") object to the Special Master's August 29, 2016 Order (Dkt. 4802) (the "Order"). In the Order, the Special Master directed MELCO to supplement its responses to three interrogatories served by the Direct Purchaser Plaintiffs ("DPPs"). He also recommended that the Court impose a serious evidentiary sanction: admission at trial of

███████████████████████████████████████████████████████████

██████████████████████████

Although MELCO disagrees with the Special Master's conclusion that its interrogatory responses were deficient, it is supplementing those responses promptly. MELCO objects, however, to his recommendation that the Court impose sanctions. First, MELCO did not engage in sanctionable conduct. Second, the Special Master's proposed evidentiary sanction is grossly disproportionate and lacks a logical connection to MELCO's conduct.

## I. **MELCO Did Not Engage in Any Sanctionable Conduct.**

The Special Master's conclusions of fact and law are reviewed *de novo*. *See* Dkt. 4279.

The Special Master recommended that the Court impose sanctions based on MELCO's conduct at the deposition of a Mitsubishi Electric employee, Koji Murata, and on MELCO's allegedly deficient responses to the DPPs' Interrogatory Nos. 5, 12, and 16. Order at 33-35 (Findings 1-10). The Court should reject the Special Master's sanctions recommendation.

### A. Sanctions Were Not Warranted Based on the Murata Deposition.

The Special Master's Findings 2 and 3 related to the conduct of MELCO's counsel at the deposition of a MELCO employee, Koji Murata. The Special Master recommended imposing sanctions because MELCO's counsel "abrupt[ly] interrupt[ed]" Mr. Murata's deposition, refused to permit questioning about Mr. Murata's conversation with counsel during a break, and "refus[ed] to produce documents used to refresh [Mr. Murata's] recollection before his deposition." Order at 33. In a prior Order, the Special Master held that MELCO's deposition conduct was grounds to reopen Mr. Murata's deposition. Dkt. 3859. The deposition was reopened and concluded without incident. *See* Ex. 6. In the Order now under review, he

relied on that conduct again as a basis to recommend sanctions.  MELCO complied with the Special Master's

Order reopening the deposition, but it strongly disputes that its conduct was sanctionable.

   **Finding 2.**  As to the "abrupt interruption" of the deposition, here is the portion of the deposition to

which the Special Master was referring:

> THE WITNESS: The meet – the trip – the business trip was for a CRT meeting or meetings. That's what it was for.
>
> BY MR MILLEN: Q. Where was the destination for the meeting?
>
> MR FUENTES: Can we take a really short break just for a couple of minutes?
>
> THE WITNESS: What the document says, I believe, is SDI in Seoul – I think that's Samsung SDI – and then also LPD in Hong Kong, which I believe stands for LG Philips Display.
>
> MR MILLEN: I just have a couple more questions on the document. I'd like to finish before we take a break.
>
> MR FUENTES: Actually, I'd like to break. It will be really short, and we'll come right back.
>
> MR MILLEN: Okay.

Dkt. 3859, at 4-5.  Nothing sanctionable occurred here.  MELCO's counsel respectfully requested a break,

and the DPPs' counsel said "okay" without further objection.  The break did not occur while a question was

pending; Mr. Murata answered Mr. Millen's question before the break.  This is a garden-variety deposition

exchange that does not show misconduct.

   The Special Master also said that MELCO's counsel "refus[ed] to allow Mr. Murata to answer

questions regarding his conversation with counsel during the break."  Order at 33.  But that initial refusal

was based on counsel's reasonable position that the conversations between Mr. Murata, a Mitsubishi Electric

executive, and MELCO's counsel were privileged.  *See, e.g.*, *Henry v. Champlain Enters., Inc.*, 212 F.R.D.

73, 92 (N.D.N.Y. 2003); *In re Stratosphere Corp. Secs. Litig.*, 182 F.R.D. 614, 621 (D. Nev. 1998).

Moreover, the Order neglects to note the events that followed Mr. Murata's original deposition.  The Special

Master directed MELCO to reproduce Mr. Murata for a new deposition, at which the DPPs could examine

him on his conversations with counsel during deposition breaks.  Dkt. 3859 at 10.  MELCO then conferred

with the DPPs and the Special Master regarding Mr. Murata's preparation for the new deposition.  Truax

Decl. ¶ 2.  In that conference, the parties agreed that MELCO would refrain from discussing with Mr. Murata

the conversation during the break in the deposition or the specific document that was the subject of the examination after the break.  *Id.*  At his renewed deposition, Mr. Murata testified that no improper coaching occurred, Ex. 6,[1] 253:23-258:19.  Thus, any prejudice from any alleged misconduct at the first deposition was cured, and sanctions are unwarranted.  *In re Flonase Antitrust Litig.*, 723 F. Supp. 2d 761, 764 (E.D. Pa. 2010) (in the absence of evidence of coaching, conversations during deposition breaks were privileged) (applying Pennsylvania law).

**Finding 3.**  The Special Master recommended imposing sanctions for MELCO's refusal to identify documents that refreshed Mr. Murata's recollection before his deposition.  To be clear, MELCO produced the documents he reviewed; it simply did not separately identify the documents Mr. Murata had reviewed in preparation for the deposition.  Ex. 7 at 4.  The Special Master held that the failure to identify these documents violated Federal Rule of Evidence 612, which require identification of documents that refresh a witness's recollection.  Order at 33.

MELCO did not identify these documents because, in MELCO's view, its selection of documents to show Mr. Murata was attorney work product, and Rule 612 does not override the work product doctrine because it applies to trial testimony, not deposition testimony.  This was a reasonable position.  The sole federal appellate court to have addressed the issue has held that "[p]roper application of Rule 612 should never implicate an attorney's selection, in preparation for a witness' deposition, of a group of documents that he believes critical to a case."  *Sporck v. Peil*, 759 F.2d 312, 318 (3d Cir. 1985).  And although district courts have disagreed on the issue, a California district court recently adopted *Sporck*'s reasoning and observed that "courts in this circuit have viewed *Sporck* favorably."  *Stevens v. Corelogic, Inc.*, No. 14cv1158 BAS (JLB), 2016 WL 397936, at *9 (S.D. Cal. Feb. 2, 2016) (citing cases).  In nonetheless granting the DPPs' motion to compel, the Special Master noted that there was no "controlling Ninth Circuit law" on this question, and chose to reject *Sporck* in favor of the legal standard used by certain other courts that such documents can be subject to disclosure in the "interests of justice."  Dkt. 3859, at 8-9.

It was inappropriate for the Special Master to recommend that MELCO be sanctioned for failing to produce documents in good faith reliance on the above authority.  MELCO's position has been approved by

---

[1] "Ex." refers to the exhibits to the Declaration of Terrence J. Truax filed alongside this brief.

-3-

NOTICE OF MOTION AND MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER OF SPECIAL MASTER [DKT. 4802]
Case No. 3:14-cv-02058-JST; Master File No. 3:07-cv-05944-JST; MDL No. 1917

multiple courts.  That the Special Master disagreed with those courts does not show MELCO's position was sanctionable.  *See Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986) ("If, judged by an objective standard, a reasonable basis for the position exists …, then sanctions should not be imposed.").

### B.   Sanctions Were Not Warranted for MELCO's Responses to Interrogatory 5.

The Special Master's Findings 4 through 6 were based on MELCO's failure to timely produce a document known as Exhibit B.  The Special Master's conclusions are wrong.  MELCO did not commit sanctionable conduct, and the DPPs were not hindered in discovery at all.[2]

MELCO is accused of having participated in an antitrust conspiracy related to Cathode Ray Tube (CRT) products.  The DPPs' far-reaching Interrogatory No. 5 sought a list of every time anyone from MELCO communicated with anyone from another CRT or CRT product manufacturer between 1995 and 2007.  Ex. 8 at 6.  A different plaintiff class, the Direct Action Plaintiffs (DAPs), served a similar, but narrower, interrogatory.  Ex. 9 at 9.  On September 5, 2014, MELCO served its responses to the DAPs, which included "Exhibit B"—a list of meetings with other CRT manufacturers.  *Id*.  On December 10, 2014, MELCO served its interrogatory responses to the DPPs, which stated that "Exhibit B" would be attached.  Ex. 10 at 7-10.  However, MELCO accidentally did not attach the document.  Ex. 11.

The DPPs, however, had already obtained a copy of that very document—Exhibit B—after MELCO produced it to the DAPs.  Dkt. 3873 at 4-5.  The DPPs indisputably had the document during the December 2014 depositions of two MELCO executives, Mr. Murata and Mr. Konishi, and questioned these witnesses about that document at those depositions.  *Id*.

Even though they already had the document, the DPPs' counsel followed up and requested that the email attachment be sent; MELCO's lawyer responded that he "will get back to you on it as soon as

---

[2] The Special Master's Order also concludes that MELCO's failure to interview former employees and to admit the accuracy of information in certain documents in connection with Interrogatory No. 5 was unreasonable.  Order at 9-18.  MELCO contests those conclusions: As MELCO explains in addressing Interrogatory No. 12, neither its conduct in interviewing former employees nor its failure to admit the accuracy of information is worthy of sanctions. *See infra* Section I.C.  MELCO will not address those conclusions further, however, because they did not form the basis for the Special Master's sanctions recommendation.  *See* Order at 33-35 (Findings 4-6) (relying only on events surrounding Exhibit B as basis for recommending sanctions).

possible," but did not do so.  Ex. 12.  Without engaging in any meet-and-confer, the DPPs moved to compel production of Exhibit B.  Ex. 13.  In response, MELCO informed the DPPs that the motion would have been unnecessary if a meet-and-confer had occurred, *see* Ex. 14, and told the Special Master that it would produce this document, Ex. 26.

At around this time, MELCO determined that "Exhibit B" (as served on the DAPs) was incomplete, because it did not include information responsive to the portions of the DPPs' interrogatory that were broader than the DAPs' interrogatory.  Ex. 11.  MELCO added additional information and served the new, more detailed version of Exhibit B—containing the same meetings and communications as the earlier Exhibit B plus 22 additional items—on the DPPs on January 16, 2015.  Ex. 2 at 8; Ex. 15 at 7-9, Ex. B.  It ultimately made a formal production of the original version of Exhibit B on February 19, 2015, even though as noted the DPPs already had it.  Ex. 16.

The Special Master's recommendation of sanctions based on these events was unjustified.

***Finding 4*** was as follows:

> Mitsubishi repeatedly delayed serving full responses to Interrogatory No 5 (Mitsubishi's competitor contacts) despite possessing responsive information (DAP Exhibit B, served in September 2014).  These delays in producing Exhibit B led to repeat depositions of at least two Mitsubishi witnesses—Koji Murata and Masahiko Konishi.  *See* 4/28/15 Order at 2-4.

Order at 34.  This finding is wrong.  The delay in serving DAP Exhibit B did not lead to repeat depositions. The Special Master cited his 4/28/2015 Order, inexplicably overlooking his own follow-up 6/12/15 Order in which he acknowledged that the DPPs examined Murata and Konishi on DAP Exhibit B at their original depositions.  Dkt. 3873, at 4-5.  The Special Master ordered repeat depositions based on the January 2015 disclosure of additional meetings, *id.* at 5, which is *not* information that MELCO "possess[ed]" as part of DAP Exhibit B but "delayed serving."

***Finding 5*** was: "Only after the 4/28/15 Order compelled Mitsubishi to produce original Exhibit B, did Mitsubishi produce it on May 26, 2015."  Order at 34.  That too is wrong.  MELCO formally produced original (*i.e.*, DAP) Exhibit B on February 19, 2015, long before the 4/28/15 Order.  Ex. 16.  This was the first point MELCO made in its brief to the Special Master regarding the Murata and Konishi depositions.

Ex. 17 at 3 ("Mitsubishi Electric Corporation formally produced to the DPPs the 'original' Exhibits A and B (intended to be attached to the December 10, 2014 interrogatory response) on February 19, 2015.").

**Finding 6.**  The Special Master found that MELCO's "failure to produce discovery within its possession caused unnecessary motion practice and a discovery order that could have been avoided."  Order at 34.  That finding is incorrect, for the reasons explained with regard to Finding 4 MELCO's delay in producing DAP Exhibit B did *not* result in additional depositions.  The Special Master also stated that the delay in producing DAP Exhibit B "caused unnecessary motion practice," *id.*, but as noted the DPPs' motion to compel was unnecessary and bypassed a meet-and-confer process that nonetheless led to MELCO's formal production of Exhibit B as well as a "revised" Exhibit B setting forth 22 additional contacts, more than three months before the Special Master's April 28 order compelled the production of the by-then previously produced and previously updated Exhibit B.  *See supra* at 5.

Insofar as the Special Master felt that sanctions were warranted based on delay in disclosing *additional* meetings until January 2015, that too was unwarranted.  Parties routinely supplement their discovery responses, especially early in discovery, and the Special Master identified nothing untoward about MELCO's supplementation.  Any prejudice arising from the supplementation was cured by the repeat depositions.

Finally, even if Judge Walker's factual findings were correct, evidentiary sanctions would be unwarranted.  Sanctions are not warranted based on negligence, or even recklessness; rather, "an additional factor such as frivolousness, harassment, or an improper purpose" is required.  *Korb v. Comm'r of Social Security*, No. 12-cv-03847-JST, 2016 WL 215542, at *4 (N.D. Cal. Jan. 19, 2016) (quotation marks omitted) (Tigar, J.).  Given that the DPPs had DAP Exhibit B all along, MELCO did not engage in any deliberate hindrance of discovery that could warrant sanctions.

C.  <u>Sanctions Were Not Warranted Based on MELCO's Response to Interrogatory 12.</u>

The Special Master's Findings 7 through 9 were based on MELCO's allegedly insufficient response to the DPPs' Interrogatory No. 12, which sought sales data for CRTs or CRT products.  The Special Master made no finding that MELCO had destroyed or intentionally withheld any documents.  Rather, he concluded that MELCO should be sanctioned because of the alleged inadequacy of MELCO's investigation early in the discovery period, and MELCO's failure to stipulate to the accuracy of sales records.  The Court should reject those conclusions.

The DPPs' Interrogatory No. 12 sought records of "sales of CRT and/or CRT Products to the United States and globally for each month from January 1, 1991 to the present."  Ex. 8 at 7-8.  These records were not easy to find, because MELCO stopped manufacturing and selling CRTs in 2004.  Ex. 2 at 3-4.  MELCO had no reason to preserve its CRT-related documents when it shut down that business: it did not issue document hold notices until 2011, when it was first contacted by a plaintiff.  *Id*. at 4.  Nevertheless, MELCO searched for any sales-related documents it had, *id*. at 5, and produced nearly 1000 pages of documents related to sales data.  Ex. 15 at 14.  In April 2015, the Special Master ordered MELCO to supplement its response to this interrogatory.  Dkt. 3830.

In July 2015, the DPPs deposed Max Wasinger, a former employee of MEVSA (Mitsubishi Electric's U.S. subsidiary) who had left the company two years earlier.  Ex. 18 at 31:8-9.  At that deposition, Mr. Wasinger referred to the prior existence of paper CRT TV sales reports, of which MELCO's counsel had been unaware.  *Id*. at 65:2-8.  MEVSA then located and produced a set of what appeared to be those very types of CRT TV sales reports, of which it had previously been unaware, and also searched—using search terms selected in conjunction with the DPPs—a file server which it had previously determined would be unduly burdensome to search.  *See* Ex. 2 at 6; Ex. 19.  The paper sales reports and additional documents from the file server formed the basis for supplementing MEVSA's answer to Interrogatory No. 12, with the caveat that it was "unable to verify the accuracy" of the figures included in its updated responses.  Ex. 20 at 5-7.  Then, at the DPPs' request, MELCO produced Mr. Wasinger for a second deposition on August 8, 2016, in which the DPPs examined him about those sales reports.  Ex. 21.

The Special Master held that MELCO's conduct was sanctionable in three respects.  First, MELCO "fail[ed] to conduct adequate searches of key witnesses' files."  Order at 34 (Finding 8).  Second, MELCO "fail[ed] to interview such witnesses about responsive documents."  *Id.*  Third, MELCO's statement that it was "unable to verify the accuracy" of the figures "demonstrates bad faith."  *Id.* at 34-35 (Finding 9).  On each point, the Special Master erred.

**Findings 7 and 8: Failure to conduct adequate searches**.  The Special Master's conclusion that MELCO's searches were inadequate is based on a misunderstanding of the record.  The Special Master stated that MELCO had failed to perform any searches of Mr. Wasinger's documents, Order at 23, but that is incorrect.  Early in the discovery period, MELCO searched both MEUS's and MEVSA's email servers and produced documents from those servers, as well as produced other electronic documents related to MEUS' and MEVSA's CRT product business.  Ex. 2 at 5.  Indeed, Mr. Wasinger was even questioned about one of his emails at his original deposition.  Ex. 18, 10:15-16, 163:25-172:6.

In concluding that MELCO had failed to search Mr. Wasinger's files, the Special Master pointed to three arguments from the DPPs' briefs: (1) Mr. Wasinger was not asked to search his personal email account; (2) MELCO did not search Mr. Wasinger's hard drive; (3) Mr. Wasinger was not asked to collect responsive documents.  Order at 22.  But each of those points has an innocuous explanation.  First, Mr. Wasinger was not asked to search his *personal* (*i.e.* non-MEVSA) account for documents, Ex. 18, 49:18-21; he certainly did not testify that MELCO failed to search *MEVSA*'s email servers (which MELCO in fact did),  Ex. 2 at 5.  Second, Mr. Wasinger's emails were housed on MEVSA's email servers, which MELCO did search.  *Id.* Third, by the time MELCO was sued and served with document requests, thus requiring document collection efforts, Mr. Wasinger had left the company.  Ex. 18, 31:8-9.  These points do not establish that MELCO failed reasonably to search Mr. Wasinger's files.

The Special Master also stated that MELCO had failed to search the files of a different executive, Kiyoshi Furukawa.  Order at 23.  As noted, however, MELCO did search email servers (including Mr. Furukawa's emails) and produced documents from those servers.  The Special Master pointed to Mr. Furukawa's deposition testimony that he was not asked to *collect* documents.  *Id.* at 22.  But there is a straightforward reason why.  Mr. Furukawa ceased having any involvement with MELCO's CRT business

in 2000. He worked for a U.S. affiliate of the joint venture with NEC from 2000 to 2004; came back to Mitsubishi Electric's U.S. affiliate from 2004 to 2008 without bringing his files and emails from the joint venture company, while having no involvement with CRTs; and returned to Japan in 2008. Ex. 22, 31:4-15, 74:13-19. He returned to the United States in 2014 to run a business having nothing to do with CRTs; MELCO exited the CRT business a decade earlier. Ex. 23, 23:3-23. MELCO had no reason to believe that Mr. Furukawa would have retained pre-2000 documents from a business that closed in 2004. At any rate, MELCO's failure to interview Mr. Furukawa does not demonstrate willful bad faith necessary to support sanctions.

   **Findings 7 and 8: Failure to interview witnesses.** As the Special Master explained, Mr. Wasinger gave testimony at his deposition regarding certain paper documents that MELCO previously had failed to locate. MELCO ultimately located those documents (from sources other than Mr. Wasinger) and produced them. Ex. 2 at 6. The Special Master nonetheless concluded that MELCO had engaged in sanctionable misconduct based on its failure to interview Mr. Wasinger about the location of documents prior to his deposition.[3]

   That conclusion was incorrect. MELCO did not commit the sort of plain violation of the discovery rules that warrants sanctions. First, Mr. Wasinger had already left MEVSA by the time this lawsuit was filed. Ex. 18, 31:8-9. It is not clear that the Federal Rules impose the obligation to collect information from former employees outside an employer's control. *See Miniace v. Pacific Maritime Ass'n*, No. C 04-03506 SI, 2006 WL 335389, at *2 (N.D. Cal. Feb. 13, 2006) (denying motion to compel documents in possession of corporation's former directors because plaintiff had not established they were in corporation's control). Indeed, there are sound practical reasons not to obligate employers to obtain information in discovery from former employees. Employers legitimately may be reluctant to rely on statements by former employees, who no longer owe a fiduciary duty, in preparing their interrogatory responses. Moreover, imposing a duty to obtain information from former employees could produce an unbalanced presentation: if *harmful*

---

[3] The Special Master cited *FDIC v. Halpern*, 271 F.R.D. 191 (D. Nev. 2010), for the proposition that an employer has a duty to obtain information from former employees. Order at 16 n. 14. In fact, however, that case holds: "The FDIC is not required to interview former Bank employees for purposes of obtaining information responsive to these interrogatories that is not otherwise known or available to the FDIC." 271 F.R.D. at 199.

-9-

NOTICE OF MOTION AND MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER OF SPECIAL MASTER [DKT. 4802]
Case No. 3:14-cv-02058-JST; Master File No. 3:07-cv-05944-JST; MDL No. 1917

1   information from a former employee is included in an interrogatory response, that becomes a party

2   admission; but if *helpful* information is included, the employer may not be able to produce that information

3   in an admissible form at trial, particularly with respect to employees who are outside the court's subpoena

4   jurisdiction.[4]

5          Second, even if such a duty existed, sanctions would not be warranted because there is no evidence

6   that MELCO deliberately suppressed any information or otherwise acted in bad faith.  MELCO cooperated

7   with plaintiffs to make Mr. Wasinger available for a deposition, at which plaintiffs questioned Mr. Wasinger

8   on his email from MEVSA's initial document production. Ex. 18, 10:15-16, 163:25-172:6.  MEVSA's later,

9   unilateral production of sales reports from a MEVSA warehouse—*not* from Mr. Wasinger—and its

10  subsequent production of Mr. Wasinger again for deposition, *see*  Ex. 2 at 6; Ex. 18; Ex. 21, evinces good

11  faith, not bad faith.

12         Your Honor's recent decision in *Korb* confirms that sanctions were not warranted under these

13  circumstances.   In *Korb*, the Social Security Administration (SSA) initially represented that certain

14  documents were unavailable, but later found those documents in an SSA database known as PACER.  2016

15  WL 215542, at *4.  The SSA said it had not previously produced the documents because of, *inter alia*,

16  "counsel's general unawareness of the database systems."  *Id.*   The Court declined to impose sanctions,

17  finding that the SSA's conduct was "reckless," but that "recklessness alone is insufficient to justify the

18  award of sanctions."  *Id.*  Rather, the Court held, "an additional factor, such as frivolousness, harassment,

19  or an improper purpose" is required.  *Id.* (internal quotation marks omitted).  The Court held that none of

20  those additional factors was present, because this was not a situation where the defendants were "aware of

21  responsive discovery but hid it and made false statements to the court to hide their behavior"; rather,

22  "because of the SSA's incomplete search, the SSA was unaware of the existence of the check images," but

23

24

25  _____

    [4] The Special Master pointed out that Mr. Wasinger was a MEVSA employee at the time MEVSA issued

26  its document hold notice. Order at 23.  That is true, but MELCO was not sued until after Mr. Wasinger's
    departure.  *See* Dkt. 4007; Ex. 18, 31:8-9.  When MEVSA issued its document hold notice, it conveyed

27  the hold information to its employees, including Mr. Wasinger. Ex. 24 at 6-7.  By the time MELCO was
    served with discovery requests requiring collection of documents, Mr. Wasinger had left the company.

28  Ex. 18, 31:8-9.

"[u]pon discovering the PACER database, counsel for the SSA requested and produced the responsive check records." *Id.* at *5.

Korb is directly on point.  As in *Korb*, MELCO's counsel made no false statements and concealed no documents; it was simply unaware of the additional documents until Mr. Wasinger's deposition.  Following the deposition, MELCO searched for and produced the additional documents.  This case is an even weaker case for sanctions than *Korb*:  Here, MELCO's difficulty in locating documents is attributable to it leaving the CRT business years ago and its knowledgeable employees having left the company, whereas in *Korb*, counsel failed to uncover an active and still-operating database.  Given that sanctions were not imposed in *Korb*, they surely should not be imposed here.

**Finding 9: Inability to verify accuracy of figures.**  MEVSA's statement that it was unable to verify the accuracy of the CRT TV sales figures in its interrogatory response does not warrant sanctions.  The Special Master concluded that MEVSA had acted unreasonably by failing to verify the accuracy of these figures with Mr. Wasinger.  As explained above, an employer is not obliged to rely on information from a former employee for purposes of interrogatory responses; and even if such an obligation exists, it is not sufficiently clear to warrant sanctions.  Moreover, the DPPs had the opportunity to ask Mr. Wasinger about the accuracy of the figures in his second deposition, and thus there is no prejudice from MEVSA's interrogatory response.  Ex. 21.

Further, *evidentiary* sanctions for failing to admit the accuracy of the sales figures were not warranted.  Federal Rule of Civil Procedure 37(c)(2) provides: "If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof," unless, *inter alia*, "the party failing to admit had a reasonable ground to believe that it might prevail on the matter."  Although the rule addresses Requests for Admission, it is pertinent to a failure to admit the accuracy of information in an interrogatory response, and it establishes that the Special Master's sanctions recommendation was excessive.  Under Rule 37(c)(2), a party cannot show a failure to admit has ramifications until it *proves* the fact in question—and once it puts forth such proof, the sole permissible consequence is payment of the requesting party's expenses in proving that fact.

-11-

NOTICE OF MOTION AND MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER OF SPECIAL MASTER [DKT. 4802]
Case No. 3:14-cv-02058-JST; Master File No. 3:07-cv-05944-JST; MDL No. 1917

*See Su v. NASA*, No. 5:09-cv-02838-EJD, 2016 WL 4719274, at *5 (N.D. Cal. Sept. 9, 2016) (remedy for unreasonably failing to admit is "limited to" sanction in Rule 37(c)(2)); *Nat'l Semiconductor Corp. v. Ramtron Int'l Corp.*, 265 F. Supp. 2d 71, 74-75 (D.D.C. 2003) (Rule 37(c)(2) is exclusive remedy for unreasonable failure to admit, and cannot be applied until trial).  Therefore, there is no basis for evidentiary sanctions.

### D.   Sanctions Were Not Warranted Based on MELCO's Response to Interrogatory 16.

The DPPs' Interrogatory No. 16 sought information about the destruction of documents.  MELCO's response to this interrogatory explained that it had shut down a portion of its CRT business in 1998, exited the CRT business altogether in 2004, and had thus likely discarded documents at that time.  Order at 28.  The Special Master recommended sanctions because MELCO's response allegedly was not "full and complete."  Order at 35 (Finding 10).  He focused on MELCO's statements that the destruction of documents was likely, arguing that MELCO should have investigated this issue further.  Order at 29-30.

MELCO currently is working to supplement its interrogatory response in response to the Special Master's Order.  But imposition of sanctions is unwarranted.  To be clear, there is no accusation in this case that the destruction of documents after MELCO left the CRT business was improper.  Nor is there any accusation that MELCO destroyed any documents after its duty to preserve arose.  Rather, the Special Master simply concluded that MELCO's narrative description of the destruction of documents was insufficiently detailed.

This is a garden-variety discovery dispute.  It is not an occasion for the imposition of sanctions.  MELCO has not located any prior cases imposing sanctions based on an insufficiently detailed narrative in an interrogatory response.  Moreover, the prejudice to the DPPs is minimal; more detailed descriptions of the types of documents that have been destroyed will be of limited use to the DPPs at best, given that the documents themselves are not available and that MELCO was under no obligation to preserve documents when it discontinued the business.

1

**II.    Even if There Were Some Basis for Sanctions, the Special Master's Recommended Sanction Should Not Be Imposed.**

2

3          The Special Master recommended that the Court admit into evidence ████████████

4 ██████████████████████████████████████████████████  That would be a very

5 serious sanction.  Samsung SDI has pleaded guilty to antitrust violations related to CRTs. ████████

6 ███████████████████████████████████████████████.[5]

7 Admitting this evidence at trial would profoundly skew the parties' trial presentation.  Yet MELCO would

8 never have the opportunity to cross-examine the declarant of that statement, illuminate its basis or context,

9 or establish its unreliability.  It would be grossly unfair to admit unreliable hearsay evidence on a key point.

10 *See, e.g.*, *Mformation Techs., Inc. v. Research in Motion Ltd.*, No. C08–04990 JW (HRL), 2011 WL

11 2940289, at *2 (N.D. Cal. July 20, 2011) (court declined to impose evidentiary sanction "that would be

12 contrary to the actual facts.").

13          Even if there were a basis for finding that MELCO had engaged in sanctionable conduct, the sanction

14 is inappropriate.  The recommended sanction is both disproportionate and logically unrelated to the alleged

15 misconduct.

16          Discovery sanctions are supposed to be tailored to discovery misconduct in two related respects.

17 First, sanctions should be *proportionate* to the discovery misconduct.  *Star Envirotech, Inc. v. Redline

18 Detection, LLC*, No. SA CV 12-01861-JGB (DFMx), 2015 WL 9093561, at *9 (C.D. Cal. Dec. 16, 2015)

19 (sanction should be "narrowly tailored" to harm caused by discovery misconduct).  Monetary sanctions may

20 be appropriate in cases of relatively mild misconduct; by contrast, evidentiary or case-terminating sanctions

21 should be imposed only in cases of serious discovery violations.  *Mitchell v. Acumed, LLC*, No. 11-cv-00752

22 SC (NC), 2012 WL 761705, at *3 (N.D. Cal. May. 8, 2012) (imposing monetary sanctions, but declining to

23 impose evidentiary sanctions based on absence of "extreme circumstances").  Second, even if the court does

24 determine to impose an evidentiary sanction, the sanction should have a *nexus* to the misconduct; the

25 sanction should not be arbitrary, but instead should cure the prejudice caused by the misconduct.  *See, e.g.*,

26 ───────────────
[5] █████████████████████████████████████████████████████

27 █████████████████████████████████████████████████  Moreover, Mr. Murata

28 testified at his deposition that there was no conspiracy with another CRT manufacturer.  Ex. 6, 303:6-19.

*Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 n.6 (9th Cir. 1990) (sanction "must be specifically related to the particular claim which was at issue in the order to provide discovery"); *cf.* Fed. R. Civ. P. 37(e)(1) (in cases of failure to preserve electronic discovery without an "intent to deprive," sanction should be "no greater than necessary to cure the prejudice").

These two principles are well illustrated by the case law addressing intentional spoliation. The case law ensures proportionality by reserving evidentiary sanctions for cases in which "records were destroyed with a culpable state of mind" while there was an "obligation to preserve." *Internmatch, Inc. v. Nxtbigthing, LLC*, No. 14-cv-05438-JST, 2016 WL 491483, at *13 (N.D. Cal. Feb. 8, 2016) (Tigar, J.). And the law ensures the requisite nexus by reserving evidentiary sanctions to cases in which "the destroyed evidence was relevant to the party's claim or defense." *Id.* In that situation, the judge may cure the prejudice caused by the spoliation by offering an adverse inference instruction that *the destroyed evidence itself* would have been favorable to the other side. *See, e.g.*, *id.* at *13 n.14 (quoting jury instruction provided in prior spoliation case). The court is not authorized to instruct the jury regarding any evidence *other than* the specific evidence that was spoliated. *Rev 973 LLC v. Mouren-Larens*, No. CV 98–10690 AHM (Ex), 2009 WL 273205, at *4 (C.D. Cal. Feb. 2, 2009) (when party spoliated evidence regarding chemical makeup of wastes, court rejected adverse inference instructions that "go farther than an adverse inference concerning the chemical makeup of the wastes that were disposed"); *Waters v. Kohl's Dep't Stores, Inc.*, No. 14-cv-00043-KAW, 2015 WL 1519657, at *5-6 (N.D. Cal. Apr. 2, 2015) (in case involving willful spoliation of evidence, court held that adverse inference instruction must describe the specific nature of the evidence that was spoliated, and allow jury to draw inference regarding what that specific evidence might have shown); *Jackson Family Wines, Inc. v. Diageo N. Am., Inc.*, No. CV 11-5639 EMC, 2014 WL 595912, at *8 (N.D. Cal. Feb. 14, 2014) (same).

In this case, the sanctions recommendation in the Order both is disproportionate and lacks a nexus to the alleged misconduct. First, it is disproportionate. This is not a spoliation case. At worst, MELCO's conduct delayed, rather than avoided, disclosure of relevant information. For the reasons explained above, MELCO contends that its conduct was not sanctionable at all; but if the Court disagrees, it should at a minimum conclude that MELCO's conduct did not rise to the extreme level of warranting *evidentiary*

sanctions.  It is extremely rare for courts to impose evidentiary sanctions based on conduct similar to MELCO's; the Special Master's Order cited no such case, and the cases that MELCO has located are to the contrary.[6]

Second, the Special Master's Order lacked a nexus with the alleged misconduct.  This can be seen from the fact that even if this were a spoliation case—even if there were smoking-gun evidence that MELCO had intentionally destroyed information to avoid responding to interrogatories—the Special Master's recommended sanction would have been impermissible.  Suppose that, rather than merely failing to conduct a sufficient interview of Mr. Wasinger, MELCO had instructed Mr. Wasinger to incinerate sales data.  In that situation, the appropriate evidentiary sanction would have been an adverse inference *as to the content of the sales data*.  *See, e.g.*, *Internmatch*, 2016 WL 491483, at *13 n.14; *Rev 973*, 2009 WL 273205, at *4; *Waters*, 2015 WL 1519657, at *5-6; *Jackson Family Wines, Inc.*, 2014 WL 595912, at *8.

Yet the Special Master recommended a very different type of sanction.  He recommended that the Court admit into evidence ███████████████████████████ The nexus between this sanction and the alleged misconduct is non-existent.  MELCO would not have produced, in response to any interrogatory, ██████████████████████████████████.  Nor is there any basis to conclude that more detailed interrogatory responses could have led to the DPPs obtaining an admissible statement of this nature.  And Mr. Murata testified at his deposition that there was no conspiracy with another CRT manufacturer.  Ex. 6, 303:6-19.  The sanction is therefore not tailored to the misconduct.

In fact, the Special Master's recommended sanction was *contrary* to ordinary principles governing evidentiary sanctions.  The point of evidentiary sanctions is to penalize the party responsible for preventing admissible evidence from entering the case.  *See United States v. Mazzam, Inc.*, No. C-06-07497 CW (JCS),

---

[6] *See, e.g.*, *Mformation*, 2011 WL 2940289, at *2 (when party produced documents late, court refused to impose sanctions "that would be contrary to the actual facts or that would prevent the actual facts from being presented"); *Mixt Greens v. Sprout Café*, No. C–08–5175 EMC, 2010 WL 2555753, at *1 (N.D. Cal. June 21, 2010) (preclusion sanction would be "excessively severe" where defendants belatedly produced nearly all discovery and plaintiff did not suffer irreparable prejudice); *Keithley v. Homestore.com, Inc.*, No. C-03-04447 SI (EDL), 2008 WL 4830752, at *10 (N.D. Cal. Sept. 6, 2008) ("[A]n adverse inference instruction is a harsh remedy that is disproportionate to Plaintiffs' conduct in this case.  There has been no showing that Plaintiffs engaged in widespread, reckless or intentional spoliation.").

2009 WL 817264, at *7-8 (N.D. Cal. Mar. 27, 2009) (explaining that sanctions imposed pursuant to the court's inherent power are appropriate to "penalize" a litigant that has destroyed information in its possession that is "reasonably calculated to lead to the discovery of admissible evidence"). But here, that party is the DPPs. The DPPs could easily try to obtain admissible evidence from Samsung SDI, such as by serving a deposition subpoena. But they have steadfastly refused to do so, instead finding it more convenient to base their case on hearsay that cannot be cross-examined. It is inappropriate to sanction MELCO by admitting a third party's hearsay statement on a critical issue when the DPPs have made the strategic decision not to obtain admissible evidence from that third party.

The Special Master attempted to justify his choice of recommended sanction on the ground that "the claim at issue here involves violations of antitrust laws and the withheld discovery of competitor contacts, sales and destruction of evidence all relate to the claim of an antitrust violation," so the admission of the interrogatory response "would be specifically related to the claim at issue – an antitrust violation." Order at 36-37. That analysis was too loose. By that logic, essentially *any* sanction would be appropriate for *any* discovery violation, because in an antitrust case, any violation and any sanction could be said somehow to "relate to an antitrust violation." That is not enough to justify an evidentiary sanction: as explained above, the court must find that the sanction is directed toward the specific prejudice *caused* by the discovery violation. The Special Master also stated that the DPPs were prejudiced because they encountered delay in their case, had to re-take depositions, and had "to spend valuable time and resources to enforce discovery orders and obtain responses to valid discovery requests." *Id.* at 37. But even if this constituted prejudice in some abstract sense, it is not the sort of prejudice that justifies the Special Master's recommended evidentiary sanction. The point of evidentiary sanctions is to cure the prejudice from a loss of evidence; and here the proposed sanction is not tailored to evidence that was lost.

The highly unusual nature of the Special Master's proposed sanction confirms it is not appropriate. First, the Special Master's sanction of admitting third party hearsay is so unusual that it lies outside the seven categories of possible sanctions for discovery misconduct enumerated in Rule 37(b)(2)(A). Even if District Courts have the theoretical authority to craft new types of sanctions not listed in the Federal Rules, one would expect such sanctions would arise in cases with novel facts, and nothing about this case supports

-16-

NOTICE OF MOTION AND MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER OF SPECIAL MASTER [DKT. 4802]
Case No. 3:14-cv-02058-JST; Master File No. 3:07-cv-05944-JST; MDL No. 1917

imposing an unrecognized form of sanction.  Notably, unlike the Federal Rules of Civil Procedure, the Federal Rules of Evidence do cite the admission of hearsay as a permissible sanction—under Fed. R. Evid. 804(b)(6), if a party procures the unavailability of a witness, the witness's otherwise inadmissible hearsay statements may be admitted.  In that situation, the link between the misconduct and the sanction is obvious— the witness's out-of-court statements are admitted because the litigant prevented the witness from delivering in-court testimony.  No comparable link between sanction and misconduct exists here.

The Special Master pointed to only one case, decided 35 years ago, in which a court sanctioned a party by admitting otherwise inadmissible third party hearsay, and that case is the exception that proves the rule.  In *General Atomic Co. v. Exxon Nuclear Co., Inc.*, 90 F.R.D. 290 (S.D. Cal. 1981), the defendants intentionally withheld documents such as "minutes of cartel meetings."  *Id.* at 304.  Copies of some of those meeting minutes were stolen and came into the possession of a third party, but they could not be authenticated without stipulations.  *Id.* at 305.  The court held that those stolen documents could be admitted as a sanction.  *Id.* at 308-09.  Thus, the documents possessed by the third party were *the very documents that were withheld in discovery*—creating an obvious link between the discovery violation and the sanction. The DPPs can make no remotely comparable demonstration in this case.

## CONCLUSION

The Court should reject the Special Master's recommendation to impose sanctions.

1 | Dated:  September 23, 2016

JENNER & BLOCK LLP

2 | _____s/ Terrence J. Truax_____

3 | By:  Terrence J. Truax
Charles B. Sklarsky
4 | Michael T. Brody
Gabriel A. Fuentes

5

6 | ADDITIONAL COUNSEL REFERENCED
FROM CAPTION PAGE

7

8 | Brent Caslin (Cal. Bar. No. 198682)
bcaslin@jenner.com
JENNER & BLOCK LLP
9 | 633 West Fifth Street, Suite 3600
Los Angeles, California 90071
10 | Telephone:  (213) 239-5100
Facsimile:   (213) 239-5199

11

12 | Harold A. Barza (Cal. Bar. No. 80888)
halbarza@quinnemanuel.com
13 | Kevin Y. Teruya (Cal. Bar. No. 235916)
kevinteruya@quinnemanuel.com
14 | QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
15 | 865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
16 | Telephone:  (213) 443 3000
Facsimile:   (213) 443 3100

17

18 | Ryan S. Goldstein (Cal. Bar No. 208444)
ryangoldstein@quinnemanuel.com
19 | QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
20 | NBF Hibiya Building, 25F
1-1-7, Uchisaiwai-cho, Chiyoda-ku
21 | Tokyo 100-0011, Japan
Telephone:  +81 3 5510 1711
22 | Facsimile:   +81 3 5510 1712

23 | *Attorneys for Defendants*
*Mitsubishi Electric Corporation, Mitsubishi*
24 | *Electric US, Inc., and Mitsubishi Electric*
*Visual Solutions America, Inc.*

25

26

27

28

-18-