# Exhibit 2

## (Document Filed Under Seal)

Brent Caslin (Cal. Bar. No. 198682)
JENNER & BLOCK LLP
633 West Fifth Street
Suite 3600
Los Angeles, California 90071
Telephone:   213 239-5100
Facsimile:   213 239-5199
bcaslin@jenner.com

Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
Charles B. Sklarsky (*pro hac vice*)
Gabriel A. Fuentes (*pro hac vice*)
Jenner & Block LLP
353 N. Clark Street
Chicago, Illinois 60654-3456
Telephone:     312 222-9350
Facsimile:     312 527-0484
ttruax@jenner.com
mbrody@jenner.com
csklarsky@jenner.com
gfuentes@jenner.com

Harold A. Barza (Cal. Bar. No. 80888)
Kevin Y. Teruya (Cal. Bar. No. 235916)
halbarza@quinnemanuel.com
kevinteruya@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

Ryan S. Goldstein (Cal. Bar No. 208444)
ryangoldstein@quinnemanuel.com
NBF Hibiya Building, 25F
1-1-7, Uchisaiwai-cho, Chiyoda-ku
Tokyo 100-0011, Japan
Telephone:     +81 3 5510 1711
Facsimile:     +81 3 5510 1712

*Attorneys for Defendants Mitsubishi Electric*
*Corporation, Mitsubishi Electric US, Inc., and*
*Mitsubishi Electric Visual Solutions America, Inc.*

---

THE MITSUBISHI ELECTRIC DEFENDANTS' RESPONSE TO DIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL MITSUBISHI TO PROVIDE FULL AND COMPLETE RESPONSES TO DISCOVERY RE: MEETINGS WITH COMPETITORS, SALES, AND DESTRUCTION OF EVIDENCE, AND FOR EVIDENTIARY SANCTIONS
CASE NO. 14-cv-02058-JST, MDL NO. 1917

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION**<br><br>This Document Relates to:<br><br>ALL DIRECT PURCHASER ACTIONS | MDL No. 1917<br><br>Master File No. 3:07-cv-05944-JST<br>Case No. 3:14-cv-02058-JST<br><br>**THE MITSUBISHI ELECTRIC DEFENDANTS' RESPONSE TO DIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL MITSUBISHI TO PROVIDE FULL AND COMPLETE RESPONSES TO DISCOVERY RE: MEETINGS WITH COMPETITORS, SALES, AND DESTRUCTION OF EVIDENCE, AND FOR EVIDENTIARY SANCTIONS**<br><br>Special Master:  Hon. Vaughn R. Walker (ret.) |

**HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

1

## <u>TABLE OF CONTENTS</u>

2

INTRODUCTION ...................................................................................................1

3

ARGUMENT .........................................................................................................2

4

I.   The DPPs Have Not Been Denied Any Relevant Discovery........................................2

5

   A.   The Mitsubishi Electric Defendants Have Not Engaged in a General "Pattern" of
      Discovery Misconduct. ..................................................................................2

6

      1.   The Mitsubishi Electric Defendants Exited the CRT Business Long Ago....................2

7

      2.   Mitsubishi Electric Was Advised It May Be a Victim of the CRT Conspiracy
         in 2009. ..............................................................................................4

8

9

      3.   The Mitsubishi Electric Defendants Learned of Potential Litigation in Late
         2011 and Instituted Litigation Holds. ...........................................................4

10

11

      4.   The Mitsubishi Electric Defendants Diligently Collected and Produced the
         Responsive Documents Known to Them and in Their Possession............................5

12

13

   B.   The DPPs' Specific Allegations of Discovery Violations Are Without Merit. ..................7

14

      1.   Mitsubishi Electric Responded to Interrogatory No. 5 in Good Faith and Did
         Not Willfully Withhold Information from Its Response.......................................7

15

16

      2.   Mitsubishi Electric Did Not Withhold Information from Exhibit B..........................10

17

         a.   Mitsubishi Electric's Response to Interrogatory No. 5 Is Not Incomplete
            for Its Not Including Meetings or Communications That Mitsubishi
            Electric's Own Witnesses Do Not Remember......................................10

18

19

         b.   Mitsubishi Electric's Response to Interrogatory No. 5 Is Not Incomplete
            for Its Not Including Meetings or Communications That, According to the
            Documents, May Not Have Happened. ............................................13

20

21

         c.   Mitsubishi Electric's Response to Interrogatory No. 5 Is Not Incomplete
            for Its Not Including Meetings or Communications That Did Not Relate to
            CRTs or CRT Products. ............................................................14

22

23

      3.   There Is No Basis to Compel Supplemental Answers to Any of the
         Interrogatories at Issue in the Motion. .......................................................15

24

25

26

27

The Mitsubishi Electric Defendants' Response to DPPs' Combined Motion to Compel and
Motion for Sanctions
Case No. 3:14-cv-2058-JST, MDL No. 1917

28

    4.  The Remainder of the DPPs' Discovery Complaints Have Been Addressed Already by the Court and by Ongoing Discovery, and There Is No Prejudice to the DPPs ........................................................................................................17

II.  The Court Should Not Impose the DPPs' Requested Evidentiary Sanction ...........................18

    A.  Extreme Discovery Sanctions Under Rule 37(b)(2) Must Be "Just" and Must Bear a Nexus to the Misconduct Sought to Be Penalized. .........................................................18

    B.  The Discovery Sanction Sought Here Is Potentially Case-Dispositive. ...........................19

    C.  Ordering the Affirmative Admission of the Uncorroborated and █████████ ██████████████████ Would Be Unjust Under the Ninth Circuit's Five-Factor Analysis. .........................................................................................................20

    D.  The Requested Sanction Is Not Supported by the Required Nexus with the DPPs' Discovery Complaints. ..................................................................................................22

CONCLUSION ............................................................................................................................23

ii

THE MITSUBISHI ELECTRIC DEFENDANTS' RESPONSE TO DPPS' COMBINED MOTION TO COMPEL AND
MOTION FOR SANCTIONS
CASE NO. 3:14-CV-2058-JST, MDL NO. 1917

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adriana Int'l Corp. v. Thoeren*,
   913 F.2d 1406 (9th Cir. 1990) ..........................................................22

*Amersham Pharmacia Biotech, Inc. v. Perkin–Elmer Corp.*,
   190 F.R.D. 644 (N.D. Cal. 2000) ........................................................20

*Fay Ave. Props., LLC v. Travelers Prop. Cas. Co. of Am.*,
   No. 3:11-CV-02389-GPC, 2013 WL 3746107 (S.D. Cal. July 15, 2013) ..............21

*Fjelstad v. Am. Honda Motor Co., Inc.*,
   762 F.2d 1334 (9th Cir. 1985) ................................................18, 19, 22

*Halaco Eng'g Co. v. Costle*,
   843 F.2d 376 (9th Cir. 1988) ...................................................18, 22

*Hamilton Copper & Steel Corp. v. Primary Steel, Inc.*,
   898 F.2d 1428 (9th Cir. 1990) ..........................................................21

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982)........................................................................18

*Noble v. Gonzalez*,
   No. 1:07-CV-01111-LJO, 2013 WL 4517774 (E.D. Cal. Aug. 26, 2013) ........10, 17

*R & R Sails, Inc. v. Ins. Co. of Pennsylvania*,
   673 F.3d 1240 (9th Cir. 2012) ..........................................................20

*Subramani v. Wells Fargo Bank, N.A.*,
   No. 13-CV-01605-SC, 2014 WL 7206888 (N.D. Cal. Dec. 18, 2014)..................18

*Wendt v. Host Int'l, Inc.*,
   125 F.3d 806 (9th Cir. 1997) ...........................................................20

OTHER AUTHORITIES

Fed. R. Civ. P. 37 ...........................................................17, 19, 22

Fed. R. Civ. P. 37(b)(2)......................................................18, 19

Fed. R. Civ. P. 37(b)(2)(A) ......................................................18

iii

THE MITSUBISHI ELECTRIC DEFENDANTS' RESPONSE TO DPPS' COMBINED MOTION TO COMPEL AND
MOTION FOR SANCTIONS
CASE NO. 3:14-cv-2058-JST, MDL NO. 1917

Fed. R. Civ. P. 37(c)(1)...............................................................................................20

Fed. R. Civ. P. 37(e)(1)...............................................................................................19

Fed. R. Civ. P. 37(e)(2)...............................................................................................19

N.D. Cal. Civil Local Rule 7-8......................................................................................18

N.D. Cal. Civil Local Rule 7-8(a).................................................................................18

iv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

Mitsubishi Electric Corporation ("Mitsubishi Electric"), Mitsubishi Electric US, Inc. ("MEUS"), and Mitsubishi Electric Visual Solutions America, Inc. ("MEVSA") (collectively, the "Mitsubishi Electric Defendants") oppose the Motion of the Direct Purchaser Plaintiffs ("DPPs") to compel supplemental answers to Interrogatory Nos. 5, 12, and 16, and for discovery sanctions under Rule 37 of the Federal Rules of Civil Procedure.  The DPPs seek a drastic and unwarranted order compelling the admission into evidence of an otherwise ███████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████  The discovery conduct complained of by the DPPs does not represent a discovery violation, did not deny the DPPs any relevant discovery, and certainly did not prejudice the DPPs.  The Mitsubishi Electric Defendants acted reasonably and in good faith, performed a thorough search for responsive information, produced documents in their possession, and did not withhold information about competitor contacts.  That is true, even though the Mitsubishi Electric Defendants were not added to this litigation until almost a decade after Mitsubishi Electric's total exit from the CRT business.  There is no basis for further compelled interrogatory answers, or for the DPPs' claims that the Mitsubishi Electric Defendants have engaged in a pattern of discovery abuse.  As for the requested sanction, nothing about the Mitsubishi Electric Defendants' conduct warrants such an extreme, potentially case-changing sanction, ██████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████   The DPPs did not bother to conduct the required meet-and-confer session on their motion, which apparently is aimed more at gaining an unfair advantage through sanctions than at obtaining any additional discovery.  The requested sanction is unjustified, disproportionate, unrelated to the claimed violations, and a transparent attempt to prove the DPPs' allegations through an inadmissible hearsay discovery response rather than through admissible evidence.  The DPPs' motion should be denied.

1

## ARGUMENT

**I.     The DPPs Have Not Been Denied Any Relevant Discovery.**

The Mitsubishi Electric Defendants have not disregarded their discovery obligations generally or in the five specific instances the DPPs assert.  Because the Mitsubishi Electric Defendants have acted reasonably in discovery, no further discovery ought to be compelled, and as explained further in Part II, there is no basis for the DPPs' requested evidentiary sanction.

**A.     The Mitsubishi Electric Defendants Have Not Engaged in a General "Pattern" of Discovery Misconduct.**

**1.     The Mitsubishi Electric Defendants Exited the CRT Business Long Ago.**

Some 20 years ago, at the outset of the class period in 1995, Mitsubishi Electric manufactured CRTs in the form of "color picture tubes" or "CPTs" for use in television sets as well as television sets themselves containing CPTs made by Mitsubishi Electric and CPTs made by other suppliers.

2

Using its tubes, Mitsubishi Electric also for a time manufactured computer display monitors, which are "CRT Products" for purposes of the DPPs' complaint in this matter.

3

1

2

3

4

As of this 2004-2005 time frame, no one had requested the Mitsubishi Electric Defendants'

documents, and no one had threatened to sue them.  No one would ask for these documents, or

even ask for their preservation, for at least six more years.

    **2.**  **Mitsubishi Electric Was Advised It May Be a Victim of the CRT Conspiracy in 2009.**

    **3.**  **The Mitsubishi Electric Defendants Learned of Potential Litigation in Late 2011 and Instituted Litigation Holds.**

Nearly two more years passed before any of the plaintiffs moved to add the Mitsubishi Electric Defendants to the CRT litigation.  *See* Direct Action Pls.' Mot. for Leave to File Am. Compls., ECF No. 1609, March 26, 2015.  By the end of November 2013, most of the plaintiffs who sued the Mitsubishi Electric Defendants had filed their complaints, which were consolidated into the MDL.  The DPPs, whose class suit is currently before the Court, did not sue Mitsubishi Electric Defendants until May 5, 2014.  Direct Purchaser Pls.' Compl. Against Mitsubishi and Thomson, Case No. 3:14-cv-02058-SC, ECF No. 1, May 5, 2014.

### 4. The Mitsubishi Electric Defendants Diligently Collected and Produced the Responsive Documents Known to Them and in Their Possession.

After suit was filed in 2013, the Mitsubishi Electric Defendants engaged in the collection of the documents still within their possession, custody and control,  both in the United States and Japan.  In Japan, Mitsubishi Electric searched for responsive documents and found that although the company did not possess any electronic documents from its former CRT business, some responsive documents were located in Kyoto, where the company had operated the factory formerly used to manufacture CRTs, and where documents about the CRT business were kept after the CRT business was discontinued.  Declaration of Masaya Nakata ("Nakata Decl.") ¶ 3.  Mitsubishi Electric also searched its Tokyo offices for documents relevant to the CRT business and located responsive materials.  *Id.* ¶ 4.   In all, Mitsubishi Electric scanned, digitized, processed, and produced over 130,000 pages of documents.  Brody Decl. ¶ 9.  Mitsubishi Electric's U.S. subsidiaries, MEUS and MEVSA, also defendants in this case, ultimately produced more than 34,000 pages of documents, which included emails from MEUS and MEVSA's archival email servers, data from MEUS' and MEVSA's SAP systems (which contained CRT sales-related documents), and paper MEVSA documents produced in September 2015. *Id.* ¶ 10.

MEVSA subsequently learned of additional potentially responsive documents after the deposition in July 2015 of a former MEVSA employee named Max Wasinger.  Mr. Wasinger

5

had worked in CRT sales for a predecessor company to MEVSA and had departed the company at the end of 2013, but in his deposition, he referred to having seen paper documents, which he did not retain, setting forth limited CRT sales summary information.   Brody Decl., Ex. 7 Wasinger Dep. 65:2-8.   He also was questioned about corporate document retention policies calling for sales reports to be preserved, and about how certain sales reports were not preserved, all before Mitsubishi Electric or its affiliates were involved in any actual or potential litigation regarding the CRT business. *Id.* 82:7-88:12.

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████   MEVSA searched an off-site storage facility, and as a result of that search, MEVSA located 13 boxes that could contain responsive information; MEVSA eventually identified and produced additional responsive documents on September 24, 2015 from these materials.   Brody Decl., Ex. 8, G. Fuentes Ltr. to R. Saveri, Sept. 24, 2015.

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████   Brody Decl., Ex. 9 D. Millen Email to J. Hoffman, Dec. 4, 2015.   The search term discussions are continuing while MEVSA proceeds with production of documents.   In a good-faith effort to ensure that all responsive documents are produced, MEVSA is finalizing a supplemental document production it expects to make shortly after the submission date of this response.

In sum, the Mitsubishi Electric Defendants' document search and production, hampered as it was by the passage of time, nonetheless resulted or is resulting in production of all the responsive, non-privileged documents the companies believe they have, and well in advance of the close of discovery – which has yet to be set in this matter.   There is no basis whatsoever to

allege that the DPPs have been hampered in their discovery efforts in any way by the Mitsubishi Electric Defendants' document production.

**B.     The DPPs' Specific Allegations of Discovery Violations Are Without Merit.**

The five allegations the DPPs level at the Mitsubishi Electric Defendants to justify the proposed sanction, *see* DPP Mot. to Compel Mitsubishi to Provide Full and Complete Resps. to Discovery re: Meetings with Competitors, Sales, and Destruction of Evid., and for Evid. Sanctions ("DPP Mot.") at 3, are incorrect.  Mitsubishi Electric has behaved reasonably.

**1.     Mitsubishi Electric Responded to Interrogatory No. 5 in Good Faith and Did Not Willfully Withhold Information from Its Response.**

The DPPs' Interrogatory No. 5 seeks identification of:

> [A]ny meeting or communication between You and other producers of CRT and/or CRT Products during the Relevant Time Period, including the named Defendants and Co-Conspirators in this coordinated proceeding, regarding CRT and/or CRT Product pricing, price increase announcements, terms or conditions of sales, profit margins or market share, production levels, inventory, customers, auctions, reverse auctions, dynamic bidding events, or sales . . .

Brody Decl., Ex. 10, Direct Purchaser Pl. Crago, d/b/a, Dash Computers, Inc.'s First Set of Interrogs. to Defs. Mitsubishi, Thomson, and TDA ("Crago Interrogs.") at 6.  Interrogatory No. 5 therefore called on Mitsubishi Electric to attempt to list every meeting any of its employees ever had with any other CRT producer about the CRT business, no matter how benign or non-conspiratorial any of the meetings were.  Mitsubishi Electric was to attempt to list these meetings going back to 1995, in an industry it had exited in or about 2004, after which many of its employees involved in that business had left the company.

In fact, when Mitsubishi Electric posed the converse interrogatory to the DPPs, seeking identification of all competitor contacts the DPPs contended were evidence of Mitsubishi Electric's involvement in the alleged CRT conspiracy, the DPPs initially objected and refused to do it, on the ground that the task was simply too difficult.  Brody Decl., Ex. 11, Pl. Crago, d/b/a, Dash Computers, Inc.'s Objs. and Resps. to Def. Mitsubishi Electric Corp.'s First Set of Interrogs. to Direct Purchaser Pls. ("DPP Interrog. Resps.") at 6  ("Plaintiff[s] will not provide an

7

exhaustive meeting by meeting, defendant by defendant account of the hundreds of meetings occurring over a 12 year period during the conspiracy.  Such an account would be of little use but would require an enormous amount of work.")  The DPPs eventually undertook to answer this Interrogatory, while preserving their objection.  Likewise, Mitsubishi Electric undertook to answer Interrogatory No. 5 as best it could and in good faith, yet now finds itself falsely accused of not providing a sufficiently "complete" response to the kind of question the DPPs had maintained – when it was put to them – can never be answered exhaustively.  Ultimately, the meetings or communications Mitsubishi Electric identified in response to this interrogatory are irrelevant to the supposed liability of Mitsubishi Electric, because none was "conspiratorial," and there has been no evidence in this case that any of them was "conspiratorial," and not just from Mitsubishi Electric.  Discovery in the CRT litigation has included the depositions of some 75 witnesses from 10 alleged conspiring CRT companies, yet not a single witness has testified to any conspiracy or illegal agreement with Mitsubishi Electric.  While the DPPs appear to assume – incorrectly – that the mere occurrence of meetings equates to Sherman Act liability, the question now before the Court, in the DPPs' motion, is whether Mitsubishi Electric willfully and in bad faith withheld information from its extensive response to Interrogatory No. 5.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████   In other words, long before Mitsubishi Electric first answered the DPPs' Interrogatory No. 5, the DPPs had substantial deposition and document discovery related to their claim ████████████████████████████ None of that discovery has supported the DPPs' claim.

After Mitsubishi Electric served its revised Exhibit B on January 16, 2015, the DPPs took more discovery. ████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████   Brody Decl., Ex. 4, Seki Dep. Vol. I 80:9-24; 119:24-124:15; 124:16-126:21; ████████

████████████████████████████████████████████████████████

██████████████████████████████████████████   At these depositions, the plaintiffs had a full opportunity to ask these witnesses any question they wished about any of the communications disclosed on the revised Exhibit B.  The DPPs have no support for any argument that any delay associated with Mitsubishi Electric's revision of Exhibit B as of January 2015, more than a year before discovery is likely to be closed in this case, resulted in any prejudice to the DPPs' ability to conduct discovery in this case.

Unable to argue that the timing of the service of Mitsubishi Electric's revised Exhibit B caused the DPPs any prejudice, the DPPs argue that the revised Exhibit B itself represents a denial of discovery or a withholding of information.  But a closer look at the revised Exhibit B

9

itself, and the DPPs' claims that Mitsubishi Electric withheld information from it, demonstrates that Mitsubishi Electric was not hiding any information at all from its revised Exhibit B and thus from its response to Interrogatory No. 5.

> **2.      Mitsubishi Electric Did Not Withhold Information from Exhibit B.**

The 11 examples cited by the DPPs in their argument that Mitsubishi Electric withheld information from its responses to Interrogatory No. 5, and specifically from its revised Exhibit B, instead illustrate the difficulty in combing through thousands of production documents from multiple CRT suppliers to come up with a set of meetings or communications that Mitsubishi Electric might be able to acknowledge in a sworn interrogatory response.  A closer look at the DPPs' 11 examples shows that rather than withholding information, Mitsubishi Electric answered the interrogatory as best it could:  All 11 of the examples represent events that Mitsubishi Electric could never have acknowledged under oath, because the evidence, including the deposition testimony of Mitsubishi Electric witnesses, does not support a conclusion that the events happened.[1]

> **a.      Mitsubishi Electric's Response to Interrogatory No. 5 Is Not Incomplete for Its Not Including Meetings or Communications That Mitsubishi Electric's Own Witnesses Do Not Remember.**

As to five of the DPPs' 11 examples, the documentary evidence of the meetings or communications came not from Mitsubishi Electric but from another entity, or the Mitsubishi Electric witness who was asked about the meeting or communication had no memory or knowledge that it happened.  Mitsubishi Electric cannot swear under oath that an event happened if it does not know that it happened.

██████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

███  But the document the DPPs cited is an internal Hitachi document from 2000 describing a

---

[1] A party "is not required to speculate when responding to interrogatories."  *Noble v. Gonzalez,* No. 1:07-CV-01111-LJO, 2013 WL 4517774, at *18 (E.D. Cal. Aug. 26, 2013).

THE MITSUBISHI ELECTRIC DEFENDANTS' RESPONSE TO DPPS' COMBINED MOTION TO COMPEL AND MOTION FOR SANCTIONS
CASE NO. 3:14-CV-02058-JST, MDL NO. 1917

visit by certain Hitachi personnel to a Mitsubishi Electric-related manufacturing facility in Mexicali, Mexico.  No Mitsubishi Electric person is shown as a recipient of this document, and none appears to be named in the document.  Having received the document in discovery, the DPPs extensively questioned a Mitsubishi Electric witness, Mr. Kunihiko Seki, about the document and the alleged Hitachi visit to the Mexicali plant.  Mr. Seki was stationed in Mexico at the time and said he did not remember meeting with anyone from Hitachi coming to Mexicali to visit the plant.  Brody Decl., Ex. 4, Seki Dep. Vol. I 93:23-96:21.  Mitsubishi Electric cannot be said to have willfully withheld identification of a meeting that its witness did not recall.

The document cited by the DPPs was produced not by Mitsubishi Electric, but by Chunghwa Picture Tubes ("Chunghwa").  Mitsubishi Electric did not withhold any information from the DPPs, and it could not swear under oath to the occurrence of a meeting that Mr. Konishi did not clearly remember or know of.

The DPPs had access, though, to Mr. Seki, the Mitsubishi Electric employee with responsibility for Taiwan sales at the time, and Mr. Seki testified at his deposition in this case that he was unaware of this meeting.  Brody Decl., Ex. 4 Seki Dep. Vol. I 91:1-92:4; *see also* 74:19-25, 90:18-22.

11

Mr. Seki also testified that he was unaware of *any* Mitsubishi Electric employees who met with Chunghwa and did not remember ever sending anyone from Mitsubishi Electric to meet with Chunghwa, or any other CRT supplier, about the subject matter described in the Chunghwa document – which was produced by Chunghwa and not Mitsubishi Electric.  *Id.* 91:1-92:4, 102:7-23.  Given Mr. Seki's testimony, Mitsubishi Electric did not violate a discovery obligation by not listing this meeting on the revised Exhibit B based only on the Chunghwa document, or by not supplementing the exhibit after the Seki deposition.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████  The DPPs asked him about both documents concerning these alleged trips, and he did not remember making them.  Brody Decl., Ex. 4 Seki Dep. Vol. II 183:6-8; Vol. I 118:9-11.  ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████  As Mr. Seki explained in his deposition, there are numerous Samsung entities.  Brody Decl., Ex. 4 Seki Dep. Vol. I 104:12-106:12  Samsung Electronics Corporation, the ultimate parent, manufactured monitors and was a *customer* of Mitsubishi Electric.  *Id*. 58:2-59:21.  The CRT manufacturer – Samsung SDI – is a separate company.  Mr. Seki repeatedly denied having met with Samsung SDI.  *Id.* Vol. I 59:9-11; 78:8-12; Vol. II 168:4-6.  Not all "Samsung" meetings were with competitors, and Mitsubishi Electric has no reason to believe that they were, even if Mr. Seki had remembered making either of these two particular business trips, and he did not.

In each of the foregoing examples, the Mitsubishi Electric witness did not remember the meeting in question, or the document discussing the meeting was an internal document of another CRT supplier.  Mitsubishi Electric in no way can be faulted for not swearing under oath that these meetings occurred.  When they embarked on the difficult task of identifying meetings

from 10-20 years ago about a business they exited a decade ago, they did not violate any discovery obligation by not listing these meetings in their revised exhibit to their response to Interrogatory No. 5.

**b.    Mitsubishi Electric's Response to Interrogatory No. 5 Is Not Incomplete for Its Not Including Meetings or Communications That, According to the Documents, May Not Have Happened.**

Three more of the DPPs' examples of alleged meetings are based on documents that do not establish that the meetings took place.  In these instances, the DPPs claim that meetings happened because the names of certain Mitsubishi Electric persons appeared in a diary next to cryptic entries that did not even state that a meeting took place. *See* DPP Mot. at 13 (referring to alleged meetings on August 29, 2000, January 13, 2003, and August 30, 2004, and citing documents produced by Samsung SDI and Philips). ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████ As to the second, the person named is Mr. Seki, who told the DPPs at his deposition that he was not aware of meetings between Samsung SDI and Mitsubishi Electric.  Brody Decl., Ex. 4 Seki Dep. Vol. I 59:9-11; 78:8-12; Vol. II 168:4-6. ████████

████████████████████████████████████████

████████████████████ When the DPPs asked Mr. Seki about meetings with LG-Philips Display ("LPD"), he testified that he did not remember any.  Brody Decl., Ex. 4 Seki Dep. Vol. I 143:2-144:11; *see also id.* 78:14-17; Vol. II 168:10-12.  Without any basis to conclude that any of these meetings happened, Mitsubishi Electric did not violate any discovery obligation by not stating under oath that they occurred.

### c.   Mitsubishi Electric's Response to Interrogatory No. 5 Is Not Incomplete for Its Not Including Meetings or Communications That Did Not Relate to CRTs or CRT Products.

The final three examples the DPPs assert as evidence that Mitsubishi Electric willfully failed to answer Interrogatory No. 5 concern meetings with Philips in the Netherlands and Tokyo, DPP Mot. at 14. ████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████   A plain reading of Interrogatory No. 5 indicates that it seeks competitor meetings and communications *"regarding CRT and/or CRT Product* pricing*, price increase announcements, terms and conditions of sales," and assorted other issues.  Brody Decl., Ex. 10 Crago Interrogs. at 6 (emphasis added).  Mitsubishi Electric did not withhold information or violate a discovery obligation by not including in its response a reference to a meeting that it reasonably concluded was not responsive to the interrogatory.

In sum, when Mitsubishi Electric responded to Interrogatory No. 5 by parsing through the limited available evidence to assemble a list of meetings and communications with other CRT producers from 10-20 years ago, it did so in good faith and did not withhold information.  The DPPs have not established otherwise, given that (1) they are on record stating that a task like this cannot be done exhaustively, and (2) their 11 examples of Mitsubishi Electric's supposedly willful omissions fall flat because each demonstrates that Mitsubishi Electric would have had, or did have, ample reason not to include those events in a sworn interrogatory answer.  Mitsubishi Electric did not violate any discovery obligation in their response to Interrogatory No. 5.  At most, the DPPs have proved that the parties may differ over what ought to be included and could address their differences in a discovery conference.  ██████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

But rather than hold a discovery conference, the DPPs chose motion practice instead.

14

In addition, the DPPs' 11 examples also show the extensive document and deposition discovery the DPPs have had as to these alleged meetings, not to mention the six years' worth of discovery opportunities the DPPs have had to uncover any supposed conspiracy meetings attended by Mitsubishi Electric.  These opportunities include receiving over 2.5 million pages of documents, taking or having the opportunity to attend more than 75 depositions of alleged cartelists, and receiving countless detailed responses to written discovery.  Yet the DPPs have pointed to not one fact arising from the discovery record that Mitsubishi Electric willfully failed to list a single conspiratorial meeting.

### 3. There Is No Basis to Compel Supplemental Answers to Any of the Interrogatories at Issue in the Motion.

Not having withheld information, Mitsubishi Electric should not be compelled to supplement their answers to Interrogatory Nos. 5, 12, and 16.

Interrogatory No. 12 does not ask for estimates, guesses, or extrapolations of possible CRT sales data from the Mitsubishi Electric's former CRT business going back 20 years from now.  Instead, it asks for much more precise and specific information about sales:

> Provide your sales of CRT and/or CRT Products to the United States and globally for each month from January 1, 1991, to the present.  For each month during this period, state the volume of sales, the U.S. dollar value of sales, the unit sale price, the per unit cost to product CRT and/or CRT Products, the per unit cost to distribute CRT and/or CRT Products (including overseas freight, tariff, custom, duties, inland freight, insurance, dealer commissions), and the per unit profit earned.

Brody Decl., Ex. 10 Crago Interrogs. at 7-8.

After further reviewing electronic discovery they are preparing to produce from MEVSA, and MEVSA's September 2015 production of paper documents, the Mitsubishi Electric Defendants have not been able to do more than guess or estimate as to its

15

past CRT or CRT Product sales totals, absent expert testimony and analysis, which has not yet commenced in this action.  To the extent that Mitsubishi Electric offers any such expert analysis, the DPPs will be entitled to discovery for that analysis during expert discovery.  In the meantime, the DPPs have developed their own estimates, *based on the discovery produced so far by Mitsubishi Electric.* The DPPs used production documents from MEVSA to develop a claimed estimate of ████████████████████████████████████████████████████████████

████████████████████  DPP Mot. at 11.  The DPPs of course are free to guess or estimate, based on MEVSA production data they characterize in their motion as "substantial sales information," yet in the same breath they claim that by not advancing its own guess in a sworn response to an interrogatory that does not seek estimates, the Mitsubishi Electric Defendants have committed some sort of discovery violation.  *Id.* at 3.  Mitsubishi Electric is not required to make such guesses based on documents it has already produced to the DPPs; Mitsubishi Electric does not have any information on this subject beyond the documents themselves.

Interrogatory No. 16 concerns document loss and destruction, and the DPPs argue that the Court should compel the Mitsubishi Electric Defendants to identify responsive documents that have been lost or destroyed.  *Id.* at 2.  The DPPs argue that when the Mitsubishi Electric Defendants disclosed that documents may have been destroyed or discarded as a result of the companies' exit from the CRT business in 2004, this response is "insufficient," is "self-serving," and "lacks meaningful detail."  *Id.* at 16.  But the DPPs never advance any reason to suggest that any of the Mitsubishi Electric Defendants would actually know what documents were discarded 10 years ago when the CRT business was shut down.  The DPPs note that they developed testimony, from witness Max Wasinger, that sales data was discarded (before the litigation concerning a business that was sold) despite a corporate document retention policy.  *Id.* at 10.  But the DPPs point to no testimony by Mr. Wasinger or anyone else, and there is none, that anyone at the Mitsubishi Electric Defendants destroyed documents with an intention to subvert the CRT litigation or obstruct discovery by any plaintiff.  Without knowing the facts about what

16

documents were discarded, the Mitsubishi Electric Defendants have no basis upon which to supplement their answer to Interrogatory No. 16 as the DPPs are demanding, and there is no basis to compel them to provide information they do not possess. *See Noble*, 2013 WL 4517774, at *12 (E.D. Cal. Aug. 26, 2013) ("[W]here the answer states that no record exists, the court cannot compel the impossible.").

> ### 4.    The Remainder of the DPPs' Discovery Complaints Have Been Addressed Already by the Court and by Ongoing Discovery, and There Is No Prejudice to the DPPs.

The DPPs' remaining grounds for their proposed Rule 37 discovery sanctions concern the deposition and deposition preparation of Mr. Murata, and they concern issues that the Special Master previously resolved in a manner that provided the DPPs with considerable additional discovery. To recap, Mitsubishi Electric's counsel took a break during Mr. Murata's deposition on December 9, 2014, in a manner which the Special Master disapproved. On the DPPs' motion, the Special Master directed Mitsubishi Electric to recall Mr. Murata. Brody Decl., Ex. 17 Order re Direct Purchaser Pls.' Mot. to Compel Mitsubishi to Provide Testimony and other Evidence from Mr. Koji Murata at 10, ECF No. 3859, May 29, 2015. Mitsubishi Electric complied with the order, which also required Mitsubishi Electric to produce documents shown to Mr. Murata to prepare him for the December 9 deposition, and to provide additional information about Mr. Murata's search for responsive material on a personal email account. *Id.*

17

███████████████████████████████████████████████████████

███████  Brody Decl., Ex. 4 Seki Dep. Vol. II 225:11-23.

## II.   The Court Should Not Impose the DPPs' Requested Evidentiary Sanction.

Although Federal Rule of Civil Procedure 37(b)(2)(A) grants the Court discretion to impose "just" sanctions upon a party as punishment for a discovery violation, none of the Mitsubishi Electric Defendants' conduct in this case comes close to warranting the extreme, severe and disproportionate form of relief sought here by the DPPs: compelled admission of a third party's inadmissible discovery response that is unsupported by any of the evidence. If there were any admissible evidence to support the allegations in ████████████████████████ the DPPs should seek to prove the allegations through that evidence, and not through an unwarranted discovery sanction compelling admission of the inadmissible hearsay discovery response.[2]

### A.   Extreme Discovery Sanctions Under Rule 37(b)(2) Must Be "Just" and Must Bear a Nexus to the Misconduct Sought to Be Penalized.

Under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, the Court has discretion to impose sanctions up to default or dismissal against a party for failure to obey an order to permit or provide discovery, but the sanctions must be "just." Fed. R. Civ. P. 37(b)(2)(A); *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). They must also bear a nexus to the conduct forming the basis for the sanction. *See Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 381 (9th Cir. 1988) ("The most critical criterion for the imposition of a dismissal sanction is that the misconduct penalized must relate to matters in controversy in such as way as to interfere with the rightful decision of the case."); *Fjelstad v. Am. Honda Motor*

---

[2] The Mitsubishi Electric defendants are responding to the DPPs' motion to compel in this response brief even though the DPPs violated Local Rule 7-8(a) by filing their motion to compel in the same document as their sanctions motion. *See* L.R. 7-8(a) ("[a]ny motion for sanctions, regardless of the sources of authority invoked . . . must be separately filed and the date for hearing must be set in conformance with Civil L.R. 7-2"); *Subramani v. Wells Fargo Bank, N.A.*, No. 13-CV-01605-SC, 2014 WL 7206888, at *3 (N.D. Cal. Dec. 18, 2014) (denying sanctions motion without prejudice where it was not separately filed and thus violated Civil Local Rule 7-8).

*Co., Inc.*, 762 F.2d 1334, 1342 (9th Cir. 1985) ("Sanctions imposed under Rule 37(b)(2) 'must be specifically related to the particular 'claim' which was at issue in the order to provide discovery.'").  The Ninth Circuit has described "just" sanctions as those which are triggered only by a showing of willfulness, fault, or bad faith.  *See id.* at 1337 ("'Where the drastic sanctions of dismissal or default are imposed, however, the range of discretion is narrowed and the losing party's non-compliance must be due to willfulness, fault, or bad faith.'").  The requirement of a showing of bad faith to support a sanction of dismissal, or a sanction tantamount to dismissal, is consistent with the most recent revisions to Rule 37.  *See* Fed. R. Civ. P. 37(e)(2) (providing that sanction of dismissal or adverse inferences for failure to produce electronically stored information are not available absent a finding of "intent to deprive" the other party of the information's use in the litigation).  As recently amended, the rule further provides that absent such an "intent to deprive," the sanction available to address prejudice to the other party must be "no greater than necessary to cure the prejudice."  *Id.* 37(e)(1).

### B.     The Discovery Sanction Sought Here Is Potentially Case-Dispositive.

The severity of the DPPs' proposed sanction should not be understated.  Ever since being sued in this case, the Mitsubishi Electric Defendants have sought unsuccessfully to learn what, if any, evidence might exist to corroborate the allegation of participation by "at least one Mitsubishi entity" in the CRT conspiracy, which Mitsubishi Electric denies.

Yet now

the DPPs have asked for a sweeping sanction in which one of their primary problems of proof in this case will be solved by having the Court admit the ██████████████ into evidence.

The sanction would go even farther in that ████████████████████ is inadmissible hearsay ordinarily barred from the courtroom under the Federal Rules of Evidence. The discovery response would be offered plainly for its "truth," which is not only uncorroborated but plainly contradicted by some of the evidence of the case, ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████ Admitting the inadmissible and uncorroborated ██████████████████ could have an unwarranted case-dispositive effect. *See R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012) (reversing and remanding district court sanction where "sanction [under Rule 37(c)(1)] was particularly harsh, because it dealt a fatal blow").

C.  **Ordering the Affirmative Admission of the Uncorroborated and Inadmissible ████████████████████ Would Be Unjust Under the Ninth Circuit's Five-Factor Analysis.**

A court determines whether a severe sanction, such as a case-dispositive sanction or exclusionary sanction, is proper under a five-factor test analyzing: "1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring disposition of cases on their merits; 5) the availability of less drastic sanctions." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997).  Generally, severe sanctions are "improper absent undue prejudice to the opposing side." *Amersham Pharmacia Biotech, Inc. v. Perkin–Elmer Corp.*, 190 F.R.D. 644, 648 (N.D. Cal. 2000).  As the DPPs point out in their motion, the decisive factors in an analysis of whether alleged discovery violations warrant extreme sanctions are the risk of prejudice to the party seeking sanctions and the availability of less drastic sanctions.  DPP Mot. at 18 (citing *Payne v.*

*Exxon Corp.*, 121 F.3d 503, 507, 510 (9th Cir. 1997)).  Both factors cut sharply against ordering that the ████████████ answer be admitted into evidence at trial in this case.

First, none of the conduct alleged here by the DPPs puts them at risk of prejudice in this case.  While the DPPs claim that they have been "deprived" of "important evidence," *id.* at 19, they fail to explain how that is so.  While the DPPs have pointed to 11 supposed instances of their not being told of particular contacts between Mitsubishi Electric and other CRT suppliers, in none of those instances could Mitsubishi Electric state under oath that any of the contacts actually happened, and the DPPs had ample discovery on all of them.  *See supra* Part I.B.1.  A party suffers prejudice sufficient to support the imposition of severe sanctions "where the disobedient party's actions impair the opposing party's ability to go to trial or threaten to interfere with the rightful decision of the case."  *Fay Ave. Props., LLC v. Travelers Prop. Cas. Co. of Am.,* No. 3:11-CV-02389-GPC, 2013 WL 3746107, at *9 (S.D. Cal. July 15, 2013).  DPPs have not identified any way in which Mitsubishi Electric's actions have impaired DPPs' ability to prepare for trial, or threatened to interfere with the rightful decision of this case.  In this matter in which discovery remains ongoing, the DPPs can show no prejudice from the Mitsubishi Electric Defendants' conduct of discovery, particularly where no responsive information was withheld and the DPPs have had extensive discovery on the matters they claim were withheld from them.

Second, even if the Special Master decides that sanctions are warranted, less drastic sanctions are available.  *See Hamilton Copper & Steel Corp. v. Primary Steel, Inc.*, 898 F.2d 1428, 1431 (9th Cir. 1990) (district judge should not have imposed the extreme sanction of dismissal without first considering and trying less drastic sanctions).  While Mitsubishi Electric disagrees that such steps are required here, Mitsubishi Electric could be forced to produce foreign-based witnesses for successive deposition sessions – something that already has happened with respect to Mr. Murata and Mr. Konishi.  The DPPs will have the supplemental MEVSA documents in time to assess them and decide what if any further action is suggested by

21

them.  The DPPs have failed to demonstrate that compelling the admission of ███████

███████████████████████████████████████████████████████████████

███████████ – is a proportionate response to, for example, MEVSA's efforts to supplement its document production on its own initiative, Mitsubishi Electric's defense of the Murata deposition, Mitsubishi Electric's having supplemented its response to Interrogatory No. 5 in January 2015, or any of the DPPs' discovery complaints in combination.  Finally, if the DPPs had wanted to conduct a serious discussion about supplementing Interrogatory No. 5 with competitor contacts that they believed Mitsubishi Electric knew of, they could have raised those issues in a meet-and-confer session.  But they did not, preferring instead to ask the Court to intervene in this matter through an unwarranted evidentiary sanction.

### D.  The Requested Sanction Is Not Supported by the Required Nexus with the DPPs' Discovery Complaints.

A severe sanction such as the one proposed here requires a nexus to the alleged misconduct forming the basis for the sanction.  *Halaco Eng'g*, 843 F.2d at 381-82; *Fjelstad*, 762 F.2d at 1342-43; *see also Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1412 n.6 (9th Cir. 1990) ("In order for the sanction to comport with due process, the sanction imposed under Rule 37 must be specifically related to the particular claim which was at issue in the order to provide discovery."); DPP Mot. at 19 (citing *Adriana*, 913 F.2d 1406).  As noted above, nothing about any of the alleged discovery conduct here has interfered with rightful decision of the case, or even the DPPs' ability to prepare for trial.

The sales information requested in Interrogatory No. 12, or the document destruction information requested in Interrogatory No. 16, may well be "important," but it does not connect to admitting ██████████████████████████████████████████████████

███████████████  In any event, DPPs suffered no prejudice due to a lack of Mitsubishi Electric U.S. sales data.  ██████████████████████████████████████████

██████████████████████████████████████████████████████████████

22

████████████████████████████████████████████████████

████ DPPs' damages are based on purchases from all alleged co-conspirators, reducing any missing Mitsubishi Electric data to a rounding error at best. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ DPPs can use these numbers to approximate damages related to Mitsubishi Electric.

The matters arising from the Murata deposition, or the supplemental production of U.S. documents from MEVSA, an entity as to which no evidence of liability has ever surfaced in the case, also would not be correctively addressed by admission of █████████████████ ████ Admission of █████████████████ answer would simply give the DPPs an unfair advantage at the trial. And the DPPs' arguments are at their weakest with regard to Mitsubishi Electric's responses to Interrogatory No. 5, calling for disclosure of competitor contacts: Mitsubishi Electric had no basis to include in their response the additional contacts cited by the DPPs, who had extensive discovery of those matters.

With no showing of discovery misconduct, no showing that the DPPs were prejudiced or were denied discovery, and no nexus between the alleged misconduct and the stark, game-changing impact of the DPPs' proposed sanction, the Special Master should deny the sanction. The Mitsubishi Electric Defendants did nothing in this case to warrant the Special Master placing its thumb so heavily on the scale.

## CONCLUSION

For the foregoing reasons, the Mitsubishi Electric Defendants respectfully request that the DPPs' motion to compel and for discovery sanctions be DENIED.

Dated: December 23, 2015

By: */s/ Terrence J. Truax*
Terrence J. Truax
Charles B. Sklarsky
Michael T. Brody
Gabriel A. Fuentes
Jenner & Block LLP
353 North Clark St., Chicago, IL 60654
Tel: 312-222-9350
Fax: 312-527-0484

By: */s/ Harold A. Barza*

Harold A. Barza
Kevin Y. Teruya
Ryan S. Goldstein
Quinn Emanuel Urquhart & Sullivan LLP
865 S. Figueroa St.
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100

*Attorneys for Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc., and Mitsubishi Electric Visual Solutions America, Inc.*

THE MITSUBISHI ELECTRIC DEFENDANTS' RESPONSE TO DPPS' COMBINED MOTION TO COMPEL AND
MOTION FOR SANCTIONS
CASE NO. 3:14-CV-02058-JST, MDL NO. 1917

1   Brent Caslin (Cal. Bar. No. 198682)
    JENNER & BLOCK LLP
2   633 West Fifth Street
    Suite 3600
3   Los Angeles, California 90071
4   Telephone:   213 239-5100
    Facsimile:   213 239-5199
5   bcaslin@jenner.com

6   Terrence J. Truax (*pro hac vice*)
    Michael T. Brody (*pro hac vice*)
7   Charles B. Sklarsky (*pro hac vice*)
    Gabriel A. Fuentes (*pro hac vice*)
8   Jenner & Block LLP
    353 N. Clark Street
9   Chicago, Illinois 60654-3456
    Telephone:   312 222-9350
10  Facsimile:   312 527-0484
    ttruax@jenner.com
11  mbrody@jenner.com
    csklarsky@jenner.com
12  gfuentes@jenner.com

13  Harold A. Barza (Cal. Bar. No. 80888)
    Kevin Y. Teruya (Cal. Bar. No. 235916)
14  halbarza@quinnemanuel.com
    kevinteruya@quinnemanuel.com
15  865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
16  Telephone:     (213) 443-3000
    Facsimile:     (213) 443-3100
17
    Ryan S. Goldstein (Cal. Bar No. 208444)
18  ryangoldstein@quinnemanuel.com
    NBF Hibiya Building, 25F
19  1-1-7, Uchisaiwai-cho, Chiyoda-ku
    Tokyo 100-0011, Japan
20  Telephone:     +81 3 5510 1711
    Facsimile:     +81 3 5510 1712
21
    *Attorneys for Defendants Mitsubishi Electric*
22  *Corporation, Mitsubishi Electric US, Inc., and*
    *Mitsubishi Electric Visual Solutions America, Inc.*
23

24

25

26

27

28

DECLARATION OF MASAYA NAKATA IN SUPPORT OF THE MITSUBISHI ELECTRIC DEFENDANTS RESPONSE TO
DIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL MITSUBISHI TO PROVIDE FULL AND COMPLETE
RESPONSES TO DISCOVERY RE: MEETINGS WITH COMPETITORS, SALES, AND DESTRUCTION OF EVIDENCE, AND
FOR EVIDENTIARY SANCTIONS
CASE NO. 14-CV-02058-JST, MDL NO. 1917

1

2                    IN THE UNITED STATES DISTRICT COURT

3                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

4                            SAN FRANCISCO DIVISION

5

6    **IN RE: CATHODE RAY TUBE (CRT)**          MDL No. 1917
     **ANTITRUST LITIGATION**

7    This Document Relates to:                  Master File No. 3:07-cv-05944-JST
                                                Case No. 14-cv-2058-JST
8    ALL DIRECT PURCHASER ACTIONS

9                                               **DECLARATION OF MASAYA NAKATA**
                                                **IN SUPPORT OF THE MITSUBISHI**
10                                              **ELECTRIC DEFENDANTS' RESPONSE**
                                                **TO DIRECT PURCHASER PLAINTIFFS'**
11                                              **MOTION TO COMPEL MITSUBISHI TO**
                                                **PROVIDE FULL AND COMPLETE**
12                                              **RESPONSES TO DISCOVERY RE:**
                                                **MEETINGS WITH COMPETITORS,**
13                                              **SALES, AND DESTRUCTION OF**
                                                **EVIDENCE, AND FOR EVIDENTIARY**
14                                              **SANCTIONS**

15                                              Special Master:  Hon. Vaughn R. Walker

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF MASAYA NAKATA

I, Masaya Nakata, make this declaration as follows:

     1.    I am a member of the Legal & Compliance Division of Mitsubishi Electric Corporation ("Mitsubishi Electric"), a defendant in this action.

     2.    I am one of the members of Mitsubishi Electric with responsibility for the CRT litigation, including Mitsubishi Electric's efforts to collect documents in Japan related to the CRT matter.

     3.    Mitsubishi Electric searched for responsive documents in its Kyoto facility, which had manufactured CRTs, and where documents about the CRT business were kept after the CRT business was discontinued. Although Mitsubishi Electric no longer possesses in Japan any electronic documents related to its CRT business, it found and produced some hard copy responsive documents from its Kyoto facility.

     4.    Mitsubishi Electric also searched its Tokyo offices for documents related to its former CRT business. Mitsubishi Electric located and produced hard copy responsive materials from its Tokyo headquarters.

     I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

     Executed this 24th day of December at Tokyo, Japan.

                   /s/ Masaya Nakata     *Masaya Nakata*
                   Masaya Nakata

1

1  Brent Caslin (Cal. Bar. No. 198682)
   JENNER & BLOCK LLP
2  633 West Fifth Street
   Suite 3600
3  Los Angeles, California 90071
   Telephone:   213 239-5100
4  Facsimile:   213 239-5199
   bcaslin@jenner.com
5
6  Terrence J. Truax (*pro hac vice*)
   Michael T. Brody (*pro hac vice*)
7  Charles B. Sklarsky (*pro hac vice*)
   Gabriel A. Fuentes (*pro hac vice*)
8  Jenner & Block LLP
   353 N. Clark Street
9  Chicago, Illinois 60654-3456
   Telephone:       312 222-9350
10 Facsimile:       312 527-0484
   ttruax@jenner.com
11 mbrody@jenner.com
   csklarsky@jenner.com
12 gfuentes@jenner.com
13 Harold A. Barza (Cal. Bar. No. 80888)
   Kevin Y. Teruya (Cal. Bar. No. 235916)
14 halbarza@quinnemanuel.com
   kevinteruya@quinnemanuel.com
15 865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
16 Telephone:       (213) 443-3000
   Facsimile:       (213) 443-3100
17
18 Ryan S. Goldstein (Cal. Bar No. 208444)
   ryangoldstein@quinnemanuel.com
19 NBF Hibiya Building, 25F
   1-1-7, Uchisaiwai-cho, Chiyoda-ku
20 Tokyo 100-0011, Japan
   Telephone:       +81 3 5510 1711
   Facsimile:       +81 3 5510 1712
21
22 *Attorneys for Defendants Mitsubishi Electric*
   *Corporation, Mitsubishi Electric US, Inc., and*
23 *Mitsubishi Electric Visual Solutions America, Inc.*
24
25
26
27
28

DECLARATION OF MICHAEL T. BRODY IN SUPPORT OF THE MITSUBISHI ELECTRIC DEFENDANTS' RESPONSE TO
DIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL MITSUBISHI TO PROVIDE FULL AND COMPLETE
RESPONSES TO DISCOVERY RE: MEETINGS WITH COMPETITORS, SALES, AND DESTRUCTION OF EVIDENCE, AND
FOR EVIDENTIARY SANCTIONS
CASE NO. 14-CV-02058-JST, MDL NO. 1917

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION**

This Document Relates to:

ALL DIRECT PURCHASER ACTIONS

MDL No. 1917

Master File No. 3:07-cv-05944-JST
Case No. 3:14-cv-02058-JST

**DECLARATION OF MICHAEL T. BRODY IN SUPPORT OF THE MITSUBISHI ELECTRIC DEFENDANTS' RESPONSE TO DIRECT PURCHASER PLAINITFFS' MOTION TO COMPEL MITSUBISHI TO PROVIDE FULL AND COMPLETE RESPONSES TO DISCOVERY RE: MEETINGS WITH COMPETITORS, SALES, AND DESTRUCTION OF EVIDENCE, AND FOR EVIDENTIARY SANCTIONS**

Special Master:  Hon. Vaughn R. Walker

1

## <u>DECLARATION OF MICHAEL T. BRODY</u>

2

3   I, Michael T. Brody, declare as follows:

4       1.      I am an attorney licensed to practice law in the State of Illinois, and I am a partner at

5   the law firm of Jenner & Block LLP, attorneys of record for defendants Mitsubishi Electric

6   Corporation, Mitsubishi Electric US, Inc. ("MEUS"), and Mitsubishi Electric Visual Solutions

7   America, Inc. ("MEVSA") (collectively, the "Mitsubishi Electric Defendants").  I submit this

8   Declaration in support of Mitsubishi Electric's Response to DPPs' Motion to Compel Full and

9   Complete Responses to Discovery Re Meetings with Competitors, Sales, and Destruction of

10  Evidence, and For Evidentiary Sanctions.  I have personal knowledge of the facts set forth in this

11  Declaration, and, if called as a witness, I could and would testify competently to such facts under

12  oath.

13      2.      Attached to my Declaration as **<u>Exhibit 1</u>** is a true and correct copy of excerpts from

14  Mitsubishi Electric Corporation's 30(b)(6) (H. Tsukamoto Vols. I-II) deposition transcript, dated

15  September 22-23, 2014.

16      3.      Attached to my Declaration as **<u>Exhibit 2</u>** is a true and correct copy of Mitsubishi

17  Electric Corporation's Fourth Supplemental Response to Direct Purchaser Plaintiff Crago, d/b/a,

18  Dash Computers, Inc.'s First Set of Interrogatories to Defendants Mitsubishi, Thomson and TDA,

19  dated July 28, 2015.

20      4.      Attached to my Declaration as **<u>Exhibit 3</u>** is a true and correct copy of excerpts from

21  the Expert Report of Dov Rothman, dated August 5, 2014.

22      5.      Attached to my Declaration as **<u>Exhibit 4</u>** is a true and correct copy of Vols. I-II of the

23  deposition transcript of K. Seki, dated February 24-25, 2015.

24      6.      Attached to my Declaration as **<u>Exhibit 5</u>** is a true and correct copy of A. Pletcher's

25  Email to A. Olschwang, dated January 8, 2009.

26

27

28

THE DECLARATION OF MICHAEL T. BRODY IN SUPPORT OF THE  MITSUBISHI ELECTRIC DEFENDANTS' RESPONSE
TO DPPS' COMBINED MOTION TO COMPEL AND MOTION FOR SANCTIONS
CASE NO. 3:14-CV-02058-JST, MDL NO. 1917

7.      The Department of Justice did not pursue its request for CRT purchase data from the Mitsubishi Electric Defendants.  It also did not issue any subpoena on the Mitsubishi Electric Defendants.

8.      Attached to my Declaration as **Exhibit 6** is a true and correct copy of Mitsubishi Electric Defendants' Supplemental Response to Direct Purchaser Plaintiff Wettstein and Sons, Inc.'s First Set of Interrogatories to Mitsubishi Defendants, dated July 28, 2015.

9.      Mitsubishi Electric Corporation has produced more than 130,000 pages of documents.

10.     MEUS and MEVSA have produced  more than 34,000 pages of documents.  These documents included emails from MEUS' and MEVSA's archival email servers, data from MEUS' and MEVSA's SAP systems containing sales-related documents, and paper MEVSA documents produced in September 2015.

11.     Attached to my Declaration as **Exhibit 7** is a true and correct copy of the deposition transcript of M. Wasinger, dated July 16, 2015.

12.     Attached to my Declaration as **Exhibit 8** is a true and correct copy of G. Fuentes' Letter to R. Saveri, dated September 24, 2015.

13.     Attached to my Declaration as **Exhibit 9** is a true and correct copy of D. Millen's Email to J. Hoffman, dated December 4, 2015.

14.     Attached to my Declaration as **Exhibit 10** is a true and correct copy of Direct Purchaser Plaintiff Crago, d/b/a Dash Computers, Inc.'s First Set of Requests for Interrogatories to Defendants Mitsubishi, Thomson, and TDA, dated September 4, 2014.

15.     Attached to my Declaration as **Exhibit 11** is a true and correct copy of Plaintiff Crago's Objections and Responses to Defendant Mitsubishi Electric Corporation's First Set of Interrogatories to Direct Purchaser Plaintiffs, dated October 6, 2014.

16.     Attached to my Declaration as **Exhibit 12** is a true and correct copy of Mitsubishi Electric Corporation's Supplemental Responses to Direct Action Plaintiffs' First Set of Interrogatories, dated September 5, 2014.

17.     Attached to my Declaration as **Exhibit 13** is a true and correct copy of Mitsubishi Electric Corporation's Second Supplemental Reponses to Direct Purchaser Plaintiffs' First Set of Interrogatories, dated January 16, 2015.

18.     Attached to my Declaration as **Exhibit 14** is a true and correct copy of Vol. III of the deposition transcript of K. Murata, dated July 9, 2015.

19.     Attached to my Declaration as **Exhibit 15** is a true and correct copy of  the deposition transcript of M. Konishi, Vol. II, dated December 11, 2014, and Vols. III-IV, dated November 12-13, 2015.

20.     Attached to my Declaration as **Exhibit 16** is a true and correct copy of M. Powers' Email to A. Nardacci, dated June 20, 2014.

21.     Attached to my Declaration as **Exhibit 17** is a true and correct copy of the Order re Direct Purchaser Plaintiffs' Motion to Compel Mitsubishi to Provide Testimony and Other Evidence from Mr. K. Murata, dated May 29, 2015.

22.     Attached to my Declaration as **Exhibit 18** is a true and correct copy D. Bernstein's Letter to the Special Master, dated August 27, 2014.

23.     Attached to my Declaration as **Exhibit 19** is a true and correct copy of Mitsubishi Electric's Renewed Motion to Compel DPP Supplemental Responses to Interrogatory Nos. 1 and 19(d), dated December 21, 2015.

24.     Attached to my Declaration as **Exhibit 20** is a true and correct copy of excerpts from the Expert Report of Kenneth Elzinga, dated April 15, 2014.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 23rd day of December at Chicago, Illinois.


                              */s/ Michael T. Brody*
                              Michael T. Brody

THE DECLARATION OF MICHAEL T. BRODY IN SUPPORT OF THE  MITSUBISHI ELECTRIC DEFENDANTS' RESPONSE TO DPPS' COMBINED MOTION TO COMPEL AND MOTION FOR SANCTIONS
CASE NO. 3:14-CV-02058-JST, MDL NO. 1917