# Exhibit 3

## (Document Filed Under Seal)

Guido Saveri (22349)
*guido@saveri.com*
R. Alexander Saveri (173102)
*rick@saveri.com*
Geoffrey C. Rushing (126910)
*grushing@saveri.com*
Cadio Zirpoli (179108)
*cadio@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for the Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>*Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al.*, Case No. 14-CV-2058-JST. | **DIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL MITSUBISHI TO PROVIDE FULL AND COMPLETE RESPONSES TO DISCOVERY RE: MEETINGS WITH COMPETITORS, SALES, AND DESTRUCTION OF EVIDENCE, AND FOR EVIDENTIARY SANCTIONS**<br><br>Special Master: Hon. Vaughn R. Walker (ret.) |

# CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

Guido Saveri (22349)
*guido@saveri.com*
R. Alexander Saveri (173102)
*rick@saveri.com*
Geoffrey C. Rushing (126910)
*grushing@saveri.com*
Cadio Zirpoli (179108)
*cadio@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for the*
*Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION

Master File No. 07-CV-5944-JST

MDL No. 1917

This Document Relates to:

*Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al.,* Case No. 14-CV-2058-JST.

**DECLARATION OF GEOFFREY C. RUSHING IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL MITSUBISHI TO PROVIDE FULL AND COMPLETE RESPONSES TO DISCOVERY RE: MEETINGS WITH COMPETITORS, SALES, AND DESTRUCTION OF EVIDENCE, AND FOR EVIDENTIARY SANCTIONS**

Special Master: Hon. Vaughn R. Walker (ret.)

**CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER**

GUIDO SAVERI (22349)
*guido@saveri.com*
R. ALEXANDER SAVERI (173102)
*rick@saveri.com*
GEOFFREY C. RUSHING (126910)
*grushing@saveri.com*
CADIO ZIRPOLI (179108)
*cadio@saveri.com*
TRAVIS L. MANFREDI (281779)
*travis@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for the*
*Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST<br><br>MDL No. 1917 |
| This Document Relates To:<br><br>*Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al.*, Case No. 14-CV-2058-JST. | **CERTIFICATE OF SERVICE** |

**CERTIFICATE OF SERVICE**

I am employed in San Francisco County, which is where service of the documents referred to below occurred. I am over the age of 18 and not a party to this action. My business address is Saveri & Saveri, Inc., 706 Sansome Street, San Francisco, CA 94111. I declare under the penalty of perjury that on the date stated below, I served or caused to be served true and correct copies of the following documents:

- **DIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL MITSUBISHI TO PROVIDE FULL AND COMPLETE RESPONSES TO DISCOVERY RE: MEETINGS WITH COMPETITORS, SALES, AND DESTRUCTION OF EVIDENCE, AND FOR EVIDENTIARY SANCTIONS; and**
- **DECLARATION OF GEOFFREY C. RUSHING IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL MITSUBISHI TO PROVIDE FULL AND COMPLETE RESPONSES TO DISCOVERY RE: MEETINGS WITH COMPETITORS, SALES, AND DESTRUCTION OF EVIDENCE, AND FOR EVIDENTIARY SANCTIONS**

VIA ELECTRONIC MAIL to the addressee(s) specified below:

**SEE ATTACHED SERVICE LIST**

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed on January 8, 2016 in San Francisco, California.

*/s/ Matthew Heaphy*
Matthew Heaphy

*In re: Cathode Ray Tube (CRT) Antitrust Litigation* MDL No. 1917; Case No. 14-CV-2058-JST

# SERVICE LIST

| | |
|---|---|
| Terrence J. Truax<br>Charles B. Sklarsky<br>Michael T. Brody<br>Gabriel Fuentes<br>JENNER & BLOCK LLP<br>353 N. Clark Street<br>Chicago, IL 60654-3456<br>Telephone: (312) 222-9350<br>Facsimile: (312) 527-0484<br>Email: ttruax@jenner.com<br>Email: csklarsky@jenner.com<br>Email: mbrody@jenner.com<br>Email: gfuentes@jenner.com<br><br>Harold A. Barza<br>Kevin Y. Teruya<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA 90017-2543<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100<br>E-mail: halbarza@quinnemanuel.com<br>E-mail: kevinteruya@quinnemanuel.com<br><br>*Attorneys for Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc., Mitsubishi Electric Visual Solutions America, Inc.* | Nathan Lane III<br>SQUIRE PATTON BOGGS (US) LLP<br>275 Battery Street, Suite 2600<br>San Francisco, California 94111<br>Telephone: (415) 954-0200<br>Facsimile: (415) 393-9887<br>E-mail: nathan.lane@squirepb.com<br><br>Donald R. Wall<br>SQUIRE PATTON BOGGS (US) LLP<br>1 E. Washington St., Suite 2700<br>Phoenix, AZ 85004<br>Telephone: (602) 828 4000<br>Facsimile: (602) 253 8129<br>E-mail: donald.wall@squirepb.com<br><br>*Attorneys for Defendant Technologies Displays Americas, LLC* |
| Kathy L. Osborn<br>FAEGRE BAKER DANIELS LLP<br>300 N. Meridian Street, Suite 2700<br>Indianapolis, IN 46204<br>Telephone: (317) 237-0300<br>Facsimile: (317) 237-1000<br>Email: kathy.osborn@FaegreBD.com<br><br>*Attorneys for Defendants Thomson SA and Thomson Consumer Electronics, Inc.* | Philip J. Iovieno<br>Anne M. Nardacci<br>BOIES, SCHILLER & FLEXNER LLP<br>10 North Pearl Street, 4th Floor<br>Albany, NY 12207<br>Telephone: (518) 434-0600<br>Facsimile: (518) 434-0665<br>E-mail: piovieno@bsfllp.com<br>E-mail: anardacci@bsfllp.com<br><br>*Counsel for Direct Action Plaintiffs* |
| Mario Alioto<br>Lauren Russell<br>TRUMP ALIOTO TRUMP & PRESCOTT LLP<br>2280 Union Street<br>San Francisco, CA 94123<br>Telephone: (415) 563-7200<br>Facsimile: (415) 346-0679<br>E-mail: malioto@tatp.com<br>E-mail: LaurenRussell@tatp.com<br><br>*Counsel for Indirect Purchaser Plaintiffs* | |

I, GEOFFREY C. RUSHING, declare:

1. I am of counsel to Saveri & Saveri, Inc., which the Court has appointed as Lead Counsel for the Direct Purchaser Plaintiffs ("DPPs") in this action. I have been involved in almost every aspect of this case since its inception. I submit this declaration in support of Direct Purchaser Plaintiffs' Reply in Support of Their Motion to Compel Mitsubishi to Provide Full and Complete Responses to Discovery Re: Meetings With Competitors, Sales, and Destruction of Evidence, and for Evidentiary Sanctions. Unless otherwise indicated, I make this declaration of my own personal knowledge, and if called upon to do so, could and would testify competently to the facts contained herein.

2. Attached hereto as Exhibit 1 is a true and correct copy of excerpts of the deposition of Mr. Masahiko Konishi, taken at the offices of Jenner & Block LLP, 321 North Clark Street, Chicago, Illinois, on December 10, 2014.

3. Attached hereto as Exhibit 2 is a true and correct copy of a document produced by Mitsubishi in this litigation bearing Bates number range ME00025688–89. It is marked as deposition exhibit no. 6131. Attached hereto as Exhibit 3 is a true and correct copy of a certified translation of that document to English, marked as deposition exhibit no. 6131E.

4. Attached hereto as Exhibit 4 is a true and correct copy of a document produced by Mitsubishi in this litigation bearing Bates number ME00088160. It is marked as deposition exhibit no. 6114. Attached hereto as Exhibit 5 is a true and correct copy of a certified translation of that document to English, marked as deposition exhibit no. 6114E.

5. Attached hereto as Exhibit 6 is a true and correct copy of excerpts of the deposition of Mr. Norikazu Nakanishi, taken at the offices of Jenner & Block LLP, 353 North Clark Street, Chicago, Illinois, on September 18, 2014.

6. I am informed and believe that deposition exhibit no. 2376E, a document produced by Hitachi in this litigation bearing Bates number range HDP-CRT00025965–66 and attached to the Rushing Declaration as Exhibit 46, was mis-translated, and that Mr. Seki was able to read the Japanese language version at his deposition.

/ / /

7. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on January 8, 2016 at San Francisco, California.

*/s/ Geoffrey C. Rushing*
Geoffrey C. Rushing

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................ 1

II. ARGUMENT ........................................ 1

A. Mitsubishi Continues to Refuse to Identify Contacts with Competitors. ................1

1. Mitsubishi Misconstrues Interrogatory No. 5, and its Claims of Ignorance Are Unsupported. ........................................2

2. Mitsubishi's Excuses for Excluding Competitor Contacts from Discovery Responses Lack Merit. ........................................4

3. Mitsubishi Reveals Willful Ignorance in Investigating Competitor Contacts for Discovery Responses ........................................8

B. Mitsubishi Refuses to Supplement its "Sparse" Responses to Interrogatory No. 12, Despite Recent Discovery of Relevant Sales Documents ........................................9

C. Mitsubishi Should Be Compelled to Explain What Documents it Possessed and the Circumstances of Their Destruction. ........................................10

D. Suggested Sanction, Which Mitsubishi Does Not Fully Oppose, Is Appropriate and Should Be Imposed. ........................................12

III. CONCLUSION ........................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*F.D.I.C. v. Halpern*
271 F.R.D. 191 (D. Nev. 2010) ....................................................................................4–5

*Halaco Eng'g Co. v. Costle*
843 F.2d 376 (9th Cir. 1988) ........................................................................................13

# I. INTRODUCTION

In its brief opposing Direct Purchaser Plaintiffs ("DPPs") Motion to Compel Mitsubishi to Provide Full and Complete Responses to Discovery Re: Meetings With Competitors, Sales, and Destruction of Evidence, and for Evidentiary Sanctions ("Opposition" or "Opp."), Mitsubishi offers a long and involved—and largely incorrect—discussion of matters not relevant here. It fails, however, to squarely answer the issues presented to the Court:

- Has Mitsubishi provided full and complete answers to Interrogatory No. 5 regarding contacts with competitors?
- Has Mitsubishi provided full and complete answers to Interrogatory No. 12 regarding its sales?
- Has Mitsubishi provided a full and complete explanation of its acknowledged destruction of evidence in this case?
- Are DPPs proposed sanctions just, and is there sufficient nexus between Mitsubishi's behavior and DPPs' claims?

Examination of Mitsubishi's arguments leaves little doubt that it has failed to comply with its discovery obligations. It is also plain both that DPPs have been and continue to be prejudiced by Mitsubishi's conduct, and that sanctions are necessary to remedy that prejudice as well as to ensure Mitsubishi's compliance with discovery rules.[1]

# II. ARGUMENT

Mitsubishi's Opposition is one more example of its ongoing tactics of delay and obfuscation. To argue that it "acted reasonably and in good faith," Opp. at 1, and that DPPs therefore were not prejudiced, does not make it so. The record shows otherwise.

## A. Mitsubishi Continues to Refuse to Identify Contacts with Competitors.

Mitsubishi's account of its responses to Interrogatory No. 5 contradicts this Court's findings and the plain facts. From the outset, Mitsubishi has refused to provide good faith responses, and has instead used a variety of tactics to avoid providing DPPs with crucial

[1] This reply brief is supported by the accompanying declaration of Geoffrey C. Rushing ("Rushing Reply Decl.").

information regarding its contacts with competitors. Its first responses lacked any substance at all, despite the advanced stage of Mitsubishi's investigation of the case. Mot. at 4. It made false promises of good faith responses in advance of important depositions, instead serving another set of responses devoid of substantive information. *Id.* at 5. When it finally served substantive responses after the depositions, those responses made clear that Mitsubishi had withheld critical information about over fifty contacts with competitors. *Id.* at 6. This Court found as much, granting DPPs' motion to compel further depositions regarding the withheld evidence: "it appears that Mitsubishi has repeatedly delayed responding to valid discovery requests, effectively withholding relevant discovery responses and preventing DPPs' counsel from examining Mitsubishi's witnesses on relevant documents, such as fully responsive discovery responses and Exhibits A and B." *See* R&R No. 1 at 3–4.[2]

It is plain that Mitsubishi's response to Interrogatory No. 5 remains incomplete. Indeed, the arguments it makes to justify its failure to disclose the eleven contacts DPPs identify confirm that Mitsubishi has used, and continues to use, false claims of a lack of knowledge to withhold information. *See* Mot. at 4–6, 12–14.

### 1. Mitsubishi Misconstrues Interrogatory No. 5, and its Claims of Ignorance Are Unsupported.

First, Mitsubishi misconstrues Interrogatory No. 5. It seeks identification of "any ***meeting*** or ***communication*** between You and other ***producers of CRT and/or CRT Products***," Saveri Decl., ex. 1 at 6 (emphasis added). Mitsubishi's arguments that only conspiratorial contacts are responsive to the interrogatory is simply wrong. *See* Opp. at 8 ("the meetings or communications Mitsubishi Electric identified in response to this interrogatory are irrelevant to the supposed

[2] Mitsubishi's assertion that the delay in its responses was due to a failure to realize that DPPs' interrogatories were broader than those served by the DAPs is contrary to the facts. *See* Opp. at 8. ("upon realizing that the DPPs' Interrogatory No. 5 was broader than the DAP interrogatories, Mitsubishi Electric expanded the listing to a total of 57 meetings and communications in its revised Exhibit B, served on January 16, 2015"). Mitsubishi was aware from at least November 11, 2014—one month before it served its deficient supplemental response omitting "Exhibit B," Saveri Decl., ex. 14—that that Interrogatory No. 5 was "more expansive than the DAPs[']," because DPPs emphasized this fact at the meet and confer on that date. Saveri Decl., ex. 11; Mot. at 4–5.

liability of Mitsubishi Electric, because none was 'conspiratorial'").[3] Similarly, its arguments that it need not disclose contacts with "customers" is also incorrect if those "customers" are "producers of . . . CRT Products." Saveri Decl., ex. 1 at 6.

Second, Mitsubishi's claims that it lacks knowledge regarding certain meetings sufficient to "swear" that they occurred also lacks merit. As explained below, in most cases the record discloses ample basis to conclude that a contact occurred—i.e., a Mitsubishi document or witness confirms it. Mitsubishi's claims that the individuals who were involved in the contacts do not remember the events or are "unavailable" also do not withstand scrutiny. For example, Mitsubishi's claim that Hitoshi Nakajima—a high level executive involved in several of the undisclosed meetings (and many disclosed meetings) is "unavailable" is simply false. [REDACTED] Yet Mitsubishi provides no account of Mr. Nakajima's knowledge of his contacts with competitors.

Furthermore, most of Mitsubishi's assertions of a lack of memory are not supported or are contradicted by the record. As Mitsubishi admits, its employee Kunihiko Seki admitted that he likely attended a meeting Mitsubishi refuses to acknowledge. Opp. at 11 (Mr. Seki "'may have' attended" March 6, 2000 meeting with Chunghwa, "or that there was a 'good chance' that he did"). Similarly, in several cases the deposition testimony relied upon does not reference the meeting in question. In others, witnesses appear to exist who could confirm the meeting—e.g., Mr. Nakajima—but no declaration is provided.

Additionally, the fact that a witness claims a lack of knowledge or an inability to remember a meeting should be given no weight because Mitsubishi coaches its witnesses to claim a lack of

---

[3] Indeed, the interrogatory was drafted in this fashion so that DPPs would not have to rely on Mitsubishi's judgment as to whether something was "conspiratorial" or not. And of course, virtually all of the meetings at issue here are probative of Mitsubishi's participation in the conspiracy. Mitsubishi acknowledges elsewhere in its brief that the interrogatory requires identification of all meetings, not just "conspiratorial" ones. Opp. at 7:16–19.

knowledge. *See* R&R No. 2 at 3 ("[w]hile the witness originally spoke knowledgeably about the document, after the break he confirmed only that the document stated certain facts and disclaimed any independent knowledge"); [redacted]

Third, it goes without saying that DPPs are entitled to full and complete responses. A partial response—e.g., identification of a *single* meeting, no matter its importance—does not satisfy Mitsubishi's discovery obligations or mean that DPPs were not prejudiced. *See* Opp. at 9 ("[i]mportantly, Mitsubishi Electric disclosed in both the September 2014 and January 2015 versions of their Exhibit B a 2003 meeting in Korea that the DPPs have claimed is evidence of a conspiracy with Samsung SDI").

**2. Mitsubishi's Excuses for Excluding Competitor Contacts from Discovery Responses Lack Merit.**

Mitsubishi's assertion that "the evidence . . . does not support a conclusion that the [eleven contacts] happened" is simply wrong. First, as explained below, the evidence that the eleven contacts occurred is strong and uncontradicted. Second, although Mitsubishi strongly implies that it has conducted a thorough investigation of its contacts with the conspiracy, its arguments reveal willful ignorance—or at least a lack of full disclosure. For example, in many cases its arguments rely on vague and generalized assertions of a lack of memory of a meeting, instead of particularized declarations from people with knowledge. Thus, despite their collective involvement in seven of the eleven meetings, Mitsubishi provides no declarations or other information from Messrs. Nakajima, Konishi or Seki specifically denying that the meetings occurred. Finally, Mitsubishi's claim that it can withhold evidence of a relevant event by simply taking the position that it has not been able to confirm that these meetings occurred violates its obligation to provide all responsive information in its possession. Mot. at 12. As one court has explained:

> A party is generally charged with knowledge of what its agents know, or what is in records available to it, or even information others have given to it on which it intends to rely in its suit. ***A party cannot limit its interrogatory answers to matters within its own knowledge and ignore information immediately available to it or under its control.***

*F.D.I.C. v. Halpern*, 271 F.R.D. 191, 193 (D. Nev. 2010) (emphasis added).

There is substantial evidence of all of the competitor contact examples identified by DPPs. There is no question that they should have been included in Mitsubishi's response to DPPs' Interrogatory No. 5, and that Mitsubishi's response is therefore incomplete:









**3. Mitsubishi Reveals Willful Ignorance in Investigating Competitor Contacts for Discovery Responses.**

Mitsubishi's Opposition confirms what DPPs have suspected all along: that Mitsubishi has withheld evidence going to the heart of this case. Mot. at 9. Mitsubishi's arguments confirm that it has improperly filtered and withheld evidence linking it to the conspiracy and that its denials of this in the meet and confer process (and here) have been false. *Id.* Mitsubishi admits that it will withhold evidence of a competitor contact if "the documentary evidence of the meetings or communications came not from Mitsubishi Electric but from another entity, or the Mitsubishi Electric witness who was asked about the meeting or communication had ***no memory or knowledge*** that it happened," Opp. at 10 (emphasis added), or if a witness "did not ***clearly***

remember or know of" it, *id.* at 11 (emphasis added). It is no wonder that competitor contacts are missing from Mitsubishi's discovery responses.

Given that there are at least eleven meetings that should have been included in Exhibit B and were not, Mitsubishi should be ordered to provide full and complete responses to DPPs' Interrogatory No. 5 immediately, including those identified by DPPs and any other meetings that it has uncovered as part of its investigation.

**B. Mitsubishi Refuses to Supplement its "Sparse" Responses to Interrogatory No. 12, Despite Recent Discovery of Relevant Sales Documents.**

Mitsubishi offers little in response to DPPs' arguments regarding Interrogatory No. 12. It admits, as it must, that its answers lack meaningful substance and that its repeated assurances to DPPs and the Court that it had searched for documents was thorough and complete were false. *See* Opp. at 15–16; R&R No. 3 at 7 ("[t]he undersigned has reviewed Mitsubishi's third supplemental response to the DPPs' Interrogatory No 12 and finds it sparse").

As with its meetings with competitors, Mitsubishi relies on a claimed lack of knowledge. Again, however, it is plain that Mitsubishi has more knowledge than it admits to. DPPs have identified two sets of documents containing sales information about which current employees almost certainly have knowledge—yet Mitsubishi maintains that it cannot be sure that they are correct and therefore any meaningful response to the interrogatory would be "speculation" and "guesswork."

[redacted] They appear accurate and there is no question that Mitsubishi has access to individuals who can verify their accuracy. Messrs. Furukawa and Wasinger, from whose files these documents were discovered, were high level officers at Mitsubishi at the time the documents were created and should be able to verify their accuracy or explain why they are not accurate. Mitsubishi's assertion that interrogatory responses based on

these documents would be "estimates, guesses, or extrapolations of possible CRT sales data" is baseless. Opp. at 15.

Mitsubishi's assertion that it can withhold this information because it will be the subject of "expert testimony and analysis" is also specious. *Id.* at 15–16. This interrogatory seeks basic information about Mitsubishi's business.

Mitsubishi's continued unwillingness to determine its own sales data from its own documents—even for a *single* month—further demonstrates its strategy of delay and obfuscation. Mitsubishi is in a much better position than DPPs to calculate its own sales and it should be compelled to do so by responding fully and completely to Interrogatory No. 12. There is no question that Mitsubishi's responses to this interrogatory are incomplete, and that it, therefore, remains in violation of the Court's orders. *See* R&R No. 3 at 7–8.

### C. Mitsubishi Should Be Compelled to Explain What Documents it Possessed and the Circumstances of Their Destruction.

Mitsubishi's responses to interrogatories regarding its admitted destruction of documents have been, and remain, inadequate. Mot. at 15–16. Mitsubishi does not deny this fact, but simply asserts that it is unreasonable to expect "that any of the Mitsubishi Electric Defendants would actually know *what* documents were discarded 10 years ago when the CRT business was shut down." *Id.* at 16 (emphasis added). Again, however, it is plain that Mitsubishi has not provided all information reasonably available to it, even if ultimately it will not be able to account for each and every document destroyed. At the very least Mitsubishi should describe in detail its efforts to locate relevant information.

Interrogatory No. 16 seeks identification of what documents once existed and the manner of their destruction or loss. Saveri Decl., ex. 1 at 8–9. Despite its protestations, Mitsubishi should be able to provide much more information than it has. Certainly it can explain the types of accounting and sales records that once existed during the class period, where and how they were kept, and what department and/or individuals were responsible for them and/or had access to them. If the records were kept in hard copy, it can explain where they were kept, when they went into storage and where. Such investigation, moreover, will likely lead to additional information about the

circumstances of their destruction.[5] It may also lead to the discovery of additional responsive documents.[6]

Similarly, if the documents were stored electronically, Mitsubishi should explain where they were kept, what happened to the records as their computer systems evolved, and when and how information contained on those systems was preserved or discarded, the individuals with knowledge, and whether there were backup systems. This inquiry will also likely lead to the discovery of more evidence as well as a more reasonable explanation Mitsubishi's destruction of records.

This information is also important to understand whether or not Mitsubishi's admitted document destruction constitutes spoliation of evidence. Mitsubishi's assertion that it has not "purposefully" destroyed any relevant documents has already been proven false—discarding something in the ordinary course is not accidental. A full response to this interrogatory will also disclose whether the documents were destroyed ***after*** Mitsubishi became aware of the investigation and litigation regarding the CRT conspiracy, or after DPPs and Mitsubishi executed the tolling agreement in 2011.[7]

In sum, Mitsubishi has not taken this interrogatory seriously, and it should be compelled to provide full and complete answers.

///

///

///

---

5 [redacted]

6 Such discoveries have already occurred in this case. Despite its repeated assurances that it had made a diligent and complete search of its records, Mitsubishi located ***thirteen boxes*** of responsive documents that it had previously overlooked last October, Opp. at 6, and subsequently decided to conduct additional searches of electronic records it had previously decided not to search. Rushing Decl., ex. 45.

7 [redacted]

### D. Suggested Sanction, Which Mitsubishi Does Not Fully Oppose, Is Appropriate and Should Be Imposed.

The sanction proposed by DPPs is appropriate and fair. Mitsubishi has repeatedly withheld critical information going to the heart of this case and has violated the Court's orders. Mot. at 4–14. A reasonable sanction is necessary because of the prejudice DPPs have suffered and to ensure that Mitsubishi lives up to its obligations in the future. Because it has already committed serious discovery violations, an order that requires Mitsubishi to do what it should have done in the first place will reward Mitsubishi's conduct.

Furthermore, despite Mitsubishi's assertion that the sanctions sought by DPPs are "tantamount to dismissal," Opp. at 19, the sanction DPPs seek is modest. DPPs seek an order providing only that the jury be allowed to hear certain evidence. Not a single fact will be determined against Mitsubishi. It will have a full opportunity to argue the issue on the merits. Moreover, DPPs (as well as the DAPs) believe that the SDI interrogatory responses will be admissible at trial in any event. Mot. at 19. Mitsubishi does not even address the rest of the proposed sanction—deeming admissible at trial all documents evidencing Mitsubishi's contacts with competitors. Mitsubishi's reliance on cases in which default or dismissal was sought is therefore inapposite. Opp. at 18–21.

Mitsubishi's assertion that the proposed sanction has no nexus with its actionable conduct and the merits of the case is also incorrect. The sanction DPPs seek relates to proof of Mitsubishi's participation in the conspiracy. Mitsubishi has delayed, withheld and failed to respond to Court-ordered discovery relevant to its contacts with other conspirators. The sanction sought goes directly to that issue. One part of the sanction would deem admissible at trial all documents evidencing Mitsubishi's contacts with competitors—some of which Mitsubishi has withheld and are a subject of the instant motion. The other part of the sanction, [redacted] would redress Mitsubishi's efforts, at every turn and at whatever cost, to deny DPPs discovery regarding Samsung SDI. This includes interrupting and interfering with the deposition of Mr. Murata when he appeared to have

knowledge about a meeting with Samsung SDI, as well as denying that meetings with Samsung SDI ever happened, and withholding them from Exhibit B.

Additionally, while it is plain that Mitsubishi's conduct evidences bad faith, Mot. at 18–19, bad faith is not a requirement for the type of sanction DPPs seek here. *See Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988).

Mitsubishi's assertion that DPPs have suffered no prejudice strains credulity. There is no question Mitsubishi's conduct has delayed DPPs' acquisition of evidence. As explained in DPPs' opening brief, this alone constitutes prejudice. Mot. at 18–19. It is also clear that DPPs have likely been deprived of evidence. As with its previous conduct, "Mitsubishi has repeatedly delayed responding to valid discovery requests, effectively withholding relevant discovery responses and preventing DPPs' counsel from examining Mitsubishi's witnesses on relevant documents, such as fully responsive discovery responses and Exhibits A and B." R&R No. 1 at 3–4. Moreover, DPPs have no way of knowing what conspiratorial contacts Mitsubishi may yet be withholding. DPPs also have suffered prejudice through delay in the development of their case, as well as the extensive time and effort unnecessarily spent securing the discovery to which they are entitled.

Mitsubishi's argument that its misconduct that "the Special Master previously resolved in a manner that provided the DPPs with considerable additional discovery," Opp. at 17, somehow absolves it of wrongdoing and thus should not be considered in sanctioning Mitsubishi is also incorrect. If this were true, Mitsubishi would be free to flout its obligations with respect to each discovery request, with no fear of greater consequences. *See Halaco*, 843 F.2d at 381 n.2 ("[a] court may indeed consider prior conduct that has already been subject to sanction, when it is weighing a subsequent sanction motion").

Finally, as DPPs explained in their opening brief, a sanction beyond an order simply requiring Mitsubishi to provide the discovery it withheld is necessary to ensure future compliance with its discovery obligations. The Court has already made several such orders, but Mitsubishi's misconduct did not abate. Another such order will encourage further misconduct.[8]

[8] Mitsubishi's assertion that "DPPs did not bother to conduct the required meet-and-confer session on their motion," Opp. at 1, is incorrect. DPPs met and conferred with Mitsubishi on all of the issues raised in their Motion. *See* Saveri Decl., ex. 11 (documenting November 2014 meet and

## III. CONCLUSION

For all the reasons stated above, DPPs respectfully submit that the Court find that the Mitsubishi defendants be compelled to: (1) provide full and complete responses to DPPs' September 4, 2014 and December 19, 2014 interrogatories; and (2) order that Mitsubishi is subject to evidentiary sanctions pursuant to Rule 37, as follows:

> The interrogatory responses of Samsung SDI regarding Mitsubishi's participation in the alleged conspiracy, as well as all documents evidencing Mitsubishi's contacts with competitors, will be deemed admissible at trial.

Dated: January 8, 2016

By: *<u>/s/ R. Alexander Saveri</u>*
R. Alexander Saveri
**SAVERI & SAVERI, INC.**
*706* Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

By: *<u>/s/ Joseph C. Cotchett</u>*
Joseph C. Cotchett
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

---

confer on, *inter alia*, Interrogatories Nos. 5 and 12); Rushing Decl. ¶ 14, ex. 31 (documenting June 2015 meet and confer on, *inter alia*, Interrogatories Nos. 5, 12 and 16 as well as other document search and preservation issues); Rushing Decl., ex. 44 (October 2015 letter requesting confirmation that Mitsubishi's responses to interrogatories and document requests are current in light of recent production of documents); Rushing Decl. ¶ 27 (October 2015 confirmation that Mitsubishi had no present intention of updating its discovery responses).