# Exhibit 5

(Document Filed Under Seal)

353 NORTH CLARK STREET CHICAGO ILLINOIS 60654-3456

**JENNER&BLOCK** LLP

July 21, 2016

Michael T. Brody
Tel +1 312 923 2711
mbrody@jenner.com

*Via E-Mail*

The Hon. Vaughn R. Walker (Ret.)
c/o Jay Weil
Federal Arbitration, Inc.
Four Embarcadero Center, Suite 2200
San Francisco, CA  94111

Re:  *In re Cathode Ray Tube (CRT) Antitrust Litigation,*
     MDL No. 1917; Case No. 14-cv-2058-JST (N.D. Cal.)

     **CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER**

Dear Judge Walker:

We write on behalf of Mitsubishi Electric Corporation ("Mitsubishi Electric"), Mitsubishi Electric US, Inc. ("MEUS"), and Mitsubishi Electric Visual Solutions America, Inc. ("MEVSA") (collectively, "the Mitsubishi Electric Defendants") in response to the Supplemental Brief filed by the Direct Purchaser Plaintiffs ("DPPs") in this matter on Thursday, June 30, 2016 (the "Supplemental Brief").

Like the DPPs' initial briefing on their December 4, 2015 motion to compel and for sanctions ("the Motion to Compel"), the Supplemental Brief fails to establish that the Mitsubishi Electric Defendants violated any discovery obligation, or that any basis exists for a sanction of any kind, let alone a potentially case-dispositive one.  As set forth in detail below, the Supplemental Brief's over-reaching and unfounded allegations of bad faith by the Mitsubishi Electric Defendants collapse under close scrutiny.  That collapse underscores the difficulty all of the parties face in sorting through thousands of Japanese-language documents from a business shut down more than 10 years ago.  With the DPPs' liability case foundering considerably in the past seven months, the inappropriateness of having the Court reverse the DPPs' fortune by compelling the admission of Samsung SDI's inadmissible hearsay discovery response is all the more clear.

**INTRODUCTION**

While the Supplemental Brief purports to "update" the Court on discovery developments of the past seven months, the DPPs leave out how recent discovery has turned the tide in the Mitsubishi Electric Defendants' favor.  After the DPPs failed for more than a year to identify a single witness statement they possess to support an allegation that "at least one Mitsubishi entity" conspired with Samsung SDI in this matter, the Court ruled on March 28, 2016 that the DPPs could not be compelled to supplement their discovery response further on this point because they

Hon. Vaughn R. Walker
July 21, 2016
Page 2

arguably had admitted that they had no evidence. Order re Mitsubishi's Mot. to Compel Direct Purchaser Pls. to Supp. Resps. to Interrogs. at 9, ECF No. 4570, Apr. 18, 2016 ("The issue is not one of a failure of discovery, but maybe – if Mitsubishi is correct – a failure of proof.").

When the DPPs were compelled by the Court to specify which "Glass Meetings" (which the Complaint describes as the heart of the alleged CRT conspiracy), *see* Second Am. Direct Purchaser Pls.' Class Action Compl. Against Mitsubishi and Thomson ¶¶ 125-38, they contend were attended by Mitsubishi Electric, the DPPs served an April 2016 supplemental answer that came up with only one – a meeting that Mitsubishi Electric will argue was not a Glass Meeting. Declaration of Gabriel A. Fuentes ("Fuentes Decl.") Ex. 1, Direct Purchaser Pls.' Second Supp. Objections and Resps. to Def. Mitsubishi Electric Corp.'s First Set of Interrogs., No. 1 at 59-60.

Most recently, Mitsubishi Electric served a Rule 31 notice for a written question deposition directed squarely at the DPPs' unsupported theory that Mitsubishi Electric joined the Glass Meetings conspiracy by participating in other meetings. Fuentes Decl. Ex. 2, Notice of Dep. Upon Written Questions of C.C. Liu Pursuant to Fed. R. Civ. P. 31, June 14, 2016. The deposition, of Chunghwa Picture Tubes, Ltd. ("Chunghwa") witness C.C. Liu, will include questions designed to elicit Mr. Liu's testimony about whether anyone from the Glass Meetings sought to meet with Mitsubishi Electric to obtain its agreement to matters discussed at the Glass Meetings. *Id.* The DPPs' reaction to the deposition notice, and the likelihood of Mitsubishi Electric discovering evidence from Chunghwa concerning the DPPs' primary theory of liability in this case, was to advise that they would move to quash the deposition. Fuentes Decl. Ex. 3, G. Fuentes Ltr. to R. Saveri, July 20, 2016. All of this occurs in the same breath in which the DPPs have filed their Supplemental Brief, falsely accusing the Mitsubishi Electric Defendants of denying the DPPs relevant discovery.

The DPPs' allegations of bad faith in discovery by the Mitsubishi Electric Defendants are false. Mitsubishi Electric did not deliberately fail to disclose meetings with other CRT manufacturers. The Mitsubishi Electric Defendants did not deliberately withhold information about CRT sales, or about the discarding of documents long before there was any inkling of this lawsuit. No event

---

[1] For the sake of accuracy, this brief will from time to time refer to Mitsubishi Electric only. MEUS and MEVSA join fully in the arguments advanced herein. Judge Tigar recently granted summary judgment to MEUS and MEVSA in the Direct Action Plaintiff matter, with the Direct Action Plaintiffs' consent, in view of the absence of any evidence that either entity engaged in any conduct relevant to any claim that they participated in the alleged CRT conspiracy. Order Granting Summary Judgment as to MEUS and MEVSA, ECF No. 4559, Apr. 13, 2016.

in this case over the past seven months has added a shred of support for the DPPs' allegations that the Mitsubishi Electric Defendants have shown any "bad faith" or have "concealed" anything. For the reasons set forth below and in the Mitsubishi Electric Defendants' December 23, 2015 response to the DPPs' Motion to Compel ("Resp."), the Motion to Compel should be denied, as should all forms of sanctions requested by the DPPs.

## ARGUMENT

**I.        Mitsubishi Electric Has Met Its Discovery Obligations Concerning Its Supplemental Responses to the DPPs' Interrogatory No. 5.**

Nothing the DPPs mentioned to the Court in December 2015 on their Motion to Compel, and nothing they have offered now, establishes anything to the contrary. Rather, the DPPs have continued to mine the voluminous document production of Mitsubishi Electric and of other alleged conspirators to identify additional possible meetings, and then to claim that the likelihood of meetings beyond the 57 mentioned in Mitsubishi Electric's Revised Exhibit B is proof that Mitsubishi Electric "should" have disclosed additional contacts. A party responding to an interrogatory is not required "to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made." *Haney v. Saldana*, No. 1:04-CV-05935 (AWI-SMS-PC), 2010 WL 3341939, at *3 (E.D. Cal. Aug. 24, 2010). In addition, a party is not required to supplement a discovery response with information that the other party already obtained during the discovery process. Fed. R. Civ. P. 26(e)(1)(a). As was the case when Mitsubishi Electric closely examined the 11 examples cited by the DPPs in December 2015, a closer look at the eight contacts cited by the Supplemental Brief yields the same conclusion: The DPPs have had ample discovery from Mitsubishi Electric concerning these contacts, and Mitsubishi Electric either did not know about them or had insufficient information to swear under oath in an interrogatory answer that they happened.

**A.  Mitsubishi Electric Did Not Conceal Contacts About Which the DPPs Questioned Mr. Innami at His Recent Deposition.**

The DPPs questioned Mr. Innami about

---

[2] The Mitsubishi Electric Defenadnts did not include a copy of Exhibit A to Mitsubishi Electric Corporation's Supplemental Responses to Direct Purchaser Plaintiffs' First Set of Interrogatories as part of Exhibit 4 to the Fuentes Declaration. Exhibit A is a voluminous list of Bates numbers related to shipping and export documents. For reference, it is included as part of Exhibit 12.

several meetings or communications referenced in or suggested by documents previously produced to the DPPs years earlier by Mitsubishi Electric, or by other alleged participants in the CRT conspiracy. Perhaps not surprisingly, given the volume of the Mitsubishi Electric document production from its operation more than 10 years ago of a business it has since shut down, and from other CRT manufacturers, the DPPs were able to identify indications of meetings or communications not listed by Mitsubishi Electric on Revised Exhibit B. But armed with Mitsubishi Electric's documents and those from other CRT manufacturers, the DPPs were able to question Mr. Innami about several additional contacts, and his testimony revealed that Mitsubishi Electric had no reason to hide any of these contacts because they were not conspiratorial.

Further, the DPPs' learning of these contacts during the discovery process negates any argument that Mitsubishi Electric violated its discovery obligations, acted in bad faith, or concealed anything. Fed R. Civ. P. 26(e)(1)(A). A party's discovery, "particularly during a deposition, of information ordinarily subject to supplementation satisfies the Rule 26(e)(1) duty as sufficiently as a formal filing." *Nuance Commc'ns, Inc. v. Abbyy Software House*, No. C 08-2912 (JSW MEJ), 2012 WL 2838431, at *1 (N.D. Cal. July 10, 2012) (quoting *Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1107 (N.D. Ind. 1998)). *See also Procongps, Inc. v. Skypatrol, LLC*, No. C 11-3975 (SI), 2013 WL 4551828, at *1 (N.D. Cal. Aug. 27, 2013) (same); *Gomez v. Am. Empress Ltd. P'ship.*, 189 F.3d 473, at *1 (9th Cir. 1999) ("Supplementation of discovery responses to tell the plaintiff what the witnesses said in their depositions was obviously unnecessary."); *Vieste, LLC v. Hill Redwood Development*, No. C-09-04024 (JSW DMR), 2011 WL 2181200, at *3 (N.D. Cal. June 3, 2011) (holding defendant had no duty to supplement interrogatory responses with witness identities where information regarding them was included in deposition testimony).

As to the specific contacts alleged in the Supplemental Brief, none establishes any deliberate concealment by Mitsubishi Electric:[3]



---

[3] Mitsubishi Electric will discuss the eight contacts listed in the Supplemental Brief in the order in which they are discussed in the Supplemental Brief, identifying them as Contact Nos. 1-8.



Hon. Vaughn R. Walker
July 21, 2016
Page 5

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mitsubishi Electric had no reason to conceal this meeting and did not conceal it – and the DPPs availed themselves of their opportunity to depose Mr. Innami about it.

- *Contact No. 2.* Similarly, Mitsubishi Electric had no reason to hide, and did not hide, a February 8, 1999 visit to the factory at Chunghwa in Taiwan, where Mr. Innami met with Chunghwa engineering personnel.  The DPPs have had discovery about this meeting for at least a year and half, received more disclosure of it in Revised Exhibit B in January 2015, and then received deposition testimony from the former Mitsubishi Electric executive – Mr. Innami – who actually attended the meeting. The DPPs' allegation that Mitsubishi Electric concealed this meeting exceeds the bounds of fair argument.

  **B. Mitsubishi Electric Did Not Conceal Contacts Which May Be Indicated By Expense or Trip Authorization Reports, or Miscellaneous Notes Produced to the DPPs by Mitsubishi Electric or Others.**

The DPPs' efforts to comb through Mitsubishi Electric's document production and pluck out trip authorization reports fail to establish that Mitsubishi Electric concealed any meetings or communications with other CRT manufacturers. The fact that the DPPs were able to identify the expense documentation from Mitsubishi Electric's own document production shows that nothing was concealed, and nor can Mitsubishi Electric be said to have deliberately withheld information that either had not been apparent to Mitsubishi Electric from its own review of voluminous Japanese-language documents, or that falls short of indicating that a meeting with another CRT manufacturer actually took place. One of the supposed contacts is from a Samsung SDI employee's diary page, a document not even produced by Mitsubishi Electric, yet the DPPs included it as part of their relentless and baseless insistence that Mitsubishi "concealed" contacts.

---

[5] Many of the expense-related report documents produced by Mitsubishi Electric take the form of authorization requests, seeking advance approval for a business trip, rather than reports submitted after the trips about expenses actually incurred.

Hon. Vaughn R. Walker
July 21, 2016
Page 6

- *Contact No. 3.* ███████████

- *Contact No. 4.* ███████████ Had Mitsubishi Electric considered this document at the time it supplied its Revised Exhibit B, it would not be required to speculate in a sworn response ███████████ and thus there is no concealment of information, bad faith, or discovery violation here.

- *Contact No. 5.* ███████████ Again, the meeting may well have happened, but Mitsubishi Electric committed no discovery violation for not swearing that it did.

- *Contact No. 6.* ███████████ But Mitsubishi Electric would have no way of assessing the accuracy of that page from Samsung SDI's production.

- *Contact No. 7:* ███████████

Hon. Vaughn R. Walker
July 21, 2016
Page 7



- *Contact No. 8*: ███████████████████████████████████
███████████████████████████████████
███████████  But there is no reason to believe that Mitsubishi Electric's not having identified this contact from among its voluminous production of expense reports and other documents evidences any deliberate intent to conceal or withhold information from the DPPs in "bad faith," as the DPPs claim. The meeting occurred during the time frame of Mitsubishi Electric's withdrawal from the CRT business, making its connection to the alleged conspiracy all the more unlikely.

In sum, the eight alleged contacts cited by the Supplemental Brief, like the 11 alleged contacts referenced in the DPPs' initial briefing on their Motion to Compel, do not support the DPPs' extreme position that there is "no doubt" that Mitsubishi Electric deliberately withheld information from its responses to Interrogatory No. 5. The documents and deposition testimony surrounding those contacts indicate the opposite: The DPPs have had ample discovery about those contacts through document discovery from Mitsubishi Electric and other parties, through Mitsubishi Electric's Revised Exhibit B, and through deposition testimony.

### C. The DPPs' References to Discovery from Other Alleged Conspirators Does Not Rescue the DPPs' Unreasonable Claims that Mitsubishi Electric Violated Discovery Obligations.

The DPPs' allegations of bad faith by the Mitsubishi Electric Defendants extends to their assumption that if evidence of a meeting or communication appeared in discovery documents or interrogatory responses provided by other alleged co-conspirators, the Mitsubishi Electric Defendants should be obligated to swear in an interrogatory answer that the meeting or communication happened. Respectfully, Mitsubishi Electric is unable to swear to facts of which it does not have knowledge, including other alleged co-conspirators' allegations or statements that Mitsubishi Electric has no way of verifying or corroborating.

The DPPs' lead example of Mitsubishi Electric's supposed bad faith in not admitting to these alleged contacts proves Mitsubishi Electric's point, because it is an example of how other CRT manufacturers' supposed evidence of a contact with Mitsubishi Electric might well be false, and how the complexity involved in sorting through voluminous Japanese-language documents might well lead to different conclusions about whether Mitsubishi Electric was involved in such a contact or not.

██████████ The DPPs trot out this document and its eye-catching reference to "destroy after reading," but the problem is that the DPPs, in their eagerness to pin anything they can on Mitsubishi Electric, have misread the translation, and in fact the document does not refer to Mitsubishi Electric at all. ██████████ he word "Mitsuboshi" and the Japanese characters ("三星") denoting "Mitsoboshi" in fact refer to "Samsung." Fuentes Decl. Ex. 6, Declaration of Manako Ihaya. ██████████ Accordingly, the DPPs are faulting Mitsubishi Electric for not doing precisely what the DPPs have done: assuming that another party's documents establish Mitsubishi Electric's involvement in a contact when Mitsubishi Electric has no basis for such an assumption, which in this case turned out to be flat-out wrong.

Mitsubishi Electric is entirely justified in not leaping to the same conclusions as have the DPPs based on other manufacturers' documents or discovery responses, as shown by another document cited by the DPPs in their Supplemental Brief. 



██████████ Mitsubishi Electric would have no motive to conceal this meeting, which plainly had a legitimate purpose related to discussion of its closure of the plant (a widely known fact), and Hitachi's possible interest in the plant.

Hon. Vaughn R. Walker
July 21, 2016
Page 9

The DPPs apparently expect Mitsubishi Electric to sort through millions of pages of foreign-language documents produced by other parties and then produce a list of meetings that Mitsubishi Electric would swear it attended, without any way of knowing whether the meetings happened. Then, the DPPs ascribe bad-faith motives to Mitsubishi Electric for not having done so, and for not making assumptions about these documents and what they show, when the DPPs have themselves demonstrated that some of their own assumptions about the documents are simply wrong. The standard to which the DPPs wish to hold the Mitsubishi Electric Defendants in the Motion to Compel, and its plea for sanctions, is not reasonable under the circumstances. "Before making its [discovery] disclosures, a party has the obligation . . . to make a reasonable inquiry into the facts of the case. The rule does not demand an exhaustive investigation at this stage of the case, but one that is reasonable under the circumstances, focusing on the facts that are alleged with particularity in the pleadings." Fed. R. Civ. P. 26, advisory committee's note to 1993 amendment.

Mitsubishi Electric's disclosure in its Revised Exhibit B to DPP Interrogatory No. 5 was reasonable under the circumstances and does not warrant the drastic and unjustified (under any reasonable application of Rule 26) form of sanctions relief sought by the DPPs.

## II. The Mitsubishi Electric Defendants Have Met Their Discovery Obligations Concerning Interrogatory No. 12 and Sales Information.

The DPPs argue that MEVSA's supplemental interrogatory response concerning its records of sales of certain CRT finished products, served over five months ago, demonstrates Mitsubishi Electric's alleged bad faith. The context of MEVSA's sales information is that it likely forms a tiny, negligible percentage of the sales at issue in the DPPs' damages claims, which cite the sales of all the alleged CRT conspiracy members. Nonetheless, MEVSA's February 2016 supplemental response, and the earlier supplemental production of documents upon which the response was based, shows the Mitsubishi Electric Defendants' good faith and diligence in this matter.

### A. The Mitsubishi Electric Defendants Did Not Violate Any Discovery Obligation By Producing Additional Documents and By Supplementing Interrogatory Responses.

The Mitsubishi Electric Defendants have not made any false statements or withheld documents relevant to their finished product sales data. On the contrary, the Mitsubishi Electric Defendants have made a good faith effort to provide the DPPs with the available discovery on this topic. MEVSA's supplemental production and supplemental interrogatory response prove it.

MEVSA's February 18, 2016 supplemental interrogatory response to Interrogatory No. 12 concerning CRT television sales is nothing more than a good-faith effort to supplement MEVSA's discovery responses under Rule 26(e)(1) based on documents MEVSA produced on a rolling basis on September 24, 2015, December 23, 2015, and January 14 and 30 of 2016. *See*

Rushing Decl. Ex. 17-19, letters from Mitsubishi counsel; G. Fuentes Decl. Ex. 7, G. Fuentes Ltr. to D. Millen, Jan. 14, 2016 (transmittal letter re Jan. 14, 2016 production).

Five months after MEVSA completed its supplemental productions and supplemented its interrogatory response, DPPs requested to re-depose Mr. Wasinger.[6] Counsel for MEVSA promptly contacted Mr. Wasinger (as a former employee) and notified the DPPs on July 14 that he could be deposed for a second time on August 8. G. Fuentes Decl. Ex. 8, G. Fuentes Ltr. G, Rushing, July 20, 2016. There is no discovery misconduct or bad faith here, and no prejudice to the DPPs, who will have ample opportunity to ask Mr. Wasinger about the accuracy of sales information contained in MEVSA's supplemental document production.

The DPPs' remaining arguments about the supposed bad faith evinced by MEVSA's February 2016 supplemental discovery response are equally unavailing. First, the DPPs argue that because sales reports were regularly sent to Mitsubishi Electric, somehow the Mitsubishi Electric Defendants ought to be able to vouch for their accuracy. Suppl. Br. 4. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Mitsubishi Electric's statement under these circumstances that it cannot be sure of the accuracy of these very old sales reports is not misconduct.

Second, the DPPs' suggestion that the Mitsubishi Electric Defendants have some form of "modus operandi" of lying to the DPPs about their good faith and then not producing documents until after "bouts of motion practice," Suppl. Br. 4, is plainly false. There is no dispute that MEVSA unilaterally supplemented its document production in 2015 and early 2016, and then unilaterally supplemented MEVSA's interrogatory answer – all without motion practice. In fact, MEVSA's January 14, 2016 production reveals the Mitsubishi Electric Defendants' willingness to cooperate with the DPPs. The DPPs asked MEVSA if it would be willing to produce about 30,000 documents (all of which had hits for the DPPs proposed "conspiracy" search terms) without first reviewing them for privilege or relevance. The production would be subject to a clawback agreement to protect MEVSA's rights. To avoid delaying discovery and the burden of reviewing an additional 30,000 documents—most of which MEVSA believed to have little relevance to the case—MEVSA agreed to the DPPs' proposal. Fuentes Decl. Ex. 10, G. Fuentes Ltr. to D. Millen, Jan. 8, 2016. This openness and transparency belies the DPPs' repeated allegations that the Mitsubishi Electric Defendants' modus operandi is to conceal documents. Like the rest of the DPPs' manufactured claims of discovery misconduct by the Mitsubishi

---

[6] MCEA was a predecessor to MEVSA. Mr. Wasinger had worked for Mitsubishi Consumer Electronics America, Inc., known as "MCEA," when MCEA sold CRT televisions, and he testified in July 2015 about the existence of monthly sales reports that MEVSA later located, produced, and relied upon as the basis for the February 2016 supplemental response. *See* Fuentes Decl. Ex. 9, M. Wasinger Dep. 64:23 – 69:11.

Hon. Vaughn R. Walker
July 21, 2016
Page 11

Electric Defendants, the DPPs' allegations concerning MEVSA's February 2016 supplemental interrogatory response do not withstand scrutiny.

The Mitsubishi Electric Defendants have not concealed anything from the DPPs on the issue of sales data.  The DPPs have had and will have ample discovery on these issues, which are inappropriate for resolution on the Motion to Compel and do not warrant the requested sanctions.

> **B. The DPPs' Argument That MEVSA's Supplemental Production of Sales Data Shows a Broad Pattern of Concealment and Obstruction of Discovery of Sales Information Is Wrong.**

In their last stab at arguing that the Mitsubishi Electric Defendants have withheld sales information, the DPPs point again to information already produced to them, this time an electronic document (produced in January 2016) containing sales information about CRT monitors.  *See* Suppl. Br. 5; Rushing Decl. Ex. 20, ME 00198160.  The DPPs allege that MEVSA's production of this document "indicates that Mitsubishi may have many more similar documents that it has failed to produce or identify to date."  Suppl. Br. 5.  But while including this assertion in their litany of allegations of supposed bad faith by the Mitsubishi Electric Defendants, the DPPs left out some important facts that show the contrary.



The DPPs' reliance on Exhibit 20 to the Rushing Declaration as support for their allegation of the Mitsubishi Electric Defendants' supposed bad faith, when Mitsubishi Electric provided that information (and more) some two years ago, and even mentioned it in an interrogatory answer, is ineffectual and stands as a further example of a recklessness with which the DPPs have made their allegations on the Motion to Compel, both in December 2015 and now.  The representations

that "beg credulity" are not those of the Mitsubishi Electric Defendants, but rather the DPPs' unfounded "bad faith" allegations that consistently collapse once anyone examines them closely.

All of this suggests that in reality, the DPPs do not care about the authenticity of these sales documents. They are actually unhelpful documents for the DPPs, as they corroborate Mitsubishi Electric's position that it occupied only a tiny portion of the market for CRTs and therefore would have had no incentive to enter into a conspiracy. As far as incentives are concerned, Mitsubishi Electric has every incentive to produce more sales data in support of this point. Rather than having an interest in the sales data to prove their case, the DPPs appear to be reaching for anything they can recklessly characterize as support for their plea for discovery sanctions such as admission of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or the admission of documents without underlying evidentiary foundations.[7] The DPPs' interest in their Motion to Compel may well have been renewed by the turn discovery has taken, and by the mounting indications that the DPPs have no real proof of their allegations that Mitsubishi Electric participated in the alleged CRT conspiracy. Whatever the DPPs' motivations, their allegations fail to hold water, and if the Court is at all inclined to rule on the Motion to Compel, it ought to deny the motion and deny all related requests for sanctions.

### III. Mitsubishi Electric Has Not Committed Any Discovery Violation Concerning the Issue of Destroyed Documents.

The DPPs also assert that the deposition testimony of a retired Mitsubishi Electric executive, Mr. Innami, creates an inference of document spoliation. Suppl. Br. 5-6. The DPPs are incorrect.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But nothing in the deposition supported any other inference besides what Mitsubishi Electric already has said in this litigation: Documents were discarded in the ordinary course of business long before there was any inkling of a lawsuit here or any reason to believe Mitsubishi Electric ought to preserve any such documents in view of a lawsuit that it had no idea it would be facing and had no reason to think it would be facing. The DPPs do not contend that Mitsubishi Electric was under any kind of document preservation duty in 2005 (it was not), and nor do the DPPs have any evidence that any of these additional documents exist or have been withheld. Instead, the DPPs offer more wild and reckless speculation that Mitsubishi Electric is either concealing documents or did not search for them (or "probably both"). Suppl. Br. 5.

---

[7] In their January 8, 2016 reply in support of the Motion to Compel, the DPPs suggested that the Mitsubishi Electric Defendants had somehow agreed with or did not oppose certain of the DPPs' requested sanctions other than admission of the Samsung SDI discovery response into evidence. That implication also is false. The Mitsubishi Electric Defendants then and now assert that no discovery violations occurred here, and that none of the DPPs' proposed sanctions would be warranted in any event.

The Court should disregard the DPPs' speculative and unsupported allegations. The DPPs have no evidence whatsoever that Mitsubishi Electric destroyed any documents after they were subject to a duty to preserve. Courts do not impose discovery sanctions based on purely speculative allegations of spoliation. *See, e.g.*, *Ryan v. Editions Ltd. West, Inc.*, 786 F.3d 754, 766 (9th Cir. 2015) (affirming refusal to impose sanctions based on speculative allegations of spoliation); *Clinton v. De La Cruz*, --- F. App'x ---, 2016 WL 1732432, at *1 (May 2, 2016) (same); *United States Legal Support, Inc. v. Hofioni*, No. 2:13-CV-1770 (LKK) (AC), 2014 WL 172336, at *4 (E.D. Cal. Jan. 15, 2014) (holding that "[m]ere speculation is an insufficient basis for a finding of spoliation" and declining to impose sanctions); *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 631 (C.D. Cal. 2013) (same); *FTC v. Lights of America Inc.*, No. SACV 10-1333 (JVS) (MLGx), 2012 WL 695008, at *54 (C.D. Cal. Jan. 20, 2012) (same); *Chavez v. Blue Sky Natural Beverage Co.*, No. 06-06609 (JSW) (JSC), 2011 WL 4830997, at *4 (N.D. Cal. Oct. 12, 2011) (same); *United States v. Maxxam, Inc.*, No. C-06-07497 (CW) (JCS), 2009 WL 817264, at *11-14 (N.D. Cal. March 27, 2009) (same).

Nor do the DPPs offer any evidence that they were prejudiced by their failure to obtain these documents. The test for prejudice is "whether there is a reasonable possibility, based on concrete evidence, that access to the evidence which was destroyed or altered, and which was not otherwise obtainable, would produce evidence favorable to the objecting party." *Chavez*, 2011 WL 4830997, at *4 (quoting *Hamilton v. Signature Flight Support Corp.*, No. C 05-0490 (CW) (MEJ), 2005 WL 3481423, at *8 (N.D. Cal. Dec. 20, 2005). There has been no evidence that discovery materials favorable to the DPPs have been deliberately destroyed or concealed to prevent the DPPs from accessing them. ████████████████████████████████████████████████████████████████████████

## CONCLUSION

As in the DPPs' initial briefing on their Motion to Compel, the DPPs in their Supplemental Brief have come up empty in their effort to establish that there is any further information the Mitsubishi Electric Defendants should be compelled to provide, or that any of the inappropriate discovery sanctions proposed by the DPPs ought to be imposed. The relevant update for the Court's purposes on the DPPs' Motion to Compel is that since the DPPs filed the motion, their liability case is unraveling, just as their assertions of discovery violations unravel when the Court looks closely at them, at their context, or at the documents upon which they purport to be based. If anything, the DPPs' effort to update the state of affairs of the Motion to Compel provide even more compelling reasons why the Court ought to reject their extraordinary request that the Court tip the scales back in their favor by ordering the admission of an inadmissible hearsay document accusing Mitsubishi Electric, without any proof and not supported by any evidence the DPPs have developed in this matter, of participating in the alleged conspiracy.

Hon. Vaughn R. Walker
July 21, 2016
Page 14

The Mitsubishi Electric Defendants respectfully request that the Court deny the Motion to Compel.

Sincerely,

*/s/ Michael T. Brody*
Michael T. Brody

cc:     R. Alexander Saveri
        Geoff Rushing
        Terrence Truax
        Gabriel Fuentes

1  Brent Caslin (Cal. Bar. No. 198682)
   JENNER & BLOCK LLP
2  633 West Fifth Street
   Suite 3600
3  Los Angeles, California 90071
4  Telephone:   213 239-5100
   Facsimile:    213 239-5199
5  bcaslin@jenner.com

6  Terrence J. Truax (*pro hac vice*)
   Michael T. Brody (*pro hac vice*)
7  Charles B. Sklarsky (*pro hac vice*)
   Gabriel A. Fuentes (*pro hac vice*)
8  Jenner & Block LLP
   353 N. Clark Street
9  Chicago, Illinois 60654-3456
   Telephone:     312 222-9350
10 Facsimile:      312 527-0484
   ttruax@jenner.com
11 mbrody@jenner.com
   csklarsky@jenner.com
12 gfuentes@jenner.com

13 Harold A. Barza (Cal. Bar. No. 80888)
   Kevin Y. Teruya (Cal. Bar. No. 235916)
14 halbarza@quinnemanuel.com
   kevinteruya@quinnemanuel.com
15 865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
16 Telephone:      (213) 443-3000
   Facsimile:       (213) 443-3100
17
   Ryan S. Goldstein (Cal. Bar No. 208444)
18 ryangoldstein@quinnemanuel.com
   NBF Hibiya Building, 25F
19 1-1-7, Uchisaiwai-cho, Chiyoda-ku
   Tokyo 100-0011, Japan
20 Telephone:      +81 3 5510 1711
   Facsimile:       +81 3 5510 1712
21
   *Attorneys for Defendants Mitsubishi Electric*
22 *Corporation, Mitsubishi Electric US, Inc., and*
   *Mitsubishi Electric Visual Solutions America, Inc.*
23

24

25

26

27

28

DECLARATION OF GABRIEL A. FUENTES ISO MITSUBISHI ELECTRIC DEFS.' RESPONSE TO DIRECT
PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF ISO MOTION TO COMPEL
CASE NO. 3:14-CV-02058-JST, MDL NO. 1917

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION**<br><br>This Document Relates to:<br><br>*Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al.,*<br>Case No. 14-CV-2058-JST | MDL No. 1917<br><br>Master File No. 3:07-cv-05944-JST<br>Case No. 3:14-cv-02058-JST<br><br>**DECLARATION OF GABRIEL A. FUENTES IN SUPPORT OF THE MITSUBISHI ELECTRIC DEFENDANTS' RESPONSE TO DIRECT PURCHASER PLAINITFFS' SUPPLEMENTAL BRIEF ISO MOTION TO COMPEL**<br><br>Special Master: Hon. Vaughn R. Walker |

# CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER

## DECLARATION OF GABRIEL A. FUENTES

I, Gabriel A. Fuentes, declare as follows:

1. I am an attorney licensed to practice law in the State of Illinois, and I am a partner at the law firm of Jenner & Block LLP, attorneys of record for defendants Mitsubishi Electric Corporation ("Mitsubishi Electric"), Mitsubishi Electric US, Inc. ("MEUS"), and Mitsubishi Electric Visual Solutions America, Inc. ("MEVSA") (collectively, the "Mitsubishi Electric Defendants"). I submit this Declaration in support of Mitsubishi Electric's Response to DPPs' Supplemental Brief in Support of Their Motion to Compel Mitsubishi to Provide Full and Complete Responses to Discovery re: Meetings with Competitors, Sales, and Destruction of Evidence, and For Evidentiary Sanctions. I have personal knowledge of the facts set forth in this Declaration, and, if called as a witness, I could and would testify competently to such facts under oath.

2. Attached to my Declaration as **Exhibit 1** is a true and correct copy of the Direct Purchaser Plaintiffs' Second Supplemental Objections and Responses to Defendant Mitsubishi Electric Corporation's First Set of Interrogatories Interrogatory No. 1, dated April 15, 2016.

3. Attached to my Declaration as **Exhibit 2** is a true and correct copy of Notice of Deposition Upon Written Questions of C.C. Liu Pursuant to Fed. R. Civ. P. 31, dated June 14, 2016.

4. Attached to my Declaration as **Exhibit 3** is a true and correct copy of my letter to Rick Saveri, dated July 20, 2016.

5. Attached to my Declaration as **Exhibit 4** is Mitsubishi Electric Corporation's Supplemental Responses to Direct Purchaser Plaintiffs' First Set of Interrogatories, dated January 16, 2015 (excluding Exhibit A thereto, which can be found instead attached to Exhibit 12 of this Declaration).

6. Attached to my Declaration as **Exhibit 5** is a true and correct copy of excerpts from the deposition transcript of Masahiko Konishi, dated December 11, 2014.

7. Attached to my Declaration as **Exhibit 6** is a true and correct copy of the Declaration of Manako Ihaya, dated July 20, 2016.

1

DECLARATION OF GABRIEL A. FUENTES ISO MITSUBISHI ELECTRIC DEFS.' RESPONSE TO DIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF ISO MOTION TO COMPEL
CASE NO. 3:14-CV-02058-JST, MDL NO. 1917

8. Attached to my Declaration as **Exhibit 7** is a true and correct copy of my letter to Doug Millen, dated January 14, 2016.

9. Attached to my Declaration as **Exhibit 8** is a true and correct copy of my letter to Geoff Rushing, dated July 20, 2016.

10. Attached to my Declaration as **Exhibit 9** is a true and correct copy of excerpts from the deposition transcript of Max Wasinger, dated July 16, 2015.

11. Attached to my Declaration as **Exhibit 10** is a true and correct copy of my letter to Doug Millen, dated January 8, 2016.

12. "PIMS" is an acronym by which the company "PBC Integrated Manufacturing System. S.A. de C.V." was known.

13. Attached to my Declaration as **Exhibit 11** is a true and correct copy of ME 0212-0444.

14. Attached to my Declaration as **Exhibit 12** is a true and correct copy of Mitsubishi Electric Corporation's Third Supplemental Response to Interrogatories Nos. 5, 10-12, dated May 26, 2015.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 21st day of July at Chicago, Illinois.

>　　　　　　　　　　　　　　　*/s/ Gabriel A. Fuentes*
>　　　　　　　　　　　　　　　Gabriel A. Fuentes