Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the*
*Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **DECLARATION OF LAUREN C. CAPURRO IN OPPOSITION TO MOTION TO STRIKE DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF LEAD COUNSEL'S OMNIBUS RESPONSE TO OBJECTIONS TO PROPOSED ALLOCATION OF AGGREGATE FEE AWARD TO INDIRECT PURCHASER PLAINTIFFS' COUNSEL, ECF NO. 4874**<br><br>Hearing Date: October 5, 2016<br>Time: 11:00 a.m.<br>Before: Special Master Martin Quinn<br>Court: JAMS<br><br>Judge: Honorable Jon S. Tigar |

1     I, Lauren C. Capurro, declare:

2       1.      I am an attorney duly licensed by the State of California and am admitted to practice

3   before this Court.  I am an associate with the law firm Trump, Alioto, Trump & Prescott, LLP and

4   my firm serves as Lead Counsel for the Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned

5   action.  I make this declaration in support of the Opposition to Motion to Strike Declaration of Mario

6   N. Alioto In Support of Lead Counsel's Omnibus Response to Objections to Proposed Allocation of

7   Aggregate Fee Award to IPP Counsel, which was filed by Cooper & Kirkham, P.C. ("C&K").

8   Except where otherwise stated, the matters set forth herein are within my personal knowledge and if

9   called upon and sworn as a witness I could competently testify regarding them.

10      2.      I have worked on the *CRT* litigation since its inception in November 2007.  From

11  2011 through the present, I have worked almost exclusively on this case.

12      3.      I have been involved in every aspect of this case and have worked closely with almost

13  every IPP firm in this case.  In order to assist Mr. Alioto in proposing a fair and reasonable

14  allocation of the aggregate fee award, I reviewed my time records, my emails, my files, the

15  Compendium of Declarations of IPP Counsel (ECF No. 4073), and the time records of certain IPP

16  firms.

17      4.      My role in this case included directing and supervising the meet and confers with

18  Defendants regarding their responses to IPPs' discovery requests, as well as leading the meet and

19  confers with defendant LG Electronics, Inc.  My role also included setting up the document review

20  database, assigning the teams, draft the Coding Manual and establishing review protocols.

21  Thereafter, I directed and oversaw the entire document review effort for all Defendants through class

22  certification, merits discovery and trial preparation.

23      5.      I worked closely with both John Bogdanov from June 2010 through the negotiation of

24  the settlements in early 2015, and with Tracy Kirkham on the Electronically Stored Information

25  ("ESI") Protocol from April 2010 through September 2010.

26      6.      I never had any contact with Josef Cooper regarding this case prior to the filing of his

27  objections to the settlements and IPP Counsel's fee request in October 2015.  I am unaware of Mr.

28  Cooper performing any substantive work in this case.

7. The work done by C&K in this case was done almost exclusively by Mr. Bogdanov. During the pendency of the case, I had a good working relationship with Mr. Bogdanov and his work product was generally of good quality. I do not wish to impugn the quality of Mr. Bogdanov's work. But C&K overstates his contribution to the case in its Objection (ECF No. 4821), so we were required to correct the record. Mr. Bogdanov was not, as claimed in C&K's Objection, a "top tier" member of the team in this case. (*Id.* at 1.) His role was primarily limited to negotiating the production of Philips' documents and reviewing those documents. He took no depositions and drafted no briefs. Other than his involvement in preparing for the Philips Rule 30(b)(6) deposition, he had no involvement in class certification. He had no involvement in litigation or trial strategy. His role was limited to being a leader of the Philips document review team, and providing assistance to me and others who were performing higher level tasks such as taking depositions, drafting important briefs and running the case.

8. Mr. Bogdanov joined the case in June 2010—2 ½ years after the case began—to assist with the negotiations with Defendants regarding their responses to IPPs' discovery requests. I assigned him to Philips. But unlike some of the other firms assigned to assist with the offensive discovery effort against a particular defendant, Mr. Bogdanov was unable to handle the meet and confers without substantial assistance from me. For the most part, Mr. Bogdanov had a good understanding of the evidence, but I often had to draft the meet and confer letters to Philips or heavily edit his drafts. Attached hereto as Exhibits 1-2 are true and correct copies of letters drafted by Mr. Bogdanov that I had to substantially re-work before sending to defense counsel.

9. I also ended up having to take over the negotiation of certain issues entirely because they had been dragging on for so long. For example, by early 2012—almost two years after the meet and confers with Philips had begun—Philips still had not produced any documents relating to CRT televisions or monitors (often referred to collectively in this case as "CRT Finished Products") and was refusing to search the files of employees who had worked in the CRT Finished Product business. This evidence was necessary for proving pass-through of the overcharge and the close relationship between the CRT and CRT Finished Product markets. Some of this delay was due to IPPs' withdrawal of the conspiracy allegations regarding CRT Finished Products, but the attorneys

1   assigned to the other Defendants had been able to overcome this obstacle sooner and/or had

2   successfully moved to compel.  I therefore took over the negotiations with Philips' counsel and

3   negotiated the production of documents from certain employees who had worked in Philips' CRT

4   Finished Product business.  Attached hereto as Exhibit 3 is a true and correct copy of an email chain

5   between myself and Andreas Stargard, counsel for Philips, regarding Philips' production of

6   documents relating to CRT Finished Products.

7          10.    While I was involved in the meet and confers with all Defendants, I was required to

8   play a much bigger role with Philips.  Attached hereto as Exhibits 4-5 are true and correct copies of

9   emails between me and Philips' counsel showing my high level of involvement in the meet and

10  confers.  This was not, as Mr. Bogdanov posits, because Philips' counsel was more difficult to deal

11  with than other defense counsel.  (Second Declaration of John Bogdanov in Support of Cooper &

12  Kirkham, P.C.'s Objection, ECF No. 4878-1 ("Second Bogdanov Decl.") ¶ 20).)  In fact, certain

13  other defense counsel were much more uncooperative, which resulted in the filing of multiple

14  motions to compel.  No motions to compel were filed against Philips.  (*See* Alioto Decl. ISO Motion

15  for Attorneys' Fees, Exhibit 4 (ECF No. 4071-4) (listing all of the discovery motions filed in the

16  case, and showing multiple motions filed against certain other Defendants, but none against

17  Philips).)

18         11.    In the Spring of 2012, IPP Counsel were preparing to take Rule 30(b)(6) depositions

19  of Defendants to gather information relevant to class certification.  I was responsible for directing

20  and supervising the teams of attorneys preparing for these depositions ("Defendant teams"),

21  including preparing the deposition outlines, searching for and reviewing relevant documents and

22  data, selecting documents as deposition exhibits and taking the depositions.  I worked with IPPs'

23  expert economists to prepare a template outline for all of the Rule 30(b)(6) depositions.  I then

24  worked with Mr. Bogdanov (and the other Defendant team leaders) to refine the outline to be

25  specific for Philips.

26         12.    In general, the attorneys assigned to lead the negotiations with the Defendants

27  regarding their document productions, also led the document review efforts for that Defendant and

28

DECLARATION OF LAUREN C. CAPURRO ISO OPPOSITION TO MOTION TO STRIKE
Master File No. CV-07-5944-JST

took the Rule 30(b)(6) deposition(s).[1]  This was the most efficient approach given that these attorneys were the most knowledgeable about their Defendant(s).  I had therefore expected that Mr. Bogdanov would take the Philips Rule 30(b)(6) deposition.  However, on or around June 19, 2012, I asked Mr. Bogdanov if he wanted to take the Philips Rule 30(b)(6) deposition and he declined.  He informed me that, in general, he prefers not to take depositions and prefers instead to work on document review and helping others prepare for taking depositions.  I recall that this conversation took place by telephone.  I have no record of it in my emails, but I nevertheless have a very clear memory that I asked Mr. Bogdanov if he wanted to take the deposition and he declined to do so.  Both my and Mr. Bogdanov's time records confirm that we were in regular contact during this period.

13.     As a result of Mr. Bogdanov declining to take the deposition, and after conferring with Mr. Alioto, I asked Judith Zahid of Zelle Hofmann to take the deposition.  My time records confirm that I spoke to Ms. Zahid on June 19, 2012 in this regard: "T/c with Judith re covering LGE + Philips 30b6 deps, f/n re same."[2]  Ms. Zahid had not previously worked on Philips discovery, so while she had some knowledge of Philips due to other work she had done in the case, her knowledge was limited.  She therefore had to take time to review everything and get up-to-speed.  This time was duplicative of Mr. Bogdanov's work and would not have been required if he had not declined to take the deposition.

14.     I have reviewed Mr. Bogdanov's Second Declaration (ECF No. 4878-1) and his claim that he was never requested to take the Philips Rule 30(b)(6) deposition, and that he was simply informed that Ms. Zahid would be taking the deposition by email dated June 21, 2012. (*Id.* at ¶ 9.) These claims are false.  Apart from the fact that I specifically recall Mr. Bogdanov telling me that he did not want to take the deposition, and that Mr. Alioto recalls me relaying this to him (Declaration of Mario N. Alioto in Support of Opposition to Motion to Strike ("Alioto MTS Decl.") ¶ 4), it would

---

[1] For Defendants Hitachi, Panasonic and LG Electronics, there were multiple Rule 30(b)(6) depositions because there were multiple entities and/or the persons most knowledgeable differed depending on the subject-matter of the questions (e.g. CRTs v. CRT Finished Products).   There was only one Philips Rule 30(b)(6) witness on all topics.

[2] I am not attaching copies of my time records because the Court, the Special Master and all interested parties have copies of them already.

1    have made absolutely no sense for me to assign Ms. Zahid to take this deposition out of the blue

2    without first giving Mr. Bogdanov an opportunity to take it.  Ms. Zahid is an excellent attorney but

3    she had no background with Philips, as opposed to Mr. Bogdanov who had been working on Philips

4    for two years at that point.

5          15.    Assigning Ms. Zahid without first asking Mr. Bogdanov to take the deposition would

6    also have been contrary to the general practice we had put in place, described above, whereby the

7    Defendant team leaders took the deposition(s) of their Defendant(s).  For example, I was the team

8    leader for LG; Jennie Anderson of Andrus Anderson was the team leader for Hitachi; Dan

9    Birkhaeuser of Bramson, Plutzik, Mahler & Birkhaeuser, LLP was the team leader for Toshiba; and

10   Demetrius Lambrinos of Zelle Hofmann was the team leader for Panasonic.  I took the LG Rule

11   30(b)(6) depositions, Ms. Anderson took the Hitachi Rule 30(b)(6) depositions, Mr. Birkhaeuser

12   took the Toshiba Rule 30(b)(6) depositions, and Mr. Lambrinos took the Panasonic Rule 30(b)(6)

13   depositions.[3]

14         16.    In addition, the wording of my June 21, 2012 email (attached as Exhibit A to Mr.

15   Bogdanov's Second Declaration) strongly indicates that an earlier conversation had occurred

16   between myself and Mr. Bogdanov on the question of who would take the Philips Rule 30(b)(6)

17   deposition, and that Mr. Bogdanov had declined to take it: "Hi John, Judith has very kindly agreed to

18   help us with the Philips 30b6."  Moreover, Mr. Bogdanov has excluded his response to my email (a

19   true and correct copy of which is attached hereto as Exhibit 6) in which he states: "Lauren and

20   Judith, That is great!"  Mr. Bogdanov's response indicates that he was aware I was looking for

21   another attorney to take the deposition and was happy I had found someone willing to step in.  He

22   does not express any surprise and certainly gives no indication that he wanted to take the deposition

23   despite his superior knowledge regarding Philips.

24         17.    Mr. Bogdanov notes in his declaration that I was originally supposed to second chair

25   the Philips Rule 30(b)(6) deposition in Washington D.C., but that I "informed [him] that [I] would

26   be unable to appear," requiring him to second chair in my place.  (Second Bogdanov Decl. ¶ 11.)

27

28   [3] Because we were working with the Direct Purchaser Plaintiffs ("DPPs") to take these depositions,
     in some instances, IPP Counsel second chaired these depositions.

DECLARATION OF LAUREN C. CAPURRO ISO OPPOSITION TO MOTION TO STRIKE
Master File No. CV-07-5944-JST

1    C&K's Reply in Support of its Objection accuses me of "backing out" of second-chairing the Philips

2    deposition.  (ECF No. 4878 at 16.)  As Mr. Bogdanov and his partners are well aware, the reason for

3    my being unable to attend the Philips deposition in Washington D.C. was that I was seven and a half

4    months pregnant at the time and was advised not to travel by my doctor.

5            18.    While I was on maternity leave (mid-September 2012 through December 31, 2012),

6    Brian Umpierre of Glancy Prongay & Murray, LLP took over as the team leader for LG.  He

7    continued in that role after I returned from maternity leave because I could no longer devote

8    sufficient attention to LG due to my other responsibilities in the case.  For example, my broad

9    knowledge of the evidence as to all Defendants made it necessary for me to be involved in the

10   deposition preparations for all Defendants.  And this was in addition to assisting with briefing class

11   certification in early/mid 2013, coordinating with the other plaintiff groups, briefing various motions

12   to compel and the myriad of other issues to which I was assigned.  I could not afford to focus

13   exclusively on only one Defendant.

14           19.    Before the merits depositions of Philips witnesses began, I reminded Mr. Alioto that

15   Mr. Bogdanov preferred not to take depositions.  Mr. Alioto then spoke to Mr. Bogdanov, who again

16   confirmed that he did not want to take the depositions.  (Alioto MTS Decl. ¶ 5.)  Mr. Alioto

17   thereafter contacted another attorney, Diane Pritchard, to take the Philips merits depositions.  (*Id.*)

18   This again meant that much of Bogdanov's work on reviewing and analyzing the evidence against

19   Philips had to be duplicated.

20           20.    Again, it would have made no sense for Mr. Alioto to ask another attorney (who had

21   not previously worked on the case) to take the Philips depositions if Mr. Bogdanov had been willing

22   to take them.  Moreover, this situation was in stark contrast to other firms that were assigned to

23   manage a particular Defendant's discovery, such as Andrus Anderson, Bramson Plutzik, and Zelle

24   Hofmann, which took all of the merits depositions for their Defendants.

25           21.    Mr. Bogdanov also overstates his role at the Philips depositions. (Second Bogdanov

26   Decl. ¶ 18-19.)  He fails to acknowledge that counsel for the DPPs and Direct Action Plaintiffs

27   ("DAPs") were also involved in the preparation for the Philips depositions (including reviewing

28   documents, selecting deposition exhibits and preparing an outline), and oftentimes either took the

1   lead in questioning the witness or questioned after Ms. Pritchard.  I was also heavily involved in the

2   preparation for the Philips depositions.  In other words, Mr. Bogdanov was one member of a large

3   team of very capable attorneys.  Attached hereto as Exhibit 7 is a true and correct copy of an outline

4   for the Jim Smith deposition (an important Philips witness), which was drafted by DPP Counsel and

5   heavily edited by me.

6        22.    Additionally, Mr. Bogdanov was not second chair at the depositions led by the DPPs

7   and DAPs, including the depositions of Jim Smith, Patrick Canavan, Joseph Killen, Kris Mortier,

8   Jeff Johnson, Frans Spaargaren or Jan deLombaerde.[4]  Mr. Bogdanov's presence at the Philips

9   depositions was only necessary because Ms. Pritchard had joined the case late (due to Mr. Bogdanov

10  declining to take the Philips depositions) and did not have Mr. Bogdanov's depth of knowledge

11  regarding the evidence.  Nevertheless, it was Ms. Pritchard and the other questioning DPP and DAP

12  attorneys who made the final decisions regarding which documents were selected as deposition

13  exhibits.  Mr. Bogdanov certainly assisted with this, but as with everything else he did in this case,

14  he never took primary responsibility.  His work therefore cannot be considered "top tier."

15       23.    With regard to briefing, Mr. Bogdanov did not draft any of the briefs relating to

16  Philips in this case.  He was not involved in the case when IPPs moved to serve Koninklijke Philips

17  N.V. pursuant to Fed. R. Civ. Pro. 4(f)(3) in 2008. (ECF Nos. 354, 357, 363 and 374.)  I briefed and

18  argued that motion.  Mr. Bogdanov likewise had no involvement in briefing the opposition to

19  Philips' first round of motions to dismiss in 2009 (ECF Nos. 476, 536, 554), or the objections to the

20  Special Master's Report & Recommendation. (ECF Nos. 597, 622, 630.)  I drafted the opposition to

21  Philips' motion to dismiss and the response to their objections, and argued the motion before the

22  Special Master.  And when IPPs sought to add two Philips entities as Defendants in early 2014—a

23  decision made by me and Mr. Alioto—it was Sylvie Kern and I who handled the meet and confers

24  with Philips' counsel and briefed Philips' motion to dismiss for lack of personal jurisdiction, which

25  turned out to be more like a summary judgment motion and was a tremendous amount of work. (*See*

26  ECF Nos. 2536-2538, and 2575.)

27

28  [4] Mr. Bogdanov lists Leo Mink as one of the depositions at which he appeared as second-chair. (Second Bogdanov Decl. ¶ 2 (incorporating ECF No. 4073-6.) But this deposition never took place.

24.     Similarly, at summary judgment, while I did ask Mr. Bogdanov for his input regarding the Philips' motions (as I did with all of the team leaders), he did not draft any of the opposition briefs.  Diane Pritchard drafted the statement of facts for the Philips' opposition brief, with assistance from me, Brian Umpierre and Mr. Bogdanov.

25.     Mr. Bogdanov's contribution at summary judgment pales in comparison to that of other IPP firms which took full responsibility for drafting the oppositions to one or more summary judgment motions, and selecting the evidence to be included therein.  For example, Sylvie Kern, Matthew Duncan of Fine Kaplan & Black and I drafted the opposition to the Defendants' summary judgment motion on FTAIA grounds. (ECF Nos. 3006, 3287.) Jennie Anderson briefed one of the Hitachi motions for summary judgment and was integrally involved in briefing Hitachi's second motion along with DAP counsel.  (ECF Nos. 2976, 2972, 3268 & 3274.)  Mr. Cihlar of Straus & Boies LLP drafted the opposition to Defendants' motion for summary judgment for lack of antitrust standing.  (ECF Nos. 3051, 3254.)  Dan Birkhaeuser drafted the opposition to Toshiba's summary judgment motions along with certain DAP counsel.  (ECF Nos. 2995.)  And Judith Zahid and Chris Micheletti of Zelle Hofmann drafted the opposition to another FTAIA motion along with the DAPs. (ECF Nos. 3008, 3272.)

26.     Mr. Bogdanov points to his inclusion in a team of six attorneys that reviewed and ranked potential trial exhibits as evidence of his elevated role in the case.  But this group was merely tasked—along with a team of DAP counsel—with making a first pass at all of the potential trial exhibits in the case (some 9,000 documents) and ranking them for higher level review by the trial team at a later date.  All of the Defendant team leaders were asked to be a part of this review given their knowledge of the evidence regarding their Defendant(s).  Again, this was higher level document review.

27.     Mr. Bogdanov's work in this case was not "substandard." (Motion to Strike at 3.) But it was not to the same standard or level as the firms in the top tiers.  As described above, his work was limited to higher level document review and assisting other attorneys with depositions and briefing.  If Mr. Bogdanov's firm had not engaged in various unauthorized activities which undermined and duplicated the efforts of other IPP Counsel, then his firm would have been entitled

1  to a multiplier for his work.  But, in my opinion, the benefits bestowed on the Class by Mr.

2  Bogdanov's work are diminished by the negative consequences of his firm's unauthorized activities.

3       28.  As previously stated herein, I worked closely with Tracy Kirkham on the protocol for

4  producing "electronically stored information" or "ESI" from April 2010 through September 2010.

5  My emails and time records show that Ms. Kirkham joined the case on April 8, 2010 and worked

6  exclusively on the ESI Protocol for several months as part of a team made up of me, Eric Mandel of

7  Zelle Hofmann and certain DPP counsel.  I have no record of any work done by Ms. Kirkham after

8  September 9, 2010.

9       29.  Ms. Kirkham's negotiation of the ESI Protocol related solely to the "form and

10  format" in which the parties would produce electronically stored information.  (*See* ECF No. 828

11  (Stipulation and Order Regarding the Production of Electronically Stored Information ("ESI

12  Protocol") (Section I.A. of the ESI Protocol defines electronically stored information and Section

13  I.B. describes the "form and format" in which ESI should be produced).)  A quick review of the ESI

14  Protocol makes clear that it did not relate to "setting up procedures for the obtaining, storing and

15  review of" ESI obtained in discovery, or an "evaluation of the Relativity software that was

16  ultimately chosen."  (ECF No. 4878 at 11.)  Ms. Kirkham was not involved in these tasks.

17       30.  We did not choose Relativity for the storage and review of documents produced in

18  this case until December 2010—several months after Ms. Kirkham stopped working on the case.

19  Attached hereto as Exhibit 8 is a true and correct copy of an email string dated December 7, 2010

20  which reflects the initiation of the Relativity database hosted by Milberg LLP.

21       31.  Milberg hosted the Relativity database that we used to store and review documents in

22  this case.  I worked with attorneys and technical experts from Milberg, Zelle Hofmann and Straus &

23  Boies to set up the document review database, design the coding panel and the work flow, draft the

24  Coding Manual, and assign attorneys to the document review teams.  This initial work took place

25  from June-July 2011.  Neither Ms. Kirkham nor Mr. Bogdanov were involved in any of this work.

26

27

28

DECLARATION OF LAUREN C. CAPURRO ISO OPPOSITION TO MOTION TO STRIKE
Master File No. CV-07-5944-JST

1    Attached hereto as Exhibits 9-11[5] are true and correct copies of emails regarding the set-up of the

2    document review database, on which neither Ms. Kirkham nor Mr. Bogdanov are copied.

3         32.    In their Reply, C&K claims responsibility for the "detailed and voluminous database

4    of facts reflecting conspiratorial events" developed in this case on the grounds that the *CRT* database

5    and document review was a replication of the *DRAM* model designed by Ms. Kirkham.  (ECF No.

6    4878 at 10-11.)  But the *CRT* document review was not a mere replication of what was done in

7    *DRAM*.  The attorneys and technical experts who worked on setting up the document review in this

8    case drew on their experience and expertise from multiple different sources other than *DRAM* and

9    *LCD*.  The technical experts at Milberg, for example, had absolutely no involvement in *DRAM* or

10   *LCD*, but had worked on setting up many other electronic document reviews in other cases.

11   Likewise, the Zelle technical expert had no involvement in *DRAM*.[6]  And prior to setting up the *CRT*

12   document review, I had worked on several other electronic document reviews in large-scale antitrust

13   litigation, including *In re Graphics Processing Units Antitrust Litig., In re Chocolate Confectionary*

14   *Antitrust Litig., In re Aftermarket Filters Antitrust Litig.,* and *In re Aspartame Antitrust Litig.,* all of

15   which shaped my ideas regarding how the document review should be set up.

16        33.    Moreover, designing the work flow and coding protocol was an iterative process that

17   required us to constantly monitor and change things to adapt to the changing case requirements.  *See,*

18   *e.g.,* Exhibits 12-13, which show that we further refined the coding protocol in September-October

19   2011.  Again, Ms. Kirkham and Mr. Bogdanov were not involved in any of these efforts.

20        34.    As previously stated, after the *CRT* database was set up, I directed and oversaw the

21   entire document review effort through class certification, merits discovery and trial preparation, for

22   all nine Defendants.  I was assisted in these tasks primarily by Straus & Boies.  Other than Mr.

23   Bogdanov's role as the leader of the Philips document review team, neither Mr. Bogdanov or Ms.

24   Kirkham had any input into the management of the document review.

25

26

27   [5] I have redacted a portion of Exhibit 11 in the sealed version of the document because it relates to
     another case and is therefore irrelevant to the issues here.

28   [6] Zelle's Head of E-Discovery, Eric Mandel, worked on the set up of the document review in this
     case.  He was not employed by Zelle during the *DRAM* litigation.

1    I declare under penalty of perjury that the foregoing is true and correct. Executed this 30th

2  day of September 2016, in San Francisco, California.

3

4                                                    /s/ Lauren C. Capurro
                                                     Lauren C. Capurro
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF LAUREN C. CAPURRO ISO OPPOSITION TO MOTION TO STRIKE
Master File No. CV-07-5944-JST