JOSEF D. COOPER (53015)
TRACY R. KIRKHAM (69912)
JOHN D. BOGDANOV (215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA  94103
Telephone:  (415) 788-3030
Facsimile:  (415) 882-7040
jdc@coopkirk.com
trk@coopkirk.com
jdb@coopkirk.com

*Counsel for Class Representative Steven Ganz
And Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | **Master File No. 3:07-cv-5944 JST**<br>**MDL No. 1917** |
| This Document Relates to:<br><br>All Indirect-Purchaser Actions | **THIRD DECLARATION OF JOHN D. BOGDANOV IN SUPPORT OF COOPER & KIRKHAM, P.C.'S OBJECTION TO LEAD COUNSEL'S REVISED PROPOSED ALLOCATION OF AGGREGATE FEE AWARD TO INDIRECT PURCHASER PLAINTIFFS' COUNSEL**<br><br>Judge:  Honorable Jon S. Tigar<br><br>Before:  Special Master Martin Quinn |

I, John D. Bogdanov, declare as follows:

1. I am a member in good standing of the State Bar of California. I am a partner in Cooper & Kirkham, P.C. I have personal knowledge of the facts stated in this Declaration and, if called as a witness, I could and would testify competently to them. I make this Third Declaration in support of the Objection of Cooper & Kirkham, P.C. ("C&K") to Lead Counsel's Revised Proposed Allocation of Aggregate Fee Award to Indirect Purchaser Plaintiffs' Counsel.

2. I have reviewed both my timesheets and Ms. Capurro's timesheets in an attempt to refresh my recollection regarding the alleged phone conversation noted in paragraph 12 of the Capurro Declaration. Dkt. 4911-2, ¶12. Ms. Capurro is mistaken. There is no record of this alleged conversation. Nor do I recall any phone conversation, in-person conversation, or email exchange on or about June 19, 2012, or ever, with Ms. Capurro as detailed in paragraph 12 of the Capurro Declaration. I never compared deposition preparation with the taking of a deposition. Ms. Capurro did not ask me to take the Philips 30(b)(6) deposition, nor did I decline to take it.

3. I have responded via email many times over the course of my career that something was "great" to characterize a wide range of circumstances. *See, e.g.,* Exhibit 7 at 1, *supra.* The reasons I wrote "great" in my email responding to Ms. Zahid's selection to take the Philips 30(b)(6) deposition had nothing to do with the characterizations in Ms. Capurro's declaration. First, I had a high regard for Ms. Zahid, having observed her work in other cases, including as a member of Co-Lead Counsel's firm in *LCD*. I also understood that Zelle was heavily involved in the overall class certification efforts in *CRT* and already had a relationship with the same economic experts as IPPs had retained in *LCD*. Second, I had a preexisting business relationship specifically with Ms. Zahid. In addition to work on other cases, I had just spent the weeks and months prior to mid-2012 working directly with Ms. Zahid on a daily basis at the Zelle offices on trial preparation activities leading up to the time *LCD* settled. Finally, there were personal connections. I interned for her uncle's law office while attending UC Hastings College of Law. For the seven years prior to mid-2012, my family lived on the same street as Ms. Zahid's family in Berkeley and our paths would occasionally cross in the neighborhood and on BART. We would

THIRD DECLARATION OF JOHN D. BOGDANOV         - 1 -         Master File No. 3:07-cv-5944 JST MDL 1917

also periodically discuss issues of daily life, such as various remodeling projects, the latest activities in which Ms. Zahid's children were engaged, and what it was like to experience parrots as pets.

4. Ms. Zahid also appeared at the LGE 30(b)(6) deposition prior to the Philips 30(b)(6) deposition. *See* Dkt. No. 4911-2, ¶13. A true and correct copy of an excerpt of Zelle's time records is attached hereto as Exhibit 1. I had no advance knowledge or input into the selection of Ms. Zahid to take the either the Philips 30(b)(6) deposition or the LGE 30(b)(6) deposition.

5. I am not surprised that a member of the Zelle firm took the LGE and Philips 30(b)(6) depositions. An IPP counsel in this action has claimed that "Zelle was essentially a 'shadow' co-lead counsel throughout this litigation." *See* Dkt. 4086, ¶8.

6. Mario Alioto states that he spoke with me to "confirm" that I "did not want to take the depositions." Dkt. No. 4911-1, ¶5. That is false. I never had a single phone conversation, in-person conversation, or email with Mr. Alioto regarding the taking of depositions, nor did I decline a request to take any. I have reviewed all of my time records. It is my firm's policy to note each in person conference and telephone call in attorney time records with sufficient detail to identify the participant(s), and to understand the context of the call or conversation, which I did consistently. I have no time entry for a call from Mr. Alioto at any time, on any subject.

7. Moreover, a conversation with a lead counsel in this, or any other class action, would be a highly relevant event that would be duly noted in my time sheets, if not in my memory. This is doubly true in *CRT*, where my personal contact with Lead Counsel was extremely rare. To illustrate, there are only two entries in my timesheets that describe individual communications with Mr. Alioto during the entire duration of the case. Both are incoming voice mails from Mr. Alioto in 2010. On February 10, 2010, when C&K was brought into the case, my time entry reads, "VM from Mario Alioto re case status." On October 19, 2010, my time entry reads, "VM from Mario A re C&K substitution of counsel." True and correct copies of excerpts of my time

THIRD DECLARATION OF JOHN D. BOGDANOV - 2 - Master File No. 3:07-cv-5944 JST MDL 1917

1  records, which include entries for February 10, 2010 and October 19, 2010, are attached hereto as
2  Exhibit 2.
3      8.    I have reviewed Mr. Alioto's time records for the months leading up to April 9,
4  2013, which was the date I received notification that Mr. Alioto had selected Diane Pritchard to
5  take the LGE and Philips merits depositions.  *See* Dkt. 4878-1, ¶12 and Exhibit C.  I had no
6  advance knowledge or input into the selection of Diane Pritchard to take the Philips and LGE
7  merits depositions.  My name does not appear in those time records.  In contrast, many other
8  names appear in Mr. Alioto's time records, plus references to coordinating the LG and Philips
9  depositions.  For example, Ms. Pritchard's name first appears on the timesheets on January 29,
10 2013 and February 1, 2013.  A January 29, 2013 time entry reads "t/c Sylvie re addl assignments +
11 Diane Pritchard[.]"  A February 1, 2013 time entry reads "t/c Sylvie re Diane Pritchard
12 assignment[.]"  A March 4, 2013 a time entry reads "coord w/ DAPs on LG and Philips deps[.]"  A
13 March 11, 2013 time entry reads "coord LG + Philips deps[.]"  A March 19, 2013 time entry reads
14 "LG deps/Umpierre[.]"  An April 1, 2013 time entry reads "t/c's, emails re LG and Philips deps +
15 set up team review of all IP doc reviewers and coord w/DAP new doc reviewers[.]"  An April 2,
16 2013 time entry reads "conf LR re coverage of LG, Philips deps re-assign doc reviewers in light of
17 new DAP doc review[.]"  An April 5, 2013 time entry reads "t/c Diane Pritchard re LG + Philips
18 deps[.]"  The same entry appears on April 6, 2013.  True and correct copies of Mr. Alioto's time
19 records from January 1, 2013 through April 10, 2013 are attached hereto as Exhibit 3.
20     9.    I customarily participated in meet-and-confers and drafted the initial letters
21 pertaining to the same throughout the Philips meet and confer process.  Ms. Capurro never told me
22 to stop doing so, nor did I receive any reprimands, a request to stop working on the case, nor were
23 any of the hours I spent drafting meet and confer letters cut from my time by Lead Counsel.  I was
24 never under the impression, until now, that draft meet-and-confer letters were anything other than
25 a collaborative process upon which to give and receive input resulting in the best possible final
26 product.  An example of this process is illustrated as follows.  Attached as Exhibit 4 is a true and
27 correct meet and confer letter which I drafted with minor redlines by Ms. Capurro.  On this
28

THIRD DECLARATION OF JOHN D. BOGDANOV     - 3 -     Master File No. 3:07-cv-5944 JST MDL 1917

occasion, Ms. Capurro requested that I specify certain data in a subsequent draft letter. I respectfully disagreed with her approach in how to set forth the information and suggested an alternative, which she accepted. A true and correct copy of Ms. Capurro's minor redlines to the subsequent draft accepting my approach is attached hereto as Exhibit 5.

10. I understood that Ms. Capurro was a representative of Lead Counsel's office and therefore had the authority to determine which projects she wished to be involved in, and to whom she spoke on behalf of IPPs, without the prior input of others. I did not set Ms. Capurro's schedule regarding this case, nor did I direct her on which projects to work. There were occasions when I was not informed by Ms. Capurro that she had decided to undertake certain tasks regarding Philips, or to hold discussions with Philips or other plaintiffs' counsel prior to those events taking place, such as certain of the negotiations with Philips regarding custodians. For example, in 2010 Philips made available a data room in Eindhoven, Netherlands for reviewing documents related to the LPD joint venture between Philips and LG. I was told by Ms. Capurro to be prepared to go to the review and I procured a passport on an expedited basis to do so. *See* Exhibit 2, attached hereto. Without further notice, Ms. Capurro planned the trip and then stated that she and Joseph Patane from Lead Counsel's office would attend instead. Attached as Exhibit 6 is a true and correct copy of an email string received by me on or about September 8, 2010 in the ordinary course of business.

11. Exhibit 3 to the Capurro Declaration represents another case in point regarding the independent authority Ms. Capurro exercised as an attorney from Lead Counsel's office. This email string illustrates communications with Philips' counsel. However, the email string neglects to include the originating emails indicating that the final list of proposed finished product custodians was entirely due to my efforts and that I participated on the meet-and-confer call concerning this issue. There were several follow up emails and phone calls related to this topic in which I was fully involved. Attached as Exhibits 7 (dated on or about February 22, 2012) and 8 (dated on or about March 12, 2012) are true and correct copies of email strings sent and received by me in the ordinary course of business.

12. The list of 152 "conspiracy" custodians encompassing both Philips and LPD, from whose files IPPs sought to retrieve documents and information from Philips, is the topic of discussion in Exhibit 4 to the Capurro declaration. This list was researched and drafted by me and I participated in discussions with the Direct Purchaser Plaintiffs and Philips with regard to the same. Attached as Exhibit 9 is a true and correct email string dated on or about October 26, 2010, sent and received by me in the ordinary course of business. Attached as Exhibit 10 is a true and correct email sent by me on October 27, 2010 in the ordinary course of business. Attached as Exhibit 11 is a true and correct copy of the custodian list that I drafted, attached to the email in Exhibit 10.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of October, 2016, in San Francisco, California.

/s/ John D. Bogdanov
John D. Bogdanov