UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917<br><br>Case No. C-07-5944 JST<br><br>**ORDER RE MOTIONS *IN LIMINE* RELEVANT ONLY TO THE SHARP TRIAL** |
| This Order Relates To:<br><br>Sharp Electronics Corp., et al. v. Hitachi Ltd., et al., Case No. 13-cv-1173<br><br>Sharp Electronics Corp., et al. v. Koninklijke Philips Elecs., N.V., et al., Case No. 13-cv-2776 | |

The parties organized the pending motions *in limine* into nine categories. See ECF No. 4603, Ex. A. This order addresses the first category, entitled "Motions Relevant Only to Sharp Trial," which contains five motions: three filed jointly by Defendants, one filed by Toshiba Corporation, Toshiba America, Inc., Toshiba American Information Systems, Inc., and Toshiba America Electronic Components, Inc. (collectively, "Toshiba"), and one filed by Direct Action Plaintiffs ("DAPs") Sharp Electronics Corporation ("SEC") and Sharp Electronics Manufacturing Company of America, Inc. ("SEMA") (collectively, "the Sharp DAPs"). Id. at A-1, A-2.

Two of Defendants' joint motions ask the Court to exclude evidence related to a violation of the antitrust laws under a rule of reason analysis, including the testimony of Sharp's expert Dr. Jerry A. Hausman.[1] ECF Nos. 3591 ("Expert Mot."), 3593 ("Evidence Mot."), ECF No. 3701-3 ("RR Opp'n"), 3755 ("Expert Reply"), 3750 ("Evidence Reply"). Their third motion asks the Court to exclude evidence of any alleged color display tube ("CDT") price-fixing conspiracy.[2] ECF No. 3574 ("CDT Mot."), 3690-3 ("CDT Opp'n"), 3771-4 ("CDT Reply"). Toshiba's motion

---
[1] Joint Defense Motions *In Limine* Nos. 9 and 15, respectively
[2] Joint Defense Motion *In Limine* No. 10

asks the Court to preclude Sharp from introducing evidence and argument related to Sharp's purchase of CRTs from Toshiba. ECF No. 3577 ("Toshiba Mot."), ECF Nos. 3695-3 ("Toshiba Opp'n"), 3752-3 ("Toshiba Reply"). The Sharp DAPs' motion asks the Court to exclude evidence of or reference to non-party Sharp Corporation's ("Sharp Corp.") guilty plea related to a conspiracy to fix the price of TFT-LCDs. The Sharp DAPs also ask the Court to exclude evidence of or reference to the role of any Sharp companies in the events underlying the In re TFT-LCD (Flat Panel) Antitrust Litigation multidistrict litigation matter, No. 07-MD-1827 (N.D. Cal.) (Illston, J.) ("LCD"), including reference to the expert report of Dr. Jerry Hausman in LCD and Sharp's retention of Dr. Hausman in LCD. ECF No. 3599 ("Sharp Mot."); ("Sharp Opp'n"), 3778-3 ("Sharp Reply").

The motions are fully briefed and suitable for disposition without oral argument per Local Rule 7-1(b). The Court finds as follows:

| Motion | Ruling |
| --- | --- |
| Joint Defendants' Motions *In Limine* Nos. 9 and 15 To Exclude Evidence Related To A Rule Of Reason Analysis | DENIED |
| Joint Defendants' Motion *In Limine* No. 10 To Exclude Evidence Of Any Alleged CDT Conspiracy | DENIED |
| Toshiba Defendants' Motion *In Limine* To Exclude Evidence Of Toshiba's Sales To Sharp Corporation | DENIED |
| Sharp's Motion *In Limine* To Exclude Evidence Of Or Reference To Sharp Corp.'s Guilty Plea | GRANTED IN PART, DENIED IN PART |

I.  **DEFENDANTS' JOINT MOTIONS *IN LIMINE* NOS. 9 AND 15 TO EXCLUDE EVIDENCE RELATED TO A RULE OF REASON ANALYSIS**

Agreements to exchange information can serve as circumstantial evidence of a per se unlawful price fixing agreement. See In re Petroleum Prods. Antitrust Litig., 906 F 2d 432 (9th Cir. 1990). Separately, agreements to exchange information that are likely to affect prices may, under certain circumstances, be illegal in and of themselves under the rule of reason. See United States v. Container Corp. of America, 393 U.S. 333 (1969). Sharp alleged in its complaint that

1   Defendants agreed to fix prices and exchange competitive information. See ECF No. 119

2   ("SAC") ¶ 1 (emphasis added). Defendants claim, however, that Sharp's complaint asserts *only* a

3   per se theory of liability such that evidence regarding an agreement to exchange information is

4   relevant only to the extent it is probative of an underlying agreement to fix prices.

5         The instant motions ask the Court to bar Sharp from introducing evidence related to a

6   violation of the antitrust laws under a rule of reason analysis. Defendants base their argument on

7   the principle that a plaintiff should not be allowed to pursue a claim at trial that was not pleaded in

8   its complaint. See Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 995 (9th Cir. 2009).

9   Defendants also argue that Rule 403 of the Federal Rules of Evidence requires exclusion of rule of

10  reason evidence because the probative value is substantially outweighed by the risk of unfair

11  prejudice. Their motion turns, in part, on whether a violation of Section 1 based on the rule of

12  reason is a distinct claim from a violation of Section 1 based on the per se rule or whether they are

13  merely different theories of liability for the same underlying claim. The Court finds they are not

14  distinct claims. Defendants' motion also turns on whether Sharp's complaint limits Sharp to a per

15  se theory of liability at this stage of the litigation. Because the complaint does not disclaim a rule

16  of reason theory and because Sharp provided Defendants with sufficient notice of its rule of reason

17  theory during discovery, the Court finds that Sharp may pursue a rule of reason theory at trial.

18        Accordingly, Defendants' joint motions *in limine*, numbers 9 and 15, are DENIED.

19  **A.   Facts**

20        The first paragraph of Sharp's initial complaint states that "Sharp brings this action to

21  recover damages on account of the antitrust injuries it incurred as a result of a long-running

22  conspiracy by suppliers of cathode ray tubes ("CRTs") to coordinate and fix the price of CRTs

23  *and exchange detailed competitive information*." Case No. 13-cv-1173, ECF No. 1 ("Sharp

24  Compl.") ¶ 1 (emphasis added). Sharp's "First Claim for Relief" is entitled "Violation of Section

25  1 of the Sherman Act." Id. at 70. Although the First Claim for Relief does not specify whether

26  the alleged violation of Section 1 was illegal per se or under the rule of reason, it states "[i]n

27  particular, [that] Defendants have combined and conspired to raise, fix, maintain or stabilize prices

28  of CRTs sold in the United States." Id. ¶ 236. It goes on to allege that "[f]or purposes of

United States District Court
Northern District of California

formulating and effectuating their . . . conspiracy, Defendants . . . conspired to . . . exchange[] competitive sensitive information in order to facilitate their conspiracy." Id. ¶ 239(f). The rest of Sharp's complaint describes the alleged conspiracy as primarily one to fix prices, and information exchanges are mentioned only in the context of describing how the price-fixing conspiracy was carried out. See, e.g., id. ¶ 140 ("The CRT conspiracy was effectuated through a combination of group and bilateral meetings . . . Competitively sensitive information on pricing, production capacity, product mix and customer information was exchanged."). The pertinent parts of Sharp's first and second amended complaints (hereafter, "FAC" and "SAC") are identical to the initial complaint.

The timing of events leading up to the filing of the instant motions is relevant. In June 2013, Defendants Hitachi and Samsung SDI served an interrogatory on Sharp seeking the factual basis for its allegation that Defendants conspired to fix or stabilize the price of CRTs. In February 2014, Sharp served supplemental interrogatory responses on all Defendants, stating that Defendants

> conspired . . . to fix, raise, maintain and stabilize the price at which CRTs were sold in the United States, constituting a per se violation of antitrust law, and/or to exchange competitively sensitive information which caused prices for CRTs sold in the United States to be at anticompetitive levels, *constituting a violation of antitrust law under a rule of reason analysis.*

ECF No. 3701-14 ("Suppl. Rog. Resp.") at 15 (emphasis added). Sharp also stated that "the relevant product market in this case is CPTs," and "the relevant geographic market is at least North America." Id. at 15-16. At that time, over six months remained in the discovery period, and Defendants had not taken any depositions of Sharp witnesses. Sixty-two depositions of Defendants' current or former employees, however, had already taken place. Thereafter, Defendants propounded forty sets of discovery requests and took six depositions of witnesses who testified for or on behalf of Sharp.

Expert discovery began in April 2014, at which point Sharp served Defendants with the expert report of Dr. Jerry Hausman. Dr. Hausman's report discussed evidence of information exchanges and explained the effect of those information exchanges. ECF No. 3701-10 ("Hausman Report"). It set out the relevant product and geographic markets and concluded that Defendants'

4

information exchanges had the anticompetitive effect of increasing prices for CPTs. In June – two two months after serving Defendants with Dr. Hausman's report – Sharp filed its SAC, the operative complaint in this action.

In July 2014, Defendants deposed Dr. Hausman. During his depositions, the phrase "information exchange" was used 163 times. Further, Defendants asked Dr. Hausman if he thought information exchanges on price were per se anticompetitive, and he said no. ECF No. 3701-12 ("Hausman 7/23/2014 Depo.") 257:13-259:12. Defendants also asked him questions relating to the potential procompetitive benefits of information exchanges. Id. at 196:9-11, 242:4-13, 264:19-24. Finally, Defendants asked him questions regarding the relevant product and geographic markets. Id. at 43:20-44:6, 227:14-16, 229:10-13.

In August 2014, Defendants submitted the report of their reply expert, Professor Dennis W. Carlton. ECF No. 3701-14 ("Carlton Report"). Dr. Carlton's report analyzed whether Defendants' exchange of information resulted in higher prices. See id. ¶ 67. Dr. Carlton also noted that information exchanges are not necessarily anticompetitive. Id. ¶ 68; see also ECF No. 3701-16 ("Carlton 9/16/2016 Depo.") 407:2-21 (testifying that information exchanges should not be treated as per se illegal as a matter of economic policy).

The instant motions *in limine* were filed on February 13, 2015.

**B.     Legal Standard**

Federal Rule of Civil Procedure 8(a) states that a complaint only requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Further, the Ninth Circuit has held that "[a] party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." Edwards v. Cty. of San Diego, 124 F. App'x 547, 548 (9th Cir. 2005) (quoting Sagana v. Tenorio, 384 F.3d 731, 736-37 (9th Cir 2004)). Finally, the Ninth Circuit has repeatedly emphasized that the "simplified notice pleading standard relies *on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims*." Id. (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)) (emphasis added).

**C.     Discussion**

To establish a violation of Section 1 of the Sherman Act, a plaintiff must prove (1) the existence of a contract, combination or conspiracy, (2) that the contract, combination or conspiracy unreasonably restrains trade (hereafter, the "Unreasonable Restraint Element"), (3) that the restraint affects interstate or foreign commerce, and (4) that the restraint caused plaintiff to suffer an injury to its business or property. See 15 U.S.C. §§ 1, 7; ABA Section of Antitrust Law, Model Jury Instruction in Civil Antitrust Cases, Instruction 2 (2016). The Unreasonable Restraint Element of a Section 1 claim typically requires an analysis of the restraint's actual effect on competition in a relevant market; this is known as the rule of reason. See, e.g., Nat'l Soc'y of Prof'l Eng'rs v. United States, 435 U.S. 679, 692 (1978) (evaluating the "competitive effect" of the agreement under the rule of reason). Some categories of restraints, however, such as horizontal price fixing, are conclusively presumed to be unreasonable without analysis of the market in which they occurred, study of their actual effect on competition, or evaluation of the purpose for their use. Because such agreements can rarely (if ever) be justified, courts have determined that such agreements should be considered unreasonable per se (hereafter, the "per se rule"). See Broad. Music, Inc. v. SBS, 441 U.S. 1, 19-20 (1979).

Defendants argue that allegations falling within the purview of the per se rule constitute a claim distinct from those falling within the rule of reason. They point out that a plaintiff who relies on the rule of reason is required to plead facts that establish a relevant product market, a relevant geographic market, and anticompetitive harm. Because a plaintiff who relies on the per se rule does not need to plead such facts, Defendants assert that they are distinct claims.[3] The Court disagrees.

The per se rule is not a distinct claim; it is an analytical shortcut that removes the need for

---

[3] The cases cited by Defendants in support of this assertion are inapposite. In Pierson v. Orlando Reg'l Healthcare Sys., Inc., 619 F. Supp. 2d 1260, 1274 (M.D. Fla. 2009), the court found the pleading insufficient where plaintiff attempted to allege two separate violations of the Sherman act in one count. In that case, however, the two separate violations included a violation of Section 1 and a violation of Section 2 – distinct claims indeed. Cason-Merenda v. Detroit Med. Center, 862 F. Supp. 2d 603, 605, 641 (E.D. Mich. 2012) is an example where a plaintiff decided to plead its per se and rule of reason theories separately. That case, however, does not stand for the proposition that they *must* be pleaded separately.

an in-depth analysis to determine whether a plaintiff has satisfied the Unreasonable Restraint Element of a Section 1 claim.[4] That it is not a distinct claim is demonstrated by the fluidity of its application in hard cases. As the Third Circuit explained,

> the respective analyses conducted under the rule of reason, per se, and quick look standards are not categorically different. In every case, "the essential inquiry" is "whether or not the challenged restraint enhances competition." Cal. Dental, 526 U.S. at 780, 119 S.Ct. 1604 (internal quotation marks omitted). Under a traditional rule-of-reason analysis, a court requires "actual market analysis," id. at 779–80, 119 S.Ct. 1604, and carefully balances all of the factors bearing on that ultimate question. In applying per se or quick look analysis, courts make judgments based on judicial experience with certain types of restraints and market contexts, without demanding such extensive inquiry into the market in which the specific restraint at issue operates. But "there is often no bright line separating" the three standards. Id. at 779, 119 S.Ct. 1604 (quoting NCAA, 468 U.S. at 104 n. 26, 104 S.Ct. 2948). "What is required . . . is an enquiry meet for the case, looking to the circumstances, details, and logic of a restraint. The object is to see whether the experience of the market has been so clear, or necessarily will be, that a confident conclusion about the principal tendency of a restriction will follow from a quick (or at least quicker) look, in place of a more sedulous one." Id. at 781, 119 S.Ct. 1604.

In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 318 n.14 (3d Cir. 2010). Thus, for a plaintiff, pleading facts that fall within the per se rule is but one way to satisfy the Unreasonable Restraint Element of a Section 1 claim. Regardless of whether the per se rule is employed as a theory of liability, however, the elements of a Section 1 claim remain the same.[5]

Here, Sharp alleged a violation of Section 1 based on an agreement to fix prices and an agreement to exchange competitive information. As mentioned, information exchanges among competitors can be probative of a per se illegal conspiracy to fix prices or potentially illegal in and of themselves under the rule of reason. Even though Sharp did not limit itself to either approach – indeed, the phrases "per se" and "rule of reason" are not found anywhere in the complaint – Defendants appear to have assumed that Sharp would only pursue a per se theory. Even if that

---

[4] The doctrine of *res ipsa loquitur* in negligence is a helpful analogue. That a plaintiff might rely on *res ipsa* to prove negligence does not transform it into something other than a negligence claim.

[5] Defendants assert the rule of reason and per se rule constitute distinct claims because a plaintiff must plead additional "elements" in order make out a rule of reason "claim" – specifically, facts that establish a relevant product market, a relevant geographic market, and anticompetitive harm. While it is true that a plaintiff must plead such facts in order to make out a Section 1 claim based on a rule of reason theory, these are not additional elements. The same "elements" exist when plaintiffs rely on a per se theory; they are just presumed satisfied as a matter of law.

7

1    assumption might have been reasonable initially, it became unreasonable in February 2014 when
2    Defendants were given clear notice in Sharp's interrogatory responses of Sharp's intention to
3    pursue a rule of reason theory. See Suppl. Rog. Resp. at 15 (stating that Defendants "exchanged
4    competitively sensitive information which caused prices for CRTs sold in the United States to be
5    at anticompetitive levels, constituting a violation of the antitrust laws *under a rule of reason*
6    *analysis*") (emphasis added); see also Hausman Report (detailing the economic basis for Sharp's
7    rule of reason theory as of April 2014).

8    Defendants argue that even if they were given notice through Sharp's discovery responses,
9    that notice was negated when Sharp filed its SAC in June 2014. The SAC, they argue,
10   overwhelmingly focuses on allegations relating to a price fixing conspiracy, which is analyzed
11   under the per se rule. This argument is not convincing.

12   True, most of the allegations in the SAC relate to an alleged conspiracy to fix prices, just
13   as they did in Sharp's previously filed complaints, but nowhere does Sharp disclaim a rule of
14   reason theory (or expressly assert a per se theory, for that matter). Nor are Sharp's price fixing
15   allegations inconsistent with its allegations that Defendants agreed to exchange information.
16   Indeed, the SAC states expressly that Sharp was alleging a violation of Section 1 based on an
17   agreement to both "coordinate and fix the price of CRTs *and exchange detailed competitive*
18   *information.*" SAC ¶ 1 (emphasis added). Moreover, even if the Court were to assume, *arguendo*,
19   that the SAC did not sufficiently notify Defendants of its rule of reason theory, it was
20   unreasonable for Defendants – having several months before received ample notice through
21   discovery of Sharp's intention to pursue a rule of reason theory – to assume that the SAC's
22   ambiguity on this point meant that Sharp no longer intended to pursue it. Having been provided
23   notice, if Defendants believed Sharp's rule of reason theory was insufficiently pleaded,
24   Defendants could have filed a motion to dismiss. The Court declines to speculate on whether
25   Defendants would have succeeded if they had filed such a motion,[6] but what is clear is that filing a

---

[6] On the one hand, a plaintiff is not required to plead its legal theories so long as it satisfies the elements of a Section 1 claim. See Edwards, 124 F. App'x at 548. After all, discovery is the appropriate means to determine a party's theories, not motions to dismiss (let alone motions *in limine* on the eve of trial). On the other hand, *if* Sharp had failed to sufficiently plead a relevant

8

motion *in limine* at this late stage is improper, even assuming certain pleading inadequacies in the SAC.[7]

Defendants cite Texaco Inc. v. Dagher, 547 U.S. 1 (2006) for the proposition that "[w]hen a plaintiff fails on a per se claim, courts do not revert to a rule of reason analysis unless specifically pleaded." Expert Mot. at 10. Defendants mischaracterize the issue. Sharp is not pleading in the alternative; it is aalleging both that Defendants conspired to fix prices *and* that they conspired to share information – allegations that could potentially establish liability under both the per se rule *and* the rule of reason.[8] Thus, it is not accurate to claim that the Court would be "reverting" to a rule of reason analysis if Sharp failed on its per se theory. Regardless, Dagher does not support Defendants' argument. In Dagher, the plaintiff specifically pleaded a per se theory of liability and expressly disclaimed a rule of reason theory. See id. at 7 n.2; Dagher v. Saudi Ref., Inc., 369 F.3d 1108, 1113 (9th Cir. 2004), rev'd sub nom. Texaco Inc. v. Dagher, 547 U.S. 1 (2006) ("The plaintiffs disclaimed any reliance on the traditional "rule of reason" test, instead resting their entire claim on either the per se rule or a "quick look" theory of liability."). Here, Sharp did not specifically plead or expressly disclaim either theory of liability.

Defendants also cite Howard Hess Dental Labs, Inc. v. Dentsply Int'l, Inc., 602 F.3d 237,

---

product market, a relevant geographic market, or anticompetitive harm (an issue on which the Court does not reach), it is possible the Court would have dismissed the SAC to the extent it relied on a rule of reason theory.

[7] Relatedly, Defendants claim that had they known during the motion to dismiss phase that Sharp was going to pursue a rule of reason theory, they would have filed a motion to dismiss the SAC for failure to plead sufficient facts to satisfy the Unreasonable Restraint Element under a rule of reason analysis. But Defendants did know, or at least they should have known, and their failure to take action at the motion to dismiss phase is one reason the Court must deny their motions *in limine*.

[8] Certain agreements to restrain trade can be analyzed under the per se rule, the rule of reason, or something in between (often called "quick look") depending on whether any plausible procompetitive justifications exist. See, e.g., Broadcast Music, Inc. v. CBS, 441 U.S. 1 (1970) (analyzing an agreement that literally fixed prices under the rule of reason because of its procompetitive benefits). Plaintiffs in such cases often plead in the alternative by claiming that defendants' conduct ought to be considered illegal per se, but even if it is not, that it is illegal under the rule of reason. Here, Sharp is not arguing that Defendants are liable under the per se rule, or in the alternative, under the rule of reason. They are arguing that Defendants are liable under the per se rule as a result of their agreement to fix prices *and* that they are liable under the rule of reason as a result of their agreement to exchange information. Separately, they are alleging that evidence of information exchanges is probative of a per se illegal conspiracy to fix prices.

9

1   257 (3d Cir. 2010).  See Evidence Mot. at 4.  In Dentsply, plaintiffs alleged a hybrid of both
2   vertical and horizontal conspiracies among Dentsply and its dealers – a so-called "hub-and-spoke"
3   conspiracy, wherein Dentsply served as the hub and its dealers as the spokes.  See id. at 255.  The
4   complaint stated "in a conclusory manner that *all* of the defendants . . . conspired and knew about
5   the [conspiracy]," but did not provide "any factual allegations to plausibly suggest . . . any degree
6   of coordination among the Dealers."  Id. at 255-56 (emphasis added).  In response to a motion to
7   dismiss on this issue, plaintiffs "tried to hedge their bets" by arguing "that even if they [had] not
8   adequately alleged an overarching conspiracy between and among Dentsply and all of its Dealers,
9   they at least [had] adequately alleged several bilateral, vertical conspiracies between Dentsply and
10  the Dealers" – a so-called "rimless" hub-and-spoke conspiracy.  Id. at 256.  The Third Circuit
11  held, however, that even if plaintiffs' rimless conspiracy theory "is legally viable or even relevant
12  here, the Plaintiffs cannot pursue it *under the circumstances of this case* because the amended
13  complaint cannot be fairly understood to allege the existence of several unconnected, bilateral,
14  vertical conspiracies."  Id. (emphasis added).  "In other words," wrote the court, "the Plaintiffs
15  simply did not draft their amended complaint to encompass their alternative legal theory."  Id.; see
16  also id. (holding that the plaintiffs were "bound by the four corners of their amended complaint
17  which clearly seeks to allege one conspiracy to which Dentsply and all of the Dealers, as a
18  collective, were parties").

19          Dentsply is distinguishable.  First, the complaints differ in important respects.  Whereas
20  there was "no indication of the Plaintiffs' intention to allege that every single agreement between
21  Dentsply and each Dealer had anticompetitive effects," id. at 256, Sharp repeatedly alleged
22  anticompetitive effects, even though it did not need to under a per se theory, see, e.g., SAC ¶¶ 2,
23  145, 222, 251 (alleging an increase in price).  Second, the context is different.  Whereas the
24  alternative theory put forth by the plaintiffs in Dentsply was an attempt to "recast[] their
25  allegations in an effort to circumvent a motion to dismiss," Dentsply, 602 F.3d at 257, here, the
26  Defendants are attempting to prevent Sharp from pursuing a particular legal theory about which
27  Defendants were given ample notice.  Third, the different procedural postures are significant.
28  Dentsply involved a motion to dismiss.  Defendants, however, raise this issue in a motion *in limine*

10

1    on the eve of trial.

2        Defendants assert they could not have brought a motion to dismiss because Sharp's SAC
3    did not provide any indication that Sharp was going to pursue a rule of reason theory given its
4    overwhelming focus on allegations related to a conspiracy to fix prices (which is analyzed under
5    the per se rule). Although there is at least some indication in the complaint that Sharp might
6    pursue a rule of reason theory, see, e.g., SAC ¶ 1, courts "have an obligation to read allegations
7    not in isolation but as a whole and in context." Dentsply, 602 F.3d at 256. At this stage in the
8    litigation on a motion *in limine*, however, the salient question is not whether the allegations, when
9    read as a whole, suggest that Sharp was going to pursue a rule of reason theory. Regardless of
10   what might be considered a "fair reading" of the SAC, Defendants were provided notice of
11   Sharp's rule of reason theory during discovery. Further, they could have filed a motion to dismiss
12   the SAC, which was filed after Defendants received notice of Sharp's rule of reason theory. And
13   although it is true that a plaintiff cannot pursue a claim at trial that was not pleaded in its
14   complaint, as already explained, the per se rule and the rule of reason are legal theories, not
15   distinct claims.

16       Defendants' joint motions *in limine*, numbers 9 and 15, are therefore DENIED.

17   **II.    DEFENDANTS' JOINT MOTION *IN LIMINE* NO. 10**

18       CRTs are produced as Color Picture Tubes ("CPTs"), often used in televisions, and Color
19   Display Tubes ("CDTs"), often used for computer monitors or small screen devices. Sharp alleges
20   a single conspiracy to fix the price of cathode ray tubes ("CRTs"). Because Sharp only purchased
21   CPTs and never purchased CDTs, Defendants argue evidence relating to CDTs is irrelevant to
22   Sharp's claims and would mislead the jury, confuse the issues, and foster undue delay.
23   Accordingly, the instant motion seeks to exclude Sharp from introducing at trial any evidence of
24   anticompetitive conduct relating to CDTs under Federal Rules of Evidence 401, 402, 403, and
25   404(b).

26       The Court does not agree that CDT-related evidence is irrelevant or unduly prejudicial. In
27   the words of the District of the District of Columbia,

28

11

> [D]efendants' arguments are based on the assumption that there *could not* have been a single conspiracy. They claim there were multiple conspiracies, if any existed at all. [D]efendants improperly re-characterize [Sharp's] allegations. [Sharp has] not alleged multiple conspiracies – they have alleged a single price fixing conspiracy as to [CRTs]. As the Supreme Court stated: "[T]he character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts but only by looking at it as a whole." *Continental Ore Co. v. Union Carbide & Carbon Co.,* 370 U.S. 690, 699, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962).

In re Vitamins Antitrust Litig., 209 F.R.D. 251, 265 (D.D.C. 2002).

Here, there is at least a genuine dispute of material fact as to whether there was a single conspiracy encompassing CRTs in general or whether there were two separate conspiracies, one for CDTs and one for CPTs. See ECF No. 4937. If the jury determines there was a single conspiracy to fix the prices of CRTs in general, the distinction Defendants' motion attempts to draw between CPTs and CDTs is meaningless because both CPTs and CDTs are CRTs. Evidence of misconduct regarding CDTs would therefore be just as relevant and no more likely to mislead, confuse, or cause undue delay as evidence of misconduct regarding CPTs because both are probative of misconduct regarding a conspiracy to fix the price of CRTs.

Defendants' motion *in limine*, number 10, is therefore DENIED.

### III. TOSHIBA DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF TOSHIBA'S SALES TO SHARP CORPORATION

Judge Conti, the undersigned's predecessor in this matter, dismissed Sharp's first amended complaint because a forum selection clause in the "Basic Transaction Agreement" or "BTA" entered into by the parties' Japan-based parent corporations stated that litigation related to purchases between Toshiba and Sharp had to be adjudicated in Japan. See ECF No. 2435 ("MTD Order") at 2. Judge Conti granted Sharp leave to file a second amended complaint, however, because the BTA, although barring Sharp's claims as to transactions between Sharp and Toshiba, did "not render Sharp's claims against Toshiba for joint and several liability [based on purchases Sharp made from Toshiba's alleged coconspirators] subject to dismissal under the forum-selection clause." SAC Order at 8. Toshiba now argues that all evidence relating to the Sharp-Toshiba customer relationship should be excluded even though some of that evidence may be relevant for other purposes. Because Toshiba's argument is overbroad, its motion is DENIED.

12

"Motions *in limine* must identify the evidence at issue and state with specificity why such evidence is inadmissible." Colton Crane Co. v. Terex Cranes Wilmington, Inc., No. CV 08-8525, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010); see also Server Tech., Inc. v. Am. Power Conversion Corp., No. 3:06-cv-698, 2014 WL 1308617, at *6 (D. Nev. Mar. 31, 2014) ("[T]he court finds APC's motion in limine #6 to be premature.  At this time the court doesn't know the context in which the evidence will be proffered . . . .").

Toshiba asserts that all evidence related to Sharp's purchases from Toshiba necessarily contradicts the law of the case, is irrelevant, and invites jury confusion.  See Toshiba Mot. at 1-3 (citing Fed. R. Evid. 402, 403).  Judge Conti's prior orders do not establish the law of the case on this issue.  The MTD and SAC Orders limit Toshiba's potential liability to purchases Sharp made from Toshiba's coconspirators, but they do not otherwise address admissibility.  The use of evidence relating to Sharp's purchases from Toshiba for other purposes, therefore, does not contradict the law of the case.

Further, such evidence is not necessarily irrelevant.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would without the evidence."  Fed. R. Evid. 401.  As Sharp points out, certain evidence referring to Sharp's purchases from Toshiba may be relevant to prove Toshiba's participation in the conspiracy, to calculate overcharge rates, or to prove other aspects of Sharp's case.  See Toshiba Opp'n at 3-5.

Nor will the use of evidence relating to Sharp's purchases from Toshiba necessarily confuse the issues.  The jury will be instructed not to consider Sharp's purchases from Toshiba in calculating damages.  Toshiba fails to explain, however, how any evidence relating to the Sharp-Toshiba customer relationship, even if it is relevant for other purposes, is likely to cause the jury to disregard such an instruction.

Accordingly, Toshiba's motion is DENIED.

### IV. SHARP'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATED TO THE ROLE OF SHARP IN THE TFT-LCD ANTITRUST LITIGATIONS

On November 12, 2008, non-party Sharp Corp. pled guilty to participating in a conspiracy to fix the price of TFT-LCDs ("LCD Conspiracy").  The non-prosecution protection afforded to

1    Sharp Corp. as part of its plea extended to SEC and SEMA.  Separately, Sharp Corp. and SEC
2    were defendants in the LCD multidistrict litigation.  In this case, the Sharp DAPs are plaintiffs
3    seeking to recover damages they claim were caused as a result of a separate conspiracy to fix the
4    price of cathode ray tubes ("CRTs").  The instant motion relates to whether Defendants can
5    introduce evidence or make reference to the role of any of the Sharp companies' (including non-
6    party Sharp Corp.'s) involvement in the LCD Conspiracy.
7        The Sharp DAPs argue that evidence of the actions of Sharp in LCD is irrelevant, unfairly
8    prejudicial, and likely to waste time and lead to confusion.  See Sharp Mot. at 5-10 (citing Fed. R.
9    Evid. 402, 403).  Defendants counter that "Sharp's participation in the LCD conspiracy is directly
10   relevant to an essential element of Sharp's claims – whether Defendants' alleged conduct or
11   Sharp's own conduct was the cause of at least some of the CRT damages Sharp now seeks to
12   recover."  Sharp Opp'n at 1-2.
13       "For evidence to be relevant it must be probative of the proposition it is offered to prove,
14   and . . . the proposition to be proved must be one that is of consequence to the determination of the
15   action."  United States v. Dean, 980 F.2d 1286, 1288 (9th Cir. 1992).  Antitrust violations by a
16   plaintiff, however, are generally irrelevant to whether a defendant is liable for its own violations.
17   See Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 214 (1951), overruled
18   on other grounds, Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 781-82 (1984).
19       Defendants point to the testimony of the Sharp DAPs' expert, Dr. Hausman, wherein he
20   explains the economic relationship between the LCD and CRT conspiracies and the impact the
21   LCD Conspiracy had on the anticompetitive effects of the CRT conspiracy.  See Sharp Opp'n at 5-
22   6.  The Sharp DAPs respond that Defendants' argument "at most" supports "the admission of
23   evidence that CRT prices were affected by the alleged LCD conspiracy – not that Sharp
24   companies were involved in the alleged conspiracy, which has no bearing on the economic effect
25   (or lack thereof), and serves only to prejudice the Sharp Plaintiffs."  Sharp Reply at 2.  The Court
26   agrees with the Sharp DAPs and GRANTS their motion on this issue.  Although the existence of
27   the LCD Conspiracy may be relevant to damages, Defendants do not explain why the Sharp
28   companies' *participation* in that conspiracy is relevant.  Defendants are therefore ORDERED (1)

1  not to introduce evidence of or make reference to Sharp Corp.'s guilty plea related to the LCD

2  Conspiracy and (2) not to introduce evidence of or make reference to the role of any Sharp

3  companies in the LCD Conspiracy.

4       The Sharp DAPs also ask the Court to exclude any reference to the expert report of Dr.

5  Hausman in LCD and Sharp's retention of Dr. Hausman in LCD. Defendants respond that Dr.

6  Hausman's report in LCD is relevant for impeachment purposes insofar as it is inconsistent with

7  or contradictory to the opinion he offers at trial. See Sharp Opp'n at 7 (citing Ortiz-Lopez v.

8  Sociedad Espanola de Auxilio Muto y Beneficencia de P.R., 248 F.3d 29, 34-35 (1st Cir. 2001)).

9  The Sharp DAPs' reply that Dr. Hausman's opinions are not inconsistent, and even if they were,

10 "the fact that Dr. Hausman offered opinions in connection with the alleged LCD conspiracy *on

11 behalf of Sharp companies* remains irrelevant – it has no bearing at all on whether those opinions

12 are inconsistent with the opinions he offers here." Sharp Reply at 9 (emphasis in original).

13      The Court agrees with Defendants that Dr. Hausman's opinion in LCD may be relevant for

14 the limited purpose of impeachment insofar as it is inconsistent with the opinion he presents at

15 trial. The Sharp DAPs argue the Court should grant the motion on this issue nevertheless because

16 Dr. Hausman's opinions are not in fact inconsistent. Whether they are inconsistent, however, is a

17 question for the jury. The Sharp DAPs' motion on this is issue is therefore DENIED.

18      Whether it is relevant that Dr. Hausman offered opinions in LCD *on behalf of Sharp

19 companies* and, assuming it is relevant, whether the probative value of that fact substantially

20 outweighs any prejudicial effect under Rule 403 is a harder question. The potential impeachment

21 value of introducing Dr. Hausman's LCD opinion lies primarily in the extent to which it is

22 inconsistent with the opinion he offers at trial. That Dr. Hausman's purportedly inconsistent

23 opinion in LCD was also on behalf of Sharp companies, however, would arguably undermine his

24 credibility further. The Court will allow Defendants to make reference to the limited fact that Dr.

25 Hausman prepared his LCD opinion on behalf of Sharp companies; however, Defendants are

26 ordered not to present evidence or make reference to Sharp's involvement in the LCD Conspiracy

27 in the process. To the extent Defendants are unable to comply with that requirement – because,

28 for example, the evidence may be inextricably intertwined on those issues – the Sharp DAPs'

1  motion is GRANTED given that the minimal probative value would then be substantially
2  outweighed by the prejudicial effect of reference to unrelated litigation.  See United States v. Hitt,
3  981 F.2d 422, 424 (9th Cir. 1992) ("Where the evidence is of very slight (if any) probative value,
4  it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a
5  small risk of misleading the jury."); see, e.g., In re Homestore.com, Inc., No. CV 01-11115, 2011
6  WL 291176, at *1 (C.D. Cal. Jan. 25, 2011) ("[R]eference to or evidence of Plaintiff's
7  involvement in other litigation prior to this Action is also irrelevant and carries with it a high risk
8  of prejudice."); Hynix Semiconductor Inc. v. Rambus Inc., No. CV-00-20905, 2008 WL 504096,
9  at *2 (N.D. Cal. Feb. 19, 2008) (excluding as substantially more prejudicial than probative
10 evidence that would require explaining a separate litigation, "which the court has already ordered
11 kept out of evidence absent good cause"); Rondor Music Int'l Inc. v. TVT Records LLC, No. CV
12 05-2909-JTL, 2006 WL 5105272, at *10 (C.D. Cal. Aug. 21, 2006) (holding that reference to a
13 prior unrelated case "is unnecessary and would potentially result in unfair prejudice to plaintiffs or
14 confusion of the issues").

15 In sum, Sharp's motion is GRANTED IN PART and DENIED IN PART.[9]  Defendants are
16 prohibited from introducing evidence of or reference to non-party Sharp Corp.'s guilty plea related
17 to a conspiracy to fix the price of TFT-LCDs as well as evidence of or reference to the role of any
18 Sharp companies in the events underlying the LCD litigation.  Defendants may introduce Dr.
19 Hausman's LCD opinion for impeachment purposes only; however, in doing so, Defendants may
20 not introduce evidence of or make reference to Sharp's participation in the LCD Conspiracy.

21 **V.  CONCLUSION**
22 The Court finds as follows:

| Motion | Ruling |
|---|---|
| Joint Defendants' Motions *In Limine* Nos. 9 and 15 To Exclude Evidence Related To A Rule Of Reason Analysis | DENIED |

---

[9] The Sharp DAP's objection, see Sharp Reply at 4, 8, on relevance and Rule 403 grounds to Exhibits E, F & G to Defendants' opposition brief is OVERRULED.

| | |
|---|---|
| Joint Defendants' Motion *In Limine* No. 10 To Exclude Evidence Of Any Alleged CDT Conspiracy | DENIED |
| Toshiba Defendants' Motion *In Limine* To Exclude Evidence Of Toshiba's Sales To Sharp Corporation | DENIED |
| Sharp's Motion *In Limine* To Exclude Evidence Of Or Reference To Sharp Corp.'s Guilty Plea | GRANTED IN PART, DENIED IN PART |

**IT IS SO ORDERED.**

Dated: October 7, 2016

_____
JON S. TIGAR
United States District Judge

17