JOSEF D. COOPER (53015)
TRACY R. KIRKHAM (69912)
JOHN D. BOGDANOV (215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA  94103
Telephone:  (415) 788-3030
Facsimile:  (415) 882-7040
jdc@coopkirk.com
trk@coopkirk.com
jdb@coopkirk.com

*Counsel for Class Representative Steven Ganz*
*And Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All Indirect-Purchaser Actions | **Master File No. 3:07-cv-5944 JST**<br><br>**MDL No. 1917**<br><br>**SECOND DECLARATION OF JOSEF D. COOPER IN SUPPORT OF COOPER & KIRKHAM, P.C.'S OBJECTION TO LEAD COUNSEL'S REVISED PROPOSED ALLOCATION OF AGGREGATE FEE AWARD TO INDIRECT PURCHASER PLAINTIFFS' COUNSEL**<br><br>Judge:  Honorable Jon S. Tigar<br><br>Before:  Special Master Martin Quinn |

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL
PURSUANT TO DKT. NO. 4917**

I, Josef D. Cooper, declare as follows:

1.      I am a member in good standing of the State Bar of California, and licensed to practice in the states of California, Illinois and Hawaii.  I am a Principal in Cooper & Kirkham, P.C. ("C&K") I have personal knowledge of the facts stated in this Declaration and, if called as a witness, I could and would testify competently to them.  I make this Declaration in support of the Reply Re Objection of Cooper & Kirkham, P.C. to Lead Counsel's Revised Proposed Allocation of Aggregate Fee Award to Indirect Purchaser Plaintiffs' Counsel.

2.      To prepare this Declaration and refresh my recollection of events, in order to try to understand Lead Counsel's accusations, I reviewed the court docket and selected pleadings, the timesheets of the members of C&K, and the timesheets of other firms, primarily those of Zelle Hoffman, Francis Scarpulla (Dkt. 4818-2) and Trump Alioto.  Mr. Scarpulla was a senior attorney at Zelle Hoffman throughout the relevant time period, but has submitted his records separately for the reasons reflected in his fee application.  *Id.*

3.      At the time the *CRT* litigation began in November 2007, I and my partner Tracy Kirkham decided not to file a *CRT* case because of our other substantial commitments and our belief that we would not have adequate time to satisfy obligations to *CRTs* consistent with the work standards we impose upon ourselves.  Thereafter, I was frequently asked by counsel involved in the *CRTs* litigation to re-consider that decision and join the plaintiffs' counsel group. As a result, approximately one and a half years later I agreed that C&K could be added as counsel and C&K was listed among "Plaintiffs' Counsel" for the first time on the Indirect Purchaser Plaintiffs' Consolidated Complaint, filed March 16, 2009.  (Dkt. 437 at p. 97.)  After having been added as counsel, C&K did not do any substantive work in the case for another thirteen (13) months.  Formal Notices of Appearance were filed for Messrs. Cooper and Bogdanov and Ms. Kirkham on October 5, 2010.  (Dkts. 776, 777, 778.)

4.      At Lead Counsel's request, C&K began taking an active role in *CRTs* on April 8, 2010.  On that day, Lead Counsel (assisted by Zelle Hoffman) requested that my partner, Tracy Kirkham, take the lead on behalf of the Indirect Purchaser Plaintiffs in: (1) negotiating the

1    document production ESI protocols with the Defendants and Direct Purchaser Plaintiffs; and (2)

2    establishing the IPP database structure and document review methodology and structure.   After

3    consulting with me, Ms. Kirkham accepted Lead Counsel's invitation.   Thus, Ms. Kirkham's

4    April 8, 2010 time entry is the first included in C&K's time submission to Lead Counsel, as

5    reflected in the C&K fee Declaration.   See also time entries of Lauren Capurro of Trump Alioto

6    and Zelle Hoffman (for Craig Corbitt and Patrick Clayton), true and correct copies of which are

7    attached hereto as Exhibits 1 and 2.  Mr. Alioto's time records are not referenced in this

8    Declaration because they are all handwritten and largely illegible and undecipherable.

9         5.       The Chunghwa settlement was old news by the time C&K became actively

10   involved in *CRTs* on April 8, 2010.  The Chunghwa evidence proffer occurred fourteen (14)

11   months earlier, on February 10, 2009.  (*See* Time records of Francis O. Scarpulla, Dkt. 4818-2 at

12   p. 19.)  The Chunghwa Settlement Agreement was "entered into" almost exactly a year earlier, on

13   April 18, 2009.  (Dkt. 3861 at p. 14.)  While I became generally aware that a settlement had been

14   reached with Chunghwa in return for cooperation and a small amount of money, I never looked

15   into the specific terms of the settlement before the July 2015 dissemination of notice that included

16   the proposed plan for distributing the settlement proceeds.  Lead Counsel never requested that

17   anyone at C&K review or evaluate or comment on the Chunghwa Settlement in any way, and no

18   one ever did.  Their only entry in C&K's time submission relating to the Chunghwa settlement is

19   Mr. Bogdanov's attendance at the March 22, 2012 final approval hearing.  There was no reference

20   at the hearing to the inclusion of resellers in the settlement class.  Moreover, nothing occurred

21   which would have put up a red flag until over three years later when a plan of distribution was

22   submitted to the court which did not properly reflect the terms of the settlement and the Judgment

23   entered.   There was no reason for me or anyone at C&K to review the Chunghwa agreement a

24   year after the fact, given that it was not part of our assigned tasks and the benefits of the evidence

25   proffer were already being gained.  In fact, Lead Counsel repeatedly warned counsel not to review

26   pleadings or perform unauthorized tasks.  See Alioto Declaration (Dkt. 4071-1), where he

27   explains how other counsel were docked for violation of this rule: "Lead Counsel has employed

28

SECOND DECLARATION OF JOSEF D. COOPER      - 2 -          Master File No. 3:07-cv-5944 JST
                                                          MDL 1917

1    many measures to ensure that the lodestar figure is not improperly inflated.  For example, Lead

2    Counsel . . . (b) provided strict guidelines to IPP Counsel that they were only to work on the case

3    at the direction of Lead Counsel and that only time authorized or approved by Lead Counsel

4    would be included in an application to the Court[.]"  *Id.* at ¶ 118.  At no time pursuant to this

5    procedure did Lead Counsel object to or remove one minute of C&K's submitted time.

6          6.      Furthermore, C&K had no reason to review the Chunghwa Settlement Agreement

7    since I understood that it was principally conceived, negotiated and documented by attorneys at

8    Zelle Hoffman.  That understanding is verified by the Zelle and Trump Alioto time records.  The

9    Zelle records show 66 entries on this subject by five (5) Zelle attorneys between July 29, 2008 and

10    April 18, 2009, when the Settlement Agreement was executed.  (Dkt. 4818-2 at p. 19) (*See* Zelle

11    time records, true and correct copies attached hereto as Exhibit 3).  The Trump Alioto records

12    show 18 entries on this subject by Ms. Capurro alone between July 29, 2008 and April 18, 2009.

13    (*See* Trump Alioto time records, true and correct copies attached hereto as Exhibit 4).  I do not

14    have a count on Mr. Alioto's participation since, as noted above, his time records are all

15    handwritten and largely illegible and undecipherable

16          7.      Throughout the pendency of the *CRTs* litigation, C&K has had at least five (5)

17    significant cases in which both it and Zelle took major roles on behalf of plaintiff classes.  One is

18    the much discussed *TFT-LCD* litigation, which was being actively litigated for all but the last

19    couple of years.  In *LCD*, I took a leading role with Mr. Scarpulla in negotiating and documenting

20    settlements totaling almost $1.1 Billion.  Throughout that litigation, Zelle adamantly refused to

21    include resellers in any class(es) or settlements being negotiated.  I had no reason to suspect that

22    Zelle had deviated from that position with Chunghwa.  This was reinforced as the case progressed

23    by the fact that the certified IPP litigating classes did not include resellers.  (Dkts. 1742 and 1950.)

24          8.      As would be expected, I talked with Mr. Scarpulla frequently about our other joint

25    cases throughout the pendency of the *CRTs* litigation, even speaking daily or multiple times a day

26    during certain periods.  There was no reference to *CRTs* during the overwhelming percentage of

27    those conversations, although, not surprisingly, CRTs did come up on some occasions.  My name

28

1  appears in Mr. Scarpulla's time sheets three (3) times during the two and a half years between the

2  November 2007 inception of the case and the April 8, 2010 initiation of C&K's active

3  participation as one of plaintiffs' counsel.  My name appears in Mr. Scarpulla's time sheets three

4  more times in 2010, and then not again for over two years, until April 5, 2013.  Mr. Scarpulla does

5  not have time entries in 2012.  None of Mr. Scarpulla's entries that mention me make any

6  reference to defendant Philips.  The only entries in C&K's time records before January 1, 2013

7  which reference Philips, relate to Mr. Bogdanov's activities as the head of the Philips discovery

8  group.  Nor did I find any reference to the California AG in either Mr. Scarpulla's or the C&K

9  time records at any time through the end of 2012.  Thus, there is no evidence to support Mr.

10  Alioto's accusation that "beginning in 2012, along with Scarpulla, Cooper involved himself in the

11  dispute with Philips over its settlement with the California AG."  (Dkt. 4853-1, ¶23)

12      9.      Mr. Alioto's next accusation is that "Cooper and Scarpulla even went so far as to

13  formulate a settlement demand on Philips in mid-2013."  (Dkt. 4853-1, ¶23.)  I never formulated a

14  settlement demand for Philips.  I never discussed settlement at any time with anyone representing

15  Philips.  I never determined at anytime during the litigation what an appropriate settlement range

16  for Philips might be, and I never attempted to make such a determination.  I never conveyed any

17  opinion regarding the amount of an appropriate settlement with Philips to Mr. Alioto or any other

18  counsel for IPP plaintiffs.  I never advised Mr. Alioto to settle with Philips in 2013, or at any other

19  time.

20      10.     I was generally aware of activities regarding Philips by Zelle Hoffman which are

21  recorded in the timesheets of Zelle Hoffman attorneys other than Mr. Scarpulla.  Between January

22  1, 2013 and April 5, 2013, there are at least sixteen (16) entries by Craig Corbitt (12), Judith Zahid

23  (2) and Chris Micheletti (2) which reference the IPPs dispute with the California AG over the

24  AG's *parens patriae* settlement with Philips, and possible resolution of this dispute through an IPP

25  settlement with Philips (although the name "Philips" only appears once).  These entries reflect at

26  least five (5) conferences with representative of the California AG's office, and at least three (3)

27

28

SECOND DECLARATION OF JOSEF D. COOPER      - 4 -      Master File No. 3:07-cv-5944 JST
                                                      MDL 1917

1  conferences with Mr. Alioto.  A true and correct copy of Zelle Hoffman's time records from

2  January 1 – June 18, 2013 is attached as Exhibit 5.

3         11.    April 5, 2013, was the date of the hearing in San Francisco Superior Court on the

4  State of California's motion for preliminary approval of its settlement with Philips.  The observers

5  included Ms. Zahid of Zelle and Mr. Bogdanov of C&K.  After the hearing, Ms. Zahid and Mr.

6  Bogdanov had a conversation with Kathleen Foote, head of the California AG's Antitrust

7  Division, about the desirability of resolving this unfortunate dispute over the California Philips

8  settlement.  This engendered telephone calls and emails among Ms. Zahid and Messrs. Corbitt,

9  Scarpulla, Bogdanov and me about how to approach achieving a resolution of the dispute.  These

10  are the events referenced in Mr. Scarpulla's April 5, 2013 time record.  They are also reflected in

11  Ms. Zahid's and Mr. Corbitt's timesheets for that day.  Follow-up communications on this subject

12  are noted in both Mr. Scarpulla's and Mr. Corbitt's time entries for April 16 and 30, 2013, and an

13  additional entry by Mr. Corbitt on April 23, 2013.  The April 16, 2013 entries reflect a meeting

14  with Mr. Alioto on this subject attended by Ms. Zahid and Messrs. Corbitt and Scarpulla, but not

15  attended by either me or Mr. Bogdanov.  The April 30, 2013 email from Mr. Bogdanov to Mr.

16  Corbitt referenced in Mr. Alioto's Declaration at paragraph 24, was sent in advance of Mr.

17  Corbitt's meetings that day with the California AG and Philips' counsel, to correct Mr. Corbitt's

18  misunderstanding of Mr. Bogdanov's view of the case against Philips.  See Bogdanov Declaration

19  at paragraphs 22-25.  Mr. Corbitt's time records have six (6) more entries in May and June 2013,

20  relating to these matters, which reflect four (4) communications each with Mr. Alioto and Ms.

21  Foote.  None refer to either Mr. Bogdanov or me.  Mr. Scarpulla does not have any entries that

22  refer to this subject or communications with a representative of the California Attorney General's

23  office until October 2013.

24         12.    Mr. Alioto accuses me of poisoning him in the eyes of Special Master Walker

25  "based on statements . . . made by Scarpulla and Emilio Varanini of the California AG's office at a

26  meeting with Judge Walker in August 2014."  (Dkt. 4853-1, ¶25.)  Based on Mr. Scarpulla's time

27  records, this meeting appears to have been on August 8, 2014.  Mr. Alioto admits that I was not a

28

---

SECOND DECLARATION OF JOSEF D. COOPER    - 5 -       Master File No. 3:07-cv-5944 JST

1   participant in that meeting.  I do not believe that I was aware of this meeting until after it

2   happened.  Mr. Scarpulla has thirty-two (32) time entries between October 4, 2013 and August 8,

3   2014, that mention Mr. Varanini.  My name is not shown in any of those entries.  Mr. Scarpulla

4   has only one time entry during this nine (9) months period (for 12/19/2013) which names me,

5   along with Ms. Zahid, relating to emails "RE: DEPO WORK".  (Dkt. 4818-2, p. 28)

6           13.     During the pendency of the this litigation, C&K had two (2) significant other cases

7   in which, like the *CRTs* situation, it was counsel for plaintiff classes and the California AG was

8   prosecuting related cases on behalf of California governmental entities and *parens patriae* on

9   behalf of California consumers.  One of those cases is now done, and the second is currently in the

10  final wrap-up stages.  Throughout those cases, I talked frequently with representatives of the

11  California AG's office, including Ms. Foote and Mr. Varanini, even speaking with Mr. Varanini

12  daily or multiple times a day during certain periods.  While we did not always agree on questions

13  that arose during those cases, I was always able to work cooperatively with Mr. Varanini to

14  attempt to reach solutions and positions which satisfied the interests of both the classes and the

15  State of California (and the many other states that were involved in both actions).  There was

16  never any of the personal rancor that seemed to characterize the interactions between Lead

17  Counsel and the California AG.  See generally, Special Master's Report and Recommendation Re

18  Settlement (Dkt. 3200).  Reference to *CRTs* during my communications with the California AG

19  was extremely rare, although, not surprisingly, CRTs did come up on occasion.  At all times, I

20  counseled Mr. Varanini to continue doing everything in his power to work with Lead Counsel in

21  the most cooperative and collegial manner possible, and expressed the view that continued friction

22  was not in the best interests of either the CRT class or the citizens of California.

23          14.     Mr. Alioto also claims, based on Mr. Scarpulla's time records (Dkt. 4853 at p.22),

24  that Judge Walker's December 12, 2014 Report and Recommendation Re Settlement (Dkt. 3200)

25  ("R&R") was the result of me:  (A) "contact[ing] Judge Walker at some point in 2014 to

26  complain" (Dkt. 4853-1, ¶25); and (B) "meeting with . . . Special Master Walker . . ." to badmouth

27  him.  (*Id.*, ¶¶25, 26.)  I never contacted Judge Walker to discuss anything with regard to this case

28

1   in 2014, or ever.  I never spoke to Judge Walker before his R&R was filed with the Court, not

2   about Mr. Alioto's job performance, not about the California AG, and not about settlement of the

3   litigation.  Mr. Scarpulla's time records have a total of three (3) entries where Judge Walker is

4   named in the entire four (4) year and eight (8) month time period between the inception of the case

5   and the August 8, 2014 meeting with Messrs. Alioto and Varanini discussed above.  All of these

6   entries are for the eight (8) days before August 8th, and seem to refer to that conference.  None of

7   those entries contain my name.

8          15.    Mr. Scarpulla's records for the three (3) month plus period between the August 8

9   conference with Judge Walker and Judge Conti's November 17, 2014 Order directing "the Special

10  Master to prepare a report and any recommendations necessary regarding the progress of

11  settlement discussions in the Indirect Purchaser Plaintiffs' action" (Dkt. 3118), show four (4)

12  entries where Judge Walker is identified.  I am not identified in any of those four (4) entries.  I am

13  noted in six (6) different time entries during this period, primarily relating to Zelle's October 2,

14  2015 letter to Mr. Alioto offering assistance with trial preparation.  (Dkt. 4818-3.)  Mr. Goldberg

15  is one of the six signatories to the letter (as am I).  There is no specific reference to this letter in

16  Mr. Goldberg's time records, and no acknowledgement of it in his "Declaration Of Joseph

17  Goldberg In Opposition To Objections To IPP Lead Counsel Fee Allocation"  (Dkt. 4851).  A true

18  and correct copy of Mr. Goldberg's firm's time submission is attached hereto as Exhibit 6.  Mr.

19  Scarpulla's time entry for November 3, 2014 contains, in part, the notation: "CONFERENCE

20  WITH V. WALKER RE: STATUS AND STRATEGIES, EMAILTO J. GOLDBERG RE SAME,

21  ETC."  (All of Mr. Scarpulla's time records are in all caps.)  Mr. Scarpulla's time entry for

22  November 6, 2014 contains the notation:  "EMAILS AND TELEPHONE CONFERENCE WITH

23  J. GOLDBERG, ET AL., RE TRIAL TEAM AND SCHEDULE, ETC."  There is no reference to

24  either of these matters in Mr. Goldberg's time records.  Actually, there is no reference to either

25  Mr. Scarpulla or me anywhere in his time entries.

26         16.    Mr. Scarpulla's time entries for the almost four (4) week period between Judge

27  Conti's November 17 Order and Judge Walker's December 12, 2014 Report and Recommendation

28

---

1  contain only two entries that mention me, only one of which is potentially relevant to Mr. Alioto's

2  assertion that I "contacted" Judge Walker.  The timesheet for November 19, 2014, states in

3  pertinent part:  "EMAIL FROM V. WALKER RE: R&R, EMAILS AND TELEPHONE

4  CONFERENCE WITH J. COOPER RE: SAME, EMAIL TO V. WALKER RE SAME".  Mr.

5  Scarpulla's timesheet for December 9, 2014, states in pertinent part: "EMAIL AND TELEPHONE

6  CONFERENCE WITH V. WALKER, E. VARANINI, JD COOPER, ETC. RE: STATUS AND

7  STRATEGIES."  Insofar as this entry appears to memorialize a single telephone conference with

8  Mr. Scarpulla, Judge Walker, and Mr. Varanini, myself and others, I believe that it is the result of

9  a typographical error that omitted the "s" from the word, "conference."  Were the "s" added, the

10  time entry would have accurately reflected that Mr. Scarpulla had multiple communications with

11  different people, including me, that day.  I never participated in any telephone conference with Mr.

12  Scarpulla, Judge Walker, Mr. Varanini on December 9, 2014, or at any time.

13      17.    After entry of Judge Conti's November 17 Order, Mr. Scarpulla did ask me if I

14  would be willing to get involved in the settlement of this case if recommended by Judge Walker

15  and acted upon by Judge Conti.  I responded "yes."  I understood that this concept of additional

16  co-lead counsel had been initiated by Judge Walker, as shown by the first entry in Mr. Scarpulla's

17  November 19 record  --  e.g., "EMAIL FROM V. WALKER RE: R&R."  I believe that Mr.

18  Scarpulla's November 19 entry reflects my exchange with him and his report back to Judge

19  Walker.

20      18.    Finally, Mr. Alioto asserts that I was "in contact with the Defendants" and that he

21  "suspects that Cooper . . .[was] discussing settling the case with . . . [the Samsung] Defendants . . .

22  ."  He further states that I told him during an "early January 2015" conference call "that Samsung

23  SDI would pay no more than $50 million to settle the IPP case, and advised that Lead Counsel

24  accept that amount."  (Dkt. 4853-1, ¶27.)  In fact, I never spoke with any defense counsel about

25  settling this case.   By my count, Mr. Scarpulla's timesheets for the period from December 1, 2014

26  to February 17, 2015, reflect fourteen (14) communications with defense counsel, which includes

27  seven (7) communications with Samsung's counsel before January 23, 2015, when "[a]n

28

SECOND DECLARATION OF JOSEF D. COOPER      - 8 -      Master File No. 3:07-cv-5944 JST
                                                       MDL 1917

1   agreement in principle was reached . . . [with Samsung] after two full days of mediation with

2   Judge Walker." (Dkt. 3861 at p. 8.)  None of Mr. Scarpulla's entries in any way suggests that I

3   participated in those communications, and I did not.  After the entry of Judge Walker's December

4   2014 R&R, I did have conversations with Mr. Scarpulla and Mr. Varanini about the status of

5   Judge Walker's Recommendation and rumors about the progress and success of Mr. Alioto's

6   settlement negotiations.  I did participate in a conference call with Messrs. Alioto, Goldberg and

7   Scarpulla in early January, 2015, which Mr. Alioto organized to discuss the upcoming Samsung

8   mediation.  Since I never spoke with Samsung's counsel, I had no knowledge of and never opined

9   on what Samsung might be willing to pay, nor did I recommend acceptance of any amount.  I do

10  not recall that Mr. Scarpulla said anything that could properly be characterized as is described by

11  Mr. Alioto.

12      19.     Mr. Goldberg states:  "After my advent to this case and during the work-up to trial,

13  I talked several times with Mr. Scarpulla and Mr. Cooper.  Neither one objected to my . . .

14  presence in this case, and at the time both expressed approval and appreciation for the work we

15  were doing." (Dkt. 4851 at p. 3)  The only time I recall talking to Mr. Goldberg about *CRTs* is the

16  early 2015 conference call about the Samsung mediation noted above.   Mr. Goldberg's time

17  records are not helpful on when I allegedly made these statements, since his entries do not have

18  any reference to either me or Mr. Scarpulla, and do not even note the January conference call.  Nor

19  do I recall making any statements about Mr. Goldberg's participation in the litigation on that call.

20  I do recall stating that Mr. Bogdanov, with his vast knowledge of the evidence in the case, was

21  available to assist him if called upon.  The January call was over three months after I had joined in

22  the Zelle letter to Mr. Alioto, urging him to assemble a team to prepare for trial.  I was glad Mr.

23  Alioto had recognized his inability to try the case and had sought assistance.  The issue I have

24  presented has nothing to do with Mr. Goldberg, but goes to Mr. Alioto's decision to turn to

25  someone who had no knowledge of or background in the litigation as lead trial counsel and then

26  authorize him to bring in two additional law firms who were equally uninformed.   There were

27  numerous lawyers and firms in the case who could have stepped up without the steep learning

28

1  curve and extensive duplication required to start from scratch.  Mr. Scarpulla and myself aside, the

2  list of experienced, senior antitrust trial lawyers already in the case includes Craig Corbitt, Bob

3  Green, Susan Kupfer, Dan Hume and Chris Lovell all of whose firms had already made a

4  significant commitment to *CRTs*.  (This list is not intended to be exhaustive and I apologize to

5  anyone whose feelings I've hurt by leaving them off.)

6        20.    Neither Mr. Alioto, Ms. Capurro, nor anyone else ever complained to me or Ms.

7  Kirkham, orally or in writing, about Mr. Bogdanov's work quality or ethic, ever told either of us

8  that Mr. Bogdanov had refused to take depositions, or ever asked either of us to remove Mr.

9  Bogdanov from the case.  Primarily Mr. Bogdanov's work resulted in the sixth largest lodestar in

10  the case – a significant commitment from a three lawyer firm.  Not one minute of C&K's time was

11  challenged by Lead Counsel, which belies the accusation that the work product was lacking.

12        21.    Mr. Alioto never expressed to me, orally or in writing, any objection to or

13  dissatisfaction with any of my actions or activities in the case.  Specifically, he never complained

14  that I was inappropriately interjecting myself into the dispute with the California Attorney

15  General, or into the settlement process or in any way hindering settlement.  He never expressed the

16  view that any action of mine was unprofessional, uncooperative or against the best interests of the

17  plaintiffs or class members.

18        22.    As far back as 1994, when she authored an article about electronic discovery in the

19  Practical Litigator and lectured on the subject before the Trial Lawyers of America, Ms. Kirkham

20  has had a particular interest in and has been recognized as an expert in electronic document

21  management and electronic discovery.  For the discovery effort in *In re Dynamic Random Access*

22  *Memory (DRAM) Antitrust Litigation*, No. M-02-1486-PJH (N.D. Cal.), where I am one of the Co-

23  Lead-Counsel, she designed and implemented a new document management template that

24  represented a paradigm shift in the area of document discovery and management in complex

25  multiparty litigation.  Up to that point, document discovery was generally carried out with a multi-

26  layered review process, starting with low-level reviewers and eventually working its way up

27  through successive review levels to those with responsibility for formulating the factual and legal

28

1   theories that would be used at trial.  With the advent of lower-cost, higher-capacity computers,

2   faster internet speeds and access, and better and more flexible relational databases, Mr. Kirkham

3   was able to design a system and protocols for *DRAM* that essentially turned this process on its

4   head.  Instead of starting with low-level reviewers, the document management process began with

5   the case's most experienced trial lawyers creating a road map of the issues, evidence and

6   allegations that if successfully supported would result in a jury verdict for plaintiffs.  Then, teams

7   were created across firm lines, lead by experienced trial counsel, who reported directly to Ms.

8   Kirkham and Co-Lead Counsel.  These teams were organized by subject matter and issues, and

9   were charged with developing search parameters for the full-text review of all of the documents

10  produced by the defendants to identify the best evidence supporting plaintiffs' positions.

11  Reviewers, who were generally themselves mid-to-senior level associates worked in their own

12  offices and communicated with each other and were supervised by their team leaders by telephone

13  and email.  At the conclusion of the initial subject matter review, the team leaders selected their

14  best team members to move on to deposition preparation teams and later to trial exhibit

15  preparation.  Slightly modified versions of this system were implemented in both *In re TFT-LCD*

16  *(Flat Panel) Antitrust Litigation*, No. M-07-1827-SI (N.D. Ca) and this case.  Mr. Bogdanov

17  worked on both *DRAM* and *TFT-LCD*, and developed considerable expertise himself in electronic

18  document discovery and management.  Exhibits 6 and 7 are true and correct copies of Reports and

19  Recommendations of the Special Masters in *DRAM* and *TFT-LCD* that recognize the innovative

20  nature of this form of document review.

21          I declare under penalty of perjury that the foregoing is true and correct.  Executed this 23rd

22  day of September, 2016, in San Francisco, California.

23                                    _/s/ Josef D. Cooper_____
                                            Josef D. Cooper
24

25

26

27

28

---

SECOND DECLARATION OF JOSEF D. COOPER     - 11 -        Master File No. 3:07-cv-5944 JST
                                                        MDL 1917

# EXHIBIT 1

CRT Cases

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 4/8/2010 | Conference call w/ Tracy Kirkham, Patrick Clayton + John Bogdanov re e-discovery, meeting + conferring w/ defs re same, negotiating search terms + custodians, doc review databases + organization of doc review etc., f/n re same, conf w/ MNA re same. Conf call w/ MNA + direct plaintiffs to prepare for conf call w/ J. Legge tomorrow, prepare for same, f/n re same.  Meeting w/ MNA re amending complaint to add new state law claims, review file re same + begin updating chart on status of state law claims. | 3.75<br>500.00/hr | 1,875.00 |
| 4/9/2010 | Telephonic hearing before J. Legge re case management issues: scheduling of CMC, amending complaint, answers to complaint, etc., f/n re same, conf w/ MNA re same. | 1.50<br>500.00/hr | 750.00 |
| | Update chart on status of state law claims, review complaints, orders on mtd + class cert orders in other cases re same.  Read defs' mtn to certify order on mtd for 1292(b) appeal, research law on procedure re same + local rules for responding to same + hearing date, conf w/ MNA re same. T/c w/ Mike Simon re his client, assessments + upcoming work assignments.  T/c w/ Jeff Crabtree re Hawaii state law claims, his client, assessments + upcoming work assignments. | 4.00<br>500.00/hr | 2,000.00 |
| 4/12/2010 | Emails w/ Jeff Crabtree re Hawaii claim, review J. Legge's order re same. Various emails re time + expense reports, briefly review same. | 0.50<br>500.00/hr | 250.00 |
| 4/13/2010 | Preparation of updated chart on status of state law claims, review files for various cases, orders on mtns to dismiss + complaints.  Confs w/ MNA re 1292(b) mtn + timing for opp to same, emails + t/c's w/ Cadio re same. Review memo re Hawaii law from Jeff Crabtree + emails re same. | 4.00<br>500.00/hr | 2,000.00 |
| 4/14/2010 | Legal research re opp to defs' mtn for 1292(b) appeal + begin outlining same, confs w/ MNA re same + extending schedule + emails re same.  T/c's + emails w/ Sylvie re briefing opp.  Research re similar briefs in other cases, review briefing from Cal. Title Ins. case.  Review LGE's RFA to Chunghwa. | 8.25<br>500.00/hr | 4,125.00 |
| 4/15/2010 | Draft opp to 1292(b) mtn for interlocutory appeal, further research cases cited by defs + review briefs from other cases.  Draft stip + order extending briefing schedule on 1292(b) mtn, emails re same, confs w/ MNA re same, file with court + submit courtesy copy to Judge.  Review minute order denying class cert in Flash Memory filed under seal, emails to + from Patrick re copy of actual order, conf w/ JMP re same. | 5.75<br>500.00/hr | 2,875.00 |
| 4/16/2010 | Draft opp to 1292(b) mtn for interlocutory appeal. Confs w/ MNA re extension to schedule. | 1.50<br>500.00/hr | 750.00 |
| 4/17/2010 | Draft opp to 1292(b) mtn for interlocutory appeal. | 3.75<br>500.00/hr | 1,875.00 |

EXHIBIT 2

| 3837463 | 3/30/2010 | FU, QIANWEI | SR. ASSOCIATE | 2.00 | 485 | 970.00 | (1) CONFERENCE CALL/RELATIVITY DEMO, (2) REVIEW CONTI MTD ORDER |
| 3840735 | 3/31/2010 | CORBITT, CRAIG C. | SR. PARTNER | 0.30 | 850 | 255.00 | EMAIL EXPERT RE STATUS AND ASSIGNMENTS |
| 3849442 | 4/2/2010 | CORBITT, CRAIG C. | SR. PARTNER | 0.30 | 850 | 255.00 | EMAIL RE GATHERING CLIENT INFORMATION AND ESI REQUIREMENTS, OFFICE CONFERENCE RE SAME |
| 3849559 | 4/6/2010 | CORBITT, CRAIG C. | SR. PARTNER | 0.40 | 850 | 340.00 | CALL WITH MARIO ALIOTO RE STATUS AND STRATEGY, OFFICE RE DOCUMENT REVIEW |
| 3849574 | 4/7/2010 | CORBITT, CRAIG C. | SR. PARTNER | 0.30 | 850 | 255.00 | CALL WITH MARIO ALIOTO AND CONFERENCE WITH ERIC MANDEL RE DOCUMENT REVIEW SYSTEM, STATUS AND STRATEGY |
| 3843180 | 4/8/2010 | CLAYTON, PATRICK B. | SR. ASSOCIATE | 1.50 | 485 | 727.50 | ATTEND CONFERENCE WITH J. NETZ RE ECONOMICS ISSUES, PREPARE FOR AND ATTEND CONFERENCE WITH L. RUSSELL RE DISCOVERY DOCUMENT REVIEW. |
| 3849581 | 4/8/2010 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 | OFFICE AND CONFERENCE WITH JANET NETZ RE CLASS CERT ISSUES AND ASSIGNMENT, CALL WITH MARIO RE SAME AND RE DOCUMENT REVIEW STATUS AND STRATEGY |
| 3842911 | 4/8/2010 | FU, QIANWEI | SR. ASSOCIATE | 0.80 | 485 | 388.00 | MEET WITH J. NETZ TO DISCUSS CRT PLAN |
| 3844251 | 4/15/2010 | BABIONE, MARIE J. | PARALEGAL (3) | 0.50 | 220 | 110.00 | ORGANIZE ORDERS IN PREPARATION TO UPDATE CRAIG CORBITT'S BINDERS. |
| 3849811 | 4/20/2010 | CORBITT, CRAIG C. | SR. PARTNER | 0.20 | 850 | 170.00 | CALL FROM MARIO ALIOTO RE STATUS AND STRATEGY, REVIEW DEFENDANTS PETITION RE 1292 |

EXHIBIT 3

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3593489 | 7/22/2008 | FU, QIANWEI | SR. ASSOCIATE | 0.50 | 410 | 205.00 | REVIEW PRE-STUDY MATERIALS RE MARKET FOR CRT |
| 3600710 | 7/23/2008 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 800 | 800.00 | RESEARCH RE CHUNGHWA, OTHER LIABILITY AND MARKET FACTS |
| 3600723 | 7/24/2008 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 800 | 400.00 | RE CHUNGHWA RESEARCH, LIABILITY RESEARCH RE CONSOLIDATED COMPLAINT |
| 3594434 | 7/25/2008 | FU, QIANWEI | SR. ASSOCIATE | 0.50 | 410 | 205.00 | EMAIL DISCUSSION WITH JUDITH AND LAUREN RE THE SAME, REVIEW LAUREN'S EMAIL RE CASE UPDATE |
| 3600746 | 7/28/2008 | CORBITT, CRAIG C. | SR. PARTNER | 2.00 | 800 | 1,600.00 | RESEARCH RE CHUNGHWA, CASE STATUS AND STRATEGY |
| 3600748 | 7/29/2008 | CORBITT, CRAIG C. | SR. PARTNER | 3.00 | 800 | 2,400.00 | RESEARCH RE CHUNGHWA, PREPARATION FOR MEETING, MEETING WITH OPPOSING COUNSEL RE POTENTIAL SETTLEMENT, CONFERENCE WITH J. PATANE RE SAME |
| 3596330 | 7/29/2008 | FU, QIANWEI | SR. ASSOCIATE | 0.70 | 410 | 287.00 | UPDATED CASE STATUS, EMAILED LAUREN RE COURT-DIRECT SERVICE, DISCUSSED WITH BOB NEWMAN RE CHUNGHWA RESEARCH |
| 3599909 | 7/29/2008 | NEWMAN, ROBERT | PARALEGAL (3) | 1.80 | 250 | 450.00 | BLOOMBERG, LEXIS ATVANTAGE AND INTERNET RESEARCH TO OBTAIN GENERAL OVERVIEW OF CHUNGHWA PICTURE TUBES LTD., AND IN PARTICULAR ITS CRT SALES, PER CRAIG CORBITT, DISCUSSIONS WITH MR. CORBITT AND QIANWEI FU RE SAME |
| 3606144 | 8/5/2008 | CORBITT, CRAIG C. | SR. PARTNER | 1.50 | 800 | 1,200.00 | RESEARCH RE SHARE MARKET AND CUSTOMERS, FACTS RE CONSOLIDATED COMPLAINT. |
| 3606149 | 8/6/2008 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 800 | 800.00 | RESEARCH RE SHARE MARKET AND CUSTOMERS, FACTS RE CONSOLIDATED COMPLAINT. |

| ID | Date | Name | Role | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 3606303 | 8/11/2008 | CORBITT, CRAIG C. | SR. PARTNER | 0.70 | 800 | 560.00 | EMAIL RE MEETING WITH CHUNGHWA'S COUNSEL, CONFERENCE WITH LAUREN RE STATUS, BACKGROUND RESEARCH REMEDIAL COMPLAINT. |
| 3602896 | 8/12/2008 | FU, QIANWEI | SR. ASSOCIATE | 2.00 | 410 | 820.00 | RESEARCH CHUNGHWA'S U.S. SALES |
| 3603540 | 8/15/2008 | FU, QIANWEI | SR. ASSOCIATE | 1.50 | 410 | 615.00 | (1) RESEARCH CHUNGHWA'S TOP 10 CUSTOMERS' CRT SALES TO U.S., (2) REVIEW STIPULATIONS RE FOREIGN SERVICE, (3) REVIEW DEFS' OPPOSITION TO IPPS' MOTION FOR COURT-DIRECTED SERVICE, (4) REVIEW COURT ORDER RESETTING HEARING DATE, UPDATE CALENDAR |
| 3606441 | 8/18/2008 | CORBITT, CRAIG C. | SR. PARTNER | 2.00 | 800 | 1,600.00 | PREPARATION FOR AND MEETING WITH OPPOSING COUNSEL RE CHUNGHWA, CONFERENCE WITH MARIO ALIOTO RE CASE STATUS AND STRATEGY, RESEARCH RE CHUNGHWA MARKET ISSUES |
| 3611752 | 9/3/2008 | FU, QIANWEI | SR. ASSOCIATE | 0.30 | 410 | 123.00 | REVIEW SPECIAL MASTER'S R&R, REVIEW COURT ORDER GRANTING MOTION ON COURT-DIRECTED SERVICE |
| 3623419 | 9/9/2008 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 800 | 400.00 | RESEARCH RE ADDITIONAL ALLEGATIONS RE AMENDED COMPLAINT, OFFICE CONFERENCE RE STATUS AND STRATEGY |
| 3614577 | 9/19/2008 | FU, QIANWEI | SR. ASSOCIATE | 1.00 | 410 | 410.00 | REVIEW INDIVIDUAL COMPLAINTS TO ███ COMMUNICATED WITH HANK ███ |
| 3616858 | 9/19/2008 | LAMB, DENISE M. | PARALEGAL (3) | 0.50 | 210 | 105.00 | ███ |
| 3630692 | 9/25/2008 | CORBITT, CRAIG C. | SR. PARTNER | 0.80 | 800 | 640.00 | RESEARCH RE CHUNGHWA, LIABILITY AND MARKET EVIDENCE |

| 3621712 | 9/29/2008 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 800 | 800.00 | REVIEW EMAIL AND PLEADINGS RE CASE STATUS, CALL WITH OPPOSING COUNSEL RE POTENTIAL SETTLEMENT, EMAIL LEAD COUNSEL RE SAME |
| 3622124 | 10/2/2008 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 800 | 400.00 | PHONE CALL FROM OPPOSING COUNSEL, EMAIL AND CALL WITH CO-COUNSEL RE CHUNGHWA SETTLEMENT MEETING, STATUS |
| 3634053 | 10/3/2008 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 800 | 800.00 | EMAIL RE CHUNGHWA MEETING, REVIEW VARIOUS PLEADINGS RE CASE STATUS, RESEARCH RE MARKET SHARE ISSUES |
| 3634828 | 10/6/2008 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 800 | 800.00 | RESEARCH RE CHUNGHWA, AMENDED COMPLAINT |
| 3635148 | 10/7/2008 | CORBITT, CRAIG C. | SR. PARTNER | 2.50 | 800 | 2,000.00 | PREPARATION FOR AND MEETING WITH CHUNGHWA COUNSEL RE POTENTIAL SETTLEMENT, CONFER WITH MARIO RE CASE STATUS AND STRATEGY |
| 3622948 | 10/7/2008 | FU, QIANWEI | SR. ASSOCIATE | 0.30 | 410 | 123.00 | DRAFTED NOTICE OF ASSOCIATION OF COUNSEL (TIM NEEDHAM) AND ASSISTED MONICA WITH FILING |
| 3635366 | 10/8/2008 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 800 | 800.00 | OFFICE CONFERENCE RE PROPOSED SETTLEMENT, EMAIL RE SERVICE OF DEFENDANTS, CASE STATUS AND STRATEGY |
| 3623314 | 10/8/2008 | FU, QIANWEI | SR. ASSOCIATE | 0.20 | 410 | 82.00 | COMMUNICATE WITH LAUREN VIA EMAIL RE SERVICE ON FOREIGN DEFENDANTS |
| 3623137 | 10/8/2008 | STEELE, MONICA J. | PARALEGAL (3) | 0.50 | 210 | 105.00 | ASSIST WITH ELECTRONIC FILING AND SERVICE RE NOTICE OF ASSOCIATION OF COUNSEL. |
| 3635421 | 10/10/2008 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 800 | 800.00 | RE MARKET SHARE INFORMATION, CHUNGHWA SETTLEMENT ISSUES, SERVICE, CASE STATUS AND STRATEGY |
| 3636351 | 10/13/2008 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 800 | 800.00 | RE CHUNGHWA SETTLEMENT, REVIEW DEFENDANTS' INITIAL DISCLOSURES |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 3636984 | 10/15/2008 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 800 | 800.00 | PHONE CALLS WITH OPPOSING COUNSEL AND CO-COUNSEL RE SETTLEMENT ISSUES AND MEETING, REVIEW BACKGROUND MATERIAL RE MERITS ALLEGATIONS |
| 3637268 | 10/17/2008 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 800 | 400.00 | CONFERENCES WITH DIRECT PURCHASER COUNSEL RE PROPOSED CHUNGHWA AGREEMENT |
| 3639266 | 10/29/2008 | MICHELETTI, CHRIS T. | SR. PARTNER | 0.50 | 675 | 337.50 | CONFER WITH R. SAVERI REGARDING DIRECTS POSITION ON SETTLEMENT WITH CHUNGWA |
| 3637196 | 10/31/2008 | YI, JANE N. | ASSOCIATE | 3.00 | 370 | 1,110.00 | RESEARCHED INFORMATION ON GENERAL CATHODE RAY TUBE MARKET IN CHUNGHWA CD PROVIDED BY OTHER PLAINTIFFS' COUNSEL IN LCD CASE. |
| 3645166 | 11/5/2008 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 800 | 400.00 | CONFER WITH OPPOSING COUNSEL RE POTENTIAL CHUNGHWA SETTLEMENT, OFFICE CONFERENCE AND RESEARCH RE MARKET SHARES |
| 3639768 | 11/5/2008 | YI, JANE N. | ASSOCIATE | 0.50 | 370 | 185.00 | PERFORMED RESEARCH ON CRTS MARKET FROM 2005 TO PRESENT. |
| 3645170 | 11/6/2008 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 800 | 400.00 | CONFER WITH DIRECT PURCHASER COUNSEL RE POTENTIAL CPT SETTLEMENT ISSUES, OFFICE CONFERENCE RE SAME |
| 3640873 | 11/10/2008 | YI, JANE N. | ASSOCIATE | 1.00 | 370 | 370.00 | PULLED INFO ON GENERAL CRTS MARKET FROM CHUNGHWA CD PROVIDED BY OTHER PLAINTIFFS' COUNSEL FOR SUMMARY. PER CRAIG CORBITT'S REQUEST. |
| 3641108 | 11/11/2008 | YI, JANE N. | ASSOCIATE | 4.20 | 370 | 1,554.00 | RESEARCHED GENERAL CRTS INDUSTRY. PER CRAIG CORBITT'S REQUEST. |
| 3646603 | 11/13/2008 | CORBITT, CRAIG C. | SR. PARTNER | 1.50 | 800 | 1,200.00 | PHONE CALL MARIO RE STATUS AND STRATEGY, SETTLEMENT DISCUSSIONS, RESEARCH RE LCD-CRT CONSPIRACY OVERLAP |
| 3641579 | 11/13/2008 | FU, QIANWEI | SR. ASSOCIATE | 0.50 | 410 | 205.00 | RESEARCH WHETHER ▮▮▮ |

| | | | | | | | PERFORMED RESEARCH ON [redacted] FOR |
|---|---|---|---|---|---|---|---|
| 3641574 | 11/13/2008 | YI, JANE N. | ASSOCIATE | 2.10 | 370 | 777.00 | PERFORMED RESEARCH ON [redacted] FOR QIANWEI FU. |
| 3654380 | 12/3/2008 | CORBITT, CRAIG C. | SR. PARTNER | 0.30 | 800 | 240.00 | CONFER WITH CO-COUNSEL RE STATUS AND STRATEGY, POTENTIAL SETTLEMENT ISSUES |
| 3655302 | 12/9/2008 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 800 | 800.00 | CALL WITH MARIO RE CASE STATUS AND STRATEGY, THIRD PARTY DISCOVERY, SETTLEMENT ISSUES |
| 3655412 | 12/10/2008 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 800 | 400.00 | EMAIL EXPERT RE DISCOVERY AND CLASS CERT ISSUES, OFFICE CONFERENCE RE SAME |
| 3653568 | 12/10/2008 | NEWMAN, ROBERT | PARALEGAL (3) | 0.30 | 250 | 75.00 | PREPARE REQUEST FOR WITHDRAWAL OF FURTH FIRM AND SUBSTITUTION BY ZELLE, AND DISCUSSION WITH HENRY CIRILLO RE SAME |
| 3656751 | 12/10/2008 | ZAHID, JUDITH A. | PARTNER | 1.00 | 510 | 510.00 | DISCUSS THIRD PARTY SUBPOENAS WITH APPLECON AND P. CLAYTON AND Q. FU |
| 3656770 | 12/16/2008 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 800 | 400.00 | CONFER JUDITH, CALL EXPERTS RE THIRD PARTY DISCOVERY AND CLASS CERT ISSUES |
| 3652014 | 12/17/2008 | BABIONE, MARIE J. | PARALEGAL (3) | 1.00 | 210 | 210.00 | CREATE DRAFT OF SUBPOENAS TO THIRD PARTIES PER JUDITH ZAHID. |
| 3651830 | 12/17/2008 | FU, QIANWEI | SR. ASSOCIATE | 0.20 | 410 | 82.00 | REVIEW DRAFT SUBPOENA FROM EXPERTS, COMMUNICATE IN-FIRM RE THE SAME |
| 3657298 | 12/22/2008 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 800 | 400.00 | CALL WITH MARIO RE STATUS AND STRATEGY, OFFICE CONFERENCE RE THIRD PARTY DISCOVERY, EXPERTS |
| 3656315 | 12/31/2008 | BABIONE, MARIE J. | PARALEGAL (3) | 5.00 | 210 | 1,050.00 | PREPARE SUBPOENAS AND ATTACHMENTS TO THIRD PARTIES PER PATRICK CLAYTON AND JUDITH ZAHID. |

| 3656753 | 12/31/2008 | ZAHID, JUDITH A. | PARTNER | 3.00 | 510 | 1,530.00 | DISCUSS THIRD PARTY SUBPOENAS WITH P. CLAYTON AND M. BABIONE, REVIEW AND ANALYZE LIST OF POTENTIAL THIRD PARTIES FROM APPLECON, FINALIZE SUBPOENAS TO GO OUT ON FRIDAY |
| 3656754 | 12/31/2008 | ZAHID, JUDITH A. | PARTNER | 0.90 | 510 | 459.00 | FIND MODEL EXPERT DISCOVERY STIPULATIONS, COMMUNICATE WITH L. RUSSEL RE GETTING ONE IN PLACE |
| | | TOTALS: | | 529.70 | | 229,716.50 | |

CRT: ZELLE HOFMANN VOELBEL & MASON LLP (2009 Fees)

| Index | Date | Name | Title | Hours | Rate | Amount | Narrative |
|---|---|---|---|---|---|---|---|
| 3668403 | 1/2/2009 | ZAHID, JUDITH A. | PARTNER | 2.50 | 570 | 1,425.00 | REVIEW AND ANALYZE THIRD PARTIES, COMPARE TO PRIOR NEGOTIATIONS, ETC. |
| 3660361 | 1/5/2009 | BABIONE, MARIE J. | PARALEGAL (3) | 6.50 | 220 | 1,430.00 | PREPARE NOTICE OF SERVICE OF SUBPOENAS, SUBPOENAS, AND ATTACHMENTS TO THIRD PARTIES PER PATRICK CLAYTON AND JUDITH ZAHID. |
| 3663768 | 1/5/2009 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 850 | 850.00 | RE THIRD PARTY SUBPOENAS, EXPERT WORK PLAN, EMAIL EXPERTS AND OFFICE CONFERENCE RE SAME |
| 3668407 | 1/5/2009 | ZAHID, JUDITH A. | PARTNER | 2.80 | 570 | 1,596.00 | ANALYZE THIRD PARTY SUBPOENAS, DISCUSS WITH B. ROSEWARNE, E-MAIL TO LEAD COUNSEL, ETC. |
| 3660362 | 1/6/2009 | BABIONE, MARIE J. | PARALEGAL (3) | 5.50 | 220 | 1,210.00 | PREPARE NOTICE OF SERVICE OF SUBPOENAS, SUBPOENAS, AND ATTACHMENTS TO THIRD PARTIES PER PATRICK CLAYTON AND JUDITH ZAHID, PREPARE NOTICE OF FIRM NAME CHANGE. |
| 3668715 | 1/6/2009 | CLAYTON, PATRICK B. | SR. ASSOCIATE | 0.70 | 460 | 322.00 | TELEPHONE CALL WITH M. ALIOTO RE SUBPOENAS, MEET WITH J. ZAHID RE SAME. |
| 3664530 | 1/6/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 | CONFER JUDITH RE THIRD PARTY SUBPOENAS, REVIEW SAME, STATUS AND STRATEGY |
| 3668416 | 1/6/2009 | ZAHID, JUDITH A. | PARTNER | 1.20 | 570 | 684.00 | PREPARE FOR AND ATTEND CALL WITH LEAD COUNSEL RE THIRD PARTY DISCOVERY |
| 3660363 | 1/7/2009 | BABIONE, MARIE J. | PARALEGAL (3) | 4.00 | 220 | 880.00 | REVISE NOTICE OF SERVICE OF SUBPOENAS, SUBPOENAS, AND ATTACHMENTS TO THIRD PARTIES PER PATRICK CLAYTON AND JUDITH ZAHID. |

| ID | Date | Name | Role | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 3660367 | 1/7/2009 | BABIONE, MARIE J. | PARALEGAL (3) | 1.20 | 220 | 264.00 | CROSS-CHECK LCD LIST OF THIRD PARTIES WITH CRT LIST AND INCORPORATE RESPONSIBLE ATTORNEYS, PER JUDITH ZAHID. |
| 3664921 | 1/7/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 | EMAIL AND CONFER WITH JUDITH RE THIRD PARTY SUBPOENAS, EXPERTS, CASE STATUS AND STRATEGY |
| 3668381 | 1/7/2009 | ZAHID, JUDITH A. | PARTNER | 3.80 | 570 | 2,166.00 | CALL WITH M. ALIOTO RE THIRD PARTY DISCOVERY, REVISE CHART OF COUNSEL AND SEND TO M. ALIOTO, COORDINATE ON SUBPOENAS INTERNALLY |
| 3668203 | 1/8/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 | RE PROPOSED EXPERT WORK PLAN, EMAIL MARIO RE SAME |
| 3659126 | 1/9/2009 | STEELE, MONICA J. | PARALEGAL (3) | 0.50 | 220 | 110.00 | ASSIST WITH ELECTRONIC FILING RE NOTICE OF FIRM NAME CHANGE. |
| 3668785 | 1/13/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 | RE EXPERTS, THIRD PARTY SUBPOENAS, RESEARCH RE AMENDED COMPLAINT |
| 3668797 | 1/14/2009 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 850 | 850.00 | CALL WITH MARIO RE THIRD PARTY SUBPOENAS, CASE STATUS AND STRATEGY, EXPERTS, CONFERENCE WITH JUDITH RE SAME, RESEARCH RE MARKET ISSUES, AMENDED COMPLAINT |
| 3660364 | 1/15/2009 | BABIONE, MARIE J. | PARALEGAL (3) | 0.80 | 220 | 176.00 | REVISE SUBPOENAS AND ATTACHMENTS TO THIRD PARTIES PER PATRICK CLAYTON AND JUDITH ZAHID. |
| 3668364 | 1/15/2009 | ZAHID, JUDITH A. | PARTNER | 0.30 | 570 | 171.00 | DISCUSS AND COORDINATE RE THIRD PARTY SUBPOENAS |
| 3661997 | 1/16/2009 | BABIONE, MARIE J. | PARALEGAL (3) | 4.50 | 220 | 990.00 | REVISE THIRD-PARTY SUBPOENAS AND PREPARE EXHIBITS TO NOTICE. |
| 3668728 | 1/16/2009 | CLAYTON, PATRICK B. | SR. ASSOCIATE | 1.50 | 460 | 690.00 | EXECUTE SUBPOENAS AND TRANSMIT SAME TO CO-COUNSEL, ASSIST CO-COUNSEL IN DRAFTING AND FILING NOTICE OF SUBPOENAS. |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3668841 | 1/19/2009 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 850 | 850.00 | CALL WITH EXPERT RE STATUS AND STRATEGY, WORK PLAN, MARKET RESEARCH AND RESEARCH RE AMENDED COMPLAINT |
| 3671476 | 1/21/2009 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 850 | 850.00 | EMAIL EXPERTS RE ASSIGNMENTS, RESEARCH RE CONSPIRACY ALLEGATIONS AND DEFENDANT SALES INFORMATION |
| 3668854 | 1/22/2009 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 850 | 850.00 | CALL FROM GUIDO RE DISCOVERY, STATUS AND STRATEGY, THIRD PARTY SUBPOENAS, CALL FROM JOEL SANDERS RE POTENTIAL CPT SETTLEMENT AND PROFFER SCHEDULE, EMAIL MARIO AND RESEARCH CONSPIRACY BACKGROUND RE SAME |
| 3668867 | 1/23/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 | CALL FROM MARIO RE POTENTIAL SETTLEMENT, STATUS AND STRATEGY, RESEARCH RE DEFENDANTS MARKET SHARE AND SALES |
| 3669491 | 1/27/2009 | CORBITT, CRAIG C. | SR. PARTNER | 1.20 | 850 | 1,020.00 | REVIEW DRAFT TERM LETTER RE POTENTIAL SETTLEMENT, RESEARCH RE CONSPIRACY ALLEGATIONS AND DEFENDANTS SALES INFORMATION |
| 3668548 | 1/28/2009 | NEWMAN, ROBERT | PARALEGAL (3) | 0.40 | 260 | 104.00 | DRAFT REQUEST FOR WITHDRAWAL OF FURTH FIRM AND SUBSTITUTION BY ZELLE HOFMANN FOR PLAINTIFF BARBARA CALDWELL, MEETING WITH THOMAS DOVE OF THE FURTH FIRM RE QUESTIONS PERTAINING TO DISMISSAL OF PLAINTIFF MARK PIERCE |
| 3670156 | 1/29/2009 | CORBITT, CRAIG C. | SR. PARTNER | 1.50 | 850 | 1,275.00 | OFFICE CONFERENCE RE PROPOSED SETTLEMENT, STATUS AND STRATEGY, THIRD PARTY SUBPOENAS, DEFENDANT SALES AND MARKET SHARE |

| 3670291 | 1/30/2009 | CORBITT, CRAIG C. | SR. PARTNER | 1.50 | 850 | 1,275.00 | CALLS WITH OPPOSING COUNSEL, CO-COUNSEL RE SETTLEMENT TERM LETTER, REVIEW AND SIGN SAME, RESEARCH AND OFFICE CONFERENCE RE THIRD PARTY SUBPOENAS, EXPERTS, DEFENDANT SALES AND MARKET SHARE INFO |
| 3675603 | 2/2/2009 | CORBITT, CRAIG C. | SR. PARTNER | 2.00 | 850 | 1,700.00 | RE AMENDED CHUNGHWA SETTLEMENT TERM LETTER, EMAIL OPPOSING COUNSEL AND CO-COUNSEL RE SAME AND RE PROFFER, OFFICE CONFERENCE RE SAME, RESEARCH RE DEFENDANT MARKET SHARES AND INFORMATION RE AMENDED COMPLAINT |
| 3679119 | 2/3/2009 | CLAYTON, PATRICK B. | SR. ASSOCIATE | 0.50 | 460 | 230.00 | CONFER WITH LEAD COUNSEL RE THIRD PARTY SUBPOENAS AND SERVICE THEREOF, UPDATE DEADLINES ON SUBPOENAS. |
| 3676352 | 2/3/2009 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 850 | 850.00 | EMAIL EXPERT RE WORK ASSIGNMENTS, OFFICE CONFERENCE RE POTENTIAL CPT MEETING, RESEARCH RE POTENTIAL DEFENDANTS AND OVERLAP WITH LCD CONSPIRACY |
| 3676797 | 2/4/2009 | CORBITT, CRAIG C. | SR. PARTNER | 1.50 | 850 | 1,275.00 | EMAIL OPPOSING COUNSEL, CALL WITH MARIO ET AL. RE CPT SETTLEMENT ISSUES AND PROFFER, OFFICE CONFERENCE RE SAME AND RE AMENDED COMPLAINT RESEARCH |
| 3677173 | 2/5/2009 | CORBITT, CRAIG C. | SR. PARTNER | 2.50 | 850 | 2,125.00 | EMAIL OPPOSING COUNSEL, CO-COUNSEL RE CRT PROFFER, MEETING SCHEDULE, REVIEW SETTLEMENT TERM LETTER, CALL WITH MARIO RE SAME, COURT ORDER RE DOJ STAY, BACKGROUND RE CHUNGHWA IN LCD |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 3677225 | 2/6/2009 | CORBITT, CRAIG C. | SR. PARTNER | 2.00 | 850 | 1,700.00 | CALLS WITH CO-COUNSEL AND OPPOSING COUNSEL RE CPT SETTLEMENT, TERM LETTER, PROFFER, OFFICE CONFERENCES AND EMAIL RE SAME |
| 3677299 | 2/9/2009 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 850 | 850.00 | OFFICE CONFERENCE AND REVIEW COMPLAINT, BACKGROUND IN PREPARATION FOR CPT PROFFER |
| 3677305 | 2/10/2009 | CORBITT, CRAIG C. | SR. PARTNER | 8.00 | 850 | 6,800.00 | PROFFER BY CPT, CONFERENCES WITH CO-COUNSEL RE SAME AND RE STATUS AND STRATEGY |
| 3672991 | 2/10/2009 | FU, QIANWEI | SR. ASSOCIATE | 8.20 | 460 | 3,772.00 | ATTEND CHUNGHWA PROFFER MEETING, REVIEW NEWS RELEASE |
| 3673754 | 2/10/2009 | ZAHID, JUDITH A. | PARTNER | 9.30 | 570 | 5,301.00 | ATTEND CHUNGHWA PROFFER AT GIBSON DUNN, PER LEAD COUNSEL, REVIEW AND ORGANIZE NOTES FROM DAY |
| 3679111 | 2/11/2009 | CLAYTON, PATRICK B. | SR. ASSOCIATE | 0.50 | 460 | 230.00 | CONFER WITH J. ZAHID RE DEFENDANTS' PROFFER, ATTENDANCE AT SAME, REVIEW MEETING NOTES. |
| 3677780 | 2/11/2009 | CORBITT, CRAIG C. | SR. PARTNER | 8.50 | 850 | 7,225.00 | CRT PROFFER, REVIEW NOTES, CONFERENCE WITH CO-COUNSEL RE SAME, EMAIL EXPERT RE STATUS MEETING, REVIEW AND EMAIL RE PRESS REPORTS OF DOJ INDICTMENTS |
| 3673187 | 2/11/2009 | FU, QIANWEI | SR. ASSOCIATE | 7.50 | 460 | 3,450.00 | CHUNGHWA PROFFER MEETING |
| 3673755 | 2/11/2009 | ZAHID, JUDITH A. | PARTNER | 9.00 | 570 | 5,130.00 | ATTEND CHUNGHWA PROFFER AT GIBSON DUNN, PER LEAD COUNSEL, REVIEW AND ORGANIZE NOTES FROM DAY |
| 3678708 | 2/12/2009 | CORBITT, CRAIG C. | SR. PARTNER | 3.50 | 850 | 2,975.00 | CPT PROFFER, CONFER WITH CO-COUNSEL AND OFFICE CONFERENCE RE SAME, REVIEW AND REVISE NOTES RE SAME, CONFER CO-COUNSEL AND OFFICE CONFERENCE RE EXPERTS, THIRD PARTY SUBPOENAS |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 3673317 | 2/12/2009 | FU, QIANWEI | SR. ASSOCIATE | 3.90 | 460 | 1,794.00 | ATTENDED CHUNGHWA PROFFER MEETING AND TOOK NOTES |
| 3673756 | 2/12/2009 | ZAHID, JUDITH A. | PARTNER | 4.80 | 570 | 2,736.00 | ATTEND CHUNGHWA PROFFER AT GIBSON DUNN, PER LEAD COUNSEL, REVIEW AND ORGANIZE NOTES FROM DAY, SEND ALL NOTES TO L. RUSSELL, PER HER REQUEST |
| 3678754 | 2/13/2009 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 850 | 850.00 | REVIEW AND REVISE PROFFER NOTES |
| 3677408 | 2/13/2009 | NEWMAN, ROBERT | PARALEGAL (3) | 0.30 | 260 | 78.00 | REVIEW RECORDS RE ██████ PER HENRY CIRILLO |
| 3679069 | 2/16/2009 | CORBITT, CRAIG C. | SR. PARTNER | 1.50 | 850 | 1,275.00 | EMAIL EXPERT RE MEETING AND ASSIGNMENTS, MARKET RESEARCH, REVIEW CRT PROFFER NOTES AND RESEARCH RE AMENDED COMPLAINT |
| 3679157 | 2/17/2009 | CORBITT, CRAIG C. | SR. PARTNER | 1.50 | 850 | 1,275.00 | REVIEW AND REVISE, EDIT NOTES OF CPT PROFFER, RESEARCH RE LCD OVERLAP |
| 3679084 | 2/18/2009 | CLAYTON, PATRICK B. | SR. ASSOCIATE | 0.50 | 460 | 230.00 | REVIEW STATUS OF THIRD PARTY SUBPOENAS, ADVISE M. BABIONE RE SERVICE OF SAME. |
| 3679188 | 2/18/2009 | CORBITT, CRAIG C. | SR. PARTNER | 2.00 | 850 | 1,700.00 | REVIEW AND REVISE CPT NOTES, RESEARCH RE AMENDED COMPLAINT, EXPERTS, CALL WITH MARIO RE STATUS AND STRATEGY |
| 3674323 | 2/18/2009 | FU, QIANWEI | SR. ASSOCIATE | 2.60 | 460 | 1,196.00 | (1) COMMUNICATED WITH CRAIG ESSENMACHER AND SET UP DATABASE FOR REVIEW, (2) COMMUNICATED IN FIRM RE UPCOMING AGENA, (3) DISCUSSED WITH LAUREN RE DOC REVIEW AND COMPLAINT |
| 3675116 | 2/18/2009 | ZAHID, JUDITH A. | PARTNER | 0.90 | 570 | 513.00 | STRATEGY AND PLANNING FOR EXPERT MEETING TOMORROW, DISCUSS PROJECTS WITH Q. FU |

| 3679221 | 2/19/2009 | CORBITT, CRAIG C. | SR. PARTNER | 1.50 | 850 | 1,275.00 | MEETING EXPERT AND CO-COUNSEL RE STATUS, ASSIGNMENTS, DISCOVERY, REVIEW PROFFER NOTES |
| 3674730 | 2/19/2009 | FU, QIANWEI | SR. ASSOCIATE | 1.50 | 460 | 690.00 | REVIEW DEFENDANTS' PRODUCTION, MEETING WITH JANET (EXPERT), COORDINATE NEXT WEEK'S PROFFER |
| 3674731 | 2/20/2009 | FU, QIANWEI | SR. ASSOCIATE | 0.40 | 460 | 184.00 | DISCUSS WITH LAUREN RE NEXT WEEK'S PROFFER, SET UP SPREADSHEET, LOGISTICS FOR PROFFER |
| 3678629 | 2/23/2009 | BABIONE, MARIE J. | PARALEGAL (3) | 4.50 | 220 | 990.00 | ATTEND AND TAKE NOTES AT CHUNGHWA PROFFER AT GIBSON DUNN. |
| 3679079 | 2/23/2009 | CLAYTON, PATRICK B. | SR. ASSOCIATE | 1.00 | 460 | 460.00 | REVIEW CHART OF MEETINGS FROM PROFFER WITH DEFENDANT, IN PREPARATION FOR ATTENDANCE AT NEXT PROFFER SESSION. |
| 3679720 | 2/23/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 | CALL WITH GUIDO RE STATUS AND STRATEGY, OFFICE CONFERENCE RE PROFFER CONTENT AND SCHEDULE, AMENDED COMPLAINT |
| 3675129 | 2/23/2009 | FU, QIANWEI | SR. ASSOCIATE | 3.60 | 460 | 1,656.00 | NOTE-TAKING AT GIBBSON DUNN - PROFFER |
| 3678633 | 2/24/2009 | BABIONE, MARIE J. | PARALEGAL (3) | 1.50 | 220 | 330.00 | REVISE AND CLEAN UP CHUNGHWA MEETING CHART. |
| 3679068 | 2/24/2009 | CLAYTON, PATRICK B. | SR. ASSOCIATE | 3.00 | 460 | 1,380.00 | ATTEND DEFENDANTS' PROFFER RE CONSPIRACY MEETINGS, REVISE AND CLEAN UP NOTES RE SAME, FORWARD TO Q. FU. |
| 3679796 | 2/24/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 | OFFICE CONFERENCE RE STATUS AND STRATEGY, PROFFER, SCHEDULE |
| 3678634 | 2/25/2009 | BABIONE, MARIE J. | PARALEGAL (3) | 1.50 | 220 | 330.00 | REVISE AND CLEAN UP CHUNGHWA MEETING CHART. |
| 3679853 | 2/25/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.30 | 850 | 255.00 | REVIEW DRAFT CPT SETTLEMENT AGREEMENT |
| 3676303 | 2/25/2009 | FU, QIANWEI | SR. ASSOCIATE | 3.60 | 460 | 1,656.00 | REVIEW DOCUMENTS |
| 3679913 | 2/26/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.40 | 850 | 340.00 | REVIEW PROFFER, RESEARCH RE AMENDED COMPLAINT |

| | | | | | | |
|---|---|---|---|---|---|---|
| 3677295 | 2/26/2009 | FU, QIANWEI | SR. ASSOCIATE | 1.00 | 460 | 460.00 DOCUMENT REVIEW |
| 3678632 | 2/27/2009 | BABIONE, MARIE J. | PARALEGAL (3) | 4.00 | 220 | 880.00 ATTEND AND TAKE NOTES AT CHUNGHWA PROFFER AT GIBSON DUNN. |
| 3681862 | 3/2/2009 | BABIONE, MARIE J. | PARALEGAL (3) | 2.50 | 220 | 550.00 CLEAN-UP AND REVISE NOTES TAKEN AT 02.27.09 PROFFER. |
| 3690637 | 3/2/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.40 | 850 | 340.00 RE CPT SETTLEMENT AGREEMENT, OFFICE CONFERENCE RE THIRD PARTY SUBPOENAS |
| 3681130 | 3/2/2009 | FU, QIANWEI | SR. ASSOCIATE | 5.30 | 460 | 2,438.00 REVIEW CHUNGHWA PRODUCTIONS |
| 3690691 | 3/3/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 OFFICE CONFERENCE RE PROFFER, STATUS AND STRATEGY |
| 3690698 | 3/4/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.80 | 850 | 680.00 EMAIL RE AMENDED COMPLAINT, REVIEW EVIDENCE AND PROFFER RE SAME |
| 3681876 | 3/4/2009 | FU, QIANWEI | SR. ASSOCIATE | 4.30 | 460 | 1,978.00 DOC REVIEW AND CODING |
| 3690719 | 3/6/2009 | CORBITT, CRAIG C. | SR. PARTNER | 3.00 | 850 | 2,550.00 REVIEW AMENDED COMPLAINTS AND CONFERENCE WITH CO-COUNSEL RE SAME, CALL WITH MARIO RE STATUS AND STRATEGY |
| 3690728 | 3/7/2009 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 850 | 850.00 REVIEW AMENDED COMPLAINT, PROFFER NOTES |
| 3690737 | 3/9/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 REVIEW AMENDED COMPLAINTS |
| 3684773 | 3/10/2009 | BABIONE, MARIE J. | PARALEGAL (3) | 0.50 | 220 | 110.00 PREPARE LOVELL CHANGE OF ADDRESS. |
| 3690741 | 3/10/2009 | CORBITT, CRAIG C. | SR. PARTNER | 3.00 | 850 | 2,550.00 REVIEW AND EDIT DRAFT AMENDED COMPLAINT, EMAIL COMMENTS TO LEAD COUNSEL |
| 3685026 | 3/10/2009 | STEELE, MONICA J. | PARALEGAL (3) | 0.50 | 220 | 110.00 ASSIST WITH ELECTRONIC FILING RE LOVELL CHANGE OF ADDRESS. |
| 3683863 | 3/11/2009 | FU, QIANWEI | SR. ASSOCIATE | 0.20 | 460 | 92.00 CALLED LAUREN RUSSELL TO DISCUSS COMPLAINT |
| 3693482 | 3/17/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 OFFICE CONFERENCE RE AMENDED COMPLAINT, THIRD-PARTY SUBPOENAS, SETTLEMENT AGREEMENT, EMAIL EXPERT RE STATUS. |

| 3694167 | 3/23/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 | CALL WITH LAUREN RUSSELL RE STATUS, REVIEW DRAFT SETTLEMENT AGREEMENT. |
|---|---|---|---|---|---|---|---|
| 3688863 | 3/23/2009 | FU, QIANWEI | SR. ASSOCIATE | 0.50 | 460 | 230.00 | DOCUMENT REVIEW |
| 3694338 | 3/24/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 | EMAIL FROM OPPOSING COUNSEL AND REVIEW PROPOSED SETTLEMENT AGREEMENT. |
| 3689434 | 3/25/2009 | FU, QIANWEI | SR. ASSOCIATE | 1.60 | 460 | 736.00 | DOC REVIEW |
| 3695944 | 3/30/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.40 | 850 | 340.00 | EMAIL FROM MARIO AND REVIEW CPT SETTLEMENT AGREEMENT. |
| 3705738 | 4/2/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 | EMAIL FROM CO-COUNSEL RE DEFENDANTS' JOINT VENTURES, RESEARCH RE SAME |
| 3707582 | 4/9/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.20 | 850 | 170.00 | REVIEW FINAL CPT SETTLEMENT AGREEMENT |
| 3698005 | 4/9/2009 | FU, QIANWEI | SR. ASSOCIATE | 5.00 | 460 | 2,300.00 | (1) REVIEW CRT ARTICLES SENT BY PATANE, (2) DOCUMENT REVIEW |
| 3698557 | 4/10/2009 | FU, QIANWEI | SR. ASSOCIATE | 1.50 | 460 | 690.00 | REVIEW DOCS |
| 3709445 | 4/14/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 | OFFICE CONFERENCE RE FTIA ISSUE, RESEARCH RE SAME. |
| 3709493 | 4/15/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 | CONFERENCE WITH CHRIS LOVELL RE STATUS AND STRATEGY, RESEARCH RE FTIA ISSUES |
| 3709803 | 4/21/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 | EMAIL FROM MARIO ALIOTO RE MOTIONS TO DISMISS, BRIEFING SCHEDULE, OFFICE CONFERENCE RE SAME AND RE STATUS AND STRATEGY. |
| 3709863 | 4/22/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.20 | 850 | 170.00 | EMAIL RE EXPERTS AND SCHEDULE. |
| 3711365 | 5/1/2009 | FU, QIANWEI | SR. ASSOCIATE | 0.20 | 460 | 92.00 | REVIEW DOCS |
| 3717647 | 5/4/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.20 | 850 | 170.00 | CONFERENCE WITH CO-COUNSEL RE STATUS AND STRATEGY. |
| 3711629 | 5/4/2009 | FU, QIANWEI | SR. ASSOCIATE | 8.00 | 460 | 3,680.00 | DOCUMENT REVIEW |
| 3717759 | 5/7/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.30 | 850 | 255.00 | EMAIL WITH MARIO ALIOTO RE OPPOSITIONS TO MOTION TO DISMISS, OFFICE CONFERENCE RE SAME. |
| 3718862 | 5/18/2009 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 850 | 425.00 | REVIEW MOTIONS TO DISMISS. |

# EXHIBIT 4

CRT Cases

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 7/11/2008 | Court Appearance for status conference w/ J. Conti; meeting w/ MNA before; prepare for conference. Industry research re CRT market, manufacturers, distribution chain etc., confs w/ JMP + MNA re same; review research from Essenmacher, t/c to Essenmacher re same + his assignment for further research. Finalize Rio motion + send to defense counsel, draft email re same, confs w/ MNA re same. | 5.75 425.00/hr | 2,443.75 |
| 7/15/2008 | Various emails from MNA + other indirect counsel re class reps, complaints, industry research etc. Email from Cadio re Rio motion. | 0.25 425.00/hr | 106.25 |
| 7/16/2008 | Various emails re conf w/ J. Legge, stip re electronic service, complt to Bonsignore etc. Review industry research from Essenmacher. | 0.50 425.00/hr | 212.50 |
| 7/17/2008 | Review various emails + recent filings. | 0.25 425.00/hr | 106.25 |
| 7/19/2008 | Review various emails from co-counsel; review + file class rep questionnaires. | 0.50 425.00/hr | 212.50 |
| 7/22/2008 | Emails to + from Mike Scarborough re stip on electronic service, conf w/ MNA re same. Various emails to + from indirect counsel re client questionnaires, receipts + photos of TVs. Email to Craig Essenmacher re industry research + problems viewing same. Draft + review update to indirect counsel on status of case. | 5.75 425.00/hr | 2,443.75 |
| 7/23/2008 | Conference with MNA + JMP re Judge Legge + conf scheduled for next week, class reps, Rio motion etc. Various emails to + from co-counsel re class reps, questionnaires, industry research etc. | 1.50 425.00/hr | 637.50 |
| 7/24/2008 | Email to all indirect counsel re status of case. Emails to + from various indirect counsel re case management issues. Review + edit Rio motion + draft declaration in support + proposed order. Review emails re conference call with Judge Legge next week + emails re conference among parties beforehand. Email from Mike Scarborough re stip on electronic service. | 4.75 425.00/hr | 2,018.75 |
| 7/25/2008 | Further draft + edit Rio motion, decl + proposed order, confs w/ MNA + JMP re same + incorporate MNA edits. Review direct's draft stip re discovery stay + conf w/ JMP + MNA re same. Further conf re meet + confer w/ parties next week + conf call w/ J. Legge on 7.29.08. Emails to + from Qianwei re their client + drafting CAC + confs w/ MNA + JMP re same. | 6.25 425.00/hr | 2,656.25 |
| 7/28/2008 | Conference call w/ Bruce + Guido re upcoming conf call w/ defs + DOJ, and call with Judge Legge tomorrow.  Conf call w/ defs, directs + DOJ re discovery stay. Confs w/ JMP re same. Review new indirect purchaser complaint filed by Milberg, f/n re adding to service list etc. Review GPU order denying indirect class. Review certain indirect counsel's time + expense reports. Review + f/n re notices of appearance by foreign Matsushita entities in direct case. Update list of "action items." | 3.50 425.00/hr | 1,487.50 |

CRT Cases

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 7/30/2008 | Review draft stipulation from Cadio re discovery stay, emails to + from JMP re same. Read various emails re further hearing before Judge Legge next week. Further draft + edit Rio motion + incorporate MNA edits, emails to JMP + MNA re same. Emails from + to Qianwei re status of Rio motion. | 3.00 425.00/hr | 1,275.00 |
| 7/31/2008 | Further review + edit Rio motion, conference with JMP re same + further edits, comments on same;  draft proposed order + conf w/ JMP re same, compare to proposed order from LDK Solar case. | 4.25 425.00/hr | 1,806.25 |
| 8/1/2008 | Draft, review + finalize Rio motion, incl. decl + proposed order, confs w/ JMP re same, prepare for filing + file with court. T/c to J. Legge's assistant re same. Serve motion on defs + organize courtesy copy to Judge. Emails + t/c's from Cadio + defense counsel re extension of time to respond to discovery reqs. | 6.00 425.00/hr | 2,550.00 |
| 8/4/2008 | Draft letter to Judge Legge for mediation on 8.6.08; review def + DOJ edits to stipulation re discovery stay; confs w/ MNA + JMP re same; t/c to Cadio re same. | 3.75 425.00/hr | 1,593.75 |
| 8/5/2008 | Further draft + edit letter to J. Legge; t/c's + emails to + from Cadio re same; t/c's + emails to + from MNA re same. Prepare for mediation w/ J. Legge tomorrow, review parties' letters to Judge Legge, review stip re stay of discovery, review law re discovery stays | 5.50 425.00/hr | 2,337.50 |
| 8/6/2008 | Appear before Special Master Legge for mediation w/ defense counsel + direct counsel, prepare for same, confs w/ MNA + JMP re same, f/n re same. Calendar all deadlines etc. | 5.75 425.00/hr | 2,443.75 |
| 8/7/2008 | Draft letter to APS International re service on Samtel Color. Review requirements for service + prepare package for APS. Review time reports from various plfs' counsel, conf w/ JMP re same. | 1.00 425.00/hr | 425.00 |
| 8/11/2008 | Review + edit supplemental R.26(f) report + various emails re same, conf w/ MNA re same. Review filed Report. Conf w/ MNA + JMP re service motion + discovery stay, emails to + from cadio re same. Review emails re meeting w/ Chungwha counsel. | 1.75 425.00/hr | 743.75 |
| 8/12/2008 | Conference call w/ direct plfs' counsel + defense liaison counsel re discovery stay + service motion + prepare for same; f/n re same, confs w/ MNA + JMP re same. Draft stipulation re service for Matsushita defendants + email to defense counsel re same. Review recent emails re time to Craig Corbitt etc., conf w/ MNA re same. | 4.50 425.00/hr | 1,912.50 |
| 8/13/2008 | Telephonic hearing w/ J. Legge re status of negotiations on discovery stay + service motion. Emails from J. Legge re new hearing date for discovery motion. Review Eva Cole's edits to stipulation re accepting service, emails + confs w/ MNA re same. Prepare for call w/ Eva Cole re same. | 3.25 425.00/hr | 1,381.25 |

CRT Cases

Page    11

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 8/14/2008 | Emails + t/c's to + from defense counsel re stipulations accepting service + ECF filing; emails + t/c's to + from Cadio re same; confs w/ MNA + JMP re same. Review + edit all stips + makes notes re same. Email to counsel for LP Displays re general appearance in case. Update chart re status of defendants. | 3.25 425.00/hr | 1,381.25 |
| 8/15/2008 | Various emails + t/c's to + from defense counsel re stips re accepting service, confs w/ MNA re same. Review + edit various stips. File stips w/ court + serve on Judge Legge + draft email to Judge Legge re same. Read defs' oppsn to Rio motion, conf w/ JMP re same. | 3.50 425.00/hr | 1,487.50 |
| 8/18/2008 | Legal Research re authorities cited by defendants in oppsn to Rio motion, review oppsns + make notes re Reply, confs w/ MNA + JMP re same, review mtn re service by direct purchasers in Chocolate case. Emails re meeting w/ Chungwha counsel + conf w/ MNA re same. Emails re + from Samsung counsel re stip accepting service, file same + serve on Judge Legge. | 6.50 425.00/hr | 2,762.50 |
| 8/19/2008 | Legal Research re Reply in support of Rio motion, begin drafting outline of Reply, confs w/ MNA + JMP re same. | 9.00 425.00/hr | 3,825.00 |
| 8/20/2008 | Draft Rio Reply, continue legal research re same, confs w/ MNA + JMP re same, emails re same. | 10.75 425.00/hr | 4,568.75 |
| 8/21/2008 | Draft Rio Reply, confs w/ MNA + JMP re same. Review + edit Reply brief + further research re same. Review draft stipulation re service with Irico defendants, conf w/ MNA re same, email to defense counsel re same. | 12.75 425.00/hr | 5,418.75 |
| 8/22/2008 | Draft + edit Rio Reply, t/c's + confs w/ MNA + JMP re same, further legal research re same. Finalize + file w/ court + serve on J. Legge. Finalize Irico stipulation + serve on J. Legge, emails to + from defense counsel re same. T/c from counsel for Beijng Matsushita, f/n re same. | 8.25 425.00/hr | 3,506.25 |
| 8/25/2008 | Read filed Rio Reply brief, conf w/ MNA re same, begin preparation for argument before J. Legge 8.27.08. Conf w/ MNA re further action in case, e.g. status of class reps, discovery stay motion etc. Emails + t/c's to + from co-counsel re case mgmt issues. T/c to counsel for Beijing Matsushita + f/n re same. Review + update list of action items. Review status of class reps. | 2.50 425.00/hr | 1,062.50 |
| 8/26/2008 | Preparation for hearing before J. Legge tomorrow on Rio motion; confs w/ MNA + JMP re same; review supplemental submission from defendants re same. T/c from counsel for Beijing Matsushita re accepting service + email re same. Read Order on MTD from LCD + make notes re holdings relevant to this case. | 6.25 425.00/hr | 2,656.25 |
| 8/27/2008 | Hearing by phone with Judge Legge re Rio motion + further preparation for same, confs w/ MNA + JMP re same. Finalize stip re service on Beijing Matsushita, emails + t/c's to + from defense counsel re same. Update status of defs + list of action items. Emails to plfs' counsel re case management issues. Begin work on status of class reps. | 4.50 425.00/hr | 1,912.50 |

CRT Cases

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 8/28/2008 | Review files + update status on class reps. Update chart on status of state indirect purchaser + consumer protection laws, review GPU and LCD orders on mtns to dismiss re same. | 2.50 425.00/hr | 1,062.50 |
| 8/29/2008 | Draft chart on status of state antitrust + consumer protection laws, review GPU and LCD orders re same. | 3.50 425.00/hr | 1,487.50 |
| 9/2/2008 | Conference with JMP re status of class reps + further action re same. Review + update chart re status of foreign defendants + conf w/ JMP re service on Chungwha. Email to MNA + JMP re meeting with counsel for Beijing Matsushita on 9/10/08. | 0.75 425.00/hr | 318.75 |
| 9/3/2008 | Review briefing re stay of discovery from Flash memory. | 0.50 425.00/hr | 212.50 |
| 9/4/2008 | Review papers re discovery stay in Flash + GPU; conf w/ MNA re same. | 0.75 425.00/hr | 318.75 |
| 9/5/2008 | Research re defendants + which ones have received subpoenas, review annual reports, news reports, complaints etc.; confs w/ MNA re same. T/c's to + from counsel for Philips + Toshiba re method of service, conf w/ MNA re same. Review various emails from defendants re discovery they will produce under stay, review chart from Bruce Simon re same, conf w/ MNA re same. Review draft opposition to DOJ mtn to stay + email from MNA re same. Read notice of appearance by Orion Electric + f/n re same. Emails to + from Marvin Miller re research on J. Conti's class cert opinions. | 4.75 425.00/hr | 2,018.75 |
| 9/8/2008 | Draft admin motion + proposed order re ECF + email only service; review final stip from defs re same. Review memo on J. Conti's class cert opinions from Marvin Miller + email to MNA + JMP re same. Conf w/ MNA re subpoena research. T/c from David Lisi re service on Philips, prepare summons + complt + serve by registered mail, return receipt requested. Further review + make notes on draft opposition to DOJ mtn to stay discovery. | 2.50 425.00/hr | 1,062.50 |
| 9/9/2008 | Draft further adminv mtn + proposed order re ECF + email service only, emails to + from Mike Scarborough re same. Review + edit new draft of opposn to DOJ stay mtn, conf w/ MNA re same, emails + t/c's w/ Cadio re same. Conf w/ MNA + JMP re meeting w/ BMCC tomorrow at Saveri office, prepare for same. | 2.25 425.00/hr | 956.25 |
| 9/10/2008 | Meeting with counsel for BMCC at Saveri office, confs w/ MNA + JMP re same. Meeting w/ Cadio re our edits to oppsn to DOJ mtn for discovery stay. Emails to + from J. Legge's asst re meeting today. Review notice of appearance by Thomson S.A., f/n re same + conf w/ MNA + JMP re same. | 3.25 425.00/hr | 1,381.25 |
| 9/11/2008 | Review further drafts + edits to stip & order re limited stay of discovery, emails to + from co-counsel re same, confs w/ MNA re same. Review filed stip & proposed order. | 1.50 425.00/hr | 637.50 |

CRT Cases

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 9/12/2008 | Emails to + from indirect co-counsel re time + expense reporting. | 0.25<br>425.00/hr | 106.25 |
| | Read Recorder article re Samsung + price fixing in LCD and CRT markets, conf w/ JMP re same. | 0.25<br>425.00/hr | 106.25 |
| 9/15/2008 | Review emails from defense counsel re proper parties to name as defendants in CAC; emails to + from MNA + conf w/ MNA re same; F/N re same. | 1.00<br>425.00/hr | 425.00 |
| 9/22/2008 | Emails from + to Eva Cole re doc requests. F/n re further action re defendants + proper entities, BMCC + info. | 0.25<br>425.00/hr | 106.25 |
| 9/25/2008 | Review status of defendants, which ones have complied with stip and identified properly named entities for CAC; prepare chart re same; conf w/ MNA re same, t/c w/ Cadio re same. Update list of action items. | 2.25<br>425.00/hr | 956.25 |
| 9/26/2008 | Preparation of list of action items. Review, finalize + file administrative mtn re ECF + Email Service only. | 1.50<br>425.00/hr | 637.50 |
| 9/27/2008 | Review materials from counsel for BMCC. | 0.25<br>425.00/hr | 106.25 |
| 9/29/2008 | Further prepare chart re status of defs + their responses to para. 11 of stip re discovery, conf w/ MNA re same, t/c w/ Cadio re same, review file re same. Prepare list of defs for attachment to letter, review + edit letter to defs re same, t/c's + emails to + from Cadio, Bruce etc. Read emails from Cadio to BMCC counsel re materials. Review further materials from BMCC. | 2.25<br>425.00/hr | 956.25 |
| 9/30/2008 | T/c's + emails to + from Cadio re letter to defendants, confs + emails w/ MNA re same. | 0.50<br>425.00/hr | 212.50 |
| 10/7/2008 | Meeting w/ counsel for Chungwha re settlement. Review file re same, conf w/ MNA + Craig Corbitt re same, t/c to JMP re same. Review + make notes on settlement letter + terms. Update chart re status of defendants, review file + docket re same, review research on defs re same, conf w/ MNA re same, t/c from MNA re same + email to Craig Corbitt. | 5.00<br>425.00/hr | 2,125.00 |
| 10/8/2008 | Emails from + to Qianwei re status of defendants, conf w/ MNA re same. Conf w/ MNA re settlement w/ Chungwha. | 1.00<br>425.00/hr | 425.00 |
| 10/13/2008 | Review initial disclosures from Hitachi Electronic Devices; f/n re further action + update list of action items. | 0.50<br>425.00/hr | 212.50 |
| 10/14/2008 | Conference with MNA re status of case, Chungwha settlement, discovery resps, etc. + draft email to plfs' counsel updating them on status. Review various filings by defs: notice of appearance, notice of change of name; | 2.25<br>425.00/hr | 956.25 |

CRT Cases

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 10/15/2008 | Email to plfs counsel updating them on status of case, confs w/ MNA re same + edit same. Review + file various objections + responses to the doc requests by defendants, and notices of intent to object to PJ. | 1.50 425.00/hr | 637.50 |
| 10/16/2008 | Emails + t/c's from + to Cadio re Irico defendants, emails + conf w/ MNA re same, review Irico's presentation. Various emails from co-counsel. Conf w/ MNA re status of defs + their discovery responses. Prepare for meeting w/ JMP + MNA tomorrow re same. | 1.50 425.00/hr | 637.50 |
| 10/17/2008 | Review all responses + objections to doc requests by defs + make notes re same, prepare for meeting w/ MNA + JMP. Meeting w/ MNA & JMP re status of defs + further action re same. | 2.75 425.00/hr | 1,168.75 |
| 10/19/2008 | Emails to + from counsel for LP Displays. | 0.25 425.00/hr | 106.25 |
| 10/20/2008 | Telephone call with opposing Attorney for LP Displays re appearing in indirect case, conf + emails to MNA re same. | 0.25 425.00/hr | 106.25 |
| 10/28/2008 | Draft stip re accepting service for LP Displays Int'l, email to def counsel re same, conf w/ MNA re same. Conf w/ MNA re further action on defs' discovery responses. | 0.75 425.00/hr | 318.75 |
| 10/30/2008 | Draft memo + chart re status of defs' discovery responses + further action re same, review file re same, conf w/ MNA re same. | 3.00 425.00/hr | 1,275.00 |
| 10/31/2008 | Telephone call with opposing Attorney for Thomson S.A. re personal jx challenge + substituting U.S. subsidiary, potential tolling agreement, jx discovery etc., prepare for same, confs w/ MNA re same, research re Thomson S.A. + its subsidiaries, review Essenmacher's research re same. Emails + t/c to counsel for LP Displays re accepting service in indirect case. | 2.50 425.00/hr | 1,062.50 |
| 11/3/2008 | Draft list of requests for information from Thomson S.A., conf w/ MNA + JMP re same, review materials from BMCC + Irico re same. | 2.25 425.00/hr | 956.25 |
| 11/4/2008 | Conference with MNA re informal jurisdictional discovery requests to Thomson S.A., further draft + revise same, email to defense counsel re same. Conf w/ JMP re status of initial disclosures + class reps + further action re same, review file re same. | 1.50 425.00/hr | 637.50 |
| 11/7/2008 | Conference with MNA re meet + confer with Samsung + Toshiba + further action re same. Email to + from Cadio re requests for information to Thomson S.A. + potential new defs, conf w/ MNA re same. | 1.00 425.00/hr | 425.00 |
| 11/10/2008 | T/c from Cadio re status of defs' discovery resps + further action re same; f/n re same. | 0.25 425.00/hr | 106.25 |

CRT Cases

|  | Hrs/Rate | Amount |
|---|---|---|
| 11/11/2008 Review files re responses of defs to stay order, t/c + emails to + from Cadio re same + further action re same. T/c from counsel for LG defendants re extension of time to respond to doc requests, emails re same. Email to counsel for LP Displays re appearing in indirect case. | 1.75 425.00/hr | 743.75 |
| 11/12/2008 Emails to + from Cadio re defs, confs w/ MNA re same. Prepare for call w/ Cadio & Guido tomorrow: review files re status of defs, online research re defs etc. Emails to + from counsel for LP Displays re stip accepting service, review stip. | 1.25 425.00/hr | 531.25 |
| 11/13/2008 Research re status of defs + prepare for conf call w/ Cadio & Guido re same, t/c w/ MNA re same, confs w/ MNA + JMP re same + re status of settlement negotiations w/ Chungwha + further action re same. | 7.25 425.00/hr | 3,081.25 |
| 11/14/2008 Research re status of defs + potential new defs for CAC, meeting w/ Cadio at Saveri office re same, confs w/ MNA + JMP re same. Emails + letters from defs re doc production pursuant to Stay Order, conf w/ MNA + JMP re same. | 6.75 425.00/hr | 2,868.75 |
| 11/17/2008 Research re CRT industry, ███████████████ other potential defs etc. ███████████████         ███████ Check doc productions by defs, f/n re missing docs + further action re same. | 6.25 425.00/hr | 2,656.25 |
| 11/18/2008 Research re CRT industry + defendants. Review + inventory doc production by defendants, conf w/ MNA re same. | 4.75 425.00/hr | 2,018.75 |
| 11/19/2008 Finish reviewing + making an inventory of defs' doc production. | 1.50 425.00/hr | 637.50 |
| 11/20/2008 Meeting w/ MNA + JMP re defs' doc production + further action re review of docs + doc database; conf call w/ Craig Essenmacher re same + prepare fedex package containing all docs + CDs to Craig; emails to + from Cadio re same; f/n re same. Further conf w/ MNA + JMP re further action on defs LP Displays, Philips & Thomson S.A. | 2.75 425.00/hr | 1,168.75 |
| 11/21/2008 Conference call w/ Cadio re defs' doc production + further action re same; emails re same; f/n re same. | 0.50 425.00/hr | 212.50 |
| 11/24/2008 Email to Cadio re potential new defs + research re same, review file re same, conf w/ MNA re same. T/c from Craig Essenmacher re doc review database + further action re same; f/n re same. | 0.75 425.00/hr | 318.75 |
| 11/25/2008 Emails to + from Cadio + MNA re meeting on potential new defs, conf w/ MNA re same, f/n re same. | 0.25 425.00/hr | 106.25 |
| 12/1/2008 Conference call w/ Cadio, Guido + MNA re potential new defs + filing amended complt + prepare for same, further action re defs challenging personal jx. T/c to counsel for Thomson + Philips + various emails re same, f/n re same. | 1.75 425.00/hr | 743.75 |

CRT Cases

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 12/2/2008 | Various emails re conf call with counsel for Philips for next Monday, Dec. 8th. | 0.50 425.00/hr | 212.50 |
| 12/3/2008 | Preparation for call with Craig Essenmacher re doc review database + coding protocols, review practices + memos from other cases re same, conf w/ MNA re same, email to Craig re same. | 1.75 425.00/hr | 743.75 |
| 12/4/2008 | Conference call with Craig Essenmacher re doc review + database, further prepare for same. Begin drafting memo to coders on coding protocol etc. | 2.75 425.00/hr | 1,168.75 |
| 12/5/2008 | Draft email to coders re conf call on Monday to discuss doc review database + protocol; further draft memo to coders re same. ▮▮▮▮▮▮ review + make notes on GPU opinion re same. Review stipulated & order re discovery stay re 3rd party subpoenas, conf w/ MNA re same, draft memo to MNA re requirements for serving 3rd party subpoenas. | 3.75 425.00/hr | 1,593.75 |
| 12/8/2008 | Draft memo to coders re status of case + doc review protocol, review similar memos from other cases, t/c w/ Craig Essenmacher re same, conf call w/ coders re same. Meet + confer call w/ counsel for Philips, confs w/ MNA re same + further follow up questions to Philips, make notes re same, emails to + from Cadio re same. Confs w/ MNA re 3rd party discovery + GPU opinion re Netz + Meyendorff. | 7.25 425.00/hr | 3,081.25 |
| 12/9/2008 | Draft + finalize memo to coders, t/c's + emails to + from Craig Essenmacher re same + changing codes on database. Review PENAC's discovery responses + docs + notes from call yesterday + devise a list of follow up questions, confs w/ MNA re same, emails to + from Cadio re same. | 5.50 425.00/hr | 2,337.50 |
| 12/10/2008 | Conference call w/ Cadio re list of questions for Philips, review my list + prepare for same. Review indirect LCD Second CAC re conspiracy allegations to see if anything applicable to this case, conf w/ Cadio re same. T/c from Craig Essenmacher re doc review database + any add'l work. | 1.50 425.00/hr | 637.50 |
| 12/11/2008 | Review proposed list of questions for Philips from Cadio + emails from + to Cadio re same. Emails to + from Judith + Qianwei re third party discovery. | 0.75 425.00/hr | 318.75 |
| 12/12/2008 | Further review + make notes re list of questions to Philips, call w/ Cadio re same, conf w/ MNA re same, further draft questions + emails to + from Cadio re same. | 1.75 425.00/hr | 743.75 |
| 12/16/2008 | Review emails + draft stips re expert discovery from Judith + Qianwei. | 0.25 425.00/hr | 106.25 |
| 12/23/2008 | Emails from + Judith/Qianwei re stips on expert discovery; emails from + to doc reviewers re status of review. | 0.25 425.00/hr | 106.25 |

CRT Cases

|  | | Hrs/Rate | Amount |
|---|---|---|---|
| 12/30/2008 | File Review re status of case + further action; conf w/ MNA re stipulation on expert discovery + review emails + drafts re same; emails re doc review + doc requests to defendants. | 1.00 425.00/hr | 425.00 |
|  | For professional services rendered | 528.50 | $224,612.50 |
|  | Balance due | | $224,612.50 |

Lauren C. Capurro/Trump, Alioto, Trump & Prescott, LLP
2280 Union Street
San Francisco, CA  94117

Invoice submitted to:
CRT Cases

December 02, 2015

Invoice #1

Professional Services

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 1/5/2009 | Emails from + to Judith re third party subpoenas + review draft subpoenas, requests etc., confs w/ MNA + JMP re same, t/c from Judith re same. Review files + update action items. Review research assignment from MNA re e-discovery. | 1.25 425.00/hr | 531.25 |
| 1/6/2009 | Conference call w/ Judith re third party subpoenas, emails re same, further review draft subpoenas & doc requests to prepare for same, confs w/ MNA + JMP re same. Review materials on doc review database + changes to same, tech probs w/ database + email to Craig Essenmacher re same. | 2.75 425.00/hr | 1,168.75 |
| 1/7/2009 | Review + edit third p subpoenas + notice of service of subpoena, emails re same, confs with MNA re same. Draft stip & order re expert discovery + conf w/ MNA re same, email to Cadio re same. T/c from Craig Essenmacher re re-installing doc review program + further action re same. Doc review. F/n's re further action re defendants doc productions. Email reminder to plfs' counsel re time + expense reporting + emails from + to co-counsel re same. Research re recent case law on e-discovery. | 5.50 425.00/hr | 2,337.50 |
| 1/8/2009 | Legal Research re recent cases on e-discovery, draft memo re same. Email from Cleary re withdrawing as counsel, f/n re same. Emails re conf call tomorrow w/ Cadio + Guido re expert discovery + status of defendants, conf w/ MNA re same. Emails from + to Andrew Morganti, conf w/ MNA re same. | 2.50 425.00/hr | 1,062.50 |
| 1/9/2009 | Legal Research re recent cases on e-discovery + protocol for same, draft memo re same. Conf w/ MNA re call w/ directs + changes to stip re expert discovery. | 5.25 425.00/hr | 2,231.25 |
| 1/12/2009 | Draft, review + edit stip re expert discovery, conf w/ MNA re same, emails to + from MNA + Cadio re same. Emails to + from plfs' counsel re time reporting. T/c to Andrew Morganti re doc review + future assignments. Further review | 7.25 425.00/hr | 3,081.25 |

CRT Cases

| | | Hrs/Rate | Amount |
|---|---|---|---|
| | materials + cases on e-discovery + prepare for meeting with MNA + JMP re same. Review Cleary Gottlieb's mtn to withdraw, confs w/ MNA re same, research rules re same, emails to + from Michael Lazerwitz re same, draft response to same. Update list of Action Items + which states need class reps etc., review files re same. | | |
| 1/13/2009 | Further draft, review + edit response to Cleary Gottlieb's mtn to withdraw, confs w/ MNA re same, emails + t/c's to + from direct counsel re same, file order with Corut. Emails to + from doc reviewers re status of their review. Further update list of Action Items. Doc review. | 6.25 425.00/hr | 2,656.25 |
| 1/14/2009 | Emails + t/c's to + from Cadio re stip on expert discovery + further action re jx discovery from Thomson + Philips, f/n re same. Draft + send email to Jim McGinnis re expert stip. Draft + send email to counsel for Thomson re jx discovery. Meeting w/ MNA + JMP re status of case + further action re third party subpoenas, class reps, CPT settlement, e-discovery etc., prepare for same. Emails + t/c's to + from Keith Essenmacher re Lovell Stewart time report. Doc review. Attend CPT criminal hearing. | 6.50 425.00/hr | 2,762.50 |
| 1/15/2009 | Emails to plfs' counsel re status of class reps, f/n re same. Email to counsel for Philips re status of informal discovery response. Email to doc reviewers requesting memo on doc review. Conf w/ MNA re third party subpoenas, emails to + from Judith + Patrick re same, prepare list of defendants for same. Doc review. | 6.50 425.00/hr | 2,762.50 |
| 1/16/2009 | Emails from + to counsel for Thomson re conf call next week. Emails + t/c's to + from Judith + Patrick re third party subpoenas + filing notice of intent + problems re same, t/c's to + from MNA re same. Review + edit Notice of Intent to serve subpoenas + prepare for filing. Doc review. | 3.50 425.00/hr | 1,487.50 |
| 1/18/2009 | Preparation of Notice of Intent to File Third Party Subpoenas, emails + t/c's to + from JMP re same, file w/ Court, emails to Judith + Patrick re same. | 2.25 425.00/hr | 956.25 |
| 1/19/2009 | Emails to + from doc reviewers re memos. Email from + to Renae Steiner re third party subpoenas + conf w/ MNA + JMP re same. Doc review. | 3.75 425.00/hr | 1,593.75 |
| 1/20/2009 | Conference with MNA re third party subpoenas + various issues re same, email to Judith + Patrick re same. Emails to + from counsel for Thomson re conf call tomorrow. Prepare for call w/ Andrew Morganti re class reps, conf w/ MNA + JMP re same. Doc review. | 5.00 425.00/hr | 2,125.00 |
| 1/21/2009 | Telephone call with opposing Attorney for Thomson re informal discovery requests, conf call w/ Cadio re same, conf w/ MNA re same, review file + notes to prepare for same, f/n re future meeting. T/c to Andrew Morganti re class reps, third party subpoenas etc., f/n re same + further action. T/c to Mary Kirkpatrick re class reps. Doc review. | 3.25 425.00/hr | 1,381.25 |
| 1/22/2009 | Conference with MNA + JMP re status of doc review + further action re same. | 0.25 425.00/hr | 106.25 |

CRT Cases

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 1/23/2009 | Review docs. | 2.00 425.00/hr | 850.00 |
| 1/26/2009 | Review memos re doc review from Kay + Keith. | 0.25 425.00/hr | 106.25 |
| 1/29/2009 | Voicemail from + email to + from Hank Cirillo re class reps, conf w/ JMP re same. Review withdrawal of indirect attorney + f/n re same. | 0.25 425.00/hr | 106.25 |
| 2/2/2009 | Review Chungwha settlement letter, confs w/ MNA + JMP re same, various emails re same. Review file re various case management issues + f/n re same, emails to co-counsel re same. | 0.75 425.00/hr | 318.75 |
| 2/4/2009 | Conference with MNA + JMP ███████████████████████ review file re same. | 0.75 425.00/hr | 318.75 |
| 2/5/2009 | Conference with MNA + JMP re ██████████████ + further negotiations re same, t/c to Craig Essenmacher re same. Review IRICO jx discovery responses, conf w/ JMP re same. Research re various end products that will be included in case for purposes of selecting class reps, review file re same, begin draft email to Morganti re same. Emails to + from Stephen Pelleriti re certain counsel's time reports, emails to counsel re same. Review criminal filings against Chunghwa reps in LCD. Review stip & order extending DOJ stay of discovery. | 3.75 425.00/hr | 1,593.75 |
| 2/6/2009 | Conference call w/ counsel for CPT, various emails re same, confs w/ JMP + MNA re same. Further research re brands of end products (TVs and monitors) in the case, research distribution chain etc., email to Andrew Morganti re same. Further check status of class reps + various outstanding issues re same. | 4.25 425.00/hr | 1,806.25 |
| 2/9/2009 | Emails from + to Andrew Morganti re class reps + litigate update. Review new class rep questionnaires + file. Emails to + from Stephen Pelleriti re time + expense reports, emails to other plfs' counsel re same. Various confs w/ MNA + JMP re ██████████████████████ | 2.50 425.00/hr | 1,062.50 |
| 2/10/2009 | ████████████████████████████████ Review notes + edit same. Emails from + to Morganti re litigation update. Read DOJ press release re indictment of CPT exec. | 10.25 425.00/hr | 4,356.25 |
| 2/11/2009 | ████████████████████████████████ further review + edit notes, emails re same. Confs w/ MNA + JMP re meeting + further action. Draft email to Andrew Morganti updating him on status of litigation. | 11.75 425.00/hr | 4,993.75 |
| 2/12/2009 | ████████████████████████████████ confs w/ MNA + JMP re same, confs w/ Judith, Craig + Qianwei re same + further action in case. Review + edit notes from meeting. Meeting w/ MNA + JMP re status of case, strategy for case + further action, + prepare for same, review notes + files re same. Email to APS re status of service on Samtel, email to Cadio re status of service on Thai CRT. Finalize email to Morganti re | 9.25 425.00/hr | 3,931.25 |

CRT Cases

| | | Hrs/Rate | Amount |
|---|---|---|---|
| | litigation update + conf w/ MNA re same. Check defs' doc productions, emails to + from Josh Hess re CPT's transactional data + review same. Emails to + from Qianwei + Judith re notes from meeting + doc review. Emails to + from Keith Essenmacher + Kay re doc review + memos re same. | | |
| 2/13/2009 | Meeting w/ MNA + JMP re status of defs' doc productions + further action re same, prepare for same, review file + notes + defs' productions. T/c's to + from Cadio re same. Conf w/ MNA + JMP re broad overall case strategy + f/n's re same. Conf call w/ Keith Essenmacher + Kay Pulido re doc review + more detailed memos re same. Conf call w/ Qianwei + Craig Essenmacher re doc review + database issues, conf w/ MNA re same. Emails to + from APS re status of service. | 4.75 425.00/hr | 2,018.75 |
| 2/16/2009 | ████████████ + make notes for drafting CAC.  CRT industry research re various entities ████████████ Review production by Samsung SDI re meet + confer on further production. Emails to Keith & Kay re memos on doc production. Update list of action items. Emails to + from co-counsel re class reps, review + update list re same. Download doc review database + docs to hard drive for Qianwei. | 5.00 425.00/hr | 2,125.00 |
| 2/17/2009 | Draft CAC. ███████████████████████ ████████ Various emails to + from Qianwei & Craig Essenmacher re doc review + hard drive to Qianwei. Variou emails to + from co-counsel re class reps. Review stips re third party discovery + case mgmt conf, emails to + from MNA re same. | 8.50 425.00/hr | 3,612.50 |
| 2/18/2009 | Draft CAC, further review indirect CAC in LCD, review + update proffer notes from Craig Corbitt's notes. Various emails to + from plfs' counsel re class reps. Review memos re doc review results from Kay & Keith, emails to Craig Essenmacher re same, confs + emails to MNA re same. | 8.25 425.00/hr | 3,506.25 |
| 2/19/2009 | Draft CAC, further review LCD CACs + proffer notes re same. Meeting @ Zelle with expert. Various emails + t/c's w/ Essenmacher re downloading third party reports + review same. Emails + t/c's re next week's proffer + schedule for same. | 9.75 425.00/hr | 4,143.75 |
| 2/20/2009 | Draft CAC + review CACs from LCD + proffer notes re same, confs w/ MNA + JMP re same. ███████████████████████ confs w/ JMP re same. T/c + email from counsel for BMCC re tolling agreement. | 7.50 425.00/hr | 3,187.50 |
| 2/23/2009 | ████████████████████ confs w/ Silvia re same, confs w/ MNA + JMP re same. ███████████████ Review 3rd party reports from doc review. Research re Daewoo/Orion + potential new defendants, confs w/ MNA + JMP re same + further action. ███████████████████ w/ MNA + JMP re same, t/c's + emails to + from Silvia re same. Update list of action items. | 11.25 425.00/hr | 4,781.25 |

CRT Cases

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 2/24/2009 | ██████████████████ confs w/ MNA + JMP re same. ██████ Further research re potential new defendants + Daewoo/Orion, confs w/ JMP re same. Review third party reports for CRT market info for CAC, confs w/ MNA + JMP re same. | 8.25 425.00/hr | 3,506.25 |
| 2/25/2009 | Further draft CAC: review SRAM decision re pleading unjust enrichment claims; add allegations re class reps, review file + questionnaires re same, update chart; review LCD order on mtns to dismiss + check state law claims. Draft fraudulent concealment allegations. Confs w/ MNA + JMP re same. Briefly review draft stlmt agreement with Chunghwa. Check status of class reps + emails to plfs' counsel re new reps. | 5.50 425.00/hr | 2,337.50 |
| 2/26/2009 | Further draft CAC, update state law allegations based on allegations in LCD indirect CAC, research re various state indirect purchaser laws, emails to + from Qianwei re same. Further check status of search for class reps, emails to + from plfs' counsel re same, f/n's re same. Conf w/ MNA re third party reports + review same. Online research re defendants. ████████████ conf w/ MNA re same, emails to + from Qianwei re same. | 10.25 425.00/hr | 4,356.25 |
| 2/27/2009 | ████████████████████ confs w/ MNA + JMP re same. Further draft CAC, research re defendants, research re state law allegations, add Daewoo/Orion allegations, add fraudulent concealment allegations, review third party reports for CRT market background info, confs w/ MNA + JMP re same. Conf w/ MNA + JMP re J. Conti order denying mtn to relate criminal case + assignment to Alsup + further action re same. | 13.75 425.00/hr | 5,843.75 |
| 3/2/2009 | Conference with MNA + JMP re CAC + edits to same, review + edit CAC. | 6.50 425.00/hr | 2,762.50 |
| 3/3/2009 | ████████████████ emails + t/c's re same, confs w/ MNA + JMP re same. Various emails to + from plfs' counsel re doc review, ████████ new class reps etc. Update list of action items. Review second order on mtns to dismiss from LCD | 1.75 425.00/hr | 743.75 |
| 3/4/2009 | Conference with MNA + JMP re CAC, status of class reps etc. Conf call w/ Bob Methvin + LP re new class reps, emails re same, f/n re same, review class rep questionnaires + update chart re status of class reps. | 2.00 425.00/hr | 850.00 |
| 3/5/2009 | Conference call with Joel Sanders & Rachel Brass ████████ confs w/ MNA + JMP re same, review CAC + make changes, t/c's + emails to + from Rachel re same. Emails to + from plfs' counsel re class reps & Hawaii claims, research re same. Further review class rep questionnaires + proof of purchase, emails to plfs counsel re status + requesting more info. Further review LCD and Chocolate orders on MTD + make notes of which states were dismissed/survived, update chart re same. | 9.00 425.00/hr | 3,825.00 |
| | Emails from + to Janet Netz re 3rd party reports. | 0.50 425.00/hr | 212.50 |

CRT Cases

| | Hrs/Rate | Amount |
|---|---|---|
| 3/6/2009 Review direct purchaser draft CAC, confs w/ MNA + JMP re same. Emails to + from Cadio + Craig Corbitt re CACs + meeting this afternoon. Emails to + from co-counsel re Hawaii claim, research re different code sections, read case from Hawaii Supreme Ct, conf w/ MNA + JMP re same. Meeting at Saveri office re CACs. Review materials from Philips re their position on why they are not proper defendants. Conf w/ MNA + JMP re meeting with direct purchasers, review CACs again + note differences, + edit our CAC. Review + edit proffer notes + send to Craig Corbitt. Various emails to + from plfs' counsel re status of class reps. | 9.25 425.00/hr | 3,931.25 |
| 3/9/2009 Draft, review + edit CAC. Conf w/ JMP + MNA ███████████ ███████████████████████ Email to Essenmacher re pulling doc on cost of manufacturing CRT TVs and monitors. Emails to + from Morganti re class reps + Chocolate Order. Various emails to + from plfs' counsel re status of class reps + questionnaires etc. | 3.75 425.00/hr | 1,593.75 |
| 3/10/2009 Conference with MNA + JMP re CAC. Various emails to + from plfs' counsel re class reps. Emails to Essenmacher re pulling cost doc from database, t/c to Jordan Heller re same. Email from + to Craig Corbitt re comments/edits to CAC. | 0.75 425.00/hr | 318.75 |
| 3/11/2009 Draft, review + edit CAC, update defendants, add plaintiffs, update state law claims, ███████████████████ f/n's re same, review direct complaint re same, review edits/comments from Corbitt re same. Various emails re class reps. T/c from Qianwei re CAC, doc review, class reps etc. | 9.00 425.00/hr | 3,825.00 |
| 3/12/2009 Further review, re-draft + edit CAC, various emails re same, further check LCD + Chocolate orders re state law claims, confs w/ MNA + JMP re same. Further online industry research re Chunghwa + CRT industry. | 7.75 425.00/hr | 3,293.75 |
| 3/13/2009 Conference with MNA + JMP re CAC, prepare list of issues for same. Further review, draft + edit CAC. T/c's w/ Cadio, Mike + Guido re ███████████ ██████████████████████ confs w/ MNA + JMP re same. Various emails to + from plfs counsel re class reps + questionnaires. T/c w/ lawyer for HI rep re whether to allege antitrust or consumer prot claim, research re same, f/n re same, conf w/ MNA + JMP re same. Email revised CAC to Joel Sanders + direct + indirect counsel. | 10.75 425.00/hr | 4,568.75 |
| 3/14/2009 Various emails from + to plfs' counsel re CAC + class reps. T/c from MNA re same. | 0.75 425.00/hr | 318.75 |
| 3/15/2009 Review + edit CAC, t/c from MNA re same, t/c + email to Dan Karon re same. | 3.50 425.00/hr | 1,487.50 |

CRT Cases

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 3/16/2009 | Draft, review + finalize CAC. Various emails + t/c's to + from co-counsel + direct counsel re same. T/c's from MNA + JMP re same. T/c + emails with Essenmacher re cost docs, review same, conf w/ MNA re same. Review filed direct purchaser CAC. File indirect CAC with court. | 10.25 425.00/hr | 4,356.25 |
| 3/17/2009 | Preparation of list of action items following filing of CAC, conf w/ MNA re same. | 0.50 425.00/hr | 212.50 |
| 3/18/2009 | Prepare proposed briefing schedule on mtns to dismiss, conf w/ MNA re same. Read email from Mike Lehmann re ███████████████████ ████████████ | 1.75 425.00/hr | 743.75 |
|  | Conf w/ MNA + JMP re draft Chunghwa settlement agreement + edits to same, review + edit same. | 1.00 425.00/hr | 425.00 |
| 3/19/2009 | Conference with MNA + JMP re Chunghwa settlement agreement + edits to same, review + edits same, emails re same + send to Joel Sanders. Various emails from plfs' counsel re CAC + class reps. | 1.75 425.00/hr | 743.75 |
| 3/23/2009 | Conference call w/ defendants re briefing schedule on mtns to dismiss + review various emails re same. Further call w/ Jeff Kessler re same. Confs w/ MNA + JMP re same + further action in case. Prepare amended summons. Update chart on defendants with new defendants and their info. Prepare chart on new defendants + recommendations for service on each, review Conti's order on Rio motion re same. | 4.25 425.00/hr | 1,806.25 |
| 3/24/2009 | Preparation of Amended Summons, conf w/ MNA re same, call clerk re same, travel to court + file same. Conf w/ MNA re chart on service of new defendants + need to serve Daewoo, Samtel + Thai CRT default, email to Cadio re same. | 2.50 425.00/hr | 1,062.50 |
|  | Review email from Joel Sanders re edits to settlement agreement, confs w/ MNA + JMP re same, t/c to Sanders re same. F/n re further action. | 0.75 425.00/hr | 318.75 |
| 3/25/2009 | Research re Samtel + Indian Central Authority, emails + t/c's to APS re status of service on Samtel. Research re Daewoo + service in S. Korea + requirements for same. Conference call w/ Cadio re service on new defendants, confs w/ MNA re same + emails re same.  Update list of action items, conf w/ Cadio re same. | 4.75 425.00/hr | 2,018.75 |
|  | Emails + t/c with Joel Sanders re Chunghwa settlement agreement, confs w/ MNA re same, review + edit same. | 0.50 425.00/hr | 212.50 |
| 3/26/2009 | Emails + t/c with APS Int'l re status of service on Samtel, read declaration re same, research re Indian Central Authority + rules for default judgments under Hague, draft + send email to Indian Central Authority re service on Samtel, emails + t/c's to + from Cadio re same + Thai CRT, confs w/ MNA + JMP re same. Further research re Samtel. Conference w/ MNA + JMP re settlement agreement with Chunghwa + further edits to same, emails re same. Review | 6.75 425.00/hr | 2,868.75 |

CRT Cases                                                                                                    Page      8

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
|  | draft stip from Eva Cole re briefing schedule on the MTD. Draft + send email to Dae Lim re translation of CRT CAC into Korean for service on Daewoo. |  |  |
| 3/27/2009 | Research re cost of translations for negotiations with Dae, emails to JMP + MNA re same, conf re same, draft email with counter proposal to Dae. Research re Samtel + company execs, review Annual Report, draft email to company representative + send copies of Summons, Complaint etc. by email, confs w/ MNA re same. T/c w/ Cadio re service on Samtel + stip re briefing schedule, confs w/ MNA re same, draft email to direct counsel re same. Draft email re briefing schedule + our proposal for same, t/c from MNA re same. | 5.50 425.00/hr | 2,337.50 |
|  | Review Joel Sander's email re settlement agreement + review changes to same, conf w/ MNA re same. | 0.25 425.00/hr | 106.25 |
| 3/29/2009 | Draft email to direct counsel re briefing schedule + our proposal for same + conf call for tomorrow, emails to + from Joe re same. Review emails from Dae. | 0.50 425.00/hr | 212.50 |
| 3/30/2009 | T/c + emails to + from Dae re translation of summons + complaint into Korean, draft confirming letter to Dae + send with check for translation, confs w/ MNA + JMP re same. Review various industry articles re CRT + Chunghwa. Various emails re briefing schedule, review Bruce Simon's edits to defendants' proposed stip, conf call w/ Cadio, Guido & Bruce re same. | 3.25 425.00/hr | 1,381.25 |
|  | Further edits to Chunghwa settlement agmt + conf w/ MNA re same. | 0.50 425.00/hr | 212.50 |
| 3/31/2009 | Draft letter to CEO of Samtel Color, Ltd. re service on Samtel + attempts to serve through Indian Central Authority, conf w/ MNA + JMP re same, send package of summons, complaint + letter by FedEx. Conf w/ JMP re doc review databases + what to use for this case. Various emails + t/c's w/ Cadio + confs w/ MNA re briefing schedule on MTD, review + edit draft stipulation re briefing schedule from Bruce Simon. Read filed AGC brief from Filters to prepare for mtns to dismiss in this case. | 4.50 425.00/hr | 1,912.50 |
|  | Finally review + edit Chunghwa settlement agreement, confs w/ MNA + JMP re same, draft email to Joel Sanders re same. | 0.75 425.00/hr | 318.75 |
| 4/1/2009 | Conferences + emails with MNA, Cadio, Bruce & Guido re stip on briefing for mtns to dismiss, confs + emails to + from MNA + JMP re same, review + edit stip re same. Emails to + from Rachel Brass re ▮▮▮▮▮ T/c to Dae re translation of CAC into Korean. Research re 9th Cir law on personal jx. | 4.75 425.00/hr | 2,018.75 |
| 4/2/2009 | Preparation of formal Request for Service of Daewoo under Hague, research online for rules re same. Email to Dae re translations, time reports etc. Research re FTAIA + personal jx in 9th Circuit. Review files + draft list of new defendants + status. | 3.25 425.00/hr | 1,381.25 |
| 4/3/2009 | Meeting ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ conf w/ MNA + JMP re same. | 4.75 425.00/hr | 2,018.75 |

| | | Hrs/Rate | Amount |
|---|---|---|---|
| 4/3/2009 | Conf call w/ Jeff Kessler, Eva Cole + the directs re stip on briefing for MTD. Meeting w/ MNA + JMP re further action briefing schedule + serving new defendants, draft email to defense counsel asking them to accept service for new foreign defendants, review Conti & Legge orders on Rio motion re same + briefing re same. Briefly review translations of CAC & Summons from Dae, emails to + from Dae re same. | 3.00<br>425.00/hr | 1,275.00 |
| 4/5/2009 | Various emails to MNA, JMP + Cadio re draft email/letter to defendants requesting that they accept service. | 0.50<br>425.00/hr | 212.50 |
| 4/6/2009 | Preparation of copies of CAC, Amended Summons etc. for service on new domestic defendants, mail serve on domestic defendants. Prepare form USM-94 for requesting service on Daewoo. Review finalized translations of CAC + Summons from Dae, emails to + from Dae re same. Further draft + review letter to defense counsel re accepting service, t/c's + emails to + from Cadio re same, confs w/ MNA re same. | 5.50<br>425.00/hr | 2,337.50 |
| 4/7/2009 | Preparation of summons, complaint + translations etc. for service on Daewoo, finalize Form USM-94 (formal request for service) + check rules re same, draft cover letter re same, various emails + t/c's to + from Cadio re same, send via FedEx. T/c with Cadio re stip on briefing schedule, conf w/ MNA re same. Begin drafting letter to J. Legge re plfs' proposal, conf w/ MNA + Cadio re same. Draft letter to Dae re payment for translation, emails re same + time keeping. Research re FTAIA. Conf w/ MNA re further action in case, ████████ ████████ Review file re service on Samtel + check status of same with FedEx, call FedEx re same. Draft reminder email to indirect plfs' counsel re time reports due on 4/15. Email from Jim McGinnis re accepting service for Samsung SDI entities, emails to + from MNA + Cadio re same. | 6.00<br>425.00/hr | 2,550.00 |
| 4/8/2009 | T/c's + emails to + from Cadio re service on various new defendants + foreign service on Daewoo. Draft letter to J. Legge re proposal for order on briefing schedule, conf w/ MNA  re same. Read new 9th Cir. opinion on Twombly, conf w/ MNA re same. Review list of indirect counsel + note which ones have paid assessment, conf w/ JMP re same. | 6.25<br>425.00/hr | 2,656.25 |
| 4/9/2009 | Finalize draft letter to Legge re briefing proposal, t/c's + emails to + from Cadio re same. Various emails + t/c's with Cadio, MNA + Eva Cole re procedure for submitting our proposals to Legge + calling his clerk re same. T/c w/ counsel for Toshiba re new defendants + whether they are legal entities, f/n re same. Review file re new indirect purchaser counsel, prepare service list + send email re time + expense reporting. Review executed Chunghwa settlement agreement from Joel Sanders. | 3.25<br>425.00/hr | 1,381.25 |
| 4/10/2009 | Conference call w/ Cadio + Guido re briefing schedule + procedure for submitting proposals to Legge, further conf call w/ Eva Cole + J. Legge's clerk re same. Review Saveri edits to letter brief to Legge, conf w/ MNA re same, further review + edit letter, various t/c's + emails with Cadio re same. Further review + draft proposed Order re briefing schedule, review orders from other cases, confs w/ MNA + Cadio re same. Draft email to indirect plfs' counsel re | 6.75<br>425.00/hr | 2,868.75 |

CRT Cases

| | | Hrs/Rate | Amount |
|---|---|---|---|

| | status of case + need for assessments, conf w/ MNA + JMP re same, + update indirect plfs' counsel service list. Conf w/ MNA re responses from defense counsel re accepting service on behalf of foreign defendants, various letters + emails from defense counsel re same, f/n re same. Various emails from + to indirect counsel re time & expense reports, review same.  Begin research re ██████████████ conf w/ MNA re same. | | |
|---|---|---|---|
| 4/13/2009 | Send email to indirect counsel re assessments + work assignments, various emails from indirect counsel responding to same. Various emails + t/c's re conf call w/ J. Legge this Friday, + calendar same. Various emails + t/c's w/ Cadio re letter to Legge re briefing schedule + Flash Memory order, review + edit letter + stip + confs w/ MNA re same. Research re law on Special Masters + dividing costs of same, conf w/ MNA re same. Conf w/ MNA + JMP re status of case: defendants accepting service, letter to Legge etc. | 7.25 425.00/hr | 3,081.25 |
| 4/14/2009 | Further review + edit letter to Legge + proposed order re briefing on MTD, t/c's + emails to + from Cadio + Esther re same, confs w/ MNA re same. Read defendants' letter brief to Legge + proposed Order re briefing on MTD. Finish research ████████████ + conf w/ MNA re same. Research re FTAIA, read cases re same. Various emails to + from indirect counsel re assessments + helping on MTD, review opps to MTD from Plastic Additives from Dan Karon. Read letter from Philips + Hitachi re new defendants + refusal to accept service, research re Shenzhen Hitachi, follow up with other defendants who have not responded re accepting service, conf w/ MNA re same, update chart re defendants. | 7.50 425.00/hr | 3,187.50 |
| 4/15/2009 | Draft tolling agreement with Tatung Company, conf w/ MNA re same. Follow up w/ counsel for Hitachi, Philips & IRICO re new defendants + accepting service, t/c's + emails to + from Cadio re same. Further research re ████████ ███████████████████ conf w/ MNA re same. F/n re further action on various issues in case. | 2.75 425.00/hr | 1,168.75 |
| 4/16/2009 | Telephone call with opposing Attorney for Philips & IRICO re accepting service, emails re same, t/c's + emails to + from Cadio re same, conf w/ MNA re same. Review + re-draft tolling agreement w/ Tatung Company, confs w/ MNA re same, emails re same. | 2.50 425.00/hr | 1,062.50 |
| 4/17/2009 | Telephonic hearing before J. Legge re briefing on mtns to dismiss, conf w/ MNA re same, email to JMP re same. | 0.50 425.00/hr | 212.50 |
| | Research re tolling agreements from other cases, e.g. Ca. Pub. Paper & Filters, further review + edit tolling agreement w/ Tatung + conf w/ MNA re same.  Review order by J. Hamilton in DRAM case by Sun re FTAIA, further research re FTAIA + defendants' argument in this case.Various calls + emails re assessments + helping with briefing on mtns to dismiss. | 2.50 425.00/hr | 1,062.50 |
| 4/20/2009 | Conference with JMP re work assignments to indirect plfs counsel. T/c + email from counsel for Toshiba re viability of new Toshiba defendants. Confs + emails w/ MNA re ███████████████████ + further action re same, | 1.75 425.00/hr | 743.75 |

# EXHIBIT 5

CRT: ZELLE HOFMANN VOELBEL & MASON LLP (2013 Fees)

| Index | Date | Name | Title | Hours | Rate | Amount | Narrative |
|-------|------|------|-------|-------|------|--------|-----------|
| 4222928 | 1/1/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 5.00 | 535 | 2,675.00 | PANASONIC MERITS DEPOS PREP (KINOSHITA AND IWAMOTO) - REVIEW DOCUMENTS AND LOGISTICS AND TRANSLATOR ISSUE |
| 4214836 | 1/2/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 7.50 | 650 | 4,875.00 | REVIEW OPPOSITION TO CLASS CERTIFICATION AND BEGIN REVIEWING CASE LAW FOR REPLY, VARIOUS COMMUNICATIONS WITH CO-COUNSEL RE CASE ISSUES AND STATUS, CONFERENCE WITH Q. FU AND J. ZAHID RE REPLY BRIEF, CORRESPOND WITH CO-COUNSEL AND EXPERTS RE ASCERTAINABILITY ISSUES |
| 4225922 | 1/2/2013 | CORBITT, CRAIG C. | SR. PARTNER | 3.00 | 875 | 2,625.00 | MEETING WITH CA AG RE CASE STATUS, REVIEW WILLIG EXPERT REPORT, OFFICE CONFERENCES RE CLASS CERT MOTION AND REPLY, CASE STATUS AND STRATEGY |
| 4209948 | 1/2/2013 | FU, QIANWEI | SR. ASSOCIATE | 0.90 | 580 | 522.00 | CONFERENCE CALL WITH JAZ AND MIKE CHRISTIAN RE CLASS CERT REPLY BRIEF AND RELATED ISSUES, EMAIL COMM WITH BOB GRALEWSKI RE PLFS ISSUES, EMAIL COMM WITH STAFF RE FILING OF REDACTED VERSIONS OF THE CLASS CERT IN ECF |
| 4222930 | 1/2/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | PANASONIC MERITS DEPOS KINOSHITA/IWAMOTO - PREP/LOGISTICS/TRANSLATION ISSUE |
| 4227048 | 1/2/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 2.80 | 800 | 2,240.00 | REVIEW OF ORDER ON MOTION TO AMEND, REVIEW AND ANALYSIS OF OPPOSITION TO CLASS CERT MOTION, |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4213785 | 1/2/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 3.40 | 275 | 935.00 | CULL ELECTRONIC COPIES OF HOT AND RELEVANT DOCUMENTS FOR IWAMOTO DEPOSITION, PER D. LAMBRINOS, FROM |
| 4212550 | 1/2/2013 | ZAHID, JUDITH A. | PARTNER | 6.80 | 675 | 4,590.00 | CONFERENCE CALL WITH Q. FU AND M. CHRISTIAN RE DRAFT OF REPLY BRIEF, OPEN ISSUES RE CLASS REPRESENTATIVE INFORMATION AND WORKING WITH CO-COUNSEL RE SAME, DISCUSSION WITH M. CHRISTIAN RE STRATEGY FOR RESPONDING TO REPLY AND OPPOSITION TO DAUBERT MOTION, CONTINUE READING NEW DAUBERT CASES, MEETING WITH CA AG ATTORNEYS |
| 4215169 | 1/3/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 7.30 | 650 | 4,745.00 | PREPARE FOR AND ATTEND CONFERENCE CALL WITH APPLECON RE VARIOUS ISSUES FOR REPLY BRIEF AND MOTION TO STRIKE EXPERT, CONFERENCE WITH J. ZAHID RE SAME, WORK ON REPLY BRIEF, CORRESPOND WITH APPLECOND RE ASCERTAINABILITY ISSUES. |
| 4226037 | 1/3/2013 | CORBITT, CRAIG C. | SR. PARTNER | 3.00 | 875 | 2,625.00 | REVIEW DEFENDANT OPPOSITION TO CLASS CERT, DAUBERT MOTION, WILLIG REPORT, COURT ORDER RE ILLINOIS BRICK ISSUE, OFFICE CONFERENCES AND EMAIL RE STATUS AND STRATEGY, CONFERENCE CALL WITH CO-PLAINTIFFS COUNSEL RE SAME |
| 4222935 | 1/3/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | PANASONIC MERITS DEPOS - PREP/RESEARCH/DOC REVIEW/LOGISTICS - CALL WITH MARIO AND LAUREN |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4227050 | 1/3/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 1.70 | 800 | 1,360.00 | CONFER WITH C. CORBITT REGARDING STATUS AND STRATEGY, REVIEW OF ORDER ON MOTION TO AMEND, REVIEW AND ANALYSIS OF OPPOSITION TO CLASS CERT MOTION, PREPARE COMPARATIVE ANALYSIS OF SRAM, DRAFT SUMMARY OF SAME |
| 4213796 | 1/3/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 1.00 | 275 | 275.00 | REVIEW PANASONIC 30(B)(6) DEPOSITION TRANSCRIPTS FOR TESTIMONY RE MANUALS, PER M. CHRISTIAN, FOR USE AS ASCERTAINABILITY ARGUMENT IN CLASS CERTIFICATION REPLY BRIEF, COORDINATE PRINTING OF ADDITIONAL HOT DOCUMENTS RE IWAMOTO IN PREPARATION FOR REVIEW OF SAME BY D. LAMBRINOS FOR IWAMOTO DEPOSITION, REVIEW ANNOTATED LIST OF PANASONIC WITNESSES FOR INFORMATION RE IWAMOTO, AND COMPILE DOCUMENTS LISTED IN SAME FROM RELATIVITY AND OTHER SOURCES, PER D. LAMBRINOS, IN PREPARATION FOR IWAMOTO DEPOSITION |
| 4225764 | 1/3/2013 | RANKIE, HEATHER T. | ASSOCIATE | 7.00 | 480 | 3,360.00 | FOR USE IN CLASS CERT. REPLY BRIEF, PER JAZ AND MSC REQUEST, GATHER AND REVIEW AUTHORITY RE SUPPORT AT CLASS CERT. FOR ███████████ |

| | | | | | | |
|---|---|---|---|---|---|---|
| 4212558 | 1/3/2013 | ZAHID, JUDITH A. | PARTNER | 6.40 | 675 | 4,320.00 | DRAFT OUTLINE OF ARGUMENTS RAISED BY DEFENDANTS IN THEIR BRIEFING RELATED TO NETZ, REVIEW PRELIMINARY DRAFTS OF MEMORANDA FROM APPLECON RE SPECIFIC RESPONSES TO DEFENDANTS' ARGUMENTS, CONFERENCE CALL WITH M. CHRISTIAN AND APPLECON'S JOSH PALMER RE INITIAL RESPONSES TO DAUBERT MOTION, CONFERENCE CALL WITH ALL PLAINTIFF GROUPS RE DISCOVERY AND OTHER COORDINATION, CONTINUE READING CASE LAW AND FRAMING ARGUMENTS FOR DAUBERT RESPONSE |
| 4215171 | 1/4/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 6.80 | 650 | 4,420.00 | WORK ON RESEARCHING REPLY BRIEF, REVIEW UPDATES TO CASE LAW RELEVANT TO CLASS CERTIFICATION AND IMPACT ISSUES. |
| 4222937 | 1/4/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.00 | 535 | 1,605.00 | CRT DEPO PREP - KINOSHITA/IWAMOTO - LOGISTICS - CALL WITH LAUREN, COMPARISON OF PANASONIC AND TOSHIBA WITNESS LISTS, LOGISTICS |
| 4227052 | 1/4/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 1.50 | 800 | 1,200.00 | MEET WITH J. ZAHID REGARDING REGARDING STATUS AND STRATEGY, MEET WITH J. ZAHID AND M. CHRISTIAN REGARDING SAME, REVIEW AND ANALYZE REPLY ISSUES AND ARGUMENTS |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4213813 | 1/4/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 0.70 | 275 | 192.50 | REVIEW RECENT LETTERS TO AND FROM PANASONIC COUNSEL, AND EMAILS BETWEEN D. LAMBRINOS AND D. BIRHKAEUSER, AND PREPARE LIST OF POTENTIAL ADDITIONAL PANASONIC MERITS DEPONENTS, PER D. LAMBRINOS, DISCUSSION WITH D. LAMBRINOS RE FURTHER DOCUMENT REVIEW AND PREPARATIONS FOR THE KINOSHITA, IWAMOTO AND NISHIYAMA MERITS DEPOSITIONS |
| 4212556 | 1/4/2013 | ZAHID, JUDITH A. | PARTNER | 5.80 | 675 | 3,915.00 | DRAFTED EMAIL FOR CCC TO SEND TO KEN GALLO RE REQUESTING SHARP'S DISPLAYSEARCH REPORTS TO BE PRODUCED IN CRTS, EMAILS WITH APPLECON RE LOGISTICS AND DIVISIONS OF LABOR FOR UPCOMING BRIEFING, EMAILS WITH LEAD COUNSEL RE DEPOSITION SCHEDULING, CONTINUE READING CASE LAW AND FRAMING ARGUMENTS FOR DAUBERT RESPONSE |
| 4227055 | 1/5/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 0.50 | 800 | 400.00 | REVIEW AND ANALYZE MEMO REGARDING NETZ, DRAFT EMAIL TO M. CHRISTIAN REGARDING SAME |
| 4215174 | 1/7/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 2.90 | 650 | 1,885.00 | REVIEW MATERIALS FROM CTM RE █ CORRESPOND WITH CO-COUNSEL RE DEPOSITIONS, CONFERENC EWITH J. ZAHID RE AME,, WORK ON REPLY BRIEF, MEET WITH P. CLAYTON AND J. ZAHID RE ALLOCATION OF WORK ON REPLY BRIEF |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4226048 | 1/7/2013 | CLAYTON, PATRICK B. | SR. ASSOCIATE | 4.00 | 580 | 2,320.00 | PER REQUEST OF J. ZAHID AND M. CHRISTIAN, REVIEW CLASS CERT FILINGS AND RECENT DEVELOPMENTS TO ASSIST WITH CLASS CERT REPLY BRIEF. |
| 4223550 | 1/7/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.50 | 535 | 1,872.50 | KINOSHITA DEPO - LOGISTICS/REVIEW DOCUMENTS/CORRESPONDENCE |
| 4214763 | 1/7/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 4.40 | 275 | 1,210.00 | REVIEW SEVERAL LETTERS AND EMAILS AND ADD INFORMATION RE EMPLOYMENT HISTORY OF PROSPECTIVE PANASONIC WITNESSES TO LIST RE SAME, PER D. LAMBRINOS, OBTAIN SELECTED CHUNGHWA DOCUMENTS FROM RELATIVITY RE SHINICHI IWAMOTO, PER D. LAMBRINOS, IN PREPARATION FOR IWAMOTO DEPOSITION, OBTAIN FROM WESTLAW 16 OPINIONS AND REVIEW SAME FOR ███████ PER M. CHRISTIAN, IN PREPARATION OF CLASS CERTIFICATION REPLY, LOCATE CLASS CERTIFICATION OPINION ██████ PER J. ZAHID, FORMAT AND PRINT OUT SET OF HOT DOCUMENTS FLAGGED FOR IWAMOTO DEPOSITION, PER D. LAMBRINOS |
| 4210740 | 1/7/2013 | UMBERT, JOSE M. | PARTNER | 0.70 | 625 | 437.50 | DISCUSSION WITH J. ZAHID AND EMAIL TO L. RUSSELL RE ISSUES WITH ██████ AT PRELIMINARY APPROVAL STAGE, IN PREPARATION FOR HEARING ON AG'S PROPOSED SETTLEMENT |

| | | | | | |
|---|---|---|---|---|---|
| 4212633 | 1/7/2013 | ZAHID, JUDITH A. | PARTNER | 4.20 | 675 | 2,835.00 | MULTIPLE CALLS WITH J. PATANE, M. ALIOTO, AND THE CA AG RE THE LG SETTLEMENT HEARING, EMAILS RE SAME INCLUDING TO AND FROM C. CORBITT, REVIEW PRELIMINARY APPROVAL PAPERS FOR HEARING BEFORE J. KRAMER, DISCUSSIONS RE DEPOSITION SCHEDULING AND COORDINATION AMONG PLAINTIFF GROUPS |
| 4215186 | 1/8/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 1.00 | 650 | 650.00 | INTERNAL COMMUNICATIONS RE DISCOVERY ISSUES AND WORK ALLOCATION, WORK ON REPLY BRIEF. |
| 4223702 | 1/8/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | PREP FOR KINOSHITA AND IWAMOTO DEPOSITIONS, NISHIYAM DEPO LOGISTICS |
| 4227171 | 1/8/2013 | MANDEL, ERIC P. | DISCOV COUNSEL | 3.20 | 640 | 2,048.00 | DOWNLOAD, REVIEW AND ANALYZE HITACHI BACKUP TAPE INFORMATION. |
| 4227058 | 1/8/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 0.30 | 800 | 240.00 | CONFER WITH J. ZAHID REGARDING CASE STATUS AND STRATEGY |
| 4214777 | 1/8/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 0.80 | 275 | 220.00 | REVIEW SEVERAL ADDITIONAL OPINIONS FOR ███████ PER M. CHRISTIAN, IN PREPARATION OF CLASS CERTIFICATION REPLY, COMPILE SELECTED HOT DOCUMENTS RE STEVE IWAMOTO FROM RELATIVITY, PER D. LAMBRINOS, IN PREPARATION FOR IWAMOTO DEPOSITION |

| ID | Date | Name | Role | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4212635 | 1/8/2013 | ZAHID, JUDITH A. | PARTNER | 8.30 | 675 | 5,602.50 | FINISH REVIEWING PLEADINGS IN OBJECTION TO CA AG SETTLEMENT WITH LG RE RELEASE OF PARENS CLAIMS, ATTEND PRELIMINARY APPROVAL HEARING BEFORE J. KRAMER, REVIEW RECENT CASE DECISIONS, DISCUSS WITH M CHRISTIAN, START DRAFTING FRAMEWORK OF DAUBERT OPPOSITION, MUCH DISCUSSION RE STRATEGY WITH M. ALIOTO/J. PATANE, CALLS WITH CCC. |
| 4215187 | 1/9/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 3.40 | 650 | 2,210.00 | WORK ON CRT REPLY, VARIOUS COMMUNICATIONS WITH B. GRALEWSKI RE ASCERTAINABILITY ISSUES. |
| 4226857 | 1/9/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.00 | 535 | 1,605.00 | NISHIYAMA - COORDINATION EMAILS WITH DAP, CALL WITH DAPS AND CA AG, CALL WITH MARIO AND LAUREN, REVIEW OF 4TH CAC, REVIEW OF BACKGROUND MATERIALS FOR KINOSHITA AND IWAMOTO |
| 4227172 | 1/9/2013 | MANDEL, ERIC P. | DISCOV COUNSEL | 4.50 | 640 | 2,880.00 | DOWNLOAD, REVIEW AND ANALYZE HITACHI BACKUP TAPE INFORMATION, COMMUNICATE W/J ANDERSON RE:STATUS OF REVIEW AND NEED FOR CUSTODIAL INFORMATION. |

| | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4214800 | 1/9/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 4.20 | 275 | 1,155.00 | IDENTIFY AND OBTAIN TWO RECENT CLASS CERTIFICATION OPINIONS FROM WESTLAW PER J. ZAHID, PREPARE ZIP FILE OF PANASONIC 30(B)(6) DEPOSITIONS PER D. LAMBRINOS, COMPILE ADDITIONAL SELECTED HOT DOCUMENTS RE STEVE IWAMOTO FROM RELATIVITY, PER D. LAMBRINOS, IN PREPARATION FOR IWAMOTO DEPOSITION, FORMAT SPREADSHEETS IN EXCEL FILES SELECTED AS HOT DOCUMENTS FOR POTENTIAL USE AS IWAMOTO DEPOSITION EXHIBITS, PER D. LAMBRINOS, CULL METADATA FOR SEVERAL IWAMOTO-RELATED DOCUMENTS PER D. LAMBRINOS, REVIEW ████ REFERENCES TO IWAMOTO, KINOSHITA AND NISHIYAMA, PER D. LAMBRINOS |
| 4212636 | 1/9/2013 | ZAHID, JUDITH A. | PARTNER | 3.10 | 675 | 2,092.50 | CONTINUE WORKING ON FRAMEWORK OF DAUBERT AND REPLY BRIEFING, DISCUSS SCHEDULING ISSUES, DISCUSS CA AG ISSUES, TALK TO DAP COUNSEL RE COST-SHARING, COLLABORATING |
| 4226403 | 1/10/2013 | CORBITT, CRAIG C. | SR. PARTNER | 3.00 | 875 | 2,625.00 | CALL WITH CA AG OFFICE, CALL WITH CO-COUNSEL RE CASE STATUS AND STRATEGY, REVIEW MATERIAL RE WILLIG AND CLASS CERT MOTION |
| 4226867 | 1/10/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.50 | 535 | 1,872.50 | PANASONIC/JVC RESEARCH FROM BOB G AND LR, REQUESTING CTS OF KINOSHITA DOCS (EXCHANGE EMAILS WITH NC AND LR RE SAME), NISHIYAMA DEPO LOGISTICS EMAIL TO ADAM H, REVIEW SONG TRANSCRIPT AND AARON S OUTLINE |

| 4214811 | 1/10/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 5.20 | 275 | 1,430.00 | SEARCH SPREADSHEET LISTING CONSPIRACY MEETINGS AND EXTRACT INFORMATION RE IWAMOTO, KINOSHITA AND NISHIYAMA IN PREPARATION FOR THEIR DEPOSITIONS, PER D. LAMBRINOS, FORMAT SPREADSHEETS IN EXCEL FILES SELECTED AS HOT DOCUMENTS FOR POTENTIAL USE AS IWAMOTO DEPOSITION EXHIBITS, PER D. LAMBRINOS, OBTAIN AND REVIEW METADATA FOR SELECTED ██████ DOCUMENTS, IN PREPARATION FOR IWAMOTO, KINOSHITA AND NISHIYAMA DEPOSITIONS, PREPARE EMAIL TO N. CIHLAR REQUESTING TRANSLATIONS OF THREE EMAILS ATTACHING ██████ PER D. LAMBRINOS, DISCUSSION WITH D. LAMB RE SETTING UP KINOSHITA AND IWAMOTO DEPOSITIONS WITH VERITEXT, MEETING WITH D. LAMBRINOS RE ██████ AND ACCOMPANYING METADATA CULLED FOR USE IN KINOSHITA AND NISHIYAMA DEPOSITIONS, SEARCH RELATIVITY FOR ORIGINAL EMAIL FROM KINOSHITA TO |

| | | | | | |
|---|---|---|---|---|---|
| 4212637 | 1/10/2013 | ZAHID, JUDITH A. | PARTNER | 4.50 | 675 | 3,037.50 | CALL WITH M. ALIOTO, L. RUSSELL, AND C. CORBITT RE SCHEDULING, WORKING WITH THE OTHER PLAINTIFF GROUPS, THE CA AG, EXPERT DEPOS AND CLASS CERTIFICATION PROGRESS, CALL WITH CA AG (EMILIO) RE LG SETTLEMENT RELEASE, STRATEGY DISCUSSIONS RE REPLY BRIEF, DISCUSS UPCOMING MERITS DEPOSITIONS. |
| 4215193 | 1/11/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.60 | 650 | 390.00 | CONFERENCE WITH B. GRALEWSKI RE DECLARATIONS FROM CLASS MEMBERS AND RECOMMENDATIONS RE SAME. |
| 4211409 | 1/11/2013 | CORBITT, CRAIG C. | SR. PARTNER | 2.50 | 875 | 2,187.50 | REVIEW MATERIAL RE CLASS CERT MOTION, DEPOSITION SCHEDULE, AND WILLIG DEPOSITION, CONFER CHERYL JOHNSON RE CALIFORNIA AG MATTER |
| 4211454 | 1/11/2013 | LAMB, DENISE M. | PARALEGAL (3) | 4.50 | 230 | 1,035.00 | REVIEW EXCEL DOCUMENTS FORMAT AND FOR TO DEMETRUIS IN PREPARATION FOR PANASONIC DEPOSITIONS. |
| 4226902 | 1/11/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.00 | 535 | 1,605.00 | REVIEW 4TH CAC, TRANSLATOR DUAL-USE ISSUE EMAILS, PHONE CALL, AND DRAFT EMAIL FOR PANASONIC, REVIEW KINOHITA AND IWAMOTO DOCUMENT, LCDS W LIST, FOLLOW UP ON WMT DATA |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4214819 | 1/11/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 4.70 | 275 | 1,292.50 | COORDINATE D. LAMB WORK ON FORMATTING OF EXCEL FILES FOR D. LAMBRINOS REVIEW FOR IWAMOTO DEPOSITION, REVIEW IWAMOTO-RELATED DOCUMENTS ON RELATIVITY AND COMPILE FAMILY MEMBERS OF DOCUMENTS SELECTED BY D. LAMBRINOS FOR IWAMOTO DEPOSITION, COMPILE ADDITIONAL DOCUMENTS FOR IWAMOTO AND KINOSHITA DEPOSITIONS PER D. LAMBRINOS, UPDATE LOG OF DEPOSITIONS TAKEN IN THE CASE TO DATE, REVIEW SDI INTERROGATORY RESPONSES FOR REFERENCES TO KINOSHITA, PER D. LAMBRINOS |
| 4212638 | 1/11/2013 | ZAHID, JUDITH A. | PARTNER | 3.60 | 675 | 2,430.00 | RESPOND TO QUESTIONS RE INTERPRETERS AND DEPOSITION SCHEDULING FROM L. RUSSELL AND OTHER CO-COUNSEL, REVIEW CASE LAW RE OVERRULING DAUBERT MOTIONS, FLUSH OUT ADDITIONAL ISSUES FOR AN OUTLINE |
| 4211428 | 1/14/2013 | CORBITT, CRAIG C. | SR. PARTNER | 3.00 | 875 | 2,625.00 | REVIEW MATERIAL RE CLASS CERT, EXPERT DEPOSITION, CALL WITH MARIO RE CASE STATUS, POTENTIAL SETTLEMENT |
| 4211453 | 1/14/2013 | LAMB, DENISE M. | PARALEGAL (3) | 2.50 | 230 | 575.00 | CONTINUING REVIEWING EXCEL DOCUMENTS FORMAT AND FOR TO DEMETRUIS IN PREPARATION FOR PANASONIC DEPOSITIONS. |
| 4227142 | 1/14/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.00 | 535 | 1,605.00 | IWAMOTO AND KINOSHITA DEPOS, TRANSLATION ISSUE, REVIEW BACKGROUND MATERIALS |

| 4221596 | 1/14/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 0.50 | 275 | 137.50 | PROCESS COMPLETE ELECTRONIC SET OF DEFENDANT INTERROGATORY RESPONSES RECEIVED, PREPARE LIST OF ALL DOCUMENTS AND FAMILY MEMBERS SELECTED BY D. LAMBRINOS TO DATE FOR IWAMOTO DEPOSITION, IN PREPARATION TO TRACK SUCH DOCUMENTS AND THEIR METADATA. |
| 4212823 | 1/15/2013 | LAMB, DENISE M. | PARALEGAL (3) | 1.50 | 230 | 345.00 | CONTINUING REVIEWING EXCEL DOCUMENTS FORMAT AND FOR TO DEMETRUIS IN PREPARATION FOR PANASONIC DEPOSITIONS. |
| 4227147 | 1/15/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | DEPO PREP - KINOSHITA/IWAMOTO - CALL WITH LAUREN AND MARIO, CALL WITH DAPS, CALL WITH CA AG RE COORDINATION |
| 4221655 | 1/15/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 0.70 | 275 | 192.50 | COORDINATE PRINTING OF IWAMOTO AND KINOSHITA TRANSLATIONS AND OTHER DOCUMENTS RECEIVED FROM N. CIHLAR, PER D. LAMBRINOS, AND SORT SAME, RESPOND TO QUERY FROM S. KERN RE WHETHER CERTAIN SPREADSHEETS HAVE PREVIOUSLY BEEN MARKED AS EXHIBITS, PER D. LAMBRINOS |

| 4212639 | 1/15/2013 | ZAHID, JUDITH A. | PARTNER | 4.90 | 675 | 3,307.50 | PER REQUEST OF L. RUSSELL, CALL TRANSLATION SERVICES FIRM AND DISCUSS ISSUE OF INTERPRETERS, EMAIL TO GROUP A SUMMARY OF THE DISCUSSION, CONFERENCE CALL WITH M. ALIOTO, L. RUSSEL, AND D. LAMBRINOS RE UPCOMING PANASONIC DEPOSITIONS AND OVERALL STRATEGY AND CONCERNS RE COORDINATING WITH THE OTHER PLAINTIFF GROUPS, REVIEW ASCERTAINABILITY EMAILS AND RESPOND TO QUESTIONS RE CLASS |
| 4223150 | 1/16/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 1.10 | 650 | 715.00 | VARIOUS CONFERENCES AND CORRESPONDENCE WITH CO-COUNSEL RE CLASS REPRESENTATIVE ISSUES AND UPCOMING MERITS DEPOSITIONS. |
| 4212752 | 1/16/2013 | CORBITT, CRAIG C. | SR. PARTNER | 3.50 | 875 | 3,062.50 | REVIEW MATERIAL, OFFICE EMAIL RE CLASS CERT MOTION, WILLIG DEPOSITION |
| 4212822 | 1/16/2013 | LAMB, DENISE M. | PARALEGAL (3) | 3.00 | 230 | 690.00 | CONTINUING REVIEWING EXCEL DOCUMENTS FORMAT AND FOR TO DEMETRUIS IN PREPARATION FOR PANASONIC DEPOSITIONS. |
| 4227165 | 1/16/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 4.00 | 535 | 2,140.00 | PREP FOR MERITS DEPOS, EMAILS RE TRANSLATION ISSUE, LOGISTICS EMAILS, CALLS WITH DAPS AND CA AGS, PREP OUTLINE - SENT TO LR |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4222114 | 1/16/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 3.90 | 275 | 1,072.50 | READY COMPLETE SET OF INTERROGATORY RESPONSES BY ALL DEFENDANTS FOR ELECTRONIC SEARCHING, AND SEARCH SAME AND HIGHLIGHT REFERENCES TO UPCOMING DEPONENTS IWAMOTO AND KINOSHITA, PER D. LAMBRINOS, PREPARE EMAIL TO L. RUSSELL ATTACHING KEY DOCUMENTS FOR USE IN PREPARATION FOR IWAMOTO AND KINOSHITA DEPOSITIONS, PULL ADDITIONAL DOCUMENTS FROM RELATIVITY FOR IWAMOTO DEPOSITION, AND PREPARE ELECTRONIC SET OF ALL POTENTIAL EXHIBITS SELECTED FOR IWAMOTO TO DATE, PER D. LAMBRINOS |
| 4225833 | 1/16/2013 | RANKIE, HEATHER T. | ASSOCIATE | 2.70 | 480 | 1,296.00 | GATHER AND REVIEW AUTHORITY RE EXPERT STANDARDS ON CLASS CERT FOR USE IN REPLY BRIEFING. |
| 4212640 | 1/16/2013 | ZAHID, JUDITH A. | PARTNER | 3.50 | 675 | 2,362.50 | REVIEW DRAFT MEMORANDUM OF ███ RE THE WILLIG DEPOSITION, PROVIDE INPUT THAT I'D GATHERED FROM READING DAUBERT CASES OF TYPES OF QUESTIONS WE CAN ASK WILLIG, REVIEW EMAILS RE INTERPRETER ISSUES, CONFERENCE CALL WITH M. ALIOTO AND L. RUSSELL TO CONTINUE DISCUSSION OF STRATEGY AND CONCERNS RE COORDINATING WITH THE OTHER PLAINTIFF GROUPS, REVIEW EMAILS FROM B. GRALEWSKI AND ███ RESPOND TO QUESTIONS RE CLASS REPRESENTATIVE |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4223156 | 1/17/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.80 | 650 | 520.00 | CORRESPOND WITH CO-COUNSEL RE CLASS REPRESENTATIVE ISSUES, INTERNAL CORRESPONDENCE RE EXPERT WITNESS ISSUES AND RESEARCH. |
| 4226261 | 1/17/2013 | CLAYTON, PATRICK B. | SR. ASSOCIATE | 4.00 | 580 | 2,320.00 | REVIEW MATERIALS FORWARDED BY J. ZAHID AND M. CHRISTIAN FOR USE IN CLASS CERT REPLY BRIEF. |
| 4212929 | 1/17/2013 | CORBITT, CRAIG C. | SR. PARTNER | 3.00 | 875 | 2,625.00 | REVIEW MATERIAL RE CLASS CERT AND EXPERT REPORTS RE PREPARE FOR WILLIG DEPOSITION |
| 4227180 | 1/17/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.00 | 535 | 1,605.00 | DEPO PREP - RESEARCH/LOGISTICS, SETTLEMENT DASHBOARD RESEARCH FOR CCC, DATA FOLLOW UP JZ, LOGISTICS RE COORDINATE WITH CA AG |
| 4227173 | 1/17/2013 | MANDEL, ERIC P. | DISCOV COUNSEL | 0.60 | 640 | 384.00 | COMMUNICATE W/L RUSSELL RE: CASE STATUS AND RENEWAL OF WIKISPACES DOCUMENT REPOSITORY. |
| 4222139 | 1/17/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 5.00 | 275 | 1,375.00 | FORMAT SPREADSHEETS AND POWERPOINT SLIDES FOR USE AS DEPOSITION EXHIBITS WITH IWAMOTO, PER D. LAMBRINOS, FINALIZE PREPARATION OF ELECTRONIC SET OF DOCUMENTS EARMARKED AS IWAMOTO DEPOSITION EXHIBITS, PER D. LAMBRINOS, UPLOAD POTENTIAL IWAMOTO DEPOSITION EXHIBITS TO FTP SITE, AND PREPARE EMAIL TO L. RUSSELL EXPLAINING THE FILE SETUP, REVIEW EXHIBITS FROM JULY 2012 PANASONIC DEPOSITIONS AND COMPILE THOSE REFERENCING IWAMOTO AND KINOSHITA, PER D. LAMBRINOS |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4225849 | 1/17/2013 | RANKIE, HEATHER T. | ASSOCIATE | 1.70 | 480 | 816.00 | FINISH REVIEWING AUTHORITY RE EXPERT STANDARDS ON CLASS CERT FOR USE IN REPLY BRIEFING, SEND BEST CASES ANNOTATED TO JAZ AND MSC. |
| 4212924 | 1/17/2013 | STEELE, MONICA J. | PARALEGAL (3) | 2.50 | 235 | 587.50 | ECF FILING RE FILE UNDER SEAL AND REDACTION FILING RE MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF INDIRECT-PURCHASER PLAINTIFFS FOR CLASS CERTIFICATION, AND SAME FOR ERRATA TO THE DECLARATION OF JANET S. NETZ IN SUPPORT OF MOTION OF INDIRECT-PURCHASER PLAINTIFFS CLASS CERTIFICATION |
| 4213697 | 1/17/2013 | ZAHID, JUDITH A. | PARTNER | 2.60 | 675 | 1,755.00 | CONTINUE TO RESEARCH AND READ DAUBERT DECISIONS AND START OUTLINE FOR BRIEF |
| 4226509 | 1/18/2013 | CORBITT, CRAIG C. | SR. PARTNER | 2.00 | 875 | 1,750.00 | REVIEW MATERIAL RE CLASS CERT MOTION, EXPERT REPORTS |
| 4213402 | 1/18/2013 | LAMB, DENISE M. | PARALEGAL (3) | 5.00 | 230 | 1,150.00 | CONTINUING REVIEWING EXCEL DOCUMENTS FORMAT AND FOR TO DEMETRUIS IN PREPARATION FOR PANASONIC DEPOSITIONS, RETRIEVE AND PREPARE DOCUMENTS FOR EXPERT WILLIG DEPOSITION FOR CRAIG'S REVIEW |
| 4227195 | 1/18/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 4.50 | 535 | 2,407.50 | PREP FOR MERITS DEPOS, REVIEW DOCUMENTS, SETTLEMENT DASHBOARD (CCC), CRIMINAL INFORMATION (CCC), CALL WITH MARIO RE TRANSLATOR ISSUE |
| 4227060 | 1/18/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 1.00 | 800 | 800.00 | REVIEW AND ANALYSIS OF REPLY ISSUES, REVIEW AND REVISE SUMMARY ▮▮▮ FOR USE IN REPLY |

| | | | | | | |
|---|---|---|---|---|---|---|
| 4222173 | 1/18/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 3.00 | 275 | 825.00 | EMAIL TO H. RANKIE DESCRIBING WESTLAW RESEARCH PERFORMED ON ROBERT WILLIG, AND SEND SAME, IN PREPARATION FOR WILLIG DEPOSITION, COMPILE MATERIALS FOR WILLIG DEPOSITION PER J. ZAHID AND D. LAMBRINOS, INCLUDING FILINGS RE CRT CRIMINAL CASES AND INTERNATIONAL INVESTIGATIONS, COMPILE ALL SETTLEMENT AGREEMENTS IN THE CRT MATTERS, REVIEW SAME, AND ADD INFORMATION TO CHART FOR USE BY C. CORBITT WITH WILLIG DEPOSITION, PER D. LAMBRINOS, EXTRACT AND FORMAT ELECTRONIC COPIES OF SELECTED ███ PER H. RANKIE, IN PREPARATION FOR WILLIG DEPOSITION |
| 4225855 | 1/18/2013 | RANKIE, HEATHER T. | ASSOCIATE | 9.10 | 480 | 4,368.00 | REVIEW ███ AND DRAFT SUMMARY OF SIGNIFICANT OPINIONS PER CCC REQUEST FOR PREP OF WILLIG'S DEPO. |
| 4213698 | 1/18/2013 | ZAHID, JUDITH A. | PARTNER | 5.80 | 675 | 3,915.00 | CALL WITH CA AG P. MOORE RE COORDINATION, ASSIST IN GETTING CCC READY FOR WILLIG DEPOSITION, CALL WITH M. ALIOTO RE SCHEDULING PROPOSAL, CALL WITH P. IOVENIO RE SAME, COMMENT ON SAME, CONTINUE TO RECEIVE NEW CASES FROM H. RANKIE AND READ DAUBERT DECISIONS, CONTINUE ON OUTLINE FOR BRIEF |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4227061 | 1/19/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 3.50 | 800 | 2,800.00 | REVIEW AND ANALYSIS OF REPLY ISSUES, REVIEW AND REVISE SUMMARY COMPARISON ▮ FOR USE IN REPLY |
| 4227062 | 1/20/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 2.30 | 800 | 1,840.00 | REVIEW AND ANALYSIS OF REPLY ISSUES, REVIEW AND REVISE SUMMARY COMPARISON ▮ FOR USE IN REPLY |
| 4213699 | 1/20/2013 | ZAHID, JUDITH A. | PARTNER | 2.40 | 675 | 1,620.00 | START DRAFTING OPPOSITION TO DAUBERT MOTION |
| 4226514 | 1/21/2013 | CORBITT, CRAIG C. | SR. PARTNER | 3.50 | 875 | 3,062.50 | REVIEW MATERIAL RE CLASS CERT MOTION, WILLIG DEPO PREP |
| 4227292 | 1/21/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.00 | 535 | 1,605.00 | DEPO PREP - REVIEW DOCUMENTS, OUTLINE, LOGISTICS, COORDINATE WITH CA AG AND DAPS, CALLS WITH LAUREN RE SAME |
| 4213700 | 1/21/2013 | ZAHID, JUDITH A. | PARTNER | 3.70 | 675 | 2,497.50 | CONTINUE DRAFTING OPPOSITION TO DAUBERT MOTION |
| 4213642 | 1/22/2013 | CORBITT, CRAIG C. | SR. PARTNER | 7.00 | 875 | 6,125.00 | OFFICE CONFERENCES, REVIEW EXPERT MEMOS, PREPARATION FOR WILLIG DEPOSITION |
| 4213676 | 1/22/2013 | LAMB, DENISE M. | PARALEGAL (3) | 6.50 | 230 | 1,495.00 | RETRIEVE AND PREPARE DOCUMENT FOR EXPERT WILLIG'S DEPOSITION FOR CRAIG CORBITT. |
| 4227310 | 1/22/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 4.00 | 535 | 2,140.00 | CONFERENCE CALL RE MERITS DEPOS WITH CA AG AND DAPS, OUTLINE, DOC REVIEW, EMAILS AND CALL WITH LAUREN RE SAME |
| 4227070 | 1/22/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 2.80 | 800 | 2,240.00 | FACT RESEARCH REGARDING ▮ REVIEW AND REVISE ▮ SUMMARY ▮ FOR USE IN REPLY, DRAFT EMAIL TO .. CHRISTIAN AND J. ZAHID REGARDING SAME |

| 4222250 | 1/22/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 4.40 | 275 | 1,210.00 | REVIEW GROUP OF PANASONIC DOCUMENTS SELECTED BY D. LAMBRINOS FOR USE IN FEB. 5-6 KINOSHITA DEPOSITION, AND OBTAIN FAMILY MEMBERS OF SAME FROM RELATIVITY, PREPARE ELECTRONIC AND PAPER SETS OF POTENTIAL KINOSHITA DEPOSITION EXHIBITS, PER D. LAMBRINOS, PREPARE CHART TRACKING POTENTIAL KINOSHITA DEPOSITION EXHIBITS, OBTAIN RECENT DAUBERT-RELATED OPINIONS FROM WESTLAW PER J. ZAHID, IN PREPARATION OF DAUBERT OPPOSITION BRIEF, OBTAIN AND FORMAT ADDITIONAL DOCUMENTS FROM RELATIVITY FOR USE AS POSSIBLE KINOSHITA EXHIBITS, PER D. LAMBRINOS, PREPARE EMAIL TO N. CIHLAR OF KINOSHITA-RELATED DOCUMENTS REQUIRING OFFICIAL AND UNOFFICIAL TRANSLATIONS, PER D. LAMBRINOS |
| 4225863 | 1/22/2013 | RANKIE, HEATHER T. | ASSOCIATE | 10.40 | 480 | 4,992.00 | WORK WITH CCC TO PREPARE HIM FOR WILLIG DEPO, INCLUDING REVIEW AND SELECTION OF POTENTIAL EXHIBITS, AND LEGAL AND FACTUAL RESEARCH, OVERSEE DL PREPARATION OF DEPO EXHIBITS. |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4213716 | 1/22/2013 | ZAHID, JUDITH A. | PARTNER | 5.50 | 675 | 3,712.50 | CONTINUED TO DRAFT OPPOSITION TO DAUBERT MOTION, DISCUSS WILLIG WITH CRAIG, OVERSEE SOME LOGISTICS OF WILLIG DEPOSITION PREPARATION, COORDINATE WITH APPLECON ON INPUT TO DAUBERT OPPOSITION, REVIEW NETZ CLASS CERTIFICATION DEPOSITION FOR DETAILS PERTINENT TO WILLIG DEPOSITION |
| 4215216 | 1/23/2013 | CORBITT, CRAIG C. | SR. PARTNER | 12.00 | 875 | 10,500.00 | TRAVEL SF-NY, PREPARE FOR WILLIG DEPOSITION |
| 4227336 | 1/23/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | DEPO PREP - EMAILS RE JUSTIFYING TRANSLATIONS FOR IWAMOTO AND KINOSHITA DEPOSITIONS |
| 4227072 | 1/23/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 4.50 | 800 | 3,600.00 | MEET WITH J. ZAHID AND M. CHRISTIAN REGARDING WORK ON REPLY BRIEF AND STRATEGY IN RE SAME, REVIEW OF EMAILS FROM J. ZAHID AND M. CHRISTIAN WITH DOCUMENTS AND SUMMARIES RELEVANT TO SAME, REVIEW AND ANALYZE REPLY AND ARGUMENTS TO RESPOND TO SAME |
| 4222291 | 1/23/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 0.70 | 275 | 192.50 | RELATIVITY SEARCHES FOR ADDITIONAL DOCUMENTS FOR POTENTIAL USE AS KINOSHITA DEPOSITION EXHIBITS, PER D. LAMBRINOS |
| 4225868 | 1/23/2013 | RANKIE, HEATHER T. | ASSOCIATE | 14.10 | 480 | 6,768.00 | TRAVEL FROM SAN FRANCISCO TO NEW YORK FOR WILLIG DEPOSITION, REVIEW PORTIONS OF EXPERT REPORTS, POTENTIAL DEPO EXHIBITS, AND OUTLINES FROM APPLECON IN PREPARATION FOR SITTING SECOND CHAIR FOR CCC AT WILLIG DEPO |
| 4223157 | 1/23/2013 | ZAHID, JUDITH A. | PARTNER | 4.80 | 675 | 3,240.00 | CONTINUE DRAFTING OPPOSITION TO DAUBERT MOTION |

| ID | Date | Name | Role | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4215217 | 1/24/2013 | CORBITT, CRAIG C. | SR. PARTNER | 8.00 | 875 | 7,000.00 | PREPARE FOR AND TAKE WILLIG DEPOSITION |
| 4226791 | 1/24/2013 | LAMB, DENISE M. | PARALEGAL (3) | 3.00 | 230 | 690.00 | CONTINUING REVIEWING EXCEL DOCUMENTS FORMAT AND FOR TO DEMETRUIS IN PREPARATION FOR PANASONIC DEPOSITIONS. |
| 4227355 | 1/24/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | EMAILS RE OUTLINE AND JUSTIFYING DOCUMENTS TO NATE AND LAUREN, SDI AND HITACHI DOCUMENTS, COORDINATING WITH DAPS AND CA AG |
| 4227074 | 1/24/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 5.00 | 800 | 4,000.00 | CONFER J. ZAHID REGARDING WORK ON REPLY BRIEF AND STRATEGY IN RE SAME, REVIEW AND ANALYZE DEFENDANTS' OPPOSITION, OUTLINE RESPONSE TO SAME, DRAFT REPLY BRIEF, LEGAL RESEARCH REGARDING SAME |
| 4222312 | 1/24/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 1.20 | 275 | 330.00 | PULL SELECTED DOCUMENTS FROM RELATIVITY FOR REVIEW BY D. LAMBRINOS FOR KINOSHITA DEPOSITION |
| 4225874 | 1/24/2013 | RANKIE, HEATHER T. | ASSOCIATE | 7.50 | 480 | 3,600.00 | SECOND CHAIR FOR CCC AT WILLIG DEPO, PREPARATION FOR SAME AND. |
| 4223166 | 1/24/2013 | ZAHID, JUDITH A. | PARTNER | 5.20 | 675 | 3,510.00 | REVIEW DRAFT DECLARATION OF NETZ ... CONTINUE DRAFTING OPPOSITION TO DAUBERT MOTION |
| 4227051 | 1/25/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 2.20 | 650 | 1,430.00 | REVIEW STATUS OF BRIEF, REVIEW CASES ON EXPERT WITNESS AND COMMON IMPACT. |

| | | | | | | |
|---|---|---|---|---|---|---|
| 4215218 | 1/25/2013 | CORBITT, CRAIG C. | SR. PARTNER | 8.00 | 875 | 7,000.00 | TRAVEL NY-SF RE WILLIG DEPOSITION, REVIEW ROUGH TRANSCRIPT AND EMAIL EXPERT RE SAME, REVIEW MATERIAL RE CLASS CERT MOTION, EXPERT REPORTS |
| 4226792 | 1/25/2013 | LAMB, DENISE M. | PARALEGAL (3) | 3.00 | 230 | 690.00 | CONTINUING REVIEWING EXCEL DOCUMENTS FORMAT AND FOR TO DEMETRUIS IN PREPARATION FOR PANASONIC DEPOSITIONS. |
| 4227372 | 1/25/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 4.50 | 535 | 2,407.50 | DEPO PREP RE KINOSHITA DOCS - TIMING ISSUE EMAILS RE COORDINATION WITH DAPS AND DIRECTS, DIST OUTLINE, CALL DPPS AND DAPS RE SAME |
| 4227075 | 1/25/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 6.30 | 800 | 5,040.00 | CONFER J. ZAHID REGARDING WORK ON REPLY BRIEF AND STRATEGY IN RE SAME, REVIEW AND ANALYZE DEFENDANTS' OPPOSITION, OUTLINE RESPONSE TO SAME, DRAFT REPLY BRIEF, LEGAL RESEARCH REGARDING SAME, REVIEW EXPERT REPORTS. |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4222316 | 1/25/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 4.60 | 275 | 1,265.00 | PULL METADATA FROM RELATIVITY FOR SELECTED IWAMOTO-RELATED DOCUMENTS, PER D. LAMBRINOS, OBTAIN NEW BATCH OF HOT DOCUMENTS AND RELATED METADATA FROM RELATIVITY IN PREPARATION FOR KINOSHITA DEPOSITION, AND FORMAT SPREADSHEETS WITHIN THAT GROUP, PER D. LAMBRINOS, COMPILE, IN ELECTRONIC AND HARD-COPY FORM, NEW GROUP OF DOCUMENTS SELECTED FOR KINOSHITA DEPOSITION PER D. LAMBRINOS, PROOFREAD AND EDIT KINOSHITA DEPOSITION OUTLINE PREPARED BY D. LAMBRINOS, PREPARE EMAIL TO KINOSHITA/IWAMOTO DEPOSITION ATTORNEYS OF OUTLINE AND EXHIBITS FOR KINOSHITA DEPOSITION, PER D. |
| 4223171 | 1/25/2013 | ZAHID, JUDITH A. | PARTNER | 8.30 | 675 | 5,602.50 | CLOSELY REVIEWED SECOND DRAFT OF NETZ DECLARATION ███ CONTINUED DRAFTING OPPOSITION TO DAUBERT MOTION, REVIEWED ADDITIONAL CASES AND ADDED TO ARGUMENT SECTION, DISCUSSED STRATEGY INTERNALLY AND EXCHANGED WORK PRODUCT WITH CTM |
| 4227077 | 1/26/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 5.50 | 800 | 4,400.00 | REVIEW AND ANALYZE DEFENDANTS' OPPOSITION, DRAFT REPLY BRIEF, LEGAL RESEARCH REGARDING SAME, REVIEW EXPERT REPORTS IN CONNECTION WITH PREPARATION OF REPLY MEMO |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4227078 | 1/27/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 6.50 | 800 | 5,200.00 | REVIEW AND ANALYZE DEFENDANTS' OPPOSITION, DRAFT REPLY BRIEF, LEGAL RESEARCH REGARDING SAME, REVIEW EXPERT REPORTS IN CONNECTION WITH PREPARATION OF REPLY MEMO |
| 4225882 | 1/27/2013 | RANKIE, HEATHER T. | ASSOCIATE | 8.00 | 480 | 3,840.00 | TRAVEL BACK TO SAN FRANCISCO (RETURNING FROM WILLIG DEPOSITION). |
| 4227047 | 1/28/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 1.80 | 650 | 1,170.00 | REVIEW DEPOSITIONS OF CLASS REPRESENTATIVES, WORK ON IDENTIFYING EVIDENCE OF TYPICALITY AND ADEQUACY. |
| 4226774 | 1/28/2013 | LAMB, DENISE M. | PARALEGAL (3) | 7.00 | 230 | 1,610.00 | REVIEW DEPOSITION TRANSCRIPTS AND INDEX EXHIBITS |
| 4227399 | 1/28/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.50 | 535 | 1,872.50 | MEETING GRID INVESTIGATION, JUSTIFICATION/TRANSLATION EMAILS TO LAUREN/NATE, CA AG COORDINATION EMAILS, REVIEW DOCUMENTS |
| 4227080 | 1/28/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 6.60 | 800 | 5,280.00 | CONFER WITH J. ZAHID REGARDING STRATEGIES, REVIEW AND ANALYZE DEFENDANTS' OPPOSITION, DRAFT REPLY BRIEF, LEGAL RESEARCH REGARDING SAME, REVIEW EXPERT REPORTS IN CONNECTION WITH PREPARATION OF REPLY MEMO |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4222382 | 1/28/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 2.40 | 275 | 660.00 | REVIEW COLLECTION OF INFORMATIONS, PLEA AGREEMENTS AND OTHER DOCUMENTS FROM THE CRT CRIMINAL CASES (DOMESTIC AND INTERNATIONAL) FOR REFERENCES TO PANASONIC ENTITIES, PER D. LAMBRINOS, IN PREPARATION FOR UPCOMING PANASONIC DEPOSITIONS, COMPARE D. LAMBRINOS'S HARD-COPY SET OF DOCUMENTS COMPILED FOR IWAMOTO DEPOSITION AGAINST ELECTRONIC SET SENT TO L. RUSSELL, AND ADD MISSING DOCUMENTS TO LAMBRINOS SET |
| 4225887 | 1/28/2013 | RANKIE, HEATHER T. | ASSOCIATE | 1.80 | 480 | 864.00 | MEET WITH JAZ TO DISCUSS RESEARCH NEEDED RE OPINIONS CITED IN DEFS' MOT. TO STRIKE NETZ FOR JAZ'S USE IN OPPOSITION BRIEF, BEGIN RESEARCH. |
| 4223183 | 1/28/2013 | ZAHID, JUDITH A. | PARTNER | 4.30 | 675 | 2,902.50 | FOLLOWED UP ON CRAIG'S EMAIL TO KEN GALLO RE REPRODUCING DISPLAYSEARCH DATA FROM LCDS TO CRTS CASE, HAD CALL WITH PAUL WEISS ATTORNEY REPRESENTING SHARP RE DATA REQUEST, CONTINUE TO ADD TO DRAFT OPPOSITION TO DAUBERT MOTION, |
| 4223352 | 1/29/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 1.80 | 650 | 1,170.00 | REVIEW STATUS OF CLASS REPRESENTATIVE ISSUES AND VARIOUS CORRESPONDENCE RE SAME. |
| 4226775 | 1/29/2013 | LAMB, DENISE M. | PARALEGAL (3) | 6.50 | 230 | 1,495.00 | REVIEW DEPOSITION TRANSCRIPTS AND INDEX EXHIBITS |
| 4227406 | 1/29/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 6.00 | 535 | 3,210.00 | REVIEW TRANSLATED DOCUMENTS, UPDATE OUTLINE FOR BOTH KINO/IWMOTO |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4227086 | 1/29/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 7.80 | 800 | 6,240.00 | CONFER WITH J. ZAHID REGARDING STRATEGIES, REVIEW AND ANALYZE DEFENDANTS' OPPOSITION, DRAFT REPLY BRIEF, LEGAL RESEARCH REGARDING SAME, REVIEW EXPERT REPORTS IN CONNECTION WITH PREPARATION OF REPLY MEMO |
| 4223053 | 1/29/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 2.00 | 275 | 550.00 | RELATIVITY SEARCHES AND REVIEW DOCUMENTS TO LOCATE REFERENCES TO ████ PER D. LAMBRINOS, IN PREPARATION FOR KINOSHITA DEPOSITION, DISCUSSIONS WITH D. LAMB RE INDEXING OF DEPOSITION EXHIBITS, OBTAIN ADDITIONAL DOCUMENTS FROM RELATIVITY FOR USE IN KINOSHITA DEPOSITION, PER D. LAMBRINOS |
| 4223182 | 1/29/2013 | ZAHID, JUDITH A. | PARTNER | 5.60 | 675 | 3,780.00 | CONTINUE TO ADD TO DRAFT OPPOSITION TO DAUBERT MOTION, |
| 4227053 | 1/30/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 7.20 | 650 | 4,680.00 | REVIEW CASE LAW RE REPLY BRIEF, REVIEW AND EDIT DRAFT OUTLINE RE LEGAL ARGUMENTS, WORK ON |
| 4223520 | 1/30/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.50 | 875 | 1,312.50 | MEETING WITH KATHLEEN FOOTE AND EMILIO VARANINI OF CALIF AG OFFICE, OFFICE CONFERENCE RE CASE STATUS AND STRATEGY |
| 4226778 | 1/30/2013 | LAMB, DENISE M. | PARALEGAL (3) | 5.00 | 230 | 1,150.00 | REVIEW DEPOSITION TRANSCRIPTS AND INDEX EXHIBITS |
| 4227411 | 1/30/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 6.00 | 535 | 3,210.00 | KINOSHITA/IWAMOTO DEPO PREP - OUTLINE DRAFT |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4227090 | 1/30/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 6.50 | 800 | 5,200.00 | CONFER WITH J. ZAHID REGARDING STRATEGIES, REVIEW AND ANALYZE DEFENDANTS' OPPOSITION, DRAFT REPLY BRIEF, LEGAL RESEARCH REGARDING SAME, REVIEW EXPERT REPORTS IN CONNECTION WITH PREPARATION OF REPLY MEMO. |
| 4223672 | 1/30/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 5.00 | 275 | 1,375.00 | OBTAIN DOCUMENTS FROM RELATIVITY FOR POTENTIAL USE AS KINOSHITA DEPOSITION EXHIBITS, PER D. LAMBRINOS, FORMAT EXCEL SPREADSHEETS FOR USE AS KINOSHITA DEPOSITION EXHIBITS, ADD DOCUMENTS TO D. LAMBRINOS SET OF POTENTIAL IWAMOTO DEPOSITION EXHIBITS |
| 4225900 | 1/30/2013 | RANKIE, HEATHER T. | ASSOCIATE | 4.50 | 480 | 2,160.00 | PER JAZ REQUEST, REVIEW/ANALYZE AUTHORITY CITED BY DEFS. IN THEIR MOT. TO STRIKE NETZ IN PREPARATION FOR INSERT DISTINGUISHING THIS AUTHORITY IN IPPS' OPPOSITION. |
| 4223176 | 1/30/2013 | ZAHID, JUDITH A. | PARTNER | 6.30 | 675 | 4,252.50 | CONFERENCE CALL WITH M. ALIOTO TO DISCUSS CA AG, SCHEDULING AND DISCOVERY ISSUES, CALL WITH P. MOORE FROM CA AG RE MEETING TODAY, CONTINUE TO ADD TO DRAFT OPPOSITION TO DAUBERT MOTION, PARTICIPATE IN MEETING WITH CA AG (K. FOOTE, E. VERINNI, P. MOORE) WITH C. CORBITT |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4227041 | 1/31/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 7.60 | 650 | 4,940.00 | REVIEW VARIOUS EVIDENCE RE ASCERTAINABILITY, TYPICALITY AND ADEQUACY, CONFERENCE WITH B. GRALEWSKI RE SAME, WORK ON ASCERTAINABILITY SECTION OF REPLY BRIEF, CONFERENCE WITH C. MICHELETTI RE STATUS OF BRIEF |
| 4226776 | 1/31/2013 | LAMB, DENISE M. | PARALEGAL (3) | 4.00 | 230 | 920.00 | REVIEW DEPOSITION TRANSCRIPTS AND INDEX EXHIBITS |
| 4227420 | 1/31/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 7.50 | 535 | 4,012.50 | PREP FOR DEPOS - OUTLINES, COORDINATION PHONE CALLS AND OUTLINING RE SAME - CONFERENCE WITH DENISE L RE DEPOS BY WRITTEN QUESTIONS |
| 4227093 | 1/31/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 8.20 | 800 | 6,560.00 | REVIEW AND ANALYZE DEFENDANTS' OPPOSITION, DRAFT REPLY BRIEF, LEGAL RESEARCH REGARDING SAME, REVIEW EXPERT REPORTS IN CONNECTION WITH PREPARATION OF REPLY MEMO, CONFER WITH M. CHRISTIAN REGARDING BRIEF AND STRATEGIES |
| 4227004 | 1/31/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 3.60 | 275 | 990.00 | CORRECT DATE FORMATTING ERROR IN METADATA REPORTS FOR DOCUMENTS TAGGED FOR USE IN IWAMOTO AND KINOSHITA DEPOSITIONS, REVIEW FILES AND LISTS, AND SEARCH FOR AND COMPILE ADDITIONAL DOCUMENTS AND METADATA FOR KINOSHITA AND IWAMOTO DEPOSITIONS, PER D. LAMBRINOS, SEARCH LINE STATUS REPORTS AND THEIR METADATA FOR REFERENCES TO IWAMOTO, PER D. LAMBRINOS |

| 4226678 | 1/31/2013 | ZAHID, JUDITH A. | PARTNER | 8.50 | 675 | 5,737.50 | CONTINUED ON DRAFT OF DAUBERT OPPOSITION, PREPARE FOR AND ATTEND FEE HEARING |
| 4231888 | 2/1/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 6.50 | 650 | 4,225.00 | REVIEW VARIOUS ISSUES RE ASCERTAINABILITY, RESEARCH RE SAME, WORK ON REPLY BRIEF. |
| 4232504 | 2/1/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 875 | 875.00 | REVIEW CLASS CERT OPPOSITION AND MATERIAL RE REPLY |
| 4232241 | 2/1/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 7.50 | 535 | 4,012.50 | PANASONIC - IWAMOTO/KINOSHITA DEPOS: PREP: REVIEW DOCUMENTS, PREPARE OUTLINES, COORDINATE WITH PLAINTIFFS' GROUPS, SCHEDULING |
| 4231457 | 2/1/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 6.90 | 800 | 5,520.00 | REVIEW AND ANALYSIS OF BRIEF OPPOSITION BRIEF, MEET WITH J. ZAHID AND M. CHRISTIAN REGARDING STRATEGY, REVIEW AND ANALYZE REPLY STRATEGIES, OUTLINE RESPONSES TO DEFENDANTS ARGUMENTS REGARDING (B)(3) ARGUMENTS AGAINST CLASS CERTIFICATION, DRAFT REPLY, LEGAL RESEARCH REGARDING SAME |

| 4229871 | 2/1/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 6.80 | 275 | 1,870.00 | ADD DOCUMENTS TO ELECTRONIC SET OF EXHIBITS FOR KINOSHITA DEPOSITION, COORDINATE PREPARATION OF HARD-COPY SET OF EXHIBITS FOR KINOSHITA DEPOSITION, PER D. LAMBRINOS, OBTAIN ADDITIONAL DOCUMENTS FROM RELATIVITY FOR KINOSHITA AND IWAMOTO DEPOSITIONS, PER D. LAMBRINOS, FORMAT ADDITIONAL POWERPOINT FILES FOR USE AS KINOSHITA DEPOSITION EXHIBITS, DOCKET RESEARCH TO OBTAIN CLASS CERTIFICATION BRIEFING ███ PER J. ZAHID |
| 4233656 | 2/1/2013 | ZAHID, JUDITH A. | PARTNER | 3.30 | 675 | 2,227.50 | CONTINUE REVISING OPPOSITION TO DAUBERT MOTION |
| 4231458 | 2/2/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 2.20 | 800 | 1,760.00 | REVIEW AND ANALYSIS OF BRIEF OPPOSITION BRIEF, REVIEW AND ANALYZE REPLY STRATEGIES, OUTLINE RESPONSES TO DEFENDANTS (B)(3) ARGUMENTS AGAINST CLASS CERTIFICATION, DRAFT REPLY, LEGAL RESEARCH REGARDING SAME |
| 4233658 | 2/2/2013 | ZAHID, JUDITH A. | PARTNER | 3.60 | 675 | 2,430.00 | CONTINUE REVISING OPPOSITION TO DAUBERT MOTION |
| 4232247 | 2/3/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 4.50 | 535 | 2,407.50 | PANASONIC - KINOSHITA DEPO - PREP - COORDINATION EMAILS, REVISED OUTLINE, DOCUMENT REVIEW |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4231459 | 2/3/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 2.00 | 800 | 1,600.00 | REVIEW AND ANALYSIS OF BRIEF OPPOSITION BRIEF, REVIEW AND ANALYZE REPLY STRATEGIES, OUTLINE RESPONSES TO DEFENDANTS (B)(3) ARGUMENTS AGAINST CLASS CERTIFICATION, DRAFT REPLY, LEGAL RESEARCH REGARDING SAME |
| 4233659 | 2/3/2013 | ZAHID, JUDITH A. | PARTNER | 4.50 | 675 | 3,037.50 | CONTINUE REVISING OPPOSITION TO DAUBERT MOTION |
| 4231892 | 2/4/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 8.20 | 650 | 5,330.00 | REVIEW PHYSICAL ISSUES RE ▮▮▮ AND DRAFT CORRESPONDENCE RE SAME, REVIEW AND EDIT DAUBERT OPPOSITION AND COMMUNICATE WITH J. ZAHID RE SAME, COMMUNICATIONS WITH R. NEWMAN AND J. ZAHID RE RESEARCH PROJECTS, CORRESPOND WITH B. GRALEWSKI, M. ALIOTO AND S. KERN RE ▮▮▮ WORK ON ASCERTAINABILITY ISSUES, DDRAFT DETAILED CORRESPONDENCE TO J. METZLER AND B. GRALEWSKI RE OUTSTANDING NEEDS ON ASCERTAINABILITY, REVIEW CORRESPONDENCE FROM J. METZLER RE |
| 4228172 | 2/4/2013 | CORBITT, CRAIG C. | SR. PARTNER | 2.50 | 875 | 2,187.50 | CALL WITH MARIO, OFFICE CONFERENCE RE STATUS AND STRATEGY, REVIEW MATERIAL MARKET SHARES, EXPERT REPORTS, POTENTIAL SETTLEMENTS |
| 4232252 | 2/4/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 9.00 | 535 | 4,815.00 | PANASONIC DEPOS - KINOSHITA PREP (FINALIZE OUTLINE/EXHIBITS), IWAMOTO (DRAFT/CIRCULATE OUTLINE TO PS TEAMS) |

| | | | | | |
|---|---|---|---|---|---|
| 4231460 | 2/4/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 9.60 | 800 | 7,680.00 | OUTLINE RESPONSES TO DEFENDANTS (B)(3) ARGUMENTS AGAINST CLASS CERTIFICATION, DRAFT REPLY, LEGAL RESEARCH REGARDING SAME, ANALYZE NETZ ANALYSES IN NETZ DECLARATION AND EXHIBITS AND INCORPORATE SAME INTO REPLY BRIEF ARGUMENT |
| 4229876 | 2/4/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 10.20 | 275 | 2,805.00 | WESTLAW SEARCH AND REVIEW RESULTS RE ██████ IN ANTITRUST CASES, PER J. ZAHID, IN PREPARATION OF REPLY BRIEF, PULL ADDITIONAL DOCUMENTS AND RELATED METADATA FROM RELATIVITY FOR KINOSHITA DEPOSITION, PER D. LAMBRINOS, COMPILE AND COORDINATE PRINTOUT OF EXHIBITS FOR KINOSHITA DEPOSITION, MEETING WITH D. LAMBRINOS RE FINAL CONFIGURATION OF EXHIBITS FOR TOMORROW'S KINOSHITA DEPOSITION, COORDINATE OFFICE SERVICES WORK ON PREPARATION OF KINOSHITA EXHIBITS, AND CONFIGURE SAME |
| 4233669 | 2/4/2013 | ZAHID, JUDITH A. | PARTNER | 7.20 | 675 | 4,860.00 | CONDUCT FURTHER RESEARCH RE CLASS CERTIFICATION AND DAUBERT FOR CRTS BRIEFS, CONTINUE ON DRAFT, COORDINATE STRATEGY WITH CTM, REVIEW CERTAIN EXPERT MATERIALS |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4231902 | 2/5/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 7.20 | 650 | 4,680.00 | WORK ON ASCERTAINABILITY/TYPICALITY/ADEQUACY SECTIONS OF REPLY IN SUPPORT OF CLASS CERTIFICATION, CONFERENCE WITH R. NEWMAN RE EDITS TO SAME, CORRESPONDENCE WITH C. MICHELETTI RE REPLY BRIEF, CORRESPONDENCE WITH ■■■■■ CORRESPONDENCE WITH EXPERTS RE MARKET SHARE ISSUES, REVIEW EXPERT MATERIALS RE CLASS CERTIFICATION ANALYSIS, DRAFT DETAILED OUTLINE TO J. METZLER RE INFORMATION NEEDED FOR REPLY BRIEF, CORRESPOND WITH B. GRALEWSKI RE APPENDIX A AND STATUS OF ASCERTAINABILITY/ADEQUACY ISSUES. |
| 4229678 | 2/5/2013 | LAMB, DENISE M. | PARALEGAL (3) | 1.50 | 230 | 345.00 | CONTINUE UPDATING DEPOSITION EXHIBIT LOG. |
| 4232263 | 2/5/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 9.00 | 535 | 4,815.00 | PANASOINC DEPO - KINOSHITA TAKE (7), PREP FOR DAY 2 (2) |
| 4231461 | 2/5/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 10.20 | 800 | 8,160.00 | DRAFT REPLY BRIEF, REVIEW AND REVISE BRIEF SECTIONS, CONFER WITH M. CHRISTIAN REGARDING ASCERTAINABILITY SECTION, ANALYZE NETZ ANALYSES IN NETZ DECLARATION AND EXHIBITS AND INCORPORATE SAME INTO REPLY BRIEF ARGUMENT, DRAFT EMAIL TO M. ALIOTO REGARDING DRAFT BRIEF |

| 4229880 | 2/5/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 11.10 | 275 | 3,052.50 | FINISH PREPARATION OF EXHIBIT SETS FOR KINOSHITA DEPOSITION, PER D. LAMBRINOS, WESTLAW RESEARCH TO OBTAIN SEVERAL CRT AND LCD OPINIONS PER J. ZAHID, IN PREPARATION OF CLASS CERTIFICATION REPLY BRIEF, REVIEW NETZ DECLARATION IN SUPPORT OF CLASS CERTIFICATION FOR REFERENCES TO MARKET SHARE OF THE DEFENDANTS, PER M. CHRISTIAN, PROOFREAD, KEYCITE AND EDIT INSERT TO CLASS CERTIFICATION REPLY BRIEF, PER M. CHRISTIAN, REVIEW DRAFT OUTLINE FOR IWAMOTO DEPOSITION AND PREPARE LIST OF POTENTIAL EXHIBITS REFERENCED THEREIN, OBTAIN POTENTIAL IWAMOTO EXHIBITS, AND RELATED METADATA, FROM RELATIVITY, FORMAT SPREADSHEETS FOR USE AS EXHIBITS WITH IWAMOTO, REVIEW DOCUMENTS SELECTED FOR IWAMOTO DEPOSITION AND PREPARE LIST WITH DATES AND OTHER INFORMATION, ADD DATE INFORMATION TO IWAMOTO OUTLINE PER D. LAMBRINOS |
| 4235915 | 2/5/2013 | RANKIE, HEATHER T. | ASSOCIATE | 5.40 | 480 | 2,592.00 | PER JAZ REQUEST, CONTINUE TO REVIEW/ANALYZE AUTHORITY CITED BY DEFS. IN THEIR MOT. TO STRIKE NETZ IN PREPARATION FOR INSERT DISTINGUISHING THIS AUTHORITY IN IPPS' OPPOSITION. |

| 4233671 | 2/5/2013 | ZAHID, JUDITH A. | PARTNER | 6.80 | 675 | 4,590.00 | CONTINUE REVISING DRAFT OF OPPOSITION TO DAUBERT MOTION, REVIEWED DRAFT OF NETZ MOTION TO STRIKE DECLARATION, CONTINUED TO ANALYZE CASE LAW AND ADD TO DRAFT WHILE COORDINATING WITH CTM AND OTHERS ON REPLY AND ARGUMENTS PERTAINING TO NETZ |
| 4231903 | 2/6/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 11.60 | 650 | 7,540.00 | REVIEW DRAFT REPLY BRIEF WITH INSERT, CORRESPONDENCE WITH J. METZLER RE ANALYSIS AND OUTSTANDING ISSUES, CORRESPONDENCE WITH B. GRALEWSKI RE TUBE IDENTIFICATION ISSUES, CONFERENCE WITH D. LAMBRINOS RE DEPOSITIONS, CORRESPONDENCE WITH J. METZLER AND A. KREMZIER RE TUBE ISSUES, WORK WITH R. NEWMAN ON RESEARCHING NORTHERN DISTRICT OPINIONS, CONFERENCE WITH B. GRALEWSKI RE INDIVIDUAL CLASS REPRESENTATIVE ISSUES, VARIOUS CORRESPONDENCE WITH B. GRALEWSKI AND L. PAPALE RE SAME, RECEIPT AND REVIEW OF DRAFT APPENDIX A, WORK ON TUBE IDENTIFICATION ISSUES, CORRESPOND WITH C. MICHELETTI RE CASE LAW, CONFERENCE WITH C. MICHELETTI AND J. ZAHID RE ASCERTAINABILITY ISSUES. |

| 4232270 | 2/6/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 12.50 | 535 | 6,687.50 | PANASONIC MERITS DEPO - KINOSHITA DAY 2 (TAKE 7), PREP FOR IWAMOTO DEPO (OUTLINE) (4.5), PREP FOR NEXT ROUND OF DEPONENTS (1) |
| 4235511 | 2/6/2013 | MANDEL, ERIC P. | DISCOV COUNSEL | 0.70 | 640 | 448.00 | CONTINUE REVIEW OF HITACHI TAPE CATALOGUES. |
| 4231462 | 2/6/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 3.50 | 800 | 2,800.00 | REVIEW AND REVISE REPLY BRIEF, SUPPLEMENT REPLY BRIEF WITH ADDITIONAL ARGUMENTS, REVIEW AND REVISE SUMMARY OF NETZ ANALYSES, CONFER WITH J. ZAHID REGARDING STRATEGY, DRAFT EMAIL TO M. CHRISTIAN REGARDING ASCERTAINABILITY |

| ID | Date | Name | Role | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4229882 | 2/6/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 10.30 | 275 | 2,832.50 | PREPARE ADDITIONAL DOCUMENTS FOR SECOND DAY OF KINOSHITA DEPOSITION, PER D. LAMBRINOS, OBTAIN METADATA FROM RELATIVITY FOR DOCUMENTS SELECTED FOR IWAMOTO DEPOSITION, AND PREPARE REPORTS RE SAME FOR EACH EXHIBIT, RELATIVITY SEARCHES AND REVIEW DOCUMENTS FOR ▮ AND ATTACHED EMAILS REFERENCING IWAMOTO, PER D. LAMBRINOS, ASSIST M. CHRISTIAN WITH WESTLAW SEARCHES FOR CLASS CERTIFICATION OPINIONS ▮ IN PREPARATION OF REPLY BRIEF, MEETING WITH D. LAMBRINOS TO REVIEW IWAMOTO OUTLINE AND DETERMINE SELECTION AND ORDER OF EXHIBITS |
| 4235916 | 2/6/2013 | RANKIE, HEATHER T. | ASSOCIATE | 0.30 | 480 | 144.00 | DRAFT INSERT DISTINGUISHING CASES CITED BY DEFS. IN THEIR NETZ DAUBERT MOTION FOR USE IN IPPS' OPPOSITION, DRAFT BRIEF SUMMARY OF EACH CASE, AND SEND TO JAZ. |
| 4236675 | 2/6/2013 | ZAHID, JUDITH A. | PARTNER | 4.40 | 675 | 2,970.00 | COORDINATE WITH PARALEGALS AND HR RE FILING FOR NEXT WEEK, CONTINUE REVISING OPPOSITION TO DAUBERT MOTION |

| 4231904 | 2/7/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 11.70 | 650 | 7,605.00 | REVIEW NETZ REBUTTAL REPORT, CORRESPONDENCE WITH B. GRALEWSKI AND D. KARON RE CLASS DECLARATIONS, CORRESPOND WITH B. GRALEWSKI AND J. BOGDANOV RE CLASS REP ISSUES, TELEPHONE CONFERENCE WITH B. GRALEWSKI RE INFO NEEDED FOR REPLY BRIEF, RECIEPT OF VARIOUS CORRESPONDENCE AND PHOTOS FROM CLASS REPS, WORK ON DRAFT CLASS CERT DECLARATION, CONFERENCE WITH R. NEWMAN RE SAME, CORRESPONDENCE WITH B. GRALEWSKI RE FACTS FOR REPLY BRIEF AND TESTIMONY SUPPORTING SAME, CORRESPONDENCE FROM ██████ CORRESPONDENCE FROM C. MICHELETTI RE PAGE LIMITATION, CONFERENCE WITH M. ALIOTO RE DECLARATION, CORRESPONDENCE WITH J. ZAHID RE SAME, CRAFT CORRESPONDENCE TO B. GRALEWSKI RE ALIOTO DECLARATION AND INFORMATION NEEDED FOR SAME, CONFERENCE WITH B. GRALEWSKI RE SAME. |
| 4232347 | 2/7/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 9.00 | 535 | 4,815.00 | PANASONIC DEPOS - IWAMOTO DAY 1 (TAKE 7), PREP FOR DAY 2 (2) |

| 4231463 | 2/7/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 8.30 | 800 | 6,640.00 | CONFER WITH M. ALIOTO REGARDING PAGE LIMIT ISSUES, ATTEND TELECONFERENCE HEARING WITH JUDGE LEGGE, REVIEW STRATEGY WITH M. CHRISTIAN AND J. ZAHID, DRAFT EMAILS TO J. NETZ, REVIEW AND REVISE REPLY BRIEF, SUPPLEMENT REPLY BRIEF WITH ADDITIONAL ARGUMENTS, REVIEW AND REVISE SUMMARY OF NETZ ANALYSES |
| 4229885 | 2/7/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 7.00 | 275 | 1,925.00 | PREPARATIONS FOR TODAY'S IWAMOTO DEPOSITION PER D. LAMBRINOS, INCLUDING: OBTAIN FROM RELATIVITY DOCUMENTS NEWLY EARMARKED AS EXHIBITS, FORMAT NEW SPREADSHEET EXHIBITS, ORGANIZE AND LABEL FILE FOLDERS CONTAINING POTENTIAL EXHIBITS, DOWNLOAD AND PREPARE METADATA REPORTS FOR ADDITIONAL POTENTIAL EXHIBITS.  ALSO:  PREPARE DEFINITIVE ELECTRONIC SET OF POTENTIAL IWAMOTO EXHIBITS TO EMAIL TO M. MCCAHILL, PREPARE FIRST DRAFT OF ALIOTO DECLARATION IN SUPPORT OF CLASS CERTIFICATION REPLY (IDENTIFYING EVIDENCE OF CLASS REPRESENTATIVES' TUBE PURCHASES), PER M. CHRISTIAN, |
| 4235922 | 2/7/2013 | RANKIE, HEATHER T. | ASSOCIATE | 0.40 | 480 | 192.00 | COMMUNICATE WITH JAZ RE AUTHORITY NEEDED FOR OPPOSITION TO DAUBERT MOTION TO STRIKE NETZ AND RESPOND TO HER INQUIRIES RE SAME. |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4233679 | 2/7/2013 | ZAHID, JUDITH A. | PARTNER | 7.30 | 675 | 4,927.50 | REVIEW DRAFT OF REPLY RE CONSISTENCY BETWEEN ARGUMENTS, ▮▮▮ OVERSEE HR REVISING MOTION TO SEAL PAPERS, CONTINUE REVISING OPPOSITION TO DAUBERT MOTION |
| 4231905 | 2/8/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 8.30 | 650 | 5,395.00 | WORK ON ALIOTO DECLARATION AND GATHERING SUPPORT FOR SAME, VARIOUS CORRESPONDENCE WITH CO-COUNSEL RE EVIDENTIARY NEEDS, CONFERENCE WITH R. NEWMAN RE COMPILATION OF EVIDENCE, EDIT AND REVISE TO COMPORT WITH EVIDENCE |
| 4235364 | 2/8/2013 | CORBITT, CRAIG C. | SR. PARTNER | 2.00 | 875 | 1,750.00 | REVIEW DRAFT CALIFORNIA SETTLEMENT NOTICE, EMAIL EMILIO RE SAME, REVIEW EXPERT MATERIAL RE CLASS CERT |
| 4232383 | 2/8/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 8.00 | 535 | 4,280.00 | PANASONIC MERITS DEPOS - IWAMOTO DAY 2 (TAKE 8, INCLUDES REBUTTAL) |
| 4231464 | 2/8/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 6.90 | 800 | 5,520.00 | REVIEW STRATEGY WITH M. CHRISTIAN AND J. ZAHID, DRAFT EMAILS TO J. NETZ, REVIEW AND REVISE REPLY BRIEF, SUPPLEMENT REPLY BRIEF WITH ADDITIONAL ARGUMENTS, REVIEW AND REVISE SUMMARY OF NETZ ANALYSES, REVIEW AND ANALYZE NETZ REBUTTAL OPINIONS |

| ID | Date | Name | Title | Hours | | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4233497 | 2/8/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 4.00 | 275 | 1,100.00 | REVIEW AND COMPILE DOCUMENTS FOR SECOND DAY OF IWAMOTO DEPOSITION, PER D. LAMBRINOS, COMPILE AND PREPARE SETS OF ADDITIONAL DOCUMENTS PER D. PETERSON OF SUSMAN GODFREY, COMPILE PHOTOGRAPHS AND DECLARATIONS RECEIVED FROM B. GRALEWSKI IN PREPARATION FOR THEIR USE AS EXHIBITS TO ALIOTO DECLARATION IN SUPPORT OF CLASS CERTIFICATION REPLY, PER M. CHRISTIAN, COMPILE EXHIBIT-STAMPED ELECTRONIC COPIES OF EXHIBITS MARKED AT KINOSHITA DEPOSITION |
| 4235923 | 2/8/2013 | RANKIE, HEATHER T. | ASSOCIATE | 3.60 | 480 | 1,728.00 | PER JAZ REQUEST, FOR USE IN OPPOSITION TO DAUBERT MOTION, GATHER, REVIEW, AND SELECT 9TH. CIR. AND CAL. DISTRICT AUTHORITY FOR VARIOUS PROPOSITIONS, INCLUDING |
| 4236889 | 2/8/2013 | ZAHID, JUDITH A. | PARTNER | 5.60 | 675 | 3,780.00 | CONFERENCE CALL WITH ███ REVISE DRAFT TO UPDATE THESE POINTS, INTERNAL DISCUSSIONS RE STRATEGY FOR CERTAIN ARGUMENTS AND CASE LAW REFERENCES |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4235384 | 2/9/2013 | CORBITT, CRAIG C. | SR. PARTNER | 2.00 | 875 | 1,750.00 | REVIEW DRAFTS AND MATERIAL RE DAUBERT OPPOSITION, CLASS CERT REPLY |
| 4231465 | 2/9/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 6.50 | 800 | 5,200.00 | REVIEW AND REVISE AND SUPPLEMENT CLASS CERTIFICATION REPLY BRIEF IN RE (B)(3) ARGUMENTS, REVIEW AND ANALYZE NETZ REBUTTAL OPINIONS, INCORPORATE SAME INTO REPLY BRIEF |
| 4233815 | 2/9/2013 | ZAHID, JUDITH A. | PARTNER | 3.80 | 675 | 2,565.00 | REVISE BRIEF IN OPPOSITION TO DAUBERT MOTION AND SEND TO M. ALIOTO AND J. NETZ FOR COMMENT, CIRCULATE TO CTM AND CCC |
| 4231466 | 2/10/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 6.20 | 800 | 4,960.00 | REVIEW AND REVISE AND SUPPLEMENT CLASS CERTIFICATION REPLY BRIEF IN RE (B)(3) ARGUMENTS, REVIEW AND ANALYZE NETZ REBUTTAL OPINIONS, INCORPORATE SAME INTO REPLY BRIEF ARGUMENTS |
| 4231909 | 2/11/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 8.80 | 650 | 5,720.00 | REVIEW OPPOSITION TO MOTION TO STRIKE AND EDIT SAME, REVIEW █████ RE MOTION TO STRIKE, GATHER EVIDENCE FOR ALIOTO DECLARATION, WORK ON INCORPORATING INTO DECLARATION AND BRIEF, CORRESPONDENCE WTIH B. GRALEWSKI RE STATUS OF CLASS REPRESENTATIVE DECLARATIONS, CONFERNECES WITH R. NEWMAN RE SAME, CORRESPOND WITH C. MICHELETTI RE RESEARCH ISSUES, WORK ON DECLARATION, RESEARCH RE CASE LAW |
| 4235449 | 2/11/2013 | CORBITT, CRAIG C. | SR. PARTNER | 3.00 | 875 | 2,625.00 | REVIEW DRAFT BRIEFS AND EXPERT REPORT RE CLASS CERT REPLY |

| 4232406 | 2/11/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 4.00 | 535 | 2,140.00 | REVIEW SUMMARIES RE WITNESSES TO IDENTIFY NEXT ROUND OF PANASONIC DEPONENTS - CREATE UPDATED CONSOLIDATED MEETINGS GRID FOR PANASONIC EMPLOYEES RE SAME |
| 4231467 | 2/11/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 7.60 | 800 | 6,080.00 | REVIEW OF DEPOSITIONS OF NETZ AND WILLIG, DRAFT EMAILS TO M. CHRISTIAN REGARDING CASE ISSUES, REVIEW AND REVISE AND SUPPLEMENT CLASS CERTIFICATION REPLY BRIEF IN RE (B)(3) ARGUMENTS, REVIEW AND ANALYZE NETZ REBUTTAL OPINIONS, INCORPORATE SAME INTO REPLY BRIEF ARGUMENTS |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4233530 | 2/11/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 4.60 | 275 | 1,265.00 | COMPILE SEVERAL EXHIBITS MARKED AT THE IWAMOTO DEPOSITION PER REQUEST BY COURT REPORTER, COMPILE ADDITIONAL SIGNED NAMED-PLAINTIFF DECLARATIONS RECEIVED FROM B. GRALEWSKI, AND REVIEW DRAFT ALIOTO DECLARATION IN SUPPORT OF CLASS CERTIFICATION REPLY, AND PHOTOGRAPHIC EVIDENCE TO BE ATTACHED TO SAME, TO DETERMINE INFORMATION RE PURCHASES THAT HAS YET TO BE RECEIVED, PER M. CHRISTIAN, REVIEW FILES AND DISCUSSION WITH D. LAMB RE OBTAINING TRANSCRIPTS OF THIRD-PARTY 30(B)(6) DEPOSITIONS NEEDED BY C. MICHELETTI FOR PREPARATION OF REPLY BRIEF, DISCUSSION WITH M. CHRISTIAN RE EDITS TO ALIOTO DECLARATION, PROOFREAD AND EDIT NEW DRAFT OF ASCERTAINABILITY SECTION OF CLASS CERTIFICATION REPLY BRIEF, PER M. CHRISTIAN, EDIT ALIOTO REPLY DECLARATION TO REFLECT NEWLY ADDED EXHIBITS AND OTHER CHANGES, PER M. |
| 4233824 | 2/11/2013 | ZAHID, JUDITH A. | PARTNER | 6.10 | 675 | 4,117.50 | REVIEW ███████ TO MY DRAFT, CONFER INTERNALLY ON REMAINING PROJECTS, COORDINATION BETWEEN TWO BRIEFS, ETC., REVIEW ██████ ██████ TO DRAFT AND INCORPORATE, CONTINUE REVISING AND EDITING CURRENT DRAFT |

| 4231910 | 2/12/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 11.20 | 650 | 7,280.00 | CORRESPONDENCE WITH J. ZAHID RE UPCOMING WORK ALLOCATION FOR FILINGS, REVIEW CURRENT DRAFT OF REPLY BRIEF AND EDIT SAME, CORRESPONDENCE WITH B. GRALEWSKI RE ██████ EDIT AND REVISE OPPOSITION TO DAUBERT MOTION, CONFERENCE WITH J. ZAHID RE SAME, CORRESPOND WITH ██████ CORRESPONDENCE WITH B. GRALEWSKI RE DEPOSITION TRANSCRIPT CITES, DRAFT REVISIONS TO ALIOTO DECLARATION AND CIRCULATE SAME TO CO-COUNSEL, CORRESPOND WITH CO-COUNSEL RE SAME, REVIEW COSTCO AND BEST BUY DEPOSITIONS FOR ██████ TESTIMONY, CORRESPONDENCE FROM CO-COUNSEL RE CLASS REPRESENTATIVE DEPOSITION TESTIMONY, ██████ CORRESPOND WITH CO-COUNSEL RE FACT WITNESS DEPOSITIONS, REVIEW REVISIONS TO DAUBERT OPPOSITION, REVIEW REVISED INFORMATION FROM EXPERTS RE TUBE INFO, CORRESPONDENCE TO C. MICHELETTI RE EDITS TO REPLY BRIEF, |
| 4235495 | 2/12/2013 | CORBITT, CRAIG C. | SR. PARTNER | 2.50 | 875 | 2,187.50 | REVIEW DRAFTS AND OFFICE CONFERENCE RE CLASS CERT REPLY, EXPERT REPORT |

| | | | | | |
|---|---|---|---|---|---|
| 4232415 | 2/12/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 5.50 | 535 | 2,942.50 | PREP FOR NEXT ROUND OF WITNESSES - REVIEW DOCUMENTS AND BUILD CHART LISTING RELEVENT PANASONIC EMPLOYEES - NISHIYAMA DEPO PREP, REQUEST TO REVIEW DOCUMENTS FROM P'S GROUP, DRAFT EMAIL TO HEMLOCK RE LOGISTICS |
| 4231468 | 2/12/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 8.50 | 800 | 6,800.00 | REVIEW AND REVISE AND SUPPLEMENT CLASS CERTIFICATION REPLY BRIEF IN RE (B)(3) ARGUMENTS, REVIEW AND ANALYZE NETZ REBUTTAL OPINIONS, INCORPORATE SAME INTO REPLY BRIEF ARGUMENTS, LEGAL RESEARCH REGARDING REPLY ISSUES |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4233549 | 2/12/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 5.80 | 275 | 1,595.00 | OBTAIN EIGHT DIRECT-ACTION CRT COMPLAINTS CITED IN DEFENDANTS' CLASS CERTIFICATION OPPOSITION BRIEF, AND COMPILE ▮▮▮ PER M. CHRISTIAN, IN PREPARATION OF REPLY BRIEF, REVIEW DRAFT LIST OF POTENTIAL MERITS DEPONENTS TO BE SENT TO PANASONIC COUNSEL, AND ELIMINATE DUPLICATES PER D. LAMBRINOS, COMPARE DRAFT LIST OF POTENTIAL MERITS DEPONENTS AGAINST CONSPIRACY MEETING GRID AND OTHER LISTS, AND ADD NAMES NOT ALREADY ON WITNESS LIST, PER D. LAMBRINOS, REVIEW EXHIBITS TO DEPOSITION OF I.H. SONG FOR ▮▮▮ PER D. LAMBRINOS, IN PREPARATION TO ADD NAMES TO LIST OF POTENTIAL MERITS DEPONENTS, MEETING WITH D. LAMBRINOS TO REVIEW NAMES ON LIST OF POTENTIAL PANASONIC MERITS DEPONENTS, EDIT ALIOTO REPLY DECLARATION WITH REFERENCES TO NEWLY ADDED EVIDENCE RE ASCERTAINABILITY, PER M. CHRISTIAN. |
| 4235932 | 2/12/2013 | RANKIE, HEATHER T. | ASSOCIATE | 0.30 | 480 | 144.00 | COMMUNICATE WITH JAZ RE CLASS CERT. REPLY AND DAUBERT OPPOSITION TO BE FILED FRIDAY, COMPLETE LIST OF ALL DOCUMENTS TO FILE FOR JAZ REVIEW. |

| 4233831 | 2/12/2013 | ZAHID, JUDITH A. | PARTNER | 10.20 | 675 | 6,885.00 | REVIEW C. CORBITT SUGGESTIONS TO BRIEF, WORK WITH M. CHRISTIAN TO RESTRUCTURE INTRO AND ORDER OF ARGUMENTS, START WORKING WITH SYLVIE KERN TO EDIT AND REVISE BRIEF, DISCUSS WITH M. ALIOTO RE SAME, CONTINUE TO REVISE |
| 4231917 | 2/13/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 11.20 | 650 | 7,280.00 | RECEIPT OF VARIOUS CLASS REPRESENTATIVE DEPOSITION TESTIMONY, CORRESPOND WTIH EXPERTS AND CO-COUNSEL RE TUBE MATCHING ISSUES, CORRESPONDENCE TO C. MICHELETTI RE BEST BUY AND COSTCO TESTIMONY, REVIEW ██████ REVISIONS FROM ██████ EDIT ██████ ASCERTAINABILITY/ADEQUACY INSERT TO FERFLECT LATEST CLASS REPRESENTATIVE INFORMATION, CONFERNCE WITH H. RANKIE RE WILLIG CASES, REVIEW SAME, CONFERENC EWITH J. ZAHID RE EDITS TO DAUBERT OPPOSITION, RECEIPT OF REVISED APPENDIX A, CORRESPOND WITH CO-COUNSEL RE CLASS REPRESENTATIVE DEPOSITION TESTIMONY, CORRESPOND WITH H. RANKIE RE SEALING ISSUES FOR ALIOTO DECLARATION, VARIOUS CORRESPONDENCE WITH ██████ REVIEW "BUT FOR" ARGUMENT AND CASE LAW RE SAME, CONFERENCES WITH R. NEWMAN RE EVIDENTIARY ATTACHMENTS TO ALIOTO DECLARATION, CORRESPOND WITH J. ZAHID RE FURTHER EDITS TO DAUBERT |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4235961 | 2/13/2013 | CORBITT, CRAIG C. | SR. PARTNER | 4.00 | 875 | 3,500.00 | REVIEW DRAFT EXPERT REPORT, DAUBERT OPPOSITION, CLASS CERT REPLY, EMAIL AND OFFICE CONFERENCE RE SAME |
| 4232423 | 2/13/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 5.00 | 535 | 2,675.00 | PANASONIC DEPOS - IDENTIFY NEXT ROUND OF WS - SUMMARY EMAIL/GRID TO LR AND NC AND PS GROUP, SECURE ALTERNATE CHECK TRANSLATOR FROM DAPS FOR NISHIYAMA, DOCS REQUESTED FROM SHINAE, LISTING SPECIFIC NAMES, EXCHANGE RATE HIGHLIGHTS FROM IWAMOTO TO JZ |
| 4231469 | 2/13/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 11.60 | 800 | 9,280.00 | REVIEW AND REVISE AND SUPPLEMENT CLASS CERTIFICATION REPLY BRIEF IN RE (B)(3) ARGUMENTS, REVIEW AND ANALYZE NETZ REBUTTAL OPINIONS, INCORPORATE SAME INTO REPLY BRIEF ARGUMENTS, LEGAL RESEARCH REGARDING REPLY ISSUES, DRAFT EMAIL ██████ CONFER WITH M. CHRISTIAN AND J. ZAHID REGARDING STRATEGY |

| 4233554 | 2/13/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 9.70 | 275 | 2,667.50 | PREPARE GRID OF INFORMATION CULLED FROM DRAFT LIST OF POTENTIAL PANASONIC MERITS DEPONENTS, PER D. LAMBRINOS, EDIT LIST OF POTENTIAL PANASONIC MERITS DEPONENTS, INCLUDING ELIMINATION OF DUPLICATES, REVIEW KINOSHITA AND IWAMOTO DEPOSITIONS AND ANNOTATE LIST OF POTENTIAL PANASONIC MERITS DEPONENTS WITH INFORMATION RE KINOSHITA AND IWAMOTO COMMENTS ON THESE INDIVIDUALS, PER D. LAMBRINOS, REVIEW PANASONIC AND TOSHIBA INTERROGATORY RESPONSES AND ADD NAMES FROM SAME TO LIST OF POTENTIAL PANASONIC MERITS DEPONENTS, PER D. LAMBRINOS, REVIEW CURRENT DRAFT OF ALIOTO REPLY DECLARATION, AND PRINT OUT AND REVIEW EVIDENCE CITED THEREIN, PER M. CHRISTIAN, MEETING WITH M. CHRISTIAN TO REVIEW ASCERTAINABILITY EVIDENCE CITED IN CURRENT DRAFT OF ALIOTO REPLY DECLARATION, AND REVISE ELECTRONIC COPIES OF EXHIBITS, COMPILE ELECTRONIC AND PAPER SETS OF EXHIBITS TO APPENDIX A TO ALIOTO |

| ID | Date | Name | Role | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4235936 | 2/13/2013 | RANKIE, HEATHER T. | ASSOCIATE | 7.50 | 480 | 3,600.00 | FOR CLASS CERT. REPLY AND MTS OPPOSITION PAPERS, DRAFT ADMIN. SEALING MOTION PAPERS, DRAFT ZAHID DECL. ISO MTS OPPOSITION, CONTRIBUTE SUBSTANTIVELY TO CONTENT OF REPLY RE ▉ AND HANDLE OTHER MISCELLANEOUS EDITS AND RESEARCH ASSIGNED BY JAZ. |
| 4233834 | 2/13/2013 | ZAHID, JUDITH A. | PARTNER | 11.80 | 675 | 7,965.00 | WORK CLOSELY WITH SYLVIE KERN TO EDIT AND REVISE DAUBERT OPPOSITION BRIEF, REVIEW NETZ DECLARATION ▉ REVIEW NETZ REBUTTAL REPORT, STRATEGIZE WITH CTM AND MC RE ARGUMENTS, REVISE AND EDIT BRIEF ALL DAY |
| 4231284 | 2/14/2013 | BABIONE, MARIE J. | PARALEGAL (3) | 2.50 | 235 | 587.50 | ASSIST IN FORMATTING AND REVISING PLEADINGS RE: CLASS CERT. |
| 4231921 | 2/14/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 9.60 | 650 | 6,240.00 | CORRESPONDENCE WITH CO-COUNSEL RE EVIDENTIARY ARGUMENTS TO APPENDIX A, CORRESPONDENCE WITH J. ZAHID RE ▉ ARGUMENT MADE BY DEFENDANTS, DRAFT INSERT FOR REPLY BRIEF AND DAUBERT OPPOSITION REFUTING DEFENDANTS ▉ ARGUMENT, RESEARCH AND DRAFT ARGUMENT FOR REPLY BRIEF REFUTING DEFENDANTS ARGUMENT ON CLASS-WIDE INJURY |
| 4235971 | 2/14/2013 | CORBITT, CRAIG C. | SR. PARTNER | 2.00 | 875 | 1,750.00 | REVIEW DRAFTS OF CLASS CERT REPLY FILINGS |
| 4231437 | 2/14/2013 | LAMB, DENISE M. | PARALEGAL (3) | 1.00 | 230 | 230.00 | MEET WITH COURT REPORTER AND COPY EXHIBITS |

| 4232452 | 2/14/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 5.00 | 535 | 2,675.00 | PANASONIC DEPO PREP - NISHIYAMA (EMAILS TO DOC REVIEW TEAMS), DRAFT EMAIL TO HEMLOCK RE DEPO LOGISTICS, CLASS CERT EMAIL TO MC AND CTM RE COMCAST DECISION AND HP, TOSHIBA X-OVER EMAIL TO DB, COORDINATE WITH DPPS RE IWAMOTO/NISHIYAMA HOT DOC REVIEW CHART |
| 4231470 | 2/14/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 12.00 | 800 | 9,600.00 | REVIEW AND REVISE AND SUPPLEMENT CLASS CERTIFICATION REPLY BRIEF IN RE (B)(3) ARGUMENTS, REVIEW AND ANALYZE NETZ REBUTTAL OPINIONS, INCORPORATE SAME INTO REPLY BRIEF ARGUMENTS, LEGAL RESEARCH REGARDING REPLY ISSUES, DRAFT EMAILS TO EXPERTS REGARDING OPINIONS AND ISSUES, CONFER WITH M. CHRISTIAN AND J. ZAHID REGARDING STRATEGY, REVIEW OF COMMENTS FROM L. CAPURRO REGARDING BRIEF EDITS AND EMAIL EXCHANGE REGARDING SAME, INCORPORATE EDITS |

| 4233564 | 2/14/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 8.70 | 275 | 2,392.50 | KEYCITE CASES AND CHECK CITATIONS AND QUOTES IN DAUBERT OPPOSITION BRIEF, AND EDIT BRIEF ACCORDINGLY, PER J. ZAHID, EMAILS TO/FROM J. ZAHID, H. RANKIE AND OTHERS RE MECHANICS OF FILING CLASS CERTIFICATION REPLY AND DAUBERT OPPOSITION PAPERS TOMORROW, REVISE EXHIBITS TO ALIOTO REPLY DECLARATION PER M. CHRISTIAN, COMPILE COMPLETE SET OF EXHIBITS MARKED AT FEBRUARY 7-8 IWAMOTO DEPOSITION IN PREPARATION TO PROVIDE SAME TO D. LAMBRINOS TO PREPARE FOR NISHIYAMA DEPOSITION, KEYCITE CASES AND CHECK CITATIONS AND QUOTES IN CLASS CERTIFICATION REPLY BRIEF, PER C. MICHELETTI, MEETING WITH C. MICHELETTI, J. ZAHID AND H. RANKIE RE LOGISTICS FOR TOMORROW'S FILING AND FINALIZING OF PAPERS |
| 4235940 | 2/14/2013 | RANKIE, HEATHER T. | ASSOCIATE | 8.90 | 480 | 4,272.00 | FOR CLASS CERT REPLY BRIEF AND OPPOSITION TO MTS NETZ, CONDUCT LEGAL RESEARCH AND CREATE CITATIONS AND INSERTS FOR BRIEFS FOR JAZ, HELP OVERSEE GATHERING OF ALL SUPPORTING PAPERS, CITATIONS THERETO, ETC. |
| 4231627 | 2/14/2013 | STEELE, MONICA J. | PARALEGAL (3) | 3.50 | 235 | 822.50 | ASSIST WITH EDITS AND FORMATTING TO IPP'S OPPOSITION TO DEFENDANTS MOTION TO STRIKE TESTIMONY OF DR. NETZ. |

| 4233838 | 2/14/2013 | ZAHID, JUDITH A. | PARTNER | 12.20 | 675 | 8,235.00 | CONTINUE TO WORK CLOSELY WITH SYLVIE KERN TO EDIT AND REVISE DAUBERT OPPOSITION BRIEF, PROOF AND FINALIZE ACCOMPANYING PAPERS, WORK INTERNALLY WITH GROUP TO MAKE SURE BRIEFS ARE CONSISTENT, HELP APPLECON FINALIZE DECLARATIONS |
|---|---|---|---|---|---|---|---|
| 4231285 | 2/15/2013 | BABIONE, MARIE J. | PARALEGAL (3) | 8.80 | 235 | 2,068.00 | ASSIST IN FORMATTING AND REVISING PLEADINGS RE: CLASS CERT. |
| 4231922 | 2/15/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 11.00 | 650 | 7,150.00 | WORK ON FINALIZING REPLY IN SUPPORT OF CLASS CERTIFICATION AND OPPOSITION TO DAUBERT, VARIOUS CONFERENCES WITH C. MICHELETTI, J. ZAHID, R. NEWMAN, H. RANKIE, M. BABIONE AND M. STEELE RE SAME |
| 4232461 | 2/15/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.00 | 535 | 1,605.00 | EMAILS TO DOC REVIEW TEAM RE PREP FOR NISHIYAMA DEPOSITION - DRAFT EMAIL TO HEMLOCK RE EXTENDING DEPO TO 3 DAYS AND QUESTION RE JAPANESE PRIVACY LAW |
| 4235512 | 2/15/2013 | MANDEL, ERIC P. | DISCOV COUNSEL | 0.30 | 640 | 192.00 | CONTINUE REVIEW OF HITACHI TAPE CATALOGUES. |

| 4231471 | 2/15/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 5.40 | 800 | 4,320.00 | REVIEW AND REVISE AND FINALIZE CLASS CERTIFICATION REPLY BRIEF IN RE (B)(3) ARGUMENTS, REVIEW AND ANALYZE NETZ REBUTTAL OPINIONS, INCORPORATE NETZ DECLARATION CITATIONS INTO REPLY BRIEF ARGUMENTS, DRAFT EMAILS TO EXPERTS REGARDING OPINIONS AND ISSUES, CONFER WITH M. CHRISTIAN AND J. ZAHID REGARDING STRATEGY, REVIEW OF COMMENTS FROM L. CAPURRO REGARDING BRIEF EDITS AND CONFER WITH M. CHRISTIAN REGARDING SAME, TELEPHONE CALL WITH J. ZAHID REGARDING BRIEF STATUS |
|---------|-----------|----------------------|-------------|------|-----|----------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|

| | | | | | |
|---|---|---|---|---|---|
| 4233572 | 2/15/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 12.80 | 275 | 3,520.00 | PROOFREAD AND FINISH CHECKING CITATIONS AND QUOTES IN CLASS CERTIFICATION REPLY BRIEF, AND EDIT SAME ACCORDINGLY, PER C. MICHELETTI, REVISE AND FINALIZE EXHIBITS TO APPENDIX A (COMPENDIUM OF CLASS REPRESENTATIVE DEPOSITION TESTIMONY RE ADEQUACY) TO ALIOTO REPLY DECLARATION, EDIT AND FINALIZE MAIN BODY OF APPENDIX A, EDIT ALIOTO REPLY DECLARATION TO INCLUDE NEWLY ADDED EXHIBITS, PER H. RANKIE, PREPARE GRAYED-OUT VERSION OF NETZ DECLARATION IN SUPPORT OF OPPOSITION TO MOTION TO STRIKE NETZ TESTIMONY, PER J. ZAHID, PROOFREAD, EDIT AND FINALIZE CLASS CERTIFICATION REPLY AND DAUBERT OPPOSITION BRIEFS, PREPARE FINAL ELECTRONIC VERSIONS OF ALL DOCUMENTS TO BE FILED, UPLOAD SAME TO FTP SITE, AND FINALIZE AND SERVE EMAIL ATTACHING LINK TO THE FILES, MEETINGS WITH M. CHRISTIAN RE FINAL EDITS TO THE BRIEFS AND SERVICE OF THE PAPERS |
| 4235943 | 2/15/2013 | RANKIE, HEATHER T. | ASSOCIATE | 8.70 | 480 | 4,176.00 | WORK WITH ZELLE TEAM TO FINALIZE AND FILE MOTION TO STRIKE OPPOSITION AND CLASS CERT. REPLY PAPERS, INCLUDING EDITS TO BOTH BRIEFS AND REVIEW OF SUPPORTING DOCUMENTS. |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4231628 | 2/15/2013 | STEELE, MONICA J. | PARALEGAL (3) | 6.00 | 235 | 1,410.00 | ASSIST WITH EDITS AND FORMATTING TO IPP'S OPPOSITION TO DEFENDANTS MOTION TO STRIKE TESTIMONY OF DR. NETZ, MOTION TO SEAL DOCUMENTS, FILE AND SERVICE |
| 4233845 | 2/15/2013 | ZAHID, JUDITH A. | PARTNER | 10.40 | 675 | 7,020.00 | EDIT, FINALIZE, AND HELP WITH ALL ACCOMPANYING FILINGS DUE TODAY, REVIEW PLEADINGS AND NETZ DECLARATION FOR REDACTIONS, CHECK ALL REDACTED VERSIONS FOR PROPER LEGENDS AND GREY-OUTS, STAY AND OVERSEE FINAL PROCESS TO ENSURE ALL WILL BE PROPERLY REDACTED AND SERVED |
| 4231450 | 2/19/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.50 | 875 | 1,312.50 | REVIEW CLASS CERT REPLY BRIEF AND EXPERT REPORTS, EMAIL RE DEMAND FOR ANOTHER NETZ DEPOSITION |
| 4232880 | 2/19/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 1.50 | 535 | 802.50 | PANASONIC DEPOSITIONS - REVIEW DOCUMENTS FOR NISHIYAMA - EMAIL TO HEMLOCK RE SCHEDULING AND FORMER WITNESSES |
| 4232554 | 2/19/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 2.40 | 800 | 1,920.00 | REVIEW OF REPLY BRIEF AND REVIEW EXPERT DECLARATION IN RE SUPPORT CITED IN BRIEF |
| 4233612 | 2/19/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 1.80 | 275 | 495.00 | COMPILE SET OF EXHIBITS MARKED AT KINOSHITA DEPOSITION, PER D. LAMBRINOS, IN PREPARATION TO REVIEW SAME FOR REFERENCES TO NISHIYAMA, PROCESS DISC CONTAINING BACKUP FOR NETZ REBUTTAL DECLARATION IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, AND UPLOAD CONTENTS OF SAME TO FTP SITE IN PREPARATION TO SERVE DEFENSE COUNSEL, PER J. ZAHID |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4234606 | 2/19/2013 | ZAHID, JUDITH A. | PARTNER | 1.60 | 675 | 1,080.00 | COORDINATE WITH APPLECON AND M. ALIOTO AND SERVE THE BACK-UP TO THE REBUTTAL REPORT ON DEFENDANTS |
| 4231443 | 2/20/2013 | CORBITT, CRAIG C. | SR. PARTNER | 2.00 | 875 | 1,750.00 | REVIEW CLASS CERT REPLY FILINGS, EMAIL FROM MARIO RE STATUS, CONFERENCE CALL |
| 4232953 | 2/20/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 1.00 | 535 | 535.00 | PANASONIC MERITS DEPOS - REVIEW DOCUMENTS FOR NISHIYAMA (.5), EMAIL TO HEMLOCK RE LOGISTICS AND COORDINATING EMAILS TO DPPS AND DAPS RE CHECK TRANSLATOR (.5) |
| 4235513 | 2/20/2013 | MANDEL, ERIC P. | DISCOV COUNSEL | 1.50 | 640 | 960.00 | CONTINUE REVIEW OF HITACHI TAPE CATALOGUES. |
| 4232555 | 2/20/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 2.40 | 800 | 1,920.00 | REVIEW OF REPLY BRIEF AND REVIEW EXPERT DECLARATION IN RE SUPPORT CITED IN BRIEF, PREPARE ERRATA, CONFER WITH J. ZAHID, CASE FILE ORGANIZATION, DRAFT EMAIL TO M. ALIOTO REGARDING SAME |
| 4234492 | 2/21/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 875 | 875.00 | CONFERENCES WITH KATHLEEN FOOTE AND CALIFORNIA AG STAFF, CO-COUNSEL RE CASE STATUS AND STRATEGY, REVIEW MATERIAL RE SAME |
| 4235302 | 2/21/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 1.00 | 535 | 535.00 | PANASONIC MERITS DEPOS - COORDINATING EMAILS TO DAPS AND DEFENDANT RE SCHEDULING |
| 4235515 | 2/21/2013 | MANDEL, ERIC P. | DISCOV COUNSEL | 0.30 | 640 | 192.00 | CONTINUE REVIEW OF HITACHI TAPE CATALOGUES. |
| 4233673 | 2/21/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 0.70 | 275 | 192.50 | OBTAIN IWAMOTO DEPOSITION EXHIBITS FROM VERITEXT WEB SITE, AND PREPARE LIST OF BATES NUMBERS OF SAME, SET UP IWAMOTO AND KINOSHITA DEPOSITION EXHIBITS ON NETWORK DRIVE |

| 4232494 | 2/22/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 875 | 875.00 | CALL WITH MARIO RE STATUS AND STRATEGY, OFFICE CONFERENCES RE SAME |
|---|---|---|---|---|---|---|---|
| 4235357 | 2/22/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 5.00 | 535 | 2,675.00 | PANASONIC DEPOSITIONS - NISHIYAMA - REVIEW DOCUMENTS RE BUSINESS PLANS, MARKET MONITORING, GSM, TABLES FROM SHINA, EXCEL SHEET RE NEXT POTENTIAL WS, DEPO SUMMARY COORDINATION |
| 4233820 | 2/22/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 4.60 | 275 | 1,265.00 | REVIEW VARIOUS LISTS RECEIVED FROM CO-COUNSEL RE HOT DOCUMENTS PERTAINING TO HIROKAZU NISHIYAMA, AND PULL THOSE DOCUMENTS, THEIR FAMILY MEMBERS AND THEIR METADATA FROM RELATIVITY, PER D. LAMBRINOS, IN PREPARATION FOR MARCH 5-7 NISHIYAMA DEPOSITION, FORMAT FOR PRINTING EXCEL AND POWERPOINT FILES PULLED FOR NISHIYAMA DEPOSITION PREPARATIONS, COMPILE AND ORGANIZE PRINTED SET OF HOT DOCUMENTS FOR NISHIYAMA DEPOSITION, REVIEW CONSPIRACY MEETINGS GRID AND INTERROGATORY RESPONSES FROM ALL DEFENDANTS, AND PREPARE CHART LISTING DETAILS OF ALL MEETINGS ATTENDED BY NISHIYAMA, PER D. LAMBRINOS |
| 4232556 | 2/24/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 3.00 | 800 | 2,400.00 | REVIEW OF REPLY BRIEF AND REVIEW EXPERT DECLARATION IN RE SUPPORT CITED IN BRIEF, |

| 4233858 | 2/25/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 1.30 | 650 | 845.00 | CONFERENCE WITH C. LEBSOCK RE CASE STATUS AND DIRECT PURCHASER ISSUES, CONFERENCE WITH D. LAMBRINOS RE JAPANESE LAW RE IDENTIFYING POTENTIAL DEPONENTS AND STRATEGY RE SAME, CONFERENCE WITH R. NEWMAN AND D. LAMBRINOS RE DEPOSITION PREPARATION ISSUES AND DOCUMENTS SENT BY DIRECT AND INDIRECT REVIEW TEAMS. |
| 4235479 | 2/25/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 5.50 | 535 | 2,942.50 | PANASONIC DEPOS - NISHIYAMA - REVIEW DOCUMENTS FROM SHINAE AND DB AND CA AG AND DAPS, SML DOC SPREADSHEET, TRANSLATION OBJECTION EMAILS FROM PALUMBO |
| 4233835 | 2/25/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 7.30 | 275 | 2,007.50 | REVIEW MULTIPLE LISTS AND EMAILS RE POTENTIAL NISHIYAMA DEPOSITION EXHIBITS, PREPARE CHART TO TRACK SAME, AND SEARCH FOR AND DOWNLOAD NEW DOCUMENTS FROM RELATIVITY FOR REVIEW BY D. LAMBRINOS, DISCUSSIONS WITH D. LAMBRINOS RE ADDITIONAL TRANSLATIONS NEEDED AND OTHER ISSUES WITH POTENTIAL NISHIYAMA DEPOSITION EXHIBITS, COMPILE DOCUMENTS AND PREPARE EMAIL TO N. CIHLAR RE NEW TRANSLATIONS NEEDED, ... |
| 4233115 | 2/26/2013 | LAMB, DENISE M. | PARALEGAL (3) | 3.50 | 230 | 805.00 | REVIEW AND INDEX DEPOSITION EXHIBITS. |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4235473 | 2/26/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 5.00 | 535 | 2,675.00 | PANASONIC DEPO - NISHIYAMA PREP - REVIEW DOCUMENTS FROM DB WORKSHEET AND SHINAE LIST, LOGISTICS EMAILS RE ATTENDEES/NAMES, DEPO MANAGEMENT FOLDER (REVIEW), PRIVACY LAW EMAIL (DB) |
| 4235516 | 2/26/2013 | MANDEL, ERIC P. | DISCOV COUNSEL | 0.40 | 640 | 256.00 | COMMUNICATE W/J MOY RE: STATUS OF REVIEW OF HITACHI TAPE CATALOGUES, PROVIDE D LAMBRINOS WITH ACCESS TO WIKISPACES |
| 4235344 | 2/26/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 1.00 | 800 | 800.00 | FURTHER REVIEW OF REPLY BRIEF CITATION ISSUES, CONFER WITH EXPERTS VIA EMAIL REGARDING SAME, CONFER WITH J. ZAHID REGARDING SAME |
| 4233978 | 2/26/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 7.10 | 275 | 1,952.50 | REVIEW AND COMPILE SEVERAL HUNDRED DOCUMENTS ON RELATIVITY FOR REVIEW BY D. LAMBRINOS FOR NISHIYAMA DEPOSITION, DISCUSSIONS WITH D. LAMBRINOS RE ADDITIONAL DOCUMENTS TO BE OBTAINED OR TRANSLATED |
| 4233666 | 2/27/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 1.60 | 650 | 1,040.00 | REVIEW DEPOSITION ISSUES WITH D. LAMBRINOS, REVIEW ███ AND APPLICABILITY TO REPLY IN SUPPORT OF CLASS CERTFICATION, WORK ON CASE COMPILATION, CORRESPOND WITH J. ZAHID AND C. MICHELETTI RE SAME. |
| 4233562 | 2/27/2013 | LAMB, DENISE M. | PARALEGAL (3) | 3.00 | 230 | 690.00 | REVIEW AND INDEX DEPOSITION EXHIBITS. |

| 4235482 | 2/27/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 7.50 | 535 | 4,012.50 | PANASONIC MERITS DEPOS - NISHIYAMA - HEMLOCK EMAIL DRAFT AND CIRCULATE AMONG PLAINTIFFS' GROUPS AND SEND TO HEMLOCK - EMAIL TO LR AND NC RE JAPANESE PRIVACY LAW, EMAIL RE EXTRA DAYS FOR KINOSHITA ERATTA |
| 4235576 | 2/27/2013 | MANDEL, ERIC P. | DISCOV COUNSEL | 0.40 | 640 | 256.00 | CONTINUE REVIEW OF HITACHI TAPE CATALOGUE LOGS. |
| 4235354 | 2/27/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 2.40 | 800 | 1,920.00 | FURTHER REVIEW OF REPLY BRIEF CITATION ISSUES, CONFER WITH EXPERTS VIA EMAIL REGARDING SAME, CONFER WITH J. ZAHID REGARDING SAME, REVIEW AND ANALYZE SUPREME COURT DECISION FOR CITATION TO LEGGE, |

| 4234008 | 2/27/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 6.70 | 275 | 1,842.50 | REVIEW AND COMPILE ADDITIONAL DOCUMENTS ON RELATIVITY FOR REVIEW BY D. LAMBRINOS FOR NISHIYAMA DEPOSITION, BASED ON NEW HOT-DOCUMENT LISTS RECEIVED FROM CO-COUNSEL IN THE PAST FEW DAYS, SEARCH SELECTED DOCUMENTS AND METADATA ON RELATIVITY FOR REFERENCES TO NISHIYAMA, PER D. LAMBRINOS, DISCUSSIONS WITH D. LAMBRINOS RE ADDITIONAL DOCUMENTS AND TRANSLATIONS NEEDED FOR NISHIYAMA DEPOSITION, COMPILE COPIES OF CLASS CERTIFICATION-RELATED OPINIONS REQUESTED BY JUDGE LEGGE, PER J. ZAHID, REVIEW OUTLOOK FILES AND HARD COPIES OF D. LAMBRINOS NOTES, AND PREPARE LIST OF TRANSLATIONS REQUESTED TO DATE FOR NISHIYAMA DEPOSITION AND TRANSLATIONS STILL NEEDED, PER D. LAMBRINOS |
| 4235429 | 2/27/2013 | ZAHID, JUDITH A. | PARTNER | 2.90 | 675 | 1,957.50 | WORK ON CASES TO SELECT AND DELIVER TO JUDGE LEGGE'S CHAMBERS CITED IN BRIEFS FILED ON 2/15, REVIEW NEW SUPREME COURT DECISION AND DISCUSS IF SHOULD FILE IN CRTS AS NEW AUTHORITY, REVIEW RECENT PANASONIC DEPOSITION MATERIALS |
| 4235388 | 2/28/2013 | LAMB, DENISE M. | PARALEGAL (3) | 3.50 | 230 | 805.00 | REVIEW AND INDEX DEPOSITION EXHIBITS. |

| ID | Date | Name | Role | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4235492 | 2/28/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 7.50 | 535 | 4,012.50 | PANASONIC DEPO - NISHIYAMA - PREP - REVIEW DOCUMENTS RE GREEN MEETINGS/SML MEETINGS/ASEAN MEETINGS - EMAILS TO LARUREN AND NATE RE SAME - COORDINATING DOC REVIEW TEAM, CALL TO RUI RE CHECK TRANSLATION |
| 4235518 | 2/28/2013 | MANDEL, ERIC P. | DISCOV COUNSEL | 1.30 | 640 | 832.00 | CONTINUE REVIEW OF HITACHI TAPE CATALOGUE LOGS. |
| 4235362 | 2/28/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 1.60 | 800 | 1,280.00 | FINALIZE ERRATA PAPERS, CONFER WITH J. ZAHID AND M. STEELE REGARDING SAME, DRAFT EMAIL TO M. ALIOTO REGARDING SAME, REVIEW OF DRAFT EMAIL TO LEGGE REGARDING CLERK ISSUE, RESPOND TO SAME, REVIEW OF KESSLER LETTER |
| 4235419 | 2/28/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 2.80 | 275 | 770.00 | REVIEW AND DOWNLOAD ADDITIONAL DOCUMENTS AND METADATA FROM RELATIVITY IN PREPARATION FOR NISHIYAMA DEPOSITION, PER D. LAMBRINOS, INCLUDING SPREADSHEETS RE "GREEN MEETINGS", DISCUSSIONS WITH D. LAMBRINOS RE NEXT STEPS IN PREPARATIONS FOR NISHIYAMA DEPOSITION, INCLUDING ADDITIONAL CERTIFIED TRANSLATIONS NEEDED, COMPILE NEW DOCUMENTS TO BE TRANSLATED AND PREPARE EMAIL TO S. |
| 4235340 | 2/28/2013 | STEELE, MONICA J. | PARALEGAL (3) | 2.00 | 235 | 470.00 | ASSIST WITH ECF FILING AND SERVICE RE ADMINISTRATIVE MOTION RE FILING UNDER SEAL, ERRATA TO REPLY BRIEF OF IPPS' MOTION FOR CLASS CERTIFICATION |

| 4234612 | 2/28/2013 | ZAHID, JUDITH A. | PARTNER | 3.80 | 675 | 2,565.00 | REVIEW LETTER FROM DEFENDANTS RE HIRING A CLERK AND M. ALIOTO'S RESPONSE PER HIS REQUEST, REVIEW AND DISCUSS SERVING AN ERRATA TO THE REPLY, HAVE MOTION TO SEAL PAPERS PREPARED, FINALIZE AND FILE & SERVE RE ERRATA AND SEALING PAPERS |
| 4239350 | 3/1/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.70 | 650 | 455.00 | INTERNAL CORRESPONDENCE RE SUPPLEMENTAL CASE LAW, CORRESPOND WITH DXL RE DEPOSITION TESTIMONY, INTERNAL CORRESPONDENCE RE DISTRIBUTION OF UNREDACTED BRIEF. |
| 4246825 | 3/1/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 5.00 | 535 | 2,675.00 | PANASONIC - MERITS DEPO PREP - NISHIYAMA - REVIEW DOCS, CTS, LOGISTICS |
| 4246725 | 3/1/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 0.40 | 800 | 320.00 | REVIEW EMAIL FROM G. SAVERI REGARDING COURT COMMUNICATION, RESEARCH AND DRAFT RESPONSE THERETO, REVIEW FURTHER COMMUNICATION FROM G. SAVERI AND DRAFT FURTHER RESPONSE THERETO |

| 4237743 | 3/1/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 8.60 | 275 | 2,365.00 | REVIEW DOCUMENTS AND METADATA ON RELATIVITY FOR POTENTIAL NISHIYAMA DEPOSITION EXHIBITS TO DETERMINE WHETHER NISHIYAMA'S NAME APPEARS IN THEM, PER D. LAMBRINOS, COMPILE, COORDINATE PRINTING OF AND ASSEMBLE SETS OF POTENTIAL EXHIBITS FOR NISHIYAMA DEPOSITION, FORMAT SELECTED EXCEL AND POWERPOINT FILES FOR USE AS DEPOSITION EXHIBITS WITH NISHIYAMA, PER D. LAMBRINOS, IDENTIFY ADDITIONAL JAPANESE DOCUMENTS REQUIRING TRANSLATION AND PREPARE EMAIL TO S. KIM-HELMS RE SAME |
| 4246836 | 3/3/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 4.00 | 535 | 2,140.00 | PANASONIC - MERITS DEPO PREP - NISHIYAMA - REVIEW CTS, EXHIBITS, WITNESS MEMO, EXPENSE REPORTS, OUTLINE |
| 4246970 | 3/4/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.50 | 875 | 1,312.50 | REVIEW NOTICE IN STATE OF CALIFORNIA CASE, EMAIL MARIO RE SAME AND RE STATUS AND STRATEGY, REVIEW EXPERT MATERIAL RE CLASS CERT |
| 4236714 | 3/4/2013 | LAMB, DENISE M. | PARALEGAL (3) | 4.50 | 230 | 1,035.00 | REVIEW, FORMAT AND PREPARE DOCUMENTS FOR THE DEPOSITION OF HIROKAZU NISHIYAMA. |
| 4246841 | 3/4/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 10.00 | 535 | 5,350.00 | PANASONIC - MERITS DEPO PREP - NISHIYAMA - CTS, EXHIBITS, LOGISTICS, OUTLINE, COORDINATING PLAINTIFF GROUPS, INTERPRETER EMAILS/PHONE CALLS |
| 4246727 | 3/4/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 0.30 | 800 | 240.00 | REVIEW OF ISSUES IN RE ERRATA AND DRAFT EMAIL REGARDING ERRATA TO REPLY BRIEF |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4237747 | 3/4/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 12.40 | 275 | 3,410.00 | COMPILE ELECTRONIC COPIES AND METADATA OF DOCUMENTS SELECTED BY D. LAMBRINOS FOR USE IN NISHIYAMA DEPOSITION, AND COORDINATE PRINTING OF 10 SETS OF SAME, FORMAT EXCEL AND POWERPOINT FILES FOR USE AS DEPOSITION EXHIBITS, AND COORDINATE EFFORTS BY D. LAMB RE SAME, PREPARE DEFINITIVE LIST OF FIRST SECTION OF DOCUMENTS TO BE USED WITH NISHIYAMA, PER D. LAMBRINOS, ADD NEWLY RECEIVED TRANSLATIONS TO D. LAMBRINOS'S WORKING SET OF EXHIBITS FOR NISHIYAMA, MEETING WITH D. LAMBRINOS RE FIRST SECTION OF EXHIBITS FOR HIS NISHIYAMA OUTLINE |
| 4236669 | 3/4/2013 | ZAHID, JUDITH A. | PARTNER | 1.20 | 675 | 810.00 | REVIEWED MERITS DEPOSITION SUMMARIES FROM CHUNGWHA WITNESSES, REVIEWED CORRESPONDENCE BETWEEN IPPS AND PANASONIC RE MERITS DEPOSITIONS |
| 4246987 | 3/5/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 875 | 875.00 | RE CALIFORNIA SETTLEMENT, EMAIL MARIO RE SAME, REVIEW MATERIAL RE EXPERTS AND CLASS CERT |
| 4236715 | 3/5/2013 | LAMB, DENISE M. | PARALEGAL (3) | 5.00 | 230 | 1,150.00 | REVIEW, FORMAT AND PREPARE DOCUMENTS FOR THE DEPOSITION OF HIROKAZU NISHIYAMA. |
| 4246845 | 3/5/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 12.00 | 535 | 6,420.00 | PANASONIC - TAKE NISHIYAMA DEPO (7), PREP IN THE MORNING (3) OUTLINE AND PREP FOR NEXT DAY AFTERWARDS (3) |
| 4246728 | 3/5/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 0.20 | 800 | 160.00 | REVIEW OF CASE STATUS AND DRAFT SUMMARY REGARDING SAME OFFICE CONFERENCE |

| ID | Date | Name | Role | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4237767 | 3/5/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 11.40 | 275 | 3,135.00 | PREPARE FINAL SETS OF POTENTIAL EXHIBITS FOR NISHIYAMA DEPOSITION PER D. LAMBRINOS, COORDINATE WORK BY OFFICE SERVICES AND D. LAMB RE EXHIBIT PREPARATION, DOWNLOAD METADATA FOR ALL POTENTIAL EXHIBITS TO BE USED TODAY, AND PREPARE FORMATTED REPORT OF SAME, RESPOND TO VARIOUS REQUESTS BY D. LAMBRINOS FOR MATERIALS FOR NISHIYAMA DEPOSITION, PREPARE NEW SETS OF EXHIBITS FOR SECOND DAY OF NISHIYAMA DEPOSITION, PER D. LAMBRINOS, PROCESS NEWLY RECEIVED TRANSLATIONS OF JAPANESE DOCUMENTS THROUGHOUT THE DAY, AND INCORPORATE SOME OF THOSE INTO DOCUMENTS SETS FOR USE AS EXHIBITS WITH NISHIYAMA |
| 4236670 | 3/5/2013 | ZAHID, JUDITH A. | PARTNER | 1.80 | 675 | 1,215.00 | DISCUSSED STATUS OF DISCOVERY AND EVIDENCE RECEIVED TO DATE WITH DAP COUNSEL FROM SUSMAN GODFREY, MORE CLOSE REVIEW OF CPT MERITS DEPOSITION SUMMARIES. |
| 4239371 | 3/6/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.20 | 650 | 130.00 | REVIEW CORRESPONDENCE FROM HITACHI RE WITNESS CONFIDENTIALITY. |
| 4244664 | 3/6/2013 | LAMB, DENISE M. | PARALEGAL (3) | 7.00 | 230 | 1,610.00 | CONTINUE REVIEWING DEPOSITION TRANSCRIPTS AND INDEX EXHIBITS. |
| 4246848 | 3/6/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 11.00 | 535 | 5,885.00 | PANASONIC - TAKE MERITS DEPO OF NISHIYAMA (1HR AM PREP, 7 HRS TAKE, 3 HRS PREP FOR NEXT DAY) |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4237774 | 3/6/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 9.60 | 275 | 2,640.00 | PREPARE ADDITIONAL DOCUMENTS AND OBTAIN METADATA FOR SAME FOR SECOND DAY OF KINOSHITA DEPOSITION, PER D. LAMBRINOS, SEARCH HOT-DOCUMENTS LISTS FOR REFERENCES TO GLASS AND GSM MEETINGS PER D. LAMBRINOS, AND OBTAIN RELEVANT DOCUMENTS FROM FILES AND FROM RELATIVITY FOR POSSIBLE USE IN NISHIYAMA DEPOSITION, MATCH UP NEWLY RECEIVED TRANSLATIONS WITH FOREIGN-LANGUAGE COUNTERPARTS THAT HAD BEEN FLAGGED AS POTENTIAL NISHIYAMA EXHIBITS, PER D. LAMBRINOS, COMPILE DOCUMENTS AND PREPARE SETS OF SAME FOR USE BY THE DIRECT-ACTION PLAINTIFFS AS POSSIBLE EXHIBITS IN TOMORROW'S SESSION OF THE NISHIYAMA DEPOSITION, COMPILE NEWLY RECEIVED TRANSLATIONS FOR DOCUMENTS THAT HAD BEEN SET ASIDE AS POTENTIAL NISHIYAMA EXHIBITS, PER D. LAMBRINOS |
| 4236828 | 3/6/2013 | ZAHID, JUDITH A. | PARTNER | 2.30 | 675 | 1,552.50 | CONFER WITH PLAINTIFF GROUP RE PROGRESS OF PANASONIC DEPOSITION, BEGIN TO CLOSELY REVIEW NETZ REBUTTAL TO PREPARE FOR SECOND-CHAIR ROLE NEXT WEEK AT HER DEPOSITION, REVIEW AMGEN CASE FOR SUBMISSION TO JUDGE LEGGE AS NEW AUTHORITY. |
| 4244665 | 3/7/2013 | LAMB, DENISE M. | PARALEGAL (3) | 7.00 | 230 | 1,610.00 | CONTINUE REVIEWING DEPOSITION TRANSCRIPTS AND INDEX EXHIBITS. |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4246851 | 3/7/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 7.50 | 535 | 4,012.50 | PANASONIC - MERIT DEPO NISHIYAMA - DAP AND AG QUESTION, DXL ASSIST AND ASKED QUESTIONS ON RE-EXAM AT END |
| 4246736 | 3/7/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 0.70 | 800 | 560.00 | CONFER WITH J. ZAHID REGARDING NETZ DEPOSITION, REVIEW OF NETZ DEPOSITION IN RE DEPO PREP, DRAFT EMAIL TO J. ZAHID REGARDING SAME |
| 4237780 | 3/7/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 3.10 | 275 | 852.50 | COMPILE AND PREPARE POTENTIAL EXHIBITS FOR DAY 3 OF NISHIYAMA DEPOSITION, PER J. ROSS OF SUSMAN GODFREY, PREPARE LIST OF U.S. STATES AND TERRITORIES FOR USE AS EXHIBIT WITH NISHIYAMA, PER D. LAMBRINOS, RELATIVITY SEARCHES AND REVIEW EXPENSE REPORTS FOR REFERENCES TO ▮▮▮ PER D. LAMBRINOS, FOR USE IN FINAL DAY OF NISHIYAMA DEPOSITION, COORDINATE COPYING OF COVER PAGES TO THE EXHIBITS MARKED DURING THE THREE-DAY NISHIYAMA DEPOSITION, PER D. LAMBRINOS |
| 4241603 | 3/7/2013 | ZAHID, JUDITH A. | PARTNER | 0.80 | 675 | 540.00 | RECEIVE UPDATE RE TODAY'S PANASONIC DEPOSITION, SOUGHT INFORMATION RE INCOMING THIRD PARTY DATA IN PREPARATION FOR NETZ DEPOSITION |
| 4244776 | 3/8/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.40 | 650 | 260.00 | CORRESPONDENCE FROM D. LAMBRINOS RE NISHIYAMA DEPOSITION HIGHLIGHTS, REVIEW CORRESPONDENCE RE DOCUMENT TRANSLATION OBJECTIONS. |
| 4244666 | 3/8/2013 | LAMB, DENISE M. | PARALEGAL (3) | 7.00 | 230 | 1,610.00 | CONTINUE REVIEWING DEPOSITION TRANSCRIPTS AND INDEX EXHIBITS. |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4246853 | 3/8/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 7.50 | 535 | 4,012.50 | PANASONIC - MERITS DEPO NISHIYAMA - REVIEW TRANSCRIPTS, SUMMARY EMAILS TO LEAD COUNSEL, STRATEGY EMAIL RE JAPANESE PRIVACY LAW (JPL) ISSUE, MEET AND CONFER TRANSLATION OBJECTIONS |
| 4246741 | 3/8/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 0.40 | 800 | 320.00 | REVIEW OF EMAILS TO AND FROM APPLECON REGARDING NEW STUDIES AND WORK |
| 4237792 | 3/8/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 0.90 | 275 | 247.50 | RESPOND TO EMAIL FROM J. WHITE REQUESTING LIST OF EXHIBITS ENTERED DURING NISHIYAMA DEPOSITION, REVIEW MATERIALS REMAINING FROM NISHIYAMA DEPOSITION TO DETERMINE DISPOSITION OF SAME, DISCUSSION WITH D. LAMB RE INDEXING OF NISHIYAMA DEPOSITION EXHIBITS, REVISE CHART LISTING DOCUMENTS THAT WERE USED WITH NISHIYAMA AND SEND TO D. LAMB WITH INSTRUCTIONS ON USING IT FOR THE MASTER INDEX OF DEPOSITION EXHIBITS, FORMAT ROUGH TRANSCRIPTS OF THREE VOLUMES OF NISHIYAMA FOR REVIEW BY D. LAMBRINOS |
| 4241616 | 3/8/2013 | ZAHID, JUDITH A. | PARTNER | 1.80 | 675 | 1,215.00 | REVIEW CRT TRANSCRIPTS FROM TAIPEI DEPOSITIONS OF CHUNGHWA REPRESENTATIVES, DISCUSS WITH J. MURRAY |
| 4244669 | 3/11/2013 | LAMB, DENISE M. | PARALEGAL (3) | 5.00 | 230 | 1,150.00 | CONTINUE REVIEWING DEPOSITION TRANSCRIPTS AND INDEX EXHIBITS. |

| | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4246873 | 3/11/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 5.00 | 535 | 2,675.00 | EMAIL TO MARIO RE MERITS EVIDENCE ON TOSHIBA - REVIEW PANASONIC TRANSCRIPTS RE SAME, JPL EMAIL TO LEAD COUNSEL |
| 4246746 | 3/11/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 1.20 | 800 | 960.00 | REVIEW AND ANALYSIS OF NETZ REPORT AND DEPOSITION IN PREPARATION FOR DEPO PREP, PREPARE OUTLINE FOR PREP |
| 4244670 | 3/12/2013 | LAMB, DENISE M. | PARALEGAL (3) | 4.00 | 230 | 920.00 | CONTINUE REVIEWING DEPOSITION TRANSCRIPTS AND INDEX EXHIBITS. |
| 4246877 | 3/12/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 6.00 | 535 | 3,210.00 | REVIEW TRANSCRIPTS RE PANASONIC AND TOSHIBA LIABILITY OVERLAP - EMAILS RE JPL ISSUE (HITACHI), REVIEW DOCUMENTS RE TOSHIBA LIABILITY - SUMMARY EMAILS TO LEAD COUNSEL RE SAME |
| 4246747 | 3/12/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 2.00 | 800 | 1,600.00 | REVIEW AND ANALYSIS OF NETZ REPORTS AND DEPOSITION IN PREPARATION FOR DEPO PREP, PREPARE OUTLINE FOR PREP |
| 4247045 | 3/13/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 875 | 875.00 | OFFICE CONFERENCE RE CASE STATUS AND STRATEGY, REVIEW DISCOVERY AND CLASS CERT MATERIAL |
| 4244695 | 3/13/2013 | LAMB, DENISE M. | PARALEGAL (3) | 3.50 | 230 | 805.00 | CONTINUE REVIEWING DEPOSITION TRANSCRIPTS AND INDEX EXHIBITS. |
| 4246881 | 3/13/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 5.50 | 535 | 2,942.50 | JPL DRAFT EMAIL TO HEMLOCK, COORDINATING WITH PLAINTIFFS GROUPS, SEAI DISMISSAL ADDED TO DASHBOARD, REVIEW DOCUMENTS RE NEXT ROUND OF POTENTIAL DEPONENTS |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4246751 | 3/13/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 7.00 | 800 | 5,600.00 | REVIEW AND ANALYSIS OF NETZ REPORTS AND DEPOSITION IN PREPARATION FOR DEPO PREP, REVIEW AND ANALYSIS OF PREPARE OUTLINE FOR PREP SESSION WITH NETZ |
| 4238237 | 3/13/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 0.20 | 275 | 55.00 | DOWNLOAD AND ARCHIVE EXHIBITS TO THE THREE-DAY DEPOSITION OF HIROKAZU NISHIYAMA |
| 4241366 | 3/13/2013 | ZAHID, JUDITH A. | PARTNER | 2.50 | 675 | 1,687.50 | REVIEWED NETZ REBUTTAL REPORT IN ANTICIPATION OF PREPARATION SESSION WITH DR. NETZ FOR HER REBUTTAL DEPOSITION. |
| 4244697 | 3/14/2013 | LAMB, DENISE M. | PARALEGAL (3) | 7.00 | 230 | 1,610.00 | CONTINUE REVIEWING DEPOSITION TRANSCRIPTS AND INDEX EXHIBITS. |
| 4246892 | 3/14/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | JPL ISSUE MEMO RE PANASONIC, TOSHIBA, AND HITACHI - CORRESPONDENCE RE SAME |
| 4246752 | 3/14/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 7.10 | 800 | 5,680.00 | REVIEW AND ANALYSIS OF NETZ REPORTS AND DEPOSITION IN PREPARATION FOR DEPO PREP, REVIEW AND ANALYSIS OF MEET WITH M. ALIOTO, J. ZAHID AND J. NETZ REGARDING DEPOSITION PREP |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4238246 | 3/14/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 3.60 | 275 | 990.00 | UPDATE LOG OF DEFENDANT DEPOSITIONS TAKEN TO DATE, AND ADD INFORMATION IDENTIFYING THE QUESTIONING ATTORNEYS AT EACH DEPOSITION, PER F. SCARPULLA, DOWNLOAD AND ARCHIVE TRANSCRIPTS AND EXHIBITS FROM RECENT MERITS DEPOSITIONS TAKEN IN TAIWAN, REVIEW DOCKET AND RECENT FILINGS TO CONFIRM THAT NO DATE HAS BEEN SET FOR CLASS CERTIFICATION HEARING, PER D. LAMBRINOS |
| 4241365 | 3/14/2013 | ZAHID, JUDITH A. | PARTNER | 6.70 | 675 | 4,522.50 | REVIEWED NETZ REBUTTAL REPORT AND PARTICIPATED IN PREPARATION SESSION WITH DR. NETZ FOR HER REBUTTAL DEPOSITION PER LEAD COUNSEL REQUEST |
| 4244905 | 3/15/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.50 | 650 | 325.00 | COMMUNICATIONS WITH D. LAMBRINOS RE DEPOSITION ISSUES, REVIEW DIRECT PURCHASER SETTLEMENT STATUS. |
| 4244698 | 3/15/2013 | LAMB, DENISE M. | PARALEGAL (3) | 7.00 | 230 | 1,610.00 | CONTINUE REVIEWING DEPOSITION TRANSCRIPTS AND INDEX EXHIBITS. |
| 4246895 | 3/15/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.50 | 535 | 1,872.50 | EMAIL TO PANASONIC COUNSEL RE JPL ISSUE - REVIEW DOCUMENTS AND ADD TO MEMO RE NEXT ROUND OF MERITS DEPOSITIONS |
| 4246753 | 3/15/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 7.30 | 800 | 5,840.00 | MEET WITH J. NETZ IN PREPARATION FOR DEPOSITION, ATTEND NETZ DEPOSITION, LUNCH MEETING WITH NETZ RE DEPOSITION, COMPLETE DEPOSITION, MEET WITH M. ALIOTO REGARDING CASE STATUS AND STRATEGY |

| 4238258 | 3/15/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 2.70 | 275 | 742.50 | DISCUSSIONS WITH D. LAMB RE INDEXING OF DEPOSITION EXHIBITS, PROCESS HARD DRIVE CONTAINING WILLIG BACKUP DATA, REVIEW AND INDEX SEVERAL DOZEN EXHIBITS MARKED ON DAY 3 OF CHIH-CHUN LIU DEPOSITION, AND DISCUSSIONS WITH D. LAMB RE SAME, ADD INFORMATION ON RECENT DISMISSALS OF AND/OR SETTLEMENTS WITH SEAI/SEC, BMCC AND LG TO SPREADSHEET TRACKING ALL DISMISSALS AND SETTLEMENTS, PER D. LAMBRINOS, PREPARE LIST OF DATES TO BE CALENDARED PER REVISED SCHEDULING ORDER ENTERED MARCH 13, PER D. |
| 4241384 | 3/15/2013 | ZAHID, JUDITH A. | PARTNER | 8.30 | 675 | 5,602.50 | PARTICIPATED AS SECOND CHAIR IN NETZ REBUTTAL DEPOSITION PER LEAD COUNSEL REQUEST, RECEIVED CALL FROM SHARP'S COUNSEL AT PAUL WEISS RE SHARP FILING AN OPT-OUT COMPLAINT AND ASKING LOGISTICAL QUESTIONS RE COORDINATION OF PLAINTIFF GROUP |
| 4239333 | 3/18/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.50 | 650 | 325.00 | REVIEW STIPULATED ORDER RE DPP MEDIATION DATES, CORRESPOND WITH L. RUSSELL RE DATA ISSUES. |
| 4247194 | 3/18/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 875 | 875.00 | REVIEW CALIFORNIA PHILIPS MOVING PAPERS, EXPERT REPORTS, OFFICE CONFERENCE RE STATUS AND STRATEGY |
| 4244703 | 3/18/2013 | LAMB, DENISE M. | PARALEGAL (3) | 4.00 | 230 | 920.00 | REVIEW CASE CORRESPONDENCE LOG AND UPDATE ORDER BINDER AND LOG |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4247175 | 3/18/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.00 | 535 | 1,605.00 | PANASONIC - REVIEW TRANSCRIPTS TO CONSTRUCT LIST OF NAMES OF NEXT ROUND OF MERITS WITNESSES, EMAILS WITH AG RE "TIME ALLOCATION" ISSUE, FOLLOW UP JPL ISSUE RE TOSHIBA |
| 4239479 | 3/18/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 1.40 | 275 | 385.00 | REVIEW LIST OF CONSPIRATORIAL MEETING ATTENDEES AND ADD INFORMATION FROM SAME TO SPREADSHEET TRACKING POSSIBLE PANASONIC MERITS DEPONENTS, PER D. LAMBRINOS, REVIEW 75 EXCEL FILES LISTING ATTENDEES AT GREEN MEETINGS, AND PREPARE DEFINITIVE LIST OF SAME, PER D. LAMBRINOS |
| 4239326 | 3/19/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.20 | 650 | 130.00 | CORRESPONDENCE FROM L. RUSSELL RE DATA ISSUES. |
| 4247178 | 3/19/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | RESEARCH RE NEXT ROUNDS OF MERITS WITNESSES FOR PANASONIC, JPL AND TIME ALLOCATION ISSUE, ASSEMBLE MATERIALS FOR DAPS |
| 4246754 | 3/19/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 0.70 | 800 | 560.00 | REVIEW AND ANALYSIS OF MARKET SHARE DATA AND IN REGARDS TO SETTLEMENT PER DISCUSSION WITH M. ALIOTO |
| 4239503 | 3/19/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 0.30 | 275 | 82.50 | COMPILE LINE STATUS REPORT AND TRANSLATION MARKED IN NISHIYAMA DEPOSITION, AND METADATA FOR SAME, PER D. LAMBRINOS |
| 4241623 | 3/19/2013 | ZAHID, JUDITH A. | PARTNER | 2.40 | 675 | 1,620.00 | REVIEW AND RESPOND TO QUESTIONS FROM NETZ RE SCHEDULE GOING FORWARD AND COMMENT ON SUGGESTED WORK, EMAIL WITH M. ALIOTO RE SEC DISMISSAL, FINISH REVIEWING CC LIU DEPOSITION TRANSCRIPT |

| 4247252 | 3/20/2013 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 875 | 437.50 | OFFICE CONFERENCE, EMAIL RE CASE STATUS AND STRATEGY |
| 4247182 | 3/20/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.00 | 535 | 1,070.00 | REVIEW MATERIALS RE NEXT ROUND OF WITNESSES, EMAIL RE JPL ISSUE (HITACHI) |
| 4247188 | 3/21/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 0.50 | 535 | 267.50 | REVIEW IWAMOTO ERATTA FROM DS |
| 4246755 | 3/21/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 0.50 | 800 | 400.00 | CONFER WITH J. ZAHID, D. LAMBRINOS AND M. CHRISTIAN REGARDING CASE STATUS AND STRATEGY AND MARKET SHARE DATA FOR DEFENDANTS |
| 4239542 | 3/21/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 0.10 | 275 | 27.50 | REVIEW ERRATA TO IWAMOTO DEPOSITION RECEIVED TODAY, PER D. LAMBRINOS, FOR SUBSTANTIVE CORRECTIONS |
| 4239411 | 3/22/2013 | LAMB, DENISE M. | PARALEGAL (3) | 6.00 | 230 | 1,380.00 | CONTINUE REVIEWING DEPOSITION TRANSCRIPT AND INDEX EXHIBITS. |
| 4247193 | 3/22/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | RESEARCH RE NEXT ROUND OF MERITS WS |
| 4246756 | 3/22/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 0.80 | 800 | 640.00 | CONFER WITH J. ZAHID REGARDING CASE STATUS, OUTLINE ISSUES AND POTENTIAL DEFENDANT ARGUMENTS FOR HEARING ON CLASS CERTIFICATION |
| 4247258 | 3/25/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.00 | 535 | 1,070.00 | EMAIL TO PANASONIC RE JPL WITNESS ISSUE, STRATEGY EMAIL RE SAME TO TOSHIBA AND HITACHI PS TEAM |
| 4246757 | 3/25/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 1.00 | 800 | 800.00 | REVIEW OF NOTES OF NETZ DEPOSITION AND OUTLINE ISSUES AND POTENTIAL DEFENDANT ARGUMENTS FOR HEARING ON CLASS CERTIFICATION |

| | | | | | |
|---|---|---|---|---|---|
| 4242577 | 3/25/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 3.00 | 275 | 825.00 | REVIEW FILES AND D. LAMBRINOS EMAILS, AND COMPILE CORRESPONDENCE TO/FROM COUNSEL FOR PANASONIC SINCE JULY 2012 RE DISCOVERY ISSUES, PER D. LAMBRINOS, COMPILE ALL WRITTEN DISCOVERY REQUESTS AND RESPONSES BETWEEN INDIRECT- AND DIRECT-PURCHASER PLAINTIFFS AND PANASONIC-RELATED ENTITIES, PER D. LAMBRINOS, IN PREPARATION TO PROVIDE SAME TO DIRECT-ACTION PLAINTIFFS, DISCUSSION WITH D. LAMBRINOS RE STATUS OF COMPILING DISCOVERY-RELATED CORRESPONDENCE FOR DIRECT-ACTION |
| 4244735 | 3/26/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.80 | 650 | 520.00 | REVIEW REPLY BRIEF IN SUPPORT OF EXCLUDING EXPERT J. NETZ AND SUPPORTING MATERIALS RE SAME, REVIEW CORRESPONDENCE RE SCHEDULING ISSUES |
| 4244149 | 3/26/2013 | CORBITT, CRAIG C. | SR. PARTNER | 2.00 | 875 | 1,750.00 | REVIEW DEFENDANTS' DAUBERT REPLY, OUTLINE OF RESPONSE TO CALIFORNIA AG SETTLEMENT, CALL WITH MARIO RE SAME AND RE STATUS AND STRATEGY |
| 4244700 | 3/26/2013 | LAMB, DENISE M. | PARALEGAL (3) | 4.00 | 230 | 920.00 | CONTINUE REVIEWING DEPOSITION TRANSCRIPTS AND INDEX EXHIBITS. |
| 4246758 | 3/26/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 2.10 | 800 | 1,680.00 | REVIEW AND ANALYSIS OF DEFENDANTS REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE NETZ OPINIONS |

| | | | | | | |
|---|---|---|---|---|---|---|
| 4244371 | 3/26/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 1.40 | 275 | 385.00 | CONTINUE REVIEW OF FILES AND D. LAMBRINOS EMAILS, AND COMPILING OF CORRESPONDENCE TO/FROM COUNSEL FOR PANASONIC (FROM 2010 THROUGH EARLY 2012) RE DISCOVERY ISSUES, PER D. LAMBRINOS, IN PREPARATION TO PROVIDE SAME TO J. ROSS |
| 4244947 | 3/27/2013 | CORBITT, CRAIG C. | SR. PARTNER | 2.50 | 875 | 2,187.50 | CALL WITH MARIO, OFFICE CONFERENCE AND CONFERENCE WITH SPECIAL MASTER RE CLASS CERT SCHEDULE, REVIEW COMCAST OPINION AND CONFER CO-COUNSEL RE SAME |
| 4244701 | 3/27/2013 | LAMB, DENISE M. | PARALEGAL (3) | 5.00 | 230 | 1,150.00 | CONTINUE REVIEWING DEPOSITION TRANSCRIPTS AND INDEX EXHIBITS. |
| 4246759 | 3/27/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 2.00 | 800 | 1,600.00 | REVIEW AND ANALYSIS OF COMCAST DECISION FOR CLASS CERT IMPLICATIONS, REVIEW AND ANALYSIS OF DEFENDANTS REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE NETZ OPINIONS |
| 4243301 | 3/27/2013 | ZAHID, JUDITH A. | PARTNER | 2.50 | 675 | 1,687.50 | CLOSELY REVIEW SUPREME COURT COMCAST OPINION TO SEE HOW MIGHT IMPACT CLASS CERT MOTION PENDING, PRE-CALL WITH M. ALIOTO AND CCC RE TELECONFERENCE WITH JUDGE LEGGE RE CLASS CERTIFICATION AND MOTION TO STRIKE HEARING SCHEDULING, PARTICIPATE IN CALL, AFTER-CALL CONFERENCE WITH M. ALIOTO AND CCC |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4245577 | 3/28/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 875 | 875.00 | REVIEW DEFENDANTS LETTER RE COMCAST CASE AND EMAIL CO-COUNSEL, OFFICE CONFERENCE RE SAME, REVIEW MATERIAL RE PREPARATION FOR CLASS CERT HEARING |
| 4245701 | 3/28/2013 | LAMB, DENISE M. | PARALEGAL (3) | 4.00 | 230 | 920.00 | REVISE DEPOSITION INDEX |
| 4246761 | 3/28/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 8.50 | 800 | 6,800.00 | REVIEW AND ANALYSIS OF COMCAST DECISION FOR CLASS CERT IMPLICATIONS, REVIEW AND ANALYSIS OF DEFENDANTS LETTER TO JUDGE REGARDING COMCAST, LEGAL RESEARCH REGARDING RESPONSIVE LETTER, FACT AND LEGAL RESEARCH REGARDING WILLIG REBUTTAL DECLARATIONS AND OBJECTIONS THERETO, DRAFT LETTER RESPONDING TO DEFENDANTS' COMCAST LETTER, DRAFT EMAILS TO AND REVIEW EMAILS FROM MARIO AND LAUREN REGARDING THE ABOVE ISSUES, REVIEW NETZ EMAILS REGARDING COMCAST AND WILLIG DECLARATION |
| 4246762 | 3/29/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 6.50 | 800 | 5,200.00 | REVIEW AND ANALYSIS OF DEFENDANTS LETTER TO JUDGE REGARDING COMCAST, FACT RESEARCH REGARDING WILLIG REBUTTAL DECLARATIONS AND OBJECTIONS THERETO, CONFER WITH J. ZAHID REGARDING SAME, DRAFT LETTER RESPONDING TO DEFENDANTS' COMCAST LETTER, DRAFT EMAILS TO AND REVIEW EMAILS FROM MARIO AND JUDITH REGARDING SAME |

| ID | Date | Name | Role | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4246672 | 3/29/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 2.10 | 275 | 577.50 | REVIEW 2010-12 D. LAMBRINOS OUTLOOK FILES AND COMPILE PANASONIC DISCOVERY-RELATED EMAILS NOT PREVIOUSLY INCLUDED IN COMPILATION OF SAME, IN PREPARATION TO PROVIDE A COMPLETE SET TO THE DIRECT-ACTION PLAINTIFFS, PER D. LAMBRINOS, CONVERT CORRECTIONS RECEIVED FROM APPLECON FOR 3/15/13 NETZ DEPOSITION INTO PROPER ERRATA SHEET, AND PREPARE ACCOMPANYING COVER LETTER TO COURT REPORTER, PER J. ZAHID |
| 4245214 | 3/29/2013 | ZAHID, JUDITH A. | PARTNER | 3.50 | 675 | 2,362.50 | REVIEW DRAFT LETTER RE IPP SUBMISSION TO JUDGE LEGGE RESPONDING TO COMCAST CASE SUBMISSION AND PROVIDING AMGEN OPINION, DRAFT THE LETTER INSERT RE AMGEN, DISCUSS WITH CTM, EMAILS WITH M. ALIOTO, L. RUSSEL, AND NETZ, FURTHER PROOF AND REVISE OF IPP LETTER |
| 4247380 | 3/31/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | PANASONIC - DRAFT EMAIL TO HEMLOCK RE JPL ISSUE AND NEXT ROUND OF MERITS W, ASSEMBLE MATERIALS FOR DAPS |
| 4254526 | 4/1/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.50 | 650 | 325.00 | CORRESPOND WITH CO-COUNSEL RE TRANSACTIONAL DATA ISSUES, CONFERENCES WITH R. NEWMAN AND D. LAMBRINOS RE SAME. |
| 4259510 | 4/1/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | SUMMARY DISCOVERY EMAILS TO DAPS RE PANASONIC, TATUNG, AND CPT - CALL WITH LAUREN RE RELATIVITY AND ADDITIONAL DEPO SCHEDULING FOR PANASONIC MERITS WS |

| 4261522 | 4/1/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 1.80 | 800 | 1,440.00 | DRAFT EMAIL REGARDING COMCAST LETTER DRAFT, REVIEW AMGEN AND REVISE LETTER RE COMCAST, DRAFT EMAIL TO J. ZAHID REGARDING SAME |
| 4250620 | 4/1/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 3.80 | 275 | 1,045.00 | PREPARE EMAILS TO J. ROSS ATTACHING COMPILATIONS OF DISCOVERY-RELATED CORRESPONDENCE WITH PANASONIC, AND PANASONIC DISCOVERY RESPONSES, PER D. LAMBRINOS, COMPILE AND REVIEW SELECTED DOCUMENTS RE SML MEETINGS ATTENDED BY PANASONIC, AND THEIR ACCOMPANYING METADATA, AND ADD INFORMATION TO GRID LISTING POTENTIAL MERITS WITNESSES, PER D. LAMBRINOS, REVIEW ELECTRONIC FILES, INCLUDING M. CHRISTIAN AND D. LAMBRINOS OUTLOOK FILES, AND COMPILE COMPLETE SET OF CORRESPONDENCE RE DATA AND DOCUMENT PRODUCTIONS BY TATUNG AND CHUNGHWA, PER D. LAMBRINOS |
| 4249219 | 4/1/2013 | ZAHID, JUDITH A. | PARTNER | 3.10 | 675 | 2,092.50 | REVIEW DRAFT RESPONSE LETTER RE COMCAST DECISION, CONFER WITH CTM RE SAME BEFORE SENDING TO M. ALIOTO, DRAFT A BUDGET AND SEND TO CCC FOR REMAINDER OF CASE, DISCUSS PROJECTS FOR PANASONIC MERITS DISCOVERY WITH DXI |
| 4254530 | 4/2/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.40 | 650 | 260.00 | CONFERENCES WITH R. NEWMAN RE DATA LETTERS AND DOCUMENTS, REVIEW CORRESPONDENCE RE SAME. |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4254125 | 4/2/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 1.80 | 275 | 495.00 | REVIEW SET OF CORRESPONDENCE CULLED YESTERDAY RE DATA AND DOCUMENT PRODUCTIONS BY TATUNG AND CHUNGHWA, AND CATEGORIZE, ELIMINATE DUPLICATES AND CHRONOLOGIZE SAME, PER D. LAMBRINOS, PREPARE EMAIL TO L. RUSSELL ATTACHING COMPILATIONS OF TATUNG AND CHUNGHWA-RELATED CORRESPONDENCE, PER D. LAMBRINOS, PREPARE EMAIL TO J. NETZ ATTACHING FOR SIGNATURE THE ERRATA TO HER MARCH 15, 2013 DEPOSITION, AND EMAILS FROM/TO J. ZAHID RE SAME |
| 4249401 | 4/2/2013 | ZAHID, JUDITH A. | PARTNER | 0.50 | 675 | 337.50 | PROOF DR. NETZ DEPOSITION ERRATA AND APPROVE FOR FINALIZING AND SERVING |
| 4262021 | 4/3/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.50 | 875 | 1,312.50 | REVIEW MATERIAL RE CLASS CERT, LETTER RE COMCAST, EMAIL RE SAME |
| 4249786 | 4/3/2013 | FU, QIANWEI | SR. ASSOCIATE | 0.20 | 580 | 116.00 | SUPERVISE SERVICE OF NETZ ERRATA |
| 4259569 | 4/3/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 4.50 | 535 | 2,407.50 | PANASONIC - MERITS DEPOS - PREP CALL RE RELATIVITY TEAMS, EMAIL TO JZ RE SAME, REVIEW SUMMARY FROM BRIAN CULLEN, THIRD PARTY DATA SUMMARY TO QWF, JPL ISSUE EMAIL TO LR CALL RE SAME |
| 4261555 | 4/3/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 3.00 | 800 | 2,400.00 | REVIEW OF NETZ EMAIL REGARDING WILLIG, CONFER WITH J. ZAHID REGARDING CASE STATUS AND STRATEGY, REVIEW OF COMCAST ISSUES, TELEPHONE CALL WITH MARIO ALIOTO REGARDING CLASS CERT ISSUES, DRAFT EMAIL TO J. ZAHID AND C. CORBITT REGARDING LETTER TO JUDGE LEGGE |

| ID | Date | Name | Role | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4254200 | 4/3/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 0.20 | 275 | 55.00 | SET UP AND EMAIL-SERVE ERRATA SHEET FOR 3/15/13 DEPOSITION OF EXPERT JANET NETZ, PER J. ZAHID |
| 4262147 | 4/4/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.50 | 875 | 1,312.50 | REVIEW MATERIAL RE CLASS CERT MOTION, OFFICE CONFERENCE RE SAME |
| 4259579 | 4/4/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 4.00 | 535 | 2,140.00 | CALL RE RELATIVITY REVIEW AND EMAIL SUMMARY MATERIALS TO B CULLEN, CALL AND DOCUMENT RE SPLITTING TIME AT DEPOS (PROPOSAL TO MODIFY DISCOVERY ORDER), TOSHIBA LETTER RE TRANSLATION OBJECTIONS |
| 4261580 | 4/4/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 5.70 | 800 | 4,560.00 | TELEPHONE CALLS WITH J. ZAHID REGARDING WILLIG LETTER, DRAFT LETTER REGARDING WILLIG SURREBUTTAL, DRAFT EMAIL TO M. ALIOTO REGARDING SAME |
| 4254218 | 4/4/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 1.10 | 275 | 302.50 | CONTINUE REVIEW OF GREEN MEETING DOCUMENTS AND OTHER MATERIALS, AND ADD INFORMATION RE MEETING ATTENDEES TO CHART TRACKING POTENTIAL PANASONIC MERITS DEPONENTS, PER D. LAMBRINOS |
| 4249826 | 4/4/2013 | ZAHID, JUDITH A. | PARTNER | 0.80 | 675 | 540.00 | DISCUSSION WITH CTM AND M. ALIOTO RE LETTERS TO THE COURT AND PLANNING FOR OUR HEARING PREPARATION MEETING ON THE 16TH |
| 4262204 | 4/5/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 875 | 875.00 | RE CLASS CERT, CASE STATUS AND STRATEGY |
| 4259591 | 4/5/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.50 | 535 | 1,872.50 | CALL RE PROPOSED MODIFICATION OF DISCOVERY ORDER, EMAIL SUMMARIES TO BCULLEN, REVIEW DOCUMENTS RE NEXT ROUND OF WS |

| ID | Date | Timekeeper | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4261776 | 4/5/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 1.30 | 800 | 1,040.00 | REVIEW EMAIL FROM L. CAPURRO, EMAIL EXCHANGES REGARDING WILLIG LETTER AND COMCAST LETTER, REVIEW AND REVISE LETTER RE WILLIG SURREBUTTAL |
| 4254282 | 4/5/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 2.50 | 275 | 687.50 | FINISH REVIEW OF GREEN MEETING DOCUMENTS AND EDITING OF CHART LISTING PANASONIC EMPLOYEES WHO ATTENDED MEETINGS, PER D. LAMBRINOS, TO RANK POTENTIAL MERITS WITNESSES, PREPARE SIMPLE RANKINGS CHART EXTRACTED FROM LIST OF POTENTIAL PANASONIC WITNESSES, PREPARE EMAIL TO D. LAMBRINOS SUMMARIZING SAME |
| 4249898 | 4/5/2013 | ZAHID, JUDITH A. | PARTNER | 4.30 | 675 | 2,902.50 | ATTEND THE HEARING FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN CALIFORNIA AG AND PHILIPS, PER CCC REQUEST, SUMMARIZE HEARING TO HIM, CALL WITH M. ALIOTO AND DISCUSSION WITH CTM RE DRAFT LETTERS TO SEND TO LEGGE ON MONDAY (RE COMCAST AND WILLIG'S SUR-REPLY TESTIMONY), EDITS TO COMCAST LETTER |
| 4261830 | 4/7/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 1.00 | 800 | 800.00 | REVIEW AND REVISE LETTER RE WILLIG SURREBUTTAL, DRAFT EMAIL TO M. ALIOTO AND L RUSSELL REGARDING SAME |
| 4259623 | 4/8/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 5.00 | 535 | 2,675.00 | UPDATE DAPS WITH SUMMARIES AND WORK PRODUCT, RELATIVITY DOC REVIEW AND COORDINATION, REDLINES TO LARUEN TO JPL LETTER ATTACHING DOCUMENTS (EMAIL) |

| 4261852 | 4/8/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 2.10 | 800 | 1,680.00 | REVIEW AND REVISE LETTER RE WILLIG SURREBUTTAL, TELEPHONE CALL FROM M. ALIOTO, REVIEW NETZ EMAIL REGARDING ███████, DRAFT EMAIL TO M. ALIOTO AND L RUSSELL REGARDING WILLIG LETTER, TELEPHONE CALL WITH M. ALIOTO REGARDING WILLIG LETTER |
| 4253737 | 4/8/2013 | ZAHID, JUDITH A. | PARTNER | 2.60 | 675 | 1,755.00 | EMAILS AND COMMUNICATIONS WITH M. ALIOTO AND CTM RE COMCAST LETTER TO JUDGE LEGGE AND RELATED CLASS ISSUES, RESPOND TO QUESTIONS RE TIMING OF SERVING BACK-UP, REVIEW ██████ RE WILLIG REBUTTAL |
| 4259770 | 4/9/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.00 | 535 | 1,070.00 | CALL RE SDI/PANASONIC RELATIVITY REVIEW AND PREP - BOB G AND LAUREN R, REVIEW DOCUMENTS RE NEXT ROUND OF PANASONIC WS |
| 4262246 | 4/9/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 2.70 | 800 | 2,160.00 | REVIEW OF EMAILS REGARDING NETZ WORK AND EXPERT WORK, ORGANIZATION OF PERSONAL WORKING FILES, TELEPHONE CALL WITH M. ALIOTO AND L. CAPURRO RE COMCAST LETTER, GENERAL PREPARATION FOR CLASS CERTIFICATION HEARING |
| 4259922 | 4/9/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 0.40 | 275 | 110.00 | TELEPHONE CALLS AND EMAILS TO/FROM VERITEXT AND J. ZAHID TO RESOLVE QUESTION OF NETZ DEPOSITION ERRATA |
| 4259808 | 4/10/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 1.00 | 535 | 535.00 | CALL RE RELATITIVY REVIEW TEAM - MATERIALS TO EACH TEAM MEMBER RE IDENTIFICATION OF NEXT PANAOSNIC MERITS W |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4262405 | 4/10/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 0.90 | 800 | 720.00 | GENERAL PREPARATION FOR CLASS CERTIFICATION HEARING |
| 4260624 | 4/10/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 1.00 | 275 | 275.00 | TELEPHONE CALLS TO U.S. LEGAL SUPPORT TO DETERMINE EMAIL ADDRESS FOR SENDING ERRATA OF 3/15/13 NETZ DEPOSITION, EMAILS TO/FROM J. ZAHID RE NETZ ERRATA, PREPARE EMAIL TO U.S. LEGAL SUPPORT ATTACHING NETZ ERRATA, COMPILE CERTAIN CLASS CERTIFICATION-RELATED FILINGS REQUESTED BY B. GRALEWSKI IN PREPARATION FOR APRIL 29 HEARING |
| 4257050 | 4/11/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.50 | 650 | 325.00 | CORRESPONDENCE WITH L. RUSSEL RE DAP EXPERT CALL, CORRESPONDENCE WITH R. NEWMAN RE UPCOMING HEARING AND MATERIALS RE SAME. |
| 4262407 | 4/11/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 1.00 | 800 | 800.00 | TELEPHONE CALL WITH M. ALIOTO REGARDING PROP ORDER PREP, DRAFT EMAIL TO J. ZAHID REGARDING CASE |
| 4260685 | 4/11/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 4.10 | 275 | 1,127.50 | DOWNLOAD FROM RELATIVITY DOCUMENTS AND FAMILY MEMBERS IDENTIFIED AS HOT, CONSPIRACY-RELATED AND PERTAINING TO YASUKI YAMAMOTO, PER D. LAMBRINOS, IN PREPARATION FOR POTENTIAL YAMAMOTO DEPOSITION, FORMAT DOWNLOADED EXCEL AND POWERPOINT FILES RE YAMAMOTO FOR PRINTING, |
| 4257199 | 4/12/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.40 | 650 | 260.00 | CORRESPONDENCE WITH CO-COUNSEL RE DATA CALL WITH EXPERTS AND DIRECT ACTION PLAINTIFFS. |
| 4259829 | 4/12/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 1.50 | 535 | 802.50 | COORDINATE DOCUMENT REVIEW NEXT RD OF DEPOS (UEADAS - EMAILS) |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4260734 | 4/12/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 2.40 | 275 | 660.00 | FORMAT REMAINDER OF DOWNLOADED EXCEL AND POWERPOINT FILES RE YAMAMOTO FOR PRINTING, PER D. LAMBRINOS, AND ADD TO EXISTING SET OF SUCH DOCUMENTS TO BE REVIEWED, DISCUSSIONS WITH D. LAMBRINOS RE DOCUMENTS CULLED FOR REVIEW FOR YAMAMOTO AND KAWANO DEPOSITIONS |
| 4257231 | 4/15/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 3.90 | 650 | 2,535.00 | WORK ON PROPOSED ORDER RE RULE 23(A) REQUIREMENTS, REVIEW CASE LAW RE SAME. |
| 4262462 | 4/15/2013 | CORBITT, CRAIG C. | SR. PARTNER | 2.50 | 875 | 2,187.50 | REVIEW COMCAST DECISION, OFFICE CONFERENCES AND EMAIL RE SAME, REVIEW MATERIAL RE CLASS CERT MOTION |
| 4259861 | 4/15/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.00 | 535 | 1,070.00 | REVIEW AND PROVIDE COMMENT ON JPL LETTER TO LR - RELATIVITY REVIEW AND COORDINATION EMAILS RE NEXT ROUND OF POTENTIAL MERITS WS |
| 4262410 | 4/15/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 6.40 | 800 | 5,120.00 | DRAFT PROPOSED R&R SECTION REGARDING IMPACT AND DAMAGES, FACT AND LEGAL RESEARCH REGARDING SAME, REVIEW OF EMAIL REGARDING LEGGE |
| 4253726 | 4/15/2013 | ZAHID, JUDITH A. | PARTNER | 3.70 | 675 | 2,497.50 | CALLS WITH M. ALIOTO, EMAILS TO CCC, FOS, CTM RE LEGGE SICKNESS AND WHAT TO PROPOSE TO CLERK FOR COVERING CLASS CERTIFICATION, REVIEW CLASS CERTIFICATION FILINGS IN PREPARATION FOR MEETING WITH M. ALIOTO RE HEARING. |
| 4257235 | 4/16/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 4.60 | 650 | 2,990.00 | WORK ON RULE 23(A) INSERT FOR PROPOSED CLASS CERTIFICATION ORDER. |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4253739 | 4/16/2013 | CORBITT, CRAIG C. | SR. PARTNER | 2.00 | 875 | 1,750.00 | CALL WITH MARIO AND OFFICE CONFERENCE RE CLASS CERT MOTION, POTENTIAL SETTLEMENTS, CASE STATUS AND STRATEGY, REVIEW MATERIAL RE CLASS CERT HEARING |
| 4253540 | 4/16/2013 | LAMB, DENISE M. | PARALEGAL (3) | 4.00 | 230 | 920.00 | REVIEW PARK SANY KYU DEPOSITION TRANSCRIPT V1-V3 AND UPDATE EXHIBIT LIST, REVIEW EXPERT BACKUP MATERIAL AND UPDATE NETWORK FOLDER WITH WILLIG MATERIAL |
| 4259872 | 4/16/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.50 | 535 | 1,872.50 | RELATIVITY REVIEW AND COORDINATION EMAILS RE NEXT ROUND OF POTENTIAL WS - REVIEW OF DOCUMENTS AND CALLS |
| 4262434 | 4/16/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 4.10 | 800 | 3,280.00 | TELEPHONE CALL/MEETING WITH M. ALIOTO, J. ZAHID AND OTHERS REGARDING CASE STRATEGY, CONFER WITH J. ZAHID REGARDING STRATEGY, CONFER WITH M. CHRISTIAN REGARDING STRATEGY, DRAFT PROPOSED R&R SECTION REGARDING IMPACT AND DAMAGES, FACT AND LEGAL RESEARCH REGARDING SAME |
| 4253728 | 4/16/2013 | ZAHID, JUDITH A. | PARTNER | 3.70 | 675 | 2,497.50 | PREPARE AND DISCUSS ASSIGNMENTS FOR CLASS CERTIFICATION HEARING, FORM ORDERS, ETC. WITH M. ALIOTO, CCC, CTM, DISCUSS JUDGE LEGGE SITUATION, COLLECT MATERIALS TO DRAFT MOTION TO STRIKE ORDER |
| 4257240 | 4/17/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.50 | 650 | 325.00 | REVIEW MEMO RE DATA ISSUES AND GAPS, FINALIZE RULE 23(A) INSERT, CORRESPONDENCE TO C. MICHELETTI RE SAME |
| 4262481 | 4/17/2013 | CORBITT, CRAIG C. | SR. PARTNER | 2.00 | 875 | 1,750.00 | OFFICE CONFERENCE, CLASS CERT MOTION, REVIEW MATERIAL RE SAME |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4253768 | 4/17/2013 | LAMB, DENISE M. | PARALEGAL (3) | 4.00 | 230 | 920.00 | REVIEW DEOK-YUN KIM DEPOSITION TRANSCRIPT V1-V3 AND UPDATE EXHIBIT LIST. |
| 4261588 | 4/17/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | COORDINATE DOCUMENT REVIEW TEAM IN PREPARATION FOR NEXT ROUND OF PANASONIC DEPOSITIONS (SANOGAWAYA) |
| 4262443 | 4/17/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 3.40 | 800 | 2,720.00 | DRAFT PROPOSED R&R SECTION REGARDING IMPACT AND DAMAGES, FACT AND LEGAL RESEARCH REGARDING SAME, CONFER WITH DP COUNSEL REGARDING CASE STATUS, DRAFT EMAIL REGARDING F. SMITH |
| 4260843 | 4/17/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 2.80 | 275 | 770.00 | PROOFREAD DRAFT OF PROPOSED ORDER GRANTING MOTION FOR CLASS CERTIFICATION, PER M. CHRISTIAN, COMPILE INFORMATION AND PREPARE LIST OF CURRENT NAMED PLAINTIFFS, IN PREPARATION TO ADD SAME TO PROPOSED ORDER GRANTING MOTION FOR CLASS CERTIFICATION, PER M. CHRISTIAN, SEARCH FILES AND THE DOCKET FROM IN RE TFT-LCD ANTITRUST LITIGATION FOR REFERENCES ██████ PER D. LAMBRINOS, IN PREPARATION OF POSSIBLE BRIEFING ON THE ███ ISSUE, SEARCH THE PANASONIC 30(B)(6) AND MERITS DEPOSITIONS TAKEN TO DATE FOR REFERENCES TO CURRENT EMPLOYMENT STATUS OF YAMAMOTO, SANOGAWAYA AND KAWANO, PER D. LAMBRINOS |
| 4253731 | 4/17/2013 | ZAHID, JUDITH A. | PARTNER | 1.50 | 675 | 1,012.50 | START OUTLINE OF PROPOSED MOTION TO STRIKE ORDER |

| | | | | | |
|---|---|---|---|---|---|
| 4257246 | 4/18/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 2.80 | 650 | 1,820.00 | REVIEW DATA ANALYSIS FROM J. METZLER, ATTEND CONFERENCE CALL WITH DAPS AND EXPERTS RE DATA, CORRESPOND WITH D. LAMBRINOS AND J. ZAHID RE PHILLIPS DATA, REVIEW FUNAI PRODUCTION RE SAME, REVIEW DEFENDANTS LETTER RE JUDGE LEGGE, TELEPHONE CALL TO B. ROSEWARN RE DATA ISSUES |
| 4262494 | 4/18/2013 | CORBITT, CRAIG C. | SR. PARTNER | 2.00 | 875 | 1,750.00 | OFFICE CONFERENCES AND CALL WITH CO-COUNSEL, EMAIL RE SPECIAL MASTER APPOINTMENT, PREPARATION FOR CLASS CERT HEARING |
| 4254117 | 4/18/2013 | LAMB, DENISE M. | PARALEGAL (3) | 5.00 | 230 | 1,150.00 | REVIEW DEPOSITION TRANSCRIPT UPDATE EXHIBIT LIST. |
| 4261639 | 4/18/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 4.50 | 535 | 2,407.50 | PREP FOR NEXT ROUND OF DEPOS - COORDINATE WITH DOCUMENT REVIEW TEAM RE YAMAMOTO AND KAWANO - EMAIL NATE RE SCHEDULING - CALL RE DEFENDANT DATA, FOLLOW UP RE SAME |
| 4262447 | 4/18/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 7.10 | 800 | 5,680.00 | DRAFT PROPOSED R&R SECTION REGARDING IMPACT AND DAMAGES, FACT AND LEGAL RESEARCH REGARDING SAME, REVIEW OF DEFENDANT LETTER REGARDING LEGGE, DRAFT EMAIL REGARDING LEGGE TO M. ALIOTO, |
| 4260866 | 4/18/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 0.80 | 275 | 220.00 | ADD FEBRUARY-MARCH 2012 CORRESPONDENCE RE PANASONIC DISCOVERY TO COMPILATION OF SAME, PER D. LAMBRINOS, AND REVIEW D. LAMBRINOS OUTLOOK FILES FOR ADDITIONAL CORRESPONDENCE NOT PREVIOUSLY INCLUDED IN THE COMPILATION |

| | | | | | |
|---|---|---|---|---|---|
| 4258958 | 4/18/2013 | ZAHID, JUDITH A. | PARTNER | 6.10 | 675 | 4,117.50 | PARTICIPATE AND HELP LEAD INITIAL EXPERT COORDINATION CALL WITH DAPS AND ECONOMISTS, GATHER MATERIALS FOR HEARING PREPARATION, STRUCTURE FRAMEWORK FOR FORM ORDER, MEETINGS WITH CTM RE SAME, DISCUSSIONS LEAD COUNSEL RE SAME |
| 4262507 | 4/19/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 875 | 875.00 | REVIEW MATERIAL RE CLASS CERT |
| 4261712 | 4/19/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.50 | 535 | 1,872.50 | DEPO SCHEDULING EMAIL TO PANASONIC COUNSEL - DEPO PREP CALL RE RELATIVITY REVIEW - REVIEW DOCUMENTS FOR YAMAMOTO - EMAIL TO LR RE JPL ISSUE |
| 4262449 | 4/19/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 6.30 | 800 | 5,040.00 | DRAFT PROPOSED R&R SECTION REGARDING IMPACT AND DAMAGES, FACT AND LEGAL RESEARCH REGARDING SAME, EMAIL EXCHANGE WITH CO-COUNSEL REGARDING CLASS MOTION ISSUES |
| 4261123 | 4/19/2013 | RANKIE, HEATHER T. | ASSOCIATE | 7.90 | 480 | 3,792.00 | PER JAZ AND CTM REQUEST, REVIEW/ANALYZE AND CONDUCT RESEARCH RE CERTAIN AUTHORITIES CITED IN DEFS' REPLY ISO DAUBERT MOTION AND SUMMARIZE FOR USE IN CLASS CERT. HEARING PREP. |
| 4258937 | 4/19/2013 | ZAHID, JUDITH A. | PARTNER | 8.20 | 675 | 5,535.00 | BEGIN DRAFT OF ORDER OF FORM FOR DENYING MOTION TO STRIKE, CLOSELY GO THROUGH DEFENDANTS' MOTION AND REPLY ON DAUBERT AND CREATE TABLE OF ALL ARGUMENTS AND MOST RESPONSES, HIGHLIGHT NEW ARGUMENTS FROM REPLY TO DISCUSS WITH ECONOMISTS |

| 4262450 | 4/20/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 5.60 | 800 | 4,480.00 | DRAFT PROPOSED R&R SECTION REGARDING IMPACT AND DAMAGES, FACT AND LEGAL RESEARCH REGARDING SAME |
| 4262451 | 4/21/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 4.90 | 800 | 3,920.00 | DRAFT PROPOSED R&R SECTION REGARDING IMPACT AND DAMAGES, FACT AND LEGAL RESEARCH REGARDING SAME |
| 4254271 | 4/22/2013 | BABIONE, MARIE J. | PARALEGAL (3) | 2.00 | 235 | 470.00 | REVISE FORMATTING TO PROPOSED ORDER RE: CLASS CERTIFICATION. |
| 4254905 | 4/22/2013 | CORBITT, CRAIG C. | SR. PARTNER | 3.00 | 875 | 2,625.00 | CALL WITH CO-COUNSEL, OFFICE CONFERENCES, REVIEW MATERIAL RE CLASS CERT MOTION |
| 4260612 | 4/22/2013 | LAMB, DENISE M. | PARALEGAL (3) | 1.50 | 230 | 345.00 | SEARCH DM FOR PROPOSED ORDER ON CLASS CERT, REVIEW CASE CORRESPONDENCE AND UPDATE NETWORK FOLDER. |
| 4262302 | 4/22/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 4.00 | 535 | 2,140.00 | PREPARING FOR DEPOSITIONS - SCHEDULING YAMAMOTO, SANOGAWAYA, AND KAWANO |
| 4262455 | 4/22/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 8.90 | 800 | 7,120.00 | REVIEW AND REVISE AND SUPPLEMENT PROPOSED R&R SECTION REGARDING IMPACT AND DAMAGES, MERGE OTHER SECTION WORK ON ENTIRE ORDER, CONFER WITH J. ZAHID REGARDING ARGUMENT, TELEPHONE CALL WITH M. ALIOTO REGARDING ARGUMENT, DRAFT OUTLINE OF ARGUMENT, REVIEW OF L. CAPURRO DRAFT ORDER, DRAFT EMAILS TO H. RANKIE REGARDING CASE LAW |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4260932 | 4/22/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 1.80 | 275 | 495.00 | REVIEW OPENING AND REPLY CLASS CERTIFICATION PAPERS, FOURTH AMENDED INDIRECT PURCHASER COMPLAINT, AND ORDERS RE AMENDMENT OF THE COMPLAINT, AND PREPARE EMAIL TO B. GRALEWSKI RE QUESTION OF ▇▇▇ PER M. CHRISTIAN, REVIEW FOURTH AMENDED INDIRECT PURCHASER COMPLAINT AND ADD FIRST NAMES OF NAMED PLAINTIFFS TO LIST OF SAME TO BE INCLUDED IN THE PROPOSED ORDER GRANTING MOTION FOR CLASS CERTIFICATION, PER C. MICHELETTI, PREPARE HARD-COPY SET OF OPENING CLASS CERTIFICATION REPORT OF JANET NETZ, PER J. ZAHID, IN PREPARATION TO SEND SAME TO JAMS, REVIEW ALIOTO CLASS CERTIFICATION REPLY DECLARATION TO DETERMINE WHICH BATES-NUMBERED DOCUMENTS AND MANUALS WERE ATTACHED THERETO, PER M. CHRISTIAN, AND DISCUSSION WITH M. CHRISTIAN RE SAME, IN PREPARATION FOR APRIL 29 HEARING |
| 4261127 | 4/22/2013 | RANKIE, HEATHER T. | ASSOCIATE | 7.90 | 480 | 3,792.00 | PER JAZ AND CTM REQUEST, REVIEW/ANALYZE AND CONDUCT RESEARCH RE CERTAIN AUTHORITIES CITED IN DEFS' REPLY ISO DAUBERT MOTION AND SUMMARIZE FOR USE IN CLASS CERT. HEARING PREP. |

| 4258934 | 4/22/2013 | ZAHID, JUDITH A. | PARTNER | 5.90 | 675 | 3,982.50 | CONTINUE DRAFTING ORDER OF FORM FOR DENYING MOTION TO STRIKE, CALL WITH LEAD COUNSEL AND ZELLE ATTORNEYS RE HEARING PREPARATION |
|---|---|---|---|---|---|---|---|
| 4256812 | 4/23/2013 | BABIONE, MARIE J. | PARALEGAL (3) | 1.00 | 235 | 235.00 | REVISE PROPOSED R&R RE: CLASS CERTIFICATION AS INSTRUCTED. |
| 4254900 | 4/23/2013 | CORBITT, CRAIG C. | SR. PARTNER | 5.00 | 875 | 4,375.00 | REVIEW MATERIAL RE PREPARATION FOR CLASS CERT HEARING, EMAIL FROM CALIFORNIA AG RE STATUS AND PROPOSED MEETING |
| 4256803 | 4/23/2013 | LAMB, DENISE M. | PARALEGAL (3) | 1.50 | 230 | 345.00 | SEARCH RELATIVITY FOR DOCUMENT AND RETRIEVE IN PREPARATION FOR DECLARATION ISO REPLY BRIEF TO CLASS CERT. |
| 4262460 | 4/23/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 7.20 | 800 | 5,760.00 | REVIEW AND REVISE AND SUPPLEMENT PROPOSED R&R SECTION REGARDING IMPACT AND DAMAGES, MERGE OTHER SECTION WORK ON ENTIRE ORDER, CONFER WITH J. ZAHID REGARDING ARGUMENT, DRAFT OUTLINE OF ARGUMENT, DRAFT EMAILS TO H. RANKIE REGARDING CASE LAW. |

| | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4260954 | 4/23/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 2.60 | 275 | 715.00 | PREPARE EMAIL TO [chart] CITED IN ALIOTO REPLY DECLARATION IN SUPPORT OF MOTION FOR CLASS CERTIFICATION, PER M. CHRISTIAN, IN PREPARATION FOR APRIL 29 HEARING, COORDINATE WITH D. LAMB THE DOWNLOADING FROM RELATIVITY OF BATES-NUMBERED DOCUMENTS CITED IN THE ALIOTO REPLY DECLARATION, IN PREPARATION FOR APRIL 29 HEARING, OBTAIN PRINTOUTS OF WEB PAGES CITED IN ALIOTO REPLY DECLARATION, IN PREPARATION FOR APRIL 29 HEARING, EMAILS TO/FROM J. METZLER AND B. GRALEWSKI RE BACKUP FOR HEARING, TELEPHONE CALL FROM B. GRALEWSKI RE PREPARATIONS FOR HEARING |
| 4258935 | 4/23/2013 | ZAHID, JUDITH A. | PARTNER | 7.80 | 675 | 5,265.00 | CALLS WITH SYLVIE, CONTINUE TO REVISE AND DRAFT ORDER OF FORM, RESEARCH ADDITIONAL CASES CITED BY DEFENDANTS IN REPLY, REVIEW MEMO FROM AE RE POINTS RAISED AND RESPONSES, REVIEW DRAFT OF CLASS CERT ORDER OF FORM, DISCUSSIONS RE SAME |
| 4256813 | 4/24/2013 | BABIONE, MARIE J. | PARALEGAL (3) | 1.00 | 235 | 235.00 | REVISE PROPOSED R&R RE: CLASS CERTIFICATION AS INSTRUCTED. |
| 4256872 | 4/24/2013 | CORBITT, CRAIG C. | SR. PARTNER | 3.00 | 875 | 2,625.00 | REVIEW DRAFT PROPOSED ORDER RE DAUBERT AND R&R RE CLASS CERT, EMAIL RE SAME, REVIEW MATERIAL RE CLASS CERT HEARING, COURT ORDER RE APPOINTMENT OF SPECIAL MASTER |

| 4262315 | 4/24/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.50 | 535 | 1,872.50 | DOCUMENT REVIEWER CALL RE KAWANO, SANOGAWAYA, AND UEDA - REVIEW MEMOS AND DOCUMENTS RE SAME - FOLLOW UP EMAILS |
| 4262468 | 4/24/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 10.50 | 800 | 8,400.00 | REVIEW AND REVISE AND SUPPLEMENT PROPOSED R&R, CONFER WITH J. ZAHID AND OTHERS REGARDING ARGUMENT ISSUES, DRAFT OUTLINE OF ARGUMENT, CONFER WITH EXPERTS VIA EMAIL REGARDING ARGUMENT, CONFER H. RANKIE REGARDING CASE LAW |

| 4260992 | 4/24/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 5.80 | 275 | 1,595.00 | DOWNLOAD ALL DEPOSITION SUMMARIES PREPARED TO DATE AND CREATE COMBINED PDF FILE OF SAME, PER D. LAMBRINOS, REFORMAT AND PREPARE PDF FILES OF PROPOSED REPORT AND RECOMMENDATION GRANTING INDIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, PER C. MICHELETTI, INCLUDING COMPARING THE THIRD AND FOURTH CONSOLIDATED AMENDED COMPLAINTS AND EDITING CITATIONS ACCORDINGLY, CHANGING CITES TO COMCAST OPINION TO REFLECT NEW WESTLAW VERSION, AND EDITING PLEADING DEFINITIONS FOR CONSISTENCY, INPUT EDITS FROM L. CAPURRO TO PROPOSED REPORT AND RECOMMENDATION, PER C. MICHELETTI, REVISE AND FINALIZE INDEX OF CLASS CERTIFICATION AND DAUBERT-RELATED FILINGS AND CORRESPONDENCE TO BE PROVIDED TO THE SPECIAL MASTER, PER J. ZAHID |
|---------|-----------|----------------|---------------|------|-----|----------|

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4261142 | 4/24/2013 | RANKIE, HEATHER T. | ASSOCIATE | 7.50 | 480 | 3,600.00 | FOR USE IN PROPOSED ORDER, PER CTM REQUEST, GATHER AND REVIEW AUTHORITY AND CREATE CITATIONS FOR VARIOUS PROPOSITIONS RE PREDOMINANCE PROOF NEEDED AT CLASS CERT, AND FOR JAZ CLASS CERT PREP, GATHER AND REVIEW NEW DAUBERT RELEVANT ANTITRUST CASES SINCE IPPS' BRIEFING. |
| 4258938 | 4/24/2013 | ZAHID, JUDITH A. | PARTNER | 8.40 | 675 | 5,670.00 | PREPARE FOR HEARING, REVISE AND ADD TO PROPOSED ORDER OF FORM, REVIEW NEW DAUBERT CASE LAW, PREPARE INDEX OF PLEADINGS SENT TO JAMS, CALLS AND DISCUSSIONS WITH M. ALIOTO, CTM, SYLVIE, ADD TO TABLE OF ARGUMENTS AND RESPONSES. |
| 4257254 | 4/25/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 1.30 | 650 | 845.00 | REVIEW MEMOS RE DATA ISSUES, CORRESPOND WITH J. ZAHID RE SAME, ATTEND CRT DATA CALL. |
| 4258886 | 4/25/2013 | CORBITT, CRAIG C. | SR. PARTNER | 3.00 | 875 | 2,625.00 | OFFICE CONFERENCE RE PREPARATION FOR CLASS CERT HEARING, REVIEW PROPOSED FINDINGS, EXPERT DECLARATIONS RE SAME |
| 4262327 | 4/25/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | DEPO SCHEDULING RE KAWANO, SANOGAWAYA, UEDA - REVIEW DOCUMENTS AND EMAILS TO LR RE SAME |
| 4262472 | 4/25/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 12.60 | 800 | 10,080.00 | REVIEW AND REVISE AND SUPPLEMENT PROPOSED R&R, CONFER WITH J. ZAHID AND OTHERS REGARDING ARGUMENT ISSUES, DRAFT OUTLINE OF ARGUMENT, CONFER WITH EXPERTS VIA EMAIL REGARDING ARGUMENT, CONFER H. RANKIE REGARDING CASE LAW |

| | | | | |
|---|---|---|---|---|
| 4261008 | 4/25/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 4.10 | 275 | 1,127.50 | COMPILE AND PRINT OUT COPIES OF SELECTED OPINIONS TO BE PROVIDED TO THE SPECIAL MASTER IN CONNECTION WITH THE APRIL 29 HEARING ON CLASS CERTIFICATION, PER J. ZAHID, PREPARE INDEX OF ALL COMPILED OPINIONS, PER H. RANKIE, COMPILE SEVERAL DOZEN KEY OPINIONS FOR USE AT THE APRIL 29 CLASS CERTIFICATION HEARING, PER J. ZAHID, PREPARE HARD-COPY SETS OF EVIDENCE CITED IN ASCERTAINABILITY SECTION OF ALIOTO REPLY DECLARATION IN SUPPORT OF CLASS CERTIFICATION, PER B. GRALEWSKI, IN PREPARATION FOR APRIL 29 HEARING, REDACT PROPOSED REPORT AND RECOMMENDATION, PER J. ZAHID, REVIEW A. LAU LETTER OF APRIL 19 RE WHEREABOUTS OF PROSPECTIVE PANASONIC/TOSHIBA DEPONENTS, AND ADD INFORMATION FROM SAME TO CHART TRACKING FUTURE WITNESSES, PER D. LAMBRINOS |
| 4261144 | 4/25/2013 | RANKIE, HEATHER T. | ASSOCIATE | 9.30 | 480 | 4,464.00 | FOR JAZ AND CTM HEARING PREP, SELECT AND SUMMARIZE KEY CASES ON CLASS CERT. AND DAUBERT, REDACT IDENTIFY FOR REDACTION CONFIDENTIAL INFORMATION IN PROPOSED ORDER. |

| ID | Date | Name | Role | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4257256 | 4/25/2013 | STEELE, MONICA J. | PARALEGAL (3) | 2.50 | 235 | 587.50 | ASSIST WITH COURT FILING RE UNDER SEAL AND REDACTED VERSIONS RE REPLY BRIEF IN SUPPORT OF IPPS' MOTION FOR CLASS CERT, IPPS' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE PROPOSED TESTIMONY OF DR. JANET S. NETZ, ERRATA TO REPLY BRIEF IN SUPPORT OF IPPS' MOTION FOR CLASS CERTIFICATION |
| 4258942 | 4/25/2013 | ZAHID, JUDITH A. | PARTNER | 9.80 | 675 | 6,615.00 | PREPARE FOR HEARING WITH M. ALIOTO AND CTM, DO MOCK ARGUMENT, CONFERENCE CALLS WITH APPLECON TO UNDERSTAND ISSUES AND ADD TO RESPONSES, WORK WITH HTR AND R. NEWMAN ON PROJECTS TO SUPPORT CLASS CERT AND DAUBERT ARGUMENTS AT HEARING, PARTICIPATE IN EXPERT COORDINATION CALL WITH DAPS AND ECONOMISTS |
| 4259167 | 4/26/2013 | CORBITT, CRAIG C. | SR. PARTNER | 2.00 | 875 | 1,750.00 | CONFER JUDITH, REVIEW MATERIAL RE CLASS CERT MOTION RE PREPARATION FOR HEARING |
| 4257316 | 4/26/2013 | LAMB, DENISE M. | PARALEGAL (3) | 7.00 | 230 | 1,610.00 | REVISE AND UPDATE COURT ORDER FOLDER AND LOG, REVISE LINKS THAT WERE REMOVED WHEN CHANGED FROM CD VOL TO F DRIVE, REVIEW NETZ'S NOVEMBER 15, 2012 DEPO TRANSCRIPT AND HIGH CITE IN PREPARATION FOR MONDAYS HEARING |
| 4262336 | 4/26/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 4.00 | 535 | 2,140.00 | PREPPING FOR YAMAMOTO AND SANOGAWAYA DEPOSITIONS - SCHEDULING, REVIEWING DOCUMENTS, AND CALLS RE SAME |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4262474 | 4/26/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 8.40 | 800 | 6,720.00 | CONFER WITH J. ZAHID AND OTHERS REGARDING ARGUMENT ISSUES, DRAFT OUTLINE OF ARGUMENT, CONFER WITH EXPERTS VIA EMAIL REGARDING ARGUMENT |
| 4261101 | 4/26/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 5.40 | 275 | 1,485.00 | PREPARE SETS OF ASCERTAINABILITY-RELATED DOCUMENTS CITED IN THE ALIOTO REPLY DECLARATION FOR B. GRALEWSKI FOR POSSIBLE USE AT APRIL 29 CLASS CERTIFICATION HEARING, COMPILE AND COORDINATE PRINTING OF A SET OF ALL CLASS CERTIFICATION FILINGS BY PLAINTIFFS, CERTAIN FILINGS BY DEFENDANTS, AND THE DEPOSITION TRANSCRIPTS OF NETZ AND WILLIG, PER J. ZAHID, IN PREPARATION FOR APRIL 29 HEARING, PRINT SET OF 37 KEY OPINIONS FOR USE AT THE HEARING, PER H. RANKIE |
| 4261147 | 4/26/2013 | RANKIE, HEATHER T. | ASSOCIATE | 8.00 | 480 | 3,840.00 | FOR JAZ AND CTM HEARING PREP, SELECT AND SUMMARIZE KEY CASES ON CLASS CERT. AND DAUBERT, CONDUCT RESEARCH AT CTM REQUEST RE ▮ STANDARDS, REVIEW/ANALYZE AND SUMMARIZE ▮ ARGUMENTS FOR DEFS AND PLFS FOR CTM USE IN HEARING OUTLINE. |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4258944 | 4/26/2013 | ZAHID, JUDITH A. | PARTNER | 9.40 | 675 | 6,345.00 | DRAFT OUTLINE OF ARGUMENT FOR DAUBERT MOTION, CONTINUE TO PREPARE FOR HEARING WITH MOCK ARGUMENTS WITH CTM, ADDITIONAL CONFERENCE CALLS WITH APPLECON TO UNDERSTAND ISSUES AND ADD TO RESPONSES, ADD CITATIONS TO EXPERT REPORTS AND CASE LAW TO TABLE OF RESPONSES |
| 4262475 | 4/27/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 8.70 | 800 | 6,960.00 | CONFER WITH J. ZAHID AND OTHERS REGARDING ARGUMENT ISSUES, DRAFT OUTLINE OF ARGUMENT, CONFER WITH EXPERTS VIA EMAIL REGARDING ARGUMENT |
| 4258945 | 4/27/2013 | ZAHID, JUDITH A. | PARTNER | 5.30 | 675 | 3,577.50 | CONTINUE PREPARING FOR DAUBERT AND CLASS CERTIFICATION HEARING |
| 4262477 | 4/28/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 9.80 | 800 | 7,840.00 | CONFER WITH J. ZAHID AND OTHERS REGARDING ARGUMENT ISSUES, DRAFT OUTLINE OF ARGUMENT, CONFER WITH EXPERTS VIA EMAIL REGARDING ARGUMENT. PREPARE FOR ARGUMENT |
| 4258946 | 4/28/2013 | ZAHID, JUDITH A. | PARTNER | 4.50 | 675 | 3,037.50 | CONTINUE PREPARING FOR DAUBERT AND CLASS CERTIFICATION HEARING |
| 4259972 | 4/29/2013 | CORBITT, CRAIG C. | SR. PARTNER | 8.00 | 875 | 7,000.00 | CLASS CERT HEARING, CONFERENCES WITH CO-COUNSEL, EXPERTS, OPPOSING COUNSEL, CTM AND JZ RE SAME |
| 4262338 | 4/29/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.50 | 535 | 1,872.50 | DRAFTING INSERT WITH DOCUMMENT REFERENCES TO LR ON JPL ISSUE - MEETING NOTES WHERE REQUESTED PEOPLE WERE ATTENDEES |
| 4262480 | 4/29/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 10.20 | 800 | 8,160.00 | PREPARE FOR ARGUMENT, TRAVEL TO JAMS, ATTEND ARGUMENT AND ARGUE CLASS CERT MOTION, MEETING REGARDING SAME WITH M. ALIOTO AND OTHERS |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4261122 | 4/29/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 6.80 | 275 | 1,870.00 | PREPARE BINDERS OF FILINGS AND AUTHORITIES FOR TODAY'S HEARING ON CLASS CERTIFICATION, PER J. ZAHID, DELIVER AND SET UP BINDERS AT JAMS, PER J. ZAHID, PREPARE LIST OF BATES NUMBERS OF ALL PANASONIC DEPOSITION EXHIBITS MARKED TO DATE, IN PREPARATION TO USE SAME FOR FUTURE SEARCHES FOR KEY DOCUMENTS IN RELATIVITY,, COMPILE DOCUMENTS FROM RELATIVITY RE TOMORI, YASUKAWA, NAKAMOTO AND OHMORI, PER D. LAMBRINOS, RETRIEVE MATERIALS |
| 4258948 | 4/29/2013 | ZAHID, JUDITH A. | PARTNER | 8.90 | 675 | 6,007.50 | ATTEND AND ARGUE DAUBERT MOTION AT CLASS CERTIFICATION AND MOTION TO STRIKE ALL-DAY HEARING |
| 4261769 | 4/30/2013 | CORBITT, CRAIG C. | SR. PARTNER | 4.00 | 875 | 3,500.00 | MEETING WITH CALIFORNIA AG OFFICE, PHILIPS RE CALIFORNIA CLASS NOTICE, MEETING WITH DEFENSE COUNSEL RE POTENTIAL SETTLEMENT, CONFER WITH MARIO RE SAME, REVIEW MEMO AND BACKGROUND INFO RE PHILIPS |
| 4262448 | 4/30/2013 | FU, QIANWEI | SR. ASSOCIATE | 0.20 | 580 | 116.00 | EMAIL COMM WITH JAZ RE SHARP PRODUCTION AND DATA QUESTIONS |
| 4261288 | 4/30/2013 | LAMB, DENISE M. | PARALEGAL (3) | 4.00 | 230 | 920.00 | REVISE AND UPDATE COURT ORDER FOLDER AND LOG, REVISE LINKS THAT WERE REMOVED WHEN CHANGED FROM CD VOL TO F DRIVE |
| 4262344 | 4/30/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | PREPARING/SCHEDULING PANASONIC AND TOSHIBA DEPOS - REVIEW DOCUMENTS RE SAME |
| 4262482 | 4/30/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 1.00 | 800 | 800.00 | REVIEW ARGUMENT ISSUES, CONFER WITH J. ZAHID REGARDING ARTICLES, DRAFT EMAILS REGARDING SAME |

| 4262281 | 4/30/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 3.00 | 275 | 825.00 | REVIEW THREE NEWLY PREPARED MEMOS RE TOMOYUKI KAWANO AND DOWNLOAD DOCUMENTS FROM RELATIVITY CITED IN SAME, PER D. LAMBRINOS, IN PREPARATION FOR POSSIBLE KAWANO DEPOSITION, COMPILE ELECTRONIC COPIES OF SELECTED OPINIONS AND OTHER DOCUMENTS REQUESTED BY SPECIAL MASTER, PER J. ZAHID, SEARCH PANASONIC INTERROGATORY RESPONSES FOR REFERENCES TO STEVE LAMMERS, PER D. LAMBRINOS, IN PREPARATION FOR LAMMERS DEPOSITION |
| 4262271 | 4/30/2013 | ZAHID, JUDITH A. | PARTNER | 2.00 | 675 | 1,350.00 | GATHERED AND SENT MATERIALS TO MR. QUINN PER LEAD INSTRUCTION, DISCUSSED HEARING WITH EXPERT. |
| 4267132 | 5/1/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.00 | 535 | 1,605.00 | REVIEW DOCUMENTS FOR SANOGAWAYA, AND UPCOMING POSSIBLE WS INCLUDING UEDA – EMAILS AND CALL WITH B CULLEN RE SAME |
| 4264209 | 5/1/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 2.30 | 275 | 632.50 | DOWNLOAD ADDITIONAL DOCUMENTS RE KAWANO FROM RELATIVITY, COORDINATE PRINTING AND FORMAT SPREADSHEETS IN THAT GROUP, PER D. LAMBRINOS, IN PREPARATION FOR POSSIBLE KAWANO DEPOSITION, SEARCH COMPLETE SET OF PANASONIC 30(B)(6) AND MERITS DEPOSITION TRANSCRIPTS FOR REFERENCES TO SANOGAWAYA, PER D. LAMBRINOS, UPLOAD TO FTP SITE ACADEMIC SOURCES RE PRICE STRUCTURE CITED IN J. NETZ MATERIALS, PER J. ZAHID |

| ID | Date | Name | Title | Hours | Amount | Description |
|---|---|---|---|---|---|---|
| 4263732 | 5/2/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.50 | 1,312.50 | CALLS WITH MARIO, KATHLEEN FOOTE RE POTENTIAL SETTLEMENTS, STATUS AND STRATEGY, REVIEW MATERIAL RE SAME |
| 4267476 | 5/2/2013 | LAMB, DENISE M. | PARALEGAL (3) | 1.00 | 230.00 | REVIEW DOCUMENTS IN PREPARATION FOR DEPOSITION, FORMAT EXCEL AND POWERPOINT DOCUMENTS FOR SAME |
| 4267154 | 5/2/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.00 | 1,605.00 | REVIEW DOCUMENTS AND DEPO TESTIMONY RE SANOGAWAYA - REVIEW EMAIL FROM LR RE SHARP COORDINATION AGREEMENT AND UPCOMING DEPOS - INTERNAL CONFERENCE WITH JZ RE SAME |
| 4268191 | 5/2/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 1.50 | 1,200.00 | REVIEW OF ISSUES IN REGARDS TO CASE CITES FOR QUINN, REVIEW AND ANALYZE LEGGE ORDER REGARDING AGC, |
| 4264223 | 5/2/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 5.30 | 1,457.50 | COMPILE DEPOSITION EXHIBITS SHOWN TO IWAMOTO, KINOSHITA AND NISHIYAMA WHEN THEY TESTIFIED RE SANOGAWAYA, PER D. LAMBRINOS, IN PREPARATION FOR SANOGAWAYA DEPOSITION, SEARCH RELATIVITY AND COMPILE ADDITIONAL DEPOSITION EXHIBITS REFERENCING SANOGAWAYA, AND REVIEW SAME AND HIGHLIGHT MENTIONS OF SANOGAWAYA, PER D. LAMBRINOS, COMPILE SETS OF KAWANO-RELATED DOCUMENTS REFERENCED IN MEMOS BY I. DIEL, B. GRALEWSKI AND K. PATANE, PER D. LAMBRINOS, INCLUDING SEARCHES OF RELATIVITY FOR RELATED DOCUMENTS, REFORMAT MEMORANDUM RE SHARP DATA FOLLOW-UP QUESTIONS, PER J. ZAHID |

| | | | | | | |
|---|---|---|---|---|---|---|
| 4268645 | 5/2/2013 | RANKIE, HEATHER T. | ASSOCIATE | 2.30 | 480 | 1,104.00 | PER CTM REQUEST, REVIEW/ANALYZE AND CREATE PIN CITATIONS FOR "NEW" CASES SUPPORTING CLASS CERT. RE ▇▇▇ STANDARDS FOR SUBMISSION TO SPECIAL MASTER. |
| 4267910 | 5/2/2013 | ZAHID, JUDITH A. | PARTNER | 2.40 | 675 | 1,620.00 | SENT CASE PIN-CITES TO QUINN FROM CASES HANDED UP, PARTICIPATED IN DISCUSSION RE PHILIPS AND POSSIBLE SETTLEMENT, SENT LETTER TO SHARP COUNSEL RE DATA QUESTIONS, SENT DATA AND OTHER INFORMATION TO DAPS THRU COOPERATIVE SHARING ARRANGEMENT WITH IPPS-DAPS. |
| 4267168 | 5/3/2013 | CORBITT, CRAIG C. | SR. PARTNER | 3.00 | 875 | 2,625.00 | CALL WITH CO-COUNSEL, EMAIL RE CASE STATUS, POTENTIAL SETTLEMENTS, REVIEW MARKET SHARES AND LIABILITY EVIDENCE RE SAME, REVIEW SPECIAL MASTER ORDER RE DAP AGC STANDING AND EMAIL RE SAME |
| 4267478 | 5/3/2013 | LAMB, DENISE M. | PARALEGAL (3) | 4.00 | 230 | 920.00 | REVIEW DOCUMENTS IN PREPARATION FOR DEPOSITION, FORMAT EXCEL AND POWERPOINT DOCUMENTS FOR SAME |
| 4268638 | 5/3/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.00 | 535 | 1,605.00 | MERITS DEPOS - PANASONIC - NEGOTIATING WITH DEFENSE COUNSEL AS TO TIME TO DISCLOSE IF W WILL TAKE THE 5TH. EMAILS RE UPCOMING TOSHIBA DEPOS OF FORMER PANASONIC WS |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4268196 | 5/3/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 0.80 | 800 | 640.00 | REVIEW OF LETTER FROM J. KESSLER REGARDING REQUESTED RESPONSE TO CASE AND OTHER SUBMISSIONS AT HEARING, REVIEW OF EMAIL FROM M. ALIOTO REGARDING SAME, ANALYZE POTENTIAL RESPONSES |
| 4268201 | 5/4/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 2.50 | 800 | 2,000.00 | REVIEW OF KESSLER LETTER ISSUES REGARDING FURTHER SUBMISSIONS, RESEARCH REGARDING SAME, DRAFT RESPONSIVE LETTER, DRAFT EMAIL REGARDING SAME TO M. ALIOTO |
| 4266674 | 5/6/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.40 | 650 | 260.00 | VARIOUS CONFERENCES WITH CO-COUNSEL RE CLASS CERTIFICATION HEARING. |
| 4264343 | 5/6/2013 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 875 | 437.50 | CALL FROM KATHLEEN FOOTE RE SETTLEMENT ISSUES, REVIEW BACKGROUND MATERIAL RE SAME |
| 4267484 | 5/6/2013 | LAMB, DENISE M. | PARALEGAL (3) | 2.00 | 230 | 460.00 | REVIEW DOCUMENTS IN PREPARATION FOR DEPOSITION, FORMAT EXCEL AND POWERPOINT DOCUMENTS FOR SAME |
| 4268660 | 5/6/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.50 | 535 | 1,872.50 | PANASONIC - MERITS DEPOS - SANOGAWAYA - PREPARE DEPO NOTICE, CIRC TO PS GROUP, EMAIL OPPOSING COUNSEL - REVIEW MEMO AND DOCUMENTS RE KRAUSS AS POSSIBLE DEPONENT |
| 4268275 | 5/6/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 5.80 | 800 | 4,640.00 | CONFER WITH M. ALIOTO REGARDING KESSLER LETTER ISSUES REGARDING FURTHER SUBMISSIONS, DRAFTING OF AND REVIEW AND REVISE LETTER TO QUINN REGARDING SAME, FURTHER CALLS AND EMAILS WITH M. ALIOTO, CONFER WITH J. ZAHID REGARDING SAME, FACT RESEARCH REGARDING SAME, CASE FILE ORGANIZATION |

| ID | Date | Name | Role | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4264235 | 5/6/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 3.70 | 275 | 1,017.50 | COMPILE, REVIEW AND HIGHLIGHT HOT DOCUMENTS RE TOMOYUKI KAWANO, PER D. LAMBRINOS, IN PREPARATION FOR KAWANO DEPOSITION, PREPARE NOTICE OF DEPOSITION OF MASAKI SANOGAWAYA, PER D. LAMBRINOS |
| 4267907 | 5/6/2013 | ZAHID, JUDITH A. | PARTNER | 1.50 | 675 | 1,012.50 | REVIEW LETTER TO RESPOND TO DS' LETTER RE ADDITIONAL BRIEFING, PROVIDE COMMENTS, CALL WITH M. ALIOTO RE POST-HEARING SUMMARY, DEAL WITH UPCOMING DEPOSITION ISSUES WITH DXI |
| 4266673 | 5/7/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.50 | 650 | 325.00 | CONFERENCE WITH D. LAMBRINOS RE DISCOVERY ISSUES, REVIEW CORRESPONDENCE RE DEPOSITION SCHEDULING |
| 4269887 | 5/7/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | PANASONIC DEPO MERITS - LOGISTICS AND REVIEW DOCUMENTS FOR SANOGAWAYA - CORRESPONDENCE RE YAMAMOTO |
| 4268206 | 5/7/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 1.70 | 800 | 1,360.00 | REVIEW OF RESPONSE TO KESSLER LETTER, LEGAL RESEARCH REGARDING ████ REVIEW OF TRANSCRIPT OF ORAL ARGUMENT, REVIEW OF EMAIL FROM SARA NEVINS |
| 4266681 | 5/8/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.30 | 650 | 195.00 | CONFERENCE WITH D. LAMBRINOS RE CRT DEPOSITION ISSUES. |
| 4267195 | 5/8/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 875 | 875.00 | EMAIL MARIO RE SETTLEMENT ISSUES, OFFICE CONFERENCE AND RESEARCH RE SAME |

| 4270277 | 5/8/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 5.50 | 535 | 2,942.50 | PANASONIC DEPO W PREP - REVIEW MEMO/DOCS FOR KRAUSS, SANOGAWAYA, LAMMERS, AND CORRESPONDENCE RE YAMAMOTO |
| 4265679 | 5/8/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 3.40 | 275 | 935.00 | COORDINATE WITH D. LAMB TO SCHEDULE COURT REPORTER FOR JULY 31 DEPOSITION OF MASAKI SANOGAWAYA, RELATIVITY SEARCHES, AND DOWNLOAD, REVIEW AND HIGHLIGHT DOCUMENTS RE SANOGAWAYA LISTED IN MEMO FROM JACKSON BINGHAM, PER D. LAMBRINOS, REVIEW CHART LISTING ███ AND EXTRACT INFORMATION FROM SAME FOR LIST OF POTENTIAL PANASONIC DEPONENTS, PER D. LAMBRINOS |
| 4270286 | 5/9/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 4.50 | 535 | 2,407.50 | REVIEWER CALL, PREP RE SANOGAWAY - REVIEW DOCS AND MEMOS FOR UEDA AND LAMMERS |
| 4270569 | 5/10/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | SANOGAWAYA DEPO PREP |

| ID | Date | Name | Role | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4265695 | 5/10/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 3.20 | 275 | 880.00 | COMPILE FROM RELATIVITY SAME, REVIEW GROUP AND ELIMINATE DUPLICATES, AND HIGHLIGHT REFERENCES TO SANOGAWAYA, PER D. LAMBRINOS, IN PREPARATION FOR SANOGAWAYA DEPOSITION, REVIEW COMPILATION OF DOCUMENTS SELECTED BY D. LAMBRINOS FOR YAMAMOTO DEPOSITION AND BEGIN PREPARE LIST OF BATES NUMBERS AND FAMILY MEMBERS, IN PREPARATION TO SEND THE DOCUMENTS TO D. BIRKHAEUSER |
| 4270299 | 5/13/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 5.00 | 535 | 2,675.00 | MERITS DEPOS - LOGISTICS AND COMMUNICATION WITH OPPOSING COUNSEL RE 5TH AMENDMENT ISSUE - REVIEW DOCUMENTS FOR SANOGAWAYA, KAWANO, LAMMERS, UFDA - PREP FOR WED CALL |
| 4265711 | 5/13/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 3.00 | 275 | 825.00 | CONTINUE REVIEW OF COMPILATION OF DOCUMENTS SELECTED BY D. LAMBRINOS FOR YAMAMOTO DEPOSITION, PREPARING OF LIST OF BATES NUMBERS AND FAMILY MEMBERS, AND REVIEW OF THE DOCUMENTS IN RELATIVITY, IN PREPARATION TO SEND THE DOCUMENTS TO D. BIRKHAEUSER, FORMAT EXCEL AND POWERPOINT FILES DOWNLOADED FROM RELATIVITY TODAY FOR USE AS POTENTIAL YAMAMOTO DEPOSITION EXHIBITS |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4270305 | 5/14/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 5.00 | 535 | 2,675.00 | PREP FOR SANOGAWAYA - REVIEW DOCUMENTS FOR TEAM CALL RE UEDA, KAWANO, LAMMERS, YAMAMOTO DOCS (TO DAN B) |
| 4265720 | 5/14/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 5.10 | 275 | 1,402.50 | FINALIZE PREPARATION OF ELECTRONIC COMPILATION OF POTENTIAL EXHIBITS FOR YAMAMOTO DEPOSITION TO BE SENT TO D. BIRKHAEUSER, PER D. LAMBRINOS, OBTAIN ADDITIONAL DOCUMENTS FROM RELATIVITY RE YAMAMOTO IN PREPARATION TO SEND SAME TO D. BIRKHAEUSER, PER D. LAMBRINOS, PREPARE EMAIL TO D. BIRKHAEUSER ATTACHING YAMAMOTO DOCUMENTS, REVIEW MAY 10 UPDATED MEMO FROM K. PATANE RE KAWANO DOCUMENT REVIEW, DETERMINE WHICH DOCUMENTS ARE NEWLY CITED, AND OBTAIN SAME FROM RELATIVITY, PER D. LAMBRINOS, SEARCH AND REVIEW DOCUMENTS SELECTED BY D. LAMBRINOS FOR YAMAMOTO DEPOSITION FOR REFERENCES TO KAWANO AND SANOGAWAYA, PER D. LAMBRINOS, ADD INFORMATION FROM CHART PREPARED BY B. CULLEN RE EARLY MULTILATERAL MEETINGS ATTENDED BY MEC PERSONNEL TO SPREADSHEET RANKING NEXT ROUND OF POTENTIAL PANASONIC WITNESSES, PER D. LAMBRINOS |
| 4270316 | 5/15/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 5.00 | 535 | 2,675.00 | DEPO PREP SANOGAWAYA, REVIEW DOCUMENTS RE LAMMERS AND UEDA, REVIEWER TEAM CALL, DPP RELATIVITY PROJECT, YAMAMOTO EMAIL |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4265726 | 5/15/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 5.10 | 275 | 1,402.50 | DOWNLOAD, FORMAT, PRINT AND HIGHLIGHT DOCUMENTS FROM RELATIVITY LISTED IN 5/9/13 J. LEVY MEMO RE STEVE LAMMERS, AND LEVY EMAIL OF SAME DAY RE KAZUTO UEDA, PER D. LAMBRINOS, IN PREPARATION FOR POSSIBLE LAMMERS AND UEDA DEPOSITIONS, DOWNLOAD ADDITIONAL YAMAMOTO-RELATED DOCUMENTS FROM RELATIVITY IN PREPARATION TO SEND SAME TO D. BIRKHAEUSER, PER D. LAMBRINOS, DISCUSSION WITH D. LAMBRINOS RE CULLING OF POTENTIAL EXHIBITS FOR YAMAMOTO, KAWANO AND SANOGAWAYA DEPOSITIONS, REVIEW R. SAVERI DECLARATION IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND PREPARE LIST OF BATES NUMBERS CITED THEREIN, IN PREPARATION TO CULL THOSE DOCUMENTS IN RELATIVITY, PER D. LAMBRINOS |
| 4270664 | 5/16/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | PREPARE FOR SANOGAWAYA DEPOSITION |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4265733 | 5/16/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 5.90 | 275 | 1,622.50 | COMPILE ADDITIONAL DOCUMENTS FOR USE AS POTENTIAL DEPOSITION EXHIBITS WITH SANOGAWAYA, KAWANO AND YAMAMOTO, PER D. LAMBRINOS, RESPOND TO B. ROSEWARNE REQUEST FOR TRANSCRIPTS OF CHIH CHUN-LIU DEPOSITION, PER J. ZAHID, REVIEW DOCUMENTS SELECTED BY D. LAMBRINOS FOR YAMAMOTO DEPOSITION FOR REFERENCES TO KAWANO AND SANOGAWAYA, PER D. LAMBRINOS, SET UP ON THE NETWORK UNREDACTED VERSIONS OF DIRECT PURCHASER PLAINTIFFS' MAY 14 CLASS CERTIFICATION PAPERS, PER J. ZAHID, REVIEW DOCUMENTS SET ASIDE FOR TRANSLATION, CHECK RELATIVITY FOR DUPLICATES OF SAME THAT HAVE BEEN TRANSLATED, AND PREPARE DEFINITIVE LIST OF DOCUMENTS REQUIRING TRANSLATION FOR UPCOMING PANASONIC DEPOSITIONS, PER D. LAMBRINOS, PREPARE EMAIL TO N. CIHLAR LISTING AND ATTACHING DOCUMENTS REQUIRING TRANSLATION, DISCUSSION WITH D. LAMBRINOS RE NEW DOCUMENTS CULLED FOR YAMAMOTO, |
| 4270333 | 5/17/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 5.00 | 535 | 2,675.00 | EMAIL TO OPPOSING COUNSEL RE 5TH AMENDMENT ISSUE (SANOGAWAYA) - DRAFT EMAIL TO PLAINTIFFS' GROUP RE |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4265738 | 5/17/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 4.80 | 275 | 1,320.00 | PREPARE EMAIL TO D. BIRKHAEUSER ATTACHING NEW GROUP OF DOCUMENTS FOR YAMAMOTO DEPOSITION, PER D. LAMBRINOS, REVISE CHART RANKING POTENTIAL PANASONIC DEPOSITION WITNESSES BASED ON RECENTLY ADDED INFORMATION RE EARLY MULTILATERAL MEETING PARTICIPATION, PER D. LAMBRINOS, REVIEW DOCKET SHEET AND VARIOUS ORDERS, AND ADD INFORMATION TO SPREADSHEET TRACKING THE SETTLEMENTS IN THE CASE, PER D. LAMBRINOS, FORMAT EXCEL FILES FOR POTENTIAL USE AS YAMAMOTO DEPOSITION EXHIBITS, IN PREPARATION TO SEND SAME TO D. BIRKHAEUSER, RELATIVITY SEARCH AND DOWNLOAD DOCUMENTS RE SHINICHIRO TSURUTA, PER D. LAMBRINOS, IN PREPARATION FOR TSURUTA DEPOSITION, SEARCH RELATIVITY AND CULL DOCUMENTS ATTACHED TO THE 10/1/12 ALIOTO OR 5/14/13 SAVERI DECLARATIONS IN SUPPORT OF CLASS CERTIFICATION THAT REFERENCE ANY OF SIX UPCOMING PANASONIC WITNESSES AND WHICH HAVEN'T PREVIOUSLY BEEN MARKED AS |
| 4270354 | 5/20/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.50 | 535 | 1,872.50 | EMAIL OPPOSING COUNSEL RE NEXT ROUND OF POTENTIAL WS - SUMMARY EMAIL TO PLAINTIFFS GROUP RE SAME AND JUSTIFYING KAWANO |
| 4270534 | 5/21/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | REVIEW DOCUMENTS IN PREP FOR SANOGAWAYA DEPOSITION |

| ID | Date | Name | Role | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4266022 | 5/21/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 3.10 | 275 | 852.50 | FINISH TASK OF SEARCHING RELATIVITY AND REVIEWING, DOWNLOADING AND LOGGING NON-DEPOSITION EXHIBITS THAT WERE EXHIBITS TO THE ALIOTO OR SAVERI DECLARATIONS IN SUPPORT OF CLASS CERTIFICATION AND REFERENCE THE UPCOMING PANASONIC DEPONENTS (KAWANO, KRAUSS, LAMMERS, SANOGAWAYA, TSURUTA AND YAMAMOTO), PER D. LAMBRINOS, DO SAME WITH RESPECT TO DOCUMENTS PREVIOUSLY MARKED AS EXHIBITS WITH OTHER PANASONIC WITNESSES, DISCUSSION WITH D. LAMBRINOS RE NEXT STEPS IN CODING ADDITIONAL SANOGAWAYA-RELATED DOCUMENTS |
| 4270536 | 5/22/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.50 | 535 | 1,872.50 | PREP FOR SANOGAWAYA DEPO - REVIEW DOCUMENTS - REVIEWER CALL/PREP FOR CALL |
| 4268226 | 5/22/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 2.80 | 800 | 2,240.00 | REVIEW AND ANALYZE DP CLASS SUBMISSIONS (SUPPORTING MEMO AND LEITZINGER DECL) IN REGARDS TO SAME, ▉ |
| 4268227 | 5/23/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 2.00 | 800 | 1,600.00 | REVIEW AND ANALYZE DP CLASS SUBMISSIONS (SUPPORTING MEMO AND LEITZINGER DECL) IN REGARDS TO SAME, ▉ |
| 4270556 | 5/28/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | PREP FOR SANOGAWAYA REVIEW DOCUMENTS FOR UEDA |
| 4270565 | 5/29/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | DEPO PREP FOR SANOGAWYA AND POTENTIAL W KAWANO |

| 4275339 | 6/3/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 0.50 | 650 | 325.00 | CORRESPONDENCE WITH OPPOSING COUNSEL RE DEPOSITION WITNESS ISSUES, COMMUNICATIONS WITH D. LAMB AND R. NEWMAN RE CLASS REP. DEPOSITIONS |
| 4279116 | 6/3/2013 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 875 | 437.50 | EMAIL RE AND REVIEW CALIFORNIA AG FILINGS RE STATE CASE |
| 4284401 | 6/3/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.00 | 535 | 1,605.00 | PREP FOR SANOGAWAYA DEPO, NEXT ROUND OF MERITS WS, TOSHIBA W OVERLAPPING DOCUMENTS, COMMUNICATE WITH CLASS COUNSEL RE SAME |
| 4284770 | 6/3/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 0.80 | 800 | 640.00 | REVIEW AND ANALYSIS OF DAP OBJECTION TO AGC RULING, REVIEW OF ORDER ON AGC BRIEFING |
| 4272654 | 6/3/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 1.70 | 275 | 467.50 | UPDATE CHARTS TRACKING POTENTIAL PANASONIC DEPONENTS TO REFLECT A. HEMLOCK EMAIL OF TODAY RE STATUS OF TSURUTA, KAWANO, KRAUSS AND LAMMERS, PER D. LAMBRINOS, SEARCH SOURCE DOCUMENTS (INCLUDING INTERROGATORY RESPONSES OF ALL DEFENDANTS) AND COMPILE REFERENCES TO POTENTIAL PANASONIC DEPONENTS YU-HAU CHANG AND CHI-YEN HSU, PER D. LAMBRINOS, SEARCH VARIOUS TRANSLATIONS AND RELATIVITY, AND OBTAIN JAPANESE CHARACTERS FOR KAWANO AND TSURUTA'S NAMES IN PREPARATION TO PROVIDE THEM TO A. LAU, PER D. LAMBRINOS |

| | | | | | |
|---|---|---|---|---|---|
| 4284404 | 6/4/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.00 | 535 | 1,070.00 | PREPARE FOR SANOGAWAYA DEPO, CONFERENCE CALL PREP RE SAME IPP TEAM, EMAILS RE TOSHIBA WS, KAWANO, NISHIMURA DOCUMENT PREP |
| 4284408 | 6/6/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 4.50 | 535 | 2,407.50 | PANASONIC - REVIEW DOCUMENTS RE EXPENSE REPORT ISSUE, CALL WITH BRIAN CULLEN RE SAME, EMAILS TO LAUREN AND MILBERG RE SAME, REVIEW OF SECAUCUS DOCUMENT AND INEDEX, DRAFT EMAIL TO OPPOSING COUNSEL |
| 4272687 | 6/6/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 0.60 | 275 | 165.00 | ADD INFORMATION RE SEC/SEAI DISMISSAL BY DIRECT-ACTION PLAINTIFFS TO SETTLEMENT DASHBOARD, PER D. LAMBRINOS, PULL COMPILATION OF PANASONIC EXPENSE REPORTS MARKED AS EXHIBIT AT NISHIYAMA DEPOSITION, PER D. LAMBRINOS, OBTAIN METADATA FROM RELATIVITY FOR EXPENSE REPORT EXHIBIT, PER D. LAMBRINOS, COMPILE ELECTRONIC COPIES OF DOCUMENTS SELECTED BY D. LAMBRINOS FOR KAWANO DEPOSITION IN PREPARATION TO SEND SAME TO D. BIRKHAEUSER |
| 4284409 | 6/7/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.50 | 535 | 1,872.50 | PANASONIC DEPO PREP - SANOGAWAYA, REVIEW DOCUMENTS FOR NISHIMURA AND KAWANO (OVERLAPPING TOSHIBA WS), EXPENSE REPORT ISSUE - FOLLOW UP WITH BCULLEN AND MILBERG |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4272691 | 6/7/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 1.30 | 275 | 357.50 | FINISH COMPILING ELECTRONIC COPIES OF DOCUMENTS SELECTED BY D. LAMBRINOS FOR KAWANO DEPOSITION IN PREPARATION TO SEND SAME TO D. BIRKHAEUSER, AND PREPARE EMAIL TO D. BIRKHAEUSER RE SAME |
| 4284417 | 6/10/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.00 | 535 | 1,605.00 | EXPENSE REPORTS CALL, REVIEW DOCUMENTS FOR SANOGAWAYA AND KAWANO |
| 4273715 | 6/11/2013 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 875 | 437.50 | EMAIL FROM CALIFORNIA AG AND MARIO RE COOPERATION, OFFICE CONFERENCE RE SAME AND RE CASE STATUS |
| 4273705 | 6/12/2013 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 875 | 437.50 | EMAILS FROM CALIFORNIA AG, MARIO RE DISCOVERY COORDINATION, STATUS |
| 4284423 | 6/12/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 3.00 | 535 | 1,605.00 | NISHIYAMA CTS TO AGS EMAIL PER LAUREN, SANOGAWAYA REVIEW, CTS TO NATE, EXPENSE REPORTS |
| 4274664 | 6/12/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 0.70 | 275 | 192.50 | REVIEW OUTLOOK FILES TO DETERMINE TO WHOM CERTIFIED TRANSLATIONS USED IN IWAMOTO DEPOSITION WERE SENT, PER QUERY FROM L. RUSSELL VIA D. LAMBRINOS, REVIEW CURRENT STATUS OF TRANSLATIONS NEEDED FOR UPCOMING DEPOSITIONS, AND PREPARE CHART AND EMAIL TO D. LAMBRINOS RE SAME |
| 4284425 | 6/13/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | PANASAONIC TRANSLATION OBJECTION EMAILS, EXPENSE REPORTS, NISHIMURA DOCS TO ROSENBURG |

| ID | Date | Name | Title | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|---|---|
| 4274673 | 6/13/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 1.40 | 275 | 385.00 | PREPARE EMAIL TO N. CIHLAR RE DOCUMENT NOT YET SENT FOR TRANSLATION THAT WILL BE NEEDED FOR KAWANO DEPOSITION, PER D. LAMBRINOS, REVIEW SANOGAWAYA SEARCHES IN RELATIVITY AND DETERMINE WHICH DOCUMENTS APPEARING THEREIN HAVE NOT YET BEEN COMPILED FOR D. LAMBRINOS REVIEW, COMPILE DOCUMENTS IN SAVED SEARCHES ON RELATIVITY RE SANOGAWAYA, PER D. LAMBRINOS |
| 4274680 | 6/14/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 1.80 | 275 | 495.00 | FINISH COMPILING DOCUMENTS IN SAVED SEARCHES ON RELATIVITY RE SANOGAWAYA, PER D. LAMBRINOS |
| 4281595 | 6/17/2013 | CORBITT, CRAIG C. | SR. PARTNER | 0.50 | 875 | 437.50 | EMAIL RE STATUS, CALIFORNIA AG PARTICIPATION |
| 4284431 | 6/17/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 1.50 | 535 | 802.50 | REVIEW YAMAMOTO DOCUMENTS, SEND TO MATTHEW KENT FOR UPCOMING DEPO |
| 4274688 | 6/17/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 1.90 | 275 | 522.50 | FORMAT EXCEL FILES FOR POTENTIAL USE AS SANOGAWAYA DEPOSITION EXHIBITS, PER D. LAMBRINOS, COMPILE DOCUMENTS PREVIOUSLY SENT TO D. BIRKHAEUSER FOR YAMAMOTO DEPOSITION AND PREPARE EMAIL OF SAME TO M. KENT, PER D. LAMBRINOS |
| 4284434 | 6/18/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.00 | 535 | 1,070.00 | PANASONIC - CALL AND COORDINATION RE EXPENSE REPORTS, PREP FOR REVIEWER CALL (DROP SUSSMAN ATTY), REVIEW NISHIMARU DOCUMENTS, 5TH A EMAIL (DONOVAN) |

| | | | | | |
|---|---|---|---|---|---|
| 4274699 | 6/18/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 0.90 | 275 | 247.50 | FINISH COMPILING AND CHRONOLOGIZING NEW GROUP OF DOCUMENTS CULLED FROM RELATIVITY FOR SANOGAWAYA DEPOSITION, PER D. LAMBRINOS |
| 4281662 | 6/20/2013 | CHRISTIAN, MICHAEL S. | PARTNER | 1.10 | 650 | 715.00 | RECEIPT OF CLASS CERTIFICATION ORDER, CORRESPOND WITH CO-COUNSEL RE SAME. |
| 4275642 | 6/20/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.00 | 875 | 875.00 | REVIEW SPECIAL MASTER R&R'S RE CLASS CERT, EMAIL RE SAME |
| 4284438 | 6/20/2013 | LAMBRINOS, DEMETRIUS X. | ASSOCIATE | 2.50 | 535 | 1,337.50 | REVIEW QUINN'S CLASS CERT AND DAUBERT ORDERS |
| 4284794 | 6/20/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 1.20 | 800 | 960.00 | REVIEW OF EMAILS REGARDING R&R ON CLASS CERTIFICATION, REVIEW OF R&R ON CLASS AND ON DAUBERT MOTION |
| 4275462 | 6/20/2013 | NEWMAN, ROBERT | PARALEGAL (3) | 1.20 | 275 | 330.00 | REVIEW RELATIVITY AND FILES TO DETERMINE WHICH SANOGAWAYA-RELATED PANASONIC DEPOSITION EXHIBITS HAVE YET TO BE PULLED FOR SANOGAWAYA DEPOSITION PREPARATIONS, PER D. LAMBRINOS, PROCESS AND REVIEW REPORT AND RECOMMENDATION GRANTING INDIRECT-PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, AND SEARCH SAME FOR REFERENCES TO PANASONIC PER D. LAMBRINOS |
| 4278450 | 6/21/2013 | CORBITT, CRAIG C. | SR. PARTNER | 1.50 | 875 | 1,312.50 | REVIEW SPECIAL MASTER OPINIONS RE CLASS CERT MOTION |
| 4284797 | 6/21/2013 | MICHELETTI, CHRIS T. | SR. PARTNER | 0.50 | 800 | 400.00 | REVIEW AND ANALYSIS OF R&R ON CLASS AND ON DAUBERT MOTION |

# EXHIBIT 6

## FILED UNDER SEAL

EXHIBIT 7

THE HONORABLE CHARLES B. RENFREW (Ret.)
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 397-3933
Facsimile: (415) 397-7188

SPECIAL MASTER

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| In re DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | Master File No. M-02-1486-PJH |
| | MDL No. 1486 |
| | Case No. C 06-4333 PJH |
| This document relates to: | Case No. C 06-6436 PJH |
| **ALL INDIRECT PURCHASER ACTIONS** | **REPORT AND RECOMMENDATIONS OF SPECIAL MASTER** |
| and | PART III: ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS FOR PLAINTIFFS |
| *State of California et. al. v. Infineon Technologies AG, et al.* | Judge:  Honorable Phyllis J. Hamilton |
| and | |
| *State of New York v. Micron Technology, Inc., et al.* | |

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

## <u>**TABLE OF CONTENTS**</u>

I.     INTRODUCTION ................................................................................ 1

II.    THE RECORD SUPPORTING THE SPECIAL
       MASTER'S FINDINGS ....................................................................... 2

III.   SUMMARY OF THE SPECIAL MASTER'S FINDINGS
       AND CONCLUSIONS ........................................................................ 5

IV.   FINDINGS OF FACT AND CONCLUSIONS OF LAW
       REGARDING THE APPROPRIATE AMOUNT OF ATTORNEYS'
       FEES TO BE AWARDED TO COUNSEL ........................................ 13

       A.    The Settlement Fund Achieved for the Proposed Settlement
            Classes Constitutes A Fair, Reasonable and Adequate
            Resolution of the Litigation That Entitles
            Counsel to a Reasonable Attorneys' Fee ......................................... 13

       B.    The Ninth Circuit's Standards and Procedures for Determining
            Attorneys' Fee Awards in Common Fund Cases ............................. 15

       C.    Computation of the 25% Benchmark Fee ........................................ 19

       D.    The Lodestar Cross Check Supports an Award of
            At Least the Benchmark Fee ............................................................ 21

       E.    The Results Achieved by Counsel in Light of the Circumstances,
            Risk and Complexity of the Litigation and the Skill and Quality of Their
            Work Supports An Award of At Least the 25% Benchmark Fee ................. 31

            1.    The Results Achieved by Counsel .................................... 31

            2.    Counsel's Efforts in the Litigation .................................... 33

             3.    The Substantial Risks Facing Counsel in this Complex Litigation ... 42

                 a.  The *Assoc, Gen. Contractors* Issue ................................. 42

                 b.  Risk of Failure to Certify Litigation Classes ............... 46

                 c.  Other Aspects of Risk and Complexity in the Litigation ............. 48

                 d.  The Quality of Counsel's Work Reflects
                    Their Skill and Experience ...................................... 51

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive
Awards for Plaintiffs

V.     FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING THE
       REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES ...................... 52

VI.    FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING THE
       PAYMENT OF INCENTIVE AWARDS TO THE CLASS
       REPRESENTATIVES ............................................................................................ 56

VII.   CONCLUSION ....................................................................................................... 58

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive
Awards for Plaintiffs

## TABLE OF AUTHORITIES

**Cases**

*Alpine Pharmacy, Inc. v. Charles Pfizer & Co., Inc.*,
   481 F.2d 1045 (2d Cir.)...................................................................... 14

*Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters*,
   459 U.S.519 (1983)......................................................................*passim*

*Bebchick v. Washington Metro. Area Transit Comm'n*,
   805 F.2d 396 (D.D.C. 1986)............................................................ 45

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)................................................................. 13, 20

*Brailsford v. Jackson Hewitt, Inc. et al.*, C06-00700 CW,
   2007 U.S. Dist. LEXIS 35509 (May 3, 2007 N.D. Cal.) .......................... 19

*California v. Infineon*,
   2008 WL 4155665 (N.D. Cal. Sept. 5, 2008)...................................... 48

*California v. Infineon Technologies AG*,
   531 F. Supp. 2d 1124 (N.D. Cal. 2007) ........................................... 44

*Central R.R. & Banking Co. v. Pettus*,
   113 U.S. 116 (1885)..................................................................... 13

*Chapman v. Pac. Tel. & Tel. Co.*,
   456 F. Supp. 77 (C.D. Cal. 1978) ................................................... 54

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................................. 25

*Computer Statistics, Inc. v. Blair*,
   418 F.Supp. 1339 (C.D. Tx. 1976) .................................................. 54

*Copperweld Corp. v. Independence Tube Corp.*,
   467 U.S. 752 (1984).................................................................... 14

*Craft v. County of San Bernardino*,
   624 F.Supp 1113 (C.D. Cal 2008) ................................................... 51

*Craigslist, Inc. v. Mesiab, et al.*,
   2010 WL 5300883, at * 7 (N.D. Cal. Nov. 15, 2010) ........................... 30

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive
Awards for Plaintiffs

*Craigslist, Inc. v. Naturemarket, Inc.*,
    694 F. Supp.2d 1039 (N.D. Cal. 2010) ............................................................. 30

*Fischel v. Equitable Life Assur. Soc'y*,
    307 F.3d 997 (9th Cir. 2002) ............................................................... 23, 25

*Florida v. Dunne*,
    915 F.2d 542 (9th Cir. 1990) .................................................................... 15

*Gong-Chun v. Aetna Inc.*,
    2012 WL 2872788 (E.D. Cal. July 12, 2012) ......................................... 25

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ...................................................................... 52

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ............................................................................... 45

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ...................................................... 19

*In re "Agent Orange" Prod. Liabl. Litig.*,
    818 F.2d 115 (2d Cir. 1987) ................................................................... 25

*In re Apple iPhone 4 Prods. Liability Litig.*,
    2012 WL 3283432 (N.D. Cal. Aug. 10, 2012) ...................................... 56

*In re Automotive Refinishing Paint Antitrust Litig.*,
    2008 U.S. Dist. LEXIS 569 (E.D. Pa. Jan. 3, 2008) ............................. 19

*In re Bluetooth Headset Prods. Liability Litig.*,
    654 F.3d 935 (9th Cir. 2011) ........................................................... 17, 32

*In re Brooktree Sec. Litig.*,
    915 F. Supp. 193 (S.D. Cal. 1996) ........................................................ 52

*In re Cement & Concrete Antitrust Litig.*,
    1981 WL 2039 (D. Ariz. Feb. 5, 1981) ................................................. 49

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003) ......................................................... 13, 14

*In re Crazy Eddie Sec. Litig.*,
    824 F. Supp. 320 (E.D.N.Y. 1993) ....................................................... 24

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    M-02-1486, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) (Hamilton, J.) .... 16, 26, 57

*In re Heritage Bond Litig.*,
    2005 WL 1594389 (C.D. Cal. June 10, 2005) ............................................... 19, 33, 51

*In re Linerboard Antitrust Litig.*,
    296 F.Supp.2d 568 (E.D. Pa. 2003) ........................................................... 49

*In re Media Vision Tech. Sec. Litig.*,
    913 F. Supp. 1362 (N.D. Cal. 1995) ........................................................... 52

*In re Medical X-Ray Film Antitrust Litig.*,
    1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ............................................... 24

*In re Netflix Privacy Litigation*
    2013 U.S. Dist LEXI 37286 (N.D. Cal March 18, 2013)........................... 17

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007)..................................................... 52

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...................................................................... 19, 42

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ......................................... 24

*In re Quantum Health Res., Inc.*,
    962 F. Supp. 1254 (C.D. Cal. 1997)......................................................... 52

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) ................................................................. 19

*In re Shopping Carts Antitrust Litig.*,
    1983 WL 1950 (S.D.N.Y. Nov. 18, 1983) ................................................. 49

*In re Sodium Gluconate Antitrust Litig.*,
    No. C-97-4142 (N.D. Cal. 1999) (Wilken, J.) ......................................... 16

*In re Sorbates Direct Purchaser Antitrust Litig.*,
    No. 98-4886 (N.D. Cal. Nov. 20, 2000) (Legge, J.)................................. 16

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    MDL No. 1819 (N.D. Cal. Oct. 14, 2011) ............................................... 19, 24

*In re Superior Beverage/Class Container Consolidated Pretrial,*
    133 F.R.D. 119 (N.D. Ill. 1990) ......................................................... 42

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    2013 U.S. Dist. LEXIS 51271 (N.D. Cal. Mar. 29, 2013) ........... 14, 19, 24, 26, 33, 56

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    2011 WL 7575003 (Dec. 27, 2011) .................................................... 57

*In re Toys "R" Us Antitrust Litig.,*
    191 F.R.D. 347 (E.D.N.Y. 2000) ....................................................... 13

*In re Vitamins Antitrust Litig.,*
    2001 U.S. Dist. LEXIS 25067 (D.D.C. July 13, 2001) ..................... 19

*In re Washington Public Power Supply System Sec. Litig.,*
    19 F.3d 1291 (9th Cir. 1994) ................................................... 13, 17, 25

*Internal Imp. Fund Trustees v. Greenough,*
    105 U.S. 527 (1881) ........................................................................... 13

*Laffey v. Northwest Airlines, Inc.,*
    572 F. Supp. 354 (D.D.C. 1983) ....................................................... 30

*Laffey v. Northwest Airlines, Inc.,*
    746 F.2d 4 (D.C. Cir.1984) ................................................................ 30

*Meijer v. Abbott Laboratories,*
    C-07-05985 (N.D. Cal. Aug. 11, 2011) (Wilken, J.).......................... 16

*Mills v. Elec. Auto-Lite Co.,*
    396 U.S. 375 (1970) ........................................................................... 13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
    473 U.S. 614 (1985) ........................................................................... 15

*Paul, Johnson, Alston & Hunt v. Graulty,*
    886 F.2d 268 (9th Cir.1989) ......................................................... 16, 17

*Perma Life Mufflers, Inc. v. International Parts Corp.,*
    392 U.S. 134 (1968).......................................................................... 14

*Pillsbury Co. v. Conboy,*
    459 U.S. 248 (1983)........................................................................... 14

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive
Awards for Plaintiffs

*Radcliffe v. Experian Info. Solutions,*
    715 F.3d 1157 (9th Cir. 2013) .................................................................. 57

*Reiter v. Sonotone Corp.,*
    442 U.S. 330 (1979) ................................................................................ 14

*Rodriguez v. Disner,*
    688 F.3d 645 (9th Cir. 2012) .................................................................. 15

*Save Our Cumberland Mountains, Inc. v. Hodel,*
    857 F.2d 1516 (D.C. Cir. 1988) .............................................................. 30

*SEC v. Kirkland,*
    WL 3981434 (M.D. Fla. 2008) ............................................................... 54

*Six (6) Mexican Workers v. Arizona Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990) ........................................................... 17, 20

*Spicer v. Chicago Bd. Options Exch., Inc.,*
    844 F. Supp 1226 (N.D. Ill. 1993) .......................................................... 52

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ............................................................ 15, 21

*State of Hawaii v. Standard Oil Co.,*
    405 U.S. 251 (1972) ................................................................................ 14

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.,*
    2005 WL 1213926 (E.D. Pa. May 19, 2005) .......................................... 49

*Sullivan v. DB Investments, Inc.,*
    667 F.3d 273 (3d Cir. N.J. 2011) ........................................................... 32

*Sun Microsystems v. Hynix Semiconductor, Inc., et al.,*
    No. C06-1665 PJH (N.D. Cal. May 7, 2009) .......................................... 36

*Theme Productions, Inc. v. North American Marketing,*
    731 F.Supp.2d 937 (N.d. Cal 2010) ....................................................... 23

*United States v. Samsung Electronics Co., Ltd., et al.,*
    No. CR05-0643 PJH (N.D. Cal. November 30, 2005) ............................ 36

*Van Vranken v. ARCO,*
    901 F. Supp. 294 (N.D. Cal. 1995) ........................................................ 16

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive
Awards for Plaintiffs

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977) ................................................................ 52

*Vizcaino v. Microsoft*,
    142 F. Supp. 2d 1299 (W.D. Wash. 2001) ............................................ 51

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................... *passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (4th Cir. 2005) .................................................................. 49

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2001) ................................................................ 31

*Zografos v. Qwest Communs. Co., LLC*,
    2013 U.S. Dist LEXIS 995573 (D. Or. July 11, 2013) ......................... 20

**<u>Statutes</u>**

15 U.S.C. §26 ......................................................................................... 14, 46

28 U.S.C. §1332 (d)(2) ................................................................................ 34

28 U.S.C. § 1292(b) ..................................................................................... 43

Federal Rule of Civil Procedure 23(b)(2) .................................................. 46

Federal Rule of Civil Procedure 23(b)(3) .................................................. 46

California Business and Professions Code
    § 16720 ................................................................................................. 46
    § 17200 ................................................................................................. 46

Florida Statutes

    § 501.2105 ............................................................................................. 14
    § 501.2075 ............................................................................................. 14
    § 542.23 ................................................................................................. 14

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive
Awards for Plaintiffs

# I.    INTRODUCTION

1.    This is the third and final part of the Report and Recommendations that arises in the context of the proposed settlement of various class, *parens patriae*, and governmental purchaser actions brought on behalf of indirect purchasers of DRAM in the United States between January 1, 1998 and December 31, 2002.[1]   The proposed global settlements ("Settlements") consist of cash payments totaling $310,720,000 ("Settlement Fund")[2] plus injunctive relief.  Upon finality of the Settlements, the Settlement Fund, net of expenses including attorneys' fees, will be distributed to members of the proposed Indirect Purchaser Settlement Class, and two proposed Governmental Purchaser Settlement Classes, as well as Government Purchasers being represented in a non-class capacity by the Attorneys General.  Certain issues relevant to the District Court's approval of the Settlements have been referred to the undersigned as Special Master.[3]  This Report and Recommendations, Part III, contains the Special Master's findings of fact, conclusions of law and recommendations concerning the award of fair and reasonable compensation to the counsel whose efforts created the Settlement Fund and other benefits from these Settlements.  It also contains findings, conclusions and recommendations on the appropriateness of making incentive awards to the private plaintiffs who brought the settled actions.

2.    The Special Master recognizes that fixing the award of attorneys' fees, the reimbursement of attorneys' costs and expenses and the decision to make incentive awards

---

[1]  The settling parties and the claims asserted in the litigation are discussed in the Report and Recommendations of Special Master Part I re: Settlement Class Certification, Settlement Fund Allocation and Distribution, filed January 8, 2013 (Dkt. No. 2132) ("Report, Part I") at ¶¶ 1-2, 42, 56-98.

[2] This number represents all cash payments the Defendants are obligated to make pursuant to the terms of their various settlement agreements and includes funds earmarked for attorneys' fees, and notice and claims administration, and as consideration for delay in payment.

[3]   A history of the various orders defining the subject matter of the referral appears in Report, Part I at ¶¶ 3-8.

---

1  to plaintiffs are matters particularly within the sole discretion of this Court. Nothing in this

2  Report, including the Special Master's ultimate finding that under all of the circumstances

3  of the litigation, the requested Ninth Circuit benchmark fee of 25% of the Settlement Fund

4  would be fair and reasonable compensation for Counsel is intended to invade that discretion

5  in any way. The Special Master's role is not to usurp the discretion of this Court. Rather,

6  this Report is intended to provide the Court with an evaluation of the relevant authority and

7  factual findings based on a review of the submissions of Counsel and the Special Master's

8  personal observations of the complexity of the issues, the risks attendant to this case

9  proceeding to trial, and the experience, skill and integrity of the attorneys, which I have

10  personally observed, who have provided leadership in prosecuting the Settled Actions. It is

11  hoped that these findings and conclusions will be helpful in the exercise of this Court's

12  discretion.

## II.  THE RECORD SUPPORTING THE SPECIAL MASTER'S FINDINGS

15         3.       On August 7, 2013, the Indirect-Purchaser Plaintiffs' Counsel ("IPP

16  Counsel") and the Attorneys General ("AGs") (together referred to as "Counsel") submitted

17  to the Special Master a joint petition[4], requesting that this Court award Counsel the Ninth

18  Circuit benchmark fee of 25% of the Settlement Fund, or $77,680,000, and to hold that the

19  fee award should accrue its proportionate share of the interest earned by the Settlement

20  Fund.[5]

---

[4]  "Indirect Purchaser Plaintiffs' and Attorneys General's Joint Application for Attorneys' Fees; Indirect Purchaser Plaintiffs' Application for Costs and Incentive Awards; and Attorneys General's Application for Costs," dated August 6, 2013 (hereinafter, "Application"); a copy of the petition is attached as Exhibit 65 in the Appendix hereto. For clarity, all exhibits to the entire Report and Recommendations are being numbered sequentially beginning with those in the Appendix to Part I.

[5]  During the course of the proceedings before the Special Master leading up to this Part III of the Report and Recommendations, the leadership of the Attorneys General and IPP Counsel were requested to negotiate the broad procedures for petitioning for awards of attorneys' fees and the reimbursement of expenses. These negotiations resulted in an agreement under which they determined that they would submit a joint petition requesting an aggregate fee award of 25% of the common fund, which would then be divided 80.8% to IPP Counsel and 19.2% to the AGs. They

4.    Also on August 7, 2013, IPP Counsel submitted to the Special Master a separate application for the reimbursement of expenses incurred by IPP Counsel in the amount of $6,338,232, which included, *inter alia*, expert fees and legal fees of the economists and counsel who participated in the proceedings before the Special Master concerning the plan of allocation and distribution of the Settlement Fund to the proposed Indirect Purchaser Settlement Class.  It also included a request that incentive awards of $5,000 be made to each of the 10 class representatives in the lead *Petro* complaint, who provided key support to the litigation, and that each of the other approximately 140 plaintiffs in the settled cases be given incentive awards of $500.[6]

5.    At the same time, the Attorneys General submitted a separate application for reimbursement of their expenses incurred in prosecuting these cases, in the amount of $5,483,468.63, which included expert and economist fees and fees for contractual services from paralegals and attorneys who are not in the offices of the Attorneys General and are not part of the Attorneys General's lodestar.[7]

---

also agreed that IPP Counsel and the AGs would submit individual requests for the reimbursement of expenses, that compensation for counsel for Celestica and Resellers' Allocation Counsel would be requested as expense item, that the totality of expenses requested would not exceed an agreed upon cap and that IPP Counsel would submit a request for incentive awards to the named plaintiffs.  A copy of this agreement is attached as Exhibit 66 to the Appendix hereto.

Other than this negotiation, the Special Master has not requested or attempted to suggest any division of the aggregate fee award among Counsel.  First, the Special Master believes that, especially in light of the fact that the aggregate fee request is less than Counsel's aggregate lodestar, no allocation to individual firms or Attorneys General can be fairly made without knowing the totality of the amount of the fee available for division.  Second, while reported lodestars certainly play a role in a fee division, intimate knowledge of the individual firms' relative contributions to Counsel's efforts as a whole – the kind of knowledge that is uniquely in the province of the attorneys who assumed leadership roles – is indispensable to a fair and reasonable division of a fee award.  The Special Master fully endorses the concept embodied in this Court's decision to assign to Co-Lead Counsel for the DRAM direct purchaser plaintiffs the responsibility to allocate their aggregate award among the direct purchaser plaintiffs' counsel and recommends that this procedure be adopted for IPP Counsel and the Attorneys General.  See, "Order Awarding Plaintiffs' Counsel Attorneys' Fees and Reimbursement of Expenses," filed August 16, 2007, Dkt. No. 1682.

[6]  This application is part of Exhibit 65 in the Appendix hereto.

[7]  This application is also part of Exhibit 65 in the Appendix hereto.

---

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

6.      The Special Master has reviewed the above-described requests for attorneys' fees, expenses and incentive awards.  The Special Master has also received and reviewed the following supporting documentation submitted concurrently with the fee and expense requests:  (1) the Declaration of Terry Gross in Support of the Joint Application for Award of Attorneys' Fees and Indirect Purchase Plaintiffs' Application for Reimbursement of Expenses and Incentive Awards ("Gross Decl.")[8]; (2) each of the declarations contained in the Compendium of IPP Counsel Declarations in Support of Motion for Attorneys' Fees and Incentive awards[9]; (3) the Declaration of Chair of Multistate Group, and Liaison Counsel, for Attorneys General in Support of the Joint Motion for Attorneys' Fees ("Varanini Decl.")[10] and (4) each of the declarations contained in the Compendium of the Attorneys General Declarations in Support of the Joint Motion for Attorneys' Fees and the Attorneys General's Motion for Costs.[11]

7.      The Special Master has further considered and reviewed the history of the indirect purchaser litigation and the novel and complex issues it presented both before the District Court and the Ninth Circuit Court of Appeals, as well as in the proceedings before the Special Master, descriptions of which are set forth in the Report Parts I and II.  The Special Master has also considered his personal observations of the skill and competence with which both private counsel for the Indirect Purchaser Plaintiffs and the Attorneys General who all appeared before him handled the numerous difficult issues in this litigation.

///

///

---

[8]  A copy of the Gross Decl. is attached as Exhibit 67 in the Appendix hereto.

[9]  A copy of the IPP Counsel Compendium is attached as Exhibit 68 in the Appendix hereto.

[10]  A copy of the Varanini Decl. is attached as Exhibit 69 in the Appendix hereto.

[11]  A copy of the AGs Compendium is attached as Exhibit 70 in the Appendix hereto.

### III.   SUMMARY OF THE SPECIAL MASTER'S FINDINGS AND CONCLUSIONS

8.     The Settlement Fund and the injunctive relief provided by the Settlements constitutes fair and reasonable compensation for the claims raised by the Settled Cases and to be released by the proposed Indirect Purchaser Settlement Class and the Governmental Purchaser Settlement Classes, and generates a "common fund" from which Counsel, whose efforts created these benefits, is entitled to be awarded fair and reasonable compensation for their services.[12]

9.     Ninth Circuit case authority provides that the goal of every fee award in a common fund class action is to fairly compensate counsel for their efforts while protecting the interests of the class.  In order to arrive at a fee award that is fair and reasonable under all of the circumstances of the litigation, the district court may employ either a percentage of the fund approach or a lodestar approach.   In the last 25 years, the vast majority of district courts in the Ninth Circuit have utilized the percentage of the fund approach in cases where the principal settlement consideration is monetary, including this Court's fee award to counsel for the direct purchaser plaintiffs in this litigation.  The Special Master finds that the percentage of the fund is the proper methodology to employ in arriving at a fair and reasonable fee award for counsel for the indirect purchaser plaintiffs.

10.     Accordingly, the starting point for determining a fair and reasonable attorneys' fee is a computation of 25% of the value of the settlements achieved, an amount of fees that, although subject to adjustment either upward or downward under the individual circumstances of the case, is presumptively reasonable as a general matter.  Here, the settlement value consists of $310,720,000 in cash payments, plus the benefit of various measures directed to the restoration of competition and the deterrence of future violations of

---

[12]  This finding also includes the claims of those Government Purchasers being represented by and released in a non-class capacity by the Attorneys General.

the antitrust laws in the sale of DRAM.  Counsel have requested a fee of $77,680,000, which is 25% of $310,720,000, which is the total of all monetary deposits made by Defendants into the Settlement Fund, including monies earmarked for the payment of attorneys' fees, the payment of notice and claims administration costs and additional consideration paid for a delay in payment.  The Special Master finds that this is the appropriate number to use for the cash benefit of the settlement to the proposed Settlement Classes and non-class Governmental Purchasers.  Accordingly, the Special Master finds that the Ninth Circuit benchmark fee for Counsel is $77,680,000.

11.     In computing this benchmark fee, no dollar value is being assigned to the non-monetary relief obtained in this case.  However, as discussed below, the benefit of the non-monetary relief is a consideration in deciding whether the benchmark fee is fair and reasonable.  As the Special Master previously found in the Report, Part I, the injunctive provisions of the settlement agreements conveyed a substantial and tangible benefit on the proposed Settlement Classes.  Accordingly, the availability of this non-monetary relief supports the award of the requested benchmark fee to Counsel.

12.     The determination of whether the benchmark 25% fee is fair and reasonable in any particular case requires an inquiry into the particular circumstances of the case, including the hours invested by counsel in the litigation.  This inquiry is commonly referred to as "the lodestar cross-check."  An attorneys' or law firm's lodestar is computed by multiplying the number of hours invested in the litigation by the relevant hourly rate(s).  The cross-check is performed by comparing the aggregate lodestar for all counsel against the 25% benchmark.  The difference between the lodestar and the benchmark fee amount is commonly referred to as a "multiplier."  Ninth Circuit authority permits the awarding of percentage fees that represent a range of "multipliers" on the lodestar amount.  Most commonly, such multipliers are at least 2.0.

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

13.     Performing the lodestar "cross-check" on a percentage of the fund fee is not the same as arriving at a fee award utilizing the lodestar methodology, and the cross-check does not require the same degree of precision in the computation of the lodestar calculation that would ordinarily accompany a lodestar fee award.  Rather, to perform the cross-check, a court need only determine that the lodestar hours are generally in the range that would be reasonable in litigation of similar duration and complexity, and that the hourly rates are consistent with rates charged by counsel of similar seniority, skill and experience in the relevant market.

14.     For this reason, the Special Master did not perform an item by item or line by line review of Counsel's underlying time records.  Rather, the Special Master reviewed the declarations of the individual firms regarding the services they performed, the hours they spent on the litigation and the hourly rates utilized in their lodestars.  In order to judge the reasonableness of Counsel's aggregate lodestar, the Special Master reviewed the manner in which IPP Counsel and the AGs recorded their time and calculated the hours in the aggregate lodestar.  The Special Master then reviewed the work performed by Counsel, as described in the various declarations filed in support of the fee request as well as in the declarations submitted previously which formed the basis of the litigation history set out in the Report, Part I.  The Special Master's review of Counsel's efforts included the Special Master's personal observations of the work done by the counsel who have appeared before him in the multi-year course of this referral.  The Special Master focused on the work necessary to conduct discovery and prepare the litigation for trial, and the work done with regard to the major legal issues such as antitrust standing and class certification.

15.     The Special Master further reviewed the hourly rates, both historical and current, reported by IPP Counsel as their normal and customary hourly rates, and considered the AGs' use of rates from the Laffey Index, which includes an adjustment for the San

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and
Incentive Awards for Plaintiffs

Francisco market.   The Special Master focused on the normal and customary hourly rates for IPP Co-Lead Counsel and the other firms forming the IPP leadership group since the personal efforts of these firms account for more than 2/3 of the hours in private counsel's aggregate lodestar.  Not only have these rates been found to be reasonable by numerous other district courts, but the Special Master was personally acquainted with the expertise and experience of many of these counsel prior to this litigation and had the opportunity to observe their skill in handling complex, difficult issues during the referral proceedings. Similarly, use of the Laffey index as a rate structure for the AGs has been approved by other district courts.   Since the authorities agree that the hourly rates used in a lodestar calculation should be reasonable as judged by the prevailing market rates in the geographic location of the forum court, the Special Master finds that the modest upward adjustment made by the AGs is reasonable.  Finally, the Special Master relied on his observations of the skill and competence of the AGs' leadership group during the proceedings before him in finding that the rates used by the AGs to generate their portion of Counsel's aggregate lodestar are reasonable.

16.     Accordingly, the Special Master finds that the number of reported hours that make up Counsel's aggregate lodestar is reasonable as a general matter in light of the history, difficulty and complexity of the litigation to serve as the hours-expended component of an appropriate lodestar cross-check on the 25% benchmark fee requested by Counsel.   The Special Master also finds that hourly rates that make up both Counsel's aggregate historical and current rate lodestars are reasonable in light of the expertise and experience of Counsel to serve as the hourly rate component of an appropriate lodestar cross-check on the 25% benchmark fee requested by Counsel.

17.     Applying both the historical rate and current rate lodestars as a cross-check on the benchmark fee results in the benchmark fee representing less than 100% of the

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

lodestar amount.  As noted above, in most cases, a percentage of the fund fee provides counsel with a payment that is greater than the lodestar to compensate for the following:  the risk of non-payment; the fact that counsel's payment is delayed, sometimes by many years, after the services were rendered; the fact that counsel in a class action generally carries the costs of prosecution for the duration of the litigation; and the recognition of the quality of counsel's efforts in securing a recovery where the litigation is risky.  When the lodestar used in the cross-check is greater than the 25% benchmark fee, i.e., there is a "negative multiplier," that is usually a sign that an upward adjustment of the percentage should be made.  Here, Counsel have waived any upward adjustment to the benchmark.  Accordingly, the Special Master finds that the lodestar cross-check supports the reasonableness of awarding the benchmark fee in this litigation.

18.     In addition to the lodestar cross-check, Ninth Circuit authority provides that other factors should be considered in assessing the reasonableness of the 25% benchmark fee (and determining whether it should be adjusted either upward or downward) including the result achieved for the class, counsel's skill and experience in antitrust cases, the complexity of the issues presented by the litigation, and the risk of non-payment undertaken and overcome by counsel.  The Special Master finds that each of these considerations supports the reasonableness of Counsel's request for the benchmark fee, and would have supported the reasonableness of making an upward adjustment and awarding a fee greater than 25% of the Settlement Fund had such a fee been requested.  Counsel have requested that the total compensation to be awarded by this Court include the interest that the 25% fee amount has earned during the time the Settlement Fund has been invested.  The Special Master finds that this is consistent with controlling authority and is more than reasonable under the circumstances of this litigation, particularly the fact that Counsel's requested fee is less than their total reported lodestar.

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and
Incentive Awards for Plaintiffs

19.     The Special Master is familiar with the lead counsel for both the Indirect Purchaser Plaintiffs and the Attorneys General as being experienced antitrust attorneys.  In addition, the skill and experience of Counsel is demonstrated by the fact that they achieved one of the largest indirect purchaser case settlement funds despite significant obstacles to recovery.  Antitrust litigation virtually always presents complex violation issues, but that complexity is compounded exponentially in cases, like this litigation, where the claims of indirect purchasers arise under the laws of multiple jurisdictions, with variations in the standards of proof required to prevail.  In addition, the complexity of the issues to be tried put Counsel at great risk of not succeeding in obtaining the certification of litigation classes or subclasses.  Finally, both the risky nature of the undertaking and Counsel's skill and expertise are clearly demonstrated by the fact that this recovery of over $300 million for the proposed settlement classes was achieved in the face of an earlier ruling that eliminated the vast majority of the private plaintiffs' claims from the litigation pending an appeal.

20.     The Special Master finds that consideration of the circumstances of the litigation, particularly the relevant factors set out by the Ninth Circuit, fully supports the requested benchmark award of 25% of the Settlement Fund, or $77,680,000, in attorneys' fees to Counsel in this litigation.

21.     The Special Master also evaluated IPP Counsel's request for reimbursement of litigation expenses in the amount of $6,338,232 and the AGs' request for reimbursement of litigation expenses in the amount of $5,483,468.63.  The Special Master reviewed the sixty-three (63) declarations of IPP Counsel and the thirty-two (32) declarations from the AGs as to the reasonableness and necessity of the expenses incurred by each of the private firms and state offices.  The Special Master explored in some detail, although not on a line-by-line basis, the categories into which the claimed expenses fall and finds them to be within the range of magnitude that are usual and expected in litigation of this scope,

complexity and duration, and of the type that are generally incurred for the benefit of plaintiffs in antitrust litigation.

22.     For example, the major expense item for each of the private firms was the total of their contributions into IPP Counsel's common expense fund.  This fund was administered by Liaison Counsel Francis Scarpulla and was used to pay plaintiffs' economic experts and third-party vendors, principally those associated with discovery such as the firm providing document processing and electronic data storage for the millions of pages of reviewed documents, as well as court reporter and deposition transcript costs for more than 100 depositions.

23.     Nearly 20% of IPP Counsel's requested expenses are attributable to the billings of the counsel and experts who advanced the interests of the reseller members of the proposed Indirect Purchaser Settlement Class and assisted Counsel and the Special Master in arriving at a fair and reasonable plan for distributing the Settlement Fund.  The Special Master personally observed and is aware of the contribution of these counsel and experts and finds that their bills are a reasonable and necessary expense incurred for the benefit of the proposed Settlement Class.

24.     The Special Master finds that, as with IPP Counsel, a significant portion of the expenses incurred by the AGs were expert witness fees and expenses connected with document processing and deposition discovery, including repeated contributions made by each of the AGs into a fund to cover such fees and expenses.  Approximately 39% of the AGs' aggregate expenses are attributable to the hiring through a contract with the California Attorney General of a specialized and experienced group of paralegals and attorneys, not included in the AGs' lodestar, who assisted the AGs in their document handling and review and trial preparation, e.g., by setting up databases and review protocols for millions of pages of documents as well as engaging in the review of those documents, and who also assisted

the AGs by obtaining information from California and New Mexican governmental entities and personnel regarding DRAM purchases and purchasing patterns by those entities that were used in the motion of class certification, in the AG's formulation of their allocation and distribution plan for Class and Non-Class States, and in the crafting of California's plan of distribution of its share of the Settlement Fund. The Special Master has reviewed the supporting documentation in the form of the bills submitted by this vendor and the authorities holding that similar costs of contract paralegal and attorney services are reimbursable and finds that the billings submitted for reimbursement by the AGs fall with in the range of magnitude that are usual and expected in litigation of this scope, complexity and duration, and that the services reflected in those billings are of the nature of services generally incurred for the benefit of plaintiffs in antitrust cases.

25.     Accordingly, on this basis, the Special Master finds that the expenses incurred by IPP Counsel and the AGs were reasonable and necessary in the circumstances of this litigation.

26.     Finally, IPP Counsel have requested incentive awards of $5,000 to each class representative on the *Petro* complaint and $500 for each of the approximately 140 named plaintiffs in the other state and federal IPP cases that were coordinated with this litigation. The Special Master has reviewed the portion of the Gross Declaration setting out the contribution to the litigation made by the *Petro* class representatives and finds that they have conferred a benefit on the proposed Indirect Purchaser Settlement Class for which the law of this Circuit provides that a reasonable incentive award is appropriate. The Special Master further finds that the amount of $5,000 is within the range of incentive awards in other cases of similar size and complexity. In addition to compensating plaintiffs for time and effort expended in the prosecution of the case that created the common fund, another recognized purpose of incentive awards is to provide an inducement for plaintiffs to come forward and

1  file meritorious class actions. This purpose is particularly important in the area of antitrust

2  litigation where private enforcement has long been recognized to play an important role in

3  promoting a competitive market place for goods and services. The Special Master finds that

4  the plaintiffs who were not selected as *Petro* class representatives nonetheless fulfilled this

5  second purpose and that the modest $500 incentive awards requested for these plaintiffs are

6  fair and reasonable.

7

8  **IV.**  **FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING THE**
   **APPROPRIATE AMOUNT OF ATTORNEYS' FEES TO BE AWARDED TO**

9  **COUNSEL**

10  **A.**  **The Settlement Fund Achieved for the Proposed Settlement Classes**
    **Constitutes A Fair, Reasonable and Adequate Resolution of the Litigation That**

11  **Entitles Counsel to a Reasonable Attorneys' Fee**

12

13  27.  The United States Supreme Court "has recognized consistently that a litigant

14  or a lawyer who recovers a common fund for the benefit of persons other than himself or his

15  client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van*

16  *Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393

17  (1970); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 123 (1885). The purpose of

18  this doctrine is that "those who benefit from the creation of the fund should share the wealth

19  with the lawyers whose skill and effort helped create it." *In re Washington Public Power*

20  *Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). This "common fund

21  doctrine" is firmly rooted in American case law. *See, e.g., Internal Imp. Fund Trustees v.*

22  *Greenough,* 105 U.S. 527, 532-33 (1881); *Central R.R.*, 113 U.S. at 123.

23  28.  The common fund doctrine applies both to private counsel and state

24  Attorneys General. *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216

25  F.R.D. 197, 214 (D. Me. 2003); *In re Toys "R" Us Antitrust Litig.,* 191 F.R.D. 347, 357

26  (E.D.N.Y. 2000) (approving $5.4 million in fees plus costs to the States and class plaintiffs'

27

28

counsel pursuant to final approval of settlement agreement); *In re Compact Disc Antitrust Litig.*, 216 F.R.D. at 214-15; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 51271, at *103 (N.D. Cal. Mar. 29, 2013) (awarding $11,054,191.01 in common fund fees and $1,206,479.48 in expenses to States).  Here, many of the States asserted *parens patriae* actions on behalf of their citizens which were settled as part of the global settlement of the Indirect Purchaser Plaintiff claims.  In addition, the Clayton Act specifically provides that the AGs, as well as private counsel, can recover their reasonable attorney fees and disbursements if they succeed on their injunctive claims, *see* 15 U.S.C. § 26, demonstrating that Congress has made the determination that States may recover attorney fees and disbursements, whether the case is tried to judgment or settles prior to judgment.[13]

29.     Private antitrust litigation such as the settled cases here are a necessary and desirable tool to assure the effective enforcement of the antitrust laws.  *See, e.g., Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 331 (1979); *State of Hawaii v. Standard Oil Co.*, 405 U.S. 251, 266 (1972); *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 139 (1968) (overruled on other grounds by *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984)).  Appropriate fee awards promote the filing of meritorious antitrust actions, as the United States Supreme Court has repeatedly recognized:  "In the absence of adequate attorneys' fee awards, many antitrust actions would not be commenced."  *Alpine Pharmacy, Inc. v. Charles Pfizer & Co.,*

---

[13] The AGs also brought their claims pursuant to their own state laws, which also provide for the awarding of reasonable attorneys' fees.  *See, e.g.,* Fla. Stat. § 542.23 ("In any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to the plaintiff."); Fla. Stat. § 501.2105 (the court may award costs and fees); Fla. Stat. § 501.2075 ("If civil penalties are assessed in any litigation, the enforcing authority is entitled to reasonable attorney's fees and costs.")  Finally, the settling parties here contemplated an award of fees to the AGs.  *See, e.g.,* Samsung Settlement Agreement ¶ 20 (Dkt. No. 1747-3).

*Inc.*, 481 F.2d 1045, 1050 (2d Cir.), *cert. denied*, 414 U.S. 1092 (1973); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 653-54 (1985).

30.     The settlements here have created a common fund intended for benefit of parties—the members of the proposed Indirect Purchaser Settlement Class and the class and non-class governmental entities represented by the AGs—injured by the activities alleged in the settled complaints.  As will be discussed in more detail below, the Special Master finds that the settlements, if given final approval, will confer substantial benefits on these private and governmental entity indirect purchasers of DRAM.  Accordingly, the Special Master finds that Counsel representing the injured plaintiffs—both private lawyers and the AGs—are entitled to an award of attorneys' fees and the reimbursement of their out-of-pocket expenses.

**B.     The Ninth Circuit's Standards and Procedures for Determining Attorneys' Fee Awards in Common Fund Cases**

31.     Courts in the Ninth Circuit are fortunate to have the benefit of clearly articulated common sense standards and procedures for setting attorneys' fees in common fund cases.   To begin, there is the overarching concept of fairness to both the beneficiaries of the fund and the counsel whose efforts created it.  "The guiding principle is that attorneys' fees 'be reasonable under the circumstances.' *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990)." *Rodriguez v. Disner,* 688 F.3d 645, 653 (9th Cir. Cal. 2012).  Although the District Court has a special duty to protect the interests of the class (*Staton v. Boeing Co.*, 327 F.3d 938, 970 (9th Cir 2003)), that duty is consistent with awarding an appropriate share of a common fund as compensation to counsel.   *See id.* at 974.

32.     In the years following the 1966 amendment to Rule 23, when common fund cases began to proliferate, two methods for determining fee awards developed.  One approach, based on the fact that class action common fund cases were almost universally

1  undertaken as a contingency, was to award counsel a percentage of the recovery at the usual

2  "market rate" for contingency representations.  The other approach, know as the "lodestar"

3  method, involved developing a fee award by multiplying the hours reasonably expended by

4  counsel times a reasonable hourly rate, mimicking the usual method of setting fees in hourly

5  representations, but then adjusting the lodestar calculation by a "multiplier" to account,

6  among other reasons, for the contingent nature of the representation with its attendant delay

7  in payment and its risk of no payment at all.

8      33.     When faced almost 25 years ago with making a choice between the two

9  methods, the Ninth Circuit wisely endorsed both and left the choice to the discretion of the

10 trial court (although it applied the percentage of the fund approach in that original case).

11 *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d. 268, 272 (9th Cir. 1989) ("*Graulty*").  In

12 the years since *Graulty*, this Court and the other courts in this Circuit have almost

13 universally employed the percentage of the fund approach, coupled with a lodestar cross-

14 check.  *See, e.g., In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, M-02-

15 1486, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) (Dkt. No 1648) (Hamilton, J.) (25% of

16 common fund awarded); *Meijer v. Abbott Laboratories*, C-07-05985 (N.D. Cal. Aug. 11,

17 2011) (Wilken, J.) (33⅓% of the common fund awarded); *In re Sorbates Direct Purchaser*

18 *Antitrust Litig.*, No. 98-4886 (N.D. Cal. Nov. 20, 2000) (Legge, J.) (25% of the fund

19 awarded); *Van Vranken v. ARCO*, 901 F. Supp. 294 (N.D. Cal. 1995) (25% awarded*); In re*

20 *Sodium Gluconate Antitrust Litig.*, No. C-97-4142 (N.D. Cal. 1999) (Wilken, J.) (30%

21 awarded).  This method has the advantage of preserving the judicial economies of the

22 percentage of the fund approach while ensuring that counsel do not receive a windfall fee

23 totally out of proportion to the effort they expend in producing the common fund.   In the

24 Special Master's personal experience, this is the best approach.[14]

25

26 _____
   [14]  As it developed, the lodestar approach has the tendency to mire trial courts in the minutiae of
   counsels' daily activities, and in the inevitable second guessing of virtually every decision from pre-

27

34.    *Graulty* established 25% of the common fund as the appropriate "bench

mark" percentage award in this Circuit.  In doing so, the Ninth Circuit stated that in general

fee awards ordinarily should "range from 20[%] to 30[%] of the fund created."  *Id* at 272.

The Ninth Circuit recently described the process in *Jones v. GN Netcom, Inc. (In re*

*Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 942 (9th Cir. 2011):

> Because the benefit to the class is easily quantified in common-fund
> settlements, we have allowed courts to award attorneys a percentage of
> the common fund in lieu of the often more time-consuming task of
> calculating the lodestar. Applying this calculation method, courts
> typically calculate 25% of the fund as the "benchmark" for a reasonable
> fee award, providing adequate explanation in the record of any "special
> circumstances" justifying a departure. *Six (6) Mexican Workers v. Ariz.*
> *Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990); accord *Powers*,
> 229 F.3d at 1256-57; *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d
> 268, 272 (9th Cir. 1989).

35.    Thus, the starting point for awarding a common fund fee in this Circuit is the

calculation of 25% of the common fund.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048

(9th Cir. 2002).  However, the determination of whether to award the 25% benchmark or to

upwardly or downwardly adjust it can be made only after consideration of the lodestar

cross-check, the quality of counsel's representation and the result obtained for the class in

light of the circumstances, risk and complexity of the case, financial considerations such as

the delay in payment, the risk of non-payment and the burden of financing the litigation.

Finally, the fee should be roughly in keeping with the range of fees awarded in similar

cases.  *See, e.g., Id.* at 1048-50; *see also, In re Netflix Privacy Litigation,* 2013 U.S. Dist.

LEXIS 37286, *29 (N.D. Cal. March 18, 2013) ("The Ninth Circuit has set forth a non-

---

trial strategy (was filing this motion or that document request "reasonably necessary?") to the
staffing of counsels' activities (could that brief have been competently drafted by a lawyer with less
seniority and hence a lower hourly rate?).  *See e.g., In re Washington Public Power Supply System*
*Securities Litigation*, 779 F. Supp 1063 (D.Ariz. 1990).  In response to this trend, the Third Circuit
convened a Task Force to study the question of common fund fee award.  In 1985, that Task Force
issued a report endorsing the percentage of the fund approach.  *Court Awarded Attorney Fees, Third*
*Circuit Task Force*, 108 F.R.D. 237, 250 (1985).

---

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and
Incentive Awards for Plaintiffs

exhaustive list of factors which may be relevant to the district court's determination of the percentage ultimately awarded: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.").

36.     The objective of this process is the arrival at a " reasonable percentage" of the fund after consideration of "all the circumstances of the case." *Vizcaino*, 290 F.3d at 1948.   Accordingly, the lodestar cross check does not supplant the percentage calculation as the basis of the award.  Neither does it require the sort of detailed task by task or lawyer by lawyer evaluation of the reasonableness of each of the hours recorded and the hourly rates applied that became common in lodestar based fee awards, and that motivated the Third Circuit Task Force to recommend the percentage over the lodestar approach.  Rather, as the *Vizcaino* Court noted, in applying the lodestar cross-check, "the primary basis of the fee award remains the percentage," and reference to the lodestar is simply to "provide a useful perspective on the reasonableness of a given percentage award." *Id*. at 1050.

37.     In the joint fee application submitted to the Special Master, Counsel have requested a fee of 25% of the total cash benefit secured for the members of the private and governmental purchaser classes and those governmental purchasers represented in a non-class capacity.[15]  Counsel have made this request aware that the requested fee of $77,680,000 represents less than the total of the lodestars reported by the various private firms and Attorneys General whose cases are covered by the proposed global settlements.[16] It is also noteworthy that this request is being made even though one practical effect will be

---

[15]  See the Joint Petition submitted to the Special Master on August 7, 2013, a copy of which appears in the Appendix hereto as Exhibit 65.

[16]  See, Gross Decl. at  ¶47, submitted to the Special Master on August 7, 2013, and Declaration of Emilio Varanini at ¶22, submitted to the Special Master on August 7, 2013.  Copies of the Gross Declaration and the Varanini Declaration appear in the Appendix hereto as Exhibits 67 and 68 respectively.

that the disparity between Counsel's lodestar and the benchmark fee will continue to

increase since Counsel are undertaking and will continue to undertake substantial tasks in

connection with obtaining preliminary and final approval of these settlements without any

additional compensation.   Nonetheless, the Special Master will take Counsel's requested

fee to establish the potential fee under consideration, even though the Special Master notes

that, ordinarily, when application of the lodestar cross check produces a "negative

multiplier" as in this case, it would be appropriate to consider whether under all of the

circumstances of the litigation a fee greater than the 25% benchmark should be awarded.[17]

### C.    Computation of the 25% Benchmark Fee

38.    Counsel have computed the dollar value of the 25% benchmark fee in this

case by applying that percentage to the total of all cash payments being made by defendants

into the settlement fund, including cash earmarked for notice and claims processing and

---

[17]   Numerous courts in this Circuit and elsewhere have awarded fees exceeding 25%, including fee awards of one-third of the common fund generated by the work of plaintiffs' counsel, under circumstances similar to this case. *See, e.g., In re Pacific Enters. Sec. Litig.*, 47 F.3d at 379 (fee award of one-third of common fund justified due to complexity of issues and risks involved); *Vizcaino,* 290 F.3d at 1047-52 (affirming award of 28% of $96 million common fund because of exceptional result and extreme risks of the litigation); *In re Heritage Bond Litig.*, 2005 WL 1594389, at *8 (C.D. Cal. June 10, 2005) (one-third was justified based on the result obtained, Class Counsel's effort, experience and skill, and the great risk assumed); *see, e.g., In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (benchmark is closer to 30%).  *In re Automotive Refinishing Paint Antitrust Litig.*, 2008 U.S. Dist. LEXIS 569, at *23 (E.D. Pa. Jan. 3, 2008) (one-third, where class counsel spent almost six years and more than 48,000 hours prosecuting the case); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77-82 (D. Mass. 2005) (one-third of common fund was justified due to, *inter alia*, skill and efficiency of counsel, complexity and four-year duration of the litigation, and class counsel's expenditure of tens of thousands of hours on the case); *In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 25067, at *58 (D.D.C. July 13, 2001) (determining that one-third was reasonable and granting fee award of approximately 34% of the total estimated settlement amount in antitrust price fixing litigation); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 51271 (N.D. Cal. Mar. 29, 2013) (28.5% of the common fund awarded as attorneys' fees); *In re Static Random Access Memory (SRAM) Antitrust Litig.,* MDL No. 1819 (N.D. Cal. Oct. 14, 2011) (33-1/3% of common fund awarded as attorneys' fees); *Brailsford v. Jackson Hewitt, Inc. et al*., C06-00700 CW, 2007 U.S. Dist. LEXIS 35509, at *14 (N.D. Cal. May 3, 2007) (awarding 30% of the common fund).

---

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and
Incentive Awards for Plaintiffs

attorneys' fees, as well as payments resulting from the renegotiation of certain defendants' payment schedules. The Special Master finds that this is proper, resulting in a benchmark fee in this litigation of $77,680,000. Courts have long recognized that it is appropriate to base a percentage fee on the gross monetary benefits available to pay class members' claims and expenses, including any "additional benefits conferred on the class by the Settling Defendants' separate payment of attorneys' fees and expenses, and the expenses of administration." *Zografos v. Qwest Communs. Co., LLC*, 2013 U.S. Dist. LEXIS 99573, *6-7 (D. Or. July 11, 2013) (citing, *inter alia, Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980)); *see also Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).[18]

39.     Even if the separate funds contributed by Defendant Samsung and earmarked as attorneys' fees were considered a separate fee payment, the Special Master finds that the requested total fee of $77,680,000 is fair and reasonable for all of the reasons set forth herein. The Samsung contribution to attorneys' fees is approximately 18.1% of the cash consideration in the Samsung Settlement. If this Samsung contribution of 18.1% to fees were considered a separate fee of less than the 25% benchmark, then the requested fees from

---

[18]   As described in the Report, Part I, the litigation was settled in a series of settlements negotiated over a five plus year period. Report, Part I, at ¶¶ 4-8. The first settlement negotiated was with Samsung and included a separate breakdown of an amount for attorneys' fee payments to the IPP Counsel and the AGs in the amounts of $19.5 million and $1 million, respectively, which have been held in separate escrow accounts from the balance of the Samsung payments. *Id* at ¶ 59. However, none of the subsequent settlements with the other Defendants included any separate breakdown of contributions earmarked for attorneys' fees. *Id* at ¶¶ 61-98. The Petition filed by IPP Counsel and the AGs seeks a fee award of 25% of the total $310,720,000 Settlement Fund, without regard to the location of the escrowed funds from which it would be paid. The Special Master agrees that it is appropriate to compute the Ninth Circuit benchmark fee, which is the starting point for making all fee awards in this Circuit, as 25% of the total cash settlement consideration regardless of whether certain amounts of that consideration are earmarked for certain purposes since all such purposes are for the benefit of the proposed settlement classes. Moreover, the Special Master finds that treating the $20,500,000 separately contributed by Samsung for the purpose of paying a portion of counsels' fees and expenses the same as all other funds contributed by the defendants is a fair and reasonable method of reconciling the difference between the provisions of the Samsung settlement agreement and the other five agreements that make up the global settlement of the litigation.

---

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

the other settlements necessary to arrive at a total award of $77,680,000 (the blended 25% benchmark) represent 28.9% of the cash benefits of those settlements, the Special Master finds that the same considerations that support the reasonableness of a blended fee of 25% of the total settlement proceeds equally support the reasonableness of a fee of slightly less than 29% of the settlements entered into after Samsung.

40.     The Special Master notes that Counsel's computation of the benchmark fee does not ascribe any value to the injunctive relief obtained by Counsel in this litigation, although the Special Master previously found that such equitable relief conferred a valuable benefit on the settlement classes.[19]  However, this does not mean that the value of the injunctive relief obtained should play no part in setting an appropriate fee award.  The Ninth Circuit has directed trial courts to "consider the value of the injunctive relief obtained as a 'relevant circumstance' in determining what percentage of the common fund class counsel should receive as attorneys' fees, rather than as part of the fund itself."  *Staton,* 327 F.3d at 974 (citing *Vizcaino*, 290 F.3d at 1049).

### D.     The Lodestar Cross Check Supports an Award of At Least the Benchmark Fee

41.     While the lodestar cross check provides the trial court with valuable data relevant to the determination of a fair and reasonable fee award, the Ninth Circuit has cautioned that under the percentage of the fund method, the focus is not on the attorneys' billing records, but on whether the percentage awarded and the resulting fee are reasonable under the circumstances of the case.  *See Vizcaino,* 290 F.3d at 1048.  The amount of the lodestar by itself is not determinative of the size of a reasonable fee, and the purpose of the cross-check is not to ferret out any particular incidence of duplication, wasted effort or excessive billing:  "Calculation of the lodestar, which measures the lawyers' investment of

---

[19]   Report, Part I at ¶ 136.

time in the litigation, provides a check on the reasonableness of the percentage award.
Where such investment is minimal, as in the case of an early settlement, the lodestar
calculation *may* convince a court that a lower percentage is reasonable." *Id.* at 1050
(emphasis added). As the *Vizcaino* Court's use of "may" rather than "should" or "must" in
the preceding quote indicates, the purpose of the lodestar calculation is to give the trial court
a general sense of the investment that counsel have made in the litigation, which is but one
factor relevant to determining what percentage of the common fund represents a fair fee.

42.     Here, each of the sixty-three (63) private firms representing a plaintiff in the
settled state and federal cases here submitted a declaration to the Special Master computing
that firm's individual lodestar as of December 31, 2012.[20] Each declarant affirmed that the
hours set forth in his or her declaration were actually and reasonably incurred in the
prosecution of this litigation and recorded contemporaneously with the performance of the
legal services. Similarly, each declarant affirmed that the hourly rates used in the firm's
lodestar computation were the firm's usual and customary rates, either at the present time or
at the time the services were preformed, and that no time spent on the preparation of their
request for a fee award or its documentation was included in their lodestar calculations. Mr.
Terry Gross, Chair of the Indirect Purchaser Plaintiffs' Executive Committee, then
aggregated the reported 152,485 of attorney and paralegal hours for and calculated an
aggregate lodestar of approximately $64 million at historical rates with no prime rate
enhancement for the amount of time spent in litigation and in settlement and $79 million at
current rates.[21]

---

[20]   A copy of each of these declarations appears in the Appendix hereto as Exhibit 69.

[21]   The Special Master notes that a review of the individual firm declarations reveals that there may
be some very limited confusion in a couple of the declarations as to the hourly rates reported on an
individual firm basis, and therefore neither of Mr. Gross' lodestar calculations (which he does
qualify as "approximate") is purely current or purely historical. However, this is irrelevant to the
validity of the lodestar cross check since in this Circuit, when using the lodestar approach it is
appropriate to compensate attorneys in common fund cases for delay in payment, "either (1) by

43.    Similarly, each of the Attorneys General submitted a declaration to the Special Master setting forth the time expended by their offices prior to December 31, 2013, offered for inclusion in the AGs' portion of the lodestar.[22]  As with the private counsel, the AGs affirmed that the time included in the lodestar was recorded contemporaneously.  In addition, the time included in the lodestar incurred by the AGs prior to August 2010 was submitted on a regular basis to a fees committee formed by the AGs and for which the Attorney General of the State of Hawaii tracked the time.[23]  That time was scrutinized for compliance with the protocol of the National Association of Attorneys General, which was developed based on the case law.  *Id.*

44.    The AGs calculated their portion of Counsel's joint lodestar using a uniform set of hourly rates pursuant to the methodology approved in *Theme Productions, Inc. v. North American Marketing*, 731 F.Supp.2d 937 (N.D. Cal. 2010) and commonly used by AGs with the approval of the courts to calculate the fees to which they are entitled.[24]  The AGs calculated their attorneys' fees by multiplying the hours spent by each attorney and paralegal who work on the litigation by an hourly rate taken from the Laffey index for attorneys and paralegals of similar years of experience and adding a 9% cost of living adjustment for the market differential between Washington D. C. where the Laffey index is calculated and Northern California, the relevant market for this litigation.[25] Using this methodology, Mr. Emilio Varanini, Chair of the Multistate Group of, and Liaison Counsel

---

applying the attorneys' current rates to all hours billed during the course of the litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement." *Fischel v. Equitable Life Assur. Soc'y of the United States*, 307 F.3d 997, 1010 (9th Cir. 2002) (internal quotation marks and citation omitted).

[22]   A copy of each of these declarations appears in the Appendix hereto as Exhibit 70.

[23]   Varanini Declaration at ¶ 18-20.

[24]   Application at 37-38.

[25]   *Id.* at ¶ 21.

---

for, the Attorneys General, aggregated the approximately 77,400 hours reported by the individual state offices, which using the adjusted Laffey index rates described above generates a lodestar of $31,390,687.

45.     Rounding the AG lodestar and adding it to the private firms' lodestar results in total lodestars for all Counsel of approximately $95 million at private counsel's historical rates and $110 million at private counsel's current hourly rates. These lodestars are computed on approximately 229,400 hours of attorney and paralegal time devoted over an eleven-year period to securing a recovery for private indirect purchasers, consumers and government entities. Numerous courts have awarded attorneys' fees of more than 25% of a common fund under similar circumstances. Most recently, Judge Illston of this District awarded attorneys fees of 28.6% of the common fund in an antitrust class action of similar scope in which plaintiffs' counsel invested approximately 313,000 hours. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 51271, *62-68 (N.D. Cal. Mar. 29, 2013); *see also, e.g., In re Static Random Access Memory (SRAM) Antitrust Litig.,* MDL No. 1819 (N.D. Cal. Oct. 14, 2011) (33-1/3% of common fund awarded as attorneys' fees after more than four years and 76,000 hours of work on the case); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 325 (E.D.N.Y. 1993) (one-third fee award justified in part due to the expenditure of 30,000 hours by 11 firms); *In re Medical X-Ray Film Antitrust Litig.*, No. CV–93–5904, 1998 WL 661515, at *23 (E.D.N.Y. Aug. 7, 1998) (one-third of the common fund awarded after 17 law firms spent about 30,000 hours litigating the case).

46.     The requested benchmark fee of $77,680,000 represents approximately 81.8% of Counsel's lodestar at historical rates and 70.6 % of Counsel's lodestar at current hourly rates, or "negative" multipliers of approximately .82 and .71 respectively. This calculation alone is virtually sufficient to satisfy the cross-check requirement. *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov.

26, 2007) (finding that a negative multiplier suggests that "the requested percentage[-]based fee is fair and reasonable"); *see also, e.g., Gong-Chun v. Aetna Inc.*, No. 1:09–cv–01995–SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (performing lodestar cross-check resulting in negative multiplier of .79 and therefore finding the fee award reasonable), and *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 853–54 (N.D. Cal. 2010) (performing lodestar cross-check resulting in negative multiplier of .59 and therefore finding the fee award reasonable).

47. Indeed, it is constructive to compare this negative multiplier that Counsel have voluntarily agreed to with the law of this Circuit that in common fund cases, a fair and reasonable fee should include a positive multiplier on Counsel's lodestar. "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Washington Public*, 19 F.3d at 1299; see also *Vizcaino*, 290 F.3d at 1051. This provides the "necessary incentive" for attorneys to bring actions to protect individual rights and to enforce public policies. *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir. 1987). In common fund cases, there is no concern about financially burdening a defendant to compensate for the risk of nonpayment, because the attorney's fee award is deducted from the plaintiffs' fund. *Washington Public*, 19 F.3d at 1300. In such cases, the plaintiffs "should share the wealth with the lawyers whose skill and effort helped create it." *Id.* Indeed, where a court selects the lodestar approach, the Ninth Circuit has held it to be an "abuse of discretion to fail to apply a risk multiplier . . . when (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk [i.e., it is the same rate charged to hourly clients], and (3) there is evidence that the case was risky." *Fischel v. Equitable Life*

*Assur. Soc'y*, 307 F.3d 997, 1008 (9th Cir. 2002).[26]  Each of the declarations from the private firms states that this litigation was undertaken without guarantee of compensation and at the expense of other contingency and hourly business.[27]

48.     Generally, percentage of the fund awards exceed the amount of the lodestar used in the cross check by a mutiplier greater than 2.0.  See e.g., *Vizcaino v. Microsoft*, 290 F.3d at 1050-51 (upholding a 28% fee award that constituted a 3.65 multiple of lodestar); *id.*, at 1052-54 (noting district court cases in the Ninth Circuit approving multipliers as high as 6.2, and citing only 7 of 34 decisions with approved multipliers below 2.0).

49.     This Court's award of the 25% benchmark fee (the amount requested) to counsel for the direct purchaser plaintiffs in this litigation, which the Special Master has considered in arriving at his findings and conclusions, represents a multiplier of 2.3 on their aggregate reported lodestar.  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, M-02-1486, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) (Dkt. No 1648).

50.     The plaintiffs in the *LCD Litigation*[28] submitted two expert declarations in support of their fee request that, *inter alia*, contain a review of multipliers awarded in common fund cases.[29]  One review was conducted by Brian Fitzpatrick, Esq., a Professor of Law at Vanderbilt University and author of an article entitled, *An Empirical Study of*

---

[26]  Although not a lodestar method award, Judge Illston recently reconsidered and increased to 25% an award she had made of 20% of a common fund because the lower award did not provide a risk multiplier on the lodestar calculation.  *Lemus v. H&R Block Enterprises, LLC*, 2012 U.S. Dist. LEXIS 128514 (N.D. Cal. Sept. 10, 2012).

[27]  See, e.g., the Declaration of Josef D. Cooper in Support of Petition for Attorneys' Fees ("Cooper Decl."), at ¶ 8.  This Declaration is included in Exhibit 69 in the Appendix hereto.

[28]  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, (N.D. Cal.).

[29]  These are the Declaration of Brian T. Fitzpatrick, dated September 6, 2012, which is part of Docket No. 6662-3 filed in *the LCD Litigation* on September 7, 2012, a copy of which appears as Exhibit 71 to the appendix hereto, and the Declaration of Richard M. Pearl, dated September 7, 2012 and filed the same day also as part of Docket No. 6662-3, which is Exhibit 72 to the Appendix hereto.

---

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

*Class Action Settlements and Their Fee Awards*, published in December 2010 in the Journal of Empirical Legal Studies (7 J. Empirical L. Stud. 811) for which he examined every class action settlement approved by the federal courts during 2006 and 2007. Fitzpatrick Declaration at ¶ 3. Mr. Fitzpatrick reported that of the 192 fee awards studied where "a lodestar cross-check and the lodestar multiplier was ascertainable, the mean and median multipliers were 1.62 and 1.30." *Id*. at ¶ 25.

51. The other review of multipliers in common fund cases submitted to Judge Illston was done by Richard M. Pearl, Esq., an attorney specializing in court-awarded attorneys' fees and a member of the California State Bar's Attorneys Fees Task Force and author of California Attorney Fee Awards, 2d Ed. (Calif. Cont. Ed. Of Bar 1994), and its supplements, and California Attorney Fee Awards, 3d Ed. (Cal. CEB 2010) and its supplements, which treatise has been cited by the California appellate courts on more than 35 occasions. Pearl Declaration at ¶¶ 1 and 3. Mr. Pearl's declaration cites to numerous common fund cases in which the fee awards represented multipliers of greater than 4 times counsels' reported lodestars; the highest being a multiplier of 19.6. *Id*. at ¶ 25.

52. The purpose of this discussion is that the negative multiplier generated here by the lodestar cross-check supports the requested award of the benchmark fee. Some courts in applying the lodestar cross-check make an across the board reduction of the claimed lodestar to account for an assumed element of "unreasonable" waste and duplication. They then examine the reasonableness of the "multiplier" that is generated when the adjusted lodestar is compared to the percentage fee. For the benchmark fee here to generate the same 2.3 multiplier that this Court's benchmark award gave to the counsel who brought actions for direct DRAM purchasers, arguably a far less risky endeavor than indirect purchaser litigation, almost 70% of Counsels' total lodestar at current rates would have to be disallowed. There is no danger that an award of the requested 25% fee would be

1  a windfall out of proportion to the effort Counsel expended in producing the common fund.

2  Counsel have requested that the total compensation to be awarded by this Court include the

3  interest that the 25% fee amount has earned during the time the Settlement Fund has been

4  invested.  This Court awarded Direct Purchasers' counsel the proportionate interest earned

5  as part of their settlement funds by their fee award.  (Dkt. No 1648).  The Special Master

6  finds that doing the same for Counsel is fair and reasonable under the circumstances of this

7  litigation, particularly in light of the fact that, unlike the Direct Purchasers' counsel, the fee

8  requested by Counsel is less than their total reported lodestar.

9       53.    The Special Master carefully reviewed the declarations of the individual

10  private counsel and Attorneys General whose time makes up the lodestar in this case.[30]   The

11  Special Master reviewed these declarations and found that in general their descriptions of

12  the tasks upon which Counsel expended time comports with the Special Master's

13  understanding of the scope of the work done on behalf of the proposed Indirect Purchaser

14  Settlement and Governmental Purchaser Settlement Classes and the Governmental

15  Purchasers represented in a non-class capacity.[31]   In this regard, the Special Master notes

16

17  _____

18  [30]   While not all are not completely free of areas that might bear more inquiry if the lodestar method
were employed, employing any particular lodestar as a cross-check does not require a determination
19  that every hour in the computation was in fact reasonably expended for the benefit of the class.  The
cross-check requirement is satisfied if the lodestar when compared to the percentage fee award
20  generates a multiplier that is within a range that the court finds is fair and reasonable in light of the
particular circumstances of the case and multipliers awarded in similar matters.  Similarly, the
21  common expedient of applying a percentage reduction to the claimed lodestar for what some courts
believe is an inevitable degree of duplication and waste does not mean that each of the individual
22  firm lodestars that make up the aggregate lodestar should be subject to the same reduction, or
necessarily any reduction at all. It may be that some of the individual lodestars reflect services of
23  very little value to the class while others reflect the services of counsel who held the laboring oars
and exercised rigorous "billing judgment" when recording their time. This is a determination that
24  does not become relevant until there is an allocation of the fee award among individual firms, a
determination, which as the Special Master noted above, is best made by leadership counsel who are
25  the most familiar with the work done in the litigation.

26  [31]   Some of these efforts will be discussed below and others are detailed in the Report, Part I, at ¶¶
42-55, 108-114 and 204-260.

27  _____

28

that the efforts of the firms making up Indirect Purchaser Plaintiffs' Leadership Group[32] account for over 70% of private counsels' total lodestar. Similarly, approximately 60% of the Attorneys General's total lodestar is attributable to the efforts of California, Florida, Illinois and Oregon, the states serving as co-lead counsel for the Attorneys General. The Special Master has personal knowledge of the skill and integrity of these attorneys from observing their actions in these proceedings.

54. In addition, based upon personal experience, the Special Master finds that the total number of attorney and paralegal hours invested in this litigation, as reported in the declarations of Counsel, fall within the expected range of time reasonably required to prosecute litigation of the magnitude, complexity and duration of the settled cases.

55. As to the reasonableness of the hourly rates used in the lodestar, the Special Master computed an average (but not weighted) blended historical hourly rate of $420 and a current rate of $518 for the portion of the lodestar attributable to IPP Counsel. The Special Master also reviewed the individual hourly rates and experience of the IPP Counsel leadership group and compared them to the hourly rates approved by courts and charged by San Francisco litigators as listed in the Pearl Declaration at ¶¶ 11-14. The Special Master also notes that, in reviewing the report and recommendation regarding fees submitted to the *LCD* court by the Special Master in that case, he accepted Mr. Pearl's specific evaluation and confirmation of the reasonableness of the hourly rates charged by Cooper & Kirkham, P.C., Gustafson Gluek, PLLC, and Straus & Boies, LLP, three of the four Co-Lead Counsel in this case, and of Zelle Hoffman Voelbel & Mason LLP, Liaison Counsel here. As noted above the individual lodestars of these firms, along with the lodestars of the firms of Co-Lead Counsel Daniel Mogin and Executive Committee Chair Terry Gross, account for over

---

[32]  Indirect Purchaser Plaintiffs' four Co-Lead Counsel, Liaison Counsel and the Chair of Plaintiffs' Executive Committee.

70% of private counsel's combined lodestar. Accordingly, the Special Master finds that the hourly rates reflected in IPP Counsel's portion of the joint lodestar fall within the range of reasonable hourly rates that would be expected to be charged in the San Francisco market by antitrust counsel with the same skills and expertise as the IPP leadership group for litigation of this magnitude and complexity.

56.     The Attorneys General used the *Laffey* Matrix hourly rates. The *Laffey* Matrix is a "widely recognized compilation of attorney and paralegal rate data." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1067 (N.D. Cal. 2010), citing *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C.1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C.Cir.1984); *accord, Craigslist, Inc. v. Mesiab, et al.*, 2010 WL 5300883, at * 7 (N.D. Cal. Nov. 15, 2010) (James, MJ). The *Laffey* Matrix is regularly updated by the Civil Division of the United States Attorney's Office for the District of Columbia, and is often used to evaluate work "performed by a mix of senior, junior and mid-level attorneys, as well as paralegals." *Naturemarket*, 694 F. Supp. 2d at 1067; *see* http://www.justice.gov/usao/dc/ divisions/Laffey_Matrix_2003-2013.pdf, visited June 27, 2013. The *Laffey* Matrix is particularly suited to determining prevailing local market rates for government or nonprofit attorneys who do not bill at market rates, because a "proxy for the market must be found in order to set a reasonable hourly rate." *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1519 (D.C. Cir. 1988), *citing Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 16 n.74 (D.C. Cir.1984), *overruled on other grounds* by *Hodel*. Accordingly, the Special Master finds that the hourly rates reflected in Attorneys General's portion of the joint lodestar fall within the range of reasonable hourly rates in the San Francisco market for government antitrust counsel with the same skills and expertise as the Attorneys General's leadership group for litigation of this magnitude and complexity.

///

---

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and
Incentive Awards for Plaintiffs

57.     The Special Master finds that under the law of this Circuit, application of the lodestar cross-check to the benchmark fee here would ordinarily raise the question of whether the requirement to compensate Counsel for risk and other contingency factors, along with consideration of the specific circumstances of the litigation, support an upward adjustment to the benchmark fee.  Since Counsel have voluntarily limited their fee request to $77,680,000, the Special Master finds that application of the lodestar cross-check fully supports this fee award, which is 25% of the common fund in this litigation.

**E.      The Results Achieved by Counsel in Light of the Circumstances, Risk and Complexity of the Litigation and the Skill and Quality of Their Work Supports An Award of At Least the 25% Benchmark Fee**

**1. The Results Achieved by Counsel**

58.     The $310,720,000 Settlement Fund ranks among the highest settlements achieved in an indirect-purchaser antitrust case.  The settlement is all cash, and there will be no reversion or refund to any Defendant.  In general in a contingency representation, the larger the monetary result achieved for the client, the larger the remuneration counsel can expect to receive.  However, from time to time, in common fund cases, it has been asserted by objectors that where the class recovery is hundreds of millions of dollars, the attorneys' fees should be capped at a smaller percentage than would apply in cases where the recovery is smaller.  *See, e.g., Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629 (7th Cir. 2011); *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718-19 (7th Cir. 2001); Vizcaino, 290 F.3d at 1047.  This proposition has been rejected by the Ninth Circuit.  Where, as here, the benchmark fee represents less than Counsel's total reported lodestar, the wisdom of the Ninth Circuit's more flexible approach is clear.

59.     The avowed purpose of the so-called "mega-fund" or "increase-decrease rule" (*Vizcaino,* 290 F.3d at 1047) is to prevent a fee that represents an unreasonable windfall for class counsel.  However, a reasonable fee under all of the circumstances of the

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

1 particular litigation is the goal in all common fund cases regardless of the size of the class's

2 recovery.  In other words, a windfall fee that is out of all proportion to the "hours spent on

3 the case" and not justified by some other consideration is no more acceptable in a $3 million

4 case than in $300 million dollar litigation.  Accordingly, the law of this circuit calls for trial

5 courts in *all* common fund cases to determine whether the benchmark 25% fee should be

6 adjusted after consideration of the circumstances of the individual case, including the

7 lodestar cross-check.  *In re Bluetooth Headset Prods. Liab. Litig*, 654 F.3d at 942.  Or in the

8 words of the *Vizcaino* Court, "[s]election of the benchmark or any other rate must be

9 supported by findings that take into account all of the circumstances of the case."  *Vizcaino*,

10 290 F.3d at 1048.  Under this procedure, and in light of the facts established here, there can

11 be no possibility of a windfall fee award.

12      60.      Here, the cash settlement fund is approximately 12% of the overcharge

13 imposed by the Defendants, as computed by the direct purchaser class's damages expert.[33]

14 This result is comparable to settlements in other price-fixing cases where the court awarded

15 25% or more of the settlement fund as attorneys' fees.  *See, e.g.*, *Sullivan v. DB Investments,*

16 *Inc.*, 667 F.3d 273, 324, 330–33 (3d Cir. 2011), *cert denied*, 132 S. Ct. 1876 (U.S. 2012),

17 *reh'g denied*, 132 S. Ct. 2451 (affirming a settlement fund that represented 10.93% of the

18 estimated overcharge, and affirming attorneys' fees in the amount of 25%).

19      61.      The Indirect Purchaser and Government Purchaser Plaintiffs also benefit

20 from significant non-monetary relief.  The first settling defendant, Samsung, agreed to

21 provide cooperation to both the IPPs and the AGs in litigation against the other Defendants,

22 and to provide trial witnesses if needed.  This assistance was valuable in maximizing the

---

[33] Although Defendants argued that the conspiracy was largely ineffective at raising prices, Direct Purchaser Plaintiffs' expert, Dr. Paul C. Liu, estimated that the total overcharges due to defendants' conspiracy was at least $2.6 billion.  Rebuttal Expert Report of Paul C. Liu, Nov. 22, 2006, at 3 (Dkt. No. 1182).  Thus, the $310 million recovery represents approximately 12% of single damages.

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and
Incentive Awards for Plaintiffs

monetary recovery against the other Defendants.  In addition, each Defendant agreed:  (1) to establish an antitrust compliance program; (2) to an injunction against anticompetitive conduct with respect to DRAM for a period of three years; and (3) to provide complete cooperation to plaintiffs in prosecuting any antitrust cases against any co-conspirator.[34]

### 2. Counsel's Efforts in the Litigation

62.     Although subsumed in the lodestar cross-check, courts also refer to the efforts of counsel as an independent factor to be considered in determining the appropriate percentage of a common fund to award as attorneys' fees.  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 51271, at *66; *In re Heritage Bond Litig.*, 2005 WL 1594389, at * 9.  As noted above, the recovery here was obtained as a result of over 200,000 hours of work by Counsel.   The procedural history of the litigation set out in the Part I of this Report and Recommendations at ¶¶ 42-55, provides a description of most of this effort and will not be repeated here.

63.     However, two aspects of Counsel's efforts, which are particularly illustrative of the efficiency and skill with which they conducted the litigation, will be briefly discussed as examples of the high quality of the representation afforded members of the proposed settlement classes.

64.     To begin, the Special Master notes that both IPP Counsel and the Attorneys General created organizational structures and adopted litigation strategies that facilitated the efficient resolution of a wide range of claims, brought under differing state laws, with different standards of proof, and which ultimately generated settlements benefiting purchasers of DRAM and DRAM containing products nationwide.

65.     Private counsel first filed class action complaints on behalf of a nationwide class of non-governmental indirect DRAM purchasers in California state courts in August

---

[34] Report, Part I, ¶¶ 56-98.

2002.  These cases were coordinated by the Judicial Council in the complex litigation department in the San Francisco Superior Court.  Cooper & Kirkham and Gross & Belsky were appointed Co-Liaison Counsel and given the duties and responsibilities of lead counsel.[35]  Shortly thereafter, plaintiffs entered into a discovery plan with defendants that included the production of grand jury documents, and the commencement of written discovery and depositions.  Motion practice and discovery continued in the California coordinated proceeding through 2004 and into 2005.[36]

66.  Beginning in late 2004, private indirect-purchaser cases were filed in federal and state courts other than California; and a number of these later-filed state-court cases were removed to federal court.  In all, more than 60 class-action complaints making similar allegations against various DRAM manufacturers, most on behalf of statewide classes, were filed in state and federal courts across the country.  In order to facilitate the global litigation and resolution of the claims of all indirect purchasers nationwide, counsel in the California proceeding, filed a complaint in this Court captioned *Petro Computer Systems, Inc. v. Micron Technology, Inc*, C 05-0247 ("*Petro*"), on June 17, 2005.  The *Petro* complaint alleged original jurisdiction in federal court pursuant to the CAFA-enacted 28 U.S.C. §1332 (d)(2) (class action diversity), and asserted federal equitable claims and damage claims under the California antitrust laws on behalf of a nationwide class, as well as statewide claims under various antitrust and consumer protection laws.  The Judicial Panel on Multidistrict Litigation transferred all federal-court actions to the United States District Court for the Northern District of California, and consolidated the cases for pretrial purposes with *Petro* in the MDL proceeding that had previously been established for the direct purchaser actions.  All indirect-purchaser cases that remained in state courts were thereafter

---

[35] Cooper Decl., ¶ 3.

[36] Gross Decl., ¶ 2.

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

coordinated with the MDL. *Petro* was then designated as the relevant indirect purchaser complaint for purposes of coordinated pretrial proceedings.[37]

67.    In August 2005, pursuant to this Court's order (Dkt. No. 526), plaintiffs created a leadership group made up of the four Co-Lead Counsel, Liaison Counsel and Chair of Plaintiffs' Executive Committee listed above, which included the leadership firms from the California state court litigation, thus ensuring continuity with the earlier proceedings in that forum. As noted above, attorneys and paralegals in the firms comprising this leadership group performed the vast majority of the work that resulted in the settlement of the indirect purchaser litigation.

68.    The Attorneys General began their investigation into this case in June 2005, serving subpoenas and interrogatories on Defendants and third parties. Defendants produced the same millions of pages of documents to the AGs that they had previously produced in the California proceedings and supplemented them with additional documents and interrogatory responses including narrative statements of liability from various Defendants. Following a thorough independent review of documents, data, and interrogatory answers, the AGs, other than New York, filed a single action, Case No. 06-4333 PJH, in this Court. The State of New York filed a separate action in the Southern District of New York that was transferred to this Court in Case No. 06-4636 PJH.

69.    The Attorneys General also adopted a leadership structure that promoted the efficient prosecution of the claims brought on behalf of governmental purchasers and *parens patriae* for their citizens. This structure involved the designation of a representative of the California Attorney General as Chair of the multistate group of AGs, the formation of Executive and Multistate Committees and the designation of the states of California,

---

[37] Report, Part I, ¶ 42; Gross Decl., ¶ 3.

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

Florida, Illinois and Oregon as Co-Lead Counsel.[38]  The AGs also organized themselves into working committee for discovery, drafting pleadings and other court filings and working with expert witnesses, as well as a Fees Committee that tracked and scrutinized the hours reported by the various offices.  *Id.*

70.     Both the organization of counsel and the cooperation between the IPP Counsel and AG leadership groups are exemplified in the efficient conduct of discovery in this matter.

71.     Although the first cases were filed in 2002, due to the continuing investigation of the United States Department of Justice ("DOJ"), general discovery in the private actions was stayed until July 24, 2005.  During that stay, however, the IPP Counsel conducted a thorough investigation of the DRAM market, consulted with experts, obtained access to and reviewed the millions of pages of documents that the Defendants produced to the DOJ, propounded interrogatories and also began preparing for class certification.[39]

72.     After IPP Counsel had been litigating against Defendants in state court for two years, the DOJ announced in September 2004 that Infineon was pleading guilty to a price-fixing conspiracy involving six computer manufactures ("OEMs"), which plea agreement was followed over the next year by indictments and pleas with additional DRAM manufacturers.  While helpful, the pleas' utility in the private cases was limited, since they established only a conspiracy to fix DRAM prices to particular OEMs and for a short time period.  *See, e.g., United States v. Samsung Electronics Co., Ltd., et al.*, Plea Agreement, at ¶ 4(c), (d), No. CR05-0643 PJH (N.D. Cal.  Nov. 30, 2005).  This Court later ruled that the plea agreement of a specific Defendant had only limited evidentiary value against other Defendants.  *See* Transcript of Hearing at 113-117, *Sun Microsystems v. Hynix*

---

[38] Varanini Decl., ¶¶ 5-8.

[39] Report, Part I, ¶ 43.

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

*Semiconductor, Inc. et al.,* C 06-1665 PJH (N.D. Cal. May 7, 2009).   Thus, the DOJ

proceedings notwithstanding, IPP Counsel, and later the AGs, were required to conduct

substantial discovery focused on demonstrating that the Defendants' conspiracy was much

broader than that contained in the DOJ indictments and occurred during a much longer

period.[40]

73.    In addition, Defendants contended that certification of litigation classes

would be improper because there was no method of common proof of impact and damages,

and that the indirect-purchaser distribution channels were so complicated that it was

virtually impossible to establish that any overcharge was passed through to the ultimate

consumers.  Accordingly, preparation for the filing of class certification motions required

IPP Counsel to conduct comprehensive investigations into various sources of industry data

on sales, transactions, and pricing of DRAM, and products containing DRAM, aided by

experts, and to work with and facilitate their economic experts' regression analyses.  It also

required an intricate analysis of the market structure and its numerous distribution channels,

in order to develop methods of common proof of impact and damages.[41]

74.    Counsel here, along with the Direct Purchaser Plaintiffs, engaged in multi-

year coordinated conspiracy and violation discovery, during which numerous witnesses

were deposed on issues relating to liability and overcharge.  IPP Counsel attended the expert

depositions in the Direct-Purchaser actions.  In addition, they conducted substantial

discovery into the issues of the degree to which the direct purchasers had passed the DRAM

overcharges on to the ultimate consumers and other indirect purchasers, as well as the

degree to which the Defendants were aware that their price increases were being passed-on

---

[40] Gross Decl., ¶ 5.

[41] *Id.* at ¶ 11.

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and
Incentive Awards for Plaintiffs

and included the indirect purchaser market within the target of their price-fixing conspiracy, complex and time-consuming issues that were absent from the Direct Purchaser Litigation.

75.    IPP Counsel propounded third-party discovery, directed principally to marshaling evidence necessary to prove the pass-through of overcharges to indirect purchasers. Subpoenas were served on more than 30 third parties, primarily on large computer OEMs that purchased DRAM and sellers of products containing DRAM, such as Dell, Gateway, Apple, Hewlett-Packard, IBM, Circuit City, CompUSA, Ingram Micro and CDW. This discovery was critical because the as indirect purchasers, the *Petro* plaintiffs needed to demonstrate that pass through of the direct overcharge could be established on a class-wide basis. Each of these subpoenas had to be individually negotiated, with the assistance of expert economists.[42] IPP Counsel and their experts and consultants reviewed and carefully analyzed this third-party information, which consisted of hundreds of thousands of pages of documents and extensive data.[43]

76.    During discovery, Defendants and third-parties produced over four million documents from both domestic and foreign entities. Counsel also obtained worldwide transactional sales data of DRAM manufactured by Defendants in the global market, and, in consultation with their experts, sought and received manufacturing cost data and detailed transactional sales data of DRAM, both as components in computers and as stand-alone DRAM modules. Over 100 depositions were taken of fact witnesses, as well as Defendants' expert witness for class certification, and IPP Counsel defended the depositions of their own experts, Drs. Michael Harris and Roger Bohn. Additionally, IPP Counsel worked closely

---

[42] Gross Decl., ¶ 10.

[43] *Id.*

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

with consultants and economic experts to ensure that the discovery obtained would be focused on information needed to prepare for class certification and trial.[44]

77. In order to process the millions of pages of document discovery, IPP Counsel undertook the design and implementation of a new structure and technology for document review that, to the knowledge and the Special Master, had never been used before.[45] In 2002, when document discovery commenced in this litigation, advances in computer software and hardware, especially in web-based access to documents on a central server and the enhancements in optical character reading, were opening the door to new and vastly more efficient possibilities for litigation document review, and IPP Counsel took full advantage of this opportunity to create an efficient and flexible system for reviewing, organizing and accessing the evidence in this litigation. *Id.*

78. Working with an outside consultant, IPP Counsel selected software and a document hosting vendor that could normalize and standardize the formats and load files of the electronic documents that had been produced in the California JCCP Proceeding and were being produced in the MDL litigation, optically "scan" and convert the millions of pages of electronic documents to searchable text files, provide a platform for the retrieval of individual documents through Boolean logic (Lexis style) word searches, and then allow for the annotation and organization of the individual documents by multiple subjects and issues. *Id.*

79. The availability and use of this technology permitted the reinvention of the entire document review process. The IPP counsel selected to review documents were organized into teams of five to eight attorneys, who were responsible for identifying the best documentary evidence relevant to their particular subject matter in the universe of

---

[44] Report, Part I, ¶ 44; Gross Decl., ¶ 14.

[45] Cooper Decl., ¶ 15.

documents produced in discovery, and organizing and annotating those documents for future use as deposition, pretrial motion and trial exhibits. To maximize the collaborative spirit, as well as quality control, no team leader supervised attorneys from his or her office.

80.     Each team produced a narrative memorandum of the evidence relevant to its issue or subject matter, with citations to individual highly probative documents.  These memoranda were updated periodically and were complied into a general case overview or briefing book that was used by attorneys taking depositions and writing briefs.  As a subject matter team finished its work, the attorneys receiving the highest evaluations from their team leaders were reorganized into the deposition preparation teams.  *Id*.

81.     IPP Counsel provided the AGs with access to their electronic document management system, including their annotations and other work product.  The AGs supplemented this system by creating document management systems of their own and conducting independent document review.  The AGs were also given access to the depositions taken by the Direct and Indirect Purchaser Plaintiffs and conducted an independent review of those depositions. The AGs reviewed all of the documents, interrogatory responses, and deposition testimony taken in the private actions, and selected essential documents and testimony. As part of this review, the AGs explored additional theories of liability such as the output-signaling aspects of the Defendants' conduct and the agency relationship between Defendants Nanya Taiwan and Nanya U.S.A.[46]  Like the IPP Counsel, the AGs worked closely with their experts and consultants in preparing their case for trial.[47]

82.     After this review, the AGs conducted a substantial number of additional depositions and interviews of current and former employees of the Defendants, creating a

---

[46] Varanini Decl., ¶ 14.

[47] Report, Part I, ¶ 52.

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

supplemental database of depositions, linked to their document database, for ease of

reference. The AGs obtained supplemental interrogatory statements from many of the

Defendants. Additionally, the AGs conducted numerous interviews, took depositions of, and

obtained a voluminous number of documents from OEMs and third-party retailers and

resellers involved in the sale of DRAM and DRAM-containing equipment.[48]

83.     The AGs worked with the government entities they represented to gather and

analyze purchase information, conduct a purchasing survey, and speak with state employees,

in order to determine the extent of the injury and damages the states suffered throughout the

relevant damages period.  This work included not only working with expert economists who

analyzed the gathered information and data to determine the fact and extent of harm suffered

by the represented government entities but also included answering interrogatories and

submitting to depositions across the country.[49]  Additionally, the AGs undertook a survey of

state purchasers to further support their damages calculation.[50]  This process took many

months to complete.[51]

84.     In addition to preparing Counsel for trial, without the threat of which

settlement would have been unlikely, much of the discovery conducted into distribution

channels, pass-through, market structure, as well as the work of Counsel's experts proved

useful in setting the context in which the plan of distribution and allocation of the settlement

proceeds was developed during the proceedings before the Special Master.[52]

///

---

[48] Report, Part I, ¶ 50; Varanini Decl., ¶ 11.

[49] Varanini Decl., ¶ 14.

[50] *Id.* at ¶ 16.

[51] Report, Part I, ¶ 51.

[52] Report, Part I, ¶¶ 204-260.

### 3.  The Substantial Risks Facing Counsel in this Complex Litigation

85.      The risk of non-payment in contingent-fee litigation is a significant factor in determining attorneys' fees.  *Vizcaino*, 290 F.3d at 1048-49; *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding no abuse of discretion where the district court awarded 33% of the settlement fund in attorneys' fees -- instead of the standard benchmark of 25% -- due to "the complexity of the issues and the risk"); *In re Wash. Pub. Power Supply Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (examining the role of risk in litigation); *see also In re Superior Beverage/Class Container Consolidated Pretrial*, 133 F.R.D. 119, 127 (N.D. Ill. 1990) ("[t]he 'best' case can be lost and the 'worst' case can be won, and juries may find liability but no damages. None of these risks should be underestimated").

86.       Courts have long recognized that there is generally considerable risk in antitrust cases; one reason why in a significant percentage of such cases, a fee higher than the benchmark is awarded.  That is particularly true of antitrust actions commenced on behalf of indirect purchasers, as this litigation illustrates.  Here, the application of the antitrust injury requirements of *Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ("*Assoc. Gen. Contractors*") to the claims asserted in *Petro* and of the issues raised by the certification of litigation classes for both the private parties and the governmental entities are particularly emblematic of the risk and complexity of this litigation and demonstrate that only counsel of the highest competence could have achieved the settlement recovery realized here.

### a.  The *Assoc, Gen. Contractors* Issue

87.      On June 1, 2007, this Court granted judgment on the pleadings as to all antitrust claims asserted in *Petro* arising from the purchase of DRAM as a component in a computer or other device, and dismissing those claims with prejudice (Dkt. No. 1555; "the

*AGC* Order").[53]  The *AGC* Order held that plaintiffs purchasing a DRAM-containing product lacked standing under various state antitrust laws because their injuries were too remote to the price-fixing of DRAM itself, and therefore, these purchasers failed to satisfy the "antitrust standing" requirements set forth in *Assoc. Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) ("*Assoc. Gen. Contractors*").

88.  On August 17, 2007, this Court granted IPP Counsel leave to file an amended complaint asserting claims on behalf of persons who purchased DRAM as a component in a computer, as opposed to other DRAM containing devices, and alleging facts to demonstrate that the markets for DRAM modules and for computers are "inextricably linked, and cannot be considered separately" (Dkt. No. 1683).  Plaintiffs' Second Amended Complaint (Dkt. No. 1684) was filed the same day.[54]

89.  On October 1, 2007, Defendants filed a motion to dismiss the Second Amended Complaint, again citing *Assoc. Gen. Contractors* and challenging Plaintiffs' standing to assert claims for computer purchases under the antitrust laws of California and fifteen other states (Dkt. No. 1740).  On January 29, 2008, the Court granted Defendants' motion to dismiss (Dkt. No. 1809; the "MTD Order").[55]

90.  Upon plaintiffs' motion, the Court certified both the *AGC* Order and the MTD Order for interlocutory appeal of the *AGC* standing issues March 28, 2008 (Dkt. No. 1849). The Ninth Circuit granted the Petition for Permission to Appeal Under 28 U.S.C. § 1292(b) on June 26, 2008.  Following completion of the appellate briefing in 2009, which included an *amicus curiae* brief filed by the Attorney General of the State of California in support of appellants, Counsel reached a settlement in principle with all of the remaining

---

[53] Report, Part I, ¶ 45; Gross Decl., ¶ 15.

[54] Report, Part I, ¶ 46; Gross Decl., ¶ 16.

[55] Report, Part I, ¶ 46; Gross Decl., ¶ 17.

Defendants.  Thereafter, the Ninth Circuit granted a stay of the appeal, pending final approval of the settlements.

91.      The effect of the *AGC* and MTD Orders was to seriously undermine IPP Counsel's case.   IPP Counsel's damages experts calculated that only 20% of relevant sales were stand-alone DRAM modules, with the remainder being sales of the computers and other DRAM-containing products that had been eliminated from the litigation.[56]  Indeed, in the MTD Order, this Court "acknowledge[d] the potentially devastating effect of this ruling on plaintiffs' case in chief."  Dkt. No. 1809 at 15.

92.      These rulings reduced the value of the private litigation by 80% and increased exponentially IPP Counsel's risk of recovering little or nothing on an investment of tens of thousands of hours of their time and the multi-million dollar financial commitment that had funded discovery and the work of their expert witnesses.  Nonetheless, IPP Counsel never faltered in their vigorous representation of the *Petro* plaintiffs and putative class.  They succeeded in putting the Defendants sufficiently at risk in pressing the *Assoc. Gen. Contractors* issue for interlocutory appeal that the Defendants elected to settle the claims of all DRAM containing product purchasers rather than rely on preserving their victory on appeal.

93.      The Attorneys General also faced motions to dismiss some of their state law claims; however, unlike IPP Counsel's claims, most of the state law claims either did not face a challenge or survived. Only the challenges to the state law claims of Utah, Tennessee, and New Mexico were granted.  This is not to say, however, that the AGs faced no risk or trimming of their claims.  *See, e.g., California v. Infineon Technologies AG*, 531 F. Supp. 2d 1124 (N.D. Cal. 2007) (holding that only the California Attorney General can bring *parens*

---

[56] *See* Declaration of Roger Bohn, June 29, 2007, ¶ 28 (Dkt. No. 1597), and Supplemental Expert Report of Roger Bohn to Special Master, Feb. 18, 2011, ¶ 46, which is Exhibit 73 in the Appendix to this Report.

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

*patriae* claims under the Cartwright Act and only on behalf of California residents, finding

some state price-fixing claims were barred by *Illinois Brick Co. v. Illinois* 431 U.S. 720

(1977), finding some state price-fixing claims were barred for failure to allege intrastate

activity, applying discovery rule to some state law claims, and finding that some states'

*parens patriae* claims were deficient); Am. Notice of Pl. State of Florida's Mot. To Strike,

*State of California et. al. v. Infineon Technologies*, No. 06-4333 PJH (N.D. Cal., filed July

15, 2008) (Dkt. No. 425), Order Granting Motion to Strike (Dkt. No. 456).

94.     The AGs' good fortune in having significant aspects of their case remain

intact played a role in achieving the global settlement of all claims since they continued to

prepare their cases for trial even after this Court entered the April 18, 2008 stay of the *Petro*

proceedings pending the Ninth Circuit's consideration of the 1292(b) Petition on the *AGC*

issues (Dkt. No. 1853).[57]

95.     Under these circumstances, a settlement fund of $310 million, which

represents a recovery of approximately 12% of estimated total damages for all DRAM sales,

is a truly remarkable achievement which more than justifies awarding Counsel the 25%

benchmark fee which they have requested.[58]  *See Vizcaino*, 290 F.3d at 1048; *Bebchick v.*

*Washington Metro. Area Transit Comm'n*, 805 F.2d 396, 408 (D.D.C. 1986) (stating that

attorneys' resolve in fighting to overturn adverse Commission determinations supported an

upward adjustment of their lodestar).

///

---

[57] Report, Part I, ¶ 53.

[58] The Special Master is mindful in making this statement that the compensation going to the Indirect
Purchaser Settlement Class is also consideration for the release of the *parens patriae* claims being
asserted on their behalf by certain of the AGs, and that no determination of the applicability of *AGC*
was ever made as to those claims.  Nevertheless, the Special Master agrees with the view that the
dismissal of the claims arising from the purchase of DRAM containing products was a "devastating"
blow to the Settlement Class's chances of securing a significant recovery in this litigation and that
Counsel should be both commended and compensated for overcoming this obstacle.

### b. Risk of Failure to Certify Litigation Classes

96.     The question of whether litigation classes would ever have been certified provides another aspect of substantial risk for members of the proposed Indirect Purchaser Settlement Class, the proposed Governmental Purchaser Settlement Classes and their Counsel.   Achieving the substantial settlement fund here in light of these risks provides additional support for awarding more than the 25% benchmark fee.

97.     Filing of IPP Counsel's class certification motion was set by court order for a date shortly after the issuance of the *AGC* Order.  Accordingly, on July 10, 2007, IPP Counsel filed a motion for class certification (Dkt. No. 1689) at the same time that they moved for leave to amend to address this Court's *AGC* concerns.  Following the filing of the Second Amended Complaint, on August 24, 2007, IPP Counsel filed  "Amendments re: Motion for Class Certification" to conform the class certification motion to their recently filed Second Amended Complaint (Dkt. No. 1689).  The motion sought certification of nationwide classes of private indirect purchasers of DRAM modules and DRAM in personal computers, desktops, laptops, notebooks, workstations, or servers under Fed. Civ. P. Rule 23(b)(2) for the purpose of obtaining injunctive relief class under Section 16 of the Clayton Act (15 U.S.C. §26), and under Fed. Civ. P. Rule 23(b)(3) for the purpose of obtaining damages under California's Cartwright Act (Cal. Bus. & Prof. Code § 16720), restitutionary relief under Cal. Bus. & Prof. Code § 17200 ("UCL"), and disgorgement under California law principles of unjust enrichment.

98.     Defendants filed oppositions to the class certification motion on September 28, 2007 (Dkt. Nos. 1728-1736) and on November 27, 2007 (Dkt No. 1780).[59]

---

[59] Report, Part I, ¶¶ 47-48; Gross Decl., ¶¶ 20-22.

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

99.     After Defendants filed their motion to dismiss the IPPs' Second Amended Complaint (as discussed above) on December 5, 2007, the Court vacated the January 16, 2008 hearing on class certification in order to "settle the pleadings before class certification [was] addressed." (Dkt. No. 1794). The class certification process was then stayed pending the interlocutory appeal to the Ninth Circuit, and then was further stayed by the pendency of the settlement agreements.[60]     Nonetheless, this Court's ruling on the motion filed by the California and New Mexico indicates that the IPP Counsel faced a substantial risk that a nationwide class of private indirect purchasers of DRAM modules and computers to pursue damage claims would not have been certified.

100.     Although the majority of claims by the AGs were filed as *parens patriae* or representative claims on behalf of government entities, natural persons, and in a few instances businesses, several AGs filed class claims on behalf of certain local government entities. *State of California et al. v. Infineon Technologies*, No. 06-4333 PJH (N.D. Cal. 2008). On November 21, 2007, the AGs of California and New Mexico filed a motion to certify a litigation class of political subdivisions that purchased DRAM and DRAM-containing products in those states under the antitrust laws of California and New Mexico. (Dkt. No. 274). This Court denied the motion, finding that the state's economic expert had failed to proffer a "sufficiently plausible methodology" to establish that the states' proposed evidence "concerning antitrust impact—and specifically pass-through—will be sufficiently generalized so as to allow common questions as to impact to predominate." *California v. Infineon*, Case No. 06-4333 PJH, 2008 WL 4155665 at *39 (N.D. Cal. Sept. 5, 2008) (Dkt. No. 448). This Court's skepticism about proof of impact went beyond the specifics of the state's expert's methodology, and several of the statements in the opinion may have had applicability to the litigation class proposed by IPP Counsel as well. For example, this

---

[60] Report, Part I, ¶ 48 at 25; Gross Decl., ¶ 23.

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

Court observed that it was unlikely that any methodology could demonstrate with generalized proof that "the County of Los Angeles, comprised of over 9.5 million persons, and which purchased a large volume of computer servers pursuant to a statewide contract, for example, experienced impact just as a small municipality or agency located in San Francisco, comprised of a few hundred persons, and which purchased a small number of printers from a re-seller in San Francisco's 'Computer Store' did."[61] This Court believed that "each divergent factor-customer size, type, procurement channel, product, distribution step-is a factor that increases the likelihood that proof of pass-through can only be shown with resort to individualized proof."[62]

101. Like IPP Counsel, the AGs did not allow this setback to lessen the pressure on the Defendants to either settle or defend their actions at trial. A month after certification was denied, the California Attorney General filed an action in the California Superior Court in San Francisco on behalf of 97 political subdivisions as well as the University of California. *Los Angeles v. Infineon Technologies* AG, No. CFC-08-480561 (San Francisco Supr. Ct. Oct. 3, 2008).[63] The California Attorney General thereafter litigated that state court case, successfully opposing a number of motions and also serving additional discovery that the Defendants were compelled to answer.[64]

### c. Other Aspects of Risk and Complexity in the Litigation

102. The 2008-2010 financial crisis materially affected the ability of some Defendants to pay anything and many Defendants were concerned with cash outflows in

---

[61]*Id.* at *11.

[62] *Id.*

[63] The term "political subdivisions" includes K-12 school districts, counties, cities, and special districts of whatever kind.

[64] Varanini Decl., ¶ 12; Report Part I, ¶ 55.

light of the economic conditions. Elpida, for example, ultimately filed for bankruptcy, and

Infineon was reorganized and subsequently acquired while in distress. Additionally, Mosel

was unable to meet the payment schedule initially set forth in the Multi-Defendant

Settlement Agreement due to its restructuring efforts with its lender banks and the

Taiwanese government. The precarious financial situations of these Defendants created an

additional risk that even if Counsel had obtained litigated judgments against them,

collecting on those judgments would have been difficult or impossible.[65]

103.    This litigation is composed of numerous actions brought under the antitrust

laws of multiple states. It had long been recognized that antitrust class actions are "arguably

the most complex action to prosecute" as "[t]he legal and factual issues involved are always

numerous and uncertain in outcome." *Stop & Shop Supermarket Co. v. SmithKline Beecham

Corp.*, No. Civ. A 03-4578, 2005 WL 1213926, at *11 (E.D. Pa. May 19, 2005) (quoting *In

re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003)); *see also Wal-

Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (4th Cir. 2005) (finding no abuse of

discretion where the district court ordered an "extraordinary" fee in part because "antitrust

cases, by their nature, are highly complex"); *In re Shopping Carts Antitrust Litig.*, MDL No.

451, 1983 WL 1950, at *7 (S.D.N.Y. Nov. 18, 1983) (noting that "antitrust price fixing

actions are generally complex, expensive and lengthy"); *In re Cement & Concrete Antitrust

Litig.*, MDL No. 296, 1981 WL 2039, at *3 (D. Ariz. Feb. 5, 1981) (considering the

"complexity and uncertainty of the legal and factual issues presented" in antitrust litigation).

104.    The complexity attendant to conspiracy and violation proof is compounded in

indirect purchaser litigation like this where Counsel had to do the discovery and work with

econometric models to trace the effect of the overcharge to the ultimate consumer.

Moreover, this proof had to be marshaled with an eye to the substantive requirements of

---

[65] See, e.g., Report, Part I at ¶ 66, fn. 50 and ¶ 67.

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and
Incentive Awards for Plaintiffs

antitrust and consumer protection laws in 33 states and the District of Columbia, all of which had to be reconciled with federal procedural law. In addition, discovery against all but one of the Defendants involved international discovery, a further complicating factor.

105.    Many of the issues that would have made litigating these indirect purchaser claims extremely complex carried over into the post-settlement proceedings before the Special Master. Those proceedings are covered in detail in the Report, Part I, and the complexity attendant thereto should be self-evident. Suffice it to say here that Counsel expended many hours under the supervision of the Special Master grappling with and ultimately resolving complex issues, including: (1) establishing the basic market facts relevant to a reasonable allocation of the funds to pay the anticipated claims of all indirect purchasers nationwide; (2) focusing on the products, distribution channels, final uses, and the pass-on of the alleged overcharges between indirect-purchaser-resellers and end-user/consumer groups, as well as their various characteristics and their relative percentages of DRAM commerce; and (3) resolving the issue of the nationwide scope of the proposed private entity settlement class and whether subclasses were required for persons and entities in different positions in the chain of distribution or to account for differences in the "strength" or procedural positions of proposed class members resulting from state law and/or the existence of *parens patriae* claims. After these issues were resolved, a second phase commenced which involved resolving such complex issues as whether monetary distributions could be made to household claimants, whether a *cy pres* distribution could be used for some claimants, the appropriate form of notice and procedures for calculating and evaluating claims, and other issues of claims administration.

106.    Throughout these proceedings, Counsel prepared and submitted expert reports concerning relevant market facts, focusing on the products, distribution channels,

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

and final uses of DRAM by the resellers and end-user/consumer sub-groups.[66]  The positions and issues were vigorously contested among the various groups, including differences between the expert reports from the IPP Counsel's expert, the AGs' expert, Celestica's expert, and the resellers' expert on DRAM market structure and distribution channels, and on how these would affect the calculation of any distributions to class members and allocations among various groups of indirect purchasers.

107.    The complexity attendant to resolving the post-settlement class certification, distribution and claims processing issues provides further support for an award to Counsel of the requested 25% benchmark fee.

### d. The Quality of Counsel's Work Reflects Their Skill and Experience

108.    While the best evidence of the quality of Counsel's work is the result they achieved in light of the difficulties and complexities of this litigation, some courts separately call out counsel's skill and experience as an independent factor to be considered in awarding attorneys' fees.  *See, e.g., In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 (finding that an award of one-third of the settlement fund was appropriate due to class counsel's experience representing plaintiffs in class actions); *Craft v. County of San Bernardino*, 624 F. Supp. 1113, 1120 (C.D. Cal. 2008) (considering class counsel's specialization and regard in the area of law at issue in the case in evaluating experience); *Vizcaino v. Microsoft*, 142 F. Supp. 2d 1299, 1306 (W.D. Wash. 2001) *aff'd* 290 F.3d 1043 (9th Cir. 2002) (finding that the court should consider the experience, reputation and ability of the attorneys when considering a fee award).

109.    IPP Counsel here are among some of the top-rated antitrust attorneys and firms in the country, who cumulatively have decades, if not centuries, of experience

---

[66]  Counsel for class member, Celestica, and counsel appointed by the Special Master to advocate for the reseller members of the proposed Indirect Purchaser Settlement Class also participated in these proceedings.  Compensation for these counsel will be discussed separately below.

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

litigating indirect-purchaser and direct-purchaser antitrust class actions.[67]   The Attorneys General are the chief law enforcement officers for their states charged with enforcing state and federal antitrust law to protect their economies and citizens.   The attorneys prosecuting this litigation on behalf of their respective states are among the most experienced government antitrust litigators in the country, also with decades of experience in antitrust and consumer actions on behalf of the states.[68]   The experience, reputation and skill of IPP Counsel and the AGs,' whose skill and expertise I have personally observed, fully support awarding 25% of the settlement fund.

## V.   FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING THE REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES

110.   Costs incurred in litigation are reimbursable when they are necessary to furnish effective litigation.  *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1372 (N.D. Cal. 1995).  IPP Counsel and the AGs are entitled to a reimbursement of reasonable out-of-pocket expenses for litigation and settlement.  *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *In re Quantum Health Res., Inc.*, 962 F. Supp. 1254, 1259 (C.D. Cal. 1997); *In re Brooktree Sec. Litig.*, 915 F. Supp. 193, 200 (S.D. Cal. 1996).

111.   Reimbursable expenses are those "reasonable expenses that would typically be billed to paying clients in non-contingency matters."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2007) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).  This includes, but is not limited to, reimbursement for expert fees, court fees, photocopying, telephone charges, postage charges, travel costs, computerized legal research costs, and technology expenses.  *Media Vision*, 913 F. Supp. at 1367–71; *Spicer v. Chicago*

---

[67] Gross Decl., ¶ 45; Compendium of Declarations of IPP Counsel.

[68] Varanini Decl., ¶ 2; Compendium of Declarations of AG Counsel.

*Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1264 (N.D. Ill. 1993) (technology services). Reimbursable expenses also include expenses that become necessary because of some specialized issue in a case, such as the Special Master proceedings ordered here by the Court. (Dkt. Nos. 1789, 2099, 2102 and 2126).

112. IPP Counsel are seeking $6,338,232 for reimbursement of expenses,[69] and the AGs are seeking $5,483,468.63 for reimbursement of expenses.[70] The Special Master has not performed an audit or item-by-item review of the claimed expenses and does not believe that such a review is required. The Special Master has reviewed the sixty-three (63) declarations of IPP Counsel and thirty-two (32) Attorneys General setting out the categories of the expenses incurred and finds, based upon his experience in antitrust matters, that as a general matter, the claimed expenses fall into the categories and aggregate to amounts that would be generally expected and reasonable in litigation of this magnitude and duration. On this basis, the Special Master finds that the expenses incurred herein by IPP Counsel and the AGs were reasonable and necessary to the prosecution of the case, and therefore were made for the benefit of the proposed Settlement Classes.

113. For example, the major expense item for each of the private firms was the total of their contributions into IPP Counsel's common expense fund. This fund was administered by Liaison Counsel Francis Scarpulla and was used to pay plaintiffs' economic experts and third-party vendors, principally those associated with discovery such as the firm providing document processing and electronic data storage for the millions of pages of reviewed documents, as well as court reporter and deposition transcript costs for more than 100 depositions.

---

[69] Gross Decl., ¶¶ 48-51.

[70] Varanini Decl., ¶ 23.

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

114. The Special Master finds that as with IPP Counsel, as significant portion of the expenses incurred by the AGs were expert witness fees and expenses connected with document processing. deposition discovery, and setting up computer databases.[71] Approximately 39% of the AGs' aggregate expenses are attributable to the hiring through a contract with the California Attorney General of a specialized and experienced group of paralegals and attorneys who assisted the AGs in their document handling and review in setting up supplemental document and deposition databases, and in obtaining information from California governmental entities regarding their DRAM purchases and purchasing patterns that were used in the motion of class certification, in the crafting of the AGs' allocation and distribution plan for Government Purchaser Plaintiffs, and in the California Attorney General's crafting of her plan of distribution for California's share of the Settlement Fund.[72] The Special Master has reviewed the supporting documentation in the form of the contract bills submitted by this vendor and the authorities holding that similar costs of contract paralegal and attorney services are reimbursable and finds that the billings submitted for reimbursement by the AGs fall with in the range of magnitude that are usual and expected in litigation of this scope, complexity and duration, and that the services reflected in those billings are of the nature of services generally incurred for the benefit of plaintiffs in antitrust cases. *See, e.g., SEC v. Kirkland*, 2008 WL 3981434 (M.D. Fla. 2008) (contract paralegal work which included "factual investigation . . . including locating and interviewing witnesses; . . ., and document production," could be compensated as *taxable* costs); *Chapman v. Pac. Tel. & Tel. Co.*, 456 F.Supp. 77 (C.D. Cal. 1978) (paralegal costs recoverable as *taxable* costs under certain precedent); *Computer Statistics, Inc. v. Blair*, 418

---

[71] Varanini Decl. at ¶¶ 24-25; Declaration of James A. Donahue, III in Support of Joint Motion for Attorneys' Fees and the Attorneys General's Motion for Costs, at ¶¶ 17-20, a copy of which appears as Exhibit 24 in the Compendium of Attorneys General's Declarations.

[72] Varanini Decl., ¶ 25.

F. Supp. 1339, 1351-52 (C.D. Tx. 1976) (paralegal fees could be recovered as taxable costs in antitrust case).

115.    Included in the expenses reimbursement requested by IPP Counsel is the amount of $749,086 as compensation to be paid to the law firm of Susman Godfrey, counsel for Celestica, of which $320,298 represents payments made to Nathan & Associates for the services of Dr. Russell Mangum.[73] IPP Counsel's expense request also includes compensation for Berman De Valerio, the firm appointed by the Special Master as Resellers' Allocation Counsel, in the total amount of $439,986.65, of which $186,926.65 represents fees owed to Nathan & Associates for the services of Dr. Gary French.[74] These two expenditures represent nearly 20% of IPP Counsel's requested expense reimbursement.

116.    During proceedings before the Special Master, IPP Counsel, the AGs and the Special Master determined that it would be appropriate and beneficial to secure the fullest participation possible of indirect-purchaser resellers in the allocation process. Accordingly, the Special Master sent communications to major indirect-purchaser resellers inviting them to participate through their representatives. A number of resellers attended a few hearings before the Special Master, but only, Celestica Inc., an electronics manufacturing services company, a type of reseller that manufactures computers for OEMs, participated by its counsel and its expert economist throughout the entire allocation process.[75] Since Celestica as a manufacturing services company had interests that did not necessarily align with

---

[73] In addition to the Gross Decl., this request is supported by the Declaration of James T. Southwick dated July 26, 2013. A copy of which appears as Exhibit 64 in the Compendium of IPP Counsel Declarations.

[74] In addition to the Gross Decl., this request is supported by the Declaration of Christopher T. Heffelfinger in Support of Petition for Attorneys' Fees and Reimbursement of Expenses Filed on Behalf of Berman DeValerio, dated July 11, 2013, a copy of which appears as Exhibit 65 in the Compendium of IPP Counsel Declarations.

[75] Celestica's counsel attended all the hearings and submitted several expert reports regarding pass through and the DRAM chain of distribution on behalf of resellers. See Declaration of James T. Southwick, ¶¶ 9-11.

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

"garden variety" resellers who both purchased and resold DRAM containing products, the Special Master determined that these resellers should be represented by separate counsel. On April 20, 2011, the Special Master issued a Memorandum and Order appointing the law firm of Berman DeValerio as Reseller Allocation Counsel to work in conjunction with Celestica's counsel in the allocation process.[76]

117. Since all of the work done by Susman Godfrey, Berman DeValerio and the experts they retained was post-settlement and for the express purpose of assisting the Special Master to arrive at a recommendation of a fair reasonable and adequate plan of distribution of the settlement proceeds to the proposed Indirect Purchaser Settlement Class, the Special Master finds that it is appropriate to treat their compensation as expenses. The amounts of compensation requested appear quite reasonable in light of the services that the Special Master observed them performing.

## VI. FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING THE PAYMENT OF INCENTIVE AWARDS TO THE CLASS REPRESENTATIVES

118. IPP Counsel requested that each of the ten *Petro* class representatives receive a payment of $5,000, and that the approximately 140 plaintiffs in the other state and federal cases that were coordinated with this action receive a payment of $500, for the time and effort they have dedicated to this case.

119. Courts often make incentive awards to class representatives for their service to the class, and for the risks they undertake on behalf of the class. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07–md–1827 SI, 2013 U.S. Dist. LEXIS 51271, at **103-04 (N.D. Cal. Mar. 29, 2013) (approving incentive awards of $15,000 for each of the 40 court-appointed indirect-purchaser class representatives and $7,500 for each of the eight additional named plaintiffs); *In re Apple iPhone 4 Prods. Liability Litig.*, No. 5:10–md–

---

[76] Report Part I, ¶ 23, ¶¶ 207-210 and ¶ 211; Gross Decl., ¶ 41.

2188 RMW, 2012 WL 3283432, at *5 (N.D. Cal. Aug. 10, 2012) (awarding incentive fee of $500 to each class representative); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07–md–1827 SI, 2011 WL 7575003, at *2 (Dec. 27, 2011) (approving incentive awards of $15,000 for each of the 11 direct-purchaser class representatives "in recognition of their work performed for the benefit of the [c]lass and the risks undertaken"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.* (Direct Purchaser Actions), No. M-02-1486-PJH, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) (Hamilton, J.); *Radcliffe v. Experian Info. Solutions,* 715 F.3d 1157 (9th Cir. 2013) (approving incentive awards as long as they are not conditioned on the class representative's approval of the settlement).

120.     Here, each of the ten *Petro* class representatives provided key support to this litigation by responding to discovery requests, including both written discovery and production of documents, and regularly conferring with counsel.  Moreover, most *Petro* class representatives were also subjected to in-depth depositions by Defendants (one *Petro* class representative, although never deposed because he was added to the complaint after the Court's dismissal on *AGC* grounds, served an important role as a purchaser of stand-alone DRAM and was prepared to be deposed).  The approximately 140 plaintiffs in the other state and federal indirect-purchaser actions that were coordinated with this action, though they were not deposed and were not served with written discovery, provided support to the prosecution of these indirect-purchaser actions and represented the citizens of their respective states.[77]

121.     Accordingly, the Special Master finds that the requested incentive awards of $5,000 to each of the ten *Petro* class representatives and $500 to each of the approximately 140 plaintiffs in the other state and federal cases that were coordinated with this action are fair and reasonable.

---

[77] Gross Decl., ¶¶ 55-56.

Report and Recommendations of Special Master re Attorneys' Fees, Expenses, and Incentive Awards for Plaintiffs

## VII. CONCLUSION

122.  Based on the above-stated findings and conclusions, the Special Master finds and concludes that: Counsel's requested fee award of $77,680,000, or 25% of the total Settlement Fund, is fair and reasonable and in keeping with the precedent of the Ninth Circuit.  The Special Master also finds that the IPP Counsel's requested expense reimbursement of $6,338,232 and the Attorneys General's requested expense reimbursement of $5,483,468.63 are reasonable.  Finally, the Special Master finds that the requested incentive awards of $5,000 to each class representative on the *Petro* complaint and $500 for each of the approximately 140 plaintiffs in the other state and federal cases that were coordinated with this litigation are appropriate and in keeping with Ninth Circuit precedent.

Dated: October 30, 2013               /s/ Charles B. Renfrew
                                        Hon. Charles B. Renfrew (Ret.)
                                            Special Master

EXHIBIT 8

1  Martin Quinn
2  JAMS
   Two EmbarcaderoCenter, Suite 1500
3  San Francisco, CA94111
   Telephone: (415) 982-5267
4  Fax: (415) 982-5287

5  SPECIAL MASTER

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  IN RE: TFT-LCD (FLAT PANEL)          CASE NO. M: 07-cv-01827-si
    ANTITRUST  LITIGATION
13
                                         SUPPLEMENTAL REPORT AND
14                                       RECOMMENDATION OF SPECIAL
                                         MASTER RE ALLOCATION OF
15                                       ATTORNEYS' FEES IN THE
                                         INDIRECT-PURCHASER CLASS
16                                       ACTION

17  This Order Relates to:

18  INDIRECT-PURCHASER CLASS ACTION

19

20

21

22

23      On November 9, 2012, I issued a Report and Recommendation [Dkt. No. 7127] that,

24  among other recommendations, proposed a plan to allocate about $308 million in attorneys' fees

    among the 116 law firms that represented the IPP Class.  Fifteen law firms have submitted
25
    objections to my Report with respect only to the proposed allocation of fees.  This Supplemental
26
    Report accomplishes two tasks:  it rules on the fifteen objections, providing as to each firm a
27
    rationale for the amount of fees that I recommend allocating to it; and it makes other revisions to
28
    the proposed allocation based on new information and perspectives provided to me during the

objection process. Accordingly, I have not simply ruled on the objections, but have taken a second comprehensive look at the entire allocation plan in an effort to improve its fairness and consistency.

I interviewed each of the objecting firms, mostly in person and a couple by telephone. I received and considered additional declarations, documents and analyses from them. I conducted evidentiary hearings into the existence, terms and fairness of two alleged fee-splitting agreements.

### Principles Applied

First, I determined that in dealing with the fifteen objections I would not recommend a material increase in the total amount of attorneys' fees to be awarded to Class Counsel. My recommendation to award 28.5% of the settlement fund as attorneys' fees was, I believe, correct. Therefore, the original recommended total fee award was $308,226,250; the revised recommended total award is $308,225,250. The fact that fifteen firms are unhappy with the amounts allocated to them is no reason to increase the total amount of fees to be subtracted from the class settlement fund. Therefore, to the extent that I recommended an increase in any firm's allocation, I was obliged to rob Peter to pay Paul in order to find the funds.

Second, despite the objection by a couple of firms – notably the Alioto Law Firm – to the use of lodestars and multipliers as the basic tool for making the allocation, I believe that is the best available objective measure of both the effort each firm put into the case and the contribution of each firm to the final result. The Alioto Firm's Objection [Dkt. No. 7205] states that, "the Special Master abandoned the proper, accepted, fair and reasonable percentage method and reverted instead to the unfair and unreasonable and repudiated lodestar method. In addition, he applies a multiplication (the multiplier) to the various lodestars, which "multiplier" also is discriminatory and unfair...." (Alioto Objection, 5:13-18) As an alternative, the Alioto Firm says that I should have "recommended an equal percentage distribution to the Co-Lead Counsel and a serious examination of the recommended percentages to the other counsel." (Id., 5-23-25) There are two flaws with this complaint. First, the rationale and case law cited for using the

2

"percentage-of-the-fund" approach apply to the setting of a <u>total fee</u> – and I relied precisely on that methodology to set the 28.5% total fee. That rationale and case law does not apply at all to allocating a total fee among participating firms. Second, the Alioto firm does not suggest how I would conduct a "serious examination" of the percentage to be awarded each firm without (1) looking at what the firm did (i.e., hours, billing rates), and (2) using the various factors mentioned in my Report (i.e., complexity of work, contribution to litigation fund, efficiency of work and accuracy of billing, collaborative and professional behavior) to measure the degree to which the firm contributed to the overall effort. The lodestar captures the <u>amount</u> of work; the multiplier captures, albeit imperfectly and subjectively, the <u>quality</u> of the work and contribution to the result.

Third, I did not give sufficient weight in my original allocation to the amount and timing of each law firm's contribution to the litigation fund. Some of my allocations awarded inappropriately high multipliers to firms that contributed little or nothing to the fund, or made their contributions late in the game and were thus not exposed to the risk of losing their investments. This Supplemental Report makes some downward adjustments of allocations for the non-payors and late payors, and increases the allocation of other firms that had been under-rewarded for making early, significant investments.

Fourth, for firms that engaged principally in document review my original allocation lowered their billing rates for that work to about $350/hr. and valued the contribution of document review to the overall result less highly than the more complex work of writing motion papers, taking depositions, conducting settlement negotiations and preparing for trial. What I did not adequately appreciate is that varying levels of document review took place. There was the basic coding of the millions of documents obtained from defendants and third parties into a data base, and performing an initial review for relevance. This work had to be done, and done right, since it was the foundation for gathering evidence to prove the IPP case. But some firms engaged in more sophisticated, nuanced document review by selecting documents as deposition exhibits or as evidentiary support for important motions, providing foreign language reviewers, and writing evidentiary memos for depositions. For this latter type of work, I think higher billing

rates are appropriate. I also now weight that kind of review more heavily in assessing what each firm contributed to the ultimate result.

Fifth, I realized that it was inappropriate to reduce every firm's lodestar by 20%, although that calculation was suggested by Class Counsel. Therefore, for firms I could identify in which one or two lawyers did all the work, and firms with lodestars under $100,000, and other firms that exhibited outstanding efficiency, I used their full lodestar to calculate the recommended allocation. A couple of firms, based on additional input about their billing practices, received only 10% reductions.

Sixth, and most challenging for assessing each firm's contribution, Class Counsel were not a unified group. There was the Zelle, Hoffman group and the Alioto group. Each group has its passionate adherents. Each group believes that its members contributed most to the excellent result. I have tried as fairly as possible to discount the extreme views of both camps, to appreciate that overall the IPP effort benefited from having both skill-sets, and to make my own cold-blooded assessment of what each firm contributed without being swayed by intemperate rhetoric on both sides.

Seventh, and I say this with amusement not in criticism, each of the objecting firms exhibited the mindset reflected in Garrison Keillor's fictitious town of Lake Wobegon, where "all the children are above average." Almost every firm told me that its contribution to the effort was "above average" and that it, therefore, deserved a higher-than-average multiplier. Needless to say, it is impossible to rate them all as "above average."

## Ranges of Multipliers

I grouped firms loosely into five ranges of multipliers. Multipliers vary within those ranges, and sometimes fall above or below a firm's logical range, because I made adjustments to reflect the recommendation of lead and liaison counsel, to consider payment to the litigation fund, and for having a class representative client. Where a firm fell within the range also depended on input I received, if any, about the firm's efficiency, skill, contribution to the litigation fund, and accuracy of billing records. A firm whose client was a class representative

4

got an increase of about .2 in its multiplier.  A firm that paid a maximum amount to the litigation fund received an increase; firms that paid nothing received a decrease.  The attached spreadsheet shows for each firm:  (1) its full lodestar, (2) its "lodestar less 20%," (3) its "applicable lodestar" which is either its full lodestar, its lodestar less 20% or a lower percentage, or a lodestar adjusted to eliminate billing rates over $1,000/hr., (4) the recommended allocation, which is the "applicable lodestar" times a multiplier, and (5) the multiplier applied.

Firms with lodestars under $100,000:  These firms basically did work for their own clients.  In addition they may have attended client meetings in person in San Francisco or via telephone conference calls.  But they did little, if any, document review or other work to contribute to litigating the IPP case.  I allowed multipliers in the 1.2-1.3 range to compensate them for the delay in receiving their money.  As noted above, I also applied the multiplier to their full lodestars because there is unlikely to be much wasted time at such low billing levels.

Firms that performed virtually only document review:  I applied multipliers in the 1.4-1.6 range, depending on whether they performed basic or more complex document review to the extent I could discern that from the evidence submitted to me.

Firms that performed more complex work (motions, depositions):  These firms received multipliers in the 1.7-1.9 range.

Firms that were in the core group driving the IPP case:  These firms received multipliers in the 2.0-2.75 range.

Lead and liaison counsel, and selected outstanding contributors:  These firms received higher multipliers ranging from 3.24-4.24.

## Recommendations re Objecting Firms

The Alioto Law Firm [Dkt Nos. 7186, 7190, 7205-7208, 7210, 7345, 7352, 7358-7360]

Recommending an appropriate allocation for the Alioto firm requires an assessment of both the contribution the firm made to the substance of the IPP case and Mr. Alioto's performance as co-lead counsel.  To make that assessment I have relied on interviews of defense counsel, mediators and other IPP counsel; on the evidence presented at the 12/14/12 hearing on

the alleged fee sharing agreement; on the Alioto objection and accompanying declarations; on the prior Alioto declaration [Dkt. No. 6666]; on the allocation recommendations provided to me confidentially by co-lead and liaison counsel; and on my personal observation of the performance of the Alioto firm and Mr. Alioto for the past 2 ½ years.

IPP counsel agreed in early 2008 that, in general, the Alioto firm and its "trial group" would be primarily responsible for the trial and trial preparation, the Zelle firm and other counsel would be primarily responsible for class certification and other legal issues, while the remainder of the case, including document review and organization and merits discovery would be their shared responsibility.

Mr. Alioto, a talented and experienced trial lawyer, had strong views about how to prepare and win this case. He was determined to go to trial against 2-3 defendants. He insisted that class members and their counsel from all over the country travel repeatedly to San Francisco for meetings to prepare them to testify so that the jury would know the case was about people, not lawyers. He initially insisted on deposing witnesses in Asia where he thought they would be more comfortable and talkative. He wanted to depose high-level corporate Apex witnesses first, while other lawyers preferred a bottom-up approach. Recording time contemporaneously and striving for efficiency were less important to him than the final result. Often Mr. Alioto was right, the lone correct voice crying in the wilderness, but he could also act as an unnecessary impediment to a unified effective plaintiffs' effort.

Four examples stand out. First, just before the merits expert report was due, the main IPP economic expert, Dr. Netz, insisted that part of the approximately $800,000 that was owed to her firm be paid. Mr. Alioto refused to permit any funds to be paid out of the litigation account, so co-lead counsel Francis Scarpulla had to ask other counsel to immediately pay large amounts directly to Dr. Netz's firm. I was required to intervene to help resolve that dispute. Second, after the IPP settlement funds were placed in escrow (and remained the property of defendants), Mr. Alioto questioned the investment decisions taken by Mr. Scarpulla and Ms. Schneider of the Missouri Attorney General's office, and refused to authorize reinvestment of the funds. Again I intervened. Third, the Alioto Firm never paid more than $250,000 in assessments, far less than

the firm was assessed and far less than the $700,000 paid by its co-lead counsel at the Zelle, Hoffman firm. Fourth, Mr. Alioto's own time records do not comply with the Court's directive to keep accurate daily time records. His "detailed" records lump together a number of vaguely-described activities and assign a number of hours spent over periods of one or two weeks. There is no indication of what he did each day, or any details of what he actually did. (His own records are distinguished from those of his colleagues at his firm who kept timely and proper records.)

Mr. Alioto quickly formed a small group of lawyers in whom he had confidence as trial lawyers. Often the work and weekly consultations of that group proceeded in near-isolation from the rest of the IPP effort. According to other counsel, the Alioto group's work product often did not reach the Zelle firm and was never filed in court. However, as trial approached in late 2011 and early 2012, there was substantial cooperation between some Alioto team members, such as Daniel Shulman of Gray, Plant Moody and Gary McAllister, and the Zelle firm. Alioto team members were intimately involved in preparation of witness examinations, exhibit lists and deposition designations.

Mr. Alioto and his colleagues, Theresa Moore and Thomas Pier, were heavily involved in the deposition process. Mr. Pier supervised the defense of class representative depositions all over the country, and generally managed the "client relationship." Ms. Moore had input on numerous motions, deposition preparation, expert and other meetings, settlement discussions and trial preparation, but rarely as the leader. I was informed that Mr. Alioto was the examining or defending attorney in 17 depositions and attended another 32 depositions, that Ms. Moore attended 22 depositions but never examined or defended, and that Mr. Pier examined or defended in three depositions and attended 57 others. Those figures may be imprecise, but they convey a sense of how deeply the firm was involved in the deposition process.

Mr. Alioto also made a contribution to the class in the mediation process – although often in a disruptive way. Often against the wishes of his IPP colleagues and the mediators, he insisted on all-cash settlements (no product or coupons or cy pres), he insisted that one settling defendant make four live witnesses available for trial, and he insisted on considerably higher dollar settlements than his colleagues were sometimes willing to accept. He deserves credit for being

obstinate in the best interests of the class, and for portraying the IPP Plaintiffs as ready and eager to try the case. However, his demeanor was often disruptive, uncooperative and intransigent toward the mediators and other plaintiffs' counsel.

In conclusion, the Alioto firm, Mr. Alioto in particular, and some members of the "Alioto trial group" made very real and important contributions. For leading and coordinating that effort, the firm should be rewarded. However, in his role as a co-lead counsel Mr. Alioto failed in his responsibility to cooperate, collaborate and work in tandem with other IPP counsel. His obstinancy made it necessary for other leading counsel to constantly spend time mollifying him, to work around him, and to try to find out what he and his group were doing. As noted above, on the good days pairing of the Zelle and Alioto approaches and skills worked well. But in the end, the overall contribution of the Alioto firm to the final result was considerably less than it might have been had Mr. Alioto adopted a more cooperative approach, and was materially less than the contribution of Zelle Hoffman and other lead firms.

Mr. Alioto's billing rate started at $1,000/hr. in 2007 and climbed to $1,250/hr., then to $1,500/hr. Although his personal clients may pay those rates, it is not appropriate for a court to approve rates at such elevated levels in a class case. As I have done with the portion of Mr. Scarpulla's rate over $1,000, I have recalculated the Alioto lodestar, first to take the 20% reduction that most firms incurred, and second to reduce his personal billing rate to $1,000.

The firm's full lodestar is $18,126,946. Reduced by 20%, it is $14,501,557. Adjusting Mr. Alioto's billing rate to $1,000 produces an appropriate lodestar of $11,677,895. The original allocation to the firm was $45,000,000. I conclude that an upward adjustment is appropriate to reflect Mr. Alioto's leadership of his team to prepare creatively and thoroughly for trial. Therefore, I recommend that the firm's allocation be increased to $47,000,000, which is a multiplier of 4.02 over its appropriate lodestar. However, his allocation must also reflect his failings as a co-lead counsel. These include his lack of cooperation with, and repeated intransigence toward, co-lead counsel, his failure to pay an equal share to the litigation fund, and his imprecise and vague time records. A multiplier of 4.02 is the second-highest of any firm, exceeded only by that of the Zelle firm (4.34). The difference in multipliers between the two co-

8

lead counsel is attributable not to any ranking of their legal skills or effort, but to their highly disproportionate contributions to the IPP effort in their roles as co-lead counsel.

Andrus Anderson LLP [Dkt. No. 7198]

This small (3-4 lawyers) firm performed document review, but at a relatively sophisticated level. They were one of about 12 lawyers who supervised other reviewers in performing second-level document review in connection with deposition preparation. Ms. Anderson supervised the collection of documents for six depositions – crafting search terms, checking the reviewers' work, reviewing the documents retrieved, and writing evidentiary memos. One of their reviewers was Chinese-speaking, and was thus in high demand. The firm performed some drafting work on a summary judgment motion, and did research for jury instructions and class certification. They also did some early corporate research at the request of Mr. Alioto. Their billing appears efficient with little duplication or wasted time. It had a blended hourly rate of $388. The firm paid all of its assessments ($60,000) in full and on time. Their client was a class representative.

The firm's full lodestar is $711,918. It originally was allocated $1,000,000, a 1.75 multiplier of the "lodestar less 20%" amount. Because of the firm's efficiency, contribution to the litigation fund, and its client's role as a class representative, I would increase that to $1,250,000, which is about a 1.75 multiplier of its full lodestar.

Law Offices of Brian Barry [Dkt. No. 7167]

Mr. Barry is an experienced antitrust and class action lawyer. This firm also performed largely document review, but much of it at the second-level of review to prepare for depositions. It also had a Chinese-language reviewer who worked almost full-time and was always in demand. A review of its daily billing records shows that the document reviewers were repeatedly logging 10-12 hours per day. The firm contributed $400,000 to the litigation fund, the full amount requested, of which $300,000 was contributed early in the case. Its client was not a class representative. The firm's blended billing rate was $501.

The firm's full lodestar was $4,198,469. Reduced by 20% its lodestar was $3,358,775. Its original allocation was $5,000,000, which represented a multiplier of 1.49. That amount

exceeded the recommendation of all three lead and liaison counsel. Although the firm made a major contribution to the litigation fund and performed some high-level document review, it also had a high billing rate even for sophisticated document review and its reviewers recorded unrealistic numbers of hours per day. Therefore, I recommend no change in the firm's allocation which is based on a multiplier right in the middle of the 1.4-1.6 range.

The Coffman Law Firm [Dkt. No. 7187]

This two-person Texas firm had a client who was a class representative. Its primary contribution to the case was not the performance of traditional legal work, but rather in locating and bringing into the IPP fold plaintiffs from twelve states, of whom four were ultimately named as class representatives. The firm worked on the complaints for these plaintiffs, and oversaw their consolidation into the MDL. Mr. Coffman and his client flew twice to San Francisco for trial preparation sessions. All the work was performed by Richard Coffman himself at a billing rate of $425 that was raised to $550 in 2012 (the blended rate for the entire case was $441). The firm paid an assessment of $50,000 in 2012 when it was first asked to pay. It also incurred about $5,200 in unreimbursed travel and other costs.

The firm's lodestar was $133,806. There is no reason to reduce it since there is no indication of any inefficiencies or excessive billing rates. The original allocation was $180,000, which was a 1.68 multiplier on its "lodestar less 20%" amount. In view of the firm's substantial contribution to the IPP effort by obtaining the inclusion of plaintiffs from twelve states, its representation of a class representative, the efficiency of its work, and its prompt and significant contribution to the litigation fund, I recommend that its allocation be increased to $225,000, which is about 1.7 times its full lodestar.

Cooper & Kirkham [Dkt. No. 7201]

This firm was an early, consistent and important part of the core group of lawyers leading the IPP effort. Although 45% of its contribution was to document review and deposition preparation, that does not capture the leadership role played by Ms. Kirkham in structuring the entire document discovery and ESI process. One of its attorneys was a key team leader in preparing for dozens of depositions. The firm also performed important drafting and editing

work on motions to dismiss, class certification, settlement approvals, summary judgment and Daubert motions, among others. Three of the firm's lawyers performed over 95% of the firm's work. The firm contributed $500,000 in assessments. Following the last settlements in early 2012, the Cooper firm has, along with the Zelle firm, continued to perform substantial work on obtaining settlement approval, setting up the distribution process, opposing objections – and expects to perform a large part of the future post-trial and appellate briefing and other tasks.

The firm's lodestar is $4,725,800. Its original allocation was $9,500,000, which was a 2.5 multiplier over its "lodestar less 20%" number. Given the efficiency of its staffing, it is appropriate to reduce its lodestar by only 10%, which is $4,253,220. Because of the firm's high level of experience and skill, its leadership role in strategy and settlement, its large contribution to the litigation fund, and its heavy continued role in uncompensated post-settlement work, I recommend that its allocation be increased to $10,500,000, which is about 2.5 times its "applicable lodestar".

Foreman & Brasso [Dkt. No. 7180]

Mr. Brasso is an experienced antitrust lawyer, and a long-time associate of Mr. Alioto. The work he performed was all at the direction of co-lead counsel Alioto. Although Mr. Brasso informed me that all his assignments "had to do with trial," he acknowledges that a primary assignment was to review every ECF filing and report the significant developments to Mr. Alioto. His hourly time records confirm that virtually all his time was spent reviewing ECF filings, attending meetings with other lawyers and attending the AUO criminal trial. All of this time by Mr. Brasso himself was billed at $450/hr. Less than 10% of his firm's time was spent doing any actual independent legal work. His time records confirm about 20 hours in April 2012 reviewing depositions and exhibits to locate important testimony. The firm paid assessments of $200,000. Its client was not a class representative.

Regardless of whether the work was assigned by co-lead counsel, it is inappropriate for a senior lawyer billing $450/hr. to charge for reviewing every ECF filing. That is paralegal work. Most firms in this case charged nothing for such "read and review" time. Reviewing and annotating deposition transcripts is similarly work for an experienced associate. Attending

11

meeting after meeting with other lawyers on the case is a guarantee of duplication and waste. That is not to say that meetings aren't necessary; nor is it to criticize Mr. Brasso's abilities as an antitrust lawyer. But based on my review of all the evidence submitted by Mr. Brasso, and the comments of other experienced antitrust lawyers on the case, I cannot find that Mr. Brasso's efforts did anything meaningful to move the IPP case forward.

The firm's lodestar is $1,412,150. Reduced by 20% it is $1,129,720. The original allocation awarded the firm $1,000,000 at a multiplier of .88 of its "lodestar less 20%." I recommend that the allocation not be changed.

Girardi/Keese [Dkt. No. 7192]

Mr. Girardi's participation consisted largely of high-level strategy meetings and settlement negotiations in which he played an important role. According to Exh. 2 to the firm's original declaration [Dkt. No. 6635-7], he recorded about 903 hours at a billing rate of $1,000/hr. It is difficult to tell how the firm spent the remainder of the 1,900 plus hours because its time records lack any specific detail. About 1,335 hours were spent in document review and deposition preparation, mostly at rates from $600-750/hr. Over 200 hours were spent in meetings by lawyers other than Mr. Girardi. The firm's blended billing rate was a quite high $718. The firm made a contribution of $80,000 to the litigation fund. The firm's original allocation of $3,500,000 was considerably higher than all the recommendations I received for this firm from lead and liaison counsel.

As noted below, I conclude that no weight should be given to the alleged fee-sharing arrangement between Mr. Girardi and Mr. Winters. The allocation for each of the two firms should be evaluated on its own merits without regard to the alleged agreement.

The firm's lodestar is $2,046,387. I think it is appropriate to reduce it by 20% to $1,637,110 in view of the vagueness of its billing records, the large number of hours that attorneys other than Mr. Girardi spent meeting with each other, and its very high billing rates for attorneys other than Mr. Girardi in light of the tasks they performed. Mr. Girardi made an important contribution to the settlement effort, but in other respects the firm provided almost no

information about how it contributed to the IPP effort. I recommend that the firm's allocation of $3,500,000, which is a 2.14 multiplier on its "applicable lodestar" not be changed.

Glancy, Binkow& Goldberg LLP  [Dkt. No. 7193]

This small firm, with highly-experienced antitrust lawyers, contributed a high-level document reviewer throughout the case. It also supplied a Japanese translator and an associate who performed lower-level document review. This work was performed at billing rates from $350-525/hr. The firm paid a large $250,000 assessment, of which $100,000 was paid early in the case. Its blended billing rate was a relatively high $427/hr. basically for document review of mixed complexity. Its detailed billing records show that day-after-day its reviewers logged between 7.5-9.5 hours.

Its lodestar is $1,484,959. Reduced by 20% it is $1,187,967. Its original allocation was $1,750,000, which was a 1.47 multiplier of its "lodestar less 20%" figure. Although the firm's recorded hours probably involve little duplication and were efficiently spent, its billing rates and hours recorded for document review – albeit some of it for sophisticated review – were somewhat high. Therefore, I think it is appropriate to work from the "lodestar less 20% figure." Because of its early financial commitment and employment of skilled reviewers, I recommend that its allocation be increased to the top of the 1.4-1.6 range, to $1,900,000, which is about 1.6 times its "applicable lodestar."

Gross Belsky Alonso LLP [Dkt. No. 7175]

This 7-person firm, with substantial antitrust experience, committed two high-quality full-time document reviewers to the case. The two reviewers billed at $400/hr. They performed second-level review to select exhibits for depositions and documents to support important motions. By all reports they were among the most skilled and reliable document reviewers. They also assisted with ESI issues, and with the mock trials toward the end of the case. They believe that the 20% reduction should not apply to them since there work was free of duplication and overlap. However, a review of their detailed billing records shows many days on which reviewers recorded 10-12 hours of time, which raises a question of whether all that time can

possibly be productively spent. The firm contributed $245,000 to the assessment fund, of which $240,000 was paid early in the case.

The firm's lodestar is $5,917,336, the 8th highest of all Class Counsel. The original allocation was $7,000,000, a 1.48 multiplier over the "lodestar less 20%" amount. Because of the firm's early and consistent contribution of skilled reviewers and large dollars to the IPP effort, I recommend an increase in their allocation to $7,500,000, about a 1.6 multiplier.

Morrison, Frost, Olsen, Irvine & Schwartz, LLP [Dkt. No. 7184]

This firm represented a class representative. It worked largely under the direction of the Gary McAllister firm, which was part of the Alioto trial team. Virtually all the work was performed by name partner Rodney Olsen, billing at $450/hr. throughout the case. Their work consisted largely of preparing for and attending depositions (in person and by telephone) prepared to question if necessary, but in the end not questioning any witnesses. Mr. Olsen traveled from Kansas to Chicago and Omaha for two of those depositions. He defended his client's deposition. Mr. Olsen and his client traveled twice to San Francisco to attend client meetings. The firm paid a $15,000 assessment, which was all it was asked to pay. The firm incurred another $25,000 in unreimbursed travel and other expenses. Mr. Olsen believes the firm's billings should not be reduced by 20% since he did the work without overlap or duplication.

The firm's lodestar was $365,135. Its original allocation was $490,000, which was a 1.68 multiplier of its "lodestar less 20%" amount. In light of the relative efficiency of the firm's work and the fact that it did not increase its billing rate for five years, I conclude that no reduction should be made in its lodestar. The firm worked on deposition preparation, not document review, its client was a class representative, and it paid its full assessment. Therefore, I recommend that its allocation be increased to $620,000, which is a 1.7 multiplier of its full lodestar.

Murray & Howard [Dkt. No. 7173]

Derek Howard was one of the core group of lead lawyers who worked primarily with the Alioto team. He practiced at Murray & Howard before moving to Minami, Tamaki. He was

14

involved on an almost daily basis for the entire length of the IPP case, and made major contributions to strategy, coordination among lawyers, sophisticated legal work and settlement negotiations. The firm took a significant risk in assuming such a large role in this case. An important contribution was to act as a bridge between the Alioto and Zelle Hoffman teams. Mr. Howard believes that a 20% reduction in the firm's billings is inappropriate as over 60% of the work was done by him personally without duplication or overlap with other lawyers. I examined a sampling of the firm's daily billing records to confirm that the time was kept meticulously and the tasks were largely actual legal work, not mere review of e-mails and court filings. However, I also noted some overlap of work: reading each other's e-mails, reviewing drafts of documents, and the like. Therefore, I do think it appropriate to apply the 20% reduction to the lodestar. The firm paid $75,000 in assessments, on time and in the full amount requested. Its client was a class representative.

The firm's lodestar is $1,750,993. Its original allocation was $2,900,000, a 2.07 multiplier over its "lodestar less 20%" amount. Because of the leadership role taken by Mr. Howard and the assessment contribution, I would recommend an increase in the firm's allocation to $3,150,000, which is a 2.25 multiplier of the "applicable lodestar."

Steyer Lowenthal Boodrookas Alvarez & Smith LLP

The Steyer firm was one of the earliest and most consistent members of the core group of firms that provided leadership and high-level work for the case. The firm was one of the primary drafters and editors of class certification and summary judgment motions, among others. Jill Manning of the firm was one of the leaders in structuring and managing the overall document retrieval effort. Steyer lawyers examined witnesses at several depositions, and worked on the mock trials and other trial preparation efforts. However, approximately 63% of its work was spent on document review and deposition preparation. Its blended billing rate was $453. The firm paid $481,000 in assessments.

The firm's lodestar was $9,656,038, the 3rd highest of any IPP firm. It original allocation was $14,500,000, a 1.88 multiplier of its "lodestar less 20%" figure. Because of the firm's key leadership role, its consistent work on motions and locating documents, its large contribution to

the litigation fund, and the recommendations of a majority of the lead/liaison counsels, I recommend that its allocation be increased to $17,000,000, a multiplier of about 2.25 on the "applicable lodestar" figure.

Trump, Alioto, Trump & Prescott LLP [Dkt. No. 7202]

This experienced antitrust firm performed generally low-to-medium level document review, but provided a Japanese-language reviewer who was in great demand. Their client was a class representative. They made a large $250,000 contribution to the litigation fund early in the case. The recommended award was higher than the amounts recommended by all lead and liaison counsel. I recommend that the award of $4,500,000, which is a 1.7 multiplier of its "lodestar less 20%," be increased to $4,750,000, which is a 1.8 multiplier, in order to recognize its contribution of funds, its class representative client, and the specialized review talents.

Whitfield, Bryson & Mason LLP [Dkt. No. 7196]

This small District of Columbia firm performed largely at the request of the Goldman Scarlato firm. The work consisted almost entirely of document review, some of which was done by a partner at $570/hr. but associates also performed review at appropriate billing rates. A partner made four trips to San Francisco for meetings about discovery and strategy. The firm also prepared an extensive memo on the shape of the conspiracy and worked on jury instructions. Its blended billing rate was $318. It contributed $15,000 to the litigation fund.

The firm's full historic lodestar was $279,216. Its original allocation was $260,000, which was a 1.16 multiplier of its "lodestar less 20%" amount. The firm did not make a major contribution to the IPP effort, but it did what it was asked, appeared to have done it efficiently, and made some contribution to the litigation fund. I recommend that its allocation be increased to $325,000, a 1.45 multiplier of its "lodestar less 20%" amount.

Lingel H. Winters P.C. [Dkt. No. 7168]

Mr. Winters is a one-man firm who became part of the Alioto team. At the request of Mr. Alioto he was tasked with reviewing every ECF filing, and evidently reporting on the significant ones to Mr. Alioto. I note that this is precisely the same task for which Mr. Brasso billed. Mr. Winter's daily time records (handwritten so almost impossible to read) contain line

after line with .25 hr. charges to read ECF filings. He also recorded time for a small amount of document review, and many meetings with other counsel. His other major contribution to the case was to attend the AUO criminal trial virtually every day, and then to debrief the day's testimony at a nearby restaurant with Mr. Brasso, Mr. Alioto and Ms. Moore of the Alioto Law Firm who also attended the AUO trial. Mr. Winter's billing rate ranged from $650-950/hr. and the firm had a blended rate for the entire case of $877, one of the highest of any firm.

The firm's lodestar was $2,169,630. Its original allocation was $1,000,000, a .58 multiplier on its "lodestar less 20%" figure. I cannot discern any meaningful contribution that Mr. Winters brought to the IPP effort. To assign one expensive lawyer to review ECF filings is bad enough, but to ask two to do so is just bad case management. Moreover, it showed poor judgment for Mr. Winters to charge about $200 every time he reviewed an ECF filing. Similarly, for one or two IPP lawyers to attend the entire AUO trial had value. For four or more to do so cannot be justified with any compensation. I recommend that no change be made to the Winters allocation.

### Alleged Fee-Splitting Agreements

Since I issued my Report, two alleged fee-splitting arrangements have been brought to my attention: Mr. Alioto contended that he and Francis Scarpulla of Zelle Hoffman had agreed to split the total fees 50-50 between the "Alioto team" and the "Zelle Hoffman team." Mr. Winters contended that he and Mr. Girardi had agreed to split 50-50 the fees awarded to their two firms. I have held brief fact-finding hearings into both these situations.

Lawyers who enter into a fee-splitting agreement in a class action must inform the class action court of the terms of the agreement when it is made, or at least at the time of filing a petition for approval of a settlement. *In re "Agent Orange" Product Liability Litigation*, 818 F.2d 216, 226 (2d Cir. 1987) ["counsel must inform the court of the existence of a fee-sharing agreement at the time it is formulated."]; *Wanninger v. SPNV Holdings, Inc*, No. 85-C-2081, 1994 WL 285071 at *2 (N.D. Ill. June 24, 1994) [counsel are required to disclose fee agreements to court "at the first opportunity"; failure to do so is not dispositive, but a factor weighing against

enforcement]; *Mark v. Spencer*, 166 Cal.App.4th 219 (2008) [disclosure required at time the parties seek approval of the settlement].

A court must scrutinize an alleged fee-sharing arrangement as part of its consideration of the fairness of an attorneys' fee award that is part of a class settlement. *In re FPI/Agretech Securities Litigation*, 105 F.3d 469 (9th Cir. 1997); *Alexander v. Chicago Park Dist.*, 927 F.2d 1014 (7th Cir. 1991) However, the court is not obliged to enforce the fee-sharing arrangement, and should not do so if it would produce a result that is disproportionate to the amount of work and contribution each firm made to the class recovery. *In re "Agent Orange" Prod.Liab.Litig.*,818 F.2d at 222; *In re FPI/Agritech Sec. Litig.*, 105 F.3d at 474 [the "relative efforts of, and benefits conferred upon the class by, class counsel are proper bases for refusing to approve a fee allocation proposal."] Therefore, the Court is not constrained by either of these fee-sharing arrangements. It may, indeed must, allocate fees in accordance with the relative contributions that each firm made to obtaining the class recovery.

Alioto-Zelle Issue

Basic facts. I find that the following facts are true based on the evidence submitted at the 12/14/12 fact-finding hearing.

Mr. Alioto contended that in March 2008 he and co-lead counsel Francis Scarpulla of the Zelle Hoffman firm agreed that the total fees awarded by the Court would be divided 50-50, and that each of them would distribute his half to attorneys working on their respective "teams," subject to Court approval. Mr. Scarpulla acknowledged that this was their original concept, provided that each "team" did roughly equal work and contributed roughly equal amounts to the litigation fund, provided that Liaison Counsel Jack Lee agreed, provided that all Class Counsel and the State Attorneys General agreed to this approach, and provided that the Court accepted this method of division. Mr. Scarpulla testified that on two or three occasions he had explained those conditions to Mr. Alioto. There was no evidence that Mr. Alioto ever acknowledged or agreed to the conditions that Mr. Scarpulla said he insisted upon.

In March 2011, Mr. Scarpulla declared the alleged agreement to be ineffective because, according to him, the Alioto firm and "team" had not performed half the work and had not made

half the contributions to the litigation fund, Mr. Lee had not agreed to the arrangement, and no consent had been obtained from any other Class Counsel or the State Attorneys General. The two men met on March 9, 2011 with former federal district judge, Stephen Larson, whom they both respected and who had worked on the case for several years as part of the Girardi/Keese firm. Following the meeting, Judge Larson described in an e-mail (Alioto Exh. 33) the agreed allocation of work between the two groups (Zelle Hoffman to be primarily responsible for class certification and related issues, and the Alioto firm to be primarily responsible for pre-trial preparation and trial, with the remainder of the case to be a shared responsibility), and stated, "Although there has not been nor is there any actual agreement concerning the distribution of any potential attorneys' fees in this case, you both clearly indicated that you envision that, provided that everyone continues to fulfill their respective responsibilities, any fees awarded or approved by the Court should reflect the fair division of labor described above." Judge Larson testified that neither Mr. Scarpulla nor Mr. Alioto ever objected to his statement that no fee-sharing agreement existed.

The Court was not advised of this purported fee-sharing agreement when it was made in 2008, when IPP Plaintiffs petitioned for approval of the first round of settlements, when they petitioned for approval of Round 2 settlement, or when they petitioned the Court for a fee award. Nor did Mr. Alioto mention the 50-50 agreement in his Declaration in support of his Application for Attorneys Fees [Dkt. No. 6666] filed on 9/7/12. Nor did Mr. Alioto tell me about the 50-50 agreement when lead and liaison and State AG counsel met with me on September 12, 2012 to plan the fee allocation process. Nor did he mention it in his 10/2/12 confidential written recommendation to me regarding how fees should be allocated. Mr. Alioto first informed me of the purported agreement in an e-mail on October 9, 2012.

On August 29, 2012, the Court appointed me as Special Master to recommend an award of fees and an allocation among Class Counsel [Dkt. No. 6580]. The Court did not follow the process employed in the Direct-Purchaser settlement of allowing lead counsel to agree on a recommended allocation of fees.

Conclusions: I conclude that: (1) the existence and terms of the alleged agreement have

not been proven by a preponderance of the evidence; (2) any agreement would be unenforceable in any event; and (3) the Court should give no weight to the alleged agreement since a 50-50 division of fees between the two groups of Class Counsel would be disproportionate to the amount of work and their respective contributions to obtaining the class recovery.

I conclude that Mr. Alioto has not carried his burden of demonstrating that the parties had a meeting of the minds on a definitive agreement. Mr. Scarpulla agreed to a 50-50 division, but only subject to several conditions inherent in class action litigation. Mr. Alioto never accepted those conditions. Therefore, they did not agree on material terms of the alleged agreement. This conclusion is the same as Judge Larson's conclusion in March 2011 that "there has not been nor is there any actual agreement concerning the distribution of any potential attorneys' fees in this case." Moreover, there were massive gaps and rampant ambiguity in the "agreement." First, it was an oral understanding, although each of them alluded to it in various written communications. Second, there was no understanding as to which firms were in the "Alioto group," which in the "Zelle group," or what was to become of the dozens of firms that were not in either group. Mr. Alioto presented at the hearing (Exh. 47) a listing of the two groups, which he conceded he had just prepared, had never shown Mr. Scarpulla or the Court, and for which he had never obtained consent from any other firm. Therefore, the 50-50 concept was too indefinite to have ripened into an agreement.

Even if a definitive agreement had existed, it would have faced insurmountable hurdles to being enforceable. First, the Ninth Circuit has stated that fee-sharing arrangements among class counsel are not enforceable contracts. *In re FPI/Agretech Securities Litigation*, 105 F.3d at 473. Second, there is at least a substantial question as to whether the alleged agreement would violate California law because it was never approved by any of the clients in the IPP case. California Rules of Professional Conduct 2-200(A). Third, the failure to disclose the 50-50 "agreement" to the Court at least at the time approval was sought for the settlements or for an award of attorneys' fees may bar enforcement. Finally, as noted above, the Court would not be bound by a fee-sharing arrangement if it were disproportionate to the effort and results obtained by the firms involved.

Basically, the co-lead counsel agreed on a broad concept in 2008 on the assumption that the Court would permit them to determine how fees should be allocated, subject to overall Court supervision. That assumption proved to be wrong. The Court, having concluded that co-lead counsel had a history of disagreements, determined to make its own allocation with the assistance of a Special Master. Given this different approach, what effect, if any, should the Court give to the original 50-50 concept? I believe that it would be inappropriate to divide the fees equally among two groups of firms. Although at the top level a few lead firms worked with Alioto and a few others worked with Zelle, there is no rational basis at all for lumping the remaining 100 or so firms into one group or another. Moreover, a few important firms worked with both Zelle and Alioto, so assigning them to one group or another would be purely arbitrary. Therefore, I totally reject as unworkable and unfair the concept of dividing the total fees into two halves. (Mr. Alioto presented at the 12/14/12 hearing a pie chart showing that my original Report had allocated 68% of the fees to the Zelle group and only 32% to the Alioto group. Since I had no knowledge when I prepared the Report which firms supposedly belonged in one group or the other, my original allocation was certainly not conscious. And a disparate allocation was hardly unexpected, since the lodestar of the supposed Zelle group was far larger than that of the supposed Alioto group.)

Moreover, I believe, for the reasons stated in this Supplemental Report, that the contributions and work performed by the firms loosely associated with Zelle were greater than that of the firms loosely associated with Alioto. And some of the greatest contributions were made by firms that worked cooperatively with both groups. An equal division of fees between the Alioto firm and the Zelle firm, or between the Alioto group and the Zelle group, would be disproportionate to the work performed by the individual firms and their respective contributions to the excellent class settlements. Instead, I have recommended allocations based on the evidence submitted about the work and contribution of each individual firm without regard to the orbit in which it worked.

Winters-Girardi Issue

Basic Facts: I find that the following facts are true based on the evidence submitted at

the 12/13/12 fact-finding hearing.

On or about June 25, 2007, Lingel Winters and Thomas Girardi entered into a written agreement that stated, "Your firm [Girardi] will advance the costs and I [Winters] will refer the client for joint representation. After reimbursement of costs, the attorneys fees will be shared equally – 50% to your firm 50% to mine." The written agreement was signed by both lawyers and approved in writing by their client, EMW, Inc. (Winters, Exh. 4B) On or about August 9, 2007, Mr. Girardi confirmed the agreement in a voicemail to Mr. Winters stating, "I'm pretty sure I signed an agreement with you, [that] we're going to share fees equally. That being the case, it doesn't make too much difference how much work we do and stuff like that." (Winters, Exh. 10.

On June 12, 2012, Mr. Girardi repudiated the agreement in a letter stating, "As you know, I love you; however, this is not a personal injury case. We'll be happy to share equally any sums over our hourly submission." (emphasis added) On August 2, 2012, Mr. Girardi affirmed the repudiation in a letter stating, "Let's see if I get this correct. We put in thousands of hours and hundreds of thousands of dollars on a case in which fees are based on hours not contingency. You want half. Good luck!" (Winters Exh. 28).

Mr. Winters submitted a lodestar of $2,169,630. My original Report recommended that he receive an allocation of $1,000,000. Mr. Girardi submitted a lodestar of $2,046,387. I recommended that he receive an allocation of $3,500,000. Both lawyers objected to my Report and requested a higher allocation.

At the 12/13/12 fact-finding hearing, Mr. Girardi advanced three reasons why the agreement should not be enforced. First, Mr. Alioto had invited him to participate in the case before Mr. Winters did. Second, he intended that the phrase "after reimbursement of costs" in Exhibit 4B really meant "after reimbursement of costs and my normal hourly fees." Third, he intended the agreement to apply only to the work performed specifically for their client, EMW, Inc., not for the class as a whole.

Conclusion: There was an ascertainable, definite agreement to share equally all fees awarded to the two firms. Mr. Girardi's undisclosed subjective intentions regarding the meaning

of the agreement not only contradict the written terms, but are irrelevant to determine its meaning. Cal. Civil C. §1639. Mr. Girardi's disavowal of the agreement was unjustified.

However, for the reasons stated above with respect to the Alioto-Scarpulla issue, the contract is not enforceable in this context, nor is it binding on the Court. The contract was not disclosed to the Court until after the petitions for approval of the settlements and for an award of attorneys' fees. Neither party disclosed it to the Court in their respective declarations submitted with the petition for attorneys' fees. [Dkt. Nos. 6635-7, 6635-6]

For the reasons stated above in the discussions of the allocations to the two firms, an equal allocation of fees would be highly disproportionate to the work performed and their respective contributions to the class recovery. Mr. Winters work was of little value to the class. Mr. Girardi's efforts in connection with mediation and settlement were of considerable value.

### Other Adjustments to the Allocation

Lodestars less than $100,000: I reversed the 20% discount for these firms since the low number of hours makes it likely that they were efficiently spent. I adjusted multipliers as necessary to confirm to the guidelines stated above and to make them more consistent.

Consistency adjustments: I adjusted allocations by small amounts where necessary to make the resulting multipliers more consistent with the guidelines stated above.

Gray Plant Moody: By all accounts, Dan Shulman of this firm did a superb job in many important aspects of the case. He took the lead in many important depositions; he was intimately involved in discovery and pre-trial strategy; he personally prepared much of the input to pre-trial documents such as witness examinations, exhibits lists and the like. His rates and hours were strikingly economical. However, the original recommended award of $14,000,000 represented a multiplier of 5.22 over the "lodestar less 20%" figure. This multiplier would be substantially in excess of any other firm, and in my judgment cannot be justified. I have reversed the 20% discount for his firm in view of his obvious efficiency, and applied a multiplier of 3.73, for a revised award of $12,500,000. This multiplier is the third highest of any firm, lower only than that for the Alioto and Zelle firms. It is fully justified, but the original award was

23

disproportionately high.

Straus & Boies:  This firm was one of the core group of firms that took major responsibility throughout the case.  Two of its clients were class representatives.  It led and managed the foreign language document review process, drafted portions of key motions, prepared witness memos for depositions, ran the translation objection discussions, took two expert depositions, and was heavily involved in preparing pretrial submissions.  The firm made a maximum and early payment to the litigation fund.

Its full lodestar was $5,930,764.  Adjusted by 20%, the lodestar was $4,744,611.  Its original allocation was $14,000,000, which was a multiplier of 2.95 over the "lodestar less 20% figure."  This multiplier was in excess of the "core" multiplier range of 2.0-2.75, and was disproportionate to that of other firms doing equivalent work.  Therefore, I recommend reducing the allocation to $13,000,000, for a multiplier of 2.74, the second highest multiplier in the "core" group of firms after Gray Plant Moody.

Zelle Hoffman

The Zelle Hoffman firm, and co-lead counsel Francis Scarpulla, were the engines that primarily drove the IPP effort to a successful conclusion.  Without meaning to detract from the pre-trial efforts of the Alioto firm and its colleagues on the trial side, I note that the case was not won at trial.  The case was won in a series of mediated settlements.  It was primarily the Zelle firm that led the strategy and made it possible to obtain the victories that enabled the case to be successfully settled.  The Zelle firm organized and coordinated the IPP group, and harmonized the IPP effort with the Direct-Purchaser Plaintiffs, the Direct Action Plaintiffs and the State Attorneys General.  The Zelle firm led the document discovery, translation and organization effort.  The Zelle firm spearheaded the victory in class certification, and the success in winning dozens of summary judgment motions.  The Zelle firm provided the IPP's lead economic expert, Dr. Netz, and coordinated her work through deposition and *Daubert* motions.  During mediation, Mr. Scarpulla set the tone and led the strategy to obtain the excellent settlements.  The Zelle firm will also take the lead in defending the settlement at both the district and appellate courts, and in

24

implementing the distribution of funds to the class and counsel, for which it will receive no additional compensation.

This is not to suggest that the Zelle firm, or Mr. Scarpulla, did it all. As noted above, a core group of lawyers from both teams did immense amounts of productive work, as did lawyers from dozens of less-active participating firms. In many respects the Zelle lawyers played an administrative and coordinating role, rather than doing the hardcore legal work. But they were the indispensable force that made the IPP effort all work cohesively. As co-lead counsel, Mr. Scarpulla played precise the role expected of him, and according to every lawyer and mediator I spoke to, did so superbly. A not insignificant part of his job was to mesh the efforts of the two teams of lawyers, and to mollify the demands and objections of his co-lead counsel.

The firm's full lodestar was $22,269,334. Its time records were kept meticulously. It made a very large $700,000 contribution to the litigation fund. Reduced by 20%, its lodestar was $17,815,467. For the year 2011 Mr. Scarpulla billed at $1,250 an hour. Reducing that to $1,000 produces an applicable lodestar of $17,286,717. I originally recommended an award of $80,000,000, which would be a multiplier of 4.62 over the applicable lodestar. This, I believe, is excessive and disproportionate to the allocations and multipliers for other key firms. Therefore, I recommend reducing the firm's allocation to $75,000,000, which represents a multiplier of 4.34 over the applicable lodestar. This is the highest allocation and highest multiplier received by any firm – and deservedly so.

### Concluding Recommendations

I recommend that the total fee award be $308,225,250, which is 28.5% of the $1.1 billion settlement. I recommend that this amount be allocated among IPP counsel as shown on the attached spreadsheet. I further recommend that no additional compensation be allowed for post-settlement work. This is intended to be a full and final resolution of issues relating to attorneys' fees in the IPP case.

Dated: December 18, 2012

Martin Quinn, Special Master

25

**EXHIBIT A TO SUPPLEMENTAL REPORT AND RECOMMENDATION OF SPECIAL MASTER RE ALLOCATION OF ATTORNEYS FEES IN THE INDIRECT-PURCHASER CLASS ACTION**

| Firm Name | Lodestar | Lodestar minus 20% | Applicable Lodestar | Original Recommended Award | Revised Recommended Award | Multiplier of Applicable Lodestar |
|---|---|---|---|---|---|---|
| Zelle Hofmann et al. | $22,269,334 | $17,815,467 | $17,286,717 | $80,000,000 | $75,000,000 | 4.34 |
| Alioto Law Firm | $18,126,946 | $14,501,557 | $11,677,895 | $45,000,000 | $47,000,000 | 4.02 |
| Steyer Lowenthal | $9,656,038 | $7,724,830 | $7,724,830 | $14,500,000 | $17,000,000 | 2.20 |
| Minami Tamaki | $7,716,017 | $6,172,813 | $6,172,813 | $20,000,000 | $20,000,000 | 3.24 |
| Gustafson Gluek | $7,694,044 | $6,155,235 | $6,155,235 | $15,000,000 | $15,000,000 | 2.44 |
| Lovell Stewart | $6,482,537 | $5,186,030 | $5,186,030 | $10,000,000 | $10,500,000 | 2.02 |
| Straus & Boies | $5,930,764 | $4,744,611 | $4,744,611 | $14,000,000 | $13,000,000 | 2.74 |
| Gross Belsky Alonso | $5,917,336 | $4,733,869 | $4,733,869 | $7,000,000 | $7,500,000 | 1.58 |
| Cooper & Kirkham | $4,725,800 | $3,780,640 | $4,253,220 | $9,500,000 | $10,500,000 | 2.47 |
| Barry, L/O Brian | $4,198,469 | $3,358,775 | $3,358,775 | $5,000,000 | $5,000,000 | 1.49 |
| Goldman Scarlato | $3,825,835 | $3,060,668 | $3,060,668 | $6,000,000 | $6,000,000 | 1.96 |
| Gray Plant Mooty | $3,349,892 | $2,679,913 | $3,349,892 | $14,000,000 | $12,500,000 | 3.73 |
| Trump, Alioto | $3,278,644 | $2,622,915 | $2,622,915 | $4,500,000 | $4,750,000 | 1.81 |
| Reinhardt Wendorf | $3,198,534 | $2,558,827 | $2,558,827 | $5,500,000 | $5,500,000 | 2.15 |
| McCallister, Gary | $2,854,553 | $2,283,642 | $2,283,642 | $6,000,000 | $6,000,000 | 2.63 |
| Winters, Lingel H. | $2,169,630 | $1,735,704 | $1,735,704 | $1,000,000 | $1,000,000 | 0.58 |
| Girardi Keese | $2,046,387 | $1,637,110 | $1,637,110 | $3,500,000 | $3,500,000 | 2.14 |
| Mogin Law Firm | $1,952,306 | $1,561,845 | $1,561,845 | $3,000,000 | $3,000,000 | 1.92 |
| Gergosian & Gralewski | $1,946,170 | $1,556,936 | $1,556,936 | $3,000,000 | $3,000,000 | 1.93 |
| Schubert Jonckheer | $1,832,853 | $1,466,282 | $1,466,282 | $3,000,000 | $3,000,000 | 2.05 |
| Murray & Howard | $1,750,993 | $1,400,794 | $1,400,794 | $2,900,000 | $3,150,000 | 2.25 |
| Saunders Doyle | $1,550,082 | $1,240,066 | $1,240,066 | $3,250,000 | $3,250,000 | 2.62 |
| Green & Noblin | $1,519,801 | $1,215,841 | $1,215,841 | $2,500,000 | $2,500,000 | 2.06 |
| Glancy Binkow | $1,484,959 | $1,187,967 | $1,187,967 | $1,750,000 | $1,900,000 | 1.60 |
| Foreman & Brasso | $1,412,150 | $1,129,720 | $1,129,720 | $1,000,000 | $1,000,000 | 0.89 |
| Kirby Mcinerney | $1,357,310 | $1,085,848 | $1,085,848 | $2,500,000 | $2,300,000 | 2.12 |
| Miller Law | $1,162,964 | $930,371 | $930,371 | $1,750,000 | $1,750,000 | 1.88 |
| Sharp McQueen | $985,320 | $788,256 | $788,256 | $1,600,000 | $1,500,000 | 1.90 |
| Johnson & Perkinson | $809,825 | $647,860 | $647,860 | $800,000 | $900,000 | 1.39 |
| Liberty Law Office | $796,191 | $636,953 | $636,953 | $1,000,000 | $1,000,000 | 1.57 |
| Furth Firm | $781,444 | $625,155 | $625,155 | $900,000 | $900,000 | 1.44 |
| Hulett Harper Stewart | $770,709 | $616,567 | $616,567 | $1,000,000 | $1,000,000 | 1.62 |
| Boesche McDermott | $770,430 | $616,344 | $616,344 | $850,000 | $770,000 | 1.25 |
| Narine, L/O Krishna | $719,993 | $575,994 | $575,994 | $900,000 | $900,000 | 1.56 |
| Andrus Anderson | $711,918 | $569,534 | $711,918 | $1,000,000 | $1,250,000 | 1.76 |
| Schack, L/O Alexander | $700,875 | $560,700 | $560,700 | $850,000 | $850,000 | 1.52 |
| Kralowec Law Group | $629,858 | $503,886 | $503,886 | $900,000 | $925,000 | 1.84 |
| Chavez & Gertler | $570,408 | $456,326 | $456,326 | $800,000 | $770,000 | 1.69 |
| Amamgbo & Assoc. | $555,685 | $444,548 | $444,548 | $390,000 | $390,000 | 0.88 |
| Westlow, Edward J. | $540,585 | $432,468 | $432,468 | $425,000 | $475,000 | 1.10 |
| Rodanast | $519,986 | $415,989 | $415,989 | $625,000 | $625,000 | 1.50 |
| McManis Faulkner | $498,065 | $398,452 | $398,452 | $425,000 | $425,000 | 1.07 |
| Shepherd, Finkelman | $435,580 | $348,464 | $348,464 | $525,000 | $525,000 | 1.51 |
| Bonnett, Fairbourn | $434,149 | $347,319 | $347,319 | $580,000 | $580,000 | 1.67 |

**EXHIBIT A TO SUPPLEMENTAL REPORT AND RECOMMENDATION OF SPECIAL MASTER ALLOCATING ATTORNEYS FEES IN THE INDIRECT-PURCHASER CLASS ACTION**

| Firm Name | Lodestar | Lodestar minus 20% | Applicable Lodestar | Original Recommended Award | Revised Recommended Award | Multiplier of Applicable Lodestar |
|---|---|---|---|---|---|---|
| McCallum, Methvin | $407,078 | $325,662 | $325,662 | $500,000 | $500,000 | 1.54 |
| Papale, L/O Lawrence | $389,270 | $311,416 | $311,416 | $400,000 | $400,000 | 1.28 |
| Jenkins Mulligan | $375,480 | $300,384 | $300,384 | $550,000 | $500,000 | 1.66 |
| Morrison, Frost, Olsen | $365,135 | $292,108 | $365,135 | $490,000 | $620,000 | 1.70 |
| Keller Rohrback | $354,444 | $283,555 | $283,555 | $450,000 | $450,000 | 1.59 |
| Durrette Crump | $344,028 | $275,222 | $275,222 | $300,000 | $300,000 | 1.09 |
| Messina Law Firm | $331,400 | $265,120 | $265,120 | $750,000 | $750,000 | 2.83 |
| Freedman Boyd | $304,111 | $243,289 | $243,289 | $550,000 | $500,000 | 2.06 |
| Cohen & Malad | $302,202 | $241,762 | $241,762 | $450,000 | $450,000 | 1.86 |
| Boone, John | $283,150 | $226,520 | $226,520 | $675,000 | $675,000 | 2.98 |
| Whitfield Bryson | $279,216 | $223,373 | $223,373 | $260,000 | $325,000 | 1.45 |
| Perkins, L/O Jeffrey K. | $220,850 | $176,680 | $176,680 | $175,000 | $185,000 | 1.05 |
| McGowan Hood | $216,325 | $173,060 | $173,060 | $265,000 | $265,000 | 1.53 |
| Hellmuth & Johnson | $210,708 | $168,566 | $168,566 | $190,000 | $190,000 | 1.13 |
| Devereux Murphy | $191,234 | $152,987 | $152,987 | $235,000 | $245,000 | 1.60 |
| Terrell Law Group | $182,925 | $146,340 | $146,340 | $225,000 | $200,000 | 1.37 |
| Ekenna Law Firm | $168,363 | $134,690 | $134,690 | $100,000 | $145,000 | 1.08 |
| Nwajei, L/O Lawrence | $155,450 | $124,360 | $124,360 | $16,000 | $16,000 | 0.13 |
| Damrell Nelson | $153,855 | $123,084 | $123,084 | $200,000 | $200,000 | 1.62 |
| Wites & Kapetan | $139,124 | $111,299 | $111,299 | $170,000 | $170,000 | 1.53 |
| Futterman Howard | $137,894 | $110,315 | $110,315 | $170,000 | $170,000 | 1.54 |
| Emerson Poynter | $137,269 | $109,815 | $109,815 | $165,000 | $165,000 | 1.50 |
| Coffman Law Firm | $133,806 | $107,045 | $133,806 | $180,000 | $225,000 | 1.68 |
| Brill, L/O Thomas H. | $128,590 | $102,872 | $102,872 | $160,000 | $165,000 | 1.60 |
| Aylstock, Witkin Kreis | $117,462 | $93,970 | $93,970 | $150,000 | $150,000 | 1.60 |
| Parish & Small | $113,250 | $90,600 | $90,600 | $130,000 | $110,000 | 1.21 |
| Pastor Law Office | $111,395 | $89,116 | $89,116 | $130,000 | $130,000 | 1.46 |
| LaCava Law | $108,045 | $86,436 | $86,436 | $130,000 | $130,000 | 1.50 |
| Guerrieri, Clayman | $96,099 | $76,879 | $96,099 | $120,000 | $135,000 | 1.40 |
| Kassof, L/O Sherman | $82,693 | $66,154 | $82,693 | $85,000 | $90,000 | 1.09 |
| Dombroski, James M. | $76,615 | $61,292 | $76,615 | $80,000 | $85,000 | 1.11 |
| Smith Dollar | $75,655 | $60,524 | $75,655 | $85,000 | $80,000 | 1.06 |
| Wyatt & Blake | $75,430 | $60,344 | $75,430 | $90,000 | $110,000 | 1.46 |
| Spiva Law Firm | $60,230 | $48,184 | $60,230 | $70,000 | $85,000 | 1.41 |
| Melton Law Firm | $52,038 | $41,630 | $52,038 | $60,000 | $60,000 | 1.15 |
| Mallison & Martinez | $50,697 | $40,558 | $50,697 | $55,000 | $58,000 | 1.14 |
| Roberts Law Firm | $50,089 | $40,071 | $50,089 | $60,000 | $65,000 | 1.30 |
| Carey, Danis & Lowe | $50,010 | $40,008 | $50,010 | $5,000 | $5,000 | 0.10 |
| Lanham Blackwell | $46,210 | $36,968 | $46,210 | $60,000 | $70,000 | 1.51 |
| Davis, Unrein, Biggs | $44,240 | $35,392 | $44,240 | see Frieden | see Frieden | |
| Michaels Ward | $40,159 | $32,127 | $40,159 | $47,000 | $53,000 | 1.32 |
| Sachs Waldman | $38,737 | $30,990 | $38,737 | $48,000 | $60,000 | 1.55 |
| Mager & Goldstein | $35,620 | $28,496 | $35,620 | $35,000 | $40,000 | 1.12 |
| Frankovitch, Anetakis | $33,770 | $27,016 | $33,770 | $45,000 | $52,000 | 1.54 |

**EXHIBIT A TO SUPPLEMENTAL REPORT AND RECOMMENDATION RE SPECIAL MASTER'S ALLOCATION OF ATTORNEYS FEES IN THE INDIRECT-PURCHASER CLASS ACTION**

| Firm Name | Lodestar | Lodestar minus 20% | Applicable Lodestar | Original Recommended Award | Revised Recommended Award | Multiplier of Applicable Lodestar |
|---|---|---|---|---|---|---|
| Bangs McCullen | $33,300 | $26,640 | $33,300 | $40,000 | $50,000 | 1.50 |
| Godfrey & Kahn | $30,677 | $24,542 | $30,677 | $35,000 | $40,000 | 1.30 |
| Sommers Schwartz, PC | $26,169 | $20,935 | $26,169 | $29,000 | $29,500 | 1.13 |
| Thompson, Jason | $26,169 | $20,935 | $26,169 | $26,000 | $29,500 | 1.13 |
| Wienner & Gould | $22,995 | $18,396 | $22,995 | $28,000 | $35,000 | 1.52 |
| Jimenez, Graffam | $22,961 | $18,369 | $22,961 | $27,000 | $35,000 | 1.52 |
| Branstetter, Stranch | $17,595 | $14,076 | $17,595 | $17,000 | $20,000 | 1.14 |
| Serratore Law | $13,840 | $11,072 | $13,840 | $13,000 | $16,000 | 1.16 |
| Belancio, Michael | $12,805 | $10,244 | $12,805 | $13,000 | $15,000 | 1.17 |
| Wexler Wallace | $11,591 | $9,273 | $11,591 | $13,000 | $16,000 | 1.38 |
| Towe, Ball, Enright | $11,300 | $9,040 | $11,300 | $13,000 | $16,000 | 1.42 |
| Frieden Unrein/Davis Unrein | $11,000 | $8,800 | $11,000 | $55,000 | $60,000 | 5.45 |
| Bearman, Edward | $10,815 | $8,652 | $10,815 | $10,000 | $12,000 | 1.11 |
| Hisaka Yoshida | $10,485 | $8,388 | $10,485 | $13,000 | $16,000 | 1.53 |
| West, L/O George O. | $9,205 | $7,364 | $9,205 | $11,000 | $13,000 | 1.41 |
| Goldberg Katzman | $8,640 | $6,912 | $8,640 | $8,600 | $9,500 | 1.10 |
| Smith, Bundy, Bybee | $8,550 | $6,840 | $8,550 | $900 | $900 | 0.11 |
| Alderson Alderson | $7,400 | $5,920 | $7,400 | $7,250 | $8,200 | 1.11 |
| Rossabi Black | $6,893 | $5,514 | $6,893 | $700 | $700 | 0.10 |
| Fallick Law | $6,150 | $4,920 | $6,150 | $5,800 | $6,750 | 1.10 |
| Kirkpatrick & Goldsb... | $5,680 | $4,544 | $5,680 | $6,500 | $7,500 | 1.32 |
| Meierhenry Sargent | $4,598 | $3,678 | $4,598 | $4,500 | $5,100 | 1.11 |
| Albright Stoddard | $4,590 | $3,672 | $4,590 | $4,500 | $5,000 | 1.09 |
| Ferguson Stein | $3,258 | $2,606 | $3,258 | $3,200 | $3,600 | 1.10 |
| Lowther & Johnson | $3,025 | $2,420 | $3,025 | $3,100 | $3,500 | 1.16 |
| Tollison Law Firm | $2,000 | $1,600 | $2,000 | $2,500 | $2,600 | 1.30 |
| James Law Offices | $1,900 | $1,520 | $1,900 | $2,100 | $2,100 | 1.11 |
| LaMarca & Landry | $1,560 | $1,248 | $1,560 | $1,700 | $1,800 | 1.15 |
| Skinner Law Firm | $860 | $688 | $860 | $900 | $1,000 | 1.16 |
| | **TOTAL** | **TOTAL** | **TOTAL** | **TOTAL** | **TOTAL** | |
| | $148,247,730 | $118,598,184 | $116,879,364 | $308,226,250 | $308,225,250 | |