# Exhibit 1

1   Guido Saveri (22349)
        *guido@saveri.com*
2   R. Alexander Saveri (173102)
        *rick@saveri.com*
3   Geoffrey C. Rushing (126910)
        *grushing@saveri.com*
4   Cadio Zirpoli (179108)
        *cadio@saveri.com*
5   SAVERI & SAVERI, INC.
    706 Sansome Street
6   San Francisco, CA 94111
    Telephone:  (415) 217-6810
7   Facsimile:  (415) 217-6813

8   *Lead Counsel for the*
    *Direct Purchaser Plaintiffs*

9

10

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13                **SAN FRANCISCO DIVISION**

14

15   IN RE: CATHODE RAY TUBE (CRT)          Master File No. 07-CV-5944-JST
     ANTITRUST LITIGATION
16                                          MDL No. 1917

17   This Document Relates to:

18   *Crago, d/b/a Dash Computers, Inc., et al. v.*      **DIRECT PURCHASER PLAINTIFFS'**
     *Mitsubishi Electric Corporation, et al.,*          **MOTION TO COMPEL MITSUBISHI**
19   Case No. 14-CV-2058-JST.                            **TO PROVIDE FULL AND COMPLETE**
                                                         **RESPONSES TO DISCOVERY RE:**
20                                                       **MEETINGS WITH COMPETITORS,**
                                                         **SALES, AND DESTRUCTION OF**
21                                                       **EVIDENCE, AND FOR EVIDENTIARY**
                                                         **SANCTIONS**
22
                                                         Special Master:  Hon. Vaughan R. Walker
23                                                       (ret.)

24

25

26   **CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER**

27

28

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     ISSUES PRESENTED ................................................................................................. 2

III.    FACTUAL BACKGROUND ...................................................................................... 4

III.    ARGUMENT ............................................................................................................ 12

      A.     Mitsubishi Should Be Compelled to Provide Further Responses to Interrogatory No. 5 ................................................................................................................. 12

      B.     Mitsubishi Should Be Compelled to Provide Full and Complete Responses to Interrogatory No. 12 After Numerous Orders and Failure to Answer. .................. 14

      C.     Mitsubishi Should Be Compelled to Provide Further Responses to Interrogatories Relating to the Preservation, Loss or Destruction of Documents. ......................... 15

      D.     Mitsubishi Should Be Subject to Evidentiary Sanctions. ..................................... 16

V.      CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adriana Intl. Corp. v. Lewis & Co.*,
   913 F.2d 1406 (9th Cir. 1990) ..................................................................19

*Brewer v. Quaker State Oil Refining Corp.*,
   72 F.3d 326 (3d Cir. 1995) ........................................................................3

*Bryant v. Armstrong*,
   285 F.R.D. 596 (S.D. Cal. 2012) .............................................................15

*F.D.I.C. v. Halpern*,
   271 F.R.D. 191 (D. Nev. 2010) ...............................................................12

*Fjelstad v. American Honda Motor Co.*,
   762 F.2d 1334 (9th Cir.1985) ..................................................................18

*Henry v. Gill Industries, Inc.*,
   983 F.2d 943 (9th Cir. 1993) ...................................................................18

*National Hockey League v. Metropolitan Hockey Club, Inc.*,
   427 U.S. 639 (1976) ...........................................................................17, 18

*Payne v. Exxon Corp.*,
   121 F.3d 503 (9th Cir. 1997) ...................................................................18

*Porter v. Martinez*,
   941 F.2d 732 (9th Cir. 1991) ...................................................................18

*Rio. Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) .................................................................17

*Tacori Enterprises v. Beverlly Jewellery Co. Ltd.*,
   253 F.R.D. 577 (2008) .............................................................................17

*Wanderer v. Johnston*,
   910 F.2d 652 (9th Cir. 1990) ...................................................................18

**Rules**

Federal Rules of Civil Procedure

   Rule 33 ......................................................................................................12

   Rule 37 ......................................................................................17, 18, 20

# I.     INTRODUCTION

Since its entry into this litigation two and a half years ago, Defendant Mitsubishi has played fast and loose with discovery. Direct Purchaser Plaintiffs ("Plaintiffs" or "DPPs") submit this Motion to Compel Production of Documents and for Sanctions for Spoliation of the Same. This motion is supported by the accompanying declarations of R. Alexander Saveri ("Saveri Decl.") and Geoffrey C. Rushing ("Rushing Decl.").[1]

Defendant Mitsubishi has been identified by admitted conspirator Samsung SDI as a member of the CRT conspiracy.[2] As part of its strategy, Mitsubishi has refused to fully disclose its conspiratorial contacts with its competitors. Its responses to discovery on this critical issue have been, and remain, incomplete, untimely and questionable as to whether documents have been intentionally withheld without a legal basis. Mitsubishi has failed to provide forthright answers regarding many important issues, including its sales of CRTs and CRT products and its destruction of documents responsive to Plaintiffs' document requests.

For over a year, Mitsubishi has assured Plaintiffs that it has met its discovery obligations. It has assured Plaintiffs that its searches for responsive information and documents have been thorough and complete. It has <u>repeatedly</u> claimed that its inability to provide meaningful responses to certain discovery requests is due to the loss of documents and information. It is now clear, however, that these assurances have been false. Mitsubishi recently located and produced additional documents containing sales records. Mitsubishi has also informed DPPs that it has decided to search a MEVSA file server, and certain hard drives, that it had previously declined to search.

---

[1] The Saveri Declaration was previously submitted in support of DPPs' December 18, 2014 motion to compel. A courtesy copy is attached. The exhibits to the Rushing Declaration are numbered sequentially to the exhibits to the Saveri Declaration to avoid confusion.

[2] Samsung SDI pleaded guilty to conspiring to fix the prices of CRTs. In an interrogatory response, Samsung SDI identified "a Mitsubishi entity" as one of its co-conspirators. Samsung SDI Co., Ltd.'s Responses to Dell Plaintiffs' First Set of Interrogatories, Request No. 2 at 14:21–22 (Nov. 25, 2013) (Rushing Decl., ex. 18). Plaintiffs use the term "Mitsubishi" to refer to Defendants Mitsubishi Electric Corporation ("MELCO"), Mitsubishi Electric US, Inc. ("MEUS") and Mitsubishi Electric Visual Solutions America, Inc. ("MEVSA").

## II.    ISSUES PRESENTED

*__First__, Plaintiffs seek an order requiring Mitsubishi to provide a full and complete list of their contacts—i.e., meetings and communications and related documents—with their competitors.* Mitsubishi's responses to interrogatories propounded by Plaintiffs over a year ago have been untimely and incomplete. The Court has already ruled that Mitsubishi must <u>re-produce witnesses as a result of its failure to provide this information</u>. *See* Special Master's Order re DPPs' Motion to Compel Supplemental Discovery Responses from Mitsubishi at 5 (Apr. 28, 2015) (Dkt. 3830) ("R&R No. 1"). Mitsubishi's response remains incomplete. DPPs have identified numerous meetings Mitsubishi has failed to identify.

*__Second__, Plaintiffs seek an order compelling Mitsubishi to respond to interrogatories regarding its sales of CRTs and CRT products (i.e., monitors and televisions) during the class period.* Mitsubishi has continually <u>refused</u> to provide meaningful information about its sales claiming that its records have disappeared, and, therefore, that it simply does not know. The Court has already twice ordered Mitsubishi to respond to this interrogatory. R&R No. 1 at 7; *see also* Order re DPPs' Motion to Compel Supplemental Discovery Responses from Mitsubishi at 7–8 (June 12, 2015) (Dkt. 3873) ("R&R No. 3") (finding Mitsubishi's supplemental response to be "sparse"). Despite these orders of the Court and Special Master, Mitsubishi has refused to provide meaningful responses.

*__Third__, Mitsubishi has repeatedly made assurances during the meet and confer process, and to the Court, that it had searched all of its available records; these have been proven false.* On September 24, 2015, Mitsubishi produced eight boxes of documents responsive to Plaintiffs' document requests that it claimed it had overlooked. Among other things, these contain sales records of televisions. In addition, on November 3, 2015, Mitsubishi informed Plaintiffs that it had decided to search a very large volume of MEVSA documents—"gigabytes"—stored on a file server and employees' hard drives <u>which it had previously considered not necessary to search</u>.

*__Fourth__, Plaintiffs seek an order compelling Mitsubishi to respond to an interrogatory seeking identification of responsive documents that have been lost or destroyed.* Despite continually claiming that it has little or no information regarding its CRT business, Mitsubishi has

refused to provide reasonable explanations of 1) what records once existed; and 2) the

circumstances of the loss or destruction of these records.

*Fifth*, **Plaintiffs ask the Court to sanction Mitsubishi pursuant to Federal Rule of Civil**

**Procedure 37 for its repeated and continuing disregard of its discovery obligations.** The Court

has already found that Mitsubishi failed to fulfill its obligations in five specific instances:

- Mitsubishi failed to timely serve complete response to DPPs' Interrogatory No. 5 (at issue here) requiring it to list meetings and other contacts with competitors before the depositions of two employees—Masahiko Konishi and Koji Murata—involved in these meetings. Approximately one month after the depositions, Mitsubishi served a supplemental response listing over 50 new meetings and contacts, including several involving Messrs. Konishi and Murata. The Special Master found that Mitsubishi had "repeatedly delayed responding to valid discovery requests, effectively withholding relevant discovery responses and preventing DPPs' counsel from examining Mitsubishi's witnesses on relevant documents" and ordered the further deposition of the witnesses. R&R No. 1 at 3–4.

- Mitsubishi failed to serve meaningful responses to DPPs' Interrogatory No. 12 (at issue here) requesting its sales of CRTs and CRT Finished Products. The Special Master found Mitsubishi's responses "deficient and order[ed] that all three Mitsubishi Defendants provide thorough and complete responses to Interrogatory No 12, including new information and sales figures." *Id.* at 5.

- Mitsubishi refused to produce documents used to refresh a witness's recollection in advance of his deposition. The Special Master ordered Mitsubishi to produce the documents and allow further examination of the witness—Mr. Murata—about them. *See* Special Master's Order re DPPs' Motion to Compel Mitsubishi to Provide Testimony and Other Evidence from Mr Koji Murata at 9 (May 29, 2015) (Dkt. 3859) ("R&R No. 2").

- Mitsubishi counsel pulled a Mitsubishi witness—Mr. Murata—from a deposition during examination regarding a document evidencing meetings between a Mitsubishi employee and conspirators from Samsung SDI and LG that he had reviewed and approved. After conferring with counsel, the witness testified that he "knew absolutely nothing about this." *Id.* at 4. The Special Master noted that this conduct "suggest[s] a degree of attorney intervention and witness guidance inconsistent with appropriate norms." The Special Master ordered the deposition of the witness be resumed to allow further examination. *Id.* at 9.

- Mitsubishi failed to search Mr. Murata's personal email, which he also used for business. The Special Master ordered that Mitsubishi provide further information regarding its efforts to preserve and search this email account and, if necessary, additional searches. *Id.* at 10.

In the leading case on whether a party's failure to produce can amount to spoliation, the

Court in *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) said a party's

failure to produce a document can have the same practical effect as destroying it. It affirmed that,

under certain circumstances, nonproduction of evidence is <u>rightfully characterized</u> as **spoliation**.

### III.     FACTUAL BACKGROUND

Mitsubishi has disregarded its discovery obligations from the outset of this case. On September 4, 2014, DPPs served their first set of interrogatories (Saveri Decl., ex. 1) and first set of requests for production of documents (Saveri Decl., ex. 2) on Mitsubishi. Mitsubishi responded on October 6, 2014, but failed to provide any meaningful responses regarding critical issues.[3]

Among other things, Mitsubishi failed to provide meaningful substantive responses to Interrogatory No. 5 seeking identification of Mitsubishi's meetings and communications with competitors during the alleged conspiracy period. This interrogatory goes to the heart of this case and has been answered in detail by other defendants. For example, Samsung SDI identified hundreds of contacts with its competitors. Saveri Decl., ex. 10. Mitsubishi stated only:

> Subject to and without waiving the foregoing and general objections, Mitsubishi Electric has not completed its investigation of the facts responsive to this Interrogatory and Mitsubishi Electric will identify information or documents responsive to this Interrogatory, if any, <u>as soon as reasonably practicable</u>.

Saveri Decl., ex. 3 at 4–5, ex. 5 at 4–5, ex. 7 at 4–5 (emphasis added).

This could not have been a good faith statement about the state of its knowledge given the importance of this issue, and the substantial investigation Mitsubishi had already performed. Mitsubishi was first named as a defendant in this MDL in June 2013 (*see* Dkt. 1726), over 15 months before its responses, and it had responded to interrogatories propounded by the DAPs which required it to investigate its participation in the conspiracy. On September 5, 2014, Mitsubishi served a list of its United States, Mexico and Brazil-related contacts with defendants as well as other contacts in the context of a customer-supplier relationship. The list was attached as an Exhibit B to its responses (Saveri Decl., ex. 16) ("DAP Exhibit B"). Further, Mitsubishi filed a motion for summary judgment against the DAPs two months later (on November 7, 2014) on the grounds that there was insufficient evidence of its participation in the conspiracy. Dkt. 3037.

Mitsubishi also failed to provide a meaningful response to Interrogatory No. 12 seeking information about its total sales of CRTs and/or CRT Products—another important issue. Again,

---

[3] Attached to the Saveri Declaration as exhibits 3 through 8.

DPPS' MOTION TO COMPEL MOTION TO COMPEL MITSUBISHI TO PROVIDE RESPONSES TO DISCOVERY, AND FOR EVIDENTIARY SANCTIONS; No. 07-CV-5944-JST

4

Mitsubishi stated that it "has not completed its investigation of the facts responsive to this Interrogatory," and provided no meaningful substantive information.

At a "meet and confer" on November 11, 2014, Mitsubishi agreed to provide supplemental answers to Interrogatory No. 5 by November 18, 2014, and agreed to provide more information "soon, possibly within a week" regarding Interrogatory No. 12, relating to its sales of CRTs and CRT Products. Saveri Decl. ¶ 2; ex. 11. At this time, the parties were scheduling the depositions of Messrs. Konishi and Murata, which the parties anticipated occurring in December. Saveri Decl., ex. 11.

In addition, the parties specifically discussed that Mitsubishi's DAP Exhibit B—which Mitsubishi proposed to supply to DPPs—was not an adequate response to DPPs' Interrogatory No. 5 because it was substantially broader than the DAPs' interrogatories. DPPs, by contrast, requested more expansive information about Mitsubishi's worldwide contacts with competitors. *Id.*

Mitsubishi failed to fulfill these promises. It served no supplemental responses by November 18, 2014, provided no further information about its sales, and—apart from assuring Plaintiffs that supplemental responses were forthcoming—failed to respond meaningfully to Plaintiffs when they followed up. Saveri Decl. ¶ 3, ex. 12. During the week of December 1, Mitsubishi said that supplemental responses "with more information" were forthcoming. Saveri Decl. ¶ 4, ex. 13. On December 5, Mitsubishi counsel stated that they had been sent to Mitsubishi for approval and verification, and "I hope we will get a quick response [s]o we can send them to you ASAP." Saveri Decl., ex. 13.

Finally, on December 10, 2014, after the deposition of Mr. Murata, and the first day of the deposition of Mr. Konishi, Mitsubishi emailed a purported supplemental response to Plaintiffs' interrogatories. Saveri Decl., ex. 15.

The supplemental responses contained no meaningful information, however. As to Interrogatory No. 5 (contacts with competitors), Mitsubishi stated:

> Subject to and without waiving the foregoing and general objections, **Mitsubishi Electric is aware of the meetings and or communications referred to in Exhibit B.**

Saveri Decl., ex. 14 at 7–8 (emphasis added). The supplemental response, however, despite its

DPPS' MOTION TO COMPEL MOTION TO COMPEL MITSUBISHI TO PROVIDE RESPONSES TO DISCOVERY, AND FOR EVIDENTIARY SANCTIONS; No. 07-CV-5944-JST

5

verification, **contained no Exhibit B**.[4] Similarly, the supplemental response to Interrogatory No. 12 regarding Mitsubishi's sales also contained no substantive information. It simply repeated that that Mitsubishi has "not completed its investigation of the facts responsive to this interrogatory." *Id.* at 13.

Counsel for DPPs immediately notified Mitsubishi of the missing exhibits. The next day, December 11—the second day of Mr. Konishi's deposition—Mitsubishi counsel stated that "[w]e are looking into this and will get back to you on it as soon as possible." Saveri Decl., ex. 15. Receiving no further communication from Mitsubishi, on December 18, 2014, DPPs filed a motion to compel (1) production of Exhibits A and B; (2) further response to Interrogatory No. 12 regarding sales; and (3) further deposition of Messrs. Konishi and Murata. *See* DPPs' Motion to Compel Supplemental Responses (Dec. 18, 2014) (Rushing Decl., ex. 19) ("MTC No. 1").

By letter on December 19, 2014, Mitsubishi counsel stated that Exhibit B had been "inadvertently not included" with the supplemental responses. Moreover, Mitsubishi had also concluded that "to respond to DPPs' Interrogatory 5, Mitsubishi Electric needed to update Exhibit B, which it is now in the process of doing." Rushing Decl., ex. 20. Despite DPPs' pending motion, Mitsubishi did not produce the Exhibit B it had intended to serve on December 10, 2014. *Id.*

On January 16, 2015, Mitsubishi finally served another set of supplemental responses to DPPs' interrogatories. Rushing Decl., ex. 21. Mitsubishi identified over 50 new competitor contacts not disclosed in the DAP Exhibit B, including several involving Messrs. Murata or Konishi. *Id.*, ex. B. Mitsubishi provided little new sales information in response to Interrogatory No. 12. *See id.* at 13–14.

Several new disputes had arisen during the deposition of Mr. Murata on December 9, 2014. First, in the middle of a line of questions regarding a travel request that Mr. Murata had approved for an employee to meet with admitted conspirator Samsung SDI and indicted conspirator LPD, counsel for Mitsubishi interrupted DPPs' examination to conference with his witness. Although Mr. Murata had indicated that he had knowledge regarding the document, after his conference with counsel, he testified that he knew **"absolutely nothing about this."** When DPPs asked Mr. Murata

---

[4] Mitsubishi also submitted supplemental responses to other interrogatories referring to information included in an "Exhibit A." Again, however, there was no Exhibit A.

what he discussed with counsel during the break, he refused to answer on counsel's instruction. Koji Murata Dep. Tr. 132:7–136:6 (Rushing Decl., ex. 22). Second, Mr. Murata testified that he had reviewed a number of documents in preparation for his deposition, and that some had refreshed his recollection of events. Mitsubishi, however, refused to produce the documents. *Id.* at 16:9–18:17. Third, Mr. Murata testified that he used his personal email for business communications, but had not searched it for responsive documents. *Id.* at 167:18–168:24. On January 30, 2015, DPPs filed another motion to compel with regard to these issues. *See* DPPs' Motion to Compel Further Testimony (Jan. 30, 2015) (Rushing Decl., ex. 23) ("MTC No. 2").

On April 28, 2015, the Special Master issued his Report and Recommendation regarding DPPs' first motion. *See* R&R No. 1. He recommended that the Mitsubishi defendants be ordered to produce the original Exhibits A and B to their December 10, 2014 supplemental responses to interrogatories and to provide "complete substantive responses" to Interrogatory No. 12 (re: sales) within 14 days. The Special Master also indicated that he was inclined to order the further depositions of Messrs. Murata and Konishi, but gave Mitsubishi leave to submit additional briefing. *Id.* at 7.[5]

On May 26, 2015, in response to the Special Master's ruling, Mitsubishi served another set of supplemental responses to certain interrogatories. With regard to Interrogatory No. 5, Mitsubishi was ordered to provide the original Exhibit B which it had intended to attach to its December 10, 2014 supplemental responses. Remarkably, it was identical to the DAP Exhibit B that Mitsubishi had served months before, in September 2014. In other words, it appears that Mitsubishi's representations and promises to provide a substantive response to DPPs' broader interrogatory were false. Instead, they were simply a means to delay providing important evidence to DPPs.[6]

With regard to Interrogatory No. 12 relating to sales, despite the Court's order, Mitsubishi provided no meaningful new information. It simply asserted that it had performed a reasonable

---

[5] On June 11, 2015, the Court adopted the Special Master's R&R as an order of the Court. *See* Dkt. 3870.

[6] Mitsubishi's conduct appears driven by the desire to withhold evidence while its summary judgment against the DAPs was pending, as well as to force DAPs and DPPs to depose the few available Mitsubishi witnesses on an incomplete record. The DAPs' summary judgment opposition was due (and filed) on December 23, 2014. Dkt. 3271.

1    search, referred DPPs to previously identified documents and asserted that it had completed its

2    investigation and did not possess additional responsive information. Rushing Decl., ex. 24 at 13,

3    exs. 25–26 at 3–5.

4           Also on May 26, 2015, Mitsubishi filed its supplemental brief relating to the further

5    depositions of Messrs. Konishi and Murata. Among other things, Mitsubishi again stressed that it

6    had searched all available sources of information regarding its sales and other issues, and that many

7    records had been lost. Mitsubishi Letter Brief re: Further Depositions (May 26, 2015) (Rushing

8    Decl., ex. 27). *See, e.g., id.* at 1 ("[i]n addition, there is no additional sales data about which to

9    question either witness, because Mitsubishi Electric has confirmed that its reasonable investigation

10   is concluded and that no such additional data could be located from a CRT business that it

11   shuttered or sold years before this lawsuit was filed"); 2 ("[f]urthermore, the DPPs already have all

12   the Mitsubishi Electric sales data that exists"); 3 ("Mitsubishi Electric has since certified—in

13   compliance with the Court's April 28 order—that upon the completion of its investigation, it has no

14   more sales data to produce"); 4 (same).

15          On May 29, 2015, the Special Master issued his Report and Recommendation regarding

16   DPPs' second motion. *See* R&R No. 2. He recommended that Mitsubishi be ordered to make Mr.

17   Murata available for further examination relating to the line of questioning Mitsubishi counsel had

18   interrupted, his conference with counsel, documents used to refresh his recollection, and the search

19   or destruction of emails in his personal account. In addition, the Special Master recommended that

20   Mitsubishi be ordered to produce all documents used to refresh Mr. Murata's recollection and

21   provide further information relating to the search and preservation of his email. *Id.* at 11.[7]

22          On June 12, 2015, Mitsubishi identified thirteen documents used to refresh Mr. Murata's

23   memory before his deposition in December. *See* Rushing Decl., ex 28. These included notes

24   documenting previously unidentified meetings with competitors. *See, e.g.,* Dep. ex. 8214

25   (ME00024873–89) (Rushing Decl., exs. 29–30).

26          Also on June 12, 2015, the Special Master issued an additional Report and

27   _____

28   [7] On September 11, 2015, the Court adopted the Special Master's R&R as an order of the Court. *See* Dkt. 4054.

DPPS' MOTION TO COMPEL MOTION TO COMPEL MITSUBISHI TO PROVIDE RESPONSES TO
DISCOVERY, AND FOR EVIDENTIARY SANCTIONS; No. 07-CV-5944-JST

8

1    Recommendation regarding DPPs' first motion. *See* R&R No. 3. He concluded that the "delayed

2    production of relevant discovery responses prevented the DPPs from conducting the full scope of

3    their examinations of Messrs Murata and Konishi" and ordered Mitsubishi to produce Mr. Murata

4    and deferring a decision on Mr. Konishi. *Id.* at 6–7. He also found Mitsubishi's third supplemental

5    response to Interrogatory No. 12 (re: sales) to be "sparse." *Id.* at 7.[8]

6          On June 29, 2015, the parties met and conferred regarding Mitsubishi's responses to

7    interrogatories, among other things. As relevant here, DPPs explained that Mitsubishi's responses

8    to Interrogatory No. 12 regarding sales continued to be inadequate because Mitsubishi's search for

9    information appeared to be incomplete. In addition, its reference to documents—as opposed to

10   providing a narrative response—was unwarranted. *See* G. Rushing Ltr. to G. Fuentes (July 2, 2015)

11   (Rushing Decl., ex. 31). Mitsubishi again assured DPPs that its search for documents was thorough

12   and complete. Mitsubishi insisted that most of whatever information once may have existed was

13   now gone, and that what little remained was not sufficient to enable it to make any meaningful

14   response beyond a reference to documents. Rushing Decl. ¶ 14. *See also* Mitsubishi Letter Brief re:

15   Supplemental Responses at 2 (June 10, 2015) (Rushing Decl., ex. 32) ("[b]ut the data in these

16   documents are not adequate to allow Mitsubishi Electric to provide a sworn answer to a number or

17   numbers, under Fed. R. Civ. P. 33, as Interrogatory No. 12 requested").

18         Mitsubishi assured DPPs that its search for records of conspiratorial contacts was also

19   thorough and complete, and that its interrogatory responses contained all responsive information.

20   DPPs questioned Mitsubishi regarding its 30(b)(6) testimony of Hitoshi Tsukamoto, who testified

21   that meetings with competitors were included on Exhibit B only if Mitsubishi was able to

22   "confirm" their occurrence. *See* Hitoshi Tsukamoto (MELCO 30(b)(6)) Dep. Tr. 68:4–70:21

23   (Rushing Decl., ex. 33). This suggested that Mitsubishi had evidence of "unconfirmed" meetings

24   which it had not disclosed. Mitsubishi counsel assured DPPs that this was not the case. Rushing

25   Decl., ex. 31 at 2.

26         DPPs requested that Mitsubishi provide further responses to Interrogatory No. 16 seeking

27   ─────────────────────────

28   [8] On July 20, 2015, the Court adopted the Special Master's R&R as an order of the Court. *See* Dkt. 3925.

DPPS' MOTION TO COMPEL MOTION TO COMPEL MITSUBISHI TO PROVIDE RESPONSES TO DISCOVERY, AND FOR EVIDENTIARY SANCTIONS; No. 07-CV-5944-JST

9

1   identification of responsive documents that have been lost or destroyed, and an explanation of their

2   loss or destruction. DPPs explained that Mitsubishi's limitation of its response to "purposeful

3   destruction" was insufficient, and that a response explaining what responsive documents or

4   information that were "destroyed, discarded, erased, deleted, purged, or otherwise lost" was

5   required, as well as the specific circumstances of their destruction or other disposition. *Id.* at 2–3.

6          DPPs had also propounded, on December 19, 2014, a second set of interrogatories relating,

7   inter alia, to when Mitsubishi became aware of the case, and its efforts to preserve relevant

8   documents. DPPs asked Mitsubishi to provide supplemental responses to certain of these

9   interrogatories. *Id.* at 3–4.

10         During the week of July 13, 2015, DPPs took the depositions of the current president and

11  CEO of defendant MEUS—Kiyoshi Furukawa—and its former vice president of sales—Max

12  Wasinger. Among other things, both testified that they had not been asked to search for responsive

13  documents in this case, and that they did not know where any documents potentially related to

14  Mitsubishi's CRT or CRT Products businesses might be located. *See* Furukawa Dep. Tr. at 29:1–

15  31:3, 37:12–38:8, 40:1–45:25, 48:20–50:4, 72:12–75:8, 111:15–112:2 (Rushing Decl., ex. 34);

16  Wasinger Dep. Tr. at 25:22–26:12; 49:18–21, 65:4–69:11 (Rushing Decl., ex. 35). Mr. Wasinger

17  also confirmed that Mitsubishi's document retention policy required preservation of annual sales

18  records. Wasinger Dep. Tr. at 88:18–95:12 (Rushing Decl., ex. 35).

19         On July 28, 2015, Mitsubishi served another set of supplemental responses to DPPs'

20  interrogatories. Rushing Decl., exs. 36–38. Its responses, however, did not meaningfully address

21  DPPs' concerns. Mitsubishi provided no supplemental response to Interrogatory No. 12 regarding

22  sales. *See id.* Its supplementation of Interrogatory No. 5 was limited to a statement that it had no

23  further information. *Id.* at 4–5.

24         As to Interrogatory No. 16, MELCO and MEVSA stated, with one exception, that

25  documents had "likely" been "discarded in the ordinary course of business." Rushing Decl., ex. 36

26  at 5–6; Rushing Decl., ex. 38 at 2–3. (MEUS did not supplement its response to Interrogatory No.

27  16. *See* Rushing Decl., ex. 37.) Mitsubishi provided no description of the discarded documents, or

28  the manner in which they had been disposed. Mitsubishi also stated that some documents related to

1  its CRT monitor business had been transferred to another entity, but, again, did not describe the

2  documents. Rushing Decl., ex. 36 at 6.

3      With regard to December 19, 2014 set of interrogatories, Mitsubishi's supplemental

4  responses demonstrated that it was aware of the CRT litigation at least as early as January, 2009.

5  Mitsubishi refused to meaningfully describe the efforts it took to preserve documents, broadly

6  asserting that it had taken "appropriate steps to preserve responsive documents since this litigation

7  was initiated . . . ." Rushing Decl., ex. 39 at 6–7.

8      In mid-September, 2015, Mitsubishi notified DPPs that it had become aware of additional

9  records after the depositions of Messrs. Wasinger and Furukawa. On September 24, 2015, it

10  produced eight additional boxes of documents. Rushing Decl. ¶ 23, ex. 40 [9/24/2014 Fuentes Ltr.

11  to RAS]. These relate to its U.S. operations, and contain substantial sales information. For

12  example, the documents appear to show at least $1.164 billion in sales of televisions in the United

13  States during the January 1995–November 1998 time frame. *See* ME00154189 (Rushing Decl., ex

14  41); ME00154067 (Rushing Decl., ex. 42); ME00154401 (Rushing Decl., ex. 43).

15      The parties had agreed to resume the deposition of Mr. Konishi on October 1, 2015. The

16  deposition was postponed until November 12, 2015 in order to give DPPs time to review the

17  September 24 document production. On October 5, DPPs wrote Mitsubishi asking it to confirm that

18  its interrogatory responses were current in light of the additional documents it had discovered.

19  Rushing Decl., ex. 44. On October 14, 2015, Mitsubishi confirmed that it had no present intention

20  to update its responses. Rushing Decl. ¶ 27.

21      On November 3, 2015, Mitsubishi informed DPPs that it was reviewing another large

22  amount of records not previously searched—"gigabytes"—contained on a MEVSA fileserver and

23  the hard drives of certain employee, including at least one belonging to an employee—Mr.

24  Wasinger—already deposed. Rushing Decl., ex. 45. Mitsubishi said it would be producing

25  additional MEVSA documents. *Id.* Mitsubishi acknowledged that it had been aware of the

26  existence of these records, but had decided not to search them based on their view that it was not

27  worth the time and effort—i.e., a "proportionality" judgment. *Id.*

28

III.   **ARGUMENT**

Mitsubishi's conduct described above demonstrates a continuing pattern of disregard for its discovery obligations. In addition to compelling full and complete responses to the discovery Mitsubishi has been evading, the Court should also impose evidentiary sanctions for Mitsubishi's abuse of discovery procedures, as explained below.

The obligation to provide complete responses to discovery is fundamental to the discovery process. *See, e.g., F.D.I.C. v. Halpern*, 271 F.R.D. 191, 198 (D. Nev. 2010) ("the responding party must make a prompt and diligent effort to investigate and provide fully responsive answers"). This is true, even where a party does not know the complete answer to a question. It must still provide what it knows to the best of its ability. FED. R. CIV. P. 33(b)(1)(B) (responding party must "furnish the information available to the party").

### A.   Mitsubishi Should Be Compelled to Provide Further Responses to Interrogatory No. 5.

Mitsubishi's behavior in connection with its response to Interrogatory No. 5 epitomizes its gross abuse of discovery in this action. This interrogatory—served over fifteen months ago—goes to the most important issue in DPPs' case against Mitsubishi, its participation in the conspiracy. Yet Mitsubishi's answers remain incomplete. As explained above, from the outset, Mitsubishi has flouted its obligations to provide a complete and truthful account of its conspiratorial conduct.

Its first response to these interrogatories was completely and intentionally devoid of meaningful information, despite the fact that it had performed substantial investigation and was preparing to file a motion for summary judgment based on the absence of evidence of its participation in the alleged conspiracy.

Although it eventually identified at least twenty-two additional meetings and approximately thirty other contacts with competitors on January 16, 2015, it intentionally delayed production of this critical information for several months. It did so via a series of representations—i.e., promises at meet and confers, assurances that the information would be produced shortly, verification of incomplete discovery responses—that now appear to have been false. DPPs (and DAPs) were

prejudiced by this conduct because, inter alia, during this time they were taking depositions to which these contacts were relevant.[9]

Finally, Mitsubishi's responses to Interrogatory No. 5 remain incomplete. As noted, Mitsubishi has admitted that it has included only contacts with competitors that it can "confirm." It is plain, however, that Mitsubishi has failed to list numerous contacts, including:

- On January 29, 2000, a Mitsubishi manager met with Hitachi executives in Southern California and discussed, inter alia, pricing, production and future plans, Dep. ex. 2376 (Rushing Decl., ex. 46);

- On March 6, 2000, Mitsubishi senior executive Hitoshi Nakajima and Masahiko Konishi met with known Chunghwa conspirators, including C.Y. Lin in Taiwan. The parties discussed, among other things, future prices ("hopefully Chunghwa Picture Tubes can sell high"), production, customers, the structure of Mitsubishi's CRT business and future plans. Dep. ex. 8340 (Rushing Decl., exs. 47–49);

- On August 29, 2000, Mitsubishi senior executive Hitoshi Nakajima and Katsuro Tsujiyama met with known Samsung SDI conspirators, including Jae In Lee and Michael Son in Korea. The parties discussed, among other things, price, production, the structure of Mitsubishi's CRT and Display business and future plans. SDCRT-0087379–80 (Rushing Decl., ex. 50);

- On August 2, 2001, a Mitsubishi Department Head and a Vice-Head of Department met with Chunghwa conspirators Edward Cheng and Yvonne Yun; the discussion included among other things price, production and future strategies, Dep. ex. 8201 (Rushing Decl., ex. 51);

- On April 2–3 2002, Mitsubishi manager Kunihiko Seki travelled to meet with Samsung in Korea, Dep. ex. 8206 (Rushing Decl., exs. 52–53);

- On October 8–10, 2002, Mitsubishi general manager Hitoshi Nakajima and manager Kunihiko Seki travelled to meet with conspirators Samsung SDI and LPD in Korea to discuss sales strategy for major customers—specifically "countermeasures for major PC makers," Dep. ex. 8203 (Rushing Decl., exs. 54–55);

- On January 13, 2003, Mitsubishi manager Kunihiko Seki discussed Mitsubishi production and pricing with known Samsung SDI conspirator Jae In Lee. SDCRT-0087970–76 (Rushing Decl., exs. 56–57);

- On August 30, 2004, a Mitsubishi Marketing Manager met with executives of conspirator LPD for a "market discussion," Dep. ex. 2285 (Rushing Decl., ex. 58);

[9] The DAPs were also responding to Mitsubishi's motion for summary judgment. Their opposition was filed on December 23, 2014. Dkt. 3271.

- On April 1, 1997, Mr. Murata met with representatives of Philips in Kyoto, Japan and exchanged information regarding CRT production, Dep. ex. 8212 (Rushing Decl., exs. 59–60);[10]

- On June 12–13, 1997, Mitsubishi representatives, including Mr. Murata, met with Philips executives, including known conspirator David Chang, in Eindhoven, the Netherlands; the meeting included a presentation exchanging information regarding CRT production and sales, Dep. ex. 8214 (Rushing Decl., exs. 29–30);[11] and

- On February 16, 1998, correspondence from F.A. de Bruijne of Philips to Mr. O. Wada of Mitsubishi referenced a "discussion on CRT / CMT [that] were of excellent quality and I am sure benefited equally on both company sides," Dep. ex. 8213 (Rushing Decl., ex. 61).

Mitsubishi should be ordered to provide full and complete responses to DPPs' Interrogatory No. 5 immediately, and should be subject to sanctions, as explained below.

### B. Mitsubishi Should Be Compelled to Provide Full and Complete Responses to Interrogatory No. 12 After Numerous Orders and Failure to Answer.

Mitsubishi's refusal to fulfill its discovery obligations is similarly clear with regard to DPPs' Interrogatory No. 12, relating to Mitsubishi's sales of CRTs and CRT products during the class period, another key issue in the case.

As noted above, despite the Court's orders requiring it to provide a complete response to this interrogatory, Mitsubishi has repeatedly represented that it has searched all of its records, that most of its sales records have been lost, and that what remains is not sufficient for it to provide a meaningful response to the interrogatory. Instead, it has simply referred DPPs to ambiguous and incomplete documents. Rushing Decl., ex. 24 at 11–13; Rushing Decl., ex. 25 at 3–5; Rushing Decl., ex. 26 at 3–5.

Subsequent events have now shown Mitsubishi's representations about its search for and the existence of sales records to have been false. As noted above, Mitsubishi has acknowledged additional documents existed—including sales records—and that its searches for documents have been incomplete. Indeed, Mitsubishi failed to search the hard drive belonging to MEUS vice president of sales Max Wasinger in advance of his deposition. Messrs. Wasinger and Furukawa

---

[10] Mitsubishi prepared its employee Mr. Murata regarding this document in preparation for his December 2014 deposition. *See* Rushing Decl., ex. 28.

[11] Mitsubishi prepared its employee Mr. Murata regarding this document in preparation for his December 2014 deposition. *See* Rushing Decl., ex. 28.

DPPS' MOTION TO COMPEL MOTION TO COMPEL MITSUBISHI TO PROVIDE RESPONSES TO DISCOVERY, AND FOR EVIDENTIARY SANCTIONS; No. 07-CV-5944-JST

14

(and others[12]) also testified that they were not asked to search their documents. *See* Furukawa Dep. Tr. at 29:1–31:3, 37:12–38:8, 40:1–45:25, 48:20–50:4, 72:12–75:8, 111:15–112:2 (Rushing Decl., ex. 34); Wasinger Dep. Tr. at 25:22–26:12, 49:18–21, 65:4–69:11 (Rushing Decl., ex. 35).

In addition, as noted, the documents MEVSA produced in September contain sales records showing over a billion dollars of television sales in the United States during the class period. *See* Rushing Decl., exs. 41–43.

Mitsubishi should be ordered to supplement its responses to DPPs' Interrogatory No. 12 immediately to provide a narrative explanation of as much of its sales information as possible. *See Bryant v. Armstrong*, 285 F.R.D. 596, 603 (S.D. Cal. 2012) ("[i]f there are no other responsive documents in Defendant's possession, custody, or control, after conducting this further attempt to locate records, [defendant] must state so under oath and describe efforts he made to locate responsive documents"). It should also be subject to sanctions, as explained below.

## C.     Mitsubishi Should Be Compelled to Provide Further Responses to Interrogatories Relating to the Preservation, Loss or Destruction of Documents.

As noted, Mitsubishi has repeatedly explained its deficient discovery responses by claiming that most of its records relating to its CRT business have been lost. Mitsubishi, however, has refused to provide a reasonable response to DPPs' interrogatories going to this issue. Thus, Interrogatory No. 16 seeks identification of all responsive documents that have been lost or destroyed, and an explanation of the circumstances. It provides:

> State whether any documents or information responsive to this set of interrogatories were destroyed, discarded, erased, deleted, purged, or otherwise lost. If Your answer is in any way in the affirmative: (a) describe in detail the contents of each such document or information and the date it was destroyed, discarded, erased, deleted, purged or lost; (b) identify each person who had any role or responsibility in destroying, discarding, erasing, purging, deleting or losing of each such document or information; and (c) describe in detail the circumstances under which each such document or information was destroyed, discarded, erased, deleted, purged, or lost.

Mitsubishi has refused to provide a meaningful response. Its first response was simply that it was unaware of any "purposeful" destruction of documents. Rushing Decl., ex. 21 at 16–17. After meeting and conferring, it agreed to provide a supplemental response and did so. It stated:

[12] Mr. Murata gave similar testimony. Murata Dep. Tr. at 206:14–210:2 (Rushing Decl., ex. 23).

DPPS' MOTION TO COMPEL MOTION TO COMPEL MITSUBISHI TO PROVIDE RESPONSES TO DISCOVERY, AND FOR EVIDENTIARY SANCTIONS; No. 07-CV-5944-JST

15

Mitsubishi Electric hereby incorporates by reference its previous objections to this Interrogatory as if set forth fully herein. Subject to and without waiving those objections, Mitsubishi Electric states that documents or information responsive to this Interrogatory may have been destroyed, discarded, erased, deleted, purged, or otherwise lost in the ordinary course of business under the following circumstances:

- In 1998, Mitsubishi Electric exited the CPT business. As a result, any responsive documents related to Mitsubishi Electric's CPT business were likely discarded in the ordinary course of business, before Mitsubishi Electric issued its Litigation Hold on November 9, 2011.

- In or about 2000, Mitsubishi Electric transferred its CRT monitor business, along with all relevant documents, to a joint venture called NEC-Mitsubishi Electronics Display of America, Inc ("NMV"). In 2005, Mitsubishi Electric transferred its ownership interest in NMV to NEC Corporation.

- Other responsive documents or information were discarded in the ordinary course of business, before Mitsubishi Electric issued its Litigation Hold on November 9, 2011.

Rushing Decl., ex. 36 at 5–6.

Mitsubishi's supplemental response is plainly insufficient. While it admits that responsive documents "may have been destroyed, discarded, erased, deleted, purged, or otherwise lost," the general statement that documents were likely "discarded in the ordinary course of business" is self-serving and lacks meaningful detail. It also contradicts its first response that nothing was "purposefully" discarded. The notion that annual sales records would have been discarded in the ordinary course is also contradicted by Mr. Wasinger's testimony that Mitsubishi's document retention policy required their preservation.

The information DPPs seek is important. It is relevant to ensure that all evidence is located, and to put into context Mitsubishi's claims that no evidence of its participation in the conspiracy exists. It also goes to the issue of spoliation. Mitsubishi should be ordered to provide immediately full and complete responses to these interrogatories, and should be subject to sanctions, as explained below.

**D.    Mitsubishi Should Be Subject to Evidentiary Sanctions.**

DPPs submit that the Court should sanction Mitsubishi for its misconduct by ruling that Samsung SDI's interrogatory responses implicating Mitsubishi as a participant in the conspiracy will be admissible at trial against Mitsubishi. As noted above, defendant Samsung SDI, in addition

to pleading guilty in the criminal proceeding, has admitted its participation in the conspiracy and has identified Mitsubishi as a co-conspirator. *See* Rushing Decl., ex. 18 ("[a]t least one Mitsubishi entity and at least one Chunghwa entity participated in the CDT conspiracy described in SDI's Plea Agreement").[13] Mitsubishi has argued at great length that the Samsung SDI interrogatory responses should not be admissible at trial and should not be considered on summary judgment. *See* MELCO's Motion for Summary Judgment at 4–8 (Nov. 7, 2014) (Dkt. 3037); MELCO's Motion *in Limine* No. 1 (Feb. 13, 2015) (Dkt. 3601).

Rule 37(b) of the Federal Rules of Civil Procedure authorizes sanctions against a party who "fails to obey an order to provide or permit discovery under Rule 37(a)." Such sanctions include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence.[14]

Rule 37 also allows the Court to strike pleadings (Rule 37(b)(2)(A)(iii)) or even dismiss an action (Rule 37(b)(2)(A)(v)). A trial court has broad discretion to impose sanctions under Rule 37. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642–643 (1976) (reversing Circuit Court and affirming District Court's order dismissing plaintiff's complaint in antitrust case for willful failure to timely respond to interrogatories).

Courts generally consider five factors in deciding to grant a motion for sanctions under Rule 37(b)(2)(A): "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Tacori Enters. v. Beverlly Jewellery Co. Ltd.*, 253 F.R.D. 577, 582 (2008) (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1022 (9th Cir. 2002)) (brackets in original).

---

[13] Samsung SDI has also identified meeting notes documenting Mitsubishi's participation in the conspiracy, including a March 5, 2003 Samsung SDI internal "report" of a March 3, 2003 meeting with Mitsubishi senior executive Hitoshi Nakajima. The parties discussed "price maintenance" and "to get SDI's opinion prior to negotiations with Samsung Electronics," among other things. Mitsubishi also provided its current and future pricing, production status, and/or marketing plans for 17", 19" and 22" CDTs. SDCRT-0006041–42 (Dep. ex. 635EF) (Rushing Decl., exs. 62–63).

[14] *See* Fed. R. Civ. P. 37(b)(2)(A).

DPPS' MOTION TO COMPEL MOTION TO COMPEL MITSUBISHI TO PROVIDE RESPONSES TO DISCOVERY, AND FOR EVIDENTIARY SANCTIONS; No. 07-CV-5944-JST

17

"Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive." *Payne v. Exxon Corp.*, 121 F.3d 503, 507, 510 (9th Cir. 1997) (affirming dismissal of case for failure to respond to court ordered discovery).

In deciding whether to grant a motion for sanctions, the Court may "properly consider all of a party's discovery misconduct . . . , including conduct which has been the subject of earlier sanctions." *Id.* at 508. "A district court has the discretion to impose the extreme sanction of dismissal if there has been 'flagrant, bad faith disregard of discovery duties.'" *Porter v. Martinez*, 941 F.2d 732, 733 (9th Cir. 1991) (quoting *Wanderer v. Johnston*, 910 F.2d 652, 655–56 (9th Cir. 1990) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639 (1976)). "[The Ninth Circuit] has stated that 'disobedient conduct not shown to be outside the control of the litigant' is all that is required to demonstrate willfulness, bad faith, or fault." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (quoting *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1341 (9th Cir. 1985)).

Mitsubishi's conduct in this action plainly warrants sanctions. First, it has violated two Court orders. With regard to Interrogatory No. 5, the Court has already found that Mitsubishi "repeatedly delayed responding to valid discovery requests, effectively withholding relevant discovery responses and preventing DPPs' counsel from examining Mitsubishi's witnesses on relevant documents." R&R No. 1 at 3–4. As shown above, Mitsubishi's response to this interrogatory remains substantially incomplete.

Similarly, with regard to Interrogatory No. 12, the Court found Mitsubishi's responses "deficient and order[ed] that all three Mitsubishi Defendants provide thorough and complete responses to Interrogatory No 12, including new information and sales figures." *Id.* at 5; *see also* R&R No. 3 at 7–8. Mitsubishi refused to do so on the grounds that its search for records had been thorough and complete and that no records existed sufficient to allow it to respond meaningfully. Again, as shown above, both of these assertions have been proven false, and Mitsubishi's response to Interrogatory No. 12 remains incomplete.

DPPS' MOTION TO COMPEL MOTION TO COMPEL MITSUBISHI TO PROVIDE RESPONSES TO DISCOVERY, AND FOR EVIDENTIARY SANCTIONS; No. 07-CV-5944-JST

18

1    Second, the Court has already found that Mitsubishi improperly interfered with DPPs'

2  examination of one of its witnesses, failed to properly search the email of that witness, and

3  improperly withheld documents used to refresh the recollection of a witness. Mitsubishi's

4  continued violations of its discovery obligations in this context compels the conclusion that

5  sanctions are necessary to ensure Mitsubishi's future compliance both with the Court's orders as

6  well as its discovery obligations.

7    The five factors noted above also favor the imposition of the sanction DPPs propose. As

8  noted above, where the violation of a Court order is involved, as here, the first two factors support

9  the imposition of sanctions.

10    The third factor—the risk of prejudice to plaintiffs—also militates in favor of sanctions.

11  Mitsubishi's conduct has deprived DPPs of important evidence. "A [party] suffers prejudice if the

12  [opposing party's] actions impair the [party's] ability to go to trial or threaten to interfere with the

13  rightful decision in the case." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990);

14  *see also Payne*, 121 F.3d at 508 (belated production of information does not preclude prejudice).

15    The fourth factor—the public policy favoring disposition of cases on their merits—also

16  militates in favor of sanctions. While normally, as noted above, this factor "cuts against a default,"

17  DPPs do not propose that any facts be found against Mitsubishi, or that it be deprived of any

18  substantive defense. Rather, DPPs propose simply that the jury be allowed to consider evidence.

19  Mitsubishi would remain free to submit counter evidence and argument. Indeed, as the DAPs have

20  explained, this evidence will likely be admissible in any event. *See* DAPs' Opposition to MELCO's

21  Motion for Summary Judgment at 4–7 (Dec. 23, 2014) (Dkt. 3271); DAPs' Response in Opposition

22  to MELCO's Motion *in Limine* No. 1 (Feb. 27, 2015) (Dkt. 3644). The proposed sanction will

23  allow the disposition of the case on the merits, and therefore this factor also supports sanctions.

24    Finally, the fifth factor—the availability of less drastic sanctions—also militates in favor of

25  sanctions here. Plaintiffs are seeking a reasonable and limited set of evidentiary sanctions that

26  relate directly to the most important factual issue implicated by Mitsubishi's improper conduct.

27  Mitsubishi's continued violation of its obligations despite the Court's previous orders demonstrates

28  the necessity of a sanction beyond an order simply requiring it to provide the discovery it withheld.

1  **V.      CONCLUSION**

2          For all the reasons stated above, DPPs respectfully submit that the Court find that the

3  Mitsubishi defendants be compelled to: (1) provide full and complete responses to DPPs'

4  September 4, 2014 and December 19, 2014 interrogatories; and (2) order that Mitsubishi is subject

5  to evidentiary sanctions pursuant to Rule 37, as follows:

6          The interrogatory responses of Samsung SDI regarding Mitsubishi's participation
           in the alleged conspiracy, as well as all documents evidencing Mitsubishi's
7          contacts with competitors, will be deemed admissible at trial.

8  Dated: December 4, 2015

9                                          By: */s/ R. Alexander Saveri*
                                           R. Alexander Saveri
10                                         **SAVERI & SAVERI, INC.**
                                           706 Sansome Street
11                                         San Francisco, CA 94lll
                                           Telephone: (415) 217-6810
12                                         Facsimile: (415) 217-6813

13
                                           By: */s/ Joseph C. Cotchett*
14                                         Joseph C. Cotchett
                                           **COTCHETT, PITRE & McCARTHY, LLP**
15                                         840 Malcolm Road, Suite 200
                                           Burlingame, CA  94010
16                                         Telephone:  (650) 697-6000
                                           Facsimile:  (650) 697-0577
17

18

19

20

21

22

23

24

25

26

27

28

1   Guido Saveri (22349)
        *guido@saveri.com*
2   R. Alexander Saveri (173102)
        *rick@saveri.com*
3   Geoffrey C. Rushing (126910)
        *grushing@saveri.com*
4   Cadio Zirpoli (179108)
        *cadio@saveri.com*
5   SAVERI & SAVERI, INC.
    706 Sansome Street
6   San Francisco, CA 94111
    Telephone:  (415) 217-6810
7   Facsimile:  (415) 217-6813

8   *Lead Counsel for the*
    *Direct Purchaser Plaintiffs*

9

10

11              **UNITED STATES DISTRICT COURT**

12             **NORTHERN DISTRICT OF CALIFORNIA**

13                **SAN FRANCISCO DIVISION**

14

15   IN RE CATHODE RAY TUBE (CRT)          Master File No. 07-CV-5944-JST
     ANTITRUST LITIGATION
16                                          MDL No. 1917

17   _____    **DECLARATION OF GEOFFREY C.**
                                            **RUSHING IN SUPPORT OF DIRECT**
18   This Document Relates to:              **PURCHASER PLAINTIFFS' MOTION**
                                            **TO COMPEL MITSUBISHI TO**
19   *Crago, d/b/a Dash Computers, Inc., et al. v.*   **PROVIDE FULL AND COMPLETE**
     *Mitsubishi Electric Corporation, et al.*,       **RESPONSES TO DISCOVERY RE:**
     Case No. 14-CV-2058-JST              **MEETINGS WITH COMPETITORS,**
20                                          **SALES, AND DESTRUCTION OF**
21                                          **EVIDENCE, AND FOR EVIDENTIARY**
                                            **SANCTIONS**
22
                                            Special Master:  Hon. Vaughan R. Walker
23                                          (ret.)

24

25

26   **CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER**

27

28

_____

RUSHING DECL. ISO DPPS' MOTION TO COMPEL MOTION TO COMPEL MITSUBISHI TO PROVIDE
RESPONSES TO DISCOVERY, AND FOR EVIDENTIARY SANCTIONS; NO. 07-CV-5944-JST

I, GEOFFREY C. RUSHING, declare:

1.      I am of counsel to Saveri & Saveri, Inc., which the Court has appointed as Lead Counsel for the Direct Purchaser Plaintiffs ("DPPs") in this action. I have been involved in almost every aspect of this case since its inception. I submit this declaration in support of Direct Purchaser Plaintiffs' Motion to Compel Mitsubishi to Provide Full and Complete Responses to Discovery Re: Meetings With Competitors, Sales, and Destruction of Evidence, and for Evidentiary Sanctions. Unless otherwise indicated, I make this declaration of my own personal knowledge, and if called upon to do so, could and would testify competently to the facts contained herein.

2.      Attached hereto as Exhibit 18 is a true and correct copy of Samsung SDI Co., Ltd.'s Responses to Dell Plaintiffs' First Set of Interrogatories, dated November 25, 2013.

3.      Attached hereto as Exhibit 19 is a true and correct copy of DPPs' Motion to Compel Supplemental Responses from the Mitsubishi Defendants, dated December 18, 2014.

4.      Attached hereto as Exhibit 20 is a true and correct copy of a letter from Gabriel A. Fuentes to Douglas A. Millen regarding Mitsubishi's supplemental interrogatory responses served on DPPs on December 10, 2014, dated December 19, 2014.

5.      Attached hereto as Exhibit 21 is a true and correct copy of Mitsubishi Electric Corporation's Supplemental Response to Direct Purchaser Plaintiffs' First Set of Interrogatories, dated January 16, 2015.

6.      Attached hereto as Exhibit 22 is a true and correct copy of excerpts of the deposition of Mr. Koji Murata, taken at the offices of Jenner & Block LLP, 321 North Clark Street, Chicago, Illinois, on December 8–9, 2014, and at the Law Office of Vaughn R. Walker, Four Embarcadero Center, San Francisco, California, on July 9, 2015.

7.      Attached hereto as Exhibit 23 is a true and correct copy of DPPs' Motion to Compel Testimony and Other Evidence Sought in the Deposition of Mr. Koji Murata, dated January 30, 2015.

8.      Attached hereto as Exhibit 24 is a true and correct copy of Mitsubishi Electric Corporation's Third Supplemental Response to Direct Purchaser Plaintiffs' Interrogatories No. 5,

10–12, dated May 26, 2015.

9.     Attached hereto as <u>Exhibit 25</u> is a true and correct copy of Mitsubishi Electric US, Inc.'s Supplemental Response to Direct Purchaser Plaintiffs' Interrogatory No. 12, dated May 26, 2015.

10.     Attached hereto as <u>Exhibit 26</u> is a true and correct copy of Mitsubishi Electric Visual Solutions America, Inc.'s Supplemental Response to Direct Purchaser Plaintiffs' Interrogatory No. 12, dated May 26, 2015.

11.     Attached hereto as <u>Exhibit 27</u> is a true and correct copy of Mitsubishi Electric's Response to DPPs' Motion to Compel Supplemental Discovery, dated May 26, 2015.

12.     Attached hereto as <u>Exhibit 28</u> is a true and correct copy of a letter from Gabriel A. Fuentes to R. Alexander Saveri listing the Bates ranges for the documents Mr. Murata reviewed in preparation for his deposition, dated June 12, 2015.

13.     Attached hereto as <u>Exhibit 29</u> is a true and correct copy of a document produced by Mitsubishi in this litigation bearing Bates number range ME00024873–89. It is marked as deposition exhibit no. Dep. ex. 8214. Attached hereto as <u>Exhibit 30</u> is a true and correct copy of a certified translation of that document to English, marked as deposition exhibit no. 8214E.

14.     On June 29, 2015 counsel for DPPs organized a meet and confer conference with counsel for Mitsubishi to discuss various discovery issues. Attached hereto as <u>Exhibit 31</u> is a true and correct copy of my letter to Gabriel A. Fuentes of Jenner & Block LLP, dated July 2, 2015, confirming that conference. During the conference, Mitsubishi assured DPPs that its search for documents was thorough and complete. Mitsubishi stated that most of whatever information once may have existed was now gone, and that what remained was not sufficient to enable it to make any meaningful response beyond a reference to documents.

15.     Attached hereto as <u>Exhibit 32</u> is a true and correct copy of Mitsubishi Electric Defendants' Surresponse to DPPs' Motion to Compel Supplemental Discovery, dated June 10, 2015.

16.     Attached hereto as <u>Exhibit 33</u> is a true and correct copy of excerpts of the 30(b)(6) deposition of Mitsubishi Electric Corporation by Mr. Hitoshi Tsukamoto, taken at the offices of

1    Jenner & Block LLP, 321 North Clark Street, Chicago, Illinois, on September 22–23, 2014.

2          17.    Attached hereto as <u>Exhibit 34</u> is a true and correct copy of excerpts of the

3    deposition of Mr. Kiyoshi Furukawa, taken at the offices of Jenner & Block LLP, 633 West Fifth

4    Street, Los Angeles, California, on July 14, 2015.

5          18.    Attached hereto as <u>Exhibit 35</u> is a true and correct copy of excerpts of the

6    deposition of Mr. Max Wasinger, taken at the offices of Jenner & Block LLP, 633 West Fifth

7    Street, Los Angeles, California, on July 16, 2015.

8          19.    Attached hereto as <u>Exhibit 36</u> is a true and correct copy of Mitsubishi Electric

9    Corporation's Fourth Supplemental Response to Direct Purchaser Plaintiff Crago, d/b/a Dash

10    Computers, Inc.'s First Set of Interrogatories to Defendants Mitsubishi, Thomson and TDA, dated

11    July 28, 2015.

12          20.    Attached hereto as <u>Exhibit 37</u> is a true and correct copy of Mitsubishi Electric US,

13    Inc.'s Second Supplemental Response to Direct Purchaser Plaintiff Crago, d/b/a Dash Computers,

14    Inc.'s First Set of Interrogatories to Defendants Mitsubishi, Thomson and TDA, dated July 28,

15    2015.

16          21.    Attached hereto as <u>Exhibit 38</u> is a true and correct copy of Mitsubishi Electric

17    Visual Solutions America, Inc.'s Second Supplemental Response to Direct Purchaser Plaintiff

18    Crago, d/b/a Dash Computers, Inc.'s First Set of Interrogatories to Defendants Mitsubishi,

19    Thomson and TDA, dated July 28, 2015.

20          22.    Attached hereto as <u>Exhibit 39</u> is a true and correct copy of Mitsubishi Electric

21    Defendants' Supplemental Response to Direct Purchaser Plaintiff Wettstein and Sons, Inc.'s First

22    Set of Interrogatories to Mitsubishi Defendants, dated July 28, 2015.

23          23.    Attached hereto as <u>Exhibit 40</u> is a true and correct copy of a letter from Gabriel A.

24    Fuentes to R. Alexander Saveri regarding a supplemental production of documents from

25    Defendant Mitsubishi Electric Visual Solutions America, Inc., dated September 24, 2015.

26          24.    Attached hereto as <u>Exhibit 41</u> is a true and correct copy of a document produced

27    by Mitsubishi in this litigation bearing Bates number ME00154189.

28          25.    Attached hereto as <u>Exhibit 42</u> is a true and correct copy of a document produced

1    by Mitsubishi in this litigation bearing Bates number ME00154067.

2    26.    Attached hereto as Exhibit 43 is a true and correct copy of a document produced

3    by Mitsubishi in this litigation bearing Bates number ME00154401.

4    27.    Attached hereto as Exhibit 44 is a true and correct copy of my letter to Gabriel A.

5    Fuentes of Jenner & Block LLP, dated October 5, 2015, asking Mitsubishi to confirm that its

6    interrogatory responses were current in light of the additional documents it had discovered. Mr.

7    Fuentes confirmed to me by telephone on October 14, 2015 that Mitsubishi had no present

8    intention to update its responses.

9    28.    On November 3, 2015, counsel for Mitsubishi informed DPPs by telephone that it

10    was reviewing another large amount of records not previously searched—"gigabytes"—contained

11    on a MEVSA fileserver and the hard drives of certain employee, including at least one belonging

12    to an employee—Max Wasinger—already deposed. Attached hereto as Exhibit 45 is a true and

13    correct copy of my e-mail exchange with Gabriel A. Fuentes memorializing that teleconference.

14    29.    Attached hereto as Exhibit 46 are true and correct copies of a document produced

15    by Hitachi in this litigation bearing Bates number range HDP-CRT00025965–66 and a certified

16    translation of that document to English. They are marked as deposition exhibit nos. 2376 and

17    2376E.

18    30.    Attached hereto as Exhibit 47 is a true and correct copy of a document produced

19    by Chunghwa in this litigation bearing Bates number range CHU00028528–29. It is marked as

20    deposition exhibit no. 8340C. Attached hereto as Exhibit 48 is a true and correct copy of a

21    certified translation of that document to English, marked as deposition exhibit no. 8340E.

22    Attached hereto as Exhibit 49 is a true and correct copy of a certified translation of that document

23    to Japanese, marked as deposition exhibit no. 8340J.

24    31.    Attached hereto as Exhibit 50 is a true and correct copy of a document produced

25    by Samsung SDI in this litigation bearing Bates number range SDCRT-0087379–80.

26    32.    Attached hereto as Exhibit 51 are true and correct copies of a document produced

27    by Chunghwa in this litigation bearing Bates number CHU00031154 and a certified translation of

28    that document to English. They are marked as deposition exhibit nos. 8201 and 8201E.

1    33.    Attached hereto as <u>Exhibit 52</u> is a true and correct copy of a document produced

2    by Mitsubishi in this litigation bearing Bates number ME00088280. It is marked as deposition

3    exhibit no. 8206. Attached hereto as <u>Exhibit 53</u> is a true and correct copy of a certified translation

4    of that document to English, marked as deposition exhibit no. 8206E.

5    34.    Attached hereto as <u>Exhibit 54</u> is a true and correct copy of a document produced

6    by Mitsubishi in this litigation bearing Bates number ME00088467. It is marked as deposition

7    exhibit no. 8203. Attached hereto as <u>Exhibit 55</u> is a true and correct copy of a certified translation

8    of that document to English.

9    35.    Attached hereto as <u>Exhibit 56</u> is a true and correct copy of a document produced

10   by Samsung SDI in this litigation bearing Bates number range SDCRT-0087970–76. Attached

11   hereto as <u>Exhibit 57</u> is a true and correct copy of a certified translation of that document to

12   English.

13   36.    Attached hereto as <u>Exhibit 58</u> is a true and correct copy of a document produced

14   by Philips in this litigation bearing Bates number range PHLP-CRT-015923–25. It is marked as

15   deposition exhibit no. 2285.

16   37.    Attached hereto as <u>Exhibit 59</u> is a true and correct copy of a document produced

17   by Mitsubishi in this litigation bearing Bates number range ME00024892–99. It is marked as

18   deposition exhibit no. 8212. Attached hereto as <u>Exhibit 60</u> is a true and correct copy of a certified

19   translation of that document to English, marked as deposition exhibit no. 8212E.

20   38.    Attached hereto as <u>Exhibit 61</u> is a true and correct copy of a document produced

21   by Mitsubishi in this litigation bearing Bates number ME00024890. It is marked as deposition

22   exhibit no. 8213.

23   39.    Attached hereto as <u>Exhibit 62</u> is a true and correct copy of a document produced

24   by Samsung SDI in this litigation bearing Bates number range SDCRT-0006041–42. It is marked

25   as deposition exhibit no. 635. Attached hereto as <u>Exhibit 63</u> is a true and correct copy of a

26   certified translation of that document to English, marked as deposition exhibit no. 635EF.

27   / / /

28   / / /

1    40.    I declare under penalty of perjury under the laws of the United States that the

2  foregoing is true and correct. Executed on December 4, 2015 at San Francisco, California.

3

4                              _____/s/ Geoffrey C. Rushing_____
                                      Geoffrey C. Rushing

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28