# Exhibit 4

**SAVERI & SAVERI, INC.**
706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

June 30, 2016

Honorable Vaughn R. Walker
Law Office of Vaughn R. Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA 94111

Re:     *In re: Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917,
         **Case No. 14-cv-2058-JST**

*CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*

Your Honor:

**I.      Introduction.**

Direct Purchaser Plaintiffs ("DPPs") request leave to submit this Supplemental Brief in Support of Their Motion to Compel Mitsubishi to Provide Full and Complete Responses to Discovery re: Meetings with Competitors, Sales, and Destruction of Evidence, and for Evidentiary Sanctions ("Motion" or "Mot."), filed on December 4, 2015, and to update the Court on developments since the filing of DPPs' reply brief on January 8, 2016.[1]

First, it has become clear as a result of continuing discovery and analysis that there are additional meetings between Mitsubishi employees and their competitors that Mitsubishi should have disclosed in its responses to interrogatories.[2] Mitsubishi's refusal to acknowledge these meetings removes all doubt that it is withholding evidence of its participation in the alleged conspiracy.

Second, Mitsubishi supplemented its response to Interrogatory No. 12 regarding its sales during the class period on February 18, 2016 to reference certain sales records. It claims, however, that "it has been unable to verify the accuracy" of these records. Rushing Supp. Decl., ex. 1. This response both confirms that Mitsubishi's previous representations to the Court and to DPPs about its knowledge of its sales were incorrect, and demonstrates Mitsubishi's continuing refusal to fulfill its discovery obligations. The bad faith of its assertion that it cannot verify the accuracy of its own business records is

---

[1] This supplemental brief is supported by the accompanying declaration of Geoffrey C. Rushing ("Rushing Supp. Decl.").

[2] "Mitsubishi" refers collectively to Defendants Mitsubishi Electric Corporation ("MELCO"), Mitsubishi Electric US, Inc. ("MEUS"), and Mitsubishi Electric Visual Solutions America, Inc. ("MEVSA").

*CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*

Hon. Vaughn R. Walker
6/30/2016
Page 2

made clear by the fact that the records were transmitted to Max Wasinger (among others), a former Mitsubishi executive still available to Mitsubishi. He was deposed last summer and represented by Mitsubishi's counsel. Rushing Supp. Decl. ¶ 3.

Third, recent deposition testimony highlights the insufficiency of Mitsubishi's account of its destruction of documents.

Each of these developments underscores the importance of DPPs' Motion, and supports granting it in all respects.

### II.     There Are Many More Meetings with Competitors Which Mitsubishi Has Concealed or Failed to Acknowledge.

In additional to the eleven undisclosed conspiratorial contacts DPPs identified in the Motion, DPPs have identified additional meetings with competitors that Mitsubishi has concealed or failed to acknowledge. For example:

- On January 12–13, 1999, Mitsubishi sales executive Hitoshi Nakajima and audio-visual information systems group president Fumio Okusa traveled to Korea for a "top-level meeting" with Samsung SDI. Dep. ex. 8352 (Rushing Supp. Decl., ex. 2). A former Mitsubishi CRT general manager—Hideo Innami—confirmed that this meeting occurred. Innami Dep. Tr. 199:14–206:20 (Rushing Supp. Decl., ex. 3).

- On February 8, 1999, Mitsubishi CRT General Manager Innami and CRT engineers met with senior Chunghwa executives and technical employees regarding future production plans, preceded by a "CDT Investigation Advance Meeting" on February 2, 1999. Dep. ex. 8358 (Rushing Supp. Decl., ex. 4). Mr. Innami also confirmed the occurrence of these meetings in deposition. Innami Dep. Tr. 236:16–239:23 (Rushing Supp. Decl., ex. 3).

- On February 22–23, 1999, Mitsubishi sales executive Hitoshi Nakajima traveled to Seoul, Korea to meet with competitor Samsung SDI. This meeting is confirmed by a Mitsubishi document. ME000088535 (Rushing Supp. Decl., ex. 5).

- On August 12–14, 1999, Mitsubishi sales executive Hitoshi Nakajima traveled to Seoul, Korea, where competitor Samsung SDI is based, to discuss pricing of 17"–19" CRTs. A Mitsubishi travel expense form confirms this meeting. ME000088527 (Rushing Supp. Decl., ex. 6).

- On September 20–22, 1999, Mitsubishi sales executive Hitoshi Nakajima met with "Samsung" in Seoul, Korea, where competitor Samsung SDI is based, according to a Mitsubishi travel expense form. ME000088523 (Rushing Supp. Decl., ex. 7).

Hon. Vaughn R. Walker
6/30/2016
Page 3

- SDI conspirator Jae In Lee and Mitsubishi sales executive Hitoshi Nakajima made a golf date for January 12, 2002, according to handwritten notes from an October 25, 2001 meeting. SDCRT-0087430–32 (Rushing Supp. Decl., ex. 8).

- On June 19, 2003, Mitsubishi sales executive Hitoshi Nakajima met with SDI conspirator Jae In Lee regarding CDT production and price maintenance. This meeting is confirmed by a Mitsubishi travel expense record, ME00088454 (Rushing Supp. Decl., ex. 9), as well as notes of Jae In Lee produced by Samsung SDI. SDCRT-0088803 (Rushing Supp. Decl., ex. 10).

- On October 13–14, 2003, Mitsubishi sales executive Hitoshi Nakajima met with competitor LG Philips regarding CRTs. This meeting is confirmed by a Mitsubishi travel record. ME00088448 (Rushing Supp. Decl., ex. 11).

There can be no doubt that Mitsubishi should have disclosed these meetings in its response to Interrogatory No. 5. These meetings, in addition to those discussed in DPPs' previous briefs, compel the granting of this motion to compel. Furthermore, Mitsubishi's gross failure to disclose its contacts with competitors also demonstrates the need for a substantial sanction.

There are many other meetings with competitors of which Mitsubishi should have knowledge, but are not, as far as DPPs are aware, confirmed by Mitsubishi documents or available witnesses. Alleged co-conspirator Toshiba's interrogatory responses document at least four meetings. Thus, in January 2000, a Toshiba employee, in an e-mail marked "destroy after reading," described regular exchange of "secret" information "in regard to NAFTA medium size tubes" with Mitsubishi. TSB-CRT-00042440–43 (Rushing Supp. Decl., ex. 12). On January 24, 2001, a Toshiba employee and a Mitsubishi employee met to discuss CRT customers and sales. *See* Toshiba Corp.'s Supp. Objs and Resps. to Interrog. Nos. 4 and 5 of DPPs' 1st Set of Interrogs. at 44 (Feb. 10, 2012) (Rushing Supp. Decl., ex. 13). On March 6, 2001, a Toshiba employee and a Mitsubishi employee met to discuss CRT sales. *See id.* at 46. On December 26, 2002, Toshiba employee T. Kawano and Mitsubishi employee Yokata met in Japan to discuss CRT sales and pricing. *See id.* at 58.

Hitachi also has identified meetings with Mitsubishi. On March 13, 1998, representatives of Mitsubishi and Hitachi met and discussed future production and future pricing of CDTs. Dep. ex. 8353 (Rushing Supp. Decl., ex. 14). Around May 27, 1998, Mitsubishi and Hitachi exchanged future production information. Dep. ex. 2377 (Rushing Supp. Decl., ex. 15). On July 22, 2003, representatives of Hitachi US and Mitsubishi North America subsidiary MDDM met in Mexico. Dep. ex. 2513 (Rushing Supp. Decl., ex. 16).

Mitsubishi should be ordered to provide full and complete responses to DPPs' Interrogatory No. 5 immediately, and should be subject to sanctions, as explained in the Motion.

Hon. Vaughn R. Walker
6/30/2016
Page 4

### III.    Sales.

On February 18, 2016, Mitsubishi served a supplemental response to DPPs'
Interrogatory No. 12, regarding its sales of CRTs and Finished Products in the United
States during the class period. In spite of its repeated assertions that no such records
existed, Mitsubishi identified forty-eight documents showing $ 1,176,181,755 in sales of
CRT televisions in the United States between January, 1995 and December, 1998.

These documents were sales records prepared and sent by a Mitsubishi U.S.
subsidiary to the individuals at the parent company, MELCO, charged with overseeing
the United States operations. Innami Dep. Tr. 228:5–229:25 (Rushing Supp. Decl., ex. 3).
Max Wasinger, a vice president of sales, was copied on the records. He was deposed last
summer, before the documents were produced. *See* Rushing Supp. Decl. ¶ 3, exs. 17–19 .

The supplemental response states:

MEVSA notes that for a portion of the period referenced in the
Interrogatory, Mitsubishi Consumer Electronics America, Inc., known as
"MCEA," sold CRT televisions in the United States. MCEA no longer
exists, as Mitsubishi Electric Corporation and its subsidiaries (MEVSA
and Mitsubishi Electric US, Inc.) have not participated in the CRT
business for many years. MEVSA is a successor to MCEA. MEVSA
responds that documents from MEVSA's document production contain the
following monthly sales figures for CRT televisions sold by MCEA from
January 1995 to December 1998:

[chart with monthly figures and bates numbers omitted]

MEVSA further states that it has been unable to verify the accuracy of
these CRT television sales figures, as the business has long been closed.

This response confirms the merits of DPPs' motion. First, it demonstrates
unequivocally that Mitsubishi's repeated assurances to the Court and to DPPs about the
existence of sales records and the adequacy of its searches there for have been false.
Second, it demonstrates, again, Mitsubishi's modus operandi in this case: resist producing
information important to DPPs' case via, *inter alia*, false assurances of good faith and
delay, and then produce only what it is forced to produce after repeated bouts of motion
practice. Third, it is yet another example of Mitsubishi's continuing refusal to provide
full and complete responses. Mitsubishi's assertion that "it has been unable to verify the
accuracy" of the information provided begs credulity. The documents Mitsubishi
references are business records prepared and transmitted to MELCO in the ordinary
course of business. Moreover, Max Wasinger—a former MCEA vice president of sales—
was copied on these reports and is undoubtedly available to Mitsubishi to confirm these
facts. Mitsubishi produced Mr. Wasinger for deposition and its counsel represented him.
*See* Rushing Supp. Decl. ¶ 3.

Hon. Vaughn R. Walker
6/30/2016
Page 5

       In addition to the sales of CRT televisions, Mitsubishi has also produced at least one document containing detailed sales information of CRT monitors. *See* ME00198160 (Rushing Supp. Decl., ex. 20). DPPs located this document in the productions made by MEVSA and MEUS. This document, which sets forth sales of $17,991,461.96 for the period April to June, 2000, indicates that Mitsubishi may have many more similar documents that it has failed to produce or identify to date.

## IV.    Destruction of Evidence.

       Mr. Innami testified that when he was General Manager of the CRT Division from 1995 to 1999, they kept many records going to critical issues in the case. Among other things:

- Each department—including business planning, materials, sales and manufacturing—was responsible for generating a report on its activities for a monthly meeting of all departments. Innami Dep. Tr. 36:7–43:7 (Rushing Supp. Decl., ex. 21).

- All of the section and department heads would file and retain hard copies of all of the materials from the monthly all-department meetings, as well as for quarterly and annual meetings, and electronic copies may have also been retained. Innami Dep. Tr. 53:22–58:19 (Rushing Supp. Decl., ex. 21).

- There was a policy to create a record of meetings that Mitsubishi employees attended, and some of those records were preserved. Innami Dep. Tr. 187:25–190:4 (Rushing Supp. Decl., ex. 3).

- Employees who met with competitors would have been required to make a report to others in the CRT Division of those meetings. *See* Innami Dep. Tr. 198:21–199:10; 209:12–17 (Rushing Supp. Decl., ex. 3).

- Mr. Innami received written reports from the sales department about its meetings with competitors, including regarding future pricing information. Innami Dep. Tr. 133:24–139:23 (Rushing Supp. Decl., ex. 21).

Mitsubishi's assertion in its interrogatory responses that it essentially knows nothing about how these and other materials were destroyed is inadequate and self-serving. It reflects a failure to provide all information it has about the destruction of documents and/or a failure to conduct a reasonable investigation, probably both.

Hon. Vaughn R. Walker
6/30/2016
Page 6

**V.    Conclusion.**

For all the reasons stated above, DPPs respectfully submit that its motion be granted as set forth in DPPs' previous briefs.

Yours sincerely,

*/s/ R. Alexander Saveri*
R. Alexander Saveri
Lead Counsel for the Direct Purchaser Plaintiffs

GUIDO SAVERI (22349)
      guido@saveri.com
R. ALEXANDER SAVERI (173102)
      rick@saveri.com
GEOFFREY C. RUSHING (126910)
      grushing@saveri.com
CADIO ZIRPOLI (179108)
      cadio@saveri.com
MATTHEW D. HEAPHY (227224)
      mheaphy@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for the*
*Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **DECLARATION OF GEOFFREY C. RUSHING IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL MITSUBISHI TO PROVIDE FULL AND COMPLETE RESPONSES TO DISCOVERY RE: MEETINGS WITH COMPETITORS, SALES, AND DESTRUCTION OF EVIDENCE, AND FOR EVIDENTIARY SANCTIONS** |
| *Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al.*, Case No. 14-CV-2058-JST. | |
| | Special Master: Hon. Vaughn R. Walker (ret.) |

**CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER**

I, GEOFFREY C. RUSHING, declare:

1.      I am of counsel to Saveri & Saveri, Inc., which the Court has appointed as Lead Counsel for the Direct Purchaser Plaintiffs ("DPPs") in this action. I have been involved in almost every aspect of this case since its inception. I submit this declaration in support of Direct Purchaser Plaintiffs' Supplemental Brief in Support of Their Motion to Compel Mitsubishi to Provide Full and Complete Responses to Discovery re: Meetings with Competitors, Sales, and Destruction of Evidence, and for Evidentiary Sanctions. Unless otherwise indicated, I make this declaration of my own personal knowledge, and if called upon to do so, could and would testify competently to the facts contained herein.

2.      Attached hereto as Exhibit 1 is a true and correct copy of Mitsubishi Electric Visual Solutions America, Inc's Third Supplemental Response to Direct Purchaser Plaintiff Crago, d/b/a Dash Computers, Inc,'s First Set of Interrogatories to Defendants Mitsubishi, Thomson and TDA, dated February 18, 2016.

3.      Direct Purchaser Plaintiffs deposed Mr. Max Wasinger at the offices of Jenner & Block, 633 West Fifth Street, Suite 3600, Los Angeles, California, on July 16, 2016.

4.      Attached hereto as Exhibit 2 are true and correct copies of a document produced by Mitsubishi in this litigation bearing Bates number ME00088537 and a certified translation of that document to English. They are marked as deposition exhibit no. 8352.

5.      Attached hereto as Exhibit 3 is a true and correct copy of Volume II of the deposition of Mr. Hideo Innami, taken at the offices of Saveri & Saveri, Inc., 706 Sansome Street, San Francisco, California, on April 26, 2016.

6.      Attached hereto as Exhibit 4 are true and correct copies of a document produced by Mitsubishi in this litigation bearing Bates number range ME00030631–37 and a certified translation of that document to English. They are marked as deposition exhibit no. 8358.

7.      Attached hereto as Exhibit 5 are true and correct copies of a document produced by Mitsubishi in this litigation bearing Bates number ME00088535 and a certified translation of that document to English.

8.      Attached hereto as Exhibit 6 are true and correct copies of a document produced by

Mitsubishi in this litigation bearing Bates number ME00088527 and a certified translation of that document to English.

9.      Attached hereto as <u>Exhibit 7</u> are true and correct copies of a document produced by Mitsubishi in this litigation bearing Bates number ME00088523 and a certified translation of that document to English.

10.     Attached hereto as <u>Exhibit 8</u> are true and correct copies of a document produced by Samsung SDI in this litigation bearing Bates number range SDCRT-0087430–32 and a certified translation of that document to English.

11.     Attached hereto as <u>Exhibit 9</u> are true and correct copies of a document produced by Mitsubishi in this litigation bearing Bates number ME00088454 and a certified translation of that document to English.

12.     Attached hereto as <u>Exhibit 10</u> are true and correct copies of a document produced by Samsung SDI in this litigation bearing Bates number SDCRT-0088803 and a certified translation of that document to English.

13.     Attached hereto as <u>Exhibit 11</u> are true and correct copies of a document produced by Mitsubishi in this litigation bearing Bates number ME00088448 and a certified translation of that document to English.

14.     Attached hereto as <u>Exhibit 12</u> are true and correct copies of a document produced by Toshiba in this litigation bearing Bates number range TSB-CRT-00042440–43 and a certified translation of that document to English.

15.     Attached hereto as <u>Exhibit 13</u> is a true and correct copy of excerpts of Toshiba Corporation's Supplemental Objections and Responses to Interrogatory Nos. Four and Five of Direct Purchaser Plaintiffs' First Set of Interrogatories, dated February 10, 2012.

16.     Attached hereto as <u>Exhibit 14</u> are true and correct copies of a document produced by Hitachi in this litigation bearing Bates number range HDP-CRT00025601–02 and a certified translation of that document to English. They are marked as deposition exhibit no. 8353.

17.     Attached hereto as <u>Exhibit 15</u> are true and correct copies of a document produced by Hitachi in this litigation bearing Bates number HDP-CRT00025584 and a certified translation of

that document to English. They are marked as deposition exhibit nos. 2377 and 2377E.

18.     Attached hereto as <u>Exhibit 16</u> are true and correct copies of a document produced by Hitachi in this litigation bearing Bates number range HEDUS-CRT00000531–50 and a certified translation of that document to English. They are marked as deposition exhibit nos. 2513 and 2513E.

19.     Attached hereto as <u>Exhibit 17</u> is a true and correct copy of a letter from Mitsubishi counsel Gabriel A. Fuentes to R. Alexander Saveri regarding the production of documents bearing Bates number range ME00148699–ME00166028, dated September 24, 2015.

20.     Attached hereto as <u>Exhibit 18</u> is a true and correct copy of a letter from Mitsubishi counsel Jory M. Hoffman to R. Alexander Saveri regarding the production of documents bearing Bates number range ME00166029–ME00197490, dated December 23, 2015.

21.     Attached hereto as <u>Exhibit 19</u> is a true and correct copy of a letter from Mitsubishi counsel Jory M. Hoffman to Douglas A. Millen regarding the production of documents bearing Bates number range ME00242422–ME00243950, dated January 30, 2016.

22.     Attached hereto as <u>Exhibit 20</u> is a true and correct copy of a document produced by Mitsubishi in this litigation bearing Bates number ME00198160. On information and belief, the date indicated on the first page below "PIMS S.A. DE C.V." is automatically set to reflect the current date, and thus here it is the date the document was printed from the native format in which it was produced.

23.     Attached hereto as <u>Exhibit 21</u> is a true and correct copy of Volume I of the deposition of Mr. Hideo Innami, taken at the offices of Saveri & Saveri, Inc., 706 Sansome Street, San Francisco, California, on April 25, 2016.

24.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on June 30, 2016 at San Francisco, California.


                          */s/ Geoffrey C. Rushing*
                          Geoffrey C. Rushing