# Exhibit 7

353 NORTH CLARK STREET CHICAGO ILLINOIS 60654-3456

JENNER&BLOCK LLP

February 6, 2015

Gabriel A. Fuentes
Tel  312 923-2808
Fax 312 923-2908
gfuentes@jenner.com

VIA E-MAIL

The Hon. Vaughn R. Walker (Ret.)
c/o Jay Weil
Federal Arbitration, Inc.
288 Hamilton Ave., 3rd Floor
Palo Alto, CA 94301

Re:    *In re Cathode Ray Tube (CRT) Antitrust Litigation,*
       MDL No. 1917; Case No. 14-cv-2058-SC (N.D. Cal.)

Dear Judge Walker:

## **INTRODUCTION**

On behalf of Mitsubishi Electric Corporation, Mitsubishi Electric U.S., Inc., and Mitsubishi Electric Visual Solutions America, Inc. (collectively referred to here as "Mitsubishi Electric"), we write in opposition to the Direct Purchaser Plaintiffs' ("DPPs") motion to compel testimony and other evidence sought in the deposition of Mr. Koji Murata. This letter is supported by the accompanying declaration of Gabriel A. Fuentes ("Fuentes Decl.").

The DPPs are not entitled to the relief they seek in their latest motion to compel. The discovery they request is unnecessary, unduly burdensome, costly, and not directed at any material issues. Your Honor should deny the DPPs' motion in its entirety.

First, the DPPs should not be allowed to reopen Mr. Murata's deposition to ask more questions about Exhibit 6114 or his privileged conversation with counsel. The deposition was not stopped while a question was pending, and, in any event, the DPPs agreed to break when they could have chosen to persist with their questioning. Moreover, Mr. Murata provided full and complete answers to the DPPs' questions about Exhibit 6114, none of which were inconsistent, or indicated coaching. Nor were the DPPs ever prevented from asking follow-up questions about that Exhibit.

*CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*

The Hon. Vaughn R. Walker (Ret.)
February 6, 2015
Page 2

Second, Mitsubishi Electric should not be required to produce documents reviewed by Mr. Murata in preparation for his deposition. All of the documents in question have already been produced to the DPPs. The subset that Mr. Murata reviewed was arranged and selected by Mitsubishi Electric's attorneys, making it protected work product.

Third, Mitsubishi Electric has already disclosed information about the preservation of its employees' personal email accounts. It should also not have to summon Mr. Murata to re-testify on that topic, especially because the DPPs already asked Mr. Murata several questions about his personal email account and he provided answers to the best of his knowledge.

For all these reasons, Mitsubishi Electric respectfully requests that the Special Master deny the DPPs' motion to compel.

## <u>ARGUMENT</u>

**I.      Because Mr. Murata Was Not Coached To Provide Testimony, The DPPs Are Not Entitled To Re-Depose Mr. Murata About Exhibit 6114 Or His Privileged Conversation With Counsel.**

The DPPs originally requested to re-open Mr. Murata's deposition in their first motion to compel, filed on December 18, 2014. In a subsequent meet and confer with Mitsubishi Electric's counsel, the DPPs agreed to defer their request, pending further discussion. (Fuentes Decl., Ex. 1, 12-29-2014 Email from G. Fuentes to R. Saveri). In an abrupt about-face, in their reply in support of the motion to compel, the DPPs denied this agreement. Now, without further conferring with Mitsubishi Electric, they want to force Mr. Murata to fly half-way around the world to answer questions about a document he already testified to. The DPPs' request is unnecessary and unduly burdensome. It should be denied.

Mitsubishi Electric agrees that in the Northern District of California "[o]nce a question is asked, a lawyer should not coach the deponent or suggest answers, whether through objections or other means." (*See* Mot. at 6 (citing N.D. Cal. Guideline 9(i)). But nothing about Mr. Murata's testimony or counsel's request for a break reveals that Mr. Murata was coached in any way. On the contrary, Mr. Murata's testimony before and after the break is entirely self-consistent. Before the break, Mr. Murata described what was written on Exhibit 6114 (Fuentes Decl., Ex. 2, K. Murata Dep. Tr. Vol. II at 144:17-20 ("What the document says, I believe, is SDI in Seoul")), but did not avow any personal knowledge about the document, (*id*. at 142:18 – 144:12). After the break, Mr. Murata once again responded to counsel's questioning by referring to what was written in the document (*id*. at 149:6, 15  ("That's what it [Exhibit 6114] says here, yes. . . I see that's what it says here")), and explained that he did not have any personal knowledge about the document, (*id.* at 149:2-18). Mr. Murata's testimony, both before and after the break, was entirely consistent.

CHICAGO   LOS ANGELES   NEW YORK   WASHINGTON, DC          <u>WWW.JENNER.COM</u>
*CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*

The Hon. Vaughn R. Walker (Ret.)
February 6, 2015
Page 3

Moreover, the cases the DPPs rely on are inapposite, as they involve obvious and improper examples of witness coaching. For example, in *BNSF Ry. Co. v. San Joaquin Valley R.R. Co.*, "counsel repeatedly made objections that suggested answers to the witness" and took a break "to obtain water for the witness *when a question was pending* and a bottle of water was within reach of the witness." 2009 U.S. Dist. LEXIS 111569, at *10-11 (E.D. Cal. Nov. 17, 2009) (emphasis added). Even worse, in *Hall v. Clifton Precision, a Div. of Litton Sys. Inc.*, a case which district courts in the Ninth Circuit have declined to follow,[1] counsel blatantly and repeatedly flouted the rules of conduct for a deposition. 150 F.R.D. 525, 526 (E.D. Pa. 1993). Counsel (1) told his client that "at any time if you want to stop and talk to me, all you have to do is indicate that to me;" (2) stopped the deposition when his client wanted to "confer with him about the meaning of the word 'document';" and (3) prevented his client form testifying about a document until he could "review it with [his] client." *Id.*  Last, *Burrows v. Redbud Cmty. Hosp. Dist.*, simply reiterates that voluminous and inappropriate objections during a deposition may amount to witness coaching, but the DPPs do not allege anything similar here. 187 F.R.D. 606, 613-14 (N.D. Cal. 1998). Counsel's conduct in Mr. Murata's deposition was wholly proper, and does not come close to the misconduct described in the cases DPPs rely upon for the extraordinary relief they now seek.

Indeed, unlike the cases cited by the DPPs, Mitsubishi Electric's counsel requested a break *after* Mr. Murata provided an answer to Mr. Millen's question. *See In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621 (D. Nev. 1998) ("If they are requested by the deponent or deponent's counsel, and the interrogating attorney is in the middle of a question, or is following a line of questions which should be completed, the break should be delayed until a question is answered *or a line of questions has been given a reasonable time to be pursued*.") (emphasis added). Further, counsel did not prevent the DPPs from asking questions about the Exhibit either before or after the break. (Fuentes Decl., Ex. 2, K. Murata Dep. Tr. Vol. II at 142:18 – 144:12, 149:2-18). Nor did he attempt to prevent Mr. Murata from answering those questions.

The DPPs' request for relief—to fly Mr. Murata around the world to answer a handful of questions about an Exhibit he already testified to—is extraordinary, unduly burdensome, and unwarranted. Mr. Murata is a busy executive with a demanding schedule. He has already provided two full days of deposition testimony. And, more importantly, the DPPs have already exhausted his personal knowledge about Exhibit 6114. As a result, there is no reason to re-open Mr. Murata's deposition. The DPPs' request to re-depose Mr. Murata should be denied.

---

[1] *In re Stratosphere Corp. Sec. Litig.*, 182 F.R.D. 614, 621 (D. Nev. 1998) ("While this Court agrees with the *Hall* court's identification of the problem, it feels *Hall* goes too far in its solution.").

*CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*

The Hon. Vaughn R. Walker (Ret.)
February 6, 2015
Page 4


**II.     The DPPs Are Not Entitled To Documents Reviewed By Mr. Murata In Preparation For His Deposition Because They Are Protected By The Work Product Doctrine.**

Mitsubishi Electric should not be compelled to produce documents that Mr. Murata reviewed in preparation for his deposition. The DPPs already possess all the documents at issue; Mitsubishi Electric substantially completed its document production by October 24, 2014,[2] several months before Mr. Murata's deposition. (Fuentes Decl., Ex. 3, Mitsubishi Electric's Production Letter From M. Powers to DAPs dated 07-17-2014). Therefore, producing this subset of documents would serve only one purpose: to give the DPPs insight into counsel's selection and arrangement of documents, which is protected work product.

In the 9th Circuit, Federal Rule of Evidence 612 "does not mandate the disclosure of documents used to refresh a witnesses [sic] recollection prior to deposition testimony." *See Server Tech., Inc. v. Am. Power Conversion Corp.*, 2011 U.S. Dist. LEXIS 42980, at *31 (D. Nev. Apr. 14, 2011). Instead, to determine whether such documents are discoverable, the court should consider (1) whether witness coaching occurred; (2) the document type; and (3) whether the request is a fishing expedition. *Id.* at 32-33. In situations where the plaintiffs already possess all of the requested documents, opposing counsel's selection and arrangement is protected under the work product doctrine. *See Aguinaga v. John Morrell & Co.*, 112 F.R.D. 671, 683 (D. Kan. 1986) (holding that "the process of selecting . . . documents is protected by the attorney work product doctrine" and "[s]ince the plaintiffs already had possession of the documents, the only purpose for ordering discovery of the documents . . . would be to inform plaintiffs of the attorneys' process of selection and distillation of documents."), *rev'd on other grounds in*, 993 F.2d 1480 (10th Cir. 1993).

Here, the DPPs already possess the documents they have requested. Their request is more specifically tailored to uncovering what is protected by the work product doctrine: counsel's specific selection and arrangement of certain documents to prepare a witness. As in *Aguinaga*, producing counsel's specific selection and arrangement would "reveal nothing more than what documents the attorneys thought were relevant." *Id.* Further, the factors outlined in *Server Tech* weigh in Mitsubishi Electric's favor. DPPs do not allege that Mr. Murata was coached with these documents. The truth is, after more than a year of discovery, thousands of produced documents, and four depositions, neither the DPPs (nor the Direct Action Plaintiffs) have found any evidence linking Mitsubishi Electric to the

---

[2] Mitsubishi Electric supplemented its production on October 24, 2014. But this production contained less than 150 documents and occurred well before Mr. Murata's deposition. (*See* Fuentes Decl., Ex. 4, Mitsubishi Electric's Supplemental Production Letter From M. Powers to DAPs dated October 24, 2014).

*CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*

The Hon. Vaughn R. Walker (Ret.)
February 6, 2015
Page 5

alleged conspiracy. The DPPs already possess the documents at issue, and their request is nothing more than a "fishing expedition." Accordingly, the DPPs' request that Mitsubishi Electric produce a work-product privileged subset of materials already produced should be rejected.

III.     **The DPPs Already Have Information About Mitsubishi Electric's Employees' Personal Email Accounts, Including Mr. Murata's Testimony, And Therefore The DPPs' Requested Relief Is Inappropriate.**

The DPPs also request that "Mitsubishi should be required to describe its search of Mr. Murata's private email account, and those of other employees, under oath, including the circumstances of any destruction of any potentially responsive material." (Mot. at 8). Mitsubishi Electric has already substantively responded to the DPPs' request in its response to Direct Purchaser Plaintiff Wettstein and Sons, Inc.'s First Set of Interrogatories.  (Fuentes Decl., Ex. 5, Mitsubishi Defendants' Response to Direct Purchaser Plaintiff Wettstein and Sons, Inc.'s First Set of Interrogatories). Finally, the DPPs had free reign to question Mr. Murata about his personal email account during his deposition—and they did. (*See* Fuentes Decl., Ex. 6, K. Murata Dep. Tr. Vol. II at 167:22 – 168:24). Counsel asked Mr. Murata seven separate questions about his email account and Mr. Murata simply did not know the answers to any of them:

> BY MR. MILLEN
> Q. Was this your – one of your Mitsubishi email accounts?
> A. No, it was not.
> Q. Was it a personal e-mail account?
> A. Yes.
> Q. Do you know whether this – I'll call it the nifty e-mail account – whether that was searched for documents related to this litigation?
> A. I don't know.
> Q. Okay. Were you ever asked to provide anyone with your e-mails from this account?
> A.  No.
> Q. Do you still have this e-mail account?
> A. Yes, I use it.
> Q. Okay. Thank you. Do you have a sense about how far back the e-mails in that account go back to?
> A. I don't know.
> Q. Do you recall when you started using that account?
> A. I think I have been using it for a long time; although, I do not remember from when.
> Q. Okay. Do you know if e-mails are automatically deleted from that account?
> A. I don't know. I don't have any details.

(*Id.*)

*CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*

The Hon. Vaughn R. Walker (Ret.)
February 6, 2015
Page 6

       DPPs have no right to require Mr. Murata to return to the United States to answer questions on the same topic.

## **CONCLUSION**

       For the foregoing reasons, Mitsubishi Electric respectfully requests that the Special Master deny the Motion.

Respectfully submitted,

/s/ Gabriel A. Fuentes
Gabriel A. Fuentes

Enclosures (exhibits)

*CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*

1   Brent Caslin (Cal. Bar. No. 198682)
    Jenner & Block LLP
2   633 West Fifth Street
    Suite 3600
3   Los Angeles, California 90071
    Telephone:    213 239-5100
4   Facsimile:    213 239-5199
    bcaslin@jenner.com
5
    Terrence J. Truax (*pro hac vice*)
6   Michael T. Brody (*pro hac vice*)
    Gabriel A. Fuentes (*pro hac vice*)
7   Jenner & Block LLP
    353 N. Clark Street
8   Chicago, Illinois 60654-3456
    Telephone:    312 222-9350
9   Facsimile:    312 527-0484
    ttruax@jenner.com
10  mbrody@jenner.com
    gfuentes@jenner.com
11
    *Attorneys for Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc.,*
12  *and Mitsubishi Electric Visual Solutions America, Inc.*

13
                    UNITED STATES DISTRICT COURT
14                  NORTHERN DISTRICT OF CALIFORNIA
                       SAN FRANCISCO DIVISION
15

16  In re: CATHODE RAY TUBE (CRT)          **Case No. 14-cv-2058-SC**
    ANTITRUST LITIGATION                   **MDL No. 1917**
17  _____

18  This Document Relates to:              **DECLARATION OF GABRIEL A. FUENTES**
                                           **IN SUPPORT OF RESPONSE TO DPPS'**
19  ALL DIRECT PURCHASER ACTIONS           **MOTION TO COMPEL TESTIMONY AND**
                                           **OTHER EVIDENCE SOUGHT IN THE**
20                                         **DEPOSITION OF MR. KOJI MURATA**

21

22  _____

23

24

25               **CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER**

26

27

28
_____

## DECLARATIION OF GABRIEL A. FUENTES

I, Gabriel A. Fuentes, declare as follows:

1.     I am an attorney licensed to practice law in the State of Illinois, and I am a Partner at the law firm of Jenner & Block LLP, attorneys of record for Defendants Mitsubishi Electric Corporation, Mitsubishi Electric U.S., Inc., and Mitsubishi Electric Visual Solutions America, Inc. (collectively referred to here as "Mitsubishi Electric"). I submit this declaration in support of Mitsubishi Electric's Response to the Direct Purchaser Plaintiffs' Motion to Compel Testimony and Other Evidence Sought in the Deposition of Mr. Koji Murata ("Response"). I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently to such facts under oath.

2.     Attached to my declaration as **Exhibit 1** is a true and correct copy of an email from G. Fuentes to R. Saveri dated December 29, 2014. The email memorializes a telephone conversation between Mr. Fuentes and Mr. Saveri in which the parties agreed to "defer a discussion of 're-opening' the deposition of Messrs. Konishi and Murata."

3.     Attached to my declaration as **Exhibit 2** is a true and correct copy of Volume II of Mr. Koji Murata's deposition transcript, excerpted at pages 141-52.

4.     Attached to my declaration as **Exhibit 3** is a true and correct copy of Mitsubishi Electric's Production Letter From M. Powers to DAPs dated July 17, 2014.

5.     Attached to my declaration as **Exhibit 4** is a true and correct copy of Mitsubishi Electric's Supplemental Production Letter From M. Powers to DAPs dated October 24, 2014.

6.     Attached to my declaration as **Exhibit 5** is a true and correct copy of Mitsubishi Defendants' Response to Direct Purchaser Plaintiff Wettstein and Sons, Inc.'s First Set of Interrogatories.

7.     Attached to my declaration as **Exhibit 6** is a true and correct copy of Volume II of Mr. Koji Murata's deposition transcript, excerpted at pages 165-72.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

1    Executed this 6 day of February, 2015 at Chicago, Illinois.

2

3    Dated:  February 6, 2015                    JENNER & BLOCK LLP

4
                                                By:    /s/ Gabriel A. Fuentes
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OFGABRIEL A. FUENTES IN SUPPORT OF MITSUBISHI ELECTRIC DEFENDANTS' RESPONSE
Case No. 14-cv-2058-SC; MDL NO. 1917