# Exhibit 17

353 NORTH CLARK STREET CHICAGO ILLINOIS 60654-3456

JENNER&BLOCK LLP

May 26, 2015

Gabriel A. Fuentes
Tel  312 923-2808
Fax 312 923-2908
gfuentes@jenner.com

VIA E-MAIL

The Hon. Vaughn R. Walker (Ret.)
c/o Jay Weil
Federal Arbitration, Inc.
288 Hamilton Ave., 3rd Floor
Palo Alto, CA 94301

Re:   *In re Cathode Ray Tube (CRT) Antitrust Litigation,*
      <u>MDL No. 1917; Case No. 14-cv-2058 SC (N.D. Cal.)</u>

**HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER**

Dear Judge Walker:

Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc. ("MEUS"), and Mitsubishi Electric Visual Solutions America, Inc. ("MEVSA") (collectively, "Mitsubishi Electric"), appreciate the opportunity to address the Direct Purchaser Plaintiffs' ("DPPs") request to re-open the depositions of Masahiko Konishi and Koji Murata.  Mitsubishi Electric explains below that it has complied fully with the Special Master's April 28, 2015 Order by serving verified interrogatory responses confirming that it has provided the DPPs with all of the written discovery at issue on the Motion to Compel, including all the sales data it has available and the "original" Exhibits A and B to supplemental interrogatory responses initially served on December 10, 2014.  Further, there is no need to re-open either Mr. Murata's or Mr. Konishi's depositions because the "original" Exhibits A and B were produced to the DPPs in September 2014, and both Messrs. Murata and Konishi already were questioned extensively, at their depositions, about Exhibit B and its listing of competitor meetings.  In addition, there is no additional sales data about which to question either witness, because Mitsubishi Electric has confirmed that its reasonable investigation is concluded and that no such additional data could be located from a CRT business that it shuttered or sold years before this lawsuit was filed.  In short, re-deposing Mr. Murata, who lives in Japan, and Mr. Konishi, who lives in Germany, would be a costly and unduly burdensome exercise that is not justified, given that there is no new discovery about which to question them.

The Hon. Vaughn R. Walker (Ret.)
May 26, 2015
Page 2

*Background*

On September 4, 2014, the DPPs served their first set of Interrogatories to Mitsubishi Electric.  (Fuentes Decl. Ex. 1, Direct Purchaser Plaintiff Crago, d/b/a/ Dash Computers, Inc.'s First Set of Interrogatories to Defendants Mitsubishi, Thomson and TDA.)  Interrogatory No. 5 requested information about meetings or communications between Mitsubishi Electric and other CRT or CRT Product producers.  (*Id.*)  Interrogatory No. 12 requested CRT or CRT Product sales data from January 1, 1991 to the present.  (*Id.*)  On December 18, 2014, the DPPs moved to compel Mitsubishi Electric to supplement their interrogatory responses to No. 12, and particularly to provide the "original" Exhibits A and B to the responses initially served on December 10, 2014.  In the meantime, the DPPs, along with the Direct Action Plaintiffs ("DAPs"), had taken the depositions of Mr. Murata (on December 8-9, 2014) and Mr. Konishi (on December 10 and 11, 2014).  In their Motion to Compel, the DPPs argued, among other things, that they should now be allowed to re-open these depositions in light of their not having received the "original" Exhibit A and B documents at the time of those depositions, and of their having allegedly incomplete sales data at the time of those depositions.

To be clear, Exhibit A is a listing of bates numbers of shipping and export documents Mitsubishi Electric previously produced in the litigation.  (*Id.* Ex. 2, Mitsubishi Electric Corporation's Supplemental Response to Direct Action Plaintiffs' First Set of Interrogatories at Ex. A.)  Exhibit B is a listing of 35 line items attempting to describe certain meetings with competitors insofar as Mitsubishi Electric was aware, and it was developed initially in response to an earlier set of interrogatories propounded by the DAPs.  (*Id*. at Ex. B.)  Exhibit B was therefore of obvious value in the Murata and Konishi depositions, but at the time of those depositions, the DPPs already had the original Exhibit B, because it is the same chart that, along with Exhibit A, Mitsubishi Electric produced in the CRT litigation in September 2014, and that was used at earlier Mitsubishi Electric depositions – at which the DPPs were present – on September 18, 22, and 23, 2014.  (Fuentes Decl. Ex. 3, G. Fuentes 09/17/2014 Email to W. Polit and S. Wagner; *id.* Ex. 4, Updated Exhibit B to Mitsubishi Electric Corporation's Supplemental Response to DAPs' First Set of Interrogatories (including Bates number column); *id.* Ex. 5, Mitsubishi Electric 30(b)(6) Dep. (Tsukamoto Vol. I) at 2; *id.* Ex. 6, Nakanishi Dep. Vol. I  at 2.)  Accordingly, while Mitsubishi Electric failed to attach the document to its December 10 interrogatory response to the DPPs, it was the same document that already had been produced, marked as an exhibit, and used, not only at the September 2014 Mitsubishi Electric depositions, but also at the Murata and Konishi depositions in December 2014, including by the DPPs.  (*Id.* Ex. 7, Murata Dep. Vol. I at 61:23, 72:6, 77:25, 108:18; *id.* Ex. 8, Konishi Dep. Vol. I  at 81:17, 82:4, 84:20.)

Furthermore, the DPPs already have all the Mitsubishi Electric sales data that exists.  Mitsubishi Electric does not have any new sales data to give the DPPs, because it does not exist:  Mitsubishi Electric's now-defunct business units last sold CRTs or CRT Products more than a decade ago, and more than eight years before plaintiffs sued Mitsubishi Electric.  (*Id.* Ex. 9, Mitsubishi Electric 30(b)(6) Dep. (Tsukamoto Vol. II) at 210:24-211:5; *id.* Ex. 8, Konishi Dep. Vol. I. at 110:18-21.)  Consequently, while the DPPs complained that Mitsubishi Electric's most recent interrogatory response to No. 12 had

The Hon. Vaughn R. Walker (Ret.)
May 26, 2015
Page 3

indicated that its investigation was not complete, Mitsubishi Electric has since certified – in compliance with the Court's April 28 order – that upon the completion of its investigation, it has no more sales data to produce.

For these reasons, as explained in greater detail below, Mitsubishi Electric respectfully requests that the Special Master deny the DPPs' Motion to re-open the depositions of Messrs. Konishi and Murata.

*Argument*

    I.    **Mitsubishi Electric Has Provided the DPPs With All the Written Discovery They Requested.**

Mitsubishi Electric has produced all the written discovery that the DPPs requested in their December 18, 2014 Motion to Compel.

- *Original Exhibits A and B to Mitsubishi Electric Corporation's Supplemental Response to DPPs' First Set of Interrogatories*. Mitsubishi Electric Corporation formally produced to the DPPs the "original" Exhibits A and B (intended to be attached to the December 10, 2014 interrogatory response) on February 19, 2015. (Fuentes Decl. Ex. 10, J. Hoffman 2/19/2015 Email to R. Saveri Attaching Original Exhibits A and B.) But, as explained in Part II.B below, the DPPs already had the original Exhibits A and B, because they are the same documents produced to the DAPs in September 2014, almost three months before the Murata and Konishi depositions. (*Id.* Ex. 2, Mitsubishi Electric Corporation's Supplemental Response to the DAPs' First Set of Interrogatories at Ex. A; *id.* Ex. 3, G. Fuentes 9/17/2014 Email to W. Polit; *id.* Ex. 4, Updated Exhibit B to Mitsubishi Electric Corporation's Supplemental Response to DAPs' First Set of Interrogatories (including Bates number column).) On May 26, 2015, in accord with the Special Master's order, Mitsubishi Electric served these Exhibits again as attachments to verified supplemental interrogatory responses. (*Id.* Ex. 11, Mitsubishi Electric Corporation's Third Supplemental Response to DPPs' Interrogatories Nos. 5, 10-12; *id.* Ex. 12, MEUS' Supplemental Response to the DPPs' First Set of Interrogatories No. 12; *id.* Ex. 13, MEVSA's Supplemental Response to the DPPs' First Set of Interrogatories No. 12.)

- *Mitsubishi Electric Corporation's Second Supplemental Response to DPPs' Interrogatory No. 5*. In their reply in support of their motion to compel, the DPPs note that on January 16, 2015, defendant Mitsubishi Electric Corporation served a second supplemental response to Interrogatory No. 5. (DPPs' Reply in Support of Mot. to Compel at 5, Jan. 16, 2015.) Mitsubishi Electric Corporation's Second Supplemental response contained an updated and expanded Exhibit B, which listed competitor meetings compiled in a chart as of January 16, 2015, but derived from documents previously produced to the DPPs in the CRT litigation. (G. Fuentes Decl., Ex. 14, Mitsubishi Electric Corporation's Second Supplemental Response to the DPPs' First Set of Interrogatories at Ex. B; G. Fuentes Decl. ¶ 2.) The DPPs since used the new,

The Hon. Vaughn R. Walker (Ret.)
May 26, 2015
Page 4

> expanded Exhibit B (now marked as Exhibit 8200) in Kunihiko Seki's deposition.  (*Id.* Ex. 15, Seki Dep. Vol. I at 86:25, 87:1, 106:15.)
>
> - *Mitsubishi Electric Corporation's Second Supplemental Response to DPPs' Interrogatory No. 12*.  The Special Master also ordered Mitsubishi Electric to supplement its response to Interrogatory No. 12 with "complete substantive responses."  (Order at 7, April 28, 2015.)  Unfortunately, Mitsubishi Electric *does not have any CRT or CRT Product sales data beyond what it has already provided.*  On May 26, 2015, in compliance with the Special Master's order, Mitsubishi Electric served supplemental responses describing in greater detail the sales documents it had previously produced and identified.  In these new responses, Mitsubishi Electric also confirms that it has completed its investigation and that it has not located any new information.  (Fuentes Decl. Ex. 11, Mitsubishi Electric Corporation's Third Supplemental Response to DPPs' First Set of Interrogatories Nos. 5, 10-12; *id.* Ex. 12, MEUS' Supplemental Response to the DPPs' First Set of Interrogatories No. 12; *id.* Ex. 13, MEVSA's Supplemental Response to the DPPs' First Set of Interrogatories No. 12.)

Mitsubishi Electric has provided the DPPs with all the information required by the Special Master's April 28, 2015 Order.  Below, in Part II, Mitsubishi Electric explains why the DPPs have no basis to re-open the depositions of Messrs. Murata or Konishi.

## II.     DPPs Have No Basis to Re-Open the Depositions of Messrs. Murata or Konishi.

### A.  DPPs  Had Mitsubishi Electric's Sales Data Before Deposing Messrs. Murata and Konishi.

Mitsubishi Electric's supplemental response to Interrogatory No. 12, which relates to Mitsubishi Electric's CRT and CRT Product sales, does not merit re-opening Mr. Murata's or Mr. Konishi's depositions.  First, Mitsubishi Electric does not have any new sales data to give the DPPs.  Second, the DPPs have already questioned Messrs. Murata and Konishi about the sales information Mitsubishi Electric does have.

Mitsubishi Electric cannot produce information or documents it does not possess.  *See Pitts v. Davis*, No. 2:12-cv-0823 TLN ACP, 2014 WL 4635464, at *6 (E.D. Cal. Sept. 15, 2014); *Jackson v. Yates*, No. 1:11-CV-00080-LJO, 2014 WL 130478, at *5 (E.D. Cal. Jan. 13, 2014).  Still, the DPPs complain that Mitsubishi Electric Corporation did little more than cite documents from its expert report.  (DPP Reply at 3, Jan. 16, 2015.)  Mitsubishi Electric Corporation cited its expert report and existing sales data (and the sales documents produced by MEUS and MEVSA) because that is all the sales information it has. (Fuentes Decl. ¶ 3.)  Mitsubishi Electric's Third Supplemental Response, served on May 26, 2015, clarifies the specific sales data that it has produced, and confirms that after completing its investigation, no other data exists. (Fuentes Decl. Ex. 11, Mitsubishi Electric Corporation's Third Supplemental Response to DPPs' First Set of Interrogatories Nos. 5, 10-12; *id.* Ex. 12, MEUS' Supplemental

The Hon. Vaughn R. Walker (Ret.)
May 26, 2015
Page 5

Response to the DPPs' First Set of Interrogatories No. 12; *id.* Ex. 13, MEVSA's Supplemental Response to the DPPs' First Set of Interrogatories No. 12.)  The DPPs should not be permitted to compel these witnesses to travel back to the United States from Germany and Japan in the absence of any basis for any new questions about sales data that does not exist.

Besides, the plaintiffs have already asked Messrs. Konishi and Murata about the sales documents Mitsubishi Electric was able to locate and produce.[1]  At Mr. Konishi's deposition, counsel for the DAPs asked him about what happened to "documents and data" related to CRTs, including "sales data." (*Id.* Ex. 8, Konishi Dep. Vol. I at 106:15-108:14.)  Mr. Konishi answered these questions to the best of his knowledge.  (*Id.*).  Mr. Murata too was asked about Mitsubishi Electric's sales documents. (*Id.* Ex. 16, Murata Dep. Vol. II at 176:3-177:4.)  He explained that he did not know how to locate Mitsubishi Electric's CRT sales data.  (*Id.*)  The DPPs already asked both Messrs. Konishi and Murata questions about Mitsubishi Electric's sales documents.  Both witnesses exhausted their recollections and need not be compelled to do so again.

Mitsubishi Electric would also like to explain to the Special Master why it does not have any additional sales data to give the DPPs.  Although this litigation began in November 2007, no plaintiff sued Mitsubishi Electric until the Indirect Purchaser Plaintiffs moved for leave to amend their Complaint almost three years ago, in August 2012.  (*See* Dkt. 1325.)  Before August 2012, Mitsubishi Electric was a stranger to the CRT litigation.  No government has investigated Mitsubishi Electric for its sales of CRTs or CRT Products and none of its employees have been indicted for participating in the alleged CRT cartel. (Fuentes Decl. ¶ 4.)  In fact, the United States Department of Justice considered Mitsubishi Electric a *victim* of the alleged conspiracy. (Fuentes Decl. ¶ 5.)  Despite this, the DPPs sued Mitsubishi Electric on May 5, 2014, along with Thomson Consumer Electronics, Inc. and several of its affiliates.  (Dkt. 1 ("DPP Compl.").)  This was nearly 20 years after DPPs claim the alleged conspiracy began (1995) and  seven years after the conspiracy was alleged to have ended (November 2007).  (DPP Compl. ¶ 1.)

Mitsubishi Electric exited the CPT business in 1998, (Fuentes Decl. Ex. 9, Mitsubishi Electric 30(b)(6) Dep. (Tsukamoto Vol. II) at 210:24-211:5), nine years before the *end* of the class period, and 16 years before the DPPs sued.  Mitsubishi Electric stopped manufacturing and selling CDTs in or about 2004 or 2005, (*id.*; *see also id.* Ex. 8, Konishi Dep. Vol. I. at 110:18-21), about ten years before the DPPs sued.  Given how long ago Mitsubishi Electric closed its CRT business, it could only find limited sales information.

---

[1] Counsel for DPPs attended both the Mr. Murata's and Mr. Konishi's depositions.  (Fuentes Decl. Ex. 7, Murata Dep. Vol. I at 2; *id.* Ex. 8, Konishi Dep. Vol. I at 2.)

> B. **DPPs Possessed and Used the Original Exhibit B During Mr. Murata's and Mr. Konishi's Depositions and Thus Were Not Prejudiced By Its Absence from the December 10, 2014 Interrogatory Response.**

The absence of the "original" Exhibit B from Mitsubishi Electric Corporation's December 10, 2014 interrogatory responses did not frustrate the depositions of Messrs. Murata and Konishi because the very same document, listing certain competitor meetings that Mitsubishi Electric Corporation knew about at the time, was in the DPPs' hands for at least three months before the depositions, and the DPPs extensively questioned both Messrs. Murata and Konishi about this document.

> 1. **The DPPs Had the "Original" Exhibit B Nearly Three Months Before Mr. Murata's and Mr. Konishi's Depositions.**

On May 7, 2014, the DAPs served Mitsubishi Electric with interrogatories asking it to list competitor meetings it knew about. (Fuentes Decl. Ex. 17, DAPs' First Set of Interrogatories to Defendant Mitsubishi Electric Corporation at Nos. 8, 10.) Mitsubishi Electric Corporation answered in a supplemental response with a chart listing responsive meetings included as "Exhibit B." (Fuentes Decl. Ex. 2, Mitsubishi Electric Corporation's Supplemental Response to DAPs' First Set of Interrogatories at Ex. B.) Also, in September 2014, the parties scheduled the depositions of Mitsubishi Electric Corporation (through Rule 30(b)(6) deponents Hitoshi Tsukamoto and Kenzaburo Hara) and Mitsubishi Electric employee Norikazu Nakanishi. The 30(b)(6) depositions were scheduled for September 22-23, 2014; Mr. Nakanishi's for September 18, 2014.

In the days before the September 2014 depositions, counsel for the DAPs left counsel for Mitsubishi Electric a voicemail asking if Exhibit B could be supplemented with an extra column that included the Bates numbers for the specific documents relevant to each entry. (Fuentes Decl. ¶ 6.) Mitsubishi Electric promptly added an extra column to the chart specifying the Bates numbers relevant to each entry, to the extent Mitsubishi Electric knew about a relevant document. (*Id.*) As a courtesy to the DAPs, on September 17, 2014, *shortly before the start the September 2014 depositions and nearly three months before Mr. Murata's and Mr. Konishi's depositions*, Mitsubishi Electric provided DAPs' counsel with the updated Exhibit B. (*Id.* Ex. 3, G. Fuentes 9/17/2014 Email to W. Polit and S. Wagner; *id.* Ex. 4, Updated Exhibit B to Mitsubishi Electric Corporation's Supplemental Response to DAPs' First Set of Interrogatories (including Bates number column).) In addition, Mitsubishi Electric expressly told DAPs' counsel that it had created a new version of Exhibit B—at their request—to facilitate deposition discovery:

> In response to your request, and also to your suggestion that if you were to be provided the documentary backup to the information in Exhibit B of the Mitsubishi Electric Defendants' supplemental responses to Interrogatory Nos. 8 and 10, you believe the depositions of Mr. Nakanishi and Mitsubishi Electric will proceed more efficiently *and with less likelihood of the*

The Hon. Vaughn R. Walker (Ret.)
May 26, 2015
Page 7

> *DAPs' needing to seek to take additional discovery*, we are providing the documentary backup for that information, as shown by Bates number on the document attached to this email.

(*Id.* Ex. 3, G. Fuentes 9/17/2014 Email to W. Polit and S. Wagner (emphasis added).)

Mitsubishi Electric Corporation's supplemented Exhibit B chart from September 2014 is the very same document that would become the "original" Exhibit B. The DAPs marked the document as Plaintiffs' Exhibit 6120 and used it in the Nakanishi and Rule 30(b)(6) depositions. DPPs' counsel were present at both depositions. (Fuentes Decl. Ex. 5, Mitsubishi Electric 30(b)(6) Dep. (Tsukamoto Vol. I) at 2; *id.* Ex. 6, Nakanishi Dep. Vol. I at 2.) Further, DAPs' counsel asked both Mr. Nakanishi and Mitsubishi Electric Corporation many questions about this document. During the Rule 30(b)(6) deposition, for example, the DAPs focused heavily on trying to discover what discussions Mitsubishi Electric Corporation and its counsel had about preparing the chart. (Fuentes Decl. Ex. 5, Mitsubishi Electric Corporation 30(b)(6) Dep. (Tsukamoto Vol. I) at 77:17-79:21, 83:17-84:19.) At these depositions, DAPs' counsel shared each marked exhibit with all other counsel, as is customary. (Fuentes Decl. ¶ 7.)

>          **2.  The DPPs Questioned Mr. Murata About the Original Exhibit B and
>               About All Meetings He Could Recall with Other CRT Producers.**

Three months later, the DPPs extensively used the same original Exhibit B in Mr. Murata's deposition; it was also used at Mr. Konishi's. (Fuentes Decl. Ex. 7, Murata Dep. Vol. I at 61:23, 72:6, 77:25, 108:18; *id.* Ex. 8, Konishi Dep. Vol. I at 81:17, 82:4, 84:20.)  (Both the DAPs and the DPPs convened Mr. Murata's and Mr. Konishi's depositions.) (*Id.* Ex. 18, W. Polit 11/4/2014 Email to G. Fuentes.) The DPPs' counsel questioned Mr. Murata on December 9, 2014, while the DAPs' counsel led Mr. Konishi's questioning on December 10 and 11. (*See id.* Ex. 7, Murata Dep. Vol. I at 8:9; *id.* Ex. 8 Konishi Dep. Vol. I. at 7:9.) Early in Mr. Murata's deposition, DPPs' counsel noted Plaintiffs' Exhibit 6120 (which is the same document Mitsubishi Electric Corporation produced to the DAPs on September 17, and the same document as the "original" Exhibit B Mitsubishi Electric intended to include in its December 10, 2014 supplemental interrogatory response to the DPPs), stating that it had been "marked in a previous deposition." (*Id.* Ex. 7, Murata Dep. Vol. I at 61:21-23.)

The DPPs asked Mr. Murata numerous questions about Exhibit B's contents, his involvement in preparing it, and some of the meetings referenced in it. (*Id.* at 62:9-71:17, 77:24-78:21.)  Nothing prevented the DPPs from asking Mr. Murata about every line in the document, if their counsel wished to do so. Nothing prevented the DPPs from asking Mr. Murata if he knew about any meetings not listed in the document, if their counsel wished to do so. Instead, Mr. Murata was asked whether anyone had interviewed him to identify such meetings. (*Id.* at 66:12-15.)  His answer: "No, I don't think so."  (*Id.* at 66:16.)

In addition, the DPPs marched Mr. Murata through a series of questions designed to exhaust his recollection of meetings with various CRT producers. Asked whether he had any communications

"during the relevant period" of March 1, 1995, through December 31, 2007, with "an employee of another manufacturer of CRTs or CRT products," he referred to executives of other CRT producers making "courtesy calls" to Mitsubishi Electric, but he could not remember specifics, except that one such CRT producer was "Samsung." (*Id.* at 44:6-45:13.)  The DPPs continued:

> Q: So during the relevant period, did you ever communicate for business purposes with anyone who worked for Thomson?
>
> A.: I have no recollection of ever contacting anyone from Thomson.
>
>      ***
>
> Q: [H]ave you ever had communications with an individual who works or worked for Hitachi?
>
> A: I have met someone or some people from the [Hitachi Display] organization at an EIAJ [Electronics Industry Association of Japan] function . . . I've also met with someone from Hitachi Limited, because I was involved in the manufacture of CRTs, and at the time, Hitachi was involved in making color television sets. So we were vendor, and they were our customer. So through that relationship, I did have a contact or contacts with them . . . [W]e were the sellers, and they were the buyers. So we talked about prices.
>
>      ***
>
> Q: So did you ever communicate with anyone from LG?
>
> A: I remember meeting with someone or some people, but I do not remember specifics . . . They were in the business of making television sets, and so this was a vendor-customer relationship.
>
>      ***
>
> Q: So did you ever communicate with anyone who worked for Matsushita [Panasonic]?
>
> A: The situation is the same as what I described with – about the relationship we had with Hitachi. In other words, there were times when I would meet with someone from – or some people from Matsushita at an EIAJ meeting, but in addition, Matsushita was also in the business of manufacturing television sets. And so as a CRT supplier, we – there were times or there was a time when I had gone to visit Matsushita, trying to sell our CRTs. Other than in those situations, I have never contacted any Matsushita individuals from the organizations that you mentioned earlier.

The Hon. Vaughn R. Walker (Ret.)
May 26, 2015
Page 9

        \*\*\*

Q: During the relevant period, did you ever communicate with anyone from Philips?

A: Yes . . . My communication with anyone from Philips was not CRT business-related.  I mentioned to you earlier that during the period we're discussing, there was a time I was involved in our plasma business, and it was in that connection that I met with someone or individuals from Philips two or three times, I believe . . . [W]e wanted to sell our panels to Philips.  So to us, they were a potential user of our products.

        \*\*\*

Q: And apart from the meeting or meetings you testified about earlier with Samsung, are there any other occasions where you communicated with someone who worked for Samsung?

A: I don't think there was any occasion at which I communicated, other than the one that I mentioned earlier.

        \*\*\*

Q: During the relevant time period, did you ever communicate with anyone from Toshiba?

A: Of course, I had contact with a member or members of EIAJ, but I did not have contact with them any other time.  Let me add by saying that's what I remember . . . I have no recollection of ever communicating with anyone [from Toshiba, outside of the EIAJ].

        \*\*\*

Q: So during the relevant period, sir, have you had communications with anyone from Chunghwa?

A: In connection with CRT, I don't think I ever did . . . Chunghwa was interested in getting into the plasma business, and so I did communicate with someone or some people from the company in that connection . . . Although it had nothing to do with CRT, but I think Chunghwa was interested in having or using Mitsubishi's plasma technology.  They wanted to use our technology, I think . . . [A]t that time we sent them or we shipped a plasma panel sample to them, but nothing happened after that.

(*Id.* at 47:7-12; 48:14-49:19; 52:3-23; 53:14-54:4; 55:1-19; 56:7-14; 58:11-59:1; 59:15-61:12.)

The Hon. Vaughn R. Walker (Ret.)
May 26, 2015
Page 10

In short, Mr. Murata was asked exhaustively about meetings with every CRT producer in this case, and he answered honestly and completely to the best of his recollection, which happened to be that the meetings either concerned buyer-seller relationships or technology transfers, or arose in the Japan-based industry trade association context.[2]

### 3. The DAPs and DPPs Questioned Mr. Konishi About the Original Exhibit B and About All Other Meetings He Remembered with Other CRT Producers.

Counsel for the DPPs were also present when DAPs' counsel showed Mr. Konishi the same document, Plaintiffs' Exhibit 6120 (the same document as the "original" Exhibit B). DAPs' counsel asked Mr. Konishi similar questions about it, probing into his involvement in preparing it and whether he had talked to anyone else about its preparation. (*Id.* Ex. 8, Konishi Dep. Vol. I at 81:9-106:23.) Counsel seemed to focus more on how Mitsubishi Electric Corporation prepared the exhibit, as opposed to Mr. Konishi's knowledge about specific meetings. (*Id.*) Mr. Konishi answered these questions, stating that he had *not* been involved in preparing Exhibit B, and named several Mitsubishi Electric Corporation employees to whom he had talked during Mitsubishi Electric Corporation's investigation about the CRT litigation. (*Id.* at 83:8-13; 91:2-11.) The DAPs proceeded to ask Mr. Konishi about many of Exhibit B's 35 entries, including details like who attended various meetings, what was discussed, and whether Mr. Konishi had discussed these meetings with anyone else. (*Id.* Ex. 20, Konishi Dep. Vol. II at 126:8-157:12, 163:4-164:25.)

When counsel for the DPPs began questioning Mr. Konishi, DPP counsel asked about other meetings the DPPs presumed had taken place based on other documents not mentioned or noted in Exhibit 6120, and the DPPs asked Mr. Konishi to confirm that these meetings were not listed on Exhibit B. (*Id.* at 264:22-265:1.) The DPPs then proceeded to ask Mr. Konishi: "did you have any other meetings that we haven't discussed today with other manufacturers of CRT products?" (*Id.* at 270:22-271:4.) His answer: "I have visited Toshiba once or twice in connection with the tasks assigned by the EIAJ [the Electronics Industries Association of Japan], and maybe on another occasion I visited Toshiba to discuss whether selling or buying a new piece of equipment." (*Id.* at 271:9-13.) Mr. Konishi further testified that he met with other CRT manufacturers at EIAJ meetings. (*Id.* at 271:14-18.) In response to the DPPs' question, he noted that these EIAJ-related meetings were not listed on Exhibit B, and counsel then stated that "I don't have any further questions." (*Id.* at 272:14-15.) Again, as was the case in the Murata deposition, the plaintiffs (DAPs and DPPs) had more than ample opportunity to ask – and did

---

[2] Incidentally, the meetings associated with the Japan-based EIAJ are the subject of a pending *motion in limine* by Mitsubishi Electric, which has argued to the Court that these meetings are not probative of the Complaint's alleged conspiracy (involving a different set of participants and wholly different sets of meetings that Mitsubishi Electric is not alleged to have attended) and should be excluded as improper propensity evidence. (Fuentes Decl., Ex. 19, Dkt. 3601, Mitsubishi Electric's Consolidated Motions in Limine at No. 3.)

ask – Mr. Konishi about competitor meetings listed in the document known as the "original" Exhibit B, and about any other competitor meetings he might have remembered.

On this record, the DPPs cannot establish prejudice from the absence of the original Exhibit B from the December 2014 interrogatory answer, because the DPPs had the exhibit and used it with effect during both depositions. In short, while it might have been less confusing had Mitsubishi Electric not omitted the "original" Exhibit B from its December 10, 2014 supplemental response to the DPPs, there now exists absolutely no basis to call Messrs. Murata or Konishi back from abroad to ask them about the same document.

### C. With Messrs. Konishi and Murata Having Exhausted Their Recollections About Meetings with CRT Producers, The Burden on These Overseas Witnesses Outweighs Any Residual Benefit of Deposing Them a Second Time.

As noted above, the DAPs and DPPs questioned Mr. Murata and Mr. Konishi extensively about all meetings they remembered with other CRT producers during the period relevant to this lawsuit: 1995 to 2007, a time eight to 20 years ago. Both witnesses answered all of those questions. The only discovery DPPs did not have when they deposed Messrs. Murata and Konishi was the updated Exhibit B, provided to DPPs on January 16, 2015, as part of Mitsubishi Electric Corporation's verified second supplemental response. However, nothing in revised Exhibit B justifies re-opening Mr. Murata's or Mr. Konishi's depositions, who both live outside the United States.

Mitsubishi Electric Corporation revised Exhibit B to accommodate DPPs' broader requests for competitor meetings. The DPPs' interrogatory was broader than the DAPs'. (*Compare* Fuentes Decl. Ex. 18, DAPs' First Set of Interrogatories to Mitsubishi Electric Corporation at Nos. 8, 10 *with* Ex. 1, Direct Purchaser Plaintiff Crago, d/b/a/ Dash Computers, Inc.'s First Set of Interrogatories to Defendants Mitsubishi, Thomson and TDA at No. 5.) Therefore, Mitsubishi Electric Corporation undertook to supplement the response in order to fully answer the DPPs' broader interrogatory.

The DPPs were not prejudiced in receiving the updated Exhibit B after Mr. Konishi's and Mr. Murata's depositions. The revised exhibit identified 22 additional meetings between Mitsubishi Electric and its competitors. But every one of these meetings is reflected in the documents Mitsubishi Electric had already produced to the DPPs (*Id. ¶* 2), and during Mr. Konishi's and Mr. Murata's depositions, the plaintiffs asked the witnesses about meetings that were *not* on the Exhibit B list. (*See supra* at 7-11.) The witnesses testified to their general recollection that they remembered meetings related to the EIAJ, business or "courtesy calls," buyer-seller relationships, or technology transfers. (*Id.*)

In short, there is no reason to believe that these witnesses have anything more to say about the updated Exhibit B, beyond what they already have said. By contrast, compelling Mitsubishi Electric Corporation to re-produce Messrs. Konishi and Murata would saddle it – and the witnesses – with a heavy burden. Both men are essential to their respective business units. Mr. Konishi, who lives in Dusseldorf,

Germany, has a very busy schedule traveling across Europe to promote Mitsubishi Electric's HVAC products. Mr. Murata works in Tokyo, Japan, for Mitsubishi Electric Living Environment Systems, Inc. It would be highly disruptive and unfair to force these two people to take more time away from their respective duties and fly overseas to the United States for a second time, under these circumstances. The burden imposed by re-opening these depositions far outweighs any possible benefit the plaintiffs might gain from asking the witnesses about the revised Exhibit B or about any competitor meetings they might remember, when they already have testified all they could about their memory of competitor meetings.

## *Conclusion*

With Mitsubishi Electric having complied with Special Master's April 28 order requiring them to supplement certain interrogatory responses, and in the absence of any justification for re-opening Mr. Murata's and Mr. Konishi's depositions, Mitsubishi Electric respectfully requests that the Special Master deny the remainder of the DPPs' motion to compel and decline to order the re-opening of Mr. Murata's and Mr. Konishi's depositions.

Respectfully submitted,

*/s/ Gabriel A. Fuentes*
Gabriel A. Fuentes

Enclosures (exhibits)

cc:   R. Alexander Saveri
      Douglas Millen

      Terrence J. Truax
      Michael T. Brody

Brent Caslin (Cal. Bar. No. 198682)
Jenner & Block LLP
633 West Fifth Street
Suite 3600
Los Angeles, California 90071
Telephone:     213 239-5100
Facsimile:      213 239-5199
bcaslin@jenner.com

Terrence J. Truax (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
Gabriel A. Fuentes (*pro hac vice*)
Jenner & Block LLP
353 N. Clark Street
Chicago, Illinois 60654-3456
Telephone:     312 222-9350
Facsimile:      312 527-0484
ttruax@jenner.com
mbrody@jenner.com
gfuentes@jenner.com

*Attorneys for Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc., and Mitsubishi Electric Visual Solutions America, Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>ALL DIRECT PURCHASER ACTIONS | **Case No. 14-cv-2058-SC**<br>**MDL No. 1917**<br><br>**DECLARATION OF GABRIEL A. FUENTES IN SUPPORT OF MITSUBISHI ELECTRIC CORPORATION'S, MITSUBISHI ELECTRIC US, INC.'S, AND MITSUBISHI ELECTRIC VISUAL SOLUTIONS AMERICA, INC.'S RESPONSE TO DPPS' MOTION TO COMPEL SUPPLEMENTAL DISCOVERY** |

**DECLARATIION OF GABRIEL A. FUENTES**

I, Gabriel A. Fuentes, declare as follows:

1. I am an attorney licensed to practice law in the State of Illinois, and I am a Partner at the law firm of Jenner & Block LLP, attorneys of record for Defendants Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc. ("MEUS"), and Mitsubishi Electric Visual Solutions America, Inc. ("MEVSA") (collectively referred to here as "Mitsubishi Electric"). I submit this declaration in support of Mitsubishi Electric's Response to the Direct Purchaser Plaintiffs' Motion to Compel Supplemental Discovery. I have personal knowledge of the facts set forth in this declaration, or declare them upon information and belief, and, if called as a witness, I could and would testify competently to such facts under oath.

2. The documents referred to in Mitsubishi Electric Corporation's updated Exhibit B – which was attached to its Second Supplemental Response to the DPPs' First Set of Interrogatories and dated January 16, 2015 – had been produced to the DPPs before Mr. Murata's and Mr. Konishi's depositions.

3. Upon information and belief, when Mitsubishi Electric Corporation served its Second Supplemental Response to the DPPs' First Set of Interrogatories on January 16, 2015, Mitsubishi Electric Corporation did not possess any sales data responsive to DPPs' Interrogatory No. 12 other than the documents referred to in Mitsubishi Electric Corporation's, MEUS', and MEVSA's then-existing discovery responses. Upon information and belief, Mitsubishi Electric is not aware of any additional documents responsive to DPPs' Interrogatory No. 12.

4. Upon information and belief, no government has investigated Mitsubishi Electric for its sales of CRTs or CRT Products and none of its employees have been indicted for participating in the alleged CRT cartel.

5. Upon information and belief, the Department of Justice considered Mitsubishi Electric a victim of the alleged CRT conspiracy.

6. On September 17, 2015, counsel for the DAPs left me a voicemail asking if Exhibit B could be supplemented with an extra column that included the Bates numbers for specific documents relevant to each entry.  Mitsubishi Electric Corporation promptly added an extra column to the chart specifying Bates numbers relevant to each entry, to the extent Mitsubishi Electric Corporation knew about a relevant document.

7. At Mitsubishi Electric's 30(b)(6) Deposition, counsel for the DAPs shared each marked exhibit with all other counsel; upon information and belief, counsel for the DAPs did the same during Norikazu Nakanishi's deposition.

8. Attached hereto as **Exhibit 1** is a true and correct copy of Direct Purchaser Plaintiff Crago, d/b/a Dash Computers, Inc.'s First Set of Interrogatories to Defendants Mitsubishi, Thomson, and TDA.

9. Attached hereto as **Exhibit 2** is a true and correct copy Mitsubishi Electric Corporation's Supplemental Response to Direct Action Plaintiffs' First Set of Interrogatories, including Exhibits A and B thereto.

10. Attached hereto as **Exhibit 3** is a true and correct copy of my Email to W. Polit and S. Wagner from September 17, 2014.

11. Attached hereto as **Exhibit 4** is a true and correct copy of the Updated Exhibit B to Mitsubishi Electric Corporation's Supplemental Response to DAPs' First Set of Interrogatories, which includes a Bates Number column.

12. Attached hereto as **Exhibit 5** is a true and correct copy of excerpts of Mitsubishi Electric Corporation 30(b)(6) witness Hitoshi Tsukamoto's transcript Vol. I from September 22, 2014.

13. Attached hereto as **Exhibit 6** is a true and correct copy of excerpts of Norikazu Nakanishi's deposition transcript Vol. I from September 18, 2014.

14. Attached hereto as **Exhibit 7** is a true and correct copy of excerpts of Koji Murata's deposition transcript Vol. I from December 8, 2014.

15. Attached hereto as **Exhibit 8** is a true and correct copy of excerpts of Masahiko Konishi's deposition transcript Vol. I from December 10, 2014.

16. Attached hereto as **Exhibit 9** is a true and correct copy of excerpts of Mitsubishi Electric Corporation's 30(b)(6) witness Hitoshi Tsukamoto's transcript Vol. II from September 23, 2014.

17. Attached hereto as **Exhibit 10** is a true and correct copy of J. Hoffman's Email to R. Saveri from February 19, 2015, attaching the original Exhibits A and B.

18. Attached hereto as **Exhibit 11** is a true and correct copy of Mitsubishi Electric Corporation's Third Supplemental Response to Direct Purchaser Plaintiffs' First Set of Interrogatories Nos. 5, 10-12.

19. Attached hereto as **Exhibit 12** is a true and correct copy of Mitsubishi Electric US, Inc.'s Supplemental Response to the Direct Purchaser Plaintiffs' First Set of Interrogatories No. 12.

20. Attached hereto as **Exhibit 13** is a true and correct copy of Mitsubishi Electric Visual Solutions America, Inc.'s Supplemental Response to the Direct Purchaser Plaintiffs' First Set of Interrogatories No. 12.

21. Attached hereto as **Exhibit 14** is a true and correct copy of Mitsubishi Electric Corporation's (Second) Supplemental Response to the Direct Purchaser Plaintiffs' First Set of Interrogatories.

22. Attached hereto as **Exhibit 15** is a true and correct copy of excerpts of Kunihiko Seki's deposition transcript Vol. I from February 24, 2015.

23. Attached hereto as **Exhibit 16** is a true and correct copy of excerpts of Koji Murata's deposition transcript Vol. II from December 9, 2014.

24. Attached hereto as **Exhibit 17** is a true and correct copy of Direct Action Plaintiffs' First Set of Interrogatories to Defendant Mitsubishi Electric Corporation.

25. Attached hereto as **Exhibit 18** is a true and correct copy of an email from W. Polit to me from November 4, 2014.

1  26. Attached hereto as **Exhibit 19** is a true and correct copy of Mitsubishi Electric's Consolidated Motions in Limine No. 3 (filed under seal).

27. Attached hereto as **Exhibit 20** is a true and correct copy of excerpts of Masahiko Konishi's deposition transcript Vol. II from December 11, 2014.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 26 day of February, 2015 at Chicago, Illinois.

Dated:  May 26, 2015                     JENNER & BLOCK LLP

                                         By:   */s/ Gabriel A. Fuentes*