UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION

MDL No. 1917

Case No. C-07-5944 JST

**ORDER RE MOTIONS *IN LIMINE* RE PLAINTIFFS' OTHER ACTIONS AND DAMAGES**

This Order Relates To:

*Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.,No. 11-cv-05513-JST*

*Best Buy Co., Inc., et al. v. Technicolor SA, et al., No. 13-cv-05264-JST*

*Target Corp. v. Chunghwa Pictures Tubes, Ltd., et al., No. 3:07-cv-05514-JST*

*Target Corp. v. Technicolor SA, et al., Case No. 3:11-cv-05514-JST*

*Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd., et al., No. 11-cv-05502-JST*

*Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. TechnicolorSA, et al., No. 13-cv-05261-JST*

*Sears, Roebuck and Co., et. al. v. Chunghwa Picture Tubes, Ltd., et al., No. 11-cv-5514*

*Sears, Roebuck & Co. and Kmart Corp. v. Technicolor SA., No. 3:13-cv-05262;*

*Sharp Electronics Corporation, et al. v. Hitachi, Ltd., et al., No. 13-cv-01173-JST*

*Sharp Electronics Corp., et al. v. Koninklijke Philips Electronics N.V., et al., No. 13-cv-2776-JST*

*ViewSonic Corporation v. Chunghwa Picture Tubes, Ltd., et al., No. 14-cv-02510*

United States District Court
Northern District of California

The parties organized the pending motions *in limine* into nine categories.  See ECF No. 4603, Ex. A.  This order addresses the fifth category, entitled "Motions re Plaintiffs' Other Actions and Damages," which contains five motions: four filed by Direct Action Plaintiffs ("DAPs") and one filed by Defendants.  Id. at A-6, A-7, A-8.  Defendants' motion is entitled "Defendants' Motion *In Limine* No. 7: Motion to Exclude Dr. Frankel's Inflation Adjusted Damages."  ECF Nos. 3578 ("Inflation Mot."), 3641 ("Inflation Opp'n"), 3751 ("Inflation Reply").  The DAPs submitted their motions as part of a larger filing entitled "Motions *In Limine* (Nos. 1-18)."  ECF No. 3558 ("DAP Mot."), 3676-4 ("DAP Opp'n"), 3757-4 ("DAP Reply").  They are listed as motions number one, five, six, and eight within that filing.  DAP Mot. at 2, 23, 24, 30.  The motions are fully briefed and suitable for disposition without oral argument pursuant to Local Rule 7-1(b).  The Court finds as follows:

| Motion | Ruling |
|---|---|
| Defendants' MIL No. 7: Motion to Exclude Dr. Frankel's Inflation Adjusted Damages | GRANTED |
| DAPs' MIL No. 1: Motion To Exclude Evidence Or Argument Regarding Plaintiffs' Competitive Intelligence Practices | GRANTED IN PART and DENIED IN PART |
| DAPs' MIL No. 5: Motion To Exclude Evidence Or Argument Regarding Plaintiffs' Ability To Seek Treble Damages and Attorneys' Fees And Costs | GRANTED IN PART and DENIED IN PART |
| DAPs MIL No. 6: Motion to Exclude Evidence Or Argument Regarding Other Actions And Settlements In This MDL | GRANTED IN PART and DENIED IN PART |
| DAPs MIL No. 8: Motion To Exclude Evidence Or Argument Regarding Plaintiffs' Alleged Failure To Mitigate Their Damages | GRANTED |

## I.    DEFENDANTS MIL NO. 7: MOTION TO EXCLUDE DR. FRANKEL'S INFLATION ADJUSTED DAMAGES

Defendants move the Court to exclude certain DAP's inflation-adjusted damages on the grounds that inflation-adjusted damages are indistinguishable from prejudgment interest barred by the Clayton Act.  See 15 U.S.C. § 15(a).  The motion is GRANTED.

"The fundamental principle of damages is to restore the injured party, as nearly as possible,

to the position he would have been in had it not been for the wrong of the other party." United States v. Hatahley, 257 F.2d 920, 923 (10th Cir. 1958).  Consistent with that principle, courts often award prejudgment interest in order to "compensate the plaintiff for the delay between the time the cause of action arose and the verdict." Conte v. General Housewares Corp., 215 F.3d 628, 640 (6th Cir. 2000); see also Boston Children's Heart Foundation, Inc. v. Nadal-Ginard, 73 F.3d 429, 442 (1st Cir. 1995) ("Interest is compensation fixed by law for the use of money or, alternatively, as damages for its detention.").

Because federal statutes do not define the rate of prejudgment interest, an award of prejudgment interest in a federal question case is addressed to the sound discretion of the trial court.  See E.E.O.C. v. Wooster Brush Co. Employees Relief Assoc., 727 F.2d 566, 579 (6th Cir. 1984).  "Discretion is not, however, authorization to decide who deserves the money more. . . . Compensation deferred is compensation reduced by the time value of money . . . . *That is why prejudgment interest is an ingredient of full compensation.*" Matter of Milwaukee Cheese Wisconsin, Inc., 112 F.3d 845, 849 (7th Cir. 1997) (emphasis added).  Viewed another way,

> [b]y committing a tort, the wrongdoer creates an involuntary creditor. . . .  In voluntary credit transactions, the borrower must pay the market rate for money.  (The market rate is the minimum appropriate rate for prejudgment interest, because the involuntary creditor might have charged more to make a loan.)  Prejudgment interest at the market rate puts *both* parties in the position they would have occupied had compensation been paid promptly.

Matter of Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978, 954 F.2d 1279, 1331 (7th Cir. 1992).

In the Ninth Circuit, "the measure of interest rates prescribed for post-judgment interest in 28 U.S.C. § 1961(a) is also appropriate for fixing the rate for pre-judgment interest . . . unless the trial judge finds, on substantial evidence, that the equities of the particular case require a different rate." W. Pac. Fisheries, Inc. v. SS President Grant, 730 F.2d 1280, 1289 (9th Cir. 1984).  Accordingly, the interest rate for prejudgment interest in the Ninth Circuit is typically "calculated . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . ." 28 U.S.C. § 1961.

The Clayton Act, however, generally prohibits an award of prejudgment interest.  15

1    U.S.C. § 15(a).  As the Third Circuit explains,

2        the award of prejudgment interest . . . serves a remedial purpose by
3        making the plaintiff whole for the intervening loss of use of the
    money he would have had . . . but for the defendant's unlawful acts.
4        Under . . . section 4 of the Clayton Act, 15 U.S.C. § 15, [however,]
    the award of multiple [*i.e.*, treble] damages is designed to take the
5        place of this interest loss, along with all other remedial and punitive
    factors necessary to vindicate the policies of the underlying
6        substantive law.

7    Trio Process Corp. v. L. Goldstein's Sons, Inc., 638 F.2d 661, 663 (3d Cir.1981).  Ensuring full

8    compensation is even less of a concern where, as here, an indirect purchaser claims to have

9    standing pursuant to Royal Printing Co. v. Kimberly-Clark Corp., 621 F.2d 323 (9th Cir. 1980).

10   Such a plaintiff, if successful at trial, is awarded the entire overcharge amount, notwithstanding

11   that its actual damages are likely to be less.  See id. at 327 (finding "nothing wrong with the

12   plaintiff winning a windfall gain, so long as the defendant does not suffer multiple liability, with

13   its potential for windfall loss").

14       The parties agree that the Clayton Act prohibits prejudgment interest.  The DAPs argue,

15   however, that "[t]he statutory exclusion of prejudgment interest does not change what is the true

16   measure of the DAPs' damages."  Inflation Opp'n at 2.  The "true measure," according to the

17   DAPs, includes an adjustment for inflation.  Defendants argue that the DAPs are making a

18   semantic argument and that the prohibition on prejudgment interest includes a prohibition on an

19   adjustment for inflation.  Inflation Mot. at 3 (citing Auraria Student Housing at the Regency v.

20   Campus Village Apartments, 2014 WL 4651643, at *4 (D. Colo. Sept. 18, 2014) ("The Court . . .

21   finds that the experts' calculations of 'discount rates', 'opportunity cost', and 'present value of

22   past economic harm' are in substance nothing other than calculations of prejudgment interest

23   employing different nomenclature.").  The Court agrees with Defendants.

24       There are two ways antitrust plaintiffs are made worse off as a result of the passage of time

25   between the date of purchase and the date of judgment.  First, plaintiffs incur an opportunity cost

26   during that period as a result of not being able to use the funds spent to pay the overcharge.  See,

27   e.g., In re Linerboard Antitrust Litig., 504 F. Supp. 2d 38, 63-67 (E.D. Pa. 2007) (discussing

28   opportunity cost).  Second, even if the judgment provides plaintiffs with an award equal to the

United States District Court
Northern District of California

4

1    nominal amount they paid for the overcharge, the purchasing power of that amount will have

2    decreased by the date of judgment such that the present value of the harm will be greater than the

3    present value of the award, assuming that the economy has experienced inflation since the

4    purchase date.

5         The DAPs concede the Clayton Act's prohibition on prejudgment interest includes a

6    prohibition on compensating plaintiffs for opportunity cost – or, in the DAPs' words, "the time

7    value of money" or "one's inability to use one's money."  Inflation Opp'n at 3; see also In re

8    Linerboard Antitrust Litig., 504 F. Supp. 2d at 64 (explaining why these are just different terms

9    for opportunity cost).  The DAPs view "inflation," however, "[a]s an entirely different concept"

10   from prejudgment interest.  Id.  Accordingly, the DAPs argue they ought to be able to present

11   evidence to the jury to "account for inflation since 1995 by adjusting the dollar overcharges to

12   express damages in constant February 2014 dollars."  ECF No. 3575-3 ("Frankel Report") at 18.

13        In support, the DAPs assert they are entitled to "their complete damages."  Inflation Opp'n

14   at 2.  They cite Illinois Brick Co. v. Illinois, 431 U.S. 720, 748 (1977), which held that antitrust

15   plaintiffs could recover the full amount of an overcharge even if they passed on part of the

16   overcharge to their customers.  Defendants' motion has nothing to do with a pass-on defense, and

17   the DAPs' argument and authority are inapposite.

18        Next, the DAPs claim that "the true measure of the DAPs' damages" must account for

19   inflation because the value of money decreases overtime.  Inflation Opp'n at 2.  The Court

20   acknowledges that "[c]ompensation deferred is compensation reduced."  Matter of Milwaukee

21   Cheese Wisconsin, Inc., 112 F.3d at 849.  The issue, however, is whether the Clayton Act

22   nevertheless prohibits inflationary adjustments, notwithstanding this economic truism.  The

23   answer to that question turns not on economics but on how prejudgment interest is defined as a

24   matter of law.

25        Prejudgment interest "compensate[s] the plaintiff for the delay between the time the cause

26   of action arose and the verdict."  Conte, 215 F.3d at 640.  The compensation for the delay is not

27   partial; it aims to "mak[e] the plaintiff whole."  Trio Process Corp., 638 F.2d at 663.  Accordingly,

28   the Court finds that prejudgment interest is any award that compensates a plaintiff for the

United States District Court
Northern District of California

United States District Court
Northern District of California

1    reduction in a judgement's real value due to the passage of time between when the violation

2    occurred and when a judgment is rendered.  See Conte, 215 F.3d at 640; Matter of Milwaukee

3    Cheese Wisconsin, Inc., 112 F.3d at 849; Trio Process Corp., 638 F.2d at 663.  The DAPs' claim

4    to the "present value" of their "complete damages" is therefore just a rose by another name.  See

5    William Shakespeare, Romeo and Juliet, act 2, sc. 2; Philip E. Areeda & Herbert Hovenkamp,

6    Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 393a (4th ed. 2014)

7    ("The prohibition of pre-judgment interest . . . provides an incentive to disguise pre-judgment

8    interest as something else.  For example, the plaintiff may convert its past actual damages to

9    current dollars. . . . While this may seem 'fair,' it is nonetheless equivalent to an award of pre-

10   judgment interest . . . .").

11        The DAPs rely heavily on Multiflex v. Samuel Moore & Co., 709 F.2d 980, 996-97 (5th

12   Cir. 1983).  See Inflation Opp'n at 3-4.  In Multiflex, the Fifth Circuit allowed damages that

13   reflected the opportunity cost of missed investment opportunities.  See 709 F.2d at 996 (allowing a

14   damages estimate that included "the interest that might have been earned on the funds if placed in

15   alternative investments").  But that is exactly the type of prejudgment interest the DAPs

16   acknowledge is prohibited by the Clayton Act.  See Inflation Opp'n at 3 ("[Prejudgment i]nterest

17   is a measure of the time value of money.  It reflects that over time, one's inability to use one's

18   money should be compensated.").  Moreover, Multiflex does not address inflationary adjustments

19   at all.  In any event, this Court believes that Multiflex was wrongly decided.  The plaintiffs in that

20   case were able to secure prejudgment interest notwithstanding the Clayton Act's prohibition by

21   asking the court for an element of prejudgment interest (the opportunity cost of capital) instead of

22   using the phrase "prejudgment interest" itself.  Accord In re Linerboard, 504 F. Supp. 2d 38, 63-

23   67, n.14-17; Areeda & Hovenkamp, supra, ¶ 393a (criticizing Multiflex and noting that "[t]he

24   amount that the lost profit would have earned [i.e. the opportunity cost of capital] is clearly

25   equivalent to interest.  The [Multiflex] court seems to have been misled by the fact that the

26   plaintiff made an economic argument rather than a transparent claim for statutory or common law

27   pre-judgment interest.  This would seem to be an error.").

28        The other authority cited by the DAPs is on point.  See Inflation Opp'n at 4-5 (citing

6

several district court opinions outside the Ninth Circuit that awarded plaintiffs an adjustment for inflation).   This Court, however, disagrees with the reasoning in those cases as well.  For example, in <u>Law v. Nat'l Collegiate Athletic Ass'n</u>, the defendants filed a post-trial motion arguing the adjustment of the antitrust damage award to present value based on the Consumer Price Index ("CPI")[1] was the functional equivalent of awarding prejudgment interest.  <u>See</u> 185 F.R.D. 324, 345-49 (D. Kan. 1999).  The court rejected the motion, reasoning that interest and inflation are conceptually distinct.  <u>See id.</u> at 346.  Whether interest rates for loans and the CPI are conceptually distinct, however, is irrelevant.  "Prejudgment interest" is a legal term of art used for the amount courts award to compensate plaintiffs for reductions in value due to the passage of time.  Such an award is prejudgment interest regardless of whether a court decides to calculate it using the Consumer Price Index, Treasury yields, or some other metric.[2]

The DAPs' argument also fails because its underlying economic reasoning is flawed.  The DAPs' position is based on the idea that interest and inflation are "entirely different concepts," "irrelevant" to each other, and "completely different."  Inflation Opp'n at 3-4 (citing <u>Law</u>, 185 F.R.D. at 346 (claiming interest and inflation are distinct because "[t]he function of the [inflation] adjustment is to reflect changing purchasing power of a dollar over time.  Interest, on the other hand, is a function of the balance between the supply and demand for loanable funds.")).  The distinction is overstated.  As inflation increases, so do lenders' costs, causing the supply curve for loans to shift to the left, which in turn results in an increase in the price of borrowing – i.e., interest rates.  Moreover, there is a well-known concept in economics known as "Fisher's Theory" which states that a change in the expected inflation rate will cause *the same proportionate change* in interest rates.  <u>See</u> Irving Fisher, <u>The Theory of Interest</u> (1930).  For the DAPs' position to be plausible, courts would have to be using real interest rates[3] instead of nominal rates when

[1] The CPI is a measure of inflation.

[2] <u>See, e.g.</u>, Knoll, Michael S. and Colon, Jeffrey M., "The Calculation of Prejudgment Interest" (2005). *Scholarship at Penn Law*. Paper 120 (describing different ways to calculate prejudgment interest and arguing that prejudgment interest ought to be computed using the defendant's unsecured borrowing rate).

[3] Real interest rates are calculated by taking the nominal rate and subtracting the inflation rate.

United States District Court
Northern District of California

calculating prejudgment interest.  In the Ninth Circuit, however, prejudgment interest is generally calculated based on the Treasury yield – which is a nominal rate.  W. Pac. Fisheries, Inc., 730 F.2d at 1289.  Other circuits also use nominal rates of interest.  See, e.g., Cement Div., Nat. Gypsum Co. v. City of Milwaukee, 31 F.3d 581, 587 (7th Cir. 1994), aff'd, 515 U.S. 189 (1995) (holding that in the Seventh Circuit "the best starting point is to award interest at *the market rate*, which means an average of *the prime rate* for the years in question") (emphasis added).

In sum, any compensation "for the delay between the time the cause of action arose and the verdict" is, by definition, prejudgment interest.  Conte, 215 F.3d at 640.  Because an adjustment for inflation is squarely within that definition, the DAPs' argument fails.  It also fails for the independent reason that it is based on economically unsound reasoning.

Defendants' motion is GRANTED.

## II.    DAPS' MIL NO. 1: MOTION TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING PLAINTIFFS' COMPETITIVE INTELLIGENCE PRACTICES

The DAPs move to exclude evidence or argument regarding the DAPs' "competitive intelligence practices"[4] because they claim it is irrelevant and unduly prejudicial under Federal Rules of Evidence 401, 402, and 403.  Defendants assert that such evidence should be admitted to demonstrate that not all competitor communications are inherently suspect and to prove that the DAPs did not suffer injury-in-fact.  The motion is GRANTED IN PART and DENIED IN PART. Defendants are permitted to introduce evidence of exchanges of competitive information among the DAPs and their competitors for the sole purpose of demonstrating that not all communications and information exchanges are necessarily illegitimate or illegal.  Defendants are precluded, however, from introducing any other type of evidence or argument regarding the DAPs' competitive intelligence practices or from introducing evidence or argument regarding exchanges of information among the DAPs and their competitors for purposes other than to rebut the claim that such exchanges are inherently suspect.

---

[4] DAPs' "competitive intelligence practices" appear to include both (1) the unilateral monitoring of publicly-available information on price and other competitive data, and (2) the exchange of nonpublic information with competitors.

United States District Court
Northern District of California

United States District Court
Northern District of California

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.  "The court may exclude relevant evidence," however, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

The DAPs make several arguments as to why the Court should exclude competitive intelligence evidence.  First, they argue evidence that the DAPs exchanged information with their competitors is irrelevant to Defendants' liability.  See DAP Mot. at 6-9 (citing Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc., 340 U.S. 211, 214 (1951)).  Defendants do not dispute this and repeatedly clarify in their opposition that

> Defendants have no intention of using evidence of DAPs' communications with competitors to allege a violation of the antitrust laws.  Quite the opposite, Defendants seek to use this evidence to contest DAPs' suggestions that all information exchanges between competitors are improper by showing through DAPs' own conduct that there are legitimate reasons for competitors to exchange price and other market information.

DAP Opp'n at 3.  As there is no dispute on this issue, Defendants are precluded from introducing evidence or argument of competitive intelligence practices for the purpose of suggesting the DAPs' behavior was illegal or improper.

Next, the DAPs argue that evidence of competitive intelligence practices cannot be admitted for the purpose of asserting a pass-on defense.[5]  Defendants counter that such evidence is relevant to whether the DAPs suffered injury-in-fact.[6]  See DAP Opp'n at 10.  Specifically, Defendants point out that the DAPs used competitive intelligence to negotiate lower prices from Defendants.  Id.  Although they are not explicit, Defendants seem to imply that the DAPs were able to use the competitive information acquired through such practices to leverage lower prices

---

[5] The DAPs' argument applies both to the argument that the DAPs' vendors did not pass on the entire overcharge to the DAPs (upstream pass-on) and that the DAPs passed on the entire overcharge to their customers (downstream pass-on).

[6] Defendants also argue pass-on defenses are relevant to Best Buys' state law claims under Minnesota law.  Best Buy, however, has since settled those claims.

United States District Court
Northern District of California

from Defendants to such an extent that they were able to avoid paying an overcharge all together, thus failing to satisfy Article III's requirement of injury-in-fact. The Court, however, is unconvinced. Whether the DAPs paid an overcharge and suffered injury-in-fact is a function of whether the price they paid was above the competitive price, not whether they used competitive information as leverage during price negotiations. Even if it was minimally relevant, *how* the DAPs acquired competitive information is entirely immaterial to *whether* the DAPs paid an overcharge, or, if they did, the *amount* of that overcharge. The DAPs' motion is therefore GRANTED on this issue. Defendants are precluded from introducing evidence or argument regarding the DAPs' competitive intelligence practices to assert a pass-on defense or to claim that the DAPs did not suffer injury-in-fact.

The DAPs also argue that Defendants should be precluded from using evidence of the DAPs' competitive intelligence practices to demonstrate that information exchanges among competitors can be for legitimate purposes. The DAPs assert such evidence is unnecessary because "the jury will be instructed on this issue, and thus will understand the significance of information exchanges." DAP Reply at 4. Defendants counter that the evidence is extremely probative because "[t]here is no better way to illustrate the legitimacy of business information exchanges than by drawing a parallel between DAPs' own practices and Defendants'." DAP Opp'n at 7. The DAPs respond by pointing to Costco Wholesale Corp. v. AU Optronics Corp. et al., 2014 U.S. Dist. LEXIS 132145, at*6 (W.D. Wash. Sept. 17, 2014), one of the underlying cases in the LCD MDL. In that case, the district court granted Costco's motion *in limine* to exclude evidence regarding Costco's *price monitoring* practices, see id., which entailed *unilaterally* gathering *publically available* information on competitors' prices, see Plaintiffs' Motion *in Limine* at 7, Costco Wholesale Corp. v. AU Optronics Corp. et al., No. 13-cv-1207-RAJ (Aug. 11, 2014) (W.D. Wash.) (ECF No. 516). The court held that "[w]hatever marginal relevance evidence of Costco's price monitoring might have to an issue before the jury is substantially outweighed by its potential to prejudice the jury, confuse it, or put greater burdens on its time." Costco, 2014 U.S. Dist. LEXIS 132145, at *4. "In particular," wrote the court, "Defendants can easily argue that monitoring market prices is lawful without pointing to Costco's conduct." Id.

United States District Court
Northern District of California

The Court agrees that, as in <u>Costco</u>, evidence of the DAPs' *unilateral* monitoring of *publically available* information is irrelevant to whether exchanges of information among competitors can be for legitimate purposes.  Accordingly, the DAPs' motion is GRANTED as to evidence relating to the DAPs' unilateral monitoring of publically available information.  The Court agrees with Defendants, however, that evidence of information exchanges among the DAPs and their competitors is relevant and not unfairly prejudicial so long as it is introduced to demonstrate that such information exchanges can have a legitimate purpose.[7]  <u>See</u> <u>In re Urethane Antitrust Litig.</u>, MDL No. 1616, 2011 WL 1327988, at *6 (D. Kan. Apr. 5, 2011) (holding that defendants were "entitled to rebut [evidence of competitor contacts] by showing that because plaintiffs engaged in the same conduct, that evidence does not necessarily indicate or support the existence of a conspiracy among defendants").  Accordingly, the DAPs' motion is DENIED as to evidence relating to the DAPs' exchange of competitive information with competitors introduced for the purpose of demonstrating such exchanges are not inherently suspect.

Finally, the DAPs claim that admission of competitive intelligence practices violates public policy because allowing a defendant to inquire into a plaintiff's conduct deters private actions.  Not so.  Defendants intend to use the DAPs' information exchanges as examples of *legitimate* conduct.  It seems highly unlikely that future plaintiffs will be deterred from filing suit by the risk that their conduct might also be used as an example of legitimate conduct.  Regardless, if the DAPs wish to present evidence that certain conduct is probative of a conspiracy, Defendants are entitled to present evidence of similar conduct by the DAPs because it demonstrates that such conduct can be legitimate.  Indeed, the Court agrees that "[t]here is no better way to illustrate the legitimacy of business information exchanges than by drawing a parallel between the DAPs' own practices and Defendants'."  DAP Opp'n #1 at 7.

---

[7] Nor is the jury likely to be confused by "improperly conflat[ing] DAPs' legal competitor contacts with Defendants' illegal ones."  Mot. #1.  Information exchanges are not per se illegal.  <u>See</u> <u>United States v. U.S. Gypsum Co.</u>, 438 U.S. 422, 443 (1978).  If anything, therefore, the introduction of evidence showing how such exchanges can be for legitimate purposes will help the jury avoid making improper assumptions and help them determine whether the exchanges at issue are similar to legitimate exchanges or probative of something more nefarious.

The DAPs's motion is therefore GRANTED IN PART and DENIED IN PART. Defendants are permitted to introduce evidence of exchanges of competitive information among the DAPs and their competitors for the sole purpose of demonstrating that not all information exchanges among competitors are necessarily illegitimate or illegal.  The DAPs' motion is granted, however, in all other respects.

## III.   DAPS' MIL NO. 5: MOTION TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING PLAINTIFFS' ABILITY TO SEEK TREBLE DAMAGES AND ATTORNEYS' FEES AND COSTS

The DAPs move to exclude evidence or argument regarding their ability to recover treble damages or attorney's fees and costs because they argue it is irrelevant, would improperly interfere with the jury's fact-finding role, and would unfairly prejudice DAPs.  DAP Mot. at 23. Defendants do not oppose the DAPs' motion to the extent it seeks to exclude evidence or argument regarding the availability of attorneys' fees and costs.  See DAP Opp'n at 26 n. 13. Defendants assert, however, that evidence regarding the DAPs' ability to recover treble damages should be allowed "only in the limited context of impeaching the credibility of certain cooperating witnesses likely to be called by Plaintiffs."  Id. at 26.  The motion is GRANTED IN PART and DENIED IN PART.  Defendants will be permitted to reference the fact that Chunghwa's damages could be reduced by two thirds as a result of its participation in the Department of Justice's leniency program.  The DAPs' motion is granted in all other respects, however, including the DAPs' request to exclude any reference to the trebling of damages under the Clayton Act.

Chunghwa is a "leniency participant" in connection with the Department of Justice's investigation into price fixing in the CRT market.  Pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"), Chunghwa may avoid treble damages and joint and several liability in this case if it provides "satisfactory cooperation" to the DAPs, including by using "best efforts" to procure witnesses to testify at trial.  See Pub. L. No. 108-237 §§ 213(a), (b)(3)(B).  Chunghwa recently announced its intention to seek reduced liability, see ECF No. 3395, "and Defendants anticipate that Plaintiffs will rely heavily on the testimony of Chunghwa witnesses at trial," DAP Opp'n at 26.

Defendants argue "[t]he fact that the testimony of [Chunghwa] witnesses may help

United States District Court
Northern District of California

1    Chunghwa avoid treble damages speaks directly to potential bias, and Defendants must be

2    permitted to explore this issue during cross-examination."  Id.  The DAPs counter that the right to

3    address a witness's potential bias is limited to the extent the evidence of bias is unfairly

4    prejudicial.  Further, "[b]ecause the jury is allowed to hear about the substantial impact that the

5    joint and several limitation would have on Chunghwa's potential liability," the DAPs argue that

6    "ACPERA's limitation on trebling is cumulative and has little probative value."  DAP Reply at 24.

7         Argument or evidence regarding treble damages is not admissible when used as "an

8    invitation to the jury to negate Congress' determination that actual damages should be trebled."

9    Brooks v. Cook, 938 F.2d 1048, 1052 (9th Cir. 1991) (quoting Noble v. McClatchy Newspapers,

10   533 F.2d 1081, 1091 (9th Cir.1975)); see also id. ("[T]he fear is that a jury, informed of plaintiff's

11   right to additional funds, will view the money as a windfall and take steps to offset it.").  "Proof of

12   bias is almost always relevant [, however,] because the jury, as finder of fact and weigher of

13   credibility, has historically been entitled to assess all evidence which might bear on the accuracy

14   and truth of a witness' testimony."  United States v. Abel, 469 U.S. 45, 52 (1984).

15        Judge Illston faced a similar issue during one of the trials associated with the LCD MDL.

16   See Tr. of Proceedings, In re TFT-LCD Antitrust Litig., No. 07-1827 SI, ECF No. 5910, June 13,

17   2012.  There, Judge Illston balanced the right to address potential witness bias with the Ninth

18   Circuit's requirement in Brooks not to admit evidence of trebling.  Specifically, she allowed the

19   defendants to explore the fact that the witness's testimony could help the leniency participant

20   reduce its potential damages by two thirds, but she prohibited any direct reference to the fact that

21   plaintiffs' damages would be trebled under the Clayton Act.  The Court agrees with Judge Illston's

22   approach and adopts it here.[8]

24   [8] The Court rejects Defendants' argument that reference to trebled damages under the Clayton Act
     should be allowed because

25        [i]n addition to showing potential bias, the availability of de-trebled damages under
          ACPERA may be relevant at trial to show that Chunghwa could have been
26        motivated to enter into a leniency agreement with the DOJ by a desire to reduce its
          future civil liability risk and not, as Plaintiffs will likely argue, because Chunghwa
27        believed it had committed a violation of U.S. antitrust laws.

28   Opp'n at 27.  Defendants are free to argue that Chunghwa could have been motivated to enter into

Accordingly, the DAPs' motion is GRANTED IN PART and DENIED IN PART. Defendants will be permitted to make a narrowly-tailored reference to the fact that Chunghwa's damages could potentially be reduced by two thirds as a result of its participation in the leniency program and cooperation at trial. They are prohibited, however, from otherwise making reference to treble damages, either directly or indirectly.

## IV.   DAPS MIL NO. 6: MOTION TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING OTHER ACTIONS AND SETTLEMENTS IN THIS MDL

The DAPs' ask the Court to exclude evidence or argument regarding other actions and settlements in this MDL, including reference to the claims and settlement of the direct and indirect purchaser classes and other DAPs not going to trial in the Northern District. The DAPs argue such evidence or argument is irrelevant, would improperly interfere with the jury's fact-finding role, and would unfairly prejudice the DAPs in trial. Defendants counter that the DAPs' motion is overbroad, premature, and that evidence or argument regarding other actions and settlements is relevant for proving witness bias. The motion is GRANTED IN PART and DENIED IN PART. Defendants will be permitted to introduce evidence or argument regarding the fact of settlement, whether a witness or witness's employer agreed to cooperate with the DAPs, and absent Plaintiffs' claims solely in order to prove witness bias. Before Defendants can do so, however, they are ORDERED to alert the Court outside the jury's presence, sufficiently far in advance of introduction of the evidence that the DAPs can be heard and the Court hear brief argument. The Court will then consider whether specific evidence or argument is properly admissible given the context in which it is being presented. The DAPs motion is granted, however, in all other respects.

### A.   Reference To Absent Plaintiffs' Claims Against Defendants

The DAPs first ask the Court to exclude references to absent Plaintiffs' claims against Defendants because they are irrelevant. Defendants respond that they will need to reference such

_____

a leniency agreement by a desire to reduce its future civil liability, but they are precluded from making that point by referencing the fact that the DAPs' damages will be trebled.

14

claims when examining witnesses who are parties, or are employed by parties, to one of the other actions.  "Those parties," Defendants assert, "may have an interest in the outcome of the litigation, but [DAPs'] proposed order would improperly preclude Defendants from informing the jury of this bias."  DAP Opp'n at 34.  Defendants are silent, however, as to whether references to absent Plaintiffs' claims could be relevant in any other context.  Instead, they argue that (1) mentioning other actions is "inevitable where, as here, multiple entities at different levels of distribution bring separate claims" and (2) that the DAPs' request is overbroad because it would prohibit incidental references "such as declarations or discovery responses from other Plaintiffs that reference 'other actions' in the caption, or related testimony."  DAP Opp'n at 33.

Next, the DAPs argue that the Court should exclude references to absent Plaintiffs' claims because it would

> create[] a serious risk of unfair prejudice, including the risk that the jury, consciously or subconsciously, might reduce the damages awarded to Plaintiffs because of a belief that the [Plaintiffs] were able to compensate for these overcharges by passing them on to others, who, in turn, could seek compensation from Defendants.

DAP Mot. at 26.  Defendants urge the Court to defer its Rule 403 ruling "until it becomes clear which witnesses will testify and what evidence is offered."  Id. at 35.

"Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony."  Abel, 469 U.S. at 52.  Certain references to absent Plaintiffs' claims may be probative of witness bias.  Before Defendants can reference absent Plaintiffs' claims for this purpose, however, they are ORDERED to alert the Court outside the jury's presence, sufficiently far in advance of introduction of the evidence that the DAPs can be heard and the Court hear brief argument.  The Court will then determine if the probative value of the evidence is substantially outweighed by "the risk that the jury, consciously or subconsciously, might reduce the damages awarded to Plaintiffs . . . ."  DAP Mot. at 26.  If the evidence or argument is admitted, the Court may also invite the parties to submit limiting instructions.

Outside of demonstrating witness bias, however, Defendants fail to show the relevance of references to absent Plaintiffs' claims.  The DAPs' motion as it relates to references to absent

Plaintiffs' claims is therefore GRANTED for purposes other than proving bias.[9]  Accord Final

Pretrial Scheduling Order in DPP Trial, In re TFT-LCD (Flat Panel) Antitrust Litig., MDL No.

1827, ECF No. 5597, May 4, 2012 (granting motion in limine to exclude references to other

plaintiffs' claims); Costco Wholesale Corp. v. AU Optronics Corp., No. C13-1207RAJ, 2014 WL

4674390, at *7 (W.D. Wash. Sept. 17, 2014) ("No party may refer to other civil matters . . . .").  If

there is otherwise admissible evidence that cannot be admitted without incidentally referencing

absent Plaintiffs' claims, Defendants must seek leave of Court before introducing such evidence.

In doing so, Defendants must demonstrate that there is no other way to introduce the otherwise

admissible evidence without referencing absent Plaintiffs' claims.  The Court will then weigh the

probative value of that evidence against any unfair prejudicial effect.  If the evidence or argument

is admitted, the Court may also invite the parties to submit limiting instructions.

### B.       References To Any Plaintiffs' Settlements With Defendants

The DAPs also ask the Court to exclude any reference to settlements with Defendants

because it would violate Federal Rules of Evidence 402, 403, and 408.

Federal Rule of Evidence 408 prohibits the use of settlement agreements "to prove liability

for, invalidity of, or amount of a claim."  Rule 408 allows courts, however, to admit settlement

evidence "for another purpose," such as to "prov[e] a witness's bias or prejudice."  Fed. R. Evid.

408(b); see also Hudspeth v. C.I.R., 914 F.2d 1207, 1214 (9th Cir. 1990) (finding that Rule 408

"specifically provides for the admissibility of [settlement agreements] for the purpose of showing

bias or prejudice of a witness"); Abel, 469 U.S. at 52 (holding that proof of bias is almost always

relevant).  In addition to the fact of settlement, certain settlement terms can be probative of bias.

See, e.g., United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc., No. 95-1231 (RCL), 2007

WL 851868, at *1 (D.D.C. Mar. 14, 2007) ("[B]oth the existence and terms of the settlements –

including amount and any cooperation agreements – are probative of the witnesses' credibility and

---

[9] The Court recognizes that whether the DAPs passed on some of the overcharge to their customers may be relevant to the calculation of damages under certain state law claims.  The fact that the consumers to whom the DAPs passed on some of those overcharges also brought suit against Defendants, however, is irrelevant.

United States District Court
Northern District of California

1    motivation in testifying.").  With that said, "care should be taken that an indiscriminate and

2    mechanistic application of this exception to Rule 408, does not result in undermining the rule's

3    public policy objective . . . .  The trial judge should weigh the need for such evidence against the

4    potentiality of discouraging future settlement negotiations."  <u>Young v. Verson Allsteel Press Co.</u>,

5    539 F. Supp. 193, 196 (E.D. Pa. 1982) (quoting 2 J. Weinstein & M. Berger, Weinstein's

6    Evidence, s 408(05) (1978)).

7            The DAPs argue the Court should categorically exclude the fact, amount, and details of

8    settlement agreements in order to "further the public policy in favor of settling disputed claims."

9    DAP Reply at 26.  Further, they assert the probative value of allowing references to settlements

10   with Defendants is substantially outweighed by the "risk that the jury would improperly reduce its

11   damages award because of its belief that the plaintiff has already been compensated" by other

12   parties.  Mot at 27.  According to the DAPs, "[t]his risk is particularly acute as it relates to the

13   amounts of settlement agreements," because

14           [t]he testimony of an employee of a Defendant that has settled is not
15           likely to be any more or less biased based on the amount of a
             settlement agreement . . . But the danger of the jury using evidence
16           of the amount of a settlement is substantially higher than for the fact
             of a settlement.

17   DAP Reply at 28 n. 12.  Defendants counter that they have a right to prove witness bias by

18   reference to settlements, including settlement terms.  In particular, they have a right to inquire into

19   whether a witness or a witness's employer agreed to cooperate with the DAPs as part of this

20   litigation.  Further, they argue that any potential prejudice can be remedied through an appropriate

21   jury instruction.

22           The Court is unconvinced that reference to the fact of settlement or that a given settlement

23   contains a cooperation clause would discourage future settlements and thereby undermine Rule

24   408's policy rationale.  Further, the potential that jurors could reduce damages as a result of

25   learning of other settlements does not substantially outweigh the significant probative value of

26   evidence suggesting possible witness bias.  The DAPs are correct, however, that the amount of

27   settlement has far less probative value and has greater prejudicial risk insofar as it demonstrates

28   that the DAPs have already recovered a significant sum from other parties.

1    Upon remand for trial from the LCD MDL, the Western District of Washington found

2    similarly:

3    No party may ask questions, introduce evidence, or make argument
     revealing either the amount that any settling defendant paid to

4    [Plaintiff] Costco or that the settling defendants faced the prospect
     of attorney fees, costs, and treble damages. This ruling does not

5    preclude Defendants from asking the settling defendants'
     representatives about whether they settled their claims with Costco,

6    whether they agreed to cooperate with Costco as part of the
     settlement, and whether those defendants agreed to pay an

7    undisclosed sum of money to Costco. If necessary, the court will
     consider an instruction to the jury that it should not speculate about

8    the amount of any settlement or consider the settlements for
     purposes of assessing Costco's damages, and that evidence that some

9    defendants paid a settlement is relevant only to establish whether a
     witness has a bias. If necessary, the court will also consider an

10   instruction that the jury need not concern itself with offsetting
     Costco's damages to account for payments from settling defendants.

11

12   Costco Wholesale Corp. v. AU Optronics Corp., No. C13-1207RAJ, 2014 WL 4674390, at *6

13   (W.D. Wash. Sept. 17, 2014). The Court finds this approach appropriately balances a defendant's

14   right to question a witness about potential bias – in particular, whether the witness or the witness's

15   employer agreed to cooperate with the DAPs – with the potential prejudice (and minimal probative

16   value) of references to settlement amounts. See also DAP Reply at 28 n. 12 (arguing that the risk

17   of prejudice "is particularly acute as it relates to the amounts of settlement agreements").

18   Accordingly, the DAPs' motion on this issue is DENIED as to evidence or argument

19   regarding the fact of settlement or whether the witness or the witness's employer agreed to

20   cooperate with the DAPs, so long as the evidence is introduced for the sole purpose of establishing

21   witness bias. Before Defendants can present such evidence or argument, however, they are

22   ORDERED to alert the Court outside the jury's presence, sufficiently far in advance of

23   introduction of the evidence that the DAPs can be heard and the Court hear brief argument. The

24   Court will then make a final decision on whether the evidence satisfies Rule 403. The DAPs'

25   motion on this issue is GRANTED, however, in all other respects, including as to settlement

26   amounts.

27   **C.    Conclusion**

28   The motion is GRANTED IN PART and DENIED IN PART. Defendants will be

United States District Court
Northern District of California

1    permitted to reference absent Plaintiffs' claims, the fact of settlement, and whether the witness or

2    the witness's employer agreed to cooperate with the DAPs, but solely in order to prove witness

3    bias.  Before Defendants can do so, however, they are ORDERED to alert the Court as set forth

4    above.

5    **V.    DAPS MIL NO. 8: MOTION TO EXCLUDE EVIDENCE OR ARGUMENT
         REGARDING PLAINTIFFS' ALLEGED FAILURE TO MITIGATE THEIR
6         DAMAGES**

7         The DAPs move to exclude evidence purporting to show that the DAPs failed to mitigate

8    their damages because it is irrelevant, would improperly interfere with the jury's fact-finding role,

9    and would unfairly prejudice the DAPs.  Defendants respond that it should be allowed because the

10   mitigation defense is well established in antitrust law.  Because evidence or argument regarding

11   the DAPs' alleged failure to mitigate their damages is irrelevant, the motion is GRANTED.

12        The DAPs first argue their motion should be granted because, as a matter of law, "a price-

13   fixing plaintiff is allowed to recover its full damages even though it mitigated its damages by

14   passing part of the excessive costs to its customers."  DAP Mot. at 31 (quoting Royal Printing Co.

15   v. Kimberly–Clark Corp., 621 F.2d 323, 327 (9th Cir.1980)).  Defendants do not dispute this

16   point.  Accordingly, Defendants are precluded from presenting evidence or argument suggesting

17   the DAPs mitigated, or could have mitigated, their damages by increasing the prices they charged

18   their customers.

19        Defendants assert in their Opposition, however, that they should be allowed to present

20   other evidence and argument to show DAPs failed to mitigate their damages because (1) "[c]ertain

21   DAPs, such as Sharp, were aware of the factual basis for their antitrust claims well before the end

22   of the alleged conspiracy period," DAP Opp'n at 40, and (2) those DAPs failed to mitigate their

23   damages by either (a) ceasing to purchase price-fixed CRTs from cartel members or (b) reporting

24   the conspiracy to authorities.  In reply, the DAPs dispute that they had knowledge of the

25   conspiracy and argue that such evidence and argument should be excluded as irrelevant because a

26   mitigation defense does not apply in the context of horizontal price-fixing conspiracies.

27        Facing the same facts and legal arguments as the instant motion, Judge Illston in the LCD

28   MDL "declin[ed] to hold that defendants may assert mitigation as a defense to [the plaintiff's]

United States District Court
Northern District of California

horizontal price-fixing claim." In re TFT-LCD (Flat Panel) Antitrust Litig., No. M 07-1827 SI, 2012 WL 6000154, at *3 (N.D. Cal. Nov. 30, 2012); see also Final Pretrial Scheduling Order in DPP Trial, LCD, MDL No. 1827, ECF No. 5597 at 4, May 4, 2012 (excluding evidence or argument regarding the plaintiffs' duty to mitigate); In re Airline Ticket Comm'n Antitrust Litig., 918 F. Supp. 283, 286 (D. Minn. 1996) ("In a horizontal price-fixing case, however, mitigation and offset generally do not affect the ultimate measure of damages.").

The Court agrees with Judge Illston that the law does not require mitigation in a price-fixing conspiracy case. In addition, the Court notes that successful price-fixing conspiracies increase the *market* price for price-fixed goods. Defendants' suggestion, therefore, that plaintiffs can mitigate their damages by purchasing from non-conspiring suppliers is nonsensical. Separately, it is also implausible where, as here, virtually every major supplier is alleged to have participated in the conspiracy.

Judge Illston also declined to hold that the plaintiffs had a duty to report the conspiracy to the authorities. See id. Rejecting the same authority Defendants cite here, Judge Illston found that those cases

> arose in the context of singular, complex and heavily regulated framework [and] do not shed any light on whether mitigation is a defense to a horizontal price-fixing claim. See MCI Communications Corp. v. AT&T, 708 F.2d at 1207 (quoting lower court jury instructions which stated, *inter alia*, "AT&T contends that the FCC had the power to resolve many of the alleged unlawful acts of which MCI complains and that if MCI had filed complaints with the FCC, or formally objected to tariffs of AT&T, the FCC could have resolved any disputes over FX, CCSA, local distribution areas, the terms and conditions of furnishing local distribution facilities, and multipoint service. MCI denies this contention and argues that AT&T encouraged it to continue negotiating rather than resorting to the FCC."); Litton Systems, Inc., 700 F.2d at 820 n. 47 (noting AT&T's argument that "Litton should have mitigated its damages by removing the interface devices as soon as the tariff requiring them was invalidated").

Id.

The Court agrees that MCI is inapposite. Defendants' argument also fails for at least two additional reasons. First, Defendants' argument implies that a defendant should be immunized from liability whenever a plaintiff is harmed by conduct of which it was aware but failed to report to authorities. A rule that absolves defendants for wrongdoing based on a failure of victims to report illegal conduct is absurd. Second, Defendants' theory is impossibly speculative insofar as it

United States District Court
Northern District of California

assumes that reporting the conspiracy to authorities would have quickly defeated the conspiracy such that the price of CRTs would have returned to competitive levels soon thereafter.

Finally, the Court rejects Defendants' policy argument that "[a]bsent a mitigation requirement, treble damages create a perverse incentive for plaintiffs to sit back and accumulate alleged damages for their own benefit." DAP Opp'n at 43. This argument fails for at least two reasons. First, the statute of limitations confines a plaintiff's ability "to sit back and accumulate alleged damages." Second, even if a mitigation defense was available, it would not extend to a requirement that a plaintiff file suit as soon as possible or report illegal activities in order to recover damages caused by those activities. See Westman Commission Co., 541 F. Supp. at 314 (characterizing as "ridiculous" defendant's argument that plaintiff should have mitigated its damages by filing for an injunction); see also Balboa Capital Corp. v. Graphic Pallet & Transp., Inc., No. 13 C 6503, 2015 WL 514987, at *4 (N.D. Ill. Feb. 6, 2015 ("[D]efendants do not cite and the Court has not found any support for the notion that a non-breaching party is required to file suit, let alone do so as quickly as possible, to mitigate its damages.").

In sum, evidence and argument regarding DAPs' purported failure to mitigate is irrelevant. The Court therefore GRANTS DAP's motion.

## VI.    CONCLUSION

The Court rules as follows:

| Motion | Ruling |
|---|---|
| Defendants' MIL No. 7: Motion to Exclude Dr. Frankel's Inflation Adjusted Damages | GRANTED |
| DAPs' MIL No. 1: Motion To Exclude Evidence Or Argument Regarding Plaintiffs' Competitive Intelligence Practices | GRANTED IN PART and DENIED IN PART |
| DAPs' MIL No. 5: Motion To Exclude Evidence Or Argument Regarding Plaintiffs' Ability To Seek Treble Damages and Attorneys' Fees And Costs | GRANTED IN PART and DENIED IN PART |
| DAPs MIL No. 6: Motion to Exclude Evidence Or Argument Regarding Other Actions And Settlements In This MDL | GRANTED IN PART and DENIED IN PART |

| DAPs MIL No. 8: Motion To Exclude Evidence Or Argument Regarding Plaintiffs' Alleged Failure To Mitigate Their Damages | GRANTED |

**IT IS SO ORDERED.**

Dated:  October 25, 2016



JON S. TIGAR
United States District Judge