Brian Barry
151 N. Martel Ave.
LA CA 90036
Telephone: 323-954-7210
Email: bribarry1@yahoo.com

*Pro Se*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 3:07-cv-5944<br>MDL No. 1917 |
| | **CLASS ACTION** |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **DECLARATION OF BRIAN BARRY IN SUPPORT OF OBJECTION TO PROPOSED ALLOCATION OF AGGREGATE FEE AWARD TO INDIRECT PURCHASER PLAINTIFFS' COUNSEL**<br><br>Judge: Hon. Jon S. Tigar |

1

I, Brian Barry, declare as follows:

I am an attorney licensed to practice before the courts of California, but currently on inactive status, and have been so since Jan. 6, 2014. I am filing this pro se. I have personal knowledge of the facts stated in this filing and, if called as a witness, I could and would testify competently to them.

1) I personally have not billed any time for read and review of filings due to the fact Lead Counsel instructed that this not be done. However, I have read and reviewed at least 50 filings and emailed with my client and/or her attorney son many, many, times to keep them updated and explain what's happening in the case, and continue to do so to this day. If I had been billing for this there would have been time for me in 2012- 2013 (and if active in 2014, 2015 and 2016).

2) I believe it is unfair for the Special Master to change the rules and now allow some attorneys to bill for this time. It is further insulting that it be paid at $600 an hour while substantive work critical to the case was reduced to $350 an hour by Lead Counsel, only after the case was resolved!

3) The reason there is no time for this Firm after 2012 is not only that I was obeying the rules set forth by Lead Counsel re read and review time, but also because, after having received some health news, I decidedin early 2013 to retire as of Jan. 2014. I was in Indonesia from late Dec. 2012 Jan. until April 2013 to evaluate the possibilities of and then to prepare to retire there.

4) In preparation for the closing of my firm, I reviewed the cases that I had on file as of late 2012. I determined the best way to be a team player in all cases that were still in early stages was to work on them in an equal amount before I closed the

2

firm and retired. In late 2012 I was informed that other cases were going to start discovery, and I had received a request from lead counsel in those cases to assign attorneys to work on it. Thus, I decided to move Jeff Shea, the primary attorney on CRT who had been working on it full time for 13 months, first to the Eggs case (along with another attorney) and then later to the TransPacific Air Passenger case so that he could work on those two cases full time for the last year he would be in my employ. I also moved two other attorneys who had been working on the Digital Music case to the TransPacific case. As a result, even though no work was done after 2013, as of April 2015 this Firm had the 11th biggest lodestar out of 40 firms in the TransPacific case. (See ECF 4872 Exhibit 2 thereto). Similarly, in this case the Firm is 18th of 50 firms, even after all the unfair reductions applied to its lodestar. By the end of 2013 I had a similar lodestar in all four cases (Eggs, CRT, Digital Music and TransPacific). In this way, I assisted the lead counsel in all four cases an equal amount before I retired and closed my firm.

5) I moved to Bali on Dec. 13, 2013. Shortly thereafter, pursuant to the information I listed on my 2014 State Bar renewal form, I was listed as being inactive with the Star Bar as of Jan. 6, 2014.

6) I did not abandon the CRT case, if Lead Counsel had requested that Shea stay on the case for awhile or return to help later in 2013 I would have agreed. Further, I complied with a request for an additional litigation fund contribution in Jan. 2016 of $3000. (See Exhibit 15 attached hereto, check dated Jan. 31, 2016). If Lead Counsel believed I had abandoned the case, then why was he asking me for money? Further, this is money I will never get back as the expenses being sought to be reimbursed had already been requested and ruled on by the Special Master,

3

and my $3000 check came after. Further, if Lead Counsel intended on paying itself over $40 million, couldn't/shouldn't it have paid the last few un-reimbursable expenses in the case?

7) Attached hereto as Exhibit 1 is a 30-b-6 deposition outline prepared by my attorney, Jeff Shea ("Shea") on or about June 29, 2012. It is redacted because the Protective Order in this case covers summaries of documents produced. This document shows that Shea was assisting in preparing for depositions by pulling documents therefore. This document was **not** reviewed by the Special Master because he refused to accept it for review after the oral hearing (See Exhibit 13 hereto).

8) Attached hereto as Exhibit 2 is a June 12, 2012 email to Shea asking him to pull documents for a deposition.

9) Attached hereto as Exhibit 3 is a June 29, 2012 email to Shea again asking him to pull documents for a deposition.

10) Attached hereto as Exhibit 4 is a Dec. 3, 2012 email from Shea which identifies relevant documents for use in a deposition of Hitachi's Kazuhiro Sakashita.

11) Attached hereto as Exhibit 5 is a Dec. 6, 2012 email from Shea which identifies relevant documents for use in a deposition of Hitachi's Nobuhiko Kobayashi.

12) Attached hereto as Exhibit 6 is a Dec. 20, 2012 email from Shea which identifies relevant documents for use in a deposition of Chungwa's Chih Chun.

13) Attached hereto as Exhibit 7 is a Nov. 29, 2012 email from Shea which identifies relevant documents for use in a deposition of Hitachi's Kazuhiro Sakashita.

14) Attached hereto as Exhibit 8 is a Nov. 29, 2012 email from Shea which identifies relevant documents for use in a deposition of Samsung's Dai Eui Lee.

4

15) Attached hereto as Exhibit 9 is a Nov. 9, 2012 email from Shea which identifies relevant documents for use in a deposition of Samsung's Dai Eui Lee.

16) Attached hereto as Exhibit 10 is a Nov. 2, 2012 email from Shea which identifies relevant documents for use in a deposition of Samsung's Dai Eui Lee.

17) Attached hereto as Exhibit 11 is a Oct. 19, 2012 email from Shea which identifies relevant documents for use in a deposition of Samsung's Dai Eui Lee.

18) Attached hereto as Exhibit 12 is a Dec. 26, 2016 email to Shea from his team leader, Sylvie Kern, in response to being informed that he was going to start working on another case. There is no request that he stay on to assist in any pending work or inquiry whether he could assist in the future.

19) Attached hereto as Exhibit 13 is a October 5, 2016 email from Sandra Chan of JAMS to Shea informing him that the Special Master refused to review the 30-b-6 outline Shea had submitted after the oral hearing had taken place. The bottom of the email chain shows the deposition outline had been sent by Shea to other attorneys on June 29, 2012.

20) Attached hereto as Exhibit 14 is a Oct. 14, 2016 email from Chan to me stating that the Special Master refused to look at the $3000 cancelled check I had sent as proof of said payment in light of the fact the list of Litigation Fund contributions filed by Lead Counsel had omitted this payment.

21) Attached hereto as Exhibit 15 is a copy of a cancelled check for $3000 I had sent to Lead Counsel in January 2016 as a contribution to the Litigation Fund.

22) During the pendency of this case, Lead Counsel NEVER raised any issue regarding my firm's billings, work product (other than the work on one Korean language attorney who was let go after only approx.. 300 hours of work), or

efficiency of work process during the time working on the case (despite the fact that we submitted time records regularly and contemporaneously). My firm, even after absorbing severe reductions in billable hours and allowable hourly rate, still produced the 18th largest lodestar in the case (and as of the end of 2012, when risk was still at its highest, was one of the top few of all firms in the case). Despite this fact, it is one of only 8 firms (out of 50) to not have been assigned a positive multiplier. This is inequitable and should not be countenanced. Lead Counsel has repeatedly stated that firms which performed document review, contributed litigation funds, and provided a class representative should be assigned multipliers of at least 1.23-1.3. This firm clearly satisfies the above criteria, and should be assigned a multiplier in this range. Further, Lead Counsel stated "Where document reviewers also worked on preparing for depositions" firms were "allowed to bill this time at the attorney's normal rate" (ECF No. 4790, P.2, Footnote 1). Thus, Shea should have been allowed to billed at the higher rate of $525 that he was billed at in all reports to Lead Counsel during the case, not the $350 Lead Counsel suddenly deemed proper after he had settled the case. This rate is commensurate with the rate other attorneys who did this work are getting (before considering the inequitable multipliers)

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of November, 2016 in Bali Indonesia.

_____
Brian Barry