Timothy R. Hanigan (125791)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, California 91367
(818) 883-5644
trhanigan@gmail.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **CLASS ACTION** |
| All Indirect Purchaser Actions | The Honorable Jon S. Tigar |

# OBJECTOR SEAN HULL'S OBJECTION TO CORRECTED SPECIAL MASTER'S REPORT & RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES

Objector Sean Hull files this his objection to the Corrected Special Master's Report & Recommendation re Allocation of IPP Class Counsel Attorneys' Fees (ECF Doc. 4976).[1]

## I.     Background.

On October 7, 2015, Sean Hull filed his timely objection to the settlement and proposed request for attorneys' fees (ECF Doc. 4101). Among other objections, Mr. Hull challenged lead class counsels' request to determine how fees should be allocated among the various firms representing the class (ECF Doc. 4101, at 6). Mr. Hull observed that *In re High Sulfur Content Gasoline Products Liability Litigaiton*, 517 F.3d 220, 224-26 (5th Cir. 2008), provides critical guidance on judicial allocation of attorneys' fees between and among class counsel (*Id.*).

*High Sulfur* rejects "the proposition that courts can delegate their duty to allocate a fee award to a committee of interested attorneys who have reached no agreement among themselves and then approve the allocation after a perfunctory review." *Id.* at 233-34. Instead, in "a class action settlement, the district court has an *independent duty* under Federal Rule of Civil Procedure 23 to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *In re High Sulfur Content Gasoline Prods. Litig.*, 517 F.3d 220, 227–28 (5th Cir.

---

[1] Objector joins in and incorporates by reference all other objections filed or submitted by any other objectors with respect to the Corrected Special Mater's Report & Recommendation re Allocation of IPP Class Counsel Attorneys' Fees that are not inconsistent with Mr. Hull's original objection.

1

2008) (emphasis added); *In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987). The district court "must not … delegate that duty to the parties." *High Sulfur,* 517 F.3d at 228 (internal quotation omitted).

Mr. Hull would urge that the Special Master's Report, which (apart from relatively minor adjustments) signs off on lead counsel's allocation of $158 million, departs from the judicial allocation required in *High Sulfur.* As *High Sulfur* explained, the direct conflict of interest of lead counsel in "dividing a limited fund among themselves and other firms . . . strongly suggests that **affording substantial deference is inappropriate**." *Id.* at 235 (emphasis added).

## II. The Special Master's Adoption of the Vast Majority of Lead Counsel's Allocation Fund Does Not Fulfill this Court's Independent Judicial Duty to Ensure the Fees are Allocated Fairly.

Undue deference has been afforded to lead counsel in the Special Master's report. This Court should reject the Special Master's rubber stamping of the vast majority of lead counsel's allocation, whose legal conclusions are reviewed *de novo*, as are mixed questions of law and facts. *Bennett v. Yoshina*, 98 F. Supp. 2d 1139, 1145–46 (D. Haw. 2000), *aff'd,* 259 F.3d 1097 (9th Cir. 2001) (citing *Stivers v. Pierce,* 71 F.3d 732, 751 (9th Cir.1995) ("we will reverse the fee determination if the district court applied an incorrect legal standard in arriving at its decision"); *see also Falkowski v. Demske,* No. CIV–80–983E, 1985 WL 5574 (W.D.N.Y. Nov.23, 1985) (finding that conclusions of law and conclusions of mixed fact and law "are subject to close review and,

particularly when weighing the special master's legal conclusions and recommendations concerning costs and attorney's fees, the report and recommendation should be considered de novo").

Even under the clear error standard, a district court should never act as a "mere rubber stamp" for the findings and conclusions of a special master. *See Burlington Northern R.R. v. Department of Revenue,* 934 F.2d 1064, 1072 (9th Cir.1991) ("the district court's 'rubber stamp' of the master's order is an inexcusable abdication of judicial responsibility and a violation of article III of the Constitution"); *accord Stauble v. Warrob, Inc.,* 977 F.2d 690, 696 (1st Cir.1992) (disapproving "the mere 'laying on of hands' by a district judge who adopts a magistrate's or master's recommendation of liability pro forma"); *Jack Walters & Sons Corp. v. Morton Bldg., Inc.,* 737 F.2d 698, 712 (7th Cir.) (disapproving practice of adopting special master's report "without independent analysis"), *cert. denied,* 1146 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984).

The Ninth Circuit rejects the notion "that a district court may decline to approve a fee allocation only if it is contrary to the interests of the class or in violation of rules of professional conduct. Instead, . . . the relative efforts of, and benefits conferred upon the class by, co-counsel are proper bases for refusing to approve a fee allocation proposal." *In re FPI/Agretech Securities Litig.,* 105 F.3d 469, 474 (9th Cir. 1997) (citing *Class Plaintiffs v. Jaffe & Schlesinger, P.A.,* 19 F.3d 1306, 1308 (9th

Cir.1994); *In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987)); *In re Critical Path, Inc. Secs. Litig.,* No. 01-00551 WHA, 2002 U.S. Dist. LEXIS 26399, at *33 (N.D. Cal. June 18, 2002) (awarding higher fees to the firm that "undertook most of the work (including document review and negotiation with defendants) that actually delivered real benefit to the classes" and lower fees to the firm that "rode its coattails and received a (close to) free ride to settlement"). A court "may refuse to accept a fee allocation agreement whenever there is good cause to do so." *FPI/Agretech,* 105 F.3d at 473 (quoting *Smiley v. Sincoff,* 958 F.2d 498, 501 (2d Cir. 1992)).

## III. The Special Master's Report Allocates Fees Arbitrarily and Inequitably.

The master's report applies arbitrary and incorrect legal standards in arriving at its decision. The articulated bases and methodologies for the awards and varying multipliers are vague and ambiguous and result in arbitrary and inequitable results. Further, in adopting the vast majority of lead counsel's proposed allocation, it rewards firms in the good graces of lead counsel, while punishing those who did not acquiesce to lead counsel's demands, even where they improved the benefits for the class.

Among other erroneous methods for allocating fees, the master (in accord with lead counsel's proposed allocation) reduced Cooper & Kirkham's multiplier based on, *inter alia*, their objections to the excessive 33% fee request. ECF. No. 479, at 18. As Cooper & Kirkham noted, "[n]ot only would this kind of punitive action violate all

notions of fundamental fairness that are at the core of a proper fee allocation, its chilling effect on the full presentation of issues, and a complete and reasoned evaluation of a settlement and distribution would certainly be detrimental to absent class members." (ECF No. 4821, at 1). This skewed allocation does not serve the best interests of the class. Cooper & Kirkham's objections assisted in increasing the funds available for distribution to class members by $33,643,750. (ECF No. 4971, at 19). It should not be punished for this effort which served the class.

Also consistent with lead counsel's allocation plan, the magistrate's report awards firms with multipliers of 1.9-2.5, based on the following criteria:

> Firms that were core to the class effort; firms that *performed a large amount of high level work at most stages of the case*; firms that drafted important briefs or argued significant motions; firms that took or defended a large number of depositions, were involved in trial preparations and expert work; firms that participated in settlement strategy and negotiations and preformed substantial post-fee petition work.

(ECF No. 4971, at 6-7).

Despite these purported standards, the second highest multiplier (2.4984) is given to a firm that was not formally associated with the class action until late in the litigation, made no contributions to the litigation fund, and invested only $556,654 worth of time in the case, all during the last few months before the settlements were announced. (ECF No. 4800, Ex. 1; ECF No. 4821, at 4). Similarly, the recommended

multipliers for the other two late-added members of the trial team are 1.7489 and 1.5690, the 8th and 9th highest multipliers. (*Id.*).

There is no indication that these late-added firms brought value to the case above and beyond those firms that provided leadership in organizing and carrying out discovery, contributed to drafting significant motions, worked with experts, and financed the litigation fund. And, the Special Master's consideration of this point demonstrates undue deference to lead counsel's wishes. (ECF Doc. 4971, at 15) ("[w]hile one might quibble with the elevated multipliers that Lead Counsel assigned these firms, the Special Master accepts his judgment since as noted above he is in the best position of all to make that assessment"); *High Sulfur,* 517 F.3d at 228 (while "lead counsel may be in a better position . . . to evaluate the contributions of all counsel seeking recovery of fees[,]" the allocation should be supervised by the court in light of inherent conflicts among the attorneys because "[t]hey make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?'") (quoting *In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005)) (Ambro, J., concurring)).

Further, the 10% reduction of the lodestar across the board, unfairly and arbitrarily compounds the penalty for firms who were improperly assigned a lower multiplier than others. This reduction penalizes firms based on assumed inefficiency

even where lead counsel never criticized a firm's billing practices. (ECF No. 4971, at 18-19; ECF No 4821, at 6-7, 16-17).

Moreover, the varying multipliers among the different firms result in wide and inequitable disparities for attorneys performing the same tasks, and in some cases reward firms' paralegals law clerks with greater compensation than other firms' attorneys. The Special Master's report fails to address the gaps in logic in its methodology.

For example, after application of a 2.2685 multiplier, the Law Offices of Sylvie Kern are rewarded with a billing rate of approximately $1,588 per hour for all work, including hundreds of hours of document review, while other firms are compensated at $350 per hour for the same work (ECF Doc. 4073-7, 2-3; ECF Doc. 4800, Ex. A; ECF Doc. 5013, at 4). Additionally, lead counsels' firm billing of law clerks and paralegals at $250-$300 per hour, with a 2.89 multiplier, results in a $722.50 billing rate, more than double that of other firms' attorneys (ECF Doc. 5013, at 6).

Finally, the bases for the disparate multipliers ("(1) the level of work performed . . . (2) amount of high level work performed . . . ; (3) quality of work performed . . .; (4) level of risk . . . and (5) billing efficiency and billing rates" (ECF No. 4971, at 5)) are vague and accord too much subjectivity to lead counsel in determining which firms reap the bounty of the fees.

## Conclusion

For these and other reasons, class member Sean Hull objects to the Corrected Special Master's Report & Recommendation re Allocation of IPP Class Counsel Attorneys' Fees, and urges that this Court allocate fees among class counsel independent of the Master's report in a manner that is fair and serves the best interests of the class.

Dated:	November 11, 2016	Respectfully submitted,

*/s/ Timothy R. Hanigan*
Timothy R. Hanigan (125791)
LANG, HANIGAN & CARVALHO, LLP
21550 Oxnard Street, Suite 760
Woodland Hills, California 91367
(818) 883-5644
trhanigan@gmail.com

*Counsel for Objector Sean Hull*

## PROOF OF SERVICE

I, Timothy R. Hanigan, hereby certify that on this 11th day of November 2016, I caused the foregoing to be electronically filed using the CM/ECF filing system thus effectuating service of such filing on all ECF registered attorneys in this case.

*/s/ Timothy R. Hanigan*
Timothy R. Hanigan
