Francis O. Scarpulla (41059)
Patrick B. Clayton (240191)
LAW OFFICES OF FRANCIS O. SCARPULLA
456 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 788-7210
Facsimile:  (415) 788-0706
Email: fos@scarpullalaw.com
          pbc@scarpullalaw.com

Counsel for Indirect-Purchaser Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 3:07-cv-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **OBJECTIONS TO SPECIAL MASTER'S REPORT & RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES** |
| All Indirect-Purchaser Actions | Judge:            The Honorable Jon S. Tigar<br>Special Master:  The Honorable Martin Quinn<br>Hearing Date:    TBD<br>Hearing Venue:  Courtroom 9, 19th Floor |

1
2

# TABLE OF CONTENTS

3  I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4  II.     APPLICABLE LEGAL PRINCIPLES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5  III.    THE LOFOS LODESTAR MULTIPLIER, AT MINIMUM, SHOULD BE THE SAME
6         AS THE MULTIPLIER GIVEN TO HIS FORMER FIRM . . . . . . . . . . . . . . . . . . . . . .2

7  IV.    THE LOFOS MULTIPLIER SHOULD BE SAME AS LEAD COUNSEL'S, IN
8         ACCORDANCE WITH LEAD COUNSEL'S 2008 AGREEMENT . . . . . . . . . . . . . . . 4

8  V.     DUPLICATIVE AND UNUSABLE TRIAL WORK SHOULD NOT BE
9         COMPENSATED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10  VI.   INFLATIONARY BILLING PRACTICES SHOULD NOT BE COMPENSATED. . . . . 8

11  VII.  FINANCIAL-RISK MULTIPLIER SHOULD NOT BE APPLIED . . . . . . . . . . . . . . . .10

12  VIII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

1

<u>TABLE OF AUTHORITIES</u>

2

3

<u>Cases</u>

4

*Apple, Inc. v. Samsung Electronics Co.,\*
    2012 WL 5451411, at *5 (N.D.Cal. Nov. 7, 2012. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5

*Banas v. Volcano Corp.*
6
    47 F.Supp.3d 957, 968 (N.D. Cal. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7

*Goonewardene v. ADP, LLC, et al.,*
    ___ Cal.Rptr.3d ___ (2016), 2016 WL 6554981 (Cal.App. Nov.4, 2016) . . . . . . . . . . . . 6

8

*Hajro v. U.S. Citizenship & Immigration Servs*
9
    900 F.Supp.2d 1034, 1053 (N.D.Cal.2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10

*In re FPI/Agretech Securities Litigation*
    105 F.3d 469, 473-474 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

11

*Keller v. National Collegiate Athletic Association*
12
    Case No. C 09-1967 *et seq.*, 2015 WL 8916392 (N.D. Cal. Dec. 15, 2015) . . . . . . . . . . .2

13

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*
    114 F. Supp.3d 819, 833 (N.D. Cal. 2015). . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . 9

14

*Prudential Ins. Co. v. Remington*
15
    No. 2:12-cv-02821 (E.D. Cal. Jan. 24, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

16

*Robinson v. Plourde*
    717 F.Supp.2d 1092, 1100-01 (D. Haw. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

17

*Rosales v. El Rancho Farms*
18
    No. 1:09-cv-00707, 2015 WL 4460635 at *30 (E.D. Cal. July 21, 2015). . . . . . . . . . . . 9

19

*Welch v. Metropolitan Life Ins. Co.,*
    480 F.3d 942, 948 (9th Cir. 2007). . . . . . . . . . .. . . . . . . . . . .. . . . . . . .. . . . . . . . . . 9

20

*Yamada v. Nobel Biocare Holding AG*
21
    825 F.3d 536 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

22

<u>Other Authorities</u>

23

Federal Rules of Civil Procedure, Rule 53(f)(3) - (4), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

24

25

26

27

28

OBJECTIONS TO REPORT & RECOMMENDATION RE IPP ATTY FEES
Case No. 3:07-cv-5944, MDL No. 1917

# I
# INTRODUCTION

The Law Offices of Francis O. Scarpulla ("LOFOS") objects to the Special Master's

Report and Recommendation Re Allocation of IPP Class Counsel Attorneys' Fees (Dkt. 4976) on

the following grounds:

- The Special Master improperly applied a different multiplier to Mr. Scarpulla's lodestar than to Zelle LLP's lodestar, despite the fact that all of Mr. Scarpulla's fee-petition lodestar in this case was generated while he was the senior antitrust partner at Zelle.

- The Special Master erred in declining to enforce the terms of an agreement[1] reached in May 2008, at the outset of this MDL proceeding, between Zelle and Lead Counsel, Trump, Alioto, Trump & Prescott ("TATP"), which provided that Zelle would receive a multiplier equivalent to that of TATP in exchange for Zelle serving in the case as a "shadow" co-lead and essentially running the case. At a minimum, it should be enforced as to the LOFOS lodestar on a third-party beneficiary basis.

- The Special Master improperly allocated fees based on lodestars that included time that does not appear to have been kept contemporaneously in violation of the Order Appointing Interim Lead Counsel, Dkt. 282, p. 6:5-6, or which clearly did not benefit the Class, or which is vague or ministerial.  This is especially true for the trial preparation time, all of which was approved without any adjustment for the fact that Lead Counsel's late-added trial firms had to re-do much of the work previously undertaken by inexperienced lawyers.

- The Special Master erred in applying the same multiplier to groups of firms where some firms' lodestar reflects quarter-hour increments and "block-billing," but other firms' do not, effectively creating an improper "bonus" multiplier for those firms that engaged in inflationary billing practices.

- The Special Master erred in applying a "financial risk" multiplier to firms who made little or no assessment payments or where those payments were made after the case was over and when there was no risk that the assessment would not be recouped from settlements.

For all of these reasons, and as explained more fully below, the Court should modify the

Special Master's Report and Recommendation, and award fees based on an allocation which

accounts for the issues raised in this objection.

---

[1] That there was an agreement between Zelle and TATP is established by the Declaration of Professor Jack I. Garvey, filed concurrently herewith, under seal.

1

## II
## APPLICABLE LEGAL STANDARDS

Pursuant to Rule 53(f)(3) - (4), Fed. R. Civ. P., and as modified by the Court's January 13, 2016 Order Re Motion To Amend The Order Appointing Special Master Quinn (Dkt. 4298), the Court decides *de novo* all objections to findings of fact and conclusions of law made or recommended by the Special Master.  "[D]istrict courts have the authority to reject a fee allocation that does not accurately reflect the amount of work performed by the various attorneys." *In re FPI/Agretech Sec. Litig.*, 105 F.3d 469, 473 (9th Cir. 1997).  "[T]he relative efforts of, and benefits conferred upon the class by, co-counsel are proper bases for refusing to approve a fee allocation proposal." *Id.* at 474.  *See also Keller v. Nat'l Collegiate Athletic Ass'n*, No. C 09-1967 CW *et seq.*, 2015 WL 8916392 (N.D. Cal. Dec. 15, 2015) (citing *FPI/Agretech* and allocating fixed percentage fee award among counsel).

## III
## THE LOFOS LODESTAR MULTIPLIER, AT MINIMUM, SHOULD BE THE SAME AS THE MULTIPLIER GIVEN TO HIS FORMER FIRM

The LOFOS lodestar consists of Mr. Scarpulla's time spent working on this case while he was the Zelle senior antitrust partner from the inception of this MDL proceeding in late 2007 to March 21, 2015.  When Mr. Scarpulla left Zelle on March 21, 2015, he entered into an agreement assigning to him a one-half interest in his individual lodestar in this case, which is the basis for the award of attorneys' fees to LOFOS.  The agreement was disclosed in the original LOFOS fee declaration filed September 23, 2015.  *See* Dkt. 4069 at ¶2.  Special Master Quinn determined that Mr. Scarpulla's lodestar amount, after adjusting for a maximum hourly rate of $1,000 and applying the same 10% across-the-board cut as applied to all IPP counsel, was $181,063.75.[2]  The Special Master rejected Lead Counsel's "vindictive" request to disallow nearly all of Mr. Scarpulla's lodestar.  *See* Dkt. 4976 at pp. 11 – 12.

To this lodestar amount, the Special Master applied a multiplier of 1.15, the result of

---

[2] In fact, Mr. Scarpulla's normal hourly rate that he charged *per diem* clients is $1,250 per hour. *See* Dkt. 4069.

"[w]eighing Scarpulla's contributions as recognized by Special Master Walker, his raising of colorable criticisms of the Chunghwa and release features of the settlement, and the potential assistance his experience and skill might have brought to the Class had Lead Counsel welcomed it." Dkt. 4976 at p. 14.  A multiplier of 1.15 places LOFOS within the second-to-lowest band of IPP firms.  *See* Dkt. 4976-1 (Exhibit A to Report and Recommendation).  The Zelle firm was recommended for a multiplier of 1.9587, in the highest band of IPP firms other than Lead Counsel. *See id.*

The error in the Special Master's analysis is that Mr. Scarpulla's lodestar does not include any time for the activities for which the Special Master appears to cite as a justification for lowering the multiplier applied to Mr. Scarpulla's lodestar – *i.e.*, post-March 21, 2015 objections to the settlement and to the award of total fees.  The only time entries that were before the Special Master and which are now before this Court with respect to Mr. Scarpulla, ended in February 2015, and none of the work performed by Mr. Scarpulla after that date is included in Mr. Scarpulla's lodestar.  Thus, it was error for the Special Master to decide that work performed by Mr. Scarpulla after February 2015 should determine the lodestar multiplier to be applied to Mr. Scarpulla's pre-February 2015 time in the case while at his former firm.  Quite simply, there is no justification to give Mr. Scarpulla's lodestar a multiplier that is any different than the multiplier recommended for the Zelle firm where all of Mr. Scarpulla's lodestar was recorded.  As the Special Master notes, all of Mr. Scarpulla's time in this case was spent on tasks that were either delegated by Lead Counsel to Mr. Scarpulla's former firm (such as negotiating the Chunghwa settlement and cooperation agreement, as well as advising the Zelle attorneys responsible for drafting and arguing the class certification motion), or which was done at the request of the court-appointed Special Master Hon. Vaughn Walker.  Dkt. 4976 at p. 12.  Under these circumstances, it was error for the Special Master to assign LOFOS a materially lower multiplier than that applied to Mr. Scarpulla's former firm.

Applying the Zelle multiplier of 1.9587 to Mr. Scarpulla's Special-Master-adjusted lodestar of $181,063.75 results in an allocation amount of $354,649.57, which is an increase of $146,426.26 from the Special Master's recommended allocation to LOFOS.  Respectfully, the

3

1   Court should adopt this modification to the proposed allocation, and should use as its source of

2   funds the allocation to Lead Counsel, consistent with the Special Master's reasoning.  *See* Dkt.

3   4976 at pp. 26 – 27.

## IV
## THE LOFOS MULTIPLIER SHOULD BE THE SAME AS LEAD COUNSEL'S, IN ACCORDANCE WITH LEAD COUNSEL'S 2008 AGREEMENT

6           Long prior to, as well as during, the allocation proceedings before the Special Master, Mr.

7   Scarpulla raised the issue of the existence of an agreement, entered into at the outset of the case in

8   May 2008, between then recently-appointed Lead Counsel and Mr. Scarpulla's former firm, under

9   which Lead Counsel agreed that the lodestars of all Zelle attorneys and paralegals would receive

10  the same multiplier on that firm's total lodestar as Lead Counsel, in exchange for serving as a *de*

11  *facto* or "shadow" co-lead to the TATP firm and participating fully in prosecuting this case.

12  Though Lead Counsel and the Zelle partner now in charge of this case, Christopher Micheletti,

13  denied the existence of any such agreement, the Special Master ordered the production of the

14  emails in question, but only after Mr. Scarpulla filed a declaration attaching an email from a

15  former Zelle senior antitrust partner affirming the existence of such an agreement.[3]  *See* Dkt 4929

16  (Declaration of Francis O. Scarpulla re Agreement Between the Firms of Trump Alioto Trump &

17  Prescott and Zelle LLP) and Dkt. 4948 (Response to Special Master's Request for Documents).

18  The Special Master ultimately concluded that, despite the existence of these two emails, no

19  agreement existed, in part, because Zelle did not object when Lead Counsel recommended it for a

20  lower multiplier than TATP, and in any event, the Special Master was recommending the

21  multipliers to be assigned to IPP firms.  Dkt. 4976 at p. 13.  While the Special Master referred to

22  the manner in which the agreement was brought to his attention as "somewhat unseemly" (*id.*), he

23  declined to take further action on it.  This was error.

24          As a preliminary matter, the failure of both Mr. Alioto and Mr. Micheletti to acknowledge

25  the existence of the 2008 agreement when specifically questioned about it by the Special Master

---

[3] When Mr. Scarpulla disclosed that he had such an email from a former partner, Craig Corbitt, Mr. Micheletti contacted Mr. Corbitt in an attempt to dissuade him from coming forward with the truth.  Dkt. 4929.

4

1    raises troubling issues about the duty of candor to the Court (and by extension, the Court-

2    appointed Special Master).  A prominent expert in legal ethics, Prof. Richard Zitrin of U.C.

3    Hastings College of the Law, has reviewed that portion of the transcripts of the allocation

4    proceedings before Special Master Quinn during which the issue of the 2008 agreement arose, and

5    also reviewed the various filings submitted to the Special Master on the subject.  As explained in

6    his concurrently-filed declaration, it is Prof. Zitrin's opinion that both Lead Counsel and Zelle's

7    representative at the hearing acted unethically in failing to acknowledge the existence of the 2008

8    agreement when directly asked about it by the Special Master.

9         Although both Mr. Alioto and Mr. Micheletti stated that there was no agreement – and the

10   Special Master seems to agree –there can be no doubt that an actual agreement existed between

11   Zelle and TATP.[4]  *See* Declaration of Professor Jack I. Garvey in Support of Law Offices of

12   Francis O. Scarpulla's Objection to Special Master's Report & Recommendation re Allocation of

13   IPP Class Counsel Attorneys' Fees ("Garvey Decl."), ¶ 4, filed concurrently herewith, under seal.

14        The failure to disclose the agreement pertaining to fees also implicates Rule 23(e)(3), Fed.

15   R. Civ. P., which requires that parties seeking settlement approval identify any agreements that

16   bear on the settlements.  And as the Advisory Committee Notes to the 2003 Amendments to Rule

17   23(e) make clear: "Doubts should be resolved in favor of identification."  Although Mr. Scarpulla

18   noted the existence of this agreement as early as September 23, 2015 (Dkt. 4069, ¶ 8), disclosure

19   of that agreement did not occur here until the Special Master forced the issue.  The Court should

20   take this fact into account as it determines whether to adopt the Special Master's recommended fee

21   allocation to both Lead Counsel and to Zelle.[5]

22        Moreover, while the Special Master appears to suggest that the previously-undisclosed

23   2008 agreement can simply be ignored because he was charged with recommending allocations to

---

[4] The fact that Zelle chose not to enforce this agreement does not render it a non-agreement.

[5] There appear to be other fee agreements that were not fully disclosed to the Special Master.  For example, Mr. Goldberg stated that he had an agreement with Mr. Alioto that he (Goldberg) would be "consulted" by Mr. Alioto in establishing fees for his firm, as well as for the Hulett Harper and Fine Kaplan firms; when asked what they "consulted" about, Mr. Goldberg refused to respond, as did Mr. Alioto.  Scarpulla Decl., ¶ 5(g), Exh. 7.

5

1   the Court, the fact is that Lead Counsel originally recommended to the Special Master a multiplier

2   of 1.96 for Zelle (*see* Dkt. 4790), while the Special Master ultimately recommended a nearly-

3   identical multiplier of 1.9587 (*see* Dkt. 4976-1).  Clearly, Lead Counsel's input on recommended

4   multipliers held tremendous sway over the Special Master's final recommended allocations.  *See*

5   Dkt. 4976 (Corrected Special Master's Report & Recommendation re Allocation of IPP Class

6   Counsel Attorneys' Fees (Corrected Only to Add Exhibit A)).  While Zelle and TATP may have

7   come to some further agreement regarding the allocation of fees to Zelle, Mr. Scarpulla has made

8   no such agreement, and while at Zelle performed work on this case with the understanding that his

9   time in the case would be compensated at the same multiplier as TATP's.  Accordingly, and in the

10   alternative to applying the Zelle multiplier to the LOFOS lodestar as discussed above, it is

11   appropriate to apply the TATP multiplier of 2.9781 to the LOFOS lodestar, in light of the 2008

12   agreement and Mr. Scarpulla being a third-party beneficiary of that agreement.  *See* Garvey Decl.,

13   ¶ 10; *see also Goonewardene v. ADP, LLC, et al.*, ___ Cal.Rptr.3d ___ (2016), 2016 WL 6554981

14   at *8-*9, (Cal.App. Nov.4, 2016).  Doing so yields an allocation to LOFOS of $539,225.95, an

15   increase of $331,002.64 over the Special Master's recommended allocation to LOFOS.

16        An important missing element in the Special Master's evaluation of all counsel's allocation

17   issues is the existence of a so-called fee audit report.  This fee-auditing procedure is referred to by

18   a number of knowledgeable attorneys who apparently reviewed the lodestars of all plaintiffs'

19   counsel.  *See*, *e.g.*, Dkt. No. 4853-2, p. 34-35, Dkt. No. 4815, p. 9:14-16.

20        When Mr. Scarpulla requested that any such audit report be made part of this record, Mr.

21   Alioto stated: "[T]here's no report as such."  *See* Declaration of Francis O. Scarpulla in Support of

22   Objection to Special Master's Report and Recommendation re Allocation of IPP Class Counsel

23   Attorneys' Fees ("Scarpulla Decl."), ¶ 5, Exh. 4, at 25:23-24.  When pressed on the issue by the

24   Special Master, Mr. Alioto conceded that there were "…worksheets and work-up and

25   interlineations and correspondence from the firm handling another firm."  *Id*, at 26:20-24.  When

26   further pressed by the Special Master for the identity of any document used for the fee audit, Mr.

27   Alioto agreed to "get that [information] to you."  *Id.*, at 27:15-18.  As far as can be ascertained,

28   Mr. Alioto never followed through on this promise to the Special Master.

1   Additionally, the Zelle partner who informed Mr. Scarpulla of the TATP/Zelle fee-

2   multiplier agreement also informed him that an audit report was apparently prepared because he

3   asked for it and was told by another Zelle partner that he could not have it.  *See* Scarpulla Decl., ¶

4   7.

5   As a matter of due process, Mr. Scarpulla respectfully requests that this Court order that

6   any counsel who has any documents or emails that reflect any and all auditing of plaintiffs'

7   counsel's lodestars be filed in this record (under seal, if that is necessary).

8   Additionally, all counsel were to submit lodestar reports to an accountancy firm hired by

9   TATP to keep track of contemporaneously-prepared lodestar reports in accordance with the

10   Court's original order appointing TATP Lead Counsel.  Although Mr. Scarpulla has asked for all

11   reports sent to that firm, Mr. Alioto has refused to permit their production.  *See* Scarpulla Decl., ¶

12   6, Exh. 9.  Mr. Scarpulla believes that TATP failed to keep contemporaneous time records and

13   report them to Stephen J. Pelleriti, CPA, as was required.  *See* Dkts. 4545-5, 4545-6 (attaching

14   example copies of Mr. Alioto's hand-scribbled time entries with quarter-hour billing rates written

15   either in the side margins or across the top of the sheet).  *See also* Scarpulla Decl., ¶ 5(h).

16   Therefore, Mr. Scarpulla respectfully requests that, for due process purposes, this Court order

17   either Stephen J. Pelleriti, CPA or Lead Counsel to produce all time-and-expense reports received

18   by all counsel, the dates when they were received, and any summary reports prepared and/or sent

19   to Lead Counsel.  *See Yamada v. Nobel Biocare Holding AG,* 825 F.3d 536, 544 (9th Cir. 2016)

20   (holding it was a violation of due process to withhold time reports from opposing counsel).

21   **V**

**DUPLICATIVE AND UNUSABLE TRIAL WORK SHOULD NOT BE COMPENSATED**

22

23   During the allocation proceedings before the Special Master, Mr. Scarpulla argued that

24   Lead Counsel's decision to enlist three new firms as trial counsel as the original trial date

25   approached reflected on Lead Counsel's lack of trial skills and therefore did not warrant an

26   enhanced multiplier for Lead Counsel, nor a "risk" multiplier for the late-added firms.  In response

27   to those objections, one of the late-added trial counsel, Mr. Joseph Goldberg of the Freedman

28   Boyd firm, submitted a declaration stating that when he joined the case, he and Lead Counsel

7

1    agreed: "(i) that I would be the lead trial lawyer at trial; (ii) that if I determined there was a need

2    for more experienced resources for the trial, I could bring on the Fine Kaplan and Hulett Harper

3    law firms; and (iii) about the details of the working relationship between Mr. Alioto and myself in

4    the case." Dkt. 4851 at ¶4.

5         In fact, Mr. Goldberg did determine that the two additional firms were needed for purposes

6    of preparing the case for trial, and in the ensuing months, the three late-added trial firms racked up

7    over $3.4 million in combined lodestar, for a total of about $6.37 million after applying the Special

8    Master's proposed multipliers. *See* Dkt. 4976-1. This trial preparation work necessarily

9    duplicated much of the existing work that had been performed by other IPP firms, and reflects the

10   implicit judgment of the late-added trial counsel that the previous work was inadequate. *See* Dkt.

11   4851. Yet the Special Master made no specific adjustments to any firms to account for the gross

12   inefficiency created by having, essentially, two sets of trial preparation teams. Accepting that the

13   late-added three trial firms performed necessary trial preparation work means that at least some

14   amount of the prior trial-preparation work performed by less experienced IPP counsel was not

15   valuable. In this situation, it was error for the Special Master to allocate fees for such non-

16   productive work which did not benefit the class.

17                                         **VI**
18              **INFLATIONARY BILLING PRACTICES SHOULD NOT BE COMPENSATED**

19        The Special Master erred in making allocations among groups of firms where some firms

20   used inflationary billing practices such as quarter-hour billing increments and "block-billing,"

21   while others did not. The Special Master contends that, "Lead Counsel's ten percent across-the-

22   board cut to each attorney's final lodestar was done, in part, to account for these concerns." Dkt.

23   4976 at p. 14.[6] But in order for the Court to properly allocate a gross fee among the many

24   plaintiffs' class counsel, the various lodestar reports by each firm seeking a fee allocation must use

25

26   _____
     [6] In fact, it was the Special Master who applied the across-the-board reduction, not Lead Counsel,
27   and the only reason given for such across-the-board cuts to all counsel, whether they billed in
     quarter hours or tenths, was "… in any case of this length and magnitude there are bound to be
     inefficiencies and wasted time for which it is appropriate to make an across-the-board reduction to
28   the lodestar." *See* Dkt. 4351 at pp. 73 – 74.

1   the same billing standards so that they can be compared equally – *i.e.*, it is improper, and unfair, to

2   permit one firm to request a fee allocation based on quarter-hour billing periods when other firms

3   used the accepted standard of tenths-of-an-hour increments.

4           A review of time records shows that five firms – TATP (largest lodestar), Kirby McInerney

5   (second largest lodestar), Straus & Boies (fourth largest lodestar), Green & Noblin, and Milberg –

6   kept time in quarter-hour increments for the duration of this multi-year litigation.[7]  The effect on

7   the aggregate lodestar of the timekeeping practice employed by these firms is significant.  The

8   cumulative reported lodestar at current rates for these five firms is about $43 million, which is

9   nearly 48% of the total reported IPP lodestar; this amount balloons to $91 million or 57% of the

10  total fees awarded after application of positive multipliers.  Dkt. 4976, Exh. A.

11          Because the use of quarter-hour increments distorts the total reported hours by firms using

12  the practice, district courts have exercised their discretion to implement across-the-board

13  percentage reductions to such firms before making an attorney-fee award.  Thus, in *Welch v.*

14  *Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007), the Ninth Circuit affirmed the

15  district court's 20% across-the-board reduction to the hours reported by a firm utilizing quarter-

16  hour billing increments.  A reduction of 20% across-the-board has been applied by various courts

17  when faced with fee requests that are based on time reports that use quarter-hour increments.  For

18  example, the class action fee award granted in *Rosales v. El Rancho Farms*, No. 1:09-cv-00707,

19  2015 WL 4460635 at *30 (E.D. Cal. July 21, 2015), was based on a lodestar analysis in which the

20  court examined the billing records of each firm requesting compensation.[8]

21          In addition to reductions for quarter-hour billing practices, the Ninth Circuit has ruled that

22  where block billing is rampant – as in many of the time records here – a reduction of between 10%

23

24  _____

[7] For examples of block-billing in quarter-hour increments, see Dkts. 4545-5, 4545-6, 4545-8.

25
[8] *See also Prudential Ins. Co. v. Remington*, No. 2:12-cv-02821 (E.D. Cal. Jan. 24, 2014)

26  (applying 20% reduction for quarter-hour billing increments); *Robinson v. Plourde*, 717 F.Supp.2d
    1092, 1100-01 (D. Haw. 2010) (same).  Even when, unlike here, the use of quarter-hour

27  increments is not "widespread and excessive," the courts still apply a percentage reduction to
    offset the distortion.  *Accord O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 114 F. Supp.3d 819,

28  833 (N.D. Cal. 2015) (applying a 5% reduction on account of quarter-hour billing, "because the
    Court does not find the practice widespread and excessive").

1    and 30% is appropriate.  *See, e.g., Banas v. Volcano Corp.*, 47 F.Supp.3d 957, 968 (N.D. Cal.

2    2014) ("I am reducing Volcano's bill by 20% for block billing."); *Apple, Inc. v. Samsung*

3    *Electronics Co.*, 2012 WL 5451411, at *5 (N.D.Cal. Nov. 7, 2012) ("in light of the evidence that

4    block-billing inflates hours by between 10% and 30%, the court trims 20% from the block-billed

5    hours in Samsung's request"); *Hajro v. U.S. Citizenship & Immigration Servs.*, 900 F.Supp.2d

6    1034, 1053 (N.D. Cal. 2012) ("the court exercises its discretion to reduce the hours for these

7    block-billed entries by twenty percent, the amount noted by the Ninth Circuit as the middle range

8    for time increases that occurs through block-billing").  Many of the firms with the highest lodestars

9    engaged in "block billing" so that it is impossible to ascertain how much time was spent on any

10   given task.  For examples of Lead Counsel's block-billing practices, see Dkts. 4545-5, 4545-6.

11          Thus, it was error for the Special Master to treat all IPP lodestars equally (save for a ten

12   percent across-the-board reduction) when some of those lodestars were inflated by improper

13   billing practices.  The lodestars of firms that used such practices should be reduced by a

14   percentage amount as described in the case law above, and then the recommended multipliers can

15   be applied to those adjusted lodestars.  Otherwise, some firms are receiving "windfall" fees not

16   based on benefit to the Class, but merely because of unreasonable billing practices, all to the

17   detriment of counsel who billed in tenths of an hour and did not block-bill their time entries.

## VII
## FINANCIAL-RISK MULTIPLIER SHOULD NOT BE APPLIED

20          One of the enhancement issues considered by both Mr. Alioto when he suggested certain

21   allocations, as well as by the Special Master when awarding allocated fees, is a so-called "financial

22   risk multiplier" – *i.e.*, awarding a positive multiplier on lodestar because a firm contributed cash to

23   a common-expense fund for purposes of financing the case.  Dkt. 4976, at p. 5:12-23.

24          In this case, very few firms contributed to the common assessment fund, because, as Mr.

25   Alioto has stated, it was financed from two settlements – Chunghwa and LG – so that assessments

26   were not needed from plaintiffs' counsel.  Thus, Mr. Alioto used class-member funds – from class

27   member settlements – to finance the case – thereby putting the class members – and not the

28   plaintiffs' lawyers, at risk of losing over $7.5 Million if the case failed.

1       Realizing this problem, after this case was settled and after the trial date was vacated,

2   TATP then contributed $1,000,000 to the assessment fund when there was no chance that amount

3   would not get repaid.  *See* Dkt. 4960, p. 3.  Significantly, when asked about these curious

4   payments, Mr. Alioto claimed this amount was needed for trial preparation (Scarpulla Decl., ¶ 5

5   (d), Exh. 4, at pp. 36:25-39:4), but the trial had been vacated a week before the TATP payment and

6   at a time when there was a surplus in both assessment accounts.[9]  Dkt. No. 4071-1, pp. 46:1-48:11.

7       In any event, no financial risk multiplier should be applied to any firms who either failed to

8   pay assessments or who paid them after any risk of non-repayment was completely over.

9

10                                 **VIII**
                           **CONCLUSION**

11

12       For all of the foregoing reasons, the Court should modify the lodestars and multipliers as

13   described above before making any allocation to the IPP firms.

14   Dated: November 11, 2016            Respectfully submitted,

15

16                     _/s/  Francis O. Scarpulla_____
                       Francis O. Scarpulla

17                   Francis O. Scarpulla (41059)
                   Patrick B. Clayton (240191)

18                   LAW OFFICES OF FRANCIS O. SCARPULLA
                   456 Montgomery Street, 17th Floor

19                   San Francisco, CA 94104
                   Telephone: 415-788-7210

20                   Facsimile:  415-788-0706
                   fos@scarpullalaw.com

21                   pbc@scarpullalaw.com

22                   Counsel for Indirect-Purchaser Plaintiffs

23

24

25

26   [9] It also appears that there was a surplus in the combined common expense funds.  *See* Dkts. 4071-

27   1, at 46:1-48:15, and 4960.  Lead Counsel was permitted to draw up to $7.5 million from the
   Chunghwa and LG settlement to pay future common costs, of which Lead Counsel took $6.25

28   million (*see* Dkts. 1334 and 3524), but paid out only about $4.5 million, leaving what appears to
   be a surplus of $1.75 million in the future expense fund.

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing OBJECTIONS TO SPECIAL MASTER'S REPORT & RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES was filed *via* CM/ECF on November 11, 2016 and as a result has been served on all counsel of record *via* transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Francis O. Scarpulla
Francis O. Scarpulla