EXHIBIT 4

1                  UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3

4     IN RE: CATHODE RAY TUBE (CRT) ,

      ANTITRUST LITIGATION                 Master File No.

5                                          CV-07-5944 SC

6                                          MDL No. 1917

7

8         _____

9

10        HEARING BEFORE SPECIAL MASTER MARTIN QUINN, JAMS

11               San Francisco, California

12                    October 3, 2016

13                 3:28 P.M. - 4:27 P.M.

14

15

16    Reported by:

      KENNETH T. BRILL

17    CSR NO. 12797

18

19    Job No. 2455107-B

20

21

22

23

24

25    PAGES 1 - 49

                                               Page 1

```
 1    A P P E A R A N C E S :

 2

 3    For the Indirect Purchaser Plaintiffs:

 4

 5         TRUMP, ALIOTO, TRUMP & PRESCOTT

 6         BY:   MARIO ALIOTO, ESQUIRE

 7               LAUREN CLARE CAPURRO, ESQUIRE

 8         2280 Union Street

 9         San Francisco, CA 94123

10         (415) 563-7200

11         jmalioto@aliotolaw.com

12         laurenrussell@tatp.com

13

14

15         via telephone:

16         BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER

17         BY:   DANIEL E. BIRKHAEUSER, ESQUIRE

18         2125 Oak Grove Road, Suite 120

19         Walnut Creek, CA 94598

20         (925) 945-0200

21         dbirkhaeuser@bramsonplutzik.com

22

23

24

25
```

                                                    Page 2

```
 1    A P P E A R A N C E S: (continued)

 2

 3

 4        LAW OFFICES OF FRANCIS O. SCARPULLA

 5        BY:   FRANCIS O. SCARPULLA, ESQUIRE

 6              PATRICK B. CLAYTON, ESQUIRE

 7        456 Montgomery Street, 17th Floor

 8        San Francisco, CA  94104

 9        (415) 693-0700

10        fos@scarpullalaw.com

11        pbc@scarpullalaw.com

12

13

14        via telephone:

15        LAW OFFICES OF THERESA D. MOORE

16        BY:   THERESA D. MOORE, ESQUIRE

17        One Sansome Street, 35th Floor

18        San Francisco, CA  94104

19        (415) 434-8900

20        tmoore@aliotolaw.com

21

22

23

24

25
```

Page 3

```
1    A P P E A R A N C E S: (continued)

2

3         via telephone:

4         STRAUS & BOIES, LLP

5         BY:  NATHAN CIHLAR, ESQUIRE

6               TIMOTHY BATTIN, ESQUIRE

7         4041 University Drive, Fifth Floor

8         Fairfax, VA  22030

9         (703) 764-8700

10        tbattin@straus-boies.com

11

12

13

14

15        KAG LAW GROUP

16        BY: SYLVIE K. KERN, ESQUIRE

17        2532 Lake Street

18        San Francisco, CA 94121

19        (415) 221-5763

20        sylviekern@yahoo.com

21

22

23

24

25
```

Page 4

```
 1    A P P E A R A N C E S: (continued)

 2

 3

 4        KIRBY MCINERNEY LLP

 5        BY:  ROBERT J. GRALEWSKI, JR., ESQUIRE

 6        600 B Street, Suite 1900

 7        San Diego, CA  92101

 8        (212) 371-6600

 9        bgralewski@kmllp.com

10

11

12

13        ZELLE HOFMANN VOELBEL & MASON LLP

14        BY:  CHRISTOPHER T. MICHELETTI, ESQUIRE

15        44 Montgomery Street, Suite 3400

16        San Francisco, CA  94104

17        (215) 567-6565

18        cmicheletti@zelle.com

19

20

21

22

23

24

25
```

Page 5

```
 1    A P P E A R A N C E S: (continued)

 2

 3         via telephone:

 4         FREEDMAN BOYD HOLLANDER GOLDBERG URIAS & WARD P.A.

 5         BY:   JOSEPH GOLDBERG, ESQUIRE

 6         20 First Plaza N.W., Suite 700

 7         Albuquerque, NM 87102

 8         (505) 244-7520

 9         JG@FBDLAW.com

10

11

12

13         via telephone:

14         HULETT HARPER STEWART LLP

15         BY:   DENNIS STEWART, ESQUIRE

16         550 West C Street, Suite 1500

17         San Diego, CA  92101

18         (619) 338-1133

19         dennis@hulettharper.com

20

21

22

23

24

25
```

Page 6

```
1    A P P E A R A N C E S: (continued)

2

3

4         via telephone:

5         COOPER & KIRKHAM

6         BY:  JOSEF D. COOPER, ESQUIRE

7         357 Tehama Street, 2nd Floor

8         San Francisco, CA  94103

9         (415) 788-3030

10        jdc@coopkirk.com

11

12

13

14        via telephone:

15        FINE, KAPLAN AND BLACK, R.P.C.

16        BY:  GERARD A. DEVER, ESQUIRE

17        One S. Broad Street, 23rd Floor

18        Philadelphia, PA  19107

19        (215) 567-6565

20        gdever@finekaplan.com

21

22

23

24

25
```

Page 7

1    A P P E A R A N C E S: (continued)

2

3        via telephone:

4        MILBERG LLP

5        BY:   ELIZABETH MCKENNA, ESQUIRE

6        One Kennedy Square

7        777 Woodward Avenue, Suite 890

8        Detroit, MI 48226

9        (212) 631-8605

10       emckenna@milberg.com

11

12

13   Also Present:   Marlo Cohen, via telephone

14

15

16

17

18

19

20

21

22

23

24

25

Page 8

```
 1            San Francisco, California, Monday October 3, 2016

 2                             3:28 p.m.

 3                             - - -

 4            THE COURT:  Okay.  Can we start getting the

 5    names of the people who are on the telephone, please, if

 6    you could give me your names slowly, that would be

 7    great.

 8            MR. BIRKHAEUSER:  Good afternoon, Your Honor,

 9    Dan Birkhauser, Bramson, Plutzik, Mahler & Birkhauser.

10            MS. COHEN:  This is Marlo Cohen here.

11            MR. STEWART:  Good afternoon, this is Dennis

12    Stewart.

13            MR. DEVER:  Good afternoon, this is Gerry

14    Dever.

15            THE COURT:  From what firm?

16            MR. DEVER:  From Fine, Kaplan and Black.

17            THE COURT:  Okay.  Thanks.

18            MR. BATTIN:  Good afternoon, Your Honor, this

19    is Tim Battin of Straus & Boeis with Nate Cihlar of

20    Straus & Boeis as well.

21            MR. GOLDBERG:  Good afternoon, Mr. Quinn.

22    This is Joe Goldberg in Albuquerque, New Mexico.

23            MS. McKENNA:  Good afternoon, this is Liz

24    McKenna from Millberg, LLP.

25            THE COURT:  Okay.  Anyone else?  All right.
```

Page 9

1    Good.  Well, welcome, everybody, we'll start the

2    hearing -- oops, who just joined?

3              MS. MOORE:  Theresa Moore.

4              MR. COOPER:  Josef Cooper.

5              THE COURT:  All right.  Now we'll start the

6    hearing.

7              On Mr. Alioto's allocation, I guess, do you

8    want to make some opening comments?

9              MR. ALIOTO:  Yes, please, if Your Honor

10   please.  We have a fairly substantial record in this

11   matter, and in light of that substantial record, I think

12   I can be pretty brief on what we did.  I'd just like to

13   highlight a few things and I would like to draw your

14   attention to our -- what we call the master declaration

15   or the main declaration which we filed in support of the

16   original motion for attorneys' fees.  That bears --

17             THE COURT:  Back in 2015?

18             MR. ALIOTO:  Yes, sir, yes.  And that bears

19   docket number 4071-1.  And what we did in there, Special

20   Master, was give a summary of the case, start to finish.

21   Unfortunately, we're not finished, but from start to

22   around the time of preliminary approval, summarizing the

23   case and our involvement in it, and looking over the --

24   the declaration, I don't think we blew our horn as much

25   as we could have, and I'm afraid as a result of that

Page 10

1    maybe the full scope of this case and what was involved

2    and what we did didn't come across to the district

3    court.

4            We -- that's -- I have nobody to blame for

5    that but myself, but I still think that this declaration

6    is the best indication of what was done here over the

7    past eight years.

8            It sets forth the major developments in the

9    case, and let's be perfectly clear about our

10   involvement.  We were involved in every single thing in

11   this case from start to finish.

12           We're still involved.  We're still leading the

13   support of the settlements.  We're still in charge of

14   handling the fees.  The case is still going on.  There's

15   been a mass of filings in the wake of preliminary

16   approval.  The case is still going ahead, full speed

17   ahead.

18           We have 14 appeals in the Ninth Circuit.

19   There is going to be further motion practice.  There is

20   going to be briefing.  There is going to be further --

21   going to be further work on -- on settlements.  As you

22   know, we have that Chunghwa settlement that's on a

23   little different track.

24           The work goes on.  And my office is doing it.

25   Leading it and doing it.  That's what we've been doing

Veritext Legal Solutions
866 299-5127

1    for the past eight years, certainly not all by ourselves

2    because these cases, as lead counsel, you're tasked with

3    getting the best people to do specific jobs and that's

4    what we've done.

5              And you -- you sit here and you get criticized

6    for bringing people into the case.  It's characterized

7    as subcontracting things out, or sloughing things off.

8    It's bringing the best possible people into the case to

9    get the best possible result.  That's what we've done

10   and continue to do.

11             This declaration, docket 4071, will show you

12   our complete involvement.  And if there is any doubt,

13   because in going over the -- the declaration in detail,

14   sometimes when we're describing activities I don't make

15   the -- the extra statement, and we were doing it, but I

16   am telling you right now on this record, everything that

17   is described in that declaration my office was doing,

18   either myself, Ms. Capurro, Mr. Patane, or contract

19   people that we utilized to work on this case, from day

20   one until the time of preliminary approval.

21             Let me also say that this case -- and I'm not

22   going to bore you, you hear this all the time with the

23   difficulty of the case and how -- how hard we worked,

24   well, yes it was difficult and yes, we did work very

25   hard on it and got an excellent result.  It's all in

Page 12

1    here.

2            But this case is not one case.  It's 20 cases.

3    And I don't think anyone who hasn't really been in the

4    trenches in one of these cases understands what that

5    means.  And I'm afraid I didn't convey that impression

6    to Judge Tigar, maybe I did and maybe I didn't, but let

7    me try and be very brief and give you some sense of what

8    I mean by 20 cases.

9            It's a indirect purchaser class action

10   involving multi -- many states and many claims.  Very

11   significant piece of litigation in itself.  It's a

12   direct purchaser class action, very substantial piece of

13   litigation in itself.

14           It involved 13 direct action cases by very

15   substantial corporate plaintiffs, resellers, retailers,

16   people up the chain purchasing and selling tubes, 13

17   indirect -- 13 direct action plaintiffs.

18           It involved at its height, five state actions

19   by attorneys general, and I've dealt with all of these

20   people.  You'll hear as part of these proceedings these

21   arguments about the California attorney general, well,

22   that's -- that was -- that's the half of it.  I also

23   dealt with the attorneys general for State of Illinois,

24   Washington, Oregon -- just got off the telephone with

25   the attorney general for the State of Oregon Friday, as

Page 13

1  a matter of fact.  State of Florida, they had an action
2  at one time.  And -- and one other, five AG actions, two
3  major class actions, 13 direct actions, that's 20
4  actions in one proceeding.

5          Let me give you an example of what that means
6  when you have 20 actions in one case.  That means when
7  there are expert reports, which I was very heavily
8  involved in, especially the damages reports, time spent
9  on that, I can't begin to tell you what was involved in
10 that, especially on the expert -- the damage work.

11         There were 17 designated experts, four reports
12 per expert.  By my count that's 68 expert reports.  And
13 you don't have the luxury of looking at your expert and
14 seeing what your expert's doing and preparing your
15 expert; you have to have an understanding of what's
16 going on out there with all of the experts.  Because
17 they're opining on the overcharge.  The overcharge at
18 the top level, that's common to all the cases.  And it's
19 very important that those experts are doing the same
20 thing and analyzing the same data so you don't come out
21 with experts arriving at 10 percent overcharges and
22 experts arriving at 30 percent overcharges.  You need to
23 get people on the same page.  I did that.  And it is not
24 an easy task to do that with 20 separate actions.

25         That's an example of what I mean by this is

Page 14

1   not a normal case.  It's 20 cases.  And the same can be
2   said for everything in this declaration I filed.  When
3   you talk about setting up merit depositions there are
4   20 --
5               THE COURT:  May I make a suggestion?
6               MR. ALIOTO:  Yes.
7               THE COURT:  We have limited time and, you
8   know, I have limited general awareness of how complex
9   these cases are.  Be sure you focus on some of the
10  criticisms that people have made about your allocation.
11              MR. ALIOTO:  I was going to wait to hear the
12  criticisms and then focus on them, Your Honor.  I think
13  that -- I would rather proceed that way.
14              THE COURT:  Well --
15              MR. ALIOTO:  If you don't mind because, for
16  the most part, they're handled in the briefs, and I'd
17  just like to conclude this part on --
18              THE COURT:  All right.
19              MR. ALIOTO:  -- the work.  And again, because
20  there has been some suggestion even in some of the
21  orders that we got a good result because there was a lot
22  of damage involved, we got a good result because there's
23  a lot of sales and a lot of commerce involved.
24              I don't think that's fair to say.  I really
25  don't think that's fair to say.  If you look at this

Page 15

1    declaration, it will give you an idea, the fact

2    questions, the law questions, the amount of time and the

3    risk.  And we were involved in every aspect of it, even

4    though I've neglected to say, we did this, we did that,

5    every other thing, every single one of the aspects of

6    the case we were involved, led it, oversaw it and were

7    hands-on, sleeves rolled up on it.  That's all I want to

8    say as far as our affirmative work.

9            Secondly, on our allocation, how did we arrive

10   at the number we arrived at, the two-nine multiplier?

11   Well, we certainly didn't arrive at that or pull it out

12   of the air or say we needed that or say that's what

13   we're going to have.

14           How we arrived at that was we worked with all

15   of the firms in the case to arrive at what we thought

16   were fair numbers for them and we got feedback from

17   these firms as to what they thought were fair numbers

18   for us.  And as part of that process, our number, our

19   multiplier number moved -- moved down in order to get an

20   allocation of this fee that we thought my dream or my

21   goal was to get 100 percent approval.

22           I put to one side the objectors, I don't count

23   them as part of this effort.  This is -- I'm talking

24   about the people who were in the case and who are

25   pushing to get this case approved.  And we did -- as I

Page 16

1   explained earlier this morning my methodology to try and

2   get an agreement on this allocation, and I think it is

3   very telling and we -- we moved people, we moved people

4   around and we moved ourselves.

5           And I think it is very telling, Your Honor,

6   that after this process of the firms that are pushing to

7   get this settlement done, we have one firm,

8   Mr. Gralewski's firm, that has criticized, challenged

9   our allocation.  One firm out of 150.

10          Now, again, putting to one side the objectors,

11  but again, I don't view them as part of this effort,

12  they're on a separate track, they have a separate

13  agenda.  They are not -- they're not pushing for

14  settlement, they're pushing for other things.  But I

15  think that that speaks pretty highly of not only our

16  efforts in the case, but our efforts in doing this

17  allocation to try and get a equitable result.

18          Now, I'll be the first --

19          THE COURT:  Don't we have the McCullum

20  Hoagland firm, the Glancy Prongay firm and the Terrell

21  McCallum firm that have filed objections as well, and

22  aren't they part of your cooperative group?

23          MR. ALIOTO:  Well, are they -- the point I'm

24  trying to make is there are people out there -- and let

25  me say this, there are also people in the group that

Page 17

1    feel they should have been higher.  And let me just say
2    a word about them.  Let me kind of commend them because,
3    as I said, as we gave -- as we gave ground, as we came
4    down in our amounts, other firms came down in their
5    amounts because they put the objective of getting this
6    done above the objective of getting every last dollar.
7    And there are a number of firms in there that did that.
8    They're not necessarily happy, but they -- but they came
9    to a result to get this done.

10              Now, yes, there are other objectors, but
11   they're not so much in the objection of lead counsel is
12   getting too much; they're more along the line of I
13   should be bumped.

14              THE COURT:  I see.

15              MR. ALIOTO:  Or he didn't do a good job with
16   me.  The only real people that are taking on lead
17   counsel are the objector group and Mr. Gralewski.

18              I don't think I could really add to that, Your
19   Honor, and I don't want to say they -- they're happy
20   about it, or they're glowingly recommending it because
21   they feel they should have had more, a lot of these
22   firms.

23              The -- the aggregate award, you know, the
24   history of the -- of the award, and people didn't come
25   out where they felt they should have come out and where

                                              Page 18

1    we thought we had a strong argument under the facts and

2    the law where they -- where they should have been, they

3    didn't reach it.  But they have moved on.  They've taken

4    their awards and they want to get it done.  And I think

5    you have to commend these people for doing that and

6    trying to get it done.

7            And as I say, it also reflects, I -- I

8    respectfully submit, it reflects very well on the job

9    that lead counsel did in the underlying case and in the

10   allocation.  That's all I'd like to say for my opening,

11   Your Honor, thank you.

12           THE COURT:  Okay.  Let's go around the table.

13   Mr. Micheletti, anything to add?

14           MR. MICHELETTI:  No.

15           THE COURT:  Mr. Gralewski, anything beyond

16   what you've already said in your own hearing?

17           MR. GRALWESKI:  Just one comment, Your Honor.

18   You know, to be clear, Kirby believes lead counsel

19   should have a higher multiplier than anyone else because

20   of the superior management and skill that they did bring

21   to the case, just not a multiplier that results in

22   29 percent of the fee for 16 percent of the work.

23           You look at some of the other core firms like

24   Kirby and Straus & Bois, and we are at 10 to 12 percent

25   of the fee for 10 to 12 percent of the work.  And really

Page 19

1       the objection centers on that.  We're not disputing the

2       fact that -- that lead counsel did an exceptional job

3       with the case, just the -- those numbers are out of

4       whack.

5                   THE COURT:  Okay.  Mr. Scarpulla?

6                   MR. SCARPULLA:  Yes, Your Honor.

7                   Your Honor, I've said most of it in our

8       papers.  I'll make just a couple of observations here.

9       Mr. Alioto claims that his firm was involved in

10      everything.  All the firms in this case were involved in

11      everything.  Let's not kid each other about that.  The

12      people who did the work in this case did the substantive

13      work, the antitrust lawyers who did the substantive work

14      were at Zelle, were at Kirby McInerney, were at Straus &

15      Bois and other firms, and those were the people who did

16      the work across the boards.

17                  So I'm not talking about a firm that did a

18      specific assignment.  I'm talking about firms that had

19      responsibility across the boards.  Those are the three

20      firms that ought to get the highest multiples.

21                  THE COURT:  Are you saying that the Trump

22      Alioto folks did not -- were not involved in almost all

23      the work and management?

24                  MR. SCARPULLA:  They were not.

25                  THE COURT:  Do you want to --

Page 20

1              MR. SCARPULLA:  I don't think they took any

2    depositions.  I don't think they argued any significant

3    motions.  I don't think they did any significant

4    pleading -- producing pleadings.  I think those were

5    other firms.

6              The expert witness stuff was done by Chris

7    Micheletti who's sitting here, and Craig Corbitt at

8    Zelle.  That's who -- they were responsible for that.

9              Most of the firms -- I've looked at

10   Mr. Alioto's time sheets and I have to tell you

11   something, and I've looked at Ms. Capurro's time sheets,

12   they're all blocked billed, they're all 20.25 hours, and

13   you can't tell what any of them did on any specific task

14   because it's not separated out.

15             And if you look at them, for example, let me

16   just give you an example here, on January 17th, 2014,

17   Mr. Alioto is charging the class at about $800 an hour

18   to organize files.  Now that's not something that a lead

19   counsel does; they don't organize files.  They have

20   2,161 hours of meetings, attorney meetings, and most of

21   them are with themselves.

22             You go through their time sheets and you'll

23   see that Mr. Alioto talks to Mr. Patane, Mr. Patane,

24   talks to Ms. Capurro and Ms. Capurro talks to Mario

25   Alioto.  That's not something that should be rewarded,

Page 21

1   Your Honor.  What gets rewarded is people who do
2   substantive work, like taking the key depositions, like
3   arguing the class motion.  Mr. Micheletti and Ms. Zahid
4   argued that right here in this room in front of Your
5   Honor.  Mr. Alioto didn't argue that case.  They didn't
6   argue any of the Summary Judgment motions.  They didn't
7   argue them.  They filed pieces of paper but I don't
8   think any of those end-of-the-case summary judgment
9   motions actually were heard.  I just don't remember them
10  being heard.
11          And I don't think the motions in limine were
12  ever argued in front of the judge.  I don't think so.
13  If they were, I -- I wasn't -- I didn't go to them
14  because I didn't know about them.
15          So when you -- if you look at the time sheets,
16  and that's what I respectfully suggest you -- somebody
17  needs to do, whether it's Your Honor or whether you hire
18  somebody to do it, but if you'll look at Judge Wilkins'
19  decision in the -- in Keller against National Collegiate
20  Athletic Association, she goes through the entire method
21  for allocating fees in a case where she has already
22  awarded a gross percentage of the fund fee.  And she
23  looks at everybody's time sheets.
24          THE COURT:  Do you have a cite for that, just
25  to make my life easier?

Page 22

1          MR. SCARPULLA:  I only have a Westlaw cite,

2     I'm sorry.

3          THE COURT:  That will do.

4          MR. SCARPULLA:  2015 Westlaw 8916392.

5          THE COURT:  Great.

6          MR. SCARPULLA:  It is an exhaustive opinion

7     about allocating fees and what is excessive time and

8     what isn't.

9          Do you know in this case, Your Honor, there

10    were 72,000 hours spent reviewing documents.  72,000

11    hours total.  If you're going to charge that at anywhere

12    near 350 to $400 an hour, with a multiple, you're

13    talking about 30 to $40 million being paid for looking

14    at documents.

15         I mean, the idea that people are doing that

16    anymore is beyond me.  You put these things in a

17    software system, it gives you -- you know, it will give

18    you documents where you can -- where you can search for

19    specific words and you can do it in multiple languages.

20    It's not like you have to have somebody translating the

21    document, all the documents.  You pick out the ones you

22    think are important and you have those translated.  And

23    you can get these things translated for $35 at a regular

24    old translating organization instead of paying some

25    lawyer $450 an hour to translate a Japanese document.

Page 23

1          And anyway, let me just say something about

2     the attorneys general in Illinois, Washington, and

3     Oregon.  I dealt with them in LCDs and we worked out a

4     deal for them in LCDs.

5          When they popped up in this case, Mr. Alioto

6     called me up and asked me what I did with them in LCDs,

7     and how to handle it, and I told him and that's when he

8     did, and now he's claiming he knows how to handle the

9     AGs.

10         I think, Your Honor, that there is an audit

11    report that some folks did in this case on the

12    allocation of the fees.  I believe there to be such a

13    document and I would respectfully request that that be

14    made part of the record because that will tell Your

15    Honor what was initially suggested and what, if

16    anything, was changed there.

17         And then there is also the question of whether

18    there was an agreement with Mr. Alioto and Zelle where

19    Zelle would act as essentially a colead counsel with

20    Mr. Alioto.  That's relevant in this proceeding for

21    allocating fees for the following reasons:  If in fact

22    it is correct that Mr. Alioto had to have Zelle do the

23    work of a lead counsel, then his firm should not be

24    compensated with a multiple that is only for lead

25    counsel work, that's number one.

1           Number two, it also is important because if
2   that is going to be applied, if it is enforceable, which
3   I believe it may be, then it affects -- then it affects
4   the Zelle time and it certainly affects my time because
5   I get the same multiple.

6           And so, therefore, that document, it's a
7   series of e-mails, I understand, ought to be made part
8   of the record so that if there is any -- if we have to
9   talk about it in front of Judge Tigar, he's -- it's in
10  the record.  And if it goes up on appeal to the Ninth
11  Circuit, it's in the record.

12          THE COURT:  What about that, Mr. Alioto, while
13  we're just pausing on that point, you know, given my
14  desire to not hide the ball here, I know we haven't
15  looked at that other report up to now, is it about time
16  we did?

17          MR. ALIOTO:  I'm sorry, Your Honor, there was
18  an audit report on expenses which is in the record.

19          THE COURT:  No, I thought there was an audit
20  committee that you put together of various counsel who
21  looked at the time records of the different firms and
22  made some adjustments or judgments.

23          MR. ALIOTO:  Yes, there's -- there's no report
24  as such.  What happened was we set up a criteria for
25  review of time records, and the half a dozen firms or

Page 25

1   so, we split up all of the firms, and about six or seven

2   firms reviewed all of these time records.

3           I -- it was a -- kind of a one-on-one with the

4   various firms and there was no formal audit report and

5   it was some negotiation and some back and forth and

6   working on it.  I think that's what Mr. Scarpulla is

7   talking about.

8           But in terms of a report or an audit report,

9   there was nothing.  There were just changes in the

10   lodestar, reductions in the lodestar which we then

11   submitted to the court.

12           THE COURT:  Okay.  Well, the Court is not

13   interested in looking at a lot of handwritten scraps of

14   paper with notes of a telephone conversation with this

15   firm or that firm, but was there anything beyond that,

16   any minutes of meetings, any compilations, any, you

17   know, arithmetic calculations, anything that would give

18   us some insight into that?  Ms. Capurro wants your

19   attention.

20           MR. ALIOTO:  No, it would be more in the

21   nature of worksheets and work-up and interlineations and

22   correspondence from the firm handling another firm.  It

23   was fairly fragmented.  It wasn't in the nature of a

24   formal audit like the expense audit.  That was formal.

25   And that -- that's been submitted, if that answers your

Page 26

1    question.

2              THE COURT:  Is there a file in your firm that

3    if I were to request, you know, give me all papers

4    relating to the audit of fees -- I'm not doing that, but

5    if I were to do that, could you walk in and grab a file

6    and hand it to me, fragmented though it may be?

7              MR. ALIOTO:  I don't know that I could, but I

8    could certainly find that out when we adjourn here

9    today, I could certainly get an answer to that question

10   for you.

11             THE COURT:  I only want things that are going

12   to be helpful to the Court.  And, you know, these

13   adjustments have been made, the fee has been approved.

14   We are where we are and we don't need to create more

15   problems, but I -- I would be curious what form these

16   documents are in.

17             MR. ALIOTO:  Okay.  We can certainly get that

18   to you.

19             THE COURT:  Okay.  Go ahead, Mr. Scarpulla.

20             MR. SCARPULLA:  Yes, Your Honor.

21             Your Honor, I understand that maybe

22   Mr. Micheletti has a copy of that audit report, so if

23   it's been circulated to people other than, you know,

24   yours truly, then I'd like to see it, make it part of

25   the record.  Anyway --

Page 27

1          THE COURT:  Well, do you have it?

2          MR. SCARPULLA:  I don't have it.

3          THE COURT:  Oh.

4          MR. SCARPULLA:  I only have an e-mail from

5    Craig Corbitt that tells me that Mario and Chris

6    Micheletti have it.

7          THE COURT:  Mr. Micheletti, do you have a copy

8    of this elusive audit report?

9          MR. MICHELETTI:  I do not.

10         THE COURT:  All right.  Go ahead,

11   Mr. Scarpulla, next point.

12         MR. SCARPULLA:  And then, you know, the

13   agreement, the original agreement independent -- there

14   are two or three or four maybe e-mails early on where

15   they agreed that apparently Zelle would be a colead.

16   And then if that's the case, the fact that Mr. Alioto

17   didn't assign work to people at Zelle doesn't matter

18   because Zelle had the authority to do that.  I'd like

19   that in the record.

20         THE COURT:  I'm going to inquire about that,

21   but I want you to get your points in.

22         MR. SCARPULLA:  Okay.  All right.  The other

23   thing that Mr. -- that nobody, I don't think, from

24   Mr. Alioto's firm has sworn -- and this is in a number

25   of cases, Your Honor -- that nobody said that the hourly

1    rate that is being charged to the class and therefore

2    part of the allocation is the normal hourly rates that

3    they charge their per diem clients.

4            THE COURT:  Actually, Mr. Goldberg did say

5    that.

6            MR. SCARPULLA:  Mr. Goldberg did, but he's the

7    only one that I know of.  So that's something that Judge

8    Wilkin thought was of importance in an allocation.

9            THE COURT:  Well, I'd have to go back and look

10   at those 2015 declarations, I'll just leave it at that.

11   I think that's a fair point and I need to look at those

12   2015 declarations.

13           MR. SCARPULLA:  The other thing that

14   Mr. Alioto -- with the time records were in his original

15   declaration, not only was there 2,000 hours with

16   meetings among him and a group of lawyers primarily in

17   his own firm, but they have 8,800 hours of reviewing

18   documents.  There are three lawyers in that firm.  8,800

19   hours.

20           They have 1,500 hours of reviewing expert work

21   and I believe that Mr. Micheletti and Mr. Corbitt at

22   Zelle did most of the expert work.  And speaking of the

23   expert, did you know, Janet Ness (ph), she was our

24   expert.  When we got close to trial, she was owed

25   approximately $800,000.

Veritext Legal Solutions
866 299-5127

1           I kept telling Mr. Alioto that he had to get

2  her paid, to send out assessments and get this woman

3  paid, because you can't let her get up on a stand when

4  she's owed money because then she's got an interest in

5  it. And it took me forever to get her paid, and I

6  finally had to keep -- I finally had to tell -- you

7  know, Mr. Corbitt and I were beside ourselves, because

8  we knew what the problem -- what would happen if she

9  didn't get paid and had to get on stand and testify and

10  somebody asked her that question.

11           Now, they have -- Trump Alioto has 6,500 hours

12  of motions and pleadings -- I'm sorry, I don't know --

13  my recollection is that the class motion was done by

14  Chris Micheletti and Judith Zahid and people at the

15  Zelle firm.

16           I know I looked it over and -- as it was going

17  along and Craig Corbitt may have too, but I think the

18  heavy lifting was done by them, maybe with help from --

19  I don't know whether Kirby McInerney was involved in

20  that, or whether Straus & Bois were, but certainly Zelle

21  was the one who did that.

22           Then the other thing we have here, Mr. Alioto

23  has 1,800 hours in settlement discussions. I firmly

24  believe that a very substantial portion of that has

25  nothing to do with settlement. It has to do with

Page 30

1  fighting with the AG.  That's not settlement.  It's

2  different.

3           THE COURT:  Your point, I think, if I get it

4  correctly, is that the -- the Alioto firm was lead

5  counsel, but didn't do any of the really important

6  substantive work on the case; and number two, has

7  charged a bunch of hours for work that you would

8  characterize as, you know, not the really significant

9  work --

10           MR. SCARPULLA:  Administerial things.

11           THE COURT:  -- that moved the case along.

12           MR. SCARPULLA:  Right.

13           THE COURT:  So did you in your objection --

14  I'm sorry, because I haven't focused on your objections

15  since we're not hearing it until Wednesday, did you

16  propose a revised allocation?

17           MR. SCARPULLA:  I did, Your Honor.

18           THE COURT:  Okay.  It thought you had.  Al

19  right.

20           MR. SCARPULLA:  It's Exhibit 3.

21           THE COURT:  All right.

22           MR. SCARPULLA:  I have nothing else, Your

23  Honor, unless you have questions of me.

24           THE COURT:  Well, I do have a question about

25  this alleged agreement between your firm, Mr. Alioto and

Page 31

1   the Zelle firm by which Zelle would act as colead

2   counsel, if not in name, at least in fact.  What is

3   there to that?

4           MR. ALIOTO:  Well, as Your Honor may recall,

5   early on in these proceedings you asked for fee sharing

6   agreements.  Some fee sharing agreements were submitted

7   to Your Honor.  And those are all that I am aware of.  I

8   don't have any agreement.  I think there were a couple

9   of agreements submitted to you, but I certainly don't

10  have any agreement like that.  I'll -- so that -- I hope

11  that responds to that question.

12          THE COURT:  So you have no agreement with the

13  Zelle firm that for some bizarre reason they will act as

14  colead counsel even though they're not called colead

15  counsel?

16          MR. ALIOTO:  That's right.

17          MR. SCARPULLA:  Your Honor, if I may, again,

18  Mr. Corbitt told me that he's got -- that he has those

19  documents and that he turned them over to Mr. Micheletti

20  and Ms. Zahid just recently.

21          THE COURT:  Mr. Micheletti, if this isn't

22  revealing any attorney-client or anything like that, is

23  there anything to this allegation of Mr. Scarpulla's?

24          MR. MICHELETTI:  No, there's not.  I agree

25  with Mr. Alioto's characterization in the record and

Page 32

1    there is no agreement.

2              THE COURT:  Did Mr. Corbitt recently hand you

3    some hot documents?

4              MR. MICHELETTI:  No.  I had no discussions

5    with Mr. Corbitt about this case for some time.

6              THE COURT:  He's still with the Zelle firm?

7              MR. MICHELETTI:  Yes.

8              MR. SCARPULLA:  Well, then, I'm going to ask

9    Mr. Corbitt, if you don't mind, to show up when it's my

10   turn.

11             THE COURT:  All right.  Let's get to the

12   bottom of it.  I'll -- actually, Mr. Corbitt is entitled

13   to speak because the Zelle firm put in a written

14   objection -- or a written response.

15             MR. SCARPULLA:  Right.

16             THE COURT:  All right.  Anything further,

17   Mr. Alioto?

18             MR. ALIOTO:  Just, I'll say this.

19   Mr. Scarpulla, we have some issues with Mr. Scarpulla,

20   and he obviously has an agenda here.  And let me do

21   this, I'll deny every -- almost every point he made.

22   They're not in the papers.

23             Your Honor may recall on class certification I

24   was sitting in this chair and you were sitting right

25   there and before that when Judge Legg was the special

1   master, Judge Legg was sitting right there and I was
2   sitting right here on all of the motions and I've
3   continued to argue motions in front of Judge Walker, and
4   been present at mediation sessions with Fern Smith,
5   argued in front of Judge Conti. So when Mr. Scarpulla
6   makes those kinds of claims, he just isn't well
7   informed. I won't go any further than that. Let's say
8   he isn't well informed.
9           And if you look at the time that my firm
10  devoted to this case and compare it to what was done in
11  the LCD case, which is in the record, we attached Your
12  Honor's allocation in the LCD case to our papers.
13          THE COURT: Brought back memories.
14          MR. ALIOTO: Yes, okay. This case was handled
15  in my view much more efficiently because there was only
16  one lead counsel. There weren't all those issues where
17  you have different lead counsels and different factions.
18  The time spent here was much, much more efficient than
19  in LCD.
20          And these other comments that Mr. Scarpulla
21  raises, I mean, he's just pulling things out of thin
22  air, really, to see what will stick, throwing things on
23  the wall. That's been happening over the course of
24  these proceedings, maybe over the last two years.
25  Accusations, you didn't put the -- you said somebody

Page 34

1    contributed to the fund, he didn't contribute to the

2    fund.  The next thing I have to do is go dig up the

3    authorization for that.  Of course he did it.  I put it

4    in a sworn declaration.

5              I think we need Mr. Scarpulla to substantiate

6    a lot of these statements first before raising them and

7    causing people to do a lot of work.  I think we're at

8    that stage of these proceedings that you really, instead

9    of just coming in here and making statements that I

10   haven't been at hearings or that so many hours were

11   spent on document review, which is completely reasonable

12   when you compare it to LCD, making accusations about

13   secret deals on fee sharing, before he really makes

14   those kinds of accusations, and you'll note that many of

15   these accusations here aren't really in the papers, they

16   just kind of sprung at this hearing today.

17             To go back on to my affirmative case here,

18   Special Master, just let the record reflect that all of

19   those indications by Mr. Scarpulla, me talking to

20   Mr. Scarpulla to get advice how to deal with the AGs,

21   completely, absolutely wrong, never had any contact with

22   him.

23             I wouldn't talk to Mr. Scarpulla because he

24   didn't have assignments.  He wasn't working on this

25   case; he was working on LCD.  So let me just blanket

Veritext Legal Solutions
866 299-5127

1    deny all of those assertions by Mr. Scarpulla and come

2    back to this point, the -- this affirmative point.

3           The spread between lead counsel in this case

4    and the other firms in the case was much narrower than

5    the spread in the LCD case.  And I think that bears

6    mentioning as well, especially since in this case you

7    had one lead counsel, not two lead counsel with

8    factions.  You had one lead counsel really doing the

9    work here.

10          And I think that that would support a larger

11   spread as the spread was in LCD.  But you will see that

12   when you compare this spread to the spread in LCD

13   between the leads and the other firms, it's not that

14   wide a gap, which comes back to the fact that we

15   allocated money from the top down the chain in order to

16   get this thing done.  I can represent that to you right

17   now.

18          We allocated money down the chain of firms to

19   get this done and, as a result, with the exception of

20   this fringe group, these objectors, we have one firm

21   within the case that has objected to our firm's

22   allocation.  And I think that is probably the most

23   telling bit of information as to the fairness of this

24   allocation.  Thank you.

25          THE COURT:  Just one factual point, can you

Page 36

```
 1    clear up for me how much your firm contributed to the
 2    common fund, the expense fund, apart from amounts that
 3    came from early settlements?
 4              MR. ALIOTO:  Over a million dollars.  It's in
 5    the record.
 6              THE COURT:  Yeah.
 7              MR. ALIOTO:  A million-two, million-one,
 8    something in that neighborhood.
 9              THE COURT:  And that is over and above the
10    amounts that you took from the early settlements?
11              MR. ALIOTO:  Yes, that is out-of-pocket cash
12    money.  Out of pocket at the time and a fee petition and
13    still out of pocket.
14              THE COURT:  I mean, this may not be part of my
15    business, I mean, it seems a little out of -- out of
16    whack, I mean, that's -- why did you arrange it in a way
17    that your firm would put a million bucks out at risk,
18    and the next highest is, you know, something in the
19    $120,000 range?
20              MR. ALIOTO:  Because people --
21              THE COURT:  And their -- there are firms in
22    this case that are much bigger and probably have more
23    money in the bank than you do.
24              MR. ALIOTO:  That's right.  Because raising
25    the money from the group, there was some sentiment among
```

Page 37

1   the lawyers in the group and there are some people who

2   did not have the enthusiasm for the case, let me put it

3   that way.  They were not quite as invested in the case

4   before the big settlements came in.

5         There were serious questions about the judge,

6   there were serious questions as far as getting a trial.

7   There were serious questions about how good the case

8   was, and I remember when the last payments were made

9   into that fund, up -- the last payments made by my firm

10   were at the time when the trial team came in and we had

11   discussions about all the things we needed to do and we

12   needed to do it quickly.  I think this was around the

13   end of -- the end of December '14, early '15.  We needed

14   money in the bank to finance the trial.

15         The war room, the rooms, just to have the

16   money, we were going to be doing the jury work and I

17   didn't have time, Your Honor, to send out letters and

18   get dribs and drabs from here and there, so I put it up

19   myself out of a receivable that I got from another case

20   and I put it up myself.

21         THE COURT:  So was -- let's say more than

22   500 --

23         MR. ALIOTO:  Yes.

24         THE COURT:  -- thousand of your -- of your

25   amount of your total million dollar contribution put up

Veritext Legal Solutions
866 299-5127

```
 1    in the last five or six month of the case?
 2              MR. ALIOTO:  I don't know exactly how it broke
 3    down, but there was a large demand for money late '14,
 4    early '15, for the trial.
 5              THE COURT:  Okay.  Mr. Scarpulla?
 6              MR. SCARPULLA:  If that's the case, when Your
 7    Honor ordered Mr. Alioto to produce the Trump Alioto
 8    underlying expense sheets, that was not on there.  The
 9    only payment that was on there was 170,000.
10              MR. ALIOTO:  That's -- that's wrong again,
11    Your Honor.  The audit -- the expense audit had to do
12    with out-of-pocket expenses for travel, subsistence, all
13    of that.  That audit didn't have anything to do with
14    common assessments, those payments into the lit fund.
15    Those were the kinds of expenses Mr. Goldberg was
16    discussing earlier today that each of the firms
17    incurred.  That was a separate item of the expenses.  Do
18    you see how these assertions get made?  They have no
19    bearing whatsoever to what actually happened.
20              THE COURT:  So where are your contributions to
21    the common fund documented, just so I know where to look
22    in your September --
23              MR. ALIOTO:  Yes.
24              THE COURT:  -- 2015 declaration?
25              MR. ALIOTO:  Yes.
```

Page 39

1              THE COURT:  An exhibit thereto?

2              MR. ALIOTO:  Yes, it would be on my fee

3    declaration, which would have the hours, the categories

4    would be hours, and it would also have under oath as

5    part of my declaration the contributions for the money

6    to the litigation fund.

7              MR. SCARPULLA:  Excuse me, that was the whole

8    point, Your Honor, because there -- when we asked for

9    this in front of Your Honor, we said it's in the

10   declaration, but there's no underlying evidence.  And so

11   Your Honor entered an order that required Trump Alioto

12   to supply the underlying evidence of those contributions

13   to the assessment fund.

14              The one that they produced and which is in the

15   record only shows 170,000.  There's no showing that a

16   million dollars was paid into any fund at any time at

17   all.

18              Now, I'm not saying it wasn't paid.  I don't

19   know whether it was or not, but Your Honor ordered that

20   those accounting records from Trump be produced to show

21   that payment.  They were never produced.

22              MR. ALIOTO:  Mr. Scarpulla doesn't know,

23   again, he doesn't know what the proceedings were.  The

24   expense audit, as Your Honor will recall --

25              THE COURT:  That was a different -- that dealt

Page 40

1    with different kinds of expenses.

2           MR. ALIOTO:  Those different kinds of

3    expenses, and that was something that we did voluntarily

4    after Judge Tigar ruled -- we took another look at the

5    expenses and we audited those and knocked them down.

6           THE COURT:  Mr. Scarpulla is talking about

7    something different that he says I issued an order.  I

8    have no memory whether I --

9           MR. ALIOTO:  Before we -- I beg your pardon.

10          THE COURT:  -- did or not.  But he says I

11   issued an order that told you to give me the

12   documentation fee or contributions to the common fund.

13          MR. ALIOTO:  That's very simple.  Let

14   Mr. Scarpulla produce that order to you.

15          MR. SCARPULLA:  I think I have it, Your Honor,

16   so if you give -- I'll have to look.

17          THE COURT:  There's probably a good shot

18   Ms. Capurro can clear this up.  Can you?

19          MS. CAPURRO:  I can read to you the part of

20   your order.

21          THE COURT:  Which order are you talking about?

22   I issue a lot of orders.

23          MS. CAPURRO:  Yes, it's the order on the

24   motion to compel time records, after Mr. Scarpulla and

25   Mr. Cooper moved for production of time records.  I'll

                                                  Page 41

1  have to get you the docket number in a second, because

2  I'm looking at the order that you submitted on -- from

3  JAMS and it didn't have a docket number.  I'll get it

4  for you in one second, but I'll read first what it says.

5          Lead counsel shall recommend to the special

6  master by December 2nd, 2015, a process for enabling

7  him to spot-check a representative sampling of expense

8  receipts and other back-up for claimed expenses and

9  shall keep available all back-up for claimed expenses

10  for the special master's inspection on request.

11          And after that, we then made a proposal to you

12  on what, you know -- on how you would -- how you would

13  do this representative sampling, and that we would

14  conduct an audit of and collect expense receipts,

15  conduct an audit and present the results of that to you,

16  which we did.

17          And we also gathered all the back-up for

18  claimed expenses and offered those to you at your

19  request, but you didn't request -- once you reviewed our

20  audit report and the back-up materials we gave you, you

21  didn't request anything else.

22          THE COURT:  I remember that, but that dealt

23  with hotel bills, plane fare, that kind of thing.  It

24  didn't deal with contributions to the common fund.

25          MR. SCARPULLA:  Right, and that's what we

Page 42

```
 1    asked for, contributions to the common fund.
 2              MS. CAPURRO:  You asked for them, but
 3    Mr. Quinn did not order them.  He never --
 4              MR. SCARPULLA:  That was specifically -- I
 5    don't think I ever asked to see the underlying expenses.
 6              THE COURT:  All right.
 7              MR. SCARPULLA:  I asked to see the payments
 8    into the fund, and when we were -- and when they were
 9    paid.
10              MR. ALIOTO:  He's asked for a lot of things,
11    but what he's saying now is something different.  He
12    said there's an order.  Let him produce the order, Your
13    Honor.
14              THE COURT:  Okay.  I will take care of this by
15    going back to look at the order Ms. Capurro refers to,
16    the requests that were made that generated that order.
17    If I feel I need anything more, I'll ask for it.
18              Okay.  Anything further from anyone in the
19    room?
20              Last but not least, Ms. Kern.
21              MR. KERN:  Thank you.  I will be brief.  I
22    just want to respond to some of the assertions being
23    made that lead counsel didn't have substantive ruling in
24    this case.  And I believe I had a significant role or I
25    want to just give some details about --
```

Page 43

1              MS. MOORE:   Could that speaker please move

2      closer to the telephone, it's hard to hear.

3              MR. KERN:   Yes.   So as I was saying, I believe

4      I had a substantive role in this case and I can attest

5      from my own knowledge to lead counsel's role and I just

6      wanted to give a few examples to highlight that.

7              Lead counsel was involved in all aspects of

8      the case that I know of.   I work closely with Mr. Alioto

9      and Ms. Capurro on a lot of matters.   I don't have to

10     belabor the point that this was a demanding case that

11     took a long time and we worked together sometimes every

12     single day, on weekdays, on weekends, on evenings, all

13     the time.   I spoke routinely with both of them.

14             Some of the examples include the briefs.   The

15     briefs in this case were particularly important because

16     when we were before Judge Conti, he did not permit or

17     allow, I should say, oral argument.   So the briefing was

18     particularly important, and I discussed strategy with

19     both Ms. Capurro and Mr. Alioto on some of these briefs,

20     particularly, for example, important briefs.   And by the

21     way, also to some extent the class certification brief.

22             And Mr. Alioto routinely helped edit the

23     drafts.   He didn't just subcontract them as some people

24     would imply.   He worked on those.   He and I would work

25     through the briefs and decide there were significant

Page 44

1   issues that needed to be addressed.  I also got a lot of

2   input from Ms. Capurro on evidence and on deposition

3   outlines that I did and on picking exhibits.  This was

4   all a team effort.  This was not just people who were

5   off doing their own thing.

6          And another example was on settlement

7   strategy.  I was involved in settlement strategy, and we

8   had numerous communications about how much to settle for

9   and what -- writing mediation briefs and so forth.  So

10  to say that lead counsel didn't have a substantive role

11  is just simply not true.

12         THE COURT:  Okay.  So Mr. Alioto, you know, we

13  ended up in this case with a situation where you had two

14  or three class counsel opposing the settlement,

15  objecting to fees and other matters.  And as you've said

16  yourself, one of the major jobs of lead counsel is to

17  promote harmony and, you know, keep a united front.

18         And here we had a situation where it wasn't

19  just outside objectors objecting to the settlement, you

20  had, you know, in-house class counsel.

21         Do you think, looking back over the eight

22  years of this case, if you had to do it again, there was

23  a way to have avoided that?

24         MR. ALIOTO:  I was working --

25         THE COURT:  And related question, do you feel

Page 45

1  you made sufficient efforts to keep the peace, make the

2  peace, avoid problems?

3          MR. ALIOTO:  Yes.  This case was run the right

4  way, it's evidenced in the result.  We were dealing with

5  at one time 20 timekeepers at the Zelle firm.

6  Mr. Scarpulla didn't take a large role in that.  He was

7  doing other things.  He was involved in LCD.

8          I don't know how they make their staffing

9  decisions over at Zelle, but I was dealing with

10  Mr. Micheletti, I was dealing with Mr. Corbitt,

11  Ms. Zahid, Qianwei.  I was dealing with a score of

12  lawyers over there.

13          I think the case was run properly.  When it

14  came time for the trial you had Mr. Cooper who was not

15  involved in the case, and Mr. Scarpulla who was doing

16  other things.  Yes, I think I made the right decision.

17  We needed the trial teams and there probably would have

18  been work for these people to do.  They probably could

19  have been folded in in some way, maybe it would have

20  been better to fold them in, but I don't think you can

21  make the jump and say they should have been involved and

22  it -- it was detrimental to the case, no, absolutely

23  not.

24          The case was -- was handled and staffed and

25  done properly, and if you look at these fee allocation

Page 46

1   proceedings and you compare them to the LCD case, I did

2   not want to have that type of a dynamic in this case.

3   And we didn't have it.

4          And it was -- I firmly believe that we did it

5   the right way and that was -- contributed to the good

6   result we got in an efficient manner, much less -- much

7   less time and expense than the LCD case.

8          THE COURT:  That wasn't quite what I asked.  I

9   mean, looking back, do you think you could have done

10  anything more to promote harmony and avoid the

11  disruption we've experienced in the settlement portion

12  of the case?

13         MR. ALIOTO:  I was not aware of any

14  disharmony.  I was aware of the case moving forward,

15  assignments being made, and work getting done and I

16  wasn't aware of any disharmony.  That's part of the

17  problem that we're going to be discussing on Wednesday,

18  that these efforts were outside of the normal channels

19  and unbeknownst to me.

20         THE COURT:  Okay.  With respect to Wednesday

21  and also with respect to today's hearing, which we're

22  just winding up, I have on my desk a motion to strike

23  from Mr. Cooper.  I have Mr. Alioto's opposition.

24         Mr. Scarpulla, do you happen to know if

25  Mr. Cooper intends to file a reply because I want to get

Page 47

1    that thing decided.

2            MR. SCARPULLA:  I'm sorry, Your Honor, I don't

3    know, but I believe he's on the telephone.

4            THE COURT:  Mr. Cooper, you're on the phone,

5    are you going to file a reply on that motion?

6            MR. COOPER:  Yes, Your Honor, I believe based

7    on your order it is due on Friday.

8            THE COURT:  Okay.  I issue my orders and then

9    I forget them.  So what's today?

10           MR. ALIOTO:  I believe it's due Wednesday.

11           MR. KERN:  The 5th.

12           MR. ALIOTO:  Wednesday, Your Honor.

13           THE COURT:  Yeah, well, you might take another

14   look at that order, Mr. Cooper, and get it in whenever

15   the order says to get it in, thank you.

16           MR. COOPER:  Yes.

17           THE COURT:  Okay.  Hearing nothing further,

18   we'll close this hearing.  Thank you, everybody, very

19   much.

20               (Whereupon, the proceedings were

21       adjourned at 4:27 p.m.)

22                     --oOo--

23

24

25

Page 48

1    CERTIFICATE OF REPORTER

2

3        I, KENNETH T. BRILL, a Certified Shorthand

4    Reporter, hereby certify that the foregoing proceedings

5    were taken in shorthand by me, at the time and place

6    therein stated, and that the said proceedings were

7    thereafter reduced to typewriting, by computer, under my

8    direction and supervision;

9        I further certify that I am not of counsel or

10   attorney for either or any of the parties to the said

11   proceedings, nor in any way interested in the event of

12   this cause, and that I am not related to any of the

13   parties hereto.

14

15

16

17

18

19        DATED:  10/17/16

20

21

22        KENNETH T. BRILL

         CSR 12797

23

24

25

                                                Page 49

[& - agreements]

**&**

**&** 2:5,16 4:4 5:13
6:4 7:5 9:9,19,20
19:24 20:14 30:20

**0**

**07-5944** 1:5

**1**

**1** 1:25
**1,500** 29:20
**1,800** 30:23
**10** 14:21 19:24,25
**10/17/16** 49:19
**100** 16:21
**12** 19:24,25
**120** 2:18
**120,000** 37:19
**12797** 1:17 49:22
**13** 13:14,16,17
14:3
**14** 11:18 38:13
39:3
**15** 38:13 39:4
**150** 17:9
**1500** 6:16
**16** 19:22
**17** 14:11
**170,000** 39:9 40:15
**17th** 3:7 21:16
**1900** 5:6
**19107** 7:18
**1917** 1:6

**2**

**2,000** 29:15
**2,161** 21:20
**20** 6:6 13:2,8 14:3
14:6,24 15:1,4
46:5
**20.25** 21:12
**2014** 21:16

**2015** 10:17 23:4
29:10,12 39:24
42:6
**2016** 1:12 9:1
**212** 5:8 8:9
**2125** 2:18
**215** 5:17 7:19
**22030** 4:8
**221-5763** 4:19
**2280** 2:8
**23rd** 7:17
**244-7520** 6:8
**2455107** 1:19
**2532** 4:17
**29** 19:22
**2nd** 7:7 42:6

**3**

**3** 1:12 9:1 31:20
**30** 14:22 23:13
**338-1133** 6:18
**3400** 5:15
**35** 23:23
**350** 23:12
**357** 7:7
**35th** 3:17
**371-6600** 5:8
**3:28** 1:13 9:2

**4**

**40** 23:13
**400** 23:12
**4041** 4:7
**4071** 12:11
**4071-1** 10:19
**415** 2:10 3:9,19
4:19 7:9
**434-8900** 3:19
**44** 5:15
**450** 23:25
**456** 3:7

**48226** 8:8
**49** 1:25
**4:27** 1:13 48:21

**5**

**500** 38:22
**505** 6:8
**550** 6:16
**563-7200** 2:10
**567-6565** 5:17
7:19
**5th** 48:11

**6**

**6,500** 30:11
**600** 5:6
**619** 6:18
**631-8605** 8:9
**68** 14:12
**693-0700** 3:9

**7**

**700** 6:6
**703** 4:9
**72,000** 23:10,10
**764-8700** 4:9
**777** 8:7
**788-3030** 7:9

**8**

**8,800** 29:17,18
**800** 21:17
**800,000** 29:25
**87102** 6:7
**890** 8:7
**8916392** 23:4

**9**

**92101** 5:7 6:17
**925** 2:20
**94103** 7:8
**94104** 3:8,18 5:16
**94121** 4:18

**94123** 2:9
**945-0200** 2:20
**94598** 2:19

**a**

**absolutely** 35:21
46:22
**accounting** 40:20
**accusations** 34:25
35:12,14,15
**act** 24:19 32:1,13
**action** 13:9,12,14
13:17 14:1
**actions** 13:18 14:2
14:3,3,4,6,24
**activities** 12:14
**add** 18:18 19:13
**addressed** 45:1
**adjourn** 27:8
**adjourned** 48:21
**adjustments** 25:22
27:13
**administerial**
31:10
**advice** 35:20
**affirmative** 16:8
35:17 36:2
**afraid** 10:25 13:5
**afternoon** 9:8,11
9:13,18,21,23
**ag** 14:2 31:1
**agenda** 17:13
33:20
**aggregate** 18:23
**agree** 32:24
**agreed** 28:15
**agreement** 17:2
24:18 28:13,13
31:25 32:8,10,12
33:1
**agreements** 32:6,6
32:9

[ags - blocked]

| ags | allow | aspects | b |
|---|---|---|---|
| **ags** 24:9 35:20 | **allow** 44:17 | **aspects** 16:5 44:7 | |
| **ahead** 11:16,17 | **amount** 16:2 | **assertions** 36:1 | **b** 1:19 3:6 5:6 |
| 27:19 28:10 | 38:25 | 39:18 43:22 | **back** 10:17 26:5 |
| **air** 16:12 34:22 | **amounts** 18:4,5 | **assessment** 40:13 | 29:9 34:13 35:17 |
| **al** 31:18 | 37:2,10 | **assessments** 30:2 | 36:2,14 42:8,9,17 |
| **albuquerque** 6:7 | **analyzing** 14:20 | 39:14 | 42:20 43:15 45:21 |
| 9:22 | **answer** 27:9 | **assign** 28:17 | 47:9 |
| **alioto** 2:5,6 10:9 | **answers** 26:25 | **assignment** 20:18 | **ball** 25:14 |
| 10:18 15:6,11,15 | **antitrust** 1:4 20:13 | **assignments** 35:24 | **bank** 37:23 38:14 |
| 15:19 17:23 18:15 | **anymore** 23:16 | 47:15 | **based** 48:6 |
| 20:9,22 21:17,23 | **anyway** 24:1 | **association** 22:20 | **battin** 4:6 9:18,19 |
| 21:25 22:5 24:5 | 27:25 | **athletic** 22:20 | **bearing** 39:19 |
| 24:18,20,22 25:12 | **apart** 37:2 | **attached** 34:11 | **bears** 10:16,18 |
| 25:17,23 26:20 | **apparently** 28:15 | **attention** 10:14 | 36:5 |
| 27:7,17 28:16 | **appeal** 25:10 | 26:19 | **beg** 41:9 |
| 29:14 30:1,11,22 | **appeals** 11:18 | **attest** 44:4 | **belabor** 44:10 |
| 31:4,25 32:4,16 | **applied** 25:2 | **attorney** 13:21,25 | **believe** 24:12 25:3 |
| 33:17,18 34:14 | **approval** 10:22 | 21:20 32:22 49:10 | 29:21 30:24 43:24 |
| 37:4,7,11,20,24 | 11:16 12:20 16:21 | **attorneys** 10:16 | 44:3 47:4 48:3,6 |
| 38:23 39:2,7,7,10 | **approved** 16:25 | 13:19,23 24:2 | 48:10 |
| 39:23,25 40:2,11 | 27:13 | **audit** 24:10 25:18 | **believes** 19:18 |
| 40:22 41:2,9,13 | **approximately** | 25:19 26:4,8,24,24 | **best** 11:6 12:3,8,9 |
| 43:10 44:8,19,22 | 29:25 | 27:4,22 28:8 | **better** 46:20 |
| 45:12,24 46:3 | **argue** 22:5,6,7 | 39:11,11,13 40:24 | **beyond** 19:15 |
| 47:13 48:10,12 | 34:3 | 42:14,15,20 | 23:16 26:15 |
| **alioto's** 10:7 21:10 | **argued** 21:2 22:4 | **audited** 41:5 | **bgralewski** 5:9 |
| 28:24 32:25 47:23 | 22:12 34:5 | **authority** 28:18 | **big** 38:4 |
| **aliotolaw.com** | **arguing** 22:3 | **authorization** 35:3 | **bigger** 37:22 |
| 2:11 3:20 | **argument** 19:1 | **available** 42:9 | **billed** 21:12 |
| **allegation** 32:23 | 44:17 | **avenue** 8:7 | **bills** 42:23 |
| **alleged** 31:25 | **arguments** 13:21 | **avoid** 46:2 47:10 | **birkhaeuser** 2:16 |
| **allocated** 36:15,18 | **arithmetic** 26:17 | **avoided** 45:23 | 2:17 9:8 |
| **allocating** 22:21 | **arrange** 37:16 | **award** 18:23,24 | **birkhauser** 9:9,9 |
| 23:7 24:21 | **arrive** 16:9,11,15 | **awarded** 22:22 | **bit** 36:23 |
| **allocation** 10:7 | **arrived** 16:10,14 | **awards** 19:4 | **bizarre** 32:13 |
| 15:10 16:9,20 | **arriving** 14:21,22 | **aware** 32:7 47:13 | **black** 7:15 9:16 |
| 17:2,9,17 19:10 | **asked** 24:6 30:10 | 47:14,16 | **blame** 11:4 |
| 24:12 29:2,8 | 32:5 40:8 43:1,2,5 | **awareness** 15:8 | **blanket** 35:25 |
| 31:16 34:12 36:22 | 43:7,10 47:8 | | **blew** 10:24 |
| 36:24 46:25 | **aspect** 16:3 | | **blocked** 21:12 |

[boards - conclude]

**boards** 20:16,19
**boeis** 9:19,20
**boies** 4:4
**boies.com** 4:10
**bois** 19:24 20:15
  30:20
**bore** 12:22
**bottom** 33:12
**boyd** 6:4
**bramson** 2:16 9:9
**bramsonplutzik....**
  2:21
**brief** 10:12 13:7
  43:21 44:21
**briefing** 11:20
  44:17
**briefs** 15:16 44:14
  44:15,19,20,25
  45:9
**brill** 1:16 49:3,22
**bring** 19:20
**bringing** 12:6,8
**broad** 7:17
**broke** 39:2
**brought** 34:13
**bucks** 37:17
**bumped** 18:13
**bunch** 31:7
**business** 37:15

**c**

**c** 2:1 3:1 4:1 5:1
  6:1,16 7:1 8:1
**ca** 2:9,19 3:8,18
  4:18 5:7,16 6:17
  7:8
**calculations** 26:17
**california** 1:2,11
  9:1 13:21
**call** 10:14
**called** 24:6 32:14

**capurro** 2:7 12:18
  21:24,24 26:18
  41:18,19,23 43:2
  43:15 44:9,19
  45:2
**capurro's** 21:11
**care** 43:14
**case** 10:20,23 11:1
  11:9,11,14,16 12:6
  12:8,19,21,23 13:2
  13:2 14:6 15:1
  16:6,15,24,25
  17:16 19:9,21
  20:3,10,12 22:5,8
  22:21 23:9 24:5
  24:11 28:16 31:6
  31:11 33:5 34:10
  34:11,12,14 35:17
  35:25 36:3,4,5,6
  36:21 37:22 38:2
  38:3,7,19 39:1,6
  43:24 44:4,8,10,15
  45:13,22 46:3,13
  46:15,22,24 47:1,2
  47:7,12,14
**cases** 12:2 13:2,4,8
  13:14 14:18 15:1
  15:9 28:25
**cash** 37:11
**categories** 40:3
**cathode** 1:4
**cause** 49:12
**causing** 35:7
**centers** 20:1
**certainly** 12:1
  16:11 25:4 27:8,9
  27:17 30:20 32:9
**certificate** 49:1
**certification** 33:23
  44:21

**certified** 49:3
**certify** 49:4,9
**chain** 13:16 36:15
  36:18
**chair** 33:24
**challenged** 17:8
**changed** 24:16
**changes** 26:9
**channels** 47:18
**characterization**
  32:25
**characterize** 31:8
**characterized**
  12:6
**charge** 11:13
  23:11 29:3
**charged** 29:1 31:7
**charging** 21:17
**check** 42:7
**chris** 21:6 28:5
  30:14
**christopher** 5:14
**chunghwa** 11:22
**cihlar** 4:5 9:19
**circuit** 11:18
  25:11
**circulated** 27:23
**cite** 22:24 23:1
**claimed** 42:8,9,18
**claiming** 24:8
**claims** 13:10 20:9
  34:6
**clare** 2:7
**class** 13:9,12 14:3
  21:17 22:3 29:1
  30:13 33:23 44:21
  45:14,20
**clayton** 3:6
**clear** 11:9 19:18
  37:1 41:18

**client** 32:22
**clients** 29:3
**close** 29:24 48:18
**closely** 44:8
**closer** 44:2
**cmicheletti** 5:18
**cohen** 8:13 9:10,10
**colead** 24:19 28:15
  32:1,14,14
**collect** 42:14
**collegiate** 22:19
**come** 11:2 14:20
  18:24,25 36:1
**comes** 36:14
**coming** 35:9
**commend** 18:2
  19:5
**comment** 19:17
**comments** 10:8
  34:20
**commerce** 15:23
**committee** 25:20
**common** 14:18
  37:2 39:14,21
  41:12 42:24 43:1
**communications**
  45:8
**compare** 34:10
  35:12 36:12 47:1
**compel** 41:24
**compensated**
  24:24
**compilations**
  26:16
**complete** 12:12
**completely** 35:11
  35:21
**complex** 15:8
**computer** 49:7
**conclude** 15:17

Veritext Legal Solutions
866 299-5127

[conduct – docket]

conduct  42:14,15
contact  35:21
conti  34:5 44:16
continue  12:10
continued  3:1 4:1
  5:1 6:1 7:1 8:1
  34:3
contract  12:18
contribute  35:1
contributed  35:1
  37:1 47:5
contribution
  38:25
contributions
  39:20 40:5,12
  41:12 42:24 43:1
conversation
  26:14
convey  13:5
cooper  7:5,6 10:4
  10:4 41:25 46:14
  47:23,25 48:4,6,14
  48:16
cooperative  17:22
coopkirk.com
  7:10
copy  27:22 28:7
corbitt  21:7 28:5
  29:21 30:7,17
  32:18 33:2,5,9,12
  46:10
core  19:23
corporate  13:15
correct  24:22
correctly  31:4
correspondence
  26:22
counsel  12:2 18:11
  18:17 19:9,18
  20:2 21:19 24:19
  24:23,25 25:20

31:5 32:2,14,15
  34:16 36:3,7,7,8
  42:5 43:23 44:7
  45:10,14,16,20
  49:9
counsel's  44:5
counsels  34:17
count  14:12 16:22
couple  20:8 32:8
course  34:23 35:3
court  1:1 9:4,15
  9:17,25 10:5,17
  11:3 15:5,7,14,18
  17:19 18:14 19:12
  19:15 20:5,21,25
  22:24 23:3,5
  25:12,19 26:11,12
  26:12 27:2,11,12
  27:19 28:1,3,7,10
  28:20 29:4,9 31:3
  31:11,13,18,21,24
  32:12,21 33:2,6,11
  33:16 34:13 36:25
  37:6,9,14,21 38:21
  38:24 39:5,20,24
  40:1,25 41:6,10,17
  41:21 42:22 43:6
  43:14 45:12,25
  47:8,20 48:4,8,13
  48:17
craig  21:7 28:5
  30:17
create  27:14
creek  2:19
criteria  25:24
criticisms  15:10
  15:12
criticized  12:5
  17:8
crt  1:4

csr  1:17 49:22
curious  27:15
cv  1:5

**d**

d  3:15,16 7:6
damage  14:10
  15:22
damages  14:8
dan  9:9
daniel  2:17
data  14:20
dated  49:19
day  12:19 44:12
dbirkhaeuser  2:21
deal  24:4 35:20
  42:24
dealing  46:4,9,10
  46:11
deals  35:13
dealt  13:19,23
  24:3 40:25 42:22
december  38:13
  42:6
decide  44:25
decided  48:1
decision  22:19
  46:16
decisions  46:9
declaration  10:14
  10:15,24 11:5
  12:11,13,17 15:2
  16:1 29:15 35:4
  39:24 40:3,5,10
declarations  29:10
  29:12
demand  39:3
demanding  44:10
dennis  6:15,19
  9:11
deny  33:21 36:1

deposition  45:2
depositions  15:3
  21:2 22:2
described  12:17
describing  12:14
designated  14:11
desire  25:14
desk  47:22
detail  12:13
details  43:25
detrimental  46:22
detroit  8:8
developments
  11:8
dever  7:16 9:13,14
  9:16
devoted  34:10
diego  5:7 6:17
diem  29:3
different  11:23
  25:21 31:2 34:17
  34:17 40:25 41:1
  41:2,7 43:11
difficult  12:24
difficulty  12:23
dig  35:2
direct  13:12,14,17
  14:3
direction  49:8
discussed  44:18
discussing  39:16
  47:17
discussions  30:23
  33:4 38:11
disharmony  47:14
  47:16
disputing  20:1
disruption  47:11
district  1:1,2 11:2
docket  10:19
  12:11 42:1,3

**[document - firmly]**

document  23:21
23:25 24:13 25:6
35:11
documentation
41:12
documented  39:21
documents  23:10
23:14,18,21 27:16
29:18 32:19 33:3
doing  11:24,25,25
12:15,17 14:14,19
17:16 19:5 23:15
27:4 36:8 38:16
45:5 46:7,15
dollar  18:6 38:25
dollars  37:4 40:16
doubt  12:12
dozen  25:25
drabs  38:18
drafts  44:23
draw  10:13
dream  16:20
dribs  38:18
drive  4:7
due  48:7,10
dynamic  47:2

**e**

e  2:1,1,17 3:1,1 4:1
4:1 5:1,1 6:1,1 7:1
7:1 8:1,1 25:7
28:4,14
earlier  17:1 39:16
early  28:14 32:5
37:3,10 38:13
39:4
easier  22:25
easy  14:24
edit  44:22
efficient  34:18
47:6

efficiently  34:15
effort  16:23 17:11
45:4
efforts  17:16,16
46:1 47:18
eight  11:7 12:1
45:21
either  12:18 49:10
elizabeth  8:5
elusive  28:8
emckenna  8:10
enabling  42:6
ended  45:13
enforceable  25:2
entered  40:11
enthusiasm  38:2
entire  22:20
entitled  33:12
equitable  17:17
especially  14:8,10
36:6
esquire  2:6,7,17
3:5,6,16 4:5,6,16
5:5,14 6:5,15 7:6
7:16 8:5
essentially  24:19
evenings  44:12
event  49:11
everybody  10:1
48:18
everybody's  22:23
evidence  40:10,12
45:2
evidenced  46:4
exactly  39:2
example  14:5,25
21:15,16 44:20
45:6
examples  44:6,14
excellent  12:25

exception  36:19
exceptional  20:2
excessive  23:7
excuse  40:7
exhaustive  23:6
exhibit  31:20 40:1
exhibits  45:3
expense  26:24
37:2 39:8,11
40:24 42:7,14
47:7
expenses  25:18
39:12,15,17 41:1,3
41:5 42:8,9,18
43:5
experienced  47:11
expert  14:7,10,12
14:12,13,15 21:6
29:20,22,23,24
expert's  14:14
experts  14:11,16
14:19,21,22
explained  17:1
extent  44:21
extra  12:15

**f**

fact  14:1 16:1 20:2
24:21 28:16 32:2
36:14
factions  34:17
36:8
facts  19:1
factual  36:25
fair  15:24,25
16:16,17 29:11
fairfax  4:8
fairly  10:10 26:23
fairness  36:23
far  16:8 38:6
fare  42:23

fbdlaw.com  6:9
fee  16:20 19:22,25
22:22 27:13 32:5
32:6 35:13 37:12
40:2 41:12 46:25
feedback  16:16
feel  18:1,21 43:17
45:25
fees  10:16 11:14
22:21 23:7 24:12
24:21 27:4 45:15
felt  18:25
fern  34:4
fifth  4:7
fighting  31:1
file  1:4 27:2,5
47:25 48:5
filed  10:15 15:2
17:21 22:7
files  21:18,19
filings  11:15
finally  30:6,6
finance  38:14
find  27:8
fine  7:15 9:16
finekaplan.com
7:20
finish  10:20 11:11
finished  10:21
firm  9:15 17:7,8,9
17:20,20,21 20:9
20:17 24:23 26:15
26:15,22,22 27:2
28:24 29:17,18
30:15 31:4,25
32:1,13 33:6,13
34:9 36:20 37:1
37:17 38:9 46:5
firm's  36:21
firmly  30:23 47:4

[firms - honor]

**firms** 16:15,17
17:6 18:4,7,22
19:23 20:10,15,18
20:20 21:5,9
25:21,25 26:1,2,4
36:4,13,18 37:21
39:16
**first** 6:6 17:18
35:6 42:4
**five** 13:18 14:2
39:1
**floor** 3:7,17 4:7
7:7,17
**florida** 14:1
**focus** 15:9,12
**focused** 31:14
**fold** 46:20
**folded** 46:19
**folks** 20:22 24:11
**following** 24:21
**foregoing** 49:4
**forever** 30:5
**forget** 48:9
**form** 27:15
**formal** 26:4,24,24
**forth** 11:8 26:5
45:9
**forward** 47:14
**fos** 3:10
**four** 14:11 28:14
**fragmented** 26:23
27:6
**francis** 3:4,5
**francisco** 1:11 2:9
3:8,18 4:18 5:16
7:8 9:1
**freedman** 6:4
**friday** 13:25 48:7
**fringe** 36:20
**front** 22:4,12 25:9
34:3,5 40:9 45:17

**full** 11:1,16
**fund** 22:22 35:1,2
37:2,2 38:9 39:14
39:21 40:6,13,16
41:12 42:24 43:1
43:8
**further** 11:19,20
11:21 33:16 34:7
43:18 48:17 49:9

**g**

**gap** 36:14
**gathered** 42:17
**gdever** 7:20
**general** 13:19,21
13:23,25 15:8
24:2
**generated** 43:16
**gerard** 7:16
**gerry** 9:13
**getting** 9:4 12:3
18:5,6,12 38:6
47:15
**give** 9:6 10:20 13:7
14:5 16:1 21:16
23:17 26:17 27:3
41:11,16 43:25
44:6
**given** 25:13
**gives** 23:17
**glancy** 17:20
**glowingly** 18:20
**go** 19:12 21:22
22:13 27:19 28:10
29:9 34:7 35:2,17
**goal** 16:21
**goes** 11:24 22:20
25:10
**going** 11:14,16,19
11:20,20,21 12:13
12:22 14:16 15:11
16:13 23:11 25:2

27:11 28:20 30:16
33:8 38:16 43:15
47:17 48:5
**goldberg** 6:4,5
9:21,22 29:4,6
39:15
**good** 9:8,11,13,18
9:21,23 10:1
15:21,22 18:15
38:7 41:17 47:5
**grab** 27:5
**gralewski** 5:5
18:17 19:15
**gralewski's** 17:8
**gralweski** 19:17
**great** 9:7 23:5
**gross** 22:22
**ground** 18:3
**group** 4:15 17:22
17:25 18:17 29:16
36:20 37:25 38:1
**grove** 2:18
**guess** 10:7

**h**

**half** 13:22 25:25
**hand** 27:6 33:2
**handle** 24:7,8
**handled** 15:16
34:14 46:24
**handling** 11:14
26:22
**hands** 16:7
**handwritten**
26:13
**happen** 30:8 47:24
**happened** 25:24
39:19
**happening** 34:23
**happy** 18:8,19
**hard** 12:23,25
44:2

**harmony** 45:17
47:10
**harper** 6:14
**hear** 12:22 13:20
15:11 44:2
**heard** 22:9,10
**hearing** 1:10 10:2
10:6 19:16 31:15
35:16 47:21 48:17
48:18
**hearings** 35:10
**heavily** 14:7
**heavy** 30:18
**height** 13:18
**help** 30:18
**helped** 44:22
**helpful** 27:12
**hereto** 49:13
**hide** 25:14
**higher** 18:1 19:19
**highest** 20:20
37:18
**highlight** 10:13
44:6
**highly** 17:15
**hire** 22:17
**history** 18:24
**hoagland** 17:20
**hofmann** 5:13
**hollander** 6:4
**honor** 9:8,18 10:9
15:12 17:5 18:19
19:11,17 20:6,7
22:1,5,17 23:9
24:10,15 25:17
27:20,21 28:25
31:17,23 32:4,7,17
33:23 38:17 39:7
39:11 40:8,9,11,19
40:24 41:15 43:13
48:2,6,12

[honor's - line]

honor's  34:12
hope  32:10
horn  10:24
hot  33:3
hotel  42:23
hour  21:17 23:12
  23:25
hourly  28:25 29:2
hours  21:12,20
  23:10,11 29:15,17
  29:19,20 30:11,23
  31:7 35:10 40:3,4
house  45:20
hulett  6:14
hulettharper.com
  6:19

**i**

idea  16:1 23:15
illinois  13:23 24:2
imply  44:24
importance  29:8
important  14:19
  23:22 25:1 31:5
  44:15,18,20
impression  13:5
include  44:14
incurred  39:17
independent  28:13
indication  11:6
indications  35:19
indirect  2:3 13:9
  13:17
information  36:23
informed  34:7,8
initially  24:15
input  45:2
inquire  28:20
insight  26:18
inspection  42:10
intends  47:25

interest  30:4
interested  26:13
  49:11
interlineations
  26:21
invested  38:3
involved  11:1,10
  11:12 13:14,18
  14:8,9 15:22,23
  16:3,6 20:9,10,22
  30:19 44:7 45:7
  46:7,15,21
involvement  10:23
  11:10 12:12
involving  13:10
issue  41:22 48:8
issued  41:7,11
issues  33:19 34:16
  45:1
item  39:17

**j**

j  5:5
jams  1:10 42:3
janet  29:23
january  21:16
japanese  23:25
jdc  7:10
jg  6:9
jmalioto  2:11
job  1:19 18:15
  19:8 20:2
jobs  12:3 45:16
joe  9:22
joined  10:2
josef  7:6 10:4
joseph  6:5
jr  5:5
judge  13:6 22:12
  22:18 25:9 29:7
  33:25 34:1,3,5
  38:5 41:4 44:16

judgment  22:6,8
judgments  25:22
judith  30:14
jump  46:21
jury  38:16

**k**

k  4:16
kag  4:15
kaplan  7:15 9:16
keep  30:6 42:9
  45:17 46:1
keller  22:19
kennedy  8:6
kenneth  1:16 49:3
  49:22
kept  30:1
kern  4:16 43:20,21
  44:3 48:11
key  22:2
kid  20:11
kind  18:2 26:3
  35:16 42:23
kinds  34:6 35:14
  39:15 41:1,2
kirby  5:4 19:18,24
  20:14 30:19
kirkham  7:5
kmllp.com  5:9
knew  30:8
knocked  41:5
know  11:22 15:8
  18:23 19:18 22:14
  23:9,17 25:13,14
  26:17 27:3,7,12,23
  28:12 29:7,23
  30:7,12,16,19 31:8
  37:18 39:2,21
  40:19,22,23 42:12
  44:8 45:12,17,20
  46:8 47:24 48:3

knowledge  44:5
knows  24:8

**l**

lake  4:17
languages  23:19
large  39:3 46:6
larger  36:10
late  39:3
lauren  2:7
laurenrussell  2:12
law  3:4,15 4:15
  16:2 19:2
lawyer  23:25
lawyers  20:13
  29:16,18 38:1
  46:12
lcd  34:11,12,19
  35:12,25 36:5,11
  36:12 46:7 47:1,7
lcds  24:3,4,6
lead  12:2 18:11,16
  19:9,18 20:2
  21:18 24:23,24
  31:4 34:16,17
  36:3,7,7,8 42:5
  43:23 44:5,7
  45:10,16
leading  11:12,25
leads  36:13
leave  29:10
led  16:6
legg  33:25 34:1
letters  38:17
level  14:18
life  22:25
lifting  30:18
light  10:11
limine  22:11
limited  15:7,8
line  18:12

[lit - numerous]

lit  39:14
litigation  1:4
  13:11,13 40:6
little  11:23 37:15
liz  9:23
llp  4:4 5:4,13 6:14
  8:4 9:24
lodestar  26:10,10
long  44:11
look  15:25 19:23
  21:15 22:15,18
  29:9,11 34:9
  39:21 41:4,16
  43:15 46:25 48:14
looked  21:9,11
  25:15,21 30:16
looking  10:23
  14:13 23:13 26:13
  42:2 45:21 47:9
looks  22:23
lot  15:21,23,23
  18:21 26:13 35:6
  35:7 41:22 43:10
  44:9 45:1
luxury  14:13

**m**

mahler  2:16 9:9
mail  28:4
mails  25:7 28:14
main  10:15
major  11:8 14:3
  45:16
making  35:9,12
management
  19:20 20:23
manner  47:6
mario  2:6 21:24
  28:5
marlo  8:13 9:10
martin  1:10

mason  5:13
mass  11:15
master  1:4,10
  10:14,20 34:1
  35:18 42:6
master's  42:10
materials  42:20
matter  10:11 14:1
  28:17
matters  44:9
  45:15
mccallum  17:21
mccullum  17:19
mcinerney  5:4
  20:14 30:19
mckenna  8:5 9:23
  9:24
mdl  1:6
mean  13:8 14:25
  23:15 34:21 37:14
  37:15,16 47:9
means  13:5 14:5,6
mediation  34:4
  45:9
meetings  21:20,20
  26:16 29:16
memories  34:13
memory  41:8
mentioning  36:6
merit  15:3
method  22:20
methodology  17:1
mexico  9:22
mi  8:8
micheletti  5:14
  19:13,14 21:7
  22:3 27:22 28:6,7
  28:9 29:21 30:14
  32:19,21,24 33:4,7
  46:10

milberg  8:4
milberg.com  8:10
millberg  9:24
million  23:13 37:4
  37:7,7,17 38:25
  40:16
mind  15:15 33:9
minutes  26:16
monday  9:1
money  30:4 36:15
  36:18 37:12,23,25
  38:14,16 39:3
  40:5
montgomery  3:7
  5:15
month  39:1
moore  3:15,16
  10:3,3 44:1
morning  17:1
motion  10:16
  11:19 22:3 30:13
  41:24 47:22 48:5
motions  21:3 22:6
  22:9,11 30:12
  34:2,3
move  44:1
moved  16:19,19
  17:3,3,4 19:3
  31:11 41:25
moving  47:14
multi  13:10
multiple  23:12,19
  24:24 25:5
multiples  20:20
multiplier  16:10
  16:19 19:19,21

**n**

n  2:1 3:1 4:1 5:1
  6:1 7:1 8:1
n.w.  6:6

name  32:2
names  9:5,6
narrower  36:4
nate  9:19
nathan  4:5
national  22:19
nature  26:21,23
near  23:12
necessarily  18:8
need  14:22 27:14
  29:11 35:5 43:17
needed  16:12
  38:11,12,13 45:1
  46:17
needs  22:17
neglected  16:4
negotiation  26:5
neighborhood
  37:8
ness  29:23
never  35:21 40:21
  43:3
new  9:22
nine  16:10
ninth  11:18 25:10
nm  6:7
normal  15:1 29:2
  47:18
northern  1:2
note  35:14
notes  26:14
number  10:19
  16:10,18,19 18:7
  24:25 25:1 28:24
  31:6 42:1,3
numbers  16:16,17
  20:3
numerous  45:8

[o - probably]

| o | | | |
|---|---|---|---|
| **o** 3:4,5 | **order** 16:19 36:15 | **papers** 20:8 27:3 | **philadelphia** 7:18 |
| **oak** 2:18 | 40:11 41:7,11,14 | 33:22 34:12 35:15 | **phone** 48:4 |
| **oath** 40:4 | 41:20,21,23 42:2 | **pardon** 41:9 | **pick** 23:21 |
| **objected** 36:21 | 43:3,12,12,15,16 | **part** 13:20 15:16 | **picking** 45:3 |
| **objecting** 45:15,19 | 48:7,14,15 | 15:17 16:18,23 | **piece** 13:11,12 |
| **objection** 18:11 | **ordered** 39:7 | 17:11,22 24:14 | **pieces** 22:7 |
| 20:1 31:13 33:14 | 40:19 | 25:7 27:24 29:2 | **place** 49:5 |
| **objections** 17:21 | **orders** 15:21 | 37:14 40:5 41:19 | **plaintiffs** 2:3 |
| 31:14 | 41:22 48:8 | 47:16 | 13:15,17 |
| **objective** 18:5,6 | **oregon** 13:24,25 | **particularly** 44:15 | **plane** 42:23 |
| **objector** 18:17 | 24:3 | 44:18,20 | **plaza** 6:6 |
| **objectors** 16:22 | **organization** | **parties** 49:10,13 | **pleading** 21:4 |
| 17:10 18:10 36:20 | 23:24 | **patane** 12:18 | **pleadings** 21:4 |
| 45:19 | **organize** 21:18,19 | 21:23,23 | 30:12 |
| **observations** 20:8 | **original** 10:16 | **patrick** 3:6 | **please** 9:5 10:9,10 |
| **obviously** 33:20 | 28:13 29:14 | **pausing** 25:13 | 44:1 |
| **october** 1:12 9:1 | **ought** 20:20 25:7 | **paying** 23:24 | **plutzik** 2:16 9:9 |
| **offered** 42:18 | **outlines** 45:3 | **payment** 39:9 | **pocket** 37:11,12 |
| **office** 11:24 12:17 | **outside** 45:19 | 40:21 | 37:13 39:12 |
| **offices** 3:4,15 | 47:18 | **payments** 38:8,9 | **point** 17:23 25:13 |
| **oh** 28:3 | **overcharge** 14:17 | 39:14 43:7 | 28:11 29:11 31:3 |
| **okay** 9:4,17,25 | 14:17 | **pbc** 3:11 | 33:21 36:2,2,25 |
| 19:12 20:5 26:12 | **overcharges** 14:21 | **peace** 46:1,2 | 40:8 44:10 |
| 27:17,19 28:22 | 14:22 | **people** 9:5 12:3,6 | **points** 28:21 |
| 31:18 34:14 39:5 | **oversaw** 16:6 | 12:8,19 13:16,20 | **popped** 24:5 |
| 43:14,18 45:12 | **owed** 29:24 30:4 | 14:23 15:10 16:24 | **portion** 30:24 |
| 47:20 48:8,17 | p | 17:3,3,24,25 18:16 | 47:11 |
| **old** 23:24 | **p** 2:1,1 3:1,1 4:1,1 | 18:24 19:5 20:12 | **possible** 12:8,9 |
| **once** 42:19 | 5:1,1 6:1,1 7:1,1 | 20:15 22:1 23:15 | **practice** 11:19 |
| **ones** 23:21 | 8:1,1 | 27:23 28:17 30:14 | **preliminary** 10:22 |
| **ooo** 48:22 | **p.a.** 6:4 | 35:7 37:20 38:1 | 11:15 12:20 |
| **oops** 10:2 | **p.m.** 1:13,13 9:2 | 44:23 45:4 46:18 | **preparing** 14:14 |
| **opening** 10:8 | 48:21 | **percent** 14:21,22 | **prescott** 2:5 |
| 19:10 | **pa** 7:18 | 16:21 19:22,22,24 | **present** 8:13 34:4 |
| **opining** 14:17 | **page** 14:23 | 19:25 | 42:15 |
| **opinion** 23:6 | **pages** 1:25 | **percentage** 22:22 | **pretty** 10:12 17:15 |
| **opposing** 45:14 | **paid** 23:13 30:2,3 | **perfectly** 11:9 | **primarily** 29:16 |
| **opposition** 47:23 | 30:5,9 40:16,18 | **permit** 44:16 | **probably** 36:22 |
| **oral** 44:17 | 43:9 | **petition** 37:12 | 37:22 41:17 46:17 |
| | **paper** 22:7 26:14 | **ph** 29:23 | 46:18 |

Veritext Legal Solutions
866 299-5127

[problem - s]

| | | | |
|---|---|---|---|
| **problem** 30:8 47:17 | 31:24 32:11 45:25 | **records** 25:21,25 26:2 29:14 40:20 | **result** 10:25 12:9 12:25 15:21,22 |
| **problems** 27:15 46:2 | **questions** 16:2,2 31:23 38:5,6,7 | 41:24,25 | 17:17 18:9 36:19 46:4 47:6 |
| **proceed** 15:13 | **quickly** 38:12 | **reduced** 49:7 | **results** 19:21 |
| **proceeding** 14:4 24:20 | **quinn** 1:10 9:21 43:3 | **reductions** 26:10 | 42:15 |
| **proceedings** 13:20 | **quite** 38:3 47:8 | **refers** 43:15 | **retailers** 13:15 |
| 32:5 34:24 35:8 | | **reflect** 35:18 | **revealing** 32:22 |
| 40:23 47:1 48:20 | **r** | **reflects** 19:7,8 | **review** 25:25 |
| 49:4,6,11 | **r** 2:1 3:1 4:1 5:1 | **regular** 23:23 | 35:11 |
| **process** 16:18 17:6 | 6:1 7:1 8:1 | **related** 45:25 | **reviewed** 26:2 |
| 42:6 | **r.p.c.** 7:15 | 49:12 | 42:19 |
| **produce** 39:7 | **raises** 34:21 | **relating** 27:4 | **reviewing** 23:10 |
| 41:14 43:12 | **raising** 35:6 37:24 | **relevant** 24:20 | 29:17,20 |
| **produced** 40:14 | **range** 37:19 | **remember** 22:9 | **revised** 31:16 |
| 40:20,21 | **rate** 29:1 | 38:8 42:22 | **rewarded** 21:25 |
| **producing** 21:4 | **rates** 29:2 | **reply** 47:25 48:5 | 22:1 |
| **production** 41:25 | **ray** 1:4 | **report** 24:11 25:15 | **right** 9:25 10:5 |
| **promote** 45:17 | **reach** 19:3 | 25:18,23 26:4,8,8 | 12:16 15:18 22:4 |
| 47:10 | **read** 41:19 42:4 | 27:22 28:8 42:20 | 28:10,22 31:12,19 |
| **prongay** 17:20 | **real** 18:16 | **reported** 1:16 | 31:21 32:16 33:11 |
| **properly** 46:13,25 | **really** 13:3 15:24 | **reporter** 49:1,4 | 33:15,16,24 34:1,2 |
| **proposal** 42:11 | 18:18 19:25 31:5 | **reports** 14:7,8,11 | 36:16 37:24 42:25 |
| **propose** 31:16 | 31:8 34:22 35:8 | 14:12 | 43:6 46:3,16 47:5 |
| **pull** 16:11 | 35:13,15 36:8 | **represent** 36:16 | **risk** 16:3 37:17 |
| **pulling** 34:21 | **reason** 32:13 | **representative** | **road** 2:18 |
| **purchaser** 2:3 | **reasonable** 35:11 | 42:7,13 | **robert** 5:5 |
| 13:9,12 | **reasons** 24:21 | **request** 24:13 27:3 | **role** 43:24 44:4,5 |
| **purchasing** 13:16 | **recall** 32:4 33:23 | 42:10,19,19,21 | 45:10 46:6 |
| **pushing** 16:25 | 40:24 | **requests** 43:16 | **rolled** 16:7 |
| 17:6,13,14 | **receipts** 42:8,14 | **required** 40:11 | **room** 22:4 38:15 |
| **put** 16:22 18:5 | **receivable** 38:19 | **resellers** 13:15 | 43:19 |
| 23:16 25:20 33:13 | **recollection** 30:13 | **respect** 47:20,21 | **rooms** 38:15 |
| 34:25 35:3 37:17 | **recommend** 42:5 | **respectfully** 19:8 | **routinely** 44:13,22 |
| 38:2,18,20,25 | **recommending** | 22:16 24:13 | **ruled** 41:4 |
| **putting** 17:10 | 18:20 | **respond** 43:22 | **ruling** 43:23 |
| | **record** 10:10,11 | **responds** 32:11 | **run** 46:3,13 |
| **q** | 12:16 24:14 25:8 | **response** 33:14 | |
| **qianwei** 46:11 | 25:10,11,18 27:25 | **responsibility** | **s** |
| **question** 24:17 | 28:19 32:25 34:11 | 20:19 | **s** 2:1 3:1 4:1 5:1 |
| 27:1,9 30:10 | 35:18 37:5 40:15 | **responsible** 21:8 | 6:1 7:1,17 8:1 |

Veritext Legal Solutions
866 299-5127

[sales - suggested]

**sales**  15:23
**sampling**  42:7,13
**san**  1:11 2:9 3:8,18
  4:18 5:7,16 6:17
  7:8 9:1
**sansome**  3:17
**saying**  20:21 40:18
  43:11 44:3
**says**  41:7,10 42:4
  48:15
**sc**  1:5
**scarpulla**  3:4,5
  20:5,6,24 21:1
  23:1,4,6 26:6
  27:19,20 28:2,4,11
  28:12,22 29:6,13
  31:10,12,17,20,22
  32:17 33:8,15,19
  33:19 34:5,20
  35:5,19,20,23 36:1
  39:5,6 40:7,22
  41:6,14,15,24
  42:25 43:4,7 46:6
  46:15 47:24 48:2
**scarpulla's**  32:23
**scarpullalaw.com**
  3:10,11
**scope**  11:1
**score**  46:11
**scraps**  26:13
**search**  23:18
**second**  42:1,4
**secondly**  16:9
**secret**  35:13
**see**  18:14 21:23
  27:24 34:22 36:11
  39:18 43:5,7
**seeing**  14:14
**selling**  13:16
**send**  30:2 38:17

**sense**  13:7
**sentiment**  37:25
**separate**  14:24
  17:12,12 39:17
**separated**  21:14
**september**  39:22
**series**  25:7
**serious**  38:5,6,7
**sessions**  34:4
**set**  25:24
**sets**  11:8
**setting**  15:3
**settle**  45:8
**settlement**  11:22
  17:7,14 30:23,25
  31:1 45:6,7,14,19
  47:11
**settlements**  11:13
  11:21 37:3,10
  38:4
**seven**  26:1
**sharing**  32:5,6
  35:13
**sheets**  21:10,11,22
  22:15,23 39:8
**shorthand**  49:3,5
**shot**  41:17
**show**  12:11 33:9
  40:20
**showing**  40:15
**shows**  40:15
**side**  16:22 17:10
**signature**  49:21
**significant**  13:11
  21:2,3 31:8 43:24
  44:25
**simple**  41:13
**simply**  45:11
**single**  11:10 16:5
  44:12

**sir**  10:18
**sit**  12:5
**sitting**  21:7 33:24
  33:24 34:1,2
**situation**  45:13,18
**six**  26:1 39:1
**skill**  19:20
**sleeves**  16:7
**sloughing**  12:7
**slowly**  9:6
**smith**  34:4
**software**  23:17
**somebody**  22:16
  22:18 23:20 30:10
  34:25
**sorry**  23:2 25:17
  30:12 31:14 48:2
**speak**  33:13
**speaker**  44:1
**speaking**  29:22
**speaks**  17:15
**special**  1:10 10:19
  33:25 35:18 42:5
  42:10
**specific**  12:3 20:18
  21:13 23:19
**specifically**  43:4
**speed**  11:16
**spent**  14:8 23:10
  34:18 35:11
**split**  26:1
**spoke**  44:13
**spot**  42:7
**spread**  36:3,5,11
  36:11,12,12
**sprung**  35:16
**square**  8:6
**staffed**  46:24
**staffing**  46:8
**stage**  35:8

**stand**  30:3,9
**start**  9:4 10:1,5,20
  10:21 11:11
**state**  13:18,23,25
  14:1
**stated**  49:6
**statement**  12:15
**statements**  35:6,9
**states**  1:1 13:10
**stewart**  6:14,15
  9:11,12
**stick**  34:22
**strategy**  44:18
  45:7,7
**straus**  4:4,10 9:19
  9:20 19:24 20:14
  30:20
**street**  2:8 3:7,17
  4:17 5:6,15 6:16
  7:7,17
**strike**  47:22
**strong**  19:1
**stuff**  21:6
**subcontract**  44:23
**subcontracting**
  12:7
**submit**  19:8
**submitted**  26:11
  26:25 32:6,9 42:2
**subsistence**  39:12
**substantial**  10:10
  10:11 13:12,15
  30:24
**substantiate**  35:5
**substantive**  20:12
  20:13 22:2 31:6
  43:23 44:4 45:10
**sufficient**  46:1
**suggest**  22:16
**suggested**  24:15

[suggestion - voluntarily]

suggestion  15:5,20
suite   2:18 5:6,15
   6:6,16 8:7
summarizing
   10:22
summary   10:20
   22:6,8
superior   19:20
supervision   49:8
supply   40:12
support   10:15
   11:13 36:10
sure   15:9
sworn   28:24 35:4
sylvie   4:16
sylviekern   4:20
system   23:17

**t**

t   1:16 5:14 49:3,22
table   19:12
take   43:14 46:6
   48:13
taken   19:3 49:5
talk   15:3 25:9
   35:23
talking   16:23
   20:17,18 23:13
   26:7 35:19 41:6
   41:21
talks   21:23,24,24
task   14:24 21:13
tasked   12:2
tatp.com   2:12
tbattin   4:10
team   38:10 45:4
teams   46:17
tehama   7:7
telephone   2:15
   3:14 4:3 6:3,13
   7:4,14 8:3,13 9:5
   13:24 26:14 44:2

48:3
tell   14:9 21:10,13
   24:14 30:6
telling   12:16 17:3
   17:5 30:1 36:23
tells   28:5
terms   26:8
terrell   17:20
testify   30:9
thank   19:11 36:24
   43:21 48:15,18
thanks   9:17
theresa   3:15,16
   10:3
thereto   40:1
thin   34:21
thing   11:10 14:20
   16:5 28:23 29:13
   30:22 35:2 36:16
   42:23 45:5 48:1
things   10:13 12:7
   12:7 17:14 23:16
   23:23 27:11 31:10
   34:21,22 38:11
   43:10 46:7,16
think   10:11,24
   11:5 13:3 15:12
   15:24,25 17:2,5,15
   18:18 19:4 21:1,2
   21:3,4 22:8,11,12
   23:22 24:10 26:6
   28:23 29:11 30:17
   31:3 32:8 35:5,7
   36:5,10,22 38:12
   41:15 43:5 45:21
   46:13,16,20 47:9
thought   16:15,17
   16:20 19:1 25:19
   29:8 31:18
thousand   38:24

three   20:19 28:14
   29:18 45:14
throwing   34:22
tigar   13:6 25:9
   41:4
tim   9:19
time   10:22 12:20
   12:22 14:2,8 15:7
   16:2 21:10,11,22
   22:15,23 23:7
   25:4,4,15,21,25
   26:2 29:14 33:5
   34:9,18 37:12
   38:10,17 40:16
   41:24,25 44:11,13
   46:5,14 47:7 49:5
timekeepers   46:5
timothy   4:6
tmoore   3:20
today   27:9 35:16
   39:16 48:9
today's   47:21
told   24:7 32:18
   41:11
top   14:18 36:15
total   23:11 38:25
track   11:23 17:12
translate   23:25
translated   23:22
   23:23
translating   23:20
   23:24
travel   39:12
trenches   13:4
trial   29:24 38:6,10
   38:14 39:4 46:14
   46:17
true   45:11
truly   27:24
trump   2:5,5 20:21
   30:11 39:7 40:11

40:20
try   13:7 17:1,17
trying   17:24 19:6
tube   1:4
tubes   13:16
turn   33:10
turned   32:19
two   14:2 16:10
   25:1 28:14 31:6
   34:24 36:7 37:7
   45:13
type   47:2
typewriting   49:7

**u**

unbeknownst
   47:19
underlying   19:9
   39:8 40:10,12
   43:5
understand   25:7
   27:21
understanding
   14:15
understands   13:4
unfortunately
   10:21
union   2:8
united   1:1 45:17
university   4:7
urias   6:4
utilized   12:19

**v**

va   4:8
various   25:20 26:4
view   17:11 34:15
voelbel   5:13
voluntarily   41:3

**[wait - zelle.com]**

| w |
|---|
| **wait** 15:11 |
| **wake** 11:15 |
| **walk** 27:5 |
| **walker** 34:3 |
| **wall** 34:23 |
| **walnut** 2:19 |
| **want** 10:8 16:7 |
| 18:19 19:4 20:25 |
| 27:11 28:21 43:22 |
| 43:25 47:2,25 |
| **wanted** 44:6 |
| **wants** 26:18 |
| **war** 38:15 |
| **ward** 6:4 |
| **washington** 13:24 |
| 24:2 |
| **way** 15:13 37:16 |
| 38:3 44:21 45:23 |
| 46:4,19 47:5 |
| 49:11 |
| **we've** 11:25 12:4,9 |
| 47:11 |
| **wednesday** 31:15 |
| 47:17,20 48:10,12 |
| **weekdays** 44:12 |
| **weekends** 44:12 |
| **welcome** 10:1 |
| **west** 6:16 |
| **westlaw** 23:1,4 |
| **whack** 20:4 37:16 |
| **whatsoever** 39:19 |
| **wide** 36:14 |
| **wilkin** 29:8 |
| **wilkins** 22:18 |
| **winding** 47:22 |
| **witness** 21:6 |
| **woman** 30:2 |
| **woodward** 8:7 |
| **word** 18:2 |

| **words** 23:19 |
|---|
| **work** 11:21,24 |
| 12:19,24 14:10 |
| 15:19 16:8 19:22 |
| 19:25 20:12,13,13 |
| 20:16,23 22:2 |
| 24:23,25 26:21 |
| 28:17 29:20,22 |
| 31:6,7,9 35:7 36:9 |
| 38:16 44:8,24 |
| 46:18 47:15 |
| **worked** 12:23 |
| 16:14 24:3 44:11 |
| 44:24 |
| **working** 26:6 |
| 35:24,25 45:24 |
| **worksheets** 26:21 |
| **writing** 45:9 |
| **written** 33:13,14 |
| **wrong** 35:21 39:10 |

| y |
|---|
| **yahoo.com** 4:20 |
| **yeah** 37:6 48:13 |
| **years** 11:7 12:1 |
| 34:24 45:22 |

| z |
|---|
| **zahid** 22:3 30:14 |
| 32:20 46:11 |
| **zelle** 5:13 20:14 |
| 21:8 24:18,19,22 |
| 25:4 28:15,17,18 |
| 29:22 30:15,20 |
| 32:1,1,13 33:6,13 |
| 46:5,9 |
| **zelle.com** 5:18 |

Veritext Legal Solutions
866 299-5127