EXHIBIT 5

1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3

4     IN RE: CATHODE RAY TUBE (CRT) ,

      ANTITRUST LITIGATION                    Master File No.

5                                             CV-07-5944 SC

6                                             MDL No. 1917

7

8          _____

9

10        HEARING BEFORE SPECIAL MASTER MARTIN QUINN, JAMS

11                    San Francisco, California

12                        October 3, 2016

13                    1:29 P.M. - 2:35 P.M.

14

15

16    Reported by:

      KENNETH T. BRILL

17    CSR NO. 12797

18

19    Job No. 2455107-A

20

21

22

23

24

25    PAGES 1 - 53

                                                      Page 1

```
 1    A P P E A R A N C E S:

 2

 3    For the Indirect Purchaser Plaintiffs:

 4

 5         TRUMP, ALIOTO, TRUMP & PRESCOTT

 6         BY:    MARIO ALIOTO, ESQUIRE

 7                LAUREN CLARE CAPURRO, ESQUIRE

 8         2280 Union Street

 9         San Francisco, CA 94123

10         (415) 563-7200

11         jmalioto@aliotolaw.com

12         laurenrussell@tatp.com

13

14

15         BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER

16         BY:   DANIEL E. BIRKHAEUSER, ESQUIRE

17         2125 Oak Grove Road, Suite 120

18         Walnut Creek, CA 94598

19         (925) 945-0200

20         dbirkhaeuser@bramsonplutzik.com

21

22

23

24

25
```

Page 2

```
1    A P P E A R A N C E S:  (continued)

2

3         via telephone:

4         LAW OFFICES OF FRANCIS O. SCARPULLA

5         BY:  FRANCIS O. SCARPULLA, ESQUIRE

6              PATRICK B. CLAYTON, ESQUIRE

7         456 Montgomery Street, 17th Floor

8         San Francisco, CA  94104

9         (415) 693-0700

10        fos@scarpullalaw.com

11        pbc@scarpullalaw.com

12

13

14        via telephone:

15        LAW OFFICES OF THERESA D. MOORE

16        BY:  THERESA D. MOORE, ESQUIRE

17        One Sansome Street, 35th Floor

18        San Francisco, CA  94104

19        (415) 434-8900

20        tmoore@aliotolaw.com

21

22

23

24

25
```

Page 3

```
 1   A P P E A R A N C E S: (continued)

 2

 3        via telephone:

 4        STRAUS & BOIES, LLP

 5        BY:  NATHAN CIHLAR, ESQUIRE

 6             TIMOTHY BATTIN, ESQUIRE

 7        4041 University Drive, Fifth Floor

 8        Fairfax, VA  22030

 9        (703) 764-8700

10        tbattin@straus-boies.com

11

12

13

14        via telephone:

15        LAW OFFICE OF JOSEPH M. PATANE

16        BY:  JOSEPH M. PATANE, ESQUIRE

17        2280 Union Street

18        San Francisco, CA 94123

19        (415)563-7200

20        jpatane@tatp.com

21

22

23

24

25
```

Page 4

```
 1    A P P E A R A N C E S: (continued)

 2

 3        KAG LAW GROUP

 4        BY: SYLVIE K. KERN, ESQUIRE

 5        2532 Lake Street

 6        San Francisco, CA 94121

 7        (415) 221-5763

 8        sylviekern@yahoo.com

 9

10

11        KIRBY MCINERNEY LLP

12        BY:  ROBERT J. GRALEWSKI, JR., ESQUIRE

13              DANIEL HUME, ESQUIRE (via telephone)

14        600 B Street, Suite 1900

15        San Diego, CA  92101

16        (212) 371-6600

17        bgralewski@kmllp.com

18        dhume@kmllp.com

19

20

21

22

23

24

25
```

Page 5

```
1    A P P E A R A N C E S: (continued)

2

3         ZELLE HOFMANN VOELBEL & MASON LLP

4         BY:  CHRISTOPHER T. MICHELETTI, ESQUIRE

5         44 Montgomery Street, Suite 3400

6         San Francisco, CA  94104

7         (215) 567-6565

8         cmicheletti@zelle.com

9

10

11        via telephone:

12        FREEDMAN BOYD HOLLANDER GOLDBERG URIAS & WARD P.A.

13        BY:  JOSEPH GOLDBERG, ESQUIRE

14        20 First Plaza N.W., Suite 700

15        Albuquerque, NM 87102

16        (505) 244-7520

17        JG@FBDLAW.com

18

19

20

21

22

23

24

25

                                              Page 6
```

```
 1   A P P E A R A N C E S:

 2

 3

 4        via telephone:

 5        HULETT HARPER STEWART LLP

 6        BY:  DENNIS STEWART, ESQUIRE

 7        550 West C Street, Suite 1500

 8        San Diego, CA  92101

 9        (619) 338-1133

10        dennis@hulettharper.com

11

12

13

14        via telephone:

15        COOPER & KIRKHAM

16        BY:  JOSEF D. COOPER, ESQUIRE

17        357 Tehama Street, 2nd Floor

18        San Francisco, CA  94103

19        (415) 788-3030

20        jdc@coopkirk.com

21

22

23

24

25
```

Page 7

```
 1    A P P E A R A N C E S:

 2

 3         via telephone:

 4         FINE, KAPLAN AND BLACK, R.P.C.

 5         BY:  GERARD A. DEVER, ESQUIRE

 6         One S. Broad Street, 23rd Floor

 7         Philadelphia, PA  19107

 8         (215) 567-6565

 9         gdever@finekaplan.com

10

11

12

13    Also Present:  Marlo Cohen, via telephone

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 8

1          San Francisco, California, Monday October 3, 2016

2                              1:29 p.m.

3                              - - -

4          THE COURT:  Why don't you -- do you want to

5     ask them for their appearances.

6          MR. GOLDBERG:  Mr. Quinn, this is Joe Goldberg

7     in Albuquerque, New Mexico.

8          THE COURT:  Hello, Joe, how are you?

9          MR. GOLDBERG:  I'm fine, Mr. Quinn, how are

10    you?

11         MR. TYLER:  This is Nate Cihlar and Timothy

12    Battin from Straus Bois.

13         MR. SCARPULLA:  Fran Scarpulla and Patrick

14    Clayton.

15         MR. COOPER:  This is Josef Cooper.

16         MR. STEWART:  Good afternoon.  This is Dennis

17    Stewart from Hulett Harper Stewart in San Diego.

18         MR. BIRKHAEUSER:  Dan Birkhaeuser from

19    Bramson, Plutzik, Mahler & Birkhaeuser.

20         MS. MOORE:  Theresa Moore.

21         THE COURT:  Okay.  Let me list the names of

22    the people who I got, and then we'll see who I left out.

23    Mr. Patane, Marlo Cohen, my clerk on this case, Gerry

24    something from Fine Kaplan.

25         MR. DEVER:  Yes, Gerry Dever, thank you.

Page 9

1          THE COURT:   Thanks.   Joe Goldberg.   I missed
2     the two names from Straus & Boies.   Do you want to give
3     me those, Nate something?
4          MR. CIHLAR:   Yes, Nate Cihlar, C-I-H-L-A-R,
5     and Timothy Battin.
6          THE COURT:   Okay.   Mr. Scarpula, Mr. Cooper,
7     Mr. Stewart, Mr. Birkhauser and Ms. Moore.   Anyone else?
8          MR. SCARPULA:   As well as Patrick Clayton from
9     my office, and it's Fran Scarpula.
10          MR. GRALEWSKI:   Mr. Quinn, Dan Hume is on the
11     phone as well.
12          THE COURT:   Okay.   Thank you.   And here in the
13     courtroom we have Mr. Gralewski, Mr. Alioto,
14     Ms. Capurro, Ms. Kern, and Mr. Micheletti.
15          So we will begin the hearing today with a
16     presentation from Mr. Gralewski.   If there's anything
17     you'd like to add to what you've submitted in writing.
18          MR. GRALEWSKI:   Yes, thank you, Special Master
19     Quinn, and good afternoon on behalf of my partner, Dan
20     Hume, on the phone and myself, we'd like to thank you
21     for scheduling the hearing on our objection.
22          I have a request to begin with.   Your order
23     number 4 permits lead counsel only to respond to any
24     other statements that firms may make today, and what I'd
25     like to do is request no more than five minutes to the

Page 10

1  extent any of the long list of people speaks with

2  respect to our objection.

3          THE COURT:  What do you mean, you request five

4  minutes at the end?

5          MR. GRALEWSKI:  Yeah, the way I read your

6  order number 4 was that to the extent Mr. Micheletti,

7  for example, speaks after Mr. Alioto, or Ms. Capurro or

8  Ms. Kern, and I speak, I wouldn't be permitted to

9  respond and I'm simply requesting no more than five

10 minutes.

11         THE COURT:  You'll have an opportunity to

12 respond.

13         MR. GRALEWSKI:  Okay.  Very good.  Thank you,

14 thank you.

15         And then the other -- the other preliminary

16 thing I wanted to note, as we mention in our response, I

17 have several e-mails that we believe substantiate the

18 point we've made in our papers and demonstrate the --

19 the way in which lead counsel relied on our firm

20 throughout the case.

21         We didn't put those in or seek to put them in

22 because of the sensitive work product nature.  I may

23 rely on them in response and we certainly consent to the

24 special master reviewing them if that is something the

25 special master wants to do.  I have copies here today

Page 11

1    for the special master and Mr. Alioto, if necessary.

2              THE COURT: Does anyone object to that, if --

3    does anyone object to, I guess, what Mr. Gralewski is

4    asking to submit those under seal, they can be made

5    available to any counsel who requested them.

6              MR. ALIOTO: We certainly have no objection to

7    submitting things under seal pursuant to the rules. You

8    know, this is going to be reviewed by Judge Tigar, and I

9    don't want to have any type of, you know, irregularity

10   in these proceedings.

11             I think to this point there were some filings

12   made, by I believe, by Mr. Shea (ph) or Mr. Berry (ph).

13   I don't know what the status of those are, they were --

14   they were submitted, they were redacted from the record

15   and now they're in the custody of the special master. I

16   don't want to be a real stickler on this, but if people

17   want to put something in the record and it's to be

18   confidential, it ought to be done in the manner

19   prescribed by the rules; otherwise, we're going to have

20   all of these materials before the special master, you

21   may or may not rely on them, they won't be in the

22   record, even under seal, and I think I would like to

23   bring these proceedings to a close one of these days,

24   and the fewer issues we have, the better for us, Your

25   Honor.

Veritext Legal Solutions
866 299-5127

1          MR. HUME:  Your Honor, this is Dan Hume, I

2     won't be speaking much, but just on this one point, our

3     intention really was, you know, to the extent you felt

4     you wanted to see something, you know, we're happy to

5     have -- to do that in sort of an in camera fashion.  I

6     agree with Mr. Alioto, of course, that if things are

7     going to be put in the record and they need to be done

8     under seal, that we have to follow the proper procedures

9     for that.

10          I think all Mr. Gralewski was referring to was

11     to the extent you know, you felt you need to see

12     something because you were concerned about some factual

13     assertion, you know, that's what this is for, but I

14     don't think we otherwise were looking to put e-mails out

15     there.

16          THE COURT:  All right.  So if I asked to see

17     something, we'll make arrangements that it be filed

18     properly under seal.  Go ahead, Mr. Gralewski.

19          MR. GRALEWSKI:  Thank you.  I want to do three

20     things with my 15 minutes.  I want to first respond to

21     any questions you have.  I want to summarize our

22     objection, I want to amplify five things briefly in our

23     papers.  So before launching into a summary of our

24     objection, if you have any questions now, I'm happy to

25     answer them, I can also do that as things come up as

Page 13

1    well.

2              THE COURT:  All right.  I have some

3    questions -- let's see here.

4              Okay.  Just an arithmetic question, does your

5    current lodestar as listed by Mr. Alioto in his proposed

6    allocation, does that reflect billing your Japanese

7    translators at $575 an hour, or reduced rate of $400 an

8    hour?

9              MR. GRALEWSKI:  575.

10             THE COURT:  So although Mr. Alioto talks about

11   reducing them to 400, that has never actually been done?

12             MR. GRALEWSKI:  I don't believe Mr. Alioto

13   takes the position that our Japanese lawyers should have

14   their rate reduced to 400.  There was a cap of 400 for

15   foreign language reviewers.  I think that we're of the

16   same mind that -- that our two Japanese lawyers were not

17   subject to the cap.

18             I believe the issue that Mr. Alioto has is

19   that the rate that our lawyers went in at was -- was

20   higher than, for example, Ms. Kim Helms at Straus &

21   Boies, so in connection with allocating a fee to us,

22   they equalized that.  And we don't believe that was

23   appropriate given, for example, that Sawa Nagano, who is

24   our current Japanese lawyer, who is a 14-year lawyer,

25   former associate at MoFo, you know, she's really an

Page 14

1   exceptional lawyer.  Ms. Nagano, for example, at 575 as

2   a 14-year lawyer is $5 less than Ms. Capurro, who is a

3   12-year lawyer.

4           And so we feel that the rates of our Japanese

5   lawyers, particularly given the role that they played in

6   the case, is appropriate.

7           THE COURT:  So there was no actual arithmetic

8   adjustment, it was just a factor that lead counsel took

9   into effect in setting his multipliers?

10          MR. GRALEWSKI:  Of course, that's -- that -- I

11  believe that's correct.

12          THE COURT:  Okay.

13          MR. GRALEWSKI:  And to the extent I'm not

14  correct, Mr. Alioto can correct us.

15          THE COURT:  Okay.  So I think you told me that

16  you had had a large role in the Samsung discovery, you

17  first chaired all the Samsung depositions after the

18  direct purchaser plaintiffs settled.

19          Mr. Alioto says that -- you know, notes that

20  you came in the case in 2013, or at least you didn't get

21  involved in the Samsung discovery effort until 2013,

22  that Straus & Boies had led it for the three years prior

23  to that, and he characterizes the Samsung depos and the

24  discovery generally as a team effort in which you did a

25  good job, but it wasn't a solo performance.  And that he

Page 15

1    thinks you're somewhat gilding the lily as to your role

2    in the Samsung discovery.

3              Do you want to comment on that?

4              MR. GRALEWSKI:  I can.  Just to make sure the

5    record is correct, and I think you, Special Master

6    Quinn, noted this.  Kirby McInerney came into the case

7    in 2010, well before the class certification, we did get

8    involved in the Samsung/SDI discovery effort after it

9    was underway.  The -- the depositions were absolutely a

10   team effort.  I think that -- I think that the way the

11   case was run overall was a team effort and I think the

12   special master noted that in your report and

13   recommendation, recommending the settlements be approved

14   and the fees be awarded.

15             We did work together, Mr. Cihlar, Ms. Kim

16   Helms, Ms. Capurro, we worked together selecting

17   exhibits, we worked together on strategy, we decided

18   which documents to get certified translations of.  I

19   guess I will run the risk of being like -- speaking

20   highly of myself which I don't like to do, but when it

21   came to --

22             THE COURT:  Got to do it today.

23             MR. GRALEWSKI:  I know.

24             THE COURT:  Nobody else is going to do it.

25             MR. GRALEWSKI:  When it came to the outlines,

Veritext Legal Solutions
866 299-5127

1    when it came to the outlines of those depositions, it

2    was not a team effort.  I painstakingly drafted each and

3    every one of the deposition outlines that I took.  They

4    were exceptional.  They were detailed.  I have copies of

5    them.  And I can present them to the special master if

6    the special master wants them.

7           I wrote out all of my questions and I think

8    that those outlines, after the team effort of selecting

9    the documents and strategizing on how to approach the

10   depositions, led to the results that we achieved in

11   those depositions.

12          THE COURT:  Okay.

13          MR. GRALEWSKI:  And I will note that both lead

14   counsel and members of the trial team in unsolicited

15   e-mails in real time highly -- was highly complimentary

16   of my questioning of the Samsung SDI deponents.

17          THE COURT:  So we're really talking here about

18   a difference of degree.  I mean, your firm got the sixth

19   highest multiplier in the proposed allocations.  So

20   there's no suggestion by anyone that you were not

21   important, that you didn't do a good job.

22          So I'll just note that.

23          MR. GRALEWSKI:  Sure.

24          THE COURT:  Mr. Alioto says, you know, notes

25   that you, compared to other firms, had no responsibility

Page 17

1   for drafting any of the major briefs in the case and

2   that you drafted one motion in limine out of 64.  True,

3   not true, comments on that.

4           MR. GRALEWSKI:  I'll make some comments and

5   this is one of the areas that I was prepared to address

6   certainly.  It is true that Kirby McInerney was more

7   heavily involved in other aspects of the case and I

8   think this was noted in the papers filed in support of

9   the settlement, but we did have a hand in important

10  briefs.

11          For example, the documents presented to the

12  special master in connection with class certification,

13  we were responsible for a large appendix attached to

14  that brief that demonstrated the class representatives'

15  adequacy.

16          We also participated in the objector section

17  of the brief in support of the settlement.  We drafted,

18  along with Straus & Boies, a motion to compel a Samsung

19  SDI deponent.  We drafted in addition to the motion in

20  limine, I had responsibility along with Mr. Stewart,

21  who's on the phone, for a motion to strike that Toshiba

22  filed related to the class representatives who Toshiba

23  claimed lack proof of purchase.  Along with Mr. Cihlar,

24  I was also responsible for a motion to strike some

25  deposition errata that sought to unwind some great

Page 18

1   testimony that we received in the Samsung depositions.

2          And I did have full responsibility for a lot

3   of briefing opposing Mr. Bonsignore's improper efforts

4   to submit evidence to undermine the settlement.  That

5   was not purely objector discovery stuff.  I think the

6   special master is aware of all of those briefs.

7          Were these important briefs?  They weren't

8   glamorous, but I think they were important.  They were

9   part of the groundwork campaign, if you will, but we

10  were involved in briefing.  And -- and again, it wasn't

11  the main aspect of the case for us.

12         THE COURT:  Okay.  Mr. Alioto notes that your

13  Japanese document reviewers, in particular, is it

14  Ms. Nagano?

15         MR. GRALEWSKI:  Originally it was Akiko

16  Kikuchi.

17         THE COURT:  Okay.

18         MR. GRALEWSKI:  She was involved in the case

19  for the majority of the case, and then she left the firm

20  and then Sawa Nagano became our Japanese lawyer.

21         THE COURT:  And he says they reviewed and

22  translated documents, did so competently, skillfully,

23  but they did not -- characterizing them as leading or

24  supervising anyone in connection with the Japanese

25  language effort is not accurate, that Straus & Boies led

                                              Page 19

1    the whole foreign language part of the case, and your

2    people were, you know, excellent at what they did, but

3    were not leaders.

4            MR. GRALEWSKI:  And I -- may I comment?

5            THE COURT:  You may.

6            MR. GRALEWSKI:  Okay.  So I'd like to refer

7    the special master to my declaration dated

8    September 23rd, 2016, which is attached as Exhibit A

9    to our response.  Paragraph 4 of that declaration.

10           THE COURT:  Yes.

11           MR. GRALEWSKI:  Okay.  Paragraph 4 of that

12   declaration I drafted after doing my due diligence with

13   respect to what exactly our Japanese lawyers did.  And

14   that paragraph summarizes what we believe is the most

15   accurate depiction of the leadership responsibilities

16   that are our Japanese lawyers were assigned.

17           THE COURT:  Okay.  So you're talking about

18   page 3, line 24, through page 4, line 10 of your

19   declaration.

20           MR. GRALEWSKI:  I -- no, that's not it.  I --

21   I don't believe that's it.  I filed so many

22   declarations, we may not be -- is the one you're looking

23   at dated September 23rd?

24           THE COURT:  September 23rd, 2015.

25           MR. GRALEWSKI:  Yeah, it's amazing time flies.

Veritext Legal Solutions
866 299-5127

```
 1      That was my original declaration.
 2                  THE COURT:  Oh.
 3                  MR. GRALEWSKI:  In support of the settlement.
 4      In that declaration we talked about what our Japanese
 5      lawyers did, and I stand by that.
 6                  THE COURT:  So are you saying there's a
 7      subsequent declaration I should look at?
 8                  MR. GRALEWSKI:  Yes.
 9                  THE COURT:  Could you get me the docket number
10      of that?
11                  MR. GRALEWSKI:  I can tell you right now.
12                  THE COURT:  Okay.
13                  MR. GRALEWSKI:  It's docket number 4875-1.
14      And that is --
15                  THE COURT:  So that's the part -- that's the
16      Exhibit A to your current objection?
17                  MR. GRALEWSKI:  It's Exhibit A to my response
18      to the omnibus --
19                  THE COURT:  Okay.
20                  MR. GRALEWSKI:  -- document.
21                  THE COURT:  Okay.
22                  MR. GRALEWSKI:  And paragraph 4 lays out
23      exactly what the leadership responsibilities of
24      Ms. Kikuchi and Ms. Nagano were.
25                  THE COURT:  All right.  I'll look at that.  So
```

Page 21

1    why don't you go ahead, I don't want to take all your

2    time.

3               MR. GRALEWSKI:  Okay.  So I'm going to

4    summarize our argument and then highlight five points

5    and then I'll be done.

6               My opinion about lead counsel or the way the

7    case was litigated has not changed since I submitted the

8    declaration that you were just looking at.  I think that

9    lead counsel did a phenomenal job, as did the firms we

10   had the pleasure to work with, including Zelle.  Our

11   objection is not based on the quality of anyone's work.

12   It's limited to the spread in the overall fee between

13   lead counsel and my firm.

14               As we mentioned in our opening papers,

15   regardless of how exceptional lead counsel was, we think

16   that allocating 29 percent of the overall fee to itself

17   is too large of a gap between lead counsel and our firm

18   as well as certain other firms, frankly.

19               I know that the Special Master talks about

20   degrees.  We are talking about in my firm's case, for

21   example, between 3 and $6 million, which is money.

22               There's legal precedent for our objection.

23   And I'm going to refer the Special Master to two -- one

24   opinion and one brief.  We cite the 1998 Vitamins

25   opinion in our papers.  It's cited at page 2 of our

Page 22

1    opening brief in support of our objection.

2            By the way, I did document review on that

3    case, it was one of the first cases I worked on,

4    Mr. Stewart assigned me to that case.

5            In this opinion that we cite in the brief one

6    of the plaintiff's firms objected to the fee allocation.

7    And the court ordered lead counsel in that case to pay a

8    portion of the fee that it reserved for itself.  In that

9    case there was $123 million fee, which is similar to the

10   fee here, and in that case lead counsel reserved

11   20 percent of the entire fee for itself.  And there the

12   court ordered lead counsel basically to reduce its share

13   of what it had reserved for itself.  I would note that

14   the objecting firm in that case didn't do nearly the

15   level of work that KM did in this case.

16           The Vitamins court talked about how -- and we

17   believe the same principle should apply here, the

18   Vitamin court talked about how allocation means

19   proportion.  And the vital question is how does the

20   share that lead counsel is taking compare to the shares

21   others are getting.  And the court noted that lead

22   counsel must make a fair allocation, even if that

23   allocation diminishes the share lead counsel reserves

24   for itself.

25           We think that that is an analysis the court

1    should -- or the Special Master should look at here,

2    given that this is a case where Trump Alioto, who is a

3    very small firm, with all due respect to them, they're a

4    two or three lawyer firm and they subcontracted large

5    chunks of lead counsel kind of work out to my firm and

6    others.  And we think that on the facts of this case,

7    the spread is too big.

8            Then there are the Cipro cases one and two

9    that Mr. Scarpulla brought to the special master's

10    attention a few days ago.  And apparently in the Cipro

11    cases, just 11 days ago, Mr. Alioto filed papers seeking

12    a 3.08 multiplier on his firm's time which, according to

13    Mr. Scarpulla anyway, is a multiplier essentially the

14    same as colead counsel on that case.

15            It also appears that the level of work that

16    Trump Alioto did in the Cipro cases doesn't approach the

17    overall level of work that Kirby did in the CRT case.

18    So we think we're on solid footing with respect to what

19    we're asking for, based on Trump Alioto's own arguments

20    in another case.

21            I'm going to finish up by amplifying the five

22    things I wanted to talk about, and we may actually have

23    addressed some of these already in your questions.  I

24    want to talk about the quantity and quality of Kirby's

25    work.  I want to talk about our Japanese lawyers to the

Veritext Legal Solutions
866 299-5127

1  extent we already haven't addressed some of the things I

2  wanted to highlight.  I want to talk about -- we talked

3  about our briefing or lack thereof, according to Trump

4  Alioto.  I want to talk about the implications that my

5  firm wasn't involved in the summary judgment effort,

6  which is not true.  I want to talk about the assertion

7  that we miscategorized some of our time, and I want to

8  talk about assessments.

9           THE COURT:  Okay.  Fast.

10          MR. GRALEWSKI:  Quantity and quality of work,

11  we agree on three things.  Lead counsel never asserts

12  that any of our time was unauthorized.  They acknowledge

13  on page 30 of the brief that we're one of the firms in

14  the core group and it acknowledges many times we did

15  very good work.

16          I'm going to skip the Japanese lawyers point

17  because I think we've covered that and I've referred the

18  special master to my declaration.

19          With respect to summary judgment, lead counsel

20  emphatically states that we weren't involved in that

21  effort.  It's true that we didn't draft -- have drafting

22  responsibility for any of the motions and there's good

23  reason for that.  In I believe it was November of 2014

24  Mr. Cihlar and I were responsible for the motion to

25  compel the attendance of J. Hasson (ph) after the close

Page 25

1    of discovery.  He was one of the Samsung SDI deponents

2    that I first chaired.

3              That deposition was scheduled for

4    December 2nd through 4th of 2014, drafts of the

5    summary judgment papers were due December 8th.  I was

6    assigned to work with Mr. Cihlar on an opposition to the

7    motion for summary judgment regarding antitrust

8    standing.

9              Mr. Cihlar and I, as we did often throughout

10   the case, talked about having too much to do and not

11   enough time to do it in, so we agreed that I would

12   prepare for and take the Ahn (ph) deposition by myself

13   with the help of Ms. Kim Helms from his firm and he

14   would draft the opposition to the summary judgment

15   brief.

16             After the Ahn deposition was completed, I

17   reached out to Ms. Capurro, asked her if she needed help

18   with any of the other summary judgment briefs.  She

19   indicated to me that she was unhappy with the Fattiah

20   (ph) brief.  Apparently it was lacking in evidence.

21             I set about and provided her with evidence in

22   support of the opposition to summary judgment on the

23   Fattiah issues.

24             Our -- one of our lawyers, Will Harris, the

25   entire time was involved in the AGC impact issues with

Page 26

1    respect to summary judgment, and at the eleventh hour,

2    we all stepped in, my firm did, and got the Fattiah

3    brief on file on December 23rd, I believe it was.  So

4    I think is it a little disingenuous to suggest that we

5    weren't involved in the summary judgment effort.

6            The miscategorization issue, and these are the

7    last two things I'll talk about, miscategorization,

8    towards the back of the brief, the omnibus brief, lead

9    counsel suggests that we categorized deposition

10   preparation time as deposition preparation and not

11   document review.

12           That's not the case.  I was the one who raised

13   it.  I reached out to Ms. Capurro.  I asked how does

14   Mr. Alioto want this time categorized?  I was told

15   eventually how Mr. Alioto wanted it categorized and we

16   recategorized that time.

17           I want to stress that this was approximately a

18   month before there was ever any indication that there

19   was going to be a rate cap.  This had nothing to do with

20   the issue of avoiding a rate cap.  This was simply how

21   do we feel categorizing this time accurately reflects

22   what people did?

23           Once we were told what the rules were, we

24   followed the rules.  To the extent, and it appears that

25   lead counsel took this into consideration, it's an abuse

Page 27

1   of discretion under the Vitamins case.  The Vitamins

2   case holds that when lead counsel bases an allocation on

3   clearly erroneous facts, it's an abuse of discretion.

4          It's clearly erroneous here because I informed

5   Ms. Capurro in a July 22, 2015 e-mail that we were

6   following the categorization rules.

7          Lastly, assessments, the Special Master is

8   well aware that in the LCD case, the Special Master

9   reasoned that some multipliers were too high because

10  firms contributed too little or nothing or made their

11  contributions late.  And so there were downward

12  adjustments.  Lead counsel said that reasoning is not

13  applicable because the assessments were huge in LCD, so

14  you can't look at LCD in this case.

15         I just want to remind the special master that,

16  for example -- we disagree with that.  In the LCD case,

17  there was a firm Murray and Howard.  Their multiplier

18  was originally 2.07, the special master increased it to

19  2.25 because the special master concluded, one,

20  Mr. Howard had a leadership role in the case, and

21  Mr. Howard's firm had contributed $75,000 in

22  assessments.  And those numbers are in line with what

23  we're talking about in this case.

24         That's all I have for now.  I'll wait to

25  answer any more questions or respond.

Veritext Legal Solutions
866 299-5127

1          THE COURT:  Okay.  Thank you.  Mr. Alioto?

2          MR. ALIOTO:  Thank you, Special Master.  We

3    don't certainly have any criticism of Mr. Gralewski's

4    firm.  We don't take issue with any of the work that he

5    said he did.

6          But he -- the job we faced was to make an

7    allocation, a relative allocation with reference to his

8    work in comparison to all of the other firms.  Maybe I

9    ought to take just a step back because this is something

10   I'm going to say for this objector and it applies for

11   all of the objectors.

12         We spent the better part of three weeks on

13   this allocation.  We spoke to almost every firm, we

14   wanted all of the factors.  I think we had about 90,

15   95 percent of them, but I'll be quite candid, in

16   discussing these allocations with the firm, some other

17   factors came up.  So by the time we made our allocation,

18   we had -- we were fully informed.

19         And we were fully informed as to

20   Mr. Gralewski's firm, there's nothing that he's

21   presented here today that would have us change our mind

22   or change our allocation, and if there were, if there

23   were something, we would do it, we would change it.

24         We have no axe to grind here, no agenda.  This

25   is a case that didn't have factionalism or competing

                                              Page 29

1    groups.  This was a fairly -- with the exception of

2    these objectors that we're going to get to on the third

3    day, this was a fairly homogeneous group, and the

4    response to this allocation has been very, very

5    encouraging.  50 firms, and you're going to hear from a

6    handful of people, I think that's a tremendous

7    accomplishment to be able to get this kind of unanimity

8    with this many firms involved, and it's attributable to

9    the work we put in, to the feedback we got from the

10   firms, and to putting our own allocation out there as

11   well.  That was discussed as well.  We'll get to that

12   when it comes our turn to discuss our allocation.

13            The point is we came to this allocation to

14   Mr. Gralewski by considering all of the facts, all of

15   the evidence, and made a determination as to his

16   relative contribution vis-a-vis other firms.

17            Without making any criticism or -- or of any

18   challenge to what he said, he's in the right place, he's

19   right up there at the top, he actually has the second

20   highest lodestar in the case, so that adjustments to his

21   multiplier have a greater knock-on effect.  But there is

22   no basis to -- to increase, I think you're going to hear

23   from some other lawyers who probably -- probably think

24   that he's a little on the high side, but we're in a very

25   good position to make this assessment.  We know better

Page 30

1    than anyone who did what over the whole course of the

2    case, some of these objectors come in and make these

3    arguments about where they should be and they tell their

4    side of the story, well, they're not doing you any

5    service by doing that because they have to tell their

6    side of the story in relation to what was done by the

7    other firms in the case.

8            And I don't think anybody in this case -- in

9    fact, I know no firm in the case can make that kind of

10   relative assessment.  So we stand by that allocation.

11   As I say, we have no -- I'm not an advocate.  I mean, I

12   have no pride of authorship in this, this is an

13   allocation based on all of the factors, using our best

14   judgment considering all of the facts, all of the

15   evidence, all of the information that was made available

16   to us unbiased, without an agenda, in complete good

17   faith to rank that firm where we ranked them.  And if

18   you would like me to dig deep now and go into the actual

19   details, I can go into the details, but --

20           THE COURT:  If you have nothing to add to what

21   you've --

22           MR. ALIOTO:  Nothing to add.

23           THE COURT:  -- put in your very clear papers,

24   please don't do it.

25           MR. HASTINGS:  Yeah.  The brief digs into the

Page 31

1    details, this is the kind of the view from 50,000 feet,

2    but if you start moving that firm vis-a-vis, say the

3    Straus & Boies firm, there is a firm who was in it for

4    the long haul, since day one, three and a half years

5    before Mr. Gralewski's firm -- excuse me, they came a

6    little bit later, but they had roles, for example, like

7    the translation objections and the foreign language

8    documents.

9            They were completely in charge of that project

10   from the start of discovery until the conclusion of the

11   case.  Major undertaking, sure, other people were

12   involved, there's a lot of input.  It was a huge

13   undertaking in the case, but there's an example of a

14   long term important commitment by a firm.  They were

15   involved in strategy.  They were involved in settlement.

16   They were involved in a number of assignments over a

17   long period of time, relative to Mr. Gralewski, that was

18   more important.  That's how we made this assessment.  It

19   was made relative, relative contributions.

20           The facts are in the brief, you know, who did

21   what, how we weighed them, what were the various

22   considerations are, but in shorthand form here, that's

23   how we came to that allocation based on relative

24   contributions over the entire course of the case.

25           THE COURT:  Thank you.  I'm going to give

Page 32

1    other people a chance to talk, but let me ask you,

2    Mr. Gralewski, are you asking me to hopscotch you, you

3    know, over the four, five firms that are in front of

4    you, to change the order in which lead counsel has

5    ranked them, or are you just asking me to whack the

6    Trump Alioto allocations somewhat and apportion some of

7    it to you?

8            MR. GRALEWSKI:  Thank you.  We're not asking

9    to hopscotch over anybody.  As a matter of fact, our

10   position is that Straus & Boies is too low, and their

11   multiplier should be increased.  That's been our

12   position since we first started discussing this with

13   lead counsel.

14           Our position is that our multiplier and Straus

15   & Boies' multiplier should be the same.  The law offices

16   of Sylvie Kern, we believe, has a multiplier that's a

17   little too high given the fact that she didn't bring the

18   full complement of things to the case that Kirby did and

19   Straus & Boies did.  She was a solo and she did a great

20   job at what she did, she didn't contribute any money, no

21   knock against Ms. Kern.  We feel like that multiplier is

22   a little rich.

23           Also above us is Freedman Boyd.  It's hard to

24   argue with lead trial counsel's multiplier.  They have a

25   relatively low overall lodestar.  One could argue that

                                              Page 33

1    getting the second highest multiplier in the case for

2    working for five months is a little rich, but you know,

3    our issue isn't really with Freedman Boyd.

4            Fundamentally, we think that the spread, or

5    the -- I should say is the reserve that lead counsel has

6    taken for itself is too rich.  29 percent of the overall

7    fee for a two or three lawyer firm that subcontract out

8    chunks of lead counsel work is too much.  And some of

9    that money should be given to Straus & Boies, some of

10   that money should be given to Kirby McInerney, and

11   frankly, some of that money could also be given to firms

12   in the light blue tier, or even the green tier.

13           THE COURT:  Okay.  Any -- let's start with

14   Ms. Kern, did you have anything you wanted to add?

15   Don't feel compelled.

16           MS. KERN:  Well, as the first time that I've

17   heard Mr. Gralewski or his firm contest my contribution

18   to the case directly so I was a little surprised to hear

19   that, I didn't have a chance to respond.  I don't

20   believe that my multiplier is too high.  And I'm not

21   going to get into the details.

22           I think that counsel's papers do a pretty good

23   job of setting forth my contributions.  And as far as my

24   financial contributions, I did file a declaration which

25   I'm sure you're aware of, and I set forth that I've

Page 34

1    contributed over -- well, over $540,000 in my time over

2    the past year that has not been compensated and is

3    unlikely to ever be, it was not part of my lodestar.

4    There's no multiplier that was added to that.  And I've

5    also included a $5,000 assessment towards the fees of an

6    expert.

7                THE COURT:  Are you saying there's 540,000 of

8    time that will not be compensated, or cash out the door?

9    Out of pocket cash?

10               MS. KERN:  No, I'm saying my time.

11               THE COURT:  Of time.

12               MS. KERN:  Over the past year.

13               THE COURT:  Yeah.

14               MS. KERN:  Yes.  Plus the $5,000 in cash.

15               THE COURT:  Okay.  Anything else?

16               MS. KERN:  No.

17               THE COURT:  Okay.  Mr. Micheletti, anything?

18               MR. MICHELETTI:  Yes, I do.

19               THE COURT:  Just because I mention your names

20   doesn't mean you have to have something to say.

21               MR. MICHELETTI:  That's okay.  I came here

22   planning to say something.  First of all, Your Honor

23   made reference to Kirby being sixth highest multiplier

24   and on this allocation chart they are number 6, but the

25   reality is, is that they've already leapfrogged over

Page 35

1    Zelle by virtue of the error in their reported lodestar,

2    which is actually lower than the number that is shown

3    here.   And their multiplier is a 2.099, I believe, 2.1,

4    so I just wanted to make sure Your Honor was aware of

5    that.   You're referring to them as having the sixth

6    highest multiplier.

7          THE COURT:   Yeah, I have that noted, but I --

8    I just have it noted in handwriting so...

9          MR. MICHELETTI:   Understood.   And, you know,

10   that to us is one of the main issues and one of the main

11   reasons why we filed a response.   And it's our view that

12   Zelle's contributions should not be put below those of

13   Kirby.

14          We believe that we belong at their level or

15   higher.   And that is the main reason why we felt the

16   need to respond, because it's clear that the discussion

17   that's set forth in their papers devalues Zelle's

18   contribution.

19          They took us out of the lead counsel group.

20   And their discussion of the -- I'm sorry, the core

21   group, even though lead counsel put us in the core

22   group.   And these are all points that we've made in our

23   papers and I don't want to go over those again, but what

24   I do want to point out is we now have lead counsel's

25   response to Kirby's objection.

Veritext Legal Solutions
866 299-5127

1              And if you look at all the arguments that lead
2      counsel asserts to justify its elevation above Kirby,
3      all of the points that they go through and which we
4      agree with, all of those points provide equal support
5      for Zelle having made more significant contributions to
6      the success of the case than Kirby.
7              The first point that lead counsel relies upon
8      is timing and when the firms entered the case.  And lead
9      counsel emphasizes that Kirby didn't join the case until
10     2010 and no assignments until April of 2011.  That same
11     argument that applies to lead counsel and that justifies
12     their being elevated above Kirby applies to Zelle.
13             Zelle started the case at the outset.  I mean,
14     they filed one of the first complaints and worked with
15     lead counsel on high level assignments from the getgo,
16     billed 4,192 hours from 2007 to 2011, which is more than
17     double of that of Kirby in the early stages of the case.
18             So timing is one of the items that lead
19     counsel focused on in supporting their being higher, and
20     all those arguments apply with equal force to Zelle.
21     The higher level of work lead counsel argues that even
22     after Kirby joined the case, lead counsel's work was at
23     a much higher level than Kirby.  The same argument
24     applies to Zelle.  And this is perhaps best exemplified
25     by the lead role, along with lead counsel took in class

Page 37

1    certification, arguing it right here, and as well as

2    working with the experts, and working on defendant

3    discovery, taking all the defendant expert depositions

4    on behalf of the indirect purchaser plaintiffs.

5              So with respect to that particular criterion

6    that lead counsel relies upon, it applies equally to

7    Zelle.  Lead counsel argues that it had more senior

8    attorneys on the case than Kirby, the same is true for

9    Zelle.  Our team included two senior partners, myself

10   and Mr. Corbitt.  Two juror partners, Ms. Zahid and Mike

11   Christian, as well as a senior associate, Qianwei Fu.

12             So not only were we more senior, but all of

13   those -- almost all of them, including Mr. Corbitt,

14   Ms. Zahid and Ms. Fu had extensive involvement in LCDs

15   and brought that experience with them to this case.  I

16   was one of the primary lawyers at Zelle that litigated

17   the SRAM case.  I brought that experience.

18             So not only do we have more senior lawyers

19   working on the case, but we brought tremendous

20   experience from prior indirect purchaser cases.  And

21   these are not my criteria, these are the criteria that

22   lead counsel is relying upon in justifying their being

23   paid a higher multiplier than Kirby.

24             Lead counsel argues that Kirby's initial

25   assignments were not that demanding.  The opposite is

Page 38

1    true for Zelle.  Early on in the case, we were very much

2    involved in the pleading motions and had a level of

3    responsibility with those that resulted in, I believe,

4    Craig Corbitt making arguments both before special

5    master and I think before the district judge when the

6    R&R was challenged.  So early on in the case our

7    assignments were -- were at a high level and were

8    demanding assignments.

9            With respect to Kirby's role in document

10   review and class certification, lead counsel argues that

11   Kirby's role was minor compared to the other core firms.

12   Our firm is one of the core firms that lead counsel was

13   referring to.  We don't even need to argue those facts.

14           If you go and look at lead counsel's

15   discussion of those events in the case, document review

16   and that work in the case and the class certification at

17   pages 34 and 35 of their brief, you'll see them

18   described, Zelle's role in that work.

19           THE COURT:  Okay.  Take a couple more minutes

20   if you need it and then I need to hear from other

21   people.

22           MR. MICHELETTI:  Absolutely.  With respect to

23   summary judgments, trial prep and post-settlement work,

24   I don't think Kirby's work stands above and beyond that

25   of Zelle.

1          We were involved in trial preparation.  We

2     were involved in post-settlement work and contributed as

3     we set forth in our brief extensively.

4          I guess what I would like to conclude with,

5     Special Master Quinn, is that if there is any increase

6     to Kirby's multiplier, it should definitely not come

7     from Zelle.  And I think the reality of the record

8     that's been made by these proceedings establishes very

9     clearly that Zelle belongs at a multiplier that is equal

10    to or higher than Kirby based upon the record.

11          THE COURT:  Okay.  Good, thank you.  Anyone on

12    the phone have anything to say?

13          MR. SCARPULLA:  Your Honor, this is Fran

14    Scarpula.  I made an objection to a number of the

15    allocations in the fees, and I have nothing to add on

16    this one to -- other than what is in the documents which

17    are already filed and before you.

18          THE COURT:  Okay.  Good, thank you.  Anyone

19    else?

20          MR. SCARPULLA:  I just -- did want to say just

21    one thing, I've been around a long time and I've done

22    this for a long time and I know who does what and who

23    does proper work.  And Zelle did the best work in this

24    case.  They're the ones who really led the case, not

25    Mr. Alioto.  And if anybody gets a high multiple, it

Page 40

1    ought to be Zelle.  That's all I have to say.

2              THE COURT:  Okay.  Anyone else on the phone?

3              MR. GOLDBERG:  Special Master Quinn, this is

4    Joe Goldberg in Albuquerque, New Mexico.  I have a

5    couple of brief comments I'd want to make.

6              THE COURT:  Please.

7              MR. GOLDBERG:  First, I want to thank the

8    Special Master the opportunity to participate over the

9    phone.  As much as I love San Francisco, it's more

10   convenient not to get on a plane and fly out there.

11             A couple of things, throughout his affidavit

12   or declaration and their brief, Mr. Gralewski, for Kirby

13   McInerney, he makes constant reference and comparisons

14   of his firm's to my firm's contributions to the common

15   fund assessments.

16             My firm as well as the two firms that came in

17   with me, Fine Kaplan and Black, and Hulett Harper, when

18   we came into the case, there were no assessments called

19   for from the common fund.  It is not as if we were

20   assessed and we didn't make any contributions to the

21   common fund.

22             There were -- assessments to the common fund

23   had ceased because -- for a variety of reasons that are

24   not necessary to go into.  That's number one.

25             Number two, not -- it's not as if my firm and

                                              Page 41

1    the Hulett Harper firm and the Fine Kaplan firm did not

2    make out-of-pocket advances to this case.  My firm made

3    advances of out-of-pocket expenses of somewhat in excess

4    of $36,000.  The three firms combined made contributions

5    of out-of-pocket expenses in the very short time that we

6    were in the case in excess of $100,000.

7            All right.  The distinction between an

8    assessment to the common fund and other out-of-pocket

9    expenses is an arbitrary distinction and I'll give the

10   special master one example of that.  It -- one of the

11   responsibilities I had in trying to organize this case

12   to go to trial and transmute facts into evidence was to

13   house a group of lawyers from outside of San Francisco

14   who were going to come into San Francisco.

15           And so we -- we made arrangements, we made

16   arrangements with a local hotel for a bunch of hotel

17   rooms, in excess of 20 hotel rooms, and for space for a

18   back room law office.  And the hotel required a deposit.

19   I wrote a check, or more specifically, I put on my

20   firm's plastic a very sizable, five-figure amount for

21   that hotel which, by the way, is among the $36,000

22   advanced.

23           Well, that would be a common fund expense,

24   except as things went out, it had to be done and it came

25   from my firm.  That's an arbitrary distinction.  If the

Page 42

1    special master wants to make a comparison, which by the

2    way, I don't think is the right thing to do -- which

3    I'll talk about in just a second -- but if the special

4    master wants to make a comparison, a metric that is

5    commonly used and one that I use all the time in my law

6    office and that is what is the percentage of the

7    lodestar that you're out of pocket advances constitute,

8    because you can't stay in business if your lodestar is

9    $100,000 and your out-of-pocket advances are $500,000.

10          And the percentage of my firm's lodestar that

11    is represented by the advances, about 6.3 percent, I

12    misrepresented it in the footnote in my declaration as

13    7 percent because I -- I used the wrong -- I used the

14    wrong denominator.  I used our firm's lodestar as

15    opposed to reduce -- I used our firm's reduced lodestar

16    as opposed to the -- (inaudible) -- which is how I

17    compared Kirby McInerney's.

18          And Kirby McInerney's total expenses --

19    (inaudible) -- fund and other out-of-pocket expenses are

20    about 2 percent of their lodestar.  I'm not criticizing

21    them.  I don't crit- -- one of the things you learn when

22    you prepare the cases for trial is everybody makes

23    contributions to these cases.  You can't try these cases

24    without everybody making contributions.

25          I'm not criticizing them, I'm not criticizing

Page 43

1    their out-of-pocket expenses.  I'm not criticizing their

2    lodestar, but I am criticizing Mr. Gralewski, what I

3    think is a -- is a misleading --

4            THE COURT:  Okay.

5            MR. GOLDBERG:  -- misleading comparison.

6            THE COURT:  Mr. Goldberg, I sort of have

7    straight in my mind the issues surrounding the

8    contributions and the lodestar.  I mean, if you have any

9    other points, could you make them.

10           MR. GOLDBERG:  No, that's fine.  I just want

11   to make sure that I got the point across.

12           The last thing I want to say is that it -- in

13   Kirby McInerney's papers as well as others which we'll

14   talk about in other hearings, but there is a sense that

15   the special master should make a determination looking

16   solely at risk, who put what at risk?

17           Well, first of all, our lodestar was at risk

18   when we came in, because when we came in in the fall of

19   2014, the settlements were $35 million and the lodestar

20   was in excess of $70 million at that time.

21           So our -- our lodestar was at risk, our

22   out-of-pocket expenses were at risk, but much more

23   important than that, that risk is not the only factor.

24   The lead counsel here and any decision maker has to take

25   into consideration who adds value to the case, what kind

Page 44

```
1    of value is added to the case for the results.
2              And we submit that my firm, the Hulett Harper
3    firm, Fine Kaplan firm added real value to this case, I
4    think Mr. Bill Blechman's declaration that was filed in
5    this case, and the special master has it, supports the
6    fact that we added real value to this case.
7              Thank you very much, Special Master Quinn.
8              THE COURT:  Thank you.  Anyone else?
9              MS. CAPURRO:  Your Honor, I would like to say
10   something briefly.
11             THE COURT:  Let's get --
12             MS. CAPURRO:  Sure.
13             THE COURT:  -- anyone else on the phone?
14             All right.  Let's see, before we give Alioto
15   another crack, Mr. Gralewski, quickly.
16             MR. GRALEWSKI:  Two minutes.  I'm just going
17   to respond.  I want to clarify something I said about
18   Ms. Kern's firm and anyone else.  I -- our position is
19   not that we're looking to lower anyone's multiplier
20   except, of course, with respect to lead counsel's.  I
21   just wanted to clarify that.
22             And 90 seconds on the Zelle arguments.  We
23   were involved in class certification.  We were involved
24   in the economics.  We disagree with the points in lead
25   counsel's omnibus brief that Mr. Micheletti cites to.
```

Page 45

1          We took -- I was the point person for the Best

2     Buy and Costco depositions.  Mr. Micheletti requested

3     copies of those depositions, and featured testimony that

4     I elicited in our reply brief in support of class

5     certification.

6          There was a lot in the briefs about the direct

7     action plaintiff depositions, when Mr. Micheletti was

8     preparing to defend Dr. Netza's (ph) deposition, and in

9     preparing to take Dr. Ordover's (ph) deposition, he

10    turned to me to mine all of those DAP depositions for

11    economic testimony and passthrough testimony, and we did

12    that for him.  So to suggest that we weren't involved in

13    the economics of the case is not accurate.

14          Lastly, this is one of those tough days, I'll

15    take the special master's guidance here and say the last

16    thing.  The special master noted in the LCD report and

17    recommendation that what has to be counterbalanced, the

18    excellent work that Zelle did has to be counterbalanced

19    with the facts that lead counsel puts in paragraphs 17,

20    25, 26 and 30 of Mr. Alioto's September 17th, 2016

21    declaration.  And that is the fact -- that was his --

22    that was a declaration in support of his omnibus

23    response.

24          And in that declaration, he points out that

25    Zelle made unauthorized settlement demands on Phillips,

Page 46

1    complained to the special master, undermined lead

2    counsel, diverted resources at crucial times and

3    adversely impacted lead counsel's ability to negotiate

4    settlements.

5              THE COURT:  But he's talking about

6    Mr. Scarpulla when Mr. Scarpulla was at Zelle.

7              MR. GRALEWSKI:  He's talking about

8    Mr. Scarpulla when Mr. Scarpulla was at Zelle.  He's

9    also talking about, with all due to respect to them,

10   Mr. Corbitt and Ms. Zahid.

11             You know, based on the law that the special

12   master laid out in LCD, those things need to be

13   counterbalanced with Zelle's exceptional work.  And when

14   you counterbalance those, there's just no way that Zelle

15   can be higher than Kirby.

16             THE COURT:  Okay.  Ms. Capurro?

17             MS. CAPURRO:  Thank you.  I would just like to

18   respond with a little bit of detail to some of the

19   assertions that Mr. Graleweski has made today.

20             I worked on this case full-time, basically,

21   since -- I worked on its since its inception in 2007,

22   and from about 2011 onwards, I've worked on the case

23   totally full-time.

24             Mr. Gralewski has not given any response to

25   the point we made in our papers which is that our firm

Page 47

1    was in this case for three and a half years before he

2    got involved.  And that's, you know, being somewhat

3    generous because his initial involvement was very small,

4    discrete tasks, fairly low level.

5          It wasn't really until we get into 2012 where

6    the class rep depositions he was involved in, 2013 he

7    did a little bit, had a minor role in class cert.  It

8    was later in 2013 that he got involved with the

9    Samsung/SDI depositions.  And it was really 2014 and '15

10    where he, you know, the last year and quarter of -- of

11    an eight-year case that Mr. Gralewski's firm were really

12    doing higher level work.

13          And they never at any point in that -- in the

14    case were involved in the overall management of the

15    case.  Never.  The only other firms that have that

16    viewpoint and the same viewpoint that we have of being

17    able to rate the relative contributions in the case

18    would be Zelle, Straus & Boies, and Sylvie.

19          And the reason that Kirby is below those firms

20    is because they -- they did discrete tasks.  They did

21    not -- we did not subcontract out lead counsel's role to

22    them in any shape or form, and you'll note that

23    Mr. Gralewski gave no examples of whatever he meant

24    whenever he said that.

25          We were always involved in every task in this

1    case, and Mr. Gralewski did excellent work on the

2    assignments he was given, but he was not making

3    assignments, he was not driving the assignments, he was

4    not deciding what needed to be done.  We were doing

5    that.

6            A couple of additional points on the Japanese

7    reviewers and their rates and these are getting into

8    minutia, but I have consulted extensively with Straus &

9    Boies who led the foreign language team on what Sawa and

10   Akiko, Kirby's two Japanese reviewers, were doing.  And

11   they were translating documents.  They were reviewing

12   documents, they were higher level because they were

13   recognizing the good documents and translating those.

14           But it was Straus & Boies who -- and myself

15   and other deposition takers and brief writers who were

16   selecting the important documents and analyzing those

17   documents at a level far above what these reviewers were

18   doing.

19           And, you know, the point of Sawa's rate being

20   close to mine is an example of how frankly ridiculous it

21   is that she's being charged at that level because she

22   was doing document review, higher level document review,

23   but essentially document review.  I was helping to run

24   the case.

25           Let's see, Mr. Gralewski has also not

Page 49

1    responded to the cross-check that we noted that we did

2    in our papers, whereby we gave Bob -- or, sorry,

3    Mr. Gralewski's time a 2.6 multiplier and calculated out

4    what then the rest of his firm were getting.  And the

5    rest of his firm are getting a 1.775 multiplier on their

6    time, and I don't think Mr. Gralewski can dispute that

7    everybody else other than him were doing lower level or

8    mid-level work.  They were -- yes, they assisted with

9    trial preparation, yes, they assisted with depositions,

10   but that was it.

11           I think that's everything.  Thank you for your

12   time.

13           THE COURT:  All right.

14           MR. MICHELETTI:  May I?

15           THE COURT:  All right.  We're breaching my

16   one-hour rule.  This is not a good precedent.

17           MR. MICHELETTI:  Understood.

18           THE COURT:  If it's something important, go

19   ahead, Mr. Micheletti.

20           MR. MICHELETTI:  Well, Mr. Gralewski just made

21   comments about some partners, former partners at Zelle.

22   And first, with respect to his comments regarding

23   Mr. Corbitt and Ms. Zahid, those are untrue statements.

24   There's not -- I don't think Mr. Alioto's declaration

25   has one -- even mentions their name.  There are

Page 50

1    references to Mr. Scarpulla.

2            Whatever Mr. Scarpulla may or may not have

3    done in this case, from day one to today they continue

4    to rely on Zelle to help them in this case.  And we've

5    been given very, very important responsibilities

6    throughout its entirety.

7            I think that speaks volumes and I think our

8    accomplishments in the case speak for themselves.

9            THE COURT:  Okay.  Anything else?

10           MR. GRALEWSKI:  I mean --

11           THE COURT:  It's always tempting but --

12           MR. GRALEWSKI:  I have e-mails, I can respond

13   to the details if the special master is inclined.  I can

14   give them a couple examples.  I don't have to.

15           THE COURT:  Okay.  Yeah, I just want to

16   reemphasize to everybody, we are going to rely largely

17   in making our determination on the papers that have been

18   submitted.  The oral argument is helpful.  It will, I'm

19   sure, continue to be helpful but, you know, when it

20   comes down to it, the papers are going to -- are going

21   to be of paramount importance.

22           Okay.  Thank you, everybody.  We will -- let's

23   see, I guess we better stick to our schedule,

24   Mr. Alioto.  I mean, it's tempting to just go forward

25   since you're here, but there may be other people who are

                                              Page 51

1    counting on joining at -- at the appointed hour.

2              So we will reconvene at -- is it 3:00 or

3    3:30? -- at 3:30 to hear whatever you have to say.

4              MR. ALIOTO:  Very good.

5              THE COURT:  Thank you, everybody.  The hearing

6    will be adjourned.

7              MR. ALIOTO:  Thank you.

8                   (Whereupon, the proceedings were

9         adjourned at 2:35 p.m.)

10                          --oOo--

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page 52

1           CERTIFICATE OF REPORTER

2

3           I, KENNETH T. BRILL, a Certified Shorthand

4     Reporter, hereby certify that the foregoing proceedings

5     were taken in shorthand by me, at the time and place

6     therein stated, and that the said proceedings were

7     thereafter reduced to typewriting, by computer, under my

8     direction and supervision;

9           I further certify that I am not of counsel or

10    attorney for either or any of the parties to the said

11    proceedings, nor in any way interested in the event of

12    this cause, and that I am not related to any of the

13    parties hereto.

14

15

16

17

18

19           DATED:   10/17/16

20

21

22           KENNETH T. BRILL

             CSR 12797

23

24

25

Page 53

**[& - acknowledges]**

| & |
|---|
| **&**  2:5,15 4:4 6:3 |
| 6:12 7:15 9:19 |
| 10:2 14:20 15:22 |
| 18:18 19:25 32:3 |
| 33:10,15,19 34:9 |
| 48:18 49:8,14 |

| 0 |
|---|
| **07-5944**  1:5 |

| 1 |
|---|
| **1**  1:25 |
| **1.775**  50:5 |
| **10**  20:18 |
| **10/17/16**  53:19 |
| **100,000**  42:6 43:9 |
| **11**  24:11 |
| **12**  15:3 |
| **120**  2:17 |
| **123**  23:9 |
| **12797**  1:17 53:22 |
| **14**  14:24 15:2 |
| **15**  13:20 48:9 |
| **1500**  7:7 |
| **17**  46:19 |
| **17th**  3:7 46:20 |
| **1900**  5:14 |
| **19107**  8:7 |
| **1917**  1:6 |
| **1998**  22:24 |
| **1:29**  1:13 9:2 |

| 2 |
|---|
| **2**  22:25 43:20 |
| **2.07**  28:18 |
| **2.099**  36:3 |
| **2.1**  36:3 |
| **2.25**  28:19 |
| **2.6**  50:3 |
| **20**  6:14 23:11 |
| 42:17 |

| 3 |
|---|
| **3**  1:12 9:1 20:18 |
| 22:21 |
| **3.08**  24:12 |
| **30**  25:13 46:20 |
| **338-1133**  7:9 |
| **34**  39:17 |
| **3400**  6:5 |
| **35**  39:17 44:19 |
| **357**  7:17 |

**2007**  37:16 47:21
**2010**  16:7 37:10
**2011**  37:10,16
  47:22
**2012**  48:5
**2013**  15:20,21 48:6
  48:8
**2014**  25:23 26:4
  44:19 48:9
**2015**  20:24 28:5
**2016**  1:12 9:1 20:8
  46:20
**212**  5:16
**2125**  2:17
**215**  6:7 8:8
**22**  28:5
**22030**  4:8
**221-5763**  5:7
**2280**  2:8 4:17
**23rd**  8:6 20:8,23
  20:24 27:3
**24**  20:18
**244-7520**  6:16
**2455107**  1:19
**25**  46:20
**2532**  5:5
**26**  46:20
**29**  22:16 34:6
**2:35**  1:13 52:9
**2nd**  7:17 26:4

| 35th  3:17 |
|---|
| **36,000**  42:4,21 |
| **371-6600**  5:16 |
| **3:00**  52:2 |
| **3:30**  52:3,3 |

| 4 |
|---|
| **4**  10:23 11:6 20:9 |
| 20:11,18 21:22 |
| **4,192**  37:16 |
| **400**  14:7,11,14,14 |
| **4041**  4:7 |
| **415**  2:10 3:9,19 |
| 4:19 5:7 7:19 |
| **434-8900**  3:19 |
| **44**  6:5 |
| **456**  3:7 |
| **4875-1**  21:13 |
| **4th**  26:4 |

| 5 |
|---|
| **5**  15:2 |
| **5,000**  35:5,14 |
| **50**  30:5 |
| **50,000**  32:1 |
| **500,000**  43:9 |
| **505**  6:16 |
| **53**  1:25 |
| **540,000**  35:1,7 |
| **550**  7:7 |
| **563-7200**  2:10 |
| 4:19 |
| **567-6565**  6:7 8:8 |
| **575**  14:7,9 15:1 |

| 6 |
|---|
| **6**  22:21 35:24 |
| **6.3**  43:11 |
| **600**  5:14 |
| **619**  7:9 |
| **64**  18:2 |
| **693-0700**  3:9 |

| 7 |
|---|
| **7**  43:13 |
| **70**  44:20 |
| **700**  6:14 |
| **703**  4:9 |
| **75,000**  28:21 |
| **764-8700**  4:9 |
| **788-3030**  7:19 |

| 8 |
|---|
| **87102**  6:15 |
| **8th**  26:5 |

| 9 |
|---|
| **90**  29:14 45:22 |
| **92101**  5:15 7:8 |
| **925**  2:19 |
| **94103**  7:18 |
| **94104**  3:8,18 6:6 |
| **94121**  5:6 |
| **94123**  2:9 4:18 |
| **945-0200**  2:19 |
| **94598**  2:18 |
| **95**  29:15 |

| a |
|---|
| **ability**  47:3 |
| **able**  30:7 48:17 |
| **absolutely**  16:9 |
| 39:22 |
| **abuse**  27:25 28:3 |
| **accomplishment** |
| 30:7 |
| **accomplishments** |
| 51:8 |
| **accurate**  19:25 |
| 20:15 46:13 |
| **accurately**  27:21 |
| **achieved**  17:10 |
| **acknowledge** |
| 25:12 |
| **acknowledges** |
| 25:14 |

[action - basically]

action 46:7
actual 15:7 31:18
add 10:17 31:20
  31:22 34:14 40:15
added 35:4 45:1,3
  45:6
addition 18:19
additional 49:6
address 18:5
addressed 24:23
  25:1
adds 44:25
adequacy 18:15
adjourned 52:6,9
adjustment 15:8
adjustments 28:12
  30:20
advanced 42:22
advances 42:2,3
  43:7,9,11
adversely 47:3
advocate 31:11
affidavit 41:11
afternoon 9:16
  10:19
age 26:25
agenda 29:24
  31:16
ago 24:10,11
agree 13:6 25:11
  37:4
agreed 26:11
ahead 13:18 22:1
  50:19
ahn 26:12,16
akiko 19:15 49:10
albuquerque 6:15
  9:7 41:4
alioto 2:5,6 10:13
  11:7 12:1,6 13:6
  14:5,10,12,18

15:14,19 17:24
  19:12 24:2,11,16
  25:4 27:14,15
  29:1,2 31:22 33:6
  40:25 45:14 51:24
  52:4,7
alioto's 24:19
  46:20 50:24
aliotolaw.com
  2:11 3:20
allocating 14:21
  22:16
allocation 14:6
  23:6,18,22,23 28:2
  29:7,7,13,17,22
  30:4,10,12,13
  31:10,13 32:23
  35:24
allocations 17:19
  29:16 33:6 40:15
amazing 20:25
amount 42:20
amplify 13:22
amplifying 24:21
analysis 23:25
analyzing 49:16
answer 13:25
  28:25
antitrust 1:4 26:7
anybody 31:8 33:9
  40:25
anyone's 22:11
  45:19
anyway 24:13
apparently 24:10
  26:20
appearances 9:5
appears 24:15
  27:24
appendix 18:13

applicable 28:13
applies 29:10
  37:11,12,24 38:6
apply 23:17 37:20
appointed 52:1
apportion 33:6
approach 17:9
  24:16
appropriate 14:23
  15:6
approved 16:13
approximately
  27:17
april 37:10
arbitrary 42:9,25
areas 18:5
argue 33:24,25
  39:13
argues 37:21 38:7
  38:24 39:10
arguing 38:1
argument 22:4
  37:11,23 51:18
arguments 24:19
  31:3 37:1,20 39:4
  45:22
arithmetic 14:4
  15:7
arrangements
  13:17 42:15,16
asked 13:16 26:17
  27:13
asking 12:4 24:19
  33:2,5,8
aspect 19:11
aspects 18:7
assertion 13:13
  25:6
assertions 47:19
asserts 25:11 37:2

assessed 41:20
assessment 30:25
  31:10 32:18 35:5
  42:8
assessments 25:8
  28:7,13,22 41:15
  41:18,22
assigned 20:16
  23:4 26:6
assignments 32:16
  37:10,15 38:25
  39:7,8 49:2,3,3
assisted 50:8,9
associate 14:25
  38:11
attached 18:13
  20:8
attendance 25:25
attention 24:10
attorney 53:10
attorneys 38:8
attributable 30:8
authorship 31:12
available 12:5
  31:15
avoiding 27:20
awarded 16:14
aware 19:6 28:8
  34:25 36:4
axe 29:24

b

b 3:6 5:14
back 27:8 29:9
  42:18
based 22:11 24:19
  31:13 32:23 40:10
  47:11
bases 28:2
basically 23:12
  47:20

[basis - class]

basis 30:22
battin 4:6 9:12
  10:5
behalf 10:19 38:4
believe 11:17
  12:12 14:12,18,22
  15:11 20:14,21
  23:17 25:23 27:3
  33:16 34:20 36:3
  36:14 39:3
belong 36:14
belongs 40:9
berry 12:12
best 31:13 37:24
  40:23 46:1
better 12:24 29:12
  30:25 51:23
beyond 39:24
bgralewski 5:17
big 24:7
bill 45:4
billed 37:16
billing 14:6
birkhaeuser 2:15
  2:16 9:18,18,19
birkhauser 10:7
bit 32:6 47:18 48:7
black 8:4 41:17
blechman's 45:4
blue 34:12
bob 50:2
boies 4:4 10:2
  14:21 15:22 18:18
  19:25 32:3 33:10
  33:15,19 34:9
  48:18 49:9,14
boies.com 4:10
bois 9:12
bonsignore's 19:3
boyd 6:12 33:23
  34:3

bramson 2:15
  9:19
bramsonplutzik....
  2:20
breaching 50:15
brief 18:14,17
  22:24 23:1,5
  25:13 26:15,20
  27:3,8,8 31:25
  32:20 39:17 40:3
  41:5,12 45:25
  46:4 49:15
briefing 19:3,10
  25:3
briefly 13:22
  45:10
briefs 18:1,10 19:6
  19:7 26:18 46:6
brill 1:16 53:3,22
bring 12:23 33:17
broad 8:6
brought 24:9
  38:15,17,19
bunch 42:16
business 43:8
buy 46:2

**c**

c 2:1 3:1 4:1 5:1
  6:1 7:1,7 8:1 10:4
ca 2:9,18 3:8,18
  4:18 5:6,15 6:6
  7:8,18
calculated 50:3
california 1:2,11
  9:1
called 41:18
camera 13:5
campaign 19:9
candid 29:15
cap 14:14,17 27:19
  27:20

capurro 2:7 10:14
  11:7 15:2 16:16
  26:17 27:13 28:5
  45:9,12 47:16,17
case 9:23 11:20
  15:6,20 16:6,11
  18:1,7 19:11,18,19
  20:1 22:7,20 23:3
  23:4,7,9,10,14,15
  24:2,6,14,17,20
  26:10 27:12 28:1
  28:2,8,14,16,20,23
  29:25 30:20 31:2
  31:7,8,9 32:11,13
  32:24 33:18 34:1
  34:18 37:6,8,9,13
  37:17,22 38:8,15
  38:17,19 39:1,6,15
  39:16 40:24,24
  41:18 42:2,6,11
  44:25 45:1,3,5,6
  46:13 47:20,22
  48:1,11,14,15,17
  49:1,24 51:3,4,8
cases 23:3 24:8,11
  24:16 38:20 43:22
  43:23,23
cash 35:8,9,14
categorization
  28:6
categorized 27:9
  27:14,15
categorizing 27:21
cathode 1:4
cause 53:12
ceased 41:23
cert 48:7
certain 22:18
certainly 11:23
  12:6 18:6 29:3

certificate 53:1
certification 16:7
  18:12 38:1 39:10
  39:16 45:23 46:5
certified 16:18
  53:3
certify 53:4,9
chaired 15:17 26:2
challenge 30:18
challenged 39:6
chance 33:1 34:19
change 29:21,22
  29:23 33:4
changed 22:7
characterizes
  15:23
characterizing
  19:23
charge 32:9
charged 49:21
chart 35:24
check 42:19 50:1
christian 38:11
christopher 6:4
chunks 24:5 34:8
cihlar 4:5 9:11
  10:4,4 16:15
  18:23 25:24 26:6
  26:9
cipro 24:8,10,16
cite 22:24 23:5
cited 22:25
cites 45:25
claimed 18:23
clare 2:7
clarify 45:17,21
class 16:7 18:12,14
  18:22 37:25 39:10
  39:16 45:23 46:4
  48:6,7

[clayton - daniel]

clayton  3:6 9:14
  10:8
clear  31:23 36:16
clearly  28:3,4 40:9
clerk  9:23
close  12:23 25:25
  49:20
cmicheletti  6:8
cohen  8:13 9:23
colead  24:14
combined  42:4
come  13:25 31:2
  40:6 42:14
comes  30:12 51:20
comment  16:3
  20:4
comments  18:3,4
  41:5 50:21,22
commitment
  32:14
common  41:14,19
  41:21,22 42:8,23
commonly  43:5
compare  23:20
compared  17:25
  39:11 43:17
comparison  29:8
  43:1,4 44:5
comparisons
  41:13
compel  18:18
  25:25
compelled  34:15
compensated  35:2
  35:8
competently  19:22
competing  29:25
complained  47:1
complaints  37:14
complement  33:18

complete  31:16
completed  26:16
completely  32:9
complimentary
  17:15
computer  53:7
concerned  13:12
conclude  40:4
concluded  28:19
conclusion  32:10
confidential  12:18
connection  14:21
  18:12 19:24
consent  11:23
consideration
  27:25 44:25
considerations
  32:22
considering  30:14
  31:14
constant  41:13
constitute  43:7
consulted  49:8
contest  34:17
continue  51:3,19
continued  3:1 4:1
  5:1 6:1
contribute  33:20
contributed  28:10
  28:21 35:1 40:2
contribution
  30:16 34:17 36:18
contributions
  28:11 32:19,24
  34:23,24 36:12
  37:5 41:14,20
  42:4 43:23,24
  44:8 48:17
convenient  41:10
cooper  7:15,16
  9:15,15 10:6

coopkirk.com
  7:20
copies  11:25 17:4
  46:3
corbitt  38:10,13
  39:4 47:10 50:23
core  25:14 36:20
  36:21 39:11,12
correct  15:11,14
  15:14 16:5
costco  46:2
counsel  10:23
  11:19 12:5 15:8
  17:14 22:6,9,13,15
  22:17 23:7,10,12
  23:20,22,23 24:5
  24:14 25:11,19
  27:9,25 28:2,12
  33:4,13 34:5,8
  36:19,21 37:2,7,9
  37:11,15,19,21,25
  38:6,7,22,24 39:10
  39:12 44:24 46:19
  47:2 53:9
counsel's  33:24
  34:22 36:24 37:22
  39:14 45:20,25
  47:3 48:21
counterbalance
  47:14
counterbalanced
  46:17,18 47:13
counting  52:1
couple  39:19 41:5
  41:11 49:6 51:14
course  13:6 15:10
  31:1 32:24 45:20
court  1:1 9:4,8,21
  10:1,6,12 11:3,11
  12:2 13:16 14:2
  14:10 15:7,12,15

16:22,24 17:12,17
  17:24 19:12,17,21
  20:5,10,17,24 21:2
  21:6,9,12,15,19,21
  21:25 23:7,12,16
  23:18,21,25 25:9
  29:1 31:20,23
  32:25 34:13 35:7
  35:11,13,15,17,19
  36:7 39:19 40:11
  40:18 41:2,6 44:4
  44:6 45:8,11,13
  47:5,16 50:13,15
  50:18 51:9,11,15
  52:5
courtroom  10:13
covered  25:17
crack  45:15
craig  39:4
creek  2:18
crit  43:21
criteria  38:21,21
criterion  38:5
criticism  29:3
  30:17
criticizing  43:20
  43:25,25 44:1,2
cross  50:1
crt  1:4 24:17
crucial  47:2
csr  1:17 53:22
current  14:5,24
  21:16
custody  12:15
cv  1:5

| d |
| --- |

d  3:15,16 7:16
dan  9:18 10:10,19
  13:1
daniel  2:16 5:13

[dap - eventually]

| | | | |
|---|---|---|---|
| **dap** 46:10 | **deposition** 17:3 | **discussion** 36:16 | **early** 37:17 39:1,6 |
| **dated** 20:7,23 | 18:25 26:3,12,16 | 36:20 39:15 | **economic** 46:11 |
| 53:19 | 27:9,10 46:8,9 | **disingenuous** 27:4 | **economics** 45:24 |
| **day** 30:3 32:4 51:3 | 49:15 | **dispute** 50:6 | 46:13 |
| **days** 12:23 24:10 | **depositions** 15:17 | **distinction** 42:7,9 | **effect** 15:9 30:21 |
| 24:11 46:14 | 16:9 17:1,10,11 | 42:25 | **effort** 15:21,24 |
| **dbirkhaeuser** 2:20 | 19:1 38:3 46:2,3,7 | **district** 1:1,2 39:5 | 16:8,10,11 17:2,8 |
| **december** 26:4,5 | 46:10 48:6,9 50:9 | **diverted** 47:2 | 19:25 25:5,21 |
| 27:3 | **described** 39:18 | **docket** 21:9,13 | 27:5 |
| **decided** 16:17 | **detail** 47:18 | **document** 19:13 | **efforts** 19:3 |
| **deciding** 49:4 | **detailed** 17:4 | 21:20 23:2 27:11 | **eight** 48:11 |
| **decision** 44:24 | **details** 31:19,19 | 39:9,15 49:22,22 | **either** 53:10 |
| **declaration** 20:7,9 | 32:1 34:21 51:13 | 49:23 | **elevated** 37:12 |
| 20:12,19 21:1,4,7 | **determination** | **documents** 16:18 | **elevation** 37:2 |
| 22:8 25:18 34:24 | 30:15 44:15 51:17 | 17:9 18:11 19:22 | **eleventh** 27:1 |
| 41:12 43:12 45:4 | **devalues** 36:17 | 32:8 40:16 49:11 | **elicited** 46:4 |
| 46:21,22,24 50:24 | **dever** 8:5 9:25,25 | 49:12,13,16,17 | **emphasizes** 37:9 |
| **declarations** 20:22 | **dhume** 5:18 | **doing** 20:12 31:4,5 | **emphatically** |
| **deep** 31:18 | **diego** 5:15 7:8 | 48:12 49:4,10,18 | 25:20 |
| **defend** 46:8 | 9:17 | 49:22 50:7 | **encouraging** 30:5 |
| **defendant** 38:2,3 | **difference** 17:18 | **door** 35:8 | **entered** 37:8 |
| **definitely** 40:6 | **dig** 31:18 | **double** 37:17 | **entire** 23:11 26:25 |
| **degree** 17:18 | **digs** 31:25 | **downward** 28:11 | 32:24 |
| **degrees** 22:20 | **diligence** 20:12 | **dr** 46:8,9 | **entirety** 51:6 |
| **demanding** 38:25 | **diminishes** 23:23 | **draft** 25:21 26:14 | **equal** 37:4,20 40:9 |
| 39:8 | **direct** 15:18 46:6 | **drafted** 17:2 18:2 | **equalized** 14:22 |
| **demands** 46:25 | **direction** 53:8 | 18:17,19 20:12 | **equally** 38:6 |
| **demonstrate** | **directly** 34:18 | **drafting** 18:1 | **errata** 18:25 |
| 11:18 | **disagree** 28:16 | 25:21 | **erroneous** 28:3,4 |
| **demonstrated** | 45:24 | **drafts** 26:4 | **error** 36:1 |
| 18:14 | **discovery** 15:16 | **drive** 4:7 | **esquire** 2:6,7,16 |
| **dennis** 7:6,10 9:16 | 15:21,24 16:2,8 | **driving** 49:3 | 3:5,6,16 4:5,6,16 |
| **denominator** | 19:5 26:1 32:10 | **due** 20:12 24:3 | 5:4,12,13 6:4,13 |
| 43:14 | 38:3 | 26:5 47:9 | 7:6,16 8:5 |
| **depiction** 20:15 | **discrete** 48:4,20 | | **essentially** 24:13 |
| **deponent** 18:19 | **discretion** 28:1,3 | **e** | 49:23 |
| **deponents** 17:16 | **discuss** 30:12 | | **establishes** 40:8 |
| 26:1 | **discussed** 30:11 | **e** 2:1,1,16 3:1,1 4:1 | **event** 53:11 |
| **depos** 15:23 | **discussing** 29:16 | 4:1 5:1,1 6:1,1 7:1 | **events** 39:15 |
| **deposit** 42:18 | 33:12 | 7:1 8:1,1 11:17 | **eventually** 27:15 |
| | | 13:14 17:15 28:5 | |
| | | 51:12 | |

[everybody - fundamentally]

**everybody** 43:22
43:24 50:7 51:16
51:22 52:5
**evidence** 19:4
26:20,21 30:15
31:15 42:12
**exactly** 20:13
21:23
**example** 11:7
14:20,23 15:1
18:11 22:21 28:16
32:6,13 42:10
49:20
**examples** 48:23
51:14
**excellent** 20:2
46:18 49:1
**exception** 30:1
**exceptional** 15:1
17:4 22:15 47:13
**excess** 42:3,6,17
44:20
**excuse** 32:5
**exemplified** 37:24
**exhibit** 20:8 21:16
21:17
**exhibits** 16:17
**expense** 42:23
**expenses** 42:3,5,9
43:18,19 44:1,22
**experience** 38:15
38:17,20
**expert** 35:6 38:3
**experts** 38:2
**extensive** 38:14
**extensively** 40:3
49:8
**extent** 11:1,6 13:3
13:11 15:13 25:1
27:24

**f**

**faced** 29:6
**fact** 31:9 33:9,17
45:6 46:21
**factionalism** 29:25
**factor** 15:8 44:23
**factors** 29:14,17
31:13
**facts** 24:6 28:3
30:14 31:14 32:20
39:13 42:12 46:19
**factual** 13:12
**fair** 23:22
**fairfax** 4:8
**fairly** 30:1,3 48:4
**faith** 31:17
**fall** 44:18
**far** 34:23 49:17
**fashion** 13:5
**fast** 25:9
**fattiah** 26:19,23
27:2
**fbdlaw.com** 6:17
**featured** 46:3
**fee** 14:21 22:12,16
23:6,8,9,10,11
34:7
**feedback** 30:9
**feel** 15:4 27:21
33:21 34:15
**fees** 16:14 35:5
40:15
**feet** 32:1
**felt** 13:3,11 36:15
**fewer** 12:24
**fifth** 4:7
**figure** 42:20
**file** 1:4 27:3 34:24
**filed** 13:17 18:8,22
20:21 24:11 36:11
37:14 40:17 45:4

**filings** 12:11
**financial** 34:24
**fine** 8:4 9:9,24
41:17 42:1 44:10
45:3
**finekaplan.com**
8:9
**finish** 24:21
**firm** 11:19 17:18
19:19 22:13,17
23:14 24:3,4,5
25:5 26:13 27:2
28:17,21 29:4,13
29:16,20 31:9,17
32:2,3,3,5,14 34:7
34:17 39:12 41:16
41:25 42:1,1,2,25
45:2,3,3,18 47:25
48:11 50:4,5
**firm's** 22:20 24:12
41:14,14 42:20
43:10,14,15
**firms** 10:24 17:25
22:9,18 23:6
25:13 28:10 29:8
30:5,8,10,16 31:7
33:3 34:11 37:8
39:11,12 41:16
42:4 48:15,19
**first** 6:14 13:20
15:17 23:3 26:2
33:12 34:16 35:22
37:7,14 41:7
44:17 50:22
**five** 10:25 11:3,9
13:22 22:4 24:21
33:3 34:2 42:20
**flies** 20:25
**floor** 3:7,17 4:7
7:17 8:6

**fly** 41:10
**focused** 37:19
**follow** 13:8
**followed** 27:24
**following** 28:6
**footing** 24:18
**footnote** 43:12
**force** 37:20
**foregoing** 53:4
**foreign** 14:15 20:1
32:7 49:9
**form** 32:22 48:22
**former** 14:25
50:21
**forth** 34:23,25
36:17 40:3
**forward** 51:24
**fos** 3:10
**four** 33:3
**fran** 9:13 10:9
40:13
**francis** 3:4,5
**francisco** 1:11 2:9
3:8,18 4:18 5:6
6:6 7:18 9:1 41:9
42:13,14
**frankly** 22:18
34:11 49:20
**freedman** 6:12
33:23 34:3
**front** 33:3
**fu** 38:11,14
**full** 19:2 33:18
47:20,23
**fully** 29:18,19
**fund** 41:15,19,21
41:22 42:8,23
43:19
**fundamentally**
34:4

**[further - information]**

further  53:9

**g**

gap  22:17
gdever  8:9
generally  15:24
generous  48:3
gerard  8:5
gerry  9:23,25
getgo  37:15
getting  23:21 34:1
  49:7 50:4,5
gilding  16:1
give  10:2 32:25
  42:9 45:14 51:14
given  14:23 15:5
  24:2 33:17 34:9
  34:10,11 47:24
  49:2 51:5
glamorous  19:8
go  13:18 22:1
  31:18,19 36:23
  37:3 39:14 41:24
  42:12 50:18 51:24
going  12:8,19 13:7
  16:24 22:3,23
  24:21 25:16 27:19
  29:10 30:2,5,22
  32:25 34:21 42:14
  45:16 51:16,20,20
goldberg  6:12,13
  9:6,6,9 10:1 41:3
  41:4,7 44:5,6,10
good  9:16 10:19
  11:13 15:25 17:21
  25:15,22 30:25
  31:16 34:22 40:11
  40:18 49:13 50:16
  52:4
graleweski  47:19
gralewski  5:12
  10:10,13,16,18

11:5,13 12:3
13:10,18,19 14:9
14:12 15:10,13
16:4,23,25 17:13
17:23 18:4 19:15
19:18 20:4,6,11,20
20:25 21:3,8,11,13
21:17,20,22 22:3
25:10 30:14 32:17
33:2,8 34:17
41:12 44:2 45:15
45:16 47:7,24
48:23 49:1,25
50:6,20 51:10,12
gralewski's  29:3
  29:20 32:5 48:11
  50:3
great  18:25 33:19
greater  30:21
green  34:12
grind  29:24
groundwork  19:9
group  5:3 25:14
  30:3 36:19,21,22
  42:13
groups  30:1
grove  2:17
guess  12:3 16:19
  40:4 51:23
guidance  46:15

**h**

h  10:4
half  32:4 48:1
hand  18:9
handful  30:6
handwriting  36:8
happy  13:4,24
hard  33:23
harper  7:5 9:17
  41:17 42:1 45:2

harris  26:24
hasson  25:25
hastings  31:25
haul  32:4
hear  30:5,22 34:18
  39:20 52:3
heard  34:17
hearing  1:10
  10:15,21 52:5
hearings  44:14
heavily  18:7
hello  9:8
helms  14:20 16:16
  26:13
help  26:13,17 51:4
helpful  51:18,19
helping  49:23
hereto  53:13
high  28:9 30:24
  33:17 34:20 37:15
  39:7 40:25
higher  14:20
  36:15 37:19,21,23
  38:23 40:10 47:15
  48:12 49:12,22
highest  17:19
  30:20 34:1 35:23
  36:6
highlight  22:4
  25:2
highly  16:20 17:15
  17:15
hofmann  6:3
holds  28:2
hollander  6:12
homogeneous  30:3
honor  12:25 13:1
  35:22 36:4 40:13
  45:9
hopscotch  33:2,9

hotel  42:16,16,17
  42:18,21
hour  14:7,8 27:1
  50:16 52:1
hours  37:16
house  42:13
howard  28:17,20
howard's  28:21
huge  28:13 32:12
hulett  7:5 9:17
  41:17 42:1 45:2
hulettharper.com
  7:10
hume  5:13 10:10
  10:20 13:1,1

**i**

impact  26:25
impacted  47:3
implications  25:4
importance  51:21
important  17:21
  18:9 19:7,8 32:14
  32:18 44:23 49:16
  50:18 51:5
improper  19:3
inaudible  43:16,19
inception  47:21
inclined  51:13
included  35:5 38:9
including  22:10
  38:13
increase  30:22
  40:5
increased  28:18
  33:11
indicated  26:19
indication  27:18
indirect  2:3 38:4
  38:20
information  31:15

[informed - limited]

**informed** 28:4
29:18,19
**initial** 38:24 48:3
**input** 32:12
**intention** 13:3
**interested** 53:11
**involved** 15:21
16:8 18:7 19:10
19:18 25:5,20
26:25 27:5 30:8
32:12,15,15,16
39:2 40:1,2 45:23
45:23 46:12 48:2
48:6,8,14,25
**involvement** 38:14
48:3
**irregularity** 12:9
**issue** 14:18 27:6
27:20 29:4 34:3
**issues** 12:24 26:23
26:25 36:10 44:7
**items** 37:18

**j**

**j** 5:12 25:25
**jams** 1:10
**japanese** 14:6,13
14:16,24 15:4
19:13,20,24 20:13
20:16 21:4 24:25
25:16 49:6,10
**jdc** 7:20
**jg** 6:17
**jmalioto** 2:11
**job** 1:19 15:25
17:21 22:9 29:6
33:20 34:23
**joe** 9:6,8 10:1 41:4
**join** 37:9
**joined** 37:22
**joining** 52:1

**josef** 7:16 9:15
**joseph** 4:15,16
6:13
**jpatane** 4:20
**jr** 5:12
**judge** 12:8 39:5
**judgment** 25:5,19
26:5,7,14,18,22
27:1,5 31:14
**judgments** 39:23
**july** 28:5
**juror** 38:10
**justifies** 37:11
**justify** 37:2
**justifying** 38:22

**k**

**k** 5:4
**kag** 5:3
**kaplan** 8:4 9:24
41:17 42:1 45:3
**kenneth** 1:16 53:3
53:22
**kern** 5:4 10:14
11:8 33:16,21
34:14,16 35:10,12
35:14,16
**kern's** 45:18
**kikuchi** 19:16
21:24
**kim** 14:20 16:15
26:13
**kind** 24:5 30:7
31:9 32:1 44:25
**kirby** 5:11 16:6
18:6 24:17 33:18
34:10 35:23 36:13
37:2,6,9,12,17,22
37:23 38:8,23
40:10 41:12 43:17
43:18 44:13 47:15
48:19

**kirby's** 24:24
36:25 38:24 39:9
39:11,24 40:6
49:10
**kirkham** 7:15
**km** 23:15
**kmllp.com** 5:17,18
**knock** 30:21 33:21
**know** 12:8,9,13
13:3,4,11,13 14:25
15:19 16:23 17:24
20:2 22:19 30:25
31:9 32:20 33:3
34:2 36:9 40:22
47:11 48:2,10
49:19 51:19

**l**

**l** 10:4
**lack** 18:23 25:3
**lacking** 26:20
**laid** 47:12
**lake** 5:5
**language** 14:15
19:25 20:1 32:7
49:9
**large** 15:16 18:13
22:17 24:4
**largely** 51:16
**lastly** 28:7 46:14
**late** 28:11
**launching** 13:23
**lauren** 2:7
**laurenrussell** 2:12
**law** 3:4,15 4:15
5:3 33:15 42:18
43:5 47:11
**lawyer** 14:24,24
15:1,2,3 19:20
24:4 34:7
**lawyers** 14:13,16
14:19 15:5 20:13

20:16 21:5 24:25
25:16 26:24 30:23
38:16,18 42:13
**lays** 21:22
**lcd** 28:8,13,14,16
46:16 47:12
**lcds** 38:14
**lead** 10:23 11:19
15:8 17:13 22:6,9
22:13,15,17 23:7
23:10,12,20,21,23
24:5 25:11,19
27:8,25 28:2,12
33:4,13,24 34:5,8
36:19,21,24 37:1,7
37:8,11,15,18,21
37:22,25,25 38:6,7
38:22,24 39:10,12
39:14 44:24 45:20
45:24 46:19 47:1
47:3 48:21
**leaders** 20:3
**leadership** 20:15
21:23 28:20
**leading** 19:23
**leapfrogged** 35:25
**learn** 43:21
**led** 15:22 17:10
19:25 40:24 49:9
**left** 9:22 19:19
**legal** 22:22
**level** 23:15 24:15
24:17 36:14 37:15
37:21,23 39:2,7
48:4,12 49:12,17
49:21,22 50:7,8
**light** 34:12
**lily** 16:1
**limine** 18:2,20
**limited** 22:12

Veritext Legal Solutions
866 299-5127

[line - new]

| | | | |
|---|---|---|---|
| **line** 20:18,18 28:22 | **maker** 44:24 | **mentioned** 22:14 | **motion** 18:2,18,19 |
| **list** 9:21 11:1 | **making** 30:17 39:4 43:24 49:2 51:17 | **mentions** 50:25 | 18:21,24 25:24 26:7 |
| **listed** 14:5 | **management** 48:14 | **metric** 43:4 | **motions** 25:22 39:2 |
| **litigated** 22:7 38:16 | **manner** 12:18 | **mexico** 9:7 41:4 | **moving** 32:2 |
| **litigation** 1:4 | **mario** 2:6 | **micheletti** 6:4 10:14 11:6 35:17 35:18,21 36:9 39:22 45:25 46:2 46:7 50:14,17,19 50:20 | **multiple** 40:25 |
| **little** 27:4 28:10 30:24 32:6 33:17 33:22 34:2,18 47:18 48:7 | **marlo** 8:13 9:23 | | **multiplier** 17:19 24:12,13 28:17 30:21 33:11,14,15 33:16,21,24 34:1 34:20 35:4,23 36:3,6 38:23 40:6 40:9 45:19 50:3,5 |
| | **martin** 1:10 | | |
| | **mason** 6:3 | | |
| | **master** 1:4,10 10:18 11:24,25 12:1,15,20 16:5,12 17:5,6 18:12 19:6 20:7 22:19,23 24:1 25:18 28:7,8 28:15,18,19 29:2 39:5 40:5 41:3,8 42:10 43:1,4 44:15 45:5,7 46:16 47:1,12 51:13 | **mid** 50:8 | |
| **llp** 4:4 5:11 6:3 7:5 | | **mike** 38:10 | |
| **local** 42:16 | | **million** 22:21 23:9 44:19,20 | |
| **lodestar** 14:5 30:20 33:25 35:3 36:1 43:7,8,10,14 43:15,20 44:2,8,17 44:19,21 | | **mind** 14:16 29:21 44:7 | |
| | | **mine** 46:10 49:20 | **multipliers** 15:9 28:9 |
| | | **minor** 39:11 48:7 | **murray** 28:17 |
| **long** 11:1 32:4,14 32:17 40:21,22 | | **minutes** 10:25 11:4,10 13:20 39:19 45:16 | |
| | | | **n** |
| **look** 21:7,25 24:1 28:14 37:1 39:14 | **master's** 24:9 46:15 | **minutia** 49:8 | **n** 2:1 3:1 4:1 5:1 6:1 7:1 8:1 |
| **looking** 13:14 20:22 22:8 44:15 45:19 | **materials** 12:20 | **miscategorization** 27:6,7 | **n.w.** 6:14 |
| | **matter** 33:9 | **miscategorized** 25:7 | **nagano** 14:23 15:1 19:14,20 21:24 |
| **lot** 19:2 32:12 46:6 | **mcinerney** 5:11 16:6 18:6 34:10 41:13 | **misleading** 44:3,5 | **name** 50:25 |
| **love** 41:9 | | **misrepresented** 43:12 | **names** 9:21 10:2 35:19 |
| **low** 33:10,25 48:4 | **mcinerney's** 43:17 43:18 44:13 | **missed** 10:1 | **nate** 9:11 10:3,4 |
| **lower** 36:2 45:19 50:7 | **mdl** 1:6 | **mofo** 14:25 | **nathan** 4:5 |
| | **mean** 11:3 17:18 31:11 35:20 37:13 44:8 51:10,24 | **monday** 9:1 | **nature** 11:22 |
| **m** | | **money** 22:21 33:20 34:9,10,11 | **nearly** 23:14 |
| **m** 4:15,16 | | **montgomery** 3:7 6:5 | **necessary** 12:1 41:24 |
| **mahler** 2:15 9:19 | **means** 23:18 | **month** 27:18 | **need** 13:7,11 36:16 39:13,20,20 47:12 |
| **mail** 28:5 | **meant** 48:23 | **months** 34:2 | **needed** 26:17 49:4 |
| **mails** 11:17 13:14 17:15 51:12 | **members** 17:14 | **moore** 3:15,16 9:20,20 10:7 | **negotiate** 47:3 |
| **main** 19:11 36:10 36:10,15 | **mention** 11:16 35:19 | | **netza's** 46:8 |
| **major** 18:1 32:11 | | | **never** 14:11 25:11 48:13,15 |
| **majority** 19:19 | | | **new** 9:7 41:4 |

Veritext Legal Solutions
866 299-5127

[nm - plutzik]

| | | | |
|---|---|---|---|
| nm  6:15 | 21:12,19,21 22:3 | **p** | pay  23:7 |
| northern  1:2 | 25:9 29:1 34:13 | | pbc  3:11 |
| note  11:16 17:13 | 35:15,17,21 39:19 | p  2:1,1 3:1,1 4:1,1 | people  9:22 11:1 |
| 17:22 23:13 48:22 | 40:11,18 41:2 | 5:1,1 6:1,1 7:1,1 | 12:16 20:2 27:22 |
| noted  16:6,12 18:8 | 44:4 47:16 51:9 | 8:1,1 | 30:6 32:11 33:1 |
| 23:21 36:7,8 | 51:15,22 | p.a.  6:12 | 39:21 51:25 |
| 46:16 50:1 | omnibus  21:18 | p.m.  1:13,13 9:2 | percent  22:16 |
| notes  15:19 17:24 | 27:8 45:25 46:22 | 52:9 | 23:11 29:15 34:6 |
| 19:12 | once  27:23 | pa  8:7 | 43:11,13,20 |
| november  25:23 | ones  40:24 | page  20:18,18 | percentage  43:6 |
| number  10:23 | onwards  47:22 | 22:25 25:13 | 43:10 |
| 11:6 21:9,13 | ooo  52:10 | pages  1:25 39:17 | performance |
| 32:16 35:24 36:2 | opening  22:14 | paid  38:23 | 15:25 |
| 40:14 41:24,25 | 23:1 | painstakingly | period  32:17 |
| numbers  28:22 | opinion  22:6,24,25 | 17:2 | permits  10:23 |
| | 23:5 | papers  11:18 | permitted  11:8 |
| **o** | opportunity  11:11 | 13:23 18:8 22:14 | person  46:1 |
| | 41:8 | 22:25 24:11 26:5 | ph  12:12,12 25:25 |
| o  3:4,5 | opposed  43:15,16 | 31:23 34:22 36:17 | 26:12,20 46:8,9 |
| oak  2:17 | opposing  19:3 | 36:23 44:13 47:25 | phenomenal  22:9 |
| object  12:2,3 | opposite  38:25 | 50:2 51:17,20 | philadelphia  8:7 |
| objected  23:6 | opposition  26:6,14 | paragraph  20:9 | phillips  46:25 |
| objecting  23:14 | 26:22 | 20:11,14 21:22 | phone  10:11,20 |
| objection  10:21 | oral  51:18 | paragraphs  46:19 | 18:21 40:12 41:2 |
| 11:2 12:6 13:22 | order  10:22 11:6 | paramount  51:21 | 41:9 45:13 |
| 13:24 21:16 22:11 | 33:4 | part  19:9 20:1 | place  30:18 53:5 |
| 22:22 23:1 36:25 | ordered  23:7,12 | 21:15 29:12 35:3 | plaintiff  46:7 |
| 40:14 | ordover's  46:9 | participate  41:8 | plaintiff's  23:6 |
| objections  32:7 | organize  42:11 | participated  18:16 | plaintiffs  2:3 |
| objector  18:16 | original  21:1 | particular  19:13 | 15:18 38:4 |
| 19:5 29:10 | originally  19:15 | 38:5 | plane  41:10 |
| objectors  29:11 | 28:18 | particularly  15:5 | planning  35:22 |
| 30:2 31:2 | ought  12:18 29:9 | parties  53:10,13 | plastic  42:20 |
| october  1:12 9:1 | 41:1 | partner  10:19 | played  15:5 |
| office  4:15 10:9 | outlines  16:25 | partners  38:9,10 | plaza  6:14 |
| 42:18 43:6 | 17:1,3,8 | 50:21,21 | pleading  39:2 |
| offices  3:4,15 | outset  37:13 | passthrough  46:11 | please  31:24 41:6 |
| 33:15 | outside  42:13 | patane  4:15,16 | pleasure  22:10 |
| oh  21:2 | overall  16:11 | 9:23 | plus  35:14 |
| okay  9:21 10:6,12 | 22:12,16 24:17 | patrick  3:6 9:13 | plutzik  2:15 9:19 |
| 11:13 14:4 15:12 | 33:25 34:6 48:14 | 10:8 | |
| 15:15 17:12 19:12 | | | |
| 19:17 20:6,11,17 | | | |

[pocket - representatives]

pocket  35:9 42:2,3
  42:5,8 43:7,9,19
  44:1,22
point  11:18 12:11
  13:2 25:16 30:13
  36:24 37:7 44:11
  46:1 47:25 48:13
  49:19
points  22:4 36:22
  37:3,4 44:9 45:24
  46:24 49:6
portion  23:8
position  14:13
  30:25 33:10,12,14
  45:18
post  39:23 40:2
precedent  22:22
  50:16
preliminary  11:15
prep  39:23
preparation  27:10
  27:10 40:1 50:9
prepare  26:12
  43:22
prepared  18:5
preparing  46:8,9
prescott  2:5
prescribed  12:19
present  8:13 17:5
presentation
  10:16
presented  18:11
  29:21
pretty  34:22
pride  31:12
primary  38:16
principle  23:17
prior  15:22 38:20
probably  30:23,23
procedures  13:8

proceedings  12:10
  12:23 40:8 52:8
  53:4,6,11
product  11:22
project  32:9
proof  18:23
proper  13:8 40:23
properly  13:18
proportion  23:19
proposed  14:5
  17:19
provide  37:4
provided  26:21
purchase  18:23
purchaser  2:3
  15:18 38:4,20
purely  19:5
pursuant  12:7
put  11:21,21 12:17
  13:7,14 30:9
  31:23 36:12,21
  42:19 44:16
puts  46:19
putting  30:10

q

qianwei  38:11
quality  22:11
  24:24 25:10
quantity  24:24
  25:10
quarter  48:10
question  14:4
  23:19
questioning  17:16
questions  13:21,24
  14:3 17:7 24:23
  28:25
quickly  45:15
quinn  1:10 9:6,9
  10:10,19 16:6
  40:5 41:3 45:7

quite  29:15

r

r  2:1 3:1 4:1 5:1
  6:1 7:1 8:1 10:4
r&r  39:6
r.p.c.  8:4
raised  27:12
rank  31:17
ranked  31:17 33:5
rate  14:7,14,19
  27:19,20 48:17
  49:19
rates  15:4 49:7
ray  1:4
reached  26:17
  27:13
read  11:5
real  12:16 17:15
  45:3,6
reality  35:25 40:7
really  13:3 14:25
  17:17 34:3 40:24
  48:5,9,11
reason  25:23
  36:15 48:19
reasoned  28:9
reasoning  28:12
reasons  36:11
  41:23
recategorized
  27:16
received  19:1
recognizing  49:13
recommendation
  16:13 46:17
recommending
  16:13
reconvene  52:2
record  12:14,17
  12:22 13:7 16:5
  40:7,10

redacted  12:14
reduce  23:12
  43:15
reduced  14:7,14
  43:15 53:7
reducing  14:11
reemphasize
  51:16
refer  20:6 22:23
reference  29:7
  35:23 41:13
references  51:1
referred  25:17
referring  13:10
  36:5 39:13
reflect  14:6
reflects  27:21
regarding  26:7
  50:22
regardless  22:15
related  18:22
  53:12
relation  31:6
relative  29:7 30:16
  31:10 32:17,19,19
  32:23 48:17
relatively  33:25
relied  11:19
relies  37:7 38:6
rely  11:23 12:21
  51:4,16
relying  38:22
remind  28:15
rep  48:6
reply  46:4
report  16:12 46:16
reported  1:16 36:1
reporter  53:1,4
representatives
  18:14,22

**[represented - special]**

| | | | |
|---|---|---|---|
| represented  43:11 | reviewers  14:15 | saying  21:6 35:7 | setting  15:9 34:23 |
| request  10:22,25 | 19:13 49:7,10,17 | 35:10 | settled  15:18 |
| 11:3 | reviewing  11:24 | says  15:19 17:24 | settlement  18:9,17 |
| requested  12:5 | 49:11 | 19:21 | 19:4 21:3 32:15 |
| 46:2 | rich  33:22 34:2,6 | sc  1:5 | 39:23 40:2 46:25 |
| requesting  11:9 | ridiculous  49:20 | scarpula  10:6,8,9 | settlements  16:13 |
| required  42:18 | right  13:16 14:2 | 40:14 | 44:19 47:4 |
| reserve  34:5 | 21:11,25 30:18,19 | scarpulla  3:4,5 | shape  48:22 |
| reserved  23:8,10 | 38:1 42:7 43:2 | 9:13,13 24:9,13 | share  23:12,20,23 |
| 23:13 | 45:14 50:13,15 | 40:13,20 47:6,6,8 | shares  23:20 |
| reserves  23:23 | risk  16:19 44:16 | 47:8 51:1,2 | shea  12:12 |
| resources  47:2 | 44:16,17,21,22,23 | scarpullalaw.com | short  42:5 |
| respect  11:2 20:13 | road  2:17 | 3:10,11 | shorthand  32:22 |
| 24:3,18 25:19 | robert  5:12 | schedule  51:23 | 53:3,5 |
| 27:1 38:5 39:9,22 | role  15:5,16 16:1 | scheduled  26:3 | shown  36:2 |
| 45:20 47:9 50:22 | 28:20 37:25 39:9 | scheduling  10:21 | side  30:24 31:4,6 |
| respond  10:23 | 39:11,18 48:7,21 | sdi  16:8 17:16 | signature  53:21 |
| 11:9,12 13:20 | roles  32:6 | 18:19 26:1 48:9 | significant  37:5 |
| 28:25 34:19 36:16 | room  42:18 | seal  12:4,7,22 13:8 | similar  23:9 |
| 45:17 47:18 51:12 | rooms  42:17,17 | 13:18 | simply  11:9 27:20 |
| responded  50:1 | rule  50:16 | second  30:19 34:1 | sixth  17:18 35:23 |
| response  11:16,23 | rules  12:7,19 | 43:3 | 36:5 |
| 20:9 21:17 30:4 | 27:23,24 28:6 | seconds  45:22 | sizable  42:20 |
| 36:11,25 46:23 | run  16:11,19 | section  18:16 | skillfully  19:22 |
| 47:24 | 49:23 | see  9:22 13:4,11 | skip  25:16 |
| responsibilities | | 13:16 14:3 39:17 | small  24:3 48:3 |
| 20:15 21:23 42:11 | **s** | 45:14 49:25 51:23 | solely  44:16 |
| 51:5 | s  2:1 3:1 4:1 5:1 | seek  11:21 | solid  24:18 |
| responsibility | 6:1 7:1 8:1,6 | seeking  24:11 | solo  15:25 33:19 |
| 17:25 18:20 19:2 | samsung  15:16,17 | selecting  16:16 | somewhat  16:1 |
| 25:22 39:3 | 15:21,23 16:2,8 | 17:8 49:16 | 33:6 42:3 48:2 |
| responsible  18:13 | 17:16 18:18 19:1 | senior  38:7,9,11 | sorry  36:20 50:2 |
| 18:24 25:24 | 26:1 48:9 | 38:12,18 | sort  13:5 44:6 |
| rest  50:4,5 | san  1:11 2:9 3:8,18 | sense  44:14 | sought  18:25 |
| resulted  39:3 | 4:18 5:6,15 6:6 | sensitive  11:22 | space  42:17 |
| results  17:10 45:1 | 7:8,18 9:1,17 41:9 | september  20:8,23 | speak  11:8 51:8 |
| review  23:2 27:11 | 42:13,14 | 20:24 46:20 | speaking  13:2 |
| 39:10,15 49:22,22 | sansome  3:17 | service  31:5 | 16:19 |
| 49:23 | sawa  14:23 19:20 | set  26:21 34:25 | speaks  11:1,7 51:7 |
| reviewed  12:8 | 49:9 | 36:17 40:3 | special  1:10 10:18 |
| 19:21 | sawa's  49:19 | | 11:24,25 12:1,15 |

12:20 16:5,12
17:5,6 18:12 19:6
20:7 22:19,23
24:1,9 25:18 28:7
28:8,15,18,19 29:2
39:4 40:5 41:3,8
42:10 43:1,3
44:15 45:5,7
46:15,16 47:1,11
51:13
**specifically** 42:19
**spent** 29:12
**spoke** 29:13
**spread** 22:12 24:7
34:4
**sram** 38:17
**stages** 37:17
**stand** 21:5 31:10
**standing** 26:8
**stands** 39:24
**start** 32:2,10 34:13
**started** 33:12
37:13
**stated** 53:6
**statements** 10:24
50:23
**states** 1:1 25:20
**status** 12:13
**stay** 43:8
**step** 29:9
**stepped** 27:2
**stewart** 7:5,6 9:16
9:17,17 10:7
18:20 23:4
**stick** 51:23
**stickler** 12:16
**story** 31:4,6
**straight** 44:7
**strategizing** 17:9
**strategy** 16:17
32:15

**straus** 4:4,10 9:12
10:2 14:20 15:22
18:18 19:25 32:3
33:10,14,19 34:9
48:18 49:8,14
**street** 2:8 3:7,17
4:17 5:5,14 6:5
7:7,17 8:6
**stress** 27:17
**strike** 18:21,24
**stuff** 19:5
**subcontract** 34:7
48:21
**subcontracted**
24:4
**subject** 14:17
**submit** 12:4 19:4
45:2
**submitted** 10:17
12:14 22:7 51:18
**submitting** 12:7
**subsequent** 21:7
**substantiate** 11:17
**success** 37:6
**suggest** 27:4 46:12
**suggestion** 17:20
**suggests** 27:9
**suite** 2:17 5:14 6:5
6:14 7:7
**summarize** 13:21
22:4
**summarizes** 20:14
**summary** 13:23
25:5,19 26:5,7,14
26:18,22 27:1,5
39:23
**supervising** 19:24
**supervision** 53:8
**support** 18:8,17
21:3 23:1 26:22
37:4 46:4,22

**supporting** 37:19
**supports** 45:5
**sure** 16:4 17:23
32:11 34:25 36:4
44:11 45:12 51:19
**surprised** 34:18
**surrounding** 44:7
**sylvie** 5:4 33:16
48:18
**sylviekern** 5:8

**t**

**t** 1:16 6:4 53:3,22
**take** 22:1 26:12
29:4,9 39:19
44:24 46:9,15
**taken** 34:6 53:5
**takers** 49:15
**takes** 14:13
**talk** 24:22,24,25
25:2,4,6,8 27:7
33:1 43:3 44:14
**talked** 21:4 23:16
23:18 25:2 26:10
**talking** 17:17
20:17 22:20 28:23
47:5,7,9
**talks** 14:10 22:19
**task** 48:25
**tasks** 48:4,20
**tatp.com** 2:12 4:20
**tbattin** 4:10
**team** 15:24 16:10
16:11 17:2,8,14
38:9 49:9
**tehama** 7:17
**telephone** 3:3,14
4:3,14 5:13 6:11
7:4,14 8:3,13
**tell** 21:11 31:3,5
**tempting** 51:11,24

**term** 32:14
**testimony** 19:1
46:3,11,11
**thank** 9:25 10:12
10:18,20 11:13,14
13:19 29:1,2
32:25 33:8 40:11
40:18 41:7 45:7,8
47:17 50:11 51:22
52:5,7
**thanks** 10:1
**thereof** 25:3
**theresa** 3:15,16
9:20
**thing** 11:16 40:21
43:2 44:12 46:16
**things** 12:7 13:6
13:20,22,25 24:22
25:1,11 27:7
33:18 41:11 42:24
43:21 47:12
**think** 12:11,22
13:10,14 14:15
15:15 16:5,10,10
16:11 17:7 18:8
19:5,8 22:8,15
23:25 24:6,18
25:17 27:4 29:14
30:6,22,23 31:8
34:4,22 39:5,24
40:7 43:2 44:3
45:4 50:6,11,24
51:7,7
**thinks** 16:1
**third** 30:2
**three** 13:19 15:22
24:4 25:11 29:12
32:4 34:7 42:4
48:1
**tier** 34:12,12

[tigar - zelle]

**tigar** 12:8
**time** 17:15 20:25
  22:2 24:12 25:7
  25:12 26:11,25
  27:10,14,16,21
  29:17 32:17 34:16
  35:1,8,10,11 40:21
  40:22 42:5 43:5
  44:20 47:20,23
  50:3,6,12 53:5
**times** 25:14 47:2
**timing** 37:8,18
**timothy** 4:6 9:11
  10:5
**tmoore** 3:20
**today** 10:15,24
  11:25 16:22 29:21
  47:19 51:3
**told** 15:15 27:14
  27:23
**top** 30:19
**toshiba** 18:21,22
**total** 43:18
**totally** 47:23
**tough** 46:14
**translated** 19:22
**translating** 49:11
  49:13
**translation** 32:7
**translations** 16:18
**translators** 14:7
**transmute** 42:12
**tremendous** 30:6
  38:19
**trial** 17:14 33:24
  39:23 40:1 42:12
  43:22 50:9
**true** 18:2,3,6 25:6
  25:21 38:8 39:1
**trump** 2:5,5 24:2
  24:16,19 25:3

33:6
**try** 43:23
**trying** 42:11
**tube** 1:4
**turn** 30:12
**turned** 46:10
**two** 10:2 14:16
  22:23 24:4,8 27:7
  34:7 38:9,10
  41:16,25 45:16
  49:10
**tyler** 9:11
**type** 12:9
**typewriting** 53:7

**u**

**unanimity** 30:7
**unauthorized**
  25:12 46:25
**unbiased** 31:16
**undermine** 19:4
**undermined** 47:1
**understood** 36:9
  50:17
**undertaking** 32:11
  32:13
**underway** 16:9
**unhappy** 26:19
**union** 2:8 4:17
**united** 1:1
**university** 4:7
**unsolicited** 17:14
**untrue** 50:23
**unwind** 18:25
**urias** 6:12
**use** 43:5

**v**

**va** 4:8
**value** 44:25 45:1,3
  45:6

**variety** 41:23
**various** 32:21
**view** 32:1 36:11
**viewpoint** 48:16
  48:16
**virtue** 36:1
**vis** 30:16,16 32:2,2
**vital** 23:19
**vitamin** 23:18
**vitamins** 22:24
  23:16 28:1,1
**voelbel** 6:3
**volumes** 51:7

**w**

**wait** 28:24
**walnut** 2:18
**want** 9:4 10:2 12:9
  12:16,17 13:19,20
  13:21,22 16:3
  22:1 24:24,25
  25:2,4,6,7 27:14
  27:17 28:15 36:23
  36:24 40:20 41:5
  41:7 44:10,12
  45:17 51:15
**wanted** 11:16 13:4
  24:22 25:2 27:15
  29:14 34:14 36:4
  45:21
**wants** 11:25 17:6
  43:1,4
**ward** 6:12
**way** 11:5,19 16:10
  22:6 23:2 42:21
  43:2 47:14 53:11
**we've** 11:18 25:17
  36:22 51:4
**weeks** 29:12
**weighed** 32:21
**went** 14:19 42:24

**west** 7:7
**whack** 33:5
**work** 11:22 16:15
  22:10,11 23:15
  24:5,15,17,25
  25:10,15 26:6
  29:4,8 30:9 34:8
  37:21,22 39:16,18
  39:23,24 40:2,23
  40:23 46:18 47:13
  48:12 49:1 50:8
**worked** 16:16,17
  23:3 37:14 47:20
  47:21,22
**working** 34:2 38:2
  38:2,19
**writers** 49:15
**writing** 10:17
**wrong** 43:13,14
**wrote** 17:7 42:19

**y**

**yahoo.com** 5:8
**yeah** 11:5 20:25
  31:25 35:13 36:7
  51:15
**year** 14:24 15:2,3
  35:2,12 48:10,11
**years** 15:22 32:4
  48:1

**z**

**zahid** 38:10,14
  47:10 50:23
**zelle** 6:3 22:10
  36:1 37:5,12,13,20
  37:24 38:7,9,16
  39:1,25 40:7,9,23
  41:1 45:22 46:18
  46:25 47:6,8,14
  48:18 50:21 51:4

Page 14

[zelle's - zelle.com]

**zelle's**   36:12,17
   39:18 47:13
**zelle.com**   6:8

Veritext Legal Solutions
866 299-5127