# EXHIBIT 6

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              SAN FRANCISCO DIVISION

4    _____

5    IN RE: CATHODE RAY TUBE (CRT))
     ANTITRUST LITIGATION          )
6                                  )
                                   )
7                                  )
                                   ) Case No. 3:07-cv-5944
8                                  )
     _____)

9

10

11      HEARING BEFORE SPECIAL MASTER HON. MARVIN QUINN

12              San Francisco, California

13             Wednesday, October 5, 2016

14

15

16

17

18

19

20

21   Reported by:

     JOANNA BROADWELL

22   CSR No. 10959

23   Job No. 2459187-B

24

25   PAGES 1 - 66

                                        Page 1

1                  UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF CALIFORNIA

3                    SAN FRANCISCO DIVISION

4    _____

5    IN RE: CATHODE RAY TUBE (CRT))

     ANTITRUST LITIGATION          )

6                                  )

                                   )

7                                  )

                                   ) Case No. 3:07-cv-5944

8                                  )

     _____)

9

10

11

12          PROCEEDINGS before SPECIAL MASTER HON. MARVIN

13    QUINN taken at Two Embarcadero Center, Ste. 1500, San

14    Francisco, California, beginning at 3:01 p.m. and ending

15    at 4:24 p.m. on Wednesday, October 5, 2016,

16    before JOANNA BROADWELL, Certified Shorthand

17    Reporter No. 10959.

18

19

20

21

22

23

24

25

Page 2

```
1    APPEARANCES

2

3    For Indirect Purchaser Plaintiffs:

4

5    Trump, Alioto, Trump & Prescott

6    By:    Mario Alioto

7           Lauren Capurro

8    Attorneys at Law

9     2280 Union Street

10    San Francisco, CA 94123

11    (415) 563-7200

12   E-MAIL: jmalioto@aliotolaw.com

13   E-MAIL: laurenrussell@tatp.com

14

15   Bramson, Plutzik, Mahler & Birkhaeuser

16   By:    Daniel E. Birkhaeuser

17           Attorney at Law (By telephone)

18   2125 Oak Grove Road, Suite 120

19   Walnut Creek, CA 94598

20   (925) 945-0200

21   E-MAIL: dbirkhaeuser@bramsonplutzik.com

22

23

24

25
```

Page 3

```
 1    (Continued Appearances - Page 2)

 2

 3    LAW OFFICES OF FRANCIS O. SCARPULLA

 4    By:    Francis O. Scarpulla

 5           Patrick B. Clayton

 6           Attorneys at Law

 7    456 Montgomery Street, 17th Floor

 8    San Francisco, CA  94104

 9    (415) 693-0700

10    E-MAIL: fos@scarpullalaw.com

11    E-MAIL: pbc@scarpullalaw.com

12

13

14    Straus & Boies, LLP

15    By:  Tim Battin

16         Attorney at Law (By telephone)

17    4041 University Drive, Fifth Floor

18    Fairfax, VA  22030

19    (703) 764-8700

20    E-MAIL: tbattin@straus-boies.com

21

22

23

24

25

                                          Page 4
```

```
 1    (Continued Appearances - Page 3)

 2

 3    Law Office of Joseph M. Patane

 4    By:   Joseph M. Patane

 5          Attorney at Law (By telephone)

 6          2280 Union Street

 7     San Francisco, CA 94123

 8    E-MAIL: jpatane@tatp.com

 9    (415)563-7200

10

11    KAG Law Group

12    By:    Sylvie K. Kern

13           Attorney at Law

14    P.O. Box 210135

15    San Francisco, CA 94121

16    (415) 221-5763

17    E-MAIL: sylviekern@yahoo.com

18

19

20

21

22

23

24

25
```

Page 5

```
 1    (Continued Appearances - Page 4)

 2

 3    Law Office of Brian Barry

 4    By:    Jeffrey C. Shea

 5           Attorney at Law (By telephone)

 6    1801 Avenue of the Stars, No. 307

 7    Los Angeles, CA   90067

 8    (310)788-0831

 9

10

11    Milberg LLP

12    Elizabeth McKenna

13    Attorney at Law (By telephone)

14    One Kennedy Square

15    777 Woodward Avenue, Suite 890

16    Detroit, MI 48226

17    (212)631-8605

18    E-MAIL: emckennna@milberg.com

19

20

21

22

23

24

25
```

Page 6

```
 1    (Continued Appearances - Page 5)

 2

 3    Robert J. Gralewski, Jr.

 4    Attorney at Law (By telephone)

 5    Kirby McInerney LLP

 6    600 B Street, Suite 1900

 7    San Diego, CA  92101

 8    (212) 371-6600

 9    E-MAIL:  Bgralewski@kmllp.com

10

11    Freedman Boyd Hollander Goldberg Urias & Ward P.A.

12    Joseph Goldberg

13    Attorney at Law (By telephone)

14    20 First Plaza N.W., Suite 700

15    Albuquerque, NM 87102

16    (505) 244-7520

17    Email:  JG@FBDLAW.com

18

19

20

21

22

23

24

25
```

Page 7

1    (Continued Appearances - Page 6)

2

3    Hulett Harper Stewart LLP

4    Dennis Stewart

5    Attorney at Law (By telephone)

6    550 West C Street, Suite 1500

7    San Diego, CA   92101

8    (619) 338-1133

9    Email:  dennis@hulettharper.com

10

11   Cooper & Kirkham

12   Tracy R. Kirkham

13   Attorney at Law (By telephone)

14   357 Tehama Street, 2nd Floor

15   San Francisco, CA   94103

16   (415) 788-3030

17   E-MAIL: trk@coopkirk.com

18

19

20

21

22

23

24

25

                                          Page 8

```
 1    (Continued Appearances - Page 6)

 2

 3    Zelle Hofmann Voelbel & Mason LLP

 4    Christopher T. Micheletti

 5    Attorney at Law

 6    44 Montgomery Street, Suite 3400

 7    San Francisco, CA  94104

 8    (215) 567-6565

 9    E-MAIL:  cmicheletti@zelle.com

10

11    Law Offices of Theresa D. Moore

12    By:  Theresa D. Moore

13         Attorney at Law (By telephone)

14    One Sansome Street, 35th Floor

15    San Francisco, CA  94104

16    (415) 434-8900

17    E-MAIL: tmoore@aliotolaw.com

18

19

20    Also Present:  Marlo Cohen (By telephone).

21

22

23

24

25
```

Page 9

1       San Francisco, California, Wednesday, October 5, 2016

2                           3:01 p.m.

3                   TRANSCRIPT OF PROCEEDINGS

4           SPECIAL MASTER QUINN:  All right.  We'll commence

5       the hearing now.  Could attorneys on the phone identify

6       themselves, please?

7           MR. SHEA:  Jeff Shea.

8           MS. KIRKHAM:  Tracy Kirkham for Cooper & Kirkham.

9           MR. BATTIN:  Tim Battin from Straus & Boies.

10          MR. STEWART:  Dennis Stewart from Hulett, Harper

11      & Stewart.

12          MR. GRALEWSKI:  Bob Gralewski from Kirby

13      McInerny.

14          MR. GOLDBERG:  Joe Goldberg in Albuquerque, New

15      Mexico.

16          MR. PATANE:  Joseph Patane, San Francisco.

17          MS. MCKENNA:  Elizabeth McKenna from Milberg.

18          SPECIAL MASTER QUINN:  Who was it from Milberg?

19          MS. MCKENNA:  Elizabeth McKenna.

20          SPECIAL MASTER QUINN:  Thanks.

21          MR. BIRKHAEUSER:  Dan Birkhaeuser from Bramson

22      Plutzik, Mahler & Birkhaeuser.

23          MS. COHEN:  Marlo Cohen.

24          SPECIAL MASTER QUINN:  All right.  I got

25      Mr. Shea, Ms. Kirkham, Mr. Battin, Mr. Stewart,

Veritext Legal Solutions
866 299-5127

1    Mr. Gralewski, Mr. Goldberg, Mr. Patane, Ms. McKenna,

2    Mr. Birkhaeuser and Ms. Cohen.  Did I miss anyone?

3            All right.  All right.  Just a little

4    housekeeping.  I received this morning an ECF filing

5    Docket 4929, a declaration of Mr. Scarpulla.  In

6    general, my policy is I'm not going to receive any

7    additional filings.  But this was received before the

8    oral hearing and it relates to something that happened

9    at a hearing yesterday or the day before.  So I am going

10   to receive this and consider it.

11           But I ruled earlier today that a filing Mr. Shea

12   made and I believe maybe Mr. Papale also made a recent

13   filing that they made after the close of their oral

14   hearings, and I'm not going to consider those because

15   nobody has had a chance to register any objections to

16   them, and there just has to be an end to this at some

17   point.

18           So I will receive the Scarpulla declaration,

19   Docket 4929.  And the other point is that I don't know

20   to what extent the hearing today is going to get into

21   the Cooper objection.  Mr. Cooper indicated he could not

22   be present, and I don't want to be unfair to him.

23   Ms. Kirkham is on the phone and I'm sure is able to

24   defend the firm.  But I do need to let you know that we

25   can go over an hour.  We can go to about 4:30 or so.  I

Veritext Legal Solutions
866 299-5127

1   don't know what the court reporter's time is, but we're

2   not going to go much beyond that.  So let's bear that in

3   mind and get this done quickly and efficiently.  That

4   brings us to Mr. Scarpulla.

5          MR. SCARPULLA:  Yes, Your Honor.

6          SPECIAL MASTER QUINN:  Would you like to add

7   something to the papers you filed which I have read?

8          MR. SCARPULLA:  I don't have a lot to add, Your

9   Honor, except to say that I would like to again ask that

10  we get a copy of whatever it was between Mr. Alioto and

11  the Zelle firms because that affects my allocation.  It

12  affects the allocation of everybody in this case.

13  Because the argument that I would make is that based

14  upon -- as I understand it, what the agreement was,

15  Zelle was essentially to act as the co-lead counsel.  If

16  that's the case, then whatever I did while I was there

17  was as part of an entity that was the shadow co-lead.

18  And everything I did, Your Honor, in this case was

19  either to benefit -- everything I did was to benefit the

20  class, but it was done either because it was something

21  that Zelle was responsible for and because I was the

22  senior antitrust lawyer there at the time, or it was

23  because the special -- the special master in charge of

24  both discovery and settlement asked me to get involved

25  in it.

Veritext Legal Solutions
866 299-5127

```
1         MR. ALIOTO:  Your Honor, I want to interject an
2    objection.  It's a standing objection, continuing
3    objection to any statements attributed to the Special
4    Master Walker.  That's complete hearsay.  That's No. 1.
5    No. 2, it's completely unfair to try and inject Special
6    Master Walker into a private fee allocation dispute
7    where he's a special master, where communications with
8    him are subject to a mediated privilege.  And this is
9    one of the recurring themes by Mr. Scarpulla that he was
10   given all of these instructions --
11        SPECIAL MASTER QUINN:  Just make the objection.
12        MR. ALIOTO:  Objection as to hearsay.  No
13   foundation, and improper to the extent you're trying to
14   implicate the Special Master in a private fee
15   allocation.
16        SPECIAL MASTER QUINN:  Okay.  I'm ready to roll.
17   So there may be other statements that have hearsay
18   problems.  All that's been said so far is that
19   Mr. Scarpulla had conversations with Special Master
20   Walker and that Special Master Walker asked him to do
21   some things.  I think at the moment those statements are
22   offered for the fact that they were made not for the
23   truth of the matters asserted, so it's not hearsay.  And
24   as to the standing and propriety of injecting Judge
25   Walker into this, Judge Walker is here whether he likes
```

Page 13

1    it or not.  And there's been reference to this in the

2    omnibus fee motion.  I mean, it's there, and as long as

3    comments about the -- my co-special master remain

4    respectful and so on, I don't see a problem with it.

5        MR. ALIOTO:  But may I have a continuing

6    objection so I don't pipe up every time it's raised?

7        SPECIAL MASTER QUINN:  You may.

8        MR. SCARPULLA:  As Your Honor knows, the

9    discussions that went on culminated in that proposed

10   order that Judge Walker entered and which is in the

11   record.

12       SPECIAL MASTER QUINN:  So as I understand the

13   significance of the interchanges with Judge Walker, they

14   really -- I think they have two areas in which they're

15   perhaps significant.  One is whether Mr. Scarpulla --

16   whether it's appropriate to compensate him for the time

17   he spent talking to Mr. -- Judge Walker, and Mr. Alioto

18   has been critical of that and suggested he should not be

19   compensated for that.  And then it has some significance

20   because it bears on the criticisms Mr. Scarpulla makes

21   of Mr. Alioto's handling of his tasks as special master,

22   which goes to whether the allocation should be adjusted.

23   So I think it has two areas of significance.  I just

24   want to be sure I'm understanding it correctly.

25       MR. SCARPULLA:  Absolutely.

Page 14

1          MS. KIRKHAM:  Excuse me, Special Master, could I

2     be heard?  It also is a third area of significance which

3     is Mr. Alioto's claim that Cooper & Kirkham's multiplier

4     should be negative because of this misleading of Special

5     Master Walker into the R&R which resulted in the counsel

6     being diverted from trial preparation harmed the class.

7     So lead counsel himself has certainly interjected Judge

8     Walker into these proceedings in a real way.

9          SPECIAL MASTER QUINN:  I take your point.

10         Go ahead, Mr. Scarpulla.

11         MR. SCARPULLA:  I do not intend to say anything

12    that would infringe on any kind of settlement discussion

13    that was in terms of a mediation in front of Judge

14    Walker.  I attended none of those, so I can't tell you

15    what occurred in any mediation with Judge Walker, and I

16    don't -- even if I had attended and knew, I wouldn't

17    tell you because it's covered by privilege.  So I want

18    to be very clear about that.

19         The other thing I wanted to say, Your Honor, is

20    that Your Honor, I gave you all of my time sheets.

21         SPECIAL MASTER QUINN:  Yes.

22         MR. SCARPULLA:  And my time sheets are pretty

23    clear about what I did.  There's no wasted time.

24    Mr. Alioto points to a couple of instances where there

25    is a reference to LCDs.  That's because something that

Page 15

1    occurred in that case was relevant to an issue that was

2    coming up in CRTs.  That's the only reason they're in

3    there.  And throughout Mr. Alioto's time sheets, the

4    ones I could read because they're handwritten, there was

5    references that he looked at a whole group of -- a whole

6    number of things in the LCD litigation.  So, I mean,

7    that's -- it's not unusual that in one case there would

8    be a brief or something like that that would be relevant

9    to another case you're working on, then you would look

10   at it.

11        He also points out that there are several

12   instances in which there were -- I had conversations

13   about settlement.  And he cites you to three of them

14   early on.  I believe they're in 2008.  All of those

15   conversations, Your Honor, were with Mr. Joel Sanders,

16   who called me and asked me if I would please arrange a

17   meeting of Plaintiff's counsel so that he could make a

18   proffer to Plaintiff's counsel similar to the one he had

19   done in LCDs where he would give us a roadmap of the

20   alleged conspiracy, fixed prices of CRDs in return for

21   which we would give him a -- an early out settlement of

22   $10 million.

23        MR. ALIOTO:  Excuse me.  Excuse me just a moment,

24   your Honor.  Continuing objection.  Hearsay.

25        SPECIAL MASTER QUINN:  Why -- I don't want to

```
1    drill down too far into --
2          MR. SCARPULLA:  I understand.
3          SPECIAL MASTER QUINN:  But why is Mr. Sanders
4    calling you instead of lead counsel?
5          MR. SCARPULLA:  Because he doesn't know Mario,
6    number one.  Number two, I was the one in the case that
7    had all the experience.  I've been at this for almost 50
8    years, Your Honor.  I've got all of the awards.  And
9    throughout this nation, you know, antitrust lawyer of
10   the year, best lawyers in America, super lawyers and the
11   most prestigious of all of them.
12         SPECIAL MASTER QUINN:  I wasn't questioning your
13   experience.
14         MR. SCARPULLA:  That's why I was calling, because
15   I know what I'm doing and Mario doesn't, period.  That's
16   the end.  So I called Mr. Alioto and told him that Joel
17   wanted to meet and we set up a meeting.  And that's why
18   there were those entries.  I think it's a total of maybe
19   30 minutes.  Those are those entries and that's the
20   reason for it.  And if there are any others, it's only
21   because some defense lawyers called me and asked me to
22   get involved.  And I kept telling them, "Call Special
23   Master Walker.  He's the one who is in charge of this.
24   If you have a problem, call him and tell him what it
25   is."  And so there are indeed other short entries about
```

Page 17

1    settlement.

2        I don't know what else to tell Your Honor.  I

3    mean, I did everything I was supposed to do.  And by the

4    way, the order appointing Mr. Alioto required him --

5    didn't -- it wasn't, you know, it was mandatory that he

6    had to keep -- he had to have record -- record and

7    administer all time and expenses of counsel and their

8    staff.  My firm, as I understand it, reported on a

9    fairly regular basis to the accountancy firm that

10   Mr. Alioto told us to report to.  Presumably he got

11   copies of them and read them.  And if there was a

12   problem, he should have called me and told me, "Don't do

13   this."  Nobody called me and told me not to work on this

14   case.  Nobody.  Okay?

15       By the way, that's the one thing -- that's how

16   you could tell people kept contemporaneous time sheets,

17   because if they didn't report it to that accountancy

18   firm and they didn't do it, I'll bet you Mr. Alioto

19   didn't send his time sheets in.

20       MR. ALIOTO:  Just for the record, Your Honor,

21   Mr. Scarpulla had his opportunity to criticize my firm.

22   That was Monday.  That was two days ago.  Standing

23   objection that this is out of the scope of this hearing.

24   I would like to have some time here to talk about

25   Mr. Scarpulla.

Page 18

1            SPECIAL MASTER QUINN:  You will have time.  Okay.

2    Let me just say, I mean, nobody is under oath here.

3    This is not testimony.  I am really, you know, not

4    applying rules of evidence in these hearings.  I'm just

5    trying to get information to clarify any questions that

6    remain after reading the written submissions.  And so,

7    you know, I'm trying to run an orderly discussion here,

8    but I'm not really applying the rules of evidence.

9    So -- but it's, you know, fair if you want to object and

10   bring my attention to statements that are being made

11   that for some reason seem unreliable.

12            Can we see if I've got my brain around the Zelle

13   situation?  As I understand it, while you were still at

14   Zelle you recorded time on this case of about $424,000

15   at historic rates.

16            MR. SCARPULLA:  Correct.

17            SPECIAL MASTER QUINN:  And you made a deal with

18   Zelle when you left that you'd split that 50/50.  Half

19   would belong to Zelle; half would belong to you, and you

20   would submit a motion in this case for your half.

21            MR. SCARPULLA:  No, just a declaration.

22            SPECIAL MASTER QUINN:  Okay.  Declaration --

23   relating to your half, and Zelle would submit a

24   declaration containing the other half of your time.

25            MR. SCARPULLA:  Correct.

Page 19

1        SPECIAL MASTER QUINN:  But you were not to be --

2   you were not to get any money from Zelle from the

3   $212,000 of your fees that it kept.  Any money that came

4   in for that time was to go to Zelle and stay there,

5   correct?

6        MR. SCARPULLA:  Well, that all depends.  If

7   the -- if the Lodestar, which was a -- half of my

8   Lodestar, 200 and some odd thousand which was assigned

9   to me as a number, if that was paid out of the

10  attorneys' fees, the gross attorneys' fees plus an

11  identical multiple that Zelle got that was mine and

12  whatever the same on the other half that they kept, that

13  was theirs, I got nothing from them.  However --

14       SPECIAL MASTER QUINN:  Let me just continue.

15  That was the deal, but then for whatever reasons, Zelle

16  decided not to submit in its fee application your

17  $212,000, correct?

18       MR. SCARPULLA:  Correct.  Correct.

19       SPECIAL MASTER QUINN:  And you are now asking the

20  Court to essentially give that 212,000 that you agreed

21  to give to Zelle back to you so that you can be

22  compensated for it on the theory that it was your time

23  and somebody should be compensated for it.

24       MR. SCARPULLA:  Right.  And if they don't want

25  it, somebody should get it.  It was time spent, Your

Page 20

1    Honor, for the benefit of the class.  If they don't want
2    it, I'll take it.  If they want it, they can have it.
3            SPECIAL MASTER QUINN:  I'm not expressing any
4    opinion.  I just want to be sure I've got it straight.
5            MR. SCARPULLA:  I understand.
6            SPECIAL MASTER QUINN:  Mr. Micheletti, as I
7    gather, the Zelle firm has given up any claim on the
8    common fund for the 212,000 that represents one half of
9    Mr. Scarpulla's Lodestar?
10           MR. MICHELETTI:  That's correct, your Honor.  And
11   I do want to correct one --
12           SPECIAL MASTER QUINN:  Let me ask you another
13   question.  Does the Zelle firm -- I don't know how
14   important this is, but does the Zelle firm have any
15   objection to Mr. Scarpulla essentially recapturing that
16   half and putting in a claim himself?
17           MR. MICHELETTI:  I don't think he's entitled to
18   it.  I think the agreement speaks for itself.  The
19   agreement -- Zelle owns all the time.  Zelle entered an
20   agreement assigning to Mr. Scarpulla the $212,000.  He
21   can do whatever he wants with it.  We went through the
22   audit process.  Time was cut.  Some of Mr. Scarpulla's
23   time was cut, Mr. Corbitt's, some of mine.  I mean,
24   there was -- time was cut, obviously, and there was an
25   amount left of Mr. Scarpulla's time.  It was -- I

Page 21

1    believe it was close to what ultimately lead counsel to

2    put down as the current Lodestar, maybe $66,000.  So at

3    the end of day after the audit, that was the real

4    question, are we going to put in that sum.  And we chose

5    not to do so.

6              SPECIAL MASTER QUINN:  Okay.

7              MR. MICHELETTI:  I also want to correct one

8    thing.  There was no agreement, nothing in the

9    assignment agreement, the separation agreement that

10   required us to submit his time in connection with that.

11   We are free to do with the $9 million Lodestar that we

12   had, whatever we wanted to, and we weren't bound to do

13   anything.  That was our call.  And there was also

14   nothing in the agreement regarding Mr. Scarpulla

15   obtaining an identical multiplier.  I mean, maybe he

16   gets one at the end of the day.  I don't know.  But

17   there was nothing in the agreement that addressed that.

18             SPECIAL MASTER QUINN:  Okay.

19             Go ahead, Mr. Scarpulla.

20             MR. SCARPULLA:  Your Honor, I basically -- I've

21   said everything in my papers, Your Honor.

22             SPECIAL MASTER QUINN:  How refreshing.

23             MR. SCARPULLA:  I don't want to keep you here

24   unnecessarily.  If you have questions for me, then ask

25   me.  If I want to respond to something that somebody

Page 22

1    says, I'll do it.

2         SPECIAL MASTER QUINN:  Well, I'll reserve my

3    questions until I've heard from Mr. Alioto.

4         Go ahead.

5         MR. ALIOTO:  Thank you, Your Honor.  And we

6    recognize that it's all in the papers and that you're

7    going to give weight to what's in the papers, but I just

8    want to make sure that those points in the papers got

9    across because this is an extraordinary situation.  We

10   have a lawyer who applied for a lead counsel position

11   and was not given that appointment.

12        It happens every day.  It's happened to me on

13   numerous occasions.  Members of the Zelle firm got on

14   board and joined the effort in a non-lead role.

15   Unbeknownst to me, that from very, very early on in the

16   case, Mr. Scarpulla was not on board.  And it's very,

17   very unfortunate that that happened.  I wish it didn't

18   happen, but I had no control over it and I had no

19   knowledge of it.

20        And what we have here over the course of this

21   case, not so much in 2011, 2012, 2013, that's when Mr.

22   Scarpulla was pretty well engaged in the LCD case.  In

23   fact, if you look at his time records in 2012, there's

24   not one time entry, right?  He was doing LCD.

25        SPECIAL MASTER QUINN:  No, he's got some time in

Page 23

1   2008 and then he's got some, you know, more significant

2   time in 2013 --

3           MR. ALIOTO:  Right.

4           SPECIAL MASTER QUINN:  -- '14 and '15.

5           MR. ALIOTO:  So there was a little time early on,

6   but then when he finished up with LCD, he -- I don't

7   know what the best term to use is, so maybe I just won't

8   use any term.

9           SPECIAL MASTER QUINN:  Probably a good idea.

10          MR. ALIOTO:  He decided to get involved in this

11  case.  He made that decision.  He decided what to do.

12  He decided what ought to be done in the case.  He, based

13  on his opinion of his legal abilities, got involved,

14  unbeknownst to me, unbeknownst to the leading lawyers in

15  the case who were handling the case.  And there was

16  absolutely no reason to be doing that.  That is the

17  problem.  You have a lawyer substituting his views and

18  his opinions and what he would like to do in the case,

19  substituting it for the opinions of the duly appointed

20  lead counsel and lead counsel's team.

21          Now, what would happen if everybody in this case,

22  the 50 law firms took that approach?  It's bad enough to

23  have one or two lawyers doing that.  It's a very, very

24  serious detriment to the case.  And that's what we have

25  from Mr. Scarpulla.  I think you saw a little of this in

Page 24

```
 1   the LCD case, some of the same players, where you have
 2   factions running these cases and factions working on
 3   settlements and factions setting up even depositions and
 4   having disputes about who is going to go to depositions
 5   and who is not.
 6          I'm not going to go on and on on this because I
 7   think you get the message.  That's what happened here
 8   from very, very early on.  If there is criticism of lead
 9   counsel -- and I had over the course of -- I wouldn't
10   call it criticism, but I had some very pointed
11   suggestions.  And I had some very constructive advice
12   and e-mails and letters given to me over the course of
13   the case from my co-counsel which I greatly appreciated.
14          SPECIAL MASTER QUINN:  For example, I think I've
15   seen a letter from October 2014 that Mr. Scarpulla and
16   Mr. Goldberg and some other people wrote you, basically
17   saying, "Hey, you know, are you ready to go to trial in
18   this case, and can we get our act together and can we
19   help you?"  Is there anything improper in your mind
20   about lawyers writing you a letter --
21          MR. ALIOTO:  No, not at all.  In fact, that's the
22   point I was getting at, that I got that over the course
23   of the case from other people.  And this was a little
24   bit more of a formal request because there were a number
25   of lawyers on it.  And it went through a laundry list of
```

Page 25

1  items in the case. And I responded. And not only did I

2  respond, but I got on the phone with everybody on that

3  letter and talked to them about the case, including

4  Mr. Cooper and Scarpulla.

5      SPECIAL MASTER QUINN: So where -- where do you

6  think -- I mean, I've heard a number of things that

7  Mr. Scarpulla did which he doesn't dispute. He was

8  critical of the LG settlement. He was perhaps critical

9  of another early settlement. He thought they were too

10 low. He got involved in the issues with the California

11 Attorney General's office. He, you know, talked to

12 Judge Walker about various things. Where is it that you

13 feel he overstepped the line of propriety that separates

14 giving constructive advice to lead counsel, disagreeing

15 with lead counsel and becoming disruptive and

16 counterproductive?

17     MR. ALIOTO: In every one of those situations you

18 just identified, every one of them.

19     SPECIAL MASTER QUINN: In every one you thought

20 he was over the line on the wrong side?

21     MR. ALIOTO: First of all, it was unknown to lead

22 counsel. That's number one, unknown. Number two, let

23 me give you the example of the dealing with the

24 California A.G.

25      I dealt with the California A.G. Other people

1    dealt with the California A.G.  And the primary person

2    involved with the California A.G. was a former assistant

3    attorney general for the State of Michigan.  He was

4    dealing with the A.G.  We're trying to work out

5    problems.  The objectors refer to that as a problem with

6    the A.G.  It's actually a problem with Philips.

7         Philips entered into a settlement with the A.G.

8    that could be construed as giving a very broad release

9    of claims.  It's a Philips problem.  But we were working

10   with the A.G. and Philips to get that resolved.  And

11   when you're working through channels like that with the

12   A.G. and you have somebody else out there doing things,

13   you don't have control over the situation.  The A.G. is

14   dealing with two people.  He's playing the two against

15   each other.  That's why you have a lead counsel.  Let me

16   give you another example that might -- that might

17   sharpen this up as well.

18        You early on and even later on as we're

19   approaching trial, you're in pretty serious settlement

20   negotiations with the defendants.  You know, in these

21   cases, there is this issue that comes up sometimes of a

22   reverse auction.  And the minute the defendants get wind

23   that there are other people involved in the settlement

24   negotiations and the defendants get wind that they may

25   be able to strike a better deal with somebody else, it

Page 27

1    is just murder for the settlement negotiations if the

2    defendants perceive that there's no cohesiveness among

3    the plaintiff's group.  And that's what we had here with

4    Mr. Scarpulla and Mr. Cooper, unbeknownst to me at

5    first, and then it became apparent.

6            And that is very, very difficult, Your Honor.

7    I'm hanging on trying to get the most money for the

8    class, and I'm facing this prospect of somebody else

9    trying to reverse auction it at a lower price to get the

10   quick settlements.  Very difficult situation.  Who told

11   Mr. Scarpulla and Mr. Cooper to do that?  Not me.  Not

12   me.  Suppose Mr. Goldberg and Mr. Birkhaeuser and

13   Mr. Battin and some of these other people that are all

14   working together on the case, suppose they were all out

15   there doing that.

16           SPECIAL MASTER QUINN:  Okay.

17           MR. ALIOTO:  Okay.

18           SPECIAL MASTER QUINN:  Any other points?  I mean,

19   I think I've got that point.

20           MR. ALIOTO:  And if I might, in the sessions

21   before Judge Walker where Mr. Scarpulla was present and

22   Mr. Baranini, the California A.G., there were definite

23   statements to the mediator by Mr. Scarpulla to the

24   effect that we were grossly overvaluing the case, that

25   he put some value, for example, on Samsung of

Page 28

1    $50 million.  Those are very difficult things because

2    you have someone within your own camp talking to the

3    settlement mediator.  And in order to get up from those

4    statements by Mr. Scarpulla to get back to where we

5    think we should be and what the evidence would support

6    and what all the workup in the case would support, it

7    took work to get us back where we thought we should be,

8    and we were able, thankfully, to do it.

9         It took us a lot longer, and it took us effort

10   that we shouldn't have had to expend, but we were able

11   to do that.  That's the -- that is the background on

12   these two individuals, Mr. Cooper and Mr. Scarpulla.

13   They took it upon themselves to -- I'll borrow

14   Mr. Scarpulla's term, they became real shadow leads,

15   shadow in the sense we didn't even know about it.

16   Shadow in the sense that they were behind the scenes and

17   it was detrimental.

18        Now, what does that all have to do with what

19   we're doing here today?  And it's in the papers.  The

20   Samsung settlement offer, the Philips settlement offer,

21   and I might mention Mr. Scarpulla was advocating early

22   on for a quick deal with Philips.  And in the low -- in

23   the low teens, I think 14 million for Philips, saying

24   you got to get them out, 14 million.  We've got 175 from

25   them.  The ironic thing about that is now Mr. Scarpulla

Page 29

1  says, "You didn't get enough.  You went cheap.  I could

2  have got more.  I'm the antitrust lawyer of the century.

3  I could have gotten more."

4       I think I misspoke -- "the antitrust lawyer of

5  the year.  I would have gotten more."  Those activities

6  unfortunately -- I mean, you've to call a spade a spade.

7  It was officious intermeddling.  I think that's the term

8  in the law, officious intermeddling.  And it was

9  detrimental, and how it plays into this analysis is that

10  it needs to be taken into account in allocating a fee

11  for both Mr. Scarpulla and Mr. Cooper.  And here's the

12  standard.  Here's the -- here is the standard we use

13  when we made this allocation.

14       And this is directly from the order in the LCD

15  case.  Did these people, Mr. Scarpulla and Mr. Cooper --

16  and this applies to some degree to Ms. Moore -- did

17  these people, quote, "act collaboratively to prosecute

18  the joint IPP effort?  Did they act collaboratively to

19  prosecute the joint IPP effort?"

20       These points are all in the brief, Your Honor,

21  but I want to just have it in front of you in summary

22  fashion.  And I want to make sure that you know what all

23  the fuss is about here.  Because this is what the fuss

24  is about.  They have no client.  They represent

25  themselves.  Mr. Cooper did no substantive work in the

Page 30

1   case.   There's no time sheets from Mr. Cooper.

2   Mr. Bogdanov was responsible for the work for his firm.

3   Mr. Cooper did no work, and yet Mr. Cooper is injecting

4   himself into the most delicate aspect of the case

5   settlement in a multi, multimillion dollar case, working

6   behind the scenes at cross purposes to other counsel.

7   I've described to you what that is.   There's more in the

8   papers, but I've given you the flavor of what that is

9   about.   Here is one of the biggest problems of all.

10  Mr. Cooper represented the California class rep.   We

11  sent him a copy, or we informed him of the settlement.

12          SPECIAL MASTER QUINN:   Wait a minute.   I thought

13  you said they didn't have any client.

14          MR. ALIOTO:   They had a client -- good point.

15  They had a client in the case.   Mr. Cooper had a client

16  in the case.   Mr. Scarpulla represented the Zelle

17  clients.   All right.   When it came time to object to the

18  settlement, Mr. Cooper didn't come in and object on

19  behalf of his client.   He came in and objected for -- I

20  think it said for the indirect purchaser class.

21          SPECIAL MASTER QUINN:   I recall that.

22          MR. ALIOTO:   Mr. Scarpulla came in and objected

23  on behalf of Zelle's client, and Zelle contacted him and

24  said, "Hey, wait a minute, this is not right.   That's

25  not your client."   The whole thing was a little unseemly

Page 31

1   to put it mildly.  But as it panned out and as it shook

2   out, when they were making the objections to the

3   settlement, they were making them for no one.  They

4   were -- they were in a rogue capacity, for want of a

5   better term.  But the important point, to take a step

6   back, we served everyone with the preliminary approval

7   papers in advance.

8           This is very important because these people,

9   Scarpulla and Cooper, were in the case.  They got the

10  preliminary approval papers.  Plan of allocation, the

11  notice process, the description of the settlements.

12  Everything you need to know about the settlement was in

13  those papers.  We got some hue and cry from Cooper and

14  Scarpulla, they had some big to-do, some big objection

15  about they were concerned about how their fees would be

16  decided on and what the procedure was going to be on the

17  fees.  We took care of that.  We resolved that.  But

18  there was no problem with the notice and all of these

19  various issues that you dealt with on final approval.

20          None of that stiff was brought up.  If it was

21  brought up, we could have sat down, worked it out and

22  not had to go through -- this was back in I think around

23  May of 2015.  Here we are in October of 2016, well over

24  a year out from when we originally filed these papers.

25  We could have avoided all that.

Page 32

1     Why did they do that?  Why did they sit back, not

2 raise the objections, then and wait until a multimillion

3 dollar notice went out and then make the objections?

4 Well, I'll get to that in a minute.  That's the coup de

5 gras.  The important thing is, they objected to the

6 settlements.  They objected to the aggregate fee,

7 Mr. Scarpulla, Mr. Cooper.  Are they acting

8 collaboratively to prosecute the joint IPP effort?  Are

9 they pushing here?  Are they with the team?  Are they

10 with the cause, trying to get this thing done, trying to

11 get the money to the claimants?

12     Now it's been approved.  The settlement has been

13 finally approved on your recommendation, finally

14 approved by the Court, the aggregate fee on your

15 recommendation adjusted by Judge Tigar but finally

16 approved.  Mr. Scarpulla and Mr. Cooper, notice of

17 appeal to the Ninth Circuit.

18     Are they acting collaboratively to prosecute this

19 effort?  They're acting to turn the settlement upside

20 down.  They're acting to throw the fees out.  Their

21 objections for the most part rejected, and some in some

22 very strong terms as bordering on frivolous, as having

23 absolutely no foundation, no basis, some very statements

24 as to some of their objections.

25     And finally Mr. Cooper.  Just parenthetically I

Page 33

1   might add, he has a plaintiff who is due to receive a

2   very substantial incentive award and who is due to

3   receive a share of the fund for his purchases.  That's

4   Mr. Cooper's client.  Mr. Scarpulla doesn't have any

5   underlying client, but Mr. Cooper's client is being held

6   hostage now by Mr. Cooper because it's all on appeal.

7        SPECIAL MASTER QUINN:  Well, even if Mr. Cooper

8   were to withdraw his appeal tomorrow, you'd still have

9   all of the other appeals.  So you couldn't pay the

10  incentive award anyway.

11       MR. ALIOTO:  Well, that's true.  But does that --

12  but is Mr. Cooper acting collaboratively to prosecute

13  the joint IPP effort?

14       SPECIAL MASTER QUINN:  I understand your point.

15       MR. ALIOTO:  Okay.  Thank you.  I'm sorry to beat

16  it to death.  Why are they doing all of this?  Why are

17  they doing all of this?  To help the class as they say?

18  To guarantee the rights of -- I think Mr. Cooper said,

19  "I want to guarantee the rights of resellers" back when

20  we had those proceedings about Chunghwa.

21       He doesn't represent resellers.  He doesn't

22  represent anybody.  Resellers had due process notice.

23  They could have opted out.  They could have objected.

24  They didn't need Mr. Cooper to get in there and pitch

25  for them.  Was that acting collaboratively to prosecute

Page 34

1    the joint IPP effort?  Now we have a little piece of the

2    settlement out here.  More expense, more notice costs,

3    more claims period.  It's very small amount of money

4    going to be claimed by huge resellers.  I don't know how

5    that's going to all play out, but that is a concern.

6          The reason I bring this up is if they want to do

7    that as a strategy move, if they want to proceed in that

8    fashion, if they feel they are not part of the case and

9    they want to go sideways and they want to take the case

10   on and they want to take on this role of objectors, if

11   they want to -- I'm sure this will come as no surprise

12   to you that these objectors, they try to upset things.

13   They claim compensation.

14         Ms. Moore tried to -- is claiming compensation

15   for upsetting the fee award.  Said, "I saved

16   14 million."  That -- whether that is going to --

17   position will be sustained remains to be seen, but I'm

18   trying to illustrate the position.  "I saved

19   $14 million.  I want money."  Mr. St. John said because

20   of him your recommendation was changed by Judge Tigar

21   because of Mr. St. John.  He wants a very substantial

22   award.

23         If past is prologue, you can expect to see

24   Mr. Scarpulla and Mr. Cooper seeking some type of award

25   if they are successful or trying to get some benefit or

Page 35

1     some leverage out of the delay that their appeals are

2     going to cost. And it is not unknown and not unheard of

3     for objectors who are holding the process captive to go,

4     for example, to the claims aggregators. Hey, you --

5          SPECIAL MASTER QUINN: Okay. I think we're

6     spinning off into speculation of what might happen. I

7     know how the process works.

8          MR. ALIOTO: That is all I wanted to convey, Your

9     Honor. So what the real point is if I can bring this

10    home -- and I'm sorry for going adrift here -- the real

11    point is, these factors enter into the allocation to

12    Mr. Scarpulla and Mr. Cooper. You can't treat them the

13    same as somebody who's in here working to get these

14    settlements done and someone who has been part of a team

15    to get this result.

16         SPECIAL MASTER QUINN: Okay. I'm sorry to

17    interrupt, but I just want to be sure I get my questions

18    answered. What about Mr. Bogdanov's work? I don't know

19    if Ms. Kirkham did any work on the case, but I

20    understand most of the Cooper work was done by

21    Mr. Bogdanov.

22         MR. ALIOTO: That's correct --

23         SPECIAL MASTER QUINN: And they have a pretty

24    healthy Lodestar. I forget what it was, but it's a

25    healthy one. Do you have any criticisms of the quality

Page 36

1    of his work or any reason arising out of his work for a

2    fee reduction?

3            MR. ALIOTO:  I have some good news for on that

4    and some bad news.  The bad news is, yes, we believe

5    that the description of his work was embellished, and we

6    believe that -- we believe that he had a much higher

7    view of the value of that work than we had.  So that's

8    the bad news.  The good news is I'm not going to get

9    into that in detail because it's all in the briefs.

10   It's in our brief, our -- it's in our omnibus response,

11   number one.

12           And as Your Honor knows, there's still pending

13   that motion to strike, there's a motion to strike out

14   there.  Mr. Scarpulla -- excuse me -- Mr. Cooper filed a

15   motion to strike.  We responded to the motion to strike,

16   and a reply is due very shortly.  But our comments on

17   Mr. Bogdanov are in our opposition to the motion to

18   strike.  I can give you his dockets.

19           SPECIAL MASTER QUINN:  No, I have them.

20           MR. ALIOTO:  Okay.  4911, 4911-2.  It's all in

21   there.  And, no, we're not critical, and no, we're --

22   no, we're not critical and no, we don't want to

23   castigate anybody's work, but we believe that he's given

24   it more importance than we gave it in our allocation.

25   That's the only point I want to convey on that.  So the

Page 37

1    quality of the work, applying these factors.

2         SPECIAL MASTER QUINN:  But for the issues you

3    have with Mr. Cooper's actions, what kind of a

4    multiplier would you have given did the Kirkham firm?

5         MR. ALIOTO:  He probably would have had some

6    multiplier.  I can see that.  But it would not be up in

7    these higher tiers.  There's no way it could have been

8    in those higher tiers.  It would have been down in the

9    document-level range tiers.  And again, I don't say that

10   in a disparaging way.  Document work is important.  But

11   relative to what other people were doing, strategy

12   decisions, trial work, it would be on the lower range of

13   the spectrum.

14        SPECIAL MASTER QUINN:  Okay.  So this is

15   important and I know it's important to you.  Have you

16   said for the moment everything you have to say?

17        MR. ALIOTO:  The only other thing I would like to

18   say is I would like to have three minutes of clean-up at

19   the end for housekeeping details.

20        SPECIAL MASTER QUINN:  Okay.  Ms. Kirkham, there

21   have been some glancing references to Mr. Cooper.  Do

22   you have anything you want to say, or do you want to let

23   Mr. Scarpulla carry your torch?

24        MS. KIRKHAM:  Actually, I have a few things I

25   would like to say.  And one of them, actually, you bring

Page 38

1    up when you ask me that question.  And that is that as

2    you look at this record, I would really encourage you to

3    look separately at Mr. Scarpulla and Mr. Cooper.  They

4    are not law partners.  They're not Siamese twins.  There

5    is no basis for imputing the conduct of Mr. Scarpulla to

6    Mr. Cooper or the conduct of Mr. Cooper to

7    Mr. Scarpulla.  Lead counsel lumps them together, but I

8    believe that you need to look at them separately and

9    look at what each one did.

10           I didn't interrupt during that long, long

11   dissertation because you had said at the beginning of

12   the hearing that you did not consider anything that was

13   being said at the hearing evidence.  And that brings me

14   to another point that I would like to make, which is

15   that you have to look at what -- which of lead counsel's

16   claims are based in evidence and which of them are

17   argument, inference, speculation, because I think that

18   that's very instructive to take a look at what does the

19   evidence say happened, not what sinister inferences does

20   lead counsel bring to that evidence.  And there is no

21   evidence -- and I think this goes to Mr. Scarpulla, but

22   certainly there is no evidence that any action of

23   Mr. Cooper in any way directly impaired impeded the

24   activities of other counsel in the case in bringing the

25   case to a successful conclusion.

Veritext Legal Solutions
866 299-5127

1          That also brings me to the couple of things that

2     there is evidence of Mr. Cooper's doing.  And it kind of

3     brings me to this whole question of I believe you've got

4     to make a determination and get the evidence on whether

5     or not there was, in fact, an agreement between

6     Mr. Alioto and the Zelle firm about what Zelle's role

7     was going to be, because a significant chunk of the

8     evidence that is in lead counsel's papers, or so-called

9     evidence about what Mr. Cooper and Mr. Bogdanov did that

10    was so terrible and so unauthorized was -- were

11    activities that were done in conjunction with Zelle

12    Hoffman.  And this is the activity in early 2013 with

13    regard to the quote, unquote settlement overtures to

14    Philips.

15          All the evidence shows is that there were

16    conversations between lawyers at Mr. Bogdanov and

17    Mr. Cooper and lawyers at Zelle Hoffman.  These were not

18    behind the scenes.  Those time sheets show that

19    Mr. Alioto was talking to Zelle at the same time that

20    Zelle lawyers were talking to Mr. Cooper and asking

21    Mr. Bogdanov to write an e-mail, as Mr. Corbitt did,

22    about his thinking on the evidence.  And you've got to

23    look at actually what the evidence is, but if, in fact,

24    Zelle was authorized at that point in time to act as, in

25    effect, a co-lead counsel, then Mr. Cooper's activities

Page 40

1    with Zelle can't be unauthorized.  And they went no

2    further than Zelle.  There is no evidence that

3    Mr. Cooper's activities, that he ever talked to a

4    defense counsel.

5           So you've got to look at what the actual evidence

6    is, and you've got to ask yourself whether or not that

7    evidence shows that Mr. Cooper's alleged lack of

8    collaboration had any deleterious effect on the interest

9    of the class.  And I want to say one thing about the

10   oft-quoted reference to those words from Judge Illston

11   in LCD.

12          There is only one case in the history of class

13   actions that I could find that suggest that a factor in

14   assessing the value of and the contribution of a law

15   firm in a case is whether or not that firm was a team

16   player.  As long as the firm did its work, and there's

17   no question that Mr. Bogdanov, that Cooper and Kirkham

18   to Mr. Bogdanov, and to a much lesser extent myself, did

19   our work, did our jobs.

20          There is no subjective litmus tests of, you know,

21   did lead counsel like you?  Were you a team player?

22   Were you collaborative and cooperative?  Did you ever do

23   anything that was against what lead counsel wanted?  I

24   would really -- you know, it found its way into the

25   lexicon in LCDs.  It found its way into the lexicon

Page 41

1    because Judge Illston was listing the factors that the

2    special master in LCDs, who we all know very well,

3    considered in dealing with a special situation there

4    between Joseph L. Alioto and the Zelle firm.

5         And I really -- as we said in our papers, this is

6    a highly elastic term, dangerously elastic, and to now

7    start to put this in as a valid consideration, unhinged

8    from the traditional measure of whether the activity

9    benefited the class or did not benefit the class, is

10   very dangerous.

11        And, in fact, the law really says there are kind

12   of like three levels.  There is activity that benefited

13   the class for whom there clearly should be adequate,

14   fair and reasonable compensation.  There is activity

15   that didn't benefit the class but didn't harm anything,

16   for which maybe you don't pay for it.  That's

17   duplicative work and that sort of thing.  And then,

18   third there is activity that is in conflict with the

19   interests of the class.  And that is the only category

20   that I know of that has ever been held to justify a

21   punitive measure such as lead counsel is proposing here.

22        SPECIAL MASTER QUINN:  Let me ask you,

23   Ms. Kirkham, how did it benefit the class to raise

24   objections to the settlement which made, you know, legal

25   arguments about the, you know, propriety of the

Page 42

1    settlement and whether -- you know, whether it should be

2    approved?  How did that benefit the class?

3            MS. KIRKHAM:  That actually sits in its own

4    little category of consideration.  The law holds that

5    settlement objections are beneficial.

6            SPECIAL MASTER QUINN:  Well, some are.

7            MS. KIRKHAM:  The law says that -- the Court is

8    too.  Unless they're frivolous, there has been no

9    suggestion that anything we raised was frivolous.  The

10   law says that central to the approval process which is

11   of benefit to the class, in an open discussion of all of

12   the issues surrounding the approval process, and the

13   question of whether the -- you know, the releases were

14   too broad, the question of whether the resellers should

15   be paid, all of those questions were appropriately

16   raised.  The Court treated us as -- you know, the Court

17   said that we didn't have perhaps technical standing, but

18   the Court treated us as amicus because we raised

19   beneficial questions.  The law says that objectors are

20   not -- there are lots of things.  We don't make

21   objectors pay the attorneys' fees if they lose in their

22   objection because that would have a chilling effect on

23   objection.  We don't make objectors pay bonds based on

24   the value of the case because that would have a chilling

25   effect on objectors.

Page 43

1          The law is very clear that you don't punish

2     objectors.  The question of whether you compensate them

3     is slightly different, but that's not what we're

4     actually talking about here because none of that time is

5     at issue for compensation.  So the question here is

6     saying that can -- it's okay to treat outside objectors

7     as benefiting the class, and the law is clear that we

8     do, of whether they win or lose, but what's happening

9     here is that the -- that the talk about collaborative

10    and team playing is raising a new area of the law which

11    is that if someone inside the class, Someone who is the

12    most knowledgeable, actually, in raising an objection,

13    raises on objection to assessment, disagrees with lead

14    counsel, then it's okay to punish them.  We will chill

15    that kind of activity.

16          SPECIAL MASTER QUINN:  Okay.  I get your point.

17    I want to make sure everybody gets a chance to speak

18    here.

19          Mr. Scarpulla?

20          MR. SCARPULLA:  I just have a couple of things,

21    Your Honor.  First of all, on that issue that you just

22    asked about, what is the objection, How do we benefit

23    the class, that's something that's going to be decided

24    in the future if we're successful in the Ninth Circuit.

25    That has nothing to do with the prior time and what we

1    did prior to any of those objections.  That's not a

2    relevant fact to be considering whether what we did

3    previously benefited the class.  That's the issue on

4    this hearing for the allocation of this amount of money.

5    It has nothing to do with time which has not been put

6    before the Court, because none of the time is in

7    anybody's Lodestar, to my -- at least it's not in mine.

8    And I don't know whether it's in Cooper's.  I don't

9    think so, but I don't know.

10        So I just want to make that clear that if we win,

11   then of course we've benefited the class.  And you won't

12   know that until the end.

13        SPECIAL MASTER QUINN:  Well, if you win and you

14   undo Judge Tigar's order approving the settlement, there

15   is no settlements.

16        MR. SCARPULLA:  Correct.  You come back down.

17        SPECIAL MASTER QUINN:  Maybe you can negotiate a

18   better settlement with the defendants.  Maybe you can

19   negotiate a worse settlement.  Time moves on.

20        MR. SCARPULLA:  Exactly.

21        SPECIAL MASTER QUINN:  And did your -- the

22   objections that you and the Cooper firm raised, did they

23   not, you know, put the class at some unnecessary risk,

24   maybe out of good and proper motives, but is that

25   something that is fair to consider in allocating

Page 45

1  attorney's fees, that you put the class at some

2  considerable risk here?

3      MR. SCARPULLA:  If at the end of the case when

4  those issues have been decided, but not for this portion

5  of the case, because that has nothing to do with it.  We

6  could go up to the Ninth -- we could come back -- if the

7  Ninth Circuit reverses it, we could come back and try

8  the case and end up with $2 billion.  That's a much

9  better deal for the class.

10      SPECIAL MASTER QUINN:  I'm sorry.  I mean, I know

11  that this is -- you know, but it's been the elephant in

12  the room for me ever since I had to deal with these

13  objections, which is the quite unusual situation where

14  two class counsel, distinguished members of the

15  antitrust bar, are objecting to essentially their own

16  settlement.

17      And I'm not suggesting there was anything

18  improper about it, but it's such an odd situation and it

19  put the class at, you know, a real risk.  And it also, I

20  understand, has a potential gold mine at the end.  It

21  can go either way.  But why did you think it was

22  important to do that?  And why do you think it is

23  irrelevant to the attorneys' fee determination?

24      MR. SCARPULLA:  Because we did not believe that

25  the settlement, the way it was structured, was fair to

Page 46

1   the class.  We objected -- what we objected to, Your

2   Honor, was that portion of the settlement which released

3   claims for half the country with no consideration.  We

4   didn't object to any -- that's what we objected to.  So

5   the only thing that can happen there is that those

6   people get money, not from -- not from the current fund

7   of money but new money.  That's the objection.  So it

8   has nothing to do with putting at risk the $500 million

9   to this class.

10          SPECIAL MASTER QUINN:  Okay.  I understand.

11          MR. SCARPULLA:  Okay.

12          SPECIAL MASTER QUINN:  Why is it irrelevant --

13  why is it improper for lead counsel who, you know, for

14  good or ill is trying to run this locomotive, and you

15  know very well how hard it is to be lead counsel and how

16  challenging that position is?  Why is it not appropriate

17  for that to be a consideration in deciding how much

18  multiplier to give?

19          MR. SCARPULLA:  Because we were successful in the

20  objection we made with regards to the Chunghwa

21  settlement.  They had to do it over again.  We were

22  successful in that.  We were successful in reducing the

23  amount of fees to 14 million.  I'm not asking for any of

24  that the right now.  I'm not asking to be compensated

25  for that.  That is something that might occur in the

Page 47

1   future, but that's not now.  That's not for now.  And so

2   we were successful in two of these things that benefited

3   the class.  Additionally, if we're successful in the

4   argument that half the country should receive some kind

5   of consideration over and above what is already in the

6   bank, then we will have been successful for that --

7   those members of the nationwide class.

8          MS. KIRKHAM:  Can I also say one thing?  If you

9   look at this as a conceptual legal question as opposed

10  to right here, the assumption of your question, Special

11  Master Quinn, is that the settlement is a good thing, or

12  that I guess any settlement is a good thing.

13         Because if you're going to -- if you're going to

14  set up a legal standard that chills internal -- chills

15  lawyers for the class in objecting to a settlement

16  negotiated by lead counsel, then you have to assume that

17  that objection is wrong.  It's a bad thing to have

18  happen.  It's bad for the class.  So that has to assume

19  that the settlement is good for the class.

20         But the law books are filled with settlements

21  that are overturned by the Courts of Appeal because they

22  aren't in the best of interest of the class.

23  Settlements that the lead counsel in those cases, I'm

24  assuming, negotiated in perfectly good faith and

25  proposed in perfectly good faith.  I mean, some of them

Page 48

1    you might wonder about, but most of them.  And so you

2    can't come at it backwards by saying that, you know, any

3    settlement is better than litigating and therefore

4    anything that challenges a settlement is detrimental to

5    the class.  You can't make that a rule of law.  And

6    therefore we are going to set up a standard on fees that

7    chills this kind of dissent, this kind of objection.

8            SPECIAL MASTER QUINN:  Okay.

9            MS. KIRKHAM:  Unless -- okay.

10           SPECIAL MASTER QUINN:  I get it.  And I want to

11   caution everybody.  Don't read any imputation of what my

12   thinking might be into the questions I ask.  And also

13   another comment Ms. Kirkham made, I don't want you to

14   think I am not paying attention to rules of evidence

15   with respect to the stuff that's in writing.  I am.  And

16   I know how to, I think, distinguish evidence from

17   speculation, and I'll be attentive to that.  It's just

18   in these oral hearings I'm trying to get the information

19   I need without being unduly restrictive.

20           Is there anybody else on the call?  I know there

21   are people in the room who may want to speak, but is

22   there anybody else on the call who has anything they'd

23   like to add?  All right.  Hearing silence, I don't know

24   whose turn it is.  Mr. Scarpulla, go ahead.

25           MR. SCARPULLA:  I had one other point.

1    Mr. Alioto said something about me telling him --

2    talking to him about the Philips settlement and $14

3    million.  I don't -- I never discussed money with the

4    defendants when they called and said, "We can't get this

5    case settled."  I kept telling them, "You have to get in

6    touch with the special master.  He's in charge of that,

7    and if you have a problem, you call him."  I -- and

8    Mr. Alioto said I never -- that I was doing all this on

9    my own hook.  I wasn't.

10           I was consulting with people at Zelle, and we

11    were supposedly the shadow co-leads.  And I did talk to

12    Mr. Alioto on several occasions.  He just told you I

13    talked with him one time and told him we should take $14

14    million from Philips.  When I talked to him initially,

15    it was about the LG settlement.  I told him it was way

16    too low.  You can't take 25 million from this big

17    company who has the ability to pay, get it from somebody

18    else where there's a problem.  At Philips there was an

19    evidentiary problem.  It was sequencing.  It had nothing

20    to do with amounts.  Okay?

21           And I would -- and Mr. Corbitt knew exactly what

22    was going on because he and I would talk about this.

23    And he was the one who was having the conversations with

24    Mr. Alioto.  It's all over their time sheets.  So you

25    know, it's not like we were acting in a vacuum and in

Page 50

1    secret here.  Everybody knew what we were doing.  We

2    were trying to produce the best result for the class.

3            SPECIAL MASTER QUINN:  And I think while you were

4    doing all the things that are at issue here, you were

5    with the Zelle firm.

6            MR. SCARPULLA:  Absolutely.

7            SPECIAL MASTER QUINN:  Okay.  Mr. Alioto and

8    Ms. Capurro, anything further?

9            MR. ALIOTO:  I would like to just have my

10   housekeeping matters, and I'd like to just make one

11   statement to follow-up on your comment, and if you want

12   to cut me short, that's fine.  But it has to do with the

13   risk and the danger to the settlement.  And this

14   is -- this is not a fun part of my job because you have

15   these two objectors out there.  And as Your Honor knows,

16   there are still active motions, litigated matters before

17   Judge Tigar that have broad consequences for these

18   cases.  There are rulings on FTAIA.  There are

19   evidentiary --

20           SPECIAL MASTER QUINN:  I saw one just the other

21   day.

22           MR. ALIOTO:  There was one the other day.  And

23   there is the prospect that this could go to the Court of

24   Appeal, and the Court of Appeal could tweak it in some

25   minor way or do heaven knows what.  You know how this

Page 51

1  goes when you go up on appeal with all of these issues.
2  Something could happen to this very, very good
3  settlement, and it could come down from the Ninth
4  Circuit. And the whole landscape could have changed out
5  in front of Judge Tigar by his rulings. And we could
6  then go to the defendants and say, "Okay. Now we want
7  to renegotiate this settlement and fix what the Court
8  wants us to do." And the defendants could very well be
9  not inclined to do anything. They might be happy with
10 the landscape as it is and want to scuttle the
11 settlement. That's what they are putting in play.
12 That's what they're risking.
13         And I am sure they are not aware of what's in
14 front of Judge Tigar. We watch it constantly. We
15 monitor it. Because although this case is settled, it
16 is far from over. We are working on it night and day,
17 believe it or not, monitoring what the judge is doing,
18 keeping an eye on the DAP cases. 13 of them are still
19 going on, and some will be remanded to other courts.
20 This is a very important issue for us that causes us a
21 lot of concern when we have to deal with these
22 objectors. I just wanted to follow up on the comments
23 you made about risk.
24         SPECIAL MASTER QUINN: Okay.
25         MR. SCARPULLA: May I just say one thing? We did

Page 52

```
 1   not object to the amount of money.  And we didn't take
 2   an appeal from the amount of money.  We took -- we
 3   objected to half the country getting nothing, and that's
 4   what we appealed.  So -- but there are other people
 5   that -- not in this room, the usual suspects who have
 6   appealed the amount.  But we have not.
 7           SPECIAL MASTER QUINN:  Correct.  Okay.
 8           Ms. Capurro, you were waving your hands.
 9           MS. CAPURRO:  Just one small point very quickly.
10   Mr. Scarpulla stated with regard to LGE and Philips
11   that, you know, we shouldn't have taken 25 million from
12   LG but we should have taken 14 million from Philips.
13           MR. SCARPULLA:  No, I didn't say that.
14           MS. CAPURRO:  Well, that's what you said --
15           MR. SCARPULLA:  I didn't say that.
16           MS. CAPURRO:  I'm sorry.  Can I finish?
17           MR. SCARPULLA:  I said you shouldn't have taken
18   25 million from LG, and you should have negotiated with
19   Philips first.  That's what I said.  I didn't say an
20   amount.
21           MS. CAPURRO:  Okay.  I don't think that really
22   matters.  They were happening around the same time,
23   April, May of 2013, prior to class certification.  And
24   we elected to settle with LG because our understanding
25   of the evidence -- which I respectfully submit is far
```

Page 53

1     superior to Mr. Scarpulla's, who have done virtually no

2     substantive work in the case as of that stage in the

3     case -- LG and Philips were members of LPD, big, huge

4     conglomerate.  LG, unlike Philips, had no evidence of

5     their activities, anticompetitive activities in the

6     United States.  Philips did.  There was good evidence of

7     Philips here in the United States.

8            So we made the decision that of the two, we were

9     the only two defendants who were interested in

10    settlement at that stage, that LG was the better one to

11    settle with.  And they were offering $11 million more

12    than Philips.  Philips, by the way, was fined

13    substantially more by the European commission.  They

14    owned more of LPD than LG did, so aside from the actual

15    evidence of their conspiratorial activities, there were

16    other issues that we looked at.  So we stand by the

17    decision to settle with LG at that point for $11 million

18    more than Philips, and Mr. Scarpulla was being very

19    disingenuous to now try and criticize that settlement.

20           SPECIAL MASTER QUINN:  Well, one thing that I am

21    not going to do is get into second-guessing settlement

22    agreements that were made.  That's not the point,

23    really.  The point is whether Mr. Scarpulla was or was

24    not off the reservation in offering his comments and so

25    on.  It's not the amount in the settlement that's

Page 54

1   critical.

2        MS. CAPURRO:  With all due respect, I don't think

3   it was him offering comments.  That's fine.  It was

4   actually making settlement demands and now taking a

5   completely different position later on in saying that we

6   should have gotten -- we should have gotten more,

7   whenever he advocated that we take a smaller settlement

8   at that point in the case.  The total settlements would

9   have been less if we had done what Mr. Scarpulla

10  suggested at that point.

11       MR. SCARPULLA:  I don't know what she's talking

12  about.

13       SPECIAL MASTER QUINN:  Okay.  Anybody else?  Some

14  housekeeping, Mr. Alioto.

15       MR. ALIOTO:  Yes.  You had inquired earlier in

16  these proceedings about an audit report.  There is no

17  audit report.

18       SPECIAL MASTER QUINN:  Let's be clear what we're

19  talking about.  This is the audit report with respect to

20  time records, billing entries.

21       MR. ALIOTO:  Yes.  It was a fragmented process,

22  firms on firms.

23       Two, Mr. Scarpulla filed out of time a motion to

24  strike.  There has been no request for leave to do that.

25       SPECIAL MASTER QUINN:  Wait a minute.  This is

Page 55

1    Mr. Scarpulla filed a motion to strike?

2         MR. ALIOTO:  Yes, it was four or five days after

3    Mr. Cooper did.  It was out of time.  There was no

4    request for permission.  We would request that -- we

5    would file a motion to strike his motion to strike.  We

6    don't think it's constructive to do any more briefing,

7    especially after the close of the hearings.

8         SPECIAL MASTER QUINN:  Just remind me,

9    Mr. Scarpulla, what did you want to strike?

10        MR. SCARPULLA:  I joined Mr. --

11        SPECIAL MASTER QUINN:  I don't remember the

12   motion.

13        MR. SCARPULLA:  I've joined Mr. Cooper's motion

14   to strike.  And I said if you're going to strike it,

15   then strike the paragraph completely.

16        SPECIAL MASTER QUINN:  I see.

17        MR. ALIOTO:  Like most of what Mr. Scarpulla

18   says, that's not completely accurate, and to the extent

19   he just joins in Mr. Scarpulla's motion, we have no

20   objection.  But he goes and makes additional requests

21   which should be stricken.

22        SPECIAL MASTER QUINN:  Okay.  Your requesting

23   that his motion to strike be stricken?

24        MR. ALIOTO:  Precisely.

25        MR. SCARPULLA:  Today is the day that we're

                                          Page 56

1    supposed to apply to that Mr. Alioto's response to the

2    motion to strike.

3              SPECIAL MASTER QUINN:  Mr. Cooper's.

4              MR. SCARPULLA:  That's why Mr. Cooper isn't here.

5    Mr. Cooper is filing something which we plan to get.

6              SPECIAL MASTER QUINN:  Can everybody consider

7    carefully whether you really need briefing on

8    Mr. Scarpulla's motion to strike if it's the same thing?

9              MR. ALIOTO:  I'm making it as an oral motion.  I

10   don't want a loose end out there that we haven't

11   addressed.

12             MR. SCARPULLA:  I'll respond to that.  Mr. Alioto

13   filed late and he had no consequence.  I was in Europe

14   trying to do this over an iPhone.  I was only able to

15   join it and make an additional comment when I got back.

16   If late filing is okay for him, it ought to be okay for

17   me.

18             SPECIAL MASTER QUINN:  So his was --

19   Mr. Scarpulla's motion was four days late?

20             MR. ALIOTO:  Yes, Your Honor.

21             SPECIAL MASTER QUINN:  Oh, my goodness.  Okay.

22   Anything further?

23             MR. SCARPULLA:  Yes, other housekeeping.

24             SPECIAL MASTER QUINN:  Why do have keep asking

25   that question.

Veritext Legal Solutions
866 299-5127

1          MR. ALIOTO:  I just have two matters.  I think

2     this will actually be helpful.  There was another brief

3     by Mr. Scarpulla out of time, a supplemental brief

4     without leave.  It's hanging out there for the record.

5     We would strike that so we don't have to respond to that

6     as well.

7          MR. SCARPULLA:  Which one is that?

8          MR. ALIOTO:  It's entitled "Supplemental Brief."

9          MR. SCARPULLA:  Well, I know.  That's the one

10    that has --

11         MS. KIRKHAM:  This is Tracy Kirkham.  You must be

12    referring to the putting the documents in the Cipro

13    cases into the record, right?

14         MR. SCARPULLA:  That must be it.  Or you can take

15    judicial notice of it anyway.

16         MR. ALIOTO:  We want to be on record as moving to

17    strike and not having to respond to that.

18         And finally, Special Master, this may or may not

19    be helpful, but there is a kind of a loose end regarding

20    Mr. Lingel Winters.

21         SPECIAL MASTER QUINN:  It's not loose as far as

22    I'm concerned.

23         MR. ALIOTO:  Okay.

24         SPECIAL MASTER QUINN:  I am -- I was told by

25    Judge Tigar to take care of it and I will take care of

                                                    Page 58

1    it.

2         MR. ALIOTO:  Right.

3         SPECIAL MASTER QUINN:  Now, have you -- I think

4    you filed some kind of papers opposing it and he didn't

5    reply.

6         MR. ALIOTO:  I don't want to belabor this, but we

7    had the order of reference to the special master.  We

8    had a proposed allocation pursuant to the order.  It was

9    incumbent upon Mr. Winters, as it was with all of the

10   counsel, to object to that allocation.  He never did

11   that.

12        SPECIAL MASTER QUINN:  Right.

13        MR. ALIOTO:  He filed a motion with Judge Tigar.

14   We couldn't figure out exactly what he was doing, but he

15   filed a motion with Judge Tigar.  We responded to the

16   motion.  And Judge's Tigar now has kicked that back to

17   the Special Master.  So the only point I have is, there

18   are, I guess some filings.  It's a motion.  We've

19   objected to the -- we've responded to the motion, so

20   that's the state of the record, motion response.  Our

21   point -- and just to sum up our point is it's late.  He

22   didn't follow the procedure.  But if Your Honor wants to

23   get to the merits, we have an opposition to his motion

24   in the record.  So long story short, it's out there.

25   Probably be better to address it as Your Honor sees fit.

Page 59

1          SPECIAL MASTER QUINN:  I'm going to address it as

2     part of this, absolutely.

3          MR. ALIOTO:  Thank you.

4          MR. SCARPULLA:  I have a housekeeping question.

5     Are we going to get a copy of the e-mails from

6     Mr. Alioto and Mr. Zelle about their agreement in the

7     record?  I've requested it.  We know it exists.

8          MR. ALIOTO:  Maybe I can --

9          SPECIAL MASTER QUINN:  I'm frowning because I

10    only want information that's going to be helpful to me,

11    and I'm not sure that's going to be helpful to me.

12         MR. SCARPULLA:  It might be part of the record on

13    appeal, Your Honor.  That's why I've asked that it be

14    placed in the record along with any other fee-sharing

15    agreements they have that they gave you, didn't put in

16    the record.

17         SPECIAL MASTER QUINN:  I think representations

18    have been made that there are no fee-sharing agreements

19    except for the ones that have been disclosed.

20         MR. SCARPULLA:  Yeah, but where are they

21    disclosed?  I haven't seen them.

22         SPECIAL MASTER QUINN:  We had earlier some

23    fee-sharing agreements were filed.  I don't remember

24    what they were, and it's in the ECF filings.

25         MR. SCARPULLA:  Yeah, but that's the agreement

Page 60

1    that I have with my separation agreement with Zelle.

2    That's the only one that I know of.  I don't think

3    anything else was filed in the record.

4         SPECIAL MASTER QUINN:  Okay.  Let me ask

5    Mr. Micheletti.  These, as I understand it, are --

6    Mr. Scarpulla is talking about are e-mails among members

7    of your firm and maybe with Mr. Scarpulla.

8         MR. SCARPULLA:  No, no, with Mr. Alioto.

9         SPECIAL MASTER QUINN:  Okay.  With Mr. Alioto

10   about the arrangement, if any, between Trump, Alioto and

11   Zelle and I think you've told me yesterday or the day

12   before, you're not aware of any such e-mails or

13   something.  If there's any -- do you have any objection

14   to producing them?

15        MR. MICHELETTI:  What I said was there was no

16   agreement.  And there was reference made to Mr. Corbitt

17   recently sent you something.  And I answered no, he has

18   not.  There are two e-mail communications that I am

19   aware of that bear on this topic.  It is Zelle's

20   position, and I'm here speaking on behalf of Zelle, that

21   those do not represent an agreement between Zelle and

22   lead counsel.

23        SPECIAL MASTER QUINN:  Can you tell me who the

24   "from" and "to" are on those e-mails?

25        MR. MICHELETTI:  Mr. Alioto and Mr. Corbitt.

Page 61

1          MR. ALIOTO:  I can tell you the background, Your

2     Honor.  This is counterproductive.

3          SPECIAL MASTER QUINN:  You know what, here's what

4     I would like.  I've heard an awful a lot about this, and

5     I think the safest thing for me to do is to take a look

6     at these e-mails if they should be submitted under seal.

7     They may be, but I think I should take a look and let

8     the documents speaks for themselves.  I've heard quite

9     enough about what everybody says.  I've heard

10    representations, very definitive representations there

11    was no such agreement to divide the responsibilities of

12    co-lead counsel.  And I'd like to see the documents that

13    caused all this problem.  And you can make a decision

14    whether you file those openly or under seal, but I'd

15    like you to do that.

16         MR. MICHELETTI:  Okay.

17         MR. SCARPULLA:  Do I get to look at them?

18         MS. KIRKHAM:  Just a point of clarification, when

19    you say "under seal," you mean under seal the way we've

20    been filing things under seal, that being that they're

21    served on the counsel in the case but not put into the

22    public record for John Doe to walk off the street and

23    look at?

24         SPECIAL MASTER QUINN:  That was my thought.

25         MR. SCARPULLA:  As long as I get to see them,

Page 62

1    they can file them under seal.  One other thing, just a

2    housekeeper.  Mr. Alioto just told you there was no

3    audit or report.  That's what I thought I heard him say.

4         SPECIAL MASTER QUINN:  With regard to billings,

5    not talking about expenses, billings.

6         MR. SCARPULLA:  We're talking about Lodestar

7    audit reports; is that correct?

8         SPECIAL MASTER QUINN:  Correct.

9         MR. SCARPULLA:  And there is none?  There are

10   none; is that right?

11        MR. ALIOTO:  That's right.

12        SPECIAL MASTER QUINN:  That's what he said.

13        MR. SCARPULLA:  I have an e-mail here from Fred

14   Corbitt who says that there is one, that he asked --

15        SPECIAL MASTER QUINN:  If you want to talk about

16   hearsay, now we're really getting into hearsay.

17        MR. SCARPULLA:  That's okay.

18        SPECIAL MASTER QUINN:  This process must come to

19   an end, and I am not going to -- I am going to be

20   extremely reluctant to receive any further briefing, any

21   further papers from now on.  You know, you're going to

22   look at those e-mails and you're going to want to write

23   me a five-page letter.  Please restrain yourselves.

24        MR. SCARPULLA:  No, I'm not going to say a word.

25        SPECIAL MASTER QUINN:  This has to be decided.

Page 63

1    Okay.   Anybody have anything further?

2           MR. ALIOTO:   Just don't unduly penalize us

3    because we have a prior request for some information.

4    An awful a lot of information has been sought from us in

5    these proceedings, and we have one pending request right

6    now.

7           SPECIAL MASTER QUINN:   What is your request that

8    is --

9           MR. ALIOTO:   For Mr. Cooper's time records.

10          SPECIAL MASTER QUINN:   Wait a minute.   Everybody

11   submitted time records.

12          MR. ALIOTO:   Not Mr. Cooper, because he claims

13   that since he wasn't claiming any time for it...   Now

14   he's put them at issue.   I don't want to argue it.   I

15   don't want to press the matter right now.   I just wanted

16   to bring to your attention that there's a preexisting

17   request that we made.

18          SPECIAL MASTER QUINN:   Okay.

19          MS. KIRKHAM:   When was this request made?

20          SPECIAL MASTER QUINN:   I do have a dim memory of

21   it, Ms. Kirkham.   I am not inclined to order -- if

22   Mr. Cooper is not requesting to be compensated for any

23   time, I'm not inclined to order that he produce his time

24   records.   I don't think they would be helpful to me in

25   making the allocation.   And you know, the Court can note

Page 64

1    for whatever weight it might have that he has declined

2    to produce his time records.

3            MS. KIRKHAM:  But he hasn't declined to produce

4    it.  I'm a little unclear.  He didn't produce time

5    records because he didn't ask to be paid for anything he

6    did in the case.  He said he did a declaration that

7    whatever he did, he was contributing and he wasn't going

8    to put in for supervising Mr. Bogdanov or consulting

9    with him or whatever all that was.  And the other

10   amounts of time were so miniscule that he elected not to

11   put them in.  He didn't report them contemporaneously

12   and he elected not to put them in, so he didn't put them

13   in.  That's not a decline to produce time records.

14   That's the time records were never collected, never

15   processed, never submitted.  They just weren't an issue.

16           SPECIAL MASTER QUINN:  Okay.  I was told he

17   declined to produce them, and I don't really care

18   whether he declined or didn't decline.

19           Okay.  Anything further?  All right.  Thank you

20   everybody.  The hearing is closed.

21

22                  (TIME NOTED: 4:24 p.m.)

23

24

25

                                              Page 65

1          I, the undersigned, a Certified Shorthand

2     Reporter of the State of California, do hereby

3     certify:

4          That the foregoing proceedings were taken

5     before me at the time and place herein set forth;

6     that any witnesses in the foregoing proceedings,

7     prior to testifying, were administered an oath; that

8     a record of the proceedings was made by me using

9     machine shorthand which was thereafter transcribed

10    under my direction; that the foregoing transcript is

11    a true record of the testimony given.

12          Further, that if the foregoing pertains to

13    the original transcript of a deposition in a Federal

14    Case, before completion of the proceedings, review

15    of the transcript [ ] was [ ] was not requested.

16          I further certify I am neither financially

17    interested in the action nor a relative or employee

18    of any attorney or any party to this action.

19          IN WITNESS WHEREOF, I have this date

20    subscribed my name.

21

22    Dated:10/19/16

23    _____

24                    JOANNA BROADWELL

25                    CSR No. 10959

Page 66

[& - adequate]

| & | | |
|---|---|---|
| **&** 3:5,15 4:14 7:11 8:11 9:3 10:8,9,11 10:22 15:3 | | |

| 1 | | |
|---|---|---|
| **1** 1:25 13:4 | | |
| **10** 16:22 | | |
| **10/19/16** 66:22 | | |
| **10959** 1:22 2:17 66:25 | | |
| **11** 54:11,17 | | |
| **120** 3:18 | | |
| **13** 52:18 | | |
| **14** 24:4 29:23,24 35:16,19 47:23 50:2,13 53:12 | | |
| **15** 24:4 | | |
| **1500** 2:13 8:6 | | |
| **175** 29:24 | | |
| **17th** 4:7 | | |
| **1801** 6:6 | | |
| **1900** 7:6 | | |

| 2 | | |
|---|---|---|
| **2** 4:1 13:5 46:8 | | |
| **20** 7:14 | | |
| **200** 20:8 | | |
| **2008** 16:14 24:1 | | |
| **2011** 23:21 | | |
| **2012** 23:21,23 | | |
| **2013** 23:21 24:2 40:12 53:23 | | |
| **2014** 25:15 | | |
| **2015** 32:23 | | |
| **2016** 1:13 2:15 10:1 32:23 | | |
| **210135** 5:14 | | |
| **212** 6:17 7:8 | | |
| **212,000** 20:3,17,20 21:8,20 | | |

**2125** 3:18
**215** 9:8
**22030** 4:18
**221-5763** 5:16
**2280** 3:9 5:6
**244-7520** 7:16
**2459187** 1:23
**25** 50:16 53:11,18
**2nd** 8:14

| 3 | | |
|---|---|---|
| **3** 5:1 | | |
| **30** 17:19 | | |
| **307** 6:6 | | |
| **310** 6:8 | | |
| **338-1133** 8:8 | | |
| **3400** 9:6 | | |
| **357** 8:14 | | |
| **35th** 9:14 | | |
| **371-6600** 7:8 | | |
| **3:01** 2:14 10:2 | | |
| **3:07** 1:7 2:7 | | |

| 4 | | |
|---|---|---|
| **4** 6:1 | | |
| **4041** 4:17 | | |
| **415** 3:11 4:9 5:9 5:16 8:16 9:16 | | |
| **424,000** 19:14 | | |
| **434-8900** 9:16 | | |
| **44** 9:6 | | |
| **456** 4:7 | | |
| **48226** 6:16 | | |
| **4911** 37:20 | | |
| **4911-2** 37:20 | | |
| **4929** 11:5,19 | | |
| **4:24** 2:15 65:22 | | |
| **4:30** 11:25 | | |

| 5 | | |
|---|---|---|
| **5** 1:13 2:15 7:1 10:1 | | |

**50** 17:7 24:22 29:1
**50/50** 19:18
**500** 47:8
**505** 7:16
**550** 8:6
**563-7200** 3:11 5:9
**567-6565** 9:8
**5944** 1:7 2:7

| 6 | | |
|---|---|---|
| **6** 8:1 9:1 | | |
| **600** 7:6 | | |
| **619** 8:8 | | |
| **631-8605** 6:17 | | |
| **66** 1:25 | | |
| **66,000** 22:2 | | |
| **693-0700** 4:9 | | |

| 7 | | |
|---|---|---|
| **700** 7:14 | | |
| **703** 4:19 | | |
| **764-8700** 4:19 | | |
| **777** 6:15 | | |
| **788-0831** 6:8 | | |
| **788-3030** 8:16 | | |

| 8 | | |
|---|---|---|
| **87102** 7:15 | | |
| **890** 6:15 | | |

| 9 | | |
|---|---|---|
| **9** 22:11 | | |
| **90067** 6:7 | | |
| **92101** 7:7 8:7 | | |
| **925** 3:20 | | |
| **94103** 8:15 | | |
| **94104** 4:8 9:7,15 | | |
| **94121** 5:15 | | |
| **94123** 3:10 5:7 | | |
| **945-0200** 3:20 | | |
| **94598** 3:19 | | |

| a | | |
|---|---|---|
| **a.g.** 26:24,25 27:1 27:2,4,6,7,10,12 27:13 28:22 | | |
| **abilities** 24:13 | | |
| **ability** 50:17 | | |
| **able** 11:23 27:25 29:8,10 57:14 | | |
| **absolutely** 14:25 24:16 33:23 51:6 60:2 | | |
| **account** 30:10 | | |
| **accountancy** 18:9 18:17 | | |
| **accurate** 56:18 | | |
| **act** 12:15 25:18 30:17,18 40:24 | | |
| **acting** 33:7,18,19 33:20 34:12,25 50:25 | | |
| **action** 39:22 66:17 66:18 | | |
| **actions** 38:3 41:13 | | |
| **active** 51:16 | | |
| **activities** 30:5 39:24 40:11,25 41:3 54:5,5,15 | | |
| **activity** 40:12 42:8 42:12,14,18 44:15 | | |
| **actual** 41:5 54:14 | | |
| **add** 12:6,8 34:1 49:23 | | |
| **additional** 11:7 56:20 57:15 | | |
| **additionally** 48:3 | | |
| **address** 59:25 60:1 | | |
| **addressed** 22:17 57:11 | | |
| **adequate** 42:13 | | |

Page 1

[adjusted - aware]

adjusted 14:22
  33:15
administer 18:7
administered 66:7
adrift 36:10
advance 32:7
advice 25:11 26:14
advocated 55:7
advocating 29:21
aggregate 33:6,14
aggregators 36:4
ago 18:22
agreed 20:20
agreement 12:14
  21:18,19,20 22:8,9
  22:9,14,17 40:5
  60:6,25 61:1,16,21
  62:11
agreements 54:22
  60:15,18,23
ahead 15:10 22:19
  23:4 49:24
albuquerque 7:15
  10:14
alioto 3:5,6 12:10
  13:1,12 14:5,17
  15:24 16:23 17:16
  18:4,10,18,20 23:3
  23:5 24:3,5,10
  25:21 26:17,21
  28:17,20 31:14,22
  34:11,15 36:8,22
  37:3,20 38:5,17
  40:6,19 42:4 50:1
  50:8,12,24 51:7,9
  51:22 55:14,15,21
  56:2,17,24 57:9,12
  57:20 58:1,8,16,23
  59:2,6,13 60:3,6,8
  61:8,9,10,25 62:1
  63:2,11 64:2,9,12

alioto's 14:21 15:3
  16:3 57:1
aliotolaw.com
  3:12 9:17
alleged 16:20 41:7
allocating 30:10
  45:25
allocation 12:11
  12:12 13:6,15
  14:22 30:13 32:10
  36:11 37:24 45:4
  59:8,10 64:25
america 17:10
amicus 43:18
amount 21:25
  35:3 45:4 47:23
  53:1,2,6,20 54:25
amounts 50:20
  65:10
analysis 30:9
angeles 6:7
answered 36:18
  61:17
anticompetitive
  54:5
antitrust 1:5 2:5
  12:22 17:9 30:2,4
  46:15
anybody 34:22
  49:20,22 55:13
  64:1
anybody's 37:23
  45:7
anyway 34:10
  58:15
apparent 28:5
appeal 33:17 34:6
  34:8 48:21 51:24
  51:24 52:1 53:2
  60:13

appealed 53:4,6
appeals 34:9 36:1
appearances 3:1
  4:1 5:1 6:1 7:1 8:1
  9:1
application 20:16
applied 23:10
applies 30:16
apply 57:1
applying 19:4,8
  38:1
appointed 24:19
appointing 18:4
appointment
  23:11
appreciated 25:13
approach 24:22
approaching
  27:19
appropriate 14:16
  47:16
appropriately
  43:15
approval 32:6,10
  32:19 43:10,12
approved 33:12
  33:13,14,16 43:2
approving 45:14
april 53:23
area 15:2 44:10
areas 14:14,23
argue 64:14
argument 12:13
  39:17 48:4
arguments 42:25
arising 37:1
arrange 16:16
arrangement
  61:10
aside 54:14

asked 12:24 13:20
  16:16 17:21 44:22
  60:13 63:14
asking 20:19
  40:20 47:23,24
  57:24
aspect 31:4
asserted 13:23
assessing 41:14
assessment 44:13
assigned 20:8
assigning 21:20
assignment 22:9
assistant 27:2
assume 48:16,18
assuming 48:24
assumption 48:10
attended 15:14,16
attention 19:10
  49:14 64:16
attentive 49:17
attorney 3:17 4:16
  5:5,13 6:5,13 7:4
  7:13 8:5,13 9:5,13
  26:11 27:3 66:18
attorney's 46:1
attorneys 3:8 4:6
  10:5 20:10,10
  43:21 46:23
attributed 13:3
auction 27:22 28:9
audit 21:22 22:3
  55:16,17,19 63:3,7
authorized 40:24
avenue 6:6,15
avoided 32:25
award 34:2,10
  35:15,22,24
awards 17:8
aware 52:13 61:12
  61:19

[awful - certified]

**awful** 62:4 64:4

**b**

**b** 1:23 4:5 7:6
**back** 20:21 29:4,7
  32:6,22 33:1
  34:19 45:16 46:6
  46:7 57:15 59:16
**background** 29:11
  62:1
**backwards** 49:2
**bad** 24:22 37:4,4,8
  48:17,18
**bank** 48:6
**bar** 46:15
**baranini** 28:22
**barry** 6:3
**based** 12:13 24:12
  39:16 43:23
**basically** 22:20
  25:16
**basis** 18:9 33:23
  39:5
**battin** 4:15 10:9,9
  10:25 28:13
**bear** 12:2 61:19
**bears** 14:20
**beat** 34:15
**becoming** 26:15
**beginning** 2:14
  39:11
**behalf** 31:19,23
  61:20
**belabor** 59:6
**believe** 11:12
  16:14 22:1 37:4,6
  37:6,23 39:8 40:3
  46:24 52:17
**belong** 19:19,19
**beneficial** 43:5,19
**benefit** 12:19,19
  21:1 35:25 42:9

42:15,23 43:2,11
  44:22
**benefited** 42:9,12
  45:3,11 48:2
**benefiting** 44:7
**best** 17:10 24:7
  48:22 51:2
**bet** 18:18
**better** 27:25 32:5
  45:18 46:9 49:3
  54:10 59:25
**beyond** 12:2
**bgralewski** 7:9
**big** 32:14,14 50:16
  54:3
**biggest** 31:9
**billing** 55:20
**billings** 63:4,5
**billion** 46:8
**birkhaeuser** 3:15
  3:16 10:21,21,22
  11:2 28:12
**bit** 25:24
**board** 23:14,16
**bob** 10:12
**bogdanov** 31:2
  36:21 37:17 40:9
  40:16,21 41:17,18
  65:8
**bogdanov's** 36:18
**boies** 4:14 10:9
**boies.com** 4:20
**bonds** 43:23
**books** 48:20
**bordering** 33:22
**borrow** 29:13
**bound** 22:12
**box** 5:14
**boyd** 7:11
**brain** 19:12

**bramson** 3:15
  10:21
**bramsonplutzik....**
  3:21
**brian** 6:3
**brief** 16:8 30:20
  37:10 58:2,3,8
**briefing** 56:6 57:7
  63:20
**briefs** 37:9
**bring** 19:10 35:6
  36:9 38:25 39:20
  64:16
**bringing** 39:24
**brings** 12:4 39:13
  40:1,3
**broad** 27:8 43:14
  51:17
**broadwell** 1:21
  2:16 66:24
**brought** 32:20,21

**c**

**c** 6:4 8:6
**ca** 3:10,19 4:8 5:7
  5:15 6:7 7:7 8:7
  8:15 9:7,15
**california** 1:2,12
  2:2,14 10:1 26:10
  26:24,25 27:1,2
  28:22 31:10 66:2
**call** 17:22,24 22:13
  25:10 30:6 49:20
  49:22 50:7
**called** 16:16 17:16
  17:21 18:12,13
  40:8 50:4
**calling** 17:4,14
**camp** 29:2
**capacity** 32:4
**captive** 36:3

**capurro** 3:7 51:8
  53:8,9,14,16,21
  55:2
**care** 32:17 58:25
  58:25 65:17
**carefully** 57:7
**carry** 38:23
**case** 1:7 2:7 12:12
  12:16,18 16:1,7,9
  17:6 18:14 19:14
  19:20 23:16,21,22
  24:11,12,15,15,18
  24:21,24 25:1,13
  25:18,23 26:1,3
  28:14,24 29:6
  30:15 31:1,4,5,15
  31:16 32:9 35:8,9
  36:19 39:24,25
  41:12,15 43:24
  46:3,5,8 50:5
  52:15 54:2,3 55:8
  62:21 65:6 66:14
**cases** 25:2 27:21
  48:23 51:18 52:18
  58:13
**castigate** 37:23
**category** 42:19
  43:4
**cathode** 1:5 2:5
**cause** 33:10
**caused** 62:13
**causes** 52:20
**caution** 49:11
**center** 2:13
**central** 43:10
**century** 30:2
**certainly** 15:7
  39:22
**certification** 53:23
**certified** 2:16 66:1

[certify - cooper's]

certify 66:3,16
challenges 49:4
challenging 47:16
chance 11:15
  44:17
changed 35:20
  52:4
channels 27:11
charge 12:23
  17:23 50:6
cheap 30:1
chill 44:14
chilling 43:22,24
chills 48:14,14
  49:7
chose 22:4
christopher 9:4
chunghwa 34:20
  47:20
chunk 40:7
cipro 58:12
circuit 33:17
  44:24 46:7 52:4
cites 16:13
claim 15:3 21:7,16
  35:13
claimants 33:11
claimed 35:4
claiming 35:14
  64:13
claims 27:9 35:3
  36:4 39:16 47:3
  64:12
clarification 62:18
clarify 19:5
class 12:20 15:6
  21:1 28:8 31:10
  31:20 34:17 41:9
  41:12 42:9,9,13,15
  42:19,23 43:2,11
  44:7,11,23 45:3,11

45:23 46:1,9,14,19
  47:1,9 48:3,7,15
  48:18,19,22 49:5
  51:2 53:23
clayton 4:5
clean 38:18
clear 15:18,23
  44:1,7 45:10
  55:18
clearly 42:13
client 30:24 31:13
  31:14,15,15,19,23
  31:25 34:4,5,5
clients 31:17
close 11:13 22:1
  56:7
closed 65:20
cmicheletti 9:9
cohen 9:20 10:23
  10:23 11:2
cohesiveness 28:2
collaboration 41:8
collaborative
  41:22 44:9
collaboratively
  30:17,18 33:8,18
  34:12,25
collected 65:14
come 31:18 35:11
  45:16 46:6,7 49:2
  52:3 63:18
comes 27:21
coming 16:2
commence 10:4
comment 49:13
  51:11 57:15
comments 14:3
  37:16 52:22 54:24
  55:3
commission 54:13

common 21:8
communications
  13:7 61:18
company 50:17
compensate 14:16
  44:2
compensated
  14:19 20:22,23
  47:24 64:22
compensation
  35:13,14 42:14
  44:5
complete 13:4
completely 13:5
  55:5 56:15,18
completion 66:14
conceptual 48:9
concern 35:5
  52:21
concerned 32:15
  58:22
conclusion 39:25
conduct 39:5,6
conflict 42:18
conglomerate 54:4
conjunction 40:11
connection 22:10
consequence
  57:13
consequences
  51:17
consider 11:10,14
  39:12 45:25 57:6
considerable 46:2
consideration 42:7
  43:4 47:3,17 48:5
considered 42:3
considering 45:2
conspiracy 16:20
conspiratorial
  54:15

constantly 52:14
constructive 25:11
  26:14 56:6
construed 27:8
consulting 50:10
  65:8
contacted 31:23
containing 19:24
contemporaneous
  18:16
contemporaneou...
  65:11
continue 20:14
continued 4:1 5:1
  6:1 7:1 8:1 9:1
continuing 13:2
  14:5 16:24
contributing 65:7
contribution
  41:14
control 23:18
  27:13
conversations
  13:19 16:12,15
  40:16 50:23
convey 36:8 37:25
cooper 8:11 10:8
  11:21,21 15:3
  26:4 28:4,11
  29:12 30:11,15,25
  31:1,3,3,10,15,18
  32:9,13 33:7,16,25
  34:6,7,12,18,24
  35:24 36:12,20
  37:14 38:21 39:3
  39:6,6,23 40:9,17
  40:20 41:17 45:22
  56:3 57:4,5 64:12
  64:22
cooper's 34:4,5
  38:3 40:2,25 41:3

**[cooper's - distinguished]**

41:7 45:8 56:13
57:3 64:9
cooperative 41:22
coopkirk.com
8:17
copies 18:11
copy 12:10 31:11
60:5
corbitt 40:21
50:21 61:16,25
63:14
corbitt's 21:23
correct 19:16,25
20:5,17,18,18
21:10,11 22:7
36:22 45:16 53:7
63:7,8
correctly 14:24
cost 36:2
costs 35:2
counsel 12:15 15:5
15:7 16:17,18
17:4 18:7 22:1
23:10 24:20 25:9
25:13 26:14,15,22
27:15 31:6 39:7
39:20,24 40:25
41:4,21,23 42:21
44:14 46:14 47:13
47:15 48:16,23
59:10 61:22 62:12
62:21
counsel's 24:20
39:15 40:8
counterproductive
26:16 62:2
country 47:3 48:4
53:3
coup 33:4
couple 15:24 40:1
44:20

course 23:20 25:9
25:12,22 45:11
court 1:1 2:1 12:1
20:20 33:14 43:7
43:16,16,18 45:6
51:23,24 52:7
64:25
courts 48:21 52:19
covered 15:17
crds 16:20
creek 3:19
critical 14:18 26:8
26:8 37:21,22
55:1
criticism 25:8,10
criticisms 14:20
36:25
criticize 18:21
54:19
cross 31:6
crt 1:5 2:5
crts 16:2
cry 32:13
csr 1:22 66:25
culminated 14:9
current 22:2 47:6
cut 21:22,23,24
51:12
cv 1:7 2:7

**d**

d 9:11,12
dan 10:21
danger 51:13
dangerous 42:10
dangerously 42:6
daniel 3:16
dap 52:18
date 66:19
dated 66:22
day 11:9 22:3,16
23:12 51:21,22

52:16 56:25 61:11
days 18:22 56:2
57:19
dbirkhaeuser 3:21
de 33:4
deal 19:17 20:15
27:25 29:22 46:9
46:12 52:21
dealing 26:23 27:4
27:14 42:3
dealt 26:25 27:1
32:19
death 34:16
decided 20:16
24:10,11,12 32:16
44:23 46:4 63:25
deciding 47:17
decision 24:11
54:8,17 62:13
decisions 38:12
declaration 11:5
11:18 19:21,22,24
65:6
decline 65:13,18
declined 65:1,3,17
65:18
defend 11:24
defendants 27:20
27:22,24 28:2
45:18 50:4 52:6,8
54:9
defense 17:21 41:4
definite 28:22
definitive 62:10
degree 30:16
delay 36:1
deleterious 41:8
delicate 31:4
demands 55:4
dennis 8:4,9 10:10

depends 20:6
deposition 66:13
depositions 25:3,4
described 31:7
description 32:11
37:5
detail 37:9
details 38:19
determination
40:4 46:23
detriment 24:24
detrimental 29:17
30:9 49:4
detroit 6:16
diego 7:7 8:7
different 44:3 55:5
difficult 28:6,10
29:1
dim 64:20
direction 66:10
directly 30:14
39:23
disagreeing 26:14
disagrees 44:13
disclosed 60:19,21
discovery 12:24
discussed 50:3
discussion 15:12
19:7 43:11
discussions 14:9
disingenuous
54:19
disparaging 38:10
dispute 13:6 26:7
disputes 25:4
disruptive 26:15
dissent 49:7
dissertation 39:11
distinguish 49:16
distinguished
46:14

[district - firms]

| | | | |
|---|---|---|---|
| district 1:1,2 2:1,2 | effort 23:14 29:9 | evidentiary 50:19 | fbdlaw.com 7:17 |
| diverted 15:6 | 30:18,19 33:8,19 | 51:19 | federal 66:13 |
| divide 62:11 | 34:13 35:1 | exactly 45:20 | fee 13:6,14 14:2 |
| division 1:3 2:3 | either 12:19,20 | 50:21 59:14 | 20:16 30:10 33:6 |
| docket 11:5,19 | 46:21 | example 25:14 | 33:14 35:15 37:2 |
| dockets 37:18 | elastic 42:6,6 | 26:23 27:16 28:25 | 46:23 60:14,18,23 |
| document 38:9,10 | elected 53:24 | 36:4 | feel 26:13 35:8 |
| documents 58:12 | 65:10,12 | excuse 15:1 16:23 | fees 20:3,10,10 |
| 62:8,12 | elephant 46:11 | 16:23 37:14 | 32:15,17 33:20 |
| doe 62:22 | elizabeth 6:12 | exists 60:7 | 43:21 46:1 47:23 |
| doing 17:15 23:24 | 10:17,19 | expect 35:23 | 49:6 |
| 24:16,23 27:12 | email 7:17 8:9 | expend 29:10 | fifth 4:17 |
| 28:15 29:19 34:16 | embarcadero 2:13 | expense 35:2 | figure 59:14 |
| 34:17 38:11 40:2 | embellished 37:5 | expenses 18:7 63:5 | file 56:5 62:14 |
| 50:8 51:1,4 52:17 | emckennna 6:18 | experience 17:7 | 63:1 |
| 59:14 | employee 66:17 | 17:13 | filed 12:7 32:24 |
| dollar 31:5 33:3 | encourage 39:2 | expressing 21:3 | 37:14 55:23 56:1 |
| drill 17:1 | engaged 23:22 | extent 11:20 13:13 | 57:13 59:4,13,15 |
| drive 4:17 | enter 36:11 | 41:18 56:18 | 60:23 61:3 |
| due 34:1,2,22 | entered 14:10 | extraordinary | filing 11:4,11,13 |
| 37:16 55:2 | 21:19 27:7 | 23:9 | 57:5,16 62:20 |
| duly 24:19 | entitled 21:17 58:8 | extremely 63:20 | filings 11:7 59:18 |
| duplicative 42:17 | entity 12:17 | eye 52:18 | 60:24 |
| **e** | entries 17:18,19 | | filled 48:20 |
| | 17:25 55:20 | **f** | final 32:19 |
| e 3:12,13,16,21 | entry 23:24 | | finally 33:13,13,15 |
| 4:10,11,20 5:8,17 | especially 56:7 | facing 28:8 | 33:25 58:18 |
| 6:18 7:9 8:17 9:9 | essentially 12:15 | fact 13:22 23:23 | financially 66:16 |
| 9:17 25:12 40:21 | 20:20 21:15 46:15 | 25:21 40:5,23 | find 41:13 |
| 60:5 61:6,12,18,24 | europe 57:13 | 42:11 45:2 | fine 51:12 55:3 |
| 62:6 63:13,22 | european 54:13 | factions 25:2,2,3 | fined 54:12 |
| earlier 11:11 | everybody 12:12 | factor 41:13 | finish 53:16 |
| 55:15 60:22 | 24:21 26:2 44:17 | factors 36:11 38:1 | finished 24:6 |
| early 16:14,21 | 49:11 51:1 57:6 | 42:1 | firm 11:24 18:8,9 |
| 23:15 24:5 25:8 | 62:9 64:10 65:20 | fair 19:9 42:14 | 18:18,21 21:7,13 |
| 26:9 27:18 29:21 | evidence 19:4,8 | 45:25 46:25 | 21:14 23:13 31:2 |
| 40:12 | 29:5 39:13,16,19 | fairfax 4:18 | 38:4 40:6 41:15 |
| ecf 11:4 60:24 | 39:20,21,22 40:2,4 | fairly 18:9 | 41:15,16 42:4 |
| effect 28:24 40:25 | 40:8,9,15,22,23 | faith 48:24,25 | 45:22 51:5 61:7 |
| 41:8 43:22,25 | 41:2,5,7 49:14,16 | far 13:18 17:1 | firms 12:11 24:22 |
| efficiently 12:3 | 53:25 54:4,6,15 | 52:16 53:25 58:21 | 55:22,22 |
| | | fashion 30:22 35:8 | |

[first - honor]

| | | | |
|---|---|---|---|
| first  7:14 26:21 28:5 44:21 53:19 | further  41:2 51:8 57:22 63:20,21 64:1 65:19 66:12 66:16 | goldberg  7:11,12 10:14,14 11:1 25:16 28:12 | happening  44:8 53:22 |
| fit  59:25 | | | happens  23:12 |
| five  56:2 63:23 | | good  24:9 31:14 | happy  52:9 |
| fix  52:7 | fuss  30:23,23 | 37:3,8 45:24 | hard  47:15 |
| fixed  16:20 | future  44:24 48:1 | 47:14 48:11,12,19 | harm  42:15 |
| flavor  31:8 | | 48:24,25 52:2 | harmed  15:6 |
| floor  4:7,17 8:14 | **g** | 54:6 | harper  8:3 10:10 |
| 9:14 | gather  21:7 | goodness  57:21 | healthy  36:24,25 |
| follow  51:11 52:22 | general  11:6 27:3 | gotten  30:3,5 55:6 | heard  15:2 23:3 |
| 59:22 | general's  26:11 | 55:6 | 26:6 62:4,8,9 63:3 |
| foregoing  66:4,6 | getting  25:22 53:3 | gralewski  7:3 | hearing  1:11 10:5 |
| 66:10,12 | 63:16 | 10:12,12 11:1 | 11:8,9,20 18:23 |
| forget  36:24 | give  16:19,21 | gras  33:5 | 39:12,13 45:4 |
| formal  25:24 | 20:20,21 23:7 | greatly  25:13 | 49:23 65:20 |
| former  27:2 | 26:23 27:16 37:18 | gross  20:10 | hearings  11:14 |
| forth  66:5 | 47:18 | grossly  28:24 | 19:4 49:18 56:7 |
| fos  4:10 | given  13:10 21:7 | group  5:11 16:5 | hearsay  13:4,12 |
| found  41:24,25 | 23:11 25:12 31:8 | 28:3 | 13:17,23 16:24 |
| foundation  13:13 | 37:23 38:4 66:11 | grove  3:18 | 63:16,16 |
| 33:23 | giving  26:14 27:8 | guarantee  34:18 | heaven  51:25 |
| four  56:2 57:19 | glancing  38:21 | 34:19 | held  34:5 42:20 |
| fragmented  55:21 | go  11:25,25 12:2 | guess  48:12 59:18 | help  25:19 34:17 |
| francis  4:3,4 | 15:10 20:4 22:19 | guessing  54:21 | helpful  58:2,19 |
| francisco  1:3,12 | 23:4 25:4,6,17 | **h** | 60:10,11 64:24 |
| 2:3,14 3:10 4:8 | 32:22 35:9 36:3 | half  19:18,19,20 | hey  25:17 31:24 |
| 5:7,15 8:15 9:7,15 | 46:6,21 49:24 | 19:23,24 20:7,12 | 36:4 |
| 10:1,16 | 51:23 52:1,6 | 21:8,16 47:3 48:4 | higher  37:6 38:7,8 |
| fred  63:13 | goes  14:22 39:21 | 53:3 | highly  42:6 |
| free  22:11 | 52:1 56:20 | handling  14:21 | historic  19:15 |
| freedman  7:11 | going  11:6,9,14,20 | 24:15 | history  41:12 |
| frivolous  33:22 | 12:2 22:4 23:7 | hands  53:8 | hoffman  40:12,17 |
| 43:8,9 | 25:4,6 32:16 35:4 | handwritten  16:4 | hofmann  9:3 |
| front  15:13 30:21 | 35:5,16 36:2,10 | hanging  28:7 58:4 | holding  36:3 |
| 52:5,14 | 37:8 40:7 44:23 | happen  23:18 | holds  43:4 |
| frowning  60:9 | 48:13,13 49:6 | 24:21 36:6 47:5 | hollander  7:11 |
| ftaia  51:18 | 50:22 52:19 54:21 | 48:18 52:2 | home  36:10 |
| fun  51:14 | 56:14 60:1,5,10,11 | happened  11:8 | hon  1:11 2:12 |
| fund  21:8 34:3 | 63:19,19,21,22,24 | 23:12,17 25:7 | honor  12:5,9,18 |
| 47:6 | 65:7 | 39:19 | 13:1 14:8 15:19 |
| | gold  46:20 | | 15:20 16:15,24 |

17:8 18:2,20 21:1
21:10 22:20,21
23:5 28:6 30:20
36:9 37:12 44:21
47:2 51:15 57:20
59:22,25 60:13
62:2
**hook** 50:9
**hostage** 34:6
**hour** 11:25
**housekeeper** 63:2
**housekeeping** 11:4
38:19 51:10 55:14
57:23 60:4
**hue** 32:13
**huge** 35:4 54:3
**hulett** 8:3 10:10
**hulettharper.com**
8:9

### i

**idea** 24:9
**identical** 20:11
22:15
**identified** 26:18
**identify** 10:5
**illston** 41:10 42:1
**illustrate** 35:18
**impaired** 39:23
**impeded** 39:23
**implicate** 13:14
**importance** 37:24
**important** 21:14
32:5,8 33:5 38:10
38:15,15 46:22
52:20
**improper** 13:13
25:19 46:18 47:13
**imputation** 49:11
**imputing** 39:5
**incentive** 34:2,10

**inclined** 52:9
64:21,23
**including** 26:3
**incumbent** 59:9
**indicated** 11:21
**indirect** 3:3 31:20
**individuals** 29:12
**inference** 39:17
**inferences** 39:19
**information** 19:5
49:18 60:10 64:3
64:4
**informed** 31:11
**infringe** 15:12
**initially** 50:14
**inject** 13:5
**injecting** 13:24
31:3
**inquired** 55:15
**inside** 44:11
**instances** 15:24
16:12
**instructions** 13:10
**instructive** 39:18
**intend** 15:11
**interchanges**
14:13
**interest** 41:8 48:22
**interested** 54:9
66:17
**interests** 42:19
**interject** 13:1
**interjected** 15:7
**intermeddling**
30:7,8
**internal** 48:14
**interrupt** 36:17
39:10
**involved** 12:24
17:22 24:10,13
26:10 27:2,23

**iphone** 57:14
**ipp** 30:18,19 33:8
34:13 35:1
**ironic** 29:25
**irrelevant** 46:23
47:12
**issue** 16:1 27:21
44:5,21 45:3 51:4
52:20 64:14 65:15
**issues** 26:10 32:19
38:2 43:12 46:4
52:1 54:16
**items** 26:1

### j

**j** 7:3
**jeff** 10:7
**jeffrey** 6:4
**jg** 7:17
**jmalioto** 3:12
**joanna** 1:21 2:16
66:24
**job** 1:23 51:14
**jobs** 41:19
**joe** 10:14
**joel** 16:15 17:16
**john** 35:19,21
62:22
**join** 57:15
**joined** 23:14 56:10
56:13
**joins** 56:19
**joint** 30:18,19 33:8
34:13 35:1
**joseph** 5:3,4 7:12
10:16 42:4
**jpatane** 5:8
**jr** 7:3
**judge** 13:24,25
14:10,13,17 15:7
15:13,15 26:12
28:21 33:15 35:20

41:10 42:1 45:14
51:17 52:5,14,17
58:25 59:13,15
**judge's** 59:16
**judicial** 58:15
**justify** 42:20

### k

**k** 5:12
**kag** 5:11
**keep** 18:6 22:23
57:24
**keeping** 52:18
**kennedy** 6:14
**kept** 17:22 18:16
20:3,12 50:5
**kern** 5:12
**kicked** 59:16
**kind** 15:12 38:3
40:2 42:11 44:15
48:4 49:7,7 58:19
59:4
**kirby** 7:5 10:12
**kirkham** 8:11,12
10:8,8,8,25 11:23
15:1 36:19 38:4
38:20,24 41:17
42:23 43:3,7 48:8
49:9,13 58:11,11
62:18 64:19,21
65:3
**kirkham's** 15:3
**kmllp.com** 7:9
**knew** 15:16 50:21
51:1
**know** 11:19,24
12:1 17:5,9,15
18:2,5 19:3,7,9
21:13 22:16 24:1
24:7 25:17 26:11
27:20 29:15 30:22
32:12 35:4 36:7

[know - matters]

36:18 38:15 41:20
41:24 42:2,20,24
42:25 43:1,13,16
45:8,9,12,23 46:10
46:11,19 47:13,15
49:2,16,20,23
50:25 51:25 53:11
55:11 58:9 60:7
61:2 62:3 63:21
64:25
**knowledge**  23:19
**knowledgeable**
44:12
**knows**  14:8 37:12
51:15,25

**l**

**l**  42:4
**lack**  41:7
**landscape**  52:4,10
**late**  57:13,16,19
59:21
**laundry**  25:25
**lauren**  3:7
**laurenrussell**  3:13
**law**  3:8,17 4:3,6
4:16 5:3,5,11,13
6:3,5,13 7:4,13
8:5,13 9:5,11,13
24:22 30:8 39:4
41:14 42:11 43:4
43:7,10,19 44:1,7
44:10 48:20 49:5
**lawyer**  12:22 17:9
23:10 24:17 30:2
30:4
**lawyers**  17:10,10
17:21 24:14,23
25:20,25 40:16,17
40:20 48:15
**lcd**  16:6 23:22,24
24:6 25:1 30:14

41:11
**lcds**  15:25 16:19
41:25 42:2
**lead**  12:15,17 15:7
17:4 22:1 23:10
23:14 24:20,20
25:8 26:14,15,21
27:15 39:7,15,20
40:8,25 41:21,23
42:21 44:13 47:13
47:15 48:16,23
61:22 62:12
**leading**  24:14
**leads**  29:14 50:11
**leave**  55:24 58:4
**left**  19:18 21:25
**legal**  24:13 42:24
48:9,14
**lesser**  41:18
**letter**  25:15,20
26:3 63:23
**letters**  25:12
**level**  38:9
**levels**  42:12
**leverage**  36:1
**lexicon**  41:25,25
**lg**  26:8 50:15
53:12,18,24 54:3,4
54:10,14,17
**lge**  53:10
**likes**  13:25
**line**  26:13,20
**lingel**  58:20
**list**  25:25
**listing**  42:1
**litigated**  51:16
**litigating**  49:3
**litigation**  1:5 2:5
16:6
**litmus**  41:20

**little**  11:3 24:5,25
25:23 31:25 35:1
43:4 65:4
**llp**  4:14 6:11 7:5
8:3 9:3
**locomotive**  47:14
**lodestar**  20:7,8
21:9 22:2,11
36:24 45:7 63:6
**long**  14:2 39:10,10
41:16 59:24 62:25
**longer**  29:9
**look**  16:9 23:23
39:2,3,8,9,15,18
40:23 41:5 48:9
62:5,7,17,23 63:22
**looked**  16:5 54:16
**loose**  57:10 58:19
58:21
**los**  6:7
**lose**  43:21 44:8
**lot**  12:8 29:9 52:21
62:4 64:4
**lots**  43:20
**low**  26:10 29:22
29:23 50:16
**lower**  28:9 38:12
**lpd**  54:3,14
**lumps**  39:7

**m**

**m**  5:3,4
**machine**  66:9
**mahler**  3:15 10:22
**mail**  3:12,13,21
4:10,11,20 5:8,17
6:18 7:9 8:17 9:9
9:17 40:21 61:18
63:13
**mails**  25:12 60:5
61:6,12,24 62:6
63:22

**making**  32:2,3
55:4 57:9 64:25
**mandatory**  18:5
**mario**  3:6 17:5,15
**marlo**  9:20 10:23
**marvin**  1:11 2:12
**mason**  9:3
**master**  1:11 2:12
10:4,18,20,24 12:6
12:23 13:4,6,7,11
13:14,16,19,20
14:3,7,12,21 15:1
15:5,9,21 16:25
17:3,12,23 19:1,17
19:22 20:1,14,19
21:3,6,12 22:6,18
22:22 23:2,25
24:4,9 25:14 26:5
26:19 28:16,18
31:12,21 34:7,14
36:5,16,23 37:19
38:2,14,20 42:2,22
43:6 44:16 45:13
45:17,21 46:10
47:10,12 48:11
49:8,10 50:6 51:3
51:7,20 52:24
53:7 54:20 55:13
55:18,25 56:8,11
56:16,22 57:3,6,18
57:21,24 58:18,21
58:24 59:3,7,12,17
60:1,9,17,22 61:4
61:9,23 62:3,24
63:4,8,12,15,18,25
64:7,10,18,20
65:16
**matter**  64:15
**matters**  13:23
51:10,16 53:22
58:1

[mcinerney - offer]

| | | | |
|---|---|---|---|
| mcinerney 7:5 | mind 12:3 25:19 | multiple 20:11 | numerous 23:13 |
| mcinerny 10:13 | nine 20:11 21:23 | multiplier 15:3 | **o** |
| mckenna 6:12 | 45:7 46:20 | 22:15 38:4,6 | |
| 10:17,17,19,19 | miniscule 65:10 | 47:18 | o 4:3,4 |
| 11:1 | minor 51:25 | murder 28:1 | oak 3:18 |
| mean 14:2 16:6 | minute 27:22 | **n** | oath 19:2 66:7 |
| 18:3 19:2 21:23 | 31:12,24 33:4 | | object 19:9 31:17 |
| 22:15 26:6 28:18 | 55:25 64:10 | n.w. 7:14 | 31:18 47:4 53:1 |
| 30:6 46:10 48:25 | minutes 17:19 | name 66:20 | 59:10 |
| 62:19 | 38:18 | nation 17:9 | objected 31:19,22 |
| measure 42:8,21 | misleading 15:4 | nationwide 48:7 | 33:5,6 34:23 47:1 |
| mediated 13:8 | misspoke 30:4 | need 11:24 32:12 | 47:1,4 53:3 59:19 |
| mediation 15:13 | moment 13:21 | 34:24 39:8 49:19 | objecting 46:15 |
| 15:15 | 16:23 38:16 | 57:7 | 48:15 |
| mediator 28:23 | monday 18:22 | needs 30:10 | objection 11:21 |
| 29:3 | money 20:2,3 28:7 | negative 15:4 | 13:2,2,3,11,12 |
| meet 17:17 | 33:11 35:3,19 | negotiate 45:17,19 | 14:6 16:24 18:23 |
| meeting 16:17 | 45:4 47:6,7,7 50:3 | negotiated 48:16 | 21:15 32:14 43:22 |
| 17:17 | 53:1,2 | 48:24 53:18 | 43:23 44:12,13,22 |
| members 23:13 | monitor 52:15 | negotiations 27:20 | 47:7,20 48:17 |
| 46:14 48:7 54:3 | monitoring 52:17 | 27:24 28:1 | 49:7 56:20 61:13 |
| 61:6 | montgomery 4:7 | neither 66:16 | objections 11:15 |
| memory 64:20 | 9:6 | never 50:3,8 59:10 | 32:2 33:2,3,21,24 |
| mention 29:21 | moore 9:11,12 | 65:14,14,15 | 42:24 43:5 45:1 |
| merits 59:23 | 30:16 35:14 | new 10:14 44:10 | 45:22 46:13 |
| message 25:7 | morning 11:4 | 47:7 | objectors 27:5 |
| mexico 10:15 | motion 14:2 19:20 | news 37:3,4,4,8,8 | 35:10,12 36:3 |
| mi 6:16 | 37:13,13,15,15,17 | night 52:16 | 43:19,21,23,25 |
| micheletti 9:4 21:6 | 55:23 56:1,5,5,12 | ninth 33:17 44:24 | 44:2,6 51:15 |
| 21:10,17 22:7 | 56:13,19,23 57:2,8 | 46:6,7 52:3 | 52:22 |
| 61:5,15,25 62:16 | 57:9,19 59:13,15 | nm 7:15 | obtaining 22:15 |
| michigan 27:3 | 59:16,18,19,20,23 | non 23:14 | obviously 21:24 |
| milberg 6:11 | motions 51:16 | northern 1:2 2:2 | occasions 23:13 |
| 10:17,18 | motives 45:24 | note 64:25 | 50:12 |
| milberg.com 6:18 | move 35:7 | noted 65:22 | occur 47:25 |
| mildly 32:1 | moves 45:19 | notice 32:11,18 | occurred 15:15 |
| million 16:22 | moving 58:16 | 33:3,16 34:22 | 16:1 |
| 22:11 29:1,23,24 | multi 31:5 | 35:2 58:15 | october 1:13 2:15 |
| 35:16,19 47:8,23 | multimillion 31:5 | number 16:6 17:6 | 10:1 25:15 32:23 |
| 50:3,14,16 53:11 | 33:2 | 17:6 20:9 25:24 | odd 20:8 46:18 |
| 53:12,18 54:11,17 | | 26:6,22,22 37:11 | offer 29:20,20 |

Veritext Legal Solutions
866 299-5127

[offered – prior]

offered 13:22
offering 54:11,24
  55:3
office 5:3 6:3
  26:11
offices 4:3 9:11
officious 30:7,8
oft 41:10
oh 57:21
okay 13:16 18:14
  19:1,22 22:6,18
  28:16,17 34:15
  36:5,16 37:20
  38:14,20 44:6,14
  44:16 47:10,11
  49:8,9 50:20 51:7
  52:6,24 53:7,21
  55:13 56:22 57:16
  57:16,21 58:23
  61:4,9 62:16
  63:17 64:1,18
  65:16,19
omnibus 14:2
  37:10
ones 16:4 60:19
open 43:11
openly 62:14
opinion 21:4 24:13
opinions 24:18,19
opportunity 18:21
opposed 48:9
opposing 59:4
opposition 37:17
  59:23
opted 34:23
oral 11:8,13 49:18
  57:9
order 14:10 18:4
  29:3 30:14 45:14
  59:7,8 64:21,23

orderly 19:7
original 66:13
originally 32:24
ought 24:12 57:16
outside 44:6
overstepped 26:13
overtures 40:13
overturned 48:21
overvaluing 28:24
owned 54:14
owns 21:19

**p**

p.a. 7:11
p.m. 2:14,15 10:2
  65:22
p.o. 5:14
page 4:1 5:1 6:1
  7:1 8:1 9:1 63:23
pages 1:25
paid 20:9 43:15
  65:5
panned 32:1
papale 11:12
papers 12:7 22:21
  23:6,7,8 29:19
  31:8 32:7,10,13,24
  40:8 42:5 59:4
  63:21
paragraph 56:15
parenthetically
  33:25
part 12:17 33:21
  35:8 36:14 51:14
  60:2,12
partners 39:4
party 66:18
patane 5:3,4 10:16
  10:16 11:1
patrick 4:5
pay 34:9 42:16
  43:21,23 50:17

paying 49:14
pbc 4:11
penalize 64:2
pending 37:12
  64:5
people 18:16
  25:16,23 26:25
  27:14,23 28:13
  30:15,17 32:8
  38:11 47:6 49:21
  50:10 53:4
perceive 28:2
perfectly 48:24,25
period 17:15 35:3
permission 56:4
person 27:1
pertains 66:12
philips 27:6,7,9,10
  29:20,22,23 40:14
  50:2,14,18 53:10
  53:12,19 54:3,4,6
  54:7,12,12,18
phone 10:5 11:23
  26:2
piece 35:1
pipe 14:6
pitch 34:24
place 66:5
placed 60:14
plaintiff 34:1
plaintiff's 16:17
  16:18 28:3
plaintiffs 3:3
plan 32:10 57:5
play 35:5 52:11
player 41:16,21
players 25:1
playing 27:14
  44:10
plays 30:9

plaza 7:14
please 10:6 16:16
  63:23
plus 20:10
plutzik 3:15 10:22
point 11:17,19
  15:9 25:22 28:19
  31:14 32:5 34:14
  36:9,11 37:25
  39:14 40:24 44:16
  49:25 53:9 54:17
  54:22,23 55:8,10
  59:17,21,21 62:18
pointed 25:10
points 15:24 16:11
  23:8 28:18 30:20
policy 11:6
portion 46:4 47:2
position 23:10
  35:17,18 47:16
  55:5 61:20
potential 46:20
precisely 56:24
preexisting 64:16
preliminary 32:6
  32:10
preparation 15:6
prescott 3:5
present 9:20 11:22
  28:21
press 64:15
prestigious 17:11
presumably 18:10
pretty 15:22 23:22
  27:19 36:23
previously 45:3
price 28:9
prices 16:20
primary 27:1
prior 44:25 45:1
  53:23 64:3 66:7

[private - relates]

private 13:6,14
privilege 13:8
  15:17
probably 24:9
  38:5 59:25
problem 14:4
  17:24 18:12 24:17
  27:5,6,9 32:18
  50:7,18,19 62:13
problems 13:18
  27:5 31:9
procedure 32:16
  59:22
proceed 35:7
proceedings 2:12
  10:3 15:8 34:20
  55:16 64:5 66:4,6
  66:8,14
process 21:22
  32:11 34:22 36:3
  36:7 43:10,12
  55:21 63:18
processed 65:15
produce 51:2
  64:23 65:2,3,4,13
  65:17
producing 61:14
proffer 16:18
prologue 35:23
proper 45:24
proposed 14:9
  48:25 59:8
proposing 42:21
propriety 13:24
  26:13 42:25
prosecute 30:17
  30:19 33:8,18
  34:12,25
prospect 28:8
  51:23

public 62:22
punish 44:1,14
punitive 42:21
purchaser 3:3
  31:20
purchases 34:3
purposes 31:6
pursuant 59:8
pushing 33:9
put 22:2,4 28:25
  32:1 42:7 45:5,23
  46:1,19 60:15
  62:21 64:14 65:8
  65:11,12,12
putting 21:16 47:8
  52:11 58:12

**q**

quality 36:25 38:1
question 21:13
  22:4 39:1 40:3
  41:17 43:13,14
  44:2,5 48:9,10
  57:25 60:4
questioning 17:12
questions 19:5
  22:24 23:3 36:17
  43:15,19 49:12
quick 28:10 29:22
quickly 12:3 53:9
quinn 1:11 2:13
  10:4,18,20,24 12:6
  13:11,16 14:7,12
  15:9,21 16:25
  17:3,12 19:1,17,22
  20:1,14,19 21:3,6
  21:12 22:6,18,22
  23:2,25 24:4,9
  25:14 26:5,19
  28:16,18 31:12,21
  34:7,14 36:5,16,23
  37:19 38:2,14,20

42:22 43:6 44:16
  45:13,17,21 46:10
  47:10,12 48:11
  49:8,10 51:3,7,20
  52:24 53:7 54:20
  55:13,18,25 56:8
  56:11,16,22 57:3,6
  57:18,21,24 58:21
  58:24 59:3,12
  60:1,9,17,22 61:4
  61:9,23 62:3,24
  63:4,8,12,15,18,25
  64:7,10,18,20
  65:16
quite 46:13 62:8
quote 30:17 40:13
quoted 41:10

**r**

r 8:12
r&r 15:5
raise 33:2 42:23
raised 14:6 43:9
  43:16,18 45:22
raises 44:13
raising 44:10,12
range 38:9,12
rates 19:15
ray 1:5 2:5
read 12:7 16:4
  18:11 49:11
reading 19:6
ready 13:16 25:17
real 15:8 22:3
  29:14 36:9,10
  46:19
really 14:14 19:3,8
  39:2 41:24 42:5
  42:11 53:21 54:23
  57:7 63:16 65:17
reason 16:2 17:20
  19:11 24:16 35:6

37:1
reasonable 42:14
reasons 20:15
recall 31:21
recapturing 21:15
receive 11:6,10,18
  34:1,3 48:4 63:20
received 11:4,7
recognize 23:6
recommendation
  33:13,15 35:20
record 14:11 18:6
  18:6,20 39:2 58:4
  58:13,16 59:20,24
  60:7,12,14,16 61:3
  62:22 66:8,11
recorded 19:14
records 23:23
  55:20 64:9,11,24
  65:2,5,13,14
recurring 13:9
reducing 47:22
reduction 37:2
refer 27:5
reference 14:1
  15:25 41:10 59:7
  61:16
references 16:5
  38:21
referring 58:12
refreshing 22:22
regard 40:13
  53:10 63:4
regarding 22:14
  58:19
regards 47:20
register 11:15
regular 18:9
rejected 33:21
relates 11:8

relating  19:23
relative  38:11
　66:17
release  27:8
released  47:2
releases  43:13
relevant  16:1,8
　45:2
reluctant  63:20
remain  14:3 19:6
remains  35:17
remanded  52:19
remember  56:11
　60:23
remind  56:8
renegotiate  52:7
rep  31:10
reply  37:16 59:5
report  18:10,17
　55:16,17,19 63:3
　65:11
reported  1:21 18:8
reporter  2:17 66:2
reporter's  12:1
reports  63:7
represent  30:24
　34:21,22 61:21
representations
　60:17 62:10,10
represented  31:10
　31:16
represents  21:8
request  25:24
　55:24 56:4,4 64:3
　64:5,7,17,19
requested  60:7
　66:15
requesting  56:22
　64:22
requests  56:20

required  18:4
　22:10
resellers  34:19,21
　34:22 35:4 43:14
reservation  54:24
reserve  23:2
resolved  27:10
　32:17
respect  49:15 55:2
　55:19
respectful  14:4
respectfully  53:25
respond  22:25
　26:2 57:12 58:5
　58:17
responded  26:1
　37:15 59:15,19
response  37:10
　57:1 59:20
responsibilities
　62:11
responsible  12:21
　31:2
restrain  63:23
restrictive  49:19
result  36:15 51:2
resulted  15:5
return  16:20
reverse  27:22 28:9
reverses  46:7
review  66:14
right  10:4,24 11:3
　11:3 20:24 23:24
　24:3 31:17,24
　47:24 48:10 49:23
　58:13 59:2,12
　63:10,11 64:5,15
　65:19
rights  34:18,19
risk  45:23 46:2,19
　47:8 51:13 52:23

risking  52:12
road  3:18
roadmap  16:19
robert  7:3
rogue  32:4
role  23:14 35:10
　40:6
roll  13:16
room  46:12 49:21
　53:5
rule  49:5
ruled  11:11
rules  19:4,8 49:14
rulings  51:18 52:5
run  19:7 47:14
running  25:2

**s**

safest  62:5
samsung  28:25
　29:20
san  1:3,12 2:3,13
　3:10 4:8 5:7,15
　7:7 8:7,15 9:7,15
　10:1,16
sanders  16:15
　17:3
sansome  9:14
sat  32:21
saved  35:15,18
saw  24:25 51:20
saying  25:17 29:23
　44:6 49:2 55:5
says  23:1 30:1
　42:11 43:7,10,19
　56:18 62:9 63:14
scarpulla  4:3,4
　11:5,18 12:4,5,8
　13:9,19 14:8,15,20
　14:25 15:10,11,22
　17:2,5,14 18:21,25
　19:16,21,25 20:6

20:18,24 21:5,15
　21:20 22:14,19,20
　22:23 23:16,22
　24:25 25:15 26:4
　26:7 28:4,11,21,23
　29:4,12,21,25
　30:11,15 31:16,22
　32:9,14 33:7,16
　34:4 35:24 36:12
　37:14 38:23 39:3
　39:5,7,21 44:19,20
　45:16,20 46:3,24
　47:11,19 49:24,25
　51:6 52:25 53:10
　53:13,15,17 54:18
　54:23 55:9,11,23
　56:1,9,10,13,17,25
　57:4,12,23 58:3,7
　58:9,14 60:4,12,20
　60:25 61:6,7,8
　62:17,25 63:6,9,13
　63:17,24
scarpulla's  21:9
　21:22,25 29:14
　54:1 56:19 57:8
　57:19
scarpullalaw.com
　4:10,11
scenes  29:16 31:6
　40:18
scope  18:23
scuttle  52:10
seal  62:6,14,19,19
　62:20 63:1
second  54:21
secret  51:1
see  14:4 19:12
　35:23 38:6 56:16
　62:12,25
seeking  35:24

| | | | |
|---|---|---|---|
| **seen** 25:15 35:17 60:21 | **shadow** 12:17 29:14,15,16 50:11 | 27:25 28:8 36:13 50:17 | **spectrum** 38:13 |
| **sees** 59:25 | **share** 34:3 | **sorry** 34:15 36:10 | **speculation** 36:6 39:17 49:17 |
| **send** 18:19 | **sharing** 60:14,18 | 36:16 46:10 53:16 | **spent** 14:17 20:25 |
| **senior** 12:22 | 60:23 | **sort** 42:17 | **spinning** 36:6 |
| **sense** 29:15,16 | **sharpen** 27:17 | **sought** 64:4 | **split** 19:18 |
| **sent** 31:11 61:17 | **shea** 6:4 10:7,7,25 | **spade** 30:6,6 | **square** 6:14 |
| **separately** 39:3,8 | 11:11 | **speak** 44:17 49:21 | **st** 35:19,21 |
| **separates** 26:13 | **sheets** 15:20,22 | **speaking** 61:20 | **staff** 18:8 |
| **separation** 22:9 61:1 | 16:3 18:16,19 31:1 40:18 50:24 | **speaks** 21:18 62:8 | **stage** 54:2,10 |
| **sequencing** 50:19 | **shook** 32:1 | **special** 1:11 2:12 10:4,18,20,24 12:6 | **stand** 54:16 |
| **serious** 24:24 27:19 | **short** 17:25 51:12 59:24 | 12:23,23 13:3,5,7 13:11,14,16,19,20 | **standard** 30:12,12 48:14 49:6 |
| **served** 32:6 62:21 | **shorthand** 2:16 66:1,9 | 14:3,7,12,21 15:1 15:4,9,21 16:25 | **standing** 13:2,24 18:22 43:17 |
| **sessions** 28:20 | **shortly** 37:16 | 17:3,12,22 19:1,17 | **stars** 6:6 |
| **set** 17:17 48:14 49:6 66:5 | **show** 40:18 | 19:22 20:1,14,19 21:3,6,12 22:6,18 | **start** 42:7 |
| **setting** 25:3 | **shows** 40:15 41:7 | 22:22 23:2,25 | **state** 27:3 59:20 66:2 |
| **settle** 53:24 54:11 54:17 | **siamese** 39:4 | 24:4,9 25:14 26:5 26:19 28:16,18 | **stated** 53:10 |
| **settled** 50:5 52:15 | **side** 26:20 | 31:12,21 34:7,14 | **statement** 51:11 |
| **settlement** 12:24 | **sideways** 35:9 | 36:5,16,23 37:19 | **statements** 13:3 |
| 15:12 16:13,21 | **signature** 66:23 | 38:2,14,20 42:2,3 | 13:17,21 19:10 |
| 18:1 26:8,9 27:7 | **significance** 14:13 | 42:22 43:6 44:16 | 28:23 29:4 33:23 |
| 27:19,23 28:1 | 14:19,23 15:2 | 45:13,17,21 46:10 | **states** 1:1 2:1 54:6 |
| 29:3,20,20 31:5,11 | **significant** 14:15 | 47:10,12 48:10 | 54:7 |
| 31:18 32:3,12 | 24:1 40:7 | 49:8,10 50:6 51:3 | **stay** 20:4 |
| 33:12,19 35:2 | **silence** 49:23 | 51:7,20 52:24 | **ste** 2:13 |
| 40:13 42:24 43:1 | **similar** 16:18 | 53:7 54:20 55:13 | **step** 32:5 |
| 43:5 45:14,18,19 | **sinister** 39:19 | 55:18,25 56:8,11 | **stewart** 8:3,4 |
| 46:16,25 47:2,21 | **sit** 33:1 | 56:16,22 57:3,6,18 | 10:10,10,11,25 |
| 48:11,12,15,19 | **sits** 43:3 | 57:21,24 58:18,21 | **stiff** 32:20 |
| 49:3,4 50:2,15 | **situation** 19:13 | 58:24 59:3,7,12,17 | **story** 59:24 |
| 51:13 52:3,7,11 | 23:9 27:13 28:10 | 60:1,9,17,22 61:4 | **straight** 21:4 |
| 54:10,19,21,25 | 42:3 46:13,18 | 61:9,23 62:3,24 | **strategy** 35:7 |
| 55:4,7 | **situations** 26:17 | 63:4,8,12,15,18,25 | 38:11 |
| **settlements** 25:3 | **slightly** 44:3 | 64:7,10,18,20 | **straus** 4:14,20 |
| 28:10 32:11 33:6 | **small** 35:3 53:9 | 65:16 | 10:9 |
| 36:14 45:15 48:20 | **smaller** 55:7 | | **street** 3:9 4:7 5:6 |
| 48:23 55:8 | **somebody** 20:23 | | 7:6 8:6,14 9:6,14 |
| | 20:25 22:25 27:12 | | 62:22 |

[stricken - time]

stricken  56:21,23
strike   27:25 37:13
    37:13,15,15,18
    55:24 56:1,5,5,9
    56:14,14,15,23
    57:2,8 58:5,17
strong  33:22
structured  46:25
stuff  49:15
subject  13:8
subjective  41:20
submissions  19:6
submit  19:20,23
    20:16 22:10 53:25
submitted  62:6
    64:11 65:15
subscribed  66:20
substantial  34:2
    35:21
substantially
    54:13
substantive  30:25
    54:2
substituting  24:17
    24:19
successful  35:25
    39:25 44:24 47:19
    47:22,22 48:2,3,6
suggest  41:13
suggested  14:18
    55:10
suggesting  46:17
suggestion  43:9
suggestions  25:11
suite  3:18 6:15 7:6
    7:14 8:6 9:6
sum  22:4 59:21
summary  30:21
super  17:10
superior  54:1

supervising  65:8
supplemental  58:3
    58:8
support  29:5,6
suppose  28:12,14
supposed  18:3
    57:1
supposedly  50:11
sure  11:23 14:24
    21:4 23:8 30:22
    35:11 36:17 44:17
    52:13 60:11
surprise  35:11
surrounding
    43:12
suspects  53:5
sustained  35:17
sylvie  5:12
sylviekern  5:17

t

t  9:4
take  15:9 21:2
    32:5 35:9,10
    39:18 50:13,16
    53:1 55:7 58:14
    58:25,25 62:5,7
taken  2:13 30:10
    53:11,12,17 66:4
talk  18:24 44:9
    50:11,22 63:15
talked  26:3,11
    41:3 50:13,14
talking  14:17 29:2
    40:19,20 44:4
    50:2 55:11,19
    61:6 63:5,6
tasks  14:21
tatp.com  3:13 5:8
tbattin  4:20
team  24:20 33:9
    36:14 41:15,21

44:10
technical  43:17
teens  29:23
tehama  8:14
telephone  3:17
    4:16 5:5 6:5,13
    7:4,13 8:5,13 9:13
    9:20
tell  15:14,17 17:24
    18:2,16 61:23
    62:1
telling  17:22 50:1
    50:5
term  24:7,8 29:14
    30:7 32:5 42:6
terms  15:13 33:22
terrible  40:10
testifying  66:7
testimony  19:3
    66:11
tests  41:20
thank  23:5 34:15
    60:3 65:19
thankfully  29:8
thanks  10:20
theirs  20:13
themes  13:9
theory  20:22
theresa  9:11,12
thing  15:19 18:15
    22:8 29:25 31:25
    33:5,10 38:17
    41:9 42:17 47:5
    48:8,11,12,17
    52:25 54:20 57:8
    62:5 63:1
things  13:21 16:6
    26:6,12 27:12
    29:1 35:12 38:24
    40:1 43:20 44:20
    48:2 51:4 62:20

think  13:21 14:14
    14:23 17:18 21:17
    21:18 24:25 25:7
    25:14 26:6 28:19
    29:5,23 30:4,7
    31:20 32:22 34:18
    36:5 39:17,21
    45:9 46:21,22
    49:14,16 51:3
    53:21 55:2 56:6
    58:1 59:3 60:17
    61:2,11 62:5,7
    64:24
thinking  40:22
    49:12
third  15:2 42:18
thought  26:9,19
    29:7 31:12 62:24
    63:3
thousand  20:8
three  16:13 38:18
    42:12
throw  33:20
tiers  38:7,8,9
tigar  33:15 35:20
    51:17 52:5,14
    58:25 59:13,15,16
tigar's  45:14
tim  4:15 10:9
time  12:1,22 14:6
    14:16 15:20,22,23
    16:3 18:7,16,19,24
    19:1,14,24 20:4,22
    20:25 21:19,22,23
    21:24,25 22:10
    23:23,24,25 24:2,5
    31:1,17 40:18,19
    40:24 44:4,25
    45:5,6,19 50:13,24
    53:22 55:20,23
    56:3 58:3 64:9,11

Page 15

[time - witnesses]

64:13,23,23 65:2,4
65:10,13,14,22
66:5
**tmoore** 9:17
**today** 11:11,20
29:19 56:25
**told** 17:16 18:10
18:12,13 28:10
50:12,13,15 58:24
61:11 63:2 65:16
**tomorrow** 34:8
**topic** 61:19
**torch** 38:23
**total** 17:18 55:8
**touch** 50:6
**tracy** 8:12 10:8
58:11
**traditional** 42:8
**transcribed** 66:9
**transcript** 10:3
66:10,13,15
**treat** 36:12 44:6
**treated** 43:16,18
**trial** 15:6 25:17
27:19 38:12
**tried** 35:14
**trk** 8:17
**true** 34:11 66:11
**trump** 3:5,5 61:10
**truth** 13:23
**try** 13:5 35:12
46:7 54:19
**trying** 13:13 19:5
19:7 27:4 28:7,9
33:10,10 35:18,25
47:14 49:18 51:2
57:14
**tube** 1:5 2:5
**turn** 33:19 49:24
**tweak** 51:24

**twins** 39:4
**two** 2:13 14:14,23
17:6 18:22 24:23
26:22 27:14,14
29:12 46:14 48:2
51:15 54:8,9
55:23 58:1 61:18
**type** 35:24

**u**

**ultimately** 22:1
**unauthorized**
40:10 41:1
**unbeknownst**
23:15 24:14,14
28:4
**unclear** 65:4
**underlying** 34:5
**undersigned** 66:1
**understand** 12:14
14:12 17:2 18:8
19:13 21:5 34:14
36:20 46:20 47:10
61:5
**understanding**
14:24 53:24
**undo** 45:14
**unduly** 49:19 64:2
**unfair** 11:22 13:5
**unfortunate** 23:17
**unfortunately**
30:6
**unheard** 36:2
**unhinged** 42:7
**union** 3:9 5:6
**united** 1:1 2:1 54:6
54:7
**university** 4:17
**unknown** 26:21,22
36:2
**unnecessarily**
22:24

**unnecessary** 45:23
**unquote** 40:13
**unreliable** 19:11
**unseemly** 31:25
**unusual** 16:7
46:13
**upset** 35:12
**upsetting** 35:15
**upside** 33:19
**urias** 7:11
**use** 24:7,8 30:12
**usual** 53:5

**v**

**va** 4:18
**vacuum** 50:25
**valid** 42:7
**value** 28:25 37:7
41:14 43:24
**various** 26:12
32:19
**view** 37:7
**views** 24:17
**virtually** 54:1
**voelbel** 9:3

**w**

**wait** 31:12,24 33:2
55:25 64:10
**walk** 62:22
**walker** 13:4,6,20
13:20,25,25 14:10
14:13,17 15:5,8,14
15:15 17:23 26:12
28:21
**walnut** 3:19
**want** 11:22 13:1
14:24 15:17 16:25
19:9 20:24 21:1,2
21:4,11 22:7,23,25
23:8 30:21,22
32:4 34:19 35:6,7

35:9,9,10,11,19
36:17 37:22,25
38:22,22 41:9
44:17 45:10 49:10
49:13,21 51:11
52:6,10 56:9
57:10 58:16 59:6
60:10 63:15,22
64:14,15
**wanted** 15:19
17:17 22:12 36:8
41:23 52:22 64:15
**wants** 21:21 35:21
52:8 59:22
**ward** 7:11
**wasted** 15:23
**watch** 52:14
**waving** 53:8
**way** 15:8 18:4,15
38:7,10 39:23
41:24,25 46:21,25
50:15 51:25 54:12
62:19
**we've** 29:24 45:11
59:18,19 62:19
**wednesday** 1:13
2:15 10:1
**weight** 23:7 65:1
**went** 14:9 21:21
25:25 30:1 33:3
41:1
**west** 8:6
**whereof** 66:19
**win** 44:8 45:10,13
**wind** 27:22,24
**winters** 58:20 59:9
**wish** 23:17
**withdraw** 34:8
**witness** 66:19
**witnesses** 66:6

Page 16

[wonder - zelle.com]

| | |
|---|---|
| **wonder** 49:1 | 51:5 60:6 61:1,11 |
| **woodward** 6:15 | 61:20,21 |
| **word** 63:24 | **zelle's** 31:23 40:6 |
| **words** 41:10 | 61:19 |
| **work** 18:13 27:4 | **zelle.com** 9:9 |
| 29:7 30:25 31:2,3 | |
| 36:18,19,20 37:1,1 | |
| 37:5,7,23 38:1,10 | |
| 38:12 41:16,19 | |
| 42:17 54:2 | |
| **worked** 32:21 | |
| **working** 16:9 25:2 | |
| 27:9,11 28:14 | |
| 31:5 36:13 52:16 | |
| **works** 36:7 | |
| **workup** 29:6 | |
| **worse** 45:19 | |
| **write** 40:21 63:22 | |
| **writing** 25:20 | |
| 49:15 | |
| **written** 19:6 | |
| **wrong** 26:20 48:17 | |
| **wrote** 25:16 | |

y

**yahoo.com** 5:17
**yeah** 60:20,25
**year** 17:10 30:5
 32:24
**years** 17:8
**yesterday** 11:9
 61:11

z

**zelle** 9:3 12:11,15
 12:21 19:12,14,18
 19:19,23 20:2,4,11
 20:15,21 21:7,13
 21:14,19,19 23:13
 31:16,23 40:6,11
 40:17,19,20,24
 41:1,2 42:4 50:10

Veritext Legal Solutions
866 299-5127