JOSEF D. COOPER (53015)
TRACY R. KIRKHAM (69912)
JOHN D. BOGDANOV (215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA  94103
Telephone:  (415) 788-3030
Facsimile:  (415) 882-7040
jdc@coopkirk.com
trk@coopkirk.com
jdb@coopkirk.com

*Counsel for Class Representative Steven Ganz
And Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | **Master File No. 3:07-cv-5944 JST**<br>**MDL No. 1917**<br>**COOPER & KIRKHAM, P.C.'S OBJECTION TO CORRECTED SPECIAL MASTER'S REPORT & RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES** |
| This Document Relates to:<br><br>All Indirect-Purchaser Actions | |

**TABLE OF CONTENTS** <u>**PAGE**</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.     INTRODUCTION AND STATEMENT OF OBJECTION . . . . . . . . . . . . . . . . . . . . . 1

II.    THERE IS NO BASIS IN EXISTING PRECEDENT FOR A RULE
THAT A PENALTY MAY BE EXACTED FROM LITIGATION COUNSEL
FOR RAISING OR PURSUING A SETTLEMENT OBJECTION . . . . . . . . . . . . . . 3

III.   NONE OF THE REASONS GIVEN BY THE SPECIAL MASTER
JUSTIFY THE COMPENSATION PENALTY HE IS RECOMMENDING
FOR COOPER & KIRKHAM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.   GENERAL OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

| | |
|---|---|
| 1 | **TABLE OF AUTHORITIES**           <u>PAGE(S)</u> |

**Federal Cases**

*Azizian v. Federated Dep't Stores, Inc.,*
    499 F.3d 950 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*Bezdek v. Vibram USA, Inc.*
    809 F.3d 78 (1st Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.,*
    19 F.3d 1306 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Feder v. Frank (In re HP Inkjet Printer Litig.)*
    716 F.3d 1173 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Franklin v. Murphy*
    745 F.2d 1221 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Goland v. United States*
    903 F.2d 1247 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Agent Orange Prod. Liab. Litig.*
    818 F.2d 816 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re FPI/Agretech Sec. Litig.*
    105 F.3d 469 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*
    55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*
    827 F.3d 223 (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Prudential Ins. Co. Am. Sales Practice Litig. Actions*
    278 F.3d 175 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Lindy Bros. Builders, Inc., v. American Radiator, Etc.*
    540 F.2d 102 (3d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*
    654 F.3d 242 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Neitzke v. Williams*
    490 U.S. 319 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Redman v. RadioShack Corp.*
    768 F.3d 622 (7th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Reynolds v. Ben. Nat'l Bank*
    288 F.3d 277 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*White v. Auerbach*
    500 F.2d 822 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## I. INTRODUCTION AND STATEMENT OF OBJECTION

Cooper & Kirkham, P.C. ("C&K") hereby objects generally to the "Corrected Special Master's Report & Recommendation re Allocation of IPP Class Counsel Attorneys' Fees" (Dkt. 4976)[1], dated October 21, 2016 ("Fee Allocation R&R"), and specifically to the recommendation that C&K's multiplier be reduced as a result of its interposing objections during the settlement and fee approval process and taking an appeal from those objections that were overruled. Many other firms are briefing the general objections to the methodology used by the Special Master to arrive at his recommendations, in particular, his largely uncritical adoption of Lead Counsel's proposed multipliers. This memorandum will focus on the question of whether it is fair and reasonable to punish litigation counsel that subsequently object to a proposed settlement, form of notice and/or fee request by devaluing the compensation that would otherwise be paid for their pre-settlement efforts on behalf of the class. This aspect of the Fee Allocation R&R raises an issue of first impression in the federal courts.

At pages 18-19 of the Fee Allocation R&R, the Special Master found that "but for" C&K's raising "objections to the scope of notice and to the quality of Lead Counsel's leadership" and "appeal[ing] the Court's denial of their objections," it "would have fit comfortably at the top of the 1.3-1.5 tier of multipliers, since it did high level document review as a team leader, prepared for depositions, took a lead in creating the online document database, and contributed $50,000 to the Litigation Fund." However, these "unhelpful activities" and "less than collaborative actions," the Special Master concluded, "merits a reduction in the lodestar [*sic*: multiplier] that the Cooper firm otherwise would have earned." Therefore, instead of a 1.5 multiplier, the Special Master recommended a 1.25 multiplier. *Id.* at 18.

---

[1] *See also* "Special Master's Report & Recommendation re Allocation of IPP Class Counsel Attorneys' Fees" (Dkt. 4971), filed October 20, 2016. Dkt. 4976 appears to be identical to Dkt. 4971, except for the inclusion of a new "Exhibit A".

COOPER & KIRKHAM, P.C.'S OBJECTION TO       - 1 -        Master File No. 3:07-cv-5944 JST
CORRECTED SPECIAL MASTER'S REPORT &                       MDL 1917
RECOMMENDATION

The monetary difference between the multiplier of 1.5 that the Special Master found commensurate with C&K's contribution to the litigation and the penalty multiplier of 1.25 is $690,408.  Beyond the money at issue, however, there is an important principle of law at stake.  If this penalty rule is adopted by the Court, it will set the precedent that any lawyer who has made a significant contribution to a class action will be putting that investment at risk if he or she formally expresses reservations about an aspect of a proposed settlement, class notice or fee request.  It will establish the rule that such counsel had better go along to get along, lest they be viewed as "unhelpful" and "less than collaborative" in Lead Counsel's efforts to settle a case and receive the maximum fee possible.

This is not the same as denying compensation for hours expended advancing an overruled objection.  This is saying that despite the quality of the work done in furtherance of the litigation, any counsel who subsequently objects to any aspect of the approval or fee process can have its litigation contribution devalued as a consequence.  The Special Master is kidding himself if he believes that the adoption of such a rule will not chill advocacy by the lawyers who, having participated in the litigation, are in the best position to evaluate and raise concerns about a proposed settlement, the procedures surrounding it, and/or what is a fair and reasonable fee.

Indeed, as is clear from the R&R, the Special Master's proposed punishment of C&K is explicitly intended to serve the purpose of chilling advocacy.  Apparently, the Special Master felt that C&K should not have raised the objections it made to the form of notice, or "to the quality of Lead Counsel's leadership."  Fee Allocation R&R at 18.  He did not, however, feel the same about C&K's objections to ignoring the notice and settlement terms in the distribution of the Chunghwa funds or the argument that the nationwide release was overbroad.  *Ibid*.  As will be discussed below, the Special Master conducted no factual inquiry into whether any basis exists for his characterizations of C&K's notice or leadership objections as "unhelpful," "less than collaborative" and "counter-productive."  *Ibid*.  Although he uses the words, "bordered on being frivolous" in connection with "the objections to Lead Counsel's strategy and leadership" [*Ibid*], the Special Master gives no definition of what he meant by "frivolous."  Frivolous is a term with a

| COOPER & KIRKHAM, P.C.'S OBJECTION TO CORRECTED SPECIAL MASTER'S REPORT & RECOMMENDATION | - 2 - | Master File No. 3:07-cv-5944 JST MDL 1917 |

1 precise legal definition, but the Special Master provides no findings as to the manner in which
2 C&K's objections "borderline" satisfied this standard.

3       Establishing a precedent that it is within a court's discretion to punish litigation counsel
4 without a specific finding that an objection is legally frivolous is both dangerous public policy and
5 contrary to all case law, which uniformly acknowledges the value that non-frivolous objections
6 (even if overruled) provide in settlement approval. C&K's punishment would set this area of the
7 law on a slippery slope with no objective form or definition. What if a court simply disagrees with
8 the objection on the merits sufficiently to call it "counter-productive?" Or is angry that an appeal
9 was taken from its overruling the objection? What if it wanted to swiftly clear the matter from its
10 docket and views any objection as "unhelpful?" Apparently, all it needs to do, according to the
11 Special Master's recommendation, is characterize the objection as counter-productive, and it can
12 dispense "retribution" by reducing the compensation for litigation efforts below that of
13 comparable non-objecting counsel in the case.

14       Adoption of the Special Master's recommendation will establish precedent so vague that it
15 will provide no guidance for future litigation counsel to determine what, if any, objections can be
16 made safely and not put in jeopardy the compensation that they earned in prosecuting the
17 litigation. Consequently, at best, counsel will be hesitant to raise any objection, and, at worst, they
18 will ignore defects in settlements because disagreeing with Lead Counsel's "strategy and
19 leadership" is too risky when they have millions of dollars of lodestar invested in the case. This is
20 not in the best interests of future classes or the courts charged with protecting them. The Special
21 Master's recommendation in this regard should be rejected and Cooper & Kirkham be awarded a
22 multiplier of at least the 1.5 which the Special Master found was appropriate, and higher if the
23 general objections result in a reallocation of the money currently recommended for Lead Counsel
24 and those he placed in the top two tiers.

25 **II.    THERE IS NO BASIS IN EXISTING PRECEDENT FOR A RULE THAT A
26        PENALTY MAY BE EXACTED FROM LITIGATION COUNSEL FOR RAISING
       OR PURSUING A SETTLEMENT OBJECTION**

27

28

---

COOPER & KIRKHAM, P.C.'S OBJECTION TO     - 3 -    Master File No. 3:07-cv-5944 JST
CORRECTED SPECIAL MASTER'S REPORT &     MDL 1917
RECOMMENDATION

Courts look to "the relative efforts of, and benefits conferred upon the class by, co-counsel" in evaluating fee allocation proposals. *In re FPI/Agretech Sec. Litig.,* 105 F.3d 469, 474 (9th Cir. 1997) (citing *Class Plaintiffs v. Jaffe & Schlesinger, P.A.,* 19 F.3d 1306, 1308 (9th Cir. 1994) and *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 816, 223 (2d Cir. 1987)). The precedent generally applicable to the determination of individual fee awards from a common fund provides that "[i]It is well established that an award of attorneys' fees from a common fund depends on whether the attorneys' "specific services benefited the fund - whether they tended to create, increase, protect or preserve the fund.'" *Jaffe,* 19 F.3d at 1308 (9th Cir. 1994) (quoting *Lindy Bros. Builders, Inc., v. American Radiator, Etc.,* 540 F.2d 102, 112 (3d Cir. 1976)).

However, these words were written in a way that conclusively assumes the achievement of the fund to be in the best interests of the class, and must be applied to this situation with that in mind. In order to give credence to the authority holding that objections are a beneficial aspect of the settlement approval process, it cannot be assumed that raising an objection to a proposed settlement, even if overruled, is *ipso facto* an action adverse to the interests of the class. Every objection can be characterized as a failure to "protect or preserve" the fund, just as all objections "delay any settlement distribution." Fee Allocation R&R at 18.

It is clear from the Special Master's discussion of the penalty to be applied to C&K's fee that his reasoning was colored by an underlying belief that the settlement at issue here is, in fact, in the best interests of the nationwide settlement class. However, at law, whether a particular settlement is in a class's best interests cannot be definitively established until the entire approval process is completed. That has not occurred in this matter. There are many cases in which a settlement that was negotiated and proposed in good faith, and approved by the district court after a full and fair consideration, is determined on appeal to be contrary to a class's best interests. *See, e.g., Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242 (2d Cir. 2011), *Feder v. Frank (In re HP Inkjet Printer Litig.)*, 716 F.3d 1173, 1175 (9th Cir. 2013), and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 827 F.3d 223 (2d Cir. 2016), and the cases cited therein. Even if it were conclusively established here that each of

1  C&K's rejected objections were appropriately overruled, that is not the same as being guided in
2  applying fee allocation precedent, by the assumption that the very act of raising or prosecuting an
3  objection disregards the interests of the settlement class.  Of course, not all of C&K's objections
4  were overruled.  Its objection to violating due process in the distribution of the Chunghwa
5  settlement resulted in the process being redone to comply with the published notice and settlement
6  agreement.  Further, while it may not be possible to attribute the Special Master's and Court's
7  reductions to Lead Counsel's fee request as directly to C&K's objection, both agreed with C&K
8  that the compensation requested was not commensurate with the work done in the litigation.

9        Whatever the outcome of an individual objection, it is the law that class members have an
10  interest in a full, fair and wide-ranging exploration of all of the issues implicated by the binding of
11  absent parties to a compromise in which they had no independent representation.  Many courts
12  have noted that settlement objections, whether sustained or overruled, play an important role in
13  this process:  "[W]here there is an absence of objectors, courts lack the independently-derived
14  information about the merits to oppose proposed settlements."  *In re GMC Pick-Up Truck Fuel*
15  *Tank Prods. Liab. Litig.,* 55 F.3d 768, 803 (3d Cir. 1995).  *See also*, *White v. Auerbach,* 500 F.2d
16  822, 828 (2d Cir. 1974) ("[I]t is well settled that objectors have a valuable and important role to
17  perform in preventing collusive or otherwise unfavorable settlements."); *In re Prudential Ins. Co.*
18  *Am. Sales Practice Litig. Actions,* 278 F.3d 175, 202 (3d Cir. 2002) ("*In re Prudential Ins.*") (J.
19  Rosenn, concurring and dissenting) ("The objecting lawyer independently can monitor the
20  proposed settlement, costs, and fees for Class Counsel and, thus, aid the court in arriving at a fair
21  and just settlement for the members of the class who individually are largely unrepresented.");
22  *Reynolds v. Ben. Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002)("It is desirable to have as broad a range
23  of participants in the fairness hearing as possible because of the risk of collusion over attorneys'
24  fees and the terms of settlement generally.")

25        For this reason, courts are traditionally skeptical of procedures such as the imposition of
26  high appeal bonds or attempts to shift fees to losing objectors because they have the potential to
27  chill full advocacy of settlement and fee objections.  *Azizian v. Federated Dep't Stores, Inc.,* 499
28

| COOPER & KIRKHAM, P.C.'S OBJECTION TO CORRECTED SPECIAL MASTER'S REPORT & RECOMMENDATION | - 5 - | Master File No. 3:07-cv-5944 JST MDL 1917 |

F.3d 950, 960 (9th Cir. 2007).  *See also, Bezdek v. Vibram USA, Inc.,* 809 F.3d 78 (1st Cir. 2015) ("Because parties to a settlement have a shared incentive to impose burdensome requirements on objectors and smooth the way to approval of the settlement, district courts should be wary of possible efforts by settling parties to chill objections.  By monitoring class counsel and providing courts with crucial information on which to evaluate proposed settlements, meritorious objectors can be of immense help to a district court in evaluating the fairness of a settlement.  *See, Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014).")

As noted by Judge Rosenn in his concurrence/dissent in *In re Prudential Ins.,* 278 F.3d at 201-202, which also concerned settlement objections made by counsel in the case, "[a]n objecting lawyer should not be expected to be a quiescent, listless participant in the proceedings without expressing contrary view[s] or theories; the lawyer should have reasonable leeway for expression and argument. * * * When objecting counsel raises pertinent questions concerning the conduct of Lead Counsel, the terms of the proposed settlement, and the costs and fees to be paid from the settlement fund, he or she not only renders a service to the class, but also aids the court."

Setting a precedent that it is permissible to impose a compensation penalty on litigation counsel who raise a non-frivolous objection or take an appeal simply because these threaten to upset or delay a settlement proposed by lead counsel is not in the best interests of classes or courts. It can have no effect other than to turn litigation counsel into "quiescent, listless participant[s] in the [settlement] proceedings." *Id.* at 201.

**III.   NONE OF THE REASONS GIVEN BY THE SPECIAL MASTER JUSTIFY THE COMPENSATION PENALTY HE IS RECOMMENDING FOR COOPER & KIRKHAM**

The United States Supreme Court defined a "frivolous" claim as one "where none of the legal points are arguable on their merits.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The following year, this articulation was specifically adopted by the Ninth Circuit in *Goland v. United States*, 903 F.2d 1247, 1258 (9th Cir. Cal. 1990).  Prior to that, the Ninth Circuit had used the functionally equivalent definition of "frivolous" as having "no arguable basis in fact or law." *Franklin v. Murphy*, 745 F.2d 1221, 1228 (9th Cir. 1984).  The Special Master conducted no

inquiry and made no findings that any objection raised by C&K was grounded on legal points that were not arguable on their merits.  The most that can be said about any of the firm's objections is that in the opinion of this Court, those objections that were not sustained do not rise to a level sufficient to preclude approval of the settlement, or require investigation into whether a new round of notice should be given to the class.

The Special Master explicitly stated that he was not grounding his recommendation that C&K's compensation be reduced on the basis of the "objections they asserted to Chunghwa and the scope of the release." Fee Allocation R&R at 18.  Further, he found that Mr. Cooper's "activities" with Special Master Walker in the fall of 2014, "do not deserve retribution in the form of an unfavorable multiplier." *Ibid*.  The two matters, in addition to filing a notice of appeal, that Special Master Quinn called out as supporting his decision to impose an unfavorable multiplier are C&K's "objections to the scope of notice and to the quality of Lead Counsel's leadership[.]" *Ibid*. Neither the objection to the notice, nor the "objection" to Lead Counsel's leadership, were determined by the Special Master to have lacked an arguable basis in fact or law.  Rather, the Special Master characterized them as "show[ing] a lack of collaboration and a disregard of the interests of the Class." *Ibid*.

First, there is no support in current precedent for making "a lack of collaboration" that does not also cause wasted effort, inefficiency or duplication of effort an independent factor in setting a fair and reasonable fee.  Here, there is an express disavowal of any idea that C&K's alleged lack of collaboration affected any aspect of the litigation efforts for which the fees are being allocated, since the Special Master specifically held that the firm's litigation efforts entitled it to a multiplier "at the top of the 1.3-1.5 tier[.]" *Id.* at 19.

Second, as discussed above, the fact that C&K filed a notice of appeal can no more be a basis for "retribution" than the fact that it filed the objections in the first place.  Review by the courts of appeal is an integral and time-honored aspect of our system of justice.  Indeed, since C&K believes firmly in the positions advanced in its objections – primarily that the release here is overbroad and should not include uncompensated class members – it can be argued that it has a

1 duty to present the issue to the circuit court.

2 The other alleged lack of collaboration which is used to justify punishing C&K arises from
3 the Special Master's noting that "Cooper never raised the notice objection early in the preliminary
4 approval process when it might have been dealt with before the notice program had been
5 completed and paid for." *Id*. at 18.  This, the Special Master asserts, means that C&K turned away
6 from the opportunity to "work[] out differences with Lead Counsel collaboratively and privately
7 instead of objecting at the last minute in an effort to bring down the entire settlement." *Ibid*.
8 However, this conclusion is factually flawed and lacks foundation in the record.

9 There is no basis for the assumption that the notice objection could have been worked out
10 privately or before the time for filing formal objections.  Although C&K played a lead role in
11 establishing the document and e-discovery protocols and then in conducting discovery against
12 Philips, one of the major defendants in the case, C&K was not included in Lead Counsel's inner
13 sanctum of advisors.  This was never more true than after the fall of 2014, when Judge Walker
14 conducted the inquiry that culminated in his December 12, 2014, "Special Master's Report and
15 Recommendation re Settlement," Dkt. 3200, to appoint Mr. Cooper as Co-Lead Counsel.  That as
16 a result of this, Mr. Alioto considered Mr. Cooper the enemy, comes across loud and clear in the
17 briefing before the Special Master on Lead Counsel's proposal to apply a .8494 multiplier after
18 a10% lodestar reduction, and award C&K a fee that represents approximately 76% of its lodestar.
19 *See*, Dkts. 4790, 4800, 4821, 4853, 4879, 4911 and 4934.  When Lead Counsel was developing
20 the plan of notice in 2015, C&K was decidedly not informed about any aspect of the design or
21 procedures, and had no opportunity for a "collaborative" interaction with Lead Counsel on the
22 notice issue.

23 Second, C&K's objection was not to the *text* of the long or short form notices, but to the
24 methodology and manner in which notice *was actually disseminated*.  *See, e.g.*, Dkt. 4115 at pgs.
25 2-3.  On May 29, 2015, C&K was served by ECF with the Declaration of Joseph M. Fisher (Dkt.
26 No. 3863), ¶ 24, in which it first learned anything about Lead Counsel's dissemination plan.  This
27 was the first possible inkling that the print notice was estimated to reach only 58% of class

28

members, a number well below the 80% considered minimal for due process, and the rest of the required reach would be achieved through Internet advertisements. No examples of the Internet advertisements that were to do this were provided except Fisher Exhibit J, which showed a short "email banner" to be displayed on the feed of New York Times digital subscribers, who would also be getting the text of the short form notice printed in their papers. Dkt. 4371 at 8-10. Following dissemination of notice and in connection with the motion for final approval, on November 20, 2015, Mr. Fisher submitted his post-dissemination declaration, stating at page 14, that "[w]hen digital and print media results are combined, the result is an estimated 83% of [the target audience] have been reached . . ." Dkt. 4371.

C&K's objection took issue with the lack of factual underpinnings for this conclusion, and the fact that the text of the Internet advertisements that were actually used did not comply with the notice requirements in Rule 23. See, Dkt. 4437 at 9-11. C&K requested the Special Master to appoint an independent expert in the field of class notice to investigate whether the actual reach of Rule 23 compliant notice had been adequate to satisfy due process, and to advise on corrective measures that might be taken if it did not. See, Dkt. 4364 at 27-31 and Dkt. 4437 at 10-11. Because a review of the notice experience was necessary to determine whether or not there is a due process problem, C&K's objection did not mature until *after* the report on dissemination was made on November 20, 2015. Further, C&K never asserted that questions about the adequacy of notice, should "bring down the entire settlement," as the Special Master claims. Fee Allocation R&R at 18. To the contrary, C&K advocated that an independent investigation should be conducted to establish the actual reach of the notice, and cited to a case in which "[i]nstead of denying final approval, the *Kaufman* Court appointed an expert in class notification to recommend additional steps to notify the class." *See*, Dkt. 4364 at 31 and Dkt. 4437 at 10-11.

Ironically, although there was no ability to resolve the notice-reach question "collaboratively and privately," C&K, in fact, did attempt a pre-objection resolution of the scope of release issue, partly because this seemed like the collaborative thing to do, and partly because it did not want professional objectors riding its coattails into the district or circuit courts. On

October 1, 2015, Messrs. Cooper and Scarpulla sent a letter to Mr. Alioto and the relevant defense counsel outlining the position that providing no consideration for the claims of half the nationwide settlement class was unfair and unreasonable, and urging that a solution be found in advance of the objection deadline.  *See*, Exhibit 2 to the "Declaration of Josef D. Cooper in Support of Objections to Settlement," Dkt. 4116-1.

      The Special Master's second basis for punishing C&K is that it raised "borderline frivolous" objections to "Lead Counsel's strategy and leadership."  Fee Allocation R&R at 18.  In an effort to understand the Special Master's reference since there was no objection directed specifically to Lead Counsel's competence, C&K reviewed all filings relevant to its objections.  The statements therein that could fairly be characterized as critical of Lead Counsel's "strategy and leadership" were directed to three areas.  First, was the inconsistency between the proposed plan of distribution and the terms of the Chunghwa settlement and notice.  See, Dkt. 4364 at 24-27.  However, since the Special Master sustained this objection, and ordered new notice and a change in distribution, he could hardly consider it borderline frivolous.  Second, was the negotiation of releases without consideration of the claims of non-repealer state settlement class members.  *See*, Dkt. 4115 at 3; Dkt. 4364 at 10-11, 14-15 and 21.  However, the Special Master explicitly found that, like the Chunghwa objection, no aspect of this objection "deserved retribution in the form of an unfavorable multiplier."  Fee Allocation R&R at 18.

      All other statements critical of Mr. Alioto were made in the context of Lead Counsel's request for a 33.3% aggregate fee, or his subsequent proposal to allocate the 27.5% Court-awarded fee among counsel.  *See*, Dkt. 4115 at 5-6; Dkt. 4437 at 12-13; Dkt. 4821 at 4-5.  However, none of C&K's observations about Lead Counsel lack a basis in fact.  For example, in several places, C&K noted that Lead Counsel had never tried an antitrust case, and therefore he had to ask more experienced counsel for help.  C&K was critical of his ignoring the experience available from litigation counsel already in the case, and bringing in three new trial firms in late 2015.  C&K noted that because these firms were obviously unfamiliar with the discovery, depositions and other proceedings, during a very brief time of intensive trial preparation, they ran up approximately

1  $3,817,498.25 in collective lodestar for which Lead Counsel proposes they should received among
2  the highest multipliers.  These statements are all absolutely accurate.  *See, e.g.,* Dkt. 4800 and Dkt.
3  4851.  C&K also criticized Lead Counsel for inflating the collective lodestar by engaging in a
4  needless and protracted fight with the California Attorney General.  This situation was the subject
5  of findings of fact by Judge Walker.  *See,* Dkt. 3200 at 3 ("[T]he inability of IPP lead counsel and
6  counsel for the Cal AG to resolve their respective responsibilities has opened up a new front of
7  conflict that in most cases involving indirect purchaser and *parens patriae* claims has been
8  avoided.")

9  Finally, C&K criticized Lead Counsel's personal timekeeping practices, primarily billing
10 in minimum quarter-hour segments instead of the customary 10th-of-an-hour minimum, and
11 "block billing" which makes it is impossible to determine or assess the reasonableness of the time
12 he or his associates expended on any particular task.  Both of these statements are demonstrably
13 true and were recognized as such by the Special Master when he recommended an aggregate fee
14 that was $19 million less than Lead Counsel had requested.  *See*, Dkt. 4351 at 80-81.

15 There is simply no basis for characterizing any statement made by C&K with regard to
16 Lead Counsel's "strategy and leadership" as "border[ing] on being frivolous."  Fee Allocation
17 R&R at 18.  Indeed, all such statements were relatively mild and measured, totally appropriate to
18 the issues under discussion, and completely grounded in undisputed fact.  The Special Master
19 leveled the criticism that these statements "*did nothing* but assist the challenges by professional
20 objectors."  *Ibid* (emphasis added.)  It would seem impossible for that to be true when they were
21 made in furtherance of objections to a fee request that the Special Master reduced by $19,225,000,
22 and this Court reduced by an additional $15,143,750, thus saving the class almost $34.4 million in
23 fees.

24 **IV.    GENERAL OBJECTIONS**

25 Objections have been filed to the Special Master's adoption of Lead Counsel's placement
26 of firms in the "tier" arrangement, and in particular, the multipliers assigned to Lead Counsel, the
27 late-added trial counsel, and certain of the other firms in the two highest tiers. All of these
28

1  objections are meritorious (*see*, Dkt. 5013 at 1-6; Dkt. 5021 at 4-7; and Dkt. 5023 at 7-11), and
2  were previously asserted by C&K.

3  **V.     CONCLUSION**

4  Not one hour of C&K's $3,068,480 lodestar was disputed by Lead Counsel at any point
5  during the litigation, or during the extensive review that Lead Counsel asserted that he and a
6  review committee gave all of the lodestars before submission of the joint fee petition.  Dkt. 4071-1
7  at ¶119.  C&K brought expertise in e-discovery and carried substantial responsibility for
8  establishing the protocols for e-discovery and then for conducting the discovery against Philips,
9  the defendant that paid the second highest settlement amount.  For a description of C&K's
10 litigation contribution, *see,* Dkts. 4073-6, 4821, 4821-1, 4821-2, and 4878.  C&K participated in
11 both deposition discovery and in briefing the issues relevant to the claims against Philips.

12 The Special Master's recommendation as to Cooper & Kirkham should be rejected and the
13 firm be awarded a multiplier of at least the 1.5 which the Special Master found was appropriate,
14 and a higher multiplier if the Court sustains the general objections and reallocates the money
15 currently recommended for Lead Counsel and those he placed in the top two tiers.

16 Dated: November 11, 2016                           Respectfully submitted,

17
                                                     /s/      Josef D. Cooper
18                                                        Josef D. Cooper

19                                                   Josef D. Cooper (53015)
                                                     Tracy R. Kirkham (69912)
20                                                   John D. Bogdanov (215830)
                                                     COOPER & KIRKHAM, P.C.
21                                                   357 Tehama Street, Second Floor
                                                     San Francisco, CA 94103
22                                                   Telephone: (415) 788-3030
                                                     Facsimile: (415) 882-7040
23                                                   Email:  jdc@coopkirk.com

24

25

26

27

28

---

COOPER & KIRKHAM, P.C.'S OBJECTION TO         - 12 -        Master File No. 3:07-cv-5944 JST
CORRECTED SPECIAL MASTER'S REPORT &                         MDL 1917
RECOMMENDATION