Theresa D. Moore (99978)
Attorney At Law
One Sansome St,, 35th Fl
San Francisco, CA 94104
Telephone: (415) 434-8900
Facsimile:  (415) 434-9200
tmoore@aliotolaw.com

*Counsel for Indirect
Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TFT-LCD (FLAT PANEL) ANTITRUST LITIGATION | Case No. 3:07-cv-5944 JST<br>MDL No. 1917<br><br>**CLASS ACTION**<br><br>**OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS'FEES (DKT 4971, 4976)**<br><br>Judge: Honorable John S. Tigar<br>Courtroom 9,  19th  Floor |
| This Document Relates to:<br><br>Indirect-Purchaser Class Actions | |

**To the Honorable Judge John S. Tigar,**

**Objection To Special Master's Report and Recommendation**

**Re Allocation of IPP Class Counsel Attorneys' Fees (Dkt 4971,4976)**

**Introduction**

Counsel Moore herein, is an IPP Counsel who has worked for the benefit of the CRT class for over 9 years. I object to the allocation of my fees (Dkt 4976) based on the Special Master (SM) failing to take into consideration the quantifiable enhanced benefit of $14,418,750 received by the class due to my efforts and the facts, damage comparisons, and arguments this counsel alone originally developed and consistently presented to the SM, and to this Court, on multiple occasions, beginning in October 2015. Facts and damage comparisons from these filings were quoted and considered by the SM in his original overall attorney fee Report & Recommendation (R&R), and by this Court "in reviewing the R&R" and in its subsequent Order overruling the SM on precisely this point, reducing the overall fees, and returning the $14,418,750 to the class. (Dkt 4740, 4351) This counsel alone initiated, drew attention to, and provided the facts, numbers and comparisons.

As an IPP counsel with the Alioto Law Firm appearing for the benefit of multiple related case named class members (eg Dkt 121,189), during the course of the litigation I handled the CRT matter. I was very efficient, and simultaneously being co lead counsel for LCD never sought to become a major player in CRT. All of my efforts in CRT were targeted, strategic efforts to bolster and strengthen the case. I was very prudent and discriminating in my reading of documents, and only did so when I felt it necessary for a legal or case strategic reason, and on multiple occasions I did advise and discuss with Lead Counsel (LC) certain important issues based on my experience in other antitrust cases and in LCD. This efficiency resulted in an average of only 27 hours per year billed on the case.

After settlement at the claims stage it became apparent that there were major issues with the settlement. LC refused my request to discuss them. After research, analysis and much contemplation in 2015 I accepted the request of multiple class members for representation in their objections to the settlement in order to benefit the class. The substantive Damage Comparison Objection (Moore DCO) filed by Counsel Moore informing the SM and Court of heretofore never mentioned numbers, and compared potential CRT damages of $2.78 Billion to the $2 Billion in LCD, and the 20% of damages recovery by CRT to the 50% recovery by LCD was presented and

1

Objection To Special Master's Report And Recommendation Re Allocation Of IPP Class Counsel Attorneys' Fees
(Dkt 4971, 4976)                                                          MDL 3:07-md-1917 JT

filed by this counsel on multiple occasions. (Dkt 4113 Oct. 8, 2015; 4436-J Dec. 9, 2015 Orig. filed on JAMS CaseAnywhere, 4436, Feb. 26, 2016) 4436-4, Ex I, Ex J) These facts numbers and comparisons did not appear in any Lead Counsel filing before this Court. The Moore DCO was first considered and ruled upon by the SM in January 2016 (Dkt 4351) and then in August 2016 by this Court, which based on these facts, comparison and argument subsequently reduced the SM attorney fee award by $14,418,750, which substantially enhanced the benefit to the class. (Dkt 4740)

In the fee motion as well as allocation filings multiple counsel, including LC, advocated for their fees based on the entire circumstances of the case and many factors of the litigation, including post settlement work and future work on the CRT matter; and it was argued and considered by SM in its court ordered allocation of IPP Counsel fees. (Dkt 4077, 4298) In my post settlement work I obtained a quantifiable benefit the IPP class of $14,418,750 being returned to the class.

**Facts & Comparisons Filed by Counsel Moore Between October 8, 2015 & August 3, 2016**

Below are exemplar quotes of facts, information and comparisons written in my objection filings to the SM and the Court. These facts information and comparisons were never contained in any LC Motions or filings at issue before this Court, Judge Tigar. The overall damage figure was never included in LC's motions. Any comparison of CRT and LCD overall damages, and any comparison of CRT and LCD awards as a percentage of damages was initiated, developed, computed, and brought into focus by this counsel.

> C. The Settlement Amount
> Plaintiffs expert estimated the total class damages to be $2.769 Billion….Although Class Counsel likens this action to the *In re TFT-LCD (Flat Panel) Antitrust Litigation* and cites similar problems, in reality, the CRT conspiracy continued for a much longer period of time and was much better organized than the LCD conspiracy. In LCD, the potential single damages were approximately $800 million less than CRT, but LCD settled for almost twice the CRT settlement. LCD settled at $1.1 Billion, and CRT $576 million. Moreover, the LCD litigation recovered one-half of single damages, but the CRT recovered only one-fifth of single damages.
> While a large number, ….the $576 million settlement fund is insufficient to fairly compensate the class members and deter similar conduct in the future. ….
> D. The Attorney Fee Request
> …Although it is a very large settlement, *it must be properly evaluated*, and as written above, the class deserves much more. Dkt 4113, p 8-9, filed 10/8/15; 4436-4 Ex I ; p 8:25 - 9:21-22 (emphasis in original)
>
> Since Class Counsel likens this action so closely to the In re TFT-LCD (Flat Panel)

2

Objection To Special Master's Report And Recommendation Re Allocation Of IPP Class Counsel Attorneys' Fees
(Dkt 4971, 4976)                                                                                           MDL 3:07-md-1917 JT

Antitrust Litigation ... While a very large number, the evidence seems to show that $576 million settlement fund is insufficient to fairly compensate the class members and deter similar conduct in the future. In LCD, the potential single damages were approximately $800 million less than CRT, but LCD settled for almost twice the CRT settlement. LCD settled at $1.1 Billion, and CRT $576 million. Moreover, the LCD litigation recovered one-half of single damages, but CRT recovered only one-fifth of single damages. In order to approve the settlement, the Court must be provided with the evidentiary foundation substantiating such a discrepancy.  Dkt 4436-4 Ex J, p 13-14, Orig. filed JAMS Case Anywhere Dec. 9, 2015

In a case where the damages are $2.768 Billion, $8.304 Billion trebled, and the defendants (one of whom is the third most valuable company in the world) are paying only a very small fraction of 1/5 of the damages… Dkt 4436 P12, 19-23,  Feb.26, 2016

**R&R and Orders Reciting and Repeating the Moore Damage Comparison Objection (DCO)**

<u>Jan 2016 SM Report and Recommendation on Overall Attorney Fees</u>

After the Oct. 2015 and Dec. 2015 Counsel Moore filings, and after a hearing, in Jan. 2016 SM issued an R&R (Dkt 4351) granting attorney fees totaling 30% of the settlement fund, or $173,025,000. Therein SM makes clear that he relied on and considered the multiple filings with the Moore DCO, although discarded its importance, in stating "*Certain objectors* are critical of the settlement amount. They note that it is only 20% of the damage estimate by IPP's expert. They compare that result to the $1.1 billion IPP settlement in LCD which was closer to 50% of its expert's damage figure. The $576,000,000 figure speaks for itself."(id p 56:27-57:2) Moore is the only objector who included that objection, those numbers, that calculation, and comparison in the original and reply objection filing. LC admits this counsel's role in returning the money to the class in previous filings while arguing that another filer had no hand in informing the Court of this information, and citing to Counsel Moore's filing as having previously informed the SM and Court. (Dkt 4806 fn 2, "see ECF No. 4113 at 8-9" of October 8, 2015).  Although that one filer may have generally echoed the DCO at a later date, Moore alone consistently presented the facts on multiple occasions, made the calculations, and developed the argument. These facts and comparisons were never offered to Judge Tigar in either LC's Motion For Final Approval or Motion For Attorney Fees, nor were they in the R&R or Order for Class Certification, and the expert report was filed under seal. This was not information readily available. In fact, a search could only find the overall damage number in footnote 31 of 77 of a lengthy 213 page document that was filed and ruled upon

3

Objection To Special Master's Report And Recommendation Re Allocation Of IPP Class Counsel Attorneys' Fees
(Dkt 4971, 4976)                                                                                                      MDL 3:07-md-1917 JT

well before this Judge was assigned to CRT. The beneficiaries of the exposure of these facts and comparisons in Moore's DCO are the class members who saw their award rise by $14,418,750.

August 2016 Attorney Fee Order

On February 26, 2016 Counsel Moore filed with the Court an Objection to the R&R and for the third time presented the Moore DCO and also including her prior objection filings. (Dkt 4436, 4436-4 Ex I, Ex J) Upon review "the Court considered *numerous objections* to the R&R before issuing its own Order." ( Dkt 4740, Dkt 4999p 2; Moore DCO at Dkt 4436, Dkt 4436-4 Ex I Ex J ) On August 3, 2016 the Court concluded that the settlement was "not on par with the 50% of potential recovery in the LCD litigation" and reduced the fee award by $14,418,750. Id. This is precisely the objection facts and criticisms developed, highlighted and brought to the SM's and the Court's attention by Counsel Moore beginning in Oct 2015, and which was referred to and recited in both the R&R and the Order.

The work Counsel Moore performed as IPP counsel served as a foundation with knowledge of these potential damage and comparison percentage facts for both CRT and LCD, which were not readily available to objectors nor previously provided to this Court. LC consistently argued, "exceptional results obtained for the Class", but omitted this actual damage and comparison information, and never provided this information to make an accurate comparison. The omission of these complete and true *Kerr* facts could be interpreted to be misleading to the Court. This Court would not have focused on, nor had accurate information about, the true monetary and potential damages comparison with LCD without this counsel originally providing and highlighting the comparison. Although LC often equated CRT to the LCD case, the Motions for Final Approval and Attorney Fees failed to provide the Court with the necessary facts. The Court simply would not have had these side by side comparisons if not originally shown and spotlighted by Moore.

With the evaluation of this information provided by Moore, which was previously quoted, discussed and noted as an objection in the SM R&R, this Court found that the fee award should be reduced to 27.5% and recited Moore's objections of *"the size of the settlement as a percentage of the total potential recovery"* as well as *"the awards in comparable cases"* (Dkt 4740, at 9) resulting in a $14,418,750 enhanced benefit to the class.

4

Objection To Special Master's Report And Recommendation Re Allocation Of IPP Class Counsel Attorneys' Fees
(Dkt 4971, 4976)                                                                 MDL 3:07-md-1917 JT

This Court was newly assigned to this case after the retirement of Judge Conti in late 2015. At the first hearing with Judge Tigar in CRT on Dec.15, 2015 he made very clear that he was going to enjoy being educated and working on the case. Judge Tigar filled the counsel table high with boxes and boxes of documents related to pending issues, indicated there were more in the back, and instructed counsel briefing should be short and concise. The facts, numbers and the specific comparisons did not appear anywhere in this IPP material on pending issues except in the Moore DCO filings, and can be traced back. SM in the R&R clearly writes it was the objectors who complained about this comparison, thus bringing it to the attention of the SM and Court. SM's stray fairytale comment herein reminds one of Omar Khayyam's witty verses "The moving finger writes…" It was the information and criticisms in Moore's papers that ultimately appeared in the Jan 2016 R&R and then again in Judge Tigar's Aug. 2016 Order. Other than the one "echo" previously discussed, only Counsel Moore initiated this objection, provided the information including overall damages, made the damage amounts/ percentage calculations, comparisons and criticisms subsequently used by SM and this Court.

**Objector Fees**

The Ninth Circuit has held that it is clear error for a district Court to deny objectors' counsel a fee when their efforts increased the settlement fund. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (finding clearly erroneous the district Court's refusal to award fees to objectors who *first raised the issue* of objectionable incentive agreements and added $325,000 to the settlement fund for the class); see also William B. Rubenstein, Newberg on Class Actions § 13:37 (5th ed. 2014) "Thus, for example, if a class member objected to class counsel's fee and successfully trimmed that fee by, say, $100,000, that $100,000 would go back into the fund for the class's benefit; objector's counsel has therefore created a $100,000 benefit for the class and would be entitled to petition the Court to award them some percentage of that amount.".

Because the damage comparison relied upon in the Court's Order can be traced back to Moore's objection filings before the SM R&R and before the one "echo", the Moore DCO resulted in a substantial increase to the settlement fund beneficial to the class, and counsel is entitled to an award of attorneys' fees. *Rodriguez v. Disner,* 688 F.3d 645, 658 (9th Cir. 2012) In addition, "it is

5

Objection To Special Master's Report And Recommendation Re Allocation Of IPP Class Counsel Attorneys' Fees
(Dkt 4971, 4976)                                                                                    MDL 3:07-md-1917 JT

1  not appropriate for a judge to "den[y] a fee to the objectors … on the ground that he had already
2  decided, without telling anybody, not to accept" the settlement because "objectors must decide
3  whether to object without knowing what objections may be moot because they have already
4  occurred to the judge". *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 288-89 (7th Cir. 2002)

5        It is well settled that "a lawyer who recovers a common fund for the benefit of persons other
6  than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing
7  Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). "Ninth Circuit jurisprudence … permits the
8  application of common fund principles where—as in the present case—the class of beneficiaries is
9  identifiable and the *benefits can be traced* in order to allocate the fees to the class." *Glass v. UBS
10 Financial Services, Inc.,* 331 F. App'x 452, 457 (9th Cir. 2009). (emphasis added) Counsel Moore's
11 criticisms herein can be traced back to 3 filings between October 2015 and the August 2016 Order.

12       When "objections result in an increase to the common fund, the objectors may claim
13 entitlement to fees on the same equitable principles as class counsel." *Rodriguez v. Disner,* 688F.3d
14 645, 658 (9th Cir. 2012). Courts have recognized that objectors can play a valuable role in class
15 action settlements by creating an adversarial process at a time when both the plaintiffs and
16 defendants advocate in favor of the settlement. See *Eubank v. Pella Corp.,* 753 F.3d 718, 720 (7th
17 Cir. 2014) ("American judges are accustomed to presiding over adversary proceedings. They expect
18 the clash of the adversaries to generate the information …"), *Zucker v. Occidental Petroleum Corp.,*
19 192 F.3d 1323, 1329 (9th Cir. 1999) ("The contribution [an objector's] attorney made, by providing
20 an adversarial context in which the district Court could evaluate the fairness of attorneys' fees, was
21 substantial."); *Bell Atlantic Corp. v. Bolger,* 2 F.3d 1304, 1310 (3d Cir. 1993) ("The parties can be
22 expected to spotlight the proposal's strengths and slight its defects. … In such circumstances,
23 objectors play an important role by giving Courts access to information on the settlement's
24 merits."); see also William B. Rubenstein,The Fairness Hearing: Adversarial and Regulatory
25 Approaches, 53 UCLA L. Rev. 1435, 1475 (2006) "A judge will be most capable of making an
26 accurate assessment … following an adversarial presentation of merits of these claims…The
27 settling parties lack the incentives-indeed, possess the opposite incentives-to make this presentation.
28 .     When meritorious objections reveal weaknesses in a settlement and result in a tangible

1  benefit to the class, Courts award fees to objectors "that can be substantial." *Eubank*, 753 F.3d at
2  720 see also *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 288 (7th Cir. 2002 (recognizing the
3  desirability of having "as broad a range of participants" as possible at a settlement hearing and that
4  "[t]his participation is encouraged by permitting lawyers who contribute materially to the
5  proceeding to obtain a fee").

6  <u>The Court Should Use Percentage of the Fund Method to Calculate Counsel Moore's Fee Award</u>

7        The Ninth Circuit and District Courts in this Circuit have recognized that the percentage of
8  the fund method is the appropriate method for calculating fees when counsel's effort has created or
9  enhanced a common fund. See, e.g., *In re Bluetooth Headset Products Liability Litig.,* 654 F.3d
10 935, 942 (9th Cir. 2011)942. See also *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir.
11 1998), noting that Courts use the lodestar method when "there is no way to gauge the net value of
12 the settlement or any percentage thereof."

13       In addition, using the percentage method will advance the two objectives that Courts, as
14 guardians of the interests of class members, should have in mind when determining an appropriate
15 fee award: "to fairly compensate lawyers for services that benefit class members and to motivate
16 them to make class members better off."  Awarding a fee using the percentage method will
17 encourage other experienced counsel to provide the adversarial context that is so essential to
18 Courts' evaluations of class settlements. Use of the lodestar method would have the opposite effect,
19 dissuading skilled lawyers from stepping into the oft-criticized role of objectors' counsel. Class
20 members care about the final results lawyers produce, not about the time logged to get them.

21 <u>Counsel Moore's Requested Fee for the Additional Benefit is Reasonable & Appropriate</u>

22       The Ninth Circuit 25% benchmark may be adjusted based on consideration of all of the
23 circumstances of the case. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043,1048 (9th Cir. 2002)
24 Counsel Moore has taken the *Vizcaino* relevant circumstances into account in seeking a fee on the
25 enhanced class benefit of $14,418,750.  Moore Decl., ¶13,14 Counsel Moore's role in this case
26 representing IPP and objectors was different than the role of Class Counsel, who sought only to
27 maximize the fees received as opposed to continuing to seek benefits for the class. At the same time
28 Counsel Moore assumed significant risk in serving as objector counsel and substantially increased

7

the common fund. The below *Vizcaino* factors as applied to Counsel Moore favor awarding a fee for the enhanced benefits

1. The $14,418,750 enhancement Counsel Moore achieved for the class is exceptional

Courts recognize that "[t]he overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Omnivision,* 559 F. Supp. 2d at 1046; And even if the Court awards the fees that Counsel Moore is requesting, and chooses to take it from the common fund, the class's recovery will be far greater than it would have been if the R&R had been approved, and vastly than more than if LC's request of 33% had been approved.

2. The risk counsel assumed

Counsel Moore assumed significant risks in accepting to represent these objectors. Because Courts approve settlements in the vast majority of cases in which there are objections, the chances of an objection finding favor with the Court were very difficult. See Christopher R. Leslie, The Significance of Silence: Collective Action Problems and Class Action Settlements, 59 Fla. L. Rev. 71, 105 (2007) Although there are other cases in which settlements increased in size following objections, they are few in number, but vital legal issues were at stake here.  Counsel Moore also put her reputation on the line by agreeing to represent these objectors, as well as putting her career in jeopardy. As a counsel that typically represents plaintiffs in class action cases, Moore has spent years developing cooperative working relationships with other plaintiffs' firms, including firms serving as Class Counsel in this case. Representing an objector class member to a settlement is anathema to many lawyers in this field, and often to Courts as well.  See Brunet, 2003 U. Chi. Legal F. at 411, 471 (noting that "objectors may be the least popular litigation participants in the history of civil procedure" and "have a bad reputation"); Alan B. Morrison, Improving the Class Action Settlement Process: Little Things Mean a Lot, 79 G. Wash. L. Rev. 428, 428 (Feb. 2011) (recounting his experience of being "considered the proverbial skunk at the garden party" by "all the lawyers in every case, as well as virtually every district Court judge" when objecting to class action settlements). If no benefit were received for the class Counsel Moore would have undoubtedly been subject to severe criticism and relationships with other plaintiffs' counsel put in jeopardy. Moore Decl., ¶ 14, 13, Ex p 18; .

8

Objection To Special Master's Report And Recommendation Re Allocation Of IPP Class Counsel Attorneys' Fees
(Dkt 4971, 4976)                                                                                             MDL 3:07-md-1917 JT

3. The skill required and the quality of the work

Courts are particularly skeptical of objections relating to the amount of a negotiated settlement. As Professor Leslie observed, "judges routinely ignore objections that the monetary benefits of a proposed settlement are too low." Id. The lawyers who negotiated the settlement herein are all very skilled and experienced in class action litigation, and many Courts would have deferred to their, or SM's, judgment in approving the requested fees. Moreover, the fact that funds were "already on the table" when the objection was made, made an objection even more difficult.

Despite the risks involved, Counsel Moore agreed to represent Objectors because she was uniquely qualified to represent them in presenting their position to the Court. Because of her broad experience in representing plaintiffs in antitrust and class action litigation beginning in 1981, her role as lead counsel in LCD (to which LC so often compared itself), and her knowledge gained in her 9 years working on this case--much information of which is under seal and generally unavailable--Counsel Moore was in a unique position to be able to provide the Court with a valid, well rounded third party perspective of accurate information, which was omitted in the pending motions for fess and for approval. With this knowledge she was able, in a comparatively short time frame, to analyze the record in the case, to determine what had actually occurred and to develop an effective approach for communicating these concerns about the settlement amount to the Court. See Brunet, 2003 U. Chi. Legal F. at 448.

4. The contingent nature of the fee

It was also far from certain that the objection would lead to a successful enhanced benefit to the class in which case Counsel Moore would not be compensated for her work. See Rubenstein, The Fairness Hearing, 53 UCLA L. Rev. at 1450 (Objectors' financial incentives therefore encourage them to pursue the least problematic settlements and to do so gingerly."); Edward Brunet, Class Action Objectors: Extortionist Free Riders or Fairness Guarantors, 2003 U. Chi. Legal F. 403, 462 (2003). Counsel Moore represents these objector class members on a contingent basis, and has received no payment for its work. In addition to assuming the risk of not being paid for the time devoted representing class member objectors, Counsel Moore was also precluded from devoting resources to other cases and potential new cases. Moore Decl., ¶ 16

### 5. The requested fee is well below the market rate

Because the role Counsel Moore played in this case is unique—it is not the same as Class Counsel's role, or the role of a typical objector's counsel since Counsel is an IPP Class Counsel—the market rate is a useful consideration. In private antitrust actions clients usually pay far more than 33% of the recovery. See also *Blum v. Stenson,* 465 U.S. 886, 902 n.19 (1984) ("In tort…an attorney might receive one third of whatever amount the plaintiff recovers."). In addition, plaintiffs typically agree to pay contingent fees of 33% to 40% in opt out cases. And when Counsel Moore represents sophisticated clients on a contingency basis, it is pursuant to agreements that contain fee percentages higher than 33% of the recovery. Moore Decl., ¶ 17

### 6. The requested fee is comparable to fees awarded in other cases

Courts have awarded objectors' counsel significant fees when they create a substantial benefit for the class. See *Shaw v. Toshiba America Info. Systems, Inc.,* 91 F. Supp. 2d 942, 974 (E.D. Tex. 2000) (awarding $6 million to objectors who improved the settlement by doubling the length of the coupon exemption date). And in cases in which lawyers have negotiated an increase to a settlement fund, Courts have awarded the lawyers a percentage of the increased amount. See *Swedish Hospital Corp. v. Shalala,* 1 F.3d 1261, 1268-69,1272 (D.C. Cir. 1993) (affirming a fee award of 20% of the $10 million increase in the fund created by counsel's efforts); *In re First Databank Antitrust Litig.,* 209 F. Supp. 2d 96, 101 (D.D.C. 2002) (awarding counsel 30% of the $8 million increase in the settlement fund attributable to their efforts); *Linney v. Cellular Alaska Partnership*, Nos. C-96-3008 DLJ, et al., 1997 WL 450064, at *4, 6-7 (N.D. Cal. July 18, 1997) (awarding a fee of one third of the settlement fund negotiated by counsel who were retained by the plaintiffs after the Court denied approval of a prior settlement proposal), aff'd, 151 F.3d 1234 (9th Cir. 1998).

Counsel Moore's lodestar also supports the requested fee. Moore Decl ¶12 Courts in this circuit recognize that "[a] lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point." *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008); see also *Lopez v. Youngblood,* No. CV-F-07-0474 DLB, 2011 WL 10483569, at *14 (E.D. Cal. Sept. 2, 2011) (same); Task Force on Contingent Fees, 25 Rev. Litig. at 471 ("The

10

Objection To Special Master's Report And Recommendation Re Allocation Of IPP Class Counsel Attorneys' Fees
(Dkt 4971, 4976)                                                                             MDL 3:07-md-1917 JT

lodestar crosscheck re-introduces the problems of the lodestar method," since attorneys who "know that their fee, when calculated as a percentage, will be 'crosschecked' by the lodestar, they have every financial incentive to put as many hours into the file as possible."). In fact, the Ninth Circuit recently affirmed a fee award of 25% of a settlement fund without a lodestar cross-check and despite "the relatively low time-commitment by plaintiff's counsel" because "the district Court did not abuse its discretion in giving weight to other factors, such as the results achieved for the class and the favorable timing of the settlement." *Glass,* 331 F. App'x at 456-57.

Nonetheless, Counsel Moore's lodestar supports a fee of the typical 10-30% of the $14,418,750 added to the settlement fund. Counsel Moore's total lodestar consists of an extremely efficient 554.45 total attorney hours, 250.6 hours through May 2015, and 318.85 more to Aug 2016. Counsel Moore's current hourly rates used herein are significantly reduced from her rates charged, and are rates approved in LCD 4 yrs ago, and approved in this litigation. The objection work includes a richly experienced four year attorney's 127.85 hours at $350, for a total current lodestar of $431,147.50 . Moore Decl., ¶12. It does not include any hours devoted to securing this fee request. Work includes research, analysis, preparing and presenting the objection to the Court, court appearance, oral arguments, opposing LC's multiple motions, including to continue and to compel which were solely intended to eliminate the objections, assessing and advising about the risks. At $431,147.50 a multiplier crosscheck of 3, at $1,293,442.500 equals less than 10% of the $14,418,750 enhanced benefit to the class. Moore Decl., ¶¶ 11,12

While a multiplier of 8.7 is on the high end of multipliers typically awarded by Courts, it is far from unprecedented, See *Vizcaino*, 290 F.3d at 1051 (citing multipliers ranging from 0.6 to 19.6) Rather than raising her hours or rates Counsel was extremely efficient and should be commended not penalized for efficiency. A higher multiplier as a crosscheck would be justified in this case because of the extreme efficiency and substantial benefit that Counsel Moore was able to obtain for the class and against significant odds.

**Public Policy**

While this comparison objection did result in the enhanced benefit to the class, this counsels other objections were not sustained at this time, although they were valid and meaningful objections

11

to present, and were supported by amicus filings by multiple States Attorneys General. The SM noted them as "troublesome issues" and used them to reduce overall attorney fees. (Moore was also the first to note Chunghwa settlement was at issue and hinged on the distribution plan at bar. Dkt 4113) These serious and substantive objections relate to multiple class members, both Nationwide and in 3 repealer states, not receiving compensation and being forced to release, and were described by SM herein as "colorable issues". (and were included as main objections in all Moore filings, although SM puzzlingly and erroneously writes counsel did not have the Nationwide objection) One mentioned objection failed on a notice, statute of limitation, and fiduciary duty issue that has never been reviewed by a district or Court of Appeal, and directly impacts the purpose of CAFA as noted in its legislative history. The DCO objection did serve to return the enhanced benefit.

As previously stated objectors are valid and important components of a transparent and fair judicial process. It is contrary to public policy to penalize attorneys who bring to light issues which increase the value flowing to the class members. Reducing an attorney's fees is especially inappropriate herein where the lawyers affected have brought such a benefit to the class, and brought to light errors and due process issues which could be corrected. To have well regarded lawyers make good faith objections in order to have a solid settlement and then be penalized for doing so is contrary to all judicial and public policy and simple fairness. LC herein has allocated himself over $45 million, with SM's blessing, yet drastically reduces others who have brought a quantifiable benefit to the class. As stated by Justice Ambro in *In re Diet Drugs Prods. Liabl. Litig.* (3rd Cir.2005) 401 F.3d 143,173 " They make recommendations on their own fees and thus have a financial interest in the outcome. How much deference is due the fox who recommends how to divvy up the chickens?"

**Conclusion**

Based on case law and equity Counsel Moore continues to requests a fee percentage of 10-30%, and submits that 15% of the $14,418,750 enhanced benefit achieved for the class- a tiny fraction of the $158 Million award and much lesser percentage than this court has previously awarded in the overall attorney fees- would be fair and deserving under the circumstances for this extraordinary result in benefiting the class members, achieved amid the great risks in doing so.

12

Objection To Special Master's Report And Recommendation Re Allocation Of IPP Class Counsel Attorneys' Fees
(Dkt 4971, 4976)                                                                  MDL 3:07-md-1917 JT

1  //

2  //

3  //

4  Dated: November 11, 2016                    Respectfully submitted,

By: /s/ *Theresa D. Moore*
    Theresa D. Moore

Theresa D. Moore (99978)
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 434-8900
Facsimile:  (415) 434-9200
*tmooreo@aliotolaw.com*

*Counsel for Indirect-Purchaser Plaintiffs*

13

Objection To Special Master's Report And Recommendation Re Allocation Of IPP Class Counsel Attorneys' Fees
(Dkt 4971, 4976)                                                                MDL 3:07-md-1917 JT