# EXHIBIT A

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                SAN FRANCISCO DIVISION

4    _____

5    IN RE: CATHODE RAY TUBE (CRT))

     ANTITRUST LITIGATION          )

6                                  )

                                   )

7                                  )

                                   ) Case No. 3:07-cv-5944

8                                  )

     _____)

9

10

11        HEARING BEFORE SPECIAL MASTER HON. MARVIN QUINN

12                San Francisco, California

13                Wednesday, October 5, 2016

14

15

16

17

18

19

20

21   Reported by:

     JOANNA BROADWELL

22   CSR No. 10959

23   Job No. 2459187

24

25   PAGES 1 - 45

                                          Page 1

```
 1        UNITED STATES DISTRICT COURT
 2        NORTHERN DISTRICT OF CALIFORNIA
 3           SAN FRANCISCO DIVISION
 4   _____
 5   IN RE: CATHODE RAY TUBE (CRT))
     ANTITRUST LITIGATION       )
 6                              )
                                )
 7                              )
                                ) Case No. 3:07-cv-5944
 8                              )
     _____)
 9
10
11
12        PROCEEDINGS before SPECIAL MASTER HON. MARVIN
13   QUINN taken at Two Embarcadero Center, Ste. 1500, San
14   Francisco, California, beginning at 1:29 p.m. and ending
15   at 2:24 p.m. on Wednesday, October 5, 2016,
16   before JOANNA BROADWELL, Certified Shorthand
17   Reporter No. 10959.
18
19
20
21
22
23
24
25
                                                 Page 2
```

```
 1   APPEARANCES:
 2
 3   For Indirect Purchaser Plaintiffs:
 4
 5   Trump, Alioto, Trump & Prescott
 6   By:   Mario Alioto
 7        Lauren Capurro
 8   Attorneys at Law
 9   2280 Union Street
10   San Francisco, CA 94123
11   (415) 563-7200
12   E-MAIL: jmalioto@aliotolaw.com
13   E-MAIL: laurenrussell@tatp.com
14
15   Bramson, Plutzik, Mahler & Birkhaeuser
16   By:  Daniel E. Birkhaeuser
17        Attorney at Law (By telephone)
18   2125 Oak Grove Road, Suite 120
19   Walnut Creek, CA 94598
20   Tel (925) 945-0200
21   E-MAIL: dbirkhaeuser@bramsonplutzik.com
22
23
24
25
                                                 Page 3
```

```
 1   (Continued Appearances - Page 2)
 2
 3
 4   LAW OFFICES OF FRANCIS O. SCARPULLA
 5   By:  Francis O. Scarpulla
 6        Patrick B. Clayton
 7        Attorneys at Law
 8   456 Montgomery Street, 17th Floor
 9   San Francisco, CA  94104
10   (415) 693-0700
11   E-MAIL: fos@scarpullalaw.com
12   E-MAIL: pbc@scarpullalaw.com
13
14
15   Law Offices of Theresa D. Moore
16   By:  Theresa D. Moore
17        Attorney at Law
18   One Sansome Street, 35th Floor
19   San Francisco, CA  94104
20   (415) 434-8900
21   E-MAIL: tmoore@aliotolaw.com
22
23
24
25
                                                 Page 4
```

```
 1   (Continued Appearances - Page 3)
 2
 3   Straus & Boies, LLP
 4   By:  Tim Battin
 5        Attorney at Law (By telephone)
 6   4041 University Drive, Fifth Floor
 7   Fairfax, VA  22030
 8   (703) 764-8700
 9   E-MAIL: tbattin@straus-boies.com
10
11
12   Law Office of Brian Barry
13   By:  Jeffrey C. Shea
14        Attorney at Law (By telephone)
15   1801 Avenue of the Stars, No. 307
16   Los Angeles, CA  90067
17   (310)788-0831
18
19
20
21
22
23
24
25
                                                 Page 5
```

2 (Pages 2 - 5)

1  (Continued Appearances - Page 4)
2
3
4  Law Office of Joseph M. Patane
5  By:  Joseph M. Patane
6      Attorney at Law (By telephone)
7      2280 Union Street
8   San Francisco, CA 94123
9  (415)563-7200
10 E-MAIL: jpatane@tatp.com
11
12 Also Present:  Marlo Cohen (By telephone).
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 6

1  San Francisco, California, Wednesday, October 5, 2016
2              1:29 p.m.
3          TRANSCRIPT OF PROCEEDINGS
4      SPECIAL MASTER QUINN:  Good afternoon, everybody.
5  We'll start the hearing.  Will the counsel present here
6  identify themselves for the record, please?
7      MR. ALIOTO:  Mario Alioto and Lauren Russell,
8  lead for the indirect purchaser plaintiffs.
9      MS. MOORE:  Theresa Moore.
10     MS. SCARPULLA:  Francis Scarpulla.
11     MR. CLAYTON:  Patrick Clayton with the Law
12 Offices of Francis O. Scarpulla.
13     MR. SHEA:  Jeff Shea.
14     SPECIAL MASTER QUINN:  Okay.
15     MR. BATTIN:  Tim Battin of Straus & Boies.
16     SPECIAL MASTER QUINN:  Okay.  On the phone we've
17 heard Mr. Battin and Mr. Shea.  Anyone else on the
18 phone, please identify themselves.
19     MR. PATANE:  Yes, Joseph Patane.
20     MS. COHEN:  Marlo Cohen.
21     SPECIAL MASTER QUINN:  Anyone else?
22     MR. BIRKHAEUSER:  Dan Birkhaeuser from Bramson,
23 Plutzik, Mahler & Birkhaeuser.
24     SPECIAL MASTER QUINN:  It's the usual suspects.
25     Go ahead.  So we have Mr. Battin, Mr. Shea,

Page 7

1  Mr. Patane, Ms. Cohen and Mr. Birkhaeuser.  Anyone else
2  on the phone?  Okay.  Good.
3      So this hearing concerns the objection of Theresa
4  Moore.  Ms. Moore, I've read all of your papers.  I've
5  read Mr. Alioto's omnibus response that -- the portion
6  the deals with your objection.  So if you'd like to add
7  anything to that, this is your chance.
8      MS. MOORE:  Okay.  There were a few things I
9  would like to discuss, if that's okay.  And I'm a little
10 disjointed today because I have a close family member in
11 the ICU.  It's not for public knowledge and I apologize
12 for using that.  I'm not using it as an excuse, but if
13 I'm a little disjointed, just give me a little leeway.
14 That's all I'm asking.  I made some notes but I see
15 they're a little disjointed.
16     SPECIAL MASTER QUINN:  You have plenty of slack.
17 Go ahead.
18     MS. MOORE:  I think the issue here is whether
19 counsel who's of record has the right to review
20 documents during the course of the litigation when she
21 feels it is necessary and right.  In this case, my
22 Lodestar is small.  I did my best to be as efficient and
23 reduced hours as possible.  I'm sure Ms. Capurro is
24 going to put me through the ringer like she did the
25 other lawyers who came before you, but I could just say

Page 8

1  that I did my best to do what I think was necessary for
2  my clients and for the class.  And I don't think I ever
3  worked at odds with lead counsel.  I have no problem
4  with lead counsel.  And I put myself at great risk
5  trying to use my knowledge to gain further funds for the
6  class.  And so I don't think it's fair now to move the
7  goal posts and suddenly say you have absolutely no right
8  to look at any documents during the course of this --
9  during the course of this case.
10         Counsel says that my work was completely
11 unimportant, and they told me not to read anything
12 unless I'm specifically assigned.  So for nine years I
13 guess I apparently was disobeying, although I have
14 looked and have not found anything that told me to do
15 that and I thought maybe I didn't remember.  I have
16 looked.  I can't find anything and I have no
17 recollection.
18         They knew I was counsel.  I've had multiple
19 conversations with Mario.  We've known each other for
20 years.  We've talked about the case over the years.  And
21 I just don't think it's fair to suddenly say well, I can
22 only have a portion of the fees for 2000 and 2008.  My
23 work for this nine years was targeted.  It was
24 efficient.  And the work that I did in this case, I
25 gained knowledge which subsequently led to a $14 million

Page 9

3 (Pages 6 - 9)

1 return of fees of value to the class.

2     The contribution an attorney makes by providing

3 such context in which the District Court can evaluate

4 the fairness of fees is compensable.

5     SPECIAL MASTER QUINN:  I just want to be sure I

6 understand the 14 million issue.  I think what you say

7 is that your objection to the settlement raised the

8 issue or compared the success in the LCD case to the

9 success in this case, arguing that this case, the result

10 was less successful than in LCD, and Judge Tigar picked

11 up on that and reduced the fees by $14 million from the

12 amount I had recommended.  Is that what you're referring

13 to?

14     MS. MOORE:  That's correct, in a nutshell.  There

15 is more to it than that.  But also, it's a requirement.

16 There's Kerr factors.  It's a requirement.

17     SPECIAL MASTER QUINN:  What's a requirement?

18     MS. MOORE:  To look at all of these factors and

19 to look at the contribution or look at this value of

20 similar cases which, of course, this is the case that

21 Counsel has said all the time decides this settlement as

22 a percentage of the total potential recovery and the

23 award in comparable cases is a Kerr requirement,

24 K-E-R-R.  It's the case.  You need to do that.  So the

25 Court needed to have that information.  There was a

Page 10

1 chance that it could be reversed on appeal if the Court

2 hadn't evaluated all of the proper information.

3     SPECIAL MASTER QUINN:  Okay.  I really don't --

4 it's not my purpose today to argue with you at all.

5     MS. MOORE:  I don't mean to argue.

6     SPECIAL MASTER QUINN:  No, no, and you're not.

7 You're doing fine.  You can argue.  I don't want to be

8 arguing.

9     MS. MOORE:  Okay.

10     SPECIAL MASTER QUINN:  What you're saying you

11 drew to the Court's attention was the fact that the LCD

12 result compared to the amount that had been claimed in

13 LCD was arithmetically better than the one here.  I

14 mean, didn't the Court know that?  Wasn't that a matter

15 of public record?  Didn't I know that?

16     MS. MOORE:  No.  Well, you --

17     SPECIAL MASTER QUINN:  What is it that you added

18 to the mix?

19     MS. MOORE:  Nowhere was it stated that the

20 damages in CRT was $2.7 million.

21     SPECIAL MASTER QUINN:  No one knew what the

22 damages were in LCD?

23     MS. MOORE:  It wasn't stated in the motion for

24 final approval, and it wasn't stated in the motion for

25 attorneys' fees.  A lot of the prior documentation is

Page 11

1 sealed.  And it wasn't written in these documents which

2 were presented to Judge Tigar.  It wasn't argued to

3 Judge Tigar.  The only place I could find it and that I

4 recall ever seeing it was where I wrote it in there to

5 tell him.

6     SPECIAL MASTER QUINN:  Okay.

7     MS. MOORE:  So first of all, with regards to my

8 Lodestar, that's something to say -- one, saying my work

9 was and is completely unimportant and not valuable at

10 all and not assigned and is therefore not compensable is

11 that's an example of how it actually is using my

12 knowledge that I gained through the case.  And the

13 knowledge that I did, in fact, impart to the Court did,

14 in fact, lead to a better result for the class.  So lead

15 counsel and all IPP counsel have stated and consistently

16 argued to include post-settlement work, and it's the

17 work of the entire case that helps to increase their

18 multiplier.  And I'm in fact, doing that here according

19 to the Ninth Circuit, and all of the cases that were

20 cited in the motion, the Ninth Circuit has held that

21 it's clear error for a district court to deny counsel a

22 fee where their efforts increased the settlement fund.

23 That's Rodriguez and other cases.

24     Now, there is also with regards to the two

25 methods of allocation.

Page 12

1     SPECIAL MASTER QUINN:  That train has left the

2 station.

3     MS. MOORE:  I understand that.  I just want to

4 say that I understand you're not an advocate of the

5 percentage method.  And -- but I'm -- and that's not

6 what you prefer and that's probably not what you're

7 looking to use and it's not what you've used in the

8 past.

9     SPECIAL MASTER QUINN:  Actually -- I mean,

10 actually, since we're talking about my preferences, I

11 don't think that's accurate.  I mean, in both LCD and

12 this case, I used a percentage with a Lodestar check.

13     MS. MOORE:  Okay.

14     SPECIAL MASTER QUINN:  And so -- and I think that

15 is what Judge Illston and Judge Tigar picked up on.  And

16 I didn't invent it; it's a Ninth Circuit test and that's

17 what I used.  So I don't think it's quite accurate to

18 say I'm not a fan of the percentage tests.

19     MS. MOORE:  Okay.  I'm referring to allocation.

20     SPECIAL MASTER QUINN:  Okay.

21     MS. MOORE:  Okay.  So I just wanted to let you

22 know that I do still think that percentage is more fair

23 to all the lawyers and the class.

24     SPECIAL MASTER QUINN:  So tell me, if you're

25 talking about percentage as applied to allocation, give

Page 13

4 (Pages 10 - 13)

1 me an example of how you think it should work, because I
2 wasn't clear from your papers.
3       MS. MOORE:  Okay.  Well, for instance, the lead
4 counsel has set out his tiers as he thinks are the most
5 important players and what they each contributed in
6 their different ways to the outcome of the case.  So of
7 course you could still get that same tiers and same
8 suggestion from him, but instead of going through the
9 Lodestar analysis, which is sometimes not helpful in
10 general, you could use a percentage analysis.
11       Give lead counsel "X" percentage.  He thinks the
12 next most important person is this person.  Give them
13 "Y" percentage.  Give the next one this.  And go down
14 and you could do it where everybody would receive a fair
15 percentage.  I don't mean to totally debate the Lodestar
16 versus percentage, but I think that with regards to the
17 Lodestar multipliers, sometimes it just leads to skewed
18 results.
19       And I think the Lodestars herein, they were
20 drastically cut beforehand.  Multiple attorneys were
21 unhappy with the way that they were cut.  And the
22 Lodestar figure that was put before the Court was a good
23 efficient figure.  In reality I'm not sure if -- I know
24 it wasn't actually true.  A lot of people complained
25 about lots and lots of money being taken off of their

Page 14

1 Lodestars.  So it's in -- so it's not really -- it's an
2 artificial Lodestar.  So these artificial Lodestars are
3 drastically cut, and then they're being irregularly
4 multiplied so it doesn't come out right.  And for me,
5 who has one of the smaller Lodestars in the entire case,
6 it is punitive to me and especially for me in particular
7 where I quantifiably benefited the class.  It has a very
8 harsh effect.
9       SPECIAL MASTER QUINN:  So if we didn't use
10 Lodestar and we used percentage, do you have a
11 percentage in mind of 158 million that you should
12 receive?
13       MS. MOORE:  Well, I can tell you what the case
14 law says.  With regards to my Lodestar, I think as I
15 said in my paper, I think as you said in your LCD, at
16 least 1.3 would compensate for the delay.  1.5 would
17 compensate for the delay in receiving the money.
18       SPECIAL MASTER QUINN:  1.5 multiplier?
19       MS. MOORE:  Multiplier.  You're asking for
20 percentage.  Okay.  All right.  I was going to say -- to
21 finish, I'll give you both.  How about that?
22       SPECIAL MASTER QUINN:  Sure.
23       MS. MOORE:  So if it were a Lodestar, the
24 post-settlement work, and also if everybody considers
25 the post settlement work in determining their

Page 15

1 multiplier, every paper filed has talked about how they
2 continue to work and they're doing this and they're
3 doing that and they deserve a bigger multiplier.
4       SPECIAL MASTER QUINN:  And your post-settlement
5 work consisted of filing an objection to the settlement?
6       MS. MOORE:  It consisted of giving not the
7 objection itself, but it was contained in there.  It was
8 the information to the Court to properly evaluate it so
9 that it would not be overturned on appeal and which
10 returned to the $14 million to the class.
11       So with regards to the percentage method, the
12 cases -- and I can give you a couple of cites.  A couple
13 I believe are cited in Counsel's main papers -- but they
14 talk about with regards to this one -- the time fee
15 award of 20 percent of a $10 million increase.  This one
16 had 30 percent of an $8 million increase.  This one had
17 9.9 percent of a seven-and-a-half-million-dollar
18 increase.
19       So if it were a percentage, with regards to the
20 $14 million increase, I would request at least 10 to 15,
21 which is on the smaller side of the increase, which is
22 just a tiny, tiny fraction of the entire award.  If it
23 were a Lodestar, Your Honor, I worked 255 hours which,
24 again, during that post-settlement work, which is again,
25 a tiny, tiny amount.  There is another lawyer who said

Page 16

1 he worked 450 hours.  I didn't have to do that because I
2 also was aware of the case and the facts, and I have a
3 very small Lodestar for post settlement.
4       But I think that with that included, one and a
5 half would compensate for the delay.  Two and a half to
6 three would compensate for the drastically reduced hours
7 and hourly rate.  And then you would have to add on the
8 $14 million benefit and consider what you would consider
9 to be for that, and I think in that, if you want to line
10 it up with the cases here we're giving between 10 and
11 30 percent of the increased benefit, I think it would
12 add up to be about a three and a half multiplier.
13       SPECIAL MASTER QUINN:  In your papers, I think
14 you suggested that you should receive between 2.5 and 3.
15 Are you suggesting something different now or should I
16 stick with the 2.5 to 3?
17       MS. MOORE:  I think that was referring to the
18 Lodestar, if there was a sentence that didn't make it in
19 there with regards to the $14 million benefit to the
20 class.  One, it is proof that my work was valuable.  And
21 to follow the case law, you do need to be compensated
22 for that as well.  So the -- so Mr. Alioto was directly
23 responsible for the benefit received by the class.  And
24 I think that he should be paid handsomely for what he
25 did.  He deserves to be well compensated for his

Page 17

5 (Pages 14 - 17)

1 $576 million that he got for the class. But he's also
2 responsible for the three factors which made the Court
3 reduce this allocation. So I think you just need to
4 take that into consideration as well.
5     SPECIAL MASTER QUINN: So if the Court were to
6 give you 15 percent of the 14 million, which I -- if I
7 understood you correctly, you were asking for 10 to
8 15 percent of the $14 million, at 15 percent of the
9 14 million you would receive an hourly rate of $8400 an
10 hour.
11     MS. MOORE: Well, I don't normally think of it
12 like that, your Honor.
13     SPECIAL MASTER QUINN: Isn't that something the
14 Court at least has to take into consideration?
15     MS. MOORE: Well, I think it is skewed. I think
16 that's where the Court has to look at a percentage of
17 what happened.
18     SPECIAL MASTER QUINN: Okay. Good.
19     MS. MOORE: And in this case, Your Honor, it was
20 very difficult. If you look at the necessary factors,
21 I -- by just putting that information and giving that to
22 the Court, I mean I have been vilified. I've been
23 accused of nefarious motives. I've been retaliated
24 against financially. It's far from certain that I would
25 prevail. I put my reputation on the line. I put my
*Page 18*

1 relationship with other Plaintiff's counsel on the line.
2 I put my career at risk. I've been a lawyer for 35
3 years, Your Honor. I do have good knowledge. I have
4 good knowledge of the law. I have broad experience and
5 knowledge and I used all that. But there's no question
6 that it was a very difficult decision to go ahead and do
7 that.
8     SPECIAL MASTER QUINN: "Do that," being to file a
9 objection to the settlement?
10     MS. MOORE: And to take on the representation of
11 clients.
12     SPECIAL MASTER QUINN: Okay. Can we talk about
13 clients? Mr. Alioto says that they have no record of
14 your representing any clients. The four clients whom
15 you say you represented, they say they've never seen any
16 retention agreements or any evidence of an
17 attorney-client relationship. Can you clear that up?
18     MS. MOORE: It's in the docket, Your Honor.
19 There's a complaint on file. There is a notice of
20 appearance on file. The hourly work that was done here
21 is when I'm a counsel of the Alioto law firm. There was
22 other lawyers who asked the firm to participate, and the
23 work that I have for this hourly work is work I was
24 doing of counsel of the firm, and I'm the only one in
25 the firm who put in hours.
*Page 19*

1     SPECIAL MASTER QUINN: If I remember correctly,
2 when you filed the objection to this settlement, you
3 were doing so on behalf of some university or something?
4     MS. MOORE: That's correct.
5     SPECIAL MASTER QUINN: I forget.
6     MS. MOORE: There is -- Rockhurst University, who
7 is a Jesuit university who is a consortium of Jesuit
8 universities around the United States, and this is one
9 of the Jesuit universities, and it's in Missouri.
10     SPECIAL MASTER QUINN: Was that one of the
11 clients you represented during the course of the case,
12 or was that a --
13     MS. MOORE: You mean are they a named client
14 class rep? No.
15     SPECIAL MASTER QUINN: Okay.
16     MS. MOORE: So.
17     SPECIAL MASTER QUINN: So they were just an
18 unnamed member of the class?
19     MS. MOORE: That's correct.
20     SPECIAL MASTER QUINN: Okay. Am I right that --
21 just so it this right, your clients whom you represented
22 were not named class reps, they were unnamed members of
23 the class?
24     MS. MOORE: That's correct, your Honor.
25     SPECIAL MASTER QUINN: Okay.
*Page 20*

1     MS. MOORE: Although I never received anything
2 saying do you have any class reps or something, because
3 these people would have been great class reps. But I
4 just didn't receive any communication.
5     SPECIAL MASTER QUINN: I understand. I'm not at
6 all critical. I'm just trying to get the facts right.
7     MS. MOORE: Right. That's correct. So now lead
8 counsel is requesting $1,130,000 for every
9 $14 million that's gone to the class.
10     SPECIAL MASTER QUINN: Wait. Help me there.
11     MS. MOORE: Okay. So there's -- $576 million is
12 the amount of funds that went to the class, divided by
13 14, that's 41. So there's 41 $14 millions in the class.
14 So by the fees, he's -- for every 14 million of the fees
15 he's got, he's asking for $1.130 million.
16     SPECIAL MASTER QUINN: You lost me in the
17 arithmetic. I'm sorry.
18     MS. MOORE: For every $14 million that went to
19 the class, he's seeking a million $130,000 in fees.
20 Right now he's seeking that amount.
21     SPECIAL MASTER QUINN: You mean he is for his
22 firm? Is that what you're saying?
23     MS. MOORE: Yes.
24     SPECIAL MASTER QUINN: Okay.
25     MS. MOORE: So just as a benchmark for you with
*Page 21*

6 (Pages 18 - 21)

Page 22

1 regards to the cases, anyway, Your Honor, even working
2 on the case for nine years, it was such a small amount
3 but I am in the docket. I'm all over the docket
4 representing clients. There's a complaint on file.
5 There's a notice of appearance on file. Other counsel
6 have asked us to come in. I think that's just a
7 nonstarter when you're working with a firm and lots of
8 clients. It's very common working with different
9 clients, and one of the attorneys might be the one in
10 charge of communicating with the client that others are
11 representing.
12      SPECIAL MASTER QUINN: Okay.
13      MS. MOORE: So, Your Honor, I think that -- I
14 thought I did everything that they asked me to do. I
15 have worked on these cases a lot. Everything they asked
16 me to do I thought I did. I was never told what was
17 specifically wrong or what I should have done this way
18 or why this or why that. They just said, "You didn't do
19 what I said" and deleted it.
20      They didn't tell me exactly specifically what it
21 was I didn't do. There was no real communication.
22 Nobody reached out to me. Nobody talked to me. Nobody
23 said, "No, sorry, you misunderstood me." Nobody did any
24 of that. They just slashed it and kept going. Now, I
25 understand -- I know how sometimes it can be shocking

Page 23

1 getting these time sheets. Actually, we were all really
2 shocked when we got Mario's in LCD. I know Lauren
3 worked really hard on the document review, and I'm not
4 complaining or saying anything along that, but when you
5 look at just his sheet, the only time we ever saw him
6 was when he had a plaintiff's counsel meeting.
7      But we never had a problem with that. We just
8 gave him what he was due. I don't think there was an
9 issue. But it happens when you're lead counsel and
10 there's people who are going alone. They knew I was in
11 the case. I talked to them from time to time. I would
12 see them, talk, discuss. Other lawyers were there. So
13 I don't think that's necessarily a valid complaint.
14      SPECIAL MASTER QUINN: Okay.
15      MS. MOORE: Thank you, Your Honor.
16      SPECIAL MASTER QUINN: Okay.
17      MR. ALIOTO: Excuse me. I wasn't checking my
18 phone here, I was just doing some calculations.
19      SPECIAL MASTER QUINN: So was I a minute ago.
20      MR. ALIOTO: Yes, Special Master. And first of
21 all, Ms. Moore, thank you for the commendation. That's
22 one point I don't think I've made in these hearings
23 about recovering the money. And I'd like to address
24 that later today. But with that thought, I am going to
25 turn it over to Ms. Capurro to respond. Thank you.

Page 24

1      MS. CAPURRO: Thank you, Your Honor. As I've
2 mentioned before, I worked on this case full time for
3 nine years. And I never had any contact with Theresa
4 Moore. I believe she may have turned up at a hearing
5 every now and then, but that was the only contact I ever
6 had with her. And Mr. Alioto informs me that he had
7 limited contact with her as well. So when we received
8 her time records, her fee declaration and her time
9 records at the end of July of last year and she had over
10 $200,000 in Lodestar, we were surprised.
11      SPECIAL MASTER QUINN: So let me cut through
12 this. I'm sorry to interrupt, but there's really no
13 dispute I think about what Ms. Moore did, and there's no
14 dispute that lead counsel did not ask her to do any
15 more. And I don't think there is any dispute that
16 occasionally she picked up the phone or sent an e-mail
17 making some unsolicited suggestions. And so there's
18 really no dispute about that. What she did do really
19 was keep up on the case, read the ECF filings two hours
20 a month basically for seven or eight years.
21      Assuming for a moment that she did have clients
22 in the case, you know, isn't it legitimate to be paid
23 for some of the time of reading ECF filings? Isn't that
24 something that a lawyer has an obligation to do? And
25 I've raised my own skepticism about seeing a lot of

Page 25

1 hours for ECF billings with respect to other lawyers.
2 And I have, you know, recommended that their Lodestar be
3 cut because of that. But cut to zero after 2008? Is
4 that fair?
5      MS. CAPURRO: Well, I don't think we can assume
6 she had a client, I'm afraid. We have no record of
7 Ms. Moore being -- representing any clients. And the
8 documents that she cites to in her reply brief, she's
9 not on those either. She's not on the complaint that
10 she cites to. So the references in her reply brief, she
11 refers to Docket No. 121 and Docket No. 189. 121 is a
12 notice of related case, and that's to the case Pierce v.
13 Beijing Matsushita Color CRT Company. And I have the
14 complaint here. She's not on the complaint. Her firm
15 is on the complaint but she is not on the complaint.
16      SPECIAL MASTER QUINN: That is the Alioto firm?
17      MS. CAPURRO: The Alioto firm. But she claims to
18 have been doing this work separately. The notice of
19 appearance that she cites to is Joseph Alioto. It's not
20 Theresa Moore. So we never knew that Theresa Moore was
21 part of this case. All of the plaintiffs that she
22 claims to represent, I have spoken to Dan Karon, who is
23 counsel of record for those plaintiffs. And he -- and
24 then there's -- he has confirmed that Ms. Moore has
25 never had any contact with any of those plaintiffs. So

7 (Pages 22 - 25)

1 you have a situation where Ms. Moore -- there's other
2 lawyers in the case who were the contacts for these
3 plaintiffs and who were tasked with keeping those
4 plaintiffs informed about the case.
5      Ms. Moore did not have that responsibility. She
6 may, you know, through her association with Mr. Alioto
7 have been on a complaint somewhere. She hasn't cited to
8 that complaint yet. But she certainly -- you know, she
9 tried to justify in her papers her read and review of
10 the record because she had an ethical obligation to her
11 clients and she had to keep them updated.
12      There are no entries in her time records
13 indicating that she communicated with any of these class
14 representatives. So because you have Dan Karon and
15 other lawyers as the contacts for these plaintiffs,
16 anything Theresa Moore was doing in reviewing the ECF
17 filings is completely duplicative and unnecessary. And
18 we feel like the case law is pretty clear and the court
19 order in this case was pretty clear that duplicate of
20 unnecessary time like that is not compensable.
21      And frankly, whenever you have people in the
22 case, firms in the case who actually represented named
23 plaintiffs and went to their depositions, represented
24 them at their depositions, produced their discovery and
25 genuinely were the contacts for those plaintiffs, and

Page 26

1 they have lower Lodestars than Ms. Moore does. And you
2 know, we did a lot of read and review time by those
3 attorneys because we recognize that where you have a
4 client, you do have an ethical obligation to keep up to
5 date on the case. But Ms. Moore did not have a client,
6 so she didn't have that ethical obligation.
7      So I hope that answers your question on what our
8 position is. We allowed time for her early in the case
9 as well because that was prior to Mr. Alioto's
10 appointment. And, you know, there's a lot of read and
11 review time in there too. There's not really much
12 evidence of any substantive work. It's reading and
13 reviewing the record. So she's already getting -- and I
14 don't know what the amount is, but $70,000 or whatever
15 it is for really work that didn't benefit anybody. It
16 didn't lead to the result that we have here which is
17 what the case law requires.
18      SPECIAL MASTER QUINN: What about the 14 million?
19      MS. CAPURRO: Okay. So the work that Ms. Moore
20 did post-settlement, that work was as an objector to the
21 settlements and the case law is pretty clear that
22 objectors -- you know, if Ms. Moore believes she should
23 get fees for that, she needs to move separately for
24 fees. She's got to make a motion under Rule 54 and ask
25 the Court for an award of fees from the common fund.

Page 27

1 And the case law is also clear that unless there's
2 evidence of egregious conduct by class counsel, which I
3 don't think anybody can claim there is here, that that
4 money -- if an award of fees is due to an objector
5 because they did benefit the fund, that that money
6 should come from the common fund.
7      As an aside, we will -- if Ms. Moore makes such a
8 motion, we will be opposing it because we don't believe
9 she benefited the class. But this is not the correct
10 forum to deal with this issue of whether Ms. Moore is
11 responsible for that $14 million going back to the
12 class.
13      There's also no evidence in Ms. Moore's time
14 records that she was reviewing anything related to the
15 damages and that that's where she gleaned that knowledge
16 from. It's also her position in the argument she made
17 in her objections about LCD being -- or CRT being a
18 better case than LCD, and you know, when she compared
19 the damages and everything, that that's inconsistent
20 with statements that she made to us months -- two months
21 before she filed her objections.
22      In an e-mail dated July 29th, 2015, she stated,
23 "Thank you very much. Congratulations and thank you for
24 all your hard work over this extended period of time.
25 Great job." Her time records also show that she

Page 28

1 reviewed the preliminary approval papers which included
2 a reference to -- it included information about the
3 damages here, the single damages that Dr. Netz estimated
4 and the settlements here so the Court could compare
5 those. It included a description of the plan of
6 distribution and the settlement.
7      It was clear that from those preliminary approval
8 papers that Massachusetts and Missouri did not stand to
9 recover anything. Ms. Moore was in contact with us
10 between the filing of the preliminary approval papers in
11 May and June 2015 and the filing of her objection, and
12 at no time did she ever raise to us any of her concerns
13 about the settlement.
14      Now, if Ms. Moore had been truly working in the
15 interests of the class and had no axe to grind with
16 Mr. Alioto or our firm, why did she not raise these
17 concerns prior to the formal settlement approval process
18 going forward and give us an opportunity to remedy these
19 issues that she raised? The answer, I think, is that
20 she didn't decide to object until after we cut her time,
21 and that this was all done in, you know, an act of
22 revenge against us afterwards.
23      Her arguments that she never received any
24 communications from us telling her not to read and
25 review the docket -- and like I said, we didn't know she

Page 29

8 (Pages 26 - 29)

1 was involved in the case. And it's fairly standard, as
2 Your Honor said in your R&R and LCD that most firms
3 charge nothing for read and review time.
4     Okay. Have I responded fulsomely to your
5 question about the 14 million?
6     SPECIAL MASTER QUINN: Fulsomely.
7     MS. CAPURRO: I'd like to just make a couple of
8 other very quick points. Ms. Moore claims that she has
9 removed the time that we asked her to remove. I sent
10 her extremely detailed e-mails explaining, as I did to
11 anybody else whose time was being audited, that we were
12 not including the time spent on lead counsel motions.
13 We weren't including read and review -- unassigned read
14 and review time that wasn't related to informing a
15 client and all of the various other things that I've
16 outlined before.
17     And at the end of my e-mail, "Please call us if
18 you want to discuss." And I sent several e-mails like
19 that. Ms. Moore never took us up on the offer to
20 discuss. And she's claimed that after my initial e-mail
21 to her, she went back through and she removed all of the
22 time that we told her was objectionable. Well, that
23 unfortunately is not true.
24     SPECIAL MASTER QUINN: I've looked at all of her
25 three declarations. I think I see what you're talking

1 about.
2     MS. CAPURRO: Okay. I don't think -- I think you
3 only have copies of her original time records. Is
4 that -- I think that's right. She submitted a revised
5 version of her time records to us that I do not believe
6 you have a copy of.
7     MS. MOORE: All three were in -- all three of my
8 declarations are in evidence.
9     MS. CAPURRO: But I don't believe your revised
10 time records are in there.
11     SPECIAL MASTER QUINN: Go ahead.
12     MS. CAPURRO: I just want to hand these to you.
13 I've already given copies to Ms. Moore.
14     SPECIAL MASTER QUINN: Oh, these are time
15 records.
16     MS. CAPURRO: Time records. They're not
17 declarations. I'm just going to do this very briefly.
18 And the point of what I'm about to do here is, as we
19 mentioned this in our papers. That in the auditing
20 process, we -- Ms. Moore just frankly wasn't -- she
21 wasn't very honest with what she was doing.
22     MS. MOORE: I take --
23     SPECIAL MASTER QUINN: Well, this is difficult.
24     MS. MOORE: I did what I needed to do, and I did
25 exactly what I thought you were asking me to do, and I

1 sent it back to you. And I reduced my Lodestar by
2 $40,000.
3     SPECIAL MASTER QUINN: Please, let's not have
4 everybody talk at once.
5     Go ahead, Ms. Capurro.
6     MS. CAPURRO: It was my perception. That was my
7 perception and it influenced what happened. So I'd like
8 to direct Your Honor's attention to the time entry dated
9 3-5-08. And if you look at it in the original and the
10 revised. And as I said in our papers, rather than
11 removing the actual time spent on categories of work
12 that we were not -- that were not compensable such as
13 the lead counsel motions. She would change the
14 description in her entry but keep the time the same.
15     So in 3-5-08, in the original, it says,
16 "Multistate IPPs motion filed by DGH." That's her
17 review of that multi-statement motion. And she changed
18 the entry to "Conference co-counsel DGH RE: DOJ motion."
19 Same time entry. That multistate IPP motion is a lead
20 counsel motion. It's DCF No. 114. So she would delete
21 the entry to the lead counsel motion but keep the time
22 the same. All of the highlighted entries here on this
23 little excerpt that I've provided are all -- it's all
24 the same. Deleted entries to references to the lead
25 counsel motions. Keep the time either the same or very

1 close to what it was originally. If you look at
2 3-18-08 -- actually, that's not the best example. Well,
3 you get the picture. I don't need to go on anymore.
4     In short, we just don't feel that it's fair to
5 the other counsel in the case for someone who had no
6 work assignments, no client, didn't pay any assessments
7 to be paid substantial amounts of money from the fund
8 whenever there's no demonstration that that work
9 contributed to the result achieved.
10     SPECIAL MASTER QUINN: Okay. So Ms. Moore, I
11 have one question here. I think it's one situation if
12 you had real clients whom you represented and had an
13 attorney-client relationship with and had an obligation
14 to. It's another situation if you didn't. And I'm
15 hearing conflicting stories on what should be a pretty
16 simple factual matter. You were either representing
17 clients or you were not.
18     MS. MOORE: Okay. So I was, and I was working --
19     SPECIAL MASTER QUINN: Who?
20     MS. MOORE: I was working on behalf of the Alioto
21 law firm. So I was doing the work on behalf of Alioto
22 law firm. Okay? That's what my declarations say for
23 this hourly work. This is what I was doing and on
24 behalf of them. I was watching out for the case. I was
25 watching out for everything. There's a complaint on

1 file. It was Pierce. Mark Pierce, I believe is his
2 name. I think there might be some others, too. But he
3 is named -- the complaint was filed on behalf of the
4 firm in his name.
5     SPECIAL MASTER QUINN: I take it the Joseph
6 Alioto firm did not submit any --
7     MS. MOORE: They had hours too and they didn't
8 submit it. They said just go ahead and put your hours
9 in. I watched the case on behalf of the firm.
10     SPECIAL MASTER QUINN: You are claiming for time
11 you spent as a member of the Alioto firm?
12     MS. MOORE: Yes. I was a counsel. I always have
13 been.
14     SPECIAL MASTER QUINN: Okay. When did you part
15 ways with the Joseph Alioto firm?
16     MS. MOORE: Your Honor, I always have acted of
17 counsel of them, and I also do some cases on the side on
18 my own.
19     SPECIAL MASTER QUINN: I understand. Okay.
20     MS. MOORE: Yes, Your Honor, they were part of
21 the case. There was motions filed. They filed motions.
22 There are other counsel who asked us to come in and be
23 co-counsel with their clients, and we were. Other
24 lawyers, Dan Karon one of them he actually filed --
25 asked us to join, asked us to be co-counsel with all of
                                                    Page 34

1 their motions that maybe were not as good or could have
2 been done better or things that we have realized that
3 could have gone this way instead of that way. And I
4 would call and discuss things of that.
5     So to the damage information, that's from being a
6 counsel on the case. I knew that from being counsel on
7 the case. I knew that from talking with counsel on the
8 case. A lot of the entries are filed under seal, so the
9 number is not really out there in public. It was in one
10 footnote from one document filed a couple of years ago,
11 and that is the only place that I recall ever seeing
12 that number. But I knew what it was. Nothing is --
13     SPECIAL MASTER QUINN: The number being the
14 damages in --
15     MS. MOORE: The $2.78 billion damages in CRT.
16     SPECIAL MASTER QUINN: In LCD.
17     MS. MOORE: In CRT. 2.78 billion in CRT.
18     SPECIAL MASTER QUINN: Oh, as being the damages
19 that were being claimed by that --
20     MS. MOORE: Just the damages that were found by
21 the expert, Netz. A lot of this stuff is under seal and
22 is still under seal. So I know it from being a counsel
23 in the case. And really I only saw it in one footnote
24 from a long time ago. Nobody told Judge Tigar. And
25 none of the papers that were presented to Judge Tigar
                                                    Page 36

1 his counsel, multiple -- with all of his clients --
2 multiple clients. And we came in the law firm as
3 co-counsel with all of those clients. So we did, Your
4 Honor, and we worked.
5     Now, it would be duplication of effort if you
6 went and showed up at their depositions and did things
7 of that nature. So, no, I didn't. And in all respect,
8 Your Honor, this is -- in a regular case it's very
9 difficult to have the plaintiff's client. But it's not
10 that time-consuming in a class action.
11     SPECIAL MASTER QUINN: Okay. Go ahead. Wind up
12 with whatever --
13     MS. MOORE: So, Your Honor --
14     SPECIAL MASTER QUINN: -- you would like to
15 reply.
16     MS. MOORE: So the law firm does have an ethical
17 obligation. They were on the complaint. Other
18 attorneys filed notice of appearance for our firm on
19 behalf of multiple clients. And we did have to watch.
20 I did notice some mistakes in things during the course
21 of this, and I would call Mario. A lot of my
22 communications with Mario, I just dealt with him
23 directly. We were co-counsel with people and there was
24 not duplicative, unnecessary time. Most of these things
25 we had done a lot of in LCD, and they would do things in
                                                    Page 35

1 had that number in them.
2     SPECIAL MASTER QUINN: All right. So I'm going
3 to try once again to get this clear. What you say you
4 contributed to the fee discussion was that you brought
5 to Judge Tigar's attention the amount of damages that
6 Dr. Netz had found had been suffered in the CRT case?
7     MS. MOORE: Correct. That's part of it. That's
8 correct, your Honor.
9     SPECIAL MASTER QUINN: Okay.
10     MS. MOORE: And actually, it's just quoted right
11 in there. There are -- there are three factors that the
12 Court --
13     SPECIAL MASTER QUINN: No --
14     MS. MOORE: Two of the factors had not been
15 addressed and I put the numbers in and the facts in with
16 regards to those factors, Your Honor. So I'm not being
17 inconsistent what I said in the past. As I've said in
18 my papers over and over, 576 is a big number and counsel
19 should be paid for the work on that. These cases are an
20 enormous amount of work. I understand that. So there
21 is no inconsistency. Actually, in my opinion -- and I
22 think because of the evidence, it should have been
23 bigger, but counsel is lead counsel and he has the
24 responsibility and he's the one who decides when you
25 sign and when you accept an offer. I understand that.
                                                    Page 37

1     The -- a lot of things are just being said about
2  me that are not true and don't have any evidence or
3  anything to say.  I -- they've been trying to get into
4  attorney-client privilege for a long time, and I can't
5  go anywhere near attorney-client privilege.  But I did
6  write when they're saying she rounded up clients or
7  she's doing revenge or things of that nature, it's just
8  not true, Your Honor.  It's a very difficult thing to
9  decide to go forward in a situation like this.
10     But so Ms. Capurro was saying, "Why didn't you
11  raise it earlier?  Why didn't you raise it earlier?"
12  One of the things that I did say in a declaration that
13  was given to you a couple -- months ago was I quoted in
14  an email from Ms. Capurro that she sent to all counsel
15  in the case and said "Congratulations" -- I think it was
16  the end of August -- August 24th, 2015, if I recall
17  correctly -- and said "Send an e-mail or tell all your
18  clients to make a claim.  Tell all your clients to make
19  a claim.  Congratulations."  And I received that e-mail,
20  and I did as she asked.
21     I did -- I have here, Your Honor, just take a
22  look -- these are the revised sheets.  Just take my
23  copy.  Look at them.  You can just see what you think.
24  They're not just simple ECF filings.  They're motions
25  and things of that nature.  So just take my copy, look

Page 38

1  appropriate -- I don't think that is appropriate.  And
2  everything I have ever put forward is truthful, honest,
3  straightforward, and I think that I deserve to be
4  compensated, even if it is small, and I do have examples
5  of how my work benefited the class.
6     SPECIAL MASTER QUINN:  Okay.  Thank you very
7  much.  Anyone else in the room?  Mr. Clayton,
8  Mr. Scarpulla, anything you wanted to add?  Anyone on
9  the phone have any questions or comments?
10     MR. BATTIN:  No, Your Honor.
11     SPECIAL MASTER QUINN:  Who said "No, Your Honor?"
12     MR. BATTIN:  Tim Battin.
13     MR. ALIOTO:  Special Master, we have a one quick
14  follow-up if you don't mind.
15     MS. CAPURRO:  One quick point that I forget to
16  mention is that Pierce, Mark Pierce, who seems to be the
17  only plaintiff that Ms. Moore has provided any
18  information or connection to, he was withdrawn from the
19  case by another lawyer who was actually the contact back
20  in February 2009.  So if it's -- I'm not clear on this,
21  but if it's Ms. Moore's contention that she was
22  communicating with Mr. Pierce in keeping him up to date
23  on the case after February 2009, I don't think that that
24  is possible.
25     SPECIAL MASTER QUINN:  So he was withdrawn as --

Page 40

1  at it and see what you think.
2     SPECIAL MASTER QUINN:  Do you have any objection?
3     MS. CAPURRO:  No, but I would just like to point
4  out that the revised -- the revised time sheets remove a
5  lot of the references to read and review or make it
6  sound like she was actually doing work.
7     SPECIAL MASTER QUINN:  Is what you've handed me,
8  Ms. Moore, is this original time sheets or after
9  revision?
10     MS. MOORE:  This is the revision which is 178,000
11  as opposed to 209,000 or something alone those lines.
12  This is where I did what they thought I told them to do.
13  And often times they'll say -- I heard attorneys say to
14  me in the past -- not to me, but I've heard attorneys
15  say to people in these cases, "Don't use the words 'read
16  and review.'  Don't use the words 'read and review.'"
17  So that's what they -- that's what they say.  But I
18  actually, you know, looked at Mr. Alioto's time sheets
19  to see what was the appropriate way to phrase it, and it
20  seemed to have been an appropriate way to phrase it
21  according to what they have thought in other cases.
22     SPECIAL MASTER QUINN:  Okay.  Anything further?
23     MS. MOORE:  No, Your Honor.  Just that I -- I
24  don't -- they've spent more time trying to prevent me
25  from getting paid on this, and I don't know if that is

Page 39

1     MS. CAPURRO:  He was withdrawn as a named
2  plaintiff, and he was never named in the consolidated
3  amended complaint.  I have an e-mail that I can share
4  with everybody if they'd like that.
5     MS. MOORE:  He was withdrawn as a -- excuse me.
6  He was withdrawn -- he could not serve as a named
7  plaintiff, Your Honor.  He was still on a named
8  complaint.  And I was also -- there was -- Dan Karon had
9  filed a notice of appearance for our firm for multiple
10  other plaintiffs as well.
11     MR. ALIOTO:  Special Master, if I may just add
12  one point.  I think you've heard enough on this already,
13  but it may be important in some of the other hearings,
14  and just so you're apprised of this.  There has been a
15  motion by Mr. Scott St. John in the District Court.
16  Okay.  Just so you're aware of that.
17     SPECIAL MASTER QUINN:  To seek fees.  Right.  I
18  saw that.
19     MR. ALIOTO:  So two points.  Although we don't
20  agree with the motion, that is the procedure.  And No.
21  2, what bears upon this hearing is, he's claiming the
22  credit for reducing the fees.
23     MS. MOORE:  He's not doing it on the same grounds
24  as I was.
25     MR. ALIOTO:  Let me finish and you can have the

Page 41

11 (Pages 38 - 41)

1 floor. So you have not only this procedural problem but
2 you have two attorneys in two fora making the same
3 claim. I think this has to -- what effect this has
4 on -- had on Judge Tigar has to be decided by Judge
5 Tigar. Thank you.
6     SPECIAL MASTER QUINN: Okay.
7     MS. MOORE: May I respond to that?
8     SPECIAL MASTER QUINN: Sure.
9     MS. MOORE: Mr. St. John is asking for fees and
10 something else, not on the grounds that I stated. He
11 didn't put that in his papers as I did. The special
12 master's appointment order provides that discovery to
13 reference goes to attorneys' fees for all plaintiff's
14 counsel.
15     SPECIAL MASTER QUINN: I'm sorry. Say that
16 again.
17     MS. MOORE: The special master's appointment
18 order, which provides the scope of your reference,
19 provides that you perform this function for all
20 plaintiff's counsel, and including a fair and reasonable
21 division of the aggregate award among plaintiff's
22 counsel. So this is -- I am a person, and I am a
23 plaintiff's counsel. And just like the Court has
24 referred in other plaintiff's counsel to you, and we did
25 have a motion for attorney's fees, and the issue here is

Page 42

1 whether or not my work was valuable or not.
2     SPECIAL MASTER QUINN: Did you actually file a
3 motion for attorneys' fees or just a declaration?
4     MS. MOORE: I filed a declaration as part of this
5 motion. My name is in the motion. And my name is in my
6 motion. My allocation case is in the motion. There's a
7 declaration on file which you have seen that's been
8 given to you before when you were looking at the
9 attorney fee motion. Just -- I think I just wanted to
10 make sure that was clear and not skewed.
11     SPECIAL MASTER QUINN: Thank you. Okay.
12     MS. MOORE: Thank you.
13     MR. ALIOTO: Special Master, again, I'm not going
14 to argue. I just want to reserve an argument because
15 it's going to come up later. One of the criteria in
16 making an award, at least one of the criteria in the LCD
17 case is, did the counsel act collaboratively to
18 prosecute the joint IPP effort. That consideration also
19 went into the award to Ms. Moore because we contend that
20 she was at cross purposes to what we were doing. I'm
21 not going to argue it now. You're aware of the issue
22 and I just wanted to tell you that that went into our
23 analysis and making the allocation. Thank you.
24     SPECIAL MASTER QUINN: Okay. And Ms. Moore, just
25 a factual point, you have appealed from the District

Page 43

1 Court's overruling of your objection to the approval of
2 the settlement?
3     MS. MOORE: On very narrow grounds, but yes, Your
4 Honor.
5     SPECIAL MASTER QUINN: Okay.
6     MS. MOORE: So what Mr. Alioto just said, Your
7 Honor, is that he reduced my award because I was at
8 cross purposes. So he's referring to post settlement.
9     SPECIAL MASTER QUINN: Yeah. This has been
10 covered, like, really thoroughly in the papers. So I
11 think I have my brain around it, for better or worse.
12 Okay. Thank you everybody. We'll close the hearing now
13 and thank you very much.
14
15     (TIME NOTED: 2:24 p.m.)
16
17
18
19
20
21
22
23
24
25

Page 44

1     I, the undersigned, a Certified Shorthand
2 Reporter of the State of California, do hereby
3 certify:
4     That the foregoing proceedings were taken
5 before me at the time and place herein set forth;
6 that any witnesses in the foregoing proceedings,
7 prior to testifying, were administered an oath; that
8 a record of the proceedings was made by me using
9 machine shorthand which was thereafter transcribed
10 under my direction; that the foregoing transcript is
11 a true record of the testimony given.
12     Further, that if the foregoing pertains to
13 the original transcript of a deposition in a Federal
14 Case, before completion of the proceedings, review
15 of the transcript [ ] was [ ] was not requested.
16     I further certify I am neither financially
17 interested in the action nor a relative or employee
18 of any attorney or any party to this action.
19     IN WITNESS WHEREOF, I have this date
20 subscribed my name.
21
22 Dated:10/1
23
24     JOANNA BROADWELL
25     CSR No. 10959

Page 45

12 (Pages 42 - 45)

**[& - anybody]**

| & |
|---|
| **&**   3:5,15 5:3 7:15 7:23 |

| 1 |
|---|
| **1**   1:25 |
| **1,130,000**   21:8 |
| **1.130**   21:15 |
| **1.3**   15:16 |
| **1.5**   15:16,18 |
| **10**   16:15,20 17:10 18:7 |
| **10/18/16**   45:22 |
| **10959**   1:22 2:17 45:25 |
| **114**   32:20 |
| **120**   3:18 |
| **121**   25:11,11 |
| **130,000**   21:19 |
| **14**   9:25 10:6,11 16:10,20 17:8,19 18:6,8,9 21:9,13 21:13,14,18 27:18 28:11 30:5 |
| **15**   16:20 18:6,8,8 |
| **1500**   2:13 |
| **158**   15:11 |
| **178,000**   39:10 |
| **17th**   4:8 |
| **1801**   5:15 |
| **189**   25:11 |
| **1:29**   2:14 7:2 |

| 2 |
|---|
| **2**   4:1 41:21 |
| **2.5**   17:14,16 |
| **2.7**   11:20 |
| **2.78**   36:15,17 |
| **20**   16:15 |
| **200,000**   24:10 |
| **2000**   9:22 |

| 2008   9:22 25:3 |
|---|
| **2009**   40:20,23 |
| **2015**   28:22 29:11 38:16 |
| **2016**   1:13 2:15 7:1 |
| **209,000**   39:11 |
| **2125**   3:18 |
| **22030**   5:7 |
| **2280**   3:9 6:7 |
| **2459187**   1:23 |
| **24th**   38:16 |
| **255**   16:23 |
| **29th**   28:22 |
| **2:24**   2:15 44:15 |

| 3 |
|---|
| **3**   5:1 17:14,16 |
| **3-18-08**   33:2 |
| **3-5-08**   32:9,15 |
| **30**   16:16 17:11 |
| **307**   5:15 |
| **310**   5:17 |
| **35**   19:2 |
| **35th**   4:18 |
| **3:07**   1:7 2:7 |

| 4 |
|---|
| **4**   6:1 |
| **40,000**   32:2 |
| **4041**   5:6 |
| **41**   21:13,13 |
| **415**   3:11 4:10,20 6:9 |
| **434-8900**   4:20 |
| **45**   1:25 |
| **450**   17:1 |
| **456**   4:8 |

| 5 |
|---|
| **5**   1:13 2:15 7:1 |
| **54**   27:24 |
| **563-7200**   3:11 6:9 |

| 576   18:1 21:11 |
|---|
| 37:18 |
| **5944**   1:7 2:7 |

| 6 |
|---|
| **693-0700**   4:10 |

| 7 |
|---|
| **70,000**   27:14 |
| **703**   5:8 |
| **764-8700**   5:8 |
| **788-0831**   5:17 |

| 8 |
|---|
| **8**   16:16 |
| **8400**   18:9 |

| 9 |
|---|
| **9.9**   16:17 |
| **90067**   5:16 |
| **925**   3:20 |
| **94104**   4:9,19 |
| **94123**   3:10 6:8 |
| **945-0200**   3:20 |
| **94598**   3:19 |

| a |
|---|
| **absolutely**   9:7 |
| **accept**   37:25 |
| **accurate**   13:11,17 |
| **accused**   18:23 |
| **achieved**   33:9 |
| **act**   29:21 43:17 |
| **acted**   34:16 |
| **action**   35:10 45:17 45:18 |
| **actual**   32:11 |
| **add**   8:6 17:7,12 40:8 41:11 |
| **added**   11:17 |
| **address**   23:23 |
| **addressed**   37:15 |
| **administered**   45:7 |

**advocate**   13:4
**afraid**   25:6
**afternoon**   7:4
**aggregate**   42:21
**ago**   23:19 36:10,24 38:13
**agree**   41:20
**agreements**   19:16
**ahead**   7:25 8:17 19:6 31:11 32:5 34:8 35:11
**alioto**   3:5,6 7:7,7 17:22 19:13,21 23:17,20 24:6 25:16,17,19 26:6 29:16 33:20,21 34:6,11,15 40:13 41:11,19,25 43:13 44:6
**alioto's**   8:5 27:9 39:18
**aliotolaw.com**   3:12 4:21
**allocation**   12:25 13:19,25 18:3 43:6,23
**allowed**   27:8
**amended**   41:3
**amount**   10:12 11:12 16:25 21:12 21:20 22:2 27:14 37:5,20
**amounts**   33:7
**analysis**   14:9,10 43:23
**angeles**   5:16
**answer**   29:19
**answers**   27:7
**antitrust**   1:5 2:5
**anybody**   27:15 28:3 30:11

Page 1

**anymore** 33:3
**anyway** 22:1
**apologize** 8:11
**apparently** 9:13
**appeal** 11:1 16:9
**appealed** 43:25
**appearance** 19:20
  22:5 25:19 35:18
  41:9
**appearances** 3:1
  4:1 5:1 6:1
**applied** 13:25
**appointment**
  27:10 42:12,17
**apprized** 41:14
**appropriate** 39:19
  39:20 40:1,1
**approval** 11:24
  29:1,7,10,17 44:1
**argue** 11:4,5,7
  43:14,21
**argued** 12:2,16
**arguing** 10:9 11:8
**argument** 28:16
  43:14
**arguments** 29:23
**arithmetic** 21:17
**arithmetically**
  11:13
**artificial** 15:2,2
**aside** 28:7
**asked** 19:22 22:6
  22:14,15 30:9
  34:22,25,25 38:20
**asking** 8:14 15:19
  18:7 21:15 31:25
  42:9
**assessments** 33:6
**assigned** 9:12
  12:10

**assignments** 33:6
**association** 26:6
**assume** 25:5
**assuming** 24:21
**attention** 11:11
  32:8 37:5
**attorney** 3:17 4:17
  5:5,14 6:6 10:2
  19:17 33:13 38:4
  38:5 43:9 45:18
**attorney's** 42:25
**attorneys** 3:8 4:7
  11:25 14:20 22:9
  27:3 35:18 39:13
  39:14 42:2,13
  43:3
**audited** 30:11
**auditing** 31:19
**august** 38:16,16
**avenue** 5:15
**award** 10:23 16:15
  16:22 27:25 28:4
  42:21 43:16,19
  44:7
**aware** 17:2 41:16
  43:21
**axe** 29:15

**b**

**b** 4:6
**back** 28:11 30:21
  32:1 40:19
**barry** 5:12
**basically** 24:20
**battin** 5:4 7:15,15
  7:17,25 40:10,12
  40:12
**bears** 41:21
**beginning** 2:14
**behalf** 20:3 33:20
  33:21,24 34:3,9
  35:19

**beijing** 25:13
**believe** 16:13 24:4
  28:8 31:5,9 34:1
**believes** 27:22
**benchmark** 21:25
**benefit** 17:8,11,19
  17:23 27:15 28:5
**benefited** 15:7
  28:9 40:5
**best** 8:22 9:1 33:2
**better** 11:13 12:14
  28:18 36:2 44:11
**big** 37:18
**bigger** 16:3 37:23
**billings** 25:1
**billion** 36:15,17
**birkhaeuser** 3:15
  3:16 7:22,22,23
  8:1
**boies** 5:3 7:15
**boies.com** 5:9
**brain** 44:11
**bramson** 3:15
  7:22
**bramsonplutzik....**
  3:21
**brian** 5:12
**brief** 25:8,10
**briefly** 31:17
**broad** 19:4
**broadwell** 1:21
  2:16 45:24
**brought** 37:4

**c**

**c** 5:13
**ca** 3:10,19 4:9,19
  5:16 6:8
**calculations** 23:18
**california** 1:2,12
  2:2,14 7:1 45:2

**call** 30:17 35:21
  36:4
**capurro** 3:7 8:23
  23:25 24:1 25:5
  25:17 27:19 30:7
  31:2,9,12,16 32:5
  32:6 38:10,14
  39:3 40:15 41:1
**career** 19:2
**case** 1:7 2:7 8:21
  9:9,20,24 10:8,9,9
  10:20,24 12:12,17
  13:12 14:6 15:5
  15:13 17:2,21
  18:19 20:11 22:2
  23:11 24:2,19,22
  25:12,12,21 26:2,4
  26:18,19,22,22
  27:5,8,17,21 28:1
  28:18 30:1 33:5
  33:24 34:9,21
  35:8 36:6,7,8,23
  37:6 38:15 40:19
  40:23 43:6,17
  45:14
**cases** 10:20,23
  12:19,23 16:12
  17:10 22:1,15
  34:17 37:19 39:15
  39:21
**categories** 32:11
**cathode** 1:5 2:5
**center** 2:13
**certain** 18:24
**certainly** 26:8
**certified** 2:16 45:1
**certify** 45:3,16
**chance** 8:7 11:1
**change** 32:13
**changed** 32:17

[charge - crt]

**charge** 22:10 30:3
**check** 13:12
**checking** 23:17
**circuit** 12:19,20
13:16
**cited** 12:20 16:13
26:7
**cites** 16:12 25:8,10
25:19
**claim** 28:3 38:18
38:19 42:3
**claimed** 11:12
30:20 36:19
**claiming** 34:10
41:21
**claims** 25:17,22
30:8
**class** 9:2,6 10:1
12:14 13:23 15:7
16:10 17:20,23
18:1 20:14,18,22
20:23 21:2,3,9,12
21:13,19 26:13
28:2,9,12 29:15
35:10 40:5
**clayton** 4:6 7:11
7:11 40:7
**clear** 12:21 14:2
19:17 26:18,19
27:21 28:1 29:7
37:3 40:20 43:10
**client** 19:17 20:13
22:10 25:6 27:4,5
30:15 33:6,13
35:9 38:4,5
**clients** 9:2 19:11
19:13,14,14 20:11
20:21 22:4,8,9
24:21 25:7 26:11
33:12,17 34:23
35:1,2,3,19 38:6

38:18,18
**close** 8:10 33:1
44:12
**cohen** 6:12 7:20,20
8:1
**collaboratively**
43:17
**color** 25:13
**come** 15:4 22:6
28:6 34:22 43:15
**commendation**
23:21
**comments** 40:9
**common** 22:8
27:25 28:6
**communicated**
26:13
**communicating**
22:10 40:22
**communication**
21:4 22:21
**communications**
29:24 35:22
**company** 25:13
**comparable** 10:23
**compare** 29:4
**compared** 10:8
11:12 28:18
**compensable** 10:4
12:10 26:20 32:12
**compensate** 15:16
15:17 17:5,6
**compensated**
17:21,25 40:4
**complained** 14:24
**complaining** 23:4
**complaint** 19:19
22:4 23:13 25:9
25:14,14,15,15
26:7,8 33:25 34:3
35:17 41:3,8

**completely** 9:10
12:9 26:17
**completion** 45:14
**concerns** 8:3
29:12,17
**conduct** 28:2
**conference** 32:18
**confirmed** 25:24
**conflicting** 33:15
**congratulations**
28:23 38:15,19
**connection** 40:18
**consider** 17:8,8
**consideration** 18:4
18:14 43:18
**considers** 15:24
**consisted** 16:5,6
**consistently** 12:15
**consolidated** 41:2
**consortium** 20:7
**consuming** 35:10
**contact** 24:3,5,7
25:25 29:9 40:19
**contacts** 26:2,15
26:25
**contained** 16:7
**contend** 43:19
**contention** 40:21
**context** 10:3
**continue** 16:2
**continued** 4:1 5:1
6:1
**contributed** 14:5
33:9 37:4
**contribution** 10:2
10:19
**conversations**
9:19
**copies** 31:3,13
**copy** 31:6 38:23
38:25

**correct** 10:14 20:4
20:19,24 21:7
28:9 37:7,8
**correctly** 18:7
20:1 38:17
**counsel** 7:5 8:19
9:3,4,10,18 10:21
12:15,15,21 14:4
14:11 19:1,21,24
21:8 22:5 23:6,9
24:14 25:23 28:2
30:12 32:13,18,20
32:21,25 33:5
34:12,17,22,23,25
35:1,3,23 36:6,6,7
36:22 37:18,23,23
38:14 42:14,20,22
42:23,24 43:17
**counsel's** 16:13
**couple** 16:12,12
30:7 36:10 38:13
**course** 8:20 9:8,9
10:20 14:7 20:11
35:20
**court** 1:1 2:1 10:3
10:25 11:1,14
12:13,21 14:22
16:8 18:2,5,14,16
18:22 26:18 27:25
29:4 37:12 41:15
42:23
**court's** 11:11 44:1
**covered** 44:10
**credit** 41:22
**creek** 3:19
**criteria** 43:15,16
**critical** 21:6
**cross** 43:20 44:8
**crt** 1:5 2:5 11:20
25:13 28:17 36:15
36:17,17 37:6

Veritext Legal Solutions
866 299-5127

[csr - extremely]

**csr**  1:22 45:25
**cut**  14:20,21 15:3
  24:11 25:3,3
  29:20
**cv**  1:7 2:7

**d**

**d**  4:15,16
**damage**  36:5
**damages**  11:20,22
  28:15,19 29:3,3
  36:14,15,18,20
  37:5
**dan**  7:22 25:22
  26:14 34:24 41:8
**daniel**  3:16
**date**  27:5 40:22
  45:19
**dated**  28:22 32:8
  45:22
**dbirkhaeuser**  3:21
**dcf**  32:20
**deal**  28:10
**deals**  8:6
**dealt**  35:22
**debate**  14:15
**decide**  29:20 38:9
**decided**  42:4
**decides**  10:21
  37:24
**decision**  19:6
**declaration**  24:8
  38:12 43:3,4,7
**declarations**  30:25
  31:8,17 33:22
**delay**  15:16,17
  17:5
**delete**  32:20
**deleted**  22:19
  32:24
**demonstration**
  33:8

**deny**  12:21
**deposition**  45:13
**depositions**  26:23
  26:24 35:6
**description**  29:5
  32:14
**deserve**  16:3 40:3
**deserves**  17:25
**detailed**  30:10
**determining**  15:25
**dgh**  32:16,18
**different**  14:6
  17:15 22:8
**difficult**  18:20
  19:6 31:23 35:9
  38:8
**direct**  32:8
**direction**  45:10
**directly**  17:22
  35:23
**discovery**  26:24
  42:12
**discuss**  8:9 23:12
  30:18,20 36:4
**discussion**  37:4
**disjointed**  8:10,13
  8:15
**disobeying**  9:13
**dispute**  24:13,14
  24:15,18
**distribution**  29:6
**district**  1:1,2 2:1,2
  10:3 12:21 41:15
  43:25
**divided**  21:12
**division**  1:3 2:3
  42:21
**docket**  19:18 22:3
  22:3 25:11,11
  29:25

**document**  23:3
  36:10
**documentation**
  11:25
**documents**  8:20
  9:8 12:1 25:8
**doing**  11:7 12:18
  16:2,3 19:24 20:3
  23:18 25:18 26:16
  31:21 33:21,23
  38:7 39:6 41:23
  43:20
**doj**  32:18
**dollar**  16:17
**dr**  29:3 37:6
**drastically**  14:20
  15:3 17:6
**drew**  11:11
**drive**  5:6
**due**  23:8 28:4
**duplicate**  26:19
**duplication**  35:5
**duplicative**  26:17
  35:24

**e**

**e**  3:12,13,16,21
  4:11,12,21 5:9
  6:10 10:24 24:16
  28:22 30:10,17,18
  30:20 38:17,19
  41:3
**earlier**  38:11,11
**early**  27:8
**ecf**  24:19,23 25:1
  26:16 38:24
**effect**  15:8 42:3
**efficient**  8:22 9:24
  14:23
**effort**  35:5 43:18
**efforts**  12:22

**egregious**  28:2
**eight**  24:20
**either**  25:9 32:25
  33:16
**email**  38:14
**embarcadero**  2:13
**employee**  45:17
**enormous**  37:20
**entire**  12:17 15:5
  16:22
**entries**  26:12
  32:22,24 36:8
**entry**  32:8,14,18
  32:19,21
**error**  12:21
**especially**  15:6
**estimated**  29:3
**ethical**  26:10 27:4
  27:6 35:16
**evaluate**  10:3 16:8
**evaluated**  11:2
**everybody**  7:4
  14:14 15:24 32:4
  41:4 44:12
**evidence**  19:16
  27:12 28:2,13
  31:8 37:22 38:2
**exactly**  22:20
  31:25
**example**  12:11
  14:1 33:2
**examples**  40:4
**excerpt**  32:23
**excuse**  8:12 23:17
  41:5
**experience**  19:4
**expert**  36:21
**explaining**  30:10
**extended**  28:24
**extremely**  30:10

[fact - hourly]

| f | | | |
|---|---|---|---|

**fact**  11:11 12:13
  12:14,18
**factors**  10:16,18
  18:2,20 37:11,14
  37:16
**facts**  17:2 21:6
  37:15
**factual**  33:16
  43:25
**fair**  9:6,21 13:22
  14:14 25:4 33:4
  42:20
**fairfax**  5:7
**fairly**  30:1
**fairness**  10:4
**family**  8:10
**fan**  13:18
**far**  18:24
**february**  40:20,23
**federal**  45:13
**fee**  12:22 16:14
  24:8 37:4 43:9
**feel**  26:18 33:4
**feels**  8:21
**fees**  9:22 10:1,4,11
  11:25 21:14,14,19
  27:23,24,25 28:4
  41:17,22 42:9,13
  42:25 43:3
**fifth**  5:6
**figure**  14:22,23
**file**  19:8,19,20
  22:4,5 34:1 43:2,7
**filed**  16:1 20:2
  28:21 32:16 34:3
  34:21,21,24 35:18
  36:8,10 41:9 43:4
**filing**  16:5 29:10
  29:11

**filings**  24:19,23
  26:17 38:24
**final**  11:24
**financially**  18:24
  45:16
**find**  9:16 12:3
**fine**  11:7
**finish**  15:21 41:25
**firm**  16:14 19:21
  19:22,24,25 21:22
  22:7 25:14,16,17
  29:16 33:21,22
  34:4,6,9,11,15
  35:2,16,18 41:9
**firms**  26:22 30:2
**first**  12:7 23:20
**floor**  4:8,18 5:6
  42:1
**follow**  17:21 40:14
**footnote**  36:10,23
**fora**  42:2
**foregoing**  45:4,6
  45:10,12
**forget**  20:5 40:15
**formal**  29:17
**forth**  45:5
**forum**  28:10
**forward**  29:18
  38:9 40:2
**fos**  4:11
**found**  9:14 36:20
  37:6
**four**  19:14
**fraction**  16:22
**francis**  4:4,5 7:10
  7:12
**francisco**  1:3,12
  2:3,14 3:10 4:9,19
  6:8 7:1
**frankly**  26:21
  31:20

**full**  24:2
**fulsomely**  30:4,6
**function**  42:19
**fund**  12:22 27:25
  28:5,6 33:7
**funds**  9:5 21:12
**further**  9:5 39:22
  45:12,16

| g | | | |
|---|---|---|---|

**gain**  9:5
**gained**  9:25 12:12
**general**  14:10
**genuinely**  26:25
**getting**  23:1 27:13
  39:25
**give**  8:13 13:25
  14:11,12,13 15:21
  16:12 18:6 29:18
**given**  31:13 38:13
  43:8 45:11
**giving**  16:6 17:10
  18:21
**gleaned**  28:15
**go**  7:25 8:17 14:13
  19:6 31:11 32:5
  33:3 34:8 35:11
  38:5,9
**goal**  9:7
**goes**  42:13
**going**  8:24 14:8
  15:20 22:24 23:10
  23:24 28:11 29:18
  31:17 37:2 43:13
  43:15,21
**good**  7:4 8:2 14:22
  18:18 19:3,4 36:1
**great**  9:4 21:3
  28:25
**grind**  29:15
**grounds**  41:23
  42:10 44:3

**grove**  3:18
**guess**  9:13

| h | | | |
|---|---|---|---|

**half**  16:17 17:5,5
  17:12
**hand**  31:12
**handed**  39:7
**handsomely**  17:24
**happened**  18:17
  32:7
**happens**  23:9
**hard**  23:3 28:24
**harsh**  15:8
**heard**  7:17 39:13
  39:14 41:12
**hearing**  1:11 7:5
  8:3 24:4 33:15
  41:21 44:12
**hearings**  23:22
  41:13
**held**  12:20
**help**  21:10
**helpful**  14:9
**helps**  12:17
**highlighted**  32:22
**hon**  1:11 2:12
**honest**  31:21 40:2
**honor**  16:23 18:12
  18:19 19:3,18
  20:24 22:1,13
  23:15 24:1 30:2
  34:16,20 35:4,8,13
  37:8,16 38:8,21
  39:23 40:10,11
  41:7 44:4,7
**honor's**  32:8
**hope**  27:7
**hour**  18:10
**hourly**  17:7 18:9
  19:20,23 33:23

[hours - mahler]

**hours** 8:23 16:23 17:1,6 19:25 24:19 25:1 34:7,8

**i**

**icu** 8:11
**identify** 7:6,18
**illston** 13:15
**impart** 12:13
**important** 14:5,12 41:13
**include** 12:16
**included** 17:4 29:1 29:2,5
**including** 30:12,13 42:20
**inconsistency** 37:21
**inconsistent** 28:19 37:17
**increase** 12:17 16:15,16,18,20,21
**increased** 12:22 17:11
**indicating** 26:13
**indirect** 3:3 7:8
**influenced** 32:7
**information** 10:25 11:2 16:8 18:21 29:2 36:5 40:18
**informed** 26:4
**informing** 30:14
**informs** 24:6
**initial** 30:20
**instance** 14:3
**interested** 45:17
**interests** 29:15
**interrupt** 24:12
**invent** 13:16
**involved** 30:1
**ipp** 12:15 32:19 43:18

**ipps** 32:16
**irregularly** 15:3
**issue** 8:18 10:6,8 23:9 28:10 42:25 43:21
**issues** 29:19

**j**

**jeff** 7:13
**jeffrey** 5:13
**jesuit** 20:7,7,9
**jmalioto** 3:12
**joanna** 1:21 2:16 45:24
**job** 1:23 28:25
**john** 41:15 42:9
**join** 34:25
**joint** 43:18
**joseph** 6:4,5 7:19 25:19 34:5,15
**jpatane** 6:10
**judge** 10:10 12:2,3 13:15,15 36:24,25 37:5 42:4,4
**july** 24:9 28:22
**june** 29:11
**justify** 26:9

**k**

**k** 10:24
**karon** 25:22 26:14 34:24 41:8
**keep** 24:19 26:11 27:4 32:14,21,25
**keeping** 26:3 40:22
**kept** 22:24
**kerr** 10:16,23
**knew** 9:18 11:21 23:10 25:20 36:6 36:7,12

**know** 11:14,15 13:22 14:23 22:25 23:2 24:22 25:2 26:6,8 27:2,10,14 27:22 28:18 29:21 29:25 36:22 39:18 39:25
**knowledge** 8:11 9:5,25 12:12,13 19:3,4,5 28:15
**known** 9:19

**l**

**lauren** 3:7 7:7 23:2
**laurenrussell** 3:13
**law** 3:8,17 4:4,7 4:15,17 5:5,12,14 6:4,6 7:11 15:14 17:21 19:4,21 26:18 27:17,21 28:1 33:21,22 35:2,16
**lawyer** 16:25 19:2 24:24 40:19
**lawyers** 8:25 13:23 19:22 23:12 25:1 26:2,15 34:24
**lcd** 10:8,10 11:11 11:13,22 13:11 15:15 23:2 28:17 28:18 30:2 35:25 36:16 43:16
**lead** 7:8 9:3,4 12:14,14 14:3,11 21:7 23:9 24:14 27:16 30:12 32:13 32:19,21,24 37:23
**leads** 14:17
**led** 9:25

**leeway** 8:13
**left** 13:1
**legitimate** 24:22
**limited** 24:7
**line** 17:9 18:25 19:1
**lines** 39:11
**litigation** 1:5 2:5 8:20
**little** 8:9,13,13,15 32:23
**llp** 5:3
**lodestar** 8:22 12:8 13:12 14:9,15,17 14:22 15:2,10,14 15:23 16:23 17:3 17:18 24:10 25:2 32:1
**lodestars** 14:19 15:1,2,5 27:1
**long** 36:24 38:4
**look** 9:8 10:18,19 10:19 18:16,20 23:5 32:9 33:1 38:22,23,25
**looked** 9:14,16 30:24 39:18
**looking** 13:7 43:8
**los** 5:16
**lost** 21:16
**lot** 11:25 14:24 22:15 24:25 27:2 27:10 35:21,25 36:8,21 38:1 39:5
**lots** 14:25,25 22:7
**lower** 27:1

**m**

**m** 6:4,5
**machine** 45:9
**mahler** 3:15 7:23

[mail - noted]

**mail** 3:12,13,21
4:11,12,21 5:9
6:10 24:16 28:22
30:17,20 38:17,19
41:3
**mails** 30:10,18
**main** 16:13
**making** 24:17 42:2
43:16,23
**mario** 3:6 7:7 9:19
35:21,22
**mario's** 23:2
**mark** 34:1 40:16
**marlo** 6:12 7:20
**marvin** 1:11 2:12
**massachusetts**
29:8
**master** 1:11 2:12
7:4,14,16,21,24
8:16 10:5,17 11:3
11:6,10,17,21 12:6
13:1,9,14,20,24
15:9,18,22 16:4
17:13 18:5,13,18
19:8,12 20:1,5,10
20:15,17,20,25
21:5,10,16,21,24
22:12 23:14,16,19
23:20 24:11 25:16
27:18 30:6,24
31:11,14,23 32:3
33:10,19 34:5,10
34:14,19 35:11,14
36:13,16,18 37:2,9
37:13 39:2,7,22
40:6,11,13,25
41:11,17 42:6,8,15
43:2,11,13,24 44:5
44:9
**master's** 42:12,17

**matsushita** 25:13
**matter** 11:14
33:16
**mean** 11:5,14 13:9
13:11 14:15 18:22
20:13 21:21
**meeting** 23:6
**member** 8:10
20:18 34:11
**members** 20:22
**mention** 40:16
**mentioned** 24:2
31:19
**method** 13:5 16:11
**methods** 12:25
**million** 9:25 10:6
10:11 11:20 15:11
16:10,15,16,17,20
17:8,19 18:1,6,8,9
21:9,11,14,15,18
21:19 27:18 28:11
30:5
**millions** 21:13
**mind** 15:11 40:14
**minute** 23:19
**missouri** 20:9 29:8
**mistakes** 35:20
**misunderstood**
22:23
**mix** 11:18
**moment** 24:21
**money** 14:25
15:17 23:23 28:4
28:5 33:7
**montgomery** 4:8
**month** 24:20
**months** 28:20,20
38:13
**moore** 4:15,16 7:9
7:9 8:4,4,8,18
10:14,18 11:5,9,16

11:19,23 12:7
13:3,13,19,21 14:3
15:13,19,23 16:6
17:17 18:11,15,19
19:10,18 20:4,6,13
20:16,19,24 21:1,7
21:11,18,23,25
22:13 23:15,21
24:4,13 25:7,20,20
25:24 26:1,5,16
27:1,5,19,22 28:7
28:10 29:9,14
30:8,19 31:7,13,20
31:22,24 33:10,18
33:20 34:7,12,16
34:20 35:13,16
36:15,17,20 37:7
37:10,14 39:8,10
39:23 40:17 41:5
41:23 42:7,9,17
43:4,12,19,24 44:3
44:6
**moore's** 28:13
40:21
**motion** 11:23,24
12:20 27:24 28:8
32:16,17,18,19,20
32:21 41:15,20
42:25 43:3,5,5,6,6
43:9
**motions** 30:12
32:13,25 34:21,21
36:1 38:24
**motives** 18:23
**move** 9:6 27:23
**multi** 32:17
**multiple** 9:18
14:20 35:1,2,19
41:9
**multiplied** 15:4

**multiplier** 12:18
15:18,19 16:1,3
17:12
**multipliers** 14:17
**multistate** 32:16
32:19

**n**

**name** 34:2,4 43:5
43:5 45:20
**named** 20:13,22
26:22 34:3 41:1,2
41:6,7
**narrow** 44:3
**nature** 35:7 38:7
38:25
**near** 38:5
**necessarily** 23:13
**necessary** 8:21 9:1
18:20
**need** 10:24 17:21
18:3 33:3
**needed** 10:25
31:24
**needs** 27:23
**nefarious** 18:23
**neither** 45:16
**netz** 29:3 36:21
37:6
**never** 19:15 21:1
22:16 23:7 24:3
25:20,25 29:23
30:19 41:2
**nine** 9:12,23 22:2
24:3
**ninth** 12:19,20
13:16
**nonstarter** 22:7
**normally** 18:11
**northern** 1:2 2:2
**noted** 44:15

Veritext Legal Solutions
866 299-5127

[notes - proceedings]

notes  8:14
notice  19:19 22:5
    25:12,18 35:18,20
    41:9
number  36:9,12
    36:13 37:1,18
numbers  37:15
nutshell  10:14

**o**

o  4:4,5 7:12
oak  3:18
oath  45:7
object  29:20
objection  8:3,6
    10:7 16:5,7 19:9
    20:2 29:11 39:2
    44:1
objectionable
    30:22
objections  28:17
    28:21
objector  27:20
    28:4
objectors  27:22
obligation  24:24
    26:10 27:4,6
    33:13 35:17
occasionally  24:16
october  1:13 2:15
    7:1
odds  9:3
offer  30:19 37:25
office  5:12 6:4
offices  4:4,15 7:12
oh  31:14 36:18
okay  7:14,16 8:2,8
    8:9 11:3,9 12:6
    13:13,19,20,21
    14:3 15:20 18:18
    19:12 20:15,20,25
    21:11,24 22:12

23:14,16 27:19
    30:4 31:2 33:10
    33:18,22 34:14,19
    35:11 37:9 39:22
    40:6 41:16 42:6
    43:11,24 44:5,12
omnibus  8:5
once  32:4 37:3
opinion  37:21
opportunity  29:18
opposed  39:11
opposing  28:8
order  26:19 42:12
    42:18
original  31:3 32:9
    32:15 39:8 45:13
originally  33:1
outcome  14:6
outlined  30:16
overruling  44:1
overturned  16:9

**p**

p.m.  2:14,15 7:2
    44:15
page  4:1 5:1 6:1
pages  1:25
paid  17:24 24:22
    33:7 37:19 39:25
paper  15:15 16:1
papers  8:4 14:2
    16:13 17:13 26:9
    29:1,8,10 31:19
    32:10 36:25 37:18
    42:11 44:10
part  25:21 34:14
    34:20 37:7 43:4
participate  19:22
particular  15:6
party  45:18
patane  6:4,5 7:19
    7:19 8:1

patrick  4:6 7:11
pay  33:6
pbc  4:12
people  14:24 21:3
    23:10 26:21 35:23
    39:15
percent  16:15,16
    16:17 17:11 18:6
    18:8,8
percentage  10:22
    13:5,12,18,22,25
    14:10,11,13,15,16
    15:10,11,20 16:11
    16:19 18:16
perception  32:6,7
perform  42:19
period  28:24
person  14:12,12
    42:22
pertains  45:12
phone  7:16,18 8:2
    23:18 24:16 40:9
phrase  39:19,20
picked  10:10
    13:15 24:16
picture  33:3
pierce  25:12 34:1
    34:1 40:16,16,22
place  12:3 36:11
    45:5
plaintiff  40:17
    41:2,7
plaintiff's  19:1
    23:6 35:9 42:13
    42:20,21,23,24
plaintiffs  3:3 7:8
    25:21,23,25 26:3,4
    26:15,23,25 41:10
plan  29:5
players  14:5

please  7:6,18
    30:17 32:3
plenty  8:16
plutzik  3:15 7:23
point  23:22 31:18
    39:3 40:15 41:12
    43:25
points  30:8 41:19
portion  8:5 9:22
position  27:8
    28:16
possible  8:23
    40:24
post  12:16 15:24
    15:25 16:4,24
    17:3 27:20 44:8
posts  9:7
potential  10:22
prefer  13:6
preferences  13:10
preliminary  29:1
    29:7,10
prescott  3:5
present  6:12 7:5
presented  12:2
    36:25
pretty  26:18,19
    27:21 33:15
prevail  18:25
prevent  39:24
prior  11:25 27:9
    29:17 45:7
privilege  38:4,5
probably  13:6
problem  9:3 23:7
    42:1
procedural  42:1
procedure  41:20
proceedings  2:12
    7:3 45:4,6,8,14

Veritext Legal Solutions
866 299-5127

[process - responsibility]

process   29:17
  31:20
produced   26:24
proof   17:20
proper   11:2
properly   16:8
prosecute   43:18
provided   32:23
  40:17
provides   42:12,18
  42:19
providing   10:2
public   8:11 11:15
  36:9
punitive   15:6
purchaser   3:3 7:8
purpose   11:4
purposes   43:20
  44:8
put   8:24 9:4 14:22
  18:25,25 19:2,25
  34:8 37:15 40:2
  42:11
putting   18:21

**q**

quantifiably   15:7
question   19:5 27:7
  30:5 33:11
questions   40:9
quick   30:8 40:13
  40:15
quinn   1:11 2:13
  7:4,14,16,21,24
  8:16 10:5,17 11:3
  11:6,10,17,21 12:6
  13:1,9,14,20,24
  15:9,18,22 16:4
  17:13 18:5,13,18
  19:8,12 20:1,5,10
  20:15,17,20,25
  21:5,10,16,21,24

22:12 23:14,16,19
  24:11 25:16 27:18
  30:6,24 31:11,14
  31:23 32:3 33:10
  33:19 34:5,10,14
  34:19 35:11,14
  36:13,16,18 37:2,9
  37:13 39:2,7,22
  40:6,11,25 41:17
  42:6,8,15 43:2,11
  43:24 44:5,9
quite   13:17
quoted   37:10
  38:13

**r**

r   10:24,24
r&r   30:2
raise   29:12,16
  38:11,11
raised   10:7 24:25
  29:19
rate   17:7 18:9
ray   1:5 2:5
reached   22:22
read   8:4,5 9:11
  24:19 26:9 27:2
  27:10 29:24 30:3
  30:13,13 39:5,15
  39:16
reading   24:23
  27:12
real   22:21 33:12
reality   14:23
realized   36:2
really   11:3 15:1
  23:1,3 24:12,18,18
  27:11,15 36:9,23
  44:10
reasonable   42:20
recall   12:4 36:11
  38:16

receive   14:14
  15:12 17:14 18:9
  21:4
received   17:23
  21:1 24:7 29:23
  38:19
receiving   15:17
recognize   27:3
recollection   9:17
recommended
  10:12 25:2
record   7:6 8:19
  11:15 19:13 25:6
  25:23 26:10 27:13
  45:8,11
records   24:8,9
  26:12 28:14,25
  31:3,5,10,15,16
recover   29:9
recovering   23:23
recovery   10:22
reduce   18:3
reduced   8:23
  10:11 17:6 32:1
  44:7
reducing   41:22
reference   29:2
  42:13,18
references   25:10
  32:24 39:5
referred   42:24
referring   10:12
  13:19 17:17 44:8
refers   25:11
regards   12:7,24
  14:16 15:14 16:11
  16:14,19 17:19
  22:1 37:16
regular   35:8
related   25:12
  28:14 30:14

relationship   19:1
  19:17 33:13
relative   45:17
remedy   29:18
remember   9:15
  20:1
remove   30:9 39:4
removed   30:9,21
removing   32:11
rep   20:14
reply   25:8,10
  35:15
reported   1:21
reporter   2:17 45:2
represent   25:22
representation
  19:10
representatives
  26:14
represented   19:15
  20:11,21 26:22,23
  33:12
representing
  19:14 22:4,11
  25:7 33:16
reps   20:22 21:2,3
reputation   18:25
request   16:20
requested   45:15
requesting   21:8
requirement
  10:15,16,17,23
requires   27:17
reserve   43:14
respect   25:1 35:7
respond   23:25
  42:7
responded   30:4
response   8:5
responsibility
  26:5 37:24

[responsible - stuff]

responsible  17:23
18:2 28:11
result  10:9 11:12
12:14 27:16 33:9
results  14:18
retaliated  18:23
retention  19:16
return  10:1
returned  16:10
revenge  29:22
38:7
reversed  11:1
review  8:19 23:3
26:9 27:2,11
29:25 30:3,13,14
32:17 39:5,16,16
45:14
reviewed  29:1
reviewing  26:16
27:13 28:14
revised  31:4,9
32:10 38:22 39:4
39:4
revision  39:9,10
right  8:19,21 9:7
15:4,20 20:20,21
21:6,7,20 31:4
37:2,10 41:17
ringer  8:24
risk  9:4 19:2
road  3:18
rockhurst  20:6
rodriguez  12:23
room  40:7
rounded  38:6
rule  27:24
russell  7:7

s

san  1:3,12 2:3,13
3:10 4:9,19 6:8
7:1

sansome  4:18
saw  23:5 36:23
41:18
saying  11:10 12:8
21:2,22 23:4 38:6
38:10
says  9:10 15:14
19:13 32:15
scarpulla  4:4,5
7:10,10,12 40:8
scarpullalaw.com
4:11,12
scope  42:18
scott  41:15
seal  36:8,21,22
sealed  12:1
see  8:14 23:12
30:25 38:23 39:1
39:19
seeing  12:4 24:25
36:11
seek  41:17
seeking  21:19,20
seen  19:15 43:7
send  38:17
sent  24:16 30:9,18
32:1 38:14
sentence  17:18
separately  25:18
27:23
serve  41:6
set  14:4 45:5
settlement  10:7,21
12:16,22 15:24,25
16:4,5,24 17:3
19:9 20:2 27:20
29:6,13,17 44:2,8
settlements  27:21
29:4
seven  16:17 24:20

share  41:3
shea  5:13 7:13,13
7:17,25
sheet  23:5
sheets  23:1 38:22
39:4,8,18
shocked  23:2
shocking  22:25
short  33:4
shorthand  2:16
45:1,9
show  28:25
showed  35:6
side  16:21 34:17
sign  37:25
signature  45:23
similar  10:20
simple  33:16
38:24
single  29:3
situation  26:1
33:11,14 38:9
skepticism  24:25
skewed  14:17
18:15 43:10
slack  8:16
slashed  22:24
small  8:22 17:3
22:2 40:4
smaller  15:5 16:21
sorry  21:17 22:23
24:12 42:15
sound  39:6
special  1:11 2:12
7:4,14,16,21,24
8:16 10:5,17 11:3
11:6,10,17,21 12:6
13:1,9,14,20,24
15:9,18,22 16:4
17:13 18:5,13,18
19:8,12 20:1,5,10

20:15,17,20,25
21:5,10,16,21,24
22:12 23:14,16,19
23:20 24:11 25:16
27:18 30:6,24
31:11,14,23 32:3
33:10,19 34:5,10
34:14,19 35:11,14
36:13,16,18 37:2,9
37:13 39:2,7,22
40:6,11,13,25
41:11,17 42:6,8,11
42:15,17 43:2,11
43:13,24 44:5,9
specifically  9:12
22:17,20
spent  30:12 32:11
34:11 39:24
spoken  25:22
st  41:15 42:9
stand  29:8
standard  30:1
stars  5:15
start  7:5
state  45:2
stated  11:19,23,24
12:15 28:22 42:10
statement  32:17
statements  28:20
states  1:1 2:1 20:8
station  13:2
ste  2:13
stick  17:16
stories  33:15
straightforward
40:3
straus  5:3,9 7:15
street  3:9 4:8,18
6:7
stuff  36:21

Veritext Legal Solutions
866 299-5127

**submit**  34:6,8
**submitted**  31:4
**subscribed**  45:20
**subsequently**  9:25
**substantial**  33:7
**substantive**  27:12
**success**  10:8,9
**successful**  10:10
**suddenly**  9:7,21
**suffered**  37:6
**suggested**  17:14
**suggesting**  17:15
**suggestion**  14:8
**suggestions**  24:17
**suite**  3:18
**sure**  8:23 10:5
  14:23 15:22 42:8
  43:10
**surprised**  24:10
**suspects**  7:24

**t**

**take**  18:4,14 19:10
  31:22 34:5 38:21
  38:22,25
**taken**  2:13 14:25
  45:4
**talk**  16:14 19:12
  23:12 32:4
**talked**  9:20 16:1
  22:22 23:11
**talking**  13:10,25
  30:25 36:7
**targeted**  9:23
**tasked**  26:3
**tatp.com**  3:13 6:10
**tbattin**  5:9
**tel**  3:20
**telephone**  3:17 5:5
  5:14 6:6,12
**tell**  12:5 13:24
  15:13 22:20 38:17

38:18 43:22
**telling**  29:24
**test**  13:16
**testifying**  45:7
**testimony**  45:11
**tests**  13:18
**thank**  23:15,21,25
  24:1 28:23,23
  40:6 42:5 43:11
  43:12,23 44:12,13
**theresa**  4:15,16
  7:9 8:3 24:3 25:20
  25:20 26:16
**thing**  38:8
**things**  8:8 30:15
  35:6,20,24,25 36:2
  36:4 38:1,7,12,25
**think**  8:18 9:1,2,6
  9:21 10:6 13:11
  13:14,17,22 14:1
  14:16,19 15:14,15
  17:4,9,11,13,17,24
  18:3,11,15,15 22:6
  22:13 23:8,13,22
  24:13,15 25:5
  28:3 29:19 30:25
  31:2,2,4 33:11
  34:2 37:22 38:15
  38:23 39:1 40:1,3
  40:23 41:12 42:3
  43:9 44:11
**thinks**  14:4,11
**thoroughly**  44:10
**thought**  9:15
  22:14,16 23:24
  31:25 39:12,21
**three**  17:6,12 18:2
  30:25 31:7,7
  37:11
**tiers**  14:4,7

**tigar**  10:10 12:2,3
  13:15 36:24,25
  42:4,5
**tigar's**  37:5
**tim**  5:4 7:15 40:12
**time**  10:21 23:1,5
  23:11,11 24:2,8,8
  24:23 26:12,20
  27:2,8,11 28:13,24
  28:25 29:12,20
  30:3,9,11,12,14,22
  31:3,5,10,14,16
  32:8,11,14,19,21
  32:25 34:10 35:10
  35:24 36:24 38:4
  39:4,8,18,24 44:15
  45:5
**times**  39:13
**tiny**  16:22,22,25
  16:25
**tmoore**  4:21
**today**  8:10 11:4
  23:24
**told**  9:11,14 22:16
  30:22 36:24 39:12
**total**  10:22
**totally**  14:15
**train**  13:1
**transcribed**  45:9
**transcript**  7:3
  45:10,13,15
**tried**  26:9
**true**  14:24 30:23
  38:2,8 45:11
**truly**  29:14
**trump**  3:5,5
**truthful**  40:2
**try**  37:3
**trying**  9:5 21:6
  38:3 39:24

**tube**  1:5 2:5
**turn**  23:25
**turned**  24:4
**two**  2:13 12:24
  17:5 24:19 28:20
  37:14 41:19 42:2
  42:2

**u**

**unassigned**  30:13
**undersigned**  45:1
**understand**  10:6
  13:3,4 21:5 22:25
  34:19 37:20,25
**understood**  18:7
**unfortunately**
  30:23
**unhappy**  14:21
**unimportant**  9:11
  12:9
**union**  3:9 6:7
**united**  1:1 2:1 20:8
**universities**  20:8,9
**university**  5:6
  20:3,6,7
**unnamed**  20:18,22
**unnecessary**  26:17
  26:20 35:24
**unsolicited**  24:17
**updated**  26:11
**use**  9:5 13:7 14:10
  15:9 39:15,16
**usual**  7:24

**v**

**v**  25:12
**va**  5:7
**valid**  23:13
**valuable**  12:9
  17:20 43:1
**value**  10:1,19

Veritext Legal Solutions
866 299-5127

**[various - zero]**

| | |
|---|---|
| **various**  30:15 | **worked**  9:3 16:23 |
| **version**  31:5 |     17:1 22:15 23:3 |
| **versus**  14:16 |     24:2 35:4 |
| **vilified**  18:22 | **working**  22:1,7,8 |
| **w** |     29:14 33:18,20 |
| **wait**  21:10 | **worse**  44:11 |
| **walnut**  3:19 | **write**  38:6 |
| **want**  10:5 11:7 | **written**  12:1 |
|     13:3 17:9 30:18 | **wrong**  22:17 |
|     31:12 43:14 | **wrote**  12:4 |
| **wanted**  13:21 40:8 | **x** |
|     43:9,22 | **x**  14:11 |
| **watch**  35:19 | **y** |
| **watched**  34:9 | **y**  14:13 |
| **watching**  33:24,25 | **yeah**  44:9 |
| **way**  14:21 22:17 | **year**  24:9 |
|     36:3,3 39:19,20 | **years**  9:12,20,20 |
| **ways**  14:6 34:15 |     9:23 19:3 22:2 |
| **we've**  7:16 9:19,20 |     24:3,20 36:10 |
| **wednesday**  1:13 | **z** |
|     2:15 7:1 | **zero**  25:3 |
| **went**  21:12,18 | |
|     26:23 30:21 35:6 | |
|     43:19,22 | |
| **whereof**  45:19 | |
| **wind**  35:11 | |
| **withdrawn**  40:18 | |
|     40:25 41:1,5,6 | |
| **witness**  45:19 | |
| **witnesses**  45:6 | |
| **words**  39:15,16 | |
| **work**  9:10,23,24 | |
|     12:8,16,17 14:1 | |
|     15:24,25 16:2,5,24 | |
|     17:20 19:20,23,23 | |
|     19:23 25:18 27:12 | |
|     27:15,19,20 28:24 | |
|     32:11 33:6,8,21,23 | |
|     37:19,20 39:6 | |
|     40:5 43:1 | |

Page 12