Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for
Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-JST; No. CV-13-03234-JST |
| | MDL No. 1917 |
| | **CLASS ACTION** |
| This Document Relates to: All Indirect Purchaser Actions | **LEAD COUNSEL'S PARTIAL OBJECTION TO SPECIAL MASTER'S CORRECTED REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES** |
| | Judge: Honorable Jon S. Tigar<br>Court: Courtroom 9, 19th Floor |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 2

I. LEAD COUNSEL'S PROPOSED ALLOCATIONS ................................................. 2

    A. Scarpulla ............................................................................................................ 2

    B. Cooper ............................................................................................................... 2

    C. Moore ................................................................................................................ 3

    D. Winters ............................................................................................................. 4

II. THE R&R .................................................................................................................... 4

    A. Scarpulla ............................................................................................................ 4

    B. Cooper ............................................................................................................... 5

    C. Moore ................................................................................................................ 5

    D. Winters ............................................................................................................. 6

ARGUMENT ............................................................................................................................ 6

I. LEGAL PRINCIPLES ................................................................................................ 6

II. THE PROPOSED INCREASES ARE UNWARRANTED. ....................................... 7

    A. The Recommended Increases in Allocations to Scarpulla, Cooper and Moore Should Be Rejected. .......................................................................................... 7

        1. Scarpulla ................................................................................................ 9

        2. Cooper ................................................................................................. 10

        3. Moore .................................................................................................. 11

    B. The Court Should Reduce The Recommended Winters Allocation ............... 11

CONCLUSION ....................................................................................................................... 12

i

LEAD COUNSEL'S PARTIAL OBJECTION TO SPECIAL MASTER'S CORRECTED REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES
Master File No. CV-07-5944-JST

# TABLE OF AUTHORITIES

## Cases

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994) .......................... 7, 11, 12

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298 (C.D. Cal. July 24, 2013) ..... 7

*Lindy Bros. Builders, Inc. v. American Radiator, Etc.*, 540 F.2d 102 (3d Cir. 1976) ........................ 7

ii

LEAD COUNSEL'S PARTIAL OBJECTION TO SPECIAL MASTER'S CORRECTED REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES
Master File No. CV-07-5944-JST

**INTRODUCTION**

Lead Counsel respectfully objects in part to Special Master Quinn's Corrected Report & Recommendation Re Allocation of IPP Class Counsel Attorneys' Fees (ECF 4976) ("R&R").

Lead Counsel provided the Special Master with allocations of attorneys' fees for all IPP Counsel (except Lingel Winters, who filed a separate fee motion [1]). (ECF 4790 & 4800.). Certain firms objected to their allocations. The Special Master reviewed all allocations and overruled many of the objections, but he also increased allocations to four firms and individuals: (1) Law Offices of Francis O. Scarpulla ("Scarpulla"); (2) Cooper & Kirkham, P.C. ("Cooper"); (3) Theresa Moore ("Moore"); and (4) Lingel Winters ("Winters"), as shown below:

| Firm/Lawyer | Lead Counsel's Proposed Allocations (ECF 4976-1) | SM's Recommended Allocations (ECF 4976) |
|---|---|---|
| Scarpulla | $49,790.74 | $208,223.31 |
| Cooper | $2,345,866.91 | $3,452,040 |
| Moore | $19,625.28 | $64,025.38 |
| Winters | Not addressed | $42,840 |

Lead Counsel objects solely to the R&R's recommended increases in these allocations. Scarpulla, Cooper, and Moore are "insider" objectors who participated, in various degrees, in this litigation. Lead Counsel assigned each of them a lower multiplier. Objections by insider attorneys are highly unusual. As shown below, these lawyers worked at odds with Lead Counsel and other IPP Counsel, to the detriment of the Class, as the Special Master himself determined. And, despite being counsel of record for the Class, they now are openly adverse to it, having appealed the Court's denial of their objections, thereby creating additional effort and expense in settlement approval and delaying distribution of proceeds to class members. Scarpulla and Moore also billed for work (at high rates) that was unassigned and of little or no value to the Class. As to Winters, the Special Master awarded a payout that Lead Counsel views as excessive in view of Winters'

---

[1] Mr. Winters submitted a Fee Declaration separately seeking fees; it was not part of Lead Counsel's Fee Motion. (*See* ECF 4248.) Lead Counsel addressed Winters' motion separately. (*See* ECF 4844; ECF 4844-1.)

1

LEAD COUNSEL'S PARTIAL OBJECTION TO SPECIAL MASTER'S CORRECTED REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES
Master File No. CV-07-5944-JST

lack of involvement in the case and his untimely filings. Finally, Scarpulla and Moore never filed motions seeking fees for work that Lead Counsel excluded from his Fee Petition. The Special Master's recommended allocations are unsupported by the record and should be rejected.

## FACTUAL BACKGROUND

### I. LEAD COUNSEL'S PROPOSED ALLOCATIONS

Lead Counsel set forth the rationales for his proposed allocations in detail in prior filings. *See* Lead Counsel's Omnibus Response to Objections to Proposed Allocation of Aggregate Fee Award to IPP Counsel (ECF 4853) and Lead Counsel's supporting declaration (ECF 4853-1). These specifically refer to the allocations at issue here. (*See* ECF 4853 at 7 (Scarpulla); *id.* at 19 (Cooper); and *id.* at 41 (Moore); ECF 4853-1 at ¶¶ 6-17, 25-27, and 29 (Scarpulla); *id.* at ¶¶ 24-29 and 31-38 (Cooper); and *id.* at ¶¶ 68-72 (Moore).[2]) These are briefly summarized below. Because Lead Counsel did not allocate any fees to Winters, he responded separately regarding Winters' fees. (*See* ECF 4844 and supporting declaration at ECF 4844-1.)

#### A. Scarpulla

Lead Counsel eliminated time spent on work not assigned by Lead Counsel and time spent on the lead counsel motions at inception of the case. This reduced Scarpulla's hours from 185.9 hours to 59.05 hours. Lead Counsel then applied Scarpulla's historical rates to calculate his lodestar. (ECF 4853 at 7-8.) Lead Counsel proposed a multiplier of 0.7495 on a reduced lodestar of $66,431.25, for a total allocation of $49,790.74.

Scarpulla contended that his lodestar was $424,577.50 and sought a 3.0 multiplier, for a total award of $1,273,732.50. (*See* ECF 4818-4, Ex. 4.) But Scarpulla's work did not benefit the Class or contribute to the results achieved. To the contrary, his work adversely affected the efforts of Lead Counsel and other IPP firms. (ECF 4853 at 9-10.)

#### B. Cooper

Lead Counsel proposed a multiplier of 0.8494, for a total award of $2,345,866.91. Cooper

---

[2] The Special Master granted a motion to strike from the Alioto Declaration ¶¶ 22, 23, 26 (only the words "and misleading him regarding Lead Counsel's handling of the case"), 28 (except the first sentence), and 30. (ECF 4949.) Lead Counsel does not rely on the stricken materials.

argued that his lodestar should be exempt from the across-the-board 10% cut to all firms' lodestars, and sought a multiplier of 1.8962, for a total award of $5,236,587.64. (R&R at 17.)

Lead Counsel saw no reason to excuse Cooper from the 10% cut applicable to all firms. He based his decision to apply a downward adjustment to Cooper's multiplier on several factors. Cooper worked at cross purposes to IPP Counsel. (*See, e.g.,* ECF 4853-1 at ¶ 25.) Cooper also urged Lead Counsel to follow advice that would have had drastic consequences for the Class had it been followed. For example, despite their lack of knowledge of the case, Cooper and Scarpulla informed Lead Counsel that Samsung SDI would pay no more than $50 million to settle the IPP case, and advised that Lead Counsel accept that amount. Three weeks later, Samsung SDI agreed to pay $225 million. (*Id.* at ¶ 27.)

Further, Cooper objected to the settlements and the fee award even though it was found to have no standing, thereby creating additional work and expense and delaying the conclusion of this litigation. (ECF 4853 at 20-26; 4853-1 at ¶ 25-26,[3] 27.) Cooper also overstated its legal contributions. (ECF 4853 at 27-29.) Lastly, Cooper has appealed this Court's rulings on the settlements and fee award, thereby causing additional expense and delay. (*See* ECF at 26.)

C.    **Moore**

Lead Counsel proposed a multiplier of 0.7495 on a post-10% cut lodestar of $26,184.38, for a total allocation of $19,625.28. Moore objected, seeking her original lodestar of $209,768.75 for 250.6 hours of work, and a multiplier between 1.5 and 3.0. (*See* ECF 4825; R&R at 21.)

Moore never received any assignments from Lead Counsel and had no client, yet she sought more than half a million dollars in fees. She sought compensation for reading court filings—despite instructions to exclude "read and review" time; for discussing the case with co-counsel; and for conducting unassigned "research" never provided to Lead Counsel. (ECF 4853 at 43.) Consequently, her time did not result in any benefit to the Class. Likewise, her objections to the settlement did not result in the $14 million benefit to the Class she claims credit for, since she never objected to Lead Counsel's total fee request. (*Id.* at 41-42.) In addition, Moore has appealed

---

[3] Lead Counsel excludes the stricken portion of ¶ 26.

settlement approval, creating additional work and delay.

### D. Winters

Winters filed a separate motion for attorneys' fees. (ECF 4808.) Lead Counsel opposed the motion. Lead Counsel established that: (1) Winters' motion and objections were untimely and procedurally improper; (2) Winters had no contact with Lead Counsel after the filing of his complaint, never contacted Lead Counsel regarding the prosecution of the case, and did not report his time to Lead Counsel as requested; and (3) Winters is not entitled to any fees because he was never assigned any work, and the work Winters performed was unnecessary and did not benefit the Class. (*See* ECF 4844 and supporting declaration at 4844-1.)

## II. THE R&R

The Special Master recommended increases in Lead Counsel's proposed allocations to Scarpulla, Cooper and Moore. He also recommended an allocation to Winters.

### A. Scarpulla

Scarpulla raised eight objections to the proposed allocations (not simply his own) and proposed an alternative allocation. (*See* R&R at 9.) The Special Master first concluded that Scarpulla's own hourly rate should be reduced from $1,250 to $1,000, his rate in *TFT-LCD*, because Scarpulla's lodestar and multiplier calculations were "inconsistent and confusing" and his hourly rate of $1,250 was much higher than that of any other attorney (*id.* at 10-11).

The Special Master rejected Lead Counsel's reductions in Scarpulla's time regarding work relating to the California AG's action and concluded that some of Scarpulla's work between 2007 and 2015 had some value to the Class, although he did not specify what that work or value were. The Special Master recommended no reduction in Scarpulla's time, other than the 10% across-the-board cut applied to all firms, the reduction of his billing rate, and the reduction of that time Scarpulla ceded to his former firm, Zelle, for a resulting lodestar of $181,063.75. (*Id.* at 11-12.)

Next, the Special Master turned to the multiplier. He concluded that, while Scarpulla's objection to the release of class members without compensation was a "colorable argument," his other objections regarding notice and ineffective representation by Lead Counsel, all rejected by the Court, "were gratuitous and potentially damaging to the Class." (*Id.* at 14.) He nonetheless

awarded a multiplier of 1.15, resulting in a payout of $208,223.31, in contrast to Lead Counsel's proposed $49,790.74. The Special Master rejected all other objections by Scarpulla. (*Id.*)

### B. Cooper

The Special Master believed that Cooper's involvement with issues involving the California AG brought benefit to the Class, but not Cooper's objections to the settlement and fee award. (*See* R&R at 18.) The "objections to the scope of notice and to the quality of Lead Counsel's leadership definitely showed a lack of collaboration and a disregard of the interests of the Class," and this conduct merited a reduction in the award. (*Id.*) He pointed to Cooper's failure to raise a notice objection early in the approval process; Cooper's near-frivolous objections to Lead Counsel's strategy, which simply assisted professional objectors; and Cooper's appeal of the Court's denial of its objections. (*Id.*) The Special Master, agreeing with Lead Counsel, declined to exempt Cooper from the across-the-board 10% cut to all lodestars. However, he recommended a 1.25 multiplier in light of the firm's legal and financial contributions, increasing the award from $2,345,866.91 to $3,452,040. (*Id.* at 19.)

### C. Moore

The Special Master made the following findings about Moore (R&R at 21-22):

- Moore's "only client relationship was as of counsel to the Joseph Alioto firm";
- Moore did "extraordinarily little work on the case";
- "it is undisputed that Lead Counsel never assigned her any work so that all her time was spent monitoring ECF filings, occasionally offering Lead Counsel unsolicited advice, and doing research that she never submitted to Lead Counsel";
- Moore and the Joseph Alioto firm made no financial contributions and incurred no reimbursable expenses;
- Moore filed objections to the settlements and the fee request; and
- Moore "does not identify a single motion or pleading on which she worked," and fails to "describe a single [] meeting or strategy discussion other than unsolicited e-mails or calls to Lead Counsel."

The Special Master dismissed as a "fairly tale" Moore's contention that she "single-

5

handedly persuaded the Court to reduce the attorney fee award," thereby saving the IPP Class $14 million. (*Id.* at 22.)  He also noted that the Court rejected all of Moore's objections to the settlements, and that she is now appealing the denial of her objections, thus further delaying payment of settlement proceeds to the class members. (*Id.* at 23.)

The Special Master acknowledged that Moore was "certainly not entitled to her full lodestar or to any multiplier," and that the $600-$900 billing rate was "hardly modest." (*Id.* at 23.)  He nonetheless awarded her 74 additional hours—representing one hour per month from January 2009 through February 2015—at a billing rate of $600/hour, with a 1.0 multiplier.  This resulted in an *additional* lodestar of $44,400.  When added to Lead Counsel's proposed allocation of $19,625.28, this resulted in a total payout of $64,025.28. (*Id.*)

### D. Winters

The Special Master considered Winters' fee application untimely and "of dubious substantive merit." (R&R at 24-25.)  He found that Winters billed 14 hours for drafting pleadings and 18 hours for "investigation" that are not substantiated by his time records (*Id.* at 25).  Winters filed a complaint "late in the game, modeled heavily on prior complaints, and thereafter did nothing but review ECF filings," all at $850/hour. (*Id.* at 26.)  The Special Master concluded that "[n]one of his work benefited the class." (*Id.*)

Still, the Special Master credited Winters with one hour a month (as he did Moore), or 34 hours, for review of ECF filings, at a billing rate of $600 (for a total of $20,400); and an additional 32 hours (18 hours of initial fact investigation, plus 14 hours for drafting the complaint), at Winters' normal billing rate of $850 (for a total of $27,200), resulting in a total lodestar of $47,600. (*Id.*)  The Special Master applied a reduction in multiplier to 0.9 because Winters' "repeated disregard of court-ordered procedures in connection with his fee application has inconvenienced and created extra work for Lead Counsel, the Special Master and the Court." (*Id.*)  The Special Master therefore recommended a total payout of $42,840.

## ARGUMENT

### I.   LEGAL PRINCIPLES

As the Special Master recognized (*see* ECF 4976), in exercising its equitable powers to

award attorneys' fees, a court must determine whether an attorney's "'specific services benefited the fund—whether they tended to create, increase, protect or preserve the fund.'" *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994) (quoting *Lindy Bros. Builders, Inc. v. American Radiator, Etc.*, 540 F.2d 102, 112, (3d Cir. 1976)).

Lead counsel are in the best position to evaluate the work contributed by plaintiffs' firms, and assess "in a manner that they believe, in good faith, reflects the contributions of counsel to the prosecution and settlement of the claims." R&R at 4, citing *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML 02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298, at * 316 (C.D. Cal. July 24, 2013).

II.   **THE PROPOSED INCREASES ARE UNWARRANTED.**

   A.   **The Recommended Increases in Allocations to Scarpulla, Cooper and Moore Should Be Rejected.**

Preliminarily, Lead Counsel provides the following background as further explanation for his allocation of fees to Scarpulla, Cooper and Moore.

First, these three firms/attorneys are "insiders," counsel who worked on the case for their clients and the Class, but whose activities in the case have not benefited the Class. They have sought, and continue to seek, through objections and appeals, to upset the settlements, thereby not only delaying payments to their clients and the Class, but also putting any recovery for the Class at risk. The problem is exacerbated in the cases of Scarpulla and Cooper, who have been pressing numerous objections to the settlement and the fees, without any clients. The Court recently held that they have no standing to do so. (ECF 4712 at 35.) IPP Class Counsel incurred hundreds of thousands of dollars in fees and expenses to respond to arguments that Scarpulla and Cooper had no standing to assert in the first place.

For whatever reason—resentment at not being appointed Lead Counsel or over having their fees audited, the desire to obtain further fees for their objections, or other motivation—Scarpulla, Cooper and Moore have now taken on the role of settlement spoilers. They have joined the ranks of the other objectors in this case, most of them so-called professional objectors, who file the same, canned objections in case after case. Their goal is to upset settlements or change settlement terms,

7

LEAD COUNSEL'S PARTIAL OBJECTION TO SPECIAL MASTER'S CORRECTED REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES
Master File No. CV-07-5944-JST

in order to seek fees for "benefit conferred upon the class." Oftentimes their goal is simply to hold up settlements, by filing frivolous appeals (they have filed 11 appeals in this case to date), and using the delay to extract payments in exchange for dismissal of their appeals.

Second, during the litigation phase of this case and unbeknownst to Lead Counsel at the time, Scarpulla began to take on a number of tasks which were not assigned to him, and which certainly were of no benefit to the Class. It now appears that Scarpulla did not accept the Court's refusal to appoint him Lead (or co-Lead) Counsel, but continued to do whatever he pleased—such as meeting with the California AG's office and defense counsel—in contravention of procedures established by the Court in its Order appointing Interim Lead Counsel. (ECF 47.) This is precisely the situation that Order was designed to avoid: splinter groups working without the knowledge of Lead Counsel, and outside his control. But this is precisely what happened in this case.

Lead Counsel had almost no contact with Scarpulla or Cooper while the case against the Defendants was being actively litigated. Scarpulla's time records show that he did virtually no work in the case after Lead Counsel's appointment in May 2008, before taking it upon himself to get involved with the California AG in 2013—six years into the litigation. And Josef Cooper's time is apparently so minimal that he submitted no time records. Scarpulla and Cooper became openly involved in the case only after settlement, in conjunction with IPP counsel's request for attorneys' fees, and Lead Counsel's audit of their time. As for Moore, she had limited involvement in the early years, and no involvement whatsoever after 2008.

Third, Lead Counsel applied the same audit procedures to Scarpulla, Cooper and Moore as he did to the other counsel involved in the case. Although Cooper was initially uncooperative, Cooper's lodestar was ultimately included in the joint Fee Petition. (ECF 4073 at 2.) But Scarpulla refused to conform his time to the standards applied to all IPP firms. (ECF 4853-1, ¶¶ 11-13.) As a result, the joint Fee Petition included only that time approved by Lead Counsel. Scarpulla never filed a separate fee petition. Moore was also uncooperative but eventually some of her time, as approved by Lead Counsel, was included in the joint Fee Petition as well. (*Id.* ¶ 71; ECF 4073 at 3.) But Moore has persisted in seeking fees on disallowed items (therefore not included in the joint Fee Petition), even though, like Scarpulla, she has never filed her own motion

8

LEAD COUNSEL'S PARTIAL OBJECTION TO SPECIAL MASTER'S CORRECTED REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES
Master File No. CV-07-5944-JST

to claim additional fees for such items. Thus, there is no basis for the award of any additional fees to Scarpulla or Moore beyond those requested in the joint Fee Petition.

Lastly, the fact that Scarpulla and Moore failed to file separate fee motions is significant. Both now seek compensation for work that was rejected by Lead Counsel, but neither complied with procedures that would have enabled Class members to review their requests and contributions to the case, and to object if they saw fit.

### 1. Scarpulla

The Special Master's increased allocation to Scarpulla is largely based on certain conclusions that find no support in the record, as shown in the following four examples.

The R&R states: "Scarpulla disagreed with Lead Counsel repeatedly . . . ." (R&R at 13:24.) The R&R provides no support for this statement. In fact, Lead Counsel had almost no contact with Scarpulla over the course of the case until Scarpulla submitted his fee time for audit. Declaration of Mario N. Alioto in Support of Lead Counsel's Partial Objection ("Alioto Decl.") ¶ 4.

Next, the R&R refers to: "Scarpulla's contributions as recognized by Special Master Walker." (*Id.* at 14:12.) The Special Master cites no evidence for this statement. Special Master Walker noted that Scarpulla was "experienced and able," but made no reference to his contributions to *this* litigation. (ECF 3200 at 5:10-12.) In fact, the record confirms that most of Scarpulla's time was spent on unassigned work or tasks unrelated to this litigation. (*See, e.g.,* 4853 at 7; 4853-1, ¶¶ 6-7.) Scarpulla has provided no evidence to the contrary. There has been no showing that Scarpulla's efforts actually benefited the Class.

The R&R also states: "The Special Master believes Cooper and Scarpulla became involved in those issues at the urging of Special Master Walker and did so to benefit the Class." (*Id.* at 18:7-8.) "Special Master Walker initiated and requested Scarpulla's involvement, . . . ." (*Id.* at 12:3-4.) Again, the R&R gives support for these statements, and Special Master Walker's R&R implies otherwise: "Two [IPP] counsel *have presented themselves* and expressed willingness to assume these responsibilities [to work with IPP lead counsel]: Francis O. Scarpulla and Josef D. Cooper." (ECF 3200 at 5:11-12 (emphasis added).)

Lastly, the R&R states: "Lead Counsel proposed the very low allocations for Cooper,

9

LEAD COUNSEL'S PARTIAL OBJECTION TO SPECIAL MASTER'S CORRECTED REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES
Master File No. CV-07-5944-JST

Scarpulla and Moore in part as a result of his irritation and resentment over their uncooperative conduct toward him personally as described above." (R&R at 27:16-18.) Again, there is no support for this statement. Lead Counsel made reductions in conformance with objective audit guidelines applied to all firms, and in conformance with recommendations by other IPP counsel. (*See, e.g.,* 4853 at 7; 4853-1 at ¶ 6.) Moreover, the R&R ignores uncontroverted evidence showing that Scarpulla advocated that the Class accept much lower settlements from Defendants than Lead Counsel was ultimately able to negotiate. What's worse, he engaged in unauthorized settlement negotiations with defense counsel, thereby creating the specter of a reverse auction and adversely impacting Lead Counsel's ability to settle the case. (*Id*. ¶¶ 24-28 (unstricken portions).) Scarpulla may be an experienced antitrust practitioner, but his demonstrated lack of knowledge regarding the evidence in *this* case led him to take actions that were *not* in the best interests of the Class. Compensating him at $1000 per hour for these activities defies logic.

In sum, neither the R&R nor Scarpulla has provided an evidentiary basis for any increase. In contrast, Lead Counsel justified the proposed allocation to Scarpulla. He showed that Scarpulla's time was cut because Scarpulla spent time on unassigned and unrelated tasks, caused delay and additional work and expense, and worked at cross-purposes through objections and appeals to this Court and the Ninth Circuit. (*See* ECF 4853 at 7-10.)

### 2. Cooper

The Special Master's decision to recommend an upward adjustment for Cooper should be rejected. Lead Counsel respectfully disagrees with the Special Master's conclusion that Cooper did not work at cross-purposes with the Class. (R&R at 18.) As discussed above, Cooper injected himself into unauthorized activities which, because of his limited knowledge of the case, led him to recommend taking actions that would have been disastrous for the Class had they been followed. (*See, e.g.,* ECF 4853-1 at ¶¶ 25, 27.) And, as the Special Master acknowledged, certain of Cooper's objections "definitely showed a lack of collaboration and a disregard of the interests of the Class." (R&R at 18.) He also agreed that Cooper's conduct was "counter-productive and potentially damaging to the IPP Class." (*Id*.) Lead Counsel submits that this conduct—highly unusual on the part of class counsel in these types of cases—does not warrant a multiplier of 1.25,

which unfairly allows Cooper to leapfrog over counsel who did not engage in similar conduct.

### 3. Moore

The Court should approve the allocation originally proposed by Lead Counsel. Moore is not entitled to more, given the Special Master's own findings that Moore did "extraordinarily little work on the case"; that she is delaying the payment of proceeds by appealing the denial of her meritless objections; and that her contention that she "single-handedly persuaded the Court to reduce the attorney fee award" is a "fairly tale." (R&R at 21-22.) Indeed, the Special Master agreed that "Moore's objections *did not benefit the class*." (*Id.* at 23 (emphasis added).) Her "contributions," such as they are, did not "tend[] to create, increase, protect or preserve the fund.'" *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d at 1308. Further, the Special Master's decision to award Moore one hour per month is completely arbitrary and has no basis. There is no indication that Moore dealt with clients or that she even represented clients. (*See* ECF 4853 at 41-43; 4853-1 at ¶¶ 68-70.) The recommended award to Moore is unfair to other counsel in this case who contributed much more to the case than Moore and who eliminated their "read and review" time.

The Special Master's recommended multiplier of 1.0 should be rejected. He characterizes Lead Counsel's proposed 0.75 (rounded) multiplier as punitive. It is not. It is simply a fractional multiplier, designed to reflect Moore's utter lack of contribution to the success of the litigation, and the fact that her actions have meant more work, expense and delay.

### B. The Court Should Reduce The Recommended Winters Allocation

Lead Counsel does not object to a fee award to Winters. However, the Special Master recommended allowing 34 hours for "read and review" time, 18 hours of fact investigation, and 14 hours for drafting the complaint, for a total of 66 hours. This recommendation is excessive.

First, Winters should receive no credit at all for "read and review time." Lead Counsel expressly instructed attorneys to omit such time from their fee requests. (*See* ECF 4853 at 43; 4853-1 ¶ 70.) In addition, although Winters contends he needed to keep his clients informed of case developments, nothing in his time records indicates that he *did* keep his clients informed. In fact, his clients never even filed claims. *See* accompanying Alioto Decl. ¶ 2. Second, just like

Moore, Winters has made no showing that his work tended "'to create, increase, protect or preserve the fund.'" *Class Plaintiffs v. Jaffe & Schlesinger, P.A.,* 19 F.3d at 1308 (citation omitted). His allocation should reflect these facts.

Lead Counsel proposes compensating Winters as follows: no "read and review" time; 5 hours for drafting the complaint (rather than the recommended 14 hours), and 10 hours for fact investigation (rather than 18 hours). At Winters' normal billing rate of $850/hour, this results in a total lodestar of $12,750 (15 hours times $850). After applying the recommended 0.9 multiplier, the total payout is $11,475.

## CONCLUSION

For all the foregoing reasons, the Court should adopt the allocations to Cooper, Scarpulla and Moore originally proposed by Lead Counsel, and it should reduce the recommended award to Winters to $11,475. Lead Counsel requests that the Court order that the total reduced amount be used to defray the continuing costs of this case.

Dated:  November 11, 2016

Respectfully submitted,

 */s/ Mario N. Alioto*

Mario N. Alioto (56433)
malioto@tatp.com
Joseph M. Patane (72202)
jpatane@tatp.com
Lauren C. Capurro (241151)
laurenrussell@tatp.com
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415-346-0679

**Lead Counsel for Indirect Purchaser Plaintiffs**

12
LEAD COUNSEL'S PARTIAL OBJECTION TO SPECIAL MASTER'S CORRECTED REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES
Master File No. CV-07-5944-JST