UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917<br>Case No. C-07-5944 JST<br>**ORDER RE MOTIONS IN LIMINE**<br>ECF No. 3558, 3583 |
| This Order Relates To:<br><br>Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al., No. 11-cv-05513-JST<br><br>Best Buy Co., Inc., et al. v. Technicolor SA, et al., No. 13-cv-05264-JST<br><br>Target Corp. v. Chunghwa Pictures Tubes, Ltd., et al., No. 3:07-cv-05514-JST<br><br>Target Corp. v. Technicolor SA, et al., Case No. 3:11-cv-05514-JST<br><br>Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd., et al., No. 11-cv-05502-JST<br><br>Sears, Roebuck and Co., et. al. v. Chunghwa Picture Tubes, Ltd., et al., No. 11-cv-5514<br><br>Sharp Electronics Corporation, et al. v. Hitachi, Ltd., et al., No. 13-cv-01173-SC<br><br>Sharp Electronics Corp., et al. v. Koninklijke Philips Electronics N.V., et al., No. 13-cv-2776SC<br><br>ViewSonic Corporation v. Chunghwa Picture Tubes, Ltd., et al., No. 14-cv-02510 | |

Below are the Court's rulings on two of the currently pending motions in limine.

Direct Action Plaintiffs' Motion in Limine No. 11 (ECF No. 3558)

On December 5, 2012, the European Commission ("EC") fined seven international groups of companies a total of €1,470,515,000 for participating in global cathode ray tube ("CRT") cartels. By this motion, Plaintiffs seek "to establish the admissibility and preclusive effect of certain of the EC Decision's findings, which are identified in highlighting on attached Exhibit A" to the motion.[1] If the Court denies this request, Plaintiffs seek an order admitting the EC Decision into evidence.

Plaintiffs' request for preclusive effect invokes the doctrine of offensive nonmutual issue preclusion. The Ninth Circuit has specified that the doctrine is available

> only if (1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action.

Syverson v. Int'l Bus. Machines Corp., 472 F.3d 1072, 1078 (9th Cir. 2007) (citations omitted). Even when these requirements are met, however, the district court retains "broad discretion" "to take potential shortcomings or indices of unfairness into account when considering whether to apply offensive nonmutual issue preclusion." Id. at 1078 (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979)). The "potential shortcomings" or "indices of unfairness" include whether

> (1) "the plaintiff had the incentive to adopt a 'wait and see' attitude in the hope that the first action by another plaintiff would result in a favorable judgment" which might then be used against the losing defendant; (2) the defendant had the incentive to defend the first suit with full vigor, especially when future suits are not foreseeable; (3) one or more judgments entered before the one invoked as preclusive are inconsistent with the latter or each other, suggesting that reliance on a single adverse judgment would be unfair; and, (4) the defendant might be afforded procedural opportunities in the later action that were unavailable in the first "and that could readily cause a different result."

Syverson v. Int'l Bus. Machines Corp., 472 F.3d 1072, 1078–79 (9th Cir. 2007) (quoting Parklane, 439 U.S. at 330–31). The Court may also consider the lack of a jury trial in the prior proceeding

---

[1] The Court believes the appropriate exhibit identifier is actually "J."

2

as an additional, non-dispositive factor weighing against the application of offensive collateral estoppel.

Here, the Court concludes that the Defendants "might be afforded procedural opportunities in [this] action that were unavailable in the first and that could readily cause a different result." Among these differences are the ability of the Defendants here to take discovery and use compulsory process and the ability to cross-examine witnesses. Were Defendants able to cross-examine witnesses, or introduce evidence obtained in discovery, it is conceivable that a jury might rule differently than the EC. Also, the prior proceeding was not conducted before a jury, which further militates against the application of offensive non-mutual issue preclusion. For these reasons, the Court denies Plaintiffs' request.

The Court also denies Plaintiffs' request to admit the EC Decision into evidence, finding it barred by Federal Rule of Evidence 403. It is unclear what probative value it has, since many of its statements do not constitute clear factual conclusions. Finding 109, for example, states that "Contemporaneous evidence also *suggests* that the price increases in CDT were, *at times*, passed on to the downstream market of production of computer monitor tubes." ECF No. 3580-12 at 27 (emphasis added). There are numerous difficulties with this passage: it is difficult to know how firm or definite the EC's conclusion is when it states that contemporaneous evidence "suggests" that conclusion; it is not clear which firms passed on their price increases downstream and which did not; and it is not clear when this happened and when it did not, given that the EC concluded that the practice only happened "at times." Finding 111, to take another example, sheds even less light on the facts. It states that

> The CDT Producers also agreed on coordinated output restrictions, aimed at reducing oversupply and achieving target prices and market shares (see for example Recitals (180). These arrangements began as arrangements to [confidentiality claim pending] and gradually developed into [confidentiality claim pending]. In addition, CDT meeting participants organized [confidentiality claim pending].

ECF No. 3580-12 at 27. The problems with this passage are self-evident. The jury cannot attach significance to conclusions whose entire import has been obscured by redactions.

3

1   Even without these problems, the Court would still exclude the document.  Defendants

2   would be required to respond to it by demonstrating what evidence was not before the EC; to

3   cross-examine the evidence that was before the EC; and, in essence, to conduct a mini-trial of the

4   EC proceeding.  One function of Rule 403 is to avoid the introduction of "large quantities of

5   extrinsic evidence to create mini-trials regarding tangentially related matters."  Ioane v. Spjute,

6   No. 1:07-CV-0620 AWI EPG, 2016 WL 4524752, at *11 (E.D. Cal. Aug. 29, 2016).  An even

7   greater danger beyond the waste of time is the unfair prejudice to Defendants.  If a jury hears that

8   some or all of the Defendants have been found liable by the EC, it will be very difficult for the

9   jury not to find them liable as well.

10   Plaintiffs' Motion in Limine Number Eleven is denied.

11   Defendants' Motion in Limine No. 2 (ECF No. 3583)

12   By this motion, Defendants seek "to exclude all evidence or mention of any

13   antitrust investigations in foreign jurisdictions."  ECF No. 3583 at 1.  The motion is addressed to

14   the broad category of antitrust investigations, adjudications, and orders, but does not identify the

15   specific evidence that Defendants seek to exclude (with one exception, which the Court addresses

16   below).

17   Defendants' motion as to this broad category of information is denied.  Defendants have

18   not placed the evidence in question before the Court, and the Court cannot rule in a vacuum.  See

19   Harvey v. Navajo Cty., No. 3:10-CV-08025 JWS, 2012 WL 1556558, at *2 (D. Ariz. May 2,

20   2012) ("The court may exclude specific photographs when it rules on the parties' exhibit

21   objections in a separate order, but the motion *in limine* will be denied because it sweeps too

22   broadly through the exhibits."); Mabrey v. Wizard Fisheries, Inc., No. C05 1499 RSL, 2007 WL

23   1876540, at *1 (W.D. Wash. June 27, 2007) ("In their motion in limine to 'exclude any opinions

24   by plaintiff's experts which are not based on the actual facts of the case,' defendants do not

25   identify any specific opinion to be excluded . . . .  Without offering a specific opinion to be

26   excluded under this rule, the Court cannot preemptively grant defendant's motion in limine.");

27   Coulbourn v. Air & Liquid Sys. Corp., No. CV-13-08141-PCT-SRB, 2016 WL 5921255, at *3 (D.

28   Ariz. Jan. 6, 2016) ("Without knowing the specific pieces of evidence Defendants seek to exclude

United States District Court
Northern District of California

1  the Court cannot determine its relevance[.]").

2  Subject to the exception below, Defendants' Motion in Limine Number Two is therefore
3  denied without prejudice to Defendants objecting to specific items of evidence at trial.

4  The one exception is a press release issued by the Korea Fair Trade Commission
5  ("KFTC"), which describes in very general terms that body's determination that manufacturers of
6  color display tubes ("CDTs"), a particular kind of the cathode ray tube at issue in this case,
7  "agreed on fixing prices and reducing output of CDTs in . . . secret meetings which took place in
8  various countries." ECF 3787-2 at 2.

9  The KFTC press release is inadmissible under Federal Rule of Evidence 403 because its
10 admission would result in unfair prejudice and the undue consumption of time. The unfair
11 prejudice would result from the dispositive effect a jury is likely to give the document, at least as
12 to any Defendant mentioned in it. The undue consumption of time would result from Defendants'
13 need to introduce evidence litigating the merits of the KFTC press release as opposed to the
14 existence of the conspiracy alleged in Plaintiffs' complaint.

15 IT IS SO ORDERED.

16 Dated: November 15, 2016

_____
JON S. TIGAR
United States District Judge