UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Order Relates To:<br><br>*Best Buy Co., Inc., et al. v. Hitachi, Ltd., et al.,No. 11-cv-05513-JST*<br><br>*Best Buy Co., Inc., et al. v. Technicolor SA, et al., No. 13-cv-05264-JST*<br><br>*Target Corp. v. Chunghwa Pictures Tubes, Ltd., et al., No. 3:07-cv-05514-JST*<br><br>*Target Corp. v. Technicolor SA, et al., Case No. 3:11-cv-05514-JST*<br><br>*Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd., et al., No. 11-cv-05502-JST*<br><br>*Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Technicolor SA, et al., No. 13-cv-05261-JST*<br><br>*Sears, Roebuck and Co., et. al. v. Chunghwa Picture Tubes, Ltd., et al., No. 11-cv-5514*<br><br>*Sears, Roebuck and Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd., No. 11-cv- 05514*<br><br>*Sharp Electronics Corporation, et al. v. Hitachi, Ltd., et al., No. 13-cv-01173-JST*<br><br>*Sharp Electronics Corp., et al. v. Koninklijke Philips Electronics N.V., et al., No. 13-cv-2776-JST*<br><br>*ViewSonic Corporation v. Chunghwa Picture Tubes, Ltd., et al., No. 14-cv-02510* | MDL No. 1917<br><br>Case No. C-07-5944 JST<br><br>**ORDER ON MOTIONS *IN LIMINE* RE PASS-ON ISSUES AND BARGAINING POWER** |

The parties organized the pending motions *in limine* into nine categories. See ECF No. 4603, Ex. A. This order addresses the seventh category, entitled "Motions re Pass-On Issues and Bargaining Power," which contains five motions: four filed by the Direct Action Plaintiffs ("DAPs") and one filed by Defendants. Id. at A-10, A-11, A-12. Defendants' motion is entitled "Defendants' Motion *In Limine* #16: To Permit Evidence and Argument Regarding Upstream Pass-On and Plaintiffs' Bargaining Power." ECF No. 3597 ("Def. Mot."). The DAPs submitted their motions as part of a larger filing entitled "Motions *In Limine* (Nos. 1-18)." ECF No. 3558 ("DAP Mot."). They are listed as motions number two, four, ten,[1] and sixteen within that filing. Id. The motions are fully briefed[2] and suitable for disposition without oral argument pursuant to Local Rule 7-1(b).

The Court finds as follows:

| Motion | Ruling |
| --- | --- |
| Defendants' MIL No. 16: To Permit Evidence and Argument Regarding Upstream Pass-On and Plaintiffs' Bargaining Power | DENIED |
| DAPs' MIL No. 4: Motion To Exclude Evidence Or Argument Regarding Plaintiffs' Purported "Market Power" | GRANTED |
| DAPs' MIL No. 10: Motion to Exclude Evidence or Argument Regarding Incomplete Pass-Through of Overcharges Through Affiliate Entities | GRANTED. In addition, the Court excludes evidence or argument regarding incomplete pass-through offered by the DAPs for the purpose of calculating damages. |
| DAPs' MIL No. 16: Motion to Exclude Evidence of or References to the Retailer Plaintiffs Purchasing Finished Products Containing CRTs from Plaintiff ViewSonic or Plaintiff Sharp | GRANTED |
| DAPs' MIL No. 2: Exclude Evidence or Argument Regarding Downstream Pass-On | GRANTED |

---

[1] The Court also ordered supplemental briefing on the separate but related issue of whether the DAPs' evidence of upstream pass-on should be excluded. ECF Nos. 4674 ("DAP Suppl. Br."); 4675 ("Def. Suppl. Br.").

[2] ECF Nos. 3676-4 ("Def. Opp'n"), 3757-4 ("DAP Reply"), 3654 ("DAP Opp'n"), 3666 ("Sharp Opp'n"), 3770 ("Def. Reply").

I.  **DEFENDANTS' MIL NO. 16: TO PERMIT EVIDENCE AND ARGUMENT REGARDING UPSTREAM PASS-ON AND PLAINTIFFS' BARGAINING POWER**

Defendants move the Court "to permit evidence and argument regarding upstream pass-on[3] and Plaintiffs' bargaining power." Def. Mot. at 1. Defendants assert such evidence is probative of Best Buy's state law claims, whether the DAPs' federal claims satisfy the FTAIA, whether the DAPs have established antitrust injury, and whether the DAPs' damages calculations are methodologically sound. Because Best Buy has since settled, the portion of Defendants' motion as to Best Buy claims is denied as moot. As to what remains, the motion is denied.

**A.  Legal Standard**

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. "The court may exclude relevant evidence," however, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

**B.  Discussion**

**1.  Upstream Pass-On**

Defendants concede that Illinois Brick Co. v. Illinois, 431 U.S. 70 (1977) and Royal Printing Co. v. Kimberly-Clark Corp., 621 F.2d 323 (9th Cir.1980), prohibit the admission of pass-on calculations to determine damages. Nevertheless, Defendants argue that such evidence should be admitted where probative of other issues.

To resolve this question, the Court looks to the underlying rationales of Illinois Brick and Royal Printing: (1) the importance of avoiding evidentiary complexities, (2) the risk of duplicative recoveries, and (3) the importance of "private attorneys general." Illinois Brick, 431 U.S. at 745-46; Royal Printing, 621 F.2d at 325-26; see also MSJ Order re Standing at 8-9. Although allowing pass-on calculations outside of the damages context does not implicate the second and third

---

[3] "Upstream pass-on" (also called "upstream pass-through") is the amount of a collusive overcharge passed from entities higher in the distribution chain to entities down the chain. See generally ECF No. 4742 ("MSJ Order re Standing") at 10-12. Here, it refers to the amount of the alleged overcharge CRT Finished Product Manufacturers passed on to the DAPs.

rationales, it poses the same evidentiary complexities, *i.e.*, "additional long and complicated proceedings involving massive evidence and complicated theories." Hanover Shoe, Inc. v. United Shoe Mach. Corp., 392 U.S. 481, 493 (1968). For that reason, allowing evidence of pass-on calculations, even when offered for reasons other than determining damages, risks wasting time, confusing the issues, and causing undue delay. Insofar as such evidence suggests to the jury that the DAPs deserve only damages commensurate with the amount passed on to them, evidence of pass on also risks misleading the jury and unfairly prejudicing the DAPs. The Court therefore finds that, absent a compelling need, the risks of permitting upstream pass-on evidence substantially outweigh the probative value regardless of the purpose for which the evidence is offered. See Fed. R. Evid. 403.

Defendants contend the need for pass-on evidence in this case is substantial. The evidence should be allowed, they assert, because it is necessary to determine (1) whether the DAPs' claims satisfy the FTAIA, (2) whether the DAPs have established antitrust injury, and (3) whether the DAPs' damages calculations are methodologically sound. The Court addresses each of these arguments in turn.

### a. The FTAIA

Defendants claim the DAPs will need to show that CRT Finished Product manufacturers passed on some of the overcharge to the DAPs to satisfy the "direct effects" exception of the FTAIA. This argument has no merit. First, Defendants do not have standing to ask the Court to admit evidence they claim *the DAPs* will need to introduce in order to meet *the DAP's* burden of production. Second, the DAPs do not necessarily need to satisfy the direct effects exception. If the DAPs choose to pursue only an import commerce theory, evidence of upstream pass through will be irrelevant. Third, even if the DAPs pursue a direct effects theory, they can meet their burden of production without engaging in pass-on calculations. Indeed, they probably already have. See ECF No.4910 ("FTAIA MSJ Order") at 7-9.

The Ninth Circuit's opinion in United States v. Hsiung is in accord. 778 F.3d 738, 759-60 (9th Cir. Jan 30, 2015) cert. denied, 135 S. Ct. 2837 (June 15, 2015). There, the panel concluded on similar facts "that the conduct was sufficiently 'direct, substantial, and reasonably foreseeable'

4

with respect to the effect on United States commerce." Id. at 759.  The Ninth Circuit reasoned that the component product manufactured by the defendants was a substantial portion of the cost of the finished products purchased by plaintiffs.  Id.  The court also found that the evidence

> underscored the integrated, close and direct connection between the purchase of the price-fixed [goods], the United States as the destination for the products, and the ultimate inflation of prices in finished products imported to the United States.  The direct connection was neither speculative nor insulated by multiple disconnected layers of transactions.

Id.  So too here.  See FTAIA MSJ Order at 7-9 (Plaintiffs' evidence "shows many hundreds of conspiratorial meetings taking place all over the world, including in the United States, at which participants reached explicit agreements on CRT prices, production levels, market shares and customers.  The United States was the world's largest market for CRTs during the relevant time frame, and Defendants were well aware of the effect their price-fixing agreements were having on the prices paid for CRTs and products containing CRTs.  The same evidence can fairly be read to demonstrate that one goal of the conspiracy was to maintain these prices at an artificially high level.").

The Court agrees with Defendants that if the DAPs elect to present evidence of specific pass-through amounts to show the effect was direct and substantial (assuming the Court allows such evidence to be admitted) then Defendants are entitled to present their own pass-through evidence in rebuttal.  The more difficult question is whether Defendants ought to be able to present pass-on evidence even if the DAPs do not.  If permitted, Defendants will offer the testimony of "expert witness Professor Janusz Ordover, who will testify that only about 70% of the overcharge allegedly paid by the finished product manufacturers was passed on to the Plaintiffs."  Def. Opp'n at 52.  Presumably Defendants will then argue to the jury that because prices paid by the DAPs only increased by 70% of the total overcharge amount, the effect on U.S. commerce was neither direct nor substantial.

An effect is direct under the FTAIA if the effect follows "as an immediate consequence of the defendants' activity."  United States v. LSL Biotechnologies, 379 F.3d 672, 680 (9th Cir. 2004).  The pass-on amount, however, while probative of *magnitude*, does not help determine

whether it was *direct*.

As to whether the effect was substantial, Defendants suggest that insofar as the pass-on rate for a given DAP was relatively low, it is more likely the effect was insubstantial. The test, however, is not whether the transactions at issue had a substantial effect *on the DAPs*, but whether the conspiracy's effect was substantial *on domestic commerce*. See F. Hoffmann–La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 161 (2004); Hsiung, 778 F.3d at 751. Quantifying the rate at which *particular* CRT Finished Product Manufacturers passed on the alleged overcharge to *certain* customers (here, the DAPs) does not get Defendants very far on that issue. To the extent Defendants' evidence can be understood as quantifying the effect on U.S. commerce more generally, it is hard to see how Defendants' evidence showing that 70% of the overcharge was passed on to purchasers in the United States supports Defendants' assertion that the effect was insubstantial. If anything, it seems to support the opposite conclusion. See United States v. Dean, 980 F.2d 1286, 1288 (9th Cir. 1992) ("For evidence to be relevant it must be probative of the proposition it is offered to prove, and . . . the proposition to be proved must be one that is of consequence to the determination of the action."). Regardless, to the extent it is relevant, the probative value is significantly outweighed by the risk that permitting pass-on calculations will confuse the issues, cause undue delay, waste time, mislead the jury, and unfairly prejudice the DAPs. See Fed. R. Evid. 403.

Finally, Defendants argue that because only 70% of the overcharge was passed on to the DAPs, "roughly one-third of the damages claimed by the Plaintiffs cannot be tied to any 'effect' on domestic commerce, and cannot 'give rise to' Plaintiffs' claim." Def. Opp'n at 52. This argument fails as a matter of law. The FTAIA is an element of liability, not a limit on damages. See Hsiung, 778 F.3d at 751-53. That the DAPs' damages might exceed the extent of the effect on domestic commerce because of the Ninth Circuit's requirement that the plaintiff sue "for the entire amount of the overcharge" is irrelevant. Royal Printing, 621 F.2d at 327.

### b. Antitrust Injury

Next, Defendants claim that to establish "antitrust injury" "Plaintiffs will have to prove their economic injury by showing that overcharges on CRTs were passed on to them by the [CRT

6

Finished Products] manufacturers -- in other words, they will have to present upstream pass-on evidence, and defendants must be allowed to rebut it." Def. Mot. at 8. Notwithstanding Defendants' use of the terms "antitrust standing" and "antitrust injury," the substance of their argument is that the DAPs will need to present evidence of upstream pass-on to establish injury-in-fact.[4] See Philip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 335 (4th ed. 2014) (explaining the difference between injury-in-fact and antitrust injury).

The Court is not convinced. Defendants cannot move the Court to admit evidence they claim will be submitted *by the DAPs* in order to meet *the DAP's* burden on injury-in-fact. Moreover, the DAPs need not quantify the precise extent to which they were harmed in order to satisfy their burden of production. See Knutson v. Daily Review, Inc., 548 F.2d 795, 811 (9th Cir. 1976) (quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 114 n.9 (1969) ("The plaintiff must prove some damage, but 'proving the fact of damage . . . is satisfied by . . . proof of some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage.'"). Finally, the evidence Defendants seek to present -- that 70% of the overcharge was passed on to the DAPs -- is not probative of Defendants' assertion that the DAPs did not suffer injury-in-fact. Indeed, it proves the opposite.

### c. Rebutting The Methodology Of The DAPS' Damages Calculations

Though both parties acknowledge that the introduction of pass-on evidence to calculate damages is improper, both attempt to introduce their own evidence for that purpose while contesting the other's ability to do the same. Dr. Alan Frankel, the DAPs' damages calculation expert, estimated a 100% pass-through rate. ECF No. 3596-5 ("Frankel Report") at ¶ 31. Defendants argue they are entitled to rebut Dr. Frankel's estimates with evidence "showing that any pass-through was far less than 100%." Def. Mot. at 6. Specifically, "[t]here is defense expert

---

[4] Although Defendants recite the requirements of "antitrust standing" and "antitrust injury," those concepts have nothing to do with the substance of their motion. To the extent Defendants are attempting through their motion *in limine* to re-litigate arguments presented in their motions for summary judgment, the Court declines the invitation to reconsider those issues.

1  testimony . . . that the pass-through rate was, in fact, no more than between 60% and 70%." Id.
2  The Court rejects both parties' arguments.  Not only is pass-through irrelevant to damages, it is
3  expressly barred by Royal Printing.  See 621 F.2d at 327.
4      Royal Printing held that indirect purchasers suing under the ownership and control
5  exception are required to sue "for the entire amount of the overcharge." Id. at 327; see also id.
6  (holding expressly that the indirect purchaser "c[ould] *not* sue . . . only for the portion of the
7  overcharge that was passed on to it through [the direct purchaser]").  The court reasoned that if the
8  indirect purchaser sued only for the amount of the overcharge it paid, the court would be forced to
9  determine "what portion of the illegal overcharge was 'passed on' to [the indirect purchaser] and
10  what part was absorbed by the middlemen [*i.e.*, the direct purchaser]." Id.  Such a process would
11  be unacceptable, concluded the court, because it would "involve all the evidentiary and economic
12  complexities that Illinois Brick clearly forbade." Id.
13      Defendants motion as to pass-on calculations is denied.

### 2. The DAPs' Bargaining Power

15      Defendants claim evidence of the DAPs' bargaining or market power is highly probative of
16  the DAPs' ability to negotiate favorable terms for the CRT Finished Products they purchased from
17  Defendants' affiliates.  Def. Opp'n at 24.  The DAPs' ability to negotiate favorable terms, in turn,
18  is purportedly relevant to "contest whether Plaintiffs have proved that the 'domestic effects
19  exception' of the FTAIA is satisfied . . . [and] whether Plaintiffs have established [injury-in-
20  fact]."[5]  Id.  The DAPs assert that any reference to their bargaining or market power is irrelevant
21  and inherently prejudicial because "'[m]arket power' is a legal term with specific implications [of
22  wrongdoing] under the Sherman Act." DAP Mot. at 22.  Defendants counter that there is no risk
23  of unfair prejudice because Defendants do not intend to argue that the DAPs violated the Sherman
24  Act.  Def. Opp'n at 24.  Further, because the term "market power" is not inherently derogatory or
25  pejorative, Defendants contend there is no risk of unfair prejudice.  Id.

---

[5] As with evidence of upstream pass-on, Defendants use the term "antitrust injury" but the substance of their argument relates to injury-in-fact.  Defendants also claim that evidence of market power is relevant to "address express overcharge pass-through assumptions made by Plaintiffs' damages expert." Id.  As explained infra Section III, however, neither party will be permitted to submit evidence of pass-through on the issue of damages.

1    Defendants claim evidence of the DAPs' bargaining power is probative of injury-in-fact
2    insofar as the DAPs' bargaining power made it more likely that the DAPs were able to avoid
3    paying an overcharge. The Court is not convinced. In order to be relevant to injury-in-fact, it is
4    not enough for the evidence to suggest the DAPs paid only a portion of the overcharge; the
5    evidence must make it more likely that the DAPs did not pay *any* overcharge. Defendants' own
6    experts, however, estimate a pass-on rate 70% based in part of the DAPs' market power. See Def.
7    Opp'n at 52. Further, whether the DAPs paid an overcharge and suffered injury-in-fact is a
8    function of whether the price they paid for CRT Finished Products increased as a result of the
9    conspiracy, not whether they used their purported market power as leverage during price
10   negotiations.

11   Notwithstanding the forgoing analysis, the evidence may still be minimally relevant. In
12   theory at least, a firm with market power is more capable of completely avoiding an overcharge
13   than a firm that lacks it, all else equal. The probative value of that consideration, however
14   attenuated, may be sufficient to clear Rule 401's relatively low bar. As explained previously,
15   however, the slight probative value of this evidence is substantially outweighed by many of the
16   risks enumerated in Rule 403.

17   As to the direct effects exception of the FTAIA, Defendants contend the DAPs' ability to
18   negotiate low prices due to their market power makes it less likely the DAPs paid a significant
19   overcharge. That, in turn, makes it less likely the impact on U.S. commerce was direct and
20   substantial as required by the FTAIA. As already explained, an effect is direct under the FTAIA if
21   it follows "as an immediate consequence of the defendants' activity." LSL Biotechnologies, 379
22   F.3d at 680. That the DAPs' bargaining power may have had an impact on the *degree* of that
23   effect, however, is irrelevant to whether the effect was *direct*. As to whether the effect was
24   substantial, evidence of the DAPs' bargaining power is even less probative than evidence of pass-
25   on calculations. Whereas the pass-on rates of Defendants' experts could potentially be
26   extrapolated to the U.S. market more generally, Defendants fail to explain how a particular DAPs'
27   bargaining power is relevant to the conspiracy's effect on U.S. commerce as a whole. Even if the
28   evidence was somewhat relevant to that question, it would still be inadmissible on Rule 403

United States District Court
Northern District of California

9

grounds, as explained below.

Evidence of the DAPs' market power raises Rule 403 concerns, but not for the reasons set out by the DAPs. The DAPs suggest, implausibly, that the jury will have sufficient legal knowledge to know that the term "market power" has "specific implications" under the Sherman Act. DAP Mot. at 22. This is a price-fixing case as to which market power is not an element. Even if market power was an element, the Sherman Act does not view it as inherently wrongful.

Evidence of market power, however, could be unfairly prejudicial in other ways. For example, it might suggest that Defendants conspired to combat market power downstream. Jurors might also be unfairly prejudicial towards large corporate entities that are able to pressure suppliers to accept unfavorable terms. Further, evidence of market power showing that the DAPs' actual injuries were far less than the entire overcharge might lead jurors to conclude that awarding the full overcharge would amount to an unjustified windfall. Cf. Brooks v. Cook, 938 F.2d 1048, 1052 (9th Cir. 1991) (holding on the similar issue of whether a jury should be aware of treble damages that "the fear is that a jury, informed of plaintiff's right to additional funds, will view the money as a windfall and take steps to offset it.").

Evidence of market power is also potentially problematic on other Rule 403 grounds. As to injury-in-fact, insofar as the parties can simply point to prices to prove injury or lack thereof, evidence of the DAPs' market power is needlessly cumulative and indirect. Further, evidence such as market power that focuses the jury's attention on how much the DAPs actually paid in overcharge risks confusing the issues. Liability and damages will largely turn on whether Defendants' conspired and the amount of the entire overcharge. Lengthy proceedings about how much of the overcharge was likely passed on due to the DAPs' market power is likely to cause undue delay and waste time.

Defendants' motion as to market power is therefore denied.

**C.  Conclusion**

Defendants' motion is denied.[6]

---

[6] Among other DAPs, Defendants' motion was filed with respect to DAP Sharp, even though Sharp is a direct purchaser to whom the issue of upstream pass through does not apply. Defendants' motion with respect to Sharp is therefore denied for this independent reason.

10

## II. DAPS' MIL NO. 4: MOTION TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING PLAINTIFFS' PURPORTED "MARKET POWER"

Having denied Defendants' motion to admit evidence of market power, the question on the DAPs' motion is whether the Court should exclude such evidence on a motion *in limine* or defer ruling if and until an objection is raised at trial. For the reasons provided supra Section I.B.2, the Court finds that evidence of the DAPs' market power is inadmissible on Rule 403 grounds, subject to further proof at trial. Accord Costco Wholesale Corp. v. AU Optronics Corp., No. C13-1207RAJ, 2014 WL 4674390, at *3 (W.D. Wash. Sept. 17, 2014) ("This ruling excludes evidence that, Costco's bargaining power allowed it to obtain better prices than others, but it does not prohibit evidence or argument about the prices Costco paid for the finished products at issue.").

The DAPs' motion is granted.

## III. DAPS' MIL NO. 10: MOTION TO EXCLUDE EVIDENCE OR ARGUMENT REGARDING INCOMPLETE PASS-THROUGH OF OVERCHARGES THROUGH AFFILIATE ENTITIES

The DAPs move the Court to prohibit Defendants from excluding evidence or argument suggesting the DAPs only paid a portion of the alleged overcharge due to incomplete pass-through from the direct purchasers from whom the DAPs purchased CRT Finished Products. For the reasons provided supra Section I.B.1, DAPs' motion is granted.

Notwithstanding their position that Royal Printing bars Defendants from submitting evidence or argument regarding pass-through, the DAPs apparently intend to present their own evidence that the pass-through rate was 100%. See Frankel Report at ¶ 31. The Court ordered the parties to show cause why the Court should not exclude *all* evidence of upstream pass-on, including evidence and argument provided by the DAPs' expert that the DAPs paid the entire amount of the overcharge. In response, the DAPs note that their expert's upstream pass-on analysis "played no role in his computation of damages" because the outcome is the same regardless of whether one calculates damages based on the entire overcharge amount or based on a 100% pass-on rate.[7] DAP Suppl. Br. at 2.

---

[7] Defendants' supplemental brief argues again why they should be able to introduce evidence showing that DAPs paid less than the entire overcharge amount. Specifically, Defendants assert that upstream pass-on should be permitted because Royal Printing does not apply where plaintiffs purchased finished products incorporating the price-fixed good instead of the price-fixed good itself. If Royal Printing does not apply, then DAPs do not have standing and the issue of the

1    Although the outcome of the damages calculation may be the same, evidence or argument
2    suggesting a 100% pass-on rate is inadmissible because (1) the amount the DAPs actually paid is
3    irrelevant, (2) the amount the DAPs actually paid is a question of fact that Defendants are entitled
4    to rebut if the DAPs open the door, and (3) jurors might respond differently to evidence suggesting
5    the DAPs actually paid the entire overcharge amount.  Jurors will be instructed to calculate
6    damages based on the entire overcharge amount.  The parties' evidence and argument, therefore,
7    should be focused only on the amount of the total overcharge.  Accordingly, the Court hereby
8    excludes all evidence and argument of upstream pass-on for the purpose of calculating damages
9    for claims under the Sherman Act, including evidence and argument submitted by the DAPs that
10   the pass-on rate was 100%.

### IV. DAPS' MIL NO. 16: MOTION TO EXCLUDE EVIDENCE OF OR REFERENCES TO THE RETAILER PLAINTIFFS PURCHASING FINISHED PRODUCTS CONTAINING CRTS FROM PLAINTIFF VIEWSONIC OR PLAINTIFF SHARP

The DAPs move the Court to exclude referring to or introducing evidence at trial that DAPs Target, Sears, Kmart, Circuit City, and Best Buy purchased finished products containing CRTs from Plaintiffs ViewSonic and Sharp for reseale.  DAP Mot. at 65.  The DAPs argue the evidence is irrelevant and will be unfairly prejudicial "to the extent it is used by Defendants to imply to a jury that there is duplicative recovery at issue in this case or that ViewSonic or Sharp may have passed on overcharges to their customers."  Id.  Defendants contend that the evidence is relevant "because it shows that the retailer plaintiffs had bargaining power."  Def. Opp'n at 76. Specifically, "[t]he evidence will show," according to Defendants "that the [DAPs] had the ability to choose where to purchase finished goods from among many options . . . [which] allowed them to negotiate lower prices . . . which in turn affected any damages they incurred . . . ."  Id. at 76-77.

This argument is not persuasive.  Because Royal Printing requires the DAPs to sue for the entire overcharge, the DAPs' actual damages, and evidence probative of their actual damages, are irrelevant.  Regardless, that the DAPs purchased CRT Finished Products from ViewSonice and

---

admissibility of pass-on evidence is moot.  But that is not the question before the Court on this motion.  The question is, assuming DAPs have standing pursuant to Royal Printing, should the Court exclude evidence and argument of upstream pass-on regarding damages calculations. Defendants failed to respond to that question.

12

1   Sharp is irrelevant to whether the DAPs had bargaining power, and even if it was probative,

2   evidence of the DAPs' bargaining power is inadmissible on Rule 403 grounds for the reasons

3   already provided.

4       The DAPs' motion is granted.

## V. DAPS' MIL NO. 2: EXCLUDE EVIDENCE OR ARGUMENT REGARDING DOWNSTREAM PASS-ON

    The DAPs filed a motion *in limine* to exclude evidence or argument regarding downstream pass-through as irrelevant and unduly prejudicial under Federal Rules of Evidence 401, 402, and 403. The motion was brought regarding the DAPs' claims under the Clayton Act and Best Buy Plaintiffs' claims under Minnesota law. Best Buy has since settled their claims. As to the DAPs' Clayton Act claims, the motion is granted.

    The rule regarding downstream pass-on was set out in Hanover Shoe. There, an antitrust defendant challenged the plaintiff's damages by showing that the plaintiff had passed on part of the illegal overcharge to its customers. 392 U.S. at 487-94. The Supreme Court banned the use of this "defensive pass-on" theory because determining how much of the plaintiff's damages had been passed on and how much had been "absorbed" by the plaintiff "would often require additional long and complicated proceedings involving massive evidence and complicated theories." Id. at 493.

    The DAPs argue evidence that they "may have recouped Defendants' unlawful overcharges by, among other things, passing-on those overcharges to their customers, is legally irrelevant to the amount of damage they suffered under the Sherman Act." DAP Mot. at 14. According to the DAPs, "[t]he Court also should preclude Defendants, from indirectly raising the pass-on defense by prohibiting Defendants from referring to or attempting to offer evidence regarding the effect of Defendants' overcharges on Plaintiffs' businesses . . . . Such evidence would include evidence regarding Plaintiffs' profitability, or the retail prices they set for CRT finished products." Id. at 16.

    Defendants respond that the DAPs' motion is "unnecessary in light of the parties' proposed jury instruction regarding downstream pass-on." Def. Opp'n at 15. The Court disagrees. If the

1    evidence is irrelevant or prohibited by Hanover Shoe, it should be excluded.

2        Next, Defendants argue the motion is "overbroad" because it

> seeks to exclude evidence that is not downstream pass-on evidence . . . . Specifically, [the] DAPs seek to exclude evidence regarding the: (1) "effect of Defendants' overcharges on Plaintiffs' businesses"; (2) "Plaintiffs' profitability"; or (3) "the retail prices that they set for CRT finished products." Mot. at 16. . . . This evidence is not downstream pass-on evidence because it is not used to argue that [the] DAPs passed on overcharges to their customers. Rather, it is directly relevant to the key question of *whether* and *the extent* to which [the] DAPs paid an overcharge . . . .

Def. Opp'n at 15 (emphasis added).

    The Court is unconvinced. The question of "the *extent* to which [the] DAPs paid an overcharge" is not an issue in this case. Id. Plaintiffs are entitled to sue for the entire overcharge amount, regardless of the amount of their actual damages. See Hanover Shoe, 392 U.S. at 494; see also Royal Printing, 621 F.2d at 327 ("Hanover Shoe teaches that . . . there is nothing wrong with the plaintiff winning a windfall gain, so long as the antitrust laws are vindicated and the defendant does not suffer multiple liability.").

    The question of "*[w]hether* . . . [the] DAPs paid an overcharge" to CRT Finished Product manufacturers *is* an issue in the case. Def. Opp'n at 15. But evidence that the DAPs passed on some of the overcharge to their customers is unrelated to that question. Similarly, the "retail prices that [the DAPs] set" for the products they sold to their customers have no bearing on whether the DAPs paid an overcharge. As to evidence regarding "the effect of Defendants' overcharges on Plaintiffs' businesses" and "Plaintiff's profitability," Defendants provide no explanation as to how such evidence is probative of whether DAPs paid an overcharge. Perhaps Defendants intend to argue that the DAPs' ability to maintain the same profitability implies they did not suffer injury-in-fact. But a plaintiffs' injury in a price-fixing case does not turn on profitability. By operation of the direct purchaser rule, the DAPs would have been harmed the moment they paid an illegal overcharge. The injury-in-fact requirement would have been satisfied, therefore, even if the DAPs' profits did not decrease as a result. See Hanover Shoe, 392 U.S. at 489 ("We think it sound to hold that when a buyer shows that the price paid by him . . . is illegally high . . . , he has made out a prima facie case of injury" even "if he raises the price for his

14

own product."); In re Apple iPod iTunes Antitrust Litig., No. C 05-00037, 2011 WL 5864036, at *4 (N.D. Cal. Nov. 22, 2011) ("'[W]hen a seller overcharges a buyer . . . the fact that the buyer raises the price for its own product, thereby passing on the overcharge to its customers and avoiding a loss in profit, has no bearing on the issue of whether the buyer has suffered an injury.'") (quoting Meijer, Inc. v. Abbott Labs., 251 F.R.D. 431, 433 (N.D. Cal. 2008) (in turn citing Hanover Shoe, 392 U.S. at 489-92)); Braintree Labs., Inc. v. McKesson Corp., No. 11-80233, 2011 WL 5025096, at *3 (N.D. Cal. Oct. 20, 2011) ("[A] plaintiff's alleged benefit from a defendant's anti-competitive behavior . . . is not relevant to whether the plaintiff [direct purchaser] suffered a cognizable antitrust injury. . . . [T]he relevant question is whether the plaintiff paid an overcharge.").

The motion is granted.

## VI. CONCLUSION

The Court finds as follows:

| Motion | Ruling |
| --- | --- |
| Defendants' MIL No. 16: To Permit Evidence and Argument Regarding Upstream Pass-On and Plaintiffs' Bargaining Power | DENIED |
| DAPs' MIL No. 4: Motion To Exclude Evidence Or Argument Regarding Plaintiffs' Purported "Market Power" | GRANTED |
| DAPs' MIL No. 10: Motion to Exclude Evidence or Argument Regarding Incomplete Pass-Through of Overcharges Through Affiliate Entities | GRANTED. In addition, the Court excludes evidence or argument regarding incomplete pass-through offered by the DAPs for the purpose of calculating damages. |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

| Motion | Ruling |
|---|---|
| DAPs' MIL No. 16: Motion to Exclude Evidence of or References to the Retailer Plaintiffs Purchasing Finished Products Containing CRTs from Plaintiff ViewSonic or Plaintiff Sharp | GRANTED |
| DAPs' MIL No. 2: Exclude Evidence or Argument Regarding Downstream Pass-On | GRANTED |

**IT IS SO ORDERED.**

Dated:  November 15, 2016

_____
JON S. TIGAR
United States District Judge