Pages 1 - 41

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JON S. TIGAR, JUDGE

In re: Cathode Ray Tube (CRT) )
Antitrust Litigation          )
                              )   NO. 3:07-cv-05944-JST
_____)   MDL No. 1917

                                   San Francisco, California
                                   Tuesday, November 8, 2016

### TRANSCRIPT OF PROCEEDINGS

**APPEARANCES**:

For Plaintiff Sharp Corporation:

                    Taylor & Company Law Offices, LLP
                    One Ferry Building, Suite 355
                    San Francisco, California  94111
            BY:   **JONATHAN PATCHEN, ESQ.**

For Plaintiffs Sears Roebuck & Co. and KMart Corporation:

                    Kenny Nachwalter, PA
                    201 South Biscayne Blvd., Suite 1100
                    Miami, Florida  33131
            BY:   **WILLIAM J. BLECHMAN, ESQ.**
                  **CHRISTINA CEBALLOS-LEVY, ESQ.**

For Indirect Purchaser Plaintiffs:

                    Boies, Schiller & Flexner
                    5301 Wisconsin Avenue, N.W.
                    Washington, D.C.  20015
            BY:   **KYLE SMITH, ESQ.**

                (appearances continued on following page)

Reported By:        Leo T. Mankiewicz, CSR 5297 RMR, CRR
                    Pro Tem Reporter

**APPEARANCES**:   (cont.)


For Direct Purchaser Plaintiffs:

                         Saveri & Saveri, Inc.
                         706 Sansome Street
                         San Francisco, California  94111
                 BY:  **R. ALEXANDER SAVERI, ESQ.**


For Defendant MT Picture Display Co., LTD.:

                         Weil, Gotshal & Manges
                         1300 Eye Street, N.W.
                         Washington, D.C.  20005
                         Menlo Park, California  94025
                 BY:  **KEVIN B. GOLDSTEIN, ESQ.**
                         (appeared by telephone conference)

For Defendant Thomson Consumer Electronics, Inc.:

                         Faegre Baker Daniels, LLP
                         300 N. Meridian Street, Suite 2700
                         Indianapolis, Indiana  46204
                 BY:  **KATHY L. OSBORN**
                         **Attorney at Law**
                         (appeared by telephone conference)

                         Faegre Baker Daniels, LLP
                         1700 Lincoln Street, Suite 3200
                         Denver, Colorado  80203
                 BY:  **JEFFREY SCOTT ROBERTS, ESQ.**
                         (appeared by telephone conference)

For Defendants LG Electronics USA, Inc. and LG Displays,
International, Ltd.:

                         Munger, Tolles & Olson, LLP
                         355 South Grand Avenue, 35th floor
                         Los Angeles, California  90071-1560
                 BY:  **E. MARTIN ESTRADA, ESQ.**
                         **GREGORY J. WEINGART, ESQ.**

                         Munger, Tolles & Olson, LLP
                         560 Mission Street, 27th Floor
                         San Francisco, California  94105-2907
                 BY:  **CATHLEEN H. HARTGE**
                         **Attorney at Law**

1    Tuesday, November 8, 2016

2                                                           9:40  a.m.

3                      P R O C E E D I N G S

4          **THE CLERK:**  Before we begin, just a reminder to

5    counsel in the courtroom, when you address the Court, please

6    make sure you step to one of the podiums and state your name

7    for the record.

8          Calling civil case 07-5944, MDL number 1917, In re:

9    Cathode Ray Tube Antitrust Litigation.

10         Your Honor, appearances have already been taken.

11         **THE COURT:**  Well, very good.  Welcome.  This is in the

12   nature of a case management conference.  It's sort of a

13   pre-pretrial conference.

14         We've reached a momentous event.  A momentous amount's

15   done in this case.  Yesterday, I don't know if you were paying

16   attention, there is a 5,000th docket entry in the case.  So if

17   you feel a little buzz in the courthouse, that's what it is.

18                          (Laughter.)

19         Let me start by just saying the things that I think --

20   let me start by identifying the topics that I think I need to

21   address this morning, and then without -- I won't get into any

22   of that, and then you can tell me if I need to supplement my

23   list in any way.

24         We need to come up with a clear time estimate in the

25   case, not just for the number of hours that the Court is going

1    to allocate to the parties, and I think the parties are pretty

2    close in their numbers, and I think their numbers sound right,

3    so I'm not going on to push back any more on that.

4            But then we have to think about how long it's going to

5    take to close it -- excuse me -- to select a jury, what happens

6    when you add opening and closing statements.  We need to build

7    in some time for jury deliberation, in part, so that I can

8    convey accurate information to our jury office, since this jury

9    will be time-qualified before they even come in the courtroom,

10   and also so that you can plan your lives when you're renting

11   houses and war rooms and hotel rooms and that sort of thing.

12           I think the issue regarding testimony to establish

13   document authenticity has been resolved.  I say I think, even

14   though you gave me a stipulation and I signed it and it became

15   an order, because the stipulation contemplates that if a party

16   needs to play deposition testimony to authenticate documents,

17   the solution is that the time doesn't count against that

18   party's time.  That's fine, as the trial is longer and then you

19   all get paid.

20           The jury is going to be here the amount of time that

21   I tell them.  That's how it's going to happen.  We're going to

22   have a room full of people.  They're going to be told that

23   they're here for an antitrust case.  They're going to be asked

24   to give up a big portion of their lives, and I think they'll

25   enjoy it.  Most jurors enjoy serving as jurors.

1          But maybe not today, but maybe at the pretrial

2    conference, I'm going to want to explore this.  I promise you

3    we will explore this topic further, because I'm a little bit

4    worried that we're just kicking the can down the road and the

5    people who are going to feel the expense are not the people in

6    this room.

7          So what I would like -- I think this is really on

8    defendants -- what I would like -- I think here's what I would

9    like.  I know I said I wasn't going to get into it, but

10    I didn't really have a plan when I got on the bench, and this

11    was just occurring to me.

12          I would like the plaintiffs, at the pretrial

13    conference, to just hand up the 20 documents that they are the

14    most surprised by the challenged authenticity, and then we'll

15    just have a discussion and we'll see where it leads.

16          I have never had a custodian of records testify in a

17    trial, ever, and I've been a judge for 15 years, and that

18    doesn't mean there can't be legitimate dispute about

19    authenticity, but let's get down to it, and my guess is that

20    we're talking about 15 minutes of deposition testimony at the

21    end of the day, and if we get there, then none of the concerns

22    that I've just expressed will remain.

23          Item number 5000 on our docket is this Motion for

24    Administrative Relief.  I think people are entitled to notice

25    and an opportunity to respond.

1          So I'll ask LGE if you want to respond to that today,

2     and if you don't and you'd rather just have your first word on

3     the subject be in writing, that's fine, too.  I'm not going

4     to -- my calendar is such, I'm not going to schedule a hearing

5     on the motion.  So if you'd like to be heard today, and then

6     the other side obviously will be able to put their oar in the

7     water and then also file a written response and wait for the

8     Court to resolve it until after you've done that, that's fine,

9     too.  But think about that, and we'll come back to that.

10          The parties are disputing the order in which

11     deposition -- designated deposition testimony is played.  We'll

12     talk about that.

13          There is a request to present testimony of some -- in

14     the trial, on Friday, January 20th, 2017.  As you all know,

15     we're not normally in session on a trial on Fridays, because of

16     other obligations that I have on my calendar.  We'll talk about

17     that.

18          I want to talk a little bit about the motions on your

19     list.  I want to thank you so much for that list and the

20     attention that you pay to that list, and I know that other

21     parties are doing that.  We have a funnel with a really

22     enormous open top and a very, very narrow bottom, so that's

23     very helpful.

24          What have I missed?  Let me start with plaintiffs.

25          **MR. BLECHMAN:**  Good morning, your Honor.  William

1   Blechman on behalf of plaintiffs Sears and KMart.

2          Mr. Randall, who has accompanied me to a number of

3   these hearings, your Honor, is, I think, about to become a

4   father today.  So he's not here, but my partner Christina

5   Ceballos-Levy is, who is part of the trial team, and so she is

6   with me in the courtroom today as well.

7          Your Honor, would you like me to simply identify other

8   topics that we think you might want to cover and then you want

9   to come back to them, or --

10         **THE COURT:**  Yes, let's do that, and then I can let the

11  other side give me their topics before we get mired in any one

12  particular one.

13         **MR. BLECHMAN:**  Your Honor, there is an issue that has

14  developed about authentication of documents by former

15  defendants who are obligated to provide a declaration with

16  regard to the authenticity of documents under Federal Rule of

17  Evidence 902(11) and (12).  It's --

18         **THE COURT:**  End of the day, and does that obligation

19  arise as a result of cooperation agreements reached during

20  settlements?

21         **MR. BLECHMAN:**  Yes.

22         **THE COURT:**  Okay.

23         **MR. BLECHMAN:**  And because of that, I won't go into

24  more detail than that, other than to answer the Court's

25  question directly.  But there is a timing issue that has arisen

1    that we think will be easily resolved by the Court, but I want

2    to identify it.

3              THE COURT:  Okay, we'll come back to that.  What's the

4    next one?

5              MR. BLECHMAN:  Next has to do with just some comments

6    and suggestions about the pending motions *in limine* that the

7    Court alluded to before, in terms of suggestions about what the

8    Court might want to do in terms of the prioritization of those

9    motions, your Honor.

10             THE COURT:  All right.

11             MR. BLECHMAN:  And finally, on issues of streamlining,

12   your Honor, that go to the question the Court raised about the

13   timing for trial, we think there are some questions lingering

14   about whether LGE is going to stipulate to the authenticity of

15   Chunghwa documents, who is going to raise a withdrawal defense,

16   beyond the other questions that the Court has identified, and

17   some clarifying discussion on that point might be helpful for

18   us because that will have material impact, perhaps, on the

19   streamlining of the trial, as well.

20             THE COURT:  Okay, and do -- are any of these issues --

21   is a discussion of any of these issues going to surprise your

22   opponents --

23             MR. BLECHMAN:  I don't think so.

24             THE COURT:  -- or do they know that these are topics

25   that you wanted to address today?

1          **MR. BLECHMAN:**  They're in the status report that we

2    have on file.

3          **THE COURT:**  All right.

4          **MR. BLECHMAN:**  So I think the answer to the Court's

5    question is no.

6          **THE COURT:**  Very good.

7          **MR. BLECHMAN:**  Thank you.

8          **THE COURT:**  All right, thanks.

9          Good morning, Mr. Estrada.

10         **MR. ESTRADA:**  Good morning, your Honor.

11         **THE COURT:**  Mr. Reporter, E. Martín Estrada.

12         **MR. ESTRADA:**  Martín Estrada, yes, your Honor, and I'm

13    here joined by Cathleen Hartge and Greg Weingart.  My partner

14    Brad Brian sends his regards.  Unfortunately, he is in trial

15    before Judge Jones in L.A. Superior Court right now, so could

16    not --

17         **THE COURT:**  Ann Jones?

18         **MR. ESTRADA:**  Yes, your Honor.

19         **THE COURT:**  Ann Jones and I went through baby judges'

20    college, or whatever they call it, together.  She's a very

21    smart person and very good judge, in my opinion, but that's

22    irrelevant and I shouldn't burden record with my judicial

23    preferences.

24         **MR. ESTRADA:**  I agree, your Honor.

25         With regard to this case management conference, your

1   Honor, I think the Court has summed up the issues very well.

2   Frankly, I'm very optimistic in terms of where things are and

3   the cooperation that's been shown between the parties, and we

4   can talk about that.

5           In terms of additional issues that the Court may want

6   to address, one is a protective order issue that came up at the

7   last case management conference, and that we're prepared to

8   discuss.  I believe --

9           **THE COURT:**  That has to do with the continued

10  confidentiality of documents that were previously designated?

11          **MR. ESTRADA:**  Yes, your Honor.

12          **THE COURT:**  Okay.

13          **MR. ESTRADA:**  And I think the parties to this case

14  have come up with a proposed solution.  I'd like to address it

15  with the Court.

16          **THE COURT:**  All right.

17          **MR. ESTRADA:**  And the only other item would be if the

18  Court would like to address things that need to be discussed at

19  the pretrial conference in December.

20          **THE COURT:**  I see.  Okay.  Very good.  Well, I don't

21  think -- I'll just take these things in the order they appear

22  in my notes, and there's no particular order that suggests

23  itself otherwise.

24          Is it -- am I correct in my reading of the Joint

25  Status Report that LGE is suggesting 35 hours a side and

1    Sears/KMart is suggesting 40?

2              **MR. ESTRADA:**  That is correct, your Honor.

3          **THE COURT:**  Mr. Blechman, you probably ought to come

4    to the microphone and we can hash these issues out.

5              I think I just want to go with 40.  I don't -- because

6    five hours is not a lot of wiggle room, and I don't like to be

7    in a situation at the end of trial where someone is looking at

8    me with puppy eyes and asking for more time.

9              Do you want to make a pitch for 35?

10         **MR. ESTRADA:**  My only pitch, your Honor, I don't think

11   we feel strongly except for making sure the trial moves

12   efficiently.  We think it certainly can be tried in 35.  We've

13   looked at the exhibits that we think will actually be

14   introduced, the witnesses that will actually testify, and it

15   seems that it can be presented in 35, but if the Court would

16   prefer 40, we're happy to do that.

17             I think, as the Court indicated, we just need to --

18   the parties need to be mindful of also factoring in time for

19   jury selection, openings and deliberations.

20         **THE COURT:**  So I think I am going to adopt 40, and the

21   price of that is two and a half days, four hours of trial time

22   a day, roughly.  Ten hours, five hours per side difference is

23   10 hours total.  It's two and a half days.

24             In exchange for the two and a half days, I have in my

25   pocket the conversation in which I turn to Mr. Blechman and

```
1    say, I gave you the higher estimate you wanted.  That seems to
2    me a good bargain, so I'm going to do that.
3            I'm going tell the jury office eight weeks.  I think
4    jury selection in this case will take three days.  I think
5    you'll pass out questionnaires on day one and we'll see.
6    I might make you come back and talk to the jury on day two.
7    You have big teams, so it's not asking maybe that much to do it
8    that way.  Outside would be that you come back on day three and
9    question people.  They've already been time-qualified by the
10   jury office.
11           And I think we'll probably pick a jury in a day.  I'm
12   not too worried about that.  I have to think about how many
13   jurors.  We can decide that at the pretrial conference.
14           But in a four-day trial week, that's really a week.
15   I mean, maybe you make your opening statements, you probably
16   do, that first week, but remember, those don't count against
17   your -- these other hours we've set aside.  So that's a week.
18           Then you have five weeks of trial time, then maybe
19   have a week of deliberation.  I hope it doesn't take a week of
20   deliberation, but it might.
21           And then you have a week's worth of wiggle room for,
22   you know, holidays that happen on a Monday, which you're going
23   to have some of.  So I think eight weeks is the right number to
24   give the jury office.
25           Anybody want to push back on that?  I've scheduled a
```

1   meeting with our jury office later today, so we can get the

2   ball rolling.

3           Mr. Estrada, first of all, I apologize for

4   mispronouncing your first name.

5           **MR. ESTRADA:**  Not a problem, your Honor.

6           **THE COURT:**  Everybody mispronounced my last name my

7   entire life, so I try to get people's names right.  Next time

8   I'll try to do better.

9           Do you want to respond to this -- to motion 5000

10  today, or do you want to let your written response speak for

11  itself?

12          **MR. ESTRADA:**  We would prefer to file a written

13  response.  The only thing I'll note globally is the parties,

14  I believe, are working very well together in terms of doing

15  their best efforts to streamline the case.  I believe this is

16  another instance where we'll see this is actually something

17  that will streamline the case in terms of notice, but we're

18  happy to respond in writing, your Honor.

19          **THE COURT:**  Okay.  Then I won't do anything about that

20  today.  You know, it's good to get along, but you're fighting,

21  and you're good fighters, too.  So don't worry about it if

22  there are things you can't resolve.  I'll just resolve them.

23  I'll wait for your response for the rest of that issue.

24          Let me hear any additional argument that either of you

25  wants to make regarding the question of deposition testimony,

1    and by that I mean the dispute about whether a side who offers

2    deposition testimony in its case-in-chief is obligated to play

3    its opponent's counter-designations at the same time or not.

4            Why don't I let you go first this time, Mr. Estrada.

5        **MR. ESTRADA:**  I'll ask your Honor, actually, if my

6    colleague Mr. Weingart can address this, because he is more

7    familiar with the issue.

8            **THE COURT:**  Sure.

9        Mr. Reporter, Gregory J. Weingart, W-E-I-N-G-A-R-T.

10       **MR. WEINGART:**  Thank you, your Honor.  I'm happy to

11   quickly supplement what's in our papers on this.

12           I think it's fairly straightforward under the Rules of

13   Evidence if these witnesses were testifying live, there would

14   be a scope to their testimony, there would be cross-examination

15   within that scope and, if necessary, they would be called in

16   the defense case, and while there certainly are rule of

17   completeness type issues, that does not extend to all of our

18   designations.

19           So our proposal is that the designations that the

20   plaintiff has made, and our counters to that, would obviously

21   be played in their case, and that our affirmative designations

22   and their counters to it would be played in our case, which we

23   think is perfectly in accord with the Rules of Evidence, rather

24   than having all the testimony presented in the plaintiff's

25   case.

1      **THE COURT:**  Let me ask you something that should have

2  occurred to me before.  Are counter-designations the same thing

3  or different from the rebuttal designations that are the

4  subject of ECF number 5000?

5      **MR. WEINGART:**  They're somewhat related and, you know,

6  without trying to get into the total back-and-forth, the issue

7  that we have is we believe that the counter-designations that

8  the plaintiff made went beyond counter-designations and, in

9  fact, included things that were not properly

10 counter-designations, but additional affirmative designations.

11     And so we filed rebuttals, but which were essentially

12 counters to what we considered to be new affirmatives from the

13 plaintiff as part of that process.

14     So we are sort of in a --

15     **THE COURT:**  So I can decide this question that we're

16 discussing now separately from the question presented by ECF

17 number 5000.

18     **MR. ESTRADA:**  That's correct, your Honor, in the

19 defense view.

20     **THE COURT:**  All right, thank you.

21     Mr. Blechman?

22     **MR. BLECHMAN:**  Thank you, your Honor.  William

23 Blechman.

24     We think the designations, just to address the Court's

25 last question initially, are, in fact, different.  That is to

```
1    say, the designations that are the subject of docket 5000, that

2    motion, are different than the designations that had occurred

3    by agreement under the pretrial order adopted by the Court.

4            But let me turn to the question of the order -- the

5    playing of the depositions and the order in which that occurs.

6            We take guidance on this decision from Federal Rules

7    of Evidence 611, and it is our view that playing the

8    depositions in one party's case and then another designation in

9    a different party's case does not provide a procedure for the

10   effective determination of the facts in the case, under

11   Rule 611(a), I believe.

12           We are of that view, your Honor, because we think that

13   the designations, excluding those under docket 5000, the

14   designations that we have made and that LG has made are related

15   to each other, that is to say, in terms of the context of the

16   designations.  There are a number of witnesses who will be

17   testifying by deposition, something on the order of eight, nine

18   or ten.  That number may change some, depending on the

19   streamlining.  And those --

20           THE COURT:  You're of the view -- my notes are less

21   clear than your Joint Case Management Statement, and I'm

22   looking at my notes.  You're of the view that all designations

23   related to a particular witness should be played at once?

24           MR. BLECHMAN:  Yes, your Honor.

25           THE COURT:  And LGE is of the view that the parties --
```

```
 1    that the sponsoring party can play its designations and its
 2    opponent's counter-designations, but not its opponent's
 3    affirmative designations.
 4              MR. BLECHMAN:  Yes, your Honor.
 5              THE COURT:  Okay, go ahead.
 6              MR. BLECHMAN:  Because the deposition testimony that
 7    has been designated by both sides is related to each other in
 8    context, because there are a number of witnesses who will be
 9    testifying by way of deposition, and because when the plaintiff
10    rests and LG would be playing these deposition designations
11    would be occurring perhaps two weeks after we have -- after
12    plaintiffs have played the designations in plaintiff's
13    case-in-chief, it is our view that jurors are likely to not
14    follow the context of the testimony that is being provided two
15    weeks later from testimony they heard two weeks before, that
16    they are likely to confuse which witnesses made which
17    statements at the time, given the duration of time and the
18    number of witnesses that have occurred, and therefore, because
19    juror confusion we think is a real risk because they will lose
20    the context and because they will have a hard time keeping
21    track of who said what, we think that the better approach, that
22    is the approach that is used more often, which is, if we're
23    going to play the videotaped deposition of a witness in our
24    case, that we play all the deposition -- excuse me --
25    designations that we have designated, and we play those that LG
```

1  has, as well.

2         LG has suggested in their papers, your Honor, that

3  there is some type of salve to this problem, some type of

4  solution to this problem, because the jurors are able to take

5  notes.  The fact that jurors can take notes does not mean that

6  they will take notes, and even if they did, there's no telling

7  what they will write down, and we don't find that to be a

8  solution to somebody hearing a number of witnesses by virtue --

9  by way of deposition testimony some number of days or a few

10 weeks later, versus what they heard earlier.

11        Furthermore, LG suggests that perhaps the Court or the

12 counsel could provide a brief statement prior to the time that

13 the videotaped deposition is played a second time of these

14 witnesses at the time that that occurs.  The Court has

15 considered that sort of an administrative -- of case management

16 technique at the last pretrial conference, and I think our view

17 is that we have moved past -- we think that there is a problem

18 with the lawyers commenting on the testimony, to say nothing of

19 trying to put in context what somebody had said earlier.  We

20 think the jurors should be able to do that as well.

21        **THE COURT:**  How many witnesses are the subject of this

22 dispute?

23        **MR. BLECHMAN:**  Your Honor, by our count, it's

24 somewhere on the order of eight to ten.  That number could be a

25 little less, your Honor, it could be a little higher.  So

```
 1    I don't want to be pigeonholed to that number, because it
 2    depends.
 3              THE COURT:  I'm just looking for a ballpark.
 4              MR. BLECHMAN:  Order of magnitude, your Honor, I think
 5    something on the order of ten is probably about right.
 6              THE COURT:  Okay.  Thank you.
 7              MR. BLECHMAN:  You're welcome.
 8              THE COURT:  Last words on the subject?
 9              MR. WEINGART:  Very briefly, your Honor, I think that
10    to the extent that there is going to be some confusion or
11    prejudice, it would seem to me that that would inure to the
12    detriment of LG if that was, in fact, the case, given that
13    these are our counters, and --
14              THE COURT:  Well, I'll tell you what, so you can
15    respond to the argument.  That's not what Mr. Blechman's
16    worried about.  He's not worried that the jurors are not going
17    to understand what your witnesses are saying in your
18    case-in-chief.
19              He's worried that they're going to understand your
20    deposition testimony fine, and they will have totally forgotten
21    the testimony that he played, which he will have selected
22    precisely for the purpose of making that witness whose
23    testimony you are playing in your case-in-chief out to be a
24    price-fixer or a liar or some other thing.  That's what he's
25    worried about.
```

1          **MR. WEINGART:**  Well, I appreciate that, and I think

2     that it shows this is why the Rules of Evidence are set up in

3     the way that they are.  We both get to try our case, we both

4     get to highlight in an affirmative sense what it is that we

5     think is the important evidence, and I don't think that it's

6     appropriate for the points that we want to make to be subsumed

7     within all the points that the plaintiff wants to make.

8          That's why the rules are set up in the way that they

9     are, to have each side put their affirmative rules -- I would

10    say, my experience has been different than Mr. Blechman's.

11    I defer, the Court obviously has even more experience than

12    I do, but in cases that I've tried, the affirmative

13    designations are played in the respective cases; all the

14    testimony is not played in the plaintiff's case, or frankly, in

15    the defense case.

16          **THE COURT:**  I would say this issue comes up pretrial

17    about two-thirds of the trials I've done, and with live

18    witnesses too, and both sides just take whatever position

19    tactically helps them in the moment, and the issue is committed

20    to the sound discretion of the trial court.

21          Mr. Blechman, last words from your side.

22          **MR. BLECHMAN:**  Your Honor, we think, if the purpose of

23    the rule is for a procedure that effectively enables the jurors

24    to determine the facts and the truth, and we think allowing for

25    a procedure as the defendant has suggested will run counter to

```
 1   the rule and create prejudice for us because the jurors will be
 2   confused.
 3            THE COURT:  Gentlemen, is the matter submitted?
 4            MR. BLECHMAN:  Yes, your Honor.
 5            MR. ESTRADA:  Yes, your Honor.
 6            THE COURT:  I'm going to rule in LG's favor on this
 7   point.  Each side will play its designations and its opponent's
 8   counter-designations, but not the other side's affirmative
 9   designations, in its case-in-chief.
10            Both of you make very good arguments in favor of your
11   respective positions.  So the question is not who has a good
12   argument.  The question is, to which policy consideration do
13   I give primacy.  I'm taken by Mr. Weingart's point that the
14   parties ought to be able to try their case and make the
15   presentation they want to make.
16            Relatedly, we may have to give further thought to the
17   question over, are there things we want to do in a five, six,
18   seven, eight-week trial to refresh the jurors' recollection or
19   to summarize as we go along.  That's not specific to any one
20   witness.  That's just sort of an overall point, but we'll deal
21   with that later.
22            Let's talk about the request to present testimony on
23   Friday, January 2017.
24            MR. WEINGART:  Your Honor, I will switch places with
25   Mr. Estrada, if that's all right.
```

1          **THE COURT:**  All right.

2          **MR. BLECHMAN:**  Your Honor, I think you mean

3   January 20th.

4          **THE COURT:**  Oh, whatever I said, I meant to say

5   January 20th.  Here's what it says in the Joint Status Report,

6   which is ECF number 4992, at page 7:

7              "Sears/KMart presently intends to call live at

8          trial two Chunghwa employees who participated in the

9          conspiracy, C.C. Liu and S.J. Yang.  Because both

10         witnesses will testify through interpreters,

11         Sears/KMart anticipate that they will each require at

12         least two days to testify, including cross-examination

13         and rebuttal.  This poses a scheduling -- excuse me --

14         this is poses a potential scheduling problem, because

15         both witnesses must return to China by January 22nd,

16         2017, in order to commence the celebration of the

17         Chinese New Year."  Period.

18         I'm having a little trouble with the premise.  Someone

19   explain to me why getting back to China to celebrate Chinese

20   New Year should take precedence over an eight-week MDL jury

21   trial in the federal court?

22         **MR. BLECHMAN:**  Your Honor, my understanding -- William

23   Blechman for the plaintiffs.  My understanding is, and this is

24   secondhand, your Honor, is that in China, the Chinese New Year

25   is an extremely important holiday for individuals.  I'm not the

```
1    best person to be explaining to your Honor the importance of

2    the Chinese New Year, and I apologize to the Court for that.

3         THE COURT:   And I would be the first to confess my

4    lack of knowledge on that issue.   Well, let me take it under

5    submission.   I'll look at my calendar that Friday.   It means

6    eliminating a criminal calendar and a trial readiness

7    conference calendar, of which I only have a few every month.

8         And it doesn't mean it's impossible, it just means

9    I have to look at what my options are around that time and whom

10   I might be inconveniencing.

11        That is a week in which, on Monday, there is a court

12   holiday.   So the advantage to the proposal is that it actually

13   gives us four trial days.   I can say to the jurors, you know,

14   we're going to have a full trial week that week.   So

15   notwithstanding my admittedly uninformed skepticism about the

16   premise, there may be other reasons to adopt the proposal that

17   are for the good of all involved.

18        I will say this.   Once one of those gentlemen takes

19   the stand, he is on the stand, and we're not -- if the

20   scheduling doesn't work out for some reason, we're not -- it's

21   not going to be the case that we say, well, now we have a

22   problem, because even though he's not completed his testimony,

23   the other side hasn't had a fair chance to cross-examine or

24   what have you, he has to get back for Chinese New Year.

25        MR. ESTRADA:   I think, your Honor, that's the most
```

1    important.  LG -- we will defer to the Court in terms of how it

2    wants to schedule the witnesses, but getting a full and fair

3    opportunity to cross-examine is most important.

4         **THE COURT:**  I'm inviting Mr. Blechman to seek whatever

5    relief from the Court he needs to make sure that this testimony

6    is not stricken, in light of the Court's comments.

7         **MR. BLECHMAN:**  William Blechman for the plaintiffs.

8    Your Honor, I think the Court's comments are very helpful, and

9    what I was going to suggest is, before the Court has to do

10   anything with its schedule, that I can perhaps share the

11   Court's views with others who are more knowledgeable and more

12   directly involved in this, and maybe find out if there's

13   something -- that if there's a solution here.

14        **THE COURT:**  I'm not suggesting that's necessary.

15   I wanted to share my skepticism to see if maybe I was missing

16   something, but I remain culturally uninformed, and I have no

17   desire to appear to be or, in fact, to be, culturally

18   insensitive.

19        And it may be that because there are other reasons

20   that benefit the trial, I can grant this request.  So as to

21   whether or not there's a necessity of putting the trial on the

22   Friday, I am not asking you to withdraw your request.  In fact,

23   I'd prefer that you not withdraw it, because I have given the

24   matter a great deal of thought already.

25        With regard to the other point I made, however, which

1    is the necessity of not -- of granting this relief and then

2    having a situation where someone nonetheless needs to get back

3    to China for the New Year, as to that point, you are free to

4    disseminate the Court's views as widely as you like.

5        **MR. BLECHMAN:**  Thank you, your Honor.  My comment was

6    addressed to the second of the two points the Court has just

7    made, not the first, so I took the Court's comments precisely

8    in the manner and spirit in which the Court conveyed it.

9        But I do want to check and see whether there is

10   something we can do about this, because we have every bit as

11   much of an interest as does LG and does the Court in making

12   sure that this moves smoothly and that everybody has a full and

13   fair opportunity to examine the witness.

14       **THE COURT:**  Very good.

15       **MR. BLECHMAN:**  The witnesses, excuse me.

16       **THE COURT:**  Okay.  So I'll just make a note that issue

17   is under submission, and I'll just enter a minute order or text

18   order, letting you know if we will be conducting trial on that

19   Friday.

20       Do any of the -- so the pending motions in your very

21   helpful table break out into certain categories.  One of them

22   is motions *in limine*, which I know, Mr. Blechman, you'd like to

23   address.  One of them is summary judgment motions.

24       None of the summary judgment motions involve the

25   parties to this trial, do they?

1    **MR. BLECHMAN:**  Not the parties to this trial, your

2    Honor.  I think the summary judgment motions pertain to former

3    defendants in the case who have moved for summary judgment on

4    the grounds that there's just -- that there's insufficient

5    evidence.

6            **THE COURT:**  Right, absence of liability.

7            **MR. BLECHMAN:**  Yes.

8            **THE COURT:**  Okay.  If I could, of course, I'd decide

9    all these motions today, but it isn't possible, so I have to

10   ask you these questions.

11           I continue to appreciate the parties' patience.

12   I don't know if either of you were here -- I think Mr. Blechman

13   was, for sure.  Mr. Estrada, you may have been in the first

14   case management conference, when we put all of the moving

15   papers out on the table.

16           **MR. ESTRADA:**  I recall that, your Honor.  It was

17   memorable.

18           **THE COURT:**  Okay.  Mr. Blechman, you had an issue

19   regarding the authentication of documents by former defendants

20   that you wanted to discuss?

21           **MR. BLECHMAN:**  Thank you, your Honor.  There are

22   defendants who are obligated to authenticate documents under

23   902(11) and (12) and 803(6), and in some instances the

24   requirement kicks in 45 days before trial or -- the earlier of

25   45 days before trial or a deadline set by the Court.

27

```
1          We view the pretrial conference coming up on
2    December 12th and 13th as a deadline set by the Court, as a
3    result of which we've given notice now, so that these
4    declarations are obtained so that we are able to take the issue
5    of authentication of these documents off the table.
6          THE COURT:  Yes.
7          MR. BLECHMAN:  And there is at least one defendant,
8    who I will not name at this point, who has told us that it
9    considers our request premature, to which we have pointed out
10   that we regard the pretrial conference as a deadline that would
11   trigger it.
12         And so we may need to file a motion, an administrative
13   motion, with the Court to confirm that the pretrial conference
14   is a deadline set by the Court that would trigger the
15   obligations to provide this declaration.
16         I would like to think that this would not need to
17   happen --
18         THE COURT:  Well, hold on.  Is counsel for that party,
19   whoever they are, present?
20         MR. BLECHMAN:  No, they're not.
21         THE COURT:  Then nothing further need be said on that
22   point, that that party, whoever they are, has no notice that
23   we're going to discuss the subject, so I don't have anything
24   further to say on that point.
25         MR. BLECHMAN:  Very well, your Honor.
```

1          **THE COURT:**  Pending motions *in limine*, you wanted to

2     discuss that issue also.

3          **MR. BLECHMAN:**  Thank you, your Honor.  William

4     Blechman for the plaintiffs.

5          In connection with the chart that the parties

6     submitted to your Honor, we want to recommend to the Court that

7     if it is going to be ruling on these motions, that it

8     prioritize the docket 3558, Plaintiff's Motion *in limine* 11, to

9     establish the preclusive effect of, or in the alternative,

10    admit the decision of the European Commission.

11         If the Court -- depending on the nature of the relief

12    the Court grants, that ruling could have a material effect on

13    our ability to streamline the case even further because of

14    facts that may not -- for which there may be a preclusive

15    effect already, or because certain facts will be in evidence,

16    depending on the Court's ruling.

17         And so in terms of our ability to streamline the case

18    and as we are preparing the case to trial --

19         **THE COURT:**  I got it.

20         **MR. BLECHMAN:**  Thank you, your Honor.

21         **THE COURT:**  If that's the one you'd like me to do

22    next.  Let me ask you this question, and I'll ask Mr. Estrada

23    the same question in a second.

24         You may have noticed that I almost never ask you

25    anything about settlement at these conferences because -- for

1  two reasons.  One, this is what Judge Walker is dealing with,

2  I hope, and number two, it doesn't really matter that much.

3        It will be fun for all of us to try a multi-week

4  antitrust case in which so much will be at risk, and so many

5  fun things will happen, the chances are that somebody will be

6  very happy at the end and someone will be very sad, or maybe,

7  as sometimes happens in antitrust cases where people don't do a

8  good job calculating setoffs, everybody's sad.  That could also

9  happen.

10        But anyway, so I did ask about it generally, but are

11  there any of these motions *in limine* that you think -- that

12  resolution of any these motions *in limine* that you think would

13  have a material effect on settlement discussions, without

14  telling me what the effect is?

15        **MR. BLECHMAN:**  Yes, your Honor.  I also think that the

16  Court's ruling on Motion *in Limine* 11 --

17        **THE COURT:**  Oh, okay.  Okay, good.  Well, that's

18  helpful, too.

19        Mr. Estrada, you want to pick one out of the bucket

20  and tell me that it's particularly important?

21        **MR. ESTRADA:**  Yes, your Honor, and in fact, I will

22  refer back to the parties' joint submission, awkwardly titled,

23  "Suggestion for Prioritization of Daubert Motions and Motion in

24  Limine," which lists and further culls down the motions *in*

25  *limine* which the parties think --

1    **THE COURT:**  Yeah, I have that.  I'm looking at that

2    chart right now, the updated one attached to your most recent

3    Joint Status Report.  So I'm on ECF page 2 of 3 of document

4    4992-2, and then it continues on to the next page.

5    **MR. ESTRADA:**  And the Court has ruled on some of

6    these, such as the first entry on Professor Elzinga's

7    testimony.

8    **THE COURT:**  Yes.

9    **MR. ESTRADA:**  I will note that --

10    **THE COURT:**  I was -- yeah, go ahead.

11    **MR. ESTRADA:**  -- that all of these, I believe, are

12    important to streamlining the case, but if I were to pick a few

13    that are important --

14    **THE COURT:**  Let me start -- let's do it this way.  You

15    live in a world of scarcity, and you can only pick one.  What

16    is it?

17    **MR. ESTRADA:**  If I were to pick one, your Honor, it

18    would be the Upstream Pass-on motion, which are there are two

19    that address this issue.  The first is Defendant's Motion *in*

20    *Limine* number 16, which is docket 3597.

21    **THE COURT:**  Yeah.  Oh, well, see, that's at the bottom

22    of the chart.  If I didn't ask you that question, that would

23    have been the thing I did the night before you wanted to know

24    the answer.

25    **MR. ESTRADA:**  And it's related to Plaintiff's Motion

1    *in Limine* number 10, which is docket number 3558.

2              THE COURT:  Yeah.  Okay, very good.  Okay, that's

3    helpful.

4              MR. ESTRADA:  And in our status papers, we did

5    request, again, repeat our request for oral argument, if the

6    Court is so inclined, and I'll renew that request again.

7              THE COURT:  It's a question of capacity, not desire.

8    When I took this case over, there were 100 pending motions,

9    including 29 motions for summary judgment and several *Daubert*

10   motions.  So we'll make our way through the jungle somehow, but

11   we don't always stay on the trail.  (Laughter).

12             The lawyering in this case on all sides is one of the

13   pleasures of the case.  I've not had a hearing on a motion that

14   I did not enjoy, semi-enjoyed, as much as I've enjoyed

15   anything.  But I just have so many other cases.

16             MR. ESTRADA:  Understood, your Honor.

17             THE COURT:  All right, that's helpful.

18             Okay, Mr. Blechman, on my list, you had some questions

19   about withdrawal and some other things.  All I wrote in my

20   notes is, "Questions re: what defendants are going to do," and

21   hopefully, that jogs your recollection as to the topic or

22   topics you wanted to address.

23             MR. BLECHMAN:  It does, your Honor.  William Blechman

24   for the plaintiffs.

25             THE COURT:  All right.

1              **MR. BLECHMAN:**  We note in the Status Report, ECF 4992

2     at page 3, that in LG's motion to bifurcate, which is docket

3     number 4827, your Honor, at pages 12 and 13, LG explains that

4     it doesn't currently anticipate litigating before the jury the

5     question whether Hitachi, Panasonic, Toshiba or Philips

6     withdrew from the alleged conspiracy, and this is the wording

7     of LG,

8                    "...but as to the remaining withdrawal argument

9              that could conceivably overlap with the bench trial as

10             to LG and related the formation of LGPD," that's the

11             joint venture, "LG does not, based on information

12             currently available to it, plan to challenge LGE's

13             control of LPD, the joint venture."

14             What we know at this point from the meet-and-confers

15     is that LG is not going to raise the withdrawal as to those

16     other four defendants, including its joint venture partner

17     Philips, but from what we can tell -- and this matters because

18     it has to do with the number of exhibits and trial documents --

19     from what we can tell, they're not contesting control of the

20     joint venture, but they are going to still raise the defense

21     that LG itself withdrew from the conspiracy.

22             And so we're just trying to get a fix on exactly what

23     they're going to do, because that will matter in terms of

24     exhibits.  It takes off -- a whole issue off the table.

25             Relatedly, your Honor, on the same page in the

1    pretrial stipulation, on page 3 of docket 4992, LG has told us

2    in its motion to bifurcate -- this is ECF 4568 at page 10 --

3    that the evidence of corporate relationships would be, in LG's

4    words, "based largely on stipulated facts and that the parties

5    would stipulate to certain control relationships."

6          We have several hundred exhibits regarding ownership

7    or control, some of which will be taken care of with some of

8    the other stipulations and declarations we've referred to, but

9    there's a number of others, and if, in fact, LG is going to

10   stipulate to these facts, as it represented in its papers, then

11   we would like to know that, we'd like a date certain to hear

12   that, because we've got -- we've already exchanged the pretrial

13   stipulation, your Honor.  We're very far down the road.

14         We're working -- we've got exhibit lists and witness

15   lists and all this other stuff that we've done, and we think,

16   based on what they've told the Court in their papers, it's time

17   to fish or cut bait on this.  Either they are or they're not

18   raising these defenses, either they are stipulating or they're

19   not, and if so, we'll pivot one way or the other, depending on

20   what they do.

21         **THE COURT:**  So if I were to get grumpy with

22   Mr. Estrada and I wanted to cite a rule that he wasn't

23   complying with, what would I cite?

24         Mr. Estrada, you heard Mr. Blechman.  You didn't tell

25   him enough about withdrawal, or whatever it is.  You're not in

```
1    compliance with -- what would I say?

2          MR. BLECHMAN:  Representations made in the papers

3    filed with the Court, your Honor.

4          THE COURT:  All right.  Mr. Estrada?

5          MR. ESTRADA:  Your Honor, suffice to say we strongly

6    disagree with that.  These issues deal with ownership control,

7    which was argued to the Court, and is an issue that the Court

8    will have to address.

9          I'd like to allow my colleague Cathleen Hartge to

10   address those issues, because they are related to the ownership

11   control issues, if that's agreeable to the Court.

12         THE COURT:  Sure.  Good morning, Ms. Hartge.

13         Mr. Reporter, Cathleen with a C, middle initial H,

14   Hartge, H-A-R-T-G-E.

15         MS. HARTGE:  Good morning, your Honor.  Kathleen

16   Hartge on behalf of defendant LG Electronics, and to clarify a

17   couple of points raised by counsel, LG has been abundantly

18   clear with Sears and KMart that LG fully intends to present the

19   withdrawal defense, and that's entirely consistent with the

20   papers filed, the bifurcation motion that was referenced.

21         And further, in the Case Management Conference

22   Statement that we filed with your Honor, as Sears and KMart

23   pointed out, they plan to provide LG with stipulated

24   language -- that's in Sears and KMart's own words -- and we

25   have not received that, so we have not had a chance to consider
```

```
 1    that stipulation, but we're happy to look at it when we receive

 2    it, and meet and confer with Sears and KMart, as we've been

 3    doing on all of these other issues.

 4          Now, on the ownership or control points, one point to

 5    clarify is that before we -- er, after we filed the bifurcation

 6    motion and that briefing was done, we received from Sears and

 7    KMart an updated damages estimate, breaking down damages by

 8    vendor, which was done pursuant to a stipulation that we

 9    reached earlier this summer, and at the time that we made that

10    representation on control, we didn't yet have these updated

11    numbers.

12          From what we understood before, it seemed that,

13    simply, it would be a waste of the Court's time and the jury's

14    time to be litigating the issue of LG's control.  The numbers

15    that we've received are different, and we have to evaluate that

16    approach.

17          But at any rate, we've been nothing but clear that LG

18    presents -- intends to present a withdrawal defense, and we

19    have communicated accordingly with Sears and KMart on that

20    point, and we're happy to look at stipulated language when we

21    get it.

22          THE COURT:  When I was a very young lawyer, a very

23    senior partner at the law firm I was working at said to me, in

24    a different recession a few recessions ago, you know, when

25    people have less money, all of sudden fewer things are matters
```

1    of principle.

2             Okay.  I don't see any -- I don't see that -- I don't

3    see that any issue has been framed for me in a way that permits

4    or -- permits me to or suggests that I should issue any kind of

5    judicial relief this morning.

6             Mr. Blechman, did you have other issues about what the

7    defendants are going to do at the trial?

8             **MR. BLECHMAN:**  Your Honor, let me just check with...

9    Your Honor, I think that exhausts our list at this point on

10   that issue, your Honor.

11            **THE COURT:**  All right.

12            **MR. BLECHMAN:**  Thank you.

13            **THE COURT:**  Ms. Hartge, either you or one of your

14   colleagues wanted to raise the question of the protective

15   order.

16            **MS. HARTGE:**  Yes, your Honor.  As we discussed at the

17   last case management conference, both sides in this case are

18   acutely aware of the need to protect the presumption of a

19   public trial, and so the parties met and conferred and filed

20   yesterday a proposal for your Honor's consideration on a way to

21   resolve most, if not all, hopefully, protective order issues

22   that could come up before trial.  That's at ECF 5001, and I'm

23   happy to -- or ECF 5002, apologies -- and I'm happy to discuss

24   that proposal with your Honor, answer any questions, outline it

25   for you in broad brush strokes, whatever is most convenient for

```
 1    your Honor.

 2          THE COURT:  A preview might be helpful.  I think the

 3    parties know I have real concern in this case that there has

 4    been wild over-sealing, wild over-designation of

 5    confidentiality.  This is a completely stale technology, and as

 6    far as I can tell, many of the documents that were sealed were

 7    sealed only to protect the authors of certain documents from

 8    embarrassment about events that happened 10 or 20 years ago,

 9    which seems to me like a lousy reason for the state court to be

10    sealing things.

11          I don't know whether I've been that clear about it

12    before, but I've spent a lot more time recently wading through

13    some of these documents.  So if the parties have a solution,

14    I'm all ears.

15          MS. HARTGE:  You have been clear about that, your

16    Honor, and the parties share that concern.

17          So there are a few steps that are involved in the

18    process which we've laid out in a proposed order to show cause,

19    which we filed yesterday as well, and the first step is that

20    upon entry of the order, if your Honor chooses to do so, Sears

21    and KMart and LG would have two days to file their pretrial

22    disclosures, and then also have two days to provide notice to

23    any non-MDL parties who have designated protected material,

24    because presumably, everyone else will receive notice through

25    ECF.
```

1           And within two weeks of the entry of the order, any

2    designating party who would like to prevent the materials

3    identified in the designations from entering the public record

4    would have to file an administrative motion and declaration

5    satisfying all of the elements laid forth in the relevant local

6    rules and your standing order, and then, at your Honor's

7    discretion, your Honor would consider -- could consider having

8    oral argument or not, and the parties defer entirely to the

9    Court.

10          And then we would go through a similar round after the

11   filing of the pretrial statement, where the parties may have

12   updated designations, with parties again -- designating parties

13   having the opportunity to file additional motions or

14   declarations, only insofar as new materials are identified.

15          **THE COURT:**  That sounds like a very sensible solution.

16   Okay.  Well, I look forward to reading the parties'

17   stipulation.

18          **MS. HARTGE:**  Thank you, your Honor.

19          **THE COURT:**  I think there was maybe one more thing on

20   Mr. Estrada's list.  I'm not sure --

21          **MR. ESTRADA:**  There was, your Honor.  It was -- there

22   was with regard to the pretrial conference, which the Court

23   currently has set for --

24          **THE COURT:**  Oh, yes.

25          **MR. ESTRADA:**  -- December 12th and December 13th, what

1    topics the Court would like to address and whether the Court

2    intends to have two days of pretrial conference or one day, at

3    this point.

4          **THE COURT:**  Well, I've left that number of days on the

5    calendar just to make sure I have sufficient bandwidth.  This

6    is -- what I'm about to say will be a little bit disorganized.

7          So first of all, there's a little bit of a failure of

8    imagination on the Court's part.  It's a great question to ask:

9    What is it that the Court wants us to do in this pretrial

10   conference?  I don't know.

11         I just think that probably a kind of "all the usual

12   suspects" checklist that I might use in a two-week patent case

13   or a two-week consumer fraud case might not be adequate for

14   these purposes.  If we turn out not to need the second day or

15   even to need the second half the first day, terrific.

16   I really -- I want the parties to tell me what more you need.

17         One reason that I will set more than the traditional

18   half a day for a pretrial conference sometimes is because the

19   case has a very, very large number of motions *in limine*, and

20   I just need to allow sufficient time for argument on those, and

21   then a buffer for the Court to decide the ones that I don't

22   decide from the bench.

23         In this case, the motions *in limine* were filed a long

24   time ago, and my goal would be to have all of those resolved

25   before your pretrial conference, but it may be that at the

```
1    pretrial conference there just are some that are so close or so
2    important that I feel that oral argument would be helpful.  So
3    that's one thing that comes to mind.
4         Also, I think as the parties continue to prepare for
5    this lengthy trial that has more moving parts, not just in its
6    length but in its structure -- for example, you have more
7    foreign witnesses, you have more use of translators -- even
8    though this is not a multi-party case, as this case -- as the
9    first trial that I did in this case could have been,
10   nonetheless, there will just be a lot more moving parts.
11        And so really, my only goal was to put in enough
12   breathing room in the pretrial conference that I could make
13   decisions that were at least as good as they were hasty.
14        So I apologize for not giving you more guidance, but
15   I would say that I think the parties are doing a good job of
16   crystallizing their disputes and eliminating the ones they can
17   and serving up the ones they can't resolve.  So I'll let you
18   tell me as that day gets closer, which is happening more every
19   day.
20        MR. BLECHMAN:  This is true.
21        THE COURT:  Yeah.  Other things we should discuss this
22   morning?
23        MR. ESTRADA:  Nothing for me, your Honor.  I'll check
24   with my colleagues.  Apparently, nothing else from LG's side,
25   your Honor.
```

1    **THE COURT:**  Is the only order that I issued today on
2  the topic of the playing of deposition designations?
3    **MR. BLECHMAN:**  Your Honor, William Blechman.  I don't
4  know if it's -- if the Court wants to issue an order on the
5  amount of the trial time.  At the top of the hearing --
6    **THE COURT:**  Oh, thank you, I did make that order also.
7  So each of you got something.
8    All right, would one of you volunteer to reduce
9  today's orders into a form of order?
10    **MR. BLECHMAN:**  We'll take a stab at it.  We'll confer
11  with LG's counsel, and --
12    **THE COURT:**  All right, very good.  That's the other
13  one.  All right, very good.  Thank you all very much.
14    **MR. BLECHMAN:**  Thank you, your Honor.
15    **MR. ESTRADA:**  Thank you, your Honor.  I appreciate it.
16    **THE CLERK:**  All rise.
17                                                    10:37 a.m.
18
19
20
21
22
23
24
25

### CERTIFICATE OF REPORTER

I, LEO T. MANKIEWICZ, a pro tem reporter in the United States Court, Northern District of California, and Certified Shorthand Reporter duly licensed in the State of California, hereby certify that the foregoing proceedings in Case No. 3:07-cv-05944-JST,  In Re Cathode Ray Tube Antitrust Litigation, were reported by me, and were thereafter transcribed under my direction into typewriting; that the foregoing is a true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

Leo T. Mankiewicz, CSR 5297, RMR, CRR

Tuesday, November 15, 2016