CHRISTOPHER T. MICHELETTI (136446)
JUDITH A. ZAHID (215418)
QIANWEI FU (242669)
ZELLE LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
*cmicheletti@zelle.com*
*jzahid@zelle.com*
*qfu@zelle.com*

*Counsel for Class Representative Kerry Lee Hall
and Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 3:07-cv-5944 JST<br><br>MDL No. 1917<br><br>**ZELLE LLP'S RESPONSE TO OBJECTIONS OF LAW OFFICES OF FRANCIS O. SCARPULLA TO SPECIAL MASTER'S REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES**<br><br>Judge:   Honorable Jon S. Tigar<br><br>Before:  Special Master Martin Quinn, JAMS |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | |

In the Law Offices of Francis O. Scarpulla's Objection to the Special Master's Report and Recommendation Re Allocation of IPP Class Counsel Attorneys' Fees, Objector Scarpulla challenges the Special Master's allocation of $208,233.31 to his firm. *See* Dkt. 5023. Zelle LLP ("Zelle") takes no position on the propriety of the fee allocation award to Objector Scarpulla or his firm. Objector Scarpulla, however, makes a number of meritless accusations regarding Zelle in his objection, including through newly submitted legal "opinion" declarations, which necessitate this response.

Objector Scarpulla purports to challenge the Special Master's findings regarding an alleged agreement that purportedly arose out of communications between Lead Counsel and Zelle LLP over eight years ago. He claims that an exchange of two emails constitutes an agreement—despite the fact that neither of the two parties to this alleged agreement believes that any such agreement was reached. The email record, at most, reflects a proposal by Zelle regarding joint management of the case and applicable fee multipliers, and a response by Lead Counsel that explicitly rejects the joint management proposal, makes counter proposals—and indeed—requests subsequent express acceptance for all terms, which was never sent nor received. *See* Dkt. 4948, Ex. 1 ("In working with your firm, however, my firm must retain those responsibilities set forth in part IV of Judge Conti's Lead Counsel Order. . . . *If this is agreeable, let me know* and we can get going.") (emphasis added).

Faced with such a record reflecting a basic lack of mutual acceptance or understanding between the parties, the Special Master correctly found that Objector Scarpulla did "not establish the existence of a binding agreement." Dkt. 4976 at 13. This conclusion validly reflects California law. *See, e.g., Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 215 (2006) ("[T]he failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract."); *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 797 (1998) ("If no meeting of the minds has occurred on the material terms of a contract, basic contract law provides that no contract formation has occurred."). As the Special Master also found, the fact

1

that Zelle never objected to receiving a multiplier lower than that of Lead Counsel only further belies Objector Scarpulla's agreement theory (Dkt. 4976 at 13), and should resolve this manufactured issue.

Now, however, Objector Scarpulla improperly attempts to rebut the Special Master's conclusion with contrary "opinions" of other attorneys, namely Jack Garvey and Richard Zitrin (Dkt. 5048). As a threshold matter, these declarations admittedly opine on *legal* issues, and therefore are plainly improper under Federal Rule of Evidence 702. Each declarant merely offers his own legal opinions as to whether "there was contract formation," and whether "there was some kind of agreement" that should have been asserted to the Special Master as a matter of "legal ethics" (even though the parties to that purported agreement understood that no such agreement was ever actually in place). Dkt. 5048.[1]

Because resolving questions of law "is the distinct and exclusive province of the trial judge" (*United States v. Brodie*, 858 F.2d 492, 497 (9th Cir. 1988)), federal courts "prohibit lawyers, professors, and other experts from interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case." *Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1042–44 (D. Ariz. 2005) (collecting cases).[2] Although ignored by Objector Scarpulla and his purported legal experts, "[t]he principle that legal opinion evidence concerning the law is inadmissible is 'so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle.'" *Id.* (quoting *In re Initial Public Offering Sec. Litig.,* 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001)). Thus, "every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law." *In re Initial Public Offering,* 174 F.Supp.2d at 64.

---

[1] Notably, Zitrin's declaration also fails to disclose that he is Scarpulla's personal lawyer, and represented Scarpulla in the negotiation of his separation agreement from Zelle, including with respect to Scarpulla's share of Zelle's fees arising out of this case (previously disclosed to the Court in Dkt. 4847-1, Decl. of Christopher Micheletti, at ¶ 37).

[2] *Brodie* was overruled on other grounds in *United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997), but remains good law for the above proposition. *See United States v. Scholl*, 166 F.3d 964, 973 (9th Cir. 1999).

Indeed, the Ninth Circuit has specifically held that legal expert opinion concerning contract formation and how contract law should be applied to the facts of a case are "inappropriate subjects for expert testimony." *Aguilar v. International Longshoremen's Union Local # 10,* 966 F.2d 443, 447 (9th Cir. 1992). In *Aguilar*, Plaintiff workers sought to establish an enforceable contract based on a promissory estoppel theory. 966 F.2d at 445. Their expert's proffered declaration, like those presented here, opined that, based on the facts of the case, an enforceable promise had been made, the workers accepted by relying on the promise, and their reliance was reasonable. *Id.* at 447. The Ninth Circuit held that such legal expert opinion was improper, as issues of contract formation are "matters of law for the court's determination." *Id.*; *accord. Pinal Creek*, 352 F. Supp. 2d at 1044 (holding law professors' opinions improperly sought to tell the court "what the law is and how the law should be applied to the facts of this case").

Precisely for the same reasons, the Garvey and Zitrin declarations proffered by Objector Scarpulla here are facially improper and must be excluded. *See* Dkt. 5048 (Garvey Decl. opining as to the "relevant principle[s]" of contract law, and that the facts "should be sufficient to constitute an agreement," including because "estoppel would apply" as a result of "reliance"; Zitrin Decl. offering his conclusory view "that there was some kind of agreement," and counsel therefore "acted unethically" by not asserting an agreement on the record to the Special Master).

Moreover, despite having asserted this same contract theory to the Special Master, Objector Scarpulla failed to present these "opinions" to the Special Master, and they thus ought not be heard now. *BioD, LLC v. Amnio Tech., LLC*, No. 2:13-CV-1670-HRH, 2015 WL 11120706, at *1 (D. Ariz. Sept. 15, 2015) (holding matters "not presented to the Special Master" are deemed "waived" for purposes of review by the district court); *World Triathalon Corp. v. Dunbar*, 539 F. Supp. 2d 1270, 1278 n.13 (D. Haw. 2008) (holding parties cannot raise "new arguments for the first time on an objection to a Special Master's Report"). This is true even for findings reviewed under a *de novo* standard, which "does not require the reviewing court to hear new arguments" or consider newly presented evidence. *Net2Phone, Inc. v. Ebay, Inc.*, No.

3

CIV.A. 06-2469 KSH, 2008 WL 8183817, at *4 (D.N.J. June 26, 2008).  In fact, even on *de novo* review, "courts generally exclud[e] evidence of new arguments on objections ... [because] [s]ystematic efficiencies would be frustrated and the [Special Master's] role reduced to a mere dress rehearser.... In addition, it would be fundamentally unfair to permit a litigant to set its case in motion before the [Special Master] ... and—having received an unfavorable recommendation—shift gears before the [reviewing] judge" by presenting a different record.  *Id.* (quoting *Dunkin' Donuts Franchised Restaurants LLC v. Mehta,* Civ. No. 07–0423, 2007 WL 2688710, at *1–2 (W.D. Pa. 2007)).

Furthermore, the Zitrin Declaration, which unjustifiably and summarily accuses Zelle counsel of ethical violations, is expressly based on the assumed (and false) conclusion that "there was some kind of agreement" in existence, which Zelle counsel was required to assert to the Special Master.  *See* Dkt. 5048.  Of course, because counsel for both parties to this alleged agreement reasonably understood that no such agreement existed (the same conclusion reached by the Special Master), Zitrin's cursory reasoning is fatally flawed, and ignores the facts.  Quite simply, Objector Scarpulla's charge of ethical violations is without basis, and is specious at best. Given that Objector Scarpulla seeks no relief to his firm based on this dubious claim of "ethical" violations, Zelle further questions whether these unfounded accusations have been levied for any purpose other than to improperly "harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Fed. R. Civ. Proc. 11(b).

As to Objector Scarpulla's remaining contractual and ethical assertions, including those in the Garvey and Zitrin Declarations, Zelle incorporates and refers to the points and authorities submitted by Lead Counsel in response to Objector Scarpulla's submission (and for the sake of the Court's time and resources, Zelle will not repeat them here).  Zelle, however, further notes that the email exchange at issue occurred over eight years ago, and this case has a very lengthy and complicated history, procedurally, substantively and in terms of the roles played and work performed by the many plaintiffs' firms involved in the case.  Zelle's extraordinary contributions to the case from the outset through the settlement approval process and to the present are

indisputable, and have been critical to the tremendous success of the case.  *See* Dkt. 4847.  But Lead Counsel called upon many other firms to contribute to the case, including several other "core" firms that, like Zelle, made major case contributions.  *See* Dkt. 4790 at 1, 3 (Lead Counsel papers identifying Zelle and several others as "core" firms making the greatest contributions to the case).  The "core" firms' roles ebbed and flowed with the case history, with each of them contributing in critical ways at various points in the case.  *See id.*

Importantly, even if Zelle contended that the purported agreement existed (contrary to the record), invoked it and attempted to require that it be compensated with a multiplier at the same level as Lead Counsel, Lead Counsel and the other firms undoubtedly would have objected to Zelle's elevation to the same multiplier as Lead Counsel—and such a term would almost certainly be rejected in the Court's fee allocation approval process—precisely as the Special Master noted.  Dkt. 4976 at 13 ("[E]ven if there had been [an agreement], it is the Court's task to assign multipliers, if any, to various counsel based on their contributions to the class, not on private agreements.").  Yet Objector Scarpulla makes no attempt to challenge or question this unavoidable truth.  Rather than relying upon his claimed contributions to the case on their own merits (as he is required to do), he has sought to engineer a backdoor "third-party beneficiary" route to a higher fee that is untethered to work actually performed or benefits received by the class.  Zelle, however, is not (and has never been) required to overreach in these proceedings or needlessly generate conflicts with its co-counsel in an effort to secure any fee multiplier for Objector Scarpulla.

To be clear, Zelle's position is that it has no agreement with Lead Counsel regarding joint management of the case or fee multiplier.  Nor does Zelle seek to enforce any such purported agreement, and believes that it would have been unreasonable for it to do so.  Indeed, for these reasons, Zelle left its fee allocation up to the discretion of Lead Counsel.  As noted in prior filings, Zelle did not agree with its allocation, but chose not to object in order to move this case toward closure.  *See* Dkt. 4847 at 1.  Ignoring these facts, Objector Scarpulla can only baselessly speculate that "Zelle and [Lead Counsel] may have come to some further agreement regarding

5

the allocation of fees." Dkt. 5023 at 6.  Again, no such "further agreement" exists, and Objector Scarpulla has presented nothing to support his unfounded allegations against Zelle.

Zelle now only seeks expeditious final resolution of this case, and will assist in any manner the Court so requests.

Dated: November 23, 2016

Respectfully submitted,

 */s/ Christopher T. Micheletti*
CHRISTOPHER T. MICHELETTI (136446)
JUDITH A. ZAHID (215418)
QIANWEI FU (242669)
ZELLE LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:     (415) 693-0700
Facsimile:     (415) 693-0770
*cmicheletti@zelle.com*
*jzahid@zelle.com*
*qfu@zelle.com*

*Counsel for Class Representative Kerry Lee Hall and Indirect Purchaser Plaintiffs*

4832-8430-6237v1

6
ZELLE LLP'S RESPONSE TO OBJECTIONS OF LAW OFFICES OF FRANCIS O. SCARPULLA TO SPECIAL MASTER'S REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES - CASE NO. 3:07-cv-5944, MDL No. 1917