Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the
Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-JST; No. CV-13-03234-JST |
| | MDL No. 1917 |
| This Document Relates to: | CLASS ACTION |
| All Indirect Purchaser Actions | **LEAD COUNSEL'S RESPONSE TO SCARPULLA'S OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES** |
| | Court: Courtroom 9, 19th Fl.<br>Judge: Hon. Jon S. Tigar |

**TABLE OF CONTENTS**

BACKGROUND ..................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

    I.  Scarpulla Never Filed a Motion for Fees and Is Not Entitled to Fees in Excess of the Amount Proposed by Lead Counsel ................................................................... 2

    II.  Scarpulla Is Not Entitled to a Higher Multiplier Because He Was Formerly Employed by Zelle or Because of a Non-Existent Fee Sharing Agreement ............ 6

    III.  Scarpulla Has Presented No Evidence of Duplicative or Unusable Trial Work ................. 8

    IV.  Scarpulla Has Not Shown Any Actual Inflated Billings ...................................... 8

    V.  Financial Risk Multipliers Are Appropriate ......................................................... 9

    VI.  Scarpulla's Multiplier Should Be Reduced, Not Enhanced ............................... 10

CONCLUSION ..................................................................................................................... 10

i

LEAD COUNSEL'S LEAD COUNSEL'S RESPONSE TO SCARPULLA'S OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES
- Master File No. CV-07-5944-JST, MDL No. 1917

# TABLE OF AUTHORITIES

Cases

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994) ..................................... 10

*In re FPT/Agretech Secs. Litig.*, 105 F. 3d 469 (9th Cir. 1997) ......................................................... 7

*Keller v. Nat'l Collegiate Athletic Ass'n*, No. C 09-1967 CW, 2015 WL 8916392 (N.D. Cal. Dec. 15, 2015). ................................................................................................................ 10

*Yamada v. Nobel Biocare Holding AG,* 825 F.3rd 536 (9th Cir. 2016) ................................................ 8

Lead Counsel responds as follows to the Law Offices of Francis O. Scarpulla's ("Scarpulla") Objections to Special Master's Report & Recommendation Re Allocation of IPP Counsel Attorneys' Fees. (ECF No. 5023.)

## BACKGROUND

After a very thorough process, Lead Counsel allocated Scarpulla $49,790.74 in fees. (ECF No. 4800 at 6.) Scarpulla objected to the Special Master seeking a substantial increase. (ECF No. 5023.) In response, Lead Counsel provided in great detail the reasons why Lead Counsel made the award he did and asked that his award be adopted. (ECF No. 4853 at 7-16.) Although the Special Master generally agreed with Lead Counsel's assessment of Scarpulla's contributions, he nonetheless enhanced Scarpulla's award. (ECF No. 4976 ("R&R") at 9-15.) Lead Counsel has filed an objection to the enhanced award to Scarpulla. (ECF No. 5026.)

The Special Master found in his Report & Recommendation (ECF No. 4976 at 10-15 ("R&R")) that Scarpulla:

- Provided multiple calculations of his lodestar and multiplier and that they are "inconsistent and confusing";

- Had the highest billing rate in the case at $1250, and even after it was reduced to $1,000, it was still the highest rate in the case, higher than Lead Counsel's;

- Did not perform important case leadership functions and the Special Master further referred to Scarpulla's "lack of meaningful involvement in the case";

- Raised objections which were "gratuitous and potentially damaging to the Class";

- Publically asserted procedural and speculative objections which was "inexplicable";

- Could have expressed his concerns about the case early on at the time of preliminary settlement approval – "not at the last moment when they merely stoked the fires of professional objectors";

- Had a "running antagonism" with Lead Counsel;

- Filed "unmeritorious and potentially harmful objections";

- Failed repeatedly to provide legal support for his arguments; and

- Criticized Lead Counsel for bringing trial counsel into the case when it was in fact Scarpulla, behind the scenes, who had initiated trial counsel's involvement.

In addition, the Special Master noted that Scarpulla has appealed this Court's approval of the settlements in this case. It has also appealed this Court's aggregate fee award.

Scarpulla now asks this Court to increase its award by increasing its multiplier. There is no basis for this request. Before this Court reviews Scarpulla's multiplier, it must review its lodestar which is "inconsistent and confusing," and, like its multiplier, should be reduced. All of Scarpulla's other objections should be overruled, and the original allocation to Scarpulla by Lead Counsel should be adopted.

## ARGUMENT

### I. SCARPULLA NEVER FILED A MOTION FOR FEES AND IS NOT ENTITLED TO FEES IN EXCESS OF THE AMOUNT PROPOSED BY LEAD COUNSEL

The audit of Scarpulla's time has been quite a challenge. We attempted to audit its time in the same manner and according to the same standards applied to all other firms in the case. The firm of Kirby, McInerney initially handled the audit of Scarpulla's time. Scarpulla was uncooperative. Lead Counsel picked up the ball and tried to audit its time. Again, Scarpulla was uncooperative. In an email prior to filing the fee petition, Lead Counsel gave Scarpulla a final chance to comply with the audit. (ECF No. 4853-2 at 35.)

Lead Counsel stated:

> ...I would like to include as much of your time as we can under the rules set out above. There have been a number of instances where we have questioned the time of other firms and ultimately allowed it after discussing it with them. So please call me so we can do this with your time. Thanks.

Scarpulla never responded. Thus, we only included $64,708.75 of its time in the fee petition. (ECF No. 4073 at 3.) Scarpulla then filed a series of Declarations relating to his work in this case, but never filed a motion for attorney's fees. The filing of a motion for attorney's fees was required as part of the settlement approval and fee award process. Every other firm did this, but not Scarpulla (or Moore). Thus, there was never any motion for attorney's fees by Scarpulla that class members could review and object to.

Now, well after the aggregate attorneys' fees have been awarded, Scarpulla is seeking additional amounts which have never properly been raised to the Court (or objectors) on motion.

2

LEAD COUNSEL'S RESPONSE TO SCARPULLA'S OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES -
Master File No. CV-07-5944 -JST, MDL No. 1917

1  Not surprisingly, the record on Scarpulla's fees is not as complete as the record on all of the other
2  IPP firms.  Scarpulla should not be able to seek additional fees from the aggregate fee award which
3  was only based on $64,708.75 of Scarpulla's fees (not the much larger lodestar he is currently
4  seeking).

5        In addition, Scarpulla's claimed lodestar is grossly excessive.  It includes time that every
6  other counsel in the case has excluded (except Moore and Winters), such as time spent on the
7  appointment of Lead Counsel and time spent on matters that were not assigned.  Other IPP counsel
8  have expressed their concern about this disparity to Lead Counsel. The award to Scarpulla results in
9  a windfall, and a penalty on those firms who reported time in compliance with the audit guidelines.

10       As we have previously submitted, large categories of time must be excluded from Scarpulla's
11 claimed lodestar.  (ECF No. 4853 at 7:13-10:7; ECF No. 5026-1, Ex. 1.[1]) Fifty percent of this very
12 same time was originally claimed by the Zelle firm.[2]  As part of the audit process, Zelle agreed to
13 eliminate this improper Scarpulla time from Zelle's lodestar.  Similar time by Mr. Cooper was also
14 eliminated from his lodestar.  (ECF No. 4073-6, ¶ 7.)  This time is simply not compensable.

15       Scarpulla claims that the time was incurred at the request of Special Master Walker.  This
16 claim, like many of his claims, is completely unsupported.  There is no evidence that Special Master
17 Walker contacted Scarpulla (and Cooper) in the first instance.  For, as Special Master Walker's
18 Report & Recommendation states, Scarpulla and Cooper "presented themselves" to the Special
19 Master, and not the other way around.  (ECF No. 3200 at 5.)

20       In 2014, Special Master Walker was mediating settlements in this case and also deciding
21 litigated matters.   Scarpulla, along with Cooper, became involved with the Special Master.  It
22 appears they were doing so in order to be appointed Co-Lead Counsel when it appeared that large
23 settlements would be likely.  Scarpulla and Cooper became involved in these matters at this point

---

[1] Scarpulla billed for 24.90 hours on the lead counsel motions; 23.70 hours on unassigned, unauthorized meetings with the California Attorney General; 76.95 hours on other unassigned tasks, such as reviewing legal opinions unrelated to any assignment to Zelle, and meetings with co-counsel (some of whom weren't even involved in this case); and 1.30 hours that appear to be work on the *LCD* case.  All of this time must be eliminated from Scarpulla's lodestar.

because of the prospect of a large fee award.  Special Master Walker entered a Report & Recommendation appointing Scarpulla and Cooper Co-Lead Counsel.  (ECF No. 3200.)  However, the Report & Recommendation was never adopted by Judge Conti.

Scarpulla's and Cooper's contact with Special Master Walker occurred behind the scenes without the knowledge or participation of Lead Counsel.  We are unaware of this type of action in any case by dissident counsel.  We are aware of dissident counsel, in extreme cases, moving the court (with notice to the opposing party) for relief.  And we are intimately aware of co-counsel with different viewpoints than Lead Counsel on ways to prosecute the case.  These differences have been worked out collegially among co-counsel over the course of this case.  But what Scarpulla and Cooper did in this case falls far outside these situations.

Not surprisingly, since Lead Counsel was not a party to their dealings with Special Master Walker, Cooper and Scarpulla got it all wrong.  The case was being properly prepared, and all trial preparation deadlines were met.  Settlements were being negotiated simultaneously.  As the trial preparations progressed, so too did the settlements.  Eventually, very substantial settlements were reached—much larger settlements than Scarpulla recommended that Lead Counsel accept.  (ECF No. 4853-1 ¶ 27.)  The IPP case was the first case to settle completely, while the DPP and DAP cases continued for a much longer time.

The issues with the California Attorney General ("AG") were also resolved.  The California AG obtained settlements in her case.  The California AG sent out a supplemental notice advising California consumers that they could share in the settlement proceeds in this case.  The Special Master has recognized that Lead Counsel's relationship with the California AG has been excellent.  (ECF No. 4281 at 3.)

Judge Conti never adopted Special Master Walker's Report & Recommendation.  Thus, there is no need to debate the Report & Recommendation.  But we do object to Scarpulla's attempt to get paid for work related to his dealings with the Special Master or work which he claims the Special

---

[2] Zelle and Scarpulla had an agreement that Zelle would claim 50% of Scarpulla's time while Mr. Scarpulla was employed by Zelle, and Scarpulla would claim the other 50%.

Master requested. This work was not authorized, was behind the scenes, and was at cross purposes to all of the other IPP counsel in the case who were preparing for trial.

Scarpulla's work was at cross purposes because making competing settlement demands to defense counsel raises the specter of a reverse auction, and it made settling with Defendants more difficult. It was also at cross purposes because it violated the Lead Counsel Order, and blurred the leadership structure in the case. All of this threatened the Class's recovery and caused additional delay and expense.

The work is also not compensable because Scarpulla has made no showing that the work was done at the direct request of Special Master Walker, or that it benefitted the Class in any way. Cooper, despite devoting time to these matters, is not seeking any compensation for them. Nor is Zelle seeking compensation for Scarpulla's work on these matters. (ECF No. 4976 at 10:15.) They recognize that this work is non-compensable. Scarpulla should not be compensated for it either.

As noted above, Scarpulla has made it very difficult to review his time and follow his fee calculations. As a result, it appears the fee calculation by the Special Master for Scarpulla of $208,223.31 is in error. (ECF No. 4976 at 14:18.)

We submit the following calculation for Scarpulla:

|   |   |   |
|---|---|---|
|   | 371.80 | Total hours Scarpulla claims for work on the case (ECF No. 4086 at 4:16.) |
| X | $1000 | Hourly rate applied by Special Master Quinn. (ECF No. 4976 at 11:4.) |
|   | $371,800.00 | Total lodestar |
| - | $37,180.00 | 10% reduction, applied to all firms. (ECF No. 4976 at 12:22.) |
|   | $334,620.00 | Adjusted lodestar |
| ÷ 2 | $167,310.00 | Scarpulla's 50% share pursuant to his severance agreement with his former firm, Zelle Hoffmann. (ECF No. 4976 at 12:23.) |
| X | 1.15 | Multiplier awarded by Special Master Quinn. (ECF No. 4976 at 14:18.) |

1           $192,406.50       Total

2           Of course, even this lower amount is far in excess of what Scarpulla's allocation should be. We nonetheless bring it to the Court's attention to correct the record. We also believe Scarpulla should have called this error to the attention of the Court, since he is largely responsible for it.

**II.  SCARPULLA IS NOT ENTITLED TO A HIGHER MULTIPLIER BECAUSE HE WAS FORMERLY EMPLOYED BY ZELLE OR BECAUSE OF A NON-EXISTENT FEE SHARING AGREEMENT**

Scarpulla argues that, as a former member of Zelle, he is entitled to receive the same, higher multiplier that Zelle obtained. But as the Special Master found, Scarpulla cannot be treated the same as the other lawyers in the Zelle firm who "performed important core leadership functions in the case" (R&R at 13), worked on the case in cooperation with all of the other IPP counsel, and who continue to do so.

As we have seen, Scarpulla worked at cross purposes to the IPP's case behind the scenes while at Zelle and he did so openly after leaving Zelle. None of this time by Scarpulla while at Zelle is being claimed by Zelle. The time is non-compensable and cannot form the basis for an enhanced multiplier.

In addition, Scarpulla's activities after he left Zelle, objecting to the settlements and attorneys' fees, cannot be ignored. As the Special Master found, his "objections—all rejected by the Court—were gratuitous and potentially damaging to the Class. Had [he] prevailed and the settlement been vacated[,] it is highly speculative whether a comparable or better settlement could have been achieved. To impose that risk on the Class by publicly asserting procedural and speculative objections is inexplicable." (R&R at 14.) Scarpulla's objections are part of his overall "contribution" to the case and must be taken into account in determining Scarpulla's multiplier. To ignore them would be unfair to other IPP counsel, especially those who invested hundreds of hours of time and effort defending the settlements, and who continue to work to uphold the settlements.

Similarly, Scarpulla's multiplier should not be enhanced because of the claimed fee sharing agreement between Lead Counsel and Zelle. The parties to the claimed agreement do not recognize any agreement. (*See generally* ECF No. 5053.) The Special Master did not recognize it. (R&R at

6

LEAD COUNSEL'S RESPONSE TO SCARPULLA'S OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES -
Master File No. CV-07-5944 -JST, MDL No. 1917

13.) Lead Counsel's expert does not recognize it. (*See generally* Declaration of Jerome Fishkin.) And, most important of all, as the Special Master recognized, a fee sharing agreement is not binding upon the Court in making its allocation. "It is the Court's task to assign multipliers, if any, to various counsel based on their contributions to the class, not on private agreements." (R&R at 13; *see also In re FPT/Agretech Secs. Litig.,* 105 F. 3d 469, 474 (9th Cir. 1997).)

This fee sharing issue dates back to 2008. Scarpulla was aware of it then, as acknowledged in his Objections. (ECF No. 5023 at 6:8.) Yet only now does Scarpulla submit the Zitrin and Garvey Declarations, and "unseemly" emails between Scarpulla and his former firm. The declarations are improper for several reasons. First, they are inadmissible opinions on questions of law. Second, they were never submitted to the Special Master, and so ought not be considered now. Finally, they are based upon multiple levels of hearsay and are objected to on that basis. We adopt by reference the separate brief filed by the Zelle firm on these issues. (ECF No. 5053.) If the Court chooses to consider these declarations, we ask that the Court consider the accompanying Fishkin Declaration, which contradicts the contract/fee sharing claims. The Fishkin Declaration also contradicts Scarpulla's claim of an ethical violation by Lead Counsel.

Similarly, there is no basis for Scarpulla's claim that there was a fee sharing agreement with Mr. Goldberg of the trial team. Mr. Goldberg states very clearly in the emails submitted by Scarpulla that there is no fee sharing agreement with Lead Counsel. (ECF No. 5023-8 ("There is no agreement—written or otherwise.").) All Scarpulla has shown is a willingness by Lead Counsel to consult with Mr. Goldberg in making the fee allocation to him. This was done by Lead Counsel with other IPP counsel, to ensure a fair allocation. It is not a fee sharing agreement.

Finally, Scarpulla diverges in its brief into a discussion of audit reports, and Lead Counsel's time records. Of course, none of this has anything to do with Scarpulla's request for an enhanced multiplier.

With respect to the audit reports, no written report existed, only fragmentary notes (ECF No. 4976 at 12:19), as Lead Counsel reported to the Special Master. Scarpulla did not pursue the matter. There is no basis to consider this matter further.

7

LEAD COUNSEL'S RESPONSE TO SCARPULLA'S OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES - Master File No. CV-07-5944 -JST, MDL No. 1917

There is no due process issue under *Yamada v. Nobel Biocare Holding AG,* 825 F.3rd 536 (9th Cir. 2016). No materials have been submitted to the Court or the Special Master which were not made available to Scarpulla. In fact, Scarpulla's time records (with Lead Counsel's audit notes) were recently submitted to the Court and Scarpulla in further support of Lead Counsel's allocation to Scarpulla, and in response to Scarpulla's recent request. (ECF No. 5026-1, ¶ 3, Ex. 1; ECF No. 5023-1, ¶ 7.)

Scarpulla's other objections to Lead Counsel's billing practices again have nothing to do with the enhancement of Scarpulla's multiplier. And again, all of these arguments have already been considered and denied at the aggregate fee stage and at the fee allocation stage by the Special Master. (ECF Nos. 4853 at 16; 4976 at 14:20.)

### III.  SCARPULLA HAS PRESENTED NO EVIDENCE OF DUPLICATIVE OR UNUSABLE TRIAL WORK

Scarpulla has not presented any evidence of duplicative or unusable trial work. There were not "two sets of trial preparation teams." (ECF No. 5023 at 8:12.) We have previously responded to these arguments in detail. (ECF No. 4853 at 13:25.) These arguments were also made by Scarpulla in opposition to IPP Counsel's request for the aggregate attorneys' fee. The arguments were likewise rejected. (ECF Nos. 4740 at 15:12; 4976 at 15.)

### IV.  SCARPULLA HAS NOT SHOWN ANY ACTUAL INFLATED BILLINGS

Both the Special Master and the Court have already considered, and overruled, Scarpulla's objections to quarter hour increments and block billing when they considered award of the aggregate fee to IPP counsel. (ECF No. 4853 at 11.) Indeed, after adopting the Special Master's findings in full, this Court observed that Scarpulla (who had been granted access to *all* of IPP Counsel's time records) had failed to "even identif[y] a significant number of entries showing 'unproductive time.'" (ECF No. 4740 at 15.)

The objections were before the Special Master again on the fee allocation. The Special Master overruled the objections again. (R&R at 14.) There is simply no evidence of inflated billings, certainly no inflated billings in excess of the large, across-the-board cuts that have been

8

LEAD COUNSEL'S RESPONSE TO SCARPULLA'S OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES -
Master File No. CV-07-5944 -JST, MDL No. 1917

made to IPP Counsel's lodestars. Lead Counsel also incorporates by reference the brief filed by other IPP counsel on this issue. (ECF No. 5056.)

As the Special Master and the Court have previously observed, the time devoted to this case compares very favorably to the time devoted to the recent *LCD* case. Lead Counsel's lodestar was much less then the lodestar of the Lead Counsel in *LCD* (there were two Lead Counsel - Zelle and Joseph M. Alioto - and one Liaison Counsel - Minami). Fewer firms were involved in this case, and they billed less as a group than the firms in the *LCD*. And this case lasted two years longer than *LCD*. (ECF Nos. 4351 at 71-72; 4740 at 14 ("The Court agrees with Special Master Quinn that the number of hours was necessary given the size and scope of the litigation[,]" and "that Class Counsel's staffing decisions minimized duplication of effort.").) The lodestars IPP Counsel as approved by Lead Counsel are fair and reasonable.

## V.     FINANCIAL RISK MULTIPLIERS ARE APPROPRIATE

Financial risk was taken into account in determining the fee allocations. It was perfectly acceptable to do so. (ECF No. 4853 at 14; ECF No. 4976 at 15:15.)

The case was financed by substantial out-of-pocket advances by the IPP Counsel as well as payments from settlement amounts. Lead Counsel's firm advanced $1,260,000 of the total advanced by all firms. (ECF No. 4976 at 8:11.) IPP Counsel made these payments over the course of the case, including a payment by Lead Counsel shortly before the time of trial. Scarpulla second-guesses the need for these out-of-pocket advances by IPP Counsel. The need for these advances has been clearly demonstrated by the accounting for these expenses, which shows how these advances were spent. (ECF No. 4071-14 at 2-3.)

Scarpulla argues that there was no need to be putting money up late in the case because there was enough money on hand and the trial date had been vacated. (ECF No. 5023 at 14.) The fact that the trial date had been vacated did not mean there would be no trial, only that the trial would be delayed. IPP Counsel were faced with the prospect of a trial against three remaining defendants, and the uncertain prospect of when that trial would be set. Accordingly, Lead Counsel continued to

9

LEAD COUNSEL'S RESPONSE TO SCARPULLA'S OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES -
Master File No. CV-07-5944 -JST, MDL No. 1917

make all necessary preparations for trial, including securing lodging for out-of-town counsel and witnesses, planning for a "war room" adjacent to the courthouse, and other preparations.

Lead Counsel, in consultation with the trial team, also determined that amounts in excess of existing reserves were necessary. In short, once the decision was made to try the case, we wanted to have sufficient funds available and not have to be worrying about funding for the trial. No sums contributed by IPP Counsel, including Lead Counsel, have been repaid, and they are still at risk. In fact, Lead Counsel anticipates further financial risk in handling the 11 appeals that have been filed to date, and the claims administration necessary to finalize these settlements. Thus, it was appropriate to consider financial risk in making the allocations to IPP Counsel.

## VI. SCARPULLA'S MULTIPLIER SHOULD BE REDUCED, NOT ENHANCED

Scarpulla's approved time is being compensated at the highest rate in the case, higher than Lead Counsel's rate. Scarpulla has obtained an enhancement to his current rate, which is above his historical rates. A further enhancement, by awarding Scarpulla a multiplier, is not justified.

If Scarpulla were to receive a multiplier, it would then be compensated in parity with firms that have worked throughout the case to achieve the settlements, and to defend the settlements from challenge. *See Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994) ("'It is well established that an award of attorneys' fees from a common fund depends on whether the attorneys' 'specific services benefited the fund—whether they tended to create, increase, protect or preserve the fund.'") Since Scarpulla has not done this, its "relative efforts, and benefits conferred upon the class"[3] are much less significant than those of other IPP Counsel; thus its multiplier must be less than 1. It should be less than that awarded to Lingel Winters (.9), slightly less than that proposed for Cooper (.85), and in parity with that proposed for Moore (.75).

### CONCLUSION

For all of the foregoing reasons, Scarpulla's objections must be overruled, and the fee allocation to Scarpulla should be as originally proposed by Lead Counsel. Lead Counsel does not

---

[3] *Keller v. Nat'l Collegiate Athletic Ass'n*, No. C 09-1967 CW, 2015 WL 8916392, at *4 (N.D. Cal. Dec. 15, 2015).

have a financial interest in the reductions he has requested for Scarpulla and certain other firms since he has requested that these amounts be used to pay expenses (not revert to Lead Counsel).  This, and the overwhelming support of the other IPP firms, is further reason why the Court should give due consideration to Lead Counsel's proposed fee allocation to Scarpulla.

Dated: November 25, 2016            Respectfully submitted,

By:   /s/ Mario N. Alioto

Mario N. Alioto (56433)
malioto@tatp.com
Joseph M. Patane (72202)
jpatane@tatp.com
Lauren C. Capurro (241151)
laurenrussell@tatp.com
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415-346-0679

***Lead Counsel for Indirect Purchaser Plaintiffs***