| | |
|---|---|
| 1 | Mario N. Alioto (56433) |
| 2 | Joseph M. Patane (72202) |
|   | Lauren C. Capurro (241151) |
| 3 | TRUMP, ALIOTO, TRUMP & PRESCOTT LLP |
|   | 2280 Union Street |
| 4 | San Francisco, CA 94123 |
|   | Telephone: 415-563-7200 |
| 5 | Facsimile: 415- 346-0679 |
|   | Email: malioto@tatp.com |
| 6 | jpatane@tatp.com |
|   | laurenrussell@tatp.com |

*Lead Counsel for the
Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-JST; No. CV-13-03234-JST |
| | MDL No. 1917 |
| This Document Relates to: | **DECLARATION OF JEROME FISHKIN** |
| All Indirect Purchaser Actions | |

Declaration of Jerome Fishkin

## DECLARATION OF JEROME FISHKIN

1. I am an active member of the State Bar of California and have been in good standing since my admission in January 1971. I was also admitted to practice law before this Court in January 1971 and have been in good standing since then. I am also in good standing with the United States Supreme Court; the United States Court of Appeals, Ninth Circuit; United States Tax Court; and the other three United States District Courts in California.

2. From 1971 to 1978, I was a general practicing attorney. From 1978 to 1983, I was employed by the State Bar of California as a staff attorney, which included working with State Bar sections and committees, legal research, and working with the Judicial Advisory Committee on Legal Forms.

3. I specialize in Attorney Professional Responsibility and Conduct matters, and I have done so since 1983. From 1983 to 1992, I was a disciplinary prosecutor for the State Bar of California. Since 1992, I have been in private practice. I advise attorneys on matters of ethics and law practice, testify as an expert witness, and represent attorneys in various proceedings where attorney professional responsibility is at issue.

4. I have written and lectured extensively on a wide variety of subjects pertaining to attorney professional responsibility. My resume is attached at Exhibit A. My list of past expert experience is at Exhibit B.

5. My experience includes advising attorneys who enter into co-counsel agreements with other attorneys. My experience includes advising attorneys and law students on issues involving misrepresentation and misrepresentation by omission.

6. I have been asked by Mario Alioto to address the issue of an alleged misrepresentation to the Special Master in this matter, pertaining to an alleged agreement to act as co-counsel with the attorney.

7. In applying the legal principles to my opinion, I am aware of Local Rule 11-4, which as relevant reads, "(a) Duties and Responsibilities. Every member of the bar of this Court and any attorney permitted to practice in this Court under Civil L.R. 11 must (1) Be familiar and comply with the standards of professional conduct required of members of the State Bar of California; . . . (4) Practice with the honesty, care, and decorum required for the fair and efficient administration of justice. ¶ Commentary. The California Standards of Professional Conduct are contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and decisions of any court applicable thereto."

8. In reaching my conclusions, I have read the following documents:

 (a) May 9, 2008, Order of Judge Conti appointing the Alioto firm as interim lead counsel for the Interim Purchaser subclass. (Document 47)
 (b) May 27, 2008 e-mail from Craig Corbitt of the Zelle law firm to Mario Alioto.
 (c) May 29, 2008 e-mail from Mario Alioto to Craig Corbitt.
 (d) October 5, 2016 Declaration of Francis O. Scarpulla (Document 4929). I paid specific attention to his paragraph 10 that incorporated as Exhibits 1 and 2, undated text messages from people at the Zelle law firm.
 (e) October 23, 2016 transcript of proceedings before Special Master Quinn, specifically pages 31-33.

9. In my opinion, Mario Alioto did not make a misrepresentation to Special Master Quinn. There was no misrepresentation because there was no agreement with Alioto for the Zelle firm to become co-lead counsel. Thus, I first address the issue why I believe there was no agreement, since my "no misrepresentation" opinion is based on the absence of an agreement.

10. The relevant portions of the e-mails are as follows:

**(a) Corbitt of Zelle to Alioto, May 27, 2008:**

"We have agreed that your firm and mine will run this case on a joint basis such that Zelle Hoffmann will be a de facto or "shadow" co-lead counsel, and that the same multiplier will be applied to our time and to your firm's time in any division of fees."

**(b) Alioto to Corbitt, May 29, 2008**

In working with your firm, however, my firm must retain those responsibilities set forth in part IV of Judge Conti's Lead Counsel Order, . . . . However, the same multiplier shall be applied to your time as is applied to our time.

11. In addition, I read other documents.

(a) In the hearing before the Special Master, Mr. Quinn asked at 31: 24 – 33:16, whether there was any agreement between Alioto and the Zelle firm that the Zelle firm would act as co-lead counsel. Alioto replied no.

(b) That Alioto response is consistent with the text message submitted as Exhibit 2 to the Scarpulla declaration, which begins, "Chris and Judith called

and they really don't want me to submit anything since they have said there was no agreement."

(c) The Alioto response is also consistent with Exhibit 1 to the Scarpulla declaration. There, the response on the bottom of the Exhibit states, "He asked for it and I gave it to him." I infer from that correspondence that the only writings that are supposed to be a contract, are the two e-mails in paragraph 9 above.

12. Judge Conti's "Lead Counsel Order" is filed as Document 47 in this matter. Part IV of that order recites all of the duties of lead counsel. The duties of lead counsel are not recited in any other portion of the order.

13. Jack Garvey's declaration states that the interpretation of contract is governed by Cal Civil C 1585. That code section reads:

"An acceptance must be absolute and unqualified, or must include in itself an acceptance of that character which the proposer can separate from the rest, and which will conclude the person accepting. A qualified acceptance is a new proposal."

14. Before analyzing the section on acceptance of an offer, one must first analyze the offer itself. The underlying motion relies on the words of two e-mails, not conduct of the parties, and thus asserts the existence of an express contract under Cal Civil C 1620. I therefore look to the words of the alleged offer and acceptance.

15. Corbitt's offer does not state what acts would constitute "de facto" or "co-lead" counsel. One cannot imply a contract without looking to outside documents to define what acts would qualify under Corbitt's e-mail. In reaching my opinion, I

**Declaration of Jerome Fishkin**

5

will assume that the offer from Corbitt impliedly incorporates those sections of Judge Conti's order that spell out the duties of lead counsel. As stated above, all of those duties are in Part IV of Judge Conti's order and nowhere else.

16. Turning to the alleged acceptance, Alioto replied "…my firm must retain those responsibilities set forth in part IV of Judge Conti's Lead Counsel Order…." The alleged acceptance thus says, Alioto's office will do all duties set forth in part IV of Judge Conti's order and cannot share them with the Zelle firm. Alioto's response is heavily qualified. It removes all duties recited in part IV. Alioto's response is thus a material variation from the offer. Thus, Alioto's response was a "new proposal" under Cal Civil C 1585.

17. Mario Alioto's response to Corbitt is not an unqualified yes. Rather, his response says he will not agree to share with Corbitt, the duties in Section IV of Judge Conti's order. Once those conditions are removed from the alleged acceptance, there is nothing left to accept. There never was an agreement that the Zelle firm would be co-lead counsel.

18. The conditional nature of Mario Alioto's response is similar to the equivocal testimony in *American Aeronautics v Grand Central* (1957), 155 Cal App 2nd 69. There, the issue was, did the two parties come to an agreement to sign a contract. That case applies Cal Civil C 1585. Carpenter, the party seeking to establish the contract, claimed that Frankel, the other party, said he would execute the contract. But when pushed on further cross examination, Carpenter conceded that Frankel did not say yes; rather, Carpenter interpreted Frankel's failure to say no to mean yes. Here, the argument is that this court should hold that Alioto's failure to say no meant yes. On the contrary, Alioto's measured response meant no.

19. Here, neither Alioto nor the Zelle Law firm claim that there was a contract. Scarpulla, a stranger to the alleged contract, is attempting to use their communication to establish the contract. As in *American Aeronautics* at page 79, there is no evidence that the parties reached a mutual understanding.

20. If there were an agreement, of course Alioto would have to disclose it in response to the direct question from the special master. But neither Alioto nor the Zelle firm believed that they had an agreement. In evaluating Alioto's "no," this Court should apply California ethics law, which holds, a Court presumes that attorneys and judges obey all laws, particularly state and federal constitutions, which they are sworn to uphold. *Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, rehearing denied, review denied, certiorari denied 118 S.Ct. 347, 522 U.S. 937, 139 L.Ed.2d 270. The writings show that Alioto intended to obey the law. The writings do not show an agreement.

21. An alleged misrepresentation to a court must be material. The statement is material if there is a reasonable likelihood that the falsity could have affected the outcome. See e.g., *Dow v Virga* (9th Cr 2013) 729 F 3rd 1041. The discussion of the co-lead counsel proposal, without an actual agreement, is not material to this court's ruling on the relative entitlement to fees of the various law firms. There was thus no duty on Alioto's part to tell the Judge, well, we talked about it but never made an agreement.

22. The moving papers allege that Alioto's conduct was unethical. I disagree. First, there was no agreement. Second, if this court believes that there was an agreement, then the California ethics test is in *In Re Houghton* (1885) 67 Cal 511. The California Supreme Court states, if the statement is not the exact truth, but if the legal effect of the alleged misrepresentation is the same as the exact truth, then there is

no misrepresentation.  Here, the legal effect of the two e-mails is zero; the legal effect is the same as the actual truth, that is, no agreement.  Alioto is not making any request of this court to treat the Zelle firm as co-lead counsel.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.  Executed at Walnut Creek, California, on November 22, 2016.

_____
Jerome Fishkin