Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the*
*Indirect Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. CV-07-5944-JST; No. CV-13-03234-JST |
| | MDL No. 1917 |
| | **CLASS ACTION** |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **LEAD COUNSEL'S RESPONSE TO COOPER & KIRKHAM P.C.'S OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES**<br><br>Judge:  Honorable Jon S. Tigar<br>Court: Courtroom: 9, 19th Floor |

# TABLE OF CONTENTS

BACKGROUND ...................................................................................................................1

ARGUMENT ......................................................................................................................3

     I.     The Special Master Properly Applied Existing Case Law to Reduce the Fee
          Allocation to Cooper ..............................................................................................3

     II.    The Proposed Reductions to Cooper's Fee Allocation Are Well-Justified ..................6

     III.   The Additional Reductions to Cooper's Fee Proposed by Lead Counsel Are Also
          Well-Justified and Should Be Adopted By the Court ...................................................9

     IV.   Cooper Has Waived Any "General Objection" to Lead Counsel's Methodology in
          Allocating the Fee Award ........................................................................................12

CONCLUSION.................................................................................................................12

i

LEAD COUNSEL'S RESPONSE TO COOPER & KIRKHAM P.C.'S OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES,
Master File No. CV-07-5944-JST, MDL NO. 1917

1

# TABLE OF AUTHORITIES

2

3

Cases

4

*BioD, LLC v. Amnio Tech., LLC*, No. 2:13-CV-1670-HRH, 2015 WL11120706
(D. Ariz. Sept. 15, 2015)...........................................................................5, 8

5

6

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980),
*affd*, 661 F.2d 939 (9th Cir. 1981) ................................................................5

7

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994).....................................3, 6

8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900
(N.D. Cal. Apr. 3, 2013) ...........................................................................4, 8

9

*Keller v. Nat'l Collegiate Athletic Ass'n*, No. C 09-1967 CW, 2015 WL 8916392
(N.D. Cal. Dec. 15, 2015) ..........................................................................3, 6

10

11

*World Triathalon Corp. v. Dunbar*, 539 F. Supp. 2d 1270 (D. Haw. 2008)........................................8

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEAD COUNSEL'S RESPONSE TO COOPER & KIRKHAM P.C.'S OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES,
Master File No. CV-07-5944-JST, MDL NO. 1917

Lead Counsel responds as follows to Cooper & Kirkham P.C.'s ("Cooper") Objection to Corrected Special Master's Report and Recommendation Re Allocation of IPP Class Counsel Attorneys' Fees (ECF No. 5024).

**BACKGROUND**

Lead Counsel proposed that Cooper's allocation from the aggregate fee award be $2,345,866.91.  (ECF No. 4800, Ex. 1.)  Lead Counsel calculated this allocation by applying the Court's 10% across-the-board cut (ECF No. 4740 at 15-16) to Cooper's current rate lodestar, and applying a fractional multiplier of 0.8494 (0.85 if you round up).  (ECF No. 4800, Ex. 1.)

Cooper objected to Lead Counsel's proposed allocation. Cooper claimed to have been "a member of the top tier of firms" during the litigation, and complained that it was being punished for objecting to the settlements and the aggregate fee award.  Cooper proposed that it should receive a multiplier of 1.8962—the average of other "leadership firms"—with the additional compensation to be deducted from the three "trial team" firms.  (ECF No. 4821.) Cooper did not, as it now claims, object generally to "Lead Counsel's placement of firms in the 'tier' arrangement," or to Lead Counsel's proposed allocation or that of any other firm.  (ECF No. 5024 at 11-12.)

In response, Lead Counsel explained his rationale for Cooper's allocation at length.  (ECF No. 4853 at 19-29.)  That rationale is summarized below:

- Cooper worked at cross purposes to Lead Counsel during the pendency of the litigation, including involving himself (along with Scarpulla) in the dispute with the California Attorney General ("AG") and Philips; advocating that Lead Counsel accept an extremely low settlement with Philips prior to class certification; informing Special Master Walker that Lead Counsel was overvaluing the case and "present[ing] themselves" to him as alternative co-lead counsel (ECF No. 3200 at 5); and advising Lead Counsel that Samsung SDI would pay no more than $50 million one week before Samsung SDI agreed to pay $225 million to settle with IPPs.  All of these unauthorized activities made settling this case much more difficult (ECF No. 4853 at 20-22);

- Instead of working with Lead Counsel to resolve any issues with the settlements and get the settlements approved, Cooper filed formal objections to the settlements, the notice program, the plan of distribution, and the motion for attorneys' fees.  All but one of those objections was rejected by the Special Master and the Court, and most of them lacked any factual or legal support (*id*. at 23-26);

- Despite most of its objections being categorically rejected by the Special Master and the Court, and despite having no standing to do so, Cooper has appealed the Court's approval of the settlements (and possibly the aggregate fee award), thereby further delaying the distribution to Class Members and putting the entire settlements at risk (*id*. at 26); and

- Cooper greatly overstated its contribution to the case such that the 1.8962 multiplier it requested would not be appropriate, even without the firm's negative activities (*id*. at 27-29).

The Special Master agreed with Lead Counsel that Cooper's involvement with the California AG and Special Master Walker were "indeed at 'cross purposes' with Lead Counsel," but disagreed that they were at cross purposes with the Class.  (R&R at 18.)  He therefore concluded that "those activities do not deserve retribution in the form of an unfavorable multiplier."  (*Id*.)[1]  The Special Master further concluded that "no criticism was warranted for the objections [Cooper] asserted as to Chunghwa and the scope of the release."  (R&R at 18; *see also id.* at 13 ("Scarpulla's criticism of the release of class members who received no compensation was a colorable argument that at least had the potential to benefit Class members.").)

However, the Special Master found that Cooper's decision to file formal objections regarding "the scope of notice and to the quality of Lead Counsel's leadership definitely showed a lack of collaboration and a disregard of the interests of the Class."  (*Id*; *see also id.* at 14 (finding that several of Scarpulla's and Cooper's objections "were gratuitous and potentially damaging to the Class . . . . To impose that risk on the Class . . . is inexplicable.").)  He agreed with Lead Counsel

---

[1] As further explained below, Lead Counsel disagrees with this conclusion.

1   that Cooper could have raised the notice objection at the preliminary approval stage before notice

2   had been given and paid for, and that "the objections to Lead Counsel's strategy and leadership

3   bordered on being frivolous and did nothing but assist the challenges by professional objectors."

4   (*Id*.)  He also criticized Cooper's appeal of settlement approval and noted it is "delaying any

5   settlement distribution to [its] own clients." (*Id*.)  Finally, the Special Master expressly rejected

6   Cooper's contention that reducing its multiplier will chill lawyers from asserting legitimate

7   objections to class action settlements and fee awards, noting that "[h]ere, there is a clear distinction

8   between bringing meritorious and frivolous objections."  (*Id*.)  Ultimately, the Special Master

9   recommended that Cooper receive a multiplier of 1.25.  (*Id*. at 19.)

10          Cooper now objects to the Special Master's recommendation, arguing once again that it

11   should not be punished for raising or pursuing settlement objections—regardless of their merit—

12   because it has the potential to chill advocacy of settlement and fee objections.  (ECF No. 5024 at 3-

13   6.)  Cooper further contends that none of its objections were frivolous and cannot justify the lower

14   multiplier proposed by the Special Master.  (*Id*. at 6-11.)  Cooper's objections should be overruled,

15   and the original allocation to Cooper by Lead Counsel should be adopted..

16                                      **ARGUMENT**

17   **I.      The Special Master Properly Applied Existing Case Law to Reduce the Fee
               Allocation to Cooper**
18

19          Cooper argues strenuously that reducing its fee allocation, as the Special Master proposes,

20   would constitute a "penalty rule," the adoption of which could chill advocacy by lawyers who have

21   participated in class action litigation for fear of risking their investment in the case.  Cooper further

22   claims that there is no support for such a rule in the case law.

23          Cooper's fears are entirely unfounded.  The Special Master is not proposing a "penalty rule."

24   He is merely applying existing law, which required him to consider "the relative efforts of, and

25   benefits conferred upon the class by, co-counsel" (*Keller v. Nat'l Collegiate Athletic Ass'n*, No. C

26   09-1967 CW, 2015 WL 8916392, at *4 (N.D. Cal. Dec. 15, 2015)), and "whether the attorneys'

27   'specific services benefited the fund—whether they tended to create, increase, protect or preserve the

28   fund.'" *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994).

---

3

LEAD COUNSEL'S RESPONSE TO COOPER & KIRKHAM P.C.'S OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES,
Master File No. CV-07-5944-JST, MDL No. 1917

1    The "failure to act collaboratively" standard comes from *TFT-LCD*. *See In re TFT-LCD*

2 *(Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900, at * 9 (N.D. Cal. Apr. 3, 2013).

3 ("Factors meriting a downward adjustment include: . . . failure to act professionally and

4 collaboratively to prosecute the joint IPP effort . . . .")  Cooper criticizes the Special Master's

5 application of this standard here because his allocation has been reduced as a result of it.  But

6 Cooper made no objection to the application of this standard in *LCD,* where both Cooper and

7 Scarpulla benefited from it due to the Special Master's reductions to other counsel's allocations.

8 Moreover, it is not a novel concept to find that the failure to work professionally and collaboratively

9 with co-counsel in a class action has a potentially negative impact on the class.  (*See* Manual for

10 Complex Litig., §10.0 ("Fair and efficient resolution of complex litigation requires at least that

11 (1) . . . ; (2) *counsel act cooperatively and professionally*; . . .") (emphasis added).)

12    Applying these standards, the Special Master analyzed whether each of Cooper's activities

13 benefited the Class (or had the potential to benefit the Class), or whether they were potentially

14 damaging to the Class.  He then reduced or increased the allocation accordingly.  (*See, e.g.*, R&R at

15 13 (finding that no reduction is appropriate for the scope of the release objection because it "was a

16 colorable argument that at least had the potential to benefit Class members"); R&R at 18 (agreeing

17 that Cooper's objections to notice and Lead Counsel's strategy and leadership were "counter-

18 productive and potentially damaging to the IPP Class.")  The Special Master expressly found that

19 most of Cooper's post-settlement activities did not benefit the Class, and did nothing "to create,

20 increase, protect or preserve" the settlement fund.  (*Id*.)  Indeed, the Special Master agreed with Lead

21 Counsel that Cooper's (and Scarpulla's) post-settlement activities put the entire settlements at risk.

22 (*Id*. at 14.)  And now, Cooper is compounding that risk by appealing settlement approval and

23 delaying the distribution to his own client (*id*. at 18), despite having no standing to do so. (ECF No.

24 4740 at 35-36 (holding that Cooper and Scarpulla have no standing to object to the settlements

25 because they do not represent a class member).

26    When one considers Cooper's activities relative to the post-settlement work of other IPP

27 firms, which worked together cooperatively to get the settlements approved, the only possible

28 conclusion is that Cooper's allocation should be reduced in favor of these firms.  Cooper's relative

4

1  contribution to preserving and protecting the fund post-settlement is negative, whereas the

2  contribution of other firms who spent hundreds of hours advocating on behalf of the settlements, is

3  positive.  Lead Counsel and the Special Master properly took all of this into account in making their

4  proposed allocation.

5       Cooper criticizes the Special Master's findings on the grounds that his "reasoning was

6  colored by an underlying belief that the settlement at issue here is, in fact, in the best interests of the

7  nationwide settlement class."  (ECF No. 5024 at 4.)  This criticism ignores the fact that the law gives

8  the Special Master (and the Court) broad discretion in the approval of class action settlements and

9  the allocation of attorneys' fees.  *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal.

10  1980), *affd*, 661 F.2d 939 (9th Cir. 1981).  Thus, the Special Master is entitled, and indeed is

11  expected, to make a judgment about whether the settlements are in the best interests of the Class.

12  Moreover, both the Special Master and the Court have found—following many months of

13  voluminous briefing and a thorough airing of all issues—that the settlements at issue here are, in

14  fact, fair and reasonable and in the best interests of the Class.  (ECF Nos. 4351; 4712.)  It was

15  therefore entirely proper for the Special Master to apply these findings in the context of the fee

16  allocation.

17       Cooper also argues that the Special Master assumed that "the very act of raising an objection

18  disregards the interests of the settlement class."  (ECF No. 5024 at 5.)  There was no such

19  assumption by the Special Master.  The Special Master expressly distinguished between Cooper's

20  one meritorious objection and his many frivolous objections: "Here there is a clear distinction

21  between bringing meritorious and frivolous objections, and a distinction between working out

22  differences with Lead Counsel collaboratively early and privately instead of publicly objecting at the

23  last minute in an effort to bring down the entire settlement."  (R&R at 18.)  Cooper's argument also

24  ignores the fact that the Special Master distinguished Cooper's "scope of the release" objection from

25  its other objections, and held that even though that objection was rejected, no reduction to Cooper's

26  fee allocation was warranted because the Special Master believed it to be "a colorable argument that

27

28

1    at least had the potential to benefit Class members." (*Id.* at 13-14.)[2]   Thus, Cooper's fears that

2    legitimate advocacy will be chilled are unfounded.[3]

3         At bottom, Cooper's claim that its objections to the settlements should have no impact on the

4    compensation it receives for work done during the litigation—regardless of how meritless and

5    potentially damaging to the Class they were—is untenable and contrary to the law.  Cooper's post-

6    settlement objections are part of its overall contribution to the litigation and must be considered as

7    part of the fee allocation, in the same way that other firms' post-settlement contributions have been

8    considered.  It would be profoundly unfair to other IPP firms—whose relative contributions to the

9    benefits received by the Class far exceed that of Cooper—if Cooper were to receive the same

10   allocation that it otherwise would have.

11   **II.    The Proposed Reductions to Cooper's Fee Allocation Are Well-Justified**

12        Contrary to Cooper's arguments, the Special Master's proposed reductions to Cooper's fee

13   allocation are well-justified.[4]   Cooper argues that its notice objections and the objections to Lead

14   Counsel's leadership were not found to be "frivolous" (as that term is defined by the Supreme

15   Court), and that the Special Master's characterization of them as "show[ing] a lack of collaboration

16   and a disregard for the interests of the Class," is insufficient to justify reducing its fee allocation.

17   (ECF No. 5024 at 6-7.)  These arguments are flawed for a number of reasons.

18        First, Cooper cites no support for its claim that the Special Master had to specifically find

19   that Cooper's objections meet the legal definition of "frivolous" in order to justify reducing its fee

20   allocation.  The law requires only that the Special Master consider "the relative efforts of, and

21   benefits conferred upon the class by, co-counsel" (*Keller*, 2015 WL 8916392, at *4), and whether

22   Cooper's objections "tended to create, increase, protect or preserve the fund.'" *Class Plaintiffs v.*

23   ────────────────────

24   [2] As further explained in Section III, Lead Counsel disagrees with the Special Master's finding that
     Cooper's "scope of the release" objection does not warrant a reduction in its fee allocation.

25   [3] Cooper cites to a number of cases holding that objectors play an important role in class action
     settlements and should be encouraged.  (*See* ECF No. 5024 at 5-6.)  But these cases are inapposite
26   here because Cooper's objections were—for the most part—meritless.  More applicable here are the
     many cases criticizing objectors to class action settlements for wasting the court's and the parties'
27   time with meritless objections that merely delay settlement approval and the distribution to the class.
     (*See, e.g.*, ECF No. 4370-2 (Gralewski Decl., Appendix A-H.)

28   [4] Indeed, as further explained below, additional reductions to Cooper's allocation are also justified.

─────────────────────────────────────────
6

1   *Jaffe & Schlesinger, P.A.*, 19 F.3d at 1308.  And as demonstrated above, this is precisely what the

2   Special Master did.

3          Second, while the Special Master and the Court may not have specifically found Cooper's

4   objections to be "frivolous," they categorically rejected Cooper's objections as without legal or

5   factual support.  (*See, e.g.*, ECF No. 4853 at 24-25.)  And in his most recent R&R, the Special

6   Master refers to Cooper and Scarpulla's objections as "gratuitous and potentially damaging to the

7   Class" (R&R at 13); "speculative" and "inexplicable" (*id.* at 13-14); "unmeritorious and potentially

8   harmful" (*id.* at 14); "show[ing] a lack of collaboration and disregard for the interests of the Class"

9   (*id.* at 18); "border[ing] on being frivolous" (*id.*); "counter-productive and potentially damaging to

10  the IPP Class" (*id.*); and "unhelpful." (*Id.*)  Moreover, in rejecting Cooper's argument that reducing

11  his fee will discourage legitimate objections, the Special Master distinguishes between Cooper's

12  "meritorious and *frivolous* objections."  (*Id.*, emphasis added.)

13         Indeed, despite Cooper's protestations to the contrary, many of its objections did in fact lack

14  an arguable basis in fact or law and therefore meet the legal definition of "frivolous."  For example,

15  Cooper argued that firms with lodestars of less than $2 million did no real work and should be

16  eliminated from the lodestar computation.  As the Court noted in rejecting this objection, Cooper's

17  "*ipse dixit* assertion" was unsupported by any reference to actual billings, and "simply cannot be the

18  case . . . ."  (ECF No. 4740 at 15.)  Likewise, Cooper's claim that Lead Counsel brought on the trial

19  team because he lacked experience is belied by the fact that it was Mr. Scarpulla who first

20  approached Mr. Goldberg to ask that he assist with trying this case.  (ECF No. 4851, ¶3.)

21         Cooper's criticisms of Lead Counsel's billing practices and handling of expenses were also

22  frivolous.  (*See, e.g.*, ECF No. 4487 at 2 n.1 (questioning the Chunghwa notice costs).)  Despite the

23  Special Master's findings to the contrary, Cooper has repeatedly speculated—entirely without

24  support—that Lead Counsel's time records are not contemporaneously made.  (*See, e.g.*, ECF No.

25  4363 at 35.)  With regard to billing in quarter hour increments and block billing, the case law is clear

26  that these practices are only problematic to the extent they are abusive and inflate the hours claimed

27  (*See* ECF No. 4558 at 6-9.)  As the Special Master and the Court recognized, Cooper utterly failed to

28  show that Lead Counsel's (or any other firm's) billing practices are abusive.  (ECF Nos. 4351 at 71-

7

LEAD COUNSEL'S RESPONSE TO COOPER & KIRKHAM P.C.'S OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES,
Master File No. CV-07-5944-JST, MDL No. 1917

1    73; 4740 at 15.)  Yet Cooper continues to assert these objections in its most recent filing.  (ECF No.

2    5024 at 11.)  No reasonable person could characterize the repeated assertion of these objections as

3    "relatively mild and measured," and "completely grounded in undisputed fact." (ECF No. 5024 at

4    11.)

5         Third, Cooper is wrong that a finding of "lack of collaboration" is insufficient to justify

6    reducing its fee allocation without also finding "wasted effort, inefficiency or duplication of effort."

7    (ECF No. 5024 at 7.)  Cooper cites no support for this assertion.  And, as already demonstrated

8    herein, the "failure to collaborate" or "lack of collaboration" standard is based on Judge Illston's fee

9    allocation in *LCD*. (*LCD*, 2013 WL 1365900, at * 9.)  Moreover, Cooper's many meritless

10   objections—which it has pressed repeatedly despite being repeatedly rejected, and despite having no

11   standing to do so—*did* cause wasted effort and inefficiencies for IPP Counsel, the Special Master

12   and the Court, and continue to do so.

13        Finally, Cooper's attempts to justify it notice objections and its failure to collaborate with

14   Lead Counsel to resolve its concerns privately ring hollow.  As an initial matter, Cooper's *post-hoc*

15   explanation for its notice objections should be stricken because Cooper has never made these

16   arguments before now.  *See BioD, LLC v. Amnio Tech., LLC*, No. 2:13-CV-1670-HRH, 2015 WL

17   11120706, at *1 (D. Ariz. Sept. 15, 2015) (holding matters "not presented to the Special Master"

18   are deemed "waived" for purposes of review by the district court); *World Triathalon Corp. v.*

19   *Dunbar*, 539 F. Supp. 2d 1270, 1278 n.13 (D. Haw. 2008) (holding parties cannot raise "new

20   arguments for the first time on an objection to a Special Master's Report").  Indeed, from the outset

21   of this process back in October 2015, Lead Counsel has repeatedly questioned why Cooper and

22   Scarpulla did not raise their objections with Lead Counsel before filing formal objections, and

23   Cooper has never before given its current explanation.

24        More substantively, Cooper's assertion that it wasn't even worth trying to work out the

25   notice objection privately with Lead Counsel is belied by the record.  As Lead Counsel has pointed

26   out on several occasions, we wrote to Cooper (along with the other counsel for class representatives)

27   prior to filing the preliminary approval motion and specifically asked that Cooper review the motion

28   with its client and contact Lead Counsel with any questions or concerns.  (ECF No. 4370-1, Ex. A.)

8

1    But we received no response.  Lead Counsel was also in contact with Cooper during the Summer of

2    2015 regarding Cooper's declaration in support of the fee motion. (ECF No. 4821-1, ¶5.) This

3    interaction was not antagonistic and would have been an opportunity for Cooper to raise its concerns

4    regarding the notice program and the scope of the release.

5         Cooper also attempts to explain its notice objections, and why they could not have been

6    raised earlier, but its explanation is confusing and nonsensical.  Cooper states that its objection was

7    to the dissemination plan for the notice and not the text of the notices, but it is unclear why this

8    matters.  Cooper admits that it was informed of the "dissemination plan" for the notice on May 29,

9    2015 when the Declaration of Joseph M. Fisher was filed (ECF No. 3863).  (*See* ECF No. 5024 at

10   8:25-9:5.)  Yet Cooper made no objection to notice until its filing on October 8, 2015 (ECF No.

11   4115).  The October 8, 2015 filing refers to the May 29, 2015 Fisher Declaration as the basis for the

12   notice objections.  (*See id.* at 2.)  Thus, Cooper's claim that its notice objection "didn't mature" until

13   after Fisher's declaration in support of final approval on November 20, 2015 makes no sense.

14        As the Special Master found, all of Cooper's notice objections could (and should) have been

15   raised with Lead Counsel at the preliminary approval stage.  (R&R at 18.)  The nationwide notice to

16   the Class cost approximately $1.5 million.  By waiting and filing formal objections, Cooper ensured

17   that it was too late for Lead Counsel to even attempt to address any of Cooper's concerns without all

18   of the money and time spent on the notice program being wasted.  No matter what way you slice it,

19   Cooper's actions were not in the best interests of the Class.[5]

20        **III.    The Additional Reductions to Cooper's Fee Proposed by Lead Counsel Are Also
          Well-Justified and Should Be Adopted By the Court**

21

22        Lead Counsel continues to believe that a several of Cooper's other activities justify further

23   reductions in its fee allocation beyond what the Special Master has recommended.

24        As an initial matter, Lead Counsel disputes the Special Master's finding that, but for its

25   objections, Cooper "would have fit comfortably at the top of the 1.3-1.5 tier of multipliers."  (R&R

26

27   [5] As Lead Counsel noted in its response to Cooper's objections before the Special Master (ECF No.
     4853), the only explanation for Cooper's failure to even attempt to resolve its objections informally,
     is that it was acting (and is continuing to act) in its own self-interest to increase its fees from the
28   large settlement fund in this case.  There can be no other explanation.

1    at 18.)  Lead Counsel would have recommended a 1.4 multiplier for Cooper—the same level as the

2    Glancy firm and Sharp McQueen, which (like Cooper) staffed the case primarily with one senior

3    associate/junior partner who was a team leader of a document review team, but who took no

4    depositions and drafted no briefs.  (ECF No. 4853 at 17-18.)  A 1.5 multiplier would place Cooper

5    above Vogl Meredith and at the same level as the Law Office of Lawrence G. Papale, both of which

6    took multiple depositions and did other higher level work than Cooper.  (*Id*.)  As such, the Special

7    Master's reduction to Cooper's multiplier is a mere 0.15.  It should be reduced even further.

8           First, the record is uncontroverted that Cooper and Scarpulla "presented themselves" to

9    Special Master Walker and sought to be appointed co-lead counsel.  There is no evidence to support

10   the Special Master's conclusion that Special Master Walker "initiated and requested Scarpulla [and

11   Cooper's] involvement."  (R&R at 12.)  There is also no evidence that their activities in any way

12   benefited the Class.  In fact, the opposite is true.

13          Lead Counsel presented evidence that on two occasions, Scarpulla and Cooper advocated

14   that Lead Counsel accept much smaller settlements from the two most culpable defendants in the

15   case than Lead Counsel was ultimately able to negotiate, and Scarpulla informed Special Master

16   Walker that Lead Counsel was overvaluing the case.  (ECF No. 4853-1, ¶¶ 24, 25, 27.)  The Special

17   Master fails to address this evidence.  These activities are another example of Cooper's "failure to

18   work professionally and collaboratively" with Lead Counsel.  They were also potentially damaging

19   to the Class since Cooper and Scarpulla lacked knowledge of the case and were advocating that IPPs

20   accept much lower settlements than Lead Counsel ultimately negotiated.[6]

21          Second, Cooper's failure to produce his time records is further basis to reduce his lodestar.

22   Cooper's time records are the best evidence of what he was doing behind the scenes.  Cooper's

23   _____

24   [6] Mr. Scarpulla's time records show that he was in regular contact with certain defense counsel
     during the latter half of 2014 and early 2015—at the same time as Lead Counsel was discussing
25   settlement with those same defendants.  (ECF No. 4818-2.)  Based on other statements made by Mr.
     Scarpulla around the time, Lead Counsel believes that Scarpulla was discussing settlement with
26   these defendants at much lower numbers than Lead Counsel was demanding, thereby creating the
     specter of a reverse auction.  (ECF No. 4853-1, ¶¶ 27-28.)  Cooper claims that he was not involved in
27   these discussions and without Cooper's time records, Lead Counsel cannot prove otherwise.  But
     Scarpulla's time records show that Cooper was in regular contact with Scarpulla during this period,
28   thus at the very least, Cooper was likely very much aware of Scarpulla's activities with defendants.

1   attempts to justify his actions behind the scenes, but he won't produce the evidence that will show

2   exactly what he was doing.  The Court should draw a negative inference from this.  But the better

3   remedy, in fairness, is for the Court to order Cooper to produce his time records immediately.

4        Lead Counsel requested these time records during the proceedings before the Special Master.

5   The Special Master felt that since Cooper was not seeking to be paid for this time, the Special

6   Master did not need the underlying time records.  But now the issue has been put before this Court

7   by Cooper.  Cooper claims he did not engage in any improper activity during the course of the case.

8   These records are the best evidence of this and therefore must be produced.

9        Third, the Special Master's conclusion that Cooper's "scope of the release" objection was a

10  "colorable argument" is at odds with both the Special Master's own findings and those of the Court

11  at the settlement approval stage.  (See ECF No. 4853 at 24 (describing the rejection of Cooper's

12  objections by the Special Master and the Court in no uncertain terms).)  And even if it was a

13  "colorable argument," as with the notice objections, the scope of the release objection could (and

14  should) have been raised with Lead Counsel informally at the preliminary approval stage.  By

15  waiting until notice had been given and filing a formal objection, Cooper put the entire settlements at

16  risk.[7]  Indeed, the scope of the release objection is the one that attempted (and attempts) to scuttle the

17  entire plan of allocation and send the settlements back to the drawing board.  Under the Special

18  Master's own reasoning, a further reduction for this objection is warranted.

19       Finally, Cooper never had standing to object to the settlements or the aggregate fee award

20  because it is not a class member and its own client was apparently not willing to object.  The fact

21  that Cooper decided to press ahead with its objections—and now to file an appeal—despite clearly

22

23

24  [7] Cooper points to its October 1, 2015 letter to Lead Counsel as evidence that it did attempt to
    resolve its scope of the release objection informally.  On the contrary, Cooper's letter was
25  deliberately timed one week before the October 8, 2015 objection deadline to cause maximum
    disruption to the settlement approval process.  Cooper and Scarpulla hoped to force Lead Counsel to
26  have to amend the settlements and/or the plan of distribution, and re-issue notice to the class at a cost
    of $1.5 million.  They would then have argued (as they have done with Chunghwa) that Lead
27  Counsel alone should have to shoulder the cost of additional notice, and that they should be
    compensated for identifying a problem with the settlements.  They likely would also have moved for
28  appointment as co-lead counsel to renegotiate the settlements with defendants.  Thus, Cooper's
    claim that this letter was an effort to be collaborative rings hollow.

1  having no standing, is another example of its "failure to act professionally and collaboratively."

2  This too warrants an additional reduction to Cooper's fee allocation.

3      In sum, Lead Counsel's proposed 0.85 multiplier for Cooper is more than sufficient. It is less

4  than the 1.0 multiplier for the Barry firm, since Barry's negative contributions to the case pale in

5  comparison to Cooper's, but Cooper's work on the case was higher level than the Barry firm.  And it

6  is more than Scarpulla and Moore (0.75), since neither of those firms did any substantive work in the

7  case to counter their negative contributions.

8  ### IV.    Cooper Has Waived Any "General Objection" to Lead Counsel's Methodology in Allocating the Fee Award

9

10      Cooper claims to have previously asserted a "general objection" to "Lead Counsel's

11  placement of firms in the 'tier' arrangement, and in particular, the multipliers assigned to Lead

12  Counsel, the late-added trial counsel, and certain of the other firms in the two highest tiers."  (ECF

13  No. 5024 at 11-12.)  Cooper fails to identify these objections in the record (*see id.* at 12:1 (citing

14  only to objections by other firms)), and Lead Counsel has been unable to identify them in Cooper's

15  previous filings.

16      Cooper filed its objection to Lead Counsel's proposed allocation on September 7, 2016 (ECF

17  No. 4821)—the court-ordered deadline for filing such objections (ECF No. 4748).  In that filing,

18  Cooper objected only to its own allocation and suggested that the Special Master increase its

19  allocation by decreasing the allocation to the three trial team firms. (ECF No. 4821 at 20-21.)

20  Cooper did *not* object to the tiers proposed by Lead Counsel, or the multipliers to Lead Counsel or

21  any firm other than the trial team.  Because Cooper failed to make these objections in its September

22  7, 2016 filing, Cooper waived its right to make these objections, and cannot make them now.

23  ### CONCLUSION

24      For all the foregoing reasons, the Court should adopt Lead Counsel's proposed fee allocation

25  for Cooper.

26  Dated: November 25, 2016        Respectfully submitted,

27          By:   */s/ Mario N. Alioto*

28          Mario N. Alioto (56433)
        malioto@tatp.com

LEAD COUNSEL'S RESPONSE TO COOPER & KIRKHAM P.C.'S OBJECTION TO SPECIAL MASTER'S
REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES,
Master File No. CV-07-5944-JST, MDL No. 1917

Joseph M. Patane (72202)
jpatane@tatp.com
Lauren C. Capurro (241151)
laurenrussell@tatp.com
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415-346-0679

*Lead Counsel for Indirect Purchaser Plaintiffs*