JOSEF D. COOPER (53015)
TRACY R. KIRKHAM (69912)
JOHN D. BOGDANOV (215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA  94103
Telephone:  (415) 788-3030
Facsimile:  (415) 882-7040
jdc@coopkirk.com
trk@coopkirk.com
jdb@coopkirk.com

*Counsel for Class Representative Steven Ganz
And Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:  CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>All Indirect-Purchaser Actions | **Master File No. 3:07-cv-5944 JST**<br><br>**MDL No. 1917**<br><br>**COOPER & KIRKHAM, P.C.'S RESPONSE TO LEAD COUNSEL'S PARTIAL OBJECTION TO SPECIAL MASTER'S CORRECTED REPORT AND RECOMMENDATION RE ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES** |

COOPER & KIRKHAM, P.C.'S RESPONSE TO
LEAD COUNSEL'S PARTIAL OBJECTION TO
SPECIAL MASTER'S CORRECTED REPORT
AND RECOMMENDATION

Master File No. 3:07-cv-5944 JST
MDL 1917

**TABLE OF CONTENTS**                                                    **PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.     C&K NEVER ARGUED THAT ITS LODESTAR ALONE SHOULD BE
        EXEMPT FROM THE 10% CUT APPLICABLE TO ALL OTHER FIRMS. . . . . . . 2

III.    C&K NEVER WORKED AT CROSS PURPOSES TO IPP COUNSEL. . . . . . . . . .3

IV.     C&K NEVER GAVE LEAD COUNSEL ANY ADVICE  . . . . . . . . . . . . . . . . . . . . 6

V.      C&K WAS NOT UNCOOPERATIVE IN LEAD COUNSEL'S
        AUDIT OF THE FIRM'S LODESTAR. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VI.     LEAD COUNSEL HAS FAILED TO DEMONSTRATE THAT C&K
        EVER ACTED TO THE DETRIMENT OF THE CLASS'S INTERESTS . . . . . . . . .9

VII.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

1  **TABLE OF AUTHORITIES**                                    <u>**PAGE(S)**</u>

2  <u>**Federal Cases**</u>

3  *In re THC Financial Corp. Litig.*
       86 F.R.D. 721 (D. Haw. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.      INTRODUCTION**

2          Lead Counsel has objected to the proposed fee allocation for Cooper & Kirkham, P.C.

3    ("C&K") in the "Corrected Special Master's Report & Recommendation re Allocation of IPP

4    Class Counsel Attorneys' Fees," Dkt. 4976, ("Fee Allocation R&R") on the grounds that the

5    Special Master failed to sufficiently punish C&K for objecting to the proposed settlements, filing a

6    notice of appeal from the overruling of those objections, and committing various other

7    transgressions that Lead Counsel characterizes as uncooperative actions.[1]   Lead Counsel requests

8    that the Court reject the punishment recommended by the Special Master, which is a .25 multiplier

9    reduction from the 1.5 multiplier that Mr. Quinn determined the firm's litigation services had

10   earned.  Instead, Lead Counsel requests this Court to apply a negative multiplier of 0.8494 to the

11   firm's reduced lodestar.  Lead Counsel's proposed punishment would result in a fee that is

12   $1,796,581 less than the Special Master found would have been fair and adequate if C&K had not

13   objected to the proposed settlement, and $1,106,173 less than the Special Master's

14   recommendation.  Accepting Lead Counsel's suggestion will serve only one purpose—revenge.

15         C&K's objection to the Special Master's recommendation[2] briefed the question of whether

16   this Court should establish the proposition that the value of litigation class counsel's pre-

17   settlement contribution to the case can and should be discounted if counsel formally object to

18   some aspect of the settlement.  C&K argued that absent a showing that counsel took legally

19   frivolous positions in its objections, no punitive measure should be taken against any litigation

20   counsel who expresses disagreement with lead counsel, objects to the approval of a proposed

21   settlement, plan of distribution or attorneys' fee request, or files a notice of appeal from the

22   overruling of his or her objection(s).  As we explained there, establishing a policy that it is

---

24   [1] "Lead Counsel's Partial Objection to Special Master's Corrected Report and Recommendation re
     Allocation of IPP Class Counsel Attorneys' Fees," Dkt. 5026, ("Lead Counsel's Objection").

25   [2] "Cooper & Kirkham, P.C.'s Objection to Corrected Special Master's Report & Recommendation re
26   Allocation of IPP Class counsel Attorneys' Fees," Dkt. 5024, ("C&K Objection").

27   _____

     COOPER & KIRKHAM, P.C.'S RESPONSE TO          - 1 -          Master File No. 3:07-cv-5944 JST
28   LEAD COUNSEL'S PARTIAL OBJECTION TO                          MDL 1917
     SPECIAL MASTER'S CORRECTED REPORT
     AND RECOMMENDATION

appropriate to devalue a firm's pre-settlement contribution to the litigation as a punishment for raising issues about the fairness and adequacy of a proposed settlement will assuredly chill the advocacy of the lawyers in the best position to assist the court in the approval process.  It will mean that this role will be left exclusively to outside "professional" objectors who have nothing more to lose than the value of the time spent advancing their objections.

C&K hereby incorporates those arguments in opposition to Lead Counsel's objection to the Fee Allocation R&R.  Accordingly, this memorandum will focus on the factual inaccuracies advanced by Lead Counsel in support of his suggested punishment of C&K.

## II.    C&K NEVER ARGUED THAT ITS LODESTAR ALONE SHOULD BE EXEMPT FROM THE 10% CUT APPLICABLE TO ALL OTHER FIRMS

Lead Counsel repeats the mistake made by the Special Master when Mr. Quinn stated that C&K had argued that its lodestar exempt from the 10% across-the-board cut being made to all firms.  Lead Counsel's Objection at 3, 5, citing Fee Allocation R&R at 17-18.  Lead Counsel then compounds the Special Master's mistake by implying that C&K requested Lead Counsel to also exempt the firm from the cut, stating that he "saw no reason to excuse Cooper from the 10% cut applicable to all firms."  *Id.* at 3.  Presumably, Mr. Alioto thinks that if this Court believes that C&K made such a request, this will make the firm look greedy in the eyes of the Court.  The truth is that C&K never spoke to Lead Counsel about his allocation recommendation, and never requested either Lead Counsel or the Special Master to exempt it from the 10% lodestar reduction.

The Special Master's error in this regard is apparent in the statements at page 17 of the Fee Allocation R&R where he says: "Lead Counsel recommended that Cooper & Kirkham, P.C. ("Cooper") receive a multiplier of .8494 on its post-10% cut lodestar of $2,761,632.00 . . . . Cooper objects to the allocation, arguing that its total lodestar of $3,068,480 should be exempt from the across-the-board 10% cut and should receive a multiplier of 1.8962, for a total payout of $5,236,587.64."   The correct arithmetic is that $5,236,587.64 divided by 1.8962 equals $2,761,632, which is the firm's lodestar less 10%.  Indeed, the language of C&K's allocation request to the Special Master was as follows: "The average multiplier recommended by Lead

Counsel for the other leadership firms whose contributions were specifically noted by the Special Master in the quotation (Dkt. 4351 at 61) on page 2 of this memorandum, is 1.8962.  Application of this multiplier to C&K's lodestar, *after the 10% reduction*, yields a fee of $5,236,587.64."[3]  What C&K did say about the 10% across-the-board lodestar reduction was that it had the effect of compounding the negative multiplier that Lead Counsel wanted to apply so that the $2,345,866.91 fee Lead Counsel is advocating represents 77% of C&K's actual lodestar, rather than 85%.  Dkt. 4821 at 3.

## III.    C&K NEVER WORKED AT CROSS PURPOSES TO IPP COUNSEL

Lead Counsel asserts that he recommended a negative multiplier for C&K because "Cooper injected himself into unauthorized activities" and "Cooper worked at cross purposes to IPP Counsel."  Lead Counsel's Objection at 3, 10.  Lead Counsel never describes how Mr. Cooper injected himself or the nature of his allegedly unauthorized activities.  Accordingly, Mr. Cooper's declaration is the only evidence in the record concerning Mr. Cooper's activities in this case.[4]  All of the activities in which Mr. Cooper participated were in conjunction with attorneys at the Zelle firm—Messrs. Scarpulla and Corbitt and Ms. Zahid.  Although Mr. Alioto apparently contends that Mr. Scarpulla was exempt from his authorization for the Zelle firm to work on the case, he makes no such claim as to Mr. Corbitt and Ms. Zahid.  And while Lead Counsel contends that his email exchange with Mr. Corbitt does not constitute an agreement that Zelle would have the authority of a shadow lead counsel, he proposes that their time should be compensated at the fifth highest multiplier (1.9587) in the case.  Thus, Lead Counsel is advocating for the bizarre result that Mr. Corbitt and Ms. Zahid should be compensated at nearly twice their hourly rates for talking to Mr. Cooper and for reading an email from Mr. Bogdanov regarding issues relevant to

---

[3] "Objection of Cooper & Kirkham, P.C. to Lead Counsel's Revised Proposed Allocation of Aggregate Fee Award to Indirect Purchaser Plaintiffs' Counsel," Dkt. 4821 (emphasis added).

[4] "Second Declaration of Josef D. Cooper in Support of Cooper & Kirkham, P.C.'s Objection to Lead Counsel's Revised Proposed Allocation of Aggregate Fee Award to Indirect Purchaser Plaintiffs' Counsel," Dkt. 4946 at ¶¶8-11, 15.

1  settlement discussions with Philips, while C&K should be penalized with a negative multiplier

2  because Mr. Cooper's and Mr. Bogdanov's participation in those activities was "unauthorized."

3  *See*, Dkt. Nos. 4853 at 20, 22; 4853-1 at ¶24; 4878 at 2, 5-7; 4878-1 at ¶¶21-24.

4  　　　　The only evidence Lead Counsel offers that Mr. Cooper ever worked at "cross purposes to

5  IPP counsel" is his own opinion in one of the few paragraphs in his declaration that were not

6  stricken from the record by the Special Master as hearsay or speculation lacking in foundation.

7  *See*, Dkt. Nos. 4853-1, 4874, 4911, 4934 and 4949.  In fact, it appears that the paragraph relied

8  upon by Mr. Alioto, paragraph 25, only survived because the Special Master forgot about C&K's

9  motion to strike it when he drafted his order since, like similar paragraphs that were removed from

10  the record, it is nothing more than Lead Counsel's imaginings about conversations between Mr.

11  Cooper and Judge Walker in which Mr. Alioto does not claim to have participated, and which, in

12  fact, never took place.

13  　　　　While there is some authority for reducing the compensation of counsel who worked at

14  cross purposes to other counsel, that authority relies on a finding that this behavior resulted in time

15  for which the class should pay because it was duplicative and unproductive.  That is not the claim

16  here.  There is absolutely no evidence in the record that any of the time in C&K's lodestar was

17  duplicative or unproductive, or that the complaints that Mr. Alioto believes Mr. Cooper made to

18  Judge Walker were in any way injurious to the class's interests.

19  　　　　C&K has the sixth largest lodestar among the fifty firms to whom the Special Master is

20  allocating fees, and was one of the top contributors to the common expense fund.  Dkt. 4073, at 2,

21  4.  Every hour of C&K's lodestar was invested by either John Bogdanov or Tracy Kirkham in the

22  litigation before the settlement approval process began.  Dkt. 4073-6 at ¶9.  All of that time

23  reflects efforts expended in litigating with the defendants.  The lodestar includes no time that Mr.

24  Cooper allegedly spent complaining about Lead Counsel or preparing or arguing the objections to

25  the settlement, plan of distribution and/or Lead Counsel's fee request.  *Id*. at ¶6.  Lead Counsel did

26  not dispute the worth or propriety of one hour of C&K's $3,068,480 lodestar at any point during

27

28  COOPER & KIRKHAM, P.C.'S RESPONSE TO          - 4 -          Master File No. 3:07-cv-5944 JST
   LEAD COUNSEL'S PARTIAL OBJECTION TO                        MDL 1917
   SPECIAL MASTER'S CORRECTED REPORT
   AND RECOMMENDATION

1  the litigation, or during the rigorous and extensive review of all lodestars that he asserts was

2  conducted by a committee before submission of the joint fee petition. Dkt. 4071-1 at ¶119.

3      Lead Counsel's support for his assertion that Mr. Cooper worked at cross purposes to IPP

4  counsel are his statements that Mr. Cooper contacted Judge Walker "to complain about Lead

5  Counsel's handling of the case" and "accuse[] him of being uncooperative with the California AG

6  and . . . being unrealistic regarding settlement prospects." Dkt. 4853-1 at ¶25. These statements

7  are completely without foundation. Mr. Alioto is simply not competent to testify about

8  conversations that he believes took place between Mr. Cooper and Judge Walker. Mr. Cooper,

9  who is competent to testify as to what he did and said, denies that he ever contacted Judge Walker

10 for any reason related to this case, and testified that he never spoke to Judge Walker about this

11 litigation before the entry of the R&R recommending his appointment as co-lead counsel. Dkt.

12 4946 at ¶¶12-17.

13      Mr. Cooper also testified that he had no involvement in the dispute between Mr. Alioto

14 and the California AG other than an occasional informal conversation with Emilio Varanini, who

15 was handling this litigation for the AG's office, and with whom Mr. Cooper was working in

16 several other cases. Dkt. 4946 at ¶13. During each of those conversations, Mr. Cooper testified,

17 he urged Mr. Varanini "to continue doing everything in his power to work with Lead Counsel in

18 the most cooperative and collegial manner possible, and expressed the view that continued friction

19 was not in the best interests of either the CRT class or the citizens of California." *Ibid.*

20      Lead Counsel takes issue with the Special Master's statement that he believes that "Cooper

21 and Scarpulla became involved in those issues at the urging of Special Master Walker and did so

22 to benefit the Class" because Judge Walker used the words "presented themselves" in his R&R

23 (Dkt. 3200). Lead Counsel's Objection at 9. First, no one knows what Judge Walker meant by

24 the word, "presented," and the record is unequivocal that Mr. Cooper never approached Judge

25 Walker. Second, Lead Counsel misses the point. Even if Mr. Cooper had "presented" himself to

26 Judge Walker, or did criticize Lead Counsel, it is irrelevant to the question of whether C&K

27

28

1   should be paid commensurate to the value that Mr. Bogdanov's and Ms. Kirkham's services

2   brought to the class's claims against the defendants.

3          As the Special Master recognized, there was nothing in Judge Walker's R&R that

4   threatened the class's interests.  All the R&R did was to politely state that it appeared to the retired

5   Chief Judge of the Northern District of California (who was, as Lead Counsel has noted, "charged

6   with settling the case and mediating the settlement negotiations," Dkt. 4853 at 22) that, given

7   conflicts with the California Attorney General and the press of trial preparation, Mr. Alioto could

8   use some help.  Judge Walker recommended that it would be beneficial to both Lead Counsel and

9   class members to bring in two of the most experienced antitrust counsel in the country to conduct

10  settlement negotiations.  Dkt. 3200.  The only interest that was threatened by this recommendation

11  was Mr. Alioto's interest in remaining sole lead counsel.  As the Special Master found: "Mr.

12  Cooper's involvement in the dispute with the California AG and in Special Master Walker's

13  recommendation that Messers. Cooper and Scarpulla be appointed co-lead counsel was indeed at

14  'cross-purposes' with Lead Counsel, but that is not the critical point.  Those efforts were not, the

15  Special Master believes, at 'cross-purposes' with the Class."  Dkt. 4976 at 18.  As such, they

16  provide no basis for punitive measures against C&K.

17  **IV.    C&K NEVER GAVE LEAD COUNSEL ANY ADVICE**

18         Lead Counsel claims that C&K should be punished because "Cooper also urged Lead

19  Counsel to follow advice that would have had drastic consequences for the Class had it been

20  followed."  Lead Counsel's Objection at 3.  However, at page 8 of the same objection, Lead

21  Counsel states that he "had almost no contact with . . . Cooper while the case against the

22  Defendants was being actively litigated."  The only "example" of Mr. Cooper's bad advice is Lead

23  Counsel's assertion that Mr. Cooper "informed Lead Counsel that Samsung SDI would pay no

24  more than $50 million to settle the IPP case, and advised [him] to accept that amount."  *Ibid.*

25         The sole evidence in the record for this is Mr. Alioto's statement that "[d]uring a telephone

26  call in early January 2015, Cooper and Scarpulla informed me that Samsung SDI would pay no

27  more than $50 million to settle the IPP case, and advised that Lead Counsel accept that amount."

28  COOPER & KIRKHAM, P.C.'S RESPONSE TO          - 6 -          Master File No. 3:07-cv-5944 JST
    LEAD COUNSEL'S PARTIAL OBJECTION TO                          MDL 1917
    SPECIAL MASTER'S CORRECTED REPORT
    AND RECOMMENDATION

Dkt. 4853-1 at ¶27.  Lead Counsel never acknowledges that the record also contains a far more specific declaration from Mr. Cooper specifically refuting this assertion: "I did participate in a conference call with Messrs. Alioto, Goldberg and Scarpulla in early January, 2015, which Mr. Alioto organized to discuss the upcoming Samsung mediation.  Since I never spoke with Samsung's counsel, I had no knowledge of and never opined on what Samsung might be willing to pay, nor did I recommend acceptance of any amount.  I do not recall that Mr. Scarpulla said anything that could properly be characterized as is described by Mr. Alioto."  Dkt. 4946 at ¶18.

Again, all of this is really beside the point because there is no authority that making the mistake of opining to co-counsel that a defendant will pay less than it ultimately pays in settlement is grounds to have the value of all other litigation efforts discounted below lodestar.  The Special Master is absolutely correct that Lead Counsel's proposed compensation for C&K is the result of "his irritation and resentment over [Cooper's alleged] uncooperative conduct toward him personally."  Dkt. 5026 at 10.  All the way through Lead Counsel's Objection, he confuses and conflates his own personal interests with the Class's interests.  For example, he argues that C&K should get a negative multiplier because "IPP Class Counsel incurred hundreds of thousands of dollars in fees and expenses" responding to C&K's settlement objections.  Dkt. 5026 at 7.  While "hundreds of thousands" seems to be a bit of an exaggeration, C&K knows firsthand that dealing with settlement objections cuts into any lead counsel's multiplier.  This may be irritating to the lawyers, but it is not adverse to the class's interests.

## V.   C&K WAS NOT UNCOOPERATIVE IN LEAD COUNSEL'S AUDIT OF THE FIRM'S LODESTAR

Lead Counsel states that he "applied the same audit procedures to . . . Cooper . . . as he did the other counsel involved in the case," and that "[a]lthough Cooper was initially uncooperative, Cooper's lodestar was ultimately included in the joint Fee Petition."  Frankly, C&K has no idea what Lead Counsel is talking about.  C&K was completely cooperative in the audit process.

First, as shown above, no time incurred by C&K was questioned during the audit process.  Lead Counsel's only questions to C&K concerned the firm's costs, specifically invoices C&K

1   paid to Veritext court reporters.  Cooper Decl., Dkt. 4821-1 at ¶5 and Exs. A, B.  Mr. Cooper

2   explained that the invoices all pertained to real-time transcriptions of depositions at which Mr.

3   Bogdanov appeared, plus one rough transcript.  *Ibid*.  Mr. Cooper further noted that Veritext

4   charged C&K for hard copies of various transcripts and other charges which were never ordered

5   (which the firm had reversed); the only charges paid were those pertaining to services of which

6   Mr. Bogdanov specifically remembered availing himself.  *Ibid.*  For clarification, these charges

7   were placed in a different expense category in the final version of Mr. Cooper's fee declaration.

8   *Ibid*.

9        In addition, Lead Counsel proposed a $634.00 reduction in the firm's expense submission

10  to "compl[y] with the guidelines set up by Judge Tigar during the DPP fee and expense

11  proceedings."  *Id*. at ¶6 and Ex. C.  The four deleted expenses were the added cost of "Economy

12  Plus" airline seats purchased for Mr. Bogdanov (who is 6'4" tall) to attend depositions.  The

13  upgrade provided him with a few extra inches of legroom while flying coach.  *Id.*  It was a minor

14  matter to which Mr. Cooper stated that he had no intention of objecting.  *Id*. at ¶6 and Ex. C.[5]

15       The only dispute between C&K and Lead Counsel during the preparation of the joint fee

16  petition arose when Lead Counsel attempted to edit the words of Mr. Cooper's draft declaration.

17  Lead Counsel sent Mr. Cooper an email on August 18, 2015, in which he requested that Mr.

18  Cooper revise the portion of the fee declaration in which he discussed his decision not to request

19  compensation for his personal time.  Specifically, Lead Counsel requested that Mr. Cooper

20  eliminate the following statement: "I understand that Mr. Scarpulla is including his time relating to

21  Special Master Walker's Recommendation in his lodestar, and I do not wish my decision not to

22  include such time to reflect in any way upon that decision."  Dkt. 4073-6 at ¶7; 4821-1 at ¶5 and

23  Ex. A.  Mr. Cooper refused to delete the sentence.  Dkt. 4821-1 at ¶5 and Ex. A.  Mr. Alioto

---

25  [5] The Special Master noted that eliminating charges for more leg room on a flight, among other delineated
26  charges, was "more conservative, in fact, than [the Special Master] would have been in assessing the same
     expenses."  Dkt. 4351 at 83.

28  COOPER & KIRKHAM, P.C.'S RESPONSE TO        - 8 -        Master File No. 3:07-cv-5944 JST
     LEAD COUNSEL'S PARTIAL OBJECTION TO                     MDL 1917
     SPECIAL MASTER'S CORRECTED REPORT
     AND RECOMMENDATION

reiterated his request, but did not try to force Mr. Cooper to make the change, writing on September 2, 2015, "[e]ither way, we still intend to include your fees and expenses in our fee motion." *Id.* at Ex. B. If this is what Lead Counsel is referring to, it certainly is not grounds to punish C&K by devaluing the firm's contribution to the litigation effort.

## VI. LEAD COUNSEL HAS FAILED TO DEMONSTRATE THAT C&K EVER ACTED TO THE DETRIMENT OF THE CLASS'S INTERESTS

In an attempt to paint some activity of C&K as adverse to the Class, Lead Counsel claims that C&K's objections and appeal are "delaying the conclusion of this litigation" and "putting any recovery for the Class at risk." Lead Counsel's Objection at 3, 7. Much of Lead Counsel's Objection is devoted to demonizing C&K for having joined the ranks of the "settlement spoilers" who file objections and take appeals with the "goal" of "upset[ting] settlements or chang[ing] settlement terms, in order to seek fees . . . [or] simply to hold up settlements, by filing frivolous appeals (they have filed 11 appeals in this case to date), and using the delay to extract payments in exchange for dismissal of their appeals." *Id.* at 7-8. Actually, C&K has filed a single appeal, and Lead Counsel has made absolutely no attempt to demonstrate that it is frivolous. All the fiery rhetoric about sinister motives fails to demonstrate that after more than 40 years leading the plaintiffs' class action bar, C&K has suddenly and inexplicably gone over to the dark side. C&K has never before objected to a settlement recommended by its co-counsel, and the first and only other time that it has been involved in such a dispute was 36 years ago, where C&K was proposing a settlement that was opposed by the late David B. Gold. *In re THC Financial Corp. Litig.*, 86 F.R.D. 721 (D. Haw. 1980).

Stripped of the histrionics, Lead Counsel's railing on about C&K's sinister motives is nothing more than the argument that C&K should be punished for raising and pursuing objections. Talking about delay adds nothing. The settlement approval process itself delays the conclusion of litigation and the distribution of settlement proceeds from what occurs in non-class actions. However, the law holds that the benefits of a complete and in-depth investigation of the issues involved in allowing plaintiffs and their counsel to bind absent parties in a representative capacity

1   far outweigh this detriment.  As for "putting any recovery at risk," there is no way that C&K's

2   objections put "any" recovery for the Class at risk.  The objections may put the recovery

3   represented by the proposed settlement at risk, but only if they are sustained and the settlement

4   disapproved by an appellate court.  That, of course, would mean that there had been a finding that

5   the settlement is not in the best interests of the Class.  If that happens, however, then the parties

6   will resume litigating and the Class will have all of the same prospects for recovery that it had

7   before Lead Counsel entered into the proposed settlements.

8   **VII.   CONCLUSION**

9          Lead Counsel has failed to provide any credible basis for his objection to the fee allocation

10  recommended for C&K by the Special Master, or support for the adoption by this Court of the

11  negative multiplier suggested by Lead Counsel.  Lead Counsel's objection should be overruled.

12  Dated: November 25, 2016                     Respectfully submitted,

13

14                                                 /s/     Josef D. Cooper
                                                  Josef D. Cooper

15
16                                            Josef D. Cooper (53015)
                                            Tracy R. Kirkham (69912)
17                                            John D. Bogdanov (215830)
                                            COOPER & KIRKHAM, P.C.
                                            357 Tehama Street, Second Floor
18                                            San Francisco, CA 94103
                                            Telephone: (415) 788-3030
19                                            Facsimile: (415) 882-7040
                                            Email:  jdc@coopkirk.com

20

21

22

23

24

25

26

27

28  COOPER & KIRKHAM, P.C.'S RESPONSE TO          - 10 -          Master File No. 3:07-cv-5944 JST
    LEAD COUNSEL'S PARTIAL OBJECTION TO                          MDL 1917
    SPECIAL MASTER'S CORRECTED REPORT
    AND RECOMMENDATION