Theresa D. Moore (99978)
Attorney At Law
One Sansome St,, 35th Fl
San Francisco, CA 94104
Telephone: (415) 434-8900
Facsimile:  (415) 434-9200
*tmoore@aliotolaw.com*

*Class Counsel for Indirect
Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 3:07-cv-5944 JST<br>MDL No. 1917 |
| | **CLASS ACTION** |
| This Document Relates to:<br>Indirect-Purchaser Class Actions | **RESPONSE TO LEAD COUNSEL'S PARTIAL OBJECTION TO SPECIAL MASTER'S CORRECTED REPORT AND RECOMMENDATION OF ALLOCATION OF IPP CLASS COUNSEL ATTORNEYS' FEES (Dkt 5026)**<br><br>Judge: Honorable John S. Tigar<br>Court: Courtroom 9, 19th Floor |

**To the Honorable Judge John S. Tigar,**

**Response To Lead Counsel's Partial Objection To Special Master's Corrected Report And Recommendation Of Allocation Of IPP Class Counsel Attorneys' Fees (Dkt 5026)**

**INTRODUCTION**

Out of the $158 million fee award Lead Counsel (LC) objects to the $64,000 pre settlement lodestar allocation to Class Counsel Moore, as reduced by Special Master (SM) at LC's behest, from Moore Counsel's 9 year $209,000 pre settlement lodestar request (an average of 27 hours per year).

Separate and apart, Moore Counsel has filed an objection to the SM Allocation based on the failure of the SM to take into consideration the $14 million benefit returned to the class based on the arguments, computations and comparisons with LCD that was presented by Moore beginning over a year ago on October 8, 2015 and in multiple other filings and oral arguments thereafter. (see Dkt 5025) LC includes this $14 million issue in its argument filing herein, and quotes from the SM R&R.

**ARGUMENT**

LC has taken a shotgun approach and has slung a wide variety of incorrect and untrue allegations and statements that are unsupported by any evidence, and where the only evidence in the record contradicts these shotgun points. Counsel herein is forced to respond with evidentiary examples to correct the record, and denies all such unfounded allegations.

**Pre-Settlement Lodestar**

Although stating Moore Counsel was "involved from the beginning" and is referred to as an "inside objector", LC for the very first time in the allocation phase, states Moore has no client. This argument is perplexing in light of all of the evidence showing Moore had multiple substantive conversations with LC during the pendency of the case (e.g. Dkt 4825-1), has a still live and pending Court Ordered Related Complaint on file, as well as a Consolidation Order, (Dkt 121, Pierce v Beijing-Matsushita et al 08-0337; Dkt 4076), and a firm Notice of Appearance for multiple other clients. (Dkt 189), as well as being included in the IPP Class Counsel fee motion.

Moore submitted one of the lowest and most efficient lodestars in the entire case. As co-lead counsel for the LCD matter Moore sought in CRT to give the opportunity for work to many lawyers, and did not seek a large role in CRT. It is uncontroverted by LC that during the course of this 9 year litigation Moore never received any communications from LC telling counsel not to

1

1  work on or read any filings LC served on Moore. LC never gave regular updates, nor supplied
2  sealed documents when requested. The evidence shows only that Moore was very prudent and
3  discriminating in the reading of documents, and only when necessary for a legal or case strategic
4  reason. On multiple occasions Moore discussed the case with LC and advised him based on an
5  extensive 35 year experience in other antitrust cases and as co-lead in LCD. Evidence shows all
6  efforts were on behalf of class members and clients and in support of LC and the CRT case. (see
7  Dkt 4825 p 2-3, 4825-1, Dkt 4873,4076)

**Unsubstantiated Allegations and Contradictory Findings**

9  LC's papers reprise unfounded and unsupported allegations, arguments, and incomplete
10 facts which then appear in the SM R&R as unfair characterizations based on no factual evidence.
11 The unfair characterizations are often of matters that were never an issue or question that SM
12 discussed, and contradict the facts in evidence.  Thus it becomes necessary herein to correct the
13 record and again deny all of the improper and unsupported accusations. To avoid delving into
14 minutia some examples will be given, much more supporting evidence exists in the record, and the
15 denial is complete.

16 <u>SM Incorrectly Finds All Objections Were Overruled And Frivolous, And Such Finding</u>
17 <u>Contradicts SM's Earlier And Concurrent Findings.</u>

18  SM used the following to reduce Moore's pre settlement lodestar allocation, and to refuse to
19 consider the quantifiable benefit Moore achieved for the class. Stating that certain factors "deserve
20 retribution in the form of an unfavorable multiplier" and as LC stated were used to punish counsel
21 for highlighting true facts to the Court (Dkt 4976, 18: 8-14; 5025-2, p 44:6-9)
22  SM writes, and it is repeated in LC's objection, that it is a " fairy tale" argument that Moore
23 can "discredit[ing] her own class's settlement in this CRT case…It would be extraordinary to
24 reward a class counsel for trashing her own client's settlement, thereby persuading the Court to cut
25 the fee award—and then claiming credit for thereby benefitting the Class." (Dkt 4976 p 22)  Yet the
26 binding authority states the opposite, and in the 9th Circuit it is reversible error to not compensate
27 such a lawyer for their efforts in increasing the settlement fund. *Rodriguez* v. *West Publishing*
28 *Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (finding clearly erroneous the district Court's refusal to

2

award fees to objectors who first raised the issue of objectionable incentive agreements and added $325,000 to the settlement fund for the class); see also William B. Rubenstein, Newberg on Class Actions § 13:37 (5th ed. 2014) "Thus, for example, if a class member objected to class counsel's fee and successfully trimmed that fee by, say, $100,000, that $100,000 would go back into the fund for the class's benefit; objector's counsel has therefore created a $100,000 benefit for the class and would be entitled to petition the Court to award them some percentage of that amount.".  This counsel did not "discredit" or "trash" the settlement, on the contrary, counsel provided necessary true facts and argument to the Court to avoid error.

SM writes that the amount of overall damages is "hardly a state secret". However, SM wrote in his R&R of Jan 2015 " *Certain objectors* are critical of the settlement amount. *They note* that it is only 20% of the damage estimate by IPP's expert. *They compare* that result to the 1.1 billion IPP settlement in LCD which was closer to 50% of its expert's damage figure." (emphasis added; Dkt 4351 56:27-57:2)   And at the allocation hearing SM himself is not sure how he knows the overall damage figure information for this motion. (5025, Ex A p10-11 "Wasn't that a matter of public record? Didn't I know that?), thus supporting and corroborating his earlier written word quoted above that correctly credits the objector (only Moore had this argument comparison) with the providing the full argument, overall damage amounts, and distinct percentage comparisons with the LCD case as required as accurate and non misleading Kerr factors. (see Dkt 5025)

Moore's objections were focused and definable, and not by any means a "laundry list" of objections as SM notes. (e.g. see 4113, 4436-4) As stated above the damage comparison objection was successful and did in fact avoid an appealable issue, and did in fact highlight and inform resulting in the return of $14 million to the class. SM earlier referred to the Lost and Abandoned State objections as a "*troublesome issue*" that "*tarnished the glow of success*" for LC, and SM considered such in recommending a reduced fee of 30% from LC's request of 33%. (Dkt 4351) SM is wrong that Moore did not have the Nationwide scope of release objection which he describes as having *"colorable merit"*. (Dkt 4976 ) The Nationwide forced release objection is an important objection and another issue of first impression for the 9th Circuit, and has been in every objection

filing by Moore. (Dkt 4113) Moore was also the first person to note that there were issues with the distribution of the Chunghwa settlement hinging on the current settlement approval. (Dkt 4113)

SM writes "[n]o criticism is warranted" regarding the notice objections, yet subsequently uses this factor to reduce the allocation as it "shows a lack of collaboration and a disregard for the interest of the class", completely disregarding the fact that the Court had to order re-notice of the Chunghwa settlement thus delaying any settlement because of LC error not because of the objection, and the fact that such will chill lawyers from asserting legitimate objections. Yet the law is clear, and courts have recognized that objectors can play a valuable role in class action settlements by creating an adversarial process at a time when both the plaintiffs and defendants advocate in favor of the settlement. See *Eubank v. Pella Corp.,* 753 F.3d 718, 720 (7th Cir. 2014; *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999); *Bell Atlantic Corp. v. Bolger,* 2 F.3d 1304, 1310 (3d Cir. 1993) ("The parties can be expected to spotlight the proposal's strengths and slight its defects. … In such circumstances, objectors play an important role…"); see also William B. Rubenstein,The Fairness Hearing: Adversarial and Regulatory Approaches, 53 UCLA L. Rev. 1435, 1475 (2006) "A judge will be most capable of making an accurate assessment … following an adversarial presentation ……The settling parties lack the incentives-indeed, possess the opposite incentives-to make this presentation."

SM takes umbrage with the "quality of leadership" objection, presumably referring to the objection regarding the Lost and Abandoned State of Massachusetts where LC on 2 separate occasions made the same legal error which then resulted in the loss to the class of a very large magnitude. Current case law states that LC still represents this class and yet is not compensating these class members. The appeal on a statute of limitations issue and others are ones of first impression for the both State and Federal law.  It would be inappropriate to sweep this under the rug, and these appealing class members should be commended for their courage. To punish a counsel is simply unfair.

SM rebukes and punishes counsel for not attempting to "work[ing] out differences with Lead Counsel collaboratively early and privately instead of publicly objecting at the last minute in an effort to bring down the entire settlement."  Yet SM is well aware of Counsel Moore's efforts to

4

Response To Lead Counsel's Partial Objection To Special Master's Corrected Report And Recommendation Of Allocation Of IPP Class Counsel Attorneys' Fees                    MDL 3:07-md-1917 JT

work out these issues in advance -- even though it is not required -- through both testimony under oath and the fact that SM was cc'd on Moore's first attempt to do just that. "I have no desire to delay the settlement and in fact early on made a reasonable request and offer to Class Counsel to work on and correct the errors in the Settlement, but was rebuked from any discussion". SM is aware of this overture and was copied on the very early request to discuss and correct the errors before it got to the briefing point. (Dkt 4436-4, p 48 Reply Decl ¶ 18)

    Without any foundation or evidence SM lumps Moore in with the Cooper and Scarpulla objectors, and their alleged transgressions, and insinuates there is a collective conspiracy, which is completely untrue. SM statement that Moore "joined" with Cooper and Scarpulla is a complete and unsupported fallacy. "These lawyers worked at odds with Lead Counsel and other IPP Counsel, to the detriment of the Class." The only evidence points to the opposite, that the claims process brought to the attention of many class members multiple errors in the settlement, and LC did not want to discuss it. (4436-4, see also 5025, 5025-1, 5025-2 p 18:19- 19: 11). It is a very difficult and risky proposition for counsel to accept the request for representation of these damaged class members and went forward for the class at great risk, such an accusation of "joining" is wholly unfounded. SM clearly improperly took these factors into consideration and reduced Moore's fee based on post settlement actions, as being a sort of "joint effort" that deserved collective punishment. (Dkt 5025-2,44:6-8)

In prior filings LC did not appear to argue that Moore "worked at odds." Moore's sin was keeping up on the case for the 9 years, and after settlement requested all time after 2008[1]. LC argues for the first time at this stage that Moore worked at odds. LC simultaneously argues Moore did not object to overall fees, a clear misrepresentation of filings. In Moore filings titled, "**Objection** To The Proposed Class Action Settlement Agreement **And Motion For Attorney Fees….**" and all subsequent related filings, Moore argued in the Attorney Fee Request section, "Although it is a very large settlement, it must be properly evaluated, and as written above, the class deserves much more." Such proper evaluation includes the computation and comparison to

---

[1] Noting in the provided Declaration the differing requests with both the full and partial lodestar

1   LCD as was consistently presented and argued. (see 5025, 4436-4 , 4113). Moore urged LC on
2   multiple occasions to put forth the evidence but it was never forthcoming. (e.g Tx Hrg 1/5/16)  It
3   was necessary to correct the misstatements by omission of LC in its arguments that the settlement
4   was "extraordinary" when in fact Moore argued it was not, that the court should take these factors
5   into consideration in determining the fee, and not simply abide by LC's bare conclusions of
6   "extraordinary result" and that they deserve 33%. While not recommending whether a particular
7   percentage was a good one or a bad one, the argument clearly led to the lowering of the percentage
8   and as stated, "the class deserves more." And the argument clearly succeeded in its intent, when the
9   court returned $14 million to the class. (arguably up to over $34 million when taking into
10  consideration that LCD objected to the R&R and again requested a 33% award from this Court).

11       SM equates valid objections with a disregard of the interests of the class, and disregards the
12  fact that doing such will chill lawyers from asserting legitimate objections, will foster conflicts with
13  counsel, and will work to the detriment of the class. All of the above incorrect factors were used to
14  incorrectly and unfairly mete out drastic reductions and denials in fees, an apparently "deserved
15  retribution" as stated by SM in the R&R.

16  <u>Myriad Of Incorrect Lodestar Related Statements With No Supporting or Incomplete Evidence</u>

17       Multiple facts were cited suggesting they were egregious negative facts, and the cites were
18  often incomplete and/or incorrect per the evidence. It is understandable the Court must use facts to
19  make these determinations, but the facts need to be correct. Following is a sample of unsupported
20  and incomplete facts.

21       There is not a scintilla of evidence that research was never given to counsel, it was, as is
22  shown by the evidence. This was never an issue or question that SM discussed. One example was
23  the massive research on defendants performed in LCD that was offered in person to LC as reflected
24  in the time sheets given to SM, (work which was apparently repeated by CRT workforce), or the
25  warning about the proposed Protective Order with the burdens reversed. (Dkt 4825 et al see also Ex
26  I & J; 4873, 4873-1)

27       LC never complained about counsel's rates which reflect very old and reduced rates ( Dkt
28  4825-1, ¶13 ) This was never an issue or question that SM discussed. Why would SM downgrade

6

the already reduced billing rate of a reputable and recognized antitrust attorney of 35 years who is an author, Judge Pro Tem, certified mediator, law school professor who has been lead counsel in over 100 trials, when much higher rates for this counsel have been approved regularly, higher rates in fact approved by this very SM in other cases, and where SM is aware that counsel voluntarily reduced the rate to a 4-8 year old rate?   The legitimate inference is because of the objection, and as shown above they non frivolous and meritorious objections.

Noting that counsel did not have expenses is not correct, only that counsel did not seek reimbursement of expenses. This was never an issue or question that SM discussed. Yet somehow this seemed to be used as a negative factor for counsel's allocation. (Dkt 4436-4, see Decl ISO Fees ¶ 17)

It is inaccurate that over half the time was spent "drafting" pleadings not identified. The evidence does not show such, and SM never discussed it or expressed questions. All declarations and filings clearly describe the work, and there is no dispute about that, as previously stated the issue is the value to the class and client.  But this characterization is a stretch and does not exist in any description of multitude of declarations, time sheets, and spreadsheets.

As stated under oath counsel was never requested to contribute to the litigation and believed it was because the CRT and LG settlements financed the litigation, and if asked would have contributed. It is unfair now to use this against counsel when never asked to contribute.

There is absolutely no need for such multiple characterizations, let alone such unfounded characterization. There is no dispute about time spent, and that it was exceedingly less time at $209,000 for 9 years, than that which has been shown to be reasonable in similar circumstances, as exemplified by LC and others in this and other cases. (e.g. Dkt 4892 Ex A, $232,325 for 5 1/2 yrs.; Dkt 5041 $295,375 for 4 yrs.) The issue is the value of the work, and for SM to de-value such work based on a supposed need for "retribution" or punishment for objecting or bringing certain facts to the courts attention is draconian at best.

**Allocation Process**

The Court awarded a 27.5% fee award to plaintiffs counsel. The Special Master's Appointment Order provides the scope of his reference, that he assist with the "[s]ettlements in the Indirect-

7

Response To Lead Counsel's Partial Objection To Special Master's Corrected Report And Recommendation Of Allocation Of IPP Class Counsel Attorneys' Fees                    MDL 3:07-md-1917 JT

1  Purchaser Cases…the determination of a fair and reasonable division of the aggregate award among
2  plaintiffs' counsel…including any objections to these matters…" (D.E. 4077) as amended (D.E.
3  4298).
4     As LC notes herein Moore "participated …in this litigation" and "was involved from the
5  beginning" and is an "inside objector". Moore is included in and part of the Attorney Fee Motion
6  on file.  LC, as well as multiple counsel, argued on multiple occasions, and were awarded increased
7  fee allocation recommendations for post settlement work (e.g. Dkt 5023-5 Ex 4p 4, p 10:21,
8  p11,10-25 ; Dkt. 5023-1 Ex 4, 4822, 4853 (and in fact much post settlement work included work
9  opposing arguments which in fact returned the $14 million to the class; and none of whom ever
10 gave an updated lodestar aside from Counsel Moore (5025-2, 16:23-17:3; 5025-3)
11    Counsel Moore is a plaintiffs class counsel[2], the post settlement enhanced benefit accrued for
12 the IPP damage class benefit when this Court made its Fee Order in August of 2016, counsel is and
13 always has been a part of this motion, with declarations and testimony on file in this motion. The
14 Court ordered the SM to determine plaintiffs class counsel's motion for fees and the allocation
15 thereto, all counsel argued, and the SM considered post settlement work in determining the
16 allocation. This fee motion is the actual motion wherein counsel's actions brought the $14 million
17 to the class, the court considered this $14 million in the $158 million award given to the attorneys,
18 this is the motion wherein the points were agued. The Special Master's Appointment Order clearly
19 provides for the scope for this reference for plaintiffs counsel herein, and is governed by Fed R Civ
20 Pro 23(e) (4) and 23 (h), with such extensive briefing on this issue there is no need to require that
21 scale of duplicate briefing and motion practice as LC suggests.
22    //
23    //
24    //
25    //
26    //

---

[2] Unlike Objector St. John who sought fees on other grounds and was not a plaintiffs counsel.

//
//
//
//
//
//
//
//

**CONCLUSION**

Counsel requests the Court refuse to punish counsel for bringing to the Court's attention facts which ensured a fair approval and fee motion process, and further requests a fair and impartial allocation including both pre and post settlement work and which considers and rewards counsel for the $14 million result achieved for the benefit of the class, as requested in filing Docket No. 5025.

Dated: November 25, 2016                Respectfully submitted,

By: /s/ *Theresa D. Moore*
        Theresa D. Moore

Theresa D. Moore (99978)
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 434-8900
Facsimile:  (415) 434-9200
*tmooreo@aliotolaw.com*

*Class Counsel*