Blake L. Harrop
Chadwick O. Brooker
Antitrust Bureau
Office of the Illinois Attorney General
100 W. Randolph Street
Chicago, Illinois 60601
(312) 814-1004 (phone)
(312) 793-3891 (phone)
(312) 814-4209 (fax)
bharrop@atg.state.il.us
cbrooker@atg.state.il.us

*Counsel for the State of Illinois*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | No. CV-07-5944-JST<br>MDL No. 1917<br><br>**State of Illinois' Motion to File Documents on the Public Record** |
| This Document Relates To:<br><br>All Actions | Date:   January 5, 2017<br>Time:   2 pm<br>Court:  Courtroom 9, 19th Floor, 450 Golden Gate Ave., San Francisco, CA<br>Judge:  Hon. Jon S. Tigar |

**Notice of Motion and Motion to File Documents on the Public Record**

PLEASE TAKE NOTICE that on Thursday, January 5, 2017, at 2 pm or as soon thereafter as the matter may be heard, the State of Illinois, through its Attorney General, will present this Motion in Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Jon S. Tigar.

The State asks under FRCP 26(c) and Civil Local Rule 79-5(g) for an order to require the parties to file on the public record all documents currently filed under seal in the docket entries identified in the attached Exhibit C.

**Table of Contents**

I.   Issue..................................................................................................5

II.  Facts .................................................................................................5

III. Argument: The Court should require the parties to file the identified
     documents on the public record because they have no compelling
     reason to keep them under seal...............................................................11

     A.  The State seeks public access only to merits-related filings,
         which require a compelling reason to keep under seal ...................12

     B.  The parties failed to overcome the presumption of access with
         compelling reasons because their affidavits provide no specific
         facts and instead recite only boilerplate conclusions......................15

     C.  Even if the parties had compelling reasons, they failed to narrowly
         tailor their redactions, often filing entire documents under seal....17

     D.  Even Judge Conti recognized his sealing orders, unsupported by
         articulated facts, were at best provisional .......................................18

IV.  Conclusion ..............................................................................................19

1

## Table of Authorities

2

3

**Cases**

4

*Apple Inc. v. Psystar Corp.,*
    658 F.3d 1150 (9th Cir. 2011) ................................................................15,19

5

*Asetek Danmark A/S v. CMI USA, Inc.,*
    No. 13-CV-00457-JST, 2015 WL 4116738 (N.D. Cal. July 7, 2015) ..........17

6

7

*Beckman Indus., Inc. v. International Insurance Co.,*
    966 F.2d 470 (9th Cir. 1992) ....................................................................16

8

9

*Brown & Williamson Tobacco Corp. v. F.T.C.,*
    710 F.2d 1165 (6th Cir. 1983) ..................................................................15

10

*In re Cendant Corp.,*
    260 F.3d 183 (3d Cir. 2001)......................................................................16

11

12

*Center for Auto Safety v. Chrysler Group, LLC,*
    809 F.3d 1092 (9th Cir. 2016) .............................................................11,12

13

14

*Cohen v. Trump,*
    No. 10-CV-0940-GPC-WVG,
    2016 WL 3036302 (S.D. Cal. May 27, 2016).............................................12

15

16

*Contratto v. Ethicon, Inc.,*
    227 F.R.D. 304 (N.D. Cal. 2005) ..............................................................16

17

18

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,*
    101 F.R.D. 34 (C.D. Cal. 1984)............................................................14,18

19

20

*Delphix Corp. v. Actifio, Inc.,*
    No. 13-CV-04613-BLF, 2014 WL 4145520 (N.D. Cal. Aug. 20, 2014).......17

21

22

*Foltz v. State Farm Mutual Automobile Insurance Co.,*
    331 F.3d 1122 (9th Cir. 2002) ...........................................................9,11,16

23

24

*Hodges v. Apple, Inc.,*
    No. 13–cv–01128–WHO, 2013 WL 6070408 (N.D. Cal. Nov. 18, 2013) ....16

25

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.,*
    No. 12-CV-03844-JST, 2015 WL 984121 (N.D. Cal. Mar. 4, 2015) ......15,16

26

*Kamakana v. City & County of Honolulu,*
    447 F.3d 1172 (9th Cir. 2006) ...........................................................11,13,16,18

*In re LDK Solar Securities Litigation,*
    No. C 07-05182 WHA, 2010 WL 724809 (N.D. Cal. Mar. 1, 2010) ...........16

*Lugosch v. Pyramid Co. of Onondaga,*
    435 F.3d 110 (2d Cir. 2006).........................................................................18

*In re Midland National Life Ins. Co. Annuity Sales Practices Litig.,*
    686 F.3d 1115 (9th Cir. 2012) ....................................................................12

*Nixon v. Warner Communications, Inc.,*
    435 U.S. 589 (1978) .....................................................................................11

*Oliner v. Kontrabecki,*
    745 F.3d 1024 (9th Cir. 2014) ...............................................................11,13

*Rieckborn v. Velti PLC,*
    No. 13-CV-03889-WHO, 2014 WL 4964313 (N.D. Cal. Oct. 3, 2014)........12

*San Jose Mercury News, Inc. v. U.S. District Court—Northern District,*
    187 F.3d 1096 (9th Cir. 1999) ....................................................................12

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan,*
    825 F.3d 299 (6th Cir. 2016) .......................................................13,14,15,16

*United States v. Kravetz,*
    706 F.3d 47 (1st Cir. 2013).........................................................................18


**Federal & Local Rules**

Fed. R. Civ. P. 26(c) .................................................................................................1

Civil L.R. 79-5(d)(1)(A) ...........................................................................................6

Civil L.R. 79-5(e)......................................................................................................8

Civil L.R. 79-5(g)......................................................................................................1

**Memorandum of Points and Authorities**

**I.  Issue**

The public enjoys a strong presumption of access to judicial records. In the absence of a compelling reason, parties must file merits-related documents on the public record. Here, the parties filed many merits-related documents under seal: pleadings, motions to dismiss, class-certification motions, motions in limine, and summary-judgment motions. They offered no supporting facts and instead relied on their attorneys' declarations, which recite sweeping boilerplate. Should the parties, where unable to support sealing with specific facts, be required to file these documents on the public record?

**II.  Facts**

The parties entered into a Stipulated Protective Order under which they could designate documents as confidential.[1] Although the order requires care in designating the documents, the parties and nonparties designated almost all the documents they produced. Because of the widespread designations, the parties filed many documents under seal, including substantive, merits-based papers. The State compiled these documents in Exhibit A.[2]

Although some pleadings and briefs were filed publicly in redacted form, the redactions conceal too many facts to understand the parties' arguments. And many of the related exhibits were sealed in their entirety. For example, when the Defendants sought in a motion in limine to prevent the direct-action plaintiffs (DAPs) from introducing evidence that the foreign price-fixing had an effect on

---

[1] Stipulated Protective Order § 5, June 18, 2008, ECF No. 306.

[2] Brooker Decl., Ex. A.

1   U.S. prices, likely for purposes of the Foreign Trade Antitrust Improvements Act

2   (FTAIA), the DAPs responded by citing two expert reports.[3] The reports

3   apparently provide evidence that the global price-fixing conspiracy had a direct

4   and substantial effect on U.S. commerce. The evidence is relevant not only to the

5   State's CRTs lawsuit, where the State likewise faces affirmative defenses based on

6   the FTAIA,[4] but also to the American public. The report excerpts, however, were

7   designated confidential, so the briefs were redacted and the expert reports filed

8   entirely under seal. The filings leave the public with no idea about the conspiracy's

9   effect on the U.S. market.

10       The three supporting declarations do not show why these documents are

11   confidential. The direct-action plaintiffs said only that "[t]he Designated

12   Documents contain [] confidential material"[5]—which the local rules deem

13   insufficient.[6] The Defendants filed two declarations, but each is filled with only

14   boilerplate:

15   • **Philips:** "Upon information and belief, . . . the documents and
16     data contain confidential, nonpublic, and highly sensitive
       business information about the Philips Defendants' sales
17     practices, business and supply agreements, and competitive
       positions. The documents and data describe relationships with
18

19   [3] Direct-Action Pls.' Resp. to Defs.' Mot. in Limine to Exclude Evidence of
     "Spillover" Or "Ripple" Effects of Foreign Price-Fixing Activities on U.S. Prices,
20   Feb. 27, 2015, ECF No. 3658.

21   [4] *See, e.g.*, Brooker Decl., Ex. D: Seventh Additional Defense of LG Electronics,
     Inc., Sept. 15, 2015 (asserting the State's "claims are barred, in whole or in part by
22   the Foreign Trade Antitrust Improvements Act").

23   [5] Randall Decl. ¶ 6, Feb. 27, 2015, ECF No. 3667-1.

24
25   [6] *See* Civil L.R. 79-5(d)(1)(A) ("Reference to a stipulation or protective order that
     allows a party to designate certain documents as confidential is not sufficient to
26   establish that a document, or portions thereof, are sealable.").

companies (including customers and vendors) that remain important to the Philips Defendants' competitive positions. Publicly disclosing this sensitive information presents a risk of undermining the Philips Defendants' relationships, would cause harm with respect to the Philips Defendants' customers, and would put the Philips Defendants at a competitive disadvantage."[7]

- **Toshiba:** "Exhibit 1 to the Randall Declaration contains confidential, non-public, proprietary, and highly sensitive business information. The exhibits concerns confidential, non-public information about the Toshiba Defendants' sales practices, business and supply agreements, and competitive positions. It describes relationships with companies — including customers and vendors — that remain important to the Toshiba Defendants' competitive positions. Upon information and belief, publicly disclosing this sensitive information presents a risk of undermining the Toshiba Defendants' relationships, would cause harm with respect to the Toshiba Defendants' competitors and customers, and would put the Toshiba Defendants at a competitive disadvantage."[8]

Nowhere in their extensive boilerplate does Philips or Toshiba offer any facts.

These fact-devoid declarations are ubiquitous. The State reviewed every publicly filed declaration offered in support of sealing a document and compiled the results in Exhibit B.[9] Nearly every declaration is by a party's lawyer, who uses over and over again substantially the same boilerplate. The declarations generally claim that disclosing the information in the documents would hurt customer relationships, often only on "information and belief." Not one offers specific facts.

---

[7] Gelott Decl. ¶ 6, Mar. 6, 2015, ECF No. 3740.

[8] Foster Decl. ¶ 8, Mar. 6, 2015, ECF No. 3733.

[9] Brooker Decl., Ex. B.

Many sealed documents have *no* supporting affidavit.[10] The filing party merely submitted a declaration under Local Rule 79-5(e) asserting that the documents were stamped confidential—without making a claim about their confidentiality and sometimes "specifically reserv[ing] the right to *challenge*" the sealing.[11]

The lack of care in designating documents, the failure to provide facts for sealing the documents, and the volume of documents filed in this case put an unfair burden on the Court to uphold the right of public access. Early on, when facing three motions for leave to file documents under seal, the Court expressed

> its concern about the administrative burden of reviewing these motions and the declarations filed in support of them. This review requires the Court and its limited staff to sift through thousands of pages of documents.[12]

Later in the litigation, the number of sealing motions ballooned. In January 2015, the Court had before it 71 motions to file under seal. Although the Court granted the motions, it understandably did no review. Instead, the Court said that "[t]hese motions are voluminous, and the Court simply lacks the capacity to conduct a thorough review of all the parties' submissions and their claims of sealability."[13]

In fact, the State could find no sealing order that recounts specific facts. Although occasionally orders say there is "good cause," those orders were prepared

---

[10] *See* ECF Nos. 1271, 1653, 1655, 2993, 2999, 3009, 3051, 3475, 3506, 3575, 3580, 3494, 3643, 3644, 3688, 3694, 3752, and 3754; *see also, e.g.*, ECF No. 3744 (supported by an affidavit, ECF 3744-1, for some but not all exhibits).

[11] *See, e.g.*, ECF Nos. 3754 at 3-4 (emphasis added).

[12] Order Regarding Administrative Mots. To File Under Seal 1, Dec. 27, 2012, ECF No. 1512.

[13] Order Granting Administrative Mots. for Leave To File Under Seal 1, Jan. 29, 2015, ECF No. 3498.

1   by the parties—not the Court. And, as we show below and in Exhibit C,[14] for the

2   documents subject to this Motion, sealing requires a compelling reason.

3       On several occasions, the Court invited nonparties to intervene to challenge

4   the sealing of these documents.[15] The State of Illinois accepts the invitation—not

5   only to access the documents itself, but to vindicate the public's right. The State

6   has a right to access the materials filed under seal as a collateral litigant[16] because

7   it is challenging the same conduct in an Illinois state-court action on behalf of

8   itself and its end-user residents. The State is suing six of the same defendant

9   families,[17] who raise substantially the same defenses.[18] And the protective order in

10  the state-court action automatically preserves any confidentiality claims for

11  documents from this case.[19] But in this Motion, the State seeks more than access

12

13  [14] Brooker Decl., Ex. C.

14  [15] Order Granting Administrative Mots. To File Under Seal 1, Mar. 24, 2015, ECF.
15  No. 3795; *see also* ECF Nos. 1512, 3498, & 3626.

16  [16] *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2002)
    (allowing collateral litigants to access documents under seal relevant to their own
17  cases by showing an "overlap in facts, parties, and issues").

18  [17] *Compare* IPPs' Fourth Am. Compl. ¶¶ 1-3, Jan. 10, 2013, ECF No. 1526 (alleging
    "[a]s a result of Defendants' unlawful conduct, Plaintiffs and Class members paid
19  higher prices for CRT Products than they would have paid in a competitive
20  market), *with* Brooker Decl., Ex. E: State's Am. Compl. ¶¶ 1-2 (alleging "[d]uring
    the Conspiracy Period, Defendants charged unlawfully inflated prices for CRTs,"
21  which "resulted in higher prices for CRTs than would exist in a competitive
22  market").

23  [18] *Compare, e.g.,* PENAC's Ans. to IPP's Am. Compl., Apr. 29, 2010, ECF No. 710
    (alleging forty-nine affirmative defenses), *with* Brooker Decl., Ex. F: PENAC's Ans.
24  to State of Ill.'s Am. Compl. (alleging substantially the same forty-one affirmative
    defenses).

25
26  [19] *See* Brooker Decl., Ex. G: Stipulated Protective Order, *State of Ill. v. Hitachi,
    Ltd.*, No. 12-CH-35266 (Cir. Ct. Cook Cnty. May 28, 2013); *see also* Brooker Decl.,

1    for itself.[20] To promote the State's strong policy of judicial transparency, the State

2    asks the Court to make the filings available to the public.

3        The State reviewed every docket entry and compiled a list of the entries with

4    sealed documents in Exhibit A. The State does not ask for public access to them

5    all; it does not seek the materials related to the sanctions filings, the discovery

6    motions, or the grand-jury materials. For those, the public's interest is diminished

7    relative to the need for secrecy. But the State does ask for public access to the

8    docket entries in Exhibit C, which are more than tangentially related to the

9    merits: documents related to the pleadings, motions to dismiss, class-certification

10   motions, motions in limine, and summary-judgment motions.

11

12

13

14

15

16

17

18

19

20

21   _____

22   Ex. H: Letter from Panasonic to State of Illinois (Aug. 26, 2015) (recognizing the
     Illinois Protective Order preserves the MDL's confidentiality designations); Letter
23   from Toshiba's Counsel to the State of Illinois, July 10, 2015 (same); Letter from
     Samsung SDI's Counsel to the State of Illinois, Feb. 2, 2016 (same).

24
     [20] When the State asked the Defendants during discovery for the filings under seal
25   here, the Defendants persuaded the state court that giving notice under section 8
     of this Court's Stipulated Protective Order imposed too great a burden.
26

1

2

### III. Argument: The Court should require the parties to file the identified documents on the public record because they have no compelling reason to keep them under seal.

3

4

Ever since the U.S. Supreme Court's decision in *Nixon*,[21] lower courts have

5

applied a strong presumption of access to court filings.[22] Unlike materials merely

6

exchanged during discovery, documents filed with the court "are public documents

7

almost by definition, and the public is entitled to access by default."[23] This right of

access promotes the public's understanding of the judicial process itself.[24]

8

9

The party—or nonparty—seeking to seal a judicial record bears the burden of

overcoming the strong presumption.[25] To rebut it, a party must articulate a factual

10

basis for sealing without relying on hypothesis or conjecture.[26] Even where the

11

documents are already sealed, the burden does not switch to the person seeking to

12

unseal them.[27] Instead, "[c]ompelling reasons must continue to exist to keep

13

14

15

[21] *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).

16

[22] *Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092 (9th Cir. 2016).

17

[23] *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006); *see also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1134 (9th Cir. 2002) (recognizing that "[w]hen discovery material is filed with the court, . . . its status changes").

18

19

20

[24] *Auto Safety*, 809 F.3d at 1102; *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014)

21

22

[25] *Id.* at 1096; *Kamakana*, 447 F.3d 1183-84 (applying the same stringent standard to a nonparty).

23

24

[26] *Auto Safety*, 809 F.3d at 1096.

25

[27] *Kamakana*, 447 F.3d at 1182 ("It makes little sense, however, to require the same specificity" of a person who seeks to have documents unsealed because, in that case, "the court is effectuating the presumption of public access . . . .").

26

judicial records sealed."[28] Although documents only tangentially related to the merits require "good cause,"[29] here the State limits its request to those documents going to the heart of the case and requiring a compelling reason.

**A. The State seeks public access only to merits-related filings, which require a compelling reason to keep under seal.**

The compelling-reason standard applies to all dispositive motions and other filings "directly related to the merits of the case"—that is, filings "that go to the heart of a case" that "involve[] important issues and information to which our case law demands the public should have access."[30] More specifically, the compelling-reason standard applies to all pleadings,[31] motions to dismiss,[32] class-certification motions,[33] motions in limine,[34] and summary-judgment motions.[35]

---

[28] *In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012).

[29] *Auto Safety*, 809 F.3d at 1096-97.

[30] *Id.* at 1098.

[31] *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2014 WL 4964313, at *2 (N.D. Cal. Oct. 3, 2014) (collecting cases and saying "courts in this District making sealing determinations treat a complaint as a dispositive motion").

[32] *Auto Safety*, 809 F.3d at 1098.

[33] *Cohen v. Trump*, No. 10-CV-0940-GPC-WVG, 2016 WL 3036302, at *3 (S.D. Cal. May 27, 2016) (collecting cases).

[34] *In re Midland*, 686 F.3d at 1120.

[35] *Auto Safety*, 809 F.3d at 1098; *see also San Jose Mercury News, Inc. v. U.S. Dist. Ct.—N. Dist.*, 187 F.3d 1096, 1102 (9th Cir. 1999) (granting a writ of mandamus where the court refused to allow a party to intervene to make public summary-judgment materials).

1    These are the very documents for which the State asks the Court to provide

2    public access. Most of the documents either (1) provide evidence of the Defendants

3    fixing CRT prices and the resulting customer negotiations and sales;[36] or (2)

4    involve experts' reports or their deposition testimony in which they review the

5    evidence, empirically test for price-fixing, or compute damages.[37]

6        Documents related to the price-fixing should not be sealed. Evidence of illegal

7    conduct, such as price-fixing, is not entitled to protection as a trade secret.[38]

8    Although the Defendants' price-fixing might hurt their customer relationships, as

9    the Ninth Circuit said, "embarrassment, incrimination, or exposure to further

10   litigation will not, without more, compel the court to seal its records."[39]

11       The resulting customer negotiations and sales likewise do not deserve

12   protection. The information is from at least a decade ago and concerns an obsolete

13

14   _____

15   [36] *See, e.g.*, Pls.' Joint Opposition To Hitachi Parties' Mot. for Summ. J. Based
     Upon The Lack Of Evidence Of Participation In The Alleged Conspiracy, Dec. 23,

16   2014, ECF No. 3266-3 (filing exhibits under seal and redacting brief references of
     evidence showing the Hitachi entities' involvement in the price-fixing).

17
     [37] *See, e.g.*, Exhibit 3 to Alioto Decl. ISO Opposition to Defs.' Mot. for Partial
18   Summ. J. on Indirect Purchaser Claims Based on Foreign Sales, Dec. 23, 2014
     (filing under seal expert report of Janet Netz), ECF Nos. 3281-9 & 3281-10;
19   Exhibit C to Bernstein Decl. ISO Mot. to Partially Exclude Certain Opinions and
     Testimony of Designated Expert Daniel L. Rubinfeld, Dec. 5, 2014, ECF
20   No. 3175-8 (filing under seal expert report of Dennis Carlton).

21
     [38] *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir.
22   2016) (explaining that "financial and negotiating information" about an unlawful
     practice "is not entitled to protection as a legitimate trade secret").
23

24   [39] *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006); *see
     also Oliner v. Kontrabecki*, 745 F.3d 1024, 1026 (9th Cir. 2014) (rejecting as
25   compelling reasons avoidance of embarrassment or an undue burden on
     professional endeavors).
26

1 technology.[40] For example, Hitachi asserts that it stopped selling CRTs by 2004.[41]

2 Hitachi's attorneys offer no explanation how Hitachi's sales strategies—from 12+

3 years ago for a product it no longer makes—warrant sealing. Even if the

4 documents reflect negotiations with third parties with whom Hitachi still does

5 business, as a Court of Appeals said recently, "the particulars of years-ago

6 negotiations are unlikely to amount to a trade secret."[42]

7      The expert reports likewise do not warrant sealing. Often expert reports allude

8 to the underlying information in only a generalized way.[43] Here, because the

9 underlying documents do not warrant protection, the expert reports cannot.

10      Take, for example, the expert report of Jerry Hausman, who calculated

11 damages for two Sharp entities that the Court dismissed. When the Sharp entities

12 asked the Court to reconsider that dismissal, they redacted the damages amount

13 and filed his report under seal. Although sealing was supposedly based on

14 "compelling reasons,"[44] the Sharp entities said only that "[t]he highlighted portions

15
16 [40] *See generally* Order Regarding Administrative Mots. To File Under Seal 1, Dec.
27, 2012, ECF. No. 1512 ("observ[ing] that many of the documents that have been
designated as sealable are of less than recent vintage and relate to business
17 practices centered on an obsolete technology").

18 [41] *See* Evidentiary Proffer of Defs. Hitachi, Ltd.; Hitachi Displays, Ltd.; Hitachi
19 Asia, Ltd.; Hitachi Am., Ltd; and Hitachi Elec. Devices (USA), Inc. 7, Dec. 7, 2010,
ECF No. 817 (asserting that Hitachi's last CRT tube was sold in 2004).

20
21 [42] *Shane Grp.*, 825 F.3d at 308; *see also In re Coordinated Pretrial Proceedings in
Petroleum Prods. Antitrust Litig.,* 101 F.R.D. 34, 40 (C.D. Cal. 1984) (recognizing
that sealed documents can "lo[se] their character as commercially sensitive due to
22 the passage of time").

23 [43] *See, e.g.*, *Shane Grp.*, 825 F.3d at 308.
24
25 [44] Order Granting Motion to File under Seal, May 4, 2016, ECF No. 4629. The
Court also cited "compelling reasons" in ECF No. 4803, which the State does not
26 challenge.

1  of the motions contain excerpts of and/or statements derived from those expert

2  reports which reflect confidential, nonpublic, proprietary and highly sensitive

3  business information."[45] But that boilerplate does not meet the Ninth Circuit's

4  requirement for "specific factual findings."[46]

5      In antitrust cases, sealing documents without compelling reasons is

6  particularly problematic. "[T]he public's interest is focused not only on the result,

7  but also on the conduct giving rise to the case"; "[i]n those cases, 'secrecy insulates

8  the participants, masking impropriety, obscuring incompetence, and concealing

9  corruption.'"[47] In antitrust cases, disclosure is important because the public has a

10  right to know they overpaid.

11

12  **B.  The parties failed to overcome the presumption of access with compelling**

13  **reasons because their affidavits provide no specific facts and instead recite only boilerplate conclusions.**

14      For the documents subject to this Motion, the parties seeking to keep them

15  under seal have offered no compelling reasons. Overcoming this stringent

16  standard is difficult. The Ninth Circuit insists that parties provide "*specific* factual

17  findings," "*specifically* articulated reasons," a "*specific* linkage [to] the documents,"

18

19  _____

20  [45] Decl. of Craig A. Benson, Apr. 11, 2016, ECF No. 4551-1; SEC and SEMA's
    Admin. Mot. to File Under Seal, Apr. 11, 2016, ECF No. 4551.

21

22  [46] *See Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011) (requiring a
    district court "to articulate [] reasoning or findings underlying its decision to

23  seal"); *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.,* No. 12-CV-03844-
    JST, 2015 WL 984121, at *1 (N.D. Cal. Mar. 4, 2015) (same). *But see* Sealing Order

24  at 2, ECF No. 4629 (recognizing the requirement but granting the sealing motion).

25  [47] *Shane Grp.*, 825 F.3d at 305 (6th Cir. 2016) (quoting *Brown & Williamson

26  Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983)).

1  and "*specific* prejudice or harm."[48] A party must submit an affidavit that

2  substantiates these specific facts for each document.[49] "An unsupported assertion

3  of unfair advantage to competitors without explaining how a competitor would use

4  the information to obtain an unfair advantage is insufficient."[50] A party cannot

5  justify sealing tens of thousands of pages "with a few generalized, sweeping

6  sentences."[51]

7     Here, the declarations articulate no facts. Instead, they rely on attorneys'

8  sweeping conclusions that claim the documents contain confidential information

9  and trade secrets.[52] But boilerplate conclusions are not compelling reasons.[53]

10  Admittedly, any home addresses, personal telephone numbers, and social-security

11  numbers would be protectable[54]—if that information is in the sealed documents.

12

13  [48] *Kamakana*, 447 F.3d at 1178, 1182, 1184, 1186 (emphasis added); *see also Shane

14  Grp.*, 825 F.3d at 307-08 (explaining that "specificity is essential" (quoting *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001))).

15  [49] *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992);

16  *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 308-09 (N.D. Cal. 2005) (citing *Foltz*, 331 F.3d at 1130).

17

18  [50] *Icon-IP*, 2015 WL 984121, at *2 (quoting *Hodges v. Apple, Inc.*, No. 13–cv–01128–WHO, 2013 WL 6070408, at *2 (N.D. Cal. Nov. 18, 2013)).

19  [51] *In re LDK Solar Sec. Litig.* No. C 07-05182 WHA, 2010 WL 724809, at *1 (N.D.

20  Cal. Mar. 1, 2010).

21  [52] *See* Brooker Decl., Ex. B.

22  [53] *See Kamakana*, 447 F.3d at 1182 (finding that "conclusory statements about the

23  content of the documents—that they are confidential and that, in general, their

24  production would, amongst other things, hinder . . . future operations . . . do not rise to the level of 'compelling reasons' sufficiently specific to bar the public access to the documents").

25

26  [54] *See id.* at 1184 (affirming magistrate's order sealing home addresses and social-security numbers); *Foltz*, 331 F.3d at 1137 (allowing redactions for only "names,

But the parties' unsupported claims about disclosure hurting customer relationships are insufficient, especially because the information is stale and CRTs are obsolete.

**C. Even if the parties had compelling reasons, they failed to narrowly tailor their redactions, often filing entire documents under seal.**

Even where a party establishes a compelling reason, in most cases, the party must file a public version with narrowly tailored redactions.[55] That applies not only to the pleadings and briefs[56] but also to any supporting declarations and exhibits.[57] But the parties failed to narrowly tailor their redactions. Instead, the parties often filed entire exhibits under seal, concealing all the information in them whether confidential or not, and then redacted in the briefs any information

---

addresses, telephone numbers, and social security numbers" from nonparty medical records and personnel files).

[55] Civil L.R. 79–5(b) (requiring a motion to seal to be "narrowly tailored to seek sealing only of sealable material").

[56] *Delphix Corp. v. Actifio, Inc.*, No. 13-CV-04613-BLF, 2014 WL 4145520, at *2 (N.D. Cal. Aug. 20, 2014) (refusing to seal allegations in a complaint that, although they refer to exhibits with confidential information, do "not appear to disclose any specific details about Plaintiff's highly sensitive product and development information").

[57] *See Asetek Danmark A/S v. CMI USA, Inc.*, No. 13-CV-00457-JST, 2015 WL 4116738, at *1 (N.D. Cal. July 7, 2015) (applying the principle to seal only portions of an exhibit); *McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-CV-04457-SC, 2015 WL 1800445, at *1 (N.D. Cal. Apr. 20, 2015) (refusing to seal an entire "exhibit [that] contains 250 pages of deposition transcript" because only "a small minority of [the] testimony may touch on sensitive issues").

1  from those exhibits.[58] Sometimes for "redacted" briefs, the only thing left

2  unredacted was the caption.[59]

3      It is irrelevant whether the Court relied on the documents. A sister district

4  court explained: "If the rationale behind access is to allow the public an

5  opportunity to assess the correctness of the judge's decision, . . . documents that

6  the judge *should* have considered or relied upon, but did not, are just as deserving

7  of disclosure as those that actually entered into the judge's decision."[60] The public

8  needs the cited facts and evidence—whether relied upon and not—to evaluate the

9  Court's decision. Hiding those facts and evidence hinders the public's confidence in

10  the judicial system.

11

12  **D.  Even Judge Conti recognized his sealing orders, unsupported by articulated facts, were at best provisional.**

13

14      The sealing orders in this case are provisional—akin to those in *Kamakana*.[61]

15  In *Kamakana*, the district court, when sealing the documents, "reserve[d] the right

16  to unseal materials . . . if . . . the court determines that they should be available to

17  the public or otherwise do not merit sealed status."[62] The district court later

18  unsealed most of the documents. On appeal, the parties argued that the sealing

19  [58] *See, e.g., supra* at 5-6.

20  [59] *See, e.g.,* ECF Nos. 2983, 3172, 3454, and 3520.

21  [60] *In re Petroleum Prods.,* 101 F.R.D. at 43 (italics in original), *quoted in Lugosch v.*
22  *Pyramid Co. of Onondaga,* 435 F.3d 110, 123 (2d Cir. 2006), *and United States v.*
23  *Kravetz,* 706 F.3d 47, 58 (1st Cir. 2013) ("explicitly reject[ing] an approach to
   public access that would turn on whether the documents at issue actually played a
24  role in the court's deliberations").

25  [61] *Kamakana,* 447 F.3d 1172.

26  [62] *Id.* at 1187 (quoting the district court).

orders were the law of the case, but the Ninth Circuit disagreed, ruling that "no law of the case is at issue" because the court had the right to reconsider its own sealing orders after a more detailed review.[63] The court's tepid ruling put the parties on notice that the documents could be later unsealed.[64]

The same is true here. Judge Conti reserved the issue for a later time. He was aware that a court must "articulate specific reasons supporting its decision to seal."[65]  In fact, he said in several orders that "the motions are GRANTED with the proviso that 'the Court will look favorably upon motions to intervene filed by members of the public who wish to access the sealed documents.'"[66] Given his tepid sealing orders, the producing parties were on notice that the documents could later be unsealed.

## IV. Conclusion

The parties' practice of sealing documents in this case chips away at the American ideal that resolving disputes in the judicial system is inherently a public endeavor. By liberally designating documents as confidential and then burying the Court with motions to file under seal, they have effectively litigated this case in private. For the documents at issue here, the Defendants were required to provide compelling reasons to seal them—perhaps an insurmountable task given that most documents are at least a decade old and CRTs are obsolete. Instead, the parties overwhelmed the Court with motions to seal and relied solely on boilerplate. But

---

[63] *Id.* at 1186.

[64] *Id.* at 1186-87.

[65] *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011).

[66] Order Granting Administrative Mots. To File Under Seal 1, Mar. 24, 2015, ECF. No. 3795.

1   lengthy legalese is no substitute for specific facts. The Court should not allow

2   perfunctory declarations to erode judicial transparency and ultimately the public's

3   confidence in the judicial system. The public has a right to understand the reasons

4   for court decisions.

5        The State asks the Court to uphold that right by requiring the parties to refile

6   their merits-related documents, identified in Exhibit C, on the public record.

7   Although unsealing the records is another option, the parties should have the

8   opportunity to review the documents and redact any privacy information, such as

9   SSNs, home addresses, and personal telephone numbers. Because there are about

10   180 document entries identified in Exhibit C, we ask the Court to give the parties

11   adequate time—we propose 60 days from the order—to review and refile the

12   documents.

13

14   Dated: November 28, 2016         Respectfully submitted,

15

16                                 LISA MADIGAN,
Attorney General of Illinois

17                                 By: /s/ Chadwick O. Brooker

18                                 Chadwick O. Brooker
Assistant Attorney General

19                                 Antitrust Bureau
Office of the Illinois Attorney General

20                                 100 W. Randolph Street

21                                 Chicago, Illinois 60601
(312) 793-3891

22                                 cbrooker@atg.state.il.us

23

24

25

26