EXHIBIT B

In the Matter Of:

# STATE OF ILLINOIS

vs

# HITACHI LTD.

## COURT PROCEEDINGS

May 11, 2016



Certified Court Reporters
79 West Monroe Street, Suite 923
Chicago, Illinois 60603
Phone:  312-578-8901
info@seftonmoran.com
www.seftonmoranreporting.com

COURT PROCEEDINGS

1        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
           COUNTY DEPARTMENT, CHANCERY DIVISION
2

3   THE STATE OF ILLINOIS, by    )
    its Attorney General, Lisa   )
4   Madigan,                     )
                                 )
5                 Plaintiff,     )
                                 ) 12 CH 35266
6        -vs-                    )
                                 )
7   HITACHI LTD., et al.,        )
                                 )
8                 Defendants.    )
    _____)
9

10       REPORT OF PROCEEDINGS of the above-entitled

11   cause before the Honorable RITA M. NOVAK, Judge of

12   said Court, on May 11, 2016, at the hour of 10:30

13   o'clock a.m.

14

15

16

17

18

19

20

21

22

23

24

## Page 2

```
 1   A P P E A R A N C E S :
 2       OFFICE OF THE ATTORNEY GENERAL
         BY:  MR. CHADWICK O. BROOKER
 3       and  MR. BLAKE HARROP
         100 West Randolph Street
 4       12th Floor
         Chicago, IL  60601
 5       (312) 814-1004
         cbrooker@atg.state.il.us
 6       bharrop@atg.state.il.us
 7           On behalf of the Plaintiff;
 8
         KIRKLAND & ELLIS
 9       BY:  MR. KARL STAMPFL
         and  MS. AMANDA JACOBOWSKI
10       300 North LaSalle Street
         Chicago, IL  60654
11       (312) 862-2000
         karl.stampfl@kirkland.com
12       amanda.jacobowski@kirkland.com
13           On behalf of the Defendants,
             Hitachi, Ltd., Hitachi Displays, Ltd.
14           (n/k/a Japan Display East, Inc.), and
             Hitachi Electronic Devices (USA), Inc.;
15
16       ROTHSCHILD, BARRY & MYERS
         BY:  MR. DANIEL A. CUMMINGS, III
17       150 South Wacker Drive
         Suite 3025
18       Chicago, IL  60606
         (312) 372-2345
19       cummings@rbmchicago.com
20           On behalf of the Defendants,
             Toshiba Corporation, Toshiba America,
21           Inc., Toshiba America Electronic
             Components, Inc., and Toshiba America
22           Information Systems, Inc.;
23
24
```

## Page 3

```
 1
     APPEARANCES (Continued):
 2
         FREEBORN & PETERS
 3       BY:  MR. JEFFERY M. CROSS
         311 South Wacker Drive
 4       Suite 3000
         Chicago, IL  60606
 5       (312) 360-6000
         jcross@freeborn.com
 6
 7           On behalf of the Defendants,
             Koninklijke Philips Electronics N.V.,
 8           Philips Electronics North America
             Corporation, and Philips Electronics
 9           Industries Taiwan, Ltd.;
10       SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
         BY:  MS. MIKELA S. SUTRINA
11       70 West Madison Street
         48th Floor
12       Chicago, IL  60602
         (312) 499-6300
13       msutrina@sheppardmullin.com
14           On behalf of the Defendants,
             Samsung electronics Co., Ltd.,
15           Samsung Electronics America, Inc.,
             Samsung Display Device Co., Ltd. and
16           Samsung SDI America, Inc.;
17
         WINSTON & STRAWN LLP
18       BY:  MR. JAMES HERBISON
         and  MR. KEVIN F. WOLFF
19       35 West Wacker Drive
         Chicago, IL  60601
20       (312) 558-5600
         jherbison@winston.com
21       kwolff@winston.com
22           On behalf of the Defendants,
             Panasonic Corporation, Panasonic
23           Corporation of North America, and
             MT Picture Display Co., Ltd.;
24
```

## Page 4

```
 1
     APPEARANCES (Continued):
 2
         MUNGER, TOLLES & OLSON LLP
 3       BY:  MS. MIRIAM KIM
         560 Mission Street
 4       27th Floor
         San Francisco, CA  94105-2907
 5       (415) 512 4041
         Miriam.Kim@mto.com
 6
         and
 7
         EIMER STAHL LLP
 8       BY:  MR. DAVID M. SIMON
         224 South Michigan Avenue
 9       Suite 1100
         Chicago, IL  60604
10       (312) 660-7676
         dsimon@eimerstahl.com
11           On behalf of the Defendants,
12           LG Electronics, Inc., and LG
             Electronics USA.
13
14       *      *      *      *      *      *
15
16
17
18
19
20
21
22
23
24
```

## Page 5

```
 1              (Whereupon, the following
 2              proceedings were had in
 3              open court.)
 4       THE COURT:  12 CH 35266, State of
 5  Illinois versus Hitachi.
 6              Good morning, everyone.
 7       MR. HARROP:  Good morning, your
 8  Honor.
 9       MR. CROSS:  Good morning, your Honor.
10       MR. BROOKER:  Chad Brooker on behalf
11  of the State.
12       MR. HARROP:  Blake Harrop on behalf
13  of the State.
14       MR. CROSS:  Jeffery Cross on behalf
15  of Koninklijke Philips N.V. and Philips
16  Electronics Corporation.
17       MR. CUMMINGS:  Dan Cummings for the
18  Toshiba Defendants.
19       MR. STAMPFL:  Karl Stampfl and Amanda
20  Jacobowski for the Hitachi Defendants.
21       MS. KIM:  Miriam Kim for LG
22  Electronics and LG USA.
23       MR. SIMON:  David Simon also for the
24  LG Defendants.
```

## Page 6

1      MR. HERBISON:  Jim Herbison and Kevin
2  Wolff for the Panasonic Defendants.
3      MS. SUTRINA:  Mikela Sutrina on
4  behalf of Samsung Defendants.
5      THE COURT:  Good morning, all.  I
6  have a motion by the Plaintiff, the People, to
7  compel the Defendants to produce documents that
8  were filed under seal in the MDL case.  And so
9  I've had a chance now to read the briefs and the
10  materials.  Keep that in mind in presenting your
11  arguments.
12      You may begin.
13      MR. BROOKER:  Your Honor, I think
14  that the issue here comes down to burden.  I think
15  that the Defendants have basically conceded the
16  other issues here; relevance, because the cases
17  are the same; the affirmative defenses are the
18  same; the fact that they have possession, custody
19  or control, because they've been served these
20  documents.  And they've abandoned their other
21  objections on privilege and the sealing order.
22      So it comes down to burden.
23  And in this case, the burden that they're
24  complaining about is not about finding the

## Page 7

1  documents, reviewing them or producing them.  That
2  they're willing to do.  It's all about their
3  burden under the MDL's protective order.
4      Now, this is a stipulated
5  protective order.  They've already agreed to meet
6  the burdens and their obligations under that
7  order.  And all it actually makes them do is send
8  a single email.  They can send it to -- one email
9  to 30 parties, the 30 nonparties here, explaining
10  that -- just as they concede actually in their
11  brief, they could simply notify all 30 MDL third
12  parties that some of their confidential documents
13  could be produced as part of our document request.
14      Now, they complain about the
15  fact they might have to -- they say that they have
16  to identify the specific confidential references
17  in those documents for these third parties, and in
18  fact they don't have to.  The MDL protective order
19  does not require them to do that.  And they
20  wouldn't need to do that -- the third parties
21  don't need to do that either.  These nonparties
22  won't because their confidentiality obligations
23  will be preserved here because this Court, in its
24  protective order, which is modeled after the MDL

## Page 8

1  protective order, preserves those
2  confidentialities.  It's simply that what the MDL
3  protective order anticipates is that they would
4  come here and assert their confidentiality
5  obligations for a protective order to protect that
6  confidentiality.
7      THE COURT:  Well, how would they do
8  that if they didn't review them and figure out
9  what it was that was being disclosed?
10      MR. BROOKER:  They have already
11  disclosed this and asserted their confidentiality
12  in the MDL.  So these are documents and
13  information that already have stamped
14  "confidential" or "highly confidential"
15  designations that these nonparties have asserted
16  in the MDL.
17      The question is, is it -- do
18  they -- when those documents are produced to us,
19  what happens to the confidentiality obligations?
20  This Court anticipated that possibility in its --
21  in the protective order in this case, and it
22  preserves those confidentiality designations that
23  they made over there here.  So all -- they don't
24  have to even come in this court, and they're

## Page 9

1  already automatically protected.
2      In fact, the Defendants have
3  recognized this.  They've produced other
4  documents.  They produced MDL depositions of these
5  third parties where they asserted confidentiality.
6  They produced expert reports from the MDL that
7  include documents and information from these third
8  parties and have designated the information
9  confidential.  We've received this stuff already.
10  They've given the notice in other situations in
11  the previous cases.  And the confidentiality is
12  recognized by the Defendants, has been
13  automatically preserved by this Court's protective
14  order.  So they don't even have to come in and do
15  anything.
16      Now, just to give you a little
17  bit of history that you won't know about, two of
18  these nonparties objected initially to the
19  production of the expert reports in the
20  depositions from the MDL.  They were concerned
21  about their confidentiality.  When we showed them
22  in this Court's protective order that in fact
23  their confidentiality is preserved, they withdrew
24  their obligations in both the MDL depositions and

## Page 10

1 the expert reports that have these nonparties'
2 confidential information. There's just not going
3 to be any intervention necessary because this
4 Court's already anticipated it.
5     THE COURT: Well, tell me why you
6 need every single document filed under seal.
7     MR. BROOKER: These are the documents
8 that go most directly to the facts that were at
9 issue in that case. The information that's --
10     THE COURT: Well, when you say
11 "these", that's where you kind of -- I'm kind of
12 holding up because my understanding is you want
13 everything that was filed, all these briefs that
14 were filed under seal. All of them. And there
15 was some discussion in the papers that you don't
16 want to identify which ones are the most germane
17 to the State's case. You want all of them. And
18 so that's the issue, why you need all of them.
19     MR. BROOKER: To answer that, your
20 Honor, we have to take a couple things, a step
21 back. Now, remember what we're asking for is the
22 information that's been designated confidential.
23 So these aren't -- so the type filing that we're
24 asking for, the ones that are filed under seal,

## Page 11

1 have facts involved, and confidential facts.
2     THE COURT: And how many of them are
3 there? My understanding is there were
4 400-and-some.
5     MR. CROSS: 4,000.
6     MR. BROOKER: No. That's --
7     THE COURT: No. The designations.
8 But the number of briefs -- the number of
9 documents that you're looking for.
10     MR. CROSS: 4,187.
11     THE COURT: I see.
12     MR. BROOKER: The total number of MDL
13 filings is about 4,500 -- is it? --- probably
14 approaching 5,000 now. And many of them have
15 certain parts of them that are confidential, and
16 these are the good factual parts, the parts that
17 have the confidential information. Somebody's
18 designated them as confidential because that's
19 where the juicy facts are. These are not
20 run-of-the-mill motions up for pro hoc vice.
21 These are substantive motions, where facts are at
22 issue that were being asserted.
23     And because these cases are so
24 similar -- the price fixing is on CRTs, involve

## Page 12

1 the same Defendants, during the same time
2 period -- and because the affirmative defenses the
3 Defendants assert here all mimic the affirmative
4 defenses that they assert there, there's --
5 there's nothing substantive.
6     THE COURT: If that's all true, why
7 didn't you just stay in the MDL?
8     MR. BROOKER: The MDL Court doesn't
9 have jurisdiction to hear this case because we're
10 bringing it under the Illinois Antitrust Act.
11 They don't have jurisdiction. So we can't be up
12 there. There's obviously logistical reasons why
13 we do not want to be up there, but the fact of the
14 matter is we can't be.
15     So when you look at the rule
16 that's in place here, under Rule 201, you balance
17 the benefit and the burden. And I've talked a
18 little bit now about the benefit. This is going
19 to get us the facts that are important quickly and
20 efficiently. It's going to keep us from having to
21 go after -- sending all sorts of third
22 party/nonparty subpoenas to get that information,
23 and then to try to digest it in a way -- this is
24 going to be a fast, easy way to do that. So

## Page 13

1 that's the benefit. So it's going to benefit us;
2 it's going to benefit the Defendants; it's going
3 to benefit third parties; and ultimately this
4 Court.
5     The burden here is really,
6 really small. Copying these documents is
7 miniscuely small. It's easy to do. They're
8 willing to do it. There's no real burden here.
9     Now, the Defendants in their
10 brief, they refer to one of the cases that we
11 cited, which is Apple versus Samsung. And what
12 the Court did there is it said, "Look. We're
13 going to have a presumption." Now, that was a
14 complicated patent dispute. They said -- and the
15 parties asked for these types of documents, other
16 documents related to that litigation. And they
17 said -- the judge said, "Look. Where the patents
18 are really, really similar, we're going to assume
19 that there's a technological nexus" is the
20 word that they -- the term that they use. "And
21 where these patents are really similar, that they
22 have a technological nexus, we're going to presume
23 that all the documents in these related
24 litigations are relevant. That is, you know, you

Page 14

1   can go and get all of them."  You're talking about
2   filings, you're talking about discovery responses,
3   expert reports, so on and so forth.
4                   Now, if you were to apply that
5   presumption here, it's an easy and obvious case.
6           THE COURT:  Why would I do that?
7           MR. BROOKER:  Well, there was a
8   shorthand that the judge was using, trying to
9   distinguish which cases were so important that --
10  which cases were of such a nature that they were
11  so similar that the information available in that
12  other case is going to be germane; that is,
13  relevant and discoverable and might lead to
14  discoverable evidence.  And so you don't have to
15  adopt that presumption, but it sets a good path on
16  how to go forward in this situation.
17                  Now, we can't come forward,
18  and this is part of our difficulty, to
19  specifically say that particular document and that
20  particular document we want the unsealed,
21  unredacted version of because we can't see what
22  the underlying information is.
23          THE COURT:  Well, you've got
24  everything.  You've got everything in redacted

Page 15

1   form.  So you could choose which ones seemed to be
2   in the ballpark of what you're looking for; in
3   other words, discoverable or could lead to
4   discoverable information.  Because one alternative
5   to your argument -- and this leads to this
6   presumption notion -- another alternative way of
7   looking at it is you would like to fish in to this
8   big pool, to pull out whatever you think you need,
9   without identifying what that is beforehand.  And
10  so in a sense, that kind of turns the table on the
11  proponent of discovery.
12                  You want everything in an
13  enormous case that has issues involved in it that
14  apparently, some of which might have overlapped
15  with Illinois, but some of which don't.  But you
16  don't want to identify from that pool of documents
17  which ones or categories thereof are the relevant
18  ones.  You want to -- you want access to
19  everything so that you can sift through that and
20  determine which of these facts are important to
21  your case.  That is changing the -- turning the
22  tables, in my view, on what normally normal
23  discovery would be about.
24          MR. BROOKER:  Well, here's the

Page 16

1   difference, though.  Because we have -- we have
2   not asked for the entire MDL files.  We've not
3   asked for that.  We've limited it to the sealed
4   filings.  Now, in the MDL, I will admit that there
5   are certain motions, pro hoc vice motions --
6           THE COURT:  I'm going to stop you
7   there because let's just talk about the pool
8   that's at issue here.  And I'm going to pick up on
9   where we left off before I interrupted your
10  argument.
11                  You have the redacted briefs.
12  So you know what the subject matter is that
13  surrounds the redacted portions.  Why can't you
14  take a look at those and decide which ones are
15  relevant or may lead to discovery of relevant
16  information from the documents that are public
17  record and available to you?
18          MR. BROOKER:  Your Honor, we actually
19  tried that once in another case, and it didn't
20  work.  What happened is we went through them, one
21  by one by one.  Every document, every docket entry
22  in an MDL in another case.  We went through them,
23  and we tried to pick them out.  And the truth is
24  that we could not identify all of them.  We were

Page 17

1   trying to be selective, but we could not do it.
2   What happened in the end was we did not have stuff
3   that we needed, and we had stuff that we didn't
4   need.  It was just not an effective way to do
5   this.  The only way we can know ahead of time that
6   we have all of the relevant material is to get all
7   of it.  And then we're safe.
8                  Now, quite frankly, it's
9   easier to produce, from their perspective,
10  everything and just -- and not have somebody
11  review it or pick out one by one, just take them
12  all and produce them all, than to have everyone to
13  go through line by line because I will tell you
14  that it took many, many hours for us to go through
15  one by one by one, and the fact that the
16  Defendants have done to some extent that already
17  to identify them, they have made it clear that
18  that was a burden in itself.  But the fact is that
19  even after that, when we did that in the other
20  case, it just wasn't effective.  So we didn't get
21  what we needed, and we got stuff we didn't need
22  because so we can't see what's underneath.  We had
23  a good sense.  It just ended up not being
24  complete.  And then what happens is we have to

Page 18

1    find other alternatives and more supplemental
2    productions and potentially have delays in the
3    case later when we find out we need something and
4    we don't have it.
5                    This is an easy way to get us
6    all of the information because the standard isn't
7    that we have to know if it's relevant ahead of
8    time.  The standard is if it's likely to lead to
9    admissible evidence.  And fact of the matter here
10   is that if it's designated confidential, that
11   means we're talking about facts that are from
12   parties.
13                   Now, the issues are so close;
14   and they haven't been able to identify a single
15   entry, docket entry where the document was
16   something that's totally irrelevant to the -- to
17   this case.  They haven't identified one.
18                   The one that they picked out
19   is the one that we picked out.  It had to do with
20   the Foreign Trade Antitrust Improvements Act,
21   which involves some factual inquiries.  And in
22   that case -- this is the only one they picked out.
23   In that case, the factual issue is whether their
24   price fixing had an impact on the domestic market,

Page 19

1    which is -- and it's the same test, whether you're
2    in Illinois or California.  So because that test
3    is the same and the facts are the same, all of
4    that information, all of the facts that are in
5    those pleadings, are germane to this case as much
6    as they are to the MDL.
7                    So without any indication that
8    some of them are not relevant, it makes it easier,
9    both in terms of expediency and efficiency, just
10   to produce all of them so we don't have this
11   problem down the road.
12                   THE COURT:  Okay.
13                   MR. CROSS:  First off, your Honor,
14   let me start off by saying there is no list of
15   third -- the so-called list of 30 third parties.
16   There is no list.  We'd have to go through all the
17   documents to determine who we're talking about
18   just to give notice.
19                   And in point of fact,
20   Mr. Brooker attaches to his brief, his reply
21   brief, two letters, one that came from White and
22   Case producing a number of third party depositions
23   and documents, and another that came from Sheppard
24   Mullin producing expert depositions, one of which

Page 20

1    is Dr. Janet Netz, who is the expert for the other
2    22 states that had indirect purchasers.
3                    By the way, White and Case and
4    Sheppard Mullin had to go through those documents
5    in order to give notice.  And in the case of the
6    Netz expert deposition, they gave notice to the
7    third parties who were involved.  And one of
8    them -- actually, two of them, but Funai -- both
9    of them objected, but Funai proceeded to negotiate
10   with the State for six months before Funai was
11   convinced.
12                   Now, they say -- Mr. Brooker
13   says that you've already in your protective order
14   given confidentiality protection to these third
15   parties.  Well, you know, it's not for this Court
16   or for Mr. Brooker to decide that these third
17   parties are adequately protected.  It's for these
18   third parties to have the choice to decide, do
19   they want to subject their confidential
20   information to this Court's protection or not.
21   Ultimately, after six months of negotiation, the
22   State was able to do that.
23                   Your Honor, look.  This is
24   just another instance of when the State just

Page 21

1    doesn't want to do the work necessary to prosecute
2    this case.  And the proof is right in their brief.
3    Page 2 of their brief states that the filings,
4    talking about this pool of third party, "The
5    filings organize voluminous deposition transcripts
6    and documents that, if provided the State, will
7    reduce the expense and time of discovery."
8    Organize.  So what they're trying to do is find
9    out -- somebody else has decided what's important
10   or not, and they want to be able to zero in on
11   that.
12                   Let's be perfectly clear as to
13   what is the pool.  First off, the Defendants in
14   this case have produced 4.9 million documents.
15   They've produced every one of their depositions.
16   They've produced all their expert reports.
17   They've produced the third party depositions in
18   the DAP case, the so-called direct action
19   plaintiffs, people like Dell.  I mean, Dell has
20   opted out, but Dell is an example.  The -- I can't
21   remember all the initials, the IPPs, and the DPAs,
22   you know, all of those third party depositions,
23   which required a significant amount of work to
24   provide notice.  So the State has an enormous

Page 22

1  amount of material.
2           Now, if we were to try to use
3  something that was under "confidential", and of
4  course we'd have to come in to the Court,
5  obviously the Plaintiff would get access to that.
6  I mean, we're not about to sandbag them.  You
7  know, they'd get access to it.  So they don't have
8  to worry in that regard.
9           Now, Mr. Brooker says that the
10 issues are the same.  Well, they're not the same,
11 your Honor.  There are a lot of different issues.
12 First off, there are 22 states that -- 22 states
13 where there are so-called opt out -- I'm sorry --
14 so-called indirect purchasers, like the end users
15 here or the distributors who have filed suit and
16 have been consolidated in California.  So to the
17 extent that issues regarding those 22 states,
18 yeah, maybe the Foreign Antitrust Trade
19 Improvements Act, Antitrust Trade -- Foreign Trade
20 Antitrust Improvements Act, the FTAIA, might be --
21 might be relevant; but they could certainly --
22 they were able to pick that one out.  They can
23 certainly pick them out from the 2,187 briefs that
24 were filed under seal.

Page 23

1           First off, we're going to have
2  to do a significant amount of work to figure out
3  who the third parties are to give them notice.
4           THE COURT:  I want to go back to that
5  because I'm a little unclear.  So in other words,
6  these third parties that you're calling are the
7  suppliers of the information that could have a
8  claim that information is confidential?
9           MR. CROSS:  Correct.
10          THE COURT:  And so where the argument
11 in the State's brief is that this is simply
12 sending out a blanket notice, one email to
13 multiple parties, your argument is you don't know
14 who that email would go to without an additional
15 effort to determine who would be on that list?
16          MR. CROSS:  Correct.  We know many of
17 them.  As I -- for example, as I said in the
18 letter that's attached to his brief, White and
19 Case produced a number of third party depositions,
20 like Sears.  It was a third party.  We know we had
21 to give notice to Sears.  But we don't know all of
22 them.  So what we'd have to do is we'd have to
23 look at all 2,284 briefs and exhibits filed under
24 seal.  We're estimating that there's some 41,000

Page 24

1  entries.  We'd have to look at all those and
2  figure out who that entry came -- and remember.
3  Not all these briefs are briefs that the
4  Defendants wrote.  By the way, the Defendants
5  aren't all the same in the MDL case and in this
6  case, and certainly the Plaintiffs aren't all the
7  same.  So we'd have to look at all 41,000 or so
8  entries, figure out who it is.  We know many of
9  them, but we don't know them.
10          If we made a mistake and
11 turned it over, we would have violated the
12 protective order in MDL.  You know, Mr. Brooker
13 talks about the MDL Court being irked if they have
14 to go file another motion to intervene in order to
15 come within the protective order.  I think the MDL
16 Court would be very irked if we violated the
17 protective order or you ordered us to turn over
18 documents without protections here.
19          And it does boil down to the
20 fairness of their not wanting to do the work.
21 Take a shot in this case at trying to figure it
22 out.  Let's say he takes the 2,284 documents filed
23 under seal and narrows it down to 1,000.  We're
24 going to still have to do an enormous amount of

Page 25

1  work, but that's less than looking at -- less than
2  looking at all of them.
3           Recently, by the way -- so
4  there are three or four other state actions like
5  this one.  There's one in the state of Washington,
6  which I know you're familiar with because we
7  provided briefs to you in that case.  And there's
8  one in the state of Oregon.  And in the state of
9  Oregon case, recently the attorney general of
10 Oregon agreed to undertake the work that was
11 necessary in order to reduce the number of sealed
12 briefs in the MDL case.  And they are, I
13 understand, in the process of doing that?
14          MS. KIM:  That's correct, your Honor.
15          MR. CROSS:  They're in the process of
16 doing that.  And then once they do that, we
17 will -- Ms. Kim negotiated the deal with the
18 Attorney General.  If you have any questions, she
19 can respond to that.  But they stepped up to the
20 plate and did the work.
21          Let me just check my notes.  I
22 think I covered everything I wanted to.  I think
23 that's it.
24          THE COURT:  Thank you.  Anyone else

Page 26

1  have anything?  Any other Defendant?
2              Hold on one second.  You'll
3  get a chance to reply.  I just want to make sure
4  that we've got everyone covered who might wish to
5  inform me of something.  Anyone?
6          MS. KIM:  Your Honor, Miriam Kim for
7  the LG Defendants.  I would like to just add a
8  couple of points.  I am counsel for LG Electronics
9  and LG USA in the Oregon action that Mr. Cross
10 mentioned, and I did personally negotiate with the
11 Attorney General's office there.  And they
12 reviewed the docket in the MDL, and they
13 identified the documents that they wanted the
14 Defendants there to produce.  And we have -- we
15 have agreed to do that.  We are in the process of
16 reviewing those filings and making that
17 production.
18             I also want to elaborate on
19 the burden because the State significantly
20 underestimates the burden of what is involved
21 here.  I have personally had to review documents
22 to determine which third parties needed to be
23 notified.  We recently produced backup material
24 for expert witnesses.  I personally had to review

Page 27

1  every single file in certain experts' backup
2  production because there are some experts, as you
3  can imagine, who, you know, produced third party
4  materials that -- given that this case has been
5  going on for decades, and there have been
6  different lawyers who have handled the matter,
7  it's true.  We don't have a single list because
8  some parties are getting third party documents
9  from other related litigation that my client is no
10 longer involved in or my client has settled out of
11 the IPP case.  My client has settled out of the
12 DPP case.  Those cases are still pending in the
13 MDL, so there may be another party in the MDL that
14 has obtained third party documents in that case
15 that my client would not know about.  And so I
16 personally had to review every single file in the
17 backup production, see which third party produced
18 them, and then cross reference that with the list
19 to determine if that third party had been given
20 sufficient notice to cover that material and, if
21 not, to make sure that we address that.
22             That is the process that would
23 be involved.  It is not a single email.  It is not
24 a simple process.  Under the MDL protective order,

Page 28

1  we take our obligations seriously; and we do not
2  have a single list where we can send a single
3  email.
4             The other point I would like
5  to make is that the Defendants have not conceded
6  relevance.  That is completely not the case.  As
7  your Honor said, they are trying to turn the
8  tables here.  The burden is on the State to show
9  what is the relevance of this material.  The fact
10 is, it's not the Defendants' burden to point out
11 all of the relevant filings.  It's the State's
12 burden to show what is the likely benefit here and
13 why does that outweigh the burden.  And they
14 simply have not shown that.  And I think the fact
15 that the Oregon AG has recognized that, and they
16 have recognized themselves that in another case,
17 they were able to do that.  And while it may not
18 have been as effective as the State would like,
19 that is their burden; and we submit that is what
20 should be done here.
21          THE COURT:  Thank you.
22          MR. BROOKER:  Your Honor?
23          THE COURT:  Yes, go ahead.
24          MR. BROOKER:  I think counsel for the

Page 29

1  Defendants has grossly overstated the burden that
2  they actually have.  If you go to the MDL docket,
3  you can identify all of the parties who are there
4  that are not here.  You put them on the list.
5  Each of the Defendants are involved in a number of
6  different MDL cases.  Some have settled, so
7  they're not all getting the third party subpoenas.
8  So if each Defendant identifies who they received
9  materials from, from third parties, and they
10 consolidate that list, they have their list in
11 order to distribute.  And it's really that easy.
12             There's absolutely no reason
13 to go through all of the different references in
14 every single document that's filed under seal to
15 identify for them because it's just not necessary.
16 When they get the notice, when these Defendants
17 get these -- the nonparties get the notice, and
18 they realize, because -- while serving with that,
19 they can also provide the protective order in this
20 case.  They'll realize that their information is
21 already protected.  It's exactly what happened in
22 the last two times I went through when somebody
23 had an objection.
24             And I'm going to let

Page 30

1   Mr. Harrop discuss that because he was personally
2   involved in those negotiations with Funai that
3   supposedly --
4           THE COURT:  I don't really need to
5   hear about another case.  I have enough on my
6   plate with this one.
7           MR. BROOKER:  That's this case.
8           MR. HARROP:  It is this case.  The
9   reason we did not get discovery for six months in
10  this case was because of the Funai situation.  The
11  Funai situation existed because we received email
12  from one of the defense counsel saying that Funai
13  had objected.  I responded to that email within 24
14  hours and asked them to have Funai contact me if
15  there was a continuing concern.  I heard nothing
16  more about the issue for three months.
17          At the end of three months, we
18  were told again we could not get the material
19  because Funai was objecting.  I again responded
20  and said, "Please have Funai contact me."
21          A month went by.  I asked
22  again if they would please have Funai contact me.
23  There was no response from defense.
24          I then went to the docket,

Page 31

1   found Funai's counsel, emailed them directly, and
2   told them that we would be happy to discuss the
3   issue.  I was told I had emailed the wrong Funai
4   counsel because they're not the ones who objected.
5   I was then put in contact with the right Funai
6   counsel, eating up another three weeks.
7           I then started an email
8   conversation with Funai's counsel and said,
9   "What's the problem?"
10          They said, "We'll we need a
11  protective order in place in Illinois before we
12  can agree to the material here."
13          I said, "We already have such
14  a protective order."  I emailed him a copy, having
15  assumed the Defendants had already done that --
16  apparently not.
17          He looked at the protective
18  order and said there was no issue.  That's the six
19  months of negotiations that we went through.
20          So there's not a major issue
21  with these third parties being concerned about the
22  outside.  If the protective order is given to them
23  that's here in Illinois, they seem to have no
24  problem.

Page 32

1           MR. CROSS:  It's pretty presumptuous,
2   your Honor, that he can make that claim on behalf
3   of some 30 third parties who haven't had a chance
4   to think about whether they want to be subjected
5   to this Court's protective order, which means that
6   if Mr. Harrop and Mr. Brooker want to use the
7   document in a brief, and if you also look at their
8   brief, that's not -- just their having the
9   document is not the issue.  The issue ultimately
10  is they want to use it.  They then have to give
11  notice that they want to use it in a brief, which
12  could be filed under seal or not filed under seal;
13  and the third party gets an opportunity to come in
14  here to intervene and say, "No, I don't want it in
15  the public record.  I want it filed under seal."
16  It's the third party's choice.
17          I'd also like to make a key
18  point that apparently Mr. Brooker wasn't listening
19  to myself or Ms. Kim.  Not all the Defendants are
20  the same in the MDL case and in this case.
21  Therefore, there are some Defendants out there
22  that may have received third party documents and
23  put them in a brief that we don't know who those
24  people are because they didn't -- they weren't

Page 33

1   third parties that we subpoenaed or received
2   documents and put them in a brief.  So we'd still
3   have to go through the 2,284 briefs to figure out
4   who these third parties are because we don't know
5   all of them, because the Defendants aren't the
6   same.
7           MR. SIMON:  And I would add, your
8   Honor, these third parties may not have ever
9   appeared in the MDL; for example, they were simply
10  subpoena recipients who produced documents under
11  the protective order.  Their names would not be
12  anywhere in the MDL docket at all.
13          THE COURT:  Thank you.  Anything
14  further?  Because it's your motion.  You get the
15  last word.
16          MR. BROOKER:  Your Honor, the reason
17  that there's no concern here about a breach of
18  confidentiality is that this Court's stipulated
19  protective order already protects all of the
20  nonparties' confidential information.
21          Now, what Defendants' counsel
22  has suggested is that they get a choice about
23  whether that information ends up in this case or
24  not.  That's actually not true.  If the

Page 34

1   information is within the Defendants, we have a
2   right to get it because it's in their possession
3   now.  The question is not whether it's in this
4   Court in some way.  What the question is is
5   whether the confidential information becomes part
6   of the public record in this case.
7                Now, under this Court's
8   protective order, which gives exactly the same
9   protections as the MDL protective order, because
10  if you'll recall, we had a long fight over it.
11  The Defendants won.  You adopted the MDL's version
12  of the protective order with very, very few minor
13  modifications.  The same protections that they get
14  in the MDL they get here.
15               If we want to put some of
16  their information on the public record, which is
17  the only concern they could possibly have, we
18  would have to give notice under the stipulated
19  protective order in this case specifically to them
20  to challenge their confidentiality designation.
21  Our alternative is to file it under seal.  Those
22  are the two options that we have:  challenge the
23  designations and bring them into court or at least
24  give them opportunity to object or file them under

Page 35

1   seal.  And that's for down the road.
2                If their only interest here is
3   protecting confidentiality, this Court's already
4   given it to them.  They're not going to show up,
5   which is why you don't need to go through the
6   record.  If there's information that needs to be
7   disclosed or notice that needs to be given for
8   them to come into the Court, we will provide that
9   after we have the documents.  But that's a fight
10  down the road.  This Court has already given them
11  any protection that they might need.
12               THE COURT:  All right.  Well, I'm
13  prepared to rule on this; and I'm going to deny
14  the motion.  I have a number of reasons for this.
15               One is, I think this is a
16  question of fairness; and, of course, that always
17  involves certain balancing and factoring in a
18  number of concerns.
19               I think that the State's
20  position here underestimates the burden that's
21  involved in producing materials that are included
22  in basically every redacted brief that's been
23  filed in the MDL, which we learned is nearly 2,200
24  documents.  Anyone who's ever had to deal with

Page 36

1   the -- a voluminous litigation, with multiple
2   parties, and multiple third parties, recognizes
3   that tracing back -- even the Court has this issue
4   when it's required to sort through multiple briefs
5   to figure out which documents are redacted and
6   which information has been filed under seal and
7   which hasn't.
8                In this case, the difficulty
9   seems to be not only with the number of documents
10  that are involved, but the fact that the
11  information comes from either Defendants here,
12  Defendants who are not Defendants here, or third
13  parties, and that while the State's brief and
14  argument suggests that this is a simple process of
15  simply sending out an email, I find that
16  proposition dubious.  And the representations of
17  counsel today are that my instincts were correct
18  on that; that this is a laborious job, trying to
19  determine exactly whose information is involved
20  and who must be notified.
21               I do not buy the argument that
22  there are coterminous protective orders in the MDL
23  and here and that that takes care of everything
24  because that decision is not my decision to make,

Page 37

1   and it's not the Plaintiff's decision to make.  It
2   is the third party or Defendant who's providing
3   confidential information, at least to make a
4   determination as to whether that party wishes to
5   come into court and not permit the disclosure.
6                So it's important that the MDL
7   Court's protective order is complied with, whether
8   or not there will be consequences from it, just as
9   it's important that this Court's protective order
10  will be complied with, whether or not there are
11  consequences from it or whether or not some third
12  party wishes to object.  But it's always the third
13  party's option, and that means the third party has
14  to be notified.
15               So what we hear on
16  representations of various Defendants is that this
17  is a somewhat complicated enterprise.  And
18  honestly, Mr. Harrop's experience simply
19  reinforces my view that the experience he had is
20  exactly the experience that the Defendants
21  involved here are going to have when they try to
22  figure out who it is that needs to be contacted to
23  produce this third party information.  That is,
24  there could be multiple counsel.  There could be

Page 38

```
 1  multiple counsels in succession, as well as
 2  simultaneously.  These are multinational
 3  corporations.
 4              And so I think the burdens are
 5  far, far outweighed on the Defendants' side than
 6  the Plaintiff's, who simply want the easiest,
 7  simplest way to get everything whether, frankly,
 8  as far as I can see, it actually fits their case
 9  or not.  I do think that's turning the tables on
10  the rules of discovery.
11              I'm not convinced.  I haven't
12  been provided any, say, raw materials to show me
13  that the issues are the exact same issues.  In
14  fact, when I asked, "Why didn't you join the MDL,"
15  it's because certain issues will be coming under
16  Illinois law.  So that suggests to me that there
17  may be some fertile ground here in this large pool
18  of disclosures in the MDL, but not necessarily
19  coterminous.  And as we know in Illinois, we don't
20  allow fishing expeditions in discovery.
21              So I think overall the burden
22  is decidedly in favor of the Defendants without,
23  in my view, a showing that there is such a
24  necessity to warrant this burden being extended on
```

Page 39

```
 1  this wholesale request for every document that's
 2  under seal in the MDL.
 3              So the motion is denied.
 4          MR. CROSS:  Thank you, your Honor.
 5          MR. BROOKER:  Thank you.
 6          THE COURT:  Do we have another court
 7  date coming up?
 8          MR. CROSS:  Yes, your Honor.  I think
 9  it's at the end of the year.  We have a scheduling
10  order that's been entered.
11          THE COURT:  All right.  Well, then I
12  may see you before then.
13          MR. CROSS:  I think you will, your
14  Honor.
15          THE COURT:  Thank you.
16
17      (Which were all the proceedings had.)
18
19
20
21
22
23
24
```

Page 40

```
 1  STATE OF ILLINOIS )
                      ) SS:
 2  COUNTY OF C O O K )
 3
 4          I, KATHY ANNE SEFTON, being first duly
 5  sworn on oath, say that I am a court reporter
 6  doing business in the City of Chicago; that I
 7  reported in shorthand the proceedings given at the
 8  taking of said court proceedings, and that the
 9  foregoing is a true and correct transcript of my
10  shorthand notes so taken as aforesaid, and
11  contains all the proceedings given at said court
12  proceedings.
13
14
15
16                Kathy a. Sefton
17
                  KATHY ANNE SEFTON, C.S.R.
18                79 West Monroe Street
                  Suite 923
19                Chicago, IL  60603
                  Phone:  (312) 578-8901
20                ksefton@seftonmoran.com
                  www.seftonmoranreporting.com
21
22
23
24
```

COURT PROCEEDINGS
Master Index



---

**1**

**1,000** 24:23
**12** 5:4

---

**2**

**2** 21:3
**2,187** 22:23
**2,200** 35:23
**2,284** 23:23 24:22 33:3
**201** 12:16
**22** 20:2 22:12,17
**24** 30:13

---

**3**

**30** 7:9,11 19:15 32:3
**312 578-8901** 40:19
**35266** 5:4

---

**4**

**4,000** 11:5
**4,187** 11:10
**4,500** 11:13
**4.9** 21:14
**400-and-some** 11:4
**41,000** 23:24 24:7

---

**5**

**5,000** 11:14

---

**6**

**60603** 40:19

---

**7**

**79** 40:18

---

**9**

**923** 40:18

---

**A**

**abandoned** 6:20
**absolutely** 29:12
**access** 15:18 22:5,7
**Act** 12:10 18:20 22:19,20
**action** 21:18 26:9
**actions** 25:4
**add** 26:7 33:7
**additional** 23:14
**address** 27:21
**adequately** 20:17
**admissible** 18:9
**admit** 16:4
**adopt** 14:15
**adopted** 34:11
**affirmative** 6:17 12:2,3
**aforesaid** 40:10
**AG** 28:15
**agree** 31:12
**agreed** 7:5 25:10 26:15
**ahead** 17:5 18:7 28:23
**alternative** 15:4,6 34:21
**alternatives** 18:1
**Amanda** 5:19
**amount** 21:23 22:1 23:2 24:24
**ANNE** 40:4,17
**anticipated** 8:20 10:4
**anticipates** 8:3
**Antitrust** 12:10 18:20 22:18,19,20
**apparently** 15:14 31:16 32:18
**appeared** 33:9
**Apple** 13:11
**apply** 14:4

---

**approaching** 11:14
**argument** 15:5 16:10 23:10,13 36:14,21
**arguments** 6:11
**assert** 8:4 12:3,4
**asserted** 8:11,15 9:5 11:22
**assume** 13:18
**assumed** 31:15
**attached** 23:18
**attaches** 19:20
**attorney** 25:9,18 26:11
**automatically** 9:1,13

---

**B**

**back** 10:21 23:4 36:3
**backup** 26:23 27:1,17
**balance** 12:16
**balancing** 35:17
**ballpark** 15:2
**basically** 6:15 35:22
**begin** 6:12
**behalf** 5:10,12,14 6:4 32:2
**benefit** 12:17,18 13:1,2,3 28:12
**big** 15:8
**bit** 9:17 12:18
**Blake** 5:12
**blanket** 23:12
**boil** 24:19
**breach** 33:17
**briefs** 6:9 10:13 11:8 16:11 22:23 23:23 24:3 25:7,12 33:3 36:4
**bring** 34:23
**bringing** 12:10
**Brooker** 5:10 6:13 8:10 10:7,19 11:6,12 12:8 14:7 15:24 16:18 19:20 20:12,16 22:9 24:12 28:22,24 30:7 32:6,18 33:16 39:5
**burden** 6:14,22,23 7:3 12:17 13:5,8 17:18 26:19,20 28:8,10,12,13,19 29:1 35:20 38:21,24

---

**burdens** 7:6 38:4

**business** 40:6

**buy** 36:21

**C**

**C.S.R.** 40:17

**California** 19:2 22:16

**calling** 23:6

**care** 36:23

**case** 6:8,23 8:21 10:9,17 12:9 14:5, 12 15:13,21 16:19,22 17:20 18:3,17, 22,23 19:5,22 20:3,5 21:2,14,18 23:19 24:5,6,21 25:7,9,12 27:4,11, 12,14 28:6,16 29:20 30:5,7,8,10 32:20 33:23 34:6,19 36:8 38:8

**cases** 6:16 9:11 11:23 13:10 14:9,10 27:12 29:6

**categories** 15:17

**CH** 5:4

**Chad** 5:10

**challenge** 34:20,22

**chance** 6:9 26:3 32:3

**changing** 15:21

**check** 25:21

**Chicago** 40:6,19

**choice** 20:18 32:16 33:22

**choose** 15:1

**cited** 13:11

**City** 40:6

**claim** 23:8 32:2

**clear** 17:17 21:12

**client** 27:9,10,11,15

**close** 18:13

**compel** 6:7

**complain** 7:14

**complaining** 6:24

**complete** 17:24

**completely** 28:6

**complicated** 13:14 37:17

**complied** 37:7,10

**concede** 7:10

**conceded** 6:15 28:5

**concern** 30:15 33:17 34:17

**concerned** 9:20 31:21

**concerns** 35:18

**confidential** 7:12,16 8:14 9:9 10:2, 22 11:1,15,17,18 18:10 20:19 22:3 23:8 33:20 34:5 37:3

**confidentialities** 8:2

**confidentiality** 7:22 8:4,6,11,19,22 9:5,11,21,23 20:14 33:18 34:20 35:3

**consequences** 37:8,11

**consolidate** 29:10

**consolidated** 22:16

**contact** 30:14,20,22 31:5

**contacted** 37:22

**continuing** 30:15

**control** 6:19

**conversation** 31:8

**convinced** 20:11 38:11

**copy** 31:14

**Copying** 13:6

**Corporation** 5:16

**corporations** 38:3

**correct** 23:9,16 25:14 36:17 40:9

**coterminous** 36:22 38:19

**counsel** 26:8 28:24 30:12 31:1,4,6,8 33:21 36:17 37:24

**counsels** 38:1

**COUNTY** 40:2

**couple** 10:20 26:8

**court** 5:3,4 6:5 7:23 8:7,20,24 10:5, 10 11:2,7,11 12:6,8 13:4,12 14:6,23 16:6 19:12 20:15 22:4 23:4,10 24:13,16 25:24 28:21,23 30:4 33:13 34:4,23 35:8,10,12 36:3 37:5 39:6, 11,15 40:5,8,11

**Court's** 9:13,22 10:4 20:20 32:5 33:18 34:7 35:3 37:7,9

**cover** 27:20

**covered** 25:22 26:4

**cross** 5:9,14 11:5,10 19:13 23:9,16 25:15 26:9 27:18 32:1 39:4,8,13

**CRTS** 11:24

**Cummings** 5:17

**custody** 6:18

**D**

**Dan** 5:17

**DAP** 21:18

**date** 39:7

**David** 5:23

**deal** 25:17 35:24

**decades** 27:5

**decide** 16:14 20:16,18

**decided** 21:9

**decidedly** 38:22

**decision** 36:24 37:1

**Defendant** 26:1 29:8 37:2

**Defendants** 5:18,20,24 6:2,4,7,15 9:2,12 12:1,3 13:2,9 17:16 21:13 24:4 26:7,14 28:5 29:1,5,16 31:15 32:19,21 33:5 34:1,11 36:11,12 37:16,20 38:22

**Defendants'** 28:10 33:21 38:5

**defense** 30:12,23

**defenses** 6:17 12:2,4

**delays** 18:2

**Dell** 21:19,20

**denied** 39:3

**deny** 35:13

**deposition** 20:6 21:5

**depositions** 9:4,20,24 19:22,24 21:15,17,22 23:19

**designated** 9:8 10:22 11:18 18:10

**designation** 34:20

**designations** 8:15,22 11:7 34:23

**determination** 37:4

**determine** 15:20 19:17 23:15 26:22 27:19 36:19

**difference** 16:1

**difficulty** 14:18 36:8

**digest** 12:23

**direct** 21:18

**directly** 10:8 31:1

**disclosed** 8:9,11 35:7

**disclosure** 37:5

**disclosures** 38:18

**discoverable** 14:13,14 15:3,4

**discovery** 14:2 15:11,23 16:15 21:7 30:9 38:10,20

**discuss** 30:1 31:2

**discussion** 10:15

**dispute** 13:14

**distinguish** 14:9

**distribute** 29:11

**distributors** 22:15

**docket** 16:21 18:15 26:12 29:2 30:24 33:12

**document** 7:13 10:6 14:19,20 16:21 18:15 29:14 32:7,9 39:1

**documents** 6:7,20 7:1,12,17 8:12, 18 9:4,7 10:7 11:9 13:6,15,16,23 15:16 16:16 19:17,23 20:4 21:6,14 24:18,22 26:13,21 27:8,14 32:22 33:2,10 35:9,24 36:5,9

**domestic** 18:24

**DPAS** 21:21

**DPP** 27:12

**dubious** 36:16

**duly** 40:4

---

**E**

**easier** 17:9 19:8

**easiest** 38:6

**easy** 12:24 13:7 14:5 18:5 29:11

**eating** 31:6

**effective** 17:4,20 28:18

**efficiency** 19:9

**efficiently** 12:20

**effort** 23:15

**elaborate** 26:18

**Electronics** 5:16,22 26:8

**email** 7:8 23:12,14 27:23 28:3 30:11, 13 31:7 36:15

**emailed** 31:1,3,14

**end** 17:2 22:14 30:17 39:9

**ended** 17:23

**ends** 33:23

**enormous** 15:13 21:24 24:24

**entered** 39:10

**enterprise** 37:17

**entire** 16:2

**entries** 24:1,8

**entry** 16:21 18:15 24:2

**estimating** 23:24

**evidence** 14:14 18:9

**exact** 38:13

**exhibits** 23:23

**existed** 30:11

**expediency** 19:9

**expeditions** 38:20

**expense** 21:7

**experience** 37:18,19,20

**expert** 9:6,19 10:1 14:3 19:24 20:1,6 21:16 26:24

**experts** 27:2

**experts'** 27:1

**explaining** 7:9

**extended** 38:24

**extent** 17:16 22:17

---

**F**

**fact** 6:18 7:15,18 9:2,22 12:13 17:15, 18 18:9 19:19 28:9,14 36:10 38:14

**factoring** 35:17

**facts** 10:8 11:1,19,21 12:19 15:20 18:11 19:3,4

**factual** 11:16 18:21,23

**fairness** 24:20 35:16

**familiar** 25:6

**fast** 12:24

**favor** 38:22

**fertile** 38:17

**fight** 34:10 35:9

**figure** 8:8 23:2 24:2,8,21 33:3 36:5 37:22

**file** 24:14 27:1,16 34:21,24

**filed** 6:8 10:6,13,14,24 22:15,24 23:23 24:22 29:14 32:12,15 35:23 36:6

**files** 16:2

**filing** 10:23

**filings** 11:13 14:2 16:4 21:3,5 26:16 28:11

**find** 18:1,3 21:8 36:15

**finding** 6:24

**fish** 15:7

**fishing** 38:20

**fits** 38:8

**fixing** 11:24 18:24

**foregoing** 40:9

**Foreign** 18:20 22:18,19

**form** 15:1

**forward** 14:16,17

**found** 31:1

**frankly** 17:8 38:7

**FTAIA** 22:20

**Funai** 20:8,9,10 30:2,10,11,12,14, 19,20,22 31:3,5

**Funai's** 31:1,8

---

**G**

**gave** 20:6

**general** 25:9,18

**General's** 26:11

**germane** 10:16 14:12 19:5

**get all**  14:1 17:6

**give**  9:16 19:18 20:5 23:3,21 32:10 34:18,24

**good**  5:6,7,9 6:5 11:16 14:15 17:23

**grossly**  29:1

**ground**  38:17

---

### H

**handled**  27:6

**happened**  16:20 17:2 29:21

**happy**  31:2

**Harrop**  5:7,12 30:1,8 32:6

**Harrop's**  37:18

**hear**  12:9 30:5 37:15

**heard**  30:15

**Herbison**  6:1

**highly**  8:14

**history**  9:17

**Hitachi**  5:5,20

**hoc**  11:20 16:5

**Hold**  26:2

**holding**  10:12

**honestly**  37:18

**Honor**  5:8,9 6:13 10:20 16:18 19:13 20:23 22:11 25:14 26:6 28:7,22 32:2 33:8,16 39:4,8,14

**hours**  17:14 30:14

---

### I

**identified**  18:17 26:13

**identifies**  29:8

**identify**  7:16 10:16 15:16 16:24 17:17 18:14 29:3,15

**identifying**  15:9

**IL**  40:19

**Illinois**  5:5 12:10 15:15 19:2 31:11, 23 38:16,19 40:1

**imagine**  27:3

**impact**  18:24

**important**  12:19 14:9 15:20 21:9 37:6,9

**Improvements**  18:20 22:19,20

**include**  9:7

**included**  35:21

**indication**  19:7

**indirect**  20:2 22:14

**inform**  26:5

**information**  8:13 9:7,8 10:2,9,22 11:17 12:22 14:11,22 15:4 16:16 18:6 19:4 20:20 23:7,8 29:20 33:20, 23 34:1,5,16 35:6 36:6,11,19 37:3, 23

**initially**  9:18

**initials**  21:21

**inquiries**  18:21

**instance**  20:24

**instincts**  36:17

**interest**  35:2

**interrupted**  16:9

**intervene**  24:14 32:14

**intervention**  10:3

**involve**  11:24

**involved**  11:1 15:13 20:7 26:20 27:10,23 29:5 30:2 35:21 36:10,19 37:21

**involves**  18:21 35:17

**IPP**  27:11

**IPPS**  21:21

**irked**  24:13,16

**irrelevant**  18:16

**issue**  6:14 10:9,18 11:22 16:8 18:23 30:16 31:3,18,20 32:9 36:3

**issues**  6:16 15:13 18:13 22:10,11, 17 38:13,15

---

### J

**Jacobowski**  5:20

**Janet**  20:1

**Jeffery**  5:14

**Jim**  6:1

**job**  36:18

**join**  38:14

**judge**  13:17 14:8

**juicy**  11:19

**jurisdiction**  12:9,11

---

### K

**Karl**  5:19

**KATHY**  40:4,17

**Kevin**  6:1

**key**  32:17

**Kim**  5:21 25:14,17 26:6 32:19

**kind**  10:11 15:10

**Koninklijke**  5:15

**ksefton@seftonmoran.com**  40:20

---

### L

**laborious**  36:18

**large**  38:17

**law**  38:16

**lawyers**  27:6

**lead**  14:13 15:3 16:15 18:8

**leads**  15:5

**learned**  35:23

**left**  16:9

**letter**  23:18

**letters**  19:21

**LG**  5:21,22,24 26:7,8,9

**limited**  16:3

**list**  19:14,15,16 23:15 27:7,18 28:2 29:4,10

**listening**  32:18

**litigation**  13:16 27:9 36:1

**litigations**  13:24

**logistical**  12:12

**long**  34:10

**longer** 27:10

**looked** 31:17

**lot** 22:11

---

**M**

**made** 8:23 17:17 24:10

**major** 31:20

**make** 26:23 27:21 28:5 32:2,17 36:24
37:1,3

**makes** 7:7 19:8

**making** 26:16

**market** 18:24

**material** 17:6 22:1 26:23 27:20 28:9
30:18 31:12

**materials** 6:10 27:4 29:9 35:21
38:12

**matter** 12:14 16:12 18:9 27:6

**MDL** 6:8 7:11,18,24 8:2,12,16 9:4,6,
20,24 11:12 12:7,8 16:2,4,22 19:6
24:5,12,13,15 25:12 26:12 27:13,24
29:2,6 32:20 33:9,12 34:9,14 35:23
36:22 37:6 38:14,18 39:2

**MDL'S** 7:3 34:11

**means** 18:11 32:5 37:13

**meet** 7:5

**mentioned** 26:10

**Mikela** 6:3

**million** 21:14

**mimic** 12:3

**mind** 6:10

**miniscusely** 13:7

**minor** 34:12

**Miriam** 5:21 26:6

**mistake** 24:10

**modeled** 7:24

**modifications** 34:13

**Monroe** 40:18

**month** 30:21

**months** 20:10,21 30:9,16,17 31:19

**morning** 5:6,7,9 6:5

**motion** 6:6 24:14 33:14 35:14 39:3

**motions** 11:20,21 16:5

**Mullin** 19:24 20:4

**multinational** 38:2

**multiple** 23:13 36:1,2,4 37:24 38:1

---

**N**

**N.V.** 5:15

**names** 33:11

**narrows** 24:23

**nature** 14:10

**necessarily** 38:18

**necessity** 38:24

**needed** 17:3,21 26:22

**negotiate** 20:9 26:10

**negotiated** 25:17

**negotiation** 20:21

**negotiations** 30:2 31:19

**Netz** 20:1,6

**nexus** 13:19,22

**nonparties** 7:9,21 8:15 9:18 29:17

**nonparties'** 10:1 33:20

**normal** 15:22

**notes** 25:21 40:10

**notice** 9:10 19:18 20:5,6 21:24 23:3,
12,21 27:20 29:16,17 32:11 34:18
35:7

**notified** 26:23 36:20 37:14

**notify** 7:11

**notion** 15:6

**number** 11:8,12 19:22 23:19 25:11
29:5 35:14,18 36:9

---

**O**

**oath** 40:5

**object** 34:24 37:12

**objected** 9:18 20:9 30:13 31:4

**objecting** 30:19

**objection** 29:23

**objections** 6:21

**obligations** 7:6,22 8:5,19 9:24 28:1

**obtained** 27:14

**obvious** 14:5

**office** 26:11

**open** 5:3

**opportunity** 32:13 34:24

**opt** 22:13

**opted** 21:20

**option** 37:13

**options** 34:22

**order** 6:21 7:3,5,7,18,24 8:1,3,5,21
9:14,22 20:5,13 24:12,14,15,17
25:11 27:24 29:11,19 31:11,14,18,
22 32:5 33:11,19 34:8,9,12,19 37:7,
9 39:10

**ordered** 24:17

**orders** 36:22

**Oregon** 25:8,9,10 26:9 28:15

**organize** 21:5,8

**outweigh** 28:13

**outweighed** 38:5

**overlapped** 15:14

**overstated** 29:1

---

**P**

**Panasonic** 6:2

**papers** 10:15

**part** 7:13 14:18 34:5

**parties** 7:9,12,17,20 9:5,8 13:3,15
18:12 19:15 20:7,15,17,18 23:3,6,13
26:22 27:8 29:3,9 31:21 32:3 33:1,4,
8 36:2,13

**parts** 11:15,16

**party** 19:22 21:4,17,22 23:19,20
27:3,8,13,14,17,19 29:7 32:13,22
37:2,4,12,13,23

**party's** 32:16 37:13

COURT PROCEEDINGS
Index: party/nonparty..representations

**party/nonparty** 12:22

**patent** 13:14

**patents** 13:17,21

**path** 14:15

**pending** 27:12

**people** 6:6 21:19 32:24

**perfectly** 21:12

**period** 12:2

**permit** 37:5

**personally** 26:10,21,24 27:16 30:1

**perspective** 17:9

**Philips** 5:15

**Phone** 40:19

**pick** 16:8,23 17:11 22:22,23

**picked** 18:18,19,22

**place** 12:16 31:11

**Plaintiff** 6:6 22:5

**Plaintiff's** 37:1 38:6

**plaintiffs** 21:19 24:6

**plate** 25:20 30:6

**pleadings** 19:5

**point** 19:19 28:4,10 32:18

**points** 26:8

**pool** 15:8,16 16:7 21:4,13 38:17

**portions** 16:13

**position** 35:20

**possession** 6:18 34:2

**possibility** 8:20

**possibly** 34:17

**potentially** 18:2

**prepared** 35:13

**presenting** 6:10

**preserved** 7:23 9:13,23

**preserves** 8:1,22

**presume** 13:22

**presumption** 13:13 14:5,15 15:6

**presumptuous** 32:1

**pretty** 32:1

**previous** 9:11

**price** 11:24 18:24

**privilege** 6:21

**pro** 11:20 16:5

**problem** 19:11 31:9,24

**proceeded** 20:9

**proceedings** 5:2 39:17 40:7,8,11, 12

**process** 25:13,15 26:15 27:22,24 36:14

**produce** 6:7 17:9,12 19:10 26:14 37:23

**produced** 7:13 8:18 9:3,4,6 21:14, 15,16,17 23:19 26:23 27:3,17 33:10

**producing** 7:1 19:22,24 35:21

**production** 9:19 26:17 27:2,17

**productions** 18:2

**proof** 21:2

**proponent** 15:11

**proposition** 36:16

**prosecute** 21:1

**protect** 8:5

**protected** 9:1 20:17 29:21

**protecting** 35:3

**protection** 20:14,20 35:11

**protections** 24:18 34:9,13

**protective** 7:3,5,18,24 8:1,3,5,21 9:13,22 20:13 24:12,15,17 27:24 29:19 31:11,14,17,22 32:5 33:11,19 34:8,9,12,19 36:22 37:7,9

**protects** 33:19

**provide** 21:24 29:19 35:8

**provided** 21:6 25:7 38:12

**providing** 37:2

**public** 16:16 32:15 34:6,16

**pull** 15:8

**purchasers** 20:2 22:14

**put** 29:4 31:5 32:23 33:2 34:15

**Q**

**question** 8:17 34:3,4 35:16

**questions** 25:18

**quickly** 12:19

**R**

**raw** 38:12

**read** 6:9

**real** 13:8

**realize** 29:18,20

**reason** 29:12 30:9 33:16

**reasons** 12:12 35:14

**recall** 34:10

**received** 9:9 29:8 30:11 32:22 33:1

**recently** 25:3,9 26:23

**recipients** 33:10

**recognized** 9:3,12 28:15,16

**recognizes** 36:2

**record** 16:17 32:15 34:6,16 35:6

**redacted** 14:24 16:11,13 35:22 36:5

**reduce** 21:7 25:11

**refer** 13:10

**reference** 27:18

**references** 7:16 29:13

**regard** 22:8

**reinforces** 37:19

**related** 13:16,23 27:9

**relevance** 6:16 28:6,9

**relevant** 13:24 14:13 15:17 16:15 17:6 18:7 19:8 22:21 28:11

**remember** 10:21 21:21 24:2

**reply** 19:20 26:3

**reported** 40:7

**reporter** 40:5

**reports** 9:6,19 10:1 14:3 21:16

**representations** 36:16 37:16

**request** 7:13 39:1

**require** 7:19

**required** 21:23 36:4

**respond** 25:19

**responded** 30:13,19

**response** 30:23

**responses** 14:2

**review** 8:8 17:11 26:21,24 27:16

**reviewed** 26:12

**reviewing** 7:1 26:16

**road** 19:11 35:1,10

**rule** 12:15,16 35:13

**rules** 38:10

**run-of-the-mill** 11:20

### S

**safe** 17:7

**Samsung** 6:4 13:11

**sandbag** 22:6

**scheduling** 39:9

**seal** 6:8 10:6,14,24 22:24 23:24 24:23 29:14 32:12,15 34:21 35:1 36:6 39:2

**sealed** 16:3 25:11

**sealing** 6:21

**Sears** 23:20,21

**SEFTON** 40:4,17

**selective** 17:1

**send** 7:7,8 28:2

**sending** 12:21 23:12 36:15

**sense** 15:10 17:23

**served** 6:19

**serving** 29:18

**sets** 14:15

**settled** 27:10,11 29:6

**Sheppard** 19:23 20:4

**shorthand** 14:8 40:7,10

**shot** 24:21

**show** 28:8,12 35:4 38:12

**showed** 9:21

**showing** 38:23

**shown** 28:14

**side** 38:5

**sift** 15:19

**significant** 21:23 23:2

**significantly** 26:19

**similar** 11:24 13:18,21 14:11

**Simon** 5:23 33:7

**simple** 27:24 36:14

**simplest** 38:7

**simply** 7:11 8:2 23:11 28:14 33:9 36:15 37:18 38:6

**simultaneously** 38:2

**single** 7:8 10:6 18:14 27:1,7,16,23 28:2 29:14

**situation** 14:16 30:10,11

**situations** 9:10

**small** 13:6,7

**so-called** 19:15 21:18 22:13,14

**Somebody's** 11:17

**sort** 36:4

**sorts** 12:21

**specific** 7:16

**specifically** 14:19 34:19

**SS** 40:1

**stamped** 8:13

**Stampfl** 5:19

**standard** 18:6,8

**start** 19:14

**started** 31:7

**state** 5:4,11,13 20:10,22,24 21:6,24 25:4,5,8 26:19 28:8,18 40:1

**State's** 10:17 23:11 28:11 35:19 36:13

**states** 20:2 21:3 22:12,17

**stay** 12:7

**step** 10:20

**stepped** 25:19

**stipulated** 7:4 33:18 34:18

**stop** 16:6

**Street** 40:18

**stuff** 9:9 17:2,3,21

**subject** 16:12 20:19

**subjected** 32:4

**submit** 28:19

**subpoena** 33:10

**subpoenaed** 33:1

**subpoenas** 12:22 29:7

**substantive** 11:21 12:5

**succession** 38:1

**sufficient** 27:20

**suggested** 33:22

**suggests** 36:14 38:16

**suit** 22:15

**Suite** 40:18

**supplemental** 18:1

**suppliers** 23:7

**supposedly** 30:3

**surrounds** 16:13

**Sutrina** 6:3

**sworn** 40:5

### T

**table** 15:10

**tables** 15:22 28:8 38:9

**takes** 24:22 36:23

**taking** 40:8

**talk** 16:7

**talked** 12:17

**talking** 14:1,2 18:11 19:17 21:4

**talks** 24:13

**technological** 13:19,22

**term** 13:20

**terms** 19:9

**test** 19:1,2

**thereof** 15:17

**things** 10:20

**time** 12:1 17:5 18:8 21:7

**times** 29:22

**today** 36:17

**told** 30:18 31:2,3

**Toshiba** 5:18

**total** 11:12

**totally** 18:16

**tracing** 36:3

**Trade** 18:20 22:18,19

**transcript** 40:9

**transcripts** 21:5

**true** 12:6 27:7 33:24 40:9

**truth** 16:23

**turn** 24:17 28:7

**turned** 24:11

**turning** 15:21 38:9

**turns** 15:10

**type** 10:23

**types** 13:15

**U**

**ultimately** 13:3 20:21 32:9

**unclear** 23:5

**underestimates** 26:20 35:20

**underlying** 14:22

**underneath** 17:22

**understand** 25:13

**understanding** 10:12 11:3

**undertake** 25:10

**unredacted** 14:21

**unsealed** 14:20

**USA** 5:22 26:9

**users** 22:14

**V**

**version** 14:21 34:11

**versus** 5:5 13:11

**vice** 11:20 16:5

**view** 15:22 37:19 38:23

**violated** 24:11,16

**voluminous** 21:5 36:1

**W**

**wanted** 25:22 26:13

**wanting** 24:20

**warrant** 38:24

**Washington** 25:5

**weeks** 31:6

**West** 40:18

**White** 19:21 20:3 23:18

**wholesale** 39:1

**wishes** 37:4,12

**withdrew** 9:23

**witnesses** 26:24

**Wolff** 6:2

**won** 34:11

**word** 13:20 33:15

**words** 15:3 23:5

**work** 16:20 21:1,23 23:2 24:20 25:1,
10,20

**worry** 22:8

**wrong** 31:3

**wrote** 24:4

**www.seftonmoranreporting.
com** 40:20

**Y**

**year** 39:9