UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917 |
| | Case No. C-07-5944 JST |
| This Order Relates To: | **ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT TECHNOLOGIES DISPLAYS AMERICAS LLC'S MOTION FOR SUMMARY JUDGMENT** |
| *Best Buy Co., Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05264; | |
| *Costco Wholesale Corporation v. Technicolor SA, et al., No. 13-cv-005723; Crago, d/b/a Dash Computers, Inc., et al., v. Mitsubishi Electric Corporation, et al.*, No. 14-cv-02058; | Re: ECF No. 2984 |
| *Electrograph Systems, Inc., et al. v. Technicolor SA, et al.*, No. 13-cv-05724; | |
| *Interbond Corporation of America v. Technicolor SA, et al.*, No. 13-cv-05727; | |
| *Office Depot, Inc. v. Technicolor SA, et al.*, No. 13-cv-05726; | |
| *P.C. Richard & Son Long Island Corporation, et al. v. Technicolor SA, et al.*, No. 13-cv- 05725; | |
| *Schultze Agency Services, LLC v. Technicolor SA, et al.*, No. 13-cv-05668; | |
| *Sears, Roebuck and Co., et al. v. Technicolor SA, et al.*, No. 13-cv-05262; | |
| *Sharp Electronics Corp., et al. v. Hitachi, Ltd., et al.*, No. 13-cv-01173; | |
| *Siegel v. Technicolor SA, et al.*, No. 13-cv-05261; | |
| *Target Corp., v. Technicolor SA, et al.*, No. 13-cv-05686 | |

United States District Court
Northern District of California

1    Before the Court is Defendant Technologies Displays Americas LLC's ("TDA") Motion

2   for Summary Judgment.  ECF No. 2984.  For the reasons below, the Court denies the motion in

3   part, and grants it in part.

4   **I.       BACKGROUND**

5          The factual history is well known to the parties and has been recited in the Court's prior

6   orders.  By way of summation, this case is predicated upon an alleged conspiracy to fix the prices

7   of cathode ray tubes ("CRTs"), a core component of tube-style screens for common devices

8   including televisions and computer monitors.  The conspiracy ran from March 1, 1995 to

9   November 25, 2007 (the "Conspiracy Period"), involved many of the major companies that

10  produced CRTs, and allegedly resulted in overcharges of billions of U.S. dollars to domestic

11  companies that purchased and sold CRTs or products containing CRTs ("CRT Finished

12  Products").  A civil suit was originally filed in 2007, ECF No. 1, consolidated by the Joint Panel

13  on Multidistrict Litigation shortly thereafter, see ECF No. 122, assigned as a Multidistrict

14  Litigation case ("MDL") to Judge Samuel Conti, see id., and ultimately transferred to the

15  undersigned, see ECF No. 4162.  In addition to two class actions, this MDL involves various

16  direct actions from individual plaintiffs who opted out of the class actions, including the DAPs

17  that oppose the present motions.  Each DAP alleges that it bought at least one CRT Finished

18  Product from a Defendant or an entity owned or controlled by a Defendant.

19         The following facts are relevant specifically to the instant motion.  Until mid-2005,

20  Defendant Thomson Consumer Electronics, Inc. ("Thomson Consumer"), a subsidiary of

21  Defendant Thomson SA,[1] operated Thomson's North American CRT business.  On July 12, 2015,

22  Thomson formed TDA on July 12, 2005.  ECF No. 3253-10 at 2.  A Thomson subsidiary

23  transferred Thomson's North American CRT business to TDA on August 29, 2005, and all equity

24  interests in TDA were transferred to Eagle Corporation Limited ("Eagle").   ECF No. 3253-9 at 5-

25  6.  By December 13, 2005, Videocon acquired a 100% interest in Eagle, becoming the sole owner

26  of TDA.  ECF No. 3253-15 at 4.  TDA shuttered its CRT operations by 2009.  ECF No. 3430 at 5.

27

28  _____
    [1] The Court refers to Thomson SA and Thomson Consumer jointly as "Thomson."

United States District Court
Northern District of California

United States District Court
Northern District of California

1    TDA now moves for summary judgment.  ECF No. 2984.  TDA argues 1) that it is entitled

2    to summary judgment because there is no evidence that it participated in the CRT conspiracy, 2)

3    that it is entitled to summary judgment on any claims related to color display tubes ("CDTs")

4    because it only participated in the market for color picture tubes ("CPTs"), 3) that it is entitled to

5    summary judgment against all Plaintiffs except Sharp because of the Illinois Brick standing

6    requirement, and 4) that it is entitled to summary judgment on all state law claims on the grounds

7    of due process and statutes of limitations.  ECF No. 2984 at 7.  Plaintiffs do not oppose TDA's

8    motion as it relates to the state law claims, ECF No. 3253-4 at n.1.

9    **II.      LEGAL STANDARD**

10   Summary judgment is proper when a "movant shows that there is no genuine dispute as to

11   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

12   "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by"

13   citing to depositions, documents, affidavits, or other materials.  Fed. R. Civ. P. 56(c)(1)(a).  A

14   party also may show that such materials "do not establish the absence or presence of a genuine

15   dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R.

16   Civ. P. 56(c)(1)(B).  An issue is "genuine" only if there is sufficient evidence for a reasonable

17   fact-finder to find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–

18   49 (1986).  A fact is "material" if the fact may affect the outcome of the case.  Id. at 248.  "In

19   considering a motion for summary judgment, the court may not weigh the evidence or make

20   credibility determinations, and is required to draw all inferences in a light most favorable to the

21   non-moving party.  Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

22   Where the party moving for summary judgment would bear the burden of proof at trial,

23   that party bears the initial burden of producing evidence that would entitle it to a directed verdict if

24   uncontroverted at trial.  See C.A.R. Transp. Brokerage Co. v. Darden Rests, Inc., 213 F.3d 474,

25   480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of

26   proof at trial, that party bears the initial burden of either producing evidence that negates an

27   essential element of the non-moving party's claim, or showing that the non-moving party does not

28   have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  If

the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists.  See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000).  The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). Indeed, it is not the duty of the district court "to scour the record in search of a genuine issue of triable fact."  Id.  "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the non-moving party must introduce some significant probative evidence tending to support the complaint."  Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotations omitted).  If the non-moving party fails to make this showing, the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"In antitrust cases, these general standards are applied even more stringently and summary judgments granted more sparingly."  Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n, 620 F.2d 1360, 1364 (9th Cir. 1980).   As a general matter, "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each. . . . The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole."  Cont'l Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 698–99 (1962) (alterations omitted). Nonetheless, "conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).  Rather, to defeat a motion for summary judgment, "a plaintiff seeking damages for a violation of § 1 must present evidence 'that tends to exclude the possibility" that the alleged conspirators acted independently.'"  Id. (quoting Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 752, 764 (1984)).

/ / /

/ / /

/ / /

/ / /

4

III.     ANALYSIS

A.     TDA's Participation in the Conspiracy

The Court agrees with Plaintiffs[2] that a reasonable jury could conclude that TDA participated in the CRT conspiracy when it "adopted and perpetuated Thomson's participation." ECF No. 3253-4 at 17.[3]

As an initial matter, there is evidence to suggest that Thomson participated in the conspiracy before it transferred its North American CRT business to TDA.  Indeed, when it denied Thomson Consumer's motion for summary judgment as to all CDT-related claims, this Court noted the following: "Thomson Consumer does not admit that it was involved in a CPT-conspiracy to price-fix monitor components for televisions, but effectively concedes that no motion for summary judgment based on absence of evidence of liability is appropriate for a CPT-conspiracy."  ECF No. 4937.  Thomson SA admitted that it "played a minor role in the anticompetitive conduct," ECF No. 3253-6 at 7, and the European Commission fined Thomson SA 38.6 million euros for its role in the conspiracy, ECF No. 3253-7 at 3.  What's more, Plaintiffs have presented their own evidence of Thomson's participation in the CRT conspiracy.  For example, Exhibit 7 to Plaintiffs' opposition brief is an email from a Thomson employee describing his plans to attend a "big guys" meeting with various competitors to "to "exchange[] the demand & supply information."  ECF No. 3253-12 at 2.  Similarly, Exhibit 8 contains an email between Thomson employees and an employee of Defendant LG, in which promises were made to "exchange sales volume information and our forecast for the remainder of the year."  ECF No. 3253-13 at 3.

Plaintiffs argue that TDA continued Thomson's anticompetitive conduct after the transfer of the CRT business.  First, Plaintiffs put forward evidence that, despite the new ownership, little else changed after Thomson transferred its CRT business to TDA.  ECF No. 3253-4 at 9.  TDA used the Thomson name, ECF No. 3253-10 at 2-3, employees transferred from Thomson to TDA

---

[2] "Plaintiffs" refer to the plaintiffs in the above-captioned cases.

[3] In its reply brief, TDA states that it "assumes, solely for the purposes of this motion, that [Plaintiffs' exhibits] are all admissible, and reserves the right to object to the admissibility of such documents at trial."  ECF No. 3430 at n.3.

United States District Court
Northern District of California

and kept their same employment contracts, ECF No. 3253-22 at 2, and Thomson continued to handle certain of TDA's administrative tasks, ECF No. ECF No. 3253-10 at 2-3, among other things.

Most importantly, Thomson personnel who appear to have been involved with the CRT conspiracy while at Thomson moved over to TDA.  For example, Jack Brunk, who served as a CRT sales manager at Thomson Consumer became TDA's Chief Sales Officer.  ECF No. 3253-20 at 10.  There is evidence that Brunk, while at Thomson Consumer, met with competitors like Samsung SDI and exchanged information about CRT prices and sales.  ECF No. 3253-25 at 3. Particularly because Brunk testified that "for [him, TDA and Thomson were] the same company," ECF No. 3253-20 at 7,[4] it is reasonable to infer that Brunk continued these improper contacts after transitioning to TDA.  This inference is bolstered by the fact that <u>after</u> the transition of Thomson's CRT business to TDA, Bruck's direct report, Key Lee, discussed a mutual client with a Samsung SDI employee.  The Samsung employee summarized: "After discussing with [] Thomson over the phone, it appears they will be happy and will agree with anything from SAMEX for the next year since they are in difficult times."  ECF No. 3253-35 at 4.  That same employee sent an internal email in 2006 that reported on TDA's (referred to in the email as Thomson) CRT product information and plan to increase prices.  ECF No. 3253-36 at 3.  Although the email does not provide the source of the information, given its confidential nature and the prior communications between the Samsung employee and Key, viewing the email in the light most favorable to TDA, it is reasonable to infer that someone internal to TDA passed this information along to a competitor.

Also supporting the claim that TDA perpetuated Thomson's anticompetitive conduct is the fact that an integration team of Thomson employees helped transition TDA to Videocon's ownership.  ECF No. 3253-16 at 3.  The evidence suggests that several of these employees, including Didier Trutt, participated in the CRT conspiracy while at Thomson.  For example, Trutt received a report in 2004 about a "glass meeting" with LPD and Samsung SDI, which included

---

[4] TDA objects that this statement simply referred to Brunk's use of the same work laptop.  ECF No. 3430 at 12.  But read in context, Brunk's was responding more generally to repeatedly being asked the same question for Thomson Consumer and for TDA. Viewed in the light most favorable to Plaintiffs, this piece of evidence supports their perpetuation of the conspiracy argument.

United States District Court
Northern District of California

discussion of production plans, and noted that there would be a meeting the following week "to try to avoid a deep price drop in Q3 in Turkey." ECF No. 3253-18 at 2. Although TDA is correct that many start-up companies undergo a "transition period," ECF No. 3430 at 10, not all such periods are orchestrated by individuals implicated in a conspiracy of the very product the new company manufactures.

The Court agrees with TDA that the evidence here is not as strong as the evidence in Baker's Carpet Gallery, Inc. v. Mohawk Indus., Inc., where the Court denied the Defendant's summary judgment motion in what Plaintiffs claim was an analogous situation. 942 F. Supp. 1464, 1479–80 (N.D. Ga. 1996). The Court also agrees that the evidence about Thomson's participation in the CRT conspiracy alone cannot make TDA liable. Esco Corp. v. United States, 340 F.2d 1000, 1009 (9th Cir. 1965) (holding that each Defendant's "participation must be proved by evidence relating to its participation," not that of another defendant). Nonetheless, there is enough here for a reasonable fact finder to conclude that TDA perpetuated the anticompetitive conduct that Thomson began given the seamless transition of the CRT business to TDA, the retention by TDA of Thomson personnel who had participated in the conspiracy there, and potentially anticompetitive actions by those employees while employed by TDA. In light of this evidence, it is not dispositive that TDA is absent from Plaintiffs' "Supplemental Exhibit A." In sum, the Court concludes that disputes of material facts remain as to TDA's participation in the conspiracy.[5]

### B.   CDT Claims

TDA next argues that it is entitled to summary judgment on any claims related to CDTs because TDA's involvement in the CRT business was limited to CPTs. ECF No. 2984 at 16. In support of this argument, TDA refers to and incorporates the arguments in Thomson Consumer's analogous motion for summary judgment. ECF No. 2981. But this Court has since denied that motion, holding that a dispute of material fact remained as to whether Thomson Consumer

[5] Given this conclusion, the Court does not address Plaintiffs' alternative arguments that 1) TDA is liable because Videocon participated in the CRT conspiracy while exercising control over TDA, or 2) TDA is liable because it did not withdraw from the conspiracy. ECF No, 3253-5 at 19-22.

1    participated in an "all-CRT conspiracy."  ECF No. 4937 at 10.  In light of TDA's total reliance on

2    the unsuccessful arguments in Thomson Consumer's motion, the Court denies this part of TDA's

3    motion for the same reasons.

4          **C.**    **Standing Under __Illinois Brick__**

5          TDA also argues that all Plaintiffs except Sharp[6] lack standing under __Illinois Brick__.  ECF

6    No. 2984 at 17.  The Court has previously outlined the holdings of __Illinois Brick__ and its progeny,

7    the parameters of the so-called "direct purchaser rule," and the rule's exceptions, ECF No. 4742,

8    and will not repeat that analysis here.  Briefly, the direct purchaser rule provides that only direct

9    purchasers of a price-fixed good have standing to sue for damages.  As relevant here, an exception

10   exists where the direct purchaser is unlikely to sue the conspirator because of a control

11   relationship.  In that case, the indirect purchaser has standing to sue.

12         In its motion for summary judgment, TDA argues that all Plaintiffs but Sharp are indirect

13   purchasers who therefore cannot "pursue federal antitrust claims against TDA."  ECF No. 2984 at

14   17.  Acknowledging the control exception, TDA also states that "[t]here is no claim that the direct

15   purchasers from TDA [from whom Plaintiffs purchased CRTs] are owned or controlled by TDA

16   or by any of these Plaintiffs."  __Id.__  As an initial matter, it is irrelevant whether the direct purchasers

17   are controlled by __Plaintiffs__, what matters is whether they are controlled by a __conspirator.__  __In re__

18   __ATM Fee Antitrust Litig.__, 686 F.3d 741, 756 (9th Cir. 2012) (explaining the control exception as

19   applying "where a direct purchaser is a division or subsidiary of a __co-conspirator__") (emphasis

20   added).  Moreover, aside from the conclusory assertion in its motion, TDA presented no evidence

21   that the direct purchasers who sold Plaintiffs' CRTs are not owned or controlled by a conspirator.

22   See generally ECF No. 2984 at 17.

23         Plaintiffs, on the other hand, do offer some evidence of ownership/control in their

24   opposition brief.  See ECF No. 3253-4 at 24.  In reply, TDA argues that this evidence is irrelevant

25   because it shows only that Plaintiffs purchased finished CRT products from direct purchasers

26

27   _____

28   [6] The parties appear to agree that Sharp is the only Plaintiff who purchased CRTs directly from TDA.

United States District Court
Northern District of California

owned or controlled by other conspirators, not by TDA.[7]  ECF No. 3430 at 16.  But the <u>Illinois Brick</u> direct purchaser rule is a standing requirement, meaning the focus is on whether the plaintiff purchased from a controlled entity, not whether a particular defendant was doing the controlling.  Eliminating any doubt on this point is the fact that "[n]othing in <u>Illinois Brick</u> displaces the rule of joint and several liability, under which each member of a conspiracy is liable for all damages caused by the conspiracy's entire output."  <u>Paper Sys. Inc. v. Nippon Paper Indus. Co.</u>, 281 F.3d 629, 632 (7th Cir. 2002).[8]  In other words, if Plaintiffs can overcome <u>Illinois Brick</u>'s standing requirement via the control exception, and TDA is a participant in the CRT conspiracy, TDA is jointly and severally liable for Plaintiffs' damages, even if TDA was not the conspirator who controlled the direct purchasers from whom Plaintiffs bought CRT products.

The Court finds that TDA has not carried its summary judgment burden of showing an absence of evidence in support of applying the ownership and control exception.  <u>See</u> <u>In re:</u> <u>Cathode Ray Tube (CRT) Antitrust Litig.</u>, 911 F. Supp. 2d 857, 872 (N.D. Cal. 2012) (denying Defendants' motion for summary judgment on same grounds).  <u>Illinois Standing</u> does not bar Plaintiffs' suit.

### D.     State Law Claims

Plaintiffs have stated that they do not oppose TDA's motion for summary judgment as to their state law claims, ECF No. 3253-4 at n.1.  Accordingly, the Court grants TDA's motion in part.

/ / /

/ / /

/ / /

/ / /

---

[7] In its reply brief, TDA also takes issue with Plaintiffs' exemplar control relationships.  ECF No. 3430 at 16.  These rebuttal arguments relate to the extent of director membership and the time period of control.  <u>Id.</u>  If anything, this demonstrates that there remains a dispute of material fact as to control/ownership.

[8] Indeed, TDA only contests this argument because "it is contingent upon TDA's having participated in the alleged conspiracy."  ECF No. 3430 at 16.  But that response fails given the Court's finding that disputed facts remain as to TDA's anticompetitive conduct.

**CONCLUSION**

TDA's motion is granted as to Plaintiffs' state law claims and denied as to their federal antitrust claims.

IT IS SO ORDERED.

Dated: January 25, 2017

_____

JON S. TIGAR
United States District Judge