UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917 |
|---|---|
| | Case No. C-07-5944 JST |
| This Order Relates To: | **ORDER RE: ALLOCATION OF IPP ATTORNEYS' FEE AWARD** |
| ALL INDIRECT PURCHASER ACTIONS | Re: ECF No. 4976 |

The Court now considers a Report and Recommendation ("R&R") dated October 24, 2016, from Special Master Martin Quinn, allocating the attorneys' fees awarded to class counsel for the indirect purchaser plaintiffs ("IPPs"). ECF No. 4976. The Court received a number of objections to the R&R, as well as responses to those objections. With minor modifications, the Court will adopt Special Master Quinn's R&R.

**I.     Lead Counsel's Proposed Allocation**

The Court begins, as it must, by evaluating lead counsel's proposed allocation of the fees. "[F]ederal courts . . . have recognized that lead counsel are better suited than a trial court to decide the relative contributions of each firm and attorney." Hartless v. Clorox Co., 273 F.R.D. 630, 646 (S.D. Cal. 2011). Of course, the Court still has an obligation to assess the allocation award to determine whether it agrees that each "attorneys' 'specific services benefited the fund—whether they tended to create, increase, protect or preserve the fund.'" Class Plaintiffs v. Jaffe & Schlesinger, P.A., 19 F.3d 1306, 1308 (9th Cir. 1994) (quoting Lindy Bros. Builders, Inc., v. American Radiator, Etc., 540 F.2d 102, 112 (3d Cir. 1976)).

In this case, Lead Counsel submitted its proposed allocation (the "Proposal") of the $158,606,250 aggregate IPP fee award to Special Master Quinn on August 22, 2016. ECF No.

4790.[1]  The Proposal lists "each firm's name, the firm's current lodestar amount . . . , the firm's current lodestar amount less the 10% across-the-board cut applied by Lead Counsel to limit inefficiencies, the proposed total payout, and the proposed multiplier."  R&R at 5.  The Proposal described how, in consultation with other class counsel, Lead Counsel had developed the following factors, and used them to assign the proposed multipliers:

> (1) level of work performed (drafting important briefs, taking or defending depositions, working with experts, preparing for trial, and involvement in the overall management of the case and case strategy were valued higher than document review and routine discovery work); (2) amount of high level work performed (taking depositions, drafting complex briefs and a firm's involvement in the overall management of the case and case strategy); (3) quality of the work performed (Lead Counsel enhanced or reduced a firm's multiplier based on his ability to rely upon that firm to consistently and independently produce excellent work product); (4) level of risk (firms that joined the case prior to early settlements or class certification faced more risk than those who joined later, the amount and date of assessments that a firm paid into the common Litigation Fund, and the amount of time and resources that the firm devoted to the case); and (5) billing efficiency and billing rates.

Id.  Based on these factors, Lead Counsel proposed the following multipliers:

Multipliers of 0.5-1.0 were given to nine law firms:

> Firms which did little or no substantive work; firms which were; firms which took an adverse position to the class; firms which otherwise worked at cross purposes to other class counsel and firms which had billing issues.

Multipliers of 1.0-1.25 were given to 17 law firms:

> Firms which represented one or more class representatives and/or performed low level document review; firms which did only a small amount of substantive work.

Multipliers of 1.25-1.3 were given to five law firms:

> Firms which performed slightly higher level document review (e.g. foreign language reviewer or high quality work), and/or performed some other substantive work other than document review, e.g. preparing evidentiary or legal memoranda, assisting with deposition and/or trial preparation.

Multipliers of 1.3-1.5 were given to eight law firms:

> Firms which did a smaller amount of higher level work (e.g. briefing, depositions, memoranda on legal issues or evidence, trial preparation) than firms in the tiers above; and firms whose main contribution was higher level document review, including assisting with preparations for

---

[1] The proposal was later amended to correct an error.  ECF No. 4800.

> depositions, e.g. as a team leader of the document review.

Multipliers of 1.5-1.8 were given to five law firms:

> Firms which performed high level work (e.g. taking depositions, preparing briefs, trial preparations, expert work) but less of it than the firms in the top tier, and/or they were not involved in overall case strategy; firms that did some post-fee petition work.

Multipliers of 1.9-2.5 were given to five law firms:

> Firms that were core to the class effort; firms that performed a large amount of high level work at most stages of the case; firms that drafted important briefs or argued significant motions; firms that took or defended a large number of depositions, were involved in trial preparations and expert work; firms that participated in settlement strategy and negotiations and performed substantial post-fee petition work.

A multiplier of 2.8 was given to Lead Counsel:

> Lead Counsel credits himself with effective coordination and management of the case over seven years, working cooperatively with dozens of co-counsel and defense counsel, and developing strategy to deal with complex legal and strategic issues; and obtaining a very large settlement for the class.

Id. at 5-6.

Pursuant to a scheduling order, Special Master Quinn considered numerous objections to the Proposal, responses to those objections, and heard oral argument. Id. at 2. On October 20, 2016, Special Master Quinn issued his R&R on the allocation of IPP attorneys' fees. ECF No. 4971. An amended R&R was issued on October 24, 2016. ECF No. 4976. The R&R in large part adopts Lead Counsel's Proposal, but adjusts the fee awards for several firms.

In response to the R&R, the Court received seven objections. ECF No. 5013 (Barry Objection); ECF No. 5021 (Hull Objection); ECF No. 5023 (Scarpulla Objection); ECF No. 5024 (Cooper Objection); ECF No. 5025 (Moore Objection); ECF No. 5026 (Alioto Objection); ECF No. 5041 (Winters Objection). Each objection prompted one or more responses.

**II.      ANALYSIS**

Like Special Master Quinn, the Court approves generally of the process proposed by Lead Counsel, in which firms are assigned multipliers based on a list of pre-set factors. Although the process of allocating fees in a case of this size among so many lawyers is discretionary and can at times seem arbitrary, Lead Counsel's Proposal provides some structure and guidelines for

3

multiplier decisions, and ultimately, each firm's fee award.

With that background in mind, the Court addresses each objection in turn:[2]

### A.     Law Offices of Brian Barry ("Barry")

Barry first objects to the methodology used by Lead Counsel to allocate fees among firms. ECF No. 5013 at 2.[3] But the Court agrees with Special Master Quinn that the use of factors to determine multipliers is a reasonable process for fee allocation. Moreover, other courts have used similar criteria in prior cases. See In re TFT-LCD (Flat Panel) Antitrust Litig., No. M 07-1827 SI, 2013 WL 1365900, at * 9-10 (N.D. Cal. Apr. 3, 2013). Second, Barry argues that Lead Counsel billed excessive hours. ECF No. 5013 at 6. But Barry presents no evidence of overbilling in this case, referring instead to alleged wrongdoing in another case in which Lead Counsel participated.

Third, Barry identifies four errors with the Special Master's allocation to his firm. Id. at 7. None has merit. Barry argues that the Special Master based his allocation on the erroneous "belief that ALL of [Barry's] hours were included in the calculation of the proposed amount it would receive." Id. at 7 (capitalization in original). But as Lead Counsel points out, the Special Master "was referring to the fact that Lead Counsel permitted Barry to bill 2000 hours for [one of the firm's attorneys], even though [that attorney] only spent 1300 hours in the online database." ECF No. 5054 at 6-7. Next, Barry complains that the Special Master erroneously found that he contributed only $25,000 to the litigation fund, not acknowledging Barry's subsequent $3,000 contribution. ECF No. 5013 at 8. But the Special Master properly declined to consider Barry's untimely evidence of this later contribution, id. at n.2, and, in any event, Lead Counsel did not consider any post-settlement contributions in its Proposal. ECF No. 5054 at 7. Barry was therefore not prejudiced by this exclusion. Barry also argues that one of his attorneys, Mr. Shea, should have been assigned a higher billing rate. ECF No. 5013 at 9. The Special Master already

---

[2] Lead Counsel's partial objection to the R&R argues that the fees of four firms should be reduced. ECF No. 5026. Each of those firms separately objected to the R&R. To avoid repetition, the Court considers Lead Counsel's arguments as to each of those firms in the context of that firm's objections.

[3] Pinpoint citations to docketed materials refer to the CM/ECF number electronically stamped at the top of each page.

addressed this argument, however: Shea did not complete work of the same difficulty as other, higher billing attorneys, even if his work was of good quality. R&R at 23-24. The Court agrees that this justifies Shea's awarded rate. Finally, Barry objects to the Special Master's finding that Barry abandoned the case. ECF No. 5013 at 9. Barry argues that he simply chose to have Mr. Shea, the "attorney who was working primary on CRT, shift over to start working on another case." Id. The Court finds that this is a distinction without a difference. The key fact is that Barry removed its main CRT attorney in the middle of this litigation, which required that Lead Counsel find a replacement.

Barry's objection is overruled.

### B. Sean Hull ("Hull")

Hull objects to the R&R on various grounds. ECF No. 5051. As Lead Counsel points out, however, Hull did not participate in the allocation process before the Special Master. ECF No. 5052. This Court will not entertain objections that were not raised in the first instance before the Special Master. Cf. United States v. Manarite, 44 F.3d 1407, 1419 n. 18 (9th Cir.1995) (holding that "withdrawal of an objection is tantamount to a waiver of an issue for appeal"). The purpose of appointing a Special Master is not only to receive the benefit of his or her expertise, but also to reduce the issues that must be considered by the district court. "It would defeat this purpose if the district court was required to hear matters anew on issues never presented to the magistrate." Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987) (observing also that "[p]arties must take before the magistrate, not only their 'best shot' but all of their shots" (citation omitted)); Absolute Software, Inc. v. Stealth Signal, Inc., 659 F.3d 1121, 1131 (Fed. Cir. 2011) ("A primary purpose of appointing a special master is to narrow the issues before the district court judge to facilitate an efficient and timely resolution of complex or highly-technical issues....").

### C. Law Offices of Francis Scarpulla ("Scarpulla")

Scarpulla and Lead Counsel disagree over which hours Scarpulla is entitled to recover fees for and what multiplier he should receive for those hours. Taking the multiplier issue first, the Court agrees with Scarpulla that the Special Master's recommended multiplier of 1.15 is too low. ECF No. 5023 at 5. The Court will award Scarpulla a multiplier of 1.9587, the same as the Zelle

Firm.

Originally, Lead Counsel proposed that Scarpulla receive a multiplier of .7495. R&R at 9. Scarpulla objected to that multiplier before the Special Master, who agreed in part and elevated the multiplier to 1.15. Before this Court, Scarpulla objects that his multiplier is still too low. He argues first that he deserves a multiplier of 3.0, the same as Lead Counsel's, based on an alleged agreement under which Zelle would serve as "shadow" co-lead counsel. ECF No. 5023 at 7. But although there is some evidence of this agreement, the Court agrees with the Special Master that Scarpulla has not proved the existence of a contract by a preponderance of the evidence. R&R at 13.

Next, Scarpulla argues that he should receive at least the same multiplier given to the Zelle Firm, 1.9587, because all of the time for which Scarpulla seeks compensation was performed while he was a partner at Zelle. ECF No. 5023 at 5-7. The Court finds this argument persuasive. There is no good reason, at least on the facts here, to award different multipliers to attorneys working at the same firm. Lead Counsel responds that Scarpulla does not deserve the same multiplier as the Zelle Firm because he, unlike them, worked at cross-purposes with Lead Counsel after he formed his own law firm. ECF No. 5058 at 9; ECF No. 5026 at 12-13. But as the Court will explain below, the fact that some of Scarpulla's work did not benefit the class can be accounted for by reducing the number of hours for which he is compensated. The Court will not doubly punish Scarpulla by reducing his hours and his multiplier.

As for Scarpulla's hours, the Court disagrees with Special Master Quinn's decision to make "no reduction . . . other than the 10% across-the-board cut applied to all firms." R&R at 12. According to Lead Counsel, the reductions to Scarpulla's time eliminated certain categories of work that nearly every other law firm excluded. ECF No. 5058 at 6 ("Scarpulla billed for 24.90 hours on the lead counsel motions; 23.70 hours on unassigned, unauthorized meetings with the California Attorney General; 76.95 hours on other unassigned tasks, such as reviewing legal opinions unrelated to any assignment to Zelle, and meetings with co-counsel (some of whom weren't even involved in this case); and 1.30 hours that appear to be work on the LCD case."). The Special Master opined that the cuts to Scarpulla's time were "excessive," and "suggest[ed]

payment for Scarpulla's many criticisms of Lead Counsel," but the Court agrees with Lead Counsel that Scarpulla should not be reimbursed for types of tasks that other counsel cut from their fee requests. To the extent that Lead Counsel's proposed cuts were motivated by animus or by Lead Counsel's inadequately-supported belief that Scarpulla undermined the litigation of the case, the Court has accounted for that factor by increasing Scarpulla's multiplier.

Scarpulla's additional objections lack merit and are overruled. First, Scarpulla argues that Special Master Quinn erred by permitting "duplicative and unusable trial work." ECF No. 5023 at 10. But Scarpulla offers no real evidence that the work he challenges lacked value. Second, Scarpulla claims that the Special Master erred in failing to reduce the fee allocation for firms that used "inflationary billing practices such as quarter-hour billing increments and 'block-billing.'" Id. at 11. Again, however, Scarpulla offers no evidence that these practices led to inefficiencies in here. Given the record before it, and without announcing a rule regarding block billing to govern other cases before the Court, the Court is not in a position to estimate reliably the degree to which block billing may have contributed to disparities in counsels' lodestar amounts. Third, Scarpulla assigns error to the Special Master's decision to give a financial risk multiplier to certain firms. Id. at 13. Specifically, Scarpulla suggests Lead Counsel should not be rewarded for contributing a large sum of money "when there was no chance that amount would not get repaid." Id. at 14. But the money has not yet been repaid – and given that the IPP settlement is still on appeal, it would be wrong to conclude that Lead Counsel "knew" that any advancement by him would be recouped. The Court sees no reason to disturb the Special Master's ruling.

The Court awards Scarpulla $130,118.88: $66,431.25 at a multiplier of 1.9587.

**D.     Cooper & Kirkham ("C&K")**

Under the R&R, C&K received a 1.25 multiplier, which the Special Master concluded "both rewards it for the good legal work it did and accounts for [C&K]'s less than collaborative actions." R&R at 19. "But for [C&K]'s unhelpful activities," the Special Master found that the firm "would have fit comfortably at the top of the 1.3-1.5 tier of multipliers." Id.

C&K's first objection is a legal one. C&K claims the Special Master has improperly created a rule, with no basis in existing precedent, that "a penalty may be exacted from litigation

7

1    counsel for raising or pursuing a settlement objection." ECF No. 50204 at 6.  The Court disagrees
2    with the premise of C&K's argument.  The Special Master did not penalize C&K simply for
3    making objections; rather, he considered whether C&K's actions benefited the class and
4    concluded that certain of C&K's objections hurt, rather than helped the class.  Indeed, the Special
5    Master explicitly recognized that several of C&K's objections to the settlement did not "deserve
6    retribution in the form of an unfavorable multiplier" even though one of those objections, related
7    to the scope of release, was ultimately overruled.  Id. at 17-18.  This cuts against C&K's assertion
8    that the Special Master created a penalty rule for raising settlement objections in general.
9    Certainly, the Court recognizes that objections play a critical role in ensuring the fairness of
10   settlements, see, e.g., White v. Auerbach, 500 F.2d 822, 828 (2d Cir. 1974), and courts should not
11   punish objectors who raise meritorious objections, see, e.g., Bezdek v. Vibram USA, Inc., 809
12   F.3d 78, 84 n.3 (1st Cir. 2015).  But that is not what happened here.

13       Next, C&K objects to the specific reasons given by the Special Master for calling C&K
14   "less than collaborative."  Specifically, C&K argues that its "objections to the scope of notice and
15   to the quality of Lead Counsel's leadership" were meritorious and cannot justify a reduced
16   multiplier.  ECF No. 5024 at 10.  The Court finds that there is factual support for the Special
17   Master's conclusions on both issues.  As for the scope of notice objection, the Court agrees that
18   C&K should have raised this objection with Lead Counsel earlier, "when it might have been dealt
19   with before the notice program had been completed and paid for."  R&R at 18.  Lead Counsel filed
20   a declaration outlining the notice plan on May 29, 2015, ECF No. 3863, but C&K did not notify
21   Lead Counsel about its objection until October 1, 2005, and did not file an objection until October
22   8, 2015, ECF NO. 4115, after the notice plan had already been implemented.  That delay supports
23   the Special Master's conclusion that C&K "showed a lack of collaboration and a disregard of the
24   interests of the Class."  R&R at 18.  The Special Master's reference to C&K's objections to "the
25   quality of Lead Counsel's leadership" is more opaque.  The Court assumes, as did C&K, that the
26   Special Master did not mean C&K's Chunghwa settlement or scope of release objections, since
27   the R&R explained that those objections did not deserve punishment.  R&R at 17-18.  That leaves
28   C&K's fee-related objections; namely, that Lead Counsel did not contemporaneously make its

time records and engaged in block billing, both of which C&K claims led to an inflated lodestar. The Court agrees with the Special Master that those objections were very weak. In the R&R approving the aggregate IPP fee amount, the Special Master quickly rejected the contemporaneous billing argument as based only on "unsupported hearsay." ECF No. 4531 at 79. Likewise, the Special Master dismissed C&K's block billing argument, noting it is "silly" to "insist . . . on showing a specific amount of time on each action taken during a day." Id. at 81. Given the lack of evidence C&K offered to support these objections, they support the Special Master's choice of a lower multiplier.

C&K also objects to the tier framework for determining each firm's multipliers. ECF No. 5024 at 15. The Court already explained its decision to overrule those objections and declines to do so again here.

In its response to C&K's objection and in its own objection to the R&R, Lead Counsel asks this Court to reduce C&K's multiplier even further than what was recommended by the Special Master, largely based on additional arguments that C&K worked at cross purposes with Lead Counsel. ECF No. 5059 at 12. The Court concludes that the 1.25 multiplier already accounts for C&K's unhelpful actions, such as allegedly negotiating independently with other defendants. Nor will the Court penalize C&K for not producing time records, a request that the Special Master already rejected. R&R at 17 n.12. Now is not the time for additional discovery.

The Court adopts the R&R in full as it relates to C&K and awards that firm $3,452,040.

**E.     Theresa Moore ("Moore")**

In the order awarding attorneys' fees in the IPP case, ECF No. 4740, the Court granted fees totaling 27.5% of the common fund, rather than the 30% recommended by the Special Master. Id. at 2. One of several reasons for this reduction was the fact that although the settlement, which constituted 20% of the IPP's estimated injury, "represents a good result, [it is] not on par with the 50% potential recovery achieved in the LCD litigation." The crux of Moore's objection here is that she is responsible for alerting the Court to this gap, and therefore deserves compensation for the subsequent reduction in attorneys' fees from 30% to 27.5%. ECF No. 5025.

The Court was well aware of the LCD litigation before Moore raised it in her objection to

the overall IPP fee award. Given that the two cases involve similar claims, many of the same parties, and were litigated in the same district, the Court has been careful to keep the LCD litigation in mind during the pendency of this matter, and has referred to Judge Illston's prior orders regularly in resolving the motions in this case. Indeed, the Court issued orders before receipt of Moore' objection that referred specifically to the LCD settlement. In re: Cathode Ray Tube (Crt) Antitrust Litig., No. 14-CV-2058 JST, 2015 WL 9266493, at *4 (N.D. Cal. Dec. 17, 2015); In re: Cathode Ray Tube (Crt) Antitrust Litig., No. C-07-5944 JST, 2016 WL 183285, at *2 (N.D. Cal. Jan. 14, 2016). There is no basis for awarding Moore fees for identifying the outcome reached in the LCD litigation. The Court therefore overrules Moore's objection.

Lead Counsel argues in its own objection to the R&R that the Special Master erred in increasing Moore's multiplier from .75, which Lead Counsel recommended, to 1.0. ECF No. 5026 at 14. The Court agrees. As the Special Master acknowledged, Moore "did extraordinarily little work on the case" and what work she did complete was "ministerial" and "did not benefit the class." R&R at 22-23. Nonetheless, the Special Master concluded that a "punitive negative multiplier is not clearly called for," and increased Moore's multiplier to 1.0. Id. But that increase does not comply with the multiplier framework recommended by Lead Counsel and adopted by the Special Master, under which a multiplier less than 1.0 was appropriate for "[f]irms which did little or no substantive work." Id. at 6. That, in the Special Master's own words, describes Moore's contribution to this case. Lead Counsel's recommended .75 multiplier was not punitive, it simply placed Moore in the appropriate multiplier category. Therefore, the Court reduces Moore's multiplier back to .75 for a total fee award of $48,018.96 ($64,025.28 x .75).

### F. Lingel H. Winters ("Winters")

The Court construes Winters's Declaration, ECF No. 5041, as a response to Lead Counsel's objection to the R&R, ECF No. 5026. So construed, the response does not appear to contain any actual request of this Court. The Court therefore takes no action based on Winters's filing. Lead Counsel, however, does object to the Special Master's award of fees to Winters as "excessive." ECF No. 5026 at 14. The Court agrees. Like Moore, the Special Master concluded that Winters did virtually no substantive work: he "filed a complaint late in the game, modeled

heavily on prior complaints, and thereafter did nothing but review ECF filings." ECF No. 4976 at 26. The Court therefore reduces Winters's multiplier to .75 for the same reasons it reduced Moore's. The Court will not, however, reduce Winters's hours, as Lead Counsel also requests. ECF No. 5026 at 14-15. The Court therefore awards Winters $35,700 (($47,600 x .75).

## CONCLUSION

For the foregoing reasons, the Court rules as follows: Objector Brian Barry's objection is overruled. The Court will not consider the belated objections of Objector Sean Hull. The Court awards Scarpulla $130,118.88: $66,431.25 at a multiplier of 1.9587. The Court adopts the R&R in full as it relates to C&K and awards that firm $3,452,040. The Court reduces Moore's multiplier to .75 for a total fee award of $48,018.96 ($64,025.28 x .75) and likewise reduces Winters's award to $35,700 ($47,600 x .75).

These minor adjustments result in a net decrease in the payouts to the objector firms from the allocation recommended by the Special Master. When the Special Master faced the opposite situation — i.e., his adjustments resulted in a net *increase* in funds to the objectors compared with Lead Counsel's Proposal — the Special Master concluded that Lead Counsel must bear the "unwelcome burden" of being the "source of the funds to effectuate the[] increases." R&R at 26-27. He accordingly reduced Lead Counsel's fee by $1,351,845.66.

The reverse is true now, although the adjustment is markedly smaller in size. As a result of the Court's ruling today, a total of $101,250.85 that would have gone to objectors Scarpulla, Moore, and Winters are unallocated. Adopting the Special Master's reasoning, the court restores the resulting extra funds to Lead Counsel.

In all other respects, the Court adopts the Special Master's recommendation.

IT IS SO ORDERED.

Dated: February 28, 2017



_____
JON S. TIGAR
United States District Judge

11