Guido Saveri (22349)
   guido@saveri.com
R. Alexander Saveri (173102)
   rick@saveri.com
Geoffrey C. Rushing (126910)
   grushing@saveri.com
Cadio Zirpoli (179108)
   cadio@saveri.com
Matthew D. Heaphy (227224)
   mheaphy@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **DECLARATION OF R. ALEXANDER SAVERI IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' SECOND APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS** |
| *Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al.*, Case No. 14-CV-2058-JST. | |
| | Date:        June 8, 2017 |
| | Time:        2:00 p.m. |
| | Judge:       Honorable Jon S. Tigar |
| | Courtroom:  9 |

I, R. ALEXANDER SAVERI, declare:

1.      I am the managing partner of Saveri & Saveri, Inc. ("S&S"). I submit this declaration in support of Direct Purchaser Plaintiffs' Second Application for Attorneys' Fees and Expenses and Incentive Awards. Except as otherwise noted, I make this declaration of my own personal knowledge, and if called upon to do so, could and would testify competently to the facts contained herein.

2.      I, or members of my firm, have been involved in almost every aspect of this litigation, including this case (Case No. 14-CV-2058-JST), since its inception. On May 9, 2008, the Court appointed founding partner Guido Saveri and S&S as interim lead counsel for the class of Direct Purchaser Plaintiffs ("DPPs" or "Plaintiffs"). The Court has appointed S&S Lead Counsel for each of the settlement classes it has certified. On February 13, 2017, the Court appointed S&S as Class Counsel for the litigated class. The background and experience of S&S and its attorneys and paralegals are summarized in the *curriculum vitae* attached hereto as Exhibit A.

## I.      SAVERI & SAVERI, INC.'S ATTORNEYS' FEES AND EXPENSES

3.      Attached hereto as Exhibit B is a chart showing my firm's total hours and lodestar, computed at historical rates, without any upward adjustment for interest, for work related to the case against the Mitsubishi Electric and Thomson Defendants. Some of the time predates the first fee application made by DPPs in this action, however, none of the time submitted with this application was included in the first fee application. The total number of hours spent by S&S on the Mitsubishi Electric and Thomson case through March 29, 2017 was 11,480.10, with a corresponding lodestar of $6,082,380.00. This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm. The lodestar amount reflected in Exhibit B is for work performed by my law firm for the benefit of the class.

4.      The hourly rates for the attorneys, paralegals and law clerks at my firm included in Exhibit B were the usual and customary hourly rates charged by S&S at the time the work was performed.

5.      Attached hereto as Exhibit C is a chart showing the itemized costs and expenses paid by S&S. My firm has expended a total of $1,036,068.81 in costs and expenses in connection

with the prosecution of this case. They were incurred on behalf of DPPs by my firm on a contingent basis, and have not been reimbursed. The expenses incurred in this case are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

6.     I have reviewed the time and expenses reported by my firm in this case which are included in this declaration, and I affirm that they are true and accurate.

## II.     DPP COUNSEL ATTORNEYS' FEES AND EXPENSES

7.     Attached hereto as Exhibit D is a summary of the total hours, lodestar and expenses of all DPP Counsel that participated in the joint prosecution of this litigation. The total number of hours spent by all DPP Counsel, including S&S, was 21,652.70, with a corresponding lodestar of $11,812,004.95. Total hours and lodestar are computed at historical rates, without any upward adjustment for interest. All firms were instructed to only submit time and lodestar for work done related to the case against the Mitsubishi Electric and Thomson Defendants which had not been previously submitted to the Court. All firms were instructed to maintain separate records of their time, lodestar and expenses in this case. All firms were instructed to cease work on the case on October 31, 2016, when the settlement with the Mitsubishi Electric Defendants was reached. The bulk of the work performed after this date related to obtaining Court approval of the last settlement and related issues. S&S performed the vast majority of this work. The declarations of all counsel seeking reimbursement are filed separately with this motion. All of this time was reasonable and necessary for the prosecution of this action. The lodestar does not include substantial time spent by counsel relating to this application for a fee award and reimbursement of expenses. The current lodestar does not include time for which DPP Counsel previously sought reimbursement.

8.     The total lodestar submitted as a basis for the first fee application was $43,335,517.50. The additional lodestar submitted as a basis for this second application is $11,812,004.95. The total combined lodestar in the case is $55,147,522.45.

9.      Exhibit D attached hereto also contains a compilation of each firm's unreimbursed costs and expenses in the amount of $1,053,960.26. These costs and expenses are supported by each firm's separate declaration in support of fees and costs.

10.      Exhibit E attached hereto contains a compilation of each firm's unreimbursed costs and expenses by category, as follows: (i) document management system and database costs of $48,616.25; (ii) payments to special masters of $78,413.66; (iii) payments to translation services of $32,511.71; (iv) payments to claims administrator of $112,011.33; (v) Court filing fees and costs of $1,010.00; (vi) payments to experts of $732,650.80; (vii) Federal Express costs of $1,044.67; (viii) transcript costs of $13,559.00; (ix) messenger and delivery costs of $18.34; (x) in-house copy charges (capped at 20 cents per page) of $29,515.79; (xi) professional copy charges of $1,331.30; (xii) postage charges of $366.17; (xiii) service of process charges of $397.75; and (xiv) telephone and facsimile charges of $2,513.49. These expenses were reasonable and necessary for the prosecution of this action. The total expenses do not include any expenses for which DPP Counsel previously sought reimbursement.

11.      S&S instructed Class Counsel to keep time related primarily to the Mitsubishi Electric and Thomson Defendants separate from that related to the case against the other defendants. Some of the work described here and included in Plaintiffs' additional lodestar—e.g., drafting the complaint against the Mitsubishi Electric and Thomson Defendants, work related to the class certification motion against those defendants—was performed before the first application for attorney fees and expenses.

### III.      SAVERI & SAVERI, INC. AND DPP COUNSEL WORK PERFORMED

12.      S&S has prosecuted this litigation solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting claims against defendants. While S&S devoted its time and resources to this matter, it has foregone other legal work for which it would have been compensated.

13.      Defendants have steadfastly opposed DPPs on many grounds. From the outset of the case, defendants have contended that DPPs are entitled to little or no recovery because, *inter alia*, (1) the conspiracy was limited to Asia and did not affect the United States; (2) the FTAIA barred

3

DPPs case; (3) DPPs lacked standing because the conspiracy did not extend to the Finished Products (i.e., computer monitors and televisions) most had purchased; (4) the vast majority of DPPs claims were barred by the statute of limitations; (5) the conspiracy involved only Color Display Tubes ("CDTs"); and (6) that the conspiracy, if it existed, caused little or no damage to DPPs. In addition, most defendants asserted that they were not conspirators or had withdrawn from the conspiracy long ago. At every stage of this case, defendants asserted these arguments as a basis to dismiss all or part of the case, to limit damages, or to deny or limit discovery. While Plaintiffs were confident in their case, losing any of these issues could have reduced their recovery substantially. Indeed, while the Court ultimately disagreed, Special Master Legge recommended that the Court grant defendants' motion to disallow damages for Finished Products. If his ruling had been affirmed, it would have eliminated approximately 70% of Plaintiffs' damages.

14.     S&S managed the litigation effectively and efficiently. Among other things, work was assigned by S&S among the various firms to avoid duplication; as required by CMO 1, counsel kept contemporaneous time records; and wherever possible, DPPs coordinated with the Indirect Purchaser Plaintiffs ("IPPs") and the Direct Action Plaintiffs ("DAPs") to avoid duplication of effort. Class Counsel also effectively managed the logistics of such a complex action, with more than thirty plaintiffs' firms, and defense counsel representing nine defendant groups over the course of the litigation

15.     Despite their later entry into the litigation, the Mitsubishi Electric and Thomson Defendants vigorously asserted the same arguments as the other defendants. DPPs opposed their arguments with equal vigor, but, as with the other defendants, the arguments were sometimes difficult, and the outcomes uncertain. As with the other settlements, the efforts of Class Counsel were essential to the benefits conferred on the class by the settlements with the Mitsubishi Electric and Thomson Defendants.

16.     Plaintiffs faced a substantial risk that the jury would find that the Mitsubishi Electric Defendants did not participate in the alleged conspiracy. Among other things, the Mitsubishi Electric Defendants would have argued at trial that they did not attend a single "glass meeting"; that they ceased manufacture of Color Picture Tubes ("CPTs") in 1998 and CDTs in 2004; that

most of the CDTs they made used a different technology and were marketed to different customers than those of the other alleged conspirators; and that their market share was small—i.e., substantially less than 5%—and they were therefore always a "bit" player in the market with little incentive to join the conspiracy.

17.     Thomson's poor financial condition limited the amount DPPs could obtain by judgment or settlement.

### A.     Initial Phase of the Multidistrict Litigation

18.     This multidistrict litigation arises from an alleged worldwide conspiracy to fix prices of Cathode Ray Tubes ("CRTs"). CRTs are the primary components of CRT televisions and computer monitors. The alleged conspiracy involved some of the largest companies in the world— Samsung SDI, Panasonic, LG, Toshiba, Hitachi, and Philips.

19.     After the United States Department of Justice ("DOJ") announced its investigation into the conspiracy in November of 2007, twenty direct purchaser plaintiff class action complaints were filed alleging a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15.[1]

20.     Plaintiffs' work during the first eight years of the case included: conducting limited document discovery during a two-year stay following a DOJ intervention; filing a consolidated amended complaint; opposing and surviving multiple motions to dismiss; favorably resolving defendants' Rule 11 motion; opposing defendants' motion for summary judgment regarding Finished Products; propounding and responding to extensive discovery; reviewing and analyzing millions of pages of documents, including many written in Korean, Chinese and Japanese; participating in the depositions of over 100 representatives of defendants; responding to eight sets of interrogatories and nine sets of document requests propounded by defendants; producing over 12,000 pages of documents; preparing and sitting for class representative depositions; drafting and

---

[1] On February 10, 2009 and November 9, 2010, the DOJ announced the indictment of executives of defendants Samsung SDI, LG Electronics and Chunghwa Picture Tubes for price fixing Cathode Display Tubes ("CDTs") used in computer monitors. Ultimately, the DOJ secured only a single conviction. Defendant Samsung SDI admitted to participation in a conspiracy to fix the prices of CDTs between January 1997 and March 2006. Amended Plea Agreement, *U.S. v. Samsung SDI Co.*, Case No. 11-cr-162-WHA (N.D. Cal. Aug. 8, 2011) (ECF No. 29).

1  filing a motion for class certification with respect to the Hitachi and Samsung SDI defendants;

2  negotiating and documenting settlements with the initial seven defendant groups, including gaining

3  final approval of the settlements and executing Court-approved notice programs; and other

4  miscellaneous motion practice. This work is detailed in greater detail in my declaration submitted

5  in support of Plaintiffs' first fee and expense application (ECF. No. 4055-1).

6  **B.    The Complaint Against the Mitsubishi Electric and Thomson Defendants**

7  21.    At the beginning of this litigation, evidence of the participation of the Mitsubishi

8  Electric and Thomson Defendants in the alleged conspiracy was not as clear as that regarding the

9  other defendants. Plaintiffs executed tolling agreements with the Mitsubishi Electric and Thomson

10  Defendants. As discovery progressed, evidence linking the Mitsubishi Electric and Thomson

11  Defendants to the conspiracy came to light and, accordingly, DPPs filed a complaint against both

12  on May 5, 2014. Case No. 14-CV-2058-JST, ECF No. 1. Plaintiffs filed their first amended

13  complaint on May 20, 2014 (Case No. 14-CV-2058-JST, ECF Nos. 14-3, 34). Plaintiffs filed their

14  second amended complaint on August 6, 2015 (ECF Nos. 3957-4, 4007).

15  **C.    Discovery**

16  22.    Plaintiffs propounded an initial set of interrogatories and sets of requests for

17  production of documents to the Mitsubishi Electric and Thomson Defendants, followed by five

18  additional sets of interrogatories, four sets of requests for production of documents, and three sets

19  of requests for admission to the Mitsubishi Electric Defendants.

20  23.    Plaintiffs also responded to discovery propounded by the Mitsubishi Electric

21  Defendants, including four sets of interrogatories; three sets of requests for production of

22  documents; and one set of requests for admission.

23  24.    Plaintiffs met and conferred with Mitsubishi Electric's counsel with respect to many

24  of these discovery requests, many of which resulted in motion practice before the Special Master.

25  25.    Plaintiffs also reviewed and analyzed discovery responses to DAPs and IPPs as well

26  as discovery responses and documents produced earlier in the case.

27  26.    In cooperation with IPPs and DAPs, Plaintiffs noticed or participated in over two

28  dozen additional depositions of Mitsubishi Electric and Thomson employees. The depositions

1    involved substantial review of relevant documents as well as negotiation with defense counsel.

2        27.    In addition, DPPs prepared for and defended the depositions of each of the eight

3    class representatives.

4        **D.    Motion Practice**

5        28.    Plaintiffs engaged in substantial motion practice in connection with their case

6    against the Mitsubishi Electric and Thomson Defendants.

7                **1.    Motions for Class Certification and Class Notification**

8        29.    On November 7, 2014, Plaintiffs filed a motion for class certification against the

9    Mitsubishi Electric and Thomson Defendants. ECF No. 2969. The motion was based on the

10   previous motion filed against the Hitachi and Samsung SDI defendants, but required substantial

11   additional work, including updating the declaration of Plaintiffs' expert economist. Plaintiffs also

12   filed a reply brief in support of the motion. ECF No. 3820.

13               **2.    Motions to Compel Discovery**

14       30.    On December 18, 2014, Plaintiffs moved to compel the Mitsubishi Electric

15   Defendants to supplement their answers to certain important discovery requests regarding

16   competitor meetings and transactional data. On April 28, 2015, Judge Walker granted the motion

17   and ordered the Mitsubishi Electric Defendants to supplement their responses. *In re Cathode Ray*

18   *Tube (CRT) Antitrust Litig.*, No. 14-CV-2058-SC, 2015 WL 12942495, at *4 (N.D. Cal. Apr. 28,

19   2015).

20       31.    On January 30, 2015, Plaintiffs moved to compel the Mitsubishi Electric Defendants

21   to produce a witness for a resumed deposition and related documents. On May 28, 2015, Judge

22   Walker ordered a Mitsubishi Electric employee, Koji Murata, to appear for further examination

23   regarding various matters including the documents used to refresh his recollection, and his search

24   for documents. Judge Walker also ordered the production of documents used to refresh Mr.

25   Murata's recollection as well as information about the Mitsubishi Electric Defendants' efforts to

26   search for and preserve responsive documents. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No.

27   14-CV-2058-SC, 2015 WL 12942210, at *5 (N.D. Cal. May 29, 2015).

28

32.     On June 2, 2015, in relation to their first motion to compel, Plaintiffs moved to further compel the Mitsubishi Electric Defendants to produce two previous witnesses to testify regarding their supplemental discovery responses. On June 12, 2015, Judge Walker ordered the Mitsubishi Electric Defendants to produce Mr. Murata again for examination regarding their supplemental discovery responses. ECF No. 3873. The Mitsubishi Electric Defendants subsequently agreed to resume the deposition of the other witness, Masahiko Konishi.

33.     On June 8, 2016, Plaintiffs moved to compel the Mitsubishi Electric Defendants to provide a full and complete privilege log. The motion was fully briefed and pending when the parties reached settlement.

34.     On July 26, 2016, Plaintiffs moved to quash the Mitsubishi Electric Defendants' Notice of Deposition Upon Written Question of a Chunghwa employee who had been previously examined under Rule 30 of the Federal Rules of Civil Procedure. The motion was fully briefed and pending when the parties reached settlement.

35.     On July 27, 2016, Plaintiffs moved to compel the Mitsubishi Electric Defendants to provided supplemental responses to requests for admission. The motion was fully briefed and pending when the parties reached settlement.

### 3.     Motion for Evidentiary Sanctions

36.     On December 4, 2015, Plaintiffs filed a motion for evidentiary sanctions against the Mitsubishi Electric Defendants based on their continuing failure to fulfill their discovery obligations. In addition to a reply brief, on June 30, 2016, Plaintiffs filed a supplemental brief detailing additional relevant developments. Plaintiffs also sought to compel further responses to interrogatories and document requests regarding the Mitsubishi Electric Defendants' contacts with other alleged conspirators, sales of CRTs and finished products, and destruction of evidence.

37.     On August 29, 2016, Judge Walker issued a report recommending that the Court grant Plaintiffs' motion. Judge Walker recommended that evidentiary sanctions be imposed against the Mitsubishi Electric Defendants because of their "willful" failure to respond to DPPs' discovery requests and violations of previous discovery orders. ECF Nos. 4802, 4810. In particular, Judge Walker recommended that an interrogatory response by Defendant Samsung SDI identifying

"Mitsubishi" as a co-conspirator be deemed admitted despite the hearsay objection of the Mitsubishi Electric Defendants. *Id.* at 38–40.

38.     On September 24, 2016, the Mitsubishi Electric Defendants filed a motion asking the Court to reject the Special Master's Report and Recommendation. ECF No. 4877. The parties settled before the motion was resolved.

## E.     Trial Preparation

39.     By the time of the final settlement with the Mitsubishi Electric Defendants, the Court had set a trial schedule, and Plaintiffs had undertaken substantial preparations for trial. ECF No. 4628 (trial schedule). Among other things, Plaintiffs had completed and served four expert reports:

- Expert Report of Dr. Stephan Haggard (Sept. 1, 2016) relating to Samsung SDI's membership in and control by the Samsung *chaebol*;

- Expert Report of Joseph P. Russoniello (Sept. 1, 2016) disputing the contention that the DOJ's failure to indict indicated that the Mitsubishi Electric Defendants were not a member of the alleged conspiracy;

- Expert Report of Leslie M. Marx, Ph.D (Sept. 1, 2016) explaining that the conduct of Mitsubishi Electric was consistent with participation in the alleged conspiracy and inconsistent with that of a rational competitor; and

- Expert Report of Jeffrey J. Leitzinger, Ph.D (Sept. 1, 2016) explaining his damage study indicating $876 million in single damages, as well as explaining the nature of the CRT market and aspects of Mitsubishi Electric's business, among other things.

The Marx and Leitzinger reports, in particular, required large amounts of work by class counsel, including the identification and analysis of evidence.

40.     Plaintiffs also participated in all aspects of the ongoing and extensive multi-party document translation dispute resolution mechanism before Judge Walker. *See* ECF Nos. 4597, 4625, 4657.

41.     Plaintiffs had also begun to identify and organize their trial evidence, including analysis to ensure that it could be authenticated and admitted at trial.

## F.     Settlements and Notice

42.     Plaintiffs have also spent substantial time negotiating, documenting, obtaining Court

9

approval and providing class notice regarding the Mitsubishi Electric and Thomson settlements. Ultimately, DPPs reached settlements with all of the defendants who appeared in the action. S&S took the lead with regard to settlement negotiations. S&S attorneys participated in every negotiation, attended every mediation session, and were generally the primary authors of every mediation statement. S&S attorneys were also responsible for the motions for preliminary and final approval, class notice, and other matters necessary to obtain court approval of the settlements.

43.     The Thomson settlement was reached on February 6, 2015, following thorough and contentious face-to-face negotiations as well as numerous telephone and email discussions. *See* ECF No. 3562-1 ¶ 24. Thereafter, Plaintiffs filed motions for preliminary and final approval, *see* ECF Nos. 3562, 4091, and provided notice to the class as ordered by the Court. *See* ECF No. 4017 ¶¶ 4–5, 6, 8; ECF No. 4020 ¶¶ 4–5, 6, 8. The Court preliminarily approved the Thomson settlement on June 12, 2015, ECF No. 3872, and finally approved it on December 17, 2015. ECF No. 4260.

44.     The settlement with the Thomson Defendants was reasonable in light of their poor financial condition, and the possibility that they could reenter bankruptcy proceedings in France.

45.     The Mitsubishi Electric settlement followed years of negotiations, including two mediations before Magistrate Judge Jacqueline Scott Corley. The settlement was reached on September 30, 2016, after the second mediation and subsequent discussions through Judge Corley. The parties also had numerous unmediated settlement communications, including face-to-face meetings.

46.     Plaintiffs filed a motion for preliminary approval of the Mitsubishi Electric settlement which the Court granted. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058-JST, 2017 WL 565003 (N.D. Cal. Feb. 13, 2017). Plaintiffs have provided notice of this settlement as directed by the Court. *See* ECF No. 5126 ¶¶ 5–6, 8–9, 11. Plaintiffs will file a brief in support of final approval.

## IV.     INCENTIVE AWARDS TO CLASS REPRESENTATIVES

47.     DPPs seek an award of $15,000 for each of the eight class plaintiffs named in the Second Amended DPPs' Class Action Complaint Against Mitsubishi and Thomson Consolidated Amended Complaint ("SAC"): (1) Crago, d/b/a Dash Computers, Inc.; (2) Arch Electronics, Inc.;

10

(3) Meijer, Inc. and Meijer Distribution, Inc.; (4) Nathan Muchnick, Inc.; (5) Princeton Display Technologies, Inc.; (6) Radio & TV Equipment, Inc.; (7) Studio Spectrum, Inc.; and (8) Wettstein and Sons, Inc. d/b/a Wettstein's (collectively the "Class Representatives"). Each of the eight Class Representatives spent a significant amount of time and effort litigating this case for over three years for the benefit of the class.

48.     The Class Representatives devoted substantial amounts of time and resources to assisting in the prosecution of the case. Their help was essential to its success. None of the Class Representatives conditioned, or were asked to condition, their participation in this case upon receiving an incentive award. None of the Class Representatives conditioned, or were asked to condition, their approval of any of the settlements upon the promise or expectation that they would receive any benefit greater than the rest of the class members.

49.     Each Class Representative spent time reviewing and responding to 3 sets of document requests containing a total of 36 separate document requests. Each Class Representative participated in the search for additional responsive hard copy documents and identification of ESI sources likely to contain responsive data.

50.     Each Class Representative was required to review, respond to and supplement 5 sets of interrogatories totaling 58 separate interrogatories, requiring sworn verifications for each set of initial and supplemental responses.

51.     The Class Representatives kept abreast of the major filings in the case, including reviewing briefs and pleadings, and consulting with class counsel regarding litigation strategy, settlement negotiations, and other matters.

52.     Each of the Class Representatives spent a significant amount of time preparing for the second round of depositions and being deposed, including: travel to and from the deposition; preparatory meetings with counsel; sitting for resumed depositions; and reviewing and correcting deposition transcripts.

53.     The total additional requested incentive payments to all Class Representatives as requested would equal $120,000, or approximately 0.0142%, of the $84,750,000 settlement funds in this case. The total incentive payments to all Class Representatives as requested plus the

previous payments of $250,000 would equal $370,000, or approximately 0.174%, of the total $212,200,000 settlement funds in this litigation.

## V.     ADDITIONAL INFORMATION

54.     The settlement fund confers a substantial and immediate benefit to class members, and represents an excellent recovery, especially in light of the many risks involved in the action. The total recovery for the class represents approximately 24.2% of the single damages estimated by Plaintiffs' damages expert, Jeffrey J. Leitzinger, Ph.D. In his report, Dr. Leitzinger estimated that class members suffered total single damages of $876 million.

55.     It is my understanding, based on the evidence and expert analysis in the case that the Mitsubishi Electric Defendants' CDT market share was usually less than 3% and always less than 5% during the class period; they manufactured CPTs only for the first four years of the alleged conspiracy, stopping in 1998.

56.     In the *LCD* trial, the direct purchaser plaintiffs—for whom I served as counsel—asked for $870 million; the jury awarded $87 million.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 30th day of March, 2017 at San Francisco, California.

_____*/s/ R. Alexander Saveri*_____
R. Alexander Saveri

# EXHIBIT A

# SAVERI & SAVERI, INC.

706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*SAVERI & SAVERI, INC.*, an AV-rated law firm, was established in 1959.The firm engages in Antitrust and Securities litigation, Product Defect cases, and in general civil and trial practice. For over fifty years the firm has specialized in complex, multidistrict, and class action litigation.

---

## *PARTNERS*

*GUIDO SAVERI*, born San Francisco, California, June 10, 1925; admitted to bar, 1951, California. *Education:* University of San Francisco (B.S., *summa cum laude*, 1947; LL.B., *summa cum laude*, 1950). *Member:* Bar Association of San Francisco; State Bar of California; American Bar Association (Member, Antitrust Section); Lawyers Club of San Francisco.

Mr. Saveri is a senior partner in the firm of Saveri & Saveri, Inc. He started the firm in 1959 and associated with Joseph L. Alioto, Esq., San Francisco, California, in the practice of antitrust and other corporate litigation. After law school in 1951 and up until the forming of his firm in 1959 he was associated with the law firm of Pillsbury, Madison & Sutro, San Francisco, California.

He has the highest rating in Martindale Hubbell, namely, "AV."

Mr. Saveri has testified before the Federal Judiciary Committee on antitrust matters and has lectured on antitrust matters before The Association of Trial Lawyers of America, the Federal Practice Institute, and other lawyer associations. Mr. Saveri has also written various periodicals on antitrust topics. Mr. Saveri was named the 2007 Antitrust Lawyer of the Year by the State Bar of California's Antitrust and Unfair Competition Law Section.

From the time he started his firm in 1959, Mr. Saveri has devoted practically all of his time to antitrust and other corporate and complex litigation. He has actively participated in antitrust cases involving the electronics industry, electrical industry, the water meter industry, scrap metal industry, liquid asphalt industry, dairy products industry, typewriter industry, vanadium industry, pipe-fitting industry, grocery business, liquor industry, movie industry, animal-raising business, chemical industry, snack food industry, paper label industry, chrysanthemum industry, drug industry, sugar industry, records industry, industrial gas industry, wheelchair industry, rope industry, copper tubing industry, folding cartons industry, ocean shipping industry, pancreas gland industry, corrugated container industry, glass container industry, fine paper industry, food additives industry, prescription drugs industry, medical x-ray film industry, computer chips and many others.

*RICHARD SAVERI,* Partner, 1951–1999.

*R. ALEXANDER SAVERI*, born San Francisco, California, July 22, 1965; admitted to bar, 1994, California and U.S. District Court, Northern District of California; 1995, U.S. Court of Appeals, Ninth Circuit; 2000, U.S. District Court, Southern District of California and U.S. District Court, Central District of California; 2012, U.S. Court of Appeals, Third Circuit. *Education:* University of Texas at Austin (B.B.A., Finance 1990); University of San Francisco School of Law (J.D., 1994), University of San Francisco Maritime Law Journal 1993–1994. *Member:* State Bar of California; American Bar Association (Member, Antitrust Section); Association of Trial Lawyers of America; University of San Francisco Inn of Court; National Italian American Bar Association; University of San Francisco Board of Governors (2003–2006); Legal Aid Society (Board of Directors).

Mr. Saveri is the managing partner of Saveri & Saveri, Inc. After graduating from law school, he began working for his father and uncle at Saveri & Saveri, P.C. on antitrust and complex litigation. The current practice of Saveri & Saveri, Inc. emphasizes class action antitrust litigation.

He has the highest rating in Martindale Hubbell, namely, "AV."

*LISA SAVERI*, born San Francisco, California, April 10, 1956; admitted to bar, 1983, California and U.S. District Court, Northern District of California; 1987, U.S. District Court, Eastern District of California; 2002, U.S. Court of Appeals, Ninth Circuit, U.S. District Court, Central District of California and U.S.  District Court, Southern District of California. *Education:* Stanford University (A.B. Economics, 1978); University of San Francisco School of Law (J.D., 1983), University of San Francisco Law Review. *Member*: State Bar of California. *Experience*: Legal Extern, Hon. Eugene F. Lynch, Judge, U. S. District Court, Northern District of California (1982); Associate, Pillsbury Madison & Sutro (1983–1992); San Francisco Public Defender's Office (Summer 1989). *Publications*: G. Saveri & L. Saveri, Pleading Fraudulent Concealment In An Antitrust Price Fixing Case: Rule 9(b) v. Rule 8, 17 U.S.F. L. Rev. 631 (1983); L. Saveri, Implications of the Class Action Fairness Act for Antitrust Cases: From Filing Through Trial, 15 No. 1, *Competition: J. of the Antitrust and Unfair Competition Law Section of the State Bar of California* 23 (2006); L. Saveri & Co-Author, Does the Cartwright Act Have A Future?, 17 No. 2, *Competition: J. of the Antitrust and Unfair Competition Law Section of the State Bar of California* 31 (2008); L. Saveri & Co-Authors, Chapter 21: Class Actions in Competition and Consumer Protections Cases in *California State Antitrust and Unfair Competition Law* 773-822 (Cheryl Lee Johnson, ed., Matthew Bender & Co., 2009) and 2010 update; L. Saveri & Co-Authors, Chapter 22: Indirect Purchaser Actions in *California State Antitrust and Unfair Competition Law* (Cheryl Lee Johnson, ed., Matthew Bender & Co., Supp. 2010); LexisNexis Corporate & Securities Law Community Podcast, *Class Actions in Competition and Consumer Protection Cases* (Recorded Sept. 21, 2010). *Professional Affiliations:* U. S. District Court, Northern District of California, Special Master, Standing Committee on Professional Conduct (appointment)(2008–2011); State Bar of California, Antitrust and Unfair Competition Law Section, Executive Committee, Member (appointment)(2005–2010), Secretary (2007–2009), First Vice-Chair (2009–2010), Advisory Committee (2010– present).

**CADIO ZIRPOLI**, born Washington D.C., September 1, 1967; admitted to bar, 1995, California and U.S. District Court, Northern District of California; 2015, U.S. Court of Appeals, Ninth Circuit. *Education:* University of California, Berkeley (B.A., 1989); University of San Francisco School of Law (J.D., *cum laude*, 1995). *Experience*: Assistant District Attorney, City and County of San Francisco 1996–2000. *Member*: State Bar of California.

Mr. Zirpoli has an AV Preeminent Peer Review Rating on Martindale-Hubbell, and has been named a "Super Lawyer for Northern California" in 2010, 2014, 2015 and 2016.

––––––––––––––––––––––––

### OF COUNSEL

**GEOFFREY C. RUSHING,** born San Jose, California, May 21, 1960; admitted to bar, 1986, California and U.S. District Court, Northern District of California. *Education*: University of California, Berkeley (A.B. with honors, 1982); University of California, Berkeley, Boalt Hall (J.D., 1986). *Member*: State Bar of California.

––––––––––––––––––––––––

### ASSOCIATES

**MATTHEW D. HEAPHY**, born Hartford, Connecticut, December 4, 1974, admitted to bar, 2003, California and U.S. District Court, Northern District of California. *Education*: Wesleyan University (B.A., 1997); University of San Francisco School of Law (J.D., *cum laude*, 2003); University of San Francisco Law Review; International & Comparative Law Certificate, with Honors. *Publications*: Comment: The Intricacies of Commercial Arbitration in the United States and Brazil: A Comparison of Two National Arbitration Statutes, 37 U.S.F. L. Rev. 441 (2003); M. Heaphy & Co-Author, Does the United States Really Prosecute its Servicemembers for War Crimes? Implications for Complementarity Before the ICC, 21 Leiden J. Int'l L. 165 (March 2008); M. Heaphy, The United States and the 2010 Review Conference of the Rome Statute of the ICC, 81 Int'l Rev. Penal L. 77 (2010). *Member*: State Bar of California. *Languages*: French, Italian.

**MELISSA SHAPIRO**, born Los Angeles, California, May 27, 1980, admitted to bar, 2006, California and U.S. District Court, Northern and Central Districts of California. *Education*: University of Southern California (B.A., 2002); Pepperdine University School of Law (J.D., 2005), Pepperdine Law Review, *Publication*: Comment, Is Silica the Next Asbestos? An Analysis of the Sudden Resurgence of Silica Lawsuit Filings, 32 Pepp. L. Rev. 983 (2005).

**DAVID HWU**, born Stanford, California, November 20, 1985; admitted to bar, 2012, California and U.S. District Court, Northern District of California. *Education:* University of California, Berkeley (B.A., 2008). University of San Francisco School of Law (J.D., 2011). *Member*: State Bar of California. *Languages*: Chinese, Japanese.

**SARAH VAN CULIN**, born London, England, September 2, 1985, admitted to bar, 2013, California; 2015, U.S. District Court, Northern District of California. *Education*: University of Nottingham (B.A., English, 2007); University of San Francisco School of Law (J.D., *cum laude*, 2013); Editor in Chief, University of San Francisco Law Review; Business Law Certificate, with Honors. *Member*: State Bar of California, Antitrust, UCL and Privacy Section; American Bar Association, Section of Antitrust Law; Bar Association of San Francisco, Antitrust and Business Regulation Section.

---

## FORMER ASSOCIATES

**TRAVIS L. MANFREDI,** born Fresno, California, March 16, 1980, admitted to bar January 2012, California and U.S. District Court, Northern District of California. *Education*: University of California, Santa Cruz (B.A. 2004); University of San Francisco School of Law (J.D., *cum laude*, 2011): University of San Francisco Law Review Managing Editor, Vol. 45; Member of National Appellate Advocacy Competition team; Research assistant to Professor J. Thomas McCarthy, author of *McCarthy on Trademarks and Unfair Competition. Publications: Survey*, In re Spirits Int'l, N.V., 563 F.3d 1347 (Fed. Cir. 2009), 14 Intell. Prop. L. Bull. 71 (2009); Note, *Sans Protection: Typeface Design and Copyright in the Twenty-First Century*, 45 U.S.F. L. Rev. 841 (2011). *Member*: State Bar of California.

**CARL N. HAMMARSKJOLD,** born Detroit, Michigan, August 20, 1967; admitted to bar, 2011, California, and U.S. District Court, Northern District of California; 2013, U.S. Court of Appeals, Ninth Circuit. *Education*: Pomona College (B.A., 1989); University of San Francisco School of Law (J.D., *summa cum laude*, 2011); Academic Excellence Award; John L. Brennan Award for Creativity and Innovation in Advocacy; Law Review Best Student Note Award; University of San Francisco Law Review (2009–2011); Executive Director, Moot Court Board of Directors (2010–2011); Judicial Extern to the Hon. William Alsup, Judge, U. S. District Court, Northern District of California (2010). *Publication*: Comment, Smokes, Candy, and the Bloody Sword: How Classifying Jailhouse Snitch Testimony as Direct, Rather than Circumstantial, Evidence Contributes to Wrongful Convictions, 45 U.S.F. L. Rev. 1103 (2011). *Member*: State Bar of California.

---

## LEGAL ASSISTANTS

**JAE HYUN LIM**, (Paralegal) born Incheon, South Korea, July 9, 1988. *Education*: University of California, Berkeley (B.A., 2011), Team Waffle Intern Research Analyst (2011). *Language*: Korean.

**SHANNON EASTERLY**, (Paralegal) born Elko, Nevada, February 27, 1986. *Education*: California State University, Northridge (B.A., 2009).

## The Saveri Firm Has Held Leadership Positions or Served or is Serving as Court-Appointed Lead, Co-Lead or Liaison Counsel in the Following Cases

The following are some of the class actions in which Mr. Guido Saveri actively participated:

*Nisley v. Union Carbide and Carbon Corp.*, 300 F. 2d 561 (10th Cir. 1960), and *Continental Ore. Co. v. Union Carbide and Carbon Corp.*, 370 U.S. 690 (1962). In 1960, Mr. Saveri was one of the trial attorneys in the above cases which are the forerunners of present class action litigation and are responsible not only for Rule 23 as it exists today but also for some of the more important rulings in the field of antitrust law. The *Nisley* case was a class action tried before a jury both on liability and damages and resulted in a verdict for the named plaintiffs and the entire class. It is considered one of the leading cases on class actions, is often referred to as a model for the trial of class actions, and has been followed in those antitrust class action cases which have gone to trial.

*Sacramento Municipal Utility District v. Westinghouse Elec. Corp.*, 1962 Trade Case. ¶ 70,552 (N.D. Cal. 1962). Mr. Saveri was one of the principal attorneys in several cases which have come to be known as the *Electrical Equipment* cases. In 1961–1965, Mr. Saveri represented such clients as the State of Washington, Sacramento Municipal Utility District and Modesto Irrigation District. Mr. Saveri was one of the attorneys who tried several of these cases and did very extensive work under a coordinated program instituted by the Murrah Committee under the direction of the then Chief Justice of the United States. This Committee later became the Judicial Panel for Multi-District Litigation. As a result of his experience in these cases, he participated in drafting proposed legislation creating the Panel on Multi-District Litigation.

*Nurserymen's Exchange v. Yoda Brothers, Inc.*, before Judge George R. Harris in San Francisco. Mr. Saveri was the sole attorney for a class of 10,000 chrysanthemum growers. This case was settled for substantial sums.

*City of San Diego v. Rockwell Manufacturing Co.*, before Judge George H. Boldt of San Francisco. Mr. Saveri was Liaison and Lead Counsel in the above case involving water meters. This case was settled for substantial sums.

*In re Private Civil Treble Damage Actions Against Certain Snack Food Companies*, Civil No. 70-2121-R, in the United States District Court, Central District of California. Mr. Saveri was the lead attorney for the retail grocers' class comprised of all retail grocers in the states of California, Nevada, and Arizona certified by Judge Real involving the snack food industry. The case was settled for substantial sums.

*In re Sugar Antitrust Litigation*, MDL No. 201, in the United States District Court for the Northern District of California, before Judges Boldt and Cahn. Mr. Saveri was the lead attorney for the retail grocer classes in the Western Sugar litigation. In this litigation, he was a member of the Executive Committee, Steering Committee and Settlement Committee. This case settled for more than $35,000,000.

*Sun Garden Packing Co. v. International Paper Co., et al.*, C-72-52, United States District Court in San Francisco. In 1972 Mr. Saveri filed the first price fixing class action against the paper industry. He was the sole attorney representing all purchasers of lithograph paper labels in the United States. The lithograph paper labels case was settled at a substantial figure.

The lithograph paper labels case was responsible for subsequent government indictments in lithograph paper labels, folding cartons, small paper bags, and corrugated containers.

*In re Folding Carton Antitrust Litigation*, MDL No. 250, Eastern District of Illinois, Judges Will and Robson. Mr. Saveri was a member of the Executive Committee, Vice Chairman of Discovery and a member of the Trial Team in this action involving a horizontal conspiracy to fix prices for folding cartons. The case was settled for more than $200,000,000.

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* MDL No. 10, 4-72 Civ 435; Judge Lord, United States District Court, District of Minnesota, Fourth Division. Mr. Saveri was the attorney for the institutional class and consumer class for the States of Utah and Hawaii. These actions were settled for substantial sums.

*Building Service Union Health & Welfare Trust Fund v. Chas. Pfizer & Co.*, No. 4-71 Civ. 435; No. 4-71 Civ. 413, before Judge Lord in Minneapolis, Minnesota. Mr. Saveri was the sole attorney for a class of 9,000 health and welfare trust funds in the United States in this antitrust action against the drug companies. In 1974–1975 this class action went to trial before two juries at the same time and in the same court on liability and damages for the entire class and lasted ten months. It was settled for a substantial sum. Mr. Saveri was the sole attorney representing the plaintiff health and welfare trust fund class at trial.

*In re Corrugated Container Antitrust Litigation*, MDL No. 310, Southern District of Texas. Horizontal price fixing action. The case was settled for more than $400,000,000.

*In re Fine Paper Antitrust Litigation*, MDL No. 325, Eastern District of Pennsylvania. Mr. Saveri was a member of the Executive Committee and the trial team. The case was settled for approximately $80,000,000.

*In re Ocean Shipping Antitrust Litigation*, MDL No. 395, Southern District of New York. Mr. Saveri was a member of the Steering Committee and the Negotiating Committee. The firm understands this case was the first class action settlement involving claims by foreign companies. Mr. Saveri was appointed an officer of the New York Federal District Court to audit foreign claims in Europe. The case was settled for approximately $79,000,000.

*In re Corn Derivatives Antitrust Litigation*, MDL No. 414, United States District Court for the District of New Jersey. Mr. Saveri was Chairman of the Steering Committee and Executive Committee.

*In re Coconut Oil Antitrust Litigation*, MDL No. 474, Northern District of California. Mr. Saveri was Co-Lead Counsel.

*In re Intel Securities Litigation*, No.C-79-2168A, Northern District of California, Judge Aguilar. Mr. Saveri was a member of the Steering Committee.

*O'Neill Meat Co. v. Eli Lilly and Co.*, No. 30 C 5093, United States District Court for the Northern District of Illinois, Judge Holderman. Mr. Saveri was Co-Lead Counsel for the class in this antitrust litigation involving pancreas glands.

*United National Records, Inc. v. MCA, Inc.*, No.82 C 7589, United States District Court for the Northern District of Illinois; Mr. Saveri was a member of the Steering Committee in this records antitrust litigation. The class recovered $26,000,000 in cash and assignable purchase certificates.

***In re Industrial Gas Antitrust Litigation***, No. 80 C 3479, United States District Court for the Northern District of Illinois. Mr. Saveri was a member of the Steering Committee. The class recovered more than $50,000,000.

***Superior Beverages, Inc. v. Owens-Illinois***, No. 83-C512, United States District Court for the Northern District of Illinois; Mr. Saveri was a member of the Executive Committee in this antitrust litigation involving the price fixing of glass containers. The class recovered in excess of $70,000,000 in cash and coupons.

***In re Washington Public Power Supply Securities Litigation***, MDL No. 551, (W.D. Wash.).Mr. Saveri was one of the court appointed attorneys for the class.

***In re Ask Computer Systems Securities Litigation***, No. C-85-20207 (A) RPA, United States District Court for the Northern District of California. Mr. Saveri was Co-Lead Counsel for the class.

***Big D. Building Corp. v. Gordon W. Wattles.***, MDL No. 652, United States District Court for the Middle District of Pennsylvania. Mr. Saveri was a member of the Steering Committee and Settlement Committee in this price fixing class action involving the rope industry.

***In re Insurance Antitrust Litigation***, MDL No. 767, Judge Schwarzer, United States District Court for the Northern District of California. Mr. Saveri was Administrative Liaison Counsel and a member of the Steering Committee.

***In re Sun Microsystems Securities Litigation***, No. C-89-20351 RMW, United States. District Court for the Northern District of California; Mr. Saveri was Co-Lead Counsel.

***In re Infant Formula Antitrust Litigation***, MDL No. 878, United States District Court for the Northern District of Florida, Tallahassee Division. Mr. Saveri was one of the principal attorneys. The case was settled for $125,760,000.

***In re Carbon Dioxide Industry Antitrust Litigation***, MDL No. 878, Case No. 92-940 PHB, United States District Court for the Middle District of Florida, Orlando Division. Mr. Saveri was a member of the Steering Committee. The class recovered $53,000,000 and achieved significant therapeutic relief for the class.

***In re Medical X-Ray Film Antitrust Litigation***, No.CV 93-5904, FB, United States District Court for the Eastern District of New York. Mr. Saveri was a member of the Steering Committee.

***In re Baby Food Antitrust Litigation***, No. 92-5495 NHP, in the United States District Court for the District of New Jersey. Mr. Saveri was a member of the Steering Committee.

***In re Brand Name Prescription Drugs Antitrust Litigation***, MDL No. 997, Case No. 94–C-897 CPK, United States District Court, Northern District of Illinois, Eastern Division. Mr. Saveri was Co-Lead Counsel on behalf of approximately 50,000 retail pharmacies nationwide alleging an illegal cartel between seventeen drug manufacturers and six drug wholesalers in preventing discounts to retail pharmacies. The case was tried for eight weeks. The case was settled for $700,000,000 in cash and $25,000,000 in product. Mr. Saveri was one of four lead trial lawyers.

*In re Citric Acid Antitrust litigation*, MDL No. 1092, C-95-2963 FMS, United States District Court, Northern District of California. Mr. Saveri was Co-Lead Counsel representing a certified class of purchasers of citric acid throughout the United States against the citric acid manufacturers for violations of the Sherman Act for fixing the price of citric acid in the United States and around the world. The case was settled for $86,000,000.

*In re Methionine Antitrust Litigation*, MDL No. 1311 CRB, United States District Court, Northern District of California. A nationwide class action on behalf of direct purchasers of methionine alleging price-fixing. Saveri & Saveri, Inc. served as Co-Lead Counsel in this litigation. The case was settled for $107,000,000.

*In re Managed Care Litigation*, MDL No. 1334, Master File No. 00-1334-MD (Judge Moreno), United States District Court, Southern District of Florida. The Saveri Firm served as a member of the Executive Committee representing the California Medical Association, Texas Medical Association, Georgia Medical Association and other doctors against the nation's HMOs for violations of the Federal RICO Act. The case was settled with benefits approximating $1 billion dollars.

*In re Dynamic Random Access Memory Antitrust Litigation*, MDL No. 1486 (Judge Hamilton), United States District Court, Northern District of California. Mr. Saveri served as Co-Lead Counsel on behalf of direct purchasers of dynamic random access memory (DRAM) alleging a nationwide class for price-fixing. The case settled for more than $325 million in cash.

*In re Flash Memory Antitrust Litigation*, No. C 07-0086 SBA (Judge Armstrong), United States District Court, Northern District of California. Mr. Saveri served as Co-Lead Counsel on behalf of direct purchasers of flash memory (Flash) alleging a nationwide class for price-fixing.

*In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917, Case No. C 07-5944 SC (Judge Conti) United States District Court, Northern District of California. Mr. Saveri serves as Lead Counsel on behalf of direct purchasers of cathode ray tubes (CRTs) alleging a nationwide class for price-fixing.

*In re Optical Disk Drive (ODD) Products Antitrust Litigation*, MDL No. 2143, 10-md-02143-RS (Judge Seeborg), United States District Court, Northern District of California. Mr. Saveri served as Chair of the Committee of Direct Purchaser Plaintiffs' Counsel on behalf of direct purchasers of optical disk drives (ODDs) alleging a nationwide class for price-fixing.

Mr. R. Alexander Saveri has served or is serving as court-appointed Co-Lead or Liaison Counsel in the following cases:

*In re Lithium Ion Batteries Antitrust Litigation*, Master Docket No. 4:13-md-2420-YGR, United States District Court, Northern District of California. Mr. Saveri serves as one of three Co-Lead counsel in an antitrust class action on behalf of direct purchasers of lithium ion batteries.

*In re California Title Insurance Antitrust Litigation*, Case No. 08-01341 JSW, United States District Court, Northern District of California (antitrust class action involving federal antitrust laws and California statutory law for unlawful practices concerning payments for title insurance in California).

*In re Intel Corp. Microprocessor Antitrust Litigation*, MDL No. 05-1717 (JJF) United States District Court, District of Delaware (antitrust class action on behalf of all consumers in the United States that indirectly purchased Intel x86 microprocessors).

*In re Vitamin C Antitrust Litigation*, MDL No. 06-1738 (DTG)(JO), United States District Court, Eastern District Of New York (antitrust class action on behalf of all California indirect purchasers of vitamin C).

*In re: TelexFree Securities Litigation*, MDL 2566.  Mr. Saveri is a member of the Plaintiffs' Interim Executive Committee in a class action on behalf of victims of the TelexFree pyramid scheme.

*In re Polychloroprene Antitrust Cases*, J.C.C.P. No. 4376, Los Angeles Superior Court (antitrust class action on behalf of all California indirect purchasers of polychloroprene rubber).

*In re NBR Cases*, J.C.C.P. No. 4369, San Francisco Superior Court (antitrust class action on behalf of all California indirect purchasers of NBR).

*Carpinelli. v. Boliden AB*, Master File No. CGC-04-435547, San Francisco Superior Court (antitrust class action on behalf of all California indirect purchasers of copper tubing).

*Competition Collision Center, LLC v. Crompton Corporation*, Case No. CGC-04-431278, San Francisco Superior Court (antitrust class action on behalf of all California indirect purchasers of plastic additives).

*In re Urethane Cases*, J.C.C.P. No. 4367, San Francisco Superior Court (antitrust class action on behalf of all California indirect purchasers of urethane and urethane chemicals).

*The Harman Press v. International Paper Co.*, (Consolidated Cases) Master File No. CGC-04-432167, San Francisco Superior Court (antitrust class action on behalf of all California indirect purchasers of publication paper).

*In re Label Stock Cases*, J.C.C.P. No. 4314, San Francisco Superior Court (antitrust class action on behalf of all California indirect purchasers of high pressure label stock).

*Richard Villa v. Crompton Corporation*, Consolidated Case No. CGC-03-419116, San Francisco Superior Court (antitrust class action on behalf of California indirect purchasers of EPDM).

*Russell Reidel v. Norfalco LLC*, Consolidated Case No. CGC-03-418080, San Francisco Superior Court (antitrust class action on behalf of California indirect purchasers of sulfuric acid).

*Smokeless Tobacco Cases I–IV*, J.C.C.P. Nos. 4250, 4258, 4259 and 4262, San Francisco Superior Court (certified antitrust class action on behalf of California consumers of smokeless tobacco products).

*Electrical Carbon Products Cases*, J.C.C.P. No. 4294, San Francisco Superior Court (Private Entity Cases) (antitrust class action on behalf of California indirect purchasers of electrical carbon products).

*The Vaccine Cases*, J.C.C.P. No. 4246, Los Angeles Superior Court (medical monitoring class action on behalf of children exposed to mercury laden vaccines).

*In re Laminate Cases*, J.C.C.P. No. 4129, Alameda Superior Court (antitrust class action on behalf of California indirect purchasers of high pressure laminate).

*Compact Disk Cases*, J.C.C.P. No. 4123, Los Angeles Superior Court (antitrust class action on behalf of California consumers of prerecorded compact disks).

*Sorbate Prices Cases*, J.C.C.P. No. 4073, San Francisco Superior Court (antitrust class action on behalf of California indirect purchasers of sorbate).

*In re Flat Glass Cases*, J.C.C.P. No. 4033, San Francisco Superior Court (antitrust class action on behalf of California indirect purchasers of flat glass products).

*Vitamin Cases*, J.C.C.P. No. 4076, San Francisco Superior Court (antitrust class action on behalf of California indirect purchasers of vitamins).

*California Indirect Purchaser MSG Antitrust Cases*, Master File No. 304471, San Francisco Superior Court (antitrust class action on behalf of California indirect purchasers of Monosodium Glutamate).

*In re Aspartame Indirect Purchaser Antitrust Litigation,* Master Docket No. 06-1862-LDD, United States District Court, Eastern District of Pennsylvania (antitrust class action on behalf of California indirect purchasers of aspartame); and

*GM Car Paint Cases*, J.C.C.P. No. 4070, San Francisco Superior Court (class action on behalf of all California owners of General Motors vehicles suffering from paint delamination).

## CLASS ACTION LITIGATION

The following are some additional class action cases in which the firm of Saveri & Saveri, Inc. actively participated as class counsel:

*In re NASDAQ Market-Makers Antitrust Litigation*, MDL No. 1023, United States District Court, Southern District of New York. A nationwide class action on behalf of purchasers of securities on the NASDAQ market alleging a violation of the Sherman Act for fixing the spread between the quoted buy and sell prices for the securities sold on the NASDAQ market.

*In re Potash Antitrust Litigation*, MDL No. 981, United States District Court, District of Minnesota, Third Division. A class action on behalf of all direct purchasers of potash throughout the United States alleging a horizontal price fix.

*In re Airline Ticket Commission Antitrust Litigation*, MDL No. 1058, Untied States District Court, District of Minnesota. A class action alleging that the major airlines conspired to fix travel agents' commission rates.

*Pharmaceutical Cases I, II & III*, J.C.C.P. Nos. 2969, 2971 & 2972, San Francisco Superior Court. A certified class action on behalf of all California consumers against the major drug manufacturers for fixing the price of all brand name prescription drugs sold in California.

*Perish v. Intel Corp.*, Civ. No. 755101, Santa Clara Superior Court. A nationwide class action on behalf of purchasers of Intel Pentium chips alleging consumer fraud and false advertising.

*In re Carpet Antitrust Litigation*, MDL No. 1075, United States District Court, Northern District of Georgia, Rome Division. A nationwide class action on behalf of all direct purchasers of polypropylene carpet alleging a horizontal price fix.

*In re California Indirect-Purchaser Plasticware Antitrust Litigation*, Civ. Nos. 961814, 963201, 963590, San Francisco Superior Court. A class action on behalf of indirect purchasers of plasticware alleging price-fixing.

*In re Worlds of Wonder Securities Litigation*; No.C-87-5491 SC, United States District Court, Northern District of California.

*Pastorelli Food Products, Inc. v. Pillsbury Co., et al.*, No. 87C 20233, United States District Court, Northern District of Illinois.

*Red Eagle Resources Corp., et al. v. Baker Hughes Incorporated, et al.*, No. 91-627 (NWB) (Drill Bits Litigation) United States District Court, Southern District of Texas, Houston Division.

*In re Wirebound Boxes Antitrust Litigation*, MDL No. 793, United States District Court, District of Minnesota, Fourth Division. A nationwide class action on behalf of purchasers of wirebound boxes alleging a horizontal price fix.

*In re Bulk Popcorn Antitrust Litigation*, No. 3-89-710, United States District Court, District of Minnesota, Third Division. A nationwide class action on behalf of direct purchasers of bulk popcorn alleging price-fixing.

*Nancy Wolf v. Toyota Sales, U.S.A. and Related Cases*, No. C 94-1359, MHP, 1997 WL 602445 (N.D. Cal. 1997), United States District Court, Northern District of California. A

*Mark Notz v. Ticketmaster - Southern, and Related Cases*, No. 943327, San Francisco Superior Court. A consumer class action alleging a territorial allocation in violation of the Cartwright Act.

*Neve Brothers v. Potash Corp.*, No. 959867, San Francisco Superior Court. A class action alleging price-fixing on behalf of indirect purchasers of potash in California.

*In re Chrysler Corporation Vehicle Paint Litigation*, MDL No. 1239. Nationwide class action on behalf of owners of delaminating Chrysler vehicles.

*Miller v. General Motors Corp.*, Case No. 98 C 7836, United States District Court, Northern District of Illinois. Nationwide class action alleging a defective paint process which causes automobile paint to peel off when exposed to ordinary sunlight.

## <u>ANTITRUST LITIGATION</u>

The following list outlines some of the antitrust litigation in which the firm of Saveri & Saveri has been involved:

1.  *Union Carbide & Carbon Corp. v. Nisley*, 300 F. 2d 561 (10th Cir. 1960)

2.  *Continental Ore. Co. v. Union Carbide and Carbon Corp.*, 370 U.S. 690 (1962)

3.  *Public Service C. of N.M. v. General Elec. Co.*, 315 F.2d 306 (10th Cir. 1963)

4.  *State of Washington v. General Elec. Co.*, 246 F. Supp. 960 (W.D. Wash. 1965)

5.  *Nurserymen's Exchange v. Yoda Brothers, Inc.*

6.  *Bel Air Markets v. Foremost Dairies Inc.*, 55 F.R.D. 538 (N.D. Cal. 1972)

7.      *In re Western Liquid Asphalt Case*, 487 F.2d 191 (9th Cir. 1973)

8.      *In re Gypsum Cases*, 386 F. Supp. 959 (N.D. Cal. 1974)

9.      *City of San Diego v. Rockwell Manufacturing Co.*

10.    *In re Private Civil Treble Damage Actions Against Certain Snack Food Companies*, Civil No. 70-2121-R

11.    *In re Sugar Antitrust Litigation*, MDL No. 201, 559 F.2d 481 (9th Cir. 1977)

12.    *Sun Garden Packing Co. v. International Paper Co.,* No. C-72-52

13.    *In re Folding Carton Antitrust Litigation*, MDL No. 250

14.    *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, No. 4-72 Civ 435, 410 F. Supp. 706 (D. Minn. 1975)

15.    *Building Service Union Health & Welfare Trust Fund v. Chas. Pfizer & Company*, No. 4-71 Civ. 435; No. 4-71 Civ. 413 (D. Minn.) (Judge Lord)

16.    *In re Fine Paper Antitrust Litigation*, MDL No. 325

17.    *In re Armored Car Antitrust Litigation*, CA No. 78-139A, 472 F. Supp. 1357 (N.D. Ga. 1979)

18.    *In re Ocean Shipping Antitrust Litigation*, MDL No. 395, 500 F. Supp. 1235 (3d Cir. 1984)

19.    *In re Corn Derivatives Antitrust Litigation*, MDL No. 414, 500 F. Supp. 1235 (1980)

20.    *In re Coconut Oil Antitrust Litigation*, MDL No. 474

21.    *Garside v. Everest & Jennings Intern.*, 586 F. Supp. 389 (D.C. Cal. 1984)

22.    *Lorries Travel & Tours, Inc. v. SFO Airporter Inc.*, 753 F.2d 790 (9th Cir. 1985)

23.    *O'Neill Meat Co. v. Eli Lilly and Company*, No. 30 C 5093

24.    *In re Records and Tapes Antitrust Litigation*, No.82 C 7589, 118 F.R.D. 92 (N.D. Ill 1987)

25.    *In re Industrial Gas Antitrust Litigation*, No. 80 C 3479, 100 F.R.D. 280 (N.D. Ill 1987)

26.    *Matter of Superior Beverages/Glass Container Consolidated Pretrial*, No. 83-C512, 137 F.R.D. 119 (N.D. Ill 1990)

27.    *Big D. Building Corp. v. Gordon W. Wattles*, MDL No. 652

28.    *In re Insurance Antitrust Litigation*, MDL No. 767

29.    *In re Wirebound Boxes Antitrust Litigation*, MDL No. 793

30.    *In re Domestic Air Transp. Antitrust Litigation*, MDL No. 861, 144 F.R.D. 421 (N.D. Ga. 1992)

31.    *In re Infant Formula Antitrust Litigation*, MDL No. 878

32.    *Finnegan v. Campeau Corp.*, 915 F.2d 824 (2d Cir. 1990)

33.    *In re Carbon Dioxide Industry Antitrust Litigation*, MDL No. 940, 155 F.R.D. 209

34.    *In re Medical X-Ray Film Antitrust Litigation*, No. CV 93-5904, FB

35.    *In re Bulk Popcorn Antitrust Litigation*, 792 F. Supp. 650 (D. Minn. 1992)

36.    *In re Baby Food Antitrust Litigation*, No. 92-5495, NHP

37.    *In re Potash Antitrust Litigation*, MDL No. 981

38.    *In re Brand Name Prescription Drugs Antitrust Litigation*, MDL No. 997, 94 C 897 (N.D. Ill.) (Judge Kocoras)

39.    *In re Citric Acid Antitrust Litigation*, MDL No. 1092

40.    *In re NASDAQ Market-Makers Antitrust Litigation*, MDL No. 1023

41.    *In re Airline Ticket Commission Antitrust Litigation*, MDL No. 1058

42.    *Pharmaceutical Cases I, II & III*, J.C.C.P. Nos. 2969, 2971 & 2972, San Francisco Superior Court

43.    *In re Carpet Antitrust Litigation*, MDL No. 1075

44.    *In re California Indirect-Purchaser Plastic Ware Antitrust Litigation*, Nos. 961814, 963201, 963590, San Francisco Superior Court

45.    *Pastorelli Food Products, Inc. v. Pillsbury Co.*, No. 87C 20233

46.    *Red Eagle Resources Corp. v. Baker Hughes Inc.*, No. 91-627 (NWB) (Drill Bits Litigation)

47.    *Mark Notz v. Ticketmaster - Southern, and Related Cases*, No. 943327, San Francisco Superior Court

48.    *Neve Brothers. v. Potash Corp.*, No. 959867, San Francisco Superior Court

49.    *Food Additives (Citric Acid) Cases*, J.C.C.P. No. 3625, Master File No. 974-120

50.    *Biljac v. Bank of America*

51.    *Diane Barela v. Ralph's Grocery Co.*, No. BC070061,Los Angeles Superior Court

52.    *Leslie K. Bruce v. Gerber Products Co.*, No. 948-857,San Francisco Superior Court

53.    *In re California Indirect Purchaser Medical X-Ray Film Antitrust Litigation*, Master File No. 960886

54.    *Lee Bright v. Kanzaki Specialty Papers, Inc.*, No. 963-598,San Francisco Superior Court

55.    *Neve Brothers v. Potash Corporation of America*, No. 959-767, San Francisco Superior Court

56.    *Gaehwiler v. Sunrise Carpet Industries Inc.*, No. 978345,San Francisco Superior Court

57.    *In re Commercial Tissue Products Antitrust Litigation*, MDL No. 1189

58.    *Sanitary Paper Cases I and II*, J.C.C.P. Nos. 4019 & 4027

59.    *Gaehwiler v. Aladdin Mills, Inc.*, No. 300756,San Francisco Superior Court

60.    *In re Flat Glass Antitrust Litigation*, MDL No. 1200

61.    *Flat Glass Cases*, J.C.C.P. No. 4033

62.    *Sorbate Prices Cases*, J.C.C.P. No. 4073

63.    *In re Stock Options Trading Antitrust Litigation*, MDL No. 1283

64.    *In re Vitamin Antitrust Litigation*, MDL No. 1285

65.    *In re Sorbates Direct Purchaser Antitrust Litigation*, Master File No. C 98-4886 CAL

66.    *Vitamin Cases*, J.C.C.P. No. 4076

67.    *In re PRK/Lasik Consumer Litigation*, Master File No. CV 772894, Santa Clara Superior Court

68.    *In re Nine West Shoes Antitrust Litigation*, Master File No. 99-CV-0245 (BDP)

69.    *Food Additives (HFCS) Cases*, J.C.C.P. No. 3261

70.    *In re Toys "R" Us Antitrust Litigation*, MDL No. 1211

71.    *Cosmetics Cases*, J.C.C.P. No. 4056

72.    *In re Methionine Antitrust Litigation*, MDL No. 1311

73.    *Bromine Cases*, J.C.C.P. No. 4108

74.    *Fu's Garden Restaurant v. Archer-Daniels-Midland*, No. 304471,San Francisco Superior Court

75.    *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*, No. CV 99-07796 GHK

76.    *In re Monosodium Glutamate Antitrust Litigation*, MDL No. 1328

77.    *California Indirect Purchaser Auction House Cases*, Master Case No. 310313

78.    *In re Cigarette Antitrust Litigation*, MDL No. 1342

79.    *Cigarette Price Fixing Cases*, J.C.C.P. No. 4114

80.    *Microsoft Cases*, J.C.C.P. No. 4106

81.    *Compact Disk Cases*, J.C.C.P. No. 4123

82.    *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, MDL No. 1361

83.    *In re Ciprofloxacin Hydrochloride Antitrust Litigation*, MDL No. 1383

84.    *In re Buspirone Antitrust Litigation*, MDL No. 1413

85.    *In re K-Durr Prescription Drug Antitrust Litigation*, MDL No. 1419

86.    *Carbon Cases*, J.C.C.P. Nos. 4212, 4216 and 4222

87.    *In re Polychloroprene Antitrust Cases*, J.C.C.P. No. 4376

88.    *In re Urethane Cases*, J.C.C.P. No. 4367

89.    *The Harman Press v. International Paper Co.*, Consolidated Cases, Master File No. CGC-04-432167

90.    *In re Label Stock Cases*, J.C.C.P. No. 4314

91. *Richard Villa v. Crompton Corp.*, Consolidated Case No. CGC-03- 419116, San Francisco Superior Court

92. *Russell Reidel v. Norfalco LLC*, Consolidated Case No. CGC-03-418080, San Francisco Superior Court

93. *Smokeless Tobacco Cases I-IV*, J.C.C.P. Nos. 4250, 4258, 4259, & 4262, San Francisco Superior Court

94. *Natural Gas Antitrust Cases,* J.C.C.P. No. 4312

95. *In re Western States Wholesale Natural Gas Litigation*, MDL No. 1566

96. *In re Automotive Refinishing Paint Cases*, J.C.C.P. No. 4199

97. *In re Tableware Antitrust Litigation*, Master File No. C-04-3514 VRW, United States District Court, Northern District of California

98. *In re Credit/Debit Card Tying Cases*, J.C.C.P. No. 4335

99. *In re NBR Cases*, J.C.C.P. No. 4369

100. *Competition Collision Center, LLC v. Crompton Corp.*, No. CGC-04-431278, San Francisco Superior Court

101. *In re Urethane Chemicals Antitrust Litigation*, MDL No. 1616

102. *In re Rubber Chemicals Antitrust Litigation*, MDL No. 1648

103. *Carpinelli v. Boliden AB*, Master File No. CGC-04-435547, San Francisco Superior Court

104. *Automobile Antitrust Cases I and II*, J.C.C.P. Nos. 4298 and 4303

105. *In re Currency Conversion Fee Antitrust Litigation*, MDL No. 1409

106. *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, MDL No. 1486

107. *In re Publication Paper Antitrust Litigation*, MDL No. 1631

108. *In re Insurance Brokerage Antitrust Litigation,* MDL No. 1663

109. *In re Hydrogen Peroxide Antitrust Litigation*, MDL No. 1682

110. *In re Intel Corp. Microprocessor Antitrust Litigation*, MDL No. 1717

111. *In re Air Cargo Shipping Services Antitrust Litigation*, MDL No. 1775

112. *In re International Air Transportation Surcharge Antitrust Litigation*, MDL No. 1793

113. *Carbon Black Cases*, J.C.C.P. No. 4323

114. *Madani v. Shell Oil Co.*, No. 07-CV-04296 MJJ

115. *In re Static Random Access Memory (SRAM) Antitrust Litigation*, MDL No. 1819

116. *In re Flash Memory Antitrust Litigation,* No. 4:07-CV-00086 SBA

117. *In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827

118. *In re Korean Air Lines Co., Ltd., Antitrust Litigation*, MDL No. 1891

119. ***In re Fasteners Antitrust Litigation***, MDL No. 1912

120. ***In re Transpacific Passenger Air Transportation Antitrust Litigation***, MDL No. 1913

121. ***In re Cathode Ray Tube (CRT) Antitrust Litigation,*** MDL No. 1917

122. ***In re Chocolate Confectionary Antitrust Litigation,*** MDL No. 1935

123. ***In re Flat Glass Antitrust Litigation (II),*** MDL No. 1942

124. ***In re Municipal Derivatives Antitrust Litigation,*** MDL No. 1950

125. ***In re Aftermarket Filters Antitrust Litigation,*** MDL No. 1957

126. ***In re Puerto Rican Cabotage Antitrust Litigation,*** MDL No. 1960

127. ***In re Hawaiian and Guamanian Cabotage Antitrust Litigation,*** MDL No. 1972

128. ***In re California Title Insurance Antitrust Litigation,*** No. 08-01341 JSW

129. ***In re Optical Disk Drive (ODD) Antitrust Litigation***, MDL. No. 2143

130. ***Kleen Products LLC v. Packaging Corporation of America***, No. 10-5711

131. ***In re Automotive Parts Antitrust Litigation***, MDL No. 2311

132. ***In re On-Line Travel Company (OTC)/Hotel Booking Antitrust Litigation***, MDL No. 2405

133. ***In re Lithium Ion Batteries Antitrust Litigation***, MDL No. 2420

134. ***In re Capacitors Antitrust Litigation,*** Master File No. 14-cv-03264 JD, United States District Court, Northern District of California

135. ***In re Resistors Antitrust Litigation***, Master File No. 15-cv-03820 RMW, United States District Court, Northern District of California

# EXHIBIT B

## EXHIBIT B

In re Cathode Ray Tube (CRT) Antitrust Litigation
**SAVERI & SAVERI, INC.**
Reported Hours and Lodestar
Inception through March 29, 2017 - Mitsubishi/Thomson Only

## TIME REPORT

| NAME | TOTAL HOURS | HOURLY RATE | LODESTAR |
|------|-------------|-------------|----------|
| ATTORNEYS | | | |
| Guido Saveri (P) | 1,546.10 | $950 | $1,468,795.00 |
| R. Alexander Saveri (P) | 759.65 | $700 | $531,755.00 |
| Cadio Zirpoli (P) | 147.95 | $650 | $96,167.50 |
| Geoffrey C. Rushing (OC) | 1,496.85 | $700 | $1,047,795.00 |
| Arien Koorn (A) | 125.00 | $350 | $43,750.00 |
| Carl Hammarskjold (A) | 46.75 | $400 | $18,700.00 |
| David Hwu  (A) | 1,576.05 | $400 | $551,617.50 |
| Jennifer Scangos (A) | 462.25 | $350 | $161,787.50 |
| Matthew Heaphy (A) | 3,112.75 | $475 | $1,478,556.25 |
| Melissa Shapiro (A) | 50.25 | $450 | $22,612.50 |
| Sarah Van Culin (A) | 24.25 | $400 | $9,700.00 |
| Travis Manfredi (A) | 1,084.25 | $400 | $433,700.00 |
| William Heye (A) | 5.25 | $475 | $2,493.75 |
| NON-ATTORNEYS | | | |
| Cynthia Tran (PL) | 115.75 | $150 | $17,362.50 |
| David Dorr (PL) | 487.50 | $225 | $109,687.50 |
| Jae Hyun Lim (PL) | 439.50 | $200 | $87,900.00 |
| **TOTAL:** | **11,480.10** | | **$6,082,380.00** |

(P) Partner
(OC) Of Counsel
(A) Associate
(PL) Paralegal
(LC) Law Clerk

# EXHIBIT C

**EXHIBIT C**

In re Cathode Ray Tube (CRT) Antitrust Litigation
**SAVERI & SAVERI, INC.**
Reported Expenses Incurred on Behalf of DPPs - Mitsubishi/Thomson Only

**EXPENSE REPORT**

| CATEGORY | | AMOUNT INCURRED |
|---|---|---|
| Court Fees (Filing, etc.) | | $ 400.00 |
| Experts/Consultants/Special Master | | $ 1,003,203.75 |
|    Experts | $ 731,650.80 | |
|    Notice of Claims Administration | $ 112,011.33 | |
|    Special Master | $ 78,413.66 | |
|    Document Management System/Database | $ 48,616.25 | |
|    Translations | $ 32,511.71 | |
| Federal Express | | $ 384.65 |
| Transcripts (Hearing, Deposition, etc.) | | $ 9,717.16 |
| Messenger Delivery | | $ - |
| Photocopies – In House ($0.20 per copy) | | $ 18,619.40 |
| Photocopies – Outside | | $ 1,331.30 |
| Postage | | $ 25.39 |
| Service of Process | | $ 397.75 |
| Telephone/Telecopier | | $ 1,989.41 |
| | | |
| **TOTAL:** | | **$ 1,036,068.81** |

# EXHIBIT D

**EXHIBIT D**

In re Cathode Ray Tube (CRT) Antitrust Litigation
Mitsubishi/Thomson Only

| | FIRM | HOURS | LODESTAR | EXPENSES |
|---|---|---|---|---|
| 1 | Saveri & Saveri, Inc. | 11,480.10 | $6,082,380.00 | $1,036,068.81 |
| 2 | Freed Kanner London & Millen, LLC | 1,962.30 | $1,170,577.00 | $3,801.32 |
| 3 | Hagens Berman Sobol Shapiro LLP | 2,278.10 | $914,944.20 | $2,392.06 |
| 4 | Kellogg, Hansen, Todd, Figel & Frederick, PLLC | 1,459.80 | $778,548.00 | $4,876.40 |
| 5 | Bolognese & Associates, LLC | 1,338.00 | $769,350.00 | $0.00 |
| 6 | Polsinelli PC | 880.30 | $559,255.00 | $2,418.41 |
| 7 | Law Offices of Mary Jane Fait PLLC | 479.30 | $400,153.50 | $0.00 |
| 8 | Cotchett, Pitre & McCarthy, LLP | 505.90 | $347,567.50 | $2,130.69 |
| 9 | Hausfeld LLP | 214.10 | $182,461.00 | $62.52 |
| 10 | Gustafson Gluek PLLC | 226.00 | $115,431.25 | $387.30 |
| 11 | Gross & Belsky PC | 133.80 | $94,467.50 | $62.68 |
| 12 | Berger & Montague, PC | 127.10 | $86,486.00 | $376.25 |
| 13 | Vanek, Vickers & Masini, PC | 144.10 | $75,941.00 | $679.03 |
| 14 | Steyer Lowenthal Boodrookas Alvarez & Smith LLP | 75.85 | $64,457.50 | $25.40 |
| 15 | Spector Roseman Kodroff & Willis, PC | 130.30 | $54,046.00 | $0.00 |
| 16 | Heins Mills & Olson, PLC | 91.75 | $41,475.00 | $679.39 |
| 17 | Pearson, Simon & Warshaw, LLP | 53.70 | $30,410.50 | $0.00 |
| 18 | Hadsell Stormer & Renick, LLP | 35.90 | $27,707.50 | $0.00 |
| 19 | Lieff Cabraser Heimann & Bernstein, LLP | 36.30 | $16,346.50 | $0.00 |
| | **TOTALS** | **21,652.70** | **$11,812,004.95** | **$1,053,960.26** |

# EXHIBIT E

In re Cathode Ray Tube (CRT) Antitrust Litigation - Mitsubishi/Thomson Only

FIRM

| CATEGORY | 1 Saveri & Saveri, Inc. | 2 Freed Kanner London & Millen, LLC | 3 Hagens Berman Sobol Shapiro | 4 Kellogg, Hansen, Todd, Figel & Frederick, PLLC | 5 Bolognese & Associates, LLC | 6 Polsinelli PC | 7 Law Offices of Mary Jane Fait PLLC | 8 Cotchett, Pitre & McCarthy, LLP | 9 Hausfeld LLP | 10 Gustafson Gluek PLLC | 11 Gross & Belsky PC | 12 Berger & Montague, PC | 13 Vanek, Vickers & Masini PC | 14 Steyer Lowenthal Boodrookas Alvarez & Smith LLP | 15 Spector Roseman Kodroff & Willis, PC | 16 Heins Mills & Olson, PLC | 17 Pearson, Simon & Warshaw, LLP | 18 Hadsell Stormer & Renick, LLP | 19 Lieff Cabraser Heimann & Bernstein, LLP | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Court Fees (Filing, etc.) | $ 400.00 | | | $ 305.00 | | $ 305.00 | | | | | | | | | | | | | | $ 1,010.00 |
| Experts/Consultants/Special Master | | | | | | | | | | | | | | | | | | | | |
| Experts | $ 731,650.80 | | | $ 1,000.00 | | | | | | | | | | | | | | | | $ 732,650.80 |
| Notice of Claims Administration | $ 112,011.33 | | | | | | | | | | | | | | | | | | | $ 112,011.33 |
| Special Master | $ 78,413.66 | | | | | | | | | | | | | | | | | | | $ 78,413.66 |
| Document Management Systems & Database | $ 48,616.25 | | | | | | | | | | | | | | | | | | | $ 48,616.25 |
| Translations | $ 32,511.71 | | | | | | | | | | | | | | | | | | | $ 32,511.71 |
| Federal Express | $ 384.65 | | $ 143.26 | $ 164.04 | | | | $ 144.03 | | $ 112.80 | | $ 57.86 | | | | $ 38.03 | | | | $ 1,044.67 |
| Transcripts (Hearing, Deposition, etc.) | $ 9,717.16 | $ 3,310.00 | $ 2,248.80 | $ 1,163.12 | | $ 2,095.07 | | | | | | | $ 583.65 | | | | | | | $ 13,559.00 |
| Messenger Delivery | $ - | | | | | $ 18.34 | | | | | | | | | | | | | | $ 18.34 |
| Photocopies – In House ($0.20 per copy) | $ 18,619.40 | | | $ 2,009.12 | | | | $ 1,924.60 | $ 62.52 | $ 261.60 | $ 48.60 | $ 312.35 | $ 79.60 | | | $ 639.20 | | | | $ 29,515.79 |
| Photocopies – Outside | $ 1,331.30 | | | | | | | | | | | | | | | | | | | $ 1,331.30 |
| Postage | $ 25.39 | $ 285.52 | | | | | | | | | $ 14.08 | | $ 15.78 | $ 25.40 | | | | | | $ 366.17 |
| Service of Process | $ 397.75 | | | | | | | | | | | | | | | | | | | $ 397.75 |
| Telephone/Telecopier | $ 1,989.41 | $ 205.80 | | $ 235.12 | | | | $ 62.06 | | $ 12.90 | | $ 6.04 | | | | $ 2.16 | | | | $ 2,513.49 |
| **TOTALS:** | $ 1,036,068.81 | $ 3,801.32 | $ 2,392.06 | $ 4,876.40 | $ - | $ 2,418.41 | $ - | $ 2,130.69 | $ 62.52 | $ 387.30 | $ 62.68 | $ 376.25 | $ 679.03 | $ 25.40 | $ - | $ 679.39 | $ - | $ - | $ - | $ 1,053,960.26 |