Guido Saveri (22349)
   *guido@saveri.com*
R. Alexander Saveri (173102)
   *rick@saveri.com*
Geoffrey C. Rushing (126910)
   *grushing@saveri.com*
Cadio Zirpoli (179108)
   *cadio@saveri.com*
Matthew D. Heaphy (227224)
   *mheaphy@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **DECLARATION OF RUTHANNE GORDON IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS** |
| *Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al.*, Case No. 14-CV-2058-JST. | |
| | Date:     June 8, 2017 |
| | Time:    2:00 p.m. |
| | Judge:   Honorable Jon S. Tigar |
| | Courtroom: 9 |

I, Ruthanne Gordon, declare:

1. I am a shareholder of Berger & Montague, P.C., Counsel for Direct Purchaser Plaintiffs ("DPPs" or "Plaintiffs") in this action. I submit this declaration in support of DPPs' joint Application for Attorneys' Fees and Expenses and Incentive Awards ("Fees and Expense Application") in connection with the services rendered in this litigation. I make this declaration based on my personal knowledge and if called as a witness, I could and would competently testify to the matters stated herein.

2. My firm has served as counsel to Nathan Muchnick, Inc. and as counsel for the Class throughout the course of this litigation. The background and experience of Berger & Montague, P.C. and its attorneys are summarized in the curriculum vitae attached hereto as **Exhibit A**.

3. Berger & Montague, P.C. has prosecuted this litigation solely on a contingent-fee basis, and has been at risk that it would not receive any compensation for prosecuting claims against the defendants. While Berger & Montague, P.C. devoted its time and resources to this matter, it has foregone other legal work for which it would have been compensated.

4. During the pendency of the litigation, Berger & Montague, P.C. performed the following work: supervised all discovery relating to class representative Nathan Muchnick, Inc., including: oversaw class representative Nathan Muchnick, Inc.'s responses to defendants' interrogatories, and prepared for and defended class representative Nathan Muchnick, Inc.'s deposition; and assisted in discovery negotiations with the Mitsubishi Electric Defendants and drafted related discovery motion practice.

5. Attached hereto as **Exhibit B** is my firm's total hours and lodestar, computed at historical rates, from the inception of DPPs' case against the Mitsubishi Electric Defendants and the Thomson Defendants (Case No. 14-CV-2058-JST, filed May 5, 2014) through October 31, 2016. The total number of hours spent by Berger & Montague, P.C. during this period of time was 127.1, with a corresponding lodestar of $86,486.00. This summary was prepared from contemporaneous, daily time records regularly prepared and maintained by Berger & Montague, P.C. The lodestar amount reflected in Exhibit B is for work assigned by Lead Counsel, and was performed by

1

1  professional staff at my law firm for the benefit of the DPP Class. None of these hours were included

2  in connection with DPPs' first fee and expense application (ECF No. 4055).

3        6.      The hourly rates for the attorneys and professional support staff in my firm included

4  in Exhibit B are the usual and customary hourly rates charged by Berger & Montague, P.C.

5        7.      Berger & Montague, P.C. has expended a total of $376.25 in unreimbursed costs and

6  expenses in connection with the prosecution of DPPs' case against the Mitsubishi Electric

7  Defendants and the Thomson Defendants. These costs and expenses are broken down in the chart

8  attached hereto as **Exhibit C**. They were incurred on behalf of DPPs by Berger & Montague, P.C.

9  on a contingent basis and have not been reimbursed. The expenses incurred in this action are reflected

10  on the books and records of my firm. These books and records are prepared from expense vouchers,

11  check records and other source materials and represent an accurate recordation of the expenses

12  incurred. None of these expenses were included in connection with DPPs' first fee and expense

13  application (ECF No. 4055).

14        8.      I have reviewed the time and expenses reported by Berger & Montague, P.C. in this

15  case which are included in this declaration, and I affirm that they are true and accurate.

16        I declare under penalty of perjury under the laws of the United States of America that the

17  foregoing is true and correct.

18        Executed on March 10, 2017 at Philadelphia, PA.

19

20        Ruthanne Gordon

21

22

23  Kal7652385

24

25

26

27

28

DECLARATION OF RUTHANNE GORDON ISO DPPS' APPLICATION FOR ATTORNEYS' FEES AND
EXPENSES AND INCENTIVE AWARDS; Master File No. 07-CV-5944-JST

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

I, R. Alexander Saveri, hereby attest, pursuant to United States District Court, Northern District of California Civil Local Rule 5-1(i)(3), that concurrence to the filing of this document has been obtained from the signatory hereto.

By:    _/s/ R. Alexander Saveri_
          R. Alexander Saveri

DECLARATION OF RUTHANNE GORDON ISO DPPS' APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS; Master File No. 07-CV-5944-JST

# EXHIBIT A



Dated: March 10, 2017

## BERGER & MONTAGUE, P.C.

## THE FIRM:

Berger & Montague is a full-spectrum class action and complex civil litigation firm, with nationally known attorneys who are highly sought after for their legal skills. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of antitrust, securities, mass torts, civil and human rights, whistleblower cases, employment, and consumer litigation. In numerous precedent-setting cases, the firm has played a principal or lead role.

The National Law Journal, which recognizes a select group of law firms each year that have done "exemplary, cutting-edge work on the plaintiffs side," has selected Berger & Montague in 11 out of the last fourteen years (2003-05, 2007-13, 2015-16) for its "Hot List" of top plaintiffs' oriented litigation firms in the United States. The firm has also achieved the highest possible rating by its peers and opponents as reported in Martindale-Hubbell.

Currently, the firm consists of 59 lawyers; 18 paralegals; and an experienced support staff. Few firms in the United States have our breadth of practice and match our successful track record in such a broad array of complex litigation.

Berger & Montague was founded in 1970 by the late David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions. David Berger helped pioneer the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas, and has recovered billions of dollars for its clients. In complex litigation, particularly in areas of class action litigation, Berger & Montague has established new law and forged the path for recovery.

The firm has been involved in a series of notable cases, some of them among the most important in the last 40 years of civil litigation. For example, the firm was one of the principal counsel for plaintiffs in the *Drexel Burnham Lambert/Michael Milken* securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of Drexel in the late 1980's. The firm was also among the principal trial counsel in the *Exxon Valdez Oil Spill Litigation* in Anchorage, Alaska, a trial resulting in a record jury award of $5 billion against Exxon, later reduced by the U.S. Supreme Court to $507.5 million. Berger & Montague was lead counsel in the *School Asbestos Litigation*, in which a national class of secondary and elementary schools recovered in excess of $300 million to defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis. Berger & Montague was also lead/liaison counsel in the *Three Mile Island Litigation* arising out of a serious nuclear incident.

Additionally, in the human rights area, the firm, through its membership on the executive committee in the *Holocaust Victim Assets Litigation*, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not

returned after the Second World War. The firm also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

# JUDICIAL PRAISE FOR BERGER & MONTAGUE ATTORNEYS IN ANTITRUST LITIGATION

Berger & Montague's record of successful prosecution of class actions and other complex litigation has been recognized and commended by judges and arbitrators across the country. Some remarks on the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

From **Judge William H. Pauley, III**, of the U.S. District Court of the Southern District of New York:

> "Class Counsel did their work on their own with enormous attention to detail and unflagging devotion to the cause.  Many of the issues in this litigation . . . were unique and issues of first impression."

> \* \* \*

> "Class Counsel provided extraordinarily high-quality representation.  This case raised a number of unique and complex legal issues ….  The law firms of Berger & Montague and Coughlin Stoia were indefatigable.  They represented the Class with a high degree of professionalism, and vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar."

*In re Currency Conversion Fee Antitrust Litigation*, 263 F.R.D. 110, 129 (2009).

From **Judge Faith S. Hochberg** of the United States District court for the District of New Jersey:

> "[W]e sitting here don't always get to see such fine lawyering, and it's really wonderful for me both to have tough issues and smart lawyers … I want to congratulate all of you for the really hard work you put into this, the way you presented the issues, … On behalf of the entire federal judiciary I want to thank you for the kind of lawyering we wish everybody would do."

*In re Remeron Antitrust Litig*., Civ. No. 02-2007 (Nov. 2, 2005).

From U.S. District **Judge Jan DuBois**, of the U.S. District Court of the Eastern District of Pennsylvania:

> "[T]he size of the settlements in absolute terms and expressed as a percentage of total damages evidence a high level of skill by petitioners … The Court has repeatedly stated that the lawyering in the case at every stage was superb, and does so again."

2

*In Re Linerboard Antitrust Litig*., 2004 WL 1221350, at *5-*6 (E.D. Pa. 2004).
From **Judge Nancy G. Edmunds**, of the U.S. District Court of the Eastern District of Michigan:

> "[T]his represents an excellent settlement for the Class and reflects the outstanding effort on the part of highly experienced, skilled, and hard working Class Counsel....[T]heir efforts were not only successful, but were highly organized and efficient in addressing numerous complex issues raised in this litigation[.]"

*In re Cardizem CD Antitrust Litig*., MDL No. 1278 (E.D. Mich., Nov. 26, 2002).
From **Judge Charles P. Kocoras** of the U.S. District Court for the Northern District of Illinois:

> "The stakes were high here, with the result that most matters of consequence were contested.  There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled.  The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . . There is no question that the results achieved by class counsel were extraordinary[.]"

Regarding the work of Berger & Montague in achieving more than $700 million in settlements with some of the defendants in *In Re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734, at *3-*6 (N.D. Ill. Feb. 9, 2000).

From **Judge Peter J. Messitte** of the U.S. District Court for the District of Maryland:

> "The experience and ability of the attorneys I have mentioned earlier, in my view in reviewing the documents, which I have no reason to doubt, the plaintiffs' counsel are at the top of the profession in this regard and certainly have used their expertise to craft an extremely favorable settlement for their clients, and to that extent they deserve to be rewarded."

Settlement Approval Hearing, Oct. 28, 1994, in *Spawd, Inc. and General Generics v. Bolar Pharmaceutical Co., Inc.*, CA No. PJM-92-3624 (D. Md.).

From **Judge Donald W. Van Artsdalen** of the U.S. District Court for the Eastern District of Pennsylvania:

> "As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various condition, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from their respective lessors. The additional benefits obtained for the classes by way of equitable relief would, in and of itself, justify some upward adjustment of the lodestar figure."

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 31 (E.D. Pa. 1985).

From **Judge Krupansky**, who had been elevated to the Sixth Circuit Court of Appeals:

> Finally, the court unhesitatingly concludes that the quality of the representation rendered by counsel was uniformly high. The attorneys involved in this litigation are extremely experienced and skilled in their prosecution of antitrust litigation and other complex actions. Their services have been rendered in an efficient and expeditious manner, but have nevertheless been productive of highly favorable result.

Where the firm and Merrill Davidoff were co-lead counsel in *In re Art Materials Antitrust Litigation,* 1984 CCH Trade Cases ¶65,815 (N.D. Ohio 1983).

From **Judge Joseph Blumenfeld** of the U.S. District Court for the District of Connecticut:

> "The work of the Berger firm showed a high degree of efficiency and imagination, particularly in the maintenance and management of the national class actions."

*In re Master Key Antitrust Litigation*, 1977 U.S. Dist. LEXIS 12948, at *35 (Nov. 4, 1977).

# PROMINENT RESULTS IN ANTITRUST LITIGATION

The firm has a wide breadth of achievement in many significant areas of complex and business-related litigation.  The following is a partial list of some of the more notable results obtained by the firm in antitrust litigation.

***In re Modafinil Direct Purchaser Antitrust Litigation:*** Berger & Montague represents a class of direct purchasers in a challenge to a pay-for-delay deal for the drug Provigil (modafinil), a prescription drug that treats sleeping disorders and was manufactured and sold by Defendant Cephalon, Inc.  Plaintiffs allege that, just prior to the expected entry of generic competition for Provigil, Cephalon entered into agreements to delay generic competition with nearly all of its anticipated generic rivals, including Barr Laboratories, Inc., Teva Pharmaceutical Industries, Ltd., Teva Pharmaceuticals USA, Inc., Ranbaxy Laboratories, Ltd., Ranbaxy Pharmaceuticals, Inc., and Mylan Laboratories, Inc.  Because these companies are entitled to an exclusivity period under a federal law known as the Hatch Waxman Act, delaying their entry also froze out other potential generic competitors.  As a result, purchasers paid inflated prices on their modafinil purchases. Berger & Montague played a pivotal role in defeating summary judgment, obtaining class certification, and negotiating $512 million in settlements with three of five defendants. These settlements are the largest in the history of cases brought by direct purchasers alleging delayed generic entry.  The case is proceeding against the remaining two defendants.

***In re Currency Conversion Fee Antitrust Litigation:***  Berger & Montague, as one of two co-lead counsel, spearheaded a class action lawsuit alleging that the major credit cards had conspired to fix prices for foreign currency conversion fees imposed on credit card transactions. After eight years of litigation, a settlement of $336 million was approved in October 2009, with a Final Judgment entered in November 2009.  Following the resolution of eleven appeals, the District Court, on October 5, 2011, directed distribution of the settlement funds to more than 10 million timely filed claimants, among the largest class of claimants in an antitrust consumer class action.  (MDL No. 1409 (S.D.N.Y)).

***Ross v. American Express Co.:***  Berger & Montague represented cardholders in a related case to In re Currency Conversion Fee Antitrust Litigation ("CCF I"), MDL No. 1409, Master File No. M21-95 (S.D.N.Y.) (Pauley, J.), in the same court.  The lawsuit concerned the fees that cardholders of Visa-, MasterCard- and Diners Club-branded general purpose cards have been charged to make transactions denominated in a foreign currency or with a foreign merchant.  The plaintiffs claimed that American Express conspired with the bank defendants in CCF I to fix, maintain and conceal the banks' artificially inflated foreign transaction fee and American Express agreed to increase its own fee from 1% to 2%.  On April 30, 2012, Berger & Montague obtained final approval of a $49.5 million settlement of plaintiffs' claims concerning the imposition of foreign transaction fees. (No. 04-cv-5723 (S.D.N.Y.))

***In re Marchbanks Truck Service Inc., et al. v. Comdata Network, Inc.:*** Berger & Montague was co-lead counsel in this antitrust class action brought on behalf of a class of thousands of Independent Truck Stops.  The lawsuit alleged that defendant Comdata Network, Inc. had monopolized the market for specialized Fleet Cards used by long haul truckers. Comdata imposed anticompetitive provisions in its agreements with Independent Truck Stops that

artificially inflated the fees Independents paid when accepting the Comdata's Fleet Card for payment.  These contractual provisions, commonly referred to as anti-steering provisions or merchant restraints, barred Independents from taking various competitive steps that could have been used to steer fleets to rival payment cards. The settlement for $130 million and valuable prospective relief was preliminary approved on March 17, 2014, and finally approved on July 14, 2014. In its July 14, 2014 order approving Class Counsel's fee request, entered contemporaneously with its order finally approving the settlement, the Court described this outcome as "substantial, both in absolute terms, and when assessed in light of the risks of establishing liability and damages in this case."

***In re High Fructose Corn Syrup Antitrust Litigation:***  Berger & Montague was one of three co-lead counsel in this nationwide class action alleging a conspiracy to allocate volumes and customers and to price-fix among five producers of high fructose corn syrup.  After nine years of litigation, including four appeals, the case was settled on the eve of trial for $531 million. (MDL. No. 1087, Master File No. 95-1477 (C.D. Ill.)).

***In re Linerboard Antitrust Litigation:***  Berger & Montague was one of a small group of court-appointed executive committee members who led this nationwide class action against producers of linerboard.  The complaint alleged that the defendants conspired to reduce production of linerboard in order to increase the price of linerboard and corrugated boxes made therefrom.  At the close of discovery, the case was settled for more than $200 million. (98 Civ. 5055 and 99-1341 (E.D. Pa.)).

***Meijer, Inc., et al. v. Abbott Laboratories:*** Berger & Montague served as co-lead counsel in a class action on behalf of pharmaceutical wholesalers and pharmacies charging Abbott Laboratories with illegally maintaining monopoly power and overcharging purchasers in violation of the federal antitrust laws.  Plaintiffs alleged that Abbott had used its monopoly with respect to its anti-HIV medicine Norvir (ritonavir) to protect its monopoly power for another highly profitable Abbott HIV drug, Kaletra.  This antitrust class action settled for $52 million after four days of a jury trial in federal court in Oakland, California. (Case No. 07-5985 (N.D. Cal.)).

***In Re Nifedipine Antitrust Litigation:*** Berger & Montague played a major role (serving on the executive committee) in this antitrust class action on behalf of direct purchasers of generic versions of the anti-hypertension drug Adalat (nifedipine).  After eight years of hard-fought litigation, the court approved a total of $35 million in settlements.  (Case No. 1:03-223 (D.D.C.)).

***Johnson, et al. v AzHHA, et al.:***  Berger & Montague was co-lead counsel in this litigation on behalf of a class of temporary nursing personnel, against the Arizona Hospital and Healthcare Association, and its member hospitals, for agreeing and conspiring to fix the rates and wages for temporary nursing personnel, causing class members to be underpaid.  The court approved a nearly $22.5 million settlement on behalf of this class of nurses. (Case No. 07-1292 (D. Ariz.)).

***In re DDAVP Direct Purchaser Antitrust Litigation:*** Berger & Montague served as co-lead counsel in a case that charged defendants with using sham litigation and a fraudulently obtained patent to delay the entry of generic versions of the prescription drug DDAVP.  Berger &

6

Montague achieved a $20.25 million settlement only after winning a precedent-setting victory before the United States Court of Appeals for the Second Circuit that ruled that direct purchasers had standing to recover overcharges arising from a patent-holder's misuse of an allegedly fraudulently obtained patent.  (Case No. 05-2237 (S.D.N.Y.)).

***In re Terazosin Antitrust Litigation:***  Berger & Montague was one of a small group of counsel in a case alleging that Abbott Laboratories was paying its competitors to refrain from introducing less expensive generic versions of Hytrin.  The case settled for $74.5 million.  (Case No. 99-MDL-1317 (S.D. Fla.)).

***In re Remeron Antitrust Litigation:***  Berger & Montague was one of a small group of counsel in a case alleging that the manufacturer of this drug was paying its competitors to refrain from introducing less expensive generic versions of Remeron.  The case settled for $75 million. (2:02-CV-02007-FSH (D. N.J.).

***In re Tricor Antitrust Litigation:***  Berger & Montague was one of a small group of counsel in a case alleging that the manufacturer of this drug was paying its competitors to refrain from introducing less expensive generic versions of Tricor.  The case settled for $250 million.  (No. 05-340 (D. Del.)).

***In re Relafen Antitrust Litigation:***  Berger & Montague was one of a small group of firms who prepared for the trial of this nationwide class action against GlaxoSmithKline, which was alleged to have used fraudulently-procured patents to block competitors from marketing less-expensive generic versions of its popular nonsteroidal anti-inflammatory drug, Relafen (nabumetone).  Just before trial, the case was settled for $175 million.  (No. 01-12239-WGY (D. Mass.)).

***In re Microcrystalline Antitrust Litigation:***  Berger & Montague was one of two co-lead counsel in this class action alleging a conspiracy to fix the price of microcrystalline cellulose, used in the manufacture of many pharmaceuticals.  The case was settled shortly before trial for a total of $50 million.  (MDL No. 1402 (E.D. Pa.)).

***In re Graphite Electrodes Antitrust Litigation:***  Berger & Montague was one of the four co-lead counsel in a nationwide class action price-fixing case.  The case settled for in excess of $134 million and over 100% of claimed damages, with Mr. Davidoff as co-lead counsel. (02 Civ. 99-482 (E.D. Pa.)).

***In re Buspirone Antitrust Litigation:***  The firm served on the court-appointed steering committee in this class action, representing a class of primarily pharmaceutical wholesalers and resellers.  The Buspirone class action alleged that pharmaceutical manufacturer BMS engaged in a pattern of illegal conduct surrounding its popular anti-anxiety medication, Buspar, by paying a competitor to refrain from marketing a generic version of Buspar, improperly listing a patent with the FDA, and wrongfully prosecuting patent infringement actions against generic competitors to Buspar.  On April 11, 2003, the Court finally approved a $220 million settlement. (MDL No. 1410 (S.D.N.Y.)).

***In re Cardizem CD Antitrust Litigation:***  Berger & Montague served on the executive committee of firms appointed to represent the class of direct purchasers of Cardizem CD.  The

7

suit charged that Aventis (the brand-name drug manufacturer of Cardizem CD) entered into an illegal agreement to pay Andrx (the maker of a generic substitute to Cardizem CD) millions of dollars to delay the entry of the less expensive generic product.  On November 26, 2002, the district court approved a final settlement against both defendants for $110 million.  (No. 99-MD-1278, MDL No. 1278 (E.D. Mich.)).

***In re Brand Name Prescription Drugs Antitrust Litigation***:  The firm served as co-lead counsel in this antitrust price-fixing class action on behalf of a class of purchasers of brand name prescription drugs.  Following certification of the class by the district court, settlements exceeded $717 million.  (No. 94 C 897 (M.D. Ill.)).

***North Shore Hematology-Oncology Assoc., Inc. v. Bristol-Myers Squibb Co.:***  The firm was one of several prosecuting an action complaining of Bristol Myers's use of invalid patents to block competitors from marketing more affordable generic versions of its life-saving cancer drug, Platinol (cisplatin).  The case settled for $50 million. (No. 1:04CV248 (EGS) (D.D.C.)).

***In re Catfish Antitrust Litig. Action***:  The firm was co-trial counsel in this action which settled with the last defendant a week before trial, for total settlements approximating $27 million.  (No. 2:92CV073-D-O, MDL No. 928 (N.D. Miss.)).

***In re Carbon Dioxide Antitrust Litigation:***  The firm was co-trial counsel in this antitrust class action which settled with the last defendant days prior to trial, for total settlements approximating $53 million, plus injunctive relief.  (MDL No. 940 (M.D. Fla.)).

***In re Infant Formula Antitrust Litigation***:  The firm served as co-lead counsel in an antitrust class action where settlement was achieved two days prior to trial, bringing the total settlement proceeds to $125 million.  (MDL No. 878 (N.D. Fla.)).

***Red Eagle Resources Corp., Inc., v. Baker Hughes, Inc.:***  The firm was a member of the plaintiffs' executive committee in this antitrust class action which yielded a settlement of $52.5 million.  (C.A. No. H-91-627 (S.D. Tex.)).

***In re Corrugated Container Antitrust Litigation:***  The firm, led by H. Laddie Montague, was co-trial counsel in an antitrust class action which yielded a settlement of $366 million, plus interest, following trial. (MDL No. 310 (S.D. Tex.)).

***Bogosian v. Gulf Oil Corp.:***  With Berger & Montague as sole lead counsel, this landmark action on behalf of a national class of more than 100,000 gasoline dealers against 13 major oil companies led to settlements of over $35 million plus equitable relief on the eve of trial.  (No. 71-1137 (E.D. Pa.)).

***In re Master Key Antitrust Litigation:***  The firm served as co-lead counsel in an antitrust class action that yielded a settlement of $21 million during trial.  (MDL No. 45 (D. Conn.)).

# BACKGROUND INFORMATION CONCERNING KEY ANTITRUST DEPARTMENT ATTORNEYS <u>WHO WORKED ON THIS CASE</u>

### <u>Ruthanne Gordon</u>

Ruthanne Gordon, a shareholder at Berger & Montague, is a graduate of the University of Michigan and the University of Pennsylvania Law School.  She has concentrated on the litigation of antitrust, securities and environmental class actions, and derivative litigation, including the following complex antitrust cases, among others, in which she has played a lead role: I*n re Currency Conversion Fee Antitrust Litigation* (S.D.N.Y.) (after 5½ years of litigation, through the close of fact and expert discovery, achieved a settlement consisting of $336 million and injunctive relief for a class of U.S. cardholders of Visa- and MasterCard-branded cards; over 10 million class members have filed claims); *In re Domestic Drywall Antitrust Litig.*, No. 13-2437 (E.D. Pa.) (alleging the major manufacturers of drywall conspired to fix prices) (final approval of $67.5 million in partial settlements); *Ross v. American Express Company* ($49.5 million settlement currently pending, achieved after more than 7 years of litigation and after summary judgment was denied); *In re Methyl Methacrylate (MMA) Antitrust Litigation* (E.D. Pa.) (Berger & Montague served as Co-Lead Counsel); In re Puerto Rico Cabotage Antitrust Litigation (D.P.R.) (Ms. Gordon served as a court-appointed member of the Plaintiffs' Steering Committee); *In re Microcrystalline Cellulose Antitrust Litigation* (E.D. Pa.) (Berger & Montague served as Co-Lead Counsel in this case which settled for $50 million shortly before trial); *In re Compact Disc Antitrust Litigation* (C.D. Cal.) (settlement obtained shortly before trial); State of Connecticut v. Philip Morris, Inc., et al., in which the State of Connecticut recovered approximately $3.6 billion from certain manufacturers of tobacco products; and *In re Commercial Tissue Antitrust Litigation* (N.D. Fla.) (settlement valued at $54 million achieved after summary judgment briefing).

Ms. Gordon has also played a lead role in litigation involving the following industries, among others: the real estate industry (*Lyons v. Calderone, et al*. (D.N.J.); Best v. Koger Equity, Inc., et al. (M.D. Fla.)); the computer industry (*In re Convex Computer Corporation Securities Litigation* (N.D. Tex.); *Heideman v. Toreson, et al.* (N.D. Cal.)); public utilities (*In re Philadelphia Electric Company Derivative Litigation* (Phila. C.C.P.); *In re PSE&G Derivative Litigation* (N.J. Super. Ct. Ch. Div.)); the environmental services industry (*Houston Corporation v. Environmental Systems Company, et al.* (E.D. Ark.)); the tobacco industry *(Friedman v. RJR Nabisco, Inc., et al.* (S.D.N.Y.)); the biotechnology industry (*In re Biogen Inc. Securities Litigation* (D. Mass.)); and the healthcare industry (*In re W.R. Grace & Co. Securities Litigation* (S.D.N.Y.)).

Ms. Gordon has argued issues of first impression before the United States Court of Appeals for the Second Circuit, in *Ross v. American Express Company* (concerning standing to invoke the interlocutory appeal provision of Section 16 of the Federal Arbitration Act, in a case alleging a horizontal price-fixing conspiracy) and before the New Jersey Supreme Court, in *In re PSE&G Derivative Litigation* (concerning the standard for excusal of demand in a duty of care case).

She was counsel in *In re Louisville Explosion Litigation*, a class action case alleging property damage, which was prosecuted through a six-week trial and settled at the close of plaintiffs' case for more than one hundred percent of actual damages. In addition, Ms. Gordon represented a class of Pennsylvania inmates in a federal civil rights class action, which resulted in the establishment of a statewide treatment program for Pennsylvania inmates suffering from post-traumatic stress disorder as a result of their service in the Vietnam War.

As a member of the Antitrust Law Section of the American Bar Association, Ms. Gordon has served as a panelist at the American Bar Association's Antitrust Law Spring Meeting, where she addressed key issues that arise in the prosecution and defense of an antitrust class action lawsuit.

Ms Gordon has repeatedly been named as one Pennsylvania's "SuperLawyers" in the *Philadelphia Magazine*; and has received the highest peer-review rating, "AV," in Martindale-Hubbell.


**Candice J. Enders**

Candice Enders is a shareholder and member of Berger & Montague's antitrust department. She received a B.A. in political science from the University of Delaware in 2000 and earned her J.D. from the University of Pennsylvania in 2003.

Ms. Enders has over 10 years of experience litigating high profile antitrust class action cases, including *In re Domestic Drywall Antitrust Litig.*, No. 13-2437 (E.D. Pa.) (alleging the major manufacturers of drywall conspired to fix prices) (final approval of $67.5 million in partial settlements); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917 (N.D. Cal.) (claiming manufacturers of cathode ray tubes conspired to fix prices) (over $135 million in settlements); *In re TFT-LCD Antitrust Litig.*, No. 07-1827 (N.D. Cal.) (alleging that manufacturers of LCD panels engaged in price-fixing) (settlements of over $473 million obtained); *In re Microcrystalline Cellulose Antitrust Litig.*, MDL No. 1402 (E.D. Pa.) (alleging that manufacturers of a binder used in pharmaceuticals, vitamins and food engaged in a conspiracy to allocate geographic markets) ($50 million settlement achieved shortly before trial); and *In re Methyl Methacrylate Antitrust Litig.*, No. 06-1768 (E.D. Pa.) (alleging a price-fixing conspiracy among the major manufacturers of a chemical used in the production of acrylics) ($15 million in settlements).

While in law school, Ms. Enders served as a senior editor on the *University of Pennsylvania Journal of Labor and Employment Law*, volunteered as a legal advocate at the Custody and Support Assistance Clinic, and interned at Philadelphia City Council.

From 2013 through 2016, Ms. Enders was selected as a Pennsylvania Super Lawyers "Rising Star."

## David A. Langer

David A. Langer is senior counsel in the Antitrust practice group at Berger & Montague.  He concentrates his practice in complex antitrust litigation.

Mr. Langer has had a primary role in the prosecution of the following antitrust class actions: *In re Currency Conversion Fee Antitrust Litigation* (S.D.N.Y.) (after 5½ years of litigation, through the close of fact and expert discovery, achieved a settlement consisting of $336 million and injunctive relief for a class of U.S. Visa and MasterCard cardholders; extraordinary settlement participation from class members drawing more than 10 million claimants in one of the largest consumer antitrust class actions); *Ross and Wachsmuth v. American Express Co., et al.* (S.D.N.Y.) ($49.5 million settlement achieved after more than 7 years of litigation and after summary judgment was denied); *Ross, et al. v. Bank of America, N.A. (USA), et al.* (S.D.N.Y.) (obtained settlements with four of the nations' largest card issuers (Bank of America, Capital One, Chase and HSBC) to drop their arbitration clauses for their credit cards for 3.5 years, and a settlement with the non-bank defendant arbitration provider (NAF), who agreed to cease administering arbitration proceedings involving business cards for 3.5 years); and In re Linerboard Antitrust Litigation (E.D. Pa.) (helped obtain settlements of more than $200 million dollars).

Mr. Langer was one of the trial team chairs in the 5-week consolidated bench trial of arbitration antitrust claims in *Ross v. American Express* and *Ross v. Bank of America*, where the Honorable William H. Pauley, III of the United States District Court for the Southern District of New York, commended the "extraordinary talents of Plaintiffs' counsel."

Mr. Langer has also had a primary role in appellate proceedings, obtaining relief for his clients in a number of matters, including: *Ross, et al. v. American Express Co., et al.*, 547 F.3d 137 (S.D.N.Y. 2008) (precluding an alleged co-conspirator from relying on the doctrine of equitable estoppel to invoke arbitration clauses imposed by its competitor co-conspirators); *Ross, et al. v. Bank of America, N.A. (USA), et al.*, 524 F.3d 217 (S.D.N.Y. 2008) (holding that antitrust plaintiffs possess Article III standing to challenge the defendants' collusive imposition of arbitration clauses barring participation in class actions); *In re Pharmacy Benefit Managers Antitrust Litig.*, 700 F.3d 109 (3d Cir. 2012) (finding opposing party waived right to compel arbitration and reversing district court).

While at Vermont Law School, Mr. Langer was Managing Editor and a member of the Vermont Law Review.

Kal7652394

11

# EXHIBIT B

*In re Cathode Ray Tube (CRT) Antitrust Litigation*
BERGER & MONTAGUE, P.C.
Reported Hours and Lodestar
Inception through October 31, 2016

| NAME | TOTAL HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| ATTORNEYS | | | |
| Ruthanne Gordon (P) | 31.1 | $720.00 | $22,392.00 |
| Ruthanne Gordon (P) | 7.6 | $760.00 | $5,776.00 |
| Ruthanne Gordon (P) | 42.4 | $770.00 | $32,648.00 |
| | | | |
| Candice Enders (P) | 2.7 | $525.00 | $1,417.50 |
| Candice Enders (P) | 6.5 | $615.00 | $3,997.50 |
| David A. Langer (A) | 31.8 | $590.00 | $18,762.00 |
| Caitlin G. Coslett (A) | .2 | $450.00 | $90.00 |
| **Attorney Totals**: | 122.3 | | $85,083.00 |
| | | | |
| NON-ATTORNEYS | | | |
| Anne Ebbesen (PL) | 3.5 | $300.00 | $1,050.00 |
| Anne Ebbesen (PL) | .3 | $310.00 | $93.00 |
| Yukiyo Kitagawa (PL) | 1 | $260.00 | $260.00 |
| **Non-Attorney Totals**: | 4.8 | | $1,403.00 |
| **TOTAL:** | **127.1** | | **$86,486.00** |

(P) Partner
(OC) Of Counsel
(A) Associate
(PL) Paralegal
(LC) Law Clerk

Kal. 7652411

# EXHIBIT C

*In re Cathode Ray Tube (CRT) Antitrust Litigation*
BERGER & MONTAGUE, P.C.
Reported Expenses Incurred on Behalf of DPPs
Inception through October 31, 2016

| CATEGORY | AMOUNT INCURRED |
|---|---:|
| Court Fees (filing, etc.) | $0.00 |
| Experts/Consultants | $0.00 |
| Federal Express | $57.86 |
| Transcripts (Hearing, Deposition, etc.) | $0.00 |
| Messenger Delivery | $0.00 |
| Photocopies – In House | $312.35 |
| Photocopies – Outside | $0.00 |
| Postage | $0.00 |
| Service of Process | $0.00 |
| Telephone/Telecopier | $6.04 |
| **TOTAL:** | **$376.25** |

Kal7652417