United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917<br><br>Case No. C-07-5944 JST |
| This Order Relates To:<br><br>*Alfred H. Siegel, as Trustee of the Circuit City Stores, Inc. Liquidating Trust v. Hitachi, Ltd., et al.*, No. 11-cv-05502;<br><br>*CompuCom Systems, Inc. v. Hitachi, Ltd., et al.*, No. 11-cv-06396;<br><br>*Costco Wholesale Corporation v. Hitachi, Ltd., et al.*, No. 11-cv-06397;<br><br>*Dell Inc. and Dell Products L.P., v. Hitachi, Ltd., et al*, No. 13-cv-02171;<br><br>*Electrograph Systems, Inc. and Electrograph Technologies Corp., v. Hitachi, Ltd., et al.*, No. 11-cv-01656;<br><br>*Interbond Corporation of America v. Hitachi, Ltd.*, et al., No. 11-cv-06275;<br><br>*Office Depot, Inc. v. Hitachi Ltd., et al.*, No. 11- cv-06276;<br><br>*P.C. Richard & Son Long Island Corp., Marta Cooperative of Am., Inc., ABC Appliance, Inc. v. Hitachi, Ltd., et al.*, No. 12-cv-02648;<br><br>*Schultze Agency Services, LLC, on behalf of Tweeter Opco, LLC and Tweeter Newco, LLC v. Hitachi, Ltd., et al.*, No. 12-cv-02649; | **ORDER DENYING SDI DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. STEPHAN HAGGARD**<br><br>**Re: ECF No. 3172** |

*Sears, Roebuck and Co. and Kmart Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 11-cv- 05514;

*Target Corp. v. Chunghwa Picture Tubes, Ltd.*, et al., No. 11-cv-05514;

*Tech Data Corp and Tech Data Product Management, Inc., v. Hitachi, Ltd., et al.*, No. 13- cv-00157; and

*ViewSonic Corp. v. Chunghwa Picture Tubes, Ltd., et al.*, No. 14-02510.

Defendants Samsung SDI Co., Ltd.; Samsung SDI America, Inc.; Samsung SDI (Malaysia) Sdn. Bhd.; Samsung SDI Mexico S.A. de C.V.; Samsung SDI Brasil Ltda.; Shenzen Samsung SDI Co., Ltd.; and Tianjin Samsung SDI Co., Ltd. (collectively "SDI" or "Samsung Defendants") now move the Court in limine to exclude the testimony of Dr. Stephen Haggard. ECF No. 3172. Plaintiffs oppose the motion, ECF No. 3140, and SDI has filed a reply, ECF No. 3520.

For the reasons set forth below, the Court will deny the motion.

## I. BACKGROUND

Dr. Haggard is a Ph.D. political economist who holds a tenured position at the Graduate School of International Relations and Pacific Studies at the University of California, San Diego. ECF No. 3243-8 at 5.[1] He is also the director of UCSD's graduate-level Korea-Pacific Program. Id. He specializes in in political and economic developments in the Asia-Pacific region and Korea in particular. Id. No party questions his expertise in these areas. Id.

Dr. Haggard's proposed testimony focuses on South Korean business groups known as *chaebol*. Id. He provides the following overview of the South Korean *chaebol*:

> The *chaebol* are a widely-studied form of corporate organization in South Korea and in developing countries: the family-controlled business group. The *chaebol* are fundamentally different in structure than the widely held multidivisional American firms and must be understood on their own terms. They constitute horizontally and vertically integrated groups under the control of a single family or extended family, with key "flagship" firms constituting the effective instruments of control of other firms within the group.

---

[1] Throughout, the Court refers to the page numbers affixed by the Court's electronic case filing system, and not the internal page numbers in a document.

2

Id. at 6. Dr. Haggard then identifies some of the mechanisms that *chaebol* use to control intra-group corporate entities, which include not only "direct equity holdings among group firms," but also "complex – and often opaque – pyramidal, cross- and circular shareholding arrangements," "the existence of free-standing group offices that direct strategy for the group as a whole and for particular firms within it; the use of 'flagship' firms within the group that are used as both holding companies and to direct particular production networks within the group; inter-locking directorates and the movement of top management between group headquarters and within closely-affiliated firms within the group; unusually high levels of intra-group transactions, including, but not limited to, trade of funds, assets, products, and services or granting or receiving debt guarantees; and cultural factors such as rigidly hierarchical forms of corporate organization and strong deference to superiors, including the group patriarch." Id. He further opines that the ability of *chaebol* to exercise effective control "has been aided and abetted by weak legal rules with respect to corporate governance," and that attempts to reform these rules in South Korea have been ineffective. Id. at 7. He states that the Samsung Defendants are "widely recognized as one of the leading *chaebol* in South Korea." Id.

The Samsung Defendants now move to exclude Dr. Haggard's testimony. They argue that (1) Dr. Haggard's opinions regarding ownership and control among the various Samsung entities are based on Korean law, and Dr. Haggard is not an expert in Korean law; and (2) whether the Samsung Defendants are part of or constitute a *chaebol* is not relevant to the question of whether Plaintiffs can establish the Royal Printing ownership/control exception to the direct purchaser rule. See Illinois Brick Co. v. Illinois, 431 U.S. 720, 746 (1977) (stating rule that indirect purchasers may not sue for the portion of overcharge passed on to them); Royal Printing Co. v. Kimberly Clark Corp., 621 F.2d 323, 325-28 (9th Cir. 1980) (describing exception).

This Court has previously described the Royal Printing exception as follows:

> [T]he Royal Printing exception is triggered wherever either the price fixer or the direct purchaser can "exercise restraint or direction over, dominate, regulate, . . . command, . . . guide or manage" the other such that a realistic possibility of suit by the direct purchaser is foreclosed.

ECF No. 4742 at 17 (In re Cathode Ray Tube (CRT) Antitrust Litig., No. 1917, 2016 WL 7805628, at *9 (N.D. Cal. Aug. 4, 2016)).

## II. ANALYSIS

### A. Dr. Haggard Does Not Rely Improperly On Korean Law

Pursuant to Rule 702 of the Federal Rules of Evidence, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" may offer expert testimony only if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The Samsung Defendants argue that Dr. Haggard is not qualified as an expert because "each of the opinions Dr. Haggard offers . . . is based on his interpretation and application of Korean law," but "Dr. Haggard . . . is not an expert on Korean law." ECF No. 3168-3 at 7.[2] Plaintiffs counter that Dr. Haggard "is not interpreting Korean law," but discussing corporate governance issues to which Korean law is merely ancillary. ECF No. 3407-4 at 18-19. Viewed in this light, they argue, "Professor Haggard's opinion on the Samsung Group's status as a *chaebol* is no more an application of Korean law than an observation that Microsoft is a U.S. corporation would be an application of U.S. law." Id. at 19.

Plaintiffs have the better argument. Defendants are correct that Dr. Haggard refers to Korean law a handful of times in his expert report, which is comprised of 113 paragraphs and spans 44 pages. But no fair reader of Dr. Haggard's report would conclude that his goal was to apply or interpret Korean law. The vast majority of his report is not concerned with that subject. Rather, he focuses on the various characteristics that define *chaebol* and the various measures of corporate control that *chaebol* use, and then seeks to determine whether the Samsung Defendants display these

---

[2] The Court refers throughout to the sealed versions of the moving and opposition papers.

characteristics or use these methods.[3]  These topics are well within his expertise, and his occasional, uncontroversial references to Korean law merely provide context for his opinions.

This case is analogous to Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998 (9th Cir. 2004).  In that case, an expert witness testified that the defendant insurers had "failed to comport with industry standards," and in so doing he made reference to his understanding of the requirements of California state insurance law.  Id. at 1016-17.  Defendants objected that the witness was invading the province of the court by improperly instructing the jury on the law.  Id.  The district court overruled the objection, and the Ninth Circuit affirmed.  The court noted that "a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible.  Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." Id. at 1017 (quoting Specht v. Jensen, 853 F.2d 805, 809 (10th Cir. 1988).

Similarly here, although Defendants describe the issue as one of qualifications, that would be true only if Dr. Haggard's opinion depended on the interpretation or application of Korean law.  But it does not – the jury here will apply the American law of antitrust, not the Korean law of corporate governance.  Thus, "[Dr. Haggard's] references to [Korean law] – none of which [are] directly at issue in the case – [are] ancillary to the ultimate issues" in the case, and therefore do not make his opinion inadmissible.  Id.

### B.    Dr. Haggard's Testimony Is Admissible On The Issue of Ownership And Control

The Samsung Defendants also contend that Dr. Haggard's testimony regarding the means by which, and the degree to which, the Samsung *chaebol* exercises control over its constituent parts is irrelevant.  They claim that "[t]he ownership-or-control exception to Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977), is straightforward:  either SDI owned a majority of SEC's [Samsung Electronics Co., Ltd.] stock or it did not; either SDI appointed a majority of SEC's board or it did

---

[3] Notably, there is no indication that the Samsung Defendants' status as a *chaebol* is disputed in this litigation.  See In re Cathode Ray Tube (CRT) Antitrust Litig., No. 1917, 2016 WL 7805628, at *20-25 (N.D. Cal. Aug. 4, 2016) (concluding that evidence that the Samsung Defendants' are part of a *chaebol* is sufficient to create a triable issue of material fact on the issue of control).

not." ECF No. 3168-3 at 8. Dr. Haggard's testimony touches on a variety of mechanisms of control, but he does not state that either of these two thresholds is satisfied.

The Samsung Defendants would have a strong argument if these were the only two ways for Plaintiffs to establish sufficient intra-corporate control to invoke the Royal Printing exception. As the Court previously made clear, however, these are not the only relevant metrics.

In a prior motion regarding standing and the direct purchaser rule, Defendants argued that the only factors that can be considered when deciding whether the Royal Printing exception applies are ownership, the ability to appoint a majority of board members, and the ability to set prices. ECF No. 4742 at 17. The Court rejected this proposed test as too narrow, noting that because the Ninth Circuit has explained that "control" means "to exercise restraint or direction over; dominate, regulate, or command," or to have "the power or authority to guide or manage," In re ATM Antitrust Litigation, 686 F.3d 741 (9th Cir. 2012), the test must be much broader. Accordingly, "*any* factor that is probative of that definition is potentially relevant to the analysis." ECF No. 4742 at 17. (emphasis added).

Here, Dr. Haggard identifies a variety of control mechanisms, explains why the evidence shows the Samsung Defendants use those mechanisms, and explains how those mechanisms enable them to exercise the kind of control that establishes the Royal Printing exception. Because the Samsung Defendants do not attempt to explain how any of the factors Dr. Haggard relies on would not be relevant to the jury's determination of control – beyond urging the Court to apply a test it has already rejected – the Court concludes that Dr. Haggard's testimony is relevant and admissible.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**CONCLUSION**

For the foregoing reasons, the Samsung Defendants' motion to exclude Dr. Haggard's testimony is denied.

**IT IS SO ORDERED.**

Dated: April 5, 2017

						                     _____
						                                    JON S. TIGAR
						                         United States District Judge