Guido Saveri (22349)
   *guido@saveri.com*
R. Alexander Saveri (173102)
   *rick@saveri.com*
Geoffrey C. Rushing (126910)
   *grushing@saveri.com*
Matthew D. Heaphy (227224)
   *mheaphy@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Lead Counsel for the
Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>*Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al.*, Case No. 14-CV-2058-JST. | **DIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH THE MITSUBISHI ELECTRIC DEFENDANTS**<br><br>Date:      June 8, 2017<br>Time:     2:00 p.m.<br>Judge:    Honorable Jon S. Tigar<br>Courtroom: 9 |

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

ISSUES TO BE DECIDED ......................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF RELEVANT FACTS ........................................................................ 2

    A. Factual and Procedural Background ................................................................... 2

    B. Terms of the Settlement ....................................................................................... 2

    C. Notice to the Class ............................................................................................... 2

    D. Reaction of Class Members ................................................................................. 3

III. ARGUMENT ................................................................................................................... 4

    A. Legal Standard for Settlement Approval. ............................................................ 4

    B. The Court-Approved Notice Program Satisfies Due Process and Has Been Fully Implemented. ............................................................................................. 5

        1. The Reaction of the Class Members to the Proposed Settlement Supports Final Approval ......................................................................................... 7

        2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation Militate Strongly in Favor of Final Approval ........................................ 7

        3. The Amount of the Settlement Militates Strongly in Favor of Final Approval ................................................................................................................. 9

        4. The Extent of Discovery Completed and the Stage of the Proceedings ....... 10

        5. The Experience and Views of Counsel ........................................................ 10

        6. The Settlement Is the Product of Arm's-Length Negotiation by Informed and Experienced Counsel ............................................................................ 11

        7. Balancing the Factors ................................................................................... 11

    D. The Plan of Allocation Is "Fair, Adequate and Reasonable" and Therefore Should Be Approved. ........................................................................................ 11

IV. CONCLUSION .............................................................................................................. 12

i

DIRECT PURCHASER PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH THE MITSUBISHI ELECTRIC DEFENDANTS; Master File No. 07-CV-5944-JST

# TABLE OF AUTHORITIES

**CASES**

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) .................................................................................... 10

*Chun-Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................................. 7

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ............................................................................................... 6

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................................................................. 6

*Georgino v. Sur la Table, Inc.*,
    No. CV 11-03522 MMM (JEMx), 2013 WL 12122430 (C.D. Cal. May 9, 2013) ............... 7

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988) ......................................................................................... 5, 6

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 07-CV-5944-JST, 2016 WL 3648478 (N.D. Cal. Jan. 28, 2016) ................................ 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 14-CV-2058-JST, 2015 WL 9266493 (N.D. Cal. Dec. 17. 2015) ......... 2, 4, 5, 7, 8, 9, 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 14-CV-2058-JST, 2017 WL 565003 (N.D. Cal. Feb. 13, 2017)  1, 3, 4, 5, 6, 8, 9, 10, 11, 12

*In re Citric Acid Antitrust Litig.*,
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) ............................................................................. 11

*In re Linerboard Antitrust Litig.*,
    321 F. Supp. 2d 619 (E.D. Pa. 2004) ................................................................................... 7

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................................... 8

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................... 7, 10, 11

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ......................................................................................... 8

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1982) ........................................................................................... 10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................. 7, 10

*Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................................... 6

*Pallas v. Pac. Bell*,
    No. C-89-2373 DLJ, 1999 WL 1209495 (N.D. Cal. July 13, 1999) .................................... 7

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................................................. 6

*Util. Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) ............................................................................................... 6

ii

DIRECT PURCHASER PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS ACTION
SETTLEMENT WITH THE MITSUBISHI ELECTRIC DEFENDANTS; Master File No. 07-CV-5944-JST

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .............................................................................................. 6

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................................. 8

**RULES**

Federal Rule of Civil Procedure 23 ..................................................................................... 1, 4, 5

**OTHER AUTHORITIES**

John M. Connor & Robert H. Lande,
    *Not Treble Damages: Cartel Recoveries Are Mostly Less Than Single Damages*, 100 Iowa
    L. Rev. 1997 (2015) ........................................................................................................... 9

Procedural Guidance for Class Action Settlements,
    U.S.D.C., N.D. Cal. (undated),
    http://www.cand.uscourts.gov/ClassActionSettlementGuidance ............................. 2, 3, 4, 10

iii

DIRECT PURCHASER PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH THE MITSUBISHI ELECTRIC DEFENDANTS; Master File No. 07-CV-5944-JST

**ISSUES TO BE DECIDED**

1. Whether the Settlement between Direct Purchaser Plaintiffs and the Mitsubishi Electric Defendants is fair, adequate and reasonable, and should be finally approved.

2. Whether the plan of allocation is fair, adequate and reasonable, and should be finally approved.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's Order Granting Preliminary Approval of Class Action Settlement with Mitsubishi Electric Defendants (*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058-JST, 2017 WL 565003 (N.D. Cal. Feb. 13, 2017) ("Preliminary Approval Order")), Direct Purchaser Plaintiffs ("Plaintiffs" or "DPPs") submit this memorandum in support of final approval of the class action settlement ("Settlement") with defendants Mitsubishi Electric Corporation; Mitsubishi Electric US, Inc. (formerly known as Mitsubishi Electric & Electronics USA, Inc.); and Mitsubishi Electric Visual Solutions America, Inc. (formerly known as Mitsubishi Digital Electronics America, Inc.) (collectively, the "Mitsubishi Electric Defendants").

As explained in Plaintiffs' motion for preliminary approval of the Settlement, ECF No. 5099 ("Motion"), the $75 million Settlement is an excellent recovery for the class and should be finally approved as fair, adequate and reasonable. The factors described in the Motion continue to support final approval of the Settlement.

In addition, the reaction of the class to the Settlement strongly supports final approval. Notice has been provided to the class pursuant to the Preliminary Approval Order and there are no objections to the Settlement or the plan of allocation on any ground. Nor has any class member (or anyone else) filed a notice of intent to appear at the Final Approval Hearing.

Plaintiffs therefore respectfully request that the Court grant final approval of the Settlement on the grounds that it is fair, adequate and reasonable. Plaintiffs also ask that the Court finally approve the plan of allocation for the Settlement proceeds.

This Memorandum is supported by the accompanying Declaration of R. Alexander Saveri,

1

the Declaration of Rachel Christman, the Proposed Order, and the Proposed Final Judgment of Dismissal with Prejudice as to the Mitsubishi Electric Defendants.

## II. STATEMENT OF RELEVANT FACTS

### A. Factual and Procedural Background

The factual and procedural background of this case is well known to the Court and is unchanged from the background set forth in the Motion, ECF No. 5099 at 3–4. The background of the case is also set forth in Plaintiffs' Second Application for Attorneys' Fees and Expenses and Incentive Awards, ECF No. 5133 at 5–12 ("Fee and Expense Application").[1]

### B. Terms of the Settlement

The material terms of the Settlement with the Mitsubishi Electric Defendants, including a cash payment to the class of $75 million, are detailed in the Motion. *See* ECF No. 5099 at 6. The release is limited to the claims asserted in the Second Amended Complaint. *See* ECF No. 5099-1, Ex. 1 ¶ 15; *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058-JST, 2015 WL 9266493, at *3 n.8 (N.D. Cal. Dec. 17. 2015) ("Thomson Final Approval Order").

### C. Notice to the Class

As with previous settlements, Plaintiffs hired Gilardi & Co, LLC ("Gilardi") to serve as the Settlement Administrator. Christman Decl. ¶ 1. As required by Preliminary Approval Order, on February 27, 2017, Gilardi sent the court-approved notice to 19,609 unique names and addresses on the updated class list via first class mail, ECF No. 5126 ¶ 5, and to 1,348 addresses on the updated class list via electronic mail. Christman Decl. ¶ 4.[2]

---

[1] Plaintiffs refer to the case history and background facts in the Fee and Expense Application because it was filed before this Memorandum, on March 30, 2017. *See* Procedural Guidance for Class Action Settlements, Final Approval ¶ 2, U.S.D.C., N.D. Cal. (undated), http://www.cand.uscourts.gov/ClassActionSettlementGuidance ("*Guidelines*") ("If the plaintiffs choose to file two separate motions, they should not repeat the case history and background facts in both motions. The motion for attorneys' fees should refer to the history and facts set out in the motion for final approval.").

[2] Plaintiffs previously indicated that there were 3,626 email notices sent. However, the list contained 1,449 duplicate addresses. It also contained 834 email addresses that were defective or otherwise undeliverable. For this reason only 1,343 email notices were sent. Christman Decl. ¶ 4.

On February 28, 2017, the Summary Notice was published in the *New York Times* and the *Wall Street Journal*. ECF No. 5126 ¶ 11, Exs. B, C. The deadline for publication of the Summary Notice was March 3, 2017. Preliminary Approval Order, 2017 WL 565003, at *7.

As the Court ordered, www.CRTDirectPurchaserAntitrustSettlement.com, the case-dedicated website, was updated on February 27, 2017, to contain copies of the notice, the claim form, the motion for preliminary approval of the Settlement, the proposed order granting preliminary approval, the Court's Order Granting Preliminary Approval of Class Action Settlement with Mitsubishi Electric Defendants, and the Settlement Agreement. ECF No. 5126 ¶ 8. At the same time, Gilardi updated the "Home," "Frequently Asked Questions," "Dates to Remember" and "Contact Us" pages of the website with relevant deadlines and information, including the date of the hearings on final approval of the Settlement and on Plaintiffs' Fee and Expense Application. *Id.* ¶ 9.

Plaintiffs filed their Fee and Expense Application on March 30, 2017. ECF No. 5133. As required by the Preliminary Approval Order, 2017 WL 565003, at *7, on the same day the application and all supporting materials were posted to the case-dedicated website. *See* ECF No. 5135 ¶ 3.

As of May 18, 2017, 5,185 of the class notices sent via first-class mail were returned as undeliverable. Gilardi has attempted to locate updated addresses for the 5,128 of these records which have addresses in the United States by processing the names and addresses through the National Change of Address Database. Gilardi located updated addresses for and re-mailed 170 of these records. Christman Decl. ¶ 3. Similarly, 66 of the class notices sent via electronic mail were bounced back as undeliverable. *Id.* ¶ 4. *See also Guidelines*, Final Approval ¶ 1 (requiring information about the number of undelivered notices).

### D. Reaction of Class Members

The reaction of the class to the Settlement has been positive. The deadline for objecting to the Settlement and filing of notices of intent to appear at the Final Approval Hearing was April 20, 2017. ECF No. 5126, Ex. A at 3. That was also the deadline to comment on or object to Plaintiffs' Fee and Expense Application. *Id.*, Ex. A at 4. Plaintiffs' counsel are unaware of any objections to

3
DIRECT PURCHASER PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS ACTION
SETTLEMENT WITH THE MITSUBISHI ELECTRIC DEFENDANTS; Master File No. 07-CV-5944-JST

the Settlement, the plan of allocation or Plaintiffs' Fee and Expense Application. Saveri Decl. ¶ 2; Christman Decl. ¶ 5.

Class members were required to mail any objections to the Settlement to the Court which would then serve the objections on all parties. *See* Preliminary Approval Order, 2017 WL 565003, at *5 [ECF No. 5116] ("First, any objections to the settlement should only be mailed to the Court. Once received by the Court, the Clerk of the Court will file the objections on the Court's electronic filing system."); ECF No. 5126, Ex. A at 3 (objection "must be filed with the Court or postmarked no later than April 20, 2017 and mailed to" the Court); *Guidelines*, Preliminary Approval ¶ 5. No objections have been filed on the Court's electronic filing system. *See* ECF Nos. 5117–5162. No notices of intent to appear at the Final Approval Hearing have been filed on the Court's electronic filing system. *Id.*

The notices informed class members that previously submitted claims would apply to the Settlement, but that they could submit a new, amended, or supplemental claim if they wished. ECF No. 5126, Ex. A at 3. The deadline for such claims is May 29, 2017. *See* Preliminary Approval Order, 2017 WL 565003, at *7. As of May 18, 2017, over 300 class members have submitted new, amended, or supplemental claims. Christman Decl. ¶ 6; *Guidelines*, Final Approval ¶ 1 (requiring information about the number of class members who submitted valid claims). In total, class members have submitted over 3,000 claims. Christman Decl. ¶ 6.

### III. ARGUMENT

#### A. Legal Standard for Settlement Approval.

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Before finally approving a settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.*, subdiv. (e)(1); *see also* Thomson Final Approval Order, 2015 WL 9266493, at *3. Following notice, "the court may approve [the settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In assessing a settlement proposal, the district court must balance a number of factors:

the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration

> of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988); Thomson Final Approval Order, 2015 WL 9266493, at *3.

The Court has already determined that many of the relevant factors support approval of the Settlement in its Preliminary Approval Order. Events since the Preliminary Approval Order—namely the provision of class notice and the positive response of the class to the notice—also support final approval of the Settlement.

> **B.    The Court-Approved Notice Program Satisfies Due Process and Has Been Fully Implemented.**

As the Court has noted, notice of a class action settlement must be:

> [T]he best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; . . . and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); Preliminary Approval Order, 2017 WL 565003, at *5.

The Court has already found that the notices fulfilled these requirements. *Id.* "Both the Long Form Notice and Summary Notice 'clearly and concisely state in plain, easily understood language' the key elements of the Settlement and the Class members rights under it." *Id.* The Court also approved the notice plan, and, as explained above, Plaintiffs have implemented the notice plan in every respect. As the Court also noted, the notice plan was substantially identical to the plans approved and implemented with regard to all of the previous DPP settlements. *See id.* It is clear that the notice provided to class members regarding the Settlement satisfies Rule 23 and due process.

**C.     The Settlement Is "Fair, Adequate, and Reasonable" and Should Be Granted Final Approval.**

As Plaintiffs explained in the Motion, and as the Court has noted, the standards for approval of class action settlements are well-established. Motion at 7–8; Preliminary Approval Order, 2017 WL 565003, at *3. First, the law favors the compromise and settlement of class action suits. *See, e.g.*, *Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]here is an overriding public interest in settling and quieting litigation" and this is "particularly true in class action suits . . . ." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

Second, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is 'exposed to the litigants, and their strategies, positions and proof.'" *Hanlon*, 150 F.3d at 1026 (quoting *Officers for Justice*, 688 F.2d at 626). In exercising such discretion, courts should give

> proper deference to the private consensual decision of the parties. . . . "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

*Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625). In evaluating a proposed class action settlement, a district court balances the *Hanlon* factors specified *supra*, Section III.A. *See also Officers for Justice*, 688 F.2d at 625; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

The Court has already considered most of these factors in its Preliminary Approval Order and concluded that they favor approval of the Settlement. 2017 WL 565003, at *4–5. The Court's conclusions remain correct and Plaintiffs will not therefore repeat at length the arguments and information contained in the Motion supporting the Court's order.

### 1. The Reaction of the Class Members to the Proposed Settlement Supports Final Approval

The class notices explained the material provisions of the Settlement and class members' rights in relation to it. As the Court has noted, it is well-established that where, as here, there are no objections to the Settlement, this factor supports final approval. Thompson Final Approval Order, 2015 WL 9266493, at *7; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("the lack of objection of the Class Members favors approval of the Settlement"); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). *See also Pallas v. Pac. Bell*, No. C-89-2373 DLJ, 1999 WL 1209495, at *8 (N.D. Cal. July 13, 1999) ("The small percentage—less than 1%—of persons raising objections is a factor weighing in favor of approval of the settlement."); *Georgino v. Sur la Table, Inc.*, No. CV 11-03522 MMM (JEMx), 2013 WL 12122430, at *14 (C.D. Cal. May 9, 2013) ("the absence of objections indicate that class members overwhelmingly favor the proposed settlement and find it fair").

As the Court has noted, the lack of objections is especially significant where, as here, the class contains many large and sophisticated business entities with substantial claims. *See* Thomson Final Approval Order, 2015 WL 9266493, at *7; *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004). Saveri Decl. ¶ 3.

Finally, many class members have submitted claims. As noted, Gilardi has received over 300 new, amended, or supplemental claims in response to the most recent notice. The total number of claims exceeds 3,000. Christman Decl. ¶ 6.

### 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation Militate Strongly in Favor of Final Approval

Plaintiffs' case against the Mitsubishi Electric Defendants presents substantial risks, including the significant possibility that they would recover nothing. This factor strongly favors final approval of the Settlement. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) (approval of a class settlement is appropriate when "there are significant barriers

1   plaintiffs must overcome in making their case"); Thomson Final Approval Order, 2015 WL

2   9266493, *4 (same).

3         As Plaintiffs explained in the Motion and their Fee and Expense Application, and as the

4   Court has noted, there are a number of contested issues that could preclude or drastically reduce

5   any recovery against the Mitsubishi Electric Defendants. Motion at 10–11; Fee and Expense

6   Application at 15–18; Preliminary Approval Order, 2017 WL 565003, at *4. First, Plaintiffs would

7   bear the burden of proving the Mitsubishi Electric Defendants' participation in the alleged

8   conspiracy. While Plaintiffs believe there is evidence to support a verdict, the Mitsubishi Electric

9   Defendants have strong arguments to the contrary, including the facts that they never attended a

10  "glass meeting"; that they ceased manufacture of CPTs in 1998 and CDTs in 2004; that most of the

11  CDTs they made used a different technology and were marketed to different customers than those

12  of the other alleged conspirators; and that their market share was very small—i.e., substantially less

13  than 5%—and that they were therefore always a "bit" player in the market with little incentive to

14  join the conspiracy. Saveri Decl. ¶ 4. The risk, therefore, that the Mitsubishi Electric Defendants

15  could prevail at trial is real. This would result in no recovery. This risk alone justifies approval of

16  the Settlement.

17        Second, even if Plaintiffs prove that the Mitsubishi Electric Defendants were conspirators,

18  the jury may not accept their $876 million damage claim. As the Court has noted, the jury in the

19  *LCD* case awarded one tenth of the amount plaintiffs claimed. Preliminary Approval Order, 2017

20  WL 565003, at *4; Motion at 10–11. *See also, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396

21  F.3d 96, 118 (2d Cir. 2005) ("'Indeed, the history of antitrust litigation is replete with cases in

22  which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only

23  negligible damages, at trial, or on appeal.'" (quoting *In re NASDAQ Mkt.-Makers Antitrust Litig.*,

24  187 F.R.D. 465, 476 (S.D.N.Y. 1998))); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 283

25  (S.D.N.Y. 1999).

26        Finally, as the Court has noted, it is certain that further litigation will entail significant

27  expense and delay. Preliminary Approval Order, 2017 WL 565003, at *4; Motion at 11. The

28

Mitsubishi Electric Defendants are certain to appeal any judgment Plaintiffs obtain, delaying any benefits from a trial for years as well as creating additional risks.

### 3. The Amount of the Settlement Militates Strongly in Favor of Final Approval

The Settlement amount is an excellent recovery and strongly favors final approval, especially in light of the substantial risks posed by trial. First, the $75 million payment doubles or nearly doubles the damages attributable to the Mitsubishi Electric Defendants' United States sales. The U.S. sales of the Mitsubishi Electric Defendants during the class period were always less than 5% of the market, sometimes substantially so. The $75 million payment exceeds 5% of Plaintiffs' $876 million damage estimate ($43.8 million) by more than $30 million. If Mitsubishi had 4% of the relevant sales, it would account for approximately $35 million in damages, less than half of the settlement amount. *See* Saveri Decl. ¶ 5. *See also* Fee and Expense Application at 15 n.13. This fact alone sets the Settlement apart. In the vast majority of antitrust class action settlements, the payment is a fraction of the single damages attributable to sales of the settling defendant. Saveri Decl. ¶ 6; *see also* John M. Connor & Robert H. Lande, *Not Treble Damages: Cartel Recoveries Are Mostly Less Than Single Damages*, 100 Iowa L. Rev. 1997, 1998 (2015) (cases generally settle for less than single damages).

Second, the Settlement also more than doubles the previous largest settlement—$33 million from Samsung SDI.

Third, as Plaintiffs explained in the Motion, if the Court approves the Settlement, it will represent 35% of Plaintiffs' total recovery herein, and that total recovery—$212.2 million—will represent over 24% of Plaintiffs' single damages. As the Court noted in its Preliminary Approval Order, it has characterized a total recovery of 20% as "without question a good recovery and firmly in line with the recoveries in other case." Preliminary Approval Order, 2017 WL 565003, at *4.[3]

For these reasons, the amount of the Settlement supports final approval. As the Court has noted, Thomson Final Approval Order, 2015 WL 9266493, at *5, "it is well-settled law that a

---

[3] In the Preliminary Approval Order, the Court stated that the $75 million settlement payment—rather than the total class recovery—equals 24% of single damages. 2017 WL 565003, at *4.

9

DIRECT PURCHASER PLAINTIFFS' MEMORANDUM ISO FINAL APPROVAL OF CLASS ACTION
SETTLEMENT WITH THE MITSUBISHI ELECTRIC DEFENDANTS; Master File No. 07-CV-5944-JST

proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecomms.*, 221 F.R.D. at 527 (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1982)).[4]

### 4. The Extent of Discovery Completed and the Stage of the Proceedings

As the Court is well aware, the case has been intensively litigated in the ten years since the first cases were filed. Motion at 3–4, 11. "The parties have conducted extensive discovery in this case" which "has allowed the parties to gather 'sufficient information to make an informed decision about the settlement.'" Preliminary Approval Order, 2017 WL 565003, at *4; *see also* Thomson Final Approval Order, 2015 WL 9266493, at *6; *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-5944-JST, 2016 WL 3648478, at *8 (N.D. Cal. Jan. 28, 2016) ("IPP Final Approval Order") (significant discovery completed). Virtually every material legal issue has also been addressed in motion practice. There is no question that counsel were fully informed about the strengths and weaknesses of the case when the Settlement was negotiated. This factor therefore favors final approval of the settlement. *See Omnivision*, 559 F. Supp. 2d at 1042.

### 5. The Experience and Views of Counsel

As noted, Counsel's judgment in favor of the Settlement was an informed one. *See* ECF No. 5099 at 11. "'The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" *Omnivision*, 559 F. Supp. 2d at 1043 (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Where, as here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable," *Omnivision*, 559 F. Supp. 2d at 1043, its experience and views of the Settlement "weigh[] in favor of its approval." Preliminary Approval Order, 2017 WL 565003, at *4.

---

[4] The Northern District *Guidelines* (Preliminary Approval ¶ 1(d)) require Plaintiffs to inform the Court of class members' likely recovery. The *pro rata* distribution per plaintiff will depend on the size of each class member's claim and the total amount of claims submitted, as well as the Court's award of attorneys' fees and expenses and incentive awards. Plaintiffs believe that class members with the largest claims will receive substantial sums—e.g., hundreds of thousands or millions of dollars—from this Settlement. Saveri Decl. ¶ 7.

### 6. The Settlement Is the Product of Arm's-Length Negotiation by Informed and Experienced Counsel

Finally, as the Court has already found, the Settlement was the product of hard fought, arm's-length negotiation by experienced and well-informed counsel before an experienced mediator. This factor also supports final approval. *See* Preliminary Approval Order, 2017 WL 565003, at *4.

### 7. Balancing the Factors

Considered together, these factors compel the conclusion that the Settlement should be finally approved. All favor approval.

## D. The Plan of Allocation Is "Fair, Adequate and Reasonable" and Therefore Should Be Approved.

The class notice outlined the following proposed plan for allocating the settlement proceeds:

> In the future, each Class member's *pro rata* share of the Mitsubishi Electric and Thomson/TDA Settlement Funds will be determined by computing each valid claimant's total CRT Product purchases divided by the total valid CRT Product purchases claimed. This percentage is multiplied by the net Settlement Fund (total of the Mitsubishi Electric and Thomson/TDA Settlement Funds minus all costs, attorneys' fees, and expenses) to determine each claimant's *pro rata* share. To determine your CRT Product purchases, CRT tubes (CPTs and CDTs) are calculated at full value while CRT televisions are valued at 50% and CRT computer monitors are valued at 75%.

ECF No. 5126, Ex. A at 3.

A plan of allocation of class settlement funds is subject to the "fair, reasonable and adequate" standard that applies to approval of class settlements. *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). A plan of allocation that compensates class members based on the extent of their injuries or the strength of their claims is generally considered reasonable. *Omnivision*, 559 F. Supp. 2d at 1045.

Here, the proposed distribution will be on a *pro rata* basis, with no class member being favored over others, and is identical to plans of allocation the Court has approved with regard to the previous settlements. *See* Preliminary Approval Order, 2017 WL 565003, at *6. This type of distribution, as set forth in the Motion, has frequently been determined to be fair, adequate, and

11

1  reasonable. *See* ECF No. 5099 at 14. As with the previous settlements, there were no objections to
2  the plan of allocation. *See* ECF Nos. 5117–5162.
3        As explained in the Motion, members of previous settlement classes have submitted claims
4  in connection with the plan of allocation for the previous settlements. ECF No. 5099 at 14–15. In
5  its order preliminarily approving the plan of allocation, the Court concluded that the "consolidation
6  of payment distribution should reduce administrative costs without negatively impacting the DPP
7  Class." Preliminary Approval Order, 2017 WL 565003, at *6. Plaintiffs therefore respectfully
8  submit that the Court should finally approve the plan of allocation for the Settlement, to be
9  distributed with the funds from previous settlements.

10 **IV.   CONCLUSION**

11       For the reasons set forth herein, Plaintiffs respectfully submit that the Court should enter an
12 order granting final approval of the Settlement as well as the plan of allocation and final judgment
13 of dismissal with prejudice as to the Mitsubishi Electric Defendants.

14 Dated: May 18, 2017                           Respectfully submitted,

/s/ *R. Alexander Saveri*
Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Matthew D. Heaphy (227224)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*