UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917<br>Case No. C-07-5944 JST |
| This Order Relates To:<br><br>ALL DIRECT PURCHASER PLAINTIFFS | **ORDER ON ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS** |

Now before the Court is a motion for approval of attorneys' fees, reimbursement of expenses, and incentive awards for the Direct Purchaser Plaintiff ("DPP") class in connection with settlements reached with the Mitsubishi Electric and Thomson Defendants. See ECF No. 5133. The DPPs seek a combined award of attorneys' fees in the amount of $25,425,000 plus $1,053,960.2 in expenses.[1] They also seek incentive awards of $15,000 to each class representative. The Court held oral argument on this motion on June 8, 2017.

The Court has already granted final approval of the settlements. See ECF No 5168. After careful consideration and good cause appearing, the Court will grant the motion.

**I.   BACKGROUND**

The parties are familiar with the facts of this case, and the Court has already summarized the relevant facts as to this settlement in a prior order. See id.

**II.  LEGAL STANDARD**

"While attorneys' fees and costs may be awarded in a certified class action where so

---

[1] Class Counsel already paid $2,867,395.32 in expenses directly from the Settlement Fund, as previously authorized by the Court. ECF Nos. 1506, 1507, 1833. In this motion, Class Counsel seek reimbursement of the balance of $1,927,392.12 that they advanced themselves.

1

1  authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent
2  obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have
3  already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th
4  Cir. 2011). "Where a settlement produces a common fund for the benefit of the entire class," as
5  here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery
6  method" to determine the reasonableness of attorneys' fees. Id. at 942. "Because the benefit to
7  the class is easily quantified in common-fund settlements," the Ninth Circuit permits district
8  courts "to award attorneys a percentage of the common fund in lieu of the often more time-
9  consuming task of calculating the lodestar." Id. "Applying this calculation method, courts [in the
10 Ninth Circuit] typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award,
11 providing adequate explanation in the record of any 'special circumstances' justifying a
12 departure." Id. (citing Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311
13 (9th Cir. 1990)). However, the benchmark should be adjusted when the percentage recovery
14 would be "either too small or too large in light of the hours devoted to the case or other relevant
15 factors." Six (6) Mexican Workers, 904 F.2d at 1311. "[W]here awarding 25% of a 'megafund'
16 would yield windfall profits for class counsel in light of the hours spent on the case, courts should
17 adjust the benchmark percentage or employ the lodestar method instead." Id.; see also In re
18 Bluetooth Headset Products Liab. Litig., 654 F.3d at 942 (citing Six (6) Mexican Workers, 904
19 F.2d at 1311).

20 An attorney is entitled to "recover as part of the award of attorney's fees those out-of-
21 pocket expenses that would normally be charged to a fee paying client." Harris v. Marhoefer, 24
22 F.3d 16, 19 (9th Cir. 1994) (citation omitted). An attorney seeking an expense award should file
23 an itemized list of her expenses by category, listing the total amount advanced for each category,
24 allowing the Court to assess whether the expenses are reasonable. Wren v. RGIS Inventory
25 Specialists, No. 06-cv-05778-JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011),
26 supplemented, No. 06-cv-05778-JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

27 **III.   DISCUSSION**
28         The Court has already granted the DPPs' motion for attorneys' fees and expenses related to

their settlements with Chunghwa, Philips, Panasonic, LG, Toshiba, Hitachi, and Samsung SDI. In re: Cathode Ray Tube (Crt) Antitrust Litig., No. C-07-5944 JST, 2016 WL 183285, at *1 (N.D. Cal. Jan. 14, 2016) ("First Fee Order"). For largely the same reasons articulated in the First Fee Order, the Court concludes that the DPPs are entitled to fees totaling 30% of the settlement funds as well as their expenses.

### A.     Attorneys' Fees

The DPPs move the Court for $25,425,000 in aggregate attorneys' fees, split among nineteen (19) distinct law firms. ECF No. 5133 at 1. The requested fee represents 30 percent of the overall $84,750,000 million settlement fund. Id.

The "benchmark" percentage for an award of attorneys' fees in a class action in this circuit is 25 percent. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d at 942. But in a "megafund" settlement of this size, resort to the Ninth Circuit's 25 percent "benchmark" is of little use in determining an appropriate attorney's fee. See In re Washington Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1297 (9th Cir. 1994) ("Because a court must consider the fund's size in light of the circumstances of the particular case, we agree with the district court that the 25 percent 'benchmark' is of little assistance in a case such as this."). Therefore, the Court looks to the factors identified by the Ninth Circuit as helpful to determining a fee award:

> the extent to which class counsel "achieved exceptional results for the class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash settlement fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis. In addition, a court may cross-check its percentage-of-recovery figure against a lodestar calculation.

In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 954–55 (9th Cir. 2015) (internal citations omitted). Here, these factors support an award of 30 percent.

### 1.     Result for the Class

The DPPs obtained a strong result in their settlement with the Mitsubishi and Thomson Defendants. When added to the DPPs prior settlements, the $75 million dollar payment here brings the settlement total to $212,200,000, nearly 25% of the single damages estimated by the

DPPs' expert. ECF No. 5133 at 21. The $75 million payment considered by itself is also substantial, particularly given that 1) it exceeds the single damages attributable to the Mitsubishi Defendants and 2) the Thomson Defendants remain in poor financial condition. Id.

### 2. Risks of Litigation

This litigation was risky in several ways. There was a real risk that class certification could have been denied, that the DPPs would not have been able to establish liability, and that a jury would award damages below what the DPPs sought. For example, Defendants, including Mitsubishi and Thomson, have argued vigorously that they did not participate in the CRT conspiracy. See, e.g, ECF No. 5128. Had Defendants prevailed in this argument, the DPPs would have recovered nothing. With regard to damages, the risk is evident from the fact that, in the related LCD litigation, a jury awarded $87 million even though Plaintiffs had argued for damages of $870 million. ECF No. 5133-1 ¶ 56. Simply put, this was a contested and well-litigated case where a substantial jury award was by no means assured.

### 3. Burdens Experienced by Class Counsel

As the Court noted in the First Fee Order, "counsel here has expended far more work . . . and taken upon themselves more risk—spanning eight years of litigation—than is present in a normal class action suit." 2016 WL 183285, at *2. The same is true here and favors an upward departure from the benchmark. See Vizcaino, 290 F.3d at 1047-1050 (awarding a fee in excess of 25 percent for high risks, effort, sophisticated work, and good results obtained by counsel); see also In re Pac. Enters. Sec. Litig., 47 F.3d 373, 379 (9th Cir. 1995) (citing Six (6) Mexican Workers for the proposition that 25 percent is the benchmark in this circuit yet affirming an award of fees for 33 percent due, in part, to substantial risk undertaken by counsel).

### 4. Contingency Fee Arrangement

Class counsel litigated this case on a contingency basis for nearly a decade. This factor also weighs in favor of an upward adjustment. See Vizcaino, 290 F.3d 1043, 1050 (9th Cir. 2002) (finding it relevant that "counsel's representation of the class—on a contingency basis—extended over eleven years, entailed hundreds of thousands of dollars of expense, and required counsel to forgo significant other work").

4

### 5. Reaction of the Class

Also relevant is the fact that no class member has objected to the proposed settlement or proposed fee award. ECF No. 4114; see Ching v. Siemens Indus., Inc., No. 11-CV-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014).

### 6. Lodestar Check

Lastly, and most importantly, the Court has cross-checked this award against the DPPs' lodestar. The Court has reviewed the documentation provided by the DPPs and agrees with their calculation of an anticipated lodestar for this fee application of $11,812,004.95.[2] See ECF No. 5133-1 at 3. The DPPs' first fee application resulted in a lodestar of $43,335,517.50, for a total of $55,147,522.45. Id.

In their motion, the DPPs say the multiplier is 1.154, which they describe as "very low." ECF No. 5133 at 25. But that is the multiplier for the overall DPP lodestar (from the first and second fee applications combined) compared with the overall DPP settlement, not the multiplier for this particular motion. The multiplier for *this* motion is 2.152 ─ $25,425,000.00 divided by $11,812,004.95. That is double the number the DPPs tout in their motion and two and a half times the multiplier for the first fee application. Although the DPPs' calculations could have been more transparent, the 2.152 multiplier still confirms the reasonableness of the award. Cf. In re High-Tech Emp. Antitrust Litig., No. 11-CV-02509-LHK, 2015 WL 5158730, at *10-11 (N.D. Cal. Sept. 2, 2015) (approving attorneys' fees for less than 30 percent but with a lodestar multiplier of 2.5); see also Vizcaino, 290 F.3d at 1052-54 (conducing a survey of attorneys' fees in "megafund" cases and finding that 83 percent of such cases award a multiplier from 1.0-4.0).

### 7. Similar Awards

Finally the Court notes that an award of fees of this size is consistent with the First Fee Order issued by this Court, as well as with decisions by Judge Illston in a similar multidistrict litigation case and awards by other judges in this district. See In re TFT-LCD (Flat Panel) Antitrust Litig. ("LCD"), No. MDL 3:07-MD-1827 SI, 2011 WL 7575003, at *1 (N.D. Cal. Dec.

---

[2] A sampling of DPPs time records demonstrated careful and thorough time keeping practices.

27, 2011) (30 percent); <u>LCD II</u>, No. M 07-1827 SI, 2013 WL 149692, at *1-2 (N.D. Cal. Jan. 14, 2013) (30 percent); <u>LCD III</u>, No. M 07-1827 SI, 2013 WL 1365900, at *7-8 (N.D. Cal. Apr. 3, 2013), <u>appeal dismissed</u> (July 12, 2013), <u>appeal dismissed</u> (June 10, 2014), <u>appeal dismissed</u> (June 12, 2014), <u>appeal dismissed</u> (June 13, 2014) (28.6 percent); <u>In re: Static Random Access Memory (SRAM) Antitrust Litigation</u>, Case No. 07-md-1819-CW (N.D. Cal. June 30, 2011) (Dkt. No. 1370) (30 percent); <u>In re Dynamic Random Access Memory (DRAM) Antitrust Litig.</u>, M-02-1486, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007), at *1 (25 percent); <u>In re Optical Disk Drive Antitrust Litig.</u>, Case No. 10-md-2143 RS (N.D. Cal. July 23, 2015) (Dkt. No. 1658) (30 percent).

***

In sum, the Court concludes that an upward departure to 30% of the settlement amount is warranted here and awards counsel $25,425,000 in attorneys' fees.

### B.  Expenses

DPPs request a total of $1,053,960.26 in reimbursable expenses. ECF No. 5133 at 27. The aggregate itemized claimed costs are as follows:

1. Document management system and database costs of $48,616.25;
2. Payments to special masters of $78,413.66;
3. Payments to translation services of $32,511.71;
4. Payments to claims administrator of $112,011.33;
5. Court filing fees and costs of $1,010.00;
6. Payments to experts of $732,650.80;
7. Federal Express costs of $1,044.67;
8. Transcript costs of $13,559.00;
9. Messenger and delivery costs of $18.34;
10. In-house copy charges (capped at 20 cents per page) of $29,515.79;
11. Professional copy charges of $1,331.30;
12. Postage charges of $366.17;
13. Service of process charges of $397.75; and
14. Telephone and facsimile charges of $2,513.49.

ECF No. 5133-1 ¶ 10, Ex. E.

The Court finds these expenses to be fair and reasonable, and grants the motion for the reimbursement in the amount of $1,053,960.26.

### C.  Incentive Awards

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs,

are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). "Incentive awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. W. Pub. Corp., 563 F.3d 948, 958-59 (9th Cir.2009). Further,

> [t]he district court must evaluate [incentive] awards individually, using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation.

Staton, 327 F.3d at 977 (citation and internal quotations and alterations omitted). District courts must scrutinize "all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1165 (9th Cir. 2013); see also id. at 1663; Staton, 327 F.3d at 977; Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 334-35 (N.D. Cal. Oct. 2, 2014).

Here, DPPs already obtained $25,000 incentive awards for each of the class representatives named in DPPs' second amended class action complaint as a part of the first fee application. ECF No. 4299. They now seek an additional $15,000 for each class representative.

As the Court explained in its prior order granting incentive awards, in this Circuit, an incentive award of $5,000 is presumptively reasonable, and an award of $25,000 or even $10,000 is considered "quite high." See Dyer, 303 F.R.D. at 335 (citing Harris v. Vector Mktg. Corp., No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)). The Court granted $25,000 awards because the class representatives 1) took the first step of filing this case, 2) obtained a substantial settlement for the class, 3) expended extensive time and effort in pursuing the litigation, and 4) risked retaliation within the CRT industry. ECF No. 4299. Moreover, the Court noted that awards constituted a small percentage of the overall class recovery and that they were consistent with other similar cases in this district. Id. at 5-6 (citing cases).

The Court is not convinced that the class representatives deserve an over 50% increase in their incentive awards solely for their additional contributions related to the cases against the

7

Mitsubishi and Thomson Defendants. Although the class representatives likely performed some additional work beyond that described in the first fee application, the amount of the supplemental request seems excessive. For example, DPPs note that the class representatives spent time responding to the Mitsubishi and Thomson Defendants' discovery requests, but there was likely substantial overlap with their prior discovery responses to the other Defendants. The same is true for deposition preparation, keeping abreast of the major filings in the case, and the other tasks DPPs describe in their motion. ECF No. 5133 at 29. Therefore, the Court will award each named representative an additional $5,000, which brings their total to $30,000 each. This is well in line with awards in similar cases. ECF No. 4299 at 5-6 (citing cases).

## IV.  CONCLUSION

The Court hereby grants in full the request for attorneys' fees in the amount of $25,425,000, and for expenses in the amount of $1,053,960.26. The Court also grants an additional $5,000 incentive award to each of the eight class representatives.

IT IS SO ORDERED.

Dated: June 8, 2017

_____
JON S. TIGAR
United States District Judge