Guido Saveri (22349)
  guido@saveri.com
R. Alexander Saveri (173102)
  rick@saveri.com
Geoffrey C. Rushing (126910)
  grushing@saveri.com
Cadio Zirpoli (179108)
  cadio@saveri.com
Matthew D. Heaphy (227224)
  mheaphy@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **DIRECT PURCHASER PLAINTIFFS' APPLICATION FOR DEFAULT JUDGMENT BY THE COURT AGAINST THE IRICO DEFENDANTS** |
| *ALL DIRECT PURCHASER ACTIONS* | |
| | Date: September 12, 2017 |
| | Time: 2:00 p.m. |
| | Judge: Honorable Jon S. Tigar |
| | Courtroom: 9 |

# <u>REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED</u>

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................ii

NOTICE OF MOTION AND MOTION.......................................................................1

ISSUES TO BE DECIDED ............................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES.................................................2

I.      INTRODUCTION...............................................................................................2

II.     STATEMENT OF RELEVANT FACTS...........................................................4

III.    ARGUMENT .......................................................................................................5

        A.      Legal Standard......................................................................................5

        B.      Plaintiffs Are Entitled to a Default Judgment ...................................6

                1.      Notice ..........................................................................................6

                2.      Jurisdiction .................................................................................7

                3.      The *Eitel* Factors Favor Entry of a Default Judgment.......7

                4.      The Irico Defendants' Damage Liability.........................13

IV.     CONCLUSION .................................................................................................16

1

## <u>TABLE OF AUTHORITIES</u>

2
**CASES**

3
*Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir. 1980)............................................................. 5

4
*Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104 (9th Cir. 2000) ........ 7

5
*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360 (9th Cir. 1980) ......... 13

6
*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) ............... 5, 12

7
8
*Disney Enters., Inc. v. Tran*, Case No. 12-cv-05030-JST, 2016 WL 6599518 (N.D. Cal. Nov. 7, 2016) ................................................................................................................ 6

9
*Domanus v. Lewicki*, 742 F.3d 290 (7th Cir. 2014) ........................................................ 12

10
11
*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986).......................................................... 6, 11

12
*Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) ...................................... 6

13
*Geddes v. United Fin. Grp.*, 559 F.2d 557 (9th Cir. 1977) ............................................... 6

14
15
*In re Apple iPod iTunes Antitrust Litig.*, No. 05-CV-0037 YGR, 2014 WL 4809288 (N.D. Cal. Sept. 26, 2014) ....................................................................................... 14

16
*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-5944-JST, 2016 WL 3648478 (N.D. Cal. Jan. 28, 2016)............................. 3

17
18
*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606 (N.D. Cal. 2015) ............ 5, 14

19
*In re Cathode Ray Tube (CRT) Antitrust Litig.*, Case No. 14-cv-2058 JST, 2017 WL 2481782 (N.D. Cal. Jun 8, 2017)........................................................................ 7

20
21
*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02–1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006)............................................................. 14

22
23
*In re Monosodium Glutamate Antitrust Litig.*, Case No. 00-md-01328-PAM, ECF No. 613 (Aug. 4, 2016)........................................................................................... 6, 12

24
25
*In re Monosodium Glutamate Antitrust Litig.*, Civil File No. 00-MDL-1328 (PAM), ECF No. 486 (Sept. 10, 2004) ....................................................................................... 6

26
*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal. 2010) ............... 14

27
*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 WL 555090 (N.D. Cal. Feb. 21, 2012)................................................................................................... 14

28

*In re Tuli*, 172 F.3d 707 (9th Cir. 1999) ........................................................................... 6

*Jiang v. New Millennium Concepts Inc.*, Case No. 15-cv-04722-JST, 2016 WL 3682474
(N.D. Cal. July 11, 2016) ............................................................... 5, 7, 8, 12, 13

*Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334 (4th Cir. 2006) ................................ 6

*Royal Printing v. Kimberly Clark Corp.*, 621 F.2d 323 (9th Cir. 1980) ......................................... 15

*Sec. & Exch. Comm'n v. Nagaicevs*, Case No. 12-cv-00413-JST, 2013 WL 3730578 (N.D.
Cal. July 12, 2013)........................................................................ 8, 11

**STATUTES**

15 U.S.C. § 15 ...................................................................................... 3, 13, 15

28 U.S.C. § 1332(d)(2) ................................................................................. 7

50 U.S.C. § 3931 ..................................................................................... 2

Fed. R. Civ. P. 12(h)(1)(A) ............................................................................ 7

Fed. R. Civ. P. 55 ................................................................................ 2, 5, 6

1   **NOTICE OF MOTION AND MOTION**

2   TO DEFENDANTS IRICO DISPLAY DEVICES CO., LTD. AND IRICO GROUP

3   CORPORATION AND TO THEIR ATTORNEYS OF RECORD:

4        PLEASE TAKE NOTICE that on September 12, 2017, at 2:00 p.m., or as soon thereafter as

5   this matter may be heard, before the Honorable Jon S. Tigar, United States District Judge of the

6   Northern District of California, San Francisco Courthouse, located at Courtroom 9, 19th Floor, 450

7   Golden Gate Avenue, San Francisco, California, Direct Purchaser Plaintiffs ("Plaintiffs") will

8   present their application for a default judgment against Defendants Irico Display Devices Co., Ltd.

9   and Irico Group Corporation (the "Irico Defendants"). The Clerk has previously entered the default

10  of the Irico Defendants on July 20, 2016. ECF No. 4727.

11       Plaintiffs will present proof of the following matters:

12       1.    The Irico Defendants are not minors or incompetent persons or in military service or

13  otherwise exempted under the Servicemembers' Civil Relief Act (formally known as the Soldiers'

14  and Sailors' Civil Relief Act of 1940).

15       2.    Notice of this Application has been served as required by Rule 55(b)(2) of the

16  Federal Rules of Civil Procedure.

17       3.    Plaintiffs are entitled to judgment against the Irico Defendants on account of the

18  claims pleaded in the complaint, as set forth in the following Memorandum of Points and

19  Authorities.

20       4.    The amount of the judgment sought is the sum of $2,484,916,104.46 as set forth in

21  the attached Declaration of R. Alexander Saveri.

22       This Application is based on this Notice, the following Memorandum of Points and

23  Authorities; the accompanying Declaration of R. Alexander Saveri; the proposed order submitted

24  herewith; and other records, pleadings, and papers filed in this action; and upon such argument and

25  further pleadings as may be presented to the Court at the hearing on this Application.

26       **ISSUE TO BE DECIDED**

27       **1.**    Whether the Court should enter default judgment in the amount of

28  $2,484,916,104.46 against the Irico Defendants.

1

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3       Direct Purchaser Plaintiffs' ("Plaintiffs") respectfully submit this Application for Default

4  Judgment by the Court Against Defendants Irico Display Devices Co., Ltd. and Irico Group

5  Corporation (the "Irico Defendants").

6       The Irico Defendants are large Chinese electronics manufacturers.[1] Defendant IRICO

7  Group Corporation was established in the 1970s and operates several subsidiaries, including

8  Defendant IRICO Display Devices Co., Ltd.  The IRICO Defendants produced both types of

9  Cathode Ray Tubes ("CRTs")—CDTs and CPTs—at issue in this case. Expert Report of Leslie M.

10 Marx, Ph.D. ¶ 6 ("Marx Report") (Exhibit A to the Declaration of R. Alexander Saveri in Support

11 of Application for Entry of Default Judgment by the Court Against the Irico Defendants ("Saveri

12 Decl.").) In the first half of 2010, Defendant IRICO Group Corporation reported over $10 billion

13 dollars in revenue.[2]

14      The IRICO Defendants were served, appeared in the action, and defended against Plaintiffs'

15 claims for almost two years. Among other things, they joined in the initial motion to dismiss.  After

16 the Court denied the motion to dismiss, however, they directed their counsel to cease representing

17 them. Thereafter, they failed to answer or otherwise defend Plaintiffs' allegations that they

18 participated in an international cartel to fix, raise, stabilize and maintain prices for CRTs and

19 caused substantial harm to Plaintiffs by raising the prices of the CRTs and finished products

20 containing CRTs they had purchased.

21      Since the Irico Defendants' departure, this matter has been intensively litigated with nine

22 other defendant groups for approximately seven years. As the Court is well aware, the parties

23 conducted extensive document, written and deposition discovery. The Court has resolved myriad

24 motions, including wide-ranging summary judgment motions. The Court certified a direct

25 purchaser class. It also certified settlement classes and approved over $212,000,000 in settlements

26

27 [1] Plaintiffs submit that because the Irico Defendants are Chinese corporations, they are not minors or incompetent persons, nor in military service or exempt therefrom. Fed. R. Civ. P. 55(b)(2); 50 U.S.C. § 3931

28 [2] http://www.ch.com.cn/english/About_IRICO.htm

2

with nine separate defendant groups. As to all defendants other than the Irico Defendants, the case is essentially over.[3]

It is now appropriate for the Court to consider entry of default judgment. The Clerk has already entered the default of the Irico Defendants. ECF No. 4727. As explained below, the requirements for a default judgment are well-established. Plaintiffs need not prove the Irico Defendants' liability, but must present evidence of the amount of damages for which the Irico Defendants should be liable. Liability for an antitrust violation is joint, several and treble. A defendant is entitled to an offset for the settlement payments of other defendants. Plaintiffs' damages expert has calculated single damages of $876,000,000 over the twelve-year class period during which the cartel operated. This amount, trebled, is $2,628,000,000. After subtracting the payments of settling defendants—$212,200,000—the damage liability of the Irico Defendants' is $2,415,800,000.

The Irico Defendants are also liable for Plaintiffs' attorneys' fees and expenses. 15 U.S.C. § 15(a). Plaintiffs submit that the default judgment should be increased by the amount of the fee and expense awards made by the Court ($69,116,104.46.). Order on Attorneys' Fees, Expenses, & Incentive Awards, June 8, 2017, ECF No. 5169 (awarding $25,425,000 fees and $1,053,960.20 in expenses); Order on Attorneys' Fees and Expenses, Jan. 1, 2016, ECF No. 4311 (awarding $38,235,000 fees, approving $2,867,395.32 in expenses already paid from the settlement fund and granting reimbursement of further expenses totaling $1,534,748.94.).

It would be a gross injustice to allow the Irico Defendants to avoid liability under the U.S. antitrust laws. They made a calculated decision to flout those laws and the Court's authority. As they must have known, default judgment would (and should) be the inevitable result. Moreover, there is overwhelming evidence that the alleged conspiracy existed, that it caused great harm to Plaintiffs, and that the Irico Defendants joined and participated in it. Plaintiffs therefore respectfully submit that the Court should enter default judgment against the Irico Defendants in the

---

[3] The Court also granted class certification in the Indirect Purchaser Case, and approved several settlement classes. ECF Nos. 1105, 2542; *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-5944-JST, 2016 WL 3648478, at *4 (N.D. Cal. Jan. 28, 2016).

3

1   amount of $2,484,916,104.46

2   **II.    STATEMENT OF RELEVANT FACTS**

3          This multidistrict litigation arises from an alleged worldwide conspiracy to fix prices of

4   CRTs. CRTs are the primary components of CRT televisions and computer monitors. The

5   complaint alleged a conspiracy involving some of the largest companies in the world, including

6   Chunghwa, Hitachi, LG Electronics, Mitsubishi Electric, Panasonic, Philips, Samsung SDI,

7   Thomson, Toshiba and the Irico Defendants. Saveri Decl. ¶ 3. After the United States Department

8   of Justice ("DOJ") announced its investigation into the conspiracy in November 2007, twenty

9   direct purchaser plaintiff class action complaints were filed alleging a violation of Section 1 of the

10  Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15. Saveri Decl. ¶ 4.

11  The Panel on Multi-District Litigation consolidated these actions, along with actions filed on behalf

12  of indirect purchasers and direct action plaintiffs, in this Court. ECF No. 122.

13         On June 3, 2008, Plaintiffs served the complaint and summons on the Irico Defendants.

14  ECF No. 336, Exs. A, B.

15         On June 24, 2008, attorneys from the law firm Pillsbury Winthrop Shaw Pittman LLP

16  ("Pillsbury") entered appearances as counsel of record for the Irico Defendants and accepted

17  service of all pleadings, papers and notices. ECF No. 308.

18         On March 16, 2009, Plaintiffs filed and served their operative Consolidated Amended

19  Complaint on all defendants, including the Irico Defendants, via ECF. ECF No. 436 ("Complaint").

20         On May 18, 2009, the Irico Defendants and other defendants filed a Joint Motion to

21  Dismiss DPPs' Complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. ECF No.

22  479. On March 30, 2010, the Court denied the Joint Motion to Dismiss. ECF No. 665.

23         On June 23, 2010, Pillsbury informed the Court that it had ceased its representation of the

24  Irico Defendants, at their request, in May 2009. ECF Nos. 729 ¶ 1, 730 ¶ 2.

25         On June 24, 2010, the Court granted Pillsbury's motion to withdraw as counsel for the Irico

26  Defendants but required it to "continue to accept service of papers for the Irico Entities for

27  forwarding purposes until substitute counsel appears on behalf of the Irico Entities." ECF No. 732.

28

4

1    On July 8, 2015, the Court entered an order granting Plaintiffs' motion for class

2    certification. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606 (N.D. Cal. 2015)

3    ("Class Certification Order"). The Class Certification Order identified the Irico Defendants as co-

4    conspirators. *Id.* at 610 n.1

5    On July 20, 2016, the Clerk entered the default of the Irico Defendants. ECF No. 4727.

6    On November 7, 2016, the Pillsbury firm made an administrative motion that it "should no

7    longer be required to forward pleadings in this case" to the Irico Defendants. ECF No. 4734.  The

8    Court granted the motion as to the Indirect Purchaser Plaintiffs, but not the Direct Purchaser

9    Plaintiffs. ECF No. 5003.

10   On July 21, 2017, the Court directed Plaintiffs to file this Application by August 4, 2017.

11   ECF No. 5177.

12   **III.    ARGUMENT**

13   **A.    Legal Standard**

14   Under the Federal Rules of Civil Procedure, a district court may enter a default judgment

15   "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or

16   otherwise defend . . . ." Fed. R. Civ. P. 55(a), (b); *see also City of New York v. Mickalis Pawn*

17   *Shop, LLC*, 645 F.3d 114, 130 (2d Cir. 2011) (failure to plead or otherwise defend where

18   "defendant affirmatively signaled to the district court its intention to cease participating in its own

19   defense"). "If the party against whom a default judgment is sought has appeared personally or by a

20   representative, that party or its representative must be served with written notice of the application

21   at least 7 days before the hearing." Fed. R. Civ. P. 55(b)(2).

22   "Whether to enter a default judgment is a discretionary decision to be made by the district

23   court." *Jiang v. New Millennium Concepts Inc.*, Case No. 15-cv-04722-JST, 2016 WL 3682474, at

24   *2 (N.D. Cal. July 11, 2016) (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)). In

25   exercising its discretion, the factors the court may consider include:

26   
27           (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive
             claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the
             action; (5) the possibility of a dispute concerning material facts; (6) whether the
28

default was due to excusable neglect, and (7) the strong policy underlying the
Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Disney Enters., Inc. v. Tran*, Case No. 12-cv-05030-JST, 2016 WL 6599518, at *2 (N.D. Cal. Nov. 7, 2016) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)); *see also Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."). If necessary, the Court may conduct hearings or make referrals in order to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

Class-wide damages may be obtained by entry of default judgments in class actions where a court engaged in a Rule 23 analysis sufficient to certify the class to which it awarded damages. *See Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006). *See also In re Monosodium Glutamate Antitrust Litig.*, Civil File No. 00-MDL-1328 (PAM), ECF No. 486 (Sept. 10, 2004) (Exhibit B to the Saveri Declaration); *In re Monosodium Glutamate Antitrust Litig.*, Case No. 00-md-01328-PAM, ECF No. 613 (Aug. 4, 2016) (Exhibit C to the Saveri Declaration) ($187,700,000 default judgment).

Finally, the Court must examine its jurisdiction. "When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

### B.   Plaintiffs Are Entitled to a Default Judgment

#### 1.   Notice

Plaintiffs will email unredacted copies of this filing to the Irico Defendants' former counsel of record, Dianne L. Sweeney of Pillsbury Winthrop Shaw Pittman, LLP which is required to

6

1   accept service of papers and forward them to the Irico Defendants. ECF No. 732. Plaintiffs will file

2   a proof of service. Redacted versions will also be posted via ECF.

### 2.   Jurisdiction

The Court has both subject matter and personal jurisdiction here.

#### a.   Subject Matter Jurisdiction

The Court has already determined that it has subject matter jurisdiction. *See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig.*, Case No. 14-cv-2058 JST, 2017 WL 2481782, at *3 (N.D. Cal. Jun 8, 2017) (pursuant to 28 U.S.C. § 1332(d)(2)).

#### b.   Personal Jurisdiction

The Irico Defendants have consented to personal jurisdiction by voluntarily appearing in this action, ECF No. 308, and by failing to raise the defense of lack of personal jurisdiction in their Joint Motion to Dismiss, ECF No. 479. *See* Fed. R. Civ. P. 12(h)(1)(A) (waiver of Rule 12(b)(2) personal jurisdiction defense if omitted from motion to dismiss); *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1106–08, (9th Cir. 2000).

### 3.   The *Eitel* Factors Favor Entry of a Default Judgment

#### a.   Prejudice to Plaintiffs

The first *Eitel* factor weighs in favor of a default judgment because Plaintiffs have suffered substantial harm as a result of conduct of the Irico Defendants' and their co-conspirators and have no other means of redress against the Irico Defendants. *See Jiang,* 2016 WL 3682474, at *2 ("Plaintiff would be without a legal remedy for its cause of action."). While Plaintiffs have recovered some of the damages to which they are entitled via settlements with other defendants, they have not recovered all that they are entitled to. Indeed, in the absence of a default judgment, the Irico Defendants would, as a practical matter, prevail entirely on the claims at issue here by the simple expedient of rejecting the authority of this Court.  Needless to say, this would constitute a grave injustice to Plaintiffs.

#### b.   Merits of Claims and Sufficiency of Complaint

The second and third *Eitel* factors also weigh in favor of a default judgment because the sufficiency of the Complaint has already been tested and approved by the Court.

1       Plaintiffs allege that defendants and co-conspirators—including the Irico Defendants—

2    conducted an international cartel for over twelve years. The purpose and effect of this conspiracy

3    was to fix, raise, stabilize and maintain prices for CRTs. Complaint ¶¶ 1, 3. The Complaint seeks

4    treble damages for the harm caused by the conspiracy to Plaintiffs and members of the class in the

5    form of higher prices for CRTs and Finished Products – computer monitors and televisions – they

6    purchased during the class period. *Id.* ¶¶ 8, 199, 221. The Complaint also details specific instances

7    of the participation of the Irico Defendants in the conspiracy. *See, e.g., id.* ¶ 159.

8       The Irico Defendants along with the other Defendants moved to dismiss Plaintiffs'

9    complaint on a multitude of grounds. ECF No. 479. The Court rejected the defendants' arguments

10   and upheld the sufficiency of the complaint. ECF No. 665 ("Taken as a whole, the Court finds that

11   both the Direct Complaint and the Indirect Complaint plausibly suggest that ***each Defendant***

12   participated in the alleged conspiracies." (emphasis added)).

13       Inasmuch as the Irico Defendants failed to answer the complaint, Plaintiffs' allegations

14   against them are undisputed. They are, therefore, taken as true for purposes of a default judgment.

15   *See Jiang*, 2016 WL 3682474, at *2 (Second and third factors favor default where plaintiff "has

16   alleged undisputed facts" stating claim); *see also Sec. & Exch. Comm'n v. Nagaicevs*, Case No. 12-

17   cv-00413-JST, 2013 WL 3730578, at *4 (N.D. Cal. July 12, 2013) (where "the Court takes the

18   well-pleaded allegations of the complaint as true, the second, third, and fifth *Eitel* factors weigh in

19   favor of default judgment").

20       Apart from the Irico Defendants failure to defend the case, the evidence demonstrating the

21   existence of the alleged conspiracy, the harm to Plaintiffs, and the participation of the Irico

22   Defendants is overwhelming. Among other things, co-conspirator Chunghwa disclosed the

23   conspiracy to the DOJ when it applied for amnesty from criminal prosecution in 2007.

24   Chunghwa's former officers and employees have described the operation of the conspiracy in

25   detail. *See e.g.,* Marx Report, pp. 39, n. 199; 51; 63, n. 298; 68; 70. Co-conspirator Samsung SDI

26   pleaded guilty to participating in the CRT conspiracy.[4] The DOJ indicted six former executives of

---

[4] https://www.justice.gov/opa/pr/former-executive-indicted-his-role-two-cathode-ray-tube-price-fixing-conspiracies

8

1    co-conspirators SDI, Chunghwa, LGE, and LPD, alleging, *inter alia*, agreements on prices, output,

2    and market allocation; exchange of sales, production, market share, and pricing data; auditing to

3    verify compliance with conspiratorial agreements; and active concealment of the conspiracy.[5] And

4    there are detailed notes of hundreds of conspiratorial meetings that show collusive management of

5    the worldwide CRT market by the defendants remarkable for its sophistication, level of detail, and

6    scope. *See e.g*., Class Certification Motion at 5–14.[6] As the DOJ stated, the CRT "conspiracy

7    harmed countless Americans who purchased computers and televisions using cathode ray tubes

8    sold at fixed prices."[7]

9           In addition, Plaintiffs' expert economists have analyzed the evidence of the conspiracy. Dr.

10   Leslie Marx has performed an extensive analysis of the conspiracy evidence and concluded, among

11   other things, that ███████████████████████████████████████████

12   ██████████████████████ including the Irico Defendants. Marx Report, p. 3; *see*

13   *also e.g., id.* at 38; 21, n. 105, 42, fig. 7. Dr. Marx also concludes that █████████████

14   ████████████████████ and that the structure and operation of the

15   conspiracy was ███████████████████████████████████

16   ████████████████ *Id.* at 3; *see also id.* at 68—72. In other words, the conspiracy

17   resulted in higher prices.

18          Dr. Jeffrey J. Leitzinger also studied the CRT market and the evidence of the conspiracy.

19   Expert Report of Jeffrey J. Leitzinger, Ph.D., Nov. 6, 2014 ("Leitzinger Class Report") (Exhibit D

20   to the Saveri Declaration). Like Dr. Marx, he concludes, among other things, that because of the

21   structure of the CRT market and the nature of the alleged conspiracy, it was likely to have been

22   effective in raising prices. Leitzinger Class Report ¶¶ 6, 26, 46.  Dr. Leitzinger also demonstrates

23   through statistical analysis of the meeting notes and Defendants' sales data that the conspiracy

24   caused class-wide harm. *Id.* ¶¶ 6, 43-57.

---

[5] *Id.*
[6] ECF Nos. 2968-3 (sealed); 2969 (redacted).
[7] https://www.justice.gov/opa/pr/former-executive-indicted-his-role-two-cathode-ray-tube-price-fixing-conspiracies

Finally, there is a wealth of evidence establishing that the Irico Defendants actively participated in the conspiracy. According to the reports and notes of the other co-conspirators, the Irico Defendants attended ████████████████████. Saveri Decl., ¶ 9.  For example:

10



For these reasons, the second and third *Eitel* factors weigh heavily in favor of a default judgment.

### c. Sum at Stake

The fourth *Eitel* factor also favors entry of default judgment. While the amount sought is substantial, as discussed below, so is the injury suffered. If the Court does not enter a default judgment, Plaintiffs will have no recourse for the part of their claim which is unpaid.

Some courts have suggested this factor weighs against the entry of a default where the amount sought is large. *See e.g., Eitel,* 782 F.2d. at 1471-72. The *Eitel* court upheld denial of default judgment in part because the sum at stake—$2,900,000 – was high. *Id.* at 1472. In these cases, however, there were substantial doubts about the fairness of a default judgment. As this Court noted: "in *Eitel* there was reason for serious reservations about the merits of the complaint, and the defendant's failure to answer appeared likely due to excusable neglect." *Nagaicevs*, 2013 WL 3730578, at *4 (ordering payment of over $1,100,000). There are no reasons for "serious reservations" here. As explained above, the circumstances of the default were undoubtedly fair – the Irico Defendants made a considered and informed decision the consequences of which were clear at the time. In addition, the evidence supporting Plaintiffs' claim is strong. Indeed, if the

1  Court does not enter a default judgment, it will reward the Irico Defendants' rejection of the

2  Court's authority and encourage other wrongdoers to employ a similar strategy.

3      Finally, as noted above, other courts have entered substantial default judgments. *See In re*

4  *Monosodium Glutamate Antitrust Litigation*, Case No. 00-md-01328-PAM, ECF No. 613 (Aug. 4,

5  2016) (awarding $184,700,000 default judgment plus post-judgment interest of $41,019,274.94)*;*

6  *Domanus v. Lewicki*, 742 F.3d 290, 304 (7th Cir. 2014) (affirming entry of $413,000,000 default

7  judgment as discovery sanction in RICO action).

8                  **d.      Possibility of Dispute of Material Facts**

9      The fifth *Eitel* factor also weighs in favor of default judgment because "[t]here is no

10  possibility of a dispute of any material fact because Defendant has not appeared in this action to

11  challenge any allegations made by Plaintiff." *Jiang*, 2016 WL 3682474, at *3. This factor should

12  weigh even more heavily in favor of a default judgment where, as discussed below, the defendants

13  have made a conscious and informed choice not to take issue with the allegations of the Complaint.

14  *See Mickalis Pawn Shop*, 645 F.3d at 130 ("Finally, both defendants clearly indicated that they

15  were aware that their conduct likely would result in a default."). And, as noted, the evidence

16  against the Irico Defendants is strong.

17                  **e.      Excusable Neglect**

18      The sixth *Eitel* factor strongly favors default judgment. Here, the Irico Defendants appeared

19  in the action, litigated the claims against them for almost two years, and then directed their

20  experienced counsel to cease representing them—effectively abandoning the case and their

21  defenses. There can be no question that this was an intentional and considered decision by a

22  sophisticated and informed party. In other words, it was clearly not excusable neglect. *See Jiang*,

23  2016 WL 3682474, at *3 ("Defendant does not appear to have any excusable reason for neglecting

24  to appear").

25                  **f.      Policy Favoring Decisions on the Merits**

26      "The final *Eitel* factor, the policy underlying the Federal Rules of Civil Procedure favoring

27  decisions on the merits, necessarily weighs against default judgment." *Jiang*, 2016 WL 3682474, at

28  *3. However, as this Court has noted, this policy may be outweighed by the other factors "because

1   FRCP Rule 55(b)(2) permits entry of default judgment in situations where a defendant refuses to

2   litigate . . . ." *Id.* Here, this factor should be given little, if any, weight, because the only

3   impediment to a decision on the merits is the Irico Defendant's purposeful withdrawal from the

4   case and rejection of legal process and the Court's authority.

### g.   Balancing the Factors

6       In sum, the first six *Eitel* factors weigh in favor of entry of default judgment. The final

7   factor should be given little weight and is clearly outweighed by the other factors in any event.

8   After this Court's refusal to dismiss the case against them, the Irico Defendants made a strategic

9   decision to withdraw from this litigation. A default judgment is the inevitable and just result.

### 4.   The Irico Defendants' Damage Liability

11      Under U.S. antitrust laws, the Irico Defendants are jointly and severally liable for their

12   anticompetitive acts and those of their co-conspirators. *See, e.g., Beltz Travel Serv., Inc. v. Int'l Air*

13   *Transp. Ass'n*, 620 F.2d 1360, 1366–67 (9th Cir. 1980). Plaintiffs are entitled to treble damages

14   under Section 4 of the Clayton Act. 15 U.S.C. § 15. Plaintiffs are also entitled to their reasonable

15   attorneys' fees and expenses. 15 U.S.C. § 15(a).  As explained below, Plaintiffs' treble damages

16   amount to $2,628,000,000. Less the $212,200,000 their co-conspirators have paid in settlement, the

17   Irico Defendants' total damage liability is $2,415,800,000. Plaintiffs submit that the default

18   judgment should also reflect the amount already awarded by the Court as attorneys' fees and

19   expenses–$69,116,104.46– for a total judgment of $2,484,916,104.46.

### a.   Plaintiffs Suffered a Total of $876 Million in Damages During the Class Period.

22      Dr. Leitzinger is a well-qualified and experienced economist and damages expert.

23   Leitzinger Class Report, ¶ 1, Ex. 1. He submitted preliminary damage studies in support of

24   Plaintiffs' motions for class certification. *Id.* After the class was certified, Dr. Leitzinger completed

25   a final damage study. Leitzinger Final Report. His final study utilized the damage model from the

26   Class Report and applied it to the total U.S. purchases by the class, accounting for opt-outs, and

27

28

1  sales between conspirators. Leitzinger Final Report ¶¶ 21, n. 20, fig. 12; 24, fig. 15.[8]

2        Dr. Leitzinger utilized the well-established "before and after" method of determining

3  damages – that is, he compared sales prices from before and after the conspiracy with those

4  prevailing during the conspiracy period using regression equations.  Leitzinger Class Report, ¶¶64-

5  65.  Dr. Leitzinger's final study was transmitted to the Mitsubishi Electric Defendants on

6  September 1, 2016.  Saveri Decl., ¶ 8.

7        The methodology used by Dr. Leitzinger in calculating damages is well established in

8  antitrust cases. It was accepted by the Court in its order granting class certification in this action.

9  Class Certification Order, 308 F.R.D. at 628-30. Other courts have commonly relied on similar

10  studies. *See e.g., In re Apple iPod iTunes Antitrust Litig.,* No. 05-CV-0037 YGR, 2014 WL

11  4809288, at *4 (N.D. Cal. Sept. 26, 2014) ("hedonic multiple-regression analysis is a sound and,

12  indeed, commonplace method for isolating the pricing effects of alleged anticompetitive

13  conduct."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 606 (N.D. Cal. 2010); *In*

14  *re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 WL 555090, at *4–5 (N.D. Cal.

15  Feb. 21, 2012) (denying "defendants' request to preclude plaintiffs' experts from testifying that

16  their [regression] models establish . . . impact to direct purchasers"); *In re Dynamic Random*

17  *Access Memory (DRAM) Antitrust Litig.*, No. M 02–1486 PJH, 2006 WL 1530166, at *10 (N.D.

18  Cal. June 5, 2006). This type of study is a standard of antitrust practice.

19        Dr. Leitzinger's calculation of class-wide damages relies on the electronic transactional

20  data – i.e., sales records – produced by defendants in discovery. Leitzinger Class Report, ¶ 68;

21  Leitzinger Final Report ¶¶ 18, 22. Dr. Leitzinger performed a series of hedonic regressions that

22  explain CRT prices using a set of observable characteristics—size, screen format, whether ITC or

23  bare, transaction quantity, and manufacturer. They showed that the vast majority of price

24  variability amongst CRT buyers is attributable to these characteristics, rather than disparate

25  conspiracy impact. *Id.* ¶ 10; Leitzinger Class Report, ¶¶ 65, 70.

26        Next, Dr. Leitzinger used his model to analyze and compare sales prices before and after

27

28  ────────────────
[8] Dr. Leitzinger also added some material relating to certain arguments made by the Mitusbishi Electric Defendants, the only remaining defendants.

1    the conspiracy with prices during the conspiracy. Leitzinger Class Report, ¶¶ 64-72. Dr. Leitzinger

2    determined overcharge percentages for each year of the conspiracy for CDTs and CPTs separately.

3    The yearly overcharges range from 1.4 percent to 10.5 percent for CDTs and from 2.7 percent to

4    6.9 percent for CPTs. *See* Leitzinger Final Report ¶ 21 fig.12; Leitzinger Class Report ¶ 72.

5        In his final report, Dr. Leitzinger determined the total amount of sales to class members in

6    the United States during the class period.  Leitzinger Final Report ¶ 18. He excluded sales to class

7    members who opted out of the class and sales between conspirators.  *Id.* He included only sales

8    which were "billed to" or "shipped to" addresses in the United States.  *Id.* Dr. Leitzinger relied on

9    the sales data produced in the action, where possible. *Id.* ¶¶ 18, fig. 9; 22, fig. 13. However, there

10   were gaps in the data, because, for example, some defendants did not have data for all time periods

11   or produced no data at all. See *id.* ¶¶19-20, fig. 10, 23, fig. 14.  Where there were gaps in the data,

12   Dr. Leitzinger estimated sales to class members using publicly available industry data. *Id.* ¶ 20, fig.

13   11; 23, fig. 14.

14       The class purchased CRTs and finished products – computer monitors and televisions

15   containing CRTs.  To calculate damages for class members' CRT purchases, Dr. Leitzinger

16   "applied the annual average overcharge for each type of CRT (CDT or CPT) to the Conspirators'

17   class sales for CRTs of each type . . . ." *Id.* ¶ 21, fig. 12. Total (single) damages for these purchases

18   amounted to $331 million. *Id.*

19       With regard to finished products, Plaintiffs are entitled to the overcharge on the CRTs

20   contained therein. *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323 (9th Cir. 1980). To

21   compute class damages for finished product purchases, therefore, Dr. Leitzinger determined the

22   types of CRTs contained in the particular finished products purchased and then multiplied the

23   annual average overcharge for that type of CDT or CPT by the number of sales of that type of

24   finished product.  Leitzinger Final Report ¶ 24, fig. 15. Total (single) damages for these purchases

25   amounted to $545 million. *Id.*

26       As noted, Dr. Leitzinger found a total of $876,000,000 in single damages to the class. *Id.* ¶

27   25.

28

### b.    Attorney Fees and Expenses.

Plaintiffs are also entitled to attorneys' fees and expenses. 15 U.S.C. § 15(a). Inasmuch as the Court has already examined this issue twice, Plaintiffs propose that the Court increase the default judgment by the amount of fees and expenses previously awarded – $69,116,104.46. ECF No. 5169 (awarding $25,425,000 fees and $1,053,960.20 in expenses); ECF No. 4311 (awarding $38,235,000 fees, approving $2,867,395.32 in expenses already paid from the settlement fund and granting reimbursement of further expenses totaling $1,534,748.94.). [9]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Application for Default Judgment by the Court Against the Irico Defendants in the amount of $2,484,916,104.46.

Alternatively, Plaintiffs are prepared to provide any further information or participate in any hearing or further proceeding the Court requires.

Dated: August 3, 2017

Respectfully submitted,

/s/ *Guido Saveri*
Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Cadio Zirpoli (179108)
Matthew D. Heaphy (227224)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*

---

[9] If there is an additional recovery on behalf of the class, Plaintiffs' Counsel may seek an additional fee and expense award. They are not seeking any such award now.

16

1

2

3

4

Joseph W. Cotchett
Steven N. Williams
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

5

6

7

8

Bruce L. Simon
PEARSON, SIMON & WARSHAW LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone:  (415) 433-9000
Facsimile:  (415) 433-9008

9

10

11

12

H. Laddie Montague, Jr.
Ruthanne Gordon
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (800) 424-6690
Facsimile: (215) 875-4604

13

14

15

Michael P. Lehmann
HAUSFELD LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone:  (415) 633-1908
Facsimile:  (415) 358-4980

16

17

18

19

Gary Specks
KAPLAN FOX
423 Sumac Road
Highland Park, IL 60035
Telephone: (847) 831-1585
Facsimile: (847) 831-1580

20

21

22

23

Douglas A. Millen
William H. London
FREED KANNER LONDON & MILLEN
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4519

24

25

26

27

Eric B. Fastiff
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

28

DPPS' APPLICATION FOR DEFAULT JUDGMENT BY THE COURT AGAINST THE IRICO DEFENDANTS;
Master File No. 07-CV-5944-JST

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

W. Joseph Bruckner
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S
Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
Facsimile: (612) 339-0981

*Attorneys for Plaintiffs*

DPPS' APPLICATION FOR DEFAULT JUDGMENT BY THE COURT AGAINST THE IRICO DEFENDANTS;
Master File No. 07-CV-5944-JST