1  John Taladay (*pro hac vice*)
   john.taladay@bakerbotts.com
2  Eric Koons (*pro hac vice*)
   eric.koons@bakerbotts.com
3  BAKER BOTTS LLP
   1299 Pennsylvania Ave., NW
4  Washington, D.C. 20004
   Telephone:  (202) 639-7700
5  Facsimile:   (202) 639-7890

6  Stuart C. Plunkett (State Bar No. 187971)
   stuart.plunkett@bakerbotts.com
7  Rishi P. Satia (State Bar No. 301958)
   rishi.statia@bakerbotts.com
8  BAKER BOTTS LLP
   101 California Street, Suite 3600
9  San Francisco, California 94111
   Telephone:  (415) 291-6200
10 Facsimile:   (415) 291-6300

11 *Attorneys for*
   *IRICO GROUP CORP. and*
12 *IRICO DISPLAY DEVICES CO., LTD.*

13

14                    **UNITED STATES DISTRICT COURT**

15                **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

16                         **SAN FRANCISCO DIVISION**

| 17 | IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | ) ) ) | Case No. 3:07-cv-05944-JST |
|---|---|---|---|
| 18 | | ) | MDL No.: 1917 |
| 19 | THIS DOCUMENT RELATES TO: | ) ) ) | |
| 20 | *ALL DIRECT PURCHASER ACTIONS* | ) ) ) | **IRICO'S RESPONSE TO DIRECT PURCHASER PLAINTIFFS' APPLICATION FOR DEFAULT JUDGMENT BY THE COURT** |
| 21 | | ) ) | |
| 22 | | ) ) ) | |

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

    A. Irico .................................................................................................................... 2

    B. DPP's Claims Against Irico ................................................................................ 3

    C. Default Proceedings Against Irico ...................................................................... 4

III. ARGUMENT .................................................................................................................... 5

    A. Entry of Default Against Irico Should Be Vacated and DPP's Application for Default Judgment Should Be Denied as Moot ..................................................... 5

    B. Default Judgment Against Irico is Wholly Inappropriate ................................... 7

        1. DPPs Cannot Overcome the Strong Presumption in Favor of Adjudicating Cases on the Merits ............................................................. 7

        2. Even if the Court Could Exercise Subject Matter Jurisdiction, the FSIA Precludes Entry of Default Judgment Against Irico ....................... 8

    C. The *Eitel* Factors Weigh Strongly Against Default Judgment ............................ 9

        1. Possibility of Prejudice to DPPs If Relief is Denied ................................ 9

        2. Substantive Merits of DPP's Claim and Sufficiency of Complaint ....... 10

        3. Amount of Money at Stake ..................................................................... 11

        4. Possibility of Dispute As to Any Material Facts in the Case ................. 12

        5. Excusable Neglect .................................................................................. 13

        6. Policy Favoring Decisions on the Merits ............................................... 13

IV. CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

Page

**Cases**

*Am. States Ins. Corp. v. Tech. Surfacing, Inc.*,
    178 F.R.D. 518 (D. Minn. 1998) ............................................................................................... 7

*Anderson v. Specified Credit Ass'n, Inc.*,
    No. CIV. 11-53-GPM, 2011 WL 2414867 (S.D. Ill. June 10, 2011) .................................. 11

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989) ................................................................................................................ 5

*Board of Trustees of the Clerks v. Piedmont Lumber & Mill Co.*,
    No. C 10-1757 MEJ, 2010 WL 4922677 (N.D. Cal. Nov. 29, 2010) ................................. 12

*Coen Co. v. Pan Int'l, Ltd.*,
    307 F.R.D. 498 (N.D. Cal. 2015) ......................................................................................... 6, 7

*Companía Interamericana Export-Import, S.A. v. Companía Dominicana de Aviación*,
    88 F.3d 948 (11th Cir. 1996) ................................................................................................. 8

*Doe v. Qi*,
    349 F. Supp. 2d 1258 (N.D. Cal. 2004) ................................................................................ 8

*Domanus v. Lewicki*,
    742 F.3d 290 (7th Cir. 2014) ................................................................................................ 12

*Eitel v. McCool*,
    782 F.2d 1470, 1471-72 (9th Cir. 1996) ........................................................................ passim

*Falk v. Allen*,
    739 F.2d 461 (9th Cir. 1984) .................................................................................................. 7

*Gregorian v. Izvestia*,
    871 F.2d 1515 (9th Cir. 1989) .............................................................................................. 13

*Helton v. Factor 5, Inc.*,
    No: C 10–04927 SBA, 2013 WL 5111861 (N.D. Cal. Sept. 12, 2013) .............................. 11

*In re Citric Acid Litig.*,
    191 F.3d 1090 (9th Cir. 1999) .............................................................................................. 11

*Jiang v. New Millennium Concepts, Inc.*,
    No. 15-cv-04722-JST, 2016 WL 3682474 (N.D. Cal. July 11, 2016) ................................. 9

*Kaur v. Singh*,
    No. 2:13-CV-89-KJM-EFB, 2015 WL 5330294 (E.D. Cal. Sept. 10, 2015) .................... 11

*Keegel v. Key West & Caribbean Trading Co.*,
    627 F.2d 372 (D.C. Cir. 1980) ............................................................................................. 6, 9

*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375 (1994) .................................................................................................. 6

*Lasheen v. Loomis Co.*,
   No. 2:01-CV-0227-LKK-EFB, 2013 WL 1178209 (E.D. Cal. Mar. 21, 2013) .................. 11

*MCI Telecomms. Corp. v. Alhadhood*,
   82 F.3d 658 (5th Cir. 1996) ....................................................................................... 6

*Mission Trading Co., Inc. v. Lewis*,
   No. 16-cv-01110-JST, 2016 WL 4268667 (N.D. Cal. Aug. 15, 2016) .................... 2, 7, 9, 13

*MOL, Inc. v. Peoples Republic of Bangladesh*,
   736 F.2d 1326 (9th Cir. 1984) ................................................................................... 5

*Moore v. United Kingdom*,
   384 F.3d 1079, 1090 (9th Cir. 2004) ......................................................................... 8

*Norton v. City of Whiteville*,
   No. 7:16-CV-300-BO, 2017 WL 912018 (E.D.N.C. Mar. 7, 2017) ................................ 6

*Pena v. Seguros La Comercial, S.A.*,
   770 F.2d 811 (9th Cir. 1985) ..................................................................................... 7

*Practical Concepts, Inc. v. Republic of Bolivia*,
   811 F.2d 1543 (D.C. Cir. 1987) ................................................................................. 8

*Siderman de Blake v. Republic of Argentina*,
   965 F.2d 699 (9th Cir. 1992) ..................................................................................... 5

*TCI Group Life Ins. Plan v. Knoebber*,
   244 F.3d 691 (9th Cir. 2001) ............................................................................ 1, 9, 13

*Thompson v. A. Home Assur. Co.*,
   95 F.3d 429 (6th Cir. 1996) ....................................................................................... 9

*United States v. Duran*,
   189 F.3d 1071 (9th Cir. 1999) ................................................................................. 11

*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*,
   615 F.3d 1085 (9th Cir. 2010) ................................................................................. 13

*United States v. Sterling Centrecorp, Inc.*,
   No. 2:08-CV-02556 MCE JMF, 2011 WL 2198346 (E.D. Cal. June 6, 2011) ............. 12

**Statutes**

28 U.S.C. § 1602 ............................................................................................................ 1

28 U.S.C. § 1608 ......................................................................................................... 1, 8

**Rules**

Fed. R. Civ. P. 55(a) ................................................................................................................ 5

Fed. R. Civ. P. 55(c) ..................................................................................................... 1, 6, 7, 13

I.  **INTRODUCTION**

Direct Purchaser Plaintiffs ("DPPs") request, extraordinarily, that the Court enter judgment by default against Irico Group Corporation ("Irico Group") and Irico Display Devices Co., Ltd. ("Irico Display," and together with Irico Group, "Irico") in the amount of $2.49 billion, plus $69 million in attorneys' fees. But there is a strong presumption in the Ninth Circuit in favor of resolving cases on the merits. To overcome that presumption and justify resolution by default, DPPs would need to identify "extreme circumstances." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). There are no extreme circumstances here. After appearing in the action, accepting service of process, and joining a motion to dismiss filed by other defendants, Irico made the decision not to answer DPP's complaint based on Irico's belief that it was immune from suit in the United States. In July 2016—having let six years pass without pursuing their claims against Irico—DPPs sought entry of default by the Clerk of the Court. A year later, DPPs filed the instant application for default judgment. Nowhere in the application do DPPs identify circumstances that would justify resolution of this complex antitrust matter against Irico by default, or justify entering an enormous default judgment based entirely on disputed damages figures presented by DPP's own economist.

Irico asks the Court to set aside the Clerk's entry of default for the reasons set forth in Irico's concurrently filed motion and to deny DPP's application as moot. The default entered against Irico is void and must be set aside because the Court lacks subject matter jurisdiction over Irico under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 *et seq.* ("FSIA"). (*See* Motion to Set Aside Default at 6-9.) And even if the Court could exercise jurisdiction, the default should be set aside for "good cause" under Rule 55(c). (*Id.* at 9-14.)

Even if DPP's application was not mooted by the FSIA, it should be denied. The FSIA does not permit entry of default judgment against an instrumentality of a foreign state, the definition of which both Irico entities meet, unless DPPs fully "evidence" their claims. 28 U.S.C. § 1608(e). They have not done so. Furthermore, not one of the Ninth Circuit's *Eitel* factors favors entry of default judgment against Irico. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1996) . To the contrary, the factors demonstrate that this is not a proper case for entry of

default judgment, in any amount. The *Eitel* factors require the weighing of DPP's claim and whether any material facts are in dispute. Here, there are significant, contested issues not only about jurisdiction, but also about Irico's liability and damages. DPPs offer just a few documents purporting to show communications with competitors and ask the Court to conclude that Irico participated in the alleged 12-year global CRT cartel. That showing is inadequate to "evidence" Irico's liability, much less to support a default judgment.

Another *Eitel* factor considers the sum of money at stake, which is both extraordinary and unprecedented. Given the claimed sum at stake, DPPs must be required to prove Irico's liability and damages.

Moreover, DPPs would suffer no prejudice if default judgment were denied, as considered under *Eitel*. They claim only that they would be denied recovery, but "being forced to litigate on the merits" is not considered prejudice. *Mission Trading Co., Inc. v. Lewis*, No. 16-cv-01110-JST, 2016 WL 4268667, at *2 (N.D. Cal. Aug. 15, 2016). DPPs, moreover, can hardly claim they have been denied recover when they have already recovered over $212 million from multiple other defendants from whom DPPs acknowledge they were entitled to seek joint and several damages. Nothing in DPP's conduct shows any reliance on their claims against Irico to recover what DPPs claim are the full measure of their damages.

The Court should deny this application and grant Irico's motion.

## II. BACKGROUND

### A. Irico

Irico Group is a Chinese company with its principal place of business at 1 Caihong Rd., Xianyang City, Shaanxi Province, 712021, People's Republic of China.[1] (Compl. ¶ 37.) At the time DPPs filed their original complaint in 2007, Irico Group was a State-Owned Enterprise ("SOE") of the State Council of the People's Republic of China. (Zhang Decl. ¶ 6.) The State Council held 100% of Irico Group's shares. (*Id*.; *see also* Dkt. 310 (corporate disclosure statement filed on June 24, 2008 stating that "Irico Group . . . is a corporation wholly owned by

---

[1] This Background section is identical to the Background section in the concurrently filed Motion to Set Aside Default.

IRICO'S RESPONSE TO APPLICATION FOR DEFAULT JUDGMENT  2  CASE NO. 3:07-CV-05944-JST
MDL No. 1917

the People's Republic of China and has no parent company").) Through 2000, Irico Group was managed and directly supervised by the Ministry of Industry and Information Technology of the State Council. (Zhang Decl. ¶ 7.) From 2000 to 2003, Irico Group was managed directly by the Central Enterprise Work Committee, and from 2003 forward, Irico Group was managed directly by the State-owned Assets Supervision and Administration Commission of the State Council ("SASAC"). (*Id*.)

Irico Display is also a Chinese company and has its principal place of business at 1 Caihong Rd., Xianyang City, Shaanxi Province, 712021, People's Republic of China. (Compl. ¶ 38.) At the time DPPs filed their complaint in 2007, Irico Display, a State-owned holding company, was a subsidiary of Irico Group, and Irico Display's board of directors and operations was managed by both Irico Group and the State Council. (Zhang Decl. ¶¶ 8, 9.)

As SOEs that effectively operated under the supervision and control of the State Council of the People's Republic of China, the Irico entities reasonably believed they were immune from DPP's suit under notion of foreign sovereign immunity and accordingly did not participate in this action beyond joining a motion to dismiss, as described below. (*See id*. ¶ 5.)

B. **DPP's Claims Against Irico**

DPPs filed their original complaint on November 26, 2007, naming Irico Group and Irico Display as defendants. (ECF No. 1.) DPPs served Irico on June 3, 2007, under the Hague Convention, and filed a Proof of Service on July 22, 2008. (ECF No. 336.) Irico appeared through counsel, the Pillsbury firm, on June 24, 2008, and filed a Certificate of Interested Entities the same day. (ECF No. 308.) Irico stipulated that service was proper on August 22, 2008. (ECF No. 3610.)

On March 16, 2009, DPPs filed the Consolidated Amended Complaint naming Irico Group and Irico Display as defendants. (ECF No. 436.) Other than providing a description of the Irico entities (*see id.* ¶¶ 37-40), the 222-paragraph Complaint includes just one paragraph mentioning Irico:

> Irico, through IGC, IGE, and IDDC, participated in multiple illegal bilateral and at least several dozen illegal group meetings from 1998 to 2006 in which unlawful agreements as to, inter alia, price, output

> restrictions, and customer and market allocation of CRT Products occurred. These meetings took place in China. Irico never effectively withdrew from this conspiracy. None of Irico's conspiratorial conduct in connection with CRT Products was mandated by the Chinese government; Irico was acting to further its independent private interests in participating in this conspiracy.

(*Id.* ¶ 159.)

On May 18, 2009, Irico joined the Joint Motion to Dismiss DPPs' Consolidated Amended Complaint filed by defendants. (ECF No. 479.) On March 30, 2010, the Court adopted the Special Master's Report, Recommendations, and Tentative Rulings Regarding Defendants' Motions to Dismiss denying the Motion to Dismiss (ECF No. 597), noting that the Complaint "plausibly suggest[s] that each Defendant participated in the alleged conspiracies" but "[w]hether Plaintiffs will be able to prove these allegations against each Defendant is another matter entirely[,]" ultimately concluding that "it would be inappropriate to dismiss any of the Defendants from this action without the benefit of discovery." (ECF No. 665; *see also* Special Master's Rp't & Rec. Regarding Defs' Motions to Dismiss, 2010 WL 9540818, at *8 (N.D. Cal. Feb. 5, 2010) ("If some defendants, whether they are individual defendants, defendant groups, or individual defendants within a group, conclude that they did not participate in the charged activities, they are free to assert that defense and put plaintiffs to their proof.").) The Order made no findings specific to Irico.

On June 23, 2010, the Pillsbury firm moved to withdraw as Irico's counsel, undertaking to continue to accept service on behalf of Irico until substitute counsel appeared. (ECF No. 729.) The Court entered an Order granting the withdrawal motion on June 24, 2010. (ECF No. 732.)

### C.   Default Proceedings Against Irico

Six years later, with activity as to Irico wholly dormant, on June 28, 2016, the Pillsbury firm moved to end its obligation to continue to accept service on Irico's behalf. In response, the Court issued an Order Regarding Irico Entities, requiring that "any plaintiff with pending affirmative claims against the Irico Entities" provide the following information to the Court by July 5, 2016: "(1) the date on which it filed its operative claims against the Irico Entities; (2) whether the Irico Entities have been served with those claims; and (3) whether the Irico Entities have answered those claims." (ECF No. 4694 at 2.) If any plaintiff contended that Irico had not

answered pending claims, the Court ordered that the filing party show "good cause why it has not previously requested entry of default as to the Irico Entities." (*Id.*)

DPPs responded to the Order, stating that Irico had not answered the Complaint filed in 2009. (ECF No. 4705 at 1.) In response to the Court's order to show "good cause" as to why entry of *default* had not been sought previously, DPPs balked: DPPs addressed why they had not sought a ***default judgment***, but not why they had failed to seek entry of default against Irico. (*Id.*) DPPs stated it was premature to seek a default judgment when claims against co-defendants were still pending and liability is joint and several. (*Id.* at 1-2.) The Court nonetheless gave DPPs ten days to seek entry of default under Rule 55(a). (ECF No. 4709.) DPP's filed an Application for Default with the Clerk of the Court on July 18, 2016. (ECF No. 4724.) The Clerk signed DPP's proposed order for entry of default on July 20, 2016. (ECF No. 4727.)

On August 14, 2017, the DPPs applied for default judgment by the Court against the Irico Defendants. (ECF No. 5191) The Application for Default Judgment is currently set for hearing on December 7, 2017. (ECF No. 5213.)

### III. ARGUMENT

#### A. Entry of Default Against Irico Should Be Vacated and DPP's Application for Default Judgment Should Be Denied as Moot

The Court should deny DPP's Application for Default Judgment as moot on the ground that Irico has sought to vacate the Clerk's July 20, 2016 default as void for lack of subject matter jurisdiction and for good cause. The Court lacks subject matter jurisdiction under the FSIA. (*See* Motion to Set Aside Default at 6-9.) In actions involving a "foreign state," the FSIA is the ***exclusive*** source of subject matter jurisdiction. *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 428-29, 434 (1989) (the FSIA is "the sole basis for obtaining jurisdiction over a foreign state in United States courts" and "must be applied by district courts in every action against a foreign sovereign"); *see also Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 706 (9th Cir. 1992) ("As a threshold matter therefore, a court adjudicating a claim against a foreign state must determine whether the FSIA provides subject matter jurisdiction over the claim."); *MOL, Inc. v. Peoples Republic of Bangladesh*, 736 F.2d 1326, 1328 (9th Cir. 1984)

("As section 1330(a) indicates, sovereign immunity is not merely a defense under the FSIA. Its absence is a jurisdictional requirement."); *MCI Telecomms. Corp. v. Alhadhood*, 82 F.3d 658, 662 (5th Cir. 1996) (vacating default judgment against United Arab Emirates where it was immune from suit under FSIA). The Irico entities are presumptively immune and it is DPP's burden to demonstrate the inapplicability of the FSIA. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Peterson v. Islamic Republic Of Iran*, 627 F.3d 1117, 1125 (9th Cir. 2010) (court begins with presumption of immunity "and then the plaintiff must prove that an exception to immunity applies").

Both of the Irico entities meet the statutory definition of "foreign state." At the time the original complaint was filed, Irico Group was 100 percent owned by the State Council of the People's Republic of China. (Zhang Decl. ¶ 6.) Irico Display, a State-owned holding company, was controlled by Irico Group and by the State, and for those reasons and others, it qualifies as an "organ" of a foreign state, entitling it the same immunity as Irico Group. (Motion to Set Aside Default at 7-8.) The Court thus lacks jurisdiction over claims against these entities, and a default entered in the absence of jurisdiction is void and must be vacated. *See, e.g.*, *Norton v. City of Whiteville*, No. 7:16-CV-300-BO, 2017 WL 912018, at *5 (E.D.N.C. Mar. 7, 2017) (setting aside entry of default where court determined it lacked subject matter jurisdiction over claims).

Even if the Court could exercise subject matter jurisdiction, the default should be vacated for "good cause" under Rule 55(c). (Motion to Set Aside Default at 9-14.) Each of the three factors courts consider under Rule 55(c) supports setting aside the default. *See Coen Co. v. Pan Int'l, Ltd.*, 307 F.R.D. 498, 503 (N.D. Cal. 2015) (Tigar, J.) (setting forth factors). First, DPPs would not be prejudiced if the default were set aside. At most, DPPs could claim that adjudication of their claims against Irico would be delayed, but courts hold that mere delay is not prejudicial. *See, e.g.*, *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980). Furthermore, DPP's own delay in seeking entry of default—a delay of more than six years—undermines any prejudice they attempt to assert here. Second, Irico has meritorious defenses that it should be afforded the opportunity to present. Most significantly, there is insufficient evidence that Irico joined the alleged global CRT cartel. Third, Irico has not engaged

in any bad faith conduct that could justify default. There is no bad faith present, and as this Court has held, even evidence of procedural gamesmanship fails to constitute the "extreme circumstances" that are needed to justify the "drastic step of entering default." *Coen*, 307 F.R.D. at 507. Accordingly, if the default is not void for lack of jurisdiction, it should be vacated for good cause under Rule 55(c).

### B. Default Judgment Against Irico is Wholly Inappropriate

#### 1. DPPs Cannot Overcome the Strong Presumption in Favor of Adjudicating Cases on the Merits

The Ninth Circuit has "consistently emphasized that 'judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" *Mission Trading Co. v. Lewis*, No. 16-cv-01110-JST, 2016 WL 4268667, at *1 (N.D. Cal. Aug. 15, 2016) (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)); s*ee also Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985) (stating "default judgments are generally disfavored" and whenever possible "cases should be decided upon their merits"); *Am. States Ins. Corp. v. Tech. Surfacing, Inc.*, 178 F.R.D. 518, 521 (D. Minn. 1998) (noting that default judgments are only appropriate where there has been a "clear record of delay or contumacious conduct."). Nothing about the circumstances of this case are "extreme" in any way, much less sufficient to justify DPP's astounding request for $2.49 billion, plus $69 million in attorneys' fees.[2]

DPPs do not even attempt in their application to identify extreme circumstances that could justify default judgment under the Ninth Circuit standard. Instead, DPPs take the incorrect position that default judgment is the "inevitable result" of Irico's default. (App. at 3.) That, of course, is not the law and DPPs cite no authority for that assertion. *See Pena*, 770 F.2d at 814 (cases should be decided on the merits whenever possible). Indeed, in DPP's rendition of the applicable legal standard, they say nothing about the presumption in favor of decisions on the merits or the need for "extreme circumstances" to justify entry of default judgment. (*See* App. at

---

[2] DPP's claim for $69 million in attorneys' fees is particularly noteworthy considering their express argument that the only step necessary to assign liability to Irico is the entry of default judgment.

5-6.) Unable to identify the extreme circumstances required, DPPs repeatedly fall back on the tautological assertion that default judgment is warranted because Irico defaulted. (*See, e.g., id.* at 13 (arguing for presumption in favor of default because of Irico's "withdrawal from the case").)

### 2. Even if the Court Could Exercise Subject Matter Jurisdiction, the FSIA Precludes Entry of Default Judgment Against Irico

As discussed above, DPPs cannot obtain default judgment against Irico, because this Court lacks subject matter jurisdiction under the FSIA. But even if this Court were found to have subject matter jurisdiction, Section 1608(e) of the FSIA precludes the imposition of default judgment "against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Default under §1608(e) "must be treated differently than an ordinary default judgment." *Companía Interamericana Export-Import, S.A. v. Companía Dominicana de Aviación*, 88 F.3d 948, 951 (11th Cir. 1996); *see also Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1551 n. 19 (D.C. Cir. 1987) ("default judgments against foreign states could adversely affect this nation's relations with other nations"); *Doe v. Qi*, 349 F. Supp. 2d 1258, 1273 (N.D. Cal. 2004) (courts go "to considerable lengths to allow default judgments against foreign states to be set aside"). As a threshold matter, a plaintiff is required to establish entitlement to relief "by providing satisfactory evidence as to each element of the claims upon which relief was sought." *Companía Interamericana*, 88 F.3d at 951; *see also Moore v. United Kingdom*, 384 F.3d 1079, 1090 (9th Cir. 2004) (recognizing "long-standing presumption that due process requires plaintiffs seeking default judgments [against foreign sovereigns] to make out a prima facie case").

DPP's Application necessarily fails this standard. DPPs take the position that they "need not prove the Irico Defendants' liability." (App. at 3.) But under the FSIA, DPPs must prove their claims against Irico with "evidence." 28 U.S.C. § 1608(e). They fail to do so, which requires denial of their application.

### C. The *Eitel* Factors Weigh Strongly Against Default Judgment

Courts in the Ninth Circuit should consider the following factors in exercising discretion as to the entry of default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiffs' substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471-72. The Ninth Circuit in *Eitel* reiterated the principle that default judgments are "disfavored" and that "[c]ases should be decided upon their merits whenever reasonably possible." *Id.* at 1472. Each *Eitel* factor weighs against entry of default judgment, and together they weigh overwhelmingly against it.

#### 1. Possibility of Prejudice to DPPs If Relief is Denied

DPPs identify no real prejudice if default judgment is denied. The only "prejudice" they assert is that absent a default judgment, Irico will have prevailed and DPPs will have been denied recovery. (App. at 7.) Those assertions are untrue and, in any event, "being forced to litigate on the merits" is not considered prejudice. *Mission Trading*, 2016 WL 4268667, at *2 (quoting *TCI*, 244 F.3d at 701). DPPs make no attempt to point to any genuine prejudice, like "loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion.'" *Id.* (quoting *Thompson v. A. Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996)). DPPs can make no such showing. Furthermore, DPP's reliance on *Jiang v. New Millennium Concepts, Inc.*, No. 15-cv-04722-JST, 2016 WL 3682474 (N.D. Cal. July 11, 2016), is misplaced, because in that case the defendant had never appeared in the action and thus the case could only be decided by default judgment. *Id.* at *1-2.

Nor is mere delay in resolution of the case considered prejudicial. *See Keegel*, 627 F.2d at 374 (that "setting aside . . . default would delay satisfaction of plaintiffs' claim . . . is insufficient to require affirmance of the denial" of a motion to vacate default). DPPs cannot plausibly rely on delay as a factor supporting their Application, because they inexplicably waited *six years* before seeking entry of default in 2016. And when asked by the Court to show "good

cause" why they had not previously sought entry of default (ECF No. 4694 at 2), DPPs failed to make such a showing.

Moreover, DPPs cannot sustain an argument that they will be, or have been, denied recovery. To the contrary, DPPs acknowledge that they already have recovered over $212 million and highlight the availability of joint and several liability in this case, including over defendants against which there is no issue of subject matter jurisdiction. (App. at 3.) DPPs clearly spotted the issue of Irico's sovereign immunity from the start, asserting (without a plausible basis) in their complaint that Irico's conduct was not "mandated by the Chinese government." (Compl. ¶ 159.) Moreover, DPP's failure for more than six years to seek default against Irico, and then acting only pursuant to a show cause Order by the Court, demonstrates that they did not rely on Irico's liability in seeking and obtaining all or substantially all damages available to them from other defendants based on those defendants' joint and several liability. In short, DPPs not only have suffered no prejudice, they already have recovered for their alleged harms. Irico was merely a dormant afterthought that was roused to memory by the Court's Order Regarding Irico Entities in June 2016.

### 2. Substantive Merits of DPP's Claim and Sufficiency of Complaint

Two other *Eitel* factors require the Court to look at the merits of DPP's claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471-72. There are significant deficiencies in DPP's claims against Irico and these factors thus weigh against default judgment.

DPPs have not demonstrated that Irico joined the alleged global, twelve-year price-fixing conspiracy among CRT manufacturers. DPPs say there is "overwhelming evidence" that Irico "joined and participated" in the alleged conspiracy (App. at 3), but their submission reflects a paucity of evidence. DPPs offer only a handful of communications providing circumstantial evidence of meetings with competitors. They cite no direct evidence—documentary or testimonial—that Irico actually reached agreements with competitors involving CRTs sold in the U.S. Unlike some other defendants, Irico was never the subject of any criminal inquiry or investigation. (Compl. ¶¶ 122-33.) To establish that Irico violated Section 1 of the Sherman Act, DPPs would have to show that Irico knowingly joined and participated in the alleged conspiracy.

*See United States v. Duran*, 189 F.3d 1071, 1081 (9th Cir. 1999). The emails DPP's cite (App. for Default at 10-11) are insufficient to constitute an agreement to fix prices, because none of them evidence an actual agreement. *In re Citric Acid Litig.*, 191 F.3d 1090, 1103 (9th Cir. 1999).

DPP's claim for $2.4 billion in damages from Irico also has no merit and has no objective basis. It is based entirely on an inflated damages opinion from DPP's economist. Irico understands that this expert's damages model was heavily contested and subject to substantial criticism by a host of experts engaged jointly and individually by other defendants and DPPs were never put to their proof on the asserted damages claim. Since DPP's claims against all defendants are joint and several, the attacks lodged by other defendants apply with equal force to the Court's current assessment of the merits of DPP's assertions. DPPs should not be able to submit that damage number as uncontested in a default proceeding when the damages were in fact hotly contested. Allowing them to do so would undermine the requirement that default judgments be based on damages that are not reasonably contestable. *See, e.g., Anderson v. Specified Credit Ass'n, Inc.*, No. CIV. 11-53-GPM, 2011 WL 2414867, at *2 (S.D. Ill. June 10, 2011) (in context of request for default judgment, "allegations regarding the amount of damages must be proven" and the "district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty").

### 3. **Amount of Money at Stake**

The fourth *Eitel* factor—the amount of money at stake—overwhelmingly counsels against entry of default judgment. When the amount at stake is substantial, default judgment is disfavored. *See Eitel*, 782 F.2d at 1472 (affirming denial of default judgment where plaintiff sought $3 million in damages and the parties disputed the alleged facts); *see also Helton v. Factor 5, Inc.*, No: C 10–04927 SBA, 2013 WL 5111861 at *4-5 (N.D. Cal. Sept. 12, 2013) (finding amount of money at stake—$1,406,168.65—was "unreasonably large to award" given "scant information provided" by plaintiffs); *Kaur v. Singh*, No. 2:13-CV-89-KJM-EFB, 2015 WL 5330294, at *4 (E.D. Cal. Sept. 10, 2015) (finding that $3 million in damages was a "large sum of money" which "weighs against default judgment"); *Lasheen v. Loomis Co.*, No. 2:01-CV-0227-LKK-EFB, 2013 WL 1178209, at *8 (E.D. Cal. Mar. 21, 2013) (judgment for

$604,580.51 is "significant" and "[t]herefore, the sum of money at stake weighs against the entry of default judgment"). Here, the amount at stake is unquestionably substantial: DPPs seek a whopping $2.49 billion default, plus another $69 million in attorneys' fees. (App. at 3.) DPPs do not dispute that this factor weighs against default judgment, but attempt to justify default here by pointing out that other courts have entered "substantial default judgments." (App. at 12 (citing defaults of $184 million and $413 million).) But the judgments they cite were fractions of the $2.49 billion judgment DPPs seek here, and in one of the cases the default was used a sanction for discovery abuses. *See Domanus v. Lewicki*, 742 F.3d 290, 300-01 (7th Cir. 2014).

DPPs also contend that a massive default judgment against Irico is warranted because otherwise DPPs "will have no recourse for the part of their claim which is unpaid." (App. at 11.) But DPPs are making multiple unwarranted assumptions, including Irico's participation in the alleged conspiracy and the accuracy of the damages numbers in their expert damages report. As discussed above, the damages asserted by DPPs are in serious dispute. Equally without merit, DPPs say that the multi-billion dollar default judgment is justified because there can be no "serious reservations" that Irico is liable for that amount. (App. at 11.) Unlike other defendants, Irico was never the subject of any investigations, and the only evidence DPPs have adduced is a handful of emails that show, at most, competitor information exchanges with no apparent connection to the United States or to DPPs.

### 4. Possibility of Dispute As to Any Material Facts in the Case

The fifth *Eitel* factor concerns the likelihood of a dispute regarding the material facts. *Eitel*, 782 F.2d at 1471-72. DPPs misconstrue this factor and brush it aside, arguing that there is no possibility of dispute since Irico has not appeared in the case. (App. at 12.) The inquiry, however, is whether there the parties would dispute the material facts if the case were tried on the merits, which is clearly the case here. Compare *Board of Trustees of the Clerks v. Piedmont Lumber & Mill Co.*, No. C 10-1757 MEJ, 2010 WL 4922677, at *5 (N.D. Cal. Nov. 29, 2010) (*Eitel* factor weighed in favor of default judgment where there was no dispute about discrete issue of "amount of delinquent contributions owed") *with United States v. Sterling Centrecorp, Inc.*, No. 2:08-CV-02556 MCE JMF, 2011 WL 2198346, at *6 (E.D. Cal. June 6, 2011) (holding

that because "material facts set forth in plaintiffs' complaint are disputed," *Eitel* factor which weighs against entry of default judgment).  The material facts in this case have been contested by other defendants for many years, and both the existence of the cartel and the alleged involvement of Irico is expressly disputed, as evidenced by Irico's joinder in the Motion to Dismiss.

### 5. Excusable Neglect

The sixth *Eitel* factor considers whether the failure to respond to plaintiff's allegations was the result of excusable neglect.  *Eitel*, 782 F.2d at 1471-72.  The Ninth Circuit has held that if a defendant's conduct is not "culpable," its failure to respond is excusable under the "excusable neglect" standard.  *TCI*, 244 F.3d at 696.  Conduct is not culpable unless there is "a devious, deliberate, willful, or bad faith failure to respond." *Id.* at 698.  DPPs have pointed to no conduct by Irico that is "devious, deliberate, willful, or [in] bad faith." *Id*.

In the related context of motions under Rule 55(c), the Ninth Circuit has held that "a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Mission Trading*, 2016 WL 4268667, at *3 (quoting *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2010)).  DPPs are unable to identify any bad faith conduct on Irico's part that could satisfy this standard.  Here, Irico withdrew from the case based on a sound belief that it was immune from suit as a foreign sovereign.  (Zhang Decl. ¶ 5.)  That cannot constitute bad faith conduct.  *See also Gregorian v. Izvestia*, 871 F.2d 1515, 1522 (9th Cir. 1989) (defendants' conduct not culpable under Rule 55(c) where defendants failed to respond to a lawsuit because they believed that the court lacked subject matter jurisdiction over them).

### 6. Policy Favoring Decisions on the Merits

DPPs fail to identify any factors that would overcome the policy favoring decisions on the merits.  (*See* App. at 12-13.)  Simply pointing out that Irico has defaulted (*id.*) does not address this factor.  The *Eitel* factors only come into play when a defendant has defaulted.  As set

forth above, DPPs cannot show any circumstances overcoming the strong preference for decisions on the merits.

## IV. CONCLUSION

The Court should set aside the Clerk's default against Irico and deny DPP's Application for Default Judgment as moot.

Dated: October 25, 2017

*/s/ Stuart C. Plunkett*

John Taladay (*pro hac vice*)
john.taladay@bakerbotts.com
Eric Koons (*pro hac vice*)
eric.koons@bakerbotts.com
1299 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

Stuart C. Plunkett (State Bar No. 187971)
stuart.plunkett@bakerbotts.com
Rishi P. Satia (State Bar No. 301958)
rishi.statia@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

*Attorneys for*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*