John Taladay (*pro hac vice*)
john.taladay@bakerbotts.com
Eric Koons (*pro hac vice*)
eric.koons@bakerbotts.com
BAKER BOTTS LLP
1299 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone:  (202) 639-7700
Facsimile:   (202) 639-7890

Stuart C. Plunkett (State Bar No. 187971)
stuart.plunkett@bakerbotts.com
Rishi P. Satia (State Bar No. 301958)
rishi.statia@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, California 94111
Telephone:  (415) 291-6200
Facsimile:   (415) 291-6300

*Attorneys for*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | Case No. 3:07-cv-05944-JST |
| | MDL No.: 1917 |
| THIS DOCUMENT RELATES TO: | |
| *ALL DIRECT PURCHASER ACTIONS* | **IRICO'S MOTION TO SET ASIDE DEFAULT (FED. R. CIV. P. 55(C))** |
| | Date:          December 14, 2017 |
| | Time:          2:00 p.m. |
| | Judge:         Honorable Jon S. Tigar |
| | Courtroom:  9 |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 14, 2017, at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Jon S. Tigar, United States District Judge of the Northern District of California, San Francisco Courthouse, located at Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, Irico Group Corporation ("Irico Group") and Irico Display Devices Co., Ltd. ("Irico Display," and together with Irico Group, "Irico" or "the Irico entities"), by and through their undersigned counsel, will and hereby do move, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 55(c)  for an Order vacating or setting aside the Entry of Default entered by this Court on July 20, 2016 (Dkt. 4727); or, alternatively, for an Order dismissing all claims in the Consolidated Amended Complaint ("Complaint" or "Compl.") (Dkt. 436) against Irico; and for an Order denying as moot Direct Purchaser Plaintiffs' Application for Default Judgment by the Court Against the Irico Defendants (Dkt. 5191).  Irico also requests that, pending the Court's ultimate decision on the immediate Motion, it stay proceedings on the Application for Default Judgment.

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities in support thereof, the Declaration of Wenkai Zhang, any materials attached thereto or otherwise found in the record, along with the argument of counsel and such other matters as the Court may consider.

## ISSUES TO BE DECIDED

1.     Whether the Entry of Default is void because the Court lacks subject matter jurisdiction over Irico pursuant to the Foreign Sovereign Immunities Act, 28 U.S. §§ 1602 *et seq.*

2.     Whether the Entry of Default should be set aside under Rule 55(c) for good cause where (a) DPPs would suffer no prejudice if default were set aside, (b) Irico has meritorious defenses to DPP's claims, and (c) Irico engaged in no culpable conduct.

## **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION.......................................................................... i

ISSUES TO BE DECIDED ........................................................................................... i

I.     INTRODUCTION ............................................................................................... 1

II.    BACKGROUND .................................................................................................. 2

       A.     Irico.......................................................................................................... 2

       B.     DPP's Claims Against Irico...................................................................... 3

       C.     Default Proceedings Against Irico ........................................................... 4

III.   ARGUMENT ....................................................................................................... 5

       A.     The Entry of Default Should be Set Aside as Void, Because the Court Lacks
              Subject Matter Jurisdiction Over Claims Against Irico ....................................... 6

       B.     The Entry of Default Should Be Set Aside for Good Cause Pursuant to
              Rule 55(c) ................................................................................................ 9

              1.     DPPs Cannot Demonstrate Prejudice .................................................... 10

              2.     Allowing the Default to Stand Would Deprive Irico of the Ability
                     To Litigate Meritorious Defenses.......................................................... 11

              3.     The Default Was Not a Result of Irico's Culpable Conduct ................. 13

IV.    CONCLUSION ................................................................................................. 14

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

**Cases**

4

*Alperin v. Vatican Bank*,
    360 F. App'x 847 (9th Cir. 2009) ........................................................................... 8

5

6

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989) ............................................................................................... 6

7

*Coen Co. v. Pan Int'l, Ltd.*,
    307 F.R.D. 498 (N.D. Cal. 2015) ................................................................... passim

8

9

*Corporacion Mexicana de Servicios Maritimos, S.A. de C.V v. M/T Respect*,
    89 F.3d 650 (9th Cir. 1996) ................................................................................... 8

10

*Corzo v. Banco Cent. Reserva del Peru*,
    243 F.3d 519 (9th Cir. 2001) ................................................................................. 7

11

12

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003) ............................................................................................... 7

13

*E. Digital Corp. v. Ivideon LLC*,
    No. 15-CV-00691-JST, 2016 WL 4728550 (N.D. Cal. Sept. 12, 2016) ........... 1, 14

14

15

*EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*,
    322 F.3d 635 (9th Cir. 2003) ................................................................................. 7

16

*EOTT Energy Operating Ltd. P'Ship v. Winterthur Swiss Ins. Co.*,
    257 F.3d 992 (9th Cir. 2001) ................................................................................. 7

17

18

*Falk v. Allen*,
    739 F.2d 461 (9th Cir. 1984) ............................................................................... 10

19

*Gates v. Victor Fine Foods*,
    54 F.3d 1457 (9th Cir. 1995) ................................................................................. 8

20

21

*Gregorian v. Izvestia*,
    871 F.2d 1515 (9th Cir. 1989) ............................................................................. 14

22

*Hammer v. Drago*,
    940 F.2d 524 (9th Cir. 1991) ............................................................................ 1, 9

23

24

*Haskins v. Fuller-O'Brien, Inc.*,
    No. 11-CV-05142-JST, 2013 WL 1789672 (N.D. Cal. Apr. 26, 2013) ................. 11

25

*HICA Educ. Loan Corp. v. McKinney*,
    No. 10-1205-CV-W-ODS, 2011 WL 10653873 (W.D. Mo. July 18, 2011) ........... 6

26

*In re Citric Acid Litig.*,
    191 F.3d 1090 (9th Cir. 1999) ............................................................................. 12

27

28

*Keegel v. Key West & Caribbean Trading Co.*,
  627 F.2d 372 (D.C. Cir. 1980) ......................................................................... 10

*Kokkonen v. Guardian Life Ins. Co.*,
  511 U.S. 375 (1994) ........................................................................................... 9

*Krehl v. Baskin-Robbins Ice Cream Co.*,
  664 F.2d 1348 (9th Cir. 1982) ........................................................................ 12

*Mission Trading Co., Inc. v. Lewis*,
  No. 16-CV-01110-JST, 2016 WL 4268667 (N.D. Cal. Aug. 15, 2016) ................. 9, 10, 11, 13

*MOL, Inc. v. Peoples Republic of Bangladesh*,
  736 F.2d 1326 (9th Cir. 1984) .......................................................................... 6

*Monahan v. Rottkamp*,
  No. CIV. A. 92-5201, 1993 WL 59298 (E.D. Pa. Mar. 2, 1993) ........................ 6

*Murphy v. Korea Asset Mgmt. Corp.*,
  421 F. Supp. 2d 627 (S.D.N.Y. 2005) ............................................................... 7

*Norton v. City of Whiteville*,
  No. 7:16-CV-300-BO, 2017 WL 912018 (E.D.N.C. Mar. 7, 2017) ...................... 6

*Peterson v. Islamic Republic of Iran*,
  627 F.3d 1117 (9th Cir. 2010) ........................................................................... 9

*Rep. of Austria v. Altmann*,
  541 U.S. 677 (2004) ........................................................................................... 6

*Sancap Abrasives Corp. v. Swiss Indus. Abrasives*,
  19 F. App'x 181 (6th Cir. 2001) ....................................................................... 13

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) ........................................................................................... 9

*Siderman de Blake v. Republic of Argentina*,
  965 F.2d 699 (9th Cir. 1992) ............................................................................. 6

*TCI Group Life Ins. Plan v. Knoebber*,
  244 F.3d 691 (9th Cir. 2001) ........................................................................ 1, 9, 10, 14

*United States v. Duran*,
  189 F.3d 1071 (9th Cir. 1999) ......................................................................... 12

*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*,
  615 F.3d 1085 (9th Cir. 2010) ................................................................... 10, 13

**Statutes**

28 U.S.C. § 1602 .................................................................................................. i, 2, 6

28 U.S.C. § 1603 .................................................................................................. 6

28 U.S.C. § 1604 .................................................................................................. 6

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................. i

Fed. R. Civ. P. 55(c) ........................................................................................ passim

I.       **INTRODUCTION**

In the Ninth Circuit, cases should be decided by default only in "extreme circumstances." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001).  Cases must be decided on their merits "[w]henever it is reasonably possible."  *Hammer v. Drago*, 940 F.2d 524, 525 (9th Cir. 1991).  For these reason, the rules governing the setting aside of defaults are liberally construed.  Absent some showing of prejudice to the plaintiff, lack of any meritorious defense, or bad faith conduct by the defendant—none of which is present here—a default should be aside in favor of a decision on the merits.

Other than the sheer magnitude of the default judgment DPPs now seek against Irico[1]—a staggering ***$2.49 billion***, plus an equally staggering ***$69 million*** in attorneys' fees—there is nothing exceptional about this case to warrant default.  Irico appeared in the case, accepted service, joined a motion to dismiss with the other defendants because it believed the claims were unfounded, and then made a decision, on the basis of its sovereign immunity, not to answer the complaint.  (Declaration of Wenkai Zhang in Support of Irico's Motion to Set Aside Default ("Zheng Decl.") ¶ 5.)  As this Court and the Ninth Circuit have repeatedly held in granting and affirming motions to set aside defaults, a defendant's conscious decision not to answer is insufficient to overcome the presumption against default.  *See, e.g.*, *E. Digital Corp. v. Ivideon LLC*, No. 15-CV-00691-JST, 2016 WL 4728550, at *2 (N.D. Cal. Sept. 12, 2016) (Tigar, J.) (citing *TCI*, 244 F.3d at 697).

DPPs are in no position to claim prejudice.  They waited until July 2016, more than ***six years*** after Irico did not answer DPP's complaint, to seek entry of default by the Clerk of the Court.  In the intervening six years, DPPs made no effort whatsoever to pursue their claims against Irico.  Even in July 2016, DPPs application for entry of default came only at the Court's behest as part of an effort to determine which plaintiffs, if any, still had affirmative claims against Irico.  As part of that effort, the Court ordered plaintiffs with claims against Irico to demonstrate

---

[1] Irico has separately filed a response to DPPs Application for Default Judgment (ECF No. 5191).

"good cause" why entry of default had not previously been sought.  DPPs had no answer for its failure to seek entry of default.

This is also a case where Irico has meritorious defenses, among them a significant threshold issue regarding the Court's ability to exercise subject matter jurisdiction and thus the validity of the action itself.  The Irico entities are "instrumentalities" of a "foreign state," which means the Court cannot exercise jurisdiction over claims against Irico under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* ("FSIA").  At the time the original complaint was filed, Irico Group was 100% owned by the State Council of the People's Republic of China ("State Council").  (Zhang Decl. ¶ 6.)  Irico Display, a State-owned holding company, was under the control and supervision of Irico Group and the State Council and thus for several reasons qualifies as an "organ" of a foreign state, entitling it the same immunity as Irico Group. (*Id*. ¶¶ 8-9.)  A default entered in the absence of jurisdiction is void and must be set aside.

Irico has other valid defenses, including the inadequate evidence of Irico's participation in the alleged global CRT conspiracy.  The allegations against Irico in DPP's Complaint are essentially nonexistent, and the only evidence DPPs cite in their Application for Default Judgment—a total of 11 emails—shows that DPPs have, at most, circumstantial evidence of meetings that do not evidence participation in a global cartel.  The law is clear that Irico must be afforded the opportunity to present its defenses.

The Court should vacate the entry of default and deny DPP's Application for Default Judgment as moot.

## II.     BACKGROUND

### A.     Irico

Irico Group is a Chinese company with its principal place of business at 1 Caihong Rd., Xianyang City, Shaanxi Province, 712021, People's Republic of China.  (Compl. ¶ 37.)  At the time DPPs filed their original complaint in 2007, Irico Group was a State-Owned Enterprise ("SOE") of the State Council of the People's Republic of China.  (Zhang Decl. ¶ 6.)  The State Council held 100% of Irico Group's shares.  (*Id*.; *see also* Dkt. 310 (corporate disclosure statement filed on June 24, 2008 stating that "Irico Group . . . is a corporation wholly owned by

the People's Republic of China and has no parent company").)  Through 2000, Irico Group was managed and directly supervised by the Ministry of Industry and Information Technology of the State Council.  (Zhang Decl. ¶ 7.)  From 2000 to 2003, Irico Group was managed directly by the Central Enterprise Work Committee, and from 2003 forward, Irico Group was managed directly by the State-owned Assets Supervision and Administration Commission of the State Council ("SASAC").  (*Id*.)

Irico Display is also a Chinese company and has its principal place of business at 1 Caihong Rd., Xianyang City, Shaanxi Province, 712021, People's Republic of China.  (Compl. ¶ 38.)  At the time DPPs filed their complaint in 2007, Irico Display, a State-owned holding company, was a subsidiary of Irico Group, and Irico Display's board of directors and operations was managed by both Irico Group and the State Council.  (Zhang Decl. ¶¶ 8, 9.)

As SOEs that effectively operated under the supervision and control of the State Council of the People's Republic of China, the Irico entities reasonably believed they were immune from DPP's suit under notion of foreign sovereign immunity and accordingly did not participate in this action beyond joining a motion to dismiss, as described below.  (*See id*. ¶ 5.)

**B.**    **DPP's Claims Against Irico**

DPPs filed their original complaint on November 26, 2007, naming Irico Group and Irico Display as defendants.  (ECF No. 1.)  DPPs served Irico on June 3, 2007, under the Hague Convention, and filed a Proof of Service on July 22, 2008.  (ECF No. 336.)  Irico appeared through counsel, the Pillsbury firm, on June 24, 2008, and filed a Certificate of Interested Entities the same day.  (ECF No. 308.)  Irico stipulated that service was proper on August 22, 2008.  (ECF No. 3610.)

On March 16, 2009, DPPs filed the Consolidated Amended Complaint naming Irico Group and Irico Display as defendants.  (ECF No. 436.)  Other than providing a description of the Irico entities (*see id.* ¶¶ 37-40), the 222-paragraph Complaint includes just one paragraph mentioning Irico:

> Irico, through IGC, IGE, and IDDC, participated in multiple illegal
> bilateral and at least several dozen illegal group meetings from 1998 to
> 2006 in which unlawful agreements as to, inter alia, price, output

restrictions, and customer and market allocation of CRT Products occurred.  These meetings took place in China.  Irico never effectively withdrew from this conspiracy.  None of Irico's conspiratorial conduct in connection with CRT Products was mandated by the Chinese government; Irico was acting to further its independent private interests in participating in this conspiracy.

(*Id.* ¶ 159.)

On May 18, 2009, Irico joined the Joint Motion to Dismiss DPPs' Consolidated Amended Complaint filed by defendants.  (ECF No. 479.)  On March 30, 2010, the Court adopted the Special Master's Report, Recommendations, and Tentative Rulings Regarding Defendants' Motions to Dismiss denying the Motion to Dismiss (ECF No. 597), noting that the Complaint "plausibly suggest[s] that each Defendant participated in the alleged conspiracies" but "[w]hether Plaintiffs will be able to prove these allegations against each Defendant is another matter entirely[,]" ultimately concluding that "it would be inappropriate to dismiss any of the Defendants from this action without the benefit of discovery."  (ECF No. 665; *see also* Special Master's Rp't & Rec. Regarding Defs' Motions to Dismiss, 2010 WL 9540818, at *8 (N.D. Cal. Feb. 5, 2010) ("If some defendants, whether they are individual defendants, defendant groups, or individual defendants within a group, conclude that they did not participate in the charged activities, they are free to assert that defense and put plaintiffs to their proof.").)  The Order made no findings specific to Irico.

On June 23, 2010, the Pillsbury firm moved to withdraw as Irico's counsel, undertaking to continue to accept service on behalf of Irico until substitute counsel appeared.  (ECF No. 729.)  The Court entered an Order granting the withdrawal motion on June 24, 2010.  (ECF No. 732.)

## C.   Default Proceedings Against Irico

Six years later, with activity as to Irico wholly dormant, on June 28, 2016, the Pillsbury firm moved to end its obligation to continue to accept service on Irico's behalf.  In response, the Court issued an Order Regarding Irico Entities, requiring that "any plaintiff with pending affirmative claims against the Irico Entities" provide the following information to the Court by July 5, 2016:  "(1) the date on which it filed its operative claims against the Irico Entities; (2) whether the Irico Entities have been served with those claims; and (3) whether the Irico Entities have answered those claims."  (ECF No. 4694 at 2.)  If any plaintiff contended that Irico had not

answered pending claims, the Court ordered that the filing party show "good cause why it has not previously requested entry of default as to the Irico Entities." (*Id.*)

DPPs responded to the Order, stating that Irico had not answered the Complaint filed in 2009. (ECF No. 4705 at 1.)  In response to the Court's order to show "good cause" as to why entry of ***default*** had not been sought previously, DPPs balked:  DPPs addressed why they had not sought a ***default judgment***, but not why they had failed to seek entry of default against Irico. (*Id.*)  DPPs stated it was premature to seek a default judgment when claims against co-defendants were still pending and liability is joint and several.  (*Id.* at 1-2.)  The Court nonetheless gave DPPs ten days to seek entry of default under Rule 55(a).  (ECF No. 4709.)  DPP's filed an Application for Default with the Clerk of the Court on July 18, 2016.  (ECF No. 4724.)  The Clerk signed DPP's proposed order for entry of default on July 20, 2016.  (ECF No. 4727.)

On August 14, 2017, the DPPs applied for default judgment by the Court against the Irico Defendants.  (ECF No. 5191)  The Application for Default Judgment is currently set for hearing on December 7, 2017.  (ECF No. 5213.)

## III.   <u>ARGUMENT</u>

Rule 55(c) provides that a "court may set aside an entry of default for good cause[.]"  Fed. R. Civ. P. 55(c).  In determining whether to set aside entry of default under Rule 55(c), courts consider the following factors:  (1) whether plaintiffs would be prejudiced if the judgment is set aside, (2) whether defendants have meritorious defenses, and (3) whether defendants' culpable conduct led to the default.  *See Coen Co. v. Pan Int'l, Ltd.*, 307 F.R.D. 498, 503 (N.D. Cal. 2015) (Tigar, J.).  All of these factors favor setting aside default.  DPPs would suffer no prejudice since being forced to litigate on the merits is not considered prejudicial.  Irico has meritorious defenses, including a threshold defense of lack of subject matter jurisdiction.  And Irico has not engaged in any "culpable" conduct as that standard has been defined by the Ninth Circuit.

Here, because the Court lacks subject matter jurisdiction, the default is void and the Court need not reach the Rule 55(c) factors.

### A.   The Entry of Default Should be Set Aside as Void, Because the Court Lacks Subject Matter Jurisdiction Over Claims Against Irico

The default entered against Irico is void because the Court lacks subject matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* (FSIA).  *See Norton v. City of Whiteville*, No. 7:16-CV-300-BO, 2017 WL 912018, at *5 (E.D.N.C. Mar. 7, 2017) (setting aside entry of default where court determined it lacked subject matter jurisdiction over claims); *HICA Educ. Loan Corp. v. McKinney*, No. 10–1205–CV–W–ODS, 2011 WL 10653873, at *2 (W.D. Mo. July 18, 2011) (vacating entry of default for lack of subject matter jurisdiction); *Monahan v. Rottkamp*, No. CIV. A. 92-5201, 1993 WL 59298, at *1-2 (E.D. Pa. Mar. 2, 1993) (striking entry of default where court lacked subject matter jurisdiction).

The FSIA insulates Irico from the exercise of federal jurisdiction.  *See* 28 U.S.C. § 1604. The FSIA is "a comprehensive statute containing a set of legal standards governing claims of immunity in every civil action against a foreign state or its political subdivisions, agencies, or instrumentalities."  *Rep. of Austria v. Altmann*, 541 U.S. 677, 691 (2004) (internal quotation marks omitted).  Under the FSIA, the definition of a "foreign state" includes any "agency or instrumentality of a foreign state," to wit, any entity:

> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b).  In actions involving a "foreign state," the FSIA is the *exclusive* source of subject matter jurisdiction.  *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 428-29, 434 (1989) (the FSIA is "the sole basis for obtaining jurisdiction over a foreign state in United States courts" and "must be applied by district courts in every action against a foreign sovereign"); *see also Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 706 (9th Cir. 1992) ("As a threshold matter, therefore, a court adjudicating a claim against a foreign state must determine whether the FSIA provides subject matter jurisdiction over the claim."); *MOL, Inc. v. Peoples Republic of Bangladesh*, 736 F.2d 1326, 1328 (9th Cir. 1984) ("As section 1330(a)

indicates, sovereign immunity is not merely a defense under the FSIA. Its absence is a jurisdictional requirement.").

For purposes of applying the FSIA, an entity's status must be determined at the time the complaint was filed. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 479-80 (2003).  At the time the DPPs filed their original complaint against Irico, Irico Group was 100% owned by the State Council of the People's Republic of China.  (Zhang Decl. ¶ 6; *see also* Dkt. 310 (corporate disclosure statement filed on June 24, 2008 stating that "Irico Group . . . is a corporation wholly owned by the People's Republic of China and has no parent company").)  Irico Group is thus a "foreign state" for purposes of Section 1603(b)(2) and its immunity from suit is therefore presumed.  *See Corzo v. Banco Cent. Reserva del Peru*, 243 F.3d 519, 522 (9th Cir. 2001) ("Under the FSIA, foreign sovereigns are presumptively immune from suit in the United States.").

Similarly, at the time suit was filed in 2007, Irico Display was an "organ" of a foreign state within the meaning of Section 1603(b)(2) of the FSIA and therefore entitled to the same immunity as Irico Group.  The Ninth Circuit and other courts hold that "organ" should be interpreted broadly to reflect congressional intent that it be "difficult for private litigants to bring foreign governments into court, thereby affronting them."  *See, e.g.*, *EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*, 322 F.3d 635, 640 (9th Cir. 2003) ("entity may be an organ of a foreign state even if it has some autonomy from the foreign government"); *EOTT Energy Operating Ltd. P'Ship v. Winterthur Swiss Ins. Co.*, 257 F.3d 992, 997 (9th Cir. 2001) (even if entity's shares are "not directly held by Ireland, it is still possible for it to be an 'organ' of a foreign state"); *Murphy v. Korea Asset Mgmt. Corp.*, 421 F. Supp. 2d 627, 640-41 (S.D.N.Y. 2005) (determining status as "organ of a foreign state" is "*ad hoc*" analysis since organs "likely to share characteristics both with governments . . . and non-governmental entities").  Interpreting the term "organ" broadly, the Ninth Circuit considers several factors to determine whether an entity is an "organ of a foreign state" for purposes of the FSIA, including the circumstances surrounding the entity's creation, its organizational structure, the level of government

supervision, and the entity's status, obligations, and privileges under state law. *See Alperin v. Vatican Bank*, 360 F. App'x 847, 849 (9th Cir. 2009).

Applying these factors demonstrates that Irico Display is an organ of the People's Republic of China. At the time the DPPs filed their original complaint, Irico Display was a State-owned holding company that was managed by both Irico Group and the State Council. (Zhang Decl. ¶¶ 8, 9.) All of Irico Display's major business decisions and transactions required Irico Group's review and approval. (*Id.* ¶ 10.) Several types of transactions and business decisions, however, were beyond Irico Group's authority, and for those Irico Display required approval from the State Council. (*Id.*) For example, Irico Display required State Council approval to cease operation of its business or even declare bankruptcy, sell shares resulting in a change in control over Irico Display, issue stocks and bonds, and to propose budgets. (*Id.*) *See Gates v. Victor Fine Foods*, 54 F.3d 1457, 1461 (9th Cir. 1995) (corporation found to be organ of state could only act on matters authorized by government). Irico Group, whose key management posts were appointed directly by the Ministry of Personnel of the State Council, directly appointed Irico Display's management. (*Id.* ¶ 8, 9.) Moreover, like civil servants, Irico Display's management was subject to the same regulations applied to state officials. (*Id.*) *See Corporacion Mexicana de Servicios Maritimos, S.A. de C.V v. M/T Respect*, 89 F.3d 650, 655 (9th Cir. 1996) (finding subsidiary of government-owned enterprise was "organ of [the] foreign state" where subsidiary was controlled by government appointees). Accordingly, the State Council, directly or through Irico Group, played an active supervisory role over Irico Display. (*Id.* ¶¶ 8-10.) *See Alperin*, 360 F. App'x at 850 (it is not necessary for government to maintain day-to-day control for entity to be considered organ of state under FSIA); *Gates*, 54 F.3d at 1461 (though Canadian government did not control corporation's day-to-day operations, it still exerted sufficient active supervisory role for corporation to qualify as "organ" of state). Considering these factors together, Irico Display is characteristically an "organ" of the State Council and thus, like Irico Group, is immune from suit under the FSIA.

Should DPP's challenge the applicability of the FSIA in this case, they bear the burden of demonstrating that the Court may properly invoke its subject matter jurisdiction. *Kokkonen v.*

*Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Because DPP's have not demonstrated the inapplicability of the FSIA, the Irico entities are presumptively immune.  *Id.; see also Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) ("Under the Act, a foreign state is presumptively immune from the jurisdiction of the United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."); *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1125 (9th Cir. 2010) ("The structure of the FSIA—which codifies the background rule that foreign states are immune from suit and execution, and then creates narrow exceptions—suggest that courts must begin with the presumption that a foreign state is immune and then the plaintiff must prove that an exception to immunity applies.").

## B.    The Entry of Default Should Be Set Aside for Good Cause Pursuant to Rule 55(c)

Alternatively, the Court should set aside the entry of default under Rule 55(c).  Rule 55(c) provides that a "court may set aside an entry of default for good cause[.]"  Fed. R. Civ. P. 55(c). The rules governing relief from entry of default and default judgments "are remedial in nature and . . . must be liberally applied."  *TCI*, 244 F.3d at 696; *see also Mission Trading Co., Inc. v. Lewis*, No. 16-CV-01110-JST, 2016 WL 4268667, at *2 (N.D. Cal. Aug. 15, 2016) (Tigar, J.) ("the burden on a party seeking to vacate a default judgment is not extraordinarily heavy") (citations and quotations omitted).  Defaults are disfavored by the federal courts and public policy mandates that "'[w]henever it is reasonably possible, cases should be decided upon their merits."  *Hammer*, 940 F.2d at 525.  A default is "appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits."  *TCI*, 244 F.3d at 696.

In determining whether to set aside entry of default under Rule 55(c), courts consider similar factors as they do under Rule 60(b) (which governs setting aside judgments):  (1) whether plaintiffs would be prejudiced if the judgment is set aside, (2) whether defendants have meritorious defenses, and (3) whether defendants' culpable conduct led to the default.  *See Coen*, 307 F.R.D. at 503.  These factors, however, are "'***more liberally*** applied in the Rule 55(c) context,' as where no judgment has been entered, 'there is no interest in the finality of the

1  judgment with which to contend.'"  *Mission Trading*, 2016 WL 4268667, at *1 (citing *United*

2  *States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 n.1 (9th Cir. 2010)

3  (emphasis added)).  The Ninth Circuit has "consistently emphasized that 'judgment by default is

4  a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be

5  decided on the merits.'"  *Id*. (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).  "[W]here

6  there has been *no* merits decision, appropriate exercise of district court discretion under Rule

7  60(b) requires that the finality interest should give way fairly readily, to further the competing

8  interest in reaching the merits of a dispute."  *TCI*, 244 F.3d at 696.

9        Here, DPPs cannot demonstrate the compelling circumstances necessary to prevent the

10  default from being set aside.  Each of the factors that courts evaluate favors vacating the default.

## 1.  DPPs Cannot Demonstrate Prejudice

12        DPPs cannot demonstrate that they would suffer any prejudice if the default were set

13  aside.  The relevant question "is not whether the Defendant's failure to appear has already caused

14  Plaintiffs to incur a burden or expense[,]" but "whether Plaintiffs' ability to pursue [their] claim

15  will be hindered *in the future* as a result of Defendant's previous failure to appear."  *Coen*, 307

16  F.R.D. at 504 (citation and internal quotation marks omitted) (emphasis added); *see also Keegel*

17  *v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980) (that "setting aside . .

18  . default would delay satisfaction of plaintiffs' claim . . . is insufficient to require affirmance of

19  the denial" of motion to vacate default).  "To be prejudicial, the setting aside of a judgment must

20  result in greater harm than simply delaying resolution of the case," as "*being forced to litigate* on

21  the merits" *is not considered prejudice*.  *Mission Trading*, 2016 WL 4268667, at *2 (quoting

22  *TCI*, 244 F.3d at 701) (emphasis added).  "Examples of prejudice that courts have concluded

23  weigh against the setting aside of a default include 'tangible harm such as loss of evidence,

24  increased difficulties of discovery, or greater opportunity for fraud or collusion.'"  *Id.* (quoting

25  *TCI*, 244 F.3d at 701).

26        DPPs have not established that Irico's failure to appear resulted in the loss of evidence,

27  hampered DPPs ability to conduct discovery (which, to date, they have not even attempted to

28  compel with regard to Irico), or thwarted DPP's ability to obtain relief in the future.  *Compare*

IRICO'S MOTION TO SET ASIDE DEFAULT           10

*Haskins v. Fuller-O'Brien, Inc.*, No. 11-CV-05142-JST, 2013 WL 1789672, at *3 (N.D. Cal. Apr. 26, 2013) (Tigar, J.) (plaintiff would suffer "little prejudice" if entry of default were set aside since "case [was] still pending" and settlements with other parties had only recently occurred) *with* Dkt. 5168 (June 8, 2017, Order approving final settlement with Mitsubishi defendants). Indeed, DPPs were aware from the outset of this case of the jurisdictional issues given Irico's connection to the State Council of the People's Republic of China. (*See* Compl. ¶ 159.)

Having inexplicably waited six years before seeking entry of default in 2016, DPPs should be foreclosed from claiming any prejudice whatsoever. In June 2016, the Court ordered DPPs—and any other party believing Irico had defaulted—to show "good cause" why they had not previously sought entry of default. (ECF No. 4694 at 2.) But in response to the Court's question about why default had not been sought previously, DPPs stated it was premature to seek a default judgment when claims against co-defendants were still pending. (*Id.* at 1-2 (citing authority).) Of course, DPP's strategic conflation of the issue of seeking default and seeking default judgment allowed them to avoid the Court's request: demonstrating some legitimate reason why they had not sought entry of ***default*** against Irico at any time over the course of many years since Irico did not answer the Complaint.

DPPs would suffer no prejudice if the default were set aside, and this factor favors setting aside the Clerk's default.

## 2. Allowing the Default to Stand Would Deprive Irico of the Ability To Litigate Meritorious Defenses

In considering a Rule 55(c) motion, "the Court need not determine definitively whether any of Defendant's defenses would be successful. Rather, the Court asks only whether '***some possibility exists that the outcome of the suit after a full trial would differ from the result reached by the default***.'" *Mission Trading*, 2016 WL 4268667, at *2 (internal quotation marks and citations omitted); *see also Coen*, 307 F.R.D. at 505 (relief under Rule 55(c) was appropriate where Defendant "sufficiently raised some doubts" regarding the court's jurisdiction).

The circumstances here easily meet this standard.  Among others, Irico has a strong defense that DPPs have failed to adduce evidence of an unlawful undertaking by Irico.  DPPs allege a global, twelve-year price-fixing conspiracy among manufacturers of cathode ray tubes ("CRTs") including both computer monitor tubes ("CDTs") and television tubes ("CPTs").  To establish that Irico violated Section 1 of the Sherman Act, DPPs would have to show that Irico knowingly joined and participated in the conspiracy alleged by DPPs.  *See United States v. Duran*, 189 F.3d 1071, 1081 (9th Cir. 1999).  Furthermore, to establish that a defendant participated in a single, overarching conspiracy DPPs must establish that Irico had knowledge of the full scope of the alleged overarching conspiracy.  *Id.*

DPPs state in their Application for Default Judgement that there is "overwhelming evidence" that Irico "joined and participated" in the alleged conspiracy (App. for Default at 3), but their submission proves just the opposite.  At best, DPPs offer a handful of communications providing circumstantial evidence of meetings with competitors.  They have no direct evidence—documentary or testimonial—that Irico actually reached agreements with competitors involving CRTs sold in the U.S.  Indeed, DPPs cite no deposition testimony in this matter that supports their claims.  Unlike other defendants, Irico was never the subject of any criminal inquiry or investigation.  (Compl. ¶¶ 122-33.)  In fact, Irico is not even aware of any sales of CRT products, including CPT or CDT products, by either Irico Group or Irico Display to customers in the United States, either directly or indirectly through a distributor during the Class Period.  (Zhang Decl. ¶ 11.)

The 11 emails DPPs cite (App. for Default at 10-11) are insufficient to support an inference of an agreement to fix prices, because none of them evidences an actual agreement.  *See In re Citric Acid Litig.*, 191 F.3d 1090, 1103 (9th Cir. 1999).  Evidence of price information exchange is not enough to demonstrate price-fixing.  *Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1357 (9th Cir. 1982).  The limited number of communications identified could not possibly fill the total gap in participation at the hundreds of alleged group conspiracy meetings over the claimed twelve-year conspiracy period.  *In re Citric Acid*, 191 F.3d at 1105 (evidence of some bilateral price exchanges "is neither sufficient to survive summary judgment

. . . nor probative of the industry-wide conspiracy alleged"); *see also Sancap Abrasives Corp. v. Swiss Indus. Abrasives*, 19 F. App'x 181, 189-90 (6th Cir. 2001) (even "frequent meetings between alleged conspirators will not survive summary judgment without additional evidence that would permit an inference that the meetings led to an illegal agreement").

In sum, DPPs offer no evidence that Irico participated in the meetings alleged to have taken place in the United States, Europe, Taiwan, and Korea.  DPPs offer no evidence that Irico participated in illegal activities in the United States, reached an agreement with any competitor to fix the price at which a CRT was sold to a customer in the United States; reached an agreement with any competitor to limit or reduce the volume of CRTs exported to the United States; or reached any agreement to allocate U.S. customers or markets.  Indeed, even now, DPP's Application for Default Judgment rests almost entirely on the hope that the entry of default has itself established Irico's liability.  (*See* Dkt. 5191 at 3 ("Plaintiffs need not prove the Irico Defendants' liability").)

The default should be vacated so that Irico has the opportunity to present its defenses, which show a strong likelihood "that the outcome of the suit after a full trial would differ from the result reached by the default."  *Mission Trading,* 2016 WL 4268667, at *2.

### 3.       The Default Was Not a Result of Irico's Culpable Conduct

Courts reviewing motions under Rule 55(c) consider whether the defendants' "culpable conduct" led to the default, but importantly, the Ninth Circuit has held that "a ***movant cannot be treated as culpable simply for having made a conscious choice not to answer***; rather, to treat a failure to answer as culpable, the ***movant must have acted with bad faith***, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'"  *Mission Trading*, 2016 WL 4268667, at *3 (emphasis added) (quoting *Mesle*, 615 F.3d at 1092).

DPPs have not shown, and cannot show, that Irico engaged in any bad faith conduct.  To the contrary, Irico did in fact appear in this action, accepted service of process, and joined a motion to dismiss.  (*See* Zhang Decl. ¶ 4.)  Irico decided not to answer the Complaint after the motion was decided based on a belief that it was immune from suit as a foreign sovereign.  (*Id*. ¶

5.)  That does not constitute culpable conduct.  *Gregorian v. Izvestia*, 871 F.2d 1515, 1525 (9th Cir. 1989) (defendants' conduct not culpable under Rule 55(c) where defendants failed to respond to lawsuit because they believed court lacked subject matter jurisdiction over them).  This Court has found the absence of culpable conduct and vacated defaults in far less compelling circumstances.  For example, in *E. Digital*, the Court vacated entry of default under Rule 55(c) where defendants asserted they were not culpable for entry of default because they are "Russian nationals and residents unfamiliar with the American legal process or the implications of a 'default.'"  2016 WL 4728550, at *3.  In that case, the Court concluded "that Defendants' had actual notice of the Complaint, but that their decision not to respond to the Complaint does not constitute culpable conduct because they appear to have simply 'made a conscious choice not to answer.'"  *Id.* at 2.  As here, there was no evidence to suggest that defendants in *E. Digital* had failed to answer in bad faith so as "to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process."  *Id.* (quoting *TCI*, 244 F.3d at 697).  Indeed, even when faced with procedural history that was "quite unusual and raise[d] the specter of gamesmanship," this Court held that the plaintiff failed to "present the 'extreme circumstances'" justifying "the drastic step of entering default."  *Coen*, 307 F.R.D. at 507.

DPPs cannot point to any actions of Irico beyond its failure to answer the Complaint that come close to the Ninth Circuit's culpable conduct standard.  Accordingly, this factor, along with each of the other factors, demonstrates that the Court should set aside the Clerk's default under Rule 55(c).

## IV.  **CONCLUSION**

Based on the foregoing, Irico requests that the Court enter an order: (*a*) vacating the entry of default; (*b*) dismissing DPP's Complaint against Irico with prejudice; (*c*) denying DPP's Application for Default Judgment as moot; and (*d*) granting such further relief as may be just and equitable.

Dated:  October 25, 2017

*/s/ Stuart C. Plunkett*

John Taladay (*pro hac vice*)
john.taladay@bakerbotts.com
Eric Koons (*pro hac vice*)
eric.koons@bakerbotts.com
1299 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone:  (202) 639-7700
Facsimile:   (202) 639-7890

Stuart C. Plunkett (State Bar No. 187971)
stuart.plunkett@bakerbotts.com
Rishi P. Satia (State Bar No. 301958)
rishi.statia@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, California 94111
Telephone:  (415) 291-6200
Facsimile:   (415) 291-6300

*Attorneys for*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*