John Taladay (*pro hac vice*)
john.taladay@bakerbotts.com
Eric Koons (*pro hac vice*)
eric.koons@bakerbotts.com
BAKER BOTTS LLP
1299 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone:  (202) 639-7700
Facsimile:   (202) 639-7890

Stuart C. Plunkett (State Bar No. 187971)
stuart.plunkett@bakerbotts.com
Rishi P. Satia (State Bar No. 301958)
rishi.statia@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, California 94111
Telephone:  (415) 291-6200
Facsimile:   (415) 291-6300

*Attorneys for*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | Case No. 3:07-cv-05944-JST<br>MDL No.: 1917 |
| THIS DOCUMENT RELATES TO:<br>*ALL DIRECT PURCHASER ACTIONS* | **DECLARATION OF WENKAI ZHANG IN SUPPORT OF IRICO'S MOTION TO SET ASIDE DEFAULT** |

I, Wenkai Zhang, declare as follows:

1. I make this Declaration in support of the Motion to Set Aside Default filed by Irico Group Corporation ("Irico Group") and Irico Display Devices Co., Ltd. ("Irico Display," and together with Irico Group, "Irico"). I have personal knowledge of the facts set forth herein. If called as a witness, I could and would competently testify to the facts below.

2. From January 2, 2017, through the present, I have served as legal counsel at Irico Group. My responsibilities include handling litigation and related legal matters.

3. I am aware that the Direct Purchaser Plaintiffs ("DPPs") filed their original complaint against Irico on November 26, 2007 (ECF No. 1) and that on March 16, 2009, the DPPs filed a Consolidated Amended Complaint. (ECF No. 436.) On August 22, 2009, Irico stipulated to effective service of process of the amended complaint. (ECF No. 36 at 2-3.)

4. Irico joined the Defendants' Joint Motion to Dismiss Direct Purchaser Plaintiffs' Consolidated Amended Complaint, dated August 4, 2009. (ECF Nos. 479, 546.) A hearing on the Joint Motion to Dismiss was held before a Special Master on October 5, 2009. (ECF No. 597.) On February 5, 2010, the Special Master issued a Report, Recommendations and Tentative Rulings Regarding Defendants' Motion to Dismiss. (ECF No. 597 at 2.) The Report and Recommendations were approved and adopted by the Court in an Order dated March 30, 2010. (ECF No. 17.)

5. After the Joint Motion to Dismiss was decided, Irico did not file an answer to the DPP's complaint. Irico's decision not to answer the complaint was not motivated by any intention of taking advantage of the DPPs, of interfering with this Court's decision making, or otherwise manipulating the legal process. Irico declined to answer because it believed that Irico Group and Irico Display were immune from suit in the United States.

6. At the time the DPP's original complaint was filed on November 26, 2007, Irico Group was a State-owned enterprise wholly funded and 100% owned by the State Council of the People's Republic of China ("State Council"). Irico Group was originally formed by the State Council to serve the public purpose of supplying CRT products to all companies in the People's Republic of China.

7. Through 2000, Irico Group was managed directly by the Ministry of Industry and Information Technology of the People's Republic of China. From 2000 to 2003, Irico Group was managed directly by the Central Enterprise Work Committee, and from 2003 through the filing of the original complaint, Irico Group was managed directly by the State-owned Assets Supervision and Administration Commission of the State Council ("SASAC"). Irico Group's management, including its Legal Representative and General Manager, was appointed directly by the Ministry of Personnel of the State Council of the People's Republic of China until 2003, and by the SASAC after 2003.

8. At the time the DPP's original complaint was filed on November 26, 2007, Irico Display was a State-owned holding company. Irico Display's management was appointed by the State Council-appointed management of Irico Group and reviewed by Irico Display's shareholders. Irico Display's management was subject to the same regulations that apply to state officials.

9. Irico Display was managed directly by the State Council-appointed management of Irico Group and indirectly by the Ministry of Industry and Information Technology of the State Council. Irico Group directly appointed the management of Irico Display.

10. Any major business decisions or transactions entered into or contemplated by Irico Display required review and approval by Irico Group and/or the Ministry of Industry and Information Technology of the State Council, or another appropriate department of the State Council. Irico Display was required to submit financial statements and reports about operating

activities and investments to Irico Group for review. For some matters beyond Irico Group's authority—including (1) material investments by Irico Display, (2) mergers and acquisitions by Irico Display, (3) sale of shares resulting in a change in control over the company, (4) declaration of bankruptcy or cessation of operations by Irico Display, (5) financing, including issuance of stocks and bonds, and (6) proposed budgets—Irico Group had to obtain approval from the relevant agency of the State Council in order for Irico Display to take such action. Thus, Irico Display's business and operations were controlled and supervised by Irico Group, as well as the relevant departments of the State Council.

11. I understand that the Class Period in this matter is from March 1, 1995, to November 25, 2007. Irico is not aware of any sales by Irico of CRT products, including CPT or CDT products, to customers in the United States, either directly or indirectly through a distributor.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day of October, 2017, in Xianyang City, Shanxin Province, People's Republic of China.

_____
Wenkai Zhang