Guido Saveri (22349)
  *guido@saveri.com*
R. Alexander Saveri (173102)
  *rick@saveri.com*
Geoffrey C. Rushing (126910)
  *grushing@saveri.com*
Cadio Zirpoli (179108)
  *cadio@saveri.com*
Matthew D. Heaphy (227224)
  *mheaphy@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **DECLARATION OF R. ALEXANDER SAVERI IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO THE IRICO DEFENDANTS' MOTION TO SET ASIDE DEFAULT** |
| *ALL DIRECT PURCHASER ACTIONS* | |
| | Date:        January 11, 2018 |
| | Time:        2:00 p.m. |
| | Judge:      Honorable Jon S. Tigar |
| | Courtroom:  9 |

I, R. Alexander Saveri, declare:

1.       I am the Managing Partner of Saveri & Saveri, Inc., Lead Counsel for Direct Purchaser Plaintiffs ("Plaintiffs") in this action. I am a member of the Bar of the State of California and admitted to practice in the Northern District of California. I make this Declaration in Support of Plaintiffs' Opposition to the Irico Defendants' Motion to Set Aside Default. Except as otherwise stated, I have personal knowledge of the facts stated below.

2.       I have been involved in virtually every aspect of this case from its outset in 2007. To my knowledge, the first time Defendants Irico Display Devices Co., Ltd. and Irico Group Corporation (the "Irico Defendants") ever asserted that they were immune from suit under the Foreign Sovereign Immunities Act of 1976 was in October of this year.

3.       On March 12, 2010, Plaintiffs served their first set of interrogatories and their first and second sets of requests for production of documents, including on the Irico Defendants' former counsel, Terrance A. Callan of Pillsbury Winthrop Shaw Pittman LLP. Attached hereto as <u>Exhibit 1</u> is a true and correct copy of Proof of Service served on that date. Plaintiffs have no record of responses to this discovery from the Irico Defendants.

4.       On September 22, 2011, Plaintiffs served their second set of interrogatories and their third set of requests for production of documents, including on Mr. Callan. Attached hereto as <u>Exhibit 2</u> is a true and correct copy of Proof of Service served on that date. Plaintiffs have no record of responses to this discovery from the Irico Defendants.

5.       Apart from the information contained in the Response to Information Requests and certain sales information they provided on January 15, 2008, *see* Zirpoli Decl. ¶ 5, Ex. 4, the Irico Defendants have provided no discovery in this action. They have not produced any documents in response to the two document requests Plaintiffs have served. Nor have they responded to any of the interrogatories Plaintiffs have served.

6.       After counsel for the Irico Defendants' withdrew from the case in June, 2010, discovery began in earnest. Among other things, Plaintiffs reviewed and analyzed millions of pages of documents and participated in the depositions of over a hundred employees and former employees of Irico's co-conspirators. Plaintiffs also opposed summary judgment motions, obtained

SAVERI DECL. ISO DPPS' OPPOSITION TO THE IRICO DEFENDANTS' MOTION TO SET ASIDE DEFAULT;
Master File No. 07-CV-5944-JST

1   class certification, and worked with and paid expert economists to analyze the evidence and write

2   reports. Discovery from each defendant was important to Plaintiffs' ability to understand and

3   discover evidence proving the conspiracy. Because Irico did not provide discovery after they

4   withdrew, Plaintiffs were unable to examine witnesses regarding evidence from Irico, or use Irico

5   information or data to inform their analyses and deposition preparation. That hurt Plaintiffs' case

6   both against Irico and against the other defendants.

7          7.     After counsel for the Irico Defendants' withdrew from the case in June, 2010,

8   Plaintiffs developed the necessary record and moved to certify the class herein. *In re Cathode Ray*

9   *Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606 (N.D. Cal. 2015). The class certification order

10  identified the Irico Defendants as co-conspirators. *Id.* at 609 n.1. Plaintiffs also developed the

11  record to prove its case against all defendants, including Irico. All of this work was necessary to

12  obtain a default judgment against Irico.

13         8.     Plaintiffs have settled with all other defendants and dismissed their case against them.

14         9.     At no time since new counsel have appeared in the case have the Irico Defendants

15  indicated an intention to respond Plaintiffs' discovery.

16         10.    Attached hereto as <u>Exhibit 3</u> is a true and correct copy of an article published on

17  Irico Group Corporation's website, dated December 5, 2007, retrieved from

18  https://web.archive.org/web/20090703092227/http://www.ch.com.cn:80/chinese/content.jsp?paget

19  ype=TPP_CONTENT&wbnewsid=1184&tree=0, and a translation thereof.

20         11.    Attached hereto as <u>Exhibit 4</u> is a true and correct copy of Irico Group Electronics

21  Co., Ltd.'s 2007 Annual Report, dated April 24, 2008, published by Hong Kong Exchanges and

22  Clearing Limited at

23  http://www.hkexnews.hk/listedco/listconews/SEHK/2008/0429/LTN20080429526.pdf.

24         12.    Attached hereto as <u>Exhibit 5</u> is a true and correct copy of Irico Display Devices Co.,

25  Ltd.'s 2007 Annual Report and translated excerpts thereof, published by the Shanghai Stock

26  Exchange at

27  http://static.sse.com.cn/disclosure/listedinfo/announcement/c/2008-04-25/600707_2007_n.pdf.

28         13.    Attached hereto as <u>Exhibit 6</u> is a true and correct copy of Irico Display Devices Co.,

2

Ltd.'s Articles of Association 2008 and translated excerpts thereof, published by the Shanghai

Stock Exchange at

http://static.sse.com.cn/disclosure/listedinfo/announcement/c/2008-05-17/600707_20080517_g.pdf.

14. Attached hereto as <u>Exhibit 7</u> is a true and correct copy of the Annual Results of Irico

Display Devices Co., Ltd., a Subsidiary of Irico Group Electronics Company Limited, for the Year

Ended 31 December 2009, dated February 26, 2010, published by Hong Kong Exchanges and

Clearing Limited at

http://www.hkexnews.hk/listedco/listconews/sehk/2010/0225/LTN20100225427.pdf.

15. Attached hereto as <u>Exhibit 8</u> is a true and correct copy of Irico Display Devices Co.,

Ltd.'s Profit Distribution, published by the Shanghai Stock Exchange at

http://www.sse.com.cn/assortment/stock/list/info/profit/index.shtml?COMPANY_CODE=600707.

16. Attached hereto as <u>Exhibit 9</u> is a true and correct copy of Irico Display Devices Co.,

Ltd.'s 1996 Share Listing Notice, dated May 20, 1996, and translated excerpts thereof, collected by

an attorney working under my supervision from the following websites:

http://q.stock.sohu.com/cn,gg,600707,348934.shtml;

http://app.finance.ifeng.com/data/stock/ggzw.php?id=37806&symbol=600707; and

http://stock.jrj.com.cn/share,disc,1996-05-20,600707,00000000000000nv7t.shtml.

17. Attached hereto as <u>Exhibit 10</u> is a true and correct copy of Irico Group Electronics

Co., Ltd.'s Articles of Association, dated January 12, 2012, published by Hong Kong Exchanges

and Clearing Limited at

http://www.hkexnews.hk/listedco/listconews/SEHK/2012/0330/LTN201203305936.pdf.

18. Attached hereto as <u>Exhibit 11</u> is a chart summarizing the meetings identified in

Plaintiffs' Application for Entry of Default Motion by the Court Against the Irico Defendants, ECF

No. 5191 at 10–11, and in Plaintiffs' Opposition to the Irico Defendants' Motion to Set Aside

Default, filed concurrently herewith, and below.

19. Attached hereto as <u>Exhibit 12</u> is a true and correct copy of a document produced in

this litigation bearing the Bates stamp CHU00030684–87 and a translation thereof.

20. Attached hereto as <u>Exhibit 13</u> is a true and correct copy of a document produced in

SAVERI DECL. ISO DPPS' OPPOSITION TO THE IRICO DEFENDANTS' MOTION TO SET ASIDE DEFAULT;
Master File No. 07-CV-5944-JST

this litigation bearing the Bates stamp CHU00030705–08 and a translation thereof.

21.     Attached hereto as <u>Exhibit 14</u> is a true and correct copy of a document produced in this litigation bearing the Bates stamp CHU00030734–37 and a translation thereof.

22.     Attached hereto as <u>Exhibit 15</u> is a true and correct copy of a document produced in this litigation bearing the Bates stamp CHU00029191–94 and a translation thereof. It was marked as Deposition Exhibit No. 1108.

23.     Attached hereto as <u>Exhibit 16</u> is a true and correct copy of a document produced in this litigation bearing the Bates stamp CHU00030769–70 and a translation thereof.

24.     Attached hereto as <u>Exhibit 17</u> is a true and correct copy of a document produced in this litigation bearing the Bates stamp CHU00029050–51 and a translation thereof. It was marked as Deposition Exhibit No. 1315.

25.     Attached hereto as <u>Exhibit 18</u> is a true and correct copy of an excerpt of the transcript of the deposition of Jing Song Lu on February 28, 2013.

26.     Attached hereto as <u>Exhibit 19</u> is a true and correct copy of a document produced in this litigation bearing the Bates stamp CHU00030797–98 and a translation thereof.

27.     Attached hereto as <u>Exhibit 20</u> is a true and correct copy of a document produced in this litigation bearing the Bates stamp SDCRT-0086672–74 and a translation thereof.

28.     Attached hereto as <u>Exhibit 21</u> is a true and correct copy of a document produced in this litigation bearing the Bates stamp CHU00030843–45 and a translation thereof.

29.     Attached hereto as <u>Exhibit 22</u> is a true and correct copy of a document produced in this litigation bearing the Bates stamp CHU00030979–84 and a translation thereof. It was marked as Deposition Exhibit No. 1159.

30.     Attached hereto as <u>Exhibit 23</u> is a true and correct copy of a document produced in this litigation bearing the Bates stamp CHU00030992–94 and a translation thereof. It was marked as Deposition Exhibit No. 1306.

31.     Attached hereto as <u>Exhibit 24</u> is a true and correct copy of a document produced in this litigation bearing the Bates stamp CHU00030995–97 and a translation thereof. It was marked as Deposition Exhibit No. 1160.

32.     Attached hereto as <u>Exhibit 25</u> is a true and correct copy of a document produced in this litigation bearing the Bates stamp CHU00036412–13 and a translation thereof. It was marked as Deposition Exhibit No. 1177.

33.     Attached hereto as <u>Exhibit 26</u> is a true and correct copy of a document produced in this litigation bearing the Bates stamp CHU00040992–93 and a translation thereof. It was marked as Deposition Exhibit No. 1278.

34.     Attached hereto as <u>Exhibit 27</u> is a true and correct copy of an excerpt of the transcript of the deposition of Sheng-Jen Yang on February 25, 2013.

35.     Attached hereto as <u>Exhibit 28</u> is a true and correct copy of a document produced in this litigation bearing the Bates stamp CHU00102864–65 and a translation thereof.

36.     Attached hereto as <u>Exhibit 29</u> is a true and correct copy of a document produced in this litigation bearing the Bates stamp CHWA00226236–69.

37.     Attached hereto as <u>Exhibit 30</u> is a true and correct copy of a document produced in this litigation bearing the Bates stamp CHU00030752–55 and a translation thereof.

38.     Attached hereto as <u>Exhibit 31</u> is a true and correct copy of the Samsung SDI Defendants' Second Supplemental Responses to Direct Purchaser Plaintiffs' First Set of Interrogatories, Nos. 4 and 5, dated November 25, 2013, identifying 20 group and bilateral meetings attended by Irico. See pp. 30, 32, 33, 42, 46, 48, 51, 72, 74, 76, 81, 83–85, 87, 89, 94.

39.     Attached hereto as <u>Exhibit 32</u> is a true and correct copy of the Second Supplemental Responses of Panasonic Corporation of North America, MT Picture Display Co., Ltd., and Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.) to Direct Purchaser Plaintiffs' First Set of Interrogatories, dated November 3, 2013, identifying six group and bilateral meetings attended by Irico. See pp. 18, 110, 122, 137.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of December, 2017 in San Francisco, California.

*/s/ R. Alexander Saveri*
R. Alexander Saveri

5

# EXHIBIT 1

1  GUIDO SAVERI (22349)
        *guido@saveri.com*
2  R. ALEXANDER SAVERI (173102)
        *rick@saveri.com*
3  GEOFFREY C. RUSHING (126910)
        *grushing@saveri.com*
4  CADIO ZIRPOLI (179108)
        *cadio@saveri.com*
5  SAVERI & SAVERI, INC.
   706 Sansome Street
6  San Francisco, CA  94111-5619
   Telephone:  (415) 217-6810
7  Facsimile:  (415) 217-6813

8  *Interim Lead Counsel for*
   *Direct Purchaser Plaintiffs*

9

10              **UNITED STATES DISTRICT COURT**

11           **NORTHERN DISTRICT OF CALIFORNIA**

12                **SAN FRANCISCO DIVISION**

13  | | |
    |---|---|
    | IN RE: CATHODE RAY TUBE (CRT) ANTITRUST  LITIGATION | Master File No. 07-5944 SC |
    | | MDL No. 1917 |
    | | **PROOF OF SERVICE** |
    | This Document Relates to: | Judge:  Hon. Samuel Conti |
    | ALL DIRECT PURCHASER ACTIONS | |

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    I am employed in the County of San Francisco, State of California.  I am over the age of

2  18 years and not a party to the within action.  My business address is 706 Sansome Street, San

3  Francisco, Califronia 94111.

4    On March 12, 2010, I caused to be served a true and correct copy of the following

5  documents:

6    DIRECT PURCHASER PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF
     DOCUMENTS;

7

8    DIRECT PURCHASER PLAINTIFFS' SECOND SET OF DOCUMENT REQUESTS FOR
     PRODUCTION OF DOCUMENTS;

9    DIRECT PURCHASER PLAINTIFFS' FIRST SET OF INTERROGATORIES;

10   PROOF OF SERVICE

11  via hand delivery by a courier and via electronic mail as set forth on the attached service list.

12    I declare under penalty of perjury that the foregoing is true and correct.  Executed on this

13  12th day of March, 2010.

14

15    _____

16    Cadio Zirpoli

17

18

19

20

21

22

23

24

25

26

27

28

- 1 -

PROOF OF SERVICE
Master File No. 07-5944 SC

## SERVICE LIST

David L. Yohai
  david.yohai@weil.com
David E. Yolkut
  david.yolkut@weil.com
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153-0119

Gary L. Halling
  ghalling@sheppardmullin.com
James Landon McGinnis
  jmcginnis@sheppardmullin.com
**SHEPPARD MULIN RICHTER & HAMPTON LLP**
Four Embarcadero Center
17th Floor
San Francisco, CA 94111

Michael Tubach
  mtubach@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center
27th Floor
San Francisco, CA 94111

Samuel Ray Miller
  srmiller@sidley.com
**SIDLEY AUSTIN LLP**
555 California Street, Suite 5000
San Francisco, CA 94111

Ethan E. Litwin
  LitwinE@howrey.com
**HOWREY LLP**
153 East 53rd Street, 54th Floor
New York, NY 10022

Bruce H. Jackson
  bruce.h.jackson@bakernet.com
**BAKER & MCKENZIE**
Two Embarcadero Center, 11th Floor
San Francisco, CA 94111-3802

Kent Michael Roger
  kroger@morganlewis.com
**MORGAN LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1126

Terry Calvani
  terry.calvani@freshfields.com
Kate S. McMillan
  kate.mcmillian@freshfields.com
**FRESHFIELDS BRUCKHAUS DERINGER US LLP**
701 Pennsylvania Avenue, NW
Suite 600
Washington, DC 20004

Christopher M. Curran
  ccurran@whitecase.com
**WHITE & CASE LLP**
701 13th Street, NW
Washtington, DC 2005

Terrence A. Callan
  terrence.callan@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
50 Fremont Street
P.O. Box 7880
San Francisco, CA 941120

Craig P. Seebald
  cseebald@mwe.com
**MCDERMOTT, WILL & EMERY LLP**
600 Thirteenth Street, NW
Washington, DC 20005-3016

# EXHIBIT 2

GUIDO SAVERI (22349)
  *guido@saveri.com*
R. ALEXANDER SAVERI (173102)
  *rick@saveri.com*
GEOFFREY C. RUSHING (126910)
  *grushing@saveri.com*
CADIO ZIRPOLI (179108)
  *cadio@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Interim Lead Counsel for*
*Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-5944-SC |
| | MDL No. 1917 |
| This Document Relates To: | **PROOF OF SERVICE** |
| ALL DIRECT PURCHASER ACTIONS | Judge:  Hon. Samuel Conti |

PROOF OF SERVICE;  Master File No. 07-5944 SC

1      I, Melissa Shapiro, declare that I am over the age of 18 years and not a party to the within

2  action.  I am employed in the County of San Francisco, State of California; my business address is

3  706 Sansome Street, San Francisco, California 94111.

4      I declare under the penalty of perjury that, on September 22, 2011, I served a true and correct

5  copy of the following documents:

6

7     **PLAINTIFF HAWEL A. HAWEL'S, d/b/a CITY ELECTRONICS, SECOND SET OF INTERROGATORIES DIRECTED TO ALL DEFENDANTS;**

8

9     **DIRECT PURCHASER PLAINTIFFS' THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS; and**

10     **PROOF OF SERVICE**

11  via electronic mail to:

12     **SEE ATTACHED SERVICE LIST**

13      I declare under penalty of perjury that the foregoing is true and correct.  Executed on this

14  22nd day of September, 2011.

15

16                              */s/ Melissa Shapiro*

17                               Melissa Shapiro

18  Crt.461

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE;  Master File No. 07-5944 SC

*In re: Cathode Ray Tube (CRT) Antitrust Litigation* – MDL No. 1917

## SERVICE LIST

| | |
|---|---|
| Jeffrey L. Kessler<br>jkessler@dl.com<br>DEWEY LEBOEUF LLP<br>1301 Avenue of the Americas<br>New York, NY 10019<br>Tel: (212) 259-8000<br>Fax: (212) 259-7013<br><br>David L. Yohai<br>david.yohai@weil.com<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, New York  10153<br><br>*Counsel for Defendants Panasonic Corporation, Panasonic Corp. of North America, and MT Picture Display Co., Ltd.* | Samuel L. Miller<br>srmiller@sidley.com<br>SIDLEY AUSTIN, LLP<br>555 California Street<br>San Francisco, CA 94104<br>Tel: (415) 772-1200<br>Fax: (415) 772-7400<br><br>Ronald C. Redcay<br>Ronald.Redcay@aporter.com<br>ARNOLD & PORTER LLP<br>44th Floor<br>777 South Figueroa Street<br>Los Angeles, CA 90017-5844<br><br>*Counsel for Defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Taiwan Taipei Co., Ltd.* |
| John Taladay<br>john.taladay@bakerbotts.com<br>BAKER BOTTS LLP<br>The Warner<br>1299 Pennsylvania Ave., NW<br>Washington, D.C. 20004-2400<br>Tel: (202) 639-7909<br>Fax: (202)639-1165<br><br>*Counsel for Defendants Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., Philips da Amazonia Industria Electronica Ltda.* | Terrence A. Callan<br>Terrence.callan@pillsburylaw.com<br>PILLSBURY WINTHROP SHAW PITTMAN, LLP<br>50 Fremont Street<br>P.O. Box 7880<br>San Francisco, CA 94120-7880<br>Tel: (415) 983-1000<br>Fax: (415) 983-1200<br><br>*Counsel for Defendants IRICO Display Devices Co., Ltd., IRICO Group Corporation, and IRICO Group Electronics Co., Ltd.* |
| Scott A. Stempel<br>sstempel@morganlewis.com<br>Michelle Park Chiu<br>mchiu@morganlewis.com<br>MORGAN LEWIS & BOCKIUS, LLP<br>One Market, Spear Street Tower<br>San Francisco, CA 94105<br><br>*Counsel for Defendants Hitachi, Ltd., Hitachi Displays, Ltd., Hitachi Asia, Ltd., Hitachi  America, Ltd., and Hitachi Electronic Devices (USA), Inc.* | Patrick J. Ahern<br>Patrick.j.ahern@bakernet.com<br>BAKER & McKENZIE LLP<br>130 East Randolph Drive<br>Chicago, IL 60601<br>Tel: (312) 861-8000<br>Fax: (312) 861-2899<br><br>*Counsel for Defendant Tatung Company of America* |

*In re: Cathode Ray Tube (CRT) Antitrust Litigation* – MDL No. 1917

## SERVICE LIST

| | |
|---|---|
| Kate S. McMillan<br>Kate.mcmillan@freshfields.com<br>FRESHFIELDS BRUCKHAUS &<br>DERINGER US, LLP<br>701 Pennsylvania Avenue, NW<br>Suite 600<br>Washington, DC 20004<br>Tel: (202) 777-4566<br>Fax: (202) 777-4555<br><br>*Counsel for Defendant Beijing Matsushita Color CRT Co., Ltd.* | Lucius B. Lau<br>alau@whitecase.com<br>WHITE & CASE, LLP<br>701 13th Street, N.W.<br>Washington, DC 20005<br>Tel: (202) 626-3600<br>Fax: (202) 639-9355<br><br>*Counsel for Defendants Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.* |
| Ian Simmons<br>isimmons@omm.com<br>Benjamin G. Bradshaw<br>bbradshaw@omm.com<br>O'Melveny & Myers LLP<br>1625 Eye Street, NW<br>Washington, DC 20006-4001<br>Tel: (202) 383-5163<br>Fax: (202) 383-5414<br><br>*Counsel for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.* | James L. McGinnis<br>jmcginnis@sheppardmullin.com<br>SHEPPARD MULLIN RICHTER &<br>HAMPTON, LLP<br>Four Embarcadero Center<br>17th Floor<br>San Francisco, CA 94111<br>Tel: (415) 434-9100<br>Fax: (415) 434-3947<br><br>*Counsel for Defendants Samsung SDI America, Inc., Samsung SDI Co., Ltd., Samsung SDI Mexico S.A. de C.V., Samsung SDI Brasil Ltda., Shenzhen Samsung SDI Co., Ltd., Tianjin Samsung SDI Co., Ltd., and Samsung SDI (Malaysia) Sdn. Bhd.* |
| Joel S. Sanders<br>jsanders@gibsondunn.com<br>GIBSON, DUNN & CRUTCHER<br>555 Mission Street<br>Suite 3000<br>San Francisco, CA 94105<br>Tel: (415) 393-8200<br>Fax: (415) 393-8200<br><br>*Counsel for Defendants Chunghwa Picture Tubes, Ltd. and Chunghwa Picture Tubes (Malaysia)* | Michael R. Lazerwitz<br>mlazerwitz@cgsh.com<br>CLEARY GOTTLIEB STEEN &<br>HAMILTON LLP<br>2000 Pennsylvania Avenue, NW<br>Suite 9000<br>Washington, DC 20006<br>Tel: (202) 974-1500<br>Fax: (202) 974-1999<br><br>*Counsel for Defendant LP Displays International, Ltd.* |

*In re: Cathode Ray Tube (CRT) Antitrust Litigation* – MDL No. 1917

## SERVICE LIST

| | |
|---|---|
| Lidia Maher<br>Lidia.maher@usdoj.gov<br>Tai S. Milder<br>Tai.milder@usdoj.gov<br>UNITED STATES DEPARTMENT OF<br>JUSTICE – ANTITRUST DIVISION<br>450 Golden Gate Avenue<br>Room 10-0101, Box 36046<br>San Francisco, CA 94102<br>Tel: (415) 436-6660<br>Fax: (415) 436-6687 | Mario Alioto<br>malioto@tatp.com<br>Lauren Russel<br>lrussel@tatp.com<br>TRUMP, ALIOTO, TRUMP &<br>PRESCOTT LLP<br>2280 Union Street<br>San Francisco, CA 94123<br>Tel: (415) 563-7200<br>Fax: (415) 346-0679<br><br>*Counsel for Indirect Purchaser Plaintiffs* |

# EXHIBIT 3



STATE of NEW YORK          )
                           )          ss:
COUNTY of NEW YORK         )

### ***CERTIFICATE OF ACCURACY***

This is to certify that the attached document, *Article from IGC Homepage Dec 2007*, originally written in *Chinese,* is to the best of our knowledge and belief, a true, accurate and complete translation into *English.*

Dated: December 6, 2017

*Allison Carey*
Allison Carey
Consortra Translations

Sworn to and signed before ME this
_____ day of _____,
2017.

_____
Notary Public

JAMES G. MAMERA
Notary Public- State of New York
No. 01MA6157195
Qualified In New York County
My Commission Expires December 4, 2018

Your
legal
translation
partner

Article from IGC's homepage, December 2007 (via Wayback machine)

https://web.archive.org/web/20090703092227/http://www.ch.com.cn:80/chinese/content.jsp?pagetype=TPP_CONTENT&wbnewsid=1184&tree=0

In its 25th Year, IRICO Group Achieves Profit and Tax of Over 10 Billion

2007-12-05 16:11

On December 3rd, IRICO Group Corporation will welcome the 25th anniversary of its founding and operations. Since beginning production in 1982, IRICO Group has produced 148 million color tubes, 230 million pieces of colored glass, and 8,362 tons of luminescent material, achieving profits and tax of RMB 10.2 billion yuan, achieving industry assets worth RMB 105.4 billion yuan and exports reaching USD 1.54 billion, contributing greatly to the development of our country's electronics industry.

IRICO Group Corporation's predecessor, the Shaanxi Color Picture Tube Main Factory, was an important project during China's 6th and 7th Five-Year Plan periods. The country's first color picture tube factory was born here. IRICO is also where color glass, color phosphor, and high-precision electronic metallic components were born. For 25 years, IRICO Group has expanded and modified production six times by introducing, digesting, and absorbing foreign advanced technology and utilizing modern management methods, leading to the continual expansion of production scale. Color tube annual production capacity has grown from an initial two models and 960,000 units, to more than ten models and 17 million-plus units—number one in China, and number three in the world. In 2007, IRICO's domestic market share increased 5%, had the best sales record in the color tube industry, and was the industry leader.

In recent years, facing the rapid rise of flat panel display devices, IRICO Group established the developmental idea of, "Excel in color tubes, create new industries." By utilizing related multi-dimensional development models, the Group has aggressively developed new business fields, produced at full strength in the three major related business groups of display devices, related resources, and optoelectronics, and aggressively pursued corporate transformation. The Group, relying on large volumes of PDP research results, has jointly established a plasma display production line with the Changhong Group. The initial investment is RMB 700 million yuan to build China's first LCD glass substrate production line, which broke ground in January of this year and will go online at the end of the year. In July of this year, IRICO Group invested RMB 154 million yuan to acquire controlling shares in Shanghai Languang Technology Co., Ltd., directly entering the LED industry and taking an important step in corporate strategic transformation. IRICO Group also aggressively works together with related research institutions, closely following research on the latest display technologies, and signing a cooperation agreement with Fuzhou University and Xiamen Torch regarding Field Emission Displays (FEDs), which will further guide and drive research and development in our country's FED Industry. This project is also listed in the country's "11th Five-Year" 853 Plan. For LCD devices, IRICO is beginning with low-end products to accumulate experience, train the team, search for partners, and on this foundation begin preparations for producing liquid crystal modules and 6th generation LCD displays. IRICO Group's luminescent material business already possesses world-class research and production capacity; the export ratio of phosphors for color tubes exceeds 82%, and it is number one in terms of global market share, reaching 28%. The scale of indigenously developed and produced power-saving light powder is number two domestically, and the Group is currently researching flat panel display rear light powders, including PDP powders and slurries and CCFL powders, with plans for sales income from new types of luminescent material to reach several hundred million yuan in the next 3-5 years. Currently, IRICO Group Corporation's strategic transformation has achieved an initial scale, and it will develop into a growing corporate group in our country's optoelectronics field in research, production, and sales of materials, devices, and finished machines. (Wang Huanyuan and Cui Jinyang)

http://www.ch.com.cn:80/chinese/content.jsp?pagetype=TPP_CONTENT&wbnewsid=1184&tree=0　Go

1 capture
3 Jul 2009

JUN JUL AUG
◄ 03 ►
2008 2009 2010

About this capture

**首　页** | **走进彩虹** | **新闻中心** | **政策之窗** | **企业文化** | **产品世界** | **用户服务** | **彩虹乐园**

## 彩虹集团25年实现利税逾百亿

2007-12-05 16:11

　　12月3日，彩虹集团公司将迎来建成投产二十五周年纪念日。自1982年建成投产至今，彩虹集团共生产彩管1.48亿只，彩色玻壳2.3亿只，发光材料8362吨，实现利税102亿元，实现工业总产值1054亿元，出口创汇15.4亿美元，为我国电子工业的发展作出了突出的贡献。

　　彩虹集团公司的前身陕西彩色显像管总厂是我国"六五"和"七五"期间重点项目，在这里诞生了我国第一只彩色显像管。彩虹也是我国彩色玻壳、彩色荧光粉、高精细电子金属部品诞生的地方。二十五年来，彩虹集团先后进行了六期扩产改造，通过引进、消化、吸收国外先进技术及运用现代化的管理手段，使生产规模不断扩大，彩管年生产能力由当初两个品种96万只，扩大到现在的十多个品种1700余万只，居国内第一、世界第三。2007年，彩虹国内市场占有率同比上升5%，取得了彩管企业中销量最佳的业绩，在彩管行业一枝独秀。

　　近年来，面对平板显示器件的迅速崛起，彩虹集团确立了"做强彩管、创新产业"的发展思路，通过采取相关多元化的发展模式，积极开拓新的业务领域，全力打造显示器件、资源相关、光电子相关三大产业群，积极推进企业转型。集团凭借大量PDP研发成果，与长虹集团共同出资建设了等离子显示器生产线。首期投资7亿元建设的我国第一条液晶玻璃基板生产线于今年1月破土动工，将于年底点火。今年7月，彩虹集团出资1.54亿元控股上海蓝光科技有限公司，直接进入LED行业，迈出了企业战略转型的重要一步。彩虹集团还积极与有关院所联合，紧密跟踪与研发最新显示器技术，与福州大学、厦门火炬签订了FED场效发射显示器项目合作协议，此举将进一步引导和推动我国FED产业的研究和发展，此项目也已列入国家"十一五"863计划。对液晶显示器件，彩虹则从低端产品入手，积累经验，锻炼队伍，寻求合作伙伴，并在此基础上着手准备液晶模组及第六代液晶显示器的制造。彩虹集团的发光材料业已具备了世界领先水平的研发与制造能力，彩管用荧光粉外销比例达到82%，全球市场占有率名列第一，达28%。自主开发并生产的节能灯粉规模位居国内第二，现正在研发平板显示背光灯粉，包括PDP粉及浆料、CCFL粉等，计划未来3─5年新型发光材料的销售收入可达数亿元。目前，彩虹集团企业战略转型已初具规模，将发展成为我国光电子领域从材料、器件到整机的研发、生产制造与销售的具有成长性的企业集团。（王欢院　崔劲杨）

【关闭窗口】

Copyright © 2004-2006 CH.com.cn All right reserved 陕ICP备06003100号

# EXHIBIT 4



彩 虹 集 團 電 子 股 份 有 限 公 司
# IRICO GROUP ELECTRONICS COMPANY LIMITED*

*(A joint stock company incorporated in the People's Republic of China with limited liability)*

（Stock Code: 0438）

Annual Report
2007

\* *For identification only*

# Content

page

Overview .................................................. 2

Financial Highlights ................................. 4

Chairman's Statement ............................ 6

Management Discussion and Analysis ...... 9

Profiles of Directors, Supervisors and Senior Management ... 21

Report of the Directors .......................... 29

Report of the Supervisory Committee ...... 45

Corporate Governance Report ................ 47

Independent Auditor's Report ................ 65

Consolidated Income Statement ............ 67

Consolidated Balance Sheet .................. 68

Balance Sheet ...................................... 70

Consolidated Statement of Changes in Equity ... 72

Consolidated Cash Flow Statement ........ 73

Notes to the Financial Statements ........ 75

Five Year Financial Summary ................ 161

Corporate Information .......................... 162

**2**   彩 虹 集 團 電 子 股 份 有 限 公 司
      IRICO GROUP ELECTRONICS COMPANY LIMITED

# Overview

## 1.   Background as a National Enterprise

IRICO Group Electronics Company Limited ("IRICO" or the "Company") was incorporated in Xianyang, Shaanxi Province, the PRC on 10 September 2004. The Company's controlling shareholder, IRICO Group Corporation (holding 75% equity interest of the Company), is a large state-owned enterprise directly under the State-owned Assets Supervision and Administration Commission of the State Council.

The Company and its subsidiaries (the "Group") position themselves primarily in the field of electronic display devices and related parts and components (collectively, "components"). With its main production base situated in Xianyang City, Shaanxi Province, the Group also has subsidiaries and production facilities in Xian, Kunshan, Zhuhai, Nanjing and Shenzhen.

## 2.   Smooth Strategic Transformation

Following the global trend of evolution of the display device technology, the Group's business focus is in the process of switching from the traditional colour picture tubes ("CPT") to the booming flat panel display ("FPD") devices and its related components. To-date, the Group's new business structure is formed which encompasses key areas including display devices, electronic glass, luminous materials and metallic parts and the Group's strategic transformation is progressing smoothly.

## 3.   The First Domestic TFT-LCD Glass Substrate Manufacturer

The first domestic production line of the fifth generation of glass substrate for LCD (TFT-LCD) with proprietary intellectual property right owned by IRICO Group Corporation through Shaanxi IRICO Electronics Glass Co., Ltd. (陝西彩虹電子玻璃有限公司) commenced construction at the beginning of the reporting period. The glass furnace was ignited as scheduled on 28 December 2007 and was being heated up. The glass furnace commenced production in late March 2008 with the first unit of products expected to be rolled out in the first half of 2008. This will be the first PRC TFT-LCD glass substrate manufactured in a self-sustained manner. To-date, product certification and exchanges on technical specifications have attained remarkable progress with the downstream panel manufacturers.

In accordance with the acquisition agreement entered into between the Company and IRICO Group Corporation on 17 August 2007, the Group will soon acquire the 69.53% equity interest in Shaanxi IRICO Electronics Glass Co., Ltd. held by IRICO Group Corporation. Upon completion of the acquisition, the Group will become the first domestic TFT-LCD glass substrate manufacturer and a major player in the global new FPD devices industry. This will pose as a breakthrough development in the Group's transformation process.

## Overview (Continued)

## 4.   Global Major Production Base of Luminous Materials

Luminous materials are a kind of basic material with wide application and high technological content. The Company has accumulated over 20 years' experience in terms of technology, talent, brand name and network in the area of luminous materials and is a major global manufacturer thereof.

The Group's project on energy saving lamps utilizing trichromatic phosphor (energy saving lamp phosphor) achieved noticeable progress in 2007. The sales volume recorded a year-on-year increase of 90% while the market share increased from 17% to 22%. The Group continued to maintain a leading position in the PRC and there is further room of development in the future. New products developed by the Company including cold cathode fluorescent lamp phosphor (CCFL phosphor) for LCD backlight were launched in 2007, while the development of new products such as plasma display device panel ("PDP") fluorescent phosphor (PDP phosphor) was conducted smoothly. These businesses are expected to have further development in 2008.

## 5.   A Leading Enterprise in Domestic CPT Industry

In 2007, the Group fully capitalized on its various competitive edges such as presence of manufacturing stations, economy of scale and strong control over the production chain. It sold 15,327,000 CPTs during the year, representing a year-on-year increase of 2.03%, being a record-high and advancing its PRC market share to 27.3% in 2007 from 22.3% in 2006. The Company continues to remain as an industry leader. Its global market share increased to 13.8% in 2007 from 12% in 2006 as well, bringing a stable cash flow to the Group and providing a strong financial back-up for the Group in realising the Group's goals of developing new products and strategic transformation.



 **4** 彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Financial Highlights

## 1. Results

| | 2007 (RMB'000) | 2006 (RMB'000) | Increace/ (decrease) (RMB'000) | Percentage of change (%) |
|---|---|---|---|---|
| Turnover | 3,358,990 | 3,861,710 | (502,720) | (13.02) |
| Cost of Sales | (3,002,987) | (3,356,160) | 353,173 | (10.52) |
| Gross Profit | 356,003 | 505,550 | (149,547) | (29.58) |
| Gross Profit Margin (%) | 10.60% | 13.09% | (2.49%) | N/A |
| Operating (Loss) / Profit | 94,178 | 250,337 | (156,159) | (62.78) |
| Operating Profit Margin | 2.80% | 6.48% | (3.68%) | N/A |
| Profit of the year attributable to the equity holders of the Company | 66,511 | 129,512 | (63,001) | (48.64) |
| Net Profit Margin (%) | 2.0% | 3.4% | (1.37%) | (43.23) |
| Earnings per share of the year attributable to equity holders of the Company (expressed in RMB per share) — basic | 0.03 | 0.07 | (0.04) | (57.14) |
| Dividend per share (RMB) | 0 | 0 | 0 | 0 |

# Financial Highlights (Continued)

## 2. Financial position

|  | 2007 (RMB'000) | 2006 (RMB'000) |
|---|---|---|
| Property, plant and equipment | 2,009,640 | 2,497,428 |
| Net current assets | 901,174 | 445,810 |
| Cash and bank balances | 363,617 | 479,503 |
| Total liabilities | 1,783,723 | 2,274,446 |
| Short-term bank borrowings | 962,684 | 932,676 |
| Total equity | 3,300,147 | 3,216,611 |

## 3. Operating indices

|  | 2007 | 2006 |
|---|---|---|
| Returns per share (annual) | 3.43% | 6.67% |
| Inventory turnover (days) | 84 | 69 |
| Trade receivable turnover (days) | 157 | 141 |
| Trade payable turnover (days) | 69 | 63 |
| Current ratio | 1.57 | 1.20 |
| Debt equity ratio | 0.92 | 1.17 |

**6** 彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# Chairman's Statement





**Dear Shareholders,**

Following the global trend of evolution of the display device technology, the business focus of the Group has been shifting from the traditional CPT to the booming FPD and related components. At present, a new business structure of the Group comprising display devices, electronic glass, luminous materials and metallic components as core products has taken its form.

2007 marked an important year of strategic transformation for the Group. Guided by the strategic thinking of "reinforcing CPT and exploring new businesses", the staff of the Group are determined and dedicated to their work. On the one hand, being one of the few competitive global CPT manufacturing enterprises, the Group's production yield and sales of CPT both attained a record high, securing the Group as a domestic industry leader and providing stable cash flow for the Group. On the other hand, there was good progress made in the group's strategic transformation with new businesses such as the luminous materials contributing to a greater extent to the Group's revenue and profits while the TFT-LCD glass substrate business is also progressing well. It is expected that the new businesses will bring about a breakthrough to the Group's business growth.

# Chairman's Statement (Continued)

In 2007, sales of the Group amounted to RMB3,358,990,000, while gross profit margin was 10.60% and profit attributable to equity holders amounted to RMB66,511,000. In spite of a decline in the Group's results as compared to 2006, we consider it a normal phenomenon arising from industry re-alignment pursuant to the strategic transformation of the Group. We firmly believe that, with the further centralization of global CPT business in the more competitive enterprises and following the rapid development of the Group's new businesses along with our strategic transformation, the Group will be embarking on a distinct episode.

## Reinforcing CPT and gathering momentum

We believe that given the large customer base of the CRT (cathode ray tube, CPT being a type of CRT) television-set market and a disparate gap existing among different countries and social groups in terms of living standards, CRT television sets will remain as a core integral part of the global television-set market in the relatively distant future.

As a top-tier enterprise in the CPT industry in the PRC, we adopt "reinforcing CPT" as an important strategy. The Group fully capitalized on its various competitive edges such as presence of manufacturing stations, economy of scale and strong control over the production chain, and continued to adopt a series of pro-active and effective operational strategies including overall cost control, marketing-driven and technology innovation initiatives that further enhanced the competitiveness of the Group in the CPT industry. During the year, under the global climate where the CPT industry kept shrinking, the Group sold 15,327,000 units of CPTs, which grew by 2.03% over 2006 and attained a record high. The domestic market share reached 27.3% in 2007, securing the Group as an industry leader, bringing a stable cash flow to the Group and providing a strong financial back-up for the Group in realizing the Group's goals of developing new products and strategic transformation.

## Strategic transformation bringing about a breakthrough

In 2007, the Group was progressing well in its strategic transformation and attained a breakthrough.

First and foremost, the first production line of the fifth generation of glass substrate for LCD(TFT-LCD) with proprietary intellectual property rights owned by IRICO Group Corporation through Shaanxi IRICO Electronics Glass Co., Ltd. commenced construction at the beginning of the reporting period. On 28 December 2007, the glass furnace was ignited and being heated up as scheduled and commenced production in late March 2008 with the first unit of product expected to be rolled out in the first half of 2008. This will be the first piece of TFT-LCD glass substrate manufactured by a PRC Company in a self-sustained manner. To-date, product certification and exchanges on technical specifications with the downstream panel manufacturers have attained marked progress .

**8**

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Chairman's Statement (Continued)

## Strategic transformation bringing about a breakthrough *(continued)*

In accordance with the acquisition agreement entered into between the Company and IRICO Group Corporation on 17 August 2007, the Group will soon acquire 69.53% equity interest in Shaanxi IRICO Electronics Glass Company Limited held by IRICO Group Corporation. Upon completion of the acquisition, the Group will become the first domestic TFT-LCD glass substrate manufacturer as well as a major player in the global new FPD industry. Further, with the launch of the phase 2 glass substrate project, there will be breakthrough development in the Group's strategic transformation.

Besides, in relation to the luminous materials industry, the energy saving lamp phosphor business of the Group recorded relatively strong growth during the reporting period. The 2007 sales volume recorded a year-on-year increase of 90%, representing an increase in market share from 17% to 22%, maintaining our domestic leading position and posing further development prospects. New products researched and developed by the Group including CCFL phosphor powder were launched in the market in 2007 while development of new products such as PDP phosphor powder was progressing smoothly. These businesses are expected to have further development in 2008.

In respect of the FPD devices, the Group has commenced the PDP production through the  joint venture with Sichuan Changhong Electrical Group Co., Ltd. Further, the Group also proactively plans for the development of other FPD devices.

## Bright prospects looking ahead

We will rely on the strong support provided to the state-owned enterprises, and rich resources such as technology, talents and customers which the Group has accumulated over years. We will further inspire our staff's determination and dedication, under the strategic guidance of reinforcing CPT and exploring new businesses, to realize breakthrough in the corporate transformation in a year with rapid growth in 2008.

As a result of the successful production of the TFT-LCD glass substrate product, launch of the phase 2 project, rapid development of the luminous materials business, nourishing of the metallic components processing and development in the FPD devices domain, the Group will have an even brighter future, bringing higher returns for the shareholders.

## Acknowledgement

I have the pleasure to extend my gratitude on behalf of the board of directors to the Company's shareholders, business partners and members of the community for their care and support for the Company, and to express my heartfelt gratitude to all of our management members and employees for their dedicated hard work.

**IRICO Group Electronics Co., Ltd.**
**Xing Daoqin**
*Chairman*

Xianyang, the PRC
24 April 2008

# Management Discussion and Analysis

## 1.   Analysis on the Industry

During the reporting period, there continued to be on-going adjustments of the display devices industry.

In 2007, the output volume of CRT television sets amounted to 107,000,000 units globally, representing 54% of the global output of all kinds of television sets. As for the PRC, being the largest production base in the world, the total output volume of CPT enterprises in the PRC reached 52,580,000 units in the reporting period; it is estimated that the proportion of output volume of PRC CPT companies will further increase in the global CPT market towards 2010. Technological advancement such as super-slimming, flattening  and digitalization fortified the price-competitiveness of products resulting in strong demand in certain CPT market segments during the reporting period.

## Breakdown of the 2007 global output volume of television sets adopting different technology



*Source:* Displaysearch, research report on global television market, 07Q4

## Estimation of output volume of different types of television sets (Unit:'000 sets)

|                       | 2007    | 2008    | 2009    | 2010    |
|-----------------------|---------|---------|---------|---------|
| CRT television sets   | 106,799 | 90,889  | 78,853  | 68,692  |
| FPD television sets   | 87,021  | 112,179 | 131,599 | 150,901 |
| RP television sets    | 1,842   | 827     | 413     | 196     |
| Total                 | 195,662 | 203,895 | 210,865 | 219,788 |

*Source:* Displaysearch, research report on global television market, 07Q4

**10**

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Management Discussion and Analysis (Continued)

## 1.   Analysis on the Industry *(continued)*

During the reporting period, the TFT-LCD panel's prospects looked quite promising, which effectively promoted the potentials of the LCD-related components including glass substrates and CCFL backlight modules, thereby offering significant room for development in the future for the Group's businesses in glass substrates and luminous materials.

The global market size for TFT-LCD glass substrates approached 150,000,000 square meters in 2007, representing a year-on-year increase of 30%. Moreover, as a result of the strong demand, there was supply shortage of glass substrates experienced in 2007. As the PRC is becoming the major production base for TFT-LCD globally, further investments in new panel lines or operations expansions were emerging. This boosted the demand for TFT-LCD glass substrates to 7,780,000 square meters in the PRC in 2007, representing a year-on-year increase of 45%. However, since production line on glass substrates still does not exist in the PRC, there is positive outlook for the glass substrates industry in the PRC.

Market demand for global TFT-LCD glass substrates (1,000 sq.m)



*Source:* iSuppli, 2008Q1

# Management Discussion and Analysis (Continued)



## 1.   Analysis on the Industry *(continued)*

Luminous materials are another strength of the Group's current business, especially in the areas of energy saving lamp phosphor, CCFL phosphor and PDP phosphor. There were good development prospects in the luminous materials markets for these segments in 2007. For the markets of energy saving lamps and energy saving lamp phosphor, the PRC's standing as the largest global production base of energy saving lamps was strengthened in 2007, with 2,900,000,000 units of energy saving lamps produced during the year, representing a year-on-year increase of 18% and boosting the domestic output volume of lamp phosphor to 3,500 tonnes in 2007. For the market of CCFL phosphor, being the core technological content for large-sized LCD panels adopting the backlight modules, the global output volume of CCFL backlight modules for large-sized LCD panels reached 346,000,000 units in 2007, representing a year-on-year increase of 22% ; of which, more than half were manufactured in the PRC. This undoubtedly brought enormous commercial opportunities for the current almost non-existent CCFL phosphor industry in the PRC.

In respect of the metallic components aspects, during the reporting period, benefiting from the booming consumer market of home appliances and vehicles, their supplementary market segments such as stamped metal parts, high precision corrosive parts, high precision masks and special moulds indicated growth trends to different extent. As such, not only will these products attain substantial market growth and investment potentials, they will also earn higher added value to the product.

**12** 彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# Management Discussion and Analysis (Continued)

## 1.  Analysis on the Industry *(continued)*

Going forward, in 2008, the Group, as a leading enterprise in the CPT industry, will further enhance the competitiveness of its CPT business and ensure its sound operations in the area of CPT and its component business in 2008 through its comprehensive supplementary services, effective cost control and branding-oriented marketing. Further, the national policy of "Promotion of Household Appliances towards Rural Areas" as decreed by the PRC Government at the end of 2007 will have positive impact on the Group's CPT business.

In the new business fields of electronic glass that the Company is embarking on, the domestic and international markets for TFT-LCD glass substrates over the coming few years will maintain steady growth, especially in the PRC market which will experience apparent sellers' market. It is estimated that the market demand will reach 12,790,000 square metres in 2010, favouring promotion of the Group's business in this area.

In the field of luminous materials, the PRC Government recently decreed a policy of fiscal subsidy and on government purchases specific for energy saving lamps. This will accelerate the growth of the domestic industry of energy saving lamps, which will provide positive drive to the Group's business on energy saving lamp phosphor. The Company estimates that the domestic market of energy saving lamp phosphor will reach 4,000 tonnes in 2008. While the market of CCFL backlight modules for LCD display is forecasted to maintain a steady growth, the output volume of CCFL backlight modules for large-sized LCD panels is expected to reach 390,000,000 units in 2008 and an annual growth rate of 13.6% is expected to be maintained thereafter. Further, with more and more production lines of CCFL backlight modules being transferred to the PRC, it is anticipated that there will be tremendous market opportunities for the Group's CCFL phosphor business.

## 2.  Business Review

### (1)  Operation Highlights

The sales revenue of the Group in 2007 was RMB3,358,990,000, a decrease of RMB502,720,000 from 2006. Operating profit in 2007 was RMB94,178,000, representing a decrease of RMB156,159,000 as compared to 2006. Gross profit margin was 10.60%, representing a decrease of 2.5 percentage points as compared to the previous year (2006: 13.09%). Profits attributable to equity holders amounted to RMB66,511,000 in 2007, representing a decrease of RMB63,001,000 from 2006.

# Management Discussion and Analysis (Continued)

## 2. Business Review *(continued)*

### (2) Display Devices Businesses

- CPT and components business

  In 2007, the Group managed to attain a record high in its production and sales. The Group sold 15,327,000 units of CPT in total in 2007, representing an increase of 304,000 units, or approximately 2.03%, relative to 2006. The Group's output volume of CPT increased by 5 percentage points in 2007 and accounted for 27.3% of the total output volume of the PRC CPT manufacturers, securing its leading position in the industry. The Group's global market share rose by 1.8 percentage points to 13.8% over last year, being the third largest globally.

  In 2007, the Group continued to adopt a series of operational strategies including cost-focused, marketing-driven and technology innovation initiatives to further enhance the Group's competitiveness in the CPT sector. The Group has also reinforced its cost competitiveness through measures including target cost management, technological upgrade, energy saving and emission control. We also strengthened controls over the market forecast aspects as well as initiatives to expand the international market and achieved satisfactory sales results. With regard to technology innovation, we have commenced mass production of our new product of 74cmPFAK CPT, while critical technological breakthrough has been achieved on the 54cmPFUS super slim, 61cmWPF super slim and 74cmPF slim new CPT products which are expected to commence production in 2008. As a result, the Group's product mix is further enhanced.

  In 2007, the Group obtained satisfactory results in environmental protection as well as emission reduction. The Group put more emphasis on its environmental protection and emission reduction efforts, established special task force, formulated recycling and emission reduction plans and defined various policies.

- FPD business

  The joint investment project on PDP production line between the Group and Sichuan Changhong Electrical Group Co., Ltd. commenced construction on 29 April 2007. Various aspects of the project were progressing smoothly. Meanwhile, the Group also takes initiatives in planning the industry development on other FPD devices .

# Management Discussion and Analysis (Continued)

## 2.   Business Review *(continued)*

### (3)   TFT-LCD Electronic Glass Substrate Business

The TFT-LCD glass substrate project commenced construction on 16 January 2007. The phase I project required investment of RMB800 million in building a production line of glass substrates for the fifth-generation TFT-LCD with an annual production capacity of 750,000 square meters. The project was initially established and concocted by IRICO Group Corporation in which the Company has entered into an equity acquisition agreement with IRICO Group Corporation in acquiring interests in Shaanxi IRICO Electronics Glass Co., Ltd. and such acquisition is close to completion.

To-date, the project is progressing smoothly. The glass furnace was ignited and heated up as scheduled on 28 December 2007 while production commenced in late March, 2008. The first unit of TFT-LCD glass substrate is expected to roll out in the first half of 2008, which will be the first unit of TFT-LCD glass substrate manufactured by a PRC enterprise in a self-sustained manner. Product certification and exchanges about technological specifications have attained a milestone development with the downstream panel manufacturers. The Group will become a major TFT-LCD electronic glass manufacturer.

### (4)   Luminous Materials Business

The Group's sales of energy saving lamp phosphor in 2007 increased by 90% over 2006, accounting for 22% of the PRC market share in 2007, relative to 17% in 2006, and continued to maintain the domestic leading position. In 2007, the production capacity expansion for energy saving lamp phosphor was completed, raising the annual production capacity to 1,000 tonnes, which will further increase our market share on energy saving lamp phosphor. After enormous efforts of and repeated testings by our technicians, CCFL phosphor had received customer recognition, realizing the first batch supply of 3.73 tonnes. There will also be further development potentials for new products such as PDP phosphor.

### (5)   Metallic Components Business

The Group established a metallic components department in 2007, which had integrated the human and equipment resources of various subsidiary companies in the metallic punching and processing functions, aiming to optimize resources allocation, business expansion, competitive edge and efficiency. Currently, the Group is actively seeking development opportunities in the metallic component sectors including vehicles, aircraft and home appliances, some of which have already attained progress.

# Management Discussion and Analysis (Continued)

## 3.   Future Prospects

Following the global trend of evolution of the display device technology, the Group is shifting its business focus from the traditional CPT business to the thriving FPD devices and its related components. A new business structure of the Group comprising display device components, electronic glass, luminous materials and metallic components has already been formed.

The Group will soon complete the equity acquisition of the TFT-LCD glass substrate project from IRICO Group Corporation, thereafter the Group will become the first TFT-LCD glass substrate manufacturer in the PRC. Upon the successful launch of phase I of the project, the Group will soon initiate phase II of the project, which will render us to become a major TFT-LCD glass substrate manufacturer in the industry.

The Group will continue to reinforce its leading manufacturer position in the global luminous materials sector. Following further expansion in the energy saving lamp phosphor business and rapid development of new products including CCFL phosphor and PDP phosphor, the luminous materials business of the Group will be further advanced.

The Group will maintain its leading position in the CPT industry domestically and internationally. Through a series of operational strategies including marketing-driven, technology innovation and cost-focused initiatives, the competitiveness of our CPT business will continue to improve, bringing stable cash flow to the Company and providing a good foundation for the Group's next step of strategic transformation.

**16** 彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# Management Discussion and Analysis (Continued)

## 4.   Financial Review

### (1)   Results performance

**Profit and loss data for 2003 - 2007** *(RMB'000)*

|  | 2003 | 2004 | 2005 | 2006 | 2007 |
|---|---|---|---|---|---|
| Turnover | 4,269,781 | 4,949,683 | 3,927,500 | 3,861,710 | **3,358,990** |
| Sales of CPTs | 3,888,156 | 4,466,767 | 3,441,096 | 3,342,888 | **2,914,351** |
| Sales of CPT components | 381,625 | 482,916 | 486,404 | 518,822 | **444,639** |
| Cost of sales | (3,256,959) | (3,896,956) | (4,357,371) | (3,356,160) | **(3,002,987)** |
| Gross profit | 1,012,822 | 1,052,727 | (429,871) | 505,550 | **356,003** |
| Operating expenses |  |  |  |  |  |
| Administrative expenses | (227,275) | (219,008) | (278,875) | (241,113) | **236,132** |
| a) General administrative expenses | (195,665) | (172,028) | (241,935) | (215,196) | **213,454** |
| b) Research and development expenses | (31,610) | (46,980) | (36,940) | (25,917) | **(22,678)** |
| Distribution expensses | (103,405) | (113,323) | (152,565) | (150,343) | **(162,073)** |
| Other operating expenses | (73,604) | (79,275) | (36,968) | (38,381) | **(42,055)** |
| Operating profit | 679,766 | 713,020 | (839,381) | 250,337 | **94,178** |
| Finance costs | (56,588) | (62,966) | (70,096) | (61,849) | **(66,729)** |
| Profit for the year | 315,825 | 385,327 | (754,547) | 129,512 | **66,511** |

# Management Discussion and Analysis *(Continued)*

## 4.   Financial Review *(continued)*

### (1)   Results performance *(Continued)*

**Turnover by product** *(RMB'000)*

| Name | | 2007 | 2006 | Increase/ (decrease) | Percentage of change |
|---|---|---|---|---|---|
| CPTs | | **2,914,351** | 3,342,888 | (428,536) | (12.82%) |
| Including: | Small-sized CPTs | **536,149** | 660,975 | (124,826) | (18.89%) |
| | Medium-sized CPTs | **2,233,224** | 2,673,542 | (440,318) | (16.47%) |
| | Large-sized CPTs | **144,978** | 8,370 | 136,608 | 1,632.08% |
| CPT components | | **444,639** | 518,822 | (74,184) | (14.30%) |
| Total | | **3,358,990** | 3,861,710 | (502,720) | (13.02%) |

**Sales volume by product** *(Unit)*

| Name | | 2007 | 2006 | Increase/ (decrease) | Percentage of change |
|---|---|---|---|---|---|
| Including: | Small-sized CPTs | **4,494,320** | 4,727,121 | (232,801) | (4.92%) |
| | Medium-sized CPTs | **10,478,558** | 10,279,499 | 199,059 | 1.94% |
| | Large-sized CPTs | **353,946** | 15,996 | 337,950 | 2112.72% |
| Total | | **15,326,824** | 15,022,616 | 304,208 | 2.03% |

**ASP by product** *(RMB/Unit)*

| Name | | 2007 | 2006 | Increase/ (decrease) | Percentage of change |
|---|---|---|---|---|---|
| Including: | Small-sized CPTs | **119** | 140 | (21) | (14.68%) |
| | Medium-sized CPTs | **213** | 260 | (47) | (18.06%) |
| | Large-sized CPTs | **410** | 523 | (114) | (21.72%) |

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Management Discussion and Analysis (Continued)

## 4. Financial Review *(continued)*

### (2) Change over last year and reasons

- In 2007, the Group recorded a turnover of RMB3,358,990,000, representing a decrease of RMB502,720,000, or 13.02% from 2006. Turnover of the CPT business amounted to RMB2,914,351,000, representing a year-on-year decrease of 12.82% from 2006. Turnover of the component business decreased by RMB74,184,000, or 14.30% to RMB444,639,000. The overall gross profit margin of the Group decreased from 13.09% of 2006 to 10.60% of 2007. In 2007, the supply of CPT in the market was greater than the demand thereof resulting in falling sales price of CPT and loss in gross profit. The Company enhanced the product mix and strengthened various cost reduction measures.

- Administrative expenses

  The Group's administrative expenses in 2007 decreased by RMB4,981,000, or 2.07%, to RMB236,132,000 from RMB241,113,000 of 2006. The decrease in administrative expenses was mainly due to adjustment arising from deducting the difference of employee benefits accrual for the year 2007 from the balance of employee benefits in accordance with the accounting standards.

- Finance costs

  The Group's finance costs for 2007 recorded RMB66,729,000, representing an increase of RMB4,880,000, or 7.89%, from RMB61,849,000 of 2006, which was mainly attributable to increases in bank loans as well as loan interest rate during the year.

# Management Discussion and Analysis (Continued)

## 4.  Financial Review *(continued)*

### (3)  Net current assets and financial resources

As at 31 December 2007, the Group's cash and bank balances aggregated to RMB363,617,000, representing a decrease of 24.17% from RMB479,503,000 as at 31 December 2006. As at 31 December 2007, the Group's borrowings totalled RMB962,684,000 as compared to RMB932,676,000 as at 31 December 2006. The borrowings would all be due within one year.

As at 31 December 2007, the Group's short-term bank loans amounting to approximately RMB200,000,000 (as at 31 December 2006: RMB140,000,000) were secured by the Group's properties, plants and equipment with a net book value of RMB195,538,000 (as at 31 December 2006: RMB205,027,000). As at 31 December 2007, the short-term bank loans guaranteed by the Company's ultimate holding company, IRICO Group Corporation, amounted to RMB250,500,000 (as at 31 December 2006: RMB640,000,000).

For the year ended 31 December 2007, the turnover for accounts receivable of the Group was 157 days, representing an increase of 16 days from141 days for the year ended 31 December 2006, which was mainly attributable to a slight increase of sales towards the end of the year. This resulted in an increase in the account receivables balance due within three months. For the year ended 31 December 2007, the inventory turnover for the Group was 84 days, representing an increase of 15 days from 69 days for the year ended 31 December 2006, which was mainly attributable to the more intense competition in the CPT market.

### (4)  Capital Structure

As at 31 December 2007, the Group's borrowings were mainly denominated in Renminbi and US dollar, while its cash and bank balances were mainly denominated in Renminbi, Hong Kong dollar and US dollar. The Group intends to maintain a suitable ratio of share capital to liabilities, to ensure an effective capital structure from time to time. As at 31 December 2007, its liabilities including bank loans aggregated to RMB1,783,723,000 while cash and bank balances totalled RMB363,617,000 and a gearing ratio (total liabilities/total assets) was 35%.

彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# Management Discussion and Analysis (Continued)

## 4.   Financial Review *(continued)*

### (5)   Dividend

The Company's dividend policy will remain unchanged. In light of the absence of accumulated surplus in 2007, the board of directors resolved not to distribute any final dividend.

### (6)   Foreign exchange risk

The Group's income and most of its expenses are denominated in Renminbi and US dollar. For the 12 months ended 31 December 2007, exchange rate fluctuations resulted in an increase in operating costs of RMB6,820,000.

### (7)   Commitments

As at 31 December 2007, capital commitments of the Group amounted to RMB27,550,000 (31 December 2006: RMB153,810,000), which were mainly financed by the Group's working capital.

### (8)   Contingent liability

As at 31 December 2007, the Group had no material contingent liability.

### (9)   Pledged assets

As at 31 December 2007, the Group had bank loans of RMB200,000,000, secured by its properties, plants and equipment with a net book value of approximately RMB195,538,000.

## Profiles of Directors, Supervisors and Senior Management

## Directors

### Executive Directors

| | | |
|---|---|---|
| Xing Daoqin | 53 | Chairman |
| Tao Kui | 55 | Vice Chairman |
| Guo Mengquan | 51 | |
| Zhang Shaowen | 46 | |
| Niu Xinan | 47 | |
| Li Shikun | 47 | Chief Financial Officer |

### Non-executive Director

| | |
|---|---|
| Zhang Xingxi* | 51 |

### Independent Non-executive Directors

| | |
|---|---|
| Xu Xinzhong* | 44 |
| Feng Bing* | 41 |
| Wang Jialu | 47 |
| Lv Hua* | 51 |
| Zhong Pengrong* | 55 |

*       Member of the Audit Committee

## Profiles of Directors, Supervisors and Senior Management (Continued)

### Directors *(continued)*

**Mr. Xing Daoqin** (**邢道欽**), aged 53, is an Executive Director and the Chairman of the Company. Mr. Xing joined the Company in February 1982. He graduated from Xi'an Jiaotong University (西安交通大學) with a bachelor degree in automation. In 1996, Mr. Xing was awarded a special government allowance for experts by the State Council of the PRC. He is a senior engineer at a professor level. Mr. Xing was the deputy general manager of IRICO Group Corporation since March 2001 and has been the general manager of IRICO Group Corporation since July 2005. Before that, he was the factory manager of Caihong Glass Factory under CPT Plant, the head of the Electronic Glass Department of IRICO Group Corporation and the deputy factory manager of CPT Plant. Since November 2007, Mr. Xing has served as the Chairman of IRICO Display Devices Co., Ltd.

**Mr. Tao Kui** (**陶魁**), aged 55, is an Executive Director and the Vice Chairman of the Company. Mr. Tao had joined the Company in September 1978. He graduated from South East University (東南大學) (formerly known as Nanjing Institute of Technology) with a bachelor degree in electrical vacuum devices and is qualified as a senior engineer. Mr. Tao acted as a director of IRICO Group Corporation from November 1995 to February 2001 and as the deputy general manager of IRICO Group Corporation since March 2001. Before that, he was the factory manager of both the phosphor powder factory and the glass factory under Shaanxi CPT Plant, a director of IRICO Group Corporation and the deputy factory manager of CPT Plant.

**Mr. Guo Mengquan** (**郭盟權**), aged 51, is an Executive Director. Mr. Guo joined the Company in September 1983. He graduated from Northwestern Polytechnical University (西北工業大學) with a bachelor degree in control and manipulation of aviation fluid mechanics and from Shaanxi MBA College with an MBA degree. He is a senior engineer at a professor level. Mr. Guo has been acting as the deputy general manger of IRICO Group Corporation since March 2001 and was the Chairman of IRICO Group Electronics Company Limited from August 2005 to December 2007. Before that, he was the factory manager of the glass plant under CPT Plant. Since November 2007, Mr. Guo has served as the Vice Chairman of IRICO Display Devices Co., Ltd.

**Mr. Zhang Shaowen** (**張少文**), aged 46, is an Executive Director. He is responsible for technology management of the Company. Mr. Zhang joined the Company in August 1981. He graduated from the Party School of Shaanxi Provincial Committee (陝西省委黨校) with a bachelor degree in economic management. He is a senior engineer. Mr. Zhang has been acting as the deputy general manager of IRICO Group Corporation since March 2001. Before that, he was the factory manager of both the shadow masks factory and the No. 1 CPT Plant under CPT Plant.

# Profiles of Directors, Supervisors and Senior Management (Continued)

## Directors *(continued)*

**Mr. Niu Xinan (牛新安)**, aged 47, was appointed as an Executive Director of the Company on 26 June 2006. Mr. Niu joined the Company in August 1981. He graduated from Northwestern University (西北大學) with a bachelor degree in administrative management and is a senior engineer. Mr. Niu has been serving as the party's Vice-secretary and Secretary to the disciplinary committee of IRICO Group Corporation. In June 2002, he was elected as the Chairman of the labor union of IRICO Group Corporation. Before that, Mr. Niu was the factory manager of No. 1 CPT factory under Shaanxi CPT Plant and the deputy director of its design institute, the manager of Display Devices Department and the factory manager of No. 1 CPT factory under Shaanxi CPT Plant, the factory manager of the Inner Mongolia Television Factory (內蒙古電視機廠) and the deputy factory manager of CPT Plant. Mr. Niu was appointed as a supervisor of the Company in the first general meeting of the Company on 9 September 2004 and was elected the chairman of the Supervisory Committee of the Company in its first meeting. He retired from the positions of the chairman of the Supervisory Committee and supervisor in the third meeting of the first Supervisory Committee on 5 August 2005.

**Mr. Li Shikun (李世坤)**, aged 47, is currently an Executive Director, the Chief Financial Controller of the Company and an accountant. He was appointed as the vice president and investment director of Trade Management Incorporation from 2005 to February 2007. From 2003 to 2005, he was President and Vice President of the operation management of Beijing headquarter of North West Securities. From 2004 to 2007, he was also the deputy secretary of Capital Enterprise Reform and Development Research Society (首都企業改革與發展研究會). From 2001 to 2003, he was the General Manager of Beijing Yushi Rongxin Investment Consultancy Limited (北京喻世融信投資顧問公司). From 1996 to 2001, he was Vice President of Tairun Investment Management Company (泰潤投資管理公司). From 1997 to 1998, he was a professional researcher in China Academy of Social Science specialized in monetary banks. From 1993 to 1995, he was the Beijing Chief Representative of Canada Lin's Group. From 1990 to 1993, he was the financial controller of Kenang Company (科能公司) of Chinese Academy of Science. From 1983 to 1989, he had worked in Langfang Hubei Province of Administrative Office (河北省廊坊行政公署) (currently known as Langfang Municipal Government).

**Mr. Zhang Xingxi (仇興喜)**, aged 51, is a Non-executive Director of the Company. Mr. Zhang joined the Company in August 1981. He graduated from the Faculty of Economics at Beijing Normal University (北京師範大學) with the postgraduate study in business administration. He was the general manager of Caihong Hotel (彩虹賓館) in Xianyang City, Shaanxi Province, the general manager of Hainan Caihong Industrial and Trading Corporation (海南彩虹工貿總公司), the manager of both the Audit Department, Human Resources Department, Chief Economist and the manager of the Estate Management Department of IRICO Group Corporation.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Profiles of Directors, Supervisors and Senior Management (Continued)

## Directors *(continued)*

**Mr. Xu Xinzhong (徐信忠)**, aged 44, is an Independent Non-executive Director of the Company and currently a professor in Finance in Guanghua Management College of Beijing University and Dean of its Faculty of Finance. Mr. Xu joined the Company in September 2004. Mr. Xu obtained his bachelor degree in meteorology from Beijing University (北京大學), his MBA degree from Aston University in the United Kingdom and his doctoral degree in finance from Lancaster University in the United Kingdom. He worked as a lecturer and senior lecturer of the Faculty of Accounting and Finance at Manchester University in the United Kingdom and was a professor and a chair in Finance of the Faculty of Management at Lancaster University in the United Kingdom. Mr. Xu has been acting as a professor of Guanghua Management College of Beijing University and Dean of its Faculty of Finance since January 2002. Mr. Xu was also awarded the Prize for the Best Manuscript (最佳論文獎) by British Accounting Review in 1997.

**Mr. Feng Bing (馮兵)**, aged 41, is an Independent Non-executive Director of the Company and currently an Executive Director and the deputy general manager of China Financial and Consulting Company (中華財務諮詢公司). Mr. Feng joined the Company in September 2004. He obtained his bachelor degree in computer software from Northwestern Polytechnical University, his master degree in engineering from Calculation Technology Research Institute of Chinese Academy of Sciences (中國科學院計算技術研究所) and his master's of science degree in finance from the School of Management at Syracuse University. He was a part-time tutor in optional practical training of the Faculty of Commerce at Syracuse University and a senior manager of Deloitte Touche Tohmatsu in the United States.

**Mr. Wang Jialu (王家路)**, aged 47, is an Independent Non-executive Director of the Company and a partner of Commerce & Finance Law Office (通商律師事務所). Mr. Wang joined the Company in September 2004. He completed his course for master degree in business administration from Guanghua Management College of Beijing University and the course for juris doctor from Marburg University of Germany, and received his MBA degree from Beijing University and the LLM degree from the law school of Marburg University of Germany. He is an arbitrator in the Beijing Arbitration Commission (北京仲裁委員會) and an adjunct lecturer for master degree course in the Law Faculty of Beijing University.

**Mr. Lv Hua (呂樺)**, aged 51, is an Independent Non-executive Director of the Company. He has a Phd degree. He is a certified accountant and a certified tax consultant in the PRC. He currently serves as the chairman (chief accountant) of Xian Xigema Certified Public Accountant Firm Limited as well as the vice chairman of Shaanxi Certified Public Accountants Association (陝西省註冊會計師協會), the vice chairman of Shaanxi Asset Appraisal Association, the executive member of Shaanxi Research Society of Restructuring the Economic Systems (陝西省體制改革研究會) and the vice chairman of General Chamber of Commerce of Xian City (西安市商業聯合會). He was consecutively awarded various titles such as "Excellent Youth Entrepreneur in Shaanxi Province" (陝西省傑出青年實業家), "New Long March Pioneer of Shaanxi Province" (陝西省新長征突擊手), "Top Ten News Figures of Finance and Financial System in Shaanxi Province" (陝西省財政、金融系統十大新聞人物) and "Top 10 Excellent Economic Figures of Shaanxi" (陝西十大傑出經濟人物).

# Profiles of Directors, Supervisors and Senior Management (Continued)

## Directors *(continued)*

**Mr. Zhong Pengrong** (鍾朋榮), aged 55, an Independent Non-executive Director of the Company. Mr. Zhong is the chairman of Beijing Shiye Consultancy Centre as well as professors of various universities such as Northwest University, Central University of Finance and Economics and Zhongnan University of Economics and Law. He also works as an economic consultant for numerous sizable enterprises and regional governments, formulating strategic proposal and restructuring proposal of over a hundred of enterprises alongside strategic development plans for more than sixty cities at regional and county level. Mr. Zhong graduated at the Zhongnan University of Economics and Law and was awarded a master degree of economic problems and direction of the PRC (中國經濟問題方向). Apart from working in the investigation and research office of the Central Office (中央辦公廳調研室), he has also issued hundreds of essays on economy on news papers such as "People's Daily", "Economic Daily, PRC" and "Guang Ming Daily". Various books written by him were published, such as "100 National Measures" (百條治國大計), "Macro-economic theory" (宏觀經濟論) and "Research on inflation in China" (中國通貨膨脹研究).

## Supervisors

**Mr. Fu Jiuquan**(符九全), aged 38, was appointed as the Chairman of Supervisory Committee of the Company with effect from 5 August 2005 and currently the deputy chief accountant of IRICO Group Corporation. Mr. Fu joined in July 1990 the Company. Mr. Fu graduated from Guilin Electronic Industry College (桂林電子工業學院) with a bachelor degree in finance and accounting. He is a senior accountant. He was appointed as the director of the Finance Division of CPT Plant and the manager of the Assets Finance Department of IRICO Group Corporation.

**Mr. Zhang Weichuan** (張渭川), aged 53, was appointed as an employee Supervisor with effect from 10 September 2004. He graduated from Northwestern Telecommunication Engineering College (西北電訊工程學院) with a bachelor degree in electrical vacuum devices. He is a senior engineer at a researcher level. He joined the Company in August 1978 and has served as the director of the Quality Assurance Department of CPT Plant, the deputy chief engineer of CPT Plant, the manager of the Technology and Quality Department of the IRICO Group Corporation and the manager of the Strategic Planning Department of the Company.

**Mr. Zhang Zhankui** (張佔葵), aged 57, was appointed as a shareholder Supervisor of the Company with effect from 26 June 2006. Mr. Zhang graduated from Chengdu Telecommunication Engineering College (成都電訊工程學院) with a bachelor degree in electronic engineering specialized equipment and automation and is a senior engineer. He joined the Company in August 1982. Mr. Zhang is currently the Chief of the Supervisory Division of IRICO Group Corporation. He was the deputy factory manager and factory manager of the power factory, head of Power and Energy Operation Division, deputy chief engineer and head of Human Education Division of CPT Plant, factory manager of No. 1 Xi'an Wireless Communication Plant, general manager of Xi'an IRICO Electronic Industrial Co. Ltd., and head of Human Resources Department of IRICO Group Corporation.

**26** 彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

## Profiles of Directors, Supervisors and Senior Management (Continued)

### Supervisors *(continued)*

**Mr. Sun Haiying**(孫海鷹), aged 64, was appointed as an independent Supervisor with effect from 10 September 2004 and is currently the head and a professor of the Environmental Science and Engineering Technical Centre of Xi'an Jiaotong University, a member of the Standing Committee of the Chinese People's Political Consultative Conference and the head of the Department of Science and Technology of Shaanxi Province, an adjunct professor of the Institute for Enterprises of the Hong Kong Polytechnic University. Mr. Sun graduated from the Northwestern University in geography and was director of the Shaanxi Province Meteorological Bureau (陝西省氣象局), the director of Shaanxi Province Science and Technology Department (陝西省科學技術廳). He was a group leader of the Planning Strategy Study Group under the State Mid- and Long-term Science and Technology Development Planning Team (國家中長期科學和技術發展規劃領導小組的規劃戰略研究專題組) in August 2004.

**Ms. Wu Xiaoguang** (吳曉光), aged 50, was appointed as an independent Supervisor with effect from 10 September 2004. She is currently a deputy professor of the Management Faculty at Xi'an Jiaotong University. She received her bachelor degree in economics from the Economic Management College of Northwestern University. She was a graduate majoring in accounting in management school of Xian Jiaotong University, and was awarded a master degree of business administration upon graduation at the Faculty of Business of The Hong Kong Polytechnic University. Ms. Wu is a part-time professor of the Chinese (Hainan) Reform and Development Research Institute (中國（海南）改革發展研究院), the chairman and general manager of Xi'an Wanguantong Financial Management Consulting Co., Ltd., an expert consultant of Shaanxi Province Venture Capital Association. She holds positions as expert consultant in Beijing Jinrui Junan Taxation Co, China Tax Consulting Information Web, China Industry and Economic News Web and Beijing Zhongbao Weiye Information Consulting Firm.

# Profiles of Directors, Supervisors and Senior Management (Continued)

## Senior Management

**Mr. Zhang Junhua** (張君華), aged 49, is the President of the Company. He is fully responsible for management on the Company's operation. Mr. Zhang joined the Company in December 1984. He graduated from Shaanxi Mechanical College with a bachelor's degree in machinery manufacturing and is a senor engineer. At present, he serves as chairman of Xi'an New Century Club, chairman and general manager of Xianyang IRICO Digital Display Technology Co., Ltd and chairman of Xi'an Caihui Display Technology Co., Ltd. Before that, he had acted as deputy head and head of Metering & Energy-Conservation Department of No. 2 CPT Factory under CPT Plant, assistant to the general manager, the deputy general manager, general manager and vice chairman of IRICO Display Devices Co., Ltd. He was the Vice President of the Company from 5 August 2005 to December 2007.

**Mr. Zhang Chunning** (張春寧), aged 48, is the Vice President of the Company. He is responsible for the operation of production, safety and environmental protection, technology and quality and innovation of new products respectively. Mr. Zhang graduated from the Faculty of Chemistry at Northwestern University in 1985 with a bachelor degree in science (chemistry) and from Xi'an Jiaotong University with a master degree in management (business administration). He is now pursuing his doctorate education in management (business administration) at Xi'an Jiaotong University. Mr. Zhang joined the Company in 1985. He has 16 years of business and management experience in the CPT industry. Before that, he was the deputy officer and officer of the No. 2 Factory under Shaanxi CPT Plant, the acting factory manager and factory manager of Caihong Phosphor Factory under CPT Plant, the general manager of Shaanxi IRICO Phosphor Materials Co., Ltd. (陝西彩虹螢光材料有限公司), the assistant to the president of the Company and the Joint Company Secretary of the Company.

**Mr. Zou Changfu** (鄒昌福), aged 49, is the assistant to the president of the Company and is engaged in purchasing materials. Mr. Zou was born in 1959 and received a degree in engineering and is a senior engineer. He was the general manager in the head office of IRICO Kunshan Holdings (彩虹昆山實業) and the chairman of IRICO Yingguang Electrics Limited Company (彩虹櫻光電子股份公司). He has been the general manager of the Purchase Department of the Company since December 2005.

**Mr. Ge Di** (葛迪), aged 49, is the assistant to the president of the Company and mainly engages in purchasing in the Metal Part Department. Mr. Ge, born in 1959, is a senior engineer with a college degree. He was the factory manager of CPT Plant from 2003 to March 2007. Furthermore, he has been the supervisor of IRICO Display Devices Co., Ltd. since September 2005, the manager of Metal Part Department of IRICO Group Electronics Company Limited since March 2007, the chairman of Cai Qin Electrical Devices Company Limited (彩秦電子器件有限公司) since March 2007.

# Profiles of Directors, Supervisors and Senior Management (Continued)

## Senior Management *(continued)*

**Mr. Wei Xiaojun** (**魏小軍**), aged 50, is currently acting as the assistant to the president and mainly engages in innovative business management. Mr. Wei was born in 1958. He obtained a degree of engineering and is a senior engineer. He was the general manager of head office in Shanxi IRICO General Service Corporation Co., Ltd. from 2003 to November 2005; the general manager of IRICO Kunshan Holdings Limited (昆山彩虹實業有限公司).

**Mr. Liu Xiaodong** (**劉曉東**), aged 36, is currently the Joint Company Secretary of the Company. He is responsible for the securities management, the legal matters and investors' relationship of the Company. Born in 1972, he graduated at Economic Management College of Northwestern University with a Phd degree and is a senior economist. He held positions as the technician and management staff of No.1 CPT Plant under CPT Plant, secretary to the general manager of IRICO Group Corporation. Since March 2002, he has been the secretary to the board of IRICO Display Devices Co., Ltd. Since January 2008, he has been the Joint Company Secretary of IRICO Group Electronics Company Limited.

**Mr. Lam Chun Lung** (**林晉龍**), aged 35, was appointed as the Company's qualified accountant and Joint Company Secretary with effect from 26 August 2006. Mr. Lam graduated from The Hong Kong University of Science and Technology with a first honour bachelor degree in business administration (accounting) in May 1998, and from the City University of Hong Kong with a master degree in business administration in July 2006. He had been the head of auditing in S C To & Co. (杜昭紹會計師事務所) and accounts and finance manager of Colliers Jardine International. Mr. Lam is a member of the Association of Chartered Certified Accountants and Hong Kong Institute of Certified Public Accountants.

## Changes of Directors, Supervisors and Senior Management

On details of changes of directors, supervisors and senior management, please refer to the "Directors, Supervisors and Senior Management" section within the Report of the Directors.

Annual Report

2007年年度報告

29

# Report of the Directors

The Board hereby presents the report of the Directors and the audited financial report of the Group for the year ended 31 December 2007 to the shareholders.

## Principal operations

The Group is principally engaged in the production and sales of display devices (CPT and FPD) and its components, electronic glass, phosphor materials and metallic products.

## Results and dividend

The sales of the Group in 2007 was RMB3,358,990,000, operating profit was RMB94,178,000, gross profit margin was10.60% and profit attributable to equity holders amounted to RMB66,511,000.

The annual results of the Group for the year ended 31 December 2007 and its financial status as at the same day prepared in accordance with accounting principles generally accepted in Hong Kong are set out on page 65 to 161 of this annual report.

The Company's dividend policy will remain unchanged. In light of the absence of accumulated surplus in 2007, the Board has decided not to distribute any final dividend.

## Charitable contributions

In 2007, the Group made charitable donations in a sum of approximately RMB140,000 (2006: nil).

## Five year financial summary

A summary of the published results and assets, liabilities and minority interests of the Group for the last five years, as extracted from the audited financial statements and adjusted (if applicable), is set out on page 161 of this annual report. This summary does not form part of the audited financial statements.

## Property, plant and equipment

Details of the movements of property, plant and equipment of the Group in the year are set out in note 17 to the financial statements.

**30**

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Report of the Directors (Continued)

## Share capital

Details of the changes in the Company's share capital, together with the reasons therefor, are set out in note 31 to the financial statements.

## Purchase, redemption and sale of shares of the Company

Save as disclosed in this annual report, neither has the Company nor any of its subsidiaries purchased, redeemed or sold any of its shares during the year.

## Reserves

Details of the movements of reserves of the Company and of the Group during the year are set out in note 32 to the financial statements.

## Major customers and suppliers

The percentage of purchases from and sales to the major suppliers and customers of the Group is set out as follows:

### Purchase

—    largest supplier 3.6%

—    five largest suppliers 13.4%

### Sales

—    largest customer 15.5%

—    five largest customers 50.7%

Due to the variety of the Company's production materials, the Company has not yet identified an established supplier with strength sufficient to provide a relatively high proportion of raw materials. Hence, the five largest suppliers represent 13.4% in total. None of the Directors, their respective associates or any shareholder who, as far as the Directors are aware, holds 5% or more of the Company equity interests had any interest in the above-mentioned major suppliers and customers.

# Report of the Directors (Continued)

## Directors, Supervisors and Senior Management

Directors and Supervisors of the Company for the year were as follows:

**Executive Directors:**

| | | |
|---|---|---|
| Xing Daoqin | *Chairman* | re-appointed on 9 September 2007 (Term of office of last session expired) |
| Tao Kui | *Vice Chairman* | re-appointed on 9 September 2007 (Term of office of last session expired) |
| Guo Mengquan | | re-appointed on 9 September 2007 (Term of office of last session expired) |
| Zhang Shaowen | | re-appointed on 9 September 2007 (Term of office of last session expired) |
| Niu Xinan | | re-appointed on 9 September 2007 (Term of office of last session expired) |
| Li Shikun | *Chief Financial Controller* | appointed on 9 September 2007 |

**Non-executive Directors:**

| | |
|---|---|
| Zhang Xingxi | re-appointed on 9 September 2007 (Term of office of last session expired) |
| Yun Dahjiunn | resigned on 8 September 2007 |

**Independent Non-executive Directors:**

| | |
|---|---|
| Xu Xinzhong | re-appointed on 9 September 2007 (Term of office of last session expired) |
| Feng Bing | re-appointed on 9 September 2007 (Term of office of last session expired) |
| Wang Jialu | re-appointed on 9 September 2007 (Term of office of last session expired) |
| Lv Hua | appointed on 9 September 2007 |
| Zhong Pengrong | appointed on 9 September 2007 |
| Feng Fei | resigned on 8 September 2007 |
| Zha Jianqui | resigned on 8 September 2007 |

**Supervisors:**

| | |
|---|---|
| Fu Jiuquan | re-appointed on 9 September 2007 (Term of office of last session expired) |
| Zhang Zhankui | re-appointed on 9 September 2007 (Term of office of last session expired) |
| Zhang Weichuan | re-appointed on 9 September 2007 (Term of office of last session expired) |
| Sun Haiying | re-appointed on 9 September 2007 (Term of office of last session expired) |
| Wu Xiaoguang | re-appointed on 9 September 2007 (Term of office of last session expired) |

Brief biographical details of Directors, Supervisors and Senior Management are set out on page 21 to 28.

Each of the independent non-executive Directors has issued a confirmation in respect of the factors set out in Rule 3.13 of the Listing Rules concerning his independence pursuant to Rule 3.15 of the Listing Rules. The Company considers all of the independent non-executive Directors to be independent.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Report of the Directors *(Continued)*

## Directors, Supervisors and Senior Management *(continued)*

The existing Second Session of the board of Directors (the "Board") and Supervisory Committee of the Company were elected at the general meeting held on 20 August 2007, with a term of 3 years. Upon expiry of their term of office, the Dractors and Supervisors can offer themselves for re-election at the general meeting.

The term of directorship of twelve Directors of the First Session of the Board expired on 8 September 2007, nine of them were re-elected as Directors of the Second Session of the Board with effect from 9 September 2007, including Xing Daoqin, Tao Kui, Guo Mengquan, Zhang Shaowen, Niu Xinan, Zhang Xingxi, Feng Bing, Xu Xinzhong and Wang Jialu while Zhong Pengrong, Li Shikun and Lv Hua were appointed as new Directors of the Second Session of the Board in replacement of three Directors (Yun Dah Jiunn, Feng Fei, Zha Jianqiu) whose terms had expired.

On 8 September 2007, the term of office of five Supervisors of the First Session of the Supervisory Committee of the Company expired, and all of the five Supervisors (Fu Jiuquan, Zhang Zhankui, Zhang Weichuan, Sun Haiying, Wu Xiaoguang) were re-elected as Supervisors of the Second Session of the Supervisory Committee.

On 27 December 2007, Mr. Guo Mengquan resigned from the office as President of the Company, and Mr. Wang Ximin and Mr. Li Miao respectively resigned from the office as Vice President of the Company. The original Vice President Mr. Zhang Junhua was appointed as President of the Company, and the original Joint Company Secretary Mr. Zhang Chunning was appointed as the Vice-President of the Company. On 28 December 2007, the Company also appointed respectively Mr. Zou Changfu, Mr. Ge Di and Mr. Wei Xiaojun respectively as Assistants to the President. On 18 January 2008, Mr. Liu Xiaodong was appointed as the Joing Company Secretary of the Company. Mr. Lam Chun Lung will remain as the other Joint Company Secretary of the Company.

# Report of the Directors (Continued)

## Remuneration of Directors and the five highest paid individuals

Details of the remuneration of directors and the five highest paid individuals of the Group are set out in note 10 to the financial statements.

There were no arrangements under which a Director or Supervisor of the Company had waived or agreed to waive any remuneration in respect of the year ended 31 December 2007.

## Share Appreciation Rights Plan

Pursuant to the Share Appreciation Rights Plan of the Company (details of which were set out in the Company's prospectus dated 8 December 2004), up to 31 December 2007, the following Directors, Supervisor and senior management members were granted share appreciation rights by the Company as follows:

| Name | Number of Share Appreciation Rights (Shares) | Note |
|------|------|------|
| Xing Daoqin | 2,200,000 | Director |
| Tao Kui | 1,860,000 | Director |
| Guo Mengquan | 1,660,000 | Director |
| Zhang Shaowen | 1,400,000 | Director |
| Niu Xinan | 800,000 | Director |
| Li Shikun | 300,000 | Director |
| Zhang Weichuan | 520,000 | Supervisor |
| Zhang Junhua | 890,000 | Senior Management |
| Zhang Chunning | 970,000 | Senior Management |
| Zou Changfu | 720,000 | Senior Management |
| Wei Xiaojun | 400,000 | Senior Management |
| Ge Di | 820,000 | Senior Management |

**34** 彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# Report of the Directors *(Continued)*

## Share Appreciation Rights Plan *(continued)*

*Note:* In 2008, the Company also granted share appreciation rights to the following Directors, Supervisors and senior management.

Directors: Mr. Xing Daoqin for 700,000 shares, Mr. Tao Kui for 530,000 shares, Mr. Guo Mengquan for 400,000 shares, Mr. Zhang Shaowen for 400,000 shares, Mr. Niu Xinan for 400,000 shares. Supervisors: Mr. Fu Jiuquan for 650,000 shares and Mr. Zhang Weichuan for 400,000 shares; and senior management: Mr. Zhang Junhua for 530,000 shares, Mr. Zhang Chunning for 300,000 shares, Mr. Zou Changfu for 300,000 shares, Mr. Ge Di for 300,000 shares, Mr. Wei Xiaojun for 300,000 shares and Mr. Liu Xiandong for 300,000 shares.

## Directors' and Supervisors' interests in contracts

At end of the year and any time during the year, save for the service contract in relation to the Company's business, none of the Company, its holding company or subsidiaries entered into any contract of significance in which the Director or Supervisor of the Company held, either directly or indirectly, any material interest.

## Directors' and Supervisors' Service contracts

Each of the Directors and Supervisors has entered into a service contract with the Company. No Director or Supervisor of the Company has entered into a service contract with the Company which is not terminable by the employer within a year without payment of any compensation (other than statutory compensation).

# Report of the Directors (Continued)

## Interests and short positions of Directors, Chief Executive and Supervisors in shares of the Company or its associated corporations

Save as the interests mentioned in the section headed "Share Appreciation Rights Plan" above, during the year ended 31 December 2007, none of the Directors, or chief executive or supervisors or their respective associates had any interests or short positions in the shares, underlying shares and/or debentures of the Company and/or any of its associated corporations (within the meaning of Part XV of the Securities and Futures Ordinance (the "SFO")) which are (a) required to be notified to the Company and the Stock Exchange pursuant to the provisions of Divisions 7 and 8 of Part XV of the SFO; (b) required to be recorded in the register of interests kept by the Company pursuant to section 352 of the SFO; (c) required to be notified to the Company and the Stock Exchange pursuant to the Model Code as set out in Appendix 10 to the Rules Governing the Listing of Securities on the Stock Exchange (the "Listing Rules"), which was effective from 30 June 2006.

During the year ended 31 December 2007, none of the Directors, chief executive, supervisors, senior management, their spouses or children under the age of 18 was given the right to acquire shares, underlying shares or debentures of the Company or its associated corporations (within the meaning of the SFO).

## Interests and short positions of substantial shareholders and other parties

So far as the Directors are aware, each of the following persons, not being a Director, chief executive Supervisor, or member of the Company's senior management, had an interest or short position in the Company's shares or underlying shares (as the case may be) as at 31 December 2007 and as entered in the register of interests to be kept pursuant to section 336 of the SFO:

IRICO Group Corporation had interests in 1,455,880,000 Domestic Shares of the Company (representing 100% of the Domestic Share capital), whereas HKSCC Nominees Limited had interests in 484,529,990 H Shares of the Company (representing 99.84% of the H Share capital).

*Notes:*

As at 31 December 2007, based on the information available to Directors and so far as the Directors are aware, HKSCC Nominees Limited held 484,529,990 H Shares, among which:

Derby Steven P., Goldfard Lawrence and Lamar Steven M. through their controlled corporations had interests in 49,554,000 H Shares of the Company (representing approximately 10.21% of the H Share capital).

J.P. Morgan Chase & Co. through its controlled corporations had interests in 33,742,000 H Shares of the Company (representing approximately 6.95% of the H Share capital).

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Report of the Directors (Continued)

## Interests and short positions of substantial shareholders and other parties *(continued)*

Montpelier Asset Management Limited had interests in 30,294,000 H Shares of the Company (representing approximately 6.24% of the H Share capital).

Pictet Asset Management Limited on behalf of Pictet Funds Asian Equities had direct interests in 27,488,000 H Shares of the Company (representing approximately 5.66% of the H Share capital).

Atlantis Investment Management Ltd had interests in 24,500,000 H Shares of the Company (representing approximately 5.05% of the H Share capital).

## Management contracts

No contracts concerning the management and administration of the whole or any substantial part of the business of the Company were entered into or existed during the year.

## Designated deposit and overdue time deposit

As at 31 December 2007, the Group had no designated deposits in any financial institutions in the PRC. All of the Group's bank deposits are lodged in commercial banks in the PRC, and are in compliance with the relevant laws and regulations. There were also no instances where the Group had failed to collect any of the time deposits upon maturity.

## Employees, Retirement benefits and Other benefits

As at 31 December 2007, the Group had 9,218* employees with various talents, of whom approximately 5.5% were management and administrative personnel, 7.5% were technological personnel, 0.9% were accounting and audit personnel, 0.8% were sales and marketing personnel, 82.5% were production employees and 2.8% were others. The employment and remuneration policy including retirement benefits and other benefits of the Company remained the same as set out in the Company's prospectus dated 8 December 2004. With full enthusiasm in work, the Group's employees are committed to ensure the high quality and reliability of products and services.

*:        Excluding service despatch worker.

# Report of the Directors (Continued)

## Connected transactions

The connected transactions recorded during the year and up to the date of this report are as follows:

## 1.    Continuing connected transactions during the year

For the year ended 31 December 2006, there were various continuing connected transactions between the Group and IRICO Group Corporation, IRICO Display Technology Co., Ltd. ("IRICO Display"), Xianyang IRICO Electronics Shadow Mask Co., Ltd. ("IRICO Shadow Mask"), Shaanxi Rainbow Phosphor Material Co., Ltd. ("IRICO Phosphor"), Xianyang Cailian Packaging Material Company Limited ("Xiangyang Cailian"), details of which are set out in the Company's prospectus dated 8 December 2004.

Pursuant to Rule 14A.43(3) of the Listing Rules, the Stock Exchange has granted to the Company a waiver from strict compliance with the otherwise applicable announcement and/or independent shareholders' approval requirements in connection with these continuing connected transactions (the "Waiver").

**38** 彩虹集團電子股份有限公司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Report of the Directors *(Continued)*

## Connected transactions *(continued)*

### 1. Continuing connected transactions during the year *(continued)*

For the year ended 31 December 2007, the approved annual cap and the actual revenue or expenditure in respect of each of the continuing connected transactions are set out below:

| Item | | Approved annual cap for 2007 *RMB'000* | Transaction amount for 2007 *RMB'000* |
|---|---|---:|---:|
| (i) | Supply of fuel, coal, industrial chemicals products and raw materials to IRICO Group Corporation | 75,500 | 25,092 |
| (ii) | Supply of parts and raw materials to IRICO Display, IRICO Phosphor and IRICO Shadow Mask | 797,800 | 419,589 |
| (iii) | Purchase of foam plastics, gloves, wood brackets and raw materials from IRICO Group Corporation | 121,000 | 120,468 |
| (iv) | Purchase of phosphor and shadown mask from IRICO Phosphor and IRICO Shadow Mask | 240,000 | 162,166 |
| (v) | Purchase of packaging materials, adhesive tapes and plastic materials from Xianyang Cailian | 54,400 | 42,531 |
| (vi) | Utilities obtained from IRICO Group Corporation | 620,000 | 397,229 |
| (vii) | Social and ancillary services obtained from IRICO Group Corporation | | |
| | (a) IRICO School | — | — |
| | (b) Social welfare facilities | 2,240 | — |
| | (c) Security services | 800 | — |
| | (d) Environmental hygiene and landscaping services | 1,200 | 100 |
| (viii) | Rental payable to IRICO Group Corporation | 46,234 | 35,742 |
| (ix) | Land use rights leasing fees payable to IRICO Group Corporation | 4,603 | 4,536 |
| (x) | Trademark licensing fees payable to IRICO Group Corporation | 4,500 | 3,476 |

# Report of the Directors *(Continued)*

## Connected transactions *(continued)*

### 1. Continuing connected transactions during the year *(continued)*

The Independent Non-executive Directors had reviewed these continuing connected transactions and confirmed to the Board that these transactions have been entered into:

(1)    in the ordinary and usual course of business of the Group;

(2)    either on normal commercial terms or, if there are not sufficient comparable transactions to judge whether they are on normal commercial terms, on terms no less favourable to the Company than terms available to or from (as appropriate) independent third parties; and

(3)    in accordance with the relevant agreement governing them on terms that are fair and reasonable and in the interests of the shareholders of the Company as a whole.

The auditors of the Company had provided a letter to the Directors of the Company confirming that the continuing connected transactions:

(1)    had received the approval by the Board of the Company;

(2)    were in accordance with the pricing policies of the Company;

(3)    had been entered into in accordance with the relevant agreements governing these transactions; and

(4)    had not exceeded the caps set out in the Waiver.

In respect of these continuing connected transactions, the Company confirmed that it had complied with the relevant requirements set out in the Waiver and Chapter 14A of the Listing Rules.

### 2. One-off Connected transactions

(a)    As mentioned in the announcement of the Company dated 7 March 2007, the Company entered into an agreement with IRICO Shadow Mask, a subsidiary of the Company, of which the Company held 75% equity interest, pursuant to which the Company transferred to IRICO Shadow Mask all the equipment for shadow mask production and other related equipment held by the Company before entering into such agreement (the "Shadow Mask Agreement"). The Shadow Mask Agreement was effective on the date when it was signed (please refer to the announcement of the Company dated 7 March 2007 for the relevant terms of the Shadow Mask Agreement).

# Report of the Directors (Continued)

## Connected transactions *(continued)*

### 2.   One-off Connected transactions *(continued)*

(b)   As mentioned in the announcement of the Company dated 1 August 2007, the Company and/ or its connected parties entered into the following transactions:

(i)   On 27 July 2007, IRICO Display and Xian Caihui Display Technology Co., Ltd. ("Caihui") entered into the IRICO Display Transfer Agreement in respect of the transfer of the Kinescope Assets by IRICO Display to Caihui. As disclosed in the Company's announcement dated 28 February 2008, the transaction under the IRICO Display Transfer Agreement has been completed.

(ii)   (a) On 27 July 2007, A Share Company and IRICO Group Corporation ("Group Corporation") entered into: (i) the A-P New Century Agreement regarding the transfer by A Share Company of its 41.67% equity interest in Xian New Century International Club Co., Ltd. ("New Century") to the Group Corporation ; and (ii) the A-P K-Line Agreement regarding the transfer by A Share Company of its 49% equity interest in Xianyang IRICO Digital Display Co., Ltd. ("K-Line Company") to the Group Corporation and (b) on 27 July 2007, the Company and the Group Corporation entered into the H-P K-Line Agreement in respect of the transfer by the Company of its 51% equity interest in K-Line Company to the Group Corporation. As disclosed in the Company's announcement dated 28 February 2008, the transactions under the A-P New Century Agreement, the A-P K-Line Agreement and the H-P K-Line Agreement have been completed.

# Report of the Directors (Continued)

## Connected transactions *(continued)*

### 2.   One-off Connected transactions *(continued)*

(c)   As mentioned in the announcement of the Company dated 17 August 2007, the Company entered into an acquisition agreement with IRICO Group ("Acquisition Agreement"), pursuant to which IRICO Group agreed to sell and the Company agreed to purchase, subject to the fulfilment of certain conditions, the 69.53% equity interests held by IRICO Group in Shaanxi IRICO Electronics Glass Company Limited ("IRICO Glass") for a total consideration of approximately RMB279.58 million ("Acquisition"). Upon completion of the Acquisition, IRICO Glass will become a non-wholly owned subsidiary of the Company. The Acquisition Agreement will be effective when approval of the acquisition is obtained from the Independent Shareholders at the extraordinary general meeting of the Company and State-owned Assets Supervision and Administration Commission ("SASAC") respectively. To-date, the approval from the Independent shareholders has been obtained and the final approval of the Acquisition by SASAC, one of the conditions precedent to the Acquisition Agreement, is still under process and has not been obtained. The Company and IRICO Group have agreed in writing to extend the last date for fulfilling such conditions to 30 June 2008.

## Bank loans

As at 31 December 2007, details of bank loans of the Group are set out in note 30 to the financial statements.

## Pre-emptive rights

There are no provisions for pre-emptive rights under the Company's Articles of Association or relevant laws and regulations which could oblige the Company to offer new shares on a pro-rata basis to existing shareholders.

## Subsidiaries

Details of the subsidiaries of the Company are set out in note 21 to the financial statements.

**42**

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Report of the Directors (Continued)

## External guarantee

The Group does not have any external guarantee during the year.

## Provision for Impairment of Fixed Assets

The Board appointed an independent professional valuer to evaluate the value of the production facilities and construction in progress. A provision for impairment of property, plant and equipment of the Group amounting to approximately RMB2,630,000 was made for 2007 (2006: RMB67,205,000). Details of the provision for impairment of fixed assets and set out in note 17 to the financial statements.

## Material litigation

As at 31 December 2007, save as disclosed below, the Directors were not aware of any other litigation or claim of material importance pending or threatened against any member of the Group.

1.  The dispute between Xianyang Xingyun Mechanical Company Limited ("Xingyun") and the Company

    In respect of the litigation between Xingyun and the Company previously disclosed, the status is as follows.

    On 11 April 2007, the Company received a writ of summons ((2007) Shaan Min Er Chu Zi No.10) from the People's High Court of Shaanxi, and was informed that Xingyun brought an action for a second time against the Company in respect of the same matter.

    The Company made a written submission to the Court denying all liabilities in response to the allegations made by Xingyun. The Company believes that Xingyun's claim for litigations had no legal and factual basis, therefore its claim should be dismissed. On 23 November 2007, the People's High Court of Shaanxi issued the civil verdict ((2007) Shaan Min Er Chu Zi No.10), the Court ruled that the claim by Xingyun against the Company demanding for compensation to its investment and other losses totalling RMB30,010,000 was not established and should be dismissed. At present, Xingyun has filed an appeal to the People's Supreme Court of the PRC. The Company has received a writ of summons from the People's Supreme Court on 15 April 2008.

# Report of the Directors (Continued)

## Material litigation *(continued)*

2.   Baystar Capital II, LP et al. v. Core-Pacific Yamaichi International (HK) Ltd. et al., Case No 05 1091 ABC (CWx) (filed in the United States District Court for the Central District of California) (the "Baystar Litigation").

In respect of the litigation with Baystar previously disclosed, the status is as follows.

The Company filed a motion for summary judgment on 15 May 2006. On 9 August 2006 the Court partly dismissed the motion.

Upon completion of the discovery procedure, summary judgment commenced for Core Pacific and Baystar. The Court granted Core Pacific's motion and dismissed the rights appeal that may be implied in all the litigations of Core Pacific. Shortly thereafter, Core Pacific approached the Company and offered to dismiss the claim for damages against the Company. No payment or compensation in respect of the litigation is required from the Company. The Company accepted the offer and signed the settlement proposal with the relevant parties on 5 October, 2007. Therefore, the litigation has ended.

The result of the above litigations has no material impact on the 2007 consolidated financial statement of the Group.

## Contingent Liabilities

As at 31 December 2007, the Group had no significant contingent liabilities.

## Code on Corporate Governance Practices

The Board has reviewed the documents regarding the Company's adoption of relevant corporate governance practices, and is of the opinion that the documents are in compliance with the principles and code provisions of the Code on Corporate Governance Practices (the "Code") as set out in Appendix 14 to the Rules. Governing the Listing of Securities on the Main Board of the Stock Exchange of Hong Kong Limited (the "Listing Rules").

The Directors are not aware of any information that would reasonably reflect the non-compliance of the Company or any of its Directors with the Code at any time in the year ended 31 December 2007. The Board considers that the Company has fully complied with the principles and code provisions set out in the Code during such period.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Report of the Directors (Continued)

## Model Code

The Company has adopted the Model Code set out in Appendix 10 to the Listing Rules. Having made specific enquiry of all Directors, the Company has confirmed that all Directors have complied with the requirements set out in the Model Code.

## Public float

Based on the information that is publicly available to the Company and within the knowledge of the Directors, as at the date of this report, the Directors believe that the relevant minimum percentage applicable to listed securities was maintained throughout the reporting period.

## Audit Committee

The Audit Committee of the Company has reviewed the Group's consolidated financial statements for the year ended 31 December 2007, including accounting principles adopted by the Group.

## Auditors

The financial statements of the Company have been audited by SHINEWING (HK) CPA Limited who retire and, being eligible, offer themselves for re-appointment subject to approval by shareholders at the annual general meeting to be held on 30 June 2008.

The Company has appointed SHINEWING (HK) CPA Limited as the auditors of the Company at the annual general meeting held on 29 June 2007, in place of the retiring auditors of the Company, PricewaterhouseCoopers, Certified Public Accountants ("PwC"). The main reason for the proposed change of auditors is that the Company and PwC could not reach an agreement on the audit fees for the financial year ended 31 December 2007.

By order of the Board
**Xing Daoqin**
*Chairman*

Xianyang, the PRC
24 April 2008

# Report of the Supervisory Committee

In 2007, in compliance with the Company Law of the People's Republic of China ("Company Law") and the Articles of Association of the Company, all members of the Supervisory Committee of the Company have complied with the principle of integrity, responsible to all shareholders and sincerely performed the duties of Supervisor to protect the interests of the shareholders. They supervised the operation and financial status of the Company and the performance of duties by the senior management in 2007. I hereby present the report of 2007 as follows:

In 2007, pursuant to the requirement of the Articles of Association, the Supervisory Committee reviewed financial reports regularly. In 2007, the Supervisory Committee held two meetings, to fully review the audited 2006 annual financial report and the 2007 interim financial report respectively of the Company, and to consider and pass the 2006 report of the Supervisory Committee. The convening of the two meetings was in compliance with the relevant requirements of the Company Law and the Articles of Association of the Company.

In 2007, the Supervisors of the Company attended all Board meetings and general meetings of the shareholders.

In respect of the details of change of session of the Supervisory Committee, refer to the "Directors, Supervisors and Senior Management" section within the Report of the Directors.

Pursuant to the PRC and other relevant laws and regulations and the Articles of Association of the Company, the Supervisory Committee performed serious supervision and examination on the procedures of Board meetings, resolutions, the execution by the Board of the resolutions passed in general meetings, the performance of duties by the senior management and the internal control system of the Company and its thorough execution.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Report of the Supervisory Committee (Continued)

The Supervisory Committee considered that the Directors and senior management of the Company operated strictly in compliance with the Company Law and Securities Law of the PRC, the Articles of Association of the Company and other relevant regulations and rules of Hong Kong. The Committee members performed their duties with integrity and diligence, and executed various resolutions and authorization passed in general meetings, to ensure that the operation of various businesses complies with the requirements of laws and regulations. Through the establishment of a series of rules, the Company further improved the corporate legal structure and the internal management system and established and improved the internal control system. In the process of the examination of the financial status of the Company and the supervision of the performance of the duties of the Directors and senior management of the Company, the Supervisory Committee did not find any behaviour in prejudice to the interest of the Company and the shareholders, nor any behaviour in contravention to laws and regulations, the Articles of Association of the Company and various rules and systems.

The Supervisory Committee is confident in the prospect of the Company and will proceed to carry out effective supervision on the operation of the Company to safeguard the interests of the shareholders and the Company as a whole.

By order of the Supervisory Committee
**Fu Jiuquan**
*Chairman of the Supervisory Committee*

Xianyang, the PRC
24 April 2008

# Corporate Governance Report

Sound corporate governance is the foundation for the healthy development of an enterprise as well as confidence for investors. In 2007, the Company persisted on good corporate governance principles, enhanced the standard of corporate governance and advanced the stability of operations and healthy development of the Company.

## 1.    Corporate Governance Practices

Improvement of the internal control system was made by the Company by reviewing the Code on Corporate Governance Practices (the "Code") to cater for the constant development and evolvement of corporate governance.

The Code sets out the principles of good corporate governance and two levels of recommendation, namely:

- Code Provisions, with which issuers are expected to comply or to give considered reasons for any deviation;

- Recommended Best Practices, which are for guidance only, save that issuers are encouraged to comply with. The Board has reviewed the Company's corporate governance practices. For the year ended 31 December 2007, the Company has adopted and complied with all the principles and Code Provisions and nearly all the Recommended Best Practices set out in the Code.

The Company has implemented the Code Provisions and nearly all the Recommended Best Practices in the Code. The Company's code on corporate governance practices includes, without limitation to, the Articles of Association passed at the shareholders' general meeting on 9 September 2004 and Work Rules for the Board, Organisation Rules for the Audit Committee, the Articles of the Nomination Committee, Organisation Rules for the Strategic Committee and Organisation Rules for the Remuneration Committee passed on 25 August 2005. The Board also formulated Management Methods for Information Disclosure, Management Mechanism for Investor Relations and Management Mechanism for Implementation of Resolutions of the Board as relevant work rules of the Company.

The Company's code on corporate governance practices exceeds the requirements of the Stock Exchange and is more strict than the Code Provisions set out in the Code in many aspects, which mainly include the following:

- The Company has established Audit Committee, the Remuneration Committee, the Nomination Committee and the Strategic Committee.

- Apart from one Non-Executive director, all other members of the Audit Committee are Independent Non-Executive Directors.

彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# Corporate Governance Report (Continued)

## 2. The Board

### Duties of the Board

The Board is responsible for providing leadership and monitoring the Company's affairs. All Directors are liable to act in the best interests of the Company and collectively assume the responsibility for overseeing and monitoring the Company's affairs. The Board makes regular assessment on the management's business prospects and results as well as exercises other power in accordance with the Articles of Association, which mainly includes:

• To oversee the implementation of resolutions passed at shareholders' general meetings;

• To approve the Company's business plans and investment schemes;

• To formulate the Company's annual financial budget schemes;

• To formulate the Company's profit distribution plan;

• To formulate the Company's basic management system;

• To approve the Company's accounting policies and adjustment to the same;

• To approve various announcements including financial statements.

# Corporate Governance Report *(Continued)*

## 2.    The Board *(continued)*

### Constitution

During the reporting period, the second Board comprising 12 Directors was elected in the extraordinary general meeting held on 20 August 2007, which includes 1 Non-executive Director, 5 Independent Non-executive Directors and 6 Executive Directors. All Directors must retire at the third annual general meeting after being appointed and are then eligible for re-election. Newly appointed Directors are subject to election at the first general meeting after being appointed. The personal information of the Directors are set out in the section headed Profile of the Directors and Senior Management of this report. The same information is also set out in the website of the Company.

Directors are elected in general meetings with a term of three years from the date of their elections until the expiry of their terms.

All Directors shall, upon their initial appointment, report to the Board in respect of the number and nature of any office assumed by them in other companies or institutions and the term of office, as well as disclose to the Company names of such companies or institutions. If the Board considers a Director has a conflict interest in any proposal under consideration, such Director shall report his/her interests and abstain from voting and may, when necessary, apply for absence. The Board requires Directors to confirm whether there is any connected transaction between the Directors or their respective associates and the Company or its subsidiaries at each financial reporting period. Any material transactions relating to connected parties, which have been confirmed, will be disclosed in notes to the financial statements of an annual report.

The Independent Non-executive Directors of the Company possess wide professional expertise and experience, and can fully perform their important function of supervision and balance to protect the interests of the shareholders and the Company as a whole. There are five (over one-third) Independent Non-executive Directors. In determining the independence of a Non-executive Director, the Director is considered independent only after the Broad have confirmed that there is not any direct or indirect material relationship between the Director and the Company. A Director is considered not independent after he/she has been a Director over nine years. The Board considers that the Independent Non-executive Directors are able to make independent judgment effectively and satisfy the guideline on assessing independence set out in Rule 3.13 of the Listing Rules.

The Company complies with the requirement concerning the appointment of sufficient Independent Non-executive Directors and that at least one of them should possess appropriate professional qualification or accounting or relevant financial expertise set out Rule 3.10(1) and 3.10(2).

The Company has made appropriate arrangement to insure against the possible legal action that the Directors and senior management may be involved. The Board reviews annually on the insurance arrangement.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Corporate Governance Report *(Continued)*

## 2.　The Board *(continued)*

### The Chairman and the Chief Executive

The Chairman is responsible for operation and management of the Board while the President takes charge of the day-to-day management of the Company's business. To ensure a balanced distribution of functions and authorisations, roles of the Chairman and the President are explicitly differentiated. The Chairman is taken up by Xing Daoqin and the President is taken up by Zhang Junhua. Under the assistance of the Vice Chairman, the Chairman leads and oversees the operation of the Board to ensure the performance of Board being in the best interests of the Company.

Under the assistance of the Vice President and the assistants to the President, the President is responsible for managing the day-to-day affairs of the Company, organising and implementing resolutions of the Board and reporting to the Board on the Company's overall operation. As the chief manager of the Company's day-to-day affairs, the President is responsible for the annual business plan and investment schemes and formulation of the Company's basic management rules. He/She also takes the direct responsibility for the Company's operation.

The President, the Vice President, the assistants to the President and the Chief Financial Controller make concerted efforts to collaborate with administrative departments of the Company to ensure the Board's and the Board committees' access to complete, reliable and proper information so that the Directors can make decisions with adequate information and to ensure proper implementation of the Board's resolutions. The President monitors the Company's operation and financial results with a view to plans and budget and passes on their opinions to the Board on material events.

### Joint Company Secretary

The Joint Company Secretary reports to the Board. All Directors are entitled to the Joint Company Secretary's services. He / She shall notify the Board the latest information on governance and oversight on a regular basis, assist the Chairman of the Board in preparation of the agenda, and prepare and despatch meeting documents on a timely and comprehensive basis so as to ensure the efficiency and validity of the Board meetings. Under the assistance of the Company's lawyer, the Joint Company Secretary is in charge of announcement of annual and interim reports and information disclosure in accordance with the Listing Rules and relevant rules of the Company. He / She makes a regular enquiry to the Company's financial department for information on connected transactions to secure the compliance with Listing Rules in respect of such transactions.

# Corporate Governance Report (Continued)

## 2. The Board *(continued)*

### Joint Company Secretary *(continued)*

The Joint Company Secretary is also in charge of preparing and keeping minutes of meetings of the Board and the Board committees together with any relevant documents, which will be provided and disclosed to all Directors for their inspection at any reasonable time. All matters under consideration including any enquiry and objection by Directors shall be minuted in details. Within a reasonable timeframe upon closing a meeting, a minute draft shall be despatched to all Directors for their comments.

### Board meetings

The Chairman is responsible for approving agenda of each Board meeting and effectually convenes the Board meeting, taking into consideration, where appropriate, other matters proposed by Directors for inclusion in the agenda. Assisted by the Company Secretary, the Chairman seeks to ensure all Directors' proper access to accurate, timely and sufficient information on the proposals to be considered by the Board to enable their wise decisions. While a 14 days' notice of a regular Board meeting is given, the agenda and the meeting documents attached are circulated at least 3 days prior to the holding of a Board meeting or a meeting of any special committee.

The Chairman encourages the Directors to be fully engaged in the Board's affairs and make contributions to the functions of the Board. The Board adopts sound corporate governance practices and procedures and takes appropriate steps to inspire the Directors' open and frank communication so as to ensure Non-executive Directors' enquiries with each Executive Director and communication between them are effective.

It is expressly provided in the Work Rules for the Board that, in the event that a substantial shareholder or Director of the Company has a conflict of interests in the matter to be considered at the Board meeting, such matter shall not be dealt with by Board committees or by way of circulation. Any Director who has a conflict of interests in the matters to be considered shall abstain from voting.

# Corporate Governance Report (Continued)

## 2. The Board *(continued)*

### Board meetings *(continued)*

Five Board meetings are held in 2007. The details of attendance at Board meetings are as follows:

| Directors | Board meeting (times of attendance in person / times of meetings held during the office of the directors) |
| --- | --- |
| Xing Daoqin | 5/5 |
| Tao Kui | 5/5 |
| Guo Mengquan | 3/5 |
| Zhang Shaowen | 3/5 |
| Niu Xinan | 4/5 |
| Li Shikun* | 1/1 |
| Zhang Xingxi | 5/5 |
| Yun Dah Jiunn** | 2/4 |
| Feng Fei** | 2/4 |
| Xu Xinzhong | 4/5 |
| Feng Bing | 4/5 |
| Wang Jialu | 3/5 |
| Zha Jianqiu** | 3/4 |
| Lv Hua* | 0/1 |
| Zhong Pengrong* | 1/1 |

*Note:* *assumed office on 9 September 2007; ** left on 8 September 2007.

In accordance with the Articles of Association, Directors, when necessary, may propose to convene an extraordinary Board meeting. They may also, when they consider necessary, obtain the Company's information and independent expert opinion, where expenses incurred are borne by the Company.

# Corporate Governance Report (Continued)

## 2. The Board *(continued)*

### Board committees

Four specialized committees are established under the Board, namely the Strategic Committee, the Audit Committee, the Nomination Committee and the Remuneration Committee. Their terms of reference are determined in accordance with the principles set out in the Code. The Board committees report to the Board. In order to perform their duties, the Board committees have the authority to appoint lawyers, investment bank, accountants or other professionals to provide professional advice if necessary, the expenses of which are borne by the Company.

### Nomination Committee

The Nomination Committee is chaired by Mr. Xing Daoqin. The committee members include Mr. Tao Kui, Mr. Guo Mengquan, Mr. Niu Xinan, Mr. Feng Bing, Mr. Xu Xinzhong and Mr. Wang Jialu. The committee provides the Board with its advice on appointment of directors, assessment of the Board's composition and re-election of the Board in accordance with certain agreed standards. The relevant standards include a director's proper professional knowledge and experience in the industry, personal integrity and commitment of adequate time. The Nomination Committee is responsible for choosing and recommendation of director candidates, including consideration of recommendations by others and, when necessary, making use of public recruitment.

By reference to the Recommendation A.4 of the Code, the Board formulated the Organisation Rules of the Nomination Committee.

In 2007, the Nomination Committee held one meeting to consider the candidates for the new senior management (President, Vice President and Secretary to the Board) of IRICO together with the proposal to be approved by the Board. The attendance details of each of the committee members of the Nomination Committee in 2007 are as follows:

| Directors | Meetings of Nomination Committee (times of attendance in person / times of meetings held) |
|---|---|
| Xing Daoqin | 1/1 |
| Tao Kui | 1/1 |
| Guo Mengquan | 1/1 |
| Niu Xinan | 1/1 |
| Xu Xinzhong | 1/1 |
| Feng Bing | 1/1 |
| Wang Jialu | 0/1 |

# Corporate Governance Report (Continued)

## 2.　The Board *(continued)*

### Audit Committee

The Audit Committee assumes the responsibilities for audit of the Company's financial reports, review of internal control and corporate governance work and provision of relevant advice to the Board. Independent Non-executive Directors represent four fifths of the members of the Audit Committee. The Audit Committee is chaired by Mr. Lv Hua, an Independent Non-executive Director. Mr. Lv has proper qualifications and financial experience (Mr. Lv was appointed as the Company's Director and Chairman of the Audit Committee on 9 September 2007. Mr. Zha Jianqiu was the previous Chairman of the Audit Department and left his office on 8 September 2007).

By reference to the recommendations in A Guide for Effective Audit Committees issued by Hong Kong Institute of Certified Accountants and C.3 of the Code, the Board has formulated the Organisation Rules of the Audit Committee.

In 2007, the Audit Committee convened five meetings with an average attendance rate of 100%. The senior management and external auditors were invited to these meetings.

In 2007, the Audit Committee:

* reviewed the Company's financial statements and interim results announcement for the six months ended 30 June 2007, together with the proposals to be approved by the Board;

* considered the financial statements and the annual results announcement of the Company for the year ended 31 December 2006, together with the proposals to be approved by the Board;

* considered the report in relation to the execution of connected transactions for the year ended 31 December 2006, together with the proposals to be approved by the Board;

* considered the audit fees and remuneration payable to the external auditors for the year ended 31 December 2007, together with the proposals for the auditors' re-appointment to be approved by the Board;

* reviewed matters in relation to audit, internal control and financial reporting with the senior management and external auditors of the Company.

# Corporate Governance Report *(Continued)*

## 2.   The Board *(continued)*

### Audit Committee *(continued)*

The attendance details are as follows:

| Directors | Meetings of Audit Committee<br>(times of attendance in person / times of meetings held during the respective office of the directors) |
|---|---|
| Zhang Xingxi | 5/5 |
| Xu Xinzhong | 5/5 |
| Feng Bing | 5/5 |
| Feng Fei** | 5/5 |
| Zha Jianqiu** | 5/5 |
| Zhong Pengrong* | 0/0 |
| Lv Hua* | 0/0 |

*Note:* *assumed office on 9 September 2007; ** left on 8 September 2007.

### Remuneration Committee

The Remuneration Committee is chaired by Mr. Tao Kui. The committee members include Mr. Zhang Shaowen, Mr. Wang Jialu and Mr. Lv Hua.

The Remuneration Committee is responsible for approval of remuneration policies for all directors and senior management members, including yearly distribution of share appreciation rights pursuant to the Company's share appreciation rights plan. Each year, the committee reviews the current remuneration policy and proposes to the Board to change the remuneration policy and system. It also assists the Company to formulate fair and transparent remuneration policies for directors and senior management and determination of their remuneration.

During the reporting period, the Remuneration Committee conducted a written resolution and passed the Directors' and senior management's share appreciation rights plan for the year. During the year, all committee members of the Remuneration Committee conducted more than three informal discussions on the remuneration-related affairs.

Remuneration policy for Executive Directors: The remuneration portfolio policy for Executive Directors is designed to link Executive Directors' remuneration with their performance and the Company's missions to inspire their performance and re-election. In accordance with the Articles of Association, directors may not determine or approve their own remunerations.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Corporate Governance Report (Continued)

## 2.   The Board *(continued)*

### Remuneration Committee *(continued)*

The five Executive Directors of the Company are the functionaries who fall within the management of the state-owned Asset Supervision and Administration of the State Council, and hence are subject to Provisional Management Methods for Remunerations of Enterprise Representatives and Provisional Assessment Methods for Appraisal of Operating Results of Enterprise Representatives issued in 2004. These five directors' remunerations consist of basic salary, performance-linked salary and long-term incentive-linked salary. The basic salary is the annual basic income of a functionary, which is determined by reference to the business scale of the enterprise, responsibilities, and the average salary of local enterprises, the industry and the enterprise itself. The performance-basic salary is linked with the operating results appraisal and based on the performance-linked salary, which is determined by reference to the appraisal grade and scores for the annual operating results of the enterprise representative. After the appraisal results are obtained, 60% of the performance-linked salary is paid while the payment of the remaining 40% will be deferred to the second year of re-election or resignation.

Based on their individual performance and the Company's operating status, the Remuneration Committee approved the share appreciation rights to be granted to the Executive Directors pursuant to the share appreciation rights plan as approved by shareholders.

Remuneration policy for Non-executive Directors: Remunerations of Non-executive Directors are subject to approval by the Company's shareholders' general meeting and determined after taking into consideration of the complexity of the matters to be handled by them and their duties. Pursuant to the service contract entered into between the Company and the Non-executive Directors, the Company pays Non-executive Directors the out-of-pocket expenses incurred in performance of their duties (including attendance at the Company's meetings).

# Corporate Governance Report (Continued)

## 2. The Board *(continued)*

### Remuneration Committee *(continued)*

A director's remuneration includes the amount paid by the Company and its subsidiaries for their management of affairs of the Company and its subsidiaries. Remunerations paid to each director of the Company in 2007 were as follows:

| Name | Position | Currency | 2007 Remuneration and allowance | 2007 Director's fee | 2007 Retirement benefits contribution | Remarks |
|---|---|---|---|---|---|---|
| Xing Daoqin | Chairman | RMB | 281,933.50 | | 13,087.26 | |
| Tao Kui | Vice Chairman | RMB | 281,831.50 | | 13,087.26 | |
| Guo Mengquan | Director | RMB | 253,596.00 | | 13,087.26 | |
| Zhang Shaowen | Director | RMB | 249,046.50 | | 13,087.26 | |
| Niu Xinan | Director | RMB | — | — | — | not received remuneration from the Company |
| Li Shikun | Executive Director, Chief Financial Controller | RMB | 305,000.00 | — | — | |
| Zhang Xingxi | Non-Executive Director | RMB | — | — | — | not received remuneration from the Company |
| Xu Xinzhong | Independent Director | RMB | — | 100,000 | — | |
| Feng Bing | Independent Director | RMB | — | 100,000 | — | |
| Wang Jialu | Independent Director | RMB | — | 100,000 | — | |
| Lv Hua | Independent Director | RMB | — | — | — | not received remuneration in the reporting period as a director of the Company |
| Zhong Pengrong | Independent Director | RMB | — | — | — | not received remuneration in the reporting period as a director of the Company |
| Zha Jianqiu | Former independent director | RMB | — | 100,000 | — | left on 8 September 2007 |
| Feng Fei | Former independent director | RMB | — | 100,000 | — | left on 8 September 2007 |
| Yun Dah Jiunn | Former director | RMB | — | — | — | left on 8 September 2007 |
| Sub-total | | RMB | 1,371,407.50 | 500,000.00 | 52,349.04 | |
| | | HKD | — | — | — | |

**彩 虹 集 團 電 子 股 份 有 限 公 司**
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Corporate Governance Report (Continued)

## 2.   The Board *(continued)*

### Remuneration Committee *(continued)*

Pursuant to applicable regulations of the PRC, the Company currently participates in a series of pension schemes organized by the provincial and municipal governments, pursuant to which all production plants of Company must contribute to such pension schemes according to certain proportions of the salaries, bonus and various allowance of the employees. As the production plants are located in different regions, the proportion of the contributions to the remuneration of the employees are also different.

## 3.   Statement of financial responsibility of the Board

The Board prepares the Company's financial statements and takes the responsibility for the completeness and legitimacy of the financial statements as well as the efficiency of the Company's internal control system and risk management process. The President is responsible for the daily management of the operation of the Company. The Board makes periodic reviews on the functions of and the rights authorised to the President to ensure such arrangements are proper and in compliance with the Articles of Association.

The Directors confirmed their responsibility to prepare financial statements for the Company for each financial year, to report truly and fairly on the financial status of the Group, and to comply with applicable accounting standards and adopt appropriate accounting policies in the preparation of the financial statements. The Directors are responsible for the safe-keeping of the accounts of the Company which disclose the financial status of the Company in reasonable accuracy and assist the Company in preparing financial statements in accordance with laws, regulations and applicable accounting standards.

For auditors' reporting responsibilities, please refer to the auditors' report.

# Corporate Governance Report (Continued)

## 4. Securities transactions by Directors

The Board has adopted the Model Code as set out in Appendix 10 to the Listing Rules as the code of conduct regarding securities transactions by directors of the Company. The Model Code is also applicable to special employees who may have certain price sensitive information that has been not disclosed, including such employees in the Company's subsidiaries and parent company. Upon appointment, any director of the Company is delivered a Model Code. After that, the Model Code is delivered twice a year, namely, one month prior to the Board meeting to approve the Company's interim results and one month prior to the Board meeting to approve the Company's annual results, together with an indicative notice to remind the Directors that they may not deal in the Company's shares until the results announcement.

All Directors of the Company confirm that as at 31 December 2007, all Directors and the specific employees who may have certain price sensitive information that has not been disclosed complied with the Model Code and none of the said persons has interests or short positions which are required to notify the Company and the Stock Exchange, or incur any conduct in violation of regulations.

## 5. Control mechanism

### Internal control and internal audit

**Internal control system**

The Board is fully in charge of the Company's internal control system. It is responsible for ensuring the Company has adequate internal control systems to monitor its overall financial and operational status, hence avoiding material financial omission or loss and omission or risk in relation to operation controls. Through its Audit Committee, the Board makes periodic review on the effectiveness of the internal control system. In 2007, the Company enhanced the quality of its internal control system which operated effectively during the year. The Company also audited the effectiveness of the internal control system, which includes controls over finance, operations, regulation compliance and risk management. Relevant results have been reported to the Board through the Audit Committee.

The Company's internal control system plays a key role in risk management which is crucial for the achievement of its business objectives. The internal control system and work process are formulated to prevent unauthorised use or disposal of the Company's assets and to ensure proper maintenance of true and adequate accounting records and relating financial information. While the internal control procedures are designed to manage and properly control, but not remove, the risks of failing to achieve business objectives. The Company's internal control provides reasonable, but not absolute, assurance against material mis-statement or loss.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Corporate Governance Report *(Continued)*

## 5.   Control mechanism *(continued)*

### Internal control and internal audit *(continued)*

**Internal control system** *(continued)*

The Board confirms that the Company has set up procedures and systems for efficient recognition, assessment and management of material operating risks with support from Board committees and senior management. The Audit Committee believes that the Company's internal control system and accounting system are designed to safeguard the security of material assets, to facilitate the recognition and monitoring of the Company's operating risks, the execution of material transactions under management's authorisation and the reliable disclosure of financial statements; and that the established control system is functioning constantly to identify, evaluate and manage the material risks faced by the Company.

**Internal audit**

The Company has set up an internal audit department, which is responsible for overseeing the Company's internal controls, ensures the achievement of the corporate goals and conducts independent reviews.

The internal audit department gives its prudent opinion as to whether the Company's operations have a comprehensive and efficient risk management system and reports to the Audit Committee accordingly. In 2007, all internal audit reports and opinions are submitted to the President, the Chief Financial Controller and other Executive Directors of the Company as well as the senior management of the department being audited. The audit department also follows up on the issues identified during the audit and conducts follow-up audit to ensure that all issues have been satisfactorily resolved. In addition, a regular dialogue is maintained between the audit department and the external auditors so that both are aware of the significant factors that may affect their respective scope of work.

# Corporate Governance Report *(Continued)*

## 5.   Control mechanism *(continued)*

### Internal control and internal audit *(continued)*

**Risk management**

One of the Board's responsibilities is to raise the risk awareness across the Company's business operations. The Board properly implements the operating risk management procedures across the Company and formulates policies and procedures which provide a framework for identification and management of risks. The Board fulfils its oversight role over the Company and its subsidiaries in the following areas:

- • establishment of the risk management system of the Company;

- • identification, assessment and management of the material risks faced by various units of the Company;

- • review and assessment of the adequacy of the Company's risk management process, system and internal control;

- • review and monitoring of compliance with the Company's risk management process, system and internal control including compliance with prudential and legal requirements governing the business of the Company.

The risk management activities include review of detailed financial and operational reports, budgets and business plans provided by the management, review by the Board of actual results against the budgets, ongoing work of the internal audit function and regular business audits by Executive Directors and the executive management teams of each core business division. While the said procedures are designed to identify and manage the risks which may impose adverse impact on realization of the Group's business prospects, they do not provide absolute assurance against any material mis-statement or loss.

# Corporate Governance Report *(Continued)*

## 5. Control mechanism *(continued)*

### Internal control and internal audit *(continued)*

**Risk management** *(continued)*

The Board is fully in charge of overseeing the operations of the Company's business units. Personnel with proper experience and skills are appointed to the board of directors of the Company's subsidiaries and associated companies to attend their board meetings and to oversee the operations of those companies. Monitoring activities include review and approval of business strategies, budgets and plans as well as setting of key business performance targets. The identification, evaluation and report on the likelihood and potential financial impact of material business risks are left to the management of such companies.

Executive Directors hold monthly meetings with executive and business senior management members to review the integrated financial status and operations against the budgets and estimation and to estimate and evaluate risk factors so as to formulate and adjust business strategies.

**External auditors and their remuneration**

As approved in the annual general meeting held on 29 June 2007, the Board appointed Shinewing (HK) CPA Limited as the auditors of the Company, to replace the retiring auditors of the Company, PricewaterhouseCoopers, Certified Public Accountants ("PwC"). The main reason for the change of auditors is that the Company and PwC could not reach an agreement on the audit fees for the financial year ended 31 December 2007.

The Audit Committee reviewed the letter from Shinewing (HK) CPA Limited to confirm its independence and objectiveness, held meetings with the firm to discuss the audit scope and fees, and approved scope and fees for any non-audit service provided by the firm.

For the year ended 31 December 2007, the remuneration of the external auditors amounted to RMB2,330,000, all of which was for audit service. No non-audit service fee was incurred for the year. The audit fee has been approved by the Audit Committee and the Board.

# Corporate Governance Report *(Continued)*

## 5.   Control mechanism *(continued)*

### Interests of shareholders and investor relations

**General meeting**

The Company encourages shareholders' attendance at shareholders' general meetings and gives at least a 45 days' notice of such meetings. The Chairman and Directors may attend the meetings to answer questions about the Company's businesses. All shareholders have rights to request the convening of an extraordinary general meeting and put forward proposals for shareholders' consideration in accordance with the Articles of Association. At the annual general meeting, each matter is put forward in the form of a separate proposal and voted by way of poll based on the number of shares. Voting results of the annual general meeting are released in the form of announcements and set out on the respective websites of the Stock Exchange and the Company.

On 29 June 2007, the 2006 Annual General Meeting was held at the conference room on the 1st floor of the office building of the Company in Xianyang, Shaanxi Province.

On 20 August 2007, an extraordinary general meeting was held at the conference room of the Company on the 1st floor of the office building of the Company in Xianyang, Shaanxi Province.

On 24 October 2007, an extraordinary general meeting, H Shareholders Class Meeting and Domestic Shareholder Class Meeting were held at the conference room on the 1st floor of the office building of the Company in Xianyang, Shaanxi Province.

On 1 November 2007, an extraordinary general meeting was held at the conference room on the 1st floor of the office building of the Company in Xianyang, Shaanxi Province.

Details of the above general meetings are set out in the respective websites of the Stock Exchange and the Company.

The Company Secretary is responsible for day-to-day contacts between the Board and substantial shareholders. Investors and the public may access the Company's website for detailed information on the Company's businesses. The Company's interim and annual results announcements can also be downloaded from the Company's website.

According to the information available to the Company and as far as the Directors are aware, at least 25% of the Company's total issued share capital is held by public shareholders.

# Corporate Governance Report *(Continued)*

## 5. Control mechanism *(continued)*

### Information disclosure and investor relations

The Company formulated and implemented the Management Methods on Information Disclosure and the Rules for Investor Relations Management, aiming to further standardize its information disclosure system to ensure the accuracy, completeness and timeliness of information disclosure and to provide investors with high-quality services. The Board Office, with the Company Secretary as its head, formulates the procedures for gathering, verification and reporting of internal operating data and other information as well as the procedures for preparation and review of periodic reporting.

The Company undertakes that it shall make impartial disclosure and full and transparent reporting. The ultimate duty of the Chairman is to ensure efficient communication with the investors and the Board's understanding of the opinions of substantial shareholders. After the Company's announcement of its interim and annual results, the Board is committed to provide shareholders with clear and comprehensive results information of the Group by publishing interim and annual reports. The senior management shall preside over presentations and attend the meetings with institute investors and financial analysts for intercommunication in respect of the Company's results and business prospects, which is a regular function of investor relations. In addition, the Company arranges for roadshow for analysts and investors, from time to time, to foster intercommunication and understanding between the investors and the management of the Company. Field visits by analysts and investors are welcomed for inspecting plants and business premises of the Company. In 2007, the Company and investors and/or analysts held 15 meetings and 2 roadshows in Hong Kong and 1 roadshow in Japan.

The Company is committed to increase transparency and improve investor relations and has attached much importance to shareholders' responses in this regard. For any inquiry and advice, shareholders can contact the Company Secretary through the hotline (+86 29 3333 2866) or by email lxd@ch.com.cn or raise the questions at the annual general meeting or the extraordinary general meeting. Inquiry can also be made through the above means to the Company Secretary for procedures concerning the convening of an annual general meeting or extraordinary general meeting and putting forward a proposal.

By order of the Board
*Joint Company Secretaries*
**Liu Xiaodong**
**Lam ChunLung**

Xianyang, Shaanxi
24 April 2008

Annual Report
2007年年度報告    65

# Independent Auditor's Report



SHINEWING (HK) CPA Limited
16/F., United Centre
95 Queensway, Hong Kong

**TO THE SHAREHOLDERS OF**
**IRICO GROUP ELECTRONICS COMPANY LIMITED**
*(A joint stock company established in the People's Republic of China with limited liability)*

We have audited the consolidated financial statements of IRICO Group Electronics Company Limited (the "Company") and its subsidiaries (collectively the "Group") set out on pages 67 to 160, which comprise the consolidated and company balance sheets as at 31 December 2007, and the consolidated income statement, the consolidated statement of changes in equity and the consolidated cash flow statement for the year then ended, and a summary of significant accounting policies and other explanatory notes.

## Directors' responsibility for the consolidated financial statements

The directors of the Company are responsible for the preparation and the true and fair presentation of these consolidated financial statements in accordance with Hong Kong Financial Reporting Standards issued by the Hong Kong Institute of Certified Public Accountants and the disclosure requirements of the Hong Kong Companies Ordinance. This responsibility includes designing, implementing and maintaining internal control relevant to the preparation and the true and fair presentation of the financial statements that are free from material misstatement, whether due to fraud or error; selecting and applying appropriate accounting policies; and making accounting estimates that are reasonable in the circumstances.

## Auditor's responsibility

Our responsibility is to express an opinion on these consolidated financial statements based on our audit and to report our opinion solely to you, as a body, and for no other purpose. We do not assume responsibility towards or accept liability to any other person for the contents of this report. We conducted our audit in accordance with Hong Kong Standards on Auditing issued by the Hong Kong Institute of Certified Public Accountants. Those standards require that we comply with ethical requirements and plan and perform the audit to obtain reasonable assurance as to whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the entity's preparation and true and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of accounting estimates made by the directors, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

**彩 虹 集 團 電 子 股 份 有 限 公 司**
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Independent Auditor's Report

## Opinion

In our opinion, the consolidated financial statements give a true and fair view of the state of affairs of the Company and of the Group as at 31 December 2007 and of the Group's profit and cash flows for the year then ended in accordance with Hong Kong Financial Reporting Standards and have been properly prepared in accordance with the disclosure requirements of the Hong Kong Companies Ordinance.

**SHINEWING (HK) CPA Limited**
*Certified Public Accountants*
**Ip Yu Chak**
Practising Certificate Number: P04798

Hong Kong
24 April 2008

# Consolidated Income Statement

Year Ended 31 December 2007

|  | Notes | 2007 RMB'000 | 2006 RMB'000 |
|---|---|---|---|
| Turnover | 8 | 3,358,990 | 3,861,710 |
| Cost of sales |  | (3,002,987) | (3,356,160) |
| Gross profit |  | 356,003 | 505,550 |
| Other operating income | 9 | 178,435 | 174,624 |
| Selling and distribution costs |  | (162,073) | (150,343) |
| Administrative expenses |  | (236,132) | (241,113) |
| Other operating expenses |  | (42,055) | (38,381) |
| Finance costs | 11 | (66,729) | (61,849) |
| Share of results of associates | 22 | 9,093 | (945) |
| Gain on partial disposal of a subsidiary | 21 | 25,858 | — |
| Gain on disposal of a subsidiary | 36 | 1,969 | — |
| Gain on disposal of an associate | 22 | 16,208 | — |
| Profit before taxation |  | 80,577 | 187,543 |
| Taxation | 12 | (8,420) | (19,828) |
| Profit for the year | 13 | 72,157 | 167,715 |
| Attributable to: |  |  |  |
| Equity holders of the Company |  | 66,511 | 129,512 |
| Minority interests |  | 5,646 | 38,203 |
|  |  | 72,157 | 167,715 |
| Earnings per share |  |  |  |
| (expressed in RMB per share) — basic | 15 | 0.03 | 0.07 |
| Dividend | 16 | — | — |

**68** 彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# Consolidated Balance Sheet

As at 31 December 2007

| | Notes | 2007 RMB'000 | 2006 RMB'000 |
|---|---|---|---|
| **Non-current assets** | | | |
| Property, plant and equipment | 17 | 2,009,640 | 2,497,428 |
| Investment property | 18 | 4,697 | — |
| Leasehold land and land use rights | 19 | 45,563 | 35,971 |
| Intangible assets | 20 | 4,433 | 11,615 |
| Interests in associates | 22 | 333,650 | 232,220 |
| Available-for-sale investments | 23 | 24,060 | 24,060 |
| | | 2,422,043 | 2,801,294 |
| **Current assets** | | | |
| Inventories | 24 | 698,490 | 631,915 |
| Trade receivables | 25 | 1,463,798 | 1,512,292 |
| Other receivables, deposits and prepayments | 26 | 135,922 | 66,053 |
| Bank balances and cash | 27 | 363,617 | 479,503 |
| | | 2,661,827 | 2,689,763 |
| **Current liabilities** | | | |
| Trade payables | 28 | 575,413 | 575,718 |
| Other payables and accruals | 29 | 215,313 | 726,511 |
| Tax payables | | 4,305 | 6,701 |
| Current portion of long-term payables | 35 | 2,938 | 2,347 |
| Short-term bank borrowings | 30 | 962,684 | 932,676 |
| | | 1,760,653 | 2,243,953 |
| **Net current assets** | | 901,174 | 445,810 |
| | | 3,323,217 | 3,247,104 |

Annual Report
2007年年度報告

69

# Consolidated Balance Sheet

As at 31 December 2007

| | Notes | **2007**<br>**RMB'000** | 2006<br>*RMB'000* |
|---|---|---|---|
| **Capital and reserves** | | | |
| Share capital | 31 | **1,941,174** | 1,941,174 |
| Other reserves | 32 | **766,146** | 766,146 |
| Accumulated losses | | **(459,911)** | (526,422) |
| | | | |
| Equity attributable to equity holders of the Company | | **2,247,409** | 2,180,898 |
| | | | |
| Minority interests | | **1,052,738** | 1,035,713 |
| | | | |
| **Total equity** | | **3,300,147** | 3,216,611 |
| | | | |
| **Non-current liabilities** | | | |
| Deferred income | 33 | **1,023** | 4,344 |
| Deferred income tax liabilities | 34 | **12,797** | 15,577 |
| Long-term payables | 35 | **9,250** | 10,572 |
| | | | |
| | | **23,070** | 30,493 |
| | | | |
| | | **3,323,217** | 3,247,104 |

The consolidated financial statements on pages 67 to 160 were approved and authorised for issue by the Board of directors on 24 April 2008 and are signed on its behalf by:

**Xing Daoqin**　　　　　**Guo Mengquan**
*Chairman*　　　　　　　*Director*

**70** 彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# Balance Sheet

Year Ended 31 December 2007

| | Notes | 2007 RMB'000 | 2006 RMB'000 |
|---|---|---|---|
| **ASSETS** | | | |
| **Non-current assets** | | | |
| Property, plant and equipment | 17 | 803,483 | 1,223,420 |
| Intangible assets | 20 | 2,648 | 9,402 |
| Investments in subsidiaries | 21 | 1,036,496 | 1,102,227 |
| Investment in an associate | 22 | 360,000 | 250,000 |
| | | 2,202,627 | 2,585,049 |
| **Current assets** | | | |
| Inventories | 24 | 273,623 | 315,765 |
| Trade receivables | 25 | 679,018 | 585,872 |
| Other receivables, deposits and prepayments | 26 | 84,938 | 42,742 |
| Loan to a subsidiary | 21 | — | 40,000 |
| Bank balances and cash | 27 | 160,821 | 221,729 |
| | | 1,198,400 | 1,206,108 |
| **Current liabilities** | | | |
| Trade payables | 28 | 402,933 | 377,258 |
| Other payables and accruals | 29 | 181,924 | 595,930 |
| Current portion of long-term payables | 35 | 744 | 962 |
| Short-term bank borrowings | 30 | 628,684 | 563,704 |
| | | 1,214,285 | 1,537,854 |
| **Net current liabilities** | | (15,885) | (331,746) |
| | | 2,186,742 | 2,253,303 |

Annual Report
2007年年度報告

71

# Balance Sheet

Year Ended 31 December 2007

|  | Notes | 2007 RMB'000 | 2006 RMB'000 |
|---|---|---|---|
| **Capital and reserves** | | | |
| Share capital | 31 | **1,941,174** | 1,941,174 |
| Other reserves | 32 | **986,153** | 986,153 |
| Accumulated losses | | **(748,114)** | (689,740) |
| **Total equity** | | **2,179,213** | 2,237,587 |
| **Non-current liabilities** | | | |
| Deferred income | 33 | **—** | 534 |
| Deferred income tax liabilities | 34 | **5,403** | 6,117 |
| Long-term payables | 35 | **2,126** | 9,065 |
| | | **7,529** | 15,716 |
| | | **2,186,742** | 2,253,303 |

Xing Daoqin                    Guo Mengquan
*Chairman*                        *Director*

**72** 彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# Consolidated Statement of Changes in Equity

Year Ended 31 December 2007

| | Note | Share capital RMB'000 | Other reserves RMB'000 | (Accumulated losses) / retained earnings RMB'000 | Total RMB'000 | Minority interests RMB'000 | Total equity RMB'000 |
|---|---|---|---|---|---|---|---|
| | | | | **Attributable to equity holders of the Company** | | | |
| Balance at 1 January 2006 | | 1,941,174 | 944,402 | (655,934) | 2,229,642 | 830,984 | 3,060,626 |
| Profit for the year | | — | — | 129,512 | 129,512 | 38,203 | 167,715 |
| Negative reserve arising from share reform | 32 | — | (176,083) | — | (176,083) | 191,022 | 14,939 |
| Dividends declared to minority shareholders by certain subsidiaries | | — | — | — | — | (19,770) | (19,770) |
| Acquisition of additional interests of a subsidiary from a minority shareholder | | — | (2,173) | — | (2,173) | (4,726) | (6,899) |
| | | | | | | | |
| Balance at 31 December 2006 and 1 January 2007 | | 1,941,174 | 766,146 | (526,422) | 2,180,898 | 1,035,713 | 3,216,611 |
| Profit for the year | | — | — | 66,511 | 66,511 | 5,646 | 72,157 |
| Dividends declared to minority shareholders by certain subsidiaries | | — | — | — | — | (15,743) | (15,743) |
| Partial disposal of a subsidiary | | — | — | — | — | 27,122 | 27,122 |
| | | | | | | | |
| Balance at 31 December 2007 | | 1,941,174 | 766,146 | (459,911) | 2,247,409 | 1,052,738 | 3,300,147 |

Annual Report
2007 年年度報告

# Consolidated Cash Flow Statement

Year Ended 31 December 2007

| | Notes | 2007 RMB'000 | 2006 RMB'000 |
|---|---|---|---|
| **OPERATING ACTIVITIES** | | | |
| Profit before taxation | | **80,577** | 187,543 |
| Adjustments for: | | | |
| Impairment loss (reversal of impairment loss) on trade and other receivables | | **1,300** | (1,580) |
| Write-down of inventories | | **3,376** | 1,720 |
| Depreciation of property, plant and equipment and investment property | | **290,281** | 337,461 |
| Amortisation of leasehold land and useful rights and intangible assets | | **9,189** | 7,907 |
| Impairment loss on property, plant and equipment | | **2,630** | 67,205 |
| Impairment loss on intangible assets | | **—** | 30,260 |
| Net loss (gains) on disposal of property, plant and equipment | | **142,609** | (21,748) |
| Dividend income from available-for-sale investment | | **(566)** | — |
| Gains on disposal of intangible assets | | **—** | (113,573) |
| Reversal of provision of staff welfare | | **(72,488)** | — |
| Interest income | | **(5,482)** | (6,521) |
| Finance costs | | **66,729** | 61,849 |
| Reversal of write-down of inventories | | **(10,678)** | — |
| Write off of an intangible asset | | **241** | — |
| Share of results of associates | | **(9,093)** | 945 |
| Amortisation of deferred income on grants received | | **(3,321)** | (3,475) |
| Gain on disposal of an associate | | **(16,208)** | — |
| Gain on partial disposal of a subsidiary | | **(25,858)** | — |
| Gain on disposal of a subsidiary | | **(1,969)** | — |
| | | | |
| Operating cash flow before movements in working capital | | **451,269** | 547,993 |
| (Increase) decrease in inventories | | **(62,087)** | 55,807 |
| Decrease (increase) in trade and other receivables, deposits and prepayments | | **8,164** | (42,467) |
| Decrease in trade and other payables and accruals | | **(411,881)** | (105,665) |
| Decrease in long-term payables | | **(731)** | (5,586) |
| | | | |
| Cash generated from operations | | **(15,266)** | 450,082 |
| Income tax paid | | **(13,473)** | (24,943) |
| | | | |
| **NET CASH FROM OPERATING ACTIVITIES** | | **(28,739)** | 425,139 |

**74**

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Consolidated Cash Flow Statement

Year Ended 31 December 2007

| | Notes | 2007 RMB'000 | 2006 RMB'000 |
|---|---|---|---|
| **INVESTING ACTIVITIES** | | | |
| Purchase of property, plant and equipment | | (133,861) | (105,741) |
| Proceeds from disposal of a subsidiary | 36 | 130,613 | — |
| Contribution to / acquisition of an associate | | (110,000) | (10,000) |
| Proceeds from partial disposal of a subsidiary | | 52,980 | — |
| Proceeds from disposal of an associate | | 31,411 | — |
| Decrease (Increase) in pledged bank deposits | | 30,009 | (30,009) |
| Purchases of land use rights | | (12,396) | — |
| Interest received | | 5,482 | 6,521 |
| Dividend income received from available-for-sale investment | | 566 | — |
| Purchase of an intangible assets | | (361) | (6,905) |
| Dividend received from an associate | | 360 | — |
| Proceeds on disposal of property, plant and equipment | | 523 | 1,489 |
| Acquisition of additional interests of a subsidiary from a minority shareholder | | — | (6,899) |
| **NET CASH USED IN INVESTING ACTIVITIES** | | **(4,674)** | (151,544) |
| **FINANCING ACTIVITIES** | | | |
| Bank borrowings raised | | 1,049,596 | 743,292 |
| Repayments of borrowings | | (1,019,588) | (1,070,793) |
| Interest expense paid | | (66,729) | (61,849) |
| Dividends paid to minority shareholders | | (15,743) | (23,093) |
| Increase in amounts due to related parties and minority interests - non-trade | | — | 504 |
| **NET CASH USED IN FINANCING ACTIVITIES** | | **(52,464)** | (411,939) |
| **NET DECREASE IN CASH AND CASH EQUIVALENTS** | | **(85,877)** | (138,344) |
| CASH AND CASH EQUIVALENTS AT THE BEGINNING OF THE YEAR | | 449,494 | 587,838 |
| **CASH AND CASH EQUIVALENTS AT THE END OF THE YEAR, REPRESENTED BY BANK BALANCE AND CASH** | 27 | **363,617** | 449,494 |

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 1.  GENERAL

IRICO Group Electronics Company Limited (the "Company") was incorporated in the People's Republic of China (the "PRC") on 10 September 2004 as a joint stock company with limited liability under the PRC laws. The Company's shares were listed in The Stock Exchange of Hong Kong Limited (the "Stock Exchange") on 20 December 2004. The address of its registered office is No.1 Caihong Road, Xianyang, Shaanxi Province, PRC.

The Company and its subsidiaries (collectively referred to as the "Group") is engaged in the manufacturing of colour picture tubes ("CPTs") for colored television sets, related CPT components including glass bulbs, electron guns, shadow masks and their frames, deflection yokes, frit, anode buttons, phosphor, etc and provision of related packaging, engineering and trading services. The principal activities of its subsidiaries are set out in note 21.

The directors consider that IRICO Group Corporation, a state-owned enterprise established in the PRC, to be the Company's parent company and ultimate holding company.

These financial statements are presented in thousands of units of Renminbi ("RMB") which is the same as the functional currency of the Group.

## 2.  APPLICATION OF NEW AND REVISED HONG KONG FINANCIAL REPORTING STANDARDS ("HKFRSs")

In the current year, the Group has applied, for the first time, the following new standards, amendment and interpretations ("new HKFRSs") issued by the Hong Kong Institute of Certified Public Accountants ("HKICPA"), which are effective for the Group's financial year beginning on 1 January 2007.

| | |
|---|---|
| Hong Kong Accounting Standard 1 ("HKAS") (Amendment) | Capital Disclosures |
| HKFRS 7 | Financial Instruments: Disclosures |
| HK(IFRIC) — Interpretation ("Int") 7 | Applying the Restatement Approach under HKAS 29 Financial Reporting in Hyperinflationary Economies |
| HK(IFRIC) — Int 8 | Scope of HKFRS 2 |
| HK(IFRIC) — Int 9 | Reassessment of Embedded Derivatives |
| HK(IFRIC) — Int 10 | Interim Financial Reporting and Impairment |

The adoption of the new HKFRSs had no material effect on how the results and financial position for the current or prior accounting periods have been prepared and presented. Accordingly, no prior period adjustment has been required.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 2. APPLICATION OF NEW AND REVISED HONG KONG FINANCIAL REPORTING STANDARDS ("HKFRSs") *(continued)*

The Company has not early applied the following new and revised standards, amendment interpretations that have been issued but are not yet effective as at 31 December 2007.

| | |
|---|---|
| HKAS 1 (Revised) | Presentation of Financial Statements[1] |
| HKAS 23 (Revised) | Borrowing Cost[1] |
| HKAS 27 (Revised) | Consolidated and Separate Consolidated Financial Statements[2] |
| HKFRS 2 (Amendment) | Share-based Payment - Vesting Conditions and Cancellations[1] |
| HKFRS 3 (Revised) | Business Combinations[2] |
| HKFRS 8 | Operating Segments[1] |
| HK(IFRIC)-INT 11 | HKFRS 2: Group and Treasury Share Transactions[3] |
| HK(IFRIC)-INT 12 | Service Concession Arrangements[4] |
| HK(IFRIC)-INT 13 | Customer Loyalty Programmes[5] |
| HK(IFRIC)-INT 14 | HKAS 19 - The Limit on a Defined Benefit Asset, Minimum Funding Requirements and Their Interaction[4] |

[1]   Effective for annual periods beginning on or after 1 January 2009.

[2]   Effective for annual periods beginning on or after 1 July 2009.

[3]   Effective for annual periods beginning on or after 1 March 2007.

[4]   Effective for annual periods beginning on or after 1 January 2008.

[5]   Effective for annual periods beginning on or after 1 July 2008.

The directors of the Company anticipate that the application of these standards or interpretations will have no material impact on the results and the financial position of the Group.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 3.   SIGNIFICANT ACCOUNTING POLICIES

The consolidated financial statements have been prepared under the historical cost basis except for certain financial instruments, which are measured at fair values, as explained in the accounting policies set out below.

The consolidated financial statements have been prepared in accordance with HKFRSs issued by the HKICPA. In addition, the consolidated financial statements include applicable disclosures required by the Rules Governing the Listing of Securities on the Stock Exchange and by the Hong Kong Companies Ordinance.

### (a)   Basis of consolidation

The consolidated financial statements incorporate the financial statements of the Company and entities controlled by the Company (its subsidiaries). Control is achieved where the Company has the power to govern the financial and operating policies of an entity so as to obtain benefits from its activities.

The results of subsidiaries acquired or disposed of during the year are included in the consolidated income statement from the effective date of acquisition or up to the effective date of disposal, as appropriate.

Where necessary, adjustments are made to the financial statements of subsidiaries to bring its accounting policies into line with those used by other members of the Group.

All intra-group transactions, balances, income and expenses are eliminated on consolidation.

Minority interests in the net assets of consolidated subsidiaries are presented separately from the Group's equity therein. Minority interests in the net assets consist of the amount of those interests at the date of the original business combination and the minority's share of changes in equity since the date of the combination. Losses applicable to the minority in excess of the minority's interest in the subsidiary's equity are allocated against the interests of the Group except to the extent that the minority has a binding obligation and is able to make an additional investment to cover the losses. The Group applies a policy of treating transactions with minority interests as transactions with equity owners of the Group.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 3.  SIGNIFICANT ACCOUNTING POLICIES *(continued)*

### (b)  Investments in subsidiaries

A subsidiary is an entity that is controlled by the Company, where the Company has the power to govern the financial and operating policies of such entity so as to obtain benefits from its activities.

In the Company's balance sheet, the investments in subsidiaries are stated at cost less impairment loss. The results of the subsidiaries are accounted for by the Company on the basis of dividends received and receivable.

### (c)  Investments in associates

An associate is an entity over which the investor has significant influence and that is neither a subsidiary nor an interest in a joint venture. Significant influence is the power to participate in the financial and operating policy decisions of the investee but is not control or jointly control over those policies.

The results and assets and liabilities of associates are incorporated in these consolidated financial statements using the equity method of accounting. Under the equity method, investments in associates are carried in the consolidated balance sheet at cost as adjusted for post-acquisition changes in the Group's share of the net assets of the associates, less any identified impairment loss. When the Group's share of losses of an associate equals or exceeds its interest in that associate (which includes any long-term interests that, in substance, form part of the Group's net investment in the associate), the Group discontinues recognising its share of further losses. An additional share of losses is provided for and a liability is recognised only to the extent that the Group has incurred legal or constructive obligations or made payments on behalf of that associate.

Where a group entity transacts with an associate of the Group, profits and losses are eliminated to the extent of the Group's interest in the relevant associate.

In the Company's balance sheet, investment in an associate is stated at cost, as reduced by any identified impairment loss. The result of an associate is accounted for by the Company on the basis of dividends received and receivable during the year.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 3.  SIGNIFICANT ACCOUNTING POLICIES *(continued)*

### (d)  Revenue recognition

Revenue is measured at the fair value of the consideration received or receivable and represents amounts receivable for goods sold and services provided in the normal course of business, net of discounts and sales related taxes.

Revenue from sales of goods is recognised when the goods are delivered and title has passed.

Rental income, including rental invoiced in advance from properties let under operating leases, is recognised on a straight-line basis over the period of the relevant lease.

Interest income from a financial asset is accrued on a time basis, by reference to the principal outstanding and at the effective interest rate applicable, which is the rate that exactly discounts the estimated future cash receipts through the expected life of the financial asset to that asset's net carrying amount.

Dividend income is recognised when the right to receive the dividend is established.

### (e)  Property, plant and equipment

Properties, plant and equipment (other than construction in progress) at cost less subsequent accumulated depreciation and any accumulated impairment losses.

Depreciation is provided to write off the cost of an item of property, plant and equipment other than construction in progress over their estimated useful lives and after taking into account their estimated residual value, using the straight-line method.

Construction in progress includes property, plant and equipment in the course of construction for production or for its own use purposes. Construction in progress is carried at cost less any recognised impairment loss. Construction in progress is classified to the appropriate category of property, plant and equipment when completed and ready for intended use. Depreciation of these assets, on the same basis as other property assets, commences when the assets are ready for their intended use.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 3. SIGNIFICANT ACCOUNTING POLICIES *(continued)*

### (e) Property, plant and equipment *(continued)*

An owner-occupied property is transferred to investment property at fair value because its use has changed as evidenced by end of owner-occupation. The difference between the fair value and the carrying amount at the date of transfer, if any, is recognised in property revaluation reserve in accordance with HKAS 16 "Property, plant and equipment". On the subsequent sale or retirement of the asset, the relevant revaluation reserve will be transferred directly to retained profits.

An item of property, plant and equipment is derecognised upon disposal or when no future economic benefits are expected to arise from the continued use of the asset. Any gain or loss arising on derecognition of the asset (calculated as the difference between the net disposal proceeds and the carrying amount of the item) is included in the consolidated income statement in the year in which the item is derecognised.

### (f) Investment property

Investment property is property held to earn rental and/or for capital appreciation.

On initial recognition, investment property is measured at cost, including any directly attributable expenditure. Subsequent to initial recognition, investment property is stated at cost less subsequent accumulated depreciation and any cumulated impairment losses. Depreciation is charged so as to write off the cost of investment property using the straight-line method.

An investment property is derecognised upon disposal or when the investment property is permanently withdrawn from use or no future economic benefits are expected from its disposals. Any gain or loss arising on derecognition of the asset (calculated as the difference between the net disposal proceeds and the carrying amount of the asset) is included in the consolidated statement in the year in which the item is derecognised.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 3.   SIGNIFICANT ACCOUNTING POLICIES *(continued)*

### (g)   Leasing

Leases are classified as finance leases whenever the terms of the lease transfer substantially all the risks and rewards of ownership to the lessee. All other leases are classified as operating leases.

**The Group as lessor**

Rental income from operating leases is recognised in the consolidated income statement on a straight-line basis over the term of the relevant lease. Initial direct costs incurred in negotiating and arranging an operating leases are added to the carrying amount of the leased asset and recognised as an expense on a straight-line basis over the lease term.

**The Group as lessee**

Rentals payable under operating leases are charged to profit or loss on a straight-line basis over the term of the relevant lease. Benefits received and receivable as an incentive to enter an operating lease are recognised as a reduction of rental expenses over the lease term on a straight-line basis.

### (h)   Leasehold land and building

The land and building elements of a lease of land and building are considered separately for the purpose of lease classification, unless the lease payments cannot be allocated reliably between the land and building elements, in which case, the entire lease is generally treated as a finance lease and accounted for as property, plant and equipment. To the extent the allocation of the lease payments can be made reliably, leasehold interests in land are accounted for as operating leases.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 3.   SIGNIFICANT ACCOUNTING POLICIES *(continued)*

### (i)   Foreign currencies

In preparing the financial statements of each individual group entity, transactions in currencies other than the functional currency of that entity (foreign currencies) are recorded in the respective functional currency (i.e. the currency of the primary economic environment in which the entity operates) at the rates of exchanges prevailing on the dates of the transactions. At each balance sheet date, monetary items denominated in foreign currencies are retranslated at the rates prevailing on the balance sheet date. Non-monetary items carried at fair value that are denominated in foreign currencies are retranslated at the rates prevailing on the date when the fair value was determined. Non-monetary items that are measured in terms of historical cost in a foreign currency are not retranslated.

Exchange differences arising on the settlement of monetary items, and on the translation of monetary items, are recognised in profit or loss in the period in which they arise, except for exchange differences arising on a monetary item that forms part of the Company's net investment in a foreign operation, in which case, such exchange differences are recognised in equity in the consolidated financials statements. Exchange differences arising on the retranslation of non-monetary items carried at fair value are included in profit or loss for the period except for differences arising on the retranslation of non-monetary items in respect of which gains and losses are recognised directly in equity, in which cases, the exchange differences are also recognised directly in equity.

### (j)   Borrowings costs

All borrowing costs are recognised as and included in finance costs in the consolidated income statement in the period in which they are incurred.

### (k)   Government grants

Government grants are recognised as income over the periods necessary to match them with the related costs. Grants related to depreciable assets are presented as deferred income from the carrying amount of the relevant asset and are released to income over the useful lives of the assets. Grants related to expense items are recognised in the same period as those expenses are charged in the consolidated income statement and are reported separately as "other operating income".

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 3.  SIGNIFICANT ACCOUNTING POLICIES *(continued)*

### (l)  Retirement benefit costs

Payments to state-managed retirement benefit schemes are charged as an expense when employees have rendered service entitling them to the contributions.

**Pension and housing obligations**

The full time employees of the Group are covered by various government-sponsored pension plans under which the employees are entitled to a monthly pension based on certain formulas. These government-sponsored pension plans are responsible for the pension liability to these retired employees. The Group contributes on a monthly basis to these pension plans. Under these plans, the Group has no legal or constructive obligation for retirement benefits beyond the contributions made. Contributions to these plans are expensed as incurred. Voluntary payments made to certain former employees and which were not made pursuant to a formal or informal plan are expensed as paid.

Full time employees are also entitled to participate in various government-sponsored housing funds. The Group contributes on a monthly basis to these funds based on certain percentages of the salaries of the employees. The Group's liability in respect of these funds is limited to the contributions payable in each period.

**Termination benefits**

Termination benefits are payable when employment is terminated by the Group before the normal retirement date, or whenever an employee accepts voluntary redundancy in exchange for these benefits. The Group recognises termination benefits when it is demonstrably committed to either: terminating the employment of current employees according to a detailed formal plan without possibility of withdrawal; or providing termination benefits as a result of an offer made to encourage voluntary redundancy.

**Early retirement benefits**

Employee early retirement benefits are recognised in the period in which the Group enters into an agreement with the employee specifying the terms of early retirement or after the individual employee has been advised of the specific terms. The specific terms vary among the early retired employees depending on various factors including position and length of services. Early retirement benefits falling due more than 12 months after the balance sheet date are discounted to present value.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 3. SIGNIFICANT ACCOUNTING POLICIES *(continued)*

### (m) Taxation

Income tax expense represents the sum of the tax currently payable and deferred tax.

The tax currently payable is based on taxable profit for the year. Taxable profit differs from profit as reported in the income statement because it excludes items of income or expense that are taxable or deductible in other years and it further excludes income statement items that are never taxable or deductible. The Group's liability for current tax is calculated using tax rates that have been enacted or substantively enacted by the balance sheet date.

Deferred tax is recognised on differences between the carrying amounts of assets and liabilities in the consolidated financial statements and the corresponding tax base used in the computation of taxable profit, and is accounted for using the balance sheet liability method. Deferred tax liabilities are generally recognised for all taxable temporary differences and deferred tax assets are recognised to the extent that it is probable that taxable profit will be available against which deductible temporary differences can be utilised. Such assets and liabilities are not recognised if the temporary difference arises from goodwill or from the initial recognition (other than in a business combination) of other assets and liabilities in a transaction that affects neither the taxable profit nor the accounting profit.

Deferred tax liabilities are recognised for taxable temporary differences arising on investments in subsidiaries and associates, except where the Group is able to control the reversal of the temporary difference and it is probable that the temporary difference will not reverse in the foreseeable future.

Deferred tax is calculated at the tax rates that are expected to apply in the period when the liability is settled or the asset is realised. Deferred tax is charged or credited to the profit or loss, except when it relates to items charged or credited directly to equity, in which case the deferred tax is also dealt with in equity.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 3.   SIGNIFICANT ACCOUNTING POLICIES *(continued)*

### (n)  Intangible assets

**Intangible assets acquired separately**

Intangible asset acquired separately and with finite useful lives are carried at costs less accumulated amortisation and any accumulated impairment losses. Amortisation for intangible assets with finite useful lives is provided on a staright-line basis over their estimated useful lives. Alternatively, intangible assets with indefinite useful lives are carried at cost less any subsequent accumulated impairment losses (see the accounting policy in respect of impairment losses on tangible and intangible assets below).

Gains or losses arising from dereocognition of an intangible asset are measured at the difference between the net disposal proceeds and the carrying amount of the asset and are recognised in the consolidated income statement when the asset is decognised.

**Licences for technical knowledge**

Expenditure on licenses is capitalised and amortised using the straight-line method over their useful lives, but not exceeding 20 years.

**Computer software**

Acquired computer software licences are capitalised on the basis of the costs incurred to acquire and bring to use the specific software. These costs are amortised over their estimated useful lives of 5 years.

Costs associated with developing or maintaining computer software programs are recognised as an expense as incurred.

**Research and development expenditure**

Expenditure on research activities is recognised as an expense in the period in which it is incurred.

An internally-generated intangible asset from development expenditure is recognised only if it is anticipated that the development costs incurred on a clearly-defined project will be recovered through future commercial activity. The resultant asset is amortised on a straight-line basis over its useful life, and carried at cost less subsequent accumulated amortisation and any accumulated impairment losses.

**彩 虹 集 團 電 子 股 份 有 限 公 司**
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 3.   SIGNIFICANT ACCOUNTING POLICIES *(continued)*

### (n)   Intangible assets *(continued)*

**Research and development expenditure** *(continued)*

The amount initially recognised for internally-generated intangible asset is the sum of the expenditure incurred from the date when the intangible asset first meets the recognition criteria. Where no internally-generated intangible asset can be recognised, development expenditure is charged to profit or loss in the period in which it is incurred.

Subsequent to initial recognition, internally-generated intangible asset is reported at cost less accumulated amortisation and accumulated impairment losses, on the same basis as intangible assets acquired separately.

### (o)   Inventories

Inventories are stated at the lower of cost and net realisable value. Cost is calculated using the weighted average method.

### (p)   Financial instruments

Financial assets and financial liabilities are recognised on the balance sheet when a Group entity becomes a party to the contractual provisions of the instrument. Financial assets and financial liabilities are initially measured at fair value. Transaction costs that are directly attributable to the acquisition or issue of financial assets and financial liabilities (other than financial assets and financial liabilities at fair value through profit or loss) are added to or deducted from the fair value of the financial assets or financial liabilities, as appropriate, on initial recognition. Transaction costs directly attributable to the acquisition of financial assets or financial liabilities at fair value through profit or loss are recognised immediately in profit or loss.

**Financial assets**

The Group's financial assets are mainly classified into loans and receivables and available-for-sale financial assets. All regular way purchases or sales of financial assets are recognised and derecognised on a trade date basis. Regular way purchases or sales are purchases or sales of financial assets that require delivery of assets within the time frame established by regulation or convention in the marketplace. The accounting policies adopted in respect of the relevant category of financial assets to the Group are set out below.

Income is recognised on an effective interest basis for debt instruments.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 3.  SIGNIFICANT ACCOUNTING POLICIES *(continued)*

### (p)  Financial instruments *(continued)*

**Loans and receivables**

Loans and receivables are non-derivative financial assets with fixed or determinable payments that are not quoted in an active market. At each balance sheet date subsequent to initial recognition, loans and receivables (including trade and bills receivables, other receivables, deposits and bank balances) are carried at amortised cost using the effective interest method, less any identified impairment losses (see accounting policy on impairment loss on financial assets below).

**Effective interest method**

The effective interest method is a method of calculating the amortised cost of a financial asset and of allocating interest income over the relevant period. The effective interest rate is the rate that exactly discounts estimated future cash receipts (including all fees on points paid or received that form an integral part of the effective interest rate, transaction costs and other premiums or discounts) through the expected life of the financial asset, or, where appropriate, a shorter period.

Income is recognised on an effective basis for debt instruments.

**Available-for-sale financial assets**

Available-for-sale financial assets are non-derivatives that are either designated or not classified as financial assets at fair value through profit or loss, loans and receivables or held-to-maturity investments. The Group designated its unlisted investment in the equity interests in Western Trust & Investment Co., Ltd., a state controlled trust enterprise as available-for-sale financial assets. They are included in non-current assets since the directors of the Company do not have intention to dispose of the investment within 12 months of the balance sheet date.

At each balance sheet date subsequent to initial recognition, available-for-sale financial assets are measured at fair value. Changes in fair value are recognised in equity, until the financial asset is disposed of or is determined to be impaired, at which time, the cumulative gain or loss previously recognised in equity is removed from equity and recognised in profit or loss (see accounting policy on impairment loss on financial assets below).

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 3.   SIGNIFICANT ACCOUNTING POLICIES *(continued)*

### (p)   Financial instruments *(continued)*

**Available-for-sale financial assets** *(continued)*

For available-for-sale equity investments that do not have a quoted market price in an active market and whose fair value cannot be reliably measured and derivatives that are linked to and must be settled by delivery of such unquoted equity instruments, they are measured at cost less any identified impairment losses at each balance sheet date subsequent to initial recognition (see accounting policy on impairment loss on financial assets below).

**Impairment loss of financial assets**

Financial assets are assessed for indicators of impairment at each balance sheet date. Financial assets are impaired where there is objective evidence that, as a result of one or more events that occurred after the initial recognition of the financial asset, the estimated future cash flows of the financial assets have been impacted.

For an available-for-sale equity investment, a significant or prolonged decline in the fair value of that investment below its cost is considered to be objective evidence of impairment.

For all other financial assets, objective evidence of impairment could include:

• significant financial difficulty of the issuer or counterparty; or

• default or delinquency in interest or principal payments; or

• it becoming probable that the borrower will enter bankruptcy or financial re-organisation.

For certain categories of financial asset, such as trade and bills receivables, and other receivables, assets that are not assessed not to be impaired individually are subsequently assessed for impairment on a collective basis. Objective evidence of impairment for a portfolio of receivables could include the Group's past experience of collecting payments, an increase in the number of delayed payments in the portfolio past the average credit period and observable changes in national or local economic conditions that correlate with default on trade and bills receivables, and other receivables.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 3.   SIGNIFICANT ACCOUNTING POLICIES *(continued)*

### (p)   Financial instruments *(continued)*

**Impairment loss of financial assets** *(continued)*

For financial assets carried at amortised cost, an impairment loss is recognised in profit or loss when there is objective evidence that the asset is impaired, and is measured as the difference between the asset's carrying amount and the present value of the estimated future cash flows discounted at the original effective interest rate.

For financial assets carried at cost, the amount of the impairment loss is measured as the difference between the asset's carrying amount and the present value of the estimated future cash flows discounted at the current market rate of return for a similar financial asset. Such impairment loss will not be reversed in subsequent periods.

The carrying amount of the financial asset is reduced by the impairment loss directly for all financial assets with the exception of trade and bills receivables and other receivables, where the carrying amount is reduced through the use of an allowance account. Changes in the carrying amount of the allowance account are recognised in profit or loss. When a trade and bills receivables and other receivable, is considered uncollectible, it is written off against the allowance account. Subsequent recoveries of amounts previously written off are credited to profit or loss.

For financial assets measured at amortised cost, if, in a subsequent period, the amount of impairment loss decreases and the decrease can be related objectively to an event occurring after the impairment losses was recognised, the previously recognised impairment loss is reversed through profit or loss to the extent that the carrying amount of the asset at the date the impairment is reversed does not exceed what the amortised cost would have been had the impairment not been recognised.

Impairment losses on available-for-sale equity investments will not be reversed in profit or loss in subsequent periods. Any increase in fair value subsequent to impairment loss is recognised directly in equity.

**90** 彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 3.   SIGNIFICANT ACCOUNTING POLICIES *(continued)*

### (p)   Financial instruments *(continued)*

**Financial liabilities and equity**

Financial liabilities and equity instruments issued by a group entity are classified according to the substance of the contractual arrangements entered into and definitions of a financial liability and an equity instrument.

An equity instrument is any contract that evidences a residual interest in the assets of the Group after deducting all of its liabilities. The Group's financial liabilities are classified as other financial liabilities. The accounting policies adopted in respect of financial liabilities and equity instruments are set out below.

**Other financial liabilities**

Other financial liabilities including trade and bills payables, other payables, bank borrowings and long-term payables are subsequently measured at amortised cost, using the effective interest method.

**Effective interest method**

The effective interest method is a method of calculating the amortised cost of a financial liability and of allocating interest expense over the relevant period. The effective interest rate is the rate that exactly discounts estimated future cash payments through the expected life of the financial liability, or, where appropriate, a shorter period.

Interest expense is recognised on an effective interest basis.

**Equity instruments**

Equity instruments issued by the Company are recorded at the proceeds received, net of direct issue costs.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 3.   SIGNIFICANT ACCOUNTING POLICIES *(continued)*

### (p)  Financial instruments *(continued)*

**Derecognition**

Financial assets are derecognised when the rights to receive cash flows from the assets expire or, the financial assets are transferred and the Group has transferred substantially all the risks and rewards of ownership of the financial assets. On derecognition of a financial asset, the difference between the asset's carrying amount and the sum of the consideration received or receivable and the cumulative gain or loss that had been recognised directly in equity is recognised in profit or loss. If the Group retains substantially all the risks and rewards of ownership of a transferred assets, the Group continues to recognise the financial asset and recognise a collateralised borrowing for proceeds received.

Financial liabilities are decognised when the obligation specified in the relevant contract is discharged, cancelled or expires. The difference between the carrying amount of the financial liability derecognised and the consideration paid or payable is recognised in profit and loss.

### (q)  Land use rights

Payment for obtaining land use rights is considered as operating lease payment. Land use rights are stated at cost less accumulated amortisation and accumulated impairment losses, amortisation is charged to consolidated income statement over the period of the rights using the straight-line method.

### (r)  Provisions

Provisions are recognised when the Group has a present obligation as a result of a past event, and it is probable that the Group will be required to settle that obligation. Provisions are measured at the directors' best estimate of the expenditure required to settle the obligation at the balance sheet date, and are discounted to present value where the effect is material.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 3.   SIGNIFICANT ACCOUNTING POLICIES *(continued)*

### (s)   Impairment losses on tangible and intangible assets

At each balance sheet date, the Group reviews the carrying amounts of its tangible and intangible assets to determine whether there is any indication that those assets have suffered an impairment loss. In addition, intangible assets with indefinite useful lives and intangible assets not yet available for use are tested for impairment annually, and whenever there is an indication that they may be impaired. If the recoverable amount of an asset is estimated to be less than its carrying amount, the carrying amount of the asset is reduced to its recoverable amount. An impairment loss is recognised as an expense immediately.

Where an impairment loss subsequently reverses, the carrying amount of the asset is increased to the revised estimate of its recoverable amount, but so that the increased carrying amount does not exceed the carrying amount that would have been determined had no impairment loss been recognised for the asset in prior years. A reversal of an impairment loss is recognised as income immediately.

## 4.   CRITICAL ACCOUNTING JUDGMENTS AND KEY SOURCES OF ESTIMATION UNCERTAINTY

In the application of the Group's accounting policies, which are described in note 3, the directors of the Company are required to make judgments, estimates and assumptions about the carrying amounts of assets and liabilities that are not readily apparent from other sources. The estimates and associated assumptions are based on historical experience and other factors that are considered to be relevant. Actual results may differ from these estimates.

The estimates and underlying assumptions are reviewed on an ongoing basis. Revisions to accounting estimates are recognised in the period in which the estimate is revised if the revision affects only that period, or in the period of the revision and future periods if the revision affects both current and future periods.

### Allowance for inventories

The management of the Group reviews an aging analysis at each balance sheet date, and makes allowance for obsolete and slow-moving inventory items. The management estimates the net realisable value for finished goods based primarily on the latest invoice prices and current market conditions. The Company carries out an inventory review on a product-by-product basis at each balance sheet date and makes allowance for obsolete items.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 4. CRITICAL ACCOUNTING JUDGMENTS AND KEY SOURCES OF ESTIMATION UNCERTAINTY *(continued)*

### Income taxes

Determining income tax provisions involves judgment on the future tax treatment of certain transactions. The Group carefully evaluates tax implications of transactions and tax provisions are set up accordingly. The tax treatment of such transactions is reconsidered periodically to take into account all changes in tax legislations. Where the final tax outcome of these transactions is different from the amounts that were initially recorded, such differences will affect the income tax and deferred tax provisions in the period in which such determination is made.

### Estimated impairment of non-financial assets

The Group tests annually whether non-financial assets have suffered any impairment in accordance with accounting policies stated in note 3 to the consolidated financial statements. The recoverable amounts of non-financial assets have been determined based on value-in-use calculations. These calculations require the use of estimates.

The Group tests annually whether property, plant and equipment are reviewed for impairment whenever events or changes in circumstances indicate that the carrying amount of the asset exceeds its recoverable amount. The recoverable amount of an asset or a cash-generating unit is determined based on value-in-use calculations prepared on the basis of management's assumptions and estimates taking into account the existing business expansion plan going forward, the current sales orders on hand and other strategic new business development.

For the year ended 31 December 2007, the management had reviewed the Group's property, plant and equipment for impairment. The impairment loss for property, plant and equipment are recognised for the amounts by which the carrying amounts exceed their recoverable amounts, in accordance with the Group's accounting policy. The recoverable amounts of property, plant and equipment have been determined based on value-in-use calculations. These calculations require the use of estimates such as the future revenue and discount rates. During the year ended 31 December 2007, the Group recognised an impairment loss of approximately RMB2,630,000 in respect of property, plant and equipment (Note 17).

For the year ended 31 December 2006, the Group provided for an impairment loss of RMB67,205,000 (note 17) in respect of property, plant and equipment. The items being written down to recoverable amount due to there being business situation concerns over future profitability. The recoverable amounts of different production plants, cash generating units to which the property, plant and equipment belong, have been determined based on value-in-use calculations using cash flow projections determined by an independent professional valuer.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 4. CRITICAL ACCOUNTING JUDGMENTS AND KEY SOURCES OF ESTIMATION UNCERTAINTY *(continued)*

### Impairment of available-for-sale financial assets

The Group follows the guidance of HKAS 39 to determine when an available-for-sale financial asset is impaired. This determination requires significant judgment. In making this judgment, the Group evaluates, among other factors, the duration and extent to which the fair value of an investment is less than its cost; and the financial health of and near-term business outlook for the investee, including factors such as industry and sector performance, changes in technology and operational and financing cash flow.

If all of the declines in fair value below cost were considered significant or prolonged, the Group would suffer an additional loss in the consolidated income statement for the year ended 31 December 2007.

### Contingent liabilities in respect of litigations

The Group has been involved in two litigations (note 37). Contingent liabilities arising from these litigations have been assessed by the directors with reference to legal advice.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 5.  CAPITAL RISK MANAGEMENT

The Group manages its capital to ensure that entities in the Group will be able to continue as a going concern while maximising the return to stakeholders through the optimisation of debt and equity balance. The Group's overall strategy remains unchanged from prior year.

The capital structure of the Group consists of debt, which includes the borrowings disclosed in note 30, cash and cash equivalents and equity attributable to equity holders of the Company, comprising issued share capital, reserves and retained earnings.

The Group reviews the capital structure on a regular basis and monitors on the basis of the gearing ratio. As part of this review, the Group considers the cost of capital and the risks associated with each class of capital. Gearing ratio is calculated as the proportion of total liabilities to total assets.

The Group aimed at maintaining a gearing ratio of not more than 50%. Based on the recommendations of the Group's directors, the Group intends to maintain a suitable ratio of share capital to liabilities, so as to maintain an effective capital structure from time to time. The gearing ratios at 31 December 2007 and 2006 were as follows:

|  | 2007 RMB'000 | 2006 RMB'000 |
|---|---|---|
| Total debt (a) | 962,684 | 932,676 |
| Net debt (b) | 599,067 | 483,182 |
| Total equity | 3,300,147 | 3,216,611 |
| Total capital (based on total debts) (c) | 4,262,831 | 4,149,287 |
| Total capital (based on net debt) (d) | 3,899,214 | 3,699,793 |
| | | |
| Total debt to total capital ratio (%) | 22.6 | 22.5 |
| Net debt to total capital ratio (%) | 15.4 | 13.1 |

There is no material change in the above gearing ratios in 2007.

*Notes:*

(a)     Total debt equals to bank borrowings.

(b)     Net debt equals to total debt less bank balances, cash and other liquid funds.

(c)     Total capital (based on total debt) equals to total debt plus total equity.

(d)     Total capital (based on net debt) equals to net debt plus total equity.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 6.   FINANCIAL INSTRUMENTS

### 6a.  Financial risk management objectives and policies

The Group's major financial instruments include equity investments, bank borrowings, trade and bills receivables, other receivables, bank balances, trade and bills payables, other payables and long-term payables. Details of the financial instruments are disclosed in respective notes. The risks associated with these financial instruments include market risk (currency risk, interest rate risk and other price risk), credit risk and liquidity risk. The policies on how to mitigate these risks are set out below. The management manages and monitors these exposures to ensure appropriate measures are implemented on a timely and effective manner.

**Market risk**

*Foreign exchange risk*

The Group mainly operates in the PRC. Revenue and majority of its operating costs and cost of sales are denominated in RMB. Certain bank balances of the Group are denominated in the United States dollars ("USD"). Such USD denominated bank balances are exposed to fluctuations in the value of RMB against USD in which these bank balances are denominated. Any significant appreciation / depreciation of the RMB against these foreign currency may result in significant exchange gain / loss which would be recorded in the consolidated income statement.

*Sensitivity analysis*

As of 31 December 2007, if RMB had strengthened / weakened 5% against USD, with all other variables held constant, profit for the year would have been approximately 2,622,000 (2006: 2,054,000) lower / higher, mainly as a result of foreign exchange losses / gains on translation of USD denominated bank balances equivalents.

**Credit risk**

As at 31 December 2007, the Group's maximum exposures to credit risk which will cause a financial loss to the Group due to failure to discharge an obligation by the counterparties is arising from the carrying amount of the respective recognised financial assets as stated in the consolidated balance sheet.

The credit risk on liquid funds is limited because the counterparties are banks with high credit ratings assigned by international credit-rating agencies.

The Group's concentration of credit risk by geographical locations is mainly in the PRC, which accounted for approximately 87% (2006: 82%) of the total trade receivables as at 31 December 2007.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 6. FINANCIAL INSTRUMENTS *(continued)*

### 6a. Financial risk management objectives and policies *(continued)*

**Credit risk** *(continued)*

The Group has concentration of credit risk as 9% (2006: 10%) and 18% (2006: 21%) of the total trade receivables was due from the Group's largest customer and the five largest customers respectively. Sales to the largest customer and aggregate sales to the five largest customers represents 16% (2006: 19%) and 51% (2006: 65%) of total turnover respectively.

The Group has policies in place to ensure that sale of products are made to customers with an appropriate credit history. The Group also performs periodic credit evaluations of its customers and believes that adequate impairment loss or trade receivables has been made in the consolidated financial statements.

**Liquidity risk**

In the management of the liquidity risk, the Group monitors and maintains a level of cash and cash equivalents deemed adequate by the management to finance the Group's operations and mitigate the effects of fluctuations in cash flows. The management monitors the utlisation of bank borrowings and ensures compliance with loan covenants.

Prudent liquidity risk management implies maintaining sufficient cash, the availability of funding through an adequate amount of committed credit facilities and the ability to close out market positions. Due to the dynamic nature of the underlying businesses, senior management aims to maintain flexibility in funding by keeping committed credit lines available.

The following table details the Group's remaining contractual maturity for its financial liabilities. For non-derivative financial liabilities, the table has been drawn up based on the undiscounted cash flows of financial liabilities based on the earliest date on which the Group can be required to pay.

| | On demand or within 1 year RMB'000 | More than 1 year RMB'000 | Total undiscounted cash flows RMB'000 | Carrying amount at 31/12/2007 RMB'000 |
|---|---|---|---|---|
| **2007** | | | | |
| Trade payables | 575,413 | — | 575,413 | 575,413 |
| Long-term payables | 2,938 | 9,250 | 12,188 | 12,188 |
| Short-term bank borrowings | 1,012,199 | — | 1,012,199 | 962,684 |
| | 1,590,550 | 9,250 | 1,599,800 | 1,550,285 |

**98**

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 6. FINANCIAL INSTRUMENTS *(continued)*

### 6a. Financial risk management objectives and policies *(continued)*

**Liquidity risk** *(continued)*

| | On demand or within 1 year | More than 1 year | Total undiscounted cash flows | Carrying amount at 31/12/2007 |
|---|---|---|---|---|
| | RMB'000 | RMB'000 | RMB'000 | RMB'000 |
| **2006** | | | | |
| Trade payables | 575,718 | — | 575,718 | 575,718 |
| Long-term payables | 2,347 | 10,572 | 12,919 | 12,919 |
| Short-term bank borrowings | 960,193 | — | 960,193 | 932,676 |
| | 1,538,258 | 10,572 | 1,548,830 | 1,521,313 |

**Interest rate risk**

The Group has interest-bearing assets mainly in the form of bank balances, but the Group's income and operating cash flows are substantially independent of changes in market interest rates.

The interest rate risk arises from bank borrowings. The short-term bank borrowings are interest bearing at fixed rates between 5.31% to 7.65% (2006: 3.78% to 6.22%) and are repayable according to the contract terms.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 6. FINANCIAL INSTRUMENTS *(continued)*

### 6b. Fair value

The fair value of financial assets and financial liabilities are determined as follows:

- The fair value of financial assets and financial liabilities with standard terms and conditions and traded on active liquid markets are determined with reference to quoted market bid prices and ask prices respectively; and

- The fair value of other financial assets and financial liabilities are determined in accordance with generally accepted pricing models based on discounted cash flow analysis using prices or rates from observable current market transactions as input.

The directors of the Company consider that the carrying amounts of financial assets and financial liabilities recorded at amortised cost in the consolidated financial statements approximate their fair values.

### 6c. Categories of financial instruments

|  | 2007 RMB'000 | 2006 RMB'000 |
|---|---|---|
| **Financial assets** |  |  |
| Loans and receivables |  |  |
| (including cash and cash equivalents) |  |  |
| Trade receivables | **1,463,798** | 1,512,292 |
| Other receivables and deposits | **113,976** | 33,641 |
| Bank balances and cash | **363,540** | 479,400 |
|  | **1,941,314** | 2,025,333 |
| Available-for-sale financial assets | **24,060** | 24,060 |
| **Financial liabilities** |  |  |
| Financial liabilities measured at amortised cost |  |  |
| Trade payables | **575,413** | 575,718 |
| Other payables | **184,670** | 682,918 |
| Long-term payables | **12,188** | 12,919 |
| Short-term bank borrowings | **962,684** | 932,676 |
|  | **1,734,955** | 2,204,231 |

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 7. SEGMENT INFORMATION

### a. Business segments

The Group's revenues, expenses, assets, liabilities and capital expenditures are primarily attributable to the production and sales of CPT. The directors consider that there is only one business segment for the Group.

### b. Geographical segments

The Group's principal market is in the PRC. The direct exports sales made by the Group contributed to less than 10% of the total revenues and results of the Group (2006 : 10%). Accordingly, no geographical segment is presented.

## 8. TURNOVER

The Group is principally engaged in the manufacturing of CPT for colored television sets, related CPT components including glass bulbs, electron guns, shadow masks and their frames, deflection yokes, frit, anode buttons, phosphor, etc.

|  | 2007 RMB'000 | 2006 RMB'000 |
|---|---|---|
| Sales of CPTs and CPT components | 3,358,990 | 3,861,710 |

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 9.   OTHER OPERATING INCOME

| | 2007 RMB'000 | 2006 RMB'000 |
|---|---:|---:|
| Sales of raw materials, scraps and packaging materials | 43,746 | 19,498 |
| Net gains on disposal of property, plant and equipments | — | 21,748 |
| Gains on disposal of intangible assets (note 20) | — | 113,573 |
| Interest income | 5,482 | 6,521 |
| Amortisation of deferred income on grants received | 3,321 | 3,475 |
| Government grants (Note a) | 25,485 | — |
| Proceeds from collection of written off trade receivables | 5,138 | 700 |
| Reversal of write-down of inventories | 10,678 | — |
| Rental income | 1,429 | 1,317 |
| Reversal of impairment loss on trade receivables | — | 1,580 |
| Reversal of provision for staff welfare | 72,488 | — |
| Dividend income from available-for-sale investment | 566 | — |
| Others | 10,102 | 6,212 |
| | **178,435** | 174,624 |

*Note (a):* The amount represented compensation received from the PRC government recognised by the Group in respect of compensation for relocation of certain factory premises of the Company's subsidary.

## 10.   EMPLOYEE BENEFIT EXPENSE

| | 2007 RMB'000 | 2006 RMB'000 |
|---|---:|---:|
| Wages and salaries | 331,441 | 332,880 |
| Retirement benefit contributions | | |
| — pension obligations (note) | 45,768 | 45,942 |
| — one-off termination benefits | 3,813 | 20,598 |
| — early retirement benefits (note 35) | 630 | (3,957) |
| Welfare and social security costs | 57,568 | 78,447 |
| | **439,220** | 473,910 |

*Note:*  As stipulated by the rules and regulations in the PRC, the Group has participated in state-sponsored defined contribution retirement plans for its employees in the PRC. The Group and the eligible employees are required to contribute 20% and 7%, respectively, of the employee's basic salary. The state-sponsored retirement plans are responsible for the entire pension obligations payable to retired employees. The Group has no further pension obligation beyond the above contributions.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 10. EMPLOYEE BENEFIT EXPENSE *(continued)*

### Directors' and senior management's emoluments

The remuneration of each director for the year ended 31 December 2007 is set out below:

| Name of director | Fee | Salary and allowance | Employer's contribution to pension scheme | Total |
|---|---|---|---|---|
| | *RMB'000* | *RMB'000* | *RMB'000* | *RMB'000* |
| **Executive directors** | | | | |
| Mr. Xing Daoqing | — | 290 | 10 | 300 |
| Mr. Tao Kui | — | 290 | 10 | 300 |
| Mr. Guo Mengquan | — | 261 | 10 | 271 |
| Mr. Zhang Shaowen | — | 257 | 10 | 267 |
| Mr. Niu Xinan | — | 265 | — | 265 |
| Mr. Li Shikun *(note i)* | — | 305 | — | 305 |
| | | | | |
| **Non-executive directors** | | | | |
| Mr. Zhang Xingxi | — | 240 | — | 240 |
| Mr. Feng Fei *(note ii)* | 100 | — | — | 100 |
| Mr. Xu Xinzhong | 100 | — | — | 100 |
| Mr. Feng Bin | 100 | — | — | 100 |
| Mr. Wang Jialu | 100 | — | — | 100 |
| Mr. Zha Jianqiu *(note ii)* | 100 | — | — | 100 |
| Mr. Lv Hua *(note i)* | — | — | — | — |
| Mr. Zhong Pengrong *(note i)* | — | — | — | — |
| Mr. Yun Dah Jiunn *(note ii)* | — | — | — | — |
| | 500 | 1,908 | 40 | 2,448 |

*Notes:*

(i)     Appointed on 9 September 2007.

(ii)    Resigned on 8 September 2007.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 10. EMPLOYEE BENEFIT EXPENSE *(continued)*

### Directors' and senior management's emoluments *(continued)*

The remuneration of every director for the year ended 31 December 2006 is set out below:

| Name of director | Fee RMB'000 | Salary and allowance RMB'000 | Employer's contribution to pension scheme RMB'000 | Total RMB'000 |
|---|---|---|---|---|
| **Executive directors** | | | | |
| Mr. Xing Daoqing | — | 227 | 9 | 236 |
| Mr. Tao Kui | — | 239 | 9 | 248 |
| Mr. Guo Mengquan | — | 211 | 9 | 220 |
| Mr. Zhang Shaowen | — | 207 | 9 | 216 |
| Mr. Niu Xinan *(note i)* | — | 203 | 9 | 212 |
| | | | | |
| **Non-executive directors** | | | | |
| Mr. Zhang Xingxi | — | 320 | 17 | 337 |
| Mr. Yun Dah Jiunn *(note ii)* | — | 810 | — | 810 |
| Mr. Feng Fei | 100 | — | — | 100 |
| Mr. Xu Xinzhong | 100 | — | — | 100 |
| Mr. Feng Bin | 100 | — | — | 100 |
| Mr. Wang Jialu | 100 | — | — | 100 |
| Mr. Zha Jianqiu | 100 | — | — | 100 |
| | | | | |
| | 500 | 2,217 | 62 | 2,779 |

*Notes:*

(i)    Appointed on 29 June 2006.

(ii)   Mr. Yun Dah Jiunn has been re-designated as a non-executive director with effect from 27 December 2006. Mr. Yun Dah Jiunn has also resigned from his office as chief financial controller of the Company.

**104** 彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 10. EMPLOYEE BENEFIT EXPENSE *(continued)*

### Directors' and senior management's emoluments *(continued)*

Except for Mr. Zhang Xingxi's and Mr. Niu Xinan's emoluments which are afforded by IRICO Group, other directors of the Company received no emolument from IRCO Group. No apportionment has been made as the directors consider that it is impracticable to apportion this amount between their services to the Group and their services to IRCO Group.

No directors of the Group waived or agreed to waive any emolument during both years.

### Five highest paid individuals

The five individuals whose emoluments were the highest in the Group for the year include one director (2006: three) whose emoluments are reflected in the analysis presented above. The emoluments payable to the remaining four individuals (2006: two) during the year are as follows:

|  | 2007<br>*RMB'000* | 2006<br>*RMB'000* |
|---|---|---|
| Basic salaries, housing allowances, | | |
|   other allowances and benefits in kind | **1,251** | 555 |
| Retirement benefit contributions | **41** | 9 |
| | **1,292** | 564 |

The emoluments fell within the following band:

| | Number of individuals | |
|---|---|---|
| | 2007<br>*RMB'000* | 2006<br>*RMB'000* |
| Emolument band | | |
|   Nil to RMB1,000,000 | **4** | 2 |

During the year, no emolument was paid by the Group to any of the directors or the five highest paid individuals as an inducement to join or upon joining the Group or as compensation for loss of office (2006: Nil).

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 11. FINANCE COSTS

| | 2007 RMB'000 | 2006 RMB'000 |
|---|---|---|
| Interest expense on short-term bank borrowings | 50,159 | 56,512 |
| Interest expense to ultimate holding company *(note 39)* | 1,755 | 1,648 |
| Finance charge on discounted trade bills to banks | 14,815 | 3,689 |
| | 66,729 | 61,849 |

## 12. TAXATION

No provision for Hong Kong Profits Tax has been made as the Group's income neither arises in, nor is derived from, Hong Kong for the two years ended 31 December 2007 and 2006.

The provision for PRC current enterprise income tax ("EIT") is calculated based on the statutory income tax rate of 33% (2006: 33%) of the assessable income of the Group as determined in accordance with the relevant PRC income tax rules and regulations for the year except for the Company and certain subsidiaries described below. All corresponding EIT relating to the taxable profit during the year have been recognised in the consolidated income statement.

| | 2007 RMB'000 | 2006 RMB'000 |
|---|---|---|
| Current income taxation | 11,200 | 19,949 |
| Deferred income tax *(note 34)* | (2,780) | (121) |
| | 8,420 | 19,828 |

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 12. TAXATION *(continued)*

Tax charge for the year can be reconciled to the profit per the consolidated income statement as follows:

|  | 2007 | 2006 |
|---|---|---|
|  | **RMB'000** | *RMB'000* |
| Profit before tax | **80,577** | 187,543 |
| Tax at the domestic income tax rate of 33% (2006: 33%) | **26,590** | 61,889 |
| Tax effect of share of (profit) loss of associates | **(3,001)** | 312 |
| Expenses not deductible and income not taxable for tax purposes | **(7,142)** | 824 |
| Income under tax exemption and reduction *(note)* | **(21,795)** | (49,307) |
| Utilisation of tax losses previously not recognised | **(8,318)** | (28,278) |
| Tax effect of deductible temporary differences not recognised | **22,086** | 34,388 |
| Tax charge for the year | **8,420** | 19,828 |

*Note:*

Companies are entitled to the preferential tax treatment for Opening Up of Western China ("OUWC Policy") if they are engaged in the projects listed in the Catalogue for Industries, Products and Technologies Currently and Particularly Encouraged by the State for Development (as amended in 2000) as their principal business and the revenue from the principal operations account for over 70% of their total revenue. The applicable reduced preferential EIT rate under the OUWC Policy is 15%. From 10 September 2004, date of incorporation of the Company, the operations of the Company have met the requirements under the OUWC Policy, and accordingly, EIT has been provided at 15% since then.

The operations of IRICO Display Devices Co., Ltd. ("IRICO Display") have met the requirements under the OUWC Policy for the two years ended 31 December 2007 and 2006, and accordingly, EIT has also been provided at 15%.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 12. TAXATION *(continued)*

*Note: (continued)*

Xian IRICO Zixun Co., Ltd. was granted the status of high technology company. It is exempted from EIT for 2001 and 2002 and is required to pay EIT at a rate of 15% from 2003 to 2005. The operations of Xian IRICO Zixun Co., Ltd. have also met the requirements under the OUWC Policy for the two years ended 31 December 2007 and 2006 and accordingly, EIT has also been provided at 15%.

Zhuhai Caizhu Industrial Co., Ltd. and Caizhu Jinshun Electronic Industry Co., Ltd. are registered in a special economic zone and are entitled to pay EIT at 15% in 2007 and 2006.

Kunshan Caihong Yingguang Electronics Co., Ltd. is registered in a technological economic development zone and is required to pay EIT at a rate of 15% in 2007 and 2006.

Nanjing Reide Phosphor Co., Ltd., Xianyang IRICO Electronics Shadow Mask Co., Ltd. and IRICO Display Technology Co., Ltd. are Sino-foreign equity joint ventures engaging in the production business and are exempted from taxation for the first two profitable years and a 50% relief from the national PRC income tax rate (also exempted from paying the 3% local income tax) for the next three profitable years thereafter. As a result, Nanjing Reide Phosphor Co., Ltd., which was established in 2002, is entitled to pay EIT at 12% from 2006. Xianyang IRICO Electronics Shadow Mask Co., Ltd., which was established in 2003, has sufficient current years profit to set off against previous years' accumulated losses and thus has no assessable income. IRICO Display Technology Co., Ltd., which was established in 2004, is still in the exemption period for the year ended 31 December 2007.

During the 5th Session of the 10th National People's Congress, which was concluded on 16 March 2007, the PRC Corporate Income Tax Law (the "New Corporate Income Tax Law") was approved and will become effective on 1 January 2008. The New Corporate Income Tax Law introduces a wide range of changes which include, but are not limited to, the unification of the income tax rate for domestic-invested and foreign-invested enterprises at 25%. The subsidiaries which are enjoying the tax holiday will continue until expiry while the preferential tax rates disclosed above will continue after the New Corporate Income Tax Law. The tax rate of the subsidiaries of which are now subjected to tax rate of 33% will change to 25% from 1 January 2008.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 13. PROFIT FOR THE YEAR

|  | 2007<br>RMB'000 | 2006<br>RMB'000 |
|---|---:|---:|
| Profit for the year has been arrived at after<br>  charging and after crediting: |  |  |
| Cost of inventories recognised as an expense | 3,002,987 | 3,356,160 |
| Depreciation for property, plant and equipment | 290,063 | 337,461 |
| Depreciation for investment property | 218 | — |
| Amortisation of leasehold land and land use rights | 1,887 | 970 |
| Amortisation of intangible assets | 7,302 | 6,937 |
| Employee benefit expense (included directors' and<br>  supervisors' emoluments) | 439,220 | 473,910 |
| Impairment losses on property, plant and equipment<br>  (included in administrative expenses;<br>  2006: included in cost of sales ) | 2,630 | 67,205 |
| Impairment losses on intangible assets | — | 30,260 |
| Impairment losses on trade and other receivables | 1,300 | — |
| Net loss on disposal of property, plant and equipment | 142,609 | — |
| Research and development expenses | 22,678 | 25,917 |
| Write-down of inventories | 3,376 | 1,720 |
| Write off of an intangible asset | 241 | — |
| Operating lease rentals in respect of land use rights | 3,797 | 4,094 |
| Operating lease rentals in respect of property,<br>  plant and equipment | 31,380 | 37,336 |
| Net exchange losses | 17,335 | 12,216 |
| Provision for warranty (note 29) | 25,348 | 11,844 |
| Auditors' remuneration | 3,671 | 5,442 |
| Share of tax of associates (included in share of<br>  result of associates) | 3,001 | (312) |

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 14. LOSS ATTRIBUTABLE TO EQUITY HOLDERS OF THE COMPANY

The loss attributable to equity holders of the Company is dealt with in the financial statements of the Company to the extent of approximately RMB58,374,000 (2006: RMB9,956,000).

## 15. EARNINGS PER SHARE

The calculation of basic earnings per share is based on the Group's profit attributable to equity holders of approximately RMB66,511,000 (2006: RMB129,512,000) and based on the weighted average of 1,941,174,000 (2006: 1,941,174,000) shares in issue.

There were no dilutive potential shares during the two years ended 31 December 2007 and 2006 and accordingly, no diluted earnings per share is presented.

## 16. DIVIDEND

No dividend was paid or proposed during the year ended 31 December 2007, nor has any dividend been proposed since the balance sheet date (2006 : Nil).

**110** 彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 17. PROPERTY, PLANT AND EQUIPMENT

**The Group**

| | Buildings RMB'000 | Machinery for electronics production RMB'000 | Machinery for glass production RMB'000 | Other machinery RMB'000 | Office equipment and others RMB'000 | Construction in progress RMB'000 | Total RMB'000 |
|---|---|---|---|---|---|---|---|
| **At 1 January 2006** | | | | | | | |
| Cost | 437,618 | 2,884,203 | 878,938 | 861,163 | 114,101 | 734,044 | 5,910,067 |
| Accumulated depreciation and impairment loss | (199,572) | (1,381,512) | (501,856) | (434,589) | (75,130) | (395,972) | (2,988,631) |
| | | | | | | | |
| Carrying value | 238,046 | 1,502,691 | 377,082 | 426,574 | 38,971 | 338,072 | 2,921,436 |
| | | | | | | | |
| **Year ended 31 December 2006** | | | | | | | |
| Opening carrying value | 238,046 | 1,502,691 | 377,082 | 426,574 | 38,971 | 338,072 | 2,921,436 |
| Additions | — | 30,530 | — | 28,114 | 1,960 | 37,624 | 98,228 |
| Transfers / reclassification | 25,780 | 223,312 | 35,874 | 13,265 | 2 | (298,233) | — |
| Transfer to inventories | — | — | — | — | — | (17,659) | (17,659) |
| Transfer to intangible assets | — | — | — | — | — | (27,917) | (27,917) |
| Disposals | — | (14,760) | — | (54,794) | (2,440) | — | (71,994) |
| Depreciation charge | (16,536) | (156,592) | (97,069) | (56,683) | (10,581) | — | (337,461) |
| Impairment charge | — | (56,735) | (8,715) | (1,755) | — | — | (67,205) |
| | | | | | | | |
| Closing carrying value | 247,290 | 1,528,446 | 307,172 | 354,721 | 27,912 | 31,887 | 2,497,428 |
| | | | | | | | |
| **At 31 December 2006** | | | | | | | |
| Cost | 463,398 | 3,438,324 | 970,522 | 794,321 | 104,697 | 31,887 | 5,803,149 |
| Accumulated depreciation and impairment loss | (216,108) | (1,909,878) | (663,350) | (439,600) | (76,785) | — | (3,305,721) |
| | | | | | | | |
| Carrying value | 247,290 | 1,528,446 | 307,172 | 354,721 | 27,912 | 31,887 | 2,497,428 |

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 17. PROPERTY, PLANT AND EQUIPMENT *(continued)*

**The Group** *(continued)*

| | Buildings RMB'000 | Machinery for electronics production RMB'000 | Machinery for glass production RMB'000 | Other machinery RMB'000 | Office equipment and others RMB'000 | Construction in progress RMB'000 | Total RMB'000 |
|---|---|---|---|---|---|---|---|
| Year ended 31 December 2007 | | | | | | | |
| Opening carrying value | 247,290 | 1,528,446 | 307,172 | 354,721 | 27,912 | 31,887 | 2,497,428 |
| Additions | 5,359 | 71,627 | 10,782 | 33,061 | 6,578 | 6,454 | 133,861 |
| Transfer to investment property | (4,915) | — | — | — | — | — | (4,915) |
| Disposals | (160) | (96,116) | (20,283) | (11,096) | (15,452) | (25) | (143,132) |
| Depreciation charge | (16,968) | (140,864) | (62,624) | (60,090) | (9,517) | — | (290,063) |
| Impairment charge | — | — | — | (2,630) | — | — | (2,630) |
| Disposal of a subsidiary | — | (158,241) | (22,331) | (322) | (15) | — | (180,909) |
| | | | | | | | |
| Closing carrying value | 230,606 | 1,204,852 | 212,716 | 313,644 | 9,506 | 38,316 | 2,009,640 |
| | | | | | | | |
| At 31 December 2007 | | | | | | | |
| Cost | 463,480 | 2,714,682 | 912,424 | 802,259 | 85,536 | 38,316 | 5,016,697 |
| Accumulated depreciation and impairment loss | (232,874) | (1,509,830) | (699,708) | (488,615) | (76,030) | — | (3,007,057) |
| | | | | | | | |
| Carrying value | 230,606 | 1,204,852 | 212,716 | 313,644 | 9,506 | 38,316 | 2,009,640 |

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 17. PROPERTY, PLANT AND EQUIPMENT *(continued)*

**The Company**

| | Machinery for electronics production RMB'000 | Machinery for glass production RMB'000 | Other machinery RMB'000 | Office equipment and others RMB'000 | Construction in progress RMB'000 | Total RMB'000 |
|---|---|---|---|---|---|---|
| **At 1 January 2006** | | | | | | |
| Cost | 1,215,784 | 571,476 | 459,612 | 76,817 | 147,198 | 2,470,887 |
| Accumulated depreciation and impairment loss | (474,382) | (278,130) | (164,511) | (50,982) | (75,648) | (1,043,653) |
| **Carrying value** | 741,402 | 293,346 | 295,101 | 25,835 | 71,550 | 1,427,234 |
| **Year ended 31 December 2006** | | | | | | |
| Opening net book amount | 741,402 | 293,346 | 295,101 | 25,835 | 71,550 | 1,427,234 |
| Additions | 14,855 | — | 1,348 | 802 | 10,418 | 27,423 |
| Transfers / reclassification | 9,473 | 35,874 | (16,508) | — | (28,839) | — |
| Transfer to inventories | — | — | — | — | (17,659) | (17,659) |
| Disposals | (14,703) | — | (54,647) | (1,295) | — | (70,645) |
| Depreciation charge | (74,122) | (36,987) | (21,372) | (6,153) | — | (138,634) |
| Impairment reversal / (charge) | 4,416 | (8,715) | — | — | — | (4,299) |
| **Closing carrying value** | 681,321 | 283,518 | 203,922 | 19,189 | 35,470 | 1,223,420 |
| **At 31 December 2006** | | | | | | |
| Cost | 1,223,675 | 663,060 | 336,881 | 71,464 | 35,470 | 2,330,550 |
| Accumulated deprecation and impairment loss | (542,354) | (379,542) | (132,959) | (52,275) | — | (1,107,130) |
| **Carrying value** | 681,321 | 283,518 | 203,922 | 19,189 | 35,470 | 1,223,420 |

Annual Report
2007 年年度報告

**113**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 17. PROPERTY, PLANT AND EQUIPMENT *(continued)*

**The Company** *(continued)*

| | Machinery for electronics production RMB'000 | Machinery for glass production RMB'000 | Other machinery RMB'000 | Office equipment and others RMB'000 | Construction in progress RMB'000 | Total RMB'000 |
|---|---|---|---|---|---|---|
| Year ended 31 December 2007 | | | | | | |
| Opening net book amount | 681,321 | 283,518 | 203,922 | 19,189 | 35,470 | 1,223,420 |
| Additions | 52,424 | 35,520 | 2,712 | 1,239 | — | 91,895 |
| Disposals | (343,090) | — | (10,524) | (10,111) | — | (363,725) |
| Depreciation charge | (87,369) | (38,727) | (15,106) | (6,905) | — | (148,107) |
| | | | | | | |
| Closing carrying value | 303,286 | 280,311 | 181,004 | 3,412 | 35,470 | 803,483 |
| | | | | | | |
| At 31 December 2007 | | | | | | |
| Cost | 698,337 | 698,580 | 280,396 | 55,773 | 35,470 | 1,768,556 |
| Accumulated deprecation and impairment loss | (395,051) | (418,269) | (99,392) | (52,361) | — | (965,073) |
| | | | | | | |
| Carrying value | 303,286 | 280,311 | 181,004 | 3,412 | 35,470 | 803,483 |

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 17. PROPERTY, PLANT AND EQUIPMENT *(continued)*

Depreciation on property, plant and equipment is calculated using the straight-line method to allocate their costs to their residual values over their estimated useful lives, as follows:

| | |
|---|---|
| Buildings | 10 - 40 years |
| Machinery for electronics production | 15 years |
| Machinery for glass production | 6 - 18 years |
| Other machinery | 18 years |
| Office equipment and others | 5 years |

The Group's depreciation charge of approximately RMB273,213,000 (2006 : RMB302,453,000) has been included in cost of sales, RMB462,000 (2006 : RMB731,000) in selling and distribution costs and RMB16,388,000 (2006 : RMB34,277,000) in administrative expenses.

During the year, the directors conducted a review of the Group's production machinery and determined that a number of those assets were impaired, due to technical obsolescence. Accordingly, impairment losses of RMB2,630,000 has been recognised in respect of other machinery and included in administrative expense.

The Group's impairment charge of approximately RMB67,205,000 had been included in cost of sales for the year ended 31 December 2006. The events and circumstances that led to the recognition of the impairment loss and the discount rates used in the current estimate of value in use are disclosed in note 4.

As at 31 December 2007, short-term bank borrowings of the Group amounting to approximately RMB200,000,000 (2006 : RMB140,000,000) are secured by the Group's buildings and machineries with the carrying amount of approximately RMB195,538,000 (2006 : RMB205,027,000) (note 30).

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 18. INVESTMENT PROPERTY — Group

|  | RMB'000 |
|---|---|
| **COST** | |
| At 1 January 2006, 31 December and 1 January 2007 | — |
| Transferred from property, plant and equipment during the year and at 31 December 2007 | 4,915 |
| **ACCUMULATED DEPRECIATION** | |
| At 1 January 2006, 31 December and 1 January 2007 | — |
| Charge for the year and at 31 December 2007 | 218 |
| **CARRYING VALUE** | |
| At 31 December 2007 | 4,697 |

The above investment property was depreciated on a straight-line basis at 33% per annum.

The investment property as at 31 December 2007 was located in the PRC and was held to earn rentals or for capital appreciation. The investment property is carried at cost less subsequent accumulated depreciation and any accumulated impairment losses.

In the opinion of the directors of the Company, the fair value of the Company's investment property at 31 December 2007 was approximated to its carrying value with reference to the recent market prices for similar properties.

彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 19. LEASEHOLD LAND AND LAND USE RIGHTS — GROUP

The Group's interests in leasehold land and land use rights represent prepaid operating lease payments and their carrying values are analysed as follows:

|  | RMB'000 |
|---|---|
| **COST** | |
| At 1 January 2006 and 1 January 2007 | 46,859 |
| Additions | 12,396 |
| At 31 December 2007 | 59,255 |
| **ACCUMULATED AMORTISATION** | |
| At 1 January 2006 | 8,948 |
| Amortisation charge | 970 |
| At 31 December 2006 and 1 January 2007 | 9,918 |
| Amortisation charge | 1,887 |
| At 31 December 2007 | 11,805 |
| **CARRYING VALUE** | |
| At 31 December 2007 | 47,450 |
| At 31 December 2006 | 36,941 |

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 19. LEASEHOLD LAND AND LAND USE RIGHTS — GROUP *(continued)*

|  | 2007<br>RMB'000 | 2006<br>RMB'000 |
|---|---|---|
| Outside Hong Kong, held on leases of: | | |
| — between 10 to 50 years | 41,525 | 36,659 |
| — less than 10 years | 5,925 | 282 |
|  | 47,450 | 36,941 |
| Analysed for reporting purposes as: | | |
| — current asset (included in other receivables,<br>   deposits and prepayments) | 1,887 | 970 |
| — non-current asset | 45,563 | 35,971 |
|  | 47,450 | 36,941 |

As at 31 December 2007, short-term bank borrowings of the Group amounting to approximately RMB200,000,000 (2006 : RMB140,000,000) are secured by the Group's land use rights with the carrying value of approximately RMB20,387,000 (2006 : RMB21,012,000) (note 30).

The official property title certificate for certain of the Group's land use right with carrying amount of approximately RMB6,400,000 (2006: Nil) has not yet been issued by the relevant local government authorities. The directors are of the opinion that the Group's right and interest in such land use right will not be therefore severely prejudiced and the application of the title certificate is in progress.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 20. INTANGIBLE ASSETS

**The Group**

| | Licences for technical knowledge *RMB'000* | Computer software *RMB'000* | Total *RMB'000* |
|---|---|---|---|
| **At 1 January 2006** | | | |
| Cost | 332,037 | 1,543 | 333,580 |
| Accumulated amortisation and impairment | (319,207) | (383) | (319,590) |
| | | | |
| Net carrying value | 12,830 | 1,160 | 13,990 |
| | | | |
| **Year ended 31 December 2006** | | | |
| Opening net carrying value | 12,830 | 1,160 | 13,990 |
| Additions | 5,134 | 1,771 | 6,905 |
| Transfer in from construction in progress | 27,917 | — | 27,917 |
| Charge for the year | (6,423) | (514) | (6,937) |
| Impairment loss recognised in the year | (30,260) | — | (30,260) |
| | | | |
| Closing net carrying value | 9,198 | 2,417 | 11,615 |
| | | | |
| **At 1 January 2007** | | | |
| Cost | 365,088 | 3,314 | 368,402 |
| Accumulated amortisation and impairment | (355,890) | (897) | (356,787) |
| | | | |
| Net carrying value | 9,198 | 2,417 | 11,615 |

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 20. INTANGIBLE ASSETS *(continued)*

**The Group** *(continued)*

| | Licences for technical knowledge RMB'000 | Computer software RMB'000 | Total RMB'000 |
|---|---|---|---|
| **Year ended 31 December 2007** | | | |
| Opening net carrying value | 9,198 | 2,417 | 11,615 |
| Additions | 241 | 120 | 361 |
| Charge for the year | (6,570) | (732) | (7,302) |
| Write off for the year | — | (241) | (241) |
| Net carrying value | 2,869 | 1,564 | 4,433 |
| | | | |
| **At 31 December 2007** | | | |
| Cost | 365,329 | 3,002 | 368,331 |
| Accumulated amortisation and impairment | (362,460) | (1,438) | (363,898) |
| Net carrying value | 2,869 | 1,564 | 4,433 |

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 20. INTANGIBLE ASSETS *(continued)*

**The Company**

| | Licences for technical knowledge RMB'000 | Computer software RMB'000 | Total RMB'000 |
|---|---|---|---|
| **At 1 January 2006** | | | |
| Cost | 94,575 | 1,543 | 96,118 |
| Accumulated amortisation and impairment | (85,263) | (383) | (85,646) |
| **Net carrying value** | 9,312 | 1,160 | 10,472 |
| **As at 31 December 2006** | | | |
| Opening net carrying value | 9,312 | 1,160 | 10,472 |
| Additions | — | 1,760 | 1,760 |
| Charge for the year | (2,324) | (506) | (2,830) |
| **Closing net carrying value** | 6,988 | 2,414 | 9,402 |
| **At 1 January 2007** | | | |
| Cost | 94,575 | 3,135 | 97,710 |
| Accumulated amortisation and impairment | (87,587) | (721) | (88,308) |
| **Net carrying value** | 6,988 | 2,414 | 9,402 |

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 20. INTANGIBLE ASSETS *(continued)*

**The Company** *(continued)*

|  | Licences for technical knowledge *RMB'000* | Computer software *RMB'000* | Total *RMB'000* |
|---|---|---|---|
| **Year ended 31 December 2007** |  |  |  |
| Opening net carrying value | 6,988 | 2,414 | 9,402 |
| Additions | — | 120 | 120 |
| Charge for the year | (4,752) | (732) | (5,484) |
| Disposals | (1,149) | (241) | (1,390) |
| Net carrying value | 1,087 | 1,561 | 2,648 |
| **At 31 December 2007** |  |  |  |
| Cost | 80,746 | 2,823 | 83,569 |
| Accumulated amortisation and impairment | (79,659) | (1,262) | (80,921) |
| Net carrying value | 1,087 | 1,561 | 2,648 |

The above intangible assets have definite useful lives. Such intangible assets are amortised on a straight-line basis over the following periods:

| | |
|---|---|
| Licences for technical knowledge | 20 years |
| Computer software | 5 years |

The Group's amortisation of approximately RMB6,570,000 (2006 : RMB6,423,000) has been included in cost of sales and RMB732,000 (2006 : RMB514,000) in the administrative expenses in the consolidated income statement.

The impairment charge of approximately RMB30,260,000 for the purchased technical knowledge for manufacturing of super large-sized CPTs was recognised for the Group during the year ended 31 December 2006 and included in cost of sales in the consolidated income statement since the directors consider that the Group will no longer produce the super large-sized CPTs.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 21. INVESTMENTS IN SUBSIDIARIES - COMPANY

### A.   Investments in subsidiaries

|  | **2007** | 2006 |
|---|---|---|
|  | **RMB'000** | RMB'000 |
| Investments, at cost : |  |  |
| Shares in a listed company in the PRC | **596,169** | 624,793 |
| Unlisted shares | **440,327** | 477,434 |
|  | **1,036,496** | 1,102,227 |
| Market value of listed shares | **1,122,312** | 513,119 |

As at 31st December 2007, The Group's shares in a listed company in the PRC represent a 41.08% equity interest in IRICO Display Device Co., Ltd. ("IRICO Display"), a company listed on the Shanghai Stock Exchange.

During the year ended 31 December 2007, the Company disposed of its 1.82% equity interests in IRICO Display at a total consideration of RMB52,980,000 through the Shanghai Stock Exchange, and resulted in a gain on partial disposal of approximately RMB25,858,000.

Prior to the share reform, the Company had a 56.14% equity interest in IRICO Display.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 21. INVESTMENTS IN SUBSIDIARIES - COMPANY *(continued)*

### A. Investments in subsidiaries *(continued)*

As at 31 December 2007, the Company has direct and indirect interests in the following subsidiaries, all of which were established and operate in the PRC. The particulars of the subsidiaries are set out below:

| Name | Registered capital | Principal activities | Interest directly held by the Company | Interest indirectly held through subsidiaries |
|------|------|------|------|------|
| IRICO Display | RMB421,148,800 | Production and development of the electronic products and raw materials for colour display devices | 41.08% | — |
| IRICO Kunshan Industry Co., Ltd. | RMB60,000,000 | Production of the rubber parts of CPTs | 80% | 10% |
| Shaanxi IRICO Phosphor Material Co., Ltd. ("IRICO Phosphor") | RMB90,000,000 | Production of phosphor for various types of CPTs | 45% | — |
| Xian IRICO Zixun Co., Ltd. | RMB130,000,000 | Production and sales of the parts and components for display devices and the electronic communication products | 100% | — |
| Xianyang Caiqin Electronic Device Co., Ltd. | RMB25,000,000 | Production and sales of pin, anode button, multi-form and frit for CPTs | 87.16% | — |
| Xianyang IRICO Electronic Parts Co., Ltd. | RMB55,000,000 | Sales of shadow mask, frames and electronic products for CPTs | 60% | — |

**124** 彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 21. INVESTMENTS IN SUBSIDIARIES - COMPANY *(continued)*

### A. Investments in subsidiaries *(continued)*

| Name | Registered capital | Principal activities | Interest directly held by the Company | Interest indirectly held through subsidiaries |
|------|-------------------|---------------------|--------------------------------------|----------------------------------------------|
| Xianyang IRICO Electronic Shadow Mask Co., Ltd. | US$5,000,000 | Development and production of the flat shadow mask and the coordinating products for CPTs | 75% | — |
| Zhuhai Caizhu Industrial Co., Ltd. | RMB50,000,000 | Manufacture of electronic devices and components | 90% | — |
| IRICO Display Technology Co., Ltd. | US$2,500,000 | Production and sale of CPTs, black and white picture tubes and ancillary electronic components | 75% | — |
| Caizhu Jinshun Electronic Industry Co., Ltd. | RMB10,000,000 | Production and sales of frit for CPTs | — | 100% |
| Kunshan Caihong Yingguang Electronics Co., Ltd. | US$4,500,000 | Production of procession alloy and other products for color and black and white picture tubes | — | 60% |
| Nanijing Reide Phosphor Co., Ltd. | US$443,300 | Production and processing of recycled phosphor and related products for various types of CPTs | — | 45% |
| Xian Caihui Display Technology Co., Ltd. | RMB10,000,000 | R&D, design, manufacture, sales of CPTs, deflection yoke and related component and part as well as the after sale services for the sold product | — | 100% |

### B. Loan to a subsidiary

For the year ended 31 December 2006, the loan to a subsidiary was unsecured, carried interest at 6.12% per annum and was fully repaid on 14 June 2007.

Annual Report
2007年年度報告

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 22. INTERESTS IN ASSOCIATES

|  | The Group | | The Company | |
|---|---|---|---|---|
|  | **2007**<br>**RMB'000** | 2006<br>RMB'000 | **2007**<br>**RMB'000** | 2006<br>RMB'000 |
| Cost of investment in associates —<br>  unlisted equity interests<br>  in the PRC | **—** | — | **250,000** | — |
| Opening carrying amount | **232,220** | 17,339 | **—** | — |
| Additions | **110,000** | 215,826 | **110,000** | 250,000 |
| Share of associates profits less<br>  dividends received | **8,733** | (945) | **—** | — |
|  | **350,953** | 232,220 | **360,000** | 250,000 |
| Less: carrying amount of associates<br>  disposal during the year | **(17,303)** | — | **—** | — |
|  | **333,650** | 232,220 | **360,000** | 250,000 |

On 27 July 2007, the Group disposed of its 41.67% equity interests in an associate, Xian New Century International Club Co., Ltd., to IRICO Group at a consideration of RMB31,410,780 and recorded a gain on disposal of an associate of approximately RMB16,208,000 in the consolidated income statement.

In October 2007, Xian IRICO Plastic Industry Co., Ltd., an associate in which the Group had 30% equity interests, was deregistered. On the date of deregistration, the net assets shared by the Group amounted to approximately RMB2,100,000, which was set off against the outstanding payable of the same amount by the Group, resulting in no gain or loss on deregistration.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 22. INTERESTS IN ASSOCIATES *(continued)*

The Group's interests in associates, all of which are unlisted, are as follows:

| Name | Country of incorporation | Assets *RMB'000* | Liabilities *RMB'000* | Revenues *RMB'000* | Group's share of profits of associates *RMB'000* |
|---|---|---|---|---|---|
| **2007** | | | | | |
| Sichuan Century Shuanghong Display Devices Co., Ltd. ("Sichuan Shuanghong") | PRC | 650,070 | 199,979 | 100,133 | 6,337 |
| Xian New Century International Club Co., Ltd. *(Note)* | PRC | — | — | 17,549 | 1,784 |
| Shenzhen Ruisheng Phosphor Material Co., Ltd. | PRC | 3,604 | 471 | 3,958 | 972 |
| | | 653,674 | 200,450 | 121,640 | 9,093 |

*Note:* The amount included in the revenue and profit of Xian New Century International Club Co., Ltd. for the period from 1 January 2007 to the date of which Xian New Century International Club Co., Ltd. ceased to be an associate of the Group.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 22. INTERESTS IN ASSOCIATES *(continued)*

| Name | Country of incorporation | Assets RMB'000 | Liabilities RMB'000 | Revenues RMB'000 | Group's share of profits of associates RMB'000 |
|---|---|---|---|---|---|
| 2006 | | | | | |
| Sichuan Shuanghong | PRC | 209,112 | 16,466 | — | (1,636) |
| Xian New Century International Club Co., Ltd. | PRC | 20,941 | 7,523 | 13,604 | 271 |
| Shenzhen Ruisheng Phosphor Material Co., Ltd. | PRC | 2,967 | 456 | 3,526 | 1,207 |
| Xian IRICO Plastic Industry Co., Ltd. | PRC | 2,100 | — | 2,072 | (787) |
| | | 235,120 | 24,445 | 19,202 | (945) |

The particulars of the associates of the Group at 31 December 2007 are set out below:

| Name | Registered capital | Principal activities | Interest directly held by the Company | Interest indirectly held through subsidiaries |
|---|---|---|---|---|
| Sichuan Shuanghong *(note)* | RMB180,000,000 | Production, research and development and sale of plasma display panels ("PDP") and related materials | 20% | — |
| Shenzhen Ruisheng Phosphor Material Co., Ltd. | RMB4,000,000 | Production regenerated red, green and blue phosphor materials | — | 40% |

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 22. INTERESTS IN ASSOCIATES *(continued)*

*Note :*

On 27 March 2006, the Company and Sichuan Changhong Group Corporation ("Changhong Group"), contributed cash of RMB1,000,000 each to form a company named "Beijing Century Shuanghong Display Devices Co., Ltd." with registered capital of RMB2,000,000. In July 2006, Beijing Century Shuanghong Display Devices Co., Ltd. was renamed as Sichuan Shuanghong.

On 10 October 2006, the Company and Changhong Group entered into an Increased Contributions Agreement for increasing the registered capital of Sichuan Shuanghong (the "Increased Contribution Agreement"). Pursuant to the Increased Contributions Agreement, the Group agreed to make additional capital contributions of RMB359,000,000, comprising cash of RMB119,000,000, tangible assets of RMB98,000,000 and intangible assets of RMB142,000,000 (the "Transaction Price") to Sichuan Shuanghong. The values of the tangible and intangible assets were negotiated and determined between the Company and Changhong Group on an arm's length basis with reference to a valuation report prepared by an independent professional valuer in the PRC.

Immediately following such increase in capital contributions, the registered capital of Sichuan Shuanghong would be increased to RMB1,800,000,000 of which RMB360,000,000 (20%) and RMB1,440,000,000 (80%) were attributable from the Company and Changhong Group respectively. The increased capital was scheduled to be contributed by both parties in accordance to the requirements as stated in the Company Law of the PRC.

Pursuant to the Increased Contributions Agreement, the Company had contributed RMB240,000,000 by way of injection of tangible and intangible assets in November 2006 and cash of RMB9,000,000. The Group recognised the gain on disposal of these tangible and intangible assets after considering the elimination of the 20% share of Group's unrealised valuation surplus of RMB171,000,000 (i.e. RMB34,200,000) based on the equity accounting method. Thus, the gain on disposal of property, plant and equipments was RMB23,000,000 and the gain on disposal of intangible assets was RMB114,000,000.

In May and June 2007, the Group contributed a total of RMB110,000,000 by way of cash into Sichuan Shuanghong.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 23. AVAILABLE-FOR-SALE INVESTMENTS - GROUP

|  | 2007 RMB'000 | 2006 RMB'000 |
|---|---|---|
| Unlisted investments | 33,500 | 33,500 |
| Impairment loss | (9,440) | (9,440) |
|  | 24,060 | 24,060 |

At the balance sheet date, the unlisted investments substantially comprise of the investment in equity interests in Western Trust & Investment Co., Ltd. ("WTI"), a state controlled trust enterprise. WTI has a number of investments in unlisted enterprises which have no available information concerning their market values. These investments held by WTI are stated at cost in WTI's book.

The available-for-sale investments are measured at cost less impairment at each balance sheet date because the range of reasonable fair value estimates is so significant that the directors of the Company are of the opinion that their fair values cannot be measured reliability.

## 24. INVENTORIES

|  | The Group | | The Company | |
|---|---|---|---|---|
|  | 2007 RMB'000 | 2006 RMB'000 | 2007 RMB'000 | 2006 RMB'000 |
| Raw materials | 173,677 | 190,775 | 101,423 | 146,338 |
| Work in progress | 41,406 | 170,158 | 3,048 | 66,213 |
| Finished goods | 424,286 | 271,311 | 117,672 | 105,157 |
| Consumables | 72,813 | 20,665 | 52,783 | 4,926 |
|  | 712,182 | 652,909 | 274,926 | 322,634 |
| Write-down to net realisable value | (13,692) | (20,994) | (1,303) | (6,869) |
|  | 698,490 | 631,915 | 273,623 | 315,765 |

During the year ended 31 December 2007, there was an increase in the realisable value of raw materials due to market shortage in raw materials. As a result, a reversal of write-down of inventories of approximately RMB10,678,000 has been recognised in other operating income.

130　彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 25. TRADE RECEIVABLES

|  | The Group | | The Company | |
|---|---|---|---|---|
|  | 2007 | 2006 | 2007 | 2006 |
|  | RMB'000 | RMB'000 | RMB'000 | RMB'000 |
| Trade receivables |  |  |  |  |
| — third parties | 493,524 | 344,065 | 164,735 | 92,929 |
| — related parties *(note 39)* | 239,545 | 335,923 | 52,096 | 88,470 |
| — subsidiaries of the Company | — | — | 197,615 | 286,929 |
|  | 733,069 | 679,988 | 414,446 | 468,328 |
| Less: impairment losses | (12,621) | (11,466) | (47,165) | (58,900) |
| Trade receivables — net | 720,448 | 668,522 | 367,281 | 409,428 |
| Trade bills receivables |  |  |  |  |
| — third parties | 426,982 | 220,980 | 91,777 | 40,307 |
| — related parties *(note 39)* | 316,368 | 622,790 | 219,960 | 136,137 |
|  | 743,350 | 843,770 | 311,737 | 176,444 |
|  | 1,463,798 | 1,512,292 | 679,018 | 585,872 |

As at 31 December 2006 and 2007, the ageing of trade bills receivables are all within 180 days.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 25. TRADE RECEIVABLES *(continued)*

The Group allows an average credit period ranging from cash on delivery to 90 days to its trade customers. The following is an aged analysis of trade receivables net of impairment loss at the reporting date:

|  | The Group | | The Company | |
|---|---|---|---|---|
|  | **2007** | 2006 | **2007** | 2006 |
|  | **RMB'000** | RMB'000 | **RMB'000** | RMB'000 |
| 0-90 days | **612,190** | 602,211 | **222,703** | 308,341 |
| 91-180 days | **62,313** | 57,640 | **64,946** | 93,961 |
| 181-365 days | **38,694** | 4,001 | **64,314** | 6,363 |
| Over 365 days | **7,251** | 4,670 | **15,318** | 763 |
|  | **720,448** | 668,522 | **367,281** | 409,428 |

Ageing of trade receivables which are past due but not impaired:

|  | The Group | | The Company | |
|---|---|---|---|---|
|  | **2007** | 2006 | **2007** | 2006 |
|  | **RMB'000** | RMB'000 | **RMB'000** | RMB'000 |
| 91-180 days | **62,313** | 57,640 | **64,946** | 93,961 |
| 181-365 days | **38,694** | 4,001 | **64,314** | 6,363 |
| Over 365 days | **7,251** | 4,670 | **15,318** | 763 |
|  | **108,258** | 66,311 | **144,578** | 101,087 |

The Group's neither past due nor impaired trade receivables mainly represent sales made to a large number of diversified and recognised and creditworthy customers. Customers who trade on credit terms are subject to credit verification procedures. No impairment provision is required for the past due balance based on the historical payment records. The Group does not hold any collateral over those balances.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 25. TRADE RECEIVABLES *(continued)*

At each of the balance sheet date, the Group's trade receivables were individually determined to be impaired. The individually impaired receivables are recognised based on the credit history of its customers, such as financial difficulties or default in payments, and current market conditions. Consequently, specific impairment provision was recognised. The movement in the provision for impairment of trade receivable is as follows:

|  | The Group | | The Company | |
|---|---|---|---|---|
|  | **2007** | 2006 | **2007** | 2006 |
|  | **RMB'000** | RMB'000 | **RMB'000** | RMB'000 |
| Balance at beginning of the year | **11,466** | 13,229 | **58,900** | 11,963 |
| Impairment losses recognised | **3,878** | — | **—** | 46,937 |
| Amounts recovered during the year | **(2,723)** | (1,763) | **(11,735)** | — |
| Balance at end of the year | **12,621** | 11,466 | **47,165** | 58,900 |

## 26. OTHER RECEIVABLES, DEPOSITS AND PREPAYMENTS

|  | The Group | | The Company | |
|---|---|---|---|---|
|  | **2007** | 2006 | **2007** | 2006 |
|  | **RMB'000** | RMB'000 | **RMB'000** | RMB'000 |
| Other receivables | **114,691** | 34,614 | **83,181** | 27,027 |
| Less: impairment loss | **(2,441)** | (2,295) | **(662)** | (345) |
| Deposits and prepayments | **23,672** | 33,734 | **2,419** | 16,060 |
|  | **135,922** | 66,053 | **84,938** | 42,742 |

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 26. OTHER RECEIVABLES, DEPOSITS AND PREPAYMENTS *(continued)*

Movement in the impairment loss of other receivables:

|  | The Group | | The Company | |
| --- | --- | --- | --- | --- |
|  | **2007** | 2006 | **2007** | 2006 |
|  | **RMB'000** | RMB'000 | **RMB'000** | RMB'000 |
| Balance at beginning of the year | **2,296** | 2,112 | **345** | — |
| Impairment losses recognised | **145** | 183 | **317** | 345 |
| Balance at end of the year | **2,441** | 2,295 | **662** | 345 |

## 27. BANK BALANCES AND CASH

|  | The Group | | The Company | |
| --- | --- | --- | --- | --- |
|  | **2007** | 2006 | **2007** | 2006 |
|  | **RMB'000** | RMB'000 | **RMB'000** | RMB'000 |
| Pledged balances | **—** | 30,009 | **—** | 30,009 |
| Unpledged balances |  |  |  |  |
| — time deposits | **24,500** | 30,000 | **—** | — |
| — other bank balances and cash | **339,117** | 419,494 | **160,821** | 191,720 |
|  | **363,617** | 479,503 | **160,821** | 221,729 |

All the bank balances and cash are denominated in RMB and deposited with banks in the PRC except for the equivalent amounts of approximately RMB52,531,000 (2006: RMB110,763,000) at 31 December 2007 which is denominated in foreign currencies. The conversion of these RMB denominated balances into foreign currencies is subject to the rules and regulations of foreign exchange control promulgated by the PRC government.

As at 31 December 2006, bank balances and cash of the Group and the Company included deposit of RMB30,009,000 which was pledged to secure trade bills payable (2007: Nil).

The effective interest rate on time deposits was 2.52% to 3.78% (2006: 2.25%). These pledged deposits have a maturity from 180 days to 365 days (2006: 180 days to 365 days).

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 28. TRADE PAYABLES

|  | The Group | | The Company | |
| --- | ---: | ---: | ---: | ---: |
|  | **2007** | 2006 | **2007** | 2006 |
|  | **RMB'000** | RMB'000 | **RMB'000** | RMB'000 |
| Trade payables |  |  |  |  |
| — third parties | **402,399** | 335,690 | **213,783** | 185,446 |
| — related parties *(note 39)* | **103,024** | 212,241 | **40,978** | 138,685 |
| — subsidiaries of the Company | **—** | — | **78,182** | 25,340 |
|  | **505,423** | 547,931 | **332,943** | 349,471 |
| Trade bills payables |  |  |  |  |
| — third parties | **33,458** | 2,150 | **33,458** | 2,150 |
| — related parties *(note 39)* | **36,532** | 25,637 | **36,532** | 25,637 |
|  | **69,990** | 27,787 | **69,990** | 27,787 |
|  | **575,413** | 575,718 | **402,933** | 377,258 |

At 31 December 2007 and 2006, the ageing analysis of trade payables are as follows:

|  | The Group | | The Company | |
| --- | ---: | ---: | ---: | ---: |
|  | **2007** | 2006 | **2007** | 2006 |
|  | **RMB'000** | RMB'000 | **RMB'000** | RMB'000 |
| 0-90 days | **472,486** | 497,373 | **314,799** | 343,452 |
| 91-180 days | **8,151** | 12,237 | **8,762** | 3,812 |
| 181-365 days | **8,655** | 17,145 | **3,283** | 606 |
| Over 365 days | **16,131** | 21,176 | **6,098** | 1,601 |
|  | **505,423** | 547,931 | **332,942** | 349,471 |

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 29. OTHER PAYABLES AND ACCRUALS

| | The Group | | The Company | |
|---|---|---|---|---|
| | **2007** | 2006 | **2007** | 2006 |
| | **RMB'000** | RMB'000 | **RMB'000** | RMB'000 |
| Amount due to ultimate holding company *(note 39)* | **35,371** | 340,095 | **33,648** | 310,659 |
| Provisions of warranty *(note)* | **3,972** | 5,537 | **6** | 3,514 |
| Others | **175,970** | 380,879 | **148,270** | 281,757 |
| | **215,313** | 726,511 | **181,924** | 595,930 |

*Note:*

Movements of the provisions of warranty are as follows:

| | The Group | | The Company | |
|---|---|---|---|---|
| | **2007** | 2006 | **2007** | 2006 |
| | **RMB'000** | RMB'000 | **RMB'000** | RMB'000 |
| Opening carrying amount | **5,537** | 3,939 | **3,514** | 3,939 |
| Charged in the consolidated income statement *(note 13)* | **25,348** | 11,844 | **21,245** | 4,094 |
| Utilised during year | **(26,913)** | (10,246) | **(24,753)** | (4,519) |
| Closing carrying amount | **3,972** | 5,537 | **6** | 3,514 |

Under the terms of the Group's sales agreements, the Group will rectify product defects arising within three years from the date of sales. Provision is therefore made for the best estimate of the expected settlement under these agreements in respect of sales made within the year prior to the balance sheet date. The amount of provision takes into account the Group's recent claim experience and the Group only makes provision where a claim is probable.

彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 30. SHORT-TERM BANK BORROWINGS

|  | The Group | | The Company | |
|---|---|---|---|---|
|  | **2007** | 2006 | **2007** | 2006 |
|  | **RMB'000** | RMB'000 | **RMB'000** | RMB'000 |
| Secured | **200,000** | 140,000 | **—** | — |
| Unsecured | | | | |
| Guaranteed by the ultimate | | | | |
| holding company | **250,500** | 640,000 | **136,500** | 470,000 |
| Advanced from banks on | | | | |
| discounted trade receivables | **262,184** | 58,972 | **242,184** | — |
| Unguaranteed | **250,000** | 93,704 | **250,000** | 93,704 |
| | **962,684** | 932,676 | **628,684** | 563,704 |

As at 31 December 2007, short-term bank borrowing of approximately RMB200,000,000 (2006: RMB140,000,000) are secured by certain land use rights (note 19), and buildings and machineries of the Group (note 17).

As at 31 December 2007, the Group and the Company's unguaranteed bank borrowings are secured by certain land and buildings with carrying values of approximately RMB184,711,000 of its ultimate holding company. No assets pledge was provided by the ultimate holding company to the Company and the Group for the year ended 31 December 2006.

As at 31 December 2007, all borrowings were denominated in RMB. As at 31 December 2006, approximately RMB93,704,000 of bank borrowings were denominated by USD while the remaining were denominated in RMB.

Annual Report
2007 年年度報告

137

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 30. SHORT-TERM BANK BORROWINGS *(continued)*

As at 31 December 2007 and 2006, all short-term bank borrowings are based on fixed interest rate. The effective interest rates as at the balance sheet date were as follows:

|  | **2007** | 2006 |
|---|---|---|
| Short-term bank borrowings per annum | **5.31% - 7.65%** | 3.78% - 6.22% |

As at 31 December 2007, the unutilised banking facilities of the Group amounted to approximately RMB191,099,000 (2006: RMB187,025,000).

## 31. SHARE CAPITAL

|  | As at 31 December 2006 and 2007 | |
|---|---|---|
|  | **Number of shares** | **Amount** |
|  |  | *RMB'000* |
| Issued and fully paid : |  |  |
| Domestic shares of RMB1 Yuan each | 1,455,880,000 | 1,455,880 |
| H shares of RMB1 Yuan each | 485,294,000 | 485,294 |
|  | 1,941,174,000 | 1,941,174 |

The H shares rank pari passu in all respects with the domestic shares and rank equally for all dividends or distributions declared, paid or made except that all dividends in respect of H shares are to be paid by the Company in Hong Kong dollars and H shares may only be subscribed for by, and traded in Hong Kong dollars between legal or natural persons of any other country other than the PRC. The transfer of the domestic shares is subject to such restrictions as the PRC laws may impose from time to time.

**138**　彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 32. OTHER RESERVES

### The Group

| | Capital reserve | Statutory surplus reserve | Statutory public welfare fund | Total |
|---|---|---|---|---|
| | *(Note (i))* | *(Note (ii))* | *(Note (iii))* | |
| | *RMB'000* | *RMB'000* | *RMB'000* | *RMB'000* |
| At 1 January 2006 | 920,872 | 15,687 | 7,843 | 944,402 |
| Negative reserve arising from share reform *(note iv)* | (176,083) | — | — | (176,083) |
| Acquisition of additional interests of a subsidiary from a minority shareholder | (2,173) | — | — | (2,173) |
| Transfers | — | 7,843 | (7,843) | — |
| At 31 December 2006 and at 31 December 2007 | 742,616 | 23,530 | — | 766,146 |

### The Company

| | Capital reserve | Statutory surplus reserve | Statutory public welfare fund | Total |
|---|---|---|---|---|
| | *(Note (i))* | *(Note (ii))* | *(Note (iii))* | |
| | *RMB'000* | *RMB'000* | *RMB'000* | *RMB'000* |
| At 1 January 2006 | 962,623 | 15,687 | 7,843 | 986,153 |
| Transfers | — | 7,843 | (7,843) | — |
| At 31 December 2006, at 1 January 2007 and 31 December 2007 | 962,623 | 23,530 | — | 986,153 |

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 32. OTHER RESERVES *(continued)*

*Notes:*

(i)   Capital reserve

Upon incorporation of the Company on 10 September 2004, the historical net value of the assets, liabilities and interests transferred to the Company were converted into the Company's capital with all the then existing reserves eliminated and the resulting difference dealt with in the capital reserve. Accordingly, a capital reserve, being the difference between the amount of share capital issued and historical net value of the assets, liabilities and interests transferred to the Company, was presented in the reserves of both the Group and the Company. Separate class of reserves, including retained profits, of the Group prior to the incorporation of the Company were not separately disclosed as all these reserves have been capitalised and incorporated in the capital reserve of the Group and the Company.

(ii)   Statutory surplus reserve

In accordance with the relevant PRC laws and financial regulations, every year the Company is required to transfer 10% of the profit after taxation determined in accordance with accounting principles and financial regulations applicable to PRC enterprises ("PRC GAAP") to the statutory surplus reserve until the balance reaches 50% of the paid-up share capital. Such reserve can be used to reduce any losses incurred and to increase share capital. Except for the reduction of losses incurred, any other usage should not result in this reserve balance falling below 25% of the registered capital.

(iii)   Statutory public welfare fund

In accordance with the relevant PRC laws and financial regulations, every year the Company is required to transfer between 5% to 10% of the profits after taxation determined in accordance with PRC GAAP to the statutory public welfare fund. The use of this fund is restricted to capital expenditure for employees' collective welfare facilities, the ownership in respect of which belongs to the Group. The statutory public welfare fund is not available for distribution to shareholders except under liquidation. Once the capital expenditure on staff welfare facilities has been made, an equivalent amount must be transferred from statutory public welfare fund to the discretionary surplus reserve, a reserve which can be used to reduce any losses incurred or to increase share capital.

In accordance with the revised PRC regulations which is effective from 1 January 2006 and a circular issue by the Ministry of Finance (Cai Qi [2006] No.67), the Company is not required to provide for statutory public welfare fund out of appropriation of profit after taxation. The remaining balance as at 1 January 2006 is transferred into statutory surplus reserve.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 32. OTHER RESERVES *(continued)*

*Notes: (continued)*

(iv)     Negative reserve arising from share reform

Under the share reform, which was approved by the shareholders of IRICO Display on 18 July 2006, the Company offered 4.2 unlisted shares in IRICO Display for every 10 listed shares held on 27 July 2006 in consideration for such holders of listed shares to agree that all the IRICO Display's unlisted shares be converted into listed shares.

The Company transferred a total of 51,403,287 unlisted shares in IRICO Display to listed shareholders, representing approximately 12.21% of the total issue shares of IRICO Display and approximately 21.74% of the Company's unlisted shares in IRICO Display. The Company also transferred a total of 4,361,148 unlisted shares to listed shareholders on behalf of 15 unlisted shareholders who did not pay for their consideration.

In the Group's consolidated financial statements, the above share reform reduced capital reserve attributable to the shareholders of the Company by approximately RMB176,083,000 and increased minority interests by the same amount. The share paid on behalf of the 15 unlisted shareholders of RMB14,939,000 are recorded as amount due from these shareholders and increased minority interests by approximately RMB14,939,000.

## 33. DEFERRED INCOME

Deferred income represents grant received from the United Nations by the Group for its ozone depleting substance cleansing replacement project for acquiring machineries to treat the ozone depleting substance produced during the production process. This deferred income is amortised to the consolidated income statement on a straight-line basis over the expected lives of the corresponding assets of 5 years.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 34. DEFERRED TAXATION

Deferred taxation is calculated in full on temporary differences under the liability method using principal taxation rates of 25% (2006: 33%) except for certain subsidiaries mentioned in note 12 to the consolidated financial statements which are subject to tax concession to pay income tax at 15% (2006: 15%).

The gross movement on the deferred income tax account is as follows:

|  | The Group | | The Company | |
| --- | --- | --- | --- | --- |
|  | **2007** | 2006 | **2007** | 2006 |
|  | **RMB'000** | RMB'000 | **RMB'000** | RMB'000 |
| Opening carrying amount | **15,577** | 15,698 | **6,117** | 3,614 |
| (Credited) debited to the consolidated income statement | **(2,780)** | (121) | **(714)** | 2,503 |
| Closing carrying amount | **12,797** | 15,577 | **5,403** | 6,117 |

The movement in deferred tax assets and liabilities during the year, without taking into consideration the offsetting of balances within the same tax jurisdiction, is as follows:

彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 34. DEFERRED TAXATION *(continued)*

Deferred tax liabilities:

| | The Group Accelerated tax depreciation *RMB'000* | The Company Accelerated tax depreciation *RMB'000* |
|---|---:|---:|
| At 1 January 2006 | 15,698 | 3,614 |
| (Credited) debited to the consolidated income statement | (121) | 2,503 |
| At 31 December 2006 and 1 January 2007 | 15,577 | 6,117 |
| Credited to the consolidated income statement | (2,780) | (714) |
| At 31 December 2007 | 12,797 | 5,403 |

The deferred tax liabilities are to be recovered after more than 12 months.

Deferred income tax assets are recognised for tax loss carry-forwards and other deductible temporary differences to the extent that the realisation of the related tax benefit through the future taxable profits is probable. The Group has deductible temporary differences of approximately RMB 321,040,000 (2006: RMB229,253,000) where, in the opinion of the directors, it is not probable that sufficient taxable profits will be available within the utilisation periods to allow utilisation of the tax losses and other deductible temporary differences. The Group's unrecognised deferred tax assets in respect of tax losses will expire in 2012.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 35. LONG-TERM PAYABLES

Long-term payables mainly represent early retirement allowance payable to the employees of the Group.

The maturity profile of the long-term payables was as follows:

|  | The Group | | The Company | |
|---|---|---|---|---|
|  | **2007** | 2006 | **2007** | 2006 |
|  | **RMB'000** | RMB'000 | **RMB'000** | RMB'000 |
| Opening carrying amount | **12,919** | 18,505 | **10,027** | 13,355 |
| Utilised during year | **(1,361)** | (1,629) | **(1,361)** | (651) |
| Debited (credited) to consolidated income statement (note 10) | **630** | (3,957) | **(5,796)** | (2,677) |
| Closing carrying amount | **12,188** | 12,919 | **2,870** | 10,027 |
| Less: current portion included in current liabilities | **(2,938)** | (2,347) | **(744)** | (962) |
| Non-current portion | **9,250** | 10,572 | **2,126** | 9,065 |

The provision mainly represented early retirement allowance payable to the employees of the Group. Compensation for early retirement is recognised in the earlier of the periods in which the Group established a constructive obligation and created a valid expectation on the employee, entered into an agreement with the employee specifying the terms, or after the individual employee has been advised of the specific terms.

The fair values of payables equal their carrying amount, as the impact of discounting is not significant. The fair values are based on cash flows discounted using a rate based on five-year bank borrowings rate of 6.34% (2006: 6.12%).

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 36. DISPOSAL OF A SUBSIDIARY

On 27 July 2007, the Group entered into an agreement with IRICO Group, the Company's ultimate holding company, for the disposal of its 72.02% equity interest in a subsidiary, Xianyang IRICO Digital Display Co., Ltd., a company engaged in the production and sales of CPTs. The net assets of Xianyang IRICO Digital Display Co., Ltd. at the date of disposal were as follows:

|  | **2007**<br>*RMB'000* |
|---|---|
| Net assets disposed of: | |
| Property, plant and equipment | 180,909 |
| Inventories | 2,814 |
| Trade receivables | 5,424 |
| Bank balances and cash | 16,568 |
| Trade payables | (25,034) |
| Tax payables | (123) |
| Net assets | 180,558 |
| Gain on disposal of a subsidiary | 1,969 |
| Total consideration | 182,527 |
| Satisfied by: | |
| Cash | 147,181 |
| Other receivables | 35,346 |
| | 182,527 |
| Net cash inflow arising from disposal: | |
| Cash consideration | 147,181 |
| Bank balances and cash disposed of | (16,568) |
| | 130,613 |

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 36. DISPOSAL OF A SUBSIDIARY *(continued)*

During the year ended 31 December 2007, the disposed subsidiary contributed to approximately RMB10,279,000 to the Group's profit, contributed net operating cash flow RMB9,977,000 and received approximates to RMB14,354,000 from investing activities.

## 37. MATERIAL LITIGATIONS

**The dispute between Xianyang Xingyun Mechanical Company Limited ("Xingyun") and the Company**

On or about 19 June 2006, Xingyun brought an action against the Company in the People's High Court of Shaanxi. The Company received a notice ((2006) Shaan Min Chu Zi No. 16) from the court on 20 June 2006 requesting the Company to respond to the action and produce evidence in relation thereto.

On 28 July 2003, five Confirmation Agreements on Parts and Materials ("Confirmation Agreements") were entered into between Xingyun and the IRICO Colour Picture Tube Plant No. 1 CPT plant (彩虹彩色顯像管總廠彩管一廠) ("No. 1 CPT Plant"). According to the five Confirmation Agreements, Xingyun shall provide No. 1 CPT Plant with 5 types of parts samples including 37cm CPT model L shadow mask frame and anti-implosion band for mass pre-sale quality confirmation. In around February 2005, since the parties failed to agree on the price of bulk provision of goods upon the completion of the Confirmation Agreements, No. 1 CPT Plant notified Xingyun to suspend the provisions of parts as agreed in the Confirmation Agreements. Xingyun believes that this caused a total loss of RMB30,300,000 which was incurred from the investments in the construction of facilities and the purchase of materials.

The hearing of the case has ended. On 27 December 2006, the Company received a civil verdict ((2006) Shaan Min Er Chu Zi No. 16) from the People's High Court of Shaanxi. The court ruled that the claim by Xingyun against the Company to bear its investment loss of RMB26,340,000 and its claim against the Company to bear its production loss of RMB3,960,000 were not justified and were dismissed. The court also ruled that, according to the principle of fairness, the Company should acquire finished products, semi-finished products and raw materials held by Xingyun in the value of RMB3,880,000 according to the quantities, types and prices determined by both parties. Those finished products, semi-finished products and raw materials can still be utilised in the process of production by the Company, and therefore no loss would be incurred.

The period allowed for appeal stipulated in the civil verdict ((2006) Shaan Min Er Chu Zi No. 16) expired on 14 January 2007, and Xingyun has not filed an appeal to the People's Supreme Court of the PRC within such stipulated period.

彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 37. MATERIAL LITIGATIONS *(continued)*

On 11 April 2007, the Company received a writ of summons ((2007) Shaan Min Er Chu Zi No.10)) from the People's High Court of Shaanxi, and was informed that Xingyun brought an action for a second time against the Company in respect of the same matter.

The Company made a written submission to the Court denying all liabilities in response to the allegations made by Xingyun. The Company believes that Xingyun's claim for litigations had no legal and factual basis, therefore its claim should be dismissed. On 23 November 2007, the People's High Court of Shaanxi issued the civil verdict ((2007) Shaan Min Er Chu Zi No. 10). The Court ruled that the claim by Xingyun against the Company demanding for compensation to its investment and other losses totaling RMB30,010,000 was not established and should be dismissed. At present, Xingyun has filed an appeal to the People's Supreme Court of the PRC. The Company has received a writ of summons from the People's Supreme Court on 15 April 2008.

**Baystar Capital II, LP et al. v. Core-Pacific Yamaichi International (HK) Ltd. et al., Case No 05 1091 ABC (CWx) (filed in the United States District Court for the Central District of California) (the "Baystar Litigation")**

On or about 11 February 2005, BayStar Capital Management, LLC and BaystarCapital II, LP (hereinafter collectively referred to as "Baystar"), holders of the Company's H shares, commenced a litigation against Core-Pacific Yamaichi International (H.K.) Limited, et.al (hereinafter referred to as "CPYI"), one of the underwriters that offered the Company's H shares to investors in the United States pursuant to Rule 144A of the Securities Act of the USA. Baystar alleges that it entered into a strategic business development agreement with CPYI, pursuant to which CPYI acted as an investment consultant to Baystar in the greater China area. Baystar claims that CPYI breached the agreement and its fiduciary duties to Baystar. In addition, Baystar alleges that CPYI made material misrepresentations and omissions to Baystar, in violation of United States federal and state securities laws and the common law. Baystar has not commenced any action against the Company.

On or about 20 May 2005, CPYI commenced a third-party action against the Company and the lead underwriter of the Company, as part of the Baystar Litigation. CPYI seeks contractual and common law indemnification and / or contribution from the Company in the event that CPYI is found liable to Baystar.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 37. MATERIAL LITIGATIONS *(continued)*

A copy of the third-party complaint was served by Law Debenture Society on the Company on or about 11 June 2005. The Company has retained a law firm to represent the Company in the litigation. On 18 August 2005, such law firm filed a motion to dismiss the third-party complaint in its entirety. On 13 October 2005, the Court granted in part and denied in part the motion to dismiss. Thereafter, on 7 November 2005, the Company filed an answer to CPYI's claims, denying all liability.

Because no party has identified a single material misrepresentation or omission made by the Company in the offering circular, the Company filed a motion for summary judgment on 15 May 2006. On 9 August 2006 the Court partly dismissed the motion, and the discovery procedure and the expected litigation procedure continued to proceed. Pursuant to the schedule approved by the Court, the closing date of the discovery procedure was postponed to 1 December 2006. The trial by jury was started on 1 May 2007.

Upon completion of the discovery procedure, summary judgment commenced for Core Pacific and Baystar. The Court granted Core Pacific's motion and dismissed the rights appeal that may be implied in all the litigations of Core Pacific. Shortly thereafter, Core Pacific approached the Company and offered to dismiss the claim for damages against the Company. Ne payment or compensation in respect of the litigation is required from the Company. The Company accepted the offer and signed the settlement proposal with the relevant parties on 5 October, 2007. Therefore, the litigation has ended.

The result of the above litigations has no material impact on the 2007 financial statement of the Group.

彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 38. COMMITMENTS

Capital expenditure at the balance sheet date but not yet incurred is as follows:

|  | The Group | |
|---|---|---|
|  | **2007** | 2006 |
|  | ***RMB'000*** | *RMB'000* |
| Authorised but not contracted for |  |  |
| — Construction and renovation |  |  |
|   of production lines for CPTs | — | 19,694 |
| — Construction and renovation |  |  |
|   of production lines for CPT components | — | 4,387 |
|  | — | 24,081 |
| Contracted but not provided for |  |  |
| — Investment in an associate | — | 110,000 |
| — Construction and renovation |  |  |
|   of production lines for CPTs | — | 18,797 |
| — Construction and renovation |  |  |
|   of production lines for CPT components | **27,550** | 932 |
|  | **27,550** | 129,729 |
|  | **27,550** | 153,810 |

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 38. COMMITMENTS *(continued)*

**As lessee**

The future aggregate minimum lease payments under non-cancelable operating leases are as follows:

| | The Group | | | | The Company | | | |
|---|---|---|---|---|---|---|---|---|
| | Land use rights | | Property, plant and equipment | | Land use rights | | Property, plant and equipment | |
| | 2007 | 2006 | 2007 | 2006 | 2007 | 2006 | 2007 | 2006 |
| | RMB'000 | RMB'000 | RMB'000 | RMB'000 | RMB'000 | RMB'000 | RMB'000 | RMB'000 |
| Not later than one year | 4,603 | 4,603 | 35,315 | 32,668 | 3,584 | — | 23,677 | — |
| Later than one year and not later than five years | 4,603 | 9,205 | 34,858 | 65,337 | 3,584 | — | 23,677 | — |
| | 9,206 | 13,808 | 70,173 | 98,005 | 7,168 | — | 47,354 | — |

The Group and the Company leases its land use rights and property, plant and equipment under operating lease arrangements with leases negotiated for terms of an average of three and three years respectively.

**As lessor**

At the balance sheet date, an investment property is leased out for a period of 3 years from the date of commencement of operation of a lessee that occupies the property and the lease did not have any renewal options given to the lessee. The rental yield for the year ended 31 December 2007 is 30.4%. The Group had contracted with tenants for the following future minimum lease payments:

| | The Group | |
|---|---|---|
| | 2007 | 2006 |
| | RMB'000 | RMB'000 |
| Within one year | 419 | — |
| In the second to fifth years inclusive | 192 | — |
| | 611 | — |

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 39. RELATED-PARTY TRANSACTIONS

The Group is controlled by IRICO Group Corporation (incorporated in the PRC), which owns 75% of the Company's shares. The remaining 25% of the shares are widely held.

Related parties include IRICO Group Corporation and its subsidiaries (other than the Group), associates and jointly controlled entities (hereinafter collectively referred to the "IRICO Group"), corporations in which the Company is able to control, jointly control or exercise significant influence, key management personnel of the Company and IRICO Group Corporation and their close family members. IRICO Group Corporation does not produce financial statements available for public use.

IRICO Group Corporation is controlled by PRC government. In accordance with HKAS 24 "Related Party Disclosures", other state-owned enterprises and their subsidiaries, directly or indirectly controlled by the PRC government are also regarded as related parities of the Group and defined as "Other state controlled enterprise". For purpose of related transaction disclosure, the Group has in place procedures to assist the identification of the immediate ownership structure of its customers and suppliers as to whether they are state-owned companies. Many state-owned enterprises have multi-layered corporate structure and the ownership structures change over time as a result of transfers and privatisation programs. Nevertheless, in the opinions of Directors, the majority of the Group's activities have been conducted with other state controlled enterprises in the Group's ordinary course of business. In the meantime, the meaningful information relating to related party transactions has been adequately disclosed.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 39. RELATED-PARTY TRANSACTIONS *(continued)*

The following transactions were carried out with related parties:

### A.   Sale of goods

|  | 2007<br>RMB'000 | 2006<br>RMB'000 |
|---|---|---|
| Sales of goods to the IRICO Group *(note (i))*: |  |  |
| — The utilities plant of the ultimate<br>  holding company | 75,378 | 4,810 |
| — Shenzhen Hongyang Industry &<br>  Trade Company | 12,239 | 9,612 |
| — Rui Bo Electronics (HK) Limited | 3,324 | 5,044 |
| — Caihong Labour Services Company | 3,066 | 340 |
| — Shaanxi IRICO General Service Corporation | 501 | 346 |
| — Shaanxi IRICO Construction<br>  Engineering Co., Ltd. | 4 | 4 |
|  | 94,512 | 20,156 |
| Other state controlled enterprises | 1,138,139 | 2,258,081 |

*Note:*

(i)     Sales to related parties were conducted at prices not less than cost and with terms mutually agreed
        by both contracting parties.

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 39. RELATED-PARTY TRANSACTIONS *(continued)*

### B.   Purchases of goods and provision of services

| | 2007 RMB'000 | 2006 RMB'000 |
|---|---|---|
| Purchases of goods from the IRICO Group *(note (i))* | | |
| — Shaanxi IRICO General Service Corporation | 41,933 | 49,866 |
| — Caihong Labour Services Company | 37,384 | 74,387 |
| — Xianyang Cailian Packaging Materials Co., Ltd. | 17,787 | 32,613 |
| — Xianyang Caihong Adhesive Belt Co., Ltd. | 2,300 | 5,539 |
| — Shenzhen Hongyang Industry & Trade Company | 49 | 1,086 |
| — Xian Caihong Plastic Co., Ltd. | — | 10,513 |
| | 99,453 | 174,004 |
| Other state controlled enterprises | 534,888 | 609,045 |
| Purchases of property, plant and equipments The IRICO Group | | |
| — Xian Caihong Plastic Co., Ltd. | — | 3,408 |
| — Shenzhen Hongyang Industry & Trade Company | — | 1,059 |
| | — | 4,467 |
| Other state controlled enterprises | — | 12,765 |

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 39. RELATED-PARTY TRANSACTIONS *(continued)*

### B.   Purchases of goods and provision of services *(continued)*

|  | 2007 RMB'000 | 2006 RMB'000 |
|---|---|---|
| Provision of services from the IRICO Group |  |  |
|  |  |  |
| — Utility charges to the utilities plant of the ultimate holding company *(note (ii))* | 397,229 | 454,899 |
| — Rental expense to the ultimate holding company *(note (iii))* | 35,048 | 39,883 |
| — Trademark license fee to the ultimate holding company *(note (v))* | 3,476 | 3,828 |
| — Environmental expenses to Caihong Labour Service Company | 100 | — |
| — School expense to IRICO School *(note (iv))* | — | 6,066 |
| — Social and ancillary service charges from the ultimate holding company *(note (vi))* | — | 3,316 |
| — Shaanxi IRICO Engineering Audit Company | — | 260 |
|  | 435,853 | 508,252 |
|  |  |  |
| Other state controlled enterprises | — | — |

彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 39. RELATED-PARTY TRANSACTIONS *(continued)*

### B.  Purchases of goods and provision of services *(continued)*

*Notes:*

(i)     Purchases from related parties were conducted at prices not less than cost and with terms mutually agreed by both contract parties.

(ii)    Various kinetic energy charges were paid / payable by the companies of the Group to the utilities plant of the ultimate holding company based on the agreed rates for the two years ended 31 December 2007 and 2006 respectively.

(iii)   From 1 January 2004, the Group is required to pay RMB11 per square metre per annum for the use of land use rights and RMB9 and RMB30 per square metre per month for the use of buildings in Xianyang and Beijing respectively, pursuant to the Premises Leasing Agreement. Accordingly, rental charges for the year ended 31 December 2007 amounted to RMB35,048,000 (2006: RMB39,883,000).

(iv)    At 3 November 2006, IRICO School has been transferred to the local government of Xianyang. Accordingly, the school expense to IRICO School is ceased from that date.

(v)     License fee for using the trademark owned by the ultimate holding company was paid by the Group, at 0.1% of sales based on the terms stipulated in agreements. In accordance with the agreement signed by one of the subsidiaries, IRICO Display Devices Co. Ltd., the term is initially for five years from 1998 but renewable automatically unless terminated by either party with a three-month prior notice, and it was revised to end on 31 December 2006. In accordance with the agreement signed by the rest entities of the Group, the license fee is to be paid from 1 January 2004 and the agreement is for a term of 3 years up to 31 December 2006 unless terminated by either party with a three-month prior notice, and it was renewed for a term of 3 years up to 31 December 2009.

(vi)    Social and ancillary service charges for the provision of staff welfare services are paid / payable to the ultimate holding company on a cost reimbursement basis.

### C.  Compensation

In 2006, Caihong Labour Services Company provided certain materials to the Group for trial production on new products. Due to the quality issue of those materials, Caihong Labour Service Company paid compensation of RMB10,007,000 in accordance with related contracts.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 39. RELATED-PARTY TRANSACTIONS *(continued)*

### D.   Balance with ultimate holding company

**(i)**   **Loans from the ultimate holding company - Group**

|  | 2007 | 2006 |
|---|---|---|
|  | RMB'000 | RMB'000 |
| Opening carrying amount | 29,000 | 30,048 |
| Loans borrowed | — | 29,000 |
| Repayment | (30,755) | (31,696) |
| Interest expense *(note 11)* | 1,755 | 1,648 |
| Closing carrying amount | — | 29,000 |

Pursuant to an agreement entered into on 16 December 2004, the Company transferred its titles of certain loans to subsidiaries to the ultimate holding company on 19 December 2004 and offset its amount due to the ultimate holding company. This balance is recorded in the non-trade payables due to the ultimate holding company.

Loans from the ultimate holding company are unsecured, due within one year and with interest rate 6.12% (2006: 6.12%) per annum.

**(ii)**   **Amount due to the ultimate holding company**

|  | The Group | | The Company | |
|---|---|---|---|---|
|  | 2007 | 2006 | 2007 | 2006 |
|  | RMB'000 | RMB'000 | RMB'000 | RMB'000 |
| Other payables and accruals The ultimate holding company | 35,371 | 340,095 | 33,648 | 310,659 |

As at 31 December 2006, except for amount of RMB29,000,000 of the Group due to the ultimate holding company which carried interest at 6.12% per annum and fully repaid on 12 December 2007, the remaining non-trade balances as at 31 December 2006 and 2007 are unsecured, interest-free and have no fixed repayment terms.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 39. RELATED-PARTY TRANSACTIONS *(continued)*

### D. Balance with ultimate holding company *(continued)*

**(iii) Director's emolument afforded by the ultimate holding company**

An executive director of the Company, Mr. Zhang Xing Xi and Mr. Niu Xinan's emolument are afforded by the Group's ultimate holding company, IRICO Group Corporation (note 10).

**(iv) Guarantees granted or assets pledged by the ultimate holding company**

As at 31 December 2007, the ultimate holding company granted a guarantee and pledged certain of its land and buildings to the Company and the Group for certain bank borrowings (note 30).

### E. Key management compensation

|  | 2007 RMB'000 | 2006 RMB'000 |
|---|---|---|
| Salaries and other short-term employee benefits | 3,810 | 3,091 |
| Fees | 500 | 500 |
| Retirement benefit contributions | 101 | 84 |
|  | 4,411 | 3,675 |

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 39. RELATED-PARTY TRANSACTIONS *(continued)*

F.   Year-end balances arising from sales / purchases of goods / provision of services

|  | The Group | | The Company | |
|---|---|---|---|---|
|  | **2007** | 2006 | **2007** | 2006 |
|  | **RMB'000** | RMB'000 | **RMB'000** | RMB'000 |
| Trade receivables from related parties *(note)* | | | | |
| The IRICO Group | | | | |
| — Xianyang IRICO Digital Display Co., Limited | **2,719** | — | **2,719** | — |
| — Shenzhen Hongyang Industry & Trade Company | **2,670** | 2,984 | **2,670** | — |
| — Shaanxi IRICO Electronics Glass Company Limited | **1,371** | — | **1,371** | — |
| — Shaanxi IRICO General Service Corporation | **3** | — | **3** | — |
| — Caihong Labour Service Company | **—** | 5,332 | **—** | — |
| | **6,763** | 8,316 | **6,763** | — |
| Other state controlled enterprises | **549,150** | 950,397 | **265,293** | 224,607 |
| | **555,913** | 958,713 | **272,056** | 224,607 |
| Representing: | | | | |
| Trade receivables *(note 25)* | **239,545** | 335,923 | **52,096** | 88,470 |
| Trade bills receivables *(note 25)* | **316,368** | 622,790 | **219,960** | 136,137 |
| | **555,913** | 958,713 | **272,056** | 224,607 |

**158**  彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 39. RELATED-PARTY TRANSACTIONS *(continued)*

F.    Year-end balances arising from sales / purchases of goods / provision of services *(continued)*

|  | The Group | | The Company | |
|---|---|---|---|---|
|  | **2007** | 2006 | **2007** | 2006 |
|  | **RMB'000** | RMB'000 | **RMB'000** | RMB'000 |
| Trade payables from related parties *(note)* | | | | |
| The IRICO Group | | | | |
| — The utilities plant of the ultimate holding company | **16,200** | 104,965 | **—** | 75,864 |
| — Caihong Labour Service Company | **11,021** | 3,702 | **421** | 2,574 |
| — Shaanxi IRICO General Service Corporation Co., Ltd. | **9,814** | 5,079 | **279** | 820 |
| — The utilities holding company | **8,652** | 8,387 | **8,652** | 8,215 |
| — Xianyang Cailian Package Material Company | **6,825** | 3,581 | **3,618** | 1,654 |
| — Shenzhen Hongyang Industry & Trade Co., Ltd. | **2,979** | 744 | **2,960** | 291 |
| — Xianyang Caihong Adehesive Belt Co., Ltd. | **1,349** | 724 | **—** | 392 |
| — Xianyang Caihong Plastic Co., Ltd. | **—** | 2,100 | **—** | — |
| — Xianyang Caihong Electronic Materials Co. | **—** | 147 | **—** | — |
| | **56,840** | 129,429 | **15,930** | 89,810 |
| Other state controlled enterprises | **82,716** | 108,449 | **61,580** | 74,512 |
| | **139,556** | 237,878 | **77,510** | 164,322 |
| Representing: | | | | |
| Trade payables *(note 28)* | **103,024** | 212,241 | **40,978** | 138,685 |
| Trade bills payables *(note 28)* | **36,532** | 25,637 | **36,532** | 25,637 |
| | **139,556** | 237,878 | **77,510** | 164,322 |

*Note:*

The trade balances in respect of sales and purchases are under the Group's normal trading terms.

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 39. RELATED-PARTY TRANSACTIONS *(continued)*

### G.   Bank balances in and loans from state controlled banks

| | The Group | | The Company | |
|---|---|---|---|---|
| | **2007** | 2006 | **2007** | 2006 |
| | **RMB'000** | RMB'000 | **RMB'000** | RMB'000 |
| Bank balances in state controlled banks | **317,438** | 479,400 | **159,870** | 221,670 |
| Short-term borrowings from state controlled banks | **792,684** | 932,676 | **528,684** | 563,704 |

| | **2007** | 2006 |
|---|---|---|
| | **RMB'000** | RMB'000 |
| Interest income from state controlled banks | **5,371** | 6,521 |
| Interest and finance costs to state controlled banks | **44,075** | 56,512 |

彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# NOTES TO THE FINANCIAL STATEMENTS

YEAR ENDED 31 DECEMBER 2007

## 40. MAJOR NON-CASH TRANSACTIONS

During the year ended 31 December 2007, the Group disposed of its 72.02% equity interest in Xianyang IRICO Digital Display Co., Ltd. to IRICO Group at a consideration of approximately RMB182,527,000 of which RMB35,346,000 was unsettled and included in other receivables as at 31 December 2007.

On 29 July 2007, the Company entered into an exchange agreement with IRICO Display, whereby the Company has agreed to transfer certain of its property, plant and equipment with carrying values of approximately RMB348,246,000 to IRICO Display. Pursuant to the agreement, IRICO Display has agreed to transfer property, plant and equipment of approximately RMB66,601,000 and paid a total cash consideration of approximately RMB221,207,000 to the Company.

## 41. EVENTS AFTER THE BALANCE SHEET DATE

As mentioned in the announcement of the Company dated 17 August 2007, the Company and IRICO Group entered into an acquisition agreement, pursuant to which IRICO Group agreed to sell and the Company agreed to purchase the 69.5308% equity interests held by IRICO Group in Shaanxi IRICO Electronics Glass Company Limited for a total consideration of approximately RMB279.58 million, of which will be settled by the issue of no more than 385,000,000 new H shares of the Company. The transaction has not been completed at the date of this report and is subject to the approval by the State-Owned Assets Supervisor and Administration Commission.

# FIVE YEAR FINANCIAL SUMMARY

| | 2007 RMB'000 | 2006 RMB'000 | 2005 RMB'000 | 2004 RMB'000 | 2003 RMB'000 |
|---|---|---|---|---|---|
| **For the year ended 31 December** | | | | | |
| Results | | | | | |
| Turnover | **3,358,990** | 3,861,710 | 3,927,500 | 4,949,683 | 4,269,781 |
| Profit / (loss) before taxation | **80,577** | 187,543 | (911,956) | 650,250 | 623,116 |
| Taxation | **(8,420)** | (19,828) | (48,377) | (134,468) | (173,936) |
| Profit before minority interests | **72,157** | 167,715 | (960,333) | 515,782 | 449,180 |
| Minority interests | **5,646** | 38,203 | (205,786) | 130,455 | (133,355) |
| Net profit / (loss) attributable to equity holders of the year | **66,511** | 129,512 | (754,547) | 385,327 | 315,825 |
| Assets, liabilities and minority interests | **7,920,331** | 8,801,216 | 9,361,210 | 11,200,106 | 8,771,594 |
| Total assets | **5,083,870** | 5,491,057 | 5,795,426 | 7,121,278 | 5,475,676 |
| Total liabilities | **1,783,723** | 2,274,446 | 2,734,800 | 2,949,962 | 2,288,758 |
| Minority interests | **1,052,738** | 1,035,713 | 830,984 | 1,128,866 | 1,007,160 |

162

彩 虹 集 團 電 子 股 份 有 限 公 司
IRICO GROUP ELECTRONICS COMPANY LIMITED

# Corporate Information

## Introduction

### Executive Directors

Xing Daoqin                    *Chairman*
Tao Kui                        *Vice Chairman*
Guo Mengquan
Zhang Shaowen
Niu Xinan
Li Shikun                      *Chief Financial Controller*

### Non-executive Director

Zhang Xingxi

### Independent Non-executive Directors

Xu Xinzhong
Feng Bing
Wang Jialu
Zhong Pengrong
Lv Hua

### Audit Committee

Lv Hua
Feng Bing
Zhong Pengrong
Xu Xinzhong
Zhang Xingxi

### Joint Company Secretaries

Liu Xiaodong
Lam Chun Lung

# Corporate Information (Continued)

## Introduction *(continued)*

### Qualified accountant

Lam Chun Lung

### Authorised representative

Niu Xinan
Liu Xiaodong

### Legal address in the PRC

No. 1 Caihong Road
Xianyang, Shaanxi Province
The People's Republic of China
Postal code: 712021

### Place of business in Hong Kong

Room 3103, 31st Floor
Convention Tower, 1 Wanchai Road
Hong Kong

### Company website

www.irico.com.cn

### Legal adviser

Baker & McKenzie
14th Floor, Hutchison House
10 Harcourt Road
Hong Kong

### Auditors

Shine Wing (HK) CPA Limited
16/F, United Centre, 95 Queensway,
Hong Kong

彩 虹 集 團 電 子 股 份 有 限 公 司
**IRICO GROUP ELECTRONICS COMPANY LIMITED**

# Corporate Information (Continued)

## Introduction *(continued)*

### Principal bankers
Industrial and Commercial Bank of China (Xianyang Branch)
Construction Bank of China (Xianyang Branch)
Industrial and Commercial Bank of China (Xian Advanced Technology Development Zone Branch)
Industrial and Commercial Bank of China (Xian Branch)

### Registrar of H Shares
Computershare Hong Kong Investor Services Limited
Room 1712 - 1716, 17th Floor, Hopewell Center
183 Queen's Road East
Hong Kong

### Investor and media relations
Wonderful Sky Financial Group
Unit 3103, 31st Floor, Office Tower
Convention Plaza,1 Harbour Road
Hong Kong

# EXHIBIT 5



consortra
translations

STATE of NEW YORK      )
                       )          ss:
COUNTY of NEW YORK     )

### *CERTIFICATE OF ACCURACY*

This is to certify that the attached excerpts from the document, *IDD annual report 2007*, originally written in *Chinese,* are to the best of our knowledge and belief, true, accurate and complete translations into *English.*

Dated: December 6, 2017

*Allison Carey*
Allison Carey
Consortra Translations

Sworn to and signed before ME this
6ᵗʰ day of *December*,
2017.

_____
Notary Public

JAMES G. MAMERA
Notary Public- State of New York
No. 01MA6157195
Qualified In New York County
My Commission Expires December 4, 2018

Your
legal
translation
partner

Excerpts from:
"IRICO Display Devices, Co., Ltd.
600707
2007 Annual Report"

Page 2:

  6. Company A Share Public Stock Exchange: Shanghai Stock Exchange
     Company A Share Abbreviation: IRICO Shares [Cai Hong Gu Fen]
     Company A Share Code: 600707

Page 6: *[Headings and first row of large table]*

  (2) Shareholder Situation

  1. Number of Shareholders and Holdings

                                                                    Units: Shares

| Total number of shareholders at the end of reporting period | 58, 227 |
|---|---|

Page 8:

  (4) Chart of Company and actual controller's holding rights and control relationships



Page 12, under item VI (1):

>2. Controlling shareholder and listed company

>Has achieved separation and independence from the controlling shareholder in the five areas of business, personnel, assets, institutions, and finance. The Company's Board of Directors and Board of Supervisors both maintain independent operations, ensuring independence for the Company's major decisions.

Page 19.

>3. Business Plan for the New Year
>The Company's main business target for 2008: Sell 15.38 million color tubes, sales revenue of RMB 3.25 billion yuan.
>To realize this plan, we will take the following primary measures:
>(1) Expand research, establish complete medium- to long-term corporate strategy development planning, clarify targets and mission, use scientific planning to guide the Company's establishment and development.
>(2) Push to execute precision management, insert the concept of precision management into each task, enhance the Company's management level across the board .
>(3) Fully utilize synergy in "sales, production, supply, and research," using market sales as the source, continue executing a leading-by-sales strategy to grab strategic customers, nurture long-term customers, and bring along medium and small customers, pursue capacity utilization as well as market share, and particularly pursue sales-profit ratio.
>(4) Continue to promote a total cost leadership strategy, with "full spectrum, continual cost reduction" as a work focus, simultaneously emphasizing product quality and satisfying user needs, and enhancing overall product market competitiveness and capacity to generate profits.

Page 69:

>18. Taxes payable.

| Type of Tax | Applicable Tax Rate | 12/31/2007 | 12/31/2006 |
|---|---|---|---|
| Value Added Tax | 17.00% | -9,847,712.22 | 1,094,877.30 |
| Business Tax | 5.00% | 8,341.52 | 11,445.00 |
| City Maintenance and Construction Tax | 7.00% | 157,064.48 | 1,347,950.86 |
| Corporate Income Tax | 15.00% | 0.00 | -120,563.59 |
| Personal Income Tax | - | 272,495.68 | 404,362.43 |
| Stamp Tax | - | 50,000.00 | 0.00 |
| Education Fee Supplement | 3.00% | 283,412.88 | 1,793,792.74 |
| Water Conservancy Construction Fund | 0.08% | 313,998.99 | 262,690.74 |
| Total | | -8,762,398.78 | 4,794,555.46 |

# 彩虹显示器件股份有限公司

**600707**

# 2007 年年度报告

彩虹显示器件股份有限公司 2007 年年度报告

# 目　录

一、重要提示 ...................................................................................................................................2

二、公司基本情况简介 ...................................................................................................................2

三、主要财务数据和指标 ...............................................................................................................3

四、股本变动及股东情况 ...............................................................................................................4

五、董事、监事和高级管理人员 ...................................................................................................9

六、公司治理结构 .........................................................................................................................12

七、股东大会情况简介 .................................................................................................................14

八、董事会报告 .............................................................................................................................15

九、监事会报告 .............................................................................................................................25

十、重要事项 .................................................................................................................................26

十一、财务会计报告 .....................................................................................................................32

十二、备查文件目录 .....................................................................................................................89

彩虹显示器件股份有限公司 2007 年年度报告

**一、重要提示**

1、本公司董事会、监事会及董事、监事、高级管理人员保证本报告所载资料不存在任何虚假记载、误导性陈述或者重大遗漏，并对其内容的真实性、准确性和完整性承担个别及连带责任。

2、公司全体董事出席董事会会议。

3、信永中和会计师事务所有限责任公司为本公司出具了标准无保留意见的审计报告。

4、公司负责人邢道钦先生，主管会计工作负责人姜阿合先生及会计机构负责人（会计主管人员）邱东风女士声明：保证年度报告中财务报告的真实、完整。

**二、公司基本情况简介**

1、　公司法定中文名称：彩虹显示器件股份有限公司
　　　公司法定中文名称缩写：彩虹股份
2、　公司法定代表人：邢道钦
3、　公司董事会秘书：刘晓东
　　　电话：029-33332866
　　　传真：029-33333852
　　　E-mail：gfoffice@ch.com.cn
　　　联系地址：陕西省咸阳市彩虹路一号
　　　公司证券事务代表：郑涛
　　　电话：029-33333853
　　　传真：029-33333852
　　　E-mail：gfoffice@ch.com.cn
　　　联系地址：陕西省咸阳市彩虹路一号
4、　公司注册地址：西安高新技术开发区西区
　　　公司办公地址：陕西省咸阳市彩虹路一号
　　　邮政编码：712021
　　　公司国际互联网网址：www.iricoltd.com.cn
　　　公司电子信箱：gfoffice@ch.com.cn
5、　公司信息披露报纸名称：《中国证券报》、《证券时报》
　　　登载公司年度报告的中国证监会指定国际互联网网址：www.sse.com.cn
　　　公司年度报告备置地点：公司董事会办公室
6、　公司 A 股上市交易所：上海证券交易所
　　　公司 A 股简称：彩虹股份
　　　公司 A 股代码：600707
7、　其他有关资料
　　　公司首次注册登记日期和地点：1992 年 7 月 29 日　咸阳
　　　公司变更注册登记日期和地点：2001 年 9 月 28 日　西安
　　　公司法人营业执照注册号：610000100063235
　　　公司税务登记号码：陕国税字 610198220533028
　　　公司组织结构代码：22053302-8
　　　公司聘请的境内会计师事务所名称：信永中和会计师事务所有限责任公司
　　　公司聘请的境内会计师事务所办公地址：北京市东城区朝阳门北大街 8 号富华大厦 A 座 9 层

彩虹显示器件股份有限公司 2007 年年度报告

### 三、主要财务数据和指标：
#### （一）本报告期主要财务数据

单位:元 币种:人民币

| 项目 | 金额 |
|---|---|
| 营业利润 | -28,948,650.49 |
| 利润总额 | -27,201,834.79 |
| 归属于上市公司股东的净利润 | -28,433,627.98 |
| 归属于上市公司股东的扣除非经常性损益后的净利润 | -59,077,332.69 |
| 经营活动产生的现金流量净额 | 33,552,712.51 |

#### （二）扣除非经常性损益项目和金额

单位:元 币种:人民币

| 非经常性损益项目 | 金额 |
|---|---|
| 以前年度计提各项减值准备转回 | 724,001.41 |
| 非流动资产处置损益 | 28,048,406.26 |
| 计入当期损益的政府补助 | 3,000,000.00 |
| 除上述各项之外的其他营业外收支净额 | -1,224,005.49 |
| 非经常性损益合计 | 30,548,402.18 |
| 其中：归属于上市公司股东 | 30,643,704.71 |

#### （三)报告期末公司前三年主要会计数据和财务指标

单位:元 币种:人民币

| 主要会计数据 | 2007 年 | 2006 年 | | 本年比上年增减(%) | 2005 年 |
|---|---|---|---|---|---|
| | | 调整后 | 调整前 | | |
| 营业收入 | 1,705,696,095.72 | 2,067,039,893.50 | 2,067,039,894 | -17.48 | 2,130,567,191.87 |
| 利润总额 | -27,201,834.79 | 16,075,335.36 | 21,535,884 | -269.21 | -563,871,895.88 |
| 归属于上市公司股东的净利润 | -28,433,627.98 | 15,453,679.24 | 19,762,298 | -283.99 | -551,567,005.63 |
| 归属于上市公司股东的扣除非经常性损益的净利润 | -59,077,332.69 | 5,190,966.48 | 7,025,507 | -1238.08 | -553,672,844.07 |
| 基本每股收益 | -0.07 | 0.04 | 0.05 | -275.00 | -1.31 |
| 稀释每股收益 | -0.07 | 0.04 | 0.05 | -275.00 | -1.31 |
| 扣除非经常性损益后的基本每股收益 | -0.14 | 0.01 | 0.02 | -1500.00 | -1.31 |
| 全面摊薄净资产收益率（%） | -1.99 | 1.12 | 1.42 | 减少 3.11 个百分点 | -40.17 |
| 加权平均净资产收益率（%） | -2.06 | 1.12 | 1.43 | 减少 3.18 个百分点 | -32.02 |
| 扣除非经常性损益后全面摊薄净资产收益率（%） | -4.14 | 0.37 | 0.51 | 减少 4.51 个百分点 | -40.32 |
| 扣除非经常性损益后的加权平均净资产收益率（%） | -4.29 | 0.38 | 0.51 | 减少 4.67 个百分点 | -32.14 |
| 经营活动产生的现金流量净额 | 33,552,712.51 | 39,359,331.21 | 39,359,331 | -14.75 | 170,309,527.68 |
| 每股经营活动产生的现金流量净额 | 0.08 | 0.09 | 0.09 | -11.11 | 0.40 |
| | 2007 年末 | 2006 年末 | | 本年末比上年末增减%) | 2005 年末 |
| | | 调整后 | 调整前 | | |
| 总资产 | 2,042,414,249.22 | 2,146,988,770.66 | 2,144,410,636 | -4.87 | 2,227,812,845.77 |
| 所有者权益（或股东权益） | 1,427,758,567.56 | 1,385,482,423.15 | 1,389,659,618 | 3.05 | 1,373,070,664.53 |
| 归属于上市公司股东的每股净资产 | 3.39 | 3.29 | 3.30 | 3.04 | 3.26 |

彩虹显示器件股份有限公司 2007 年年度报告

## 四、股本变动及股东情况

(一)股本变动情况

1、股份变动情况表

单位:股

| | 本次变动前 | | 本次变动增减(＋，－) | | | | | 本次变动后 | |
|---|---|---|---|---|---|---|---|---|---|
| | 数量 | 比例(%) | 发行新股 | 送股 | 公积金转股 | 其他 | 小计 | 数量 | 比例(%) |
| 一、有限售条件股份 | | | | | | | | | |
| 1、国家持股 | | | | | | | | | |
| 2、国有法人持股 | 180,675,565 | 42.90 | | | | -19,266,021 | -19,266,021 | 161,409,544 | 38.32 |
| 3、其他内资持股 | 36,497,618 | 8.67 | | | | -18,698,594 | -18,698,594 | 17,799,024 | 4.23 |
| 其中: | | | | | | | | | |
| 境内法人持股 | 36,497,618 | 8.67 | | | | -18,698,594 | -18,698,594 | 17,799,024 | 4.23 |
| 境内自然人持股 | | | | | | | | | |
| 4、外资持股 | 0 | 0 | | | | +469,557 | +469,557 | 469,557 | 0.11 |
| 其中: | | | | | | | | | |
| 境外法人持股 | 0 | 0 | | | | +469,557 | +469,557 | 469,557 | 0.11 |
| 境外自然人持股 | | | | | | | | | |
| 有限售条件股份合计 | 217,173,183 | 51.57 | | | | -37,495,058 | -37,495,058 | 179,678,125 | 42.66 |
| 二、无限售条件流通股份 | | | | | | | | | |
| 1、人民币普通股 | 203,975,617 | 48.43 | | | | 37,495,058 | 37,495,058 | 241,470,675 | 57.34 |
| 2、境内上市的外资股 | | | | | | | | | |
| 3、境外上市的外资股 | | | | | | | | | |
| 4、其他 | | | | | | | | | |
| 无限售条件流通股份合计 | 203,975,617 | 48.43 | | | | 37,495,058 | 37,495,058 | 241,470,675 | 57.34 |
| 三、股份总数 | 421,148,800 | 100.00 | | | | | | 421,148,800 | 100.00 |

## 股份变动的批准情况

1)、国有法人股东彩虹集团电子股份有限公司(以下简称"彩虹电子"(0438 HK))本年度末持有有限售条件的流通股为 161,409,544 股,减少了 19,266,021 股,主要是由于其持有的限售股份 21,057,440 股限售期满,于 2007 年 7 月 31 日上市流通;另外,截止报告期末,西安飞机工业(集团)有限责任公司、上海天迪科技投资发展有限公司、西北大学印刷厂等 9 家有限售条件的流通股东分别与彩虹电子签订了《关于偿付股权分置改革对价的协议》,向彩虹电子偿还了代垫股份合计 1,791,419 股,上述股份偿还已办理完成了股权过户手续。

2)、其他法人持有的有限售条件的流通股减少主要是由于其中部分法人持有的有限售条件的流通股限售期满,于 2007 年 7 月 31 日上市流通以及西安飞机工业(集团)有限责任公司等 9 家有限售条件的流通股东向彩虹电子偿还了代垫股份所致。

3)、无限售条件流通股份增加主要是根据股权分置改革方案承诺的内容,原有限售条件的流通股限售期满上市流通所致。公司《有限售条件的流通股上市公告》详见 2007 年 7 月 24 日的《中国证券报》和《证券时报》。

彩虹显示器件股份有限公司 2007 年年度报告

**股份变动的过户情况**

1）、原有限售条件的流通股股东中国电子进出口公司陕西公司通过司法拍卖的形式将其持有的 720,000 股分别转让给了 MELLON HBV MASTER GLOBAL EVENT DRIVEN FUND L.P. 600,000 股、北京祥恒科技有限公司 120,000 股，并分别于 2007 年 8 月 3 日和 2007 年 7 月 27 日办理完成了股权过户手续。

2）、2007 年 12 月 4 日原有限售条件的流通股股东咸阳偏转线圈股份有限公司将其持有的 720,000 股股权更正登记到咸阳偏转集团公司名下。

**2、限售股份变动情况表**

单位:股

| 股东名称 | 年初限售股数 | 本年解除限售股数 | 本年增加限售股数 | 年末限售股数 | 限售原因 | 解除限售日期 |
|---|---|---|---|---|---|---|
| 彩虹集团电子股份有限公司 | 180,675,565 | 21,057,440 | 1,791,419 | 161,409,544 | 股改承诺 | 根据股改承诺剩余限售股份将分别于 2008 年 7 月 31 日和 2009 年 7 月 31 日解除限售 |
| 西安雅轩商贸有限责任公司 | 4,695,569 | 4,695,569 | | 0 | | |
| 蛇口社会保险公司 | 2,817,341 | 2,817,341 | | 0 | | |
| 乌鲁木齐市商业银行股份有限公司 | 1,878,227 | 1,878,227 | | 0 | | |
| 中化国际石油公司 | 1,878,227 | 1,878,227 | | 0 | | |
| 中金辐照有限公司 | 939,114 | 939,114 | | 0 | | |
| 陕西彩虹三产总公司 | 860,854 | 860,854 | | 0 | | |
| 上海谦益投资咨询有限公司 | 704,335 | 704,335 | | 0 | | |
| 丽水市华东电力防护器材有限公司 | 657,380 | 657,380 | | 0 | | |
| 珠海经济特区彩珠工贸公司 | 488,339 | 488,339 | | 0 | | |
| 深圳市通乾投资股份有限公司 | 469,557 | 469,557 | | 0 | | |
| 陕西华信科工贸有限公司 | 313,037 | 313,037 | | 0 | | |
| 上海言福贸易有限公司 | 187,823 | 187,823 | | 0 | | |
| 西安市金属材料公司南郊供应站 | 187,823 | 187,823 | | 0 | | |
| 新居室杂志社 | 93,911 | 93,911 | | 0 | | |
| 西安京都汽车运输处 | 93,911 | 93,911 | | 0 | | |
| 北京冠华教育咨询有限公司 | 93,911 | 93,911 | | 0 | | |
| 中国华融资产管理公司乌鲁木齐办事处 | 78,259 | 78,259 | | 0 | | |
| 西安飞机工业(集团)有限责任公司 | 2,400,000 | 0 | | 1,878,227 | | 2008 年 3 月 3 日 |
| 上海天迪科技投资发展有限公司 | 1,800,000 | 0 | | 1,408,671 | | 2008 年 3 月 3 日 |
| 西北大学印刷厂 | 1,200,000 | 0 | | 939,114 | | 2008 年 3 月 3 日 |
| 咸阳偏转集团公司 | 720,000 | 0 | | 563,468 | | 2008 年 3 月 3 日 |
| MELLON HBV MASTER GLOBAL EVENT DRIVEN FUND LP | 600,000 | 0 | | 469,557 | | 2008 年 3 月 3 日 |
| 咸阳市渭城区底张机械厂 | 600,000 | 0 | | 469,557 | | 2008 年 3 月 3 日 |
| 广州华南信息产业有限公司 | 600,000 | 0 | | 469,557 | | 2008 年 3 月 3 日 |
| 浙江众鑫投资咨询有限公司 | 200,000 | 0 | | 156,519 | | 2008 年 3 月 3 日 |
| 北京祥恒科技有限公司 | 120,000 | 0 | | 93,911 | | 2008 年 3 月 3 日 |
| 其他 | 11,820,000 | 0 | | 11,820,000 | 尚未偿还股改股垫付的股份 | |
| 合计 | 217,173,183 | 37,495,058 | 1,791,419 | 179,678,125 | — | — |

彩虹显示器件股份有限公司 2007 年年度报告

3、证券发行与上市情况

(1) 前三年历次证券发行情况

截止本报告期末至前三年，公司未有证券发行与上市情况。

(2) 公司股份总数及结构的变动情况

报告期内没有因送股、配股等原因引起公司股份总数及结构的变动。

(3) 现存的内部职工股情况

本报告期末公司无内部职工股。

(二)股东情况

1、股东数量和持股情况

单位：股

| 报告期末股东总数 | | | | | | 58,227 |
|---|---|---|---|---|---|---|
| 前十名股东持股情况 | | | | | | |
| 股东名称 | 股东性质 | 持股比例(%) | 持股总数 | 报告期内增减 | 持有有限售条件股份数量 | 质押或冻结的股份数量 |
| 彩虹集团电子股份有限公司 | 国有法人 | 41.36 | 174,189,544 | -6,486,021 | 161,409,544 | 无 |
| 浙江兰申信息科技投资有限公司 | 其他 | 1.71 | 7,200,000 | 0 | 7,200,000 | 质押7,200,000 |
| 西安雅轩商贸有限责任公司 | 其他 | 0.97 | 4,100,000 | -595,569 | 0 | 无 |
| 乌鲁木齐市商业银行股份有限公司 | 其他 | 0.45 | 1,878,227 | 0 | 0 | 无 |
| 西安飞机工业(集团)有限责任公司 | 其他 | 0.45 | 1,878,227 | -521,773 | 1,878,227 | 无 |
| 中化国际石油公司 | 其他 | 0.45 | 1,878,227 | 0 | 0 | 无 |
| 陶心娴 | 其他 | 0.41 | 1,741,978 | 1,741,978 | 0 | 未知 |
| 陕西泰德实业有限公司 | 其他 | 0.36 | 1,500,000 | 0 | 1,500,000 | 冻结1,500,000 |
| 上海天迪科技投资发展有限公司 | 其他 | 0.33 | 1,408,671 | -391,329 | 1,408,671 | 无 |
| 王俊英 | 其他 | 0.33 | 1,407,329 | 1,407,329 | 0 | 未知 |
| 前十名无限售条件股东持股情况 | | | | | | |
| 股东名称 | | 持有无限售条件股份数量 | | 股份种类 | | |
| 彩虹集团电子股份有限公司 | | 12,780,000 | | 人民币普通股 | | |
| 西安雅轩商贸有限责任公司 | | 4,100,000 | | 人民币普通股 | | |
| 乌鲁木齐市商业银行股份有限公司 | | 1,878,227 | | 人民币普通股 | | |
| 中化国际石油公司 | | 1,878,227 | | 人民币普通股 | | |
| 陶心娴 | | 1,741,978 | | 人民币普通股 | | |
| 王俊英 | | 1,407,329 | | 人民币普通股 | | |
| 潘元庆 | | 1,394,700 | | 人民币普通股 | | |
| 程晓薇 | | 1,391,000 | | 人民币普通股 | | |
| 北京和谐生活投资有限公司 | | 1,368,355 | | 人民币普通股 | | |
| 邱剑芳 | | 1,100,000 | | 人民币普通股 | | |
| 上述股东关联关系或一致行动关系的说明 | | 彩虹集团电子股份有限公司与其他股东之间不存在关联关系或一致行动情况。本公司未知其他股东之间是否存在关联关系或一致行动人情况。 | | | | |

彩虹显示器件股份有限公司 2007 年年度报告

前十名有限售条件股东持股数量及限售条件

单位：股

| 序号 | 有限售条件股东名称 | 持有的有限售条件股份数量 | 有限售条件股份可上市交易情况 | | 限售条件 |
|---|---|---|---|---|---|
| | | | 可上市交易时间 | 新增可上市交易股份数量 | |
| 1 | 彩虹集团电子股份有限公司 | 161,409,544 | 2008 年 7 月 31 日 | 21,057,440 | 股改革方案实施完成后第二年（2008年 7 月 31 日）可上市流通 21,057,440 股，第三年（2009年 7 月 31 日）剩余有限售条件的流通股全部上市流通。 |
| 2 | 浙江兰申信息科技投资有限公司 | 7,200,000 | | | 偿还垫付股份后 |
| 3 | 西安飞机工业(集团)有限责任公司 | 1,878,227 | 2008 年 3 月 3 日 | 1,878,227 | |
| 4 | 陕西泰德实业有限公司 | 1,500,000 | | | 偿还垫付股份后 |
| 5 | 上海天迪科技投资发展有限公司 | 1,408,671 | 2008 年 3 月 3 日 | 1,408,671 | |
| 6 | 深圳海达科技公司 | 1,080,000 | | | 偿还垫付股份后 |
| 7 | 西北大学印刷厂 | 939,114 | 2008 年 3 月 3 日 | 939,114 | |
| 8 | 陕西省高教仪器设备公司 | 600,000 | | | 偿还垫付股份后 |
| 9 | 咸阳偏转集团公司 | 563,468 | 2008 年 3 月 3 日 | 563,468 | |
| 10 | 咸阳市渭城区底张机械厂 | 469,557 | 2008 年 3 月 3 日 | 469,557 | |

注：上述股东中浙江兰申信息科技投资有限公司、陕西泰德实业有限公司、深圳海达科技公司和陕西省高教仪器设备公司尚未支付股改对价，由本公司控股股东彩虹集团电子股份有限公司垫付，若日后上述股东所持的原非流通股股份上市流通，须向彩虹电子支付所垫付的对价，垫付期间有分红派息的还应归还垫付股份相应的红利及按同期银行存款利率计算的利息，并取得彩虹电子的同意，同时由本公司向上交所提出该股份的上市流通申请。

2、控股股东及实际控制人简介

(1) 法人控股股东情况
控股股东名称：彩虹集团电子股份有限公司
法人代表：邢道钦
注册资本：194,117.40 万元
成立日期：2004 年 9 月 10 日
主要经营业务或管理活动：彩色显示器件及其配套产品和材料、电子器件、电真空器件、电子产品的研究、开发、制造、销售。

(2) 法人实际控制人情况

实际控制人名称：彩虹集团公司
法人代表：邢道钦
注册资本：100,000 万元
成立日期：1995 年 9 月 10 日
主要经营业务或管理活动：彩色显像管、显示管、彩色电视机、显示器及其配套产品、电子器件、电真空器件、电子产品的研究、开发、制造。

(3) 控股股东及实际控制人变更情况
本报告期内公司控股股东及实际控制人没有发生变更。

彩虹显示器件股份有限公司 2007 年年度报告

⑷ 公司与实际控制人之间的产权及控制关系的方框图



3、其他持股在百分之十以上的法人股东
截止本报告期末公司无其他持股在百分之十以上的法人股东。

## 五、董事、监事和高级管理人员

(一)董事、监事、高级管理人员情况

单位:股

| 姓名 | 职务 | 性别 | 年龄 | 任期起始日期 | 任期终止日期 | 年初持股数 | 年末持股数 | 报告期内从公司领取的报酬总额(万元)(税前) | 是否在股东单位或其他关联单位领取报酬津贴 |
|---|---|---|---|---|---|---|---|---|---|
| 邢道钦 | 董事长 | 男 | 53 | 2007 年 11 月 29 日 | 2008 年 9 月 20 日 | 0 | 0 | | 是 |
| 郭盟权 | 副董事长 | 男 | 51 | 2007 年 11 月 29 日 | 2008 年 9 月 20 日 | 0 | 0 | — | 是 |
| 张少文 | 董事 | 男 | 46 | 2007 年 11 月 29 日 | 2008 年 9 月 20 日 | 0 | 0 | — | 是 |
| 王西民 | 董事、总经理 | 男 | 53 | 2007 年 11 月 29 日 | 2008 年 9 月 20 日 | 0 | 0 | — | 是 |
| 赵守国 | 独立董事 | 男 | 45 | 2005 年 9 月 20 日 | 2008 年 9 月 20 日 | 0 | 0 | 30,000 | 否 |
| 张天西 | 独立董事 | 男 | 52 | 2005 年 9 月 20 日 | 2008 年 9 月 20 日 | 0 | 0 | 30,000 | 否 |
| 刘汝林 | 独立董事 | 男 | 62 | 2005 年 9 月 20 日 | 2008 年 9 月 20 日 | 0 | 0 | 30,000 | 否 |
| 葛 迪 | 监事会主席 | 男 | 48 | 2005 年 9 月 20 日 | 2008 年 9 月 20 日 | 0 | 0 | — | 是 |
| 王 琪 | 监事 | 女 | 49 | 2007 年 6 月 27 日 | 2008 年 9 月 20 日 | 0 | 0 | — | 是 |
| 李加顺 | 职工监事 | 男 | 46 | 2005 年 9 月 20 日 | 2008 年 9 月 20 日 | 0 | 0 | 86,786 | 否 |
| 李 淼 | 副总经理 | 男 | 43 | 2007 年 11 月 29 日 | 2008 年 9 月 20 日 | 0 | 0 | — | 是 |
| 姜阿合 | 财务总监 | 男 | 52 | 2007 年 11 月 29 日 | 2008 年 9 月 20 日 | 0 | 0 | — | 是 |
| 刘晓东 | 董事会秘书 | 男 | 36 | 2005 年 9 月 20 日 | 2008 年 9 月 20 日 | 0 | 0 | 101,174 | 否 |
| 合 计 | / | / | / | / | / | | | 277,960 | |

注: 报告期内,公司更换了 4 名董事、1 名监事和 4 名高级管理人员;报告期内公司实际支付董事、监事及高级管理人员(包含现任及报告期内离任人员)的税前报酬总额为 76.61 万元。

董事、监事、高级管理人员最近 5 年的主要工作经历:

(1) 邢道钦,1996 年 9 月至 2004 年 9 月任彩虹集团公司副总经理;2004 年 9 月至 2005 年 6 月任彩虹集团公司副总经理、彩虹集团电子股份有限公司总裁;2005 年 7 月起至今任彩虹集团公司总经理、彩虹集团电子股份有限公司董事长。

(2) 郭盟权,2001 年 3 月至今担任彩虹集团公司副总经理;曾于 2005 年至 2007 年兼任彩虹集团电子股份有限公司总裁;2006 年 10 月起至今担任陕西彩虹电子玻璃有限公司董事长。

(3) 张少文,2001 年至今任彩虹集团公司副总经理。

(4) 王西民,2001 年 4 月至 2004 年 12 月,任彩虹集团公司生产部部长;2004 年 12 月至 2005 年 7 月,任彩虹集团电子股份有限公司总裁助理、运营管理部总经理;2005 年 8 月起,任彩虹集团电子股份有限公司副总裁;2005 年 9 月至 2007 年 11 月任本公司董事长;2007 年 11 月起任本公司董事、总经理。

(5) 赵守国,2001 年至今任西北大学经济管理学院副院长、教授、博士生导师。

(6) 张天西,2000 年 4 月至 2003 年 1 月,任西安交通大学会计学院会计学教授、院长;2004 年 10 月至今任上海交通大学安泰管理学院会计系主任。

(7) 刘汝林，1993 年 9 月至 2005 年 6 月，任电子部信息产业部综合规划司处长、副司长；2005 年 6 月至今任中国电子学会秘书长。

(8) 葛迪，2001 年 4 月至 2007 年 3 月任彩虹玻璃厂厂长；2007 年 3 月至今任彩虹集团电子股份有限公司金属部品事业部部长；2007 年 3 月至今兼任彩泰电子器件有限公司董事长、彩虹电子配件有限公司董事长；2007 年 12 月至今任彩虹集团电子股份有限公司总裁助理。

(9) 王琪，1995 年 7 月至 2005 年 11 月任西安彩虹电器工业有限责任公司总会计师；2005 年 12 月至今任彩虹集团公司资产财务部部长。

(10) 李加顺，2000 年 3 月至 2003 年 3 月任本公司前二车间主任；2003 年 3 月起任本公司工会主席、党群办主任；2007 年 11 月起任本公司彩管二厂工会主席、党群办主任。

(11) 李淼，2001 年 5 月至 2005 年 7 月任彩虹集团电子股份有限公司彩管一厂厂长；2005 年 3 月至 2005 年 9 月兼任西安彩瑞显示技术有限公司总经理；2005 年 8 月至 2007 年 12 月任彩虹集团电子股份有限公司副总裁；2006 年 3 月至 2007 年 3 月兼任咸阳彩虹电子配件有限公司董事长；2007 年 11 月起任本公司副总经理。2006 年 3 月至今任咸阳彩虹电子网版有限公司、昆山彩虹实业有限公司董事长。

(12) 姜阿合，2003 年 4 月至 2005 年 11 月任珠海彩珠实业有限公司担任财务经理；2005 年 12 月至 2007 年 11 月任西安彩虹电器工业有限责任公司总会计师；2007 年 11 月起任本公司财务总监。

(13) 刘晓东，2002 年 3 月至今任本公司董事会秘书。

(二) 在股东单位任职情况

| 姓名 | 股东单位名称 | 担任的职务 | 任期起始日期 | 任期终止日期 | 是否领取报酬津贴 |
|---|---|---|---|---|---|
| 邢道钦 | 彩虹集团电子股份有限公司 | 董事长 | 2007 年 09 月 | 2010 年 09 月 | 是 |
| 葛迪 | 彩虹集团电子股份有限公司 | 金属部品事业部部长 | 2007 年 03 月 | 2010 年 09 月 | 是 |
| 葛迪 | 彩虹集团电子股份有限公司 | 总裁助理 | 2007 年 12 月 | 2010 年 09 月 | 是 |

在其他单位任职情况

| 姓名 | 其他单位名称 | 担任的职务 | 任期起始日期 | 任期终止日期 | 是否领取报酬津贴 |
|---|---|---|---|---|---|
| 邢道钦 | 彩虹集团公司 | 总经理 | 2005 年 07 月 | -- | 否 |
| 郭盟权 | 彩虹集团公司 | 副总经理 | 2001 年 03 月 | -- | 否 |
| 郭盟权 | 陕西彩虹电子玻璃有限公司 | 董事长 | 2006 年 10 月 | 2009 年 10 月 | 否 |
| 张少文 | 彩虹集团公司 | 副总经理 | 2001 年 03 月 | -- | 否 |
| 王琪 | 彩虹集团公司 | 资产财务部部长 | 2005 年 11 月 | -- | 是 |
| 葛迪 | 彩泰电子器件有限责任公司 | 董事长 | 2007 年 03 月 | 2010 年 03 月 | 否 |
| 葛迪 | 彩虹电子配件有限公司 | 董事长 | 2007 年 03 月 | 2010 年 03 月 | 否 |

(三) 董事、监事、高级管理人员报酬情况

1、董事、监事、高级管理人员报酬的决策程序:公司董事、监事及高级管理人员的年度报酬依据公司经营管理者薪酬管理办法规定，根据经营业绩和考核结果确定基薪和年薪，其中基薪按月支付，年薪依据年度绩效考核结果一次性支付。

彩虹显示器件股份有限公司 2007 年年度报告

2、董事、监事、高级管理人员报酬确定依据：经公司股东大会批准，公司每年向每位独立董事支付 3 万元的津贴，按月支付。同时独立董事参加董事会、股东大会、根据公司章程行使职权或为公司开展工作发生的费用：包括但不限于交通费、住宿费等由公司另行支付。除此以外，公司独立董事不享受其它待遇。

3、不在公司领取报酬津贴的董事监事情况

| 不在公司领取报酬津贴的董事、监事的姓名 | 是否在股东单位或其他关联单位领取报酬津贴 |
|---|---|
| 邢道钦 | 是 |
| 郭盟权 | 是 |
| 张少文 | 是 |
| 王西民 | 是 |
| 葛 迪 | 是 |
| 王 琪 | 是 |

(四)公司董事、监事、高级管理人员变动情况

| 姓 名 | 担任的职务 | 离任原因 |
|---|---|---|
| 丁文惠 | 董事、总经理 | 工作变动 |
| 马建朝 | 董事 | 工作变动 |
| 田小红 | 董事 | 工作变动 |
| 俞 敏 | 董事 | 工作变动 |
| 闫跃平 | 监事 | 工作变动 |
| 靖慧勇 | 副总经理 | 工作变动 |
| 刘珍珠 | 总会计师 | 工作变动 |
| 李世敏 | 副总经理 | 工作变动 |
| 梁红艳 | 副总经理 | 工作变动 |

(五)公司员工情况
    截止报告期末，公司在职员工为 6,990 人，需承担费用的离退休职工 49 人。员工的结构如下：

1、专业构成情况

| 专业类别 | 人数 |
|---|---|
| 生产人员 | 6,157 |
| 销售人员 | 36 |
| 技术人员 | 274 |
| 财务人员 | 22 |
| 管理人员 | 151 |
| 服务人员 | 82 |

2、教育程度情况

| 教育类别 | 人数 |
|---|---|
| 大学本科以上学历 | 307 |
| 大专 | 597 |
| 中专 | 382 |
| 高中及以下 | 5,704 |

彩虹显示器件股份有限公司 2007 年年度报告

## 六、公司治理结构

(一) 公司治理的情况

公司严格按照《公司法》、《证券法》、《上市公司治理准则》及《公司章程》的有关规定规范运作，建立了较为完善的法人治理结构，公司治理的实际情况与中国证监会发布的上市公司治理文件要求基本一致。

报告期内，为了规范公司及其他信息披露义务人的信息披露行为，加强信息披露事务管理，保护投资者合法权益，公司按照中国证监会发布的《上市公司信息披露管理办法》的文件要求，对原《信息披露管理办法》进行了修订；根据中国证监会《关于加强上市公司募集资金使用管理的通知》要求，对《募集资金使用管理办法》进行了修订。同时为进一步完善公司治理结构，公司还制定了《独立董事制度》，补充设立了董事会提名委员会，制定了《董事会提名委员会实施细则》等公司治理文件，以进一步规范公司治理行为。

1、股东与股东大会

按照《公司章程》的规定，股东按其所持股份享有平等的权利，并承担相应的义务。公司股东大会的召集、召开及表决程序规范，历次股东大会均经律师现场见证。公司每一项关联交易均严格按照交易双方事先签定的关联交易协议执行，做到公平、公正、公开。

2、控股股东与上市公司

公司控股股东之间实现了业务、人员、资产、机构、财务五个方面的分开及独立，公司董事会、监事会均保持独立运作，保证了公司重大决策的独立性。

3、董事及董事会

公司董事的选举和聘用程序严格按照《公司法》和《公司章程》的规定进行，董事会的人数及人员构成符合相关法律、法规的要求，聘请了三位独立董事进入董事会，独立董事占董事会成员人数的三分之一以上。建立了董事会议事规则，董事能勤勉尽责地履行职务，积极参加董事会会议及股东大会。

4、监事及监事会

公司建立了监事会议事规则，监事会的人数及人员构成符合相关法规的规定。公司监事能根据《公司章程》及《监事会议事规则》规定，认真履行自己的职责，对公司的依法运作、关联交易、财务状况、高级管理人员履行职责等情况进行有效的监督和审核。

5、信息披露

公司已制订了《信息披露管理办法》、《重大信息内部报告制度》、《投资者关系管理制度》等制度。报告期内，公司严格遵守中国证监会和上海证券交易所有关信息披露的法律法规的规定，认真履行了信息披露义务，并做到了信息披露真实、准确、及时、完整。

6、公司治理专项自查活动情况

报告期内，公司根据中国证监会《关于开展加强上市公司治理专项活动有关事项的通知》要求和陕西证监局《关于贯彻落实中国证监会<关于开展加强上市公司治理专项活动有关事项的通知>的通知》的要求，积极开展公司治理专项活动，情况如下：

（1）、根据《通知》的要求，公司成立了以董事长为第一责任人的专项工作小组，对此项工作进行了认真细致的部署。公司专项工作小组本着实事求是的原则，对照《公司法》、《证券法》等有关法律、行政法规，以及《公司章程》等内部规章制度，对"三会"运做、内部控制、信息披露等公司治

彩虹显示器件股份有限公司 2007 年年度报告

理情况进行了全面深入的自查。

（2）、2007 年 5 月 29 日，公司召开了第五届董事会第十二次会议，审议通过了《关于公司治理专项活动的自查报告及整改计划》，经中国证监会陕西监管局审核同意，于 2007 年 8 月 17 日在《中国证券报》、《证券时报》和上海证券交易所网站进行了公告。

（3）、2007 年 10 月 18 日，中国证监会陕西证监局莅临公司现场检查了公司专项治理及整改情况。陕西证监局召集公司董事、监事、高管人员进行了座谈，听取了公司关于公司治理专项活动的开展情况、自查情况以及整改情况的汇报，查阅了公司三会记录、内控制度、财务会计资料、重大投资、重大合同等相关资料，对公司治理情况进行了全面的检查。

（4）、2007 年 10 月 29 日，公司收到了中国证监会陕西监管局《关于彩虹显示器件股份有限公司治理情况的监管函》（陕证监函[2007]243 号），对公司进一步加强和完善治理结构提出了新的要求和建议。

（5）、专项治理活动自查发现的问题以及监管部门现场检查提出的问题、整改措施和整改情况：

公司分别于 2007 年 5 月 29 日和 2007 年 8 月 28 日召开了第五届董事会第十二次会议和第五届董事会第十四次会议，审议通过了有关公司治理的制度，包括修订《信息披露管理办法》、《募集资金的管理制度》；为优化董事会组成，完善公司治理结构，补充设立了董事会提名委员会，选举产生了委员会委员，同时根据《公司法》、《上市公司治理准则》、《公司章程》及其他有关规定,制订《董事会提名委员会工作细则》；根据《公司法》、《关于在上市公司建立独立董事制度的指导意见》、《关于加强社会公众股股东权益保护的若干规定》和《公司章程》的有关规定，制定了《独立董事制度》，以强化独立董事职责，促进公司规范运作。在本次公司治理专项活动中，公司在相关监管部门的监督、指导下，进行了严格地自查和认真地整改。公司将以此次活动为契机，进一步完善公司治理结构，规范关联交易行为，加强内部控制制度的执行，努力提高公司治理水平，促进公司健康持续的发展。

(二) 独立董事履行职责情况

1、独立董事参加董事会的出席情况

| 独立董事姓名 | 本年应参加董事会次数 | 亲自出席（次） | 委托出席（次） | 缺席（次） |
|---|---|---|---|---|
| 赵守国 | 10 | 9 | 1 | 0 |
| 张天西 | 10 | 10 | 0 | 0 |
| 刘汝林 | 10 | 10 | 0 | 0 |

2、独立董事对公司有关事项提出异议的情况

报告期内，公司独立董事未对公司本年度的董事会议案及其他非董事会议案事项提出异议。

(三) 公司相对于控股股东在业务、人员、资产、机构、财务等方面的独立情况

1、业务方面：公司业务独立于控股股东。公司的生产系统完全独立于控股股东，动力供应依据市场价格与控股股东签订了关联交易协议，公司拥有独立的采购和销售系统。报告期内公司实施了重大资产置换方案，使公司与控股股东之间的产业分工更加明确，主营业务更加突出，公司与控股股东之间不存在同业竞争。

彩虹显示器件股份有限公司 2007 年年度报告

2、人员方面：公司全员实行劳动合同制，在劳动、人事、工资管理等方面独立于控股股东。公司总经理专职，总经理及其他高级管理人员没有在控股股东单位领薪。报告期内，公司资产置换完成后，相关人员已在自愿协商、合理分配的原则下，与原单位解除了劳动合同，并与新单位签订了劳动合同。

3、资产方面：本公司的资产独立完整，土地使用权、房产、工业产权、商标等归属明确，产权明晰。本公司和控股股东及关联子公司签订了商标使用权许可使用协议、房产、土地租赁和综合服务协议，履行了必要的审批程序。

4、机构方面：公司的生产经营和行政管理完全独立于控股股东，不存在控股股东直接或间接干预本公司设立内部机构的情况。

5、财务方面：公司设立有独立的财务会计部门，并建立了独立的会计核算体系和财务管理制度，开立了独立的银行帐户，依法独立纳税。

(四) 高级管理人员的考评及激励情况

公司根据经营业绩和履行职责情况对高级管理人员实行月度考评和年度考核，月度考评以 KPI 指标为考核依据，年度考核时高管人员向董事会进行工作述职，考核结果作为其薪酬、晋升的依据。公司将进一步建立和完善董事、监事和高管人员的绩效评价标准和有关制度。

(五) 公司内部控制制度的建立健全情况

为了规范公司的内部控制，加强内部管理，保证各项业务的正常、规范进行，确保公司资产的安全和完整，防止欺诈和舞弊行为，实现公司的经营管理目标，公司依照国家有关法律法规的规定，根据公司的资产结构和经营方式，结合自身业务发展情况和运营管理经验，建立了较为完整、有效、合理的内部控制制度体系。

公司的主要内控制度包括：公司章程和"三会"制度、信息披露管理制度、岗位职责标准、财务控制制度体系、劳动人事分配管理制度、质量管理制度、设备及备品备件管理制度、生产管理、销售管理、信息化管理等业务制度。

公司较为完整、有效、合理的内部控制制度体系，保障了公司正常生产经营活动的进行，并达到了有效控制经营风险的目的。未来公司还将根据生产经营及公司发展的实际需要，对公司的内部控制制度作进一步的修改和完善，使内控制度与公司的发展相适应。

(六) 公司披露董事会对公司内部控制的自我评估报告和审计机构的核实评价意见

本公司不披露董事会对公司内部控制的自我评估报告和审计机构的核实评价意见。

## 七、股东大会情况简介

(一)年度股东大会情况

公司于 2007 年 6 月 27 日召开第十五次(2006 年度)股东大会年度股东大会。决议公告刊登在 2007 年 6 月 28 日的《中国证券报》、《证券时报》。

(二)临时股东大会情况

公司于 2007 年 11 月 29 日召开 2007 年第一次临时股东大会。决议公告刊登在 2007 年 11 月 30 日的《中国证券报》、《证券时报》。

彩虹显示器件股份有限公司 2007 年年度报告

## 八、董事会报告

### 一、管理层讨论与分析

#### （一）报告期内公司经营情况的回顾

##### 1、报告期总体经营状况

本公司主营业务为彩色显像管的生产、开发与经营。随着平板电视技术的突破，彩色显像管电视市场份额呈现出下降的趋势，彩管行业也随之受到影响。面对更加严峻的形势，公司坚持落实"做强彩管、创新产业"的经营发展思路；积极推进营销拉动战略、总成本领先战略、新技术支撑战略；开展管理创新、技术创新，加快新品研发，优化生产流程，扩大产品销售。在彩管行业经营环境持续恶化的形势下，克服彩管价格下降、行业总体销量下降等重重困难，取得国内同行业中较好的经营业绩。

2007 年，公司累计生产彩色显像管 780.73 万只，比上年同期增长 8.92%；销售彩管 722.88 万只，比上年同期增长 5.22%，其中出口 122.78 万只，比上年同期增长 4.95%。报告期内彩管销售数量虽比上年增加，但是由于主要品种价格降低幅度较大，导致营业收入减少，毛利率降低，主要财务指标较上年同期均出现较大幅度的下滑。2007 年实现营业收入 170,569.61 万元，较上年同期减少了 17.48%；实现营业利润-2894.87 万元，较上年同期减少了 287.74%；实现归属于母公司股东的净利润-2843.36万元。

报告期内，为了明确产业分工、突出公司主营业务，公司实施了重大资产置换整合工作。资产置换后公司将专注于包括 CRT 在内的各种显示器件的研发、生产和销售，集中精力做强主业。本次资产置换后，公司的彩管生产线由原有的 4 条增加到 8 条，产品品种更加丰富（可生产 37cm、40cm、54cm、64cm、74cm 等多个品种的彩色显像管），产能由原来的 750 万只增加到 1600 万只，成为中国最大的彩色显像管制造商，位居全球彩管行业排名前三强。产能的大幅提升和产品结构的完善，也为公司巩固国内市场和开拓国际市场打下了坚实的基础。

##### 2、公司主营业务及其经营状况

（1）、主营业务分行业、产品情况表

单位：元 币种：人民币

| 分行业<br>或分产品 | 营业收入 | 营业成本 | 营业<br>利润率(%) | 营业收入比<br>上年增减(%) | 营业成本比<br>上年增减(%) | 营业利润率比<br>上年增减 |
|---|---|---|---|---|---|---|
| 彩色显像管 | 1,615,050,605.77 | 1,543,352,266.60 | 4.44% | -11.05% | -4.85% | 减少 623 个百分点 |
| 偏转线圈 | 82,006,665.72 | 69,794,202.78 | 14.89% | -66.59% | -70.20% | 增加 1031 个百分点 |

（2）、主营业务分地区情况

单位：万元 币种：人民币

| 地区 | 营业收入 | 营业收入比上年增减（％） |
|---|---|---|
| 西南地区 | 28,167.05 | -12.66% |
| 华东地区 | 23,801.70 | -18.82% |
| 华南地区 | 81,988.86 | -9.75% |
| 西北及其他地区 | 7,256.99 | -63.37% |
| 境外 | 29,355.01 | -13.41% |

彩虹显示器件股份有限公司 2007 年年度报告

### 3、主要供应商、客户情况

单位：元 币种：人民币

| 前五名供应商采购金额合计 | 1,063,503,928.97 | 占采购总额比重 | 69.62% |
|---|---|---|---|
| 前五名销售客户销售金额合计 | 1,170,692,917.98 | 占销售总额比重 | 68.63% |

### 4、公司资产和利润构成变动情况

### 1）报告期末公司资产及负债构成发生重大变化的说明

单位：元 币种：人民币

| 项目 | 2007 年末 | | 2006 年末 | | 同比增减 |
|---|---|---|---|---|---|
| | 金额 | 占总资产的比重（%） | 金额 | 占总资产的比重（%） | |
| 应收款项 | 665,112,104.96 | 32.56% | 868,277,329.30 | 40.44% | 减少 7.88 个百分点 |
| 存货 | 264,454,203.79 | 12.95% | 183,667,047.92 | 8.55% | 增加 4.40 个百分点 |
| 投资性房地产 | 4,696,564.26 | 0.23% | 4,914,972.33 | 0.23% | -- |
| 长期股权投资 | 24,060,000.00 | 1.18% | 133,088,165.45 | 6.20% | 减少 5.02 个百分点 |
| 固定资产 | 900,177,421.85 | 44.07% | 786,421,766.38 | 36.63% | 增加 7.44 个百分点 |
| 在建工程 | 3,516,591.17 | 0.17% | 2,005,222.00 | 0.09% | 增加 0.08 个百分点 |
| 无形资产 | 22,538,690.46 | 1.10% | 41,589,054.00 | 1.94% | 减少 0.84 个百分点 |
| 短期借款 | 314,000,000.00 | 15.37% | 300,000,000.00 | 13.97% | 增加 1.40 个百分点 |
| 资产总额 | 2,042,414,249.22 | 100.00% | 2,146,988,770.66 | 100.00% | -- |

(1)、应收款项减少的主要原因是应收票据减少所致。

(2)、存货增加的主要原因是库存商品增加所致。

(3)、长期股权投资减少的主要原因报告期内公司实施了资产重组，将所持有的咸阳彩虹数码显示有限公司、西安新纪元俱乐部有限公司股权转让彩虹集团公司所致。

(4)、固定资产增加主要是由于报告期内公司实施了资产重组，从彩虹集团电子股份有限公司购入彩管生产线等相关设备所致。

(5)、在建工程增加主要是由于本期技改项目未转入固定资产所致。

(6)、无形资产减少主要是报告期内公司将所持西安彩虹资讯有限公司的全部股权转让给控股股东彩虹电子，2007 年下半年该公司未纳入合并报表，其土地使用权的转出使得本公司无形资产减少。

### 2）报告期公司各项费用构成变动情况的说明

单位：元 币种：人民币

| 项目 | 2007 年度 | 2006 年度 | 增减比例（%） |
|---|---|---|---|
| 销售费用 | 75,909,007.24 | 77,592,062.51 | -2.17% |
| 管理费用 | 36,753,935.60 | 43,884,420.65 | -16.25% |
| 财务费用 | 19,948,968.22 | 18,749,015.89 | 6.40% |

彩虹显示器件股份有限公司 2007 年年度报告

(1)、销售费用比上年减少的主要是由于本年销售区域变化导致运费减少所致。

(2)、管理费用比上年大幅度减少的主要是由于营业收入减少导致商标使用费用、防洪保安基金等相应减少，以及离退人员补偿金减少等所致。

(3)、财务费用比上年增加的主要原因是外汇损失增加所致。

**5、公司现金流量情况分析**

单位：元   币种：人民币

| 项目 | 2007 年度 | 2006 年度 | 增减比例 |
|---|---|---|---|
| 一、经营活动产生的现金流量 | | | |
| 现金流入小计 | 1,100,704,512.92 | 1,254,672,375.21 | -12.27% |
| 现金流出小计 | 1,067,151,800.41 | 1,215,313,044.00 | -12.19% |
| 经营活动产生的现金流量净额 | 33,552,712.51 | 39,359,331.21 | -14.75% |
| 二、投资活动产生的现金流量 | | | |
| 现金流入小计 | -10,330,363.01 | 2,232,643.00 | -562.70% |
| 现金流出小计 | 15,950,090.37 | 4,493,218.00 | 254.98% |
| 投资活动产生的现金流量净额 | -26,280,453.38 | -2,260,575.00 | -1062.56% |
| 三、筹资活动产生的现金流量 | | | |
| 现金流入小计 | 338,000,000.00 | 300,000,000.00 | 12.67% |
| 现金流出小计 | 360,979,452.50 | 402,924,285.00 | -10.41% |
| 三、筹资活动产生的现金流量净额 | -22,979,452.50 | -102,924,285.00 | 77.67% |
| 四、现金及现金等价物净增加金额 | -16,898,188.42 | -65,825,528.79 | 74.33% |

(1)、经营活动产生的现金流量净额比上年减少的主要原因是由于主营业务收入减少所致。

(2)、投资活动产生的现金流量净额比上年减少的主要原因是本报告期内将彩虹资讯股权转让给母公司彩虹电子，彩虹资讯期末未纳入公司合并报表导致"处置子公司及其他营业单位收到的现金净额"项目减少以及购建固定资产现金支出比上年增加所致。

(3)、筹资活动产生的现金流量净额比上年增加的原因是取得短期借款收到的现金增加 3800 万元；偿还短期借款支付的现金减少 3600 万元；偿还利息减少所致。

**6、公司主要控股公司及参股公司经营情况及业绩分析**

单位：万元   币种：人民币

| 公司名称 | 主要产品和服务 | 注册资本 | 资产规模 | 净资产 | 净利润 |
|---|---|---|---|---|---|
| 西安彩虹资讯有限公司 | 显示器零部件、电子资讯产品的生产开发及销售。 | 13,000 | 21,972.84 | 15,927.48 | 864.77 |
| 西安彩辉显示技术有限公司 | 彩色显示器件用彩管及配套产品的研发、制造、销售。 | 1,000 | 5,936.88 | 857.1 | -95.98 |
| 咸阳彩虹数码显示有限公司 | 主营超大屏幕彩管生产 | 65,000 | 18,034.00 | 17,409.47 | -1,674.09 |
| 西安新纪元国际俱乐部有限公司 | 主营餐饮、娱乐服务 | 4,800 | 5,067.14 | 3,687.83 | -219.40 |

注：报告期内，为了提高公司资产质量，优化公司业务结构，公司实施了重大资产置换方案，其中将本公司持有的咸阳彩虹数码显示有限公司49%的股权和西安新纪元国际俱乐部有限公司41.67%的股权转让给了本公司实际控制人彩虹集团公司；将本公司持有的西安彩虹资讯有限公司55%的股权转让给了本公司控股股东彩虹集团电子股份有限公司。上述股权转让使公司获得股权转让收益 2807 万元。

彩虹显示器件股份有限公司 2007 年年度报告

### 7、报告期内的技术创新、节能减排等情况

2007 年度公司共确立防爆钢带新厂家认定、64cmPF 偏转线圈量产应用、偏转线圈轻量化改进等技术进步项目 175 项，报告期内完成计划项目 170 项，项目计划完成率 97%，批量应用项目 144 项，实现经济效益约 11663 万元。

公司一贯高度重视技术创新工作，积极实施技术支撑战略，推行时间管理、看板管理、研发流程再造、项目组合管理等科学管理，全力推进新品研发进度，整体研发能力不断提升。通过采取对现有产品的不断优化以及新产品的开发，完善了产品结构，降低了产品成本，提高了产品品质，大大增强了市场占有率，其中成功研制的 61cmWPFUSCPT 管型，提高了公司核心竞争力，巩固了公司的行业地位。

2007 年公司开展了以节能降耗为主要内容的循环经济工作，通过技术创新节约动能消耗，降低产品的动能成本。根据计划共立项 23 项，完成 22 项，全年产生效益为 304 万元，单位产品能源消耗下降 14%。在实现节约资源的同时，使企业的效益得到了有益的提升，从而实现了社会利益与企业经济效益的统一，企业的社会责任与盈利责任的和谐统一。

### （二）、对公司未来发展的展望

#### 1、公司所处的行业发展趋势及公司面临的市场竞争格局

2007 年，全球范围内显示器件的产业格局调整仍在继续，液晶显示器（LCD）电视呈现了较高的行业景气度。报告期内全球彩色显像管（CRT）电视出货量 1.07 亿台，占全球各类电视总出货量的 54%。作为全球最大彩管生产基地的中国大陆，报告期内，中国彩管企业总出货量为 5258 万只，预计到 2010 年中国彩管企业总出货量占全球的比例将进一步提升。彩管超薄化、纯平化、数字化所带来的技术进步进一步强化了产品性价比，使得部分彩管细分市场需求依然强劲。

#### 2、公司未来发展机遇和挑战

展望 2008 年，公司认为虽然目前平板电视发展的速度较快，但从产品的技术性能角度看，彩管电视在图像对比度、动态清晰度等方面性能优于平板电视，而且具有良好的性价比，因此彩管电视仍具有较强的生命力。由于 CRT 电视市场的庞大基数和全球各地区间、各阶层间经济水平的不均衡决定了较长一段时间内 CRT 电视仍将是全球电视机市场的重要组成部分。中国企业在彩管生产方面已经积累了丰富的经验，并形成了完整的产业链，彩管行业内优秀企业的竞争优势将会得到发挥。其一，彩管在部分细分市场上仍具有发展潜力。其二，随着我国建设社会主义新农村政策的（如家电下乡政策）不断深入落实，在乡镇以及广大的农村市场中，彩管电视将占有绝对优势，市场空间很大。其三，中国的彩管生产企业凭借规模化、低成本、种类多等优势，将会不断开拓海外市场，彩管电视在广大发展中国家将会有新的市场机会出现。所以我们认为对于有规模、有竞争力、有创新力的彩管企业，依然能够稳健经营、获得良好发展。

公司已实施了重大资产重组，并将专注于显示器件的生产、销售和研发，其中既包括目前的彩色显像管业务，也包括今后发展的新型平板显示器件业务。重组后公司彩管生产规模大幅度增加、产品品种更加齐全，成为中国最大的彩色显像管专业制造商。作为彩管行业的龙头企业，公司继续将"做

18

彩虹显示器件股份有限公司 2007 年年度报告

强彩管"作为一项重要战略，积极抓住"家电下乡"的市场契机，大力拓宽市场，积极推进新品研发，充分发挥公司规模优势、成本优势、配套优势和技术创新优势，继续采取成本领先、营销拉动、新技术支撑等一系列积极有效的经营策略，进一步提升彩管业务的竞争力。

随着新型显示技术的不断发展，显示器件产品结构呈现出多样化，形成了 CRT、LCD、等离子等产品共同发展的市场格局。根据公司未来发展规划，公司将不断加大产业升级推进力度，充分发挥自身优势，选择时机进入 TFT–LCD 等第二代新型显示器件领域。同时公司还将高度关注 OLED（有机电致发光显示器）等第三代显示技术的发展，利用政府政策的支持和大专院校的研发平台，推进其产业化发展，使公司在我国显示器件行业中更具竞争力。

**3、新年度经营计划**

2008 年度公司主要经营目标：彩管销售 1538 万只，销售收入 32.5 亿元。

实现上述计划拟采取的主要措施如下：

（1）、广泛调研，制订并完善公司中长期战略发展规划，明确目标和任务，以科学的规划指导公司的建设和发展。

（2）、推进实施精确管理，把精确管理理念灌输到各项工作之中，全面提升公司管理水平。

（3）、充分发挥"销、产、供、研"的协同效应，以市场营销为龙头，继续实施营销拉动战略，抓住战略客户、培育长期客户、带动中小客户，既要追求产能利用率，又要追求市场占有率，更要追求销售利润率。

（4）、持续推进总成本领先战略，以"全方位、持续降低成本"为工作中心，同时注重产品质量，满足用户需求，综合提高产品市场竞争能力、盈利能力。

（5）、整合采购资源，在保证材料配套供应的同时，围绕降低成本开展各项工作。加强全面预算管理，控制财务风险，提高资产质量：通过逐步完善预算管理体系和制度，提高全员的全面预算意识。建立动态分析预测机制，注意过程控制。控制好应收帐款和存货的数量，确保资金安全，降低财务费用，减少人民币的汇兑损失。认真推进新的会计准则的实施和执行，实现新旧会计准则顺利平稳过渡。

（6）、积极推进科研新品工作，不断优化产品结构，改善产品性能，为市场销售提供竞争力，为企业生产提供成本裕度、质量裕度。

**4、实现未来计划发展战略的资金需求及使用计划**

根据公司新年度生产经营计划,公司日常经营的资金需求主要通过自有资金和银行信贷方式解决，2008 年预计银行借款约 3 亿元人民币左右。公司还将根据今后业务发展情况,通过多种方式筹措资金。

彩虹显示器件股份有限公司 2007 年年度报告

**5、对公司未来发展战略和目标的实现产生不利影响的风险因素**

（1）行业风险

受平板显示器件快速增长的冲击，整个彩管行业呈现逐步衰退的趋势，彩管产品的市场占有率明显下降。

（2）经营风险

随着上游部分原材料价格的上涨和彩管产品价格的下降，公司经营可能面临较大的压力；同时随着公司产品出口量的增长，人民币升值的汇率风险亦会对公司经营业绩产生不利影响。

**针对上述风险公司将采取如下措施：**

进一步深化公司"做强彩管，创新产业"经营战略，围绕做强彩管盈利为中心，实现企业业务转型为突破，推进营销拉动、成本领先、新技术支撑三大战略。

（1）稳定并努力提高公司的行业地位和综合竞争力。

进一步深化公司"做强彩管，创新产业"经营战略，继续做强主营业务，充分利用规模优势、成本优势、内部配套的优势，提高公司在国内、国际的行业地位和综合竞争力和盈利能力。

（2）积极培育新产业，增加新的利润增长点。

在做强彩管业务的同时，积极向新的业务领域探索，适时介入新型显示器件产业。


**二、公司投资情况**

1、募集资金使用情况

报告期内，公司无募集资金或前期募集资金使用到本期的情况。

2、非募集资金项目情况

报告期内，公司无非募集资金投资项目。


**三、公司会计政策、会计估计变更或重大会计差错更正的原因及影响**

1、重大会计政策、会计估计变更的影响

本公司原执行 2006 年以前颁布的原企业会计准则和制度，从 2007 年 1 月 1 日执行企业会计准则，并自该日起按照新企业会计准则的规定确认、计量和报告本公司的交易或事项。对于因首次执行新企业会计准则而发生的会计政策变更，本公司采用下述方法进行处理。

采用追溯调整法核算的重大会计政策变更

（1）长期股权投资：执行新企业会计准则之前，母公司报表中对子公司的长期股权投资以权益法核算；执行新会计准则后，对子公司的长期股权投资采用成本法核算，编制合并财务报表时按权益法进行调整。于首次执行日，对母公司报表中的对子公司长期股权投资予以追溯调整，视同该子公司自最初即采用成本法核算。

彩虹显示器件股份有限公司 2007 年年度报告

（2）所得税：执行新企业会计准则之前，所得税的会计处理方法采用应付税款法。执行新企业会计准则后，采用资产负债表债务法进行所得税会计处理。

（3）与收益相关的政府补助：在执行新企业会计准则之前，与收益相关的政府补助在实际收到时计入补贴收入。执行新企业会计准则之后，上述与收益相关的政府补助在能够满足所附条件并且能够收到时予以确认。

对于上述会计政策变更，本公司按照《企业会计准则第 38 号--首次执行企业会计准则》及其相关规定，进行了追溯调整，并对财务报表重新进行了表述。上述会计政策变更对 2006 年 1 月 1 日和 2006 年 12 月 31 日的合并及母公司的股东权益及 2006 年度净利润的影响列示如下：

1）对 2006 年 1 月 1 日合并股东权益的影响

| 项目 | 未分配利润 | 盈余公积 | 资本公积 | 少数股东权益 | 合计 |
|---|---|---|---|---|---|
| （1）长期股权投资由权益法改为成本法 | 1,241,357 | -1,241,357 | 0.00 | 0.00 | 0.00 |
| （2）少数股东权益作为股东权益列报 | 0.00 | 0.00 | 0.00 | 68,703,815 | 68,703,815 |
| （3）所得税 | 131,424 | 0.00 | 0.00 | 107,529 | 238,953 |
| 合计 | 1,372,781 | -1,241,357 | 0.00 | 68,811,344 | 68,942,768 |

2）对 2006 年度合并净利润的影响

| 项目 | 金额 |
|---|---|
| （1）所得税 | 224,086 |
| （2）内退人员辞退福利（含合并范围内子公司） | -5,460,549 |
| （3）少数股东损益作为净利润项目列报（不含辞退福利部分） | -101,324 |
| 合计 | -5,337,787 |

3）对 2006 年 12 月 31 日合并股东权益的影响

| 项目 | 未分配利润 | 盈余公积 | 资本公积 | 少数股东权益 | 合计 |
|---|---|---|---|---|---|
| （1）长期股权投资由权益法改为成本法 | 1,241,357 | -1,241,357 | 0.00 | 0.00 | 0.00 |
| （2）内退人员辞退福利 | -4,586,170 | 0.00 | 0.00 | -874,380 | -5,460,550 |
| （3）少数股东损益作为股东权益列报 | 0.00 | 0.00 | 0.00 | 68,602,492 | 68,602,492 |
| （4）盈余公积的转回 | 334,469 | -334,469 | 0.00 | 0.00 | 0.00 |
| （5）所得税 | 408,975 | 0.00 | 0.00 | 54,064 | 463,039 |
| 合计 | -2,601,369 | -1,575,826 | 0.00 | 67,782,176 | 63,604,981 |

4）对 2006 年 1 月 1 日母公司股东权益的影响

| 项目 | 未分配利润 | 盈余公积 | 资本公积 | 合计 |
|---|---|---|---|---|
| 长期股权投资由权益法改为成本法 | -10,711,508 | -1,241,357 | 0.00 | -11,952,865 |

彩虹显示器件股份有限公司 2007 年年度报告

5）对 2006 年度母公司净利润的影响

| 项目 | 金额 |
|------|------|
| （1）内退人员辞退福利 | -3,174,589 |
| （2）投资收益 | -170,102 |
| 合计 | -3,344,691 |

6）对 2006 年 12 月 31 日母公司股东权益的影响

| 项目 | 未分配利润 | 盈余公积 | 资本公积 | 合计 |
|------|-----------|---------|---------|------|
| （1）盈余公积的转回 | 334,469 | -334,469 | 0.00 | 0.00 |
| （2）内退人员辞退福利 | -3,174,589 | | | -3,174,589 |
| （3）长期股权投资由权益法改为成本法 | -10,881,610 | -1,241,357 | 0.00 | -12,122,967 |
| 合计 | -13,721,730 | -1,575,826 | 0.00 | -15,297,556 |

采用未来适用法核算的重大会计政策变更

除上述用追溯调整法核算的重大会计政策变更以外，本公司因首次执行新会计准则还发生了下述主要会计政策变更，并采用未来适用法进行会计处理。具体包括：

（1）非流动资产减值：在执行新企业会计准则之前，本公司前期已确认的非流动资产的减值损失如果在以后会计期间恢复的，按照恢复的金额，在不超过已确认减值损失金额的范围内，予以转回，计入当期损益。在执行新企业会计准则之后，本公司对非流动资产计提减值准备，非流动资产的减值损失一经确认，除资产处置、出售、对外投资等情况外，在以后会计期间不得转回。

（2）职工福利费：执行新企业会计准则之前，本公司按照工资总额的 14%计提职工福利费，并计入当期损益。在执行新企业会计准则后，本公司不再按照工资总额的14%计提职工福利费，本公司根据实际情况和职工福利计划确认应付职工薪酬(职工福利)，并计入当期损益。首次执行日后的第一个会计期间，将根据新企业会计准则确认的应付职工薪酬(职工福利)与原转入的职工薪酬(职工福利)之间的差额计入当期损益。

（3）与资产相关的政府补助：执行新企业会计准则前，本公司收到的与资产相关的政府补助作为专项应付款核算，并在有关拨款项目完成后，对于形成固定资产或产品并按规定留给本公司的，将有关专项应付款计入资本公积；对未形成资产需要核销的拨款以及形成资产按规定上交国家的，经批准后将专项应付款与有关资产科目冲销。执行新企业会计准则后，与资产相关的政府补助确认为递延收益，并在相关资产使用寿命内平均分配，计入当期损益。与收益相关的政府补助，用于补偿本公司以后期间的相关费用或损失的，确认为递延收益，并在确认相关费用的期间，计入当期损益；用于补偿本公司已发生的相关费用或损失的，直接计入当期损益。

2．重大会计差错的更正和影响

本公司本年无重大会计差错的更正和影响事项。

彩虹显示器件股份有限公司 2007 年年度报告

**四、董事会日常工作情况**

1、董事会会议情况及决议内容

(1)、公司于 2007 年 3 月 20 日召开第五届董事会第九次(临时)会议董事会会议，审议通过了《关于调整公司高级管理人员的议案》。决议公告刊登在 2007 年 3 月 22 日的《中国证券报》、《证券时报》。

(2)、公司于 2007 年 4 月 11 日召开第五届董事会第十次会议董事会会议，审议通过了《2006 年度总经理工作报告》、《2006 年度董事会工作报告》、《2006 年度财务决算报告》《2006 年度利润分配预案》、《关于冲回部分存货跌价准备的议案》、《2006 年年度报告及其摘要》和《关于召开公司第十五次(2006 年度)股东大会的议案》。决议公告刊登在 2007 年 4 月 13 日的《中国证券报》、《证券时报》。

(3)、公司于 2007 年 4 月 23 日召开第五届董事会第十一次会议董事会会议，审议通过了公司《2007 年第一季度报告》。

(4)、公司于 2007 年 5 月 29 日召开第五届董事会第十二次会议董事会会议，审议通过了《关于公司治理专项活动的自查报告及整改计划》、《信息披露管理制度》、《募集资金使用管理办法》、《关于变更会计师事务所的议案》、《关于变更公司董事的议案》和《关于召开公司第十五次(2006 年度)股东大会的议案》。决议公告刊登在 2007 年 5 月 30 日的《中国证券报》、《证券时报》。

(5)、公司于 2007 年 7 月 26 日召开第五届董事会第十三次会议董事会会议，审议通过了公司《重大资产重组暨关联交易的议案》、《关于转让咸阳彩虹数码显示有限公司股权的议案》、《关于转让西安新纪元国际俱乐部有限公司股权的议案》和《关于资产置换后新增日常关联交易事项的议案》。决议公告刊登在 2007 年 7 月 28 日的《中国证券报》、《证券时报》。

(6)、公司于 2007 年 8 月 28 日召开第五届董事会第十四次会议董事会会议，审议通过了《2007 年半年度报告》及其摘要、《关于补选董事会战略委员会委员的议案》、《关于设立董事会提名委员会的议案》和《董事会提名委员会工作细则》。决议公告刊登在 2007 年 8 月 30 日的《中国证券报》、《证券时报》。

(7)、公司于 2007 年 10 月 24 日召开第五届董事会第十五次会议董事会会议，审议通过了公司《2007 年第三季度报告》。

(8)、公司于 2007 年 11 月 2 日召开第五届董事会第十六次（临时）会议董事会会议，审议通过了《公司治理专项活动的整改报告》。

(9)、公司于 2007 年 11 月 13 日召开第五届董事会第十七次会议董事会会议，审议通过了《关于变更公司董事的议案》、《关于修改公司章程的议案》、《关于重大资产置换暨关联交易的议案》和《彩虹显示器件股份有限公司重大资产置换暨关联交易报告书》（修订稿），决定了关于召开公司 2007 年第一次临时股东大会的有关事宜。决议公告刊登在 2007 年 11 月 14 日的《中国证券报》、《证券时报》。

(10)、公司于 2007 年 11 月 29 日召开第五届董事会第十八次会议董事会会议，审议通过了《关于改选公司董事长的议案》、《关于选举公司副董事长的议案》、《关于改聘公司总经理的议案》、《关于改聘公司副总经理和财务总监的议案》、《关于调整公司董事会各专业委员会委员的议案》和《关于调整公司组织机构的议案》。决议公告刊登在 2007 年 11 月 30 日的《中国证券报》、《证券时报》。

2、董事会对股东大会决议的执行情况

报告期内，公司董事会根据《公司法》、《证券法》等有关法律、法规和《公司章程》要求，严格按照股东大会决议和授权，认真执行了股东大会通过的各项决议。

彩虹显示器件股份有限公司 2007 年年度报告

2007 年 11 月 29 日，公司 2007 年第一次临时股东大会审议通过了公司重大资产重组暨关联交易的各项议案。本次资产置换涉及的经营性资产已全部移交完毕；股权转让的相关工商变更登记手续已全部办理完毕。

3、董事会下设的审计委员会的履职情况汇总报告

根据中国证监会《关于做好上市公司 2007 年年度报告及相关工作的通知》、上海证券交易所《关于做好上市公司 2007 年年度报告工作的通知》的要求，公司制定了《董事会审计委员会年报工作规程》。根据年报工作规程的规定，审计委员会对公司 2007 年度审计工作履行了监督、督促和审核的职责。

(1)、审计委员会与公司审计机构信永中和会计师事务所进行了必要的沟通，确定了公司 2007 年度审计工作计划和时间安排。

(2)、审计委员会在年审注册会计师进场前认真审阅了公司 2007 年年度财务报表，认为公司财务报表依照公司会计政策编制，会计政策运用恰当，会计估计合理，符合新企业会计准则、企业会计制度及财政部发布的有关规定要求；公司财务报表纳入合并范围的单位和报表内容完整，报表合并基础准确；公司财务报表客观、真实地反映了公司的财务状况、经营成果，并形成了书面意见。

(3)、审计委员会在年审注册会计师进场后与其保持了持续的沟通，并先后两次以书面形式督促年审注册会计师在保证审计质量的前提下，按照约定的时间及时提交审计报告，以保证公司审计和年报编制工作的有序开展和及时完成。

(4)、审计委员会在年审注册会计师出具初步审计意见后再次审阅了公司 2007 年度财务报表，我们认为公司在审计前编制的财务报表与审计后的财务报表没有重大差异；经审计的财务报表符合新企业会计准则的相关规定，财务数据准确、不存在重大遗漏，如实地反映了公司的经营状况；会计师事务所所获取的审计证据是充分、适当的；会计师事务所对公司财务报表反映的财务状况、经营成果和现金流量所出具的审计意见是客观、公正的，并形成了书面意见。

(5)、审计委员会于 2008 年 4 月 22 日召开了第一次会议，审议通过了公司《2007 年度财务报告》、《关于会计师事务所从事 2007 年度审计工作的总结报告》和《关于聘请会计师事务所的议案》。

4、董事会下设的薪酬委员会的履职情况汇总报告

报告期末，董事会薪酬与考核委员会根据公司薪酬制度和 2007 年度生产经营目标的完成情况，依照公司绩效评价体系，对董事、监事和高级管理人员履职情况进行了审核。我们认为，公司董事、监事和高级管理人员的薪酬发放符合公司薪酬制度与绩效考核标准，年度报告所披露的薪酬数据是真实、准确的。

**五、利润分配或资本公积金转增预案**

经信永中和会计师事务所有限公司审计，公司 2007 年度实现净利润-2843.36 万元。由于本年度公司经营亏损，董事会提议本年度不进行利润分配，也不进行资本公积金转增股本。上述利润分配预案尚须提交公司 2007 年度股东大会批准。

**六、其他披露事项**

2008 年公司选定的信息披露报纸是《中国证券报》和《证券时报》，没有变更。

彩虹显示器件股份有限公司 2007 年年度报告

## 九、监事会报告

(一) 监事会的工作情况

1、2007 年 4 月 11 日召开了第五届监事会第七次会议,审议通过了《2006 年度监事会工作报告》、《2006 年度财务决算报告》、《关于冲回存货跌价准备的议案》、《2006 年年度报告正文及其摘要》和《关于变更监事的议案》。

2、2007 年 4 月 23 日召开了第五届监事会第八次会议,审议通过了公司《2007 年第一季度报告》。

3、2007 年 5 月 29 日召开了第五届监事会第九次会议,审议通过了《关于变更会计师事务所的议案》。

4、2007 年 7 月 26 日召开了第五届监事会第十次会议,审阅了公司《重大资产重组及关联交易的议案》、《关于转让咸阳彩虹数码显示有限公司股权的议案》、《关于转让西安新纪元国际俱乐部有限公司股权的议案》和《关于重大资产置换后新增日常关联交易事项的议案》。监事会全体成员还列席了公司第五届董事会第十三次会议,审查了公司本次资产置换、股权转让和关联交易的相关文件,发表了监事会意见。

5、2007 年 8 月 28 日召开了第五届监事会第十一次会议,审议通过了《公司 2007 年半年度报告》及其摘要。

6、2007 年 10 月 24 日召开了第五届监事会第十二次会议,审议通过了公司《2007 年第三季度报告》。

(二) 监事会对公司依法运作情况的独立意见

监事会认为,报告期内公司能够按照《公司法》、《上海证券交易所股票上市规则》、《上市公司治理准则》等法律、法规以及制度的要求依法管理、依法经营、规范运作,重大决策依据充分,决策程序合法有效;股东大会决议能够切实执行;内部控制制度较为完善,没有因决策失误侵害股东权益、公司利益和职工权益的行为。公司董事、经理在执行公司职务时,没有违反法律、法规、公司章程以及损害公司及股东利益的行为。

(三) 监事会对检查公司财务情况的独立意见

监事会通过查看公司财务报告、询问财务部门的相关人员等渠道,对公司财务状况进行了解、检查和监督,认为公司的财务制度健全,财务管理规范,未发现现有违反财务管理制度的行为。信永中和会计师事务所有限公司对公司 2007 年度财务报告出具了标准无保留意见的审计报告,客观、公正、真实、准确地反映了公司的财务状况和经营成果。

(四) 监事会对公司重大资产重组的独立意见

监事会审阅了公司《重大资产置换及关联交易的议案》及相关文件,认为通过本次资产置换,使公司的产品结构将更加齐全,生产能力明显扩大,产品的市场占有率得到提升,可以减少公司的经营风险,有利于公司的稳定、持续发展,符合全体股东利益;本次股权转让,旨在提高公司资产质量,优化公司业务结构,集中精力做强主业,巩固和提高公司的市场地位;本次因资产置换发生的关联交易的定价政策符合公平、公正的原则,交易价格公允,关联交易的决策程序符合公司章程的规定,不存在损害公司及非关联股东利益的情形。

(五) 监事会对公司关联交易情况的独立意见

监事会认为,报告期内公司关联交易能严格按照董事会及股东大会审议通过的关联交易协议执行,符合公平、公正的原则;关联交易决策程序符合公司章程的规定,不存在损害公司及非关联股东利益的行为。

彩虹显示器件股份有限公司 2007年年度报告

## 十、重要事项

### （一）重大诉讼仲裁事项

本公司接到美国加利福尼亚州北部地区法院关于美国 Crago 公司代表其本公司及其他类似情况的公司集体诉讼起诉书，指控包括彩虹集团公司、本公司在内的 21 家彩管制造企业违反美国相关法律，合谋控制市场，导致了原告及其他集体原告成员支付的费用超出了由竞争市场所确定的价格，因此要求为自己的损失获得三倍赔偿。美国加利福尼亚州北部地区法院依据相关法律规定，已经受理了本诉讼。本公司《关于涉及诉讼的公告》已刊登在 2008 年 1 月 31 日的《中国证券报》和《证券时报》。

根据起诉书所述，本公司相关部门对向美国销售彩管的情况进行了核查。经核查，本公司自 1995 年以来至今从未在美国市场销售过彩管，公司初步判断该诉讼事项不会对公司正常的经营活动产生负面影响。目前，本公司正在与彩虹集团公司协商相关应诉事宜。本公司《关于诉讼事宜进展情况的公告》已刊登在 2008 年 2 月 26 日的《中国证券报》和《证券时报》。

### （二）资产交易事项

1、收购资产情况

2007 年 11 月 29 日，本公司向公司控股股东彩虹集团电子股份有限公司购买彩虹集团电子股份有限公司下属的彩管一厂的彩色显像管业务相关的经营性生产资产，具体包括四条彩管生产线、技术研发及其他相关资产（以下简称"显像管业务相关资产"）。本次收购价格的确定依据是根据北京国友大正评估有限公司出具的国友大正评报字[2007]第 63 号《资产评估报告书》（评估基准日为 2007 年 6 月 30 日），以经双方确认的评估价值以及资产移交日的调整说明为依据确定交易价格。该资产的账面价值为 34,824.65 万元，评估价值为 34,794.76 万元。2007 年 11 月 30 日，交易双方共同对彩管一厂相关固定资产设备进行了清点，签署了《固定资产设备交接书》。经双方确认，移交的固定资产共计 2,844 项，交易价格为人民币 32,778.23 万元，移交的存货及其他无形资产在资产移交日的账面值为 773.10 万元，目前上述资产移交的相关手续已经全部办理完毕。

2、出售资产情况

1)、2007 年 11 月 29 日，本公司向公司控股股东彩虹集团电子股份有限公司转让本公司下属玻璃工厂的经营性资产。本次出售价格的确定依据是根据北京国友大正评估有限公司出具的国友大正评报字[2007]第 62 号《资产评估报告书》（评估基准日为 2007 年 6 月 30 日），以经双方确认的评估价值以及资产移交日的调整说明为依据确定交易价格。该资产的账面价值为 6,660.07 万元，评估价值为 12,674.03 万元。2007 年 11 月 30 日，交易双方共同对玻璃工厂的经营性资产固定资产设备进行了清点，签署了《固定资产设备交接书》，经双方确认，移交的固定资产共计 1,093 项，交易价格为人民币 10,699.47 万元，移交的存货在资产移交日的账面值为 1,164.66 万元，目前上述资产移交的相关手续已经全部办理完毕。

2)、2007 年 11 月 29 日，本公司向公司控股股东彩虹集团电子股份有限公司转让西安彩虹资讯有限公司 55%的股权。本次出售价格的确定依据是根据北京国友大正评估有限公司出具的国友大正评报

彩虹显示器件股份有限公司 2007 年年度报告

字[2007]第 65 号《资产评估报告书》（评估基准日为 2007 年 6 月 30 日），以经双方确认的评估价值确定交易价格。截至评估基准日彩虹资讯的账面净资产价值为 15,473.04 万元，评估价值 17,261.40 万元，所对应的 55%的股权价值为 9,493.77 万元。目前相关股权工商变更登记的手续已办理完毕。

3）、2007 年 11 月 29 日，本公司向公司实际控制人彩虹集团公司转让咸阳彩虹数码显示有限公司49%的股权。本次出售价格的确定依据是根据北京国友大正评估有限公司出具的国友大正评报字[2007]第 61 号《资产评估报告书》（评估基准日为 2007 年 6 月 30 日），以经双方确认的评估价值确定交易价格。截至评估基准日彩虹数码的账面净资产价值为 18,055.71 万元，评估价值 18,252.65 万元，所对应的 49%的股权价值为 8,943.80 万元。目前相关股权工商变更登记的手续已办理完毕。

4）、2007 年 11 月 29 日，本公司向公司实际控制人彩虹集团公司转让西安新纪元国际俱乐部有限公司 41.67%的股权。本次出售价格的确定依据是根据北京国友大正评估有限公司出具的国友大正评报字[2007]第 66 号《资产评估报告书》（评估基准日为 2007 年 6 月 30 日），以经双方确认的评估价值确定交易价格。截至评估基准日新纪元俱乐部的账面净资产价值为 3,648.39 万元，评估价值 7,537.99 万元，所对应的 41.67%的股权价值为 3,141.08 万元。目前相关股权工商变更登记的手续已办理完毕。

5）、上述收购资产、出售资产、股权事项对公司的影响

本次资产重组实施后，本公司将专注于各种显示器件的生产、销售和研发，使公司主营业务更加突出，专业分工更为明确。公司将拥有国内最大的彩色显像管生产规模，有利于有效地降低生产成本，取得规模效益；有利于公司产品质量的提高和产品的更新换代；有利于加快新品推进的速度，提高公司的研发效率，快速满足市场的变化和用户的需求；有利于壮大公司的主营业务，提升公司在行业中的竞争地位，增强公司经营的稳定性，对公司的可持续经营具有促进作用。

6）、上述收购资产、出售资产、股权事项已于 2007 年 7 月 28 日刊登在《中国证券报》和《证券时报》上；《关于重大资产置换暨关联交易实施进展公告》刊登于 2008 年 2 月 29 日的《中国证券报》和《证券时报》，公司聘请北京市嘉源律师事务所对本次资产置换的实施结果出具了法律意见书，同时登载于上海证券交易所网站（www.sse.com.cn）；《关于重大资产置换暨关联交易实施结果公告》刊登于 2008 年 3 月 29 日的《中国证券报》和《证券时报》上。

**（三）报告期内公司重大关联交易事项**

**1、与日常经营相关的关联交易**

(1)、购买商品、接受劳务的重大关联交易

单位:元 币种:人民币

| 关联方 | 关联交易内容 | 关联交易金额 | 占同类交易金额的比例(%) |
|---|---|---|---|
| 彩虹集团电子股份有限公司 | 采购原材料 | 625,802,889.86 | 40.97 |
| 西安彩虹资讯有限公司 | 采购原材料 | 144,228,411.12 | 9.44 |

彩虹显示器件股份有限公司 2007 年年度报告

| 彩虹彩色显像管总厂 | 购买动力、能源 | 140,254,010.20 | 9.18 |
| 咸阳彩虹电子配件有限公司 | 采购原材料 | 94,342,387.20 | 6.18 |
| 咸阳彩虹电子网版有限公司 | 采购原材料 | 58,876,230.59 | 3.85 |
| 彩虹集团劳动服务公司 | 采购原材料 | 33,937,774.97 | 2.22 |
| 陕西彩虹三产总公司 | 采购原材料 | 33,072,001.83 | 2.17 |
| 陕西彩虹荧光材料有限公司 | 采购原材料 | 20,599,252.40 | 1.35 |
| 咸阳彩联包装材料有限公司 | 采购原材料 | 17,869,032.35 | 1.17 |
| 珠海彩珠实业有限公司 | 采购原材料 | 7,591,863.00 | 0.50 |
| 咸阳彩秦电子器件有限责任公司 | 采购原材料 | 5,197,979.01 | 0.34 |
| 昆山彩虹实业有限公司 | 采购原材料 | 2,480,460.72 | 0.16 |
| 咸阳彩虹胶带有限责任公司 | 采购原材料 | 2,299,571.79 | 0.15 |

(2)、销售商品、提供劳务的重大关联交易

单位:元 币种:人民币

| 关联方 | 关联交易内容 | 关联交易金额 | 占同类交易金额的比例(%) |
| --- | --- | --- | --- |
| 彩虹集团电子股份有限公司 | 销售产品 | 77,137,781.25 | 4.58 |
| 咸阳彩虹电子配件有限公司 | 销售材料 | 312,938.80 | 0.02 |
| 彩虹集团劳动服务公司 | 销售材料 | 116,978.40 | 0.01 |

(3)、关联交易的定价原则

采购定价原则：由关联企业生产专供本公司的零部件：在合理测算生产成本和利润率的基础上，结合关联企业的供应量及齐套能力、产品的质量、成本、结算方式并参考可比性市场价协商定价。由关联企业供应本公司且其又对外销售的零部件：该等产品的供应价格应不高于其向第三方的供应价。

销售定价原则：根据彩管市场相关产品的市场供求状况和本公司或子公司的生产成本、合理利润等因素确定价格，原则上不低于向市场第三方的供应价。

动能供应的定价原则：有物价部门批准价格的，执行物价部门批准的价格；无物价部门批准价格的，参照当地同类企业供应价，并综合考虑生产成本、合理利润等因素协商定价。

(4)、关联交易必要性和持续性的说明

本公司与控股股东彩虹电子、实际控制人彩虹集团及其关联人之间存在着与日常生产经营相关的持续的关联交易，其主要原因是彩虹集团是我国第一个彩色显像管生产企业，主要从事彩色显像管的设计和生产制造，由于当时我国尚未有与之相配套的零部件企业，所以将彩色显像管生产用的配套零部件都进行了技术引进，经过 20 多年的发展已经成为国内产量最大、配套最齐全的彩管生产和研发基地，在此背景下本公司在显示器件的生产方面与彩虹集团形成了大量关联交易。

由于本公司与彩虹集团、彩虹电子及其下属生产企业在生产经营中存在着配套供应的关系，且大多数厂家经营场所在咸阳。由于公司生产所需的大多数零部件无法从彩虹集团外部采购，同时彩虹集团电子股份有限公司内部配套厂家的产品质量较好、价格较低、供货稳定、便于运输、有利于生产组织，该等关联交易可充分利用彩虹集团电子股份有限公司内部的配套优势，节约采购费用，降低生产成本，提高公司的生产效率和效益。

彩虹显示器件股份有限公司 2007 年年度报告

　　本公司与相关关联方相互之间在生产经营方面存在一定的依赖性，亦形成了共同的经营风险。针对上述情况，关联交易各方在研发、生产方面紧密配合，充分发挥各自优势，努力降低成本，开发新产品。同时明确关联交易项目，合理定价，不存在损害非关联股东利益的情形。关联交易对本公司的持续经营能力、损益及资产状况不会产生不利影响。

**2、资产、股权转让的重大关联交易**

　　资产、股权转让的重大关联交易详见本章"（二）资产交易事项"章节。

**3、关联债权债务往来**

单位:万元 币种:人民币

| 关联方 | 关联关系 | 向关联方提供资金 | | 关联方向公司提供资金 | |
|---|---|---|---|---|---|
| | | 发生额 | 余额 | 发生额 | 余额 |
| 彩虹集团公司 | 实际控制人 | 35,345,473.46 | 35,345,473.46 | | |
| 合计 | / | 35,345,473.46 | 35,345,473.46 | | |

关联债权债务形成原因：

　　本公司将参股公司西安新纪元俱乐部有限公司 41.67％股权、彩虹数码显示有限公司 49％股权于 2007 年 11 月 30 日转让给实际控制人彩虹集团公司,本公司应收彩虹集团的股权转让款 120,848,760.27 元。截至 2007 年 12 月 31 日,85,503,286.81 元已收到,余额 35,345,473.46 元尚未收到。

关联债权债务清偿情况：

　　本公司应收彩虹集团的股权转让款余额 35,345,473.46 元已于 2008 年 1 月收到。

**（四）托管情况**

本年度公司无托管事项。

**（五）承包情况**

本年度公司无承包事项。

**（六）租赁情况**

　　本公司与彩虹集团公司签订了为期二年零一个月(自 2007 年 12 月 1 日起至 2009 年 12 月 31 日止)的不可撤消的经营性租赁合同,公司须根据租赁协议分别按每年每平方米人民币 11 元支付土地使用权,以及每月每平方米人民币 9 元的标准支付咸阳使用楼宇的租金,每年合计总金额 9,534,805.80 元。

**（七）担保情况**

本年度公司无担保事项。

**（八）委托理财情况**

本年度公司无委托理财事项。

彩虹显示器件股份有限公司 2007 年年度报告

**（九）其他重大合同**

本年度公司无其他重大合同。

**（十）承诺事项履行情况**

公司或持股 5%以上股东在报告期内或持续到报告期内的承诺事项

股改承诺及履行情况：持股 5%以上股东（彩虹集团电子股份有限公司）在股权分置改革过程中没有做出除法定承诺之外无其他承诺。报告期内，彩虹集团电子股份有限公司已严格履行了在股权分置改革方案中所做承诺。

**（十一）聘任、解聘会计师事务所情况**

报告期内，公司改聘了会计师事务所。公司原聘任普华永道中天会计师事务所有限公司为公司的境内审计机构，支付其上一年度审计工作的酬金为 48 万元，截止上一报告期末，该会计师事务所为本公司提供了 1 年审计服务。

根据国务院国资委《关于彩虹集团公司 2006 年度财务决算管理有关事项的复函》和《关于加强中央企业财务决算审计工作的通知》（国资厅发评价[2005]43 号）的要求，为了保证企业财务决算审计工作顺利进行，减少信息沟通障碍，提高审计工作质量，彩虹集团公司及其下属企业原则上只能由 1 家会计师事务所独立审计。鉴此，经公司审计委员会提议，股东大会表决通过，决定聘任信永中和会计师事务所有限责任公司为本公司 2007 年度审计机构，支付其年度审计工作的酬金为 39 万元。

**（十二）上市公司及其董事、监事、高级管理人员、公司股东、实际控制人处罚及整改情况**

报告期内公司及其董事、监事、高级管理人员、公司股东、实际控制人均未受中国证监会的稽查、行政处罚、通报批评及证券交易所的公开谴责。

**（十三）其它重大事项及其影响和解决方案的分析说明**

持有非上市金融企业股权情况

| 所持对象名称 | 最初投资金额（元） | 持有数量（股） | 占该公司股权比例(%) | 期末账面价值（元） | 报告期损益（元） | 报告期所有者权益变动（元） | 会计核算科目 | 股份来源 |
|---|---|---|---|---|---|---|---|---|
| 西部信托投资有限公司 | 30,000,000 | | 5.01 | 24,060,000 | 565,873.23 | | 长期股权投资 | 购买 |
| 小计 | 30,000,000 | — | | 24,060,000 | | | — | — |

**（十四）信息披露索引**

| 事项 | 刊载的报刊名称及版面 | 刊载日期 | 刊载的互联网网站及检索路径 |
|---|---|---|---|
| 2006 年度业绩预盈的公告 | 《中国证券报》《证券时报》 | 2007 年 1 月 31 日 | http://www.sse.com.cn |
| 第五届董事会第九次会议决议公告 | 《中国证券报》《证券时报》 | 2007 年 3 月 22 日 | http://www.sse.com.cn |
| 2007 年第一季度业绩预告公告 | 《中国证券报》《证券时报》 | 2007 年 4 月 7 日 | http://www.sse.com.cn |
| 2006 年度业绩预告修正公告 | 《中国证券报》《证券时报》 | 2007 年 4 月 7 日 | http://www.sse.com.cn |
| 第五届监事会第七次会议决议公告 | 《中国证券报》《证券时报》 | 2007 年 4 月 13 日 | http://www.sse.com.cn |

彩虹显示器件股份有限公司 2007 年年度报告

| 彩虹股份控股股东及其他关联方占用资金情况专项说明 | 《中国证券报》《证券时报》 | 2007 年 4 月 13 日 | http://www.sse.com.cn |
|---|---|---|---|
| 第五届董事会第十次会议决议公告 | 《中国证券报》《证券时报》 | 2007 年 4 月 13 日 | http://www.sse.com.cn |
| 2006 年年度报告及其摘要 | 《中国证券报》《证券时报》 | 2007 年 4 月 13 日 | http://www.sse.com.cn |
| 关于股票停牌的提示性公告 | 《中国证券报》《证券时报》 | 2007 年 4 月 18 日 | http://www.sse.com.cn |
| 关于对有关媒体相关传闻的澄清公告 | 《中国证券报》《证券时报》 | 2007 年 4 月 19 日 | http://www.sse.com.cn |
| 2007 年第一季度季报 | 《中国证券报》《证券时报》 | 2007 年 4 月 24 日 | http://www.sse.com.cn |
| 关于召开第十五次（2006 年度）股东大会的通知公告 | 《中国证券报》《证券时报》 | 2007 年 5 月 30 日 | http://www.sse.com.cn |
| 第五届董事会第十二次会议决议公告 | 《中国证券报》《证券时报》 | 2007 年 5 月 30 日 | http://www.sse.com.cn |
| 第五届监事会第九次会议决议公告 | 《中国证券报》《证券时报》 | 2007 年 5 月 30 日 | http://www.sse.com.cn |
| 股票交易异常波动公告 | 《中国证券报》《证券时报》 | 2007 年 6 月 2 日 | http://www.sse.com.cn |
| 第十五次（2006 年度）股东大会会议资料 | 《中国证券报》《证券时报》 | 2007 年 6 月 19 日 | http://www.sse.com.cn |
| 第十五次（2006 年度）股东大会的法律意见书 | 《中国证券报》《证券时报》 | 2007 年 6 月 28 日 | http://www.sse.com.cn |
| 第十五次（2006 年度）股东大会决议公告 | 《中国证券报》《证券时报》 | 2007 年 6 月 28 日 | http://www.sse.com.cn |
| 董事会提示性公告 | 《中国证券报》《证券时报》 | 2007 年 7 月 11 日 | http://www.sse.com.cn |
| 2007 年中期业绩预亏公告 | 《中国证券报》《证券时报》 | 2007 年 7 月 14 日 | http://www.sse.com.cn |
| 有限售条件的流通股上市公告 | 《中国证券报》《证券时报》 | 2007 年 7 月 24 日 | http://www.sse.com.cn |
| 第五届监事会第十次会议决议公告 | 《中国证券报》《证券时报》 | 2007 年 7 月 28 日 | http://www.sse.com.cn |
| 第五届董事会第十三次会议决议公告 | 《中国证券报》《证券时报》 | 2007 年 7 月 28 日 | http://www.sse.com.cn |
| 董事会公告 | 《中国证券报》《证券时报》 | 2007 年 7 月 28 日 | http://www.sse.com.cn |
| 股权转让暨关联交易公告 | 《中国证券报》《证券时报》 | 2007 年 7 月 28 日 | http://www.sse.com.cn |
| 重大资产置换暨关联交易报告书（草案） | 《中国证券报》《证券时报》 | 2007 年 7 月 28 日 | http://www.sse.com.cn |
| "加强上市公司治理专项活动"自查报告和整改计划的公告 | 《中国证券报》《证券时报》 | 2007 年 8 月 17 日 | http://www.sse.com.cn |
| 董事会提名委员会工作细则 | 《中国证券报》《证券时报》 | 2007 年 8 月 30 日 | http://www.sse.com.cn |
| 独立董事制度 | 《中国证券报》《证券时报》 | 2007 年 8 月 30 日 | http://www.sse.com.cn |
| 第五届董事会第十四次会议决议公告 | 《中国证券报》《证券时报》 | 2007 年 8 月 30 日 | http://www.sse.com.cn |
| 2007 年半年度报告及其摘要 | 《中国证券报》《证券时报》 | 2007 年 8 月 30 日 | http://www.sse.com.cn |
| 2007 年第三季度业绩预亏公告 | 《中国证券报》《证券时报》 | 2007 年 10 月 9 日 | http://www.sse.com.cn |
| 控股子公司投资的公告 | 《中国证券报》《证券时报》 | 2007 年 10 月 9 日 | http://www.sse.com.cn |
| 澄清公告 | 《中国证券报》《证券时报》 | 2007 年 10 月 20 日 | http://www.sse.com.cn |
| 2007 年第三季度季报 | 《中国证券报》《证券时报》 | 2007 年 10 月 25 日 | http://www.sse.com.cn |
| 公司治理专项活动的整改报告 | 《中国证券报》《证券时报》 | 2007 年 11 月 3 日 | http://www.sse.com.cn |
| 关于召开 2007 年第一次临时股东大会的通知公告 | 《中国证券报》《证券时报》 | 2007 年 11 月 14 日 | http://www.sse.com.cn |
| 重大资产置换暨关联交易报告书 | 《中国证券报》《证券时报》 | 2007 年 11 月 14 日 | http://www.sse.com.cn |
| 关于重大资产重组事项进展的公告 | 《中国证券报》《证券时报》 | 2007 年 11 月 14 日 | http://www.sse.com.cn |
| 第五届董事会第十七次会议决议公告 | 《中国证券报》《证券时报》 | 2007 年 11 月 14 日 | http://www.sse.com.cn |
| 2007 年第一次临时股东大会会议资料 | 《中国证券报》《证券时报》 | 2007 年 11 月 22 日 | http://www.sse.com.cn |
| 2007 年第一次临时股东大会的法律意见书 | 《中国证券报》《证券时报》 | 2007 年 11 月 30 日 | http://www.sse.com.cn |
| 第五届董事会第十八次会议决议公告 | 《中国证券报》《证券时报》 | 2007 年 11 月 30 日 | http://www.sse.com.cn |
| 2007 年第一次临时股东大会决议公告 | 《中国证券报》《证券时报》 | 2007 年 11 月 30 日 | http://www.sse.com.cn |
| 关于股东减持股份的公告 | 《中国证券报》《证券时报》 | 2007 年 12 月 15 日 | http://www.sse.com.cn |

彩虹显示器件股份有限公司 2007 年年度报告

## 十一、财务会计报告

公司年度财务报告已经信永中和会计师事务所有限责任公司注册会计师汪洋、张昆 审计，并出具了标准无保留意见的审计报告。

(一)审计报告

# 审计报告

XYZH/2007A4028

**彩虹显示器件股份有限公司全体股东：**

我们审计了后附的彩虹显示器件股份有限公司（以下简称"彩虹公司"）合并及母公司财务报表，包括 2007 年 12 月 31 日的资产负债表，2007 年度的利润表、现金流量表、股东权益变动表及财务报表附注。

### 一、管理层对财务报表的责任

按照企业会计准则的规定编制财务报表是彩虹公司管理层的责任。这种责任包括：（1）设计、实施和维护与财务报表编制相关的内部控制，以使财务报表不存在由于舞弊或错误而导致的重大错报；（2）选择和运用恰当的会计政策；（3）作出合理的会计估计。

### 二、注册会计师的责任

我们的责任是在实施审计工作的基础上对财务报表发表审计意见。我们按照中国注册会计师审计准则的规定执行了审计工作。中国注册会计师审计准则要求我们遵守职业道德规范，计划和实施审计工作以对财务报表是否不存在重大错报获取合理保证。

审计工作涉及实施审计程序，以获取有关财务报表金额和披露的审计证据。选择的审计程序取决于注册会计师的判断，包括对由于舞弊或错误导致的财务报表重大错报风险的评估。在进行风险评估时，我们考虑与财务报表编制相关的内部控制，以设计恰当的审计程序，但目的并非对内部控制的有效性发表意见。审计工作还包括评价管理层选用会计政策的恰当性和作出会计估计的合理性，以及评价财务报表的总体列报。

我们相信，我们获取的审计证据是充分、适当的，为发表审计意见提供了基础。

### 三、审计意见

我们认为，彩虹公司财务报表已经按照企业会计准则的规定编制，在所有重大方面公允反映了彩虹公司 2007 年 12 月 31 日的财务状况以及 2007 年度的经营成果和现金流量。

信永中和会计师事务所 　　　　　　中国注册会计师：汪洋

中国注册会计师：张昆

中国　　　北京 　　　　　　　　二〇〇八年四月二十三日

彩虹显示器件股份有限公司 2007 年年度报告

(二)财务报表

### 合并资产负债表

编制单位：彩虹显示器件股份有限公司　　　　　　　　　　　　　　单位：元 币种:人民币

| 项目 | 附注 | 2007 年 12 月 31 日 | 2006 年 12 月 31 日 |
|---|---|---|---|
| **流动资产：** | | | |
| 货币资金 | 八、1 | 108,433,192.54 | 125,331,380.96 |
| 交易性金融资产 | | | |
| 应收票据 | 八、2 | 330,167,927.20 | 545,985,327.52 |
| 应收账款 | 八、3 | 334,944,177.76 | 322,292,001.78 |
| 预付款项 | 八、4 | 4,925,831.78 | 159,706.57 |
| 应收利息 | | | |
| 应收股利 | | | |
| 其他应收款 | 八、5 | 44,499,648.41 | 555,833.47 |
| 买入返售金融资产 | | | |
| 存货 | 八、6 | 264,454,203.79 | 183,667,047.92 |
| 一年内到期的非流动资产 | | | |
| 其他流动资产 | | | |
| 流动资产合计 | | **1,087,424,981.48** | **1,177,991,298.22** |
| **非流动资产：** | | | |
| 可供出售金融资产 | | | |
| 持有至到期投资 | | | |
| 长期应收款 | | | |
| 长期股权投资 | 八、7 | 24,060,000.00 | 133,088,164.45 |
| 投资性房地产 | 八、8 | 4,696,564.26 | 4,914,972.33 |
| 固定资产 | 八、9 | 900,177,421.85 | 786,421,766.38 |
| 在建工程 | 八、10 | 3,516,591.17 | 2,005,222.00 |
| 工程物资 | | | |
| 固定资产清理 | | | |
| 生产性生物资产 | | | |
| 油气资产 | | | |
| 无形资产 | 八、11 | 22,538,690.46 | 41,589,054.00 |
| 开发支出 | | | |
| 商誉 | | | |
| 长期待摊费用 | 八、12 | | 515,254.42 |
| 递延所得税资产 | 八、13 | | 463,038.86 |
| 其他非流动资产 | | | |
| 非流动资产合计 | | **954,989,267.74** | **968,997,472.44** |
| 资产总计 | | **2,042,414,249.22** | **2,146,988,770.66** |

彩虹显示器件股份有限公司 2007 年年度报告

| 流动负债： | | | |
|---|---|---|---|
| 短期借款 | 八、14 | 314,000,000.00 | 300,000,000.00 |
| 交易性金融负债 | | | |
| 应付票据 | | | |
| 应付账款 | 八、15 | 230,130,037.98 | 293,165,539.58 |
| 预收款项 | 八、16 | 12,596,527.47 | 3,471,388.26 |
| 应付手续费及佣金 | | | |
| 应付职工薪酬 | 八、17 | 20,464,741.39 | 40,395,326.21 |
| 应交税费 | 八、18 | -8,762,398.78 | 4,794,555.46 |
| 应付利息 | | | |
| 应付股利 | 八、19 | 3,438,520.00 | 3,438,520.00 |
| 其他应付款 | 八、20 | 37,965,193.80 | 43,436,674.53 |
| 一年内到期的非流动负债 | | | |
| 其他流动负债 | | | |
| 流动负债合计 | | **609,832,621.86** | **688,702,004.04** |
| 非流动负债： | | | |
| 长期借款 | | | |
| 应付债券 | | | |
| 长期应付款 | | | |
| 专项应付款 | 八、21 | | 3,000,000.00 |
| 预计负债 | 八、22 | 3,965,959.39 | 2,022,167.00 |
| 递延所得税负债 | | | |
| 其他非流动负债 | | | |
| 非流动负债合计 | | **3,965,959.39** | **5,022,167.00** |
| 负债合计 | | **613,798,581.25** | **693,724,171.04** |
| 所有者权益（或股东权益）： | | | |
| 实收资本（或股本） | 八、23 | 421,148,800.00 | 421,148,800.00 |
| 资本公积 | 八、24 | 707,339,757.49 | 636,528,565.67 |
| 减：库存股 | | | |
| 盈余公积 | 八、25 | 227,022,296.24 | 227,022,296.24 |
| 一般风险准备 | | | |
| 未分配利润 | 八、26 | 72,247,713.83 | 100,782,761.24 |
| 外币报表折算差额 | | | |
| 归属于母公司所有者权益合计 | | 1,427,758,567.56 | 1,385,482,423.15 |
| 少数股东权益 | 八、27 | 857,100.41 | 67,782,176.47 |
| 所有者权益合计 | | **1,428,615,667.97** | **1,453,264,599.62** |
| 负债和所有者权益总计 | | **2,042,414,249.22** | **2,146,988,770.66** |

公司法定代表人:邢道钦          主管会计工作负责人:姜阿合          会计机构负责人:邱东风

彩虹显示器件股份有限公司 2007 年年度报告

## 母公司资产负债表

编制单位：彩虹显示器件股份有限公司        单位：元 币种:人民币

| 项目 | 附注 | 2007 年 12 月 31 日 | 2006 年 12 月 31 日 |
|---|---|---|---|
| **流动资产：** | | | |
| 货币资金 | | 93,076,315.91 | 108,856,557.35 |
| 交易性金融资产 | | | |
| 应收票据 | | 330,167,927.20 | 506,701,780.63 |
| 应收账款 | 九、1 | 348,852,523.41 | 304,768,189.35 |
| 预付款项 | | 4,925,831.78 | 15,203.57 |
| 应收利息 | | | |
| 应收股利 | | | |
| 其他应收款 | 九、2 | 44,499,648.41 | 508,214.13 |
| 存货 | | 264,114,463.84 | 176,340,299.38 |
| 一年内到期的非流动资产 | | | |
| 其他流动资产 | | | |
| 流动资产合计 | | 1,085,636,710.55 | 1,097,190,244.41 |
| **非流动资产：** | | | |
| 可供出售金融资产 | | | |
| 持有至到期投资 | | | |
| 长期应收款 | | | |
| 长期股权投资 | 九、3 | 33,060,000.00 | 211,488,164.41 |
| 投资性房地产 | | 4,696,564.26 | 4,914,972.33 |
| 固定资产 | | 891,506,734.04 | 703,331,461.33 |
| 在建工程 | | 3,516,591.17 | 2,005,222.00 |
| 工程物资 | | | |
| 固定资产清理 | | | |
| 生产性生物资产 | | | |
| 油气资产 | | | |
| 无形资产 | | 22,538,690.46 | 22,118,997.78 |
| 开发支出 | | | |
| 商誉 | | | |
| 长期待摊费用 | | | |
| 递延所得税资产 | | | |
| 其他非流动资产 | | | |
| 非流动资产合计 | | 955,318,579.93 | 943,858,817.85 |
| 资产总计 | | **2,040,955,290.48** | **2,041,049,062.26** |

彩虹显示器件股份有限公司 2007 年年度报告

| 流动负债： | | | |
|---|---|---|---|
| 短期借款 | | 314,000,000.00 | 300,000,000.00 |
| 交易性金融负债 | | | |
| 应付票据 | | | |
| 应付账款 | | 230,044,176.35 | 282,880,063.40 |
| 预收款项 | | 12,596,527.47 | 499,366.96 |
| 应付职工薪酬 | | 20,327,555.51 | 36,752,083.77 |
| 应交税费 | | -8,764,981.78 | 2,961,270.71 |
| 应付利息 | | | |
| 应付股利 | | 3,438,520.00 | 3,438,520.00 |
| 其他应付款 | | 36,633,257.59 | 32,298,056.62 |
| 一年内到期的非流动负债 | | | |
| 其他流动负债 | | | |
| 流动负债合计 | | 608,275,055.14 | 658,829,361.46 |
| 非流动负债： | | | |
| 长期借款 | | | |
| 应付债券 | | | |
| 长期应付款 | | | |
| 专项应付款 | | | 3,000,000.00 |
| 预计负债 | | 3,965,959.39 | 2,022,167.00 |
| 递延所得税负债 | | | |
| 其他非流动负债 | | | |
| 非流动负债合计 | | 3,965,959.39 | 5,022,167.00 |
| 负债合计 | | 612,241,014.53 | 663,851,528.46 |
| 所有者权益（或股东权益）： | | | |
| 实收资本（或股本） | | 421,148,800.00 | 421,148,800.00 |
| 资本公积 | | 707,339,757.49 | 636,528,565.67 |
| 减：库存股 | | | |
| 盈余公积 | | 227,022,296.24 | 227,022,296.24 |
| 未分配利润 | | 73,203,422.22 | 92,497,871.89 |
| 所有者权益（或股东权益）合计 | | **1,428,714,275.95** | **1,377,197,533.80** |
| 负债和所有者权益（或股东权益）总计 | | **2,040,955,290.48** | **2,041,049,062.26** |

公司法定代表人:邢道钦          主管会计工作负责人:姜阿合          会计机构负责人:邱东风

彩虹显示器件股份有限公司 2007 年年度报告

## 合并利润表

编制单位：彩虹显示器件股份有限公司　　　　　　　　　　　　　　　　单位：元 币种：人民币

| 项目 | 附注 | 2007 年度 | 2006 年度 |
|---|---|---|---|
| 一、营业总收入 | 八、28 | **1,705,696,095.72** | **2,067,039,893.50** |
| 其中：营业收入 | | 1,705,696,095.72 | 2,067,039,893.50 |
| 二、营业总成本 | | **1,760,035,875.07** | **1,995,027,410.52** |
| 其中：营业成本 | 八、28 | 1,615,891,926.49 | 1,857,252,137.83 |
| 营业税金及附加 | 八、29 | 2,232,631.05 | 4,043,460.16 |
| 销售费用 | | 75,909,007.24 | 77,592,062.51 |
| 管理费用 | | 36,753,935.60 | 43,884,420.65 |
| 财务费用 | | 19,948,968.22 | 18,749,015.89 |
| 资产减值损失 | 八、31 | 9,299,406.47 | -6,493,686.52 |
| 加：公允价值变动收益（损失以"－"号填列） | | | |
| 投资收益（损失以"－"号填列） | 八、32 | 25,391,128.86 | -56,592,679.80 |
| 其中：对联营企业和合营企业的投资收益 | | | |
| 三、营业利润（亏损以"－"号填列） | | **-28,948,650.49** | **15,419,803.18** |
| 加：营业外收入 | 八、33 | 3,114,184.20 | 987,574.37 |
| 减：营业外支出 | 八、34 | 1,367,368.50 | 332,042.19 |
| 其中：非流动资产处置损失 | | 29,178.81 | 329,333.59 |
| 四、利润总额（亏损总额以"－"号填列） | | **-27,201,834.79** | **16,075,335.36** |
| 减：所得税费用 | 八、35 | 284,285.63 | 1,650,823.84 |
| 五、净利润（净亏损以"－"号填列） | | **-27,486,120.42** | **14,424,511.52** |
| 归属于母公司所有者的净利润 | | -28,433,627.98 | 15,453,679.24 |
| 少数股东损益 | | 947,507.56 | -1,029,167.72 |
| 六、每股收益： | | | |
| （一）基本每股收益 | | -0.07 | 0.04 |
| （二）稀释每股收益 | | -0.07 | 0.04 |

公司法定代表人:邢道钦　　　　　主管会计工作负责人:姜阿合　　　　　会计机构负责人:邱东风

## 母公司利润表

编制单位：彩虹显示器件股份有限公司　　　　　　　　　　　　　　　　单位：元 币种：人民币

| 项目 | 附注 | 2007 年度 | 2006 年度 |
|---|---|---|---|
| 一、营业收入 | 九、4 | 1,640,122,974.97 | 1,890,472,736.85 |
| 减：营业成本 | 九、4 | 1,566,700,985.18 | 1,709,042,861.37 |
| 营业税金及附加 | | 2,040,849.53 | 2,775,775.86 |
| 销售费用 | | 70,330,182.45 | 64,967,829.17 |
| 管理费用 | | 32,828,105.12 | 22,449,425.27 |
| 财务费用 | | 20,814,901.22 | 22,203,037.29 |
| 资产减值损失 | | 6,662,090.57 | -5,701,635.82 |
| 加：公允价值变动收益（损失以"－"号填列） | | | |
| 投资收益（损失以"－"号填列） | 九、5 | 37,924,147.56 | -56,479,209.89 |
| 其中：对联营企业和合营企业的投资收益 | | | |
| 二、营业利润（亏损以"－"号填列） | | -21,329,991.54 | 18,256,233.82 |
| 加：营业外收入 | | 3,114,184.20 | 621,534.85 |
| 减：营业外支出 | | 1,078,642.33 | 329,450.59 |
| 其中：非流动资产处置净损失 | | 29,178.81 | 329,333.59 |
| 三、利润总额（亏损总额以"－"号填列） | | -19,294,449.67 | 18,548,318.08 |
| 减：所得税费用 | | | |
| 四、净利润（净亏损以"－"号填列） | | -19,294,449.67 | 18,548,318.08 |

公司法定代表人:邢道钦　　　　　主管会计工作负责人:姜阿合　　　　　会计机构负责人:邱东风

彩虹显示器件股份有限公司 2007 年年度报告

## 合并现金流量表

编制单位：彩虹显示器件股份有限公司                                          单位:元 币种:人民币

| 项目 | 附注 | 2007 年度 | 2006 年度 |
|---|---|---|---|
| 一、经营活动产生的现金流量： | | | |
| 销售商品、提供劳务收到的现金 | | 1,084,983,797.38 | 1,229,650,428.21 |
| 收到的税费返还 | | 13,906,857.38 | 23,594,975.00 |
| 收到其他与经营活动有关的现金 | 八、36 | 1,813,858.16 | 1,426,972.00 |
| 经营活动现金流入小计 | | 1,100,704,512.92 | 1,254,672,375.21 |
| 购买商品、接受劳务支付的现金 | | 868,501,307.11 | 984,196,717.00 |
| 支付给职工以及为职工支付的现金 | | 138,804,230.22 | 146,506,530.00 |
| 支付的各项税费 | | 39,646,496.64 | 55,885,792.00 |
| 支付其他与经营活动有关的现金 | 八、36 | 20,199,766.44 | 28,724,005.00 |
| 经营活动现金流出小计 | | 1,067,151,800.41 | 1,215,313,044.00 |
| 经营活动产生的现金流量净额 | | **33,552,712.51** | **39,359,331.21** |
| 二、投资活动产生的现金流量： | | | |
| 收回投资收到的现金 | | | |
| 取得投资收益收到的现金 | | 565,873.23 | 1,692,177.00 |
| 处置固定资产、无形资产和其他长期资产收回的现金净额 | | | 540,466.00 |
| 处置子公司及其他营业单位收到的现金净额 | | -11,913,089.40 | |
| 收到其他与投资活动有关的现金 | 八、36 | 1,016,853.16 | |
| 投资活动现金流入小计 | | -10,330,363.01 | 2,232,643.00 |
| 购建固定资产、无形资产和其他长期资产支付的现金 | | 15,950,090.37 | 4,493,218.00 |
| 投资支付的现金 | | | |
| 质押贷款增加额 | | | |
| 取得子公司及其他营业单位支付的现金净额 | | | |
| 支付其他与投资活动有关的现金 | | | |
| 投资活动现金流出小计 | | 15,950,090.37 | 4,493,218.00 |
| 投资活动产生的现金流量净额 | | **-26,280,453.38** | **-2,260,575.00** |
| 三、筹资活动产生的现金流量： | | | |
| 吸收投资收到的现金 | | | |
| 其中：子公司吸收少数股东投资收到的现金 | | | |
| 取得借款收到的现金 | | 338,000,000.00 | 300,000,000.00 |
| 发行债券收到的现金 | | | |
| 收到其他与筹资活动有关的现金 | | | |
| 筹资活动现金流入小计 | | 338,000,000.00 | 300,000,000.00 |
| 偿还债务支付的现金 | | 344,000,000.00 | 380,000,000.00 |
| 分配股利、利润或偿付利息支付的现金 | | 16,979,452.50 | 21,219,707.00 |
| 其中：子公司支付给少数股东的股利、利润 | | | |
| 支付其他与筹资活动有关的现金 | | | 1,704,578.00 |
| 筹资活动现金流出小计 | | 360,979,452.50 | 402,924,285.00 |
| 筹资活动产生的现金流量净额 | | **-22,979,452.50** | **-102,924,285.00** |
| 四、汇率变动对现金及现金等价物的影响 | | **-1,190,995.05** | |
| 五、现金及现金等价物净增加额 | | **-16,898,188.42** | **-65,825,528.79** |
| 加：期初现金及现金等价物余额 | | 125,331,380.96 | 191,156,909.75 |
| 六、期末现金及现金等价物余额 | 八、36 | 108,433,192.54 | 125,331,380.96 |

公司法定代表人:邢道钦          主管会计工作负责人:姜阿合          会计机构负责人:邱东风

彩虹显示器件股份有限公司 2007 年年度报告

## 母公司现金流量表

编制单位：彩虹显示器件股份有限公司                                          单位:元 币种:人民币

| 项目 | 附注 | 2007 年度 | 2006 年度 |
|---|---|---|---|
| 一、经营活动产生的现金流量: | | | |
| 销售商品、提供劳务收到的现金 | | 927,098,938.48 | 1,088,624,475.49 |
| 收到的税费返还 | | 13,906,857.38 | 23,594,975.00 |
| 收到其他与经营活动有关的现金 | | 2,098,458.85 | 1,071,154.00 |
| 经营活动现金流入小计 | | 943,104,254.71 | 1,113,290,604.49 |
| 购买商品、接受劳务支付的现金 | | 758,152,826.49 | 909,411,626.00 |
| 支付给职工以及为职工支付的现金 | | 119,731,590.28 | 107,347,670.00 |
| 支付的各项税费 | | 37,458,226.66 | 38,066,402.00 |
| 支付其他与经营活动有关的现金 | | 13,920,543.95 | 20,907,402.00 |
| 经营活动现金流出小计 | | 929,263,187.38 | 1,075,733,100.00 |
| 经营活动产生的现金流量净额 | | **13,841,067.33** | **37,557,504.49** |
| 二、投资活动产生的现金流量: | | | |
| 收回投资收到的现金 | | | |
| 取得投资收益收到的现金 | | 565,873.23 | 1,486,333.00 |
| 处置固定资产、无形资产和其他长期资产收回的现金净额 | | | 521,000.00 |
| 处置子公司及其他营业单位收到的现金净额 | | | |
| 收到其他与投资活动有关的现金 | | 868,656.40 | |
| 投资活动现金流入小计 | | 1,434,529.63 | 2,007,333.00 |
| 购建固定资产、无形资产和其他长期资产支付的现金 | | 6,915,264.45 | 4,323,494.00 |
| 投资支付的现金 | | | |
| 取得子公司及其他营业单位支付的现金净额 | | | |
| 支付其他与投资活动有关的现金 | | | |
| 投资活动现金流出小计 | | 6,915,264.45 | 4,323,494.00 |
| 投资活动产生的现金流量净额 | | **-5,480,734.82** | **-2,316,161.00** |
| 三、筹资活动产生的现金流量: | | | |
| 吸收投资收到的现金 | | | |
| 取得借款收到的现金 | | 338,000,000.00 | 300,000,000.00 |
| 收到其他与筹资活动有关的现金 | | | |
| 筹资活动现金流入小计 | | 338,000,000.00 | 300,000,000.00 |
| 偿还债务支付的现金 | | 344,000,000.00 | 380,000,000.00 |
| 分配股利、利润或偿付利息支付的现金 | | 16,979,452.50 | 21,219,707.00 |
| 支付其他与筹资活动有关的现金 | | | 208,051.00 |
| 筹资活动现金流出小计 | | 360,979,452.50 | 401,427,758.00 |
| 筹资活动产生的现金流量净额 | | **-22,979,452.50** | **-101,427,758.00** |
| 四、汇率变动对现金及现金等价物的影响 | | **-1,161,121.45** | |
| 五、现金及现金等价物净增加额 | | **-15,780,241.44** | **-66,186,414.51** |
| 加: 期初现金及现金等价物余额 | | 108,856,557.35 | 175,042,971.86 |
| 六、期末现金及现金等价物余额 | | **93,076,315.91** | **108,856,557.35** |

公司法定代表人:邢道钦            主管会计工作负责人:姜阿合            会计机构负责人:邱东风

彩虹显示器件股份有限公司 2007 年年度报告

## 合并所有者权益变动表

2007 年 1-12 月

编制单位:彩虹显示器件股份有限公司 单位:元 币种:人民币

| 项目 | 本期金额 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 归属于母公司所有者权益 | | | | | | | 少数股东权益 | 所有者权益合计 |
| | 实收资本(或股本) | 资本公积 | 减:库存股 | 盈余公积 | 一般风险准备 | 未分配利润 | 其他 | | |
| 一、上年末余额 | 421,148,800.00 | 636,528,565.67 | | 227,022,296.24 | | 100,782,761.24 | | 67,782,176.47 | 1,453,264,599.62 |
| 加:会计政策变更 | | | | | | | | | |
| 前期差错更正 | | | | | | | | | |
| 二、本年年初余额 | 421,148,800.00 | 636,528,565.67 | | 227,022,296.24 | | 100,782,761.24 | | 67,782,176.47 | 1,453,264,599.62 |
| 三、本年增减变动金额(减少以"－"号填列) | | 70,811,191.82 | | | | -28,535,047.41 | | -66,925,076.06 | -24,648,931.65 |
| (一)净利润 | | | | | | -28,433,627.98 | | 947,507.56 | -27,486,120.42 |
| (二)直接计入所有者权益的利得和损失 | | 70,811,191.82 | | | | -101,419.43 | | -96,324.31 | 70,613,448.08 |
| 1. 可供出售金融资产公允价值变动净额 | | | | | | | | | |
| 2. 权益法下被投资单位其他所有者权益变动的影响 | | | | | | | | | |
| 3. 与计入所有者权益项目相关的所得税影响 | | | | | | | | | |
| 4. 其他 | | 70,811,191.82 | | | | -101,419.43 | | -96,324.31 | 70,613,448.08 |
| 上述(一)和(二)小计 | | 70,811,191.82 | | | | -28,535,047.41 | | 851,183.25 | 43,127,327.66 |
| (三)所有者投入和减少资本 | | | | | | | | -67,776,259.31 | -67,776,259.31 |
| 1. 所有者投入资本 | | | | | | | | | |
| 2. 股份支付计入所有者权益的金额 | | | | | | | | | |
| 3. 其他 | | | | | | | | -67,776,259.31 | -67,776,259.31 |
| (四)利润分配 | | | | | | | | | |
| 1. 提取盈余公积 | | | | | | | | | |
| 2. 提取一般风险准备 | | | | | | | | | |
| 3. 对所有者(或股东)的分配 | | | | | | | | | |
| 4. 其他 | | | | | | | | | |
| (五)所有者权益内部结转 | | | | | | | | | |
| 1. 资本公积转增资本(或股本) | | | | | | | | | |
| 2. 盈余公积转增资本(或股本) | | | | | | | | | |
| 3. 盈余公积弥补亏损 | | | | | | | | | |
| 4. 其他 | | | | | | | | | |
| 四、本期期末余额 | 421,148,800.00 | 707,339,757.49 | | 227,022,296.24 | | 72,247,713.83 | | 857,100.41 | 1,428,615,667.97 |

彩虹显示器件股份有限公司 2007 年年度报告

单位:元 币种:人民币

| 项目 | 上年同期金额 | | | | | | | 少数股东权益 | 所有者权益合计 |
|---|---|---|---|---|---|---|---|---|---|
| | 归属于母公司所有者权益 | | | | | | | | |
| | 实收资本(或股本) | 资本公积 | 减:库存股 | 盈余公积 | 一般风险准备 | 未分配利润 | 其他 | | |
| 一、上年年末余额 | 421,148,800.00 | 639,701,910.51 | | 226,408,821.32 | | 85,811,132.70 | | 68,703,815.58 | 1,441,774,480.11 |
| 加:会计政策变更 | | | | -1,241,356.89 | | 1,372,781.11 | | 107,528.61 | 238,952.83 |
| 前期差错更正 | | | | | | | | | |
| 二、本年年初余额 | 421,148,800.00 | 639,701,910.51 | | 225,167,464.43 | | 87,183,913.81 | | 68,811,344.19 | 1,442,013,432.94 |
| 三、本年增减变动金额(减少以"-"号填列) | | -3,173,344.84 | | 1,854,831.81 | | 13,598,847.43 | | -1,029,167.72 | 11,251,166.68 |
| (一)净利润 | | | | | | 15,453,679.24 | | -1,029,167.72 | 14,424,511.52 |
| (二)直接计入所有者权益的利得和损失 | | -3,173,344.84 | | | | | | | -3,173,344.84 |
| 1. 可供出售金融资产公允价值变动净额 | | | | | | | | | |
| 2. 权益法下被投资单位其他所有者权益变动的影响 | | | | | | | | | |
| 3. 与计入所有者权益项目相关的所得税影响 | | | | | | | | | |
| 4. 其他 | | -3,173,344.84 | | | | | | | -3,173,344.84 |
| 上述(一)和(二)小计 | | -3,173,344.84 | | | | 15,453,679.24 | | -1,029,167.72 | 11,251,166.68 |
| (三)所有者投入和减少资本 | | | | | | | | | |
| 1. 所有者投入资本 | | | | | | | | | |
| 2. 股份支付计入所有者权益的金额 | | | | | | | | | |
| 3. 其他 | | | | | | | | | |
| (四)利润分配 | | | | 1,854,831.81 | | -1,854,831.81 | | | |
| 1. 提取盈余公积 | | | | 1,854,831.81 | | -1,854,831.81 | | | |
| 2. 提取一般风险准备 | | | | | | | | | |
| 3. 对所有者(或股东)的分配 | | | | | | | | | |
| 4. 其他 | | | | | | | | | |
| (五)所有者权益内部结转 | | | | | | | | | |
| 1. 资本公积转增资本(或股本) | | | | | | | | | |
| 2. 盈余公积转增资本(或股本) | | | | | | | | | |
| 3. 盈余公积弥补亏损 | | | | | | | | | |
| 4. 其他 | | | | | | | | | |
| 四、本期期末余额 | 421,148,800.00 | 636,528,565.67 | | 227,022,296.24 | | 100,782,761.24 | | 67,782,176.47 | 1,453,264,599.62 |

公司法定代表人:邢道钦　　　　主管会计工作负责人:姜阿合　　　　会计机构负责人:邱东风

彩虹显示器件股份有限公司 2007 年年度报告

## 母公司所有者权益变动表

2007 年 1-12 月

编制单位: 彩虹显示器件股份有限公司 　　　　　　　　　　　　　　　　　单位:元 币种:人民币

| 项目 | 本期金额 | | | | | |
|---|---|---|---|---|---|---|
| | 实收资本（或股本） | 资本公积 | 减：库存股 | 盈余公积 | 未分配利润 | 所有者权益合计 |
| 一、上年年末余额 | 421,148,800.00 | 636,528,565.67 | | 227,022,296.24 | 92,497,871.89 | 1,377,197,533.80 |
| 加：会计政策变更 | | | | | | |
| 前期差错更正 | | | | | | |
| 二、本年年初余额 | 421,148,800.00 | 636,528,565.67 | | 227,022,296.24 | 92,497,871.89 | 1,377,197,533.80 |
| 三、本年增减变动金额（减少以"一"号填列） | | 70,811,191.82 | | | -19,294,449.67 | 51,516,742.15 |
| （一）净利润 | | | | | -19,294,449.67 | -19,294,449.67 |
| （二）直接计入所有者权益的利得和损失 | | 70,811,191.82 | | | | 70,811,191.82 |
| 1. 可供出售金融资产公允价值变动净额 | | | | | | |
| 2. 权益法下被投资单位其他所有者权益变动的影响 | | | | | | |
| 3. 与计入所有者权益项目相关的所得税影响 | | | | | | |
| 4. 其他 | | 70,811,191.82 | | | | 70,811,191.82 |
| 上述（一）和（二）小计 | | 70,811,191.82 | | | -19,294,449.67 | 51,516,742.15 |
| （三）所有者投入和减少资本 | | | | | | |
| 1. 所有者投入资本 | | | | | | |
| 2. 股份支付计入所有者权益的金额 | | | | | | |
| 3. 其他 | | | | | | |
| （四）利润分配 | | | | | | |
| 1. 提取盈余公积 | | | | | | |
| 2. 对所有者（或股东）的分配 | | | | | | |
| 3. 其他 | | | | | | |
| （五）所有者权益内部结转 | | | | | | |
| 1. 资本公积转增资本（或股本） | | | | | | |
| 2. 盈余公积转增资本（或股本） | | | | | | |
| 3. 盈余公积弥补亏损 | | | | | | |
| 4. 其他 | | | | | | |
| 四、本期期末余额 | 421,148,800.00 | 707,339,757.49 | | 227,022,296.24 | 73,203,422.22 | 1,428,714,275.95 |

彩虹显示器件股份有限公司 2007 年年度报告

单位:元 币种:人民币

| 项目 | 上年同期金额 | | | | | |
|---|---|---|---|---|---|---|
| | 实收资本(或股本) | 资本公积 | 减:库存股 | 盈余公积 | 未分配利润 | 所有者权益合计 |
| 一、上年年末余额 | 421,148,800.00 | 639,701,910.51 | | 226,408,821.32 | 86,515,893.48 | 1,373,775,425.31 |
| 加:会计政策变更 | | | | -1,241,356.89 | -10,711,507.86 | -11,952,864.75 |
| 前期差错更正 | | | | | | |
| 二、本年年初余额 | 421,148,800.00 | 639,701,910.51 | | 225,167,464.43 | 75,804,385.62 | 1,361,822,560.56 |
| 三、本年增减变动金额(减少以"一"号填列) | | -3,173,344.84 | | 1,854,831.81 | 16,693,486.27 | 15,374,973.24 |
| (一)净利润 | | | | | 18,548,318.08 | 18,548,318.08 |
| (二)直接计入所有者权益的利得和损失 | | -3,173,344.84 | | | | -3,173,344.84 |
| 1. 可供出售金融资产公允价值变动净额 | | | | | | |
| 2. 权益法下被投资单位其他所有者权益变动的影响 | | | | | | |
| 3. 与计入所有者权益项目相关的所得税影响 | | | | | | |
| 4. 其他 | | -3,173,344.84 | | | | -3,173,344.84 |
| 上述(一)和(二)小计 | | -3,173,344.84 | | | 18,548,318.08 | 15,374,973.24 |
| (三)所有者投入和减少资本 | | | | | | |
| 1. 所有者投入资本 | | | | | | |
| 2. 股份支付计入所有者权益的金额 | | | | | | |
| 3. 其他 | | | | | | |
| (四)利润分配 | | | | 1,854,831.81 | -1,854,831.81 | |
| 1. 提取盈余公积 | | | | 1,854,831.81 | -1,854,831.81 | |
| 2. 对所有者(或股东)的分配 | | | | | | |
| 3. 其他 | | | | | | |
| (五)所有者权益内部结转 | | | | | | |
| 1. 资本公积转增资本(或股本) | | | | | | |
| 2. 盈余公积转增资本(或股本) | | | | | | |
| 3. 盈余公积弥补亏损 | | | | | | |
| 4. 其他 | | | | | | |
| 四、本期期末余额 | 421,148,800.00 | 636,528,565.67 | | 227,022,296.24 | 92,497,871.89 | 1,377,197,533.80 |

公司法定代表人:邢道钦          主管会计工作负责人:姜阿合          会计机构负责人:邱东风

彩虹显示器件股份有限公司 2007 年年度报告

## 一、公司的基本情况

彩虹显示器件股份有限公司（以下简称"本公司"）是经陕西省经济体制改革委员会陕改发〔1992〕34号文批准，由彩虹集团公司（以下简称"彩虹集团"）、原中国工商银行陕西省信托投资公司、原中国建设银行陕西省信托投资公司三方共同发起，以募集方式设立的股份有限公司。本公司于 1992 年 7 月 29 日向陕西省工商行政管理局申请工商注册登记，营业执照注册号为 610000100063235，本公司现注册资本为人民币 421,148,800 元，法定代表人为邢道钦先生，税务登记号码：610198220533028。

本公司股票经相关政府部门批准于 1996 年 5 月 20 日在上海证券交易所挂牌交易。1997 年 7 月经中国证监会批准同意，原中国工商银行陕西省信托投资公司、原中国建设银行陕西省信托投资公司、原中国银行陕西省信托投资公司分别将其持有的彩虹股份共计 12,288 万股股份转让给彩虹集团。2004 年 10 月经国务院国有资产监督管理委员会批复，彩虹集团将其持有本公司的股份全部转让给彩虹集团独家发起设立的彩虹集团电子股份有限公司（以下简称"彩虹电子"），彩虹电子成为本公司的控股股东，彩虹集团成为本公司最终控股公司。

本公司于 2006 年 7 月 27 日实施了股权分置，全体非流通股股东以其持有的股票按其持股比例向流通股股东每 10 股送 4.2 股，总计对价股份为 60,330,816 股；实施股权分置后公司注册资本仍为人民币 421,148,800 元，彩虹电子持有本公司 180,675,565 股股份，占注册资本 42.90%。2007 年西安飞机工业（集团）有限责任公司等 9 家有限售条件的流通股股东分别与彩虹电子签订了《关于偿付股权分置改革对价的协议》，向彩虹电子偿还了代垫股份合计 1,791,419 股股份，并已办理完成股权过户手续；另 2007 年彩虹电子出售本公司 8,277,440 股股份，至 2007 年末，彩虹电子持有本公司 174,189,544 股股份，占注册资本 41.36%。

本公司经营范围：主要从事彩色显示器件、电子产品及零部件、原材料的生产、开发与经营，自营和代理各类商品及技术的进出口业务、承办"三来一补"业务（国家限制或禁止进出口的商品和技术除外）及实物租赁等。

## 二、财务报表的编制基础

本财务报表以本公司持续经营为基础编制。

本公司原按照 2006 年以前颁布的企业会计准则和《企业会计制度》(以下合称"原会计准则和制度")编制财务报表。自 2007 年 1 月 1 日起，本公司开始执行财政部于 2006 年颁布的企业会计准则(以下简称"企业会计准则")。2007 年度财务报表为本公司首份按照企业会计准则编制的年度财务报表。

在编制 2007 年度财务报表时，2006 年度的相关比较数字已按照财政部《企业会计准则第 38 号-首次执行企业会计准则》及相关规定、中国证监会《公开发行证券的公司信息披露规范问答第 7 号 - 新旧会计准则过渡期间比较财务会计信息的编制和披露》的要求进行追溯调整，所有项目已按照企业会计准则重新列报。

彩虹显示器件股份有限公司 2007 年年度报告

### 三、遵循企业会计准则的声明

本公司编制的财务报表符合企业会计准则的要求，真实完整地反映了本公司的财务状况、经营成果和现金流量等有关信息。

### 四、重大会计政策、会计估计变更和重大会计差错更正

1．重大会计政策、会计估计变更的影响

本公司原执行 2006 年以前颁布的原企业会计准则和制度，从 2007 年 1 月 1 日执行企业会计准则，并自该日起按照新企业会计准则的规定确认、计量和报告本公司的交易或事项。对于因首次执行新企业会计准则而发生的会计政策变更，本公司采用下述方法进行处理。

● 采用追溯调整法核算的重大会计政策变更

（1）长期股权投资：执行新企业会计准则之前，长期股权投资采用权益法核算时，初始投资成本大于应享有被投资单位所有者权益份额的差额作为股权投资借方差额核算，并按一定期限平均摊销计入损益。初始投资成本低于应享有被投资单位所有者权益份额的差额，在财会[2003]10 号文发布之前产生的作为股权投资贷方差额核算，并按一定期限平均摊销计入损益；在财会[2003]10 号文发布之后产生的，计入资本公积。

执行新企业会计准则之前，母公司报表中以权益法核算对子公司的长期股权投资。执行新企业会计准则后，有关长期股权投资的会计政策详见附注五.9 中的"长期股权投资"。于首次执行日，对母公司报表中的对子公司长期股权投资予以追溯调整，视同该子公司自最初即采用成本法核算。

（2）股权分置：执行新企业会计准则之前，单设"股权分置流通权"科目核算在股权分置改革中为取得流通权而支付的对价，平时不进行结转，也不计提减值准备。执行新企业会计准则后，在股权分置改革中形成的股权分置流通权的余额及相关的权益性投资，按照附注五.9 中的"长期股权投资产"所述的会计政策划分为长期股权投资。

（3）所得税：执行新企业会计准则之前，所得税的会计处理方法采用应付税款法。执行新企业会计准则后，本集团采用资产负债表债务法进行所得税会计处理，有关所得税的会计政策详见附注五.24 中的"所得税"。

（4）商誉：执行新企业会计准则之前，企业合并形成的商誉按照一定期限平均摊销。执行新企业会计准则后，属于同一控制下企业合并产生的商誉于首次执行日的摊余价值全额冲销，调整留存收益；属于非同一控制下企业合并产生的商誉于首次执行日的摊余价值作为认定成本，不再进行摊销。有关企业合并的会计政策详见附注五.25 中的"企业合并"。

（5）与收益相关的政府补助：在执行新企业会计准则之前，与收益相关的政府补助在实际收到时计入补贴收入。执行新企业会计准则之后，上述与收益相关的政府补助在能够满足所附条件并且能够收到时予以确认。

彩虹显示器件股份有限公司 2007 年年度报告

对于上述会计政策变更，本公司按照《企业会计准则第 38 号—— 首次执行企业会计准则》及其相关规定，进行了追溯调整，并对财务报表重新进行了表述。上述会计政策变更对 2006 年 1 月 1 日和 2006 年 12 月 31 日的合并及母公司的股东权益及 2006 年度净利润的影响列示如下：

1）对 2006 年 1 月 1 日合并股东权益的影响

| 项目 | 未分配利润 | 盈余公积 | 资本公积 | 少数股东权益 | 合计 |
|---|---|---|---|---|---|
| （1）长期股权投资由权益法改为成本法 | 1,241,357 | -1,241,357 | 0.00 | 0.00 | 0.00 |
| （2）少数股东权益作为股东权益列报 | 0.00 | 0.00 | 0.00 | 68,703,815 | 68,703,815 |
| （3）所得税 | 131,424 | 0.00 | 0.00 | 107,529 | 238,953 |
| 合计 | 1,372,781 | -1,241,357 | 0.00 | 68,811,344 | 68,942,768 |

2）对 2006 年度合并净利润的影响

| 项目 | 金额 |
|---|---|
| （1）所得税 | 224,086 |
| （2）内退人员辞退福利（含合并范围内子公司） | -5,460,549 |
| （3）少数股东损益作为净利润项目列报（不含辞退福利部分） | -101,324 |
| 合计 | -5,337,787 |

3）对 2006 年 12 月 31 日合并股东权益的影响

| 项目 | 未分配利润 | 盈余公积 | 资本公积 | 少数股东权益 | 合计 |
|---|---|---|---|---|---|
| （1）长期股权投资由权益法改为成本法 | 1,241,357 | -1,241,357 | 0.00 | 0.00 | 0.00 |
| （2）内退人员辞退福利 | -4,586,170 | 0.00 | 0.00 | -874,380 | -5,460,550 |
| （3）少数股东损益作为股东权益列报 | 0.00 | 0.00 | 0.00 | 68,602,492 | 68,602,492 |
| （4）盈余公积的转回 | 334,469 | -334,469 | 0.00 | 0.00 | 0.00 |
| （5）所得税 | 408,975 | 0.00 | 0.00 | 54,064 | 463,039 |
| 合计 | -2,601,369 | -1,575,826 | 0.00 | 67,782,176 | 63,604,981 |

4）对 2006 年 1 月 1 日母公司股东权益的影响

| 项目 | 未分配利润 | 盈余公积 | 资本公积 | 合计 |
|---|---|---|---|---|
| 长期股权投资由权益法改为成本法 | -10,711,508 | -1,241,357 | 0.00 | -11,952,865 |

5）对 2006 年度母公司净利润的影响

| 项目 | 金额 |
|---|---|
| （1）内退人员辞退福利 | -3,174,589 |
| （2）投资收益 | -170,102 |
| 合计 | -3,344,691 |

彩虹显示器件股份有限公司 2007 年年度报告

6）对 2006 年 12 月 31 日母公司股东权益的影响

| 项目 | 未分配利润 | 盈余公积 | 资本公积 | 合计 |
|---|---|---|---|---|
| （1）盈余公积的转回 | 334,469 | -334,469 | 0.00 | 0.00 |
| （2）内退人员辞退福利 | -3,174,589 | | | -3,174,589 |
| （3）长期股权投资由权益法改为成本法 | -10,881,610 | -1,241,357 | 0.00 | -12,122,967 |
| 合计 | -13,721,730 | -1,575,826 | 0.00 | -15,297,556 |

● 采用未来适用法核算的重大会计政策变更

除上述采用追溯调整法核算的重大会计政策变更以外，本公司因首次执行新企业会计准则还发生了下述主要会计政策变更，并采用未来适用法进行会计处理。具体包括：

（1）借款费用资本化：在执行新企业会计准则前，本公司仅将用于固定资产的专门借款的累计资产支出加权平均数，按所占用专门借款加权平均利率计算确定的借款利息进行资本化。在执行新企业会计准则后，本公司按照本附注五.13 所述会计政策，对借款费用进行资本化。

（2）研发费用资本化：在执行新企业会计准则前，本公司研究开发费用全部费用化计入当期损益。在执行新企业会计准则之后，本公司按照本附注五.15 所述会计政策，对于符合规定条件的开发支出，可以资本化确认为无形资产。

（3）非流动资产减值：在执行新企业会计准则之前，本公司前期已确认的非流动资产的减值损失如果在以后会计期间恢复的，按照恢复的金额，在不超过已确认减值损失金额的范围内，予以转回，计入当期损益。在执行新企业会计准则之后，本公司按照本附注五.16 所述会计政策，对非流动资产计提减值准备，非流动资产的减值损失一经确认，除资产处置、出售、对外投资等情况外，在以后会计期间不得转回。

（4）职工福利费：执行新企业会计准则之前，本公司按照工资总额的 14%计提职工福利费，并计入当期损益。在执行新企业会计准则后，本公司不再按照工资总额的 14%计提职工福利费，本公司根据实际情况和职工福利计划确认应付职工薪酬(职工福利)，并计入当期损益。首次执行日后的第一个会计期间，将根据新企业会计准则确认的应付职工薪酬(职工福利)与原转入的职工薪酬(职工福利)之间的差额计入当期损益。

（5）与资产相关的政府补助：执行新企业会计准则前，本公司收到的与资产相关的政府补助作为专项应付款核算，并在有关拨款项目完成后，对于形成固定资产或产品并按规定留给本公司的，将有关专项应付款计入资本公积；对未形成资产需要核销的拨款以及形成资产按规定上交国家的，经批准后将专项应付款与有关资产科目冲销。执行新企业会计准则后，本公司按照本附注五.22 所述的会计政策核算与资产相关的政府补助。

2. 重大会计差错的更正和影响

本公司本年度无重大会计差错的更正和影响事项。

彩虹显示器件股份有限公司 2007 年年度报告

## 五、重要会计政策、会计估计和合并财务报表的编制方法

1．会计期间

本公司的会计期间为公历 1 月 1 日至 12 月 31 日。

2．记账本位币

本公司以人民币为记账本位币。

3．记账基础和计价原则

本公司会计核算以权责发生制为记账基础，除交易性金融资产、可供出售金融资产以公允价值计量外，均以历史成本为计价原则。

4．现金及现金等价物

本公司现金流量表之现金指库存现金以及可以随时用于支付的存款。现金流量表之现金等价物指持有期限短（一般是指从购买日起三个月内到期）、流动性强、易于转换为已知金额现金、价值变动风险很小的投资。

5．外币折算

（1）外币交易

本公司的外币交易按业务发生当日中国人民银行公布的市场汇价折算成人民币记账，资产负债表日外币货币性资产和负债按当日中国人民银行公布的市场汇价折算。由此产生的汇兑损益，与购建固定资产有关且在其达到预定使用状态前的，计入有关固定资产的购建成本；与购建固定资产无关的属于筹建期间的计入长期待摊费用；属于生产经营期间的计入当期财务费用。以公允价值计量的外币非货币性项目，采用公允价值确定日的即期汇率折算为人民币，所产生的折算差额，作为公允价值变动直接计入当期损益。

（2）外币财务报表的折算

境外经营的资产负债表中的资产和负债项目，采用资产负债表日的即期汇率折算，股东权益项目除未分配利润项目外，其他项目采用发生时的即期汇率折算。境外经营的利润表中的收入与费用项目，采用交易发生日的即期汇率折算。上述折算产生的外币报表折算差额，在股东权益项目下单独列示。实质上构成对境外经营净投资的外币货币性项目，因汇率变动而产生的汇兑差额，在编制合并财务报表时，也作为外币报表折算差额在股东权益项目下单独列示。处置境外经营时，与该境外经营有关的外币报表折算差额，按比例转入处置当期损益。

外币现金流量以及境外子公司的现金流量采用现金流量发生日的即期汇率折算。汇率变动对现金的影响额，在现金流量表中单独列示。

6．金融资产

（1）金融资产的分类：本公司按投资目的和经济实质对拥有的金融资产分为以公允价值计量且其变动计入当期损益的金融资产、持有至到期投资、应收款项和可供出售金融资产四大类。

48

彩虹显示器件股份有限公司 2007 年年度报告

1）以公允价值计量且其变动计入当期损益的金融资产：持有的主要目的是短期内出售的金融资产为以公允价值计量且其变动计入当期损益的金融资产，在资产负债表中以交易性金融资产列示。

2）持有至到期投资：是指到期日固定、回收金额固定或可确定，且管理层有明确意图和能力持有至到期的非衍生金融资产。

3）应收款项是指在活跃市场中没有报价，回收金额固定或可确定的非衍生金融资产，包括应收票据、应收账款、应收利息、应收股利及其他应收款等。

4）可供出售金融资产包括初始确认时即被指定为可供出售的非衍生金融资产及未被划分为其他类的金融资产。

（2）金融资产的确认和计量：

金融资产以公允价值进行初始确认。以公允价值计量且其变动计入当期损益的金融资产，取得时发生的相关交易费用直接计入当期损益。其他金融资产的相关交易费用计入初始确认金额。当某项金融资产收取现金流量的合同权利已终止或与该金融资产所有权上几乎所有的风险和报酬已转移至转入方的，终止确认该金融资产。

以公允价值计量且其变动计入当期损益的金融资产和可供出售金融资产按照公允价值进行后续计量；但在活跃市场中没有报价且其公允价值不能可靠计量的权益工具投资，按照成本计量；应收款项以及持有至到期投资采用实际利率法，以摊余成本列示。

以公允价值计量且其变动计入当期损益的金融资产的公允价值变动计入公允价值变动损益；在资产持有期间所取得的利息或现金股利，确认为投资收益；处置时，其公允价值与初始入账金额之间的差额确认为投资损益，同时调整公允价值变动损益。

可供出售金融资产的公允价值变动计入股东权益；持有期间按实际利率法计算的利息，计入投资收益；可供出售权益工具投资的现金股利，于被投资单位宣告发放股利时计入投资收益；处置时，取得的价款与账面价值扣除原直接计入股东权益的公允价值变动累计额之后的差额，计入投资损益。

（3）金融资产减值：

除以公允价值计量且其变动计入当期损益的金融资产外，本公司于资产负债表日对金融资产的账面价值进行检查，如果有客观证据表明某项金融资产发生减值的，计提减值准备。如果可供出售金融资产的公允价值发生较大幅度或非暂时性下降，原直接计入股东权益的因公允价值下降形成的累计损失计入减值损失。对已确认减值损失的可供出售债务工具投资，在期后公允价值上升且客观上与确认原减值损失确认后发生的事项有关的，原确认的减值损失予以转回，计入当期损益。对已确认减值损失的可供出售权益工具投资，在期后公允价值上升且客观上与确认原减值损失确认后发生的事项有关的，原确认的减值损失予以转回，计入股东权益。在活跃市场中没有报价且其公允价值不能可靠计量的权益工具投资发生的减值损失，不予转回。

7．应收款项

彩虹显示器件股份有限公司 2007 年年度报告

应收款项包括应收账款、其他应收款等。本公司对外销售商品或提供劳务形成的应收款项，按从购货方应收的合同或协议价款的公允价值作为初始确认金额。应收款项采用实际利率法，以摊余成本减坏账准备列示。

对于本公司单项金额超过 100 万元的应收款项视为重大应收款项，当存在客观证据表明本公司将无法按应收款项的原有条款收回所有款项时，根据其未来现金流量现值低于其账面价值的差额，单独进行减值测试，计提坏账准备。

对于单项金额非重大的应收款项，与经单独测试后未减值的应收款项一起按信用风险特征划分为若干组合，根据以前年度与之相同或相类似的、具有类似信用风险特征的应收账款组合的实际损失率为基础，结合现时情况确定本年度各项组合计提坏账准备的比例，据此计算本年度应计提的坏账准备。

应收款项坏账准备计提比例如下：

| 账龄 | 计提比例 |
| --- | --- |
| 6 个月以内 | 0.00% |
| 6 个月—1 年 | 1.00% |
| 1 年—2 年 | 5.00% |
| 2 年—3 年 | 10.00% |
| 3 年—4 年 | 30.00% |
| 4 年—5 年 | 50.00% |
| 5 年以上 | 100.00% |

8. 存货

（1）存货的分类：存货分为原材料、在产品、库存商品、低值易耗品等。

（2）存货取得和发出的计价方法：存货实行永续盘存制，购入和入库按实际成本计价，领用和销售原材料以及销售产成品采用加权平均法核算。

（3）低值易耗品和包装物采用一次转销法进行摊销，计入相关成本费用。

（4）期末存货计价原则及存货跌价准备确认标准和计提方法：期末存货按成本与可变现净值孰低原则计价；期末，在对存货进行全面盘点的基础上，对于存货因遭受毁损、全部或部分陈旧过时或销售价格低于成本等原因，预计其成本不可收回的部分，提取存货跌价准备。产成品及大宗原材料的存货跌价准备按单个存货项目的成本高于其可变现净值的差额提取；其他数量繁多、单价较低的原辅材料按类别提取存货跌价准备。

（5）产成品、在产品和用于出售的材料等直接用于出售的商品存货，其可变现净值按该存货的估计售价减去估计的销售费用和相关税费后的金额确定；用于生产而持有的材料存货，其可变现净值按所生产的产成品的估计售价减去至完工时估计将要发生的成本、估计的销售费用和相关税费后的金额确定；为执行销售合同或者劳务合同而持有的存货，其可变现净值以合同价格为基础计算；企业持有存货的数量多于销售合同订购数量的，超出部分的存货可变现净值以一般销售价格为基础计算。

彩虹显示器件股份有限公司 2007 年年度报告

9. 长期股权投资

（1）长期股权投资的计价

通过同一控制下的企业合并取得的长期股权投资，在合并日按照取得被合并方所有者权益账面价值的份额作为长期股权投资的初始投资成本。通过非同一控制下的企业合并取得的长期股权投资，以在合并（购买）日为取得对被合并（购买）方的控制权而付出的资产、发生或承担的负债以及发行的权益性证券的公允价值作为合并成本。在合并（购买）日按照合并成本作为长期股权投资的初始投资成本。

除上述通过企业合并取得的长期股权投资外，长期股权投资通过支付的现金、付出的非货币性资产或发行的权益性证券的方式取得的，以其公允价值作为长期股权投资的初始投资成本；长期股权投资通过债务重组方式取得的，以债权转为股权所享有股份的公允价值确认为对债务人的初始投资成本；长期股权投资是投资者投入的，以投资合同或协议约定的价值作为初始投资成本，但合同或协议约定价值不公允时，则以投入股权的公允价值作为初始投资成本。长期股权投资的初始投资成本大于投资时应享有被投资单位可辨认净资产公允价值份额的，不调整长期股权投资的初始投资成本；长期股权投资的初始投资成本小于投资时应享有被投资单位可辨认净资产公允价值份额的差额，计入当期损益，同时调整长期股权投资的成本。

（2）长期股权投资的核算

本公司对子公司的投资，是指本公司对其拥有实际控制权的股权投资。本公司对子公司投资采用成本法核算，编制合并财务报表时按权益法进行调整。

本公司对合营公司的投资，是指按照合同约定对某项经济活动所共有的控制，仅在与该项经济活动相关的重要财务和生产经营决策需要分享控制权的投资方一致同意时存在的股权投资。对合营投资本公司采用权益法核算。

本公司对联营公司的投资，是指本公司对其具有重大影响的股权投资。对联营投资本公司采用权益法核算。

本公司对不具重大影响，并且在活跃市场中没有报价、公允价值不能可靠计量的长期股权投资，采用成本法核算。本公司对不具重大影响，但在活跃市场中有报价或公允价值能够可靠计量的长期股权投资，在可供出售金融资产项目列报，采用公允价值计量，其公允价值变动计入股东权益。

10. 投资性房地产

（1）投资性房地产的分类：包括已出租的土地使用权；持有并准备增值后转让的土地使用权；已出租的建筑物。

（2）投资性房地产的计价：投资性房地产按其成本作为入账价值，外购投资性房地产的成本包括购买价款、相关税费和可直接归属于该资产的其他支出；自行建造投资性房地产的成本，由建造该项资产达到预定可使用状态前所发生的必要支出构成。

本公司对投资性房地产采用成本模式进行后续计量，按其预计使用寿命及净残值率对建筑物和土地使用权计提折旧或摊销。投资性房地产的预计使用寿命、净残值率及年折旧(摊销)率列示如下：

彩虹显示器件股份有限公司 2007 年年度报告

| 类　别 | 折旧年限（年） | 残值率 | 年折旧率（%） |
|---|---|---|---|
| 房屋建筑物 | 30 年 | 3.00% | 3.23% |

（3）投资性房地产的转换和处置：

投资性房地产的用途改变为自用时，则自改变之日起，将该投资性房地产转换为固定资产或无形资产。自用房地产的用途改变为赚取租金或资本增值时，则自改变之日起，将固定资产或无形资产转换为投资性房地产。发生转换时，以转换前的账面价值作为转换后的入账价值。

当投资性房地产被处置，或者永久退出使用且预计不能从其处置中取得经济利益时，终止确认该项投资性房地产。投资性房地产出售、转让、报废或毁损的处置收入扣除其账面价值和相关税费后的金额计入当期损益。

11.　固定资产

（1）固定资产的确认标准：固定资产是指同时具有以下特征，即为生产商品、提供劳务、出租或经营管理而持有的，使用年限超过一年的有形资产。

（2）固定资产的分类：房屋及建筑物、专用电子设备、专用玻璃设备、机器设备、办公设备及其他。

（3）固定资产的计价：固定资产按其成本作为入账价值，其中，外购的固定资产的成本包括买价、增值税、进口关税等相关税费，以及为使固定资产达到预定可使用状态前所发生的可直接归属于该资产的其他支出。自行建造固定资产的成本，由建造该项资产达到预定可使用状态前所发生的必要支出构成。投资者投入的固定资产，按投资合同或协议约定的价值作为入账价值，但合同或协议约定价值不公允的按公允价值入账。融资租赁租入的固定资产，按租赁开始日租赁资产公允价值与最低租赁付款额的现值两者中较低者，作为入账价值。

（4）固定资产折旧方法：除已提足折旧仍继续使用的固定资产，本公司对所有固定资产计提折旧。计提折旧时采用平均年限法，按预计的使用年限，以单项折旧率按月计算，并根据用途分别计入相关资产的成本或当期费用。预计净残值率为 3%，固定资产分类折旧年限、折旧率如下：

| 类　别 | 折旧年限（年） | 年折旧率（%） |
|---|---|---|
| 房屋及建筑物 | 30 年 | 3.23% |
| 专用电子设备 | 15 年 | 6.47% |
| 专用玻璃设备 | 6 年 | 16.17% |
| 机器设备 | 18 年 | 5.39% |
| 办公设备及其他 | 5 年 | 19.40% |

（5）固定资产后续支出的处理：固定资产的后续支出主要包括修理支出、更新改良支出及装修支出等内容，在相关的经济利益很可能流入本公司且其成本能够可靠的计量时，计入固定资产成本；对于被替换的部分，终止确认其账面价值；所有其他后续支出于发生时计入当期损益。

（6）本公司于每年年度终了，对固定资产的预计使用寿命、预计净残值和折旧方法进行复核并作适当调整。

（7）当固定资产被处置、或者预期通过使用或处置不能产生经济利益时，终止确认该固定资产。固定资产出售、转让、报废或毁损的处置收入扣除其账面价值和相关税费后的金额计入当期损益。

12.  在建工程

（1）在建工程的计价：按实际发生的成本计量。自营工程按直接材料、直接工资、直接施工费等计量；出包工程按应支付的工程价款等计量；设备安装工程按所安装设备的价值、安装费用、工程试运转等所发生的支出等确定工程成本。在建工程成本还包括应当资本化的借款费用和汇兑损益。

（2）在建工程结转固定资产的标准和时点：本公司建造的固定资产在达到预定可使用状态之日起，根据工程预算、造价或工程实际成本等，按估计的价值结转固定资产，次月起开始计提折旧。待办理了竣工决算手续后再对固定资产原值差异作调整。

13.  借款费用

（1）借款费用资本化的确认原则：发生的可直接归属于需要经过相当长时间的购建活动才能达到预定可使用状态之固定资产的购建的借款费用，在资产支出及借款费用已经发生、并且为使资产达到预定可使用状态所必要的购建活动已经开始时，才能开始资本化并计入该资产的成本。当购建的资产达到预定可使用状态时停止资本化，其后发生的借款费用计入当期损益。

（2）借款费用资本化的期间：为购建固定资产所发生的借款费用，满足上述资本化条件的，在该资产达到预定可使用状态或可销售状态前所发生的，计入资产成本；若固定资产或投资性房地产的购建活动发生非正常中断，并且中断时间连续超过 3 个月，暂停借款费用的资本化，将其确认为当期费用，直至资产的购建活动重新开始；在达到预定可使用状态或可销售状态时，停止借款费用的资本化，之后发生的借款费用于发生当期直接计入财务费用。

（3）借款费用资本化金额的计算方法：为购建或者生产开发符合资本化条件的资产而借入专门借款的，以专门借款当期实际发生的利息费用，减去将尚未动用的借款资金存入银行取得的利息收入或进行暂时性投资取得的投资收益后的金额确定。

14.  无形资产

（1）无形资产的计价方法：本公司的主要无形资产是土地使用权、专利技术和非专利技术等。购入的无形资产，按实际支付的价款和相关的其他支出作为实际成本。投资者投入的无形资产，按投资合同或协议约定的价值确定实际成本，但合同或协议约定价值不公允的，按公允价值确定实际成本。

（2）无形资产摊销方法和期限：本公司的土地使用权从出让起始日起，按其出让年限平均摊销；本公司专利技术、非专利技术和其他无形资产按预计使用年限、合同规定的受益年限和法律规定的有效年限三者中最短者分期平均摊销。摊销金额按其受益对象计入相关资产成本和当期损益。

彩虹显示器件股份有限公司 2007 年年度报告

（3）本公司于每年年度终了，对使用寿命有限的无形资产的预计使用寿命及摊销方法进行复核并作适当调整。并于每个会计期间，对使用寿命不确定的无形资产的预计使用寿命进行复核，对于有证据表明无形资产的使用寿命是有限的，则估计其使用寿命并在预计使用寿命内摊销。

15．研究与开发

本公司内部研究开发项目支出根据其性质以及研发活动最终形成无形资产是否具有较大不确定性，分为研究阶段支出和开发阶段支出。

自行研究开发的无形资产，其研究阶段的支出，于发生时计入当期损益；其开发阶段的支出，同时满足下列条件的，确认为无形资产：

（1）完成该无形资产以使其能够使用或出售在技术上具有可行性；

（2）具有完成该无形资产并使用或出售的意图；

（3）运用该无形资产生产的产品存在市场或无形资产自身存在市场；

（4）有足够的技术、财务资源和其他资源支持，以完成该无形资产的开发，并有能力使用或出售该无形资产；

（5）归属于该无形资产开发阶段的支出能够可靠地计量。

不满足上述条件的开发阶段的支出，于发生时计入当期损益。前期已计入损益的开发支出不在以后期间确认为资产。已资本化的开发阶段的支出在资产负债表上列示为开发支出，自该项目达到预定可使用状态之日起转为无形资产。

16．资产减值

本公司对年末对长期股权投资(除不具重大影响，并且在活跃市场中没有报价、公允价值不能可靠计量的长期股权投资)、固定资产、在建工程、无形资产等项目进行检查，当存在下列迹象时，表明资产可能发生了减值，本公司将进行减值测试，对商誉和受益年限不确定的无形资产每年末均进行减值测试。难以对单项资产的可收回金额进行测试的，以该资产所属的资产组或资产组组合为基础测试。

减值测试后，若该资产的账面价值超过其可收回金额，其差额确认为减值损失。资产的可收回金额是指资产的公允价值减去处置费用后的净额与资产预计未来现金流量的现值两者之间的较高者。

出现减值的迹象如下：

（1）资产的市价当期大幅度下跌，其跌幅明显高于因时间的推移或者正常使用而预计的下跌。

（2）企业经营所处的经济、技术或者法律等环境以及资产所处的市场在当期或者将在近期发生重大变化，从而对企业产生不利影响。

（3）市场利率或者其他市场投资报酬率在当期已经提高，从而影响企业计算资产预计未来现金流量现值的折现率，导致资产可收回金额大幅度降低。

（4）有证据表明资产已经陈旧过时或者其实体已经损坏。

（5）资产已经或者将被闲置、终止使用或者计划提前处置。

彩虹显示器件股份有限公司 2007 年年度报告

（6）企业内部报告的证据表明资产的经济绩效已经低于或者将低于预期，如资产所创造的净现金流量或者实现的营业利润（或者亏损）远远低于（或者高于）预计金额等。

（7）其他表明资产可能已经发生减值的迹象。

17．商誉

商誉为股权投资成本或非同一控制下企业合并成本超过应享有的或企业合并中取得的被投资单位或被购买方可辨认净资产于取得日或购买日的公允价值份额的差额。

与子公司有关的商誉在合并财务报表上单独列示，与联营企业和合营企业有关的商誉，包含在长期股权投资的账面价值中。

在财务报表中单独列示的商誉至少每年进行减值测试。减值测试时，商誉的账面价值根据企业合并的协同效应分摊至受益的资产组或资产组组合。

18．职工薪酬

（1）职工薪酬

主要包括工资、奖金、津贴和补贴、职工福利费、社会保险费及住房公积金、工会经费和职工教育经费等其他与获得职工提供的服务相关的支出。

本公司在职工提供服务的会计期间，将应付的职工薪酬确认为负债，并根据职工提供服务的受益对象计入相关资产成本和费用。因解除与职工的劳动关系而给予的补偿，计入当期损益。

（2）辞退福利

辞退福利是指因解除与职工的劳动关系而给予的补偿，包括本公司决定在职工劳动合同到期前不论职工愿意与否，解除与职工的劳动关系给予的补偿；本公司在职工劳动合同到期前鼓励职工自愿接受裁减而给予的补偿；以及本公司实施的内部退休计划。

辞退福利的确认原则：

1）企业已经制定正式的解除劳动关系计划或提出自愿裁减建议，并即将实施。

2）企业不能单方面撤回解除劳动关系计划或裁减建议。

辞退福利的计量方法：

1）对于职工没有选择权的辞退计划，根据计划条款规定拟解除劳动关系的职工数量、每一职工的辞退补偿等计提应付职工薪酬。

2）对于自愿接受裁减的建议，首先预计将会接受裁减建议的职工数量，再根据预计的职工数量和每一职工的辞退补偿等计提应付职工薪酬。

辞退福利的确认标准：

1）对于分期或分阶段实施的解除劳动关系计划或自愿裁减建议，在每期或每阶段计划符合预计负债确认条件时，将该期或该阶段计划中由提供辞职福利产生的预计负债予以确认，计入该部分计划满足预计负债确认条件的当期管理费用。

彩虹显示器件股份有限公司 2007 年年度报告

2）对于符合规定的内退计划，按照内退计划规定，将自职工停止提供服务日至正常退休日之间期间、企业拟支付的内退人员工资和缴纳的社会保险费等，确认为预计负债，计入当期管理费用。

19．预计负债

（1）预计负债的确认原则：当与对外担保、未决诉讼或仲裁、产品质量保证、裁员计划、亏损合同、重组义务、固定资产弃置义务等或有事项相关的业务同时符合以下条件时，本公司将其确认为负债：

1）该义务是本公司承担的现时义务；

2）该义务的履行很可能导致经济利益流出本公司；

3）该义务的金额能够可靠地计量。

（2）预计负债计量方法：预计负债按照履行相关现时义务所需支出的最佳估计数进行初始计量，并综合考虑与或有事项有关的风险、不确定性和货币时间价值等因素。货币时间价值影响重大的，通过对相关未来现金流出进行折现后确定最佳估计数。于资产负债表日对预计负债的账面价值进行复核，并对账面价值进行调整以反映当前最佳估计数的。因时间推移导致的预计负债账面价值的增加金额，确认为利息费用。

20．收入确认方法

本公司的营业收入主要包括销售商品收入、提供劳务收入和让渡资产使用权收入。与交易相关的经济利益能够流入本公司，相关的收入能够可靠计量且满足下列各项经营活动的特定收入确认标准时，确认相关的收入。

（1）销售商品收入

在同时满足下列条件时，本公司确认销售商品实现的收入，并以从购货方已收或应收的合同或协议价款进行计量，但已收或应收的合同或协议价款不公允的除外：

1）本公司已将商品所有权上的主要风险和报酬转移给购货方；

2）本公司既没有保留通常与所有权相联系的继续管理权，也没有对已售出的商品实施有效控制；

3）收入的金额能够可靠地计量；

4）相关的经济利益很可能流入企业；

5）相关的已发生或将发生的成本能够可靠地计量。

如果合同或协议价款的收取采用递延方式，则按照应收的合同或协议价款的公允价值确定销售商品收入金额；将应收的合同或协议价款与其公允价值之间的差额在合同或协议期间内采用实际利率法进行摊销，计入当期损益。

（2）提供劳务收入

如果提供劳务交易的结果同时满足下列条件，本公司将采用完工百分比法确认提供劳务的收入，并按照从接受劳务方已收或应收的合同或协议价款确定提供劳务收入的总额，但已收或应收的合同或协议价款不公允的除外：

1）收入的金额能够可靠地计量；

彩虹显示器件股份有限公司 2007 年年度报告

2）相关的经济利益很可能流入本公司；

3）交易的完工进度能够可靠地确定；

4）交易中已发生和将发生的成本能够可靠地计量。

本公司采用完工百分比法确认提供劳务的收入时，按照已经发生的成本占估计总成本的比例（或已经提供的劳务占应提供劳务总量的比例）确定完工进度。

若提供劳务交易的结果不能够可靠估计，但已经发生的劳务成本预计能够得到补偿的，本公司将按照已经发生的劳务成本金额确认提供劳务收入，并按相同金额结转劳务成本；若已经发生的劳务成本预计不能够得到补偿的，本公司将已经发生的劳务成本计入当期损益，不确认提供劳务收入。

（3）让渡资产使用权收入

以与交易相关的经济利益能够流入本公司，收入的金额能够可靠地计量时，确认让渡资产使用权收入的实现。

1）利息收入按照他人使用本公司货币资金的时间和实际利率计算确定。

2）使用费收入按照有关合同或协议约定的收费时间和方法计算确定。

3）经营租赁收入按照直线法在租赁期内确认。

21．租赁

本公司租赁为经营租赁，经营租赁的租金支出在租赁期内按照直线法计入相关资产成本或当期损益。

22．政府补助

政府补助在本公司能够满足其所附的条件以及能够收到时，予以确认。政府补助为货币性资产的，按照实际收到的金额计量；对于按照固定的定额标准拨付的补助，按照应收的金额计量。政府补助为非货币性资产的，按照公允价值计量；公允价值不能可靠取得的，按照名义金额(1 元)计量。

与资产相关的政府补助确认为递延收益，并在相关资产使用寿命内平均分配，计入当期损益。与收益相关的政府补助，用于补偿本公司以后期间的相关费用或损失的，确认为递延收益，并在确认相关费用的期间，计入当期损益；用于补偿本公司已发生的相关费用或损失的，直接计入当期损益。

23．递延所得税资产和递延所得税负债

递延所得税资产和递延所得税负债根据资产和负债的计税基础与其账面价值的差额(暂时性差异)计算确认。对于按照税法规定能够于以后年度抵减应纳税所得额的可抵扣亏损和税款抵减，视同暂时性差异确认相应的递延所得税资产。对于商誉的初始确认产生的暂时性差异，不确认相应的递延所得税负债。对于既不影响会计利润也不影响应纳税所得额(或可抵扣亏损)的非企业合并的交易中产生的资产或负债的初始确认形成的暂时性差异，不确认相应的递延所得税资产和递延所得税负债。于资产负债表日，递延所得税资产和递延所得税负债，按照预期收回该资产或清偿该负债期间的适用税率计量。

递延所得税资产的确认以本公司很可能取得用来抵扣可抵扣暂时性差异、可抵扣亏损和税款抵减的应纳税所得额为限。

对子公司、联营企业及合营企业投资相关的暂时性差异产生的递延所得税资产和递延所得税负债，予以确认。但本公司能够控制暂时性差异转回的时间且该暂时性差异在可预见的未来很可能不会转回的，不予确认。

24．所得税的会计处理方法

本公司所得税的会计核算采用资产负债表债务法核算。

本公司以很可能取得用来抵扣可抵扣暂时性差异的应纳税所得额为限，确认由可抵扣暂时性差异产生的递延所得税资产。对已确认的递延所得税资产，当预计到未来期间很可能无法获得足够的应纳税所得额用以抵扣递延所得税资产时，应当减记递延所得税资产的账面价值。在很可能获得足够的应纳税所得额时，减记的金额予以转回。

25．企业合并

企业合并是指将两个或两个以上单独的企业合并形成一个报告主体的交易或事项。本公司在合并日或购买日确认因企业合并取得的资产、负债，合并日或购买日为实际取得被合并方或被购买方控制权的日期。

（1）同一控制下的企业合并：合并方在企业合并中取得的资产和负债，按照合并日在被合并方的账面价值计量，合并方取得的净资产账面价值与支付的合并对价账面价值的差额，调整资本公积；资本公积不足冲减的，调整留存收益。

（2）非同一控制下企业合并：合并成本为购买方在购买日为取得对被购买方的控制权而付出的资产、发生或承担的负债以及发行的权益性证券的公允价值。合并成本大于合并中取得的被购买方可辨认净资产公允价值份额的差额，确认为商誉；合并成本小于合并中取得的被购买方可辨认净资产公允价值份额的，经复核确认后，计入当期损益。

26．金融工具的公允价值确定

存在活跃市场的金融工具，以活跃市场中的先行出价确定其公允价值。不存在活跃市场的金融工具，采用估值技术确定其公允价值。估值技术包括参考熟悉情况并自愿交易的各方最近进行的市场交易中使用的价格、参照实质上相同的其他金融资产的当前公允价值、现金流量折现法和期权定价模型等。采用估值技术时，尽可能多使用市场参数，不使用与本公司特定相关的参数。

27．合并财务报表的编制方法

(1)合并范围的确定原则：本公司将拥有实际控制权的子公司及特殊目的主体纳入合并财务报表范围。

(2)合并财务报表所采用的会计方法：本公司合并财务报表是按照《企业会计准则第 33 号－合并财务报表》及相关规定的要求编制，合并时合并范围内的所有重大内部交易和往来业已抵销。

彩虹显示器件股份有限公司 2007 年年度报告

### 六、税项

本公司适用的主要税种及税率如下：

1．企业所得税

本公司根据西安市国家税务局高新技术产业开发区分局市国税商函(2003)1 号文件，经陕西省国家税务局批准，本公司从事的主营业务享有"西部大开发政策"的税务优惠，在 2001 年至 2010 年期间，减按 15%缴纳企业所得税。

西安彩虹资讯有限公司("彩虹资讯")根据西安市国家税务局市国税高函(2004)353 号文件的批准，彩虹资讯从事的主营业务享有"西部大开发政策"的税务优惠，在 2003 年至 2010 年期间，减按 15%缴纳企业所得税。

西安彩辉显示技术有限公司("西安彩辉")按 33%的税率缴纳企业所得税。

全国人民代表大会于 2007 年 3 月 16 日通过了《中华人民共和国企业所得税法》("新所得税法")。新所得税法将自 2008 年 1 月 1 日起施行。

根据国务院关于关于实施企业所得税过渡优惠政策的通知"国发〔2007〕39 号"文件中"根据国务院实施西部大开发有关文件精神，财政部、税务总局和海关总署联合下发的《财政部、国家税务总局、海关总署关于西部大开发税收优惠政策问题的通知》(财税〔2001〕202 号)中规定的西部大开发企业所得税优惠政策继续执行"的规定本公司在 2001 年至 2010 年期间，仍减按 15%缴纳企业所得税，西安彩辉自 2008 年起按照 25%的税率缴纳企业所得税。

2．增值税

本公司商品销售收入适用增值税。其中：内销商品销项税率为 17%。

购买原材料等所支付的增值税进项税额可以抵扣销项税，税率为 17%。其中：为出口产品而支付的进项税可以申请退税，自营出口产品销售采用"免、抵、退"办法，退税率为 13%。

增值税应纳税额为当期销项税抵减当期进项税后的余额。

纳入合并范围的子公司西安彩辉显示技术有限公司注册于西安出口加工区，根据中华人民共和国国家税务总局《出口加工区税收管理暂行办法》(国税发(2000)155 号)的规定，对区外企业销售给出口加工区内企业的商品、国产设备以及建筑材料，可向税务机关申报办理退(免)增值税。对区内企业直接出口和销售给区内企业的货物，免征增值税。

3．营业税

本公司对外提供劳务及租赁等所取得的收入，适用税率 5%。

4．城建税及教育费附加

本公司城建税、教育费附加均以应纳增值税、营业税额为计税依据，适用税率分别为 7%和 3%。

彩虹显示器件股份有限公司 2007年年度报告

5．房产税

本公司以房产原值的 75%为计税依据，适用税率为 1.2%。

6．土地使用税

本公司土地使用税计税依据：4.8 元/每平方米/年。

7．个人所得税

本公司职工的个人所得税由个人承担，本公司代扣代缴。

**七、企业合并及合并财务报表**

（一）重要子公司

| 公司名称 | 注册地 | 业务性质 | 注册资本 | 经营范围 | 投资金额 | 持股比例 | 表决权比例 |
|---|---|---|---|---|---|---|---|
| 西安彩辉显示技术有限公司 | 西安 | 生产制造 | 1000万元 | 生产、研发、销售彩色、黑白显像管及配套电子零部件 | 900万元 | 90.00% | 90.00% |

西安彩辉显示技术有限公司系 2005 年 6 月 13 日由本公司和西安彩虹资讯有限公司（以下简称"彩虹资讯"）共同投资，并经西安市工商行政管理局批准成立的企业法人单位。注册资本：人民币 1000 万元，其中本公司以货币出资，出资额人民币 900 万元，占注册资本 90%；彩虹资讯以货币出资，出资额人民币 100 万元，占注册资本 10%。

西安彩辉公司属彩管制造行业，经营范围主要包括：彩色显像管、偏转线圈及配套零部件的研究、开发、设计、制造、销售及其产品售后服务；货物和技术的进出口的经营（国家限定的项目除外）；承办"三来一补"业务。主要产品包括：54cmFS 彩管、64cmPF 彩管、65cmFS 彩管、74cmPF 管。2007 年 12 月新增产品 37cmFS 彩管、40cmPF 彩管。

（二）合并范围的变动

2007 年 11 月 30 日，本公司将所持有的子公司彩虹资讯 55%股权转让给母公司彩虹电子。根据本公司与彩虹电子签订的股权转让协议，彩虹资讯自 2007 年 6 月 30 日以后经营收益或损失全部由受让方承担，因此本公司只将彩虹资讯 2007 年 1-6 月利润表纳入本年度合并会计报表。

彩虹资讯 2007 年 6 月 30 日净资产 154,730,372.73 元，2007 年 1-6 月净利润 2,160,247.36 元。

彩虹显示器件股份有限公司 2007 年年度报告

### 八、合并财务报表主要项目注释

1. 货币资金

| 项目 | 2007 年 12 月 31 日 | | | 2006 年 12 月 31 日 | | |
|---|---|---|---|---|---|---|
| | 原币 | 折算汇率 | 折合人民币 | 原币 | 折算汇率 | 折合人民币 |
| 库存现金 | 16,586.84 | 1.00 | 16,586.84 | 6,697.17 | 1.00 | 6,697.17 |
| 银行存款 | 108,256,456.82 | | 108,256,456.82 | 125,324,683.79 | | 125,324,683.79 |
| 其中：美元 | 2,366,749.83 | 7.30 | 17,289,515.63 | 1,417,135.41 | 7.81 | 11,065,985.27 |
| 其他货币资金 | 21,600.00 | 7.30 | 160,148.88 | 0.00 | | 0.00 |
| 其中：美元 | 21,600.00 | 7.30 | 160,148.88 | 0.00 | | 0.00 |
| 合计 | 108,433,192.54 | | 108,433,192.54 | 125,331,380.96 | | 125,331,380.96 |

2. 应收票据

（1）应收票据种类

| 票据种类 | 2007 年 12 月 31 日 | 2006 年 12 月 31 日 |
|---|---|---|
| 银行承兑汇票 | 330,167,927.20 | 545,985,327.52 |

（2）期末本公司已经背书给他方但尚未到期的票据总额为 788,492,228.28 元，到期日区间为 2008 年 1 至 6 月。已贴现未到期的票据金额 20,000,000.00 元。

3. 应收账款

（1）应收账款风险分类

| 项目 | 2007 年 12 月 31 日 | | | 2006 年 12 月 31 日 | | |
|---|---|---|---|---|---|---|
| | 金额 | 比例 | 坏账准备 | 金额 | 比例 | 坏账准备 |
| 单项金额重大的应收账款 | 331,634,052.24 | 98.84% | 298,144.68 | 259,568,952.20 | 80.41% | 242,291.23 |
| 单项金额不重大但按信用风险特征组合后该组合的风险较大的应收账款 | 279,657.23 | 0.08% | 279,657.23 | 280,143.43 | 0.09% | 280,143.43 |
| 其他单项金额不重大的应收账款 | 3,627,294.13 | 1.08% | 19,023.93 | 62,965,340.81 | 19.51% | 0.00 |
| 合计 | 335,541,003.60 | 100.00% | 596,825.84 | 322,814,436.44 | 100.00% | 522,434.66 |

应收账款风险分类政策参见附注五、7。

（2）应收账款账龄

| 项目 | 2007 年 12 月 31 日 | | | 2006 年 12 月 31 日 | | |
|---|---|---|---|---|---|---|
| | 金额 | 比例 | 坏账准备 | 金额 | 比例 | 坏账准备 |
| 0-90 天 | 264,908,558.54 | 78.95% | 0.00 | 126,046,880.05 | 39.05% | 0.00 |
| 91-180 天 | 60,250,185.11 | 17.96% | 0.00 | 188,020,477.96 | 58.24% | 0.00 |
| 181 天-1 年 | 4,936,358.38 | 1.47% | 49,363.59 | 4,526,388.00 | 1.40% | 45,263.88 |
| 1-2 年 | 4,976,388.19 | 1.48% | 248,819.40 | 3,940,547.00 | 1.22% | 197,027.35 |

彩虹显示器件股份有限公司 2007 年年度报告

| | | | | | | |
|---|---|---|---|---|---|---|
| 2-3 年 | 189,856.15 | 0.06% | 18,985.62 | 0.00 | 0.00% | 0.00 |
| 3-4 年 | 0.00 | 0.00% | 0.00 | 280,143.43 | 0.09% | 280,143.43 |
| 4-5 年 | 279,657.23 | 0.08% | 279,657.23 | 0.00 | 0.00% | 0.00 |
| 5 年以上 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00% | 0.00 |
| 合计 | 335,541,003.60 | 100.00% | 596,825.84 | 322,814,436.44 | 100.00% | 522,434.66 |

（3）坏账准备的计提方法及比例参见附注五、7。

（4）期末应收账款中含应收持有本公司 5%以上表决权股份的彩虹电子款项 17,883,433.55 元。

（5）期末余额前五位的应收账款金额合计 192,579,045.88 元,占应收款总额的 57.39%。（其中一年内的应收账款 192,579,045.88 元,无一年以上的应收账款）

（6）期末余额中应收关联方款项合计 17,883,433.55 元,占应收账款总额 5.33%。

（7）应收账款中包括以下外币余额：

| 外币名称 | 2007 年 12 月 31 日 | | | 2006 年 12 月 31 日 | | |
|---|---|---|---|---|---|---|
| | 原币 | 折算汇率 | 折合人民币 | 原币 | 折算汇率 | 折合人民币 |
| 美元 | 17,867,129.16 | 7.30 | 130,442,969.06 | 7,913,669.10 | 7.81 | 61,801,546.94 |

4. 预付款项

| 项目 | 2007 年 12 月 31 日 | | 2006 年 12 月 31 日 | |
|---|---|---|---|---|
| | 金额 | 比例 | 金额 | 比例 |
| 1 年以内 | 4,925,806.33 | 100.00% | 159,706.57 | 100.00% |
| 1－2 年 | 25.45 | 0.00% | 0.00 | 0.00% |
| 合计 | 4,925,831.78 | 100.00% | 159,706.57 | 100.00% |

（1）无大额账龄超过 1 年的预付款项。

（2）预付款项中不含预付持有本公司 5%（含 5%）以上表决权股份的股东单位款项。

5. 其他应收款

（1）其他应收款风险分类

| 项目 | 2007 年 12 月 31 日 | | | 2006 年 12 月 31 日 | | |
|---|---|---|---|---|---|---|
| | 金额 | 比例 | 坏账准备 | 金额 | 比例 | 坏账准备 |
| 单项金额重大的其他应收款 | 45,756,660.64 | 98.93% | 1,750,000.00 | 1,750,000.00 | 75.89% | 1,750,000.00 |
| 其他单项金额不重大的其他应收款 | 492,987.77 | 1.07% | 0.00 | 555,833.47 | 24.11% | 0.00 |
| 合计 | 46,249,648.41 | 100.00% | 1,750,000.00 | 2,305,833.47 | 100.00% | 1,750,000.00 |

彩虹显示器件股份有限公司 2007 年年度报告

（2）其他应收款账龄

| 项目 | 2007 年 12 月 31 日 | | | 2006 年 12 月 31 日 | | |
|---|---|---|---|---|---|---|
| | 金额 | 比例 | 坏账准备 | 金额 | 比例 | 坏账准备 |
| 0-90 天 | 44,499,648.41 | 96.22% | 0.00 | 508,214.13 | 22.04% | 0.00 |
| 91-180 天 | 0.00 | 0.00% | 0.00 | 47,619.34 | 2.07% | 0.00 |
| 3-4 年 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00% | 0.00 |
| 4-5 年 | 0.00 | 0.00% | 0.00 | 0.00 | 0.00% | 0.00 |
| 5 年以上 | 1,750,000.00 | 3.78% | 1,750,000.00 | 1,750,000.00 | 75.89% | 1,750,000.00 |
| 合计 | 46,249,648.41 | 100.00% | 1,750,000.00 | 2,305,833.47 | 100.00% | 1,750,000.00 |

（3）坏账准备的计提方法及比例参见本附注五.7。

（4）其他应收款期末余额较上年期末大幅度增加系由于本公司本期新增应收彩虹集团公司股权转让款 35,345,473.46 元所致，彩虹集团公司已于 2008 年 1 月将股权转让款归还本公司。

（5）其他应收款中无含应持本公司 5%（含 5%）以上表决权股份的股东单位款项。

（6）期末余额前五位的其他应收款金额合计 45,756,660.64 元，占其他应收款总额的 98.93%。（其中一年内的其他应收款 44,006,660.64 元，一年以上的其他应收款 1,750,000.00 元）

（7）期末余额中应收关联方款项合计 35,346,366.78 元，占其他应收款总额的 76.43%。

6. 存货及跌价准备

（1）存货的类别

| 项目 | 2007 年 12 月 31 日 | 2006 年 12 月 31 日 |
|---|---|---|
| 原材料 | 15,791,081.29 | 35,611,506.63 |
| 在产品 | 15,245,844.22 | 24,472,970.00 |
| 库存商品 | 232,311,639.44 | 129,114,265.00 |
| 低值易耗品 | 13,148,659.81 | 50,637.36 |
| 合计 | 276,497,224.76 | 189,249,378.99 |

（2）存货的跌价准备

| 项目 | 2006 年 12 月 31 日 | 本期计提额 | 本期减少额 | | 2007 年 12 月 31 日 |
|---|---|---|---|---|---|
| | | | 转回 | 其他转出 | |
| 原材料 | 30,451.32 | 0.00 | 0.00 | 0.00 | 30,451.32 |
| 在产品 | 4,532,198.35 | 7,315.90 | 724,001.41 | 134,325.39 | 3,681,187.45 |
| 库存商品 | 1,019,681.40 | 7,311,700.80 | 0.00 | 0.00 | 8,331,382.20 |
| 合计 | 5,582,331.07 | 7,319,016.70 | 724,001.41 | 134,325.39 | 12,043,020.97 |

存货跌价准备的计提方法参见本附注五.8。

彩虹显示器件股份有限公司 2007 年年度报告

7. 长期股权投资

（1）长期股权投资

| 项目 | 2007 年 12 月 31 日 | 2006 年 12 月 31 日 |
|---|---|---|
| 按成本法核算长期股权投资 | 30,000,000.00 | 30,000,000.00 |
| 按权益法核算长期股权投资 | 0.00 | 109,702,120.45 |
| 长期股权投资合计 | 30,000,000.00 | 139,702,120.45 |
| 减：长期股权投资减值准备 | 5,940,000.00 | 6,613,956.00 |
| 长期股权投资净值 | 24,060,000.00 | 133,088,164.45 |

（2）按成本法、权益法

| 被投资单位名称 | 持股比例 | 初始金额 | 年初余额 | 本年增加 | 本年减少 | 年末余额 | 当年分得的现金红利 |
|---|---|---|---|---|---|---|---|
| **成本法核算：** | | | | | | | |
| 西部信托投资有限公司 | 5.01% | 30,000,000.00 | 30,000,000.00 | 0.00 | 0.00 | 30,000,000.00 | 565,873.23 |
| 小计 | | 30,000,000.00 | 30,000,000.00 | 0.00 | 0.00 | 30,000,000.00 | 565,873.23 |
| **权益法核算：** | | | | | | | |
| 西安新纪元俱乐部有限公司 | 41.67% | 20,000,000.00 | 13,418,681.19 | 1,784,173.80 | 15,202,854.99 | 0.00 | 0.00 |
| 彩虹数码显示技术有限公司 | 49.00% | 318,500,000.00 | 93,509,483.22 | -5,036,503.20 | 88,472,980.02 | 0.00 | 0.00 |
| 彩虹塑业有限责任公司 | 30.00% | 3,000,000.00 | 2,773,956.04 | 0.00 | 2,773,956.04 | 0.00 | 0.00 |
| 小计 | | 341,500,000.00 | 109,702,120.45 | -3,252,329.40 | 106,449,791.05 | 0.00 | 0.00 |
| 合计 | | 371,500,000.00 | 139,702,120.45 | -3,252,329.40 | 106,449,791.05 | 30,000,000.00 | 565,873.23 |

本公司本期将对西安新纪元俱乐部有限公司、彩虹数码显示技术有限公司之投资转让给本公司最终控股股东彩虹集团（具体情况见本附注十四所述），使得长期股权投资余额较上年末大幅下降。彩虹塑业有限责任公司本年度已进行清算，注销手续正在办理中。

（3）长期股权投资减值准备

| 被投资单位名称 | 2006 年 12 月 31 日 | 本期计提额 | 本期减少额 | | 2007 年 12 月 31 日 |
|---|---|---|---|---|---|
| | | | 转回 | 其他转出 | |
| 彩虹塑业有限责任公司 | 673,956.00 | 0.00 | 0.00 | 673,956.00 | 0.00 |
| 西部信托投资有限公司 | 5,940,000.00 | 0.00 | 0.00 | | 5,940,000.00 |
| 合计 | 6,613,956.00 | 0.00 | 0.00 | 673,956.00 | 5,940,000.00 |

彩虹显示器件股份有限公司 2007 年年度报告

8.　投资性房地产

| 项目 | 2006 年 12 月 31 日 | 本年增加 | 本年减少 | 2007 年 12 月 31 日 |
|---|---|---|---|---|
| 原价 | 6,754,888.06 | 0.00 | 0.00 | 6,754,888.06 |
| 其中：房屋、建筑物 | 6,754,888.06 | 0.00 | 0.00 | 6,754,888.06 |
| 土地使用权 | 0.00 | 0.00 | 0.00 | 0.00 |
| 累计折旧和累计摊销 | 1,839,915.73 | 218,408.07 | 0.00 | 2,058,323.80 |
| 其中：房屋、建筑物 | 1,839,915.73 | 218,408.07 | 0.00 | 2,058,323.80 |
| 土地使用权 | 0.00 | 0.00 | 0.00 | 0.00 |
| 投资性房地产减值准备累计金额 | 0.00 | 0.00 | 0.00 | 0.00 |
| 其中：房屋、建筑物 | 0.00 | 0.00 | 0.00 | 0.00 |
| 土地使用权 | 0.00 | 0.00 | 0.00 | 0.00 |
| 投资性房地产账面价值 | 4,914,972.33 | -218,408.07 | 0.00 | 4,696,564.26 |
| 其中：房屋、建筑物 | 4,914,972.33 | -218,408.07 | 0.00 | 4,696,564.26 |
| 土地使用权 | 0.00 | 0.00 | 0.00 | 0.00 |

投资性房地产采用成本模式计量。

9.　固定资产

（1）固定资产明细表

| | 房屋建筑物 | 机器设备 | 运输设备 | 办公设备 | 合计 |
|---|---|---|---|---|---|
| 原值 | | | | | |
| 2006年12月31日 | 349,814,128.63 | 1,770,316,364.47 | 4,140,667.70 | 10,216,320.07 | 2,134,487,480.87 |
| 本期增加 | 0.00 | 598,764,490.11 | 3,107,318.00 | 0.00 | 601,871,808.11 |
| 其中在建工程转入 | 0.00 | 1,924,603.49 | 0.00 | 0.00 | 1,924,603.49 |
| 本期减少 | 31,928,588.41 | 388,153,920.41 | 812,287.50 | 146,255.51 | 421,041,051.83 |
| 2007年12月31日 | 317,885,540.22 | 1,980,926,934.17 | 6,435,698.20 | 10,070,064.56 | 2,315,318,237.15 |
| | | | | | |
| 累计折旧 | | | | | |
| 2006年12月31日 | 116,185,023.27 | 1,117,212,258.42 | 2,397,140.22 | 8,312,542.33 | 1,244,106,964.24 |
| 本期增加 | 10,787,978.07 | 361,560,555.69 | 2,952,324.91 | 546,383.79 | 375,847,242.46 |
| 本期减少 | 5,084,055.29 | 306,422,312.02 | 474,242.79 | 594,998.58 | 312,575,608.68 |
| 2007年12月31日 | 121,888,946.05 | 1,172,350,502.09 | 4,875,222.34 | 8,263,927.54 | 1,307,378,598.02 |
| | | | | | |
| 减值准备 | | | | | |
| 2006年12月31日 | 0.00 | 103,958,750.25 | 0.00 | 0.00 | 103,958,750.25 |
| 本期增加 | 0.00 | 6,445,857.00 | 0.00 | 0.00 | 6,445,857.00 |
| 本期转回 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 本期其他减少 | 0.00 | 2,642,389.97 | 0.00 | 0.00 | 2,642,389.97 |
| 2007年12月31日 | 0.00 | 107,762,217.28 | 0.00 | 0.00 | 107,762,217.28 |
| | | | | | |
| 净值 | | | | | |
| 2006年12月31日 | 233,629,105.36 | 549,145,355.80 | 1,743,527.48 | 1,903,777.74 | 786,421,766.38 |
| 2007年12月31日 | 195,996,594.17 | 700,814,214.80 | 1,560,475.86 | 1,806,137.02 | 900,177,421.85 |

彩虹显示器件股份有限公司 2007 年年度报告

本公司本年为重组经营业务与股东彩虹电子进行了资产置换（具体情况见本附注十四所述），使得本年固定资产增减变动较大及本年末较上年末余额增加。

（2）暂时闲置固定资产明细项目列示如下：

| 项目 | 账面原值 | 累计折旧 | 减值准备 | 账面净值 |
|---|---|---|---|---|
| 机器设备 | 27,258,314.34 | 8,934,912.45 | 4,168,106.59 | 14,155,295.30 |

暂时闲置的固定资产主要因产能不足而导致的暂时停用，根据本公司生产计划安排需要时可以再投入使用。

（3）本公司无未办妥权权证书的固定资产。

（4）本年末本公司用于向中国工商银行咸阳分行贷款抵押的固定资产为房屋建筑物，原值为316,316,449.40 元，净值 194,799,641.86 元。

10. 在建工程

| 工程名称 | 2006年12月31日 | 本期增加 | 本期转固 | 其他减少 | 2007年12月31日 | 资金来源 |
|---|---|---|---|---|---|---|
| 生产线改造及其他零星工程 | 2,005,222.00 | 3,435,972.66 | 1,924,603.49 | 0.00 | 3,516,591.17 | 自筹 |

11. 无形资产

| 项目 | 土地使用权 | 专利权 | 非专利技术 | 合计 |
|---|---|---|---|---|
| **原价** | | | | |
| **2006 年 12 月 31 日** | 47,735,996.94 | 1,587,139.00 | 45,238.50 | 49,368,374.44 |
| 本期增加 | 0.00 | 234,000.00 | 1,149,702.62 | 1,383,702.62 |
| 本期减少 | 22,291,728.74 | 0.00 | 45,238.50 | 22,336,967.24 |
| **2007 年 12 月 31 日** | 25,444,268.20 | 1,821,139.00 | 1,149,702.62 | 28,415,109.82 |
| | | | | |
| **累计摊销** | | | | |
| **2006 年 12 月 31 日** | 7,278,329.28 | 479,832.60 | 21,158.56 | 7,779,320.44 |
| 本期摊销 | 861,600.36 | 221,461.20 | 122,702.42 | 1,205,763.98 |
| 本期减少 | 3,082,898.50 | 0.00 | 25,766.56 | 3,108,665.06 |
| **2007 年 12 月 31 日** | 5,057,031.14 | 701,293.80 | 118,094.42 | 5,876,419.36 |
| | | | | |
| **账面价值** | | | | |
| **2006 年 12 月 31 日** | 40,457,667.66 | 1,107,306.40 | 24,079.94 | 41,589,054.00 |
| **2007 年 12 月 31 日** | 20,387,237.06 | 1,119,845.20 | 1,031,608.20 | 22,538,690.46 |
| | | | | |
| **摊销期** | 40-50 年 | 5-7 年 | 5-10 年 | |

本公司本年增加的无形资产-非专利技术为本公司自彩虹电子购入的 21 寸全平面彩色显像管技术转让费。

彩虹显示器件股份有限公司 2007 年年度报告

　　本公司本年无形资产-土地使用权减少 2291 万元，系由于本公司本年将原纳入合并报表围子公司彩虹资讯的全部股权转让给母公司彩虹电子，彩虹资讯之土地使用权的转出使得本年无形资产-土地使用权减少。

　　本年末本公司用于向中国工商银行咸阳分行贷款抵押的无形资产为土地使用权，原值为 25,444,268.20 元，净值为 20,387,237.06 元。

12. 长期待摊费用

| 项目 | 2007 年 12 月 31 日 | 2006 年 12 月 31 日 |
|---|---|---|
| 租赁厂房改造费 | 0.00 | 515,254.42 |

13. 递延所得税资产

（1）已确认递延所得税资产

| 项目 | 2007 年 12 月 31 日 | 2006 年 12 月 31 日 |
|---|---|---|
| 可抵扣暂时性差异之所得税资产 | 0.00 | 463,038.86 |

（2）期末已确认递延所得税资产的暂时性差异项目

| 可抵扣暂时性差异项目 | 2007 年 12 月 31 日 | 2006 年 12 月 31 日 |
|---|---|---|
| 存货跌价准备 | 0.00 | 127,009.49 |
| 长期股权投资减值准备 | 0.00 | 673,956.00 |
| 辞退福利 | 0.00 | 2,285,960.29 |
| 合计 | 0.00 | 3,086,925.78 |
| 税率 | - | 15.00% |
| 确认递延所得税资产 | 0.00 | 463,038.86 |

（3）期末未确认递延所得税资产的可抵扣项目

| 项目 | 2007 年 12 月 31 日 | 2006 年 12 月 31 日 |
|---|---|---|
| 可抵扣亏损 | 144,166,544.49 | 88,494,290.50 |
| 可抵扣暂时性差异 | 183,253,425.41 | 214,164,085.08 |
| 合计 | 327,419,969.90 | 302,658,375.58 |

14. 短期借款

| 借款类别 | 2007 年 12 月 31 日 | 2006 年 12 月 31 日 |
|---|---|---|
| 抵押借款 | 200,000,000.00 | 140,000,000.00 |
| 保证借款 | 50,000,000.00 | 160,000,000.00 |
| 质押借款 | 64,000,000.00 | 0.00 |
| 合计 | 314,000,000.00 | 300,000,000.00 |

彩虹显示器件股份有限公司 2007 年年度报告

（1）抵押借款系以本公司净值 194,799,641.86 元（原值为 316,316,449.40 元）的固定资产/房屋建筑物和摊余价值 20,387,237.06 元(原值 25,444,268.20 元)的土地使用权作为抵押物向工商银行咸阳分行的借款；

（2）保证借款系由彩虹集团为本公司向建设银行咸阳彩虹支行提供的连带担保借款；

（3）质押借款中有 44,000,000.00 元系以本公司销售给客户的货款所产生的发票作为质押，并由彩虹集团提供保证向工商银行咸阳分行的借款，20,000,000.00 元系未到期已贴现的应收票据；

（4）2007 年短期借款年利率为 6.12%-7.6545%(2006 年度短期借款的年利率为 5.022%-6.12%)。

15. 应付账款

（1）应付账款 2007 年 12 月 31 日余额为 230,130,037.98 元（2006 年 12 月 31 日余额为 293,165,539.58 元）。

（2）本年末应付款项中持有本公司 5%（含 5%）以上表决权股份的股东单位-彩虹电子的货款为 43,369,344.84 元。

（3）期末应付账款账龄超过 1 年的数额为 10,008,082.67 元，主要原因是尚未结算完毕。

16. 预收款项

（1）预收款项 2007 年 12 月 31 日余额为 12,596,527.47 元（2006 年 12 月 31 日余额为 3,471,388.26 元），期末预收款项余额比上期期末预收款项余额增加超过 30%的原因为预收客户的货款订金增加。

（2）本年末预收款项中无欠持有本公司 5%（含 5%）以上表决权股份的股东单位或关联方的款项。

（3）不存在账龄超过 1 年的大额预收款项。

17. 应付职工薪酬

| 项目 | 2006年12月31日 | 本期增加额 | 本期支付额 | 2007年12月31日 |
|---|---|---|---|---|
| 工资(含奖金、津贴和补贴) | 18,341,370.83 | 69,973,177.88 | 79,928,339.78 | 8,386,208.93 |
| 职工福利费 | 7,540,271.81 | 4,576,049.58 | 12,095,875.96 | 20,445.43 |
| 社会保险费 | 3,609,967.95 | 17,080,429.99 | 17,200,600.43 | 3,489,797.51 |
| 其中：1.医疗保险费 | 17,549.38 | 4,331,048.79 | 4,348,598.17 | 0.00 |
| 2.基本养老保险费 | 3,592,760.82 | 10,270,455.29 | 10,329,974.61 | 3,533,241.50 |
| 3.失业保险费 | -342.25 | 1,581,989.70 | 1,625,091.44 | -43,443.99 |
| 4.工伤保险费 | 0.00 | 628,033.51 | 628,033.51 | 0.00 |
| 5.生育保险费 | 0.00 | 268,902.70 | 268,902.70 | 0.00 |
| 住房公积金 | 0.00 | 3,766,739.00 | 3,744,819.00 | 21,920.00 |
| 工会经费和职工教育经费 | 5,443,166.22 | 1,301,703.25 | 1,373,089.06 | 5,371,780.41 |
| 非货币性福利 | 0.00 | 0.00 | 0.00 | 0.00 |
| 因解除劳动关系给予的补偿 | 5,460,549.40 | 728,246.00 | 3,014,206.29 | 3,174,589.11 |
| 其中:以现金结算的股份支付 | 0.00 | 0.00 | 0.00 | 0.00 |
| 合计 | 40,395,326.21 | 97,426,345.70 | 117,356,930.52 | 20,464,741.39 |

彩虹显示器件股份有限公司 2007 年年度报告

18. 应交税费

| 税种 | 适用税率 | 2007 年 12 月 31 日 | 2006 年 12 月 31 日 |
|---|---|---|---|
| 增值税 | 17.00% | -9,847,712.22 | 1,094,877.30 |
| 营业税 | 5.00% | 8,341.52 | 11,445.00 |
| 城市维护建设税 | 7.00% | 157,064.48 | 1,347,950.86 |
| 企业所得税 | 15.00% | 0.00 | -120,563.59 |
| 个人所得税 | - | 272,495.68 | 404,362.43 |
| 印花税 | - | 50,000.00 | 0.00 |
| 教育费附加 | 3.00% | 283,412.88 | 1,793,792.74 |
| 水利建设基金 | 0.08% | 313,998.88 | 262,690.72 |
| 合计 | | -8,762,398.78 | 4,794,555.46 |

19. 应付股利

应付股利 2007 年 12 月 31 日余额为 3,438,520.00 元（2006 年 12 月 31 日余额为 3,438,520.00 元），为本公司股东尚未领取的现金股利。

20. 其他应付款

（1）其他应付款明细表

| 项目 | 2007 年 12 月 31 日 | 2006 年 12 月 31 日 |
|---|---|---|
| 应付未付之运费 | 17,995,336.11 | 23,593,421.57 |
| 技术提成费 | 9,507,445.33 | 10,831,092.89 |
| 置换资产尾款 | 2,635,594.25 | 0.00 |
| 劳务工押金 | 2,121,094.86 | 924,307.45 |
| 职工社会保障金 | 1,666,462.10 | 2,225,163.73 |
| 商标使用费 | 1,631,893.00 | 1,885,733.26 |
| 其他 | 2,407,368.15 | 3,976,955.63 |
| 合计 | 37,965,193.80 | 43,436,674.53 |

（2）本年末其他应付款中包含欠持有本公司 5%（含 5%）以上表决权股份的股东单位-彩虹电子的置换固定资产尾款 2,635,594.25 元。

（3）本年其他应付款中，9,507,445.33 元为尚未支付的技术提成费。

21. 专项应付款

| 项目 | 2006 年 12 月 31 日 | 本期增加 | 本期结转 | 2007 年 12 月 31 日 |
|---|---|---|---|---|
| 数字电视用中分辨率 29"显像管大生产技术研发 | 3,000,000.00 | 0.00 | 3,000,000.00 | 0.00 |

本年末专项应付款减少原因见本附注八、33 所述。

彩虹显示器件股份有限公司 2007 年年度报告

22. 预计负债

| 项目 | 2006年12月31日 | 本期增加 | 本期结转 | 2007年12月31日 | 形成原因 |
|------|--------------|---------|---------|--------------|---------|
| 三包损失 | 2,022,167.00 | 1,943,792.39 | 0.00 | 3,965,959.39 | 预计三包损失 |

23. 股本

每股面值人民币 1 元

| 股东名称/类别 | 2007年12月31日 | 2006年12月31日 |
|--------------|--------------|--------------|
| **有限售条件股份** | | |
| 国有法人持股 | 179,678,125.00 | 217,173,184.00 |
| **无限售条件股份** | | |
| 人民币普通股 | 241,470,675.00 | 203,975,616.00 |
| **股份总额** | 421,148,800.00 | 421,148,800.00 |

根据 2006 年 7 月 14 日国务院国有资产监督管理委员会《关于彩虹显示器件股份有限公司股权分置改革有关问题的批复》（国资产权[2006]805 号）及本公司 2006 年 7 月 18 日召开的股东会议审议批准的《彩虹显示器件股份有限公司股权分置改革方案的议案》，本公司于 2006 年 7 月 27 日实施股权分置，全体非流通股股东以其持有的股票按其持股比例向流通股股东每 10 股送 4.2 股，总计对价股份为 60,330,816 股；实施股权分置后公司注册资本仍为人民币 421,148,800 元，彩虹电子持有本公司 180,675,565 股股份，占注册资本 42.90%。

根据上述文件的批准及《彩虹显示器件股份有限公司股权分置改革实施公告》，本公司有限售条件的流通股分别按下列时间可以流通：

| 可流通时间 | 可流通股份 |
|-----------|-----------|
| 自 2006 年 7 月 31 日起 12 个月后 | 53,193,908 |
| 自 2006 年 7 月 31 日起 24 个月后 | 21,057,440 |
| 自 2006 年 7 月 31 日起 36 个月后 | 142,921,836 |
| **合计** | 217,173,184 |

根据 2007 年 7 月 24 日本公司有限售条件的流通股的上市公告，原有限售条件的流通股 37,495,058 股（其中包含彩虹电子持有的限售股份 21,057,440 股）于 2007 年 7 月 31 日解除限售上市流通。

2007 年西安飞机工业（集团）有限责任公司等 9 家有限售条件的流通股股东分别与彩虹电子签订了《关于偿付股权分置改革对价的协议》，向彩虹电子偿还了代垫股份合计 1,791,419 股，并已办理完成股权过户手续；另 2007 年彩虹电子出售本公司股份 8,277,440 股，至 2007 年末，彩虹电子持有本公司股份 174,189,544 股，占注册资本 41.36%。

彩虹显示器件股份有限公司 2007 年年度报告

24. 资本公积

| 项目 | 2006年12月31日 | 本年增加 | 本年减少 | 2007年12月31日 |
|---|---|---|---|---|
| 股本溢价 | 628,339,133.97 | 0.00 | 0.00 | 628,339,133.97 |
| 其他资本公积 | 8,189,431.70 | 70,811,191.82 | 0.00 | 79,000,623.52 |
| 合计 | 636,528,565.67 | 70,811,191.82 | 0.00 | 707,339,757.49 |

　　资本公积增加系本公司和母公司彩虹电子进行资产置换时按照《企业会计准则第 20 号－企业合并》的规定，对同一控制下业务合并中置换资产交易价格与账面价值之间的差额计入资本公积所致。

25. 盈余公积

| 项目 | 2006年12月31日 | 本年增加 | 本年减少 | 2007年12月31日 |
|---|---|---|---|---|
| 法定盈余公积 | 227,022,296.24 | 0.00 | 0.00 | 227,022,296.24 |

26. 未分配利润

（1）利润分配比例

| 项目 | 分配基础 | 2007 年度 | 2006 年度 |
|---|---|---|---|
| 提取盈余公积金 | 净利润 | 0.00 | 1,854,831.81 |

（2）利润分配表

| 项目 | 2007 年度 | 2006 年度 |
|---|---|---|
| 期初未分配利润 | 100,782,761.24 | 85,811,132.70 |
| 加：期初未分配利润调整数 | 0.00 | 1,372,781.11 |
| 本年净利润 | -27,486,120.42 | 14,424,511.52 |
| 其他 | -101,419.43 | |
| 减：少数股东损益 | 947,507.56 | -1,029,167.72 |
| 提取盈余公积金 | 0.00 | 1,854,831.81 |
| 期末未分配利润 | 72,247,713.83 | 100,782,761.24 |
| 其中：拟分配现金股利 | 0.00 | 0.00 |

　　本公司于 2007 年执行新的企业会计准则，进行追溯调整导致 2006 年期初未分配利润增加 1,372,781.11 元，具体情况见本附注四所述。

27. 少数股东权益

| 子公司名称 | 少数股权比例 | 2007 年 12 月 31 日 | 2006 年 12 月 31 日 |
|---|---|---|---|
| 西安彩辉显示技术有限公司 | 10.00% | 857,100.41 | 0.00 |
| 西安彩虹资讯有限公司 | 45.00% | 0.00 | 67,782,176.47 |
| 合计 | | 857,100.41 | 67,782,176.47 |

　　如本附注七所述，因本公司本年将子公司彩虹资讯转让，使得本年末少数股东权益大幅下降。

彩虹显示器件股份有限公司 2007 年年度报告

28. 营业收入、营业成本

（1）营业收入

| 项目 | 2007 年度 | 2006 年度 |
|---|---|---|
| 主营业务收入 | 1,697,057,271.49 | 2,061,254,022.45 |
| 其他业务收入 | 8,638,824.23 | 5,785,871.05 |
| 合计 | 1,705,696,095.72 | 2,067,039,893.50 |
| 前 5 名客户销售额 | 1,170,692,917.98 | 1,415,491,822.00 |
| 所占比例 | 68.63% | 68.48% |

（2）营业成本

| 项目 | 2007 年度 | 2006 年度 |
|---|---|---|
| 主营业务成本 | 1,613,146,469.38 | 1,856,206,708.13 |
| 其他业务成本 | 2,745,457.11 | 1,045,429.70 |
| 合计 | 1,615,891,926.49 | 1,857,252,137.83 |

（3）主营业务收入成本—按产品/业务类别分类

| 项目 | 2007 年度 | 2006 年度 |
|---|---|---|
| 主营业务收入 | | |
| 其中：彩色显像管 | 1,615,050,605.77 | 1,815,764,893.45 |
| 偏转线圈 | 82,006,665.72 | 245,489,129.00 |
| 合计 | 1,697,057,271.49 | 2,061,254,022.45 |
| 主营业务成本 | | |
| 其中：彩色显像管 | 1,543,352,266.60 | 1,621,975,132.51 |
| 偏转线圈 | 69,794,202.78 | 234,231,575.62 |
| 合计 | 1,613,146,469.38 | 1,856,206,708.13 |
| 主营业务毛利 | | |
| 其中：彩色显像管 | 71,698,339.17 | 193,789,760.94 |
| 偏转线圈 | 12,212,462.94 | 11,257,553.38 |
| 合计 | 83,910,802.11 | 205,047,314.32 |

29. 营业税金及附加

| 项目 | 计缴基数 | 计缴比例 | 2007 年度 | 2006 年度 |
|---|---|---|---|---|
| 营业税 | 流转税 | 5.00% | 16,397.15 | 0.00 |
| 城市维护建设税 | 流转税 | 7.00% | 1,618,668.49 | 2,830,422.12 |
| 教育费附加 | 流转税 | 3.00% | 597,565.41 | 1,213,038.04 |
| 合计 | | | 2,232,631.05 | 4,043,460.16 |

彩虹显示器件股份有限公司 2007 年年度报告

30. 财务费用

| 项目 | 2007 年度 | 2006 年度 |
|------|-----------|-----------|
| 利息支出 | 16,979,452.50 | 19,962,187.88 |
| 减：利息收入 | 944,749.09 | 1,692,175.40 |
| 加：汇兑损失 | 4,586,509.73 | 3,415,364.69 |
| 加：其他支出 | -672,244.92 | -2,936,361.28 |
| 合计 | 19,948,968.22 | 18,749,015.89 |

31. 资产减值损失

| 项目 | 2007 年度 | 2006 年度 |
|------|-----------|-----------|
| 坏账损失 | 74,391.18 | 508,427.49 |
| 存货跌价损失 | 6,595,015.29 | -7,676,070.01 |
| 长期股权投资减值损失 | 0.00 | 673,956.00 |
| 固定资产减值损失 | 2,630,000.00 | 0.00 |
| 合计 | 9,299,406.47 | -6,493,686.52 |

32. 投资收益

| 产生投资收益的来源 | 2007 年度 | 2006 年度 |
|------|-----------|-----------|
| 以成本法核算的被投资单位宣告分派的利润 | 565,873.23 | 0.00 |
| 年末调整的被投资单位所有者权益净增减的金额 | -3,252,329.44 | -56,592,679.80 |
| 股权投资转让收益 | 28,077,585.07 | 0.00 |
| 合计 | 25,391,128.86 | -56,592,679.80 |

（1）  本公司本年股权转让收益见本附注十四所述。

（2）  本公司投资收益汇回不存在重大限制。

33. 营业外收入

| 项目 | 2007 年度 | 2006 年度 |
|------|-----------|-----------|
| 非流动资产处置利得 | 0.00 | 392,079.52 |
| 政府补助 | 3,000,000.00 | 584,990.85 |
| 其他 | 114,184.20 | 10,504.00 |
| 合计 | 3,114,184.20 | 987,574.37 |

　　本期政府补助为信息产业部电子发展基金管理办公室向本公司拨付的用于"数字电视用中分辨率 29"显像管大生产技术研发"的专项补助，已于 2007 年 5 月 17 日经过信息产业部验收，本公司将拨付资金自专项应付款转入营业外收入。

34. 营业外支出

| 项目 | 2007 年度 | 2006 年度 |
|------|-----------|-----------|

彩虹显示器件股份有限公司 2007 年年度报告

| | | |
|---|---|---|
| 非流动资产处置损失 | 29,178.81 | 329,333.59 |
| 公益性捐赠支出 | 0.00 | 2,000.00 |
| 其他 | 1,338,189.69 | 708.60 |
| **合计** | **1,367,368.50** | **332,042.19** |

35. 所得税费用

| 项目 | 2007 年度 | 2006 年度 |
|---|---|---|
| 当期所得税费用 | 679,883.01 | 1,650,823.84 |
| 递延所得税费用 | -395,597.38 | 0.00 |
| **合计** | **284,285.63** | **1,650,823.84** |

36. 现金流量表

（1）列示于现金流量表的现金和现金等价物包括：

| 项目 | 2007年度 | 2006年度 |
|---|---|---|
| 现金 | | |
| 其中：库存现金 | 16,586.84 | 6,697.17 |
| 可随时用于支付的银行存款 | 108,256,456.82 | 125,324,683.79 |
| 可随时用于支付的其他货币资金 | 16,0148.88 | 0.00 |
| 期末现金和现金等价物余额 | 108,433,192.54 | 125,331,380.96 |
| 其中：母公司或集团内子公司使用受限制的现金和现金等价物 | 0.00 | 0.00 |

（2）收到/支付的其他与经营/投资/筹资活动有关的现金

1）收到的其他与经营活动有关的现金

| 项目 | 2007 年度 | 2006 年度 |
|---|---|---|
| 劳务工押金 | 164,200.00 | 417,800.00 |
| 运输风险金 | 450,000.00 | 800,000.00 |
| 备用金退回 | 671,637.49 | 0.00 |
| 代收个人交款 | 203,211.10 | 0.00 |
| 保险公司赔款 | 38,452.54 | 0.00 |
| 其他 | 286,357.03 | 209,172.00 |
| **合计** | **1,813,858.16** | **1,426,972.00** |

2）支付的其他与经营活动有关的现金

| 项目 | 2007 年度 | 2006 年度 |
|---|---|---|
| 支付运输风险金 | 700,000.00 | 400,000.00 |
| 付劳务工押金 | 206,400.00 | 1,280,267.45 |
| 招待费用 | 1,238,360.64 | 1,067,579.97 |
| 差旅费 | 3,307,692.57 | 2,396,474.33 |
| 信息披露 | 394,228.00 | 404,300.00 |
| 律师费 | 354,980.00 | 0.00 |
| 审计费 | 1,318,894.00 | 130,000.00 |
| 商标费 | 1,885,733.26 | 1,097,865.26 |

彩虹显示器件股份有限公司 2007 年年度报告

| | | |
|---|---|---|
| 租赁费用 | 4,181,034.43 | 4,494,534.72 |
| 港杂费 | 1,684,968.69 | 976,214.09 |
| 商检费 | 184,667.00 | 197,114.11 |
| 仓储费 | 3,070,842.07 | 2,083,070.69 |
| 技术提成费 | 79,288.65 | 0.00 |
| 其他 | 1,592,677.13 | 14,196,584.38 |
| 合计 | 20,199,766.44 | 28,724,005.00 |

3）收到的其他与投资活动有关的现金

| 项目 | 2007 年度 | 2006 年度 |
|---|---|---|
| 存款利息 | 1,016,853.16 | 0.00 |

4）支付的其他与筹资活动有关的现金

| 项目 | 2007 年度 | 2006 年度 |
|---|---|---|
| 贴现利息 | 0.00 | 1,704,578.00 |

（3）合并现金流量表补充资料

| 项目 | 2007 年度 | 2006 年度 |
|---|---|---|
| 1.将净利润调节为经营活动现金流量： | | |
| 净利润 | -27,486,120.42 | 14,424,511.52 |
| 加：资产减值准备 | 9,299,406.47 | -6,493,686.52 |
| 固定资产折旧 | 116,259,784.40 | 127,945,579.00 |
| 无形资产摊销 | 1,144,169.56 | 1,329,423.00 |
| 长期待摊费用摊销 | 88,329.36 | 251,327.00 |
| 处置固定资产、无形资产和其他长期资产的损失（收益以 "-" 填列） | 29,178.81 | -62,745.93 |
| 固定资产报废损失（收益以 "-" 填列） | 0.00 | 0.00 |
| 公允价值变动损益（收益以 "-" 填列） | 0.00 | 0.00 |
| 财务费用（收益以 "-" 填列） | 17,153,594.39 | 19,974,588.00 |
| 投资损失（收益以 "-" 填列） | -25,391,128.86 | 56,592,679.80 |
| 递延所得税资产的减少（增加以 "-" 填列） | 120,144.82 | -120,144.82 |
| 递延所得税负债的增加（减少以 "-" 填列） | 0.00 | 0.00 |
| 存货的减少（增加以 "-" 填列） | -87,247,846.13 | -40,381,392.00 |
| 经营性应收项目的减少（增加以 "-" 填列） | 174,925,441.98 | -115,536,657.28 |
| 经营性应付项目的增加（减少以 "-" 填列） | -145,342,241.87 | -15,390,805.72 |
| 其他 | | -3,173,344.84 |
| 经营活动产生的现金流量净额 | 33,552,712.51 | 39,359,331.21 |
| 2.不涉及现金收支的重大投资和筹资活动： | | |
| 债务转为资本 | 0.00 | 0.00 |
| 一年内到期的可转换公司债 | 0.00 | 0.00 |
| 融资租入固定资产 | 0.00 | 0.00 |
| 3.现金及现金等价物净变动情况： | | |
| 现金的期末余额 | 108,433,192.54 | 125,331,380.96 |
| 减：现金的期初余额 | 125,331,380.96 | 191,156,909.75 |
| 加：现金等价物的期末余额 | 0.00 | 0.00 |

彩虹显示器件股份有限公司 2007 年年度报告

| 减：现金等价物的期初余额 | 0.00 | 0.00 |
|---|---|---|
| 现金及现金等价物净增加额 | -16,898,188.42 | -65,825,528.79 |

（4）当期取得或处置子公司及其他营业单位的有关信息

| 项目 | 2007 年度 |
|---|---|
| 处置子公司及其他营业单位的有关信息 | |
| 1. 处置子公司及其他营业单位的价格 | 201,932,348.46 |
| 2. 处置子公司及其他营业单位收到的现金和现金等价物 | 0.00 |
| 减：子公司及其他营业单位持有的现金和现金等价物 | 11,913,089.40 |
| 3. 处置子公司及其他营业单位收到的现金净额 | -11,913,089.40 |
| 4. 处置子公司的净资产 | 152,444,412.44 |
| 流动资产 | 125,815,983.15 |
| 非流动资产 | 97,583,355.46 |
| 流动负债 | 70,954,926.17 |
| 非流动负债 | 0.00 |

## 九、母公司财务报表主要项目注释

### 1. 应收账款

（1）应收账款风险分类

| 项目 | 2007 年 12 月 31 日 | | | 2006 年 12 月 31 日 | | |
|---|---|---|---|---|---|---|
| | 金额 | 比例 | 坏账准备 | 金额 | 比例 | 坏账准备 |
| 单项金额重大的应收账款 | 346,952,808.08 | 99.29% | 298,144.68 | 304,264,683.03 | 99.66% | 242,291.23 |
| 单项金额不重大但按信用风险特征组合后该组合的风险较大的应收账款 | 279,657.23 | 0.08% | 279,657.23 | 280,143.43 | 0.09% | 280,143.43 |
| 其他单项金额不重大的应收账款 | 2,216,883.94 | 0.63% | 19,023.93 | 745,797.55 | 0.25% | 0.00 |
| 合计 | 349,449,349.25 | 100.00% | 596,825.84 | 305,290,624.01 | 100.00% | 522,434.66 |

（2）应收账款账龄

| 项目 | 2007 年 12 月 31 日 | | | 2006 年 12 月 31 日 | | |
|---|---|---|---|---|---|---|
| | 金额 | 比例 | 坏账准备 | 金额 | 比例 | 坏账准备 |
| 0-90 天 | 284,728,291.98 | 81.49% | 0.00 | 108,523,067.62 | 35.55% | 0.00 |
| 91-180 天 | 54,338,797.32 | 15.55% | 0.00 | 188,020,477.96 | 61.59% | 0.00 |
| 181-1 年 | 4,936,358.38 | 1.41% | 49,363.59 | 4,526,388.00 | 1.48% | 45,263.88 |
| 1-2 年 | 4,976,388.19 | 1.42% | 248,819.40 | 3,940,547.00 | 1.29% | 197,027.35 |
| 2-3 年 | 189,856.15 | 0.05% | 18,985.62 | 0.00 | 0.00% | 0.00 |
| 3-4 年 | 0.00 | 0.00% | 0.00 | 280,143.43 | 0.09% | 280,143.43 |
| 4-5 年 | 279,657.23 | 0.08% | 279,657.23 | 0.00 | 0.00% | 0.00 |
| 合计 | 349,449,349.25 | 100.00% | 596,825.84 | 305,290,624.01 | 100.00% | 522,434.66 |

彩虹显示器件股份有限公司 2007 年年度报告

（3）坏账准备的计提方法及比例参见本附注五、7。

（4）期末应收账款中含应持有本公司 5%以上表决权股份的彩虹电子款项 17,883,433.55 元

（5）期末余额前五位的应收账款合计 212,584,877.15 元，占应收账款总额的 60.83%。账龄全部在 1 年以内。

（6）期末余额中应收关联方款项合计 52,341,090.49 元，占应收账款总额的 14.98%。

（7）应收账款中包括以下外币余额：

| 外币名称 | 2007 年 12 月 31 日 | | | 2006 年 12 月 31 日 | | |
|---|---|---|---|---|---|---|
| | 原币 | 折算汇率 | 折合人民币 | 原币 | 折算汇率 | 折合人民币 |
| 美元 | 15,057,087.16 | 7.30 | 109,916,736.27 | 4,676,188.62 | 7.81 | 36,521,033.12 |

2．其他应收款

（1）其他应收款风险分类

| 项目 | 2007 年 12 月 31 日 | | | 2006 年 12 月 31 日 | | |
|---|---|---|---|---|---|---|
| | 金额 | 比例% | 坏账准备 | 金额 | 比例% | 坏账准备 |
| 单项金额重大的其他应收款 | 45,756,660.64 | 98.93% | 1,750,000.00 | 1,750,000.00 | 77.49% | 1,750,000.00 |
| 其他单项金额不重大的其他应收款 | 492,987.77 | 1.07% | 0.00 | 508,214.13 | 22.51% | 0.00 |
| 合计 | 46,249,648.41 | 100.00% | 1,750,000.00 | 2,258,214.13 | 100.00% | 1,750,000.00 |

（2）其他应收款账龄

| 项目 | 2007 年 12 月 31 日 | | | 2006 年 12 月 31 日 | | |
|---|---|---|---|---|---|---|
| | 金额 | 比例% | 坏账准备 | 金额 | 比例% | 坏账准备 |
| 1 年以内 | 44,499,648.41 | 96.22% | 0.00 | 508,214.13 | 22.51% | 0.00 |
| 5 年以上 | 1,750,000.00 | 3.78% | 1,750,000.00 | 1,750,000.00 | 77.49% | 1,750,000.00 |
| 合计 | 46,249,648.41 | 100.00% | 1,750,000.00 | 2,258,214.13 | 100.00% | 1,750,000.00 |

（3）坏账准备的计提方法及比例参见本附注五、7。

（4）其他应收款期末余额较上年期末大幅度增加系由于本公司本期新增应收彩虹集团公司股权转让款 35,345,473.46 元所致，彩虹集团公司已于 2008 年 1 月将股权转让款归还本公司。

（5）其他应收款中无持本公司 5%（含 5%）以上表决权股份的关联方。

（6）期末余额前五位的其他应收款金额合计 45,756,660.64 元，占其他应收款总额的 98.93%。（其中一年以内的其他应收款为 44,006,660.64 元，五年以上的其他应收款为 1,750,000.00 元）

（7）期末余额中应收关联方款项合计 35,346,366.78 元，占其他应收款总额的 76.43%。

彩虹显示器件股份有限公司 2007 年年度报告

3．长期股权投资

（1）长期股权投资

| 项目 | 2007 年 12 月 31 日 | 2006 年 12 月 31 日 |
|---|---|---|
| 按成本法核算长期股权投资 | 39,000,000.00 | 110,500,000.00 |
| 按权益法核算长期股权投资 | 0.00 | 106,928,164.41 |
| 长期股权投资合计 | 39,000,000.00 | 217,428,164.41 |
| 减：长期股权投资减值准备 | 5,940,000.00 | 5,940,000.00 |
| 长期股权投资净值 | 33,060,000.00 | 211,488,164.41 |

（2）按成本法、权益法

| 被投资单位名称 | 持股比例 | 初始金额 | 年初余额 | 本年增加 | 本年减少 | 年末余额 | 分得的现金红利 |
|---|---|---|---|---|---|---|---|
| **成本法核算** | | | | | | | |
| 彩辉显示技术 | 90.00% | 9,000,000.00 | 9,000,000.00 | 0.00 | 0.00 | 9,000,000.00 | - |
| 彩虹资讯 | 55.00% | 71,500,000.00 | 71,500,000.00 | 0.00 | 71,500,000.00 | - | - |
| 西部信托 | 5.01% | 30,000,000.00 | 30,000,000.00 | 0.00 | 0.00 | 30,000,000.00 | 565,873.23 |
| 小计 | | 110,500,000.00 | 110,500,000.00 | 0.00 | 71,500,000.00 | 39,000,000.00 | 565,873.23 |
| **权益法核算** | | | | | | | |
| 新纪元 | 41.67% | 20,000,000.00 | 13,418,681.19 | 1,784,173.80 | 15,202,854.99 | 0.00 | 0.00 |
| 彩虹数码 | 49.00% | 318,500,000.00 | 93,509,483.22 | -5,036,503.20 | 88,472,980.02 | 0.00 | 0.00 |
| 小计 | | 338,500,000.00 | 106,928,164.41 | -3,252,329.40 | 103,675,835.01 | 0.00 | 0.00 |
| **合计** | | 449,000,000.00 | 217,428,164.41 | -3,252,329.40 | 175,175,835.01 | 39,000,000.00 | 565,873.23 |

（3）长期股权投资减值准备

| 被投资单位名称 | 2006 年 12 月 31 日 | 本期计提额 | 本期减少额 | | 2007 年 12 月 31 日 |
|---|---|---|---|---|---|
| | | | 转回 | 其他转出 | |
| 西部信托投资有限公司 | 5,940,000.00 | 0.00 | 0.00 | 0.00 | 5,940,000.00 |

4．营业收入、营业成本

（1）营业收入

| 项目 | 2007 年度 | 2006 年度 |
|---|---|---|
| 主营业务收入 | 1,631,847,319.09 | 1,885,733,262.20 |
| 其他业务收入 | 8,275,655.88 | 4,739,474.65 |
| 合计 | 1,640,122,974.97 | 1,890,472,736.85 |
| 前 5 名客户销售额 | 1,123,370,062.58 | 1,415,491,822.00 |
| 所占比例 | 68.49% | 74.88% |

彩虹显示器件股份有限公司 2007 年年度报告

（2）营业成本

| 项目 | 2007 年度 | 2006 年度 |
|---|---|---|
| 主营业务成本 | 1,563,955,528.07 | 1,708,533,616.48 |
| 其他业务成本 | 2,745,457.11 | 509,244.89 |
| 合计 | 1,566,700,985.18 | 1,709,042,861.37 |

（3）主营业务收入成本—按产品/业务类别分类

| 项目 | 2007 年度 | 2006 年度 |
|---|---|---|
| 主营业务收入 | | |
| 其中：彩色显像管 | 1,611,127,608.43 | 1,799,916,885.24 |
| 偏转线圈 | 20,719,710.66 | 85,816,376.96 |
| 合计 | 1,631,847,319.09 | 1,885,733,262.20 |
| 主营业务成本 | | |
| 其中：彩色显像管 | 1,543,838,713.11 | 1,623,399,899.58 |
| 偏转线圈 | 20,116,814.96 | 85,133,716.90 |
| 合计 | 1,563,955,528.07 | 1,708,533,616.48 |
| 主营业务毛利 | | |
| 其中：彩色显像管 | 67,288,895.32 | 176,516,985.66 |
| 偏转线圈 | 602,895.70 | 682,660.06 |
| 合计 | 67,891,791.02 | 177,199,645.72 |

5．投资收益

| 产生投资收益的来源 | 2007 年度 | 2006 年度 |
|---|---|---|
| 以成本法核算的被投资单位宣告分派的利润 | 565,873.23 | 0.00 |
| 年末调整的被投资单位所有者权益净增减的金额 | -3,252,329.44 | -56,479,209.89 |
| 股权投资转让收益 | 40,610,603.77 | 0.00 |
| 合计 | 37,924,147.56 | -56,479,209.89 |

彩虹显示器件股份有限公司 2007 年年度报告

## 十、关联方关系及其交易

### （一）关联方关系

1. 存在控制关系的其他关联方

| 关联方名称 | 组织机构代码 | 注册地址 | 主营业务 | 与本公司关系 | 经济性质 | 法定代表人 |
|---|---|---|---|---|---|---|
| 彩虹集团公司 | 100018208 | 北京海淀区上地信息路 11 号 | 彩色显像管、显示管及其配套产品的制造与销售 | 最终控股公司 | 国有公司 | 邢道钦 |
| 彩虹集团电子股份有限公司 | 766306601 | 咸阳彩虹路 1 号 | 彩色显像管、显示管及其配套产品的制造与销售 | 母公司 | 股份公司 | 邢道钦 |
| 西安彩辉显示技术有限公司 | 775901963 | 西安凤城 12 路 | 生产、研发、销售彩色、黑白显像管及配套电子零部件 | 子公司 | 有限责任公司 | 张君华 |

2. 存在控制关系的子公司详见"附注七、企业合并及合并财务报表"所述。
3. 存在控制关系的其他关联方的注册资本及其变化

| 关联方名称 | 2006 年度 | 本年增加 | 本年减少 | 2007 年度 |
|---|---|---|---|---|
| 彩虹集团公司 | 1,000,000,000.00 | 0.00 | 0.00 | 1,000,000,000.00 |
| 彩虹集团电子股份有限公司 | 1,941,174,000.00 | 0.00 | 0.00 | 1,941,174,000.00 |
| 西安彩辉显示技术有限公司 | 10,000,000.00 | 0.00 | 0.00 | 10,000,000.00 |

4. 存在控制关系的其他关联方的所持股份及其变化

| 关联方名称 | 持股金额 | | 持股比例 | |
|---|---|---|---|---|
| | 2007 年 | 2006 年 | 2007 年 | 2006 年 |
| 彩虹集团电子股份有限公司 | 17,419 万元 | 18,068 万元 | 41.36% | 42.90% |
| 西安彩虹资讯有限公司 | 0 万元 | 7,150 万元 | 0.00% | 55.00% |
| 西安彩辉显示技术有限公司 | 900 万元 | 900 万元 | 90.00% | 90.00% |

5. 不存在控制关系的关联方的性质

| 关联方名称 | 关联关系 | 与本公司关联交易内容 |
|---|---|---|
| 咸阳彩虹电子配件有限公司 | 同受母公司控制 | 采购原材料 |
| 昆山彩虹实业有限公司 | 同受母公司控制 | 采购原材料 |
| 珠海彩珠实业有限公司 | 同受母公司控制 | 采购原材料 |
| 陕西彩虹荧光材料有限公司 | 同受母公司控制 | 采购原材料 |
| 咸阳彩虹电子网板有限公司 | 同受母公司控制 | 采购原材料 |

彩虹显示器件股份有限公司 2007 年年度报告

| | | |
|---|---|---|
| 咸阳彩泰电子器件有限公司 | 同受母公司控制 | 采购原材料 |
| 咸阳彩虹数码显示有限公司 | 同受最终控股公司控制 | 采购原材料 |
| 彩虹彩色显像管总厂 | 同受最终控股公司控制 | 提供动力、能源 |
| 彩虹劳动服务公司 | 同受最终控股公司控制 | 采购原材料 |
| 陕西彩虹三产总公司 | 同受最终控股公司控制 | 提供劳务 |
| 西安广信电子有限公司 | 同受最终控股公司控制 | 设备采购 |
| 咸阳彩联包装材料有限公司 | 最终控股公司的参股公司 | 采购原材料 |
| 西安彩虹塑业有限责任公司 | 联营公司 | 采购原材料 |
| 咸阳彩虹电子材料有限责任公司 | 最终控股公司参股公司的子公司 | 采购原材料 |
| 咸阳彩虹胶带有限责任公司 | 最终控股公司参股公司的子公司 | 采购原材料 |

### （二）关联交易

1．定价政策

本公司从关联方购买原材料的价格在合理测算生产成本和利润率的基础上，并参考可比性市场价协商定价。本公司销售给关联方的产品按照彩管市场相关的市场供求状况和本公司或子公司的生产成本、合理利润等因素确定价格。

2．采购物资

| 关联方名称 | 2007 年度 | | 2006 年度 | |
|---|---|---|---|---|
| | 金额 | 比例 | 金额 | 比例 |
| 彩虹集团电子股份有限公司 | 625,802,889.86 | 40.97% | 667,963,817.00 | 45.51% |
| 西安彩虹资讯有限公司 | 144,228,411.12 | 9.44% | 0.00 | 0.00% |
| 彩虹彩色显像管总厂 | 140,254,010.20 | 9.18% | 159,739,859.00 | 0.00% |
| 咸阳彩虹电子配件有限公司 | 94,342,387.20 | 6.18% | 103,727,203.00 | 7.07% |
| 咸阳彩虹电子网版有限公司 | 58,876,230.59 | 3.85% | 58,188,842.00 | 3.96% |
| 彩虹集团劳动服务公司 | 33,937,774.97 | 2.22% | 46,710,707.00 | 3.18% |
| 彩虹集团三产总公司 | 33,072,001.83 | 2.17% | 29,844,545.00 | 2.03% |
| 陕西彩虹荧光材料有限公司 | 20,599,252.40 | 1.35% | 22,874,277.00 | 1.56% |
| 咸阳彩联包装材料有限公司 | 17,869,032.35 | 1.17% | 14,888,972.00 | 1.01% |
| 珠海彩珠实业有限公司 | 7,591,863.00 | 0.50% | 7,877,902.00 | 0.54% |
| 咸阳彩秦电子器件有限责任公司 | 5,197,979.01 | 0.34% | 5,497,710.00 | 0.37% |
| 昆山彩虹实业有限公司 | 2,480,460.72 | 0.16% | 3,170,737.00 | 0.22% |
| 咸阳彩虹胶带有限责任公司 | 2,299,571.79 | 0.15% | 3,236,680.00 | 0.22% |

彩虹显示器件股份有限公司 2007 年年度报告

３．销售货物

| 关联方名称 | 2007 年度 | | 2006 年度 | |
|---|---|---|---|---|
| | 金额 | 比例 | 金额 | 比例 |
| 彩虹集团电子股份有限公司 | 77,137,781.25 | 4.58% | 162,976,798.00 | 7.91% |
| 彩虹电子配件有限公司 | 312,938.80 | 0.02% | 0.00 | 0.00% |
| 彩虹劳动服务公司 | 116,978.40 | 0.01% | 0.00 | 0.00% |

４．接受担保/提供担保

2007 年 6 月 15 日，本公司最终控股公司彩虹集团为本公司与建设银行咸阳彩虹支行 2007 年 6 月 15 日至 2008 年 6 月 14 日发生的借款提供保证担保，主合同约定的最高授信额度为 50,000,000.00 元。

本公司最终控股股东彩虹集团为本公司短期借款提供担保。2007 年为本公司担保的短期借款金额为 50,000,000.00 元；2006 年为本公司担保的短期借款金额为 160,000,000.00 元。

５．租入资产

本公司及控股子公司彩虹资讯与最终控股公司彩虹集团签订了为期三年的可撤消的经营性租赁合同，本公司须根据租赁协议分别按每年每平方米人民币 11 元支付土地使用权费，以及每月每平方米人民币 9 元的标准支付在咸阳使用彩虹集团楼宇的租金，每年合计总金额 5,088,747 元。

本公司之子公司彩辉显示技术有限公司以经营租赁方式租入关联方西安彩瑞显示技术有限公司的房屋及土地使用权，租赁期限为 2007 年 12 月 1 日至 2009 年 12 月 31 日，每月应付租金合计 82,225.03 元。

６．其他交易

本公司子公司彩辉显示技术有限公司于 11 月购买关联方西安彩瑞显示技术有限公司固定资产净值 8,361,041.72 元，实际支付购买款 1,220,971.92 美元。

７．资产置换

本年本公司为整合业务需要，与母公司彩虹电子及最终控股公司彩虹集团进行了资产置换，相关具体情况见本附注十四所述。

（三）关联方往来余额

| 关联方名称 | 科目名称 | 2007 年 12 月 31 日 | 2006 年 12 月 31 日 |
|---|---|---|---|
| 彩虹集团公司 | 其他应收款 | 35,345,473.46 | 0.00 |
| 彩虹集团公司 | 应付账款 | 0.00 | 160,000.00 |
| 彩虹集团公司 | 其他应付款 | 0.00 | 1,893,389.00 |
| 彩虹集团电子股份有限公司 | 应收账款 | 17,883,433.55 | 8,720,194.00 |
| 彩虹集团电子股份有限公司 | 应付账款 | 43,369,344.84 | 106,556,996.00 |
| 彩虹集团电子股份有限公司 | 其他应付款 | 2,745,869.96 | 40,122.00 |
| 彩虹彩色显像管总厂 | 应付账款 | 16,515,101.67 | 27,621,160.00 |

彩虹显示器件股份有限公司 2007 年年度报告

| 彩虹集团劳动服务公司 | 应收账款 | 0.00 | 5,331,882.00 |
|---|---|---|---|
| 彩虹集团劳动服务公司 | 其他应收款 | 443.87 | 0.00 |
| 彩虹集团劳动服务公司 | 应付账款 | 9,766,929.82 | 501,012.00 |
| 彩虹集团劳动服务公司 | 其他应付款 | 810,278.18 | 0.00 |
| 彩虹集团三产总公司 | 应付账款 | 5,194,995.14 | 4,086,326.00 |
| 彩虹荧光材料有限公司 | 应付账款 | 0.00 | 2,428,134.00 |
| 昆山彩虹实业有限公司 | 应付账款 | 1,287,882.19 | 823,861.00 |
| 陕西彩虹荧光材料有限公司 | 其他应收款 | 379.25 | 0.00 |
| 陕西彩虹荧光材料有限公司 | 应付账款 | 1,668,956.33 | 0.00 |
| 深圳虹阳工贸公司 | 应付账款 | 21,919.48 | 0.00 |
| 西安彩虹塑业有限责任公司 | 应付账款 | 0.00 | 2,100,000.00 |
| 咸阳彩虹电子材料有限责任公司 | 应付账款 | 405,661.15 | 146,697.00 |
| 咸阳彩虹电子配件有限公司 | 其他应收款 | 70.20 | 0.00 |
| 咸阳彩虹电子配件有限公司 | 应付账款 | 17,821,367.52 | 9,578,918.00 |
| 咸阳彩虹电子网板有限公司 | 应付账款 | 7,053,293.07 | 9,228,591.00 |
| 咸阳彩虹胶带有限责任公司 | 应付账款 | 883,064.12 | 331,858.00 |
| 咸阳彩联包装材料有限公司 | 应付账款 | 1,230,565.06 | 1,883,738.00 |
| 咸阳彩泰电子器件有限责任公司 | 应付账款 | 574,448.56 | 0.00 |
| 珠海彩珠实业有限公司 | 应付账款 | 5,504,685.96 | 5,587,080.00 |

## 十一、或有事项

### 1. 未决诉讼

2008 年 1 月本公司收到美国加州法院转发的 Crago 公司代表其公司以及原告集体（"集体"）提出的对 CRT 世界主要生产厂商的集体诉讼状,起诉包括本公司及本公司最终控股公司彩虹集团在内的被告自从 90 年代中期之后, CRT 行业面临着很大的经济压力, 因为用户的喜好偏向了新兴技术, 使该行业的利润有所缩水, 对该行业的持续发展构成了威胁。为了稳住价格、提高利润率、延长 CRT 的市场寿命, 共同联手串谋固定、提高、保持和稳定在美国市场销售 CRT 产品的价格协议。从 1995 年 1 月 1 日 开始被告及其同谋达成一项协议, 继续订立、联合、串通进行不合理的限制性贸易, 违反了 Sherman 法则第一条（15U.S.C. 1）的规定, 人为地降低或消除了在美国的竞争。原告提出的赔偿要求：从 1995 年 1 月 1 日 开始 裁定原告和集体诉讼成员根据联邦反垄断法索回其所蒙受的损失, 做出联合或几个对原告及集体诉讼成员有利, 对被告不利的判决, 依据此法索回的损失金额应为三倍；裁原告和集体诉讼成员收回本次诉讼的费用, 包括合理的律师费；原告和集体诉讼成员得到合理与适当的其他及进一步的补偿。2007 年 11 月 26 日美国加州法院已经受理此案, 尚未开始审理。

### 2. 其他或有事项

2007 年度, 本公司已签订的国内发票融资业务合同如下：

| 合同号 | 对方单位名称 | 发票金额合计 | 融资金额 | 融资发放日 | 融资到期日 | 年利率 |
|---|---|---|---|---|---|---|
| 0030 | 四川长虹电器股份有限公司 | 55,068,290.55 | 44,000,000 | 2007 年 9 月 3 日 | 2008 年 1 月 2 日 | 6.21% |
| 0064 | TCL 王牌电器（惠州）有限公司 | 29,466,720 | 20,000,000 | 2007 年 12 月 25 日 | 2008 年 4 月 24 日 | 6.8985% |
| 0065 | TCL 显示器件股份有限公司 | 16,173,440 | 12,000,000 | 2007 年 12 月 25 日 | 2008 年 4 月 26 日 | 6.8985% |
| 0066 | TCL 王牌电器（惠州）有限公司 | 16,089,040 | 12,000,000 | 2007 年 12 月 25 日 | 2008 年 4 月 24 日 | 6.8985% |

彩虹显示器件股份有限公司 2007 年年度报告

在 2007 年 12 月 31 日， 0030 号合同已经执行完毕，本公司已将融资款归还银行，其余发票融资合同正在执行中。

以上应收账款涉及的供销合同、发票（票面实有金额 61,729,200 元）、运输单购货方验收凭证等原件已交工行咸阳分行保管，国内发票融资业务合同约定本公司与购货方约定应收账款以现金方式结算（如以非现金方式结算本公司应确收收到款项后划入银行指定账户），如发票融资到期日（包括银行宣布提前到期），约定的收款账户金额不足支付对应的融资本息的，银行可以在本公司任何账户中扣取相应的款项以清偿全部融资贷款本息及其他费用。由于应收账款现金收回时间具有不确定性，如在国内发票融资业务约定期限内无法足额收回，根据合同约定可能造成本公司现金流量的重大支出。

本公司最终控股公司彩虹集团和工行咸阳分行签订了最高保证合同，对本公司的这项借款合同再进行担保，即如本公司到期无法偿还银行借款，由彩虹集团负责偿还。

3.除存在上述或有事项外，截止 2007 年 12 月 31 日，本公司无其他重大或有事项。

## 十二、承诺事项

1. 已签订的正在或准备履行的租赁合同及财务影响

本公司于 2007 年 12 月与彩虹集团公司签定有关房屋和土地使用权的经营租赁合同，有效期限为 2007 年 12 月至 2009 年 12 月，年租金支付额下表列示；双方同意本协议到期后若续展年租金确定为当时同类房屋市场公允租金价格的 95%。

于 2007 年 12 月 31 日(T)，本公司就房屋建筑物项目之可撤销经营租赁（可提前 3 个月通知终止）所需于下列期间承担款项如下：

| 期间 | 经营租赁 |
| --- | --- |
| T+1 年 | 9,534,805.80 |
| T+2 年 | 9,534,805.80 |
| 合计 | 19,069,611.60 |

2. 除存在上述承诺事项外，截止 2007 年 12 月 31 日，本公司无其他重大承诺事项。

## 十三、资产负债表日后事项

1. 如本附注十四、3 所述，本公司于 2008 年 1 月收到彩虹集团支付的转让子公司余款 35,345,473.46 元。

2. 如本附注十一、1 所述，本公司于 2008 年 1 月收到美国加州法院转发的 Crago 公司代表其公司以及原告集体（"集体"）提出的对 CRT 世界主要生产厂商的集体诉状。

彩虹显示器件股份有限公司 2007 年年度报告

### 十四、其他重要事项

本公司以 2007 年 6 月 30 日为基准日进行了有关资产置换和股权转让事宜,涉及资产置换方:本公司、本公司母公司彩虹电子、本公司的最终控股公司彩虹集团,具体交易事项如下:

1、本公司将生产玻壳用设备(二玻璃厂)及所持有的子公司西安彩虹资讯有限公司(以下简称彩虹资讯)55%的股权和彩虹电子下属彩管一厂、CRT 技术中心及营销部相关资产进行置换。

本公司已将所持彩虹资讯 55%的股权于 2007 年 11 月 30 日转让给彩虹电子(2007 年 6 月 30 日至 2007 年 11 月 30 日的损益由新股东承担),股权评估价为 94,937,678.46 元,实际交易价格为 94,937,678.46 元,本公司账面价值为 84,033,018.70 元(包括 2007 年 1-6 月按权益法应确认的投资收益 12,533,018.33 元),处置差额 10,904,659.76 元计入当期损益;

按照《企业会计准则第 20 号-企业合并》准则对同一控制下企业合并的要求,本公司与彩虹电子分别作为置换资产换入方以换入置换资产 2007 年 6 月 30 日的评估价值为交易价值,以对方账面价值做为入账价值,交易价值和账面净值的差额记入资本公积项目。置换资产实际置换完成日为 2007 年 11 月 30 日(置换资产在 6 月 30 日至 11 月 30 日之间正常计提的折旧或摊销,换入方应按照评估后的价值及剩余使用或摊销年限对原折旧或摊销金额进行调整),截止 2007 年 11 月 30 日,经补充评估,本公司置换出的二玻璃厂资产评估价值为 106,994,700.00 元(比 2007 年 6 月 30 日评估价值减少 9,031,800.00 元),实际交易价值为 106,994,700.00 元,账面价值为 31,905,775.34 元,差额 75,088,894.66 元计入本公司资本公积;本公司换入彩管一厂、CRT 技术中心及营销部相关资产的评估价值为 327,782,250.00 元,交易价格为 327,782,250.00 元,入账价值为 323,504,547.16 元,差额-4,277,702.84 元计入本公司资本公积,本公司资本公积合计增加 70,811,191.82 元。

2、本公司将参股公司西安新纪元俱乐部有限公司 41.67%股权、彩虹数码显示有限公司 49%股权于 2007 年 11 月 30 日转让给最终控股公司彩虹集团公司(2007 年 6 月 30 日至 2007 年 11 月 30 日的损益由新股东承担)。股权账面价值合计 103,675,834.97 元,评估价值 120,848,760.28 元,交易价格 120,848,760.28 元,交易价格与账面价值差额 17,172,925.31 元计入本公司当期损益。

3、本公司应收彩虹集团股权转让款 120,848,760.28 元中的 85,503,286.82 元已于 2007 年 12 月 31 日之前收到,余额 35,345,473.46 元于 2008 年 1 月收到。本公司应付彩虹电子资产置换及股权转让款净额 125,849,871.54 元,在 2007 年 12 月 31 日有 2,635,594.25 元尚未支付完毕。

4、本公司原持有彩虹数码 49%的股权于 2008 年 1 月 14 日工商变更登记完毕;原持有新纪元俱乐部的 41.67%股权于 2008 年 3 月 3 日工商登记变更完毕;原持有彩虹资讯 55%的股权于 2008 年 1 月 11 日工商登记变更完毕。

彩虹显示器件股份有限公司 2007 年年度报告

十五、补充资料

1．非经营性损益表

| 项目 | 2007 年度 | 2006 年度 |
|---|---|---|
| 以前年度计提各项减值准备转回 | 724,001.41 | 12,081,259.00 |
| 非流动资产处置损益 | 28,048,406.26 | 0.00 |
| 计入当期损益的政府补助 | 3,000,000.00 | 584,991.18 |
| 同一控制下企业合并产生的子公司期初至合并日的净损益 | 0.00 | 0.00 |
| 除上述各项外的其他营业外收支净额 | -1,224,005.49 | 70,541.00 |
| 小计 | 30,548,402.18 | 12,736,791.18 |
| 所得税影响 | 0.00 | 0.00 |
| **非经常性净损益合计** | 30,548,402.18 | 12,736,791.18 |
| 其中：归属于母公司股东 | 30,643,704.71 | 10,262,712.76 |

2．净资产收益率及每股收益

按照中国证监会《公开发行证券的公司信息披露编报规则第九号－净资产收益率和每股收益的计算及披露》的要求，本公司全面摊薄和加权平均计算的净资产收益率及每股收益如下：

（1）2007 年度

| 报告期利润 | 净资产收益率 | | 每股收益 | |
|---|---|---|---|---|
| | 全面摊薄 | 加权平均 | 基本每股收益 | 稀释每股收益 |
| 归属于母公司股东的净利润 | -1.99% | -2.06% | -0.07 | -0.07 |
| 归属于母公司股东、扣除非经常性损益后的净利润 | -4.14% | -4.29% | -0.14 | -0.14 |

（2）2006 年度

| 报告期利润 | 净资产收益率 | | 每股收益 | |
|---|---|---|---|---|
| | 全面摊薄 | 加权平均 | 基本每股收益 | 稀释每股收益 |
| 归属于母公司股东的净利润 | 1.12% | 1.12% | 0.04 | 0.04 |
| 归属于母公司股东、扣除非经常性损益后的净利润 | 0.37% | 0.38% | 0.01 | 0.01 |

3．资产减值准备明细表

| 项目 | 2006 年 12 月 31 日 | 本期计提额 | 本期减少额 | | 2007 年 12 月 31 日 |
|---|---|---|---|---|---|
| | | | 转回 | 其他转出 | |
| 坏账减值准备 | 2,272,434.66 | 74,391.18 | 0.00 | 0.00 | 2,346,825.84 |
| 存货减值准备 | 5,582,331.07 | 7,319,016.70 | 724,001.41 | 134,325.39 | 12,043,020.97 |
| 长期股权投资减值准备 | 6,613,956.00 | 0.00 | 0.00 | 673,956.00 | 5,940,000.00 |
| 固定资产减值准备 | 103,958,750.25 | 6,445,857.00 | 0.00 | 2,642,389.97 | 107,762,217.28 |
| 合计 | 118,427,471.98 | 13,839,264.88 | 724,001.41 | 3,450,671.36 | 128,092,064.09 |

彩虹显示器件股份有限公司 2007 年年度报告

4. 备考合并利润表

（1）假设本公司 2006 年度全面执行企业会计准则，以此为基础编制备考合并利润表：

| 项目 | 2006 年度 |
|------|-----------|
| 营业收入 | 2,067,039,893.50 |
| 减：营业成本 | 1,857,252,137.83 |
| 营业税金及附加 | 4,043,460.16 |
| 销售费用 | 77,592,062.51 |
| 管理费用 | 43,884,420.65 |
| 财务费用 | 18,749,015.89 |
| 资产减值损失 | -6,493,686.52 |
| 加：公允价值变动收益 | 0.00 |
| 投资收益 | -56,592,679.80 |
| 营业利润 | 15,419,803.18 |
| 加：营业外收入 | 987,574.37 |
| 减：营业外支出 | 332,042.19 |
| 利润总额 | 16,075,335.36 |
| 减：所得税费用 | 1,650,823.84 |
| 少数股东收益 | -1,029,167.72 |
| 归属于母公司净利润 | 15,453,679.24 |

（2）备考合并利润表与原合并利润表之净利润差异：

| 项目 | 2006 年度 |
|------|-----------|
| 原合并利润表之净利润金额 | 19,762,298.79 |
| 差异调整： | |
| 营业成本 | 3,336,384.03 |
| 销售费用 | 89,389.79 |
| 管理费用 | -16,053,965.74 |
| 资产减值损失 | 6,493,686.52 |
| 投资收益 | 673,956.00 |
| 所得税费用 | 224,086.43 |
| 少数股东损益 | -101,324.30 |
| 差异调整小计 | -5,337,787.27 |
| 备考合并利润表之净利润金额 | 14,424,511.52 |

彩虹显示器件股份有限公司 2007 年年度报告

5．新旧会计准则股东权益差异调节表对比披露表

| 编号 | 项目名称 | 2007 年报<br>披露数 | 2006 年报<br>原披露数 | 差异合计 |
|------|---------|---------|---------|---------|
| | **2006 年 12 月 31 日股东权益** | 1,389,659,617.76 | 1,389,659,617.76 | 0.00 |
| (1) | 符合预计负债确认条件的辞退补偿 | -5,460,549.40 | 0.00 | -5,460,549.40 |
| (2) | 所得税 | 463,038.86 | 0.00 | 463,038.86 |
| (3) | 少数股东权益作为股东权益列报 | 68,602,492.40 | 68,602,492.40 | 0.00 |
| | **2007 年 1 月 1 日股东权益** | 1,453,264,599.62 | 1,458,262,110.16 | -4,997,510.14 |

（1）2007 年 4 月 30 日财政部会计准则委员会颁布了《企业会计准则实施问题专家工作组意见》，该意见明确企业如有实施的职工内部退休计划，符合辞退福利计划确认预计负债条件的，比照辞退福利处理。依据该规定，本公司将符合预计负债确认条件的自内退职工停止提供服务日至正常退休日期间拟支付的工资和缴纳的社会保险费等 5,460,549.40 元，确认为应付职工薪酬。

（2）由于（1）事项的影响，按照 2006 年度适用的 15% 企业所得税率，对所得税进行追溯调整，累计影响调增所得税费用 463,038.86 元。

### 十六、财务报告批准

本财务报告于二〇〇八年四月二十三日由本公司董事会批准报出。

彩虹显示器件股份有限公司 2007 年年度报告

**十二、备查文件目录**

1、载有法定代表人、主管会计工作负责人、会计机构负责人签名并盖章的财务报表。

2、载有会计师事务所盖章、注册会计师签名并盖章的审计报告原件。

3、报告期内在中国证监会指定报纸上公开披露过的所有公司文件的正本及公告的原稿。

董事长(签名)：邢道钦

彩虹显示器件股份有限公司董事会
二○○八年四月二十三日

# EXHIBIT 6



STATE of NEW YORK        )
                          )        ss:
COUNTY of NEW YORK       )

### _CERTIFICATE OF ACCURACY_

This is to certify that the attached excerpts from the document, _IDD Articles of Association 2008_, originally written in _Chinese,_ are to the best of our knowledge and belief, true, accurate and complete translations into _English._

Dated: December 6, 2017

_Allison Carey_
Allison Carey
Consortra Translations

Sworn to and signed before ME this
16th day of _December_,
2017.

Notary Public

JAMES G. MAMERA
Notary Public- State of New York
No. 01MA6157195
Qualified In New York County
My Commission Expires December 4, 2018

Your
legal
translation
partner

New York, NY  |  Washington, DC  |  Houston, TX  |  San Francisco, CA
Hong Kong

Excerpts from "IRICO Display Devices Co., Ltd.  – Articles of Association."

Article 1: To preserve the legal rights of IRICO Display Devices Co., Ltd.'s (hereinafter abbreviated as "the Company") shareholders and creditors, and to regulate the Company's organization and actions, these Articles of Association are established based on the "Company Law of the People's Republic of China" (hereinafter abbreviated as the "Company Law"), the "Securities Law of the People's Republic of China," and other relevant regulations.

Article 10: Beginning on its effective date, the Company's Articles of Association becomes a legally binding document that regulates the Company's organization and actions, and the rights and duties between the Company and its shareholders and between shareholders. It is legally binding upon the Company, its shareholders, directors, supervisors, and senior management personnel. Based on the Company's Articles of Association, shareholders may sue shareholders; shareholders may sue the Company's directors, supervisors, managers, and other senior management personnel; shareholders may sue the Company; and the Company may sue shareholders, directors, supervisors, managers, and other senior management personnel.

Article 40: If directors or senior management violate the law, administrative regulations, or rules contained within these Articles of Association, damaging shareholder interests, shareholders may bring a lawsuit to the People's Court."

Article 50: The Company's Board of Directors, Board of Supervisors, and other internal institutions shall operate independently. The controlling shareholder and its functional departments have no hierarchical relationship with the company and its functional departments. The controlling shareholder and its subordinate entities may not issue any business plans or directives to the Company and its subordinate entities, and may not affect the independence of its business management in any other form.

Article 51: The controlling shareholder shall strictly abide by the conditions and procedures provided under the law, regulations, and these Article of Association regarding the nomination of candidates for directors and supervisors. Candidates for directors and supervisors nominated by the controlling shareholder should possess relevant professional knowledge, decision-making, and supervisory abilities. The controlling shareholder shall not conduct any approval procedures of the Shareholder Meeting's personnel decisions or the Board of Directors' personnel hiring decisions; it may not bypass the Shareholder Meeting and Board of Directors to appoint or dismiss the company's senior management.

Article 62: The Company Shareholder Meeting is composed of all shareholders.

Article 63: The Shareholder Meeting is the Company's foremost institution of authority, and exercises the following powers according to law:
(1) Decide the Company's business policy and investment plans;

(2) Elect and replace directors, and decide compensation matters relating to directors;

(3) Elect and replace independent directors, and decide subsidies for independent directors;

(4) Elect and replace supervisors representing shareholders, and decide compensation matters relating to supervisors;

(5) Review and approve the board of directors' report;

(6) Review and approve the board of supervisors' report;

(7) Review and approve the company's annual financial budget proposal and final accounts;

(8) Review and approve the company's profit distribution proposal and proposal to recover losses;

(9) Review and approve major related-party transactions;

(10) Pass resolutions on whether the Company shall raise or reduce registered capital;

(11) Pass resolutions on whether the Company shall issue bonds;

(12) Pass resolutions on the Company's investment projects for which to solicit funds;

(13) Pass resolutions on matters relating to the Company's merger, spinoff, dissolution, and liquidation.

(14) Amend the Company's Articles of Association;

(15) Pass resolutions on the Company's hiring and firing of accounting firms

(16) Review proposals issued by shareholders with more than 3% of total voting shares on behalf of the Company;

(17) Review proposals from independent directors;

(18) Review proposals from the Company's board of supervisors;

(19) Review and approve external guarantor items regulated by these Articles of Association;

(20) Review the Company's purchases and sales of major assets exceeding 30% of the Company's total assets in the latest accounting period for the past year;

(21) Review stock incentive plans;

(22) Review other items which the law, regulations, and these Articles of Association dictate should be decided by the Shareholder Meeting.

The above powers of the Shareholder Meeting shall not be exercised through delegation to the Board of Directors or other institutions and individuals.

# 彩虹显示器件股份有限公司章程

经 1992 年 12 月 28 日　创立大会通过

经 1998 年 06 月 26 日　第六次股东大会修改

经 1999 年 09 月 20 日　1999 年度第二次临时股东大会修改

经 2001 年 06 月 29 日　2001 年度第一次临时股东大会修改

经 2001 年 09 月 07 日　2001 年度第二次临时股东大会修改

经 2002 年 06 月 27 日　第十股东大会修改

经 2002 年 10 月 18 日　2002 年度第一次临时股东大会修改

经 2004 年 09 月 29 日　2004 年度第一次临时股东大会修改

经 2005 年 02 月 25 日　2005 年度第一次临时股东大会修改

经 2005 年 05 月 27 日　第十三次股东大会修改

经 2006 年 06 月 27 日　第十四次股东大会修改

经 2007 年 11 月 29 日　2007 年度第一次临时股东大会修改

经 2008 年 05 月 16 日　第十六次股东大会修改

# 目　录

**第一章　总则**

**第二章　经营宗旨和范围**

**第三章　股份**

　　第一节　股份发行

　　第二节　股份增减和回购

　　第三节　股份转让

**第四章　股东**

　　第一节　一般规定

　　第二节　股东的权利和义务

　　第三节　控股股东和实际控制人

　　第四节　关联交易

**第五章　股东大会**

　　第一节　一般规定

　　第二节　年度股东大会

　　第三节　临时股东大会

　　第四节　股东大会的召集

　　第五节　股东大会的通知

　　第六节　股东大会提案

　　第七节　股东大会的召开

　　第八节　股东大会表决程序

　　第九节　股东大会决议

　　第十节　董事、监事选举程序

　　第十一节　股东大会会议记录

　　第十二节　股东大会对董事会的授权

**第六章　董事和董事会**

　　第一节　董事

　　第二节　独立董事

　　第三节　董事会

　　第四节　董事会对董事长的授权

　　第五节　董事会秘书

　　第六节　董事会专门委员会

**第七章　监事和监事会**

　　第一节　监事

　　第二节　监事会

**第八章　经理**

**第九章　绩效评价与激励约束机制**

　　第一节　董事、监事、经理人员的绩效评价

　　第二节　经理人员的激励与约束机制

**第十章　财务会计制度、利润分配和审计**

　　第一节　财务会计制度

　　第二节　内部审计

　　第三节　会计师事务所的聘任

**第十一章　持续信息披露**

**第十二章　利益相关者**

**第十三章　合并、分立、解散和清算**

　　第一节　合并或分立

　　第二节　解散和清算

**第十四章　修改章程**

**第十五章　附则**

彩虹显示器件股份有限公司章程

## 第一章   总则

**第一条**   为维护彩虹显示器件股份有限公司（以下简称"公司"）、股东和债权人的合法权益，规范公司的组织和行为，根据《中华人民共和国公司法》(以下简称《公司法》)、《中华人民共和国证券法》和其他有关规定，制订本章程。

**第二条**   公司系依照《股份有限公司规范意见》和其他有关规定成立的股份有限公司(以下简称"公司")。

公司经陕西省经济体制改革委员会陕改发(1992)34 号文件批准，以定向募集方式设立；在陕西省工商行政管理局注册登记，取得营业执照。

经陕西省经济体制改革委员会陕改发(1996)109 号文件批复，公司已依照《公司法》进行了规范，并依法履行了重新登记手续。

**第三条**   公司于 1992 年 8 月 11 日经中国人民银行陕西省分行陕银复(1992)54 号文件批准，首次以定向募集方式发行人民币普通股 30000 万股。全部为境内投资人以人民币认购的内资股。于 1996 年 5 月 20 日在上海证券交易所上市。

**第四条**   公司注册名称：中文：彩虹显示器件股份有限公司

英文：IRICO   DISPLAY   DEVICES   CO.，LTD

**第五条**   公司住所：陕西省西安市高新技术产业开发区

邮政编码：710075

**第六条**   公司注册资本为人民币：42114.88 万元

**第七条**   公司为永久存续的股份有限公司。

**第八条**   董事长为公司的法定代表人。

**第九条**   公司全部资产分为等额股份，股东以其所持股份为限对公司承担责任，公司以其全部资产对公司的债务承担责任。

**第十条**   本公司章程自生效之日起，即成为规范公司的组织与行为、公司与股东、股东与股东之间权利义务关系的具有法律约束力的文件，对公司、股东、董事、监事、高级管理人员具有法律约束力。依据公司章程，股东可以起诉股东；股东可以起诉公司董事、监事、经理和其他高级管理人员；股东可以起诉公司；公司可以起诉股东、董事、监事、经理和其他高级管理人员。

**第十一条**   本章程所称其他高级管理人员是指公司的董事会秘书、财务负责人。

## 第二章   经营宗旨和范围

**第十二条**   公司的经营宗旨：以客户需求为中心，用卓越的技术和管理，不断提供高品质的产品与服务。

**第十三条**   经公司登记机关核准，公司经营范围是：彩色显示器件、电子产品及零部件、原材料的生产、开发、经营；自营和代理各类商品及技术的进出口业务；实物租赁、承办"三来一补"业务等。

## 第三章   股份

### 第一节   股份发行

**第十四条**   公司的股份采取股票的形式。

彩虹显示器件股份有限公司章程

**第十五条** 公司股份的发行，实行公开、公平、公正的原则，同种类的每一股份应当具有同等权利。

同次发行的同种类股票，每股的发行条件和价格应当相同；任何单位或者个人所认购的股份、每股应当支付相同价额。

**第十六条** 公司发行的股票，以人民币标明面值。

**第十七条** 公司的发行的股票，在中国证券登记结算有限责任公司上海分公司集中存管。

**第十八条** 公司经批准发行的普通股总数为 30000 万股，成立时向发起人彩虹集团公司发行 6600 万股，中国工商银行陕西省信托投资公司 5400 万股，中国建设银行陕西省信托投资公司 3000 万股，共计发行 15000 万股，占公司已发行普通股总数的 50%。

上述资金已于 1992 年 8 月 31 日全部到位。

**第十九条** 公司的股本结构为：普通股 42114.88 万股，其中发起人持有 24016 万股，其他内资股股东持有 18098.88 万股。

**第二十条** 公司或公司的子公司(包括公司的附属企业)不以赠与、垫资、担保、补偿或贷款等形式，对购买或者拟买公司股份的人提供任何资助。

### 第二节  股份增减和回购

**第二十一条** 公司根据经营和发展的需要，依照法律、法规的规定，经股东大会分别作出决议，可以采用下列方式增加资本。

(一)公开发行的股份；

(二)非公开发行的股份；

(三)向现有股东派送红股；

(四)以公积金转增股本；

(五)法律、行政法规规定以及国务院证券主管部门批准的其他方式。

**第二十二条** 公司可以减少注册资本。公司减少注册资本，按照《公司法》以及其他有关规定和本章程规定的程序办理。

**第二十三条** 公司在下列情况下，经本章程规定的程序通过，并报国家有关主管机构批准后，可以购回本公司的股票：

(一)减少公司注册资本；

(二)与持有本公司股票的其他公司合并；

(三)将股份奖励给本公司职工；

(四)股东因对股东大会作出的合并、分立决议持异议，要求公司收购其股份的。

除上述情形外，公司不进行买卖本公司股票的活动。

**第二十四条** 公司回购股份，可以下列方式之一进行：

(一)证券交易所集中竞价交易方式；

(二)要约方式；

(三)中国证监会认可的其他方式。

**第二十五条** 公司因本章程第二十三条第(一)项至第(三)项的原因收购本公司股份的，应当经股东大会决议。公司依照第二十三条规定收购本公司股份后，属于第(一)项情形的，应当自收购之日起 10 日内注销；属于第(二)项、第(四)项情形的，应当在 6 个月内转让或者注销。

彩虹显示器件股份有限公司章程

公司依照第二十三条第（三）项规定收购的本公司股份，将不超过本公司已发行股份总额的 5%；用于收购的资金应当从公司的税后利润中支出；所收购的股份应当 1 年内转让给职工。

**第三节　股份转让**

**第二十六条**　公司的股份可以依法转让。

**第二十七条**　公司不接受本公司的股票作为质押权的标的。

**第二十八条**　董事、监事、经理以及其他高级管理人员在其任职期间内，应当定期向公司申报其所持有的本公司股份（包括因公司派发股份股利、公积金转增股本、行使可转换公司债券的转股权、购买、继承等新增加的股份）及其变动情况；在其任职期间每年转让的股份不得超过其所持有本公司股份总数的 25%；所持本公司股份自公司股票上市交易之日起 1 年内不得转让。上述人员离职后六个月内不得转让其所持有的本公司的股份。

**第二十九条**　公司董事、监事、高级管理人员、持有公司 5%以上的股东，将其所持有的公司股票在买入之日起 6 个月以内卖出，或者在卖出之日起 6 个月以内又买入，由此所得收益归公司所有。公司董事会将收回其所得收益。但是，证券公司因包销购入售后剩余股票而持有 5%以上股份的，卖出该股票不受 6 个月时间限制。

公司董事会不按照前款规定执行的，股东有权要求董事会在 30 日内执行。公司董事会未在上述期限内执行的，股东有权为了公司的利益以自己的名义直接向人民法院提起诉讼。公司董事会不按照第 1 款的规定执行的，负有责任的董事依法承担连带责任。

**第四章　股东**

**第一节　一般规定**

**第三十条**　公司股东为依法持有公司股份的人。

**第三十一条**　股东名册是证明股东持有公司股份的充分证据。

**第三十二条**　公司应当与证券登记机构签订股份保管协议，依据证券登记机构提供的凭证建立股东名册。公司应定期查询主要股东资料及主要股东的持股变更（包括股权的出质）情况，及时掌握公司的股权结构。

**第三十三条**　公司召开股东大会、分配股利、清算及从事其他需要确认股东身份的行为时，由董事会或股东大会召集人确定股权登记日，股权登记日收市后登记在册的股东为享有相关权益的股东。

**第二节　股东的权利和义务**

**第三十四条**　股东作为公司的所有者，享有法律、行政法规和本章程规定的各项合法权利。

**第三十五条**　股东按其所持有股份的种类享有权利，承担义务；持有同一种类股份的股东享有同等权利，承担同种义务。

**第三十六条**　公司股东享有下列权利：

（一）依照其所持有的股份份额获得股利和其他形式的利益分配；

（二）依法请求、召集、主持、参加或者委派股东代理人参加股东会议；

（三）依照其所持有的股份份额行使表决权；

（四）对公司的经营行为进行监督，提出建议或者质询；

（五）依照法律、行政法规及公司章程的规定转让、赠与或质押其所持有股份；

彩虹显示器件股份有限公司章程

（六）查阅公司章程、股东名册、公司债券存根、股东大会会议记录、董事会会议决议、监事会会议决议、财务会计报告；

（七）公司终止或者清算时，按其所持有的股份份额参加公司剩余财产的分配；

（八）对股东大会作出的合并、分立决议持异议的股东，要求公司收购其股份；

（九）法律、行政法规及公司章程所赋予的其他权利。

**第三十七条**　股东提出查阅前条所述有关信息或者索取资料的，应当向公司提供证明其持有公司股份的种类以及持股数量的书面文件，公司经核实股东身份后按照股东的要求予以提供。

**第三十八条**　公司股东大会、董事会决议内容违反法律、行政法规的，股东有权请求人民法院认定无效。

股东大会、董事会的会议召集程序、表决方式违反法律、行政法规或者本章程，或者决议内容违反本章程的，股东有权自决议作出之日起 60 日内，请求人民法院撤销。

**第三十九条**　董事、高级管理人员执行公司职务时违反法律、行政法规或者本章程的规定，给公司造成损失的，连续 180 日以上单独或合并持有公司 1% 以上股份的股东有权书面请求监事会向人民法院提起诉讼；监事会执行公司职务时违反法律、行政法规或者本章程的规定，给公司造成损失的，股东可以书面请求董事会向人民法院提起诉讼。

监事会、董事会收到前款规定的股东书面请求后拒绝提起诉讼，或者自收到请求之日起 30 日内未提起诉讼，或者情况紧急、不立即提起诉讼将会使公司利益受到难以弥补的损害的，前款规定的股东有权为了公司的利益以自己的名义直接向人民法院提起诉讼。

他人侵犯公司合法权益，给公司造成损失的，本条第一款规定的股东可以依照前两款的规定向人民法院提起诉讼。

**第四十条**　董事、高级管理人员违反法律、行政法规或者本章程的规定，损害股东利益的，股东可以向人民法院提起诉讼。

**第四十一条**　公司股东承担下列义务：

（一）遵守法律、行政法规和公司章程；

（二）依其所认购的股份和入股方式缴纳股金；

（三）除法律、法规规定的情形外，不得退股；

（四）不得滥用股东权利损害公司或者其他股东的利益；不得滥用公司法人独立地位和股东有限责任损害公司债权人的利益。

公司股东滥用股东权利给公司或者其他股东造成损失的，应当依法承担赔偿责任。

公司股东滥用公司法人独立地位和股东有限责任，逃避债务，严重损害公司债权人利益的，应当对公司债务承担连带责任。

（五）法律、行政法规及公司章程规定应当承担的其他义务。

**第四十二条**　股东持有公司已发行的股份达到百分之五时，应当自达到该比例之日向公司作出书面报告。

**第四十三条**　持有公司百分之五以上有表决权股份的股东，发生下列情形之一时，应当自该事实发生之日向公司作出书面报告。

（一）其持有股份增减变化达百分之五以上时；

（二）其持有股份进行质押时；

（三）其持有股份被司法冻结时。

### 第三节　控股股东及实际控制人

**第四十四条**　控股股东及实际控制人对公司和公司其他股东负有诚信义务。

控股股东在行使表决权时，不得作出有损于公司和公司其他股东合法权益的决定。

**第四十五条**　控股股东、实际控制人不得利用其关联关系损害公司利益。违反规定的，给公司造成损失的，应当承担赔偿责任。

控股股东应严格依法行使出资人的权利，控股股东及实际控制人不得超越法定程序直接或者间接干预公司的决策及依法开展的生产经营活动，不得利用其特殊地位谋取额外的利益，不得利用关联交易、利润分配、资产重组、对外投资、资金占用、借款担保等方式损害公司和公司其他股东的合法权益，不得利用其控制地位损害公司和公司其他股东的利益。

**第四十六条**　控股股东与公司应实行人员、资产、财务分开，机构、业务独立，各自独立核算、独立承担责任和风险。

**第四十七条**　公司人员应独立于控股股东。公司的经理人员、财务负责人、营销负责人和董事会秘书在控股股东单位不得担任除董事以外的其他职务。控股股东高级管理人员兼任公司董事的，应保证有足够的时间和精力承担上市公司的工作。

**第四十八条**　控股股东投入公司的资产应独立完整、权属清晰。控股股东以非货币性资产出资的，应办理产权变更手续，明确界定该资产的范围。公司应当对该资产独立登记、建帐、核算、管理。控股股东不得占用、支配该资产或干预公司对该资产的经营管理。

**第四十九条**　公司应按照有关法律、法规的要求建立健全的财务、会计管理制度，独立核算。控股股东应尊重公司财务的独立性，不得干预公司的财务、会计活动。

**第五十条**　公司的董事会、监事会及其他内部机构应独立运作。控股股东及其职能部门与公司及其职能部门之间没有上下级关系。控股股东及其下属机构不得向公司及其下属机构下达任何有关公司经营的计划和指令，也不得以其他任何形式影响其经营管理的独立性。

**第五十一条**　控股股东对公司董事、监事候选人的提名，应严格遵循法律、法规和本章程规定的条件和程序。控股股东提名的董事、监事候选人应当具备相关专业知识和决策、监督能力。控股股东不得对股东大会人事选举决议和董事会人事聘任决议履行任何批准手续；不得越过股东大会、董事会任免公司的高级管理人员。

**第五十二条**　控股股东不应当从事与公司构成直接或者间接竞争的经营业务。

### 第四节　关联交易

**第五十三条**　公司与关联人之间的关联交易应签订书面协议。协议的签订应当遵循平等、自愿、等价、有偿的原则，协议内容应明确、具体。公司应将该协议的订立、变更、终止及履行情况等事项按照有关规定予以披露。

**第五十四条**　公司应采取有效措施防止关联人以垄断采购和销售业务渠道等方式干预公司的经营，损害公司利益。关联交易活动应遵循商业原则，关联交易的价格原则上应不偏离市场独立第三方的价格或收费的标准。公司应对关联交易的定价依据予以充分披露。

**第五十五条**　股东大会审议关联交易事项时，关联股东应当放弃对该项议案（提案）的表决权，且其持有（代表）的股份不计入该项表决的有效表决票总数。

**第五十六条**　公司审议关联交易事项时，应当严格遵守法律、法规和规范性文件及本章程规定的程序。

**第五十七条**　董事会审议关联交易事项时，除非有关联关系的董事按照本章程的要求向董事会作了披露，并且董事会在不将其计入法定人数，该董事亦未参加表决的会议上批准了该事项，公司有权撤销该合同、交易或者安排，但在对方是善意第三人的情况下除外。

**第五十八条**　董事与董事会会议决议事项所涉及的企业有关联关系的，不得对该项决议

5

彩虹显示器件股份有限公司章程

行使表决权，也不得代理其他董事行使表决权。该董事会会议由过半数的无关联关系董事出席即可举行，董事会会议所作决议须经无关联关系董事过半数通过。出席董事会的无关联董事人数不足 3 人的，应将该事项提交股东大会审议。

**第五十九条**　董事会审议关联交易事项时，应当关注交易的必要性和公允性，应当关注是否可能损害非关联股东的利益，必要时应当聘请专业机构出具专项报告。

**第六十条**　公司应采取有效措施防止股东及其关联方以各种形式占用或者转移公司的资金、资产及其他资源。

**第六十一条**　董事会对于关联交易事项，除应当依照有关法律、法规和规范性文件及时充分披露外，还应当在年度股东大会上就执行情况作出报告。

# 第五章　股东大会

## 第一节　一般规定

**第六十二条**　公司股东大会由全体股东组成。

**第六十三条**　股东大会是公司的权力机构，依法行使下列职权：

（一）决定公司经营方针和投资计划；

（二）选举和更换董事，决定有关董事的报酬事项；

（三）选举和更换独立董事，决定独立董事的津贴；

（四）选举和更换由股东代表出任的监事，决定有关监事的报酬事项；

（五）审议批准董事会的报告；

（六）审议批准监事会的报告；

（七）审议批准公司的年度财务预算方案、决算方案；

（八）审议批准公司的利润分配方案和弥补亏损方案；

（九）审议批准重大关联交易事项；

（十）对公司增加或者减少注册资本作出决议；

（十一）对发行公司债券作出决议；

（十二）对公司募集资金投资项目作出决议；

（十三）对公司合并、分立、解散和清算等事项作出决议；

（十四）修改公司章程；

（十五）对公司聘用、解聘会计师事务所作出决议；

（十六）审议代表公司发行在外表决权股份总数的 3%以上的股东的提案；

（十七）审议独立董事提出的提案；

（十八）审议公司监事会提出的提案；

（十九）审议批准本章程规定的对外担保事项；

（二十）审议公司一年内购买、出售重大资产超过公司最近一期经审计总资产 30%的事项；

（二十一）审议股权激励计划；

（二十二）审议法律、法规和本章程规定应当由股东大会决定的其他事项。

上述股东大会的职权不得通过授权的形式由董事会或其他机构和个人代为行使。

**第六十四条**　公司下列对外担保行为，须经股东大会审议通过。

（一）本公司及本公司控股子公司的对外担保总额，达到或超过最近一期经审计净资产的 50%以后提供的任何担保；

（二）公司的对外担保总额，达到或超过最近一期经审计总资产的 30%以后提供的任

彩虹显示器件股份有限公司章程

何担保；

（三）为资产负债率超过 70%的担保对象提供的担保；

（四）单笔担保额超过最近一期经审计净资产 10%的担保；

（五）对股东、实际控制人及其关联方提供的担保。

**第六十五条** 股东大会应当在法律、法规规定的范围内行使职权，不得干涉股东对自身权利的处分。

**第六十六条** 股东大会分为年度股东大会和临时股东大会。

除非另有说明，本章程所称股东大会包括年度股东大会和临时股东大会。

**第六十七条** 股东可以亲自出席股东大会，也可以委托代理人代为出席和表决。

股东代理人不必是公司的股东。

除非另有说明，本章以下各条所称股东均包括股东代理人。

**第六十八条** 股东出席股东大会，依法享有知情权、发言权、质询权和表决权。

符合本章程规定条件的股东，有权依照本章程规定的程序提交股东提案。

**第六十九条** 公司召开股东大会的地点为公司所在地城市。

**第七十条** 股东大会除设置会场、以现场会议形式召开外，经召集人决定，还可以提供网络投票形式，为股东参加股东大会提供便利条件。
股东通过网络方式投票表决的，视为出席股东大会。

**第七十一条** 股东大会采用网络投票形式时，确认股东身份的方式在会议通知公告中列明。

**第七十二条** 股东大会的召集者和主持人应认真、负责地安排股东大会审议事项，应给予每项议案或者提案合理的讨论时间。

**第七十三条** 公司董事会应当聘请律师出席股东大会，对以下问题出具意见并公告：

（一）股东大会的召集、召开程序是否符合法律、行政法规的规定，是否符合本章程；

（二）出席会议人员的资格、召集人资格是否合法有效；

（三）股东大会的表决程序、表决结果是否合法有效；

（四）应公司要求对其他问题出具的法律意见。

第七十四条 公司召开股东大会应坚持从简原则，不得给予出席会议股东额外的经济利益。

第七十五条 股东出席股东大会应当遵守有关法律、法规、规范性文件及公司章程之规定，自觉维护会议秩序，不得侵犯其他股东的合法权益。

## 第二节 年度股东大会

**第七十六条** 年度股东大会每年召开一次，应于上一会计年度完结之后的 6 个月之内举行。

公司在上述期限内因故不能召开年度股东大会，应该报告证券交易所，说明原因并公告。

**第七十七条** 年度股东大会会议议程应当包括下列内容：

（一） 审议批准董事会的报告；

（二） 审议批准监事会的报告；

（三） 审议批准公司年度财务预算方案、决算方案；

（四） 审议批准公司的利润分配方案和弥补亏损方案；

（五） 对公司聘用、解聘会计师事务所作出决议。

彩虹显示器件股份有限公司章程

### 第三节　临时股东大会

**第七十八条**　临时股东大会不定期召开，出现下列情形之一的，公司在事实发生之日起两个月以内召开临时股东大会：

（一）董事人数不足五人时；

（二）公司未弥补的亏损额达股本总额的 1/3 时；

（三）单独或者合并持有公司有表决权股份总数 10%以上的股东书面请求时；

（四）董事会认为必要时；

（五）监事会提议召开时；

（六）本章程规定的其他情形。

前述第（三）项持股股数按股东提出书面要求日计算。

### 第四节　股东大会的召集

**第七十九条**　股东大会会议由董事会依法召集。

董事会不能履行职责或无合理理由而不召开年度股东大会时，其他具有资格的召集人有权召集年度股东大会。

**第八十条**　独立董事有权向董事会提议召开临时股东大会。对独立董事要求召开临时股东大会的提议，董事会应当根据法律、行政法规和本章程的规定，在收到提议后 10 日内提出同意或不同意召开临时股东大会的书面反馈意见。

董事会同意召开临时股东大会的，将在作出董事会决议后的 5 日内发出召开股东大会的通知；董事会不同意召开临时股东大会的，将说明理由并公告。

**第八十一条**　监事会有权向董事会提议召开临时股东大会，并应当以书面形式向董事会提出。董事会应当根据法律、行政法规和本章程的规定，在收到提案后 10 日内提出同意或不同意召开临时股东大会的书面反馈意见。

董事会同意召开临时股东大会的，将在作出董事会决议后的 5 日内发出召开股东大会的通知，通知中对原提议的变更，应征得监事会的同意。

董事会不同意召开临时股东大会，或者在收到提案后 10 日内未作出反馈的，视为董事会不能履行职责或者不履行召集股东大会会议职责，监事会可以自行召集和主持。

**第八十二条**　单独或者合计持有公司 10%以上股份的股东有权向董事会请求召开临时股东大会，并应当以书面形式向董事会提出。董事会应当根据法律、行政法规和本章程的规定，在收到请求后 10 日内提出同意或不同意召开临时股东大会的书面反馈意见。

董事会同意召开临时股东大会的，应当在作出董事会决议后的 5 日内发出召开股东大会的通知，通知中对原请求的变更，应当征得相关股东的同意。

董事会不同意召开临时股东大会，或者在收到请求后 10 日内未作出反馈的，单独或者合计持有公司 10%以上股份的股东有权向监事会提议召开临时股东大会，并应当以书面形式向监事会提出请求。

监事会同意召开临时股东大会的，应在收到请求 5 日内发出召开股东大会的通知，通知中对原提案的变更，应当征得相关股东的同意。

监事会未在规定期限内发出股东大会通知的，视为监事会不召集和主持股东大会，连续 90 日以上单独或者合计持有公司 10%以上股份的股东可以自行召集和主持。

**第八十三条**　监事会或股东决定自行召集股东大会的，须书面通知董事会，同时向公司所在地中国证监会派出机构和证券交易所备案。

在股东大会决议公告前，召集股东持股比例不得低于 10%。

召集股东应在发出股东大会通知及股东大会决议公告时，向公司所在地中国证监会派出机构和证券交易所提交有关证明材料。

彩虹显示器件股份有限公司章程

第八十四条　对于监事会或股东自行召集的股东大会，董事会和董事会秘书将予配合。董事会应当提供股权登记日的股东名册。

第八十五条　监事会或股东自行召集的股东大会，会议所必需的费用由本公司承担。

### 第五节　股东大会的通知

第八十六条　公司召开年度股东大会，召集人应当在会议召开 20 日之前以公告方式通知公司股东；公司召开临时股东大会，召集人应当在会议召开 15 日之前以公告方式通知各股东。计算上述会议通知起始期限时，不应当包括会议召开当日。

会议通知一经公告，视为所有相关人员收到通知。

第八十七条　召开股东大会的通知包括以下内容：

（一）会议的召集人、会议时间、地点、方式和会议期限；

（二）会议审议的事项；

（三）投票程序（适用于网络方式投票）；

（四）以明显的文字说明：全体股东均有权出席股东大会，并可以委托代理人出席会议和参加表决，该股东代理人不必是公司的股东；

（五）有权出席股东大会股东的股权登记日；

（六）投票代理委托书的送达时间和地点；

（七）会务常设联系人姓名、联系方式；

（八）会议登记日期、地点、方式。

公司召开股东大会确定的股权登记日与股东大会会议日期之间的间隔应当不多于 7 个工作日。股权登记日一旦确认，不得变更。

第八十八条　召集人发出召开股东大会的通知后，应当在规定的时间内将该次会议拟审议的所有提案在指定网站上充分、完整的披露，拟讨论的事项需要独立董事发表意见的，发布股东大会通知或补充通知时应当同时披露独立董事的意见及理由。

第八十九条　召开股东大会的会议通知发出后，除有不可抗力或者其它意外事件等原因，股东大会不应延期或取消，股东大会通知中列明的提案不应取消。一旦出现延期或取消的情形，召集人应当在原定召开日前至少 2 个工作日公告并说明原因。

### 第六节　股东大会提案

第九十条　公司召开股东大会，董事会、监事会以及单独或者合并持有公司 3%以上股份的股东，有权向公司提出提案。

第九十一条　股东大会提案应当符合下列条件：

（一）有明确议题；

（二）提案内容具体、完整；

（三）提案内容与法律、法规和本章程的规定不相抵触，并且属于公司经营范围和股东大会职责范围；

（四）以书面形式提交或送达董事会。

第九十二条　单独或者合计持有公司 3%以上股份的股东，可以在股东大会召开 10 日前提出临时提案并书面提交召集人。召集人应当在收到提案后 2 日内发出股东大会补充通知，公告临时提案的内容。

除前款规定的情形外，召集人在发出股东大会通知公告后，不得修改股东大会通知中已列明的提案或增加新的提案。

股东大会通知中未列明或不符合本章程第九十一条股东大会提案条件的提案，股东大会不得进行表决并作出决议。

彩虹显示器件股份有限公司章程

**第七节　股东大会的召开**

**第九十三条**　董事会和其他召集人应采取必要措施,保证股东大会的正常秩序。对于干扰股东大会、寻衅滋事和侵犯股东合法权益的行为,将采取措施加以制止并及时报告有关部门查处。

**第九十四条**　股权登记日登记在册的所有股东或其代理人,均有权出席股东大会。并依照有关法律、法规及本章程行使表决权。

**第九十五条**　股东出席股东大会应按会议通知规定的时间进行登记。

会议登记可以由股东到登记处登记,也可以采用传真、信函方式登记。

**第九十六条**　股东进行会议登记应当分别提供下列文件:

(一)法人股东:法人营业执照复印件、法定代表人证明书或授权委托书及出席人身份证明;

(二)个人股东:本人身份证明、股票账户卡;如委托代理人出席,则应提供个人股东身份证明复印件;股票账户卡;授权委托书;代理人身份证明。

上述身份证明指在中国境内具有法律效力的身份证明文件,包括但不限于中华人民共和国居民身份证和护照。

**第九十七条**　股东委托代理人代为出席会议时,委托代理人以不超过二人为限。

委托人为法人的,由其法定代表人或者董事会、其他决策机构决议授权的人作为代表出席会议。

**第九十八条**　股东应当以书面形式委托代理人,由委托人签署或者由其以书面形式委托的代理人签署;委托人为法人的,应当加盖法人印章或者由其正式委托的代理人签署。

委托书由委托人授权他人签署的,授权签署的授权书或者其他授权文件应当经过公证。

**第九十九条**　股东出具的委托他人出席股东大会的授权委托书应当载明下列内容:

(一)代理人的姓名;

(二)是否具有表决权;

(三)分别对列入股东大会议程的每一审议事项投赞成、反对或弃权票的指示;

(四)对可能纳入股东大会议程的临时提案是否有表决权,如果有表决权应行使何种表决权的具体指示;

(五)委托书签发日期和有效期限;

(六)委托人签名(或盖章),委托人为法人的,应加盖法人单位印章。

委托书应当注明如果委托人不作具体指示,代理人是否可以按自己的意思表决。

股东委托的代理人为二人时,应当明确地将投票表决权授予其中一人。

**第一百条**　投票代理委托书至少应当在股东大会召开前二十四小时备置于公司住所,或者召集会议的通知中指定的其他地方。

**第一百零一条**　出席股东大会的人员应当履行签到手续。

签到名册由公司负责制作。签到名册载明参加会议人员姓名(或单位名称)、身份证明号码、委托人姓名(或名称)、持有或者代表有表决权的股份数额等事项。

**第一百零二条**　个人股东亲自出席股东大会的,应当出示本人身份证明和持股凭证。

个人股东委托的代理人出席股东大会的,应当出示授权委托书,股东持股凭证和本人身份证明。

**第一百零三条**　法人股东应由法定代表人或者法定代表人委托的代理人出席股东大会。

法定代表人出席股东大会的,应当出示法人单位证明文件、能够证明其具有法定代表人资格的证明、持股凭证和本人身份证明。

法人股东委托的代理人出席股东大会的,应当出示本人身份证明、法人股东单位证明文件、法人股东单位的法定代表人出具的授权委托书及持股凭证。

**第一百零四条**　召集人和公司聘请的律师将依据证券登记结算机构提供的股东名册共

同对股东资格的合法性进行验证，并登记股东姓名（或名称）及其所持有表决权的股份数。在会议主持人宣布现场出席会议的股东和代理人人数及所持有表决权的股份总数之前，会议登记应当终止。

**第一百零五条**　公司董事会、独立董事和符合有关条件的股东可以向公司股东征集其在股东大会上的投票权。

投票权征集应采取无偿的方式进行，并应向被征集人充分披露信息。

**第一百零六条**　股东大会召开时，本公司全体董事、监事和董事会秘书应当出席会议，经理和其他高级管理人员应当列席会议。

**第一百零七条**　由董事会召集的股东大会由董事长主持。董事长因故不能履行职务时，由副董事长主持；副董事长不能履行职务或者不履行职务时，由半数以上董事共同推举的一名董事主持。

由监事会自行召集的股东大会，会议由监事会主席主持。监事会主席不能履行职务或不履行职务时，由半数以上监事共同推举的一名监事主持。

由股东自行召集的股东大会，会议由召集人推举代表主持。

召开股东大会时，会议主持人违反议事规则使股东大会无法继续进行的，经现场出席股东大会有表决权过半数的股东同意，股东大会可推举一人担任会议主持人，继续开会。

**第一百零八条**　在年度股东大会上，董事会、监事会应当就其过去一年的工作向股东大会作出报告。每名独立董事也应作出述职报告。

**第一百零九条**　公司的董事长、董事、监事或总经理及其他高级管理人员在股东大会上应当就股东的质询和建议作出解释和说明，但存在下列情形的除外：

（一）质询问题与会议议题无关；

（二）质询问题涉及事项尚待查实；

（三）质询问题涉及公司商业秘密；

（四）回答质询问题将导致违反公平信息披露义务；

（五）其他合理的事由。

### 第八节　股东大会表决程序

**第一百一十条**　股东以其所代表的有表决权的股份数额行使表决权，每一股份享有一票表决权。

股东登记日登记在册的所有股东或其代理人，均有权出席股东大会。并依照有关法律、法规及本章程行使表决权。

**第一百一十一条**　股东大会对列入会议议程的各项报告、议案、提案应当采用记名投票方式逐项进行表决，不得以任何理由搁置或不予表决。

股东大会对同一事项有不同提案的，应以提案提出的时间顺序进行表决。

**第一百一十二条**　召集人应当保证股东大会连续举行，直至形成最终决议。因不可抗力等特殊原因导致股东大会中止或不能作出决议的，应采取必要措施尽快恢复召开股东大会或直接终止本次股东大会，并及时公告。同时，召集人应向公司所在地中国证监会派出机构及证券交易所报告。

**第一百一十三条**　会议主持人应当在表决前宣布现场出席会议的股东和代理人人数及所持有表决权的股份总数，现场出席会议的股东和代理人人数及所持有表决权的股份总数以会议登记为准。

**第一百一十四条**　公司召开股东大会除现场表决外，可以利用符合中国证监会规定的网络系统或者其他方式向股东提供投票平台，以方便股东行使表决权。

**第一百一十五条**　股东大会股权登记日登记在册的所有股东，均有权通过股东大会网络投票系统行使表决权，但同一表决权只能选择现场投票、网络投票或符合规定的其他投票方式中的一种表决方式。同一表决权出现重复表决的以第一次投票结果为准。

彩虹显示器件股份有限公司章程

**第一百一十六条** 股东大会对提案进行表决前，应当推举两名股东代表和一名监事为监票人，负责监督投票过程和计票工作。

与审议事项与股东有利害关系的股东，不得出任监票人，参加监票、计票工作。

公司聘请的见证律师与监票人共同负责监票、计票工作。

通过网络或其他方式投票的股东，有权通过相应的投票系统查验自己的投票结果。

**第一百一十七条** 股东大会现场结束时间不得早于网络或其他方式，会议主持人应当宣布每一提案的表决情况和结果，并根据表决结果宣布提案是否通过。

在正式公布表决结果前，股东大会现场、网络及其他表决方式中所涉及的上市公司、计票人、监票人、主要股东、网络服务方等相关各方对表决情况均负有保密义务。

**第一百一十八条** 出席股东大会的股东，应当对提交表决的提案发表以下意见之一：同意、反对或弃权。

未填、错填、字迹无法辨认的表决票、未投的表决票均视为投票人放弃表决权利，其所持股份数的表决结果应计为"弃权"。

**第一百一十九条** 表决票经监票人统计后当场公布表决结果，决议的表决结果载入会议记录。

监票人应当在表决统计表上签名，表决票和表决统计表应当一并存档。

**第一百二十条** 会议主持人如果对表决结果有任何怀疑，可以对所投票数进行点算；如果会议主持人未进行点票，出席会议的股东对会议主持人宣布的表决结果有异议时，有权在宣布表决结果后要求立即点票，会议主持人应当即时点票。

### 第九节　　股东大会决议

**第一百二十一条** 股东大会决议分为普通决议和特别决议。

**第一百二十二条** 股东大会作出普通决议，应当由参加股东大会投票表决的股东所持表决权的 1/2 以上通过。

股东大会作出特别决议，应当由参加股东大会投票表决的股东所持表决权的 2/3 以上通过。

**第一百二十三条** 下列事项由股东大会以普通决议通过：

（一）董事会和监事会的工作报告；

（二）董事会拟定的利润分配方案和弥补亏损方案；

（三）董事会和监事会成员的任免及其报酬和支付方法；

（四）公司年度预算方案、决算方案；

（五）公司年度报告；

（六）除法律、行政法规规定或者本章程规定应当以特别决议通过以外的其他事项。

**第一百二十四条** 下列事项由股东大会以特别决议通过：

（一）公司增加或者减少注册资本；

（二）公司的分立、合并、解散和清算；

（三）公司章程的修改；

（四）公司在一年内购买、出售重大资产或者担保金额超过公司最近一期经审计总资产30%的；

（五）股权激励计划；

（六）法律、行政法规、规范性文件及本章程规定的，以及股东大会以普通决议认定会对公司产生重大影响的、需要以特别决议通过的其他事项。

**第一百二十五条** 公司股东大会通过有关派现、送股或资本公积金转增股东提案的，公司董事会须在股东大会结束后两个月内实施具体方案

**第一百二十六条** 除公司处于危机等特殊情况外，非经股东大会以特别决议批准，公司

彩虹显示器件股份有限公司章程

将不与董事、经理和其它高级管理人员以外的人订立将公司全部或者重要业务的管理交予该人负责的合同。

**第一百二十七条** 会议主持人根据表决结果宣布股东大会的决议是否通过。

股东大会决议应由出席会议的公司董事和董事会秘书签字后生效。

公司董事会全体董事均未出席股东大会时，由出席会议现场的全部股东签字后生效。

**第一百二十八条** 股东大会决议应当及时公告，公告中应列明出席会议的股东和代理人人数、所持有表决权的股份总数及占公司有表决权股份总数的比例、表决方式、每项提案的表决结果和通过的各项决议的详细内容。

**第一百二十九条** 股东大会审议提案时，不得对提案进行修改，否则，有关变更应当被视为一个新的提案，不得在本次股东大会上进行表决。

**第一百三十条** 提案未获通过，或者本次股东大会变更前次股东大会决议的，应当在股东大会决议公告中作特别提示。

### 第十节 董事、监事选举程序

**第一百三十一条** 董事和由股东大会选举产生的监事，单独或合并持有公司股份 3%以上的股东提名候选人，以提案形式提交股东大会表决。

**第一百三十二条** 独立董事由公司董事会、监事会、单独或者合并持有公司股份 1%以上的股东提名，由股东大会选举决定。

**第一百三十三条** 股东提名董事、独立董事或者监事候选人时，应当在股东大会召开十日之前，将提名提案、提名候选人的详细资料、候选人的声明或承诺函提交董事会。

**第一百三十四条** 董事会应在股东大会通知中充分披露董事、独立董事、监事候选人的详细资料，至少包括以下内容：

（一）教育背景、工作经历、兼职等个人情况；

（二）与本公司或本公司的控股股东及实际控制人是否存在关联关系；

（三）披露持有本公司股份数量；

（四）是否受过中国证监会及其他有关部门的处罚和证券交易所惩戒。

**第一百三十五条** 董事、独立董事、监事候选人应在股东大会召开之前作出书面承诺，同意接受提名，承诺公开披露的个人资料真实、完整并保证当选后切实履行职责。

**第一百三十六条** 股东大会选举董事进行表决时，采用累积投票制。

**第一百三十七条** 累积投票制实施办法如下：

（一）累积表决票数计算办法

（甲）每位股东持有的有表决权的股份乘以本次股东大会应选举董事人数之积，即为该股东本次表决累积表决票数。

（乙）股东大会进行多轮选举时，应当根据每轮选举应当选董事人数重新计算股东累积表决票数。

（丙）公司董事会秘书应当在每轮累积投票表决前宣布每位股东的累积表决票数，任何股东、公司独立董事、公司监事、本次股东大会监票人、见证律师或公证处公证员对宣布结果有异议时，应当立即进行核对。

（二）投票办法

每位股东均可以按照自己的意愿（代理人应遵守委托人授权书指示），将累积表决票数分别或全部集中投向任一董事候选人，如果股东投票于两名以上董事候选人时，不必平均分配票数，但其分别投票数之和只能等于或者小于其累积表决票数，否则，其该项表决无效。

（三）董事当选

1、等额选举

（甲）董事候选人获取选票数超过参加会议有效表决股份数二分之一以上时即为当

选；若

（乙）当选董事人数少于应选董事，但已当选董事人数超过本章程规定的董事会成员三分之二以上时，则缺额应在下次股东大会上填补；若

（丙）当选董事人数少于应选董事，且由此导致董事会成员不足本章程规定的三分之二以上时，则应当对未当选的董事候选人进行第二轮选举；若

（丁）第二轮选举仍未能满足上款要求时，则应当在本次股东大会结束之后的二个月内再次召开股东大会对缺额董事进行选举。

2、差额选举

（甲）董事候选人获取选票超过参加会议有效表决股份数二分之一以上，且该等人数等于或者小于应当选董事人数时，该等候选人即为当选；若

（乙）获取超过参加会议有效表决股份数二分之一以上的选票的董事候选人多于应当选董事人数时，则按得票多少排序，取得票较多者当选；若

（丙）因两名及其以上的候选人得票相同而不能决定其中当选者时，则对该等候选人进行第二轮选举；若

（丁）第二轮选举仍未能决定当选者时，则应在下次股东大会另行选举；若

（戊）由此导致董事会成员不足本章程规定的三分之二以上时，则下次股东大会应当在本次股东大会结束后的二个月以内召开。

**第一百三十八条** 股东大会选举股东监事时，表决方法与选举董事相同。

**第一百三十九条** 董事、股东监事一经当选，立即就任。

### 第十一节　股东大会会议记录

**第一百四十条** 召开股东大会应当由董事会秘书作出会议记录。会议记录记载以下内容：

（一）出席股东大会有表决权的股份数和占公司股份总数的比例；

（二）召开会议的日期、地点、议程和召集人姓名或名称；

（三）会议主持人以及出席或列席会议的董事、监事、经理和其他高级管理人员姓名；

（四）对每一提案的审议经过、发言要点和表决结果；

（五）每一表决事项的表决结果（包括现场表决、网络表决和其他方式表决的结果；非流通股和流通股东分别统计的表决结果）；

（六）股东的质询意见、建议及董事会、监事会的答复或说明等内容；

（七）律师及计票人、监票人姓名；

（八）股东大会认为和本章程规定应当载入会议记录的其他内容。

第一百四十一条 召集人应当保证会议记录内容真实、准确和完整。出席会议的董事、监事、董事会秘书、召集人或其代表、会议主持人应当在会议记录上签名。会议记录应当与现场出席股东的签名册及代理出席的委托书、网络及其他方式表决情况的有效资料一并保存，保存期限不少于 10 年。

第一百四十二条 对股东大会到会人数、参会股东持有的股份数额、授权委托书、每一表决事项的表决结果、会议记录、会议程序的合法性等事项，可以进行公证。

### 第十二节　股东大会对董事会的授权

**第一百四十三条** 董事会决定对外投资事项的权限为：单个项目不超过最近一期经审计净资产值的15%；年度累计投资项目不超过公司最近一期经审计净资产值的50%。

**第一百四十四** 董事会决定收购或出售资产事项的权限为：单个项目或年度累计不超过最近一期经审计总资产的30%。连续12个月内向同一当事人收购或出售资产不超过三次；

彩虹显示器件股份有限公司章程

董事会有权决定年度累计金额不超过最近一期经审计净资产值50%的资产抵押项目。

**第一百四十五条**   董事会有权决定单一合同交易金额或连续12月内同类标的交易金额不超过公司最近一期经审计净资产绝对值5%以下的关联交易事项。

## 第六章   董事和董事会
### 第一节   董事

**第一百四十六条**   公司董事为自然人，董事无需持有公司股份。

**第一百四十七条**   有下列情形之一的，不能担任公司的董事。

（一）无民事行为能力或者限制民事行为能力；

（二）因贪污、贿赂、侵占财产、挪用财产或者破坏社会主义市场经济秩序，被判处刑罚，执行期满未逾5年，或者因犯罪被剥夺政治权利，执行期满未逾5年；

（三）担任破产清算的公司、企业的董事或者厂长、经理，对该公司、企业的破产负有个人责任的，自该公司、企业破产清算完结之日起未逾3年；

（四）担任因违法被吊销营业执照、责令关闭的公司、企业的法定代表人，并负有个人责任的，自该公司、企业被吊销营业执照之日起未逾3年；

（五）个人所负数额较大的债务到期未清偿；

（六）被中国证监会处以证券市场禁入处罚，期限未满的；

（七）法律、行政法规或部门规章规定的其他内容。

违反本条规定选举董事的，该项选举无效。

在任董事出现上述情形时，董事会应当自知道该情况发生之日起，立即停止有关董事履行职责，并提请股东大会予以撤换。

**第一百四十八条**   董事由股东大会选举或更换，任期三年。董事任期届满，连选可以连任。董事在任期届满以前，股东大会不得无故解除其职务。

董事任期从股东大会决议通过之日起计算，至本届董事会任期届满时为止。董事任期届满未及时改选，在改选出的董事就任前，原董事仍应当依照法律、行政法规、部门规章和本章程的规定，履行董事职务。

**第一百四十九条**   董事应当遵守法律、行政法规和本章程的规定，对公司负有下列忠实义务：

（一）不得利用职权收受贿赂或者其他非法收入，不得侵占公司的财产；

（二）不得挪用公司资金；

（三）不得将公司资产或者资金以其个人名义或者其他个人名义开立账户存储；

（四）不得违反本章程的规定，未经股东大会或董事会同意，将公司资金借贷给他人或者以公司财产为他人提供担保；

（五）不得违反本章程的规定或未经股东大会同意，与本公司订立合同或者进行交易；

（六）未经股东大会同意，不得利用职务便利，为自己或他人谋取本应属于公司的商业机会，自营或者为他人经营与本公司同类的业务；

（七）不得接受与公司交易的佣金归为己有；

（八）不得擅自披露公司秘密；

（九）不得利用其关联关系损害公司利益；

（十）法律、行政法规、部门规章及本章程规定的其他忠实义务。

董事违反本条规定所得的收入，应当归公司所有；给公司造成损失的，应当承担赔偿责任。

**第一百五十条**   公司应与董事签订聘任合同，明确公司和董事之间的权利义务、董事的任期、董事违反法律法规和本章程的责任以及公司因故提前解除合同的补偿等内容。

彩虹显示器件股份有限公司章程

第一百五十一条 董事应当遵守法律、行政法规和本章程，对公司负有下列勤勉义务：

（一）应谨慎、认真、勤勉地行使公司赋予的权利，以保证公司的商业行为符合国家法律、行政法规以及国家各项经济政策的要求，商业活动不超过营业执照规定的业务范围；

（二）应公平对待所有股东；

（三）及时了解公司业务经营管理状况；

（四）应当对公司定期报告签署书面确认意见。保证公司所披露的信息真实、准确、完整；

（五）应当如实向监事会提供有关情况和资料，不得妨碍监事会或者监事行使职权；

（六）法律、行政法规、部门规章及本章程规定的其他勤勉义务。

第一百五十二条 未经本章程规定或者董事会的合法授权，任何董事不得以个人名义代表公司或者董事会行事。董事以其个人名义行事时，在第三方会合理地认为该董事在代表公司或者董事会行事的情况下，该董事应当事先声明其立场和身份。

第一百五十三条 董事个人或者其所任职的其他企业直接或者间接与公司已有的或者计划中的合同、交易、安排有关联关系时（聘任合同除外），不论有关事项在一般情况下是否需要董事会批准同意，均应当尽快向董事会披露其关联关系的性质和程度。

第一百五十四条 如果公司董事在公司首次考虑订立有关合同、交易、安排前以书面形式通知董事会，声明由于通知所列的内容，公司日后达成的合同、交易、安排与其有利益关系，则在通知阐明的范围内，视为有关董事做了本章程前条所规定的披露。

第一百五十五条 董事连续两次未能亲自出席，也不委托其他董事出席董事会会议，视为不能履行职责，董事会应当建议股东大会予以撤换。

第一百五十六条 董事可以在任期届满以前提出辞职。董事辞职应当向董事会提交书面辞职报告。

第一百五十七条 如因董事的辞职导致公司董事会少于 5 人时，该董事的辞职报告应当在下任董事填补因其辞职产生的缺额后方能生效。

余任董事应当尽快召集临时股东大会选举董事，填补因董事辞职产生的空缺，在股东大会未就董事选举作出决议以前，该提出辞职的董事以及余任董事的职权应当受到合理的限制。

除前款所列情形外，董事辞职报告送达董事会时生效。

第一百五十八条 董事提出辞职或者任期届满，其对公司和股东负有的义务在其辞职报告生效后或者任期届满后的一年内仍然有效。

第一百五十九条 任职尚未结束的董事，对因其擅自离职使公司造成的损失，应当承担赔偿责任。

第一百六十条 公司不以任何形式为董事纳税。

第一百六十一条 董事会决议违反法律、行政法规或者本章程，致使公司遭受损失的，参与决议的董事对公司负赔偿责任。但经证明在表决时曾表明异议并记载于会议记录的，董事可以免除责任。

第一百六十二条 董事执行公司职务时违反法律、行政法规、部门规章或本章程的规定，给公司造成损失的，应当承担赔偿责任。

第一百六十三条 经股东大会批准，公司可以为董事购买责任保险。但董事因违反法律、行政法规和本章程规定而导致的责任除外。

## 第二节 独立董事

第一百六十四条 公司设独立董事四名，其中具有高级职称或注册会计师资格的会计

彩虹显示器件股份有限公司章程

从业人员不少于一名。

**第一百六十五条** 独立董事由公司董事会、监事会、单独或合并持有公司股份百分之一以上的股东提名，由股东大会选举或更换。

**第一百六十六条** 在选举独立董事的股东大会召开前，公司应当将独立董事候选人的有关材料（包括但不限于提名人声明、候选人声明、独立董事履历表）报送公司所在地中国证监会派出机构和证券交易所。

董事会对被提名人的有关情况有异议的，应同时报送董事会的书面意见。

**第一百六十七条** 证券交易所对独立董事候选人的任职资格或者独立性提出异议时，该候选人不得作为独立董事当选，但经提名人同意，可作为董事候选人参加选举。

股东大会选举独立董事时，董事会应对独立董事候选人是否被证券交易所提出异议的情况作出说明。

**第一百六十八条** 独立董事的提名人在提名前应当征得被提名人的同意。提名人应当充分了解被提名人职业、学历、职称、详细的工作经历、全部兼职等情况，并对其担任独立董事的资格和独立性发表声明。

**第一百六十九条** 独立董事接受提名后，应当就其本人与公司之间不存在任何影响其独立客观判断的关系发表公开声明。

**第一百七十条** 独立董事的任期与本届董事会其他董事任期一致。

独立董事连选可以连任，但是连任时间不得超过六年。

**第一百七十一条** 公司应当给予独立董事适当的津贴。

独立董事的津贴由董事会拟定预案，提请股东大会审议批准，并在公司年报中披露。

除上述津贴外，独立董事不应从公司及其主要股东或有利害关系的机构和人员处取得额外的、未予披露的其他利益。

**第一百七十二条** 独立董事对公司全体股东负责，但当股东利益不一致时，应当重点关注中小股东的利益不受损害。

**第一百七十三条** 独立董事应当具备与其行使职权相适应的任职条件，担任独立董事应当符合下列基本条件：

（一）根据法律、行政法规及其他有关规定，具备担任上市公司董事的资格；

（二）具有证券监管部门规范性文件要求的独立性；

（三）具备上市公司运作的基本知识，熟悉相关法律、行政法规、规章及规则；

（四）具有五年以上法律、经济或者其他履行独立董事职责所必需的工作经验；

（五）公司章程规定的其他条件。

**第一百七十四条** 下列人员不得担任独立董事：

（一）在公司或公司的子公司、分公司任职的人员及其直系亲属、主要社会关系；

（二）直接或间接持有公司发行在外股份百分之一以上或者位居公司前十名股东中的自然人股东及其直系亲属、主要社会关系；

（三）在直接或间接持有公司发行在外股份百分之五以上或者位居公司前五名股东中的单位任职的人员及其直系亲属、主要社会关系；

（四）最近一年内曾经具有前三项所列举情形的人员；

（五）与公司、公司关联人或公司管理层人士有利益关系的人员；

（六）在直接或间接地与公司存在业务联系或利益关系的机构任职的人员；

（七）为公司或者公司的子公司、分公司提供财务、法律、咨询等服务的人员或者在

彩虹显示器件股份有限公司章程

该等机构中任职的其他人员；

（八）在证券监管部门、证券经营机构、证券投资基金任职的人员；

（九）《公司法》或其他相关法律、行政法规规定不得担任公司董事的人员；

（十）被中国证监会认定为市场禁入者且禁入尚未解除的人员。

（十一）公司之间存在其他任何可能影响其作出独立客观判断的关系的人员。

（十二）中国证监会认定的其他人员。

上述直系亲属是指配偶、父母、子女等；主要社会关系是指兄弟姐妹、岳父母、儿媳、女婿、兄弟姐妹的配偶、配偶的兄弟姐妹等。

**第一百七十五条** 独立董事应当履行法律、法规、规范性文件及本章程规定的诚信尽责义务。

**第一百七十六条** 独立董事除具有董事的一般职权外，还具有下列特别职权：

(一)重大关联交易（指公司拟与关联人达成的总额高于 300 万元或高于公司最近经审计净资产值的 5%的关联交易）应由独立董事事前同意后，方可提交董事会讨论；独立董事作出判断前，可以聘请中介机构出具独立财务顾问报告，作为其判断的依据；

(二)向董事会提议聘用或解聘会计师事务所；

(三)向董事会提请召开临时股东大会；

(四)提议召开董事会；

(五)董事会作出决议前，独立董事认为审议事项资料或论证不充分，提议暂缓表决时，董事会应予以采纳；

(六)可以在股东大会召开前公开向股东征集投票权；

(七)独立聘请外部审计机构或者咨询机构。

如上述提议未被采纳或上述职权不能正常行使，公司应将有关情况予以披露。

**第一百七十七条** 独立董事应当对下列事项发表独立意见：

（一）提名、任免董事；

（二）聘任或解聘高级管理人员；

（三）公司董事、高级管理人员的薪酬；

（四）公司财务报告；

（五）董事会作出的利润分配预案中不含现金派息时；

（六）公司发行新股的方案；

（七）公司的股东、实际控制人及其关联企业对公司现有或新发生的总额高于 300 万元或高于公司最近经审计净资产值 5%以上的借款或其他资金往来，以及公司是否采取有效措施回收欠款；

（八）占公司最近经审计后总资产百分之三十以上的资产置换、收购或出售方案；

（九）占公司最近经审计后净资产百分之十以上的风险投资、担保及财产损失方案；

（十）在公司年度报告中，对公司累计和当期对外担保情况进行专项说明，并发表独立意见；

（十一）证券监管部门、证券交易所要求独立董事发表意见的事项；

（十二）法律、法规及规范性文件要求独立董事发表意见的事项；

（十三）独立董事认为可能损害中小股东权益的事项；

（十四）独立董事认为必要的其他事项。

**第一百七十八条** 独立董事发表独立意见应采用下列方式之一：

彩虹显示器件股份有限公司章程

（一）同意；

（二）保留意见及其理由；

（三）反对意见及其理由；

（四）无法发表意见及其障碍。

**第一百七十九条** 如有关事项涉及需要披露时，公司应当将独立董事的意见予以公告，独立董事出现意见分歧无法达成一致时，董事会应将各独立董事的意见分别披露。

**第一百八十条** 为保证独立董事有效行使职权，公司应当为独立董事提供必要的条件：

（一）公司应当保证独立董事享有与其他董事同等的知情权。凡须经董事会决策的事项，公司必须在规定的时限内提前通知独立董事并同时提供足够的资料，独立董事认为资料不充分的，可以要求补充。

（二）公司应提供独立董事履行职责所必需的工作条件（包括但不限于提供文件、资料、办公场所、交通和通信工具及出入生产经营场所的便利条件）。

（三）公司董事会秘书应积极为独立董事履行职责提供协助，如介绍情况、提供材料等。独立董事发表的独立意见、提案及书面说明应当公告的，董事会秘书应及时到证券交易所办理公告事宜。

（四）独立董事行使职权时，公司有关人员应当积极配合，不得拒绝、阻碍或隐瞒，不得干预其独立行使职权。

**第一百八十一条** 独立董事应当向公司年度股东大会提交全体独立董事年度报告书，对其履行职责的情况进行说明。

**第一百八十二条** 公司可以建立必要的独立董事责任保险制度，以降低独立董事正常履行职责可能引致的风险。

**第一百八十三条** 公司向独立董事提供的资料，公司及独立董事本人应当至少保存五年。

**第一百八十四条** 独立董事连续三次未亲自出席董事会会议的，由董事会提请股东大会予以撤换。

除非法律、法规、规范性文件及本章程另有规定外，独立董事任期届满前不得无故被免职。如果必须免职时，公司应将其作为特别披露事项予以披露，被免职的独立董事认为公司免职理由不当的，可以作出公开声明。

**第一百八十五条** 独立董事在任期届满前可以提出辞职。

独立董事辞职应向董事会递交书面辞职报告，并对任何与其辞职有关或其认为有必要引起公司股东和利益相关者注意的情况进行说明。

独立董事辞职导致独立董事成员或董事会成员低于法定或本章程规定的最低人数时，董事会应当在自接到辞职报告之日起的 60 日内召集股东大会补选独立董事。在补选的独立董事就任前，该等辞职独立董事仍应当按照法律、行政法规及本章程的规定履行职务。逾期未补选独立董事时，该等辞职独立董事可以不再履行职务。

**第一百八十六条** 独立董事不能履行职责或发生严重失职行为时，由董事会或监事会提请股东大会予以撤换。

董事会或监事会作出上述决议时，持反对意见的董事或监事有权要求对其意见进行公告。

### 第三节 董事会

**第一百八十七条** 公司设董事会，对股东大会负责。

彩虹显示器件股份有限公司章程

**第一百八十八条** 董事会由九名董事（包括四名独立董事）组成。

**第一百八十九条** 董事会行使下列职权：

（一）负责召集股东大会，并向大会报告工作；

（二）执行股东大会的决议；

（三）决定公司的经营计划和投资方案；

（四）制订公司的年度财务预算方案、决算方案；

（五）制订公司的利润分配方案和弥补亏损方案；

（六）制订公司增加或者减少注册资本、发行债券或其他证券及上市方案；

（七）拟订公司重大收购、回购本公司股票或者合并、分立和解散及变更公司形式的方案；

（八）在股东大会授权范围内，决定公司的对外投资、收购出售资产、资产抵押及委托理财、关联交易等事项；

（九）决定须经股东大会审议通过之外的对担保事项；

（十）决定公司内部管理机构的设置；

（十一）聘任或者解聘公司总经理、董事会秘书；根据总经理的提名，聘任或者解聘公司副总经理、财务负责人等高级管理人员，并决定其报酬事项和奖惩事项；

（十二）制订公司的基本管理制度；

（十三）制订公司章程的修改方案；

（十四）管理公司信息披露事项；

（十五）向股东大会提请聘请或更换为公司审计的会计师事务所；

（十六）听取公司总经理的工作汇报并检查总经理的工作；

（十七）法律、法规或公司章程规定，以及股东大会授予的其他职权。

**第一百九十条** 公司设董事长一人,副董事长一人，以全体董事的过半数选举产生和罢免。

**第一百九十一条** 董事长行使下列职权：

（一）主持股东大会和召集、主持董事会会议；

（二）督促、检查董事会决议的执行；

（三）签署公司股票、公司债券及其他有价证券；

（四）签署董事会重要文件和其他应由公司法定代表人签署的其他文件；

（五）行使法定代表人的职权；

（六）在发生特大自然灾害等不可抗力的紧急情况下，对公司事务行使符合法律规定和公司利益的特别处置权，并在事后向公司董事会和股东大会报告；

（七）董事会授予的其他职权。

**第一百九十二条** 董事长不能履行职责时，由副董事长代其履行职责，副董事长不能履行职责，亦未指定其他董事代其行使职责时，由二分之一以上的董事共同推举一名董事履行职责。

**第一百九十三条** 公司董事会应当就注册会计师对公司财务报告出具的非标准的审计报告向股东大会作出说明。

**第一百九十四条** 公司全体董事应当审慎对待对外担保，严格控制对外担保产生的债务风险。

**第一百九十五条** 董事会应当制定《投资者关系管理工作制度》，积极开展投资者关系

彩虹显示器件股份有限公司章程

管理工作，通过多种形式主动加强与投资者特别是社会公众投资者的沟通和交流，设立专门的投资者咨询电话，在公司网站开设投资者关系专栏，定期举行与公众投资者见面活动，及时答复公众投资者关心的问题。公司董事会秘书具体负责公司投资者关系管理工作。

### 第四节　董事会对董事长的授权

第一百九十六条　董事会闭会期间，董事长有权决定并签署单笔金额不超过人民币5000万元的银行借款合同。

董事长做出的上述决定应符合公司的最大利益，并在下次董事会上进行报告。

### 第五节　董事会秘书

第一百九十七条　董事会设董事会秘书一人。

董事会秘书是公司高级管理人员，由董事长提名，经董事会聘任对公司和董事会负责。

董事会秘书是公司与证券交易所之间的指定联络人。

第一百九十八条　董事会秘书应当具有必备的专业知识和经验。

董事会秘书的任职资格：

（一）具有大学专科以上学历，从事秘书或经济管理、股权事务等工作不少于三年；

（二）掌握法律、财务、证券、企业管理等方面的知识，具有良好的个人品质和职业道德，严格遵守法律、法规、规章，能够忠诚地履行职责，并具有良好的处理公共事务的能力。

（三）取得证券交易所颁发的董事会秘书培训合格证书。

第一百九十九条　具有下列情形之一的人士不得担任董事会秘书：

（一）有《公司法》第147条规定情形之一的；

（二）自受到中国证监会最近一次行政处罚未满三年的；

（三）最近三年受到证券交易所公开谴责或三次以上通报批评的；

（四）本公司现任监事；

（五）证券交易所认定不适合担任董事会秘书的其他情形

第二百条　董事会秘书的应当履行如下职责：

（一）负责公司和相关当事人与证券交易所及其他证券监管机构之间的及时沟通和联络，保证证券交易所可以随时与其取得工作联系；

（二）负责处理公司信息披露事务，督促公司制定并执行信息披露管理制度和重大信息的内部报告制度，促使公司和相关当事人依法履行信息披露义务，并按规定向证券交易所办理定期报告和临时报告的披露工作；

（三）协调公司与投资者关系，接待投资者来访，回答投资者咨询，向投资者提供公司已披露的资料；

（四）按照法定程序筹备董事会会议和股东大会，准备和提交拟审议的董事会和股东大会的文件；

（五）参加董事会会议，制作会议记录并签字；

（六）负责与公司信息披露有关的保密工作，制订保密措施，促使公司董事会全体成员及相关知情人在有关信息正式披露前保守秘密，并在内幕信息泄露时，及时采取补救措施并向证券交易所报告；

彩虹显示器件股份有限公司章程

（七）负责保管公司股东名册、董事名册、大股东及董事、监事、高级管理人员持有公司股票的资料，以及董事会、股东大会的会议文件和会议记录等；

（八）协助董事、监事和高级管理人员了解信息披露相关法律、法规、规章、证券交易所股票上市规则及证券交易所的其他规定和公司章程，以及上市协议对其设定的责任；

（九）促使董事会依法行使职权；在董事会拟作出的决议违反法律、法规、规章、证券交易所股票上市规则及证券交易所其他规定和公司章程时，应当提醒与会董事，并提请列席会议的监事就此发表意见；如果董事会坚持作出上述决议，董事会秘书应将有关监事和其个人的意见记载于会议记录上，并立即向证券交易所报告；

（十） 证券交易所要求履行的其他职责。

**第二百零一条**　公司董事或者其他高级管理人员可以兼任公司董事会秘书。公司聘请的会计师事务所的注册会计师和律师事务所的律师不得兼任董事会秘书。

**第二百零二条**　董事会秘书由董事长提名，经董事会聘任或者解聘。董事兼任董事会秘书的，如某一行为需由董事、董事会秘书分别作出时，则该兼任董事及公司董事会秘书的人不得以双重身份作出。

**第二百零三条**　公司应当为董事会秘书履行职责提供便利条件，董事、监事、高级管理人员及公司有关人员应当支持、配合董事会秘书的工作。

董事会秘书为履行职责有权了解公司的财务和经营情况，参加涉及信息披露的有关会议，查阅涉及信息披露的所有文件，并要求公司有关部门和人员及时提供相关资料和信息。

董事会秘书在履行职责过程中受到不当妨碍和严重阻挠时，可以直接向证券交易所报告。

**第二百零四条**　公司解聘董事会秘书应当具有充分理由，不得无故将其解聘。

董事会秘书被解聘或者辞职时，公司应当及时向股票上市地证券交易所报告，说明原因并公告。

董事会秘书有权就被公司不当解聘或者与辞职有关的情况，向公司股票上市地证券交易所提交个人陈述报告。

**第二百零五条**　董事会秘书有以下情形之一的，公司应当自事实发生之日起在一个月内解聘其董事会秘书职务：

（一）不再具备担任董事会秘书资格；

（二）连续三个月以上不能履行职责；

（三）在执行职务时出现重大错误或疏漏，给投资者造成重大损失；

（四）违反国家法律、法规、规章、本规则、本所其他规定和公司章程，给投资者造成重大损失。

**第二百零六条**　公司应当在聘任董事会秘书时与其签订保密协议，要求其承诺在任职期间以及在离任后持续履行保密义务直至有关信息披露为止，但涉及公司违法违规的信息除外。

董事会秘书离任前，应当接受董事会、监事会的离任审查，在公司监事会的监督下移交有关档案文件、正在办理或待办理事项。

**第二百零七条**　公司董事会秘书空缺期间，董事会应当指定一名董事或高级管理人员代行董事会秘书的职责，并报证券交易所备案，同时尽快确定董事会秘书人选。公司指定代行董事会秘书职责的人员之前，由董事长代行董事会秘书职责。

董事会秘书空缺期间超过三个月之后，董事长应当代行董事会秘书职责，直至公司正式聘任董事会秘书。

彩虹显示器件股份有限公司章程

第二百零八条    公司在聘任董事会秘书的同时，还应当聘任证券事务代表，协助董事会秘书履行职责；在董事会秘书不能履行职责时，由证券事务代表行使其权利并履行其职责。在此期间，并不当然免除董事会秘书对公司信息披露事务所负有的责任。

证券事务代表应当取得证券交易所颁发的董事会秘书证书。

### 第六节    董事会专门委员会

第二百零九条    公司董事会可以按照股东大会的有关决议，设立战略、审计、提名、薪酬与考核等专门委员会。专门委员会成员全部由董事组成，其中审计委员会、提名委员会、薪酬与考核委员会中独立董事应占多数并担任召集人，审计委员会中至少应有一名独立董事具有会计专业背景。

第二百一十条    战略委员会的主要职责是对公司长期发展战略和重大投资决策进行研究并提出建议。

第二百一十一条    审计委员会的主要职责是：

（一）提议聘请或更换外部审计机构；
（二）监督公司的内部审计制度及其实施；
（三）负责内部审计与外部审计之间的沟通；
（四）审核公司的财务信息及其披露；
（五）审查公司的内控制度。

第二百一十二条    提名委员会的主要职责是：

（一）研究董事、经理人员的选择标准和程序并提出建议；
（二）广泛搜寻合格的董事和经理人员的人选；
（三）对董事候选人和经理人选进行审查并提出建议。

第二百一十三条    薪酬与考核委员会的主要职责是：

（一）研究董事与经理人员考核的标准，进行考核并提出建议；
（二）研究和审查董事、高级管理人员的薪酬政策与方案。

第二百一十四条    各专门委员会可以聘请中介机构提供专业意见，有关费用由公司承担。

第二百一十五条    各专门委员会对董事会负责，各专门委员会的提案应提交董事会审查决定。

### 第七章    监事和监事会

#### 第一节    监事

第二百一十六条    监事由股东代表和公司职工代表担任。公司职工代表担任的监事不得少于监事人数的 1/3。

第二百一十七条    董事、经理和其他高级管理人员不得兼任监事。

本章程第 147 条规定不得担任董事的情形适用于监事。

在任监事出现第 147 条规定的情形时，监事会应当知道该情形发生之日起，立即停止有关监事履行职责，并提请股东大会或职工（代表）大会予以撤换。

第二百一十八条    监事应当遵守法律、行政法规和本章程，对公司负有忠实义务和勤勉义务，不得利用职权收受贿赂或者其他非法收入，不得侵占公司的财产。

第二百一十九条    监事每届任期三年。股东担任的监事由股东大会选举或更换，职工担任的监事由公司职工民主选举产生或更换。监事连选可以连任。

监事在任期届满以前，股东大会不得无故解除其职务。

监事任期自股东大会决议通过之日起计算，至本届监事会任期届满时为止。

**第二百二十条**　监事任期届满未及时改选，或者监事在任期内辞职导致监事会成员低于法定人数的，在改选出的监事就任前，原监事仍应当依照法律、行政法规和本章程的规定，履行监事职务。

**第二百二十一条**　监事应当保证公司披露的信息真实、准确、完整。

**第二百二十二条**　监事可以列席董事会会议，并对董事会决议事项提出质询或者建议。

**第二百二十三条**　监事不得利用其关联关系损害公司利益，若给公司造成损失的，应当承担赔偿责任。

**第二百二十四条**　监事执行公司职务时违反法律、行政法规、部门规章或本章程的规定，给公司造成损失的，应当承担赔偿责任。

**第二百二十五条**　监事应具有法律或者会计方面的专业知识及工作经验。

**第二百二十六条**　监事有了解公司经营情况的权利，并承担相应的保密义务。监事会可以独立聘请中介机构提供专业意见。

**第二百二十七条**　公司应采取措施保障监事的知情权，为监事正常履行职责提供必要的协助，任何人不得干预、阻挠。

监事履行职责所需的合理费用应由公司承担。

**第二百二十八条**　监事连续两次不能亲自出席监事会会议的，视为不能履行职责，股东大会或职工代表大会应予以撤换。

**第二百二十九条**　监事的薪酬由股东大会决定。

**第二百三十条**　公司不以任何形式为监事纳税。

**第二百三十一条**　监事可以在任期届满以前提出辞职，本章程第六章有关董事辞职的规定，适用于监事。

**第二百三十二条**　监事应当遵守法律、行政法规和公司章程的规定，履行诚信和勤勉的义务。

## 第二节　监事会

**第二百三十三条**　公司设监事会。监事会是公司常设的监督机构，对股东大会负责。监事会由三名监事组成。其中股东代表二人，公司职工代表一人。

监事会设主席一名，由监事担任，以全体监事的过半数选举产生或者罢免。

监事会主席不能履行职权时，由主席指定一名监事代行其职权。

**第二百三十四条**　监事会行使下列职权：

（一）应当对董事会编制的公司定期报告进行审核并提出书面审核意见；

（二）检查公司财务；

（三）对董事、高级管理人员执行公司职务的行为进行监督，对违反法律、行政法规、本章程或者股东大会决议的董事、高级管理人员提出罢免的建议；

（四）当董事、高级管理人员的行为损害公司的利益时，要求董事、高级管理人员予以纠正；

（五）提议召开临时股东大会，在董事会不履行《公司法》规定的召集和主持股东大会职责时召集和主持股东大会；

（六）向股东大会提出提案；

（七）依照《公司法》第 152 条的规定，对董事、高级管理人员提起诉讼；

（八）发现公司经营情况异常，可以进行调查；必要时，可以聘请会计师事务所、律师事务所等专业机构协助其工作，费用由公司承担。

（九）本章程规定或股东大会授予的其他职权。

彩虹显示器件股份有限公司章程

**第二百三十五条**　监事会行使职权，必要时可以聘请律师事务所、会计师事务所等专业性机构给予帮助，由此发生的费用由公司承担。

## 第八章　经理

**第二百三十六条**　公司设经理，其中总经理一名，副总经理若干名，由董事会聘任或解聘。董事可受聘兼任总经理、副总经理或者其他高级管理人员，但兼任总经理、副总经理或者其他高级管理人员职务的董事不得超过公司董事总数的二分之一。

**第二百三十七条**　本章程第 147 条规定的不得担任董事的情形适用于高级管理人员。

在任经理出现第 147 条规定的情形时，董事会应当自知道该情况发生之日起，立即停止其履行职责，并召开董事会履行解聘程序。

本章程关于董事的第 149 条忠实义务和第 151 条（四）-（六）关于勤勉义务的规定，同时适用于高级管理人员。

**第二百三十八条**　在公司控股股东、实际控制人单位担任除董事以外其他职务的人员，不得担任公司的高级管理人员。

**第二百三十九条**　经理每届任期三年，经理连聘可以连任。

**第二百四十条**　公司经理人员的聘任，应严格按照有关法律、法规和本章程的规定进行。任何组织和个人不得干预公司经理人员的正常选聘程序。

**第二百四十一条**　公司应和经理人员签订聘任合同，明确双方的权利义务关系。

**第二百四十二条**　总经理对董事会负责，行使下列职权：

(一)主持公司的生产经营管理工作，并向董事会报告工作；

(二)组织实施董事会决议、公司年度计划和投资方案；

(三)拟订公司内部管理机构设置方案；

(四)拟订公司的基本管理制度；

(五)制订公司的具体规章；

(六)提请董事会聘任或者解聘公司副总经理、财务负责人；

(七)聘任或者解聘除应由董事会聘任或者解聘以外的管理人员；

(八)拟定公司职工的工资、福利、奖惩，决定公司职工的聘用和解聘；

(九)提议召开董事会临时会议；

(十)本章程或董事会授予的其他职权。

**第二百四十三条**　总经理列席董事会会议。

非董事总经理在董事会上没有表决权。

**第二百四十四条**　经理应当根据董事会或者监事会的要求，向董事会或者监事会报告公司重大合同的签订、执行情况、资金运用情况和盈亏情况。经理必须保证该报告的真实性。

**第二百四十五条**　经理拟定有关职工工资、福利、安全生产以及劳动保护、劳动保险、劳动合同等涉及职工切身利益的问题时，应当事先听取工会或职代会的意见。

**第二百四十六条**　总经理应制订经理工作细则，报董事会批准后实施。

**第二百四十七条**　经理工作细则包括下列内容：

（一）经理会议召开的条件、程序和参加的人员；

（二）总经理、副总经理及其他高级管理人员各自具体的职责及其分工；

（三）公司资金、资产运用，签订重大合同的权限，以及向董事会、监事会的报告制度；

（四）董事会认为必要的其他事项。

**第二百四十八条** 公司经理应当遵守法律、行政法规和公司章程的规定，履行诚信和勤勉的义务。

**第二百四十九条** 经理可以在任期届满以前提出辞职。有关经理辞职的具体程序和办法由经理与公司签订的聘任合同规定。

**第二百五十条** 经理的任免应履行法定的程序，并予以公告。

## 第九章 绩效评价与激励约束机制
### 第一节 董事、监事、经理人员的绩效评价

**第二百五十一条** 公司应建立公正透明的董事、监事和经理人员的绩效评价标准和程序。

**第二百五十二条** 董事和经理人员的绩效评价由董事会或其下设的薪酬与考核委员会负责组织。独立董事、监事的评价应采取自我评价与相互评价相结合的方式进行。

**第二百五十三条** 董事薪酬的数额和方式由董事会提出方案报请股东大会决定。在董事会或薪酬与考核委员会对董事个人进行评价或讨论其报酬时，该董事应当回避。

**第二百五十四条** 董事会、监事会应当向股东大会报告董事、监事履行职责的情况、绩效评价结果及其薪酬情况，并予以披露。

### 第二节 经理人员的激励与约束机制

**第二百五十五条** 公司应建立经理人员的薪酬与公司绩效和个人业绩相联系的激励机制，以吸引人才，保持经理人员的稳定。

**第二百五十六条** 公司对经理人员的绩效评价应当成为确定经理人员薪酬以及其它激励方式的依据。

**第二百五十七条** 经理人员的薪酬分配方案应获得董事会的批准，向股东大会说明，并予以披露。

**第二百五十八条** 经理人员违反法律、行政法规和本章程规定，致使公司遭受损失的，公司董事会应积极采取措施追究其法律责任。

## 第十章 财务会计制度、利润分配和审计
### 第一节 财务会计制度

**第二百五十九条** 公司依照法律、行政法规和国家有关部门的规定，制定公司的财务会计制度。

**第二百六十条** 公司在每一会计年度结束之日起 4 个月内向中国证监会和证券交易所报送年度财务会计报告，在每一会计年度前 6 个月结束之日起 2 个月内向中国证监会派出机构和证券交易所报送半年度财务会计报告，在每一会计年度前 3 个月和前 9 个月结束之日起的 1 个月内向中国证监会派出机构和证券交易所报送季度财务会计报告。

上述财务会计报告按照有关法律、行政法规及部门规章的规定进行编制。

**第二百六十一条** 公司年度财务报告以及进行中期利润分配的中期财务报告，包括下列内容：

（一）资产负债表；

（二）利润表；

彩虹显示器件股份有限公司章程

（三）利润分配表；

（四）现金流量表；

（五）会计报表附注。

公司不进行中期利润分配时，中期财务报告包括上列除第（三）项以外的会计报表及附注。

**第二百六十二条**　公司年度报告中的财务会计报告必须经具有执行证券、期货相关业务资格的会计师事务所进行审计。

公司半年度报告中的财务会计报告可以不经审计，但有下列情形之一的，应当进行审计：

（一）拟在下半年进行利润分配、公积金转增股本或弥补亏损的；

（二）拟在下半年申请发行新股或可转换公司债券等再融资事宜，根据有关规定需要进行审计的；

（三）股票被暂停上市后申请恢复上市按要求需要进行审计的；

（四）中国证监会或证券交易所认为应当进行审计的其他情形。

公司季度报告中的财务报表无须审计，但中国证监会或证券交易所另有规定的除外。

**第二百六十三条**　公司除法定的会计账册外，不另立会计账簿。公司的资产，不以任何个人名义开立账户存储。

**第二百六十四条**　公司分配当年税后利润时，应当提取利润的 10% 列入公司法定公积金。公司法定公积金累计额为公司注册资本的 50% 以上的，可以不再提取。

公司的法定公积金不足以弥补以前年度亏损的，在依照前款规定提取法定公积金之前，应当先用当年利润弥补亏损。

公司从税后利润中提取法定公积金后，经股东大会决议，还可以从税后利润中提取任意公积金。

公司弥补亏损和提取公积金后所余税后利润，按照股东持有的股份比例分配，但本章程规定不按持股比例分配的除外。

股东大会违反前款规定，在公司弥补亏损和提取法定公积金之前向股东分配利润的，股东必须将违反规定分配的利润退还公司。

公司持有的本公司股份不参与分配利润。

**第二百六十五条**　公司的公积金用于弥补公司的亏损、扩大公司生产经营或者转为增加公司资本。但是，资本公积金将不用于弥补公司的亏损。

法定公积金转为资本时，所留存的该项公积金将不少于转增前公司注册资本的 25%。

**第二百六十六条**　公司股东大会对利润分配方案作出决议后，公司董事会须在股东大会召开后两个月内完成股利（或股份）的派送事项。

**第二百六十七条**　公司当年利润分配政策由董事会在年度股东大会召开前制定并予以公告。

**第二百六十八条**　公司分配股利采取现金或者股票方式。

**第二百六十九条**　股东违规占有公司资金的，公司应当扣减该股东所分配的现金红利，以偿还其占用的资金。

**第二节　内部审计**

**第二百七十条**　公司实行内部审计制度，配备专职审计人员，对公司财务收支和经济活动进行内部审计监督。

**第二百七十一条**　公司内部审计制度和审计人员的职责，应当经董事会批准后实施。审计负责人向董事会负责并报告工作。

彩虹显示器件股份有限公司章程

### 第三节　会计师事务所的聘任

**第二百七十二条**　公司聘用取得"从事证券、期货相关业务资格"的会计师事务所进行会计报表审计、净资产验证及其他相关的咨询服务等业务，聘期 1 年，可以续聘。

**第二百七十三条**　公司聘用会计师事务所必须由股东大会决定，董事会不得在股东大会决定前委任会计师事务所。

**第二百七十四条**　公司保证向聘用的会计师事务所提供真实、完整的会计凭证、会计账簿、财务会计报告及其他会计资料，不得拒绝、隐匿、谎报。

**第二百七十五条**　会计师事务所的审计费用由股东大会决定。

**第二百七十六条**　经公司聘用的会计师事务所享有下列权利：

（一）查阅公司财务报表、记录和凭证，并有权要求公司的董事、经理或者其他高级管理人员提供有关的资料和说明；

（二）要求公司提供会计师事务所履行职务所必需的其子公司的资料和说明；

（三）列席股东大会，获得股东大会的通知或者与股东大会有关的其他信息，在股东大会上就涉及其作为公司聘用的会计师事务所的事宜发言。

**第二百七十七条**　公司解聘会计师事务所由股东大会作出决定，并在《中国证券报》和《上海证券报》上予以披露，必要时说明更换原因，并报中国证监会和中国注册会计师协会备案。

**第二百七十八条**　公司解聘或者不再续聘会计师事务所时，提前三十天通知会计师事务所，会计师事务所有权向股东大会陈述意见。会计师事务所认为公司对其解聘或者不再续聘理由不当的，可以向中国证监会和中国注册会计师协会提出申诉。会计师事务所提出辞聘的，应当向股东大会说明公司有无不当情事。

### 第十一章　持续信息披露

**第二百七十九条**　公司应当制定信息披露管理制度，严格按照法律、法规、规范性文件和本章程的规定，及时、公平地披露所有对公司股票及其衍生品种交易价格可能产生较大影响的信息，并将公告和相关备查文件在第一时间报送证券交易所。

**第二百八十条**　公司及董事应当保证信息披露内容的真实、准确、完整，无虚假记载、误导性陈述或重大遗漏。

**第二百八十一条**　公司披露的信息应当便于理解。公司应保证信息使用者能够通过经济、便捷的方式（如互联网）获得信息。

**第二百八十二条**　公司董事会秘书负责信息披露事项，包括建立信息披露制度、接待来访、回答咨询、联系股东，向投资者提供公司公开披露的资料等。董事会及经理人员应对董事会秘书的工作予以积极支持。任何机构及个人不得干预董事会秘书的工作。

**第二百八十三条**　公司指定《中国证券报》、《上海证券报》为刊登公司公告和其他需要披露信息的报刊。

### 第十二章　利益相关者

**第二百八十四条**　公司应尊重银行及其它债权人、职工、消费者、供应商、社区等利益相关者的合法权利。

**第二百八十五条**　公司应与利益相关者积极合作，共同推动公司持续、健康地发展。

**第二百八十六条**　公司应为维护利益相关者的权益提供必要的条件，当其合法权益受到侵害时，利益相关者应有机会和途径获得赔偿。

彩虹显示器件股份有限公司章程

　　**第二百八十七条**　公司应向银行及其它债权人提供必要的信息，以便其对公司的经营状况和财务状况作出判断和进行决策。

　　**第二百八十八条**　公司应鼓励职工通过与董事会、监事会和经理人员的直接沟通和交流，反映职工对公司经营、财务状况以及涉及职工利益的重大决策的意见。

　　**第二百八十九条**　公司在保持公司持续发展、实现股东利益最大化的同时，应关注所在社区的福利、环境保护、公益事业等问题，重视公司的社会责任。

## 第十三章　合并、分立、解散和清算

### 第一节　合并或分立

　　**第二百九十条**　公司可以依法进行合并或者分立。

　　公司合并可以采取吸收合并和新设合并两种形式。

　　**第二百九十一条**　公司合并或者分立，按照下列程序办理：

　　(一)董事会拟订合并或者分立方案；

　　(二)股东大会依照章程的规定作出决议；

　　(三)各方当事人签订合并或者分立合同；

　　(四)依法办理有关审批手续；

　　(五)处理债权、债务等各项合并或者分立事宜；

　　(六)办理解散登记或者变更登记。

　　**第二百九十二条**　公司合并应由合并各方签订合并协议，并编制资产负债表和财产清单。公司应当自股东大会作出合并决议之日起 10 日内通知债权人，并于 30 日内在《中国证券报》和《上海证券报》上公告。

　　**第二百九十三条**　债权人自接到通知书之日起 30 日内，未接到通知书的自公告之日起四十五日内，有权要求公司清偿债务或者提供相应的担保。

　　**第二百九十四条**　公司合并时，合并各方的债权、债务，由合并后存续的公司或者新设的公司承继。

　　**第二百九十五条**　公司分立，其财产作相应的分割。

　　公司分立，应当编制资产负债表及财产清单。公司应当自作出分立决议之日起 10 日内通知债权人，并于 30 日内在《中国证券报》和《上海证券报》上公告。

　　**第二百九十六条**　公司分立前的债务由分立后的公司承担连带责任。但是，公司在分立前与债权人就债务清偿达成的书面协议另有约定的除外。

　　**第二百九十七条**　公司需要减少注册资本时，必须编制资产负债表及财产清单。

　　公司应当自作出减少注册资本决议之日起 10 日内通知债权人，并于 30 日内在《中国证券报》和《上海证券报》上公告。债权人自接到通知书之日起 30 日内，未接到通知书的自公告之日起 45 日内，有权要求公司清偿债务或者提供相应的担保。

　　公司减资后的注册资本不得不低于法定的最低限额。

　　**第二百九十八条**　公司合并或者分立，登记事项发生变更的，依法向公司登记机关办理变更登记；公司解散的，依法办理公司注销登记；设立新公司的，依法办理公司设立登记。

　　公司增加或者减少注册资本，应当依法向公司登记机关办理变更登记。

### 第二节　解散和清算

　　**第二百九十九条**　有下列情形之一时，公司应当解散并依法进行清算：

　　（一）因合并或者分立而解散；

彩虹显示器件股份有限公司章程

（二）股东大会决议解散；

（三）依法被吊销营业执照、责令关闭或者被撤销；

（四）公司经营管理发生严重困难，继续存续会使股东利益受到重大损失，通过其他途径不能解决的，持有公司全部股东表决权10%以上的股东，可以请求人民法院解散公司。

**第三百零条**  公司本章程第三百零六条第（二）项、第（三）项和第（四）项规定而解散的，应当在解散事由出现之日起15日内成立清算组，开始清算。清算组由董事或者股东大会确定的人员组成。逾期不成立清算组进行清算的，债权人可以申请人民法院指定有关人员组成清算组进行清算。

**第三百零一条**  清算组在清算期间行使下列职权：

（一）通知或者公告债权人；

（二）清理公司财产、编制资产负债表和财产清单；

（三）处理公司未了结的业务；

（四）清缴所欠税款以及清算过程中产生的税款；

（五）清理债权、债务；

（六）处理公司清偿债务后的剩余财产；

（七）代表公司参与民事诉讼活动。

**第三百零二条**  清算组应当自成立之日起10日内通知债权人，并于60日内在《中国证券报》和《上海证券报》上公告。

**第三百零三条**  债权人应当自接到通知书之日起30日内，未接到通知书的自公告之日起45日内，向清算组申报其债权。债权人申报债权时，应当说明债权的有关事项，并提供证明材料。清算组应当对债权进行登记。

在申报债权期间，清算组不得对债权人进行清偿。

**第三百零四条**  清算组在清理公司财产、编制资产负债表和财产清单后，应当制定清算方案，并报股东大会或者人民法院确认。

公司财产在分别支付清算费用、职工的工资、社会保险费用和法定补偿金，缴纳所欠税款，清偿公司债务后的剩余财产，公司按照股东持有的股份比例分配。

清算期间，公司存续，但不能开展与清算无关的经营活动。公司财产在未按前款规定清偿前，将不会分配给股东。

**第三百零五条**  清算组在清理公司财产、编制资产负债表和财产清单后，认为公司财产不足清偿债务的，应当向人民法院申请宣告破产。

公司经人民法院宣告破产后，清算组应当将清算事务移交给人民法院。

**第三百零六条**  清算结束后，清算组应当制作清算报告，报股东大会或者人民法完确认，并报送公司登记机关，申请注销公司登记，公告公司终止。

**第三百零七条**  清算组人员应当忠于职守，依法履行清算义务，不得利用职权收受贿赂或者其他非法收入，不得侵占公司财产。

清算组人员因故意或者重大过失给公司或者债权人造成损失的，应当承担赔偿责任。

**第三百零八条**  公司被依法宣告破产的，依照有关企业破产的法律实施破产清算。


## 第十四章  修改章程

**第三百零九条**  有下列情形之一的，公司应当修改章程：

（一）《公司法》或有关法律、行政法规修改后，章程规定的事项与修改后的法律、行政法规的规定相抵触；

（二）公司的情况发生变化，与章程记载的事项不一致；

（三）股东大会决定修改章程。

第三百一十条　股东大会决议通过的章程修改事项应经主管机关审批的，须报原审批的主管机关批准；涉及公司登记事项的，依法办理变更登记。

第三百一十一条　董事会依照股东大会修改章程的决议和有关主管机关的审批意见修改公司章程。

第三百一十二条　章程修改事项属于法律、法规要求披露的信息，按规定予以公告。

## 第十五章　附则

第三百一十三条　释义

（一）控股股东，是指其持有的股份占公司股本总额 50%以上的股东；持有股份的比例虽然不足 50%，但依其持有的股份所享有的表决权已足以对股东大会的决议产生重大影响的股东。

（二）实际控制人，是指虽不是公司的股东，但通过投资关系、协议或者其他安排，能够实际支配公司行为的人。

（三）关联关系，是指公司控股股东、实际控制人、董事、监事、高级管理人员与其直接或者间接控制的企业之间的关系，以及可能导致公司利益转移的其他关系。但是，国家控股的企业之间不仅因为同受国家控股而具有关联关系。

（四）关联人、关联交易、重大关联交易，其定义与上海证券交易所不时修订的《股票上市规则》中的定义相同。

第三百一十四条　董事会可依照本章程的规定，制订章程细则，章程细则不得与章程的规定相抵触。

第三百一十五条　本章程以中文书写，其他任何语种或不同版本的章程与本章程有歧义时，以在陕西省工商行政管理局最近一次核准登记后的中文版章程为准。

第三百一十六条　本章程所称"以上"、"以内"、"以下"、"不超过"都含本数；"不满"、"以外"、"低于"、"多于"、"超过"不含本数。

第三百一十七条　本章程由公司董事会负责解释。

第三百一十八条　本章程附件包括董事会议事规则和监事会议事规则。

彩虹显示器件股份有限公司章程

附件

# 彩虹显示器件股份有限公司
# 董事会议事规则

### 第一条　宗旨

为了进一步规范彩虹显示器件股份有限公司（以下简称"公司"）董事会的议事方式和决策程序，促使董事和董事会有效地履行其职责，提高董事会规范运作和科学决策水平，根据《公司法》、《证券法》、《上市公司治理准则》、《上海证券交易所股票上市规则》等有关规定，制订本规则。

### 第二条　董事会办公室

董事会下设董事会办公室，处理董事会日常事务。

### 第三条　定期会议

董事会会议分为定期会议和临时会议。

董事会每年应当至少在上下两个半年度各召开一次定期会议。

### 第四条　定期会议的提案

在发出召开董事会定期会议的通知前，董事会办公室应当充分征求各董事的意见，初步形成会议提案后交董事长拟定。

董事长在拟定提案前，应当视需要征求经理和其他高级管理人员的意见。

### 第五条　临时会议

有下列情形之一的，董事会应当召开临时会议：

（一）代表十分之一以上表决权的股东提议时；

（二）三分之一以上董事联名提议时；

（三）监事会提议时；

（四）董事长认为必要时；

（五）二分之一以上独立董事提议时；

（六）经理提议时；

（七）证券监管部门要求召开时；

（八）本公司《公司章程》规定的其他情形。

### 第六条　临时会议的提议程序

按照前条规定提议召开董事会临时会议的，应当通过董事会办公室或者直接向董事长提交经提议人签字（盖章）的书面提议。书面提议中应当载明下列事项：

（一）提议人的姓名或者名称；

（二）提议理由或者提议所基于的客观事由；

（三）提议会议召开的时间或者时限、地点和方式；

（四）明确和具体的提案；

（五）提议人的联系方式和提议日期等。

提案内容应当属于本公司《公司章程》规定的董事会职权范围内的事项，与提案有关的

材料应当一并提交。

董事会办公室在收到上述书面提议和有关材料后，应当于当日转交董事长。董事长认为提案内容不明确、具体或者有关材料不充分的，可以要求提议人修改或者补充。

董事长应当自接到提议或者证券监管部门的要求后十日内，召集董事会会议并主持会议。

**第七条　会议的召集和主持**

董事会会议由董事长召集和主持；董事长不能履行职务或者不履行职务的，由副董事长召集和主持；副董事长不能履行职务或者不履行职务的，由半数以上董事共同推举一名董事召集和主持。

**第八条　会议通知**

召开董事会定期会议和临时会议，董事会办公室应当分别提前十日和五日将盖有董事会办公室印章的书面会议通知，通过直接送达、传真、电子邮件或者其他方式，提交全体董事和监事以及经理、董事会秘书。非直接送达的，还应当通过电话进行确认并做相应记录。

情况紧急，需要尽快召开董事会临时会议的，可以随时通过电话或者其他口头方式发出会议通知，但召集人应当在会议上作出说明。

**第九条　会议通知的内容**

书面会议通知应当至少包括以下内容：

（一）会议的时间、地点；

（二）会议的召开方式；

（三）拟审议的事项（会议提案）；

（四）会议召集人和主持人、临时会议的提议人及其书面提议；

（五）董事表决所必需的会议材料；

（六）董事应当亲自出席或者委托其他董事代为出席会议的要求；

（七）联系人和联系方式。

口头会议通知至少应包括上述第（一）、（二）项内容，以及情况紧急需要尽快召开董事会临时会议的说明。

**第十条　会议通知的送达时间：**

（一）直接送达时，以面交收件人或收件人委托的代收人签收的时间为送达时间；

（二）以传真方式送达时，以发出传真的时间为送达时间，但传真号码应经收件人确认；

（三）以电子邮件方式送达时，以发出的时间为送达时间，但电子邮箱应经收件人确认。

因意外遗漏未向某有权得到通知的人送出会议通知或者该等人没有收到会议通知，会议及会议作出的决议并不因此无效。

**第十一条　会议通知的变更**

董事会定期会议的书面会议通知发出后，如果需要变更会议的时间、地点等事项或者增加、变更、取消会议提案的，应当在原定会议召开日之前三日发出书面变更通知，说明情况和新提案的有关内容及相关材料。不足三日的，会议日期应当相应顺延或者取得全体与会董事的认可后按期召开。

董事会临时会议的会议通知发出后，如果需要变更会议的时间、地点等事项或者增加、变更、取消会议提案的，应当事先取得全体与会董事的认可并做好相应记录。

**第十二条　会议的召开**

董事会会议应当有过半数的董事出席方可举行。有关董事拒不出席或者怠于出席会议导致无法满足会议召开的最低人数要求时，董事长和董事会秘书应当及时向监管部门报告。

监事可以列席董事会会议；经理和董事会秘书未兼任董事的，应当列席董事会会议。会议主持人认为有必要的，可以通知其他有关人员列席董事会会议。

**第十三条　亲自出席和委托出席**

董事原则上应当亲自出席董事会会议。因故不能出席会议的，应当事先审阅会议材料，形成明确的意见，书面委托其他董事代为出席。

委托书应当载明：

（一）委托人和受托人的姓名；

（二）委托人对每项提案的简要意见；

（三）委托人的授权范围和对提案表决意向的指示；

（四）委托人的签字、日期等。

委托其他董事对定期报告代为签署书面确认意见的，应当在委托书中进行专门授权。

受托董事应当向会议主持人提交书面委托书，在会议签到簿上说明受托出席的情况。

**第十四条　关于委托出席的限制**

委托和受托出席董事会会议应当遵循以下原则：

（一）在审议关联交易事项时，非关联董事不得委托关联董事代为出席；关联董事也不得接受非关联董事的委托；

（二）独立董事不得委托非独立董事代为出席，非独立董事也不得接受独立董事的委托；

（三）董事不得在未说明其本人对提案的个人意见和表决意向的情况下全权委托其他董事代为出席，有关董事也不得接受全权委托和授权不明确的委托。

（四）一名董事不得接受超过两名董事的委托，董事也不得委托已经接受两名其他董事委托的董事代为出席。

**第十五条　会议召开方式**

董事会会议以现场召开为原则。必要时，在保障董事充分表达意见的前提下，经召集人（主持人）、提议人同意，也可以通过视频、电话、传真或者电子邮件表决等方式召开。董事会会议也可以采取现场与其他方式同时进行的方式召开。

非以现场方式召开的，以视频显示在场的董事、在电话会议中发表意见的董事、规定期限内实际收到传真或者电子邮件等有效表决票，或者董事事后提交的曾参加会议的书面确认函等计算出席会议的董事人数。

**第十六条　会议审议程序**

会议主持人应当提请出席董事会会议的董事对各项提案发表明确的意见。

对于根据规定需要独立董事事前认可的提案，会议主持人应当在讨论有关提案前，指定一名独立董事宣读独立董事达成的书面认可意见。

董事阻碍会议正常进行或者影响其他董事发言的，会议主持人应当及时制止。

除征得全体与会董事的一致同意外，董事会会议不得就未包括在会议通知中的提案进行表决。董事接受其他董事委托代为出席董事会会议的，不得代表其他董事对未包括在会议通知中的提案进行表决。

**第十七条　发表意见**

董事应当认真阅读有关会议材料，在充分了解情况的基础上独立、审慎地发表意见。

董事可以在会前向董事会办公室、会议召集人、经理和其他高级管理人员、各专门委员会、会计师事务所和律师事务所等有关人员和机构了解决策所需要的信息，也可以在会议进行中向主持人建议请上述人员和机构代表与会解释有关情况。

**第十八条   会议表决**

每项提案经过充分讨论后，主持人应当适时提请与会董事进行表决。

会议表决实行一人一票，以记名和书面等方式进行。

经会议主持人决定，也可采用举手表决方式进行表决。

董事的表决意向分为同意、反对和弃权。与会董事应当从上述意向中选择其一，未做选择或者同时选择两个以上意向的，会议主持人应当要求有关董事重新选择，拒不选择的，视为弃权；中途离开会场未进行表决的，视为弃权。

**第十九条   表决结果的统计**

与会董事表决完成后，证券事务代表和董事会办公室有关工作人员应当及时收集董事的表决票，交董事会秘书在一名监事或者独立董事的监督下进行统计。

采用举手方式进行表决时，由董事会秘书当场统计表决结果并予以宣布。

现场召开会议的，会议主持人应当当场宣布统计结果；其他情况下，会议主持人应当要求董事会秘书在规定的表决时限结束后下一工作日之前，通知董事表决结果。

董事在会议主持人宣布表决结果后或者规定的表决时限结束后进行表决的，其表决情况不予统计。

**第二十条   决议的形成**

除本规则第二十一条规定的情形外，董事会审议通过会议提案并形成相关决议，必须有超过公司全体董事人数之半数的董事对该提案投赞成票。法律、行政法规和本公司《公司章程》规定董事会形成决议应当取得更多董事同意的，从其规定。

董事会根据本公司《公司章程》的规定，在其权限范围内对担保事项作出决议，除公司全体董事过半数同意外，还必须经出席会议的三分之二以上董事的同意。

不同决议在内容和含义上出现矛盾的，以形成时间在后的决议为准。

**第二十一条   回避表决**

出现下述情形的，董事应当对有关提案回避表决：

（一）《上海证券交易所股票上市规则》规定董事应当回避的情形；

（二）董事本人认为应当回避的情形；

（三）本公司《公司章程》规定的因董事与会议提案所涉及的企业有关联关系而须回避的其他情形。

在董事回避表决的情况下，有关董事会会议由过半数的无关联关系董事出席即可举行，形成决议须经无关联关系董事过半数通过。出席会议的无关联关系董事人数不足三人的，不得对有关提案进行表决，而应当将该事项提交股东大会审议。

**第二十二条   不得越权**

董事会应当严格按照股东大会和本公司《公司章程》的授权行事，不得越权形成决议。

**第二十三条   关于利润分配的特别规定**

董事会会议需要就公司利润分配事宜作出决议的，可以先将拟提交董事会审议的分配预案通知注册会计师，并要求其据此出具审计报告草案（除涉及分配之外的其他财务数据均已确定）。董事会作出分配的决议后，应当要求注册会计师出具正式的审计报告，董事会再根

据注册会计师出具的正式审计报告对定期报告的其他相关事项作出决议。

**第二十四条　提案未获通过的处理**

提案未获通过的，在有关条件和因素未发生重大变化的情况下，董事会会议在一个月内不应当再审议内容相同的提案。

**第二十五条　暂缓表决**

二分之一以上的与会董事或两名以上独立董事认为提案不明确、不具体，或者因会议材料不充分等其他事由导致其无法对有关事项作出判断时，会议主持人应当要求会议对该议题进行暂缓表决。

提议暂缓表决的董事应当对提案再次提交审议应满足的条件提出明确要求。

**第二十六条　会议录音**

现场召开和以视频、电话等方式召开的董事会会议，可以视需要进行全程录音。

**第二十七条　会议记录**

董事会秘书应当安排董事会办公室工作人员对董事会会议做好记录。会议记录应当包括以下内容：

（一）会议届次和召开的时间、地点、方式；

（二）会议通知的发出情况；

（三）会议召集人和主持人；

（四）董事亲自出席和受托出席的情况；

（五）会议审议的提案、每位董事对有关事项的发言要点和主要意见、对提案的表决意向；

（六）每项提案的表决方式和表决结果（说明具体的同意、反对、弃权票数）；

（七）与会董事认为应当记载的其他事项。

**第二十八条　会议纪要和决议记录**

除会议记录外，董事会秘书还可以视需要安排董事会办公室工作人员对会议召开情况作成简明扼要的会议纪要，根据统计的表决结果就会议所形成的决议制作单独的决议记录。

**第二十九条　董事签字**

与会董事应当代表其本人和委托其代为出席会议的董事对会议记录和决议记录进行签字确认。董事对会议记录或者决议记录有不同意见的，可以在签字时作出书面说明。必要时，应当及时向监管部门报告，也可以发表公开声明。

董事既不按前款规定进行签字确认，又不对其不同意见作出书面说明或者向监管部门报告、发表公开声明的，视为完全同意会议记录、和决议记录的内容。

**第三十条　决议公告**

董事会决议公告事宜，由董事会秘书根据《上海证券交易所股票上市规则》的有关规定办理。

**第三十一条　保密制度**

出席和列席董事会会议的人员及相关工作人员对于会议内容负有保密义务。任何人不得利用会议内幕信息为自己或他人谋取利益。

非经董事长批准，出席会议的董事及列席人员不得将会议提供的非正式文件、资料带离会场。

除公司董事、监事、公司聘请的会计师和律师之外，其他人士非经董事会授权或董事长

批准，不得查阅董事会会议记录。

董事及列席人员有责任认真保管其所持有的会议文件、资料，如有遗失，应及时报告董事长及董事会秘书。

董事会文件由董事会秘书妥善保存。

董事会秘书离任时，在公司监事会的监督下向指定人员移交其保管的公司档案、文件、资料。

非经董事会批准，出席会议的董事及列席人员不得对会议情况录音、录像。

董事会会议召开情况及决议，由董事会秘书根据相关规定予以披露。除非董事长授权或该次会议信息已经公开，出席会议的董事及列席人员不得以任何形式公开会议信息。

董事会秘书负责董事会信息保密工作。当董事会会议信息泄露时，董事会秘书应当及时采取补救措施。

### 第三十二条　决议的执行

董事长应当督促有关人员落实董事会决议，检查决议的实施情况，并在以后的董事会会议上通报已经形成的决议的执行情况。

### 第三十三条　会议档案的保存

董事会会议档案，包括会议通知和会议材料、会议签到簿、董事代为出席的授权委托书、会议录音资料、表决票、经与会董事签字确认的会议记录、会议纪要、决议记录、决议公告等，由董事会秘书负责保存。

董事会会议档案的保存期限为十年以上。

### 第三十四条　附则

在本规则中，"以上"包括本数。

本规则由董事会制订报股东大会批准后生效，修改时亦同。

本规则由董事会解释。

# 彩虹显示器件股份有限公司
# 监事会议事规则

**第一条　宗旨**

为了进一步规范彩虹显示器件股份有限公司（以下简称"公司"）监事会的议事方式和表决程序，促使监事和监事会有效地履行监督职责，完善公司法人治理结构，根据《公司法》、《证券法》、《上市公司治理准则》、《上海证券交易所股票上市规则》、中国证监会发布的一系列规范性文件及《公司章程》，制订本规则。

**第二条　监事会办公室**

监事会可以设监事会办公室，处理监事会日常事务。

监事会主席兼任监事会办公室负责人，保管监事会印章。监事会主席可以要求公司证券事务代表或者其他人员协助其处理监事会日常事务。

**第三条　监事会定期会议和临时会议**

监事会会议分为定期会议和临时会议。

监事会定期会议应当每隔六个月召开一次。出现下列情况之一的，监事会应当在十日内召开临时会议：

（一）任何监事提议召开时；

（二）股东大会、董事会会议通过了违反法律、法规、规章、监管部门的各种规定和要求、公司章程、公司股东大会决议和其他有关规定的决议时；

（三）董事和高级管理人员的不当行为可能给公司造成重大损害或者在市场中造成恶劣影响时；

（四）公司、董事、监事、高级管理人员被股东提起诉讼时；

（五）公司、董事、监事、高级管理人员受到证券监管部门处罚或者被上海证券交易所公开谴责时；

（六）证券监管部门要求召开时；

（七）本《公司章程》规定的其他情形。

**第四条　定期会议的提案**

在发出召开监事会定期会议的通知之前，监事会办公室应当向全体监事征集会议提案，并至少用两天的时间向公司员工征求意见。在征集提案和征求意见时，监事会办公室应当说明监事会重在对公司规范运作和董事、高级管理人员职务行为的监督而非公司经营管理的决策。

**第五条　临时会议的提议程序**

监事提议召开监事会临时会议的，应当通过监事会办公室或者直接向监事会主席提交经提议监事签字的书面提议。书面提议中应当载明下列事项：

（一）提议监事的姓名；

（二）提议理由或者提议所基于的客观事由；

（三）提议会议召开的时间或者时限、地点和方式；

（四）明确和具体的提案；

（五）提议监事的联系方式和提议日期等。

在监事会办公室或者监事会主席收到监事的书面提议后三日内，监事会办公室应当发出召开监事会临时会议的通知。

监事会办公室怠于发出会议通知的，提议监事应当及时向监管部门报告。

**第六条 会议的召集和主持**

监事会会议由监事会主席召集和主持；监事会主席不能履行职务或者不履行职务的，由半数以上监事共同推举一名监事召集和主持。

**第七条 会议通知**

召开监事会定期会议和临时会议，监事会办公室应当分别提前十日和五日将盖有监事会印章的书面会议通知，通过直接送达、传真、电子邮件或者其他方式，提交全体监事。非直接送达的，还应当通过电话进行确认并做相应记录。

情况紧急，需要尽快召开监事会临时会议的，可以随时通过口头或者电话等方式发出会议通知，但召集人应当在会议上作出说明。

**第八条 会议通知的内容**

书面会议通知应当至少包括以下内容：

（一）会议的时间、地点；

（二）拟审议的事项（会议提案）；

（三）会议召集人和主持人、临时会议的提议人及其书面提议；

（四）监事表决所必需的会议材料；

（五）监事应当亲自出席会议的要求；

（六）联系人和联系方式。

口头会议通知至少应包括上述第（一）、（二）项内容，以及情况紧急需要尽快召开监事会临时会议的说明。

**第九条 会议通知的送达时间：**

（一）直接送达时，以面交收件人或收件人委托的代收人签收的时间为送达时间；

（二）以传真方式送达时，以发出传真的时间为送达时间，但传真号码应经收件人确认；

（三）以电子邮件方式送达时，以发出的时间为送达时间，但电子邮箱应经收件人确认。

因意外遗漏未向某有权得到通知的人送出会议通知或者该等人没有收到会议通知，会议及会议作出的决议并不因此无效。

**第十条 会议召开方式**

监事会会议应当以现场方式召开。

紧急情况下，监事会会议可以通讯方式进行表决，但监事会召集人（会议主持人）应当向与会监事说明具体的紧急情况。在通讯表决时，监事应当将其对审议事项的书面意见和投票意向在签字确认后传真至监事会办公室。监事不应当只写明投票意见而不表达其书面意见或者投票理由。

**第十一条 会议的召开**

监事会会议应当有过半数的监事出席方可举行。相关监事拒不出席或者怠于出席会议导致无法满足会议召开的最低人数要求的，其他监事应当及时向监管部门报告。

董事会秘书和证券事务代表应当列席监事会会议。

**第十二条 会议审议程序**

会议主持人应当提请与会监事对各项提案发表明确的意见。

会议主持人应当根据监事的提议，要求董事、高级管理人员、公司其他员工或者相关中介机构业务人员到会接受质询。

**第十三条 监事会决议**

监事会会议的表决实行一人一票，以记名和书面等方式进行。

经会议主持人决定，也可采用举手表决方式进行表决。

彩虹显示器件股份有限公司章程

监事的表决意向分为同意、反对和弃权。与会监事应当从上述意向中选择其一，未做选择或者同时选择两个以上意向的，会议主持人应当要求该监事重新选择，拒不选择的，视为弃权；中途离开会场未进行表决的，视为弃权。

监事会形成决议应当全体监事过半数同意。

**第十四条　会议录音**

召开监事会会议，可以视需要进行全程录音。

**第十五条　会议记录**

监事会办公室工作人员应当对现场会议做好记录。会议记录应当包括以下内容：

（一）会议届次和召开的时间、地点、方式；

（二）会议通知的发出情况；

（三）会议召集人和主持人；

（四）会议出席情况；

（五）会议审议的提案、每位监事对有关事项的发言要点和主要意见、对提案的表决意向；

（六）每项提案的表决方式和表决结果（说明具体的同意、反对、弃权票数）；

（七）与会监事认为应当记载的其他事项。

对于通讯方式召开的监事会会议，监事会办公室应当参照上述规定，整理会议记录。

**第十六条　监事签字**

与会监事应当对会议记录进行签字确认。监事对会议记录有不同意见的，可以在签字时作出书面说明。必要时，应当及时向监管部门报告，也可以发表公开声明。

监事既不按前款规定进行签字确认，又不对其不同意见作出书面说明或者向监管部门报告、发表公开声明的，视为完全同意会议记录的内容。

**第十七条　决议公告**

监事会决议公告事宜，由董事会秘书根据《上海证券交易所股票上市规则》的有关规定办理。

**第十八条　决议的执行**

监事应当督促有关人员落实监事会决议。监事会主席应当在以后的监事会会议上通报已经形成的决议的执行情况。

**第十九条　会议档案的保存**

监事会会议档案，包括会议通知和会议材料、会议签到簿、会议录音资料、表决票、经与会监事签字确认的会议记录、决议公告等，由监事会主席指定专人负责保管。

监事会会议资料的保存期限为十年以上。

**第二十条　附则**

本规则未尽事宜，参照本公司《董事会议事规则》有关规定执行。

在本规则中，"以上"包括本数。

本规则由监事会制订报股东大会批准后生效，修改时亦同。

本规则由监事会解释。

# EXHIBIT 7

*Hong Kong Exchanges and Clearing Limited and The Stock Exchange of Hong Kong Limited take no responsibility for the contents of this announcement, make no representation as to its accuracy or completeness and expressly disclaim any liability whatsoever for any loss howsoever arising from or in reliance upon the whole or any part of the contents of this announcement.*



# 彩 虹 集 團 電 子 股 份 有 限 公 司

# IRICO GROUP ELECTRONICS COMPANY LIMITED*

*(A joint stock company incorporated in the People's Republic of China with limited liability)*

(Stock Code: 0438)

# ANNUAL RESULTS OF IRICO DISPLAY DEVICES CO., LTD., A SUBSIDIARY OF IRICO GROUP ELECTRONICS COMPANY LIMITED, FOR THE YEAR ENDED 31 DECEMBER 2009

This announcement is made pursuant to Rule 13.09(1) of the Rules Governing the Listing of Securities on The Stock Exchange of Hong Kong Limited.

IRICO Display Devices Co., Ltd. ("A Share Company"), a subsidiary of IRICO Group Electronics Company Limited*, with its A shares listed on the Shanghai Stock Exchange, published the announcement on the annual report for the year ended 31 December 2009 on the website of the Shanghai Stock Exchange (http://www.sse.com.cn) on 26 February 2010. Highlights of the audited consolidated results for the twelve months ended 31 December 2009 and a summary of the management discussion and analysis in respect of A Share Company are set out below.

The audited financial statements for 2009 in respect of A Share Company were prepared in accordance with the accounting principles of the People's Republic of China.

## A.   HIGHLIGHTS OF THE RESULTS OF A SHARE COMPANY

The annual report in respect of A Share Company has been audited by ShineWing Certified Public Accountants Limited, certified public accountants, who also issued the standard unqualified auditors' report.

## CONSOLIDATED BALANCE SHEET
*31 December 2009*

Prepared by: IRICO Display Devices Co., Ltd.

*Unit: Yuan Currency: RMB*

| Items | Balance at the end of the period | Balance at the beginning of the year |
|---|---|---|
| **Current assets:** | | |
| Cash and bank balances | **946,606,086.72** | 331,380,812.82 |
| Balances with clearing companies | | |
| Placements with banks and other financial institutions | | |
| Held-for-trading financial assets | | |
| Notes receivable | **336,764,675.89** | 296,247,485.54 |
| Accounts receivable | **254,619,443.80** | 275,050,269.41 |
| Prepayments | **98,669,167.30** | 8,124,556.94 |
| Premiums receivable | | |
| Reinsurance accounts receivable | | |
| Reinsurance policy reserve receivable | | |
| Interest receivable | | |
| Dividend receivable | | |
| Other receivables | **17,985,853.18** | 28,601,747.89 |
| Financial assets purchased under agreements to resell | | |
| Inventories | **154,646,420.99** | 308,198,891.86 |
| Non-current assets due within one year | | |
| Other current assets | | |
| **Total current assets** | **1,809,291,647.88** | 1,247,603,764.46 |

— 2 —

**Non-current assets:**

| | | |
|---|---:|---:|
| Loans and advances | | |
| Available-for-sale financial assets | | |
| Held-to-maturity investments | | |
| Long-term receivables | | |
| Long-term equity investments | **24,060,000.00** | 24,060,000.00 |
| Investment properties | **5,373,775.15** | 5,642,887.15 |
| Fixed assets | **313,716,181.33** | 865,465,986.95 |
| Construction in progress | **923,498,103.49** | 815,414,671.88 |
| Construction materials | **28,387,692.31** | 0.00 |
| Disposal of fixed assets | | |
| Biological assets for production | | |
| Fuel assets | | |
| Intangible assets | **145,894,176.32** | 30,906,697.40 |
| Development expenses | | |
| Goodwill | | |
| Long-term deferred expenses | | 979,999.98 |
| Deferred income tax assets | | |
| Other non-current assets | | |
| Total non-current assets | **1,440,929,928.60** | 1,742,470,243.36 |
| | | |
| **Total assets** | **3,250,221,576.48** | 2,990,074,007.82 |

**Current liabilities:**

| | | |
|---|---:|---:|
| Short-term borrowings | **706,000,000.00** | 240,000,000.00 |
| Loans from central bank | | |
| Deposit taking and deposit in inter-bank market | | |
| Placements from banks and other financial institutions | | |
| Held-for-trading financial liabilities | | |
| Notes payable | | |
| Accounts payable | **321,522,739.16** | 290,312,335.66 |
| Advance receipts | **11,142,381.25** | 2,074,381.91 |
| Disposal of repurchased financial assets | | |
| Handling charges and commission payable | | |
| Staff remuneration payable | **20,040,851.09** | 24,336,664.18 |
| Taxes payable | **-64,755,060.55** | -11,687,862.75 |
| Interest payable | **1,029,737.50** | 0 |
| Dividend payable | **3,438,520.00** | 3,438,520.00 |
| Other payables | **246,045,879.89** | 153,083,716.54 |
| Reinsurance accounts payable | | |
| Reserve for insurance policies | | |
| Customer deposits for trading in securities | | |
| Customer deposits for underwriting | | |
| Non-current liabilities due within one year | **95,000,000.00** | |
| Other current liabilities | | |
| **Total current liabilities** | **1,339,465,048.34** | 701,557,755.54 |

**Non-current liabilities:**

| | | |
|---|---:|---:|
| Long-term borrowings | **573,502,400.00** | 318,707,200.00 |
| Debentures payable | | |
| Long-term payable | **50,000,000.00** | |
| Specific payables | **24,000.00** | |
| Estimated liabilities | **7,051,536.32** | 8,552,104.62 |
| Deferred income tax liabilities | | |
| Other non-current liabilities | **104,800,570.05** | 19,840,000.00 |
| Total non-current liabilities | **735,378,506.37** | 347,099,304.62 |
| | | |
| **Total liabilities** | **2,074,843,554.71** | 1,048,657,060.16 |

**Owners' equity (or shareholders' equity):**

| | | |
|---|---:|---:|
| Paid-up capital (or share capital) | **421,148,800.00** | 421,148,800.00 |
| Capital reserve | **686,095,368.27** | 961,848,016.84 |
| Less: Treasury share | | |
| Specific reserve | | |
| Surplus reserve | **230,140,908.12** | 230,140,908.12 |
| General risk provision | | |
| Undistributed profit | **-619,607,936.59** | 95,624,205.45 |
| Currency translation differences | | |
| Total owners' equity attributable to equity holders of the parent company | **717,777,139.80** | 1,708,761,930.41 |
| Minority interests | **457,600,881.97** | 232,655,017.25 |
| Total owners' equity | **1,175,378,021.77** | 1,941,416,947.66 |
| | | |
| **Total liabilities and owners' equity** | **3,250,221,576.48** | 2,990,074,007.82 |

|  |  | Manager of |
|---|---|---|
| *Legal representative:* | *Principal responsible accounting person:* | *the Accounting Department:* |
| **Xing Daoqin** | **Jiang Ahe** | **Qiu Dongfeng** |

## CONSOLIDATED INCOME STATEMENT

*January to December 2009*

*Unit: Yuan Currency: RMB*

| Items | Amount for the period | Amount for the previous period |
|---|---|---|
| **I.** **Total revenue from operations** | **1,310,043,214.69** | 3,025,140,961.79 |
|    Including:  Operating revenue | **1,310,043,214.69** | 3,025,140,961.79 |
|              Interest income | | |
|              Premium earned | | |
|              Handling charges and commission income | | |
| **II.** **Total cost from operations** | **2,034,787,540.84** | 3,006,640,502.04 |
|    Including:  Operating cost | **1,298,376,768.79** | 2,674,809,301.97 |
|              Interest expenses | | |
|              Handling charges and commission expenses | | |
|              Surrender payment | | |
|              Net expenditure for compensation payments | | |
|              Net provision for insurance deposits | | |
|              Policyholder dividend expenses | | |
|              Reinsurance costs | | |
|              Business tax and surcharges | **4,761,578.05** | 8,350,146.36 |
|              Sale expenses | **75,732,690.29** | 152,130,521.49 |
|              Administrative expenses | **130,639,570.47** | 98,193,816.26 |
|              Financial expenses | **20,123,743.16** | 39,867,705.74 |
|              Impairment losses on assets | **505,153,190.08** | 33,289,010.22 |
|    Add:  Gains from changes in fair value | | |
|          (losses are represented by "-" ) | | |
|          Investment income (losses are represented by "-") | | 4,509,798.70 |
|          Including:  Gains from investment in | | |
|                   associates and joint ventures | | |
|          Gains from foreign currencies exchange | | |
|          (losses are represented by "-") | | |
| **III.** **Operating profit (losses are represented by "-")** | **-724,744,326.15** | 23,010,258.45 |
|    Add:  Non-operating income | **1,845,198.30** | 48,746.81 |
|    Less:  Non-operating expenses | **1,265,793.92** | 185,524.35 |
|          Including:  Loss from disposal of non-current assets | **1,215,675.14** | 64,902.32 |

| | | | |
|---|---|---|---|
| **IV.** | **Total profit (total losses are represented by "-")** | **-724,164,921.77** | 22,873,480.91 |
| | Less:     Income tax expenses | **75,930.78** | 72,201.22 |
| **V.** | **Net profit (net losses are represented by "-")** | **-724,240,852.55** | 22,801,279.69 |
| | Net profit attributable to owners of the parent company | **-715,232,142.04** | 26,495,103.50 |
| | Minority interests | **-9,008,710.51** | -3,693,823.81 |
| **VI.** | **Earnings per share:** | | |
| | (1)     Basic earnings per share | **-1.70** | 0.06 |
| | (2)     Diluted earnings per share | **-1.70** | 0.06 |
| **VII.** | **Other comprehensive income** | | |
| **VIII.** | **Total comprehensive income** | **-724,240,852.55** | 22,801,279.69 |
| | Total comprehensive income attributable to owners of the parent company | **-715,232,142.04** | 26,495,103.50 |
| | Total comprehensive income attributable to minority interests | **-9,008,710.51** | -3,693,823.81 |

The net profit realized by the acquiree prior to its merger with the Company, which turned it into a jointly controlled entity of the Company, was RMB -12,434,458.42 during the period.

|  |  | *Manager of* |
|---|---|---|
| *Legal representative:* | *Principal responsible accounting person:* | *the Accounting Department:* |
| **Xing Daoqin** | **Jiang Ahe** | **Qiu Dongfeng** |

## B.  SUMMARY OF MANAGEMENT DISCUSSION AND ANALYSIS OF A SHARE COMPANY

### 1.  Overall Operation during the Reporting Period

A Share Company is principally engaged in the production, development and operation of display devices. In 2009, the contraction of the cathode ray tube ("CRT") industry worsened due to the dual impact of the global financial crisis and new flat panel display devices, which posed enormous challenges to A Share Company's production and operation. In light of such difficulties, A Share Company successfully increased its market share and competitiveness by a series of measures. On one hand, on the principle of seizing market opportunities and "achieving steadfast growth by adjustment and optimization", A Share Company focused on market expansion by minimizing its overall cost and upgrading its technology. On the other hand, equipment management was reinforced to ensure sufficient equipment is available. Besides, it enhanced capital management, controlled risks and achieved the target of "zero" incident through improved safety management. Furthermore, the operating efficiency of A Share Company was improved through management optimization.

In 2009, A Share Company manufactured a total of 7.575 million colour picture tubes ("CPTs"), representing a decrease of 49.70% from the corresponding period last year, and sold 8.27 million CPTs, representing a decrease of 42.65% from the corresponding period last year. Revenue from principal operations for 2009 was RMB1,303,671,500, representing a decrease of 56.74% from the same period last year. During the reporting period, due to the continuing contraction in the CRT industry, the utilization rate of A Share Company's CPT production lines declined significantly. As such, A Share Company made a provision for fixed assets impairment of its CPT production equipment, which led to a significant year-on-year decrease in its total profit.

Encountering challenges arising from the shrinking CPT market, A Share Company retained its major clients by adopting an early-bird strategy on one hand and bolstered sales performance by opening up new accounts in small and medium sized and overseas markets, thereby effectively enlarged its market share on the other. With a 38.1% domestic market share and 17.3% international market share for the year 2009, A Share Company ranked first in China and second in the world in terms of market presence and grew on a steady course.

During the reporting period, A Share Company took various proactive measures which ensured the effectiveness of the operation of its CRT business and geared up the new business transformation. A Share Company stepped up investments in new projects which had promising prospects and were in line with the industry trends in a long run. The capital increase and the acquisition of the controlling interest in Shaanxi IRICO Electronics Glass Company Limited（陝西彩虹電子玻璃有限公司）("IRICO Glass"), the first glass substrate producer in China which possesses various patent technologies, laid down solid foundations for A Share Company's expansion into the thin film transistor liquid crystal display ("TFT-LCD") glass substrate business in the flat panel display device arena. At the end of the reporting period, A Share Company had, at a preliminary stage, established a brand-new business framework based on liquid crystal glass substrate, CPT and organic light emitting diode ("OLED") operations.

2.  **Future Prospects**

(1)  **Development Trend of the Industry and the Market Competition Landscape**

Driven by spending stimulus packages such as the "Promotion of Household Appliances towards Rural Areas", the production and sales of domestic flat panel display devices witnessed rapid growth in 2009. According to a report issued by market research institutes, the output of LCD televisions is expected to increase to 107 million sets by 2010, representing an increase of more than 20% as compared with 2009. The CPT television market will still be susceptible to the risk of depressed demand, but from a global perspective, certain opportunities will continue to arise from events such as the South Africa World Cup 2010 and the economic upturn in most developing countries which will bring considerable opportunities for exports of China's CPT and CPT televisions.

(2)   **Development Opportunities and Challenges Ahead for A Share Company**

Looking forward into 2010, A Share Company will aspire to increase the market share and secure a stable sales performance of CRT colour televisions in developing countries and regions by virtue of outstanding performance, a complete industry chain and low prices. Meanwhile, A Share Company will stay in line with the rapid development trend of flat panel display devices. The capital injection into IRICO Glass in 2009 will speed up its scale production of TFT-LCD glass substrates and increase the construction speed of new projects. The glass substrate projects will facilitate A Share Company's business transformation, which will lead to a scaling-down of the conventional CPT business on a relative scale and a gradual shift of focus to the promising market prospects and more profitable glass substrate business.

By order of the board of directors
**IRICO Group Electronics Company Limited***
**Xing Daoqin**
*Chairman*

Shaanxi Province, the PRC
26 February 2010

*As at the date of this announcement, the board of directors consists of Mr. Xing Daoqin, Mr. Tao Kui and Mr. Zhang Junhua as executive directors, Mr. Guo Mengquan, Mr. Niu Xinan, Mr. Fu Jiuquan and Mr. Zhang Weichuan as non-executive directors, and Mr. Xu Xinzhong, Mr. Feng Bing, Mr. Wang Jialu, Mr. Lv Hua and Mr. Zhong Pengrong as independent non-executive directors.*

\*   *For identification purposes only*

— 10 —

# EXHIBIT 8



STATE of NEW YORK        )
                         )           ss:
COUNTY of NEW YORK       )

### *CERTIFICATE OF ACCURACY*

This is to certify that the attached document, *IDD Dividend History from SSE*, originally written in *Chinese,* is to the best of our knowledge and belief, a true, accurate and complete translation into *English.*

Dated: December 6, 2017

*Allison Carey*
Allison Carey
Consortra Translations

Sworn to and signed before ME this
_6th_ day of _December_,
2017.

Notary Public

JAMES G. MAMERA
Notary Public- State of New York
No. 01MA6157195
Qualified In New York County
My Commission Expires December 4, 2018

Your
legal
translation
partner

# Profit Distribution

Stock List

Stock

IPO Stock To Be Listed

Suspended/Terminated Listed
Companies

扫一扫下载
"上交所移动App"

## IRICO Display Devices Co., Ltd. 600707

Company Summary (/assortment/stock/list/info/company/index.shtml?COMPANY_CODE=600707)   Capital Structure (/assortment/stock/list/in

### Dividend

#### A Shares IRICO Stock (600707)

*Unit: Yuan RMB

| Record date | Record date total share capital (10K shares) | Ex-dividend date | Closing price day before ex-dividend date | Ex-dividend price | Dividend per share | |
|---|---|---|---|---|---|---|
| | | | | | Tax incl. | Tax excl. |
| 2005-07-18 | 42114.88 | 2005-07-19 | 2.5 | 2.45 | 0.3 | 0.27 |
| 2004-07-06 | 42114.88 | 2004-07-07 | 8.29 | 8.3 | 0.1 | 0.08 |
| 2002-08-16 | 42114.88 | 2002-08-19 | 8.39 | 8.35 | 0.169 | 0.14 |
| 2001-05-16 | 42114.88 | 2001-05-17 | 11.84 | 11.92 | 0.12 | 0.10 |
| 1997-08-07 | 36000 | 1997-08-08 | 14.7 | 15 | 0.3 | - |

### Stock Dividend

#### A Shares IRICO Stock (600707) Stock Dividend

| Record date | Record date total share capital (10K shares) | Stock base date | Bonus shares listed date | Publication Date | Stock dividend ratio (10:?) |
|---|---|---|---|---|---|
| 1996-07-02 | - | 1996-07-03 | 1996-07-03 | - | 2 |

# 利润分配

股票列表

股票

首次发行待上市股票

暂停/终止上市公司



扫一扫下载
"上交所移动App"

## 彩虹显示器件股份有限公司600707

公司概况 (/assortment/stock/list/info/company/index.shtml?COMPANY_CODE=600707)　　股本结构 (/assortment/stock/list/in

### 分红

A股 彩虹股份(600707)

*单位:元人民币

| 股权登记日 | 股权登记日总股本(万股) | 除息交易日 | 除息前日收盘价 | 除息报价 | 每股红利 | |
|---|---|---|---|---|---|---|
| | | | | | 含税 | 除税 |
| 2005-07-18 | 42114.88 | 2005-07-19 | 2.5 | 2.45 | 0.3 | 0.27 |
| 2004-07-06 | 42114.88 | 2004-07-07 | 8.29 | 8.3 | 0.1 | 0.08 |
| 2002-08-16 | 42114.88 | 2002-08-19 | 8.39 | 8.35 | 0.169 | 0.14 |
| 2001-05-16 | 42114.88 | 2001-05-17 | 11.84 | 11.92 | 0.12 | 0.10 |
| 1997-08-07 | 36000 | 1997-08-08 | 14.7 | 15 | 0.3 | - |

### 送股

A股 彩虹股份(600707)送股

| 股权登记日 | 股权登记日总股本(万股) | 除权基准日 | 红股上市日 | 公告刊登日 | 送股比例(10:?) |
|---|---|---|---|---|---|
| 1996-07-02 | - | 1996-07-03 | 1996-07-03 | - | 2 |

# EXHIBIT 9



STATE of NEW YORK )
                           )      ss:
COUNTY of NEW YORK )

### ***CERTIFICATE OF ACCURACY***

This is to certify that the attached excerpts from the document, *IDD Share Listing Notice 1996*, originally written in *Chinese,* are to the best of our knowledge and belief, true, accurate and complete translations into *English.*

Dated: December 6, 2017

*Allison Carey*
Allison Carey
Consortra Translations

Sworn to and signed before ME this
6th day of December,
2017.

*[signature]*
Notary Public

JAMES G. MAMERA
Notary Public- State of New York
No. 01MA6157195
Qualified In New York County
My Commission Expires December 4, 2018

Your
legal
translation
partner

Excerpts from:

**IRICO DISPLAY DEVICES CO., LTD. Share Listing Notice.**

**Notice Date 5/20/1996**

Page 5:

IV: Capital Structure and Main Shareholder Holdings.

1.   Capital Formation

In June 1992, the Shaanxi Province Economic System Reform Committee approved Document Shan Gai Fa (1992) No. 34, giving consent to the three parties IRICO Electronics Group Corporation Shaanxi Color Picture Tube Main Factory, China Industrial Bank Shaanxi Province Trust Investment Co., and China People's Construction Bank Shaanxi Province Trust Investment Co., as founders, to form "IRICO Display Devices Co., Ltd." On August 11, 1992, the People's Bank of China Shaanxi Branch approved Document Shan Ying Fu (1992) No. 54, agreeing to solicit 300 million shares, with each share at par value of RMB 1 yuan, and shares offered at RMB 1.5 yuan each. IRICO Electronics Group Corporation Shaanxi Color Picture Tube Main Factory subscribed to 66 million shares, 22% of total capital. China Industrial Bank Shaanxi Province Trust Investment Co. subscribed to 54 million shares, 18% of total capital. China People's Construction Bank Shaanxi Province Trust Investment Co. subscribed to 30 million shares, 10% of total capital. Social corporate entities subscribed to 57.92 million shares, 19.31% of the total. Individuals subscribed to 92.08 million shares, 30.69% of the total.

Page 6:

V. Company Business Results for the First Three Years

1.   Business Situation Summary

The Company's main founder is the IRICO Electronics Group Corporation Shaanxi Color Picture Tube Main Factory, directly subordinate to the Ministry of Electronics Industry. The Group is one of our country's largest, most technologically advanced color picture tube production bases. Since its establishment via subscription in August 1992, based on the investment direction disclosed in the stock explanation document, the Company imported key equipment and advanced technology from Japan's Toshiba Corporation for producing 64cm FS color picture tubes, and built one production line...From the end of 1994 to early 1995, the Company also successfully modified the 64cm color picture tube production line into a multi-product line that could also produce 56cm color picture tubes, successfully integrating two types of technology from Toshiba and Hitachi on the first try. After modification the production could switch production models at any time based on market needs, increasing the Company's capacity to adapt to changes in the market. In 1995 the Company produced 780,000 color picture tubes. Currently, domestic 64cm FS color picture tube production lines use mainly foreign advanced technology: the main suppliers are Shanghai Novotel, Nanjing Huafei, and Guangdong Foshan. Market competition is fierce.

Page 14.

X. Investment Risk and Development Planning

1.   Investment Risk

When evaluating the Company's stock investment value, investors should pay special attention to the following risk factors in addition to information provided by this Share Listing Notice:

(1) Business Risk

Market prospects are good for the Company's currently produced 64cm and 56cm color picture tubes, but our product mix is quite limited and the market is dynamic; this may affect demand for certain products. At the same time, the glass, shadow masks, and other components and raw materials needed for the Company's production are provided by cooperating entities or rely on imports; the ability to provide a steady supply has a large effect on the Company's production and business, bringing certain business risk to the Company.

(2) Sales Market Risk

Although our company has the advantage in the domestic market for medium- and large-screen color picture tubes, there are many domestic producers of color picture tubes; the domestic market's demand for color tubes has exceeded saturation, and market competition grows fiercer by the day.

(3 ) Foreign Exchange Risk

Some materials required by the Company for producing color picture tubes still relies on imports, requiring some foreign exchange expenditures; this brings the company some risk.

(4 ) Technological Risk

The standout features of the electronics industry are high technology content and fast replacement of products. Technological competition is very fierce.

(5 ) Policy Risk

In general, our country's policy to open up to the outside helps our Company in developing further, but at the same time brings the Company internal and external pressures. Especially once China joins the World Trade Organization, tariffs shall lower greatly, the domestic market will open up, and companies will have to face fierce competition from foreign brand products.

Various Sources: Links active as of 12/5/2017

http://q.stock.sohu.com/cn,gg,600707,348934.shtml

http://app.finance.ifeng.com/data/stock/ggzw.php?id=37806&symbol=600707

http://stock.jrj.com.cn/share,disc,1996-05-20,600707,00000000000000nv7t.shtml

# 彩虹股份(600707)公告正文

## 彩虹显示器件股份有限公司股票上市公告书

### 公告日期 1996-05-20
彩虹显示器件股份有限公司股票上市公告书

一、绪言

本公司股票上市申请经中国证券监督管理委员会证监发审字(1996)    25 号文批准和经上海证券交易所上证上(1996)字第(024)号文审核批准,于 1996 年 5 月 20  日在上海证券交易所挂牌交易.

本公司上市公告书依据《公司法》、《股票发行与交易管理暂行条例》的规定,  并参照国际惯例编制.本公司上市公告书在于说明公司股票上市的目的,并向社会公众披露公司基本情况及有关资料.  本公司董事会及其成员愿就本公司上市公告书所载资料的真实性、准确性和全面性负个别及连带责任.  本上市公告书的内容由本公司董事会负责解释.

二、公司概况

1. 公司法定名称:彩虹显示器件股份有限公司

公司英文名称:CAIHONG  DISPLAY  DEVICES  CO.LTD.

英文缩写:CHDD

2. 公司注册地址:西安高新产业开发区西区

邮政编码:710075

公司英文地址:XIAN  SCI,&  TECH  INDUSTRY  ZONE,WEST    ZONE

3. 公司法定代表人:王李广

4. 公司董事、监事及高级管理人员简介

董事长兼总经理:王李广先生,33 岁,大学学历,高级工程师.  曾任陕西彩色显像管总厂总装分厂的前装车间副主任、主任,彩虹显保管二厂副厂长、厂长,彩虹电子集团公司副总经理.持有本公司股票 30000 股.

副董事长:除一三先生,60 岁,高中学历,高级经济师.曾任西安西北财政部、  陕西财政厅会计员、建设银行陕西分行科员,科长、副总经济师、总经济师,曾建设银行陕西省分行副行长,现任该行顾问.持有本公司股票零股.

副董事长:张彼梅先生,60 岁,中专学历,高级经济师.  曾任中国人民银行西安市分行纺织城办事处及土门办革处信贷员、副主任,中国人民银行西安市分行副行长、  中国工商银行西安市分行副行长和中国工商银行陕西省分行副行长,现任该行顾问.持有本公司股票零股.

董事:庞锡珍先生,60 岁,大专学历,高级经济师,   曾任中国人民银行西安市分行信贷科科长,中国银行西安市分行信贷处负责人、  中国人民银行陕西省分行工业信贷处组长,中国银行陕西省分行科长、处长,中国银行陕西省分行副行长.  持有本公司股票零股.

董事:吴维仁先生,47 岁,大学学历,高级会计师,   曾任陕西彩色显像管总厂财务科科长、处长、副总会计师,现任彩虹电子集团公司总裁兼总会计师   ,持有本公司股票 30000 股.

董事:陶凌云先生,51 岁,中专学历,经济师.曾在陕西省吴旗县人民银行、   中国人民银行陕西省分行、中国工商银行陕西省分行工作,  现任中国工商银行陕西省信托投资公司副总经理.持有本公司股票零股.

监事会主席:薛宝明女士,56 岁,大学学历,经济师,   曾住陕西彩色显像管总厂厂办主任,中国电子器材公司西北公司党委书记,陕西彩色显像管总厂副厂长,   彩虹电子集团公司党委副书记,现任彩虹电子集团公司党委书记,持有本公司股票 30000 股.

监事会副主席:王学志先生,45 岁,大学学历  ,曾任陕西彩色显像管总广组织部科员,彩虹电子集团公司彩管一厂前装车间党支部书记,   彩虹电子集团公司彩管二厂党委书记、副厂长.现任彩虹电子集团公司人事教育部部长.持有本公司股票 30000 股.

监事:吴令顺先生,43 岁,大学学历,曾在彩虹电子集团公司彩管二厂工作,   现任本公司工会主席,持有本公司股票 30000 股.

副总经理:陈德智先生,35 岁,大学学历,高级工程师,   曾任彩虹电子集团公司彩管二厂制管科科长,彩管二厂副厂长、厂长.现任本公司副总经理.持有本公司股票 30000 股.

副总经理:侯瑞金先生,36 岁,大学学历,工程师,   曾任彩虹电子集团公司彩管二厂荫罩科副科长、科长.现任本公司副总经理,持有本公司股票 30000 股.

总会计师:张国强先生,31 岁,大学学历,会计师,   曾任彩虹电子集团公司彩管事业部财务处处长助理,本公司副总会计师,现任本公司总会计师,持有本公司股票 30000 股.

公司董事、监事及高级管理人员共持有本公司股票 270000 股,占本公司股本总额的 0.09%,其持有股份按《公司法》规定在任职期内不得转让.

5.公司其他情况

1)所属行业:电子行业

2)成立日期:1992 年 9 月 8 日

营业执照编号:22053302−8

3)在册职工人数(截止 1995 年 12 月 31 日):879 人,其中各类专业技术人员 246 人,   占职工总人敝的 27.99%.

4)公司占地面积 15098.6 平方米,建筑面积 10967.6 平方米.

5)公司咨询服务项目:

股东接待日:每月第三周的星期二上午 8:00−12:00

股东接待及公司文件索阅地址:陕西省咸阳市彩虹路,彩虹显示器件胺份有限公司证券部.

电话:(0910)3313108 转 8011

传真:(0910)3312721

邮政编码:712021.

6)关联企业:控股公司

西安彩虹技术开发有限责任公司

法册资本:27.2 万元人民币

注册地址:西安市和平路 129 号(煤航大厦)

法定代表人:王李广

本公司投资总额为 15.3 万元人民币,占该公司法册资本的 56.25%.

主要经营范围:管理及技术咨询、技术开发

7)资产评估机构:中洲会计师事务所

法定代表人:陶省隅,

注册地址:北京西城区三里河二区一号

邮政编码:100045

联系电话:010−8016002

经办法册会计师:万大择

8)资产评估确认机构:国家国有资产管理局

9)会计师事务所:陕西岳华会计师革各所"

法定代表人:李延成

注册地址:西安在新产业开发区(西医)光华路 A13 号

邮政锦码:710077

联系电话:(029)4251604

经办法册会计师:李延成、刘席儒、戴紫气

10)律师事务所:北京市海问律师事务所

法定代表人:何斐

住所:北京市亚运村北辰东路住总 3 号院

邮政编码:100101

联系电话:(010)　4957040

传真:(010)　4957038

经办律师:赵燕　　佟忠　郭斌

11)公司财务励问:

A、中国诚信证券评估有限公司

法定代表人:毛振华

注册地址:北京市海淀区西苑饭店 5422－5423#

邮政编码:100013

联系电话:(010)　　4276020

B、北京市海问证券投资咨询干务所

法定代表人:绵家乐

住所:北京市亚运村北辰东路住总 4 号院

邮政编码:100101

联系电话:(010)　　4957030

联系人:柴朝明

12)股票上市推荐机构:

华夏证券有限公司.

汪册地址:北京海淀区复兴路 263 号

法定代表人:黄玉骏

邮编:200002

电话:(010)8286876、(0Z1)3239213.

传真:(021)　3239157

陕西省证券公司·

注册地址:西安市解放路 233 号

法定代表人:吴全昌

邮编:710004

电话:(029)7215339

传真:(029)7215339

6.股票发行及上市情况:

*股票种类:普通股

*股票面值:每股人民币 1 元

*股票发行价:每股人民币 1.5 元

*股股票发行起止日期:1992 年 8 月 14 日至 1992 年 8 月 25 日*股票发行对象:中华人民共和国境内自然人(法律、法规禁止购买者除外)股东人数:25486,其中:持有本公司股票 1000 股以上的股东人数为:18477*股票承销机构:公司自办发行

*股票上市推荐机构:华夏证券有限公司

陕西省证券公司

*股票上市时间:1996 年 5 月 20 日

*股票托管登记机构:上海证券中央登记结算公司

*股票上市场所:上海证券交易所

*股票上市代码:600707

*股票简称:彩虹股份

*经营范围:彩色显示器、电子产品及霞部件、原材料,房地产开发　　　　经

*股票简称:彩虹股份

*经营范B:彩色显示器、电子产品R*部件、原材料,房地产开发经营、国内外贸易.旅游业、实物租赁、承办"三来一补"业务等.

*经营方式:技术开发、制造、销售

三、公司组织状况

1.公司沿革

彩虹显示器件股份有限公司是经陕西省经济体制改革委员会陕改发(1992)　　34号文批准,由彩虹电子集团公司陕西彩色显职省总厂、　中国工商银行陕西省信托投资公司、中国人民建设银行陕西省信托投资公司三方共同发起,　以募集方式设立的股份有限公司.公司于1992年9月8日在陕西省咸阳市注册登记正式成立.

本公司以64cmFS彩色显像管生产线为主要项目,　引进日本东芝公司的关键设备和先进技术,自1993年11月开始设备安装,1994年4月份完64cmFS　彩色显像管生产线即已进入试生产阶段,比原计划提前了一个月.1994年12月,公司又成功地将64cmFS　彩色显像管生产线改造成为能够兼容生产56cm彩色显像管的多种生产线,　使东芝、日立两种技术嫁接一次成功.1995年1月12日,生产线正式通过对外合同验收,整个工程比日分计划缩短了六个多月,创造国内外同行业建筑、安装、试生产的新水平.与此同时,公司在资金运筹方面,本着以最低投入产生最效益的原则,　使整个工程项目比概算节约了0.86亿元人民币.目的公司拥有主要生产设备547台,职工879人,　各类专业技术人员246人,形成年产90万只64cmFS,56cm彩色显职管的生产能力.

2.发起人简介:

1)彩虹电子集团公司陕西省彩色显像管总厂

地址:陕西省咸阳市彩虹路

法定代表人:总经理张文义

彩虹电子集团公司陕西省彩色显像管总厂在陕西省工商拧动9理局　　登记注册.注册资金20亿人民币.　彩虹电子集团公司陕西彩色显像管总厂是我国"六五"期间的重点工程.1978年开始筹建,先后从日本的日立、旭硝子、涂料、网版等四家公司引进了37cm、56cm彩色显像管、玻壳、荧光份、平板荫罩制造的关键技术和主要设备,　使该厂成为科研、开发以及年产290万只各类彩色显示器件的支柱企业.

2)中国工商银行陕西省信托投资公司

地址:陕西省西安市尚德路67号

法定代表人:总经理许长庚

该公司是中国工商银行陕西省分行全资附属企业,　经中国人民银行总行批准并颁发银金管字字08−0501号《经营金融业务许可证》,　在陕西省工商行政管理局注册登记,拥有资本金18500万元人民币.具有法人资格,专业经营各项金融信托投资业务.

3)中国人民建设银行陕西省信托投资公司

地址:陕西省西安市环城南路南段29号

法定代表人:总经理温浩

该公司是经中国人民银行批准,由陕西省工商行政管理局挂记注册,核准经营人民币投资业务的全民所有制金融企业.公司往册资本金为人民市5000万元.公司隶属于中国人民建设银行陕西省分行,业务上受中国人民银行陕西省分行的领导、管理、　监督检查和稽核,公司实行独立核算,自主经营,自负盈亏,具有法人资格.

2.公司历次股东大会的简况

①公司创立大会暨第一次股东大会纪要

彩虹显示器件股份有限公司创立大会日第一次股东大会于1992年12月28日在彩虹宾馆举行.出席会议股东15名,代表股份27146万股,占公司总股本的90.5%,　符合法定要求.会议审议并通过了公司章程、公司筹建工作报告、　公司发展规划的报告等仪案,选举产生了公司第一届董事会和监事会,选举张文义先生任公司第一届董事会董事长,薛宝明女士任公司第一届监事会主席.经公司董事会决议,　聘任王李广先生为公司总经理.

②公司第二次股东大会纪要

彩虹显示器件肢份有限公司第二次股东大会于1994年3月　5日在咸阳彩虹宾馆举行.此次大会共有26名胜东参加,代表股份27924.35万股,占公司总股本的93.1%,　符合法定的要求.会议通过了投票表决的方式通过了董事会工作报告、1993年度财务决算、收益分配方案及1994年财务预算方案、公司1994年工作规划等议案.

③公司第三次股东大会纪要

公司于1995年4月6日在陕西咸阳彩虹宾馆举行第三次股东大会,　会议由副董事长陈一三先生主持.出席会

议的股东代表 26 人,代表股份 22380 万股,占公司总股本的 74.6%,会议有效.会议一致通过了董事会工作报告、监事会工作报告、公司 1994 年度利润分配方案、《关于申请公司股票异地上市的议案》、《关于变更公司往册地点的议案》、《关于修改公司章程的议案》等十二项议案并形成决议.

④临时股东大会纪要:

彩虹显示器件股份有限公司临时股东大会以通讯表决的方式召开,截止 1996 年 1 月 10 日共收到有效表决票 38 份,代表股份 10278 万股,占公司总股本的 68.52%.根据中国证券监督委员会发布的〔1995〕162 号文件关于限制缩段的精神要求,会议审议并通过了《关于批准恢复公司股本议案的决议》.

3.公司现有组织机构及职能

①组织机构图:

彩虹显示器件股份有限公司组织机构图

②各组织机构职能:

A,总经理办公室

负责公司重要活动工作安排,公司综合行政事务,公司法律事务、文档、接待, 重要文件草拟和政务信息等.

B.人事部:

负责公司劳动人事工资管理,组织协调公司劳动力资源配置,对企业员工培训, 考核及专业技术评聘和管理工作等.

C.生产技术部:

负责生产线设备的改造设计,新设备、新器件、新技术的应用,新工艺开发等.

D.制造部:

负责生产、动力、质保与安全生产管理等.

E.证券部:

证券部负责公司融资事项,公司股票上市后的信息披露,公司股利分配管理, 股东咨询等.

F.经营部

经营部负责公司国内外贸易,营销管理及售后服务等.

G.财务部:

负责公司会计核算、资金管理、财税管理、财务分析,费用管理与财务缴拨清算,会计档案管理及内部审计工作.

**四、股本结构及主要股东持股情况**

**1.股本形成**

1992 年 6 月经陕西省经济体制改革委员会陕改发(1992)34 号文件批准,同意由彩虹电子集团公司陕西彩色显像管总厂、中国工商银行陕西省信托投资公司、中国人民建设银行陕西省信托投资公司三方作为发起人组建"彩虹显示器件股份有限公司".1992 年 8 月 11 日中国人民银行陕西分行以陕银复(1992) 54 号文件批准, 同意募集股份 30000 万股,每股面值 1 元,每股发行价为 1.50 元, 彩虹电子集团公司陕西彩色显像管总厂认购 6600 万股,占总股本的 22%,中国工商银行陕西省信托投资公司认购 5400 万股,占总股本的 18%,中国人民建设银行陕西省信托投资公司认购 3000 万股,占总股本的 10%,社会法人参股 5792 万股,占总股本的 19.31%,个人认购 9208 万股,占总股本的 30.69%,陕西岳华会计师事务所已于 1992 年 9 月 2 日出具了陕岳会验字(1992)390 号验资报告,截止 1992 年 8 月 31 日,公司所募资金全部到位,并于 1992 年 9 月 8 日办理了工商登记.1995 年 4 月 6 日,公司经第三次股东大会决议通过,并报经陕西省

证券监督管理委员会陕证监发〔1995〕016 号文、 陕西省国有资产管理局陕国企〔1996〕042 号文确认,公司股份按 2:1 的比例缩股.

中国证券监督管理委员会发布[1995] 162 号文件后,为了贯彻执行中国证券监督管理委员会关于限制缩股的政策,公司出正 1996 年 1 月 19 日以通讯表决方式召开的临时股东大会通过,并报经电子工业部电子经[1995] 927 号文、陕西省人民政府陕政函[1995] 158 号文、陕西省国有资产管理局陕国企[1996] 003 号文确认, 本公司股本重新恢复到原有状态.股本结构如下:

| 股份类别 | 持股数额(万股) | 所占比例(%) |
|---|---|---|
| 发起法人股 | 15000 | 50 |

| | | |
|---|---|---|
| 社会法人股 | 5792 | 19.31 |
| 社会公众股 | 9208 | 30.69 |
| 股本总额 | 30000 | 100 |

2. 前十名法人股东的持股情况

| 序号 | 股东名称 | 持股数(万股) | 所占比例(%) |
|---|---|---|---|
| ① | 彩虹电子集团公司<br>陕西彩色显像管总厂 | 6600 | 22 |
| ② | 中国工商银行<br>陕西省信托投资公司 | 5400 | 18 |
| ③ | 中国人民建设银行<br>陕西省信托投资公司 | 3000 | 10 |
| ④ | 中国银行<br>陕西省信托投资公司 | 2000 | 6.67 |
| ⑤ | 陕西省农工贸集团总公司 | 650 | 2.17 |
| ⑥ | 西安无线电一厂 | 530 | 1.77 |
| ⑦ | 深圳市莱英达(公团)股份<br>有限公司 | 500 | 1.67 |
| ⑧ | 深圳蛇口社会保险公司 | 300 | 1.00 |
| ⑨ | 陕西省华通物资公司 | 200 | 0.67 |
| | 乌鲁木齐幸福城市信用社 | 200 | 0.67 |
| | 中化国际石油有限公司 | 200 | 0.67 |

五、公司前三年经营业绩

1. 经营情况概述

公司的主要的发起人是国家电子工业部直属的彩虹电子集团公司陕西彩色显像管总厂,该集团是我国规日最大、技术最先进的彩色显像管生产基地之一. 公司自 1992 年 8 月募集设立以来, 按照格股说明书所披露的资金投向, 引进日本东芝公司生产 64cmFS 彩色显像管的关键设备和先进技术, 并建成一条生产线. 公司成立之初, 为合理利用资金, 在保证 64cmFS 生产线顺利建设的同时, 充分利用股份制企业的灵活机制, 在资金使用上除支付设备保证金外, 其余部分存入金融机构, 取得了良好效益. 1993 年公司实现营业利润 4160 万元. 1993 年 11 月公司开始设备安装, 1994 年 3 月底完成了设备安装和调试, 比原计划提前了一个月. 从 1994 年 4 月 8  日生产出第一只合格的 64cmFS 彩色显像管到 9 月份通过中间合同验收  ,仅用了不到半年的时间. 公司当年共生产彩色显像管 46 万只, 销售 40 万只, 产销率达 87%, 取得了良好的经济效益. 1994 年底至 1995 年初, 公司又成功地将 64cm彩色显像管生产线改造成为能够兼容生产 56cm 彩色显像管的多品种生产线, 使东芝、日立两种技术嫁接一次成功,改造后的生产线可根据市场需要,  随时切换产品品种,  提高了公司适应市场变化的能力. 1995 年公司共生产彩色显像管 78 万只. 目前国内 64cmFS 彩色显像管生产线大多采用国外先进技术,  厂商主要是上海永新、南京华飞、广东佛山等,市场竞争说烈. 公司在努力提高现有产品质量的同时,  依靠公司雄厚的技术力量和规模经济的优势,致力于新产品、零部件、  原材料国产化的研究与开发; 1995 年 9 月公司又成功地开发了 54cmFS 粗管颈显像管这一新产品,使公司无论在生产规模与产品结构上都处在领先地位,  1995  年公司产销率达到    88%, 64cmFS 彩色显像管市场占有率为 40.7%, 56cm 彩色显像管为目前世界上唯一的生产厂商.

公司建立了完善的质量保证体系,产品全部采用国际标准,其主要技术指标和可靠性已达到 90 年代国际同类产品的先进水平. 其中 64cmFS 彩色显像管已获美国 UL   及加拿大 CSA 安全认证. 1995 年 3 月底, 国际认证局 ( BVQI)   与中国船级社质量工认证公司(CSQA)对公司的质量体系进行了全面审核,并宣布通过了 ISO9002 质量认证.

2. 近三年经营业绩(单位:元)

| 项目 | 1995 年 | 1994 年 | 1993 年 |
|---|---|---|---|
| 一、主营业务收入 | 794,005,816.42 | 448,474,821.16 | |

二、主营业务利润
　　　　　　　　　　122,227,002.92　　　　　　113,394,709.42
加:其他业务利润
　　　　　　　　　　20,433,560.05
三、营业利润
　　　　　　　　　　104,377,099.97　　　　　　97,997,634.73　　　41,602,903.78
加:投资收益
四、利润总额
　　　　　　　　　　104,377,099,97　　　　　　97,997,634.73　　　41,602,903.78
减:所得税　15,688,002.87　　　　　　14,699,645.20
减:少数股东损益
　　　　　　　　　　51,195.71
五、净利润　88,637,901.39　　　　　83,297,989.53　　　　41,602,903.78

注:以上资料摘自陕西岳华会计师事务所《审计报告》(陕岳会内审字[1996]002 号).

六、公司财务状况说明
1.验资报告(简要)
　　　　　　　　　　　　　　　　　　　陕岳会验字(1992)　　390 号

彩虹显示器股份有限公司全体股东:
　　我所接受委托,验证贵公司截止 1992 年 8 月 31 日之实收股本.　我们依据《股份制试点企业会计制度》、《注册会计师验资规则(试行)》有关规定,本着客观、　公允的原则出具报告如下:
　　经验证,截止 1992 年 8 月 31 日贵公司总股本 30,000 万股,金额为 30,000 万元人民币.资本公积 15,000 万元.其中:发起人彩虹电子集团公司陕西彩色显像管总厂出资 9,900 万元人民币,持有 6,600 万股,占股本总额的 22%;发起人中国人民建设银行陕西省信托投资公司出资 8,100 万元人民币,持有 5,　　400 万股,占股本总额的 18%;发起人中国人民建设银行陕西省信托投资公司投资 4,500 万元人民币,持有 3,000 万股,占股本总额的 10%;其它社会法人参股出资 8,688 万元人民币,持有 5,792 万股,占股本总额 19.31%;个人出资 13,812 万元人民币,持有 9,208 万股,　占股本总额的 30.69%.

　　　　　　　　　　　　　　　　　　陕西岳华会计师事务所
　　　　　　　　　　　　　　中国法册会计师　李延成　刘席儒
　　　　　　　　　　　　　　　　　　1992 年 9 月 2 日
　　　　　　　　　　　　　　　　　　陕岳会验字(1995)　　102 号

彩虹显示器件股份有限公司全体股东:
　　我所接受委托,依据贵公司 1995 年 4 月 6 日第三次股东大会关于减少注册资本的决议,对贵公司减少注册资本后股东权益进行了验证.经验征,截止 1995 年 6 月 30　日股东权益为 516527,461.06 元,其中:股本 150,000,000 元,资本公积 300,000,000 元,　法定盈余公积 12,780,279.33 元,公益金 6,390,139.67 元,未分配利润 47,357,042.06 元.

　　　　　　　　　　　　　　　　　　陕西岳华会计师事务所
　　　　　　　　　　　　　　中国注册会计师　李延成　刘席儒
　　　　　　　　　　　　　　　　　　1995 年 7 月 15 日
　　　　　　　　　　　　　　　　　　陕岳会内验字[1996]002 号

彩虹显示器件股份有限公司全体股东:
　　我所接受委托,依据贵公司 1996 年 1 月 20 日临时股东大会"关于批准恢复公司股本议案的决议",对贵公司股本恢复后股东权益进行了验证.经验证,截止 1995 年 12　31 日股东权益为 558,440,694.70 元.其中:股本 300,000,000 元,资本公积 150,000,　000 元,盈余公积 19,170,419 元,未分配利润 89,270,275.70 元,恢复后股本结构

为:

| 股份类别 | 持股数(万股) | 持股比例% |
|---|---|---|
| 发起法入股 | 15,000 | 50.00 |
| 社会法人股 | 5,792 | 19.31 |
| 社会公众股 | 9,208 | 30.69 |
| 合计 | 30,000 | 100.00 |

陕西岳华会计事务所

中国注册会计师:刘席儒    戴紫气

1996 年 1 月 21

日

2.资产评估报告(简要)中洲(95)发字第 071 号

彩虹显示器件股份有限公司:

我所受贵公司的委托,对贵公司拟进行股票上市的的全部资产价值进行评估,现将评估结果报告如下:

(1)评估范围:对公司的全部资产进行评估,产权归彩虹公司法人所有.

(2)评估基准日:1995 年 3 月 31 日

(3)评估结果

单位:人民币万元

| 资产类型 | 帐面原值 | 帐面净值 | 重置价值 | 评估值 | 增加额 | 增值率(%) |
|---|---|---|---|---|---|---|
| 机器设备 | 35,205.16 | 35,010.72 | 44,226.68 | 40,144,27 | 5,133.55 | 14.66 |
| 房屋建筑 | 10,478.14 | 10,070.66 | 11,404,01 | 11,061.89 | 991.23 | 9.84 |
| 在建工程 | 2,198.61 | 2,198.61 | 2,772.59 | 2,678.90 | 480.29 | 21.85 |
| 长期投资 | | | | | | |
| 流动资产 | 41,109.28 | 41,109.29 | 41,512.21 | 41,374.32 | 265.03 | 0.64 |
| 无形资产 | 2,358.38 | 2,358.38 | 2,648.16 | 2,648.16 | 289.78 | 12.29 |
| 其他资产 | 1,367.29 | 1,367.29 | 1,367.29 | 1,367.29 | 0.00 | 0.00 |
| 资产会计 | 92,716.86 | 92,114.95 | 103,930.94 | 99,274.83 | 7,159.88 | 7.77 |
| 长期负债 | 1,288.13 | 1,288.13 | 1,288.13 | 1,288.13 | 0.00 | 0.00 |
| 流动负债 | 41,831.68 | 41,831.68 | 41,472.39 | 41,472.39 | −359.29 | −0.86 |
| 负债合计 | 43,119.81 | 43,119.81 | 42,760.52 | 42,760.52 | −359.29 | −0.83 |
| 净资产 | 48,995.05 | 48,995.05 | 61,170.42 | 56,514.31 | 7,519.17 | 15.35 |

中洲会计师事务所

注册会计师    裔葆生    万大铎

1995 年 6 月 28 日

3.资产评估确认书(简要)国资评(1995)577 号

经我局资产评估中心审核验证,同意该项资产评估结论.资产评估后,    彩虹显示器件股份有限公司的全部资产总额为 992,748,243.19 元人民币,总负债为 427,605,    269.09 元人民币,净资产为 565,142,974.10 元人民币.

国家国有资产管理局

1995 年 10 月 19 日

4.审计报告(摘要)

陕岳会内审字(1996)002 号

彩虹显示器件股份有限公司全体股东:

　　我们接受委托,审计了贵公司 1993 年 12 月 31 日,1994 年 12 月 31 日、1995 年 12 月 31 日的合并及母公司资产负债表,1993,1994,1995 年度的合并及母公司损益表、　财务状况变动表. 这些会计报表由贵公司负责　,我们的责任是对这些会计报表发表审计意见.

　　我们的审计是依据《中国注册会计师独立审计准则》的有关规定进行行为.　在审计过程中,我们结合贵公司的实际情况,实施了包括抽直会计记录、审核有关凭证等我们认为必要的审计程序.

　　我们认为,　上述会计报表的编制符合《企业会计准则》和《股份制试点企业会计制度》的有关规定,在所有重大方面公允地反映了贵公司 1993 年 12 月 31 日、1994 年　12 月 31 日,1995 年 12 月 31 日的财务状况和这三个年度经营成果以及资金变动情况,会计处理方法的选用遵循了一贯性原则.

陕西岳华会计师事务所

中国注册会计师:刘席儒、戴紫气

1996 年元月 21 日

　　(财务报表见附录)

　　5.财务报表附注说明

　　①基本情况

　　彩虹显示器件股份有限公司是经陕西省经济体制改革委员会陕改发(1992)34 号文件批准,由彩虹电子集团公司陕西彩色显像管总厂、　中国工商银行陕西省信托投资公司、中国人民建设银行陕西省信托投资公司共同发起,　以募集方式设立的股份有限公司,注册资本为30,000 万元人民币. 股票按照 1:1.5 溢价发行,共募集股本 30,000 万元人民币,溢价收入 15,000 万元人民币,1995 年 4 月 6 日经第三次股东大会第 7　号决议通过"决定将股本总额由 30,000 万元减少到 15,000 万股". 1996 年 1 月 20 日经过临时股东大会决议批准恢复公司股本.恢复后股本总额为 30,000 万股,注册资本为 30,000 万元.

　　1996 年 3 月,中洲会计师事务对公司所属全部资产进行了评估.　国家目前资产管理局以国资评(1995)第 577 号文对评估结果进行了确认.确认评估后净资产增加 7,519.17 万元人民币. 评估增值未进行帐务调整,仅作为上市参考.

　　②重要会计政策

　　1)会计年度及会计核算原则:会计年度为公历元月 1 日至 12 月 31 日.　会计核算原则采用"权责发生制".

　　2)记帐本位币:记帐本位币为人民币.

　　3)外币业务:

　　外币业务以年初的外币汇率(中间价)折合为人民币记帐,年末按照结帐日汇率(中间价)进行调整,发生的汇兑损益计入当年财务费用.

　　4)存货:

　　原材料采用"先进先出法"核算; 低值易耗品采用"一次摊销法"核算; 产成品成本采用"加权平均成本法"核算.

　　5)固定资产及折旧:

　　固定资产按实际成本计价,折旧来用分类折旧法(通用机械设备折旧为 10 年.　动力设备 12 年,专用电子设备 8 年,运输设备 5 年,办公设备 5 年,生产用房屋、建筑物 30 年　),残值率为 3%.

　　6)税项

　　主营业务为生产、销售电子产品(彩色显像管),　经税务机关核定为增值税一般纳税人,销项税率为 17%,按销项税额减去进项税额后的差额进行缴纳.

　　其它业务应收收入 3%的税率纳营业税,城市维护建设税按应纳税额　7%的税率缴纳,教育费附加 1993 年在以的按应纳税税额 2%的税率缴纳,1993 年度以后按应纳税额 3%的税率缴纳.

　　所得税 1993 年 12 月 31 日前根据咸阳市人民政府成政发(1992)　　100 号文件规定"　1.凡在开发区投资兴办的工商企业,一律执行 10%的所得税率. 新办的生产型企业免征所得税三年,企业出口产值达到当年总产值的 50%以上,再延长免征所得税至五年; 2.新办的高新技术企业,从投产取得销售收入的月份起免征产品税、出值税一年,从取得所得的年份起免征所得税六年"享受免缴所得税.

1994年元月1日起按照陕西省财政厅陕财税函字(94)　　005号"根据省人民政府陕政字(92)19号文件和省科委陕科工(94)101号文件规定, 经研究彩虹显示器件股份有限公司从1994年元月1日起实现利润暂按15%的税率计缴纳企业所得税, 就地交入金库".

1995年根据财税字(94)001号"关于企业所得税若干优惠政策的通知"和国发(1991)12号"国务院关于批准国家高新技术产业开发区和有关政策规定的通知"从元月1日起所得税按照15%的税率计算缴纳.

7)坏帐损失:坏帐损失按实际发生数直接摊销.

8)长、短期投资:短期投资按照成本法核算. 长期投资对持有20%以下的股权投资采用成本法核算, 对持有20%以上股权的对外投资采用权益法核算, 并对其中持有50%以上股权的对外投资编制合并会计报表. 债券投资按期计算利息收入.

股权投资采用成本法核算, 对持有20%以上股权的对外投资采用权益法核算, 并对其中持有50%以上股权的对外投资编制合并会计报表. 债券投资按期计算利息收入.

9)递延资产:递延资产从1994年8月1日起投产后按照5年进行摊销.

10)无形资产:引进日本国东芝公司64cmFS彩色显像管生产线技术转让费,　按照双方协议10年期限进行摊销. 土地使用权按照50年进行摊销.

11)利润分配:按公司章程规定法定盈余公积金按税后利润10%提取,　公益金按税后利润5%-10%提取.

③或有负债:贵公司未有抵押、担保、税务纠纷、未结的诉讼案等或有负债.

④会计报表项目注释

1)货币资金:库存现金5,734.51元; 银行存款46,246,404.35元　, 　其中　: 　外币存款USD63,290.90,按照1995年12月31日的汇率1:8.3175折合人民币526,422.06元.

2)短期投资:

股票投资按1995年12月31日市价计算为1,400,000.00元

购买年利率为14%的国库券2,000,000.00元

3)应收帐款:帐龄均不用过一年

4)预付帐款:预付彩虹进出口公司购进口材料款77,516,758.66元

5)其它应收款:帐龄均不用过一年

6)待摊费用:财产保险费740,922.20元

7)存货:原材料17,780,405.10元; 产成品146,652,068.54元; 委托加工材料179.20元; 修理用备品配件19,707,027.94元; 在制品10,480,928.93元; 在进材料3,731.57元; 合计:194,624,341.28元.

8)固定资产及折旧.

| | 原值 | 折旧年限 | 已提折旧 | 净值 |
|---|---|---|---|---|
| 通用机械设备 | 9,235,643.99 | 10 | 597,238.32 | 8,638,405.67 |
| 动力设备 | 21,840,571.30 | 12 | 1,359,317.11 | 20,481,254.19 |
| 专用电子设备 | 322,565,145.48 | 8 | 28,036,584.82 | 294,528,560.66 |
| 运田、办公设备 | 1,767,171.71 | 5 | 171,724.58 | 1,595,447.13 |
| 房屋、建筑物 | 104,781,434.92 | 30 | 4,843,230.87 | 99,938,204.05 |
| 合计 | 460,189,967.40 | | 35,008,095.70 | 425,181,871.70 |

9)在建工程

设备加工和安装费用11,988,354.52元

64cmFS彩色显像管生产线改造14,500.00元

54cmFS彩色显像管生产线改造1,003,187.82元

末完工的厂房、办公搂5,025,905.00元

进口设备10,672,502.82元

10)无形资产:引进日本国东芝公司 64cmFS 彩色显像管生产线技术转让费 23,583,786.50 元,报销期限为 10 年,已摊销 1,965,315.50 元.

土地使用权原值为 2,330,468.20 元,已搜集销 19,420.55 元.

11)递延资产:1994 年 8 月 1 日正式投产前所发生的产品研制、试车费及开办费 17,136,314.94 元,摊销期限为 5 年,已摊销 4,853,794.08 元.

12)短期贷款:1995 年 12 月 31 日余额为 200,000,000.00 元,   均系向中国工商银行咸阳市分行彩虹分理处委托借款,期限为一年之内.

| 借款日 | 借款金额 | 月利率 | 还款期限 |
|---|---|---|---|
| 1995 年 3 月 29 日 | 10,000,000.00 | 10.98% | 1996 年 3 月 28 日 |
| 1995 年 3 月 30 日 | 10,000,000.00 | 10.98% | 1996 年 3 月 29 日 |
| 1995 年 5 月 10 日 | 30,000,000.00 | 10.98% | 1996 年 5 月 9 日 |
| 1995 年 5 月 16 日 | 15,000,000.00 | 10.98% | 1996 年 6 月 15 日 |
| 1995 年 5 月 24 日 | 20,000,000.00 | 10.98% | 1996 年 5 月 23 日 |
| 1995 年 6 月 6 日 | 35,000,000.00 | 10.98% | 1996 年 6 月 5 日 |
| 1995 年 7 月 28 日 | 5,000,000.00 | 11.5575% | 1996 年 7 月 27 日 |
| 1995 年 12 月 4 日 | 30,000,000.00 | 11.5575% | 1996 年 12 月 3 日 |
| 1995 年 12 月 7 日 | 30,000,000.00 | 11.5575% | 1996 年 12 月 6 日 |
| 1995 年 12 月 26 日 | 15,000,000.00 | 11.5575% | 1996 年 12 月 25 日 |
| 会计 | 200,000,000.00 | | |

13)应付帐款

| | | |
|---|---|---|
| 应付彩虹电视机配件厂 | 829,134.80 元 | |
| 应付彩莲化工厂 | 299,304.00 元 | |
| 应付彩扛显像管二厂 | 472,975.36 元 | |
| 应付彩虹进出口公司 | 813,675.64 元 | |
| 会计 | 2,415,089.80 元 | |

14)其它应付款

| | |
|---|---|
| 职工教育费: | 52,237.68 元 |
| 工会经费: | 173,165.07 元 |
| 职工养老金: | 1,303,012.73 元 |
| 待业保险金: | 616,256.75 元 |
| 职工储蓄金: | 213,200.00 元 |
| 临时工押金: | 15,900.00 元 |
| 劳动竞赛奖: | 9,626.08 元 |
| 个人收入所得税: | 16,542.00 元 |
| 深圳久千公司: | 5,531.80 元 |
| 深圳思想者广告设计有限公司: | 22,750.00 元 |
| 咸阳机电设备总公司: | 122,300.00 元 |
| 咸阳市税务局: | 3,000,000.00 元 |
| 房租: | 2,836.00 元 |
| 其他: | 31,176.94 元 |
| 合计: | 5,581,535.35 元 |

15)应付工资:应付职工效益工资:  7,569t328.17 元

16)应付福利费:按工资总额比例 14%提取的福利费 1,431,200.59 元

17)未交税金:

应交增值税:11,049,503.92 元

应交营业税:80,000.00 元

应交城市维护建设税及教育费附加:984,505.13 元

应交所得税:9,925,611.21 元

18)末付股利:1994 年度根据董事会制订并经股东大会通过的分配方案已分配尚未支付的股利.

19)预提费用:按照与日本 TSBA(东芝公司)签订技术转让协议规定提取应付日方的技术提成费:2,847,445.76 元

20)长期应付款:应付引进设备款:12,881,289.81 元

21)股本

| 股份类别 | 持股金额(万元) | 所占比例% |
|---|---|---|
| 发起法人股 | 15,000 | 50.00 |
| 社会法人股 | 5,792 | 19.31 |
| 社会公众股 | 9,208 | 30.69 |
| 股本总额 | 30,000 | 100.00 |

22)盈余公积

|  | 1995 年 | 1994 年 | 1993 年 |
|---|---|---|---|
| 法定盈余公积 | 8,863,790.14 | 8,329,798.95 | 4,160,290.38 |
| 公益金 | 4,431,895.07 | 4,164,899.48 | 2,080,145.19 |

23)资本公积金:1.5 亿系股票发行溢价收入

24)主营业务收入:

1995 年 64cmFS 彩色显像管销售收入 611,545,419.03 元,56cm 彩色显像管销售收入 180,644,047.39 元,54cm 彩色显像管销售收入 1,216.35 元、技术咨询收入 600,000.00 元,合计 794,005,816.42 元。

25)管理费用:1995 年共发生管理费:17,626,504.76 元

26)财务费用:1995 年计入财务费用的利息支出 20,656,958,24 元,为当期短期借款利息与同期预付帐款利息、银行存款利息相抵后的差额.

1992 年 9 月股份公司成立时,共募集股本 30,000 万元,资本公积 15,000 万元,所募资金主要用于引进日本国东芝公司 64cmFS 生产线。根据引进设备合同,结算采用保函方式,合同签定后先支付 5%的设备保证金,其余 95%在 1993 年 12 月设备进入安装现场后方对外支付。公司为合理利用资金,在保证 64cmFS 生产线顺利建设的同时, 充分运用股份制企业的灵活机制,在资金使用上除支付设备保证金外 ,其余部分存人金融机构,至 1993 年 12 月 31 日共取得存款利息 41,602,903.78 元,全部计入当期财务费用.

27)投资收益

西安彩虹久千技术开发有限责任公司注册资本 272,000 元,其中: 广东宏基久千有限公司出资 119,000 元,占 43.75%,彩虹显示器件股份有限公司出资 153,000 元,占 56.25%.1995 年共实现经营利润 174,654.88 元,所得税税率为 33%, 税后利润为 117,018.77 元,按投资比例分配,彩虹显示器件股份有限公司 1995 年度的投资收益为 65,823.06 元。

28)长期投资:1995 年长期投资为 153,000 元,按权益法核算投资收益为 65,823.06 元, 会计投资为 218,823.06 元.在编制合并会计报表时予以抵销.

29)未分配利润:本年净利润 88,637,901.39 元,年初未分配利润 632,374.31 元, 本年可供分配利润 89,270,275.70 元,提取"两金"计 13,295,685.21 元,年末未分利润 75,974,590.49 元.

七、财务指标分析

| 指标名称 | 计算公式 | 指标数 |
|---|---|---|
| ①流动比率 | 流动资产 / 流动负债 | 1.33 |
| ②速动比率 | 速动资产 / 流动负债 | 0.53 |
| ③应收帐款周转率 | 主营业务收入 / 应收帐款平均余额 | 8.23 |
| ④股东权益比率 | 股东权益总额 / 资产总额·100% | 68.55% |
| ⑤股本净利率 | 税后利润 / 股本总额·100% | 29.55% |
| ⑥每股净资产 | 股东权益 / 股本总额 | 1.86 |
| ⑦净资产收益率 | 净利润 / 年末股东权益·100% | 15.87 |

注:由于资产评估后净资产增加未进行帐务调整,上述指标、计算数以审计后的数值进行计算.

八、上市之承诺及内部审计制度

1.上市之承诺:

本公司董事会将严格遵守《公司法》、《股票发行与交易管理暂行条例》、《上海证券交易所交易市场业务试行规则》和有关法律、法规的规定,  并自股票上市之日起向全体股东作如下承诺:

(1)按照法律、法规的规定程序和要求披露重大的信息,并接受证券主管机关、上海证券交易所的监督管理.

(2)及时、真实、准确地公布中期报告和年度报告,并备置干规定场所供投资者公众查阅.

(3)本公司董事、监事及高级管理人员持本公司股票发行变化时,在报告证券主管机关、上海证券交易所的同时向投资公众公布.

(4)  在任何公开传播媒介中出现的消息可能对本公司股票的市场价格产生误导性影响时,本公司知悉后将及时对该消息予以公开澄清.

(5)本公司董事、监事及高级管理人员将认真听取社会公众的建议和批评,自觉抵制不正之风,不利用已获得的内幕信息从事股票买卖活动.

2.内部审计制度

根据《公司法》和《股份制试点企业审计暂行规定》,为加强公司内部管理,维护广大股东的利益,公司制定了内部审计制度,其工作范围及主要任务包括:监督、  检查本公司经济活动、财务会计工作的合法性;监督、检查公司的财务计划和预算的执行情况;评价经济效益的实现情况;对本公司内部控制制度进行审计,  以提高经济管理水平;对本公司内部违反财经法纪问题进行专案审计;董事会、监事会交办的其他审计事项,通过内部审计,使公司的经济活动更为规范.

九、重要事项揭示

1.会计制度

公司于 1992 年 9 月 8 日起执行《股份制试点企业会计制度》.

2.税收政策

根据国务院国发(1991)12 号文《国务院关于批准国家高新技术产业开发区和有关政策规定的通知》、财政部、税务总局财税字(1994)001  号文《关于企业所得税若干优惠政策的通知》、陕西省科学技术委员会陕科工发(1994)101  号文《关于认定"彩虹显示器件股份有限公司"为高新技术企业的批复》,公司从 1995 年元月 1 日起所得税按照 15%的税率计算缴纳.

3.公司董事会 1995 年度红利分配预案为每 10 送 2 股红股,待 6 月 16  日股东大会审议批准.

4.本公司股本总额为 30000 万股.其中法人持股 20792 万股,原内部职工股为 9208 万股,经中国证监会批准,内部职工股 9208 万股为可上市流通的社会公众股,原内部职工股在国家有关规定公布实施之前暂不上市交易.

5.公司的原材料、动力、部分零部件的供应及产品销售均以市场价与彩虹电子集团公司签订了有关协议.

6.公司生产的产品为 56cm 和 64cmFS,集团公司生产的产品为 37cm、47cm 和 54cmFS,其产品型号、规格、技术完全不同.公司是目前全球唯一生产 56cm 彩色显像管的企业,该产品主要用于游戏机的制造,另外 64cmFS  彩管的销售市场为国内大中城市场的消费者,而彩虹集团公司生产的 37cm 彩色显像管主要销往国外,47cm、54cmFS 彩色显像管主要面向国内广大的农村市场.因此,公司与彩虹集团公司在销售市场上不存在相互竞争.

7.据北京市海珂律师事务所为本公司股票上市出具的法律意见书,  截止本公告书公布之日,公司无重大诉讼、仲裁或行政处罚案件等事项.

8.公司在 1995 年 4 月 6 日经公司第三次股东大会通过,  陕西省证券监督管理委员会陕证监发(1995)016 号文、陕西省国有资产管理局陕国企(1995)042 号文确认,  对原股本按 2:1 比例缩股.

中国证券监督管理委员会发布(1995)162 号文件后,为了贯彻执行中国证券监督管理委员会关于限制缩股的政策,公司截止 1996 年 1 月 19 日以通讯表决方式召开的临时股东大会通过,并报经电子工业部电子经(1995)  927  号文、  陕西省人民政府陕政函(1995)158 号文、陕西省国有资产管理局陕国企(1996)003 号文确认,  本公司股本重新恢复到原有状态.

9.公司经咸阳市人民政府咸地字(1995)第 25 号文批准,以交纳出让金的方式,获得了其土地使用权证和房产证.

10.经公司第三次股东大会决议通过,公司注册地已于 1995 年 6 月 2 日由陕西省咸阳市变更为西安市高新技术产业开发区.

11.1995 年 3 月,中洲会计师事务所对公司所属全部资产进行了评估.国家国有资产管理局以国资评(1995)第 577 号文对评估结果进行了确认.确认评估后净资产增加 7,519.17 万元人民币.评估增值未进行帐务调整,仅作为上市参考.

12.1992 年 8 月,经中国人民银行陕西省分行陕银复(1992)54 号文批准,公司自办发行股权证 30000 万股,共募集资金 4.5 亿元人民币.资金到位后,公司严格按照《招股说明书》披露的资金投向,引进先进生产设备和技术,积极组织筹建 64cmFS 彩管生产线,该生产线工程设计批准概算总额为 59,424.87 万元.公司采取各种措施,精打细算,压缩规模,控制支出,截止生产线竣工,实际完成投资 50,738 万元,比设计批准概算节约投资 8,686.87 万元.

13.作为公司发起人水中国工商银行陕西省信托投资有限公司、中国人民建设银行陕西省信托投资公司将据中国人民银行银复(1995)436 号及银复(1995)316 号文的规定进行脱钩、撤销,其所持有的公司股份届时将按照中国人民银行的有关规定做相应处理并发布公告.

14.鉴于公司董事长张文义先生已被国务院任命为电子工业部副部长,公司于 1996 年 5 月 10 日日开临时董事会议,接受其辞去董事长职务的请求,同时选举董事王李广先生任董事长职务.

15.公司股票上市前,全产股票均已托管完毕.

十、投资风险及发展规划

1.投资风险

投资者在评价公司股票投资价值时,除本上市公告书提供的其他资料外,匝特别注意以下各项风险因素:

①经营风险

公司目前生产的 64cm、56cm 彩色显像管市场前景看好,但产品品种较单一且又市场千变万化,可能会影响某个品种的需求.同时,公司生产所需的玻壳、荫罩等霞部件和原材料由协作单位提供或依赖进口,其能否稳定供应对公司生产经营影响浪大,会给公司带来一定的经营风险.

②销售市场风险

虽然公司在国内大中屏幕彩色显像管市场占有优势,但国内彩色显像管生产厂家众多,国内市场对彩管的需求超于饱和,市场竞争日趋激烈.

③外汇风险

公司生产彩色显像管所需的部分材料尚需依赖进口,需要一定的外汇支出,这将给公司带来一定的外汇风险.

④技术风险

电子行业的特点是,技术含量高,产品更新速度快.技术竞争十分激烈.

⑤政策性风险

我国的对外开放政策,总体上有助于公司的进一步发展,同同时也会给公司带来内部和外部的压力.尤其是我国在加入世界贸易组织以后,关税将大幅度降低,国内市场开放,企业要面对国外名牌产品的激烈竞争.

⑥股市风险

股票投资是所有股资行为中风险较大的一种;主要表现在股票价格上下波动范围大,不可预见性强,对发展中的股市而言,此等表现更为明显.国内外政治、经济形势的变化和国家金融政策的调整,公司经营业绩及其发展前景,投资者心态的变化等诸多因素都会给投资者带来极大的风险.

2.风险对策

①公司在继续高质量地生产 56cm、64cm 彩色显像管的基础上,进行产品结构调整,使 54cmF5 粗管颈彩色显像管尽早形成批量生产的能力,并加快 64cmFS700 线高清晰度彩色显像管的量产化工作,尽早批量投放市场.与此同时,实行全方位开拓,多角化经营,以分散经营风险.

②公司将凭借自身的技术、人才和管理方面的优势,进一步提高产品质量,降低生产成本,不断开发新产品,以适应市场的需要,同时增加产品品种,加强售前售后服务等来增强公司的竞争能力.

③公司力争扩大产品出口,以增加外汇收入.同时,在确保产品质量的前提下,努力提高国产化程度,使产品国产化率在近期内达到 96%以上,以减少外汇支出,保证外汇收支平衡,避免汇率风险.

④我公司产品全部采用国际标准,现有技术水平均已达到 90 年代国际先进水平;在此基础上,坎司仍将加速人力资源的开发,不断地对现有生产装备进行改造,对生产线制造工艺进行改良,加强对新技术、新材料的运用.对与本公司未来发展所涉及的重大技术实施跟踪和超前研究,保证公司的技术优势.

⑤公司将抓住"人关"这一机遇,加强内部管理,充分利用国家政策,凭借其雄厚的技术力量、较大的生产经

营规模和强大的销售服务网络，在国内市场上扩大自己的占有率；另一方面,人关后对我公司的原材料进口及产品的出口提供了新的机遇,为公司降低材料成本,减少用汇创造了良好的条件.

3.发展规划

公司发展的总体经营战略是立足国内市场,拓展国际市场,以市场为导向，依靠公司的科技优势,加快新产品的开发,调整产品结构.同时,公司正向原材料生产和整机装配两头延伸,形成产品多层次、全方位发展的格局.具体发展规划如下:

①进一步挖潜改造,走内涵扩大再生产之路,少投入多产出，将彩色显像管生产能力在原有设计能力基础上提高70%,使现有设备发挥出最大的潜在能力.

②以市场为导向积极开发研制74cmFS大屏幕和16:9宽屏幕彩色显像管；同时，向彩色监视器以及MMTV(多媒体)用彩色显像管方向发展；促进消费类电子产品向投资类产品转化.

③进行产业结构调整.产业向原材料、零部件及整机制造延伸,同时通过参股(控股)等方式向信息产业(如计算机、通信、工业控制)发展.

④为使公司能更高效、快速地发展,公司将利用机制优势,走资本运作之路，通过兼并、参股、控股等方式,合理配置资源,优化产业结构,同时利用本公司产品好、技术含量高、规模经营等优势,积极参与国际竞争,使公司逐步成为集团化、多元化、国际化的现代企业.

十一、公司盈利预测

陕岳会内审字(1996)003号

于彩虹显示器件股份有限公司1996年盈利预测审阅函

彩虹显示器件股份有限公司全体股东:

我所接受委托,审阅了贯公司董事会编制的1s96年度盈利预测(贯公司董事会对此需承担全部责任)所依据的会计政策及计算方法,我们认为，就会计政策和计算方法及在所有重要方面与贯董事会通常采用的会计政策一致，该盈利预测的各项假设是恰当的.

附件:1.盈利预测明细表
2.盈利预测的基准和假设

中国注册会计师:刘席儒　戴紫气

陕西岳华会计师事务所

1996年1月22日

附件1:

彩虹显示器件股份有限公司

1996年盈利预测明细表单位:万元

| 项目1996年度. | |
|---|---|
| 主营业务收入 | 102,000 |
| 减:产品销售成本 | 85,000 |
| 产品销售费用 | 680 |
| 产品销售税金及附加 | 400 |
| 主营业务利润 | 15,920 |
| 其他业务利润 | 2,000 |
| 减:管理费用 | 2,600 |
| 财务费用 | 3,400 |
| 利润总额 | 11,920 |
| 减:所得税 | 1,788 |
| 净利润 | 10,132 |

附件2:

盈利预测的基准和假设

一、基准：

盈利预测是根据业经陕西岳华会计师事务所审计的本公司 1993－1995 年的综合经营业绩,结合本公司现时各项基础、能力、　潜力和业务发展之各项计划及其投资项目可行性审定编制的.本盈利预测遵循了我国现行法律、法规和制度的有关规定,并在各主要方面与本公司采用的会计原则一致.

二、假设

1.我国的股份制有关法律、法规、政策没有重大的变化,　本公司往册地社会经济环境没有发生重大变化.

2.根据市场预测,考虑到经济逐年增长的形势及彩管销量看好,对 1996 年生产的 85 万只彩管全部售出进行计算.

3.由于部分原材料及琴配件均系国外进口,所需外汇按进口日外汇汇率计算,以后各年不再作调整.

4.各项税收政策(含税率等)在正常范围内变化.

5.预测末考虑股东有大的变化及不可抗拒因素所造成的重大不利影响.

十二、备查文件

1.电子工业部《关于报送彩虹显示器件股份有限公司股票上市复审材料的函》.

2.陕西岳华会计师事务所陕岳会内审字(1996)002 号《审计报告》.

3.陕西岳华会计师事务所陕岳会内验字(1992)390 号、陕岳会验宅(1995)102 号《验资报告》、陕岳会内验字(1996)002 号《验资报告》.

4.中洲会计师事务所中洲(95)发字第 071　号《关于彩虹显示器件股份有限公司股票上市前资产评估报告》.

5.国家国有资产管理局《对彩虹显示器件股份有限公司股票上市项目资产评估结果确认的通知》(国资评〔1995〕1577 号)

6.陕西岳华会计师事务所陕岳会内审字(1996)003　号《关于彩虹显示器件股份有限公司 1996 年盈利预测审阅函》.

7.国务院国发(1991)12 号文《国务院关于批准国家高新技术产业开发区和有关政策规定的通知》.

8.财政部税务总局财税字(1994)001 号文《关于企业所得税若干优惠政策的通知》.

9.陕西省科学技术委员会陕科工发(1994)101　号文《关于认定"彩虹显示器件股份有限公司"为高新技术企业的批复》.

10.北京市海问律师事务所《关于彩虹显示器件股份有限公司 1995　年度股票上市的法律意见书》.

11.彩虹显示器件股份有限公司营业执照.

12.彩虹显示器件股份有限公司章程.

13.上海证券交易所上市承诺书.

# EXHIBIT 10

*Note:* If there is any inconsistency between the Chinese and English versions of this document, the Chinese version shall prevail.



# 彩 虹 集 團 電 子 股 份 有 限 公 司
# IRICO GROUP ELECTRONICS COMPANY LIMITED*

*(A joint stock company incorporated in the People's Republic of China with limited liability)*

(Stock Code: 0438)

# ARTICLES OF ASSOCIATION

The present articles are hereby formulated in accordance to "Mandatory Provisions of the Articles of Association of the Companies to be Listed Overseas" (hereinafter referred as "Mandatory Provisions"), CSRC No.[1995]1 "Opinion on Further Promoting the Normative Operations and Deepening the Reform of Companies Listed Outside China" (hereinafter referred as "Zheng Jian Hai Han") and "Rules Governing the Listing of Securities on The Hong Kong Stock Exchange" (hereinafter referred as "Listing Rules").

# CONTENTS

Chapter 1       General Principles                                                                              [•]

Chapter 2       Business Objectives and Scope                                                          [•]

Chapter 3       Share Capital and Registered Capital                                             [•]

Chapter 4       Reduction of Capital and Repurchase of Shares                            [•]

Chapter 5       Financial Assistance for the Acquisition of the Shares of the Company   [•]

Chapter 6       Share Certificates and Register of Shareholders                        [•]

Chapter 7       Rights and Obligations of Shareholders                                      [•]

Chapter 8       General Meetings                                                                             [•]

Chapter 9       Special Procedures for Voting of Class Shareholders               [•]

Chapter 10      The Board                                                                                         [•]

Chapter 11      Secretary to the Board of the Company                                       [•]

Chapter 12      General Manager of the Company                                                 [•]

Chapter 13      Supervisory Committee                                                                  [•]

Chapter 14      Qualifications and Obligations of Directors, Supervisors,
                General Manager, Assistant General Manager and
                Other Senior Management of the Company                                  [•]

Chapter 15      Financial and Accounting System and Profit Distribution         [•]

Chapter 16      Appointment of Accountants Firm                                              [•]

Chapter 17      Insurance                                                                                        [•]

Chapter 18      Labour Management                                                                       [•]

Chapter 19      Trade Union Organization                                                            [•]

Chapter 20      Amalgamation and Demerger                                                        [•]

Chapter 21      Dissolution and Liquidation                                                        [•]

Chapter 22      Procedures for Amendments to the Articles of Association      [•]

Chapter 23      Settlement of Disputes                                                                  [•]

Chapter 24      Notices                                                                                           [•]

Chapter 25      Bye-laws                                                                                         [•]

## CHAPTER 1   GENERAL PRINCIPLES

**Article 1**    IRICO Group Electronics Company Limited (the "Company") is a joint stock limited company established in accordance with the "Company Law of the People's Republic of China" (the "Company Law"), the "Securities Law of the People's Republic of China"(the "Securities Law"), the State Council's Special Regulations on Overseas Offering and Listing of shares by Joint Stock Limited Companies" (the "Special Regulations"), and other relevant legislations and administrative regulations of the PRC.

Pursuant to the approval of the document entitled "The Approval of the Establishment of IRICO Group Electronics Company Limited" (《關於設立彩虹集團電子股份有限公司的批覆》) (Guo Zi Gai Ge [2004] No. 850) by the State-owned Assets Supervision and Administration Commission under the State Council, the Company was established on 9th September 2004. The Company was registered on 10th September, 2004 with the Shaanxi Administration for Industry and Commerce of the People's Republic of China, and obtained business license of enterprise legal person, the licence number is: 610000100158913.

The Company is exclusively established by the IRICO Group Corporation（彩虹集團公司）.

**Article 2**    The registered name of the Company:
Chinese: 彩虹集團電子股份有限公司
English: IRICO Group Electronics Company Limited

**Article 3**    Address of the Company: No. 1 Caihong Road, Xianyang, Shaanxi Province, The People's Republic of China
Telephone No.: 029-33332996
Facsimile: 029-33332656
Postal Code: 712021

**Article 4**    The Chairman of the Company shall be the legal representative of the Company. A change in legal representative requires to be registered with the corporate registration authorities in accordance with applicable laws.

**Article 5**    The Company is a joint stock company with perpetual existence.

The Company is an independent legal person, governed and protected by the laws, regulations and other relevant provisions of the PRC.

**Article 6**    This Articles is enacted pursuant to the Company Law, the Special Regulations and the Mandatory Provisions for Articles of Association of Companies to be Listed Overseas (the "Mandatory Provisions"), the Zheng Jian Hai Han and other relevant laws and regulations of the PRC. Save as the Company Law, the relevant laws and regulation require otherwise or approval of the authorized approval authorities of the State Council, the terms included in these Articles of Association in accordance with the requirement of the Mandatory Provisions shall not be amended or abolished.

**Article 7**    The Articles of Association of the Company is approved by company examination and approval department authorized by the State Council, take effect after the completion of initial public offering and replace the Articles of Association originally registered at the industrial and commercial administrative organization.

From the date when the Articles of Association take effect, the Articles of Association shall constitute a legally binding document regulating the structure and activities of the Company and governs the rights and obligations between the Company and its shareholders and among the shareholders.

**Article 8**   The Articles of Association of the Company shall be binding on the Company, its shareholders, Directors, supervisors, general manager, assistant general manager and other senior management. All the persons mentioned above may, pursuant to the Articles of Association, put forward claims concerning the affairs of the Company.

The shareholders may, in accordance with the Articles of Association, bring litigations against the Company. The Company may, in accordance with the Articles of Association, bring litigations against the shareholders. The shareholders may, in accordance with the Articles of Association, bring litigations against each other. The shareholders may, in accordance with the Articles of Association, bring litigations against the Directors, supervisors, manager and other senior management.

With the approvals of the relevant government authorities, the Company may from time to time make adjustments to its investment policy, scope and means of operations in view of domestic and international market trends, business development needs within the PRC and the Company's own development capability and need for achievement. The Company shall register its change of business scope with company registry organization.

The above-mentioned prosecution includes suits brought up to the courts or arbitrations applied for to the arbitration institutions; the above-mentioned other senior management personnel include chief financial officer, board secretary and assistant general manager; the above-mentioned General Manager, Deputy General Manager and Assistant General Manager can, in accordance with the needs of the Company's management, be referred to as the President, Deputy President, Assistant President separately.

**Article 9**   The Company may invest to other limited liability companies and joint stock limited companies, and shall take the corresponding responsibility in proportion of its investment amount.

**Article 10**    The Company is an independent corporation. All acts of the Company shall comply with the laws and regulations of China and the place outside China where the Company is listed as foreign investment shares, and protect the legitimate rights and interests of the shareholders. The Company's full capital shall be divided into equal shares, and the shareholder shall hold responsibility to the Company in accordance with its shares, while the Company shall be responsible for its debts with all its assets.

Under the premise of complying with Chinese laws and administrative regulations, the Company shall have the right to finance or loan. The financing of the Company includes (but is not limited to) the issuance of corporate bonds, mortgage or pledge of the ownership or use rights of part or all of the Company's assets, or any other rights permitted by Chinese laws and administrative regulations; however, the Company shall, in the process of exercising the above-mentioned rights, not undermine or abolish the rights of shareholders of any kind.

## CHAPTER 2   THE BUSINESS PURPOSE AND SCOPE

**Article 11**    The Company's business purpose is to make benefits for the shareholders thereof, well-being for the employees thereof, and contribution to the society.

**Article 12**    The Company's business scope shall be subject to the projects approved by the company registration authority.

The business scope of the Company is: research and development, manufacturing and sale of colour display units and their accessories and materials, electronic parts, electronic vacuum devices and electronic products; self-operated and commissioned import and export business for various commodities and technologies (other than commodities and technologies whose dealing, import or export is restricted or prohibited to operate by the State); operation of processing imported goods and ''Three-plus-one'' business (i.e. processing and compensation trade); foreign trade and entrepot trade; research and development, manufacturing and sale of computer hardware and software, chemical products (other than precursor and hazardous chemical products), information technology and industrial control system and its devices; processing and repairing machinery; general transportation service (with licence); development of, training and consultation on electronic information technology; acquisition and processing of wastes and sale of accumulated inventories; research and development,

production and sale of photovoltaic glass, tempered glass, coated glass, conductive film glass and flat glass; development, research, production and sale of solar cell chips, solar modules and accessory products as well as new materials such as silicon materials and value-added glass and high-tech products.

The Company can adjust its investment direction and business scope and methods with reference to market trends at home and abroad, needs arising from business development in the PRC and its own development capability as well as needs arising from its performance, and subject to resolutions of the general meeting, as appropriate. Where the business scope is changed, such change shall be registered with the registration authorities of the Company.

## CHAPTER 3   SHARE CAPITAL AND REGISTERED CAPITAL

**Article 13**    The Company may at any time create ordinary shares. Having regard to its requirements and upon the approvals of the State Council authorized approving authorities, the Company may create other class of shares.

**Article 14**    The shares issued by the Company shall have a par value of Renminbi 1 per share.

The aforesaid "Renminbi" shall mean the lawful currency of the People's Republic of China.

**Article 15**    The Company may issue shares to domestic investors and overseas investors upon the approval of the authorities of the State Council responsible for securities.

The aforesaid overseas investors shall mean the investors from foreign countries and the regions of Hong Kong, Macau and Taiwan who subscribe for the shares issued by the Company; domestic investors shall mean the investors within the PRC other than those investors from the aforesaid regions.

**Article 16**   The shares issued by the Company to the domestic investors and subscribed in Renminbi shall be called domestic shares. The shares issued by the Company to the overseas investors and subscribed in foreign currency shall be called foreign shares. Those foreign shares listed overseas shall be called overseas listed foreign invested shares.

The aforesaid foreign currency shall mean the legal currency of other countries or areas other than Renminbi, recognized by the foreign exchange authority of PRC for the purpose of payment for the shares to the Company.

The overseas listed foreign invested shares issued by the Company in Hong Kong shall be called H shares. H shares shall mean the shares which have been admitted for listing on The Stock Exchange of Hong Kong Limited (hereinafter referred to as the "Hong Kong Stock Exchange") and the par value of which is denominated in Renminbi and are subscribed for and traded in Hong Kong dollars. H shares can also be listed in stock exchanges in the United States of America in the form of depositary securities.

**Article 17**   With the approval by the approving departments of the State Council, the Company can issue 1,500,000,000 ordinary shares, and 1,500,000,000 shares are issued to the founders when the Company was established, representing 100% of the aggregate authorized issued ordinary shares.

**Article 18**   After its establishment, the Company first issued 485,000,000 overseas listed foreign invested shares, in the event of exercising the over-allotment option, the Company will issue not more than 73,000,000 overseas listed foreign invested shares.

**Article 19**   Upon the plan for the issue by the Company of overseas listed foreign shares and domestic shares being approved by the authorities of the State Council responsible for securities, the Board of the Company may implement arrangement, for the respective issue thereof.

The plan for the issue of overseas listed foreign shares and domestic shares may be implemented respectively by the Company pursuant to the provisions as aforesaid within fifteen (15) months upon the approval of the securities authority of the State Council.

**Article 20**   If foreign investment shares listed outside the People's Republic of China and domestic investment shares are issued separately within the total number of shares specified in the issue plan, every such issue shall be fully subscribed for in one time respectively; if every such issue is impossible to be fully subscribed for at one time due to special circumstances, the shares may also be issued in several stages, subject to the approval of the Securities Authority of the State Council.

**Article 21**   After the first issue of foreign investment shares listed outside the People's Republic of China , the Company's registered capital is RMB 1,941,174,000 Yuan, with the total number of shares being 1,941,174,000 shares, of which 1,455,880,000 shares are domestic investment shares, accounting for 75% thereof, and 485,294,000 shares foreign investment shares, accounting for 25%.

Decided by the shareholders' general meeting of the Company, with the capitalization of the capital reserve by 1 share for every 10 shares, the Company's registered capital is changed into RMB 2,135,291,400 Yuan, the total number of shares being changed into 2,135,291,400 shares, of which 1,601,468,000 shares are domestic investment shares, accounted for 75%, and 533,823,400 shares foreign investment shares, accounting for 25%.

In accordance with the general mandate granted to the Board by the 2009 Annual General Meeting, the Company has completed the sales of 97,058,000 shares of H shares, registered capital being changed into RMB 2,232,349,400 Yuan, the total number of shares being changed into 2,232,349,400 shares, of which 1,601,468,000 shares are domestic investment shares, accounted for 71.74%, and 630,881,400 shares foreign investment shares, accounting for 28.26%.

**Article 22**     The Company may, based on its operation and business requirements, approve an increase in its capital in accordance with the relevant provisions of the Articles of Association.

The manners in which the capital of the Company may be increased are as follows:

(1)   offer of new shares to non-specific investors;

(2)   issue of new shares to existing shareholders by way of rights;

(3)   bonus issue of new shares to existing shareholders;

(4)   other methods as permitted by the laws and administrative regulations.

The increase in the capital of the Company by way of issuing new shares approved pursuant to the provisions of the Articles of Association shall be implemented in accordance with relevant laws and administrative regulations of PRC.

**Article 23**     Save as otherwise stipulated by the laws and administrative regulations, shares of the Company may be transferred freely and in circulation free of any lien.

**Article 24**     Under the premise of abiding by the Articles of Association and other applicable provisions of the Company, the transferee's name (name) shall, upon transfer of the shares of the Company, be included in the register of shareholders as the holder thereof.

**Article 25**     The issue or transfer of all the foreign investment shares listed outside the People's Republic of China shall be registered in the register of shareholders of foreign investment shares listed outside the People's Republic of China, which is deposited at the listing place in accordance with Article 41.

**Article 26**    The Company must ensure that all of its foreign investment shares listed outside the People's Republic of China contain the following statements, and provide instructions to its share Registry and promote the Registry to refuse to register any person as holder of the Company's shares subscripted, purchased or transferred, unless the said person provides the Registry with appropriate signed forms related to the following statements contained in the said shares:

(1)   The purchaser of the shares and the purchasing company and its shareholders, as well as the Company and its shareholders, all agree to comply with the Company Law and other relevant laws, administrative regulations and the Articles of Association;

(2)   The purchaser of the shares and the purchasing company with its shareholders, directors, supervisors, general manager, deputy general manager and senior management personnel agree, and the company and its shareholders on behalf of the Company itself and each director, supervisors, general manager, deputy general manager and senior management personnel also agree, that all disputes and claims arising due to the Articles of Association or the disputes, and claims of the Company's business arising due to the Company Law and the rights and obligations stipulated by other relevant Chinese laws and administrative laws, shall be submitted to arbitration in accordance with the provisions of the Articles of Association, and any submitted arbitration shall be deemed to authorize the arbitral tribunal to conduct a public hearing and announce its decision, and the arbitration shall be final ruling;

(3)   The purchaser of the shares and the purchasing company and its shareholders agree, that the shares of the Company can be freely transferred by the holders;

(4)   The purchaser of the shares authorizes the Company on behalf of the purchaser enter into a contract with the Company's directors and management staff, that such directors and management staff shall commit to abide by and comply with the Company the responsibility to shareholders stipulated in the Articles of Association.

## CHAPTER 4   REDUCTION OF CAPITAL AND REPURCHASE OF SHARES

**Article 27**    The Company may reduce its registered capital pursuant to the provisions of the Articles of Association.

**Article 28**    Upon the reduction of registered capital, the Company shall prepare a balance sheet and a list of its assets.

The Company shall notify its creditors within ten (10) days from the date of passing of the resolution for the reduction of registered capital and shall publish the notice at least three (3) times in a newspaper within thirty (30) days thereof. The creditors who have received the said notice shall have the right within thirty (30) days from the date of receiving the notice, and the creditors who have not received the notice shall have the right within ninety (90) days of the notice being first published to demand the Company to settle the debt or to provide corresponding security in respect of the debt.

The registered capital shall not be less than the minimum statutory requirement after the reduction of capital.

**Article 29**    In the following circumstances, the Company may repurchase its issued shares in accordance with the procedures provided in the Articles of Association and with the approval of the relevant governing authorities of the PRC:

(1)  to reduce the capital of the Company by cancelling shares;

(2)  to amalgamate with other companies which own shares in the Company;

(3)  Other circumstances which are permitted by the laws and administrative regulations.

**Article 30**   The Company may with the approval of relevant authorities of the State repurchase its shares in any of the following manner:

(1)   to make a repurchase offer to all shareholders in proportion to their respective shareholdings;

(2)   to repurchase shares in open trading on a stock exchange;

(3)   to repurchase shares by way of agreement other than through a stock exchange.

**Article 31**   Where the Company repurchases shares by way of agreement other than through a stock exchange, it shall obtain the prior approval of the shareholders in general meeting according to the provisions of the Articles of Association. Where prior approval has been obtained from the shareholders in general meeting in the same manner, the Company may release or modify the contract entered into in the aforesaid manner or waive any right granted under such contract.

The contract to repurchase shares referred to above shall include (but not limited) to agreements agreeing to undertake the obligations to repurchase shares or acquiring the rights to repurchase shares.

The contracts to repurchase shares on the repurchase of shares or any of the rights provided therein are not capable of being assigned by the Company.

**Article 32**   Where the Company repurchases the redeemable stock which it is entitled to do so otherwise in open-trade or by way of an offer, the price shall not exceed a certain price ceiling. If the repurchase is conducted in the form of an offer, then, the offer must be made to all the shareholders on the same conditions.

**Article 33**      After the Company has completed the repurchase of its shares, the Company shall cancel that part of shares within the period prescribed by the laws, administrative regulations and shall apply to the original company registration authority for registration of alteration of such registered capital and issue relevant announcement.

The registered capital of the Company shall be deducted by the total nominal value of the shares thus cancelled.

**Article 34**      Unless the Company is in the process of liquidation, the repurchase of issued shares by the Company shall be subject to the following provisions:

(1)   if the shares are repurchased at face value, payment may be made out of the balance of the distributable profits in the books of the Company and from the proceeds of fresh issue of new shares for the purpose of repurchase of issued shares;

(2)   if the shares are repurchased at a premium, payment up to the face value may be made out of the balance of the distributable profits in the books of the Company and from the proceeds of fresh issue of new shares for the purpose of repurchase. Payment of the portion in excess of the face value shall be effected in the following manner:

1.   if the repurchased shares were issued at par value, payment shall be made out of the balance of distributable profits in the books of the Company;

2.   if the repurchased shares were issued at a premium, payment shall be made out of the balance of distributable profits in the books of the Company and from the proceeds of fresh issue of new shares for the purpose of share repurchase provided that, the amount paid out of the proceeds of fresh issue of new shares shall not exceed the aggregate of premium received on the issue of the shares repurchased, nor the amount of premium account or capital surplus reserve fund account of the Company at the time of such repurchase (including the amount of the premium received on the fresh issue of new shares).

(3)   The payment for the following shall be made out of the distributable profits of the Company:

    1.   to acquire rights to repurchase its shares;

    2.   to amend the contract of the repurchase of its shares;

    3.   to release any of its obligations under the repurchase contract.

(4)   After the registered capital of the Company has been diminished by the total nominal amount of the shares so cancelled pursuant to relevant provisions, the amount which has been deducted from the distributable profits and used for repurchasing the nominal value of the shares shall be credited to the premium account or the capital surplus reserve fund account of the Company.

## CHAPTER 5 FINANCIAL ASSISTANCE FOR THE ACQUISITION OF THE SHARES OF THE COMPANY

**Article 35**    No financial assistance shall be provided at any time and in any manner by the Company and its subsidiaries to any person acquiring or intending to acquire the shares of the Company. The person(s) acquiring the shares of the Company aforesaid shall include the person(s) who undertake(s), directly or indirectly, obligations as a result of an acquisition of shares of the Company.

No financial assistance shall be provided at any time and in any manner by the Company and its subsidiaries to reduce or release the obligations of the said person(s) undertaking such obligations.

The article shall not apply to the circumstances stated in Article 37 in this Chapter.

**Article 36**      The financial assistance referred to in this Chapter shall include but not limited to the assistance in the following ways:

(1)   gift;

(2)   guarantee (including provision by the guarantor of an undertaking or property to secure the performance of obligations by the obligor), indemnity (other than an indemnity in respect of the Company's own neglect or default) or a release or waiver thereof;

(3)   provision of loan or making of a contract under which the obligations of the Company are to be fulfilled before the obligations of another party to the contract, the novation of the loan or changes of the parties to the contract and the assignment of rights under the loan and the contract;

(4)   any other financial assistance given by the Company when the Company is insolvent or has no net assets or when its net assets would thereby be reduced to a material extent.

The undertaking referred to in this Chapter shall include the undertaking of obligations by the obligator of contract or arrangement (whether the contract or arrangement is enforceable or to be undertaken individually or jointly with others) or changes in his financial position in any manner.

**Article 37**      The following activities shall not be deemed to be prohibited by Article 35 of this Chapter:

(1)   the provision of financial assistance is given in good faith in the interests of the Company and the principal purpose in giving such assistance is not for acquisition of shares in the Company, or the giving of the assistance is but an incidental part of a master plan of the Company;

(2)   distribution of the assets of the Company by way of dividends lawfully declared;

(3)   the allotment of bonus shares as dividends;

(4) a reduction of registered capital, repurchase of shares of the Company, adjustment of shareholding structure of the Company effected in accordance with the Articles of Association;

(5) the lending of money by the Company in the ordinary course of its business where the lending of money is part of the scope of business (only if the Company has net assets which are not thereby reduced or to the extent that those assets are thereby reduced, if the financial assistance is provided out of the distributable profits of the Company);

(6) the provision of money by the Company for contributions to the share option scheme for employees (only if the Company has net assets which are not thereby reduced or to the extent that those assets are thereby reduced, if the financial assistance is provided out of the distributable profits of the Company).

## CHAPTER 6 SHARE CERTIFICATES AND REGISTER OF SHAREHOLDERS

**Article 38**   The shares issued by the Company shall be in registered form.

The share certificates of the Company shall contain the following major particulars:

(1) name of the Company;

(2) date of incorporation of the Company;

(3) class of the shares, nominal value and number of shares represented;

(4) serial number of the certificate;

(5) other items to be contained as required by the Company Law, the Special Regulations and the stock exchange on which the shares of the Company are listed.

— 17 —

**Article 39**     Share certificates shall be signed by the Chairman and also be signed by other senior management of the Company if required by the stock exchange on which the shares of the Company listed. The share certificates shall come into effect upon the seal of the Company has been affixed or being affixed in the mode of printing. The affixing of the Company seal on the share certificates shall require the authority of the broad of Directors previously given. The signature of the Chairman or other relevant senior management of the Company may be affixed to share certificates in the mode of printing.

**Article 40**     The Company shall keep a register of shareholders and enter therein the following particulars:

(1)   name, address (residential), occupation or description of each Shareholder;

(2)   class and number of shares held by each Shareholder;

(3)   the amount paid or payable for the shares held by each Shareholder;

(4)   the serial number of the shares held by each Shareholder;

(5)   the date on which person was entered in the register as a Shareholder;

(6)   the date on which any person ceased to be a Shareholder.

Unless there is evidence to the contrary, the register of shareholders shall be sufficient evidence of shareholdings in the Company.

**Article 41**     The Company may, in accordance with the agreement or understanding between the authorities of the State Council responsible for securities and overseas securities supervisory authorities, keep the register of shareholders in relation to overseas listed foreign shares outside the PRC and shall appoint overseas agencies to manage such register. The original register of shareholders of H shares shall be kept in Hong Kong.

Copies of the register of shareholders in relation to overseas listed foreign shares shall be kept at the seat of the Company. Appointed overseas agencies shall from time to time guarantee that the original register of shareholders in relation to overseas listed foreign shares and the copies thereof shall be consistent.

Where there is any inconsistency between the original register of shareholders of overseas listed foreign shares and the copies thereof, the original shall prevail.

**Article 42**    The Company shall have a complete register of shareholders.

The complete register of shareholders shall contain the following parts:

(1)    register of shareholders other than those provided in paragraphs (2) and (3) below kept at the seat of the Company;

(2)    register of shareholders in relation to overseas listed foreign shares kept at the place of the overseas stock exchange on which those shares are listed;

(3)    register of shareholders kept in other place(s) as the Board of the Company thinks fit for the purpose of listing the shares of the Company.

**Article 43**    Different parts of the register of shareholders shall not overlap. No transfer of any shares registered in any part of the register of shareholders, shall during the continuance of that registration, be registered in any other part of the register of shareholders.

Changes or corrections to any part of the register of shareholders shall be made in accordance with the laws of the place where the register is kept.

**Article 44**     All the fully paid H shares shall be freely transferable pursuant to the Articles of Association of the Company. However, the Board may refuse to recognize any instrument of transfer without assigning any reason thereof, unless the following conditions are satisfied:

(1)  a sum of HK$2.50 or such higher amount approved by the Hong Kong Stock Exchange has been paid to the Company for registering any instrument of transfer or other documents related to or affecting the ownership of any shares;

(2)  the instrument of transfer only involves overseas foreign shares listed in Hong Kong Stock Exchange;

(3)  the stamp duty in respect of the instrument of transfer has been paid;

(4)  relevant share certificates and such other evidence as the Board may reasonably require to show the right of the transferor to make the transfer have been produced;

(5)  if the shares are transferred to joint holders, the number of joint holders shall not exceed four (4);

(6)  the shares concerned are free of any lien in favour of the Company.

If the Company refuses to register any transfer of shares, the Company shall provide to the transferor or and the transferee of the shares a notification of refusal in relation to registration of shares within two (2) months from the date of due application for registration.

The shares held by the promoters cannot be transferred within three (3) year since the establishment of the Company.

The Directors, supervisors, general manager, assistant general manager and other senior management members shall report the Company of the shares of the Company held by them and shall not transfer shares during their terms of office.

Any shareholder of the overseas listed foreign invested shares maytransfer all of part of the Company's shares it holds by way of a written transfer deed as usually used at the location of the listing of the overseas listed foreign invested shares, or by way of signed or printed signed transfer deed. The above mentioned transfer may adopt the standard delivery form specified by the Hong Kong Stock Exchange. The transfer deed shall be signed in the form of handwriting of printed handwriting of the transferor and the transferee.

**Article 45**   No registration of the changes relating to share transfer shall be made in the register of shareholders within thirty (30) days prior to the general meeting or within five (5) days prior to the record date for determining the distribution of dividends.

**Article 46**   In the event the Company decides to convene a general meeting, distribute dividends, liquidate or engage in activities which require determining shareholdings, the Board shall fix a date as a record date for determining the shareholdings. The shareholders of the Company shall be those shareholders registered on the register at the end of the record date.

**Article 47**   Any person who does not agree to the register of shareholders and requests to have his name registered thereon or removed there from may apply to the court of law having jurisdiction on the register for rectification of the register.

**Article 48**   Any Shareholder whose name is registered in the register of shareholders or any person who requests to have his name registered in the register of shareholders has lost his share certificate (the "Original Certificate"), may apply to the Company for issuing new share certificate in respect of such shares (the "Relevant Shares").

Domestic Shareholder who lost his share certificate may apply for the issue of new share certificate in accordance with Section 144 of the Company Law.

Holder of overseas listed foreign invested shares who lost his share certificate may apply for the issue of new share certificate in accordance with the laws, stock exchange rules and other relevant regulations of the place where the original register of shareholders in relation to overseas listed foreign shares is kept.

Application for replacement of lost share certificate made by a holder of H shares shall be subject to the following requirements:

(1)   Applicant shall submit the application in standard form prescribed by the Company together with a notarial certificate or statutory declaration. The notarial certificate or statutory declaration shall include the reason of the application made by the applicant, the circumstances under which the share certificate was lost and the supporting evidence and a declaration that no other person shall be entitled to register as a Shareholder in respect of the Relevant Shares.

(2)   No declaration made by other person other than the applicant has been received by the Company for registration as a Shareholder of the Relevant Shares prior to the determination of the Company to issue new certificate.

(3)   If the Company determines to issue new certificate to the applicant as replacement, it shall publish a notification for issuing new certificate for replacement purpose in the newspaper designated by the Board and the period for such notification shall be ninety (90) days and such notification shall be published at least once every thirty (30) days.

(4)   Prior to the publishing of the notification for issuing new certificate for replacement purpose, the Company shall submit a copy of the notification to be published to the stock exchange where its shares are listed. The notification may be published upon the reply of such stock exchange confirming that the said notification has been exhibited in such stock exchange. The period for the exhibition of the notification in such stock exchange shall be ninety (90) days.

If the consent for the application for replacement of the certificate has not been obtained from the registered Shareholder of the Relevant Shares, the Company shall send to the said Shareholder by post a copy of such notification to be published.

(5)   Upon the expiry of ninety (90) days for the publication and exhibition of the notification as provided in paragraphs (3) and (4) above and no objection has been received from any person against the replacement of certificate, new share certificate shall be issued to the applicant based on his application.

(6)   Where the Company issues new share certificate pursuant to this article, it shall forthwith cancel the Original Certificate and make such entry in the register of shareholders in order to record such cancellation and issue.

(7)   All expenses relating to the cancellation of Original Certificate and issuing new share certificate by the Company shall be borne by the applicant. The Company shall be entitled to refuse to take any action until the applicant can provide reasonable indemnity.

**Article 49**   Upon the issue by the Company of new share certificate pursuant to the provisions of the Articles of Association, the name of the bona fide purchaser who acquires the Relevant Shares or the person who subsequently registered as the Shareholder of the said shares (as a bona fide purchaser) shall not be removed from the register of shareholders.

**Article 50**   The Company shall assume no liability for any loss incurred by any person as a result of the cancellation of the Original Certificate or in issuing new share certificate, unless it can be proved by such person that the Company is fraudulent.

## CHAPTER 7 RIGHTS AND OBLIGATIONS OF SHAREHOLDERS

**Article 51**    shareholders of the Company shall be the persons who hold the shares of the Company in accordance with the laws and have their names registered in the register of shareholders.

shareholders shall enjoy the rights and assume the obligations according to the class of and number of shares held by them. shareholders holding the same class of shares shall enjoy the same rights and assume the same obligations.

As for joint shareholders, if any of the joint shareholders dies, only the surviving joint shareholders shall be deemed by the Company as owners of the relevant shares, but the Board may, for the purpose of amending the shareholders' register, require the surviving joint shareholders to provide a death certificate as it deems appropriate. Of the joint holders of any shares, only the foremost joint Shareholder in the shareholders' register shall have the right to take possession of the relevant share certificates, receive notices from the Company, and attend and exercise the voting rights at general meetings, and any notice served to the said person shall be deemed as having been served to all the joint holders of the relevant shares.

**Article 52**    A holder of ordinary shares of the Company shall have the following rights:

(1)  to claim dividends and distribution in any other form in proportion to the number of shares held;

(2)  to attend or to appoint proxy to attend general meetings in accordance with the laws and to exercise his/her voting rights;

(3)  to supervise and manage the business activities of the Company and to put forward proposals and raise inquiries;

(4)  to transfer, give away or charge the shares held in accordance with the laws, administrative regulations and the Articles of Association of the Company;

(5)   to receive information as provided in the Articles of Association of the Company, including:

    1.   the right to a copy of the Articles of Association upon payment of the cost thereof;

    2.   upon payment of reasonable charges, the right to inspect and make copies of:

        (i)   all parts of the register of shareholders;

        (ii)   personal particulars of the Directors, supervisors, general manager, assistant general manager and other officers of the Company, including:

            (a)   present forename and surnames and any former forename or surname and any aliases;

            (b)   principal address (residential);

            (c)   nationality;

            (d)   occupation and all other part-time occupation and positions;

            (e)   identification documents and its number.

        (iii)   state of the share capital of the Company;

        (iv)   reports showing the total nominal value and number of shares repurchased by the Company since the end of the last financial year, quantity, the highest and the lowest price paid and the aggregate amount paid by the Company in respect of each class of its shares repurchased;

        (v)   minutes of the general meetings;

(6)  in the event of the termination or liquidation of the Company, the right to participate in the distribution of surplus assets of the Company in accordance with the number of shares held;

(7)  other rights conferred by the laws, administrative regulations and the Articles of Association of the Company.

The Company shall not, by reason only of the failure of persons who directly or indirectly have interests in the Company's shares to disclose their interests prior to the exercise of the rights attached to the shares, freeze or impair by other means the rights attached to the shares.

**Article 53**   shareholders demanding inspection of the relevant information or copies of the materials mentioned in the preceding provision shall provide to the Company written documents evidencing the class and number of shares of the Company they hold. Upon verification of the Shareholder's identity, the Company shall provide such information at the Shareholder's request.

**Article 54**   A holder of ordinary shares of the Company shall undertake the following obligations:

(1)  to comply with the Articles of Association;

(2)  to pay subscription monies according to the number of shares subscribed and the method of subscription;

(3)  other obligations imposed by the laws, administrative regulations and the Articles of Association of the Company;

Shareholder shall not be liable to make further contribution to the subsequent increase in share capital other than the terms as agreed by the subscriber of the relevant shares on subscription.

**Article 55**     In addition to the obligations imposed by the laws and administrative regulations or required by the listing rules of the stock exchange on which the shares of the Company are listed, the controlling Shareholder (as defined in accordance with the following article), in exercising the power as a Shareholder, shall not exercise his voting rights in a manner prejudicial to the interests of all or some part of the shareholders when making decision on the following matters:

    (1)  to relieve a Director or supervisor of his duty to act honestly in the best interests of the Company;

    (2)  to approve the expropriation by a Director or supervisor (for his own benefit or for the benefit of another), in any guise, the assets of the Company, including (but not limited to) an opportunity beneficial to the Company;

    (3)  to approve the expropriation by a Director or supervisor (for his own benefit or for the benefit of another) the individual rights of other shareholders, including (but not limited to) rights to distributions and voting rights save and except restructuring of the Company submitted for approval by the shareholders in general meeting in accordance with the Articles of Association.

**Article 56**     A controlling Shareholder referred to in the preceding article means a person who satisfies any one of the following conditions:

    (1)  he may alone or acting in concert with others has the power to elect more than half of the Directors;

    (2)  he may alone or acting in concert with others has the power to exercise 30% (including 30%) or more of the voting rights in the Company or control the exercise of 30% (including 30%) or more of the voting rights in the Company;

(3)  he may alone or acting in concert with others holds 30% (including 30%) or more of the issued shares of the Company;

(4)  he may alone or acting in concert with others has de facto control of the Company in any other manner.

## CHAPTER 8 GENERAL MEETINGS

**Article 57**   The general meeting shall be the source of authority of the Company and shall exercise its powers according to the laws.

**Article 58**   The general meeting shall have the following powers:

(1)  to determine the business policies and investment plans;

(2)  to elect and replace Directors and to determine the remuneration of the Directors;

(3)  to elect and replace supervisors who are not the representatives of the employees and to determine the remuneration of such supervisors;

(4)  to consider and to approve the report of the Board;

(5)  to consider and to approve the report of the supervisory committee;

(6)  to consider and to approve the annual financial budgets and final accounts;

(7)  to consider and to approve the plan for profit distribution and plan for making up losses;

(8)  to approve the increase in or reduction of the registered capital of the Company;

(9)  To pass resolutions on the issues including consolidation, split, dissolution and liquidation of the Company.

(10) to approve the issue of debentures of the Company;

(11) to approve the appointment, dismissal or discontinuance of appointment of the accounting firm;

(12) to amend the Articles of Association;

to consider the motions put forward by Shareholder(s) representing 3% (including 3%) or more of the Company's shares with voting rights;

(13) to consider other issues that shall be determined by the general meeting as stipulated by the laws, administrative regulations and the Article of Association.

The general meeting may authorize or entrust the Board to handle the authorized and entrusted matters.

**Article 59**   Without the prior approval of the shareholders' general meeting, the Company shall not enter into contract with any person other than directors, supervisors, general manager, deputy general manager and other senior managers, with the management of all or important business handed over to the said person.

**Article 60**   The shareholders' general meeting is divided into annual great meeting and extraordinary great meeting. The shareholders' general meeting shall be convened by the Board . Annual great meeting, held once a year, shall be held within six months after the end of the last fiscal year.

Under the following circumstances, extraordinary great meeting of shareholders shall be held by the Board within two months:

(1) The number of directors is less than the provision of Company Law or less than two-thirds of the amount required by the Articles of Association;

(2) The accumulated losses amounted to one-third of the total share capital;

— 29 —

(3)   shareholders solely or collectively holding more than 10% (including 10%) of publicly issued and voting shares of the Company request the convening of extraordinary great meeting in written form;

(4)   The Board considers necessary or Supervisory Committee proposes to convene;

(5)   More than two (including two) independent directors propose to convene.

In relation to (3), (4) (5), the proposed topics of the meeting convener should be included in the agenda of the meeting.

**Article 61**   The shareholders' general meeting being held, the notice shall, in accordance with the provisions of Article 65, be issued 45 days before the meeting, to notify all the shareholders on record the matters to be discussed at the meeting and meeting site and date. The shareholders intended to attend the shareholders' general meeting shall reply in writing to the Company 20 days before the meeting.

**Article 62**   At annual great meeting of the shareholders, shareholders either solely or collectively holding more than three percent (including three percent) of the Company's total voting shares, shall have the right to put forward a new proposal in writing to the Company, and the Company should put the proposed matters that are within the purview of the shareholders' general meeting in the agenda of the meeting.

**Article 63**   The proposals at the shareholders' general meeting shall meet the following conditions:

(1)   The content has no conflict with the provisions of laws, regulations, and belongs to the Company's business scope and terms of reference of the general meeting;

(2)   There are clear topics and concrete matters for resolution;

(3)   It shall be submitted or served in writing to the Board .

**Article 64**     The Company shall convene the general meeting if the written replies received from the shareholders by the Company twenty (20) days before the date of the meeting show that the number of shares carrying voting rights represented by the shareholders who intend to attend is more then one-half of the total number of shares with voting rights, failing which the Company shall, within five (5) days, inform the shareholders again in the form of public notice the proposed matters for consideration at the meeting and the date and venue of the meeting. General meetings may be convened after such notification has been published.

Resolution(s) should not be passed in general meetings on matters that are not stated in the notice of meeting.

**Article 65**     Notice of general meetings shall satisfy the following requirements:

(1)   it shall be in writing or by electronic means or such other means as provided or permitted by the relevant laws or regulations or listing rules or regulatory authorities of the place of listing of the Company;

(2)   it shall specify the place, date and time of the meeting;

(3)   it shall state the matters to be discussed at the meeting;

(4)   it shall provide such information and explanation as are necessary for the shareholders to make an informed decision on the matters to be discussed. Without limiting the generality of the foregoing, where a proposal is made to amalgamate the Company with another, to repurchase shares of the Company, to reorganize the share capital, or to restructure the Company in any way, the terms of the proposed transaction must be provided in detail together with the proposed agreement (if any), and the causes and effects must be properly explained;

(5)   it shall contain a disclosure of the nature and extent, if any, of material interests of any Director, supervisor, general manager, assistant general manager or other senior management members in the matters to be discussed and the effect of the matters to be discussed on them in their capacity as shareholders in so far as it is different from the effect on the interests of the shareholders of the same class;

(6)   it shall contain the full text of any special resolution proposed to be passed at the meeting;

(7)   it shall contain conspicuously a statement that a shareholder entitled to attend and vote at the meeting shall be entitled to appoint one or more proxies to attend such meeting and to vote thereat instead of him and that a proxy need not be a shareholder;

(8)   it shall specify the time and place for lodging proxy forms for the relevant meeting;

**Article 66**   The notice of a general meeting shall be sent to shareholders, regardless of whether a shareholder is entitled to vote at the meeting, by hand or by pre-paid post, the service address shall be the address on the register of shareholders; or it shall be in writing or by electronic means or such other means as provided or permitted by the relevant laws or regulations or listing rules or regulatory authorities of the place of listing of the Company. As for domestic shareholders, the notice of a general meeting may be given in the form of announcement.

The announcement referred to above shall be published forty-five (45) days to fifty (50) days prior to the date of the meeting in a newspaper or several national newspapers prescribed by the authorities of the State Council responsible for securities. Once published, all domestic shareholders shall be deemed to have received the relevant notice of the general meeting. The Chinese and English version of such announcements shall be published on a major Chinese newspaper and one English newspaper in Hong Kong on the same day.

**Article 67**   The accidental omission to give a notice of a meeting to or the non-receipt of notice of a meeting by any person who is entitled to receive notice shall not invalidate the meeting and the resolutions passed at such meeting.

**Article 68**     Any Shareholder who is entitled to attend the general meeting and to vote thereat shall be entitled to appoint one or more persons (whether a Shareholder) as his proxy to attend and vote on his behalf. Such proxy or proxies shall exercise the following rights pursuant to the appointment made by the appointing Shareholder:

(1)   the same right as the Shareholder to speak at the general meeting;

(2)   authority to demand or join in demanding a poll;

(3)   Exercise the right to vote by a show of hands or a poll, but the Shareholder proxy may only exercise the right to vote by a poll when more than one proxy is appointed.

Where a Shareholder is a recognized clearing house ("Recognized Clearing House")(or its nominee(s)) as defined in the laws of Hong Kong, it may authorize such person or persons as it thinks fit to act as its representative(s) at any general meeting of the Company or at any meeting of any class of shareholders provided that if one or more person is authorized, the authorization shall specify the number and class of shares in respect of which each such person is so authorized. Such authorized person shall be entitled to exercise the same rights and power on behalf of the recognized clearing house (or its nominee(s)) which he or they represent as if such person is an individual Shareholder of the Company.

**Article 69**     The instrument appointing a proxy by shareholders shall be in writing under the hand of the appointer or his attorney duly authorized in writing; where the appointer is a legal person, either under the seal of such legal person or under the hands of its Director or executive duly authorized or attorney duly authorized. Such written instrument shall specify the number of shares held by the appointer as represented by the proxy. In case an appointer appoints several proxies, the proxy form shall specify the number of shares as represented by each proxy.

**Article 70**     The instrument appointing a proxy shall be deposited at the seat of the Company or such other place as is specified in the notice of meeting not less than twenty-four (24) hours before the time appointed for the meeting at which the person named in the instrument proposes to vote or, twenty-four (24) hours before the time appointed for taking of the poll. Where such instrument is signed by a person under a power of attorney or other authority on behalf of the appointer, that power of attorney or other authority shall be notarized. A notarially certified copy of that power of attorney or other authority together with the instrument appointing a proxy shall be deposited at the seat of the Company or such other place as is specified in the notice of the meeting.

**Where the** appointer is a legal person, its legal representative or other persons authorized by the resolutions of the Board or other decision-making organ to act as its representatives may attend the general meeting of the Company as a representative of the appointer.

**Article 71**     Any form issued to a Shareholder by the board for use by him for appointing a proxy shall be in such as to enable the Shareholder, according to his intention, to instruct the proxy to vote in favor or against each resolution dealing with matters to be resolved at the meeting. Such a form shall contain a statement that in default of such instructions, the proxy may vote as he thinks fit.

**Article 72**     The Company is entitled to ask the proxy who represents an individual Shareholder to attend the general meeting to provide his identification document as well as the power of attorney signed by the appointer or the representative authorized by the appointer.

In the case of the Shareholder is a legal person and appoints its legal representative to attend the meeting, the Company is entitled to ask the legal representative to provide the corporate person's identification document and a valid copy of its qualification as a corporate person.

**Article 73**  Where the appointer has deceased, incapacitated to act, withdrawn the appointment or the power of attorney, or where the relevant shares have been transferred prior to the voting, a vote given in accordance with the letter of authorization shall remain valid provided that no written notice of such event has been received by the Company prior to the commencement of the relevant meeting.

**Article 74**  Resolutions of the general meeting shall be divided into ordinary resolutions and special resolutions.

Ordinary resolution of a general meeting shall be passed by more than one-half of the voting rights held by the shareholders (including proxies) present at the meeting.

Special resolution of a general meeting shall be passed by more than two-thirds of the voting rights held by the shareholders (including proxies) present at the meeting.

**Article 75**  For the purpose of voting at the general meeting, a Shareholder (including proxy) shall exercise voting rights in accordance with the number of shares carrying voting rights represented by him/her. Each share shall have one vote.

**Article 76**  The shareholders' general meeting shall be voted by hands, unless the following persons request to vote by ballot before or after voting by hands:

(1)  The Chairman of the meeting;

(2)  At least two voting shareholders or proxies thereof;

(3)  One or more of the shareholders (including proxies) solely or collectively holding more than 10% (including 10 percent) of the voting shares at the meeting.

Unless it was suggested to vote by ballot, the Chairman of the meeting shall announce the results of a vote by show of hands, and write down in the minutes, as a final basis, without having to prove for the adopted resolutions the number of votes for or against the resolution or the respective proportion.

The request of a poll can be withdrawn by the proposer.

**Article 77**   If the matters to be voted for by ballot are the Election of the Chairman or the suspension of the meeting, the vote shall be immediately conducted; as for other matters that are required to vote by ballot, the President shall decide when to hold the vote. The meeting can proceed to discuss other matters. The voting results shall be still considered resolutions adopted by the meeting.

**Article 78**   During the vote, shareholders (including proxies thereof) who hold two or more than two voting rights shall not necessarily vote all his votes for yes or no.

**Article 79**   When the no votes and the yes votes are equal, whether by hands or by ballot, the Chairman of the meeting shall be entitled with one more vote.

**Article 80**   The following matters shall require approval of an ordinary resolution at a general meeting:

(1)   the working reports of the Board and the supervisory committee;

(2)   profit distribution plan and plan for making up losses prepared by the Board;

(3)   the appointment and removal of the members of the Board and the supervisory committee as well as their remuneration and method of payment;

(4)   annual financial budgets and statements of final accounts, balance sheets, profit statements and other financial statements of the Company;

(5)   any other matters except those passed by special resolutions as prescribed by the laws, administrative regulations or the Articles of Association.

**Article 81**    The following matters shall require the sanction of a special resolution at general meetings:

   (1)   the increase in and reduction of the share capital of the Company, and the issue of any class of shares, warrants or other similar securities;

   (2)   the issue of debentures of the Company;

   (3)   the demerger, amalgamation, dissolution and liquidation of the Company;

   (4)   amendments to the Articles of Association;

   (5)   any other matters that are deemed to have a significant impact on the Company as approved by an ordinary resolution of the general meeting and so necessitate a special resolution for approval.

**Article 82**    When shareholders request to convene extraordinary general meeting or any specific meeting, the following procedures shall be followed:

   (1)   two or more shareholders who collectively hold more than 10% (including 10 percent) of the voting shares at the proposed meeting, can sign one or a few copies of written requests with the same format and content, with the agenda of the meeting clearly stated, to be submitted to the Board to convene a temporary shareholders' general meetings or any specific meetings. Board shall, after receipt of the aforementioned written request, convene a temporary shareholders' general meeting or class meetings as soon as possible. The above-mentioned number of shares held by shareholders shall be calculated on the day of the written request.

   (2)   If the Board, within thirty days after receipt of the aforementioned written request, fails to issue a notice to convene meetings, the shareholders who have made the said request shall have the right to convene the meeting by themselves within four months after the Board received the request, using the same procedure as the Board shall convene the meeting as possible.

If the shareholders convene the meeting by themselves due to the Board's failure to convene the meeting after receiving the aforementioned requirement, its reasonable costs incurred shall be borne by the Company, and the Company shall deduct it from the owed payment to negligent directors .

**Article 83**   The shareholders' general meeting shall be convened by the Chairman of the Board and the Chairman of the Board shall also be the Chairman of the meeting; if the Chairman of the Board is unable to attend the meeting, the deputy Chairman of the board shall take the job; if both Chairman and Deputy Chairman are unable to attend the meeting, a member of the board of the Company shall be jointly recommended by half or more members of the board to convene the meeting and serve as Chairman of the meeting on its behalf; if no Chairman is appointed to the meeting, shareholders attending the meeting can elect a Chairman; if for any reason, shareholders can not elect the Chairman, the Chairman should be the shareholder (including proxies thereof) present at the meeting and holding the most voting shares.

**Article 84**   The chairman of the meeting shall be responsible for determining whether a resolution of the general meeting is passed or not and his decision shall be final and conclusive and the same shall be announced at such meeting and recorded in the meeting minutes.

**Article 85**   If the chairman of the meeting has any doubt as the result of a resolution put to the vote at the meeting, he may take a poll vote. If the chairman of the meeting fails to take a poll vote any Shareholder who is present in person or by proxy and who objects to the results announced by the chairman of the meeting may demand a poll vote immediately after the declaration of the result, and the chairman shall take a poll vote forthwith.

**Article 86**   Where there is vote counting at the general meeting, the counting results shall be recorded in the minutes. The minutes of the meeting together with the attendance book for shareholders' signing and the proxy forms for proxies attending the meeting shall be kept at the residence of the Company.

**Article 87**    A Shareholder shall be entitled to inspect copies of minutes of any general meeting free of charge during the business hours of the Company. If the Shareholder demands from the Company a copy of such minutes, the Company shall send him the copy within seven (7) days after having received reasonable charges.

**Article 88**    If any Shareholder who may not exercise any voting rights or shall only vote for or against a particular resolution under the Listing Rules casts a vote, in person or by proxy the vote of such Shareholder in violation of the above limitation and restriction shall not be taken into account when determining the voting results.

## CHAPTER 9 SPECIAL PROCEDURES
## FOR VOTING BY CLASS SHAREHOLDERS

**Article 89**    shareholders of different classes of shares shall be classified as class shareholders.

Class shareholders shall have rights and shall undertake obligations pursuant to the provisions of the laws, administrative regulations and the Articles of Association.

**Article 90**    The rights attached to any class of shares may be varied or abrogated with the sanction of a special resolution passed at the general meeting and by holders of shares of the affected class passed at a separate general meeting of the holders of shares of the class convened in accordance with Article 92 to Article 96 respectively.

**Article 91**    The following shall be considered as a variation or abrogation of the rights of class shareholders:

(1)   to increase or reduce the number of shares in that class or to increase or reduce the number of shares in a class of shares which have rights on voting, distribution or other privileges equal or superior to that class of shares;

(2)   to exchange all or a portion of shares of that class for shares of another class, or to exchange all or a portion of the shares of another class for shares of that class or to grant the rights to exchange the same;

(3)   to cancel or reduce the rights to claiming all the accrued dividends or cumulative dividends of shares of that class;

(4)   to reduce or cancel the preferential rights of that class to claim the dividends or the preference to distribution of assets upon the liquidation of the Company;

(5)   to increase, cancel or reduce the rights to conversation of shares, options, voting rights, rights of transfer, pre-emptive rights and the rights to acquire the securities of the Company of that class;

(6)   to cancel or reduce the rights to receive the monies payable by the Company in a particular currency of that class;

(7)   to create a new class of shares which have the rights to voting, distribution or other privileges equal or superior to that class of shares;

(8)   to restrict or to impose more restrictions on the transfer or ownership of that class of shares;

(9)   to issue options or rights on subscription for or conversion of shares into that class or another class of shares;

(10) to increase the rights and privileges of another class of shares;

(11) to re-structure the Company in such a way that different class shareholders will undertake disproportionate obligations under the proposed restructuring;

(12) to vary or abrogate the provisions of in this Chapter.

**Article 92**   The class shareholders so affected, whether or not otherwise having voting rights at a general meeting, shall be entitled to vote at the class meeting involving matters provided in items (2) to (8) and (11) to (12) of Article 91, provided that any interested shareholders shall not be entitled to vote at that class meeting.

The meaning of "interested Shareholder" as referred to in the preceding paragraph shall be as follows:

(1)   Where the Company has made a repurchase offer to all shareholders in the same proportion in accordance with the provisions of Article 30 of the Articles of Association of the Company or repurchases its shares on a stock exchange through open transactions, "interested Shareholder" shall mean the controlling Shareholder as defined in Article 56 of these Articles of Association;

(2)   Where the Company repurchases its shares by way of an agreement otherwise than on a stock exchange in accordance with the Articles of Association, "interested Shareholder" shall mean the Shareholder to which the agreement relates;

(3)   In the case of a restructuring of the Company, "interested Shareholder" shall mean a Shareholder who undertakes obligations by a lower proportion than that of other shareholders of the same class, or a Shareholder who holds interests different from those held by other shareholders of the same class.

**Article 93**   Resolution of a class meeting shall be passed by more than two-thirds of the shares with voting rights held by the class shareholders who, according to Article 92 are entitled to vote at that class meeting.

**Article 94**   The Company shall, in accordance with the provisions of Article [65] of the Articles, in forty-five (45) days before the date of class meeting of shareholders, send written notice of the class meeting and inform all registered shareholders of that class of the matters to be considered at the class meeting and the date and venue of the class meeting. Those shareholders of the class who intend to attend shall send the written reply to the Company twenty (20) days before the class meeting.

Where the number of class shares held by those shareholders who intend to attend and who have the right to vote is more than one-half of the total number of shares of that class with the voting rights, the Company shall convene that class meeting, failing which the Company shall, within five (5) days, inform the shareholders of the class again in the form of public notice the proposed matters for consideration at the class meeting and the date and venue of the class meeting. Class meeting be convened after such notification.

**Article 95**   The notice of a class meeting shall only be given to the shareholders who are entitled to vote at such meeting only.

The proceedings of a class meeting shall be as similar as possible as that of a general meeting. The provisions in the Articles of Association relating to the proceedings of a general meeting shall apply to the class meeting.

**Article 96**   In addition to holders of other classes of shares, domestic shareholders and shareholders of overseas listed foreign shares shall be deemed to be different classes of shareholders.

The special procedures for voting of class shareholders shall not apply to the following circumstances:

(1)   where, upon approval by a special resolution passed at a shareholders general meeting, the Company issues domestic shares and overseas listed foreign shares either separately or concurrently once every twelve (12) months, and the total amount of the domestic shares and overseas listed foreign shares so issued do not exceed 20% of their total issued amount, respectively;

(2)   where the Company plans to issue domestic shares and overseas listed foreign shares on establishment, to be implemented within fifteen (15) months from the date of approval by the securities authority under the State Council.

## CHAPTER 10 THE BOARD

**Article 97**    The Company shall establish a Board, which shall comprising twelve (12) Directors, including (1) Chairman, one (1) Vice Chairman and ten (10) Directors.

The Board is independent of the controlling organizations (herein meaning those corporations, enterprises or institutions with the status of legal person which control the Company).

The external Directors (herein meaning those Directors who do not hold office in the Company) shall represent more than 50% (including 50%) of the members of the Board, of which two (2) or more shall be Independent Directors (herein meaning those Directors who are independent to the shareholders and do not hold office in the Company).

**Article 98**    Directors shall be elected by the general meeting for a term of three (3) years. Upon the expiry of the term of office, the Directors may be eligible for re-election.

Directors elected as additional or supplemented Directors at a general meeting shall hold office from the effective date of such election to the expiry of the term of such session of the Board.

A written notice stating the intention to nominate a candidate for directorship and the nominee's consent to the nomination shall be submitted to the Company after the dispatch of the notice of general meeting at which the election of Directors will be held and which shall not be less than seven (7) days before the convening of general meeting, and the written notice period shall not be less than seven (7) days.

The Chairman and Vice Chairman shall be elected or removed by more than half of all Directors. The Chairman and Vice Chairman shall serve for a term of three (3) years from the date of appointment and may be re-elected and re-appointed for consecutive terms.

— 43 —

Subject to the compliance with relevant laws and administrative regulations, any Director may be removed during his/her service term by way of an ordinary resolution at the general meeting (however, any claim for compensation pursuant to any contract shall not be prejudiced).

Any person who has been appointed by the Board to fill any casual vacancy in the office of the Board or serve as an additional Director, his term of office shall expire at the next annual general meeting and such person shall be eligible for election for successive terms.

Not more than two (2) persons of the Chairman, Vice Chairman and executive Directors of the Company may be senior management (Chairman, Vice Chairman and executive Director) of the controlling organizations.

The Directors shall not be required to hold shares of the Company.

**Article 99**   The Board shall be responsible to the general meeting and shall have the following powers and duties:

(1)   to be responsible for convening general meeting and to report on its work to the general meeting;

(2)   to implement resolutions of the general meeting;

(3)   to determine the business plans and investment proposals of the Company;

(4)   to prepare the annual financial budgets and final accounts of the Company;

(5)   to prepare plans for profit distribution and plans for making up losses for the Company;

(6)   to formulate the Company's plans for the increase or reduction of capital, issue of debentures of the Company;

(7)   To formulate proposals on amalgamation, demerger or dissolution of the Company

(8)   to decide on the internal management structure of the Company;

(9)   To appoint or dismiss the general manager of the Company; to appoint or dismiss senior management including assistant general manager and other senior management members (including person in charge of finance)    based on the nomination by the general manager, as well as to determine their remuneration issues;

(10) To formulate the basic management system of the Company;

(11) to formulate proposals for amendments of the Articles of Association;

(12) Any other authorities granted by the Articles of Association or the general meeting;

When the Board passes the resolutions described in the previous Clause, except for the resolutions in respect of the matters specified in Subsections (6), (7) and (11) above which shall be voted and approved by more than two-thirds or more of the Directors, the remaining resolutions shall be voted and approved by more than half of the Directors.

**Article 100**   If the Board proposes to dispose of the Company's fixed assets, where the aggregate of the amount or value of the consideration for the proposed disposal and where any fixed assets of the Company have been disposed of in the period of four (4) months immediately preceding the proposed disposal, the amount or value of the consideration for any such disposal in that period exceeds 33 per cent of the value of the fixed assets as shown in the latest balance sheet laid before the Company in general meeting held, the Board shall not dispose of or agree to dispose of the said fixed assets without the prior approval of the general meeting.

The proposed disposal of fixed assets referred to in this article shall include the acts of transferring certain interests in that assets but exclude the acts of charging that fixed assets by way of security.

The validity of the transaction on the disposal of fixed assets by the Company shall not be affected by the breach of paragraph 1 of this article.

**Article 101**   Upon authorization by the Board, the Chairman may make use of part of the terms of reference of the Board during the close of meetings. The authorization of the board of Directors shall be clear and detailed.

The Chairman shall have the following powers and duties:

(1)   to preside over the general meeting and to convene and preside over the meeting of the Board;

(2)   to examine the implementation of the resolutions of the Board;

(3)   to sign the securities issued by the Company;

(4)   other powers conferred by the Board.

Should the Chairman fail to perform his/her duties, he/she may designate one (1) Vice Chairman to perform the duties.

**Article 102**   The Board shall establish special committees.

The duties of special committees of the Board shall be determined by relevant regulations of the State and resolutions of the Board.

**Article 103**   The Board meetings shall be held at least twice every year and shall be convened by the Chairman. The notice for such meeting shall be given to all Directors ten (10) days in advance. In case of emergencies, an extraordinary Board meeting may be convened if proposed by shareholders with more than one-tenth of voting rights, more than one-third of Directors, two (including two) independent Directors or supervisors or the general manager of the Company.

The reasonable expenses incurred by the Directors for attending board meeting shall be borne by the Company. Such expenses include traveling expenses incurred by the Directors for traveling from his place to the meeting venue (if a Director's place is different from the meeting venue), food and board expenses during the meeting period, rental for the meeting venue and transport expenses for traveling to the meeting venue.

**Article 104**    Meeting and extraordinary meeting of the Board shall be convened in the following manners:

(1)    Where the time and place of regular meeting of the Board have been fixed by the Board in advance, no notice shall be served.

(2)    Where the time and venue to convene the meeting of the Board have not been decided upon by the Board in advance, the Chairman shall inform the Directors and supervisors of the time and venue of the meeting by telex, telegram, facsimile, electronic mail, express courier service, registered mail or by hand at least ten (10) days before the meeting.

(3)    If there is a need to hold a Board meeting in case of emergency, the Chairman shall ask the Secretary to the Board to, not less than five (5)  days and not more than ten (10) days prior to the day when the special Board meeting is held, inform all the Directors and supervisors the time and the place of the Board meeting by way of telegraph, telex, facsimile, electronic mail, courier, registered mail or by specially designated person.

(4)    The notice shall be in Chinese and, if necessary, an English version of the same shall be enclosed therein and the notice shall include agenda of the meeting. Any Director may waive the right to receive notice of the meeting of the Board.

**Article 105**    A Director shall be deemed to have received the notice of meeting if he is present at the meeting and does not raise the issue of the non-receipt of such notice prior to or at the time of the meeting commence.

**Article 106**    The meeting or extraordinary meeting of the Board may be held by conference telephone or similar communication equipment. So long as all the Directors participating at the meeting can clearly hear and communicate with each other, all such Directors present shall be deemed to be present in person at the meeting.

**Article 107**    The quorum of the meeting of the Board shall be more than one-half of the Directors (including those Directors who is entrusted to attend the meeting as stipulated by the Article 108 of the Articles of Association of the Company).

Each Director shall be entitled to cast one vote. Saved for the provisions stipulated otherwise in the Articles of Association of the Company, The Board shall pass a resolution upon the approval of more than half of the Directors.

Where the number of votes in favor and against are the same, the chair shall has to right the cast an extra vote.

Where a Director has any interest in the subject matter to be resolved at the meeting of the Board, such Director shall withdraw from the meeting, abstain from voting, shall not represent other Directors to exercise the voting right and shall not be taken into account in counting the quorum of Directors present at the meetings.

**Article 108**    A Director shall attend the meeting of the Board in person. Where the Director is unable to attend the meeting, he/she may appoint in writing another Director to attend the Board meeting on his/her behalf. The mandate shall be stated on the power of attorney

The proxy Director at the meeting shall exercise the Director's right within the scope of authorization. Any Director who fails to attend a meeting of the Board without appointing any proxy is deemed to have waived his voting right at the particular meeting.

**Article 109**   Board shall put the decisions made on matters discussed at the meeting into minutes, sighed by the directors attending the meeting, Secretary of the Board and the recorder. The directors shall be responsible for the resolution of the Board . If the resolution of the Board is against the laws, administrative regulations or the articles of association, the resolution from the shareholders' general meeting and results in the Company's severe losses, the directors participating in the resolution shall bear compensation responsibility to the Company; however, if any director is proved that the opposition was filed at the vote and recorded in the minutes, the said director shall be exempted from liability.

The comments made by the independent directors should be listed clearly in the resolution of the Board .

The minutes of board meetings shall, as the company file, be saved by the Secretary to the Board . Retention of the Board minutes is for 15 years.

**Article 110**   Written motions can be used by the Board in lieu of the Board meeting, but the draft of the motion shall be served by hand, mail, or fax to every Director. if the written motion has been served to all directors and the number of directors who sign for consent on one or a few copies of the draft with the same format and content reaches the quorum for relevant decisions, the motion shall, after being served to the Secretary to the Board in the manners described above, become the resolution of the Board , and the Board meeting is no longer required to convene.

## CHAPTER 11 SECRETARY TO THE BOARD OF THE COMPANY

**Article 111**   The Company shall have Secretary to the Board. The Secretary is a senior management of the Company.

The management of the controlling entity shall not serve as the Secretary to the Board concurrently.

**Article 112**   The Secretary to the Board shall be a natural person who has the requisite professional knowledge and experience. The Secretary to the Board shall be appointed by the Board. His/ Her primary responsibilities shall be:

(1)   to ensure that documents of the Board are in compliance with the relevant requirements of the law;

(2)   to ensure that the Company has complete organizational documents and records;

(3)   to ensure the Company prepares and submits the required reports and documents to the competent authorities according to the law;

(4)   to ensure that the register of shareholders are adequately kept, and to ensure that persons who have the right to obtain the Company's relevant records and documents can promptly obtain these records and documents;

(5)   other duties required by the Articles of Association and the listing rules of the stock exchanges where the shares of the Company is listed.

**Article 113**   Directors and other senior management members of the Company, may be appointed as the Secretary to the Board. Any accountants of the accountants firm appointed by the Company shall not be appointed as the Secretary to the Board.

Where the Secretary to the Board is also a Director and an act is required to be done by a Director and the Secretary to the Board separately, such person who is acting both as a Director and the Secretary to the Board shall not perform the act in both capacities.

## CHAPTER 12 GENERAL MANAGER OF THE COMPANY

**Article 114**   The Company shall have one general manager who is nominated, hired or dismissed by the Board. The Company shall have a certain number of assistant general managers, to assist the work of the general manager. The Board shall decide member of the Board can act concurrently as General Manager.

**Article 115**   The general manager of the Company shall be responsible to the Board and shall have the following powers and duties:

(1)   to be responsible for the production and management of the Company and to organize the implementation of the resolutions of the Board;

(2)   to organize the implementation of the annual business plans and investment proposals of the Company;

(3)   to prepare proposals for the internal management structure of the Company;

(4)   to prepare the management systems of the Company;

(5)   to draft the regulations of the Company;

(6)   to employ and dismiss deputy managers and persons in charge of financial matters;

(7)   to employ and dismiss management staff other than those who shall be employed and dismissed by the Board;

(8)   other powers conferred by the Articles of Association and the Board.

**Article 116**   The general manager may attend any meeting of the Board. The general manager who is not a Director shall not be entitled to vote at any meeting of the Board.

**Article 117** When the general manager and assistant general managers performs his/her terms of reference, he/she shall not alter the resolutions of the general meetings or the Board or exceed his/her authorized power.

**Article 118** The manager and the assistant general managers shall discharge their duties honestly and diligently in accordance with the laws, administrative regulations and the Articles of Association.

## CHAPTER 13 SUPERVISORY COMMITTEE

**Article 119** The Company shall have a Supervisory Committee. The supervisory committee is the Company's standing internal supervisory organ. Its responsibilities are to exercise supervision over the Board and its members and the general manager, assistant general manager and other senior managements, to prevent any abuse of powers, infringement of the legitimate rights of the Company, its shareholders and workers.

**Article 120** The supervisory committee shall consist of five (5) members, one of whom shall act as the chairman of the committee. The term of office for the members of the committee shall be three (3) years and they shall be eligible for re-election.

 The appointment and removal of the chairman of the supervisory committee shall be made by a resolution passed by two-thirds or more of the members of the supervisory committee.

**Article 121** The Supervisory Committee is composed of three shareholder representatives and two representatives of the employees. The shareholder supervisors shall be elected and removed by the shareholders' general meeting, and the employee representatives shall be elected and dismissed by the workers democratically.

 As for supervisors added or by-elected by the shareholders' general meeting or employees of the Company, the term thereof shall be from the effective date of the election to the expiry date of the term of the session of the Supervisory Committee.

More than half of the Supervisory Committee shall be external supervisors (referred to as supervisors not working within the Company, the same below), and external supervisors shall have the right to file an independent report to the general meeting shareholders about the performance of credibility and integrity of the senior managers.

**Article 122**   The director, general manager, deputy general manager and chief financial officer of the Company shall not serve as supervisors at the same time.

**Article 123**   The Supervisory Committee shall hold meetings at least once a year, convened by the Chairman of the Supervisory Committee.

**Article 124**   The Supervisory Committee shall be responsible to the shareholders' general meeting, and shall, in accordance with the law, exercise the following rights:

(1)   to check the Company's financial affairs;

(2)   to oversight the directors, general manager, deputy general manager and other senior managers on the matters of their violation of laws, administrative regulations or the articles of association while performing their duties at company;

(3)   to supervise the performance of the directors, general manager, deputy general manager and other senior managers, and to file a recall proposal of the aforementioned personnel in case of their violation of laws, administrative regulations or the articles of association, the resolutions of the shareholders' general meeting;

(4)   to check the financial report, the business report and profit distribution plan and other financial information intended to be presented to the shareholders' general meeting by the Board , and to commission certified public accountants and practicing auditors to help to review them in the name of the Company, with any doubt being found;

(5)   to propose the convening of extraordinary great meeting;

(6)   to negotiate with the directors or file a suit against the directors on behalf of the Company;

(7)  to propose to convene a temporary shareholders' general meeting, and to convene and preside over the shareholders' general meeting in case of the Board failing to fulfill its duty to convene and preside over the shareholders' general meeting in accordance with the provisions hereof;

(8)  any other functions and rights provided by laws and the articles of association.

Supervisors attended the Board meeting.

**Article 125**   The procedure of the Supervisory Committee: each supervisor shall have one vote. The resolution of the Supervisory Committee shall be passed by more than two-thirds of members of the Supervisory Committee.

**Article 126**   The reasonable expenses caused by the Supervisory Committee to hire lawyers, certified public accountants, practicing auditors and other professionals in the process of exercising its functions and rights, shall be borne by the Company.

**Article 127**   Meetings of the Supervisory Committee shall have minutes, where the supervisors and recorders attending the meeting shall sign their names. The supervisors shall have the right to require some kind of descriptive records about their speech at the meeting to be made in the minutes. The minutes of the meetings of the Supervisory Committee shall, as the company file, be saved by the Secretary to the Board . Retention of the minutes shall be for 15 years.

**Article 128**   Supervisors shall honestly discharge their duties in accordance with the laws, administrative regulations and the Articles of Association of the Company.

# CHAPTER 14 QUALIFICATIONS AND OBLIGATIONS OF THE DIRECTORS, SUPERVISORS, GENERAL MANAGER, ASSISTANT GENERAL MANAGER AND OTHER SENIOR MANAGEMENT MEMBERS OF THE COMPANY

**Article 129**   A person shall be disqualified from being a Director, supervisor, general manager, assistant general manager or other senior management members of the Company in any one of the following circumstances:

(1) the individual has no civil capacity or restricted civil capacity;

(2) a person of less than 5 years has elapsed since the conviction of corruption, bribery, unauthorized appropriation of properties, embezzlement of properties or disrupting social and economic order; or a period of less than 5 years has elapsed since being deprived of political rights for commission of offences;

(3) a period of less than 3 years has elapsed since the completion of the liquidation of any company or enterprise which was insolvent due to unsound business operation and management and where the person acted as a Director or factory manager, manager of such company or enterprise and was personally liable for such insolvency;

(4) a period of not less than 3 years has elapsed since revocation of the business license of a company or enterprise due to illegal business operations where the person was the legal representative of such company or enterprise and for which he was personally liable;

(5) the person is personally liable for a substantial loan which was due for payment but remains unpaid;

(6) the person has been involved in criminal offences subject to investigation by judicial authorities and the case has yet to be settled;

(7) the person is not eligible for acting in the leadership of a company or enterprise according to the laws or administrative regulations;

(8)   the person is not a natural person;

(9)   a period of less than five (5) years has elapsed since the person was adjudged by the relevant governing authority to be guilty of contravention of provisions of securities regulations involving fraud or dishonesty;

**Article 130**   The validity of an act of a Director, general manager, assistant manager or other senior management of the Company acting on behalf of the Company against any bona fide third party shall not be affected by any irregularity in his appointment, election or any defects in his qualification.

**Article 131**   In addition to the obligations imposed by the laws and administrative regulations or required by the listing rules of the stock exchange where the Company stock are listed, a Director, supervisor, general manager, assistant general manager or other senior management members owes a duty to each Shareholder for the following in the exercise of the powers entrusted to him:

(1)   not to cause the Company to exceed the scope of the business stipulated in its business license;

(2)   to act honestly in the best interest of the Company;

(3)   not to expropriate in any guise the Company's property, including, without limitation to usurpation of opportunities advantageous to the Company;

(4)   not to expropriate the individual rights of shareholders including, without limitation to rights of distribution and voting rights save and except pursuant to a restructuring of the Company submitted for approval of the shareholders in general meeting in accordance with the Articles of Association.

**Article 132**   A Director, supervisor, general manager, assistant general manager or other senior management members of the Company, owes a duty, in the exercise of his powers and discharge of his duties, to exercise the care, diligence and skill that a reasonable prudent person would be expected to exercise in comparable circumstances.

**Article 133**   A Director, supervisor, general manager, assistant general manager or senior management members owes a duty, in the exercise of powers of the Company entrusted to him, to observe obligations of a fiduciary not to place himself in a position where his interest and the obligations undertaken may conflict. This principle shall including, without limitation to the following obligations:

(1)   to act honestly in the best interests of the Company;

(2)   to exercise the powers vested in him and not to exceed the scope thereof;

(3)   to exercise the discretionary power granted to him personally and not allow himself to act under the direction of another and unless and to the extent permitted by the laws and administrative regulations or informed consent of shareholders in general meeting, not to delegate the exercise of this discretion;

(4)   to treat the shareholders of the same class equally and treat the shareholders of different classes fairly;

(5)   except in accordance with the Articles of Association or with the informed consent of shareholders in general meeting, not to enter into any contract, transaction or arrangement with the Company;

(6)   without the informed consent of shareholders in general meeting, not to use the Company's property for his own benefit;

(7)   not to use his authority for obtaining bribes or other illegal income and not to expropriate in any guise the property of the Company including, without limitation to, not to usurp opportunities beneficial to the Company;

(8)   without the informed consent of the general meeting, not to accept commissions in connection with the Company's transaction;

(9)  to observe the Articles of Association; to perform the duties faithfully; to protect the interests of the Company; not to use his position and authority in the Company to make his own benefit;

(10) without the informed consent of the general meeting, not to compete in any way with the Company;

(11) shall not embezzle the funds of the Company or shall not make loans to others out of the funds of the Company; shall not deposit the assets of the Company into accounts under his name or any other name; shall not use assets of the Company as guarentee for loans to the Shareholder of the Company or their personal debts;

(12) not to disclose confidential information of the Company acquired by him during the term of office without the informed consent of the general meeting; not to use the information other than in the interests of the Company; save and except that disclosure of such information to the court of law or other government authorities is permitted if:

    1.   disclosure is required by the laws;

    2.    there is a duty to the public to disclose;

    3.   it is in the personal interests of such Director, supervisor, general manager, assistant general manager or other senior management members to require disclosure.

**Article 134**  A Director, supervisor, general manager, assistant general manager and other senior management members of the Company shall not cause any of the following person or association (the "associates") to do such things as such Director, supervisor, general manager, assistant general manager or other senior management is prohibited from doing so:

(1)  the spouse or minor child of that Director, supervisor, general manager, assistant general manager or other senior management members of the Company;

(2) the trustee of that Director, supervisor, general manager, assistant general manager or other senior management of the Company or any person referred to in paragraph (1) of this article;

(3) the partner of that Director, supervisor, general manager, assistant general manager or other senior management of the Company or any person referred to in paragraphs (1) and (2) of this article;

(4) a company in which that Director, supervisor, general manager, assistant general manager or other senior management members of the Company alone or jointly with one or more of the persons referred to in paragraphs (1), (2) and (3) of this article or other Directors, supervisors, general managers or other senior management of the Company, has a de facto controlling interest;

(5) a Director, supervisor, general manager, assistant general manager or other senior management of a company being controlled as referred to in paragraph (4) of this article.

**Article 135**   The fiduciary duty of a Director, supervisor, general manager, assistant general manager or other senior management members of the Company does not necessarily cease upon the termination of his tenure of office. The obligation of confidence in relation to the trade secrets of the Company shall survive after the termination of his tenure. Other obligations may continue for such period as to be determined under the principle of fairness, depending on the time lapse between the acts concerned and the termination and the circumstances and the conditions under which the relationship with the Company terminated.

**Article 136**   Except as provided in Article 55 of the Articles of Association of the Company, Directors, supervisors, general manager, assistant general manager or other senior management of the Company may be exempted from liabilities for specific breach of duties with informed consent by the general meeting.

**Article 137**　　In case of having an important stake directly or indirectly with the contract, transaction and arrangement the Company has entered into or is planning (except the employment contract between the Company and the directors, supervisors, general manager, deputy general manager and other senior managers), the directors, supervisors, general manager, deputy general manager and other senior managers of the Company shall, regardless of whether the relevant matters under normal circumstances shall be approved by the Board , disclose to the Board the nature and extent of his interest as soon as possible.

Unless the foresaid directors, supervisors, general manager, deputy general manager and other senior managers shall in accordance with the requirements of paragraph 1 make a disclosure to the Board , and the Board approve such matters with the said person neither being counted in the quorum nor participating in the vote, the Company shall have the right to cancel the contract, transaction or arrangement, in case of the counterparts thereof not knowing the obligations of the relevant directors, supervisors, general manager, vice general manager and other senior managers in good faith .

If any person related with the directors, supervisors, general manager, vice general manager and other senior managers of the Company has an interest in any contract, transaction or arrangement, the said directors, supervisors, general manager, deputy manager and other senior managers shall also be considered related.

**Article 138**　　Where a Director, supervisor, general manager, assistant general manager or senior management members of the Company gives a general notice in writing to the Board before the date on which the question of entering into the relevant contract, transaction or arrangement is first taken into consideration on behalf of the Company, stating that, by reason of facts specified in the notice, he is interested in contracts, transactions or arrangements of any description which may subsequently be made by the Company, that notice shall be deemed for the purpose of the preceding article of this Article to be a sufficient declaration of interests of such Director, supervisor, general manager, assistant general manager or senior management members, so far as attributable to those facts in relation to any contract, transaction or arrangement of that description which may subsequently be made by the Company.

**Article 139**    The Company shall not, in any manner, pay tax for or on behalf of its Director, supervisor, general manager, assistant general manager or other senior management members.

**Article 140**    The Company shall not directly or indirectly, make a loan to or provide guarantee in connection with a loan made by any person to its Directors, supervisors, general manager, assistant general manager or other senior management members of the Company or of its holding company; or make a loan to or provide guarantee in connection with any loan made by any person to the associates of such person as aforesaid.

The preceding provision shall not apply to the following:

(1)   the provision of a loan or a guarantee for a loan by the Company to a company which is subsidiary of the Company;

(2)   the provision of a loan or a guarantee for loan by the Company to any if its Directors, supervisors, managers or other senior management under a service contract as approved by shareholders in general meeting or the provision of funds by the Company to him to meet expenditure incurred or to be incurred by him for the purpose of the Company or for the purpose of enabling him properly to perform his duties;

(3)   where the ordinary course of business of the Company includes the lending of money and the giving of guarantees, the Company may make a loan to or provide a guarantee in connection with a loan by another person to any of its Directors, supervisors, general manager, assistant general manager or senior management members and his associates on normal commercial terms.

**Article 141**    A loan made by the Company in breach of the preceding provisions, shall be forthwith repayable by the recipient regardless of the terms of the loan.

**Article 142**    A loan guarantee provided by the Company in breach of provision under paragraph (1) of Article 140 shall be unenforceable against the Company, except under the following circumstances:

(1)    a loan was made by a person to a person connected with Director, supervisor, manager or other senior management of the Company or of its holdings company, and at the time the loan was advanced the lender did not know of the relevant circumstances;

(2)    the collateral provided by the Company has been lawfully disposed of by the lender to a bona fide purchaser.

**Article 143**    The guarantee referred to in the preceding article shall include an undertaking by the guarantor or property provided to secure the performance of obligations by the obligor.

**Article 144**    Where a Director, supervisor, general manager, assistant general manager and other senior management of the Company is in breach of his obligations to the Company, the Company shall have a right to take the following measures in addition to the various rights and remedies provided by the laws and administrative regulations:

(1)    to request such Director, supervisor, general manager, assistant general manager and other senior management to pay damages for the losses sustained by the Company as a natural consequence of his breach of duties;

(2)    to rescind any contract or transaction entered into by the Company with such Director, supervisor, manager or other senior management and any contract or transaction entered into by the Company with a third party (where such third party knew or should have known that such Director, supervisor, manager or other senior management representing the Company is in breach of the obligations to the Company);

(3)    to request such Director, supervisor, manager or other senior management to return the proceeds received as a consequence of the breach of the obligations;;

— 62 —

(4)   to recover from such Director, supervisor, general manager, assistant general manager and other senior management members any monies which should otherwise have been received by the Company, including, without limitation to the commissions;

(5)   to request such Director, supervisor, general manager, assistant general manager and other senior management members to return such interests accrued or may be accrued from the monies which should otherwise have been paid to the Company.

**Article 145**   The Company shall, with the prior approval of the shareholders in general meeting, enter into a contract in writing with a Director or supervisor in respect of their remuneration. The emoluments referred to above shall include:

(1)   the emoluments in respect of his service as a Director, supervisor or other senior management of the Company;

(2)   the emoluments in respect of his service as a Director, supervisor or other senior management of a subsidiary of the Company;

(3)   the emoluments for provision of other services in connection with the management of the affairs of the Company and its subsidiaries;

(4)   payment for loss of office or as consideration for or in connection with his retirement.

Save pursuant to the contract aforesaid, no legal proceedings may be brought by a Director or supervisor against the Company in respect of the benefits ought to be received by him by reasons of the matters stipulated above.

**Article 146**    There shall be a provision in a contract made between the Company and a Director or supervisor in respect of their remuneration that the Director or the supervisor shall, with the prior approval of the shareholders in general meeting, be entitled to payment by way of compensation for loss of office or other amounts as consideration for his retirement from office in connection with the takeover of the Company. A takeover of the Company referred above shall mean any of the following:

(1)    a takeover offer made to all shareholders by any person;

(2)    a takeover offer made by any person with a view to the offer of becoming the controlling Shareholder. The definition shall be the same as the one defined in Article 56 of the Articles of Association of the Company.

If the relevant Director or supervisor does not comply with this article, any sum received by him shall belong to the persons who have sold their shares as a result of accepting the offer made as aforesaid; and the expenses incurred by him in distributing that sum pro rata amongst those persons shall be borne by him and not deducted out of that sum.

## CHAPTER 15 FINANCIAL AND ACCOUNTING SYSTEM AND PROFIT DISTRIBUTION

**Article 147**    The Company shall formulate the financial and accounting system of the Company in accordance with the laws, administrative regulations and the provisions in the PRC accounting standards prepared by the authority governing financial matters under the State Council.

**Article 148**    At the end of each financial year, the Company shall prepare a financial report reviewed and certified with statutory requirements.

The financial year of the Company shall coincide with the calendar year, which commences from 1st January and ends on 31st December of the Gregorian calendar.

**Article 149**    At each annual general meeting of shareholders, the Board of the Company shall submit to shareholders the financial reports prepared by the Company as required by the relevant laws, administrative regulations and mandatory documents promulgated by the local government and other governing authorities.

**Article 150**    The financial reports of the Company shall be deposited at the Company for inspection by its shareholders not later than twenty (20) days before the general meeting. Each Shareholder of the Company shall be entitled to receive the financial statements referred to in this article.

The Company shall send by prepaid mail a copy of the aforesaid report together with the balance sheet (including every document required to be attached under relevant laws, administrative regulations and listing rules of stock exchange (s) on which the shares of the Company may be listed) and income statement or profit and loss account and Directors' report to each holder of foreign shares listed outside the PRC at the recipient's address shown in the register of members, no later than twenty-one (21) days prior to a annual general meeting.

**Article 151**    The financial statements of the Company shall, in addition to being prepared in accordance with the PRC accounting standards and regulations, be prepared in accordance with international accounting standards or such accounting standards of the place where the shares of the Company are listed. Where material differences appear in the financial statements prepared in accordance with the two sets of accounting standards mentioned above, the financial statements shall contain statements of the material differences. Where the Company makes a distribution of profit after taxation in respect of the relevant financial year, the amount of distribution shall be the lesser of the profit after taxation as shown in both financial statements as aforesaid.

**Article 152**    The interim results and financial information to be published or disclosed by the Company shall be prepared in accordance with the PRC accounting standards and regulations, and at the same time to be prepared in accordance with international accounting standards or the accounting standards of the place where the shares of the Company are listed.

**Article 153**    The Company shall publish its financial reports at least twice in each financial year. The interim financial report shall be within sixty (60) days after the end of the first six (6) months of the financial year and the annual financial report shall be published within one hundred and twenty (120) days after the end of the financial year.

**Article 154**    The Company shall not have other books of account other than the statutory books of account.

**Article 155**    Profit after taxation of the Company is used in the following order:

(1)   making up for losses;

(2)   allocation to statutory reserve fund;

(3)   allocation to discretionary reserve fund upon approval by a resolution of the shareholders in general meeting;

(4)   payment of dividends in respect of ordinary shares;

The Company shall not distribute dividends or proceed with other distributions in the form of bonus dividends before offsetting losses and making allocation for statutory reserve fund.

**Article 156**    When the Company distributes its yearly profits after tax, 10 percent of the profits shall be withdrawn as legal surplus. When the Company's legal surplus has accumulated up to the amount of more than 50 percent of the Company's registered capital, the withdrawal thereof can be stopped.

If the company's legal surplus is not sufficient to compensate for the loss of the previous year, the profits of the year shall, prior to the withdrawal for legal surplus in accordance with the provisions of the preceding paragraph, cover the losses first.

Profits left after making up for losses and the withdrawal of the legal surplus shall be allocated in accordance with the proportion of shares held by the shareholders.

If the shareholders' general meeting or the Board , in violation of the provisions of the preceding paragraphs, distributes profits to shareholders before covering the losses and the withdrawal of the legal surplus, the profits distributed against the provisions hereof shall be refunded to the Company.

**Article 157**   The additional paid-in capital fund includes the following amounts:

(1)   The amount of money from the premium which is more than the issued stocks' par value;

(2)   Other income provided by the financial department of the State Council to be the additional paid-in capital.

**Article 158**   The Company's reserve fund shall be used only for the following purposes:

(1)   To make up for the losses; but the additional paid-in capital fund shall not be used to make up for the losses;

(2)   To expand production and operation of the Company;

(3)   To increase the capital. In case of the resolution of the shareholders' general meeting to transfer the reserve fund into the capital, new shares shall be delivered to shareholders in accordance with the original proportion of shares held by the shareholders or the par value of the shares shall be increased, but if the legal surplus is converted into capital, the remainder of the said fund shall be no less than 25 percent of the registered capital.

**Article 159**   Dividends shall, in accordance with the proportion of shares held by shareholders, be allocated within six months after the end of each fiscal year. The dividend distribution plan shall be approved by the shareholders' general meeting in terms of ordinary resolution. Unless otherwise determined by the shareholders' general meeting, the shareholders' general meeting may authorize the Board to assign interim dividends.

**Article 160**   The Company may take the following forms of distribution of dividends:

(1)  Cash;

(2)  Stocks.

**Article 161**   The Board shall, within two months after the resolution on profit distribution plan achieved by the shareholders' general meeting, complete the distribution of the dividends (or shares).

**Article 162**   The dividends and other payments paid to shareholders of domestic investment shares shall be accumulated, declared, and paid in RMB. The dividends and other payments paid to shareholders of foreign investment shares listed outside the People's Republic of China shall be accumulated and declared in RMB but paid in the currency of the listing place (if there is more than one listing place, paid in the currency of the main listing place determined by the Board ).

**Article 163**   Payment of the dividends and other payments to shareholders of foreign investment shares shall be handled in accordance with the provisions of the State on foreign exchange management.

**Article 164**   the Company shall make withholdings and payments on behalf of the shareholders of such tax taxable on the dividends payable to individual shareholders in accordance with the provisions of the PRC taxation law.

**Article 165**   The Company shall appoint a receiving agent for shareholders of overseas listed foreign shares. The receiving agent shall receive on behalf of such Shareholder the dividends distributed to and other amounts payable by the Company in respect of the overseas listed foreign shares.

The receiving agent appointed by the Company shall satisfy requirements provided under the laws or the relevant provisions of the stock exchange at the place where the shares of the Company are listed.

The receiving agent appointed by the Company for the shareholders of H shares shall be a trust company registered under the Trustee Ordinance of Hong Kong.

## CHAPTER 16 APPOINTMENT OF ACCOUNTANTS FIRM

**Article 166**    The Company shall engage independent accountants firms which satisfy the relevant stipulations of the PRC to audit the annual financial reports and other financial reports of the Company.

The first accountants firm may be appointed by the founders meeting prior to the first annual general meeting and the accountants firm so appointed shall hold office until the conclusion of the first annual general meeting.

If the inaugural meeting fails to exercise its aforesaid powers, those powers shall be exercised by the Board.

**Article 167**    The certified public accountants' firm appointed by the Company shall hold office from the conclusion of the annual general meeting at which the appointment is made until the conclusion of the next annual meeting.

**Article 168**    The accountants firm appointed by the Company shall have the following rights:

(1)   to inspect at any time the books and accounts, records and supporting documents of the Company and be entitled to request the Directors, general managers, assistant manager and other senior management members of the Company to provide relevant information and explanations thereof;

(2)   to request the Company to take all reasonable steps to obtain from its subsidiaries such information and explanation as are necessary for the performance of the duties of such accountants firm;

(3)   to attend any general meeting and to receive all notices of and other communications relating to any general meeting which any Shareholder is entitled to receive, and to be heard at any general meeting on any matter which concerns it as accountants firm of the Company.

**Article 169**  Where the office of the accountants firm is vacated, the Board may appoint another accountants firm to fill such vacancy prior to the holding of general meeting, but while any such vacancy continues, the surviving or continuing accountants firm or accountants firms, if any, may act.

**Article 170**  Notwithstanding anything in the agreement between the accountants firm and the Company, the shareholders in general meeting may by ordinary resolution remove an accountants firm before the expiration of the term of office of such accountants firm. Where the accountants firm so removed shall be entitled to claim against the Company for damages, if any, in respect of such removal, such entitlement shall not be prejudiced thereby.

**Article 171**  The remuneration or the determination of the remuneration of the accountants firm shall be fixed by the shareholders in the general meeting. In the case of the accountants firm appointed by the Board, the remuneration of the accountants firm may be fixed by the Board.

**Article 172**  The decisions of the Company regarding the engagement, dismissal or non-renewal of an accountants firm shall be made by the general meeting and file the case with the securities regulatory authorities of the State Council.

Where a resolution is proposed to be passed at the general meeting to appoint a firm other than an existing accounting firm to fill any vacancy in the office of the accountants firm, to reappoint an accountants firm who has been appointed by the Board to fill a vacancy or to dismiss an accountants firm before the expiry of its term of office, the following provisions shall apply:

(1)  A copy of the proposed resolution in respect of appointment or removal shall be sent before notice of meeting is given to the shareholders to the accountants firm proposed to be appointed or the accountants firm proposing to leave its post or the accountants firm who has left its post in the relevant financial year. "Leaving" includes leaving by removal, resignation and retirement.

(2)  If the accountants firm leaving its post makes representations in writing and requests their notification to the shareholders, the Company shall take the following measures (unless the representations are received too late):

1.   in any notice of the resolution given to shareholders, state the fact of the representations having been made;

2.   send a copy of the representations as appendix to the notice to every Shareholder in accordance with the mode of service prescribed by the Articles of Association of the Company.

(3)  If the representations of the accountants firm are not sent out as required by paragraph (2) of this article, the accountants firm may require that the representations shall be read out at the general meeting and may have further rights of redress.

(4)  An accountants firm which is leaving its post shall be entitled to attend:

1.   the general meeting at which its term of office would otherwise have expired;

2.   any general meeting at which it is proposed to fill the casual vacancy caused by its removal;

3.   any general meeting convened on its resignation.

The leaving accountants firm is entitled to receive all notices of, and other communications relating to, any such meeting, and to be heard at any such meeting on any matter which concerns its as a former accountants firm of the Company.

**Article 173**  In the event of any dismissal or non-renewal of an accountants firm by the Company, a notice shall be served to inform the accountants firm 30 (thirty) days in advance and the accountants firm has the right to express its opinion at the general meeting. If an accountants firm tenders its resignation, it shall make statement to the general meeting whether there are any improper happenings of the Company.

An accountants firm may resign its office by depositing a notice in writing to that effect at the legal address of the Company . Such notice shall terminate its office on the date on which it is deposited at the legal address of Company or such later date as may be specified in the notice. Such notice shall include:

1. a statement to the effect that there are no circumstances connected with its resignation which it considers should be brought to the notice of the shareholders or creditors of the Company; or

2. a statement of any such circumstances as aforesaid.

Where a notice is received by the Company as aforesaid, the Company shall within fourteen (14) days send a copy of the notice to the relevant governing authorities. If the notice contains a statement under paragraph (2) of this article, a copy of the notice shall also be deposited at the Company for the inspection of the shareholders. The Company shall send the copies of such statement to every Shareholder of overseas listed foreign shares by prepaid mail. The service address shall be the address on the register of shareholders.

Where the notice of resignation of the accountants firm contains a statement regarding any accountable affair, the accountants firm may require the Board to convene an extraordinary general meeting for the purpose of hearing an explanation of the circumstances connected with his resignation.

## CHAPTER 17 INSURANCE

**Article 174**     The type of insurance of the Company shall be determined by the Board in accordance with the relevant insurance laws and regulations of the State.

## CHAPTER 18 THE LABOR AND PERSONNEL SYSTEM

**Article 175**     Appropriate labor and personnel system suitable for the specific circumstances of the Company shall be made in accordance with the relevant provisions of the Labor Law of the People's Republic of China.

**Article 176**     In accordance with the needs of business development, the Company shall, within the provisions of relevant laws and regulations, recruit and dismiss employees by their own and implement the contract system.

**Article 177**    The Company shall, in accordance with the relevant state regulations and the economic benefits thereof, decide its wage system and way of payment.

**Article 178**    The Company shall make efforts to increase employee benefits, and continuously improve the working conditions and living conditions of the employees.

**Article 179**    The Company shall, in accordance with relevant state laws and regulations, extract medical, retirement, unemployment insurance fund for employees, and establish labor insurance system.

## CHAPTER 19 LABOR UNION

**Article 180**    Employees shall have the right to organize labor union, carry out labor union activities and safeguard the legitimate rights and interests thereof in accordance with the provisions of the Labor Union Law of the People's Republic of China and relevant laws and regulations of the State. The Company shall provide the necessary conditions for the activities of the labor union thereof.

**Article 181**    The Company shall, in accordance with relevant Chinese laws and administrative regulations, develop the Company's system for labor management, personnel management, employee wages and benefits, social insurance and so on.

## CHAPTER 20 AMALGAMATION AND DEMERGER

**Article 182**    The Board of the Company shall put forward proposals for amalgamation or demerger which shall be submitted to relevant approving authorities for approval in accordance with the laws after the same have been approved according to the procedures provided in the Articles of Association of the Company. shareholders who oppose the proposals for amalgamation or demerger shall have the right to request the shareholders who are in favor of amalgamation or demerger to purchase their shares at a fair price.

The aforesaid reports of the resolution of amalgamation or demerger shall be prepared for the inspection by the shareholders. and shall be sent to the shareholders of overseas listed foreign shares by post.

**Article 183**    The amalgamation of the Company may take the form of either amalgamation by absorbing another company or amalgamation by establishing a new company.

In case of a consolidation of the Company, various parties involved shall sign the consolidation agreement and prepare the balance sheet and the property list. The Company shall, within ten (10) days upon passing the resolution for the consolidation, notify the creditors and publish an announcement in China Securities Journal and other national newspapers at lease three (3) times within thirty (30) days.

Upon amalgamation, all claims and liabilities of the parties to the amalgamation shall be taken over by the company which exists after the amalgamation or by the newly established company.

**Article 184**    In case of a demerger of the Company, its assets shall be divided correspondingly.

In case of a demerger by the Company, various parties involved shall sign the demerger agreement and prepare the balance sheet and the property list. The Company shall, within ten (10) days upon passing the resolution for the demerger, notify the creditors and publish an announcement in China Securities Journal and other national newspapers at least three (3) times within thirty (30) days.

In accordance with the agreement made, the debts of the Company before the demerger shall be borne by the Company after the demerger.

**Article 185**    Changes in registration items arising from amalgamation or demerger shall be registered with companies registration department in accordance with the laws; in the case of dissolution, the dissolution shall be registered according to the laws; where new companies are established, the establishment shall be registered according to the laws.

## CHAPTER 21 DISSOLUTION AND LIQUIDATION

**Article 186**    The Company shall be dissolved and liquidated upon the occurrence of any the following events:

(1)   where the general meeting resolves to dissolve the Company;

(2)   where dissolution of the Company is necessary for the amalgamation or demerger;

(3)   where the Company is adjudged insolvent in accordance with the applicable laws as a result of its inability to pay its debts when due;

(4)   The business registration is terminated, the business is forced to close or terminated;

(5)   In the event that there are serious difficulties with the operation and management of the Company and continuing the operation may seriously damage the interests of shareholders, whereas no further solution is available, the shareholders holding 10% of the total voting rights held by all shareholders of the Company may file a dissolution request with the People's Court for an order of dissolution.

**Article 187**    Where the Company is dissolved pursuant to the above paragraph (1), it shall within 15 days thereof establish a liquidation committee whose members shall be elected by shareholders at the general meeting by means of an ordinary resolution.

Where the Company is dissolved pursuant to the above paragraph (2) of this section, the liquidation shall be jointly undertaken by parties to the merger or division with reference to the contract entered into during the process of such merger or division.

Where the Company is dissolved pursuant to the above paragraph (3), the liquidation shall be carried out by a team of liquidation comprised of shareholders, relevant institutions and relevant professionals and established by the People's Court as stipulated under relevant laws.

Where the Company is dissolved pursuant to the above paragraph (4), the liquidation shall be carried out by a team of liquidation comprised of shareholders, relevant institutions and relevant professionals and established by competent authorities.

**Article 188**  Where the Board decides to liquidate the Company (except for the liquidation as a result of the insolvency of the Company), it shall specify in the notice convening the general meeting for such purpose that the Board has made a full inquiry into the affairs of the Company and is of the opinion that the Company will be able to pay its debts in full within twelve (12) months from the commencement of the liquidation.

Upon the passing of the resolution for liquidation by shareholders in general meeting, the duties and powers of the Board shall cease forthwith.

The liquidation committee shall comply with the instructions of the general meeting and shall report to it at least once every year the receipts and payments of the liquidation committee, the business and the progress of liquidation of the Company. Upon the completion of liquidation it shall also give a final report to the general meeting.

**Article 189**  The liquidation committee shall notify the creditors within ten (10) days following its establishment and shall make public announcements in newspapers at least three (3) times within sixty (60) days.

Creditors should, within thirty (30) days after receipt of the notice, or for those who do not receive the notice, within ninety (90) days from the date of the announcement, declare their claims to the liquidation committee. Any undeclared claims after the due date shall be deemed to have it waived. When declaring their claims, creditors shall explain relevant particulars of their claims and provide supporting materials. The liquidation committee shall register the claims.

**Article 190**　　The liquidation committee shall during the liquidation period perform the following duties:

(1)　to dispose of the Company's assets, to prepare balance sheets and an inventory of assets;

(2)　to give notices or make public announcements to the creditors;

(3)　to deal with the unfinished business of the Company in relation to the liquidation;

(4)　to settle all tax in arrear;

(5)　to repay all the claims and debts;

(6)　to deal with the remaining assets of the Company after the repayment of debts;

(7)　to represent the Company in civil proceedings.

**Article 191**　　After the completion of the disposal of the assets of the Company and the preparation of the balance sheets and an inventory of assets, the liquidation committee shall prepare a liquidation proposal and submit the same to the general meeting or relevant governing authorities for their approval.

The Company's assets shall be applied to liquidation following the order under the legal requirements and if no laws are applicable, they shall be applied by the impartial and reasonable order as determined by the liquidation committee.

Any assets remaining after repayment of debts in accordance with the provisions above shall be distributed to shareholders in proportion to the class and number of shares held by them.

During the liquidation, the Company shall not carry on any new business activities.

**Article 192**    If the Company is to be dissolved by liquidation, the liquidation committee discovers that after the liquidate the assets of the Company and preparation of the balance sheets and assets inventory of the assets of the Company are insufficient to repay its debts in full, it shall forthwith apply to the People's Court for a declaration of insolvency.

Upon declaration of insolvency of the Company by the People's Court, the liquidation committee shall hand over liquidation affairs of the Company to the People's Court.

**Article 193**    Following the completion of the liquidation of the Company, the liquidation committee shall prepare a liquidation report and statement of receipts and expenditures and various financial records for the period of liquidation which shall, upon being audited by an accountant registered in the PRC, be submitted to the general meeting or relevant governing authority for their approval.

The liquidation committee shall, within thirty (30) days upon the approval of the general meeting and relevant governing authority, submit the said documents to the company registration department, and apply for the cancellation of registration of the Company and to make public announcement in respect of the termination of the Company.

## CHAPTER 22 PROCEDURES FOR AMENDMENTS TO THE ARTICLES OF ASSOCIATION

**Article 194**    The Company may amend the Articles of Association pursuant to the laws, administrative regulations and the provisions of the Articles of Association.

**Article 195**    The Article of Association may be amended in accordance with the following procedures:

(1)   The Board, through passing a resolution in accordance with the requirements of the Articles, may draft the amended versions of the Articles or an amendment to the Articles may be proposed by the shareholders;

(2)   the shareholders shall be notified of the proposals for amendments and a general meeting shall be convened to vote on the amendments;

(3)   Under the premise of complying with the relevant provisions of the Articles of Association, the amendments put to the vote at a general meeting shall be passed by way of a special resolution.

**Article 196**   Should the amendments to the Articles involve anything set out in the "Mandatory Provisions", the Amendments shall be effective upon the approval of the corporate approval departments authorized by the State Council and securities governing organizations by the State Council. Should the amendments to the Articles involve company registration subsections, a registration of the changes shall be made in accordance with the laws

## CHAPTER 23 SETTLEMENT OF DISPUTES

**Article 197**   The Company shall comply with the following rules for settlements of disputes:

(1)   Whenever any disputes or claims arising from the Articles of Association, or any rights or obligations conferred or imposed by the Company Law and other relevant laws or administrative regulations concerning the affairs of the Company between the shareholders of overseas listed foreign shares and the Company, between the shareholders of overseas listed foreign shares and any Director, supervisor, general manager, assistant general manager or other senior management members of the Company or between the shareholders of overseas listed foreign shares and shareholders of domestic shares, the parties involved shall refer such kind of disputes or claims for settlement by arbitration.

In referring the said disputes or claims to arbitration, the entire claims and disputes shall be referred; and all the persons having the same cause of action or all the parties whose participation is necessary for the settlement of the disputes or the claims, including the Company, shareholders, supervisors, general managers, assistant general manager or other senior management members of the Company, shall submit to arbitration.

As to the disputes on the definition of a Shareholder or register of the shareholders, it may be settled by methods other than arbitration.

(2) At the election of the claimant, the disputes or claims shall be referred to arbitration at either China International Economic and Trade Arbitration Committee in accordance with the provisions of its arbitration rules, or Hong Kong International Arbitration Centre in accordance with its Securities Arbitration Rules. Once a claimant refers a disputes or claims to arbitration, the other party must submit to the arbitration body elected by the claimant.

If the claimant elects to proceed with the arbitration at Hong Kong International Arbitration Centre, either party may request to proceed with the arbitration in Shenzhen in accordance with the provisions of the securities arbitration rules of Hong Kong International Arbitration Centre.

(3) The laws of the People's Republic of China shall be applicable to the settlement of disputes and claims by way of arbitration mentioned in paragraph (1) unless the laws and administrative regulations provide otherwise.

(4) The award of the arbitration body is final and conclusive and is binding on all parties.

## CHAPTER 24 NOTICE

**Article 198**    Unless otherwise provided hereby, the notice, information or written statement sent by the Company to the shareholders of foreign investment shares listed outside the People's Republic of China, shall, subject to such addresses as are recorded in the register of shareholders of foreign investment shares listed outside the People's Republic of China, be served by hand or by prepaid letter or by electronic communication or by other ways provided or permitted by relevant laws, regulations, the Listing Rules or the provisions of the regulators of the listing place of the Company.

The Company shall publish the notice sent to shareholders of domestic investment shares in one or more newspapers specified by the securities authority of the State Council, and once the notice is published, all shareholders of domestic investment shares shall be deemed to have received the notice.

**Article 199**    The notice sent by post shall be clearly stated in the address, prepaid, and placed inside an envelope. The notice letter shall be regarded as the shareholders have received five days after its delivery.

**Article 200**    Any notice, files, information or written statement sent by the shareholders or directors to the Company shall be served by hand or registered mail to the Company's legal address.

**Article 201**    In order to prove any notice, files, information or written statement has been served to the Company, the shareholders or directors shall provide certification material of serving the relevant notice, files, information or written statements in the usual way or by prepaid mail to the correct address within the specified time of delivery.

## CHAPTER 25 BYE-LAWS

**Article 202**    In the Articles of Association of the Company, the terms "accountants firm" shall have the same meaning as "auditors.

**Article 203**    Each of the figures referred to in this [Articles of Association] shall include the figure itself.

**Article 204**    This Article of Association is written in Chinese and the Articles of Association in any other language creates discrepancy, the Chinese version shall prevail.

IRICO Group Corporation (Company Seal)

Legal Representative:

16 January 2012

# EXHIBIT 11

**Exhibit 11**

Plaintiffs' chart summarizing notes of alleged conspiratorial meetings identified in Plaintiffs' Application for Entry of Default Against the Irico Defendants, ECF No. 5191 at 10–11, and in Plaintiffs' Opposition to the Irico Defendants' Motion to Set Aside Default, and other meetings.

| No. | Date | Document | Description | Citation |
|---|---|---|---|---|
| 1 | October 9, 1998 | CHU00030679–83 (Dep. Ex. 1312) | An Irico vice-president attended an October 1998 "China *CDT Maker* Contact Meeting" with executives from Chunghwa, Philips, SDI, Orion and LG where, among other things, information about current and future production levels was exchanged and Irico was assigned to convene the next meeting. | ECF No. 5191-2, Ex. F |
| 2 | November 6, 1998 | CHU00030684–87 | At a China *CDT MAKER* Contact Meeting attended by Chunghwa, Philips, Samsung SDI, Orion, and BMCC, and hosted by Irico on November 6, 1998, "the meeting attendees achieved a unified approach and a common understanding, hastening each sales department to deliver the message as follows: 'It is impossible for the prices to drop. If there are signs of oversupply, then it will be handled with reducing production.'" During the meeting, Irico disclosed its future production and its plan to "stop operation for one month" as well as its "internal transaction price" for one of its customers. | Saveri Decl., Ex. 12 |
| 3 | December 8/9/10, 1998 | CHU00030688–91 (Dep. Ex. 1303) | Irico's president and executives from Chunghwa, Philips, SDI, LG, Orion and BMCC attended a "routine China *CDT MAKER* contact meeting" in Beijing in December 1998. Among other things, the meeting notes reflect IRICO's and others' current and future production levels. During one of the sessions, "it was suggested to *follow* the Japan makers' price increase\beginning on *JAN*/16 . . . ." | ECF No. 5191-2, Ex. G |

**Exhibit 11**

| No. | Date | Document | Description | Citation |
|---|---|---|---|---|
| 4 | January 8, 1999 | CHU00030695–97 (Dep. Ex. 1301) | Irico, Chunghwa, Philips, SDI and Orion attended a "China CDT Maker Contact Meeting" on January 8, 1999 which included an exchange of production data. One participant urged that "[h]opefully none of the makers will publicize this and disrupt the makers adhering to the prices." | ECF No. 5191-2, Ex. H |
| 5 | February 2, 1999 | CHU00030705–08 | On February 2, 1999, at a Mainland China *CDT MAKER* Market Exchange, executives from Chunghwa, Philips, Samsung SDI, LG, Orion, Irico, and BMCC exchanged domestic and export sales information as well as "planned production" for 1999. Participants concluded, "Other than SHARE market information mutually, the more important issue for this discussion of global and regional color monitor markets' demand status is to hope that all makers may continue to maintain their efforts in control pricing by production volume of respective sizes." Handwritten notes from the same meeting indicate that one participant stressed that "that the price differential for 14"/15" should be maintained at least @USD15↑ . . . ." The notes also state that another participant "reflected his recommendations to the *TOP MANAGEMENT [Glass] MEETING*, to either price up on 15"CDT selling price or reduce14"CDT pricing." | Saveri Decl., Ex. 13 |
| 6 | April 2, 1999 | CHU00030734–37 | According to handwritten notes of the April 2, 1999 China *CDT MAKER* Market Exchange at which Chunghwa, Philips, Samsung SDI, Orion, Irico, and BMCC were present, "[a]t this *meeting*, because we spoke up strongly, the unreasonable domestic sales prices was seriously reviewed. 15" is the main point in the future and everyone agreed to go back to the export base price of @USD 65 and a price calculation coefficient for domestic sales of 10.4." They conclude, "IRICO agreed to cooperate, which should be the key point. | Saveri Decl., Ex. 14 |

**Exhibit 11**

| No. | Date | Document | Description | Citation |
|---|---|---|---|---|
| 7 | May 6, 1999 | CHU00030752 – 55 | At May 1999 China *CDT MAKER*s Market Information Exchange, participants Chunghwa, Philips, Samsung SDI, Orion, and Irico concluded that "[s]ince worldwide overall supplies of 14" and 15" *CDT* are still not balanced, the makers should fully use their domestic sales rights to adjust the market supply and demand situation pro-actively and reasonably." | Saveri Decl., Ex. 30 |
| 8 | May 20, 1999 | CHU00029191– 94 (Dep. Ex. 1108) | At the May 20, 1999 *CPT Top Management Meeting*, Samsung SDI, Orion, LG and Chunghwa reviewed agreed prices and described the global state of the CRT market and its connection to China: "**Best timing to raise price: [Chunghwa]'s President Lin indicated that customers such as Orion would be getting brisk orders in 3rd Quarter as the U.S. market high season was drawing near," noting increased orders at a factory in China and emphasizing the importance of "synchroniz[ing] the price-up implementation." According to the Glass Meeting notes, Chunghwa "was elected as representative to convey the Q3 price-up news to IRICO, and ask it to follow . . . ." In a discussion of the "China Market": "The eight CRT major makers within Chinese territory are going to hold a meeting on 5/23 to discuss how to improve capacity planning. We heard that someone suggested to shutting down for one month to resolve the problem. However, [Samsung SDI] thought a shutdown of 7-10 workdays would be easier to carry out an *Audit* properly." | Saveri Decl., Ex. 15 |
| 9 | May 24, 1999 | CHU00030769– 70 | On May 24, 1999, Chunghwa conspirator Jason Lu reported a subsequent bilateral meeting with Irico Vice-President Wei—likely following up on the May 20, 1999 group meeting—at which "IRICO basically agreed" to "cooperate with us to increase the 14" CPT sales price starting July 1st," subject to a final decision by Irico Manager Lee who was not available at the time of the meeting. | Saveri Decl., Ex. 16 |

**Exhibit 11**

| No. | Date | Document | Description | Citation |
|---|---|---|---|---|
| 10 | June 22, 1999 | CHU00029050–51 (Dep. Ex. 1315) | At a June 22, 1999, meeting between Orion, Irico and Chunghwa regarding CPTs, Irico stated it was "willing to cooperate with the move in increase the price of the 14" *CPT* . . . ." The participants also agreed that Irico would attend "the regular *meetings* or the irregular meetings arranged by *ORION* and [Chunghwa] in Hong Kong or Shenzhen" in order to "enhance IRICO's interaction and information exchange with the outside . . . ." Chunghwa conspirator Jason Lu, the author of the report, testified in deposition that Irico "is willing to cooperate as I wrote it in this report," thereby agreeing "to increase the overall price beginning in August." Jing Song Lu Dep. Tr. 183:22–190:4 (Saveri Decl., Ex. 18). | Saveri Decl., Ex. 17 |
| 11 | July 9, 1999 | CHU00030797–98 | At a Mainland China CDT MAKER Market Information Exchange on July 9, 1999, participants Chunghwa, Orion, Samsung SDI, Philips, and Irico—following a price review ("[t]he price of 14" *IN CHINA* has already been adjusted to *MPRII US*$50") and recognizing pricing index adjustments "in accordance with the 6/23 TOP MANAGEMENT's resolution, on the basis of a price of *US*$50"—"unanimously proposed" a future pricing plan. | Saveri Decl., Ex. 19 |

**Exhibit 11**

| No. | Date | Document | Description | Citation |
|-----|------|----------|-------------|----------|
| 12 | August 5, 1999 | CHU00030819–33 (Dep. Ex. 1305) | Executives from Irico, Chunghwa, SDI, BMCC, Orion and Philips attended an August 5, 1999 "Mainland China CDT Market Exchange." Meeting notes describe future production plans and pricing agreements for 14, 15 and 17inch CDTs. A handwritten note on the report states "Absolutely cannot reduce price." | ECF No. 5191-2, Ex. I |
| | | SDCRT-0086672–74 | Samsung SDI notes from "The Chinese Industry Meeting (August)" in 1999 attended by Philips, Irico, Samsung SDI, Orion, Chunghwa, and BMCC reflect "bottom price for key accounts" both for export and domestic sales for 14", 15" and 17" CDTs, "based on MPR II." The first major discussion point of the meeting was a "Special lecture by MR. C.C.LIU ([Chunghwa] headquarters administrator)"—one of the primary conspirators—on the following: "1) The industry meetings should remain confidential considering the international regulation of antitrust laws[;] 2) F[OLLOW]/UP on China regarding the top meeting decision[; and] 3) Discussions focused on 14"/15" prices[.]" | Saveri Decl., Ex. 20 |
| 13 | September 2, 1999 | CHU00030843–45 | At the September 2, 1999 Mainland China *CDT MAKER* Market Exchange, Chunghwa, Orion, Samsung SDI, Philips, and Irico concluded, regarding a potential 14"price increase: "Each attendee shall report to respective HQ and determination shall be made by *TOP MANAGEMENT* [Glass Meeting]. It was suggested to increase price of $2/PC starting 10/01/99." According to handwritten notes, "The step taken by *IRICO*'s adjustment on coefficient for domestic sales is still slow, and it has a lot of concerns; it agreed to follow after persuasion." | Saveri Decl., Ex. 21 |

**Exhibit 11**

| No. | Date | Document | Description | Citation |
|---|---|---|---|---|
| 14 | March 7/8, 2000 | CHU00030979–84 (Dep. Ex. 1159) | At the March 2000 Glass Meeting, following a review of world production by region and manufacturer (including the "Nafta" and China region, with specific information about Irico), attendees Samsung SDI, LG, Orion, Thai CRT, Philips, and Chunghwa cited to the economic recovery and the stimulus of the Olympics to conclude that "the resolution was that there would be a 3.5% growth rate for the 14" tube." "[M]eeting attendees also decided on . . . price increases" and "to have the 20" tube increase situation clarified via *SDI → HTC* Shenzhen, [Chunghwa] *→ IRICO*, and *OEC → TSB*." | Saveri Decl., Ex. 22 |
| 15 | April 6, 2000 | CHU00030992–94 (Dep. Ex. 1306) | At the April 6, 2000 China *CDT* Market Exchange, Chunghwa, Samsung SDI, Irico, and Philips "agreed still temporarily to maintain the U.S. dollar and RMB pricing coefficient as 10.8." In the handwritten notes, in response to a suggestion by Samsung SDI to raise prices on 14" CDTs, a Chunghwa employee "replied that it must be decided and passed through the headquarter *GLASS MEETING*." | Saveri Decl., Ex. 23 |
| 16 | April 14, 2000 | CHU00030995–97 (Dep. Ex. 1160) | Notes from an April 14, 2000 Glass Meeting between Samsung SDI, LG, Orion, Philips, and Chunghwa set forth future price increases for 14" tubes and discuss the price differential between Asia and Europe for 14" tubes as well as "the price 14" tube sold to *NAFTA* for 2*Q . . . .*" The notes also include a detailed report from Chunghwa about Irico's future production and future pricing to Europe. | Saveri Decl., Ex. 24 |
| 17 | June 25, 2000 | CHU0029110–15 (Dep. Ex. 2260) | On June 25, 2000, Irico's sales president discussed future CPT pricing with known conspirator Tony Cheng of Chunghwa, including that "IRICO could take the lead to raise the price when the market is still asking for reduction of production and promotion of sales." This followed a meeting between Cheng and senior Philips executives in which they asked Chunghwa to "negotiate again with IRICO to maintain a moderate price differential." | ECF No. 5191-2, Ex. J |

**Exhibit 11**

| No. | Date | Document | Description | Citation |
|---|---|---|---|---|
| 18 | May 10/11/12, 2001 | SDCRT-0087694 | Senior executives from Irico, BMCC, LG, Chunghwa, Philips and SDI attended a May 2001 "Color CRT Industry Meeting" regarding CPTs. Irico urged "proper action" to overcome market saturation, and discussed with other co-conspirators setting prices "for the next three months" as well as other "necessary countermeasures." One co-conspirator noted that "[t]hough uniform CRT prices have been set many times, ultimately thorough enforcement is more important than price." | ECF No. 5191-2, Ex. K |
| 19 | July 24, 2001 | CHU00036412–13 (Dep. Ex. 1177) | At a July 24, 2001 Glass Meeting, Chunghwa reported to Samsung SDI, LG, and Orion that "*Irico* said that it has agreed with *BMCC* to keep the 14" *ITC* $27 *CIF* as the basis for the lowest quoting price." The participants then "agreed using the 14": $26.5 . . . as the basis for the lowest *Q*3 quoted price in order to maintain the market order." | Saveri Decl., Ex. 25 |
| 20 | August 9, 2001 | SDCRT-0087700–02 | In August 2001, Irico and co-conspirators Hitachi, BMCC, Chunghwa, Philips, LG and SDI considered two alternative production reduction proposals for CPTs and "Suggested Price" whereby "[each company must follow the above pricing and must not sell at a lower price through any unfair competition means." The participants also discussed an inspection mechanism, including written warnings and penalties, for those who violate the agreement. | ECF No. 5191-2, Ex. L |
| 21 | December 31, 2003 | CHU00030067 | On December 31, 2003, Irico met with Chunghwa in Shenzen, China to discuss future production and plans. The report notes that Irico and Chunghwa "wish to once more exchange views regarding *CPT* factory production capacities." | ECF No. 5191-2, Ex. M |
| 22 | March 21, 2004 | CHU00123358–61 (Dep. Ex. 1267) | During a March 2004 trip to Singapore for a glass meeting and "review of supply quantity and price hike" for CPTs, Chunghwa executive S.J. Yang reported that Irico successfully implemented a "price hike." | ECF No. 5191-2, Ex. N |

**Exhibit 11**

| No. | Date | Document | Description | Citation |
|-----|------|----------|-------------|----------|
| 23 | August 16/17, 2005 | SDCRT-0091524–30 | On August 16 and 17, 2005, SDI and Irico met in China to discuss and "[o]pinion for industry competition" that would "compose a Coalition [that] has binding power to enforce decisions." Includes discussion of successful price maintenance. | ECF No. 5191-2, Ex. O |
| 24 | October 18/19, 2005 | CHU00040992–93 (Dep. Ex. 1278) | At a high-level bilateral meeting in October 2005, Chunghwa and Irico discussed future production levels and current price differentials for 14" tubes, and expressed "[h]ope [that] with both sides' sufficient communication and no malicious competition, can hold the market price and create a win-win opportunity." Chunghwa conspirator Sheng-Jen Yang, the drafter of the report, stated in deposition that this meant that Chunghwa and Irico "don't compete each other with very -- with price cutting, so we can keep the market price to create the win-win opportunity." Sheng-Jen Yang Dep. Tr. 305:19–308:25 (Saveri Decl., Ex. 27). | Saveri Decl., Ex. 26 |
| 25 | November 21, 2006 | CHU00102752–54 | At a November 21, 2006 meeting of the Color Tube Industry Presidents in Shanghai attended by co-conspirators BMCC, Hitachi, LPD, SDI and Thomson, Irico's representative suggested and agreed to implement short-term production stops in response to challenge of how to "maintain the price." | ECF No. 5191-2, Ex. P |
| 26 | January 23, 2007 | CHU00102864–65 | In anticipation of a January 23, 2007 Color Tube Industry Association Presidents' Meeting, including Irico, Samsung SDI, Hitachi, LG, Thomson, BMCC, Chunghwa, and others, the agenda included "[h]ow to have an in-depth communication and cooperation in the color tube industry to welcome the 2007 market jointly . . . ." Requirements of the meeting included "no audio recording during meeting, meeting contents shall not be leaked to outside." Irico was to collect attending leaders' information and arrange for airport transportation. | Saveri Decl., Ex. 28 |

**Exhibit 11**

| No. | Date | Document | Description | Citation |
|-----|------|----------|-------------|----------|
| 27 | March 6, 2007 | CHWA0022623–69 | Report indicates that "[a]t the beginning of 2007, the China TV Industry Association announced that the entire CRT TV industry stopped production for 20 days, involving eight CRT TV enterprises including Panasonic Beijing, Samsung Shenzhen, Seg-Hitachi, Thomson, LG Changsha, Philips Nanjing, Shanghai Yongxin and IRICO." | Saveri Decl., Ex. 29 |