John Taladay (*pro hac vice*)
john.taladay@bakerbotts.com
Erik Koons (*pro hac vice*)
erik.koons@bakerbotts.com
BAKER BOTTS LLP
1299 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone: (202)-639-7700
Facsimile: (202)-639-7890

Stuart C. Plunkett (State Bar No. 187971)
stuart.plunkett@bakerbotts.com
Rishi P. Satia (State Bar No. 301958)
rishi.statia@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

*Attorneys for Defendants*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | Case No. 3:07-cv-05944-JST |
| | MDL No.: 1917 |
| THIS DOCUMENT RELATES TO: | **REPLY BRIEF OF IRICO IN SUPPORT OF MOTION TO SET ASIDE DEFAULT** |
| *ALL DIRECT PURCHASER ACTIONS* | **Date: January 11, 2018** <br> **Time: 2:00pm** <br> **Judge: Hon. Jon S. Tigar** <br> **Courtroom: 9** |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 2

    A.  Contrary to DPP's Assertions, the Ninth Circuit Has Reaffirmed the Need for "Exceptional Circumstances" to Justify Default ................................................. 2

    B.  Each of the Rule 55(c) Factors Demonstrates Good Cause for Setting Aside the Entry of Default ................................................................................................ 3

        1.  Irico Has Several Meritorious Defenses and Has Already Made a Prima Facie Showing of Immunity Under the FSIA ........................................ 3

            a.  Irico Has a Meritorious Defense of Immunity Under the FSIA ... 3

                (1)  Irico Demonstrated that Irico Group is an Agent or Instrumentality of China ................................................... 3

                (2)  Irico Display Is an "Organ" of China .............................. 5

                (3)  The "Commercial Activity" Exception Does Not Apply . 7

                (4)  Irico Did Not Waive Its Sovereign Immunity Defense .... 8

            b.  Irico Has a Meritorious Defense Under the Foreign Sovereign Compulsion Doctrine ................................................................. 10

            c.  Irico Has Meritorious Liability and Damages Defenses ............ 12

        2.  DPPs Cannot Demonstrate Prejudice ..................................... 13

        3.  The Default Was Not a Result of Irico's Culpable Conduct .................. 14

III. CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

Page

**Cases**

*Alperin v. Vatican Bank*,
    360 F. App'x 847 (9th Cir. 2009) ..................................................................... 5

*Barthelemy v. Air Lines Pilots Ass'n*,
    897 F.2d 999 (9th Cir. 1990) ............................................................................ 5

*Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*,
    727 F.2d 274 (7th Cir. 1984) .......................................................................... 10

*Coen Co. v. Pan International, Ltd.*,
    307 F.R.D. 498 (N.D. Cal. 2015) ............................................................... 12, 13

*Diag Human S.E. v. Czech Republic-Ministry of Health*,
    64 F. Supp. 3d 22 (D.D.C. 2014) ..................................................................... 9

*Diamond Offshore Co. v. A&B Builders Inc.*,
    302 F.3d 531 (5th Cir. 2002) ............................................................................ 5

*Doe v. United States*,
    58 F.3d 494 (9th Cir. 1995) .............................................................................. 9

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003) ......................................................................................... 4

*EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd.*,
    322 F.3d 635 (9th Cir. 2003) ............................................................................ 6

*Embassy of the Arab Republic of Egypt v. Lasheen*,
    603 F.3d 1166 (9th Cir. 2010) .......................................................................... 7

*Falk v. Allen*,
    739 F.2d 461 (9th Cir. 1984) ............................................................................ 2

*Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*,
    375 F.3d 922 (9th Cir. 2004) .......................................................................... 15

*Frolova v. Union of Soviet Socialist Republics*,
    761 F.2d 370 (7th Cir. 1985) ............................................................................ 8

*Gregorian v. Izvestia*,
    871 F.2d 1515 (9th Cir. 1989) ..................................................................... 8, 15

*Hammer v. Drago*,
    940 F.2d 524 (9th Cir. 1991) ............................................................................ 2

*Haven v. Polska*,
    215 F.3d 727 (7th Cir. 2000) ............................................................................ 9

*Hirsh v. State of Israel*,
    962 F. Supp. 377 (S.D.N.Y. 1997) ................................................................... 9

*In re TFT-LCD (Flat Panel) Antitrust Litigation,*
    822 F. Supp. 2d 953 (N.D. Cal. 2011)...................................................................... 7

*In the Matter of the Arbitration Between Tran Chem. Ltd. & China Nat. Mach. Imp. & Exp.*
    *Corp.,*
    978 F. Supp. 266 (S.D. Tex. 1997) ........................................................................... 6

*Interamerican Ref. Corp. v. Texaco Maracaibo, Inc.,*
    307 F. Supp. 1291 (D. Del. 1970) .......................................................................... 10

*Joseph v. Office of Consulate General of Nigeria,*
    830 F.2d 1018 (9th Cir. 1987) ............................................................................ 8, 9

*Meadows v. Dominican Republic,*
    817 F.2d 517 (9th Cir. 1987) ............................................................................... 15

*Mission Trading Co. v. Lewis,*
    No. 16-CV-01110-JST, 2016 WL 4268667 (N.D. Cal. Aug. 15, 2016) ......... 3, 7, 14, 15

*Moran v. Kingdom of Saudi Arabia,*
    27 F.3d 169 (5th Cir. 1994) ................................................................................. 7

*NewGen, LLC v. Safe Cig, LLC,*
    840 F.3d 606 (9th Cir. 2016) ............................................................................... 15

*Patrickson v. Dole Food Co.,*
    251 F.3d 795 (9th Cir. 2001) ............................................................................... 5

*Perez v. i2a Technologies, Inc.,*
    No. C 15-04963 WHA, 2016 WL 4719267 (N.D. Cal. Sept. 9, 2016) ........................ 15

*Republic of Argentina v. Weltover, Inc.,*
    504 U.S. 607 (1992) .......................................................................................... 7

*Rodriguez v. Transnave Inc.,*
    8 F.3d 284 (5th Cir. 1993) .............................................................................. 8, 9

*RSM Prod. Corp. v. Fridman,*
    643 F. Supp. 2d 382 (S.D.N.Y. 2009) .................................................................... 5

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization,*
    206 F.3d 1322 (9th Cir. 2000) ............................................................................. 4

*Siderman de Blake v. Republic of Argentina,*
    965 F.2d 699 (9th Cir. 1992) ............................................................................... 9

*TCI Group Life Ins. Plan v. Knoebber,*
    244 F.3d 691 (9th Cir. 2001) ........................................................................... 2, 14

*Timberlane Lumber Co. v. Bank of America,*
    549 F.2d 597 (9th Cir. 1976) ............................................................................... 10

*Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.,*
    996 F. Supp. 326 (S.D.N.Y. 1998) ........................................................................ 6

*U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle,*
    615 F.3d 1085 (2010) ........................................................................... 15

*United States v. Aguilar,*
    782 F.3d 1101 (9th Cir. 2015) ............................................................. 2

*United States v. Hui Hsiung,*
    778 F.3d 738 (9th Cir. 2015) ............................................................... 7

*United World Trade v. Mangyshlakneft Oil Production Ass'n,*
    33 F.3d 1232 (10th Cir. 1994) ............................................................ 8

*USX Corp. v. Adriatic Ins. Co.,*
    345 F.3d 190 (3d Cir. 2003) ............................................................ 5, 6

**Statutes**

28 U.S.C. § 1603(b) .................................................................................. 4, 5

28 U.S.C. §1605(a) .................................................................................. 7, 8

**Rules**

Fed. R. Civ. P. 37(a)(1) ............................................................................. 14

Fed. R. Civ. P. 37(d)(1) ............................................................................. 14

1   **I.   <u>INTRODUCTION</u>**

2       Irico has shown good cause for setting aside the entry of default.  DPPs' objections only

3   bolster Irico's arguments on each of the three Rule 55(c) factors.

4       First, DPPs essentially concede that Irico has a meritorious defense under the FSIA by

5   purporting to rebut Irico's prima facie showing of immunity and then asserting a fact-driven

6   exception that would require the Court to determine if Irico's alleged "commercial activity" had

7   a "direct" effect on the United States.  Certainly DPPs can make no such showing since Irico

8   never sold products, directly or indirectly, to the United States.  But the relevant point for this

9   Motion is that DPPs identify no clear legal bar to Irico's advancement of its FSIA defense and

10  instead suggest that discovery is necessary to resolve immunity and jurisdictional issues.  That is

11  a quintessential "meritorious defense" under Rule 55(c)—one that ***might*** change the outcome

12  that would otherwise be reached via default.  And Irico has several other substantial defenses,

13  including meritorious foreign sovereign compulsion, liability, and damages defenses.

14      Second, DPP's assertion of prejudice is wholly deficient.  DPPs focus principally on how

15  the lack of discovery from Irico supposedly prejudiced them in pursuit of their now-settled

16  claims against other defendants, but under Rule 55(c) such backward-looking prejudice is not

17  cognizable.  DPPs offer nothing but speculation about any prejudice they would suffer if required

18  to litigate their claims against Irico on the merits.  Also, the claim that they have been prejudiced

19  by lack of discovery from Irico is at complete odds with their repeated assertion that they require

20  ***no*** discovery from Irico to prove their claims.

21      Third, regarding the culpable conduct inquiry, DPPs point only to the fact that Irico

22  defaulted by not answering the complaint.  Of course, every Rule 55(c) motion involves a

23  defaulting defendant, and thus the culpable conduct inquiry requires something that DPPs cannot

24  show—that Irico engaged in some sort of bad faith conduct to manipulate the legal system.

25      The Court should set the entry of default aside, and set a schedule for this matter to be

26  heard on the merits.

27

28

## II.   ARGUMENT

### A.   Contrary to DPP's Assertions, the Ninth Circuit Has Reaffirmed the Need for "Exceptional Circumstances" to Justify Default

The Ninth Circuit holds that a "case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984); *see also Hammer v. Drago*, 940 F.2d 524, 525 (9th Cir. 1991) (cases must be decided on merits "[w]henever it is reasonably possible"). Resolution of cases by default is a "drastic step appropriate only in extreme circumstances." *Falk*, 739 F.2d at 463; *see also TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001) (cases should be decided by default only in "extreme circumstances"). DPPs ignore these clear directives in their Opposition, because they can neither demonstrate the impossibility of trying their claims against Irico on the merits nor point to extreme circumstances justifying resolution by default. Unable to satisfy the Ninth Circuit standard, DPPs distortively claim that the law has changed. To do so, they badly mischaracterize *United States v. Aguilar*, 782 F.3d 1101, 1106 (9th Cir. 2015), as "clarifying" that "extreme circumstances" is no longer a requirement. (*See* Opp'n at 19 n.7; *see also* DPP's Reply in Support of Application for Default Judgement (Dkt. No. 5222) at 2-3).)

To the contrary, the Ninth Circuit in *Aguilar* **reaffirmed** the requirement that default is appropriate only in extreme circumstances, explaining that "faithful application of the [standards articulated in *Falk*] ensures that default judgments will stand **only in extreme circumstances**." *Aguilar*, 782 F.3d at 1106 (emphasis added). The court explained that the "extreme circumstances" language is "intended to remind courts that default judgments are the exception, not the norm, and should be viewed with great suspicion." *Id.* DPPs ignore these statements and instead twist the meaning of the court's clarification that district courts need not specifically articulate the extreme circumstances in the record for a default to be affirmed on appeal. *Id.* at 1107 (district need not "articulate on the record particular 'extreme circumstances' before it denies motion to set aside a default judgment").

Consistent with these principles, the rules governing relief from entry of default and default judgments are "remedial in nature and . . . must be liberally applied." *TCI*, 244 F.3d at

696.  The burden on the moving party is not a heavy one.  *See Mission Trading Co. v. Lewis*, No. 16-CV-01110-JST, 2016 WL 4268667 at *2 (N.D. Cal. Aug. 15, 2016) (Tigar, J.).  DPPs cannot counter the applicability of these overriding considerations to Irico's motion.  The Court should readily find that "good cause" exists to set entry of default aside.

**B.**  **Each of the Rule 55(c) Factors Demonstrates Good Cause for Setting Aside the Entry of Default**

**1.**  **Irico Has Several Meritorious Defenses and Has Already Made a Prima Facie Showing of Immunity Under the FSIA**

DPP's argument that Irico lacks any meritorious defense is simply not credible.  To take just one—Irico's defense of immunity under the FSIA—DPP's own opposition brief demonstrates that the defense is substantial, and DPPs themselves suggest that discovery may be necessary to resolve questions of immunity and jurisdiction.  (Opp'n at 17-18.)  Although Irico believes it has made a prima facie showing under the FSIA, such a showing is not required at this stage.  Rule 55(c) requires only that Irico demonstrate the existence of meritorious defenses—not that it will definitively prevail on a particular defense.  *See Mission Trading*, 2016 WL 4268667, at *2 (Under Rule 55(c), "the Court need not determine definitively whether any of Defendant's defenses would be successful.  Rather, the Court asks *only whether 'some possibility exists that the outcome of the suit after a full trial would differ from the result reached by the default*.'") (internal quotation marks and citations omitted) (emphasis added).  Irico's foreign sovereign immunity defense clearly meets this standard, but there also are other meritorious defenses to bolster this finding.

**a.**  **Irico Has a Meritorious Defense of Immunity Under the FSIA**

Contrary to DPP's unsubstantiated statements, both Irico Group and Irico Display have made a prima facie showing of immunity under the FSIA.

**(1)**  **Irico Demonstrated that Irico Group is an Agent or Instrumentality of China**

DPP's assertion that Irico failed to demonstrate Irico Group's immunity is premised on a misapplication of the concept of "direct ownership."  (*See* Opp'n at 9-10.)  Under the FSIA, the

3

definition of a "foreign state" includes any "agency or instrumentality of a foreign state," to wit, any entity:

> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b).  An entity's status is determined at the time the complaint was filed.  *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 479-80 (2003).  In 2007, when DPPs filed their Complaint, Irico Group was a "separate legal person, corporate or otherwise," "a majority of its ownership interest [was] owned by [China]," and it was "neither a citizen of a state of the United States nor created under the laws of a third country."  28 U.S.C. § 1603(b)(1)-(3).  Irico Group was 100% owned by the State Council of the People's Republic of China, clearly satisfying the "majority ownership" prong of Section 1603(b)(2) of the FSIA.  (Zhang Decl. ¶ 6.)

DPPs ignore Mr. Zhang's testimony on this point, as well as Irico's corporate disclosure statement certifying that "Irico Group . . . is a corporation ***wholly owned*** by the People's Republic of China and has no parent company[.]"  (Dkt. No. 310. (emphasis added).)  Instead, DPPs argue that the question of "direct ownership" is somehow unclear because Irico Group is ***managed*** by the State-owned Assets Supervision and Administration Commission of the State Council ("SASAC").  (Opp'n at 10.)  This argument makes no sense because management and ownership are different concepts, and the former is not one of the factors in Section 1603(b).

DPPs also weakly attempt to argue that Mr. Zhang lacks personal knowledge because he was not employed by the company at the time of the events about which he declares.  (Opp'n at 9.)  But there is no requirement that a witness be physically present during an event to offer a declaration on personal knowledge, and courts consistently hold that personal knowledge "can be inferred from an affiant's position."  *See Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 206 F.3d 1322, 1330 (9th Cir. 2000) (corporate officer could be expected to

4

have personal knowledge of corporate employees and tasks).[1]  Mr. Zhang, as legal counsel at Irico, undoubtedly has personal knowledge of the Irico entities' legal status, structure, and operations.[2]

### (2)    Irico Display Is an "Organ" of China

Irico Display likewise is an "agency or instrumentality of a foreign state" under the FSIA. 28 U.S.C. § 1603(b).  Under Section 1603(b), Irico Display is a "separate legal person, corporate, or otherwise" and it is "neither a citizen of a state of the United States nor created under the laws of a third country."  Though the majority of Irico Display's ownership interest may not be owned by China, Irico Display is nonetheless an "organ of a foreign state" under Section 1603(b)(2). *See USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 209 (3d Cir. 2003) ("foreign state might own" 10%, 50%, or 100% "of a holding company that owns 100% of the entity[, or] a foreign state might not own any portion of any entity that nevertheless is its organ").

The Ninth Circuit interprets "organ" ***broadly*** to reflect the congressional intent "to avoid affronting other governments by making it hard for private litigants to haul them into court." *Patrickson v. Dole Food Co.*, 251 F.3d 795, 806 (9th Cir. 2001).  Moreover, as DPPs concede, determining an entity's status as an "organ of a foreign state" under Section 1603(b)(2) requires the consideration of several factors, including the circumstances surrounding the entity's creation, its organizational structure, the level of government supervision, and the entity's status, obligations, and privileges under state law. *See Alperin v. Vatican Bank*, 360 F. App'x 847, 849 (9th Cir. 2009) (stating "we 'take a holistic view' of the defendant" and "examine" several factors in assessing whether entity is "organ of a foreign state").

---

[1] *See also Barthelemy v. Air Lines Pilots Ass'n,* 897 F.2d 999, 1018 (9th Cir. 1990) (CEO's personal knowledge of various corporate activities could be presumed); *Diamond Offshore Co. v. A&B Builders Inc.*, 302 F.3d 531, 544 n.13 (5th Cir. 2002) (director of corporation had personal knowledge *after* reviewing corporate records "as they pertain[ed] to information contained in the affidavits").

[2] DPP's only legal authority, *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 396 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010), is irrelevant because it involved an expert witness affidavit presenting testimony regarding conduct the court found was "beyond the scope of [the expert's] official duties[.]"  *Id.* at 397.

1      Ignoring these multiple factors, DPPs focus on whether Irico Display engaged in a public

2  activity, and in doing so cite materials from 2009—two years after the original complaint was

3  filed, and thus not relevant to determine "organ" status.  (*See* Opp'n at 10-12.)  DPPs also cite no

4  law supporting the notion that an "organ of a foreign state" ***must*** exercise a non-commercial

5  public purpose, and the available authority is to the contrary.  *See EIE Guam Corp. v. Long Term*

6  *Credit Bank of Japan, Ltd.*, 322 F.3d 635, 640-41 (9th Cir. 2003) (rejecting argument that

7  defendant was not an organ of the Japanese government because it "engaged in a primarily

8  commercial concern" and citing legislative history that "organ" could include a "state trading

9  corporation, a mining enterprise,  . . . [or] a steel company").

10      DPPs speculate about Irico Display's formation and state that "Display . . . was created

11  through means typical for private corporate entities."  (Opp'n at 12.)  DPPs cite no case holding

12  that an entity must be created exclusively for a public purpose.  Moreover, DPP's speculation is

13  wrong.  While DPPs selectively cite passages from a 2007 Irico press release and Annual Report,

14  they ignore adjacent statements pointing to Irico's origins as "an important project during

15  China's 6th and 7th Five-Year Plan periods," (Saveri Decl., Ex. 3), and its "[b]ackground as a

16  National Enterprise . . . directly under the State-owned Assets Supervision and Administration

17  Commission of the State Council."  (*Id.* Ex. 4 at 2.)[3]

18      Courts addressing the applicability of the FSIA to Chinese state-owned corporations have

19  consistently found such corporations to be agents or instrumentalities of the government of China,

20  and, as such, subject to the FSIA.  *See, e.g., In the Matter of the Arbitration Between Tran Chem.*

21  *Ltd. & China Nat. Mach. Imp. & Exp. Corp.*, 978 F. Supp. 266, 290 (S.D. Tex. 1997) (holding

22  China National Machinery Import and Export Corporation, a company owned by China, to be an

23  agent or instrumentality of the government of the PRC under FSIA); *Transatlantic*

24  *Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 996 F. Supp. 326, 331 (S.D.N.Y. 1998)

25  (Shanghai Foreign Trade Corporation, as a Chinese state-owned enterprise, constituted an

26  agency or instrumentality of the PRC for purposes of the FSIA).

27  
28  

---

[3] In any event, courts warn against giving too much weight to an organ's status as a private entity at its formation.  *See USX Corp.*, 345 F.3d at 210 ("possibility that a foreign state may later acquire an initially private company and use it for government purposes" should not be ignored).

**(3)    The "Commercial Activity" Exception Does Not Apply**

As a practical matter, DPP's attempt to invoke the "commercial activity" exception under the FSIA is moot at this stage.  Irico need only show that "some possibility exists" that the FSIA defense will change the outcome that would otherwise be reached by default.  *Mission Trading*, 2016 WL 4268667, at *2.  In any case, DPPs will fail to meet their burden when the time is actually ripe, such as on summary judgment.  Under Section 1605(a)(2), DPPs must show that their claims against Irico are "based upon" (1) "a commercial activity carried on in the United States by the foreign state"; (2) "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere"; or (3) "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  *Id*.  Only the third factor is even conceivably applicable as DPPs acknowledge that Irico conducted ***no*** commercial activity in the U.S., and DPPs bear the burden of providing specific facts showing a "direct effect" in the U.S.  *See Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).

DPPs fail to cite a single case where the commercial activity exception applied to a defendant that, like the Irico entities, generated no sales in the U.S., had no physical presence in the U.S., and did not enter into an agreement in the U.S. or with a U.S. business.  All of the cases DPPs cite involve a defendant ***physically*** present in the U.S. or ***actually*** selling products here.[4]

DPPs cannot show that Irico's alleged conduct had a "direct effect" on the United States.  A "direct effect" is one that follows as an "immediate consequence" of the defendant's activity.  *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992) (emphasis added).  DPPs cannot show any such immediate consequence.  Additionally, courts "look to the place where legally significant acts giving rise to the claim occurred in determining the place where a direct

---

[4] *See Embassy of the Arab Republic of Egypt v. Lasheen*, 603 F.3d 1166 (9th Cir. 2010) (defendants physically located in U.S. and entered into ERISA agreement in U.S.); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 822 F. Supp. 2d 953, 960, 963 (N.D. Cal. 2011) (defendants' component products ultimately had "final route into the United States" and defendants had relationships with "largest U.S. OEMs, such as Dell and HP"); *United States v. Hui Hsiung*, 778 F.3d 738, 743, 756 (9th Cir. 2015) (defendant's Houston office was raided by FBI and trial testimony established that it "imported over one million price-fixed panels per month into the United States").

1    effect may be said to be located." *United World Trade v. Mangyshlakneft Oil Production Ass'n,*

2    33 F.3d 1232, 1239 (10th Cir. 1994); *see also Gregorian v. Izvestia*, 871 F.2d 1515, 1527 (9th Cir.

3    1989) (to establish direct effect, plaintiff must show "something legally significant actually

4    happened in the U.S.").  Here, both Irico entities' principal places of business are in China and

5    neither entity had sales in the U.S.  DPP's own evidentiary submission shows that Irico "was . . .

6    a major manufacturer of CPTs in mainland China for its domestic market[,]" that "[i]t remained

7    quite isolated without information or participation to regular meetings of other major CPT or

8    CRT makers[,]" and that "it always took its own actions on prices."  (Saveri Decl., Ex. 18 at

9    189:18-25.)  Irico also had no sales to the U.S. during the class period.  (Zirpoli Decl., Ex. 4.)

10    Finally, DPPs try to support their argument that a "direct effect" in the U.S. occurred by

11    noting that Irico "tested" roughly 2,000 CRT products in the U.S.  (Zirpoli Decl., Ex. 4 at 2.)  But

12    not only would such an insubstantial activity have no effect of significance, but DPPs

13    conveniently failed to mention that the very document they reference clarifies that the test units

14    "were ***never sold and were eventually shipped back to China***."  *Id.* (emphasis added).

15    **(4)    Irico Did Not Waive Its Sovereign Immunity Defense**

16    DPPs also attempt to invoke the waiver exception to sovereign immunity, but their

17    argument is completely divorced from the applicable legal standard, which they avoid citing.

18    (*See* Opp'n at 5-7.)  The FSIA provides an exception where "the foreign state has waived its

19    immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  There has been no

20    express waiver here.  The FSIA's implied waiver exception "is narrowly construed."  *Joseph v.*

21    *Office of Consulate General of Nigeria*, 830 F.2d 1018, 1022 (9th Cir. 1987).  "Implicit waivers

22    are ordinarily found only where:  '(1) a foreign state has agreed to arbitration in another country;

23    (2) a foreign state has agreed that a contract is governed by the law of a particular country; and (3)

24    a foreign state has filed a responsive pleading in a case without raising the defense of sovereign

25    immunity.'"  *Id.* (quoting *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 377 (7th

26    Cir. 1985)); *accord Rodriguez v. Transnave Inc.*, 8 F.3d 284, 287 (5th Cir. 1993).

27    DPPs do not identify a relevant arbitration provision or contract.  They instead attempt to

28    fit within the third category by arguing that Irico waived its immunity when it appeared in the

action in 2008 and did not raise a defense under the FSIA.  (Opp'n at 6.)  But that argument is fatally flawed, because such a waiver can occur ***only*** when the foreign sovereign fails to assert the defense in a "responsive pleading."  *Joseph*, 830 F.2d at 1022 (implied waiver occurs where defense omitted from responsive pleading); *see also Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 721 (9th Cir. 1992) (same); *Diag Human S.E. v. Czech Republic-Ministry of Health*, 64 F. Supp. 3d 22, 30-31 (D.D.C. 2014) (same), *rev'd on other grounds*, 824 F.3d 131 (D.C. Cir. 2016).  Under the Federal Rules of Civil Procedure, a responsive pleading is an answer or counterclaim.  *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).  Irico never filed a responsive pleading—a point that DPPs themselves repeatedly acknowledge in their papers. (*See, e.g.*, Opp'n at 5 (acknowledging that Irico did not file an answer).)  Irico joined a motion to dismiss, but a motion to dismiss is also not a "responsive pleading."  *Id.*; *see also Haven v. Polska*, 215 F.3d 727, 731–33 (7th Cir. 2000) (letter sent to district court could not waive immunity because letter is not a responsive pleading); *Hirsh v. State of Israel*, 962 F. Supp. 377, 380 (S.D.N.Y. 1997) ("Although an implied waiver may be found where a foreign state files a responsive pleading that fails to raise the defense of sovereign immunity, Germany's letter [to the court] is not a 'responsive pleading.'") (citation omitted), *aff'd*, 133 F.3d 907 (2d Cir. 1997).

DPP's waiver argument boils down to a request that the Court disregard the "responsive pleading" requirement and exercise its discretion to find an implied waiver.  (Opp'n at 7.)  But they fail to identify any compelling reason why the Court should depart from precedent.  The authority is to the contrary.  In *Rodriguez*, for example, the court reversed the district court's finding of waiver despite far more compelling circumstances:  defendant had appeared in the action, removed the case to federal court, and delayed as well as participated in trial preparation. 8 F.3d at 288-90.  Similarly, the *Siderman* court found waiver where the foreign sovereign had deliberately involved the United States courts in its effort to prosecute the plaintiff—a situation the court found analogous to contractual waiver—i.e., where a contract provides for jurisdiction in a United States court or arbitration in the United States.  965 F.2d at 721-22.  *Siderman* did not expand on the narrow concept of waiver by failing to raise immunity after appearing in an action.

DPP's only other case—*Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*, 727 F.2d 274 (7th Cir. 1984), is directly contrary to their position.  The court there found **no** waiver of sovereign immunity despite extensive participation by the foreign sovereign in the litigation, because it had never filed a responsive pleading and thus could not have waived the defense.  *Id.* at 277 (defendant "did not automatically waive the defense by not asserting it at an earlier time" because defendant "has never filed a responsive pleading in this litigation nor has it been obliged to do so under the Federal Rules of Civil Procedure").

In sum, DPPs fail to demonstrate the applicability of the FSIA's waiver exception.

### b.    Irico Has a Meritorious Defense Under the Foreign Sovereign Compulsion Doctrine

Counsel has recently become aware that the pricing activity that DPPs allege to result from illegal conduct was mandated by the Chinese government.  Under the longstanding foreign sovereign compulsion doctrine, private parties are shielded from antitrust liability if the conduct alleged was compelled by a foreign government.  "A corollary to the act of state doctrine in the foreign trade antitrust field is the often-recognized principle that corporate conduct which is compelled by a foreign sovereign is also protected from antitrust liability, as if it were an act of the state itself."  *Timberlane Lumber Co. v. Bank of America*, 549 F.2d 597, 606 (9th Cir. 1976); *see also Interamerican Ref. Corp. v. Texaco Maracaibo, Inc.*, 307 F. Supp. 1291, 1298 (D. Del. 1970) (accepting foreign sovereign compulsion defense and dismissing group boycott claims where defendants' conduct was compelled by regulatory authorities in Venezuela).  The defense of foreign sovereign compulsion is an absolute defense intended to protect private entities.  *Id.* The defense applies where the defendants' conduct was mandated by a foreign government and the mandate amounts to compulsion.  *See, e.g., Timberlane Lumber Co.*, 549 F.2d at 606.

Irico's pricing-related conduct was compelled by the Chinese government.  Through its Ministry of Information Industry and State Planning and State Economic and Trade Commissions, the Chinese government mandated an increase in the price of CRTs.  To combat what the government viewed as excessively low prices, the Ministry issued directives to manufacturers of color CRTs, as well instructions to the government entities responsible for

implementing and monitoring compliance with those directives.  The government mandated that "[p]rices of products sold by a manufacturing enterprise shall not be lower than industrial average production costs in principle, and the sales prices of a marketing enterprise shall not be lower than its purchasing costs."  (Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default ("Plunkett Decl.") Ex. A at 1.)  This requirement necessitated an organized approach to industry pricing such that prices were not to be below industry averages.  Manufacturers were ordered that they "must strictly comply with all provisions in the Measures, consciously regulate pricing actions, truthfully and accurately record and verify production costs and purchasing costs, strictly prohibit allocating less expenses and falsely reporting costs."  (*Id.* Ex. B at 1-2.)  This mandate applied equally to the Chinese subsidiaries of numerous other defendants with whom Irico is alleged to have met.  Relevant government entities and industry organizations were instructed to coordinate this effort among CRT manufacturers.  The Ministry dictated that "[a]ll regions and all related departments must organize manufacturing enterprises and marketing enterprises to seriously study the Regulations and consciously implement the Regulations," while industry groups were commanded to "proactively play the role of industrial organizations in preventing dumping, organizing enterprises to perform price self-discipline, and coordinating relations between enterprises."  (*Id.* Ex. A at 1.)

        The provisions issued by the Ministry were not mere guidance or recommendations.  CRT manufacturers had to rectify non-compliant prices, were encouraged to report non-compliance by other manufacturers, and were subject to punishments for violating the Ministry's mandate, including fines, suspension, or revocation of their business license.  (*See Id.* Ex. A at 3; *id.* Ex. C at 1 ("[A] competent government department in charge of prices shall order the responsible party to correct and impose penalties according to specific situations."); *see also id.* Ex. D at 2; Ex. E at 1; Ex. F at 1.)  The government entities responsible for overseeing compliance were directed to "seriously accept and process reported cases, and investigate and punish [non-compliance] strictly according to laws and regulations."  (*Id.* Ex. A at 1.)  As such, Irico was compelled to comply with the mandate of the Chinese government and the foreign sovereign compulsion defense applies.

### c.   Irico Has Meritorious Liability and Damages Defenses

Irico has strong defenses that DPPs cannot show that Irico joined the global price-fixing conspiracy that allegedly caused harm to direct purchasers in the United States.  As an initial matter, as DPPs clearly illustrate in their Opposition, there is every indication that Irico never sold a single product, directly or indirectly, in the United States, which in turn means that there was not a single direct purchase made in the United States from Irico by anyone in the DPP class. DPP's only "evidence" on this issue is that Irico sent test models into the United States, but as noted above, Irico avoids mentioning that those test models "were never sold and were eventually shipped back to China." (Zirpoli Decl. Ex. 4 at 2.)  Thus, they could not have had any effect on U.S. commerce.  This alone casts serious doubt on DPP's claims against Irico.  *See Coen Co. v. Pan International, Ltd.*, 307 F.R.D. 498, 505 (N.D. Cal. 2015) (relief under Rule 55(c) was appropriate where Defendant "sufficiently raised some doubts" regarding the court's jurisdiction).  Moreover, the fact that Irico, unlike every other defendant in this case, did not make a single sale of a single product in the United States either of a CRT or of a CRT-containing product means that the DPP class members could only have made *indirect* purchases from Irico and thus lack standing to bring any claim against Irico under *Illinois Brick*, including under the *Royal Printing* exception that may have justified DPP's standing against other defendants

DPP's also claim that the evidence "proving" the existence of the global CRT conspiracy is "overwhelming" (Opp'n at 23), yet DPPs have never in fact proved the existence of a global (or any) conspiracy, or their alleged damages, because they settled their claims with every other defendant prior to trial.  DPPs concede that they have no direct evidence that Irico actually reached agreements with competitors involving CRTs sold in the U.S., and that unlike a number of other defendants, Irico was never the subject of any criminal investigation.  DPPs continue to rely on a selection of documents that they say proves Irico's participation in a global conspiracy, but none of these documents proves an actual agreement and DPPs misconstrue many of them. Irico, as a uniquely Chinese producer, was unquestionably differently situated than other defendants and its liability for a "global" conspiracy cannot be "proven," as DPPs assert, from a selection of emails without Irico having the opportunity to offer its substantial defenses,

including providing context to the alleged communications with competitors.

It is important to note that each of these defenses is not only meritorious, but is unique to Irico in this case.  None of these defenses has been litigated and resolved by prior rulings of this Court.

### 2.  DPPs Cannot Demonstrate Prejudice

DPP's attempt to demonstrate prejudice misses the mark and, in fact, belies a lack of prejudice.  DPP's argue that they suffered prejudice because they "had no discovery from Irico during the critical period of this case"—and as a result, they conducted discovery against other defendants without the benefit of Irico's information and entered into settlements with other defendants without the benefit of discovery from Irico.  (Opp'n at 19.)  Not only is this alleged prejudice purely speculative, it is irrelevant because it is all backwards looking.  Under Rule 55(c), the relevant question "is *not whether the Defendant's failure to appear has already caused Plaintiffs to incur a burden* or expense[,]" but "whether Plaintiffs' ability to pursue [their] claim will be hindered *in the future* as a result of Defendant's previous failure to appear." *Coen*, 307 F.R.D. at 504 (citation and internal quotation marks omitted) (emphasis added).  The only arguably forward-looking alleged prejudice is DPP's entirely speculative and conclusory statement that they are "practically certain" that Irico has lost or destroyed relevant information. (Opp'n at 20.)  Such naked speculation fails to demonstrate any real prejudice.

Furthermore, all of DPP's arguments regarding discovery undermine their assertion of prejudice.  DPPs continually emphasize in these default proceedings their complete confidence in the "overwhelming" evidence establishing Irico's liability and DPP's resulting damages.  (*See, e.g.*, Opp'n at 3.)  DPPs have told the Court that they do not need discovery from Irico, which is completely at odds with their assertion of prejudice.  Either their existing evidence must fail the test of adequately demonstrating liability and damages, or they cannot now claim that they have been prejudiced by a supposed lack of discovery.  But they cannot have it both ways, as they assert.  In *either* case, there is good cause for the Court to set aside the entry of default (because there is either inadequate evidence to sustain the default, or no prejudice).

DPP's failure to actively pursue discovery from Irico during the Court-ordered discovery period also precludes DPPs from now claiming prejudice.  DPPs never sought to depose one witness from Irico, nor did they seek Requests for Admissions from Irico.  DPPs state that they served two requests for discovery, which were papers served on all defendants with no incremental effort relating to Irico (Opp'n at 4 (citing Saveri Decl. ¶¶ 3-5)), yet DPPs provide no evidence that they took any further action relating to Irico—no attempts to negotiate with Irico regarding the scope of the discovery and no motion to compel the production of documents or responses to interrogatories from Irico.  Rule 37 requires more from DPPs.  Whether seeking a motion to compel discovery or sanctions for failure to respond to discovery, Rule 37 mandates "a certification that the movant has in good faith conferred or attempted to confer" with the party from whom discovery is sought.  Fed. R. Civ. P. 37(a)(1) & 37(d)(1)(B).  DPPs appear to have made no such good faith attempt to confer with Irico and never filed a motion to compel.  This Court should not allow DPPs to ignore their own failures to pursue this discovery while trying to blame Irico for their supposed prejudice.[5]

DPP's alleged prejudice boils down to a belief that they should not be required to litigate against Irico on the merits.  That, however, is not considered prejudice.  *See Mission Trading*, 2016 WL 4268667, at *2 (quoting *TCI*, 244 F.3d at 701) ("'being forced to litigate on the merits' is not considered prejudice").

### 3.    The Default Was Not a Result of Irico's Culpable Conduct

DPP's contention that Irico's default involved culpable conduct misconstrues the applicable law and mischaracterizes facts.  Once again, DPPs fail to cite the correct legal standard.  In the Ninth Circuit, a default is only "culpable" if the defendant **acted with bad faith**, such as an '**intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process**.'"  *Mission Trading*, 2016 WL 4268667, at *3 (emphasis added) (quoting *U.S. v. Signed Personal Check No. 730 of Yubran S.*

---

[5] DPPs concede that they waited six years before seeking entry of default in 2016, and even then did so only when prompted by the Court, but they claim this is irrelevant since they could not immediately seek a default judgment.  (Opp'n at 21.)  DPPs miss the point.  Had they been paying any attention to Irico, they would have taken some action earlier, including seeking entry of default.  Their failure to take any action undermines their claim of prejudice.

*Mesle*, 615 F.3d 1085 (9th Cir. 2010).  DPPs cite no evidence that Irico acted with any such intention, because there is no such evidence.  Instead, DPPs recite the undisputed circumstances of Irico's default—that Irico originally appeared in the action, joined a motion to dismiss, and then failed to answer when the motion was denied—and say those circumstances alone constitute culpable conduct.  (Opp'n at 21.)  But the Ninth Circuit has rejected that very argument and held that "a ***movant cannot be treated as culpable simply for having made a conscious choice not to answer***."  *Mission Trading*, 2016 WL 4268667, at *3 (emphasis added) (quoting *Mesle*, 615 F.3d at 1092).

In all but one of the cases cited by DPPs, the defaulting defendant never appeared in the case to contest entry of default or entry of default judgment, but instead waited until after judgment had been entered to finally appear and offer a defense.  *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 610 (9th Cir. 2016); *Franchise Holding II, LLC v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004) (no appearance until after plaintiff began collecting on default judgment); *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987).  Not so here.  Irico originally appeared in this case and has now appeared again, both to oppose DPP's application for default judgment and to move the Court under Rule 55(c) to set aside entry of default.  In DPP's only other case, the court identified numerous misdeeds by the default partying and labeled him a "model of culpability."  *See Perez v. i2a Technologies, Inc.*, No. C 15-04963 WHA, 2016 WL 4719267, at *4 (N.D. Cal. Sept. 9, 2016).  Nothing like that occurred here.

The Ninth Circuit has held that a defendant's conduct is not culpable under Rule 55(c) where the defendant fails to appear based on a belief that it is immune from suit.  *Gregorian*, 871 F.2d at 1525.  DPPs argue that the circumstances here are different since Irico originally appeared and joined a motion to dismiss whereas the defendant in *Gregorian* never appeared.  (Opp'n at 22.)  But *Gregorian* turned on the rationale for the default, not the timing of it.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should declare the default void or set it aside for good cause.

1    Dated:  December 21, 2017

2    Respectfully submitted,

3                                                    */s/ Stuart C. Plunkett*
                                                     John Taladay (*pro hac vice*)
4                                                    john.taladay@bakerbotts.com
                                                     Erik Koons (*pro hac vice*)
5                                                    erik.koons@bakerbotts.com
                                                     1299 Pennsylvania Ave., NW
6                                                    Washington, D.C. 20004
                                                     Telephone: (202) 639-7700
7                                                    Facsimile: (202) 639-7890

8                                                    Stuart C. Plunkett (State Bar No. 187971)
                                                     stuart.plunkett@bakerbotts.com
9                                                    Rishi P. Satia (State Bar No. 301958)
                                                     rishi.statia@bakerbotts.com
10                                                   BAKER BOTTS LLP
                                                     101 California Street, Suite 3600
11                                                   San Francisco, California 94111
                                                     Telephone: (415) 291-6200
12                                                   Facsimile: (415) 291-6300

13                                                   *Attorneys for Defendants*
                                                     *IRICO GROUP CORP. and*
14                                                   *IRICO DISPLAY DEVICES CO., LTD.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28