**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 26 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITigation, _____ <br><br> MARTA COOPERATIVE OF AMERICA, INC., <br><br> Plaintiff-Appellant, <br><br> v. <br><br> TOSHIBA CORPORATION; et al., <br><br> Defendants-Appellees. | No. 16-16982 <br><br> D.C. No. 3:07-cv-05944-JST <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted December 6, 2017
San Francisco, California

Before: GRABER and N.R. SMITH, Circuit Judges, and ZIPPS,[**] District Judge.

Plaintiff MARTA Cooperative of America, Inc. ("MARTA") appeals an

order granting summary judgment to Defendants Toshiba Corporation, *et al*.,

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Jennifer G. Zipps, United States District Judge for the District of Arizona, sitting by designation.

("Toshiba"). The action arises from multi-district anti-trust litigation alleging that the defendants engaged in a cathode ray tube ("CRT") price-fixing conspiracy. *In re Cathode Ray Tube (CRT) Antitrust Litig., MDL No. 1917*, No. C-07-5944JST, 2016 WL 7805628, at *2 (N.D. Cal. Aug. 4, 2016). MARTA is a direct-action plaintiff whose case against Toshiba was consolidated for pretrial purposes with other cases brought by purchasers of CRT products. On appeal, MARTA challenges the district court's conclusion that MARTA lacks standing to pursue its claims against Toshiba under two principles of standing: the direct purchaser rule and the requirements for antitrust standing set forth in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 537 (1983) (hereinafter the "*AGC* factors"). We reverse and remand for further proceedings.

Standing is a question of law. *See Warth v. Seldin*, 422 U.S. 490, 498–99 (1975). We review *de novo* a district court's summary judgment determination on standing. *Brennan v. Concord EFS, Inc.* (*In re ATM Fee Antitrust Litig.*), 686 F.3d 741, 748 (9th Cir. 2012). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id*.

Genuine issues of material fact exist as to whether the direct purchaser rule bars MARTA's claims against Toshiba. The district court improperly resolved material issues of fact regarding whether MARTA acted as an agent for its members. Viewing the facts in the light most favorable to MARTA, a reasonable juror could conclude that MARTA controls purchases such that MARTA is a seller, not an agent, and that its members are buyers, not principals. MARTA is responsible for selecting which products are available for purchase by its members. MARTA negotiates all pricing and other terms with vendors of the products at issue. While member committees give input on purchasing decisions to MARTA's executive director, the executive director ultimately makes the purchasing decision, often based on competing input from members. MARTA is the only party financially responsible for the purchase of products from vendors. MARTA's members submit purchase orders to vendors, but vendors do not ship products without explicit approval from MARTA. MARTA determines the price at which it will resell the products to its members; whether the pricing is above or below cost, MARTA makes the pricing decisions on a product-by-product basis. MARTA pays vendors for the products and bears legal responsibility for those products after it pays for them.

Even assuming that MARTA is an agent for its members, material issues of fact exist as to whether MARTA is a distinct economic entity. The district court

improperly weighed facts showing that "MARTA performed some additional ancillary functions, such as organizing trade shows and helping members understand the competitive landscape," against facts showing that MARTA's "primary function was to leverage the purchasing power of its collective membership to secure low prices from vendors for the benefit of its members." *CRT Antitrust Litig.*, 2016 WL 7805628, at *17. The district court also improperly weighed "MARTA['s responsibility] for negotiating prices with CRT vendors" against facts suggesting that "MARTA's members decided whether, when, what, and how many CRTs to purchase." *Id*. In addition, the district court weighed facts showing that "MARTA never initiated purchases of CRTs; it never purchased products; and it did not maintain an inventory for the purpose of resale," against facts showing that "MARTA … paid Defendants for the CRTs, technically owned the CRTs after purchasing them from Defendants until its members paid MARTA, was obligated to pay the vendors even if the member that made the purchase did not pay MARTA, provided discounts on certain core models, and assumed the risk of loss on the sale and shipment of CRTs to its members." *Id*. Viewing the facts most favorably to MARTA, a reasonable juror could conclude that MARTA had a distinct role in the CRT distribution chain and was not simply an agent for its members.

Applying the *AGC* factors, a material issue of fact exists as to whether MARTA has antitrust standing. Construing the evidence in the light most favorable to MARTA, there is evidence to suggest that MARTA was a participant in the relevant market. Although MARTA's members contact vendors to order product, the order has to be approved by MARTA and paid for by MARTA, and MARTA is the owner of the product until the member pays MARTA and the vendor ships the product to the member. If the member fails to pay, MARTA still owns and pays for the product. In addition, there is evidence to support MARTA's assertion that it was a competitor in the market for CRTs, not a competitor for purchasing services: at various times during the relevant period, MARTA competed against manufacturers as well as against other distributors, and MARTA's members are free to order directly from manufacturers that offer better direct-to-retailer pricing. The district court incorrectly inserted the pass-on defense into the standing inquiry in holding that "MARTA's purported injury is speculative and indirect because the primary way MARTA would have been harmed, if at all, is by a reduction in demand for its purchasing services due to higher CRT prices." *CRT Antitrust Litig.*, 2016 WL 7805628, at *18. This conclusion is inconsistent with the district court's conclusion that "[i]nsofar as MARTA was a direct purchaser,… it has standing even if it passed on the overcharge to indirect purchasers." *Id*. at *16. A material issue of fact exists as to whether MARTA is a

direct purchaser of CRTs; if MARTA is a direct purchaser, MARTA suffers a direct injury as a result of Toshiba's alleged price-fixing, and all damages would be apportioned to it, thereby eliminating the risk of complex damages apportionment. The district court's concern that the MARTA members who paid the alleged overcharge were more direct victims is contrary to the general standing principle that a direct purchaser is harmed the moment it pays an illegal overcharge, even if the inflated price is passed-through to subsequent purchasers. *See Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968).

**REVERSED AND REMANDED**.