UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917<br>Case No. C-07-5944 JST |
| This Order Relates To:<br><br>ALL DIRECT PURCHASER ACTIONS | **ORDER SETTING ASIDE DEFAULT**<br>ECF Nos. 5183, 5215 |

Before the Court is the Direct Purchaser Plaintiffs' ("DPPs")'s motion for entry of default judgment, ECF No. 5183, and Defendants Irico Group Corporation ("Irico Group") and Irico Display Devices Co., Ltd. ("Irico Display") (collectively "the Irico Defendants")'s motion to set aside default, ECF No. 5215. The Court grants the motion to set aside default and denies the motion for entry of default judgment as moot.

**I.  INTRODUCTION**

The facts regarding the conspiracy in this multidistrict litigation case ("MDL") are well known to the parties, see, e.g., ECF No. 4260, and the Court will summarize them only briefly here. The case arises from an alleged conspiracy to fix prices of cathode ray tubes ("CRTs"), a now-obsolete technology used in the manufacture of televisions and computer monitors. The alleged conspiracy ran from March 1, 1995 through November 25, 2007.

The DPPs filed a class action complaint on behalf of themselves and all others similarly situated in November 2007, alleging a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15. Numerous additional actions followed. The Judicial Panel on Multidistrict Litigation ("JPML") transferred all related actions to this Court on February 15, 2008.

1         The DPPs served the complaint and summons on the Irico Defendants on June 3, 2008. ECF No. 336. Several weeks later, attorneys from Pillsbury Winthrop Shaw Pittman, LLP ("Pillsbury") entered appearances on behalf of the Irico Defendants. ECF No. 308. On May 18, 2009, the Irico Defendants joined a number of other Defendants in filing a motion to dismiss the then operative Consolidated Amended Complaint. ECF No. 479. The Court denied the motion on March 30, 2010. ECF No. 665. Although the order denying the motion to dismiss set a deadline to answer of April 29, 2010, the Irico Defendants failed to file an answer or any other motion. Id.

        At the time the DPPs filed their original complaint in 2007, ECF No. 1, Irico Group was a State-Owned Enterprise of the State Council of the People's Republic of China. ECF No. 5214 at 7. According to a declaration by Wenkai Zhang, the legal counsel at Irico Group, Irico decided not to answer the complaint "because it believed that Irico Group and Irico Display were immune from suit in the United States." ECF No. 5215-1 ¶ 5. "[T]he Irico entities . . . believed they were immune from DPP's suit under notion of foreign sovereign immunity and accordingly did not participate in this action beyond joining a motion to dismiss." ECF No. 5214 at 8.

        On June 23, 2010, Pillsbury notified the Court that it had ceased its representation of the Irico Defendants, at their request, in May 2009. ECF Nos. 729, 730. The next day, the Court granted Pillsbury's motion to withdraw as counsel for the Irico Defendants but required it to "continue to accept service of papers for the Irico Entities for forwarding purposes until substitute counsel appears on behalf of the Irico Entities." ECF No. 732.

        On June 23, 2016, the Pillsbury firm filed an administrative motion asking that it "no longer be required to forward pleadings in this case" to the Irico Defendants. ECF No. 4681. The DPPs and Indirect Purchaser Plaintiffs ("IPPs") filed a response that proposed Pillsbury "only be required to accept service of default papers for Irico." ECF No. 4690. The Court then filed an order regarding the Irico entities which instructed "any plaintiff with pending affirmative claims against the Irico Entities to advise the Court in writing by July 5, 2016 of the following: (1) the date on which it filed its operative claims against the Irico Entities; (2) whether the Irico Entities have been served with those claims; and (3) whether the Irico Entities have answered those claims . . . . If the answer to question three is negative, the filing party should show good cause

why it has not previously requested entry of default as to the Irico Entities." ECF No. 4694 at 2. The DPPs filed a response explaining that they intended to move for default judgment but that it was premature to do so as litigation was ongoing against the other defendants (all defendants were jointly and severally liable) and the DPPs' damages study was not yet complete. ECF No. 4705 at 2-3. The IPPs explained that good cause existed for the lack of entry of default because there is no deadline to do so, among other reasons. ECF No. 4706. On July 6, 2016, the Court ordered the DPPs to apply for entry of default against the Irico Defendants within ten days, reasoning that in their effort to show good cause, the DPPs conflated entry of default with entry of default judgment. ECF No. 4709. On July 18, 2016, the Court ordered the IPPs to file entry of default against the Irico Defendants within ten days under similar reasoning. On July 18, 2016, the DPPs filed for entry of default. ECF No. 4724. On July 20, 2016, the IPPs filed for entry of default. ECF No. 4725. The clerk entered default against both. ECF Nos. 4727, 4729. A month later, the IPPs filed a letter of non-opposition to Pillsbury's motion, stating they no longer planned to seek default judgment against the Irico Defendants. ECF No. 4734. On November 11, 2016, the Court granted the motion as to the IPPs, but not the DPPs. ECF No. 5003 (see case caption).

The DPPs moved for default judgment against the Irico Defendants on August 3, 2017. ECF No. 5183. After some disputed matters regarding forwarding service, Davis Wright Tremaine, LLP appeared in this action on behalf of the Irico Defendants on September 8, 2017. ECF No. 5200. On October 2, 2017, Davis Wright Tremaine withdrew as counsel and Baker Botts, LLP was substituted as counsel for the Irico Defendants. ECF No. 5211. On October 25, 2017, the Irico Defendants filed an opposition to the motion for default judgment, ECF No. 5214, and filed a motion to set aside the default, ECF No. 5215. On December 7, 2017, the DPPs filed an opposition to the motion to set aside the default, ECF No. 5228, and a reply regarding the motion for default judgment, ECF No. 5222. On December 21, 2017, the Irico Defendants filed a reply regarding the motion to set aside the default.

**II.    JURISDICTION**

Before the Court can proceed to decide the motions, it must determine whether it has jurisdiction over the Irico Defendants. Because the question of personal jurisdiction is hotly

3

disputed, the Court considers that question at the outset. Peterson v. Islamic Republic of Iran, 627 F.3d 1117, 1125 (9th Cir. 2010) ("A court has a duty to assure itself of its own jurisdiction.").

The Irico Defendants argue that the Court lacks subject matter jurisdiction over them under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602 et seq. ("FSIA"). ECF No. 5214 at 6. The FSIA is the exclusive source of subject matter jurisdiction in actions involving a foreign state. Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 428-29 (1989); Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 706 (9th Cir. 1992); MOL, Inc. v. Peoples Republics of Bangladesh, 736 F.2d 1326, 1328 (9th Cir. 1984). An entity's status under the FSIA is determined as of the time the complaint was filed. Dole Food Co. v. Patrickson, 538 U.S. 468, 478 (2003).

To determine whether a court had jurisdiction over a defendant under the FSIA, the Ninth Circuit applies the following burden shifting framework:

> [T]he defendant must establish a prima facie case that it is a sovereign state and that the plaintiff's claim arises out of a public act. A presumption then arises that the foreign state is protected by immunity. Once the plaintiff has met the threshold of alleging that the defendant was not entitled to immunity due to one of the FSIA exceptions, the defendant may make either a facial or factual challenge to the district court's subject matter jurisdiction.

Terenkian v. Republic of Iraq, 694 F.3d 1122, 1131 (9th Cir. 2012) (citations and quotations omitted).

The Irico Defendants argue "[s]hould DPP's challenge the applicability of the FSIA in this case, they bear the burden of demonstrating that the Court may properly invoke its subject matter jurisdiction." ECF No. 5215 at 14. As a general matter, a plaintiff has the burden of establishing that the court has personal jurisdiction over the defendant. Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977) ("It is clear that the party seeking to invoke the jurisdiction of the federal court has the burden of establishing that jurisdiction exists."). Jurisdictional analysis under the FSIA is consistent with this framework. The Ninth Circuit explains that "the structure of the FSIA—which codifies the background rule that foreign states are immune from suit and execution, and then creates narrow exceptions—suggest [sic] that courts must begin with the presumption that a foreign state is immune and then the plaintiff must prove

4

that an exception to immunity applies." Peterson, 627 F.3d at 1125.

The Court now applies the burden-shifting framework outlined in Terenkian.

### A.     Sufficiency of the Zhang Declaration

Before applying the appropriate tests to determine whether the Court has jurisdiction, the Court must address the evidence submitted by the Irico Defendants to support their motion: a two page declaration by Wenkai Zhang, who has served as legal counsel at Irico Group from January 2, 2017 through the present. ECF No. 5215-1 ¶ 2. The DPPs ask the Court to disregard this evidence.

Specifically, the DPPs argue that the Zhang Declaration lacks foundation, because it states only that Zhang served as legal counsel since 2017, which provides him "no basis to testify about Group's and Display's corporate ownership and activities as of 2007." ECF No. 5228 at 14. Accordingly, the DDPs ask the Court to "disregard the Zhang Declaration and reject Irico's FSIA defense as unsupported by competent evidence." Id. The Irico Defendants respond that a witness need not be physically present during an event to offer a declaration on personal knowledge, and that personal knowledge can be inferred from an affiant's position. ECF No. 5229 at 9. They suggest that Zhang's role as counsel is a sufficient basis from which to assume that he would know the Irico Defendants' legal status.

A party must support its jurisdictional allegations with evidence evaluated "under the same evidentiary standard that governs in the summary judgment context." Thrash v. Cirrus Enterprises, LLC, No. 17-CV-01501-JST, 2017 WL 2645499, at *2 (N.D. Cal. June 20, 2017) (citing Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014)). Under Rule 56(c)(4) of the Federal Rules of Civil Procedure, the rule which governs summary judgment evidence, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." See also Fed. R. Evid. 701(a) (requiring that a lay opinion be "rationally based on the witness's perception"); Fed. R. Evid. 702(b) (requiring than an expert opinion be based on sufficient facts or data"); In re Holocaust Victim Assets Litig., 270 F. Supp. 2d 313, 316 (E.D.N.Y. 2002) (collecting cases to conclude that attorney affidavits may be

5

lay person or expert).

While the Zhang declaration purports to be made on "personal knowledge," it explains only that Zhang has served as legal counsel for Irico Group since January 2017. The Irico Defendants cite cases holding that "[p]ersonal knowledge can be inferred from an affiant's position." Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 206 F.3d 1322, 1330 (9th Cir. 2000) (explaining, absent a large time gap, that a corporate officer was expected to know the identity of her employees and their tasks); see also Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990) (providing that two witnesses who were corporate officers involved in activities at issue in the case had personal knowledge). At best, these cases support the notion that Zhang knows what the Irico Defendants' *current* legal status is. Neither those cases, nor anything in Zhang's declaration, explain how Zhang is able to know what those entities' status was *in 2007*. Because the affidavit does not describe how Zhang has personal knowledge of the Irico Defendants' status ten years before he served as legal counsel for Irico Group, the Court concludes that the evidence is not sufficient to support a finding under the FSIA.

### B. Prima facie showing of sovereign entity status

The Court now turns to the question of whether the Irico Entities are immune from suit under the FSIA.

The FSIA provides immunity only for "foreign states." 28 U.S.C. § 1604. The Act defines a foreign state to include any "agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). There are two ways a defendant can establish a prima facie case that it was an "agency or instrumentality" as of the time the complaint was filed. First, it can show that a majority of its shares were owned by the foreign state or political subdivision thereof. 28 U.S.C. § 1603(b). "[O]nly direct ownership of a majority of shares by the foreign state satisfies the statutory requirement." Dole Food Co. v. Patrickson, 538 U.S. 468, 473–74 (2003); see also Gates v. Victor Fine Foods, 54 F.3d 1457, 1462 (9th Cir. 1995) (explaining that entities owned by an instrumentality of the state, rather than the state itself are not sovereign immune). A publicly available 2007 annual report from Irico Display shows that the State Council of China owned 100% of Irico Group, which owned 75% of Irico Electronics, which in turn owned 41.36% of Irico

6

Display. ECF Nos. 5228-1 at 189, 5228-5 at 8. The certificate of interested entities likewise establishes that Irico Group is owned by China, and that Irico Electronics is the parent company of Irico Display. ECF No. 310 at 1-2. This evidence establishes that the Irico Group was an instrumentality of China in 2007 because it was fully owned by the State Council. The same evidence shows, however, that Irico Display was not an instrumentality because it was indirectly owned though several layers. Gates, 54 F.3d at 1462 (holding that indirect state ownership will not suffice).

The second way a defendant can establish that it was an "agency or instrumentality" is to show that it was an "organ" of the state. 28 U.S.C. § 1603(b). The Ninth Circuit has made clear that the term "organ" should be read broadly. EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd., 322 F.3d 635, 640 (9th Cir. 2003). To determine whether an entity was an organ, the court considers "whether the entity engages in a public activity on behalf of the foreign government." Id. "In making this determination, courts examine the circumstances surrounding the entity's creation, the purpose of its activities, its independence from the government, the level of government financial support, its employment policies, and its obligations and privileges under state law." Id. "[A]n entity's involvement in commercial affairs does not automatically render the entity non-governmental." Id. at 641 (citation omitted).

In Gates v. Victor Fine Foods, the Ninth Circuit concluded that an entity was an organ of the state because although the government did not exercise day-to-day management over the entity, the government played an active supervisory role such that the entity could only act on matters the government authorized, the government could order it to change its regulations, private actors could appeal to an appellate body appointed by the government, and employees were given immunity from liability similar to governmental immunity. 54 F.3d at 1461-63. Likewise, the Ninth Circuit found an even stronger case for an entity being an organ where it "was created by the Mexican Constitution, Federal Organic Law, and Presidential Proclamation; it is entirely owned by the Mexican Government; is controlled entirely by government appointees; employs only public servants; and is charged with the exclusive responsibility of refining and distributing Mexican government property." Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v.

M/T Respect, 89 F.3d 650, 655 (9th Cir. 1996), as amended on denial of reh'g (Aug. 28, 1996).

The Irico Defendants do not present evidence sufficient to show that Irico Display is an organ of the state. According to the Zhang Declaration, "Irico Group was managed directly by the State Council-appointed management of Irico Group [who] directly appointed the management of Irico Display." ECF No. 5215-1 ¶ 10. "Any major business decisions or transactions entered into or contemplated by Irico Display required review and approval by Irico Group and/or the . . . State Council." Id. Some decisions, such as material investments or mergers and acquisitions, were so major that the State Council, rather than Irico Group, approved them. Id. As stated above, however, the Zhang declaration is not sufficient evidence and the Court has not considered it.[1] Accordingly, the Court concludes that the Irico Defendants have not made out a prima facie case that Irico Display was an organ of the state. Because the Irico Defendants have made out a prima facie case that Irico Group was an instrumentality of the state, however, the Court proceeds to the next step of the burden shifting analysis.

### C. Exceptions to immunity

#### 1. Commercial activity exception

The DPPs argue that the Irico Defendants' activity falls within the commercial activity exception to FSIA immunity. That exception applies when "(1) the action is based upon a commercial activity carried on in the United States by the foreign state; or (2) upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or (3) upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). The DPPs argue that the third prong – that a commercial activity outside of the United States had a direct effect inside the country – applies, depriving the Irico Defendants of FSIA immunity.

---

[1] The DPPs have submitted Irico Display Articles of Association which provide that major decisions including mergers and spinoffs are made via resolution at Shareholder Meetings open to all shareholders." ECF No. 5228-1 at 284. Because these Articles date from 2008, however, they are of limited relevance to the question of Irico Display's legal status when the complaint was filed in 2007. Indeed, it is possible that Irico Display adopted Articles of Association in 2008 because it changed ownership, or corporate form, or both, in that year.

8

The Court must first determine whether the Irico Defendants' activities were commercial. The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act. The commercial nature of an activity shall be determined by reference to the nature of the course of conduct, rather than by reference to its purpose." 28 U.S.C. § 1603(d). The alleged conspiratorial actions of setting prices and halting manufacturing were clearly "performed in connection with a commercial activity." 28 U.S.C. § 1605(a)(2), (d). Where a sovereign entity takes on the role of a "a private player within the market" and engages in the sort of action that does not require "those powers peculiar to sovereigns," Embassy of the Arab Republic of Egypt v. Lasheen, 603 F.3d 1166, 1170 (9th Cir. 2010), that entity is not immune, even if some public purpose underlay the commercial activity. Regardless of whether the actions were conspiratorial in nature, the Irico Defendants' activities in setting prices and manufacturing schedules for CRTs was clearly commercial in nature.

The closer question is whether these activities caused a "direct effect" in the United States. An effect is "direct" if it follows as an immediate consequence of the defendant's activity. Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 618 (1992). Settling on this definition, the Supreme Court "reject[ed] the suggestion that ['direct'] contains any unexpressed requirement of 'substantiality' or 'foreseeability.'" Id. To establish a direct effect, a plaintiff must show that "something legally significant actually happened in the United States." Gregorian v. Izvestia, 871 F.2d 1515, 1527 (9th Cir. 1989) (quoting Zedan v. Kingdom of Saudi Arabia, 849 F.2d 1511, 1515 (D.C.Cir.1988)).

The parties have not pointed the Court to an antitrust case identifying a direct effect under the FSIA. Another district court in this circuit held that a price-fixing scheme and the granting of exclusive rights to a governmental entity satisfied the requirement for a direct effect in the United States because, given that the U.S. was the largest importer of salt, and the entity produced 17% of the world's salt, the conduct led to less variety, competition and higher prices in the U.S. Sea Breeze Salt, Inc. v. Mitsubishi Corp., No. CV162345DMGAGRX, 2016 WL 8648638, at *3 (C.D. Cal. Aug. 18, 2016) (reasoning that "direct effect" was like proximate cause).

Case law from a different statutory scheme, the Foreign Trade Antitrust Improvements Act

("FTAIA"), which outlines when anticompetitive behavior abroad can be prosecuted in the United States, provides insight into what a direct effect is for the purposes of an antitrust case challenged under the FSIA. The Ninth Circuit held in an FTAIA case that its "efforts at understanding the meaning of 'direct' are aided by the Supreme Court's interpretation of a nearly identical term in the Foreign Sovereign Immunities Act." United States v. LSL Biotechnologies, 379 F.3d 672, 680–83 (9th Cir. 2004).[2] The Court therefore looks to FTAIA caselaw as a useful source in determining the meaning of direct effect in the FSIA, particularly in this antitrust context.

In the FTAIA context, "[c]onduct has a 'direct' effect for purposes of the domestic effects exception to the FTAIA 'if it follows as an immediate consequence of the defendant[s'] activity.'" United States v. Hui Hsiung, 778 F.3d 738, 758 (9th Cir. 2015) (quoting United States v. LSL Biotechnologies, 379 F.3d 672, 680-81 (9th Cir. 2004)). The conduct in question must give rise to the plaintiff's injury – in other words, the standard is one of proximate causation, and not a "but for" test. Id. at 759. Applying this definition, the Ninth Circuit concluded that a direct effect was shown when a foreign price-fixing conspiracy raised the worldwide price of LCDs, because the cost of LCDs was a substantial component of the final price of the finished products that contained them – regardless of whether the LCDs were sold directly to customers in the United States. Id. at 758–60. "The direct connection was neither speculative nor insulated by multiple disconnected layers of transactions." Id. at 759. Similarly, another court in this district concluded that a focus on sales in the United States was too narrow in a price fixing scheme under the FTAIA because the anticompetitive behavior still had a significant consequence for United States customers in the form of increased prices. TFT-LCD (Flat Panel) Antitrust Litig., 822 F. Supp. 2d 953, 963-64 (N.D. Cal. 2011). In other words, that a defendant did not sell directly into the United States is not dispositive for the question of direct effect.

These cases suggest that a direct effect can be shown in an antitrust case when the alleged

---

[2] But see Lotes Co. v. Hon Hai Precision Indus. Co., 753 F.3d 395, 410–11 (2d Cir. 2014) (rejecting the Ninth Circuit's conflation of the two definitions); Minn-Chem, Inc. v. Agrium, Inc., 683 F.3d 845, 857 (7th Cir. 2012) (same); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 930–31 (2d Cir. 1998), overruled on other grounds by Lotes Co. v. Hon Hai Precision Indus. Co., 753 F.3d 395 (2d Cir. 2014) (requiring the defendant to show directness under both the FTAIA and FSIA to defend against jurisdiction, and suggesting the definitions are different).

anti-competitive behavior is not too attenuated from the increased prices in the United States, for example, where the conspiratorial behavior raised the prices of a component which constituted a substantial portion of the final price in the United States. The Court concludes that the DPPs have sufficiently alleged facts showing that the anticompetitive behavior of the Irico Defendants, as part of the broader conspiracy, had a direct effect on prices of CRTs in the United States.[3] The DPPs point to evidence that Irico participated in a conspiracy, including an industry report and emails showing that it attended "over 70 conspiratorial meetings." ECF No. 5228 at 20. Moreover, the DPPs' expert report by economist Dr. Leizinger showed that the U.S. was the second largest market for CRTs at 18% of the market. ECF No. 5191-2 at 160-162. The report shows that the conspiracy resulted in higher prices, including in the United States, because the CRT accounted for up to 50 percent of the cost of manufacturing a television or computer monitor. Id. at 173-74. These facts support a finding that the Irico Defendant's commercial activities had a direct effect in the United States. See In re TFT-LCD (Flat Panel) Antitrust Litig., 822 F. Supp. 2d at 966 (concluding that where defendants "colluded to increase the prices of LCD panels, a major component in electronic products that are important into the United States [such that] the increased price of the competent caused the prices of the finished products in the United States to increase" the effect was clearly direct under the FTAIA). Moreover, the Court earlier concluded that at least at the summary judgment stage, the Plaintiffs showed conduct which surpassed the FTAIA directness standard. In re: Cathode Ray Tube (CRT) Antitrust, No. C-07-5944 JST, 2016 WL 5725008, at *4–5 (N.D. Cal. Sept. 30, 2016). The Court concludes that the DPPs have adequately shown, for purposes of determining jurisdiction, that the commercial activities exception applies to any FSIA immunity for the Irico Group because they have adequately alleged a direct effect.

---

[3] The Supreme Court recently clarified that a plaintiff meets their burden of showing that an FSIA exception applies when the facts alleged show the exception applied. Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co., 137 S. Ct. 1312, 1324 (2017). The Court rejected the contention that a non-frivolous argument was sufficient to apply an exception, and clarified that a finding that the facts alleged supported the exception was distinct from a ruling on the merits. Id. at 1319. For this reason, the court need not find that the DPPs proved a direct effect under the FTAIA, only that it has alleged facts sufficient to support such a finding.

11

### 2. Waiver exception

The DPPs also argue that the Irico Defendants waived foreign sovereign immunity when they failed to raise the defense in response to a stipulation regarding discovery of personal jurisdiction. ECF No. 5228 at 10-12. "The FSIA's waiver exception is narrowly construed . . . . With respect to implicit waivers, the courts have found such waivers in cases where a foreign state has agreed to arbitration in another country or where a foreign state has agreed that the law of a particular country should govern a contract. An implicit waiver would also include a situation where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity." Siderman de Blake, 965 F.2d at 720–21 (citing H.R. Rep. No. 1487, 94th Cong., 2d Sess. 18 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6617).

In September 2008, the DPPs, IPPs, and certain Defendants entered a stipulation staying discovery, which required "any defendant" claiming protection from discovery because the Court lacks personal jurisdiction over that defendant to serve a statement explaining the basis for its position, so that discovery could proceed on jurisdiction alone. ECF No. 379 ¶ 4(g).[4] The Irico Defendants did not join that stipulation, but the stipulation provided that Defendants could join later by notifying plaintiffs. Id. ¶ 16. While the Irico Defendants requested three extensions of the deadline to file a statement, they failed to file any statement. ECF No. 5224-4 at 4-9.

The Court concludes that the text and context of the stipulation do not support the DPPs' waiver argument. The stipulation provided that if any defendant intended to claim that *no* discovery should go forward against it because the Court lacked personal jurisdiction over that defendant, it should serve a short statement describing their defense so that discovery could go forward at least as to that defense. ECF No. 379 ¶ 4(g). First, this statement only pertains to a defense against discovery, and does not cover, by its terms, all jurisdictional defenses. Moreover, the alleged wavier itself contains a waiver in the same paragraph: "Neither executing this Stipulation and Order nor complying with its terms, including, but not limited to, serving the short

---

[4] A subject matter jurisdiction defense under the FSIA can also be construed as a personal jurisdiction defense. See Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 498 (1983) ("[I]f none of the exceptions to sovereign immunity set forth in the Act applies, the District Court lacks both statutory subject matter jurisdiction and personal jurisdiction.").

1    statement referenced herein shall constitute of waiver of an undersigned defendant's jurisdictional

2    defense." Id. Finally, the Irico Defendants did not sign the stipulation and the stipulation provides

3    that "defendants who have not signed this stipulation reserve all objections to any discovery. . . ."

4    Id. The Court concludes that this stipulation does not constitute an implied waiver to FSIA

5    immunity.

6        Defendants also argue that waiver should be implied because the Irico Defendants joined a

7    joint motion to dismiss, which did not mention a sovereign immunity jurisdiction defense, ECF

8    No. 485, and did not file a separate motion to dismiss raising an FSIA defense. Special Master

9    Legge issued an order allowing for briefing by defendants raising additional issues not covered by

10   the motion to dismiss. ECF No. 448 at 2. While the Irico Defendants' failure to raise its subject

11   matter jurisdiction defense earlier is surprising, particularly given its many opportunities to do so,

12   it does not constitute a waiver. See Siderman de Blake, 965 F.2d at 720–21 (providing that a

13   waiver will be implied from a failure to raise the FSIA jurisdictional defense in a *responsive*

14   *pleading*).

### D. Facial or factual challenge to jurisdiction

16   Defendants mount a factual challenge to jurisdiction under the FSIA where they "introduce

17   testimony, affidavits, or other evidence to dispute the truth of the allegations that by themselves

18   would otherwise invoke federal jurisdiction." Terenkian, 694 F.3d at 1131–32. Where a plaintiff

19   "offers evidence that an exception to immunity applies, the burden of persuasion reverts back to

20   [the foreign entity] to prove by a preponderance of the evidence that the exception does not

21   apply." A.R. Int'l Anti-Fraud Sys., Inc. v. Pretoria Nat. Cent. Bureau of Interpol, 634 F. Supp. 2d

22   1108, 1113 (E.D. Cal. 2009). Even where the material facts are disputed, the trial court may still

23   evaluate the merits of the jurisdictional claims. Terenkian, 694 F.3d at 1131. The Court

24   concludes that the Irico Defendants mounted a factual challenge because they submitted a

25   declaration which attempted to establish their immunity under the FSIA. ECF No. 5215-1. This

26   was the only factual evidence that the Irico Defendants put forward towards their FSIA defense,

27   and is insufficient for the reasons already stated. ECF No. 5229 (introducing no new evidence to

28   support their FSIA allegations in their reply brief). Accordingly, Defendants' factual challenge to

13

the DPPs' showing that Irico Display is not a foreign sovereign entity, and that the commercial activities exception applies to the Irico Group, fails. The Court concludes, at least at this stage in this proceeding, that the Irico Defendants have not shown immunity as to either the Irico Group or Irico Display.

## III. MOTION TO SET ASIDE DEFAULT

Pursuant to Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause." In assessing whether to set aside a default for good cause, a court looks to whether "(1) the plaintiff would be prejudiced if the judgment is set aside, (2) [the] defendant has no meritorious defense, or (3) the defendant's culpable conduct led to the default." In re Hammer, 940 F.2d 524, 525–26 (9th Cir. 1991). "This standard is disjunctive, . . . such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." United States v. Signed Pers. Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1091 (9th Cir. 2010). "[W]hile the same test applies for motions seeking relief from default judgment under both Rule 55(c) and Rule 60(b), the test is more liberally applied in the Rule 55(c) context," as no judgment has been entered, so "there is no interest in the finality of the judgment with which to contend." Id. at 1091 n.1.

### A. Prejudice against the DPPs

To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. TCI Grp. Life Ins. Plan v. Knoebber, 244 F.3d 691, 701 (9th Cir. 2001), as amended on denial of reh'g and reh'g en banc (May 9, 2001). Examples of prejudice that courts have concluded weigh against the setting aside of a default include "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." Id. (quoting Thompson v. Am. Home Assur. Co., 95 F.3d 429, 433–34 (6th Cir. 1996)). "The question at this stage is not whether the Defendant's failure to appear has already caused Plaintiffs to incur a burden or expense. Rather, the question is whether Plaintiffs' ability to pursue [their] claim will be hindered in the future, for example, because of a loss of evidence." Coen Co., Inc. v. Pan Int'l, Ltd., 307 F.R.D. 498, 504 (N.D. Cal. 2015) (citation and quotations omitted).

14

The Irico Defendants argue that the DPPs have not shown the failure to appear resulted in any loss of evidence, hampered their ability to conduct discovery, or thwarted its ability to obtain relief in the future. ECF No. 5215 at 16. The DPPs counter that they have suffered harm "such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." ECF No. 5338 at 24 (citing E.Digital Corp. v. Ivideon LLC, No. 15-cv-00691-JST, 2016 WL 4728550, at *2 (N.D. Cal. Sept. 12, 2016)). For example, the DPPs argue that without discovery of the Irico Defendants, the DPPs were hindered in understanding and discovering evidence proving the conspiracy which "hurt Plaintiffs' case both against Irico and against the other defendants." ECF No. 5228 at 25. DPPs also explain that any discovery they could do now against Irico would be hindered by a loss of evidence such as lost documents or unavailable witnesses whose memories have faded. Id.

The Court concludes that the DPPs make out a strong case of prejudice. The DPPs were inarguably prejudiced by the Irico Defendants' decision to disappear from the case for ten years. The Irico Defendants could have raised their FSIA defense at the outset, and the Court would have then assessed whether it had jurisdiction over the case. Instead, by refusing to appear and litigate the case, the Irico Defendants have delayed resolution of the jurisdictional question for ten years, After the passage of so much time, it is likely that documents and data have been lost, that witnesses have become unavailable, or that important details have been forgotten. ECF No. 5228 at 25. Furthermore, while the Court focuses, as it must, the effects of the Irico Defendants' absence on future discovery the DPPs might conduct, see Coen Co., 307 F.R.D. at 504, it notes that contemporaneous discovery against multiple defendants in an antitrust conspiracy case benefits plaintiffs who can then use discovery taken from one defendant to show the culpability of another. ECF No. 5228 at 25. Now, not only will discovery of documents and witnesses from the Irico Defendants be hampered by the lengthy passage of time, but discovery against the remaining defendants which would likely benefit the DPPs' case against the Irico Defendants – to the extent it is even possible – will be hindered by the same memory and data loss.

At the same time, however, the DPPs' prejudice argument is substantially undercut by their own delay in seeking entry of default. The DPPs knew that the Irico Defendants were in default

15

1 by April 29, 2010, when the deadline to file an answer passed. ECF No. 665 (setting deadline for 30 days after March 30, 2010); see also ECF Nos. 729, 730 (Irico Defendants' counsel withdrawing on June 23, 2010). But the DPPs did not move for entry of default against the Irico Defendants until over six years later, on July 18, 2016. ECF No. 4724. And it is not clear that the DPPs would have moved for default at all but for the Court's prompting to do so on June 28, 2016. ECF No. 4694 (instructing any plaintiff who has not yet filed for entry of default against the Irico Defendants to file an explanatory statement by July 5, 2016). The DPPs argue that their delay was justified because moving for default made little sense until the remaining defendants' liability was established, given that conspiracy liability is joint and several. ECF Nos. 4705 at 2-3, 5228 at 26. As the Court previously concluded, this argument conflates the entry of default with default judgment. ECF No. 4709. Nothing prevented the DPPs from seeking entry of default. In short, the DPPs have established prejudice, but must lay some blame at their own feet.

### B. Meritorious defenses

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense." TCI, 244 F.3d at 700. Still, "the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." Id. The Court asks only whether "*some possibility* exists that the outcome of the suit after a full trial would differ from the result reached by the default." Coen Co., 307 F.R.D. at 505 (emphasis added).

The Irico Defendants argue that they have a "strong defense" because the DPPs have not shown any unlawful price fixing activity by Irico. ECF No. 5215 at 18. Specifically, the Irico Defendants argue that the DPPs have not shown "that Irico knowingly joined and participated in a single, overarching conspiracy." Id.

These arguments ignore the evidence submitted by the DPPs, which shows representatives of the Irico Defendants participating in meetings involving the setting of prices and production levels for CRTs in concert with other CRT manufacturers. Thus, there is evidence of the Irico Defendants' participation in "a single, overarching conspiracy." But that does not resolve the question of whether the Irico Defendants have a viable defense, since the weight to be given that evidence is for a jury to decide.

16

In addition, even if the Irico Defendants are found to be liable for participation in the CRT conspiracy, the scope of that liability remains at issue. "It is well-established that once a defendant joins a conspiracy it is jointly and severally liable for any actions taken in furtherance of the conspiracy." In re TFT-LCD (Flat Panel) Antitrust Litig., 820 F. Supp. 2d 1055, 1059 (N.D. Cal. 2011) (citing Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 646 (1981)). The same defendant is liable for actions taken *before* it joined the conspiracy, however, only if the plaintiff can show "knowledge of what has gone before . . . [and] the intent to pursue the same objective." Indus. Bldg. Materials, Inc. v. Interchemical Corp., 437 F.2d 1336, 1343 (9th Cir. 1970). It is unclear when the DPPs think the Irico Defendants joined the conspiracy to fix the prices of CRTs. The conspiracy is alleged to have begun in 1995, but the first event involving Irico identified in the DPP's motion papers or expert report, ECF No. 5191-2, occurs in 1998. And the DPPs have submitted no evidence regarding the Irico Defendants' knowledge of the conspiracy's prior acts. Thus, at a minimum, the Irico Defendants have a defense as to the scope of their participation in the conspiracy.

The Irico Defendants' strongest potential meritorious defense, however, is that the Court lacks jurisdiction over them.[5] In Coen, this Court found that the meritorious defense factor weighed in favor of setting aside the entry of default because the Defendant had "sufficiently raised some doubts as to whether the Court possesses personal jurisdiction over Defendants in this action." 307 F.R.D. at 505. The Irico Defendants have raised significant doubt as to whether the Court has jurisdiction under the FSIA as to Irico Group. See supra. While the case as to Irico Display is much weaker – the Court has cast doubt on the evidentiary sufficiency of the Zhang Declaration, which is the only evidence submitted as to Irico Display – Defendants' showing is nonetheless sufficient to present the issue. While a "defendant seeking to vacate a default judgment must present specific facts that would constitute a defense," it can do so through factual

---

[5] The Irico defendants did not discuss this defense in the section of their opening brief that discussed potential meritorious defenses, but makes their argument clear in reply, and also clearly discussed the defense as one to jurisdiction in their opening brief. ECF Nos. 5214, 5229 at 8. In any case, the DPPs' opposition considers the Irico Defendant's FSIA defense as one such meritorious defense to be considered in setting aside the default. ECF No. 5228 at 28.

17

allegations, rather than evidence deemed admissible at trial. See, e.g., TCI, 244 F.3d at 700; c.f., Falk v. Allen, 739 F.2d 461, 464 (9th Cir. 1984) (accepting "factual allegations" but referring to an affidavit submitted by defendant as sufficient to show potentially meritorious defense). Moreover, because "judgment by default is a drastic step appropriate only in extreme circumstances; [and] a case should, whenever possible, be decided on the merits," id. at 463, "[o]ur rules for determining when a default should be set aside are solicitous towards movants." Signed Pers. Check No. 730 of Yubran S. Mesle, 615 F.3d at 1089. The Court therefore concludes the Irico Defendants have raised potential meritorious defenses as to both Group and Display, and this factor weighs in favor of setting aside the default.[6]

### C. Culpability

The Ninth Circuit has explained:

> [A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer. . . . [I]n this context the term "intentionally" means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process. We have typically held that a defendant's conduct was culpable . . . where there is *no* explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.

Signed Pers. Check No. 730 of Yubran S. Mesle, 615 F.3d at 1092 (citations and quotations omitted) (emphasis added). The Irico Defendants declared that they declined to answer the complaint because they "believed that Irico Group and Irico Display were immune from suit in the

---

[6] The Irico Defendants raised in reply an additional potentially meritorious defense, that their conduct was directed by the Chinese government and therefore protected by the Foreign Sovereign Compulsion Doctrine. ECF No. 5229 at 15. The Irico Defendants cite just two cases, from the 1970s, Timberlane Lumber Co. v. Bank of America, 549 F.2d 597, 606 (9th Cir. 1976); Interamerican Ref. Corp. v. Texaco Maracaibo, Inc., 307 F. Supp. 1291, 1298 (D. Del. 1970), in support of this doctrine, and introduce new evidence to support their contention, ECF No. 5229-1, 2, 3, 4, 5. The Irico Defendants proffer simply that "Counsel has recently become aware that the pricing activity that DPPs allege to result from illegal conduct was mandated by the Chinese Government." ECF No. 5229 at 15. The Irico Defendants are admonished that "the Court does not consider new arguments made for the first time in a reply brief" and declines to consider it. Rodman v. Safeway Inc., 125 F. Supp. 3d 922, 930 (N.D. Cal. 2015), aff'd, 694 F. App'x 612 (9th Cir. 2017).

18

United States." ECF No. 5215-1 at 2. The case is much like another case in which the Ninth Circuit found conduct not culpable. In <u>Gregorian</u>, the Ninth Circuit found defendants' conduct not culpable where defendants failed to respond to a lawsuit because they believed that the court lacked subject matter jurisdiction over them. 871 F.2d at 1522-26.[7]

While efficiency and economy suggest that the Irico Defendants should have presented their immunity defense to the Court in the first instance, rather than simply disappear from the litigation, the law does not support a finding of bad faith. <u>See</u> <u>Signed Pers. Check No. 730 of Yubran S. Mesle</u>, 615 F.3d at 1092. Accordingly, this factor weighs in favor of setting aside the default.

### D. Balancing the factors

While the Court is sympathetic to the prejudice the DPPs have suffered, this sympathy is tempered by the DPPs' delay in seeking default. And whatever prejudice the DPPs suffered does not outweigh the Irico Defendants' right to present their meritorious defenses, particularly given Defendants' lack of bad faith and the $2.4 billion size of Plaintiffs' prayer. ECF No. 5191 at 7. The Court will set aside the default.

The Court notes the tension between (1) its finding that it has jurisdiction because the Irico Defendants have not satisfied their burden of showing immunity under the FSIA, and (2) its conclusion that the default should be set aside in part because the Irico Defendants have mounted a potentially meritorious defense on the same jurisdictional grounds. The Court is bound by the test for setting aside default, which requires something less than an actually meritorious defense. <u>Coen</u>, 307 F.R.D. at 505. The Court is also mindful of its continuing obligation to assure its own jurisdiction over the case. The Court's decision to set aside default on the basis of a possibly meritorious FSIA defense indicates that further proceedings might demonstrate that the defense

---

[7] The DPPs assert that the Irico Defendant's explanation that they failed to answer because they believed they lacked subject matter jurisdiction is not supported by any evidence. ECF No. 5228 at 27. Indeed, the Court concluded above that the Zhang declaration, which explains that the Irico Defendants failed to answer because they believed the Court lacked subject matter jurisdiction under the FSIA, was insufficient to show a lack of jurisdiction. <u>See supra</u>. The DPPs' argument is unavailing, however, because the Court applies different standards in determining FSIA jurisdiction than it does in determining whether to set aside a default.

19

applies and the Court lacks jurisdiction. They might also show the opposite.

The Court also notes the DPPs' request to allow for limited jurisdictional discovery. ECF No. 5228 at 22-23. The Supreme Court recently held in an FSIA case that "where jurisdictional questions turn upon further factual development, the trial judge may take evidence and resolve relevant factual disputes." Bolivarian Republic of Venezuela, 137 S. Ct. at 1316-17. The Court also made clear that the "court should normally resolve those factual disputes . . . as near to the outset of the case as is reasonably possible." Id. at 1317. The case against the Irico Defendants having now reopened, the DPPs are free to undertake jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendants' motion to set aside default.[8] The DPP's motion for default judgment, ECF No. 5183, is therefore terminated as moot.

**IT IS SO ORDERED.**

Dated: February 1, 2018

JON S. TIGAR
United States District Judge

---

[8] The Irico Defendants, in addition to requesting that the Court set aside the entry of default, also ask the Court to dismiss the DPPs' Complaint against Irico with prejudice. ECF No. 5215 at 20. No good reason is provided for this request and the Court denies it.

20