Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the*
*Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-cv-05944-JST<br>Case No. 17-cv-04067-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>*Luscher, et al. v. Mitsubishi Electric Corp.,* No. 17-cv-04067-JST | **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MITSUBISHI ELECTRIC CORPORATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: April 5, 2018<br>Time: 2:00 p.m.<br>Courtroom: 9, 19th Floor<br>Judge: Honorable Jon S. Tigar |

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION .................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

I.      INTRODUCTION ......................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...............................................3

III.    SUMMARY OF SETTLEMENT TERMS ...............................................................5

      A.      Proposed Settlement.........................................................................................5

      B.      Settlement Discussions.....................................................................................8

      C.      Consideration ....................................................................................................8

      .      1.      Cash.......................................................................................................8

             2.      Cooperation..........................................................................................8

      D.      Release...............................................................................................................9

IV.     PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS IN THE
        BEST INTEREST OF THE MEMBERS OF THIS SETTLEMENT CLASS.........................9

      A.      Class Action Settlement Procedure...................................................................9

      B.      Standards For Settlement Approval ................................................................10

      C.      The Proposed Settlement Is Within The Range of
          Reasonableness................................................................................................11

             1.      The Proposed Settlement Is the Product of Serious, Informed, and
                  Non-Collusive  Negotiations............................................................11

             2.      The Proposed Settlement Has No Obvious Deficiencies..................12

             3.      The Proposed Settlement Treats Class Representatives and All Segments of
                  the Class Fairly and Equitably..........................................................13

             4.       The Proposed Settlement Is Within The Range of Possible Final
                  Approval.............................................................................................13

             5.      The Experience and Views of Experienced Counsel Are Relevant to Initial
                   Determination of Whether Settlement Is "Fair, Reasonable and
                  Adequate"...........................................................................................17

      D.      The Proposed Settlement Class Satisfies Rule 23(a) .....................................17

1.    The Class Is So Numerous That Joinder Is Impracticable ................................18

2.    The Case Involves Questions Of Law and Fact Common to the Class ..........18

3.    Plaintiffs' Claims Are Typical of the Claims of the Class.............................19

4.    Plaintiffs Will Fairly and Adequately Represent the Interests of the Class.....20

E.    The Proposed Settlement Class Satisfies Rule 23(b)(3) .............................................21

1.    Common Questions of Law or Fact Predominate............................................21

2.    A Class Action Is Superior to Other Methods of Adjudication......................23

V.    THE PROPOSED NOTICE PROGRAM PROVIDES THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES…………………………….………24

VI.    THE PROPOSED PLAN OF DISTRIBUTION IS FAIR AND REASONABLE.................25

VII.    NOTICE COSTS, LITIGATION EXPENSES AND ATTORNEYS' FEES ........................30

VIII.    THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE.................31

IX.    CONCLUSION ........................................................................................................31

# TABLE OF AUTHORITIES

**CASES**

*Amchem Prods. Inc. v. Windsor*
  521 U.S. 591 (1997)................................................................. 17, 21, 24

*Animal Sci. Prods. Inc. v. China Minmetals Corp.*
  654 F.3d 462 (3d Cir. 2011) ..................................................... 16

*Byrd v. Civil Serv. Comm' of City and County of San Francisco*
  459 U.S. 1217 (1983)................................................................. 10

*Churchill Vill., L.L.C. v. GE*
  361 F.3d 566 (9th Cir. 2004) .................................................. 10, 24

*Comcast Corp. v. Behrend*
  569 U.S. 27 (2013)................................................................. .16

*ERI Max Entertainment, Inc. v. Streisand*
  690 A.2d 1351 (R.I. 1997)…………………………………………..…7

*Gaudin v. Saxon Mortg. Servs., Inc.*
  No. 11-CV-01663-JST, 2015 WL 4463650 (N.D. Cal. July 21, 2015……………….……..9, 11, 12

*Gautreaux v. Pierce*
  690 F.2d 616 (7th Cir. 1982) ..................................................... 9

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1988)……………………………………...10, 17, 18, 20

*Harris v. Palm Springs Alpine Estates, Inc.*
  329 F.2d 909 (9th Cir. 1964) ..................................................... 18

*In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*, No. 09 MDL 2007-GW(PJWX),
  2014 WL 12591624 (C.D. Cal. Jan. 10, 2014)…………….……………………………………26

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*
  270 F.R.D. 330 (N.D. Ill. 2010)................................................ 16

*In re Bluetooth Headset Prods. Liab. Litig.*
  654 F.3d 935 (9th Cir. 2011)……………………………………………………...12

*In re Brand Name Prescription Drugs Antitrust Litig.*
  No. 94-cv-897, 1994 WL 663590 (N.D. Ill. Nov. 18, 1994) ....................................... .23

*In re Catfish Antitrust Litig.*
    826 F. Supp. 1019 (N.D. Miss. 1993) .................................................................... 19

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
    No. 07-cv-5944-JST, 2013 WL 5429718 (N.D. Cal. June 20, 2013)...............4, 17, 21, 23

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
    No. 07-cv-5944-JST, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) ...............4, 18, 20, 22

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
    No. 07-cv-5944-JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016)............................*passim*

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
    No. 07-cv-5944-JST, 2016 WL 4126533 (N.D. Cal. Aug. 3, 2016)................................21

*In re Cement and Concrete Antitrust Litig.*
    817 F.2d 1435 (9th Cir.1987) ....................................................................................29

*In re Citric Acid Antitrust Litig.*
    No. 95-1092, 1996 WL 655791 (N.D. Cal. 1996)...............................................................19

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
    No. M 02–1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006)..............................19, 22

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    516 F. Supp. 2d 1072 (N.D. Cal. 2007)...........................................................................7

*In re Equity Funding Corp. of America Sec. Litig.*
    603 F.2d 1353 (9th Cir. 1979).....................................................................................29

*In re Flash Memory Antitrust Litig.*
    No. 07-cv-0086 SBA , 2010 WL 2332081 (N.D. Cal. June 9, 2010)................................15

*In re Graphics Processing Units (GPU) Antitrust Litig.*
    253 F.R.D. 478, 507 (N.D. Cal. 2008)...........................................................................15

*In re High Tech Emp. Antitrust Litig.*
    No. 11-cv-2507-LHK,  2013 WL 6328811 (N.D. Cal. Oct. 30, 2013)...........................11

*In re Initial Public Offering Sec. Litig.*
    671 F.Supp.2d 467 (S.D.N.Y. 2009)...........................................................................29

*In re Lithium Ion Batteries Antitrust Litig.*
    No. 13-MD-2420-YRG,  2017 WL 1391491 (N.D. Cal. Apr. 12, 2017) ........................15

*In re Mercury Interactive Corp. Securities Litig.*
     618 F.3d 988 (9th Cir. 2010)........................................................................................31

*In re Michael Milken and Associates Sec. Litig.*
   150 F.R. D. 57 (S.D.N.Y. 1993) ........................................................................26

*In re Motorsports Merchandise Antitrust Litig.*
   112 F. Supp. 2d 1329 (N.D. Ga 2000)...............................................................10

*In re NASDAQ Market-Makers Antitrust Litig.*
   176 F.R.D. 99 (S.D.N.Y. 1997).................................................................10, 15

*In re Oracle Sec. Litig.*
   No. C–90–0931–VRW, WL 502054 (N.D. Cal. June 16, 1994) ......................26

*In re Relafen Antitrust Litig.*
   221 F.R.D. 260, 275 (D.Mass. 2004)................................................................ 22

*In re Rubber Chemicals Antitrust Litig.*
   232 F.R.D. 346 (N.D. Cal. 2005)..................................................................... 19

*In re Static Random Access Memory (SRAM) Antitrust Litig.*
   264 F.R.D. 603 (N.D. Cal. 2009)..................................................................... 23

*In re Syncor ERISA Litig.*
   516 F.3d 1095 (9th Cir. 2008)...........................................................................10

*In re Tableware Antitrust Litig.*
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................... 11, 24

*In re Visa Check/Mastermoney Antitrust Litig.*
   297 F.Supp.2d 503 (E.D.N.Y. 2003)................................................................28

*In re Visa Check/Master Money Antitrust Litig.*
   280 F.3d 124 (2d Cir. 2001)..............................................................................22

*Lotes Co.,  Ltd. v. Hon Hai Precision Industry Co.*
   753 F.3d 395 (2d Cir. 2014).............................................................................. 16

*Minn-Chem Inc. v. Agrium Inc.*
   683 F.3d 845 (7th Cir. 2012) ............................................................................ 16

*Motorola Mobility LLC v. AU Optronics Corp.*
   775 F.3d 816 (7th Cir. 2015) .............................................................................16

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*
   221 F.R.D. 523 (C.D. Cal. 2004)......................................................................17

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*
  688 F.2d 615 (9th Cir. 1982)…………………………………………………...…10, 17

*SEC v. Capital Consultants, LLC*
  397 F.3d 733 (9th Cir. 2005)……………………………….…………….....29

*Slaven v. BP America, Inc.*
  190 F.R.D. 649 (C.D. Cal. 2000) ........................................................................... 18

*Torrisi v. Tucson Elec. Power Co.*
  8 F.3d 1370 (9th Cir. 1993) ................................................................................... 25

*Thomas v. MagnaChip Semiconductor Corp.*
  No. 14-cv-01160-JST, 2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ……………………………26

*Thomas & Thomas Rodmakers Inc. v. Newport Adhesives & Composites, Inc.*
  209 F.R.D 159 (C.D. Cal. 2002) ........................................................................... 21

*U.S. v. Hsiung*
  778 F.3d 738 (9th Cir. 2015) ................................................................................. 16

*Valentino v. Carter-Wallace, Inc.*
  97 F.3d 1227 (9th Cir. 1996) ................................................................................. 23

*Van Bronkhorst v. Safeco Corp.*
  529 F.2d 943 (9th Cir. 2004) ................................................................................. 10

*Wal-Mart Stores Inc. v. Dukes*
  564 U.S. 338 (2011)………………………………………………………...…16

*Wal-Mart Stores, Inc. v. Visa U.S.A.*
  396 F.3d 96 (2d Cir. 2005) ……………………………………………………28

*Williams v. Sinclair*
  529 F.2d 1383 (9th Cir. 1975) ............................................................................... 22

**FEDERAL STATUTES**

15 U.S.C. § 6a ........................................................................................................16

28 U.S.C. §1715 .................................................................................................... 25

**FEDERAL RULES**

Fed. R. Civ. P. 23 .......................................................................................... *passim*

  Rule 23(a)(1) ..................................................................................................... 18

  Rule 23(a)(2) ..................................................................................................... 18

Rule 23(a)(3) ............................................................................................................ 19

Rule 23(a)(4) .............................................................................................................. 20

Rule 23(b)(3) ................................................................................................... 18, 21, 23

Rule 23(c)(2)(B) ......................................................................................................... 24

Rule 23(e) ........................................................................................................... 1, 9, 24

Rule 23(f) ..................................................................................................................... 4

**STATE STATUTES**

Montana Code Ann. §30-14-102 ................................................................................. 7

Montana Code Ann. §30-14-133 ................................................................................. 7

Mo. Rev. Stat. §407.025 ............................................................................................. 7

R.I. Gen. Stat. §6-13.1-5.2 .......................................................................................... 7

**OTHER AUTHORITIES**

Newberg on Class Actions (5th ed. 2014)

§ 8.32 ................................................................................................................... 24

§ 11.53 ................................................................................................................. 24

§ 13.45 ................................................................................................................. 11

Wright, Miller & Kane, Federal Practice and Procedure: Civil Procedure (3d. ed. 2004)

§ 1781 .................................................................................................................. 23

Manual for Complex Litigation (Fourth)

§ 21.311 ............................................................................................................... 24

§ 21.632 ............................................................................................................ 9, 17

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 5, 2018 at 2:00 p.m., before the Honorable Jon S. Tigar, United States District Court for the Northern District of California, 450 Golden Gate Ave., Courtroom 9, 19th Floor, San Francisco, California, the Indirect Purchaser Plaintiffs ("IPPs") will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order:

1.      Certifying a Settlement Class;

2.      Preliminarily approving the class action settlement ("Proposed Settlement") with Defendant Mitsubishi Electric Corporation ("Mitsubishi Electric");

3.      Granting preliminary approval to the proposed plan of distribution and proposed claim form;

4.      Approving the proposed notice plan and directing distribution of notice of the Proposed Settlement to the Class, and providing Class Members with an opportunity to opt out of or object to the Proposed Settlement;

5.      Appointing Trump, Alioto, Trump & Prescott, LLP as Class Counsel; and

6.      Scheduling final approval of the Proposed Settlement.

The grounds for this motion are that the Proposed Settlement is within the range of reasonableness to justify issuing notice of the Settlement to Class members and to schedule final approval proceedings, and the proposed Settlement Class satisfies the certification requirements for such class action settlements.

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the accompanying Declarations of Mario N. Alioto and Joseph Fisher in support of the motion, and any further papers filed in support of this motion, the argument of counsel, and all pleadings and records on file in this matter.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.     INTRODUCTION

3

The Indirect Purchaser Plaintiffs ("IPPs") seek preliminary approval under Rule 23 of the

4

Federal Rules of Civil Procedure of a class action settlement (the "Proposed Settlement") with

5

Defendant Mitsubishi Electric Corporation ("Mitsubishi Electric"). *See* Declaration of Mario N.

6

Alioto In Support of Motion for Preliminary Approval of Class Action Settlement with Mitsubishi

7

Electric Corporation ("Alioto Decl."), ¶ 2, Ex. A (Settlement Agreement), filed herewith.

8

The Proposed Settlement resolves all claims brought by IPPs against Mitsubishi Electric and

9

obligates Mitsubishi Electric to pay Thirty Three Million Dollars ($33,000,000) to IPPs.[1]  If

10

approved, this Proposed Settlement—along with the nine previously-approved settlements[2]—will

11

result in total settlement payments of Six Hundred and Nine Million Seven Hundred and Fifty

12

Thousand Dollars ($609,750,000) to indirect purchasers of Cathode Ray Tubes ("CRTs") and

13

products containing CRTs, such as televisions and computer monitors (hereinafter "CRT Products").

14

The Proposed Settlement is contingent upon the certification by this Court of a proposed

15

settlement class consisting of statewide classes for 31 "Indirect Purchaser Jurisdictions."[3] These

16

classes include indirect purchasers of CRTs and CRT Products, who or which seek money damages

17

under the laws of 30 states and the District of Columbia (collectively the "Settlement Class"). Alioto

18

Decl., Ex. A ¶¶ 5, 10. Each of the 31 statewide classes is substantively identical to the comparable

19

20

---

21

[1] The $33,000,000 Settlement Amount, plus interest, is referred to as the "Settlement Fund."

22

[2] The Court granted final approval to settlements with Chunghwa Picture Tubes Ltd. ("Chunghwa") on March 22, 2012 (ECF No. 1105); the LG Electronics Defendants on April 18, 2014 (ECF No. 2542); and, the Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson and TDA Defendants on July 7, 2016. ECF No. 4712. The approval of these latter seven settlements is on appeal to the Ninth Circuit. *See* ECF Nos. 4743-47. All nine settlements are collectively referred to as the "Prior Settlements." All defendants are collectively referred to as "Defendants."

23

24

25

[3] "Indirect Purchaser Jurisdiction/s" is defined in Paragraph 5 of the Settlement Agreement to mean Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and/or Wisconsin.

26

27

28

1  statewide classes certified as part of the Settlement Class for the seven settlements approved in 2016.

2  They are also very similar to the comparable statewide classes certified in 2013. In addition, this

3  settlement includes citizens of nine additional states.

4  The issue at the preliminary approval stage is not whether a proposed settlement is fair,

5  reasonable and adequate, but rather whether it is within the range of possible approval to justify

6  publishing notice of the settlement to the class members and scheduling final approval proceedings.

7  The Proposed Settlement here was reached after extensive arm's-length negotiations between

8  experienced and informed counsel, and easily meets the standards for preliminary approval.

9  IPPs propose to compensate members of the Settlement Class according to a proposed plan

10  of distribution under which qualifying claimants are eligible to receive a distribution from the

11  Settlement Fund based on the number and type of CRTs or CRT Products purchased, as documented

12  in the proposed claim form.

13  Notice to Settlement Class Members will be accomplished by a comprehensive notice

14  program designed by Joseph Fisher of The Notice Company, who also designed the notice programs

15  approved by the Court in connection with the previous settlements. *See* Declaration of Joseph Fisher

16  Re: Mitsubishi Notice Program ("Fisher Decl.") at ¶ 2. The extensive notice program includes direct

17  mail and email notice to existing claimants, millions of corporations and individual consumers, as

18  well as published notice in various print publications, online, and on television. *Id.* ¶¶ 8-30. The

19  notice directs interested persons to the website, www.CRTclaims.com, where they can find

20  additional, detailed information. *Id.* ¶ 25. The proposed notice program is designed to provide the

21  best notice practicable under the circumstances, and comports with the requirements of due process

22  and Rule 23. *Id.* at ¶ 31.

23  For these reasons, the Proposed Settlement meets all requirements for preliminary approval,

24  and the IPPs respectfully request that the Court enter an order: (i) certifying the Settlement Class; (ii)

25  granting preliminary approval of the Proposed Settlement; (iii) preliminarily approving the proposed

26  plan of distribution and proposed claim form; (iv) approving the notice program as complying with

27

28

1   due process and Rule 23; (v) appointing Trump, Alioto, Trump & Prescott, LLP as Class Counsel;

2   and (vi) setting a schedule for a final approval hearing.

3   **II.     FACTUAL AND PROCEDURAL BACKGROUND**

4          This Court has found that IPPs' action against Mitsubishi Electric relates to the above-

5   captioned *CRT* multidistrict litigation (the "MDL"), which has been pending since late 2007. ECF

6   No. 5178. As this Court is aware, the *Luscher* action and the MDL actions assert similar allegations

7   of an international conspiracy to fix the prices of CRTs from March 1, 1995 through November 25,

8   2007. IPPs filed their original complaints in various federal courts throughout the country in late

9   2007 and early 2008. The JPML transferred all related actions to this Court on February 15, 2008,

10  where they were coordinated with similar actions filed by direct purchaser plaintiffs ("DPPs"). ECF

11  No. 122. On May 9, 2008, the Court appointed Mario N. Alioto of Trump, Alioto, Trump &

12  Prescott, LLP as Interim Lead Class Counsel for the IPPs. ECF No. 282. Alioto Decl. ¶ 3.

13         Mitsubishi Electric was not named as a defendant in any of these early complaints, including

14  IPPs' first three consolidated amended complaints ("CACs") in the MDL. *See* ECF Nos. 437, 716,

15  827. Mitsubishi Electric's CRT market share was very small and it was not a named target of the

16  DOJ's investigation, or of any foreign government's investigation into the alleged CRT conspiracy.

17  Alioto Decl. ¶ 4. In addition, Chunghwa, the DOJ's amnesty applicant with which IPPs settled in

18  April 2009—and which provided IPPs with substantial cooperation, including an oral proffer

19  regarding the CRT conspiracy— did not implicate Mitsubishi Electric. *Id.* ¶ 5.

20         Nonetheless, IPPs continued to investigate Mitsubishi Electric's involvement in the CRT

21  conspiracy and entered into a tolling agreement with Mitsubishi Electric in early November 2011.

22  Pursuant to the tolling agreement, Mitsubishi Electric produced its CRT and CRT Product sales data

23  to IPPs. *Id.* ¶ 6. IPPs' Fourth CAC, filed on January 10, 2013, named Mitsubishi Electric as a co-

24  conspirator. ECF. No. 1526. As a result, in order to hold the other Defendants jointly and severally

25  liable for the damages caused by Mitsubishi Electric, IPPs had to prove its participation in the CRT

26  conspiracy. Alioto Decl. ¶ 7. As part of IPPs' motion for class certification in the litigation against

27  the other Defendants, IPPs' expert, Dr. Netz, included Mitsubishi Electric's CRT sales data in her

28

1  analyses of pass-through and damages to the indirect purchaser classes. ECF No. 1388. Class

2  Counsel also analyzed evidence of Mitsubishi Electric's participation in the CRT conspiracy. *Id.* ¶ 8.

3  Following multiple rounds of briefing, this Court adopted the Reports and Recommendations of

4  Interim Special Master Martin Quinn[4] and certified 22 statewide classes of indirect purchasers of

5  CRTs. *CRT,* 2013 WL 5391159 (N.D. Cal. Sept. 23, 2013). The Ninth Circuit Court of Appeals

6  denied the Defendants' petition to appeal the District Court's order pursuant to Fed. R. Civ. P. 23(f).

7  ECF No. 2283; Alioto Decl. ¶ 8.

8          In late 2013 and 2014, several DAPs and the DPPs filed suit against Mitsubishi Electric and

9  certain subsidiaries. *See, e.g., Interbond Corporation of America v. Technicolor SA (f/k/a Thomson*

10  *SA), et al.,* Case No. 13-cv-05727-JST; *Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi*

11  *Electric Corporation, et al.*, Case No. 14-CV-2058-JST. The Court granted in part and denied in part

12  Mitsubishi Electric's motion to dismiss various DAP complaints. ECF No. 2439. Mitsubishi Electric

13  and its subsidiaries became formal parties to the *CRT* MDL, and IPPs received the documents and

14  data they produced in discovery. Alioto Decl. ¶ 9. The DAPs and DPPs also deposed several

15  Mitsubishi Electric witnesses. IPP Counsel assisted in reviewing, translating and selecting exhibits

16  for many of these depositions, and attended the depositions and/or reviewed the transcripts. *Id.* ¶ 10.

17          In 2014 and early 2015, IPPs and certain DAPs were preparing for trial, originally scheduled

18  to begin on March 9, 2015.[5] The parties exchanged expert reports on liability and damages from

19  April 2014 through September 2014. These included opening, opposition, rebuttal and sur-rebuttal

20  reports from 17 expert witnesses—including Mitsubishi Electric's expert, Professor Dennis W.

21  Carlton. All of these experts were deposed, often multiple times, regarding their reports. Dr. Netz

22  included Mitsubishi Electric CRT data and documents in her analyses of pass-through and damages

23  to the indirect purchaser classes. Alioto Decl. ¶ 11.

24          On November 7, 2014, the Defendants filed 36 motions for summary judgment. *See* ECF No.

25  _____

26  [4] *In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 07-cv-5944-JST, MDL No. 1917, 2013 WL
   5429718 (N.D. Cal. June 20, 2013).

27  [5] By Order dated February 9, 2015, the Court vacated the trial date (Dkt. No. 3515).

28

1    4071-1, Ex. 11 (list of summary judgment motions). Eleven of these were directed specifically

2    against IPPs' claims. Mitsubishi Electric and its subsidiaries also filed summary judgment motions

3    against the DAPs' claims. ECF Nos. 3033-4, 3037. Around the same time, the parties exchanged

4    trial exhibit lists, witness lists, deposition designations, jury instructions, and special verdict forms,

5    and filed 64 motions *in limine* and other pretrial motions. Alioto Decl. ¶ 12. In compiling the trial

6    exhibits and designating deposition testimony, IPP Counsel worked closely with the DAPs to assess

7    the evidence of Mitsubishi Electric's participation in the CRT conspiracy. IPP Counsel prepared a

8    memorandum detailing the evidence of Mitsubishi Electric's participation in the conspiracy. IPP

9    Counsel also participated in mock trials during which evidence of Mitsubishi Electric's participation

10   in the CRT conspiracy was presented to mock juries. *Id*. ¶ 13.

11        Between January and April 2015 and after the summary judgment motions were fully

12   briefed, IPPs entered into their settlements with the Philips, Panasonic, Hitachi, Toshiba, and

13   Samsung SDI Defendants. Consequently, these defendants withdrew their summary judgment

14   motions, motions *in limine*, and other pretrial motions relating to the IPP case pending final approval

15   of their settlements. IPPs also entered into settlements with the Thomson/Technicolor defendants in

16   June 2015. These settlements were finally approved on July 7, 2016 (ECF No. 4712). *Id*. ¶ 14.

17        After final approval of IPPs' settlements, the Court ruled upon many of the Defendants'

18   summary judgment motions as they related to the DAPs' claims against Defendants. The Court

19   granted the motion of two Mitsubishi Electric subsidiaries (ECF No. 4559) and denied the motion of

20   Mitsubishi Electric (ECF No. 5128). Alioto Decl. ¶ 15.

21        IPPs filed their complaint against Mitsubishi Electric on July 20, 2017. *Id*. ¶ 16. The parties

22   executed their settlement agreement on October 25, 2017. *Id*. ¶ 17.

23   **III.    SUMMARY OF SETTLEMENT TERMS**

24        **A.    The Proposed Settlement**

25        The Proposed Settlement resolves all claims against Mitsubishi Electric for its alleged part in

26   the alleged global conspiracy to fix prices of CRTs. Alioto Decl. ¶ 18.

27        The proposed Settlement Class is defined as follows:

28

5

(a) All persons or entities who or which indirectly purchased in an Indirect Purchaser Jurisdiction, other than Missouri, Montana, and Rhode Island, for their own use and not for resale, CRTs or CRT Products manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator, where such purchase took place during the following time periods:

1) From March 1, 1995 through November 25, 2007 for purchases in Arizona, Arkansas, California, District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin;

2) From June 25, 2002 through November 25, 2007 for purchases in Hawaii;

3) From July 20, 2002 through November 25, 2007 for purchases in Nebraska;

4) From February 4, 1999 through November 25, 2007 for purchases in Nevada;

(b) All persons who or which indirectly purchased in Missouri from March 1, 1995 through November 25, 2007, for their own use and not for resale, and primarily for personal, family or household purposes, CRTs or CRT Products manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator;

(c) All persons who or which indirectly purchased in Montana from March 1, 1995 through November 25, 2007, for their own use and not for resale, and primarily for personal, family or household purposes, CRTs or CRT Products manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator;

(d) All natural persons who indirectly purchased in Rhode Island from March 1, 1995 through November 25, 2007, for their own use and not for resale, and primarily for

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

personal, family, or household purposes, CRTs or CRT Products manufactured and/or sold by

any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator;

(e)     Specifically excluded from the Settlement Class are Mitsubishi Electric

Releasees, Alleged Co-Conspirators, any federal, state or local government entities, and any

judicial officer presiding over this action and the members of his/her immediate family and

judicial staff.

Alioto Decl. ¶ 19, Ex. A, Settlement Agreement ¶ 10 (as amended by Addendum, described below).

The proposed Settlement Class differs slightly, and not substantively, from the Class alleged

in IPPs' complaint against Mitsubishi Electric (*see* No. 17-cv-04067-JST, ECF No. 1). In negotiating

the Settlement Agreement with Mitsubishi Electric, the parties agreed to adjust the Settlement Class

definition in order to clarify that the CRT Product must have been *purchased in* one of the 30 states

or the District of Columbia, and that Missouri, Montana, and Rhode Island class members must have

purchased primarily for personal, family, or household purposes. Alioto Decl. ¶ 20.[6]

The proposed Settlement Class definition is similar to the definition of the Settlement Class

certified in July 2016. *See In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 07-cv-05944-JST,

MDL No. 1917, 2016 WL 3648478, at *4 (N.D. Cal. July 7, 2016). The only differences are that

there is no nationwide injunctive relief class here (because there is no injunctive relief claim alleged

in the complaint), and the class includes nine additional state subclasses (because there are viable

claims for these states and viable plaintiffs stepped forward to assert the claims). Alioto Decl. ¶ 23.

---

[6] *See* Addendum to Settlement Agreement, Alioto Decl. Ex. A. These adjustments are consistent with the consumer protection statutes in Missouri, Montana, and Rhode Island, which require that the product at issue must have been purchased "primarily for personal, family, or household purposes." Mo. Rev. Stat. §407.025; MCA §30-14-102, §30-14-133; R.I. Gen. Stat. §6-13.1-5.2. *See also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1116 (N.D. Cal. 2007) (citing *ERI Max Entertainment, Inc. v. Streisand,* 690 A.2d 1351, 1354 (R.I. 1997)) ("the Rhode Island Supreme Court has construed the UTPCPA to require that only natural persons are permitted to bring private rights of action under the statute, which natural persons must have 'purchase[d] or lease[d] goods or services primarily for personal, family, or household purposes.'") The adjustments are also consistent with the allegations of the Complaint (17-cv-04067-JST, ECF No. 1), ¶¶ 277-278, 285. Alioto Decl. ¶ 21.

1  Thus, the Court's analysis of Rule 23's requirements for class certification in 2016 applies equally to
2  its analysis of the proposed Settlement Class here.

3  **B.  Settlement Discussions**

4  The settlement negotiations with Mitsubishi Electric were hard-fought and highly
5  adversarial. The settlement was reached only after extensive, arm's-length negotiations between
6  counsel for the Mitsubishi Electric and IPPs. These negotiations took place over many months. They
7  involved multiple telephone conferences, an in-person meeting attended by counsel for all parties
8  and representatives of Mitsubishi Electric from Japan, and an in-person mediation before Magistrate
9  Judge Corley. Indeed, the final settlement was the product of this mediation before Judge Corley.
10  The parties initially executed the Settlement Agreement on October 25, 2017.[7] *Id.* ¶ 24.

11  **C.  Consideration**

12  **1.  Cash**

13  Under the Proposed Settlement, Mitsubishi Electric has paid Thirty Three Million Dollars
14  ($33,000,000) in cash (the "Settlement Amount") to settle all indirect purchaser claims against the
15  Mitsubishi Electric Releasees (defined in the Settlement Agreement). The Settlement Amount has
16  been deposited into an escrow account and has been invested in United States Treasury bills and
17  other instruments insured or guaranteed by the full faith and credit of the United States. If the
18  Proposed Settlement is finally approved, any interest earned thereon (together with the Settlement
19  Amount) will become part of the Settlement Fund. Alioto Decl. ¶ 25, Ex. A ¶¶ 25-26.

20  **2.  Cooperation**

21  In addition to monetary consideration, the Proposed Settlement contains cooperation
22  provisions requiring Mitsubishi Electric to authenticate documents and data used in the prosecution
23  of any continuing litigation. Alioto Decl., Ex. A ¶ 31. The cooperation provisions are material and
24  valuable terms of the Settlement, which could be triggered if for any reason the Prior Settlements are

25

26  [7] The parties have agreed in principle to amend the Settlement Class definition by an Addendum to
27  the Settlement Agreement, as described in note 7, *supra*. Alioto Decl. ¶ 21. IPPs are awaiting signature by Mitsubishi Electric, and will file the signed Addendum as soon as it is received. *Id.*¶ 22.

28

8

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

1  disapproved on appeal, or in continued litigation against remaining defendants (*e.g.*, the Irico

2  defendants). Alioto Decl. ¶ 26.

3       **D.     Release**

4       If the Proposed Settlement becomes final, IPPs and class members will release all federal and

5  state-law claims against Mitsubishi Electric "concerning the manufacture, supply, distribution, sales

6  or pricing of CRTs or CRT Products . . . ." The release does not include claims for product defect,

7  personal injury or breach of contract not related to the subject matter of the Complaint. In addition,

8  the Proposed Settlement does not release claims arising under the laws of any jurisdiction not

9  included in the Indirect Purchaser Jurisdictions. Alioto Decl. ¶ 27, Ex. A ¶¶ 22-23.

10 **IV.     PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENTS IS IN THE
   BEST INTEREST OF THE MEMBERS OF THIS SETTLEMENT CLASS**

11

12      **A.     Class Action Settlement Procedure**

13      Fed. R. Civ. P. 23(e) requires court approval of any settlement of claims brought on a class

14 basis. "Courts generally employ a two-step process in evaluating a class action settlement. First,

15 courts make a 'preliminary determination' concerning the merits of the settlement." *Gaudin v. Saxon*

16 *Mortg. Servs., Inc.*, No. 11-CV-01663-JST, 2015 WL 4463650, at *3 (N.D. Cal. July 21, 2015),

17 citing *Manual for Complex Litigation, Fourth* ("MCL 4th") § 21.632 (FJC 2004). The grant of

18 preliminary approval then triggers a notice and claim period during which the parties make

19 reasonable efforts to notify all potential beneficiaries of the settlement pursuant to a notice process

20 approved by the court.

21      Preliminary approval is distinct from the second step in the process–a fairness hearing and

22 determination of "final approval." *See* MCL, 4th § 21.633 (explaining that courts "must make a

23 preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and

24 must direct the preparation of notice of the certification, proposed settlement, and date of the final

25 fairness hearing."). Preliminary approval is intended to "ascertain whether there is any reason to

26 notify class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux*

27 *v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). In contrast, the purpose of the final approval

28

1   fairness hearing is to determine whether the settlement is fair, reasonable and adequate after notice

2   has been given to the class.

3         **B.**     **Standards for Settlement Approval**

4         It is well established that there is "an overriding public interest in settling litigation . . .

5   particularly . . . in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir.

6   1976). *See also CRT*, 2016 WL 3648478, at *4, citing *In re Syncor ERISA Litig.,* 516 F.3d 1095,

7   1101 (9th Cir. 2008) ("There is a strong judicial policy that favors settlements, particularly where

8   complex class action litigation is concerned."). Courts have particularly recognized that compromise

9   is favored for antitrust litigation, which is notoriously difficult and unpredictable.[8]

10         The approval of a proposed settlement of a class action is a matter of discretion for the trial

11   court. *Churchill Vill. L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004). In exercising that

12   discretion, however, the Court should recognize that as a matter of sound policy, settlements of

13   disputed claims are encouraged and a settlement approval hearing "is not to be turned into a trial or

14   rehearsal for trial on the merits."[9] Furthermore, courts must give "proper deference" to the settlement

15   agreement, because "the court's intrusion upon what is otherwise a private consensual agreement

16   negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a

17   reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion

18   between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and

19   adequate to all concerned." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998)

20   ("Settlement is the offspring of compromise; the question we address is not whether the final product

21   could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

22

23   [8] *See, e.g., In re Motorsports Merchandise Antitrust Litig.,* 112 F.Supp.2d 1329, 1337 (N.D. Ga.
2000) ("An antitrust class action is arguably the most complex action to prosecute. . . .  The legal

24   and factual issues involved are always numerous and uncertain in outcome."); *In re NASDAQ
Market Makers Antitrust Litig.*, 187 F.R.D. 465, 475-76 (S.D.N.Y. 1998) ("Antitrust litigation in

25   general, and class action litigation in particular, is unpredictable . . . .)

26   [9] *Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco,* 688 F.2d 615, 625

27   (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n of City and County of San
Francisco,* 459 U.S. 1217 (1983).

28

Preliminary approval requires a court simply to find that the proposed settlement falls "within the range of possible approval" and should be given further consideration. *Gaudin*, 2015 WL 4463650, at *3, citing *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). Preliminary approval of a settlement is appropriate if "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *Gaudin,* 2015 WL 4463650, at *4, citing *In re Tableware,* 484 F.Supp.2d at 1079.

### C.   The Proposed Settlement Is Within the Range of Reasonableness

All of the relevant factors heavily favor approval of the Proposed Settlement.

#### 1.   The Proposed Settlement is the Product of Serious, Informed, and Non-Collusive Negotiations

Any settlement is entitled to an initial presumption of fairness where it is the result of arm's-length negotiations among experienced counsel. *See In re High Tech Emp. Antitrust Litig.,* No. 11-cv-2507-LHK, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013); *see also Newberg on Class Actions* (5th ed. 2014) ("*Newberg*") § 13:45. Here, as explained above, the Settlement with Mitsubishi Electric was informed by almost ten years of vigorous litigation in the *CRT* MDL, where the case was fully developed for trial. Alioto Decl. ¶¶ 3-16, 28. IPPs negotiated this Proposed Settlement after extensive pre-filing investigation, class certification, full discovery, the exchange of expert reports on liability and damages, the filing of oppositions to defense motions for summary judgment, and other rigorous and fact-intensive motions. *Id.* ¶ 29. IPPs had reviewed and analyzed millions of documents produced by Mitsubishi Electric, the other Defendants, and third parties; had taken (or participated in taking) over 100 depositions of defense witnesses—including Mitsubishi Electric witnesses; and had conducted extensive economic analyses of the data produced by Mitsubishi Electric, the other Defendants, and third parties. *Id.* ¶ 30. IPPs also participated in three mock trials and observed 11 mock juries. IPPs were fully prepared to try this case to a jury. *Id.* ¶ 31. Thus, IPPs negotiated the Proposed Settlement with detailed knowledge of the factual and legal issues underlying the parties' claims and defenses, and their strengths and weaknesses. *Id.* ¶ 32.

1    The Proposed Settlement itself was reached after months of hard-fought and highly

2    adversarial negotiations, including multiple telephone conferences, an in-person meeting attended by

3    counsel for all parties and representatives of Mitsubishi Electric from Japan, and an in-person

4    mediation before Magistrate Judge Corley. *Id.* ¶ 24. The vigorous litigation and the fact that the

5    Proposed Settlement was mediated by Magistrate Judge Corley demonstrate that it was not the

6    product of collusion. *See Gaudin,* 2015 WL 4463650, at *4-5 (relying on vigorous litigation and

7    mediation by retired Judge to find no indication of collusion).

8                    **2.       The Proposed Settlement Has No Obvious Deficiencies**

9            The Proposed Settlement has no obvious deficiencies. First, the settlement amount—$33

10   million—is in the same range (and indeed is more than) the settlements reached with the other

11   Japanese defendants, which this Court has already approved.[10] Moreover, when combined with the

12   payments under the Prior Settlements, the recovery for indirect purchaser class members totals

13   $609,750,000. As discussed below, $33 million is a good recovery in light of the expense, risk, and

14   delay of continued litigation and trial.

15           Second, the Proposed Settlement contains no suspect provisions. For example, there are no

16   coupons or vouchers, and there is no possible reversion to Mitsubishi Electric of any part of the

17   settlement payment. *See In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 947-48 (9th Cir.

18   2011) (listing various suspect provisions including reversion to defendants). In addition, while the

19   Proposed Settlement does provide that Mitsubishi Electric will not object to attorneys' fees of up to

20   one-third of the Settlement Fund, there is no agreement on the amount of attorneys' fees Class

21   Counsel will receive. Like the Prior Settlements, any award of attorneys' fees remains within the

22   discretion of the Court, and will be awarded from the common fund. *See CRT,* 2016 WL 3648478, *

23   10 (internal citations omitted) ("'[C]lear sailing provision . . . does not signal the possibility of

24   collusion where, as here, Class Counsel's fee will be awarded by the Court from the same common

---

26   [10] The Toshiba Defendants paid $30 million; the Hitachi Defendants paid $28 million; and Panasonic
27   Corporation, MT Picture Display Co., Ltd., and Beijing Matsushita Color CRT Co., Ltd. (the
     "Panasonic Defendants") together paid $70 million. ECF Nos. 3862-2, 3862-3, 3862-4.

28

fund as the recovery to the class.'"").

### 3. The Proposed Settlement and the Plan of Distribution Treat Class Representatives and All Segments of the Class Fairly and Equitably

The Proposed Settlement provides for a lump-sum payment to the Settlement Class. Alioto Decl., Ex A, ¶ 25. The Proposed Settlement's terms do not distinguish between class members in any way, and treat all class members equally. Under the proposed plan of distribution—which is separate from the Proposed Settlement (*id*. ¶ 29)—all class members that submit valid claims will be entitled to compensation calculated according to the same adjusted pro-rata formula, based on the number of claims filed and the number and type of CRT Products each claimant purchased during the class period. The pro-rata distribution will be adjusted to account for the compensation already received by prior claimants from the Prior Settlements, and to allow for a minimum recovery for first-time claimants and prior claimants (as further described in Section VI, *infra*). Under this approach, individual consumers and other small claimants will be encouraged to file new claims and will receive meaningful compensation, and the reach of the overall settlement benefits related to the CRT conspiracy will be increased. In addition, the claims of class representatives will be treated no differently than the claims of absent Class members. And, while IPPs may seek modest incentive awards for the Class representatives, any award will be within the discretion of the Court.

### 4. The Proposed Settlement Is Within the Range of Possible Final Approval

The $33 million consideration is within the range of possible approval. As noted, it is consistent with the IPP settlements this Court has approved with the other Japanese defendants, which were similarly-situated to Mitsubishi Electric in terms of their role in the CRT conspiracy and market share. Indeed, Mitsubishi Electric's role in the conspiracy was less than that of the other Japanese defendants and its market share was smaller.  In addition, Mitsubishi Electric has colorable arguments that it withdrew from the conspiracy when it exited the CRT business in 2004 and that the statutes of limitations have run. Yet, it is paying slightly more to settle the claims against it than Toshiba ($30 million) and Hitachi ($28 million).

In addition, when combined with the Prior Settlement amounts, the total recovery to indirect purchasers is $609,750,000. In the context of indirect purchaser price-fixing cases, this total

1   recovery is significant. The indirect *LCD* case is one of the only cases to recover more. However, the

2   LCD conspiracy started more recently (i.e. 2001) and was therefore easier to prove because evidence

3   had not been lost or destroyed and witnesses' memories were fresh; most of the defendants had pled

4   guilty to violations of the Sherman Act and admitted that their conduct had an impact in the United

5   States; and the U.S. DOJ's criminal fines totaled $894 million. Here, the conspiracy period started

6   over 20 years ago (i.e., 1995) and many of the alleged participants were bankrupt or no longer

7   existed, and employees had left the company or retired; only one defendant pled guilty to fixing

8   prices of one type of CRT (Color Display Tubes used in monitors) and only for sales to certain

9   customers; and the DOJ's single criminal fine of $32 million amounted to less than 3.5 percent of the

10   fines made in connection with LCD conspiracy. Alioto Decl. ¶ 33.

11          The value of the Settlement must also be assessed in light of the relevant damages studies of

12   Plaintiffs' and Defendants' experts in the MDL. During the MDL, IPPs' expert, Dr. Netz, estimated

13   single damages to members of the 22 state classes to be $2.78 billion. *Id*. ¶ 34. For the purposes of

14   assessing this Proposed Settlement, this estimate must be adjusted to account for the nine additional

15   states included in the Settlement Class. Using the same general data and methodology, estimated

16   single damages to class members in the 30 states and the District of Columbia would be $3.36

17   billion. *Id*. ¶ 35. However, this number would have been strongly contested by Mitsubishi Electric.[11]

18          Using the $3.36 billion estimate, and combining the Prior Settlement and this Settlement

19   amounts ($576.75 m + $33 m = $609.75 m), the total recovery for indirect purchasers of CRTs will

20   be approximately 18% of their estimated damages. *Id*. ¶ 37. Such a result represents a reasonable

21   compromise of the parties' positions, and is well within the range of possible final approval. *See*

22   *CRT*, 2016 WL 3648478, at *6-7 (finding that 20% of single damages was "without question a good

---

[11] The other Defendants' experts opined that indirect purchasers suffered little or no damages as a
result of the alleged CRT conspiracy. They maintained that the alleged conspiracy was ineffective
and unsuccessful, and that IPPs would be incapable of "linking" any allegedly agreed-upon CRT
price increases to allegedly increased prices of CRT Products purchased by class members. Using
the same data and methodology, and correcting for what Defendants argued were "fatal flaws" in Dr.
Netz's work, one defense expert estimated the total class damages to be approximately $61 million.
Other defense experts maintained that the total class damages were zero.  *Id*. ¶ 36.

14

recovery and firmly in line with the recovery in other cases"). When compared to other *indirect* purchaser cases (many of which never make it past class certification[12]), this is an excellent result.

Additionally, the risks at trial (and on appeal) for the IPPs would be significant and support the reasonableness of the Proposed Settlement. For example, Mitsubishi Electric would contend, and the jury could agree, that it did not participate in the alleged conspiracy. Among other things, it would argue that it did not attend a single "glass" meeting; that it ceased manufacture of CPTs in 1998 and CDTs in 2004; that most of the CDTs it manufactured utilized a different technology and were marketed to different customers than those of the other alleged conspirators; and that its market share was very small (less than 5%), and it was therefore a minor player in the market with little incentive to join the conspiracy. Alioto Decl. ¶ 38.

Mitsubishi Electric would also assert that even if it did participate in the conspiracy, it withdrew when it stopped manufacturing CRTs in 2004, and the statutes of limitations had run. *See* ECF No. 4786 (granting summary judgment motion of certain Philips defendants on withdrawal grounds). It would likely also contest IPPs' evidence of antitrust standing, pass-through of the overcharge to indirect purchasers, and class certification. *See, e.g.,* ECF Nos. 3050, 3585 (motions filed by the other Defendants). Alioto Decl. ¶ 39. Finally, even assuming a favorable jury verdict at trial, IPPs could prevail on liability and still obtain no net recovery given the large settlement offset that would be applied.[13] While the IPPs remain confident in the strength of the evidence supporting their claims, a successful jury verdict remained a risky proposition. *See In re NASDAQ*, 187 F.R.D.

---

[12] *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.,* No. 13-MD-2420 YGR, 2017 WL 1391491, at *1 (N.D. Cal. Apr. 12, 2017) (denying class certification to indirect purchasers of lithium ion batteries in part because they were unable to prove impact (i.e. pass-through of the overcharge) on a class-wide basis); *In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2010 WL 2332081, at *19 (N.D. Cal. June 9, 2010) (same); *In re Graphics Processing Units (GPU) Antitrust Litig.,* 253 F.R.D. 478, 507 (N.D. Cal. 2008) (same).

[13] In *LCD*, for example, the jury awarded the direct purchaser class plaintiffs $87 million in damages against Toshiba, but they recovered nothing because the award was offset by their $443 million in settlements. Likewise, Best Buy recovered nothing at trial against Toshiba and Hannstar. The jury found that Toshiba did not participate in the conspiracy and awarded only $7.5 million against Hannstar. Once Best Buy's settlements with the other defendants in *LCD* had been offset, Hannstar owed nothing to Best Buy. Alioto Decl. ¶ 40.

465, 475-76 (S.D.N.Y. 1998) ("[T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.").

Moreover, any jury award would have to withstand appellate review. In this MDL, the Defendants raised substantial arguments against the Court's class certification decision. *See* ECF No. 2012 (Petition of Defendants for Permission to Appeal). These arguments were rejected on an interlocutory basis by the Ninth Circuit (ECF No. 2283), but that rejection provides no assurance that the arguments would have likewise been rejected on appeal at the end of the case. Class certification jurisprudence, in particular, has received heightened scrutiny from appellate courts in the wake of the Supreme Court's decisions in *Wal-Mart Stores Inc. v. Dukes,* 564 U.S. 338 (2011) and *Comcast Corp. v. Behrend,* 569 U.S. 27 (2013).

The Foreign Trade Antitrust Improvements Act (15 U.S.C. §6a) ("FTAIA") also posed significant risk, both at trial and on appeal. The statute has recently been the subject of several major appellate decisions from the Second, Third, Seventh and Ninth Circuits,[14] and the other Defendants attempted to dispose of many IPP claims on FTAIA grounds at summary judgment. *See* ECF Nos. 3006 and 3008. Thus, even though this Court denied the other Defendants' motions for summary judgment on FTAIA grounds, the FTAIA would still have been a major issue at trial, and there remains substantial uncertainty surrounding any appellate review of a district court's FTAIA analysis, no matter how careful or well-supported it may be.

Finally, even if IPPs were to win at every subsequent stage, continued litigation would delay recovery for years. Settlement eliminates the risk of litigation, providing substantial and certain relief to the Settlement Class now. *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 340, 347 (N.D. Ill. 2010) ("[A] future victory is not as valuable as a present victory."). In sum, the all-cash recovery of $33,000,000 is a substantial and material result that avoids the

---

[14] *See Lotes Co., Ltd. v. Hon Hai Precision Industry Co.,* 753 F.3d 395, 412-13 (2d Cir. 2014)*; Animal Sci. Prods. Inc. v. China Minmetals Corp.,* 654 F.3d 462 (3d Cir. 2011); *Minn-Chem Inc. v. Agrium Inc.,* 683 F.3d 845 (7th Cir. 2012); *Motorola Mobility LLC v. AU Optronics Corp.,* 775 F.3d 816 (7th Cir. 2015); and, *U.S. v. Hsiung*, 778 F.3d 738 (9th Cir. 2015).

meaningful risks IPPs faced at trial and on appeal.

### 5. The Experience and Views of Experienced Counsel Are Relevant to Initial Determination of Whether Settlement Is "Fair, Reasonable and Adequate"

The "experience and views of counsel" are also relevant to the preliminary approval analysis. *Hanlon,* 150 F.3d at 1026. *See also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *accord Officers for Justice,* 688 F.2d at 625. In fact, "the trial judge, absent fraud, collusion or the like, should be hesitant to substitute his own judgment for that of counsel." *Nat'l Rural Telecomms.,* 221 F.R.D at 528.

Here, Mitsubishi Electric was represented by counsel of the highest caliber, with years of experience and success in defending antitrust and class action claims, and years of experience in litigating the claims alleged in this case. Likewise, IPPs were represented by highly-experienced counsel, who engaged in extensive discovery and trial preparation. Thus, there is no dispute that the Proposed Settlement was reached by experienced counsel with extensive knowledge of the strengths and weaknesses of the case. *See CRT,* 2016 WL 3648478, at *8 (agreeing with the Special Master that IPP Counsel is very experienced and had thoroughly prepared for trial in the MDL).

For all of these reasons, the Proposed Settlement is within the range of possible approval as fair, reasonable and adequate and should be preliminarily approved.

### D. The Proposed Settlement Class Satisfies Rule 23(a)

Before granting preliminary approval of a settlement, the Court must determine that the proposed settlement presents a proper class for settlement purposes. *See Manual* § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Rule 23 governs the issue of class certification, whether the proposed class is a litigated class or, as here, a settlement class. Courts routinely and properly certify classes for settlement purposes only. *See, e.g., CRT,* 2016 WL 3648478, at *4 (certifying settlement class). Here, moreover, nearly identical litigated classes have already been certified by this Court. *See CRT,* 2013 WL 5429718, at *24-29 (Class certification R&R

17

recommending certification of 22 statewide classes); *CRT,* 2013 WL 5391159 (adopting Class Certification R&R).

Certification is appropriate where the proposed class and the proposed class representatives meet the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. In addition, certification of a class action for damages requires a showing that "questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class here likewise satisfies each of the Rule 23 criteria.

### 1. The Class Is So Numerous That Joinder Is Impracticable

The first requirement for maintaining a class action is that its members are so numerous that joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). Here, the Settlement Class consists of millions of individual and business consumers of CRTs and CRT Products in 30 states and the District of Columbia. "Numerosity" is easily established. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).

### 2. The Case Involves Questions of Law and Fact Common to the Class

The second prerequisite to class certification is the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). The commonality requirement is to be "construed permissively." *Hanlon*, 150 F.3d at 1019. Courts have held that a single common issue of law or fact is sufficient to satisfy the commonality requirement. *See Slaven v. BP America, Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000).

Here, all class members share numerous common questions of law and fact that go to the central issue in this matter—whether Mitsubishi Electric and other CRT manufacturers engaged in a price-fixing conspiracy which injured indirect purchasers when they paid more for CRTs and CRT Products than they would have paid absent the alleged conspiracy. These allegations give rise to numerous questions of law or fact common to the class, such as:

1.      Whether Mitsubishi Electric and other CRT manufacturers engaged in a contract, combination, and/or conspiracy to fix, raise, maintain, or stabilize prices of CRTs sold in the United States;

2.      Whether the alleged conspiracy violates the antitrust, consumer protection or other similar laws of the 30 states and the District of Columbia under whose laws these suits were brought;

3.      The duration of the alleged illegal contract, combination, and/or conspiracy;

4.      Whether Mitsubishi Electric and its alleged co-conspirators' alleged conduct resulted in an unlawful overcharge on the price of CRTs;

5.      Whether the alleged unlawful overcharge on the price of CRTs was passed-through to the indirect purchasers of CRT Products, and if so, the appropriate classwide measure of damages.

This Court previously found that these questions of law and fact satisfy the commonality requirement in this case. *See, e.g., CRT,* 2016 WL 3648478, at *4. Moreover, similar common questions have been routinely found to satisfy the commonality requirement in other antitrust class actions.[15]

### 3.      Plaintiffs' Claims Are Typical of the Claims of the Class

The "claims . . . of the representative parties [must be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). As with commonality, typicality is easily satisfied in cases involving allegations of horizontal price-fixing because "in instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993); *In re Citric Acid Antitrust Litig.*, Case No. 95-1092, 1996 WL 655791, at *3 (N.D. Cal. Oct. 2, 1996). Furthermore, courts have rejected the argument that factual differences among individual transactions undermine typicality, so long as the alleged damages of plaintiffs and the class arise from the purchase of products affected by the conspiracy. *See DRAM*, 2006 WL 1530166, at *4.

---

[15] *See, e.g., In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006) ("the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist."); *In re Rubber Chem. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005).

19

1    In this case, the claims of the representative Plaintiffs arise from the same alleged price-

2 fixing conspiracy that gives rise to the claims of the Class. Plaintiffs assert the same legal claims on

3 behalf of themselves and the proposed Class, namely, that they purchased CRTs or CRT Products

4 and that they were overcharged as a result of the alleged conspiracy between Mitsubishi Electric and

5 other CRT manufacturers. Therefore, Plaintiffs' claims are typical of the claims of the other class

6 members, and certification is appropriate. *See CRT,* 2013 WL 5391159, at *3 (Class Certification

7 Order adopting Special Master's finding that typicality was satisfied, and noting that Defendants did

8 not challenge typicality).

9              **4.       Plaintiffs Will Fairly and Adequately Represent the Interests of the Class**

10    The final requirement of Rule 23(a)(4) is that the representative plaintiffs fairly and

11 adequately represent the interests of the class. "Representation is adequate if: (1) the class

12 representative and counsel do not have any conflicts of interest with other class members; and (2) the

13 representative plaintiff and counsel will prosecute the action vigorously on behalf of the class." *CRT,*

14 2016 WL 3648478, at *15 (citations omitted). *See also Hanlon,* 150 F.3d at 1020.

15    Here, the interests of the representative Plaintiffs are not antagonistic to the Class because

16 they are all similarly interested in obtaining prompt and valuable relief from Defendants. Plaintiffs

17 have a genuine interest in the litigation and understand the allegations in this case. Plaintiff

18 representatives in the MDL reviewed the pleadings in this case and produced documents regarding

19 their purchases. Most of them have also responded to written discovery and have been deposed by

20 Defendants. Alioto Decl. ¶ 42. The interests of all Plaintiffs and class members are aligned because

21 they all allegedly suffered similar injury in the form of claimed higher CRT Product prices due to the

22 alleged conspiracy, and they all seek the same relief.  By proving their own claims, Plaintiffs will

23 necessarily be proving the claims of their fellow class members. *See* 2013 WL 5391159, *3 (Class

24 Certification Order adopting Special Master's conclusion that the named plaintiffs are adequate class

25 representatives); 2016 WL 3648478, *15 (rejecting argument that the named plaintiffs' interests

26 were not aligned with absent class members).

27

28

1       Additionally, Plaintiffs are represented by counsel who are highly qualified in class action

2   litigation and have competently and aggressively prosecuted this complex case. The Court appointed

3   Trump, Alioto, Trump & Prescott LLP as Class Counsel on September 24, 2013, and as Settlement

4   Class Counsel for the Prior Settlements on July 9, 2015.[16] They have undertaken the responsibilities

5   assigned to them by the Court and have directed the efforts of other Plaintiffs' counsel in vigorously

6   prosecuting this action. *See In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 07-cv-5944-JST,

7   2016 WL 4126533, at *5 (N.D. Cal. Aug. 3, 2016) ("the entire record of the litigation viewed fairly

8   demonstrates that Class Counsel managed this case diligently and efficiently for the benefit of the

9   class[,]" and "Class Counsel was superb at coordinating the class effort.").

10      **E.      The Proposed Settlement Class Satisfies Rule 23(b)(3)**

11      Once the four prerequisites of Rule 23(a) are met, as they are here, IPPs are entitled to

12   proceed with a class action under Rule 23(b)(3) if the Court finds that "questions of law or fact

13   common to class members predominate over any questions affecting only individual members, and

14   that a class action is superior to other available methods for fairly and efficiently adjudicating the

15   controversy."  The Settlement Class meets both requirements.

16          **1.      Common Questions of Law or Fact Predominate**

17      "Predominance," under Rule 23(b)(3), "is a test readily met in certain cases alleging

18   consumer or securities fraud or violations of the antitrust laws." *Amchem Prods.*, 521 U.S. at 625.

19   The existence of a conspiracy is the overriding issue common to all plaintiffs, sufficient to satisfy the

20   Rule 23(b)(3) predominance requirement. *Thomas & Thomas Rodmakers Inc. v. Newport Adhesives

21   & Composites Inc.,* 209 F.R.D 159, 167 (C.D. Cal. 2002) ("In price-fixing cases, courts repeatedly

22   have held that the existence of the conspiracy is the predominant issue and warrants certification

23   even where significant individual issues are present.") (internal quotation marks and citation

24   omitted).

25   _____

26   [16] *See* 2013 WL 5429718 at *10, 29; 2013 WL 5391159, at *2 (adopting R&R); ECF No. 3906

27   (Amended Order Granting Preliminary Approval of Class Action Settlements With the Philips,
     Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson and TDA Defendants) ¶ 9.

28

1     Here, the existence of the alleged CRT conspiracy and Mitsubishi Electric's and its alleged

2  co-conspirators' acts in furtherance of the alleged conspiracy are the predominant common

3  questions. To demonstrate that the alleged CRT price-fixing conspiracy existed, IPPs would

4  necessarily focus on the conduct of Mitsubishi Electric and the other Defendants, rather than the

5  conduct of individual class members. Specifically, Defendants allegedly entered into and

6  implemented a conspiracy to set the prices of CRTs at *supra*-competitive levels through a series of

7  high-level meetings and agreements during the class period. Plaintiffs maintain that proof of these

8  meetings and agreements is contained in Defendants' own documents and the testimony of defense

9  witnesses, and is therefore common for all class members. *See, e.g., In re Relafen Antitrust Litig.*,

10  221 F.R.D. 260, 275 (D. Mass. 2004) ("The alleged antitrust violation relates solely to SmithKline's

11  conduct, and as such, constitutes a common issue subject to common proof.").

12     Likewise, antitrust injury, particularly in a price-fixing case, is an issue common to the class

13  because the effect of the alleged conspiracy is readily determined based on a common evidentiary

14  showing. Therefore, common issues relating to the existence and effect of the alleged conspiracy to

15  fix CRT prices predominate over any questions arguably affecting individual class members. These

16  issues are "overriding issues" satisfying the predominance requirement. *See CRT,* 2013 WL

17  5391159, at *6 (finding common questions predominated and certifying twenty-two statewide

18  classes of indirect purchasers of CRTs).

19     The existence of potential individualized damage issues does not defeat the predominance of

20  the common liability and impact issues. Courts in this District have recognized that "classes were

21  certified . . . regardless whether some members of the class negotiated price individually, or

22  whether — as here — differences among product type, customer class, and method of purchase

23  existed." *DRAM*, 2006 WL 1530166, at *9. This is true even if there are individual state law issues,

24  as long as the common issues still outweigh the individual ones, *e.g.*, as long as common theory can

25  be alleged as to liability and impact that can be pursued by the class. *See, e.g., In re Visa

26  Check/Master Money*, 280 F.3d 124, 138 (2d. Cir. 2001) (citing with approval *Williams v. Sinclair*,

27  529 F.2d 1383, 1388 (9th Cir. 1975)).

28

Issues common to the classes predominate in this case. All indirect purchasers are alleged to have paid overcharges that were caused by the alleged price-fixing activities. The presence of these common issues of liability and impact favors class certification of the Settlement Class, even if individual issues may exist as to the dollar amount of damages suffered by each class member.

### 2.    A Class Action Is Superior to Other Methods of Adjudication

The superiority prong of Rule 23(b)(3) requires balancing the merits of a class action with available alternate methods of adjudication. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). "[I]f common questions are found to predominate in an antitrust action, then courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied." Wright, Miller & Kane, *Federal Practice and Procedure: Civil Procedure* § 1781 at 254-55 (3d ed. 2004). That is because in price-fixing cases, "the damages of individual indirect purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress." *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 615 (N.D. Cal. 2009).

In this case, a class action is superior to individual litigation because it would be a waste of judicial resources to require numerous separate trials relating to the same legal dispute.[17] As noted by Judge Wilken in *SRAM*, the damages alleged by individual members of the class are relatively small, and the expense and burden of individual litigation would make it impracticable for them to seek redress individually. 264 F.R.D. at 615; *see also CRT,* 2013 WL 5429718, at *23 (same). Moreover, the interests of class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. Finally, separate adjudication of claims creates a risk of inconsistent rulings, which further favors class treatment. Therefore, a class action is the superior method of adjudicating the claims raised in this case.

---

[17] *See In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-cv-897, 1994 WL 663590, at *6 (N.D. Ill. Nov. 18, 1994) ("We fail to see the logic in defendants' contention that 50,000 individual actions are less complex than a single class action.").

1

2

**V.      THE PROPOSED NOTICE PROGRAM PROVIDES THE BEST NOTICE
PRACTICABLE UNDER THE CIRCUMSTANCES**

3

4

Rule 23(e)(1) states that, "The claims, issues, or defenses of a certified class may be settled,

5

voluntarily dismissed, or compromised with the court's approval. . . .  The court must direct notice in

6

a reasonable manner to all class members who would be bound by the proposal." Notice of a

7

proposed settlement must inform class members of the following: (1) the nature of the pending

8

litigation; (2) the general terms of the proposed settlement; (3) that complete information is available

9

from the court files; and (4) that any class member may appear and be heard at the fairness hearing.

*See Newberg* § 8.32. The notice must also indicate an opportunity to opt-out, that the judgment will

10

bind all class members who do not opt-out, and that any member who does not opt-out may appear

11

through counsel.  Fed. R. Civ. P. 23(c)(2)(B).

12

The form of notice is "adequate if it may be understood by the average class member,"

13

(Newberg, § 11.53), and "generally describes the terms of the settlement in sufficient detail to alert

14

those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village*

15

*LLC,* 361 F.3d at 575 (citations omitted). Notice to the class must be "the best notice practicable

16

under the circumstances, including individual notice to all members who can be identified through

17

reasonable effort." *Amchem Prods.*, 521 U.S. at 617. This standard does not require perfection in

18

delivering notice, but rather reasonable efforts to reach as many class members as possible through

19

either individual or publication means. *See, e.g.,* Federal Judicial Center, *Judges' Class Action*

20

*Notice and Claims Process Checklist and Plain Language Guide* (2010) ("FJC Checklist"), at 3 ("It

21

is reasonable to reach between 70-95%."); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

22

Publication notice is an acceptable method of providing notice where the identity of specific class

23

members is not reasonably available. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080,

24

citing *Manual* § 21.311.

25

IPP Counsel have retained The Notice Company—the same experienced class action

26

administrator that designed and implemented the notice program for all previously-approved

27

settlements—to give notice of this Proposed Settlement to the members of the Settlement Class.

28

Fisher Decl. ¶ 2. As explained in detail in the accompanying Fisher Declaration, IPPs propose to

24

disseminate notice by, *inter alia,* direct mail and email, publication in print and online, television ads, digital banner ads, and press releases in English and Spanish. *Id.* ¶¶ 8-30. The notices will advise putative class members of the Proposed Settlement and the plan of distribution, and the dates associated with exclusion, objection and final approval. *Id.* ¶¶ 5-7, Exs. B (Detailed Notice) & C (Summary Notice). The Notice Company projects that the notice will reach approximately 85% of adults aged 35+ who own TVs or computers with a household income of at least $60,000 with an estimated frequency of 2.2 times, which is well within the acceptable range. *Id.* ¶ 24.

The Notice Company's comprehensive notice program—which is substantially similar to the notice programs approved by the Court in connection with the Prior Settlements—satisfies due process standards and represents the best notice practicable under the circumstances, consistent with Rule 23. *See CRT,* 2016 WL 3648478, at *5-6 (overruling objections to substantially similar notice program and concluding "that the parties have provided the best practicable notice to class members."). *See also, e.g., Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993). Fisher Decl. at ¶ 31.

Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 ("CAFA"), Mitsubishi Electric will provide notice of the Settlement to the Attorney General of the United States and the Attorneys General of all 50 States within ten days of the filing of this motion. Alioto Decl. ¶ 43.

## VI.    THE PROPOSED PLAN OF DISTRIBUTION IS FAIR AND REASONABLE

IPPs propose to compensate members of the Settlement Class according to a plan of distribution which, subject to certain payment minimums and other criteria, provides that qualifying claimants will be eligible to claim their pro-rata share of the Settlement Fund based on the number of valid claims filed, and the number and type of CRT Products each claimant purchased during the class period. Alioto Decl. ¶ 44.[18] The proposed plan of distribution is separate from the Proposed Settlement. Settlement Agreement, ¶ 29.

---

[18] The Claims Administrator is no longer accepting new claims in the Prior Settlements. Thus, this proposed Plan of Distribution pertains only to the $33 million Settlement Fund. *Id.* ¶ 45.

As detailed below, the distribution plan creates certain recovery minimums and other mechanisms to, *inter alia*: (1) encourage claims by class members with modest purchases; (2) encourage new claims by class members that did not file claims in the Prior Settlements ("First-time Claimants"); (3) encourage new claims by class members that already filed valid claims in the Prior Settlements, but which have additional purchases of CRTs or CRT Products not included in their original claim ("Repeat Claimants")[19]; (4) provide minimum payments to those that made valid claims in the Prior Settlements ("Prior Claimants"); and (5) equitably allocate settlement proceeds among all eligible claimants—whether First-time Claimants, Repeat Claimants, or Prior Claimants. In this way, the distribution plan extends the settlement's benefits to more victims of the alleged CRT conspiracy.  Alioto Decl. ¶ 46.

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2017 WL 4750628, at *3 (N.D. Cal. Oct. 20, 2017) (quoting *In re Oracle Sec. Litig.*, No. C–90–0931–VRW, 1994 WL 502054, at *1–2 (N.D. Cal. June 16, 1994)); *CRT*, 2016 WL 3648478, at *11. A plan of distribution that compensates class members based on the type and extent of their injuries is generally considered reasonable. *See CRT*, 2016 WL 3648478, at * 11 (citing *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1). However, "a class action settlement need not necessarily treat all class members equally . . . . Instead, an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*, No. 09 MDL 2007-GW (PJWX), 2014 WL 12591624, at *4 (C.D. Cal. Jan. 10, 2014) (internal quotation marks and citations omitted). *See also In re Michael Milken and Associates Sec. Litig.*, 150 F.R.D. 57, 67 (S.D.N.Y. 1993) ("In numerous cases courts have approved settlements where the class members receive different percentages of recovery to take into account different factors").

---

[19] Class Counsel expect this to occur because class members can now claim for purchases in nine additional states.  Alioto Decl. ¶ 45.

In developing the Plan of Distribution, Class Counsel considered multiple factors, including: the estimated overcharge for different CRTs; the minimum payment amount under the plan of distribution for the Prior Settlements (the "Prior Plan of Distribution"); the estimated recovery per CRT unit claimants are expected to receive under the Prior Plan of Distribution; the overarching nature of the conspiracy; the settlement proceeds available for distribution; and the administration costs to issue checks for small amounts (which are often not cashed). Alioto Decl. ¶ 47.

Under the proposed plan, the Settlement Administrator will first weight each claim based on the amount and type of CRT Products purchased, using the same weighting applied in the Prior Plan of Distribution.[20] This weighting reflects the relative harm inflicted on purchasers of different products. Using these weights, each valid claimant will receive a "CRT unit" count, to which the Administrator will apply a "CRT unit dollar value." The CRT unit dollar value is a pro-rata amount based on the amount available for distribution and the total number of CRT units claimed. *Id*. ¶ 48.

The operative provisions of the Plan of Distribution are as follows:

1. First-time Claimants and Repeat Claimants shall receive a minimum payment of $25 for newly-claimed CRT units. This is the same minimum payment amount as the Prior Plan of Distribution.  As before, the purpose is to encourage the filing of claims by those with small claims and reduce the burdens and costs associated with administering those claims.

2. Prior Claimants and Repeat Claimants shall receive a minimum payment of $10 for their already-claimed CRT units. This minimum payment provides guaranteed compensation to these claimants for releasing their claims against Mitsubishi Electric, and it is in addition to the compensation received from the Prior Settlements. The $10 minimum recovery similarly reduces the burden of administering those claims.

---

[20] Claims for televisions with a 30 inch or smaller screen size ("Standard CRT Televisions") get a weight of 1; televisions with screen sizes greater than 30 inches ("Large CRT Televisions") get a weight of 4.3; and CRT Computer Monitors get a weight of 3. *Id*. ¶ 48.

3.   For their first 25 newly-claimed CRT units, First-time Claimants and Repeat Claimants shall be paid the same CRT unit value as claimants under the Prior Plan of Distribution. The CRT unit dollar value in the Prior Plan of Distribution is currently estimated to be approximately $4 per CRT unit. Thus, First-time Claimants and Repeat Claimants shall receive up to $100 for valid claims of up to 25 units ($4 x 25 = $100). To ensure these payments to First-time Claimants and Repeat Claimants do not disproportionately impact the total settlement funds available for distribution, they are capped at $4 million.

4.   Settlement funds remaining after making the payments in Steps 1 -3 shall be allocated in two steps: (a) pro rata allocation among First-time Claimants and Repeat Claimants for their newly-claimed CRT units in excess of 25 CRT units (such pro rata allocation may not exceed the CRT unit value applied under the Prior Plan of Distribution); and (b) any settlement funds remaining shall be allocated pro rata among all claimants, First-time Claimants, Repeat Claimants, and Prior Claimants alike, for all CRT units claimed (both newly-claimed and already-claimed units), subject to a maximum recovery of three times the estimated money damages per claimant.

While each of these provisions has specific aims, such as reducing administration costs and encouraging the filing of claims, the Plan's overarching goal is to provide meaningful compensation to as many class members as possible. *See* Alioto Decl. ¶ 49.

"As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable under the particular circumstances of the case." *In re Visa Check/Mastermoney Antitrust Litig,* 297 F.Supp.2d 503, 518 (E.D.N.Y. 2003) (citation omitted), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96 (2d Cir. 2005). Here, paying First-time and Repeat Claimants the same CRT unit dollar value as the Prior Plan of Distribution for their first 25 units claimed, and then pro rata for claims in excess of 25 CRT units, is appropriate and equitable. It recognizes that First-time and Repeat Claimants have not received any compensation for the overcharges they paid on their newly-claimed CRT units, while claimants in the Prior

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

Settlements currently stand to receive a CRT unit value (estimated at approximately $4) representing a significant portion of their estimated single damages. Further, this CRT unit value applies in the same way to all valid First-time and Repeat Claimants, whether their claims are small or large, whether they are businesses or individual consumers, and whether they were eligible to claim in the Prior Settlements or not.

Distribution plans may create such "minimum" or floor compensation levels so as to ensure that claimants "participate meaningfully" in settlement distributions. *See In re Initial Public Offering Securities Litigation*, 671 F.Supp.2d 467, 498 (S.D.N.Y. 2009) (approving a settlement with "floor" compensation levels to allow meaningful participation in settlement distribution). In addition, distribution plans that take into account (or offset) amounts claimants may have received in other litigations or from other sources are fair and equitable. *See e.g., SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738-741 (9th Cir. 2005) (approving distribution plan that included 50% offset for amounts recovered in other litigation; noting that "the offset provision allows for more equal compensation" among victims).[21] This Plan of Distribution not only increases the overall reach of the settlements achieved in this litigation, but does so in an equitable manner. It endeavors to provide First-time and Repeat Claimants fair and meaningful compensation for injuries suffered as a result of the CRT conspiracy, limited only by the CRT unit compensation levels achieved by claimants under the Prior Plan of Distribution. After that, settlement proceeds are distributed pro rata among all class members, First-time Claimants, Repeat Claimants, and Prior Claimants alike.

All First-time and Repeat Claimants that want to submit claims for new or additional CRT units will be required to complete a claim form containing: (i) the class member's contact information; (ii) verification of membership in the Settlement Class; (iii) the number and type of

---

[21] *See also In re Cement and Concrete Antitrust Litig.,* 817 F.2d 1435, 1439–40 (9th Cir.1987) (noting that "the offset provision. . . in effect applies an equitable weighting to claims" and approving a distribution plan providing for pro rata distribution except where class members benefited from "separate lawsuits" against defendants), *judgment reversed on other grounds*, *California v. ARC America*, 490 U.S. 93 (1989); *In re Equity Funding Corp. of America Sec. Litig.,* 603 F.2d 1353 (9th Cir.1979) (approving a distribution plan offsetting distributions by amounts received in a related bankruptcy distribution).

1   each CRT or CRT Product purchased during the class period; and (iv) an attestation under penalty of

2   perjury that the information provided is accurate. The proposed claim form is attached as Ex. D to

3   the Fisher Declaration. Repeat Claimants and Prior Claimants need not refile their claims for

4   already-claimed CRT units; their claims will be deemed filed in the Proposed Settlement. Alioto

5   Decl. ¶ 50.

6        All claimants will also be subject to auditing and requests for documentation of purchases by

7   the Settlement Administrator. The Settlement Administrator will use commercially reasonable

8   efforts to identify and investigate claims. *Id*. ¶ 51.

9   **VII.    NOTICE COSTS, LITIGATION EXPENSES AND ATTORNEYS' FEES**

10       The Proposed Settlement provides that IPP Counsel may apply to the Court for an award of

11  attorneys' fees (not to exceed one-third of the Settlement Fund), and for payment of notice costs[22]

12  and litigation expenses, all of which come out of the Settlement Fund. Mitsubishi Electric has agreed

13  that up to $3 million of the Settlement Fund can be used for notice costs and the costs of

14  administration, and will not oppose IPP Counsel's application for attorneys' fees and litigation

15  expenses. Alioto Decl. ¶ 52, Ex. A, ¶¶ 27, 34.

16       The Proposed Notices (attached as Exhibits B and C to the Fisher Declaration) advise that

17  IPPs intend to apply for attorneys' fees (not to exceed one-third of the Settlement Fund), notice

18  costs, and litigation expenses. These applications will be heard at the final approval hearing or

19  another date determined by the Court. The Proposed Notices also advise that IPPs may apply for

20  individual incentive awards for the indirect purchaser class representatives, most of whom fully

21  participated in the discovery phase of the MDL. These applications will be filed with the Court and

22  posted to the website www.CRTclaims.com at least 14 days in advance of the deadline for

23  objections to give class members an opportunity to review the applications and either support or file

24  objections to them. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir.

25  2010); Alioto Decl. ¶ 53.

26  _____

27  [22] The Notice Company provides estimates of the notice costs in the Fisher Decl., ¶ 32.

28

## VIII.   <u>THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE</u>

The last step in the settlement approval process is the final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the Proposed Settlement. At that hearing, proponents of the Settlement may explain and describe their terms and conditions and offer argument in support of settlement approval, and members of the Settlement Class, or their counsel, may be heard in support of or in opposition to the Proposed Settlement. IPPs respectfully suggest that the Court set the following final approval schedule, culminating in a final approval hearing:

| Event | Date |
| --- | --- |
| Notice Publication Date and Mailed Notice to Commence | Within 30 days of Order Granting Preliminary Approval |
| Exclusion Date | Within 60 days of Notice Publication Date |
| Objection Date | Within 60 days of Notice Publication Date |
| Final Hearing | 120 days from Order Granting Preliminary Approval |
| Claims Deadline | 120 days from Notice Publication Date |

## IX.   <u>CONCLUSION</u>

Based on the foregoing, IPPs respectfully request that the Court: (1) grant preliminary approval of the Proposed Settlement with Mitsubishi Electric; (2) certify the proposed Settlement Class; (3) grant preliminary approval to the proposed plan of distribution and proposed claim form; (4) approve the proposed notice plan as complying with due process and Rule 23, and order that notice of the Proposed Settlement be given to the Settlement Class; (5) appoint Trump, Alioto, Trump & Prescott, LLP as Class Counsel; and (6) set a schedule for final approval.

Dated:  February 14, 2018                              Respectfully submitted,

 */s/ Mario N. Alioto*
Mario N. Alioto (56433)
malioto@tatp.com
Joseph M. Patane (72202)
jpatane@tatp.com
Lauren C. Capurro (241151)
laurenrussell@tatp.com

31

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415-346-0679

*Lead Counsel for Indirect Purchaser
Plaintiffs*

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST