

Jeffrey N. Leibell
**Chief Operating Officer &**
**General Counsel**
(201) 853-1246
jleibell@frsco.com

February 26, 2018

**BY FEDERAL EXPRESS**
Honorable Jon S. Tigar
United States District Judge
United States District Court
for the Northern District of California
San Francisco Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

*In re: Cathode Ray Tube (CRT) Antitrust Litigation*, Indirect Purchaser Actions
MDL No. 1917, Case No. C-07-5944-JST (N.D. Cal.) ("*CRTI*")

Dear Judge Tigar:

Financial Recovery Services, Inc. d/b/a Financial Recovery Strategies ("FRS"), on behalf of 1,360 of its clients for whom FRS, after the December 7, 2015 claims deadline for the Prior Settlements, submitted in the Prior Settlements claims that include 2,531,013 CRT Products, objects to IPPs' proposed Plan of Distribution (the "Proposed Plan").[1] Although IPPs describe the Proposed Settlement and the Prior Settlements collectively as $609,750,000 recovered for ***all*** indirect purchasers, First-time Claimants may participate only in the $33,000,000 recovered in the Propose Settlement, which constitutes just 5% of that total recovery; unlike Prior Claimants, First-time Claimants cannot participate in the $576,750,000 recovered in the Prior Settlements. *See* IPP MOL at 25, n.18. This unequal treatment will result in thousands of First-time Claimants – Class Members with the same claims as Prior Claimants – releasing their claims in, but receiving nothing from, the Prior Settlements. The Proposed Plan is thus not fair, reasonable or adequate, and, therefore, it is not within the range of possible approval to justify publishing notice to the Class.

Before turning to IPPs' unequal treatment of First-time Claimants, FRS must address why it is necessary for the Court to address this now. FRS has attempted for over a year to convince IPPs to treat equally all claims. Unfortunately, however, IPPs have refused to do so. And by stating that their Proposed Plan "pertains only to the $33 million Settlement Fund," IPP MOL at 25, n.18, IPPs have again avoided the

[1] IPPs' definitions of "First-time Claimants" ("new claims by class members that did not file claims in the Prior Settlements") and "Prior Claimants" (claimants "that made valid claims in the Prior Settlements"), IPPs' Notice of Mot. & Mot. for Prelim. App. of Class Action Settle. with Def. Mitsubishi Elec. Corp. (Doc No. 5245; "IPP MOL") at 26:3-7, do not address these 1,360 claims: Those claims ***were*** filed in the Prior Settlements, but FRS has not received from IPPs notification concerning whether those claims are ***valid claims***. As used herein, therefore, "First-time Claimants" includes these claims. All other terms with initial capitalization used but not specifically defined herein shall have the meaning provided for such terms in the IPP MOL.


issue. If the Court determines that, as set forth below, First-time Claimants and Prior Claimants must be compensated equally, disseminating the Proposed Plan, which does not compensate them equally, will exacerbate the confusion of, and prejudice to, thousands of First-time Claimants, all of whom have been left in the dark for over two years and still will not know whether their claims will be included in the Prior Settlements to the same extent as Prior Claimants' claims. The notice for the Proposed Settlement thus provides the most efficient and, because IPPs refused to address this matter sooner, the timeliest, way to notify the Class. The matter is thus ripe for the Court's consideration.

## INTRODUCTION

The Proposed Plan is fatally flawed. It excludes from participating in 95% of the $609,750,000 total settlement funds recovered every First-time Claimant, each of whom has claims against all defendants that are identical to those of Prior Claimants, and each of whom will be subject to the same releases included in the judgment entered in the Prior Settlements. Equity mandates that First-time Claimants be treated the same as Prior Claimants because, solely as a result of the pending appeals of this Court's judgment approving the Prior Settlements, no distribution of the Prior Settlements is possible more than two years – twenty-six months and counting – after the December 7, 2015 claims filing deadline. And without a mediated compromise of those appeals, the eventual distribution must await a final disposition by the Ninth Circuit, which is unlikely to occur before 2019.[2] The December 7, 2015 deadline, therefore, cannot bear any temporal relationship to the eventual distribution. With the deadline rendered arbitrary, there is no rational or equitable basis on which to exclude from the Prior Settlements First-time Claimants and thus favor Prior Claimants over First-time Claimants. That said, and having avoided this issue for over two years, the Proposed Settlement now provides IPPs with a golden opportunity both to treat equally all eligible claimants and, without incurring any additional costs, to notify the Class of that treatment: Propose a plan that includes in the Prior Settlements First-time Claimants. Unfortunately, however, IPPs' Proposed Plan does not do so. Under the well-established "fair, reasonable and adequate" standard for distribution plans, which requires, at a minimum, that class members with the same claims be treated the same, the Proposed Plan cannot be approved, and, therefore, the expenditure of settlement funds on notice to Class Members is not justified.

IPPs have gone to extreme lengths to ***make it appear*** that the Proposed Plan treats all class members – Prior Claimants and First-time Claimants – equally. Indeed, they cite to this Court's prior opinion for the inarguable proposition that "[a] plan of distribution that compensates class members based on the type and extent of their injuries is generally considered reasonable," *id.* at 26:11-25, and then recite, without any reference to the Prior Settlements, that the Proposed Plan "equitably allocate[s] settlement proceeds among all eligible claimants," IPP MOL at 26:7-8; that the Proposed Plan will

---

[2] The Ninth Circuit has scheduled the hearing for April 10, 2018. *Indirect Purchaser Plaintiffs v. Toshiba Corp.*, Case No. 16-16371 (Lead Case 16-16368), Doc. No. 173.


compensate Class Members "based on the number and type of CRTs or CRT Products purchased," *id.* at 2:9-12; *see id.* at 13:5-15; and that the combined total settlement for all "indirect purchaser class members," *see id.* at 12:11-14; 1:8-13 ("total settlement payments of [$609,750,000] to indirect purchasers"); 13:27-28 ("the total recovery to indirect purchasers is $609,750,000"); 14:18-20 ("$609.75m" is "the total recovery for indirect purchasers of CRTs" which "will be approximately 18% of their estimated damages."), is $609,750,000. But IPPs' Proposed Plan does not treat First-time Claimants the same as Prior Claimants, does not compensate Class Members based on the number and type of CRT Products purchased, and does not allow all claimants to share in the entire $609,750,000 recovered. Instead, the Proposed Plan sets forth complicated multilayered formulae replete with minimums, maximums, offsets and exceptions that favor Prior Claimants over First-time Claimants. *See* IPP MOL at 27:13-28:19. And to further give the false impression that the Proposed Plan is equitable, IPPs even tout the $4.00 per unit recovery from the Prior Settlements to make it ***appear*** that First-time Claimants will be treated like Prior Claimants. *See id.* at 28:1-8. But the Proposed Plan limits the applicability of that unit value to $100 dollars per First-time Claimant, and, so that payments to First-time Claimants under that provision "do not disproportionately impact the total settlement funds available for distribution," IPPs cap it at $4 million. *See id.* Given that the $576,750,000 recovered in the Prior Settlements and the $33,000,000 recovered in the Proposed Settlement comprise 95% and just 5%, respectively, of the $609,750,000 total recovery, it is impossible to treat Prior Claimants and First-time Claimants equally under the Proposed Plan. Had IPPs' goal been ***actually*** to treat all Class Members equally, which, as set forth below, the law mandates and, under the circumstances of these settlements requires making the entire $609,750,000 recovery available to all eligible claimants, all that would have been necessary, instead of a full page of what IPPs call "mechanisms," *see id.* at 26:2— subdivisions, rules, exceptions to those rules and exceptions to the exceptions, was one sentence that advised Class Members that they still may submit claims to participate in the total recovery.[3] Unless the Court modifies the Proposed Plan to include in the Prior Settlements First-time Claimants, therefore, First-time Claimants – who, but for the timing of their proofs of claim, are identical to Prior Claimants – will be victimized again.

## BACKGROUND

FRS is a preeminent class action claims management consultant.[4] In that capacity, FRS (and, presumably, other class action claims management consultants) provides a service that class counsel

---

[3] *See* IPP MOL at 26:1-2. If the class definition for the Proposed Settlement is approved to include claimants from the nine states that were not included in the Prior Settlements, those claimants would only participate in the Proposed Settlement via a simple carve out from the Prior Settlements.

[4] FRS has over 17,500 active class action clients that range in size and sophistication from small business owners and farmers, on the one hand, to "Fortune" household name multinational conglomerates, on the other. FRS's *CRTI* clients – both Prior Claimants and First-time Claimants – also are varied, and include small businesses as



either are unable or unwilling to provide: We put our time and money at risk specifically to stimulate claims filing.[5] FRS's successful efforts in *CRTI* provide a meaningful example: As of February 15, 2018, FRS has submitted for 2,691 members of the Class claims that include 4,885,779 CRT Products, or almost 26%, of the 19,000,000 total CRT Products that, at the time of final approval of the Prior Settlements, were reported by IPPs.[6] But for the efforts of FRS and other class action claims management consultants – that is, if compensating as many victims as possible depended solely on class counsel's efforts – the number of compensated victims in this and other indirect purchaser antitrust class actions would be far lower, perhaps unacceptably so, than they are now.[7]

Although "IPP Counsel have a fiduciary duty to protect the interests of ***all*** class members, and cannot be seen to favor [one group] over [other] class members,"[8] IPPs, by not including in the total $609,750,000 recovery First-time Claimants, have preferred Prior Claimants to the irremediable prejudice

---

well as large corporate and other entities. FRS, while adhering to the highest level of professional ethics and standards, provides them with industry-leading claims management services, including the following:

- Notifying clients when FRS learns of settlements that may be valuable to them;
- Enhancing the likelihood that all of its clients' eligible business units are included in the claim process;
- Providing advice on what, if any, documents need to be collected and maintained, and, when requested, assisting in that effort;
- Developing innovative alternatives when required documents are not available or are too burdensome to collect, and then negotiating to obtain claims administrator and counsel approval of those alternatives;
- Preparing, assembling and submitting clients' claims, and managing them throughout the claims processing lifecycle, including working with clients to address any concerns or questions that a claims administrator or class counsel may have;
- Providing regular updates on the recovery process and related developments; and
- Auditing clients' recoveries to assure that their checks have not been under calculated.

[5] Indeed, IPPs have admitted as much. *See* Indirect Purchaser Plaintiffs' Response to the California Attorney General's Statements of Interest, Doc. No. 4292, at 6:19-7:5.

[6] *CRTI,* 2016 WL 36484782, at *21 (N.D. Cal. July 7, 2016). IPPs have not, to FRS's knowledge, provided updated claims information since then.

[7] FRS was advised by class counsel in *In re: TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.) ("*LCDI*"), for example, that the claims submitted by class action claims management consultants comprised over 70% of the total eligible units.

[8] IPPs' Objection to Special Master's R&R Re: Cal. Attorney General's Request for Extension of Claims Submission Deadline, Doc. No. 4292, at 7:15-16 (emphasis original).



of all First-time Claimants— businesses and individuals that were victimized in exactly the same way as Prior Claimants, and, therefore, are entitled to the same compensation as Prior Claimants. FRS believes that, as set forth in detail below, it is IPP's and the Court's respective obligations ***fairly*** to compensate as many victims as possible while not unduly delaying the distribution. Indeed, in its July 26 Order, the Court acknowledged its and IPP's obligations to maximize claims:

> [I]f the IPPs believe that there are many claimants who have not yet received notice, providing supplemental notice and an extended claim period does not harm the interests of the class and furthers the interest of the Court in ensuring payment to those harmed (be it natural persons or businesses).[9]

In view of the delay in the distribution for the Prior Settlements caused solely by the pendency of the appeals, the only way, in FRS's considerable experience,[10] equitably to treat all Class Members is to include in the $609,750,000 recovery all otherwise eligible claims filed until a new deadline set by the Court.

---

[9] Order Re Obj. to Special Master's R&R Re: Cal. Attorney General's Request for Extension of Claims Submission Deadline, Doc. No. 4339 (the "July 26 Order") at 3:24-27. The July 26 Order, *inter alia*, overruled without prejudice the "Williams" objection (Doc. No. 4312), which sought to apply generally the extension sought by the California Attorney General, because of the Court's belief that, if the notice program was effective, there would be very few late claims:

> Even so, if the IPPs believe – as the Court assumes they do – that their notice program was effective, then they must also believe that there are relatively few eligible class members who were previously unaware of this action.

July 26 Order at 3:19-21. As IPPs have for some time been aware, however, the volume of First-time Claimants' claims is inconsistent with the Court's prediction: The 2,531,013 CRT Products included in the 1,360 First-time Claimants claims submitted by just FRS constitute over 13% of the 19,000,000 total CRT Products that, at the time of final approval of the Prior Settlements, IPPs reported. *CRTI*, 2016 WL 36484782, at *21.

[10] *See, e.g.*, http://www.frsco.com/teams/ (summary bios for Jeffrey N. Leibell & Robin Niemiec). I have spent the last 22 years prosecuting, administering and submitting claims to recover from class actions. At Bernstein Litowtiz Berger & Grossmann, one of the nation's leading class action law firms, I was the partner responsible for, among other things, negotiating the terms of, documenting and administering over $13.5 billion in class action recoveries, including 5 of the 10 largest securities class actions in U.S. history, and became a leading authority on class action settlement-related legal issues. As the Vice President of Class Action Services at The Garden City Group, one of the nation's leading claims administrators, I advised executives and clients on complex class action settlement issues, and I developed and presented to lawyers across the U.S. continuing legal education programs concerning class action settlements. Robin Niemiec, FRS's Executive Vice President of Operations, has over 10 years of claims management and claims administration experience, including as the lead professional at Rust Consulting responsible for administering the *LCDI* settlements.



**THE PROPOSED PLAN SHOULD NOT BE PRELIMINARILY APPROVED BECAUSE**
**<u>IT IMPERMISSIVELY FAVORS PRIOR CLAIMANTS OVER FIRST-TIME CLAIMANTS</u>**

Approval of a proposed distribution plan "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *CRTI*, 2016 WL 36484782, at *11 (N.D. Cal. July 7, 2016) (quoting *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) (citing in turn *Class Plaintiffs v. City of Seattle*, 955 F2d 1268, 1284-85 (9th Cir.1992))). To satisfy that standard, a plan "must reimburse[] class members based on the extent of their injuries." *See id.* (citing *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992). And reasonableness must be determined "from the perspective of the class as a whole." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013) (quoted in *McDonough v. Toys R Us, Inc.*, 80 F. Supp.3d 626, 648 (E.D. Pa. 2015)). Although the bar for approval is thus relatively low, IPP's Proposed Plan, which favors Prior Claimants, all of whom will participate in the entire $609,750,000 recovery, over First-time Claimants, all of whose claims against defendants are identical to the claims of Prior Claimants but none of whom will participate in $576,750,000, or 95%, of that recovery, fails to satisfy it.

It cannot be argued that First-time Claimants' claims against defendants are not identical to those of Prior Claimants: Prior Claimants do not have more claims against any defendant, nor are Prior Claimants' claims against any defendant stronger than First-time Claimants' claims. Rather, First-time Claimants' claims are the same – that is, equal in number and in strength – as Prior Claimants' claims, and, given the delay caused solely by the pendency of the appeals—that is, not by First-time Claimants, First-time Claimants are entitled to equal compensation. *See, e.g.*, *In re Electric Carbon Prods. Antitrust Litig.*, 622 F. Supp.2d 144, 154 (D.N.J. 2007) (holding that late claims must be accepted because "[a]ll legitimate members of the class are normally presumed equally entitled to share in recovery.") (internal citation omitted; citied in *In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA Litig.*, 297 F.R.D. 90, 97 (S.D.N.Y. 2013)); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 324 (3d Cir. 2001) (holding that favoring one group of claimants over another would provide the favored group with a "'windfall' comprised of some portion of the recovery that would be owed to the otherwise deserving" disfavored group). Even though the Proposed Plan does not provide equal treatment, which renders it not "fair and reasonable as to all participants in the fund," *cf. McDonough*, 80 F. Supp.2d at 648 ("a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable.") (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (in turn quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983) ("The court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund."))), "the Court has an obligation not to elevate the claims of any class member over the claims of other class members ... All legitimate class members should, if equitable, be permitted to share in the settlement." *See Electric Carbon.*, 622 F. Supp.2d at 156.

And while it has been deemed reasonable "to allocate more of the settlement to class members with stronger claims on the merits," *Oracle*, 1884 WL 502054, at *1, that certainly is not what the



Proposed Plan purports to do: IPPs have not even suggested, nor can they, that their unequal treatment of First-time Claimants is justified by First-time Claimants' fewer or weaker claims against defendants. *Cf. id.* ("The percentages applied represent class counsel's appraisal of the relative merits of the claims"); *CRTI*, 2016 WL 3648478, at *11 ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits. A settlement 'can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims.'" (quoting, *inter alia*, *In re Omnivision*, 559 F. Supp.2d 1036, 1045 (N.D. Cal. 2007)); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 692 (D. Colo. 2014) ("There is no indication that the Plan of Allocation favors certain class members at the expense of others ..."). And unlike this Court's approval of the Prior Plan of Distribution, which did not compensate Class Members in certain states because the Court determined that their claims had no value, *CRTI*, 2016 WL 3648478, at *11-15 ("Class counsel here were within their rights to allocate the settlement proceeds according to the degree of injury suffered by the class. Certain class members were not injured in any manner recognized by law, and accordingly did not receive compensation.") (citations and quotations omitted), no similar argument may be made about First-time Claimants' claims: It cannot be argued that First-time Claimants were not damaged in a legally cognizable way by defendants' alleged conduct, or that First-time Claimants' claims and those of Prior Claimants are not identical. "Because all the class members sustained the same injury, and their alleged damages are equal, all class members have the same right of recovery." *Date v. Sony Elecs. Inc.*, No. 07-15474, 2009 WL 435289, at *12 (E.D. Mich. Feb. 20, 2009) (declining to approve settlement that did "not fairly or adequately compensate the unnamed Settlement Class members for their injuries); *see Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 387-88 (C.D. Cal. 2007) ("[T]he parties are not free to [divide the class] in a manner that sacrifices the claims of some plaintiffs for the sake of others. ... The Court is aware of no case in which a settlement was allowed that partitioned a class so as to provide relief to one segment and to deny it completely to another."); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784-85 (7th Cir. 2004) ("Only if they had no claim ... did they lose nothing by the settlement, and the judge made no finding that they had no such claim.").

As the court stated in *Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*:

> [T]he ***same*** type of injury was purportedly sustained by *all* class members, and ***all*** class members have the *same* right of recovery against [the Settling Defendant]. Thus, while disparate treatment of class members may be justified by a demonstration that the favored class members have different claims or greater damages, no such demonstration has been made here.

880 F. Supp. 292, 300-01 (M.D. Pa. 1995) (emphasis in original; citation omitted). Apropos requiring equal treatment, the *Petruzzi's* court concluded that "[i]t simply cannot be said that a settlement which favors only 50% of the class is in the best interest of the entire class." *Id.* at 301. And when counsel in *McDonough*



sought court approval of a plan that, like the Proposed Plan, provided no rational basis for favoring one group of claimants over another, the court modified the proposed plan:

> [I]t is clear that there is no evidentiary justification in the record for such a marked discrepancy in subclass recovery. Approving the proposed allocation order without modification would permit wildly varying recoveries among class members even for similarly priced products. The allegations in the case contain no analysis of degrees of fault among the Defendants. All Defendants are accused of the same conduct. There is no representation that the alleged illegal activity disproportionately impacted members of certain subclasses. Thus, on final re-examination, it is more equitable to distribute the Net Settlement Fund on a pro rata basis. All class members should receive the same percentage of their damages. Modification best represents the interests of the subclasses and of the class as a whole.

80 F. Supp.3d at 648-49. Because First-time Claimants and Prior Claimants are, but for the now-arbitrary claims filing deadline, identical, they should be treated identically, with all of them participating equally in the entire $609,750,000 recovery. *See Acosta*, 243 F.R.D. at 387-88 (rejecting settlement that divided class members based on dates that are "arbitrary and bear no relationship to the procedural or substantive limitations on the class members' claims."); *True v. American Honda Motor Co.*, 749 F. Supp.2d 1052, 1068-69 (C.D. Cal. 2010) ("[T]he settlement here draws an arbitrary distinction among class members with identical legal claims and injuries, and allows some to receive a cash award, and others only a DVD and limited rebate. This is patently unfair, and counsels against approval of the proposed settlement.").

Equal treatment is especially appropriate here, as it is and was in other settlements plagued with lengthy appeals. In *LIB*,[11] a class action in this District, for example, co-lead class counsel recently addressed the appropriate manner by which to maximize claims and treat all of them equally when, as a result of appeals, the distribution was likely to be substantially delayed: *LIB* co-lead counsel sought ***before*** the expiration of the *LIB* claims filing period an extension of that period because of an ***anticipated*** appeal:

> Despite the Court's findings that the settlements with the Hitachi Maxell, NEC Corporation, and LG Chem Defendants are fair, adequate, and reasonable, and despite the interest of the settlement class in the speedy distribution of the settlement fund, at least one appeal may be filed. ***In the event that happens, distribution of the settlement corpus will be impossible while the appeal remains pending—which will likely be a minimum of twelve months. And, in that event, no purpose is served by ending the claims period while the appeal is pending.*** Plaintiffs therefore respectfully request that the Court extend the claims period up to and including January 19, 2018, with plaintiffs to file an updated status report on January 5, 2018. ***If the Order has been appealed, plaintiffs will likely request a generous extension of the claims deadline in order to***

[11] *In re Lithium Ion Batteries Antitrust Litig.,* Case No. 13-md-02420 YGR, MDL No. 2420 (N.D. Cal.) ("*LIB*").



> ***maximize the number of claims.*** If the Order has not been appealed, plaintiffs will promptly suggest a plan of distribution to the Court that takes into consideration factors such as the claims rate, the cost of distribution, and the need to reserve a small percentage of the fund to satisfy a renewed request for the fees and costs that were previously denied without prejudice.[12]

*LIB* class counsel's extension request was approved by Judge Gonzalez Rogers on November 21, 2017.[13] Then, in view of the *LIB* appeals that were filed since the first extension request, *LIB* co-lead counsel requested the lengthy extension that they had anticipated would be necessary:

> Given the pendency of multiple appeals, IPPs request an extension of the claims deadline, which is currently set to close January 19, 2018. ***The distribution of the settlement corpus will be impossible while the appeals remain pending – which will likely be a minimum of twelve months. Consequently, no purpose is served by ending the claims period while the appeals are pending.*** IPPs therefore respectfully request that the Court extend the claims period up to and including July 19, 2018, with IPPs to file an updated status report on July 5, 2018. ***The purpose of this extension request is to maximize the number of claims.*** If the appeals are terminated prior to the period of extension, IPPs will promptly suggest a plan of distribution to the Court that takes into consideration factors such as the claims rate, the cost of distribution, and the need to reserve a small percentage of the fund to satisfy a renewed request for the fees and costs that were previously denied without prejudice.[14]

*LIB* co-lead counsel's extension request was approved by Judge Gonzalez Rogers on January 12, 2018.[15]

And *LIB* is just the latest indirect purchaser class action settlement in which class counsel sought to treat all claimants equally when, due to pending appeals, distributions could not be conducted. IPP Counsel and other class counsel customarily have recommended to courts, and those courts, as long as acceptance did not unduly delay the eventual distribution, which, of course, it cannot do here, have then approved, the acceptance of late claims on equal footing with timely claims.[16] The recent administrations

---

[12] *LIB*, Report on Claims Status and Request for Extension of Claims Deadline, filed Nov. 15, 2017, Doc. No. 2026), at 2:6-19 (footnote omitted) (emphasis added).

[13] *See LIB*, Order Extending Claims Deadline (Doc. No. 2042).

[14] *LIB*, Second Report on Claims Status and Request for Extension of Claims Deadline, filed Jan. 5, 2018, Doc. No. 2120) at 2:4-14 (emphasis added).

[15] *See LIB*, Second Order Extending Claims Deadline (Doc. No. 2138).

[16] *See* Special Master's Report & Recommendation at 4:3-4 ("It is possible that the IPP's will agree to accept late claims, as is common, but that is not guaranteed.").



in this District of two settlements that are substantially similar to *CRTI* – the $1.08 billion settlement in *LCDI*[17] and the $310 million settlement in *DRAM*[18] – are instructive:

***LCDI.*** As a result of, *inter alia*, the pendency of several appeals to the approval of the settlements, the claims administrator "continued to receive and process claims submitted after" the original deadline, which was then extended eighteen months.[19] 18,078 valid claims, which included 5,956,723 LCD panel equivalents that comprised 37% of the total 16,212,038 valid LCD panel equivalents, were received between the original and extended deadlines.[20] Class counsel recommended, and the court approved, the acceptance of those late claims.[21]

***DRAM.*** As a result of, *inter alia*, the pendency of several appeals to the approval of the settlements, the claims deadline was extended eleven months while the claims administrator "continued to receive claims … and processed those claims contemporaneously with the earlier filed claims."[22] 19,508 claims were received between the original and extended deadlines.[23] Class counsel recommended that those additional claims be accepted:

> This distribution has not been delayed by the additional claims filed between August 1, 2014 and July 1, 2015, and Settling Plaintiffs believe that considerations of overall fairness to the Settlement Class outweigh any prejudice to those class members who filed by August 1, 2014. Anticipating that the Court would agree, Settling Plaintiffs instructed Rust to process and audit all claims filed by July 1, 2015.[24]

---

[17] It is not unfair to observe that the administration of the *CRTI* settlements has been patterned after the *LCDI* settlement administration.

[18] *In re: Dynamic Random Memory (DRAM) Antitrust Litig.*, MDL No. 1486 (N.D. Cal.) ("*DRAM*").

[19] *See, e.g., LCDI*, Decl. of Robin M. Niemiec of Rust Consulting, Inc., Notice and Claims Admin., in Support of IPPs' Motion to Authorize Distribution of Settlement Fund, executed Sept. 12, 2014 (Doc. No. 9217-1), at ¶6.

[20] *See id.* at ¶ 26 & Ex. A (Claims Summary).

[21] *See, e.g., LCDI*, Second Amended Order Granting Final Approval of … Settlements with AUO … (Illston, J.) (Doc. No. 7697), at 6, n.4. ("IPP counsel recommend that late-filed claims be included in distribution payments, and this Court agrees.").

[22] *See, e.g., DRAM*, Decl. of Amy L. Lake of Rust Consulting, Inc., Notice and Claims Admin., executed May 4, 2016 (Doc. No. 2273-2), at ¶¶6-7.

[23] *See id.* at ¶¶ 6 & 9.

[24] *DRAM*, Decl. of Josef D. Cooper in Support of Motion to Distribute Settlement Funds, executed May 4, 2016 (Doc. No. 2273-1), at ¶13.

The *DRAM* court then approved the acceptance of the additional claims.[25]

Unlike IPPs, *LIB* co-lead class counsel recognized, and the Court agreed, that, at a minimum, a twelve-month extension may be required because "no purpose is served by ending the claims period while the appeal is pending"; and *LIB* co-lead counsel, also with the court's approval, acknowledged that their ultimate goal was "to maximize the number of claims" without any suggestion that all claims would not be treated equally. And in *LCDI* and *DRAM*, class counsel recommended, and each court, without treating claims unequally, accepted, substantial numbers of claims filed until those appeals were resolved 11 and 18 months, respectively, after the original deadlines. Not surprisingly, IPPs have not identified for FRS any non-reversionary common fund class action settlement in which, under similar circumstances, they or a court did not treat equally all claims that did not unduly delay the distribution.

**CONCLUSION**

Because of the pending appeals, just as in *LCDI*, *DRAM* and *LIB*, no distribution of the Prior Settlements may be conducted twenty-six months and counting after the claims filing deadline, nor is a distribution likely to occur within the next several months, if not longer. Given that all First-time Claimants are members of the Class that, to the same extent as Prior Claimants, were victimized by the same alleged prohibited conduct that was at the core of *CRTI*, and given that First-time Claimants are not the cause of the delay, First-time Claimants, but for the now-arbitrary claim submission deadline, are indistinguishable from Prior Claimants. The *LCDI*, *DRAM* and *LIB* examples thus demonstrate what the law set forth above requires: Similarly situated victims of the wrongdoing that bound them together as a class must be treated similarly in the recovery. Accordingly, FRS respectfully requests that preliminary approval of the Proposed Plan be denied, and that, instead, the Class be notified of a proposed distribution plan that, by making available to all claims filed until the appeals are resolved the entire $609,750,000 recovered, treats equally all Class Members.

With the Court's permission, and should the Court so desire, FRS will be pleased to further address this matter at the April 5, 2018 Preliminary Approval Hearing.

Respectfully,

Jeffrey N. Leibell

Copy to: Mario N. Alioto, Esq.
Timothy D. Battin, Esq.

---

[25] *DRAM*, Order Granting Motion to Distribute Settlement Funds, Doc. No. 2283, at ¶ 11 (Hamilton, J.) ("The Court hereby approves for payment all claims received from members of the Indirect Purchaser Settlement Class that were filed on or before July 1, 2015.").