Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email:      malioto@tatp.com
            jpatane@tatp.com
            laurenrussell@tatp.com

*Lead Counsel for the*
*Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-cv-05944-JST<br>Case No. 17-cv-04067-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>*Luscher, et al. v. Mitsubishi Electric Corp.,* 17-cv-04067-JST | **INDIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN REPLY TO FINANCIAL RECOVERY STRATEGIES' OBJECTION TO PROPOSED PLAN OF DISTRIBUTION IN CLASS ACTION SETTLEMENT WITH DEFENDANT MITSUBISHI ELECTRIC CORPORATION**<br><br>Hearing Date: April 5, 2018<br>Time:  2:00 p.m.<br>Courtroom: 9, 19th Floor<br>Judge:  Honorable Jon S. Tigar |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ................................................................................3

    A.     The Prior Settlements...............................................................................3

    B.     Status of Claims Process on Prior Settlements .......................................5

    C.     FRS's Late Claims Submitted in the Prior Settlements ..........................5

    D.     The Proposed Settlement's Plan of Distribution.....................................6

III.    ARGUMENT ..........................................................................................................8

    A.     First-time Claimants Have Been Provided with a Fair Opportunity to Claim
        Benefits in the Prior Settlements............................................................8

    B.     The Proposed Plan of Distribution is Fair, Adequate and Reasonable .......................10

    C.     The Court Has Previously Addressed the Claims Deadline in the Prior
        Settlements, and In Any Event, Open Issues Remain on FRS's Late Claims ............12

IV.     CONCLUSION .....................................................................................................15

1

## TABLE OF AUTHORITIES

2

3    *Amalfitano v. Google Inc.*,
        2015 WL 456646 (N.D. Cal. Feb. 2, 2015) ...............................................................10
4
     *In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*,
5        2014 WL 12591624 (C.D. Cal. Jan. 10, 2014) ..........................................................11

6    *In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
        2016 WL 3648478 (N.D. Cal. July 7, 2016).........................................................*Passim*
7
     *In re Cendant Corp. Prides Litig.*,
8        233 F.3d 188 (3d Cir. 2000)........................................................................................13

9    *In re Electric Carbon Prods. Antitrust Litig.*,
        622 F.Supp.2d 144 (D. N.J. 2008) ..............................................................................13
10
     *In re Gypsum Antitrust Cases*,
11       565 F.2d 1123 (9th Cir. 1977) ..............................................................................13, 15

12   *In re Orthopedic Bone Screw Prods.*,
        246 F.3d 315 (3d Cir.2001)..........................................................................................13
13
     *In re Valdez*,
14       289 F. App'x 204 (9th Cir. 2008) ................................................................................13

15   *Lemus v. Madar*,
        594 F. App'x 419 (9th Cir. Feb. 27, 2015) .................................................................13
16
     *McPhail v. First Command Financial Planning, Inc.*,
17       2009 WL 839841 (S.D. Cal. March 30, 2009)............................................................13

18   *SEC v. Capital Consultants, LLC*,
        397 F.3d 733 (9th Cir. 2005) ......................................................................................11
19
     *Thomas v. MagnaChip Semiconductor Corp.*,
20       2017 WL 4750628 (N.D. Cal. Oct. 20, 2017)..............................................................11

21   *Tripati v. Henman*,
        857 F.2d 1366 (9th Cir. 1988) ....................................................................................10
22

23   Rules

24   Rule 60 of the Federal Rules of Civil Procedure .................................................................10

25

26

27

28

INDIRECT PURCHASER PLAINTIFFS' REPLY TO FINANCIAL RECOVERY STRATEGIES' OBJECTION TO
PROPOSED PLAN OF DISTRIBUTION IN CLASS SETTLEMENT
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

1    I.    INTRODUCTION

2            Indirect Purchaser Plaintiffs ("IPPs") hereby submit this reply to the objection of Financial

3    Recovery Strategies ("FRS") (ECF No. 5252) ("FRS Obj.")) to the plan of distribution proposed by

4    IPPs in their motion for preliminary approval of a class action settlement with Defendant Mitsubishi

5    Electric Corporation (the "Proposed Settlement").[1]  For the reasons set forth below, FRS's objection

6    should be overruled and the Proposed Settlement and Plan of Distribution should be preliminarily

7    approved.

8            First, FRS raises no objection to preliminary approval of the Settlement, to certification of

9    the Settlement Class consisting of statewide classes for 31 "Indirect Purchaser Jurisdictions"[2] or to

10   the release of Mitsubishi Electric.  Thus, the Court should provisionally certify the Settlement Class

11   and preliminarily approve the Settlement.

12           Second, FRS's objection to the proposed Plan of Distribution[3] lacks merit because the

13   proposed Plan of Distribution treats First Time Claimants and Prior Claimants fairly and equitably,

14   and properly allocates the settlement funds at issue here, that is, the Settlement Fund generated by

15   the Proposed Settlement with Mitsubishi Electric.  FRS's effort to address issues related to the Plan

16   of Distribution in the Prior Settlements[4] in a motion for approval of the Proposed Settlement

17   improperly seeks to merge separate settlements that involve different settlement classes, separate

18   _____

19   [1] *See* Declaration of Mario N. Alioto In Support of Motion for Preliminary Approval of Class Action
     Settlement with Mitsubishi Electric Corporation ("Alioto Decl.") (ECF No. 5245-1), Ex. A
20   (Settlement Agreement). Defendant Mitsubishi Electric Corporation—as identified in the Settlement
     Agreement and inclusive of named related entities—is referred to herein as "Mitsubishi Electric."
21   [2] "Indirect Purchaser Jurisdictions" mean Arizona, Arkansas, California, District of Columbia,
     Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri,
22   Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North
     Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West
23   Virginia, and/or Wisconsin.  Alioto Decl. Ex. A, ¶5.
     [3] The proposed plan of distribution is described in IPPs' memorandum in support of their motion for
24   preliminary approval (ECF No. 5245), §VI.
     [4] The Court granted final approval to settlements with Chunghwa Picture Tubes Ltd. on March 22,
25   2012 (ECF No. 1105) and the LG Electronics Defendants on April 18, 2014 (ECF No. 2542). The
     Court granted final approval to settlements with the Philips, Panasonic, Hitachi, Toshiba, Samsung
26   SDI, Thomson and TDA Defendants on July 7, 2016 (ECF No. 4712). The Court's approval is on
     appeal to the Ninth Circuit. *See* ECF Nos. 4743-47. The settlements are collectively referred to
27   herein as the "Prior Settlements." The already-settled defendants are collectively referred to herein
     as "Defendants."

28
                                                    1

settlement funds and different defendants. While it is certainly appropriate to consider Settlement Class members' anticipated compensation from the Prior Settlements in formulating the proposed Plan of Distribution here (which IPPs have done), any assertion that the separate settlements may be merged and treated as one is unsupported and ill-advised.

FRS's purported objection to the Proposed Settlement's Plan of Distribution is really a request that the Court address now whether FRS's thousands of late claims should be accepted in the Prior Settlements. Regardless of whether the Court ultimately accepts or does not accept FRS's and others' late claims in the Prior Settlements, the Plan of Distribution proposed here is fair, adequate and reasonable. The Plan strikes a fair balance among numerous competing considerations, including the need to encourage new claims, promoting efficiencies with minimum payment amounts, offsetting monies that will be paid to Prior Claimants in the Prior Settlements, and paying First-time Claimants similar compensation to that of Prior Claimants, while ensuring that such efforts fairly and reasonably allocate the Proposed Settlement's available funds.

On the issue of late claims in the Proposed Settlements, this Court has previously addressed objections to the claims deadline and upheld it twice, once without prejudice and then again at final approval. Acceptance of FRS's and others' late claims is not without consequences: They will reduce the value of timely Prior Claimants' claims by approximately 21 percent—including those of about half of *FRS's own clients* who timely filed their claims. It is very likely that acceptance of FRS's late claims will yield additional objections by other Prior Claimants who timely filed their claims and whose recoveries will be reduced by 21 percent. FRS's objection ignores these issues.

To the extent FRS's late claims in the Prior Settlements should be evaluated now, the Settlement Administrator has requested, but FRS has not yet provided, certain information pertaining to FRS's late claims. Numerous FRS late claims are from class members that were sent direct mailed notice of the Prior Settlements and were informed of the related claims deadline. Some of FRS late claims even appear to duplicate separate, prior timely claims filed by class members or other claims processing companies.

1    In any event, as set forth in greater detail below, FRS's objection should be overruled, and

2    the Proposed Settlement and Plan of Distribution should be preliminarily approved.

3    **II.    FACTUAL BACKGROUND**

4        **A.    The Prior Settlements**

5        IPPs reached settlements with Chunghwa for $10 million and LG for $25 million, which

6    settlements were finally approved in 2011 and 2013, respectively.  *See In re: Cathode Ray Tube*

7    *(CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 3648478, at *1 (N.D. Cal. July 7, 2016).  Both

8    settlements postponed distribution of the settlement funds pending additional settlements with the

9    remaining Defendants.  In late 2014 and 2015, IPPs settled with the then-remaining Defendants, for

10   a total of $541,750,000, resulting in a total settlement amount of $576,750,000.  *Id.*  IPPs moved for

11   and obtained preliminary and later, final approval of these settlements.  *Id.* at *1-3.  The Settlement

12   Class in the Prior Settlements consists of a Nationwide Class and 22 "State Classes."[5]

13       The proposed plan of distribution in the Prior Settlements, as approved by this Court,

14   provides that only class members with viable state law damages claims asserted in the litigation (*i.e.*,

15   members of the 22 State Classes) are eligible to make claims on the Settlement Fund.  *CRTs*, 2016

16   WL 3648478, at *2.  The plan of distribution contemplates a pro-rata distribution of the settlement

17   fund based on the number of claimants and the number and type of CRT Products purchased by a

18   claimant during the class period, with a minimum recovery of $25 per person, and a cap on recovery

19   of treble the damages actually suffered by a claimant.  *Id.*

20       Following preliminary approval of the settlements and the proposed plan of distribution on

21   July 9, 2015 (ECF No. 3906, Amended Order on Preliminary Approval), the Settlement

22   Administrator directly mailed and emailed notice to 10,082,690 unique addressees (ECF No. 4071-1,

23   Alioto Declaration in Support of Fees, Expenses, and Awards, ¶ 114).  Notice was also published

24   —————————————

25   [5] The 22 State Classes include all persons and/or entities in Arizona, California, District of
     Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska,

26   Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee,
     Vermont, West Virginia, and Wisconsin that indirectly purchased for their own use and not for

27   resale, CRT Products manufactured and/or sold by the Defendants during the Class Period.  ECF No.
     4351 (Special Master Report and Recommendation re Approval of Prior Settlements) at 15.

28

online and in various publications throughout the United States.  *Id.*  The notices advised settlement class members of the material terms of the proposed settlements, including the plan of distribution, and the claims deadline of December 7, 2015.  *Id.* ¶ 115.  Notice reached an estimated 83% of class members with an estimated frequency of 3.1.  *See generally* ECF No. 4371 (Fisher Declaration Reporting on Class Notice, ¶ 18 (declaration of notice provider detailing the reach of notice program)).  The district court issued its Order Granting Final Approval of the Prior Settlements on July 7, 2016.  *CRTs*, 2016 WL 3648478, at *3.  It also determined that the plan of distribution was "fair and appropriate."  *Id.* at *16.

        As noted above, the original due date for claims in the Prior Settlements was December 7, 2015.  ECF No. 4339 (Order re Objection to Special Master R&R re Request for Extension of Claims Submission Deadline) at 1.  The Court has twice denied requests to extend that deadline for all settlement class members in the Prior Settlements.  During the settlement approval process, the Court addressed whether, due to an intervening settlement by the California Attorney General in a parallel state court case, the claims deadline should be extended 120 days to June 30, 2016 for California natural persons.  *See id.*  IPPs objected to the request, and the Court noted that an extension to one group of claimants might result in objections from others.  *Id.* at 3.  Objector Dan L. Williams also objected to the extension of the claims deadline in that it was extended only for California persons, and requested instead that the claims deadline be extended for all settlement class members.  *Id.* at 4; *see also* ECF No. 4312 (Williams' Objection).  The Court overruled IPPs' objection and extended the claims deadline, but did so only for California persons.  ECF No. 4338 at 4-5.  The Court denied the request that the deadline be extended for all class members, albeit without prejudice.  *Id.* at 5.  The Court reasoned that only the State of California pursued a *parens patrie* suit and obtained a settlement for California natural persons, justifying providing an extension only to them.  *Id.* at 4.  Six months later, in connection with final approval of the Prior Settlements and the related plan of distribution, and well after the original claims deadline had passed, the Court considered other objectors' requests that, in conjunction with a new notice and claims period for

1    certain CRT resellers, "a new claims period be established, on the grounds that the prior notice was

2    inadequate." *CRT*, 2016 WL 3648478, at *21.  The Court denied this extension request as well.  *Id*.

3         The Court entered judgment on July 14, 2016.  ECF No. 4717.  Certain objectors whose

4    objections were overruled by the Court appealed.  *See, e.g.*, ECF Nos. 4743-47.  Appeals of the

5    Court's approval of the Prior Settlements remain pending, with oral argument before the Court of

6    Appeals scheduled for April 10, 2018.

7         **B.    Status of Claims Process on Prior Settlements**

8         As of February 28, 2018, a total of 158,624 claims have been filed by persons and entities in

9    the Prior Settlements.[6]  While auditing processes continue with respect to certain timely and late

10   claims, total claims submitted to date amount to 95,380,369 weighted CRT units.[7]  Of the total

11   claims filed, 4,449 were filed after either the December 7, 2015 deadline or the June 30, 2016

12   extended deadline for California natural persons.  If only timely filed claims are considered in the

13   Prior Settlement's distribution plan, the CRT unit dollar value that would be applied to each

14   claimants' weighted CRT units would be approximately $5.30.  If all timely filed claims and all late-

15   filed claims are considered in that plan, the CRT unit dollar value that would be applied to each

16   claimant will be approximately $4.19, thus reducing the recoveries of timely-filed claimants by

17   approximately 21 percent.  Fisher FRS Decl., ¶ 9.

18        **C.    FRS's Late Claims Submitted in the Prior Settlements**

19        As of March 5, 2018, FRS has filed 3,255 claims on behalf of end-user claimants.  Fisher

20   FRS Decl., ¶ 7.  Over 18 percent of those claims, representing 590 submissions, have been either

21   identified as duplicate claims or have been withdrawn by FRS.  *Id*.  FRS currently has 2,665 claims

22   pending; approximately half of those claims, totaling 1,338, were filed after the applicable claims

23   deadlines.  *Id.*  Approximately 939 of these late claims, about 70 percent, were filed over 6 months

24   after the applicable claims deadline, and about 47 percent were filed over one year late.  Fisher FRS

25

26   [6] Declaration of Joseph M. Fisher Re: Response to FRS ("Fisher FRS Decl.") ¶ 5.  The Claims
     Administrator is no longer accepting new claims in the Prior Settlements.  Alioto Decl., ¶ 45.

27   [7] Fisher FRS Decl. ¶6.  Different types of CRT products purchased by claimants are given different
     weightings based on the type, size and cost of the CRT.

28

1    Decl., ¶ 7.  For this and other reasons described below, the Settlement Administrator's review and

2    evaluation of FRS's late claims is incomplete and ongoing.  *Id.*

3          In light of the Court's orders setting and reaffirming the current claims deadlines (as

4    discussed above), and in order for the Settlement Administrator to be in a position to evaluate

5    equitable considerations related to FRS's late claims, the Settlement Administrator has requested

6    that FRS provide certain information regarding the late claims.  *Id.* ¶ 10.  For example, in July of

7    2017, the Settlement Administrator requested that FRS provide the following information: (1) A

8    representation by each claimant that (a) specifies the date (or approximate time period) when it first

9    learned, from any source, of the CRT indirect settlement, and (b) identifies any other justification the

10   claimant relies on for its late filing; and (2) for each of FRS's late claims, (a) the date when FRS first

11   informed the claimant of the CRT indirect settlement, regardless of whether the claimant was a FRS

12   client at the time, and (b) the date when the claim was filed.  *See id.*  To date, FRS has not provided

13   the requested information.  *Id.*

14         The Settlement Administrator's requests are not without basis, as its evaluation of FRS's late

15   claims to date has disclosed multiple late-claim FRS clients who were sent timely direct mailed

16   written notices of the Prior Settlements by first-class mail.   The Settlement Administrator has also

17   determined that numerous of FRS's claims on behalf of clients duplicate timely claims previously

18   submitted by such claimants, or timely claims submitted on behalf of those claimants by other claim

19   submission companies.  *Id.*  The Settlement Administrator has requested further information from

20   FRS regarding the foregoing claims.  *See id.*  These and other requests for information from the

21   Settlement Administrator to FRS remain outstanding.

22         **D.     The Proposed Settlement's Plan of Distribution**

23         Under the proposed Plan of Distribution (described in detail in IPPs' opening brief in support

24   of preliminary approval of the Mitsubishi Electric Settlement at 25-30), the Settlement Administrator

25   will first weight each claim based on the amount and type of CRT Products purchased, using the

26   same weighting applied in the plan of distribution for the Prior Settlements ("Prior Plan of

27

28

INDIRECT PURCHASER PLAINTIFFS' REPLY TO FINANCIAL RECOVERY STRATEGIES' OBJECTION TO
PROPOSED PLAN OF DISTRIBUTION IN CLASS SETTLEMENT
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

Distribution").[8]  Using these weights, each valid claimant will receive a "CRT unit" count, to which the Administrator will apply a "CRT unit dollar value." The CRT unit dollar value is a pro-rata amount based on the amount available for distribution and the total number of CRT units claimed. *Id.*, ¶ 48.

The plan of distribution addresses three groups of claimants:  class members that did not file valid claims in the Prior Settlements ("First-time Claimants"); class members that already filed valid claims in the Prior Settlements, but which have additional purchases of CRTs or CRT Products not included in their original claim (*e.g.*, claims based on purchases made in states not included in the Prior Settlements) ("Repeat Claimants"); and class members that made valid claims in the Prior Settlements ("Prior Claimants").  The operative provisions of the Plan of Distribution are as follows:

1. First-time Claimants and Repeat Claimants shall receive a minimum payment of $25 for newly-claimed CRT units. This is the same minimum payment amount as the Prior Plan of Distribution.  As before, the purpose is to encourage the filing of claims by those with small claims and reduce the burdens and costs associated with administering those claims.

2. Prior Claimants and Repeat Claimants shall receive a minimum payment of $10 for their already-claimed CRT units. This minimum payment provides guaranteed compensation to these claimants for releasing their claims against Mitsubishi Electric, and it is in addition to the compensation received from the Prior Settlements. The $10 minimum recovery similarly reduces the burden of administering those claims.

3. For their first 25 newly-claimed CRT units, First-time Claimants and Repeat Claimants shall be paid the same CRT unit value as claimants under the Prior Plan of Distribution. The CRT unit dollar value in the Prior Plan of Distribution is currently estimated to be approximately $4 per CRT unit. Thus, First-time Claimants and Repeat Claimants shall receive up to $100 for valid claims of up to 25 units ($4 x 25

---

[8] Claims for televisions with a 30 inch or smaller screen size ("Standard CRT Televisions") get a weight of 1; televisions with screen sizes greater than 30 inches ("Large CRT Televisions") get a weight of 4.3; and CRT Computer Monitors get a weight of 3. Alioto Decl. ¶48.

INDIRECT PURCHASER PLAINTIFFS' REPLY TO FINANCIAL RECOVERY STRATEGIES' OBJECTION TO PROPOSED PLAN OF DISTRIBUTION IN CLASS SETTLEMENT
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

= $100). To ensure these payments to First-time Claimants and Repeat Claimants do not disproportionately impact the total settlement funds available for distribution, they are capped at $4 million.

4.   Settlement funds remaining after making the payments in Steps 1 -3 shall be allocated in two steps: (a) pro rata allocation among First-time Claimants and Repeat Claimants for their newly-claimed CRT units in excess of 25 CRT units (such pro rata allocation may not exceed the CRT unit value applied under the Prior Plan of Distribution); and (b) any settlement funds remaining shall be allocated pro rata among all claimants, First-time Claimants, Repeat Claimants and Prior Claimants alike, for all CRT units claimed (both newly-claimed and already-claimed units), subject to a maximum recovery of three times the estimated money damages per claimant.

The Settlement Class includes nine additional statewide classes that were not included in the Prior Settlements:  Arkansas, Massachusetts, Missouri, Montana, New Hampshire, Oregon, Rhode Island, South Carolina and Utah.  Class members in these states are eligible to make claims on the Settlement Fund. Alioto Decl., Ex. A, ¶¶ 5, 10.

## III.   ARGUMENT

### A.   First-time Claimants Have Been Provided with a Fair Opportunity to Claim Benefits in the Prior Settlements

FRS objects to the Plan of Distribution on the grounds that First-time Claimants may only participate in the Proposed Settlement, and not in the separate Prior Settlements.  FRS does not challenge the key operative provisions of the proposed Plan of Distribution, including those applicable to Prior or Repeat Claimants, the payment minimums, the payment of the same CRT unit dollar value as used in the Prior Settlements to First-time Claimants (up to 25 units), the $4 million cap on those payments, or the pro-rata allocations to be applied thereafter.  *See generally* FRS Obj. at 1-11.  In sum, FRS cannot fairly be said to be objecting to the Proposed Settlement with Mitsubishi Electric or the related Plan of Distribution; rather, its objection is a thinly-veiled attempt to extend the claims deadline in the Prior Settlements.

First-time Claimants are persons and entities who either did not submit claims at all, or did

8

1    not submit valid claims, in the Prior Settlements.  Prior Claimants are persons or entities who

2    submitted valid claims in the Prior Settlements.  FRS asserts that the First-time Claimants are

3    receiving "unequal treatment" under the proposed Plan of Distribution because they "cannot

4    participate in the $576,750,000 recovered in the Prior Settlements."  FRS Obj. at 1.  This statement

5    is wrong.  All First-time Claimants that are members of the Settlement Class in the Prior Settlements

6    had the opportunity to submit timely, valid claims in that action.  IPPs provided a robust notice

7    program that the Court found to be "the best practicable notice to class members."  *CRTs*, 2016 WL

8    3648478, at *6.  Thus, by definition, all First-time Claimants necessarily will have either not

9    submitted a claim, or will have submitted a claim that was not valid.  Regardless, they will have

10   been provided with the same opportunity to make a claim in the Prior Settlements.

11          FRS's further assertion that the proposed Plan of Distribution "will result in thousands of

12   First-time Claimants . . . releasing their claims but receiving nothing from the Prior Settlements"

13   (FRS Obj. at 1) is also wrong.  Again, all First-time Claimants in the Proposed Settlement who were

14   also settlement class members in the Prior Settlements, had the opportunity to submit claims against

15   the settlement fund at issue there.  FRS makes no argument that notice provided in the Prior

16   Settlements was inadequate, and even assuming it did make that argument, this preliminary approval

17   proceeding involving a different Settlement Fund, Settlement Class and defendant is not the

18   appropriate vehicle through which to raise it.[9]  The proposed Plan of Distribution here has no impact

19   on First-time Claimants' receipt of notice, or their submission or non-submission of valid claims in,

20   the Prior Settlements.  For these reasons, FRS's objection should be overruled.

21          Apart from its factual inaccuracy, FRS's objection that the Plan of Distribution pertaining to

22   a settlement with Mitsubishi Electric should be permitted to access monies generated by different

23   settlements, involving different settlement classes, defendants and agreements, is legally untenable.

---

25   [9] FRS's letter vaguely implies that the quantity of its late claimants suggests that eligible class
26   members were unaware of the action.  FRS Obj. at 5 n.9.  But over 97 percent of the total claims
     filed in the Prior Settlements were timely, and, as explained above, numerous of FRS's late
27   claimants were sent direct mailed notice of the Prior Settlements, or previously filed their own
     claims (without FRS) on a timely basis.  Fisher FRS Decl., ¶¶ 5, 10.

28

1    The Court entered final judgment approving the Prior Settlements.  While that judgment is on

2    appeal, the appeal does not change the judgment's finality and *res judicata* effect.  *Tripati v.*

3    *Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) ("The established rule in the federal courts is that a

4    final judgment retains all of its res judicata consequences pending decision of the appeal . . . .")

5    (quotations omitted).  FRS cites no authority establishing, or even indirectly supporting, that the

6    Court may undo that judgment, merge the different settlement funds and different settlement classes

7    from the Prior Settlements and the Proposed Settlement, and develop an overarching plan of

8    distribution applicable to all.  To the extent FRS seeks to reopen the final judgment on the Prior

9    Settlements and merge those settlements with the Proposed Settlement, it would at least have had to

10   file a motion under Rule 60 of the Federal Rules of Civil Procedure.  *See Amalfitano v. Google Inc.*,

11   2015 WL 456646, at \*3 (N.D. Cal. Feb. 2, 2015) (party could have made a Rule 60 motion seeking

12   to amend a judgment to allow an opt out, he did not and did not show extraordinary circumstances

13   allowing a collateral attack on the judgment in another case).  FRS neither cites Rule 60 nor attempts

14   to satisfy Rule 60(b)'s requisites for reopening the judgment.

15        To be sure, as explained in IPPs' opening brief (p. 29), the proposed Plan of Distribution

16   should (and does) take into consideration the Prior Settlements and claimants' receipt of

17   compensation from them.  But the Proposed Settlement has not yet been preliminary approved, and

18   final approval is months away at best.  There may be objections made to the Proposed Settlement

19   and potential objector appeals may ensue even if the settlement is finally approved.  Thus, even if

20   there was legal support for somehow merging the settlements and plans of distribution of the Prior

21   Settlements and Proposed Settlements, such an approach could further delay finality of the Prior

22   Settlements to the detriment of settlement class members therein.

23        **B.    The Proposed Plan of Distribution is Fair, Adequate and Reasonable**

24        FRS is correct that, to the extent any of its claims in the Prior Settlements are denied solely

25   on the grounds that they are late, then those claims will need to be resubmitted in the Proposed

26   Settlement in order for those claimants to receive a recovery.  But even assuming that occurs, the

27   Plan of Distribution is still fair, adequate and reasonable under all of the circumstances of the case.

28

10

INDIRECT PURCHASER PLAINTIFFS' REPLY TO FINANCIAL RECOVERY STRATEGIES' OBJECTION TO
PROPOSED PLAN OF DISTRIBUTION IN CLASS SETTLEMENT
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

1    The proposed Plan of Distribution "must be fair, reasonable and adequate."  *Thomas v.*

2  *MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2017 WL 4750628, at *3 (N.D. Cal. Oct.

3  20, 2017); *CRT*, 2016 WL 3648478, at *11.  While a plan of distribution that compensates class

4  members based on the type and extent of their injuries is generally considered reasonable (*see* CRT,

5  2016 WL 3648478, at * 11), it "need not necessarily treat all class members equally," and "need

6  only have a reasonable, rational basis . . . ." (*In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*,

7  No. 09 MDL 2007-GW (PJWX), 2014 WL 12591624, at *4 (C.D. Cal. Jan. 10, 2014) (internal

8  quotation marks and citations omitted)).

9    Here, First-time Claimants will receive the same CRT unit dollar value as in the Prior Plan of

10  Distribution for their first 25 units claimed, and then pro rata for claims in excess of 25 CRT units.

11  By so doing, the proposed Plan of Distribution recognizes that First-time Claimants have not yet

12  received compensation for their CRT conspiracy-related damages, and seeks to provide them with

13  compensation similar to that Prior Claimants will receive in the Prior Settlements—at least for the

14  first 25 units claimed.  FRS does not dispute that a distribution plan may fairly and equitably

15  consider (or offset) amounts claimants may have received in other litigations or from other sources.

16  *See, e.g.*, *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738-741 (9th Cir. 2005) (approving

17  distribution plan that included 50% offset for amounts recovered in other litigation; noting that "the

18  offset provision allows for more equal compensation" among victims).  Finally, the fact that the

19  adjusted CRT unit value will apply in the same way to all valid First-time Claimants, whether their

20  claims are small or large, whether they are businesses or individual consumers, and whether they

21  were eligible to claim in the Prior Settlements or not, further supports the plan's fairness.

22    The Proposed Plan of Distribution, however, also recognizes that there may be claimants

23  making claims that are substantially larger than 25 CRT units, and that the desire to pay First-time

24  Claimants with 25 or less CRT units compensation similar to that of Prior Claimants, should be

25  balanced against large claimants' interests in a straight pro-rata distribution of the Proposed

26  Settlement's net Settlement Fund.  As such, the Proposed Plan has included a $4 million cap on the

27  amount of Settlement Funds that can be used to pay First-time Claimants the same CRT unit dollar

28

value as in the Prior Settlements' distribution plan.  This will ensure that the vast majority of the Proposed Settlement's net Settlement Fund will be available to cover claims with large CRT unit amounts on a pro-rata basis.

This Proposed Plan of Distribution not only increases the overall reach of the settlements achieved in this litigation, but does so in an equitable manner. It endeavors to provide First-time (and Repeat Claimants) fair and meaningful compensation for injuries suffered as a result of the CRT conspiracy, limited only by the CRT unit compensation levels achieved by claimants under the Prior Plan of Distribution.  After that, settlement proceeds are distributed pro rata among all class members, First-time Claimants, Repeat Claimants, and Prior Claimants alike.

C.     **The Court Has Previously Addressed the Claims Deadline in the Prior Settlements, and In Any Event, Open Issues Remain on FRS's Late Claims**

The primary thrust of FRS's objection is that the claims deadline in the Prior Settlements is unfair and arbitrary, given that the Court's final approval of Prior Settlements is on appeal, and distribution to the settlement class members there cannot yet occur.  But as noted above, this is not a matter that should be litigated in the context of this separate settlement approval proceeding.  *See* §III.A., above.  The Proposed Settlement and related Plan of Distribution does not impact the claims deadline in the Prior Settlements, and FRS's objection should be overruled on that basis.

The issue of extending the claims deadline for the Prior Settlements also is not as simple as FRS portrays.  The record to date on this issue and the applicable legal standards regarding extension of such deadlines reveal competing considerations that the Court should evaluate in addressing the propriety of any extension, *i.e.*, if and when properly presented in the Prior Settlements' proceedings, not here.

As described above, during proceedings leading to the final judgments now on appeal, this Court was twice presented with arguments that the December 7, 2015 claims deadline should be extended for all settlement class members in the Prior Settlements.  The Court rejected those requests both times, including at final approval.  *See* §II.A., above.  Given this record, IPP Counsel cannot blithely accept FRS's request for acceptance of its late claims and recommend it to the Court.

It is well recognized that the Court has discretion to grant or deny late claims in class action settlements.  *See, e.g., In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977) ("the district court had discretion to grant late claims"); *Lemus v. Madar*, 594 F. App'x 419 (9th Cir. Feb. 27, 2015) (quoting *Gypsum* for the proposition that denial of an extension is reviewed for abuse of discretion).  In evaluating whether a District Court has abused its discretion in allowing or disallowing late claims, objections or opt-outs, the Ninth Circuit has examined a number of factors, including whether claimants were treated similarly in the claims process, and whether claimants provide plausible excuses for not filing timely.  *See, e.g., In re Valdez*, 289 F. App'x 204, 206 (9th Cir. 2008) (affirming a district court's refusal to accept a late claim where appellant made "no showing that [his] claim was treated in a fashion inconsistent with those of other claimants similarly situated" (*quoting Gypsum*, 565 F.2d at 1128) and where "other claimants had plausible excuses for not filing timely, whereas appellant offered no plausible excuse"); *accord In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 194-95 (3d Cir. 2000) (affirming that a district court may allow late claims, should ensure adequate deadlines, and may consider extension of deadlines for good cause).

District courts in this Circuit, similarly, have examined whether "there is a showing of good and sufficient cause to excuse the tardiness of the claims."  *McPhail v. First Command Financial Planning, Inc.*, No. 05cv179-IEG-JMA, 2009 WL 839841, at *9 (S.D. Cal. March 30, 2009).  Other courts—including court cases cited by FRS (Obj. at 6)—have held that "to determine whether qualified late claimants may share in the settlement fund, the Court must make an equitable determination whether there was 'excusable neglect' for each claimant."  *In re Electric Carbon Prods. Antitrust Litig.*, 622 F.Supp.2d 144, 152-53 (D. N.J. 2008).  Factors to consider in assessing excusable neglect include: "(1) the danger of prejudice to the other class members or to the defendants, (2) the length of the delay and its effect on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the late claimant, and (4) whether the late claimant acted in good faith."  *See id.* at 154 (citing *In re Orthopedic Bone Screw Prods.*, 246 F.3d 315, 323 (3d Cir.2001)).  Application of the above legal standards to FRS's request for extension of the claims deadline reveals competing interests and issues that FRS ignores.

1   FRS's request does not seek to add a handful of *de minimis* late claims.  As outlined above, if

2   all late claims are accepted and they are not otherwise invalid, including them in the Prior

3   Settlements will reduce timely claimants' recoveries by 21 percent.  Were IPP counsel to advocate

4   for including such late claims, it is highly likely other large claimants in the Prior Settlements will

5   object, and argue that IPP counsel are failing to represent their interests.  Indeed, even FRS argues

6   that "IPP Counsel have a fiduciary duty to protect the interests of ***all*** class members, and cannot be

7   seen to favor [one group] over [other] class members."  FRS Obj. at 4 (emphasis and brackets in

8   orig.).  But FRS itself is requesting that IPP Counsel elevate the rights of claimants that failed to

9   comply with the claim filing deadline and equate those claims with those that complied with the

10  deadline (*i.e.*, by accepting late claims that will reduce the latter group's recovery by approximately

11  21 percent).  There is certainly authority for extending claims deadlines, in this Circuit and

12  elsewhere.  But here the court has made specific rulings on this exact issue and IPP Counsel are

13  loath to contravene in any way this Court's considered judgment.

14       In terms of the length of delay, approximately 70 percent of FRS's pending claims were filed

15  over 6 months late, and approximately 47 percent thereof were filed over one year late.  Fisher Decl.,

16  ¶ 7.  As outlined above, the Settlement Administrator has made several requests to FRS for

17  information on the delay.  *See* §II.C., above.  FRS has not yet provided the information requested.

18  Additionally, the Settlement Administrator has determined that (1) multiple late-claim FRS clients

19  were sent timely direct mailed written notices of the Prior Settlements by first-class mail; and (2)

20  numerous of FRS's claims on behalf of clients duplicate timely claims previously submitted by such

21  claimants, or timely claims submitted on behalf of those claimants by other claim submission

22  companies.  In sum, the Settlement Administrator has not yet been provided with sufficient

23  information from FRS to assist IPP Counsel in an evaluation of whether there is good cause to

24  accept FRS's late claims.

25       IPP Counsel recognize, however, that maximizing the number of claimants in the Prior

26  Settlements and its overall reach are laudable goals, and that, given the pending appeal of the Prior

27  Settlements, distribution of funds now is not possible.  But "[t]here is no question that in the

28

14

distribution of a large class action settlement fund, a cutoff date is essential and at some point the matter must be terminated." *Gypsum*, 565 F.2d at 1127 (quotation marks omitted).  IPP counsel further recognize that courts in this district have extended claims deadlines during the pendency of objector appeals.  *See* FRS Obj. at 8-11.  But issues associated with number and magnitude of FRS's late claims and their adverse impact on timely claimants' recoveries here do not appear to have been presented in those cases.  Those cases also do not appear to have involved earlier court orders denying extensions, as is the case here.

## IV.     CONCLUSION

Based on the foregoing, IPPs respectfully request that the Court: (1) overrule FRS's objections and grant preliminary approval of the Proposed Settlement with Mitsubishi Electric; (2) certify the proposed Settlement Class; (3) grant preliminary approval to the proposed Plan of Distribution and proposed claim form; (4) approve the proposed notice plan as complying with due process and Rule 23, and order that notice of the Proposed Settlement be given to the Settlement Class; (5) set a schedule for final approval; and (6) set a schedule for any motions for an award of attorneys' fees, litigation expense and incentive awards.

Dated:  March 7, 2018                                  Respectfully submitted,

                                                                       */s/ Mario N. Alioto*

                                                                       Mario N. Alioto (56433)
                                                                       Joseph M. Patane (72202)
                                                                       Lauren C. Capurro (241151)
                                                                       TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
                                                                       2280 Union Street
                                                                       San Francisco, CA 94123
                                                                       Telephone: 415-563-7200
                                                                       Facsimile:  415-346-0679
                                                                       Email:      malioto@tatp.com
                                                                                      jpatane@tatp.com
                                                                                      laurenrussell@tatp.com

                                                                       *Lead Counsel for Indirect Purchaser Plaintiffs*

INDIRECT PURCHASER PLAINTIFFS' REPLY TO FINANCIAL RECOVERY STRATEGIES' OBJECTION TO PROPOSED PLAN OF DISTRIBUTION IN CLASS SETTLEMENT
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Christopher T. Micheletti*

Christopher T. Micheletti (136446)
Judith A. Zahid (215418)
Qianwei Fu (242669)
ZELLE LLP
44 Montgomery St., Suite 3400
San Francisco, CA 94104
Telephone:  415-693-0700
Facsimile:   415-693-0770
Email:      cmicheletti@zelle.com
            jzahid@zelle.com
            qfu@zelle.com

*Counsel for Indirect Purchaser Plaintiffs*

4829-6840-7135

16

INDIRECT PURCHASER PLAINTIFFS' REPLY TO FINANCIAL RECOVERY STRATEGIES' OBJECTION TO
PROPOSED PLAN OF DISTRIBUTION IN CLASS SETTLEMENT
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST