

ALTSHULER BERZON LLP
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108
(415) 421-7151
FAX (415) 362-8064
www.altshulerberzon.com

March 9, 2018

*Via E-Filing*

Honorable Judge Jon S. Tigar
U.S. District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

> ### *In re: Cathode Ray Tube (CRT) Antitrust Litigation, Indirect Purchaser Actions*
> ### *MDL No. 1917, Case No. C-07-5944-JST (N.D. Cal.) ("CRTI")*

  Hearing Date: April 5, 2018
  Time:      2:00 p.m.
  Courtroom:   9, 19th floor

Dear Judge Tigar:

  Non-party Spectrum Settlement Recovery, LLC ("Spectrum")[1] submits this letter to the Court in support of counsel for the indirect purchaser plaintiffs' ("IPPs'") proposed plan of distribution of funds from the recent settlement in *Luscher, et al. v. Mitsubishi Electric Corp.*, 17-cv-04067-JST (the "Proposed Plan"), and to respond to non-party Financial Recovery Strategies' ("FRS") letter to the Court dated February 27, 2018, Dkt. #5252.  Spectrum had not intended to comment on the Proposed Plan, but having reviewed the objection by FRS alleging that the Proposed Plan is "fatally flawed" and unfair, Spectrum believes it necessary to communicate its views so that the Court can consider the Proposed Plan based on a complete and accurate record.[2]

  FRS's letter is styled as an objection to preliminary approval of the Mitsubishi settlement.  But, as explained in IPP counsel's reply brief, Dkt. #5255, in reality, FRS's letter has little to do with the Mitsubishi settlement.  Rather, the FRS letter is back-door attempt to challenge the proposed

---

[1] Spectrum, the successor to Settlement Recovery Center, LLC – the original leader in class action claims management consulting – was founded in 2003 by a former Orrick lawyer to promote and encourage participation in antitrust class action settlements.  *See, e.g.*, *Settlement Recovery Center CEO Heads to Court Against Microsoft*, Business Wire (Mar. 29, 2004), *available at* bit.ly/2oQOcCG; *Howard Yellen: An Executor For Class Actions* BusinessWeek (Mar. 6, 2004), *available at* bit.ly/2FjrEp9; *Protecting Consumer Interests in Class Actions*, The Federal Trade Commission and the Georgetown Journal of Legal Ethics (Sept. 13, 2014), *available at* bit.ly/2tsYrTt.  Like FRS, Spectrum provides services to class action claimants.  In the Previous Settlements in this multidistrict litigation, Spectrum submitted client claims for over 7.5 million CRT devices (22,686,123 CRT Equivalent Units out of 75,424,541 timely filed equivalent units) reflecting a substantial plurality >30% of all timely claims by value.  All of these claims were timely filed, and substantially all were approved by The Notice Company (the "Claims Administrator") after a strenuous audit procedure.

[2] Spectrum has stated its position in a letter brief in the interest of responding as promptly as possible to FRS's letter.  At the Court's pleasure, Spectrum would be pleased to file a motion to intervene along with an accompanying request for leave to file an appropriate formal pleading.

*In re: Cathode Ray Tube (CRT) Antitrust Litigation, Indirect Purchaser Actions*
March 9, 2018
Page 2

distribution of *earlier* settlements in this multidistrict litigation (the "Previous Settlements") in an effort to obtain payment for 1,360 claims that FRS filed after the applicable deadline.[3]  This Court set a deadline for claims in the Previous Settlements, and that deadline was communicated to class members through a court-approved notice plan.  The Special Master[4] and the Court evaluated and confirmed the sufficiency of the Previous Settlements' notice plan on multiple occasions, even as it related to a request by the California Attorney General ("AG") to extend the claim-filing deadline.[5]  In response to the motion by the AG, the Court granted a limited extension for California natural persons only, while rejecting (without prejudice – subject to further briefing and hearing on the notice plan) a parallel request to extend the established deadline for all claimants (including corporate beneficiaries).[6]  In addition to notice via first class mail, this ongoing process was communicated to the class through the www.crtclaims.com website, which kept the class abreast of case status, managed access to official documents and forms, and made abundantly clear when the deadline to file claims had passed.[7]

        FRS did not object to the adequacy of the notice plan during preliminary approval of the Previous Settlements, the proceedings before the Special Master that specifically considered the sufficiency of the notice plan, or the Court's consideration of final approval of those settlements.  Nor did FRS intervene when the Court considered the AG's Motion to Extend the Deadline.  Still, ignoring the Court's guidance, FRS filed more than half of its total claims well after that deadline and now seeks, in effect, to have them included in the Previous Settlements.

        Over the last 18-plus months, FRS sought approval of these late-filed and otherwise problematic claims without the Court's authorization.  But counsel for the IPPs properly declined these requests, recognizing that such authority is vested with the Court, not the Claims Administrator or counsel.  Dkt. #5252, n.1.  *Cf. City of Livonia Employees' Retirement Sys. v. Wyeth*, 2013 WL 4399015, at *1 (S.D.N.Y. Aug. 7, 2013) ("[T]he Court concludes that this determination is self-evident: a class member who has no interest in the appropriation of a settlement fund [because she failed to file a claim] must lack standing to challenge the appropriation of that fund.").

---

[3] Per the FRS letter objection, it filed timely claims for approximately 2,354,766 CRT products.  Later, FRS submitted 1,360 additional claims over the two years following the deadline for approximately 2,531,013 CRT Products (IPP counsel identifies the number of late claims as 1,338 in its reply).  For simplicity, herein, Spectrum uses the numbers provided in the FRS objection which are at variance with the declaration provided by Mr. Joseph Fisher of The Notice Company.  Nearly 52% of all claimed products filed by FRS were submitted *after* the court ordered deadline.  While FRS asserts at page 4 of their letter that they submitted 26% of the total, in fact their submissions accounted for ~9% of CRT products *during the authorized filing window*.

[4] *See* Special Master's Report and Recommendation re Request of California Attorney General that Final Date for Submitting Claims in the Indirect Purchaser Settlement be Extended to June 30, 2016, Dkt. #4281.

[5] The Court granted a very limited extension of the claims-filing deadline solely for natural persons within California, to effectuate the settlement in the State of California's *parens patriae* action.  In that order, the Court wrote, "As the IPPs note, there are indeed corporate entities which seek to aggregate and file claims on behalf of corporations in exchange for a fee. *See id*. at 11-12; Dkt. #4235 (denying an ex parte request made in this case which appears to be from one such entity).  Even so, if the IPPs believe – as the Court assumes they do – that their notice program was effective, then they must also believe that there are relatively few eligible class members who were previously unaware of this action."  Dkt. #4339 at 3:16-21.

[6] Objector Dan L. Williams & Co. Objections to Special Master's Report and Recommendation, Dkt. #4312.

[7] Indeed, at present, the very first piece of information a person considering his or her options encounters on the official settlement website is as follows:  "*The deadline to submit claims has passed. We will no longer be processing late claims in connection with the CRT Indirect Purchaser Antitrust Litigation.*"  *See* www.crtclaims.com (emphasis added).

*In re: Cathode Ray Tube (CRT) Antitrust Litigation, Indirect Purchaser Actions*
March 9, 2018
Page 3

      Given that the inclusion of so many late claims in the Previous Settlements would typically require the demonstration of excusable neglect – which FRS did not argue in its letter objection – it should come as no surprise that FRS has instead asserted a legally and factually insupportable argument attacking the Proposed Plan based on illusory harm to "First-time Filers." *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001) (late filer must demonstrate "excusable neglect" for tardiness).[8]

      The purpose of *amicus curiae* letter is two-fold.  First, to explain why FRS's proposed solution to the purported flaws in the Proposed Plan – in effect a merger of funds from the Mitsubishi settlement with those from the finally approved Previous Settlements – is itself flawed, inconsistent with precedent, injurious to those who filed timely claims in those settlements, and threatening to the expeditious resolution of those cases.  Second, to demonstrate that FRS's real objection the Proposed Plan – that late claims should be included in the Previous Settlement distribution – is, in fact, an attempt to re-litigate the sufficiency notice plan of the Previous Settlements without legal or evidentiary basis.

## I.    THE PROPOSED SETTLEMENT'S TREATMENT OF "FIRST TIME" FILERS IS NOT UNFAIR, AND FRS's PROPOSED "REMEDY" WOULD ITSELF CAUSE HARM.

      FRS's letter asserts that the Proposed Plan does not meet the objectively low bar of a settlement "within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (internal citations and quotations omitted); *see In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079-80 (N.D. Cal. 2007) (the court must find only that the proposed settlement is non-collusive and within the range of possible final approval); *see also* Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions, §11.25 (4th ed. 2002).  The superficial basis for this objection is that the Proposed Plan provides "unequal treatment of First-time Claimants"[9] because it limits the pool from which they may recover to the $33 million in the Mitsubishi settlement, effectively excluding these class members from the greater $576 million obtained by IPPs' counsel in the Previous Settlements that have already received final approval and are currently on appeal to the Ninth Circuit Court of Appeals.

      FRS's purported concern for "first-time claimants" in the Mitsubishi settlement is a sham and is in fact an attempt to obtain recovery in the *Previous Settlements* for the 1,360 claims which were filed **after** the court-authorized deadline in those settlements. Dkt. #5252 at 1 n.1.  In fact, one need not read past the first footnote on the first page of the FRS objection letter to devine its motivation.  In that footnote, FRS says "As used herein . . . 'First-time Claimants' includes these [*i.e.*, FRS's 1,360 untimely] claims." *Id.*  With this sleight of hand, FRS conflates legitimate "first-time" filers *in the Mitsubishi Settlement* (*i.e.*, those in states not previously eligible to file claims in the Previous Settlements and those who chose to not file claims in the Previous Settlements) with "*late*-filing" claimants in the Previous Settlements.

---

[8] The Court has previously recognized the importance of compliance with the deadlines in this case.  Specifically, it denied certain objectors' request to file a late reply brief, after the December 9, 2015 deadline established by the Court for doing so. *See* Dkt. #4274.  FRS's complaint is essentially the same, but while the brief previously rejected by the Court was filed less than one week late, *see* Dkt. #4274, FRS's objection was filed well over *two years* after that deadline. *Cf. In re Crazy Eddie Sec. Litig.,* 906 F.Supp. 840, 847 (E.D.N.Y. 1995) ("[T]he later the claim, the greater the explanation required.").

[9] Dkt. #5252 at 1.

*In re: Cathode Ray Tube (CRT) Antitrust Litigation, Indirect Purchaser Actions*
March 9, 2018
Page 4

### A: Prior Claim Filing Deadlines Need Not Be Reopened Due To Appeals Or Subsequent Settlements.

FRS's proposed solution the problems it created by filing the majority of its claims late is for the court to modify the Proposed Plan such that it eliminates the prior claim filing deadlines and grandfathers the FRS claims into a unified settlement pool.[10]  It seeks to justify this step on the fact that the approval of the Prior Settlements has been appealed.  Taken to its logical conclusion, FRS's argument would mean that whenever any class action is appealed, courts should apply a bright-line rule reopening a prior claims-filing deadline.  That surely cannot be correct, as it would undermine courts' strong interest in finality and promoting compliance with its orders, interfere with the discretion granted to district courts to oversee and manage class action settlements efficiently and fairly, and, as here, lead to gamesmanship and unnecessary litigation and baseless appeals by those who inexcusably neglected to file a timely claim.  *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point, the matter must be terminated.'" (quoting Reports of the Conf. of Dist. Ct. Judges, 63 F.R.D. 231, 262 (1973)); *Bing v. Roadway Exp., Inc.*, 485 F.2d 441, 449 (5th Cir. 1973) (describing claims-filing deadlines as "a reasonable tool for expediting the suit and managing the possible claims"); *see also In re Crazy Eddie Sec. Litig.*, 906 F.Supp. 840, 846 (E.D.N.Y. 1995) (the interest in compensating injured class members must at some point "give way to finality").  FRS's suggestion that the Proposed Plan fails to treat similarly situated class members equally fails for similar reasons.  Claimants who *voluntarily forgo* their opportunity to file timely claims in a particular settlement are not prejudiced or treated "unfairly" or "unequally" vis-à-vis those who chose to participate, even if both groups otherwise would have had equally valid claims.

FRS further claims that the addition of funds from the Mitsubishi settlement necessitates a recalculation of recovery pools in order to treat all class members fairly.  But in practice, successive settlements are not uncommon, and claimants who did not file in the first settlement are often eligible for relief *only* in the new settlement, not prior settlements.  For example, in the *In re Air Cargo Shipping Services Antitrust Litigation*, E.D.N.Y. Master File No. 06-MD-1775 (BMC) (VVP),[11] there were five approved settlements, each involving multiple defendants, totaling more than $1.2 billion.  Claimants for each successive settlement were not allowed to claim in prior settlements after the claim deadline. The same procedure was followed in the *Freight Forwarders Antitrust Class Action, Precision Associates, Inc. v. Panalpina World Transport*, No. 08-cv-00042 (BMC) (PK).[12]

Finally, successive settlements are often the product of litigation management that is critical for class recovery.  As this Court has recognized, plaintiffs in an antitrust case often strategically manage their case by "rolling up" certain defendants first, thereby obtaining their cooperation in the authentication of key documents and providing witness testimony.  *In re CRT Antitrust Litig.*, 2015 WL 9266493, at *6 (N.D. Cal. Dec. 17, 2015); *see id.* at *2 (noting that early settling defendants agreed to provide documents, authenticate sales data, and produce witnesses); *see also In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 636, 643 (E.D. Pa. 2003) (noting importance of settlement that required defendants to make witnesses available and produce documents related to the

---

[10] "First-time Claimants, but for the now-arbitrary claim submission deadline, are indistinguishable from Prior Claimants." Dkt. #5252 at 11.

[11] http://www.aircargo4settlement.com/

[12] https://www.freightforwardcase.com/en

*In re: Cathode Ray Tube (CRT) Antitrust Litigation, Indirect Purchaser Actions*
March 9, 2018
Page 5

case); *see also Agretti v. ANR Freight Sys. Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) (in complex class actions, partial settlements often play a vital role in resolving the litigation). In this way, plaintiffs can pressure the remaining defendants to settle on more favorable terms. Each settlement needs to proceed through the process on its own terms rather than having the vehicle of subsequent settlements used to reopen prior settlements, which would create confusion, delay, and unfairness for those claimants who accept the court-ordered deadlines as meaningful.

The mere fact that Proposed Plan would disburse its funds as an independent successive settlement, and does not allow new claims filers to participate in a prior settlement from another case of which they previously received timely and adequate notice, is not unfair *as a matter of law* within the meaning of Rule 23, and FRS cites no authority that supports that implausible proposition. *See* Fed. R. Civ. P. 23(e)(2) (settlement of class action must be "fair, reasonable, and adequate"). It is entirely appropriate and typical to allow class claimants to share only in recoveries in settlements in which they filed proper and timely claims.

### B: Merging Settlement Pools Would Disrupt the Previous Settlements.

Allowing First-time Claimants to access the Previous Settlements pool would render the settlement vulnerable. The Previous Settlements were settled for plaintiffs in only 21 states and the District of Columbia with indirect purchaser recovery. If nine more states had been allowed to participate, the original settlement might well have been different, larger, might not have happened at all, or the Court might not have approved at the original dollar amount, and class members might have objected or opted out. In effect, it would require the Court to try to reimagine a hypothetical course of events rather than the settlement that was actually agreed to with the claimants who actually could and did participate. "Merger" would fundamentally change the settlement calculus and would interfere with the orderly, efficient and expeditious resolution of the case and the previously approved distribution. At a minimum, the FRS proposal would require an entirely new plan of distribution and potentially moot the pending appeal, provide a basis for additional appeals, and add an indefinite delay.

## II.    AUTHORIZING LATE CLAIMS NOW WOULD CHALLENGE THE PREVIOUS SETTLEMENT NOTICE PLAN WITHOUT A SUFFICIENT EVIDENTIARY RECORD.

### A: Late Claims Are Not Routinely or Automatically Approved Retroactively.

FRS offers nothing to support its request for upsetting the Previous Settlements by including its 1,360 new claims (and unknown more – the briefing before the Court does not address other late claims filed by aggregators), other than the pendency of an appeal of this Court's approval of those settlements. FRS also fails to address the disruption, unfairness, and expense that will be required if the earlier deadlines are ignored. FRS suggests that late-filed claims are routinely if not automatically approved retroactively. This is not accurate, and even when late claims *are* allowed, it is typically only on an individualized showing of good faith and good cause for being late. *See*, *e.g.*, *Orthopedic Bone Screw*, 246 F.3d at 329 ("Given the equitable nature of our inquiry, it is, of course, true that the movant must demonstrate good faith or otherwise seek the relief of the court with clean hands."); *In re Elec. Carbon Prods. Antitrust Litig.*, 622 F.Supp.2d 144, 161 (D.N.J. 2007) ("A late claimant must explain the reasons for its delay when invoking the Court's equitable power; without such factual reasons, a court is unable to weigh the claimant's justification and good faith."). We are unaware of *any* instance

*In re: Cathode Ray Tube (CRT) Antitrust Litigation, Indirect Purchaser Actions*
March 9, 2018
Page 6

where a court, as here, was presented with argument proposing extending the claim-filing deadline, declined to do so, and later allowed late claimants to participate in a full recovery under the approved plan.

      **B: This Court Previously Extended the Claim Filing Deadline for California Natural Persons and Not for all Class Beneficiaries Subject to Further Proceedings on the Sufficiency of the Notice Plan.**

      In January 2016, Special Master Martin Quinn filed a Report and Recommendation relating to a request by the California Attorney General to extend the claim-filing deadline in the Previous Settlements from December 7, 2015, to June 30, 2016. Two parties, counsel for the IPPs and Dan L. Williams & Co.,[13] objected – the former as to an extension of any kind, and the latter that the extension was too limited and should be expanded for all claimants. At the core of the requested extension was the sufficiency of the previous notice plan.

      Counsel for the IPPs strenuously opposed any extension as an attack on the notice plan, which had already been preliminarily approved by the Court (and which would be the subject of additional proceedings before the Special Master).[14] Counsel argued that the notice plan submitted and approved by the Court was delicately balanced to facilitate the submission of both consumer and business claimants. Among the risks that counsel for IPPs presciently warned against is the one before this Court now: a blanket extension of the deadline would skew the settlement in unintended ways, specifically, that opening claims filing would permit trolling by third-party claim filers that would target large corporate claimants, unfairly dominate the claims process without stimulating additional consumer claims, and undermine the AG's efforts to benefit consumers:

> To the extent that [claims] aggregators stimulate the submission of substantial additional large corporate claims, with no similar stimulation of additional consumer claims . . . large corporate claims will be spurred to the detriment of consumer claimants, and will unfairly dominate the claims process.

Dkt. #4292 at 12:1-5.

      And that is precisely what appeared to happen here. After filing a relatively small number of timely, non-duplicative claims, FRS went back and trawled other commercial clients to late file in the hope that the Court would not enforce its previous deadlines, including soliciting claimants who already filed timely claims to file untimely duplicate claims, often worth less than the previously approved claims. Moreover, FRS did not just "miss the deadline" and file these claims a few weeks or months late – almost half of all the late FRS claims were filed more than a year after the deadline. Dkt. #5255-1 at 3.

---

[13] Dkt. #4312.

[14] "[R]etroactive litigation regarding the adequacy of notice would set a dangerous precedent. It would reopen litigation of notice campaigns after they have been implemented and enable hindsight critiques of notice implementation by objectors armed with claims data that is unavailable when notice plans are being devised and implemented. IPPs respectfully submit that, once a Court determines that a notice plan meets the due process and procedural requirements of Rule 23 (as conceded here by the AG), inquiries regarding notice adequacy are at an end." Dkt. #4292 at 7.

*In re: Cathode Ray Tube (CRT) Antitrust Litigation, Indirect Purchaser Actions*
March 9, 2018
Page 7

IPP counsel additionally observed that, based on the then-available data, timely claimants were already projected to receive less than their full actual damages, where the original plan of allocation allowed for a recovery of up to full antitrust trebled damages.

The Court weighed all of these considerations more than two years ago and upheld the original deadline for corporate filers while granting a limited extension for a period of several months for California natural persons. The Court did not reach the issues raised by the Williams' Objection (namely, that the deadline should be extended for all claimants), as final determination of the adequacy of notice was not properly before the court. (Previously, the Court, having granted preliminary approval of the original notice plan,[15] instructed parties that disagreed with that decision to object in writing within 60 days of publication, and that *"[f]ailure to timely submit a written objection . . . will preclude a class member from objecting to the Proposed Settlements*." Dkt. #3906 at 6 (emphasis added)). The Court instructed parties to present arguments regarding the sufficiency of the notice plan *before* final approval:

> The Special Master will address the adequacy of class-wide notice in his forthcoming Report and Recommendation. R&R at 5:15-17. The Court will consider any timely objections to the Special Master's treatment of that issue at the appropriate time.

Dkt. #4339 at 5.

**C: The Notice Plan Was Rigorously Examined and Approved by the Special Master and Court Without Objection by FRS.**

After publication of the settlement notice, numerous parties submitted written objections, which were presented to Special Master Quinn for consideration in his Report and Recommendation regarding final approval of the Previous Settlements, Dkt. #4351. The notice plan was subject to extensive briefing and argument before Special Master Quinn, including current appellants in the Previous Settlements, as well as former counsel for the IPPs in the LCD Antitrust Litigation, MDL1827. Special Master Quinn found there were no compelling arguments, evidence or expert testimony contradicting the effectiveness of the notice plan in reaching class members, concluding that "the Notice Program that has been implemented is fair, adequate and reasonable under the tenets of Rule 23." Dkt. 4351 at 57-58. The Court's Order granting final approval adopted the Report and Recommendation: "The Court will not indulge an effort to attempt to create the evidence that objectors themselves did not provide. Accordingly, the Court overrules these objections and concludes that the parties have provided the best practicable notice to class members." Dkt. #4712 at 9.

Throughout those proceedings which established the sufficiency of the notice plan, *FRS did not file a written objection or appear.* Not before preliminary approval, or during the proceedings relating to the AG's Motion to Extend the Deadline, or eight months after the deadline closed when this court adopted Special Master Quinn's findings as to the notice plan and approved the Previous Settlements.

---

[15] In this Court's Order Granting Preliminary Approval, the court held that the proposed plan of notice to class members "constitutes the best notice practicable under the circumstances, is due and sufficient notice to the Indirect Purchaser Settlement Class and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States." Dkt. #3906 at 5.

*In re: Cathode Ray Tube (CRT) Antitrust Litigation, Indirect Purchaser Actions*
March 9, 2018
Page 8

Nor did FRS seek reconsideration of any prior order based upon new evidence, or their own experience in post-deadline marketing.  Instead, FRS did exactly what counsel for the IPPs warned against, late-filing a barrage of corporate claims without explanation,[16] potentially to the detriment of timely consumer and corporate filers who relied on the deadline and could no longer file claims,[17] and then sought through negotiation with counsel for the IPPs extrajudicial acceptance of these claims.  It would be unfair both to timely claimants and claimants that declined to file claims in reliance on the published deadlines to grant the relief FRS requests.

### D: Courts Require Late Filers to Demonstrate Excusable Neglect.

Without proper briefing from all sides, FRS's inaccurate narrative that late claims are accepted as a matter of course (particularly where appeals are pending, which occurs in almost all indirect purchaser actions), might go unchecked and mislead the court.  While this is not the forum for a full briefing of this issue, Spectrum respectfully directs the Court's attention to a few points that demonstrate that FRS's representations regarding the law with respect to claims is, at best, not complete.

Not only is the acceptance of late claims substantially more restricted than FRS suggests, but the body of jurisprudence examining the issue of late claims generally includes two critical judicial considerations: (1) when evaluating whether to grant relief to an untimely claimant, courts apply an individualized "excusable neglect" standard, requiring each late claimant to provide a declaration justifying its conduct, and judicial oversight of those excuses on a claim by claim basis;[18] and, (2) in cases where IPPs or a class member with proper standing urge a court to accept late claims, courts consider the actual financial impact acceptance would have on timely claimants, and courts are more

---

[16] Many of these were rejected as duplicative of previous timely filed claims.  *See* Declaration of Joseph M. Fisher Re: Response to FRS Dkt #5255-1.

[17] The www.crtclaims.com was updated as the post-settlement proceedings progressed after the deadline, including notifying claimants the deadline had passed, and removing the hyperlink to file a claim as well as a printable claim form that could be mailed to the Notice Company.  Although not specifically addressed in the Fisher Declaration, while this notice and removal of the claim form effectively ended potential participation in the Previous Settlements by natural persons and companies that could have filed late claims on their own, it had zero deterrence on aggregators who ignored the warning and have the ability to file claims without use of the hyperlink or printable claim form.  As a result, allowing late claims from third party filers would create a shadow claim filing extension, making settlement benefits only available to class members who were represented by claim aggregators.

[18] *See, e.g.*, *Orthopedic Bone Screw*, 246 F.3d at 329 ("Given the equitable nature of our inquiry, it is of course true that the movant must demonstrate good faith or otherwise seek the relief of the court with clean hands."); *In re Cendant Corp. PRIDES Litig.*, 235 F.3d 176, 183-84 (3d Cir. 2000); *In re Oxford Health Plans, Inc.*, 383 Fed. Appx. 43, 45-46 (2d Cir. 2010) (affirming denial of request to submit late claim, where claimant did not demonstrate "excusable neglect"); *Elec. Carbon Prods.*, 622 F.Supp.2d at 148 (Courts consider "each claimant's conduct and determine[] whether its delay in filing a claim is the result of 'excusable neglect.'"); *Crazy Eddie*, 906 F.Supp. at 844; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 07-md-01827, Dkt. #8525, 8585 (N.D. Cal. 2013) (accepting claims from only 17 of the 226 late filers because those 17 had demonstrated excusable neglect).  Indeed, unless the court gives reasons for its tardiness and establishes excusable neglect, a court cannot accept late-filed claims.  *See Elec. Carbon Prods.*, 622 F.Supp.2d at 161 ("A late claimant *must* explain the reasons for its delay when invoking the Court's equitable power; without such factual reasons, a court is unable to weigh the claimant's justification and good faith." (emphasis added)).

*In re: Cathode Ray Tube (CRT) Antitrust Litigation, Indirect Purchaser Actions*
March 9, 2018
Page 9

likely to accept late-filed claims where only a small number of claims are late, as the financial impact to timely claimants of accepting a small number of late claims is insignificant.[19]

Not surprisingly, FRS addresses neither of these considerations (for example, in the form of declarations from its 1,360 clients) as to lack of sufficiency of *notice to their organizations* and what facts support a finding of excusable neglect for the entity not filing a timely claim.  Nor is there any evidentiary showing from FRS, such as was presented by the various objectors before Special Master Quinn, as to the adequacy of the notice plan in the form of client testimonials or relevant opinion and date relating to the reach of the notice.  Moreover, FRS fails to explain why its own neglect is excusable: why it did not appear before the court in any prior proceedings relating to the notice plan and claim filing deadline, and instead continued filing claims through February of this year.  In short, the evidentiary record for excusable neglect is nonexistent.  This is fatal to FRS's requests. Additionally, FRS does not argue that the impact on timely claimants to the Previously Settlements is not significant.  Indeed, based on the limited record before this court, it appears that including late claims would, in fact, go beyond that standard and significantly impact timely filers by reducing their already diminished recovery by at least ~20%.[20]

## III.   CONCLUSION

FRS objects to the Proposed Plan in order to have more than half of the claims it filed in the Previous Settlement on an untimely basis approved, despite the court having previously rejected extending the claim-filing deadline.  The court should reject this objection as unfounded, untimely and procedurally flawed and grant preliminary approval to the Proposed Plan.

Respectfully submitted,

By:  _/s/ Eric L. Lewis_____ _____
        Eric L. Lewis
        Lewis Baach Kaufmann Middlemiss PLLC

By:  _/s/ Peder J. V. Thoreen_____
        Peder J. V. Thoreen
        Altshuler Berzon LLP

Counsel for Spectrum Settlement Recovery, LLC

---

[19] *See, e.g.*, *Orthopedic Bone Screw*, 246 F.3d at 324 (late claims "represent only a minuscule fraction of the total settlement class"); *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972) ("allowing these five claims would result in only a minuscule reduction in recovery by timely claimants"); *Crazy Eddie*, 906 F.Supp. at 846 (allowing "few claims," largely from individual investors with "small investments" in defendant company).  FRS knows this is a critical consideration on the issue, as it was considered in the *DRAM Litigation* they reference in their objection.  True, the claims administrator processed claims after the deadline and through July 1, 2015, but only a tiny fraction of claims came in after the deadline – 449,979 timely and only 19,508 total late.  *In re DRAM Antitrust Litig.*, 02-md-01486, Dkt. #2273 at 15-16 (N.D. Cal. 2016).  The court accepted late claims where there was only a de minimis impact on timely claimants – a theme in almost all cases where late claims were allowed.  FRS then sent a letter to the court in *DRAM* requesting the acceptance additional late claims filed after July 1, arguing that their inclusion would only modestly dilute timely claimants (a trivial reduction of only 0.15% per claimant).  *Id.*, Dkt. #2280 at 1. The court denied the request for a full recovery, instead allowing for compensation from uncashed checks.  *Id.*, Dkt. #2283 at 5-6.

[20] *See* Dkt 5255.

*In re: Cathode Ray Tube (CRT) Antitrust Litigation, Indirect Purchaser Actions*
March 9, 2018
Page 10

SIGNATURE ATTESTATION

Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that I have obtained the concurrence in the filing of this document from all of the signatories for whom a signature is indicated by a "/s/" signature within this e-filed document and I have on file confirmation of this concurrence for production for the Court if so ordered.

DATED:  March 9, 2018               By:  _/s/ Peder J. V. Thoreen_____
                                                Peder J. V. Thoreen
                                                Altshuler Berzon LLP