John Taladay (*pro hac vice*)
john.taladay@bakerbotts.com
Erik Koons (*pro hac vice*)
erik.koons@bakerbotts.com
BAKER BOTTS LLP
1299 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

Stuart C. Plunkett (State Bar No. 187971)
stuart.plunkett@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

*Attorneys for Defendants*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | Case No. 3:07-cv-05944-JST |
| | MDL No.: 1917 |
| THIS DOCUMENT RELATES TO: | **OPPOSITION TO DIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES FROM THE IRICO DEFENDANTS** |
| *ALL DIRECT PURCHASER ACTIONS* | |
| | **Date:** May 10, 2018 |
| | **Time:** 2:00 p.m. |
| | **Judge:** Hon. Jon S. Tigar |
| | **Courtroom:** 9 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     STATEMENT OF FACTS ........................................................................................... 2

III.    ARGUMENT ............................................................................................................... 4

        A.      DPPs' Motion Contravenes the Clear Ruling of the Court Permitting
                Jurisdictional Discovery ...................................................................................... 4

        B.      Initial Discovery in this Matter Should Be Limited to Jurisdictional Discovery . 5

        C.      DPPs' Document Demands Are Overbroad and Unduly Burdensome ................ 7

        D.      Irico Defendants Have Not Waived Their Objections ......................................... 8

IV.     CONCLUSION .......................................................................................................... 10

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

C<small>ASES</small>

5

*Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*,
   475 F.3d 1080 (9th Cir. 2007)...............................................................................9

6

7

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
   137 S. Ct. 1312 (2017) ...........................................................................................9

8

*Brown v. Stroud*,
   No. C-08-02348-VRW (DMR), 2010 WL 3339524 (N.D. Cal. Aug. 24,
   2010)......................................................................................................................12

9

10

*Davis v. Fendler*,
   650 F.2d 1154 (9th Cir. 1981) ..............................................................................12

11

12

*EM Ltd. v. Republic of Argentina*,
   473 F.3d 463 (2d Cir. 2007) ...................................................................................9

13

*Hallett v. Morgan*,
   296 F.3d 732 (9th Cir. 2002) ................................................................................10

14

15

*In re Terrorist Attacks on Sept. 11, 2001*,
   349 F. Supp. 2d 765 (S.D.N.Y. 2005) ....................................................................9

16

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
   617 F.3d 1146 (9th Cir. 2010) .........................................................................11, 12

17

18

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
   213 F.3d 841 (5th Cir. 2000) ..................................................................................9

19

*Landon v. Ernst & Young LLP*,
   No. C08-02853 JF (HRL), 2009 WL 4723708 (N.D. Cal. Dec. 2, 2009) ............12

20

21

O<small>THER</small> A<small>UTHORITIES</small>

22

Fed. R. Civ. P. 26(b)(1) ..................................................................................................10

23

Fed. R. Civ. P. 33 ...........................................................................................................12

24

Fed. R. Civ. P. 34 ...........................................................................................................12

25

Fed. R. Civ. P. 55(c) ......................................................................................................12

26

27

28

## I.    **INTRODUCTION**

The Direct Purchaser Plaintiffs ("DPPs") seek to compel Irico Group Corp. and Irico Display Devices Co., Ltd. ("Irico" or "Irico Defendants") to respond to five sets of written merits discovery served more than seven years ago during a time when Irico was in default and not a participant in the litigation.  These discovery requests were not directed at Irico, and do not even mention Irico, but were served on "all defendants."  DPPs also claim that Irico must respond to the requests immediately and without objection because the time for Irico to respond expired years ago.  Of course, DPPs never sought to compel responses or took any other action against Irico with respect to this discovery since the requests were served in 2010 and 2011.

DPPs' motion should be denied for several reasons.  Most importantly, in its February 1, 2018 Order Setting Aside Default (Dkt. 5240 (the "Order")), the Court found that Irico has a meritorious defense that the Court may lack jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") and "reopened" DPPs' case against Irico, we understand, for the purpose of permitting DPPs to proceed with "jurisdictional discovery."  (*Id.* at 17, 20.)  There is no dispute that the 2010/2011 discovery subject to this motion does not constitute "jurisdictional discovery" against Irico.  In fact, DPPs have already served separate discovery focused on jurisdictional issues, and Irico is responding to those requests.  Recognizing this difference in views, *DPPs'* counsel proposed, and Irico accepted, that the parties request a case management conference ("CMC") at the earliest possible date and seek the Court's guidance on further process.  But rather than wait the few weeks for this guidance, DPPs launched this completely unnecessary motions practice.  In Irico's view, the Court's Order resolves the instant motion: the Court has not reopened this case with respect to non-jurisdictional, merits discovery.

DPPs ignore the Court's plain language regarding "jurisdictional discovery" and mischaracterize the Order as having conclusively resolved the jurisdictional issue.  But the Court stated only that it could not resolve the issue based on Irico's submission accompanying the Motion to Set Aside Default.  (Order at 14.)  The Court held that Irico had made a sufficient showing to "present the issue" once the default was set aside.  (*Id.* at 17.)  DPPs' interpretation

of the Order as having resolved the jurisdictional issue is nonsensical, because the Court specifically opened only "jurisdictional discovery."

Given serious questions about the Court's jurisdiction, as a matter of efficient case management, it makes sense for the parties to complete discovery on jurisdictional issues and for the Court to resolve these fundamental jurisdictional questions before the proposed sweeping merits discovery is permitted.  The FSIA presents a threshold issue that could resolve this matter against both Irico entities.  Where cases involve significant threshold jurisdictional issues, courts do not hesitate to phase discovery to avoid unnecessary burden on the parties and the court.

Finally, even were the Court to permit broader discovery, it should not compel Irico to respond to five sets of unfocused discovery served on all defendants seven to eight years ago.  The requests are overly broad and unduly burdensome.  At a minimum, DPPs—who represented in their default papers that they did not need discovery to prove their case against Irico (*see, e.g.*, Dkt. 5221 at 3)—should be required to serve discovery that is focused on Irico and does not seek information that would be duplicative of information that DPPs already have in their possession after several years of discovery with other defendants.

In sum, DPPs' motion is nothing more than a tactic designed to impose an undue burden on Irico.  Prior to the filing of this opposition brief, DPPs doubled down on this strategy by asking Irico to meet and confer regarding the scheduling of *36* separate depositions, triple the number allowed under the Order Regarding Discovery and Case Management Protocol in effect for this case.  (*See* Dkt. 1128 at 2.)  The Court should clarify that the parties must focus first on jurisdictional issues.  Indeed, DPPs have already served the jurisdictional discovery that the Court has authorized, and Irico is in the expedited process of responding to that discovery.  DPPs' motion to compel should be denied.

## II.     STATEMENT OF FACTS

Irico will address only the facts relevant to the instant motion because the Court is familiar with the history of this litigation.

On August 3, 2017, DPPs moved for default judgment against Irico.  (Dkt. 5183.)  On October 25, 2017, Irico filed an Opposition to DPPs' Motion for Default Judgment (Dkt. 5211) and a Motion to Set Aside Default (Dkt. 5215).  After a full hearing, the Court granted the Motion to Set Aside Default and denied the Motion for Default Judgment as moot.  (Dkt. 5240.)  The Court held that "further proceedings might demonstrate that the [FSIA] defense applies and the Court lacks jurisdiction."  (*Id.* at 19-20.)  Accordingly, the Court permitted DPPs to "undertake jurisdictional discovery."  (*Id.* at 20.)

Rather than serve jurisdictional discovery as permitted by the Court, DPPs sent a letter to Irico on February 14, 2018, demanding that Irico respond to the merits discovery that had been served in 2010 and 2011.  (Saveri Decl., Ex. 8.)  Specifically, DPPs asserted that Irico must respond to:

1. Direct Purchaser Plaintiffs' First Set of Requests for Production of Documents (dated June 4, 2008; served Mar. 12, 2010) (Saveri Decl., Ex. 1);

2. Direct Purchaser Plaintiffs' Second Set of Requests for Production of Documents (served Mar. 12, 2010) (Saveri Decl., Ex. 2);

3. Direct Purchaser Plaintiffs' First Set of Interrogatories (served Mar. 12, 2010) (Saveri Decl., Ex. 3);

4. [Direct Purchaser] Plaintiff Hawel A. Hawel's, d/b/a City Electronics, Second Set of Interrogatories to All Defendants (served Sept. 22, 2011) (Saveri Decl., Ex. 5); and

5. Direct Purchaser Plaintiffs' Third Set of Requests for Production of Documents (served Sept. 22, 2011) (Saveri Decl., Ex. 6).

These discovery requests were not directed specifically at Irico, but were served on all defendants in the DPPs action.

On February 20, 2018, Irico sent a letter to DPPs stating that Irico was only required to respond to jurisdictional discovery, as set forth in the Court's Order.  (Saveri Decl. Ex. 9.)  On March 5, 2018, DPPs served jurisdictional discovery on Irico, consisting of interrogatories and document requests.  (Declaration of Stuart Plunkett ("Plunkett Decl."), Exs. A & B.)  Irico

agreed to provide written responses within 60 days.  (Saveri Decl., Ex. 11.)  On March 6, 2018, the parties agreed that a CMC would be necessary to resolve the discovery issues.  (Saveri Decl., Ex. 10 (letter from Mr. Saveri memorializing meet and confer).)  On March 9, 2018 the parties filed a stipulated request for a CMC.  (Dkt. 5257.)  The Court granted the parties' request and scheduled a CMC for April 24, 2018.  (Dkt. 5258.)

Even though a CMC had been scheduled to resolve discovery issues, DPPs submitted a letter to the Special Master on March 21, 2018, seeking to compel responses to the five non-jurisdictional discovery requests from 2010 and 2011.  (Saveri Decl. ¶ 8.)  On March 23, 2018, Irico submitted a letter to the Special Master explaining that the letter motion was duplicative with the scheduled CMC and seeking that the Special Master set aside the motion to compel. (Saveri Decl., Ex. 12.)  On March 26, 2018, the Special Master stated that he "awaits the court's guidance."  (Dkt. 5264.)  On March 27, 2018, DPPs filed the instant Motion to Compel. (Dkt. 5266.)

On April 9, 2018, DPPs sent a letter to Irico seeking to confer regarding the scheduling of depositions of 36 individuals.  (Plunkett Decl., Ex. C.)

## III.   ARGUMENT

### A.   DPPs' Motion Contravenes the Clear Ruling of the Court Permitting Jurisdictional Discovery

In Irico's view, the Court's Order on Irico's Motion to Set Aside Default resolves the instant motion, because it permitted DPPs to proceed with "jurisdictional discovery," not with merits discovery or with discovery requests served years earlier when Irico was not participating in the case.  (Order at 20.)  DPPs attempt to avoid the import of the Court's Order by mischaracterizing it as having resolved the jurisdictional questions under the FSIA.  DPPs state that the "Court has already rejected the Irico Defendants' assertion that they are entitled to immunity under the FSIA."  (Mot. at 2.)  That characterization is belied not only by the Court having expressly allowed "jurisdictional discovery," but also by multiple other passages in the Order that DPPs simply ignore.

With respect to the FSIA question, the Court concluded only that Irico's submission accompanying the Motion to Set Aside Default was insufficient for the Court to determine that it lacked jurisdiction.  (Order at 3-14 (concluding that, "at least at this stage of the litigation," Irico has not demonstrated immunity).)  The Court never held that the FSIA issues were finally resolved, as DPPs contend.  Indeed, no motion was pending on that issue and Irico had not brought to bear all of the relevant facts in support of the Court's lack of jurisdiction.  To the contrary, in passages that appear nowhere in DPPs' motion to compel, the Court held that Irico had demonstrated that it had a meritorious defense under the FSIA sufficient to deny the motion for default judgment, grant the motion to set aside the default, and that Irico could present its defense when the case reopened.  (*Id.* at 17-18.)[1]  That is plainly the procedural posture of the case—and the reason the Court addressed, and granted, DPPs' request for "jurisdictional discovery."  (*Id.* at 20.)

In sum, DPPs' motion contravenes the clear ruling of the Court and should therefore be denied.

**B.**  **Initial Discovery in this Matter Should Be Limited to Jurisdictional Discovery**

Since the FSIA provides a complete defense (with limited exceptions) to litigation in the United States for foreign sovereigns and their agencies and instrumentalities, the most logical and efficient course of action—even absent the Court's clear language in the Order—is to limit discovery to factual issues necessary to determine the existence or absence of jurisdictional immunity.  Limiting discovery to jurisdictional discovery at this time will allow for the resolution of a threshold question that will likely obviate the need for any merits-based discovery.  This approach also comports with the Supreme Court's recent instruction that "a court should decide the foreign sovereign's immunity defense 'at the threshold' of the action . . . . If a decision about the matter requires resolution of factual disputes, the court will have to

---

[1] DPPs argue that the Court ordered the case against Irico "reopened" (Opp. at 5 (quoting Order)), but they omit the remainder of the sentence, which reads in full: "The case against Irico having now reopened, DPPs are free to undertake ***jurisdictional discovery***." (Order at 20 (emphasis added).)

resolve those disputes, but it should do so as near to the outset of the case as is reasonably possible." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1324 (2017) (internal citation omitted).

Indeed, courts do not hesitate to phase discovery where FSIA questions are at issue. *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 783 (S.D.N.Y. 2005) ("[G]enerally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue; but until plaintiff has shown a reasonable basis for assuming jurisdiction, she is not entitled to any other discovery."); *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000) ("FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation. . . . [D]iscovery should be limited to only that which is necessary to determine the preliminary jurisdictional issue."); *EM Ltd. v. Republic of Argentina,* 473 F.3d 463, 486 (2d Cir. 2007) (holding that plaintiff "was not entitled to any other discovery, as it failed to show a reasonable basis for assuming jurisdiction" over the defendant, an instrumentality of Argentina). Because the FSIA questions are determinative of the Court's jurisdiction over Irico, those issues ought to be resolved before this case proceeds to the merits, including to burdensome merits discovery. *See Bolivarian Republic*, 137 S. Ct. at 1318 ("Foreign sovereign immunity is jurisdictional . . . because explicit statutory language makes it so").

Limiting discovery in the first phase here also comports with the directive that "discovery against a foreign sovereign should be ordered circumspectly and only to verify allegations of specific facts crucial to the immunity determination." *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1095-96 (9th Cir. 2007) (italics omitted). The Supreme Court recently recognized that this approach is "consistent with foreign sovereign immunity's basic objective, namely, to free a foreign sovereign from *suit*." *Bolivarian Republic*, 137 S. Ct. at 1317. The Supreme Court also noted that "merits and jurisdiction will sometimes come intertwined . . . the court must still answer the *jurisdictional* question." *Id.* at 1319 (emphasis added). This Court's Order allowing for "limited . . . jurisdictional" discovery (Order at 20), is consistent with the FSIA and the case law.

**C.      DPPs' Document Demands Are Overbroad and Unduly Burdensome**

DPPs' motion should be denied on the additional and independent ground that the 2010 and 2011 discovery is overbroad and would impose an undue burden on Irico.  "Broad discretion is vested in the trial court to permit or deny discovery."  *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).  The court must limit the scope of discovery to relevant matters that are "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

The requests at issue here were sent *en masse* to all defendants in 2010 and 2011.  None of the requests is focused on Irico or even mentions Irico, and certainly these outdated requests are not tailored in any way to request the specific information that DPPs actually need to pursue their claims against Irico.  Instead, the requests seek broad categories of documents, in some cases for a period of almost 27 years (from 1991 to the present).  (Saveri Decl., Exs. 1-3, 5, 6.)  The requests also seek many categories of information that are not specific to Irico, but instead constitute information that DPPs have certainly already obtained in discovery.  (Saveri Decl., Ex. 2 (seeking documents regarding published prices for CRTs, the process of manufacturing CRTs, the identity of producers of CRTs, among other examples)).  DPPs engaged in years of discovery with multiple other defendants after serving these requests, and thus it is inconceivable that the requests cannot be reasonably narrowed to seek information that DPPs might actually need from Irico.

Despite the benefit of evidence and knowledge supposedly gained from years of litigating this case, DPPs have not even attempted to tailor merits discovery to Irico.  They have not taken into account any of the facts specific to the case against Irico or what they need to actually pursue a case against Irico in particular.  Furthermore, DPPs have already asserted that they do not need discovery from Irico to prove their case.  In fact, DPPs continually emphasize their complete confidence in the "overwhelming" evidence allegedly establishing Irico's

liability and DPPs' resulting damages.  (*See, e.g.*, Dkt. 5221 at 3.)  Thus, seeking to compel these stale discovery requests from Irico—particularly when the Court will address these issues at the CMC—is nothing more than an attempt to impose an undue burden on Irico.  And were there any doubt about DPPs' intention to impose discovery burdens rather than conduct efficient and focused discovery, DPPs dispelled that doubt by requesting, immediately prior to the filing of this opposition brief, that Irico confer regarding the scheduling of depositions of *36 individuals*, (Plunkett Decl., Ex. C), triple the number allowed even for merits discovery.  (*See* Dkt. 1128 at 2.)

Irico is already in the process of gathering information and documents to respond to DPPs' jurisdictional discovery requests, and those issues will be brought before the court in a timely way.  (Saveri Decl., Ex. 11.)  As a result, the Court should deny DPPs' motion to compel merits discovery on the ground that requiring Irico to respond to the 2010 and 2011 discovery requests would impose an undue burden.

### D.  Irico Defendants Have Not Waived Their Objections

Contrary to DPPs' assertions, Irico has not waived objections to the 2010 and 2011 discovery.  Having made no effort to compel responses or take any other action regarding this discovery for more than seven years, DPPs should be precluded from arguing that Irico has waived any rights whatsoever with respect to this discovery.

More fundamentally, however, the Court should hold that Irico was under no obligation to respond to these requests.  The Ninth Circuit has held that a defendant in default does not waive objections by not responding to discovery—even if the discovery requests were served prior to formal entry of default.  *See Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1158-59 (9th Cir. 2010) (finding that a defendant in default cannot respond to discovery at least until default is vacated).  In the precedential *Jules Jordan* case, the Ninth Circuit found that the district court erred in deeming requests for admissions admitted where the requests were served on a defendant that was subject to an entry of default.  *Id.*  The court further found that the district court abused its discretion when it failed to give the defendant time to respond to the discovery requests after vacating the default.  *Id.*  DPPs make no attempt to address the

binding *Jules Jordan* case.  In fact, DPPs cite *no* authority holding discovery objections waived by a defendant in default.

Furthermore, for the same reasons the Court set aside entry of default against Irico for good cause under Rule 55(c) of the Federal Rules of Civil Procedure (Order at 14-20), it should conclude that Irico had good cause for not responding to the 2010 and 2011 discovery.  *See Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) ("In the absence of an extension of time or *good cause*, the failure to object to interrogatories within the time fixed by Rule 33 . . . constitutes a waiver of any objection.") (emphasis added); *see also Brown v. Stroud*, No. C-08-02348-VRW (DMR), 2010 WL 3339524, at *1 (N.D. Cal. Aug. 24, 2010) ("Although Rule 34 does not expressly provide for any relief from a waiver of objections as does Rule 33, courts have granted such relief upon a showing of good cause.").  "In determining whether a party has good cause, the court will consider factors such as the length of the delay, the reason for the delay, bad faith, prejudice to the propounding party, the appropriateness of the requests, and whether waiver would result in an excessively harsh result." *Landon v. Ernst & Young LLP*, No. C08-02853 JF (HRL), 2009 WL 4723708, at *1 (N.D. Cal. Dec. 2, 2009).

These factors—none of which DPPs even address—do not support a finding of waiver. The Court has already addressed the delay in this case, the reason for delay, and the question of bad faith and concluded that Irico did not act with culpability or in bad faith.  (Order at 18-19.) DPPs offer no reason for the Court to revisit that decision.  Regarding prejudice, the Court previously held that DPPs' claims of prejudice from the default were "substantially undercut by their own delay in seeking entry of default."  (*Id.* at 15); *see also Brown*, 2010 WL 3339524, at *2 (finding good cause to allow late objections partly because "jurisdiction arguably was in question" during the time of delay.)  The same is true with respect to the 2010 and 2011 discovery requests.  DPPs, having failed to take any action to compel these requests for more than seven years, cannot plausibly claim prejudice.  Finally, precluding any objections to this inappropriate discovery would cause an excessively harsh result by forcing Irico to search for, compile, and produce a huge amount of irrelevant and unnecessary information and documents. Preventing this unjustified result significantly outweighs any prejudice to DPPs.

1    Accordingly, should it ever conclude that Irico is required to respond to merits

2  discovery, the Court should find that Defendants have not waived their objections to those

3  requests.

4  **IV.**    **CONCLUSION**

5    For the foregoing reasons, the Court should deny DPPs' motion to compel.

6

7  Dated: April 10, 2018

8   Respectfully submitted,

9                                          */s/ Stuart C. Plunkett*

10                                         John Taladay (*pro hac vice*)
                                           john.taladay@bakerbotts.com
11                                         Erik Koons (*pro hac vice*)
                                           erik.koons@bakerbotts.com
12                                         Baker Botts LLP
                                           1299 Pennsylvania Ave., NW
13                                         Washington, D.C. 20004
                                           Telephone: (202) 639-7700
14                                         Facsimile: (202) 639-7890

15                                         Stuart C. Plunkett (State Bar No. 187971)
                                           stuart.plunkett@bakerbotts.com
16                                         BAKER BOTTS LLP
                                           101 California Street, Suite 3600
17                                         San Francisco, California 94111
                                           Telephone: (415) 291-6200
18                                         Facsimile: (415) 291-6300

19                                         *Attorneys for Defendants*
                                           *IRICO GROUP CORP. and*
20                                         *IRICO DISPLAY DEVICES CO., LTD.*

21

22

23

24

25

26

27

28