

ALTSHULER BERZON LLP
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108
(415) 421-7151
FAX (415) 362-8064
www.altshulerberzon.com

May 18, 2018

*Via E-Filing*

Honorable Judge Jon S. Tigar
U.S. District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

> ***In re: Cathode Ray Tube (CRT) Antitrust Litigation, Indirect Purchaser Actions***
> ***MDL No. 1917, Case No. C-07-5944-JST (N.D. Cal.) ("CRTI")***

Dear Judge Tigar:

Spectrum Settlement Recovery, LLC ("Spectrum") writes in response to the Court's 5/14/18 Order (ECF No. 5287) inviting interested parties to respond to a letter to your honor from Financial Recovery Services ("FRS") dated 5/11/18 (ECF No. 5286). In that letter, FRS asks the Court to refer to mediation "the issues" raised in the FRS objection to the Indirect Purchaser Plaintiff's Motion for Preliminary Approval of a Class Action Settlement with Mitsubishi Electric Corporation (the "Mitsubishi Settlement").

By way of background, FRS was the sole objector to the proposed Mitsubishi Settlement, presumably because a substantial majority of the claims filed by FRS had been rejected outright or been filed late[1] in the $576 Million Class Settlement approved by this Court on July 7, 2016 (ECF 4712) (the "First Settlement"). FRS evidently believed the untimely claims could be swept into the $33 Million Mitsubishi Settlement's Plan of Distribution, resulting in a smaller recovery. Spectrum (ECF No. 5256) and Indirect Purchaser Plaintiffs ("IPPs") (ECF No. 5255) both responded to FRS's objection. As Spectrum and the IPPs pointed out, the FRS objection was *not* to the Mitsubishi Settlement, but an attempt to bootstrap premature resolution of late or rejected claims to the First Settlement, to which it never objected.[2] FRS, moreover, never even tried to meet the required excusable neglect standard,

---

[1] *See* Declaration of Joseph Fisher Re: Response to FRS, pp. 2-3 (ECF No. 5255), noting that FRS filed 3,255 claims, of which 590 (18%) were duplicates or withdrawn. Of the 2,665 remaining, 1,338 were filed after the deadline. 70% of the late claims were filed more than six months late; 47% a year or later. Fisher Declaration, pp. 2-3, Paragraph 7.

[2] The facial basis for the FRS objection to the Mitsubishi Settlement was an argument alleging a non-existent flaw in the Plan of Distribution: namely, that the definition of First Time Claimants in the Mitsubishi Plan of Distribution would be unfairly interpreted to include the FRS late claims in the First Settlement. FRS's real motivation in that objection was simply about late claims. That pretext regarding the Mitsubishi Settlement has been dropped in their most recent letter, where they are up front about seeking redress exclusively related to the late claims issue.

*In re: Cathode Ray Tube (CRT) Antitrust Litigation, Indirect Purchaser Actions*
May 18, 2018
Page 2

providing no explanation for its disregard of the deadline. On March 16, FRS subsequently submitted a sur-reply in support of its objection (ECF No. 5299), and again on March 23 a Proposed Order rejecting the settlement (ECF No. 5263). None of these filings presented an adequate basis for rejecting the Mitsubishi Settlement.

On April 27, 2018, Counsel for the IPPs requested a 45-day stay of consideration of its Motion for Preliminary Approval (ECF No. 5279) while it seeks to resolve via mediation issues in front of the 9th Circuit related to the First Settlement. The Court has not yet ruled on the requested stay, nor the IPPs' motion for preliminary approval of the Mitsubishi Settlement (ECF No. 5245), and both remain under submission.

As referenced infra, the First Settlement was appealed by numerous objectors (notably not including FRS)[3] and is under review on issues unrelated to the inclusion of late claims in that settlement's Plan of Distribution. Most recently, the 9th Circuit has ordered appellate mediation of certain issues presented in the First Settlement, and it has been suggested that Retired Judge Vaughn Walker act as mediator.

Now FRS approaches this Court with a request for immediate mediation before Judge Walker, which is inexplicable both as to substance and procedure.

In the first instance, FRS appears to ask that the acceptance of late claims be somehow grafted onto the entirely unrelated appellate mediation. It is hard to characterize this request, but perhaps it is requested as a sort of "interlocutory promotion" to the Court of Appeals of consideration of its pending objection to the Mitsubishi Settlement. We are aware of no procedure or precedent for such a request. To the extent FRS seeks to bolt on its unresolved trial level issue to a 9th Circuit ordered procedure, we do not see how this would be within the jurisdiction of the appellate court.

Alternatively, FRS asserts it would be "amenable to a separate, contemporaneous, mediation regarding the late-claims issues" in a "parallel" mediation by Judge Walker, presumably under the auspices of this Court. The use of "parallel" implies some relationship between the issues, which is not present here. FRS's subsequent argument for the "necessity" of a transfer of that objection is constructed from a series of extremely tenuous links. Relying on an assumption that a decision by the 9th Circuit in the First Settlement could somehow affect the Mitsubishi Settlement, and thus support a delay in adjudicating the motion for preliminary approval, FRS jumps to the possibility that a new, cumbersome, and costly notice program might be required. By the next sentence, a new class notice is a "strong likelihood" and "it is critical that FRS's objections be mediated" adding ominously, "to avoid significant additional delays and/or litigation preventing distribution of the [First Settlement.]" ECF No. 5286 at 2.

It remains entirely unclear why mediation – immediate or otherwise – is necessary when there already exists a proper judicial forum for opposing a plan of distribution, and this Court has not yet provided its considered view of whether there is a serious issue here that would be constructive to mediate. It is hard to understand how a consideration of the approval of late-filed claims could be advanced at this

---

[3] FRS is not a party in the First Settlement appeals and until now has shown little interest in those proceedings. As noted, FRS did not object to the First Settlement, did not file an appeal and has not as far as we know made an appearance in that matter. The issues before the 9th Circuit do not include the treatment of late filed claims from the First Settlement but rather center on three *Illinois Brick* repealer states who were excluded from the First Settlement and whose claims were extinguished by the relevant statutes of limitations but are nonetheless included in the general release of liability.

juncture through mediation and even who the parties to the mediation might be. Rather, there is an established course of action available here – wait for the Court to decide FRS's pending objection and then await IPP counsel's proposal for a plan of distribution including the treatment of late claims, and if unsatisfied, file a timely objection. This urgent request for mediation seeks to short circuit orderly case management.

In short, the critical issues which FRS suggests require immediate resolution via mediation at the 9th Circuit level or in conjunction with the ordered appellate mediation need not be considered immediately, via mediation as opposed to the available motion process, or in front of the 9th Circuit. Reverting to a "parallel" mediation in front of this Court cures but one of the flaws in the FRS proposal. FRS's inefficiency or tactical maneuverings and urgent desire for resolution of its late claims should not unfairly burden timely claimants and sweep them into another forum for costly litigation.

Still, Spectrum is always pleased to cooperate in any procedure that is likely to contribute to efficient case management and expedite recovery to claimants. Accordingly, it is not opposed in principle to the notion of a meet and confer or even mediation regarding the treatment of late claims if such a process seems likely to be helpful in the view of the Court.

If the Court is inclined to order a mediation, it is Spectrum's view that this would require additional groundwork for it to be a useful exericse. At a minimum some form of updated claims report containing additional data on late claims (beyond just FRS) and the enormous volume of late duplicate claims, full knowledge of which by all parties would be critical to any resolution. Other questions remain to be answered. Who would be invited to participate? What would the ground rules be; would there be a mediator's report to the Court or would the mediation be confidential? And, as mentioned above, at a minimum we think it would be incumbent on FRS, and any other party seeking relief for late filed claims, to provide a preliminary argument justifying overturning the Court's prior orders and the well published deadlines and establishing "excusable neglect." If, as appears to be the case, FRS has no such argument to make, that would certainly affect the contours of any mediation process.

As always, Spectrum is in favor of a prompt, fair conclusion of the underlying matter. But as drafted, FRS's request for mediation does nothing to further those goals and should be denied by the Court as premature, impractical and procedurally defective. However, should the Court otherwise see merit a useful current opportunity for parties with interest in the late claim issue to come together to try to hammer out a proposed solution, Spectrum would be amenable to participate when provided with the relevant information referenced above.

Respectfully submitted,

By: _/s/ Eric L. Lewis_____
    Eric L. Lewis
    Lewis Baach Kaufmann Middlemiss PLLC

By: _/s/ Peder J. V. Thoreen_____
    Peder J. V. Thoreen
    Altshuler Berzon LLP