# Exhibit 39



June 25, 2018

**Certification**

**Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English of the document with bates number: IRI-CRT-00000739.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007



June 25, 2018

**Certification**

**Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English of the document with bates number: IRI-CRT-00000740.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

15 W. 37th Street 8th Floor
New York, NY 10018
212.581.8870
ParkIP.com

Very urgent

Ministry of Finance Document

CQ [2009] No. 302

Notice of the Ministry of Finance on issuing the IRICO Group Corporation 2009 central state-owned capital operating budget (appropriations)

IRICO Group Corporation:

The 2009 central state-owned capital operating budget has been examined and approved by the State Council. Based on the "Ministry of Finance notice on issuing the 'Trial Measures for formulation and submission of central state-owned capital operating budgets'" (CQ [2007] No. 304) and the 2009 central state-owned capital operating budget expenditure arrangements, your company's 2009 central state-owned capital operating budget (appropriations, see attachment) is hereby issued. Notice of the relevant items is as follows:

500 million yuan expenditure for financial crisis response, for 2 projects including your group's Shanghai Blue Light LED production expansion. This appropriation is an increase of your company's state capital. 2009 government revenue and expenditures classification "2150551- Industrial and information industry state-owned capital operating budget

-1-

CONFIDENTIAL                                                     IRI-CRT-00000739

money, within 10 business days of receiving the budget funds, file the account receipt of budget funds and their utilization plan with this commission, and report the capital budget execution work at the end of each quarter.

III. Your company shall strictly follow the relevant national regulations, promptly undertake the corresponding account management, and handle relevant procedures relating to capital infusion and state-owned property rights registration changes.

IV. Your company shall establish a sound state-owned capital operating budget management system, conscientiously enhance budget funds management, strictly follow the official reply in budget execution, boost the effective use of budget funds, and ensure that the value of state-owned assets is maintained and increased.

[Stamp: State Council State-Owned Assets Supervision and Administration Commission]

4 December 2009

Key words: economic management, enterprise, capital, budget, official reply

Internal cc: Planning Bureau, Evaluation Bureau, Property Rights Bureau, Reform Bureau, Reorganization Bureau, Distribution Bureau, Comprehensive Bureau, Board of Supervisors Bureau, related boards of supervisors

SASAC General Office                                    Issued 4 December 2009

-2-

CONFIDENTIAL                                    IRI-CRT-00000740

特 急

# 财 政 部 文 件

财企〔2009〕302 号

## 财政部关于下达彩虹集团公司2009年中央
## 国有资本经营预算（拨款）的通知

彩虹集团公司：

　　2009年中央国有资本经营预算，已经国务院审查批准。根据《财政部关于印发〈中央国有资本经营预算编报试行办法〉的通知》（财企[2007]304号）和2009年中央国有资本经营预算支出安排，现下达你公司2009年中央国有资本经营预算（拨款，详见附件）。有关事项通知如下：

　　应对金融危机支出50000万元，用于你集团上海蓝光LED扩产项目等2个项目。此项拨款作增加你公司国家资本金处理。列2009年政府收支分类科目"2150551-工业和信息产业国有资本经营预

— 1 —

款，在收到预算资金 10 个工作日内，将预算资金到账情况和使用计划报我委备案，并于每季度末报告资本预算执行工作情况。

三、你公司应严格按照国家有关规定，及时做好相应账务处理，办理注资和国有产权变更登记等相关手续。

四、你公司应建立健全国有资本经营预算管理制度，切实加强预算资金的管理，严格按照批复执行预算，提高预算资金的使用效率，确保国有资产保值增值。



主题词：经济管理 企业 资本 预算 批复

委内抄送：规划局、评价局、产权局、改革局、改组局、分配局、

综合局、监事会局、有关监事会

国资委办公厅                                    2009 年 12 月 4 日印发

- 2 -

# Exhibit 40



June 25, 2018

**Certification**

**Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English of the document with bates numbers range: IRI-CRT-00000744 - IRI-CRT-00000751.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

001
[Stamp illegible]

Confidential ★

<span style="color:red">Ministry of Electronics Industry Document</span>

DZJ [1995] No. 927

Letter regarding submission of IRICO Display Devices Co., Ltd.
stock exchange listing reexamination materials

China Securities Regulatory Commission:

IRICO Display Devices Co., Ltd. is a shareholding system enterprise jointly established in 1992 by IRICO Electronics Group Corporation Shaanxi Color Picture Tube Factory, the Industrial and Commercial Bank of China Trust and Investment Corporation of Shaanxi Province, and the People's Construction Bank of China Trust and Investment Corporation of Shaanxi Province, with the approval of the Shaanxi Province people's government authorities. It is one of the first batch of Shaanxi Province shareholding system test units and a holding company of IRICO Electronics Group, one of the national modern enterprise system 100 test units. In early September 1995, it was the only enterprise to be recommended by this ministry for listing in 1995. Having undergone an initial examination by this ministry and Shaanxi Province,

-1-



Scanned and created by CamScanner

CONFIDENTIAL                                                                 IRI-CRT-00000744

it is believed that since its establishment 3 years ago, this company has operated in a standardized manner, performance [words cut off], its prospects are good, it has meet the basic conditions to apply for stock exchange listing, and all required submission materials are in good order.

        This company's non-institutional shares number 92,080,000, and a certain [words cut off] pressure has developed. Therefore, the company asked that this time, there be no other issuance of new shares, instead listing the shares in stock [words cut off]. Given that the company is located in Shaanxi and is part of a relatively backward region, [words cut off] primary stock market fund pressure, to avoid the large-scale flight of funds from the secondary market funds [words cut off] maintain social stability, this ministry conducted research and has agreed to the direct listing of this company's stores of non-institutional shares, without again issuing new shares. In accordance with the spirit of the meeting summary from 6 September 1995 between this ministry and Shaanxi Province on the IRICO Display Devices Co., Ltd. stock exchange listing, of the state issued stock offering size, the ministry and Shaanxi Province together decided that this ministry would take on 27,600,000 shares and Shaanxi Province would take on 6,480,000 shares of the directly listed 92,808,000 shares. This ministry [words cut off] of the 1995 70 million yuan offering size issued by the state to this ministry [words cut off]. The IRICO Display Devices Co., Ltd. stock exchange listing reexamination is hereby submitted to your commission for approval.

        [Stamp: People's Republic of China Ministry of Electronics Industry]
        27 December 1995

-2-

Scanned and created by CamScanner

CONFIDENTIAL

002

Key words: enterprise, stock, listing, letter

cc: State Planning Commission, Shaanxi Province people's government, IRICO Electronics Group.

General Office of the Ministry of Electronics Industry        Printed 28 December 1995

Typed by: Liu Jiaojian                                Proofreader: Zhu Shijun

-3-

 Scanned and created by CamScanner

CONFIDENTIAL                                                              IRI-CRT-00000746

003

**IRICO Electronics Group Corporation Document**

CT (1995) No. 294

Report on IRICO Display Devices Co., Ltd. stock exchange listing

Ministry of Electronics Industry:

Based on the question regarding the IRICO Display Devices Co., Ltd. stock exchange listing raised by Vice Premier Zou Jiahua, a report is hereby given as follows:

I. Reasons for reduction of shares

When IRICO Display Devices Co., Ltd. was first established, it issued a total of 92080,000 non-institutional shares. For these stocks to be listed, if a reduction of shares is not employed, it will be necessary to apply with the Ministry of Electronics Industry for a stock exchange listing amount of 2,080,000. The Ministry of Electronics Industry is incapable of addressing such a large amount. To meet the requirements of stock exchange listing and enable the listing and circulation of IRICO stocks as soon as possible, on 6 April 1995, the matter was voted on and passed by the company's 3rd shareholders meeting. Being reported to the Shaanxi Province Securities Regulatory Commission and confirmed by SZJF (1995) No. 016 and Shaanxi Province State-owned Assets Supervision and Administration Bureau

-1-

 Scanned and created by CamScanner

SGQ (1995) No. 042, its shares were reduced at a ratio of 2:1, and the ratio for the shares held by shareholders was not changed. Following the reduction of shares, there were 46,040,000 non-institutional shares. The entire share reduction process and approval procedures followed the requirements of the "Company Law", and it was announced in the newspapers and periodicals designated by the China Securities Regulatory Commission.

We believe:

1. The "Company Law" makes no specific provisions regarding the reduction of shares, and prior to the IRICO Display Devices Co., Ltd. reduction of shares, there was a precedent for share reduction listing.

2. Based on the provisions of the China Securities Regulatory Commission's ZJF [1995] No. 162, for the few state-owned large-scale enterprises earmarked for state support and with an offering size making it difficult to meet listing conditions, when there are special circumstances and after reporting to and being approved by the China Securities Regulatory Commission, listing may be undertaken with a reduction of shares. IRICO Display Devices Co., Ltd. is large and highly beneficial. It is well-known in the electronics industry, and its output value has reached over 1 billion, with profit taxes exceeding 100 million.

3. The State Commission for Economic Restructuring has issued a document (THS [1995] No. 194), recognizing our company as a State Council 100 modern enterprise system pilot project enterprise. In addition, IRICO Display Devices Co., Ltd. is the only enterprise endorsed by the Ministry of Electronics Industry to the state securities administration authorities for recommendation for 1995 stock offerings and listing. And in accordance with the spirit of the "Notice of the State Council Securities Commission opinion on securities and futures work in 1995", endorsed by the State Council, it agreed to give priority consideration to the listing of IRICO stock offerings.

On 24 October 1995, the China Securities Regulatory Commission ZJF [1995] No. 162 "Notice regarding the opinion on the handling of certain problems in stock offerings" mentioned the issue of listed

-2-

 Scanned and created by CamScanner

CONFIDENTIAL

IRI-CRT-00000748

005

enterprises employing "pro rata share reduction" for listing. However, the IRICO Display Devices Co., Ltd. reduction of shares work was completed on 6 April 1995, six months before this document's issuance date. Also, the listing declaration materials were submitted to the China Securities Regulatory Commission on 12 October 1995 (i.e.: 6 days prior to the issuance of China Securities Regulatory Commission ZJF [1995] No. 162). IRICO Display Devices Co., Ltd. undertook the reduction of shares given that the listing amount would be difficult to resolve. Also, it is a high-tech electronics industry enterprise, belonging to an industry earmarked for encouraged development by the state, and is located in the mid-western region. It is an enterprise prioritized for listing support by the state, and is requesting to be considered under special circumstances in its submission to China Securities Regulatory Commission for examination and approval.

II. Relationship between IRICO Group and IRICO Display Devices Co., Ltd.

IRICO Display Devices Co., Ltd. was established through the IRICO Electronics Group Corporation's 64cm (FS) color picture tube production line technical upgrade project carrying out a shareholding system pilot project. The establishment of IRICO Display Devices Co., Ltd. was a beneficial attempt of the IRICO Electronics Group Corporation in its exploration of establishing a modern enterprise system. The implementation of a modern enterprise system pilot project in IRICO Display Devices Co., Ltd. directly related to and comprehensive promotion an establishment of the IRICO Group Corporation modern enterprise system.

Following the reduction of shares, the total capital stock of IRICO Display Devices Co., Ltd. was 150 million shares, of which: IRICO Electronics Group Corporation held 33 million shares, accounting for 22% of the total capital stock. It was the holding company.

III. IRICO Display Devices Co., Ltd. business performance from past 3 years
Unit: 10,000 yuan

| Item | 1992 | 1993 | 1994 | January - November 1995 |
|------|------|------|------|-------------------------|
| Total profits | 290.19 | 4160.29 | 9799.76 | 9130.85 |

-3-



Scanned and created by CamScanner

CONFIDENTIAL                                                              IRI-CRT-00000749

006

This company has established an excellent quality assurance system, all of its products employ international standards, and its primary technical specifications and reliability have attained an advanced level of 1990's international products. This includes the 64cmFS color picture tube, which has obtained the United States' UL and Canada's CSA safety certifications. In late March 1995, the international certification authority (BVQI) and China Classification Society Quality Assurance Ltd. (CSQA) conducted a comprehensive review of the company's quality system and announced that it passed the ISO9002 quality certification.

IV. Orientation of stock exchange listed funds (development plan)

The overall business strategy for this company's development is to be based on domestic markets, expand into international markets, be market-oriented, rely upon its S&T advantage, accelerate the development of new products, and adjust the product structure. In addition, this company is currently expanding in the two directions of raw materials production and whole machine assembly, creating a multi-layered product structure and an omni-directional development structure. Its specific development plan is as follows:

(1) Further tapping the potential of transformation, taking the path of connotative expansion before production, less investment and more output, boosting color picture tube production capacity by 70% on the foundation of the original design capacity, and making the most of the potential of existing devices.

(2) Actively developing 74cm RES big screen and 16:9 wide screen color picture tubes in a market-oriented fashion; also, developing in the direction of color monitors and color picture tube use in MMTV (multimedia); promoting a shift from consumer electronics products to investment products.

(3) Making adjustments to the industrial structure. Extending the industry in the direction of raw materials, parts, and whole machine manufacturing. At the same time, developing in the direction of the information industry (e.g.: computers, communications, and industrial control) through modes such as equity participation (holding).

-4-

 Scanned and created by CamScanner

IRI-CRT-00000750

007

(4) To enable its more efficient, faster development, this company will make use of its mechanism-based advantage, take the path of capital operation, rationally configure its resources through acquisition, equity participation, and holding, and optimize its industrial structure. In addition, it will make use of the company's advantages in terms of having good products, high technological content, and large-scale operation, strive to utilize the modes of issuing B shares and foreign listing, and take part in international competition, allowing the company to gradually become a conglomerate, diversified, international modern enterprise.

The rapid development of IRICO Display Devices Co., Ltd. requires a large amount of funds. If its stocks can be listed and circulated soon, it will be able to use the financing shortcuts of the securities market to arrange the funds needed for the company's development.

[Stamp: IRICO Electronics Group Corporation]
14 December 1995

cc: Shaanxi Province Commission for Economic Restructuring, Shaanxi Province Securities Regulatory Commission                    File (2)

Printed by: Xue Xiaolu          Proofreader: Zheng Tao

-5-

Scanned and created by CamScanner

CONFIDENTIAL                                    IRI-CRT-00000751



秘密★

# 电子工业部文件

电子经〖 1995 〗927号

## 关于报送彩虹显示器件股份有限公司
## 股票上市复审材料的函

中国证券监督管理委员会：

　　彩虹显示器件股份有限公司是1992年经陕西省人民政府授权部门批准，由彩虹电子集团公司陕西彩色显像管总厂、中国工商银行陕西省信托投资公司和中国人民建设银行陕西省信托投资公司共同发起设立的股份制企业，是陕西省首批股份制试点单位，也是国家现代企业制度100家试点单位彩虹电子集团的控股公司。1995年9月初确定为我部1995年推荐上市的唯一一家企业。经我部和陕西省进行

— 1 —



由 扫描全能王 扫描创建

IRI-CRT-00000744

初步审查,认为该公司组建3年来,运作规范,业绩突
展前景良好,已经具备申请股票上市的基本条件,按(
求应报送的全部材料齐备。

该公司个人股股票存量为9208万股,已形成一定
压力。因此,公司要求本次不再发行新股,将存量股票
上市。鉴于该公司地处陕西,属于比较落后的地区,为
股票一级市场资金压力,避免二级市场大量抽逃资金
维护社会稳定,我部经研究,同意该公司个人股存量的
直接上市,不再发行新股。直接上市的9208万股存量
额度,按照1995年9月6日我部与陕西省关于彩虹显示
股份有限公司股票上市问题协商的"会议纪要"精神
部和陕西省在国家下达的股票发行规模中共同解决
我部承担2760万股、陕西省承担6448万股。我部承担
分在国家下达给我部的1995年7000万元发行规模中给
决。现将彩虹显示器件股份有限公司股票上市复审材
送你会,请予审定。

一九九五年十二月二十七日

 由 扫描全能王 扫描创建

CONFIDENTIAL                                                    IRI-CRT-00000745

002

**主题词:企业　股票　上市　函**

------------------------------------------------

抄送:国家计划委员会、陕西省人民政府、彩虹电子集
　　　团。

------------------------------------------------

电子部办公厅　　　　一九九五年十二月二十八日印

------------------------------------------------

打字:刘娇健　　　　　　　　校对:朱师君

— 3 —

 由 扫描全能王 扫描创建

CONFIDENTIAL                                                    IRI-CRT-00000746

003

# 彩虹电子集团公司文件

彩团(1995)294号

### 关于彩虹显示器件股份有限公司股票上市
### 有关情况的报告

电子工业部：

　　根据邹家华副总理就彩虹显示器件股份有限公司股票上市所提出的有关问题，现汇报如下：

　　**一、缩股的原因**

　　彩虹显示器件股份有限公司在成立之初，共发行了9208万个人股。这部分股票要上市，如不采取缩股的方式处理，则需要向电子工业部申请9208万的股票上市额度，如此庞大的额度要求，电子工业部根本无法解决。为了满足股票上市的需要，使彩虹股票尽早上市流通，1995年4月6日，经该公司第三次股东大会表决通过，并报经陕西省证券监督管理委员会以陕证监发(1995)016号文、陕西省国有资产管理局陕

－1－

由 扫描全能王 扫描创建

IRI-CRT-00000747

国企(1995)042号文确认，其股份按2:1的比例缩股，股东所持股份比例不变，缩股后的个人股为4604万股，整个缩股程序和批准手续均符合《公司法》的要求，并在中国证监会指定的报刊上进行了公告。

我们认为：

1. 《公司法》对缩股问题没有明确规定，并且在彩虹显示器件股份有限公司缩股之前，就已有缩股上市的先例。

2. 根据中国证监会证监发[1995]162号文的规定，对确属国家重点支持的，而发行规模又难以满足上市条件的极个别国有大型企业，作为特殊情况在报经中国证监会批准后，可缩股发行上市。彩虹显示器件股份有限公司规模大、效益好，在电子行业有较高的知名度，且产值已达10多亿，利税已达1亿多。

3. 国家体改委已明确下文（厅函生[1995]194号文），对我公司是国务院百家现代企业制度试点企业给予确认；同时对彩虹显示器件股份有限公司为电子工业部唯一向国家证券管理部门推荐的一九九五年度股票发行并上市企业表示赞同，并同意按照国务院批转的《国务院证券委1995年证券期货工作安排意见的通知》精神，对彩虹股票发行上市予以优先考虑。

1995年10月24日，中国证监会证监发[1995]162号《关于对股票发行中若干问题处理意见的通知》中提出了关于上

—2—

由 扫描全能王 扫描创建

IRI-CRT-00000748

市企业采取"同比例缩股"上市的问题。但是，彩虹显示器件股份有限公司缩股工作早已于1995年4月6日进行完毕，距文件下发已达半年之久；而且上市申报材料于1995年10月19日（即在中国证监会证监发[1995]162号文下发前6日）即已报送中国证监会。彩虹显示器件股份有限公司确系在上市额度难以解决的情况下进行缩股的，而且该公司又是电子工业类高新技术企业，属于国家鼓励发展的产业，且地处中西部地区，是国家优先支持上市的企业，请求作为特殊情况报送中国证监会审批。

## 二、彩虹集团与彩虹显示器件股份有限公司的关系

彩虹显示器件股份有限公司的组建，是以彩虹电子集团公司64cm(FS)彩色显像管生产线的技改项目进行股份制试点而筹备建立的，彩虹显示器件股份有限公司的建立是彩虹电子集团公司探索建立现代企业制度的一个有益偿试，在彩虹显示器件股份有限公司进行现代企业制度的试点，直接关系到彩虹集团公司现代企业制度的全面推进与建立。

缩股后，彩虹显示器件股份有限公司的总股本为15000万股，其中：彩虹电子集团公司持有股份3300万股，占股本总额的22%，是其控股公司。

## 三、彩虹显示器件股份有限公司前三年经营业绩

单位：万元

| 项　　　目 | 1992年 | 1993年 | 1994年 | 1995年1-11月 |
|---|---|---|---|---|
| 利润总额 | 290.19 | 4160.29 | 9799.76 | 9130.85 |

— 3 —

由 扫描全能工 扫描创建

IRI-CRT-00000749

该公司建立了完善的质量保证体系,产品全部采用国际标准,其主要技术指标和可靠性已达到90年代国际同类产品的先进水平。其中64cmFS彩色显像管已获美国UL及加拿大CSA安全认证。1995年3月底,国际认证局(BVQI)与中国船级社质量认证公司(CSQA)对公司的质量体系进行了全面审核,并宣布通过了ISO9002质量认证。

## 四、股票上市资金投向 (发展规划)

该公司发展的总体经营战略是立足国内市场,拓展国际市场,以市场为导向,依靠其科技优势,加快新产品的开发,调整产品结构。同时,该公司正在向原材料生产和整机装配两头延伸,形成产品多层次、全方位发展的格局。具体发展规划如下:

①. 进一步挖潜改造,走内涵扩大再生产之路,少投入多产出,将彩色显像管生产能力在原有设计能力基础上提高70%,使现有设备发挥出最大的潜在能力。

②. 以市场为导向积极开发研制74cmFS大屏幕和16:9宽屏幕彩色显像管;同时,向彩色监视器以及MMTV(多媒体)用彩色显像管方向发展;促进消费类电子产品向投资类产品转化。

③. 进行产业结构调整。产业向原材料、零部件及整机制造延伸,同时通过参股 (控股) 等方式向信息产业 (如计算机、通信、工业控制) 发展。

— 4 —

由 扫描全能王 扫描创建

IRI-CRT-00000750

④. 为使公司能更高效、快速的发展, 该公司将利用机制优势, 走资本运作之路, 通过兼并、参股、控股等方式, 合理配制资源, 优化产业结构, 同时利用本公司产品好、技术含量高、规模经营等优势, 争取利用发行 B 股和国外上市的方式, 参与国际竞争, 使公司逐步成为集团化、多元化、国际化的现代企业。

彩虹显示器件股份有限公司要高速的发展, 就需要大量的资金; 如果其股票能够早日上市流通, 就可以利用证券市场快捷的融资渠道, 为公司的发展筹备所需要的资金。



一九九五年十二月十四日

---

抄报: 陕西省体改委、陕西省证监会            档(2)

---

打 印: 薛小路      校 对: 郑 涛

—5—

由 扫描全能王 扫描创建

CONFIDENTIAL                                                                    IRI-CRT-00000751

# Exhibit 41



June 25, 2018

**Certification**

                                    **Park IP Translations**


This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English  of the document with bates numbers range: IRI-CRT-00000755 - IRI-CRT-00000763.


Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

Shaanxi Province Xianyang City Qindu District People's Court
Criminal Judgment

[stamp illegible]
(2013) XQXCZ No. 00344

Public prosecution organ: Xianyang City Qindu District People's Procuratorate.

Defendant: Ge Di, male, born 23 July 1959 in Mei County, Shaanxi Province, ID number: 610402195907231212, Manchu, college education, chairman of the board and general manager of IRICO (Hefei) LCD Glass Co., Ltd., residing at Unit 1 Room 202, Yangguang Community A10, Xianyang City, Shaanxi Province. He was detained as a criminal on 7 August 2013 due to this case, and was arrested on August 24 of the same year. Currently being held at Xianyang City Qindu District detention center.

Defending attorney: Zhang Weiyu, lawyer with Shaanxi Yu Bin Cheng Law Firm.

With indictment XQJXS (2013) No. 257, Xianyang City Qindu District People's Procuratorate has charged the defendant Ge Di of accepting bribes, and on 8 November 2013 undertook public prosecution in this court. Following acceptance by this court, a collegial panel was formed according to law, the ordinary procedures were applied, a pretrial conference was held on 3 December 2013, and an open hearing for this case was called to order on 11 April 2014. Xianyang City Qindu District People's Procuratorate designated Procurator Yuan Cui to appear in court according to law in support of the public prosecution, and Defendant Ge Di and Defending Attorney Zhang Weiyu attended the trial. During this period, on 7 February 2014, the public prosecution organ raised the need to supplement the investigation, the hearing of this case was postponed, and the hearing was resumed on 7 March 2014. On 19 May 2014, this court received approval from the Xianyang City Intermediate People's Court to extend the trial time limit by three months. The hearing has now come to a conclusion.

The Xianyang City Qindu District People's Procuratorate charged that in April 2010, while Defendant Ge Di was serving as chairman of the board and general manager of IRICO (Hefei) LCD Glass Co., Ltd., Liu Tengteng used her qualifications with the affiliated Shaanxi No. 3 Construction Co., Ltd. to undertake road engineering for IRICO (Hefei) LCD Glass Co., Ltd. In October of the same year, as the project was approaching completion, Liu Tengteng

1


Scanned and created by CamScanner

CONFIDENTIAL                                                          IRI-CRT-00000755

sent 200,000 yuan to the wife of Ge Di, Zhang Ping, to thank Ge Di for his care and help in aspects such as project bidding and for the smooth execution of the project. After receipt, Zhang Ping informed Ge Di of this matter, and Ge Di took no stand, giving tacit permission for Zhang Ping to hide the money in a corner of a cabinet in the home until October 2012, when she deposited 150,000 yuan of it into her China CITIC Bank account, using the other 50,000 yuan for daily living expenses.

The public prosecution organ believes that Defendant Ge Di, as a state functionary appointed by a state-owned company to a non-state-owned company to engage in official business, used the convenience afforded by his position to illegally receive 200,000 yuan from another and sought benefits for another, in violation of the provisions of Article 385 and Article 386 of the "Criminal Law of the People's Republic of China", constituting the acceptance of bribes, and is submitting the case to this court for punishment in accordance with the law.

Defendant Ge Di argued in court that he only heard of the matter of Liu Tengteng sending money to his spouse, Zhang Ping, through Zhang Ping, and it was undertaken entirely without his knowledge. He had not seen the cash, had not seen the bankbook, and told Zhang Ping to return the money. During the investigation stage, he stated that the matter of the cash was not true. All the company's payments to Liu Tengteng were in accordance with the provisions of the project contract, and he did not help in making payments to Liu Tengteng. It did not constitute the acceptance of bribes.

Defendant Ge Di's defending attorney argued that the charges of the public prosecution organ against the defendant Ge Di were unfounded, and that Defendant Ge Di should be found not guilty. 1. Defendant Ge Di originally stated that the bribery was cash, and all the way up to the beginning of the case, it had not been returned. However, the actual circumstances were that 6 months prior to the beginning of the case, i.e.: on 21 December 2012, Defendant Ge Di's spouse, Zhang Ping, returned the bribe to the briber Liu Tengteng, as instructed by Ge Di, and Ge Di had no intention and took no action to accept a bribe. 2. With Zhang Ping rejecting this bribe, the briber proposed making a deposit in a bank, the purpose of which was to facilitate the return of the bribe. These bribe funds were always under the name of the briber. Based on the regulations of the People's Bank of China, deposits implement a real-name system, and at the time of the return of the money, the bribe money had reached the one-year period, and it was not rolled over by Zhang Ping, which proves the fact that Zhang Ping was thinking of ways to return the money.

The hearing revealed that in August 2009, with the approval of IRICO Group Corporation (state-owned), defendant Ge Di undertook the posts of chairman of the board and general manager of IRICO (Hefei) LCD Glass Co., Ltd. (with equity participation by IRICO Group Corporation). In April 2010, Liu Tengteng used her qualifications with the affiliated Shaanxi No. 3 Construction Co., Ltd. to undertake road engineering, etc. for IRICO (Hefei) LCD Glass Co., Ltd.

 Scanned and created by CamScanner

In October of the same year, as the project was approaching completion, Liu Tengteng sent 200,000 yuan to the wife of Defendant Ge Di, Zhang Ping, to thank Ge Di for his care and help in aspects such as project bidding and for the smooth execution of the project. After receiving the money, Zhang Ping informed Defendant Ge Di of this matter, and Defendant Ge Di gave tacit permission for Zhang Ping to take the money. In October 2012, Zhang Ping deposited 150,000 yuan of this money into her China CITIC Bank account, using the other 50,000 yuan for daily living expenses.

The preceding facts were verified by testimony, cross-examination, and authentication in court as described below:

1. Four statements by Defendant Ge Di on 6 August 2013 and 7 August 2013 demonstrate that in September 2009, he was appointed to the position of general manager of IRICO (Hefei) LCD Glass Co., Ltd., and in October 2011, he was appointed to the position of general manager of IRICO Co., Ltd. and chairman of the board and legal representative of IRICO (Hefei) LCD Glass Co., Ltd. Around April - May 2010, Liu Tengteng's affiliated Shaanxi No. 3 Construction Co. had a road construction project exceeding 19 million yuan at the IRICO (Hefei) LCD Glass Co., Ltd. construction site. This project was completed around January - February 2011. As the project was wrapping up, at Ge Di's home in Xianyang, Liu Tengteng gave Ge Di's wife Zhang Ping 200,000 yuan. After receiving the money, Zhang Ping immediately told Ge Di, and he took no clear stand to have Zhang Ping return the money to Liu Tengteng. One evening in late July 2013, Liu Tengteng came to Ge Di's house and said to him and Zhang Ping: If the procuratorate investigates, they should claim that no money had been given.

2. Five testimonies by witness Liu Tengteng (legal representative of Xianyang Ketong Information Technology Co., Ltd.) on 5 August 2013, 8 August 2013, 9 August 2013, and 17 October 2013 demonstrate that around March and April 2010, her company, under the affiliated name of Shaanxi No. 3 Construction Co., Ltd., undertook road and outdoor girder steelwork engineering for the IRICO (Hefei) LCD Glass Co., Ltd. factory, contracting for labor and materials. The project's total bid amount was nearly 20 million yuan. Prior to the company's call for bids, Ge Di recommended that Liu's company (at that time, the company was taking part in the bid invitation as Shaanxi No. 3 Construction) be included as a finalist, and during the entire project construction process, he did nothing to make things difficult for Liu's company. He often made suggestions during the project's execution to help with the proper running of the project. Bidding was conducted in strict accordance with procedures. The greatest help Ge Di could provide during this phase was to include the company with which Liu Tengteng was affiliated, "Shaanxi No. 3 Construction", into the field of consideration. Only

3


Scanned and created by CamScanner

CONFIDENTIAL                                                                      IRI-CRT-00000757

by being included in the field of consideration would it be possible to participate in bidding. As this construction was drawing to a close, she sent 200,000 yuan to Zhang Ping, the wife of the general manager of the Hefei IRICO board factory, Ge Di. The time at which the money was sent was around October 2010. She took out 200,000 yuan in cash from the bank, wrapped it in a black plastic bag, placed it in a handbag, and then drove alone to Ge Di's home. At that time, Ge Di's wife, Zhang Ping, was alone at home. She took the plastic bag holding 200,000 yuan out and gave it to Zhang Ping, expressing her gratitude for the care given by Ge Di. Zhang Ping resisted, and she placed the money on the coffee table and left. On 26 July 2013, she went to Ge Di's house to see Ge Di and Zhang Ping. She told Ge Di: The procuratorate might be looking into her business; if they mention the 200,000 yuan she gave Zhang Ping, the two should keep quiet, tell the same story, and say that she didn't give the 200,000 yuan. Aside from this 200,000 yuan in cash, she did not give any other cash, bank cards, or certificates of deposit to Ge Di.

    3. The testimony of witness Miao Bin (Liu Tengteng's husband and manager of Xianyang Ketong Information Technology Co., Ltd.) demonstrates that in May 2010, he began working on road construction and steelwork construction at the Hefei IRICO board factory. The projects were completed in May 2011, and the total construction cost for the project contracts was more than 22 million yuan, with a project settlement price of more than 29 million yuan. After the projects were completed, his wife, Liu Tengteng, said that she would thank General Manager Ge Di, and he let his wife do as she saw fit. Afterward, he and his wife consulted on making the amount used to thank Ge Di between 100,000 and 200,000. He was unclear on the actual amount.

    4. The testimony of witness Zhang Ping (wife of defendant Ge Di) on 6 August 2013 demonstrates that around the time before the Spring Festival in 2011, Liu Tengteng came to her house and gave her 200,000 yuan in cash, saying that she wanted to thank her and Ge Di. She did not want it, but Liu Tengteng left the money and went away. Liu Tengteng gave the money in order to thank Ge Di for his help with the project. Afterward, when Ge Di returned home, she told him about Liu Tengteng giving the money. Ge Di wanted her to return the money to Liu Tengteng. She did not return the money to Liu Tengteng, and placed the money in a corner of a cabinet in the home. Ge Di did not discover this. On 14 October 2012, she deposited 150,000 yuan of with China CITIC Bank, and the remaining 50,000 yuan went to daily expenses. On the evening of 26 July 2013, Liu Tengteng came to her home, told her and Ge Di that the procuratorate was currently investigating her, and said that if procuratorate asked about the 200,000 yuan, the three of them should keep quiet and say no such thing had happened.

4

Scanned and created by CamScanner

5. The testimony of witness Yang Chunxia (cashier at Xianyang Ketong Information Technology Co., Ltd.) demonstrates that Liu Tengteng arranged for Yang to transfer materials funds to the private household of the construction site's material supplier. Aside from this, Yang did not transfer money to any other private households.

6. The testimony of witness Liang Guoqiang (Shaanxi No. 3 Construction Co., Ltd. project representative) demonstrates that Liang represented Shaanxi No. 3 Construction Co., Ltd. Province in signing a contract with IRICO (Hefei) LCD Glass Co., Ltd. (hereinafter referred to as Hefei LCD) for mechanical and electrical installation project construction. Liang was responsible for the project's onsite construction. Liang was unclear on specifics such as how contact was made at the initial stage of the project. After bidding was over, Liang was authorized by the legal representative to act as proxy in signing the construction contract. This project was undertaken by one person, called Liu Tengteng. Liang's branch only dispatched a number of management personnel; the rest of the personnel were organized by Liu Tengteng. Liu Tengteng was affiliated with Liang's company, and used the qualifications of Liang's company.

7. The testimony of witness Wei Danli (Shaanxi No. 3 Construction Co., Ltd. project representative) demonstrates that Wei was commissioned to represent Shaanxi No. 3 Construction Co., Ltd. in signing a contract with IRICO (Hefei) LCD Glass Co., Ltd. for factory zone road paving construction. This project was not undertaken by Wei, nor was it undertaken by Wei's company. It was actually undertaken by a person called Liu Tengteng, married to Miao Bin. Wei's branch has an affiliation agreement with Liu Tengteng's company, i.e.: a construction project subcontracting agreement. Everything was undertaken by them. Aside from collecting some management fees and the corresponding taxes and fees, Wei's company had nothing to do with it.

8. Documentary evidence including Ge Di's appointment documents, record materials, and census register information demonstrate that the defendant Ge Di took the office of chairman of the board and general manager of IRICO (Hefei) LCD Glass Co., Ltd. in August 2009, with the approval of IRICO Group Corporation, and Ge Di resides at Unit 1 Room 202, Yangguang Community A10, Xianyang City.

9. Documentary evidence including the IRICO (Hefei) LCD Glass Co., Ltd. business license, organization code certificate, and bylaws; the IRICO Group Corporation business license and organization code certificate; the Shaanxi IRICO Electronics Glass Co., Ltd. business license, shareholders, and articles of incorporation; and the IRICO Display Devices Co., Ltd. business license, organization code, property relations, and articles of incorporation demonstrate that IRICO Group Corporation is a state-owned company; the shareholders of IRICO (Hefei) LCD Glass Co., Ltd. are IRICO Group Corporation and Shaanxi IRICO Electronics Glass Co., Ltd., holding 0.27% and 99.73% of the shares, respectively.

5

 Scanned and created by CamScanner

10. Documentary evidence including the Xianyang Ketong Information Technology Co., Ltd. business license, organization code, shareholders, and articles of incorporation demonstrate that this company was established on 9 May 2005 and is a limited liability company; Liu Tengteng is the legal representative of the enterprise and a shareholder. The company's business scope is: electromechanical device manufacturing, fittings processing and sales, and the sale of new materials.

11. Documentary evidence including IRICO (Hefei) LCD Glass Co., Ltd.'s bidding documents related to Shaanxi No. 3 Construction Co., Ltd., settlement materials , corporate materials, receipts related to the Hefei LCD Glass project, payments to Xianyang Ketong, Xianyang Ketong Co. account materials , Xianyang Ketong Co. cash and check stubs and special transfer vouchers to Liu Tengteng from July to December 2013, contract documents between Hefei LCD Co. and Shaanxi No. 3 Construction Co. relating to section 5 of the installation project, bid evaluation records, construction project contracts, reports related to the review and verification of the settlement of the mechanical and electrical installation section 5 project, and contracts between Hefei LCD Co. and Shaanxi No. 3 Construction Co. for road paving and construction and installation project management proves the situation surrounding the bidding and project progress between Hefei LCD Co. and Shaanxi No. 3 Construction Co., Ltd., funds settlement, and the call for bids and awarding of bids for the LCD Co. road paving construction project.

12. Documentary evidence including relevant proof such as the bottom copy of four China Merchants Bank certificates of deposit, account statement vouchers, China CITIC Bank account statement details, and China CITIC Bank deposit receipts demonstrates that on 14 September 2010, at the China Merchants Bank Xianyang Branch, Liu Tengteng made arrangements for three 40,000 yuan certificates of deposit and one 80,000 yuan certificate of deposit, totaling a deposit of 200,000 yuan. The three 40,000 yuan certificates of deposit were password-protected fixed term certificates of deposit, and the 80,000 yuan certificate of deposit was a password-protected current bankbook. On 21 December 2012, China Merchants Bank transferred 200,000 yuan to Liu Tengteng's account at the China CITIC Bank Xianyang Branch. On 14 October 2012, Zhang Ping deposited 150,000 yuan into a China CITIC Bank Xianyang Branch account.

13. The documentary evidence of a reply from China Merchants Bank demonstrates that based on the provisions of the People's Bank, when a current passbook is password-protected, single amounts of 50,000 yuan or less may be drawn at any time simply by using the password, and the customer does not need to provide proof of identity; for password-protected fixed term certificates of deposit of 50,000 yuan or less, they may be drawn with just the use of the password.

14. The documentary evidence of Xianyang Central Hospital inpatient record materials demonstrates that from 1 January to 14 January 2014,

 Scanned and created by CamScanner

CONFIDENTIAL

IRI-CRT-00000760

Zhang Ping was admitted to the Xianyang Central Hospital and was diagnosed with severe depressive episodes without psychotic symptoms.

Regarding the assertion of Defendant Ge Di that he only heard of Liu Tengteng sending money to his spouse, Zhang Ping, through Zhang Ping, it was undertaken entirely without his knowledge, he had not seen the cash or bankbook, and he told Zhang Ping to return the money: during the investigation stage, he stated the defending opinion that the matter of the cash was not true, all the company's payments to Liu Tengteng were in accordance with the provisions of the project contract, and he did not help in making payments to Liu Tengteng. It did not constitute the acceptance of bribes.

Regarding the assertion of Defendant Ge Di that he only heard of Liu Tengteng sending money to his spouse, Zhang Ping, through Zhang Ping, it was undertaken entirely without his knowledge, he had not seen the cash or bankbook, and he told Zhang Ping to return the money: during the investigation stage, he stated the defending opinion that the matter of the cash was not true, and his defending attorney argued that Defendant Ge Di originally stated that the bribery was cash, and all the way up to the beginning of the case, it had not been returned. However, the actual circumstances were that prior to the beginning of the case, i.e.: on 21 December 2012, Defendant Ge Di's spouse, Zhang Ping, returned the bribe to the briber Liu Tengteng, as instructed by Ge Di, and Ge Di had no intention and took no action to accept a bribe. With Zhang Ping rejecting this bribe, the briber proposed making a deposit in a bank, the purpose of which was to facilitate the return of the bribe. These bribe funds were always under the name of the briber. Based on the regulations of the People's Bank of China, deposits implement a real-name system, and at the time of the return of the money, the bribe money had reached the one-year period, and it was not rolled over by Zhang Ping, which proves the fact that Zhang Ping was thinking of ways to return the money. Upon investigation, the testimony of witness Zhang Ping (6 August 2013), the testimony of witness Liu Tengteng (5 August 2013, 8 August 2013, 9 August 2013, 17 October 2013), the statement of defendant Ge Di (6 August 2013, 7 August 2013), and the documentary evidence of a deposit of 150,000 yuan by Zhang Ping on 14 October 2012 at China CITIC Bank Xianyang Branch prove that in October 2010 as the project was wrapping up, Liu Tengteng sent 200,000 yuan to the wife of Ge Di, Zhang Ping, to thank Ge Di for his care and help in aspects such as project bidding and for the smooth execution of the project. After receipt, Zhang Ping informed Ge Di of this matter, and Defendant Ge Di gave tacit permission for Zhang Ping to take the money. On 14 October 2012, Zhang Ping deposited 150,000 yuan of this money into her China CITIC Bank account, using the other 50,000 yuan for daily living expenses. The testimony of witness Zhang Ping on 13 November 2013 and on 31 March 2014

7

 Scanned and created by CamScanner

CONFIDENTIAL

IRI-CRT-00000761

does not match her earlier testimony, the testimony of witness Liu Tengteng on 26 December 2013 and 3 April 2014 does not her earlier testimony, and the statement of defendant Ge Di statement does not match his earlier statement. They all mentioned that the 200,000 yuan sent from Liu Tengteng to Zhang Ping was not cash. Actually, on 14 September 2010, at China Merchants Bank, Liu Tengteng arranged 200,000 yuan in certificates of deposit, and on 21 December 2012, Zhang Ping returned the 200,000 yuan in certificates of deposit to Liu Tengteng. Even though the statements of Defendant Ge Di and witnesses Zhang Ping and Liu Tengteng are repeated, earlier on in the investigation phase, the three people all mentioned that around 26 July 2013, while conferring at Ge Di's home, the three people would not admit to the procuratorate the matter of the 200,000 yuan. So, summarize the case, Defendant Ge Di and witnesses Zhang Ping and Liu Tengteng have given no sound explanation for the contradictions between their earlier and later testimony and statements. Their earlier statements and testimony corroborate each other and should be admitted, affirming that after Zhang Ping accepted 200,000 yuan in cash from Liu Tengteng, she told Defendant Ge Di, and Ge Di gave his tacit approval. The matter of Liu Tengteng making a deposit of 200,000 yuan at China Merchants Bank on 14 September 2012 has no bearing on this case. Therefore, the explanations and defending opinions of Defendant Ge Di and his defending attorney are not sound and are not accepted by this court.

This court finds that Defendant Ge Di, as a state functionary appointed by a state-owned company to a non-state-owned company to engage in official business, was aware that his immediate relative had received 200,000 yuan in cash from another, and he used the convenience afforded by his position to seek benefits for another, constituting the acceptance of bribes. The charges of the public prosecution organ are sound. Regarding the defending opinion of Defendant Ge Di, stating that all the company's payments to Liu Tengteng were in accordance with the provisions of the project contract, he did not help in making payments to Liu Tengteng, and it did not constitute the acceptance of a bribe: upon investigation, defendant Ge Di, as chairman of the board and general manager of IRICO (Hefei) LCD Glass Co., Ltd., was aware that there were economic benefits for Liu Tengteng at his company, was aware that Liu Tengteng has asked for his help, and after his wife, Zhang Ping, told him of Liu Tengteng giving 200,000 yuan as a thank you, he gave his tacit approval of the matter. This amounts to accepting a request for help from Liu Tengteng and committing to seek benefits for Liu Tengteng. Even though the bribe did not pass through his hands, it constitutes the acceptance of a bribe. It does not matter whether he substantively helped the company pay Liu Tengteng. Therefore, the defending opinion of Defendant Ge Di is not sound and is not accepted by this court. Defendant Ge Di is the prime culprit in this joint crime. In accordance with the provisions of "Criminal Law of the People's Republic of China" Article 383, Article 385, Article 386, Article 26 Paragraph 1, and Article 93, following the deliberation of the collegial panel, and being submitted to this court's judicial committee for discussion and judgment, the judgment is as follows:

8

 Scanned and created by CamScanner

Defendant Ge Di is guilty of accepting bribes and is sentenced to ten years in prison.

(The prison term begins on the date of judgment. For detention prior to the execution of judgment, the prison term is reduced by one day for each day of detention. The prison term is from 7 August 2013 to 6 August 2023).

If you are dissatisfied with this judgment, within 10 days from the day after receiving the judgment, you may submit an appeal to this court or directly to the Shaanxi Province Xianyang City Intermediate People's Court. For written appeals, one original and two copies shall be submitted.

Presiding Judge Chang Baomin
Judicial Officer Zhang Yan
Acting Judge Liang Yuqing

[Stamp: illegible]
30 June 2014
Court Clerk: Dai Shaofeng
[This copy has been checked and is the same as the original]

 Scanned and created by CamScanner

CONFIDENTIAL

陕西省咸阳市秦都区人民法院

# 刑事判决书

（2013）咸秦刑初字第 00344 号

公诉机关咸阳市秦都区人民检察院。

被告人葛迪，男，1959 年 7 月 23 日出生于陕西省眉县，身份证号：610402195907231212，满族，大专文化程度，系彩虹（合肥）液晶玻璃有限公司董事长、总经理，住陕西省咸阳市阳光小区 A10 一单元 202 室。因本案于 2013 年 8 月 7 日被刑事拘留，同年 8 月 24 日被逮捕。现羁押于咸阳市秦都区看守所。

辩护人张巍宇，陕西宇斌诚律师事务所律师。

咸阳市秦都区人民检察院以咸秦检刑诉（2013）257 号起诉书指控被告人葛迪罪犯受贿罪，于 2013 年 11 月 8 日向本院提起公诉。本院受理后，依法组成合议庭，适用普通程序，于 2013 年 12 月 3 日召开庭前会议，2014 年 4 月 11 日公开开庭审理了本案。咸阳市秦都区人民检察院指派检察员袁翠依法出庭支持公诉，被告人葛迪及辩护人张巍宇到庭参加了诉讼。期间，公诉机关于 2014 年 2 月 7 日提出需要补充侦查，本案延期审理，2014 年 3 月 7 日恢复审理。2014 年 5 月 19 日本院经咸阳市中级人民法院批准延长审限三个月。现已审理终结。

咸阳市秦都区人民检察院指控，2010 年 4 月，被告人葛迪在担任彩虹（合肥）液晶玻璃有限公司董事长、总经理期间，刘腾腾用挂靠的陕西第三建筑有限公司资质承揽了彩虹（合肥）液晶玻璃有限公司的道路工程。在同年 10 月左右工程临近结束时，刘

1

 山 扫描全能王 扫描创建

CONFIDENTIAL

IRI-CRT-00000755

腾腾为了感谢葛迪在工程招投标等方面给予的关照和帮助，使工程得以顺利进行，送给了葛迪的妻子张萍 20 万元。张萍收到钱后将此事告知了葛迪，葛迪未表态，默许张萍将钱藏于家中柜子的角落里，直到 2012 年 10 月将其中的 15 万元存入中信银行的自己账户，另外 5 万元用于日常生活开销。

公诉机关认为，被告人葛迪身为国有公司委派到非国有公司从事公务的国家工作人员，利用职务上的便利，非法收受他人财物 20 万元，为他人谋取利益，其行为触犯了《中华人民共和国刑法》第三百八十五条、第三百八十六条之规定，构成受贿罪。提请本院依法惩处。

被告人葛迪当庭辩称，刘腾腾向其爱人张萍送钱一事其都是听张萍说的，是在其完全不知情的情况下进行的，其既未见过现金，也未见过存折，其还让张萍将钱退回。其在侦查阶段供述说是现金一节不真实。公司向刘腾腾付款都是按工程合同规定，其并未帮助向刘腾腾付款。其不构成受贿罪。

被告人葛迪的辩护人辩称，对公诉机关指控被告人葛迪的犯罪事实不认可，应宣告被告人葛迪无罪。1、被告人葛迪原供述行贿人行贿的是现金，并且直至案发时未予归还，但实际情况是早在案发前 6 个月前即 2012 年 12 月 21 日被告人葛迪的爱人张萍就将行贿款按葛迪的嘱咐交还给行贿人刘腾腾，葛迪没有受贿的故意和行为。2、该笔贿款是在张萍拒收的情况下，由行贿人提出交存银行的，其目的是为退还行贿款方便。该笔贿款始终在行贿人名下，根据中国人民银行的规定存款实行实名制，退钱时行贿款均已到期一年，张萍并未转存，足以证明张萍在想法退钱的事实。

经审理查明，2009 年 8 月，经彩虹集团公司（国有）批准，被告人葛迪担任彩虹（合肥）液晶玻璃有限公司（彩虹集团公司参股）董事长、总经理。2010 年 4 月，刘腾腾用挂靠的陕西省第三建筑工程公司资质承揽了彩虹（合肥）液晶玻璃有限公司的道

2

 由 扫描全能王 扫描创建

CONFIDENTIAL                                                    IRI-CRT-00000756

路等工程。在同年10月左右工程临近结束时，刘腾腾为了感谢葛迪在工程招投标等方面给予的关照和帮助，使工程得以顺利进行，送给了被告人葛迪之妻张萍现金20万元。张萍收到钱后将此事告知了被告人葛迪，被告人葛迪对张萍收钱一事予以默许。2012年10月，张萍将其中的15万元存入中信银行的自己账户，另外5万元用于日常生活开销。

上述事实，有以下经当庭举证、质证、认证的证据证实：

1、被告人葛迪2013年8月6日、2013年8月7日的四次供述，证明2009年9月，其被任命为彩虹（合肥）液晶玻璃有限公司总经理，2011年10月份，被任命为彩虹股份有限公司总经理兼任彩虹（合肥）液晶玻璃有限公司董事长、法定代表人。2010年4-5月左右，刘腾腾挂靠陕西三建公司在彩虹(合肥)液晶玻璃有限公司建设工地有过约1900多万元的道路施工工程，该工程大概在2011年1-2月份左右基本完工。在工程临近结束时，刘腾腾在咸阳其家中给了其妻张萍20万元，张萍收到这钱后，在第一时间就告诉了其，其没有明确表态让张萍把钱给刘腾腾退回去。2013年7月下旬的一天晚上，刘腾腾来到其家，对其和张萍说：如果检察院调查，要一口咬死说没有给钱。

2、证人刘腾腾（系咸阳科通信息技术有限公司法定代表人）2013年8月5日、2013年8月8日、2013年8月9日、2013年10月17日的五次证言，证明2010年3、4月份左右，其公司挂靠在陕西省第三建筑工程公司名下，承揽了彩虹(合肥)液晶玻璃有限公司厂区道路及室外桁价钢结构工程，包工包料，工程总标的额近二千万元。在其公司招标前，葛迪推荐其公司(当时公司是以陕西省三建的资质参加招标)入围，在整个工程施工过程中从不为难其公司，在工程实施过程中经常提一些建议帮助其把工程搞好。整个招投标是严格按照程序进行的，这个环节葛迪能给的最大帮助就是把其所挂靠的公司"陕三建"纳入到考察范围，只有

3

 由 扫描全能王 扫描创建

IRI-CRT-00000757

纳入到考察范围才有可能参与投标。在这项工程施工快结束时，其给当时任合肥彩虹机板厂总经理葛迪的老婆张萍送了20万元。送钱的时间是2010年10月份左右，其从银行取了20万元现金，用一个黑色塑料袋包好，装在女式包里，然后一个人开车到葛迪家，当时葛迪的老婆张萍一个人在家，其就把装有20万元的塑料袋拿出来给张萍，并表示感谢葛总给予的关照。张萍推脱了一番，其将钱放在茶几上就走了。2013年7月26日，其去葛迪家见到葛迪、张萍，其对葛迪说：最近检察院可能要查我的事，如果涉及到其给张萍的20万元，双方要一口咬死，统一口径，就说没给过20万元。除了这笔现金20万元以外，其再没有给葛迪其他现金、银行卡、存单。

3、证人苗滨（系刘腾腾之夫，咸阳科通信息技术有限公司经理）的证言，证明2010年5月份，其在合肥彩虹机板厂开始进行厂区道路工程建设及钢结构工程建设，所有工程至2011年5月份全部竣工，工程合同总造价约2200多万元，工程结算价2900余万元。在所有工程结束之后，其妻子刘腾腾说过要感谢总经理葛迪的话，其让妻子自己看着办，后来其和妻子商量感谢葛迪的钱数在10万至20万之间，实际给了多少其不清楚。

4、证人张萍（系被告人葛迪之妻）2013年8月6日的一次证言，证明大概2011年春节前，刘腾腾到其家送给其20万元现金，说要感谢葛迪和其，其不要，刘腾腾把钱留下就走了。刘腾腾是为了感谢葛迪在工程上的帮忙而给的钱。后来葛迪回家后，其把刘腾腾送钱的事告诉给葛迪，葛迪让她把钱还给刘腾腾。她没有将钱还给刘腾腾，将钱放到家中柜子角落里，葛迪对此没有发现。2012年10月14日，她将其中15万元存到中信银行，其余5万元日常开销。2013年7月26日晚上，刘腾腾来到其家，对其和葛迪说检察院正在调查她，如果检察院问这20万元的事，我们三个要咬定死口说没有这事。

4

 由 扫描全能王 扫描创建

CONFIDENTIAL

5、证人杨春侠（系咸阳科通信息技术有限公司出纳）的证言，证明刘腾腾安排过其给工地的材料供应商的私户转过材料款。除此之外，其没有给别的私户上转过钱。

6、证人梁国强（系陕西省第三建筑工程公司工程代表）的证言，证明其代表陕西省第三建筑工程公司同彩虹(合肥)液晶玻璃有限公司(下称合肥液晶)签订过机电安装工程施工合同。其一直是负责工程现场施工的，前期工程是怎么联系的等具体事情其一概不清楚。在整个招投标完了后，其受法定代表人的委托在施工合同上以委托代表人的身份签上了其的名字。这个工程是一个叫刘腾腾的人承揽的，其分公司只是派了几个管理人员，其余人员都是由刘腾腾组织的。刘腾腾是挂靠其公司，用其公司的资质。

7、证人魏丹利（系陕西省第三建筑工程公司工程代表）的证言，证明其受委托代表陕西省第三建筑工程公司同彩虹(合肥)液晶玻璃有限公司签订过厂区路面沥清工程施工合同。这个工程不是其承揽的，也不是其公司承揽的，实际承揽人是一个叫刘腾腾、苗滨的夫妇去联系的。其分公司同刘腾腾的公司有一个挂靠协议，也即建筑工程总分包协议，全部由他们去做，其公司除了收取一定比例的管理费及相应税费外，其他一概不管。

8、书证葛迪任职文件、葛迪档案资料、户籍信息，证明被告人葛迪于 2009 年 8 月，经彩虹集团公司批准，担任彩虹（合肥）液晶玻璃有限公司董事长、总经理，葛迪住址为咸阳市阳光小区 A10 一单元 202 室。

9、书证彩虹(合肥)液晶玻璃有限公司营业执照、机构代码证及章程；彩虹集团公司营业执照、机构代码证；陕西彩虹电子玻璃有限公司营业执照、股东构成、公司章程；彩虹显示器件股份有限公司营业执照、机构代码、产权关系、公司章程，证明彩虹集团公司系国有公司；彩虹(合肥)液晶玻璃有限公司的股东为彩虹集团公司、陕西彩虹电子玻璃有限公司，占股比例分别为 0.27%、

5

由 扫描全能王 扫描创建

IRI-CRT-00000759

*99.73%。*

10、书证咸阳科通信息技术有限公司营业执照、机构代码、股东构成、公司章程，证明该公司成立于2005年5月9日，系有限责任公司，刘腾腾为企业法人、股东。公司的经营范围为：机电设备制造、配件加工、销售、销售新材料销售。

11、书证彩虹(合肥)液晶玻璃有限公司关于陕西省第三建筑工程公司相关招投标文件、结算资料、公司资料、关于合肥液晶玻璃相关工程的收款情况、向咸阳科通付款情况、咸阳科通公司账务资料、咸阳科通公司2013年7月至12月付给刘腾腾现金支票存根及特种转账凭证、合肥液晶公司同陕三建公司安装工程五标段相关合同文件、评标书、建设工程施工合同及关于对机电安装五标段工程结算审核验证的报告、合肥液晶公司同陕三建公司路面沥青层、建筑安装工程管理合同，证明合肥液晶公司与陕西三建公司之间的招投标及工程进度、资金结算、液晶公司玻璃幕板项目路面沥青层施工工程招标、中标等情况。

12、书证招商银行四张存单底联、账户流水明细凭证、中信银行账户流水明细、中信银行存款回单等相关凭证，证明2010年9月14日刘腾腾在招商银行咸阳支行办理三张4万元存单、一张8万元存单共20万元的存款情况，三张4万元存单系是设密码的定期存单，8万元存单系设密码的活期存折，2012年12月21日招商银行将20万元转账到刘腾腾在中信银行咸阳支行的账户。2012年10月14日，张萍在中信银行咸阳支行的账户存入15万元。

13、书证招商银行回复一份，证明根据人民银行的规定活期存折设密码时，单笔5万元以下只需凭密码支取即可，可随时支取，不需要客户提供身份证明；设密的5万元以下定期存单，只需凭密码支付即可。

14、书证咸阳市中心医院住院病案材料，证明2014年1月1

6


由 扫描全能王 扫描创建

CONFIDENTIAL

IRI-CRT-00000760

月至 1 月 14 日，张萍在咸阳市中心医院住院，诊断为重度抑郁发作，不伴精神病性症状。

关于被告人葛迪提出的刘腾腾向其爱人张萍送钱一事其都是听张萍说的，是在其完全不知情的情况下进行的，其既未见过现金，也未见过存折，其还让张萍将钱退回。其在侦查阶段供述说是现金一节不真实的辩解意见，公司向刘腾腾付款都是按工程合同规定，其并未帮助向刘腾腾付款。其不构成受贿罪。

关于被告人葛迪提出的刘腾腾向其爱人张萍送钱一事其都是听张萍说的，是在其完全不知情的情况下进行的，其既未见过现金，也未见过存折，其还让张萍将钱退回，其在侦查阶段供述说是现金一节不真实的辩解意见及其辩护人提出的被告人葛迪原供述行贿人行贿的是现金，并且直至案发时未予归还，但实际情况是早在案发前即 2012 年 12 月 21 日被告人葛迪的爱人张萍就将行贿款按葛迪的嘱咐交还给行贿人刘腾腾，葛迪没有受贿的故意和行为；该笔贿款是在张萍拒收的情况下，由行贿人提出交存银行的，其目的是为退还行贿款方便；该笔贿款始终在行贿人名下，根据中国人民银行的规定存款实行实名制，退钱时行贿款均已到期一年，张萍并未转存，足以证明张萍在想法退钱的事实的辩护意见，经查，证人张萍（2013 年 8 月 6 日）的证言、证人刘腾腾（2013 年 8 月 5 日、2013 年 8 月 8 日、2013 年 8 月 9 日、2013 年 10 月 17 日）的证言、被告人葛迪（2013 年 8 月 6 日、2013 年 8 月 7 日）的供述、书证张萍于 2012 年 10 月 14 日在中信银行咸阳支行存款 15 万元凭证，证明在 2010 年 10 月左右工程临近结束时，刘腾腾为了感谢葛迪在工程招投标等方面给予的关照和帮助，使工程得以顺利进行，送给了葛迪之妻张萍 20 万元。张萍收到钱后将此事告知了葛迪，被告人葛迪对张萍收钱一事予以默许。直到 2012 年 10 月 14 日张萍将其中的 15 万元存入自己在中信银行账户，另外 5 万元用于日常生活开销。证人张萍 2013 年 11 月 13 日、2014 年

7


由 扫描全能王 扫描创建

CONFIDENTIAL                                                                IRI-CRT-00000761

3月31日的证言与其前期证言不一致，证人刘腾腾2013年12月26日、2014年4月3日的证言与其前期证言不一致，被告人葛迪当庭供述与前期供述不一致，均提出刘腾腾向张萍所送20万元并非现金，实为2010年9月14日刘腾腾在招商银行20万元存单且张萍已于2012年12月21日将20万元存单还给刘腾腾。被告人葛迪、证人张萍、刘腾腾的陈述虽出现反复，但三人在侦查阶段前期都提到2013年7月26日左右在葛迪家中商议时，三人不向检察院承认送20万元一事。综合全案，被告人葛迪、证人张萍、刘腾腾对其证言和供述前后矛盾并未作出合理解释，其前期供述和证言相互能印证，应予以采信，应认定张萍收取刘腾腾现金20万元后告诉了被告人葛迪，葛迪对此予以默认。至于2012年9月14日刘腾腾在招商银行存款20万元一节与本案无关。故被告人葛迪及其辩护人提出的辩解和辩护意见不能成立，本院不予采纳。

　　本院认为，被告人葛迪身为国有公司委派到非国有公司从事公务的国家工作人员，明知其近亲属收取了他人现金20万元，利用职务之便，为他人谋取利益，构成受贿罪。公诉机关指控罪名成立。关于被告人葛迪提出的公司向刘腾腾付款都是按工程合同规定，其并未帮助向刘腾腾付款，其不构成受贿罪的辩解意见，经查，被告人葛迪身为彩虹（合肥）液晶玻璃有限公司董事长、总经理，明知刘腾腾在其公司存在经济利益，明知刘腾腾对其有请托事项，在其妻张萍将刘腾腾出于感谢送20万元一事告诉其后，其对此事予以默认，属于接受刘腾腾请托、承诺为刘腾腾谋取利益，其虽未经手贿款，已构成共同受贿。至于其是否实质性帮助公司向刘腾腾付款在所不论。故被告人葛迪的辩解意见不能成立，本院不予采纳。被告人葛迪在共同犯罪中是主犯。依据《中华人民共和国刑法》第三百八十三条、第三百八十五条、第三百八十六条、第二十六条第一款、第九十三条之规定，经合议庭评议，提交本院审判委员会讨论决定，判决如下：

8

由 扫描全能工 扫描创建 

CONFIDENTIAL
IRI-CRT-00000762

被告人葛迪犯受贿罪，判处有期徒刑十年。

（刑期从判决确定之日起计算，判决执行前先行羁押的，羁押一日折抵刑期一日，即自 2013 年 8 月 7 日起至 2023 年 8 月 6 日止）。

如不服本判决，可在接到判决书的第二日起十日内，通过本院或者直接向陕西省咸阳市中级人民法院提出上诉。书面上诉的，应当提交上诉状正本一份，副本两份。

审　判　长　常保民
审　判　员　张　艳
代理审判员　梁语晴



二〇一四年三月三十日

书　记　员　代少锋

本件与原本核对无异

 由 扫描全能王 扫描创建

CONFIDENTIAL