Exhibit 8



June 25, 2018

**Certification**

<p align="center"><b>Park IP Translations</b></p>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English of the document with bates numbers range: IRI-CRT-00000537 - IRI-CRT-00000539.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

66

Xianyang Municipal Intermediate People's Court of Shaanxi Province
Criminal Judgment
(2014) Xian Zhong Xing Zhong Zi Number 00054
[illegible seal]
[seal: Qindu District People's Court, Xianyang Municipality, Shaanxi Province, seal on perforations]

Original public prosecution organ: Qindu District People's Procuratorate, Xianyang Municipality.

Appellant (original defendant) Liu Junjie, of Han ethnicity, male, born on April 18, 1955 in Mei County, Shaanxi Province, identification card number 610402195504181214, has a college education level. He served as general manager (Executive Director and legal representative) of IRICO (Hefei) Photovoltaic Company Limited and resided at Number 8, 4th fl., Unit 3, Building number 121 in Number 1, Caihong First Road, Qindu District, Xianyang Municipality, Shaanxi Province. As a result of the present case, he was criminally detained on August 6, 2013 and was arrested on August 23 of the same year. Currently, he is under detention at Qindu District Detention House, Xianyang Municipality.

Defender An Wenjiang, an attorney with Shaanxi Wei En Law Firm.

Qindu District People's Court of Xianyang Municipality heard the case of the crime of acceptance of bribes by appellant Liu Junjie and on February 28, 2014, rendered criminal judgment (2013) Xian Qin Xing Chu Zi Number 00346. Defendant Liu Junjie in the original trial disagreed and filed an appeal. After accepting the appeal, in accordance with law, this court impaneled a collegiate panel and after reviewing the files, interrogating the defendant and hearing the defense opinion of the defender, believes that the facts in the original judgment are clear and has decided not to hear the present case. The hearing is now concluded.

The original judgment found that on September 9, 2004, IRICO Group Electronics Company Limited (a State-controlled company) was launched and set up exclusively by IRICO Group. On September 10, 2004, it was registered with Shaanxi Provincial Administration of Industry and Commerce and obtained an enterprise legal person business license. IRICO (Hefei) Photovoltaic Company Limited was set up exclusively with an investment from IRICO Group Corporation. On September 20, 2010, IRICO Group Corporation approved the request from IRICO Group Electronics Company Limited for instructions on the setup of IRICO (Hefei) Photovoltaic Company Limited and the hiring of relevant personnel and gave its consent to hiring defendant Liu Junjie as the executive director, general manager and legal representative of IRICO (Hefei) Photovoltaic Company Limited. In December 2010, while serving as general manager of IRICO (Hefei) Photovoltaic Company Limited, defendant Liu Junjie helped Liu Tengteng obtain a contract for the road project of IRICO (Hefei) Photovoltaic Company Limited by using the qualifications of the affiliated Jiuye Construction Company Limited. Before and after the tender bids for the project, on two separate occasions, Liu Junjie accepted 150,000 yuan in cash given by Liu Tengteng, to pay the living

1

CONFIDENTIAL                                        IRI – CRT – 00000537



Scanned by CamScanner

b/

expenses of his family. After the occurrence of the case, the ill-gotten funds have been recovered.

Based on the above facts, the court that rendered the original judgment held that as a state worker sent by a state-owned company to a non-state-owned company to engage in official business, defendant Liu Junjie took advantage of his position and illegally accepted 150,000 yuan in property from others, to seek gains for others. His actions have constituted the crime of accepting bribes. In view of the fact that he voluntarily pleaded guilty and that all the ill-gotten monies have been recovered, a lighter sentence is hereby given as appropriate. In accordance with the provision of Clause 1 of Article 383, Clause 1 of Article 385, Article 386 and Clause 3 of Article 67 of the Criminal Law of the People's Republic of China, defendant Liu Junjie has committed the crime of acceptance of bribes and is hereby sentenced to a term of 10 years imprisonment.

Appellant Liu Junjie pointed out in his appeal that he had no objections to the facts of the crime alleged, however, he does not believe that he was a worker of a state-owned company. After the case occurred, he actually paid restitution and requested a lighter sentence.

The defender believed that: 1. Defendant Liu Junjie was not the worker of a state-owned company and was instead the employee of the subordinate subsidiary of a stock company. 2. The defendant was not a worker approved, appointed or sent by the state-owned company to a non-state-owned company, either. 3. Regarding the appointment of the defendant, he was hired in accordance with the provisions of Company Law and bylaws of the company, upon a decision by the board of directors of IRICO Group Electronics Company Limited. In summary of the above, the defendant did not have the subject standing of a crime and request was made into the court in the second instance to change the original sentence.

After a hearing, it has been found that the facts of the crime of acceptance of bribes by appellant Liu Junjie found in the original judgment are clear and that the evidence is substantial and adequate. The facts found in the second instance are consistent with the facts found in the first instance. Additionally, evidence that was submitted and subject to cross-examination during the court hearing in the first instance had been substantiated and was sufficient for finding.

This court holds that defendant Liu Junjie was appointed general manager of IRICO (Hefei) Photovoltaic Company Limited, for which he received approval and consent from IRICO Group Corporation Limited. He took advantages of his position to illegally accept 150,000 yuan of property from other persons and sought gains for others. In accordance with the provisions of Article 6 of *Supreme People's Court and the Supreme People's Procuratorate Notice of Opinion on the Handling of Several Issues in the Specific Application of Law to Job-Related Criminal Cases in State-Contributed Enterprises*, "Personnel that engage in public business in a state controlled company, a state participating stock company and their branches upon nomination, recommendation, appointment and approval by a state organ, state-owned company, enterprise and institutional unit shall be determined to be state workers." His actions have constituted the crime of acceptance of bribes. The defense opinion by the defender that defendant Liu Junjie was not a state worker is not tenable and has not been admitted by this court.

2

CONFIDENTIAL                    IRI – CRT – 00000538



Scanned by CamScanner

Based on the circumstances of the crime  and the guilty plea of appellant Liu Junjie, the court that rendered the original judgment has rendered a lighter sentence. Therefore, the reason for the appeal as alleged by appellant Liu Junjie that his sentence has been too severe is not tenable and has not been admitted by this court. In summary of the above, the facts found in the original judgment are clear, the evidence is substantial and adequate. The conviction and application of law are correct and the trial procedures are legitimate and should be affirmed. In accordance with the provisions of Subclause (1) of Article 225 of Criminal Procedure Law of the People's Republic of China, the following ruling is hereby rendered:

    The appeal is hereby dismissed and the original judgment upheld.
    This ruling is the final ruling.

<span style="color:red">[seal: Qindu District People's Court, Xianyang Municipality, Shaanxi Province, seal on perforations]</span>

Presiding judge: Wang Fengguang
Judge: Liu Honggang
Acting judge: Zhang Yapeng
[seal: Xianyang Municipal Intermediate People's Court of Shaanxi Province]

May 6, 2014
[seal: This copy has been verified to be consistent with the original copy]

Clerk: Wang Gaopeng

CONFIDENTIAL

IRI – CRT – 00000539



Scanned by CamScanner

66

# 陕西省咸阳市中级人民法院

# 刑事裁定书



（2014）咸中刑终字第00054号

原公诉机关咸阳市秦都区人民检察院。

上诉人（原审被告人）刘俊杰，男，1955年4月18日出生于陕西省眉县，身份证号610402195504181214，汉族，大学文化程度，系彩虹（合肥）光伏有限公司总经理（执行董事、法定代表人），住陕西省咸阳市秦都区彩虹一路1号内121号楼3单元4层8号。因本案于2013年8月6日被刑事拘留，同年8月23日被逮捕。现羁押于咸阳市秦都区看守所。

辩护人安文江，陕西维恩律师事务所律师。

咸阳市秦都区人民法院审理秦都区人民检察院指控上诉人刘俊杰犯受贿罪一案，秦都区人民法院于二〇一四年二月二十八作出（2013）咸秦初字第00346号刑事判决书。原审被告人刘俊杰不服，提出上诉。本院受理后，依法组成合议庭，经过阅卷、讯问被告人及听取辩护人辩护意见，认为原判事实清楚，决定不开庭审理本案，现已审理终结。

原审认定，2004年9月9日，彩虹集团公司（系国有公司）独家发起设立彩虹集团电子股份有限公司，2004年9月10日，在陕西省工商行政管理局注册登记，取得企业法人营业执照。彩虹（合肥）光伏有限公司系彩虹集团电子股份有限公司独资成立。2010年9月20日，彩虹集团公司批准彩虹集团电子股份有限公司关于成立彩虹（合肥）光伏有限公司及其相关人员聘任的请示，同意聘任被告人刘俊杰为彩虹（合肥）光伏有限公司执行董事、总经理、法定代表人。2010年12月，被告人刘俊杰在担任彩虹（合肥）光伏有限公司总经理期间，帮助刘腾腾用挂靠的九冶建设有限公司资质承揽了彩虹（合肥）光伏有限公司的道路工程。在工程招投标

1

 由 扫描全能王 扫描创建

CONFIDENTIAL                                                                IRI-CRT-00000537

6/

前后，刘俊杰先后两次共收受刘腾腾所送现金 150000
用于家庭生活支出。案发后，赃款已收缴。

依据上述事实，原审法院认为，被告人刘俊杰身为国
公司委派到非国有公司从事公务的国家工作人员，利用职
上的便利，非法收受他人财物 150000 元，为他人谋取利
其行为已构成受贿罪。鉴于其能自愿认罪，退缴全部赃
同时被告人刘俊杰归案后能如实供述自己的罪行，依法从
处罚。依照《中华人民共和国刑法》第三百八十三条第
第（一）项、第三百八十五条第一款、第三百八十六条、
六十七条第三款之规定，判处，被告人刘俊杰犯受贿罪、
处有期徒刑十年。

上诉人刘俊杰上诉提出，对指控的犯罪事实无异议，
其认为自己不是国有公司的工作人员，案发后积极退赔，
求从轻处罚。

辩护人认为，1、被告人刘俊杰不是国有公司工作人
而是股份制有限公司下属子公司的员工。2、被告人也不是
国有公司批准、任命或委派到非国有公司的工作人员。3、
被告人的任职是依据《公司法》及公司章程规定，由彩虹集
团电子股份公司董事会聘任的。综上被告人不具有受贿罪的
主体身份，请二审法院依法改判。

经审理查明，原判认定上诉人刘俊杰犯受贿罪的事实清
楚、证据确实充分。二审查明事实与一审查明事实一致，
有经过一审庭审举证、质证的证据予以证实，足以认定。

本院认为，被告人刘俊杰被任命为彩虹（合肥）光伏有
限公司总经理并经过彩虹集团公司（国有公司）批准同意，
其利用职务上的便利，非法收受他人财物 150000 元，为他
人谋取利益，依照最高人民法院、最高人民检察院《关于办
理国家出资企业中职务犯罪案件具体应用法律若干问题的
意见》第六条的规定："经国家机关、国有公司、企业、事
业单位提名、推荐、任命、批准等，在国有控股、参股公司
及其分支机构中从事公务的人员，应当认定为国家工作人员
的规定，其行为已构成受贿罪。辩护人关于被告人刘俊杰不

2

 由 扫描全能王 扫描创建

CONFIDENTIAL                                                    IRI-CRT-00000538

伪成国家工作人员的辩护意见不能成立，本院不予采纳。原审法院根据上诉人刘俊杰的犯罪情节及认罪态度，已对其依法予以从轻处罚，故关于上诉人刘俊杰辩称其量刑过重的上诉理由不成立，本院不予采信。综上所述，原判认定事实清楚，证据确实充分，定罪及适用法律准确，审判程序合法，应予维持。依照《中华人民共和国刑事诉讼法》第二百二十五条（一）项之规定，裁定如下：

　　驳回上诉，维持原判。

　　本裁定为终审裁定。



审　判　长　王峰光

审　判　员　刘宏刚

代理审判员　张亚鹏

二〇一四年五月六日

书　记　员　王高鹏

3

由 扫描全能王 扫描创建

CONFIDENTIAL                                                          IRI-CRT-00000539

Exhibit 9



June 25, 2018

**Certification**

**Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English of the document with bates numbers range: IRI-CRT-00000540 - IRI-CRT-00000555.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

15 W. 37th Street 8th Floor
New York, NY 10018
212.581.8870
ParkIP.com

[Illegible handwriting] 29
April 17, 2014

# Qindu District People's Court, Xianyang City, Shaanxi Province

## Criminal Judgment

(2013) Xian Qin Xing Chu Number 00345

Public prosecution organ: Qindu District People's Procuratorate, Xianyang City.

Defendant Liu Maihai, of Han ethnicity, male, born on March 29, 1965 in Hua County, Shaanxi Province, identification card number 610402196503297519, has a graduate student education level. He was formerly general manager of Hefei IRICO Blu-ray Science and Technology Company Limited and resided at Number 1, 1st floor, Unit 6, Building Number 149 of Number 1, Caihong Road, Qindu District, Xianyang City. As a result of the present case, he was criminally detained on August 6, 2013 and was arrested on August 23 of the same year. Currently, he is under detention at Qindu District Detention House, Xianyang City.

Defender Zhao Huibin, an attorney with Shaanxi Bin Cheng Law Firm.

Defender Wang Yong, an attorney with Shaanxi Heng Ji Law Firm.

With Xian Qin Jian Criminal Complaint (2013) Number 259, Qindu District People's Procuratorate of Xianyang City accused defendant Liu Maihai of having committed the crime of accepting bribes and brought an indictment on November 13, 2013 with this court. In accordance with law and pursuant to summary procedures and general procedures, on December 16, 2013, this court impaneled a collegiate panel to hold a public hearing of the present case. Qindu District People's Procuratorate of Xianyang City designated acting prosecutor Qiu Zhili to appear in court and support the indictment. Defendant Liu Maihai and defenders Zhao Huibin and Wang Yong appeared in court to participate in the lawsuit. Upon approval by Xianyang City Intermediate People's Court, an extension of 3 months was granted for the hearing of the present case. The hearing has now been concluded.

Qindu District People's Procuratorate of Xianyang City filed the following charges:

1. In August 2010, while defendant Liu Maihai served as general manager of Hefei IRICO Blu-ray Science and Technology Company Limited, to obtain a contract for Hefei IRICO Blu-ray Science and Technology Company Limited, Miao Bin, manager of Xianyang Ketong Information Technology Company Limited, gave 20,000 yuan in cash to Liu Maihai in Liu Maihai's office at Blue Whale Building, Hefei City, Anhui Province. Thereafter, without a tender bid, in the guise of making preparations for an inspection, Liu Maihei permitted Miao Bin's construction team to enter the site early to perform construction.

1



Scanned by CamScanner
IRI-CRT-00000540

CONFIDENTIAL

2. In October 2010, while defendant Liu Maihai served as general manager of Hefei IRICO Blu-ray Science and Technology Company Limited, in Liu Maihai's office at Blue Whale Building, Hefei City, Anhui Province, Liu Tengteng, legal representative of Xianyang Ketong Information Technology Company Limited, gave 50,000 yuan in cash to Liu Maihai to express her thanks to Liu Maihai for allowing his construction team to enter the site early to perform construction and for continued care received from Liu Maihai in terms of project contracting. Thereafter, during an invitation for tender bids, Liu Maihai invited Jiuye Construction Company Limited, which was affiliated with Xianyang Ketong Information Technology Company Limited, as a bidder and allowed it to win the bid.

3. From the second half of 2010 to early 2011, while defendant Liu Maihai served as general manager of Hefei IRICO Blu-ray Science and Technology Company Limited, Xianyang Ketong Information Technology Company Limited used the qualifications of the affiliated Jiuye Construction Company Limited to contract for road and steel structure projects for Hefei IRICO Blu-ray Science and Technology Company Limited. In March 2011, to express his thanks to Liu Maihai for continued care received from Liu Maihai in terms of project bid tenders, construction and payments, in a temporary office of Liu Maihai at the site of Hefei IRICO Blu-ray Science and Technology Company Limited in Anhui Province, Miao Bin gave Liu Maihai 30,000 yuan in cash.

4. In March and April 2011, while defendant Liu Maihai served as general manager of Hefei IRICO Blu-ray Science and Technology Company Limited, China Electronic Systems Engineering Third Construction Company Limited obtained a contract for the electromechanical installation project of Hefei IRICO Blu-ray Science and Technology Company Limited. One day in July of the same year, to express his thanks to Liu Maihai for care and continued help received from Liu Maihai in terms of project construction and payments, in a temporary office of Liu Maihai at the site of Hefei IRICO Blu-ray Science and Technology Company Limited in Anhui Province, Tan Zhijian, general manager of China Electronic Systems Engineering Third Construction Company Limited, gave Liu Maihai 100,000 yuan in cash.

5. In the first half of 2011, while defendant Liu Maihai served as general manager of Hefei IRICO Blu-ray Science and Technology Company Limited, Jiangsu Xiangrong Group Corporation Limited won a bid for the electronic equipment purchase and service contract of Hefei IRICO Blu-ray Science and Technology Company Limited. One night in August or September of the same year, for the care received from Liu Maihai in product payments and contract performance, Tang Deping, sales representative of Jiangsu Xiangrong Group Corporation Limited, gave Liu Maihai 200,000 yuan in cash at a tea show on the first floor of Hilton Hotel in Hefei City, Anhui Province. Liu Maihai did not intentionally delay or cause difficulty with payment for goods to Jiangsu Xiangrong Group Corporation.

Defendant Liu Maihai deposited a total of 400,000 yuan received from Miao Bin, Liu Tengteng, Tan Zhijian and Tang Deping into his own bank accounts on separate occasions and thereafter transferred it to the stock account that he had opened with Shanghai Guangfa Securities, to purchase stocks and funds (already refunded).

2

 Scanned by CamScanner

CONFIDENTIAL                IRI-CRT-00000541

With regard to the above allegations, the public prosecution organ presented evidence such as witness testimony, documentary evidence, statements and defense arguments of the defendant, etc. The public prosecution organ held that as a State worker sent by a State-owned company to a non-State-owned company to engage in public business, defendant Liu Maihai took advantage of his position and illegally accepted 400,000 yuan of property from others to seek gains for others. His actions have violated Articles 385 and Article 386 of the Criminal Law of the People's Republic of China and he should be pursued for criminal liability on crimes of accepting bribes. Therefore, it requested that this court render a sentence in accordance with law.

Defendant Liu Maihai did not raise objections to the facts of the crimes alleged in the complaint and voluntarily pled guilty.

The defenders of defendant Liu Maihai alleged in their defense that: 1. Defendant Liu Maihai did not meet the subject elements for a State worker and defendant Liu Maihai should be pursued for criminal liability on charges as a non-State worker who accepted bribes. The Supreme People's Court provided in the Reply to the Issue of How to Convict Workers Who Perform Managerial Work in Limited Stock Companies Controlled by State-Owned Capital or with Participation by State-Owned Capital that: except for workers who perform managerial work in limited stock companies controlled by State-owned capital or with participation by State-owned capital, apart from those who have been sent by a State organ, a State-owned company, enterprise or institutional organization to engage in public business, such workers shall not be deemed to be State workers. In the present case, IRICO Group Corporation holds 43.16% of shares in Shanghai Blu-ray Company. The percentage of shares held by a private enterprise and natural persons is 56.84%; Shanghai Blu-ray Company holds 54.55% of shares in Hefei IRICO Blu-ray Science and Technology Company Limited. The capital contributions made by Shanghai Blu-ray Company held by Hefei IRICO Blu-ray Science and Technology Company Limited were made from the property of its own legal person and the contributions were not made by IRICO Group. The control of Hefei IRICO Blu-ray Science and Technology Company Limited by Shanghai Blu-ray Company cannot be regarded as control by IRICO Group. Therefore, Hefei IRICO Blu-ray Science and Technology Company Limited, where defendant Liu Maihai held a position, is not a State-owned enterprise nor is it a State-contributed enterprise. Liu Maihai has not been nominated, recommended, appointed, approved or appointed by Shanghai Blu-ray Company or IRICO Group Corporation. On November 6, 2008, defendant Liu Maihai executed a labor contract with IRICO Electronics Company Limited. On July 1, 2010, he was loaned to Shanghai Blu-ray Company. On November 22, 2010, he terminated his labor contract with IRICO Electronics Company Limited. On January 1, 2011, he executed a labor contract with Hefei IRICO Blu-ray Science and Technology Company Limited and on the same day, he paid premiums for various types of social insurance at Hefei Municipal Labor and Social Security Bureau. Thereafter, he was elected employee director by the employee representative meeting of Hefei Blu-ray company to make decisions on behalf of employees, and did not engage in public business on behalf of a State-owned controlling or participating company. In summary of the above, defendant Liu Maihai was not a person who engaged in public business at a State-owned controlling or participating company or its branch, after being nominated, recommended, appointed or approved, etc., by a State organ, State-owned company, enterprise or institution organization.

3

Scanned by CamScanner
IRI-CRT-00000542

CONFIDENTIAL

2. The allegations of crimes 3, 4 and 5 by the public prosecution organ are not tenable. Defendant Liu Maihai has not promised, implemented or successfully sought gains for others and has not performed specific items authorized by others. He did not have the intent nor has engaged in actions to seek gains for others and has not met the objective elements for seeking gains for others. 3. Regarding the allegations of crimes 4 and 5 in the complaint, during the first interrogation by the investigative organ, defendant Liu Maihai took the initiative in confessing and truthfully stated facts of his crimes, whereby he accepted 100,000 yuan from Tan Zhijian and 200,000 yuan from Tang Deping, at a time when the investigative organ did not have information of the bribes offered by Tan Zhijian and Tang Deping. His actions should be found to be surrendering himself and he is entitled to a lighter penalty for his actions in accepting these two bribes. 4. Liu Maihai has actively paid restitution for the ill-gotten money. He had a good attitude by pleading guilty and is entitled to a lighter penalty.

After the hearing, it has been found that:

IRICO Group Corporation is a State-owned company. IRICO Group Corporation holds 43.1691% of the shares of Shanghai Blu-ray Science and Technology Company Limited. Other State-owned companies, privately owned enterprises and natural person shareholders hold 56.8309% of its shares. On August 2, 2010, Shanghai Blu-Ray Science and Technology Company Limited and Hefei Xincheng State-Owned Asset Operations Company Limited made joint capital contributions toward the establishment of Hefei IRICO Blu-Ray Science and Technology Company Limited, of which Shanghai Blu-Ray Science and Technology Company Limited holds 54.55% of the registered capital and Hefei Xincheng State-Owned Asset Operations Company Limited holds 45.45% of the registered capital. The legal representative is Liu Wendi. The type of the company is a limited liability company.

On November 6, 2008, defendant Liu Maihai executed a labor contract with IRICO Group Electronics Company Limited. On August 13, 2010, Shanghai Blu-ray Science and Technology Company Limited sent a letter to IRICO Group Electronics Company Limited to borrow defendant Liu Maihai for work at the company, from July 1, 2010 to October 1, 2010. On September 9, 2010, Shanghai Blu-ray Science and Technology Company Limited sent an Employee Secondment Letter to IRICO Group Electronics Company Limited to request that defendant Liu Maihai be loaned to work at its company. On November 22, 2010, IRICO Group Electronics Company Limited issued the Notice of Terminating the Labor Contract of Liu Maihai, stating that the company had terminated the labor contract with defendant Liu Maihai in October 2010. On July 23, 2010, Hefei IRICO Blu-Ray Science and Technology Company Limited held the first meeting of the first board of directors, at which it adopted a resolution. Upon nomination by chairman of the board of directors Liu Wendi, the board of directors voted to hire Liu Maihai as general manager of the company for a term of three years and, on January 1, 2011, executed a labor contract with defendant Liu Maihai. But in August 2010 and September 2011, defendant Liu Maihai

4

Scanned by CamScanner

IRI-CRT-00000543

accepted property from others totaling 400,000 yuan. The specific facts are as follows:

  1. In August 2010, to obtain a contract for Hefei IRICO Blu-ray Science and Technology Company Limited, Miao Bin, manager of Xianyang Ketong Information Technology Company Limited, gave 20,000 yuan in cash to Liu Maihai in Liu Maihai's office at Blue Whale Building, Hefei City, Anhui Province. Thereafter, without a tender bid, in the name of making preparations for an inspection, Liu Maihei permitted Miao Bin's construction team to enter the site early to perform construction.

  2. In October 2010, in Liu Maihai's office at Blue Whale Building, Hefei City, Anhui Province, Liu Tengteng, legal representative of Xianyang Ketong Information Technology Company Limited, gave 50,000 yuan in cash to Liu Maihai to express her thanks to Liu Maihai for allowing his construction team to enter the site early to perform construction and for continued care received from Liu Maihai in terms of project contracting. Thereafter, during an invitation for tender bids, Liu Maihai invited Jiuye Construction Company Limited, which was affiliated with Xianyang Ketong Information Technology Company Limited, as a bidder and allowed it to win the bid.

  3. From the second half of 2010 to early 2011, Xianyang Ketong Information Technology Company Limited used the qualifications of the affiliated Jiuye Construction Company Limited to contract for road and steel structure projects for Hefei IRICO Blu-ray Science and Technology Company Limited. In March 2011, to express his thanks to Liu Maihai for continued care received from Liu Maihai in terms of project bid tenders, construction and payments, in a temporary office of Liu Maihai at the site of Hefei IRICO Blu-ray Science and Technology Company Limited in Anhui Province, Miao Bin gave Liu Maihai 30,000 yuan in cash.

  4. In March and April 2011, China Electronic Systems Engineering Third Construction Company Limited obtained a contract for the electromechanical installation project of Hefei IRICO Blu-ray Science and Technology Company Limited. One day in July of the same year, to express his thanks to Liu Maihai for care and continued help received from Liu Maihai in terms of project construction and payments, in a temporary office of Liu Maihai at the site of Hefei IRICO Blu-ray Science and Technology Company Limited in Anhui Province, Tan Zhijian, general manager of China Electronic Systems Engineering Third Construction Company Limited, gave Liu Maihai 100,000 yuan in cash.

  5. In the first half of 2011, Jiangsu Xiangrong Group Corporation Limited won a bid for the electronic equipment purchase and service contract of Hefei IRICO Blu-ray Science and Technology Company Limited. One night in August or September of the same year, for the care received from Liu Maihai in product payments and contract performance, Tang Deping, sales representative of Jiangsu Xiangrong Group Corporation Limited, gave Liu Maihai 200,000 yuan in cash at a tea show on the first floor of Hilton Hotel in Hefei City, Anhui Province.

  Subsequently, defendant Liu Maihai deposited a total of 400,000 yuan given by Miao Bin, Liu Tengteng, Tan Zhijian and Tang Deping into his own bank accounts on separate occasions and thereafter, transferred it to the stock account that he had opened with Shanghai Guangfa Securities, to purchase stocks and funds. On September 24, 2013, defendant Liu Maihai turned in the 400,000 yuan in ill-gotten money to judicial organs.


Scanned by CamScanner
IRI-CRT-00000544

CONFIDENTIAL

The above facts have been proven by testimony, cross-examination and evidence found in court:

(I) Witness testimony

1. Testimony of witness Liu Wendi (general manager of Shanghai Blu-Ray Science and Technology Company Limited and chairman of the board of directors of Hefei IRICO Blu-ray Science and Technology Company Limited)

It proved that in April 2010, as general manager of Shanghai Blu-ray Science and Technology Company Limited, he held consultations with Hefei New Station Zone Management Commission with regard to the establishment of Hefei Blu-Ray Science and Technology Company Limited. In June of that year, the parties executed a contract. On the morning of July 2 of the same year, at the office of Xing Daoqin, the original general manager of IRICO Group Corporation, a meeting was held. The meeting was hosted by Xing Daoqin, the original general manager of IRICO Group Corporation, and attended by Tao Kui, Chinese Communist Party committee secretary and vice general manager of IRICO Group Corporation; Zhang Shaowen, vice general manager of IRICO Group Corporation and chairman of the board of directors of Shanghai Blu-ray Science and Technology Company Limited; Liu Maihai, Fan Laiying and secretary Wang Haibo. At the meeting, Xing Daoqin announced the personnel arrangements for Hefei IRICO Blu-ray Science and Technology Company Limited: he would serve as the chairman of the board of directors, Lai Maihai would serve as the general manager, Fan Laiying would serve as the director of the finance department and Wang Haibo would serve as the office director.

After the meeting, in accordance with the spirit of this meeting, Shanghai Blu-ray Science and Technology Company Limited issued a written request for work instructions, requesting that IRICO Group Corporation recommend that he and Liu Maihai and Wang Yongcheng serve as directors of Hefei IRICO Blu-ray Science and Technology Company Limited. After the leadership of IRICO Group Corporation gave its approval in its reply, at a meeting of Hefei IRICO Blu-ray Science and Technology Company Limited, he was elected chairman of the board of directors. Thereafter, according to the personnel arrangements at the July 2, 2010 meeting of IRICO Group Corporation, he nominated Liu Maihai as general manager of Hefei IRICO Blu-Ray Science and Technology Company Limited. He only went through the procedures in accordance with Company Law.

2. Testimony of witnesses Fan Laiying (director of the finance department of Hefei IRICO Blu-Ray Science and Technology Company Limited), Wang Haibo (originally secretary of vice general manager Zhang Shaowen of IRICO Group Corporation and now director of office of Hefei IRICO Blu-ray Science and Technology Company Limited), Tao Kui (Chinese Communist Party committee secretary and vice general manager of IRICO Group Corporation) and Zhang Shaowen (vice general manager of IRICO Group Corporation and chairman of the board of directors of Shanghai Blu-ray Science and Technology Company Limited).

It proved that on the morning of July 2, 2010, a meeting was held at the office of Xing Daoqin, the original general manager of IRICO Group Corporation. The meeting was attended by Xing Daoqin, Tao Kui, Zhang Shaowen, Liu Wendi, Fan Laiying, Liu Maihai and Wang Haibo. At the meeting, Xing Daoqin announced the personnel arrangements for Hefei IRICO Blu-ray Science and Technology Company Limited: he would serve as the chairman of the board of directors, Lai Maihai would serve as the general manager, Fan Laiying would serve as the director of the finance department and Wang Haibo would serve as the office director. After the meeting, work started in accordance with the requirements of the leadership of IRICO Group Corporation. After Hefei IRICO Blu-Ray Science and Technology Company Limited was established on August 2, 2010, in accordance with the July 2, 2010 personnel arrangements by

6



IRI-CRT-00000545

CONFIDENTIAL

IRICO Group Corporation regarding the establishment of Hefei IRICO Blu-Ray Science and Technology Company Limited, the board of directors of Hefei IRICO Blu-Ray Science and Technology Company Limited that had been established would respectively hire the aforementioned personnel in accordance with the relevant provisions of Company Law.

    3. Testimony of witness Xue Xujie (vice deputy general manager of Hefei IRICO Blu-Ray Science and Technology Company Limited)

    It proved that during the preparation for the formation of Hefei IRICO Blu-Ray Science and Technology Company Limited the construction team had entered the site without his prior knowledge. He knew that the team had been called into the site by Liu Maihai because only he could decide the matter. At that time, the Chinese Communist Party Secretary of Hefei City would come over and inspect this project and a construction team would be needed to keep up appearances. After inspection, the construction machinery of Jiuye Construction Company Limited was not withdrawn and instead worked on a section of the road in the plant proper. Thereafter, Hefei IRICO Blu-Ray Science and Technology Company Limited requested permission from Hefei New Station Zone Management Commission for tender bids for part of the project and invited Jiuye Construction Company Limited to submit a tender bid. In the end, their company successfully won the bid for the relevant product. The decision to invite them to submit a tender bid must also have been made by Liu Maihai. At that time, the company had adequate funds and the progress of payments made to Jiuye Construction Company was rather smooth.

    4. Testimony of witness Liu Tengteng (legal representative of Xianyang Ketong Information Technology Company Limited).

    It proved that Xianyang Ketong Information Technology Company Limited was established in 2005, was originally named Xianyang Ketong Equipment Company Limited, and was subsequently renamed Xianyang Ketong Information Technology Company Limited. She and her husband Miao Bin are the shareholders. Since the establishment of the company, due to the fact that the company had no qualifications related to its scope of business operations, it had conducted all of its business through service subcontracting for No. 3 Construction and Engineering Corporation of Shaanxi Province and Jiuye Construction Company Limited. Subsequently, it was affiliated with the project contracts of these two companies. In October 2010, to express thanks to Liu Maihai for allowing the company to obtain project information, going into the site early to perform construction and inviting Jiuye Construction Company Limited, with which the company was affiliated, to participate in the tender bid, in Liu Maihai's office at Blue Whale Building, Hefei City, Anhui Province, Liu Tengteng, she gave 50,000 yuan in cash to Liu Maihai. The money given to Liu Maihai was designed to have him provide care during the construction contracting process for company, so that the company would successfully win the bid; it was also intended to express her thanks to him for his help and care, in the hope that he would continue to provide care in terms of projects. Liu Maihai had indeed provided care and she was only able to obtain a contract for the project by successfully winning the bid in the name of Jiuye Construction Company Limited.

    5. Testimony of witness Miao Bin (manager of Xianyang Ketong Information Technology Company Limited)

    It proved that Xianyang Ketong Information Technology Company Limited was established in 2005, was originally named Xianyang Ketong Equipment Company Limited, and was subsequently renamed Xianyang Ketong Information Technology Company Limited.



Scanned by CamScanner

CONFIDENTIAL

IRI-CRT-00000546

He and his wife Liu Tengteng are the shareholders. The company was affiliated with No. 3 Construction and Engineering Corporation of Shaanxi Province and Jiuye Construction Company Limited to obtain contracts for projects. To submit tender bids for the Hefei IRICO Blu-ray Plant road and steel structure truss projects, on separate occasions around August 2010 and March 2011, in Liu Maihai's office at Blue Whale Building, Hefei City and in the temporary office of Liu Maihai at the project site, he gave 20,000 yuan and 30,000 yuan in cash to Liu Maihai, for a total of 50,000 yuan. The money given to Liu Maihai was designed to further deepen their bond and express his thanks. He was general manager of Hefei IRICO Blu-Ray Science and Technology Company and all specific matters related to tender bids were implemented by him. Without his support, there would be uncertainty regarding the success of any tender bids, let alone any subsequent construction. Additionally, in the specific subsequent construction process, he would actively support and cooperate with his company and would never make things difficult.

6. Testimony of witness Yang Chunxia (cashier of Xianyang Ketong Information Technology Company Limited).

It proved that between July and December 2010, she had obtained approximately 480,000 yuan in cash for her boss Liu Tengteng. She did not know how she had disposed of the money.

7. Testimony of witnesses Wang Jiuhong (general manager of Jiuye Construction Company Limited Xian branch), Lei Jianqiang (employee of Jiuye Construction Company Limited Xian branch) and Zhang Quanwen (chairman of the board of directors of Jiuye Construction Company Limited Xian branch).

It proved that Xianyang Ketong Information Technology Company Limited was affiliated with Jiuye Construction Company Limited Xian branch and in 2010 and 2011, together with their company, they obtained the contracts for Hefei IRICO Blu-Ray Science and Technology Company plant proper road, outdoor truss steel structure, 102 and 103 electromechanical secondary projects.

8. Testimony of witnesses Tan Zhijian (general manager of China Electronic Systems Engineering Third Construction Company Limited) and Wu Dong (assistant to general manager of China Electronic Systems Engineering Third Construction Company Limited).

It proved that in 2011, their company became one of the electromechanical installation contractors for Hefei IRICO Blu-Ray Science and Technology Company Limited through tender bids for Hefei International Tender Bid Company and in stored the power station house, late cables, worked on a boiler building and a fire cistern, with a product subject matter of approximately more than 10 million yuan. During the construction process, after the two of them engaged in negotiations, one day in July or August 2011, in a temporary office of Liu Maihai at the site, Tan Zhijian gave Liu Maihai 100,000 yuan in cash. First, it was because during the process of construction by the company, the project had been going rather smoothly and general manager Liu had never made things difficult; second, during the process of construction, Liu had provided much support in terms of coordination and cooperation for the entire project; third, in terms of the settlement of progress payment for the project, he had never intentionally caused any delays or difficulties,

8

CONFIDENTIAL
IRI-CRT-00000547

thus guaranteeing the cash flow during construction; fourth, they wanted to properly handle the relationship further, so that the other party would think of their company in the future in case of any products. The 100,000 yuan given to Liu Maihai was a reserve fund withdrawn in installments from the finance department of the company. To use such a reserve fund, Tan Zhijian would only need the consent of the chairman of the board of directors and then collect it from the finance department. For reimbursement, he would handle the matter by striking a balance in the finances of the company through the use of multiple receipts for food and beverage, entertainment and travel expenses, etc. After being identified by Tan Zhijian, the investigators showed him photocopies of financial expense accounting vouchers of China Electronic Systems Engineering Third Construction Company Limited, that is, the expense accounting vouchers to be reimbursed by the finance department of the company. He had used them to offset the 100,000 yuan previously borrowed from the reserve fund from the finance department.

9. Testimony of witness Mei Li (clerk of China Electronic Systems Engineering Third Construction Company Limited).

It proved that after being identified thereby in 28 pages of material from the relevant documentary evidence for financial reimbursements by Tan Zhijian between July and December 2011, which had been shown to her by the investigators, and it was confirmed that the invoices had all been given to her by general manager Tan Zhijian. She took them for reimbursements by the finance department. These invoices were used to offset the reserve fund that Tan Zhijian had previously retrieved from the finance department.

10. Testimony of witness Tang Deping (sales representative of Jiangsu Xiangrong Group Corporation Limited).

It proved that in the second half of 2010, as sales representative of Xiangrong Group Corporation Limited, he sold electrical equipment, including tables and power distribution cabinets, etc., valued at 67 million yuan to Hefei IRICO Blu-Ray Science and Technology Company Limited. As of the first half of 2012, his company had fully performed its contractual obligations. One night in August or September 2011, he gave Liu Maihai 200,000 yuan in cash at a tea show on the first floor of Hilton Hotel in Hefei City. He gave Liu Maihai money mainly to receive extra care from him in payments, so as to make payments in a timely manner. Due to the fact that at that time, Hefei IRICO Blu-Ray Science and Technology Company Limited had not made payments to Xiangrong Group in a timely manner in accordance with the covenants in the contract, payments for goods could not be recovered, and that Xiangrong Group would deduct his commission, he was quite anxious and that was why he would give money to him. He thought that as long as Liu Maihai would accept the money, with his care, payments for goods to Xiangrong Group would not be an issue. After he gave money to Liu Maihai, the situation with payments would be better. The money was cash that he had borrowed from Xiangrong Group and was part of the commission that the company would pay him. It could be withdrawn in advance.

11. Testimony of witness Niu Hongmei (who is Liu Maihai's wife).

It proved that she was not sure of the household income or assets of the family as well as the specific circumstances of the purchase by Liu Maihai of stocks and funds. Liu Maihai had never mentioned the specifics to her.

(II) Documentary evidence

1. Shaanxi Province People's Procuratorate Letter to Hand over Leads on Liu Maihai's Suspected Involvement in Job Related Crimes and Xianyang Municipal People's Procuratorate https://welocalize.sharefile.com/d-sc6108d5abd84eaf8a Case.

9



Scanned by CamScanner
IRI-CRT-00000548

They proved that on July 30, 2013, the Shaanxi Province People's Procuratorate turned over leads regarding Hefei IRICO Blu-ray Company Limited former general manager Liu Maihai's suspected involvement in job-related crimes to the Xianyang Municipal People's Procuratorate for an investigation. On August 5, 2013, the Xianyang Municipal People's Procuratorate file the case and launched an investigation into Liu Maihai's acceptance of bribes.

2. The enterprise legal person business license and certificate of institutional code of IRICO Group Corporation, the industry and commerce materials of Shanghai Blu-ray Science and Technology Company Limited, and the industry and commerce materials of Hefei IRICO Blu-Ray Science and Technology Company Limited.

They proved that IRICO Group Corporation is an enterprise legal person and its economic nature is ownership by whole people. Shanghai Blu-ray Science and Technology Company Limited is an enterprise legal person. It was established on April 12, 2000 and the type of company is a limited liability company (a domestic joint venture). Of its registered capital, the state owns 61.2414% of the shares. IRICO Group Corporation is one of its shareholders, and holds 43.1691% of its shares. Of the State-owned companies, privately owned companies and natural person shareholders hold 56.8309% of shares. Hefei IRICO Blu-ray Science and Technology Company Limited is a limited liability company. It was established on August 2, 2010. Shanghai Blu-Ray Science and Technology Company Limited holds 54.55% of its shares and Hefei Xincheng State-Owned Asset Operations Company Limited (a wholly State-owned company) holds 45.45% of its shares.

3. The identification materials and personal files of Liu Maihai, the bylaws of Hefei IRICO Blu-Ray Science and Technology Company Limited, the resolution of the first meeting of the first board of directors, the labor contract executed by and between IRICO Group Electronics Company Limited and defendant Liu Maihai on November 6, 2008, the Notice Regarding Termination of Liu Maihai's Labor Contract dated December 22, 2010, the Letter Regarding Secondment of Comrade Liu Maihai dated August 13, 2010 and the IRICO Group Electronics Company Limited Letter Requesting Employee Transfer dated September 9, 2010.

These proved that on November 6, 2008, defendant Liu Maihai executed a labor contract with IRICO Electronics Company Limited. Between July 1, 2010 and October 1, 2010, Shanghai Blu-ray Science and Technology Company Limited sent a letter to IRICO Group Corporation to borrow defendant Liu Maihai for work at its company. On September 9, 2010, Shanghai Blu-ray Science and Technology Company Limited sent the Letter Requesting Employee Transfer to IRICO Group Corporation, alleging that due to the need for and expansion of the Hefei LED project, it requested a transfer of Liu Maihai to work for Shanghai Blu-Ray Science and Technology Company Limited. On November 22, 2010, IRICO Group Electronics Company Limited issued the Notice of Terminating the Labor Contract of Liu Maihai, stating that the company had terminated the labor contract with defendant Liu Maihai in October 2010. On July 23, 2010, Hefei IRICO Blu-Ray Science and Technology Company Limited held the first meeting of the first board of directors, at which it adopted a resolution. Upon nomination by chairman of the board of directors Liu Wendi, the board of directors voted to hire Liu Maihai as general manager of the company for a term of three years.

10

Scanned by CamScanner

On August 2, 2010, Hefei IRICO Blu-Ray Science and Technology Company Limited registered its establishment and executed a labor contract with defendant Liu Maihai on January 1, 2011.

    4. IRICO Group Corporation written request for work instructions

    It proved that on August 16, 2010, a written request for work instructions, Report Regarding Appointments of Directors and Supervisors to Hefei IRICO Blu-Ray Science and Technology Company Limited, was submitted by the Shanghai Blu-Ray Science and Technology Company Limited to the IRICO Group Corporation human resources department, stating that they "nominate Liu Wendi, Liu Maihai and Wang Yongcheng as directors of Hefei Blu-ray Company (through an election at the Hefei Blu-ray employee representative meeting, Liu Maihai will serve as employee director of Hefei Blu-ray Company)," and the opinion of final instruction was agreed (Xing Daoqin was the legal representative of IRICO Group Corporation).

    5. Fan Laiying's meeting notes

    These proved that on July 2, 2010, IRICO Group Corporation decided at a meeting that Liu Maihai would serve as general manager of the Hefei Blu-ray base (LED). Fan Laiying's notes on the meeting kept a record of it.

    6. Hefei IRICO Blu-Ray Science and Technology Company Limited Document of Request for Instructions and Reply Documents from Hefei New Station Zone Bureau of Economic and Trade Development and New Station Zone Management Commission.

    These proved that in July and August 2010, Hefei IRICO Blu-Ray Science and Technology Company Limited requested permission from the New Station Zone Management Commission to invite tender bids for certain LED project construction projects. The New Station Zone Management Commission replied with its consent.

    7. The industry and commerce materials on Jiuye Construction Company Limited, the industry and commerce materials on Xianyang Ketong Information Technology Company Limited, the Contract Tender Bid Memorandum and Form of Examination and Approval of Hefei Blu-Ray Science and Technology Company Limited, the Aggregated Table of Information on the Hefei Blu-Ray Construction Project Contract Implementation by Jiuye Construction Company Limited, etc. and the itemized books of Jiuye Construction Company Limited.

    These proved that Jiuye Construction Company Limited is a limited liability company. Its legal representative is Zhang Quanwan. Xianyang Ketong Information Technology Company Limited is a limited liability company. Its legal representative is Liu Tengteng and its shareholders are Liu Tengteng and Miao Bin. Between 2010 and 2012, on behalf of Jiuye Construction Company Limited, Liu Tengteng participated in the road and steel structure project tender bids of Hefei Blu-Ray Science and Technology Company Limited and won the bids. On April 11, 2011 and May 7, 2012, Xianyang Ketong Information Technology Company Limited executed construction subcontracts with Jiuye Construction Company Limited

CONFIDENTIAL

Scanned by CamScanner
IRI-CRT-00000550

regarding the Hefei IRICO LED project road engineering, the IRICO Hefei Photovoltaic Company Limited road drainage project and to the steel structure project of Hefei IRICO Blu-Ray Science and Technology, etc. As of June 30, 2013, the contract amount already paid by Hefei IRICO Blu-Ray Science and Technology Company Limited was 26244008.21 yuan, which was a payment percentage of 83.68%. Subsequently, Jiuye Construction Company Limited transferred the funds into the account of Xianyang Ketong Information Technology Company Limited or the account of its designated material supplier. The relevant documents have the signature of Liu Maihai, general manager of Hefei IRICO Blu-ray Science and Technology Company Limited.

8. Itemized versions of Liu Tengteng's accounts with China Merchants Bank Xianyang branch and Bank of Construction Xianyang branch and account information regarding cash withdrawals by Xianyang Ketong Information Technology Company Limited in 2010 for Liu Tengteng.

These proved that on July 8, 2010, Liu Tengteng's account with Bank of Construction Xianyang branch made a withdrawal by transfer of 50,000 yuan. From July to December 2010, Xianyang Ketong Information Technology Company Limited withdrew approximately 480,000 yuan for Liu Tengteng.

9. The industry and commerce materials of China Electronic Systems Engineering Third Construction Company Limited, the contract tender bid documents, contracts, contract implementation information, itemized accounting and payment vouchers of Hefei IRICO Blu-Ray Science and Technology Company Limited.

These proved that China Electronic Systems Engineering Third Construction Company Limited is a limited liability company. Tan Zhijian is its legal representative and general manager. On April 8, March 1 and November 21, 2011, China Electronic Systems Engineering Third Construction Company Limited and Hefei IRICO Blu-ray Science and Technology Company Limited executed an electromechanical installation and construction contract regarding the Hefei LED industrialization project exterior electromechanical installation project, the 301# plant building electromechanical installation project and the 401# office building electromechanical installation project. The total amount of the contract was 27478760.36 yuan. The total amount received was 26925194.99 yuan, which was a payment percentage of 97.99%. The relevant documents have the signature of Liu Maihai, general manager of Hefei IRICO Blu-ray Science and Technology Company Limited.

10. Photocopies of airline tickets and high-speed train tickets and itemized reimbursements for Tan Zhijian between July and December 2011.

These proved that between July and December 2011, Tan Zhijian received reimbursements for office expenses, entertainment expenses and travel expenses totaling 137459.05 yuan from China Electronic Systems Engineering Third Construction Company Limited.

11. The industry and commerce materials of Xiangrong Group, the identification information of Tang Deping, the authorized sales contract, the purchase contracts, the tender bid documents and contracts of Hefei IRICO Blu-Ray Science and Technology Company Limited, itemized internal accounts, itemized information on contract information and itemized payments of Xiangrong Group, etc.

These proved that Xiangrong Group Corporation is a limited liability company. Its legal representative is Tang Chongguo.

12



Scanned by CamScanner
IRI-CRT-00000551

CONFIDENTIAL

In 2010 and 2011, Tang Deping and Xiangrong Group executed an authorized sales contract, whereby Tang Deping would engage in sales work as an external salesman for Xiangrong Group. On March 30 and May 31, 2011 and May 31, 2012, through tender bids, Tang Deping executed an electrical equipment purchase and services contract and exterior bridge frame purchase contract with Hefei IRICO Blu-Ray Science and Technology Company. As of January 28, 2013, the contract amount already paid by Hefei IRICO Blu-Ray Science and Technology Company was 72807710.84 yuan, which was a payment percentage of 90.65%. The relevant documents have the signature of Lai Maihai, general manager of Hefei IRICO Blu-Ray Science and Technology Company. In August 2011, Tang Deping borrowed a total of 240200 yuan from Xiangrong Group.

12. Itemizations of Liu Maihai's bank accounts with Bank of Construction Hefei Chengdong branch, Hefei Jiashan Road subbranch, CITIC Xianyang subbranch and Bank of China Shanghai Ziwei Road branch, and account opening materials and itemizations of Liu Maihai's transactions with Guangfa Securities.

These proved that between December 5, 2010 and August 4, 2011, Liu Maihai deposited a total of 140,000 yuan into his account with Bank of Construction Hefei Chengdong branch; between March 27, 2011 and January 15, 2012, Liu Maihai deposited a total of 777200 yuan into his account with Hefei Jiashan Road subbranch; between April 6 and May 10, 2012, Liu Maihai's CITIC bank account received incoming interbank transfers totaling 1343000 yuan. Between May 7 and August 9, 2012, this account made multiple applications and purchases of funds and made multiple interbank transfers to his Bank of China account totaling 580,000 yuan; between March 26 and August 26, 2013, Liu Maihai's Guangfa Securities account number made multiple stock purchases and sales, with a total transaction amount of 9639659.12, with a total amount of 665777.28 yuan in receipts and payments.

13. Receipts for payments. These proved that on September 24, 2013, Liu Maihai refunded 400,000 yuan of the money involved in the case to the People's Procuratorate of Xianyang City, Shaanxi Province.

(III) A compact disc with defendant Liu Maihai's statements and simultaneous audio and video on it

This proved that in early July 2010, at the headquarters of IRICO Group Corporation, general manager of the group Xing Daoqin, Communist Party Secretary Tao Kui, and chairman of the board of directors Zhang Shaowen of Shanghai Blu-ray Science and Technology Company Limited talked with him and asked him to take charge of the formation of Hefei IRICO Blu-Ray Science and Technology Company Limited. Thereafter, at a meeting, Xing Daoqin, general manager of IRICO Group Corporation, announced that he would serve as general manager of Hefei IRICO Blu-Ray Science and Technology Company Limited. This was equivalent to a recommendation. After the meeting, the decision was made in accordance with the discussion and arrangements made at the meeting of IRICO Group Corporation, whereby he went to Hefei to form Hefei IRICO Blu-Ray Science and Technology Company Limited. After the establishment of the company, at a meeting of the first board of directors, Liu Wendi nominated him for the position of general manager, which was adopted. His specific duties as general manager of Hefei IRICO Blu-Ray Science and Technology Company Limited were: Under the leadership of the board of directors, complete the establishment of a team of company personnel,

13

Scanned by CamScanner

preparations for the company and preliminary preparations for product construction. Between the second half of 2010 and the second half of 2011, he took advantage of his position as general manager of Hefei IRICO Blu-Ray Science and Technology Company Limited and accepted a total of 100,000 yuan in cash from legal representative Liu Tengteng of Xianyang Ketong Information Technology Company Limited and its general manager Miao Bin, who are a married couple. The reason that Miao Bin and Liu Tengteng gave him money was simply because he was general manager of Hefei IRICO Blu-Ray Science and Technology Company Limited and would have a certain impact on their company in terms of tender bids, construction and progress payments for the project, etc. They wanted him to give them care in these aspects, so that as general manager, he would give them care wherever he could in his work. He accepted 200,000 yuan in cash from sales representative Tang Deping of Jiangsu Xiangrong Group Corporation. Tang Deping surely gave him money in the hope that, as general manager of Hefei IRICO Blu-Ray Science and Technology Company Limited, he would do his best to coordinate the relationships among various parties, help their company successfully fulfill the contracts and successfully receive payments for services. He accepted 100,000 yuan in cash from general manager Tan Zhijian of China Electronic Systems Engineering Third Construction Company Limited. Tan Zhijian surely give him money in the hope that, in his work, he would give China Electronic Systems Engineering Third Construction Company Limited care and help in terms of civilized construction, safe construction, construction progress and project payments, etc. In these aspects, he had never intentionally made things difficult for them and had not delayed their project progress payments. The 400,000 yuan was deposited with banks on separate occasions and then transferred from the banks to the stock market for stock speculation.

This court holds that as a worker of a non-State-owned company, defendant Liu Maihai took advantage of his position, illegally accepted 400,000 yuan in property from others and sought gains for others. The amount is large and his actions have constituted crimes of acceptance of bribes by a non-State worker. After defendant Liu Maihai was brought to justice, he was able to truthfully confess to his crimes and is entitled to a lighter penalty in accordance with law. In view of the fact that he voluntarily pled guilty and turned in all the ill-gotten money, a lighter penalty will be given as appropriate.

Regarding the defense opinion submitted by the defenders of defendant Liu Maihai that defendant Liu Maihai did not meet the subject elements of a State worker and that defendant Liu Maihai should be perceived for criminal liability as a non-State worker, it has been found that IRICO Group Corporation is a State-owned company and a stock participating company of Shanghai Blu-Ray Science and Technology Company Limited, in which it holds 43.1691% of shares. Shanghai Blu-Ray Science and Technology Company Limited is a non-State-owned company and the holding company of Hefei IRICO Blu-Ray Science and Technology Company Limited, in which it holds 54.55% of shares. In accordance with the provisions of Clause 1 of Article 6 of Supreme People's Court and the Supreme People's Procuratorate Notice of Opinion on the Handling of Several Issues in the Specific Application of Law to Job-Related Criminal Cases in State-Contributed Enterprises, "Personnel who engage in public business in a State controlled company, a State participating stock company or their branches upon nomination, recommendation, appointment and approval by a State organ, State-owned company, enterprise or institutional unit shall be determined to be State workers. The specific appointing agency and procedures shall not affect the determination of State workers." In the present case, as a State-owned company, IRICO Group Corporation

14

Scanned by CamScanner

CONFIDENTIAL                                        IRI-CRT-00000553

does not control or participate in non-State-owned Hefei IRICO Blu-ray Science and Technology Company Limited. Hefei IRICO Blu-ray Science and Technology Company Limited is not a holding stock participating company of State-owned IRICO Group Corporation or its branch. Defendant Liu Maihai held the position of general manager of Hefei IRICO Blu-ray Science and Technology Company Limited. He was not a person sent by a State-owned company to engage in public business at a State-controlled, participating company or its branch and is not a State worker. He should be deemed a non-State worker. Therefore, the defense opinion of the defenders is sustainable and is admitted by this court.

Regarding the defense opinion by the defenders of Liu Maihai that allegations of crimes 3, 4 and 5 by the public prosecution organ are not tenable and that defendant Liu Maihai did not promise, implement and did seek gains for others and neither did he knowingly perform matters entrusted by others, he did not have the intent or engage in the action of seeking gains for others and did not meet the objective elements of seeking gains for others in a crime of acceptance of bribes. It has been found that defendant Liu Maihai's statements and testimony of witnesses Liu Tengteng, Miao Bin, Tan Zhijian and Tang Deping proved that as general manager of Hefei IRICO Blu-ray Science and Technology Company Limited, defendant Liu Maihai objectively knew that companies that Miao Bin, Tan Zhijian and Tang Deping were affiliated with were seeking gains in the projects that they contracted for and sought gains for the companies with which Miao Bin, Tan Zhijian and Tang Deping were affiliated. During and after the occurrence of these facts, he accepted property given by Miao Bin, Tan Zhijian and Tang Deping, which constituted actions of acceptance of bribes. The facts here are clear, the evidence is reliable and adequate and is sufficient for a finding. Therefore, the defense opinion of the defenders is not tenable and has not been admitted by this court.

Regarding the defense opinion by the defenders of defendant Liu Maihai that allegations of crimes 4 and 5 in the complaint, during the first interrogation by the investigative organ, defendant Liu Maihai took the initiative in confessing and truthfully stated facts of his crimes, whereby he accepted 100,000 yuan from Tan Zhijian and 200,000 yuan from Tang Deping, at a time when the investigative organ did not have information regarding the bribes offered by Tan Zhijian and Tang Deping. His actions should be found to be surrendering himself and he is entitled to a lighter penalty for his actions in accepting these two bribes. It has been found that after having been subjected to the first interrogation by the investigative organ, defendant Liu Maihai took the initiative in confessing truthfully his crimes of accepting 100,000 yuan from Tan Zhijian and 200,000 yuan from Tang Deping in bribes, which is the same kind of crime as his acceptance of the bribes from Liu Tengteng of which the judicial organ already had knowledge. In accordance with the provisions of the Supreme People's Court Interpretation of Several Issues in the Specific Application of Law to the Handling of Surrendering and Meritorious Performance, in the event that crimes confessed to by a criminal suspect who has been subject to enforcement measures belong to the same kind of crime committed thereby and of which the judicial organ already has knowledge, this does not constitute surrender. Therefore, this defense opinion by the defenders is not tenable and has not been admitted by this court. However, the same kind of crime of acceptance of bribes confessed to thereby, of which the judicial organ still had no knowledge, was relatively more serious and, in accordance with law, a lighter penalty shall be given.

Regarding the defense opinion by the defenders that Liu Maihai has actively paid full restitution for the ill-gotten money, that he had a good attitude by pleading guilty and is entitled to a lighter penalty,

15

Scanned by CamScanner

CONFIDENTIAL

IRI-CRT-00000554

it has been found to be true and has been admitted by this court.

In summary of the above, in accordance with the provision of Clause 1 of Article 163, and Clause 3 of Article 67 of the Criminal Law of the People's Republic of China, the following judgment is hereby rendered:

Defendant Liu Maihai has committed the crime of acceptance of bribes as a non-State worker and is hereby sentenced to a term of six years' imprisonment.

(The term of imprisonment shall begin to run from the execution of the sentence. In the event of any detention prior to execution of the sentence, each day under detention shall offset one day of the term of imprisonment, that is, from August 6, 2013 to August 5, 2019.)

In case of disagreement with this judgment, within 10 days from the second day after receipt of this judgment, the defendant may through this court or directly appeal to Xianyang Municipal Intermediate People's Court of Shaanxi Province. In the event that such an appeal is filed in writing, the defendant shall submit one original copy and two duplicate copies of the appeal.

Presiding judge: Zhang Yan

Judge: Chen Fangni

Acting judge: Liang Yuqing

[seal: Qindu District People's Court, Xianyang City]

April 16, 2014

This copy has been verified to be consistent with the original copy

Clerk: Wei Hua

16

Scanned by CamScanner

CONFIDENTIAL                                                IRI-CRT-00000555

陕西省咸阳市秦都区人民法院

# 刑事判决书

（2013）咸秦刑初字第 00345 号

　　公诉机关咸阳市秦都区人民检察院。

　　被告人刘麦海，男，1965 年 3 月 29 日出生于陕西省华县，身份证号：610402196503297519，汉族，研究生文化程度，原系合肥彩虹蓝光科技有限公司总经理，住陕西省咸阳市彩虹 1 路 1 号内 149 号楼 6 单元 1 层 1 号。因本案于 2013 年 8 月 6 日被刑事拘留，同年 8 月 23 日被逮捕。现羁押于咸阳市秦都区看守所。

　　辩护人赵会斌，陕西宇斌诚律师事务所律师。

　　辩护人王勇，陕西恒济律师事务所律师。

　　咸阳市秦都区人民检察院以咸秦检刑诉（2013）259 号起诉书指控被告人刘麦海犯受贿罪，于 2013 年 11 月 13 日向本院提起公诉。本院受理后，依法组成合议庭，适用普通程序于 2013 年 12 月 16 日公开开庭审理了本案。咸阳市秦都区人民检察院指派检察员仇智丽依法出庭支持公诉，被告人刘麦海及其辩护人赵会斌、王勇到庭参加了诉讼。经咸阳市中级人民法院批准，本案延长审限三个月，现已审理终结。

　　咸阳市秦都区人民检察院指控：

　　1、2010 年 8 月，被告人刘麦海在担任合肥彩虹蓝光科技有限公司总经理期间，咸阳科通信息技术有限公司经理苗滨为了承揽合肥彩虹蓝光科技有限公司有关项目工程，在安徽省合肥市蓝鲸大厦刘麦海办公室内，送给刘麦海现金 2 万元。此后，刘麦海在未经招标的情况下，以为了迎接检查为由，让苗滨的施工队伍先行进场施工。

1

 扫描全能王 扫描创建

CONFIDENTIAL　　　　　　　　　　　　　　　IRI-CRT-00000540

2、2010 年 10 月，被告人刘麦海在担任合肥彩虹蓝光科技有限公司总经理期间，咸阳科通信息技术有限公司法定代表人刘腾腾为了感谢刘麦海让其施工队伍提前进场施工和在承揽工程方面继续得到刘麦海的照顾，在安徽省合肥市蓝鲸大厦刘麦海办公室内，送给刘麦海现金 5 万元。此后，在邀请招标时，刘麦海将咸阳科通信息技术有限公司挂靠的九冶建设有限公司作为邀请对象并得以中标。

3、从 2010 年下半年至 2011 年初，被告人刘麦海在担任合肥彩虹蓝光科技有限公司总经理期间，咸阳市科通信息技术有限公司用挂靠的九冶建设有限公司资质，在合肥彩虹蓝光科技有限公司承揽了道路及钢结构工程。2011 年 3 月，为了对刘麦海表示感谢和在工程投标、施工、付款方面继续得到刘麦海的照顾，苗滨在安徽省合肥市彩虹蓝光科技有限公司工地刘麦海的临时办公室内，送给刘麦海现金 3 万元。

4、2011 年 3、4 月份，被告人刘麦海在担任合肥彩虹蓝光科技有限公司总经理期间，中国电子系统工程第三建设有限公司承揽了合肥彩虹蓝光科技有限公司的机电安装工程。同年 7 月份的一天，为了感谢刘麦海在工程施工及付款等方面给予的照顾和继续得到刘麦海的帮助，中国电子系统工程第三建设有限公司总经理谭志坚在安徽省合肥市彩虹蓝光科技有限公司工地刘麦海的临时办公室内，送给刘麦海现金 10 万元。

5、2011 年上半年，被告人刘麦海在担任合肥彩虹蓝光科技有限公司总经理期间，江苏向荣集团有限公司中标了合肥彩虹蓝光科技有限公司的电气设备采购及服务合同。同年 8、9 月份的一天晚上，为了在工程付款及合同履行中得到刘麦海的照顾，江苏向荣集团有限公司销售代表唐德平在安徽省合肥市希尔顿酒店一楼茶秀内，送给刘麦海现金 20 万元。此后，在合同付款过程中，刘麦海对江苏向荣集团公司的货款没有故意拖延或刁难。

被告人刘麦海将收受苗滨、刘腾腾、谭志坚、唐德平所送的共计 40 万元陆续存入自己的银行账户，后又转账至自己在上海广发证券所开立的股票账户，用于购买股票和基金(已退回)

2

 由 扫描全能王 扫描创建

CONFIDENTIAL  IRI-CRT-00000541

　　针对上述指控，公诉机关向法庭提举了证人证言、书证、被告人供述和辩解等证据。公诉机关认为，被告人刘麦海身为国有公司委派到非国有公司从事公务的国家工作人员，利用职务上的便利，非法收受他人财物 40 万元，为他人谋取利益，其行为触犯了《中华人民共和国刑法》第三百八十五条、第三百八十六条，应当以受贿罪追究其刑事责任。故提请本院依法判处。

　　被告人刘麦海对起诉书指控的犯罪事实无异议，并自愿认罪。

　　被告人刘麦海的辩护人辩护称：一、被告人刘麦海不符合国家工作人员的主体要件，对被告人刘麦海应当以非国家工作人员受贿罪追究刑事责任。最高人民法院《关于在国有资本控股、参股的股份有限公司中从事管理工作的人员利用职务便利非法占有本公司财物如何定罪问题的批复》中规定：在国有资本控股、参股的股份有限公司中从事管理工作的人员，除受国家机关、国有公司、企业、事业单位委派从事公务的以外，不属于国家工作人员。本案中彩虹集团在上海蓝光公司的持股比例是 43.16%，民营企业和自然人持股比例为 56.84%；上海蓝光在合肥彩虹蓝光科技有限公司的持股比例是 54.55%，上海蓝光公司向合肥彩虹蓝光科技有限公司的出资是用自己的法人财产出资，并不是彩虹集团出资，不能将上海蓝光公司对合肥彩虹蓝光公司的控股视为彩虹集团的控股。所以被告人刘麦海任职的合肥彩虹蓝光科技有限公司不是国有企业，也不是国家出资企业。刘麦海没有经过上海蓝光公司或彩虹集团公司提名、推荐、任命、批准或委派，2008 年 11 月 6 日，被告人刘麦海与彩虹电子股份有限公司签订《劳动合同》，2010 年 7 月 1 日被借调到上海蓝光公司，2010 年 11 月 22 日与彩虹电子股份有限公司解除了《劳动合同》。2011 年 1 月 1 日与合肥彩虹蓝光科技有限公司签订了《劳动合同》，并于同日开始在合肥市劳动和社会保障局缴纳各项社保，之后被合肥蓝光公司职工代表大会选举为职工董事，代表职工行使决策，并不是代表国有控股、参股公司从事公务。综上，被告人刘麦海不属于经国家机关、国有公司、企业、事业单位提名、推荐、任命、批准

3

由 扫描全能王 扫描创建

等，在国有控股、参股及其分支机构中从事公务的人员。二、公诉机关指控的列罪三、四、五的指控不能成立。被告人刘麦海既没有承诺、实施和实现为他人谋取利益，也不符合明知他人有具体的请托事项，不具有为他人谋取利益的意图及行为，不符合受贿罪为他人谋取利益的客观要件。三、关于起诉书指控的列罪四、五，被告人刘麦海在侦查机关第一次讯问时，在侦查机关没有掌握任何关于谭志坚和唐德平行贿信息的情况下，主动交代并如实陈述了收受谭志坚 10 万元和唐德平 20 万元的犯罪事实，其行为应当认定为自首，应当对这两笔受贿行为减轻处罚。四、刘麦海积极退赔全部赃款，认罪态度好，应当从轻处罚。

经审理查明：

彩虹集团公司系国有公司，在上海蓝光科技有限公司的股份中，彩虹集团公司的持股比例为 43.1691%，其他国有公司、民营企业和自然人股东持股比例为 56.8309%。2010 年 8 月 2 日，上海蓝光科技有限公司与合肥鑫城国有资产经营有限公司共同出资设立合肥彩虹蓝光科技有限公司，其中上海蓝光科技有限公司占注册资本 54.55%，合肥鑫城国有资产经营有限公司占注册资本 45.45%，法定代表人为刘文弟。公司类型为其他有限责任公司。

2008 年 11 月 6 日，被告人刘麦海与彩虹集团电子股份有限公司签订《劳动合同》。2010 年 8 月 13 日，上海蓝光科技有限公司向彩虹集团电子股份有限公司致《函》借调被告人刘麦海到其公司工作，从 2010 年 7 月 1 日至 2010 年 10 月 1 日。2010 年 9 月 9 日，上海蓝光科技有限公司向彩虹集团电子股份有限公司致《员工商调函》，商调被告人刘麦海到其公司工作。2010 年 11 月 22 日，彩虹集团电子股份有限公司下发《关于解除刘麦海劳动合同的通知》，称公司已于 2010 年 10 月与被告人刘麦海解除劳动合同。2010 年 7 月 23 日合肥彩虹蓝光科技有限公司召开第一届董事会第一次会议决议，经董事长刘文弟提名，董事会表决通过决定聘任刘麦海担任该公司总经理，任期三年，并于 2011 年 1 月 1 日与被告人刘麦海签订了《劳动合同》。2010 年 8 月至 2011 年 9 月期间，被告人刘麦

4

由 扫描全能王 扫描创建

CONFIDENTIAL                                                                                          IRI-CRT-00000543

海收受他人财物共计 40 万元，具体事实如下：

1、2010 年 8 月，咸阳科通信息技术有限公司经理苗滨为了承揽合肥彩虹蓝光科技有限公司有关项目工程，在安徽省合肥市蓝鲸大厦刘麦海办公室内，送给刘麦海现金 2 万元。此后，刘麦海让苗滨的施工队伍先行进场施工。

2、2010 年 10 月，咸阳科通信息技术有限公司法定代表人刘腾腾为了感谢刘麦海让其施工队伍提前进场施工和在承揽工程方面继续得到刘麦海的照顾，在安徽省合肥市蓝鲸大厦刘麦海办公室内，送给刘麦海现金 5 万元。此后，在邀请招标时，刘麦海将咸阳科通信息技术有限公司挂靠的九冶建设有限公司作为邀请对象并得以中标。

3、从 2010 年下半年至 2011 年初，咸阳市科通信息技术有限公司用挂靠的九冶建设有限公司资质，在合肥彩虹蓝光科技有限公司承揽了道路及钢结构工程。2011 年 3 月，为了对刘麦海表示感谢和在工程投标、施工、付款方面继续得到刘麦海的照顾，苗滨在安徽省合肥市彩虹蓝光科技有限公司工地刘麦海的临时办公室内，送给刘麦海现金 3 万元。

4、2011 年 3、4 月份，中国电子系统工程第三建设有限公司承揽了合肥彩虹蓝光科技有限公司的机电安装工程。同年 7 月份的一天，为了感谢刘麦海在工程施工及付款等方面给予的照顾和继续得到刘麦海的帮助，中国电子系统工程第三建设有限公司总经理谭志坚在安徽省合肥市彩虹蓝光科技有限公司工地刘麦海的临时办公室内，送给刘麦海现金 10 万元。

5、2011 年上半年，江苏向荣集团有限公司中标了合肥彩虹蓝光科技有限公司的电气设备采购及服务合同。同年 8、9 月份的一天晚上，为了在工程付款及合同履行中得到刘麦海的照顾，江苏向荣集团有限公司销售代表唐德平在安徽省合肥市希尔顿酒店一楼茶秀内，送给刘麦海现金 20 万元。

后被告人刘麦海将收受苗滨、刘腾腾、谭志坚、唐德平所送的共计 40 万元陆续存入自己的银行账户，后又转账至自己在上海广发证券所开立的股票账户，用于购买股票和基金。2013 年 9 月 24 日，被告人刘麦海向司法机关上缴赃款 40 万元。

5

 由 扫描全能工 扫描创建

CONFIDENTIAL                                    IRI-CRT-00000544

上述事实，有以下经当庭举证、质证、认定的证据证实：

（一）证人证言

1、证人刘文弟（系上海蓝光科技有限公司总经理兼合肥彩虹蓝光科技有限公司董事长）的证言。

证明 2010 年 4 月份，其作为上海蓝光科技有限公司总经理与合肥新站区管委会就设立合肥彩虹蓝光科技有限公司进行了磋商。当年 6 月份，双方签订了合同。同年 7 月 2 日上午，在彩虹集团公司原总经理邢道钦的办公室召开了会议，会议由邢道钦主持，参加会议的有其和彩虹集团公司原总经理邢道钦、彩虹集团公司党委书记兼副总经理陶魁、彩虹集团公司副总经理兼上海蓝光科技有限公司董事长张少文、刘麦海、樊来盈以及秘书王海波。在会议上，邢道钦宣布了合肥彩虹蓝光科技有限公司的人员安排：由其担任董事长，刘麦海担任总经理，樊来盈担任财务部部长，王海波担任办公室主任。

会后，根据这次会议精神，上海蓝光科技有限公司出具书面工作请示单，请彩虹集团公司将其和刘麦海、汪勇城推荐为合肥彩虹蓝光科技有限公司董事。彩虹集团公司领导批复同意后，在合肥彩虹蓝光科技有限公司董事会上，选举其为董事长。随后，其又依据彩虹集团公司 2010 年 7 月 2 日会议上的人事安排，提名刘麦海担任合肥彩虹蓝光科技有限公司总经理。其只是按照公司法走了个程序而已。

2、证人樊来盈（系合肥彩虹科技有限公司财务部部长）、王海波（原系彩虹集团公司副总经理张少文的秘书，现任合肥彩虹蓝光科技有限公司办公室主任）、陶魁（彩虹集团公司党委书记兼副总经理）、张少文（彩虹集团公司副总经理兼上海蓝光科技有限公司董事长）的证言。

证明 2010 年 7 月 2 日上午，在彩虹集团公司原总经理邢道钦的办公室召开了会议，参加会议的有邢道钦、陶魁、张少文、刘文弟、樊来盈、刘麦海、王海波。在会议上，邢道钦宣布了合肥彩虹蓝光科技有限公司的人员安排：刘文弟担任董事长，刘麦海担任总经理，樊来盈担任财务部部长，王海波担任办公室主任。会后按照彩虹集团公司领导的要求开始工作。2010 年 8 月 2 日合肥彩虹蓝光科技有限公司成立后，根据 2010

6

由 扫描全能王 扫描创建

IRI-CRT-00000545

年7月2日彩虹集团公司关于成立合肥彩虹蓝光科技有限公司的人事安排，由成立后的合肥彩虹蓝光科技有限公司董事会依照公司法相关规定分别对以上人员进行了聘任。

3、证人薛旭杰（系合肥彩虹蓝光科技有限公司副总经理）的证言。

证明在合肥彩虹蓝光科技有限公司筹建过程中，在其不知情的情况下，看到有施工队伍进场，其知道是刘麦海叫进场的，只有他能决定这事。当时合肥市委书记要来检查这个项目，需要有个工队进驻撑场面。检查以后，九冶建设有限公司的施工机械并没有撤离，而是干了一段厂区道路。此后，合肥彩虹蓝光科技有限公司报请合肥新站区管委会同意，对部分工程进行了邀请招标，并将九冶建设有限公司作为被邀请单位，最终他们公司成功中标相关工程。邀请他们招标肯定也是刘麦海确定的。当时公司资金充裕，对九冶公司按进度付款过程比较顺利。

4、证人刘腾腾（系咸阳科通信息技术有限公司法定代表人）的证言。

证明咸阳科通信息技术有限公司成立于2005年，原名称为咸阳科通设备有限公司，后更名为咸阳科通信息技术有限公司。其和丈夫苗滨系股东。自公司成立以来，因为公司没有业务范围相关的资质，开展业务都是通过陕西省第三建筑工程公司和九冶建设有限公司劳务分包来完成的。之后，挂靠这两家公司承揽工程。2010年10月其为了感谢刘麦海让其公司得到工程信息、提前进入现场施工、将其公司挂靠的九冶建设有限公司作为邀请对象参加邀请招标等，在安徽省合肥市蓝鲸大厦刘麦海办公室内送给刘麦海现金5万元。给刘麦海送钱是想让他在其公司承揽施工过程中给予关照，让其公司中标、顺利承揽到项目工程；也有对他的帮助照顾表示感谢的意思，希望以后他能继续在工程方面给予照顾。刘麦海也确实给予了关照，其才能顺利以九冶建设有限公司名义中标承揽到工程。

5、证人苗滨（系咸阳科通信息技术有限公司经理）的证言。

证明咸阳科通信息技术有限公司成立于2005年，原名称为咸阳科通设备有限公司，后更名为咸阳科通信息技术有限公

7

 由 扫描全能王 扫描创建

IRI-CRT-00000546

司。股东系其和妻子刘腾腾。其公司挂靠九冶建设有限公司和陕西省第三建筑工程公司承揽工程。为了投标合肥彩虹蓝光厂道路和钢结构桁架工程，其分别于 2010 年的 8 月分左右、2011 年 3 月份左右在合肥蓝鲸大厦刘麦海的办公室内和工程现场刘麦海的临时办公室内送给该公司总经理刘麦海现金 2 万元、3 万元，共计 5 万元。给刘麦海送钱是为了进一步加深感情和表示感谢，他是合肥彩虹蓝光科技有限公司的总经理，所有的招标的具体事宜都由他落实，如果没有他的支持，不要说后期的施工，就连能否顺利招投标都会有变数。并且在后来的具体施工过程中，他还很积极的支持和配合其公司，从来没有故意习难过。

6、证人杨春霞（系咸阳科通信息技术有限公司出纳）的证言。

证明 2010 年 7 月到 12 月，其总共给老板刘腾腾取现大约 48 万元，她把这些钱怎么处理了其不知道。

7、证人王玖宏（系九冶建设有限公司西安分公司总经理）、雷建强（系九冶建设有限公司西安分公司员工）、张全万（系九冶建设有限公司董事长）的证言。

证明咸阳科通信息技术有限公司挂靠九冶建设有限公司，并在 2010 年、2011 年联营其公司承包了合肥彩虹蓝光科技有限公司厂区道路、室外桁架钢结构、102、103 机电二次培工程。

8、证人谭志坚（系中电三公司总经理）、吴东（系中电三公司总经理助理）的证言。

证明 2011 年，其公司通过合肥市国际招标公司招标，成为合肥彩虹蓝光科技有限公司的机电安装承包商之一，为该公司安装动力站房、铺设电缆、锅楼房、消防水池，工程标的约为 1000 多万元。在施工过程中，其二人商量后，谭志坚于 2011 年 7、8 月份的一天，在工地上刘麦海的临时办公室送给刘麦海 10 万元。给刘麦海送钱主要是为了感谢他。一是其公司在整个施工过程中，工程一直进展的比较顺利，刘总从来没有为难；二是在施工过程中，在整个工程的协调、配合方面给予了不少支持；三是在工程进度款的结算上，也从来没有故意拖延、

8

 由 扫描全能王 扫描创建

CONFIDENTIAL IRI-CRT-00000547

为难过，保证施工中的资金流；四是还想借此进一步把关系处理好，以便日后对方有工程时他想着其公司。送给刘麦海的10万元是在其公司财务上分次提取的备用金。要用备用金，谭志坚只需要董事长同意即可，然后就可以到财务上领取。报销时分次用一些餐饮、娱乐、差旅之类的票据在公司财务上做冲账处理了。经谭志坚辨认，侦查人员向其出示的中电三公司财务费用记账凭证复印件，就是其在公司财务上报销的费用记账凭证，其用这些冲抵先前在财务上借用的10万元备用金账。

9、证人梅丽（系中电三公司办公室办事员）的证言。

证明经其辨认侦查人员向其出示谭志坚2011年7月至12月在财务上报销的相关书证资料28页，确认都是谭志坚经经理把票给其，其拿到财务上报销的，用这些票据冲抵谭志坚先前在财务上提取的备用金。

10、证人唐德平（系江苏向荣集团有限公司销售代表）的证言。

证明2010年下半年，其作为向荣集团公司销售代表，向合肥彩虹蓝光科技有限公司销售价值6700万的电缆、配电柜等电气设备，至2012年上半年，其公司已经完全履行了合同义务。在2011年8、9月份的一天晚上，其在合肥希尔顿酒店一楼的茶秀里送给刘麦海现金20万元。其给刘麦海送钱主要是为了让他在付款方面给与照顾，及时付款。因为当时合肥彩虹蓝光科技有限公司没有按照合同约定及时给向荣集团付款，货款不能回笼，向荣集团就会扣除其的佣金，其很着急，所以才送钱给他。其想只要刘麦海把钱收了，有他的关照，向荣集团公司的货款就不是啥问题了。其给刘麦海送钱以后，付款的情况就比较好一点。这些钱是其从向荣集团借的现金，属于公司给其佣金的一部分，可以提前预支。

11、证人牛红梅（系刘麦海之妻）的证言。

证明自己对家里的家庭收入、资产情况以及刘麦海购买股票基金的具体情况并不清楚，刘麦海从来没有具体给其说过。

（二）书证

1、陕西省人民检察院《关于刘麦海涉嫌职务犯罪线索的交办函》、咸阳市人民检察院《立案决定书》。

9

 由 扫描全能王 扫描创建

IRI-CRT-00000548

证明 2013 年 7 月 30 日，陕西省人民检察院将合肥彩虹蓝光有限公司原总经理刘麦海涉嫌职务犯罪线索交由咸阳市人民检察院查处。2013 年 8 月 5 日，咸阳市人民检察院对刘麦海受贿案立案侦查。

2、彩虹集团公司《企业法人营业执照》、《组织机构代码证》、上海蓝光科技有限公司《工商资料》、合肥彩虹蓝光科技有限公司《工商资料》。

证明彩虹集团公司系企业法人，经济性质为全民所有制。上海蓝光科技有限公司系企业法人，2000 年 4 月 12 日成立，公司类型为有限责任公司（国内合资），注册资本中国有股份占 61.2414%，彩虹集团公司为股东之一，股权比例占 43.1691%，其他国有公司、民营企业和自然人股东持股比例为 56.8309%。合肥彩虹蓝光科技有限公司系有限责任公司，2010 年 8 月 2 日成立。其中上海蓝光科技有限公司占股 54.55%，合肥鑫城国有资产经营有限公司（国有独资公司）占股 45.45%。

3、刘麦海身份资料、个人档案、合肥彩虹蓝光科技有限公司章程、第一届董事会第一次会议议案、2008 年 11 月 6 日彩虹集团电子股份有限公司与被告人刘麦海签订的《劳动合同》、2010 年 12 月 22 日，彩虹集团电子股份有限公司《关于解除刘麦海劳动合同的通知》、2010 年 8 月 13 日《关于借调刘麦海同志的函》、2010 年 9 月 9 日《员工商调函》。

证明 2008 年 11 月 6 日，被告人刘麦海与彩虹集团电子股份有限公司签订《劳动合同》。2010 年 7 月 1 日至 2010 年 10 月 1 日，上海蓝光科技有限公司向彩虹集团电子股份有限公司致《函》借调被告人刘麦海到其公司工作。2010 年 9 月 9 日，上海蓝光科技有限公司向彩虹集团电子股份有限公司致《员工商调函》，称由于合肥彩虹蓝光 LED 项目扩建需要，要求商调刘麦海到上海蓝光科技有限公司工作。2010 年 11 月 22 日，彩虹集团电子股份有限公司下发《关于解除刘麦海劳动合同的通知》，称公司已于 2010 年 10 月与被告人刘麦海解除劳动合同。2010 年 7 月 23 日，合肥彩虹蓝光科技有限公司第一届董事会第一次会议决议，经董事长刘文弟提名，董事会表决通过

10

 由 扫描全能工 扫描创建

IRI-CRT-00000549

决定聘任刘麦海担任该公司总经理,任期三年。2010 年 8 月 2 日,合肥彩虹蓝光科技有限公司登记成立,并于 2011 年 1 月 1 日与被告人刘麦海签订了《劳动合同》。

4、《彩虹集团公司工作请示单》。

证明 2010 年 8 月 16 日,上海蓝光科技有限公司以《工作请示单》向彩虹集团公司人力资源部报请《关于向合肥彩虹蓝光科技有限公司委派董事和监事的报告》中称:"提名刘文弟、刘麦海、汪勇城担任合肥蓝光公司董事(经合肥蓝光职工代表会议选举,刘麦海担任合肥蓝光公司职工董事)",最后批示意见:同意(邢道钦系彩虹集团法定代表人)。

5、樊来盈会议笔记。

证明 2010 年 7 月 2 日,彩虹集团公司会议决定由刘麦海担任合肥蓝光基地(LED)总经理,樊来盈的会议笔记对此予以记录。

6、合肥彩虹蓝光科技有限公司《请示文件》、合肥新战区经贸发展局、新站区管委会《批复文件》。

证明 2010 年 7 月、8 月,合肥彩虹蓝光科技有限公司请示合肥新战区管委会对 LED 项目建设中的有关项目进行邀请招标,新战区管委会批复同意。

7、九冶建设有限公司《工商资料》、咸阳科通信息技术有限公司《工商资料》、《合肥彩虹蓝光科技有限公司合同招标投标备忘录》及《审批单》、《九冶建设有限公司合肥蓝光建设项目合同执行情况汇总表》等、九冶建设有限公司《明细账》、《合同执行明细》、合肥彩虹蓝光科技有限公司《付款凭证》等、九冶建设有限公司与咸阳科通信息技术有限公司《工程分包施工合同》、九冶建设有限公司向咸阳科通信息技术有限公司《付款凭证》。

证明九冶建设有限公司系有限责任公司,法定代表人张全万,咸阳科通信息技术有限公司系有限责任公司,法定代表人刘腾腾,刘腾腾、苗滨为股东。2010 年至 2012 年,刘腾腾代表九冶建设有限公司参加了合肥彩虹蓝光科技有限公司的道路及钢结构工程招标并中标。 2011 年 4 月 11 日、2012 年 5 月 7 日,咸阳科通信息技术有限公司与九冶建设有限公司签订

11

 由 扫描全能工 扫描创建

CONFIDENTIAL                                        IRI-CRT-00000550

了关于合肥彩虹 LED 项目道路工程、彩虹合肥光伏有限公司道排工程、合肥彩虹蓝光科技钢结构工程等工程的分包施工合同。截止 2013 年 6 月 30 日，合肥彩虹蓝光科技有限公司已付合同金额为 26244008.21 元，付款比例 83.68%，九冶建设有限公司后将款项转入咸阳科通信息技术有限公司账户或其指定的材料供应商账户。相关文件上有合肥彩虹蓝光科技有限公司总经理刘麦海签字。

8、刘腾腾招商银行咸阳分行、建设银行咸阳分行账户明细、2010 年咸阳科通信息技术有限公司给刘腾腾取现账务资料。

证明 2010 年 7 月 8 日，刘腾腾建设银行咸阳分行账户转账支取 5 万元。2010 年 7 月到 12 月，咸阳科通信息技术有限公司给刘腾腾取现约 48 万元。

9、中电三公司《工商资料》、合肥彩虹蓝光科技有限公司《合同招标投标文件》及《合同》、《合同执行情况》、《账务明细》、《付款凭证》。

证明中国电子系统工程第三建设有限公司系有限责任公司，谭志坚系法定代表人、总经理。2011 年 4 月 8 日、3 月 1 日、11 月 21 日，中国电子系统工程第三建设有限公司与合肥彩虹蓝光科技有限公司签订了关于合肥 LED 产业化项目室外机电安装工程、301#厂房机电安装工程、401#办公楼机电安装工程施工合同。合同总额 27478760.36 元，收款总计 26925194.99 元，收款比例 97.99%,相关文件上有合肥彩虹蓝光科技有限公司总经理刘麦海签字。

10、机票、动车票复印件、2011 年 7 月至 12 月谭志坚报销明细。

证明 2011 年 7 月到 12 月，谭志坚向中电三公司报销办公费、招待费、差旅费等共计 137459.05 元。

11、向荣集团《工商资料》、唐德平身份信息、《委托销售合同》、合肥彩虹蓝光科技有限公司《采购合同》、《招标文件》及《合同》、向荣集团内部明细账、合同执行情况明细、付款明细等。

证明向荣集团有限公司系有限责任公司，法定代表人唐崇

12



由 扫描全能王 扫描创建

CONFIDENTIAL                                                                IRI-CRT-00000551

国。2010 年、2011 年唐德平与向荣集团有限公司签订了委托销售合同，由唐德平作为向荣集团的外来销售员从事销售工作。2011 年 3 月 30 日、5 月 31 日、2012 年 5 月 31 日，唐德平通过招投标与合肥彩虹蓝光科技有限公司签订了电气设备采购及服务合同、室外桥架采购合同。截止 2013 年 1 月 28 日，合肥彩虹蓝光科技有限公司已付合同金额为 72807710.84 元，付款比例 90.65%，相关文件上有合肥彩虹蓝光科技有限公司总经理刘麦海签字。2011 年 8 月，唐德平从向荣集团公司借款合计 240200 元。

12、刘麦海建设银行合肥城东支行、合肥嘉山路分理处、中信银行咸阳支行、中国银行上海紫薇路支行账户明细、刘麦海广发证券开户资料即交易明细。

证明 2010 年 12 月 5 日至 2011 年 8 月 4 日，刘麦海在建设银行合肥城东支行账户现金存入共计 14 万元；2011 年 3 月 27 日至 2012 年 1 月 15 日，刘麦海在建设银行合肥嘉山路分理处账户现金存入共计 777200 元；2012 年 4 月 6 日至 5 月 10 日，刘麦海的中信银行账户跨行来账共计 1343000 元。2012 年 5 月 7 日至 8 月 9 日，该账户多次进行基金申购，并多次跨行转账至其中国银行账户共计 58 万元；2013 年 3 月 26 日至 8 月 26 日，刘麦海的广发证券帐号多次进行股票买卖，总成交金额为 9639659.12 元，总收付金额 665777.28 元。

13、《收款收据》。证明 2013 年 9 月 24 日，刘麦海向陕西省咸阳市人民检察院退缴涉案款 40 万元。

（三）被告人刘麦海的供述及同步录音录像光盘一张

证明 2010 年 7 月初在彩虹集团总部，集团总经理邢道钦、书记陶魁、副总经理兼上海蓝光科技有限公司董事长张少文和其谈话，让其去负责组建合肥彩虹蓝光科技有限公司。随后，在一个会议上由彩虹集团总经理邢道钦宣布其为合肥彩虹蓝光科技有限公司总经理。这算是个推荐。会议后就按照彩虹集团公司的这个谈话和会议安排决定，去合肥组建合肥彩虹蓝光科技有限公司。该公司成立后，刘文弟在第一次董事会上提名其担任总经理，并获得通过。其担任合肥彩虹蓝光科技有限公司总经理职务的具体职责是：在董事会领导下，完成公司人员

13

由 扫描全能王 扫描创建

IRI-CRT-00000552

队伍的搭建、公司的筹备和项目建设的前期准备。2010 年下半年至 2011 年下半年间，其利用担任合肥彩虹蓝光科技有限公司总经理职务的便利，收受了咸阳科通信息技术有限公司法定代表人刘腾腾、总经理苗滨夫妇共 10 万元现金，苗滨、刘腾腾给其送钱无非是因为其是合肥彩虹蓝光科技有限公司的总经理，在招标、施工、工程进度款等方面都对他们公司有一定的影响，他们想让其在这方面给与照顾，其作为总经理在工作中能照顾的，都尽可能给与照顾；收受了江苏向荣集团公司销售代表唐德平现金 20 万元，唐德平给其送钱，肯定是希望其作为合肥彩红蓝光科技有限公司的总经理，尽可能的协调各方面的关系，帮助他们公司顺利履行合同，并顺拿到货款；收受了中电三公司总经理谭志坚现金 10 万元，谭志坚给其送钱肯定是希望其再工作中，能在文明施工、安全施工、施工进度及工程的付款方面给予中电三公司照顾和帮助，其再这些方面从来没有故意刁难过他们，没有押后迟延过他们的工程进度款。这 40 万元其都陆续存进银行，又从银行转到股市炒股了。

本院认为，被告人刘麦海身为非国有公司的工作人员，利用职务上的便利，非法收受他人财物 40 万元，为他人谋取利益，数额巨大，其行为已构成非国家工作人员受贿罪。被告人刘麦海归案后能如实供述自己的罪行，依法从轻处罚。鉴于其自愿认罪，并上缴了全部赃款，酌情从轻处罚。

关于被告人刘麦海的辩护人提出的被告人刘麦海不符合国家工作人员的主体要件，对被告人刘麦海应当以非国家工作人员受贿罪追究刑事责任的辩护意见，经查，彩虹集团公司系国有公司，是上海蓝光科技有限公司的参股公司，股权比例 43.1691%。上海蓝光科技有限公司系非国有公司，是合肥彩虹蓝光科技有限公司的控股公司，股权比例 54.55%。根据最高人民法院、最高人民检察院《关于办理国家出资企业中职务犯罪案件具体应用法律若干问题的意见》第六条第一款规定："经国家机关、国有公司、企业、事业单位提名、推荐、任命、批准等，在国有控股、参股公司及其分支机构中从事公务的人员，应当认定为国家工作人员。具体的任命机构和程序不影响国家工作人员的认定。"而本案中，国有公司彩虹集团公司并未在

 由 扫描全能王 扫描创建

CONFIDENTIAL                                                                 IRI-CRT-00000553

非国有公司合肥彩虹蓝光科技有限公司控股、参股，合肥彩虹蓝光科技有限公司不是国有公司彩虹集团公司的控股、参股公司及其分支机构。被告人刘麦海在合肥彩虹蓝光科技有限公司担任总经理一职，不属国有公司委派到国有控股、参股公司及其分支机构中从事公务的人员，不是国家工作人员，应属非国家工作人员。故辩护人的辩护意见成立，本院予以采纳。

三、四、五的指控不能成立。被告人刘麦海的辩护人提出的公诉机关指控的列罪被告人刘麦海既没有承诺、实施和实现为他人谋取利益，也不符合明知他人有具体的请托事项，不具有为他人谋取利益的意图及行为，不符合受贿罪为他人谋取利益的客观要件的辩护意见，经查，被告人刘麦海的供述及证人刘腾腾、苗滨、谭志坚、唐德平的证言，证明被告人刘麦海作为合肥彩虹蓝光科技有限公司的总经理，主观上明知苗滨、谭志坚、唐德平所属公司在其公司所承揽的工程中存在利益请托，为苗滨、谭志坚、唐德平所属公司谋取利益，在事中、事后收取苗滨、谭志坚、唐德平所送的财物，属于受贿行为，该节事实清楚，证据确实、充分，足以认定。故辩护人的辩护意见不能成立，本院不予采纳。

关于被告人刘麦海的辩护人提出的起诉书指控的列罪四、五，被告人刘麦海在侦查机关第一次讯问时，在侦查机关没有掌握任何谭志坚和唐德平行贿信息的情况下，主动交代并如实陈述了收受谭志坚10万元和唐德平20万元贿款的犯罪事实，其行为应当认定为自首，应当对这两笔受贿行为减轻处罚的辩护意见，经查，被告人刘麦海在被侦查机关第一次讯问后如实交代了收取谭志坚10万元和唐德平20万元贿款的罪行，与司法机关已经掌握的其收取刘腾腾贿赂是同种罪行，根据最高人民法院《关于处理自首和立功具体应用法律若干问题的解释》之规定，已经被采取强制措施的犯罪嫌疑人，所供述的罪行与司法机关已掌握的本人其他罪行属同种罪行的不构成自首。故辩护人的该辩护意见不能成立，本院不予采纳。但其如实供述司法机关尚未掌握的同种受贿罪行相对较重，依法应予从轻处罚。

关于辩护人提出的被告人刘麦海积极退赔全部赃款，认罪

15

由 扫描全能王 扫描创建

CONFIDENTIAL                                        IRI-CRT-00000554

态度好，应当从轻处罚的辩护意见，经查属实，本院予以采纳。

综上，依据《中华人民共和国刑法》第一百六十三条第一款、第六十七条第三款之规定，判决如下：

被告人刘麦海犯非国家工作人员受贿罪，判处有期徒刑六年。

（刑期从判决执行之日起计算。判决执行以前先行羁押的，羁押一日折抵刑期一日，即自 2013 年 8 月 6 日起至 2019 年 8 月 5 日止。）

如不服本判决，可在接到判决书的第二日起十日内，通过本院或者直接向陕西省咸阳市中级人民法院提出上诉。书面上诉的，应当提交上诉状正本一份，副本二份。



审 判 长　张　艳
审 判 员　陈芳妮
代理审判员　梁语晴

二〇一四年四月十六日

书 记 员　魏 华

16

 由 扫描全能王 扫描创建

CONFIDENTIAL
IRI-CRT-00000555

Exhibit 10



June 25, 2018

**Certification**

**Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English of the document with bates numbers range: IRI-CRT-00000556 - IRI-CRT-00000570.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

# Xianyang City Intermediate People's Court of Shaanxi Province
# Criminal Judgment

(2014) Xian Zhong Xing Zhong Zi Number 00075

Appeal public prosecution organ: Qindu District People's Procuratorate, Xianyang City.

Defendant in the original judgment Liu Maihai, of Han ethnicity, male, born on March 29, 1965 in Hua County, Shaanxi Province, identification card number 610402196503297519, has a graduate student education level. He was formerly general manager of Hefei IRICO Blu-ray Science and Technology Company Limited and resided at Number 1, 1st floor, Unit 6, Building Number 149 of Number 1, Caihong Road, Qindu District, Xianyang City. As a result of the present case, he was criminally detained on August 6, 2013 and was arrested on August 23 of the same year. Currently, he is under detention at Qindu District Detention House, Xianyang City.

Defender Zhao Huibin, an attorney with Shaanxi Bin Cheng Law Firm.

Qindu District People's Court of Xianyang City heard the case of the crime of acceptance of bribes by defendant in the original judgment Liu Maihai and on April 16, 2014, rendered criminal judgment (2014) Xian Qin Xing Chu Number 00345. After the verdict was announced, on April 23, 2014, Qindu District People's Procuratorate of Xianyang City filed Te Xian Qin Jian Xing Kang (2014) Number 2 criminal appeal, whereby it filed an appeal on the grounds that there was an error in the fact finding of the subject standing of Liu Maihai and that the charges found were incorrect. Xianyang City People's Procuratorate decided to uphold the appeal. After accepting the case, in accordance with law, this court impaneled a collegiate panel and openly heard the case. Xianyang City People's Procuratorate designated prosecutor Li Jian to appear in court in support of the public indictment. Defendant in the original judgment Liu Maihai and defender Zhao Huibin both appeared in court to participate in the litigation. Now the hearing has been concluded.

The original judgment found that IRICO Group Corporation is a State-owned company. IRICO Group Corporation holds 43.1691% of the shares of Shanghai Blu-ray Science and Technology Company Limited. Other State-owned companies, privately owned enterprises and natural person shareholders hold 56.8309% of its shares. On August 2, 2010,

1

CONFIDENTIAL

Shanghai Blu-Ray Science and Technology Company Limited (hereinafter referred to as Shanghai Blu-ray Company) and Hefei Xincheng State-Owned Asset Operations Company Limited (hereinafter referred to as Hefei Xincheng Company) made joint capital contributions toward the establishment of Hefei IRICO Blu-Ray Science and Technology Company Limited, of which Shanghai Blu-Ray Science and Technology Company Limited holds 54.55% of the registered capital and Hefei Xincheng State-Owned Asset Operations Company Limited holds 45.45% of the registered capital. The legal representative is Liu Wendi. The type of the company is a limited liability company.

On November 6, 2008, defendant Liu Maihai executed a labor contract with IRICO Group Electronics Company Limited. On August 13, 2010, Shanghai Blu-ray Science and Technology Company Limited sent a letter to IRICO Group Electronics Company Limited to borrow defendant Liu Maihai for work at the company, from July 1, 2010 to October 1, 2010. On September 9, 2010, Shanghai Blu-ray Science and Technology Company Limited sent an Employee Secondment Letter to IRICO Group Electronics Company Limited, to request that defendant Liu Maihai be loaned to work at its company. On November 22, 2010, IRICO Group Electronics Company Limited issued the Notice of Terminating the Labor Contract of Liu Maihai, stating that the company had terminated the labor contract with defendant Liu Maihai in October 2010. On July 23, 2010, Hefei IRICO Blu-Ray Science and Technology Company Limited held the first meeting of the first board of directors, at which it adopted a resolution. Upon nomination by chairman of the board of directors Liu Wendi, the board of directors voted to hire Liu Maihai as general manager of the company for a term of three years and on January 1, 2011, executed a labor contract with defendant Liu Maihai. Between August 2010 and September 2011, defendant Liu Maihai accepted property from others totaling 400,000 yuan. The specific facts are as follows:

1. In August 2010, to obtain a contract for Hefei IRICO Blu-ray Science and Technology Company Limited, Miao Bin, manager of Xianyang Ketong Information Technology Company Limited, gave 20,000 yuan in cash to Liu Maihai in Liu Maihai's office at Blue Whale Building, Hefei City, Anhui Province. Thereafter, without a tender bid, in the name of making preparations for an inspection, Liu Maihei permitted Miao Bin's construction team to enter the site early to perform construction.

2. In October 2010, in Liu Maihai's office at Blue Whale Building, Hefei City, Anhui Province, Liu Tengteng, legal representative of Xianyang Ketong Information Technology Company Limited, gave 50,000 yuan in cash to Liu Maihai to express her thanks to Liu Maihai for allowing his construction team to enter the site

2

IRI-CRT-00000557
Scanned by the CamScanner

113

early to perform construction and for continued care received from Liu Maihai in terms of project contracting. Thereafter, during an invitation for tender bids, Liu Maihai invited Jiuye Construction Company Limited, which was affiliated with Xianyang Ketong Information Technology Company Limited, as a bidder and allowed it to win the bid.

3. From the second half of 2010 to early 2011, Xianyang Ketong Information Technology Company Limited used the qualifications of the affiliated Jiuye Construction Company Limited to contract for road and steel structure projects for Hefei IRICO Blu-ray Science and Technology Company Limited. In March 2011, to express his thanks to Liu Maihai for continued care received from Liu Maihai in terms of project bid tenders, construction and payments, in a temporary office of Liu Maihai at the site of Hefei IRICO Blu-ray Science and Technology Company Limited in Anhui Province, Miao Bin gave Liu Maihai 30,000 yuan in cash.

4. In March and April 2011, China Electronic Systems Engineering Third Construction Company Limited obtained a contract for the electromechanical installation project of Hefei IRICO Blu-ray Science and Technology Company Limited. One day in July of the same year, to express his thanks to Liu Maihai for care and continued help received from Liu Maihai in terms of project construction and payments, in a temporary office of Liu Maihai at the site of Hefei IRICO Blu-ray Science and Technology Company Limited in Anhui Province, Tan Zhijian, general manager of China Electronic Systems Engineering Third Construction Company Limited, gave Liu Maihai 100,000 yuan in cash.

5. In the first half of 2011, Jiangsu Xiangrong Group Corporation Limited won a bid for the electronic equipment purchase and service contract of Hefei IRICO Blu-ray Science and Technology Company Limited. One night in August or September of the same year, for the care received from Liu Maihai in product payments and contract performance, Tang Deping, sales representative of Jiangsu Xiangrong Group Corporation Limited, gave Liu Maihai 200,000 yuan in cash at a tea show on the first floor of Hilton Hotel in Hefei City, Anhui Province.

Subsequently, defendant Liu Maihai deposited a total of 400,000 yuan given by Miao Bin, Liu Tengteng, Tan Zhijian and Tang Deping into his own bank accounts on separate occasions and thereafter, transferred it to the stock account that he had opened with Shanghai Guangfa Securities, to purchase stocks and funds. On September 24, 2013, defendant Liu Maihai turned in the 400,000 yuan in ill-gotten money to judicial organs.

The original judgment held that as a worker of a non-State-owned company, defendant Liu Maihai took advantage of his position, legally accepted 400,000 yuan in property from others and sought gains for others. The amount is large and his actions have constituted crimes of

3

acceptance of bribes by a non-State worker. After defendant Liu Maihai was brought to justice, he was able to truthfully confess to his crimes and is entitled to a lighter penalty in accordance with law. In view of the fact that he voluntarily pled guilty and turned in all the ill-gotten money, a lighter penalty will be given as appropriate. The same kind of crime of acceptance of bribes confessed to by defendant Liu Maihai, of which the judicial organs had no knowledge, was relatively more serious and he is entitled to a lighter penalty in accordance with law. In accordance with the provision of Clause 1 of Article 163, and Clause 3 of Article 67 of the Criminal Law of the People's Republic of China, defendant Liu Maihai has committed the crime of acceptance of bribes as a non-State worker and is hereby sentenced to a term of six years imprisonment.

The appeal organ submitted that Hefei Blu-ray Company was established with an indirect capital contribution from IRICO Group Corporation. Hefei Blu-ray Company is a company with participation by the State. Defendant Liu Maihai was sent by State-owned company IRICO Group Corporation to form Hefei Blu-ray Company and served in the position of general manager of the company. Defendant Liu Maihai was a person sent by State-owned company IRICO Group Corporation to engage in public business in a company with participation by the State and should be found to be a State worker. Based on an error with the finding of the subject standing of defendant Liu Maihai, the original judgment held that a crime of acceptance by a non-State worker has occurred, for which the term of imprisonment of 10 years or a life imprisonment should have been imposed, and thus the defendant was sentenced to a term of imprisonment of six years. Obviously, the charge found was incorrect.

Defendant Liu Maihai and his defender pointed out that Hefei Blu-ray Company, where Liu Maihai held a position, is not a State-owned company or State-contributed company. Liu Maihai was not nominated, recommended, appointed, approved or authorized by Shanghai Blu-Ray Company or IRICO Group Corporation and instead, was an employee director elected by the employee representative meeting of Hefei Blu-ray Company. He was not a State worker; the meeting on July 2, 2010 could not be used to find a recommendation, appointment or authorization of Liu Maihai. Liu Maihai had a good attitude by pleading guilty and has been repentant. The facts found in the original judgment are clear, and the law that was applied was correct, so they requested that the original judgment be upheld.

The hearing has found that IRICO Group Corporation is a State-owned company. IRICO Group Corporation holds 43.1691% of the shares of Shanghai Blu-ray Science and Technology Company Limited. Other State-owned companies, privately owned enterprises and natural person shareholders hold 56.8309% of its shares. On August 2, 2010, Shanghai Blu-Ray Science and Technology Company Limited (hereinafter referred to as Shanghai Blu-ray Company) and Hefei Xincheng State-Owned Asset Operations Company Limited (hereinafter referred to as Hefei Xincheng Company) made joint capital contributions toward the establishment of Hefei IRICO Blu-Ray Science and Technology Company Limited, of which Shanghai Blu-Ray Science and Technology Company Limited holds 54.55% of the registered capital and Hefei Xincheng State-Owned Asset Operations Company Limited holds 45.45% of the registered capital. The legal representative is Liu Wendi. The type of the company is a limited liability company.

4

IRI-CRT-00000559

Scanned by the CamScanner

114

On November 6, 2008, defendant Liu Maihai executed a labor contract with IRICO Group Electronics Company Limited. On August 13, 2010, Shanghai Blu-ray Science and Technology Company Limited sent a letter to IRICO Group Electronics Company Limited borrow defendant Liu Maihai for work at the company, from July 1, 2010 to October 1, 2010. On September 9, 2010, Shanghai Blu-ray Science and Technology Company Limited sent an Employee Secondment Letter to IRICO Group Electronics Company Limited, to request that defendant Liu Maihai be loaned to work at its company. On November 22, 2010, IRICO Group Electronics Company Limited issued Notice of Terminating the Labor Contract of Liu Maihai, stating that the company had terminated the labor contract with defendant Liu Maihai in October 2010. On July 23, 2010, Hefei IRICO Blu-Ray Science and Technology Company Limited held the first meeting of the first board of directors, at which it adopted a resolution. Upon nomination by chairman of the board of directors Liu Wendi, the board of directors voted to hire Liu Maihai as general manager of the company for a term of three years, and on January 1, 2011, executed a labor contract with defendant Liu Maihai. Between August 2010 and November 2011, defendant Liu Maihai accepted property from others totaling 400,000 yuan. The specific facts are as follows:

1. In August 2010, to obtain a contract for Hefei IRICO Blu-ray Science and Technology Company Limited, Miao Bin, manager of Xianyang Ketong Information Technology Company Limited, gave 20,000 yuan in cash to Liu Maihai in Liu Maihai's office at Blue Whale Building, Hefei City, Anhui Province. Thereafter, without a tender bid, in the name of making preparations for an inspection, Liu Maihei permitted Miao Bin's construction team to enter the site early to perform construction.

2. In October 2010, in Liu Maihai's office at Blue Whale Building, Hefei City, Anhui Province, Liu Tengteng, legal representative of Xianyang Ketong Information Technology Company Limited, gave 50,000 yuan in cash to Liu Maihai to express her thanks to Liu Maihai for allowing his construction team to enter the site early to perform construction and for continued care received from Liu Maihai in terms of project contracting. Thereafter, during an invitation for tender bids, Liu Maihai invited Jiuye Construction Company Limited, which was affiliated with Xianyang Ketong Information Technology Company Limited, as a bidder and allowed it to win the bid.

3. From the second half of 2010 to early 2011, Xianyang Ketong Information Technology Company Limited used the qualifications of the affiliated Jiuye Construction Company Limited to contract for road and steel structure projects for Hefei IRICO Blu-ray Science and Technology Company Limited. In March 2011, to express his thanks to Liu Maihai for continued care received from Liu Maihai in terms of project bid tenders, construction and payments, in a temporary office of Liu Maihai at the site

5

of Hefei IRICO Blu-ray Science and Technology Company Limited in Anhui Province, Miao Bin gave Liu Maihai 30,000 yuan in cash.

4. In March and April 2011, China Electronic Systems Engineering Third Construction Company Limited obtained a contract for the electromechanical installation project of Hefei IRICO Blu-ray Science and Technology Company Limited. One day in July of the same year, to express his thanks to Liu Maihai for care and continued help received from Liu Maihai in terms of project construction and payments, in a temporary office of Liu Maihai at the site of Hefei IRICO Blu-ray Science and Technology Company Limited in Anhui Province, Tan Zhijian, general manager of China Electronic Systems Engineering Third Construction Company Limited, gave Liu Maihai 100,000 yuan in cash.

5. In the first half of 2011, Jiangsu Xiangrong Group Corporation Limited won a bid for the electronic equipment purchase and service contract of Hefei IRICO Blu-ray Science and Technology Company Limited. One night in August or September of the same year, for the care received from Liu Maihai in product payments and contract performance, Tang Deping, sales representative of Jiangsu Xiangrong Group Corporation Limited, gave Liu Maihai 200,000 yuan in cash at a tea show on the first floor of Hilton Hotel in Hefei City, Anhui Province.

Subsequently, defendant Liu Maihai deposited a total of 400,000 yuan given by Miao Bin, Liu Tengteng, Tan Zhijian and Tang Deping into his own bank accounts on separate occasions and thereafter, transferred it to the stock account that he had opened with Shanghai Guangfa Securities to purchase stocks and funds. On September 24, 2013, defendant Liu Maihai turned in the 400,000 yuan in ill-gotten money to judicial organs.

The above facts have been proven by testimony, cross-examination and evidence found in court:

(I) Witness testimony

1. Testimony of witness Liu Wendi (general manager of Shanghai Blu-Ray Science and Technology Company Limited and chairman of the board of directors of Hefei IRICO Blu-ray Science and Technology Company Limited). It proved that in April 2010, as general manager of Shanghai Blu-ray Science and Technology Company Limited, he held consultations with Hefei New Station Zone Management Commission with regard to the establishment of Hefei Blu-Ray Science and Technology Company Limited. In June of that year, the parties executed a contract. On the morning of July 2 of the same year, at the office of Xing Daoqin, the original general manager of IRICO Group Corporation, a meeting was held. The meeting was hosted by Xing Daoqin and attended by the original general manager of IRICO Group Corporation; Tao Kui, Chinese Communist Party committee secretary and vice manager general manager of IRICO Group Corporation; Zhang Shaowen, vice general manager of IRICO Group Corporation and chairman of the board of directors of Shanghai Blu-ray Science and Technology Company Limited; Liu Maihai, Fan Laiying and secretary Wang Haibo. At the meeting, Xing Daoqin announced the personnel arrangements for Hefei IRICO Blu-ray Science and Technology Company Limited: he would serve as the chairman of the board of directors, Lai Maihai would serve as the general

6

CONFIDENTIAL

IRI-CRT-00000561
Scanned by the CamScanner

115

manager, Fan Laiying would serve as the director of the finance department and Wang Haibo would serve as the office director.

After the meeting, in accordance with the spirit of this meeting, Shanghai Blu-ray Science and Technology Company Limited issued a written request for work instructions, requesting that IRICO Group Corporation recommend that he and Liu Maihai and Wang Yongcheng serve as directors of Hefei IRICO Blu-ray Science and Technology Company Limited. After the leadership of IRICO Group Corporation gave its approval in its reply, at a meeting of Hefei IRICO Blu-ray Science and Technology Company Limited, he was elected chairman of the board of directors. Thereafter, according to the personnel arrangements at the July 2, 2010 meeting of IRICO Group Corporation, he nominated Liu Maihai as general manager of Hefei IRICO Blu-Ray Science and Technology Company Limited. He only went through the procedures in accordance with Company Law.

2. Testimony of witnesses Fan Laiying (director of the finance department of Hefei IRICO Blu-Ray Science and Technology Company Limited), Wang Haibo (originally secretary of vice general manager Zhang Shaowen of IRICO Group Corporation and now director of office of Hefei IRICO Blu-ray Science and Technology Company Limited), Tao Kui (Chinese Communist Party committee secretary and vice general manager of IRICO Group Corporation) and Zhang Shaowen (vice general manager of IRICO Group Corporation and chairman of the board of directors of Shanghai Blu-ray Science and Technology Company Limited). It proved that on the morning of July 2, 2010, a meeting was held at the office of Xing Daoqin, the originally general manager of IRICO Group Corporation. The meeting was attended by Xing Daoqin, Tao Kui, Zhang Shaowen, Liu Wendi, Fan Laiying, Liu Maihai and Wang Haibo. At the meeting, Xing Daoqin announced the personnel arrangements for Hefei IRICO Blu-ray Science and Technology Company Limited: he would serve as the chairman of the board of directors, Lai Maihai would serve as the general manager, Fan Laiying would serve as the director of the finance department and Wang Haibo would serve as the office director. After the meeting, work started in accordance with the requirements of the leadership of IRICO Group Corporation. After Hefei IRICO Blu-Ray Science and Technology Company Limited was established on August 2, 2010, in accordance with the July 2, 2010 personnel arrangements by IRICO Group Corporation regarding the establishment of Hefei IRICO Blu-Ray Science and Technology Company Limited, the board of directors of Hefei IRICO Blu-Ray Science and Technology Company Limited that had been established would respectively hire the aforementioned personnel in accordance with the relevant provisions of Company Law.

3. Testimony of witness Xue Xujie (vice deputy general manager of Hefei IRICO Blu-Ray Science and Technology Company Limited). It proved that, during the preparation for the formation of Hefei IRICO Blu-Ray Science and Technology Company Limited, the construction team had entered the site without his prior knowledge. He knew that the team had been called into the site by Liu Maihai because only he could decide the matter. At that time, the Chinese Communist Party Secretary of Hefei City would come over and inspect this project and a construction team would be needed to keep up appearances. After inspection, the construction machinery of Jiuye Construction Company Limited was not withdrawn and instead worked on a section of the road in the plant proper. Thereafter, Hefei IRICO Blu-Ray Science and

7

IRI-CRT-00000562

Scanned by the CamScanner

Technology Company Limited requested permission from Hefei New Station Zone Management Commission for tender bids for part of the project and invited Jiuye Construction Company Limited to submit a tender bid. In the end, their company successfully won the bid for the relevant project. The decision to invite them to submit a tender bid must also have been made by Liu Maihai. At that time, the company had adequate funds and the process of progress payments made to Jiuye Construction Company was rather smooth.

4. Witness Liu Tengteng (legal representative of Xianyang Ketong Information Technology Company Limited) testified that in October 2010, to express thanks to Liu Maihai for allowing the company to obtain project information, going into the site early to perform construction and inviting Jiuye Construction Company Limited, with which the company was affiliated, to participate in the tender bid, in Liu Maihai's office at Blue Whale Building, Hefei City, Anhui Province, Liu Tengteng, she gave 50,000 yuan in cash to Liu Maihai.

5. The contents of witness Miao Bin (manager of Xianyang Ketong Information Technology Company Limited) are consistent with the contents of the testimony of Liu Tengteng.

6. Witness Yang Chunxia (cashier of Xianyang Ketong Information Technology Company Limited) testified that between July and December 2010, she had obtained approximately 480,000 yuan in cash for her boss Liu Tengteng. She did not know how she had disposed of the money.

7. Witnesses Wang Jiuhong (general manager of Jiuye Construction Company Limited Xian branch), Lei Jianqiang (employee of Jiuye Construction Company Limited Xian branch) and Zhang Quanwen (chairman of the board of directors of Jiuye Construction Company Limited Xian branch) testified that Xianyang Ketong Information Technology Company Limited was affiliated with Jiuye Construction Company Limited Xian branch and in 2010 and 2011, together with their company, they obtained the contracts for Hefei IRICO Blu-Ray Science and Technology Company plant proper road, outdoor truss steel structure, 102 and 103 electromechanical secondary projects.

8. Testimony of witnesses Tan Zhijian (general manager of China Electronic Systems Engineering Third Construction Company Limited) and Wu Dong (assistant to general manager of China Electronic Systems Engineering Third Construction Company Limited). It proved that in 2011, their company became one of the electromechanical installation contractors for Hefei IRICO Blu-Ray Science and Technology Company Limited through tender bids for Hefei International Tender Bid Company and installed the power station house, laid cables, and worked on a boiler building and a fire cistern, with a product subject matter of approximately more than 10 million yuan. During the construction process, after the two of them held consultations, one day in July or August 2011, in a temporary office of Liu Maihai at the site, Tan Zhijian gave Liu Maihai 100,000 yuan in cash. First, it was because during the process of construction by the company, the project had been going on rather smoothly and general manager Liu have never made things difficult; second, during the process of construction, Liu had provided much support in terms of coordination and cooperation for the entire project; third, in terms of settlements of project payments, he had never intentionally caused any delays or difficulties, thus guaranteeing the cash flow during construction; fourth, they wanted to properly handle the relationship further, so that the other party would think of their company in the future in case of any products. The 100,000 yuan given to Liu Maihai was a reserve fund withdrawn in installments from the finance department of the company. To use such a reserve fund, Tan

8

CONFIDENTIAL

116

Zhijian would only need the consent of the chairman of the board of directors and then collect it from the finance department. For reimbursement, he would handle the matter by striking a balance in the finances of the company through the use of multiple receipts for food and beverage, entertainment and travel expenses, etc. After being identified by Tan Zhijian, the investigators showed him photocopies of financial expense accounting vouchers of China Electronic Systems Engineering Third Construction Company Limited, that is, the expense accounting vouchers to be reimbursed by the finance department of the company. He had used them to offset the 100,000 yuan previously borrowed from the reserve fund from the finance department.

9. Testimony of witness Mei Li (clerk of China Electronic Systems Engineering Third Construction Company Limited). It proved that after being identified thereby, 28 pages of material from the relevant documentary evidence for financial reimbursements by Tan Zhijian between July and December 2011, which had been shown to her by the investigators, and it was confirmed that the invoices had all been given to her by general manager Tan Zhijian. She took them for reimbursement by the finance department. These invoices were used to offset the reserve fund that Tan Zhijian had previously retrieved from the finance department.

10. Testimony of witness Tang Deping (sales representative of Jiangsu Xiangrong Group Corporation Limited). It proved that in the second half of 2010, as sales representative of Xiangrong Group Corporation Limited, he sold electric equipment, including tables and power distribution cabinets, etc., valued at 67 million yuan to Hefei IRICO Blu-Ray Science and Technology Company Limited. As of the first half of 2012, his company had fully performed its contractual obligations. One night in August or September 2011, he gave Liu Maihai 200,000 yuan in cash at a tea show on the first floor of Hilton Hotel in Hefei City. He gave Liu Maihai money mainly to receive extra care from him in payments, so as to make payments in a timely manner. Due to the fact that at that time, Hefei IRICO Blu-Ray Science and Technology Company Limited had not made payments to Xiangrong Group in a timely manner in accordance with the covenants in the contract, that payments for goods could not be recovered, and that Xiangrong Group would deducts his commission, he was quite anxious and that was why he would give money to him. He thought that as long as Liu Maihai would accept the money, with his care, payments for goods to Xiangrong Group would not be an issue. After he gave money to Liu Maihai, the situation with payments would be better. The money was cash that he had borrowed from Xiangrong Group and was part of the commission that the company would pay him. It could be withdrawn in advance.

11. Testimony of witness Niu Hongmei (who is Liu Maihai's wife).

It proved that she was not sure of the household income and assets of the family as well as the specific circumstances of the purchase by Liu Maihai of stocks and funds. Liu Maihai had never mentioned the specifics to her.

(II) Documentary evidence

1. Shaanxi Province People's Procuratorate Letter to Hand over Leads on Liu Maihai's Suspected Involvement in Job Related Crimes and Xianyang Municipal People's Procuratorate Decision to File Case and Investigate, they proved that on July 30, 2013, the Shaanxi Province People's Procuratorate turned over leads regarding Hefei IRICO Blu-ray Company Limited former general manager Liu Maihai's suspected involvement in job-related crimes to the Xianyang Municipal People's Procuratorate for an investigation. On August 5, 2013, the Xianyang Municipal People's Procuratorate file the case and launched an investigation into Liu Maihai's acceptance of bribes.

They proved that on July 30, 2013, the Shaanxi Province People's Procuratorate turned over leads regarding Hefei IRICO Blu-ray Company Limited former general manager Liu Maihai's suspected involvement in job-related crimes to the Xianyang Municipal People's Procuratorate for an investigation. On August 5, 2013, the Xianyang Municipal People's Procuratorate file the case and launched an investigation into Liu Maihai's acceptance of bribes.

2. The enterprise legal person business license and certificate of institutional code of IRICO Group Corporation, the industry and commerce materials of Shanghai Blu-ray Science and Technology Company Limited in the industry and commerce materials of Hefei IRICO Blu-Ray Science and Technology Company Limited. They proved that IRICO Group Corporation is an enterprise legal person and its economic nature is ownership by the

9

whole people. Shanghai Blu-ray Science and Technology Company Limited is an enterprise legal person. It was established on April 12, 2000 and the type of the company is a limited liability company (a domestic joint venture). Of its registered capital, the State owns 61.2414% of the shares. IRICO Group Corporation is one of its shareholders, and holds 43.1691% of its shares. Of the State-owned companies, privately owned companies and natural person shareholders hold 56.8309% of shares. Hefei IRICO Blu-ray Science and Technology Company Limited is a limited liability company. It was established on August 2, 2010. Shanghai Blu-Ray Science and Technology Company Limited holds 54.55% of its shares and Hefei Xincheng State-Owned Asset Operations Company Limited (a wholly State-owned company) holds 45.45% of its shares.

3. The identification material and personal files of Liu Maihai, the bylaws of Hefei IRICO Blu-Ray Science and Technology Company Limited, the resolution of the first meeting of the first board of directors, the labor contract executed by and between IRICO Group Electronics Company Limited and defendant Liu Maihai on November 6, 2008, the Notice Regarding Termination of Liu Maihai's Labor Contract dated December 22, 2010, the Letter Regarding Secondment of Comrade Liu Maihai dated August 13, 2010 and the Letter Requesting Employee Transfer dated September 9, 2010 IRICO Group Electronics Company Limited. These proved that on November 6, 2008, defendant Liu Maihai executed a labor contract with IRICO Electronics Company Limited. Between July 1, 2010 and October 1, 2010, Shanghai Blu-ray Science and Technology Company Limited sent a letter to IRICO Group Corporation to borrow defendant Liu Maihai for work at its company. On September 9, 2010, Shanghai Blu-ray Science and Technology Company Limited sent the Letter Requesting Employee Transfer to IRICO Group Corporation, alleging that due to the need for and expansion of the Hefei LED project, it requested a transfer of Liu Maihai to work for Shanghai Blu-Ray Science and Technology Company Limited. On November 22, 2010, IRICO Group Electronics Company Limited issued the Notice of Terminating the Labor Contract of Liu Maihai, stating that the company had terminated the labor contract with defendant Liu Maihai in October 2010. On July 23, 2010, Hefei IRICO Blu-Ray Science and Technology Company Limited held the first meeting of the first board of directors, at which it adopted a resolution. Upon nomination by chairman of the board of directors Liu Wendi, the board of directors voted to hire Liu Maihai as general manager of the company for a term of three years. On August 2, 2010, Hefei IRICO Blu-Ray Science and Technology Company Limited registered its establishment and executed a labor contract with defendant Liu Maihai on January 1, 2011.

4. IRICO Group Corporation written request for work instructions. It proved that on August 16,

10

117

2010, with a written request for work instructions Shanghai Blu-Ray Science and Technology Company Limited submitted to IRICO Group Corporation human resources department the Report Regarding Appointments of Directors and Supervisors to Hefei IRICO Blu-Ray Science and Technology Company Limited, stating that they "nominate Liu Wendi, Liu Maihai and Wang Yongcheng as directors of Hefei Blu-ray Company (through an election by Hefei Blu-ray employee representative meeting, Liu Maihai will serve as employee director of Hefei Blu-ray Company)." The opinion of final instruction was agreed (Xing Daoqin was the legal representative of IRICO Group Corporation).

5. Fan Laiying's meeting notes. These proved that on July 2, 2010, IRICO Group Corporation decided at a meeting that Liu Maihai would serve as general manager of the Hefei Blu-ray base (LED). Fan Laiying's notes on the meeting kept a record of it.

6. Hefei IRICO Blu-Ray Company Document of Request for Instructions and Reply Documents from Hefei New Station Zone Bureau of Economic and Trade Development and New Station Zone Management Commission.

These proved that in July and August 2010, Hefei IRICO Blu-ray Company requested permission from New Station Zone Management Commission to invite tender bids for certain LED project construction projects. The New Station Zone Management Commission replied with its consent.

7. The industry and commerce materials on Jiuye Construction Company Limited, the industry and commerce materials on Xianyang Ketong Information Technology Company Limited, the Contract Tender Bid Memorandum and Form of Examination and Approval of Hefei Blu-Ray Science and Technology Company Limited the Aggregated Table of Information on the Hefei Blu-Ray Construction Project Contract Implementation by Jiuye Construction Company Limited, etc. and the itemized books of Jiuye Construction Company Limited.

These proved that Jiuye Construction Company Limited is a limited liability company. Its legal representative is Zhang Quanwan. Xianyang Ketong Information Technology Company Limited is a limited liability company. Its legal representative is Liu Tengteng and its shareholders are Liu Tengteng and Miao Bin. Between 2010 and 2012, on behalf of Jiuye Construction Company Limited, Liu Tengteng participated in the road and steel structure project tender bids of Hefei Blu-Ray Science and Technology Company Limited and wonder bids. On April 11, 2011 and May 7, 2012, Xianyang Ketong Information Technology Company Limited executed construction subcontracts with Jiuye Construction Company Limited regarding the Hefei IRICO LED project road engineering, the IRICO Hefei Photovoltaic Company Limited road drainage project and the steel structure project of Hefei IRICO Blu-Ray Science and Technology, etc. As of June 30, 2013, the contract amount already paid by Hefei IRICO Blu-Ray Science and Technology Company Limited was 26244008.21 yuan, which was a payment percentage of 83.68%. Subsequently, Jiuye

11

Construction Company Limited transferred the funds into the account of Xianyang Ketong Information Technology Company Limited or the account of its designated material supplier. The relevant documents have the signature of Liu Maihai, general manager of Hefei IRICO Blu-ray Science and Technology Company Limited.

8. Itemized versions of Liu Tengteng's accounts with China Merchants Bank Xianyang branch and Bank of Construction Xianyang branch and account information regarding cash withdrawal by Xianyang Ketong Information Technology Company Limited in 2010 for Liu Tengteng.

These proved that on July 8, 2010, Liu Tengteng's account with Bank of Construction Xianyang branch May the withdrawal by transfer of 50,000 yuan. From July to December 2010, Xianyang Ketong Information Technology Company Limited withdrew approximately 480,000 yuan for Liu Tengteng.

9. The industry and commerce materials of China Electronic Systems Engineering Third Construction Company Limited, the contract tender bid documents, contracts, contract implementation information, itemized accounting and payment vouchers of Hefei IRICO Blu-Ray Science and Technology Company Limited.

These proved that China Electronic Systems Engineering Third Construction Company Limited is a limited liability company. Tan Zhijian is its legal representative and general manager. On April 8, March 1 and November 21, 2011, China Electronic Systems Engineering Third Construction Company Limited and Hefei IRICO Blu-ray Science and Technology Company Limited executed an electromechanical installation and construction project contract regarding the Hefei LED industrialization project exterior electromechanical installation project, the 301# plant building electromechanical installation project and the 401# office building electromechanical installation project. The total amount of the contract was 27478760.36 yuan. The total amount received was 26925194.99 yuan, which was a payment percentage of 97.99%. The relevant documents have the signature of Liu Maihai, general manager of Hefei IRICO Blu-ray Science and Technology Company Limited.

10. Photocopies of airline tickets and high-speed train tickets and itemized reimbursements for Tan Zhijian between July and December 2011.

These proved that between July and December 2011, Tan Zhijian received the reimbursements for office expenses, entertainment expenses and travel expenses totaling 137459.05 yuan from China Electronic Systems Engineering Third Construction Company Limited.

11. The industry and commerce materials of Xiangrong Group, the identification information of Tang Deping, authorized sales contract, the purchase contracts, tender bid documents and contracts of Hefei IRICO Blu-Ray Science and Technology Company Limited, itemize the internal accounts, itemized information on contract information and itemized payments of Xiangrong Group, etc.

These proved that Xiangrong Group Corporation is a limited liability company. Its legal representative is Tang Chongguo. In 2010 and 2011, Tang

12

IRI-CRT-00000567
Scanned by the CamScanner

Deping and Xiangrong Group executed an authorized sales contract, whereby Tang Deping would engage in sales work as an external salesman for Xiangrong Group. On March 30 and May 31, 2011 and May 31, 2012, through tender bids, Tang Deping executed an electrical equipment purchase and services contract and exterior bridge frame purchase contract with Hefei IRICO Blu-Ray Science and Technology Company. As of January 28, 2013, the contract amount already paid by Hefei IRICO Blu-Ray Science and Technology Company was 72807710.84 yuan, which was a payment percentage of 90.65%. The relevant documents have the signature of Lai Maihai, general manager of Hefei IRICO Blu-Ray Science and Technology Company. In August 2011, Tang Deping borrowed a total of 240200 yuan from Xiangrong Group.

12. Itemizations of Liu Maihai's bank accounts with Bank of Construction Hefei Chengdong branch, Hefei Jiashan Road subbranch, CITIC Xianyang subbranch and Bank of China Shanghai Ziwei Road branch and account opening materials and itemizations of Liu Maihai's transactions with Guangfa Securities.

13. Receipts for payments. These proved that on September 24, 2013, Liu Maihai refunded 400,000 yuan of the money involved in the case to the People's Procuratorate of Xianyang City of Shaanxi Province.

(III) Defendant Liu Maihai's, which proved that in early July 2010, at the headquarters of IRICO Group Corporation, Xing Daoqin, general manager of the group; Tao Kui, Communist Party Secretary; and Zhang Shaowen, chairman of the board of directors of Shanghai Blu-ray Science and Technology Company Limited, talked with him and asked him to take charge of the formation of Hefei IRICO Blu-Ray Science and Technology Company Limited. Thereafter, at a meeting, Xing Daoqin, general manager of IRICO Group Corporation, announced that he would serve as general manager of Hefei IRICO Blu-Ray Science and Technology Company Limited. This was equivalent to a recommendation. After the meeting, the decision was made in accordance with the discussion and arrangements made at the meeting of IRICO Group Corporation, whereby he went to Hefei to form Hefei IRICO Blu-Ray Science and Technology Company Limited. After the establishment of the company, at a meeting of the first board of directors, Liu Wendi

13

nominated him for the position of general manager, which was adopted. His specific duties as general manager of Hefei IRICO Blu-Ray Science and Technology Company Limited were: Under the leadership of the board of directors, complete the establishment of a team of company personnel, preparations for the company and preliminary preparations for product construction. Between the second half of 2010 and the second half of 2011, he took advantage of his position as general manager of Hefei IRICO Blu-Ray Science and Technology Company Limited and accepted a total of 100,000 yuan in cash from legal representative Liu Tengteng of Xianyang Ketong Information Technology Company Limited and its general manager Miao Bin, who are a married couple. The fact that Miao Bin and Liu Tengteng gave him money was simply because he was general manager of Hefei IRICO Blu-Ray Science and Technology Company Limited and would have a certain impact on their company in terms of tender bids, construction and progress payments for the project, etc. They wanted him to give them care in these aspects, so that as general manager, he would give them care wherever he could in his work; he accepted 200,000 yuan in cash from sales representative Tang Deping of Jiangsu Xiangrong Group Corporation. Tang Deping surely gave him money in the hope that as general manager of Hefei IRICO Blu-Ray Science and Technology Company Limited, he would do his best to coordinate the relationships among various parties, help their company successfully fulfill the contracts and successfully receive payments for services; he accepted 100,000 yuan in cash from general manager Tan Zhijian of China Electronic Systems Engineering Third Construction Company Limited. Tan Zhijian surely give him money in the hope that in his work, he would give China Electronic Systems Engineering Third Construction Company Limited care and help in terms of civilized construction, safe construction, construction progress and project payments, etc. In these aspects, he had never intentionally made things difficult for them and had not delayed there project progress payments. The 400,000 yuan was deposited with banks on separate occasions and then transferred from the banks to the stock market for stock speculation.

This court holds that as a State worker, defendant Liu Maihai took advantage of his position, is legally accepted 400,000 yuan in property from others and sought gains for others. The amount is large and his actions have constituted crimes of acceptance of bribes. After defendant Liu Maihai was brought to justice, he was able to truthfully confess to his crimes and is entitled to a lighter penalty in accordance with law. In view of the fact that he voluntarily pled guilty and turned in all the ill-gotten money, a lighter penalty will be given as appropriate.

State-owned company IRICO Group Corporation contributed to the establishment of Shanghai Blu-ray Company. Shanghai Blu-ray Company again contributed to the establishment of Hefei Blu-ray Company together with other companies. Therefore, Hefei Blu-ray Company is a company with participation by the State. Upon nomination and recommendation by State-owned company IRICO Group Corporation, Liu Maihai went to perform managerial work at Hefei Blu-ray Company. Subsequently, the Hefei Blu-ray Company board of directors decided for him to serve as general manager. In accordance with the provisions of Clause 1 of Article 6 of Supreme People's Court and the Supreme People's Procuratorate Notice of Opinion regarding the Handling of Several Issues in the Specific Application of Law to Job-Related Criminal Cases in State-Contributed Enterprises, "Personnel who engage in

14

119

public business in a State-controlled company, a State-participating stock company or their branches upon nomination, recommendation, appointment and approval by a State organ, State-owned company, enterprise or institutional unit shall be determined to be State workers." Therefore, when defendant Liu Maihai accepted property of others while serving as general manager of Hefei Blu-ray Company, his actions constituted crimes of accepting bribes. In summary of the above, the reason for the appeal by the appeal organ that there was an error by the original judgment in the fact finding of the subject standing of Liu Maihai and that the charges found were incorrect is tenable and should be supported. In accordance with the provisions of Subclause (2) of Article 225 of Criminal Procedure Law of the People's Republic of China, Clause 1 of Article 385, Clause 3 of Article 67 of the Criminal Law of the People's Republic of China, the following ruling is hereby rendered:

1. Qindu District People's Court of Xianyang City criminal judgment (2013) Xian Qin Xing Chu Number 00345 is reversed, that is, defendant Liu Maihai has committed crimes of accepting bribes as a non-State worker and is sentenced to a term of imprisonment of six years.

2. Defendant Liu Maihai has committed crimes of accepting bribes and is sentenced to a term of imprisonment of 10 years.

(The term of imprisonment shall begin to run from the execution of the sentence. In the event of any detention prior to execution of the sentence, each day under detention shall offset one day of the term of imprisonment, that is, from August 6, 2013 to August 6, 2023.)

This ruling is the final ruling.

Presiding judge: Wang Fengguang
Judge: Liu Honggang
Acting judge: Zhang Yapeng
[seal: Xianyang City Intermediate People's Court of Shaanxi Province]

November 11, 2014

[seal: This copy has been verified to be consistent with the original copy]

Clerk: Wang Gaopeng

15

IRI-CRT-00000570
Scanned by the CamScanner

112

# 陕西省咸阳市中级人民法院

# 刑事判决书

（2014）咸中刑终字第 00075 号

抗诉机关咸阳市秦都区人民检察院。

原审被告人刘麦海，男，1965 年 3 月 29 日出生于陕西省华县，身份证号：610402196503297519，汉族，研究生文化程度，原系合肥彩虹蓝光科技有限公司总经理，住陕西省咸阳市彩虹 1 路 1 号内 149 号楼 6 单元 1 层 1 号。因本案于 2013 年 8 月 6 日被刑事拘留，同年 8 月 23 日被逮捕。现羁押于秦都区看守所。

辩护人赵会斌，陕西宇斌诚律师事务所律师。

秦都区人民法院审理秦都区人民检察院起诉指控原审被告人刘麦海犯受贿罪一案，于 2014 年 4 月 16 日作出（2014）咸秦刑初字第 00345 号刑事判决。宣判后，秦都区人民检察院于 2014 年 4 月 23 日作出特咸秦检刑抗（2014）2 号刑事抗诉书，以原判对刘麦海主体身份事实认定错误，认定罪名不正确为由提出抗诉，咸阳市人民检察院决定支持抗诉。本院受理后，依法组成合议庭，公开开庭进行了审理。咸阳市人民检察院指派检察员李健出庭支持公诉。原审被告人刘麦海及辩护人赵会斌均到庭参加了诉讼。现已审理终结。

原审查明：彩虹集团公司系国有公司，在上海蓝光公司的股份中，彩虹集团公司的持股比例为 43.1691%，其他国有公司、民营企业和自然人股东持股比例为 56.8309%。2010 年

1

由 扫描全能王 扫描创建

CONFIDENTIAL                                                    IRI-CRT-00000556

8月2日，上海蓝光科技有限公司（以下简称上海蓝光公司）与合肥鑫城国有资产经营有限公司（以下简称：合肥鑫城公司）共同出资设立合肥彩虹蓝光科技有限公司（合肥蓝光公司），其中上海蓝光公司占注册资本54.55%，合肥鑫城公司占注册资本45.45%，法定代表人为刘文弟，公司类型为其他有限责任公司。

2008年11月6日，被告人刘麦海与彩虹集团电子股份有限公司签订《劳动合同》。2010年8月13日，上海蓝光公司向彩虹集团电子股份有限公司致《函》借调被告人刘麦海到其公司工作，从2010年7月1日至2010年10月1日。2010年9月9日，上海蓝光公司向彩虹集团电子股份有限公司致《正式工商调函》，商调被告人刘麦海到其公司工作。2010年11月22日，彩虹集团电子股份有限公司下发《关于解除刘麦海劳动合同的通知》，称公司已于2010年10月与被告人刘麦海解除劳动合同。2010年7月23日合肥蓝光公司召开第一届董事会第一次会议决议，经董事长刘文弟提名，董事会表决通过决定聘任刘麦海担任该公司总经理，任期三年，并于2011年1月1日与被告人刘麦海签订了《劳动合同》。2010年8月至2011年9月期间，被告人刘麦海收受他人财物共计40万元。具体事实如下：

1、2010年8月，咸阳科通信息技术有限公司经理苗滨为了承揽合肥蓝光公司有关项目工程，在安徽省合肥市蓝鲸大厦刘麦海办公室内，送给刘麦海现金2万元。此后，刘麦海让苗滨的施工队伍先行进场施工。

2、2010年10月，咸阳科通信息技术有限公司法定代表人刘腾腾为了感谢刘麦海让其施工队伍提前进场施工和在承揽工程方面继续受到刘麦海的照顾，在安徽省合肥市蓝鲸大厦刘麦海办公室内，送给刘麦海现金5万元。此后，在邀请

2


由 扫描全能王 扫描创建

CONFIDENTIAL
IRI-CRT-00000557

招标时，刘麦海将咸阳科通信息技术有限公司挂靠的九冶建设有限公司作为邀请对象并得以中标。

3、从 2010 年下半年至 2011 年初，咸阳市科通信息技术有限公司用挂靠的九冶建设有限公司资质，在合肥蓝光公司承揽了道路及钢结构工程。2011 年 3 月，为了对刘麦海表示感谢和在工程投标、施工、付款方面继续得到刘麦海的照顾，苗滨在安徽省合肥市彩虹蓝光科技有限公司工地刘麦海的临时办公室内，送给刘麦海现金 3 万元。

4、2011 年 3、4 月份，中国电子系统工程第三建设有限公司承揽了合肥蓝光公司的机电安装工程。同年 7 月份的一天，为了感谢刘麦海在工程施工及付款等方面给予的照顾和继续得到刘麦海的帮助，中国电子系统工程第三建设有限公司总经理谭志坚在安徽省合肥市彩虹蓝光科技有限公司工地刘麦海的临时办公室内，送给刘麦海现金 10 万元。

5、2011 年上半年，江苏向荣集团有限公司中标了合肥蓝光公司的电气设备采购及服务合同。同年 8、9 月份的一天晚上，为了在工程付款及合同履行中得到刘麦海的照顾，江苏向荣集团有限公司销售代表唐德平在安徽省合肥市希尔顿酒店一楼茶秀内，送给刘麦海现金 20 万元。

后被告人刘麦海将收受苗滨、刘腾腾、谭志坚、唐德平所送的共计 40 万元陆续存入自己的银行账户，后又转账至自己在上海广发证券所开立的股票账户，用于购买股票和基金。2013 年 9 月 24 日，被告人刘麦海向司法机关上缴赃款 40 万元。上述事实，有原审庭审举证、质证的证人证言、书证、被告人供述等证据予以证实。

原审认为，被告人刘麦海身为非国有公司的工作人员，利用职务上的便利，非法收受他人财物 40 万元，为他人谋取利益，数额巨大，其行为已构成非国家工作人员受贿罪。被告

3

人刘麦海归案后能如实供述自己的罪行，依法从轻处罚。墓于其自愿认罪，并上缴了全部赃款，酌情从轻处罚。被告人刘□海如实供述司法机关尚未掌握的同种受贿罪行相对较重，依□应予从轻处罚。依据《中华人民共和国刑法》第一百六十三条第一款、第六十七条第三款之规定，判决：被告人刘麦海犯□国家工作人员受贿罪，判处有期徒刑六年。

抗诉机关提出，合肥蓝光公司是彩虹集团间接出资成□的，合肥蓝光公司属国有参股公司，本案被告人刘麦海受国□公司彩虹集团委派，去组建合肥蓝光公司并担任该公司总经□职务。被告人刘麦海系受国有公司彩虹集团委派，在国有参□公司中从事公务的人员，应认定为国家工作人员。原判基于被告人刘麦海主体身份的错误认定将本应判处 10 年以上有期徒刑或无期徒刑的受贿罪，认定为非国家工作人员受贿罪，从而判处被告人有期徒刑六年，显属认定罪名不正确。

上诉人刘麦海及辩护人提出，刘麦海担任的合肥蓝光公司并非国有公司，也不是国有公司出资；刘麦海没有经上海蓝光公司或彩虹集团公司提名、推荐、任命、批准或委派，而是经过合肥蓝光公司职工代表大会选举出的职工董事，不属于国家工作人员；2010 年 7 月 2 日的会议不能认定对刘麦海构成推荐、任命、或委派；被告人刘麦海认罪态度好、具有悔罪表现，原审认定事实清楚、适用法律正确，请求维持原判。

经审理查明，彩虹集团公司系国有公司，在上海蓝光公司的股份中，彩虹集团公司的持股比例为 43.1691%，其他国有公司、民营企业和自然人股东持股比例为 56.8309%。2010 年 8 月 2 日，上海蓝光公司与合肥鑫城公司共同出资设立合肥蓝光公司，其中上海蓝光公司占注册资本 54.55%，合肥鑫城公司占注册资本 45.45%，法定代表人为刘文弟。公司类型为其他有限责任公司。

4

由 扫描全能王 扫描创建

IRI-CRT-00000559

114

　　2008 年 11 月 6 日，被告人刘麦海与彩虹集团电子股份有限公司签订《劳动合同》。2010 年 8 月 13 日，上海蓝光公司向彩虹集团电子股份有限公司致《函》借调被告人刘麦海到其公司工作，从 2010 年 7 月 1 日至 2010 年 10 月 1 日。2010 年 9 月 9 日，上海蓝光公司向彩虹集团电子股份有限公司致《员工商调函》，商调被告人刘麦海到其公司工作。2010 年 11 月 22 日，彩虹集团电子股份有限公司下发《关于解除刘麦海劳动合同的通知》，称公司已于 2010 年 10 月与被告人刘麦海解除劳动合同。2010 年 7 月 23 日合肥蓝光公司召开第一届董事会第一次会议决议，经董事长刘文弟提名，董事会表决通过决定聘任刘麦海担任该公司总经理，任期三年，并于 2011 年 1 月 1 日与被告人刘麦海签订了《劳动合同》。2010 年 8 月至 2011 年 9 月期间，被告人刘麦海收受他人财物共计 40 万元，具体事实如下：

　　1、2010 年 8 月，咸阳科通信息技术有限公司经理苗滨为了承揽合肥蓝光公司有关项目工程，在安徽省合肥市蓝鲸大厦刘麦海办公室内，送给刘麦海现金 2 万元。此后，刘麦海让苗滨的施工队伍先行进场施工。

　　2、2010 年 10 月，咸阳科通信息技术有限公司法定代表人刘腾腾为了感谢刘麦海让其施工队伍提前进场施工和在承揽工程方面继续得到刘麦海的照顾，在安徽省合肥市蓝鲸大厦刘麦海办公室内，送给刘麦海现金 5 万元。此后，在邀请招标时，刘麦海将咸阳科通信息技术有限公司挂靠的九冶建设有限公司作为邀请对象并得以中标。

　　3、从 2010 年下半年至 2011 年初，咸阳市科通信息技术有限公司用挂靠的九冶建设有限公司资质，在合肥蓝光公司承揽了道路及钢结构工程。2011 年 3 月，为了对刘麦海表示感谢和在工程投标、施工、付款方面继续得到刘麦海的照

5



CONFIDENTIAL　　　　　　　　　　　　　　　　　　　　　　　　IRI-CRT-00000560

顾，苗淏在安徽省合肥市彩虹蓝光科技有限公司工地刘麦海的临时办公室内，送给刘麦海现金 3 万元。

4、2011 年 3、4 月份，中国电子系统工程第三建设有限公司承揽了合肥蓝光公司的机电安装工程。同年 7 月份的一天，为了感谢刘麦海在工程施工及付款等方面给予的照顾和继续得到刘麦海的帮助，中国电子系统工程第三建设有限公司总经理谭志坚在安徽省合肥市彩虹蓝光科技有限公司工地刘麦海的临时办公室内，送给刘麦海现金 10 万元。

5、2011 年上半年，江苏向荣集团有限公司中标了合肥蓝光公司的电气设备采购及服务合同。同年 8、9 月份的一天晚上，为了在工程付款及合同履行中得到刘麦海的照顾，江苏向荣集团有限公司销售代表唐德平在安徽省合肥市希尔顿酒店一楼茶秀内，送给刘麦海现金 20 万元。

后被告人刘麦海将收受苗淏、刘腾腾、谭志坚、唐德平所送的共计 40 万元陆续存入自己的银行账户，后又转账至自己在上海广发证券所开立的股票账户，用于购买股票和基金。2013 年 9 月 24 日，被告人刘麦海向司法机关上缴赃款 40 万元。

证明以上犯罪事实证据有庭审举证、质证的下列证据予以证实：

（一）证人证言

1、证人刘文弟（系上海蓝光公司总经理兼合肥蓝光公司董事长）的证言，证明 2010 年 4 月份，其作为上海蓝光公司总经理与合肥新站区管委会就设立合肥蓝光公司进行了磋商。当年 6 月份，双方签订了合同。同年 7 月 2 日上午，在彩虹集团公司原总经理邢道钦的办公室召开了会议，会议由邢道钦主持，参加会议的有其和彩虹集团公司原总经理邢道钦、彩虹集团公司党委书记兼副总经理陶魁、彩虹集团公司副总经理童

6

 由 扫描全能王 扫描创建

CONFIDENTIAL                                                                IRI-CRT-00000561

115

海蓝光公司董事长张少文、刘麦海、樊来盈以及秘书王海波。在会议上，邢道钦宣布了合肥蓝光公司的人员安排：由其担任董事长，刘麦海担任总经理，樊来盈担任财务部部长，王海波担任办公室主任。

会后，根据这次会议精神，上海蓝光公司出具书面工作请示单，请示彩虹集团公司将其和刘麦海、汪勇城推荐为合肥蓝光公司董事。彩虹集团公司领导批复同意后，在合肥蓝光公司董事会上，选举其为董事长。随后，其又依据彩虹集团公司2010年7月2日会议上的人事安排，提名刘麦海担任合肥蓝光公司总经理。其只是按照公司法走了个程序而已。

2、证人樊来盈（系合肥蓝光公司财务部部长）、王海波（原系彩虹集团公司副总经理张少文的秘书，现任合肥蓝光公司办公室主任）、陶魁（彩虹集团公司党委书记兼副总经理）、张少文（彩虹集团公司副总经理兼上海蓝光公司董事长）证言，证明2010年7月2日上午，在彩虹集团公司原总经理邢道钦的办公室召开了会议，参加会议的有邢道钦、陶魁、张少文、刘文弟、樊来盈、刘麦海、王海波。在会议上，邢道钦宣布了合肥蓝光公司的人员安排：刘文弟担任董事长，刘麦海担任总经理，樊来盈担任财务部部长，王海波担任办公室主任。会后按照彩虹集团公司领导的要求开始工作。2010年8月2日合肥蓝光公司成立后，根据2010年7月2日彩虹集团公司关于成立合肥蓝光公司的人事安排，由成立后的合肥蓝光公司董事会依照公司法相关规定分别对以上人员进行了聘任。

3、证人薛旭杰（系合肥蓝光公司副总经理）的证言，证明在合肥蓝光公司筹建过程中，在其不知情的情况下，看到有施工队伍进场，其知道是刘麦海叫进场的，只有他能决定这事。当时合肥市委书记要来检查这个项目，需要有个工队进驻撑场面。检查以后，九冶建设有限公司的施工机械并没有撤离，而

7

由 扫描全能王 扫描创建

IRI-CRT-00000562

是干了一段厂区道路。此后，合肥蓝光公司报请合肥新站区管委会同意，对部分工程进行了邀请招标，并将九冶建设有限公司作为被邀请单位，最终他们公司成功中标相关工程。邀请他们招标肯定也是刘麦海确定的。当时公司资金充裕，对九冶公司按进度付款过程比较顺利。

4、证人刘腾腾（系咸阳科通信息技术有限公司法定代表人）的证言，证明 2010 年 10 月其为了感谢刘麦海让其公司得到工程信息、提前进入现场施工、将其公司挂靠的九冶建设有限公司作为邀请对象参加邀请招标等，在安徽省合肥市蓝鲸大厦刘麦海办公室内送给刘麦海现金 5 万元。

5、证人苗滨（系咸阳科通信息技术有限公司经理）证言，证明内容与证人刘腾腾证言内容一致。

6、证人杨春霞（系咸阳科通信息技术有限公司出纳）证言，证明 2010 年 7 月到 12 月，她总共给老板刘腾腾取现大约 48 万元，刘腾腾把这些钱怎么处理了她不知道。

7、证人王玖宏（系九冶建设有限公司西安分公司总经理）、雷建强（系九冶建设有限公司西安分公司员工）、张全万（系九冶建设有限公司董事长）证言，证明咸阳科通信息技术有限公司挂靠九冶建设有限公司，并在 2010 年、2011 年联营其公司承包了合肥蓝光公司厂区道路、室外桁架钢结构、102、103 机电二次培工程。

8、证人谭志坚（系中电三公司总经理）、吴东（系中电三公司总经理助理）证言，证明 2011 年，他公司通过合肥市国际招标公司招标，成为合肥蓝光公司的机电安装承包商之一，为该公司安装动力站房、铺设电缆、锅楼房、消防水池，工程标的约为 1000 多万元。在施工过程中，其二人商量后，谭志坚于 2011 年 7、8 月份的一天，在工地上刘麦海的临时办公室送给刘麦海 10 万元。给刘麦海送钱主要是为了感谢他。一是

8

116

其公司在整个施工过程中，工程一直进展的比较顺利，刘总从来没有为难；二是在施工过程中，在整个工程的协调、配合方面给予了不少支持；三是在工程进度款的结算上，也从来没有故意拖延、为难过，保证施工中的资金流；四是还想借此进一步把关系处理好，以便日后对方有工程时能想着其公司。

9、证人梅丽（系中电三公司办公室办事员）证言，证明经她辨认侦查人员向她出示谭志坚 2011 年 7 月至 12 月在财务上报销的相关书证资料 28 页，确认都是谭志坚总经理把票据给她，她拿到财务上报销的，用这些票据冲抵谭志坚先前在财务上提取的备用金。

10、证人唐德平（系江苏向荣集团有限公司销售代表）证言，证明 2010 年下半年，他作为向荣集团公司销售代表，向合肥蓝光公司销售价值 6700 万的电缆、配电柜等电气设备，至 2012 年上半年，他公司已经完全履行了合同义务。在 2011 年 8、9 月份的一天晚上，他在合肥希尔顿酒店一楼的茶秀里送给刘麦海现金 20 万元。他给刘麦海送钱主要是为了让他在付款方面给与照顾，及时付款。

11、证人牛红梅（系刘麦海之妻）证言，证明自己对家里的家庭收入、资产情况以及刘麦海购买股票基金的具体情况并不清楚，刘麦海从来没有具体给他说过。

（二）书证

1、陕西省人民检察院《关于刘麦海涉嫌职务犯罪线索的交办函》、咸阳市人民检察院《立案决定书》，证明 2013 年 7 月 30 日，陕西省人民检察院将合肥彩虹蓝光有限公司原总经理刘麦海涉嫌职务犯罪线索交由咸阳市人民检察院查处。2013 年 8 月 5 日，咸阳市人民检察院对刘麦海受贿案立案侦查。

2、彩虹集团公司《企业法人营业执照》、《组织机构代码证》、上海蓝光公司《工商资料》、合肥蓝光公司《工商资料》，

9

 由 扫描全能王 扫描创建

CONFIDENTIAL
IRI-CRT-00000564

证明彩虹集团公司系企业法人，经济性质为全民所有制。上海蓝光公司系企业法人，2000 年 4 月 12 日成立，公司类型为有限责任公司（国内合资），注册资本中国有股份占 61.2414%，彩虹集团公司为股东之一，股权比例占 43.1691%，其他国有公司、民营企业和自然人股东持股比例为 56.8309%。合肥蓝光公司系有限责任公司，2010 年 8 月 2 日成立。其中上海蓝光公司占股 54.55%，合肥鑫城公司（国有独资公司）占股 45.45%。

3、刘麦海身份资料、个人档案、合肥蓝光公司章程、第一届董事会第一次会议议案、2008 年 11 月 6 日彩虹集团电子股份有限公司与被告人刘麦海签订的《劳动合同》、2010 年 12 月 22 日，彩虹集团电子股份有限公司《关于解除刘麦海劳动合同的通知》、2010 年 8 月 13 日《关于借调刘麦海同志的函》、2010 年 9 月 9 日《员工商调函》，证明 2008 年 11 月 6 日，被告人刘麦海与彩虹集团电子股份有限公司签订《劳动合同》。2010 年 7 月 1 日至 2010 年 10 月 1 日，上海蓝光公司向彩虹集团电子股份有限公司致《函》借调被告人刘麦海到其公司工作。2010 年 9 月 9 日，上海蓝光公司向彩虹集团电子股份有限公司致《员工商调函》，称由于合肥彩虹蓝光 LED 项目扩建需要，要求商调刘麦海到上海蓝光公司工作。2010 年 11 月 22 日，彩虹集团电子股份有限公司下发《关于解除刘麦海劳动合同的通知》，称公司已于 2010 年 10 月与被告人刘麦海解除劳动合同。2010 年 7 月 23 日，合肥蓝光公司第一届董事会第一次会议议决，经董事长刘文弟提名，董事会表决通过决定聘任刘麦海担任该公司总经理，任期三年。2010 年 8 月 2 日，合肥蓝光公司登记成立，并于 2011 年 1 月 1 日与被告人刘麦海签订了《劳动合同》。

4、《彩虹集团公司工作请示单》，证明 2010 年 8 月 16 日，

10

 由 扫描全能工 扫描创建

CONFIDENTIAL                                                                 IRI-CRT-00000565

*117*

上海蓝光公司以《工作请示单》向彩虹集团公司人力资源部报请《关于向合肥蓝光公司委派董事和监事的报告》中称"提名刘文弟、刘麦海、汪勇城担任合肥蓝光公司董事（经合肥蓝光职工代表会议选举，刘麦海担任合肥蓝光公司职工董事）"，最后批示意见：同意（邢道钦系彩虹集团公司法定代表人）。

5、樊来盈会议笔记，证明2010年7月2日，彩虹集团公司会议决定由刘麦海担任合肥蓝光基地（LED）总经理，樊来盈的会议笔记对此予以记录。

6、合肥蓝光公司《请示文件》、合肥新战区经贸发展局、新站区管委会《批复文件》。

证明2010年7月、8月，合肥蓝光公司请示合肥新战区管委会对LED项目建设中的有关项目进行邀请招标，新战区管委会批复同意。

7、九冶建设有限公司《工商资料》、咸阳科通信息技术有限公司《工商资料》、《合肥蓝光公司合同招标投标备忘录》及《审批单》、《九冶建设有限公司合肥蓝光建设项目合同执行情况汇总表》等、九冶建设有限公司《明细账》、《合同执行明细》、合肥蓝光公司《付款凭证》等、九冶建设有限公司与咸阳科通信息技术有限公司《工程分包施工合同》、九冶建设有限公司向咸阳科通信息技术有限公司《付款凭证》。

证明九冶建设有限公司系有限责任公司，法定代表人张全万。咸阳科通信息技术有限公司系有限责任公司，法定代表人刘腾腾，刘腾腾、苗滨为股东。2010年至2012年，刘腾腾代表九冶建设有限公司参加了合肥蓝光公司的道路及钢结构工程招标并中标。 2011年4月11日、2012年5月7日，咸阳科通信息技术有限公司与九冶建设有限公司签订了关于合肥彩虹LED项目道路工程、彩虹合肥光伏有限公司道排工程、合肥彩虹蓝光科技钢结构工程等工程的分包施工合同。截止

11

由 扫描全能王 扫描创建

2013 年 6 月 30 日,合肥蓝光公司已付合同金额为 26244008.2□
元,付款比例 83.68%,九冶建设有限公司后将款项转入咸□
科通信息技术有限公司账户或其指定的材料供应商账户。相□
文件上有合肥蓝光公司总经理刘麦海签字。

8、刘腾腾招商银行咸阳分行、建设银行咸阳分行账户明
细、2010 年咸阳科通信息技术有限公司给刘腾腾取现账务资□
料。

证明 2010 年 7 月 8 日,刘腾腾建设银行咸阳分行账户转□
账支取 5 万元。2010 年 7 月到 12 月,咸阳科通信息技术有限
公司给刘腾腾取现约 48 万元。

9、中电三公司《工商资料》、合肥蓝光公司《合同招标投
标文件》及《合同》、《合同执行情况》、《账务明细》、《付款凭
证》。

证明中国电子系统工程第三建设有限公司系有限责任公
司,谭志坚系法定代表人、总经理。2011 年 4 月 8 日、3 月 1
日、11 月 21 日,中国电子系统工程第三建设有限公司与合肥
蓝光公司签订了关于合肥 LED 产业化项目室外机电安装工程、
301#厂房机电安装工程、401#办公楼机电安装工程施工合同。
合同总额 27478760.36 元,收款总计 26925194.99 元,收款比
例 97.99%,相关文件上有合肥蓝光公司总经理刘麦海签字。

10、机票、动车票复印件、2011 年 7 月至 12 月谭志坚报
销明细。

证明 2011 年 7 月到 12 月,谭志坚向中电三公司报销办公
费、招待费、差旅费等共计 137459.05 元。

11、向荣集团《工商资料》、唐德平身份信息、《委托销售
合同》、合肥蓝光公司《采购合同》、《招标文件》及《合同》、
向荣集团内部明细账、合同执行情况明细、付款明细等。

证明向荣集团有限公司系有限责任公司,法定代表人唐崇

12

由 扫描全能王 扫描创建

IRI-CRT-00000567

国。2010 年、2011 年唐德平与向荣集团有限公司签订了委托销售合同，由唐德平作为向荣集团的外来销售员从事销售工作。2011 年 3 月 30 日、5 月 31 日、2012 年 5 月 31 日，唐德平通过招投标与合肥蓝光公司签订了电气设备采购及服务合同、室外桥架采购合同。截止 2013 年 1 月 28 日，合肥蓝光公司已付合同金额为 72807710.84 元，付款比例 90.65%，相关文件上有合肥蓝光公司总经理刘麦海签字。2011 年 8 月，唐德平从向荣集团公司借款合计 240200 元。

12、刘麦海建设银行合肥城东支行、合肥嘉山路分理处、中信银行咸阳支行、中国银行上海紫薇路支行账户明细、刘麦海广发证券开户资料即交易明细。

13、《收款收据》。证明 2013 年 9 月 24 日，刘麦海向陕西省咸阳市人民检察院退缴涉案款 40 万元。

（三）被告人刘麦海供述，证明 2010 年 7 月初在彩虹集团总部，集团总经理邢道钦、书记陶魁、副总经理兼上海蓝光公司董事长张少文和他谈话，让其去负责组建合肥蓝光公司。随后，在一个会议上由彩虹集团总经理邢道钦宣布他为合肥蓝光公司总经理。这算是个推荐。会议后就按照彩虹集团公司的这个谈话和会议安排决定，去合肥组建合肥蓝光公司。该公司成立后，刘文弟在第一次董事会上提名他担任总经理，并获得通过。其担任合肥蓝光公司总经理职务的具体职责是：在董事会领导下，完成公司人员队伍的搭建、公司的筹备和项目建设的前期准备。2010 年下半年至 2011 年下半年间，其利用担任合肥蓝光公司总经理职务的便利，收受了咸阳科通信息技术有限公司法定代表人刘腾腾、总经理苗滨夫妇共 10 万元现金，苗滨、刘腾腾给他送钱无非是因为他是合肥蓝光公司的总经理，在招标、施工、工程进度款等方面都对他们公司有一定的影响，他们想让他在这方面给与照顾，他作为总经理在工作中能照顾

13

由 扫描全能王 扫描创建

IRI-CRT-00000568

的，都尽可能给与照顾；收受了江苏向荣集团公司销售代表唐
德平现金 20 万元，唐德平给其送钱，肯定是希望他作为合肥
彩红蓝光科技有限公司的总经理，尽可能的协调各方面的关
系，帮助他们公司顺利履行合同，并顺拿到货款；收受了中电
三公司总经理谭志坚现金 10 万元，谭志坚给他送钱肯定是希
望其再工作中，能在文明施工、安全施工、施工进度及工程的
付款方面给予中电三公司照顾和帮助，他再这些方面从来没有
故意刁难过他们，没有押后迟延过他们的工程进度款。这 40
万元其都陆续存进银行，又从银行转到股市炒股了。

本院认为，被告人刘麦海身为国家工作人员，利用职务上
的便利，非法收受他人财物 40 万元，为他人谋取利益，数额
巨大，其行为已构成受贿罪。被告人刘麦海归案后能如实供述
自己的罪行，依法从轻处罚。鉴于其自愿认罪，并上缴了全部
赃款，酌情从轻处罚。

国有公司彩虹集团出资成立上海蓝光公司，上海蓝光公司
又与其他公司出资成立合肥蓝光公司，故合肥蓝光公司是国有
参股公司。刘麦海由国有公司彩虹集团提名、推荐到合肥蓝光
公司从事管理工作，后经合肥蓝光公司董事会决定担任总经
理。根据最高人民法院、最高人民检察院《关于办理国家出资
企业中职务犯罪案件具体应用法律若干问题的意见》第六条
"经国家机关、国有公司、企业、事业单位提名、推荐、任命、
批准等，在国有控股、参股公司及其他分支机构中从事公务的
人员，应当认定为国家工作人员。故被告人刘麦海在担任合肥
蓝光公司总经理期间收受他人财物，其行为构成受贿罪。综上
所述，抗诉机关关于原审认定原审被告人刘麦海主体身份的认
定错误，认定罪名不正确的抗诉理由成立，应予支持。依据《中
华人民共和国刑事诉讼法》第二百二十五条（二）项、《中华
人民共和国刑法》第三百八十五条第一款、第六十七条第三款

14

 由 扫描全能王 扫描创建

CONFIDENTIAL

IRI-CRT-00000569

*119*

之规定，判决如下：

一、撤销咸阳市秦都区人民法院（2013）咸秦刑初字第 00345 号刑事判决，即被告人刘麦海犯非国家工作人员受贿罪，判处有期徒刑六年。

二、被告人刘麦海犯受贿罪，判处有期徒刑十年。

（刑期从判决执行之日起计算。判决执行以前先行羁押的，羁押一日折抵刑期一日，即自 2013 年 8 月 6 日起至 2023 年 8 月 5 日止。）

本判决为终审判决。

審　判　長　王峰光

審　判　員　刘宏刚

代理审判员　张亚鹏



二〇一四年十一月十一日

书　记　员　王高鹏

本件与原本核对无异

15

 由 扫描全能王 扫描创建

# Exhibit 11



June 25, 2018

**Certification**

**Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English of the document with bates numbers range: IRI-CRT-00000571 - IRI-CRT-00000572.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

15 W. 37th Street 8th Floor
New York, NY 10018
212.581.8870
ParkIP.com

Letter from the State Bureau of Statistics Regarding the Opinion on the Finding of a State-Owned Company and Enterprise

Guo Tong Han [2003] Number 44

To the Ministry of Public Security:

This is to acknowledge receipt from your Ministry Letter Seeking Opinion on the Finding of a State Owned Company and Enterprise (Gong Jing [2003] Number 368). After review, the following opinion is hereby submitted:

We believe that a State-owned enterprise can be distinguished in a broad sense and in a narrow sense. A State-owned enterprise in a broad sense refers to an enterprise that has State capital and can be divided into three levels:

1. A purely State-owned enterprise, including three forms, including a wholly State-owned enterprise, a domestic wholly-owned company and a State-owned joint venture, for which the capital of the enterprise is wholly owned by the State.

2. A State-controlled company. According to the provisions of the State Bureau of Statistics Classification Message Regarding Statistical Information of a State-Controlled Economy, State control shall include two methods: absolute State control and relative State control.

An enterprise absolutely controlled by the State refers to an enterprise for which the entire capital of such an enterprise, the percentage of the State capital (equity) is greater than 50%.

An enterprise relatively controlled (including control by agreement) by the State refers to an enterprise for which, even though the percentage of State capital (equity) is not greater than 50%, it is relatively higher than other economic elements in the enterprise (relative control); or it refers to an enterprise for which, even though the State capital is not greater than other economic elements, according to the provisions of such an agreement, the State has the actual control (controlled by agreement)

CONFIDENTIAL                                    IRI-CRT-00000571

of such an enterprise.

3. An enterprise with State participation refers to an enterprise that has some State capital but that is not controlled by the State.

Joint ventures that are State-owned and that are also under other ownership are respectively categorized under level 2 and level 3.

The State-owned enterprise in a narrow sense shall only refer to a purely State-owned enterprise.

国家统计局关于对国有公司企业认定意见的函

国统函[2003]44号

公安部：

你部《关于征求对国有公司企业认定问题意见的函》（公经[2003]368号）收悉。经研究，现提出如下意见：

我们认为，国有企业有广义、狭义之分。广义的国有企业是指具有国家资本金的企业，可分为三个层次：

一、纯国有企业。包括国有独资企业、国有独资公司和国有联营企业三种形式，企业的资本金全部为国家所有。

二、国有控股企业。根据国家统计局《关于统计上国有经济控股情况的分类办法》的规定，国有控股包括国有绝对控股和国有相对控股两种形式。

国有绝对控股企业是指在企业的全部资本中，国家资本（股本）所占比例大于50%的企业。

国有相对控股企业（含协议控制）是指在企业的全部资本中，国家资本（股本）所占的比例虽未大于50%，但相对大于企业中的其他经济成分所占比例的企业（相对控股）；或者虽不大于其他经济成分，但根据协议规定，由国家拥有实际控制权的

CONFIDENTIAL
IRI-CRT-00000571

企业（协议控制）。

三、国有参股企业。是指具有部分国家资本金，但国家不控股的企业。

国有与其他所有制的联营企业，按照上述原则分别划归第2、3层次中。

狭义的国有企业，仅指纯国有企业。

# Exhibit 12



June 25, 2018

**Certification**

**Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English of the document with bates numbers range: IRI-CRT-00000581 - IRI-CRT-00000582.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

15 W. 37th Street 8th Floor
New York, NY 10018
212.581.8870
ParkIP.com

*Please submit it to President Ma for review (February 14)*

*Please submit it to President Ma and Secretary Tao for review*

*Hu Peirong (February 15, 2001)*

| Official Document | S. No.*36* |
|---|---|
| | *February 14, 2001* |

# Document of the State-owned Enterprise Supervisory Board Working Office

GJBF (Dispatched) [2001] No.1

### Regarding the Dispatching by the State Council of a Board of Supervisors of a Key Large State-owned Enterprise

To IRICO Group Electronics Co., Ltd.:

   With the approval of the State Council, it is decided to dispatch a board of supervisors of a key large state-owned enterprise to your company. The chairman of the board of supervisors is Qiao Longde (deputy ministerial level), and full-time supervisors are Zheng Xinjun,

[handwritten:] *It has been sent to the general plant. February 14*

[scan code] Scan created by  CamScanner

CONFIDENTIAL                                                      IRI-CRT-00000581

Li Yingzhu, and Liu Shejian.

According to the provisions of Interim Regulations on the Boards of Supervisors in State-owned Enterprises and the needs of the board of supervisors, please make preparations, and actively support and earnestly cooperate with the board of supervisors in carrying out the work. In order to ensure the smooth progress of the work of the board of supervisors, during the on-site review of the board of supervisors, the main leaders of your company shall suspend business trips and going abroad; if the main leaders have approval to go abroad, their trips shall be re-arranged according to the circumstances of the work of the board of supervisors; and special circumstances shall be reported to the chairman of the board of supervisors for approval.

[seal: State-owned Enterprise Supervisory Board Working Office]

February 5, 2001

**Key words: Enterprise; Board of supervisors; Dispatch; Notice**

[scan code] Scan created by  CamScanner

CONFIDENTIAL                                                        IRI-CRT-00000582





# 国有企业监事会工作办公室文件

国监办发（派出）〔2001〕1 号

## 关于国务院派出国有重点大型企业
## 监事会的通知

彩虹电子集团公司：

经国务院批准，决定向你企业派出国有重点大型企业监事会，监事会主席乔龙德（副部长级），专职监事郑新军、



由 扫描全能王 扫描创建

CONFIDENTIAL                                                      IRI-CRT-00000581

李迎珠、刘社建。

　　根据《国有企业监事会暂行条例》规定和监事会工作需要，请做好准备，积极支持、认真配合监事会开展工作。为确保监事会工作的顺利进行，在监事会进行实地审查期间，你企业主要领导人员暂停出差、出国；已经批准出国的，须酌监事会工作进行情况，再行安排；特殊情况报请监事会主席批准。



国有企业监事会工作办公室
二〇〇一年二月五日

**主题词：企业　监事会　派出　通知**

由 扫描全能王 扫描创建

CONFIDENTIAL

IRI-CRT-00000582

Exhibit 13



June 25, 2018

**Certification**

<div align="center">

**Park IP Translations**

</div>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English of the document with bates number: IRI-CRT-00000583.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

<div align="center">

15 W. 37th Street 8th Floor
New York, NY 10018
212.581.8870
ParkIP.com

</div>

| Official document | S No.*154* |
|---|---|
| | *May 30, 2001* |

*Please submit it to President Ma and Secretary Tao for review*

*Hu Peirong (May 31, 2001)*

## Document of State-owned Enterprise Supervisory Board Working Office

GJBF (Adjusted) [2001] No. 84

### Notice of Adjustment of Members of the Board of Supervisors

To IRICO Group Electronics Co., Ltd.:

With the approval of the State-owned Enterprise Supervisory Board Working Office, Comrade Li Yulin is being dispatched to your company to be a member of the board of supervisors of state-owned enterprises.

[seal: State-owned Enterprise Supervisory Board Working Office]

May 17, 2001

**Key words: Enterprise; Board of supervisors; Adjustment; Notice**

[scan code] Scan created by CamScanner

CONFIDENTIAL                                        IRI-CRT-00000583

*（手写）谨悉。阅指九阅。*

*（手写签名）胡江章  2001.5-31*

# 国有企业监事会工作办公室文件

国监办发（调整）[2001]84 号

## 关于监事会成员调整的通知

彩虹电子集团公司：

经国有企业监事会工作办公室批准，李玉林同志为派出你企业的国有企业监事会成员。



二〇〇一年五月十七日

主题词：　企业　监事会　调整　通知

 由 扫描全能王 扫描创建

Exhibit 14



June 25, 2018

**Certification**

**Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English  of the document with bates numbers range: IRI-CRT-00000584 - IRI-CRT-00000585.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

1573

16

### National Administration of State-Owned Assets

GZP (1995) No.334

### Reply Regarding the Initiation of Asset Appraisal for Floatation of Shares of IRICO Display Devices Company Limited

To Shaanxi Provincial State-owned Assets Administration Bureau:

IRICO Display Devices Co., Ltd. of your province intends to conduct a floatation of shares and has put forward an application for initiation of asset appraisal. Pursuant to the provisions of Administrative Measures for State-Owned Assets Assessment (Decree No. 91 of the State Council of 1991) and Detailed Rules for the Implementation of the Administrative Measures for State-Owned Assets Assessment, the initiation of asset appraisal is approved.

The company is requested to entrust an assessment agency that has asset assessment qualifications in the securities industry to conduct an assessment, and the assessment results shall be submitted to the Asset Assessment Center of the Bureau for review and confirmation.

[seal: National Administration of State-Owned Assets]

June 12, 1995

Copy to: IRICO Display Devices Company Limited

6-3-1

Scan created by CamScanner

CONFIDENTIAL

IRI-CRT-00000584

Audit and Verification Opinion of the Assets Assessment Report on the Share Floatation Project of IRICO Display Devices Company Limited

IRICO Display Devices Company Limited intends to list its shares. Zhongzhou Certified Public Accountants Firm was entrusted to evaluate the company's entire assets. The assessment results are as follows:

Asset assessment summary sheet

Base date of assessment: March 31, 1995                                   Unit: RMB 1OK

| Item | Original book value | Net book value | Replacement value | Assessed value | Value added | Increasing rate |
|---|---|---|---|---|---|---|
| Machinery & equipment | 35205.16 | 35010.72 | 44226.68 | 40144.27 | 5133.55 | 5% |
| Buildings | 10478.14 | 10070.66 | 11404.01 | 11061.89 | 991.23 | 10% |
| Construction in process | -------- | 2198.61 | 2772.59 | 2678.90 | 480.29 | 22% |
| Current Assets | -------- | 41109.29 | 41512.21 | 41374.32 | 265.03 | 0.6% |
| Proprietary technology | -------- | 2358.38 | 2358.38 | 2358.38 | 0.00 | 0% |
| Land use rights | -------- | -------- | 289.78 | 289.78 | 289.78 | -% |
| Total assets | -------- | 92114.95 | 103930.94 | 99274.83 | 7159.88 | 8% |
| Long-term liabilities | -------- | 1288.13 | -------- | 1288.13 | 0.00 | 0% |
| Current Liabilities | -------- | 41831.68 | -------- | 41472.39 | -359.29 | -0.9% |
| Total Liabilities | -------- | 43119.81 | -------- | 42760.52 | -359.29 | -0.8% |
| Net assets | -------- | 48995.05 | -------- | 56514.31 | 7519.17 | 15% |

Upon asset assessment, IRICO Display Devices Company Limited has assets of RMB 992,748,300, liabilities of RMB 427,605,200, and net assets of RMB 565,143,100.
The main attachments of the asset assessment report are: asset assessment schedules, summary sheet.

 Scan created by CamScanner

Scan created by CamScanner

CONFIDENTIAL

IRI-CRT-00000586

1573

16

# 国 家 国 有 资 产 管 理 局

国资评（1995）第334号

### 关于彩虹显示器件股份有限公司股票上市项目
### 资产评估立项的批复

陕西省国有资产管理局：

　　你省彩虹显示器件股份有限公司拟进行股票上市工作，提出资产评估立项申请。根据《国有资产评估管理办法》（国务院1991年第91号令）和《国有资产评估管理办法施行细则》的规定，准予资产评估立项。

　　请企业委托具有证券业资产评估资格的评估机构进行评估，评估结果报我局资产评估中心审核确认。



一九九五年六月十二日

　　抄送：彩虹显示器件股份有限公司

6-3-1

 由 扫描全能王 扫描创建

CONFIDENTIAL IRI-CRT-00000584

对彩虹显示器件股份有限公司股票上市项目
资产评估报告的审核验证意见

　　彩虹显示器件股份有限公司拟将其股票上市。委托中洲会计师事务所对该公司的全部资产进行了评估，评估结果如下：

资产评估汇总表

评估基准日：1995年3月31日　　　　　　　　　　　单位：万元人民币

| 资产项目 | 帐面 原值 | 帐面 净值 | 重置 价值 | 评估 值 | 增加 值 | 增加率 |
|---|---|---|---|---|---|---|
| 机器设备 | 35205.16 | 35010.72 | 44226.68 | 40144.27 | 5133.55 | 3% |
| 房屋建筑物 | 10478.14 | 10070.66 | 11404.01 | 11061.89 | 991.23 | 10% |
| 在建工程 | —— | 2198.61 | 2772.59 | 2678.90 | 480.29 | 22% |
| 流动资产 | —— | 41109.29 | 41512.21 | 41374.32 | 265.03 | 0.6% |
| 专有技术 | —— | 2358.38 | 2358.38 | 2358.38 | 0.00 | 0% |
| 土地使用权 | —— | —— | 289.78 | 289.78 | 289.78 | —% |
| 资产合计 | —— | 92114.95 | 103930.94 | 99274.83 | 7159.88 | 8% |
| 长期负债 | —— | 1288.13 | —— | 1288.13 | 0.00 | 0% |
| 流动负债 | —— | 41831.68 | 41472.39 | 41472.39 | -359.29 | -0.9% |
| 负债合计 | —— | 43119.81 | 42760.52 | 42760.52 | -359.29 | -0.9% |
| 净资产 | —— | 48995.05 | 56514.31 | 56514.31 | 7519.17 | 15% |

　　资产评估后，彩虹显示器件股份有限公司的资产为99274.83万元人民币，负债为42760.52万元人民币，净资产为56514.31万元人民币。

　　资产评估报告书的主要附件有：资产评估明细表、证


由 扫描全能王 扫描创建

CONFIDENTIAL

IRI-CRT-00000585

Exhibit 15



June 25, 2018

**Certification**

**Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English  of the document with bates numbers range: IRI-CRT-00000586 - IRI-CRT-00000587.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

15 W. 37th Street 8th Floor
New York, NY 10018
212.581.8870
ParkIP.com

| | 2006 | 142 |
|---|---|---|
| Administrative | Regularly | 2 |

| IRICO Group Co., Ltd. | |
|---|---|
| Confidential room | S.Z.No.1-192 |
| | October 10, 2006 |

# State-owned Assets Supervision and Administration Commission of the State Council

ZFP (2006) No.1160

### Reply on the Results of the Settlement of Performance-Linked Pay of Central Enterprise in 2005

To IRICO Group Corporation:

Pursuant to Notice on Doing a Good Job in Linking Total Wages to Economic Benefits of Central Enterprises in 2005 (GZFFP [2005] No. 303) and the provisions of related national policies, and in accordance with the approval opinions of SASAC for the scheme of wage linked to performance in 2005 and the financial statements of your company, combined with the settlement status of performance-linked pay reported by your company, upon review, the following reply is hereby given regarding settlement results:

I. It was verified that your company should provide a total of RMB 437,430,000 in performance-linked pay in 2005, including a total of RMB -48,600,000 of newly increased benefit-related wages. In 2005, the total specifically designated wages of your company in line with national policies was RMB 3.18 million, including wages for newly added graduates of colleges and technical secondary schools and demobilized soldiers in the current year, for increased personnel and capital of new and expanded projects included in the national plan after being transferred from infrastructure to increased production, and for personnel transferred in under collective ownership, etc.

The total amount of the overdrawn wages of your company in 2005 was RMB_____.

II. Please strengthen the management and control of total wages. In addition to the total wages approved by the SASAC, unless otherwise stated under national policies, an enterprise shall not include as expenditures in its costs any other wage items in other forms. All capital increases that are linked to employees of the company shall be included as benefits-related wages. For the overdrawn part, the wage balance payable shall be reduced accordingly. The insufficiency shall be deducted from actual wages in 2006. At the same time, your company is required to regulate the

-1-

remuneration withdrawn for technical awards and amateur design awards in accordance with the Notice on Relevant Issues Concerning the Withdrawing of Remuneration of Technology Rewards and Business Design Awards for Central Enterprises (GZFP [2006] No. 243).

III. SASAC will strengthen supervision and inspection of the implementation of performance-linked pay. Where the total amount of wages is overdrawn or overpaid, the principal responsible person and relevant responsible persons of the company shall be given criticisms and have their performance salary deducted correspondingly in strict accordance with the provisions of Notice on Printing and Distributing the Interim Measures for Remuneration Management of Responsible Persons of Central Enterprises (GZFFP [2004] No. 227), so as to encourage the enterprise to establish a self-discipline mechanism for income distribution.

IV. All central enterprises should take the important thought of the "Three Represents" as guidance, and from the perspective of building a harmonious society, further improve understanding of the work of strengthening income distribution management, constantly deepen reform of the internal income distribution system, standardize income distribution, rationalize the income distribution relationships among employees, key positions, and general positions among various units within the company, and between headquarters and subordinate enterprises, and gradually establish a scientific and rational, fair and equitable income distribution system.

Your company is required to complete the decomposition of the funded companies' annual total performance-linked pay settlement as soon as possible, and submit a detailed breakdown of the circumstances (including the name of the funded company, the average number of employees and the total amount of wages) to SASAC (Enterprise Distribution Bureau) in two copies together with the electronic documents before October 15.

Email address: fenpei-fp@sasac.gov.cn

[seal: State-owned Assets Supervision and Administration Commission of the State Council]

September 20, 2006

**Key words: Economic management   Enterprise   Performance-linked pay   Reply**

Copy within the Commission to: evaluation bureau, relevant board of supervisors.

General Office of SASAC                    Printed and issued on September 22, 2006

Typed by: Liu Demin                        Checked by: Lai Ting

-2-

[scan code] Scan created by  CanScanner

CONFIDENTIAL                                    IRI-CRT-00000587

2006 142
行政 定期 2

彩虹集团公司
机要室 收字第 1-192 号
2006 年10月10

# 国务院国有资产监督管理委员会

国资分配〔2006〕1160 号

## 关于 2005 年度中央企业工效挂钩清算结果的批复

彩虹集团公司:

根据《关于做好 2005 年度中央企业工资总额同经济效益挂钩工作的通知》(国资发分配〔2005〕303 号)和国家有关政策规定,按照国资委对你单位 2005 年度工效挂钩方案及财务决算的批复意见,结合你单位上报的工效挂钩清算情况,经审核,现将清算结果批复如下:

一、核定你单位 2005 年度应提工效挂钩工资总额 43743 万元,其中新增效益工资 -4860 万元。2005 年度你单位符合国家政策规定的单列工资总额为 318 万元,包括当年新增大中专毕业生和安置复转军人、列入国家计划的新建扩建项目由基建正式移交生产后的增人增资、成建制划入人员工资等。

你单位 2005 年度超提工资总额 万元。

二、请你单位加强工资总额管理调控,在国资委核定的工资总额以外,除国家政策另有规定的,企业不得再以其他形式在成本中列支任何工资性项目。挂钩企业职工的所有增资,均应由效益工资列支。对超提部分应相应冲减应付工资余额,不足的部分应在 2006 年度实提工资中予以扣减。同时,请你单位根据《关于中央

由 扫描全能王 扫描创建

企业计提技术奖酬金和业务设计奖有关问题的通知》(国资分配〔2006〕243 号)要求,规范计提技术奖酬金和业余设计奖。

三、国资委将加大对工效挂钩执行情况的监督检查力度,对超提或超发工资总额的,严格按照《关于印发中央企业负责人薪酬管理暂行办法的通知》(国资发分配〔2004〕227 号)规定,对企业主要负责人和相关责任人给予通报批评并相应扣减其绩效薪金,促进企业建立收入分配自我约束机制。

四、各中央企业要以"三个代表"重要思想为指导,从建设和谐社会的高度,进一步提高对加强收入分配管理调控工作的认识,不断深化企业内部收入分配制度改革,规范收入分配秩序,理顺企业内部各单位之间、本部与所属企业职工、关键岗位与一般岗位职工的收入分配关系,逐步构建科学合理、公平公正的收入分配体系。

请你单位尽快将年度工效挂钩工资总额清算分解落实到所出资企业,并于 10 月 15 日前将分解情况(含所出资企业名称、平均职工人数及工资总额)一式 2 份及电子文档报国资委(企业分配局)。

邮箱地址:fenpei—fp@sasac.gov.cn



二○○六年九月二十日

**主题词:经济管理　企业　工效挂钩　批复**

委内抄送:评价局,有关监事会。

国资委办公厅　　　　　　　　　　2006 年 9 月 22 日印发

录入:刘德敏　　　　　　　　　　　　　　校对:来婷

— 2 —

 由 扫描全能王 扫描创建

CONFIDENTIAL　　　　　　　　　　　　　　　　IRI-CRT-00000587

# Exhibit 16



June 25, 2018

**Certification**

**Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English of the document with bates number: IRI-CRT-00000588.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

173

| | 2007 | 013 1-192 | |
|---|---|---|---|
| Business | Permanent | 2 | |

*Jan. 7, 2008*

# State-owned Assets Supervision and Administration Commission of the State Council

Urgent

GZPJ [2007] No. 1589

### Notice on Handing in State-Owned Capital Gains of Central Enterprises in 2006

IRICO Group Corporation:

According to *State Council's Opinions on Trial Implementation of State-Owned Capital Operating Budgets* (GF [2007] No. 26) and *Notice of Ministry of Finance and SASAC on Printing and Issuing Provisional Administrative Measures for the Collection of State-owned Capital Gains of Central Enterprises* (CQ [2007] No. 309) and other related regulations, after verification, the 2006 state-owned capital gains which company shall hand in is RMB2.98 million. Your company is requested to pay the state-owned capital gains in a timely manner in accordance with the provisions of this Notice, and a copy of the payment voucher shall be submitted to our commission (Statistical Evaluation Bureau) for filing within 5 working days after the payment.

[seal: State-owned Assets Supervision and Administration Commission of the State Council]
[month illegible] 26, 2007

— 1 —

CONFIDENTIAL



173

2008 1-192
17

# 国务院国有资产监督管理委员会

急

国资评价〔2007〕1589 号

## 关于中央企业 2006 年度国有资本
## 收益上交的通知

彩虹集团公司：

  根据《国务院关于试行国有资本经营预算的意见》（国发
[2007]26 号）和《财政部 国资委关于印发<中央企业国有资本收
益收取管理暂行办法>的通知》（财企[2007]309 号）等有关规定，
经核定，你公司 2006 年度应交国有资本收益为 298 万元，请你公
司依据本通知按规定及时交纳国有资本收益，并将有关交款凭证
复印件于交款后 5 个工作日内报我委（统计评价局）备案。



二〇〇七年十月十六日

— 1 —

 由 扫描全能王 扫描创建

CONFIDENTIAL
IRI-CRT-00000588

# Exhibit 17



June 25, 2018

**Certification**

**Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English of the document with bates numbers range: IRI-CRT-00000589 - IRI-CRT-00000592.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

*319*

## State-owned Assets Supervision and Administration Commission of the State Council

FPH [2005] No.078

**Notice on Doing a Good Job in Declaration of the 2004 Performance Salary Cashing Scheme and the 2005 Base Salary Scheme for Responsible Persons of Central Enterprises**

All Central entreprises:

In order to do a good job in the 2004 performance salary cashing and the 2005 base salary confirmation for the responsible persons of central enterprises, in accordance with the provisions of Interim Measures for Remuneration Management of Responsible Persons of Central Enterprises (GZFFP [2004] No. 227, hereinafter referred to as the Remuneration Management Measures) and other related documents, the relevant matters are hereby notified as follows:

**I. Declaration of 2004 Performance Salary Cashing Scheme**

(I) The performance salary of an enterprise's legal representative in 2004 shall be determined by the SASAC in accordance with Remuneration Management Measures, Performance Assessment Methods and the enterprise's 2004 operating performance assessment grade and assessment scores.

(II) For other responsible persons of the enterprise, the performance salary in 2004 shall be reported by the enterprise to SASAC for approval according to the division of labor and performance assessment of the responsible persons. In principle, the performance salary of the other responsible persons of the enterprise in 2004 shall not exceed the performance salary of the legal representative of the enterprise.

(III) The performance salary cashing scheme submitted by the enterprise shall include:

[scan code] Scan created by CamScanner

1. Completion status of enterprise performance evaluation indicators, comparison of the current year's effectiveness with the best effectiveness historically, etc.

2. Procedures and results of performance evaluation and performance salary determination for other responsible persons of the enterprise.

3. Remuneration settlement scheme for the responsible person of the enterprise in 2004 (which shall be affixed with seals separately).

**II. Regarding declaration of the 2005 base salary scheme**

(I) The base salary of the enterprise's legal representative in 2005 shall be determined by SASAC in accordance with the provisions of the relevant documents such as Remuneration Management Measures and so on, and the 2004 financial settlement data (see the attachment) verified by the SASAC.

(II) Enterprises shall propose a 2005 annual base salary scheme for the other responsible persons of the enterprise based on their posts, responsibilities and risks, and shall submit it to the SASAC for approval.

(III) The enterprise shall submit the following materials according to the requirements of the Remuneration Manual:

1. The positions of the enterprise's responsible persons in 2005;

2. Basic salary scheme (it shall be sealed separately) for the enterprise's responsible persons in 2005;

3. Declaration (which shall be affixed with seals separately) of other monetary income of the enterprise's responsible persons in 2005.

4. Construction of the post-related consumption system of the enterprise's responsible persons in 2005.

**III. Regarding the remuneration scheme submission requirement**

Each enterprise shall, within 15 working days after receiving this notice, submit the 2004 performance salary cashing scheme and the 2005 base salary scheme for the responsible persons of the enterprise to the Enterprise Distribution Bureau of SASAC. Written materials shall be in five copies and electronic documents in one copy (email address: xinchou-fp@sasac.gov.cn).

**IV. Management of delayed cashing of income**

 [scan code] Scan created by CamScanner

CONFIDENTIAL

IRI-CRT-00000590

According to the relevant provisions of the Remuneration Management Measures and other related documents, the delayed cashing performance salary is linked to the evaluation results for the term of office. Before the date of cashing, the enterprise finance department shall set up a detailed account "salary surplus—delayed cashing performance salary" under the "wages payable" account in the financial accounts, and the overall delayed cashing performance salary of the enterprise's responsible persons shall be recorded in the detailed account. The enterprise wage management department shall set a "detailed account of delayed cashing performance salary" to clearly record the total amount of the annual and cumulative delayed cashing performance salary amount of each responsible person.

All enterprises shall follow the Remuneration Management Measures and related requirements, and pay attention to new circumstances and new problems encountered in the research work while doing a good job in the 2004 performance salary cashing and the 2005 base salary confirmation for the responsible persons of the enterprise, in combination with the actual situation of the enterprise, to put forward opinions and suggestions, and communicate with SASAC in a timely fashion.

[seal: Enterprise Distribution Bureau of the State-owned Assets Supervision and Administration Commission of the State Council]

September 5, 2005

[scan code] Scan created by CamScanner

Attachment

**Essential Data for Estimating the 2004 Performance Salaries and 2005 Base Salaries of Responsible Persons of Central Enterprises**

Enterprise name: IRICO Group Corporation

Major responsible persons' annual compensation in 2004

Performance salary multiple: 1.5543, approved annual salary: RMB 311,111,

Including the current issuance: RMB 235,387 delayed cashing: RMB 75,725.

Base salary estimation data for 2005

Total assets: RMB 9.65 billion

Net assets: RMB 5.80 billion

Main business income: RMB 6.76 billion

Total profit: RMB 710 million

The average salary of employees in this enterprise: RMB 19,863

Average salary of employees in state-owned enterprises in the industry: RMB 32,381

Average salary of employees in state-owned enterprises in the region: RMB 14,940

Average salary of employees in state-owned enterprises throughout the country: RMB 17,376

Base salary adjustment coefficient R: 1

Contact person of Enterprise Distribution Bureau: Lin Li          Contact number: 63193592

[scan code] Scan created by CamScanner

CONFIDENTIAL                                                    IRI-CRT-00000592

311

07 1-2P5
P 13

# 国务院国有资产监督管理委员会

分配函[2005]078 号

## 关于做好中央企业负责人 2004 年绩效薪金兑现
## 方案和 2005 年基薪方案申报工作的通知

各中央企业：

　　为做好中央企业负责人 2004 年绩效薪金兑现和 2005 年基薪
确定工作，根据《中央企业负责人薪酬管理暂行办法》（国资发
分配［2004］227 号，以下简称《薪酬管理办法》）等有关文件
规定，现就有关事项通知如下：

　　一、关于 2004 年度绩效薪金兑现方案申报

　　（一）企业法定代表人 2004 年度绩效薪金，由国资委根据
《薪酬管理办法》、《业绩考核办法》以及本企业 2004 年度经营
业绩考核级别和考核分数确定。

　　（二）企业其他负责人 2004 年度绩效薪金，由企业根据该
负责人分工及业绩考核情况，提出方案报国资委核准。企业其他
负责人 2004 年度绩效薪金原则上不得超过企业法定代表人的绩
效薪金。

　　（三）企业应提交的绩效薪金兑现方案应包括：

 由 扫描全能王 扫描创建

CONFIDENTIAL

IRI-CRT-00000589

1、企业业绩考核指标完成情况，当年效益与历史最好水平的对比情况等。

2、企业其他负责人业绩考核、绩效薪金确定的程序及结果。

3、2004年企业负责人薪酬结算方案（应单独盖章）。

## 二、关于2005年度基薪方案申报

（一）企业法定代表人2005年度基薪，由国资委根据《薪酬管理办法》等有关文件规定，以及国资委审核确定的2004年度财务结算数据（见附件）确定。

（二）企业其他负责人2005年度基薪，由企业根据其任职岗位、责任、风险提出方案，报国资委核准。

（三）企业应根据《薪酬手册》要求提交下列材料：

1、2005年企业负责人任职情况；

2、2005年企业负责人基薪方案（应单独盖章）；

3、2005年企业负责人其他货币性收入申报（应单独盖章）；

4、2005年企业负责人职位消费制度建设情况。

## 三、关于薪酬方案的报送要求

各企业应在接到本通知后15个工作日内，将本企业负责人2004年绩效薪金兑现方案和2005年基薪方案报送国资委企业分配局。文字材料一式五份，电子文档一份（邮箱地址：xinchou-fp@sasac.gov.cn）。

## 四、延期兑现收入的管理

根据《薪酬管理办法》等相关文件规定，延期兑现的绩效薪

 由 扫描全能王 扫描创建

IRI-CRT-00000590

金与任期考核结果挂钩。在兑现日之前，企业财务部门应在财务帐目"应付工资"科目下设立"工资结余—延期兑现的绩效薪金"明细科目，将企业负责人的延期兑现绩效薪金整体计入该明细科目。企业工资管理部门应设置"延期兑现的绩效薪金明细帐"，对每位企业负责人每年计入和累计计入的延期兑现绩效薪金数额予以明确记载。

各企业要按照《薪酬管理办法》及相关的要求，在做好企业负责人 2004 年绩效薪金兑现和 2005 年基薪确定工作的同时，注意研究工作中遇到的新情况、新问题，结合本企业的实际情况，提出意见和建议，及时与国资委进行沟通。



3

由 扫描全能王 扫描创建

附：

# 中央企业负责人
## 2004 年绩效薪金及 2005 年基薪测算基础数据

企业名称：**彩虹集团公司**

**2004 年主要负责人年度薪酬**

绩效薪金倍数：**1.5543** ，核定年薪：**31.1111** 万元，

其中当期发放：**23.5387** 万元，延期兑现：**7.5725** 万元。

**2005 年基薪测算数据**

资产总额：**96.5** 亿元

净资产：　**58.0** 亿元

主营业务收入：**67.6** 亿元

利润总额：　**7.1** 亿元

本企业职工平均工资：**19863** 元

行业国有企业职工平均工资：**32381** 元

地区国有企业职工平均工资：**14940** 元

全国国有企业职工平均工资：**17376** 元

基薪调节系数 R：**1**

企业分配局联系人：林力　　　联系电话：**63193592**

 由 扫描全能工 扫描创建

CONFIDENTIAL

IRI-CRT-00000592

# Exhibit 18



June 25, 2018

**Certification**

**Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English  of the document with bates number: IRI-CRT-00000593.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

15 W. 37th Street 8th Floor
New York, NY 10018
212.581.8870
ParkIP.com

318

*1-299*
*September 18, 2005*

# State-owned Assets Supervision and Administration Commission of the State Council

GZFJD [2005] No. 189

### Notice on the Adjustment for Members of the Board of Supervisors of Key Large State-owned Enterprises

IRICO Group Corporation:

Following research, Comrade Tang Rui is sent to your company to act as a member of the board of supervisors of the state-owned enterprise.

[seal: State-owned Assets Supervision and Administration Commission of the State Council]

August 15, 2005

— 1 —

[scan code] Scan created by CamScanner

CONFIDENTIAL

318

1-299
05  P  18

# 国务院国有资产监督管理委员会文件

国资发监督〔2005〕189 号

## 关于国有重点大型企业监事会成员调整的通知

彩虹集团公司：

经研究，汤睿同志为派出你公司国有企业监事会成员。



二〇〇五年六月十五日

— 1 —

 由 扫描全能工 扫描创建

CONFIDENTIAL

IRI-CRT-00000593

# Exhibit 19



June 25, 2018

**Certification**

<div align="center">

**Park IP Translations**

</div>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English  of the document with bates numbers range: IRI-CRT-00000594 - IRI-CRT-00000596.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

<div align="center">

15 W. 37th Street 8th Floor
New York, NY 10018
212.581.8870
ParkIP.com

</div>

| | 2003 | 181 |
|---|---|---|
| Business | Long Term | |

| IRICO Color Picture TubeFactory | |
|---|---|
| Confidential room | S.Z. No.*1-41* |
| | *July 18, 2003* |

## Document of the Statistical Evaluation Bureau of the State-owned Assets Supervision and Administration Commission of the State Council

### Comment Letter [2003] the 13rd

### Letter on Confirmation of the Results of Preservation and Appreciation of State-owned Capital of IRICO Group Corporation in 2002

IRICO Group Corporation, Ltd.:

Your company's Tabular Statement of the Preservation and Appreciation of State-owned Capital in 2002 and documents and materials relating to the objective increase and decrease of state-owned capital which were submitted together with the 2002 Financial Statements [Enterprise Class] by your company have been received. In accordance with the provisions of Calculation and Confirmation Method of Results of Preservation and Appreciation of State-owned Capital (CTZ [2002] No. 2) and Notice on Completion of Calculation and Confirmation Method of Results of Preservation and Appreciation of State-owned Capital, the materials submitted by your company have been reviewed. The results of the preservation and appreciation of state-owned capital of your company in 2002 are confirmed as follows:

I.    Your company has included a total of 17 wholly-owned and controlled subsidiaries including the headquarters of the company and IRICO Color Picture Tube Factory, etc. in the 2002 consolidated accounting statements. The 2002 consolidated accounting statements were audited by Tianzhi-zixin Certified Public Accountants Ltd. At the end of the year, the total assets were RMB 7,643,450,000, the owners' equity was RMB 3,183,340,000 (of which: national owners' equity of RMB 3,183,340,000), the profit in 2002 was RMB 455,870,000, and the net

[handwritten] [This document has been copied for Accounting Department]

-1-

[scan code] Scan created by CamScanner

CONFIDENTIAL                                                                     IRI-CRT-00000594

profit was RMB 273,730,000.

II. It is claimed that the national owners' equity at the end of 2002 increased by RMB 255,800,000 compared to the beginning of the year (RMB 2,927,540,000). In accordance with the Calculation and Confirmation Method of Results of Preservation and Appreciation of State-owned Capital, the following factors need to be excluded: (i) "Definition of property rights" increase of RMB 540,000, (ii) "Enterprise capital premium" increase of RMB 3,080,000, (iii) "Financial subsidies" increase of RMB 240,000. Combining the above factors, it is confirmed that the preservation and appreciation rate of your company's state-owned capital in 2002 was 108.6%.

III. Your company belongs to electronics industry, and in accordance with the uniformly calculated 2002 industry-classified Standard Values of Preservation and Appreciation of State-owned Capital, the preservation and appreciation rate of state-owned capital of your company in 2002 in the industry is at the "excellent" level.

IV. Your company is required to conscientiously summarize and analyze the completion of preservation and appreciation of the state-owned capital in 2002, and actively take effective measures to promote the improvement of state-owned capital operation efficiency.

Attached table: Confirmation Table of Results of Preservation and Appreciation of State-owned Capital in 2002

[seal: Statistical Evaluation Bureau of the State-owned Assets Supervision and Administration Commission of the State Council]

July 7, 2003

Within the commission, copy to: Property Management Bureau, Performance Evaluation Bureau, Enterprise Distribution Bureau, The Second Management Bureau of Enterprise Leaders, Supervisory Board Bureau.

Typed by: Wang Hailin          Checked by: Sun Qinghong          Number of copies: 20

[scan code] Scan created by CamScanner

CONFIDENTIAL                                                   IRI-CRT-00000595

Attached table

Confirmation Table of Results of Preservation and Appreciation of State-owned Capital in 2002

Enterprise name: IRICO Group Corporation

Standard value range: entire industry

Standard value industry: electronics industry

| Index | Actual value | | Industry standard | | | | | Confirmed Result |
|---|---|---|---|---|---|---|---|---|
| | Number reported | Number approved | Excellent value | Good value | Average value | Lower value | Worse value | |
| I. Main indicators | | | | | | | | |
| Preservation and appreciation rate of state-owned capital (%) | 108.6 | 108.6 | 108.5 | 105.6 | 102.5 | 98.4 | 90.2 | Appreciation -- excellent level in the industry |
| II. Indicators analysis | | | | | | | | |
| Capital accumulation rate (%) | 8.7 | | 12.7 | 8.3 | 3.7 | -5.2 | -13.9 | Good level in the industry |
| Profit margin on net assets (%) | 9.0 | | 12.5 | 7.6 | 3.8 | -2.9 | -8.9 | Good level in the industry |
| Rate of return on total assets (%) | 6.9 | | 7.8 | 5.3 | 2.5 | -0.8 | -5.8 | Excellent level in the industry |
| Non-performing assets rate (%) | 4.7 | | 0.0 | 0.8 | 6.6 | 16.9 | 29.1 | Average level in the industry |
| | 0.0 | | | | | | | |
| | | | | | | | | |
| II. Supplementary information | | | | | | | | |
| Profit growth rate (%) | 59.7 | | | | | | | .. |
| Total profit | 45587 | | | | | | | |
| Total owner's equity | 318334 | | | | | | | |

[scan code] Scan created by CamScanner

CONFIDENTIAL

IRI-CRT-00000596





# 国务院国有资产监督管理委员会统计评价局文件

评价函〔2003〕13 号

## 关于对彩虹集团公司 2002 年度
## 国有资本保值增值结果确认的函

彩虹集团公司:

你公司随《2002 年度会计报表［企业类］》一并上报的《2002 年国有资本保值增值计算表》及国有资本客观增、减相关证明文件和材料收悉。根据《国有资本保值增值结果计算与确认办法》（财统字〔2002〕2 号）及《关于做好国有资本保值增值结果计算与确认工作的通知》规定，对你公司上报的材料进行了审核，现对你公司 2002 年度国有资本保值增值结果确认如下:

一、你公司纳入 2002 年度合并会计报表范围包括总公司本部、彩虹显像管厂等全资、控股子公司共计 17 户。2002 年度合并会计报表经天职孜信会计师事务所审计，年末资产总额 764345 万元，所有者权益 318334 万元（其中:国家所有者权益 318334 万元），2002 年实现利润 45587 万元，净

— 1 —



由 扫描全能王 扫描创建

CONFIDENTIAL                                                                IRI-CRT-00000594

利润 27373 万元。

二、你公司 2002 年末国家所有者权益比年初 (292754 万元) 增加 25580 万元，依据《国有资本保值增值结果计算与确认办法》，需要剔除以下因素：（一）"产权界定"增加 54 万元，（二）"企业资本溢价"增加 308 万元，（三）"财政补贴"增加 24 万元。综合以上各项因素，确认你公司 2002 年国有资本保值增值率为 108.6%。

三、你公司所属电子行业，依照统一测算的 2002 年度分行业《国有资本保值增值标准值》，你公司 2002 年度国有资本保值增值率处于行业"优秀"水平。

四、请你公司认真总结、分析国有资本 2002 年度国有资本保值增值完成情况，积极采取有效措施，促进提高国有资本运营效益。

附表：2002 年度国有资本保值增值结果确认表



委内抄送： 产权管理局、业绩考核局、企业分配局、企业领导人员管理二局、 监事会工作局。

打字：王海林        校对：孙庆红        份数：20

— 2 —

 由 扫描全能王 扫描创建

IRI-CRT-00000595

附表：

## 2002年国有资本保值增值结果确认表

企业名称：彩虹集团公司

标准值范围：全行业
标准值行业：电子工业

| 指标 | 实际值 | | 行业标准 | | | | | 确认结果 |
|---|---|---|---|---|---|---|---|---|
| | 上报数 | 核定数 | 优秀值 | 较好值 | 平均值 | 较低值 | 较差值 | |
| 一、主要指标 | | | | | | | | |
| 国有资本保值增值率（%） | 108.6 | 108.6 | 108.5 | 105.6 | 102.5 | 98.4 | 90.2 | 增值—行业优秀水平 |
| 二、分析指标 | | | | | | | | |
| 资本积累率（%） | 8.7 | | 12.7 | 8.3 | 3.7 | -5.2 | -13.9 | 行业良好水平 |
| 净资产收益率（%） | 9.0 | | 12.5 | 7.6 | 3.8 | -2.9 | -8.9 | 行业良好水平 |
| 总资产报酬率（%） | 6.9 | | 7.8 | 5.3 | 2.5 | -0.8 | -5.8 | 行业优秀水平 |
| 不良资产比率（%） | 4.7 | | 0.0 | 0.8 | 6.6 | 16.9 | 29.1 | 行业平均水平 |
| | 0.0 | | | | | | | |
| | | | | | | | | |
| 三、补充资料： | | | | | | | | |
| 利润增长率（%） | 59.7 | | | | | | | |
| 利润总额 | 45587 | | | | | | | |
| 所有者权益总额 | 318334 | | | | | | | |

— 3 —

由 扫描全能王 扫描创建

CONFIDENTIAL                                                              IRI-CRT-00000596