# DOCUMENT 1

## SAVERI & SAVERI, INC.

706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

July 5, 2018

*VIA HAND DELIVERY*

The Honorable Vaughn R. Walker
Law Office of Vaughn R. Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA 94111

      Re:    *In re Cathode Ray Tube (CRT) Antitrust Litigation* – MDL No. 1917,
              Master File No. 07-CV-5944-JST

           *CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*

Dear Judge Walker:

### I. Introduction

Direct Purchaser Plaintiffs ("DPPs") submit this letter brief in support of their motion to compel responses from Defendants Irico Group Corporation ("Group") and Irico Display Devices Co., Ltd. ("Display") (together, the "Irico Defendants" or "Irico") to certain jurisdictional discovery requests. Group and Display refuse to provide meaningful responses to important discovery including their U.S. sales of CRTs, their participation in the alleged conspiracy, and the factual basis for their assertions that they are sovereign entities under the Foreign Sovereign Immunity Act ("FSIA"), among other things.

### II. Background

This discovery dispute arises in the context of proceedings to determine the Irico Defendants' claim of immunity under the FSIA. Irico's renewed motion to dismiss under the FSIA is due on July 18, 2018; DPPs' opposition is due on October 15, 2018; and Irico's reply brief is due on November 15, 2018. The hearing is set for December 6, 2018. ECF No. 5282. Jurisdictional discovery closes in three months, on October 3, 2018. *Id.*

The Irico Defendants unilaterally withdrew from participation in this case in 2010, after appearing and litigating—including moving to dismiss the action—for two years. DPPs took the default of the Irico Defendants on July 20, 2016, ECF No. 4727, and on August 3, 2017, DPPs filed their Application for Default Judgment. ECF Nos. 5182-3, 5183 (publicly refiled as ECF No. 5191) ("Application").

The Irico Defendants reappeared in the action through new counsel, and filed a Motion to Set Aside Default on October 25, 2017. The motion sought alternatively to

The Honorable Vaughn R. Walker
7/5/2018
Page 2

dismiss DPPs' complaint against them on the grounds that they were immune from suit under the FSIA, or to lift the default. ECF No. 5215. They also filed an opposition to DPPs' Application. ECF No. 5214. Both filings relied on the Declaration of Wenkei Zhang, an Irico lawyer. ECF No. 5215-1.

On December 7, 2017, DPPs filed their Opposition to the Motion to Set Aside Default. ECF No. 5221 (publicly refiled as ECF No. 5228) ("Opposition"). Among other things, DPPs included evidence of Irico's attendance at 26 meetings of the CRT conspiracy. ECF No. 5228-1, Ex. 11. In addition, DPPs alternatively requested jurisdictional discovery on the following topics:

- The corporate formation, ownership, and purpose of Group and Display, including any basis for any contention by Irico that Group and Display engage in public activity, and including any changes in status.
- Supervision of either Group or Display by officials of the People's Republic of China, including any specific instances of supervision or control that Irico contends are relevant to alleged organ status.
- The inter-defendant communications identified in Exhibit 11 to the Saveri Declaration or in the Leitzinger Report involving Irico, including any related internal communications on or about the same dates.
- Any sales, planned sales, or contemplated sales by Irico, directly or indirectly, to the United States during the class period.
- All documents and communications that Wenkei Zhang reviewed or relied on in preparing his Declaration.
- Any steps that Group and Display took to preserve evidence, including documents relevant to their FSIA defenses or the merits of this case, from 2008 to now.

*See* ECF No. 5228 at 17–18.

On February 1, 2018, the Court granted the motion to set aside the default. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, Case No. C-07-5944 JST, 2018 WL 659084, at *3, *6 (N.D. Cal. Feb. 1, 2018) (the "Order"). It held that, on the record before it, the Irico Defendants were not immune under the FSIA and that, therefore, the Court had jurisdiction. It found that Display, a publicly traded company, was not an agent, instrumentality or organ of the Chinese government, and, therefore, was not subject to the FSIA. It also found that while Group was an instrumentality of the Chinese Government, the conduct at issue fell within the commercial activity exception to the FSIA and therefore Group was also not immune from suit. *Id.* at *4–6.

Despite its findings under the FSIA, and the fact that the DPPs "were inarguably prejudiced by the Irico Defendants' decision to disappear from the case," the Court also held that it was possible that the Irico Defendants could be protected by the FSIA. *Id.* at *8, *10. It therefore "reopened" the case and ordered that "the DPPs are free to undertake jurisdictional discovery." *Id.* at *11.

***CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER***

The Honorable Vaughn R. Walker
7/5/2018
Page 3

### III. The Discovery at Issue and the Meet and Confer Process

DPPs served the discovery at issue (Direct Purchaser Plaintiff Studio Spectrum, Inc.'s First Set of Interrogatories to Irico Group Corporation and Irico Display Devices Co., Ltd. (Rushing Decl., Ex. 1) ("Interrogatories"); Direct Purchaser Plaintiff Studio Spectrum, Inc.'s First Set of Requests for Production of Documents to Irico Group Corporation and Irico Display Devices Co., Ltd. (*Id.*, Ex. 2) ("RFPs")) on March 5, 2018, and granted the Irico Defendants a 30-day extension to respond. *Id.* ¶ 2.

The Irico Defendants served their responses on May 4, 2018. *Id.*, Exs. 3 ("Interrogatory Responses"), 4 ("RFP Responses"). In general, they failed to provide full responses to the discovery. In many instances they provided no meaningful information.

First, the Irico Defendants have failed to provide meaningful responses regarding their U.S. sales, despite basing their claim of FSIA immunity on assertions that they have no U.S. sales. They have refused to provide a sworn response to DPPs' interrogatory going to this issue and have instead taken the position that DPPs should travel to China to review hundreds of thousands of foreign language invoices to see if they can find any U.S. sales.

Second, the Irico Defendants have refused to respond to an RFP seeking documents relating to a limited number of the conspiratorial meetings the meeting notes of other defendants show that Irico attended, despite the fact that these meetings are relevant to FSIA immunity.

Third, the Irico Defendants refuse to identify the documents reviewed and/or witnesses consulted by Wenkei Zhang in connection with his declaration submitted in support of Irico's motion to lift the default.

DPPs initiated a meet and confer process with the Irico Defendants regarding their responses, in coordination with Indirect Purchaser Plaintiffs ("IPPs"). Following an initial exchange of letters, Rushing Decl., Exs. 6, 7, the parties participated in three one-hour conference calls on May 29, May 30, and June 1, 2018. *Id.* ¶ 7. DPPs memorialized the meet and confer discussions in a letter on June 5, 2018. *Id.*, Ex. 9.

DPPs explained their position that most of the responses were inadequate. DPPs explained, among other deficiencies, that most of the Interrogatory Responses were incomplete and consisted almost entirely of conclusory and vague, generalized assertions. Counsel for the Irico Defendants agreed to provide specific references to documents supporting each response and took the position that this would satisfy DPPs' concerns regarding the inadequacy of the interrogatory responses. *Id.* at 3.

*CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*

The Honorable Vaughn R. Walker
7/5/2018
Page 4

By letter dated June 4, 2018, the Irico Defendants provided references to certain documents. *Id.*, Ex. 8.[1] DPPs are currently reviewing the relevant Interrogatory Responses along with the references to the documents—most of which are in Chinese and thus require translation—to determine the adequacy of both, and may bring a motion to compel with regard to some or all of these responses. *Id.* ¶ 7.

By letter on June 15, 2018, the Irico Defendants demanded that DPPs return over 40 documents they had produced on May 4, 2018 (and again on May 30, 2018) and which they claimed were privileged documents that had been inadvertently produced. *Id.*, ¶ 4, Ex. 11. The documents included some which appeared to show U.S. CRT sales in 1995, 1998, 1999, 2001, 2002, and 2003 totaling approximately $2 million, according to DPP counsel's previous analysis. *Id.* ¶ 10. On June 20, 2018, DPPs responded, *inter alia,* that the documents did not appear to be privileged and asked for further information. *Id.*, Ex. 12.[2] In addition, DPPs demanded a full response to Interrogatory No. 20 going to sales. On June 21, 2018, counsel for the Irico Defendants informed DPPs that they intended to withdraw their "clawback" request as to all but one page of the documents, and that they would send a formal letter to that effect shortly. *Id.* ¶ 10. On June 29, 2018, Irico's counsel sent a confirming letter. *Id.*, Ex. 14.

On June 21, 2018, DPPs wrote to the Irico Defendants requesting that information promised during the meet and confers be provided. *Id.*, Ex. 10. As of the date of this brief, DPPs have received no response. *Id.* ¶ 9.

### IV. Argument

The principal objections relied on by the Irico Defendants are 1) relevance; and 2) burden. The standard for relevance is straightforward:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The standard for undue burden is also clear: "On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). In addition, as the Court has recently emphasized, the

---

[1] The Irico Defendants also agreed to provide supplemental responses to the discovery incorporating these references. *Id.*

[2] Plaintiffs also sent a copy of the clawed-back documents to Your Honor pending referral of a dispute. *See id.*, Ex. 13.

*CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*

The Honorable Vaughn R. Walker
7/5/2018
Page 5

party resisting discovery must substantiate any burden associated with the discovery requests at issue. *See* Case Mgmt. Conf. Tr. 12:18–23 (Apr. 24, 2018) ("objections about burden are hollow unless the party making the objection provides the Court with the information it needs to determine that, in fact, there would be a burden and the burden would be undue, giving consideration to the claims at issue and the other things that go into findings of proportionality").

DPPs will discuss these objections in detail with regard to each category of discovery.

### a. Sales of Irico CRTs in the U.S.

As noted above, one of the Irico Defendants' principal contentions underlying their claim of FSIA immunity is that they sold no CRTs in the U.S. The Irico Defendants have made this claim repeatedly. *See, e.g.,* ECF No. 5229 at 1 ("Certainly DPPs can make no such [direct effect] showing since Irico never sold products, directly or indirectly, to the United States"); ECF No. 5215 at 12 (citing paragraph 11 of the Zhang Declaration). For this reason, there is no doubt that this information is both relevant and important to the FSIA inquiry.

The Irico Defendants, however, have refused to provide complete responses to DPPs' discovery. Interrogatory No. 20 seeks a description of the Irico's sales and sales efforts in the U.S., and identification of witnesses and documents:

> Please describe with particularity Irico's sales and marketing of CRT Products in the United States during the Class Period, and/or attempts to sell or market any CRT Products in the United States during the Class Period, including:
>
> a.      The identity of all Persons with knowledge of such sales and marketing and/or attempts to sell or market CRT Products in the United States; and
>
> b.      The identity of all Documents referring or relating to such sales and marketing and/or attempts to sell or market CRT Products in the United States.

Irico's response provides no information at all. It states only that they "will produce or make available for inspection business records from which the answer to this Interrogatory may be determined." Rushing Decl., Ex. 3 at 26. Irico identifies only two individuals with knowledge, but provides no information—i.e., their job history—to

The Honorable Vaughn R. Walker
7/5/2018
Page 6

suggest they actually have personal knowledge.[3]

During the meet and confer sessions, DPPs asked what sales records Irico intended to produce in response to Interrogatory No. 20 and when. Irico counsel responded that they were "considering" producing 100 boxes containing hundreds of thousands of paper invoices in China. These records are in Chinese and relate to all of Irico's worldwide sales during the class period. Irico counsel represented that they were unaware of relevant summary documents or electronic data relating to sales and therefore would not produce any. *Id.*, Ex. 9 at 2.

RFP No. 9 requests "All documents related to the sale or pricing of CRTs in the United States (including but not limited to any actual, planned, or contemplated sales of CRTs in the United States by Group, Display, or any affiliate of Group or Display, either directly or indirectly) during the Class Period." In response, the Irico Defendants stated that they "will produce responsive, non-privileged documents, if any, sufficient to identify any sales of CRTs in the United States by Group or Display during the Class Period." *Id.*, Ex. 4 at 12.

Following the meet and confer process, DPPs became aware that documents produced by Irico indicated that it had a total of almost $2 million in U.S. CRT sales in 1995, 1998, 1999, 2001, 2002, and 2003. *Id.* ¶ 10. As noted above, on June 15, 2018, Irico sought to "claw back" these and other documents on the grounds that they were privileged and had been inadvertently produced. *Id.*, Ex. 11. DPPs responded that the documents did not appear to be privileged and asked that Irico withdraw its clawback request. *Id.*, Ex. 12. On June 29, 2018, the Irico Defendants formally withdrew their demand as to these documents. *Id.*, Ex. 14. In the same letter, Irico claimed that these documents do not show that it made U.S. sales. Rather, it contends that the sales were made by China National Electronics Imp. & Exp. Caihong, Co. ("Caihong Co.").

Irico's responses are insufficient. First, almost four months after Interrogatory No. 20 was propounded, they have provided no meaningful substantive response, and have not even purported to produce documents from which an answer can be determined.

Second, Interrogatory No. 20 seeks the basis for Irico's repeated assertion that it has no U.S. sales. *See, e.g.*, ECF Nos. 5215 at 12; 5229 at 1. As noted above, this assertion appears to be inaccurate. Irico's recent claim that sales by Caihong Co. do not constitute sales by Irico suggests that it may be withholding information about sales of its

---

[3] By email on June 29, 2018, counsel for the Irico Defendants stated that they would provide "these employees' current or most recent title, and will search for and provide information on prior positions held by each employee that are relevant to their knowledge of information covered by Irico's Interrogatory responses." The email included the current title of one current employee with knowledge of this sales and the most recent title of a former employee. *Id.*, Ex. 15. The email did not indicate when the Irico Defendants would provide information regarding prior positions.

*CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*

The Honorable Vaughn R. Walker
7/5/2018
Page 7

products in the U.S. Moreover, information provided by the Irico Defendants in this litigation in 2009 explained that Group and Display sold their products through other entities during the class period:

> Prior to the formation of IRICO Group Electronics Company Limited ("IRICO Electronics") in September 2004, IRICO Color Picture Tube Plant and IRICO Display Devices Co., Ltd. sold CRT products through the sales department of IRICO Group Corporation. IRICO Group Corporation exported products exclusively through China National Electronics Imp. & Exp. Caihong Co., an unrelated state-owned enterprise.

> After its formation in 2004, IRICO Electronics handled all domestic sales and exports of CRTs for the IRICO Companies. For a short period of time during the transition of sales and exports from IRICO Group Corporation to IRICO Electronics, Xian Irico Display Technology Co., Ltd. also exported CRTs.

*Id.*, Ex. 16, Resp. at 1.

The question therefore is whether Irico's claim that it had no U.S. sales includes sales they made "through" other companies. Such sales are responsive to DPPs' discovery and must be disclosed.

Third, in this context, producing, or making available in China, hundreds of thousands of pages of foreign language invoices—which, given the Irico Defendants' contention, apparently will not include any U.S. invoices—does not satisfy Rule 33(d)(1) which requires specifying the records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." *See also, e.g., Rainbow Pioneer No. 44-18-04A v. Haw.-Nev. Inv. Corp.*, 711 F.2d 902, 906 (9th Cir 1983). Their plain intent is that DPPs should spend hundreds or thousands of hours futilely searching for needles in haystacks.

Fourth, Irico's assertion that there are no summary records or electronic data relevant to this issue is implausible, and consistent with a failure to search the related companies. It is also contradicted by the summary documents showing U.S. sales already produced.

Finally, as noted, Irico identified only two "persons with knowledge" of their U.S. sales. This is patently inadequate—there must be many others with knowledge. At the very least, Irico should identify all managerial employees with knowledge. In addition, Irico provided no work history for the individuals it identified. It should provide such

*CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*

The Honorable Vaughn R. Walker
7/5/2018
Page 8

work history so that DPPs can evaluate the basis for their alleged knowledge.[4]

For all these reasons, therefore, Irico should be compelled to provide full and complete responses to Interrogatory No. 20, accounting for all sales in the U.S. of Irico CRTs. It should also be compelled to produce all documents responsive to RFP No. 9.

### b.      Notes of Alleged Conspiratorial Meetings

Evidence relating to Irico's participation in the alleged conspiracy is also relevant to the question of immunity under the FSIA. Irico should be compelled to respond fully to DPPs' discovery on this issue.

DPPs have evidence—mostly meeting notes from other conspirators—that Irico participated in over 70 conspiratorial meetings. *Id.* ¶ 13. DPPs detailed 26 of these meetings in their Application for Default Judgment and in their Opposition to Irico's Motion to Set Aside Default. DPPs attached translations of meeting notes for each of these meetings and provided a chart that listed the meetings chronologically, summarized the content of the meetings, and identified the attendees of the meetings, including Irico personnel. ECF No. 5228-1, Ex. 11. In addition, as noted, DPPs identified these meetings as a subject in their request for jurisdictional discovery. ECF No. 5228 at 18.

Accordingly, following the Court's order lifting the default and permitting DPPs to serve their jurisdictional discovery, DPPs propounded RFP No. 10 which requests:

---

[4] The Interrogatories included instructions requesting that:

> When asked to identify a natural person, state the person's name, employer, position dates of employment/tenure, and home address for all times during the Relevant Time Period. If any of such information has changed during the Relevant Time Period, specify the time period to which the information provided in your answer pertains.

Rushing Decl., Ex. 1 at 3–4. In their responses, the Irico Defendants objected to this instruction on the basis of burden, *id.*, Ex. 3 at 5–6, and only identified natural persons and do not include any of the other information. *See, e.g., id.* at 7:23–24. When DPPs requested such information during the meet and confer, the Irico Defendants agreed to provide it in response to DPPs' witness inquiry and, to the extent that information is not included in such response, to provide it separately and potentially in a supplementary interrogatory response. *Id.*, Ex. 9 at 3. The Irico Defendants' claim that they did not agree to provide such information but have since provided most recent titles and have agreed to search for more information, without committing to do so by a date certain. *See id.*, Ex. 15 ("Irico . . . will search for and provide information on prior positions held by each employee that are relevant to their knowledge of information covered by Irico's Interrogatory responses").

*CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*

The Honorable Vaughn R. Walker
7/5/2018
Page 9

> All documents related to any Meeting identified in Exhibit 11 to the
> Declaration of R. Alexander Saveri dated January 11, 2018 (including but
> not limited to any communications by, between, or among any directors,
> officers, or Employees of Group or Display related to such Meetings).

The Irico Defendants' have refused to provide any documents in response to RFP
No. 10 on the grounds of relevancy, undue burden, and that it goes beyond allowable
jurisdictional discovery. Rushing Decl., Ex. 4 at 12. Irico's objections lack merit.

First, as the Court's Order makes clear, documents relating to these meetings are
relevant to the FSIA issues Irico has raised. As the Court noted in its analysis of the
commercial activity exception to the FSIA, it "must first determine whether the Irico
Defendants' activities were commercial. . . . The alleged conspiratorial actions of setting
prices and halting manufacturing were clearly 'performed in connection with a
commercial activity.'" Order, 2018 WL 659084, at *5. In finding that the Irico
Defendants' commercial activities had a direct effect in the U.S., the Court found "that
the DPPs have sufficiently alleged facts showing that the anticompetitive behavior of the
Irico Defendants, as part of the broader conspiracy, had a direct effect on prices of CRTs
in the United States." *Id.* Given that the Court will undertake a similar analysis when
considering the Irico Defendants' forthcoming motion, documents in the Irico
Defendants' possession related to their participation in the alleged conspiracy are plainly
relevant. Furthermore, Irico has relied on its denial of participation in the conspiracy to
argue that it is immune from suit. *See, e.g.*, ECF No. 5215 at 12–13.

Second, Irico's burden objections are also baseless. RFP No. 10 is narrowly
tailored and only requests documents relating to 26 meetings—out of more than 70 total
meetings DPPs have so far identified. The dates of the meetings and Irico individuals
known to be involved are also identified, allowing for an efficient search for responsive
documents. ECF No. 5228-1, Ex. 11. Moreover, given their importance, it seems likely
that the Irico Defendants have already collected such documents as part of their
investigation. In any event, the burden to produce these documents should not be
unreasonable.

Finally, Irico's assertion that this discovery exceeds the scope of Judge Tigar's
Order is incorrect. Again, the discovery is relevant to the FSIA inquiry and is therefore
"jurisdictional."

### c.      Wenkai Zhang's FSIA Investigation

In support of their FSIA arguments, the Irico Defendants submitted the
declaration of Wenkai Zhang. Mr. Zhang offered testimony on virtually every issue
raised by Irico. He averred that the Irico Defendants had no U.S. sales; that Group was a
state-owned entity; that Display was an "organ" of the Chinese government; and that
Display was controlled by Group, among other things. ECF No. 5215-1 ¶¶ 6, 8–11. Mr.
Zhang, however, had no personal knowledge of any of the facts to which he testified. *See*

*CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*

The Honorable Vaughn R. Walker
7/5/2018
Page 10

Order, 2018 WL 659084, at *3. Despite Irico counsel's representations that Mr. Zhang's knowledge was properly derived from his review of documents and other investigations, the Court refused to consider Mr. Zhang's declaration. *Id.*

> Interrogatory No. 9 seeks the basis for Mr. Zhang's testimony:

> > Please describe with particularity all investigation or collection of information that Wenkai Zhang performed in connection with the preparation of his declaration, including:

> > a.      The identity of all Employees, officers or agents of Irico with whom he communicated (whether oral or written) in connection with his declaration; and

> > b.      The identity of all Documents he reviewed in connection with his declaration.

The Irico Defendants' response to Interrogatory No. 9 contains only objections. Rushing Decl., Ex. 3 at 18.

> Mr. Zhang's investigation is clearly relevant and DPPs should be permitted to learn about it. The individuals he spoke with are potential witnesses. The documents will also be probative of many issues in the case.

> There is also no undue burden. Interrogatory No. 9 requires the Irico Defendants only to describe Mr. Zhang's investigation; disclose whom he spoke with; and indicate which, of the 156 documents produced in their first document production, he reviewed. The Irico Defendants surely know what Mr. Zhang did, and whom he spoke with, to prepare his declaration, and could reduce it to writing with little effort. Further, counsel for the Irico Defendants' have informed DPPs that all documents that Mr. Zhang reviewed in preparing his declaration have been produced.[5] Identifying which Mr. Zhang reviewed would take a few hours, at most.

---

[5] RFP No. 11 requests "All documents that Wenkai Zhang reviewed or relied on in preparing his declaration." The Irico Defendants responded that "all such responsive, non-privileged documents will be produced in response to Plaintiff's other requests." *Id.*, Ex. 4 at 12. During meet and confer, counsel for the Irico Defendants represented to DPPs that the Irico Defendants are not withholding any such documents on the basis of any privilege. *Id.*, Ex. 9 at 5. The metadata for the document production indicate that the custodians for the documents are either "Public Website" or "Irico Corporate Archives." *Id.*, ¶ 4, Ex. 11.

*CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*

The Honorable Vaughn R. Walker
7/5/2018
Page 11

## V.  Conclusion

For the foregoing reasons, the Irico Defendants should be compelled to respond to the jurisdictional discovery at issue.

Very truly yours,

*s/ R. Alexander Saveri*

R. Alexander Saveri
Lead Counsel for Direct Purchaser Plaintiffs

Cc:    Lillian Tom (via email)
Jay Weil (via email)
John Taladay (via email)
Erik T. Koons (via email)
Stuart C. Plunkett (via email)
Thomas E. Carter (via email)
Ashley Eickhof (via email)
Kaylee Yang (via email)
Mario N. Alioto (via email)
Lauren C. Capurro (via email)
Christopher T. Micheletti (via email)
Joseph M. Patane (via email)

*CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER*