Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the*
*Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-cv-05944-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>**ALL INDIRECT PURCHASER ACTIONS** | **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND AMEND THE PLAN OF DISTRIBUTION**<br><br>Hearing Date: November 15, 2018<br>Time: 2:00 p.m.<br>Courtroom: 9, 19th Floor<br>Judge:  Honorable Jon S. Tigar |

# TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................................1

II.     BACKGROUND ...............................................................................................................2

    A.      The Order Granting Final Approval of the IPP Settlements with Defendants .............2

    B.      The Fee Order .............................................................................................................2

    C.      The Objectors' Appeals ...............................................................................................3

    D.      The Court of Appeals Questions Counsel About the Plan of Distribution ...................4

    E.      The Court of Appeals Refers the Case to Appellate Mediation...................................5

III.    THE IPPS' PROPOSAL AND REQUEST FOR RELIEF .................................................5

    A.      The IPPs Propose A Plan of Distribution That Will Compensate Class Members in the
        Three States....................................................................................................................5

    B.      IPP Counsel Propose to Reduce Their Attorney Fee Award By $6 Million To
        Compensate Class Members in the Three States. ..........................................................6

    C.      IPP Counsel Request That the Court Amend the Plan of Distribution to Allow Class
        Members In The Three States With Valid Damages Claims to File Claims ................8

    D.      The IPPs Propose to Provide Notice to Class Members in the Three States of the
        Increased Net Settlement Fund and Their Right to Claim Against That Fund in
        Conjunction with Notice of the Mitsubishi Electric Settlement. ..................................9

IV.     ARGUMENT ...................................................................................................................10

    A.      Federal Rule of Civil Procedure 62.1 ........................................................................10

    B.      The Court Should Amend Its Fee Order and Amend the Plan of Distribution for the
        Net Settlement Fund ....................................................................................................11

        1.      Legal Standards..................................................................................................11

        2.      The Court Should Amend the Fee Order to Reduce the Fee Award to IPP
            Counsel By $6 Million ...................................................................................12

    C.      The Proposed Amended Plan of Distribution Is Fair, Adequate and Reasonable .......12

        1.      Amending the Plan of Distribution to Allow Class Members in the Three States
            to Receive a Pro-Rata Share of the Net Settlement Fund Is Fair, Adequate and
            Reasonable ...................................................................................................12

i

2. The Proposed Amended Plan of Distribution Is Fair to Existing Claimants ...14

D. The Proposed Amended Plan of Distribution Fairly Represents the Interests of Class Members From the Three States. ....................................................................................15

 1. It Is Fair and Reasonable to Require Massachusetts Class Members to Satisfy the Requirements of Massachusetts Law In Order to be Eligible to Claim .....15

 2. It Is Fair and Reasonable to Require Missouri Class Members to Satisfy the Requirements of Missouri Law In Order to be Eligible to Claim ....................16

E. The Court Should Approve The Proposed Notice to Class Members In the Three States ……………………………………………………………………………..17

 1. IPPs Propose to Provide Notice In Conjunction With the Mitsubishi Electric Settlement ............................................................................................................17

 2. The Form of the Proposed Notice Is Reasonable ..............................................18

 3. Class Members In Three States Need Not Be Provided a Renewed Right to Opt Out of the Settlements or Object to the Amended Plan of Distribution or the Fee Order ............................................................................................................20

 4. Existing Claimants Need Not Be Given Notice of the Changes to the Plan of Distribution Because the Impact on Them, If Any, Would Be *De Minimis* ....21

V. CONCLUSION ................................................................................................................23

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                     **Page(s)**

*Black v. Moneygram Payment Sys., Inc.,*
No. 4:15-CV-01767-AGF, 2016 WL 3683003 (E.D. Mo. July 12, 2016)..................................17

*Denney v. Deutsche Bank AG,*
443 F.3d 253 (2d Cir. 2006).......................................................................................................20

*Ill. Brick Co. v. Illinois,*
431 U.S. 720 (1977)......................................................................................................................8

*In re Actimmune Marketing Litig.,*
No. C 08–02376–MHP, 2010 WL 3463491 (N.D. Cal. Sept. 1, 2010) ......................................17

*In re Aggrenox Antitrust Litig.,*
No. 3:14-md-2516, 2016 WL 4204478 (D. Conn. Aug. 9, 2016) ...............................................16

*In re Asacol Antitrust Litig.,*
2016 WL 4083333, No. 15-cv-12730-DJC (D. Mass. July 20, 2016).....................................9, 15

*In re BankAmerica Corp. Sec. Litig.,*
227 F. Supp. 2d 1103 (E.D. Mo. 2002).................................................................................19, 22

*In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litigation,*
297 F.R.D. 90 (S.D.N.Y. 2013) ............................................................................................8, 14

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
No. 07-cv-5944-SC, 2014 WL 1088256 (N.D. Cal. Mar. 13, 2014) .........................................15

*In re Cathode Ray Tube (CRT) Antitrust Litigation,*
2016 WL 6778406 (N.D. Cal. Nov. 16, 2016) .........................................................................11

*In re Citric Acid Antitrust Litig.,*
145 F. Supp. 2d 1152 (N.D. Cal. 2001) ...................................................................................11

*In re Elec. Carbon Products Antitrust Litigation,*
622 F.Supp.2d 144 (D.N.J. 2007) ...........................................................................................14

*In re Ford Motor Co. E-350 Van Products Liab. Litig.*
(No. II), 2010 WL 2813788 (D.N.J. July 9, 2010) ....................................................................17

*In re Ford Motor Co. E-350 Van Products Liab. Litig.*
(No. II), 2011 WL 601279 (D.N.J. Feb. 16, 2011) ...................................................................17

*In re Lloyds' Am. Trust Fund Litig.,*

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE
ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

No. 96 Civ.1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)....................................12

*In Re New Motor Vehicles Canadian Export Antitrust Litig.*,
2011 WL 4963103 (D. Me.) ..........................................................................................21

*In Re New Motor Vehicles Canadian Export Antitrust Litig.*,
2011 WL 1398485 (D. Me. Apr. 13, 2011) ..................................................................21

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
800 F.Supp.2d 328 (D. Me. 2011) .....................................................................13, 21, 22

*In re Omnivision Tech., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................................11

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .........................................................................................18

*In re Oracle Sec. Litig*,
No. 90-cv-00931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ........................13

*In re Orthopedic Bone Screw Products Liability Litigation*,
246 F.3d 315 (3d Cir. 2001)..........................................................................................13

*In re Pool Prod. Distribution Mkt. Antitrust Litig.*,
946 F. Supp. 2d 554 (E.D. La. 2013) .............................................................................8

*In re Vitamins Antitrust Litig.*,
No. 99–197 TFH, 2000 WL 1737867 (D.D.C. Mar. 31, 2000) ....................................12

*Knuckles v. Elliott*,
No. 15-cv-10175-LVP, 2016 WL 3912816 (E.D. Mich. July 20, 2016) ......................22

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ........................................................................................18

*Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*,
No. 13-CV-01180-BLF, 2015 WL 4755335 (N.D. Cal. Aug. 11, 2015)......................16

*Low v. Trump University, LLC*,
881 F.3d 1111 (9th Cir. 2018) ......................................................................................20

*McPhail v. First Command Financial Planning, Inc.*,
2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ...............................................................13

*Missouri Hosp. v. C.R. Bard, Inc.*,
2008 WL 199567 (E.D. Mo. Jan. 22, 2008) .................................................................17

iv

*Moore v. Tanipahoa Par. Sch. Bd.,*
  836 F.3d 503 (5th Cir. 2016) ...........................................................................11

*NewGen, LLC v. Safe Cig, LLC,*
  840 F.3d 606 (9th Cir. 2016) ...........................................................................10

*Nguyen v. Radient Pharm. Corp.,*
  No. SACV-11-00406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ....................11

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,*
  688 F.2d 615 (9th Cir. 1982) ...........................................................................20

*Saey v. CompUSA, Inc.,*
  174 F.R.D. 448 (E.D. Mo. 1997) ......................................................................17

*Sharp v. Hylas Yachts, Inc.,*
  No. 11-11814-JCB, 2015 WL 13657010 (D. Mass. Sept. 24, 2015) ....................16

*Union Assets Mgmt. Holding A.G. v. Dell, Inc.,*
  669 F.3d 632 (5th Cir. 2012) ...........................................................................23

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002) ...........................................................................2

*Winters v. Ocean Spray Cranberries, Inc.,*
  296 F. Supp. 3d 311 (D. Mass. 2017) ................................................................15

**State Cases**

*Ciardi v. F. Hoffmann-La Roche, Ltd.,*
  762 N.E.2d 303 (Mass. 2002) ..............................................................8, 9, 15, 16

*Frullo v. Landenberger,*
  814 N.E.2d 1105 (Mass. App. Ct. 2004) ...........................................................16

**State Statutes**

Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1-14A
(2018) ....................................................................................................9, 15, 16, 19

Mo. Merchandising Practices Act, Mo. Ann. Stat. § 407.025(1) (West 1985) .........9, 16

**Federal Rules**

Fed. R. App. P. 12.1 ..................................................................................1, 10, 11

Fed. R. Civ. P. 23 ....................................................................................5, 17, 18, 20

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE
ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

Fed. R. Civ. P. 60(b) ................................................................................................11

Fed. R. Civ. P. 62.1 ...............................................................................1, 10, 11, 23

**<u>Other Authorities</u>**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3958.10
(3d ed. 1998) ......................................................................................................10, 11

James Wm. Moore et al., *Moore's Federal Practice* § 312.1.10 (3d ed. 1997) ......................10, 11

McLaughlin on Class Actions § 6:17 (14th ed. 2017). ...........................................10, 21

Newberg on Class Actions § 11.53 (5th ed. 2016). ................................................19

Principles of the Law of Aggregate Litigation § 3.05 (2010)..................................20, 22

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 15, 2018 at 2:00 p.m., before the Honorable Jon S. Tigar, United States District Court for the Northern District of California, 450 Golden Gate Ave., Courtroom 9, 19th Floor, San Francisco, California, the Indirect Purchaser Plaintiffs ("IPPs") will move the Court, pursuant to Federal Rule of Civil Procedure 62.1 for a ruling indicating whether, if the Ninth Circuit grants the IPPs' motion for a limited remand pursuant to Federal Rule of Appellate Procedure 12.1(b), the Court would issue an Order:

1.  Amending the Court's Order On Attorneys' Fees, Expenses, and Incentive Awards Re: Indirect Purchaser Plaintiff Settlements (ECF No. 4740) (the "Fee Order") to reduce the fee award to IPP Counsel by $6 million to $152,606,250;

2.  Amending the plan of distribution to allow indirect purchasers in Massachusetts, Missouri, and New Hampshire (the "Three States") to file claims against the new, increased "Net Settlement Fund," *i.e.* the total $576 million settlement fund less the reduced fee award of $152,606,250, litigation and claims administration expenses, and incentive awards; and

3.  Ordering IPPs to provide notice to indirect purchasers in the Three States in conjunction with notice to be issued in the Mitsubishi Electric Settlement of their right to file claims against the Net Settlement Fund.

The grounds for this motion are that, at the April 10, 2018 hearing before the Ninth Circuit regarding this Court's approval of IPPs' settlements with certain defendants and the plan of distribution relating thereto, the panel suggested that Class Members in the Three States should be permitted to file claims for monetary compensation.  The panel ordered IPP Counsel and Objectors-Appellants to mediation to resolve the issue.   IPPs have successfully resolved the appeals of four out of the seven groups of Objectors-Appellants, but three groups remain.

IPPs' proposal to supplement the Net Settlement Fund from IPP Counsel's fee award and amend the plan of distribution to allow Class Members in the Three States to file claims will ensure

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

1  that Class Members in the Three States receive the same level of compensation as Class Members in

2  the 22 States.  IPPs' proposal will further ensure that the impact of the amended plan of distribution

3  on existing claimants, *if any*, will be *de minimis*.  As such, if this Court amends the Fee Order and

4  the plan of distribution consistent with IPPs' proposal, it will address the Ninth Circuit's concerns

5  and moot the remaining appeals.

6       This motion is based on this Notice of Motion and Motion, the supporting Memorandum of

7  Points and Authorities, the accompanying Declarations of Mario N. Alioto and Jonathan E. Schwartz

8  in support of the motion, and any further papers filed in support of this motion, the argument of

9  counsel, and all pleadings and records on file in this matter.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE
ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Indirect Purchaser Plaintiffs ("IPPs") hereby move the Court under Federal Rule of Civil Procedure 62.1 for a ruling indicating whether, if the Ninth Circuit grants the IPPs' motion for a limited remand pursuant to Federal Rule of Appellate Procedure 12.1(b), the Court would issue an Order:

1. Amending the Court's Order On Attorneys' Fees, Expenses, and Incentive Awards Re: Indirect Purchaser Plaintiff Settlements (ECF No. 4740) (the "Fee Order") to reduce the fee award to IPP Counsel by $6 million to $152,606,250;

2. Amending the plan of distribution to allow indirect purchasers in Massachusetts, Missouri, and New Hampshire (the "Three States") to file claims against the new, increased "Net Settlement Fund," *i.e.* the total $576 million settlement fund less the reduced fee award of $152,606,250, litigation and claims administration expenses, and incentive awards; and

3. Ordering IPPs to provide notice to indirect purchasers in the Three States in conjunction with notice to be issued in the Mitsubishi Electric Settlement of their right to file claims against the Net Settlement Fund.

If the Court indicates it would grant the IPPs' motion, or that the motion raises a substantial question, the IPPs will move the Ninth Circuit pursuant to FRAP 12.1(b) for a limited remand to this Court for the purpose of ruling on the IPPs' motion.  *See* Fed. R. Civ. P. 62.1(a).  Ultimately, if this Court issues an Order providing for the requested relief, the IPPs will return to the Ninth Circuit and move to dismiss the appeals of this Court's Order Granting Final Approval of Indirect Purchaser Settlements (ECF No. 4712) (the "Final Approval Order") and the Fee Order on the grounds that the appeals of those Orders are moot.

//

//

1

## II.    BACKGROUND

2

### A.    The Order Granting Final Approval of the IPP Settlements with Defendants

3

4

On July 7, 2016, this Court entered an Order approving settlements between IPPs and certain

5

defendants totaling $541,750,000.  ECF No. 4712 ("Final Approval Order").  When combined with

6

two earlier settlements for $10,000,000 with defendant Chunghwa Picture Tubes, Ltd., and

7

$25,000,000 with defendant LG Electronics, Inc., the total settlement fund available for distribution

to indirect purchaser Class Members was $576,750,000.  *Id*. at 2.

8

This Court's Final Approval Order also approved—after giving full consideration to all

9

objections—a plan of distribution for the net settlement fund.  *Id*. at 16-28, 37.  The plan of

10

distribution provided that only Class Members with viable state law damages claims asserted in the

11

litigation (*i.e.*, members of the twenty-two statewide classes certified during the litigation (the "22

12

States")) were eligible to make claims on the settlement fund.  *Id*. at 17.

13

This Court agreed with Special Master Quinn and IPP Counsel that Class Members need not

14

be compensated for non-viable claims that lack value including injunctive claims, non-repealer state

15

claims, and claims under the laws of Massachusetts, Missouri and New Hampshire (the "Three

16

States").  *Id*. at 18 ("However, '[i]t is fine to release a claim without compensation if the value of the

17

claim is zero.  A claim which cannot be proven is worth essentially nothing. Consideration of

18

nothing for releasing a worthless claim is therefore fair, reasonable, and adequate.'") (citations

19

omitted).   The Court also rejected Objectors' contentions that IPP Counsel and the class

20

representatives had not adequately represented uncompensated class members.  *Id*. at 22-23.

21

### B.    The Fee Order

22

On August 4, 2016, this Court issued a separate Order on Attorneys' Fees, Expenses, and

23

Incentive Awards Re: Indirect Purchaser Settlements.  ECF No. 4740 (the "Fee Order").  The Court

24

applied the factors set forth in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–49 (9th Cir. 2002),

25

and held that the circumstances warranted an upward adjustment from the Ninth Circuit's 25%

26

benchmark to 27.5% of the settlement fund.  *Id*. at 5-9.   To guard against windfall profits for Class

27

Counsel, the Court examined whether the 27.5% fee award yielded an excessive multiplier of Class

28

2

Counsel's lodestar and held that it did not.  *Id.* at 10-16.  The resulting 1.96 multiplier was "well within the range of acceptable multipliers."  *Id.* at 16.  The resulting fee award to IPP Counsel was $158,606,250.  *Id.* at 19.

### C.    The Objectors' Appeals

The Objectors filed 11 appeals,[1] challenging settlement approval, the plan of distribution, and the fee award.  The Ninth Circuit consolidated the appeals on January 26, 2017.  Five appeals are still pending, filed by three groups of Objectors-Appellants.[2]

The remaining appeals challenge this Court's conclusion that it was fair and reasonable for Class Members from the Three States to receive no monetary compensation for releasing their claims.[3]  Objector-Appellants contend that claims from Class Members in those states are valuable because they are purportedly viable, saved either by the relation-back doctrine, the *American Pipe* class action tolling doctrine, or various state-specific tolling doctrines.[4]  Relatedly, the Objector-Appellants challenge this Court's certification of a settlement class, arguing that Lead Counsel and

---

[1] ECF Nos. 4741, 4743, 4744, 4745, 4746, 4747, 4749, 4751, 4752, 4753, 4756, and 4757.

[2] The three remaining Objector-Appellants and their counsel are: (1) Anthony Gianasca, Gloria Comeaux, Mina Ashkannejhad individually and/or as Administrator of the Estate of the Late R. Deryl Edwards, Jr., Jeffrey Speaect, Rosemary Ciccone, and Jeff Craig, all of whom are represented by Robert Bonsignore, who was counsel of record in this litigation from its inception; (2) Rockhurst University, Gary Talewsky, and Harry Garavanian, all of whom are represented by Theresa Moore (who was counsel of record in this litigation from its inception) and Polly Estes, who appeared as counsel on appeal; and (3) Dan L. Williams & Co. ("Williams"), which is represented by Brian Torres of Brian M. Torres, PA, John Crabtree of Crabtree & Auslander, and Francis Scarpulla of the Law Offices of Francis O. Scarpulla.  Mr. Scarpulla was counsel of record in this litigation from its inception.  This Court dismissed Mr. Scarpulla's objections to the settlements for lack of standing.  *See* Final Approval Order at 34-36.  The Ninth Circuit agreed and dismissed Mr. Scarpulla's appeal for lack of standing.  ECF No. 5127.  However, Mr. Scarpulla later appeared on behalf of Williams.  Mr. Scarpulla's co-counsel, Messrs. Torres and Crabtree, are well-known professional objectors.  They did not previously appear on behalf of Williams before this Court.  They only appeared in the Ninth Circuit around the time the opening briefs on appeal were filed.  *See* Declaration of Mario N. Alioto In Support of IPPs' Motion Pursuant to Federal Rule of Civil Procedure 62.1 For An Indicative Ruling on Their Request to Amend the Fee Order and Approve Revised Plan of Distribution ("Alioto Decl.") ¶ 2.

[3] *See, e.g.,* Appeal No. 16-16379, Dkt. Entry 70 ("Rockhurst AOB") at 54-57, 68-69; Appeal No. 16-16378, Dkt. Entry 35 (Williams AOB) at 23-24.

[4] *See, e.g.,* Rockhurst AOB at 58-70; Williams AOB at 26-30.

the Class Representatives failed adequately to represent Class Members in the Three States by failing to vigorously pursue their claims.[5]

### D.   The Court of Appeals Questions Counsel About the Plan of Distribution

On April 10, 2018, a panel of the Ninth Circuit comprised of Circuit Judges Wardlaw and Clifton and Judge Katzman (Judge for the United States Court of International Trade, sitting by designation) heard oral argument.   The panel questioned counsel regarding that portion plan of distribution that did not provide for monetary compensation for Class Members in the Three States. *See, e.g.,* Alioto Decl. ¶ 3, Ex. A (Ninth Circuit Apr. 10, 2018 Hearing Tr.), 35:6-21, 38:12-19, 41:4-9.  The panel also acknowledged the potential consequences of reversing this Court's approval of the settlements, recognizing that if the settlements are reversed, there is a risk the $577 million may disappear, and encouraged the parties to mediate regarding the plan of distribution:

> JUDGE WARDLAW: [questioning Objector Counsel, Polly Estes] But do you also want to – do you want the approval of the settlement reversed?
>
> . . . .
>
> JUDGE CLIFTON: I want to focus your attention on the question Judge Wardlaw just asked.  Do you really want this settlement to go away or are you focused, as well, on the plan of allocation that the defendants are desperately trying to put it on the table by itself?
>
> MS. ESTES: What I really want is for this case to settle and for us to be able to participate equally in the $577 million allocation.
>
> JUDGE CLIFTON: So it sounds like your side of the room might be amenable to seeing if a resolution can be reached as well?
>
> MS. ESTES: Absolutely. . . .

*See, e.g., id*. at 63:20 – 64:18.[6]  *See also* 55:15-25; 61:24 – 62:11.  At the conclusion of argument, the panel submitted the case for decision.

---

[5] *See, e.g.,* Rockhurst AOB at 32-49; Appeal No. 16-16373, Dkt. Entry 32 ("Gianasca AOB") at 47-49.

[6] After the hearing, counsel for Rockhurst, Theresa Moore, sent a letter to the Ninth Circuit stating that her co-counsel, Ms. Estes, had misspoken when she stated that "objectors were willing to

4

**E.     The Court of Appeals Refers the Case to Appellate Mediation**

On April 30, 2018, the Ninth Circuit issued an order referring the appeals to the Ninth Circuit Mediation Program for mediation and vacating submission pending further order.  ECF No. 5283. On June 12, 2018, the Ninth Circuit issued a subsequent order, requiring that an in-person mediation with the Hon. Vaughn R. Walker (Ret.) and Circuit Mediator Roxane G. Ashe commence on July 10, 2018.  The parties engaged in extensive mediation proceedings but were unable to reach a resolution.

**III.    THE IPPS' PROPOSAL AND REQUEST FOR RELIEF**

**A.     The IPPs Propose A Plan of Distribution That Will Compensate Class Members in the Three States.**

In proposing a plan of distribution for the settlements, IPP Counsel were required to make many judgment calls based on the facts and the applicable law.   Among them was the legal question of whether to allow CRT purchasers in the Three States to make claims for monetary compensation. While each of the Three States may have allowed claims by indirect purchasers, statewide damages classes were not certified for those states because no viable class representatives were available to Lead Counsel.   While there were no state damages classes for the Three States, the indirect CRT purchasers in those states nevertheless released their claims as part of the nationwide Rule 23(b)(2) injunctive relief class.

IPP Counsel initially proposed a plan of distribution that provided monetary compensation only to Class Members in the 22 States with certified damages classes, thus excluding the Three States.  *See* Final Approval Order at 17.  IPP Counsel advocated for this plan of distribution because

---

mediate again for a resolution for the current settlement amount." Dkt. Entry No. 206, Appeal No. 16-16379.  But Ms. Moore's position in her letter was inconsistent not only with her co-counsel's position at the hearing, but also with her and her co-objectors' positions in their briefs.  *See, e.g.,* Rockhurst AOB at 38 (criticizing Lead Counsel for entering "into a settlement into a settlement agreement releasing all related claims on behalf of IPPs in the Omitted Repealer States without securing for them any share of the nearly $577 million settlement award or any other compensation."); Gianasca AOB at 49 (criticizing Lead Counsel's failure to "secure entitlement to share in the $577 million economic recovery with similarly situated class members from the remaining Repealer States.").

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

the claims by indirect purchasers in those states were time barred, and thus not entitled to compensation. *See* ECF No. 4370-1 (¶¶ 36-43).   Based on those facts, Special Master Quinn determined that the existing plan of distribution's treatment of Class Members from the Three States was fair, adequate, and reasonable, and consistent with the law.   ECF No. 4351, at 47–49.   This Court agreed with that conclusion, and overruled the objections to Special Master Quinn's recommendation.   Final Approval Order at 23–25.

The focus of Objector-Appellants' arguments, both in their appellate briefs and at oral argument before the panel, was on the plan of distribution and the lack of monetary compensation for indirect purchasers in the Three States. *See, e.g*., Hearing Tr. 64:14-15; Gianasca AOB at 48-49; Rockhurst AOB at 9, 38.   Portions of the Ninth Circuit panel's questions to IPP Counsel and to Objector-Appellants' counsel also focused on the plan of distribution as it related to the Three States. Consequently, IPPs propose to (1) amend the plan of distribution to allow Class Members in the Three States to file claims; (2) take money from IPP Counsel's fee award to increase the Net Settlement Fund in an amount which, according to IPPs' expert economist, should be more than sufficient to compensate the anticipated claims of Class Members in the Three States at the same level as existing claimants.   IPP Counsel's contribution is also intended to ensure that—to the extent there is any dilution of the claims of existing claimants is (and there should not be)—it is *de minimis*.

To that end, IPP Counsel propose to reduce their fee award by $6 million, thereby increasing the Net Settlement Fund, and allowing Class Members in the Three States to file claims, as further described below.

**B.    IPP Counsel Propose to Reduce Their Attorney Fee Award By $6 Million To Compensate Class Members in the Three States.**

First, IPP Counsel request that the Court amend its Fee Order to reduce the fee award by $6 million, from $158,606,750 to $152,606,750, thereby increasing the Net Settlement Fund available for distribution to Class Members by $6 million.   The amount of the proposed reduction is based on the expert opinion of Jonathan E. Schwartz, Senior Vice President at Nathan Associates Inc., an economic and financial consulting firm.   IPP Counsel retained Mr. Schwartz to determine the

1  amount necessary to fund eligible anticipated claims from the Three States, and determine the

2  potential impact on existing claimants from the 22 States.[7]

3  Mr. Schwartz estimates that, based on empirical data from the claims experience to date and

4  assuming that claims in the Three States are compensated at the same level as claims from the 22

5  States, the value of the likely, eligible claims by Class Members in the Three States is $5.05

6  million.[8]  Therefore, the $6 million reduction in IPP Counsel's fees should be more than sufficient to

7  satisfy the anticipated claims of eligible Class Members in the Three States without any dilution of

8  the Net Settlement Fund available for existing claimants from the 22 States.

9  IPP Counsel propose that the Net Settlement Fund (including the $6 million from IPP

10  Counsel's fees) be reallocated amongst all claimants such that all claimants—from the 22 States and

11  the Three States—receive their pro-rata share of the increased fund.  By increasing the Net

12  Settlement Fund from IPP Counsel's own fees by $6 million, the claims of existing claimants from

13  the 22 States are unlikely to suffer even nominal dilution.  Even if the claims of Class Members in

14  the Three States are significantly greater than the prior claims experience would predict,[9] any

15  dilution of the claims of existing claimants' claims would be *de minimis*.[10]  This is fair and

16

17  [7] *See* Declaration of Jonathan E. Schwartz Regarding Value of Projected Claims from
   Massachusetts, Missouri and New Hampshire ("Schwartz Decl."), ¶ 9.

18  [8]  *See id.* ¶¶ 11, 19.  It is reasonable for Mr. Schwartz to base his estimate for claims by Class
19  Members in the Three States on the claims that already occurred based on the similar nature of the
   two claims processes.  In particular, the budget for the notice, the length of time for submitting
20  timely claims, and the claim form and procedure for Class Members in the Three States to submit
   claims will be similar to the prior claims process.  *Id.* ¶ 13.  Based on Massachusetts and Missouri
21  law, Mr. Schwartz has assumed that Massachusetts and Missouri businesses will not be permitted to
   claim, as further explained herein.  *Id.* ¶ 8, n. 7.

22  [9] Based on the claims rate to date and Mr. Schwartz's opinion that likely claims will be $5.05
   million, IPP Counsel do not anticipate that the value of the claims will exceed $6 million.  Indeed,
23  Mr. Schwartz opines that his methodology likely *overestimates* the claims by Class Members in the
   Three States since "additional time that has passed since the Prior Claims Process was undertaken
24  mak[ing] the same level of claims in the [Three] States slightly less likely." *Id.* ¶¶ 13, n.10, 22.
   Additionally, some businesses operating in New Hampshire may already have claimed may already
25  have been able to claim for some of the CRT's they obtained if their headquarters is in one of the 22
   States and it engaged in "centralized purchasing" from such headquarters. *Id.* ¶¶ 16, n. 13, 22.

26  [10] For example, even if the actual claims rate for the Three States is twice what Mr. Schwartz
27  predicts, existing claimants would only receive $0.05 less per CRT Weighted Unit.  *Id.* ¶ 22.

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE
ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

1    reasonable even in the unlikely event of a *de minimis* dilution of existing claims.  As further

2    explained below, existing claimants "have no justifiable expectation of any particular payout," and

3    are obligated to share the recovery with other valid claimants.  *In re Bear Stearns Companies, Inc.*

4    *Securities, Derivative, and ERISA Litigation*, 297 F.R.D. 90, 96 (S.D.N.Y. 2013).

5        **C.    IPP Counsel Request That the Court Amend the Plan of Distribution to Allow**
           **Class Members In The Three States With Valid Damages Claims to File Claims**

6

7            Next, IPP Counsel request that the Court amend the plan of distribution to allow Class

8    Members in the Three States to file claims against the Net Settlement Fund, as supplemented by the

9    $6 million reduction from IPP Counsel's fee.  The rest of the plan of distribution would remain the

10   same as before, meaning the same weighted *pro rata* formula previously approved by this Court

11   would apply, with the same $25 minimum payment.  *See* Final Approval Order at 26-27 (describing

12   and approving weighted *pro rata* formula).

13           With regard to who is eligible to file a claim, IPP Counsel are mindful of the comments of

14   the Panel at oral argument.  Circuit Judge Clifton drew a distinction between the claims of Class

15   Members in non-repealer states—which never had a valid claim—and repealer states (like

16   Massachusetts, Missouri and New Hampshire) which may have had a valid claim prior to the

17   expiration of the statutes of limitations, and suggested that only the latter are entitled to

18   compensation.  Hearing Tr. at 49:14-15.

19           The antitrust statutes in both Massachusetts and Missouri are non-repealer statutes in that

20   they follow *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1997), and do not allow claims by indirect

21   purchasers.[11]  In both states, however, courts have held that indirect purchasers may sue for antitrust

22   violations under their consumer protection statutes.  *See Ciardi,* 762 N.E.2d at 306; *In re Pool Prod.,*

23

24   _____

25   [11] *See Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303, 308 (Mass. 2002) ("[T]he
     [Massachusetts] Antitrust Act is to be construed in harmony with . . . the rule of law established in

26   *Illinois Brick Co. v. Illinois . . .*"); *In re Pool Prod. Distribution Mkt. Antitrust Litig.*, 946 F. Supp. 2d
     554, 570 (E.D. La. 2013) ("Missouri's antitrust laws follow *Illinois Brick* and prohibit recovery by

27   indirect purchasers.")

28

                                                          8
     _____
     INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE
     OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE
     ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

946 F.Supp. 2d at 570-71.  But numerous courts have also held that only non-business indirect purchasers may file claims under the Massachusetts and Missouri consumer protection statutes.[12]

Therefore, consistent with the Ninth Circuit's comments, IPP Counsel propose that only those Class Members in the Massachusetts and Missouri that may have had valid claims for damages prior to the expiration of the statute of limitations (*i.e.,* those who can satisfy the requirements of the Massachusetts and Missouri statutes, and the cases interpreting them) should be permitted to file claims for compensation under this amended plan of distribution.

> Massachusetts: Eligible claimants in Massachusetts would be persons and/or entities "not engaged in trade or commerce," which indirectly purchased CRTs or CRT Products for their own use and not for resale, and for primarily personal reasons and not motivated by business considerations.  *See* Mass. Gen. Laws Ch. 93A, § 9.

> Missouri:  Eligible claimants in Missouri would be persons and/or entities that indirectly purchased CRTs or CRT Products for their own use and not for resale, and "primarily for personal, family, or household purposes."  *See* Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.025.

The New Hampshire statute does not contain any such limitations, therefore all persons and entities in New Hampshire who purchased CRT Products during the Class Period will be eligible to file claims.

    **D.**    **The IPPs Propose to Provide Notice to Class Members in the Three States of the Increased Net Settlement Fund and Their Right to Claim Against That Fund in Conjunction with Notice of the Mitsubishi Electric Settlement.**

Lastly, the IPPs propose to provide notice to Class Members in the Three States of their right to file claims against the increased Net Settlement Fund in conjunction with notice of the Mitsubishi Electric Settlement.   Shortly after the filing of this motion, IPPs will move for preliminary approval

---

[12] *See, e.g., Ciardi,* 762 N.E.2d at 308, 311 (holding that businesses may not claim under Section 9 of the Massachusetts Consumer Protection Act; Section 11 of that Act applies to businesses, but it is to be interpreted in accordance with *Illinois Brick*, meaning indirect purchaser businesses have no claim); *In re Asacol Antitrust Litig.*, 2016 WL 4083333, No. 15-cv-12730-DJC, at *12 (D. Mass. July 20, 2016) (only those "who purchase[] or lease [] merchandise primarily for personal, family or household purposes" may claim under the Missouri Merchandising Practices Act) (alterations original) (quoting Mo. Ann. Stat. § 407.025(1)).

1   of their settlement with Mitsubishi Electric and for approval of a comprehensive, nationwide notice

2   program.  As part of this notice program, the IPPs will provide notice to Class Members in the Three

3   States of (1) the amended plan of distribution allowing Class Members in the Three States to file

4   claims, (2) who is eligible to file claims, and (3) the procedure for filing a claim.

5   IPPs need not provide notice to Class Members in the 22 States of the amended plan of

6   distribution because, in the unlikely event there is any reduction in the value of their claims, it would

7   be *de minimis*. *See* § 6:17. Certification of a settlement class—Notice of settlement, 2 McLaughlin

8   on Class Actions § 6:17 (14th ed.) ("Nor is supplemental notice or reopening of the claims filing

9   period required when a plan of allocation is modified to permit class members with *de minimis*

10  claims to participate in the settlement consideration when the plan described in the class notice did

11  not permit such recovery.")

12  **IV.   ARGUMENT**

13  **A.   Federal Rule of Civil Procedure 62.1**

14  Rule 62.1 allows a party to request an indicative ruling on a motion for relief that is barred by

15  a pending appeal.  *See* Fed. R. Civ. P. 62.1.  After a party makes a motion for relief that the district

16  court lacks authority to grant because of a pending appeal, the district court may: "(1) defer

17  considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the

18  court of appeals remands for that purpose or that the motion raises a substantial issue."  Fed. R. Civ.

19  P. 62.1(a).  The district court's decision under Rule 62.1 is known as an "indicative ruling."  *See,*

20  *e.g.*, 16A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3958.10.  In

21  considering a party's request for an indicative ruling, the district court has discretion to receive new

22  evidence.  *See* 20 James Wm. Moore et al., *Moore's Federal Practice* § 312.1.10 (citing *NewGen,*

23  *LLC v. Safe Cig, LLC*, 840 F.3d 606, 612 n.1 (9th Cir. 2016)).[13]

24

25  [13] Rule 62.1 works in concert with Appellate Rule 12.1(b), and both contemplate a coordinated

26  procedure between the district court and appellate court in determining a party's motion for relief
    that is otherwise barred pending appeal.  If the district court issues an indicative ruling under Rule

27  62.1(a), then the movant promptly notifies the circuit clerk that the district court has stated either that

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE
ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

**B.** **The Court Should Amend Its Fee Order and Amend the Plan of Distribution for the Net Settlement Fund**

**1.** **Legal Standards**

"Approval of the plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) (internal quotation marks and citation omitted); *see also In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001); *Nguyen*, 2014 WL 1802293, at *5 ("[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel."); *In re: Cathode Ray Tube (CRT) Antitrust Litigation*, 2016 WL 6778406, at *3 (N.D. Cal. Nov. 16, 2016) (the law "does not require the best possible plan of allocation, only one that that has a reasonable, rational basis.") "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *In re Omnivision*, 559 F. Supp. 2d at 1045.

//

//

---

it would grant the motion or that the motion raises a substantial issue. *See* Fed. R. App. P. 12.1(a); Fed. R. Civ. P. 62.1(b). At that point, the movant also requests the court of appeals to order a limited remand to permit the district court to consider the motion. *See* Appellate Rule 12.1(b); 16A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3958.10. After the movant's request for remand under Appellate Rule 12.1(b), "[t]he court of appeals has discretion concerning whether to remand and on what terms." 16A *Federal Practice and Procedure* § 3958.10; *see also* Fed. R. App. P. 12.1 advisory comm. note (2009) ("Remand is in the court of appeals' discretion."). Normally, the court of appeals retains jurisdiction, which is the rules advisory committee's preferred procedure. *See* 20 *Moore's Federal Practice* § 312.1.12[2] (citing, *e.g.*, *Moore v. Tanipahoa Par. Sch. Bd.*, 836 F.3d 503, 504 (5th Cir. 2016) (per curiam) (circuit court panel retained jurisdiction during pendency of remand, which was made for limited purpose of allowing district court to rule on Fed. R. Civ. P. 60(b) motion)); *see also* Fed. R. App. P. 12.1 advisory comm. note (2009). After the court of appeals remands for further proceedings, the district court then decides whether to grant the party's motion for relief on remand. *See* Fed. R. Civ. P. 62.1(c) ("The district court may decide the motion if the court of appeals remands for that purpose.").

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

### 2. The Court Should Amend the Fee Order to Reduce the Fee Award to IPP Counsel By $6 Million

The Court should amend the Fee Order to reduce the aggregate fee award to IPP Counsel by $6 million, from $158,750,000 to $152,606,750 so that the Net Settlement Fund can be increased by that amount. Assuming the number and type of claims submitted by Class Members in the Three States are proportional based on population and GDP to the claims already submitted by Class Members in the 22 States—and there is every reason to believe they will be—Mr. Schwartz estimates the aggregate value of those claims will be $5.05 million. *See* Schwartz Decl. ¶¶ 11, 13. Mr. Schwarz's estimates are based on the CRT "Weighted Unit" value that existing claimants currently stand to receive.[14] Thus, the $6 million increase in the Net Settlement Fund should be sufficient to compensate Class Members in the Three States at the same level of compensation that existing claimants in the 22 States currently stand to receive.

### C. The Proposed Amended Plan of Distribution Is Fair, Adequate and Reasonable

#### 1. Amending the Plan of Distribution to Allow Class Members in the Three States to Receive a Pro-Rata Share of the Net Settlement Fund Is Fair, Adequate and Reasonable

IPPs' proposal to amend the plan of distribution to allow Class Members in the Three States an opportunity to claim a pro-rata share of the Net Settlement Fund, as supplemented by reducing IPP Counsel's fee, is fair, adequate, and reasonable. Distribution on a pro-rata basis, with no class member being favored over others have frequently been determined to be fair, adequate, and reasonable.[15]

---

[14] *See* Schwartz Declaration ¶ 9. *See also id.* at ¶ 5 (explaining that the CRT "Weighted Unit" refers to the different weights used (and approved by this Court) for different CRT products, and that the value of the Weighted Unit is based on the total Weighted Units claimed versus the amount of the Net Settlement Fund).

[15] *See In re Vitamins Antitrust Litig.*, No. 99–197 TFH, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members, have repeatedly been deemed fair and reasonable."); *In re Lloyds' Am. Trust Fund Litig.*, No. 96 Civ.1262 RWS, 2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata* allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits.").

1    Here, IPP Counsel propose to use the same weighted pro-rata formula that this Court

2    previously approved, and which takes into account the relative harm alleged to have been incurred

3    by purchasers of different types of CRT Products. *See* Final Approval Order at 26-27. A plan of

4    distribution that compensates class members based on the type and extent of their injuries is

5    generally considered reasonable. *See In re Oracle Sec. Litig.*, No. 90-cv-00931-VRW, 1994 WL

6    502054, at *1 (N.D. Cal. June 18, 1994). *See also* Final Approval Order at 28 (recognizing that it is

7    reasonable to allocate the settlement fund "based on the extent of class members' injuries").

8    Even though this Court previously held that it was reasonable to release the claims of Class

9    Members in the Three States without compensation, the alleged CRT conspiracy would have

10   resulted in overcharges on CRT Products purchased by Class Members in those states in the same

11   manner as Class Members in the 22 States. Thus, the extent and nature of the alleged injury would

12   be the same. Additionally, at oral argument, the Panel perceived the claims of Class Members in the

13   Three States as substantively stronger than the nonexistent claims hailing from non-repealer states,

14   and suggested they should be compensated whereas non-repealer state claims need not be

15   compensated. *See* Hearing Tr. at 49:14-25; *see also In re New Motor Vehicles Canadian Export*

16   *Antitrust Litig.*, 800 F.Supp.2d 328, 330-333 (2011) (requiring the inclusion of states that permit

17   indirect purchaser claims in the plan of allocation, but holding that states which did not permit

18   indirect purchaser claims were justifiably excluded from the plan of allocation even though their

19   claims were released). Thus, it is fair and reasonable to compensate Class Members in the Three

20   States at the same level as existing claimants in the 22 States.

21   Finally, until a distribution to class members has been made, courts retain the equitable

22   power to decide which parties may share in the distribution. *See In re Orthopedic Bone Screw*

23   *Products Liability Litigation*, 246 F.3d 315, 321 (3d Cir. 2001) (The courts' "equitable powers" to

24   determine who should receive a portion of the distribution "are retained by the court until the

25   settlement fund is actually distributed."); *McPhail v. First Command Financial Planning, Inc.*, 2009

26   WL 839841, at *9 (S.D. Cal. Mar. 30, 2009) (same). IPPs request that the Court exercise this

27   discretion to permit claims by Class Members in the Three States.

28

### 2.    The Proposed Amended Plan of Distribution Is Fair to Existing Claimants

The amended plan of distribution is also fair to the existing claimants in the 22 States.  Mr. Schwartz's calculations show their claims will not be diluted as a result of the claims by Class Members in the Three States.  The $6 million from IPP Counsel's attorney fee award should be more than sufficient to compensate claimants in the Three States.  Even if Mr. Schwarz has underestimated the claims from the Three States such that they are *twice* his estimates, the impact on existing claims will still be *de minimis*, with the Weighted Unit value decreasing by only $0.05.  *See* Schwartz Decl. ¶ 22.  Moreover, if Mr. Schwartz has overestimated the claims from the Three States—which he opines is the most likely scenario (*id.*)—and the $6 million is not exhausted by claimants from the Three States, the remaining funds will be distributed pro-rata to all claimants in the Three States *and* the 22 States, and all claimants will receive *more*.

In any event, and more fundamentally, existing claimants have no expectation or right to a particular payout.  *See In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litigation*, 297 F.R.D. at 96 (holding that class members were not prejudiced by the dilution of their claims by 4% due to additional claims being permitted because "they are obligated to share a fixed recovery with other equally entitled claimants and *timely-filed claimants have no justifiable expectation of any particular payout*.") (emphasis added).  Thus, a *de minimis* reduction in the amount existing claimants might receive does not constitute legal prejudice, because "all legitimate members of the class are normally presumed equally entitled to share in [a] recovery." *In re Elec. Carbon Products Antitrust Litigation*, 622 F.Supp.2d 144, 154 (D.N.J. 2007).

Notably, under the proposed plan, *all* claimants will receive more than they would have received if Class Members in the Three States had initially been allowed to claim against the Net Settlement Fund, since the total claims would have been more and everyone's pro-rata share would have been less. Schwartz Decl. ¶ 11, n. 9.  IPP Counsel is supplementing the net settlement fund from their fee award and thereby ensuring that all claimants pro-rata share is more than it otherwise would have been.

14

**D.     The Proposed Amended Plan of Distribution Fairly Represents the Interests of Class Members From the Three States.**

As indicated above, and consistent with the Panel's comments at oral argument, IPPs propose to allow claims from only those indirect purchasers in Massachusetts and Missouri which can satisfy the requirements of those states' consumer protection statutes.[16]

**1.      It Is Fair and Reasonable to Require Massachusetts Class Members to Satisfy the Requirements of Massachusetts Law In Order to be Eligible to Claim**

The proposed amended plan of distribution reasonably allows claims by only Massachusetts persons or entities not engaged in trade or commerce which indirectly purchased CRT Products for primarily personal reasons and not motivated by business considerations.  *See* Mass. Gen. Laws ch. 93, §9.  The plan's exclusion of businesses engaged in the conduct of any trade or commerce is well-settled under Massachusetts law.

The Massachusetts Antitrust Act creates no cause of action for indirect purchasers.  *See Ciardi*, 762 N.E.2d at 308 (Mass. 2002); *see also* Mass. Gen. Laws ch. 93, §§ 1–14A.  While § 11 of the Massachusetts Consumer Protection Act creates a cause of action for businesses who suffer loss as a result of an unfair trade practice as defined by the statute, *see* Mass. Gen. Laws Ann. Ch. 93A, § 11, that section does not confer a cause of action on indirect purchaser businesses that incurred losses caused by an antitrust violation.[17] Not only is it the law of Massachusetts that businesses do not have indirect purchaser claims, it is also the law of this case.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 07-cv-5944-SC, 2014 WL 1088256, at *3 (N.D. Cal. Mar. 13, 2014) (concluding no Massachusetts statutory cause of action for persons (whether individual consumers or corporations) involved in trade or commerce).

---

[16] As noted above, the New Hampshire statute does not contain limitations comparable to those in the Massachusetts and Missouri statutes.  Therefore, all persons and entities in New Hampshire who purchased CRTs or CRT Products during the Class Period will be eligible to file claims.

[17] *See, e.g.*, *Winters v. Ocean Spray Cranberries, Inc.*, 296 F. Supp. 3d 311, 325 (D. Mass. 2017) (concluding that plaintiffs "cannot bring a § 11 claim that is premised on an antitrust violation."); *In re Asacol Antitrust Litig.*, 2016 WL 4083333, at *13 (same).

Massachusetts indirect purchasers who are *not* engaged in trade or commerce may assert claims for price-fixing or other anticompetitive conduct under Section 9 of the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ann., ch. 93A, § 9.  *See Ciardi*, 762 N.E.2d at 306. Cases interpreting Section 9 hold that indirect purchasers must have purchased the product in question "for primarily personal reasons" and "not motivated by business considerations." *See, e.g., Sharp v. Hylas Yachts, Inc.*, No. 11-11814-JCB, 2015 WL 13657010, at *3 (D. Mass. Sept. 24, 2015) (concluding that plaintiffs purchased a yacht primarily for personal use and could sue under Section 9 even though an LLC held title to the yacht, because the yacht was used primarily for pleasure and not business); *In re Aggrenox Antitrust Litig.*, No. 3:14-md-2516, 2016 WL 4204478, at *8 (D. Conn. Aug. 9, 2016) ("Where there is ambiguity, the choice between consumer and business claims under the statute 'appears to turn on whether a given party has undertaken the transaction in question for business reasons, or has engaged in it for purely personal reasons (such as the purchase of an item for personal use).'") (quoting *Frullo v. Landenberger*, 814 N.E.2d 1105, 1112 (Mass. App. Ct. 2004)).

Accordingly, the plan of distribution reasonably excludes claims by Massachusetts Class Members involved in trade or commerce, which did not purchase a CRT product for primarily personal reasons and/or were motivated by business considerations.

## 2.   It Is Fair and Reasonable to Require Missouri Class Members to Satisfy the Requirements of Missouri Law In Order to be Eligible to Claim

Like Massachusetts, the plan of distribution proposes to allow claims of only persons or entities in Missouri which indirectly purchased CRT products "primarily for personal, family, or household purposes."  The plan of distribution reasonably tracks the language of § 407.025(1) of Missouri's Merchandising Practices Act ("MMPA"), which courts in this district have interpreted to confer standing "only upon persons who purchase property for their *own* personal, family or household purposes.  *See, e.g., Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, No. 13-CV-01180-BLF, 2015 WL 4755335, at *23 (N.D. Cal. Aug. 11, 2015) (emphasis in original)

16

1    (quoting *In re Actimmune Marketing Litig.*, No. C 08–02376–MHP, 2010 WL 3463491, at *12 (N.D.

2    Cal. Sept. 1, 2010)).

3         Indirect purchasers which did not purchase CRT Products for "personal, family, or household

4    purposes" but rather for business or corporate entity purposes do not have viable claims under the

5    MMPA.  *See, e.g.*, *Black v. Moneygram Payment Sys., Inc.*, No. 4:15-CV-01767-AGF, 2016 WL

6    3683003, at *5 (E.D. Mo. July 12, 2016) (granting summary judgment to defendants because

7    "[p]laintiff's purchase of money services was, by his own account, for business purposes," and

8    "[p]laintiff therefore lacks standing with respect to his MMPA claim")); *In re Ford Motor Co. E-350*

9    *Van Products Liab. Litig. (No. II)*, 2010 WL 2813788, at *60 (D.N.J. July 9, 2010), *amended, In re*

10   *Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*, 2011 WL 601279 (D.N.J. Feb. 16, 2011)

11   (granting summary judgment to Ford, because plaintiff "purchased the vehicles for church purposes

12   and not primarily for personal, family, and household use" and, hence, "lacks standing to assert its

13   MMPA claims").[18]

14        Accordingly, the plan of distribution's limitation on Missouri claims to persons or entities

15   which purchased "personal, family, or household purposes" is fair, adequate, and reasonable.

16   **E.    The Court Should Approve The Proposed Notice to Class Members In the Three**
         **States**
17

18        IPPs propose to give notice to Class Members in the Three States of the amendments to the

19   plan of distribution and their right to claim against the Net Settlement Fund.

20        **1.    IPPs Propose to Provide Notice In Conjunction With the Mitsubishi**
              **Electric Settlement**

21        Under Rule 23(e), "[t]he Court must direct notice in a reasonable manner to all class

22   members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  IPPs propose that notice

23

24   ───────────────

     [18] *See also Saey v. CompUSA, Inc.*, 174 F.R.D. 448, 451 (E.D. Mo. 1997) (concluding that "because

25   [an individual] purchased the computer for his business, he does not have standing to bring a[n
     MMPA] claim"); *Se. Missouri Hosp. v. C.R. Bard, Inc.*, 2008 WL 199567, at *9 (E.D. Mo. Jan. 22,

26   2008) (citing *Saey*, 174 F.R.D. at 451) (dismissing plaintiff's MMPA claim "because the urological
     catheters at issue clearly were not purchased "primarily for personal, family or household

27   purposes").

28

                                            17

1    to Class Members in the Three States be provided in conjunction with notice of IPPs' settlement

2    with Mitsubishi Electric.[19]   The reason for this proposal is threefold: (1) claimants from the Three

3    States will be receiving notice of the Mitsubishi Electric Settlement, so notification of their right to

4    claim against the Net Settlement Fund can easily be incorporated into that comprehensive,

5    nationwide notice program; (2) giving notice is expensive, so it is more efficient and cost-effective

6    to combine the notices rather than disseminate separate notices; and (3) separate notices would likely

7    confuse class members.

8          Notice of the Mitsubishi Electric Settlement and the amended plan of distribution will be

9    disseminated nationwide, specifically targeting class members in the 30 states plus the District of

10    Columbia (including the Three States) that are included in the Mitsubishi Electric Settlement Class.

11    The comprehensive notice program will be substantially similar to that already approved by the

12    Court in connection with the prior settlements (*see* Final Approval Order at 7-9), and that proposed

13    by IPPs in connection with the terminated motion for preliminary approval of the Mitsubishi Electric

14    Settlement. *See* ECF No. 5245-2 (Declaration of Joseph M. Fisher Re: Mitsubishi Notice Program).

15    This nationwide notice program will ensure that indirect purchasers who may have bought CRT

16    Products in one of the Three States, but who now live elsewhere, will still receive notice and have an

17    opportunity to file claims.

18          **2.**     **The Form of the Proposed Notice Is Reasonable**

19       "Rule 23(e) requires notice that describes 'the terms of the settlement in sufficient detail to

20    alert those with adverse viewpoints to investigate and to come forward and be heard.'" *In re Online*

21    *DVD-Rental Antitrust Litig.*, 779 F.3d 934, 945–46 (9th Cir. 2015) (quoting *Lane v. Facebook, Inc.*,

22

23

---

24    [19] IPPs previously moved for preliminary approval of the Mitsubishi Settlement but requested a stay
in light of the appeals of the other settlements.  *See* ECF No. 5245, 5305.  On August 18, 2018, the

25    Court administratively terminated the motion.  ECF No. 5326.  IPPs will file an amended motion for
preliminary approval of the Mitsubishi Electric Settlement shortly after this motion.  The motion

26    papers will include the Declaration of Joseph M. Fisher (the notice provider and Claims
Administrator) detailing the proposed notice program and attaching copies of the proposed forms of

27    notice.

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE
ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

696 F.3d 811, 826 (9th Cir. 2012)).  The form of notice is "adequate if it may be understood by the average class member.  *See 4 Newberg on Class Actions* § 11.53.

The notices (both the summary and detailed notice) will include the following additional language regarding the changes to the plan of distribution, and Class Members' right to file claims:

Notice to Massachusetts, Missouri and New Hampshire Indirect Purchasers

> In addition, the district court has ordered that certain Massachusetts, Missouri and New Hampshire indirect purchasers may also file claims from prior settlements reached in this litigation totaling $576,750,000 with other defendants: the LG Electronics, Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson and TDA Defendants (the "Prior Settlements").

> Massachusetts, Missouri and New Hampshire indirect purchasers were initially not permitted to submit claims in these Prior Settlements.

> The district court has ordered that class members in Massachusetts, Missouri and New Hampshire should receive the same compensation for their CRT Product purchases as that received by other class members who were permitted to submit claims in the Prior Settlements.

> Class members entitled to file claims for payment from the Prior Settlements are:

> (1) <u>Massachusetts</u>. All persons or entities not engaged in trade or commerce who indirectly purchased CRTs or CRT Products in Massachusetts from March 1, 1995 through November 25, 2007, for their own use and not for resale, and whose purchase was undertaken for primarily personal reasons and was not motivated by business considerations. *See* Massachusetts Consumer Protection Act, MA Gen Laws Ch. 93A, § 9.

> (2) <u>Missouri</u>. All persons or entities who indirectly purchased CRTs or CRT Products in Missouri from March 1, 1995 through November 25, 2007, for their own use and not for resale, and primarily for personal, family or household purposes. *See* Mo. Ann. Stat. § 407.025(1).

> (3) <u>New Hampshire</u>. All persons or entities who indirectly purchased CRTs or CRT Products in New Hampshire, from March 1, 1995 through November 25, 2007, for their own use and not for resale.

These notice provisions contain adequate information and sufficient detail to alert indirect purchasers from the Three States of their right to file a claim.  *See In re BankAmerica Corp. Sec. Litig.*, 227 F. Supp. 2d 1103, 1107-08 (E.D. Mo. 2002) (finding "the contents of the proposed revised notice and supplement to be acceptable" because the class members "now will be notified of the relevant revisions to the proposed plan of allocation, particularly that they will be entitled to

19

1   recover half a damaged share per share of Bank of America stock.")  The proposed notice is fair and

2   reasonable, and the Court should approve it.

3   **3.      Class Members In Three States Need Not Be Provided a Renewed Right to Opt Out of the Settlements or Object to the Amended Plan of Distribution or the Fee Order**

4

5           Class members from the Three States need not be provided the right to object or opt out with

6   respect to the amended plan of distribution or the amended Fee Order.  These class members were

7   previously given notice of their right to object to the settlements, the plan of distribution (which

8   provided that class members in the Three States would *not* be provided monetary compensation for

9   the release of their claims), and the attorney fee award that IPP Counsel would seek (one-third of the

10  settlement fund).  *See* ECF No. 4371-1 (Detailed Notice), 4371-2 (Summary Notice).  They were

11  likewise given notice of their right to opt out from the settlements. *Id.* Class members that did not

12  opt out from the settlements, or object to the settlements, the plan of distribution, or the fee award,

13  need not be given a second opportunity now.  *See Officers for Justice v. Civil Serv. Comm'n of City*

14  *& Cty. of San Francisco*, 688 F.2d 615, 635 (9th Cir. 1982) ("[W]e have found no authority of any

15  kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second

16  chance to opt out.  We think it does not.").[20]

17          The changes that IPPs are now proposing to the fee award and the plan of distribution will

18  not trigger a new right to object or opt out because Class members in the Three States are not

19  adversely affected by IPPs' proposal.  In fact, class members in the Three States will be receiving

20  *more* benefits than they were previously told they would receive and IPP Counsel will be receiving

21  *less*.  *See* Principles of the Law of Aggregate Litigation § 3.05 (2010) ("For class members who did

22  not opt out of the class, new notice and opt-out rights are not required when, as a result of a fairness

23

24  _____

25  [20] *See also Low v. Trump University, LLC*, 881 F.3d 1111 (9th Cir. 2018) (holding that *Officers for Justice* has not been superseded by intervening Supreme Court decisions and reiterating that there is

26  no due process right to a second opt-out opportunity); *Denney v. Deutsche Bank AG,* 443 F.3d 253, 271 (2d Cir. 2006) ("Neither due process nor Rule 23(e)(3) requires, however, a second opt-out

27  period whenever the final terms change after the initial opt-out period.").

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE
ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

1    hearing, a settlement is revised and the new terms would entitle such class members to benefits not

2    substantially less than those proposed in the original settlement.").

3         In *In Re New Motor Vehicles Canadian Export Antitrust Litig.,* No. 2:03-md-1532-DBH (D.

4    Me.) ("*NMV*"), the district court faced an almost identical situation to that presented here.  There,

5    Class Counsel had proposed a plan of distribution that did not permit class members in certain

6    repealer states to file claims because, like here, there were no class representatives for those states.

7    As a result, claims for those states were not alleged in the litigation and the statutes of limitations

8    had run. *NMV,* 2011 WL 1398485, *7-9 (D. Me. Apr. 13, 2011); *NMV,* 800 F. Supp.2d 328, 330,

9    332-33 (D. Me. 2011).  The district court ordered Class Counsel to include class members in the

10   omitted states in the distribution plan, and ordered a supplemental notice to those class members

11   informing them of their right to file claims. *Id.* at 333-35.  Notably, the supplemental notice did not

12   provide class members in the omitted states a renewed right to opt out or object to the settlements or

13   the plan of distribution. *See NMV,* 2011 WL 4963103, at *2, Ex. A.  This Court should do the same.

14        Finally, under IPPs' proposal, claimants from the Three States will receive the same recovery

15   as existing claimants from the 22 States.  Thus, there is no unequal treatment.  Moreover, the

16   Objector-Appellants will be given a full and fair opportunity to be heard with respect to this

17   proposal.  Thus, the interests of Class Members in the Three States will be fully and fairly

18   represented and protected in this process.

19             **4.    Existing Claimants Need Not Be Given Notice of the Changes to the Plan
20                     of Distribution Because the Impact on Them, If Any, Would Be *De
                       Minimis***

21        When there is a change to the plan of distribution after notice has been issued, the court has

22   discretion to determine if additional notice is required.  *See* § 6:17. Certification of a settlement

23   class—Notice of settlement, 2 McLaughlin on Class Actions § 6:17 (14th ed.) ("Nor is supplemental

24   notice or reopening of the claims filing period required when a plan of allocation is modified to

25

26

27

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE
ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

permit class members with *de minimis* claims to participate in the settlement consideration when the plan described in the class notice did not permit such recovery.").[21]

In *NMV,* where the amended plan of distribution merely provided for a reallocation of the existing fund to include the omitted states—with no supplement from any source—the court did not require new notice to members of the existing class even though their recovery would be "somewhat lower."  800 F. Supp.2d at 334; *see also id.* at 334, n. 8 (concluding that "the modifications here are not material").   Similarly, in *In re BankAmerica Corp. Sec. Litig.*, the court ordered class counsel to amend the plan of distribution and allocate funds to certain previously-excluded class members.  227 F. Supp. 2d at 1104-5.  The court held that notice to existing claimants was unnecessary because their benefits were approximately the same under the revised plan of distribution. *Id.* at 1108 ("[B]ecause the October purchasers are the only plaintiffs whose rights will be materially affected by the [revised plan of allocation], they are the only plaintiffs who must be notified thereof.")

Here, as already explained, if Mr. Schwartz's estimations are close to the actual claims by Class Members in the Three States—which is the most likely outcome—there will be no impact on existing claimants.  *See* Schwartz Decl. ¶¶ 13, n. 10, 22 (opining that he has overestimated the likely claims).  The $6 million from IPP Counsel's fee will be sufficient to compensate all Class Members in the Three States at the level existing claimants currently stand to receive. *Id.* ¶ 19.  And, even if the actual claims are *double* Mr. Schwartz's estimates, the CRT Weighted Unit value for all claims will be only $0.05 less than it is currently—a reduction of less than 1%. *Id.* ¶ 22.  This would not be a material change requiring new notice to existing claimants.

In addition, the original notices expressly informed class members that the amount of money each claimant would receive was unknown and would depend on the total number of valid claims

---

[21] *See also* Principles of the Law of Aggregate Litigation § 3.05 (2010) ("notice and opt-out rights are not required when . . . a settlement is revised and the new terms would entitle such class members to benefits not substantially less than those proposed in the original settlement."); *Knuckles v. Elliott*, No. 15-cv-10175-LVP, 2016 WL 3912816, at *5 (E.D. Mich. July 20, 2016) ("The Court concludes that due process does not require notice to all Class members of this modification to the Settlement. District courts considering the issue hold that notice of an amendment is required only where the amendment would have a material adverse effect on the rights of class members." (citations and internal quotation marks omitted)).

filed.  *See* ECF No. 4371-1 (Detailed Notice at 7-8).  The notice also informed class members that the plan of distribution was subject to Court approval. *Id*. at 10.  Thus, no class member could have known their potential recovery before choosing how to respond to the notice.  In these circumstances, new notice is not required.  *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 641 (5th Cir. 2012) (affirming the district court's refusal to reissue notice after a change in the plan of allocation because "[t]he amount to be paid out per share depended on the total number of claims filed, something no class member could know during the filing period.")

Finally, the Net Settlement Fund is already much greater than existing claimants were informed it could be.  The original notice informed class members that attorneys' fees of up to one-third of the settlement fund, or approximately $192 million, may be deducted from the settlement fund before distribution.  *See, e.g.,* ECF No. 4371-1 at 9.  But ultimately, the Court awarded $158,606,750 in attorneys' fees, $34 million less.  Fee Order at 19.  Further, the Net Settlement Fund has been earning interest for close to four years.  The interest to date amounts to approximately $9 million net of taxes.  Alioto Decl. ¶ 4.  Thus, with the addition of the $6 million from IPP Counsel's fee, the $34 million that was not awarded in attorneys' fees, and the $9 million in interest, the Net Settlement contains approximately $50 million *more* than existing claimants could reasonably have expected.  These factors further support IPPs' position that new notice to existing claimants is not required.

## V.    CONCLUSION

For the foregoing reasons, the IPPs request the Court to state either that "it would grant [the IPPs'] motion if the court of appeals [orders a limited] remand[] for that purpose, or that the motion raises a substantial issue."  Fed. R. Civ. P. 62.1(a)(3) (alterations added).

//

//

Dated:  October 1, 2018

Respectfully submitted,

 */s/ Mario N. Alioto*
Mario N. Alioto (56433)
malioto@tatp.com
Joseph M. Patane (72202)
jpatane@tatp.com
Lauren C. Capurro (241151)
laurenrussell@tatp.com
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415-346-0679

*Lead Counsel for Indirect Purchaser*
*Plaintiffs*

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917