1 | Mario N. Alioto (56433)
2 | Joseph M. Patane (72202)
    Lauren C. Capurro (241151)
    TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
3 | 2280 Union Street
    San Francisco, CA 94123
4 | Telephone: 415-563-7200
    Facsimile: 415- 346-0679
5 | Email: malioto@tatp.com
    jpatane@tatp.com
6 | laurenrussell@tatp.com

7 | *Lead Counsel for the*
    *Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-cv-05944-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | **DECLARATION OF JONATHAN E. SCHWARTZ REGARDING VALUE OF PROJECTED CLAIMS FROM MASSACHUSETTS, MISSOURI AND NEW HAMPSHIRE**<br><br>Hearing Date: November 15, 2018<br>Time: 2:00 p.m.<br>Courtroom: 9, 19th Floor<br>Judge:  Honorable Jon S. Tigar |

## I. QUALIFICATIONS

1. I am a Senior Vice President at Nathan Associates Inc., an economic and financial consulting firm headquartered in Arlington, Virginia that provides economic, financial, and statistical research and analysis to public and private clients in the United States and abroad.

2. I have a bachelor's degree in economics from the University of Maryland and a master's degree in economics from the University of California, Los Angeles. Since 2008, I have been a Chartered Financial Analyst charterholder. I have over 15 years of experience working as an applied economist at consulting firms. Prior to joining Nathan Associates in 2007, I worked as an economic consultant at UHY Advisors and Glassman Oliver Economic Consultants. Throughout my tenure as an economic consultant, I have provided economic analysis regarding class certification, liability and damages on many large antitrust class action matters. I have also regularly consulted on claims distribution processes. For example, I designed a methodology for distributing the indirect purchaser settlement funds for the DRAM Antitrust Litigation that the Special Master described as "fair, reasonable and adequate."[1] My methodology also served as the basis for the proposed distribution of claims proceeds that was approved by the Supreme Court of British Columbia.[2] My resume is attached as Appendix A.

## II. BACKGROUND ON CRT SETTLEMENTS

3. There have been several settlements reached on behalf of Indirect Purchaser Plaintiffs ("IPPs") in the Cathode Ray Tube (CRT) Antitrust Litigation. I understand that settlements were reached with CRT manufacturers including Chunghwa, LG, Philips, Panasonic, Hitachi,

---

[1] Case No. C 06-4333 PJH, Report and Recommendations of Special Master Part II Notice Programs, Claims Procedures and Processing, June 24, 2013.

[2] *Pro-Sys Consultants Ltd. v. Infineon Technologies AG*, 2014 BCSC 1936; Docket: L043141, October 14, 2014.

Toshiba, Samsung SDI, Thomson, and TDA (the "Settlements). Class members who purchased in 22 states were eligible to file claims during the period from August 2015 through December 7, 2015 (I refer to these states as "the 22 States").[3] On January 26, 2016, the Court extended the claims period with respect to natural persons who reside in California until June 30, 2016. Since the initial claims deadlines, and while the appeals have been pending numerous additional claims have been filed. As of November 15, 2017, the Claims Administrator notified class members on the CRT Indirect Purchaser Class Action Settlement Website that it would cease processing late claims (other than as ordered by the Court). I refer to this process as the "Prior Claims Process". In addition to the Settlements, IPPs have also filed for preliminary approval for a settlement with Mitsubishi Electric ("Mitsubishi Electric Settlement"). I understand that there is a proposed plan of distribution for the Mitsubishi Electric Settlement but that the claims process for the Mitsubishi Electric Settlement has not been approved.

4. The total amount of the Settlements is $576,750,000 and I understand that class counsel expects that of this amount, approximately $405 million will be available to be distributed to end-user individual and end-user business claimants who submitted claims during the Prior Claims Process ("Available Funds").[4]

5. Claimed purchases of CRT products were divided into three categories: Standard CRT Televisions (screen size of less than 30 inches), Large CRT Televisions (screen size of 30 inches or larger), and CRT Computer Monitors. For purposes of determining value under the

---

[3] These states include Arizona, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia and Wisconsin.

[4] I understand that a small portion of the Settlements has been allocated to resellers. This declaration only concerns the claims for end-user individuals and businesses.

Settlements' Plan of Distribution, each Standard CRT Television is counted as 1.0 Weighted Unit; each Large CRT Television is counted as 4.3 Weighted Units; and each CRT Computer Monitor is counted as 3.0 Weighted Units. The Plan of Distribution calls for the Available Funds to be distributed pro-rata based on the total Weighted Units claimed with a minimum payment of $25 per claimant.

6. I have been informed that 144,355 net claims for 67,812,128 Weighted Units were made in the Prior Claims Process prior to the deadline for submitting claims.[5]  Of the timely claims, 7,526 claims totaling 64,218,939 Weighted Units were filed by businesses, while the remaining 136,829 claims totaling 3,593,189 Weighted Units were filed by individuals.  I further have been informed that an additional 3,867 claims totaling 11,204,857 Weighted Units were submitted after the initial deadlines through November 15, 2017.[6]   Of these claims, 2,015 claims totaling 11,125,416 Weighted Units were submitted by businesses while the remaining 1,852 claims totaling 79,441 Weighted Units were submitted by individuals.  The claims received in the Prior Claims Process are summarized in Table 1.  I understand that there is ongoing mediation to determine the extent to which late claims from the 22 States will be

---

[5] Net claims refer to the gross number of claims filed minus (a) claims that were subsequently withdrawn by the claimant, (b) claims that were determined to duplicate other claims, and (c) claims that were determined to be ineligible (for example, claims submitted by governmental entities or claims by direct purchasers). I understand that the number of Weighted Units reflects adjustments made by the claimant or the Claims Administrator subsequent to the date that the claim was initially filed. For example, I understand that numerous business claims were filed as "placeholder" claims without the number of purchased CRT products being specified on the claim form; claimants subsequently updated their claims to provide the number of units. In other cases, I understand that the number of units initially claimed were reduced, or increased, based on audits conducted by the Claims Administrator.

[6] On November 15, 2017, the Claims Administrator notified class members on the CRT Indirect Purchaser Class Action Settlement Website that it would cease processing late claims.  Thus, the current claims figures only include timely claims and late claims made as of November 15, 2017. Further, as noted above, these numbers reflect the currently remaining claims, not the claims as initially filed, and are subject to further revision based on audit results.

eligible to recover from the Settlements. For purposes of this declaration, I assume that the claims period for the Settlements will end at the November 15, 2017 cut-off date announced by the Claims Administrator.

**Table 1. Total Net Claims from the 22 States**

|  | Timely | | Late | | All | |
| --- | --- | --- | --- | --- | --- | --- |
|  | Claims | Weighted Units | Claims | Weighted Units | Claims | Weighted Units |
| Individual | 136,829 | 3,593,189 | 1,852 | 79,441 | 138,681 | 3,672,630 |
| Business | 7,526 | 64,218,939 | 2,015 | 11,125,416 | 9,541 | 75,344,355 |
| Total | 144,355 | 67,812,128 | 3,867 | 11,204,857 | 148,222 | 79,016,985 |

Source: Claims data from The Notice Company.

### III.  ASSIGNMENT

7. On July 7, 2016, the District Court granted final approval of the Settlements. Subsequently, several class members appealed largely on the basis that claims for purchases made in Massachusetts, Missouri, and New Hampshire (the "Three States") were not included in the states eligible to claim in the Prior Claims Process. I understand these appeals are still pending.

8. I understand that class counsel is proposing an amended claims process such that eligible claimants with purchases in the Three States will be allowed to claim under the Settlements in a subsequently established claims period.[7] I understand that the subsequent claims period will coincide with the claims period that will be established by the Court in the Mitsubishi Electric Settlement and will be of a similar duration to the claims period set by the Court in the Settlements. I understand that Class Counsel intend that the claims of the Three States be paid at the same rate as existing claimants from the 22 States. I refer to the proposed claims process

---

[7] Under Missouri law, counsel has informed me that eligible claimants are persons who purchased primarily for personal, family or household purposes. V.A.M.S. §407.025. Similarly, counsel has informed me that eligible Massachusetts claimants are persons whose purchases were not made as part of the conduct of trade or commerce. Mass. Gen. Laws ch. 93A, § 9.

for the Three States States as the "Three State Claims Process." I understand that Class Counsel is proposing to add $6 million to the Available Funds.

9. I have been asked by class counsel to estimate the claims that are likely to occur in the Three State Claims Process and the value those claims would have based on the dollars per Weighted Unit under the Prior Claims Process.[8] I have also been asked to conduct a sensitivity analysis to determine the potential impact of the Three State Claims Process on the recovery of claimants participating in the Prior Claims Process.

10. In completing this assignment, I have reviewed the Plan of Distribution for the Settlements. I have also had discussions with the claims administrator, Joseph Fisher of The Notice Company, and I have reviewed claims data provided by Mr. Fisher. Nathan Associates is being compensated at a rate of $450 per hour for my time. Nathan Associates' compensation is not contingent on the outcome of this proceeding.

**IV.   SUMMARY OF CONCLUSIONS**

11. As explained in the remainder of this declaration, my estimate for the value of the claims from the Three States that are expected to be submitted under the Three State Claims Process is $5.05 million.[9]   Based on the proposed modifications to the Plan of Distribution, the Three State Claims Process will not have a material effect on the amount received by claimants from

---

[8] As part of the mediation ordered by the Ninth Circuit, I analyzed the claims data and the projected claims from the Three States.  Further, I have also assisted the claims administrator in the review and auditing of certain complex commercial claims in this matter.

[9] My estimate for the value of the claims for the Three States in the Three State Claims Process is slightly higher than the estimated value of the claims from the Three States in the Prior Settlement Process because, had claims from the Three States been included in the Prior Settlement Process, the total number of CRTs claimed in the Prior Settlements Process would have increased and the average recovery per CRT decreased proportionately.

the 22 States. Even if the Weighted Units claimed in the Three State Claims Process turn out to be double my estimate, the dollars per Weighted Unit received by claimants from the 22 States would only decline by about $0.05 or one percent from what it would have been without the Three State Claims Process.

### V. ESTIMATING THE NUMBER AND SIZE OF CLAIMS FROM THE THREE STATES

12. In this section, I estimate the likely claims from the Three States that will be submitted in the Three State Claims Process. In the next section, I apply the estimated claims to the expected dollars per Weighted Units (based on a pro rata allocation) to estimate the dollar value of these expected claims.

13. It is reasonable for me to base my estimate for claims in the Three State Claims Process on the claims that already occurred in the Prior Claims Process based on the similar nature of the two claims processes. In particular, I understand that the budget for the notice, the length of time for submitting timely claims, and the claims form and procedure for submitting claims under the Three State Claims Process will be similar to the Prior Claims Process.[10]

14. In order to estimate the number of claims from individuals from the Three States, and the corresponding Weighted Units associated with those claims, I apply to the individual timely claims of the 22 States, the ratio of the population of the Three States to the population of the

---

[10] The additional time that has passed since the Prior Claims Process was undertaken makes the same level of claims in the Three States slightly less likely. Additionally, as explained below, some businesses operating in New Hampshire may already have claimed a portion of their purchases. To the extent that these factors result in a lower claims rate during the updated claims process, my procedure overestimates the number of New Claims from the Three States.

22 States.[11]  I find that in 2001 (the mid-point of the class period), the population ratio of the Three States is 10.2 percent.  Applying the 10.2 percent population ratio, I estimate 13,932 claims for 365,854 Weighted Units for individuals purchasing in the Three States.

15. I use a similar process to estimate the number of claims and corresponding Weighted Units that eligible, end-user businesses from the Three States would be expected to submit.  Again, I rely on the actual claims experience in the Prior Claims Process.  As stated above, because I understand that Missouri law limits claims to purchases primarily for personal, family or household purposes and Massachusetts law to purchases not made in the conduct of trade or commerce, only for New Hampshire do I estimate potential claims from eligible business purchasers.  In estimating business claims, I consider the gross state product ("GSP") to be an appropriate predictor of claims activity. GSP measures the amount of economic activity that is occurring within the state, and is representative of the amount of commerce transacted by businesses in the state, and therefore the likely quantity of business purchases. [12]  Thus, to estimate the claims from business purchases in New Hampshire, I use the ratio of the GSP of New Hampshire to the GSP of the 22 States.  The ratio of the GSP of New Hampshire in 2001 (the midpoint of the class period) to the GSP in the 22 States was 0.96 percent.

---

[11] In calculating estimated claims in the Three State Claims Process, for both businesses and individuals I use only claims filed by the initial claims deadlines because that period matches the claim period expected to be ordered by the Court in the Three State Claims Process.

[12] Gross State Product is the state level counterpart to the national Gross Domestic Product measure of economic activity.  https://www.bea.gov/newsreleases/regional/gdp_state/2001/gsp0601.htm. Using population instead of GSP in these calculations would not significantly change my results.

16. Applying the 0.96 percent to the 7,526 timely claims for purchases in the 22 States for 64,218,939 Weighted Units, results in an estimated 73 claims for purchases by businesses in New Hampshire for 619,313 Weighted Units. [13]

17. Adding the business claims and individual claims for purchases in the Three States, I estimate 14,014 claims totaling 985,167 Weighted Units are expected to be filed in the Three State Claims Process.

---

[13] I understand that businesses located in New Hampshire may already have been able to claim for some of the CRT's they obtained if their headquarters is in one of the 22 States and it engaged in "centralized purchasing" from such headquarters. While businesses headquartered in New Hampshire and engaging in centralized purchasing may be eligible to claim their nationwide purchases, I have seen no evidence that a disproportionately high number of businesses have New Hampshire headquarters and operations in other states. Additionally, businesses headquartered in New Hampshire with operations in the 22 States that engaged in decentralized purchasing already had an opportunity to claim a portion of their purchases under the Prior Claims Process from operations in any of the 22 States. As a result, my methodology may overstate the number of New Claims for businesses purchasing in New Hampshire.

8

DECLARATION OF JONATHAN E. SCHWARTZ REGARDING VALUE OF PROJECTED CLAIMS FROM MASSACHUSETTS, MISSOURI AND NEW HAMPSHIRE
Master File No. CV-07-5944-JST; MDL No. 1917

**Table 2. Forecasted Claims in the Three State Claims Process**

|  | Timely Claims from the 22 States | | Appeal States Ratio [a] | Estimated New Claims | |
| --- | --- | --- | --- | --- | --- |
|  | Claims | Weighted Units |  | Claims | Weighted Units |
|  | (1) | (2) | (3) | (4)=(1)*(3) | (5)=(2)*(3) |
| Individual | 136,829 | 3,593,189 | 10.2% | 13,932 | 365,854 |
| Business | 7,526 | 64,218,939 | 0.96% | 73 | 619,313 |
| Total | 144,355 | 67,812,128 |  | 14,004 | 985,167 |

Notes:

[a] Appeal State ratio for individuals is defined as the ratio between the total population of Appeal States and the total population for the 22 States in 2001. Ratio for business is defined as the ratio between the GSP of New Hampshire and the sum of the GSP of the 22 States in 2001.

Sources: Claims data from The Notice Company; U.S. Bureau of Economic Analysis, NGSP for each State, retrieved from FRED, Federal Reserve Bank of St. Louis, Retrieved July 5, 2018; U.S. Bureau of the Census, POP for each state, retrieved from FRED, Federal Reserve Bank of St. Louis, Retrieved July 5, 2018.

## VI. ESTIMATING THE VALUE OF THE CLAIMS FROM THE THREE STATES

18. The next step is estimating the value of the expected claims for purchases in the Three States by assigning them the same dollar value per Weighted Unit as is estimated for claims from the 22 States submitted under the Prior Claims Process.

19. To calculate the dollar per weighted unit that is estimated for claims from the 22 States submitted under the Prior Claims Process, I take the Available Funds and divide by the number of Weighted Units submitted. Thus, I then divide $405 million by the 79,016,985 Weighted Units claimed, and calculate a per Weighted Unit distribution of approximately $5.125.[14] Multiplying $5.125 times the 985,167 Weighted Units from the Three States results in an

---

[14] Again, this overstates the amount that claims for purchases from the Three States would have received had they been eligible to claim under the Prior Claims Process. Had those claims been eligible, the number of total Weighted Units claimed would have increased, leading to a lower dollar per Weighted Unit payout.

9

DECLARATION OF JONATHAN E. SCHWARTZ REGARDING VALUE OF PROJECTED CLAIMS FROM MASSACHUSETTS, MISSOURI AND NEW HAMPSHIRE
Master File No. CV-07-5944-JST; MDL No. 1917

estimated recovery of $5.05 million to claimants from the Three States.[15]  This estimate does not account for monies which claimants from Massachusetts, Missouri, and New Hampshire, as first-time filers, would be entitled to as part of the Mitsubishi Electric Settlement absent the Three State Claims Process.[16]

## VII. ASSESSING THE POTENTIAL IMPACT OF THE THREE STATE CLAIMS PROCESS ON CLAIMANTS FROM THE 22 STATES

20. Class Counsel has asked me to assess the potential impact of the Three State Claims Process on the recovery of claimants participating in the Prior Claims Process.

21. I understand that Class Counsel is proposing to add $6 million to the Available Funds which will be used to compensate Three State claimants. I understand that under this proposal, the dollars per Weighted Unit will be determined by dividing the enhanced Available Funds (approximately $411 million) by the sum of the Weighted Units claimed under the Existing Claims Process and the Three State Claims Process (with a small adjustment to take into account the minimum $25 per claim).  Therefore, if the value of the Three State Claims is less than $6 million the $6 million increase to the Available Funds will result in a slight increase in the dollars per Weighted Unit. On the other hand, if the value of the Three State Claims is greater than $6 million, there will be a slight decrease in the dollars per Weighted Unit.

---

[15] This figure is subject to some revision based on ongoing auditing of claims; I would not expect the revision at the conclusion of the auditing to increase or decrease the estimated recovery by more than 10%.

[16] Because the plan of distribution for the Mitsubishi Electric Settlement provides that first-time claims in Mitsubishi recover as much as prior claims from the Settlements before prior claims are further compensated, I estimated previously that claims from the Three States, even without the benefit of the Three State Claims Process, would have received a significant portion of their estimated value in the Mitsubishi Settlement Process.

22. In my opinion, it is more likely that the $5.05 million that I have forecasted for the value of the claims under the Three State Claims Process will ultimately prove to be an overestimate than an underestimate. As I have explained above, the additional time that has passed will make claims somewhat less likely and certain businesses operating in New Hampshire but headquartered in one of the 22 States have already claimed for their CRT purchases in New Hampshire because they engaged in centralized purchasing from their headquarters location. Nevertheless, there is inevitably uncertainty about the number and size of claimants that will decide to participate in the Three State Claims Process such that I cannot rule out the possibility of there being more claims than I have forecasted. However, even if there turns out to be substantially more claims than I have forecasted, because the Weighted Units claimed in the Three State Claims Process will still represent a small percentage of the total Weighted Units claimed, the effect on the dollars per Weighted Unit will be small. For example, if the Weighted Units claimed in the Three State Claims Process were twice what I forecast, the dollars per Weighted Unit that claimants from the 22 States would receive would decline by 1 percent from $5.125 to $5.075.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 1, 2018 in Arlington, VA.

Jonathan E. Schwartz

# Appendix A: Curriculum Vitae

**NATHAN**
Trusted for Excellence

1777 North Kent Street, Suite 1400
Arlington, Virginia 22209
T +1 703-516-7760
F +1 703-351-6162
jschwartz@nathaninc.com
NATHANINC.COM

# Jonathan Schwartz, CFA
SENIOR VICE PRESIDENT

**OVERVIEW**

Mr. Schwartz is an economist with more than 15 years of litigation consulting experience. His work has covered a broad range of matters including antitrust, finance, intellectual property, international arbitration, and contract disputes. Mr. Schwartz has performed analysis related to antitrust liability, damages, class certification, settlement allocation, overcharge pass through, reasonable royalties, lost profits, business valuation and actuarially fair dividend payments.

**EXPERIENCE**

EXPERT ASSIGNMENTS

- Submitted declaration on July 9, 2018 for mediation proceedings In Re Cathode Ray Tube (CRT) Antitrust Litigation Indirect Purchaser Litigation Case No. 07-CV-5944-JST, MDL No. 1917.

- Submitted expert report on May 14, 2018 in *Nuts for Candy v. Visa, Inc., Visa International Service Association, Visa U.S.A., Inc., and DOES 1-50*. Case No. 17-CIV-01482.

- Submitted expert report on January 22, 2016 in *Jeffrey Plotnick et al. v. Computer Sciences Corporation et al.* Case No. 1:15-cv-01002-TSE-TCB. Submitted expert rebuttal and supplemental report on February 16, 2016.

- Submitted expert report regarding class certification on October 22, 2015 in *Mednick et al. v. Precor, Inc.* Case No. 1:14-cv-03624. Deposition testimony December 8, 2015.

- Submitted expert report regarding damages on September 25, 2015 in *Raymone K. Bain v. Gary, Williams, Parenti, Watson, & Gary, P.L.* et al. Case No. 13-848.

- Submitted declaration to mediator regarding damages on November 4, 2014 in *LaPlant et al. v. The Northwestern Mutual Life Insurance Company* Case No. 2:11-CV-00910. Submitted additional declaration regarding damages on July 2, 2015.

- Submitted declaration regarding summary judgment on March 10, 2014 in *In re Transpacific Passenger Air Transportation Litigation* Case No. 3:07-cv-05634-CRB. Deposition testimony May 13, 2014.

- Submitted declaration regarding claims methodology on May 20, 2013 for indirect purchasers in *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation* Case No. M-02-1486-PJH.

- Submitted expert report regarding data sufficiency for calculation of damages on

# Jonathan Schwartz, CFA
SENIOR VICE PRESIDENT

SELECTED CONSULTING EXPERIENCE

**Antitrust**

- Assisted in the preparation of an expert report regarding liability and damages associated with alleged competitive foreclosure in the market for sleep apnea products.

- Assisted in the preparation of an expert report regarding liability related to alleged anticompetitive actions in the market for footwear insoles and inserts.

- Assisted in the preparation of an expert report regarding class certification in a class action involving transpacific air travel.

- Assisted in the preparation of an expert report regarding liability related to alleged anticompetitive conduct of harness horsemen.

- Assisted in the preparation of expert reports regarding summary judgment, class certification, and damages in a class action involving alleged price fixing of drywall.

- Assisted in the preparation of expert reports at the class certification and merits stage of a class action involving alleged price fixing of blood reagents.

- Assisted in the preparation of expert reports at the class certification and merits stage of a class action involving an alleged supply restriction conspiracy for eggs.

- Assisted in the preparation of an expert report at the class certification stage of a class action involving alleged price fixing of optical disk drives.

- Prepared econometric damage estimate as the consulting expert for opt-outs in a price fixing matters involving EPDM (synthetic rubber). Presented damage estimates and rebuttal to defendant damage estimates in a settlement negotiation meeting.

- Critiqued opposing expert and assisted in the preparation of expert reports at the merits stage of a class action involving alleged price fixing of oriented strand board. Assisted in claims administration process by building a database of purchases by claimant from each manufacturer. Submitted affidavit explaining my role in claims administration.

- Prepared econometric damage estimates and assisted in the preparation of expert report at the class certification stage of a class action involving alleged price fixing

# Jonathan Schwartz, CFA
SENIOR VICE PRESIDENT

of plastic additives. Prepared presentation in rebuttal to defendant experts' criticisms of the econometric methodology.

- Assisted in the preparation of a rebuttal report at the class certification stage of a class action involving alleged price fixing of TDI, MDI and polyether polyols.

- Assisted in the preparation of a rebuttal report at the merits stage of a class action involving alleged price fixing of titanium dioxide.

- Assisted expert economist with preparation of report on econometric damage estimates and pass through rates for an indirect purchaser class action in the vitamins industry. Assisted attorneys with claims distribution.

- Assisted expert economist with preparation of report on econometric damage estimates and pass through rates for an indirect purchaser class action in the MSG and nucleotides markets. Assisted attorneys with claims distribution

- Assisted in preparation of expert reports regarding class-wide damages related to an alleged market allocation agreement in the DVD industry.

- Worked with expert economist on case involving a pharmaceutical company accused of monopolization due to alleged exclusion of potentially infringing generic competitor. Assisted in preparation of affidavit on relevant product market.

- Calculated damages and assisted in the preparation of expert reports for a computer hardware firm allegedly excluded from the mainframe computer market.

**International Arbitration**

- Assisted expert with report related to alleged unfair competition in the port sector in Peru.

**Commercial Damages**

- Assisted in preparation of expert reports analyzing the adverse nature of a switch in dividend policy for fixed flexible premium annuities.

- Reviewed the actuarial methodology of assigning ownership in connection with litigation involving the demutualization of a health insurance company. Prepared analysis of alleged under-pricing of the insurance company's IPO.

# Jonathan Schwartz, CFA
SENIOR VICE PRESIDENT

- Assisted in evaluation of damage claims arising from alleged professional malpractice related to commercial development and land use.
- Assisted in damage estimation related to claims of false advertising related to medical data printer systems.
- Estimated damages in an employee breach of contract matter.
- Estimated damages and assisted in preparation of rebuttal report in a product liability matter.

**Valuation**

- Estimated the present value of customer relationships secured in a merger for purposes of acquirer's financial statements.
- Reviewed the valuation of a multi-billion dollar contract in the health insurance industry for purposes of contract renegotiation.
- Assisted in the expert valuations of businesses owned in marital estates for purposes of divorce proceedings.

**Intellectual Property**

- Assisted expert with reports related to alleged patent misuse and alleged price erosion related to patent infringement in the computer hardware industry.
- Assisted expert with reasonable royalty and lost profits damage calculations associated with patent infringement in the medical device industry.
- Critiqued opposing expert's damage calculations associated with alleged patent infringement in the computer hardware industry.

EDUCATION   Chartered Financial Analyst (CFA) charterholder

University of California, Los Angeles
    M.A., Economics 2003

University of Maryland
    B.A., Economics (with honors) 1999

# Jonathan Schwartz, CFA
SENIOR VICE PRESIDENT

| | | |
|---|---|---|
| **PREVIOUS EMPLOYMENT** | 2016-2018 | Vice President, Nathan Associates Inc. |
| | 2012-2016 | Principal Economist, Nathan Associates Inc. |
| | 2010-2012 | Managing Economist, Nathan Associates Inc. |
| | 2007-2009 | Senior Economist, Nathan Associates Inc. |
| | 2005-2007 | Manager, UHY Advisors Inc. |
| | 2004-2005 | Senior Consultant, UHY Advisors Inc. |
| | 2004 | Senior Analyst, Glassman-Oliver Economic Consultants |
| | 2002-2003 | Research Assistant, UCLA Department of Economics |
| | 1999-2001 | Research Analyst, Glassman-Oliver Economic Consultants |

**SPEAKING ENGAGEMENTS**  "The Rule of Reason in O'Bannon v. NCAA" presented at the American Association for Justice Antitrust Law Group, July 26, 2014.