# DOCUMENT 1

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

September 7, 2018

Honorable Vaughn R. Walker (Ret.)
Law Office of Vaughn R. Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA 94111
vrw@judgewalker.com

Re:     *In Re: Cathode Ray Tubes (CRT) Antitrust Litigation,* MDL 1917/
        Motion to Compel Supplement Discovery Responses From Irico

Dear Judge Walker:

Indirect Purchaser Plaintiffs (IPPs) respectfully submit this motion to compel responses from Defendants Irico Group Corporation and Irico Display Devices Co., Ltd. (together, "Irico" or "Irico defendants") to certain IPP discovery requests. IPPs' requests seek facts highly relevant to Irico's claimed immunity under the Foreign Sovereign Immunity Act ("FSIA"). As part of the discovery coordination, IPPs are pursuing jurisdictional discovery jointly with Direct Purchaser Plaintiffs ("DPPs") on overlapping issues and are participating in the DPPs' meet-and-confers with Irico.

## I.    Relevant Procedural History

After setting aside entry of default against the Irico defendants, the Court reopened the case against Irico and ordered that the DPPs and IPPs "are free to undertake jurisdictional discovery." Order Setting Aside Default, ECF No. 5240; Stipulation and Order Vacating Clerk's Entry of Default, ECF No. 5271. DPPs and IPPs served their jurisdictional discovery on March 5 and March 27, respectively. *See* Declaration of Lauren C. Capurro in Support of Indirect Purchaser Plaintiffs' Motion to Compel Jurisdictional Discovery from the Irico Defendants ("Capurro Decl."), Exhs. 1-2.

On May 1, 2018, pursuant to the parties' stipulation, the Court set the schedule for Irico's jurisdictional motion and related discovery in the DPP Action. Jurisdictional discovery closes on October 3, 2018. *See* Stipulation and Order Re Jurisdictional Discovery, Briefing Schedule, and Hearing Dates, ECF No. 5282. Irico counsel refused to agree to the same schedule for the IPP Action. During IPPs' negotiations with Irico regarding jurisdictional discovery and the briefing schedule for Irico's FSIA motion in the IPP Action, IPPs offered to withdraw almost all of their written discovery *except for RFP Nos. 11 and 18 and Interrogatories Nos. 16, 17 and 18* and rely instead on DPPs' jurisdictional discovery requests. *See* Capurro Decl., Exh. 3. IPPs further offered to coordinate with the DPPs on all future discovery, including propounding joint written

discovery requests.  *Id.*  IPPs emphasized, however, that they must reserve the right to propound IPP-specific requests within any joint discovery requests.  *Id.*

On July 6, 2018, the Special Master granted IPPs' motion to proceed on the same jurisdictional discovery schedule as the DPPs.  Order Re IPPs' Motion for Jurisdictional Discovery at 4, ECF No. 5301.  The Special Master rejected Irico's proposal to limit IPPs' discovery to the scope of DPPs' discovery, finding Irico's proposal unsupported:

> Not only are Irico's requested limitations unnecessary and factually unsupported, they are inconsistent with previous practice in this litigation.  The IPPs and DPPs are distinct plaintiff classes whose interests are similar but not wholly identical and therefore, they are entitled to their independent discovery as long as they comply with the Discovery Protocol.  The Irico defendants have failed to advance a compelling fact or reason to impose new and more burdensome discovery limitations at odds with the usual discovery practice in this multi-district litigation.

*Id.* at 5-6.  Irico did not object to the Special Master's Order and it was adopted by the Court on July 24, 2017.  *See* ECF No. 5317.

On August 13, 2018, the Court set a briefing and hearing schedule for Irico's FSIA motion in the IPP Action, rejecting Irico's proposal that the Court should stay the IPP Action pending resolution of Irico's FSIA motion in the DPP Action.  ECF No. 5323 at 2.  As a result of the foregoing two Orders, jurisdictional discovery in the IPP Action is proceeding on the same schedule as the DPP Action, and Irico's FSIA motions in both cases will be heard at the same time.  *Id.*

## II.     The IPP Requests in Dispute and the Meet-and-Confer

The Irico defendants served responses to IPPs' written discovery on May 25, 2018.  Apart from boiler-plate objections, Irico responded to each request by merely referring IPPs to Irico's responses to DPP's jurisdictional discovery (served on May 4, 2018).  IPPs have since participated in five meet-and-confer telephone conferences with the DPPs and Irico.  These calls occurred on May 29, 30, June 1, August 3, and August 31, 2018.  During these calls, IPPs raised questions regarding the sufficiency of Irico's responses to IPP-specific requests, namely, RFP No. 18 and Interrogatories Nos. 16, 17 and 18.  These requests generally seek two categories of information relating to Irico's indirect sales to the United States, including: (1) the identity of, and channel of distribution regarding the CRTs and CRT Products Irico manufactured and sold; and (2) Irico's communications with other CRT or CRT Product makers regarding sales of Irico's CRTs or CRT Products to U.S. customers.

At first, Irico ignored IPP counsel's repeated requests following the meet-and-confers for substantive responses to IPPs' requests.  *See* Capurro Decl., Exhs. 4-5. When further pressed by IPP counsel for a response, Irico counsel questioned for the first time in late July "IPPs' right to pursue jurisdictional discovery at all."  Capurro Decl., Exh. 6.

Hon. Vaughn R. Walker
September 7, 2018
Page 3 of 8

This was despite the fact that on April 6, 2018, the Irico defendants stipulated—and the Court ordered—that the "IPPs are free to commence discovery against the Irico Defendants." ECF No 5271 at 2.

Responding to IPP counsel's further inquiry, Irico counsel sent a letter on July 30—again, without any substantive detail—merely stating that Irico would supplement certain responses. *See* Capurro Decl., Exh. 7. Then, on an August 3rd call, Irico's counsel stated that Irico would supplement with responses necessary to comply with Your Honor's August 2nd Order re DPPs' Motion for Jurisdictional Discovery. ECF No. 5320.[1] Irico supplemented its responses on August 7th with inadequate responses to Interrogatories Nos. 16-17 and stated that Irico would supplement Interrogatory No. 18 and RFP No. 18 consistent with Your Honor's August 2nd Order. *See* Capurro Decl., Exhs. 8-9. Despite repeated questions by IPPs, however, it remains unclear whether these documents will include documents responsive to IPPs' requests.

In the last several weeks, Irico's counsel represented that Irico "will provide additional information and search for additional documents responsive to [IPPs'] requests," but then stated that the Irico defendants have no responsive information. Irico's counsel declined to explain the parameters of Irico's search, and confusingly stated at different points that the Irico defendants were standing on their objections to IPPs' requests. *See* Capurro Decl. ¶¶ 10-11, Exh. 10.

In sum, despite Your Honor's clear instruction that IPPs are entitled to their own discovery, Irico apparently continues to limit IPPs' discovery to the scope of the DPP discovery since it has failed to respond to IPPs' discovery directed at facts unique to the IPP Action. IPPs now seek judicial resolution.

### III.     Relevance of the Discovery Requests and Irico's Failure to Respond

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any parties' claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 requires the Court to consider the proportionality of the discovery based on six factors: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Once the relevance of the material sought has been established, the objecting party then bears the burden of showing why discovery should not be permitted.

The Court has recently provided sensible guidance on the burden objection in this case:

---

[1] Judge Tigar accepted the Special Master's Recommended Order on August 20, 2018. *See* ECF No. 5324.

>Simply saying that discovery is burdensome is not enough; a burden objection requires a showing of *actual* burden. The kind of information that might support such a finding includes, for example, an estimate of the amount of time or money that would be spent responding to the challenged discovery, a description of the locations where the information at issue is stored, the numbers of persons who know the information, and/or the amount of information that would have to be located and reviewed, among other factors.

*See* April 25, 2018 Order Denying Motion to Compel in DPP Action at 3, ECF No. 5277 (emphasis in original).

The categories of information and documents sought by the IPP discovery here are highly relevant to the core issues raised by the commercial activity exception to the FSIA. The commercial activity exception deprives the Irico defendants of FSIA immunity if their commercial activities outside of the United States had a direct effect in the United States. 28 U.S.C. § 1605(a)(2). Judge Tigar has held that the Irico defendants' activities in setting prices and manufacturing schedules for CRTs "was clearly commercial in nature." Order Setting Aside Default at 9, ECF No. 5240. A central issue to the application of the exception is whether these commercial activities caused a direct effect in the United States.

In support of their contention that their commercial activities did not have a direct effect in the United States, the Irico defendants have repeatedly asserted that neither they nor any of their subsidiaries sold CRTs directly to the United States. But IPPs' damages claims do not arise from direct purchases of CRTs from Irico. IPPs allege that Irico conspired with the other defendants to fix CRT prices, and that the resulting overcharges were passed through the distribution chain to IPPs when they purchased finished products containing CRTs from retailers in the United States. *See* Indirect Purchaser Plaintiffs' Fourth Consolidated Amended Complaint, ¶¶ 225-242, ECF No. 1526. Thus, Irico's *indirect* sales of CRTs to the U.S. by, for example, selling CRTs to a foreign television maker that exported CRT televisions to the U.S., are—together with evidence of Irico's participation in the CRT conspiracy—relevant to the commercial activity exception in the IPP case.

State antitrust laws recognize that direct injury can proceed through various layers of production and distribution and provide remedies to indirect purchasers. Irico's alleged anticompetitive behavior could have a significant and direct impact on U.S. consumers in the form of increased prices without direct U.S. sales of CRTs. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 822 F. Supp. 2d 953, 964 (N.D. Cal. 2011) (rejecting defendants' narrow definition of "direct effect" under the FTAIA which limited it to only the first sale of a product, and recognizing that anticompetitive conduct can have a "direct effect" on U.S. commerce where the vast majority of price-fixed panels

Hon. Vaughn R. Walker
September 7, 2018
Page 5 of 8

were allegedly sold overseas for incorporation into finished products, which were then sold to U.S. purchasers).[2]

Judge Tigar has likewise held that direct sales to the U.S. are not a prerequisite to show "direct effect"; rather, a "direct effect" can be shown in antitrust cases "where the conspiratorial behavior raised the prices of the component which constituted a substantial portion of the final price in the United States." Order Setting Aside Default at 10-11, ECF No. 5240; *see also In re: Cathode Ray Tube (CRT) Antitrust Litig.,* 2016 WL 5725008, at **4-5 (N.D. Cal. Sept. 30, 2016) (same). Thus, information about CRTs and CRT Products manufactured and sold by Irico, the channels of distribution through which they passed, and Irico's communications with customers regarding the sale of Irico's CRTs to the United States—either as a stand-alone CRT or as part of a finished product—are relevant to the commercial activity exception. *See TFT-LCD*, 822 F. Supp. 2d at 966 ("The increased price of the components caused the prices of the finished products in the United States to increase. If this effect is not 'direct,' it is difficult to imagine what would be.").

Irico has not claimed any undue burden in responding to IPPs' requests. Rather, it has variously asserted that it has "valid objections" and is "standing on its objections," and that they have no responsive documents or information in any event. Capurro Decl. ¶¶ 10-11, Exh. 10. It is unclear, however, what Irico's "valid objections" are or whether its search was limited based on these objections. *Id.* In addition, as further demonstrated below, is not credible that Irico has no documents or information responsive to IPPs' requests. Irico should be compelled to provide substantive responses to IPPs' requests.

*Identity of CRT/CRT Products and Distribution Channel*

Generally, Interrogatories Nos. 16, 17 and 18 seek information regarding the identity of, channels of distribution, and other details regarding, the CRTs and CRT Products Irico produced, manufactured, sold, marketed and/or distributed during the class period.

- Interrogatory No. 16: Identify the CRTs and/or CRT Products that you manufactured or produced for each month during the Class Period, including the brand name, product number, and intended use.

- Interrogatory No. 17: Identify the CRTs and/or CRT Products that you sold, marketed, or distributed for each month during the Class Period, including the brand name, product number, and intended use.

- Interrogatory No. 18: Identify every channel used by you to sell, market, or distribute CRTs and/or CRT Products during the Class Period, including:

---

[2] In the Order Setting Aside the Default, Judge Tigar held that, in the absence of case law interpreting the meaning of "direct effect" under the FSIA in an antitrust case, "FTAIA caselaw [is] a useful source in determining the meaning of direct effect in the FSIA, particularly in this antitrust context." ECF No. 5240 at 9-10.

>    (a)  the identity of the entity or division that issued the invoice for the CRTs and/or CRT Product sale;
>    (b)  the identity of the entity to which you invoiced the CRT and/or CRT Product sale;
>    (c)  the destined country or region of CRTs and/or CRT Products;
>    (d)  the type of CRT and/or CRT Product sold or distributed through each channel.

In their August 7th supplement responses to Interrogatories No. 16-17, the Irico defendants provided only annual sales by type and size of CRTs. *See* Capurro Decl., Exh. 8. In addition, their supplemental response to Interrogatory No. 18 simply parroted Your Honor's August 2nd ruling on the DPPs' motion to compel regarding sales by Irico of CRTs in the United States. *Id.* This is not responsive.

Product information regarding the CRTs and CRT Products produced and sold by Irico will help identify what Irico products, if any, were incorporated into finished products sold in the United States. Information about Irico's distribution channels will also shed light on whether any of Irico's products were sold (directly or indirectly) to the U.S. market and how the effect of Irico's foreign price-fixing conduct proceeded through the distribution chain – from the beginning of the process (overcharges of CRTs) to the end (overcharges on televisions purchased by the U.S. consumers). *See TFT-LCD*, 822 F. Supp. 2d at 964 (finding direct effect on U.S. commerce when the nature of the effect (increased prices) did not change in any substantial way before it reached U.S. consumers).

*Communications with other CRT/CRT Product Makers Regarding Sales to U.S. Customers*

RFP No. 18 seeks documents relating to "meetings or communications between [Irico] and any other manufacturers of CRTs or CRT Products during which there was any discussion concerning any sales, contemplated sales, pricing, or shipments to customers in the United States during the Class Period." Irico responded that it will "produce or make available for inspection any responsive, non-privileged documents related to the twenty-six meetings" which Your Honor has already ordered Irico to produce in the DPP Action. Capurro Decl., Exh. 9 at 9. RFP No. 18, however, also seeks Irico's *non-conspiratorial communications with customers* regarding their actual or anticipated sale of finished products containing Irico's CRTs to the United States. Irico claims that it has no documents responsive to RFP No. 18 but has declined to provide any information about the parameters of its search.

Irico's communications with OEM customers are relevant to show Irico's knowledge about the final destination of its products, as well as its intent to cause the price of finished products in the United States to increase. Irico's knowledge that either the price-fixed CRTs or finished products incorporating those CRTs were destined for the United States is relevant to the determination of "direct effect," regardless of whether Irico itself exported those products to the U.S. *See U.S. v. Hsiung,* 778 F.3d 738, 759

(9th Cir. 2015) (finding a direct effect in the United States where "[i]t was well understood that substantial numbers of finished products were destined for the United States and that the practical upshot of the conspiracy would be and was increased prices to customers in the United States."); *accord CRT*, 2016 WL 5725008, at *5 (quoting the foregoing finding in *Hsiung* and concluding that it "applies equally to Plaintiffs' evidence here").

Publicly available information and evidence already produced in this litigation indicate not only that Irico's CRTs were sold in the United States, but also that the Irico defendants knew that their products would be sold in the United States. For example, Irico's own documents show U.S. exports through China National Electronics Import & Export Caihong Co. ("CEIEC"), which, on information and belief, functioned as the import and export department of Irico Group before the formation of Irico Group Electronics Co. Ltd. in September 2004. *See* Capurro Decl., Exh. 11 at 4. In addition, Irico Group Electronics' global offering prospectus dated December 8, 2004 discussed the impact of a 2004 U.S. anti-dumping tax on CRT TVs and Irico's business, stating that "only a small portion of our CPTs over 21" are used for television sets that are exported to the United States."[3] Finally, an email chain produced by defendant MT Picture Display Co., Ltd. dated March 23, 2005 states that Irico had replied to Hisense's (a Chinese television maker) request for a quotation for "its USA spot business" and had "committed US$38 for 21" PF." *See* Capurro Decl., Exh. 12.

There is also evidence that Irico's top customers sold CRT televisions containing Irico CPTs to the United States during the relevant period. For example, Haier, a Chinese television manufacturer which sold 439,694 CRT televisions into the United States from January through May 2005, listed CRTs originating from Irico in its television models sold in the U.S. *See* Capurro Decl., Exh. 13 at sheets 11-16. *See also* Exh. 14 at p.12 (Haier America television manual stating that Irico is the CRT manufacturer). Documents produced by defendant Chunghwa indicate that television OEMs were required to obtain the approval of their customers before using a CRT maker's CRTs in their television sets. In other words, U.S. customers would have had to approve Irico's CRTs for use in their televisions, making it highly unlikely that Irico was not aware that their CRTs were being sold to the United States. Chunghwa's documents also note that the television sets that Haier made for U.S. customer(s) contained Irico CRTs. *See* Capurro Decl., Exhs. 15-16.

In the face of this evidence, it is not credible for the Irico defendants to claim that they have no documents or information regarding the distribution chain for their CRTs and their ultimate destination, and that they have no documents reflecting sales to customers that incorporated Irico's CRTs into finished products for sale in the United States. This information is irrefutably relevant and Irico has failed to show undue

---

[3] December 8, 2004 Irico Group Electronics Company Limited Global Offering Prospectus at 33, *available at* http://www.irico.com.cn/en/wp-content/uploads/2014/04/LTN20041208000.pdf.

burden. Irico should therefore be compelled to widen their search for responsive information and respond fulsomely to IPPs' requests.

## IV.     Conclusion

For the foregoing reasons, the Irico defendants should be compelled to provide fulsome and detailed responses to the IPP-specific Interrogatories Nos. 16-18, and search for and produce all documents responsive to RFP No. 18 that are within their possession, custody and control.

                                        Sincerely,

                                        */s/ Mario N. Alioto*
                                        Mario N. Alioto
                                        Lead Counsel for Indirect Purchaser
                                        Plaintiffs

Cc:     John Taladay (via email)
        Stuart C. Plunkett (via email)
        Erik T. Koons (via email)
        Lillian Tom (via email)
        Jay Weil (via email)
        Thomas E. Carter (via email)
        Ashley Eickhof (via email)
        Kaylee Yang (via email)
        Yan Zhang (via email)
        R. Alexander Saveri (via email)
        Geoffrey C. Rushing (via email)
        Christopher T. Micheletti (via email)
        Qianwei Fu (via email)