# DOCUMENT 3

**BAKER BOTTS** LLP

|  | 101 CALIFORNIA ST. | AUSTIN | LONDON |
|  | SUITE 3600 | BEIJING | MOSCOW |
|  | SAN FRANCISCO, CALIFORNIA | BRUSSELS | NEW YORK |
|  | 94111 | DALLAS | PALO ALTO |
|  |  | DUBAI | RIYADH |
|  | TEL +1.415.291.6200 | HONG KONG | **SAN FRANCISCO** |
|  | FAX +1.415.291.6300 | HOUSTON | WASHINGTON |
|  | BakerBotts.com |  |  |

Stuart C. Plunkett
TEL: 415.291.6203
FAX: 415.291.6303
stuart.plunkett@bakerbotts.com

September 14, 2018

VIA E-MAIL AND COURIER

Honorable Vaughn R. Walker
Law Office of Vaughn R. Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA 94111

     Re: *In re: Cathode Ray Tubes (CRT) Antitrust Litigation* - MDL No. 1917
        Master File No. 3:07-cv05944-SC

Dear Judge Walker:

  I write on behalf of Defendant Irico Display Devices Co., Ltd. and Irico Group Corporation ("Irico") to oppose the Indirect Purchaser Plaintiffs' ("IPPs") motion to compel, submitted on September 7, 2018. IPPs' motion is directed at three interrogatories and one document request. With respect to the interrogatories, Irico does not object to producing the responsive information, and Irico has in fact done so as described in numerous meet and confer communications with IPPs. With respect to the document request, Irico searched for the documents IPPs seek and Irico confirmed that it was unable to locate any such documents. IPPs thus fail to provide any basis for an order compelling further discovery and their motion should be denied.

### IPP Interrogatory Nos. 16, 17, and 18

  Interrogatory Nos. 16, 17, and 18 ask Irico to identify the CRTs and CRT products it manufactured, sold, or marketed during the class period, including brand name, product number, and intended use; and to identify channels of distribution by providing the identity of the entity that issued invoices, the entities invoices were issued to, the destination country or region, and the type of CRT sold.

  Irico has agreed to provide, and has provided, both DPPs and IPPs with complete information regarding any direct sales of its CRTs into the United States.[1] IPPs' motion to

---

[1] DPPs have filed a separate motion to compel further responses regarding alleged U.S. sales, which Irico will oppose on the ground that it has provided all relevant information that has been located.

**BAKER BOTTS** LLP

- 2 -                                                                September 14, 2018

compel additional information in response to these interrogatories is based on IPPs' position that they are entitled to information that will help them determine if Irico's CRTs were incorporated into products that were later sold by another entity, *indirectly*, into the United States. IPPs contend that the information sought by these interrogatories "will help identify what Irico products, if any, were incorporated into finished products in the United States." (Mot. at 6.) Irico disputes that indirect sales of CRTs into the United States are relevant to the commercial activity exception of the Foreign Sovereign Immunities Act ("FSIA"), which requires that IPPs prove that their claims are based on activity occurring outside the United States that has "a *direct effect* in the United States." 28 U.S.C. § 1605(a)(2) (emphasis added). The parties' disagreement over the relevance of indirect sales, however, is not pertinent here because Irico is not withholding information responsive to these interrogatories.[2] As described below, Irico has in fact provided the responsive information, which is contained in its sales and accounting records, and Irico confirmed that it was doing so in response to IPPs' interrogatories in an August 10, 2018 email to counsel for IPPs. (Capurro Decl. Ex. 10.)

As Irico has verified to Plaintiffs repeatedly during this discovery process, Irico's complete sales records are contained and produced in its archived accounting records, which have been available for inspection by Plaintiffs since May 4, 2018. Making documents available for inspection fully satisfies Fed. R. Civ. P. 34's production obligation. *See Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 220–21 (C.D. Cal. 2009) (defendant, a Utah corporation, met the requirements of Rule 34 by offering to make documents available for inspection to plaintiff, a California corporation, in Utah); *Betts v. Agri-Tech Servs., Inc.*, No. 87-4110-R, 1990 WL 5731, at *1 (D. Kan. Jan. 23, 1990) (denying motion to compel where defendant allowed plaintiff to examine and copy records at defendant's attorney's office, and finding that "defendant is not required to mail these documents to plaintiff in Texas for additional inspection and copying"); *Harris v. Sunset Oil Co.*, 2 F.R.D. 93 (W.D. Wash. 1941) (granting motion to produce "provided that compliance by defendants respectively shall be at their respective places of business during reasonable office hours or at such other places and times as may be mutually agreeable"); *see also* Fed. R. Civ. P. 34(b)(1)(B), 34(b)(2)(E)(i).

Irico has no electronic database of U.S. sales. (Plunkett Decl. Ex. 1 at 12.) Chinese accounting rules and Irico's internal policies required that Irico retain only its sales invoices, which are now housed in its archives at various locations described in detail to Plaintiffs. (*Id.* at 9-10, 12-13.) On August 10, 2018, Irico explained to counsel for IPPs that these archives contained information responsive to their interrogatories, including *both domestic and international sales*: "Irico provided on August 7 a summary of Irico Group and Display's accounting records held in their archives that are available for inspection. Those accounting records contain all available records of sales by Irico Defendants, whether domestic or export, during the class period and would contain any information Irico has responsive to Rog #18 for sales during the Class Period." (Capurro Decl. Ex. 10.) Indeed, the accounting records Irico has made available include, for each domestic and international sale: the invoice serial number,

---

[2] Because the parties' dispute over the relevance of indirect sales is not pertinent to the motion to compel, Irico reserves its arguments on that point in response to IPPs' purported authority. (*See* Mot. at 4-5.)

**BAKER BOTTS** LLP

- 3 -  September 14, 2018

product type, quantity, price, revenue, customer name (i.e., party invoiced), and destination. (Plunkett Decl. ¶ 2.)

Irico has repeatedly made clear that these documents are available for inspection. Irico explained that these documents were available for inspection in discovery responses, dated May 4, 2018. (Plunkett Decl. Ex. 2 at 25-26.) In a letter dated August 22, 2018, Irico reiterated that these records were available and requested that Plaintiffs "please provide us with inspection dates, so Irico can make any necessary arrangements to facilitate [Plaintiffs'] review." (Plunkett Decl. Ex. 3 at 2.) Irico again stated that these documents were available for inspection during the parties August 31, 2018 telephonic meet-and-confer. (Plunkett Decl. ¶ 3). Thus, IPPs are seeking to compel production of that which is already produced under the F.R.C.P. and fully available to them for inspection.[3]

### IPP RFP No. 18

RFP No. 18 seeks documents related to meetings or communications between Irico and any other manufacturers of CRTs. In response, Irico agreed to provide the information that Your Honor had ordered Irico to produce with respect to alleged conspiratorial meetings. (Mot. at 6.) IPPs did not dispute the scope of that agreement, but instead clarified that they would also like Irico to produce any "communications with customers regarding their actual or anticipated sale or CRT televisions/monitors containing Irico's CRTs to the United States. (Capurro Decl. Ex. 10; *see also* Mot. at 6.) Irico responded that, although it believed it had "valid objections to these requests," Irico would determine whether it had responsive information. (Capurro Decl. Ex. 10.) After searching for the requested communications, Irico confirmed to IPPs that Irico was unable to locate any such communications. (*Id.*) IPPs thus provide no basis for an order to compel evidence with respect to RFP No. 18 when no such evidence is available.

IPPs complain that during the meet and confer process, Irico "declined to provide any information about the parameters of its search." (Mot. at 6.) IPPs' complaint is meritless. First, Irico is not obligated under the Federal Rules to disclose the details of its search methodologies, which would necessarily include protected work-product information and other privileged information. Second, Irico has represented that it has searched for the documents at issue, including sales and pricing records and a host of other categories of documents at issue here and Irico has disclosed the location of a substantial number of other documents that may contain

---

[3] IPPs have stated during meet-and-confers, and DPPs argue in their separate motion to compel, that Irico's offer to make records available is improper because, *inter alia*, Irico has purportedly pointed Plaintiffs to five million pages of documents and essentially said "go look." Contrary to Plaintiffs' argument, Irico provided descriptions of these documents—which have been available for inspection *for over four months*—that would enable Plaintiffs to conduct a targeted document review. For example, these records are maintained by category (e.g., financial records, invoice records, contracts, receipts, government approval documents, and documents issued by the Chinese government) and are kept in chronological order. Plaintiffs' argument that over five million pages of documents is too much also fails to recognize that over 4.4 million of those documents include records from as far back as 1978 and are arranged chronologically. Given Plaintiffs' alleged relevant time period of 1995-2007, they could presumably eliminate from any review the millions of pages of documents for the period 1978-1995. Plaintiffs' effort to amplify their purported burden by pointing to large page counts simply does not stand up to any actual burden that Plaintiffs would encounter.

**BAKER BOTTS** LLP

- 4 -                          September 14, 2018

responsive information (including a description of those documents) and offered to make them available to Plaintiffs. Thus, IPPs' argument that Irico has been silent on its document collection efforts is simply false. Finally, there is no discovery request calling for Irico to describe its search and, in any event, DPPs and IPPs have noticed a Rule 30(b)(6) deposition to commence in Hong Kong the week of September 24, 2018, and they have included as a topic for examination the "nature and extent of the search for Documents and/or information in response to Plaintiffs' discovery requests by Group and Display." (Plunkett Decl. Ex. 4.)

IPPs also argue at length about the relevance of the requested communications (Mot. at 6-7), but Irico did not refuse to produce any such documents on ground of relevance. Rather, Irico searched for responsive documents notwithstanding its belief that its objections are valid. (Capurro Decl. Ex. 10.) The absence of production is due to the absence of responsive documents.[4]

Similarly, IPPs cite documents that they contend demonstrate that products sold by other companies incorporated CRTs sold by Irico (Mot. at 7), but these documents cannot support an order to compel when Irico has already agreed to produce the information sought.

Crucially, however, IPPs appear to misconstrue or misstate the contents of the documents. For example, IPPs claim there is evidence that "Irico's top customers sold CRT televisions containing Irico CPTs to the United States during the relevant period" (Mot. at 7), but the document IPPs cite appears to contain no such information. (Capurro Decl. Ex. 13 (citing Sheets 11-16).) The specific pages of the document cited (i.e., Sheets 11-16) do not mention Irico. The document does contain other references to entities that IPPs have attempted to associate with Irico, but even those references do not evidence U.S. Sales. For example, Sheet 17 mentions "Caihong/Rainbow," but only in conjunction with exports to Hong Kong, Russia, Turkey, Thailand, Indonesia, and "Others." (*Id.*) An entity called "Rainbow" is mentioned elsewhere in the document cited, but not with respect to U.S. exports. (*Id.*)

IPPs also submit two *untranslated* documents they claim show that Irico's customer, Haier, made products for sale in the U.S. using Irico CRTs. But the translated versions of these documents, which appear to be market reports from another company, Chunghwa, do not establish that Haier actually manufactured products using Irico CRTs that were intended for sale in the U.S. or that Haier ever actually sold such products in the U.S. (Plunkett Decl. Ex. 5 (translations of Exs. 15 and 16 from Capurro Declaration).)

---

[4] Irico reserves its rights with respect to IPPs' purported showing of relevance. (*See* Mot. at 6-7.)

**BAKER BOTTS** LLP

- 5 -                                                                                     September 14, 2018

For the foregoing reasons, Your Honor should deny IPPs' motion to compel.

Sincerely,

Stuart C. Plunkett

cc:    Jay Weil (jay.weil@fedarb.com)
       Lillian Tom (lt@judgewalker.com)
       Guido Saveri (guido@saveri.com)
       R. Alexander Saveri (rick@saveri.com)
       Geoffrey C. Rushing (grushing@saveri.com)
       Cadio Zirpoli (cadio@saveri.com)
       Matthew D. Heaphy (mheaphy@saveri.com)
       Mario N. Alioto (malioto@tatp.com)
       Lauren C. Capurro (laurenrussell@tatp.com)
       Joseph M. Patane (jpatane@tatp.com)
       Christopher Micheletti (cmicheletti@zelle.com)
       Qianwei Fu (qfu@zelle.com)