# DOCUMENT 4

John Taladay (*pro hac vice*)
john.taladay@bakerbotts.com
Erik T. Koons (*pro hac vice*)
erik.koons@bakerbotts.com
BAKER BOTTS LLP
1299 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone: (202)-639-7700
Facsimile: (202)-639-7890

Stuart C. Plunkett (State Bar No. 187971)
stuart.plunkett@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

*Attorneys for Defendants*
*Irico GROUP CORP. and*
*Irico DISPLAY DEVICES CO., LTD.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | Case No. 3:07-cv-05944-JST |
| | MDL No.: 1917 |
| THIS DOCUMENT RELATES TO: | **DECLARATION OF STUART C. PLUNKETT IN SUPPORT OF IRICO DEFENDANTS' OPPOSITION TO INDIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL JURISDICTIONAL DISCOVERY** |
| *ALL DIRECT PURCHASER ACTIONS* | |
| | Special Master Hon. Vaughn R. Walker (Ret.) |

I, Stuart C. Plunkett declare as follows:

1.      I am an attorney admitted to practice law in this Court and in the State of California. I am a partner with the law firm of Baker Botts L.L.P., which represents Defendants Irico Group Corporation ("Irico Group") and Irico Display Devices Co., Ltd. ("Irico Display") (collectively, "Irico Defendants"). I make this Declaration based on my personal knowledge and in support of the Irico Defendants' Opposition to Indirect Purchaser Plaintiffs' Motion to Compel Jurisdictional Discovery.

2.      Irico's archived accounting records, which have been made available to Plaintiffs for inspection, include the following information for each domestic and international sale: the invoice serial number, product type, quantity, price, revenue, customer name (i.e., party invoiced), and destination.

3.      Irico has repeatedly made clear to Plaintiffs that Irico's archived documents are available for inspection. Among numerous other occasions, I reiterated this point during an August 31, 2018 telephonic meet-and-confer.

4.      Attached hereto as **Exhibit 1** is a true and correct copy of Irico Defendants' Third Supplemental Objections and Responses to Direct Purchaser Plaintiff Studio Spectrum, Inc.'s First Set of Interrogatories, served on September 4, 2018.

5.      Attached hereto as **Exhibit 2** is a true and correct copy of Irico Defendants' Objections and Responses to Direct Purchaser Plaintiff Studio Spectrum, Inc.'s First Set of Interrogatories, served on May 4, 2018.

6.      Attached hereto as **Exhibit 3** is a true and correct copy of an August 22, 2018 letter from me to counsel for Plaintiffs.

7.      Attached hereto as **Exhibit 4** is a true and correct copy of a Notice of Deposition of Defendants Irico Group Corporation and Irico Display Devices Co., Ltd. Pursuant to Fed. R. Civ. P. 30(b)(6), served on September 9, 2018.

8.      Attached hereto as **Exhibit 5** are true and correct copies of certified translations of Exhibits 15 and 16 to the Declaration of Lauren C. Capurro, submitted on September 7, 2018.

1    I declare under penalty of perjury that the foregoing is true and correct.  Executed this

2    14th day of September 2018 in San Francisco, California.

3

4                                              */s/ Stuart C. Plunkett*

5                                              Stuart C. Plunkett (State Bar No. 187971)
                                               stuart.plunkett@bakerbotts.com
6                                              BAKER BOTTS LLP
                                               101 California Street, Suite 3600
7                                              San Francisco, California 94111
                                               Telephone: (415) 291-6200
8                                              Facsimile: (415) 291-6300

9                                              *Attorneys for Defendants*
                                               *Irico GROUP CORP. and*
10                                             *Irico DISPLAY DEVICES CO., LTD.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

John Taladay (*pro hac vice*)
john.taladay@bakerbotts.com
Erik Koons (*pro hac vice*)
erik.koons@bakerbotts.com
BAKER BOTTS LLP
1299 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone: (202)-639-7700
Facsimile: (202)-639-7890

Stuart C. Plunkett (State Bar No. 187971)
stuart.plunkett@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

*Attorneys for Defendants*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 3:07-cv-05944-JST |
| | MDL No. 1917 |
| This Document Relates to:<br><br>ALL DIRECT PURCHASER ACTIONS | **IRICO DEFENDANTS' THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DIRECT PURCHASER PLAINTIFF STUDIO SPECTRUM, INC.'S FIRST SET OF INTERROGATORIES** |
| PROPOUNDING PARTY: | Direct Purchaser Plaintiff Studio Spectrum, Inc. |
| RESPONDING PARTIES: | Irico Group Corporation<br>Irico Display Devices Co., Ltd. |
| SET NO.: | One |

1    Pursuant to Federal Rules of Civil Procedure 26 and 33, Irico Group Corporation and Irico

2    Display Devices Co, Ltd. (collectively, "Irico" or "Irico Defendants") hereby respond to the

3    Direct Purchaser Plaintiff Studio Spectrum, Inc.'s ("Plaintiff") First Set of Interrogatories

4    ("Interrogatories"). Irico reserves the right to amend or supplement these Objections and

5    Responses (the "Responses") to the extent allowed by the Federal Rules of Civil Procedure and

6    the Local Rules of Practice in Civil Proceedings before the United States District Court for the

7    Northern District of California ("Local Rules"). Subject to and without waiving any of Irico's

8    General and Specific Objections as set forth below, Irico is willing to meet and confer with

9    Plaintiff regarding such General and Specific Objections.

10    The following Responses are made only for purposes of this case. The Responses are

11    subject to all objections as to relevance, materiality and admissibility, and to any and all

12    objections on any ground that would require exclusion of any response if it were introduced in

13    court. All evidentiary objections and grounds are expressly reserved.

14    These Responses are subject to the provisions of the Stipulated Protective Order that the

15    Court issued on June 18, 2008 ("Protective Order"). Irico's Responses are hereby designated

16    "Confidential" in accordance with the provisions of the Protective Order.

17    ## GENERAL OBJECTIONS

18    Irico makes the following General Objections to Plaintiff's Interrogatories:

19    1.    Irico's Responses are based upon information available to and located by Irico as

20    of the date of service of these Responses. In responding to Plaintiff's Interrogatories, Irico states

21    that it has conducted, or will conduct, a diligent search, reasonable in scope, of those files and

22    records in its possession, custody, or control believed to likely contain information responsive to

23    Plaintiff's Interrogatories.

24    2.    No express, incidental, or implied admissions are intended by these Responses and

25    should not be read or construed as such.

26    3.    Irico does not intend, and its Responses should not be construed as, an agreement

27    or acquiescence with any characterization of fact, assumption, or conclusion of law contained in

28

or implied by the Interrogatories.

4.     To the extent that Irico responds to Plaintiff's Interrogatories by stating that Irico will produce or make available for examination responsive information or documents, Irico does not represent that any such information or documents exist. Irico will make a good faith and reasonable attempt to ascertain whether information responsive to Plaintiff's Interrogatories exists and is properly producible, and will produce or make available for examination non-privileged responsive materials to the extent any are located during the course of a reasonable search.

5.     Irico objects to Plaintiff's Interrogatories to the extent that they are overly broad, unduly burdensome, oppressive, and duplicative to the extent that they seek information or documents that are already in the possession, custody, or control of Plaintiff.

6.     Irico objects to Plaintiff's Interrogatories to the extent that they seek to impose obligations on Irico beyond those of the Federal Rules of Civil Procedure, the Local Rules, or any Order of this Court.

7.     Irico objects to Plaintiff's Interrogatories to the extent they seek information that is not relevant to jurisdictional issues or disproportionate to the needs of the case in resolving such jurisdictional issues.

8.     Irico objects to Plaintiff's Interrogatories to the extent that they are vague, ambiguous, or susceptible to more than one interpretation. Irico shall attempt to construe such vague or ambiguous Interrogatories so as to provide for the production of responsive information that is proportionate to the needs of the case. If Plaintiff subsequently asserts an interpretation of any Interrogatory that differs from Irico's understanding, Irico reserves the right to supplement or amend its Responses.

9.     Irico objects to Plaintiff's Interrogatories to the extent that they contain terms that are insufficiently or imprecisely defined. Irico shall attempt to construe such vague or ambiguous Interrogatories so as to provide for the production of responsive information that is proportionate to the needs of the case.

10.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information that is protected from disclosure by the attorney-client privilege, work product doctrine, joint defense or common interest privilege, self-evaluative privilege, or any other applicable privilege or immunity. Irico will provide only information that it believes to be non-privileged and otherwise properly discoverable. None of Irico's responses is intended nor should be construed as a waiver of any such privilege or immunity. The inadvertent or mistaken provision of any information or responsive documents subject to any such doctrine, privilege, protection or immunity from production shall not constitute a general, inadvertent, implicit, subject-matter, separate, independent or other waiver of such doctrine, privilege, protection or immunity from production.

11.     Irico objects to Plaintiff's Interrogatories to the extent that they call for information that is not in the possession, custody, or control of Irico. Irico also objects to the extent that any of Plaintiff's Interrogatories seek information from non-parties or third parties, including but not limited to any of Irico's subsidiary or affiliated companies.

12.     Irico objects to Plaintiff's Interrogatories to the extent that responding would require Irico to violate the privacy and/or confidentiality of a third party or confidentiality agreement with a third party.

13.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information that is publicly available, already in Plaintiffs' possession, custody, or control, or more readily available from other sources.

14.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information or documents concerning transactions outside the United States. Such Interrogatories are unduly burdensome and irrelevant because they do not relate to actions by Irico in or causing a direct effect in the United States.  Such Interrogatories are also unduly burdensome and irrelevant to this pending action as Plaintiffs' class definition is confined to "all persons . . . who directly purchased a Cathode Ray Tube Product . . . in the United States" (see Direct Purchaser Plaintiffs' Consolidated Amended Complaint).

15.     Irico objects to Plaintiff's Interrogatories to the extent that compliance would require Irico to violate the laws, regulations, procedures, or orders of a judicial or regulatory body of foreign jurisdictions.

16.     Irico's responses, whether now or in the future, pursuant to Plaintiff's Interrogatories should not be construed as either (i) a waiver of any of Irico's general or specific objections or (ii) an admission that such information or documents are either relevant or admissible as evidence.

17.     Irico objects to Plaintiff's Interrogatories to the extent that compliance would require Irico to seek information stored on backup or archived databases or other systems that are not readily accessible or otherwise no longer active.

18.     Irico objects to Plaintiff's Interrogatories to the extent that they are compound and/or contain discrete subparts in violation of Federal Rule of Civil Procedure 33(a)(1).

19.     Irico objects to Plaintiff's Interrogatories to the extent that they state and/or call for legal conclusions.

20.     Irico objects to the Interrogatories to the extent that they contain express or implied assumptions of fact or law with respect to the matters at issue in this case.

21.     Irico reserves the right to assert additional General and Specific Objections as appropriate to supplement these Responses.

These General Objections apply to each Interrogatory as though restated in full in the responses thereto. The failure to mention any of the foregoing General Objections in the specific responses set forth below shall not be deemed as a waiver of such objections or limitations.

## GENERAL OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Irico objects to the definitions of "You" and "Your" (Definition No. 6) to the extent that Plaintiff defines those terms to include the Irico's "predecessors, successors, subsidiaries, departments, divisions, and/or affiliates." This definition is legally incorrect, overbroad, unduly burdensome, vague, and ambiguous. Irico also objects to the inclusion of "all present and former directors, officers, Employees, agents, representatives or any Persons acting or

purporting to act on behalf of" Irico within this definition to the extent it purports to encompass information that is protected by attorney-client privilege, work product protection or any other applicable doctrine, privilege, protection or immunity or otherwise calls for a legal conclusion.

2.      Irico objects to the definition of "Document" (Definition No. 8) to the extent it seeks to impose requirements that are beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules, or any other applicable laws.

3.      Irico objects to the definition of "Employee" (Definition No. 9) on the grounds that it calls for a legal conclusion and is otherwise vague, ambiguous, and overly broad. Irico further objects to this definition to the extent that it attempts to impose burdens on Irico beyond those imposed by the Federal Rules of Civil Procedure. Irico further objects to this definition to the extent that it seeks information protected by the attorney client or other applicable privilege, attorney work product doctrine, or otherwise seeks to violate rights of privacy under U.S. or foreign law.

4.      Irico objects to the definitions of "CRT" and "CRT Products" (Definitions No. 10 and 11) on the grounds that they are vague, ambiguous and overly broad. Irico further objects to the use of the term "CRT Products" to the extent that it is inconsistent with the definition of "CRT Products" as set forth in Plaintiff's pleadings.

5.      Irico objects to the definition of the "Relevant Time Period" (Definition No. 12) as overbroad, unduly burdensome, beyond the applicable statute of limitations, and beyond the relevant time period for determining jurisdictional issues.

6.      Irico objects to the definition of "Communication" (Definition No. 14) on the grounds that it is vague, ambiguous, and overly broad. Irico further objects to this definition to the extent that it attempts to impose burdens on Irico beyond those imposed by the Federal Rules of Civil Procedure.

7.      Irico objects to the definition of "Meeting" (Definition No. 16) on the grounds that the definition is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportionate to the needs of the case.

8.      Irico objects to Instruction No. 1 (related to identification of persons) to the extent that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under the Federal Rules of Civil Procedure, including, without limiting the generality of the foregoing, Rule 26(b)(5)(A) and Rule 26(e)(1). Irico further objects to this Instruction to the extent that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under, the Local Rules and any orders of the Court, and on the grounds that it is vague, ambiguous, and inconsistent with common usage. Irico further objects to this Instruction to the extent it seeks information that would disclose personal confidential information and/or violate any and all rights of privacy under the United States Constitution or Article I of the Constitution of the State of California, or any other applicable law or state constitution, or that is otherwise prohibited from disclosure because to do so would cause Irico to violate legal and/or contractual obligations to any other persons or entities.

9.      Irico objects to Instruction No. 2 (related to identification of an entity other than a natural person) to the extent that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under the Federal Rules of Civil Procedure or other applicable rule or Order of this Court.

10.     Irico objects to Instruction No. 3 (related to the production of business records in response to an interrogatory pursuant to Federal Rule of Civil Procedure 33(d)) on the grounds that it is unduly burdensome and purports to impose burdens and obligations upon Irico beyond those required by the Federal Rules of Civil Procedure or other applicable rule or Order of this Court.

## SPECIFIC RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 20

Please describe with particularity Irico's sales and marketing of CRT Products in the United States during the Class Period, and/or attempts to sell or market any CRT Products in the United States during the Class Period, including:

a.      The identity of all Persons with knowledge of such sales and marketing and/or

1  attempts to sell or market CRT Products in the United States; and

2      b.    The identity of all Documents referring or relating to such sales and marketing

3      and/or attempts to sell or market CRT Products in the United States.

4  **RESPONSE TO INTERROGATORY NO. 20**

5  Irico reasserts and incorporates each of the General Objections and Objections to the

6  Definitions and Instructions set forth above.  Irico further objects that this request seeks

7  information and documents beyond the scope of what is relevant to resolving jurisdictional issues

8  and beyond that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to

9  Compel.  Irico also objects that this request is overbroad, unduly burdensome, and

10  disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects to

11  this interrogatory on the grounds that identification of "all Persons" and "all Documents" is

12  overbroad, unduly burdensome, and disproportionate to the needs of the case.

13  Subject to and without waiving these objections and pursuant to Federal Rule of Civil

14  Procedure 33(d), Irico will produce or make available for inspection business records from which

15  the answer to this Interrogatory may be determined.

16  Irico further states that Guo Menquan and Tao Long have knowledge of this subject.

17  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 20**

18  Subject to and without waiving the objections stated above and pursuant to the Special

19  Master's August 2, 2018 order (Dkt. No. 5320), Irico responds as follows:

20  The managerial persons with knowledge of any United States sales of Irico's CRT

21  Products throughout the class period and their work histories are as follows:

22      •   Tao Long (current employee)

23         o   May 1992-Oct. 1996: Accountant in the Finance Department, Irico Group

24         o   Oct. 1996-Nov. 2000: Chief of Finance, Irico CRT No. 1 Plant

25         o   Nov. 2000-June 2007: Chief of Finance, Irico Group Glass Factory

26         o   July 2009-Nov. 2009: Deputy Director (Finance), Irico Display

27         o   Nov. 2009-Oct. 2010: Director (Capital Operation), Irico Display

28

IRICO'S 3RD SUPP. OBJECTIONS AND       7       Master File No. 3:07-cv-05944-SC
RESPONSES TO DPP'S FIRST SET                   MDL No. 1917
INTERROGATORIES

1          o   Apr. 2010-present: Secretary to the Board of Directors, Irico Display

2          o   Aug. 2013-Apr. 2014 (concurrent): Director (Finance), Irico Display

3      •   Guo Mengquan (former employee, retired May 2017)

4          o   Sept. 1983-Jan. 1987: Technical employee, Shaanxi Color CRT Central

5              Plant

6          o   Jan. 1987-Sept. 1988: Associate Director (CPT Department), Shaanxi

7              Color CRT Central Plant

8          o   Sept. 1988-Jan. 1990: Director (CPT Department), Shaanxi Color CRT

9              Central Plant

10         o   Jan. 1990-Sept. 1996: Associate General Manager (Glass Plant), Shaanxi

11             Color CRT Central Plant

12         o   Sept. 1996-Apr. 2001: General Manager (Glass Plant), Shaanxi Color CRT

13             Central Plant

14         o   Apr. 2001-Apr. 2013: Deputy General Manager, Irico Group

15         o   Aug. 2005-Nov. 2007 (concurrent): General Manager, Irico Electronics

16         o   Nov. 2007-Aug. 2011 (concurrent): Deputy Chairman of the Board, Irico

17             Display

18         o   Apr. 2013-Apr. 2016: General Manager, Irico Group

19         o   June 2013-2015 (concurrent): Chairman of the Board, Irico Electronics

20         o   June 2013-May 2016 (concurrent): Chairman of the Board, Irico Display

21         o   Apr. 2016-May 2017: Deputy Chairman of the Board, Irico Group

22     •   Zhaojie Wang (current employee of Irico Group subsidiary)

23         o   Work history detailed at Dkt. No. 5313-2, ¶¶ 1-7.

24     Pursuant to the Special Master's August 2, 2018 order (Dkt. No. 5320), Irico will further

25 supplement this response by (1) identifying the locations of all repositories of any electronic

26 documents or files relating to United States sales of Irico's CRT Products and the legal

27 relationships of Irico and any entities that sold Irico's CRT Products in the United States

28

throughout the class period; and (2) providing summary explanations of sales records relevant to United States sales of Irico's CRT Products and of "Irico's efforts to sell products in the U.S. during the class period."

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 20**

Subject to and without waiving the objections stated above and pursuant to the Special Master's August 2, 2018 order (Dkt. No. 5320), Irico provides the following responsive descriptions:

**1.    "Irico's efforts to sell products in the U.S. during the class period."**

During the relevant time period, Irico Group and Irico Display ("Irico") neither exported nor planned to export CRT products to the U.S. Irico focused its production of CRTs on sales within the domestic Chinese market. Such CRTs were generally considered outmoded by U.S. standards. Thus, Irico did not target the U.S. market because its CRTs were several years behind the U.S. demand.

Irico is aware from review of customs records that an independent company, CNEIECC, resold samples of Irico's CRTs into the U.S. in an apparent effort to enter the U.S. market. Irico understands this effort was ultimately a failure. CNEIECC did not report these efforts to Irico at the time.

**2.    "Summary explanations of sales records relevant to United States sales of Irico's CRT Products and of Irico's efforts to sell products in the U.S. during the class period."**

First, Irico Group's corporate archives are located on the first and third floors of Building 102 of Irico Group Headquarters, 1 Caihong Road, Qindu District, Xianyang, Shaanxi Province, People's Republic of China. These archives contain a total of over 150 file cabinets and over 5,500 file boxes, of which the following are potentially responsive to plaintiffs' discovery requests:

a)    Approximately 700 bound volumes of financial records for Irico Group, dated from 1995 to 2007 and organized chronologically. These financial records include contracts, receipts, invoices, approvals from the government, and approvals issued

by Irico Group relating to operations, suppliers, investment, and financing. Each volume ranges from approximately 100 to 300 pages depending on the volume of transactions in each period.

b) Approximately 150 bound account books for Irico Group, dated from 1995 to 2007and organized chronologically. These account books contain information on Irico Group's sales, assets, operations, and cash flow based on the financial documents described above. Each account book contains approximately 200 to 500 pages.

Second, additional financial archive files of Irico Group are located at the Caihong Building at 11 Shangdi Xinxi Road, Haidian District, Beijing, People's Republic of China. These archives contain approximately 730 bound volumes of financial records and over 70 account books dated between 1995 and 2007. These documents are organized chronologically and similar in content and size to the financial documents and account books described above at the Irico Group Headquarters location.

Third, Irico Display's corporate archives are stored within the archives of Shaanxi Irico Electronic Glass Co., a subsidiary of Irico Display. Approximately 1,500 bound account books for Irico Display, dated from 1995 to 2007 and organized chronologically. These account books contain information on Irico Display's sales, assets, operations, and cash flow. Each account book contains approximately 200 to 500 pages.

**3.     "Managerial persons with knowledge of any United States sales of Irico's CRT Products throughout the class period and their work histories"**

- **Ximin Wang:**

  o 08/1978 - 02/1988
    - Irico 4400 Plant, Technician
  o 03/1988 – 08/1994
    - Irico 4400 Plant CRT No.2 Plant, Director of the Electron Gun Department
  o 08/1994 – 10/1995
    - Irico 4400 Plant, Director of Technical Department
  o 10/1995 - 01/1999
    - Irico Color CRT General Plant, General Manager of Sales Company

- o 01/1999 – 04/2001
  - ▪ Irico Group Corporation, Deputy Director of Technical Center
- o 04/2001 - 12/2004
  - ▪ Irico Group Corporation, Director of Manufacturing Department
- o 12/2004 – 07/2005
  - ▪ Irico Electronics, Assistant to the CEO and General Manager of the Operation Department
- o 08/2005 – 11/2007
  - ▪ Irico Electronics, Deputy CEO; Irico Display, Chairman of the Board of Directors
- o 12/2007 – 09/2011
  - ▪ Irico Display, General Manager
- o 09/2011 – 09/2013
  - ▪ Irico Group Corporation, General Economist and General  Manager of Shaanxi Branch (*retired*)

- **Jian-she Wei:**

  - o 08/1981 – 12/1989
    - ▪ Irico 4400 Plant, a Team Leader of part of an assembly line
  - o 12/1989 – 08/1990
    - ▪ Caizhu Electronic Industry Company, Deputy General Manager
  - o 08/1990 – 01/1999
    - ▪ Caizhu Electronic Industry Company (now named Zhuhai Caizhu Industry Company), General Manager
  - o 01/1999 – 11/2000
    - ▪ Irico Group, Sales Company, Deputy General Manager
  - o 11/2000 – 01/2004
    - ▪ Irico Group, Sales Company, General Manager
  - o 01/2004 – 05/2005
    - ▪ Shenzhen Caihong Huangqi Electronic Information Company, Director, Deputy Chairman of the Board of Directors, General Manager
  - o 05/2005 – 04/2018
    - ▪ Zhuhai Caizhu Industry Company, on leave (*retired*)

- **Xiaolin Shen**

  - o 03/1984 – 01/1992
    - ▪ Irico Group Corporation, CRT Plant No. 1, Secretary of the company's office and Director of the company's office
  - o 10/1992 – 08/2004
    - ▪ Irico Group Corporation, Sales Company, Assistant to the General Manager and Deputy General Manager
  - o 08/2004 – 11/2007
    - ▪ Irico Group Corporation, Sales Company, General Manager
  - o 11/2007 – 01/2009

1
- ▪ Irico Display, Assistant to General Manager and General Manager of Sales
2
  Department
  - ○ 01/2009 – 09/2013
3
    - ▪ Irico Display, Deputy General Manager, and General Manager of Sales
      Department
4
  - ○ 09/2013 – 10/2015
    - ▪ Zhuhai Caizhu Limited Company, Managing Director (*retired*)
5

6
**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 20**

7
        Subject to and without waiving the objections stated above and pursuant to the Special

8
Master's August 2, 2018 order (Dkt. No. 5320), Irico provides the following additional

9
supplemental response:

10
        **1. "identifying the locations of all repositories of any electronic documents or
11
            files relating to United States sales of Irico's CRT Products"**

12
        Irico does not possess any repository of electronic documents or files relating to United

13
States sales of Irico's CRTs.  Irico is aware of one database of electronic sales records that

14
contains sales information during the relevant period.  This database consists solely of non-U.S.

15
sales, and Irico is reviewing it for responsiveness.

16
        **2. "identifying the locations of all repositories of any electronic documents or
            files relating to . . . the legal relationships of Irico and any entities that sold
17
            Irico's CRT Products in the United States throughout the class period"**

18
        Irico's only records concerning the export or sale of its CRTs into the United States are

19
the hard-copy Chinese customs records of CNEIECC's sale of Irico CRTs, which have been

20
produced.  Irico itself made no sales of its products to the United States and is not aware of any

21
other entity that sold Irico's CRTs to the United States, and thus Irico does not have any other

22
documents or reports concerning any sale or attempted sale into the United States.

23
        CNEIECC and Irico's relationship is one of customer and supplier.  The two companies

24
are separate entities that have had separate shareholders and management at all relevant times.

25
The only documents Irico is aware of relating to their relationship of the companies are (1) Irico's

26
invoices and receipts from sales to CNEIECC and (2) Irico's sales contracts with CNEIECC.

27
Chinese accounting rules and Irico's internal policies designate invoices—not contracts—as the

28

1   official records of sale.  Thus, Irico generally retains all invoices but has few sales contracts.

2   Irico's invoices and receipts from Irico's sales to CNEIECC are stored in Irico's corporate

3   archive located in Xianyang City.  As stated in Irico's May 4, 2018 initial responses, August 3rd

4   meet and confer, August 7th letter, August 22nd letter, and August 31st meet and confer, these

5   archival documents are available for inspection.  Irico will produce the contracts with CNEIECC

6   that it has located.

7

8   Dated:  September 4, 2018

9

10                                                 /s/ Stuart C. Plunkett
                                          Stuart C. Plunkett (State Bar No. 187971)
11                                        stuart.plunkett@bakerbotts.com
                                          BAKER BOTTS LLP
12                                        101 California Street, Suite 3600
                                          San Francisco, California 94111
13                                        Telephone: (415) 291-6200
                                          Facsimile: (415) 291-6300
14
                                          John Taladay (*pro hac vice*)
15                                        john.taladay@bakerbotts.com
                                          Erik Koons (*pro hac vice*)
16                                        erik.koons@bakerbotts.com
                                          BAKER BOTTS LLP
17                                        1299 Pennsylvania Ave., NW
                                          Washington, D.C. 20004
18                                        Telephone: (202)-639-7700
                                          Facsimile: (202)-639-7890
19
                                          *Attorneys for Defendants*
20                                        *IRICO GROUP CORP. and*
                                          *IRICO DISPLAY DEVICES CO., LTD.*
21

22

23

24

25

26

27

28

IRICO'S 3RD SUPP. OBJECTIONS AND           13                 Master File No. 3:07-cv-05944-SC
RESPONSES TO DPP'S FIRST SET                                  MDL No. 1917
INTERROGATORIES

## CERTIFICATE OF SERVICE

I declare that I am employed in the County of San Francisco, California. I am over the age of eighteen years and not a party to the within case; my business address is: Baker Botts LLP, 101 California Street, Suite 3600, San Francisco, CA 94111.

On September 4, 2018, I served the following document(s) described as:

**IRICO DEFENDANTS' THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DIRECT PURCHASER PLAINTIFF STUDIO SPECTRUM, INC.'S FIRST SET OF INTERROGATORIES**

on the following interested parties in this action:

Guido Saveri (guido@saveri.com)
R. Alexander Saveri (rick@saveri.com)
Geoffrey C. Rushing (grushing@saveri.com)
Cadio Zirpoli (cadio@saveri.com)
Matthew D. Heaphy (mheaphy@saveri.com)
SAVERI & SAVERI, INC.
706 Sansome St # 200,
San Francisco, CA 94111

*Lead Counsel for the Direct Purchaser Plaintiffs*

Mario N. Alioto (malioto@tatp.com)
Lauren C. Capurro (laurenrussell@tatp.com)
Joseph M. Patane (jpatane@tatp.com)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA 94123

*Lead Counsel for the Indirect Purchaser Plaintiffs*

Christopher Micheletti
(cmicheletti@zelle.com)
Qianwei Fu (qfu@zelle.com)
ZELLE LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104-4807
D (415) 633-1912

*Lead Counsel for the Indirect Purchaser Plaintiffs*

[ ]    (BY OVERNIGHT DELIVERY) I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or regularly utilized drop box of the overnight delivery carrier.

[ ]    (BY MAIL) by placing a true copy thereof in a sealed envelope with postage fully prepaid and addressed to the persons at the addresses as shown above. I am readily familiar with the business practice of Baker Botts LLP for collection and processing of correspondence for mailing with the United States Postal Service, and the correspondence would be deposited with United States Postal Service that same day in the ordinary course of business.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[X]     (BY ELECTRONIC MAIL) I caused such documents to be sent to the persons at the email addressed listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on September 4, 2018, 2012 at San Francisco, California.

*/s/ Reilly T. Stoler*
Reilly T. Stoler

# EXHIBIT 2

1  John Taladay (*pro hac vice*)
   john.taladay@bakerbotts.com
2  Erik Koons (*pro hac vice*)
   erik.koons@bakerbotts.com
3  BAKER BOTTS LLP
   1299 Pennsylvania Ave., NW
4  Washington, D.C. 20004
   Telephone: (202)-639-7700
5  Facsimile: (202)-639-7890

6  Stuart C. Plunkett (State Bar No. 187971)
   stuart.plunkett@bakerbotts.com
7  BAKER BOTTS LLP
   101 California Street, Suite 3600
8  San Francisco, California 94111
   Telephone: (415) 291-6200
9  Facsimile: (415) 291-6300

10 *Attorneys for Defendants*
   *IRICO GROUP CORP. and*
11 *IRICO DISPLAY DEVICES CO., LTD.*

12                **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14                  **SAN FRANCISCO DIVISION**

15

16 IN RE: CATHODE RAY TUBE (CRT)          Case No. 3:07-cv-05944-JST
   ANTITRUST LITIGATION
17                                         MDL No. 1917

18 ─────────────────────────────          **IRICO DEFENDANTS' OBJECTIONS**
                                          **AND RESPONSES TO DIRECT**
19 This Document Relates to:              **PURCHASER PLAINTIFF STUDIO**
                                          **SPECTRUM, INC.'S FIRST SET OF**
      ALL DIRECT PURCHASER ACTIONS        **INTERROGATORIES**
20

21

22

23 PROPOUNDING PARTY:          Direct Purchaser Plaintiff Studio Spectrum, Inc.

24 RESPONDING PARTIES:         Irico Group Corporation
                               Irico Display Devices Co., Ltd.
25

26 SET NO.:                    One

27

28

---

IRICO'S OBJECTIONS AND RESPONSES TO          Master File No. 3:07-cv-05944-SC
DPP'S FIRST SET INTERROGATORIES                              MDL No. 1917

1    Pursuant to Federal Rules of Civil Procedure 26 and 33, Irico Group Corporation and Irico

2    Display Devices Co, Ltd. (collectively, "Irico" or "Irico Defendants") hereby respond to the

3    Direct Purchaser Plaintiff Studio Spectrum, Inc.'s ("Plaintiff") First Set of Interrogatories

4    ("Interrogatories"). Irico reserves the right to amend or supplement these Objections and

5    Responses (the "Responses") to the extent allowed by the Federal Rules of Civil Procedure and

6    the Local Rules of Practice in Civil Proceedings before the United States District Court for the

7    Northern District of California ("Local Rules"). Subject to and without waiving any of Irico's

8    General and Specific Objections as set forth below, Irico is willing to meet and confer with

9    Plaintiff regarding such General and Specific Objections.

10    The following Responses are made only for purposes of this case. The Responses are

11    subject to all objections as to relevance, materiality and admissibility, and to any and all

12    objections on any ground that would require exclusion of any response if it were introduced in

13    court. All evidentiary objections and grounds are expressly reserved.

14    These Responses are subject to the provisions of the Stipulated Protective Order that the

15    Court issued on June 18, 2008 ("Protective Order"). Irico's Responses are hereby designated

16    "Confidential" in accordance with the provisions of the Protective Order.

17    ## GENERAL OBJECTIONS

18    Irico makes the following General Objections to Plaintiff's Interrogatories:

19    1.    Irico's Responses are based upon information available to and located by Irico as

20    of the date of service of these Responses. In responding to Plaintiff's Interrogatories, Irico states

21    that it has conducted, or will conduct, a diligent search, reasonable in scope, of those files and

22    records in its possession, custody, or control believed to likely contain information responsive to

23    Plaintiff's Interrogatories.

24    2.    No express, incidental, or implied admissions are intended by these Responses and

25    should not be read or construed as such.

26    3.    Irico does not intend, and its Responses should not be construed as, an agreement

27    or acquiescence with any characterization of fact, assumption, or conclusion of law contained in

28    or implied by the Interrogatories.

IRICO'S OBJECTIONS AND RESPONSES TO          1          Master File No. 3:07-cv-05944-SC
DPP'S FIRST SET INTERROGATORIES                                MDL No. 1917

4.     To the extent that Irico responds to Plaintiff's Interrogatories by stating that Irico will produce or make available for examination responsive information or documents, Irico does not represent that any such information or documents exist. Irico will make a good faith and reasonable attempt to ascertain whether information responsive to Plaintiff's Interrogatories exists and is properly producible, and will produce or make available for examination non-privileged responsive materials to the extent any are located during the course of a reasonable search.

5.     Irico objects to Plaintiff's Interrogatories to the extent that they are overly broad, unduly burdensome, oppressive, and duplicative to the extent that they seek information or documents that are already in the possession, custody, or control of Plaintiff.

6.     Irico objects to Plaintiff's Interrogatories to the extent that they seek to impose obligations on Irico beyond those of the Federal Rules of Civil Procedure, the Local Rules, or any Order of this Court.

7.     Irico objects to Plaintiff's Interrogatories to the extent they seek information that is not relevant to jurisdictional issues or disproportionate to the needs of the case in resolving such jurisdictional issues.

8.     Irico objects to Plaintiff's Interrogatories to the extent that they are vague, ambiguous, or susceptible to more than one interpretation. Irico shall attempt to construe such vague or ambiguous Interrogatories so as to provide for the production of responsive information that is proportionate to the needs of the case. If Plaintiff subsequently asserts an interpretation of any Interrogatory that differs from Irico's understanding, Irico reserves the right to supplement or amend its Responses.

9.     Irico objects to Plaintiff's Interrogatories to the extent that they contain terms that are insufficiently or imprecisely defined. Irico shall attempt to construe such vague or ambiguous Interrogatories so as to provide for the production of responsive information that is proportionate to the needs of the case.

10.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information that is protected from disclosure by the attorney-client privilege, work product doctrine, joint defense or common interest privilege, self-evaluative privilege, or any other applicable privilege

or immunity. Irico will provide only information that it believes to be non-privileged and otherwise properly discoverable. None of Irico's responses is intended nor should be construed as a waiver of any such privilege or immunity. The inadvertent or mistaken provision of any information or responsive documents subject to any such doctrine, privilege, protection or immunity from production shall not constitute a general, inadvertent, implicit, subject-matter, separate, independent or other waiver of such doctrine, privilege, protection or immunity from production.

11.     Irico objects to Plaintiff's Interrogatories to the extent that they call for information that is not in the possession, custody, or control of Irico. Irico also objects to the extent that any of Plaintiff's Interrogatories seek information from non-parties or third parties, including but not limited to any of Irico's subsidiary or affiliated companies.

12.     Irico objects to Plaintiff's Interrogatories to the extent that responding would require Irico to violate the privacy and/or confidentiality of a third party or confidentiality agreement with a third party.

13.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information that is publicly available, already in Plaintiffs' possession, custody, or control, or more readily available from other sources.

14.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information or documents concerning transactions outside the United States. Such Interrogatories are unduly burdensome and irrelevant because they do not relate to actions by Irico in or causing a direct effect in the United States.  Such Interrogatories are also unduly burdensome and irrelevant to this pending action as Plaintiffs' class definition is confined to "all persons . . . who directly purchased a Cathode Ray Tube Product . . . in the United States" (see Direct Purchaser Plaintiffs' Consolidated Amended Complaint).

15.     Irico objects to Plaintiff's Interrogatories to the extent that compliance would require Irico to violate the laws, regulations, procedures, or orders of a judicial or regulatory body of foreign jurisdictions.

16.     Irico's responses, whether now or in the future, pursuant to Plaintiff's Interrogatories should not be construed as either (i) a waiver of any of Irico's general or specific objections or (ii) an admission that such information or documents are either relevant or admissible as evidence.

17.     Irico objects to Plaintiff's Interrogatories to the extent that compliance would require Irico to seek information stored on backup or archived databases or other systems that are not readily accessible or otherwise no longer active.

18.     Irico objects to Plaintiff's Interrogatories to the extent that they are compound and/or contain discrete subparts in violation of Federal Rule of Civil Procedure 33(a)(1).

19.     Irico objects to Plaintiff's Interrogatories to the extent that they state and/or call for legal conclusions.

20.     Irico objects to the Interrogatories to the extent that they contain express or implied assumptions of fact or law with respect to the matters at issue in this case.

21.     Irico reserves the right to assert additional General and Specific Objections as appropriate to supplement these Responses.

These General Objections apply to each Interrogatory as though restated in full in the responses thereto. The failure to mention any of the foregoing General Objections in the specific responses set forth below shall not be deemed as a waiver of such objections or limitations.

## GENERAL OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Irico objects to the definitions of "You" and "Your" (Definition No. 6) to the extent that Plaintiff defines those terms to include the Irico's "predecessors, successors, subsidiaries, departments, divisions, and/or affiliates." This definition is legally incorrect, overbroad, unduly burdensome, vague, and ambiguous. Irico also objects to the inclusion of "all present and former directors, officers, Employees, agents, representatives or any Persons acting or purporting to act on behalf of" Irico within this definition to the extent it purports to encompass information that is protected by attorney-client privilege, work product protection or any other applicable doctrine, privilege, protection or immunity or otherwise calls for a legal conclusion.

2.       Irico objects to the definition of "Document" (Definition No. 8) to the extent it seeks to impose requirements that are beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules, or any other applicable laws.

3.       Irico objects to the definition of "Employee" (Definition No. 9) on the grounds that it calls for a legal conclusion and is otherwise vague, ambiguous, and overly broad. Irico further objects to this definition to the extent that it attempts to impose burdens on Irico beyond those imposed by the Federal Rules of Civil Procedure. Irico further objects to this definition to the extent that it seeks information protected by the attorney client or other applicable privilege, attorney work product doctrine, or otherwise seeks to violate rights of privacy under U.S. or foreign law.

4.       Irico objects to the definitions of "CRT" and "CRT Products" (Definitions No. 10 and 11) on the grounds that they are vague, ambiguous and overly broad. Irico further objects to the use of the term "CRT Products" to the extent that it is inconsistent with the definition of "CRT Products" as set forth in Plaintiff's pleadings.

5.       Irico objects to the definition of the "Relevant Time Period" (Definition No. 12) as overbroad, unduly burdensome, beyond the applicable statute of limitations, and beyond the relevant time period for determining jurisdictional issues.

6.       Irico objects to the definition of "Communication" (Definition No. 14) on the grounds that it is vague, ambiguous, and overly broad. Irico further objects to this definition to the extent that it attempts to impose burdens on Irico beyond those imposed by the Federal Rules of Civil Procedure.

7.       Irico objects to the definition of "Meeting" (Definition No. 16) on the grounds that the definition is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportionate to the needs of the case.

8.       Irico objects to Instruction No. 1 (related to identification of persons) to the extent that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under the Federal Rules of Civil Procedure, including, without limiting the generality of the foregoing, Rule 26(b)(5)(A) and Rule 26(e)(1). Irico further objects to this Instruction to the

extent that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under, the Local Rules and any orders of the Court, and on the grounds that it is vague, ambiguous, and inconsistent with common usage. Irico further objects to this Instruction to the extent it seeks information that would disclose personal confidential information and/or violate any and all rights of privacy under the United States Constitution or Article I of the Constitution of the State of California, or any other applicable law or state constitution, or that is otherwise prohibited from disclosure because to do so would cause Irico to violate legal and/or contractual obligations to any other persons or entities.

9.     Irico objects to Instruction No. 2 (related to identification of an entity other than a natural person) to the extent that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under the Federal Rules of Civil Procedure or other applicable rule or Order of this Court.

10.     Irico objects to Instruction No. 3 (related to the production of business records in response to an interrogatory pursuant to Federal Rule of Civil Procedure 33(d)) on the grounds that it is unduly burdensome and purports to impose burdens and obligations upon Irico beyond those required by the Federal Rules of Civil Procedure or other applicable rule or Order of this Court.

## SPECIFIC RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 1

Please describe in detail the circumstances surrounding Group's creation, including:

a.     The identity of all Persons with knowledge of Group's creation; and

b.     The identity of all Documents that refer or relate to Group's creation.

## RESPONSE TO INTERROGATORY NO. 1

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this interrogatory seeks information beyond the scope of what is relevant to resolving jurisdictional issues and beyond that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel. Irico also objects that this interrogatory is overbroad, unduly burdensome, and disproportionate to

the needs of the case in resolving jurisdictional issues.  Irico also objects to this interrogatory on the grounds that identification of "all Persons" and "all Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the case.  Irico also objects that this interrogatory seeks information that is publicly available.

Subject to and without waiving the objections stated above, Irico responds as follows:

Irico Group's origins trace back to a decision by the State Council of the People's Republic of China in the 1970s to fully fund and support the production of CRTs due to the strategic importance of CRTs in the development of China's national economy. Given the significance of CRTs in the fields of communications, science, education, culture, medicine, industry, agriculture, and others, the Fourth Ministry of Machinery Industry reported to the State Council on February 17, 1977that it intended to introduce CRT technology and equipment from abroad. This resulted in the construction of the wholly state-owned and state-funded Shaanxi Color CRT "4400" Plant in 1978 in Xianyang, which was classified as an industrial enterprise owned by the whole people of China. Irico Group was established on March 16, 1989 in Xianyang, Shaanxi Province with the approval of the Chinese Ministry of Machinery and Electronics Industry, and was formed out of the wholly state-owned assets of the Shaanxi Color CRT "4400" Plant. Group was established by the Chinese government to aid in China's national economic development by responding to the need of the Chinese people for color televisions. Group's approved scope of business was defined as the production of color picture tubes, display tubes, and ancillary components; the approved scope did not include any finished products such as televisions or computer monitors. Group received funding solely from the Chinese government.

Irico further states that Zhang Shaowen and Guo Mengquan have knowledge of this subject.

Irico further refers Plaintiff to documents Bates labeled IRI-CRT-00000001 to IRI-CRT-00000904.

**INTERROGATORY NO. 2**

Please describe in detail the circumstances surrounding Display's creation, including:

a.      The identity of all Persons with knowledge of Display's creation; and

b.      The identity of all Documents that refer or relate to Display's creation.

**RESPONSE TO INTERROGATORY NO. 2**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this interrogatory seeks information beyond the scope of what is relevant to resolving jurisdictional issues and beyond that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel. Irico also objects that this interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects to this interrogatory on the grounds that identification of "all Persons" and "all Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the case.  Irico also objects that this interrogatory seeks information that is publicly available.

Subject to and without waiving the objections stated above, Irico responds as follows:

Irico Display was established in 1992 by Irico Group and wholly state-owned entities, Shaanxi ICBC Trust and Investment Corporation and Shaanxi PCBC Trust and Investment Corporation. Display had it its domicile in Xianyang, Shaanxi Province. As a collaboration founded and held by three wholly state-owned entities and created with the approval of the Shaanxi Provincial Economic System Reform Committee, Display was set up as a wholly state-owned enterprise of the Chinese government. Display was tasked with the development, production, and sales of color picture displays, parts, and raw materials. Display's stated purpose was to make greater contributions to China's national economic development by satisfying the domestic need for CRT products.

Irico further states that Long Tao and Hou Ruijin have knowledge of this subject.

Irico further refers Plaintiff to documents Bates labeled IRI-CRT-00000001 to IRI-CRT-00000904.

1  **INTERROGATORY NO. 3**

2      Please describe the direct ownership of Group from 2006 to 2008, including:

3      a.    The identity of all Persons with knowledge of Group's ownership from 2006 to

4          2008; and

5      b.    The identity of all Documents which refer or relate to Group's ownership from

6          2006 to 2008.

7  **RESPONSE TO INTERROGATORY NO. 3**

8      Irico reasserts and incorporates each of the General Objections and Objections to the

9  Definitions and Instructions set forth above.  Irico further objects that this interrogatory seeks

10  information beyond the scope of what is relevant to resolving jurisdictional issues and beyond

11  that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel.

12  Irico also objects that this interrogatory is overbroad, unduly burdensome, and disproportionate to

13  the needs of the case in resolving jurisdictional issues.  Irico also objects to this interrogatory on

14  the grounds that identification of "all Persons" and "all Documents" is overbroad, unduly

15  burdensome, and disproportionate to the needs of the case.  Irico also objects that this

16  interrogatory seeks information that is publicly available.

17      Subject to and without waiving the objections stated above, Irico responds as follows:

18      On November 26, 2007, Group was wholly owned by the State Council of the People's

19  Republic of China.

20      Irico further states that Guo Mengquan has knowledge of this subject.

21      Irico further refers Plaintiff to documents Bates labeled IRI-CRT-00000001 to IRI-CRT-

22  00000904.

23  **INTERROGATORY NO. 4**

24      Please describe the direct ownership of Display from 2006 to 2008, including:

25      a.    The identity of all Persons with knowledge of Display's ownership from 2006 to

26          2008; and

27      b.    The identity of all Documents which refer or relate to Display's ownership from

28          2006 to 2008.

**RESPONSE TO INTERROGATORY NO. 4**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this interrogatory seeks information beyond the scope of what is relevant to resolving jurisdictional issues and beyond that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel. Irico also objects that this interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects to this interrogatory on the grounds that identification of "all Persons" and "all Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the case.  Irico also objects that this interrogatory seeks information that is publicly available.

Subject to and without waiving the objections stated above, Irico responds as follows:

On November 26, 2007, Display was owned 41.36% by Irico Group Electronics Co., Ltd. ("Electronics"), which was in turn 75% owned by Group. The ten largest shareholders of Display in 2007 were as follows:

| Display Shareholder as of November 26, 2007 | Shares held |
|---|---|
| Irico Group Electronics Co., Ltd | 41.36% |
| Zhejiang Lanshen Information Technology Investment Co., Ltd. | 1.71% |
| Xi'an Yaxuan Trading Co., Ltd. | 0.97% |
| Urumqi City Commercial Bank Co., Ltd. | 0.45% |
| Xi'an Aircraft Industry (Group) Co., Ltd. | 0.45% |
| Sinochem International Petroleum Co. | 0.45% |
| Tao Xinxian | 0.41% |
| Shaanxi Tak Industrial Co., Ltd. | 0.36% |
| Shanghai Tiandi Technology Investment Development Co., Ltd. | 0.33% |
| Wang Junying | 0.33% |

Display was classified by the Chinese State-owned Assets Supervision and Administration Commission ("SASAC") as a "state-owned holding company" in 2007 under Chinese law due to the government holding a controlling interest through Group and Electronics.

1    Irico further states that Long Tao and Yan Yunlong have knowledge of this subject.

2    Irico further refers Plaintiff to documents Bates labeled IRI-CRT-00000001 to IRI-CRT-

3    00000904.

4    **INTERROGATORY NO. 5**

5    Please describe any status, obligations, and/or privileges that Group or Display had under

6    Chinese Law from 2006 to 2008 because of the alleged status of Group or Display as an agency,

7    instrumentality, and/or organ of China, including:

8    a.    The identity of all Persons with knowledge of Group's or Display's special status,

9          obligations, and/or privileges under Chinese Law from 2006 to 2008; and

10   b.    The identity of all Documents which refer or relate to Group's or Display's special

11         status, obligations, and/or privileges under Chinese Law from 2006 to 2008.

12   **RESPONSE TO INTERROGATORY NO. 5**

13   Irico reasserts and incorporates each of the General Objections and Objections to the

14   Definitions and Instructions set forth above.  Irico further objects that this interrogatory seeks

15   information beyond the scope of what is relevant to resolving jurisdictional issues and beyond

16   that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel.

17   Irico also objects that this interrogatory is overbroad, unduly burdensome, and disproportionate to

18   the needs of the case in resolving jurisdictional issues.  Irico also objects to this interrogatory on

19   the grounds that identification of "all Persons" and "all Documents" is overbroad, unduly

20   burdensome, and disproportionate to the needs of the case.  Irico also objects that this

21   interrogatory seeks information that is publicly available.  Irico also objects that the terms

22   "status," "obligations," and "privileges" are vague and ambiguous, rendering this interrogatory

23   overbroad and unduly burdensome.

24   Subject to and without waiving the objections stated above, Irico responds as follows:

25   On November 26, 2007, Irico Group was a state-owned enterprise wholly owned and

26   funded by the State Council of the People's Republic of China. As such, Group was subject to the

27   direct management, supervision, and control by SASAC and other departments of the State

28   Council.  Group undertook many public service obligations and benefited from substantial

1    government support—well beyond any obligations and benefits conferred on privately-owned

2    corporations. All major operating activities, financial policies, and appointment or dismissals of

3    senior executives were directly managed by the Chinese government.

4         SASAC's control over Group was authorized by the Interim Regulations on Supervision

5    and Management of State-owned Assets of Enterprises, adopted by the State Council in 2003 and

6    in effect on November 26, 2007. Among other things, those regulations specified that SASAC

7    shall: (1) perform responsibilities on behalf of the State as the sole investor in Group and

8    safeguard the rights and interests of the state in the assets utilized by Group; (2) guide and push

9    forward any reform or restructuring efforts by Group; (3) dispatch supervisory panels to Group;

10   (4) appoint and remove the board of directors, General Manager, Deputy General Manager, Chief

11   Accountant, and other "responsible persons" of Group; (5) evaluate the performance and set the

12   compensation of board members and management of Group, including rewarding good

13   performance and punishing poor performance; (6) supervise and perform regular audits to ensure

14   the preservation and appreciation of the value of state-owned assets held by Group; (7) review

15   and approve any restructuring plans and articles of association; (8) handle any merger or

16   bankruptcy events affecting Group and make arrangements for laid-off workers; (9) authorize

17   operation of any state-owned assets by Group and its subsidiaries; and (10) receive regular reports

18   from Group on its finances, production, and operations as well as the preservation or appreciation

19   of state-owned assets. Any directors, managers, and other "responsible persons" of Group are

20   subject to disciplinary sanctions—including removal, disqualification from any future leadership

21   positions at state-owned enterprises, and potential criminal liability—for actions causing a loss of

22   State-owned assets.

23        In addition to these regulations, Group was required to refer any investment activities and

24   major asset or property rights transfers to the State Council for approval. Group was obligated to

25   achieve performance targets for maintenance and appreciation of State-owned assets in

26   accordance with government requirements. Group received all of its capital funding from the

27   Chinese government; its budget was set annually by SASAC and the Chinese Ministry of

28   Finance, consisting of government funds appropriated to Group for various purposes, including

IRICO'S OBJECTIONS AND RESPONSES TO          12          Master File No. 3:07-cv-05944-SC
DPP'S FIRST SET INTERROGATORIES                                              MDL No. 1917

1   specific projects to improve Display's operations. Group's finances were monitored directly by

2   the Ministry of Finance, and Group was obligated to pay a set portion of its after-tax profits back

3   to the government. The government also delegated the provision of numerous public services to

4   Group, including a school system, police department, hospital, and senior living center, set up in

5   Xianyang, Shaanxi Province.

6          Irico Display was registered as and held the status of a "state-owned holding company" in

7   2007. That term is defined under Chinese law to include entities partially owned by the Chinese

8   government, over which the government exercises control. As a state-owned holding company,

9   Irico Display also enjoyed many benefits and was subject to responsibilities that did not apply to

10  non-state-owned corporations. Display was subject to direct supervision by SASAC as authorized

11  by the Interim Regulations described above. Under those regulations, SASAC was authorized to:

12  (1) appoint representatives to Display shareholder meetings to exercise authority as the

13  controlling shareholder under SASAC's instructions; (2) nominate the Chairman and other

14  directors to Display's board of directors to act according to SASAC's instructions; (3) nominate

15  the Chairman and other members of Display's supervisory panel; (4) nominate top management

16  of Display, including the General Manager, Deputy General Manager, and Chief Accountant; (5)

17  direct Display (and other companies under Irico Group) in reform, restructuring, and other efforts

18  to adjust corporate governance in accordance with State Council policy; (6) supervise the

19  financial situation of Display in order to safeguard the state's interest in its state-owned assets; (7)

20  establish guidelines for executive and employee compensation; and (8) evaluate the performance

21  of top Display directors and management it has appointed. As with Group, any directors,

22  managers, and other "responsible persons" for Display are subject to disciplinary sanctions,

23  including potential criminal liability, for actions causing a loss of state-owned assets.  Under

24  these regulations, Display was commanded to "accept the supervision and administration

25  conducted by" SASAC. Display also benefited from special guidance and coordination from

26  SASAC in overcoming business difficulties and solving problems in the process of their reform

27  and development.

28

IRICO'S OBJECTIONS AND RESPONSES TO                    13                    Master File No. 3:07-cv-05944-SC
DPP'S FIRST SET INTERROGATORIES                                                MDL No. 1917

1    In addition to the obligations and privileges set forth in these regulations, Display was

2    subject to other requirements and received other forms of government support. Major production

3    changes by Display, such as new assembly lines and equipment, required direct approval by the

4    Economics and Trade Committee of Shaanxi Province. Display needed approval from SASAC

5    and the Shaanxi Province state-owned asset supervision authorities for its initial public offering.

6    Display also received significant financial support from SASAC and the Ministry of Finance,

7    including all of its initial funding at the time of formation, and periodic investments allocated by

8    SASAC through Group for use by Display, in particular for capital projects, including for its thin-

9    film-transistor liquid-crystal display project in 2007.  Display was at all times subject to the

10   absolute control of Group, and thus control by the Chinese government, in all its business

11   activities, financial policies, and appointment of management.  Group was listed as the "actual

12   controller" of Display pursuant to Article 217(3) of the 2006 Chinese Company Law, which

13   defines the term as "a person who is able practically to govern the behavior of a company through

14   investment relations, agreements or other arrangements, although the person is not a shareholder

15   of the company."  Display was required to submit regular financial, operational, and investment

16   reports to Group for approval.  Display also benefitted from the public services delegated to

17   Group by the Chinese government, including a school system, police department, hospital, and

18   senior living center, set up around Display's operations in Xianyang, Shaanxi Province.

19   Irico further states that Long Tao and Guo Mengquan have knowledge of this subject.

20   Irico further refers Plaintiff to documents Bates labeled IRI-CRT-00000001 to IRI-CRT-

21   00000904.

22   **INTERROGATORY NO. 6**

23   Please describe any Chinese government supervision of Group from 2006 to 2008,

24   including:

25   a.    The identity (including government job title) of any Chinese officials involved in

26         such supervision;

27   b.    The identity of all Documents referring or relating to such supervision; and

28   c.    The identity of other Persons with knowledge of such supervision.

**RESPONSE TO INTERROGATORY NO. 6**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this interrogatory seeks information beyond the scope of what is relevant to resolving jurisdictional issues and beyond that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel.  Irico also objects that this interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects to this interrogatory on the grounds that identification of "any Chinese officials," "all Persons," and "all Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the case.  Irico also objects that this interrogatory seeks information that is publicly available.  Irico also objects that the term "supervision" is vague and ambiguous, rendering this interrogatory overbroad and unduly burdensome.

Subject to and without waiving the objections stated above, Irico responds as follows:

See Irico's response above to Interrogatory No. 5. As a wholly state-owned enterprise as of November 26, 2007, Group was subject to supervision by SASAC and other departments of the State Council of the People's Republic of China in various aspects of its business, including finance, operations, and personnel management including its board of directors and senior management.

Irico further states that Long Tao and Guo Mengquan have knowledge of this subject.

Irico further refers Plaintiff to documents Bates labeled IRI-CRT-00000001 to IRI-CRT-00000904.

**INTERROGATORY NO. 7**

Please describe any Chinese government supervision of Display from 2006 to 2008, including:

    a.    The identity (including government job title) of any Chinese officials involved in such supervision;

    b.    The identity of all Documents referring or relating to such supervision; and

    c.    The identity of other Persons with knowledge of such supervision.

**RESPONSE TO INTERROGATORY NO. 7**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above. Irico further objects that this interrogatory seeks information beyond the scope of what is relevant to resolving jurisdictional issues and beyond that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel. Irico also objects that this interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues. Irico also objects to this interrogatory on the grounds that identification of "any Chinese officials," "all Persons," and "all Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the case. Irico also objects that this interrogatory seeks information that is publicly available. Irico also objects that the term "supervision" is vague and ambiguous, rendering this interrogatory overbroad and unduly burdensome.

Subject to and without waiving the objections stated above, Irico responds as follows:

See Irico's response to Interrogatory Nos. 5 and 6. As a state-owned holding company as defined under Chinese law as of November 26, 2007, Display was subject both to supervision by SASAC and management and supervision by the government through Group, which held absolute control over Display's operations, finances, and personnel.

Irico further states that Long Tao and Guo Mengquan have knowledge of this subject.

Irico further refers Plaintiff to documents Bates labeled IRI-CRT-00000001 to IRI-CRT-00000904.

**INTERROGATORY NO. 8**

Describe the role, if any, that Irico Group Electronics Co., Ltd. played in the management and/or supervision of Display from 2006 to 2008, including:

a.     The identity of all Persons with knowledge of such management and/or supervision; and

b.     The identity of all Documents which refer or relate to such management and/or supervision.

**RESPONSE TO INTERROGATORY NO. 8**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this interrogatory seeks information beyond the scope of what is relevant to resolving jurisdictional issues and beyond that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel. Irico also objects that this interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects to this interrogatory on the grounds that identification of "all Persons" and "all Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the case.  Irico also objects that this interrogatory seeks information that is publicly available.  Irico also objects that the terms "management" and "supervision" are vague and ambiguous, rendering this interrogatory overbroad and unduly burdensome.

Subject to and without waiving the objections stated above, Irico responds as follows:

Irico Group Electronics Co., Ltd. was established on September 10, 2004, under the approval of SASAC. As of November 26, 2007, Group held 75% of the shares of Electronics and maintained absolute control over Electronics. The directors, supervisors, and senior executives of Electronics were all determined by the Chinese government through Group. Group, under Chinese government control and as the "actual controller" of Display as defined under the 2006 Chinese Company Law, also determined the directors, supervisors, and senior executives of Display, directing Electronics to perform appointment and dismissal procedures on its behalf.

Irico further states that Zhu Xiaohang and Guo Mengquan have knowledge of this subject.

Irico further refers Plaintiff to documents Bates labeled IRI-CRT-00000001 to IRI-CRT-00000904.

**INTERROGATORY NO. 9**

Please describe with particularity all investigation or collection of information that Wenkai Zhang performed in connection with the preparation of his declaration, including:

    a.        The identity of all Employees, officers or agents of Irico with whom he

            communicated (whether oral or written) in connection with his declaration; and

b.      The identity of all Documents he reviewed in connection with his declaration.

**RESPONSE TO INTERROGATORY NO. 9**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this request seeks information and documents beyond the scope of what is relevant to resolving jurisdictional issues and beyond that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel.  Mr. Zhang's declaration is no longer at issue, because his declaration was submitted in support of Irico's Motion to Set Aside Default, which the Court has already decided.  Irico also objects that this request is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects that this request calls for information and documents that are privileged under the attorney-client privilege and work product doctrine. Irico also objects to this interrogatory on the grounds that identification of "all Persons" and "all Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the case.

**INTERROGATORY NO. 10**

Explain with particularity the basis for Your contention that Group was managed directly by the Chinese government (or a political subdivision thereof) through the filing of the original complaint herein, including:

a.      The identity of all Persons with knowledge of such management; and

b.      The identity of all Documents which refer or relate to such management.

**RESPONSE TO INTERROGATORY NO. 10**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this interrogatory seeks information beyond the scope of what is relevant to resolving jurisdictional issues and beyond that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel. Irico also objects to this interrogatory on the grounds that identification of "all Persons" and "all Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the case. Irico also objects that this interrogatory seeks information that is publicly available.  Irico also objects that the term "managed" is vague and ambiguous, rendering this interrogatory overbroad

1    and unduly burdensome.

2           Subject to and without waiving the objections stated above, Irico responds as follows:

3           See Irico's responses to Interrogatory Nos. 5 and 6.

4    **INTERROGATORY NO. 11**

5           Please describe with particularity the basis for the contention, as stated in paragraph 7 of

6    the Zhang Declaration, that "Irico Group's management, including its Legal Representative and

7    General Manager, was appointed directly . . . by the SASAC after 2003," including:

8           a.      The identity of all Persons with knowledge of the appointment of Group's

9                   management; and

10          b.      The identity of all Documents which refer or relate to the appointment of Group's

11                  management.

12   **RESPONSE TO INTERROGATORY NO. 11**

13          Irico reasserts and incorporates each of the General Objections and Objections to the

14   Definitions and Instructions set forth above.  Irico further objects that this interrogatory seeks

15   information beyond the scope of what is relevant to resolving jurisdictional issues and beyond

16   that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel.

17   Irico also objects to this interrogatory on the grounds that identification of "all Persons" and "all

18   Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the case.

19          Subject to and without waiving the objections stated above, Irico responds as follows:

20          See Irico's responses to Interrogatory Nos. 5 and 6.

21   **INTERROGATORY NO. 12**

22          Please describe with particularity the basis for the contention, as stated in paragraph 8 of

23   the Zhang Declaration, that "[a]t the time the DPP's original complaint was filed on

24   November 26, 2007, Irico Display was a State-owned holding company," including:

25          a.      The identity of all Persons with knowledge of the basis for the contention; and

26          b.      The identity of all Documents sufficient to support that contention.

27   **RESPONSE TO INTERROGATORY NO. 12**

28          Irico reasserts and incorporates each of the General Objections and Objections to the

IRICO'S OBJECTIONS AND RESPONSES TO          19          Master File No. 3:07-cv-05944-SC
DPP'S FIRST SET INTERROGATORIES                          MDL No. 1917

1   Definitions and Instructions set forth above.  Irico further objects that this interrogatory seeks

2   information beyond the scope of what is relevant to resolving jurisdictional issues and beyond

3   that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel.

4   Irico also objects to this interrogatory on the grounds that identification of "all Persons" and "all

5   Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the case.

6         Subject to and without waiving the objections stated above, Irico responds as follows:

7         See Irico's responses to Interrogatory Nos. 4 through 7.

8   **INTERROGATORY NO. 13**

9         Please describe with particularity the basis for the contention, as stated in paragraph 8 of

10  the Zhang Declaration, that "Irico Display's management was appointed by the State

11  Council-appointed management of Irico Group and reviewed by Irico Display's shareholders,"

12  including:

13        a.      The identity of all Persons with knowledge of the appointment of Display's

14                management; and

15        b.      The identity of all Documents which refer or relate to the appointment of Display's

16                management.

17  **RESPONSE TO INTERROGATORY NO. 13**

18        Irico reasserts and incorporates each of the General Objections and Objections to the

19  Definitions and Instructions set forth above.  Irico further objects that this interrogatory seeks

20  information beyond the scope of what is relevant to resolving jurisdictional issues and beyond

21  that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel.

22  Irico also objects to this interrogatory on the grounds that identification of "all Persons" and "all

23  Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the case.

24        Subject to and without waiving the objections stated above, Irico responds as follows:

25        See Irico's responses to Interrogatory Nos. 4 through 8.

26  **INTERROGATORY NO. 14**

27        Please describe with particularity the basis for the contention, as stated in paragraph 8 of

28  the Zhang Declaration, that "Irico Display's management was subject to the same regulations that

1   apply to state officials," including:

2          a.     The identity of all Persons with knowledge of the basis for the contention; and

3          b.     The identity of all Documents supporting the contention.

4   **RESPONSE TO INTERROGATORY NO. 14**

5          Irico reasserts and incorporates each of the General Objections and Objections to the

6   Definitions and Instructions set forth above.  Irico further objects that this interrogatory seeks

7   information beyond the scope of what is relevant to resolving jurisdictional issues and beyond

8   that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel.

9   Irico also objects to this interrogatory on the grounds that identification of "all Persons" and "all

10  Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the case.

11         Subject to and without waiving the objections stated above, Irico responds as follows:

12         See Irico's response to Interrogatory No. 5. The management of Irico Display and its

13  subsidiaries, as senior management of state-controlled companies, are regarded as performing

14  official state duties under Chinese law. As such, Display's management is subject to the Chinese

15  government's mandates for the integrity of state officials, relevant government anti-corruption

16  provisions, and supervision by the state Commission for Discipline Inspection. As described in

17  Irico's response to Interrogatory No. 5, SASAC regulations specify that Display's directors,

18  management, and other "responsible persons" are subject to disciplinary sanction and are liable to

19  compensate the State for any loss of State-owned assets caused by abuse of power or neglect of

20  duty.  In addition, Article 93 of the Chinese Criminal Law stipulates that "people engaged in

21  official duties in state-owned companies, enterprises, institutions, and people's organizations, and

22  those who shall be assigned to non-state-owned companies, enterprises, institutions, and social

23  organizations from state-owned companies, enterprises, institutions, and other persons who are

24  engaged in official duties in accordance with the law, shall be treated as state functionaries."  A

25  Notice issued by the Supreme People's Court and Supreme People's Procuratorate of China (the

26  highest Chinese court and prosecuting authority, respectively) clarified that the top management

27  in state-owned holding companies such as Display are considered state functionaries under this

28  law.  For example, between 2013 and 2015, three managers of a subsidiary of Display were tried

1   as public officials and convicted for accepting bribes during the course of their duties.

2          Irico further states that Yan Yunlong has knowledge of this subject.

3          Irico further refers Plaintiff to documents Bates labeled IRI-CRT-00000001 to IRI-CRT-

4   00000904.

5          **INTERROGATORY NO. 15**

6          Please describe with particularity the basis for the contention, as stated in paragraph 9 of

7   the Zhang Declaration, that "Irico Display was managed directly by the State Council-appointed

8   management of Irico Group and indirectly by the Ministry of Industry and Information

9   Technology of the State Council," including:

10         a.      The identity of all Persons with knowledge of the basis for the contention; and

11         b.      The identity of all Documents supporting the contention.

12  **RESPONSE TO INTERROGATORY NO. 15**

13         Irico reasserts and incorporates each of the General Objections and Objections to the

14  Definitions and Instructions set forth above.  Irico further objects that this interrogatory seeks

15  information beyond the scope of what is relevant to resolving jurisdictional issues and beyond

16  that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel.

17  Irico also objects to this interrogatory on the grounds that identification of "all Persons" and "all

18  Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the case.

19         Subject to and without waiving the objections stated above, Irico responds as follows:

20         See Irico's responses to Interrogatory Nos. 5 through 8.

21  **INTERROGATORY NO. 16**

22         Please describe with particularity the basis for the contention, as stated in paragraph 9 of

23  the Zhang Declaration, that "Irico Group directly appointed the management of Irico Display,"

24  including:

25         a.      The identity of all Persons with knowledge of the basis for the contention; and

26         b.      The identity of all Documents supporting the contention.

27

28

1  **RESPONSE TO INTERROGATORY NO. 16**

2        Irico reasserts and incorporates each of the General Objections and Objections to the

3  Definitions and Instructions set forth above.  Irico further objects that this interrogatory seeks

4  information beyond the scope of what is relevant to resolving jurisdictional issues and beyond

5  that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel.

6  Irico also objects to this interrogatory on the grounds that identification of "all Persons" and "all

7  Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the case.

8        Subject to and without waiving the objections stated above, Irico responds as follows:

9        See Irico's responses to Interrogatory Nos. 5 through 8.

10  **INTERROGATORY NO. 17**

11        Please describe with particularity the basis for the contention, as stated in paragraph 10 of

12  the Zhang Declaration, that "[a]ny major business decisions or transactions entered into or

13  contemplated by Irico Display required review and approval by Irico Group and/or the Ministry

14  of Industry and Information Technology of the State Council, or another appropriate department

15  of the State Council," including:

16        a.      The identity of all Persons with knowledge of the basis for the contention; and

17        b.      The identity of all Documents which support the contention.

18  **RESPONSE TO INTERROGATORY NO. 17**

19        Irico reasserts and incorporates each of the General Objections and Objections to the

20  Definitions and Instructions set forth above.  Irico further objects that this interrogatory seeks

21  information beyond the scope of what is relevant to resolving jurisdictional issues and beyond

22  that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel.

23  Irico also objects to this interrogatory on the grounds that identification of "all Persons" and "all

24  Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the case.

25        Subject to and without waiving the objections stated above, Irico responds as follows:

26        See Irico's responses to Interrogatory Nos. 5, 6, and 7.

27

28

**INTERROGATORY NO. 18**

Please describe with particularity the basis for the contention, as stated in paragraph 10 of the Zhang Declaration, that "Irico Display was required to submit financial statements and reports about operating activities and investments to Irico Group for review," including:

      a.      The identity of all Persons with knowledge of the basis for the contention; and

      b.      The identity of all Documents which support the contention.

**RESPONSE TO INTERROGATORY NO. 18**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this interrogatory seeks information beyond the scope of what is relevant to resolving jurisdictional issues and beyond that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel. Irico also objects to this interrogatory on the grounds that identification of "all Persons" and "all Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the case.

Subject to and without waiving the objections stated above, Irico responds as follows:

See Irico's responses to Interrogatory Nos. 5, 6 and 7.

**INTERROGATORY NO. 19**

Please describe with particularity the basis for the contention, as stated in paragraph 10 of the Zhang Declaration, that "[f]or some matters beyond Irico Group's authority—including (l) material investments by Irico Display, (2) mergers and acquisitions by Irico Display, (3) sale of shares resulting in a change in control over the company, (4) declaration of bankruptcy or cessation of operations by Irico Display, (5) financing, including issuance of stocks and bonds, and (6) proposed budgets—Irico Group had to obtain approval from the relevant agency of the State Council in order for Irico Display to take such action" and "[t]hus, Irico Display's business and operations were controlled and supervised by Irico Group, as well as the relevant departments of the State Council," including:

      a.      The identity of all Persons with knowledge of the basis for the contention;

      b.      The identity of all Documents which support the contention; and

c.     All instances in which approval was sought from, granted or denied in whole or in part by the "relevant agency of the State Council."

**RESPONSE TO INTERROGATORY NO. 19**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above. Irico further objects that this interrogatory seeks information beyond the scope of what is relevant to resolving jurisdictional issues and beyond that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel. Irico also objects to this interrogatory on the grounds that identification of "all Persons," "all Documents," and "all instances" is overbroad, unduly burdensome, and disproportionate to the needs of the case.

Subject to and without waiving the objections stated above, Irico responds as follows:

See Irico's responses to Interrogatory Nos. 5, 6 and 7.

**INTERROGATORY NO. 20**

Please describe with particularity Irico's sales and marketing of CRT Products in the United States during the Class Period, and/or attempts to sell or market any CRT Products in the United States during the Class Period, including:

a.     The identity of all Persons with knowledge of such sales and marketing and/or attempts to sell or market CRT Products in the United States; and

b.     The identity of all Documents referring or relating to such sales and marketing and/or attempts to sell or market CRT Products in the United States.

**RESPONSE TO INTERROGATORY NO. 20**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above. Irico further objects that this request seeks information and documents beyond the scope of what is relevant to resolving jurisdictional issues and beyond that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to Compel. Irico also objects that this request is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues. Irico also objects to this interrogatory on the grounds that identification of "all Persons" and "all Documents" is

1   overbroad, unduly burdensome, and disproportionate to the needs of the case.

2       Subject to and without waiving these objections and pursuant to Federal Rule of Civil

3   Procedure 33(d), Irico will produce or make available for inspection business records from which

4   the answer to this Interrogatory may be determined.

5       Irico further states that Guo Menquan and Long Tao have knowledge of this subject.

6   **INTERROGATORY NO. 21**

7       Please describe with particularity the basis for the contention, as stated in the Reply Brief

8   of Irico in Support of Motion to Set Aside Default (ECF No. 5229), that "the pricing activity that

9   DPPs allege to result from illegal conduct was mandated by the Chinese government," including:

10      a.    The identity of all Persons with knowledge of the basis for the contention; and

11      b.    The identity of all Documents which support the contention.

12  **RESPONSE TO INTERROGATORY NO. 21**

13      Irico reasserts and incorporates each of the General Objections and Objections to the

14  Definitions and Instructions set forth above.  Irico further objects that this request seeks

15  information and documents beyond the scope of what is relevant to resolving jurisdictional issues

16  and beyond that authorized under the Court's April 25, 2018 Order Denying Plaintiffs' Motion to

17  Compel.  Irico also objects to this interrogatory on the grounds that identification of "all Persons"

18  and "all Documents" is overbroad, unduly burdensome, and disproportionate to the needs of the

19  case.

20  Dated: May 4, 2018

21

22                          */s/ Stuart C. Plunkett*
                            Stuart C. Plunkett (State Bar No. 187971)
23                          stuart.plunkett@bakerbotts.com
                            BAKER BOTTS LLP
24                          101 California Street, Suite 3600
                            San Francisco, California 94111
25                          Telephone: (415) 291-6200
                            Facsimile: (415) 291-6300
26
                            John Taladay (*pro hac vice*)
27                          john.taladay@bakerbotts.com
                            Erik Koons (*pro hac vice*)
28                          erik.koons@bakerbotts.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER BOTTS LLP
1299 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone: (202)-639-7700
Facsimile: (202)-639-7890

*Attorneys for Defendants*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

## <u>CERTIFICATE OF SERVICE</u>

**In re: Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917**

       I declare that I am employed in the County of San Francisco, California.  I am over the age of eighteen years and not a party to the within case; my business address is: Baker Botts LLP, 101 California Street, Suite 3600, San Francisco, CA 94111.

       On May 4, 2018, I served the following document(s) described as:

**IRICO DEFENDANTS' OBJECTIONS AND RESPONSES TO DIRECT PURCHASER PLAINTIFF STUDIO SPECTRUM, INC.'S FIRST SET OF INTERROGATORIES**

on the following interested parties in this action:

| | |
|---|---|
| Guido Saveri (guido@saveri.com)<br>R. Alexander Saveri (rick@saveri.com)<br>Geoffrey C. Rushing (grushing@saveri.com)<br>Cadio Zirpoli (cadio@saveri.com)<br>Matthew D. Heaphy (mheaphy@saveri.com)<br>SAVERI & SAVERI, INC.<br>706 Sansome St # 200,<br>San Francisco, CA 94111 | Mario N. Alioto (malioto@tatp.com)<br>Lauren C. Capurro (laurenrussell@tatp.com)<br>Joseph M. Patane (jpatane@tatp.com)<br>TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP<br>2280 Union Street<br>San Francisco, CA 94123 |
| *Lead Counsel for the Direct Purchaser Plaintiffs* | *Lead Counsel for the Indirect Purchaser Plaintiffs* |

[ ]    (BY OVERNIGHT DELIVERY) I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or regularly utilized drop box of the overnight delivery carrier.

[ ]    (BY MAIL) by placing a true copy thereof in a sealed envelope with postage fully prepaid and addressed to the persons at the addresses as shown above.  I am readily familiar with the business practice of Baker Botts LLP for collection and processing of correspondence for mailing with the United States Postal Service, and the correspondence would be deposited with United States Postal Service that same day in the ordinary course of business.

[X]    (BY ELECTRONIC MAIL) I caused such documents to be sent to the persons at the email addressed listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on May 4, 2018, 2012 at San Francisco, California.

                               */s/ Stephanie DM Pearson*
                                 Stephanie DM Pearson

# EXHIBIT 3

# BAKER BOTTS LLP

| | | |
|---|---|---|
| 101 CALIFORNIA ST. | AUSTIN | LONDON |
| SUITE 3600 | BEIJING | MOSCOW |
| SAN FRANCISCO, CALIFORNIA | BRUSSELS | NEW YORK |
| 94111 | DALLAS | PALO ALTO |
| | DUBAI | RIYADH |
| TEL +1.415.291.6200 | HONG KONG | **SAN FRANCISCO** |
| FAX +1.415.291.6300 | HOUSTON | WASHINGTON |
| BakerBotts.com | | |

Stuart C. Plunkett
TEL: 415.291.6203
FAX: 415.291.6303
stuart.plunkett@bakerbotts.com

August 22, 2018

*VIA E-MAIL*

Guido Saveri (E-mail: guido@saveri.com)
R. Alexander Saveri (E-mail: rick@saveri.com)
Geoffrey C. Rushing (E-mail: grushing@saveri.com)
Cadio Zirpoli (E-mail: cadio@saveri.com)
Matthew D. Heaphy (E-mail: mheaphy@saveri.com)
SAVERI & SAVERI, INC.
706 Sansome St # 200
San Francisco, CA 94111

Re:     *In re: Cathode Ray Tube (CRT) Antitrust Litigation -*
         Master File No. 3:07-cv05944-JST; MDL No. 1917

Dear Geoffrey:

I write in response to your letter dated August 17, 2018.  Contrary to your assertions, Irico Defendants' Supplemental Objections and Responses to Direct Purchaser Plaintiff Studio Spectrum, Inc.'s First Set of Interrogatories ("Supplemental Responses") are not deficient and do not violate the Special Master's Order re DPPs' Motion for Jurisdictional Discovery (ECF No. 5320) ("Order").  Aside from a few minor issues that Irico agrees to clarify in its upcoming supplement, DPPs fail to identify any deficiency in Irico's Supplemental Responses.

Interrogatory No. 9

DPPs claim that Irico failed to describe Mr. Zhang's investigation performed in connection with the preparation of his declaration.  But Irico identified the documents Mr. Zhang considered, the name and position of all individuals who provided these documents to Mr. Zhang, the individuals who Mr. Zhang communicated with, and Mr. Zhang's best recollection regarding timing.  It is not clear what other information would be responsive, and your letter does not address what further information DPPs seek.

DPPs also claim that Irico does not adequately describe the information provided to Mr. Zhang, but in fact Irico has identified, to the best of Mr. Zhang's recollection, everything that

**BAKER BOTTS** LLP

*August 22, 2018*

was provided to him.  As stated in the Supplemental Responses, Mr. Zhang was provided the documents produced in Irico's first production, and Mr. Zhang considered the archival sales records that Irico has already made available for inspection.  DPPs complain that the identification of these documents is an evasion of the discovery order, but it is unclear what additional information DPPs seek.  Regarding the voluminous archival accounting records, it should be obvious that Mr. Zhang did not review the entire archive, but simply confirmed the absence of U.S. sales in those records.  Your letter suggests that Irico has not made these archives available, but that is plainly not true.  We have repeatedly made clear that these documents are available for inspection and asked if DPPs wanted to inspect them.  In fact, we explained that these documents were available for inspection in our initial responses, dated May 4, 2018.  Then again, during our August 3rd meet and confer we asked that DPPs provide dates that they would like to review the documents.  Then again, in our August 7th letter, we reiterated the availability of these documents for inspection, stating: "[e]nclosed is a description of documents that ***Irico is making available for inspection***, their location, and approximate volume."  Lest any confusion remain, these documents are and have been available for inspection.  If you would like to review them, please provide us with inspection dates, so Irico can make any necessary arrangements to facilitate your review.

DPPs state that the Supplemental Responses fail to provide the required date information, but Mr. Zhang provided his best recollection.  It is unclear what more information DPPs request.  With regard to DPPs contention that Irico has not identified the individuals involved in the preparation of the declaration, Irico will supplement its response to clarify that Mr. Zhang did not work with any individuals, aside from outside counsel, to prepare his declaration.

Finally, to the extent Irico has not already provided the information, Irico will supplement its response with any additional information it has regarding the work history of Zhaojie Wang, Yunlong Yan, Ye Yang, Tao Long, Mei Li, Hua Yang during the relevant time period.

Interrogatory No. 20

Below is the work history for Ximin Wang, Jianshe Wei, and Xiaolin Shen; which we will also include in our August 24, 2018 supplemental responses:

- **Ximin Wang:**

    - 08/1978 - 02/1988
        - Irico 4400 Plant, Technician
    - 03/1988 – 08/1994
        - Irico 4400 Plant CRT No.2 Plant, Director of the Electron Gun Department
    - 08/1994 – 10/1995
        - Irico 4400 Plant, Director of Technical Department

**BAKER BOTTS** LLP

August 22, 2018

- o 10/1995 - 01/1999
  - ▪ Irico Color CRT General Plant, General Manager of Sales Company
- o 01/1999 – 04/2001
  - ▪ Irico Group Corporation, Deputy Director of Technical Center
- o 04/2001 - 12/2004
  - ▪ Irico Group Corporation, Director of Manufacturing Department
- o 12/2004 – 07/2005
  - ▪ Irico Electronics, Assistant to the CEO and General Manager of the Operation Department
- o 08/2005 – 11/2007
  - ▪ Irico Electronics, Deputy CEO; Irico Display, Chairman of the Board of Directors
- o 12/2007 – 09/2011
  - ▪ Irico Display, General Manager
- o 09/2011 – 09/2013
  - ▪ Irico Group Corporation, General Economist and General  Manager of Shaanxi Branch (*retired*)

- **Jian-she Wei:**

  - o 08/1981 – 12/1989
    - ▪ Irico 4400 Plant, a Team Leader of part of an assembly line
  - o 12/1989 – 08/1990
    - ▪ Caizhu Electronic Industry Company, Deputy General Manager
  - o 08/1990 – 01/1999
    - ▪ Caizhu Electronic Industry Company (now named Zhuhai Caizhu Industry Company), General Manager
  - o 01/1999 – 11/2000
    - ▪ Irico Group, Sales Company, Deputy General Manager
  - o 11/2000 – 01/2004
    - ▪ Irico Group, Sales Company, General Manager
  - o 01/2004 – 05/2005
    - ▪ Shenzhen Caihong Huangqi Electronic Information Company, Director, Deputy Chairman of the Board of Directors, General Manager
  - o 05/2005 – 04/2018
    - ▪ Zhuhai Caizhu Industry Company, on leave (*retired*)

- **Xiaolin Shen**

  - o 03/1974 – 03/1977
    - ▪ Farmer
  - o 03/1977 – 03/1984
    - ▪ Shaanxi Province Bureau of Earthquake, Employee; Shaanxi Province Planning Committee, Employee.

# BAKER BOTTS LLP

August 22, 2018

- o 03/1984 – 01/1992
  - ▪ Irico Group Corporation, CRT Plant No. 1, Secretary of the company's office and Director of the company's office
- o 10/1992 – 08/2004
  - ▪ Irico Group Corporation, Sales Company, Assistant to the General Manager and Deputy General Manager
- o 08/2004 – 11/2007
  - ▪ Irico Group Corporation, Sales Company, General Manager
- o 11/2007 – 01/2009
  - ▪ Irico Display, Assistant to General Manager and General Manager of Sales Department
- o 01/2009 – 09/2013
  - ▪ Irico Display, Deputy General Manager, and General Manager of Sales Department
- o 09/2013 – 10/2015
  - ▪ Zhuhai Caizhu Limited Company, Managing Director (*retired*)

To the extent your letter addresses the Special Master's Order regarding the September 4, 2018 deadline, Irico will comply with that deadline.

Sincerely,

Stuart C. Plunkett

cc:   Mario N. Alioto (malioto@tatp.com)
      Lauren C. Capurro (laurenrussell@tatp.com)
      Joseph M. Patane (jpatane@tatp.com)
      Christopher Micheletti (cmicheletti@zelle.com)
      Qianwei Fu (qfu@zelle.com)

# EXHIBIT 4

Guido Saveri (22349)
    *guido@saveri.com*
R. Alexander Saveri (173102)
    *rick@saveri.com*
Geoffrey C. Rushing (126910)
    *grushing@saveri.com*
Cadio Zirpoli (179108)
    *cadio@saveri.com*
Matthew D. Heaphy (227224)
    *mheaphy@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, California 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*

MARIO N. ALIOTO, ESQ. (56433)
LAUREN C. CAPURRO, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA  94123
Telephone:  (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST |
| | MDL No. 1917 |
| This Document Relates To: | **NOTICE OF DEPOSITION OF DEFENDANTS IRICO GROUP CORPORATION AND IRICO DISPLAY DEVICES CO., LTD. PURSUANT TO FED. R. CIV. P. 30(b)(6)** |
| *ALL ACTIONS* | |

1 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2      PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6)of the Federal Rules of Civil

3 Procedure, Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs") (together

4 "Plaintiffs") will take the deposition of the person or persons designated by Defendants Irico Group

5 Corporation and Irico Display Devices Co., Ltd. ("Defendant").  The deposition will commence on

6 September 24, 2018 at 9:00 a.m. at [location in Hong Kong to be determined], and will continue

7 day to day until completed.

8      The deposition will be taken before a notary public or other person authorized to administer

9 oaths under applicable law, and will be conducted pursuant to Rule 30 of the Federal Rules of Civil

10 Procedure. Pursuant to Rule 30(b)(3), Plaintiffs reserve the right to record the deposition testimony

11 by videotape and instant visual display in addition to recording the testimony stenographically.

12 Plaintiffs reserve the right to use the videotape deposition at the time of trial.

13      Defendant is advised that Rule 30(b)(6) requires them to produce one or more witnesses at

14 the stated location and time who are aware of and prepared to testify about the Defendant's

15 knowledge, and not just information personally known by them, of the topics referred to in the

16 Schedule of Deposition Topics attached hereto as Exhibit A.  If the designated representative or

17 representatives do not have such knowledge, they are required to acquire it through whatever

18 reasonable investigation may be necessary.

19 DATED: September 9, 2018      By: */s/ R. Alexander Saveri*

20                          Guido Saveri
                           R. Alexander Saveri
21                          Geoffrey C. Rushing
                           Cadio Zirpoli
22                          Matthew D. Heaphy
                           SAVERI & SAVERI, INC.
23                          706 Sansome Street
                           San Francisco, California 94111
24                          Telephone: (415) 217-6810
                           Facsimile: (415) 217-6813
25

26                          *Lead Counsel for Direct Purchaser Plaintiffs*

27                          Joseph W. Cotchett
28                          COTCHETT, PITRE & McCARTHY, LLP

840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Steven F. Benz
Gregory G. Rapawy
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK,
   P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, DC 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999

*Attorneys for Direct Purchaser Plaintiffs*

DATED: September 9, 2018     By: */s/ Mario N. Alioto*     
MARIO N. ALIOTO, ESQ. (56433)
LAUREN C. RUSSELL, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA  94123
Telephone:  (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs*

Christopher Micheletti
Qianwei Fu
ZELLE LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
D (415) 633-1906
F (415) 693-0770
Email: cmicheletti@zelle.com
qfu@zelle.com

*Attorneys for Indirect Purchaser Plaintiffs*

**EXHIBIT A**

**Definitions**

1.      The term "Defendant" means defendants Irico Group Corporation and Irico Display Devices Co., Ltd.

2.      The term "Irico" means defendants Irico Group Corporation and Irico Display Devices Co., Ltd.

3.      The term "Group" means defendant Irico Group Corporation.

4.      The term "Display" means defendant Irico Display Devices Co., Ltd.

5.      The term "Person" or "Persons" means any natural person, corporation, or partnership, proprietorship, joint venture, or any business, legal, or government entity, organization, or association.

6.      "You" or "Your" mean the responding Defendant, its predecessors, successors, subsidiaries, departments, divisions, and/or affiliates, including without limitation any organization or entity which the responding Defendant manages or controls, together with all present and former directors, officers, Employees, agents, representatives or any Persons acting or purporting to act on behalf of the responding Defendant.

7.      "Or" and "and" should be construed so as to require the broadest possible response. If, for example, an interrogatory calls for information about "A or B" or "A and B," You should provide all information about A and all information about B, as well as all information about A and B collectively. In other words, "or" and "and" should be read as "and/or."

8.      The terms "Document" or "Documents" means the original and any non-identical copy of all items subject to discovery under Rule 34 of the Federal Rules of Civil Procedure. This definition includes any written, printed, reproduced, graphic, photographic, electronic, audio, visual, or video records, however produced or reproduced, of any kind or description, whether prepared by You or by any other Person, that is in Your possession, custody, or control, including, but not limited to, the following: emails; correspondence; memoranda; travel records; summaries; agreements; electronically stored information; papers; notes; books; invoices, letters; facsimiles; intra- and interoffice communications; transcripts; minutes or other records of Meetings; reports;

affidavits; statements; legal pleadings; calendars; appointment books; diaries; notebooks; telephone

logs; records of telephone conversations; compilations; work papers; graphs; charts; blueprints;

sales, advertising, and promotional literature; agreements; pamphlets; brochures; circulars;

manuals; instructions; ledgers; drawings; sketches; photographs; screen shots; video recordings;

audio recordings; film and sound reproductions; internal or external web sites; compact discs;

computer files and disks; and social media communications, including, but not limited to,

information posted on or transmitted through social networking platforms (*e.g.*, LinkedIn,

Facebook, MySpace and Instagram), digital file-sharing services (*e.g.*, Flickr), blogs and

microblogs (*e.g.*, Twitter), Voice Over Internet Protocol services (*e.g.*, Skype), and/or instant

messages.

> 9.     "Employee" means, without limitation, any current or former officer, director,

executive, manager, secretary, staff member, messenger, agent or other Person who is or was

employed by Defendant.

> 10.     The term cathode ray tube, or "CRT," means both (a) color picture tubes ("CPTs"),

which are CRTs used primarily in color televisions; and (b) color display tubes ("CDTs"), which

are CRTs used primarily in color computer monitors.

> 11.     The term "CRT Products" means electronic devices containing CPTs (such as

televisions) or CDTs (such as computer monitors).

> 12.     The term "Class Period" means the period from March 1, 1995 through November

25, 2007.

> 13.     The term "Relevant Time Period" means the period from January 1, 1995 through

the present.

> 14.     The term "Communication" or "Communications" means, without limitation, any

disclosure, transfer, or exchange of information, opinions, ideas or thoughts, by any means, face-

to-face Meetings, written, recorded, electronically, orally or otherwise, at any time or place under

any circumstances. This definition shall include communication via social media, including, but

not limited to, information, opinions, ideas, or thoughts, posted on or transmitted through social

networking platforms (*e.g.*, LinkedIn, Facebook, MySpace and Instagram), digital file-sharing

services (*e.g.*, Flickr), blogs and microblogs (*e.g.*, Twitter), Voice Over Internet Protocol services (*e.g.*, Skype), and/or instant messages.

15.     The term "Date" or "Dates" means the exact day, month and year, if ascertainable, or the best available approximation, including any relationship to other known events (designate whether exact or approximate).

16.     The term "Meeting" means, without limitation, any assembly, convocation, encounter, or contemporaneous presence of two or more Persons for any purpose, whether planned or arranged, scheduled or not.

17.     The term "China" means the People's Republic of China.

18.     The term "Zhang Declaration" refers to the Declaration of Wenkai Zhang in Support of Irico's Motion to Set Aside Default, ECF No. 5215-1, filed on October 25, 2017.

## Schedule of Topics for Examination

Witnesses with knowledge of the following matters during the Relevant Time Period (unless a time period is specified otherwise):

1.     The corporate formation, ownership, and purpose of Group and Display, including any basis for any contention by Irico that Group and Display engage in a public activity, and including any changes in status.

2.     Supervision of either Group or Display by officials of the People's Republic of China, including any specific instances of supervision or control that Irico contends are relevant to alleged organ status of Display.

3.     The inter-defendant Communications identified in Exhibit 11 to the Saveri Declaration or in the Leitzinger Report involving Irico, including any related internal Communications on or about the same Dates.

4.     Any sales, attempted sales, or contemplated sales by Irico, directly or indirectly, to the United States during the Class Period, including, but not limited to, sales through China National Electronics Imp. & Exp. Caihong Co., Irico Group Electronics Co. Ltd., Xian Irico Display Technology Co., Ltd., and/or Irico (USA) Inc.

5. All Documents and Communications that Wenkei Zhang reviewed or relied on in preparing his Declaration.

6. The preservation, or not, of evidence by Group and/or Display relevant to their FSIA defenses or the merits of this case, from 2008 to present.

7. The activities of Irico (USA) Inc. related to CRTs or CRT Products.

8. Any status, obligations, or privileges that Group or Display had under the law of the People's Republic of China during the period from 2006 to 2008.

9. The basis for the statement in the Zhang Declaration that "Irico declined to answer [the DPP's complaint] because it believed that Irico Group and Irico Display were immune from suit in the United States."

10. A complete description of Your transactional sales files for CRTs and/or CRT Products, including the transactional data for CRT and/or CRT Product sales produced by You in this action and the information contained in such data.

11. The pricing of CRTs during the Class Period, including pricing by Group and/or Display or any affiliate of Group and/or Display.

12. The pricing of CRT Products during the Class Period, including the relationship between the prices of CRTs and the prices of CRT Products.

13. Market research by Group and/or Display regarding the consumer market for CRT Products, including, but not limited to, studies or analyses generated internally or obtained from third parties.

14. The types or categories of customers (e.g., original equipment manufacturer (OEM), electronic manufacturing service (EMS), original design manufacturer (ODM), system integrator (SI), distributor, or retailer) to which Group and/or Display or any affiliate of Group and/or Display sold CRTs or CRT Products.

15. Any Communications that Group and/or Display or any affiliate of Group and/or Display had with the above-mentioned customers regarding the market for CRTs and/or CRT Products in the United States.

16.     Knowledge of Group and/or Display or any affiliate of Group and/or Display regarding the above-mentioned customers' sale of CRT Products to the United States.

17.     The worldwide market share of Group and/or Display for CRTs or CRT Products during the Class Period.

18.     The relationship, including any direct or indirect ownership and/or control, between China National Electronics Imp. & Exp. Caihong, Co., Xian Irico Display Technology Co., Ltd., and/or Irico (USA) Inc. on the one hand, and Group and/or Display on the other.

19.     The nature and extent of the search for Documents and/or information in response to Plaintiffs' discovery requests by Group and Display.

# EXHIBIT 5



September 13, 2018

**Certification**

**Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Simplified Chinese into English of: IPP Motion to Compel - Exhibit 15 and  IPP Motion to Compel - Exhibit 16.

Taisiia Tratcevskaia

Project Manager

Project Number: BBLLP_1809_019

15 W. 37th Street 8th Floor
New York, NY 10018
212.581.8870
ParkIP.com

**EXHIBIT 15**

# Information Weekly

Sales Company
70th Issue
July 8-15, 2005

| | Operating Conditions | Color TV Market | User Feedback | Industry News |
|---|---|---|---|---|
| **TCL** | 1. In January to June, a total of 4.675 million, 5.2473 million and 1.769 million sets of CTV were produced, sold and exported, with a decrease of 2%, 7% and 10%, respectively, compared with the same period last year;<br>2. Among them, a total of 1.07 million sets of 21"FS were produced, with a relatively large year-on-year decrease of 50%. A total of 0.52 million sets of 25"FS were produced, which was almost the same as that in last year. 0.647 million sets of 29"PF were produced, with a year-on-year increase of 50%;<br>3. A total of 0.595 million sets of 21"FS were exported, with a year-on-year decrease of 53%. A total of 1.769 million sets were sold overseas, accounting for 42% of total output. | 1. On July 14th, TCL Multimedia Group issued an announcement that they incorporated sales and marketing rights of TCL-Thomson Electronics Limited (TTE) in the North America and Europe held by Thomson at a price of 107.1 million Hongkong dollars;<br>2. From July 13 to July 31, a large environmental promotion campaign of "I consume and I am environmental–recycling electronic waste in your home" was brought out in each store of Suning and TCL in Beijing. Consumers who have an old color TV at home can buy any new electrical appliance at Suning at a discount by using the old color TV. Among them, consumers who want to buy a TCL color TV can get a discount of 100 Yuan to 500 Yuan depending on the depreciation condition. Old electrical appliances purchased by Suning and TCL will be sent to a national approved old electrical appliance recycling organization for harmless treatment, for which TCL may pay about one million Yuan, taking its responsibility as the world's largest color TV manufacturer. | 1. The priority is given to strategic partners, Thomson and Huafei, for purchase of color picture tube;<br>2. A great regret is given by OEM department for non-production of Irico 21"FS (thick);<br>3. It's required by "ERP" software system of TTE company that the supplier should deliver the goods according to the specified time and place, which hasn't been satisfied by Irico at present;<br>4. There are frequently unsmooth phenomena for handling of returned tubes;<br>5. Irico is ranked second for market share, which is only second to Thomson. | In July, Shenzhen Samsung transformed 29" compatible line body and planned to produce 29" tubes with a shorter diameter. |
| **Skyworth** | 1. It has been officially announced by Skyworth Digital a few days ago that Zhang Xuebin, executive director and president of color TV division, succeeded Wang Dianfu as CEO and Wang Dianfu only served as the chairman of the board of directors. Zhang Xuebin, new CEO of Skyworth, denied that Skyworth had evaded tax of 0.68 billion Yuan which was quite inconsistent with the facts;<br>2. It has been officially announced by Skyworth that they will commence production in this week. | 1. A discount of 40% was given to Yolo special machines and Konka was withdrawn from Sundan and no improvement was made by Suning; the price of flat panel LCD TV was continuously decreased;<br>2. The price of TCL 32" was decreased from 14 thousand Yuan/set to 10 thousand Yuan/set, and the price of TCL 37" was decreased from 17 thousand Yuan/set to 14 thousand Yuan/set. | 1. Variety and mark of magnetic field of color picture tube for sales overseas should be shown clearly;<br>2. Supplier of color picture tube of most OEM color TV is determined by the customer in advance. | |

CHU00124396_T

| | | | | |
|---|---|---|---|---|
| **Konka** | 1. In January to June, a total of 2.92 million, 3.335 million and 0.91 million sets of color TV were produced, sold and exported respectively, with a year-on-year decrease of 18%, 6% and 5%;<br>2. In the second quarter, a total of 0.61 million sets of color TV were sold overseas, which doubled the amount in the first quarter;<br>3. It showed an increase for flat screen and a decrease of universal screen. For example, the amount of 21"FS were decreased from 1.26 million sets in the same period in 2004 to 0.605 million sets in 2005, with a decrease of 52%. Moreover, in January to June of this year, a total of 0.39 million sets of 21"PF were produced, with a year-on-year increase of 31.7%. | With dull market, sales volume of Konka color TV is decreased by 15%, compared with 600 thousand sets in the same period of last year. | 1. Replenishment or refund for returned tubes should be conducted by Dongguan Konka as soon as possible;<br>2. A special meeting for coordinating supplementation of Irico 14" DC15 tube is hold by Dongguan Konka, which requires speeding up certification of Irico 14". Trial orders in a small batch will be issued quickly. | Changsha LG plans to suspend production in the 21" line for 10 days, 25" line for a week and 29" line for 15 days in July. |
| **Chang hong** | 1. In June, sales volume of CRT color TV of Changhong were continuously decreased, with a year-on-year decrease of 31% (sales volume in the same period of last year was 0.742 million sets); the inventory of complete machines was increased by 6% compared with that in the last month (0.4831 million sets).<br>2. In August, production amount for internal sales was reduced, which meant that only 0.28 million sets were produced. | 1. From July 8 to July 11, large trade-in activities were hold by Skyworth in several large supermarkets in Chengdu urban area, such as Carrefour, Ren Le, Auchan, Trust-Mart and Century Mart;<br>2. In this year, depreciation price of Skyworth is increased to 300-600 Yuan, which lasts for four days. For digital signal television with 16:9 display mode, 16:9 Tianjiao series of televisions are specified by Skyworth to be included in the activity of "exchanging analog television for digital television". What's more, old television, regardless of its size, can be converted to 500Yuan, for buying 16:9 Tianjiao series. | 1. Order number of Changhong should be marked in the delivery notice;<br>2. Partial CRT was affected with damp. At present, they are followed in the line, without large adverse influence. | In this week, salesmen of color picture tube manufacturers, apart from Seg Hitachi, have attended Changhong activity. |
| **Hisense** | Production condition of Huangdao Hisense was basically normally, and workers can normally take a rest on Saturday and Sunday. In the last third of July, about 0.12 million sets were produced. | 1.Recently, Hisense has successfully seized back international famous trademark from Siemens, and defeated Japanese Sharp in the "Contending for Hegemony by Hisense and Sharp", proving that Chinese color TV has a wining cost performance;<br>2. In the Qingdao home appliance stores, customers mainly buy CTV special machines. Among them, 21"FS 699 Yuan, 21"PF 899 Yuan, 29"PF 1,499 Yuan and 29" HD 1,999 Yuan are sold well. | In this week, Irico tubes with good quality are used. Trial flow of 200 21"PF (new AK) is planned to be conducted on July 16. | 1.At present, Samsung 25"PF (AK) is being researched and developed by Hisense for certifying sample tubes;<br>2.Personnel of Samsung have arrived for technical support. |
| **Haier** | 1. In this week, production amount was slightly decreased, which was within normal adjustment. For 21"PF (new AK) produced for exporting to the United States, preparations for the early stage are being | In the Qingdao and Hefei home appliance stores; there are little customers, and it's unsmooth to sell CTV color TV and flat panel television, of which the prices are stable. | 1. Sample tubes of Irico 21" (new AK) have a low luminance and American engineers have arrived at Qingdao Haier by air on 15th day for consultation;<br>2. Irico 21"FS (thick) and | 1. It's reflected by LG and BMCC that color picture tubes are sold poor;<br>2. In Hefei Haier, BMCC, Samsung 21" light tube and its |

   CHU00124397_T

| | | | | |
|---|---|---|---|---|
| | intensified;<br>2. In this week, three lines were started by Hefei Haier, which were mainly about 14"21" export machines. | | 21" (new AK) made by Hefei Haier don't match with Haier machine core, as they have different pressure differences. If it's planned to be manufactured, it's necessary to increase voltage of high-voltage package at that time;<br>3. There are also quality problems for 29"PF (100HZ) of Hefei Haier. Machine core of Haier had been taken back yesterday for testing. | export volume have exceeded those of Irico. Those with large screens are sold internally poor. |
| **Prima** | 1. LCD production amount in this month will hit a new high. 0.1 million sets are planned to be produced; production volume of PDP is very low.<br>2. Supply volume of 34"32" is very low or none. | Customers have little interest in CTV and wait to buy flat panel television with cash in hand. | Products specified in the additional order should be delivered on time. | In the recent three to four months, CRT has been delivered in dollars. The price of color picture tube is continuously decreased. |
| **Small and medium-sized enterprises in East China** | In January to June, a total of 643.43 thousand, 0.6295 million, 51.2 thousand and 0.341 million sets of Panda color TV had been produced, sold, stored and exported, with a year-on-year increase of production and marketing of 11% and 4%, respectively. Consumed amount of Irico tube was increased for 1.56 times on a year-on-year basis. Its occupancy rate has been increased to about 25%, which was risen from the fourth to parallel top 1 (LG). | On the one hand, air refrigerators are sold well; on the other hand, color TV is hard to be sold. | 1. It's required that a favorable price should be given to Irico 14" and 21"FS (thick) color picture tubes;<br>2. Jiang Kui started to establish the factory in the last year and several new models were developed by Wuxi Xindong. In January to June, they each manufactured 80,000 sets of color TV, using 100% of Irico tubes, hoping to be equally treated as large factories. | LCD manufacturer, LG Philips Company announced on July 11 that they will increase a capital of 2,410 dollars to the subsidiary in Nanjing, China, so as to further expand its production capacity. |
| **Soyea** | 1. In July, production amount is less than 30 thousand sets. It's predicted to produce 3,000 sets in August;<br>2. At present, as partial color picture tubes are sold at a loss, once the market is initiated, the price of color picture tube will be increased. Therefore, users may hoard small amount of color picture tubes at a low price in August. | In the Hangzhou home appliance market, it's very weak. In each day, only 3-5 sets of color TV can be sold, even none. In the weekend, it can be slightly better. Shipping malls are not confident and can't timely pay to complete machine factory, resulting in out of stock of some machines with small and medium-sized screens. | 1. There are returned tubes for Hangzhou Jinlipu, which should be quickly hauled back by specified trucks as soon as possible;<br>2. Jinlipu has a residual payment of more than 300,000 Yuan in the import and export company. Please assist in investigation and transfer it to the sales company for payment. | Manager Fan of Novel Color Picture Tube visited Manager Sun, so as to discuss about next demand intention for 21"FS with Jinlipu. But Manager Sun expressed that they have good cooperation with Irico at present. We shouldn't be careless and unconcerned and should strengthen tackling and services of Jinlipu. |
| **Summary** | 1. CTV production and marketing and export of complete machine factory in the first half year had the following three characteristics:<br>The first was decreased overall index: In January to June, a total of 17.3618 million, 20.1208 million and 5.1696 million sets of CTV were produced, sold and exported by seven color TV | From July, Changhong, Skyworth and TCL and others strongly promote "old for new service" of color TV, which is recognized and responded by many consumers.<br>The first is to activate sales of color TV in the off-season, improve its market share of the brand, and speed up the update of color TV;<br>The second is to improve | 1. Sample tubes of Irico 21" (new AK) have a low luminance and American engineers have arrived at Qingdao Haier by air on 15th day for consultation;<br>2. It's required by "ERP" software system of TTE company that supplier should deliver the goods according to the specified | 1. It's predicted that Shanghai Novel Color Picture Tube will be completely suspended on the 20th day of this month and try to manufacture 21"PF and 25"PF (AK);<br>2. Manager Fan of Novel Color Picture |

CHU00124398_T

| | | | |
|---|---|---|---|
| | manufacturers, respectively, with a year-on-year decrease of 11%, 4% and 14%; The second is that the three giants came a cropper one after another: 1. Output: a relatively large year-on-year decrease of Konka and Changhong was 18% and 51% respectively; 2. Sales volume: a year-on-year decrease of TCL, Konka and Changhong was 7%, 6% and 45% respectively; 3. Export volume: A year-on-year decrease of Changhong was 108%. The third is that a strong phenomenon against the trend was shown by Haier and Panda: in the first half year of 2005, a year-on-year increase of production, sales and export volumes of Haier CTV was 15%, 15% and 55% respectively; a year-on-year increase of production and sales of Panda CTV was 11% and 4% respectively. | cognitive level of consumers for digital television and flat panel television and other high-end products; The third is to facilitate handling purchasing psychology of consumers and provide the first-hand data for further adjustment of product structure by the factory. | time and place, which hasn't been satisfied by Irico at present; 3. Variety and mark of magnetic field of color picture tube for sales overseas should be shown clearly; 4. Supplier of color picture tube of most OEM color TV is determined by the customer in advance. 5. Small and medium-sized consumers hope to be equally treated as large factories in the off season. | Tube visited Manager Sun, so as to discuss about next demand intention for 21"FS with Jinlipu. |

CHU00124399_T

**EXHIBIT 16**

| **Information Weekly** | | **Sales Company**<br>**74th Issue**<br>**August 6-12, 2005** |
|---|---|---|

| | **Operating Conditions** | **Color TV Market** | **User Feedback** | **Industry News** |
|---|---|---|---|---|
| **TCL** | In the first half year, total sales volume of TCL color TV was decreased by 7%. In order to reverse unfavorable situation, in June to July, they intensified the export of color TV and explored new market, so as to enable overseas sales of color TV in July to be more than million Yuan, and overseas business of TCL has exceeded its domestic business; | 1. An announcement of TCL dated August 11 was given, which mentioned that its subsidiary TCL Multimedia had implemented according to *Equity Swap Agreement* previously signed by them and French Thomson Company; <br>2. Flat panel LCD TV of TCL has fully landed in Brazil, Mexico and Argentina and other South America districts, and entered local main sales channel of color TV. | 1. For delivery of defective tubes in Thailand by TCL, please confirm that:<br>(1) Whether all costs are assumed by Irico;<br>(2) Whether agency is assigned by Irico and shipment is arranged by Irico;<br>2. There is spark phenomenon for 14" (domestic sales), which has been respectively fed back to the No. 1 factory and after-sales department for countermeasure analysis. | |
| **Sky worth** | In the first half year, Skyworth is mainly engaged in production of high-end color TV, with flat screen and large screen TV accounting for about half. However, currently, those with low income account for a large proportion and there are still large demand potentials for color TV with small screen in the remote area. Recently, there is a large effort for promoting 21"FS, which shows an obvious effect. It's predicted that in the later period, there will be large demand for television with low prices in the color TV market in the village. | 1. Recently, Skyworth is aimed at rural market and will host a series of cultural performances "Skyworth Mood • Culture Way" together with CCTV in this week. The activity is aimed at expanding rural three or four-tier cities and township markets. Previously, a series of television for rural consumers were specially launched by Skyworth. | 1. In August, Skyworth prepares to initiate externally assisted production factory to produce color TV, and four factories have been temporarily determined now;<br>2. Handling problems that production is affected by 21"PF sticking-magnetic blocks which is put forward by Skyworth:<br>It should be solved from two aspects after communication: (1) Skyworth improves the current sucker facilities;<br>(2) Irico appropriately compensates for those affecting production (undetermined). | |
| **Kon ka** | Konka is stocking up color TV for the national day. At present, there is small inventory of color TV. In this week, a full-load production is implemented as planned. As terminal market of color TV has not been started, color TV of Konka is sold not very well. | 1. For flat panel television of Konka, LCD TV and plasma display panel TV with different specifications between 15 inches and 42 inches are developed;<br>2. After obtaining color TV order of 30,000 sets from Carrefour, recently, they also sign a supply contract of 50,000 sets of LCD TV with American home appliance chain retailer, Best-buy, setting the largest single order record for export of domestic flat panel color TV. | 1. From August, returned tube will be deducted from settlement order and Irico should supplement the returned tubes of Dongguan Konka before the end of the month;<br>2. Original delivery time of 15" for export sales can be postponed from current 8th day to the 10th day;<br>3. It's hoped to provide tube type of 15"PF Irico tube in the corresponding magnetic fields. | |

CONFIDENTIAL – GRAND JURY MATERIAL

| | | | |
|---|---|---|---|
| | | | |
| **Changhong** | 1. The production is basically normal; limited by bank acceptance scale, future payment should be implemented in spot exchange. 2. Export volume of Changhong is as planned and its production is stable. | 1. Changhong is gradually transforming from traditional household electrical appliance enterprises to personal consumer electronics and technology, content and service provider. It's emphasized by world famous laboratory that annual business income, brand value added index and brand strength coefficient of Changhong are largely increased compared with those in the same period of last year. 2. General sales of Changhong CRT TV have no obvious changes. But, there is a rising trend for sales of flat panel TV. Three specifications of flat panel televisions have been launched in some secondary and tertiary rural market in Sichuan for sales. | Irico 21"FS has a phenomenon of white image evenness. | Business personnel of all CRT manufacturers have attended Changhong activities in this week. |
| **Hisense** | Production amount in August almost doubled those in July. At present, subsidiaries have resumed normal production. Workers of Huangdao Hisense have a rest on Sunday and work normally at other time. | Sales volume of color TV in this week is basically the same as that in the last week and there is a sign of good in the rural market. At present, sales volume of 21"FS, 21"PF, and 29"PF (HD) is basically the same as those in the last week and there is no large change in the price of CTV. In this week, flat panel TV is sold better than the last week, because Beer Festival will be hold in Qingdao. | 1. It's put forward by Hisense purchasing department that in view of large demand recently, they hope that Irico can arrange shipment well to avoid affecting production; 2. Irico tube used in this week has good quality. 200 pieces of Huangdao 21"PF (new AK) have passed through trial flow. On the 12th day, it's necessary to produce 800 pieces in batch. | It's known that quotation of 25"FS provided by Shanghai Novel Color Picture Tube for Hisense is 34.5 dollars. |
| **Haier** | 1. Normal production and stable operation. Output of two varieties of 21" and universal screen of 25" is slightly increased and others are normal. 2. Nine lines are used for production at Hefei Haier without rest in one week. The output is increased, and the market situation is slightly improved. More Irico tubes are used and the varieties are increased. | 1. Products are still sold poor in the market, sales volume is basically the same as that in last week, and there is no sudden peak sales. There are few universal screen TV in stores. Flat screen TV and flat panel TV occupy the main position. It can be known from the volume that 21-inch flat screen TV is sold better; 2. They are cautiously optimistic about the market and psychologically nervous. At present, they are actively supplementing the inventory. If the market becomes good in the National Day, they are confident for the market at the end of the year. | Irico 21"PF has been recognized by American customers and can be supplied. | Supply volume of Chunghwa Picture Tubes for Haier is obviously decreased. |

CHU00124401_T

| | | | | |
|---|---|---|---|---|
| **Prima** | In this week, Prima CRT and LCD are producing at top speed. Production volume of PDP is still low; At present, there is little inventory of Prima and its capital condition is still difficult; goods for export sales should be completely delivered before September 15. | 1. Prima CRT and LCD are producing at top speed. Production volume of PDP is still low; At present, there is little inventory of Prima and its capital condition is still difficult; goods for export sales should be completely delivered before September 15.<br>2. Color TV market is still weak, and the price of color TV is basically unchanged; | Orders in September should be determined as soon as possible, so as to handle carry-forward application form as soon as possible. | Samsung has provided Prima with sample tube of 21" with short neck and is actively promoting. |
| **Panda** | As reflected by Nanjing Panda Sales Company, at present, 21"FS TV is sold well. So, its production plan in August is supplemented. | In this week, televisions popular in the Nanjing market mainly include 29"PF HD and 21"FS TV. But, the sales volume has no obvious difference compared with that in the last week and there is also no price change. | It's required by Wuxi Xindong that 832 pieces of 14-inch (export tubes) returned tubes should be delivered back to the factory for refund or exchange. | Nanjing Huafei gave a high-temperature vacation from August 1 to August 5. |
| **Small and medium-sized enterprises in East China** | In order to achieve the objective of 600,000 sets in the whole year, it's necessary for Soyea to increase production volume in the second half year, start to transfer the funds, and produce about 60,000 sets in each month as planned from September. | 1. The market isn't improved. But, distributors have started to use funds for home appliances used in summer to purchase TV;<br>2. It's believed by Minister Zhang and Section Chief Tian of Soyea that the market is still not optimistic in the second half year. But, considering the achievement of annual production objective, it's necessary to purchase color picture tubes in bulk and increase production volume. | 1. There are returned tubes of Hangzhou Jinlipu, which should be delivered back as soon as possible.<br>2. It's required by USTARTEK that the freight in RMB should be quickly converted to US dollars and remitted to the specified account. | 1. Shanghai Novel Color Picture Tube has little inventory of 21";<br>2. Shanghai Novel Color Picture Tube increases the production plan of 21"PF, but they are substandard;<br>3. 29"FS line of Shanghai Novel Color Picture Tube can be used to produce 29"PF after transformation. 8,000 pieces of 21"PF are produced in trial. 21"FS and 25"FS have been produced normally. |
| **Summary** | Reason for producing color TV by complete machine factories at top speed in August: The first is that the price of color picture tube has been reduced to a record low; The second is that complete machine factory strives to complete the whole-year production objective; the third is that the price in the color TV market is basically stable in the later period; the fourth is that they need to supplement the inventory for August, a traditional peak season. | 1. Complete machine factory and color TV distributors are quickly supplementing the supply of goods, and adopting various and scaled color TV promotion activities;<br>2. Although there is a sign of improvement in the color TV market, it's necessary to see inventory dynamics and money collection of complete machine factory in September, so as to research and determine whether the goods are sold well in the after-market;<br>3. As shown by specific data investigation results of Development Research Center of the State Council, the predicted total demand for TV in the rural color TV market this year is 15.6 million sets, which starts to exceed total demand in the city market. | 1. Irico tube used by Hisense in this week has good quality. **200** pieces of Huangdao **21"PF (new AK)** has passed through trial flow. On the 12th day, it's necessary to produce **800** pieces in batch.<br>**2.** Irico **21"PF** has been recognized by American customers and can be supplied.<br>3. It's put forward by Hisense purchasing department that in view of large demand recently, they hope that Irico can arrange shipment well to avoid affecting production. | **1.** Supply volume of Chunghwa Picture Tubes for Haier is obviously decreased;<br>2. Shanghai Novel Color Picture Tube has little inventory of 21"FS and increases the production plan of 21"PF, but they are substandard; 29"FS line can be used to produce 29"PF after transformation. 8,000 pieces of 21"PF are produced in trial. 21"FS and 25"FS have been produced normally. |

CONFIDENTIAL – GRAND JURY MATERIAL