# DOCUMENT 5

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

September 19, 2018

Honorable Vaughn R. Walker (Ret.)
Law Office of Vaughn R. Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA 94111
vrw@judgewalker.com

**Re:**   *In Re: Cathode Ray Tubes (CRT) Antitrust Litigation,* **MDL 1917/
Motion to Compel Supplement Discovery Responses From Irico**

Dear Judge Walker:

Indirect Purchaser Plaintiffs (IPPs) respectfully submit this reply in further support of their motion to compel responses from Defendants Irico Group Corporation and Irico Display Devices Co., Ltd. (together, "Irico" or "Irico defendants") to certain IPP discovery requests, and in response to Irico's opposition thereto.

**I.      Introduction**

Irico's opposition does not challenge the relevance of IPPs' requests other than to state, in a conclusory fashion, that it disputes it. *See* Opposition ("Opp.") at 2. Nor does Irico assert undue burden. Rather, Irico contends its proposal that IPPs travel to China to review millions of pages of Chinese-language documents (which are stored in three separate warehouses in two different cities over 700 miles apart[1]) is sufficient to satisfy its discovery obligations. It is not. The burden imposed on IPPs of extracting the requested information from a massive amount of Chinese documents with which IPPs have no familiarity would be extraordinary, and fails to satisfy the requirements of Federal Rule 33(d) of Civil Procedure. Irico should be compelled to provide narrative responses to Interrogatory Nos. 16, 17 and 18.

Similarly, Irico's bare assertion that they have *no* documents relating to direct or indirect sales of Irico CRTs, or products containing Irico's CRTs, to the United States is also insufficient. IPPs have no means to verify the truthfulness of Irico's assertion, since Irico has provided neither a sworn declaration attesting that it has no such documents nor any information regarding the parameters of its searches. Irico's failure to provide this information, combined with IPPs' unrefuted evidence showing Irico's indirect sales into the United States, necessitates an order requiring a renewed search and production. If

---

[1] *See* Decl. of Stuart Plunkett In Support of Irico Defendants' Opposition to Indirect Purchaser Plaintiffs' Motion to Compel Jurisdictional Discovery ("Plunkett Decl."), Ex. 1 at 9-10 (describing the locations of Irico's archival documents).

Hon. Vaughn R. Walker
September 19, 2018
Page 2 of 9

Irico maintains it has no documents or information, it should be required to state it under oath and provide full information regarding its search methodology.

## II.  Argument

### Interrogatory Nos. 16, 17, and 18

Irico contends that IPPs' motion to compel responses to IPPs' Interrogatory Nos. 16, 17 and 18 should be denied because Irico has made available for inspection millions of pages of archived sales and accounting records stored in three separate warehouses in two different cities—Xianyang and Beijing—in China. *See* Opp. at 2; Plunkett Decl., Ex. 1 at 9-10.

In order to produce business records in lieu of answering interrogatories, Irico must make a four-pronged showing to justify its use of Rule 33(d) of the Federal Rules of Civil Procedure. *See generally* 8B Wright & Miller, Fed. Prac. & Proc. Civ. § 2178 (3d ed.). First, the producing party must affirm that the information sought by the interrogatory in fact is available in the specified records. *Id.* Second, the producing party must specify for each interrogatory the actual documents where the information will be found. *Id.* Third, the producing party must be able to demonstrate that answering the interrogatory in the traditional manner would impose a burden on it. *Id.* Fourth and finally, the producing party must show that it would be no more burdensome for the moving party to review voluminous documents and extract responsive information than for the producing party. *Id.* Irico fails to fulfill any of these requirements.

First, Irico has not affirmed that the information sought by IPPs' interrogatories is in fact contained in the archived records. Irico's supplemental responses to IPPs' interrogatories, which it served on August 7, 2018 without a signed verification, do not refer IPPs to its archived records.[2] Prior to receiving Irico's opposition to this motion, the only indication that Irico was referring IPPs to its archives in response to these Interrogatories is a vague statement buried at the end of a long email chain back on August 10, 2018.[3] Counsel's statement in an email is not a substitute for a full and complete discovery response under oath.

Moreover, IPPs and Irico had several additional email exchanges during August 2018, and Irico's counsel never again asserted that the archived documents were responsive to IPPs' interrogatories.[4] Nor did counsel provide any of the information

---

[2] *See* Capurro Decl. Ex. 8 at 7-10 (Irico's Supplemental Responses to Interrogatory Nos. 16-18 merely list the CRTs they sold for each year of the class period by type (CPT vs. CDT) and size).

[3] *See* Opp. at 2 (citing August 10, 2018 email contained in Capurro Decl. Ex. 10 for the proposition that Irico informed IPPs it was making the sales and accounting records available in response to Interrogatory No. 18).

[4] *See, e.g.,* Capurro Decl. Ex. 10 (August 2018 emails).

regarding the archived documents that Irico now provides in its opposition to this motion to compel.  *See* Opp. at 2-3, Plunkett Decl. ¶ 2 (stating that "the accounting records Irico has made available include, for each domestic and international sale: the invoice serial number, product type, quantity, price, revenue, customer name (i.e. party invoiced), and destination.").

Second, referring IPPs to a mass of Chinese-language documents without "specify[ing] where in the records the answers [can] be found[,]" does not satisfy Irico's obligations under Rule 33(d).  *See Rainbow Pioneer No. 44–18–04A v. Hawaii–Nevada Inv. Corp.,* 711 F.2d 902, 906 (9th Cir. 1983) ("the records must be specified 'in sufficient detail to permit the interrogating party to locate and identify, as readily as the party served, the records from which the answer may be obtained.'") (citing former Rule 33(c), which is the same as current Rule 33(d), as set forth in Fed. R. Civ. Pro. 33, Advisory Committee Notes to 1993 Revisions).

In *Rainbow Pioneer,* an interrogatory asked about certain funds a party was alleged to have diverted to itself.  The party responded that "the answers could be found 'in partnership books of accounts, banking accounts, records, computer printouts, ledgers and other documents. . . .'" *Id.*  The Ninth Circuit held that this "answer" was inadequate because the party failed to specify precisely where in the records the requested information could be found.  *Id.*  Other courts have reached similar conclusions.[5]

Here, Irico has failed to even refer IPPs to the archived documents in sworn interrogatory responses, much less specify precisely which records contain responsive information in accordance with Rule 33(d).  Irico's descriptions of the categories and volume of its documents fall far short of the specificity required under Rule 33(d).  *See State of Colorado v. Schmidt—Tiago Construction Co.,* 108 F.R.D. 731, 735 (D. Colo. 1985) ("The appropriate answer when documents are to be used [under Rule 33(d)] is to list the specific document provided [to] the other party and indicat[e] the page or paragraphs that are responsive to the interrogatory.").

Third, Irico does not claim that answering the interrogatories in a traditional manner would impose an undue burden on it beyond what is required of a responding party under the Federal Rules.  In fact, as noted in IPPs' opening brief, Irico has provided

---

[5] *See, e.g., In re G–I Holdings, Inc.,* 218 F.R.D. 428, 438 (D.N.J. 2003) ("The option afforded by Rule 33(d) is not a procedural device for avoiding the duty to give information. The responding party may not avoid answers by imposing on the interrogating party a mass of business records from which the answers cannot be ascertained by a person unfamiliar with them. . . .  Rather, the responding party has a 'duty to specify, by category and location' the records from which he knows the answers to the interrogatories can be found"); *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 284 (C.D. Cal. 1996) (specification of records must be in sufficient detail to allow party to locate and identify documents from which the interrogatory answer may be ascertained, as readily as the party served).

some limited annual sales of CRTs in its responses to Interrogatories No. 16-17, which indicates Irico has access to some summary sales data. *See* IPPs' Motion to Compel Op. Br. at 6.

Finally, the burden of reviewing the voluminous records and extracting responsive information is far greater for the IPPs than it would be for Irico. Traveling thousands of miles to Irico's three facilities to review a mountain of Chinese documents will require several Chinese-speaking attorneys,[6] months of manual review, and prohibitive costs, with no guarantee that the requested information could be located.[7] Further, Irico's counsel have not been able to confirm whether, under Chinese law, IPPs would even be permitted to inspect, copy, and bring copies of the documents to the United States.[8]

In contrast, Irico is more familiar with its own Chinese documents hosted in its own facilities. In addition, it appears that Irico's counsel is also familiar with the documents and has already reviewed some of the documents since they recently produced invoice records between Irico and China National Electronics Import & Export Caihong Co. Consequently, Irico will be more easily able to locate the answers in the documents than would IPPs.

Irico's weak attempt to minimize IPPs' burden is unpersuasive. Opp. at 3, n. 3. Irico's own description of the documents indicates that there are *millions of pages* for the relevant time period. *Id. See also, e.g.,* Irico's Third Suppl. Obj. and Resps. to DPPs' First Set of Interrogatories (Plunkett Decl. Ex. 1 at 9-11) (describing "150 file cabinets and over 5,500 file boxes" containing "[a]pproximately 700 bound volumes of financial records for Irico Group, dated from 1995-2007," and "each volume ranges from 100-300

---

[6] IPPs currently only have one Chinese-speaking attorney working on this case and are unaware of any other IPP firm that employs a Chinese-speaking attorney. IPPs would therefore have to find Chinese-speaking contract attorneys to send to China, incurring still more costs.

[7] Courts have also held that "production of foreign business records without a translation runs afoul of Rule 33(d)." *Shinedling v. Sunbeam Prod. Inc.*, No. EDCV12438CJCSPX, 2013 WL 12171959, at *7 (C.D. Cal. Oct. 25, 2013); *Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 274 F.R.D. 437, 440 (E.D.N.Y. 2011) (same).

[8] During an August 3, 2018 call, DPP counsel asked if there are any legal impediments under Chinese law to copying the archived documents. Irico's counsel responded that he did not know if there are any restrictions on copying the archived documents. DPP counsel requested that Irico's counsel confer with his client and determine if there would be any restriction. Irico's counsel has not responded to this request. Second Capurro Decl. ¶ 2.

pages. . . ."). Courts have rejected a responding party's reliance on Rule 33(d) where much lesser volumes of documents were involved.[9]

The cases Irico relies upon—none of which address Rule 33(d)—are inapposite. All three cases address a party's document production obligations under Rule 34, not interrogatories.[10] Rule 34 is irrelevant here. The cases are also easily distinguishable on their facts. None of them involved millions of pages of foreign-language documents located abroad. The documents involved in *Earhugger* were located in Utah and the California plaintiff had not "met its burden to show it designated a location other than Utah, or that going to Utah to examine defendant's document would place a substantial burden on plaintiff." 257 F.R.D. at 220-221. In *Agri-Tech*, there is no discussion regarding the plaintiff's burden or whether the responsive documents were voluminous. 1990 WL 5731, at *1. In contrast, IPPs have made a detailed and convincing showing of the substantial burden involved to review Irico's voluminous documents in China. Finally, the 77-year old, half-page opinion in *Harris v. Sunset Oil*, 2 F.R.D. 93, provides no guidance regarding the issues here.

In light of the foregoing, Irico's attempt to shift to IPPs the burden of reviewing and extracting responsive information from its documents must be rejected. Irico should be compelled to provide complete, narrative responses to Interrogatory Nos. 16, 17 and 18. *See Kaneka Corp. v. Zhejiang Med. Co.*, No. CV 11-2389 SJO (SS), 2016 WL 11266869, at *8 (C.D. Cal. Oct. 18, 2016) ("If the responding party cannot identify which specific documents contain the answer to the interrogatories, they must completely answer the interrogatories without referring to the documents.") (internal citations omitted).

**Request for Production No. 18**

Irico also argues that IPPs' motion to compel Irico to produce documents responsive to RFP No. 18, which seeks communications with other CRT manufacturers

---

[9] *See, e.g., Calkins v. Pacel Corp.*, No. 3:07CV00025, 2008 WL 2311565, at *4 (W.D. Va. June 4, 2008) ("Clearly, a general reference to a 92–page list of documents, with no indication as to which of the documents, if any, contain answers to the interrogatory, does not "adequately and precisely specif [y] . . . the actual documents where information will be found" and therefore fails to comply with Rule 33(d).")

[10] *See* Opp. at 2 (citing *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215 (C.D. Cal. 2009), *Betts v. Agri-Tech Servs., Inc.*, No. 87-4110-R, 1990 WL 5731, at *1 (D. Kan. Jan. 23, 1990), and *Harris v. Sunset Oil Co.*, 2 F.R.D. 93, 93 (W.D. Wash. 1941) for the proposition that "[m]aking documents available for inspection fully satisfies **Fed. R. Civ. P. 34's** production obligation.") (emphasis added).

Hon. Vaughn R. Walker
September 19, 2018
Page 6 of 9

and/or Irico's customers regarding any actual or contemplated sales to the United States, should be denied because it allegedly has no responsive documents. Opp. at 3.

The evidence uncovered by IPPs shows that both Irico and the other CRT manufacturers were aware of the final destination of their customers' CRT televisions, including CRT televisions sold to the United States. It therefore defies belief that Irico has *no* documents responsive to RFP No. 18. Tellingly, Irico makes no effort to explain why—in the face of IPPs' evidence—it has no responsive documents. Instead, it attempts to explain away the significance of some of IPPs' evidence, and completely ignores the rest.

For example, Irico provides no explanation for the fact that its own 2004 public offering prospectus—a formal legal document —acknowledged that its CPTs "are used for television sets that are exported to the United States." This statement calls into question Irico's claim that it has no responsive documents regarding indirect sales of its CRTs to the United States. What is the basis of Irico's knowledge that its customers used Irico's CPTs to make televisions that the customers exported to the United States? Where are the underlying documents to back up such a statement?

Irico also has no response to the MT Picture Display March 2005 email chain attached as Exhibit 12 to the Capurro Declaration. This email chain shows that Chinese television maker, Hisense, approached several CRT makers—including Irico—regarding supplying CPTs for televisions intended for sale in the United States. *Id*. at 1 (discussing quote for "USA spot business" and noting that "Hisense already approached to Irico, BMCC, LPD & MTPDM."). The emails further indicate that Irico responded to the quote. *Id*. ("Irico & LPD already replied to them as a package price & committed US$38 for 21"PF.").

More broadly, the emails demonstrate that CRT makers were informed which television models their CRTs would be used for, *and* the ultimate destination of those televisions. Notably, the ultimate U.S. customer, Hisense USA, was involved in the transaction making it highly unlikely that Irico knew nothing about where its CRTs were going. *See id*. at 2 ("This project was directed from Hisense USA and Hisense Qingdao have to reply the price to USA by this evening."). How is it possible that Irico has no documents reflecting these communications with Hisense or others like them?

Irico argues that the two market reports produced by Chunghwa[11] "do not establish that Haier actually manufactured products using Irico's CRTs that were intended for sale in the U.S. or that Haier actually sold such products in the U.S." Opp.

---

[11] *See* Plunkett Decl. Ex. 5 (translations of Exs. 15 and 16 from Capurro Declaration). IPPs are using Irico's certified translations of these two documents for this motion. To the extent IPPs have objections to these translations, IPPs will serve those objections on Irico and attempt to resolve them in accordance with the translation protocol contained in the April 3, 2012 Order Re Discovery and Case Management, ECF No. 1128, at 16-18.

Hon. Vaughn R. Walker
September 19, 2018
Page 7 of 9

at 4. But this argument misses the point. Even if Haier never sold such products to the U.S., RFP No. 18 seeks documents relating to any sales or "*contemplated sales*" to customers in the United States. Thus, any documents relating to samples of Irico CRTs being tested by U.S. customers,[12] for example, would be responsive, regardless of whether Haier actually sold Irico's CRTs to the United States. Irico's argument suggests that Irico may have been improperly limiting its search for responsive documents.

IPPs also submitted these documents to show that U.S. customers had to approve the CRTs for televisions sold in the United States,[13] and to show that Irico engaged in this approval process with American customers and targeted the U.S. market. *See id.* (CHU00124401_T ("Irico 21"PF has been recognized by American customers and can be supplied."). It is simply implausible for Irico to claim, in light of such evidence, that Irico had no interactions with its customers regarding U.S. sales.

Finally, while it is true that these Chunghwa documents—standing alone—do not "establish" that Haier sold televisions containing Irico CRTs to the United States, they are strong circumstantial evidence that it did so. The Haier America television manual stating that Irico is the CRT manufacturer (Capurro Decl. Ex. 14 at p. 12)—which Irico also ignores—confirms that Haier did in fact sell televisions containing Irico's CRTs to the United States.[14]

Irico's failure to locate any documents responsive to RFP No. 18 suggests one of two things: either Irico's search is deficient[15] or Irico has improperly destroyed documents that were subject to a litigation hold. *See* April 4, 2008 Pretrial Order No. 1, ECF No. 230 at 5 ("**Evidence Preservation**. 13. All parties and their counsel are reminded of their duty to preserve evidence that may be relevant to this action. . . . [E]ach

---

[12] *See id.* (Ex. 15, CHU00124397_T: "Sample tubes of Irico 21" (AK") have a low luminance and American engineers have arrived at Qingdao Haier by air on 15th day for consultation.").

[13] *See id.* (Ex. 15, CHU00124396_T: "Supplier of color picture tube of most OEM color TV is determined by the customer in advance.").

[14] *See also* Capurro Decl. Ex. 13 at sheets 11-16 (showing Haier and other Irico top customers such as TCL, Konka, and Skyworth sold large quantities of CRT televisions to the United States in 2005). The fact that Exhibit 13 does not mention Irico in those pages (Opp. at 4) is irrelevant. The totality of IPPs' evidence confirms Irico's CRT sales to these customers and Irico's knowledge that its CRTs would be used for the U.S. market.

[15] Irico's descriptions of its archived records and the corporate governance documents it has produced to date indicate that Irico has limited its searches to centralized files. Communications with customers and other CRT manufacturers are more likely reside in individual custodial files, such as those belonging to Mengquan Guo, Zhaojie Wang—two of the witnesses whose depositions Plaintiffs have noticed. IPPs' review of Irico's document production to date indicates that Irico has not produced *any* documents from these witnesses' files. Capurro Decl. ¶ 3.

party shall take reasonable steps to preserve all documents, data, and tangible things containing information potentially relevant to the subject matter of this litigation. In addition, counsel shall exercise all reasonable efforts to identify and notify parties and non-parties of their duties, including employees of corporate or institutional parties, to the extent required by the Federal Rules of Civil Procedure.")

Irico's unsworn statement that it has no documents responsive to RFP No. 18, in conjunction with its inability to refute IPPs' evidence showing Irico's indirect sales into the U.S.—and Irico's demonstrated tendency to make untrue statements—necessitates an order requiring a renewed search and production. If Irico maintains it has no documents or information, it should be required to state it under oath and provide detailed information regarding the steps it took to locate the responsive documents. *See In re Porsche Cars N. Am., Inc.*, No. 2:11-MD-2233, 2012 WL 4361430, at *6-7 (S.D. Ohio Sept. 25, 2012) (finding defendants' privilege argument regarding their search protocol without merit and granting plaintiffs' motion to compel information regarding the steps defendants took to locate and produce responsive documents).[16]

Irico should also be compelled to respond to the DPPs' Interrogatory No. 16, which IPPs adopted as part of the joint discovery with DPPs, and which seeks information about the destruction of evidence.[17]

### III. Conclusion

For the foregoing reasons, the Irico defendants should be compelled to provide fulsome and detailed responses to IPPs' Interrogatories Nos. 16-18, and search for and produce all documents responsive to RFP No. 18 that are within their possession, custody and control.

Sincerely,

*/s/ Mario N. Alioto*
Mario N. Alioto

---

[16] Irico contends that IPPs will have an opportunity to examine its witnesses about the nature and extent of its search for responsive documents at Rule 30(b)(6) depositions in Hong Kong. *See* Opp. at 4. Plaintiffs' rights under Rule 30 and Rule 34 are cumulative, not alternative. Moreover, Irico counsel's refusal to provide information regarding its search effort suggests that the witnesses will likely be unprepared to testify meaningfully on this topic.

[17] Interrogatory No. 16 asks Irico to: "State whether any documents or information responsive to this set of interrogatories were destroyed, discarded, erased, deleted, purged, or otherwise lost." It then asks Irico to describe in detail the contents of each such document or information that was destroyed, the details of the circumstances, and the persons who deleted or destroyed such documents or information.

Hon. Vaughn R. Walker
September 19, 2018
Page 9 of 9

                                                  Lead Counsel for Indirect Purchaser
                                                  Plaintiffs

Cc:    John Taladay (via email)
        Stuart C. Plunkett (via email)
        Erik T. Koons (via email)
        Lillian Tom (via email)
        Jay Weil (via email)
        Thomas E. Carter (via email)
        Ashley Eickhof (via email)
        Kaylee Yang (via email)
        Yan Zhang (via email)
        R. Alexander Saveri (via email)
        Geoffrey C. Rushing (via email)
        Christopher T. Micheletti (via email)
        Qianwei Fu (via email)