Francis O. Scarpulla (41059)
Patrick B. Clayton (240191)
LAW OFFICES OF FRANCIS O. SCARPULLA
456 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 788-7210
Facsimile:   (415) 788-0706
Email: fos@scarpullalaw.com
          pbc@scarpullalaw.com

Paul B. Justi (124727)
LAW OFFICES OF PAUL B. JUSTI
1981 North Broadway, Suite 250
Walnut Creek, CA  94596
Telephone:  (925) 256-7900
Facsimile:  (925) 256-9204
Email:  pbjusti@comcast.net

Counsel for Objector Dan L. Williams & Co.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION**<br><br>This Document Relates to:<br><br>All Indirect-Purchaser Actions | Master File No. 3:07-cv-5944-JST<br><br>MDL No. 1917<br><br>**OBJECTOR DAN L. WILLIAMS & CO.'S OPPOSITION TO INDIRECT-PURCHASER PLAINTIFFS' FED. R. CIV. P. 62.1 MOTION FOR AN INDICATIVE RULING**<br><br>Date:  November 15, 2018<br>Time:  2:00 p.m.<br>Judge:  The Honorable Jon S. Tigar<br>Place:  Courtroom 9, 19th Floor |

# TABLE OF CONTENTS

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    APPLICABLE LEGAL PRINCIPLES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

III.   THE IPPS HAVE FAILED TO FILE A SUBSTANTIVE MOTION FOR RELIEF. . . . . 2

IV.    THE INDICATIVE RULING THE IPPs SEEK IS IMPROPER . . . . . . . . . . . . . . . . . .3

V.     IPPs' APPARENT RULE 60(b) REQUEST TO AMEND THE ORDERS
       ON APPEAL IS TIME-BARRED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI.    THE IPPs SEEK RELIEF THAT THE COURT CANNOT GRANT . . . . . . . . . . . . . . .7

VII.   ANALYSIS OF IPPS' PROPOSAL ON THE MERITS  . . . . . . . . . . . . . . . . . . . . . . . 9

VIII.  THE INDICATIVE-RULING MOTIONS' PROPOSED RELIEF IS
       SUBSTANTIVELY INADEQUATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

IX.    APPELLANTS' COUNSEL ARE NOT "PROFESSIONAL OBJECTORS" . . . . . . . . .16

X.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

OBJECTOR DAN L. WILLIAM & CO.S' OPPOSITION TO IPPs' FRCP 62.1 MOTION
Case No. 3:07-cv-5944, MDL No. 1917

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                           <u>Page(s)</u>

*Advocates for Individuals with Disabilities, LLC v. Midfirst Bk.,*
    No. CV-16-01969-PHX-NVW, 2018 WL 3545291 (D. Ariz. July 24, 2018) . . . . . . . . 6

*Amarin Pharm. Ireland Ltd. v. Food & Drug Admin*.
    139 F. Supp. 3d 437 (D.D.C. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Brodsky v. New England School of Law*
    617 F. Supp. 2d 1 (D. Mass. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Export-Import Bank of Republic of China v. Cent. Bank of Liberia*
    No. 1:15-CV-09565 (ALC), 2017 WL 6398726 (S.D.N.Y. Dec. 13, 2017) . . . . . . . . . 3

*Galvan v. Levine*
    490 F.2d 1255 (2d Cir.1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hanlon v. Chrysler Corp*.
    150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*In re Allstate Ins. Co*.
    400 F.3d 505 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Lithium Ion Batteries Antitrust Litig*.
    No. 13-MD-2420 (YGR),2014 WL 4955377 (N.D. Cal. Oct 2, 2014) . . . . . . . . . . . . .13

*In re New Motor Vehicles Canadian Exp. Antitrust Litig*.
    No. MDL 1532, 2011 WL 1398485 (D. Me. Apr. 13, 2011) . . . . . . . . . . . . . . . . . . . . 15

In *In re Web2B Payment Solutions*
    Case No. 13-2496, 2015 WL 1815864 (D. Minn. Apr. 22, 2015) . . . . . . . . . . . . . . . .1, 2

*Jeff D. v. Andrus*
    899 F.2d 753 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Jenkins v. City of Taunton*
    No. CV 15-10003-MBB, 2018 WL 326462 (D. Mass. Jan. 8, 2018) . . . . . . . . . . . . . 3, 5

*Kenning v. Berryhill*
    6:16-CV-06778-MAT, 2018 WL 1640598 (W.D.N.Y. Apr. 5, 2018) . . . . . . . . . . . . . 2, 3

*Lyon v. Agusta, S.P.A.*,
    252 F.3d 1078 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 6

*Medgraph, Inc. v. Medtronic, Inc*.
    310 F.R.D. 208 (W.D.N.Y. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Officers for Justice v. Civil Serv. Com'n of City & County of San Francisco*
    688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pearson v. Target Corp*.
    893 F.3d 980   (7th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ii

*Rabang v. Kelly*
    No. C17-0088-JCC, 2018 WL 1737944 (W.D. Wash. Apr. 11, 2018) . . . . . . . . . 3, 5

*Retirement Bd. of Policemen's Annuity & Ben. Fund of City of Chicago*
    *v. Bank of New York Mellon*
    297 F.R.D. 218 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Statutes and Other Authorities

Rule 23, Fed. R. Civ. Proc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*passim*

Rule 60, Fed. R. Civ. Proc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Rule 62.1, Fed. R. Civ. Proc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

§9 MA Consumer Prot. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

§407.025 MO stats. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Attorney General of Massachusetts – The Non-Profit Organizations/Public Charities
    Division, available at www.mass.gov/ago/bureaus/hcfc/the-non-profit-organizations-public-charities-division/ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

Paul Karlsgodt, *Setting the Record Straight on Class Action Claims Aggregators*,
    Class Action Blawg, April 28, 2011
    https://classactionblawg.com/2011/04/28/setting-the-record-straight-on-class-action-claims-aggregators/ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Megan Woolhouse and Jenn Abelson, "Tax-free New Hampshire Draws Mass. Shoppers,"
    The Boston Globe (Nov. 28, 2009) (available at
    http://archive.boston.com/business/articles/2009/11/28/tax_free_new_hampshire_draws_mass_shoppers/?page=full).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

3 NEWBERG ON CLASS ACTIONS, *Conflict subclasses and their requirements*
    § 7:31 (text at notes 44-47) (5th ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

iii

1

2

# I
# INTRODUCTION

3

Apparently concerned about the Ninth Circuit's reception to their oral argument

4

underscoring that the indirect-purchaser class-action settlement on appeal is fundamentally flawed,

5

and having failed after six months of wasted efforts to fix those flaws with the

6

Objectors/Appellants during the Court of Appeals-ordered mediation, the Indirect-Purchaser

7

Plaintiffs/Appellees ("IPPs") are now making one final stand to salvage their flawed settlement – a

8

settlement from which they stand to receive over $158 million in attorneys' fees.  Through their

9

Fed. R. Civ. P. Rule 62.1 motion for an indicative ruling, the IPPs seek to end-run the Ninth

10

Circuit's imminent ruling on the fairness of this indirect-purchaser, class-action settlement.  As

11

explained below, there are a multitude of reasons (both procedural and substantive) why this Court

12

should deny the IPPs' motion.

13

14

# II
# APPLICABLE LEGAL PRINCIPLES

15

If a timely motion is made for relief that the court lacks authority to grant because of an

16

appeal that has been docketed and is pending, the court may:  (1) defer considering the motion; (2)

17

deny the motion; or (3) state either that it would grant the motion if the court of appeals remands

18

for that purpose or that the motion raises a substantial issue.  Fed. R. Civ. P. 62.

19

One recent opinion sets forth the legal requirements for analyzing a Rule 62.1(a)(3)

20

motion.  In *In re Web2B Payment Solutions*, Case No. 13-2496, 2015 WL 1815864 (D. Minn. Apr.

21

22, 2015), an appellant moved the District Court for an indicative ruling pursuant to Rule

22

62.1(a)(3) to permit an amendment to a final judgment under Rule 60(b)(6).

23

In denying the 62.1(a)(3) motion, the Court held that consideration of the merits of the

24

proposed amendment to the final order had to pass muster before the motion for an indicative

25

ruling could be granted:

26

> Rule 60(b)(6) may be used to vacate a final judgment for any
> reason that justifies relief.  The rule affords courts the discretion
> to vacate judgment whenever such action is appropriate to accomplish
> justice.  Such relief, however, is 'exceedingly rare' because it
> requires an intrusion into the sanctity of a final judgment, and

27

28

1

therefore, it is available only in extraordinary circumstances. Circumstances are extraordinary when they have denied the moving party a full and fair opportunity to litigate his claim and have prevented the moving party from receiving adequate redress. The court may consider the public interest in assessing the propriety of vacatur.

No extraordinary circumstances exist here. RAC explains that it seeks vacatur as a condition of settlement. This alone is an insufficient basis to establish extraordinary circumstances …. RAC has also failed to establish that public interest would be served by vacating the orders. To the contrary, the public interest is advanced by denying vacatur because judicial determinations are presumptively correct and are valuable to the legal community as a whole. Nor has RAC established that it was denied a full and fair opportunity to litigate its claim. Instead, it appears that RAC seeks vacatur for the purpose of avoiding adverse consequences in the RAC/NABC litigation. This reason is far from extraordinary. (Citations and internal quotations in citation omitted.)

*In re Web2B Payment Solutions*, 2015 WL 1815864 at **2-3.

As in *Web2B*, no extraordinary circumstances exist here that would require any amendment to those final orders. All that the IPPs want to accomplish is to preserve flawed settlements and their fees. If IPPs really cared about fixing these settlements, they would permit the Ninth Circuit to issue its opinion and, if the order approving these settlements is reversed (which would, *a fortiori*, include the order awarding fees), start the settlement process over again, reducing their fee requests so that the indirect-purchasers in the Three Omitted States can get paid.

III

THE IPPs HAVE FAILED TO FILE A SUBSTANTIVE MOTION FOR RELIEF

The most fundamental reason for denial of their Rule 62.1 motion is that the IPPs have failed to file a substantive motion asking this Court for relief.   By its very terms, Rule 62.1 "only applies when a 'timely motion' (typically a Rule 60(b) motion) has been made for relief that the court lacks jurisdiction to grant, because of the pendency of an appeal." *Kenning v. Berryhill*, Case No. 6:16-CV-06778-MAT, 2018 WL 1640598, at *2 (W.D.N.Y. Apr. 5, 2018) (quoting *Medgraph, Inc. v. Medtronic, Inc.*, 310 F.R.D. 208, 210 (W.D.N.Y. 2015)).   In other words, "[a]bsent an underlying, predicate motion, there is no basis for relief under Rule 62.1." *Id.*

2

1    Here, the IPPs have not filed any substantive motion for relief.  They have submitted only a

2  motion for an indicative ruling under Rule 62.1.  But "there is no basis for a free-

3  standing Rule 62.1 motion," *id.*, and without a substantive basis for relief, the Court should deny

4  the IPPs' Rule 62.1 motion.[1]

5                                           IV
6            THE INDICATIVE RULING THE IPPs SEEK IS IMPROPER

7    "Indicative rulings under Rule 62.1(a)(3) serve a purpose of obviating the necessity for an

8  appeal." *Jenkins v. City of Taunton*, CV 15-10003-MBB, 2018 WL 326462, at *4 (D. Mass. Jan.

9  8, 2018) (citing *Export-Import Bank of Republic of China v. C. Bank of Liberia*, 1:15-CV-09565

10  (ALC), 2017 WL 6398726, at *2 (S.D.N.Y. Dec. 13, 2017)).  The rule's history sheds light on this

11  purpose.

12    Rule 62.1 was initially designed as a way for a trial court divested of jurisdiction because

13  of an appeal to inform the appellate court that the trial court would rule on a dispositive motion

14  that would vacate a judgment pending on appeal.[2]

15    Not unexpectedly, Rule 62.1 has limits:  indicative rulings are inappropriate where they

16  would interrupt the appellate process without proper justification, such as where an indicative

17  ruling would "have the potential for spawning future appeals."  *See Rabang v. Kelly*, C17-0088-

---

[1] While the *Kenning* court construed a party's Rule 62.1 motion as a "Combined Motion Pursuant to Rule 60(b) and Rule 62.1(a)," the movant in that case had made substantive arguments "under Rule 60(b)(1) and (6)." *Id.*  Here, IPPs do not even mention Rule 60(b) in their papers, let alone comply with its requirements.  Thus, the IPPs have furnished no basis for the Court to construe their motion as a motion under Rule 60.

[2] Indeed, the drafting history of Rule 62.1 reveals that "[t]he new [Rule 62.1] provisions were originally drafted as an addition to Rule 60, addressing only relief under Rule 60 pending appeal," but "the proposal was broadened to include all circumstances in which a pending appeal ousts district-court authority to grant relief." *Retirement Bd. of Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of New York Mellon*, 297 F.R.D. 218, 221 (S.D.N.Y. 2013) (quoting Report of the Civil Rules Advisory Committee, Dec. 12, 2006 at 14).  So while "nothing in Rule 62.1's language limits its application to Rule 60(b)," the purpose for which it was initially drafted continues to inform its current application.  *Id.* at 221.  Courts have consistently concluded that indicative rulings are appropriate where they would allow the district court to address motions that would "further the appeal or obviate its necessity."  *Id.* at 221.

JCC, 2018 WL 1737944, at *3 (W.D. Wash. Apr. 11, 2018) (denying a request for indicative ruling because "[e]ven if the Court of Appeals were to remand the case, any subsequent ruling by this Court would likely be appealed.  As a result, an indicative ruling could 'have the potential for spawning future appeals.'" (*quoting Retirement Bd. of Policemen's Annuity & Ben. Fund*, 297 F.R.D. 218 at 223)); *Amarin Pharm. Ireland Ltd. v. FDA*, 139 F. Supp. 3d 437, 447 (D.D.C. 2015) ("'an indicative rule [*sic*] on the very issue on appeal' would not promote judicial efficiency or fairness; to the contrary, it would 'only interrupt[] the appellate process.'" (*quoting Retirement Bd.,* 297 F.R.D. at 221)).

The IPPs are asking this Court to address a single issue that exists among a constellation of issues pending on appeal: the settlements' releases of damages claims belonging to indirect purchasers in the states of Massachusetts, Missouri, and New Hampshire (collectively, the "Three Omitted States") without consideration for such releases.

The IPPs argue that by addressing this single issue the Court can "moot the remaining appeals" that are proceeding in the Ninth Circuit (Mot. at 2).  But that is simply untrue.  The Objector/Appellants raised a variety of issues for reversal that exist separate and apart from the solitary issue IPPs are asking the Court to address through their motion for an indicative ruling:

| Appellate Case No. | Appellant | Issues |
|---|---|---|
| 16-16373; 16-16399; 16-16400 | Gianasca, *et al.* | Inadequate representation and conflict between damages classes and omitted repealer states; excessive fees. |
| 16-16378 | Dan L. Williams & Co. | Release of claims for no consideration; excessive fees. |
| 16-16379 | Rockhurst University, *et al.* | Inadequate representation for failure to plead adequate claims; stipulated away valid claims; represented classes with fundamental conflicts of interest; conflict between damages classes and nationwide class; inadequate notice; insufficient settlement amounts. |

1   Here, even if the IPPs were to obtain the relief they seek, the result would, at best, be

2   piecemeal: the Court would be addressing only one issue (among a multitude of appellate issues)

3   currently on appeal.  The purpose of Rule 62.1 indicative rulings is not to enable inadequate class

4   counsel to come in and attempt – after appellate briefing, oral argument, and six months of court-

5   ordered settlement efforts – to address one aspect of a settlement.  There are a multitude of

6   complex appellate issues under submission, and there is no scenario under which the fully-

7   perfected and already-argued appeals pending in the Ninth Circuit would be obviated.  This

8   deficiency alone renders IPPs' request inappropriate.  *See Jenkins*, 2018 WL 326462, at *4.

9   And not only would granting IPPs' requested relief fail to obviate the pending appeals,

10   such relief would cut in the opposite direction, actually creating a slew of additional appellate

11   issues that would have to be addressed by the Ninth Circuit alongside (and in addition to) the

12   pending appeal.  For example, if this Court were to grant the relief IPPs seek, the Court would be

13   inappropriately amending the underlying settlement agreements.  That would be reversible error,

14   and that error would have to be addressed by the Ninth Circuit .

15   But that is not the end of the additional appellate workload that would be spurred by the

16   IPPs' requested relief.  If the Court were to grant IPPs the relief they seek, the Court would then

17   need to issue additional notice, which – in turn – would allow class members to object and be

18   heard and, ultimately, appeal any adverse ruling.  Rule 62.1 indicative rulings are not meant to

19   spur additional appellate litigation.  Indeed, the rule is designed for the opposite purpose. *See*

20   *Rabang*, 2018 WL 1737944, at *3 (denying a request for indicative for ruling because "an

21   indicative ruling could 'have the potential for spawning future appeals.'").

22   V
   **IPPs' APPARENT RULE 60(b) REQUEST TO AMEND THE**
   **ORDERS ON APPEAL IS TIME-BARRED**

23   IPPs' request (if construed as a request for relief under Rule 60(b)) is also incompatible

24   with the grounds for relief generally available under that rule for motions brought in excess of one

5

1    year from the judgment.[3]  IPP counsel made a legal mistake when they excluded class members

2    making purchases in the states of  Three Omitted States from monetary relief.  That mistake –

3    which invited legal error – was enshrined in the final judgment well more than one year ago,

4    precluding relief under Rule 60(b)(1).[4]

5          The IPPs may argue that they are actually seeking relief under Rule 60(b)(6)'s catch-all

6    provision.  However, the Ninth Circuit has long rejected the use of Rule 60(b)(6)'s "any other

7    reason that justifies relief" as a basis for vacating the judgment on grounds that should have been

8    presented within one year under the rule.  *See Lyon v. Agusta, S.P.A.*, 252 F.3d 1078, 1088-89 (9th

9    Cir. 2001), *as amended*, (July 9, 2001) ("The long-standing rule in this circuit is that, clause (6)

10   and the preceding clauses are mutually exclusive; a motion brought under clause (6) must be for

11   some reason other than the five reasons preceding it under the rule.")[5]

12         The correct remedy is not a belated request for self-help under Rule 62.1 for an indicative

13   ruling based on IPP's invited legal error. This is a cloaked, improper use of Rule 60(b)(1), and the

14   legally-proper route to right IPP's error is by allowing the ordinary appeal process to go forward.

15

16

17

18

---

19
20   [3] *See*, Fed. R. Civ. P. 60(c)(1).  Federal Rule of Civil Procedure 60(b) provides that a "court may
     relieve a party or its legal representative from a final judgment, order, or proceeding" for
21   certain enumerated reasons. Fed. R. Civ. P. 60(b). As the Ninth Circuit has explained, Rule 60(b)
     "attempts to strike a proper balance between the conflicting principles that litigation must be
22   brought to an end and that justice should be done." *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir.
     2007).

23   [4] Rule 60(b)(1) allows a court to relieve a party from a judgment on the basis of "mistake,
     inadvertence, surprise, or excusable neglect," and is the only potentially applicable basis for relief
24   in this case.  Motions for relief under Rule 60(b)(1) must be brought within a year after entry of the
     judgment. Fed. R. Civ. P. 60(c).

25   [5] Although there is circuit law authorizing a district judge to correct legal errors *within* the one-
26   year period authorized by rule 60(b)(1), that precedent—even for timely motions—should not
     expand to encompass "relief under Rule 60(b) for a deliberate litigation choice [a party] has
27   made." *Advocates for Individuals with Disabilities, LLC v. Midfirst Bk.*, No. CV-16-01969-PHX-
     NVW, 2018 WL 3545291 *12 (D. Ariz. July 24, 2018).

28

OBJECTOR DAN L. WILLIAMS & CO.'S OPPOSITION TO IPPs' FRCP 62.1 MOTION
Case No. 3:07-cv-5944, MDL No. 1917

VI

THE IPPs SEEK RELIEF THAT THE COURT CANNOT GRANT

The IPPs are seeking relief that is beyond the Court's power to provide.  The IPPs contend they seek only very minor amendments to two of the orders that are presently on appeal:  (1) reducing the aggregate attorneys' fees awarded to IPPs' counsel in the attorneys' fee order by $6 million; and (2) altering the settlement agreements' plan of allocation (without also amending the settlement agreements themselves) to allow for indirect-purchaser class members in the Three Omitted States who were excluded from the settlements, to make claims.

But the IPPs misstate the relief they would *actually* have to obtain for such a last-minute amendment to fix the fundamental due-process error that plagues their current settlement.  The plan of allocation only grants monetary disbursements to certain indirect purchasers in separately-defined state damages classes (termed "Statewide Damages Classes").  Each of the separate settlement agreements *themselves* define which states comprise those Statewide Damages Classes, and the indirect purchasers in the Three Omitted States are not members of those certified damages classes.  To obtain the relief they seek, IPPs would need to amend each of the actual settlement agreements in order to add three *additional* state damages classes – not merely to amend the plan of allocation among class members.

The IPPs moved for preliminary approval of the 2015 settlements on May 29, 2015.  Because the class definitions come from the settlement agreements themselves**,** in that motion, the IPPs sought to certify a nationwide injunctive relief settlement class and 22 state damages classes.  (Dkt. 3861.)  This structure came from the settlement agreements themselves.  Indeed, each settlement agreement included the same class definition that anticipated only indirect purchasers in the 22 State Damages Classes, without regard to residency, would receive any monetary compensation, while indirect purchasers in the remaining states would release their claims without either monetary or equitable consideration compensation as part of the nationwide injunctive relief class.[6]

---

[6] Philips, Panasonic, Hitachi, Toshiba, Samsung, LG, and Thomson/TDA each incorporated into their settlement agreements the class definition from IPPs' Fourth Amended Complaint.  *See* (Dkt.

7

Pursuant to the written terms of each settlement agreements, only the indirect purchasers in the 22 States Damages Classes would receive any monetary compensation, as then governed by a plan of allocation for class members in those 22 damages classes.  *See* Dkt. 3861 at 26 ("The Plaintiffs propose to compensate members of the Statewide Damages Classes according to a plan of distribution, which provides that qualifying claimants will be eligible to claim their pro-rata share of the Settlement Fund based on the number of valid claims filed, and the number and type of CRT Products each claimant purchased during the class period.").

While indirect purchasers in each of the Three Omitted States were part of the nationwide injunctive relief class, they were not members of the state damages classes in the settlements, or in the final order approving them.  Thus, in order for IPPs' purported fix to work (and indirect purchasers in the Three Omitted States to obtain monetary relief as part of a damages class settlement), they would need to amend all of the settlement agreements (which specifies each of the state damages classes to which any plan of allocation can direct payment) in order to allow the Three Omitted States to recover monetary damages; a mere change in the plan of allocation among members of the 22 damage class members without a change in the settlement agreements would place the allocation in conflict with those agreements.

As a matter of law, the Court lacks the power to amend the underlying settlement agreements.  It would be legal error to do so, because only the indirect-purchaser plaintiff class representative and the named defendant in each of those settlement contracts can amend them – a point not only true at law, but also explicit in the agreements themselves.[7]  *See Jeff D. v. Andrus*, 899 F.2d 753, 758 (9th Cir. 1989) ("courts are not permitted to modify settlement terms or in any

---

3862-1) (Philips); (Dkt. 3862-2) (Panasonic); (Dkt. 3862-3) (Hitachi); (Dkt. 3862-4) (Toshiba); (Dkt. 3862-5) (Samsung); (Dkt. 1933-1) (LG); and (Dkt. 3876-1) (Thomson/TDA). Chunghwa incorporated the class definition from the Third Amended Complaint. (Dkt. 884-1) (Chunghwa settlement incorporating class definition from Third Amended Complaint, which included the same nationwide class and state classes as in the Fourth Amended Complaint).

[7] All relevant settlement agreements provide that they "may not be modified or amended except in writing executed by Plaintiffs and [named defendant], and approved by the Court."  "Plaintiffs" is defined in the opening paragraph as "the indirect-purchaser plaintiff class representatives."  *See* (Dkt. 3862-1, ¶ 35) (Philips); (Dkt. 3862-2, ¶ 33) (Panasonic); (Dkt. 3862-3, ¶ 34) (Hitachi); (Dkt. 3862-4, ¶ 35) (Toshiba); (Dkt. 3862-5, ¶ 35) (Samsung); (Dkt. 1933-1, ¶ 34) (LG); (Dkt. 3876-1, ¶ 35) (Thomas/TDA); (Dkt. 884-1, ¶ 35) (Chunghwa).

1    manner to rewrite agreements reached by parties."). So, if the Court were to grant IPPs' request

2    for such relief, the Court of Appeals would be tasked with reversing that impropriety. The IPPs'

3    motion for indicative ruling is an invitation that this Court commit reversible legal error. The

4    Court should reject such an invitation.

5

6                                            VII
                         ANALYSIS OF IPPS' PROPOSAL ON THE MERITS

7           The IPPs' motion also fails on the merits, and the relief they seek would cause more

8    problems than it remedies.

9           IPPs propose to pay the indirect-purchaser class-members in the Three Omitted States out

10   of IPPs' own previously-awarded fees in the hopes of obtaining peace with those clients.

11   However, to avoid a disabling of conflict of interest, these new indirect-purchaser class members

12   in the Three Omitted States need to have independent counsel appointed to represent them in any

13   proceeding establishing the amount of the IPPs' fee reduction. Otherwise, the ethical conflict of

14   interest would not only be clear, but further betray the fee-driven inadequacy of class counsel's

15   representation. *See generally* 3 NEWBERG ON CLASS ACTIONS, *Conflict subclasses and their*

16   *requirements* § 7:31 (text at notes 44-47) (5th ed.) ("Most critically, a court must assure that each

17   subclass has its own adequate class representative under Rule 23(a)(4) and adequate counsel under

18   Rule 23(g)."). So too, unfortunately, is the result of that ethical conflict: the members of the three

19   new damages classes would, as discussed below, receive on a pro rata basis a small fraction of the

20   sum made available to the 22 damages classes.

21          There is also a logistical roadblock to IPPs' plan, under which IPPs' Class Counsel alone

22   would reduce their aggregate $158,606,250 fee award by the $6 million (but not one cent more

23   even if additional amounts are needed to make new class members whole). That $6 million would

24   be added to the existing net settlement fund from the settlements that are the subject of these

25   appeals. However, although the IPPs never mention it in any of their recently-filed papers, the fee

26   allocation order (Dkt. 5122) would have to be amended for this scheme to work, not just the order

27   awarding aggregate fees (Dkt. 4740).

28

9

1    Such an amendment would be required, as there would be an amended order from this

2 Court awarding aggregate fees of $152,606,250 and a final fee allocation order from the Court

3 awarding individual fees to IPP counsel totaling $6 million more -- *i.e.,* $158,606, 250.  Assuming

4 the fee allocation order was also amended so that $6 million was added to the claimants'

5 settlement fund, then the indirect-purchaser settlement classes in each of the Three Omitted States

6 would need to be certified.  Class certification would require a new Notice (IPPs propose to

7 include it in the Mitsubishi Settlement Notice) to *all* potential class members in the Three Omitted

8 States, and would most likely engender litigation regarding the scope of those classes.  IPPs

9 propose that Notice and the right to file claims be limited to natural-persons in Massachusetts and

10 Missouri.  However, entities are permitted to make indirect purchaser claims in Massachusetts if

11 such entities are not engaged in trade or commerce (§9 MA Consumer Prot.).  Similarly, Missouri

12 entities can claim if the purchases were "primarily for personal, family, or household use"

13 (§407.025 MO stats.).

14    The inclusion of Massachusetts entities that are not engaged in trade or commerce would

15 increase the number of claimants in that state exponentially; which, incidentally, substantially

16 undercuts Mr. Schwartz's opinion that IPPs' proposal would have at most a *de minimus* effect on

17 the existing state damages classes, since it is based on including only natural-person consumers.

18 (Schwartz Dec., Dkt. 5335-2, at ¶ 15 ("only for New Hampshire do I estimate potential claims

19 from eligible business purchasers."))

20    The number of non-profits in Massachusetts that are not engaged in trade or commerce are

21 significant, *e.g.,* the non-profit universities and colleges, schools, hospitals, religious groups, to

22 name but a few.[8]  Compounding his error, Mr. Schwartz fails to consider that because New

23 Hampshire has no sales taxes, residents of surrounding states came into New Hampshire to

24

25

---

26 [8] The Massachusetts Attorney General's Non-Profit Organizations/Public Charities Division notes
that there are more than 23,000 such institutions in the state.  *See* Attorney General of
27 Massachusetts – The Non-Profit Organizations/Public Charities Division, available at
www.mass.gov/ago/bureaus/hcfc/the-non-profit-organizations-public-charities-division/.

28

1    purchase goods.[9]  These non-New Hampshire residents are part of the New Hampshire indirect-

2    purchaser class entitled to claim a part of the settlement fund so long as they purchased in New

3    Hampshire.[10]  This is also true of non-residents who purchased CRT products an Massachusetts

4    and Missouri.  Thus, IPPs' assumptions are flawed and will only engender further objections and

5    appeals without resolving the issues that have been fully briefed, and argued to the Court of

6    Appeals six months ago.

7         Because IPPs plan to combine the Three Omitted States' notice of sub-class certification

8    settlement with that of the Mitsubishi settlement, any resolution of these issues could not begin to

9    go forward until the IPPs re-file the Mitsubishi settlement, along with a renewed motion for

10    preliminary approval.  If that settlement is preliminarily approved, then notice must be given and

11    an opportunity to object and be heard; a final approval motion and hearing must be held; and, if

12    approval is granted, is subject to appeals.

VIII<br>
THE INDICATIVE-RULING MOTION'S PROPOSED<br>
RELIEF IS SUBSTANTIVELY INADQUATE

15         In the end, even if the Court could give them they relief they seek, IPPs' solution is

16    inadequate.  Most glaringly, the IPPs cannot overcome the fact that their proposed "solution" for

17    the exclusion of the Three Omitted States is the addition of a paltry $6 million—an amount that is

18    insufficient to compensate those millions of class members without reducing the amounts going to

19    the existing damages class members in the 22 states, whose settlement agreements contractually

20    entitled them to share *pro rata* in the net proceeds of the $576,750,000 settlement fund, without

21    the addition of the member of the 3 new states that were not class members.

22         As the IPPs' own damages study showed, total damages for all damages class members in

23    all of the 22 included states totaled an estimated $2.78 billion before trebling.  (Dkt. 4740 at p. 6).

---

[9] *See, e.g.*, Megan Woolhouse and Jenn Abelson, "Tax-free New Hampshire Draws Mass.
Shoppers," The Boston Globe (Nov. 28, 2009) (available at
http://archive.boston.com/business/articles/2009/11/28/tax_free_new_hampshire_draws_mass_shoppers/?page=full).

[10] Inclusion of these out-of-state indirect-purchasers who bought CRT products in New Hampshire
must be explicitly spelled-out in any notice program.

OBJECTOR DAN L. WILLIAMS & CO.'S OPPOSITION TO IPPs' FRCP 62.1 MOTION<br>
Case No. 3:07-cv-5944, MDL No. 1917

Applying the IPPs' expert's own analysis, class members in the Three Omitted States, who comprise 10.2% of the population of the 22 states (Schwartz Dec. at ¶14), would have damage claims totaling approximately $283.56 million before trebling.  Patently, the additional $6 million is insufficient to satisfy the claims of all indirect purchasers in the Three Omitted States under the terms of the existing Settlement Agreements – agreements that IPPs do not even purport to amend.

Undeterred, IPPs assert that if the claims rate from the Three Omitted States is similar to that experienced in the other 22 state damages classes in the settlement agreements, $6 million will be sufficient to pay any approved claims.

There are several problems with this logic.  First, the claims re-cap from the 22 certified state damages classes show that of 148,222 claims submitted, 138,681 were filed by individual claimants, totaling 3,672,630 units; the other 9,541 claims were filed by so-called "aggregators" – companies that submit claims for large corporations[11] – totaling 75,344,355 units.  *See* Schwartz Decl. at p. 4.  Due to the nature of their business model, the handful of aggregators in the U.S. do not require a notice program; so this asymmetry – less than 5% of the claims were made by persons who received notice through the notice program – tells us a great deal about the original notice program the IPPs used for these settlements: it was wholly inadequate for natural-person class members to whom the IPPs propose to limit the damages classes for two of the Three Omitted States.

Second, because the notice campaign for the 22 state damages classes covered in the written settlement agreements was proven inadequate, the IPPs cannot now leverage that campaign to justify a fractional settlement (one done without a settlement agreement, no less) for the Three Omitted States.  Repeating an inadequacy does not make it adequate.

One of the largest problems in this case is that Lead Counsel settled the case for just 20 percent of the estimated $2.78 billion in estimated single damages.  Dkt. 4740 at p. 6.  Thus,

---

[11] *See generally* Paul Karlsgodt, Setting the Record Straight on Class Action Claims Aggregators, Class Action Blawg, April 28, 2011, https://classactionblawg.com/2011/04/28/setting-the-record-straight-on-class-action-claims-aggregators/.

1    despite there being millions of consumers in 25 jurisdictions who suffered damages, the recovery

2    has been exhausted by just 150,000 claims.[12]  The global settlement has thus proved to be

3    insufficient to provide recovery for any meaningful percentage of the claimants.[13]

4             Additionally, the IPPs' proposal to amend the judgment (and to disregard the settlement

5    agreements as written) excludes some of the largest purchasers of CRTs in Massachusetts: entities

6    that are *not* engaged in trade or commerce, *e.g.*, non-profits, colleges, schools, religious

7    organizations.  But such claims are covered under Massachusetts law (*Brodsky v. New England*

8    *School of Law*, 617 F. Supp. 2d 1, (D. Mass. 2009))), and, given the nature of their endeavors, such

9    entities purchased large amounts of CRTs.  (Think of all the colleges and universities in and

10   around Boston alone, and how monitors have been part of the educational process and

11   infrastructure throughout the class period.)  The same problem exists for entities in Missouri that

12   purchased for personal, family or household use; Missouri law covers such claims ((§407.025 MO

13   stats.); *see also In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377 (N.D. Cal. Oct. 2,

14   2014) at *19 (recognizing validity of indirect purchaser plaintiff cause of action under the statute).

15   IPPs' proposal would exclude them.

16            Beyond the insufficiency of the amount being offered, the IPPs have proposed a fatally

17   insufficient form of notice to the Three Omitted States. *See Hanlon v. Chrysler Corp.*, 150 F.3d

18   1011, 1025 (9th Cir. 1998) ("Adequate notice is critical to court approval of a class settlement

19   under Rule 23(e).").  Contrary to IPPs' suggestion, such notice (including the right to opt out or

20   object) is required.

21

22

23   _____

24   [12] At oral argument before the Ninth Circuit, appellate counsel for the IPPs stated:  "Let's not
     forget about the consumers in the 22 other states.  Right now, they have filed something like
     150,000 claims that would gobble up that entire half a billion dollars."  Audio at 49:02-49:20,
25   available at https://www.ca9.uscourts.gov/media/view.php?pk_id=0000032294.

26   [13] In the *LCD Antitrust Litigation*, the total settlements amounted to $1.08 Billion or about 50% of
     the total damages of $2.1 Billion paid by many of the same defendants in the *CRT Litigation*,
27   where the price-fixing conspiracy lasted longer and the amount of effected commerce was
     substantially larger.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M-07-1827, 2013 WL
     1365900 at *7 (Apr. 3, 2013).  If *CRT* was settled on par with *LCD*, the amount would have been
28   about $1.5 Billion.

1  Under Rule 23(e) the "court must direct notice … to all class members who would be

2  bound" by a settlement.  Under the settlements here, each of the Indirect Purchaser State Classes

3  (the damages classes) is a class independent of the nationwide injunctive relief class.  As explained

4  above, to obtain the relief they seek, IPPs must certify three *new* damages classes – one for each of

5  the Three Omitted States. Because these would amount to *new* certified damages classes, notice

6  and an opportunity to opt out and object are required.  *See* Fed. R. Civ. P. 23(c)(5) ("When

7  appropriate, a class may be divided into subclasses that are each treated as a class under this

8  rule.").

9  Providing notice to the newly-formed damages classes is especially important because:  (i)

10 before they were class members, they could not object to the amount of the damages class

11 settlement; and (ii) they would be entitled to receive damages under IPPs' proposal, as opposed to

12 merely the prospect of injunctive relief they could have received under their former status as

13 members of only the nationwide injunctive relief class – thus a variety of new concerns are

14 implicated.  *See In re Allstate Ins. Co.,* 400 F.3d 505, 507 (7th Cir. 2005) ("'insofar as the relief

15 sought [in a class action] is prohibitory, an action seeking declaratory or injunctive relief ... is the

16 archetype of one where class action designation is largely a formality, at least for the plaintiffs.' In

17 contrast, when damages are sought, it is quite likely that some individual class members will want

18 to sue on their own (provided that the potential damages per class member are substantial) rather

19 than participate in a class-wide award, because they may have greater than average damages."

20 (*quoting Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir.1973)) (alteration in original)).

21 IPPs' citations to the contrary are misplaced.  They cite *Officers for Justice v. Civil Serv.*

22 *Com'n of City & County of San Francisco*, 688 F.2d 615, 618 (9th Cir. 1982), for the proposition

23 that the Three Omitted States need not be provided right to opt out or object to their new damages-

24 class designation.  But there is a critical difference between this case and *Officers for Justice*:  here

25 the Three Omitted States were *not* class members in the damages classes when notice was

26 published originally.  Unlike the officers, they had no way to know or guess that damages might be

27

28

OBJECTOR DAN L. WILLIAMS & CO.'S OPPOSITION TO IPPs' FRCP 62.1 MOTION
Case No. 3:07-cv-5944, MDL No. 1917

1    on the table when they had their chance to opt-out or object – which, as explained by the Seventh

2    Circuit above, involves a very different calculus.[14]

3         IPPs are also wrong to say that the new members of the Three Omitted States' damages

4    classes do not need an opportunity to opt-out or object because they did not opt-out or object when

5    their rights were being released, without any consideration, as part of the injunctive relief class

6    and, thus, should not now be heard to opt-out or object when things are (supposedly) getting better

7    for them.  The argument is self-defeating because it is impossible to opt-out of, or object to, a class

8    of which one was not a member.

9         But even if the IPPs' catch-22 argument were otherwise correct, it would still fail as to the

10   Objectors/Appellants:  they *did* object to the extent they could so they, at the very least would (as

11   this response suggests) object to the adequacy of the settlement.  If the Court were to overrule such

12   objections, then Objectors/Appellants would return this case to the Ninth Circuit, for a new round

13   of briefing and oral argument and, eventually, a decision; or the Court can allow the pending,

14   fully-briefed, and argued case before the Ninth Circuit to proceed to its natural conclusion, so all

15   parties can evaluate things in context of the law-of-the-case that results.

16        Relatedly, the IPPs are also incorrect that the members of the 22 previous damages classes

17   would not be entitled to receive new notice.  The Three Omitted States were strangers to the

18   damages settlement that those 22 classes entered; to add million of class members to that

19   settlement changes it materially.  "Material alterations to a class settlement generally require a new

20   round of notice to the class and a new Rule 23(e) hearing." *Pearson v. Target Corp.*, 893 F.3d 980,

21   986 (7th Cir. 2018) (citing *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 & n.10 (3d Cir.

22   2013)).

23        The IPPs are proposing to add additional money to a general settlement fund.  The premise

24   of IPPs' motion is that the claims made by members of the newly-certified Three Omitted States'

---

[14] IPPs also cite *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, MDL 1532, 2011 WL 1398485, at *1 (D. Me. Apr. 13, 2011) for the proposition that the newly-created Three Omitted State classes do not need to be given the opportunity to object or opt out.  Their construction of that case is misplaced, and the case itself inapposite.  In that case, it appears the district court was dealing with members within an allocation plan – not, as here, with newly-certified classes.

OBJECTOR DAN L. WILLIAMS & CO.'S OPPOSITION TO IPPs' FRCP 62.1 MOTION
Case No. 3:07-cv-5944, MDL No. 1917

damages classes would not exceed $6 million (and *certainly* not twice that sum), but their premise is incorrect: their estimate is based on erroneous assumptions about what types of entities will be able to make claims in each state.   Because of these erroneous assumptions, the $6 million added to the settlement fund will be grossly inadequate, and the members of the original 22 damages classes – now with millions of new fellow class members – will be adversely affected.  New notice will thus need to be given to all the class members.  *See Keepseagle v. Vilsack*, 102 F. Supp. 3d 306, 314 (D.D.C. 2015) (new notice required where amendment would adversely affect certain class members).

The IPPs also fail to discern the point that their motion to amend the aggregate fee award would, if granted, result in an order in direct conflict with the Court's February 28, 2017 Order (Doc. 5122) awarding a specific monetary fee to each of the IPP law firms.  That fee-allocation order is final, and three of the individual awards are the subject of separate appeals currently pending in the Ninth Circuit.[15]  Specifically, the requested gross fee award would still leave in place an order entitling the individual firms to payments that, when totaled, would exceed the new gross award by $6 million.  Accordingly, simply amending the gross fee order accomplishes nothing.

## IX
## OBJECTORS/APPELLANTS' COUNSEL ARE NOT "PROFESSIONAL OBJECTORS"

IPPs assert that they have settled with four of the seven objectors as of this date.  If so, those settlements did not result in any modifications to the settlement.  IPPs' Rule 62.1 motion is intended to circumvent the appeals of the remaining three groups of Appellants, who seek a restructuring of the entire settlement agreements to pay adequately all class members in the Three Omitted States out of Indirect-Purchaser Plaintiff Class Counsels' fees.  IPPs decline to offer enough of their fees to accomplish this end.  Instead, they have decided to attack counsel for the

---

[15] Appeal Nos. 17-15496; 17-15597; and 17-15598.

1   non-settling Objectors/Appellants, claiming that Appellants' Counsel are "professional objectors."

2   The slur is false, as IPPs surely know.

3          A.      John G. Crabtree.

4          Mr. Crabtree has worked in the areas of appellate practice and class action law since 1991;

5   he has been licensed to practice law in the State of Florida continuously since then and is in good

6   standing with the Florida Bar as well as the bars of Colorado and the District of Columbia.  He is a

7   member of the American Law Institute and a Florida Bar board-certified appellate specialist.  He

8   has represented clients in hundreds of appeals in state and federal appellate courts—orally arguing

9   in a variety of courts, including the Supreme Court of the United States.  He has represented both

10  individual plaintiffs and corporate defendants in dozens of class actions covering a wide range of

11  substantive issues.

12         Before this appeal, he (i) represented one objector in an appellate court; and (ii) due to a

13  putative class action in which he was lead counsel, successfully appeared in a district court for his

14  clients when they objected to a settlement in a related class action that would have otherwise ended

15  their pending case.  Mr. Crabtree's *curriculum vitae* is attached as Exhibit 1.

16         B.      Brian M. Torres.

17         Mr. Torres has been licensed to practice law in the State of Florida continuously since 1994

18  and is in good standing with the Florida Bar and several federal courts. He is a graduate of the

19  University of California at Berkeley, Boalt Hall School of Law (J.D. 1994), where he was an

20  associate editor for the *California Law Review* from 1992 to 1994.

21         Mr. Torres has served as trial counsel in more than 200 civil litigation cases, and he has

22  also appeared as appellate counsel in several dozen cases, including more than 20 cases as lead

23  appellate counsel. Mr. Torres is often involved in complex litigation, including class actions

24  venued in federal courts and the Complex Business Litigation sections of Florida circuit courts. In

25  only one other instance has Mr. Torres represented objectors to a class action settlement. Mr.

26  Torres's *curriculum vitae* is attached hereto as Exhibit 2.

27         C.      The Scarpulla Firm.

28

17

1      Mr. Scarpulla, a graduate of the University of California, Hastings School of Law,

2  specializes in prosecuting complex civil cases, primarily antitrust lawsuits, most of which are class

3  actions.  Throughout his over 50 years of practice, Mr. Scarpulla has participated in over 180

4  federal and state antitrust class actions, which have served to develop both state and federal law,

5  and in many of which he was in a leadership role.  Mr. Scarpulla has received more awards and

6  accolades than most antitrust lawyers in this nation; his *curriculum vitae* is attached hereto as

7  Exhibit 3.

8      In his 50 years of practice, Mr. Scarpulla has never objected to any class settlement – until

9  this one.

10

11                     X
                 CONCLUSION

12      For all of the foregoing reasons, Objectors respectfully request that the Court reject the

13  IPPs' request for an indicative ruling.

14  Dated:  October 15, 2018          Respectfully submitted,

15                    /s/  Francis O. Scarpulla

16                    Francis O. Scarpulla

17            Francis O. Scarpulla (41059)
            Patrick B. Clayton (240191)

18            LAW OFFICES OF FRANCIS O. SCARPULLA
            456 Montgomery Street, 17th Floor

19            San Francisco, CA 94104
            Telephone: 415-788-7210

20            Facsimile:  415-788-0706
            fos@scarpullalaw.com

21            pbc@scarpullalaw.com

22            Paul B. Justi (124727)
            LAW OFFICES OF PAUL B. JUSTI

23            1981 North Broadway, Suite 250
            Walnut Creek, CA  94596

24            Telephone:  (925) 256-7900
            Facsimile:   (925) 256-9204

25            Email:  pbjusti@comcast.net

26            Counsel to Objector Dan L. Williams & Co.

27

28

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing OBJECTOR DAN L. WILLIAMS & CO.'S OPPOSITION TO INDIRECT-PURCHASER PLAINTIFFS' FED. R. CIV. P. 62.1 FOR AN INDICATIVE RULING was filed *via* CM/ECF on October 15, 2018 and as a result has been served on all counsel of record *via* transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Francis O. Scarpulla
Francis O. Scarpulla

OBJECTOR DAN L. WILLIAMS & CO.'S OPPOSITION TO IPPs' FRCP 62.1 MOTION
Case No. 3:07-cv-5944, MDL No. 1917