Robert J. Bonsignore, Esq.
**BONSIGNORE TRIAL LAWYERS, PLLC**
3771 Meadowcrest Drive
Las Vegas, NV 89121
Phone: 781-856-7650
Facsimile: 702-852-5726
Email: rbonsignore@classactions.us

*Counsel for Objectors Gianasca, Comeaux,*
*Ashkannejhad individually and/or as Administrator*
*of the Estate of the Late R. Deryl Edwards, Jr.,*
*Ciccone and Craig*

Theresa D. Moore, Esq. (99978)
**Attorney at Law**
One Sansome Street, 35th Floor
San Francisco, CA  94104
Telephone:  (415) 613-1414
Email:  tdmoore@aliotolaw.com

*Counsel for Objectors Rockhurst, Garavanian, Talewsky*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 3:07-cv-5944 MDL No. 1917 |
|---|---|
| | **CLASS ACTION** |
| This Document Relates to: All Indirect Purchaser Actions | **JOINT OPPOSITION TO IPP COUNSEL'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING** |
| | Hearing Date: November 15, 2018 Time Set: 2:00 p.m. Judge:  Honorable John S. Tigar Courtroom: 9, 19th Floor |

# CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND .................................................................................................................4

ARGUMENT ......................................................................................................................7

I.  AMENDMENT OF THE JUDGMENT IS NOT A PROPER USE  OF A RULE 62.1
     INDICATIVE RULING ...............................................................................................7

II.  AMENDMENT OF THE JUDGMENT AND/OR THE ATTORNEYS' FEE ORDER
     WOULD BE A FUTILE AND WASTEFUL EXERCISE BECAUSE IT WOULD
     NOT OBVIATE THE NEED FOR APPELLATE REVIEW OR REVERSAL ...............10

     A.     The Settlement Class Certification Cannot Be Shielded from Appellate
            Review and Will Mandate Reversal of the Orders. .................................................10

     B.     The Issues on Appeal Concerning the Attorneys' Fee Order Cannot Be
            Avoided by the Proposed De Minimus Reduction. .................................................14

III.  IPP COUNSEL'S PERSISTENCE IN DISCOUNTING THE VALUE OF THE
     OMITTED REPEALER STATE CONSUMERS' CLAIMS IS LEGALLY
     INCORRECT AND FURTHER EVIDENCES INADEQUATE
     REPRESENTATION...................................................................................................14

     A.     The Omitted Repealer State Claims Are Worth $283 Million, Not the $6
            Million Pressed By IPP Counsel...........................................................................14

     B.     IPP Counsel's Refusal To Allow Claims of Omitted Repealer State
            Consumer Entities in Massachusetts Evidences a Continuation of the
            Alleged Lack of Vigorous Prosecution and Inadequate Representation. ..............15

     C.     The Proposed Alteration of the Allocation Plan and Attorneys' Fees Award
            Will Spawn Additional Appeal Issues. .................................................................20

CONCLUSION...................................................................................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Amarin Pharmaceuticals Ireland Limited v. Food and Drug Admin.*,
139 F. Supp. 3d 437 (D.D.C. 2015) ......................................................................... 8

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................... 11, 12

*Arcam Pharmaceutical Corp. v. Faria*, 513 F.3d 1 (1st Cir. 2007) ...................... 19

*Bynum v. Com.*, 711 N.E.2d 138 (Mass. 1999) ..................................................... 19

*citing Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303 (Mass. 2002) .......... 16, 17, 18

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ........................................... 11

*Defenders of Wildlife v. Salazar*, 776 F. Supp. 2d 1178 (D. Mont. 2011) ........... 10

*Factor King, LLC v. Block Builders, LLC*, 318 F.R.D. 585 (M.D. La. 2016) ......... 9

*General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147 (1982) ..................................... 11

*Her v. Regions Fin. Corp.*, 2007 WL 2806558 (W.D. Ark. Sept. 25, 2007) ........... 12

*Illinois Brick v. Illinois*, 431 U.S. 720 (1977) ...................................................... 17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-5944-SC,
2014 WL 1088256 (N.D. Cal. Mar. 13, 2014) ..................................................... 19

*In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390 (S.D.N.Y. 2011) ........... 18

*In re Flonase*, 692 F. Supp. 2d 524 (E.D. Pa. 2010) ............................................. 18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*,
55 F.3d 768 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995) .................................. 11

*In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377
(N.D. Cal. Oct. 2, 2014) ....................................................................................... 20

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
827 F.3d 223 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1374 (2017) .................. 9, 10

*In re Web2B Payment Sols., Inc.*, No. BR 11-42325, 2015 WL 1815864
(D. Minn. Apr. 22, 2015) ...................................................................................... 7, 9

*Lantner v. Carson*, 373 N.E.2d 973 (Mass. 1978) ................................................. 16

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ................................................... 12

*Purity Supreme, Inc. v. Attorney General*, 407 N.E.2d 297 (Mass. 1980) ........... 17

*Rabang v. Kelly*, No. C17-0088-JCC, 2018 WL 1737944
(W.D. Wash. Apr. 11, 2018) ................................................................ 7

*Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157 (9th Cir. 2013) ..................................... 11

*Retirement Bd. of Policemen's Annuity & Ben. Fund of City*
*of Chicago v. Bank of New York Mellon*, 297 F.R.D. 218 (S.D.N.Y. 2013) .............................. 13

*Salazar v. Butterball, LLC*, No. 08-CV-02071-MSK-CBS,
2011 WL 1211261 (D. Colo. Mar. 22, 2011) ................................................ 8

**Statutes**

Mass. St. 1978, c. 459, § 3 ................................................................. 18

Fed. R. Civ. P. 23 ......................................................................... 11

Fed. R. Civ. P. 62.1 ....................................................................... 7

M.G.L. c. 93, §§ 1–14A .................................................................... 17

M.G.L. c. 93A § 11 ................................................................. 16, 17, 18

M.G.L. c. 93A, § 9 ........................................................................ 17

Mo. Ann. Stat. §407.025 ................................................................... 20

ii

JOINT OPPOSITION TO IPP COUNSEL'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1
FOR AN INDICATIVE RULING
Case No. 3:07-cv-5944, MDL No. 1917

Class members and indirect purchasers of cathode ray tubes, Anthony Gianasca, Gloria Comeaux, Mina Ashkannejhad individually and/or as Administrator of the Estate of the Late R. Deryl Edwards, Jr., Rosemary Ciccone and Jeff Craig, by and through their counsel Bonsignore Trial Lawyers, PLLC, and Rockhurst University; Gary Talewsky and Harry Garavanian, by and through their counsel Theresa D. Moore, Esq., (collectively, "Objectors/Appellants") file this Opposition to Indirect Purchaser Plaintiff Counsel's Motion Pursuant to Federal Rule of Civil Procedure 62.1 for an Indicative Ruling (the "Motion") filed by Lead Class Counsel Mario Alioto ("Lead Counsel") [1] on behalf of the indirect purchaser plaintiffs ("IPPs" or "IPPs/Appellees") in the above-captioned multidistrict litigation (the "MDL") (*see* Doc. No. 5335).

## INTRODUCTION

This opposition is presented on behalf of two Objector/Appellant groups whose appeals of this Court's orders (1) certifying a nationwide settlement class and granting final approval to six settlement agreements and a distribution plan (Doc. No. 4712) (the "Certification Order" or the "Final Approval Order") and (2) approving a $158,606,250.00 attorneys' fee award (Doc. No. 4740) (the "Attorneys' Fee Order") are procedurally complete, orally argued and awaiting decision from the Ninth Circuit. The Objectors/Appellants are consumers in Massachusetts, Missouri and New Hampshire (the "Omitted Repealer States") who were included in the nationwide settlement class certification order at issue on appeal (the "Consumers").

IPP Counsel filed their futile Motion to achieve what they could not in the recently completed Ninth Circuit mediation process: impose a constitutionally deficient and unfair settlement of the three Omitted Repealer State Consumers' federal and state law damages claims, and thereby avoid an appellate decision on IPP Counsel's inadequate representation and potential reversal of the $158 million attorneys' fee award. IPPs seek to accomplish this feat through a paltry $6 million pay off – which constitutes a mere 1% increase in the $577 settlement pot for the

[1] Lead Counsel does not have an Executive Committee and has sole authority to make all final decisions. For ease of reading, Lead and Class Counsel shall be referred to herein as "IPP Counsel."

1

JOINT OPPOSITION TO IPP COUNSEL'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1
FOR AN INDICATIVE RULING
Case No. 3:07-cv-5944, MDL No. 1917

1  release of the valid damages claims of all Consumers in three states.  As detailed below, using the

2  figures provided by IPP Counsel's own expert, the evidence shows a damage value of $283 million

3  for those claims, before trebling.  *See, infra,* at 14-15.  IPP Counsel's patently deficient proposal

4  should not be entertained by this Court, and their untimely Motion is an abuse of Rule 62.1

5  proceedings because it will unnecessarily prolong, rather than eliminate, an inevitable appellate

6  opinion absent a true, mutually agreed upon settlement of the Objectors/Appellants' appeals.

7          The insufficiency of the amount offered by IPP Counsel should not obscure the fact that it

8  is now plain that the Omitted Repealer State Consumers' claims have worth.  IPP Mem. at 13.

9  Since 2012, Lead Counsel has repeatedly and consistently not valued the Omitted Repealer States'

10  claims, and has denied representing them, evidencing that he cannot be found to have been – or

11  presently be – an adequate representative of those three states' Consumers.  IPP Counsel's Motion

12  is an impermissible attempt to foreclose any appellate ruling finding the Orders violative of

13  Federal Rule of Civil Procedure 23(a)(4) as well as Rule 23(e).

14          Another fact highlights the speciousness of the notion that IPP Counsel should be given the

15  ability to value and control the Omitted Repealer States' claims.  That counsel is the very same

16  counsel who in the course of this appeal has aggressively attacked them.  *See* 9th Cir. Doc. No. 16-

17  16368, Answering Brief ("AB") at 48 ("none of the absent class members in those three states had

18  viable damages claims"); AB74 ("**Massachusetts, Missouri and New Hampshire Claims Are**

19  **Valueless**") (emphasis in original); AB44 (they are "meritless").  Lead Counsel has even taken the

20  *Defendants'* position over that of his putative class of Omitted Repealer States, asserting that

21  amendment to include them would be "highly prejudicial to [the Defendants]."  AB80.

22          By no stretch of the imagination do these positions or arguments evidence a counsel

23  dedicated to and zealously pursuing the interests of his clients.  It should not be ignored that these

24  statements and conduct are in addition to IPP Counsel's repeated failures to advocate for the

25  Omitted Repealer State Consumers throughout the MDL proceedings, and Lead Counsel's written

1   disavowal of any "duty to represent purchasers in other states" than the Included Repealer States"[2]

2   Doc. No. 4370 at p. 43 n.71.

3         It must also be remembered that regardless of Lead Counsel's conduct, the "amendments"

4   will not supply the absent named representative for the three Omitted Repealer States – the other

5   requirement for certification adequacy of representation that was not present here.  Notably, IPP

6   Counsel cannot supply any absent adequate representation with the belatedly submitted affidavits

7   of after-the-fact, untested individuals to act as pseudo-named representatives.  The fact that Lead

8   Counsel was able to locate three individuals – which he adamantly denied even existed during the

9   final approval and appeal proceedings – further evidences the disingenuousness of his prior

10  position that individuals who purchased a cathode ray tube ("CRT") television or computer screen

11  in the Omitted Repealer States during a twelve-year period to serve as class representatives were

12  not available.  These 13th hour additions cannot go back in time and fill the undisputed absence of

13  a subgroup and named representatives during the litigation and settlement process that resulted in a

14  stipulated order that valued the claims of the Omitted Repealer State Consumers at zero.  This

15  conduct by IPP Counsel establishes a conflict with the putative Massachusetts, Missouri and New

16  Hampshire class members which standing alone is enough to defeat class certification under Rule

17  23(a)(4).

18        One should not ignore the absence of and affronts to the Omitted Repealer State

19  Consumers' due process guarantees at issue in the Court of Appeals.  IPP Counsel's classic no

20  harm, no foul argument to support the proposal fails.  There is no case holding that an improper

21  certification of a settlement class can be remedied by altering distribution terms.  Once it is

22  determined that a subgroup of class members did not receive constitutionally guaranteed adequate

23

24  ───────────────

25  [2] IPP Counsel's deficient representation of the Omitted Repealer State Consumers has been
    described at length in the final approval-related and the appeal briefs, which are available to this

26  Court, and will therefore not be repeated in detail here.  As succinctly stated by the Massachusetts
    and Missouri Attorney Generals, "causes of action for damages [were] clearly available for

27  residents of [their] states that simply were not pursued by class counsel, were stipulated away, or
    were lost due to avoidable procedural missteps."  Doc. No. 4463 at 1.

28

3

OPPOSITION TO IPP COUNSEL'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1
FOR AN INDICATIVE RULING
Case No. 3:07-cv-5944, MDL No. 1917

1   representation during the litigation and in the process of reaching settlement, the resultant

2   settlement pot – no matter how large or how it is divvied up – is infirm.  The blackletter law that

3   settlement fairness is not the proper yardstick to evaluate settlement class certification confirms

4   this unavoidable fact.  An indicative ruling "amending" allocation to another figure will not

5   remove the certification issue from appellate consideration.

6        Granting the relief requested would be a futile and wasteful exercise for this Court because

7   it would that would unnecessarily complicate this lengthy litigation, spawn more appeals and

8   ultimately delay the resolution of the appeal.  The Motion should be denied.

9                                    **BACKGROUND**

10        MDL 1917 was intended to address the rights of all victims of an alleged price-fixing

11   conspiracy among CRT manufacturers.  The proposed IPP class included United States IPPs of

12   items, such as CRT computer monitors and television screens.  IPP overcharges were estimated to

13   exceed $2.78 billion.  Doc. No. 4712 at p.10.  Settlement agreements releasing the claims of all

14   IPPs against eight sets of Defendants were negotiated by Lead Counsel for 18% of those total

15   damages for a settlement pot of approximately $577 million.[3]  *Id*.

16        The approval proceedings in this MDL Court relating to those Settlements and underlying

17   IPP Counsel's Motion have been complete for over two years.  This Court entered its final order

18   and judgment certifying a settlement class, granting final approval to six class action settlements

19   (the "MDL Settlements") and approving the allocation of the settlement fund on July 7 and July

20   14, 2016, respectively.  Doc. No. 4717 (Judgment); Doc. No. 4712 (Order).  Thereafter, on August

21   3, 2016, this Court entered an order awarding approximately $159 million in class counsel

22   attorneys' fees.  Doc. No. 4740.  Objectors/Appellants promptly filed notices of appeal for both

23   orders in August 2016.

24

25   ───────────────

26   [3] This Court found that the settlements were not "on par" with similar settlements in similar cases.
     Doc. No. 4740 at p.6 (citing *In re TFT-LCD Antitrust Litig.*, No. 07-md-1827 SI, 2013 WL
     1365900, at *7 (N.D. Cal. Apr. 3, 2013)).  For example, Lead Counsel agreed to a $25 million
27   settlement with LG Electronics.  In the *LCD* IPP class action, LG paid over $300 million in
     settlement.

28

                                              4

The claims included in the Settlements fell into two broad categories:  repealer states, whose state laws allowed for the recovery of monetary damages for antitrust violations ("Repealer States") and non-repealer states whose state laws did not ("Non-Repealer States").  Within the context of the MDL Settlements at issue here, twenty-four states and the District of Columbia were deemed Repealer States and twenty-three states were deemed Non-Repealer States.  Prior to approval, Lead Counsel arbitrarily dropped the state law claims held by two Repealer States, Massachusetts and New Hampshire and never advanced Missouri's Repealer State claims.  Thus, the value of those claims to the IPP Consumers in those states was not included in the negotiations prior to or the actual Settlements.

There is no dispute that

1.  the Omitted Repealer State Consumers held similar state law damage claims as class members in the twenty-two other Repealer States (the "Included Repealer States") that entitled them to an economic recovery;

2.  the named representatives for the certified nationwide settlement class were all consumers from Included Repealer States (the "Named Representatives");

3.  the Named Representatives for the nationwide settlement class secured an economic recovery for the release of their claims in the Settlements;

4.  IPP Counsel assigned a value of zero to the Omitted Repealer State Consumers' state law damages claims in the litigation proceedings and the negotiation of the Settlements;

5.  the Omitted Repealer State Consumers did not receive representation of their state law damages claims in the negotiation of the settlement fund; and

6.  the Omitted Repealer State Consumers ultimately were forced to release their Repealer State claims for nothing.

Oral argument was heard by the Ninth Circuit Court of Appeals on April 10, 2018.[4]  At oral argument, the Ninth Circuit indicated its grave concern over the lack of representation given

---

[4] Argument access at https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000013465.

to the Omitted Repealer State Consumers.  The lynchpin issue primarily advanced by the

Objectors/Appellants was the absence of the dual safeguards that guarantee due process to non-

present class members as a prerequisite to subjecting them to class treatment and release of their

legal claims:  named class representatives and legal counsel who adequately represented their

claims.  The Justices' focus upon the proceedings leading up to the settlement – and the lack of

adequate representation in that process – was apparent:

> HON CLIFTON:  My problem now is that we've got a settlement teed up that purports to release - that does release claims on behalf of people from those states

> MR. MOSKOVITZ: Yeah.

> HON. CLIFTON: ...without appearing to have any return to them and without appearing to have anybody at the table speaking for them.

Audio: 33:56–34:15 (Tr. 27:23-25; 28:1-11).

> HON. WARDLAW:  what I want to know is, um, your view and whether or not the district court applied the wrong legal standard by looking to the distribution, the amount and value of the settlement, as opposed to whether every member of the class was adequately represented under *Amchem* and those - that line of cases.

Audio:  32:50 -33:06 (Tr. 27:6-12).

> HON. CLIFTON: My problem is at the end of the day, he strikes a deal that affects the claims of people from those states without a class representative from those states.

Audio: 40:40-49 (Tr. 33:23-25).

> HON. CLIFTON: I understand the practicality of - of settlement. I practiced law for a long time. I know defendants want complete peace. But you can't always get what you want. And in this case, who's at the table looking out for the people from Massachusetts, New Hampshire, and Missouri? Nobody.

Audio: 41:55-42:01 (Tr. 35:2-7).

> HON. CLIFTON:  Whi- which nobody seems to be much concerned about today.  We're talking about money.  And the people...

> MR. MOSKOVITZ:  No, I know that.

> HON. CLIFTON:  ...in Massachusetts are being told that your claims are being released, including...

> MR. MOSKOVITZ:  I realize that.

1    HON. CLIFTON:  ...whatever claims you might have for money, even though I didn't get
2    you any money and I didn't have any plaintiff as a class representative looking out after
     your particular interests.  How - how can that be?

3    Audio 27:50-38:09 (Tr: 31:1-11).

4         On April 30, 2018, the Court of Appeals referred the pending appeal to mediation.  9th Cir.

5    Doc. No. 210.  After court-ordered alternative dispute resolution efforts failed, the case was

6    returned to the Court of Appeals on October 1, 2018. The same day IPP/Appellees filed the instant

7    Motion for an Indicative Ruling, as well as a Motion For Stay in the Court of Appeals.

8

9                                      **ARGUMENT**

10                                          **I.**

11              **AMENDMENT OF THE JUDGMENT IS NOT A PROPER USE**
                **OF A RULE 62.1 INDICATIVE RULING**

12

13        IPP Counsel invoked Federal Rule of Civil Procedure 62.1 in filing a Motion for Indicative

14   Ruling on a Motion to Amend, asking this Court to issue an indicative ruling.  *See Rabang v.*

15   *Kelly*, No. C17-0088-JCC, 2018 WL 1737944, at *2 (W.D. Wash. Apr. 11, 2018) ("while a district

16   court's ruling is on appeal, the court is without jurisdiction to alter that ruling").  IPP Counsel's

17   reliance on Rule 62.1 is improper.  *See In re Web2B Payment Sols., Inc.*, No. BR 11-42325, 2015

18   WL 1815864, at *2 (D. Minn. Apr. 22, 2015).

19        At the outset, the Motion is untimely.  *See* Fed. R. Civ. P. 62.1 (a) ("If a timely motion is

20   made for relief that the court lacks authority to grant because of an appeal . . .").  Over two years

21   have passed since Objectors/Appellants filed their appeals.  The appellate process is on the verge

22   of completion and the Ninth Circuit is on the cusp of issuing its opinion.  IPP Counsel should not

23   be permitted to see how the briefing and oral argument process played, reassess the likelihood of

24   success, and then suddenly hedge their bet by forcing settlement upon the Omitted Repealer State

25   Consumers through a motion for an indicative ruling at last minute in this Court.  IPP Lead

26   Counsel could have at any point prior acknowledged his error in discarding the Omitted Repealer

27

28
                                             7

State Consumers' claims.  His failure to do so prior is inexcusable and should not be rewarded.

Even if this Court were to entertain this untimely Motion to Amend, it should be denied on the merits.  Rule 62.1 was intended to provide an opportunity for a district court to indicate whether the outcome it reached in a prior decision would change upon a remand.  *Salazar v. Butterball, LLC*, No. 08-CV-02071-MSK-CBS, 2011 WL 1211261, at *2 (D. Colo. Mar. 22, 2011).  Here, there would be no change.  There is no change in the law or any new evidence that was previously uncovered that would "obviate the need for the appeal."  *Amarin Pharmaceuticals Ireland Limited v. Food and Drug Admin.*, 139 F. Supp. 3d 437, 447 (D.D.C. 2015).

Moreover, IPP Counsel does not present this Court with simply an "amended" settlement allocation.  This is an entirely changed settlement of the Omitted Repealer State Consumers' claims, which conflicts with the terms of the prior, court-endorsed Settlement agreements, which included approval of a distribution plan, and which this Court already ordered.  *See, e.g.*, Doc. No. 3876-1.  In addition, conflicted counsel requests this Court approve a settlement of claims now conceded to have value that were not previously considered in a transparent move to maximize their fees while assigning a grossly insufficient value to the claims of the Omitted Repealer State class members.  IPP Counsel seeks this Court's stamp of approval in the hope that it will believe that something is better than nothing.  Notably, the $6 million figure Class Counsel wants to thrust upon the Omitted Repealer State Consumers cannot be evaluated against their prior valuation of the Omitted Repealer State claims at zero. Rather they are independent, viable legal claims that are entitled full legal valuation.  The proposed Omitted Repealer State claims' settlement, and valuation, were not the subject of the requisite approval process which provided for a reasonable opportunity to consider and analyze the proposal before them and to arrange for expert testimony prior to support any objections.  The task it assigns to this Court is unfair, improper and, in the context of Rule 23, unsupported.

8

OPPOSITION TO IPP COUNSEL'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1
FOR AN INDICATIVE RULING
Case No. 3:07-cv-5944, MDL No. 1917

1        Despite IPP Counsel's intimations to the contrary, the allocation plan cannot be so easily

2    altered.  The "plan of distribution" is an integral part of the settlement that was evaluated, analyzed

3    and approved in the same Final Approval Order now on appeal.  Doc. No. 4712.  IPP Counsel's

4    attempt to isolate and insulate the distribution plan from review as part of the settlement

5    agreements would fly in the face of the protections afforded absent class members by Rule 23 and

6    fundamental notions of due process.  *See In re Payment Card Interchange Fee and Merchant*

7    *Discount Antitrust Litig.*, 827 F.3d 223, 232 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 1374 (2017).

8    Of note, the recent amendments to Rule 23(e) which will become effective on December 1, 2018

9    make explicit that allocation is a matter of the required fairness review and approval process.  *See*

10   Proposed Amendments to the Federal Rules of Civil Procedure, adopted by the United States

11   Supreme Court, available at https://www.supremecourt.gov/orders/courtorders/frcv18_5924.pdf.

12   Therefore, any adjustment to the allocation plan would necessitate vacation of the Final Approval

13   and Attorneys' Fee Orders and a renewed final approval process and order.

14       Yet, the Motion plainly does not meet those stringent standards.  Vacatur of a judgment is

15   only appropriate to serve "the ends of justice" and is granted in "exceedingly rare" circumstances

16   because "it requires intrusion into the sanctity of a final judgment."  *In re Web2B Payment Sols.,*

17   *Inc.*, No. BR 11-42325, 2015 WL 1815864, at *2 (D. Minn. Apr. 22, 2015).  It is only granted in

18   "extraordinary circumstances . . . when they 'have denied the moving party a full and fair

19   opportunity to litigate his claim" and "have prevented the moving party from receiving adequate

20   redress.'"  *Id.*  The public interest is also relevant to consider.  *Id.*

21       There is no extraordinary, reason to disturb the sanctity of the Judgment.  *Factor King,*

22   *LLC v. Block Builders, LLC*, 318 F.R.D. 585 (M.D. La. 2016) (settlement agreement was not

23   extraordinary circumstance to merit vacation of order and indicative ruling).  In fact, there is no

24   permissible reason as the purpose of  this motion is to deprive Appellants of their right to have

9

1   their appeal considered by the Ninth Circuit.  *Defenders of Wildlife v. Salazar*, 776 F. Supp. 2d

2   1178, 1183 (D. Mont. 2011) (refusing to issue indicative ruling to force settlement upon non-

3   settling appellate parties, stating "it ill behooves any court to force a party to take medicine it does

4   not want, except by a determination on the merits.").  IPP Counsel has had every opportunity to

5   fully litigate this claim.  The public interest will suffer a disservice by cutting off appellate review

6   of a judgment that has the potential to rewrite the standards governing settlement class certification

7   by stripping away constitutionally guaranteed protections.

8

9                                                        II.

10

11   **AMENDMENT OF THE JUDGMENT AND/OR THE ATTORNEYS' FEE ORDER
     WOULD BE A FUTILE AND WASTEFUL EXERCISE BECAUSE IT WOULD NOT
     OBVIATE THE NEED FOR APPELLATE REVIEW OR REVERSAL**

12

13           IPP Counsel purportedly seeks an indicative ruling to bring the pending appeal to an end.

14   They incorrectly assert that the appeal will become moot if the allocation plan is changed to IPPs'

15   liking.  Imposition of a new allocation plan, even one that somehow includes the Omitted Repealer

16   State Consumers, will not negate any of the multitude of issues before the Ninth Circuit.  Rather, it

17   will spawn new appellate issues.  The same result would follow from any substituted Attorneys'

18   Fee Order.  Because the issuance of an indicative ruling by this Court will not obviate the need for

19   the pending appeal, the Motion should be denied.

20       **A. The Settlement Class Certification Cannot Be Shielded from Appellate Review
           and Will Mandate Reversal of the Orders.**

21

22           Appellate review of the settlement class certification cannot be avoided.  Without a valid

23   certification of a class, no settlement or allocation plan can be imposed upon its non-present class

24   members.  *In re Payment Card*, 827 F.3d at 231 ("Class actions and settlements that do not comply

25   with Rule 23(a)(4) and the Due Process Clause cannot be sustained.").  The standards governing

26

27

28

1   adequacy of representation for certification verses settlement fairness differ.[5]   Settlement fairness

2   under Fed. R. Civ. P. 23(e) is not a substitute for adequacy of representation during the litigation

3   and negotiation process as prerequisite to certification under Fed. R. Civ. P. 23(a)(4).  *Amchem*,

4   521 U.S. at 621-22.  The well-established factors that must be present for a certification order to

5   pass constitutional muster do not involve allocation.

6          Constitutional dictates require an analysis be performed that ensures the settlement class

7   members have been adequately represented by both named representatives and legal counsel to

8   prevent overbroad class definitions that sweep in class members who were not adequately

9   represented in the process.  *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161 (1982)

10  ("rigorous analysis" by district court required before certifying proposed settlement class);

11  *Amchem*, 521 U.S. at 622.  That analysis was not performed.  No change to allocation can correct

12  this reversable error.  *See Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) ("where, as

13  here, class counsel negotiates a settlement agreement before the class is even certified, . . . [t]o

14  survive appellate review, the district court *must show* it has explored *comprehensively* all factors.")

15  (emphasis added; internal citation omitted).  That issue is now with the Ninth Circuit. A ruling

16  herein would not change that fact and the appeal would continue.

17         Similarly, the actual factors that would establish adequate representation for certification

18  under Rule 23(a)(4), aligned named representatives and class counsel who vigorously protected

19  and advanced the Omitted Repealer State class members during the litigation process, are not

20  supplied by belated, adjustments to allocation.  *Amchem*, 521 U.S. at 613-14; *Radcliffe v. Experian*

21  *Info. Solutions Inc.*, 715 F.3d 1157 (9th Cir. 2013); *In re Gen. Motors Corp. Pick-Up Truck Fuel*

22  *Tank Products Liab. Litig.*, 55 F.3d 768, 801 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995).  In

23

24  _____

25  [5] The Supreme Court has explicitly stated that the separate protections for absent class members in
    Rule 23(a) are aimed to prevent a court from certifying a settlement class based upon its

26  overarching impression on the fairness of a settlement.  *Amchem Prods., Inc. v. Windsor*, 521 U.S.
    591, 621 (1997).  It has further stated that allowing fairness to control would disarm class counsel

27  because it could not use threat of further litigation to negotiate deal and the court because it would
    not have the benefit of adversarial litigation to inform its decision.  *Id.*

28

1  addition, IPP Counsel's after-the-fact attempt to satisfy the named class representative

2  requirements through the provision of affidavits from three individuals from each of Omitted

3  Repealer States has no effect whatsoever upon the Certification Order. Rather it only serves as

4  evidence supporting the claimed inadequate representation on appeal and does not provide any

5  support for the patently insufficient $6 million settlement figure.  The fact that the individuals

6  hand-picked and educated only by IPP Counsel, who have not been subject to the procedural

7  safeguards of the normal litigation and final approval process, would accept that sum does nothing

8  to support its imposition.

9       Also of particular relevance here, adequate legal representation for class members requires

10  their counsel not to take actions that would prejudice their rights.  *See Her v. Regions Fin. Corp.*,

11  2007 WL 2806558, at *2 (W.D. Ark. Sept. 25, 2007) (prior to class certification, lead counsel has

12  duty to protect substantive legal rights of putative class members *from prejudice*).  The statements

13  made by Lead Counsel on appeal foreclose the possibility of satisfying that standard.[6]  *See, supra*,

14  at 2.  Moreover, the new allocation does not create the subclasses for the Omitted Repealer State

15  Consumers that would have provided structural assurance of due process adequate representation.

16  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Ortiz v. Fibreboard Corp.*, 527 U.S.

17  815, 858 (1999).

18       IPP Counsel admits that the Panel's view was that the Omitted Repealer State Consumers

19  "should be permitted to file claims for monetary compensation."  Notice and Mot. at 1.  They

20  ignore the reason underlying that "suggestion":  the violations of due process that resulted in IPP

21  Counsel presenting a settlement class which excluded the Omitted Repealer State Consumers from

22  that monetary compensation.  Those failings cannot be remedied by an end-run attempt by

23  conflicted and inadequate representative counsel to amend the plan of distribution by throwing in a

24

25

26  ───────────────

27  [6] A settlement class is subject to *heightened scrutiny* because it presents a situation where class
counsel, who stands to gain fees only through the successful resolution of a case, may be fueled by
that self-interest to secure a settlement.  *Ortiz*, 527 U.S. 815, 852 (1999).

28

nominal sum in the settlement pot in satisfaction of their claims.  The fatal deficiencies remain, namely an absence of any showing and finding that the Omitted Repealer State Consumers have been adequately represented by an aligned named representative or zealous, conflict-free class counsel.  Granting this Motion would impermissibly "interrupt the appellate process."  *Retirement Bd. of Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of New York Mellon*, 297 F.R.D. 218, 223 (S.D.N.Y. 2013).

The issue of whether the Omitted Repealer State class members were adequately represented in the MDL proceedings leading up to the settlement and release of their claims is properly and squarely before the Appeals Court.  That court has been requested to issue its ruling by its duly appointed mediator.  The IPP proposed settlement does not and cannot change the issues on appeal.

IPP Counsel defines the Omitted Repealer State Consumers' assertion that they should have been given the right to share equally in the $577 million settlement with the other Repealer State class members as some sort of admission that his most recent sleight of hand – attempting to unilaterally settle their claims with a belated "amendment" to the Judgment and distribution plan to include them – moots their appeal.  Mem. at 5 n.6.  That is simply not so.  While it is true that counsel should have included them in the distribution plan like he did for the other Repealer States in the first instance, his failure to do so is not remedied by now adding them as if the omission were some sort of typo.  That failure infected the entire settlement negotiation process and removed any guarantees that the Omitted Repealer State Consumers' claims were adequately litigated and valued as part of the defectively-reached settlement pot itself.  Only having had named representatives and counsel pursuing the Omitted Repealer State Consumers' interests in that process could have served as a remedy.

Thus, an indicative ruling and eventual endorsement of it would not remove the Orders from appellate review or the need for an opinion.   IPP Counsel's attempt to snuff out the right to appeal review should be rejected.

**B.  The Issues on Appeal Concerning the Attorneys' Fee Order Cannot Be Avoided by the Proposed De Minimus Reduction.**

The issues on appeal regarding the defects in the Attorneys' Fee Order remain untouched by IPP Counsel's unilateral settlement.  For example, IPP Counsel's use of block-billing and improper, non-contemporaneous time records are both challenged.  The slight reduction of $6 million to the $157 million award does not address those practices or the order condoning them.

These firms' use of block-billing inflated their lodestars by approximately 20%, or $8.6 million.  *See* Doc. No. 4351 at 73-74.  The use of quarter-hour billing inflated the adjusted lodestar by another 20%.  *See id.*  In line, use of block-billing by identifiable IPP firms equal a combined lodestar inflation of $14.6 million.  The windfall for utilizing bad billing practices is $33.3 million.  These issues are also unaffected by IPP Counsel's proposals in the Motion.

**III.**

**IPP COUNSEL'S PERSISTENCE IN DISCOUNTING THE VALUE OF THE OMITTED REPEALER STATE CONSUMERS' CLAIMS IS LEGALLY INCORRECT AND FURTHER EVIDENCES INADEQUATE REPRESENTATION.**

IPP Counsel's lack of minimal representation and conflicts with the Omitted Repeater State Consumers is perhaps best established by his proposal to increase the settlement fund by $6 million in exchange for their release.[7]

**A.  The Omitted Repealer State Claims Are Worth $283 Million, Not the $6 Million Pressed By IPP Counsel.**

There are potentially millions and millions of class members in the three Omitted Repealer States.  The expert report provided by IPP Counsel here estimates that the claims of those class members will be covered by a $6 million payment.  *See* Doc. No. 5335-2 ("Schwartz Dec.").  That estimate is unreasonable.  IPP Counsel's own expert performed a study that set damages in all of

---

[7] Whether separate counsel may be needed to finally accord the Omitted Repealer State class members the due process representation guaranteed prior to being forced to release their claims through the class action mechanism is not presently before this Court because it not required to reach its ruling.  Such a ruling would require a separate, solely dedicated briefing.

14

OPPOSITION TO IPP COUNSEL'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1
FOR AN INDICATIVE RULING
Case No. 3:07-cv-5944, MDL No. 1917

the twenty-two Included Repealer States at an estimated $2.78 billion (without trebling).  *See* Doc.

No. 4740 at 6.  The populations of class members in the three Omitted Repealer States constitutes

10.2% of the total populations in those twenty-two states.  *See* Schwartz Dec. at ¶14.  Applying

that percentage, the Consumers' claims are worth approximately $283.56 million (before trebling).

In line, that estimate is unreasonable because when properly valued and adequately represented,

the Omitted Repealer State Consumers' claims cannot possibly be settled fairly for $6 million.  IPP

Counsel attempts to sidestep this fatal analysis by citing to the purportedly low claims rate made

for the Included Repealer States.  However, trumpeting the low figures provided by Counsel only

highlights the inadequacies in the notice program created by it – not the non-existence of claims

that deserve both proper recompense and proper notice.

 Moreover, the Schwartz report minimizes the claims coming out of New Hampshire and

assumes that there will be no claims by business consumers other than those in New Hampshire.

*See* Schwartz Dec., Doc. No. 5335-2, at ¶ 15 ("only for New Hampshire do I estimate potential

claims from eligible business purchasers.").  As demonstrated below, the law does not support that

limitation.  Moreover, there are countless non-profit organizations that are not engaged in trade in

Massachusetts that would be able to file their claims even under the IPPs' restriction, yet are

apparently not counted in the Schwartz report.  In addition, the additional claimants that exist due

to the fact that New Hampshire has no sales taxes, and the resultant fact that consumers from

nearby states including Maine, Connecticut and New York will have traveled into New

Hampshire, was not taken into account by the Schwartz report.

 IPP Counsel's low-balling of the Omitted Repealer State claims further underscores that

Lead Counsel's interests do not align with those of the Omitted Repealer State Consumers.

 **B.  IPP Counsel's Refusal To Allow Claims of Omitted Repealer State Consumer Entities in Massachusetts Evidences a Continuation of the Alleged Lack of Vigorous Prosecution and Inadequate Representation.**

15

OPPOSITION TO IPP COUNSEL'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1
FOR AN INDICATIVE RULING
Case No. 3:07-cv-5944, MDL No. 1917

Contrary to what IPP Counsel contends (Mem. at 15-16), the proposed amended plan of distribution disallows claims by indirect purchaser business entities that would be permitted under the Massachusetts Consumer Protection Act ("MCPA"), M.G.L. c. 93A, § 11.  By all indications the only reason for this surprising and sudden change to exclude these claims is to intentionally reduce the recovery for Massachusetts victims and thereby avoid additional diminishment of IPP Counsels' fees in favor of Massachusetts victims.  In the ten years this case has been pending, Lead Counsel has consistently taken the opposite position.  Only now, when the time has come to commit IPP Counsel's own fees to the Omitted Repealer States, in an apparent attempt to avoid the adverse consequences of the anticipated appellate decision on the alleged conflict and legally inadequate representation, does counsel reverse course.[8]  Going so far as to cite herein the exact same case for the opposite proposition for which he cited it earlier in the case at bar when he wrote the court "Massachusetts highest court explicitly held … that "G.L. c. 93A allows indirect purchasers to bring a cause of action for anticompetitive conduct that would be precluded under the Antitrust Act."  *See* Doc. No. 736, p. 8-9, *citing Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303, 312 (Mass. 2002) (emphasis in original).  Class Counsel now cites the same case for the opposite proposition, to reduce the potential recovery to Massachusetts.  This is hardly vigorous prosecution of the putative class IPP Counsel was appointed to represent.

The MCPA creates two causes of action, one for "persons engaged in trade or commerce" (M.G.L. c. 93A § 11) and another for all other persons, including consumers (M.G.L. c. 93A § 9).  *See Lantner v. Carson*, 373 N.E.2d 973, 976 (Mass. 1978).  The Supreme Judicial Court of

---

[8] Class Counsel took the contrary position in the following filings: *e.g.* First and Second Consolidated Amended Complaints (Doc. Nos. 437, 716); Luscher v Mitsubishi Class Complaint (Doc. No. 1  17-cv-04067, *see* Doc. 5178 ); Motion for Preliminary Approval filed in Mitsubishi. (Doc. No. 5245); Lead Counsel's Opposition to Motion for Dismissal (Doc. No. 736) etc.

Massachusetts has never directly ruled that the indirect purchaser doctrine under *Illinois Brick v. Illinois*, 431 U.S. 720 (1977)—which provides that a plaintiff who does not purchase directly from an alleged antitrust violator lacks standing to sue under the antitrust statutes—applies to business entities asserting claims under MCPA Section 11.  IPP Counsel now rely upon *Ciardi* for the opposite proposition, but the "only issue before [that court] [wa]s whether indirect purchasers can assert claims for price-fixing or other anticompetitive conduct under M.G.L. c. 93A, § 9, where they have no standing to bring such claims under the Massachusetts Antitrust Act, M.G.L. c. 93, §§ 1–14A."  762 N.E.2d at 306.  *Ciardi* ruled they did indeed have standing. While it referred to Section 11's language in dictum, *Ciardi* did not purport to rule on whether the indirect purchaser doctrine applied to Section 11 claims.

Nor does Section 11's language support application of the *Illinois Brick* doctrine to business plaintiffs asserting Section 11 claims for anticompetitive conduct.  No case cited by IPPs is in any way dispositive or reflective of how the Massachusetts state courts would rule.  Section 11 states that "[i]n any action brought under this section, . . . the court shall also be *guided in its interpretation of unfair methods of competition* by those provisions of chapter ninety-three known as the Massachusetts Antitrust Act."  Section 11 merely directs courts to look to the Massachusetts Antitrust Act, as well as to interpretations of the FTC Act (*see* M.G.L. c. 93A, § 2(b)), when evaluating whether conduct is an unfair method of competition.  *See Purity Supreme, Inc. v. Attorney General*, 407 N.E.2d 297, 305 n.15 (Mass. 1980).

The MCPA's legislative history further confirms that the statute was not intended to create a disparity between Section 9 and Section 11 with respect to the indirect purchaser doctrine.  In 1978 when the Massachusetts legislature enacted the Massachusetts Antitrust Act and also included the language in Section 11 referring to the Antitrust Act (Mass. St. 1978, c. 459, § 3), it had no reason to include similar language in Section 9 because the latter provision at that time

17

provided a cause of action only to consumers injured by an "unfair or deceptive act or practice."

The absence of any remedy for "unfair methods of competition" for consumers when the

Massachusetts Antitrust Act was enacted explains why Section 9 contains no reference to the

Massachusetts Antitrust Act, while Section 11, which provides a cause of action for businesses,

does.  Accordingly, the fact that Section 11 refers to the Massachusetts Antitrust Act while Section

9 omits any reference to it is not indicative of an intent to apply the indirect purchaser doctrine to

businesses but not individual consumers.

Finally, it makes no sense to apply the indirect purchaser doctrine to Section 11 claims by

businesses but not to Section 9 claims by individual consumers.  Sections 9 and 11 are part of the

same consumer protection law that "regulates trade and commerce '*directly or indirectly* affecting

the people of this commonwealth,'" and "[s]tatutes addressing the same subject matter clearly are to

be construed harmoniously so as to . . . give rise to a consistent body of law."  *Ciardi*, 762 N.E.2d

at 311, 314 (quoting M.G.L. c. 93A § 1(b)) (emphasis in original).  *See also id.* at 315 (Sosman, J.,

dissenting) (arguing that it would be "absurd" and "unreasonable" to interpret Sections 9 and 11

inconsistently with respect to indirect purchaser claims).  Consistent with this principle, other district

courts presiding over antitrust actions have not differentiated between Sections 9 and 11 in

characterizing the MCPA as unrestricted by the indirect purchaser doctrine.  *See*, *e.g.*, *In re Flonase*,

692 F. Supp. 2d 524, 545 (E.D. Pa. 2010) (stating that "Massachusetts does not bar indirect purchaser

standing under its consumer protection act"); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d

390, 413 n.12 (S.D.N.Y. 2011) ("[B]oth direct and indirect purchasers may maintain a cause of

action under the [Massachusetts] consumer protection act.").

In short, IPP Counsel has failed to show that the Massachusetts Supreme Judicial Court

would construe Section 11 of the MCPA to preclude indirect purchaser business entities from

seeking a remedy for losses incurred as a result of price fixing or other anticompetitive conduct.  It

1  is also instructive that courts regularly and routinely approve complaints and settlements with

2  Massachusetts business entities asserting indirect purchaser claims arising out of alleged antitrust

3  violations.  *See*, *e.g.*, *In Re Optical Disk Drive Products Antitrust Litig.*, 3:10-md-02143 (N.D. Cal.

4  Sept. 18, 2018), Doc. No. 2860 (preliminarily approving settlement for Massachusetts entities in

5  *ODD* case).

6

7          IPP Counsel is also incorrect that "the law of this case" holds that indirect purchaser

8  business entities may not assert claims under the MCPA for price fixing or other anticompetitive

9  conduct.  The decision to which IPP Counsel refers was rendered in connection with a separate

10  action filed by an individual plaintiff (Tweeter) and the IPP class members were not a party to that

11  action.  The issue presented there was whether entities that participate in trade or commerce are

12  required to assert any MCPA claim exclusively under Section 11 or instead may assert a consumer

13  claim under Section 9 in the event that those entities fail to meet Section 11's jurisdictional

14  requirements.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-5944-SC, 2014 WL

15  1088256, at *2-*3 (N.D. Cal. Mar. 13, 2014).  Judge Conti ruled that "the two sections of the

16  MCPA are mutually exclusive" and that a business entity "may only bring a claim under Section

17  11, which provides a cause of action for entities that participate in trade or commerce."  *Id.*

18

19          In the course of making that ruling, Judge Conti noted in dictum in a footnote that "[t]he

20  parties [had] agree[d] that Massachusetts does not permit indirect purchaser suits" by entities that

21  participate in trade or commerce.  *See id.* at *2 n.6.  Accordingly, Judge Conti did not have

22  occasion to independently analyze the issue of indirect purchaser standing under Section 11 of the

23  MCPA, and his statement cannot be regarded as the law of the case.  *See Arcam Pharmaceutical*

24  *Corp. v. Faria*, 513 F.3d 1 (1st Cir. 2007) ("[d]ictum constitutes neither the law of the case nor the

25  stuff of binding precedent") (citations omitted); *Bynum v. Com.*, 711 N.E.2d 138, 140-41 (Mass.

26  1999) (a party is not bound by dicta that is not essential to the Court's decision).

27

28

Also, Missouri business consumers can assert claims if their purchases were "primarily for personal, family, or household use."  Mo. Ann. Stat. §407.025; *see also In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) (recognizing validity of indirect purchaser plaintiff cause of action under the statute).

Accordingly, there is no valid justification for IPP Counsel's decision to exclude claims by Massachusetts or Missouri business entities who indirectly purchased CRT products.  This is particularly so since IPP Counsel has argued the opposite in this same case, and entities are regularly and frequently included in class actions, including many antitrust cases where IPP counsel have been counsel. Once again without any prodding, IPPs are taking a position contrary to the interests of the three omitted states. Any attempt to exclude these claims highlights the continued conflict and  IPP Counsel's legal inability to function as a representative for the Omitted Repealer State Consumers.

**C. The Proposed Alteration of the Allocation Plan and Attorneys' Fees Award Will Spawn Additional Appeal Issues.**

A grant of the requested relief will only generate additional appellate issues.  Those issues include, *inter alia*:

- Whether the Omitted Repealer States were adequately represented in connection with the proposed new settlement terms;

- Whether new notice must be provided to class members as a result of the proposed alteration in settlement terms;

- Whether a change may be made to the distribution plan without a final approval hearing;

- Whether the valuation of the Omitted Repealer State Consumers' state law damages claims were validly settled for $6 million; and

- Whether Massachusetts and Missouri law allows for recovery of damages by business entities for antitrust violations.

At root this is a back door attempt to get a remand without an unflattering appellate decision or a reversal of IPP Counsel's massive attorneys' fee.  However, the issues at stake on appeal, which go to the heart of class action jurisprudence, merit Ninth Circuit review and precedential decision.

## **CONCLUSION**

For the foregoing reasons, the Objectors/Appellants respectfully request that this Court deny IPP Counsel's Motion pursuant to Federal Rule of Civil Procedure 62.1 for an Indicative Ruling.


Dated:  October 15, 2018                    Robert J. Bonsignore

                                            /s/ Robert J. Bonsignore
                                            Robert J. Bonsignore (NH No. 21241)
                                            Bonsignore Trial Lawyers, PLLC
                                            3771 Meadowcrest Drive
                                            Las Vegas, NV 89121
                                            Telephone:  (781) 856-7650
                                            Facsimile: (702) 852-5726
                                            rbonsignore@class-actions.us

                                            Theresa D. Moore (99978)
                                            Attorney at Law
                                            One Sansome Street, 35th Floor
                                            San Francisco, CA  94104
                                            Telephone:  (415) 613-1414
                                            Email:  tdmoore@aliotolaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I, Robert J. Bonsignore, hereby certify that on this 15th day of October 2018, I caused the foregoing to be electronically filed with the Clerk of the Court by using the Case Management/Electronic Case Filing (CM/ECF) system, which will send a notice of electronic filing to all parties registered with the CM/ECF system in the above-captioned matter.  A copy will be forwarded via first class mail, postage prepaid, to those parties not electronically registered.

*/s/ Robert J. Bonsignore*
Robert J. Bonsignore

OPPOSITION TO IPP COUNSEL'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1
FOR AN INDICATIVE RULING
Case No. 3:07-cv-5944, MDL No. 1917