Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the*
*Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-cv-05944-JST <br><br> MDL No. 1917 |
| This Document Relates to: <br><br> **ALL INDIRECT PURCHASER ACTIONS** | **INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND AMEND THE PLAN OF DISTRIBUTION** <br><br> Hearing Date: November 15, 2018 <br> Time: 2:00 p.m. <br> Courtroom: 9, 19th Floor <br> Judge:  Honorable Jon S. Tigar |

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................1

II.  ARGUMENT ....................................................................................................................3

    A.  The Relief Requested By IPPs Will Obviate The Primary Issue On Appeal And Further The Resolution Of The Appeals.................................................................3

        1.  All But One Of The Issues On Appeal Are Premised Upon The Release Of Claims By Class Members In The Three States Without Compensation ................................................................................................3

        2.  Amending The Fee Order And The Plan of Distribution Does Not Require Amending The Settlement Agreements. ...............................................6

        3.  Claimants From The Three States Can Be Compensated Without Certifying New Subclasses Or Appointing Independent Counsel....................7

        4.  New Opt-Out Or Objection Rights Are Not Created By The Proposed Amendments .................................................................................................10

    B.  The Proposed $6 Million Voluntary Reduction To IPP Counsel's Fee Award Is Fair And Reasonable...................................................................................................12

        1.  IPP Counsel Is Not "Settling" With Class Members In The Three States.......12

        2.  Objectors' Challenges To Schwartz's Analysis Lack Merit............................13

    C.  Rule 60(b) Does Not Apply Because The Court Retains Continuing Jurisdiction Over The Plan of Distribution And The Attorneys' Fees .......................18

    D.  IPPs Filed a Combined Motion under Rule 62.1 and a Motion to Amend the Fee Order and Plan of Distribution. ...........................................................................19

    E.  Certain Objectors Lack Standing To Oppose This Motion Because They Lack Standing To Bring Claims Under Any Of The Three States' Statutes .......................20

III.  CONCLUSION ................................................................................................................22

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Beecher v. Able*,
 575 F.2d 1010 (2d Cir. 1978) ...................................................................................19

*Binta B. ex rel. S.A. v. Gordon*,
 710 F.3d 608 (6th Cir. 2013) .....................................................................................5

*Brodsky v. New England School of Law*,
 617 F. Supp. 2d 1 (D. Mass. 2009) ..........................................................................15

*Dahingo v. Royal Caribbean Cruises, Ltd.*,
 312 F. Supp. 2d 440 (S.D.N.Y. 2004) ......................................................................19

*Denney v. Deutsche Bank AG*,
 443 F.3d 253 (2d Cir. 2006) ......................................................................................11

*Devlin v. Scardelletti*,
 536 U.S. 1 (2002)...................................................................................................5, 21

*Hiser v. Franklin*,
 94 F.3d 1287 (9th Cir. 1996) .....................................................................................11

*Icicle Seafoods, Inc. v. Baker*,
 229 F.3d 790 (9th Cir. 2000) ......................................................................................9

*In re Actimmune Marketing Litig.*,
 No. C 08-02376-MHP, 2010 WL 3463491
 (N.D. Cal. Sept. 1, 2010) ...........................................................................................22

*In re Aggrenox Antitrust Litig.*,
 No. 3:14-MD-2516 (SRU), 2016 WL 4204478
 (D. Conn. Aug. 9, 2016) .............................................................................................15

*In re Allstate Ins. Co.*,
 400 F.3d 505 (7th Cir. 2005) ......................................................................................11

*In re Asacol Antitrust Litig.*,
 No. 15-cv-12730-DJC, 2016 WL 4083333
 (D. Mass. July 20, 2016)........................................................................................15, 17

*In re Audioeye, Inc., Securities Litig.*,
 No. CV-15-00163-TUC-DCB,
 2017 WL 5514690 (D. Ariz. May 8, 2017) ................................................................7

*In re Auto. Parts Antitrust Litig.*,
   No. 12-md-02311, 2013 WL 2456612
   (E.D. Mich. June 6, 2013) ....................................................................................17

*In re BankAmerica Corp. Sec. Litig.*,
   210 F.R.D. 694 (E.D. Mo. 2002) ...........................................................................8

*In re BankAmerica Corp. Sec. Litig.*,
   227 F. Supp. 2d 1103 (E.D. Mo. 2002) ................................................................13

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. C 07-5944 SC, 2014 WL 1088256
   (N.D. Cal. Mar. 13, 2014) ......................................................................................17

*In re Cendant Corp. Prides Litig.*,
   233 F.3d 188 (3d Cir. 2000) ...................................................................................18

*In re Dynamic Access Memory (DRAM) Antitrust Litig.*,
   No. M-02-1486-PJH, 2013 WL 12333442
   (N.D. Cal. 2013) ......................................................................................................8

*In re Exxon Valdez*,
   No. 3:89-CV-0095-HRH, 2010 WL 11619417
   (D. Alaska July 28, 2010) ........................................................................................9

*In re Exxon Valdez*,
   No. A89-0095, 1996 WL 384623
   (D. Alaska June 11, 1996),
   *aff'd*, 161 F.3d 12 (9th Cir. 1998) ........................................................................19

*In re Gypsum Antitrust Cases*,
   565 F.2d 1123 (9th Cir. 1977) ...............................................................................18

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) .....................................................................................8

*In re Lidoderm Antitrust Litig.*,
   103 F. Supp. 3d 1155 (N.D. Cal. 2015) .................................................................15

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-2420-YGR, 2014 WL 4955377
   (N.D. Cal. Oct. 2, 2014) .........................................................................................14

*In re MyFord Touch Consumer Litig.*,
   291 F. Supp. 3d 936 (N.D. Cal. 2018) ...................................................................16

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
   800 F. Supp. 2d 328 (D. Me. 2011) ...............................................................6, 8, 13

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

*In re New Motor Vehicles Canadian Export Antitrust Litig.,*
No. 2:03-MD-1532, 2011 WL 139845
(D. Me. Apr. 13, 2011) ............................................................................................8

*In re Online DVD Rental Antitrust Litig.,*
No. 4:09-md-2029, ECF No. 668 (N.D. Cal. Aug. 31, 2016)...................................7

*In re Online DVD-Rental Antitrust Litig.,*
779 F.3d 934 (9th Cir. 2015) ...................................................................................9

*In re Orthopedic Bone Screw Prods. Liability Litig.,*
246 F.3d 315 (3d Cir. 2001) ...................................................................................18

*In re Packaged Seafood Prods. Antitrust Litig.,*
242 F. Supp. 3d 1033 (S.D. Cal. 2017)...................................................................22

*In re Pet Food Prods. Liability Litig.,*
629 F.3d 333 (3d Cir. 2010) ................................................................................6, 8

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.,*
64 F. Supp. 3d 665 (E.D. Pa. 2014) .......................................................................17

*In re Telectronics Pacing Sys., Inc.,*
137 F. Supp. 2d 985 (S.D. Ohio 2001) .....................................................................9

*In Re TFT-LCD (Flat Panel) Antitrust Litig.,*
No. 3:07-md-01827, ECF No. 9499 (N.D. Cal. Jan. 4, 2016)..................................7

*Keepseagle v. Vilsack,*
102 F. Supp. 3d 306 (D.D.C. 2015) ........................................................................11

*Kenning v. Berryhill,*
No. 6:16-CV-06778, 2018 WL 1640598
(W.D.N.Y. Apr. 5, 2018) .........................................................................................20

*Knisley v. Network Associates, Inc.,*
312 F.3d 1123 (9th Cir. 2002) ..................................................................................5

*Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.,*
No. 13-CV-01180-BLF, 2015 WL 4755335
(N.D. Cal. Aug. 11, 2015).......................................................................................21

*Marino v. Pioneer Edsel Sales, Inc.,*
349 F.3d 746 (4th Cir. 2003) ..................................................................................19

*Mendia v. Garcia,*
874 F.3d 1118 (9th Cir. 2017) ................................................................................20

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND
AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

*NewGen, LLC v. Safe Cig, LLC,*
   840 F.3d 606 (9th Cir. 2016) ............................................................................5

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,*
   688 F.2d 615 (9th Cir. 1982) ..........................................................................11

*Prosterman v. Am. Airlines, Inc.,*
   __ F. App'x __, 2018 WL 4018147
   (9th Cir. Aug. 23, 2018).................................................................................20

*Ret. Bd. of Policemen's Annuity & Ben. Fund of*
   *City of Chicago v. Bank of N.Y. Mellon,*
   297 F.R.D. 218 (S.D.N.Y. 2013) ...............................................................5, 18

*Stetson v. Grissom,*
   821 F.3d 1157 (9th Cir. 2016) ..........................................................................5

*Torrisi v. Tucson Elec. Power Co.,*
   8 F.3d 1370 (9th Cir. 1993) ..............................................................................9

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.,*
   669 F.3d 632 (5th Cir. 2012) ............................................................................9

*United Food & Comm. Workers Local 1776 &*
   *Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.,*
   74 F. Supp. 3d 1052 (N.D. Cal. 2014) .......................................................15, 17

*United States v. Shetty,*
   543 F. App'x 675 (9th Cir. 2013) ...................................................................20

*Winters v. Ocean Spray Cranberries, Inc.,*
   296 F. Supp. 3d 311 (D. Mass. 2017) .............................................................17

*Zients v. Lamorte,*
   459 F.2d 628 (2d Cir. 1972) ...........................................................................18

**Statutes**

*Ciardi v. F. Hoffmann-La Roche, Ltd.,*
   762 N.E.2d 303 (Mass. 2002) .........................................................................17

*Frullo v. Landenberger,*
   61 Mass. App. Ct. 814 (2004).........................................................................16

*Lantner v. Carson,*
   374 Mass. 606, 373 N.E.2d 973 (1978) ..........................................................16

*Linkage Corp. v. Trs. of Boston Univ.,*
   425 Mass. 1 (1997) ........................................................................................15

v

*Linthicum v. Archambault,*
   379 Mass. 381, 398 N.E.2d 482 (1979),
   *abrogated on other grounds by*
   *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.,*
   418 Mass. 737, 640 N.E.2d 1101 (1994) ...................................................................16

*Slaney v. Westwood Auto, Inc.,*
   366 Mass. 688, 322 N.E.2d 768 (1975) ......................................................................16

**Rules**

Mass. Gen. Laws ch. 93A, § 11 ....................................................................................17

Mass. Gen. Laws ch. 93A, § 9 ...............................................................................15, 16

Massachusetts Antitrust Act,
   Mass. Gen. Laws, ch. 93 ..........................................................................................17

Mo. Stat. § 407.025.............................................................................................3, 14, 20

**Treatises**

Fed. R. App. P. 12.1 ...............................................................................................10, 20

Fed. R. Civ. P. 23 ..........................................................................................................11

Fed. R. Civ. P. 30 ..........................................................................................................20

Fed. R. Civ. P. 60 ...............................................................................................18, 19, 20

Fed. R. Civ. P. 62.1 .....................................................................................................1, 18

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND
AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

## I.     **INTRODUCTION**

The Indirect Purchaser Plaintiffs ("IPPs") have moved this Court for a ruling under Fed. R. Civ. P. 62.1 indicating whether it would grant IPPs' motion to reduce the fee award to IPP Counsel by $6 million, and amend the plan of distribution to allow Class Members in Massachusetts, Missouri and New Hampshire (the "Three States") to claim.   ECF No. 5335 ("Opening Br."). Objectors oppose IPPs' motion, despite the fact that IPPs are proposing to give Objectors what they have said they want all along—for Class members in the Three States to be treated equally and be able to participate in the settlements. *Id*. at 13 & n. 6.[1]

Objectors apparently fail to recognize the substantial risks not only that they and absent Class Members in the Three States would face if the settlements are reversed, but that all Class Members would face.   There is a real danger that if the settlements are reversed, some or all the Defendants may be unwilling or unable (due to unfavorable financial circumstances) to enter into the same settlements with IPPs.   In other words, the $577 million (or some portion thereof) could be gone.

Moreover, the situation for Class Members in the Three States is potentially even more dire, given that this Court has held that the statutes of limitations have run on their claims.   On remand, a likely scenario would be that their claims would be dismissed with prejudice and Class Members in the Three States would receive nothing.   Objectors and their counsel apparently choose to take the risk of receiving nothing if the settlements are reversed, rather than supporting the opportunity to participate equally in the $577 million settlements, and receive close to their single damages.

Even if IPPs are able to enter into the same or similar settlements on remand, the delay will be much greater than if this Court grants IPPs' motion.   Any recovery by Class Members—including those in the Three States—would be years away.   The distribution of the settlement fund has been

---

[1] *See* ECF Nos. 5350 ("Williams Obj.") and 5351 ("Gianasca Obj."). The Gianasca Objectors (which include Rockhurst University, et al. ("Rockhurst")) originally filed their objection at ECF No. 5349. They then filed another version of their objection at ECF No. 5351, apparently due to a technical glitch.   ECF No. 5335.   Counsel for Gianasca, Robert Bonsignore, represents that there was no substantive change to the brief.   *Id*.   IPPs therefore respond to ECF No. 5351.

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

1    delayed for over two years already.  IPPs' proposal is the most efficient means available to resolve

2    these appeals and to distribute the settlement funds to Class Members as soon as possible.

3            Further, Objectors present no legitimate basis to oppose IPPs' motion.  Their opposition

4    relies upon mischaracterizations of IPPs' proposal, the settlements, the applicable law, and the

5    record in this case.  Contrary to Objectors' claims, the IPPs request relief that will obviate the

6    primary issue on appeal—and the only issue addressed by the Ninth Circuit panel at oral argument—

7    namely, the release of claims for no compensation.  Objectors' adequacy of representation and

8    conflict of interest arguments are premised on the uncompensated release of claims and will likewise

9    be resolved by IPPs' motion.  In addition, the settlement agreements need not be modified because

10   they are silent on how the settlement funds are allocated, and neither subclasses, independent

11   counsel, nor a renewed right to opt out or object to the settlements will be necessary.  The

12   implementation of IPPs' requested relief will not be as complicated as Objectors portray.

13           Objectors argue that the $6 million of their fees that IPP counsel are willing to have reduced

14   and devoted to augment the fund to be distributed to the class is insufficient.  They miss the point.

15   The choice is not between the $6 million that IPP Counsel propose and some extravagant amount

16   that Objectors conjure up, but rather, between the $6 million augmented amount and no

17   augmentation. If IPP's motion is denied, the result will not be a larger augmented fund to be

18   distributed, but rather the same (unaugmented) fund or a smaller fund or no fund.[2]  IPP counsel are

19   willing to reduce their fees by $6 million because they have a sound basis to believe that that amount

20   will allow predicted claimants from the Three States to participate without adversely affecting the

21   claimants from the other states.  IPP Counsel base their prediction on expert analysis which they

22   have presented.  Objectors' extravagant supposition of a much greater claim participation is

23   unsupported by expert opinion, and constitutes a misapprehension of the relevant law.

24

25   _____

26   [2] Similarly, if Objectors won on appeal their argument that claimants in the Three States were
     required to participate in the plan of distribution, the result would be that all claimants would be

27   making claims on an unaugmented fund.

28

Finally, certain Objectors' opposition to this motion is undermined because they lack standing to sue under any of the Three States' statutes and, therefore, lack standing to oppose this motion. Gloria Comeaux, Jeffrey Speaect and Rosemary Ciccone do not claim to have purchased CRT Products in any of the Three States. *See* ECF No. 4119 at 3. Williams and Rockhurst claim to have purchased in Missouri, but they lack standing to sue under the Missouri Merchandising Practices Act ("MMPA") because neither purchased CRT Products "primarily for personal, family or household purposes." Mo. Stat. § 407.025.1. In addition, no Objector demonstrated standing to object to this Court's adjudication of the New Hampshire claim.

In contrast, IPPs have provided declarations from individuals with standing under the laws of the Three States who are named plaintiffs in the case against Mitsubishi Electric Corp., and who support IPPs' motion. ECF Nos. 5343, 5344, 5346. Further, companies representing almost 70% of the CRT units claimed to date, are monitoring the docket in this matter and have also indicated their support for IPPs' motion. ECF Nos. 5347, 5348, 5354. IPPs respectfully submit that the opinion of these parties is entitled to much more weight than those of Objectors who lack standing to sue under the laws of the Three States. Therefore, IPPs respectfully request that this Court indicate that it would grant their motion.

## II. ARGUMENT

### A. The Relief Requested By IPPs Will Obviate The Primary Issue On Appeal And Further The Resolution Of The Appeals

Objectors argue that IPPs' motion to amend the fee order and the plan of distribution should be denied because it would "interrupt the appellate process without proper justification," and would "spawn future appeals." Williams Obj. at 3-4; Gianasca Obj. at 10. On the contrary, IPPs request relief that will obviate the primary issue on appeal and therefore significantly further the resolution of the appeals.

#### 1. All But One Of The Issues On Appeal Are Premised Upon The Release Of Claims By Class Members In The Three States Without Compensation

Objectors contend that IPPs are asking this Court to address only one issue among "a constellation of issues pending on appeal," and that therefore IPPs' motion will not moot the

1    remaining appeals.  Williams Obj. at 4; Gianasca Obj. at 14-17.  But other than "excessive fees," the

2    additional appellate issues they identify (Williams Obj. at 4)—including those relating to adequacy

3    of representation and alleged conflicts of interest—are premised entirely upon the release of claims

4    by Class Members in the Three States without monetary compensation, and all would be rendered

5    moot if this Court grants IPPs' motion.

6         For example, Williams identifies "inadequate representation and conflict between damages

7    classes and omitted repealer states" as issues raised by Gianasca, and several variations on the same

8    theme for Rockhurst.  *Id.*[3]  Both Gianasca's and Rockhurst's "Statement of the Issues" in their

9    opening briefs on appeal make clear, however, that the *reason* they believe class members in the

10   Three States were not adequately represented is that they "were omitted from the economic

11   recovery." Appeal No. 16-16373, Dkt. Entry 32 ("Gianasca AOB") at 3; Rockhurst AOB at 8-9

12   ("class members in [the Three States] are required to release claims . . . but are denied any part of the

13   nearly $577 million [sic] settlement award . . . .").[4]   Lead Counsel's alleged failure to plead or

14   pursue the claims of the Three States becomes moot if, as IPPs propose, Class Members in those

15   states are compensated for the release of those claims on the same terms as other Class Members.

16        Likewise, the only "conflict" Objectors identify on appeal is that the Class Representatives

17   receive compensation and Class Members in the Three States do not.  *See, e.g.*, Rockhurst AOB at

18   50-51; Gianasca AOB at 3-4.  This "conflict" would be mooted by IPPs' proposal to compensate

19   Class Members in the Three States, as would any "misaligned interests" of the Class Representatives

20   _____

21   [3] Rockhurst also claims to have raised "inadequate notice" and insufficient settlement amounts.  *Id.*
     But IPPs have been unable to find these arguments in Rockhurst's briefs on appeal.  Notably, they
     are not listed in Rockhurst's Statement of the Issues.  *See* Appeal No. 16-16379, Dkt. Entry 70

22   ("Rockhurst AOB") at 7-9.

23   [4] *See also* Gianasca AOB at 4 ("their state law damages claims . . . were released for no economic
     recovery"); *id.* at 5 ("Lead counsel agreed to release their state law claims for worthless injunctive

24   relief and no economic recovery."); *id.* ("Absent Class Members are disparately required to release
     their viable claims for worthless injunctive relief while similarly-situated class members share in a

25   $577 million recovery."); Rockhurst AOB at 9 ("This appeal challenges the district court's approval
     of a proposed class action settlement wherein class-member plaintiffs from three states . . . are

26   forced to surrender all related rights of action against Defendants but are foreclosed from recovering
     any part of the $577 million damages award.").

27

28
                                                        4
     _____
     INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL
     PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND
     AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

1   who allegedly lacked the incentive to pursue the claims of the Three States. Gianasca AOB at 33-36,

2   44-46.  As Gianasca acknowledges repeatedly, aside from the differences in compensation under the

3   distribution plan, Class Members in the Three States are "similarly situated" to other Class Members

4   in terms of the claims they possess and alleged injury suffered.  *See, e.g.*, *id*. at 5, 37, 49.

5        Thus, IPPs' requested amendment of the Fee Order and Distribution Plan would "further the

6   appeal," obviating the need to decide the primary issues relating to this Court's Order Granting Final

7   Approval of the Settlements, ECF No. 4712.  *See Ret. Bd. of Policemen's Annuity & Ben. Fund of*

8   *City of Chicago v. Bank of N.Y. Mellon*, 297 F.R.D. 218, 221 (S.D.N.Y. 2013) ("Indicative rulings

9   allow for the timely resolution of motions which may further the appeal or obviate its necessity.").

10  Any ancillary issues relating to the Fee Order or future appeals would remain for the Court of

11  Appeals and would not defeat IPPs' motion, because the relief requested need only "further the

12  appeals." *Id.*[5]

13       Moreover, as further explained below, Objectors' concern that this motion will "spawn future

14  appeals" is speculative and based on a misapprehension of IPPs' proposal and the applicable law.  If

15  Objectors appeal the order on remand, they could notice that appeal in the pending appeals or the

16  Court of Appeals could consolidate the appeals.  *See, e.g.*, *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d

17  606, 612 (9th Cir. 2016)  (appeal of order issued after limited remand noticed in the pending appeal);

18  *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 616–17 (6th Cir. 2013) (consolidating appeal of order

19

20

---

21  [5] Notably, the Rockhurst Appellants did not challenge the Fee Order on appeal.  *See generally,*
    Rockhurst AOB, Statement of Issues at 7-9.  Indeed, Rockhurst's original objection to these
22  settlements states that "[n]o objection is made to Class Counsel's" attorney fee request.  *See* ECF
    No. 4113 at 10. Rockhurst has therefore waived any right to object to or appeal the Fee Order, or
23  any amendments thereto.  *Devlin v. Scardelettti,* 536 U.S. 1, 13 (2002) (the failure to timely object
    "implicates basic concerns about waiver.").  Further, the Gianasca Appellants lack Article III
24  standing to challenge the Fee Order on appeal because none of them have filed claims to receive a
    payment from the settlement fund.  *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1126-27 (9th
25  Cir. 2002) (objecting class member who failed to file a claim to receive payment under settlement
    does not have Article III standing to object to fees); *accord Stetson v. Grissom*, 821 F.3d 1157,
26  1163-64 (9th Cir. 2016).  Thus, only Objector Williams has a valid appeal of the Fee Order.

27

28

---

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND
AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

on limited remand with initial appeal).  Thus, this case would still be resolved much faster than if the settlements are reversed and remanded.

### 2. Amending The Fee Order And The Plan of Distribution Does Not Require Amending The Settlement Agreements.

Objectors contend that IPPs' requested relief is "beyond the Court's power to provide" because it would require amending the underlying settlement agreements.  Williams Obj. at 7-8; Gianasca Obj. at 12-13.  This is not true.  Neither the fee award nor the distribution plan implicate the terms of the settlement agreements.  The defendants each paid one lump sum for global settlements of plaintiffs' claims, and the settlement agreements are silent on how the settlement fund is to be allocated and which class members may file claims.

In fact, the settlement agreements specifically provide that the distribution of the Settlement Fund and the attorneys' fees are separate. ECF No. 3862-1 (¶¶ 21 & 23(c)).  The requested amendments of the fee award and the plan of distribution therefore do not require amending the settlement agreements.  *See In re New Motor Vehicles Canadian Export Antitrust Litig.* ("*NMV*"), 800 F. Supp. 2d 328, 335 (D. Me. 2011) (district court could order re-allocation of the settlement proceeds because, like here, "the plan of allocation is not part of the settlement agreements"); *In re Pet Food Prods. Liability Litig.*, 629 F.3d 333, 352-53, 356 (3d Cir. 2010) (reversing and remanding "*only on the allocation*" of the fund and affirming "in all other respects" (emphasis added)).[6]

Further illustrating this point is the fact that the settlement agreements with defendants Chunghwa Picture Tubes, Ltd. and LG Electronics, Inc. became final—and final judgment was

---

[6] Gianasca claims that the December 1, 2018 amendments to Rule 23 will somehow work a fundamental change to existing law and require that the Court vacate its prior Orders and start all over. Gianasca Obj. at 13.  There is no support for this interpretation of the upcoming amendments, either in the text of the proposed amendments or the Advisory Committee Notes.  In fact, the Advisory Committee Notes indicate that the amendments merely codify existing law regarding settlement approval: "[E]ach circuit has developed its own vocabulary for expressing these concerns. In some circuits, these lists have remained essentially unchanged for thirty or forty years. The goal of this amendment [to Rule 23(e)(2)] is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."

6

1    entered—in 2012 and 2014, respectively.[7]  But that has not hindered this Court in approving the

2    distribution plan or fee awards relating to those settlements years later.  *See* ECF Nos. 4712 at 2;

3    4740; 5040.  There has been no suggestion that adjudicating the distribution plan for the Chunghwa

4    and LG settlements requires that the final judgments entered as to them be vacated or amended, or

5    their settlement agreements amended.  Indeed, it is common practice in class actions to modify the

6    plan of distribution after final judgment.  *See, e.g.*, *In re Audioeye, Inc., Securities Litig.*, No. CV-15-

7    00163-TUC-DCB, 2017 WL 5514690, at ¶ 10 (D. Ariz. May 8, 2017) (approving a class action

8    settlement, with the express contemplation that amendments to the plan of distribution would take

9    place without need to disturb the district court's final judgment, even though the plan of distribution

10   was memorialized in that final judgment).[8]

### 3. Claimants From The Three States Can Be Compensated Without Certifying New Subclasses Or Appointing Independent Counsel.

13        Relatedly, Objectors contend that further litigation will be required because subclasses for

14   the Three States must be certified, and independent counsel appointed, before this Court can allow

15   Class Members in the Three States to claim.  *See, e.g.*, Williams Obj. at 7-8, 10; Gianasca Obj. at 14-

16   17.  Objectors' contentions are undermined by *NMV*, which Objectors previously championed on

17   appeal as a case "where the rights of consumers in unrepresented states were properly respected."

18   Gianasca AOB at 43.

19        In *NMV*, as here, class counsel proposed a plan of distribution that did not permit class

---

[7] *See* ECF Nos. 1105 (Chunghwa, final approval granted March 22, 2012), 1106 (Chunghwa Final Judgment), 2542 (LG, final approval granted April 18, 2014), 2543 (LG Final Judgment).

[8] *See also In re Online DVD Rental Antitrust Litig.*, No. 4:09-md-2029, ECF No. 668 (N.D. Cal. Aug. 31, 2016) (amending the plan of distribution four years after final judgment to provide for *cy pres* distribution of the residue, which was much larger than expected due to class members not receiving or cashing their gift cards); *In Re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827, ECF No. 9499 (N.D. Cal. Jan. 4, 2016) (after the initial distribution to timely filed claims, authorizing payment of late claims *pro rata*, at a significantly lower rate than that approved by the court in the initial distribution); *id.*, ECF. No. 9588 (Jan. 5, 2018) (authorizing distribution on a *pro rata* basis reissue requests that were from claimants who submitted timely, valid claims but did not cash their checks).

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

1    members in four repealer states to file claims because there were no class representatives for those

2    states and no damages classes had been certified, and, consequently, the respective statutes of

3    limitations had run.  *NMV*, No. 2:03-MD-1532, 2011 WL 1398485, at *7-9 (D. Me. Apr. 13, 2011);

4    800 F. Supp. 2d at 330, 332-33.  Without appointing independent counsel or certifying subclasses,

5    the *NMV* court ordered class counsel to allow class members in the omitted states to file claims and

6    to issue supplemental notice. 800 F. Supp. 2d at 333-35.  Central to the *NMV* court's reasoning was

7    that, even though the litigation class did not include class members from the omitted states, the

8    settlement class did include them and the settlement agreements released their claims.  *Id.* at 333.

9         Similarly, in *In re BankAmerica Corp. Securities Litigation*, 210 F.R.D. 694 (E.D. Mo.

10    2002), the court rejected a plan of allocation that left one group of class members (the "October

11    purchasers") with no recovery.  *Id.* at 709-712.  But the court also rejected certain objectors'

12    contentions that the named plaintiffs and class counsel failed to adequately represent the October

13    purchasers, and rejected the need for independent counsel or subclasses for those class members.  *Id.*

14    at 713.[9]

15         Here, like in *NMV* and *In re BankAmerica Corp.*, the Three States are members of the

16    certified Settlement Class and are adequately represented by IPP Counsel and the existing Class

17    Representatives.  *See* ECF Nos. 4740 at 7 ("[T]he entire record of the litigation viewed fairly

18    demonstrates that Class Counsel managed this case diligently and efficiently for the benefit of the

19    class.").  IPP Counsel proposes to compensate claimants in the Three States at the same level as

20

---

21    [9] *See also, e.g.*, *In re Pet Food*, 629 F.3d at 346-48 ("varied relief among class members with
differing claims in class settlements is not unusual"; "do[es] not, without more, demonstrate" intra-

22    class conflicts, inadequate representation, or the need for subclasses; and such objections are "more
appropriately addressed as a Rule 23(e) adequacy of allocation question, rather than [an] adequacy

23    of representation question"); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272 (3d Cir. 2009)
(varying relief "among the different groups of class members d[oes] not demonstrate that there were

24    conflicting or antagonistic interests within the class" or adequacy of representation issues); *In re
Dynamic Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH, 2013 WL 12333442, at *50

25    (N.D. Cal. 2013) ("It is also not the law that every different situation between groups of class
members triggers the need for subclasses, even where such differences are reflected in allocation

26    decisions.").

27

28

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND
AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

Class Members in the 22 States, despite this Court's finding that the statutes of limitations have expired on the claims of the Three States and that those claims are valueless.  *See* Opening Br. at 7-8, 22.  Moreover, in order to expedite the amended plan of distribution and the eventual distribution of the funds to all class members, and to ensure that any impact on the claims of existing claimants is *de minimis*, IPP Counsel propose to pay the claims of Class Members in the Three States *out of their own pocket. Id.* at 6-7.  Yet, Objectors continue to insist that IPP Counsel are inadequate representatives and must be disqualified.

Objectors ignore that it is not unusual for plans of distribution in class action settlements to be amended, either voluntarily by counsel (subject to judicial approval), or at the court's direction, sometimes years after initial approval of the settlements and plans of distribution.  IPPs have not found a single case in which class counsel was disqualified solely for proposing an allocation plan that a court did not approve or which had to be amended.  Nor have IPPs found any other case in which class counsel funded additional payments to class members out of their own pockets in conjunction with the amendment of an allocation plan.[10]  Finally, even if this Court determines that subclasses for the Three States are necessary, it does not follow that they must be represented by separate counsel.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1378 (9th Cir. 1993).

In short, only "fundamental" conflicts that "go to the heart of the litigation" undermine a representative's or counsel's adequacy.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015).  There are no such fundamental conflicts here.  The only "conflict" identified by Objectors is the fact that Class Members in the Three States did not share in the economic recovery,

---

[10] *See, e.g.*, *Icicle Seafoods, Inc. v. Baker*,  229 F.3d 790, 800 (9th Cir. 2000) (remanding the plan of allocation because certain class members were unfairly excluded from the recovery); *In re Exxon Valdez*, No. 3:89-CV-0095-HRH, 2010 WL 11619417, at *3 (D. Alaska July 28, 2010) (approving amended plan of allocation on remand from *Icicle*; no payment from class counsel to previously excluded class members and no suggestion that class counsel should be removed); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 641 (5th Cir. 2012) (court modified plan of allocation in response to objections; no requirement that counsel pay anything or be removed); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1029 (S.D. Ohio 2001) (amended plan of allocation proposed after district court's approval of initial settlement was reversed on appeal; no requirement that counsel pay anything or be removed).

whereas other Class Members did.[11]   This "conflict" is resolved by IPPs' amended plan of distribution.  This Court may therefore amend the plan of distribution to include the Three States without requiring subclasses or independent class counsel.[12]

### 4. New Opt-Out Or Objection Rights Are Not Created By The Proposed Amendments

Objectors also object to IPPs' proposal regarding notice and assert that Class Members in the Three States and the 22 States must be given a renewed right to opt out of the settlements, or object to the settlements or amended distribution plan.  Williams Obj. at 13-16.  This objection fails as to Class Members in the Three States because it is premised upon Objectors' incorrect contention that the settlement agreements must be amended and new subclasses certified for the Three States.  It likewise fails as to the 22 States because Objectors fail to rebut Mr. Schwartz's projected claims for the Three States. *See* Section B.2., *infra*.  Objectors also fail to address the overwhelming authority cited in IPPs' opening brief holding that changes to the distribution plan do not require new notice or opt-out rights where, as here, class members could not have known what their claim was worth, and can have no expectation of a particular recovery.  *See* Opening Br. at 23, 29-32.

In addition, Class Members in the Three States are not strangers to these settlements.  They were already part of the Settlement Class and were previously given a right to opt out and object to the settlements and the plan of distribution.  They need not be given another opportunity merely because they were previously informed they were not eligible for damages.  Contrary to Objectors'

---

[11] Nor are new adequacy of representation issues raised by IPP Counsel's proposal to reduce their fees by $6 million, and limit business claims in accordance with the Massachusetts and Missouri consumer protection statutes (Williams Obj. at 9; Gianasca Obj. at 18-24).  *See* Section B, *infra*.

[12] Gianasca and Rockhurst repeatedly accuse IPP Counsel of attempting to avoid appellate review of their alleged inadequate representation.  They apparently misapprehend the procedure under Rule 62.1 and Fed. R. App. P. 12.1.  If this Court indicates it would grant IPPs' motion or that it raises a substantial question, IPPs will move the Court of Appeals under Fed. R. App. P. 12.1 for a *limited* remand—*i.e.*, the Court of Appeals will retain jurisdiction over the appeals.  Assuming this Court then grants IPPs' motion and amends the plan of distribution, IPPs will then return to the Court of Appeals and request that the Panel either dismiss the appeals or affirm settlement approval based on the amended plan of distribution.  Thus, the Panel will have an opportunity to consider Objectors' adequacy-of-representation arguments.

---

10

1    unsupported assertion, *Officers for Justice v. Civil Serv. Commission of City & County of San*

2    *Francisco* addresses this very issue. In that case, when notices of the opt-out provisions were mailed,

3    the district court had only certified an injunctive relief class, and not a damages class. 688 F.2d 615,

4    634 (9th Cir. 1982). The Ninth Circuit emphatically rejected the idea that class members had the

5    right to an additional opt-out period after the terms of the settlement determined the amount of

6    damages available to the class. *Id.* at 634-35.[13]

7           Objectors' reliance upon *In re Allstate Ins. Co.*, 400 F.3d 505 (7th Cir. 2005) is misplaced.

8    That case did not address the issue of when notice must be given regarding changes to a class

9    settlement or distribution plan.  Rather, it addressed whether a court can initially certify a class under

10   23(b)(2) when the complaint seeks damages as a primary form of relief.  *Id.* at 507.  The court

11   determined this was improper and vacated a 23(b)(2) certification.  *Id.*  Likewise, and contrary to

12   Objectors' claims, *Keepseagle v. Vilsack*, 102 F. Supp. 3d 306 (D.D.C. 2015), holds that where a

13   settlement modification does not materially affect class members' existing legal rights, Rule 23(e)

14   *does not* create jurisdiction for additional notice.  *Id.* at 312-14.  In addition, while the *Keepseagle*

15   court concluded it had discretion to order notice regarding the modification of *cy pres* provisions

16   involving $380 million, it did not provide a renewed right to opt out. *Id.* at 316-17.

17          Because there will be no amendment to the settlement agreements, and no subclasses

18   certified—and because the amendment to the distribution plan would result in only a *de minimis*

19   change (if any) in the value of existing claimants' claims (*see* Section B.2., *infra*)—renewed rights to

20   opt out or object will not be triggered by IPPs' proposed amendments.  IPPs' proposal will have the

---

[13] Objectors correctly note that injunction classes and damages classes are treated differently when it comes to opt-out rights, but fail to grapple with the underlying reason for this distinction. Opt-out rights are generally not necessary for Rule 23(b)(2) classes because nationwide injunctive relief does not preclude individuals from pursuing their own damages claims. *Hiser v. Franklin*, 94 F.3d 1287, 1291-93 (9th Cir. 1996). But here, the nationwide class members received notice that they *would* be barred from filing suit against Defendants over CRT antitrust claims, and they would receive no injunctive relief or damages, but they had a right to opt out. ECF No. 4371-1, Notice ¶ 14. That opt-out notice therefore completely satisfies the nationwide class members' due process rights, when subsequent changes "have only improved" the deal for nationwide class members. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 271 (2d Cir. 2006).

practical benefit of allowing IPPs to return to the Court of Appeals and request that the Panel either dismiss the appeals or affirm this Court's approval of the settlements based on the amended plan of distribution, without having to wait for notice to be issued and any objections to be resolved.  In this way, IPPs' proposal has the potential to resolve this case on an expedited basis.

**B.  The Proposed $6 Million Voluntary Reduction To IPP Counsel's Fee Award Is Fair And Reasonable**

**1.  IPP Counsel Is Not "Settling" With Class Members In The Three States**

Objectors attempt to recast IPPs' proposal to reduce their fee award and amend the plan of distribution as a *settlement* between IPP Counsel and Class Members in the Three States for $6 million.  Williams Obj. at 9; Gianasca Obj. at 11.  Building on this straw man argument, they then argue this "new settlement" must be approved under Rule 23(e) and that it creates a conflict between IPP Counsel and the Class Members regarding the settlement amount.  *Id*.  Not so.

IPPs are simply proposing that the plan of distribution be amended to allow Class Members in the Three States to claim.  In order to avoid the dilution in the value of existing claims and potential objections relating thereto, IPP Counsel propose to voluntarily reduce their fee award in an amount IPP Counsel believe, based on an expert's analysis and estimates, will be sufficient to guard against dilution of existing claims.  To the extent there are more claims than anticipated, the net settlement fund will be reallocated so that all Class Members are compensated at the same level and on the same terms, thereby mooting Objectors' claim that there is any conflict between Class Members.  Because IPP Counsel are not "settling" with Class Members in the Three States, Rule 23(e) is not relevant.  In addition, there is no conflict of interest between IPP Counsel and Class Members in the Three States, and no need for independent counsel to represent them in proceedings to "establish[] the amount of the IPPs' fee reduction." Williams Obj. at 9.

Objectors mistake IPP Counsel's willingness to provide funds from their awarded attorneys' fees to avoid dilution to claimants from the 22 states as a legal obligation to do so.  Objectors provide no support for their extreme position that IPP Counsel somehow have an obligation to fully fund the payments to claimants from the Three States.  Williams Obj. at 16 (Class Counsel should

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

1  pay "all class members in the Three Omitted States out of Indirect-Purchaser Plaintiff Class

2  Counsels' fees"—whatever that amount may be).  Objectors point to no authority for their position

3  and as noted, IPPs have been unable to find a single case in which class counsel paid anything

4  towards class members' claims in these circumstances, much less paid the entire amount.  In

5  analogous circumstances, courts have simply re-allocated the existing settlement funds without any

6  contribution from class counsel.  *See, e.g.*, *In re BankAmerica Corp. Sec. Litig.*, 227 F. Supp. 2d

7  1103, 1106-07 (E.D. Mo. 2002) (approving revised plan of allocation, which simply reallocated the

8  existing funds—*i.e.* no contribution to the fund from class counsel's fees); *NMV*, 800 F. Supp. 2d at

9  333-35 (ordering re-allocation of existing settlement fund with no contribution from counsel in

10  almost identical circumstances).[14]  Thus, there is no basis to hold IPP Counsel responsible for paying

11  the claims of Class Members in the Three States.[15]

### 2.  Objectors' Challenges To Schwartz's Analysis Lack Merit

13  Objectors disparage the proposed $6 million reduction in IPP Counsel's fee award as "paltry"

14  and as underestimating of the claims from Class Members in the Three States.  They assert

15  extravagant suppositions of the amount of claims from Class Members in the Three States.  In

16  contrast to IPP Counsel, who base their estimate on the analyses and opinions of their expert, Mr.

17  Schwartz, Objectors offer no expert or other evidence to rebut Mr. Schwartz's analysis.  Instead,

18  Objectors misconstrue Dr. Netz's $2.78 billion damages estimate for the 22 States, extrapolating

19  from her damages estimate that the Three States' claims are worth $283.56 million.  *See Gianasca

20  Obj.* at 18-19.  Objectors' extrapolation, however, (i) unrealistically assumes that Dr. Netz's entire

21  damages amount would be recoverable, (ii) ignores that the fund of money available to distribute to

[14] *See also* fn. 10, *supra* (listing cases where the court amended the plan of distribution and simply reallocated the existing settlement fund).

[15] Williams also asserts that IPPs' proposal to reduce their fee award would conflict with this Court's February 28, 2017 Order allocating the fee award among IPP Counsel, ECF No. 5122. Williams Obj. at 16.  But IPP Counsel have been informed of the proposed reduction in the aggregate fee, and have consented to a reduction in their fee allocation.  There is therefore no need to amend the fee allocation Order.

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

all Class Members is a fraction of Dr. Netz's damages analysis; and (iii) fails to take into consideration the specific and limited application of the statutes in Massachusetts and Missouri that would support claims in those states.  Objectors also fail to recognize the reality that only a portion of class members will file claims.  Using their $286 million damages estimate as the basis for an award to the Three States would lead to those Class Members receiving *more* than Class Members in the other 22 States.  This would not be fair.

Objectors' other attacks on Mr. Schwartz's analysis rely upon mischaracterizations of IPPs' proposal, the law, and the record in this case.  For example, they argue it is improper to estimate claims from the Three States based on the *actual* claims experience in the case, because the notice program was supposedly "proven inadequate" and, as a result, the claims were low.  Williams Obj. at 18; Gianasca Obj. at 19.  Both assertions are contradicted by the record.  This Court concluded that the notice program was the "best notice practicable" (ECF Nos. 4712 at 9), and Objectors did not appeal that finding.  Nor did Objectors appeal this Court's conclusion that the reach of the notice program was "supported by the strong response rate to the notices."  *Id.*[16]

Objectors make the baseless contention that voluminous claims can be expected from nonprofit or other entities which satisfy the requirements of the Massachusetts and Missouri consumer protection statutes.  Williams Obj. at 13; Gianasca Obj. at 18.  With regard to Missouri, Mr. Schwartz did not include entity claims in his calculations because IPPs have not located a single case in which an entity satisfied Missouri's "primarily for personal, family or household purposes" limitation.  Mo. Stat. § 407.025.1 ("MMPA").  In contrast, numerous courts have dismissed entities' MMPA claims with prejudice because they failed to satisfy this requirement.  *See* Opening Br. at 25-26 (citing cases).

Objectors' reliance upon *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420-YGR, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) is misplaced.  *Batteries* merely holds that "indirect-purchaser status alone does not bar Missouri consumers from bringing claims under the MMPA."  *Id.*

---

[16] *See also* ECF No. 5122 at 31-32 ("no persuasive basis for concluding that the claims rate would have been higher with a different notice").

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

at *19.  It contains no discussion of the "primarily for personal, family or household purposes" requirement.  IPPs do not propose to foreclose Missouri entities from bringing a claim, however.  The proposal set forth in IPPs' opening brief specifically provides that "Eligible claimants in Missouri would be persons *and/or entities* . . . ."  Opening Br. at 18 (emphasis added).  But given the state of the law, it is highly unlikely that substantial numbers of Missouri entities could satisfy the requirements of the MMPA.

The same is true for Massachusetts.  IPPs do not foreclose the possibility of claims by Massachusetts entities.  *See id.* at 18 ("Eligible claimants in Massachusetts would be persons *and/or entities* 'not engaged in trade or commerce'. . .") (emphasis added).  But the majority of courts—and in particular, all courts in recent antitrust class actions—have concluded that non-profit entities cannot claim under Mass. Gen. Laws ch. 93A ("MCPA"), § 9 because they engage in trade or commerce and cannot show they purchased for "primarily personal reasons."  *See, e.g.*, *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1163 (N.D. Cal. 2015) (dismissing the Section 9 claims of nonprofit with prejudice because it was engaged in trade or commerce).[17]

While some courts have stated that universities and other non-profit institutions do *not* engage in trade or commerce when they engage in activities in furtherance of their core mission, as opposed to activities undertaken in a business context, *see Linkage Corp. v. Trs. of Boston Univ.*, 425 Mass. 1, 25, 679 N.E.2d 191, 208 (1997); *Brodsky v. New England School of Law*, 617 F. Supp. 2d 1 (D. Mass. 2009),[18] the courts in those cases were addressing whether the universities could be sued as a defendant under the MCPA; not whether the universities could sue under Section 9 as a

---

[17] *See also United Food & Comm. Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1085 (N.D. Cal. 2014) (same); *In re Aggrenox Antitrust Litig.*, No. 3:14-MD-2516 (SRU), 2016 WL 4204478, at *8-9 (D. Conn. Aug. 9, 2016)9, 2016) (same); *In re Asacol Antitrust Litig.*, No. 15-cv-12730-DJC, 2016 WL 4083333, at *13 (D. Mass. July 20, 2016) (same).

[18] These courts have also recognized that this is a "fact-specific" inquiry.  *Linkage*, 425 Mass. at 26.

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

consumer plaintiff for "personal, family or household purposes."[19] The latter question, relevant here, is entirely different from the question of whether the Massachusetts legislature intended to subject non-profits, in transactions closely connected to the non-profits core charitable functions, to liability under the MCPA, the question addressed in *Linkage* and  *Brodsky*.

In any event, even if some Massachusetts colleges and universities could show they purchased CRT Products primarily for personal use, the number of claims is unlikely to be dramatically more than estimated, and almost certainly will not double Schwartz's estimates.  No state universities or colleges will be eligible to claim because governmental entities are not part of the Class.[20]  Thus, any dilution of existing claims will still be *de minimis*.  *See* Schwartz Decl., ¶ 22 (calculating that even if the actual claims are double his estimates, the impact on existing claims would be less than 1%).

Gianasca also asserts that Massachusetts businesses would be permitted to claim under Section 11 of the MCPA.  Gianasca Obj. at 20.  But the Massachusetts Supreme Judicial Court has stated that indirect purchaser businesses cannot claim for antitrust violations under Section 11 because that section must be interpreted in accordance with the Massachusetts Antitrust Act, which adheres to *Illinois Brick*'s bar on indirect purchaser suits.  *See Ciardi v. F. Hoffmann-La Roche, Ltd.*,

---

[19] Section 9 "require[s] the plaintiff to prove that she purchased goods or services primarily for personal, family, or household purposes." *Linthicum v. Archambault*, 379 Mass. 381, 386, 398 N.E.2d 482, 486-87 (1979), *abrogated on other grounds by Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 418 Mass. 737, 640 N.E.2d 1101 (1994); *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 701, 322 N.E.2d 768, 777 (1975) (for a section 9 remedy, "the included transaction must have been undertaken primarily for personal, family, or household purposes" (emphasis added)); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 962 (N.D. Cal. 2018) (applying *Linthicum* and *Slaney*'s "primarily personal reasons" test); *Frullo v. Landenberger*, 61 Mass. App. Ct. 814, 821, 814 N.E.2d 1105, 1112 (2004) ("Ultimately, the choice appears to turn on whether a given party has undertaken the transaction in question for business reasons, or has engaged in it for purely personal reasons (such as the purchase of an item for personal use)"); *Lantner v. Carson*, 374 Mass. 606, 610, 373 N.E.2d 973, 976 (1978) ("where § 9 affords a private remedy to the individual consumer ..., an entirely different section, § 11, extends the same remedy to '[a]ny person who engages in the conduct of any trade or commerce'").

[20] *See* ECF No. 1526 ¶¶ 243-245 (complaint defining the Settlement Class for each of the settlement agreements, and expressly excluding "any federal, state or local government entities."

---

16

1   436 Mass. 53, 62-63, 762 N.E.2d 303, 311-12 (Mass. 2002) ("General Laws c. 93A, § 11, includes a

2   specific provision that in any action brought under that section, the court shall be guided in its

3   interpretation of unfair methods of competition by the provisions of the Antitrust Act. . . . and by

4   association, *Illinois Brick Co. v. Illinois, supra,* so as to preclude indirect purchasers . . .").  Even the

5   dissent in *Ciardi* interpreted the provision in Section 11 to mean that "the Legislature . . . does intend

6   to adhere to the principles of *Illinois Brick*." *Id.* at 315 (Sosman, J., dissenting).

7          While it is true that *Ciardi*'s statements are *dicta,* several federal district courts have

8   concluded that the Massachusetts Supreme Court would likely rule that indirect purchasers cannot

9   bring a claim under Section 11 for price-fixing—including Judge Conti in this MDL.  *See In re*

10  *Cathode Ray Tube (CRT) Antitrust Litig.*, No. C 07-5944 SC, 2014 WL 1088256, at *2-3 (N.D. Cal.

11  Mar. 13, 2014) ("[W]hile corporations engaged in commerce can bring suits under Section 11 and

12  potentially win them, a corporation engaged in commerce whose suit is based on indirect purchases

13  will not have standing under Section 11.").[21]   None of the cases cited by Gianasca (Obj. at 22)

14  distinguish between consumer and business claims under Sections 9 and 11, much less address the

15  explicit provision in Section 11 requiring that it be interpreted in accordance with the Massachusetts

16  Antitrust Act, Mass. Gen. Laws, ch. 93.

17         Moreover, IPPs' current position regarding Section 11 is not, as Gianasca claims,

18  inconsistent with their prior position.  The question of whether businesses can claim under the

19

20  _____

    [21] *See also, e.g., Winters v. Ocean Spray Cranberries, Inc.*, 296 F. Supp. 3d 311, 325 (D. Mass.
    2017) ("Construing the Massachusetts Antitrust Act harmoniously with federal antitrust law would

21  dictate that these plaintiffs lack standing under Massachusetts antitrust law as well, and so they
    cannot bring a § 11 claim that is premised on an antitrust violation."); *In re Asacol Antitrust Litig.*,

22  2016 WL 4083333, at *13 ("Because *Ciardi* suggests that § 11 must be interpreted consistent with
    *Illinois Brick* and claims under the two sections are mutually exclusive, any claim under Mass. Gen.

23  L. c. 93A by the Health Fund Plaintiffs must be dismissed.") (citing *United Food & Comm. Workers
    Local 1776,* 74 F. Supp. 3d at 1086 (concluding that an employee health and welfare plan plaintiff

24  had no standing under Chapter 93A); and *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2013

25  WL 2456612, at *29 (E.D. Mich. June 6, 2013) (indirect purchaser business plaintiff had no standing
    under Section 9 or 11 of the MCPA)); *In re Suboxone (Buprenorphine Hydrochloride and Naloxone)*

26  *Antitrust Litig.*, 64 F. Supp. 3d 665, 700-01 (E.D. Pa. 2014) (dismissing Section 11 claims of indirect
    purchaser businesses).

27

28

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND
AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

1   MCPA was never litigated in this IPP case before.  Moreover, IPP Counsel's current position is
2   consistent with their general position all along (and consistent with their duty of fairness to all Class
3   Members, not just those in Massachusetts): that only Class Members with valid indirect purchaser
4   claims for damages should receive compensation.  Accordingly, IPP Counsel's proposed plan of
5   distribution is consistent with the understanding of the law that IPP Counsel have had throughout
6   this case.  There is no conflict of interest.

7         Finally, with regard to the estimated claims for New Hampshire, even if it is true that people
8   from other states purchased CRT products in New Hampshire, that would be reflected in the Gross
9   State Product on which Schwartz's analysis is based (and a higher estimate of claims for New
10  Hampshire).  In addition, only individuals and small businesses likely crossed into New Hampshire
11  to purchase such products, and so the likelihood of this causing a much larger volume of claims than
12  anticipated is very low.

### C. Rule 60(b) Does Not Apply Because The Court Retains Continuing Jurisdiction Over The Plan of Distribution And The Attorneys' Fees

15        Contrary to Objectors' assumption, IPPs' motion is not based on Rule 60(b).  Rule 62.1
16  permits the district court to issue an indicative ruling on any motion, not just Rule 60(b) motions.
17  *Ret. Bd.*, 297 F.R.D. at 221; *accord* Fed. R. Civ. P. 62.1 adv. comm. note.  IPPs do not seek relief
18  from a judgment.  IPPs instead seek amendments to the fee award and distribution plan, which are
19  subject to the district court's continuing jurisdiction and are not final until all the settlement funds
20  have been distributed. Final Judgment ¶ 10, ECF No. 4717 at 4.

21        In class actions, a district court has broad and "traditional equity powers" to modify its
22  previous orders to protect claimants until the settlement fund is distributed. *See Zients v. Lamorte*,
23  459 F.2d 628, 630 (2d Cir. 1972); *Curtiss-Wright Corp. v. Helfand*, 687 F.2d 171, 174 (7th Cir.
24  1982) (Posner, J.); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 321 (3d Cir.
25  2001); *e.g.*, *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977) (district court has
26  wide discretion to allow or refuse to allow late claims contrary to the terms of an approved
27  settlement); *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 194 (3d Cir. 2000) (same). It is

28

1    likewise proper for a district court to retain continuing jurisdiction over an attorney's fee award.

2    *Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 752-53 (4th Cir. 2003).

3         The exercise of this power does not require the alteration of the settlement agreement and

4    hence the judgment approving it, when the amount of the total settlement paid by defendants is not

5    affected. "[W]here a change in the allocation of a settlement fund affects only the distribution among

6    class members and not the obligations of the defendant, courts will exercise their equitable power."

7    *Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 446 (S.D.N.Y. 2004).  In *Beecher v.*

8    *Able*, for example, the Second Circuit explained that the district court did not need to revisit or

9    reform the settlement agreement in order to "exercise its broad supervisory powers over the

10   administration of class-action settlements to allocate the proceeds among the claiming class

11   members more equitably." 575 F.2d 1010, 1016 (2d Cir. 1978). The district court's final judgment

12   had been entered more than a year prior, but no resort to Rule 60(b) was necessary in order to revise

13   the plan of allocation more equitably. *Id.*

14        Here, IPPs do not seek to disturb the settlements approved in the Court's Final Judgment.

15   They seek only an amendment to the distribution and fee order, both of which are subject to the

16   Court's continuing jurisdiction to review for fairness, reasonableness, and adequacy. *See In re Exxon*

17   *Valdez*, No. A89-0095, 1996 WL 384623, at *2 (D. Alaska June 11, 1996) ("In considering whether

18   to approve an allocation plan, the court applies the same standard used when considering approval of

19   class action settlements."), *aff'd*, 161 F.3d 12 (9th Cir. 1998); *see supra* fn. 6. This does not require

20   re-opening the district court's previous order; IPPs are simply asking for the issuance of a new order

21   approving the amended plan of distribution and fee award.

22        **D.  IPPs Filed a Combined Motion under Rule 62.1 and a Motion to Amend the Fee**
             **Order and Plan of Distribution.**

23

24        IPPs' Rule 62.1 motion is predicated on their request for an amendment of the Fee Order and

25   the distribution plan.  Objectors argue that this Court should require IPPs to file two separate

26   motions, even though a combined motion is more efficient for the Court and the parties. Indeed, the

27   very case law cited by Objectors reveals that courts are willing to consider Rule 62.1 motions

28

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND
AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

1  combined with the underlying substantive request. In *Kenning v. Berryhill*, the district court

2  "deemed" the Rule 62.1 motion to be "a Combined Motion Pursuant to Rule 60(b) and Rule

3  62.1(a)." No. 6:16-CV-06778, 2018 WL 1640598, at *2 (W.D.N.Y. Apr. 5, 2018).

4       The Ninth Circuit has given itself and its district courts wide latitude in determining whether

5  to require procedural formality with respect to Rule 62.1. *See, e.g.*, *Prosterman v. Am. Airlines, Inc.*,

6  __ F. App'x __, 2018 WL 4018147, at *3 (9th Cir. Aug. 23, 2018) (affirming a district court which

7  allowed the movant to file a single, combined motion); *United States v. Shetty*, 543 F. App'x 675,

8  675 & n.1 (9th Cir. 2013) (a district court can act under Rule 62.1 *sua sponte*, in the absence of any

9  motions at all); *Mendia v. Garcia*, 874 F.3d 1118 (9th Cir. 2017) (the Ninth Circuit can proceed

10 under Fed. R. App. P. 12.1 even if the district court never issued a Fed. R. Civ. P. 62.1 ruling).

11      "[I]n the interest of effectively using our time and resources, as well as a means of legitimate

12 case management," *Mendia*, 874 F.3d at 1122, IPPs respectfully request this Court accept their

13 combined motion under Rule 62.1 and the motion to amend the fee order and plan of distribution.

## E. Certain Objectors Lack Standing To Oppose This Motion Because They Lack Standing To Bring Claims Under Any Of The Three States' Statutes

16      IPPs have previously addressed the background and motivations of counsel for the Objectors.

17 *See* ECF Nos. 4370-1 ¶¶ 7-32, 4371-1 ¶ 26, 4853 at 15, 25-31, 49. Thus, there is no need to repeat

18 that here.  It is important to note, however, that certain Objectors lack standing to oppose this motion

19 because they lack standing to bring claims under any of the Three States' statutes.

20      Dan L. Williams is a business located in Kansas. ECF No. 4112 at 1, 18.  Williams' Rule

21 30(b)(6) deposition testimony establishes that it does not have statutory standing under the MMPA

22 because it did not purchase CRT Products "primarily for personal, family or household purposes."

23 Mo. Stat. § 407.025.1. First, Mr. Williams stated that he searched for "pictures of CRT[s]" *in his*

24 *office*.  *See* Appeal No. 16-16378, Dkt. Entry 125-1 (Williams Dep. Tr.) at 25:18-2, 25:12 (emphasis

25 added); *see also id.* at 25:18-20 ("I've made searches of records at least *within the office* to try to

26 find receipts and things, but again, the massive record keeping in my firm . . .") (emphasis added).

27

28

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND
AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

1    Second, Mr. Williams noted that, with respect to televisions, the Williams company
2 purchased one "for an office." *Id.* at 26:9-12 ("If they're television sets, maybe one of them was
3 been [*sic*] purchased by Dan L. Williams and Company *for an office* but the rest would have been
4 purchased personally [*i.e.*, purchased by Dan Williams, not the Williams accounting firm].")
5 (emphasis added).  Mr. Williams did not object to the settlements in his personal capacity, and has
6 therefore waived any objection he may have had. *Devlin v. Scardelletti*, 536 U.S. at 13 (2002).
7 Thus, any purchases by Mr. Williams (as opposed to the Williams business) are irrelevant to the
8 question of whether the Williams business has standing to appeal the release of the MMPA claim.

9    Third, Mr. Williams noted that the company's motivation for objecting to the settlement was
10 to recover overages *that the Williams business incurred*.  *See* Williams Dep. Tr. at 32:12-16 ("I've
11 been in business for many, many, many years and it seems that most of us in small business are on
12 the short end of the stick when it comes to overcharging and to suffering a tremendous amount of
13 overhead"); *id.* at 37:22-24 ("I'm tired of being shortchanged by a variety of vendors over my
14 business lifetime").  In sum, the Williams company is an accounting firm with three employees
15 (excluding Mr. Williams), *id.* at 11:10-15, and, as such, it purchased computer monitors primarily
16 for business operations.  Therefore, Williams has no standing under the MMPA and should not be
17 permitted to object to this motion. *See* Opening Br. at 25-26.

18    Rockhurst University, which is located in Missouri, likewise lacks statutory standing to sue
19 under the MMPA.  In its original objection, Rockhurst stated that it "is a purchaser of CRT products
20 for its own use and not for resale."  ECF No. 4113 at 3. Subsequently, in response to IPPs' argument
21 that it lacks standing to sue under the MMPA, Rockhurst has claimed—without supporting
22 evidence—that it purchased CRT computer monitors for its students.  But courts in this district have
23 interpreted the MMPA to confer standing "only upon persons who purchase property for their *own*
24 personal, family or household purposes. *See, e.g.*, *Los Gatos Mercantile, Inc v. E.I. DuPont De
25 Nemours & Co*., No. 13-CV-01180-BLF, 2015 WL 4755335, at *23 (N.D. Cal. Aug. 11, 2015)
26 (emphasis in original) (quoting *In re Actimmune Marketing Litig*., No. C 08-02376-MHP, 2010 WL
27
28

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND
AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

1    3463491, at *12 (N.D. Cal. Sept. 1, 2010)).   Because Rockhurst has not and cannot make this

2    showing, it lacks standing under the MMPA, and should not be permitted to object to this motion.

3             Only Jeff Craig claims to have purchased a CRT Product in New Hampshire. ECF No. 4119

4    at 3.   However, Mr. Craig failed to sign his objection and prove membership in the class (*see*

5    *generally id.*), as required by this Court's Preliminary Approval Order (ECF No. 3906 ¶ 18) and the

6    Detailed Notice (ECF No. 4371-1).   IPP Counsel were unable to depose Mr. Craig to verify his class

7    membership because they could not locate him, and his counsel, Mr. Bonsignore, refused to provide

8    his address or accept service of the subpoena. ECF No. 4370-2 ¶ 5.   Thus, there is no evidence that

9    Mr. Craig is a member of the Class.

10            Finally, since none of the other Objectors claim to have purchased CRT Products in New

11   Hampshire,[22] they too lack standing to bring a New Hampshire claim and should not be permitted to

12   oppose this motion. *See In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1095-

13   96 (S.D. Cal. 2017) ("The overwhelming majority of courts have held that Article III standing for

14   state law claims is necessarily lacking when no plaintiff is alleged to have purchased a product

15   within the relevant state.").

16   **III. CONCLUSION**

17            For all of the foregoing reasons, IPPs respectfully request that this Court indicate that it

18   would grant IPPs' motion to amend the fee award and the plan of distribution, or that it raises a

19   substantial issue.  Fed. R. Civ. P. 62.1.

20   Dated:  October 22, 2018                        Respectfully submitted,

21                                                    */s/ Mario N. Alioto*

22                                                    Mario N. Alioto (56433)
                                                      malioto@tatp.com
23                                                    Joseph M. Patane (72202)
                                                      jpatane@tatp.com

24   ───────────────────────────
     [22] *See* ECF No. 4119 at 2-3 (Anthony Gianasca claims to have purchased in Massachusetts;
25   Rosemary Ciccone claims to have purchased in Rhode Island; Gloria Comeaux claims to have
     purchased in Nevada; Jeffrey Speaect claims to have purchased in South Dakota; and the Estate of
26   the Late Deryl R. Edwards claims to have purchased in Missouri); ECF No. 4118 at 3 (Gary
     Talewsky and Harry Garavanian claim to have purchased in Massachusetts).
27

28
─────────────────────────────────────────────
INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND
AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lauren C. Capurro (241151)
laurenrussell@tatp.com
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415-346-0679

*Lead Counsel for Indirect Purchaser
Plaintiffs*

INDIRECT PURCHASER PLAINTIFFS' REPLY RE: MOTION PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND
AMEND THE PLAN OF DISTRIBUTION, Master File No. 07-cv-05944-JST, MDL No. 1917