Joseph R. Saveri
Steven N. Williams
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Phone: (415) 500-6800
Fax: (415) 395-9940
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com

COHEN & GRESSER LLP
Melissa H. Maxman (*Pro Hac Vice* to be submitted)
Erica C. Lai (SBN 261787)
2001 Pennsylvania Ave, NW, Suite 300
Washington, DC 20006
Phone: (202) 851-2070
Fax: (202) 851-2081
mmaxman@cohengresser.com
elai@cohengresser.com

ANDREW J. McGUINNESS, ESQ.
Andrew J. McGuinness (*Pro Hac Vice* to be submitted)
122 S Main St., Suite 118
P.O. Box 7711
Ann Arbor, MI  48107
Phone: (734) 274-9374
Fax: (734) 786-9935
drewmcg@topclasslaw.com

*Counsel for Intervenor Plaintiffs*
DOUGLAS KING and GEORGE FELDMAN

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917 |
| | Case No. 07-cv-5944 JST |
| This Document Relates To: | **NOTICE OF MOTION AND MOTION TO INTERVENE** |
| ALL INDIRECT PURCHASER ACTIONS | Hearing Date: February 28, 2019 Time: 2:00 p.m. Courtroom: 9, 19th Floor Judge: Honorable Jon S. Tigar |

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION .......................................................................................................1

   A.    The Court previously approved three rounds of IPP settlements and Lead
         Counsel's request for attorneys' fees. ................................................................. 3

   B.    Eleven objectors appealed the Court's third final approval order. ....................... 6

   C.    The Court denied Lead Counsel's motion for an indicative ruling amending the
         fee order and revising the plan of distribution, while expressing concerns about
         Lead Counsel's ability to adequately represent IPPs' interests. ........................... 6

III.  ARGUMENT.............................................................................................................. 7

   A.    The Court has jurisdiction to rule on Intervenor Plaintiffs' motion. .................... 7

   B.    Intervenor Plaintiffs' proposed solution of creating subclasses with separate
         representation to address the intra-class conflicts in this case is a reasonable one.8

   C.    Intervention of right under Rule 24(a) is warranted, because Lead Counsel has
         not adequately represented Intervenor Plaintiffs' interests. ................................ 9

   D.    Permissive intervention is appropriate under Rule 24(b), because Intervenor
         Plaintiffs' claims share common questions of fact and law with the main action. 14

IV.   CONCLUSION .........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ..................................................................*passim*

*Arakaki v. Cayetano,* 324 F.3d 1078 (9th Cir. 2003) ............................................................... 14

*Castillo v. GMC*, No. CIV. 07-2142 WBS GGH, 2008 U.S. Dist. LEXIS 82337, at *7, n.3 (N.D. Cal. Sep. 8, 2008) .................................................................................................... 10

*Chamberlain v. Allstate Inc. Co.*, 931 F.2d 1361 (9th Cir. 1991) .................................................. 8

*Diaz v. Trust Territory of Pacific Islands,* 876 F.2d 1401, 1405, n. 1 (9th Cir. 1989) ........................... 10, 13

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) ................................................................. 10

*First-Citizens Bank & Trust Co. v. Outsource Services Management*, No. 12-1734, 2012 U.S. Dist. LEXIS 196639 (D. Minn. Aug. 29, 2012) ........................................................................ 8

*Forest Conservation Council v. United States Forest Service,* 66 F.3d 1489, 1493 (9th Cir. 1995) .............................................................................................................. 10, 14

*Glass v. UBS Financial Services*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8509 (N.D. Cal. Jan. 17, 2007) .................................................................................................. 13

*Griggs v. Provident Consume Discount Co.*, 459 U.S. 56 (1982) .................................................... 8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................................*passim*

*Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 U.S. Dist. LEXIS 20628 (N.D. Cal. Feb. 19, 2016) .................................................................................................... 13

*In re Community Bank of N. Va. & Guar Nat'l Bank of Tallahassee Second Mortgage Loan Litig.,* 418 F.3d 277 (3d. Cir. 2005) ......................................................................... 2, 12

*In re DRAM Antitrust Litigation*, No. C 06-4333 PJH, 2013 U.S. Dist. LEXIS 188116 (N.D. Cal. Jan. 8, 2013) .................................................................................................. 2

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litigation*, 827 F.3d 223 (2d Cir. 2016) ................................................................................................*passim*

*In re Volkswagen "Clean Diesel" Marketing, Sale Practices, & Products Liability Litigation*, 895 F.3d 597 ................................................................................................... 1

*Koby v. ARS National Services*, 846 F.3d 1071 (9th Cir. 2017) ................................................... 6

*Lawson v. Grubhub, Inc.*, No. 15-cv-05128-JSC, 2018 U.S. Dist. LEXIS 201718 (N.D. Cal. Nov. 28, 2018) ................................................................................................................ 8

*Lenk v. Monolithic Power Systems*, No. 16-CV-02625-BLF, 2017 U.S. Dist. LEXIS 148505 (N.D. Cal. Sep. 13, 2017) ........................................................................................ 8

*Literary Works in Elec. Databases Copyright Litigation v. Thomson Corp.*, 654 F3d 242 (2d Cir. 2011) ............................................................................................................... 2

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ............................................................... 7

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................*passim*

*Resolution Trust Corp. v. Smith*, 53 F.3d 72 (5th Cir. 1995) ............................................ 8

*Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525 (9th Cir. 1983) ................................... 14

*Smith v. L.A. Unified School District*, 830 F.3d 843 (9th Cir. 2016) ............................... 11

*Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ........... 13

*Trulis v. Barton*, 107 F.3d 685 (9th Circ. 1995) .............................................................. 8

*Ubaldi v. SLM Corp.*, No. C-11-01320 EDL, 2014 U.S. Dist. LEXIS 192288 (N.D. Cal. Jun. 13, 2014) ............................................................................................. 2, 12, 13, 15

*United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977) ............................................... 11

*United States v. Alisal Water Corp.,* 370 F.3d 915 (9th Cir. 2004) ........................... 11, 13

*Wilderness Society v. United States Forest Service*, 630 F.3d 1173, 1178 (9th Cir. 2011) ........................... 10

**Statutes**

740 Ill. Comp. Stat. 10/4 (2015) ...................................................................................... 4

740 Ill. Comp. Stat. 10/7(2) (2015) .................................................................................. 4

Or. Rev. Stat. § 646.705(2) (2015) ................................................................................... 4

Or. Rev. Stat. § 646.775(1) (2015) ................................................................................... 4

Wash. Rev. Code § 19.86.080 (2015) ............................................................................... 4

Wash. Rev. Code § 19.86.080(1) (2015) ........................................................................... 4

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................................1, 13, 14

Fed. R. Civ. P. 23 (a)(4) .......................................................................................................... 9

Fed. R. Civ. P. 23(a)(4), (c)(4)(B) and (g)(2)(E) ................................................................. 9

Fed. R. Civ. P. 23(c)(4)(B) ...............................................................................................1, 2, 9

Fed. R. Civ. P. 23(d)(1)(b)(iii) ......................................................................................v, 2, 10

Fed. R. Civ. P. 23(g) ...............................................................................................................13

Fed. R. Civ. P. 23(g)(2)(E) ...................................................................................................... 2

Fed. R. Civ. P. 24(a) ....................................................................................................v, 9, 10

Fed. R. Civ. P. 24(b) ......................................................................................................v, 14

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS:

PLEASE TAKE NOTICE that on February 28, 2019 at 2:00 p.m., before the Honorable Jon S. Tigar United States District Court for the Northern District of California, 450 Golden Gate Ave., Courtroom 9, 19th Floor, San Francisco, California, counsel for Plaintiffs Douglass King and George Feldman ("Intervenor Plaintiffs" or "Plaintiffs") will, and hereby do, move for an Order permitting them to intervene in the Indirect Purchaser Plaintiff ("IPP") action pursuant to Federal Rules of Civil Procedure 23(d)(1)(B)(iii) and 24(a) and (b).

The motion is based on this notice; the accompanying memorandum of points and authorities in support of the motion; the Declarations of Joseph R. Saveri ("Saveri Decl."), Melissa H. Maxman ("Maxman Decl.") and Andrew J. McGuinness ("McGuinness Decl.") and their exhibits; and all other pleadings and papers filed in this action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs seek to intervene in this action because important questions have been raised regarding the representation of competing and potentially adverse interests of differently situated plaintiffs or groups of plaintiffs who are members of one or more of the certified and proposed classes. Intervenor Plaintiffs have an interest in ensuring that all IPP class members, with whom they share common interests, are adequately represented. The interests of due process and the principles underlying Rule 23 will be best served if the Intervenor Plaintiffs are permitted to intervene at this juncture.

Intervenor Plaintiffs have an interest in ensuring that they are represented by adequate counsel or counsel without actual or potential conflicts of interest. *See* ECF No. 5362 at 1, 2 (the Court has "concerns about the adequacy of counsel who negotiated that settlement or whether they faced a conflict of interest"). Where there are actual or potential intra-class conflicts—such as the ones here among IPP class members in repealer states of the certified class, class members in the omitted repealer states[1] and class members in non-repealer states—structural protections should be put in place, such as sub-classing and appointing separate counsel. *Amchem Prods. v. Windsor*, 521 U.S. 591, 627 (1997) ("[T]he settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected."); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) ("it is obvious after *Amchem* that a class divided between holders of present and future claims . . . requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998)("dual representation" inappropriate when two plaintiffs groups have conflicting interests); *In re Volkswagen "Clean Diesel" Marketing, Sale Practices, & Products Liability Litigation*, 895 F.3d 597, 607, n. 13 ("[w]here a conflict exists within a class, however, additional procedural safeguards—such as creating subclasses for groups with disparate interests and appointing separate counsel to represent the interests of each—may be required") (citing *Amchem*, 521 U.S. at 627; *Hanlon*, 150 F.3d at 1021)); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust*

---

[1] Massachusetts, Missouri and New Hampshire.

*Litigation*, 827 F.3d 223, 231 (2d Cir. 2016)("[o]ne common structural protection is division of the class into homogenous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel") (quoting *Ortiz,* 527 U.S. at 856); *In re DRAM Antitrust Litigation*, No. C 06-4333 PJH, 2013 U.S. Dist. LEXIS 188116, at *186 (N.D. Cal. Jan. 8, 2013) ("a fundamental conflict within a proposed class can be cured by providing each interest group with separate representation") (citing *Literary Works in Elec. Databases Copyright Litigation v. Thomson Corp.*, 654 F3d 242, 249 (2d Cir. 2011)(internal quotes omitted).

Given intra-class conflicts among at least three groups of class members here, Intervenor Plaintiffs believe the appropriate way to proceed is for the Court to appoint separate counsel to protect the interests of each group. Therefore, if this motion is granted, Intervenor Plaintiffs will, at the appropriate time, move to have the undersigned counsel appointed as Lead Counsel for the class members in the included repealer states pursuant to Fed. R. Civ. P. 23(g)(2)(E). Intervenor Plaintiffs would also suggest that the Court appoint separate counsel for the omitted repealer states and for the non-repealer states. This division into subclasses is consistent with Supreme Court precedent and the solutions proposed and adopted by courts that have confronted analogous facts in the past. *See Amchem*, 521 U.S. at 627; *Ortiz*, 527 U.S. at 857; *Hanlon*, 150 F.3d at 1021; and *Payment Card Interchange*, 827 F.3d at 231.

Intervenor Plaintiffs are members of a distinct and homogenous group of plaintiffs, namely they purchased products containing cathode ray tubes during the class period. The Intervenor Plaintiffs resided in Michigan, one of the twenty-two indirect purchaser state damages classes previously certified by this Court, and they indirectly purchased cathode ray tubes during the relevant period. They are members of the Certified Class previously certified by the Court.  (ECF Nos. 1742; and 1950). Saveri Decl. ¶¶ 3-4. These Plaintiffs are therefore members of the Certified Class of included repealer states and are entitled to intervene in this action to pursue their claims and seek redress for their injuries. *See Ubaldi v. SLM Corp.*, No. C-11-01320 EDL, 2014 U.S. Dist. LEXIS 192288, at *14 (N.D. Cal. Jun. 13, 2014) (citing *In re Community Bank of N. Va. & Guar Nat'l Bank of Tallahassee Second Mortgage Loan Litig.,* 418 F.3d 277, 314 (3d. Cir. 2005)).

Finally, Intervenor Plaintiffs have an interest in litigating their claims against the two remaining sets of Defendants: (1) IRICO Group Corporation, IRICO Display Devices Co., Ltd., and IRICO Group Electronics Co., Ltd. (collectively, "IRICO"); and (2) Mitsubishi Electric Corporation ("Mitsubishi Electric"), Mitsubishi Electric & Electronics USA, Inc.; and Mitsubishi Digital Electronics Americas, Inc. (collectively, "Mitsubishi"). Intervenor Plaintiffs have a direct monetary interest in these claims because they are members of the Certified Class.

## II.   FACTUAL AND PROCEDURAL POSTURE

### A.   The Court previously approved three rounds of IPP settlements and Lead Counsel's request for attorneys' fees.

IPPs' Fourth Consolidated Amended Complaint ("FCAC") asserts damages claims on behalf of class representative plaintiffs in twenty-two states which have authorized indirect purchasers to seek damages for antitrust overcharges under the laws of those respective states. ECF No. 1526. The Court certified separate state damages classes consisting of residents of each state that purchased a cathode ray tube as part of a television or monitor (the "Certified Class"). ECF No. 1950. Intervenor Plaintiffs are members of the Certified Class. Saveri Decl. ¶¶ 3-4. They did not opt out. *Id*.

The Court has approved eight IPP settlements in three separate orders. *See* ECF Nos. 992 (Chungwa for $10,000,000); 2542 (LG Electronics for $25,000,000); and 4712 (Phillips for $175,000,000, Panasonic for $70,000,000, Hitachi for $28,000,000, Toshiba for $30,000,000, Samsung SDI for $225,000,000, and Thompson and TDA for $13,750,000). The combined total for the IPP settlements is $576,750,000. ECF No. 4712 at 2. The Court also issued an order approving Lead Counsel's requested attorneys' fees in the amount of $158,606,250. ECF No. 4740 at 2.[2]

The third final approval order certified a nationwide injunctive relief class and statewide damages settlement classes of indirect purchasers (the "Settlement Class") defined as follows:

NATIONWIDE CLASS:

All persons and or entities who or which indirectly purchased in the United States for their own use and not for resale, CRT Products[3] manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or alleged co-conspirator thereof, at any time

---

[2] The term "Lead Counsel" refers to the law firm of Trump, Alioto, Trump & Prescott, LLP.

[3] CRT Products are defined in the Settlement Agreements to mean cathode ray tubes of any type, including. color display tubes, color picture tubes, monochrome display tubes and products containing cathode ray tubes.

during the period from March 1, 1995 through November 25, 2007. Specifically excluded from this Class are claims on behalf of Illinois persons (as defined by 740 ILCS 10/4) for purposes of claims under 740 Ill. Comp. Stat. § 10/7(2), Oregon natural persons (as defined by ORS 646.705 (2)) for purposes of claims under ORS § 646.775(1), and Washington persons (as defined by RCW 19.86.080) for purposes of claims under RCW 19.86.080 (1). Also specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant. Also excluded are named co-conspirators, any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

<u>STATE DAMAGE CLASSES:</u>

All persons and or entities in Arizona, California, District of Columbia, Florida, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin who or which indirectly purchased for their own use and not for resale, CRT Products manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or alleged co-conspirator thereof, at any time during the period from at least March 1, 1995 through November 25, 2007.

All persons and entities in Hawaii who or which indirectly purchased for their own use and not for resale CRT Products manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or alleged co-conspirator thereof, at any time from June 25, 2002 through November 25, 2007.

All persons and entities in Nebraska who or which indirectly purchased for their own use and not for resale CRT Products manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or alleged co-conspirator thereof, at any time from July 20, 2002 through November 25, 2007.

All persons and entities in Nevada who or which indirectly purchased for their own use and not for resale CRT Products manufactured and/or sold by the Defendants, or any subsidiary, affiliate, or alleged co-conspirator thereof, at any time from February 4, 1999 through November 25, 2007.

Specifically excluded from these Classes are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant. Also excluded are named co-conspirators, any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

ECF No. 3906 (Preliminary Approval Order) at 1-2. Intervenor Plaintiffs are members of the Settlement Class. They did not opt out.

The Settlement Class is broader than the Certified Class in three material respects: "(1) the Certified Class requires that the Indirect Purchaser State Class members be residents of the respective States, whereas the Settlement Class requires only that the purchases was made in one of the states; (2) the Certified Class is limited to televisions and monitors containing CRTs, whereas the Settlement Class includes CRTs, televisions and monitors containing CRTs, and other products containing CRTs; and (3) the Certified Class consists of the Indirect Purchaser State Classes [], while the Settlement Class also includes the Nationwide Class." ECF No. 437 at 5. [4]

On January 28, 2016, Special Master Quinn issued a Report and Recommendation approving the third round of settlements and certifying the Settlement Class. ECF No. 4351 ("R&R"). Nine parties, including Lead Counsel, filed objections to the R&R. *See* ECF Nos. 4400 ("IPP Obj."); 4401 ("Clifton Obj."); 4384 ("Saik Obj."); 4101 ("Hull Obj."); 4436 ("RU Obj."); 4437 ("C-S Obj."); 4439 ("St. John Obj."); 4440 ("Bonsignore Obj.") and 4466 ("Williams Obj."). Two groups of State Attorneys General filed Statements of Interest ("SOI") relating to these settlements. ECF Nos. 4462 ("Non-Repealer State SOI"); 4463 ("MA & MO SOI"). Multiple objectors opposed approval of settlements, arguing, among other things, that the settlements should not be approved because they required "the release of the injunctive relief claims of class members in non-repealer states and three omitted repealer states without providing monetary consideration."[5]  ECF No. 4712 at 17. The objectors have also consistently raised concerns regarding procedural fairness. They argued that plaintiffs—or groups of plaintiffs—possessed different and divergent interests yet those interests were represented—and compromised—

---

[4] The Court granted final approval for the prior two rounds of settlements and certified the settlement classes proposed therein. *See* ECF Nos. 992 (granting final approval of IPPs' settlement with Chungwa and certifying settlement class consisting of 24 state damages classes); 1106 (entry of final judgement as to Chungwa); 2542 (granting final approval of IPPs' settlement with the LG Entities and certifying settlement classes consisting of a nationwide injunctive relief class and 22 state damages classes); 2543 (entry of final judgement as to LG Entities). One objector appealed the order approving the Chungwa settlement (ECF No. 1111), and this appeal was voluntarily dismissed on July 30, 2012 (ECF No. 1303).

[5] The three Omitted Repealer States are Massachusetts, Missouri and New Hampshire.

by a single class counsel. *See, e.g.,* RU Obj. at 2-9; Williams Obj. at 6-8; Appeal No. 16-16379, Dkt. Entry 70 ("Rockhurst AOB") at 32-58; and Appeal No. 16-16378, Dkt. Entry 35 ("Williams AOB") at 23-31.

### B. Eleven objectors appealed the Court's third final approval order.

Eleven objectors appealed the Court's order approving the third round of settlements. ECF Nos. 4741; 4743; 4744; 4745; 4746; 4747; 4749; 4751; 4752; 4753; 4756; and 4757. Five of these appeals, filed by three groups of objectors, remain pending before the Ninth Circuit. *See* ECF No. 5335-1 at ¶ 2.

The appeals raise concerns regarding the compromise of certain plaintiffs' claims in the context of settlements where all plaintiffs were represented by a single class counsel. *See, e.g.,* Rockhurst AOB at 57 ("To allow Lead Counsel's own failings to render [these] claims 'worthless' under *Koby* would permit Lead Counsel in class actions to collect millions in fees while leaving the affected class members with nothing.") (citing *Koby v. ARS National Services*, 846 F.3d 1071 (9th Cir. 2017)).[6]

The Ninth Circuit heard oral argument on April 10, 2017 and referred the appeals to mediation on April 30. ECF No. 5283. The Ninth Circuit ordered the parties to attend an in-person mediation with Hon. Vaughn R. Walker (Ret.) and Circuit Mediator Roxane G. Ashe, starting on July 10, 2018. *See* ECF No. 5335 at 5. The parties have been unable to reach an agreement through mediation. *Id.*

### C. The Court denied Lead Counsel's motion for an indicative ruling amending the fee order and revising the plan of distribution, while expressing concerns about Lead Counsel's ability to adequately represent IPPs' interests.

On October 1, 2018, Lead Counsel moved this Court for an "indicative ruling" on its motion to amend the fee order and plan of distribution to reallocate $6 million of attorneys' fees to pay the claimants in these states. ECF No. 5356 at 1. Lead Counsel asserted that "[w]hile each of the Three States may have allowed claims by indirect purchasers, statewide damages classes were not certified for those states because no viable class representatives were available to Lead Counsel." ECF No. 5335 at 5. Lead Counsel proposed to reduce their fee award by $6 million and allocate that money towards the net settlement fund for distribution to class members in those three states. *Id.* at 6-8. Lead Counsel also moved to amend the distribution plan to permit those class members to submit claims. *Id.* at 8-9.

---

[6] The objectors also argued that while the Court previously held that the statute of limitations had run on the damages claims for the Omitted Repealer States, those claims remained viable under *American Pipe* tolling and relation back theories. *See, e.g.,* Rockhurst AOB at 58-70; and Williams AOB at 26-31.

On November 8, 2018, this Court issued an order denying Lead Counsel's motion. ECF No. 5362. The Court explained that it "erred in approving the provision [in the settlement] that required class members in the Omitted Repealer States[7] to release their claims without compensation." *Id.* at 1. The Court also explained that upon reaching this conclusion, it had "concerns about the adequacy of counsel who negotiated that settlement or whether they faced a conflict of interest." *Id.* The Court was not persuaded by Lead Counsel's offer to give up $6 million in fees to compensate these class members, and stated that "[e]ven now, Lead counsel appears to be bargaining with the Court to reduce the perceived value of the claims of class members in the Omitted Repealer States" by asserting that the statute of limitations had run, and that "a likely scenario [on remand] would be that their claims would be dismissed with prejudice." *Id.* at 2 n.2; *see also* ECF No. 5335-1 at 16.

The Court further explained that "regardless of whether the issue is framed as one of conflict of interest or adequacy of counsel, it requires further exploration and potentially the appointment of separate counsel." ECF No. 5362 at 2. The Court remained concerned that "not [] all the potential problems with the proposed amended settlement have been identified," that "proposed-to-be-newly-included class members in the Omitted Repealer States have not yet received notice," and "there appear to be other issues on appeal besides the lack of compensation to class members in the Omitted Repealer States." *Id.*; *see also Molski v. Gleich*, 318 F.3d 937, 948 (9th Cir. 2003) ("certain procedural safeguards, such as notice and the right to opt out, must be provided to bind absent class members when substantial monetary damages are involved").  The Court also stated that "if class members in the Omitted Repealer States ultimately do receive a recovery from the IPP settlement, it will have resulted from the efforts of one or more objectors, [who] will then be entitled to apply for an award of attorneys' fees." ECF No. 5362 at 2.

## III. ARGUMENT

### A. The Court has jurisdiction to rule on Intervenor Plaintiffs' motion.

The Court has jurisdiction to rule on this motion. The pendency of the appeals does not divest the Court of power to rule on the instant motion for several reasons. First, the filing of an appeal only

---

[7] *See* footnote 5, above.

divests the Court of jurisdiction over "those aspects of the case involved in the appeal." *Lenk v. Monolithic Power Systems*, No. 16-CV-02625-BLF, 2017 U.S. Dist. LEXIS 148505, at *7 (N.D. Cal. Sep. 13, 2017) (citing *Griggs v. Provident Consume Discount Co.*, 459 U.S. 56, 58 (1982)). Second, the district court retains jurisdiction over all other matters not raised on appeal. *See Trulis v. Barton*, 107 F.3d 685, 695 (9th Circ. 1995) (holding that the district court had jurisdiction to decide issues that were "not part of the appeal"); *Resolution Trust Corp. v. Smith*, 53 F.3d 72, 76 (5th Cir. 1995) (same). Here, there are two remaining Defendants: Mitsubishi and IRICO. Mitsubishi is a named "co-conspirator" and IRICO is a named Defendant. *See* FCAC ¶¶26, 95. Mitsubishi and IRICO are not part of the settlements involved in the appeals. Thus, this Court retains jurisdiction over the IPPs' claims against them.  Third, the Court also maintains continuing jurisdiction over the settlements it has approved, and which are not currently on appeal. *See* ECF Nos. 884-1 (Ex. 1, Chungwa Settlement, at ¶34); and 1933-1 (Ex. 1, LG Settlement, at ¶33). The Court therefore has jurisdiction to rule on Intervenor Plaintiffs' motion. *See First-Citizens Bank & Trust Co. v. Outsource Services Management*, No. 12-1734, 2012 U.S. Dist. LEXIS 196639, at *3 (D. Minn. Aug. 29, 2012) (granting intervention motion while appeal was pending, because it involved issues "not involved in the appeal") and *Chamberlain v. Allstate Inc. Co.*, 931 F.2d 1361, 1366 (9th Cir. 1991)(holding that "district courts generally have the virtually unflagging obligation to exercise the jurisdiction given them")(internal quotes omitted).[8]

**B. Intervenor Plaintiffs' proposed solution of creating subclasses with separate representation to address the intra-class conflicts in this case is a reasonable one.**

Where there are intra-class conflicts, such as the ones here, it is appropriate for courts to create structures to protect the procedural fairness of the settlement, such as the creation of subclasses with separate representation. *See Ortiz*, 527 U.S. at 821 (the class claimants should have been divided into subclasses and represented by separate class representatives and counsel); *Amchem*, 521 U.S. at 627 (the district court's failure to create subclasses meant that "there was no structural assurance of fair and

---

[8] If it determines that it lacks jurisdiction, the Court may also construe the instant motion as a Rule 62.1 Motion for Indicative Ruling and may state now "whether [it] would grant the motion if the court of appeals remand for that purpose or that the motion raises a substantial issue." *See Lawson v. Grubhub, Inc.*, No. 15-cv-05128-JSC, 2018 U.S. Dist. LEXIS 201718, at *5-6 (N.D. Cal. Nov. 28, 2018).

adequate representation for the diverse groups of individuals affected" by the proposed settlement.); *Payment Card Interchange*, 827 F.3d at 231 (2d Cir. 2016)("[o]ne common structural protection is division of the class into homogenous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel"); Fed. R. Civ. P. 23 (a)(4) (requiring adequate representation); Fed. R. Civ. P. 23(c)(5) (requiring independent representation for subclasses to ensure that each individual class member receives fair and adequate representation). Due process is implicated when a class settlement inadequately protects the rights of the injured. *See Amchem*, 521 U.S. at 622-25 (affirming Third Circuit's overturning of a "sprawling" settlement class that failed to adequately protect the rights of class members who fell into the "exposure-only" category of claimants). Consistent with the requirements of due process as detailed in *Amchem, Ortiz,* and *Payment Card Interchange*, and the need to provide protection for the interests of all class members, Intervenor Plaintiffs propose that the Court adopt such a solution here. Under this proposal, the Court would create separate subclasses for each of (1) the included repealer states, (2) the Omitted Repealer States and (3) the non-repealer states. Under this Proposal, the Court would also appoint separate counsel and representative plaintiffs to represent each subclass pursuant to Fed. R. Civ. P. 23(a)(4), (c)(5) and (g)(2)(E).

With respect to the included repealer states, the undersigned counsel would be adequate class counsel. They are experienced in these matters and would adequately represent the interests of the class members in the included repealer states. Saveri Decl. ¶5; Maxman Decl.; McGuinness Decl. Given the circumstances in this case, and the inadequacy of Lead Counsel to adequately protect the interests of class members, Intervenor Plaintiffs suggest this is the appropriate way to proceed. This solution is well supported by case law. *See Amchem*, 521 U.S. at 627; *Ortiz*, 527 U.S. at 857; *Hanlon*, 150 F.3d at 1021; *Payment Card Interchange*, 827 F.3d at 231.

### C. Intervention of right under Rule 24(a) is warranted, because Lead Counsel has not adequately represented Intervenor Plaintiffs' interests.

Intervention of right is appropriate here. Intervenor Plaintiffs have a direct financial interest in the litigation because they purchased products containing cathode ray tubes and paid overcharges during the class period. They are thus capable of showing through common proof that they incurred damages and paid overcharges as a result of Defendants' cartel and related price-fixing activity. *See*

ECF No. 1950 (class certification order) at 16-18. They have also proposed a reasonable solution to the actual or potential intra-class conflicts present here.

Rule 24(a) provides for intervention as a matter of right for "anyone" who "claims an interest relating to the property or transaction that is subject to the action." Fed. R. Civ. P. 24(a); *see also* Fed. R. Civ. P. 23(d)(1)(B)(iii) (stating that the court may issue orders requiring notice be provided to class members providing them the "opportunity to . . . intervene and present claims or defenses"). A motion to intervene is a proper procedure to follow for a class member who wishes to join a lawsuit as a representative plaintiff. *See, e.g., Diaz v. Trust Territory of Pacific Islands,* 876 F.2d 1401, 1405, n. 1 (9th Cir. 1989) (overruled in part as stated in *Castillo v. GMC*, No. CIV. 07-2142 WBS GGH, 2008 U.S. Dist. LEXIS 82337, at *7, n.3 (N.D. Cal. Sep. 8, 2008)). As injured indirect purchasers, Plaintiffs have an interest in the "property or transaction that is subject to the action." Fed. R. Civ. P. 24(a); *see also* Fed. R. Civ. P. 23(d)(1)(B)(iii) (stating that the court may issue orders requiring notice be provided to class members providing them the "opportunity to… intervene and present claims or defenses"). Intervenor Plaintiffs also have an interest in being represented by adequate counsel. *See* Advisory Committee Notes to 1966 Amendment to Rule 24(a). ("a member of the class should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court").

Courts apply a four-part test when considering whether to grant a plaintiff's motion for intervention of right:

> (1) the motion must be timely; (2) the applicant must claim a significantly protectable interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Forest Conservation Council v. United States Forest Service,* 66 F.3d 1489, 1493 (9th Cir. 1995) (internal quotes omitted) (overruled on other grounds by *Wilderness Society v. United States Forest Service*, 630 F.3d 1173, 1178 (9th Cir. 2011)). The Court should "interpret the requirements broadly in favor of intervention." *See Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

Each requirement is satisfied here.

**First**, Intervenor Plaintiffs' application is timely. The Ninth Circuit has held that when evaluating the issue of timeliness, courts evaluate the "totality of the circumstances facing would be intervenors," and not merely the lapse of time between the motion for intervention and the initiation of the action. *Smith v. L.A. Unified School District*, 830 F.3d 843, 854 (9th Cir. 2016). Moreover, "[t]imeliness is a flexible concept; its determination is left to the district court's discretion." *United States v. Alisal Water Corp.,* 370 F.3d 915, 921 (9th Cir. 2004) (citation omitted). Intervenor Plaintiffs' decision to intervene occurs during the pendency of multiple claims against Defendants, including claims currently at issue before the Court and claims subject to appeals of settlements in the Ninth Circuit. The application is particularly timely given this Court's order of November 8, 2018 denying Lead Counsel's motion for an indicative ruling amending the fee award, which states that it is only "with the benefit of hindsight" and the additional context provided by counsel during oral argument to the Ninth Circuit in April of this year, that the Court reached the conclusion "that it erred in approving the parties' original settlement" and had "concerns about the adequacy of counsel who negotiated that settlement or whether they faced a conflict of interest." ECF No. 5362 at 1; *see also United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977) (holding that plaintiffs' intervention motion was timely where it was filed "as soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives").

Moreover, there is no prejudice to any party. The intervention will enhance the likelihood of resolution of this case if there is proper representation of plaintiffs and an absence of conflicts of interest. Indeed, this intervention comes following the appeals of the court's orders approving the settlements, the recently failed motion for an indicative ruling and the court's expressions of concern regarding the adequacy of counsel.

One of the main issues on appeal is Lead Counsel's simultaneous representation and settlement of the claims of purchasers in the Certified Class of repealer states, those located in the three Omitted Repealer States, and the non-repealer states. A settlement in which all plaintiffs were represented by one counsel and the settlement provided two groups no consideration in exchange for the release of their claims plainly implicates the principles of separate representation and adequacy of counsel as

described by the Supreme Court in *Amchem* and *Ortiz. See also Hanlon*, 150 F.3d at 1021; *Payment Card Interchange*, 827 F.3d at 231.

Lead Counsel has struggled to represent these competing interests. For example, it has taken two entirely contradictory positions regarding the viability of state damage claims for the Omitted Repealer States. During oral argument before the Ninth Circuit in October of 2018, Lead Counsel referred to IPPs' claims in the Omitted Repealer States as "valueless" because "[t]he statute of limitations actually ran on these, each of these claims a long time ago." ECF No. 5335-1 at 59. Lead Counsel then admitted that it included these claims in the release to achieve "complete peace," which in its view was "important to incentivize defendants to enter into class settlements of this magnitude." *Id*. Lead Counsel doubled down on this position and argued to this Court in their reply brief in support of their motion for an indicative ruling to amend the fee award, that if the claims in these three states were remanded after appeal, "a likely scenario would be that their claims would be dismissed with prejudice and Class Members in the Three States would receive nothing." ECF No. 5356 at 1. However, in February of 2018—six months <u>prior</u> to the Ninth Circuit argument and the filing of the reply brief just cited—Lead Counsel stated in its motion for preliminary approval of the Mitsubishi Electric settlement that "there <u>are</u> viable claims for these states." ECF No. 5245 at 1 (emphasis added).[9] Both statements cannot be true. This highlights the interest of the Intervenor Plaintiffs in the adequacy of representation and the importance of their proposed solution.

**Second**, Intervenor Plaintiffs have a significant protectable interest in the "property or transaction" at issue in this case, because they purchased products containing cathode ray tubes during the class period and are members of the Certified Class. Saveri Decl. ¶¶ 3-4. Intervenor Plaintiffs thus have a significant protectable interest based on class membership. *See Ubaldi*, 2014 U.S. Dist. LEXIS 192288, at *13 (citing *In re Community Bank of Northern Virginia Mortgage Loan Litigation*, 418 F.3d 277, 314 (3d Cir. 2005) (finding that the protectable interest factor is satisfied when an unnamed class member seeks to intervene "by the very nature of class action litigation")). Intervenor Plaintiffs seek

---

[9] Notably, in June of 2018, Lead Counsel filed a letter with this Court requesting that it "defer ruling" on the preliminary approval motion for the Mitsubishi Electric settlement "due to possible mediation of the prior settlements in this case (presently before the Ninth Circuit)." ECF No. 5304.

intervention here because "intervention is the preferred method for an absent class member to join a case as a named plaintiff, even prior to certification." *Id*. at *14 (citing *Diaz*, 876 F.2d at 1405, n.1). Intervenor Plaintiffs also have an interest in being represented by adequate and competent counsel. This is consistent with the principle that district courts have a "fiduciary duty to look after the interests of those absent class members." *See Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 U.S. Dist. LEXIS 20628, at *15 (N.D. Cal. Feb. 19, 2016) (citations omitted).

The undersigned are competent counsel. They have decades of experience representing plaintiffs and other parties to antitrust cases, class actions and other complex litigation. Saveri Decl. ¶ 5. They have been appointed by courts on numerous occasions to serve as Lead Counsel under Rule 23(g) or other leadership positions, and they would adequately represent the class members that indirectly purchased cathode ray tubes in the repealer states and are members of the Certified Class in this case. *Id*.

**Third**, disposition of the action without Intervenor Plaintiffs means that the case would proceed without representative plaintiffs with an interest in the subject matter of the litigation and who have an interest in adequate representation of class members. *See Glass v. UBS Financial Services*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8509, at *8 (N.D. Cal. Jan. 17, 2007) (stating that "because [Plaintiff] has not opted out of the class settlement, and the deadline to do so has passed, the Court finds that [Plaintiff] has demonstrated the disposition of the instant action may impair or impede his ability to protect his interest").[10] This includes representation with respect to both the claims that are not settled as well as those claims subject to the proposed settlements before the Ninth Circuit.

The interest in adequate representation is particularly strong given the strong public interest in proper Rule 23 class action procedures, as well as in the private enforcement of the antitrust laws. To the extent there are further settlement negotiations, the repealer states are entitled to separate representation, by competent counsel, without conflicts of interest, or the appearance of conflicts of

---

[10] There is no requirement that the party seeking to intervene show "an absolute certainty" that its interests will be impaired in support of its request. *See Alisal,* 370 F.3d at 919. Generally, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, [s]he should . . . be entitled to intervene." *Southwest Center for Biological Diversity v. Berg,* 268 F.3d 810, 822 (9th Cir. 2001).

interest such as undersigned counsel. *See* ECF Nos. 5362 at 2 ("there appear to be other issues on appeal besides the lack of compensation to class members in the Omitted Repealer States.")

Finally, Intervenor Plaintiffs have an interest in ensuring that procedural fairness exists pursuant to Rule 23 such as the creation of subclasses with separate representation. *See Amchem*, 521 U.S. at 627; *Ortiz*, 527 U.S. at 857; *Hanlon*, 150 F.3d at 1021; *Payment Card Interchange*, 827 F.3d at 231.

**Fourth**, Intervenor Plaintiffs satisfy the inadequate representation requirement. Intervenor Plaintiffs' burden in establishing this element is "minimal," and "it is sufficient to show that representation *may* be inadequate." *Forest Conservation Counsel*, 66 F.3d at 1498 (emphasis in original). The test is whether Lead Counsel will "undoubtedly make all the intervenor's arguments; whether the present party is capable and willing to make such arguments; and whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Id*. at 1498-99; *see also Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 528 (9th Cir. 1983). The most important factor is "how the interest compares with the interest of existing parties." *Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003). The "minimal" burden of showing inadequacy of representation is satisfied if the applicant can demonstrate that representation of its interests "may be" inadequate. *Id*. at 1086.

Here the minimal burden is easily satisfied. Lead Counsel has failed to represent all class members equally and has placed the interests of class members residing in repealer states that were included in the Certified Class of repealer states above class members in the omitted repealer states and the non-repealer states. These latter groups received nothing in exchange for the release of their claims and were not adequately represented. These issues were squarely raised in many of the objections to the settlements and subsequent appeals. *See* Rockhurst AOB at 32-58; and Williams AOB at 23-31. These are the very sorts of divergent interests which give rise to concerns about conflicts of interest and inadequate representation in *Amchem* and *Ortiz*. *See* ECF No. 5362 at 1, 2.

### D. Permissive intervention is appropriate under Rule 24(b), because Intervenor Plaintiffs' claims share common questions of fact and law with the main action.

Permissive intervention is appropriate in cases where previously absent class members seek to enter an ongoing action and bring claims that share common questions of fact and law with the main action. *See Ubaldi*, 2014 U.S. Dist. LEXIS 192288, at *16-17. Here, Intervenor Plaintiffs fit within the

1  class definition because they purchased products containing cathode ray tubes during the class period.

2  The common question of fact is whether they deserve compensation for the alleged overcharge paid by

3  all class members. Regardless of the answer, the question is the same for the Intervenor Plaintiffs and

4  the other class members. Each seeks compensation for overcharges resulting from Defendants' alleged

5  price-fixing. Intervenor Plaintiffs seek permissive intervention here so that they may protect their own

6  interests, and vigorously pursue their claims against the remaining Defendants as well as those that may

7  be brought back into the case due to Lead Counsel's mishandling of the settlement process.

## IV.    CONCLUSION

For the foregoing reasons, Intervenor Plaintiffs' motion should be granted.

Dated:  January 11, 2019                        Respectfully Submitted,

JOSEPH SAVERI LAW FIRM, INC.

By:    */s/ Joseph R. Saveri*
       Joseph R. Saveri
Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:  (415) 500-6800
Facsimile:   (415) 395-9940
jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com

Melissa H. Maxman (*Pro Hac Vice* to be submitted)
Erica C. Lai (SBN 261787)
COHEN & GRESSER LLP
2001 Pennsylvania Ave, NW, Suite 300
Washington, DC 20006
Phone:  (202) 851-2070
Fax:      (202) 851-2081
mmaxman@cohengresser.com
elai@cohengresser.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Andrew J. McGuinness (*Pro Hac Vice* to be submitted)
ANDREW J. McGUINNESS, ESQ.
122 S Main St., Suite 118
P.O. Box 7711
Ann Arbor, MI  48107
Phone:  (734) 274-9374
Fax:      (734) 786-9935
drewmcg@topclasslaw.com

*Counsel for Intervenor Plaintiffs*
DOUGLAS KING and GEORGE FELDMAN