Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the*
*Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-cv-05944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE** |
| **ALL INDIRECT PURCHASER ACTIONS** | Hearing Date: February 28, 2019<br>Time: 2:00 p.m.<br>Courtroom: 9, 19th Floor<br>Judge: Honorable Jon S. Tigar |

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.    THIS COURT LACKS JURISDICTION TO RULE ON THE MOTION ...................... 3

      A.    The Court Lacks Jurisdiction Because The Motion Is Based
            On Issues Raised In The Appeals ............................................................ 3

      B.    The Ongoing Litigation Against Mitsubishi Electric And Irico
            Does Not Provide A Jurisdictional Basis For This Motion ................... 4

      C.    A Rule 62.1 Motion Is Not Appropriate Here Because An Indicative
            Ruling On This Motion Will Not Obviate Or Further The Issues On
            Appeal ...................................................................................................... 6

II.   MOVANTS FAIL TO SATISFY THE CRITERIA FOR INTERVENTION
      UNDER RULE 24(A) ........................................................................................... 7

      A.    Legal Standard ........................................................................................ 7

      B.    The Motion Is Untimely .......................................................................... 8

      C.    Movants Currently Have No Protectable Interest In The Settlements
            On Appeal Because They Never Filed Claims ..................................... 10

      D.    Movants' Interests Are Adequately Protected By The Existing
            Michigan Class Representative And Lead Counsel ............................. 12

            1.    Movants Fail To Make A "Compelling Showing" That The
                  Existing Michigan Representative Will Not Adequately Represent
                  Them ........................................................................................... 13

            2.    Lead Counsel Has Adequately Represented The Interests Of
                  The 22 Certified Classes And Will Continue To Do So ............. 15

III.  MOVANTS FAIL TO SATISFY THE CRITERIA FOR PERMISSIVE
      INTERVENTION UNDER RULE 24(B) ................................................................ 20

IV.   CONCLUSION .................................................................................................. 20

**TABLE OF AUTHORITIES**

**Federal Cases**                                                                 **Page(s)**

*Allen v. Hyland's Inc.*, No. CV1201150DMGMANX, 2012 WL 12887827
    (C.D. Cal. Aug. 28, 2012) ...........................................................................12, 13

*Am. Pipe and Constr. Co. v. Utah*, 414 U.S. 538 (1974) ..........................................12

*Amchem Prods. v. Windsor,* 521 U.S. 591 (1997) ...................................................17

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003) .......................................12, 13, 14

*Bryant v. Crum & Forster Specialty Ins. Co.,* 502 F. App'x 670 (9th Cir. 2012) ...........................4

*California Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.,*
    309 F.3d 1113 (9th Cir. 2002) ......................................................................8, 9

*California ex rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006)....................................7

*Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361 (9th Cir. 1991) .........................................6

*Charron v. Wiener*, 731 F.3d 241, 253-54 (2d Cir. 2013) .......................................17, 18

*Church of Scientology of Cal. v. U.S.,* 506 U.S. 9 (1992) ..........................................5

*Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) .......................................16

*County of Orange v. Air California*, 799 F.2d 535 (9th Cir. 1986) .........................................8, 20

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) ...................................................10

*E. Bay Sanctuary Covenant v. Trump*, No. 18-CV-06810-JST, 2018 WL 6660080
    (N.D. Cal. Dec. 19, 2018) ...........................................................................3

*Executive Risk Specialty Ins. Co. v. Rutter Hobbs and Davidoff, Inc.,* 564 Fed. Appx. 887
    (9th Cir. 2014)......................................................................................10, 20

*Export-Import Bank of Republic of China v. C. Bank of Liberia,* 1:15-CV-09565 (ALC),
    2017 WL 6398726 (S.D.N.Y. Dec. 13, 2017) ...................................................6

*First-Citizens Bank & Tr. Co. of N. Carolina Arvest Bank v. Outsource Servs. Mgmt.,*
    No. CV 12-1734 (ADM/FLN), 2012 WL 12895659 (D. Minn. Aug. 29, 2012).................5

*Fraley v. Batman*, 638 F. App'x. 594 (9th Cir. 2016) .................................................17

*Freedom from Religion Found. v. Geithner*, 644 F.3d 836 (9th Cir. 2011) ...........................7, 20

*Green Fitness Equip. Co., LLC v. Precor Inc.*, No. 18-CV-00820-JST, 2018 WL 3036699
    (N.D. Cal. June 19, 2018) ..................................................................................10, 20

*Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56 (1982).........................................................3

*In re "Agent Orange" Product Liability Litigation,* 800 F.2d 14 (2d Cir. 1986).........................19

*In re BankAmerica Corp. Securities Litigation*, 210 F.R.D. 694 (E.D. Mo. 2002) .....................18

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009)...............................................17

*In Lazy Oil Co. v. Witco Corp.,* 166 F.3d 581 (3d Cir. 1999).........................................................19

*In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454 (9th Cir. 2000) .................................................16

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ...............................17, 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223
    (2d Cir. 2016).........................................................................................................17, 19

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    05-MD-01720-MKB-JO (E.D.N.Y. Nov. 30, 2016)...........................................................19

*In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010).............................................17, 18

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, 800 F. Supp. 2d 328
    (D. Me. 2011).............................................................................................................18

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008).............................16

*In re Urethane Antitrust Litig.*, MDL No. 1616, 2016 WL 4060156
    (D. Kan. Jul. 29, 2016).................................................................................................16

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    No. 2672 CRB (JSC), 2016 WL 4376623 (N.D. Cal. Aug. 17, 2016) ..............................11

*League of United Latin Am. Citizens,* 131 F.3d 1297 (9th Cir. 1997) ..........................................12

*Lenk v. Monolithic Power Systems,* No. 16-cv-02625, 2017 WL 4025559
(N.D. Cal. Sep. 13, 2017)..............................................................................................5

iii

*Luscher v. Mitsubishi Electric Corporation,* No. 17-CV-4067-JST
   (N.D. Cal. July 20, 2017) .............................................................................9, 13

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10–CV–00302,
   2013 WL 6577020 (C.D. Cal. Dec. 5 2013) ......................................... 16-17

*Montana v. United States Environmental Protection Agency*, 137 F.3d 1135
   (9th Cir. 1998)............................................................................................11

*Nat. Res. Def. Council v. McCarthy*, No. 16-CV-02184-JST, 2016 WL 6520170
   (N.D. Cal. Nov. 3, 2016)..............................................................................10

*Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406, 2014 WL 1802293
   (C.D. Cal. May 6, 2014) ..............................................................................16

*Nicol v. Gulf Fleet Supply Vessels, Inc.,* 743 F.2d 298 (5th Cir. 1984)....................4

*Ortiz v. Fibreboard Corp.,* 527 U.S. 815 (1999) ....................................................17

*Parker v. Time Warner Entm't Co.,* 631 F. Supp. 2d 242 (E.D.N.Y. 2009)...................16

*Perry v. Proposition 8 Official Proponents*, 587 F.3d 947 (9th Cir. 2009) ...............7, 20

*Radcliffe v. Hernandez,* 818 F.3d 537 (9th Cir. 2016)...........................................18

*Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty.*, 315 F.R.D. 318
   (N.D. Cal. 2016)....................................................................................7, 8, 9

*Retirement Bd. of the Policemen's Annuity and Benefit Fund v. Bank of New York Mellon*,
   297 F.R.D. 218 (S.D.N.Y.2013) ....................................................................6

*Rieckborn v. Velti PLC*, No. 13-cv-03889, 2015 WL 468329
   (N.D. Cal. Feb. 3, 2015)...............................................................................16

*Rodriguez v. County of Los Angeles*, 891 F.3d 776 (9th Cir. 2018) ...............3, 4, 7

*Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005) ....................................................4

*Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001)...........11

*Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326 (9th Cir. 1977) ...................20

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011)...........................................16

*Teutscher v. Riverside Sheriffs Ass'n*, 723 Fed. Appx. 543 (9th Cir. 2018) ...............20

*Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370 (9th Cir. 1993)...............................18

*Trulis v. Barton*, 107 F.3d 685 (9th Cir. 1995) ....................................................................5

*Ubaldi v. SLM Corp.*, No. C -11-01320 EDL, 2014 WL 12639952
 (N.D. Cal. June 13, 2014) ...............................................................................................10

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004) ....................................11

*United States v. Claiborne*, 727 F.2d 842 (9th Cir. 1984) ...................................................4

*United States v. Kersting,* 891 F.2d 1407 (9th Cir. 1989) .....................................................5

*United States v. Kersting*, 498 U.S. 812 (1990) ....................................................................5

*United States v. Oregon,* 913 F.2d 576 (9th Cir. 1990) ....................................................8, 10

*United States v. State of Wash.*, 86 F.3d 1499 (9th Cir. 1996) ..........................................8, 9

*U.S. v. City of Los Angeles,* 288 F.3d 391 (9th Cir. 2002) ...................................................13

*West Coast Seafood Processors Ass'n v. Natural Resources Defense Council, Inc.,*
 643 F.3d 701 (9th Cir. 2011) ..........................................................................................10

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).................................10

**Statutes:**

Michigan Comp. Laws Ann. § 445.771 ................................................................................13

**Other Authorities:**

7C Wright, Miller & Kane, § 1909 (1986) ...........................................................................12

7C Charles Allen Wright, Arthur Miller & Mary Kay Kane,
 *Federal Practice and Procedure* Section 1914 (3d ed. 2009) ...........................................7

**Rules:**

Federal Rules of Civil Procedure:

 Rule 23 ............................................................................................................................12

 Rule 23(b)(2)...................................................................................................................19

 Rule 23(b)(3)...................................................................................................................19

Rule 23(e)..........................................................................................................................18

Rule 24.........................................................................................................................6, 10

Rule 24(a)....................................................................................................................8, 20

Rule 24(a)(2)...............................................................................................................6, 10

Rule 24(b)........................................................................................................................20

Rule 24(c)..........................................................................................................................7

Rule 62.1....................................................................................2, 4, 6, 7, 9, 15

Rule 62.1(a)(3)..................................................................................................................6

The Indirect Purchaser Plaintiffs ("IPPs") oppose the Motion to Intervene, ECF No. 5368 (the "Motion"), filed by proposed Intervenors George Feldman and Douglas King (together "Movants").

## INTRODUCTION

The Motion to intervene should be denied because it is premised entirely upon Lead Counsel's allegedly inadequate representation of the settlement class on appeal, an issue that is squarely before the Ninth Circuit. This Court therefore lacks jurisdiction to consider the Motion at this time and should await the ruling of the Ninth Circuit on these matters. If the Ninth Circuit approves the settlements, this Motion will be moot. If the Ninth Circuit reverses settlement approval, Movants will have their opportunity to refile their Motion.

In addition, pursuant to Lead Counsel's fiduciary duty to all class members to preserve the settlements for the benefit of those class members, and to address the concerns raised by this Court and the Ninth Circuit, Lead Counsel has filed a motion to remand in the Ninth Circuit requesting that the panel remand with instructions to this Court to:

1. Amend the portion of the Order Granting Final Approval of Class Action Settlements (ECF No. 4712, the "Final Approval Order") relating to the plan of distribution to allow class members who purchased CRT products in the Massachusetts, Missouri and New Hampshire (the "Three States") to: (a) file claims against the settlement fund (subject to showing they have valid indirect purchaser claims); or (b) opt out of the Settlement Class, enabling those class members who timely exercise their right to opt out to pursue their own individual cases against the Defendants;

2. Appoint separate counsel for class members from the Three States to represent them with respect to notice and the amended plan of distribution;

3. Consider the appropriateness of amending the Order on Attorneys' Fees, Expenses, and Incentive Awards Re: Indirect Purchaser Plaintiff Settlements (ECF No. 4740, the "Fee Order") to reduce the fee award by whatever amount this Court deems reasonable to increase the settlement fund for the benefit of class members from the Three States; and

4.   Consider the appropriateness of an award of reasonable attorneys' fees to counsel for the Objector-Appellants in Appeal Nos. 16-16373, 16-16378, 16-16379, 16-16399, and 16-16400, and incentive awards to Objector-Appellants, to be paid from Class Counsel's fee award.[1]

Defendants-Appellees have filed a response concurring that "[a]ny class member from the Three States who timely exercises the right to opt out will not be constrained by the class's release and may seek to pursue an individual action against the Defendants-Appellees."[2]

Lead Counsel believes the motion to remand fairly and reasonably addresses the concerns expressed by the Ninth Circuit panel at oral argument and those of this Court in its Order denying IPPs' Rule 62.1 motion (ECF No. 5362), and does so without requiring amendments to the settlements. *See* Motion to Remand at 9-10.  Importantly, Class members in the Three States would be separately represented by new counsel thereby curing any potential conflict of interest; they would receive new notice; and they would have an option to opt out.  The motion requests that the Ninth Circuit otherwise affirm the settlements.  If the Ninth Circuit does so, there would be no need for intervention.

Even if the Ninth Circuit reverses settlement approval, Lead Counsel would respectfully request to remain as Lead Counsel for the 22 Certified Classes because Lead Counsel believes it would be in the best interests of class members.  Lead Counsel has vigorously litigated this case for more than 11 years, and continues to do so.  To date, Lead Counsel has recovered more than $600 million for class members—more than any other indirect purchaser case, bar one.  No other firm is as intimately familiar with this case as Lead Counsel's firm.  Moreover, as further explained below, Lead Counsel did not "pit[] one set of clients' claims against those of another" (ECF No. 5362 at 2); rather, Lead Counsel proposed an allocation of the settlement funds based on its good faith judgment

---

[1] *See* Motion Requesting Remand with Instructions Re: (1) the Plan of Distribution for the Settlements; and (2) the Fee Order, ECF No. 244-1, *IPPs et al. v. Toshiba Corp. et al.*, No. 16-16373 (9th Cir. Jan. 9, 2019) ("Motion to Remand").

[2] *See* Defendants-Appellees' Response to IPPs' Motion Requesting Remand, ECF No. 231, *IPPs et al. v. Toshiba Corp. et al.*, No. 16-16368 (9th Cir. Jan. 9, 2019).

1   of the facts and the law.  And, after extensive litigation, both this Court and the Special Master

2   agreed that Lead Counsel's proposed allocation was fair, reasonable and adequate.  The fact that the

3   Ninth Circuit may disagree with the adequacy of the allocation plan does not mean that Lead

4   Counsel inadequately represented the Class.

5          Finally, in any event, the Motion fails to satisfy the criteria for intervention set forth in

6   Federal Rule of Civil Procedure 24, subsections (a) and (b).  The Motion is untimely given that

7   Movants received notice of the settlements and the proposed plan of distribution more than three

8   years ago, and the adequacy of representation issues underlying the Motion were first raised in

9   objections to the settlements shortly thereafter.  Indeed, Movants currently have no interest in the

10  settlements on appeal because they failed to file claims to share in the settlement funds.[3]  Movants

11  fail to explain why the existing Michigan class representative and Lead Counsel are not adequate

12  representatives of the 22 Certified Classes.  Nor do they explain how the adequacy of representation

13  issues on appeal apply to the settlement with Mitsubishi Electric Corp. ("Mitsubishi") or the

14  litigation against Irico.  For these reasons, the Motion should be denied.

15                                   **ARGUMENT**

16  **I.      THIS COURT LACKS JURISDICTION TO RULE ON THE MOTION**

17          **A.      The Court Lacks Jurisdiction Because The Motion Is Based On Issues Raised In
                      The Appeals**

18

19          It is well established that "[t]he filing of a notice of appeal is an event of jurisdictional

20  significance – it confers jurisdiction on the court of appeals and divests the district court of its

21  control over those aspects of the case involved in the appeal." *Rodriguez v. County of Los Angeles*,

22  891 F.3d 776, 790 (9th Cir. 2018) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58

23  (1982)).  *See also E. Bay Sanctuary Covenant v. Trump*, No. 18-CV-06810-JST, 2018 WL 6660080,

24  at *4 (N.D. Cal. Dec. 19, 2018).  "The 'divestiture of jurisdiction rule . . . is a judge made rule

25  originally devised in the context of civil appeals to avoid confusion or waste of time resulting from

26

27  _____
    [3] *See* Declaration of Mario N. Alioto In Support of Opposition to Motion to Intervene ("Alioto
    Decl."), ¶ 2.

28

having the same issues before two courts at the same time.'" *Rodriguez*, 891 F.3d at 790 (quoting *United States v. Claiborne*, 727 F.2d 842, 850 (9th Cir. 1984)).

Here, the Motion to intervene is premised exclusively upon Lead Counsel's allegedly inadequate representation of the settlement class in negotiating the settlements and devising the plan of distribution for the settlement funds.[4]  As Movants concede, "[t]hese issues were squarely raised in many of the objections to the settlements *and subsequent appeals.*"  Mot. at 14:20-21 (emphasis added).  Thus, the question of whether Lead Counsel adequately represented all members of the settlement class is squarely before the Ninth Circuit as part of the appeals of this Court's approval of the settlements and the plan of distribution.  This Court therefore lacks jurisdiction to decide this motion as it relates to the settlements on appeal and must await the decision of the Ninth Circuit. *See Bryant v. Crum & Forster Specialty Ins. Co.,* 502 F. App'x 670, 671 (9th Cir. 2012) (citing *Nicol v. Gulf Fleet Supply Vessels, Inc.,* 743 F.2d 298, 299 (5th Cir. 1984)) (affirming denial of motion to intervene because the district court lacked jurisdiction to entertain the motion due to a pending appeal); *Ross v. Marshall,* 426 F.3d 745, 751 (5th Cir. 2005) ("this rule deprives a district court of jurisdiction to entertain a motion to intervene after a valid notice of appeal has been filed.").

**B.    The Ongoing Litigation Against Mitsubishi Electric And Irico Does Not Provide A Jurisdictional Basis For This Motion**

Movants argue that the ongoing litigation against Mitsubishi Electric Corp. ("Mitsubishi Electric") and the Irico defendants ("Irico") provides a basis for this Court to exercise jurisdiction over this Motion.  Mot. at 8.  While it is true that this Court retains jurisdiction over the separate proceedings against Mitsubishi Electric and Irico, the Motion fails to provide any examples of allegedly inadequate representation by Lead Counsel in the prosecution of the case against these defendants.  Nor do Movants point to any actual or potential conflicts of interest amongst the existing class representatives in either the Mitsubishi Electric settlement or the Irico litigation.  Rather, as demonstrated above, the Motion simply assumes inadequate representation, relying

---

[4] *See* Motion at 7 (citing this Court's Order denying IPPs' Rule 62.1 motion relating to the settlements on appeal, ECF No. 5362); *id.* at 11-12 (citing the objections to settlement approval in the district court); *id.* at 20 (citing appellants' briefs on appeal).

entirely on arguments by the objector-appellants that are presently before the appellate court, and relatedly, this Court's ruling on the Rule 62.1 motion. *See* Motion at 7, 11-12, 18, 20.

Moreover, as further explained in Section II. D. 1. below, the objectors' arguments relating to alleged inadequate representation of the settlement class on appeal cannot apply to the Mitsubishi Electric settlement or the case against Irico. The Mitsubishi Electric settlement class differs from the settlement class in the settlements on appeal in that there is no nationwide class, and all members of the 31 separately-represented state classes are eligible to receive compensation. Similarly, only the 22 Certified Classes are pursuing the case against Irico. Thus, the ongoing litigation against Mitsubishi Electric and Irico does not provide a basis for jurisdiction over the Motion.

The cases cited by Movants (Mot. at 8) either stand for general, undisputed propositions, are inapposite, or support IPPs' position. For example, *Trulis v. Barton*, 107 F.3d 685 (9th Cir. 1995), held that the district court lacked jurisdiction to consider the defendants' second motion for sanctions because the defendants had already appealed the denial of their first motion, and "the allegedly sanctionable conduct underlying both motions was identical." *Id.* at 694-95 (the "second motion asked the district court to reconsider matters that were involved in the appeal and beyond the district court's jurisdiction."); *see also United States v. Kersting (Two Cases),* 891 F.2d 1407, 1413 (9th Cir.1989) (motion for discovery brought after notice of appeal directly related to good faith, an issue on appeal, and was therefore beyond the district court's jurisdiction), *cert. denied,* 498 U.S. 812, 111 (1990), *overruled on other grounds by Church of Scientology of Cal. v. U.S.,* 506 U.S. 9 (1992). Likewise, here, the allegedly inadequate conduct underlying the motion to intervene and the issues relating thereto are identical to those alleged by objector-appellants on appeal. *See* Mot. at 14:16-21. As in *Trulis,* therefore, the motion to intervene is beyond this Court's jurisdiction.[5]

---

[5] The other cases cited by Movants are inapposite. *Lenk v. Monolithic Power Systems,* No. 16-cv-02625, 2017 WL 4025559, at *3 (N.D. Cal. Sep. 13, 2017), discussed an exception to the general rule that allows the district court to amend a judgment in certain circumstances even when a notice of appeal has been filed, *i.e.*, an exception under Federal Rule of Appellate Procedure 4(a)(4), which the intervenors here do not invoke. In *First-Citizens Bank & Tr. Co. of N. Carolina Arvest Bank v. Outsource Servs. Mgmt.*, No. CV 12-1734 (ADM/FLN), 2012 WL 12895659, at *1 (D. Minn. Aug. 29, 2012), the court permitted the non-party's intervention only to the extent it did not relate to a

### C.   A Rule 62.1 Motion Is Not Appropriate Here Because An Indicative Ruling On This Motion Will Not Obviate Or Further The Issues On Appeal

Finally, this Court should decline Movants' invitation to construe this motion as a motion for an indicative ruling under Fed. R. Civ. P. 62.1 (Mot. at 8, n. 8) because the relief requested will not obviate or further the appeal.  *See Export-Import Bank of Republic of China v. C. Bank of Liberia, 1:15-CV-09565 (ALC)*, 2017 WL 6398726, at *2 (S.D.N.Y. Dec. 13, 2017) ("indicative rulings under Rule 62.1(a)(3) serve a purpose of obviating the necessity for an appeal").

The purpose of Rule 62.1 is to promote judicial efficiency and fairness by providing a mechanism for the district court to inform the parties and the court of appeals how it would rule on a motion made after the district court has been divested of jurisdiction.  Where a district court concludes, for example, that newly discovered evidence warrants vacatur of a judgment that is already on appeal, the court can issue an indicative ruling, thereby allowing the court of appeals to remand the matter to the district court and obviate the need for the appeal.  *See Retirement Bd. of the Policemen's Annuity and Benefit Fund v. Bank of New York Mellon,* 297 F.R.D. 218, 221 (S.D.N.Y. 2013); *see also* Fed. R. Civ. P. 62.1 advisory committee's note.  But "an indicative rule on the very issue on appeal" would not promote judicial efficiency or fairness; to the contrary, it would "only interrupt[ ] the appellate process." *Retirement Bd.,* 297 F.R.D. at 221.

Here, as already shown, the Motion to intervene seeks a ruling based on the assumption that the settlement class was inadequately represented—"the very issue on appeal." *Id.*  An indicative ruling on the Motion will not promote judicial efficiency by obviating or furthering this issue on appeal.  To the contrary, the Ninth Circuit will still have to decide whether the settlement class in the settlements on appeal was adequately represented for the purposes of the settlements.  Thus, there would be a risk of "'confusion [and] waste of time resulting from having the same issues before two

---

matter involved in the appeal.  Finally, *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366-68 (9th Cir. 1991), is irrelevant to the question of whether a district court may exercise jurisdiction over a post-judgment motion involving an issue on appeal.  The issue there was whether a federal court should exercise jurisdiction over a declaratory action when parallel state court proceedings are pending..

1  courts at the same time.'" *Rodriguez,* 891 F.3d at 790.  The Court should therefore decline to

2  construe this motion as a Rule 62.1 motion.

3  **II.   MOVANTS FAIL TO SATISFY THE CRITERIA FOR INTERVENTION UNDER
       RULE 24(A)**

4

5       **A.   Legal Standard**

6       The Ninth Circuit has summarized the requirements for intervention as of right under Rule

7  24(a)(2) as follows:

8            "(1) [T]he motion must be timely; (2) the applicant must have a 'significantly
             protectable' interest relating to the property or transaction which is the subject
9            of the action; (3) the applicant must be so situated that the disposition of the
             action may as a practical matter impair or impede its ability to protect that
10           interest; and (4) the applicant's interest must be inadequately represented by
             the parties to the action."

11  *Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (quoting *California ex*

12  *rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006)).

13       "Proposed intervenors must satisfy all four criteria; '[f]ailure to satisfy any one of the

14  requirements is fatal to the application.'" *Retiree Support Grp. of Contra Costa Cty. v. Contra Costa*

15  *Cty.*, 315 F.R.D. 318, 321 (N.D. Cal. 2016) (quoting *Perry v. Proposition 8 Official Proponents*, 587

16  F.3d 947, 950 (9th Cir. 2009)).

17       In addition, Rule 24(c) provides that a motion to intervene "must state the grounds for

18  intervention and be accompanied by a pleading that sets out the claim or defense for which

19  intervention is sought." Fed. R. Civ. Pro. 24(c).  The present Motion does not include the required

20  pleading.  While courts have excused the failure to file a pleading in support of a motion to intervene

21  as long as the court is otherwise apprised of the grounds for intervention (*see generally* 7C Charles

22  Allen Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* Section 1914 (3d

23  ed. 2009), here, the Motion fails to provide *any* grounds to intervene in the cases against Mitsubishi

24  Electric or Irico.  The Motion to intervene in the litigation against these defendants should therefore

25  be denied.

26

27

28

1

### B.     The Motion Is Untimely

2     "Timeliness is a 'threshold requirement' for intervention under Rule 24(a)." *Retiree Support

3   Grp.* at 321 (quoting *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990)).  "Courts consider

4   three factors when determining whether a motion to intervene is timely: '(1) the stage of the

5   proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the

6   reason for and length of the delay.'" *Id.* (quoting *County of Orange v. Air California*, 799 F.2d 535,

7   537 (9th Cir. 1986)).  "While the length of time that has passed since a suit was filed is not, in and of

8   itself, determinative of timeliness, '[a] party seeking to intervene must act as soon as he knows ***or***

9   ***has reason to know*** that his interests might be adversely affected by the outcome of the litigation.'"

10  *California Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113,

11  1120 (9th Cir. 2002) (quoting *State of Oregon*, 913 F.2d at 589) (emphasis in original).  *See also*

12  *United States v. State of Wash.,* 86 F.3d 1499, 1503 (9th Cir. 1996) ("Delay is measured from the

13  date the proposed intervenor should have been aware that its interests would no longer be protected

14  adequately by the parties, not the date it learned of the litigation.").

15          Here, the Motion to intervene was filed:

16    - more than eleven years after the inception of the litigation;

17    - more than three and a half years after the settlements and the plan of distribution

18        were presented to the Court for preliminary approval in May 2015 (ECF No. 3861);

19    - more than three years after notice of the settlements and the plan of distribution was

20        published in August 2015 (ECF No. 3905 ¶15);

21    - more than three years after objections to the settlements and the plan of distribution

22        were filed in October 2015 raising the very same arguments relating to adequacy of

23        representation as this Motion;[6]

24    - almost two and a half years after the settlements were approved and a final judgment

25        was entered in July 2016 (ECF Nos. 4712, 4717), and appeals were taken;[7] and

26

---

[6] *See* Mot. at 5 (citing October 2015 objections).

27

[7] *See* Mot. at 6:4-5 (listing notices of appeals).

28

- nine months after the April 10, 2018 oral argument before the Ninth Circuit.

With regard to the litigation against Mitsubishi Electric, the Motion was filed one and a half years after IPPs filed suit against Mitsubishi Electric in July 2017,[8] and almost one year after IPPs moved for preliminary approval of the Mitsubishi Electric settlement.  ECF No. 5245.[9]  Likewise, IPPs have been actively litigating the case against Irico since March 2018.  ECF No. 5271.  Movants fail to provide any explanation for this delay.

Movants contend their Motion is timely because it comes two months after this Court's November 8, 2018 Order denying IPPs' Rule 62.1 motion.  Mot. at 11.  But, as the Motion acknowledges, all of the arguments regarding the allegedly inadequate representation of the settlement class upon which this Motion is based have been in the public record for more than three years.  *See* Mot. at 5 (citing October 2015 objections).  The fact that Movants waited until this Court's recent expression of concern regarding adequacy of representation does not explain why it was reasonable to do so given that the parties have been actively litigating the issues Movants identify in their motion for so long.[10]  Moreover, Movants do not explain how the November 8, 2018 Order relates to the representation of the Mitsubishi Electric settlement class or the Certified Classes in the litigation against Irico.

In sum, Movants indisputably had "reason to know" of the issues they present as the basis for their Motion long before now, and "'could have intervened sooner to protect themselves from th[e] eventuality'" they now assert.  *Id.* at 323 (quoting *Commercial Realty Projects,* 309 F.3d at 1120). The Motion is therefore untimely and should be denied.  *Id.*; *State of Wash.*, 86 F.3d at 1503

---

[8] *See Luscher v. Mitsubishi Electric Corporation,* No. 17-CV-4067-JST, ECF No. 1 (N.D. Cal. July 20, 2017).

[9] This motion was held in abeyance and administratively terminated without prejudice due to the pending appeals.  *See* ECF No. 5326.

[10] *See State of Wash.*, 86 F.3d at 1504 (motion to intervene untimely because it was filed three months after the district court issued a final decision and "the issues identified by [proposed intervenors were] basic to many of the issues decided long before the final decision in the district court."); *Retiree Support Grp.*, 315 F.R.D. at 323 (denying motion to intervene to object to a settlement as untimely where movants waited until the settlement was finally negotiated, even though they had been aware of the negotiations long before they were finalized).

1   (quoting *United States v. Oregon,* 913 F.2d 576, 588 (9th Cir. 1990) ("If the court finds that the

2   motion to intervene was not timely, it need not reach any of the remaining elements of Rule 24.")

3         Finally, "[t]o determine whether intervention prejudices the other parties to a case, the court

4   compares the harm from allowing intervention at a later stage of the proceedings with what would

5   have occurred no matter when the applicant was allowed to intervene." *Ubaldi v. SLM Corp.*, No. C

6   -11-01320 EDL, 2014 WL 12639952, at *3 (N.D. Cal. June 13, 2014) (quoting *West Coast Seafood

7   Processors Ass'n v. Natural Resources Defense Council, Inc.,* 643 F.3d 701 (9th Cir. 2011)).

8         Here, intervention will provide no benefit to Movants because they did not file claims.  Their

9   Motion is therefore an unnecessary distraction at this stage.  *See Donnelly v. Glickman*, 159 F.3d

10   405, 412 (9th Cir. 1998) (intervention improper where it "would only serve to undermine the

11   efficiency of the litigation process.").   In addition, if appointed as lead counsel, Movants' counsel

12   would need to spend considerable time to get up to speed.  These efforts would cause further delay

13   to class members and necessarily generate additional fees and expenses, to the likely detriment of the

14   class.  *See generally Executive Risk Specialty Ins. Co. v. Rutter Hobbs and Davidoff, Inc.,* 564 Fed.

15   Appx. 887, 889 (9th Cir. 2014)  (denying attorney's motion to intervene against his former client in

16   client's action against Sheriffs' Association because intervention would have been prejudicial; the

17   client could have faced additional litigation expenses revisiting records with which he and his

18   counsel were previously familiar, if the lawyer were permitted to intervene).  The Motion should be

19   denied.

20       **C.**    **Movants Currently Have No Protectable Interest In The Settlements On Appeal
               Because They Never Filed Claims**

21

22         "'Rule 24(a)(2) does not require a specific legal or equitable interest,' and it is 'generally

23   enough that the interest is protectable under some law, and that there is a relationship between the

24   legally protected interest and the claims at issue.'" *Nat. Res. Def. Council v. McCarthy*, No. 16-CV-

25   02184-JST, 2016 WL 6520170, at *3 (N.D. Cal. Nov. 3, 2016) (quoting *Wilderness Soc'y v. U.S.

26   Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011).  To trigger a right to intervene, however, "'an

27   economic interest must be concrete and related to the underlying subject matter of the action.'"

28   *Green Fitness Equip. Co., LLC v. Precor Inc.,* No. 18-CV-00820-JST, 2018 WL 3036699, at *1

1    (N.D. Cal. June 19, 2018) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919-20 (9th

2    Cir. 2004).

3        Here, Movants claim to have purchased CRT televisions in Michigan and appear to be

4    members of the settlement class—although they do not provide receipts and do not otherwise state

5    whether they made their purchases during the Class Period.  *See* ECF No. 5368-1 ¶¶ 6-7.  Even

6    assuming Movants can show they purchased during the Class Period, however, they do not currently

7    have a protectable, concrete economic interest in the settlements on appeal.  That is because they

8    never filed claims to share in the settlement fund.  Alioto Decl. ¶ 2.  The claims period approved by

9    the Court for Michigan claimants ended on December 7, 2015.  ECF No. 4339.  Thus, the litigation

10   has "no immediate or any foreseeable, demonstrable effect upon the proposed intervenors."

11   *Montana v. United States Environmental Protection Agency*, 137 F.3d 1135, 1141 (9th Cir. 1998)

12   (affirming district court's ruling that, because none of the parties seeking intervention held a permit,

13   the litigation had "no immediate or any foreseeable, demonstrable effect upon the proposed

14   intervenors.")

15       Movants thus cannot show that they "would be substantially affected in a practical sense by

16   the determination made in an action," entitling them to intervene.  *Southwest Center for Biological

17   Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).  *See* Mot. at 19, n. 10.[11]  And, with the

18   settlements before the Ninth Circuit, now is not the time to consider whether to reopen the claims

19   period, and that is not even something that Movants request.

20       Lastly, as for the litigation against the Mitsubishi Electric and Irico defendants, Movants fail

21   to explain why the disposition of these actions by current class representatives will impair or impede

22   Movants' ability to protect their interests.  If Movants are dissatisfied with the proposed Mitsubishi

23   Electric settlement or any future settlement with Irico, they will have the opportunity to object to the

24   settlement or opt out and pursue their individual claims in independent actions. *See, e.g., In re:

25   Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC),

26   ───────────────

27   [11] Unlike in *Berg,* where the projects of proposed intervenors were "in the pipeline" for approval (*id.*
     at 821), here Movants are not in line to receive monies from the settlements—and this is of their own
     accord, since they opted not to file claims.

28

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE
Master File No. 07-cv-05944-JST, MDL No. 1917

2016 WL 4376623, at *4 (N.D. Cal. Aug. 17, 2016) (denying motion to intervene because class member could "opt out of the Settlement and litigate his claims independently, or he may instead object to it. These options adequately protect his interests."); *Allen v. Hyland's Inc.*, No. CV1201150DMGMANX, 2012 WL 12887827, at *2 (C.D. Cal. Aug. 28, 2012) (rejecting proposed intervenor's assertion that her interests would be impaired or impeded by a future class settlement because "she ignores the fact that any potential class settlement would be subject to the objection and opt out process inherent in Rule 23 as well as the Court's preliminary and final approval").

### D. Movants' Interests Are Adequately Protected By The Existing Michigan Class Representative And Lead Counsel

Movants also fail to show that their interests are not adequately represented by the existing class representative and Lead Counsel. While it is true that in general, the proposed intervenor's burden in showing inadequate representation is "minimal[,] . . . [c]lass actions . . . are the exception." *Allen v. Hyland's*, 2012 WL 12887827, at *3 (internal citations omitted). "In fact, Rule 23 is specifically designed to avoid this kind of intervention by a class member." *Id.* (citing *Am. Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 551 (1974)).

"Three factors are examined to evaluate adequacy of representation: (1) whether the interest of a present party is such that it will 'undoubtedly' make all of a proposed intervenor's arguments; (2) whether the present party is 'capable and willing' to make such arguments; and (3) whether a proposed intervenor would offer any 'necessary elements' to the proceeding that other parties would neglect." *Nat. Res. Def. Council*, 2016 WL 6520170, at *5 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)).

"The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086 (citing 7C Wright, Miller & Kane, § 1909, at 318 (1986)). "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Id.* (citing *League of United Latin Am. Citizens,* 131 F.3d 1297, 1305 (9th Cir. 1997)). "If the applicant's interest is identical to that of one of the present parties, a *compelling showing* should be required to demonstrate inadequate representation." *Id.* (citing 7C Wright, Miller & Kane, § 1909, at 318–19)

(emphasis added). "Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention." *Id.* at 1086 (citing *U.S. v. City of Los Angeles,* 288 F.3d 391, 402 (9th Cir. 2002)).

### 1. Movants Fail To Make A "Compelling Showing" That The Existing Michigan Representative Will Not Adequately Represent Them

Movants' interests in this litigation are identical to those of the existing Michigan class representative, Lisa Reynolds, in that Movants and Ms. Reynolds share the same claim under the Michigan Comp. Laws Ann. §§ 445.771 *et seq.* (Michigan's antitrust statute), and the same ultimate objective of recovering damages from the defendants for the alleged overcharges on CRT products caused by defendants' alleged antitrust violations.[12]  Movants focus entirely on Lead Counsel's alleged inadequacy and fail to even acknowledge the existence of Ms. Reynolds, much less make a "compelling showing" that she will not adequately represent their interests.  *Arakaki*, 324 F.3d at 1088 (affirming denial of motion to intervene because proposed intervenor did "not overcome its compelling burden to demonstrate that" the existing parties did not adequately protect its interests). Indeed, other than a vague assertion that "the case would proceed without representative plaintiffs with an interest in the subject matter of the litigation" if they are not allowed to intervene (Mot. at 19), Movants make *no* argument as to why Ms. Reynolds will not represent their interests.  *See Allen*, 2012 WL 12887827, at *3 (denying motion to intervene where proposed intervenor focused "exclusively on her claim that Plaintiffs' *attorneys* were not up to the task," and made "no argument as to why the class representatives [were] not sufficient to represent [her] interest . . .") (emphasis in original).

Ms. Reynolds was thoroughly vetted by Lead Counsel, the defendants and the Court as part of the proceedings on class certification, and was found to be an adequate representative of the Michigan Class.  *See* ECF Nos. 1742 at 48; 1950 at 2.  Ms. Reynolds has been involved in this case

---

[12] *See* ECF 1526, ¶ 265 (Fourth Consolidated Amended Complaint); *Luscher et al. v. Mitsubishi Electric Corp.,* No. 17-cv-04067-JST, ECF No. 1, ¶¶ 38, 255 (Mitsubishi Electric complaint); ECF No. 1742 at 18-19, 48 (Report & Recommendation finding all named plaintiffs to be adequate class representatives and appointing Lisa Reynolds as the Class Representative for Michigan); ECF No. 1950 (adopting R&R and certifying 22 statewide classes, and appointing Lisa Reynolds as the representative for Michigan).

1   since 2010—more than eight years.  *See* ECF No. 827 ¶¶ 32, 255.  She has searched for and

2   produced documents responsive to defendants' discovery requests.  She has responded to written

3   discovery.  She has been deposed.  She has prepared for trial.  She has reviewed and approved the

4   settlement agreements with the defendants, and she has consulted with her lawyers and has kept

5   apprised of this litigation throughout.  *See* ECF No. 4071-1 ¶ 137.  In sum, Ms. Reynolds has

6   demonstrated that she will "undoubtedly" make all of Movants' arguments in proving the Michigan

7   claim, and is "capable and willing" of doing so.  *Arakaki*, 324 F.3d at 1086.

8           In contrast to Ms. Reynolds, Movants and their counsel took no interest in this litigation until

9   now—more than 11 years after its inception.  Lead Counsel has no record of either movant having

10  filed a claim to share in the settlement proceeds, calling into question their claimed concern that their

11  financial interests will be impaired if the Court does not grant this Motion.  Movants' failure to

12  participate in the settlements also undermines their claim that they would be adequate

13  representatives of the Michigan Class.  Indeed, because they chose not to file a claim, Movants

14  currently have *no* interest in the settlements on appeal.  As such, Movants cannot and do not point to

15  "any necessary elements to the proceeding" that they would offer that other parties would neglect.

16  *Arakaki*, 324 F.3d at 1086.  There is therefore no basis to permit them to intervene based on

17  inadequate representation of the settlement class on appeal.

18          Finally, Movants fail to acknowledge that the settlement class in the proposed Mitsubishi

19  Electric Settlement differs from the settlement class on appeal in several important ways.  To begin,

20  the Mitsubishi Electric Settlement Class is not a nationwide class; it is made up of 31 separately-

21  represented statewide damages classes.  *See* ECF No. 5245 at 10:14-17.  In addition, the proposed

22  plan of distribution for the Mitsubishi Electric Settlement will provide compensation for all

23  settlement class members on an adjusted pro rata basis, thus there will be no question of unequal

24  treatment or releasing claims without consideration.  *Id*. at 34-39.  Similarly, only the 22 Certified

25  Classes are pursuing their claims against Irico.  As a result, the examples of alleged inadequate

26  representation set forth in the Motion cannot apply to the Mitsubishi Electric Settlement or the

27  litigation against Irico, and provide no support for intervention.

28

### 2. Lead Counsel Has Adequately Represented The Interests Of The 22 Certified Classes And Will Continue To Do So

Movants' attempts to show inadequate representation of the 22 Certified Classes by Lead Counsel also fall short. ***First***, there has been no finding of inadequate representation of the 22 Certified Classes by Lead Counsel, and Movants fail to make any such showing. They merely assume inadequate representation based exclusively on the arguments by objectors on appeal and this Court's Order denying the Rule 62.1 motion, which specifically noted that the issue "requires further exploration." ECF No. 5362 at 2. Moreover, objectors on appeal argue that Lead Counsel and the Class Representatives inadequately represented the Three States; there is no suggestion in the briefs on appeal or in the Court's Order denying the Rule 62.1 motion that the 22 Certified Classes were not adequately represented.

***Second***, Movants' claim that Lead Counsel "has taken two entirely contradictory positions regarding the viability of state damages claims" for the Three States (Mot. at 18) demonstrates their unfamiliarity with the facts of this long-running, complex case. Lead Counsel's statements that the damages claims of the Three States lack value are consistent with this Court's findings that the statutes of limitations had expired on those claims against the settling defendants, and that therefore the claims "presently lack value." ECF No. 4712 at 23-25. This Court has made no such finding with regard to Mitsubishi Electric. In fact, as Lead Counsel explained in the motion for preliminary approval of that settlement, Lead Counsel entered into a tolling agreement with Mitsubishi Electric in 2011, and tolled the statutes of limitations for the claims of the Three States against Mitsubishi Electric. *See* ECF No. 5245 at 12:21-22. Thus, the Three States' claims against Mitsubishi Electric are viable and Lead Counsel's statements are not contradictory.

***Third***, Lead Counsel did not "admit[] that it included [the Three States'] claims in the release to achieve "complete peace." Mot. at 18. Lead Counsel negotiated lump sum settlements with each of the defendants in exchange for a release of all claims alleged in the operative complaint, which included the nationwide injunctive relief class. *See* ECF No. 1526 ¶¶ 243-292 (Fourth Consolidated Amended Complaint); 16-16368, ECF No. 93 (IPPs' Answering Brief) at 60-62. This was the same release in the settlement with the LG Defendants that was finally approved by the Court. *See* ECF

No. 2542 (LG final approval order); 4351 at 42 (R&R noting that "the Court has already approved an identical release of all claims nationwide in connection with the earlier IPP settlement with LG"). Alioto Decl. ¶ 4. The damages claims of the Three States were released by virtue of the nationwide class and the broad release language typical of class action settlement agreements, which released all claims "asserted or that could have been alleged or asserted," based on the conduct alleged in this litigation. *See, e.g.*, ECF No. 3862-1, Ex. A, ¶13 (Philips Settlement Agreement).  Alioto Decl. ¶ 5.[13]

Moreover, the determination of how the settlement funds would be allocated occurred several months later when Lead Counsel devised the plan of distribution. *Id*. ¶ 6.  It was only then that Lead Counsel made the judgment call—based on his good faith understanding of the law—that only those class members with viable damages claims asserted in the litigation, *i.e.* the claims of the 22 Certified Classes, should receive monetary compensation because none of the other claims were viable.[14]  Alioto Decl. ¶ 7.  Thus, Lead Counsel did not "pit[] one set of clients' claims against those

---

[13] Courts routinely permit the release of all actual and potential claims as part of a settlement class. *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1287 (9th Cir. 1992) ("a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented *and might not have been presentable in the class action*'") (citation omitted) (emphasis in original); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 310-311 (3d Cir. 2011) (acknowledging settling defendants' interest in seeking global peace as part of class action settlement); *In re Urethane Antitrust Litig.*, MDL No. 1616, 2016 WL 4060156, at *3 (D. Kan. Jul. 29, 2016) ("A reasonable defendant in [defendant's] position would naturally desire to obtain a release from all class members, whether or not some of those members still have viable claims; thus, the fact that the 1999-2000 period claims were included in the release does *not* provide evidence that those claims have value.") (emphasis in original).

[14] *See, e.g., In re Mego Fin. Corp. Secs. Litig.,* 213 F.3d 454 (9th Cir. 2000) (approving plan of distribution that provided no recovery to meritless claims); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the strength of their injuries or the strength of their claims on the merits."); *Rieckborn v. Velti PLC*, No. 13-cv-03889, 2015 WL 468329, at *8-10 (N.D. Cal. Feb. 3, 2015) (approving settlement and plan of distribution under which class members would recover based on relative strength of claims, with some receiving nothing); *Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406, 2014 WL 1802293, at *8 (C.D. Cal. May 6, 2014) ("The Objector is correct that proving in-and-out claims is not impossible, but there is no evidence that the in-and-out traders in this case could have done so. On this basis, the plan of allocation reasonably does not include values for in-and-out shares.  The plan of allocation reasonably and fairly represents injuries and claims on the merits."); *Parker v. Time Warner Entm't Co.,* 631 F. Supp. 2d 242, 262 (E.D.N.Y. 2009) ("A claim which cannot be proven is worth essentially nothing.  Consideration of nothing for releasing a worthless claim is therefore fair, reasonable, and adequate."); *Maine State Ret. Sys. v.*

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE
Master File No. 07-cv-05944-JST, MDL No. 1917

1    of another" (ECF No. 5362 at 2), or use the release of the Three States' damages claims in any way

2    to cement the deal on behalf of the 22 Certified Classes.  Alioto Decl. ¶ 8.

3    *Fourth,* and contrary to Movants' assertions, this is not a case where Lead Counsel

4    represents class members with "fundamental" conflicts of interest requiring separate representation.

5    *See In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 942 (9th Cir. 2015) (only "fundamental"

6    conflicts that "go to the heart of the litigation" undermine a representative's or counsel's adequacy).

7    This case is distinguishable from *Amchem Prods. v. Windsor,* 521 U.S. 591 (1997), *Ortiz v.*

8    *Fibreboard Corp.,* 527 U.S. 815 (1999), and *In re Payment Card Interchange Fee & Merch. Disc.*

9    *Antitrust Litig.,* 827 F.3d 223 (2d Cir. 2016) (Mot. at 7, 15), all of which involved categories of

10   plaintiffs with very different and competing interests: those with existing injuries and those that may

11   be injured in the future.

12   Here, all settlement class members hold similar antitrust, unfair competition or consumer

13   protection claims, which claims are frequently represented by the same counsel.  The only difference

14   here is in the value of those claims.  The Ninth Circuit and numerous other courts have held that "a

15   difference in the value of claims does not necessarily mean there is a structural conflict of interest

16   requiring separate representation." *Fraley v. Batman*, 638 F. App'x. 594, 598 (9th Cir. 2016).  *See*

17   *also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 346-48 (3d Cir. 2010) ("varied relief among

18   class members with differing claims in class settlements is not unusual"; "do[es] not, without more,

19   demonstrate" intra-class conflicts, inadequate representation, or the need for subclasses).[15]

20   _____

21   *Countrywide Fin. Corp.*, No. 2:10–CV–00302, 2013 WL 6577020, at *17-18 (C.D. Cal. Dec. 5
     2013) ("That a plan of allocation distributes proceeds based on the relative strength and weaknesses

22   of a claim does not, itself, render a proposed settlement unfair.") (collecting cases).  Indeed, this
     Court agreed that "no Ninth Circuit case holds that the release of a class action claim must be

23   compensated in all instances." ECF No. 4712 at 20.

24   [15] *See also, e.g., In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272 (3d Cir. 2009) (varying
     relief "among the different groups of class members d[oes] not demonstrate that there were

25   conflicting or antagonistic interests within the class" or adequacy of representation issues); *Charron
     v. Wiener*, 731 F.3d 241, 253-54 (2d Cir. 2013) ("[a]ll class settlements value some claims more

26   highly than others, based on their perceived merits, and strike compromises based on probabilistic
     assessments . . . . If these types of compromises automatically created subclasses that required

27   separate representation, the class action procedure would become even more cumbersome than it
     already is, and would create even more transaction costs").

28

In fact, many courts have treated issues relating to allocation of a settlement fund amongst class members with claims of varying strength as an adequacy of allocation question, rather than an adequacy of representation question.  *See, e.g., In re Pet Food,* 629 F.3d at 348 (rejecting plan of allocation as to one segment of the class, but also rejecting adequacy of representation arguments because such issues are "more appropriately addressed as a Rule 23(e) adequacy of allocation question, rather than [an] adequacy of representation question"); *In re BankAmerica Corp. Securities Litigation*, 210 F.R.D. 694, 712-713 (E.D. Mo. 2002) (rejecting plan of allocation that left one group of class members with no recovery, but also rejecting objectors' contentions that the named plaintiffs and class counsel failed to adequately represent those class members, and finding no need for independent counsel or subclasses).[16]

These courts recognize that it is class counsel's job to assess the relative value of class members' claims and recommend a plan of allocation based on their good faith judgment of the facts and the law.  If the court disagrees with class counsel's judgment and finds the plan of allocation inadequate, it does not mean class counsel is an inadequate representative.  Otherwise, in any case where there are claims of differing values within a single class, class counsel would be forced to create subclasses represented by separate counsel.  This would be contrary to the myriad cases holding that only fundamental conflicts require subclasses (*e.g.*, *In re Online DVD*, 779 F.3d at 942), and that subclasses can make class actions even more cumbersome and costly.  *See, e.g., Charron v. Wiener*, 731 F.3d at 253-54.  Alternatively, to avoid accusations of "unequal treatment," class counsel would have to recommend that all class members receive the same value, even though the claims are of varying strength.  This would also be problematic.

***Fifth***, even where courts have concluded that class counsel was conflicted in their representation of the class, class counsel has been permitted to continue to represent the class, or some portion thereof, on remand.  *See, e.g., Radcliffe v. Hernandez,* 818 F.3d 537, 546-49 (9th Cir.

---

[16] *See also, e.g., In re New Motor Vehicles Canadian Export Antitrust Litig.,* 800 F. Supp. 328, 335 (D. Me. 2011) (rejecting plan of distribution that excluded certain repealer states and ordering class counsel to allow them to claim without appointing independent counsel or certifying subclasses); *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1378 (9th Cir. 1993) (separate representation of two subclasses of class members with claims of varying strength not necessary).

2016) (affirming district court's refusal to disqualify class counsel following reversal of settlement approval due to class counsel's conflicted representation); *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,* 05-MD-01720-MKB-JO, ECF No. 6754 (E.D.N.Y. Nov. 30, 2016) (following Second Circuit's reversal of settlement approval because lead counsel "labored under an inherent conflict of interest" (827 F.3d at 240), the district court appointed "[t]he three firms previously appointed as counsel for the entire class" as co-lead counsel for the Rule 23(b)(3) damages class, and new counsel for the Rule 23(b)(2) injunctive relief class).[17]  Thus, even if the Ninth Circuit concludes that Lead Counsel and/or the class representatives did not adequately represent class members in the Three States, it does not follow that this Court must appoint new counsel for the 22 Certified Classes on remand.

   ***Finally***, if the Ninth Circuit grants IPPs' Motion to Remand and gives the requested instructions, separate counsel will be appointed for the Three States for all future proceedings, including the amended plan of distribution, the notice program and the proposed reduction in IPP Counsel's fee award.  *See* Motion to Remand at 8-9. This will cure any potential conflict of interest within the settlement class on remand by ensuring that the Three States and the 22 Certified Classes are separately represented.  In addition, while Lead Counsel believes that it is in the best interests of class members for them to remain counsel for the 22 Certified Classes, this Court will have the discretion to consider whether new counsel is necessary for the 22 Certified Classes.  The same will be true if the Ninth Circuit reverses and remands the settlements.

   In sum, Movants have failed to demonstrate that their Motion is justified by Lead Counsel's allegedly inadequate representation.  The Motion to intervene under Rule 24(a) should be denied.

---

[17] *See also In Lazy Oil Co. v. Witco Corp.,* 166 F.3d 581, 589 (3d Cir. 1999) (rejecting the notion that a conflict of interest should automatically disqualify class counsel even though such a result would be required in a non-class action, in part because "many fair and reasonable settlements would be undermined by the need to find substitute counsel after months or even years of fruitful settlement negotiations."); *In re "Agent Orange" Product Liability Litigation,* 800 F.2d 14, 19 (2d Cir. 1986) (rejecting automatic disqualification of class counsel where a conflict of interest arises: "the prospect of having those most familiar [with the case] be automatically disqualified whenever class members have conflicting interests would substantially diminish the efficacy of class actions as a method of dispute resolution.").

### III.   MOVANTS FAIL TO SATISFY THE CRITERIA FOR PERMISSIVE INTERVENTION UNDER RULE 24(B)

"Permissive intervention is committed to the broad discretion of the district court. . . ." *Orange Cty. v. Air California*, 799 F.2d at 539.  Fed. R. Civ. Pro. 24(b) "requires: (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found.*, 644 F.3d at 843 (citations omitted). "Where a putative intervenor has met these requirements, the court may also consider other factors in the exercise of its discretion, including 'the nature and extent of the intervenors' interest' . . . ." *Perry*, 587 F.3d at 955 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).  Additionally, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *Green Fitness Equip. Co., LLC v. Precor Inc.*, No. 18-CV-00820-JST, 2018 WL 3036699, at *2 (N.D. Cal. June 19, 2018).

The Motion for permissive intervention should be denied.  First, "[a]s a threshold matter," Movants were required to show that their Motion is timely.  *Teutscher v. Riverside Sheriffs Ass'n*, 723 Fed. Appx. 543 (9th Cir. 2018).  Movants have not met their burden, for the reasons previously discussed.  Second, since they did not file claims, Movants further fail to establish that they have any interest in the settlements on appeal.  Third, even if they did have such an interest, the current Michigan representative and Lead Counsel already adequately represent Michigan class members; Movants fail to show otherwise.  *See Executive Risk Specialty Ins. Co. v. Rutter Hobbs and Davidoff, Inc.*, 564 Fed. Appx. at 889 (motion to for permissive intervention properly denied where intervenor's interest is "adequately protected" by existing party).

### IV.   CONCLUSION

For all of the foregoing reasons, IPPs respectfully request that this Court deny the Motion to intervene.

Dated:  January 25, 2019                     Respectfully submitted,

                                             */s/ Mario N. Alioto*
                                             Mario N. Alioto (56433)
                                             malioto@tatp.com

20

1

Joseph M. Patane (72202)
jpatane@tatp.com

2

Lauren C. Capurro (241151)
laurenrussell@tatp.com

3

TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street

4

San Francisco, CA 94123
Telephone: 415-563-7200

5

Facsimile: 415-346-0679

6

*Lead Counsel for Indirect Purchaser Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO MOTION TO INTERVENE
Master File No. 07-cv-05944-JST, MDL No. 1917