# Exhibit 42



June 25, 2018

**Certification**

**Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English of the document with bates numbers range: IRI-CRT-0000764 - IRI-CRT-0000772.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

# Shaanxi Province Xianyang Intermediate People's Court
# Criminal Judgment

(2015) XIAN ZHONG XING ZHONG ZI [Ref.: Xianyang Intermediate Criminal Final] No. 00119

Appeal authority: Xianyang Qindu District People's Prosecutor's Office

Appellant (the original Defendant), GE Di, male, Manchu nationality, born July 23, 1959 in Mei County, Shaanxi Province; ID certificate No.: 610402195907231212; educated to junior college level, residing at Room 202, Unit One, A10 Yangguang Community, Xianyang City. Prior to his arrest, the Appellant was Chairman of the Board and General Manager of IRICO (Hefei) Liquid Crystal Glass Co., Ltd. The Appellant was criminally retained on August 7, 2013 due to this case and on August 24 of the same year, he was arrested. On February 6, 2016, this Court resolved to release the Appellant from custody pending investigation. On May 9, 2016, the Appellant was arrested by the Gaoxin Subbureau of the Xianyang Municipal Public Security Bureau.

Defense Attorney: GAO Shanqi, Attorney-at-law, Shaanxi Qiyuan Law Firm
Defense Attorney: YAO Minli, Attorney-at-law, Shaanxi Qiyuan Law Firm

In the Xianyang Qindu District People's Court's hearing of the case concerning Xianyang Qindu District People's Prosecutor's Office charges against the Defendant, GE Di in the crime of accepting bribes, the Xianyang Qindu District People's Court produced the (2013) XIAN QIN CHU ZI [Ref.: Xianyang Qindu First] No. 00344 Criminal Judgement on June 30, 2014. The Defendant of the original hearing, GE Di, rejected the results of that hearing and filed an appeal. On October 28, 2014, the Xianyang Intermediate People's Court produced the (2014) XIAN ZHONG XING ZHONG [Ref.: Xianyang Intermediate Criminal Final] No. 00140 Criminal Ruling, which for reasons of unclear facts and lack of evidence, returned the case to the Qindu District People's Court for a new hearing. On April 16, 2015, the Qindu District People's Court produced the (2014) XIAN QIN XING ZHONG ZI [Ref.: Xianyang Qindu Criminal Retrial] No. 00003 Criminal Judgement. The Xianyang Qindu District People's Prosecutor's Office filed a protest against the verdict and the original Defendant GE Di lodged an appeal. On May 12, 2015, this Court filed the case and established a panel of judges in accordance with law. A public court session began on August 26, 2015 to hear this case. The Xianyang People's Prosecutor's Office appointed the public prosecutors, ZHAO Linhai and WANG Zhihong to appear in court and carry out the duties of their office.

1

 Scanned by CamScanner

CONFIDENTIAL

IRI-CRT-00000764

The Defendant, GE Di and his defense attorneys, GAO Shanqi and YAO Minli attended court to participate in the proceedings. During this period, the Xianyang People's Prosecutor's Office recommended another supplementary investigation. This case is now closed.

The original hearing judgment ascertained that in August 2009, as approved by IRICO Group Corporation, the Defendant GE Di was appointed Chairman of the Board of Directors and General Manager of IRICO (Hefei) Liquid Crystal Glass Co., Ltd. (hereinafter "Hefei LC Company"). In April 2010, LIU Tengteng started to use her credentials of affiliation with the Shaanxi Province No. 3 Construction Engineering Company (hereinafter "Shaanxi No. 3 Construction Company") to contract the Hefei LC Company's road construction project. In September of the same year, while the project was nearing completion, LIU Tengteng, as a means of thanking GE Di for his care and help in terms of the project bidding, etc., prepared to give GE Di RMB 200,000 yuan. On September 14, 2010, LIU Tengteng carried RMB 200,000 yuan in cash to GE Di's home and wished to give the RMB 200,000 yuan to GE Di's wife, ZHANG Ping. After ZHANG Ping refused the offer, LIU Tengteng proposed to deposit the RMB 200,000 yuan in the bank under her own name and to give the deposit receipt to ZHANG Ping, to which ZHANG Ping expressed her agreement. Subsequently, LIU Tengteng drove with ZHANG Ping to the China Merchants Bank Xianyang Branch close to the Qichang Shizi, Xianyang and deposited the RMB 200,000 yuan at said Branch in four separate deposits under the name of LIU Tengteng. ZHANG Ping set up the password and the certificate of deposits were given to ZHANG Ping. Afterwards, ZHANG Ping told GE Di about LIU Tengteng giving the money and GE Di told ZHANG Ping to return the certificates of deposits to LIU Tengteng. ZHANG Ping did not return the certificates, but on December 21, 2012, ZHANG Ping eventually returned the certificate of deposits to LIU Tengteng and LIU Tengteng transferred the four deposits in LIU Tengteng's account at China Merchants Bank Xianyang Branch to LIU Tengteng's account at China CITIC Bank, Xianyang Branch. The original hearing determined that the Defendant, GE Di, in his capacity as a State-employed worker that had been dispatched from a state-controlled company to work in a non-State owned company to conduct official business, had used the convenience of his duties and role, to seek benefits from another, and that the act by he and his wife, ZHANG Ping, to accept the RMB 200,000 yuan given by legal representative of Xianyang Ketong Information Technology Company, LIU Tengteng, already constituted the acceptance of a bribe. Pursuant to the provisions of Criminal Law of the People's Republic of China, Article 25, Article 26, Item I, Article 93, Article 385, Article 386 and Article 383, the court ruled: the Defendant, GE Di was guilty of the crime of accepting a bribe and was sentenced to prison for a period of 10 years.

2

 Scanned by CamScanner

CONFIDENTIAL                                                                    IRI-CRT-00000765

After the sentence was pronounced, the Xianyang Qindu District People's Prosecutor's Office protested the verdict, submitting that: there was proof that the Defendant GE Di had illegally accepted RMB 200,000 in cash from LIU Tengteng and had not declined the offer and therefore, the fact that the Defendant GE Di had accepted RMB 200,000 in cash ought to be maintained by the court. According to current evidentiary materials, it is not possible to ascertain a conclusion as to whether ZHANG Ping set the password for the certificate of deposits. The original court of hearing determined that the details of the RMB 200,000 yuan certificate of deposits had no relationship to the facts of the bribe accepted by GE Di and the original court judgement determined that facts of GE Di's acceptance of the RMB 200,000 certificate of deposits were unclear and there was not sufficient evidence.

The Defendant of the original hearing, GE Di lodged an appeal, submitting that: 1. The facts of the decisions of the original hearing judgement were incorrect. In regard to the RMB 200,000 yuan given by LIU Tengteng, he had not personally accepted the money and nor had he indicated to or acquiesced for his wife, ZHANG Ping, to accept the month. When and in what manner LIU Tengteng gave his wife, ZHANG Ping, RMB 200,000 yuan was not known to him before the event. Moreover, when ZHANG Ping told him about it, he instructed her to return it and ZHANG Ping replied that she would return it. 2. The confession that he provided during the investigation phase was provided under duress during interrogation and the confession was made under circumstances of enticement. Moreover, the interrogation was not simultaneously recorded or transcribed. In summary of the above, the Defendant determined that his actions did not constitute the crime of accepting a bribe and he was seeking that a second hearing of the court overturn the ruling and declare him not guilty.

The Defendant of the original hearing, GE Di's defense attorney submitted that: 1. LIU Tengteng did not in fact give ZHANG Ping RMB 200,000 yuan in cash, but gave her certificates of deposit for RMB 200,000 yuan. 2. The actions of the Appellant, GE Di, did not constitute a crime of accepting bribery and the original court's determination of the type of crime committed by the Defendant had no founding. GE Di had no objective intention to take financial assets from another person and although GE Di's wife, ZHANG Ping, had accepted the RMB 200,000 yuan certificates of deposit from LIU Tengteng, LIU Tengteng did not tell GE Di about giving the certificates of deposit to ZHANG Ping at any point before or after the event. Once ZHANG Ping told him about the matter after the event, GE Di then requested ZHANG Ping to return the certificates of deposit. Subsequently, GE Di asked ZHANG Ping again and ZHANG Ping told GE Di that she had returned the certificates of deposit. Moreover, the certificates of deposit that ZHANG Ping accepted from LIU Tengteng were issued in LIU Tengteng's name and in accordance with the provisions of the system to identify users on certificates of deposit, the corresponding owner of the deposits remained LIU Tengteng, added to the fact that the certificates of deposit had been returned to LIU Tengteng prior to the raising of this case, then the actions of GE Di did not constitute the crime of accepting a bribe.

During the court hearing, the Defendant of the original hearing, GE Di and his defense attorneys submitted the same defense opinion as the aforementioned appeal opinion.

Through the hearing's investigations, in August 2009, as approved by IRICO Group Corporation, the Defendant of the original hearing, GE Di, was appointed Chairman of the Board of Directors and General Manager of Hefei LC Company.

3



Scanned by CamScanner

CONFIDENTIAL

IRI-CRT-00000766

In April 2010, LIU Tengteng started to use her credentials of affiliation with the Shaanxi Province No. 3 Construction Engineering Company (hereinafter "Shaanxi No. 3 Construction Company") to contract the Hefei LC Company's road construction project. Around October 2010, while the project was nearing completion, as a means of thanking GE Di for his care and help in terms of the project bidding aspects, etc., and in order to ensure the smooth progress of the project, LIU Tengteng gave GE Di's wife, ZHANG Ping, RMB 200,000 yuan. After accepting this, ZHANG Ping told GE Di and GE Di made no comment or declaration concerning his stance, tacitly accepting that ZHANG Ping hid away the money in a corner of a cupboard in their home. As of October 2012, RMB 150,000 yuan of this amount had been deposited in their household account held with China CITIC Bank. The other RMB 50,000 yuan had been used on daily living expenses. It was also brought to light that prior to the filing of this lawsuit, a family member of the Defendant of the original hearing, GE Di had returned the amount of RMB 200,000 yuan.

Evidence used in the determining the aforementioned facts of the appeal included:

1. The ruling to establish the case, the certificate of apprehension, the certificate of arrest, proof that on August 6, 2013, the Xianyang People's Prosecutor's Office established the case to interrogate GE Di under suspicion of having accepted a bribe, proof of the Xianyang Municipal Public Security Bureau's criminal apprehension of GE Di on August 7 in the same year, proof of his having been arrested on August 24 and detained at the Qindu District detention center.

2. Documents concerning GE Di's work position, GE Di's personal records information, information about his household registration documents, proof that the Defendant GE Di was appointed Chairman of the Board of Directors and General Manager of Hefei LC Company with the approval of IRICO Group Corporation in August 2009, proof of his ability to assume criminal responsibility, and proof that he resided at Room 202, Unit One, A10 Yangguang Community, Xianyang.

3. The business license, organizational code certificate and articles of association of Hefei LC Company; the business license and organizational code certificate of IRICO Group Corporation; the business license, composition of shareholders and articles of association of Shaanxi IRICO Electronic Glass Co., Ltd., the business license, organizational code certificate, assets relationship and articles of association of IRICO Display Components Holding Co., Ltd., to prove that IRICO Group Corporation is a state-controlled company and that Hefei LC Company's shareholders are IRICO Group Corporation and Shaanxi IRICO Electronic Glass Co., Ltd., with a shareholding of 0.27% and 99.73% respectively.

4. The business license, organizational code certificate, composition of shareholders and articles of association of Xianyang Ketong Information Technology Co., Ltd., to prove that the said company was established on May 9, 2005, is a limited liability company and that LIU Tengteng is the said company's legal representative and shareholder. The said company's business scope is: machinery and equipment production, spare parts processing, sales and sales of new materials.

4

Scanned by CamScanner

CONFIDENTIAL

IRI-CRT-00000767

5. Documents in regard to Shaanxi No. 3 Construction Company's related tender bids, billing information, company information, information concerning payment receipts from Hefei LC Company in regard to the construction project, information concerning payments to Xianyang Ketong, Xianyang Ketong Company's financial information, proofs of retained cash check slips and special funds transfers made to LIU Tengteng between July 2013 and December 2013, related contracts between Hefei LC Company and Shaanxi No. 3 Construction Company concerning the five installation and engineering project bids, the bid evaluation report, the construction engineering project contract, the review and verification report concerning the calculation of the five installations and engineering project bids and the contract between Hefei LC Company and Shaanxi No. 3 Construction Company for the asphalting of the road surface and construction and installation project management, to prove the progress of the tender bids and project work between Hefei LC Company and Shaanxi No. 3 Construction Company, the settlement of funds, the engineering bid for the Hefei LC Company's glass screen project road surface asphalting and circumstances concerning the winning bid, etc.

6. Retained slips of four certificates of deposit with China Merchants Bank, vouchers of account transaction details and related vouchers of China CITIC Bank account transaction details, etc., proved that on September 14, 2010, LIU Tengteng handled three certificates of deposit of RMB 40,000 yuan each and one certificate of deposit of RMB 80,000 yuan at China Merchants Bank for a total business amount of RMB 200,000 yuan, of which, the three certificates of deposit for RMB 40,000 yuan each were set up as time deposits with a password and the certificate of deposit for RMB 80,000 yuan was set up as demand deposit with a password. Furthermore, it was proven that on December 21, 2012, RMB 200,000 yuan was transferred from China Merchants Bank to LIU Tengteng's account with China CITIC Bank.

7. A response from China Merchants Bank, proving that in accordance with the provisions of the People's Bank of China, for demand deposits set up with a password, amounts of less than RMB 50,000 yuan can be paid in or withdrawn at any time by using the password and the client is not required to provide a piece of identity; and for time deposits of less than RMB 50,000 yuan, payments can be made by using the password.

8. A testimony given by LIU Tengteng, testifying that in around April and March, 2010, her company used its credentials of affiliation with Shaanxi No. 3 Construction Company to contract the Hefei LC Company factory area road construction and outdoor pole frame steel structure project, contractors information concerning the said project and that the total bid amount was almost RMB 20,000,000 yuan. The engineering tender was carried out in strict compliance with standard procedures and under these circumstances, GE Di's help towards her was to allow her affiliation with "Shaanxi No. 3 Construction Company" to be able to enter into the bid appraisal scope. At no time during the construction process did GE Di makes things awkward for her company, and he often offered suggestions, that enabled her to do a better job in terms of the construction.

5



Scanned by CamScanner

CONFIDENTIAL

Around October 2010, and nearing the completion of the project, in order to thank GE Di for his care and help of her work, she withdrew RMB 200,000 yuan in cash from the bank, wrapped it up in a black plastic bag, put this in her pocket book and drove to GE Di's home. At that time, GE Di's wife, ZHANG Ping was home alone and she have the RMB 200,000 yuan wrapped in plastic bag to ZHANG Ping. Moreover, she expressed her thanks to Director GE for all of his support. ZHANG Ping indicated her refusal to accept it and she put the cash on top of the tea table or the sofa, and she left. On July 26, 2013, she returned to GE Di's home where she saw both GE Di and ZHANG Ping. She said to them: that the Prosecutor's Office were recently investigating her, and if they investigated the matter of her giving ZHANG Ping RMB 200,000 yuan, they were to both insist that no such thing had happened. Apart from this RMB 200,000 yuan in cash, she had never given either of them any other amount of cash, bank card or certificates of deposit.

9. A testimony given by MIAO Bin, testifying that in May 2010, their company had carried out the construction of a factory area road and steel structure project in Hefei and as of May 2011, all the construction was complete. The total contract value was around more than RMB 22,000,000 yuan and the billed construction costs were more than RMB 29,000,000 yuan. When all the construction was complete, LIU Tengteng had said she went to thank General Manager GE Di, and had left his wife to decide what to do about it and that later, after he and his wife had discussed it, the money used to thank GE Di was an amount between RMB 100,000 and RMB 200,000 yuan, but that he [MIAO Bin] was not clear about the exact amount of money that was given.

10. A testimony given by ZHANG Ping, testifying that after National Day celebrations in 2011, LIU Tengteng brought RMB 200,000 yuan in cash to her home as a means to thanks GE Di. She refused to accept it, and LIU Tengteng put the money down and left. The money was in 100 yuan notes and bundled into two bundles of RMB 100,000 yuan each; it may also have been wrapped in a plastic bag.  Approximately two or three days later, after GE Di had returned home, she told GE Di about LIU Tengteng giving them the money and GE Di told her to give the money back to LIU Tengteng. In October 2012, she deposited RMB 150,000 yuan of the money into China CITIC Bank and used the other RMB 50,000 yuan for daily living expenses. On the evening of July 26, 2013, LIU Tengteng came to her home and told her and GE Di that she was under investigation by the Prosecutor's Office and if the Prosecutor's Office came to ask them about the matter of the RMB 200,000 yuan, that the three of them should insist emphatically that this matter never occurred.

 Scanned by CamScanner

CONFIDENTIAL                                              IRI-CRT-00000769

11. A testimony given by YANG Chun, testifying that LIU Tengteng had arranged before for them to make payments for materials to the private accounts of work site material suppliers. Other than this, she had not transferred money to other private accounts.

12. A testimony given by LIANG Guoqiang, testifying that he had previously represented Shaanxi No. 3 Construction Company in its signing of a machinery installation and construction contract with Hefei LC Company. He was always in charge site management of projects and was not clear about how things happened and contacts prior to the start of projects. After the bid, he was authorized by the company's legal representative to sign the contract on behalf of the legal representative. This contract was contracted individually by LIU Tengteng; his subsidiary company only appointed a few managers while other matters were all organized by LIU Tengteng. LIU Tengteng used the affiliation with his company as well as his company's credentials.

13. A testimony given by WEI Danli, testifying that he had been commissioned to represent Shaanxi No. 3 Construction Company in its signing of the contract with Hefei LC Company concerning the asphalting of the factory area road surface. This project was not contracted by him and was not contracted by the company. In fact, it was contracted by LIU Tengteng and her husband MIAO GEn. The company signed an affiliation agreement with LIU Tengteng's company, i.e., a construction general contractor's agreement and the entire project was to be completed by them. Apart from collecting a certain proportion of management fees and payable tax fees, the company had no other involvement with the project.

14. The confession and defense provided by the Defendant, GE Di, testifying that in September 2009 he had been appointed as the General Manager of Hefei LC Company and that in October 2011, he has been appointed as General Manager of IRICO Holding Co., Ltd. and Chairman of the Board of Directors and legal representative of Hefei LC Company. In April and May 2010, LIU Tengteng used her affiliated credentials with Shaanxi No. 3 Construction Company to contract Hefei LC Company's project of a road construction, valued at around more than RMB 19,000,000 yuan. The said project was to be completed by around January or February 2011. In November or December 2010, nearing the completion of the project, LIU Tengteng gave his wife ZHANG Ping RMB 200,000 yuan. ZHANG Ping told him about it after taking it. Given that he was often very busy with work, he did not ask ZHANG Ping to immediately return the money. One evening towards the end of July 2013, LIU Tengteng came to his house and told him and ZHANG Ping that: if the Prosecutor's Office investigates this matter, you need to insist emphatically that this matter never occurred.

 Scanned by CamScanner

CONFIDENTIAL

The aforementioned evidence was heard and substantiated in the first and second hearings; the source of the evidence provided was legal and the content of evidence was truthful and reliable. Moreover, there is mutual cross-referencing between the pieces of evidence and this serves as its confirmation.

This court determines that the Appellant (the Defendant of the original hearing) GE Di in his capacity as a State-employed worker that had been dispatched from a state-controlled company to work in a non-state-controlled company to conduct official business, used the convenience of his duties and role, to seek interests from another, and accepted cash in the amount of RMB 200,000 yuan which is a very large amount, and the court determines that this action constitutes the acceptance of a bribe. In regard to the point raised by the Defendant of the original hearing, GE Di, that LIU Tengteng gave the money to his wife, ZHANG Ping, that he was previously unaware and when he was made aware, he told ZHANG Ping to return the money, and therefore, he had no intention to accept financial property from another party, the facts of the defense and investigative findings do not tally and therefore, his defense is not supported. In regard to the defense reason and opinion raised by the Defendant of the original hearing, GE Di, and his defense attorneys, that the investigative organization had forced a confession during interrogation, the Defendant of the original hearing, GE Di, and his defense attorneys were unable to provide evidence or materials that proof was illegally obtained, and therefore, this defense and defense opinion is untenable. In regard to the defense opinion submitted by the defense attorneys that LIU Tengteng gave ZHANG Ping certificates of deposit for RMB 200,000 yuan and that the said certificates of deposit had been returned before the filing of the lawsuit, and that the Defendant of the original hearing, GE Di, had not subjectively intended to take possession of another party's financial property, and objectively, had not actually taken possession of another party's financial property, therefore, it did not constitute the crime of accepted bribery. After investigation, the evidence of the testimonies of witnesses ZHANG Ping and LIU Tengteng, the confession of the Defendant of the original hearing, GE Di and deposit vouchers provided by China CITIC Bank Xianyang Branch, etc. prove that LIU Tengteng gave ZHANG Ping cash and therefore, this defense opinion is untenable and cannot be believed. Mistakes made in the details of the facts of the original judgment are to be corrected. The fact that the Defendant of the original hearing, GE Di, had already returned all the cash to the investigative organization prior to the filing of the lawsuit legally warrants a lightened sentence. Whereas, the *(9ᵗʰ) Corrections Proposal to Criminal Law of the People's Republic of China* and *Interpretation by the Supreme People's Court and the Supreme Procuratorate of several issues concerning the application of law in corruption and bribery cases* were promulgated during the second hearing of this case, adjusting accepted bribe amount standards, and in accordance with the principles of observing old laws and leniency, in combination with the details of this case, this court hereby legally overrules the original judgment. Pursuant to the provisions of the *Criminal Law of the People's Republic of China*, Article 385, Item I, Article 386, Article 383, Item 1(II), Item 3, Item 64 and Item 93 and *"Interpretation concerning the application of law in corruption and bribery cases" of the Supreme People's Court and the Supreme Procuratorate,*



Scanned by CamScanner

CONFIDENTIAL IRI-CRT-00000771

Article 2, Article 16, Item 2 and Article 19, and *Code of Criminal Procedure of the People's Republic of China*, Article 225, Item 1 (II) and (III), and through the research and decision of the judicial committee, the new judgment is as follows:

I. To uphold the qualitative section of (2014) XIAN QIN XING ZHONG ZI [Ref.: Xianyang Qindu Criminal Retrial] No. 00003 Criminal Judgement produced by the Qindu District People's Court concerning the Appellant, GE Di's crime of accepting a bribe.

II. To revoke the sentencing section of (2014) XIAN QIN XING ZHONG ZI [Ref.: Xianyang Qindu Criminal Retrial] No. 00003 Criminal Judgement produced by the Qindu District People's Court concerning the Appellant, GE Di's crime of accepting a bribe.

II. The Appellant (Defendant of the original hearing), GE Di, is guilty of the criminal act of accepting a bribe and is sentenced to prison for a period of three years and subject to a fine of RMB 200,000 yuan.

(The sentence will start from the date that the judgment takes effect. In regard to the Appellant's time in custody prior to the judgment, one day of prison time will be deducted from the sentence for time served, i.e., from August 7, 2013 until November 8, 2016. The fine is to be paid in one lump sum within 30 days from the date that the judgment takes effect.)

This judgment is the final ruling in this case.


Presiding Judge: ZHANG Zhongwang
Judge: CHEN Bocui
Judge: LIU Jianming

May 16, 2016

[stamp: illegible]
Court recorder: WANG Dong


 Scanned by CamScanner

CONFIDENTIAL IRI-CRT-00000772

# 陕 西 省 咸 阳 市 中 级 人 民 法 院

# 刑 事 判 决 书

（2015）咸中刑终字第 00119 号

抗诉机关咸阳市秦都区人民检察院。

上诉人（原审被告人）葛迪，男，满族，1959 年 7 月 23 日出生于陕西省眉县，身份证号:610402195907231212，大专文化，住咸阳市阳光小区 A10 一单元 202 室,捕前系彩虹（合肥）液晶玻璃有限公司董事长、总经理。因本案于 2013 年 8 月 7 日被刑事拘留，同年 8 月 24 日被逮捕，2016 年 2 月 6 日经本院决定取保候审,2016 年 5 月 9 日被咸阳市公安局高新分局执行逮捕。

辩护人高珊琦，陕西其源律师事务所律师。

辩护人姚敏利，陕西方强律师事务所律师。

咸阳市秦都区人民法院审理咸阳市秦都区人民检察院指控被告人葛迪犯受贿罪一案，秦都区人民法院于二〇一四年六月三十日作出了（2013）咸秦初字第 00344 号刑事判决书，原审被告人葛迪不服，提出上诉。咸阳市中级人民法院于二〇一四年十月二十八日作出了（2014）咸中刑终字第 00140 号刑事裁定书，以事实不清、证据不足,发回秦都区人民法院重新审理。秦都区人民法院于二〇一五年四月十六日做出了（2014）咸秦刑重字第 00003 号刑事判决书，咸阳市秦都区人民检察院提起抗诉，原审被告人葛迪提出上诉。本院于 2015 年 5 月 12 日立案并依法组成合议庭,于 2015 年 8 月 26 日公开开庭审理了本案。咸阳市人民检察院指派检察

CONFIDENTIAL

由 扫描全能王 扫描创建

IRI-CRT-00000764

员赵林海、王志宏出庭履行职务，被告人葛迪及其辩护人高珊琦、姚敏利到庭参加了诉讼。期间，咸阳市人民检察院建议补充侦查一次。本案现已审理终结。

原审判决认定，2009 年 8 月，经彩虹集团公司批准，被告人葛迪担任彩虹（合肥）液晶玻璃有限公司（以下简称合肥液晶公司）董事长、总经理。2010 年 4 月，刘腾腾开始用挂靠的陕西省第三建筑工程公司（以下简称陕三建公司）资质承揽了合肥液晶公司的道路工程。同年 9 月，在工程临近结束时，刘腾腾为了感谢葛迪在工程招投标等方面给予的关照和帮助，准备送给葛迪 20 万元。2010 年 9 月 14 日，刘腾腾携带现金 20 万元到葛迪家中，欲将 20 万元送给葛迪之妻张萍。张萍表示拒绝后，刘腾腾提出将 20 万元以自己的名字存入银行，存单留给张萍，张萍表示同意。随后，刘腾腾开车同张萍一起到咸阳市七厂十字附近的招商银行咸阳支行，将 20 万元分为四笔以刘腾腾名字存入该行，密码由张萍设定，存单交给张萍。张萍将刘腾腾送钱的事情随后告诉了葛迪，葛迪让张萍将存单退还刘腾腾，张萍一直未退。直到 2012 年 12 月 21 日，张萍将存单还给刘腾腾，刘腾腾将该四笔存款由招商银行咸阳支行刘腾腾的账户转至中信银行咸阳支行刘腾腾的账户。原审法院认为，被告人葛迪身为国有公司委派到非国有公司从事公务的国家工作人员，利用职务之便，为他人谋取利益，与其妻张萍收取咸阳科通信息技术公司法定代表人刘腾腾所送的 20 万元，其行为已构成受贿罪。遂依据《中华人民共和国刑法》第二十五条、第二十六条第一款、第九十三条、第三百八十五条、第三百八十六条、第三百八十三条之规定，判决：被告人葛迪犯受贿罪，判处有期徒刑十年。

由 扫描全能工 扫描创建

CONFIDENTIAL

IRI-CRT-00000765

宣判后，咸阳市秦都区人民检察院抗诉提出：被告人葛迪非法收受刘腾腾 20 万元现金据为己有，并未退赃，应对被告人葛迪收受的 20 万元现金予以认定；现有证据材料得不出存单密码是否由张萍设定的结论，原审法院认定 20 万元存单的情节跟葛迪收受贿赂的事实并无关系，原审判决认定葛迪收受 20 万元存单事实不清，证据不足。

原审被告人葛迪上诉提出：1、原审判决认定事实错误。对于刘腾腾所送的 20 万元，他未亲自收取，也未指示或默许其妻张萍收取，刘腾腾何时、用何方式送给他妻子张萍 20 万元，他事先不知晓，且在张萍告诉他时，他即责令退回，张萍也答应退回。2、他在侦查阶段的供述是在被刑讯逼供、诱供的情况下形成的，且讯问未进行同步录音录像。综上，认为他不构成受贿罪，请求二审改判其无罪。

原审被告人葛迪的辩护人提出：1、刘腾腾交给张萍的不是 20 万元现金而是 20 万元存单。2、上诉人葛迪不构成受贿罪，原审认定被告人的罪名不能成立。葛迪没有收取他人财物的主观故意，葛迪之妻张萍虽然收取了刘腾腾 20 万元的存单，但刘腾腾送存单给张萍前后均未告诉葛迪，张萍事后告诉葛迪后，葛迪即要求张萍将存单退回。后来，葛迪又问过张萍，张萍告诉葛迪存单已退回。另外，张萍收取刘腾腾的存单是以刘腾腾名义所开，按照存款实名制的规定，相应存款的所有人仍是刘腾腾，加之存单在案发前已退还给刘腾腾，故葛迪不构成受贿罪。

庭审中，原审被告人葛迪及其辩护人提出与上述意见相同的辩护意见。

经审理查明，2009 年 8 月，经彩虹集团公司批准，原审被告人葛迪担任合肥液晶公司董事长、总经理。2010 年 4 月，

 由 扫描全能王 扫描创建

CONFIDENTIAL

IRI-CRT-00000766

刘腾腾开始用挂靠的陕三建公司资质承揽了合肥液晶公司的道路工程。2010 年 10 月份左右，工程临近结束时，刘腾腾为了感谢葛迪在工程招投标等方面给予的关照和帮助，使得工程得以顺利进行，送给了葛迪的妻子张萍 20 万元。张萍收受后，将此事告知了葛迪，葛迪未表态，默许张萍将钱藏在家中柜子的角落里，直到 2012 年 10 月将其中的 15 万元存入中信银行的自家账户，另外 5 万元用于日常生活开销。另查明，起诉前，原审被告人葛迪家属退赃 20 万元。

认定上述事实的证据有：

1、立案决定书、拘留证、逮捕证，证明 2013 年 8 月 6 日，咸阳市人民检察院对葛迪涉嫌受贿一案立案侦查，同年 8 月 7 日因本案被咸阳市公安局刑事拘留，8 月 24 日被逮捕，羁押于秦都区看守所。

2、葛迪任职文件、葛迪档案资料、户籍信息，证明被告人葛迪 2009 年 8 月经彩虹集团公司批准任合肥液晶公司董事长、总经理，具有刑事责任能力，住咸阳市阳光小区 A10 一单元 202 室。

3、合肥液晶公司营业执照、机构代码证及章程；彩虹集团公司营业执照、机构代码证；陕西彩虹电子玻璃有限公司营业执照、股东构成、公司章程；彩虹显示器件股份有限公司营业执照、机构代码证、产权关系、公司章程，证明彩虹集团公司系国有公司，合肥液晶公司的股东为彩虹集团公司、陕西彩虹电子玻璃有限公司，占股比例分别为 0.27%、99.73%。

4、咸阳科通信息技术有限公司营业执照、机构代码证、股东构成、公司章程，证明该公司成立于 2005 年 5 月 9 日，系有限责任公司，刘腾腾为企业法人、股东。公司的经营范

由 扫描全能王 扫描创建

CONFIDENTIAL                                                                    IRI-CRT-00000767

围为:机电设备制造、配件加工、销售、新材料销售。

5、关于陕三建公司相关招投标文件、结算资料、公司资料、关于合肥液晶公司相关工程的收款情况、向咸阳科通付款情况、咸阳科通公司账务资料、咸阳科通公司 2013 年 7 月至 12 月付给刘腾腾现金支票存根及特种转账凭证、合肥液晶公司同陕三建公司安装工程五标段相关合同文件、评标书、建设工程施工合同及关于对机电安装五标段工程结算审核验证的报告、合肥液晶公司同陕三建公司路面沥青层、建筑安装工程管理合同,证明合肥液晶公司与陕西三建公司之间的招投标及工程进度、资金结算、合肥液晶公司玻璃幕板项目路面沥青层施工工程招标、中标等情况。

6、招商银行四张存单底联、账户流水明细凭证、中信银行账户流水明细等相关凭证,证明 2010 年 9 月 14 日刘腾腾在招商银行办理过三张 4 万元存单、一张 8 万元存单共 20 万元的业务情况,其中三张 4 万元存单系设密码的定期存单,8 万元存单系设密码的活期存折,2012 年 12 月 21 日招商银行将 20 万元转账到刘腾腾在中信银行的账户。

7、招商银行回复一份,证明根据人民银行的规定,活期存折设密码时,单笔 5 万元以下,凭密码即可随时支取,不需要客户提供身份证明;设密码的 5 万元以下定期存单,凭密码即可支付。

8、刘腾腾的证言,证明 2010 年 3、4 月份左右,她的公司用挂靠的陕三建公司资质承揽了合肥液晶公司厂区道路及室外桁价钢结构工程,该工程包工包料,总标的额近二千万元。工程的招投标是严格按照程序进行的,这个环节葛迪对她的帮助就是把她所挂靠的"陕三建公司"纳入到考察范围。在施工过程中,葛迪也从不为难其公司,并经常提出

 由 扫描全能王 扫描创建

CONFIDENTIAL

IRI-CRT-00000768

一些建议，帮助她把工程干好。2010 年 10 月份左右，在工程临近结束时，为了感谢葛迪对她的照顾和帮助，她从银行取了 20 万元现金，用一个黑色塑料袋包好，装在她的女式包里，开车到葛迪家，当时葛迪的妻子张萍一个人在家，她把装有 20 万元的塑料袋送给张萍，并表示感谢葛总给予的关照，张萍表示拒绝，她把钱放在茶几上，或者是沙发上就走了。2013 年 7 月 26 日，她去葛迪家中见到葛迪和张萍，对他们说：最近检察院对她进行调查，如果调查她送给张萍的 20 万元的事，双方要一口咬定，就说没有这件事。除了这笔现金 20 万元以外，她再没有给过其他现金、银行卡、存单。

9、苗滨的证言，证明 2010 年 5 月份，他们公司在合肥进行了厂区道路工程建设及钢结构工程建设，所有工程至 2011 年 5 月份全部竣工，工程合同总造价约 2200 多万元，工程结算价 2900 余万元。在所有工程结束时，刘腾腾说过要感谢总经理葛迪的话，他让妻子看着办，后来他和妻子商量，感谢葛迪的钱数在 10 万至 20 万之间，实际给了多少其不清楚。

10、张萍的证言，证明 2011 年国庆前后，刘腾腾为感谢葛迪，拿了 20 万元现金到她家，她表示拒绝，刘腾腾留下钱后就走了。钱是百元红版，10 万元一捆、共两捆，可能还用一个塑料袋包着。大概过了二、三天，葛迪回家后，她就把刘腾腾送钱的事告诉了葛迪，葛迪让她把钱还给刘腾腾。2012 年 10 月份，她把其中的 15 万元存入了中信银行，另外的 5 万元用于日常开销了。2013 年 7 月 26 日晚上，刘腾腾来到她家，对她和葛迪说，检察院正在调查她，如果检察院问这 20 万元的事，我们三个要咬定死口说没有这事。

 由 扫描全能工 扫描创建

IRI-CRT-00000769

11、杨春侠的证言，证明刘腾腾安排过其给工地的材料供应商的私户转过材料款。除此之外，其没有给别的私人账户上转过钱。

12、梁国强的证言，证明他代表陕三建公司同合肥液晶公司签订过机电安装工程施工合同。他一直负责工程现场施工，前期工程是怎么联系的等具体事情其不清楚。招投标后，他受法定代表人的委托在施工合同上以委托代表人的身份签了字。这个工程是刘腾腾个人承揽的，其分公司只是委派了几个管理人员，其余事项都由刘腾腾的公司组织。刘腾腾的公司挂靠在其公司，使用用其公司的资质。

13、魏丹利的证言，证明他受委托代表陕三建公司同合肥液晶公司签订过厂区路面沥清工程施工合同。这个工程不是他承揽的，也不是公司承揽的，实际承揽人是刘腾腾、苗滨夫妇。公司同刘腾腾的公司签有挂靠协议，即建筑工程总分包协议，工程全部由他们去做，公司除了收取一定比例的管理费及相应税费外，其他一概不管。

14、被告人葛迪的供述与辩解，证明2009年9月，他被任命为合肥液晶公司总经理，2011年10月份，被任命为彩虹股份有限公司总经理兼任合肥液晶公司董事长、法定代表人。2010年4、5月份，刘腾腾使用挂靠的陕三建公司的资质在合肥液晶公司建设工地承揽了约1900多万元的道路施工工程，该工程大概在2011年1、2月份基本完工。2010年11、12月份，工程临近结束时，刘腾腾送给其妻子张萍20万元，张萍收受后告诉了他，由于他平时工作很忙，没有及时让张萍把钱给退回去。2013年7月下旬的一天晚上，刘腾腾到其家中，对他和张萍说：如果检察院调查此事，要一口咬死说没有送钱。

由 扫描全能工 扫描创建

IRI-CRT-00000770

以上证据，经一审、二审当庭举证、质证、来源合法、证据内容真实可信，且能相互印证，均予以确认。

本院认为，上诉人（原审被告人）葛迪身为国有企业委派到非国有公司从事公务的人员，利用职务之便，为他人谋取利益，收受现金 20 万元，数额巨大，其行为已构成受贿罪。关于原审被告人葛迪提出的刘腾腾给其妻子张萍送钱一事，他事先不知情，在张萍告知他后，他让张萍将钱予以退还，他没有收受他人财物故意的辩解意见与查明事实不符，不予支持；关于原审被告人葛迪及其辩护人提出侦查机关曾对其刑讯逼供、诱供的辩解及辩护意见，原审被告人葛迪及其辩护人未能提供非法取证的相关线索和材料，故该辩解及辩护意见不能成立。关于辩护人提出的刘腾腾交给张萍的是 20 万元存单，且该存单已于案发前退还，原审被告人葛迪主观上没有非法占有他人财物的故意，客观未实际占有他人财物，不构成受贿罪的辩护意见。经查，证人张萍、刘腾腾的证言、原审被告人葛迪的供述以及中信银行咸阳支行存款凭证等证据，均能证明刘腾腾给张萍的是现金，该辩护意见不能成立，不予采信。原审判决对该节事实认定有误，应予纠正。原审被告人葛迪在提起公诉前已向检察机关全部退赃，可依法从轻处罚。鉴于本案二审期间《中华人民共和国刑法修正案（九）》和《最高人民法院、最高人民检察院关于办理贪污贿赂刑事案件适用法律若干问题的解释》公布实施，对受贿犯罪数额标准作出修正，根据从旧兼从轻原则，结合本案情节，本院依法予以改判。依据《中华人民共和国刑法》第三百八十五条第一款、第三百八十六条、第三百八十三条第一款（二）项、第三款、第六十四条、第九十三条，《最高人民法院、最高人民检察院〈关于办理贪污贿赂刑事

由 扫描全能王 扫描创建

IRI-CRT-00000771

案件适用法律若干问题的解释》》第二条、第十六条第二款、第十九条，《中华人民共和国刑事诉讼法》第二百二十五第一款第（二）、（三）项之规定，经审判委员会研究决定，判决如下：

一、维持秦都区人民法院（2014）咸秦刑重字第 00003 号刑事判决对上诉人葛迪犯受贿罪的定性部分。

二、撤销秦都区人民法院（2014）咸秦刑重字第 00003 号刑事判决对上诉人葛迪犯受贿罪的量刑部分。

二、上诉人（原审被告人）葛迪犯受贿罪，判处有期徒刑三年，并处罚金 20 万元。

（刑期从判决执行之日起计算。判决执行前先行羁押的，羁押一日，折抵刑期一日，即自 2013 年 8 月 7 日至 2016 年 11 月 8 日；罚金在判决生效后 30 日内一次性缴纳）。

本判决为终审判决。

审 判 长　张忠玉
审 判 员　陈波翠
审 判 员　刘建明

二〇一六年五月十六日

书 记 员　王 东

由 扫描全能王 扫描创建

CONFIDENTIAL　　　　　　　　　　　　　　　　　　　　IRI-CRT-00000772

Exhibit 43



June 25, 2018

**Certification**

**Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English  of the document with bates numbers range: IRI-CRT-00000786 - IRI-CRT-00000789.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

April 4, 2018          Ministry of Finance State-owed Assets Commission notice concerning the promulgation of the *Interim Measures for the Administration of the Collection of Proceeds from State-owned Capital of Central Enterprises*

Simplified Chinese | Traditional Chinese | English | Mailbox | _____ [illegible] [search this site] [Search]



The Central People's Government of the People's Republic of China
www.GOV.cn
The Central People's Government of the People's Republic of China

Home page | China Today | China Brief | Laws and regulations | **Public documents and notices** | Interactive government affairs | Government construction | Work status | Personnel appointments and dismissals | Press center

Current location: Home page > public documents and notices > departmental regional documents

Central Government Official Website: www.gov.cn   December 17, 2007, 16:54 pm   Source: website of the State-owned Assets Commission
[font: large medium small] [print this page] [close this window]

Document of the Ministry and Finance and the State-owned Assets Commission
CAI QI [Ref.: Finance Enterprise] (2007) No. 309

**Ministry of Finance State-owed Assets Commission Notice concerning the promulgation of the *Interim Measures for the Administration of the Collection of Proceeds from State-owned Capital of Central Enterprises***

To relevant centrally managed enterprises:

By means of State Council approval, the *Interim Measures for the Administration of the Collection of Proceeds from State-owned Capital of Central Enterprises* is hereby promulgated. Please adhere to its provisions. In the event of any questions over the course of its implementation, please contact this department in a timely manner.

With 2007 serving as a pilot period, the 2006 proceeds from State-owned capital of enterprises under the supervision of the State-owned Assets Commission will be collected, of which half of enterprise after-tax profits will be collected according to existing standards. All related enterprises are requested to submit their payment declaration by December 20.

Attachment: Interim Measures for the Administration of the Collection of Proceeds from State-owned Capital of Central Enterprises

Ministry of Finance of the People's Republic of China
State-owned Assets Supervision and Administration Commission of the State Council
December 11, 2007

**Interim Measures for the Administration of the Collection of Proceeds from State-owned Capital of Central Enterprises**

**Chapter I – General Provisions**

Article I  These Measures have been formulated in accordance with *the Company Law of the People's Republic of China, the Budget Law of the People's Republic of China* and the *Opinions of the State Council on the Trial Implementation of State-owned Capital Management Budget* (GuoFa (2007) No. 26) in order to establish a State-owned capital management budget system, regulate the distribution relationship between the State and enterprises, and strengthen the administration of proceeds from the State-owned capital of central enterprises.

Article II The scope of trial implementation covered by these Measures includes enterprises that are under the supervision of the State-owned Assets Supervision and Administration Commission of the State Council ("SASAC") and the China National Tobacco Corporation, hereinafter referred to as "central enterprises."

Article III The term "proceeds from State-owned capital" as mentioned in these Measures refers to gains on investment obtained by the State from State-owned capital in its identity as the owner of such, and specifically includes:

IRI-CRT-00000786

April 4, 2018          Ministry of Finance State-owed Assets Commission notice concerning the promulgation of the *Interim Measures for the Administration of the Collection of Proceeds from State-owned Capital of Central Enterprises*

(i) Profits payable, i.e., profits that a wholly State-owned enterprise should turn over to the State pursuant to regulations;

(ii) Dividends and bonuses of State-owned shares, i.e., the income from dividends and bonuses of State-owned equities (shares) obtained by a State-controlling enterprise or a State-owned holding enterprise;

(iii) Income from the transfer of State-owned property rights, i.e., the income from the transfer of State-owned property rights and equities (shares);

(iv) Income from the liquidation of an enterprise, i.e., the income from the liquidation of a wholly State-owned enterprise (with the liquidation costs deducted), and the income from the liquidation of a company (with the liquidation costs deducted) shared by the State which has a controlling status or holds shares in the company; and

(v) Other proceeds from State-owned capital.

Article IV The proceeds from State-owned capital of central enterprises will be directly turned over to the central treasury, and be incorporated into the administration of State-owned capital management budgetary income at the national level.

If the State otherwise provides stipulations concerning the proceeds from State-owned capital of central enterprises, said stipulations shall prevail.

Article V The proceeds from State-owned capital of central enterprises will be collected by the Ministry of Finance, and SASAC will be responsible for organizing the enterprises under its supervision to turn over the proceeds from State-owned capital.

**Chapter II Declaration and Verification of the Proceeds from State-owned Capital of Central Enterprises**

Article VI To turn over the proceeds from State-owned capital, a central enterprise shall make a declaration according to legal provisions, and faithfully fill in the Declaration Form for the Proceeds from State-owned Capital of Central Enterprises (refer to Attached Forms 1-4 for details). The specific timing and requirements for declarations are as follows:

(i) Profits payable are to be paid within five months of the end of the financial year and to be declared once by the central enterprise;

(ii) Dividends and bonuses of State-owned shares are to be declared within 30 business days of the resolution passed by the Shareholder's Meeting or Shareholder's Assembly (or meeting of the Board of Directors if no Shareholder's Meeting or Shareholder's Assembly has been established, same below). The declaration is to be faithfully submitted by the State-controlled or State-share participating enterprise and submitted with resolution documents of the Shareholder's Meeting or Shareholder's Assembly;

(iii) Income from the transfer of State-owned property rights is to be declared within 30 business days of the signing of the transfer contract by the central enterprise or an organization entrusted by SASAC and submitted with the transfer contract and an assets evaluation report;

(iv) Income from the liquidation of an enterprise is to be declared within 30 business days from the formulation by the liquidation committee or the administrator of the proposal for the distribution of remaining assets. The declaration is to be faithfully submitted by the liquidation committee and submitted with the liquidation report and an audit report issued by a Certified Public Accountant;

(v) Other proceeds from State-owned capital are to be declared within 30 business days of the date on which the proceeds are confirmed. They are to be declared by the relevant organization and submitted along with relevant documents and information concerning the economic matters and confirmed financial amount.

Article VII When declaring proceeds from State-owned capital to SASAC, enterprises under supervision of SASAC will submit the declaration form and related information to the Ministry of Finance. When declaring proceeds from State-owned capital, the China National Tobacco Corporation will directly submit the declaration form and related information to the Ministry of Finance.

Article VIII The net profits attributed to parent companies of wholly-owned or controlling share subsidiary companies and subsidiary enterprises as reflected on annual consolidated financial reports serves as the basis for proceeds from State-owned capital as declared by wholly State-owned enterprises.

Enterprise calculations of annual net profits payable may deduct unrecovered losses from the previous financial year.

Article IX The ratio of annual net profit to be turned over by wholly State-owned enterprises varies among different industries and is divided into three categories (See Annex 5 for a detailed list of industry categories):

(i) Category I: 10%;
(ii) Category II: 5%;
(iii) Category III: postponed for 3 years or exempt.

Article X Dividends and bonuses to be paid on State-owned investments by enterprises in which the State owns a controlling share or a participating share will be distributed in accordance with the proposal passed by the Shareholder's Meeting or the Shareholder's Assembly.

IRI-CRT-00000787

April 4, 2018            Ministry of Finance State-owed Assets Commission notice concerning the promulgation of the *Interim Measures for the Administration of the Collection of Proceeds from State-owned Capital of Central Enterprises*

Enterprises in which the State owns a controlling share or a participating share must distribute net profits on an annual basis according to law. If there is no profit allocation in a given year, the reasons and evidence for no allocation must be provided with a resolution from the Shareholder's Meeting or Shareholder's Assembly.

Article XI The turning over of proceeds from State-owned capital by central enterprises is verified according to the following different circumstances:

(i) The ratio of profits payable to be turned over to the State are calculated and verified according to the net profit attributed to the parent company's ownership as reflected in the enterprise's annual consolidated financial report audited by a Certified Public Accountant and other relevant regulations;

(ii) Dividends and bonuses of State-owned shares are verified according to the resolution of profit allocation made by the enterprise in which the State owns a controlling or participating shares;

(iii) Income from the transfer of State-owned property rights is verified according to information such as the enterprise's property rights transfer agreement and assets evaluation report;

(iv) Income from the liquidation of an enterprise is verified according to the enterprise liquidation report submitted by the liquidation committee or the administrator;

(v) Other proceeds from other State-owned capital are verified according to financial and accounting information concerning the relevant economic action.

Article XII If a central enterprise undergoes a major restructuring in accordance with State policies, or if it sustains tremendous losses as a result of an event of force majeure such as damage from a natural disaster, and it requires a reduction or exemption from profits payable, it must submit an application to the Ministry of Finance and SASAC. Upon approval from the Ministry of Finance and SASAC, it will directly transfer the reduced or exempted profits payable towards increasing State capital contributions or State-owned capital reserves.

### Chapter III            Turning Over of Proceeds from State-owned Capital by Central Enterprises

Article XIII  The turning over of proceeds from State-owned capital by central enterprises is handled using the "State-owned capital operational revenue" ledger title of the government's receipt and disbursement accounting category.

Article XIV  The turning over of proceeds from State-owned capital by central enterprises is implemented according to the following procedures:

(i) SASAC will provide a review opinion within 15 business days of receipt of the central enterprise's proceeds from the State-owned capital declaration form and related information. This opinion is submitted to the Ministry of Finance for review and approval. The Ministry of Finance will issue its review and approval opinion within 15 business days of receipt of SASAC's review opinion;

(ii) In line with the Ministry of Finance's approved review results, SASAC issues a notice of the State-owned capital proceeds to be turned over by the supervised enterprise and the Ministry of Finance issues a notice of collection of the proceeds from State-owned capital in a central enterprise to the supervisory expert stationed at the jurisdictional provincial (autonomous region, directly-governed municipality, independent planning status municipality) department of finance. The financial supervisory expert issues a "Letter of non-tax income general payment" in accordance with the contents of the notice of collection of the proceeds from State-owned capital in a central enterprise issued by the Ministry of Finance;

(iii) The SASAC-supervised enterprise handles formalities to pay the proceeds from State-owned capital into the local treasury in accordance with the notice of the State-owned capital proceeds to be turned over and the "Letter of non-tax income general payment" issued by the supervisory expert stationed at the jurisdictional provincial (autonomous region, directly-governed municipality, independent planning status municipality) department of finance;

(iv) Upon receipt of a declaration form of proceeds from State-owned capital and related information from the China National Tobacco Corporation, the Ministry of Finance will complete review within 15 business days and then issue a notice of the State-owned capital proceeds to be turned over to the financial supervisory expert of the Ministry of Finance stationed in the Beijing office. The China National Tobacco Corporation will use the "Letter of non-tax income general payment" issued by the Ministry of Finance supervisory expert stationed in the Beijing Office to handle formalities to pay the proceeds from State-owned capital into the local treasury.

Article XV  Profits payable for the current year by central enterprises are to be settled within five months of the declaration date, of which: where profits payable are less then RMB 1 billion yuan (inclusive), the payment must be cleared in one lump sum; where profits payable are more than RMB 1 billion yuan but less than RMB 5 billion yuan (inclusive), the payment can be cleared in two instalments; and if the profits payable are more than RMB 5 billion yuan, the payment can be cleared in three instalments.

Article XVI   In regards to central enterprises that fall into arrears with payments of the proceeds from State-owned capital, the Ministry of Finance and SASAC will investigate the cause and take appropriate measures to enforce payment.

IRI-CRT-00000788

April 4, 2018                Ministry of Finance State-owed Assets Commission notice concerning the promulgation of the *Interim Measures for the Administration of the Collection of Proceeds from State-owned Capital of Central Enterprises*

### Chapter IV        Supplementary provisions

Article XVII  These Measures will take effect on their date of promulgation.

[email suggestions    [send]]   [correction] [print this page] [close this window]

Copyright © 2013 www.gov.cn
All Rights Reserved
Copyright: China Government Website

IRI-CRT-00000789

中文简体 | 中文繁体 | 英文 | 邮箱 　　　　　　　　　　　　本网站搜索 ▼ | 搜索



# 中华人民共和国中央人民政府
### The Central People's Government of the People's Republic of China
www.GOV.cn

| 网站首页 | 今日中国 | 中国概况 | 法律法规 | 公文公报 | 政务互动 | 政府建设 | 工作动态 | 人事任免 | 新闻发布

当前位置：　首页>>　公文公报>>　部门地方文件

中央政府门户网站　www.gov.cn　2007年12月17日　16时54分　　　来源：国资委网站

【字体：大 中 小】　打印本页　　关闭窗口

财　　政　　部
文　件
国　　资　　委

财企〔2007〕309号

## 财政部 国资委关于印发《中央企业
## 国有资本收益收取管理暂行办法》的通知

有关中央管理企业：

　　经国务院批准，现将《中央企业国有资本收益收取管理暂行办法》印发给你们，请遵照执行。执行中如有问题，请及时与我们联系。

　　2007年作为试点，对国资委所监管企业2006年实现的国有资本收益进行收取，其中，企业税后利润按标准减半收取。请各有关企业于12月20日前按规定申报交纳。

　　附件：中央企业国有资本收益收取管理暂行办法

中华人民共和国财政部
国务院国有资产监督管理委员会
二OO七年十二月十一日

## 中央企业国有资本收益收取管理暂行办法

第一章　总　　则

　　第一条　为建立国有资本经营预算制度，规范国家与企业的分配关系，加强中央企业国有资本收益管理，依据《中华人民共和国公司法》、《中华人民共和国预算法》、《国务院关于试行国有资本经营预算的意见》（国发〔2007〕26号），制定本办法。

　　第二条　本办法试行范围包括国资委所监管企业和中国烟草总公司，简称中央企业。

　　第三条　本办法所称国有资本收益，是指国家以所有者身份依法取得的国有资本投资收益，具体包括：

IRI-CRT-00000786

（一）应交利润，即国有独资企业按规定应当上交国家的利润；

（二）国有股股利、股息，即国有控股、参股企业国有股权（股份）获得的股利、股息收入；

（三）国有产权转让收入，即转让国有产权、股权（股份）获得的收入；

（四）企业清算收入，即国有独资企业清算收入（扣除清算费用），国有控股、参股企业国有股权（股份）分享的公司清算收入（扣除清算费用）；

（五）其他国有资本收益。

第四条　中央企业国有资本收益应当按规定直接上交中央财政，纳入中央本级国有资本经营预算收入管理。

国家对中央企业国有资本收益另有规定的，从其规定。

第五条　中央企业国有资本收益由财政部负责收取，国资委负责组织所监管企业上交国有资本收益。

第二章　中央企业国有资本收益的申报与核定

第六条　中央企业上交国有资本收益应当按规定申报，并如实填写中央企业国有资本收益申报表（详见附表1-4）。具体申报时间及要求如下：

（一）应交利润，在年度终了后5个月内，由中央企业一次申报；

（二）国有股股利、股息，在股东会或者股东大会（没有设立股东会或者股东大会的为董事会，下同）表决日后30个工作日内，由国有控股、参股企业据实申报，并附送股东会、股东大会的决议文件；

（三）国有产权转让收入，在签订产权转让合同后30个工作日内，由中央企业或者国资委授权的机构据实申报，并附送产权转让合同和资产评估报告；

（四）企业清算收入，在清算组或者管理人编制剩余财产分配方案后30个工作日内，由清算组或者管理人据实申报，并附送企业清算报告和中国注册会计师出具的审计报告；

（五）其他国有资本收益，在收益确定后30个工作日内，由有关单位申报，并附送有关经济事项发生和金额确认的资料。

第七条　国资委所监管企业在向国资委申报上交国有资本收益时，将申报表及相关材料报送财政部；中国烟草总公司申报上交国有资本收益，将申报表及相关材料直接报送财政部。

第八条　国有独资企业拥有全资公司或者控股子公司、子企业的，应当由集团公司（母公司、总公司）以年度合并财务报表反映的归属于母公司所有者的净利润为基础申报。

企业计算应交利润的年度净利润，可以抵扣以前年度未弥补亏损。

第九条　国有独资企业上交年度净利润的比例，区别不同行业，分以下三类执行（企业分类名单详见附表5）：

（一）第一类10%；

（二）第二类5%；

（三）第三类暂缓3年上交或者免交。

第十条　国有控股、参股企业应付国有投资者的股利、股息，按照股东会或者股东

IRI-CRT-00000787

财政部 国资委关于印发《中央企业国有资本收益取管理暂行办法》的通知

大会决议通过的利润分配方案执行。

　　国有控股、参股企业应当依法分配年度净利润。当年不予分配的，应当说明暂不分配的理由和依据，并出具股东会或者股东大会的决议。

　　第十一条　中央企业上交国有资本收益区别以下情况核定：

　　（一）应交利润，根据经中国注册会计师审计的企业年度合并财务报表反映的归属于母公司所有者的净利润和规定的上交比例计算核定；

　　（二）国有股股利、股息，根据国有控股、参股企业关于利润分配的决议核定；

　　（三）国有产权转让收入，根据企业产权转让协议和资产评估报告等资料核定；

　　（四）企业清算收入，根据清算组或者管理人提交的企业清算报告核定；

　　（五）其他国有资本收益，根据有关经济行为的财务会计资料核定。

　　第十二条　中央企业根据国家政策进行重大调整，或者由于遭受重大自然灾害等不可抗力因素造成巨大损失，需要减免应交利润的，应当向财政部、国资委提出申请，财政部商国资委报国务院批准后，将减免的应交利润直接转增国家资本或者国有资本公积。

第三章　中央企业国有资本收益的上交

　　第十三条　中央企业国有资本收益上交，使用政府收支分类科目中"国有资本经营收入"款级科目。

　　第十四条　中央企业国有资本收益上交，按照以下程序执行：

　　（一）国资委在收到所监管企业上报的国有资本收益申报表及相关材料后15个工作日内提出审核意见，报送财政部复核，财政部在收到国资委审核意见后15个工作日内提出复核意见；

　　（二）国资委根据财政部同意的审核结果向所监管企业下达国有资本收益上交通知，财政部向财政部驻企业所在省（自治区、直辖市、计划单列市）财政监察专员办事处下达国有资本收益收取通知；财政部驻企业所在省（自治区、直辖市、计划单列市）财政监察专员办事处依据财政部下达的国有资本收益收取通知向企业开具"非税收入一般缴款书"；

　　（三）国资委所监管企业依据国资委下达的国有资本收益上交通知和财政部驻企业所在省（自治区、直辖市、计划单列市）财政监察专员办事处开具的"非税收入一般缴款书"办理国有资本收益交库手续；

　　（四）财政部在收到中国烟草总公司的国有资本收益申报表及相关材料后15个工作日内，完成审核工作并向财政部驻北京市财政监察专员办事处下达国有资本收益收取通知；中国烟草总公司凭财政部驻北京市财政监察专员办事处开具的"非税收入一般缴款书"办理国有资本收益交库手续。

　　第十五条　中央企业当年应交利润应当在申报日后5个月内交清，其中：应交利润在10亿元以下（含10亿元）的，须一次交清；应交利润在10亿元以上、50亿元以下（含50亿元）的，可分两次交清；应交利润在50亿元以上的，可分三次交清。

　　第十六条　对中央企业欠交国有资本收益的情况，财政部、国资委应当查明原因，采取措施予以催交。

IRI-CRT-00000788

财政部 国资委关于印发《中央企业国有资本收益收取管理暂行办法》的通知

## 第四章　附　　则

第十七条　本办法自发布之日起执行。

【E-mail推荐 _____ 发送】【纠错】 打印本页 关闭窗口

Copyright©2013 www.gov.cn
All Rights Reserved
版权所有：中国政府网

IRI-CRT-00000789

Exhibit 44



June 25, 2018

**Certification**

**Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English of the document with bates numbers range: IRI-CRT-00000853 - IRI-CRT-00000854.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

15 W. 37th Street 8th Floor
New York, NY 10018
212.581.8870
ParkIP.com

015

2-1

**Document of the Shaanxi Provincial Commission on the Restructuring of the Economic System**

Shaan Gai Fa [Ref: Shaanxi Reform Development] [1992] No. 34

**Official response concerning the approval to establish IRICO Display Devices Co., Ltd.**

Dear IRICO Display Devices Co., Ltd. Preparation Committee:

We have received the reported "Application to Establish IRICO Display Devices Co., Ltd." and related information. In accordance with the *Shaanxi Province Provisional Measures on Joint Stock Enterprises* promulgated by the Shaanxi Provincial People's Government and in the spirit of other related Central Government documents, and after research, the opinion of the official response of approval is as follows:

I. The establishment of IRICO Display Devices Co., Ltd. is approved. The said company is jointly established by four companies: IRICO Electronic Group Corporation. Shaanxi Province Electronic Industry Head Corporation, Industrial and Commercial Bank of China Shaanxi Province Trust Investment Company and China People's Construction Bank Shaanxi Province Trust Investment Company.

II. The company is a stock enterprise. Moreover, it is a joint-stock system reform pilot unit of Shaanxi Province. It must be established and organized in strict accordance with a standardized stock corporation.

2-1-1

 Scanned by CamScanner

CONFIDENTIAL                    IRI-CRT-00000853

016

III. The company will conduct autonomous business operations, is responsible for its own profits and losses, will develop under its own direction, will abide by its own binding operational mechanisms and is subject to the industrial supervision work carried out by the provincial office of the electronics industry.

IV. The company must increase its construction pace, conduct sound production operations and improve its economic profits. Furthermore, the company must protect and increase the value of State-owned assets, ensure the legal interests of the shareholders, and uphold the principles of the freewill of shareholding, the equality of share rights, same rights for the same shares, mutual sharing of interest and rights and joint responsibility of risk, etc.

V. The company is a newly established stock company composed mainly of public ownership. It complies with the requirements of nine commissions, offices and ministries such as the Provincial Economic Commission regarding the *Implementation rules of Shaanxi Province for nationalized enterprises within the local budget to realize new mechanisms to create new enterprises and construct new production lines*. As such, it will enjoy policies in relation to the realizing of new mechanisms to create new enterprises and construct new production lines.

Hereby approved,

Provincial Commission on the Restructuring
of the Economic System
June 2, 1992
[stamp: illegible]

Keywords: joint-stock system, company, official response of approval

Report copy to: Shaanxi Province People's Government
Cc: Shaanxi Province Planning Commission, Shaanxi Province Economic Commission, Shaanxi Province Financial Office, Shaanxi Province People's Bank, Shaanxi Province Bureau of Industry and Commerce, Shaanxi Province Administrative Bureau of State-owned Assets, Shaanxi Province Tax Bureau, Shaanxi Province Electronics Industry Office

2-1-2

 Scanned by CamScanner

015

2-1

# 陕西省体改委文件

陕改发〔1992〕34号

## 关于同意设立彩虹显示器件股份
## 有限公司的批复

彩虹显示器件股份有限公司筹备委员会：

报来关于"设立彩虹显示器件股份有限公司申请书"
及有关材料收悉。 根据陕西省人民政府关于《陕西省股
份制企业试行办法》及中央有关文件精神，经研究，现
批复意见如下：

一、同意设立彩虹显示器件股份有限公司。该公司
由彩虹电子集团公司、陕西省电子工业总公司、中国工
商银行陕西省信托投资公司、中国人民建设银行陕西省
信托投资公司四家联合发起。

二、公司属股份制企业，是我省股份制改革的试点
单位，应严格按照规范化股份有限公司的要求进行组建。

2-1-1

 由 扫描全能王 扫描创建

IRI-CRT-00000853

016

　　三、公司实行自主经营、自负盈亏、自我发展、自我约束的运行机制，其行业管理工作归口省电子工业厅。

　　四、公司要加快建设步伐，搞好生产经营，提高经济效益；要实现国有资产的保值增殖，保障股东的合法权益，坚持入股自愿、股权平等、同股同利、利益共享、风险共担的原则。

　　五、公司是以公有制为主的股份制新建企业，符合省经委等九委厅局关于《陕西省地方预算内国营工业新办企业和新建生产线实行新机制的实施细则》的要求，可享受新办企业和新建生产线实行新机制的有关政策。

　　　　特此批复



　　　　　省体改委

　　　一九九二年六月三日

**主题词：** 股份制　公司　批复

抄　报：　省人民政府
抄　送：　省计委、省经委、省财政厅、省人民银行、
　　　　　省工商局、省国有资产管理局、省税务局、
　　　　　省电子厅

2-1-2


由 扫描全能王 扫描创建

CONFIDENTIAL

IRI-CRT-00000854

Exhibit 45



June 25, 2018

**Certification**

                                **Park IP Translations**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English  of the document with bates number: IRI-CRT-00000865 - IRI-CRT-00000875.

Hanna Kang

Project Manager

Project Number: BBLLP_1806_007

15 W. 37th Street 8th Floor
New York, NY 10018
212.581.8870
ParkIP.com

-30

10

[stamp: Public document, receipt No. 095, April 6, 2001]

# Ministry of Personnel of the People's Republic of China
# Notice of Appointment and Dismissal

REN REN ZI [Ref.: personnel appointment] [2001] No. 14

**Notice concerning IRICO Group Corporation's resolution to no longer establish a Board of Directors and matters of appointment and dismissal of 9 individuals including MA Jinquan, etc.**

Dear IRICO Group Corporation:

After research, if IRICO Group Corporation resolves to no longer establish a Board of Directors, the positions of the Board of Directors are naturally removed. MA Jinquan is hereby appointed as IRICO Group Corporation's General Manager and TAO Kui, WU Yingzhong, XING Daoqin, GUO Mengquan and ZHANG Shaowen are appointed as Deputy General Managers. WU Weiren is hereby relieved of his duties as General Manager of IRICO Group Corporation and JI Qing and LI Manjun (female) are relieved of their duties as Deputy General Managers. Please handle formalities in accordance with the relevant regulations.

[stamp: Ministry of Personnel of the People's Republic of China]
March 28, 2001


Scanned by CamScanner

[stamp: IRICO Color Display Tube Main Factory, Confidentiality Office, receipt No. 1-22, July 20, 1998]

001

# State Council of the People's Republic of China

GUO REN ZI [Ref.: State personnel] [1998] No. 145

**Notice concerning the appointment and dismissal of WU Weiren and WANG Liguang**

Dear Ministry of Information Industry:

The State Council has resolved on June 29, 1998 to appoint WU Weiren as the Factory Manager of No. 4400 CRT Plant (IRICO Color Display Tube Main Factory) for a term of 4 years. At the same time, it relieves WANG Liguang of his duties as the Factory Manager of No. 4400 CRT Plant (IRICO Color Display Tube Main Factory).

[stamp: State Council of the People's Republic of China]
June 30, 1998

-1-

Scanned by CamScanner

CONFIDENTIAL

IRI-CRT-00000866

[stamp: IRICO Color Display Tube Main Factory, receipt No. 1-244]
Please take it back

570

Confidential

# State-owned Assets Supervision and Administration Commission of the State Council
# Notice of Appointment and Dismissal

GUO ZI REN ZI [Ref.: State assets personnel] [2005] No. 70

**Notice concerning the appointment and dismissal of 3 individuals including XING Daoqin, etc.**

Dear IRICO Group Corporation:

After research, XING Daoqin is hereby appointed General Manager of IRICO Group Corporation and FU Jiuquan is appointed as Chief Accountant of IRICO Group Corporation. MA Jinquan is relieved of his duties as General Manager of IRICO Group Corporation and is now retired.

[stamp: State-owned Assets Supervision and Administration Commission of the State Council]
June 23, 2005

-1-

 Scanned by CamScanner

011

# Document of IRICO Electronics Group Corporation

CAI TUAN REN [Ref.: IRICO Group Personnel] (1993) No. 194

**Resolution concerning adjustments to the leading personnel and organizational structure of the Main Command Department of the 64cm color tube technology modification project**

The 64cm color tube technology modification project is about to enter the installation phase. After research by the Group's leaders, it is hereby resolved:

To appoint colleague JI Qing as General Commander of the Project Main Command Department;

To appoint colleagues WANG Liguang, GU Chongsheng and LU Xianchang as Deputy Project Commanders.

The organizational structure and responsible personnel subsidiary to the 64cm color tube technology modification projectMain Command Department is as follows:

Main Command Department Office
Director: ZHANG Wei
Deputy Directors: YAO Xiangluan and FU Guodong
Main Project Equipment and Installation Command Department
Commander: LU Xianchang
Deputy Commander: XIE Mingli
Land Construction and Installation Project Command Department

 Scanned by CamScanner

053

# Document of IRICO Electronics Group Corporation

CAI TUAN REN JIAO [Ref.: IRICO Group Personnel Education] (1998) No. 084

Dear Board of Directors of IRICO Display Devices Co., Ltd.

      Whereas colleague WANG Liguang is no longer the Factory Manager (legal representative) of IRICO Color Display Tube Main Factory, the company has hereby resolved: that WANG Liguang no longer represents the company in the position of the Chairman of the Board of Directors of IRICO Display Devices Co., Ltd. At the same time, the company's legal representative, WU Weiren, is nominated as the Chairman of the Board of Directors of IRICO Display Devices Co., Ltd. Please confirm this nomination through the appropriate statutory procedure.

[stamp: IRICO Group Corporation]
November 13, 1998

Archive (2)

Printed by: WANG Zhaoxi      Checked by: MA Yonghong   Total of 10 copies printed


Scanned by CamScanner

CONFIDENTIAL      IRI-CRT-00000869

# Document of IRICO Electronics Group Corporation

CAI TUAN REN JIAO [Ref.: IRICO Group Personnel Education] (1998) No. 055

**Letter concerning the recommendation of colleague ZHANG Shaowen as a candidate for Supervisor of the Board of Supervisors of IRICO Display Devices Co., Ltd.**

Dear Board of Directors of IRICO Display Devices Co., Ltd.

      Given the changes to the work arrangements of colleague DI Weiping and after research of the situation, it has been resolved that DI Weiping will no longer serve as Supervisor of the company's Board of Supervisors and Chairman of the Board of Directors. The company intends to recommend colleague ZHANG Shaowen as a candidate for Supervisor on the company's Board of Supervisors and puts forward this motion for deliberation by the General Meeting of Shareholders.

[stamp: IRICO Group Corporation]
June 18, 1998

Archive (2)

Printed by: HE Dongxia     Checked by: SU Xiaohua     Total of 10 copies printed

 Scanned by CamScanner

CONFIDENTIAL     IRI-CRT-00000870

017

# Document of IRICO Electronics Group Corporation

CAI TUAN REN JIAO [Ref.: IRICO Group Personnel Education] (1998) No. 084

**Letter concerning changes to the Board of Directors and a new nominee for the Chairman of the Board**

Dear Board of Directors of IRICO Display Devices Co., Ltd.:

Due to changes in the company's personnel, it is hereby resolved:

To appoint WU Weiren, XUE Baoming and CHEN Dezhi as Directors on the company's Board of Directors. At the same time, WANG Liguang, HOU Ruijin and LI Weisheng will no longer represent the company in the capacity of Directors of the Board;

To nominate the company's legal representative, WU Weiren, as Chairman of the Board of Directors and at the same time, WANG Liguang will no longer represent the company as Chairman of the Board of Directors.

Please confirm through the appropriate statutory procedure.

[stamp: IRICO Group Corporation]
January 5, 1999

Archive (2)

Printed by: WANG Zhaoxi    Checked by: MA Yonghong    Total of 10 copies printed

Scanned by CamScanner

[stamp: IRICO Color Display Tube Main Factory, Confidentiality Office, receipt No. 1-22, July 20, 1998]

001

# State Council of the People's Republic of China

---

GUO REN ZI [Ref.: State personnel] [1998] No. 145

---

### Notice concerning the appointment and dismissal of WU Weiren and WANG Liguang

Dear Ministry of Information Industry:

      The State Council has resolved on June 29, 1998 to appoint WU Weiren as the Factory Manager of No. 4400 CRT Plant (IRICO Color Display Tube Main Factory) for a term of 4 years. At the same time, it relieves WANG Liguang of his duties as the Factory Manager of No. 4400 CRT Plant (IRICO Color Display Tube Main Factory).

[stamp: State Council of the People's Republic of China]
June 30, 1998

-1-


Scanned by CamScanner

CONFIDENTIAL                                                IRI-CRT-00000872

[stamp: illegible]

**Keywords: personnel, cadres, appointments and dismissals, notice**

---

Cc: Premier of the State Council, Vice Premier of the State Council, State Councilors, Secretary-General of the State Council and Vice Secretary-General of the State Council.

    Central Organization Department and Ministry of Personnel.

    CPC [Communist Party of China] Shaanxi Provincial Committee, Shaanxi Province People's Government and No. 4400 CRT Plant.

---

Secretary Bureau of the Office of the State Council           Issued on June 30, 1998

---

-2-

 Scanned by CamScanner

CONFIDENTIAL                                     IRI-CRT-00000873

[stamp: IRICO Color Display Tube Main Factory, Confidentiality Office, receipt No. 1-23, July 20, 1998]

002

[illegible]

# Ministry of Information Industry of the People's Republic of China
# Notice of Appointments and Dismissals

BU REN [Ref.: Department personnel] [1998] No. 3

### Notice concerning the appointment and dismissal of WU Weiren and WANG Liguang

Dear IRICO Group Corporation:

In accordance with the Notice from the State Council on June 29, 1998, reference: GUO REN ZI [Ref.: State personnel] [1998] No. 145, WU Weiren is appointed as the Factory Manager of No. 4400 CRT Plant (IRICO Color Display Tube Main Factory) for a term of 4 years. At the same time, WANG Liguang is relieved of his duties as the Factory Manager of No. 4400 CRT Plant (IRICO Color Display Tube Main Factory).

[stamp: Ministry of Information Industry of the People's Republic of China]
July 7, 1998

-1-

CONFIDENTIAL


Scanned by CamScanner

003

[stamp: illegible]

**Keywords: cadres, appointments and dismissals, notice**

Cc: CPC [Communist Party of China] Central Organization Department, State Personnel Department, CPC [Communist Party of China] Shaanxi Provincial Committee, Shaanxi Province Electronics Industry Bureau and other relevant bureaus of the original Ministry of Electronics.

-2-


Scanned by CamScanner

CONFIDENTIAL                                                    IRI-CRT-00000875

公文 收 0?5 号
200?年4月6日

# 中华人民共和国人事部
## 任 免 通 知

人任字〔2001〕14 号

### 关于彩虹集团公司不再设董事会及
### 马金泉等 9 人职务任免的通知

彩虹集团公司：

经研究，彩虹集团公司不再设董事会，董事会职务自然免除。任命马金泉为彩虹集团公司总经理，陶魁、武英忠、邢道钦、郭盟权、张少文为副总经理；免去吴维仁的彩虹集团公司总经理职务，吉庆、李曼俊（女）的副总经理职务。请按有关规定办理。

二○○ ? 年 ? 月 ? 日

 由 扫描全能王 扫描创建

CONFIDENTIAL                                                      IRI-CRT-00000865



001

# 中华人民共和国国务院

国人字〔1998〕145 号

## 关于吴维仁、王李广职务任免的通知

信息产业部：

　　国务院 1998 年 6 月 29 日决定，任命吴维仁为四四
〇〇厂（彩虹彩色显像管总厂）厂长，任期 4 年；免去王李广
的四四〇〇厂（彩虹彩色显像管总厂）厂长职务。



一九九八年六月三十日

— 1 —

 由 扫描全能王 扫描创建

CONFIDENTIAL　　　　　　　　　　　　　　　　　　IRI-CRT-00000866

秘密

# 国务院国有资产监督管理委员会
# 任 免 通 知

国资任字〔2005〕70 号

## 关于邢道钦等 3 人职务任免的通知

彩虹集团公司：

经研究,任命邢道钦为彩虹集团公司总经理,符九全为彩虹集团公司总会计师;免去马金泉的彩虹集团公司总经理职务,退休。



二○○五年六月二十三日

— 1 —

 由 扫描全能王 扫描创建

CONFIDENTIAL

IRI-CRT-00000867

011

# 彩虹电子集团公司文件

## 彩团人（1993）194号

### 关于调整64cm彩管技改工程总指挥部
### 领导成员及组织机构的决定

64cm彩管技改工程即将进入安装阶段，经集团公司领导研究决定：

吉　庆同志任工程总指挥部总指挥；

王李广、顾崇声、卢贤长同志任工程副总指挥。

64cm彩管技改工程总指挥部下设组织机构及负责人如下：

总指挥部办公室

主　任：张　伟

副主任：姚香滦、傅国栋

主工程设备安装指挥部

指　挥：卢贤长

副指挥：谢明礼

土建及建安工程指挥部

由 扫描全能王 扫描创建

CONFIDENTIAL

053

# 彩虹集团公司文件

彩团人教(1998)084 号

彩虹显示器件股份有限公司董事会:

　　由于王李广同志已不是彩虹彩色显像管总厂厂长（法定代表人），我公司决定：王李广不再代表我公司任彩虹显示器件股份有限公司董事长；同时推选我集团公司法定代表人吴维仁为彩虹显示器件股份有限公司董事长，请按法定程序确认。



一九九八年十二月十三日

档（2）

打印: 王昭希　　　　　校对: 马永鸿　　　　　份数: 10

 由 扫描全能王 扫描创建

CONFIDENTIAL                                                                                          IRI-CRT-00000869



彩虹集团公司文件

彩图人数 (1998) 055号

关于推荐张少文同志为彩虹显示器件
股份有限公司监事会监事候选人的函

彩虹显示器件股份有限公司董事会：

鉴于谭卫平同志工作变动，经研究谭卫平不再担任该公司监事及
监事会主席职务。我公司拟推荐张少文同志为该公司监事会监事候选
人，提请股东大会审议。

一九九八年六月

印制: 贺东霞          校对: 苏晓华          份数: 10

档 (2)

017

# 彩虹集团公司文件

彩团人教（1998）084 号

## 关于变更董事及重新推选董事长的函

彩虹彩色显示器件股份有限公司董事会：

因我公司人事变动，现决定：

委派吴维仁、薛宝明、陈德智出任彩虹显示器件股份有限公司董事会董事，王李广、侯瑞金、李卫生不再代表我公司担任董事职务；

推选我公司法定代表人吴维仁为彩虹显示器件股份有限公司董事长，王李广不再代表我公司任彩虹显示器件股份有限公司董事长。

请按法定程序确认。



一九九九年一月五日

档（2）

打印：王昭希　　　　校对：马永鸿　　　　份数：10

 由 扫描全能王 扫描创建

　　　　　　　　　　　　　　　　　　　IRI-CRT-00000871



001

# 中华人民共和国国务院

国人字〔1998〕145 号

## 关于吴维仁、王李广职务任免的通知

信息产业部：

　　国务院 1998 年 6 月 29 日决定，任命吴维仁为四四〇〇厂（彩虹彩色显像管总厂）厂长，任期 4 年；免去王李广的四四〇〇厂（彩虹彩色显像管总厂）厂长职务。



一九九八年六月三十日

— 1 —

 由 扫描全能王 扫描创建

CONFIDENTIAL                                                                IRI-CRT-00000872

主题词：人事　干部　任免　通知

抄送：国务院总理、副总理、国务委员，秘书长、副秘书长。
　　　中组部，人事部。
　　　中共陕西省委、陕西省人民政府，四四〇〇厂。

国务院办公厅秘书局　　　　　　　　1998 年 6 月 30 日印发

— 2 —

 由 扫描全能王 扫描创建

CONFIDENTIAL　　　　　　　　　　　　　　　　　　　　　　　　　　IRI-CRT-00000873



002

# 中华人民共和国信息产业部
# 任　免　通　知

部任〔1998〕3 号

## 关于吴维仁、王李广职务任免的通知

彩虹集团公司：

　　国务院一九九八年六月二十九日国人字〔1998〕145 号通知，吴维仁任四四00厂（彩虹彩色显像管总厂）厂长，任期四年；免去王李广的四四00厂（彩虹彩色显像管总厂）厂长职务。



一九九八年七月七日

— 1 —

 由 扫描全能工 扫描创建

CONFIDENTIAL

IRI-CRT-00000874

003

主题词：干部　任免　通知

抄　送：中共中央组织部、国家人事部；

中共陕西省委组织部、陕西省电子工业局；

原电子部有关司局。

— 2 —

 由 扫描全能王 扫描创建

CONFIDENTIAL

IRI-CRT-00000875