[ALL COUNSEL LISTED ON SIGNATURE PAGES]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 3:07-cv-5944-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Hearing Date: April 9, 2019<br>Time:           10:00 a.m.<br>Courtroom:   9, 19th Floor<br>Judge:         Hon. Jon S. Tigar |

1

**TABLE OF CONTENTS**

2

<u>Statements</u>

3
<u>Page</u>

Statement of Indirect Purchaser Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

Statement of Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5

Statement of Objectors Dan L. Williams & Co., Rockhurst University,
        Harry Garavanian, and Gary Talewsky . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

6

7

Statement of Gianasca Appellants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

8

Statement of Non-Repealer State Class Member Eleanor Lewis . . . . . . . . . . . . . . . . . . . . 32

9

Statement of Class Members and Proposed Intervenors, Douglas King
        and George Feldman . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

10

11

Statement of Financial Recovery Services, Inc. d/b/a
        Financial Recovery Strategies ("FRS") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

On February 15, 2019, this Court ordered a Status Conference to be held on April 8, 2019 (since rescheduled to April 9, 2019), and directed the parties to file a joint case management conference statement addressing how the Court should deal with the following issues:

> 1.    Reconsideration of the Court's order granting final settlement approval at ECF No. 4712, and in particular, that settlement's failure to provide any recovery to plaintiffs in Massachusetts, Missouri, and New Hampshire (the "Omitted Repealer States");
>
> 2.    The adequacy of Lead Counsel's representation of plaintiffs in the Omitted Repealer States under Federal Rule of Civil Procedure 23(a)(4);
>
> 3.    The attorneys' fees awarded to Lead Counsel in the Court's order at ECF No. 5122; and,
>
> 4.    ". . . [A]ny other matters the parties would like to discuss . . . ."

ECF No. 5386, pp. 1-2; ECF No. 5402 (moving hearing to 4/9/19).

**THE VARIOUS PARTIES' SEPARATE STATEMENTS**

**Indirect Purchaser Plaintiffs' Statement**

I.    **Background**

A.    **The Settlements with Defendants.**

Early on in the litigation, IPPs settled with the Chunghwa and LG defendants, which settlements were finally approved.  ECF No. 4712 ("Final Approval Order") at 2.[1]  In the fall of 2014/early 2015, within weeks of the scheduled March 8, 2015 trial, Lead Counsel negotiated settlements with the six remaining defendant groups, who agreed to pay a total of $541,750,000. When combined with the $35 million obtained in the two previous settlements, Lead Counsel recovered $576,750,000, one of the largest recoveries ever on behalf of indirect purchasers. ECF

---

[1] All page citations are to the ECF page number at the top of the page.

No. 4351 ("R&R") at 32.  The IPP settlement recoveries are also about three times larger than the total settlement amounts negotiated by the Direct Purchaser Plaintiffs ("DPPs") in this MDL. ECF No. 4071-1 (¶ 100).

Lead counsel reached these settlements only after thorough investigation of the facts and extensive preparation for trial.  Lead Counsel led a talented and experienced team of lawyers through (1) several rounds of motions to dismiss by nine separate defendant groups comprised of more than 50 individual entities; (2) a massive discovery program including two years of extensive negotiations regarding defendants' document productions, multiple motions to compel, the review and coding of millions of documents and data sets by defendants and third parties, more than 250 depositions (most of which were conducted in a foreign language), and extensive expert discovery involving multiple experts and expert reports; (3) the certification of 22 statewide classes of indirect purchasers of CRTs (the "22 Certified Classes"); (4) thirty-six summary judgment motions; and (5) preparations for trial including analyzing and culling the best evidence, exchanging expert reports, exhibit lists, deposition designations, jury instructions, Pretrial Statements, special verdict forms, briefing 64 motions *in limine,* and conducting multiple mock trials.  *See generally,* ECF Nos. 4071-1; 4853-1 (¶¶ 40, 44, 46, 48, 49, 53-56); R&R at 33, 67-70.

In preparation for trial, Lead Counsel associated with several of the most experienced antitrust trial lawyers in the country, and some of the few firms to have recently tried an antitrust class action to verdict in federal court.[2]  Along with Lead Counsel's core team of IPP lawyers who worked on this case throughout, these experienced trial lawyers were involved in determining whether and for how much to settle with the Defendants prior to trial, and have continued to work and/or consult on this case throughout the pendency of the appeals.

---

[2] *See* ECF No. 4373-1 (¶¶ 22-23) (Mr. Goldberg of Freedman Boyd was lead trial counsel and Fine Kaplan & Black was co-lead counsel in *In re Urethane Antitrust Litig.,* No. 04-md-1616-JWL-JPO, MDL No. 1616 (D. Kan.), which was tried before the Hon. John W. Lungstrum in the District of Kansas in 2013.  The four week trial resulted in a judgment of over $1 billion, which is believed to be the largest price-fixing verdict ever.).

Lead Counsel negotiated lump sum, cash settlements with each settling defendant in exchange for a release of all claims alleged in the operative complaint, including an injunctive relief claim alleged on behalf of a nationwide class.  *See* ECF No. 1526 ¶¶ 243-292 (Fourth Consolidated Amended Complaint ("Fourth CAC")).  The damages claims of CRT purchasers in all the states (including Massachusetts, Missouri and New Hampshire (the "Three States")) were released under the broad release language typical of class action settlement agreements.  *See, e.g.*, ECF No. 3862-1, Ex. A, (Philips Settlement Agreement) ¶ 13.[3]

The settlement agreements are silent as to which members of the settlement class are eligible to file claims, and specifically provide that IPPs, not defendants, will determine the plan of allocation, subject to Court approval.[4]  The determination of how the settlement funds would be allocated occurred several months after execution of the settlement agreements when Lead Counsel devised the plan of allocation.[5]  Based on his informed and good faith understanding of the law, Lead Counsel determined that only those class members with viable damages claims asserted in the litigation, *i.e.* the claims of the 22 Certified Classes, should receive monetary compensation because—as the Special Master and this Court later agreed—neither the injunctive relief claim, nor the damages claims of the remaining class members, were viable.[6]

---

[3] Courts routinely permit the release of all actual and potential claims as part of a settlement class. *See, e.g., Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1287 (9th Cir. 1992) ("a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented *and might not have been presentable in the class action*'") (citation omitted) (emphasis in original).

[4] *See, e.g.,* ECF No. 3862-1, Ex. A (Philips Settlement Agreement) ¶ 21 ("[T]he Settlement Fund shall be distributed in accordance with a plan to be submitted at the appropriate time by Plaintiffs, subject to approval by the Court. In no event shall any Philips Releasee have any responsibility . . . whatsoever with respect to the . . . distribution . . . of the settlement fund.").

[5] Lead Counsel presented the plan of allocation in the motion for preliminary approval of the settlements, filed May 29, 2015 (ECF No. 3861).  The settlements were executed from January 2015 through April 2015. *See* ECF Nos. 3862-1-3862-5.

[6] *See* Final Approval Order at 24-25 (concluding that the statutes of limitations had expired on the claims of class members in the Three States); R&R at 47-49 (same).  Numerous courts have held that meritless claims can be released without compensation.  *See, e.g., In re Mego Fin. Corp. Secs. Litig.,* 213 F.3d 454 (9th Cir. 2000) (approving plan of distribution that provided no recovery to meritless claims); *Nguyen v. Radient Pharm. Corp.,* No. SACV 11-00406, 2014 WL 1802293,

**B.      The Objections to Settlement Approval.**

There are three groups of objectors before the Court: (1) Anthony Gianasca, Gloria Comeaux, Mina Ashkannejhad individually and/or as Administrator of the Estate of the Late R. Deryl Edwards, Jr., Jeffrey Speaect, Rosemary Ciccone, and Jeff Craig, represented by Robert Bonsignore; (2) Rockhurst University, Gary Talewsky, and Harry Garavanian, represented by Theresa Moore, Polly Estes (who appeared as counsel on appeal) and Christopher A. Nedeau (who recently filed a Notice of Appearance, ECF No. 5387); and (3) Dan L. Williams & Co. ("Williams"), represented by Brian Torres of Brian M. Torres, PA, John Crabtree of Crabtree & Auslander, and Francis Scarpulla of the Law Offices of Francis O. Scarpulla.[7]

Objectors raised a litany of objections to the settlements and requested attorneys' fees. Special Master Quinn and then this Court rejected those objections.[8]   The objection that the settlements failed to provide compensation to class members in the Three States was one of many objections before this Court[9] and the arguments evolved on appeal.  For example, no objector argued before Special Master Quinn that the claims of the Three States—if alleged—would relate

---

at *8 (C.D. Cal. May 6, 2014) ("The Objector is correct that proving in-and-out claims is not impossible, but there is no evidence that the in-and-out traders in this case could have done so.  On this basis, the plan of allocation reasonably does not include values for in-and-out shares.  The plan of allocation reasonably and fairly represents injuries and claims on the merits.").

[7] Each of the three objector groups is represented by attorneys who were among counsel of record in this case from its inception: Mr. Bonsignore, Ms. Moore and Mr. Scarpulla.

[8] *See, e.g.*, R&R at 46-47 (finding that "Lead Counsel had no duty to assert frivolous, hypothetical claims foreclosed by existing law," and that "while Objectors' arguments provide fascinating speculation for a law review article, they do not realistically inform the very practical decision in a class action which claims have merit.").  In fact, Special Master Quinn found that Scarpulla: (i) raised objections (many of which were also raised by Moore and Bonsignore) that were "gratuitous," "unmeritorious" and "potentially damaging to the Class" (ECF No. 4976 at 13-14); (ii) publically asserted "procedural and speculative objections" which was "inexplicable" (*id.*); (iii) could have expressed his concerns about the case early on at the time of preliminary settlement approval—"not at the last moment when they merely stoked the fires of professional objectors" (*id.* at 14); (iv) had a "running antagonism" with Lead Counsel (*id.*); and (v) failed repeatedly to provide legal support for his arguments (*id.* at 14-15).  The Court upheld these findings.

[9] *See, e.g.*, ECF Nos. 4116 (Scarpulla Objection making no reference to the Three States); 4115 at 1 (Scarpulla Objection only mentioning the Three States in a footnote and focusing primarily on notice and attorneys' fees); 4119 at 4 (Bonsignore Objection only mentioning the Three States in a footnote and likewise focusing on notice and fees); 4112 at 11-12 (Williams' Objection objecting to the release of Missouri claims in two short paragraphs, and focusing primarily on attorneys' fees and notice).

back to the filing of earlier complaints, or were tolled under *American Pipe & Const. Co. v. Utah,* 414 U.S. 538 (1974). Rather, the objections focused on whether Lead Counsel had failed to include viable representatives for the Three States.[10] Similarly, before this Court, Bonsignore and Moore raised their relation back and tolling arguments only in passing in their objections to the Report & Recommendation.[11]

Following the Ninth Circuit panel's comments at oral argument encouraging mediation, and objector counsel's statement that objectors merely wanted "to be able to participate equally in the $577 allocation,"[12] Lead Counsel requested that the panel refer the matter to mediation. The panel did so on April 30, 2018. Thereafter, the parties engaged in months of extended negotiations with objectors and defendants before Special Master Hon. Vaughn R. Walker (Ret.).

On October 1, 2018, after it became clear that those negotiations were unsuccessful, Lead Counsel filed the Rule 62.1 Motion in this Court, ECF No. 5335. That motion—which was based on the approaches adopted by courts in similar cases[13]—proposed to (1) amend the plan of distribution to allow class members from the Three States to file claims and receive the same level of compensation as existing claimants, and (2) reduce IPP Class Counsel's fee award by $6 million to supplement the net settlement fund and ensure that any dilution of existing claims was *de minimis*.[14] This Court denied the Motion by Order dated November 8, 2018 (ECF No. 5362).

---

[10] *See, e.g.,* ECF No. 4144 (Bonsignore Supplemental Objection); ECF Nos. 4370 at 36-38 (IPPs' Motion for Final Approval responding to objections regarding the Three States); R&R at 47-49 (concluding that Lead Counsel did not fail to include viable representatives).

[11] *See* ECF Nos. 4440 at 13 (Bonsignore Objection to R&R arguing in a single sentence, "[a]ny addition of state law claims would have related back to the filing of the class complaint."); 4436 at 13 (Moore Objection to R&R asserting vaguely that the statutes of limitations were tolled under *American Pipe*, but failing to explain how the doctrine applied to the claims of the Three States).

[12] ECF No. 5335-1, Ex. A (April 10, 2018 Hearing Tr., at 63:20 – 64:18).

[13] *See, e.g., id.* at 30-31 (discussing *In Re New Motor Vehicles Canadian Export Antitrust Litig.,* 800 F.Supp.2d 328 (D. Me. 2011) and *In re BankAmerica Corp. Sec. Litig.,* 227 F. Supp. 2d 1103 (E.D. Mo. 2002). In both cases, the courts rejected the proposed plans of distribution because certain class members would have received no recovery, and ordered class counsel to provide the excluded class members with an opportunity to file claims against the existing settlement funds).

[14] The proposed $6 million amount was based on an unrebutted estimate by IPPs' expert economist, Jonathan Schwartz. *See* ECF No. 5335-2. Schwartz calculated the number of claims expected to be filed by eligible class members from the Three States, extrapolating from the claims filed by claimants for the 22 states.

After further unsuccessful negotiations, Lead Counsel filed a motion in the Ninth Circuit to remand to this Court with instructions to allow class members who purchased in the Three States to (a) file claims against the settlement fund (subject to a showing that they have valid indirect purchaser claims); or (b) opt out of the Settlement Class.[15]   The motion further proposed that separate counsel be appointed for the Three States; that this Court consider reducing Class Counsel's fees in whatever amount it deemed appropriate; and that it award reasonable fees and incentive awards to objectors and their counsel. *Id.*

On February 13, 2019, the Ninth Circuit remanded the case so that this Court could reconsider its approval of the settlements in light of its order recognizing that the settlements should have provided a recovery to class members in the Three States.[16]

**C.     IPP Class Counsel Continues To Vigorously Prosecute This Case.**

Since the appeals were filed in August 2016, Lead Counsel—together with a core team of IPP law firms—has continued to vigorously prosecute this case and defend the settlements.   In addition, in early 2017, Lead Counsel initiated proceedings against Mitsubishi Electric Corporation ("Mitsubishi Electric"), and filed suit on July 20, 2017.  *See Luscher v. Mitsubishi Electric Corp.,* No. 17-cv-4067 (*"Luscher"*), ECF No. 1.   The status of *Luscher* is discussed separately below.

Lead Counsel is also currently leading a team of IPP attorneys in prosecuting IPP claims against Irico Group Corp. and Irico Display Devices Co., Ltd. (together "Irico") in collaboration with the DPPs, and defending against Irico's motions to dismiss based on the Foreign Sovereign Immunities Act ("FSIA").  *See* ECF Nos. 5391, 5392.

//

---

[15] *See* Motion Requesting Remand with Instructions Re: (1) the Plan of Distribution for the Settlements; and (2) the Fee Order, ECF No. 230, *IPPs et al. v. Toshiba Corp. et. al.*, No. 16-16368 (9th Cir. Jan. 9, 2019) ("Motion to Remand").

[16] *See* Order, ECF No. 239, *IPPs et al. v. Toshiba Corp. et al.,* No. 16-16368 (9th Cir., Feb. 13, 2019).

**II.     Reconsideration of the Court's Order Granting Final Settlement Approval**

Based on their extensive experience in this litigation, IPP Class Counsel continue to believe that the settlements at issue—providing non-reversionary cash payments of $541,750,000—constitute an excellent result for the class following this long and arduous litigation.  Together with the two settlements already finally approved and the pending $33 million settlement with defendant Mitsubishi Electric, the total recovery for the class to date is $609,750,000.   This amount puts these combined settlements in the top tier of settlements for indirect purchaser cases.  In addition, there is the ongoing litigation against the Irico defendants, which could result in further recovery for the class.

Since both the Ninth Circuit panel and this Court have expressed concerns that the Three States' damages claims were not included in the plan of allocation, and since IPP Class Counsel have proposed remedying this by reducing the aggregate fee award and allowing class members from the Three States to file claims, Lead Counsel believes that appointment of separate counsel for the Three States would be an appropriate first step.

Determining the next steps will need to be done in consultation with the Court-appointed separate counsel for the Three States, but IPP Class Counsel believes that there are three possible pathways that would address the concerns of this Court and the Ninth Circuit while also preserving these valuable settlements for the benefit of the class.  As further described below, these pathways center on: (1) permitting CRT purchasers from the Three States to file claims; (2) defendants relinquishing the releases of damages claims for the Three States; or (3) a combination of the two.

**A.     CRT Purchasers From The Three States Are Given The Option To Either Opt Out And Pursue Their Own Claims, Or To File Claims.**

This first pathway is a combination of the second and third pathways.  It involves:  (i) a relinquishment of the damages releases by defendants, at least for CRT purchasers in the Three States who choose to opt out;[17] and (ii) a revision of the plan of distribution to allow CRT

---

[17] The defendants previously agreed to allow class members in the Three States another opportunity to opt out of the settlements. *See* No. 16-16368, ECF No. 231 at 4 ("Any class member from the Three States who timely exercises the right to opt out will not be constrained by

purchasers in the Three States to participate in distributions from the net settlement fund (subject

to a showing that, aside from the statute of limitations, they have valid indirect purchaser claims).

IPP Class Counsel believe that either allowing CRT purchasers from the Three States to file claims or defendants relinquishing the releases for the Three States (further described below) satisfactorily addresses the issues raised by the Ninth Circuit panel and this Court.  We believe, however, that combining the two may create a better solution—providing the CRT purchasers in the Three States the option of either excluding themselves and pursuing their own remedies or, alternatively, participating in the distribution from the net settlement fund, in which event, the releases would apply to them.  This pathway requires both negotiation with defendants regarding relinquishment of the releases, alteration to the plan of distribution, and new approval.

This pathway would also involve, among other things, (1) consideration of the laws of the Three States regarding indirect purchaser standing and a determination of eligible claimants; (2) a determination of the value of the damages claims of class members from the Three States; and (3) consideration of an appropriate reduction in IPP Class Counsel's fee award.

IPP Class Counsel believe that this pathway would be greatly facilitated by the assistance of a special master.  IPP Class Counsel suggest Magistrate Judge Corley, who is familiar with these proceedings, as a potential special master.  IPP Class Counsel are prepared to participate immediately in negotiating and/or litigating adjustments to the plan of distribution and believe this process should not take an extended period of time.  The interests of the purchasers in the Three States would be represented by counsel separate from IPP Class Counsel.

**B.    CRT Purchasers From The Three States Are Given An Opportunity To File Claims.**

Under the second pathway, Class members who purchased CRT products in the Three States would be given an opportunity to file claims against the settlement fund (subject to showing that, aside from the statute of limitations, they have valid indirect purchaser claims).  This pathway

---

the class's release and may seek to pursue an individual action against the Defendants Appellees.").

would require an alteration of the plan of distribution but does not require an alteration of the settlement agreements.

As with the first pathway, this pathway would require consideration of indirect purchaser standing under the laws of the Three States, valuation of the claims, consideration of an appropriate reduction in fees, additional notice, further approval proceedings, and the appointment of separate counsel.  If this approach were adopted, the assistance of a Magistrate Judge Corley, or another experienced special master, would be invaluable.

### C.  Defendants Waive the Release of Damages Claims.

The third pathway is for defendants to relinquish the release of damages claims for the Three States.  Relinquishment of the releases will mean CRT purchasers in those states will no longer be bound by the settlements and may pursue whatever remedies they may have.  Because only purchasers from the Three States have objected to the settlements and appealed settlement approval, IPP Class Counsel believe that defendants' relinquishment of the release of damages claims for CRT purchasers in the Three States would satisfy the problems identified by this Court and the Ninth Circuit panel.  Nevertheless, IPP Class Counsel suggest that the optimum solution would be for the defendants to relinquish the release of damages claims for CRT purchasers in *all* states other than the 22 Certified Classes.

Assuming defendants were to agree, accomplishing this would require amendments to the existing settlements in order to carve out the Three States, and further approval proceedings before this Court.[18]  IPP Class Counsel are prepared to immediately enter into further negotiations with defendants to achieve a relinquishment of the release of damages claims and believe these negotiations should not take an extended period of time.[19]

---

[18] IPP Class Counsel believe these approval proceedings would be straightforward assuming the only change is a narrowing of the releases and the net settlement fund remains unchanged.  In a recent case before the Ninth Circuit, *Belew v. Brink's, Inc.,* 721 F. App'x 734 (9th Cir. 2018), the defendant relinquished the releases for certain claims in response to comments by the panel at oral argument.  The court instructed the district court to sever those claims from the settlement on remand and otherwise affirmed the district court's approval of the settlement.  *Id*. at 735.

[19] If this Court agrees that this pathway is an appropriate means of resolving this matter, it can condition final approval of the settlements upon Defendants' relinquishment of the releases.  *See* 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**III.    The Adequacy of Lead Counsel's Representation of Plaintiffs in the Three States Under Federal Rule of Civil Procedure 23(a)(4)**

As described above, IPP Class Counsel believes there was no conflict of interest—and hence no inadequate representation—arising from the negotiation or the terms of the settlement agreements.  The issue here is adequacy of allocation, not adequacy of representation.[20]  As explained, the determination on allocation occurred months after the settlements were executed and was based on Lead Counsel's good-faith and informed understanding of the law.

In any event, the three pathways proposed by IPP Class Counsel to resolve this matter, together with assigning separate counsel to represent the interests of purchasers in the Three States, addresses any question of adequate representation:

- Under the first pathway, class members from the Three States would be represented by separate counsel, would be able to file a claim and receive compensation for the release of their claims, and would be permitted to opt-out if desired;

- Under the second pathway, class members from the Three States would be represented by separate counsel and would be able to file a claim and receive compensation for the release of their claims; and

- Under the third pathway, defendants would relinquish the releases of the damages claims of class members from the Three States and carve them out of the Settlement Class. These CRT purchasers would no longer be bound by the settlements and would be free to bring whatever claims they have against defendants.

The three pathways thus address the concerns of the Ninth Circuit and this Court relating to adequacy of representation.  This Court need not reverse the settlements to correct a Rule 23(a)(4) problem.

---

William B. Rubenstein, Newberg on Class Actions § 13:46 (5th ed. 2014) ("even final approval can be [] conditioned" upon "changes the court makes to the settlement agreement").

[20] *See, e.g., In re Pet Food Prods. Liab. Litig.,* 629 F.3d 333, 346-48 (3d Cir. 2010) (rejecting plan of allocation as to one class segment, but also rejecting adequacy of representation arguments because such issues are "more appropriately addressed as a Rule 23(e) adequacy of allocation question, rather than [an] adequacy of representation question").

**IV.    The Attorneys' Fees Awarded to Lead Counsel**

IPP Class Counsel have proposed to reduce the aggregate fee award to supplement the fund for the benefit of class members in the Three States and pay objectors' counsel's reasonable fees.

**V.    *Luscher v. Mitsubishi Electric* Settlement**

The IPPs and Mitsubishi Electric submit this status report regarding *Luscher*.

Separate and distinct from the other indirect purchaser settlements, Mitsubishi Electric and the IPPs have settled *Luscher v. Mitsubishi Electric*, No. 17-CV-4067, a case filed on July 20, 2017, on behalf of a class of indirect purchaser plaintiffs against Mitsubishi Electric.  Approval of that settlement remains pending.

In *Luscher*, the IPPs sued Mitsubishi Electric.  There are no other defendants in the *Luscher* case.  The case was filed after the settlements between the IPPs and the other defendants had been approved by this Court and were on appeal before the Ninth Circuit ("the Prior IPP Settlements").  In *Luscher*, the IPPs alleged violations of state antitrust and consumer protection statutes concerning the sale of CRTs.  With the assistance of Magistrate Judge Corley, the IPPs and Mitsubishi Electric settled the *Luscher* case ("the Mitsubishi Electric IPP Settlement").

Mindful of the issues raised before this Court and on appeal in the Prior IPP Settlements, Mitsubishi Electric and the IPPs reached a very different settlement than the Prior IPP Settlements.  First, the proposed settlement class in the Mitsubishi Electric IPP Settlement is not a nationwide class.  Instead, Mitsubishi Electric and the IPPs agreed to a settlement class that includes residents of 30 states and the District of Columbia.  Second, in the Mitsubishi Electric IPP Settlement, the class members who will release claims and the class members eligible to receive benefits under the settlement are the same.  The residents of all 31 jurisdictions whose claims are being released in the Mitsubishi Electric IPP settlement are eligible to file claims under the settlement.  There are no jurisdictions in which claims are being released, but class members are not eligible to claim benefits.  Third, the so-called "omitted repealer states" of Massachusetts, Missouri, and New Hampshire are included in the Mitsubishi Electric IPP Settlement.  Fourth, the non-repealer states not included in the Mitsubishi Electric IPP Settlement have no complaint that their claims are

being released without compensation. The settlement release does not affect their claims in any regard.

The IPPs moved for preliminary approval of the Mitsubishi Electric IPP Settlement in the *Luscher* case on February 14, 2018. ECF 5245. No one objected to the terms of the Mitsubishi Electric IPP Settlement in response to that motion. The only entity that filed anything was Financial Recovery Strategies ("FRS"), a claims-filing service. FRS filed a statement regarding the Mitsubishi Electric IPP Settlement in which FRS complained that certain of its claims in the Prior IPP Settlements were not being approved for payment because they were filed after the filing deadline. *See* ECF No. 5252. FRS did not raise any issues concerning the Mitsubishi Electric IPP Settlement itself.

The motion for preliminary approval was held in abeyance as the Ninth Circuit appeal of the Prior IPP Settlements progressed; the motion was later administratively terminated by the Court without prejudice. *Luscher*, 17-CV-04067-JST, Order, ECF 14 (N.D. Cal., Aug. 28, 2018). The parties to the Mitsubishi Electric IPP Settlement refrained from advancing the motion pending any guidance from the Ninth Circuit regarding the Prior IPP Settlements.

Mitsubishi Electric and the IPPs intend to renew their motion for preliminary approval of their settlement on a schedule acceptable to the Court.

### Defendants' Statement

The record before the Court and the Ninth Circuit establishes that the challenges to final approval of the settlements relate to: (i) Lead Counsel's distribution plan as to class members from Massachusetts, Missouri, and New Hampshire (the "Omitted Repealer States"); (ii) whether Lead Counsel adequately represented class members from the Omitted Repealer States with respect to the distribution plan; and (iii) the award of attorneys' fees to IPP counsel. (Dkt. 5386 Feb.15, 2019 Order). Critically, they do not relate to the fairness, reasonableness, or adequacy of the settlement agreements or the nearly $577 million in settlement funds (the "Fund"). Defendants therefore respectfully submit that the Court resolve the issues before it by making straightforward adjustments to the distribution plan and Lead Counsel's fee award and, if necessary, by appointing

separate counsel for class members from the Omitted Repealer States.  Defendants specifically propose that the Court:

1. Amend that portion of the Final Approval Order (Dkt. 4712) relating to the plan of distribution to allow class members from the Omitted Repealer States to: (a) file claims against the settlement fund; or (b) opt out of the settlement classes, enabling those class members to pursue individual cases against Defendants;

2. Amend the Order on Attorneys' Fees (Dkt. 4740) to reduce the fee award by the amount the Court determines is necessary to compensate class members from the Omitted Repealer States at the same pro rata rate as class members from the twenty-two (22) non-Omitted Repealer States;

3. Award reasonable attorneys' fees to counsel for the Objectors and incentive awards to Objectors, to be paid from Lead Counsel's fee award;[21] and

4. If necessary, appoint separate counsel for class members from the Omitted Repealer States to represent them with respect to notice and the plan of distribution.

Defendants' proposal is a fair, reasonable, and practical solution.  The proposal directly addresses the concerns the Court identified in its November 8, 2018 and February 15, 2019 Orders and the reasoning underlying the Ninth Circuit's February 13, 2019 remand order. (Dkts. 5362, 5386; Appellate Dkt. 238).  Defendants' proposal will also preserve the settlement agreements, the nearly $577 million in settlement funds, and avoid sending IPPs' twelve-year-old claims back into protracted litigation before this Court.

In the alternative, Defendants join in IPPs' recommendation that the Court appoint a special master to promptly engage with the parties to resolve the issues before the Court. Defendants propose that the scope of the special master's authority be limited to those issues identified in the remand order and the Court's February 15, 2019 Order: (i) the creation of a distribution plan that includes class members from the Omitted Repealer States; (ii) a determination of whether Lead Counsel can adequately represent class members from the Omitted Repealer States and, if he cannot, the appointment of separate counsel to represent plaintiffs in the

---

[21] Defendants use the term "Objectors" to refer to all objectors before the Court, including the Gianasca Appellants.

Omitted Repealer States as to notice and an amended plan of distribution; and (iii) an appropriate

allocation of attorneys' fees. (Dkt. 5386 Feb.15, 2019 Order).

I.    **Background**

A.    **Defendants Paid Nearly $577 Million Into the Settlement Fund In Exchange for *Class-wide* Releases of *All* IPP Class Claims**

Pursuant to Defendants' respective settlement agreements, Defendants collectively paid

nearly $577 million in unallocated, lump-sum settlement payments into the Fund in exchange for

standard, nationwide, class-wide releases providing each settling Defendant with "complete

peace."  What this meant in practical terms was that, upon final approval, each settling Defendant

would no longer face the uncertainty, disruption, or substantial expense associated with continuing

to litigate CRT IPP class claims anywhere in the U.S.  Such releases are widely recognized as

appropriate and necessary in class-action settlements. *See Class Plaintiffs v. Seattle*, 955 F.2d

1268, 1287 (9th Cir. 1992) ("[A] federal court may release not only those claims alleged in the

complaint, but also a claim 'based on the identical factual predicate as that underlying the claims

in the settled class action even though the claim was not presented *and might not have been

presentable in the class action*.'") (internal citation omitted).  Through these settlements, IPP class

members similarly avoided substantial risks inherent in litigation and were guaranteed well over a

half a billion dollars in settlement proceeds.  The broad releases are material terms of each

settlement agreement and were obtained in exchange for valuable consideration.

B.    **Defendants Had No Rights or Responsibilities Over the Plan of Allocation**

According to the express terms of the settlement agreements, Defendants had no authority

over or involvement in the creation or implementation of the method of allocating settlement funds

among the various IPP class members.[22]  The distribution plan is and always has been the sole

responsibility of IPP counsel, subject to Court approval.  Defendants have thus consistently and

---

[22] *See, e.g.*, Dkt. 3862-1, Ex. A, ¶ 21 (Settlement agreement: "[T]he Settlement Fund shall be distributed in accordance with a plan to be submitted at the appropriate time by the Plaintiffs, subject to approval by the Court.  In no event shall any Philips releasee have any responsibility…whatsoever with respect to the…distribution…of the settlement fund.").

appropriately disclaimed any authority, obligation, or responsibility for the distribution plan. Given that the issues that allegedly preclude final approval of the settlements are attributable solely to the distribution plan, Defendants respectfully submit that the best and most effective means to resolve these issues is to simply modify that plan. Defendants further submit that costs associated with modifying the distribution plan, including compensating class members from the Omitted Repealer States, should be satisfied out of IPP counsel fees, a concept IPP Lead Counsel has proposed to both this Court and the Ninth Circuit.[23]

## II.   Defendants' Proposal Fully Addresses the Issues of Concern Identified in the Ninth Circuit's Remand Order and This Court's Recent Orders

The decision of the Ninth Circuit remanding the case to the Court is clear—the issues of concern to the appellate court related *exclusively* to issues of allocation, adequacy of representation, and fees. (Appellate Dkt. 238). The appellate court's remand order did not discuss the terms of the settlement agreements themselves or the adequacy of the nearly $577 million in settlement funds. The remand order provides:

> "The district court recognized that it should have provided recovery to class members in the Omitted Repealer States…which necessarily affects the remaining issues on appeal: 1) the adequacy of representation under Federal Rules of Civil Procedure 23(a)(4); and 2) the attorneys' fees awarded to Lead Counsel."

(*Id.* at 10-11) (emphasis added).

This Court's Orders are in accord with the appellate court's exclusive focus on issues of allocation, adequacy of representation, and fees.[24] (Dkt. 5362) ("the Court erred in approving the

---

[23] *See* Appellate Dkt. 230-1 at 2 (IPPs proposing "amending the Order on Attorneys' Fees, Expenses, and Incentive Awards Re: Indirect Purchaser Plaintiffs Settlements…to reduce the fee award by whatever amount the district court deems reasonable to increase the settlement fund for the benefit of class members from the Three States….."); *cf.* Dkt. 5335 at 1, 12-13 (Rule 62.1 motion seeking $6 million reduction in fee award to permit class members from Omitted Repealer States to receive a "pro rata distribution" from the Fund).

[24] In their portion of this submission, Objectors attempt to mischaracterize the Ninth Circuit's remand order by asserting that the appellate court denied the substance of the IPPs' Motion for Remand. *See infra* ("In that same order, the Ninth Circuit denied a motion that…IPPs…had recently filed in which they asked the Court of Appeals to remand with instructions regarding the plan of distribution for the settlements and award of fees to IPPs' Class Counsel."). Although the Ninth Circuit denied the IPPs' motion as a procedural matter, in doing so, the appellate Court did not comment on or address the substance of the IPPs' proposal in any way; indeed, the Circuit

15

provision that required class members in [the Omitted Repealer States] to release their claims without compensation" and evaluating issues of adequacy of counsel, the ability of Omitted Repealer State class members to object to settlement, and potential adjustment of "fees awarded to Lead Counsel."); (Dkt. 5386) (addressing "failure to provide any recovery to plaintiffs in the…Omitted Repealer States," "adequacy of Lead Counsel" in representing the Omitted Repealer States, and "attorney's fees awarded to Lead Counsel…."). There is thus no need to consider remedies beyond these discrete issues to finally approve the settlements.

Defendants' proposal addresses the Court's and the Ninth Circuit's concerns. *First*, under Defendants' proposal, the Omitted Repealer States will participate fully in the settlement process—they may file claims against the settlement fund or opt out of the settlement and file individual claims against Defendants.[25] *Second*, the settlement monies for the Omitted Repealer States will be funded exclusively out of IPPs attorneys' fee award. Thus, claims made by Omitted Repealer State class members will not dilute the recoveries of class members from non-Omitted Repealer States. *Third*, class members from the Omitted Repealer States will be paid at the same pro rata rate as class members from the non-Omitted Repealer States who have already filed claims against the Fund.

The Court could establish a structure that would ensure that class members from the Omitted Repealer States be compensated at the same rate as those from the non-Omitted Repealer States. Specifically, the Court could order that the notice and claim/opt-out processes commence for the Omitted Repealer States. Doing so would allow IPP Lead Counsel, the Objectors, and the

---

simply remanded the case subsequent to the IPPs' request. The remand order itself is unmistakably focused on issues of distribution, adequacy of counsel, and fees and, critically, the circuit court did not vacate this Court's order approving the settlements.

[25] There is no merit to Objectors' contention (*see* Appellate Dkt. 232-1, at 7-10) that Defendants' proposal requires the settlement agreements to be amended. The settlement agreements already release the claims of all Class Members, including class members from the Omitted Repealer States because they are members of the Nationwide Class. *See, e.g.*, ECF No. 3862-1, Ex. A, ¶¶ 1, 4, 5, 13; ECF No. 1526 (Fourth Am. Compl.) ¶ 243 (definition of Nationwide Class). Nothing in the settlement agreements prevents monetary relief being distributed to class members from Omitted Repealer States. To the contrary, questions of distribution expressly are *not* governed by the settlement agreements. *See, e.g.*, ECF No. 3862-1, Ex. A, ¶ 21

---

16

Court to determine with certainty the amount required to compensate those class members.  IPP Lead Counsel estimates that, when applying the same claims rate as occurred in the non-Omitted Repealer States, it would cost approximately $5.05 million to compensate class members of the Omitted Repealer States. Dkt. 5335 at 12.  Under Defendants' proposal, the claims rate would not be estimated, but exactly and objectively determined based on the actual number of claimants from the Omitted Repealer States that make claims on the Fund.  With the benefit of knowing the actual Omitted Repealer State claims rate, the exact amount required to compensate those class members could be determined, and the Court could then reduce the IPP fee award by the precise amount to ensure all claimants from all repealer states are compensated equally.[26]

Further, because class members from the Omitted Repealer States would not be disadvantaged relative to any other class members, there would be no concern regarding potentially "pitting one set of clients' claims against those of another." Dkt. 5362 at 2.  To the extent the Court found that potential conflicts remained, Defendants propose that the Court appoint separate counsel to represent the Omitted Repealer States for purposes of class notice and the amendment of the distribution plan.  This should eliminate any conflict impeding final approval.

Finally, Defendants are mindful of the Court's finding that, "if class members in the Omitted Repealer States ultimately do receive a recovery from the IPP settlement, it will have resulted from the efforts of one or more objectors [and that] those objectors will then be entitled to apply for an award of attorneys' fees." (Dkt. 5326 at 3).  Under Defendants' proposal, Objectors and their counsel would be compensated in an amount determined reasonable by the Court out of

---

[26] Defendants make this proposal as a practical solution to the issues that the Ninth Circuit and this Court have identified as potential obstacles to final approval of the settlements.  Nothing in this submission should be interpreted as a concession that class members from the Omitted Repealer States (or any other class members) have viable claims. Similarly, Defendants respond in this submission to the questions raised in this Court's conference Order, but a failure to respond specifically to every argument advanced by the IPPs, Objectors, Appellants and non-parties should not be interpreted as a waiver of the right to do so at the upcoming conference or in the course of further motion practice. Defendants also oppose inclusion of the statements by proposed intervenors, Financial Recovery Services, and Eleanor Lewis in this submission.  None are parties to this litigation and thus inclusion of their statements is inappropriate and the issues they raise are not germane to the issues before the Court. Defendants acquiesced in demands for inclusion of these statements solely to avoid burdening the Court with multiple filings.

fees awarded to Lead Counsel.  Defendants' proposal thus addresses all issues identified in the Court's and the Ninth Circuit's recent Orders.[27]

## III. The Parties' Alternative Proposed Remedies Fail to Address the Court's and the Ninth Circuit's Concerns and Leave Their Clients In Materially Worse Positions

Party proposals seeking to modify the scope of the releases to exclude the Omitted Repealer States would deprive Defendants of the benefits of their respective bargains.  Under such proposals, Omitted Repealer States would, by definition, continue to be specifically excluded from participation in the plan of distribution.  This would undermine the Ninth Circuit's opinion that the appropriate remedy here is to "provide recovery to class members in the Omitted Repealer States." (Appellate Dkt. 238 at 10-11).  Such a plan would also effectively cut the Omitted Repealer States' class members loose from the settlement process and virtually guarantee further litigation before this Court as to the claims of the three state classes.

Party proposals seeking to increase the amount of money Defendants would need to pay to include the Omitted Repealer States fail for a number of reasons.  First, Defendants have already paid over a *half a billion dollars* into the Fund and are not interested in further contributions. Second, these proposals ignore that the Defendants, in exchange for this valuable consideration, bargained for what are already *class-wide releases*.  It makes no sense for Defendants to pay additional money for what they already bargained for in good faith.  This is especially true where Defendants had no role in the plan of allocation and relatively modest amendments to the distribution plan and fee awards would guarantee adequate compensation to the Omitted Repealer States.  Finally, neither this Court nor the Ninth Circuit have expressed any concerns regarding the adequacy of the Fund.  To the contrary, the Court's Orders and the Ninth Circuit's remand order

---

[27] Final approval of settlements as to all other states is appropriate while further proceedings occur with respect to the Omitted Repealer States.  Nothing in this Court's Orders or the Ninth Circuit's remand order cast doubt over the Court's Order Granting Final Approval with respect to other states.  The Court thus has ample authority on the current record to reaffirm its final approval Order as to all other states.  Doing so will provide finality to the parties as to a substantial portion of the IPP cases and will allow the vast majority of IPP class members to finally receive distributions from the Fund.

focus on the plan of distribution of the existing Fund, adequacy of counsel, and attorney's fees. There is simply no credible foundation for a solution involving Defendants contributing additional money into an already ample and adequate settlement Fund.

Finally, Objectors' argument that the over half-a-billion dollar settlement Fund is somehow inadequate because the distribution plan provides no compensation to six additional repealer states is a red herring. As an initial dispositive matter, no purchaser from these six states ever objected to any aspect of the settlements and the deadline to do so expired years ago. Moreover, these arguments are outside the scope of the Ninth Circuit's remand order and this Court's conference Order, which focus on consideration of the distribution plan, adequacy of counsel, and fees.

## Statement of Objectors Dan L. Williams & Co., Rockhurst University, Harry Garavanian, and Gary Talewsky.

### A.    Background.

On February 13, 2019, the United States Court of Appeals for the Ninth Circuit issued an order remanding this case to the District Court "… to reconsider its order on class certification and settlement approval." Case No. 16-16368, Dkt. Entry 238, at p. 12. In that same order, the Ninth Circuit denied the Indirect-Purchaser Plaintiffs' ("IPPs") request to remand with instructions regarding their proposed plan of distribution for the settlements and award of fees to IPPs' Class Counsel. *Id.*, at p. 11. The Ninth Circuit issued its Mandate on March 7, 2019. Case No. 16-16368, Dkt. Entry 239.

### B.    Objectors' Statement.

The Objectors, Dan L. Williams & Co., Rockhurst University, Harry Garavanian, and Gary Talewsky ("Objectors"), respectfully suggest that the Court address the following issues at the April 9 Status Conference:

1.    Reconsideration of the Court's Final Approval Order. Doc. 4712.

In the Order Denying IPPs' Motion for an Indicative Ruling, this Court stated:

> First, with the benefit of hindsight, the Court now concludes that it erred in approving the parties' original settlement. Most fundamentally, the Court erred in approving the provision that required class members in Massachusetts, Missouri, and New Hampshire (the "Omitted Repealer States") to release their claims

without compensation. The fact that the claims were required to be released meant they had value.

Doc. 5362 at 1.

Objectors respectfully suggest that the Court should formally vacate the final approval order, which failed to provide adequate compensation to all class members, especially those in the Omitted Repealer States. Alternatively, Objectors respectfully suggest that the Court should establish a briefing schedule to evaluate these settlements.

Additionally, Objectors respectfully suggest that along with vacating the final approval order, the Court should set a date for a jury trial to begin and schedule hearing dates for a class certification motions for the Omitted Repealer States, the six newly-added Repealer States in the Mitsubishi Complaint (Rule 23(a)(b)(3)), and the nationwide equitable-relief class (Rule 23(a)(b)(2)), which includes class members in all nine Omitted Repealer States and in the Non-Repealer States – none of which was ever certified for litigation purposes.[28]

In order to assist the parties in any future ADR attempt to negotiate new settlements, Objectors also respectfully request the Court to set a briefing schedule to consider whether final approval should be vacated for additional reasons, such as: Determining whether the six settlements totaling $541.75 million are fair, reasonable, and adequate given IPPs' own expert report showing there were $3.076 billion in damages for the 22 repealer states alone.[29] (Expert Report of Janet S. Netz, PH.D Damage Study, 2014) For perspective, it is helpful to look at a strikingly similar case – indeed, one involving the same, continuing conspiracy, *In re: TFT/LCD (Flat Panel) Antitrust Litigation* – which resulted in an approved settlement that highlights the

---

[28] The Preliminary Approval Order certified a Settlement Class that included a Nationwide Class and Indirect Purchaser State Classes, and this definition was incorporated in the Settlement. Doc. 3906 at 1-2. The settlement itself thus contemplates allocation of funds only to the Indirect Purchaser State Classes – and not to any of the Omitted Repealer States. Contrary to IPPs' suggestion, it would be improper for the Court to simply alter the plan of allocation with respect to three states from the Nationwide Class without vacating settlement approval and certifying new classes.

[29] Vacating the settlements will also resolve the "late claims" problem. In any event, to achieve a complete resolution of all issues, the Court may wish to consider establishing a new claims-filing deadline.

great disparity of the settlements in this case.  Compared to the conspiracy in the *LCD* case, in *CRT* there was more affected commerce, and significantly more conspiratorial meetings – but the *LCD* indirect-purchaser class settlements totaled $1.1 billion.  The same plaintiffs' expert used in this *CRT* case opined in the *LCD* case that total damages were $2.2 billion.  In other words, the *LCD* indirect-purchaser class members recovered 50% of their damages according to the expert that Class Counsel also hired in this case.  But Class Counsel here agreed to a settlement in which the class members recovered only about 18% of their damages according to their own expert.  Given the close relationship of the two cases, there is questionable justification for such a disparity.[30]

2.    Reconsideration of the Adequacy of Class Counsel's Representation Under Rule 23(a)(4).

In the Order Denying IPPs' Motion for an Indicative Ruling, this Court stated that, having "… erred in approving a settlement that provided no recovery to class members in the Omitted Repealer States, the Court has concerns about the adequacy of the counsel who negotiated the settlement or whether they may have faced a conflict of interest."  Doc. 5362.

Therefore, Objectors respectfully ask the Court to set a briefing schedule to consider whether IPP Class Counsel exhibits a disabling conflict and/or failed to provide adequate representation to the Class, whether Class Counsel should be replaced, and whether new Lead or Co-Lead Counsel should be appointed.

Objectors further respectfully ask the Court to vacate the October 26, 2010 stipulation and order (Doc. 799) wherein Class Counsel dismissed, and agreed not to allege, claims on behalf of indirect purchasers in omitted repealer states.  Vacating the order would ensure that class members from all Omitted Repealer States whose claims were not pursued by Class Counsel are back in the

---

[30] As an example and in comparison, in CRT herein Class Counsel settled LG for $25 million, whereas in *In re: TFT/LCD (Flat Panel) Antitrust Litigation*, the LG defendants paid $380 million to settle the indirect-purchaser class claims and *parens patriae* claims brought by the state attorneys general.  Case No. M-07-1827, 2013 WL 1365900 at *3 (N.D. Cal. Apr. 3, 2013)**.**)

litigation position they were in before Class Counsel intentionally abandoned and failed to vigorously pursue their claims.

### 3.   The Attorneys' Fees Awarded to IPPs' Class Counsel.

It is Objectors' position that the award of attorneys' fees to Class Counsel was excessive, given the results achieved for all Class Members.  As a matter of law, the fee award should be vacated in its entirety, if the Court vacates its order approving the settlements.  The award should also be vacated if the Court holds IPP Class Counsel had a disabling conflict or provided inadequate representation.  If new settlements are reached, the Court will then have an opportunity to consider new requests for attorneys' fees by all counsel who provided a benefit to class members.

In the alternative, Objectors respectfully suggest that the Court permit them to file a memorandum setting forth the serious errors in Class Counsel's fee petition at the appropriate time.

### 4.   Response To IPPs' and Defendants' Statements.

Objectors disagree with many of the characterizations and legal arguments contained in IPPs' and Defendants' statements.  Objectors will respond to these inaccurate statements at the Case Management Conference should the Court so request.

### 5.   Additional Issues to be Discussed.

Objectors respectfully suggest that the following issues are relevant to a consideration of the four issues the Court has identified for discussion at the Status Conference, and request the following:

a)   Producing to Objectors for purposes of evaluating the fairness of the settlements and adequacy of Class Counsel:

(i)   the witness list, and a full set of the multiple trial documents exchanged with Defendants; and

(ii)   the expert report(s) of Janet Netz on damages, including the data and draft of each such report.

b)   If the Court orders further inquiries about the amount of fees to be awarded

Class Counsel, producing:

(i)    all time-and-expense reports, including the date each was submitted, to the accountancy firm of Stephen J. Pelleriti, CPA, hired by Class Counsel to gather such information, so that this Court can ascertain if contemporaneous time reports were made as required;[31]

(ii)   all bank records showing the amounts and dates of all assessments payments made by all Class Counsel, as well as any and all bank accounts into which settlement funds were deposited and used to finance the case;

(iii)  reporting all time spent by any Class Counsel fighting with the California Attorney General over settlements, as such was wholly unnecessary and counter-productive so that Class Members received less in settlements than they would have if Class Counsel had cooperated with the Attorney General, and for which time fees should be denied.

**D.    Gianasca Appellants'[32] Statement:**

Appellants object to the argumentative and self-serving historical narrative content submitted by IPP Class Counsel because it is so far beyond the suggestions requested by this Court in its status conference order (#5386) that it renders the offering non-responsive. Moreover, this content was (largely) presented to the Ninth Circuit, as well as this Court and rejected. Appellants request this Court 1) disregard that content; 2) 3) strike the content from the record; or 3) set up related briefing schedule so that the parties may properly treat these issues of great importance properly. Appellants request the opportunity to address each point within the appropriate briefing scheduled by this Court.

Appellants take no position with respect to the text offered in conjunction with the Objectors suggestions.

---

[31] Counsel for Objectors Gianasca, Comeaux, Ashkannejhad, Ciccone, and Craig, Robert Bonsignore, stated under oath that Lead Counsel, Mario Alioto, told Mr. Bonsignore that he, Alioto, did not keep contemporaneous time records and, therefore, Mr. Bonsignore need not do so. [Doc. 4271, p.2.]

[32] For ease of reading the group of End-Use Indirect Purchaser Plaintiff Appellants represented throughout by the Bonsignore Firm will be referred to collectively as the "Gianasca Appellants". The so called Gianasca Appellants are Anthony Gianasca of Massachusetts, Jeffrey Craig of New Hampshire, Mina Ashkannejhad Edwards of Missouri (all from (Omitted Repealer States), Rosemary Ciccone of Rhode Island (Equitable Relief Only Non Repealer State ) and Gloria Comeaux of Nevada (Included Repealer State)

Appellants join in the Objector's suggestion to vacate the Final Approval Order because this Court has already opined on the issue and shed light on the propriety of its previous order granting Final Approval.[33] (# 4712).

Appellants also join with the Objectors in the spirit of their suggestion that the Court schedule hearing dates and set a date for a jury trial to begin but depart from the remainder of the specifics of the Objector's suggestions.

The Gianasca Appellants suggest that the most efficient, economical, expeditious, orderly and just resolution to this litigation will be accomplished through a three-phased approach.  The Gianasca Appellants therefore request this Court consider the following suggestions and time tables:

1.  **Phase One: House-Keeping (Twenty- Five (25) Days)**:

   a.   Order Class Counsel to immediately produce to the Appellants, Objectors, or a successor MDL 1917 Leadership all draft and final reports including the underlying data of all expert reports prepared by Netz[34] and all IPP consultants.

   b.    Order Class Counsel to immediately produce to the Appellants, Objectors, or a successor MDL 1917 Leadership all final expert reports including the underlying data of all expert reports prepared by defense experts as well as all drafts or consultant reports they may possess;

   c.   Order Class Counsel to immediately produce to the Appellants, Objectors, or a successor MDL 1917 Leadership all draft and final trial exhibits, memos and motions in limine including, where applicable, all supporting documents[35];

---

[33] The Appeals Court has also weighed in on this item. *See* Order, ECF No. 239, *IPPs et al. v. Toshiba Corp. et al.,* No. 16-16368 (9th Cir., Feb. 13, 2019).

[34]  2014 Expert Report of Janet S. Netz, PH.D Damage Study

[35] IPP Counsel have represented above that "preparations for trial including analyzing and culling the best evidence, exchanging expert reports, exhibit lists, deposition designations, jury instructions, Pretrial Statements, special verdict forms, briefing 64 motions *in limine,* and conducting multiple mock trials.  *See generally,* ECF Nos. 4071-1; 4853-1 (¶¶ 40, 44, 46, 48, 49, 53-56); R&R at 33, 67-70.

d.      Order Class Counsel to immediately produce to the Appellants, Objectors, or a successor MDL 1917 Leadership all deposition transcripts of the Defendants' Chief Executives and mid-level management together with all accompanying exhibits;

e.      Order Class Counsel to immediately produce to the Appellants, Objectors, or a successor MDL 1917 Leadership all draft and final briefing on the issue of class certification including all draft and finally selected supporting documents;

f.      Order Class Counsel to immediately produce to the Appellants, Objectors, and a successor MDL 1917 Leadership all draft and final briefing on the issue of summary judgement including all draft and finally selected supporting documents;

g.      Vacate its order granting Final Approval because of the subsequent findings articulated in this Court's order on IPP Class Counsels request for an Indicative Ruling (#5362) and because the Final Approval Order (# 4712) certified a Settlement Class that included a Nationwide Class and Indirect Purchaser State Classes that no longer tracks the class notice or the languge of the Settlement Agreement.[36] The Gianasca Appellants suggest this Court consider the undisputed fact that the approved settlement at issue contemplated an allocation of funds only to the Indirect Purchaser State Classes – and not to any of the Omitted Repealer States. Also, the new settlement is advanced by counsel that has not been found be adequate under Rule 23 (a) (4) in the context of the newly offered terms and Defendants who voluntarily agreed to the terms that prompted reversal. Moreover, the new settlement is not supported by expert testimony that has been found to be sufficiently supported by this court or otherwise subjected to scrutiny. In sum, the Gianasca Appellants suggest this Court consider

---

[36] This definition was articulated in this Court's Preliminary Approval Order (# 3906 at 1-2) and incorporated into its order on final approval.

whether it is improper for the Court to simply alter the plan of allocation that effectively changes the terms of a settlement without vacating the settlement approval, certifying new classes, and providing all impacted with notice and an opportunity to be heard.

h.     Appoint of Successor MDL 1917 Leadership that includes Lead Counsel, an Executive Committee, and Trial Counsel. Appellants further suggest that this Court consider a three firm Interim Co-Lead assisted by a minimum 4 firm Interim Executive Committee.

i.     Appointment of MDL 1917 Trial Counsel to be tasked with insuring, at a minimum, that while the other activities are being undertaken that the focus on being ready for trial advances simultaneously;

j.     Immediately order that the stipulation (#799) entered into by Class Counsel and any related orders entered during the prior pendency of MDL 1917 be vacated and that the claims be reinstated *nunc pro tunc*.  Also that all other steps necessary to place class members from the omitted repealer states, whose claims were not pursued by IPPs' Class Counsel, back in the litigation and into the position they were in before Class Counsel failed to vigorously pursue their claims/intentionally abandoned them be effected.

**2.     Phase Two: Period of Evaluation By Plaintiff's Counsel and Report of Findings and Recommendations to Be Submitted Immediately Thereafter and Renewed Settlement Efforts Seventy – Five (75) Days**

a.     Appellants suggest that this Court issue an order allowing Appellants, Objectors, or successor MDL 1917 Leadership seventy- five (75) days to review the above documents and provide this Court with a related report and recommendations as to:

i.     The progress of settlement discussions;

ii.     Whether or not the original settlement was fair, adequate and reasonable and why;

iii.    Specifically, what additional discovery or briefing is required, if any, together with a related suggested schedule;

iv.    A recommended schedule including briefing and argument dates for class certification; and

v.    Whether an originally estimated twenty (20) day trial of MDL 1917 to commence on earliest date convenient to this court following its order on class certification remains in place.

### 3. Phase Three: Class Certification and Trial (TBT by Court)

Appellants suggest that this Honorable Court set a schedule for class certification and trial following the submission of the Report of Findings and Recommendations of the Appellants, Objectors or successor MDL 1917 Leadership that fits into its calendar and the remainder of the scheduled events it sets.

### 2. Reconsideration of the Adequacy of Class Counsel's Representation Under Rule 23(a)(4).

**GIANASCA APPELLANTS' STATEMENT:**

Appellants take no position with respect to the text offered in conjunction with the Objectors suggestions. Appellants join in with some of the Objector's suggestions and propose alternative approaches to other suggestions. While the Objectors' suggest that a briefing schedule be put in place to consider whether IPPs' Class Counsel should be replaced due to a disabling, continuing and pervasive conflict of interest, Appellants suggest this Court consider the following three-phase approach:

### Phase One – Evaluation of Facts and Opportunity of Plaintiffs' Counsel to Further Evaluate Conflicts and Propose a Leadership Structure (Two (2) Weeks)

1.    Appellants suggest that this Court first look to the analysis it undertook and the facts it found in issuing its order (# 5362) denying Class Counsels' request for an indicative ruling to determine whether further briefing on the issue of the removal of Lead Counsel Alioto is required or would be futile. The Appellants suggest this Court again

1  consider the Affidavit of Richard Flamm (#5360) which was on file at the time of the
2  Court's ruling at #5362.

3  2.     Appellants further suggest that this Court enter an Order immediately removing Alioto
4         as Lead Counsel based on its prior factual findings applied to related, well established
5         law because no new facts can change the nature or extent of the underlying facts as they
6         exist and because the application of the applicable law makes clear that further briefing
7         on Alioto's part would be futile.

8  3.     Appellants also suggest that in tandem with suggestion One above, this Court allow a
9         period of fourteen (14) days for the Appellants to meet and confer with Class Counsel
10        for the purpose of attempting to reach agreed upon recommendations for the
11        appointment of successor MDL 1917 Co-Lead Counsel, a Plaintiffs' Interim Executive
12        Committee and Trial Counsel and to forwith submit for the Court's consideration a
13        related a paper that reports on the results or lack of results (hereafter "Joint Submission
14        on MDL 1917 Leadership"). It remains the position of the Gianasca Plaintiffs' that in
15        addition to Lead Counsel Alioto, other Class Counsel now have inescapable and
16        unavoidable conflicts of interest and are thus ineligible to continue to serve as legal
17        representatives to the putative classes. For example. Timothy Battin, Joseph M.
18        Goldberg and Robert Grawleski have been front and center and lead the efforts of the
19        IPP Class Counsel since the last time this matter was before this Honorable Court.

20  4.    The Giansca Appellants suggest this Court consider that while the Appellants and
21        Objectors have observed which of IPP Class Counsel appeared to work in tandem with,
22        or as IPP Lead Counsel Alioto's surrogates (and so must also be disqualified and
23        removed) no body of related evidence has yet been developed and placed before the
24        Court. This fourteen (14) day period will also allow for an initial airing, disclosure, and
25        flushing out of that mandatory area of review and analysis by this Court. It will also
26        provide an accompanying opportunity to evaluate and possibly narrow the related
27        matters in contention and possibly reach agreed upon recommendations.

28

5.    The Giansca Appellants are concerned with the Objector's suggestion that this Court issue "a briefing schedule and hearing for any individual lawyer or group of lawyers who wish to apply for the Lead or Co-Lead Class Counsel position" but note that such a schedule, if ordered, must include a related period for narrow discovery on the sole topic of the level and nature of the conflicts and involvement of all IPP Class Counsel[37] other than Lead Counsel Mario Alioto. The Giansca Appellants suggest that this Curt consider that this matter has been pending since 2008 and members of the putative class have already been forced to wait for their just compensation and that such a wide-open invitation will likely lead to further delay as the briefing schedule relating leadership takes on a life of its own. The Giansca Appellants suggest that should the parties be unable to reach agreement on suggested successor leadership, this Court consider ordering counsel with appearances be required to submit requests for positions with fourteen (14) days of the Joint Submission on MDL 1917 Leadership described in Paragraph 3 above and the narrow discovery on conflicted counsel described herein.

6.    Appellants have suggested above that this Court immediately vacate its order granting final approval (# 4712) because of its subsequent findings of fact in its #5362 Order as applied to the applicable law. The reasons supporting Appellants suggestion include, but are not limited to, the sufficiently clear this Court's findings in the  #5362 Orer negate its prior finding of Rule 23(a)(4) adequacy of counsel (#4712).

    3.    **The Attorneys' Fees Awarded to IPPs' Lead Class Counsel.**

**GIANASCA APPELLANTS' STATEMENT**:

---

[37] In addition to the observations of the Appellants, IPP Counsel has also above submitted to the Court the following position which makes clear that other conflicted lawyers may have to be disqualified "Along with Lead Counsel's core team of IPP lawyers who worked on this case throughout, these experienced trial lawyers were involved in determining whether and for how much to settle with the Defendants prior to trial, and have continued to work and/or *consult on this case throughout the pendency of the appeals*." (emphasis added)

Appellants suggest that the Fee Award must be revoked, as no benefit has yet been provided to the putative class.

Appellants further suggest that no fee award should be advanced or considered until a recovery has been secured for the putative class members. Appellants further suggest that only at that time would the consideration of a gross fee award and a related allocation be proper.

**4.     Additional Issues to be Discussed.**

a)     Producing to Objectors the witness list, and a full set of the multiple trial documents exchanged with Defendants, which Class Counsel has continuously refused to share with Objectors, so that Objectors may evaluate the past and current posture of the case.

**GIANASCA APPELLANTS' STATEMENT**:

Appellants join in with the Objector's suggestion and have further suggested specific alternative approaches above in Section 1 (a-d) [38] above.

b)     Producing all time-and-expense reports, including the date each was submitted, to the accountancy firm of Stephen J. Pelleriti, CPA, hired by Class Counsel to gather such information, so that this Court can ascertain if contemporaneous time reports were made as required.[39]

**GIANASCA APPELLANTS' STATEMENT**:

Appellants do not join in with the suggestions advanced by the other parties. Appellants suggest this Court and the parties place its focus solely on efforts revolving around the IPP claims seeking to create a benefit for the putative class, not premature, resource draining, and  presently irrelevant issues relating to attorney fees. The suggestions of the Gianasca Appellants went so far as to immediately appoint Trial Counsel to insure the class members interests are covered from the

---

[38] Phase One: House-Keeping (Twenty- Five (25) Days

[39] Counsel for Objectors Gianasca, Comeaux, Ashkannejhad, Speaect, Ciccone, and Craig, Robert Bonsignore, stated under oath that Lead Counsel, Mario Alioto, told Mr. Bonsignore that he, Alioto, did not keep contemporaneous time records and, therefore, Mr. Bonsignore need not do so. [Doc. 4271, p.2.]

outset "A-Z" and the litigation is reverse engineered to ensure that the litigation will proceed expeditiously as possible, with no delays as it transitions from one phase to another.

Appellants suggest this Court enter a preservation order requiring that "all time-and-expense reports, including the date each was submitted" be preserved by IPP counsel and hold in abeyance its production until a review is timely.

Appellants also suggest this Court hold in abeyance its decision on who and how those records are reviewed and how a future award of fees is allocated until such time as a benefit is secured for the putative class. Appellants suggest that only at that time will a review of those records be ripe.

    c)    Producing all bank records showing the amounts and dates of all assessment's payments made by all Class Counsel, as well as any and all bank accounts into which settlement funds were deposited and used to finance the case.

**GIANASCA APPELLANTS' STATEMENT**:

Appellants join in with the Objector's in this suggestion with the caveats articulated above.

    d)    Reporting all time spent by any Class Counsel fighting with the California Attorney General over settlements, as such was wholly unnecessary and counter-productive so that Class Members received less in settlements than they would have if Class Counsel cooperated with the Attorney General, and for which time fees should be denied.

**GIANASCA APPELLANTS' STATEMENT**:

Appellants join in with the Objector's in this suggestion with the caveats articulated above.

    e)    To the extent not already encompassed in A.2., *supra*, permitting Objectors to discover who, or which firms, were involved in negotiating or facilitating the settlements, and who may thus share disabling conflicts of interest.

**GIANASCA APPELLANTS' STATEMENT**:

Appellants join in with the Objector's in this suggestion with the caveats articulated above.

    f)    Producing to Objectors the expert report(s) of Janet Netz on damages,

including the data and draft of each such report for purposes of evaluating the fairness of the

settlements and adequacy of Class Counsel.

**GIANASCA APPELLANTS' STATEMENT**:

  Appellants join in with the Objector's suggestion and have further suggested specific

alternative approaches above in Section 1[40] above.

**E.**  **Statement of Non-Repealer State Class Member Eleanor Lewis**.

  Class Member Eleanor Lewis joins Objectors' Dan L. Williams & Co., Rockhurst

University, Harry Garavanian, and Gary Talewsky Statement.

**F.**  **Statement of Class Members and Proposed Intervenors, Douglas King and George Feldman.**

  On January 11, 2019, Plaintiffs Douglas King and George Feldman filed a motion to

intervene. (Dkt. 5368).  The motion is fully briefed.  In its February 15, 2019 Order setting this

Case Management Conference, the Court stated that it will hold the motion in abeyance pending

further scheduling and case management.  (Dkt. 5836).

**G.**  **Statement of Financial Recovery Services, Inc. d/b/a Financial Recovery Strategies ("FRS").**

  Objector Financial Recovery Services, Inc. d/b/a Financial Recovery Strategies ("FRS")

does not at this time take a position concerning the issues enumerated in the Court's February 15,

2019 Order except to the extent set forth below in footnote 41.  *See* Case No.: 3:07-cv-05944-JST,

ECF 5386 (Feb. 15, 2019) at 1-2. There is a related matter that FRS asks the Court to address,

however.

  Specifically, FRS recognizes that the issue of whether the Court should treat proofs of

claim submitted after the December 7, 2015 claim filing deadline ("Late Claims") the same as

proofs of claim that were filed on or before that deadline is secondary to the issues identified by

---

[40] Phase One: House-Keeping (Twenty- Five (25) Days

the Ninth Circuit and enumerated in the Court's February 15, 2019 Order. Nevertheless, because the Late Claim issue has been lingering for 40 months and affects thousands of class members, FRS respectfully requests that, should the Court decline to vacate its Order Granting Final Settlement Approval, ECF No. 4712 (the "Final Approval Order"), the Court clarify that all Late Claims submitted to the Claims Administrator before a new filing deadline to be set by the Court, whether in connection with either the Mitsubishi settlement or the settlements subject to the Final Approval Order, shall be treated in the same manner as if they had been filed prior to December 7, 2015.[41]

Dated:  March 26, 2019                     Respectfully submitted,


                                           /s/ Mario N. Alioto
                                           Mario N. Alioto

                                           Mario N. Alioto (56433)
                                           Joseph M. Patane (72202)
                                           Lauren C. Capurro (241151)
                                           Trump Alioto Trump & Prescott, LLP
                                           2280 Union Street
                                           San Francisco, CA  94123
                                           Phone:  (415) 563-7200
                                           Email: malioto@tatp.com
                                                   jpatane@tatp.com
                                                   laurenrussel@tatp.com

                                           *Lead Counsel for Indirect Purchaser Plaintiffs*

---

[41] FRS requested of IPP Lead Counsel that IPPs include in their statement, support of this position regarding late claims. IPP Lead Counsel has not confirmed that he will do so.  IPP Lead Counsel has a duty to protect the interests of class members that filed Late Claims as well as class members that filed timely claims. FRS will be prepared to address at the Status Conference IPP Lead Counsel's conflict of interest should the Court determine that such a presentation would be of assistance.

  /s/ Robert J. Bonsignore
        Robert Bonsignore
Robert Bonsignore *appearing pro hac vice*
Lisa A. Sleboda *appearing pro hac vice*
Kelley Fahy
Bonsignore Trial Lawyers, PLLC
23 Forest Street
Medford, Massachusetts 02155
Office Phone: (781) 350-0000
Cell Phone: (781) 856-7650
Facsimile: (702) 852-5726
Email: rbonsignore@classactions.us
Email: lsleboda@class-actions.us
Email: kfahy@classactions.us

*Counsel for Appellants Gianasca, Comeaux,
Ashkannejhad, Speaect, Ciccone, and Craig*


  /s/  Francis. O. Scarpulla
        Francis O. Scarpulla

Francis O. Scarpulla (41059)
Patrick B. Clayton (240191)
Law Offices of Francis O. Scarpulla
 456 Montgomery Street, 17th Floor
 San Francisco, CA 94104
 Telephone: 415-788-7210
 Facsimile:  415-788-0706
 fos@scarpullalaw.com
 pbc@scarpullalaw.com


Paul B. Justi (124727)
Law Offices of Paul B. Justi
1981 North Broadway, Suite 250
Walnut Creek, CA  94596
Telephone:  (925) 256-7900
Facsimile:  (925) 256-9204
Email:  pbjusti@comcast.net


John G. Crabtree, *appearing pro hac vice*
Brian Tackenberg, *appearing pro hac vice*
Crabtree & Auslander
240 Crandon Boulevard, Suite 101
Key Biscayne, FL 33149
Telephone:  (305) 361-3770
Facsimile:  (305) 437-8188
Email:  jcrabtree@crabtreelaw.com

  /s/  Theresa D. Moore
        Theresa D. Moore

Theresa D. Moore (99978)
Law Offices Of Theresa D. Moore
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 613-1414
tmoore@aliotolaw.com

Christopher A. Nedeau (81297)
Nedeau Law Firm
154 Baker Street
San Francisco, CA 94117
Telephone: (415) 516-4010
cnedeau@nedeaulaw.net

*Counsel for Objectors Rockhurst University,
Harry Garavanian, and Gary Talewsky*


  /s/ Tracy R. Kirkham
        Tracy R. Kirkham

Tracy R. Kirkham (69912)
John D. Bogdanov (215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA 94103
Telephone: (415) 788-3030
Facsimile: (415) 882-7040
Email: trk@coopkirk.com
       jdb@coopkirk.com

*Counsel for Plaintiff Steven Ganz and
Objector/Class Member Eleanor Lewis*

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Case No. 3:07-cv-5944, MDL No. 1917

1

2

3

4   Brian M. Torres, *appearing pro hac vice*
5   Brian M. Torres, P.A.
    One S.E. Third Avenue, Suite 3000
6   Miami, FL 33131
    Telephone: (305) 901-5858
7   Facsimile: (303) 901-5874
    Email: btorres@briantorres.legal
8
9   *Counsel for Objector Dan L. Williams & Co.*

10  BAKER BOTTS LLP

11  By: /s/ *Erik T. Koons*
12  JOHN M. TALADAY
    ERIK T. KOONS
13  BAKER BOTTS LLP
14  1299 Pennsylvania Avenue, N.W.
    Washington, DC 20004-2400
15  Telephone: (202) 639-7700
16  Facsimile: (202) 639-7890
    john.taladay@bakerbotts.com
17  erik.koons@bakerbotts.com
18
    *Attorneys for Defendant-Appellees*
19  *Koninklijke Philips N.V. and*
    *Philips Electronics North America*
20  *Corporation*

21

22  /s/ *Eliot A. Adelson*
    ELIOT A. ADELSON
23  Email: eadelson@kirkland.com
    KIRKLAND & ELLIS LLP
24  555 California Street, 27th Floor
    San Francisco, CA 94104
25  Telephone: (415) 439-1413
26  Facsimile: (415) 439-1500

27  *Counsel to Defendants-Appellees*
    *Hitachi Ltd., Hitachi Displays, Ltd.*
28

35

1  *(n/k/a Japan Display, Inc.), Hitachi*
   *Asia, Ltd., Hitachi America, Ltd., and*
2  *Hitachi Electronic Devices (USA),*
   *Inc.*
3

4   */s/ Kathy L. Osborn*
    Kathy L. Osborn (*pro hac vice*)
5   Ryan M. Hurley (*pro hac vice*)
    Faegre Baker Daniels LLP
6   300 N. Meridian Street, Suite 2700
    Indianapolis, IN  46204
7   Telephone: +1-317-237-0300
    Facsimile: +1-317-237-1000
8   kathy.osborn@FaegreBD.com
9   ryan.hurley@FaegreBD.com

10
    Jeffrey S. Roberts (*pro hac vice*)
11  Faegre Baker Daniels LLP
    3200 Wells Fargo Center
12  1700 Lincoln Street
    Denver, CO  80203
13  Telephone: +1-303-607-3500
    Facsimile:  +1-303-607-3600
14  jeff.roberts@FaegreBD.com
15
    *Attorneys for Thomson SA and Thomson*
16  *Consumer Electronics, Inc.*

17

18  By: */s/ Jeffrey L. Kessler*
19  JEFFREY L. KESSLER (*pro hac vice*)
    EVA W. COLE (*pro hac vice*)
20  MOLLY M. DONOVAN (*pro hac vice*)
    WINSTON & STRAWN LLP
21  200 Park Ave.
    New York, NY 10166-4193
22  Telephone: (212) 294-6700
    Facsimile: (212) 294-4700
23  jkessler@winston.com
    ewcole@winston.com
24  mmdonovan@winston.com
25
    KEVIN B. GOLDSTEIN (*pro hac vice*)
26  WINSTON & STRAWN LLP
    35 W. Wacker Dr.
27  Chicago, IL 60601-1644
    Telephone: (312) 558-5600
28

1 Facsimile: (312) 558-5700
kbgoldstein@winston.com

2

3 DAVID L. YOHAI (*pro hac vice*)
ADAM C. HEMLOCK (*pro hac vice*)
DAVID E. YOLKUT (*pro hac vice*)

4 WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue

5 New York, NY 10153-0019

6 Telephone: (212) 310-8000
Facsimile: (212) 310-8007

7 david.yohai@weil.com
adam.hemlock@weil.com

8

9 *Attorneys for Defendants Panasonic*
*Corporation (f/k/a Matsushita Electric*

10 *Industrial Co. Ltd.); Panasonic Corporation of*
*North America; and MT Picture Display Co.,*

11 *Ltd.*

12

13  /s/  Christopher M. Curran
CHRISTOPHER M. CURRAN

14 ccurran@whitecase.com
LUCIUS B. LAU

15 alau@whitecase.com

16 DANA E. FOSTER
defoster@whitecase.com

17 WHITE & CASE LLP
701 Thirteenth Street, N.W.

18 Washington, DC  20005
tel.: (202) 626-3600

19 fax: (202) 639-9355

20

21 *Counsel to Defendants Toshiba Corporation,*
*Toshiba America, Inc., Toshiba America*

22 *Information Systems, Inc., Toshiba America*
*Consumer Products, L.L.C., and Toshiba*
*America Electronic Components, Inc.*

23

24 By: /s/ Andrew Rhys Davies

25 MICHAEL S. FELDBERG (*pro hac vice*)
ANDREW RHYS DAVIES (*pro hac vice*)

26 ALLEN & OVERY LLP
1221 Avenue of the Americas

27 New York, NY 10020
(212) 610-6300

28

michael.feldberg@allenovery.com
andrewrhys.davies@allenovery.com

JOHN ROBERTI (*pro hac vice*)
ALLEN & OVERY LLP
1101 New York Avenue, NW
Washington, DC 20005
(202) 683-3800
john.roberti@allenovery.com

*Attorneys for Defendants Samsung SDI*
*America, Inc.; Samsung SDI Co., Ltd.;*
*Samsung SDI (Malaysia) SDN. BHD.;*
*Samsung SDI Mexico S.A. DE C.V.; Samsung*
*SDI Brasil Ltda.; Shenzen Samsung SDI Co.,*
*Ltd.; and Tianjin Samsung SDI Co., Ltd.*

/s/ Michael T. Brody
Terrence J. Truax
Michael T. Brody
Gabriel A. Fuentes
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
312-222-9350
ttruax@jenner.com
mbrody@jenner.com
gfuentes@jenner.com

*Counsel for Defendant Mitsubishi Electric*
*Corporation*

/s/ Joseph R. Saveri
     Joseph R. Saveri

Joseph R. Saveri (130064)
Steven N. Williams (175489)
James G. Dallal (277826)
Joseph Saveri Law Firm, Inc.
601 California Street, Suite 1000
San Francisco, CA 94108
Phone: (415) 500-6800
Email: jsaveri@saverilawfirm.com
        swilliams@saverilawfirm.com
        jdallal@saverilawfirm.com

38

1

2

3   Melissa H. Maxman, *appearing pro hac vice*
    Erica C. Lai (261787)
4   Cohen  Gresser, LLP
    2001 Pennsylvania Avenue, NW, Suite 300
5   Washington, D.C.  20006
    Phone (202) 851-2070
6   Email: mmaxman@cohengresser.com
7           elai@cohengreser.com

8   Andrew J. McGuinness, *pro hac vice*
    Law Office of Andrew J. McGuinness
9   122 South Main Street, Suite 118
    P.O. Box 7711
10  Ann arbor, MI  48107
    Phone:  (734) 274-9374
11  Email:  drewmcg@topclasslaw.com
12
    *Counsel for Class Members and Proposed*
13  *Intervenors, Douglas King and George*
    *Feldman*
14

15

    _/s/ Jeffrey L. Bornstein_
16       Jeffrey L. Bornstein
17
    Michael W. Bien (96891)
18  Jeffrey L. Bornstein (99358)
    Jenny S. Yelin (273601)
19  Rosen Bien Galvan & Grunfeld, LLP
    50 Fremont Street, 19th Floor
20  San Francisco, CA  94105-2235
    Telephone:  (415) 433-6830
21  Email:  mbien@rbgg.com
22         jbornstein@rbgg.com
           jyelin@rbgg.com
23
    *Counsel for Objector Financial Recovery Services, Inc.*
24  *d/b/a Financial Recovery Strategies*

25

26

27

28

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Case No. 3:07-cv-5944, MDL No. 1917