

ALTSHULER BERZON LLP
ATTORNEYS AT LAW
177 POST STREET, SUITE 300
SAN FRANCISCO, CALIFORNIA 94108
(415) 421-7151
FAX (415) 362-8064
www.altshulerberzon.com

March 26, 2019

*Via E-Filing*

Honorable Judge Jon S. Tigar
U.S. District Court for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

>    **In re: Cathode Ray Tube (CRT) Antitrust Litigation, Indirect Purchaser Actions**
>    **MDL No. 1917, Case No. C-07-5944-JST (N.D. Cal.)**
>
>    Hearing Date:   April 8, 2018
>    Time:           2:00 p.m.
>    Courtroom:      9, 19th floor

Dear Judge Tigar:

   Non-party Spectrum Settlement Recovery, LLC ("Spectrum") submits this letter to the Court to offer its perspective, based upon extensive experience with similar issues in large nationwide class actions, with respect to the principal issues on remand. Spectrum has submitted timely client claims in this action for over 7.5 million CRT devices reflecting 38% of all claims by value. This Court has previously permitted Spectrum to submit its views in this litigation as *amicus curiae*.

   Spectrum notes that the IPP Claimants, including the Claimants that Spectrum represents, are seeking compensation for harms that occurred as long as 25 years ago. The efficacy of the settlement as well as the ability to administer a fund efficiently diminishes with each passing year. Time is truly of the essence in preserving the value of the IPP Settlements, through an expeditious re-organization and distribution to the claimants in the 22 Certified State Classes. Spectrum generally agrees with the views of IPP counsel and disagrees with the views of the Objectors, which are ill-suited to that goal. Objectors want to go back to square one, not just re-starting litigation as to the three Omitted Repealer States, but also re-evaluating every facet of the litigation and settlement including review of reports, motions (and their drafts), expert reports and underlying data, the adequacy of counsel, and other issues, many of which were not challenged before this Court or the Ninth Circuit. This is totally unnecessary and would result in years of second-guessing and re-evaluation of a settlement that, on the whole, is fair and reasonable, and was negotiated at arm's length after years of litigation. The settlement requires only minor modification to warrant final approval.

   Spectrum agrees that, in hindsight, claimants in the Omitted Repealer States should not have been compelled to release their claims without compensation. The Parties can amend the IPP Settlement Agreements to only include releases as to the 22 Certified State Damages classes and perhaps the Omitted Repealer States so long as they independently consent to participation. Spectrum

further agrees with IPP Class Counsel that the value of the claims from the Omitted Repealer States is likely to be modest in the context of this case. Spectrum nevertheless takes the view that whatever the claims of the Omitted Repealer States claimants may ultimately be worth in a real world setting, those claimants should have the opportunity to litigate or resolve the actual value of their claims. At the same time, the creation of an Omitted Repealer State sub-class and appointment of counsel should not be permitted to undermine the great progress that has already been made or to create years of additional disputes and objections.

In an abundance of caution, claimants in the Omitted Repealer States should either be permitted to participate in the existing settlements or be carved out. Further, they should have separate counsel. Despite their tremendous good faith efforts throughout the case as well as in hammering out a complex settlement, IPP Class Counsel should probably not represent claimants from Omitted Repealer States given the circumstances. IPP Class Counsel's representation should therefore be limited to claimants in the 22 states that received monetary compensation in the IPP Settlements. Once selected, counsel for the Omitted Repealer States can choose to litigate the validity of those claims, or agree to participate in the existing IPP Settlements through revision of the plan of allocation. Further, distribution to claimants in the 22 states should not be delayed based on the addition of additional claimants from Massachusetts, Missouri, and New Hampshire, should they choose to participate on the advice of their own counsel.

Ideally, the IPP Class and the Omitted Repealer States class should proceed on separate tracks and the Court should ensure that the Omitted Repealer States class claims and certification process does not delay the progress of the IPP Class, which obviously is much closer to final resolution. Carving out the Omitted Repealer Class claims into a separate sub-class on a separate track does not reflect any lack of capability or want of integrity on the part of IPP Class Counsel.

To expedite a resolution of this matter, the Court may wish to reduce Class Counsel's fees by a set amount rather than awaiting new claims from Massachusetts, Missouri, and New Hampshire to determine the exact magnitude of those claims. A slight reduction in IPP class counsel's fee percentage will not only free up amounts for the benefit of all class members, but it could further insulate the settlement against potential challenges on appeal, non-meritorious though they be. While Spectrum takes no issue with the 27.5% awarded to IPP Counsel, it notes that the Ninth Circuit applies a usual fee percentage of 25% and sometimes reduces that standard as the size of the settlement increases. Each 1% reduction would create a fund of $13 million that could be used in resolution of outstanding claims.

Further, Spectrum would ask the Court to consider authorizing the distribution of a certain amount of the settlement funds sooner, with a reserve set aside to deal with claims that remain outstanding. A second distribution could occur in conjunction with the Mitsubishi settlement, which has yet to be preliminarily approved. Multiple distributions are not uncommon in large common funds, and Spectrum can direct the Court to various examples if it would aid in this approach.

In addition to the Omitted Repealer States waiver issue, there remains the late claims issue, which was an issue in the unsuccessful mediation last summer before Judge Vaughn Walker. Spectrum reiterates that the issue is neither ripe, nor has it ever been fully briefed and argued before the Court by the relevant parties. However, we note that the Ninth Circuit, as well as courts throughout the country, apply an excusable neglect standard when considering whether to include late claims in any distribution. *See, e.g.*, *Pioneer Invest. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507

U.S. 380 (1993); *Pincay v. Andrews*, 39 F.3d 853 (9th Cir. 2004). This Court has imposed firm deadlines for claims filing at every juncture of the litigation, and there is considerable concern that an unprecedented number of late claims, and late duplicate claims, were filed in this case, overwhelmingly by claims-filing companies that failed to do their due diligence some years after the Court's deadline. To the best of our knowledge, none of those claims even tried to meet an excusable neglect standard. At the appropriate time, we would respectfully suggest that the Court should order the issue of late claims to be briefed and argued once the underlying issues of this CMC are resolved, and that any class member who filed a claim outside the authorized filing period should petition for inclusion of those claims and compensation by demonstrating that such claim meets the excusable neglect standard.

\*\*\*

In Spectrum's view, the approach proposed here is the most efficient way to (1) expedite compensation for IPP class members, (2) provide putative class members in the Omitted Repealer States a full and fair chance to have their arguments heard and their claims appropriately compensated (while not letting this small tail wag the much larger IPP class dog), and (3) produce a practical and fair result for all stakeholders that is likely to be viewed favorably by the Ninth Circuit, thus hopefully minimizing the time that claimants need to wait for payment of their claims.

Time is of the essence. Thousands of class members have filed claims (some of which accrued more than twenty years ago), had those claims audited, and are eager to receive the long-overdue compensation to which they are entitled.

Respectfully submitted,

*/s/ Eileen B. Goldsmith*

Eileen B. Goldsmith