# EXHIBIT 1

## [Document Submitted Under Seal]

# EXHIBIT 2

## [Document Submitted Under Seal]

# EXHIBIT 3



**certified**translate

A LANGUAGE FISH LLC COMPANY

info@certifiedtranslate.com   7425 Olympic Blvd., Suite 4000W   usa  1-888-856-2228
www.certifiedtranslate.com   Santa Monica, CA 90404   int  +1-310-684-3153
                                                       fax  +1-310-564-1944

## CERTIFIED TRANSLATION



A member of the American
Translators Association
ATA Member Number: 248719

*Documents Translated For:*

| Name: | David Y. Hwu | Street Address: **706 Sansome Street** |
|---|---|---|
| Firm: | Saveri & Saveri, Inc. | City/State/Zip: **San Francisco / CA / 94111** |

*Description of Document(s):*

|  |
|---|
|  |
| **IDD 8-15-2007 Report and Disclosure re Independent Business OperationsE** |
|  |
|  |

| Source Language: **SIMPLIFIED CHINESE** | Target Language: **ENGLISH** |
|---|---|

WITH REFERENCE TO THE ABOVE MENTIONED MATERIALS/DOCUMENTS, we at Language Fish LLC (doing business as www.certifiedtranslate.com), a professional document translation company, attest that the language translation completed by Language Fish's certified professional translators, represents, to the best of our judgment, an accurate and correct interpretation of the terminology/content of the source document(s). **This is to certify the correctness of the translation only.** We do not guarantee that the original is a genuine document or that the statements contained in the original document(s) are true.

IN WITNESS WHEREOF, Language Fish LLC has caused the Certificate to be signed by its duly authorized officer(s).

**By:**   Sean Kirschenstein, Director          **Date:**   September 26, 2018

A copy of the translated version(s) is attached to this statement of certification.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles

On _Sept. 26, 2018_ before me, _Kristin Gail Chamberlain_, Notary Public, appeared _Sean Kirschenstein_, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _K Nstn CMh_

KRISTIN GAIL CHAMBERLAIN
Commission # 2141660
Notary Public - California
Los Angeles County
My Comm. Expires Feb 7, 2020

D☐P☐ Exhibit _84  7_
Deponent _Wong_
Date _3|7|19_ Rptr _RW_

Stock Code: 600707      Stock abbreviation in Chinese: 彩虹股份      Document Number: L2007-022

# IRICO Display Devices Co., Ltd.

## Announcement of Self-Inspection Report and Rectification Plan Concerning the "Campaign to Strengthen Corporate Governance of the Listed Company"

IRICO Display Devices Co., Ltd (the "Company") and all members of the board of directors of the Company warrant that there are no false representations or misleading statements contained in, or material omissions from this announcement, and severally and jointly accept responsibilities for the truthfulness, accuracy and completeness of this announcement.

### I. Special notes: issues in corporate governance that need improvement

According to China Securities Regulatory Commission's *Notice on Issues Concerning Campaign to Strengthen Corporate Governance of Listed Companies*, IRICO Display Devices Co., Ltd has set up a special working group, with the Company's chairman as the primary responsible person, and has developed specific action plans. For the sake of integrity and compliance with applicable laws and regulations (including the Company Law and Securities Law of the People's Republic of China) and internal rules and policies (including the Company's *Articles of Association*), the special working group has conducted self-inspection of corporate governance as per each requirement set forth in the Notice. After thorough self-examination, the Company was found to have the following main issues in corporate governance that need improvement:

1. Further improvement of the Company's corporate governance structure, establishment of an independent director system, setup of a nomination committee of the board of directors, and better performance of each specialized committee and independent director of the board of directors;

2. Further improvement of the Company's corporate governance system, perfect and amend the Company's "Management System of Raised Funds" and "Administrative Measures on Information Disclosure" based on applicable regulations;

3. Improvement of the Company's shareholder voting system regarding important issues, in order to properly uphold the rights of shareholders to vote at the general meeting of shareholders and enable them to exercise their rights as shareholders;

4. Further standardize related-party transactions, implement procedures for examining and approving related-party transactions in strict accordance with the *Rules Governing the Listing of Stocks on Shanghai Stock Exchange* and the Company's *Articles of Association*; and effective supervision by independent directors, in order to ensure the compliance, fairness, and proper disclosure of related-party transactions;

5. Further improvement of the Company's internal control mechanism; enhancing awareness of department heads and management at all levels towards risk management and internal control, in order to improve management efficiency; regular examination and evaluation of the internal control mechanism, in order to determine its integrity, rationality and effectiveness.

1E_Translation

**II. Overview of corporate governance**

Since the Company was listed, its operations have been managed in strtict accordance with applicable laws, regulations and rules including the Company Law and Securities Law of the People's Republic of China, the Code of Corporate Governance for Listed Companies in China, and the Company's *Articles of Association*. The Company has established a relatively robust corporate governance structure, and has basically achieved compliance with relevant corporate governance requirements for listed companies, mainly in the following aspects:

1. Functioning of general meetings of shareholders

The Company's general meetings of shareholders, including the procedures for convening and holding the general meetings, meeting notices, appointment of proxies, and voting procedure, have been executed in strict accordance with the *Company's Articles of Association* and *Rules of Procedure for General Meetings of Shareholders*. Voting procedure standardization and minutes of the general meetings of shareholders are complete. All previous general meeting of shareholders were witnessed by lawyers on site, with legal opinions issued and published in a timely manner.

2. Functioning of the board of directors

The Company has established *Rules of Procedure for Meetings of the Board of Directors*, but has not yet developed an Independent Director System. The procedures for convening and holding meetings of the board of directors have been executed in accordance with applicable rules and regulations including the *Rules Governing the Listing of Stocks on Shanghai Stock Exchange*, and the Company's *Articles of Association* and *Rules of Procedure for Meetings of the Board of Directors*.

3. Functioning of the board of supervisors

The Company has established *Rules of Procedure for Meetings of the Board of Supervisors*. The number and composition of members of the board of supervisors are in compliance with applicable laws and regulations. The Company's supervisors have conscientiously performed their duties to supervise and audit the Company's operations, related-party transactions, financial status, and performance of senior executives as per the Company's *Articles of Association* and *Rules of Procedure for Meetings of the Board of Supervisors*.

4. Performance of managers

The Company has established "Working Rules for the General Manager" in accordance with the *Company Law of the People's Republic of China* and the Company's *Articles of Association*, in order to supervise the organization and conduct of managers, maintain normal operations of the Company, and protect the rights and interests of shareholders. The management team of the Company is in charge of operations management of the Company; each member of the management team is able to control daily production and operation activities of the Company effectively within the scope of their respective duties.

5. Internal control of the Company

According to applicable laws and regulations, the Company has established a relatively complete, effective and reasonable internal control mechanism that adapts to the Company's asset structure, business models, development status and management practice, in order to improve internal management, ensure normal operations, maintain the security and integrity of corporate assets, prevent frauds, and achieve the Company's business objectives. The Company's internal control mechanism mainly includes: *Articles of Association* and the system of "three meetings", an information disclosure management system, job duty standards, a financial control system, a human resources

2                                                                                              2E_Translation

management system, a quality management system, an equipment and parts management system, a production management system, a safety management system, a sales management system, and a digital information management system. The Company's relatively complete, effective, logical internal control mechanism has ensured normal production operations of the Company and achieved the goal of controlling business risks effectively. In the future, the Company will further optimize its internal control mechanism, so that it is more efficient and practical to meet the Company's development strategies and business objectives.

6. The Company's situation re: "Three Separates, Two Independents" with the controlling shareholder

(1) In business operations

The Company's business is independent from the controlling shareholder. The Company's production systems are completely independent from the controlling shareholder. The Company has signed agreements on related-party transactions with controlling shareholder for power supply based on market prices. The Company has an independent procurement and sales and marketing system; there is no horizontal competition between the Company and its controlling shareholder.

(2) In personnel management

The Company has signed labor contracts with all personnel. The Company's labor, HR and salary management is independent from the controlling shareholder. The Company's general manager holds office on a full-time basis. The general manager and other senior executives of the Company do not receive wages from controlling shareholder's units.

(3) In asset management

The independence of the Company's assets is complete. The Company's land use rights, real estate ownership, industrial property rights, and trademark rights are clearly defined and documented. The Company has signed agreements with controlling shareholder and its related subsidiaries regarding use of trademarks, real estate, land lease, and/or other services, and has completed all necessary examination and approval procedures.

(4) In production and administration

The company's production, operations and administration management are completely independent of the controlling shareholder; there exists no situation where controlling shareholder has directly or indirectly interfered in the Company's establishing internal institutions.

(5) In financial management

The Company has established an independent financial accounting department, developed independent financial accounting and financial management systems, opened independent bank accounts, and pays taxes independently according to applicable laws and regulations.

7. Information disclosure

The Company has established *Administrative Measures on Information Disclosure*, *Management Rules for Internal Reporting of Important Information*, and *Rules for Investor Relation Management* in accordance with applicable laws and regulations. The Company has strictly followed the rules and regulations of China Securities Regulatory Commission and Shanghai Stock Exchange on information disclosure, and has fulfilled its information disclosure obligations in a proper manner.

8. Incentive and constraint mechanism

The Company has established an effective performance evaluation system, but has not implemented an equity incentive mechanism.

9. Investor relations

The company has earnestly developed investor relations management. To ensure compliance and effectiveness of investor relations management, the Company has established *Rules for Investor Relation Management*, which set forth the objectives, principles, activities and work of investor relations management, as well as organization and implementation of activities and work related to investor relations management. The Company has a team of specialists responsible for investor relations management and another team of specialists responsible receiving visiting investors. The Company communicates with investors through various channels, such as reception of visiting investors, phone inquiries, mails, emails, on-site visits, one-on-one communication, media interviews and reports.

10. The Company has amended its *Articles of Association*, *Rules of Procedure for General Meetings of Shareholders*, *Rules of Procedure for Meetings of the Board of Directors*, and *Rules of Procedure for Meetings of the Board of Supervisors*. The Company will continue to improve its corporate governance-related systems in accordance with changes in applicable laws and policies and requirements of regulatory authorities.

### III. Problems in corporate governance and reasons

#### (I) Establishment of an independent director system

The Company will establish an *Independent Director System* in accordance with *the Company Law of the People's Republic of China*, *Guidelines for the Introduction of Independent Directors into Listed Companies*, *Provisions on Strengthening Protection of the Rights and Interests of General Public Shareholders*, and the Company's *Articles of Association*, in order to enable independent directors to perform their duties effectively, protect the Company's interest as a whole, and facilitate corporate operations in a compliant manner.

#### (II) Establishment of a nomination committee of the board of directors

Currently the Company's board of directors has established subordinate committees including a remuneration committee, an audit committee, and an investment strategy committee, but has not established a nomination committee. To optimize the composition of the board of directors and improve corporate governance, the Company will set up a nomination committee of the board of directors as soon as possible and elect committee members to develop "*Rules for the Nomination Committee of the Board of Directors*".

#### (III) Amendment of the Fund Raising Management System

The Company has already established a Fund Raising Management System. The Company will amend its Fund Raising Management System in accordance with the "*Notice on Strengthening Management of Funds Raised by Listed Companies*" recently issued by China Securities Regulatory Commission.

#### (IV) Amendment of the Administrative Measures on Information Disclosure

The Company has already established an Administrative Measures on Information Disclosure. The Company will amend anew its "*Administrative Measures on Information Disclosure*" in accordance with the "*Administrative Measures on Information Disclosure by Listed Companies*" issued by China Securities Regulatory Commission, in order to supervise information disclosure by the Company and/or any relevant information disclosure obligor, improve management of information disclosure-related affairs, and protect the rights and interests of investors.

(V) Management of related-party transactions to ensure fairness and compliance with regulatory requirements

The Company will improve management of related-party transactions, implement strict procedures for examining and approving related-party transactions in strict accordance with the *Rules Governing the Listing of Stocks on Shanghai Stock Exchange* and the Company's *Articles of Association*, and enable independent directors to perform their duties in supervision effectively, in order to ensure the fairness, proper disclosure, and compliance of the related-party transactions with regulatory requirements.

**(VI) Further improvement of the Company's internal control mechanism**

The Company will improve its internal control mechanism, enhance the awareness of department heads and staff members at all levels towards risk management and internal control, and examine and evaluate the internal control mechanism regularly, in order to determine its integrity, rationality and effectiveness.

**(VII) Further improvement in the Company's shareholder voting system regarding important issues**

According to China Securities Regulatory Commission's *Provisions on Strengthening Protection of the Rights and Interests of General Public Shareholders* and *Rules on Shareholders' General Meetings of Listed Companies*, the Company will provide a safe, economical and convenient online voting system for shareholders to exercise their rights at general meetings of shareholders regarding 5 categories of important issues that involve issuance of new shares, issuance of convertible bonds, placement of shares to original shareholders, major assets restructuring, or debt/equity swaps, in order to protect the rights and interests of general public shareholders and enable them to have a greater say.

**IV. Rectification measures, rectification timeframe and responsible persons**

According to the above results of self-inspection, the Company has developed the following rectification plan as per applicable laws and regulations:

1. In the future, the Company will continue to create conditions for training directors, supervisors, and senior executives and actively participate in corporate governance-related trainings organized by the regulatory authorities, in order to enable the directors, supervisors and senior executives to understand and follow relevant requirements for corporate governance, perform their duties more effectively, and improve their performance in decision-making and business management and compliance with regulatory requirements. The Company will arrange relevant staff to attend trainings required by the regulatory authorities, and the responsible person is the Company's secretary of the board of directors.

2. According to applicable laws and regulations, the Company will establish and improve its corporate governance structure and systems, which should be completed by the end of August 2007, and the responsible person is the secretary of the board of directors.

3. According to China Securities Regulatory Commission's *Provisions on Strengthening Protection of the Rights and Interests of General Public Shareholders* and *Rules on Shareholders' General Meetings of Listed Companies*, the Company will improve its voting system regarding important issues and provide online voting for shareholders at

general meetings with regard to important issues that involve issuance of new shares, etc., in order to protect the rights and interests of the shareholders; the responsible person is the secretary of the board of directors.

The Company will implement the above rectification measures according to the timeframe requirements in the *"Notice on Issues Concerning Campaign to Strengthen Corporate Governance of Listed Companies"* issued by Shanxi Securities Regulatory Bureau.

### V. Good corporate governance practices with features

In order to improve corporate governance, the Company took the lead in introducing independent directors to the board of directors in 2002. The Company has also established specialized committees of the board of directors; in particular, the remuneration and appraisal committee meets at the end of each year to review the performance of each senior executive in the year. We will continue to optimize our corporate governance systems in the future.

### VI. Other matters

The Company's "Self-Inspection Report and Rectification Plan Concerning the Campaign to Strengthen Corporate Governance of the Listed Company" has been reviewed and approved by the board of directors. According to the requirements of China Securities Regulatory Commission and Shanxi Securities Regulatory Bureau, the Company strives to ensure the success of the campaign by collecting advice or comments of investors and the public on the Company's corporate governance results and rectification plans and providing an interactive platform for the "campaign to strengthen corporate governance of the listed company". Detailed contacts of the platform are as follows:

| | |
|---|---|
| Tel: | 029-88314617; 029-33333109 |
| Fax: | 029-88314617; 029-33333109 |
| Email: | gfoffice@ch.com.cn |
| Email for public comments: | |
| Department of Listed Company Supervision, CSRC: | gszl@csrc.gov.cn |
| Shanghai Stock Exchange: | List22@secure.sse.com.cn |
| Shanxi Securities Regulatory Bureau: | xa_gszl@csrc.gov.cn |

**IRICO Display Devices Co., Ltd.**

**August 15, 2007**

6E_Translation

# IRICO Display Devices Co., Ltd.
## Self-Inspection Report Concerning the "Campaign to Strengthen Corporate Governance of the Listed Company"

According to China Securities Regulatory Commission's *Notice on Issues Concerning Campaign to Strengthen Corporate Governance of Listed Companies*, IRICO Display Devices Co., Ltd has set up a special working group, with the Company's chairman as the primary responsible person, and has developed specific action plans. For the sake of integrity and compliance with applicable laws and regulations (including the Company Law and Securities Law of the People's Republic of China) and internal rules and policies (including the Company's Articles of Association), the special working group has conducted self-inspection of corporate governance as per each requirement set forth in the Notice. The results of the self-inspection are as follows:

### I. Basic information of the Company and its shareholders

### 1. Development history and basic information of the Company

(1) Development history of the Company

IRICO Display Devices Co., Ltd (the "Company") is a joint stock company approved by the Commission for Restructuring the Economic System of Shaanxi Province [approval number: SGF (1992) No.34) ] and established via subscription by three parties: IRICO Group, the former Shaanxi Trust & Investment Co., Ltd of ICBC, and the former Shaanxi Trust & Investment Co., Ltd of CCB. The Company obtained its business license (No. 6100001005467) issued by Shaanxi Provincial Administration for Industry and Commerce on July 29, 1992. The Company's scope of business mainly includes: development, production, and sales of color display devices, electronic products and parts, and raw materials; import and export of technologies and products as a manufacturer or agent, processing with materials, samples or semi-finished products supplied, and compensation trade (except import and export of products or technologies restricted or banned by China); and physical leasing.

The Company was listed on Shanghai Stock Exchange on May 20, 1996. In July 1997, the former Shaanxi Trust & Investment Co., Ltd of ICBC, the former Shaanxi Trust & Investment Co., Ltd of CCB, and the former Shaanxi Trust & Investment Co., Ltd of Bank of China respectively transferred their shares of the Company, 122.88 million shares in total, to IRICO Group, which was approved by China Securities Regulatory Commission. In October 2004, as approved by the State-owned Assets Supervision and Administration Commission of the State Council (the "SASAC"), IRICO Group transferred all of its shares of the Company to IRICO Group Electronics Co., Ltd ("IRICO Electronics"), a wholly-owned company of IRICO Group; IRICO Electronics became the controlling shareholder of the Company and IRICO Group has been the actual controller of the Company.

(2) Basic information of the Company

Chinese name: 彩虹显示器件股份有限公司

English name: IRICO DISPLAY DEVICES CO., LTD

Legal representative: Ximin WANG

Registered address: West Zone, Hi-Tech Development Zone, Xi'an City, Shaanxi Province, China

Business address: No. 16 Fenghui Nan Road, Hi-Tech Development Zone, Xi'an City, Shaanxi Province, China

Postal code: 710075

Email: gfoffice@ch.com.cn

Website: http://www.iricoltd.com.cn

Company listed on: Shanghai Stock Exchange

Stock abbreviation in Chinese: 彩虹股份

Stock code: 600707

(3) Stock issuance and listing

In August 1992, the Company issued 300,000,000 common shares at a price of RMB 1.5 per share, each with a nominal value of RMB 1, which was approved by Shaanxi Branch of the People's Bank of China [approval number: SYF 1992 (54)].

As approved by China Securities Regulatory Commission [approval number: CSRC (1996) No.25] and Shanghai Stock Exchange [approval number: SSE No.024], 92.08 million public shares of the Company were listed on Shanghai Stock Exchange on May 20, 1996.

In June 1996, the Company's fourth general meeting of shareholders reviewed and approved a plan for distribution of profits earned in 1995: issuance of 2 bonus shares for every 10 shares held; date of record: 2 July 1996; ex-dividend date and listing date of bonus shares: 3 July 1996. The total shares of the Company became 360 million shares.

In February 2000, the Company implemented allotment of shares for the year 1999. On the basis of the 360,000,000 total issued shares recorded at the end of 1998, the Company offered 3 rights shares for every 10 existing shares at a price of RMB 9 per rights share. The Company's controlling shareholder subscribed for 28 million shares non-monetary contributions; 12.3191 million rights shares were offered for subscription to legal person shareholders of the Company, and they waived all of their allotment right; general public shareholders subscribed for 33.1488 million rights shares. In total, 61.1488 million rights shares were issued. After the allotment of shares, the Company had a total of 421.1488 million shares.

**2. The Company's control relations and chain, use chart to explain and list final actual controller;**

State-owned Assets Supervision and Administration Commission of the State Council

| 100%

IRICO Group

| 75%

IRICO Group Electronics Co., Ltd

| 42.90%

IRICO Display Devices Co., Ltd

**3. Ownership structure; controlling shareholder or actual controller and its influence on the Company**

(1) Changes in share capital

| Type of shares | Number of shares | Ratio (%) |
|---|---|---|
| I. Shares subject to conditional sales | | |
| Shares held by state-owned legal persons | 180,675,565 | 42.90 |
| Shares held by domestic legal persons | 36,497,619 | 8.67 |
| II. Shares not subject to conditional sales | | |
| RMB-denominated common shares | 203,975,616 | 48.43 |
| III. Total | 421,148,800.00 | 100.00 |

(2) Overview of controlling shareholder and actual controller

Controlling shareholder: IRICO Group Electronics Co., Ltd; legal representative: Daoqin XING; registered capital: RMB 1,941,174,000; date of establishment: September 2004; main scope of business or management activities: development, manufacturing and sales of color display devices and supporting products and materials, electronic devices, vacuum electronic appliances, and various electronic products.

Actual controller: IRICO Group; legal representative: Daoqin XING; date of establishment: September 1995; registered capital: RMB 1 billion; main scope of business or management activities: development and manufacturing of color picture tubes, display tubes, color TV, display units and supporting products, electronic devices, vacuum electronic appliances, and various electronic products.

**4. Whether the controlling shareholder or actual controller "owns a controlling stake in multiple listed companies"; if so, please explain the impact or risk on corporate governance and stable operation of the Company; and whether there are horizontal competitions and/or related-party transactions between the multiple listed companies.**

The Company's controlling shareholder is IRICO Group Electronics Co., Ltd (an H-share company listed on the main board of the Hong Kong Stock Exchange; stock abbreviation: IRICO Electronics; stock code: 0438). IRICO Group is the actual controller of both the Company and IRICO Electronics.

There are no horizontal competitions between the Company, the controlling shareholder, and the actual controller.

There are related-party transactions necessary for daily production and operations between the Company, the controlling shareholder, and the actual controller. The related-party transactions include procurement of parts and components, sales of goods, and power supply.

**5. Institutional investors and their impact on the Company:**

None.

**6. Whether the Company's Articles of Association is revised and improved in accordance with the** *Guidelines for the Articles of Association of Listed Companies* **(as Amended in 2006)**

The Company's *Articles of Association* has been revised and improved in strict accordance with the China Securities Regulatory Commission's *Guidelines for the Articles of Association of Listed Companies* (as Amended in 2006), and has been reviewed and approved at the Company's general meeting of shareholders.

**II. Compliance in operations**

**1. General meetings of shareholders**

**(1) Whether the procedures for convening and holding generals meeting of shareholders are in compliance with applicable rules and regulations**

The procedures for convening and holding the Company's generals meeting of shareholders have been in compliance with applicable rules and regulations including the *Rules Governing the Listing of Stocks on Shanghai Stock Exchange* and the Company's *Articles of Association* and *Rules of Procedure for General Meetings of Shareholders.*

**(2) Whether notices and authorization related to general meetings of shareholders are in compliance with applicable rules and regulations**

Notices and authorization related to the Company's generals meeting of shareholders have been in compliance with applicable rules and regulations including the *Company Law of the People's Republic of China*, the *Rules Governing the Listing of Stocks on Shanghai Stock Exchange*, and the Company's *Articles of Association* and *Rules of Procedure for General Meetings of Shareholders.*

**(3) Whether review of proposals at the general meetings of shareholders are in line with the procedures and whether the right of speech of minority shareholders is protected**

Review of proposals at the Company's general meetings of shareholders has been conducted in accordance with applicable laws and regulations and the Company's *Articles of Association.* At the general meetings of shareholders, all shareholders have been treated equally and facilitated to exercise their rights as shareholders, and the right of speech of minority shareholders has been ensured

**(4) Whether there is any extraordinary general meeting of shareholders proposed by any shareholder**

10E_Translation

holding 10% or more of the Company's shares singly or in aggregate, or whether there is any general meeting of shareholders proposed by the board of supervisors. If so, please explain why.

Up to now, the convener of the Company's general meetings of shareholders has been the board of directors. There have been no extraordinary general meetings of shareholders proposed by any shareholder holding 10% or more of the Company's shares singly or in aggregate; there have been no general meetings of shareholders proposed by the board of supervisors.

(5) Whether there is any provisional motion proposed by any shareholder holding 3% or more of the Company's shares singly or in aggregate. If so, please explain why.

The Company's board of directors received a "Shareholder's Motion on Profit Distribution of IRICO Display Devices Co., Ltd for the Year 2004" submitted by the Company's controlling shareholder IRICO Group Electronics Co., Ltd. As approved the board of directors, the motion, proposing a cash dividend of RMB 3.00 (tax-inclusive) for every 10 shares, was submitted to, reviewed, and approved at the general meeting of shareholders in 2004.

(6) Whether minutes of the general meetings of shareholders are complete and kept safe; whether resolutions of the general meetings have been disclosed in a full and timely manner

The minutes of the Company's general meetings of shareholders are complete and kept safe; resolutions of the general meetings have been disclosed in a full and timely manner.

(7) Whether there was any action or measure regarding important issues carried out before review at a general meeting of shareholders. If so, please explain why.

The Company strictly implements decision-making procedures regarding important issues according to applicable laws and regulations and the Company's Articles of Association and rules of procedures for "three meetings", and has adhered to the decision-making principle of first review, then implement, and there has been no circumstance where the general meeting of shareholders was circumvented.

(8) Whether the Company's general meetings of shareholders had any other situation violating the *Rules on Shareholders' General Meetings of Listed Companies*.

The Company's previous general meetings of shareholders had no situation **violating the *Rules on Shareholders' General Meetings of Listed Companies***.

2. Board of directors

(1) Whether the Company has established *Rules of Procedure for Meetings of the Board of Directors*, *Independent Director System,* and other internal rules.

The Company has established *Rules of Procedure for Meetings of the Board of Directors*, but has not set up an *Independent Director System*.

(2) Composition of the board of directors and source of members

On 20 September 2005, the Company held the second extraordinary general meeting of shareholders of 2005.

At the meeting, the "Motion Submitted by IRICO Group Electronics Co., Ltd Regarding Director Candidates for the Fifth Board of Directors and Supervisor Candidates for the Fifth Board of Supervisors" was reviewed and approved. By cumulative voting, Mr. Ximin WANG, Mr. Wenhui DING, Mr. Jianchao MA, Mr. Xiaohong TIAN, Mr. Shouguo ZHAO, Mr. Tianxi ZHANG, and Mr. Rulin LIU were elected as directors of the fifth board of directors. In particular, Mr. Shouguo ZHAO, Mr. Tianxi ZHANG, and Mr. Rulin LIU are independent directors.

**(3) Resume and main duties of the chairman. Whether the chairman holds office on a part-time basis and whether there is any situation lack of supervision**

About the Chairman Mr. Ximin WANG: from April 2001 to December 2004, Mr. Wang served as the head of the production department of IRICO Group; from December 2004 to July 2005, he served as assistant president and general manager of the operations management department of IRICO Group Electronics Co., Ltd; since August 2005, he has been the vice president of IRICO Group Electronics Co., Ltd. Currently, he is the chairman of the fifth board of directors of this Company.

The chairman holds office at shareholders of the Company on a part-time basis. The Company has a relatively sound mechanism that ensures efficient decision-making and effective business management. The chairman is free from any behavior lackingsupervision.

**(4) Qualification and appointment/dismissal of directors; whether appointment/dismissal of directors of state-controlled listed companies complies with legal procedures**

All directors and independent directors of the Company are qualified according to applicable rules and regulations, and free from any practice that violates laws, regulations, or the Company's Articles of Association. The Company's appointment/dismissal of directors complies with legal procedures.

**(5) Whether each director acts diligently and responsibly; how is their performance in attending meetings of the board of directors and performing other duties**

The directors of the Company have been diligent and responsible in performing their duties, keeping abreast of the Company's management and business operations, reviewing the Company's periodic reports, and ensuring the truthfulness, accuracy and completeness of information disclosed by the Company. In addition, the directors of the Company have attended meetings of the board of directors in person or by an authorized agent according to the *Rules of Procedure for Meetings of the Board of Directors*, provided opinions and/or suggestions at the meetings, and voted independently on proposals discussed at the meetings.

**(6) Professional performance each director: whether job requirements are clearly defined and whether each director acts professionally in important decisions and investments of the Company**

Each director of the Company is professional and experienced in their respective fields of expertise, and they have provided professional advice and suggestions regarding important decisions and investments of the Company.

**(7) The number and proportion of part-time directors, and their impacts on the Company's operations; whether there is a conflict of interest between directors and the Company, and whether the conflict of interest is handled in an appropriate manner**

The Company has 3 part-time directors, accounting for 42.86% of the total number of directors. These part-time directors have a comprehensive understanding of the industry's development, enabling the Company to obtain more useful industry information; these directors also provide professional advice to help the Company make better decisions. The part-time directors exercise their rights within the scope of authority granted by the board of directors,

which has no adverse effect on the Company's operations, and there is no conflict of interest.

**(8) Whether the procedures for convening and holding meetings of the board of directors are in compliance with applicable rules and regulations**

The procedures for convening and holding meetings of the board of directors have been in compliance with applicable rules and regulations including the *Rules Governing the Listing of Stocks on Shanghai Stock Exchange* and the Company's *Articles of Association* and *Rules of Procedure for Meetings of the Board of Directors*.

**(9) Whether notices and authorization related to meetings of the board of directors are in compliance with applicable rules and regulations**

The notices and authorization related to meetings of the board of directors have been in compliance with applicable rules and regulations including the *Rules Governing the Listing of Stocks on Shanghai Stock Exchange*, and the Company's *Articles of Association* and *Rules of Procedure for Meetings of the Board of Directors*.

**(10) Whether the board of directors has established subordinate committees, such as nomination committee, remuneration committee, audit committee, and investment strategy committee; the division of responsibilities and operations of each committee**

The Company's board of directors has established subordinate committees, including a remuneration committee, an audit committee, and an investment strategy committee, except a nomination committee.

Division of responsibilities and operations of each committee:

Main duties of the Strategy Committee: to conduct researches and provide advice on the Company's long-term development strategy and major investment decisions.

Main duties of the Audit Committee: to give proposals on hiring or replacing an external audit agency, supervise the Company's internal audit system and its implementation, facilitate communication between internal and external audits, audit the Company's financial information and disclosure, and review the Company's internal control mechanism.

Main duties of the Remuneration and Appraisal Committee: to study the criteria for appraisal of directors and managers, conduct appraisal and give advice, and study and review remuneration policies and plans for directors and senior executives.

Up to now, the division of responsibilities of the three specialized committees has been clear, and their overall performance has been satisfactory.

**(11) Whether minutes of the meetings of board of directors are complete and kept safe; whether resolutions of the meetings have been disclosed in a full and timely manner**

The minutes of the meetings of the board of directors are complete and kept safe; resolutions of the meetings have been disclosed in a full and timely manner.

**(12) Whether any resolution of the board of directors is signed by authorized agents**

Each resolution of the board of directors has been signed by each director present at the meeting or by a director authorized by the director.

13E_Translation

**(13) Whether any resolution of the board of directors contains unauthorized modifications that are inconsistent with voting results**

No resolution of the board of directors contains unauthorized modifications that are inconsistent with voting results.

**(14) Whether independent directors have been diligent and responsible in supervising the Company's important production and operation decisions, foreign investments, nomination, remuneration and assessment of senior executives, and internal audit**

The Company has consulted or communicated with the independent directors before making important decisions regarding production, operations, nomination, remuneration and assessment of senior executives, internal audit, etc. The main duties of the independent director in supervision are to give independent opinions at meetings of the board of directors and provide independent comments on special issues. The Company's independent directors have played a supervisory and advisory role in above-mentioned important decisions.

**(15) Whether the performance of duties of the independent directors is affected by major shareholders and/or the actual controllers of the Company**

The Company's independent directors have performed their duties independently in accordance with the Articles of Association, and their performance of duties is not affected by major shareholders and/or the actual controllers of the Company.

**(16) Whether the performance of duties of the independent directors is fully supported by relevant departments and personnel of the Company**

The independent directors of the Company have been able to work independently according to the law, and their work has been actively supported by the office of the board of directors. The secretary of the board of directors is responsible for communication and liaison with the independent directors.

**(17) Whether any independent director was dismissed without justifiable reasons before the expiration of his or her term of office, whether such situation was handled appropriately;**

No independent director of the Company was dismissed before the expiration of his or her term of office.

**(18) Whether the work schedule of the independent directors is appropriate, and whether they have been absent from 3 consecutive meetings of the board of directors**

The work schedule of the independent directors is appropriate, and none of them has been absent from 3 consecutive meetings of the board of directors.

**(19) Whether the secretary of the board of directors is a senior executive of the Company and how was the secretary's performance**

The secretary of the board of directors is a senior executive of the Company. The secretary of the board of directors has performed duties according to applicable laws and regulations and the Company's *Articles of Association* and other internal management rules, specifically in terms of ensuring the compliance of "three meetings" and information disclosure with regulatory requirements, and conducting investor relations management effectively, and maintaining communications with the regulatory authorities.

**(20) Whether any limited investment authority has been granted to the board of directors at a general meeting of shareholders, and whether the authority is reasonable and legal and effectively monitored**

The general meeting of shareholders authorized the board of directors to make investments limited as follows:

1. The board of directors has the authority to decide on foreign investments if: the value of a single investment project does not exceed 15% of the latest audited net asset value of the Company; the annual cumulative investments does not exceed 50% of the latest audited net asset value of the Company.

The board of directors has the authority to decide on acquisition or sale of assets if: the value of a single asset does not exceed 15% of the latest audited net asset value of the Company; acquisition of assets from or sales of assets to the same party within 12 consecutive months for no more than three times.

The board of directors has the right to decide on asset-backed projects if their annual accumulated amount does not exceed 50% of the latest audited net asset value.

2. The board of directors has the right to decide on related-party transactions if the contract amount of a single transaction or the accumulated amount of transactions of the same type within 12 consecutive months that does not exceed 5% of the Company's latest audited net asset value.

3. Limits on the board of directors' authority to decide on external guarantees are:

(1) The amount of a single guarantee does not exceed RMB 30 million;

(2) The accumulated amount of guarantee for the same object does not exceed RMB 30 million;

(3) The accumulated amount of guarantee does not exceed 5% of the Company's latest audited net asset value.

The above authority is in line with applicable laws and regulations and has been monitored effectively in practice. Up to now, the Company has no external guarantees.

**3. Board of supervisors**

**(1) Whether the Company has established *Rules of Procedure for Meetings of the Board of Supervisors* or similar rules;**

The Company's board of supervisors has established *Rules of Procedure for Meetings of the Board of Supervisors*.

**(2) Whether the composition of the board of supervisors and source of members meet regulatory requirements**

The Company's board of supervisors consists of three supervisors. 2 supervisors are elected at a general meeting of shareholders; 1 supervisor is a staff representative. The composition of the board of supervisors and source of members are in compliance with applicable laws and regulations and the Company's Articles of Association.

**3) Qualification and appointment/dismissal of supervisors**

On 20 September 2005, the Company held the second extraordinary general meeting of shareholders of 2005.

At the meeting, the "Motion Submitted by IRICO Group Electronics Co., Ltd Regarding Director Candidates for the Fifth Board of Directors and Supervisor Candidates for the Fifth Board of Supervisors" was reviewed and approved. By cumulative voting, Mr. Di GE and Mr. Yueping WEN as (shareholder supervisors) and Mr. Jiashun LI (as a staff supervisor) were elected as supervisors of the fifth board of supervisors.

All supervisors of the Company are qualified according to applicable rules and regulations, and free from any practice that violates laws, regulations, or the Company's Articles of Association. The Company's appointment/dismissal of supervisors complies with legal procedures.

### (4) Whether the procedures for convening and holding meetings of the board of supervisors are in compliance with applicable rules and regulations

The procedures for convening and holding meetings of the board of supervisors have been in compliance with applicable rules and regulations including the *Rules Governing the Listing of Stocks on Shanghai Stock Exchange* and the Company's *Articles of Association* and *Rules of Procedure for Meetings of the Board of Supervisors.*

### (5) Whether notices and authorization related to meetings of the board of supervisors are in compliance with applicable rules and regulations

The notices and authorization related to meetings of the board of supervisors have been in compliance with applicable rules and regulations including the *Rules Governing the Listing of Stocks on Shanghai Stock Exchange* and the Company's *Articles of Association* and *Rules of Procedure for Meetings of the Board of Supervisors.*

### (6) Whether the board of supervisors has vetoed any resolution of the board of directors in the past 3 years, discovered and corrected inaccuracies in the Company's financial reports, or has found and corrected any illegal or inappropriate behavior of any director or the general manager in performing their duties;

The board of supervisors has neither vetoed any resolution of the board of directors in the past 3 years, discovered errors in the Company's financial reporting, nor found any illegal or inappropriate behavior of any director or the general manager in performing their duties.

### (7) Whether minutes of the meetings of board of supervisors are complete and kept safe; whether resolutions of the meetings have been disclosed in a full and timely manner

The minutes of the meetings of the board of supervisors are complete and kept safe; resolutions of the meetings have been disclosed in a full and timely manner.

### (8) Whether the supervisors have been diligent and responsible in performing their supervisory duties

Members of the board of supervisors have been diligent and responsible in performing their supervisory duties. The board of supervisors serves to supervise the Company's directors, managers, financial officers, secretary of the board of directors, and other senior executives by attending meetings of the board of directors and general meetings of shareholders, holding meetings of the board of supervisors, and auditing quarterly, semi-annual and annual financial reports of the Company, and reviewing and providing independent opinions on related-party transactions and important issues of the Company.

### 4. Managers

### (1) Whether the Company has established rules of procedure for management meetings or similar rules;

The Company has established *Working Rules for the General Manager* in accordance with *the Company Law of the People's Republic of China* and the Company's *Articles of Association*, in order to supervise the behavior of the

16E_Translation

general managers, maintain normal operations of the Company, and protect the rights and interests of shareholders.

**(2) Whether the Company's managers especially the general manager are selected by competition, and whether the Company has established an rational personnel selection mechanism**

The Company has one general manager, nominated by the chairman and appointed/dismissed by the board of directors. The Company has one secretary of the board of directors, nominated by the chairman and appointed/dismissed by the board of directors. The Company has 2 deputy general managers and 1 chief accountant, nominated by the general manager and appointed/dismissed by the board of directors.

**(3) Resume of the general manager; whether the general manager is from a controlling shareholder of the Company**

Resume of the general manager: from May 2001 to August 2005, Mr. Wenhui DING had been a deputy general manager of the Company; since August 2005, he has been the general manager of the Company.

The general manager is not from any controlling shareholder of the Company.

**(4) Whether the managers can effectively control daily production and operations of the Company**

The management team of the Company is in charge of operations management of the Company; each member of the management team is able to control daily production and operation activities of the Company effectively within the scope of their respective duties.

**(5) Whether the managers are stable during their term of office**

The Company's managers have been basically stable during their terms of office.

**(6) Whether there is a responsibility system for managers during their term of office; how is their recent performance; whether there are incentive and punishment measures**

The Company has established a target-oriented performance appraisal system. Senior executives are evaluated on a monthly and annual basis according to their completion of business targets and performance of duties. The monthly evaluation is performed by using key performance indicators (KPI); in annual evaluation, the senior executives should report on their work to the board of directors. Assessment results are used as the basis for salary and promotion. The Company will further improve its performance standards and related rules for evaluation of directors, supervisors, and senior executives.

**(7) Whether any of the managers acts beyond his or her authority; whether the board of directors and the board of supervisors are able to supervise and restrict the managers effectively; and whether there is a tendency of "insider control"**

No manager of the Company has acted beyond his or her authority; the board of directors and the board of supervisors are able to supervise and restrict the managers effectively; there is no tendency of "insider control".

**(8) Whether the Company has established an internal accountability mechanism for managers and whether their duties and authority are clear**

The Company has established a detailed "Management Guide", including rules on management of safety, production, quality, procurement, and sales, as well as rules on rewards and punishments. The Company shall hold management personnel at all levels responsible for any negligence, intentional act or illegal behavior which is detrimental to the Company's interests. The responsibilities of the Company's management personnel are clearly divided and a balance between authority and responsibility is maintained.

**(9) Whether senior executives including managers perform their duties faithfully and act in the best interests of the Company and all shareholders; and whether any senior executive who fails to perform his or her duty or goes against integrity is punished according to applicable rules and regulations**

The Company's senior executives including managers have performed their duties faithfully and acted in the best interests of the Company and all shareholders. No senior executive fails to perform his or her duty or goes against integrity.

**(10) Whether any of the directors, supervisors and senior executives has been involved in any illegal trading of the Company's shares in the past three years; and if so, whether the Company has taken corresponding measures**

The directors, supervisors, and senior executives have not been involved in any illegal trading of the Company's shares in the past three years.

**5. Internal control of the Company**

**(1) Whether the Company's internal management mechanism is well-established and effectively implemented**

According to applicable laws and regulations, the Company has established a relatively complete, effective and reasonable internal control mechanism that adapts to the Company's asset structure, business models, development status and management practice, in order to improve internal management, ensure normal operations, maintain the security and integrity of corporate assets, prevent frauds, and achieve the Company's business objectives. The Company's internal control mechanism mainly includes: *Articles of Association* and the "three meetings" system, information disclosure management system, job duty standards, a financial control system, a human resources management system, a quality management system, an equipment and parts management system, a production management system, a safety management system, a sales management system, and a digital information management system. The internal control mechanism is able to ensure normal operations of the Company and control business risks effectively. In the future, the Company will further optimize its internal control mechanism, so that it is more efficient and practical to meet the Company's development strategies and business objectives.

**(2) Whether the Company's accounting system is well-established according to regulatory requirements**

The Company has established and improved its accounting system according to applicable laws and regulations.

**(3) Whether the Company's financial management meets regulatory requirements, and whether internal control processes such as authorization and signing/stamping are effectively implemented**

The Company's financial management meets regulatory requirements; internal control processes such as authorization and signing/stamping are effectively implemented and managed by specialists.

**(4) Whether the Company's official seals/stamps are used and managed in a proper manner**

The Company has developed a "seal management system" and implemented the system strictly. Official seals of the Company are managed by specialists.

**(5) Whether the Company's internal management mechanism is similar to that of the controlling shareholder, and whether the Company maintains independence in system construction**

The Company has developed various management systems based on actual situations of the Company and has basically maintained independence in system construction.

**(6) Whether the Company's registered address, address of primary assets, and business address are not in the same area, and whether this has certain impacts on the Company's operations**

The Company's registered address is located in the Hi-Tech Development Zone of Xi'an City, which is good for the Company to make the best of preferential policies and other conditions of the development zone. The Company's primary assets and offices are located in Xianyang City of Shaanxi Province, which has no impacts on the Company's operations.

**(7) Whether the Company achieves effective management of branch offices/subsidiaries, especially off-site ones, and whether any of them has a risk of running out of control**

The Company has appointed directors and supervisors to supervise holding subsidiaries and participate in their decision management. There has been no out-of-control situation.

**(8) Whether the company has established an effective risk prevention mechanism to protect the Company from accidental risks**

The Company has established a risk prevention system and a graded early-warning mechanism, which set forth responsibilities of personnel at all levels for asset risk control. The Company also evaluates asset risk status and improves information communication channels to protect the Company from accidental risks effectively.

**(9) Whether the Company has set up an audit department, and whether the Company's internal auditing and internal control systems are complete and effective**

The Company has set up an audit department; the Company's internal auditing and internal control systems are complete and effective.

**(10) Whether the Company has established a full-time legal affairs department; whether all contracts have been reviewed by in-house lawyers; and how is the performance of the department in ensuring legal operations of the Company**

The Company has not set up a full-time legal affairs department. The Company has engaged a law firm to serve as a long-term legal advisor, providing relevant legal consulting services. The Company's contract management is based on applicable bidding/tender procedures. The contract management department of the controlling shareholder (IRICO Group Electronics Co., Ltd) assists the Company in internal contract review and plays an important role in ensuring legal operations of the Company.

19E_Translation

**(11) Whether the Company's auditor has issued a "Management Recommendation Letter"; how did the auditor evaluate internal management systems of the Company and what rectification measures were taken**

The auditor has not issued a management recommendation letter for the Company.

**(12) Whether the Company has established a fund-raising management system**

The Company has established a fund-raising management system. The Company will amend the management system according to the *Notice on Strengthening Management of Funds Raised by Listed Companies*.

**(13) Whether funds raised by the Company recently have been used to achieve expected results**

The use of funds raised by the Company recently has achieved expected results.

**(14) Whether the original purpose of the funds raised by the Company recently is changed, and whether the change is reasonable and meets regulatory requirements**

According to a resolution of the general meeting of shareholders, the original purpose of the funds raised by the Company recently is changed, and the change is reasonable and meets regulatory requirements.

**(15) Whether the Company has established a long-term mechanism to prevent major shareholders and their affiliates from occupying the Company's funds or acting against the Company's interests**

The Company has a well-established system for fund management and external guarantees. No major shareholders or their affiliates occupy the Company's funds.

**III. Independence of the Company**

**1. Whether the chairman, manager, deputy managers, secretary of the board of directors, financial controller and other personnel of the Company work on a part-time basis for the Company's shareholders and/or their affiliates**

The Company's chairman, general manager, and financial controller work on a part-time basis for the following shareholders and/or their affiliates:

| Name | Name of organization | Position |
|------|---------------------|----------|
| Ximin WANG | IRICO Group Electronics Co., Ltd | Vice president |
| Wenhui DING | Xianyang IRICO Digital Display Co., Ltd | Director and deputy general manager |
| Zhenzhu LIU | Xianyang IRICO Digital Display Co., Ltd | Financial controller |

Xianyang IRICO Digital Display Co., Ltd is a joint venture company funded by the Company and the controlling shareholder. The Company holds 49% of the registered capital of Xianyang IRICO Digital Display Co., Ltd.

The Company's deputy general managers and secretary of the board of directors do not work on a part-time basis for the Company's shareholders and/or their affiliates.

**2. Whether the Company can recruit management personnel and employees independently**

The Company has an independent workforce and can recruit its management staff and employees independently. All the employees have signed labor contracts with the Company. The Company is independent of the controlling shareholder in terms of labor, personnel and wage management.

**3. Whether the Company's departments** (including production department, business management department, procurement and marketing department, and HR department) **are independent, and whether any employee holds the same office at the Company and the controlling shareholder**

The Company's departments (including production department, business management department, procurement and marketing department, and HR department) are independent; no employee holds the same office at the Company and the controlling shareholder.

**4. Whether the ownership of any assets contributed by promoters of the Company is clear, and whether the ownership of such assets has not been transferred to the Company**

The ownership of all assets contributed by promoters of the Company is clear and has been transferred to the Company.

**5. Whether the land use rights relating to the Company's main production and operation sites are clear and independent of major shareholders**

The land use rights relating to the Company's main production and operation sites are clear and independent of major shareholders. Some of the factory buildings and lands used by the Company's subsidiaries (including a glassworks and IRICO Zixun Co., Ltd) are leased from the Company's actual controller – IRICO Group.

**6. Whether the Company's auxiliary production systems and supporting facilities are complete and independent**

The Company's main business is production and sales of color picture tubes. The Company has 4 production lines of color picture tubes; major products include: 54cmFS, 64cmFS, 64cmPF, and 74cmPF color picture tubes. The Company has independent production systems, auxiliary production systems and supporting facilities. Water, electricity and gas sources used for production of the Company are purchased from the Company's actual controller – IRICO Group.

**7. Situation of trademark registration and use; whether the Company's intangible assets (including industrial property rights and non-patented technology) are independent of major shareholders**

The Company has signed a trademark licensing agreement with the actual controller IRICO Group. According to the agreement, IRICO Group allows the Company to use the "IRICO" trademark for a royalty of one thousandth upon all products sold. The Company's industrial assets, intangible assets (including industrial property rights and non-patented technology) are independent of major shareholders.

**8. Whether the Company's accounting department is independent in financial accounting**

The Company has an independent financial accounting department, the Company and its subsidiaries have established independent financial accounting and financial management systems. The Company has independent bank accounts and does not share any bank account with the controlling shareholder.

21E_Translation

The Company pays taxes independently according to applicable laws and regulations, and there has been no tax evasion.

### 9. Whether the Company's procurement and sales departments are independent

The Company has independent procurement and sales systems, and has established a sound management system. The Company has signed related-party transaction agreements with related parties regarding procurement of parts and components and sales of products.

### 10. Whether the Company has signed any agreement for entrusted management of assets with the controlling shareholder or its related parties, and whether such agreement has impacts on the Company's independence in production and operations

The Company has not signed any agreement for entrusted management of assets with the controlling shareholder or its related parties.

### 11. Whether the Company is dependent on the controlling shareholder or other related parties, and whether such dependence has impacts on the Company's production and operations

The Company's top five suppliers of raw materials are all related parties. In 2006, they accounted for about 66% of the Company's total purchases, which means the Company is somewhat dependent on these suppliers, mainly because: IRICO Group, IRICO Electronics and its subordinate manufacturers have a supporting supplier relationship with the Company and its subsidiary IRICO Zixun Co., Ltd; moreover, most of the manufacturers operate in Xianyang. Since most of the parts/components required for the Company's production cannot be purchased from external suppliers and the parts/products supplied by IRICO Group are high-quality, low-price, stably available, and easy to deliver, such related-party transactions enable the Company to make the best of the internal resources of IRICO Group, reduce procurement, marketing and production costs, and increase the Company's efficiency and profitability.

### 12. Whether there is horizontal competition between the Company and the controlling shareholder or other related parties in which the controlling shareholder owns a controlling stake

There is no horizontal competition between the Company and the controlling shareholder or other related parties in which the controlling shareholder owns a controlling stake.

### 13. Whether there are related-party transactions between the Company and the controlling shareholder or other related parties in which the controlling shareholder owns a controlling stake, and whether such related-party transactions are executed according to necessary decision-making procedures

The Company and its subsidiaries have daily related-party transactions with the actual controller, the controlling shareholder and their subordinate parties. The related-party transactions mainly include: procurement of materials, parts/components and power sources from related companies, lease of some factory buildings, and trademark use rights. The Company has implemented necessary decision-making procedures for these related-party transactions; the independent directors have provided independent advice on these transactions at the board of directors; related directors have withdrawn from voting at the board of directors regarding such transactions, and related shareholders have relinquished their rights to vote at the general meeting of shareholders regarding such transactions.

### 14. What is the ratio of profits from related party transactions to total profits, and how do the transactions affect independence of the Company in production and operations?

In 2006, the Company's related party transactions did not bring profits to the Company, and these transactions had no impact on independence of the Company in production and operations.

**15. Is the Company's business dependent on major trading partners (major business partners), and how does the Company prevent risks**

The Company's major trading partners are large-scale TV manufacturers in China, and the Company's business is not dependent on these manufacturers.

**16. Whether each decision of the Company is independent of the controlling shareholder**

Each decision of the Company is independent of the controlling shareholder. The board of directors is the permanent decision-making body of the Company and is accountable to the general meeting of shareholders. The board of directors reviews major decisions regarding business activities of the Company and submits the decisions to the general meeting of shareholders for consideration and approval.

**IV. Transparency of the Company**

**1. Whether the Company has established an information disclosure management system in accordance with the *Administrative Measures on Information Disclosure by Listed Companies*, and whether the system is implemented strictly**

The Company has amended its *Administrative Measures on Information Disclosure* and *Management Rules for Internal Reporting of Important Information* in accordance with the *Administrative Measures on Information Disclosure by Listed Companies*; information disclosure of the Company has been in compliance with regulatory requirements.

**2. Whether the Company has established procedures for preparation, review and disclosure of periodic reports; whether the procedures are implemented strictly; whether the Company's periodic reports in recent years have been disclosed in a timely manner; whether non-standard unqualified opinions have been issued for the Company's annual financial reports, and whether the impacts of issues involved have been eliminated**

The Company has established *Administrative Measures on Information Disclosure*, which set forth procedures for preparation, review and disclosure of the Company's periodic reports. The periodic reports have been prepared, reviewed and disclosed according to applicable rules and regulations and the Company's *Administrative Measures on Information Disclosure*. In recent years, the Company's periodic reports have been disclosed in a timely manner, and no non-standard unqualified opinions have been issued for the Company's annual financial reports.

**3. Whether the Company has developed procedures for reporting, communication, review and disclosure of significant events, and whether the procedures are implemented strictly**

The Company has developed "*Management Rules for Internal Reporting of Important Information*" according to applicable laws and regulations. Each of the Company's significant events has been reported, communicated, reviewed, and disclosed according to said *Management Rules* and the "*Administrative Measures on Information Disclosure*".

**4. What is the authority of the secretary of the board of directors, and whether his/her right to know and make suggestions regarding information disclosure is protected?**

The secretary of the board of directors, as a senior executive of the Company and the designated liaison between the Company and the Stock Exchange, is responsible for:

(1) Timely communication and liaison between the Company, related parties, the Stock Exchange and other securities regulatory agencies;

(2) Handling affairs related to the Company's information disclosure, supervising and urging the Company to establish and implement the information disclosure management system and the internal reporting system for important information, prompting the Company and relevant parties to fulfill information disclosure obligations, and conducting disclosure of periodic and interim reports at the Stock Exchange as required;

(3) Assisting the Company in investor relations management, reception of visiting investors, giving responses to investors' enquiries, and providing investors with information disclosed by the Company;

(4) Preparation for meetings of the board of directors and general meetings of shareholders, and preparation and submission of files to be reviewed at these meetings;

(5) Attending meetings of the board of directors, and making and signing meeting minutes;

(6) Protecting the confidentiality of information to be disclosed by the Company, taking confidentiality measures, prompting all members of the Company's board of directors and relevant insiders to keep the relevant information confidential before it is formally disclosed, and promptly taking remedial measures and reporting to the Stock Exchange in case insider information is disclosed;

(7) Maintaining the Company's register of shareholders, register of directors, and information of major shareholders, directors, supervisors, and senior executives who hold shares of the Company, as well as documents and minutes for the board of directors and general meetings of shareholders;

(8) Assisting directors, supervisors and senior management personnel in understanding applicable laws, regulations and rules on information disclosure, including the "*Rules Governing the Listing of Stocks on Shanghai Stock Exchange*", other rules of the Stock Exchange, and the Company's Articles of Association, as well as their responsibilities in information disclosure set forth in the listing agreement;

(9) Urging the board of directors to exercise its powers according to law; reminding directors of any resolution of the board that goes against applicable laws, regulations and rules including the "*Rules Governing the Listing of Stocks on Shanghai Stock Exchange*", other  rules of the Stock Exchange, and the Company's Articles of Association, and inviting supervisors present at the meeting to give comments; and, recording comments by relevant supervisors and individuals if the board of directors insists on making the above resolution, and reporting to the Stock Exchange promptly.

### 5. Whether the Company's confidentiality mechanism for information disclosure works well; and whether there has been any unauthorized information disclosure or any insider trading behavior

The Company's confidentiality mechanism for information disclosure works well. The Company's information disclosure obligor and insiders shall keep information confidential before it is disclosed publicly. The Company's information disclosure obligor should take necessary measures to control the number of insiders to the minimum possible scope before the information is publicly disclosed. If any person of the Company's consultants, intermediaries and affiliates discloses the Company's information without prior authorization and causes losses to the Company, the Company reserves the right to hold the person accountable for the losses.

24E_Translation

Up to the present, there has been no unauthorized information disclosure or insider trading behavior.

**6. Whether there has been any modification or supplement made after information disclosure; why, and how to prevent similar situation**

The Company modified "(II) Prospects for the Company's Future Development" in "Chapter VII Report of the Board of Directors" of the Company's Annual Report 2005, in accordance with the "*Standards for Contents and Formats of Information Disclosure by Companies Publicly Offering Securities No. 2 - Contents and Formats of Annual Reports*" (revised in 2005) and relevant rules and regulations of Shanghai Stock Exchange. In the future, the Company will prepare and disclose interim and periodic reports of the Company in strict accordance with the "*Standards for Contents and Formats of Information Disclosure by Companies Publicly Offering Securities*".

**7. Whether the Company has received any on-site inspection by regulatory authorities in recent years; or whether the Company has been warned, punished, or ordered to make correction because its information disclosure did not meet regulatory requirements; and whether the Company has taken corresponding rectification measures**

(1) Shaanxi Branch of China Securities Regulatory Commission inspected the Company from October 25th to 29th, 2004, and issued a "Notice on Problems Found in 2004 Annual Inspection of IRICO Display Devices Co., Ltd and Requirements for Rectification" [SZJH (2005) No.41] on February 18, 2005. The Notice points out the Company's problems in operational compliance, financial internal control, securities investment accounting, etc. In response to the Notice, the Company has developed a rectification and taken rectification measures in a timely and satisfactory manner as per the requirements of the regulatory authorities.

(2) Shaanxi Branch of China Securities Regulatory Commission conducted a special inspection on the Company from August 24th to September 25th, 2005, and issued a "Notice of Rectification" [SZJF (2005) No. 69] on October 21st, 2005. The Notice points out Company's problems in short-term investment, financial management, related-party transactions, etc. In response to the Notice, the Company has determined responsibilities of personnel at different levels and taken practical rectification measures in a timely and satisfactory manner as per the requirements of the regulatory authorities.

**8. Whether the Company was criticized or warned by the Stock Exchange because of improper information disclosure**

The Company has never been criticized or warned by the Stock Exchange because of improper information disclosure.

**9. How is the awareness of the Company about proactive information disclosure?**

In addition to fulfilling information disclosure obligations according to regulatory requirements, the Company has been proactive in information disclosure. The Company also organizes directors, supervisors and senior executives to study applicable laws and regulations on information disclosure by listed companies, in order to gain better awareness about information disclosure. The awareness of the Company and information disclosure obligors about proactive information disclosure is growing.

**V. Innovations in corporate governance and overall evaluation**

**1. Whether online voting is implemented at the Company's general meetings of shareholders and how is**

the degree of participation (excluding meetings of shareholders regarding reform of non-tradable shares)

The Company has not implemented online voting at general meetings of shareholders (including annual and extraordinary general meetings of shareholders), except meetings of shareholders regarding reform of non-tradable shares.

### 2. Whether proxy solicitation is performed at the Company's general meetings of shareholders (excluding meetings of shareholders regarding reform of non-tradable shares)

The Company has never performed proxy solicitation at general meetings of shareholders.

### 3. Whether the Company's directors and supervisors are elected by cumulative voting

The directors for the fifth board of directors and supervisors for the fifth board of supervisors are elected by cumulative voting.

### 4. Whether the Company is active in investor relations management, and whether the Company has established working rules and measures for investor relations management

The Company has been active in investor relations management according to the guidelines of regulatory authorities. To ensure compliance and effectiveness of investor relations management, the Company has established *Rules for Investor Relation Management*, which set forth the objectives, principles, activities and work of investor relations management, as well as organization and implementation of activities and work related to investor relations management. The Company has a team of specialists responsible for investor relations management and another team of specialists responsible for investor reception. The Company communicates with investors through various channels, such as reception of visiting investors, phone calls, mails, emails, on-site visits, one-on-one communication, media interviews, and reports.

### 5. Whether the Company attaches importance to corporate culture and what measures are taken

The Company always attaches importance to the construction of its corporate culture. The Company has established an efficient mechanism for personnel selection, training, performance evaluation, and development, which enables the Company to attract and retain talents and build a professional team that drives the Company to a higher level.

### 6. Whether the Company has established an effective performance evaluation system; whether the Company's equity incentive mechanism works well and meet regulatory requirements

The Company has established an effective performance evaluation system, but has not implemented an equity incentive mechanism.

### 7. Whether the Company has taken other innovative measures in corporate governance; whether these measures are effective and what does the result suggest

In order to improve corporate governance, the Company introduced independent directors to the board of directors in 2002. The Company has also established specialized committees of the board of directors; in particular, the remuneration and appraisal committee meets at the end of each year to review the performance of each senior executive in the year. We will continue to optimize our corporate governance systems in the future.

**8. Whether the Company has opinions and suggestions on improving corporate governance and establishment of laws and regulations**

Improving the governance structure of listed companies is of great importance to increase their business efficiency, ensure compliance with regulatory requirements, establish a modern enterprise system, and promote the development of the capital market. Each listed company should establish specialized committees for its board of directors, and make the best of these committees to optimize management systems of the company and improve the company's capacity in decision-making and risk control. In addition, each listed company should strengthen the supervisory role and authority of its board of supervisors, not only in supervision of financial affairs but also in supervision of overall operations of the company.

IRICO Display Devices Co., Ltd

August 15, 2007

证券代码：600707      股票简称：彩虹股份      编号：临 2007-022

## 彩虹显示器件股份有限公司
## 关于"加强上市公司治理专项活动"自查报告和整改计划的公告

**本公司及董事会全体成员保证公告内容的真实、准确和完整，对公告的虚假记载、误导性陈述或者重大遗漏负连带责任。**

一、特别提示：公司治理方面存在的有待改进的问题

根据中国证券监督管理委员会《关于开展加强上市公司治理专项活动有关事项的通知》要求，本公司成立了以董事长为第一责任人的专项工作小组，对该项工作进行了认真细致的部署。公司专项工作小组本着实事求是的原则，严格对照《公司法》、《证券法》等有关法律、行政法规，以及《公司章程》等内部规章制度，并逐条对照通知附件的要求，对公司治理情况进行了自查。经过认真自查，公司治理方面存在以下主要问题有待改进：

1、进一步完善公司治理结构，建立独立董事制度，设立董事会提名委员会，充分发挥公司董事会各专业委员会和独立董事的作用。

2、进一步完善公司治理制度，根据有关规定完善和修订《募集资金的管理制度》、《信息披露管理办法》

3、建立和完善股东对重大事项的表决制度，为公司股东参与股东大会表决、行使股东权利提供保障。

4、进一步规范关联交易，严格按照《公司章程》以及上海证券交易所《股票上市规则》的要求，履行关联交易的审批程序，同时发挥独立董事的监督作用，保证关联交易的规范、公允和充分披露。

5、进一步完善公司内部控制制度的建设，同时加强公司各部门负责人和各级管理人员风险意识和自觉执行内部控制的意识，提高管理水平；定期检查和评估内部控制制度的完整性、合理性以及执行效力。

## 二、公司治理概况

公司上市以来能够严格按照《公司法》、《证券法》、《上市公司治理准则》等法律、法规以及《公司章程》的有关规定规范运作，建立了较为完善的法人治理结构，公司治理的实际情况基本符合有关上市公司治理的规范文件要求，主要体现在以下几个方面：

### 1、股东大会运作情况

公司股东大会的召集、召开程序、会议通知、授权委托等严格按照《公司章程》及《股东大会议事规则》的规定进行，表决程序规范，股东大会会议记录完整。公司历次股东大会均经聘请律师现场出席见证，出具法律意见书并及时公告。

### 2、董事会运作情况

公司已制定《董事会议事规则》，但尚未制定《独立董事制度》。公司董事会的召集、召开程序均符合《上海证券交易所股票上市规则》、《公司章程》和《董事会会议事规则》的相关规定。

### 3、监事会运作情况

公司建立了监事会议事规则，监事会的人数及人员构成符合相关法规的规定。公司监事能根据《公司章程》及《监事会会议事规则》规定，认真履行自己的职责，对公司的依法运作、关联交易、财务状况、高级管理人员履行职责等情况进行有效的监督和审核。

### 4、经理层运作情况

为切实规范经理层的组织及行为，维护公司的正常运作，保证股东的合法权益，根据《公司法》和《公司章程》的相关规定，公司制定了《总经理工作细则》。公司经营层拥有充分的经营管理权，公司经营层的每位成员根据分工的不同履行各自的职责，能够对公司的日常生产经营实施有效的控制。

### **5、公司内部控制情况**

为了规范公司的内部控制，加强内部管理，保证各项业务的正常、规范进行，确保公司资产的安全和完整，防止欺诈和舞弊行为，实现公司的经营管理目标，公司依照国家有关法律法规的规定，根据公司的资产结构和经营方式，结合自身业务发展情况和运营管理经验，建立了较为完整、有效、合理的内部控制制度体系。公司的主要内控制度包括：公司章程和"三会"制度、信息披露管理制

度、岗位职责标准、财务控制制度体系、人力资源管理制度、质量管理制度、设备及备品备件管理制度、生产管理、安全管理、销售管理、信息化管理等业务制度。公司较为完整、有效、合理的内部控制制度体系,保障了公司正常生产经营活动的进行,并达到了有效控制经营风险的目的。未来公司还将根据生产经营及公司发展的实际需要,对公司的内部控制制度作进一步的修改和完善,使内控制度与公司的发展相适应。

6、公司与控股股东"三分开、两独立"方面的情况

（1）业务方面

公司业务独立于控股股东。公司的生产系统完全独立于控股股东,动力供应依据市场价格与控股股东签订了关联交易协议,公司拥有独立的采购和销售系统,与控股股东之间不存在同业竞争。

（2）人员方面

公司全员实行劳动合同制,在劳动、人事、工资管理等方面独立于控股股东。公司总经理专职,总经理及其他高级管理人员没有在控股股东单位领薪。

（3）资产方面

本公司的资产独立完整,土地使用权、房产、工业产权、商标等归属明确,产权明晰。本公司和控股股东及关联子公司签订了商标使用权许可使用协议、房产、土地租赁和综合服务协议,履行了必要的审批程序。

（4）机构方面

公司的生产经营和行政管理完全独立于控股股东,不存在控股股东直接或间接干预本公司设立内部机构的情况。

（5）财务方面

公司设立有独立的财务会计部门,并建立了独立的会计核算体系和财务管理制度,开立了独立的银行帐户,依法独立纳税。

7、信息披露

公司根据有关规定制订了《信息披露管理办法》、《重大信息内部报告制度》、《投资者关系管理制度》等制度。公司能够严格遵守中国证监会和上海证券交易所有关信息披露的法律法规的规定,认真地履行了信息披露义务。

8、激励约束机制

公司已建立了合理的绩效评价体系，但尚未实施股权激励机制。

9、投资者关系

公司一直积极开展投资者关系管理工作，制定了《投资者关系管理制度》，从投资者关系管理的目的、原则和内容、投资者关系活动、投资者关系工作的组织和实施等方面对开展投资者关系工作进行了规范，确保投资者关系管理工作的合规性和有效性。公司指定专人负责投资者关系管理，并安排专人做好投资者来访接待工作。公司通过召开接待投资者来访、电话咨询、邮寄资料或发送电子邮件、现场参观、一对一沟通、媒体采访和报道等多种形式与投资者交流与沟通。

10、公司已修订了《公司章程》、《股东大会议事规则》、《董事会议事规则》和《监事会议事规则》，公司还将根据国家法规政策的变化和监管部门的要求，不断修订和完善公司治理的有关制度。

三、公司治理存在的问题及原因

**（一）、完善独立董事制度**

为了充分发挥独立董事作用，维护公司整体利益，公司将根据《公司法》、《关于在上市公司建立独立董事制度的指导意见》、《关于加强社会公众股股东权益保护的若干规定》和《公司章程》的有关规定，制定《独立董事制度》，强化独立董事职责，促进公司规范运作。

**（二）、设立董事会提名委员会**

目前公司董事会已设立了下属委员会，包括薪酬委员会、审计委员会、投资战略委员会，但尚未设立提名委员会。为优化董事会组成，完善公司治理结构，公司将尽快设立董事会提名委员会并选举委员会委员，制定《董事会提名委员会实施细则》。

**（三）、修订《募集资金的管理制度》**

公司已经制定了《募集资金的管理制度》。公司将根据中国证监会近期发布的《关于加强上市公司募集资金使用管理的通知》要求，对公司原募集资金管理制度进行重新修订。

**（四）、修订《信息披露管理办法》**

公司已经制定了《信息披露管理办法》，为了规范公司及其他信息披露义务人的信息披露行为，加强信息披露事务管理，保护投资者合法权益，公司将按照中国证监会发布的《上市公司信息披露管理办法》的文件要求，对原《信息披露管理办法》进行重新修订。

**（五）、规范关联交易，保证交易公允性**

进一步规范关联交易，严格按照《公司章程》以及上海证券交易所《股票上市规则》的要求，履行关联交易的审批程序，同时发挥独立董事的监督作用，保证关联交易的规范、公允和充分披露。

**（六）、加强公司内部控制制度的建设和执行**

进一步完善公司内部控制制度的建设，同时加强公司各部门负责人和各级管理人员风险意识和自觉执行内部控制的意识，提高管理水平；定期检查和评估内部控制制度的完整性、合理性以及执行效力。

**（七）、建立和完善股东对重大事项的表决制度**

根据中国证监会《关于加强社会公众股股东权益保护的若干规定》和《上市公司股东大会规则》的要求，为了保障社会公众股股东的合法权益，增加他们的话语权，今后公司召开股东大会时，对于公司股东大会审议的事项涉及增发新股、发行可转换公司债券、向原有股东配售股份、重大资产重组、以股抵债、对公司有重大影响的附属企业到境外上市等五大类的情形，公司将向股东提供安全、经济、便捷的股东大会网络投票系统，方便股东行使表决权。

四、整改措施、整改时间及责任人

根据上述自查情况，对照相关法律法规的要求，公司拟订了如下整改计划：

1、公司将在今后的工作中持续为董事、监事、高管人员学习培训创造条件，积极参加监管部门组织的有关公司治理的培训，确保公司董事、监事、高管人员及时了解和掌握有关公司治理方面的规定与要求，促进董事、监事、高管人员更加勤勉地履行职责，提高公司决策和管理的水平和规范性。公司将根据监管部门的培训安排积极组织相关人员参加培训，责任人为公司董事会秘书。

2、公司将按照相关法律法规的规定，建立和完善公司治理结构和制度。相关制度的制定完成时间为 2007 年 8 月底，责任人为公司董事会秘书。

3、公司将根据中国证监会《关于加强社会公众股股东权益保护的若干规定》

5

和 《上市公司股东大会规则》的要求，完善对重大事项的表决制度，在对股东大会所审议的事项涉及增发新股等规定的重大事项进行决策时，提供网络投票，为股东参与股东大会表决，行使股东权利提供保障。责任人为公司董事会秘书。

对于上述整改措施，公司还将严格按照陕西省证监局《关于开展加强上市公司智力专项活动有关事项的通知》的时间要求，认真、积极地落实。

五、有特色的公司治理做法

为提高公司治理水平，公司曾率先于 2002 年在公司董事会成员中增加了独立董事的人选；公司还设立了董事会各专业委员会，其中薪酬与考核委员会在每年度末召开会议，听取每一位高管人员对上一年度的工作述职，并根据工作绩效给予考评。我们还将在以后的工作中不断探讨更好的公司治理制度。

六、其他需要说明的事项

公司《上市公司治理专项活动自查报告及整改计划》已经公司董事会审议通过，根据中国证监会和陕西省证监局关于开展上市公司治理专项活动的要求，为推动专项活动的顺利开展，听取投资者和社会公众对本公司治理情况和整改计划的意见和建议，公司"上市公司治理专项活动"互动平台，具体联系方式如下：

| | |
|---|---|
| 电　　话： | 029-88314617、029-33333109 |
| 传　　真： | 029-88314617、029-33333109 |
| 电子邮箱： | gfoffice@ch.com.cn |
| 公众评议邮箱： | |
| 中国证监会上市公司监管部： | gszl@csrc.gov.cn |
| 上海证券交易所： | List22@secure.sse.com.cn |
| 陕西省证监局公开邮箱： | xa_gszl@csrc.gov.cn |

彩虹显示器件股份有限公司

二〇〇七年八月十五日

# 彩虹显示器件股份有限公司
## 关于加强上市公司治理专项活动的自查报告

　　根据中国证券监督管理委员会《关于开展加强上市公司治理专项活动有关事项的通知》要求，本公司成立了以董事长为第一责任人的专项工作小组，对该项工作进行了认真细致的部署。公司专项工作小组本着实事求是的原则，严格对照《公司法》、《证券法》等有关法律、行政法规，以及《公司章程》等内部规章制度，并逐条对照通知附件的要求，对公司治理情况进行了自查，现将自查情况报告如下：

### 一、公司基本情况、股东状况

### 1、公司的发展沿革、目前基本情况：

　　（1）、公司发展沿革

　　彩虹显示器件股份有限公司（以下简称"本公司"）是经陕西省经济体制改革委员会陕改发[1992]34号文批准，由彩虹集团公司（以下简称"彩虹集团"）、原中国工商银行陕西省信托投资公司、原中国建设银行陕西省信托投资公司三方共同发起，以募集方式设立的股份有限公司。本公司于1992年7月29日向陕西省工商行政管理局申请工商注册登记，营业执照注册号为6100001005467。公司主要从事彩色显示器件、电子产品及零部件、原材料的生产、开发、经营，自营和代理各类商品及技术的进出口业务、承办"三来一补"业务（国家限制或禁止进出口的商品和技术除外）及实物租赁等。

　　本公司股票于1996年5月20日在上海证券交易所挂牌交易。1997年7月经中国证监会批准同意，原中国工商银行陕西省信托投资公司、原中国建设银行陕西省信托投资公司、原中国银行陕西省信托投资公司分别将其持有的本公司股份共计12,288万股转让给彩虹集团。2004年10月经国务院国有资产监督管理委员会（以下简称"国资委"）批复，彩虹集团将其持有本公司的股份全部转让给彩虹集团独家发起设立的彩虹集团电子股份有限公司（"彩虹电子"），彩虹电子成为本公司的控股股东，彩虹集团公司为本公司的实际控制人。

（2）、公司基本情况

中文名称：彩虹显示器件股份有限公司

英文名称：IRICO DISPLAY DEVICES CO.,LTD

法定代表人：王西民

注册地址：西安高新产业开发区西区

办公地址：西安高新技术开发区西区沣惠南路 16 号

邮政编码：710075

电子信箱：gfoffice@ch.com.cn

公司国际互联网网址：http://www.iricoltd.com.cn

股票上市交易所：上海证券交易所

股票简称：彩虹股份

股票代码：600707

（3）、股票发行与上市情况

1992 年 8 月，经中国人民银行陕西省分行陕银复 1992(54) 号文件批复，公司按照每股 1.5 元的价格发行普通股股份 30000 万股，每股面值 1 元。

1996 年 5 月，经中国证券监督管理委员会证监发审字 (1996)25 号文批准、上海证券交易所上证上字第 (024) 号文审核同意，公司社会公众股 9208 万股于 1996 年 5 月 20 日在上海证券交易所挂牌上市。

1996 年 6 月，公司第四次股东大会审议通过 1995 年度利润分配方案：每 10 股送 2 股，股权登记日 1996 年 7 月 2 日，除权及红股上市日 7 月 3 日，公司股本总额变更为 36000 万股。

2000 年 2 月，本公司实施了 1999 年度配股。以 1998 年末股份总数 36000 万股为基数，按每 10 股配 3 股的比例向全体股东配售，配股价格每股人民币 9 元。本公司控股股东以非货币方式认购 2800 万股；社会法人股股东应配 1231.91 万股，放弃全部配股权；社会公众股股东配售 3314.88 万股，配售股份总数为 6114.88 万股。配股完成后，公司股份总数变更为 42114.88 万股。

**2、公司控制关系和控制链条，请用方框图说明，列示到最终实际控制人；**



**3、公司的股权结构情况，控股股东或实际控制人的情况及对公司的影响；**

（1）、股份变动情况表

| 股份类别 | 持股数量 | 比例(%) |
|---|---|---|
| 一、有限售条件股份 | | |
| 　国有法人持股 | 180675565 | 42.90 |
| 　境内法人持股 | 36497619 | 8.67 |
| 二、无限售条件股份 | | |
| 　人民币普通股 | 203975616 | 48.43 |
| 三、股份总数 | 421148800.00 | 100.00 |

（2）、控股股东及实际控制人具体情况介绍

控股股东：彩虹集团电子股份有限公司；法人代表：邢道钦，注册资本：194,117.40 万元，成立日期：2004 年 9 月，主要经营业务或管理活动：彩色显示器件及其配套产品和材料、电子器件、电真空器件、电子产品的研究、开发、制造、销售。

实际控制人：彩虹集团公司；法人代表：邢道钦，成立日期：1995 年 9 月，注册资本：100,000 万元，主要经营业务或管理活动：彩色显像管、显示管、彩色电视机、显示器及其配套产品、电子器件、电真空器件、电子产品的研究、开发、制造。

**4、公司控股股东或实际控制人是否存在"一控多"现象，如存在，请说明**

**对公司治理和稳定经营的影响或风险，多家上市公司之间是否存在同业竞争、关联交易等情况；**

本公司控股股东为彩虹集团电子股份有限公司（在香港联交所主板挂牌上市的 H 股公司，股票简称：彩虹电子，股票代码：0438），本公司与彩虹电子的实际控制人均为彩虹集团公司。

本公司与控股股东、实际控制人之间不存在同业竞争问题。

本公司与控股股东、实际控制人之间存在着为日常生产经营所必要的关联交易，包括零部件采购、销售商品以及动能供应等关联交易。

**5、机构投资者情况及对公司的影响**

无。

**6、《公司章程》是否严格按照我会发布的《上市公司章程指引（2006 年修订）》予以修改完善。**

《公司章程》已经严格按照中国证监会发布的《上市公司章程指引（2006年修订)》的要求进行了修改和完善，并经股东大会审议通过。

**二、公司规范运作情况**

**1、股东大会**

**（1）股东大会的召集、召开程序是否符合相关规定**

公司股东大会的召集、召开程序均符合《上海证券交易所股票上市规则》、《公司章程》和《股东大会议事规则》的相关规定。

**（2）股东大会的通知时间、授权委托等是否符合相关规定；**

公司股东大会的通知时间、授权委托等符合《公司法》、《上海证券交易所股票上市规则》、《公司章程》和《股东大会议事规则》的相关规定。

**（3）股东大会提案审议是否符合程序，是否能够确保中小股东的话语权；**

公司股东大会提案审议符合法律、法规和《公司章程》规定的相关程序；公司召开股东大会，能够做到平等对待所有股东，为股东行使权利提供便利，并能够确保中小股东的话语权。

**（4）有无应单独或合并持有公司有表决权股份总数 10%以上的股东请求召**

开的临时股东大会，有无应监事会提议召开股东大会？如有，请说明其原因；

截止目前，公司股东大会召开的召集人均为公司董事会，尚未有单独或合并持有公司有表决权股份总数10%以上的股东请求召开临时股东大会的情形，也没有监事会请求召开股东大会的情形。

**（5）是否有单独或合计持有 3%以上股份的股东提出临时提案的情况？如有，请说明其原因；**

本公司曾接到本公司控股股东彩虹集团电子股份有限公司向本公司董事会提交的《关于彩虹显示器件股份有限公司2004年度利润分配的股东提案》，经董事会批准，同意将此提案提交2004年度股东大会审议。提案提出了全体股东按每10股派发现金红利3.00元（含税）的利润分配预案。该提案获得了2004年度股东大会的批准。

**（6）股东大会会议记录是否完整、保存是否安全；会议决议是否充分及时披露；**

公司股东大会会议记录完整并安全保存，会议决议充分及时地进行了披露。

**（7）公司是否有重大事项绕过股东大会的情况，是否有先实施后审议的情况？如有，请说明原因；**

公司按照法律、法规、公司章程和"三会"议事规则的相关规定，严格执行重大事项的决策程序，贯彻先审议后实施的决策原则，不存在绕过股东大会的情形。

**（8）公司召开股东大会是否存在违反《上市公司股东大会规则》的其他情形。**

公司召开的历次股东大会没有违反《上市公司股东大会规则》的情形。

**2、董事会**

**（1）公司是否制定有《董事会议事规则》、《独立董事制度》等相关内部规则；**

公司已制定《董事会议事规则》，尚未制定《独立董事制度》。

**（2）公司董事会的构成与来源情况；**

2005年9月20日，公司召开了2005年度第二次临时股东大会。会议审议

通过了《彩虹集团电子股份有限公司提交的关于本公司第五届董事会董事候选人、监事会股东监事候选人的提案》。大会采用累积投票的方式选举王西民先生、丁文惠先生、马建朝先生、田小红先生、赵守国先生、张天西先生、刘汝林先生为公司第五届董事会董事，其中赵守国先生、张天西先生、刘汝林先生为独立董事。

**（3）董事长的简历及其主要职责，是否存在兼职情况，是否存在缺乏制约监督的情形；**

董事长王西民先生：2001 年 4 月至 2004 年 12 月，任彩虹集团公司生产部部长；2004 年 12 月至 2005 年 7 月，任彩虹集团电子股份有限公司总裁助理、运营管理部总经理；2005 年 8 月起，任彩虹集团电子股份有限公司副总裁。现任本公司第五届董事会董事长。

公司董事长在股东单位兼职。公司相对健全的治理机制保证了公司决策的科学化和经营管理的正常化，董事长不存在缺乏制约监督的情形。

**（4）各董事的任职资格、任免情况，特别是国有控股的上市公司任免董事是否符合法定程序；**

公司全体董事、独立董事的任职资格符合相关规定，不存在与法律、法规和《公司章程》相抵触的情形，任免程序符合法定程序。

**（5）各董事的勤勉尽责情况，包括参加董事会会议以及其他履行职责情况；**

公司董事能够认真、勤勉地行使公司赋予的职权，及时了解公司业务经营管理状况，对公司定期报告签署书面确认意见，保证公司信息披露的真实、准确、完整；公司董事能够按照《董事会议事规则》亲自或委托其他董事参加董事会会议，并在会议上发表自己的意见和建议，并对会议的各项议案独立地进行表决。

**（6）各董事专业水平如何，是否有明确分工，在公司重大决策以及投资方面发挥的专业作用如何；**

公司董事在各自的专业领域具有丰富的专业知识和从业经验，在对公司重大决策以及投资方面都能较好的发挥其专业作用，提出专业意见和建议。

**（7）兼职董事的数量及比例，董事的兼职及对公司运作的影响，董事与公司是否存在利益冲突，存在利益冲突时其处理方式是否恰当；**

公司兼职董事共 3 人，占董事人数的 42.86%。兼职董事更加全面地了解行

业发展情况，使公司能够获得更多的行业资讯，同时也能够提供一些专业化的意见，为公司决策提供帮助。兼职董事严格按照董事会授予的权限行使权利，未对公司运做产生不良影响，也不存在利益冲突。

**（8）董事会的召集、召开程序是否符合相关规定；**

公司董事会的召集、召开程序均符合《上海证券交易所股票上市规则》、《公司章程》和《董事会会议事规则》的相关规定。

**（9）董事会的通知时间、授权委托等是否符合相关规定；**

公司董事会的通知时间、授权委托均符合《上海证券交易所股票上市规则》、《公司章程》和《董事会会议事规则》的相关规定。

**（10）董事会是否设立了下属委员会，如提名委员会、薪酬委员会、审计委员会、投资战略委员会等专门委员会，各委员会职责分工及运作情况；**

公司董事会设立了下属委员会，包括薪酬委员会、审计委员会、投资战略委员会，尚未设立提名委员会。

各委员会职责分工及运作情况：

战略委员会的主要职责是对公司长期发展战略和重大投资决策进行研究并提出建议。

审计委员会的主要职责是：提议聘请或更换外部审计机构、监督公司的内部审计制度及其实施、负责内部审计与外部审计之间的沟通、审核公司的财务信息及其披露、审查公司的内控制度。

薪酬与考核委员会的主要职责是：研究董事与经理人员考核的标准，进行考核并提出建议、研究和审查董事、高级管理人员的薪酬政策与方案。

截止目前，三个专业委员会的职责分工明确，整体运做情况良好。

**（11）董事会会议记录是否完整、保存是否安全，会议决议是否充分及时披露；**

公司董事会会议记录完整并安全保存，会议决议充分及时地进行了披露。

**（12）董事会决议是否存在他人代为签字的情况；**

公司董事会的决议由每位出席会议的董事本人签字，并依据未亲自出席董

事的授权委托，由受托董事代为签字。

**（13）董事会决议是否存在篡改表决结果的情况；**

公司董事会决议不存在篡改表决结果的情况。

**（14）独立董事对公司重大生产经营决策、对外投资、高管人员的提名及其薪酬与考核、内部审计等方面是否起到了监督咨询作用；**

公司重大生产经营决策、对外投资、高管人员的提名及其薪酬与考核、内部审计等方面的重大决策，事前与独立董事咨询和沟通，独立董事行使监督职权的形式主要是在董事会会议上发表独立意见、签署专项意见和独立意见书，独立董事对上述重大决策发挥了监督咨询作用。

**（15）独立董事履行职责是否受到上市公司主要股东、实际控制人等的影响；**

公司独立董事按照《公司章程》的规定和要求独立履行职责，不存在受到公司主要股东、实际控制人影响的情形。

**（16）独立董事履行职责是否能得到充分保障，是否得到公司相关机构、人员的配合；**

公司独立董事依法独立地开展工作，其履行职责能够得到充分保障。公司董事会办公室积极配合独立董事履行职责和相关工作的开展，董事会秘书直接负责与独立董事的沟通与联络工作。

**（17）是否存在独立董事任期届满前，无正当理由而被免职的情形，是否得到恰当处理；**

公司不存在独立董事任期届满前被免职的情形。

**（18）独立董事的工作时间安排是否适当，是否存在连续 3 次未亲自参会的情况；**

公司独立董事的工作时间安排适当，不存在连续 3 次未亲自参会的情况。

**（19）董事会秘书是否为公司高管人员，其工作情况如何；**

公司董事会秘书是公司高管人员。董事会秘书能够按照相关法律、法规和公司章程以及公司内部的各项管理制度开展工作，保证公司三会按照要求及时召开，能够认真履行信息披露，积极地作好投资者关系管理工作，同时保持与监管

部门的沟通和联络。

**（20）股东大会是否对董事会有授权投资权限，该授权是否合理合法，是否得到有效监督。**

股东大会对董事会有授权投资权限为：

1、董事会决定对外投资事项的权限为：单个项目不超过最近一期经审计净资产值的 15%；年度累计投资项目不超过公司最近一期经审计净资产值的 50%。

董事会决定收购或出售资产事项的权限为：单个项目不超过最近一期经审计净资产值的 15%；连续 12 个月内向同一当事人收购或出售资产不超过三次；

董事会有权决定年度累计金额不超过最近一期经审计净资产值 50%的资产抵押项目。

2、董事会有权决定单一合同交易金额或连续 12 月内同类标的交易金额不超过公司最近一期经审计净资产绝对值 5%以下的关联交易事项。

3、董事会决定对外担保事项的权限为：

（1）单次担保金额不超过人民币 3000 万元；

（2）为同一被单保对象累计担保金额不超过人民币 3000 万元；

（3）累计担保金额不超过公司最近一期经审计净资产值的 5%。

根据相关法律、法规的规定，该项授权合理合法，在实践中得到了有效地监督。截止目前本公司无任何对外担保的情形。

**3、监事会**

**（1）公司是否制定有《监事会议事规则》或类似制度；**

公司监事会制定有《监事会议事规则》。

**（2）监事会的构成与来源，职工监事是否符合有关规定；**

公司监事会由 3 名监事组成，其中股东大会选举产生 2 名，职工代表监事 1 名，其构成与来源符合法律、法规和《公司章程》的规定。

**（3）监事的任职资格、任免情况；**

2005 年 9 月 20 日，公司召开了 2005 年度第二次临时股东大会。会议审议

通过了《彩虹集团电子股份有限公司提交的关于本公司第五届董事会董事候选人、监事会股东监事候选人的提案》。大会采用累积投票的方式选举葛迪先生、闫跃平先生为公司第五届监事会股东监事，与职工监事李向顺先生共同组成公司第五届监事会。

公司监事的任职资格符合相关规定，不存在与法律、法规和《公司章程》相抵触的情形，任免程序符合法定程序。

**（4）监事会的召集、召开程序是否符合相关规定；**

公司监事会的召集、召开程序均符合《上海证券交易所股票上市规则》、《公司章程》和《监事会会议事规则》的相关规定。

**（5）监事会的通知时间、授权委托等是否符合相关规定；**

公司监事会的通知时间、授权委托均符合《上海证券交易所股票上市规则》、《公司章程》和《监事会会议事规则》的相关规定。

**（6）监事会近 3 年是否有对董事会决议否决的情况，是否发现并纠正了公司财务报告的不实之处，是否发现并纠正了董事、总经理履行职务时的违法违规行为；**

监事会近 3 年没有对董事会决议否决的情况，没有发现并纠正公司财务报告不实的情况，没有发现公司董事、总经理履行职务时存在违法违规的行为。

**（7）监事会会议记录是否完整、保存是否安全，会议决议是否充分及时披露；**

公司监事会会议记录完整并安全保存，会议决议充分及时地进行了披露。

**（8）在日常工作中，监事会是否勤勉尽责，如何行使其监督职责。**

在日常工作中，监事会成员能够勤勉尽责地行使其监督职责。监事会通过列席董事会、股东大会、召开监事会会议，审议、审核公司各季度、半年度、年度财务报告，对公司董事、经理、财务负责人和董事会秘书等高级管理人员进行监督，对公司关联交易、重大事项进行审议并发表独立意见。

**4、经理层**

**（1）公司是否制定有《经理议事规则》或类似制度；**

为了切实规范总经理的组织及行为，维护公司的正常运作，保证股东的合

法权益，根据《公司法》和《公司章程》的相关规定，公司制定了《总经理工作细则》。

**（2）经理层特别是总经理人选的产生、招聘，是否通过竞争方式选出，是否形成合理的选聘机制；**

公司设总经理一名，由董事长提名，由董事会决定聘任或解聘；公司设董事会秘书一名，由董事长提名，由董事会决定聘任或解聘。公司设副总经理 2 名，总会计师 1 名，由总经理提名任免，由董事会决定聘任或解聘。

**（3）总经理的简历，是否来自控股股东单位；**

公司总经理的简历：丁文惠先生，2001 年 5 月至 2005 年 8 月，任本公司副总经理；2005 年 8 月至今任本公司董事、总经理。

公司总经理不是来自控股股东单位。

**（4）经理层是否能够对公司日常生产经营实施有效控制；**

公司经营层拥有充分的经营管理权，公司经营层的每位成员根据分工的不同履行各自的职责，能够对公司的日常生产经营实施有效的控制。

**（5）经理层在任期内是否能保持稳定性；**

公司经营层在任期内基本保持稳定。

**（6）经理层是否有任期经营目标责任制，在最近任期内其目标完成情况如何，是否有一定的奖惩措施；**

公司建立了以目标责任制为基础的考评体系。根据经营业绩和履行职责情况对高级管理人员实行月度考评和年度考核，月度考评以 KPI 指标为考核依据，年度考核时高管人员向董事会进行工作述职，考核结果作为其薪酬、晋升的依据。公司将进一步建立和完善董事、监事和高管人员的绩效评价标准和有关制度。

**（7）经理层是否有越权行使职权的行为，董事会与监事会是否能对公司经理层实施有效的监督和约束，是否存在"内部人控制"倾向；**

公司经理层没有越权行使职权的行为，董事会和监事会对公司经理层实施有效的监督和约束，不存在"内部人控制"倾向。

**（8）经理层是否建立内部问责机制，管理人员的责权是否明确；**

公司已建立有一套详细的《管理手册》,包括安全、生产、质量、采购、销售各专业管理规定及奖惩条例,对各级管理人员因故意或过失发生的违规违纪等有损公司利益的行为追究相应地责任,公司管理人员职责划分明确,责权对等。

**(9)经理层等高级管理人员是否忠实履行职务,维护公司和全体股东的最大利益,未能忠实履行职务,违背诚信义务的,其行为是否得到惩处;**

公司经理层等高级管理人员能够忠实履行职务,维护公司和全体股东的最大利益。未发生不能忠实履行职务,违背诚信义务的行为。

**(10)过去 3 年是否存在董事、监事、高管人员违规买卖本公司股票的情况,如果存在,公司是否采取了相应措施。**

近 3 年公司董事、监事、高管人员不存在违规买卖本公司股票的情况。

**5、公司内部控制情况**

**(1)公司内部管理制度主要包括哪些方面,是否完善和健全,是否得到有效地贯彻执行;**

为了规范公司的内部控制,加强内部管理,保证各项业务的正常、规范进行,确保公司资产的安全和完整,防止欺诈和舞弊行为,实现公司的经营管理目标,公司依照国家有关法律法规的规定,根据公司的资产结构和经营方式,结合自身业务发展情况和运营管理经验,建立了较为完整、有效、合理的内部控制制度体系。公司的主要内控度包括:公司章程和"三会"制度、信息披露管理制度、岗位职责标准、财务控制制度体系、人力资源管理制度、质量管理制度、设备及备品备件管理制度、生产管理、安全管理、销售管理、信息化管理等业务制度。公司较为完整、有效、合理的内部控制制度体系,保障了公司正常生产经营活动的进行,并达到了有效控制经营风险的目的。未来公司还将根据生产经营及公司发展的实际需要,对公司的内部控制制度作进一步的修改和完善,使内控制度与公司的发展相适应。

**(2)公司会计核算体系是否按照有关规定建立健全;**

公司已经按照有关规定建立健全了公司会计核算体系。

**(3)公司财务管理是否符合有关规定,授权、签章等内部控制环节是否有效执行;**

公司财务管理制度符合有关规定,授权、签章等内部控制环节有效执行,

均有专人管理。

**（4）公司公章、印鉴管理制度是否完善，以及执行情况；**

公司制定了较为完善的《印鉴管理制度》，并严格按照制度的规定进行管理，公章、印鉴由公司办公室专人管理。

**（5）公司内部管理制度是否与控股股东趋同，公司是否能在制度建设上保持独立性；**

公司根据公司的实际情况制定各项管理制度，在制度建设上基本保持独立。

**（6）公司是否存在注册地、主要资产地和办公地不在同一地区情况，对公司经营有何影响；**

公司注册地位于西安高新技术开发区，有利于充分利用其信息、政策等优惠条件。主要资产和主要办公地位于咸阳，对公司经营不存在影响。

**（7）公司如何实现对分支机构，特别是异地分子公司有效管理和控制，是否存在失控风险；**

公司对控股子公司委派董事、监事，参与该公司的决策管理和监督，没有出现失控的情形。

**（8）公司是否建立有效的风险防范机制，是否能抵御突发性风险；**

公司已制定风险防范制度，设立了分级预警机制，层层分解预警责任指标，逐级落实资产风险责任，并对资产风险状况进行评价考核，完善信息传递流程，从而有效抵御突发性风险。

**（9）公司是否设立审计部门，内部稽核、内控体制是否完备、有效；**

公司设立了审计部门，公司内部稽核、内控体制完备、有效。

**（10）公司是否设立专职法律事务部门，所有合同是否经过内部法律审查，对保障公司合法经营发挥效用如何；**

公司没有设立专职法律事务部门，公司聘请了律师事务所担任常年法律顾问，提供相关的法律咨询服务。公司经营过程中的合同管理严格按照招、投标程序进行，控股股东彩虹集团电子股份有限公司的合同管理部门协助进行内部合同审核，对保障公司合法经营发挥着重大作用。

**（11）审计师是否出具过《管理建议书》，对公司内部管理控制制度如何评价，公司整改情况如何。**

审计师没有出具过《管理建议书》。

**（12）公司是否制定募集资金的管理制度；**

公司已经制定了募集资金的管理制度。公司将根据《关于加强上市公司募集资金使用管理的通知》要求对该管理制度进行重新修订。

**（13）公司的前次募集资金使用效果如何，是否达到计划效益；**

公司前次募集资金使用情况良好，并已达到了计划效益。

**（14）公司的前次募集资金是否有投向变更的情况，程序是否符合相关规定，理由是否合理、恰当；**

根据股东大会决议，公司对前次募集资金投向进行了变更，变更程序符合相关规定，变更的理由合理、恰当。

**（15）公司是否建立防止大股东及其附属企业占用上市公司资金、侵害上市公司利益的长效机制。**

公司已建立规范的资金管理、对外担保制度，不存在大股东及其附属企业占用公司资金的情况。

**三、公司独立性情况**

**1.公司董事长、经理、副经理、董事会秘书、财务负责人等人员在股东及其关联企业中有无兼职；**

公司董事长、总经理、财务负责人在股东及其关联企业中的兼职情况：

| 姓　名 | 兼职单位名称 | 担任的职务 |
|---|---|---|
| 王西民 | 彩虹集团电子股份有限公司 | 副总裁 |
| 丁文惠 | 咸阳彩虹数码显示有限公司 | 董事、副总经理 |
| 刘珍珠 | 咸阳彩虹数码显示有限公司 | 财务总监 |

咸阳彩虹数码显示有限公司为本公司与控股股东共同投资设立，本公司占注册资本的49%

公司副总经理、董事会秘书没有在股东及其关联企业中的兼职情况。

**2. 公司是否能够自主招聘经营管理人员和职工；**

公司拥有独立的员工队伍，能够自主招聘经营管理人员和员工。公司员工与公司均签订了劳动合同。公司在劳动、人事及工资管理等方面独立于控股股东。

**3. 公司的生产经营管理部门、采购销售部门、人事等机构是否具有独立性，是否存在与控股股东人员任职重叠的情形；**

公司的生产经营管理部门、采购销售部门以及人事等机构具有独立性，各职能部门不存在与控股股东任职重叠的情形。

**4. 公司发起人投入股份公司的资产的权属是否明确，是否存在资产未过户的情况；**

公司发起人投入股份公司的资产权属明确，不存在资产未过户的情况。

**5. 公司主要生产经营场所及土地使用权情况如何，是否独立于大股东；**

公司主要生产经营场所及土地使用权权权清晰，独立于大股东。公司下属玻璃工厂和控股子公司彩虹资讯的部分生产经营所用厂房、土地向实际控制人彩虹集团公司进行租赁。

**6. 公司的辅助生产系统和配套设施是否相对完整、独立；**

本公司的主业为彩色显像管的生产与销售，共有彩管生产线 4 条，主要产品有 54cmFS、64cmFS、64cmPF、74cmPF 彩色显像管。公司拥有独立的生产系统、辅助生产系统和配套设施，生产所用水、电、气等动能从公司实际控制人彩虹集团公司采购。

**7. 公司商标注册与使用情况如何，工业产权、非专利技术等无形资产是否独立于大股东；**

公司与实际控制人彩虹集团公司签订商标使用许可协议，合同规定彩虹集团许可公司产品有偿使用"彩虹"商标，商标使用费的作价依据为：按照产品销售收入的千分之一支付使用费。公司工业产权、非专利技术等无形资产独立于大股东。

**8. 公司财务会计部门、公司财务核算的独立性如何；**

公司具有独立的财务会计部门，公司及其子公司已建有独立的会计核算体系和财务管理制度。本公司拥有独立的银行账户，不存在与控股股东共用银行账

户的情况。公司依法独立纳税，不存在欠漏税行为。

### 9. 公司采购和销售的独立性如何：

公司拥有独立的采购和销售系统，并建立了完善的管理制度。公司零部件采购、销售商品所产生的关联交易均与相关关联方签订了关联交易协议。

### 10. 公司与控股股东或其关联单位是否有资产委托经营，对公司生产经营的独立性产生何种影响：

公司与控股股东或其关联单位没有资产委托经营的情形。

### 11. 公司对控股股东或其他关联单位是否存在某种依赖性，对公司生产经营的独立性影响如何：

公司原材料采购的前五名供应商均为关联单位，2006 年度占采购总额的66%，存在一定的依赖性，主要原因是：公司和公司控股子公司彩虹资讯与彩虹集团公司、彩虹电子及其下属生产企业在生产经营中存在着配套供应的关系，且大多数厂家经营场所在咸阳。由于公司生产所需的大多数零部件无法从外部采购，同时彩虹集团公司内部配套厂家的产品质量较好、价格较低、供货稳定、便于运输、有利于生产组织，该等关联交易可充分利用彩虹集团公司内部的配套优势，节约采购（销售）费用，降低生产成本，提高公司的生产效率和效益。

### 12. 公司与控股股东或其控股的其他关联单位是否存在同业竞争：

公司与控股股东或其控股的其他关联单位不存在同业竞争。

### 13. 公司与控股股东或其控股的其他关联单位是否有关联交易，主要是哪些方式；关联交易是否履行必要的决策程序：

本公司及公司控股子公司与公司实际控制人、控股股东及其下属的其他关联单位之间存在日常关联交易。关联交易的主要内容是：向关联企业采购原材料、零部件、能源动力及部分厂房租赁和商标使用权等。公司与关联方的关联交易均履行了必要的决策程序，独立董事在董事会上均发表了独立意见，相关关联董事在董事会表决时进行了回避，关联股东在股东大会表决时放弃了表决权。

### 14. 关联交易所带来利润占利润总额的比例是多少，对公司生产经营的独立性有何种影响：

2006 年度公司关联交易没有为公司带来利润，对公司生产经营的独立性没

有影响。

**15. 公司业务是否存在对主要交易对象即重大经营伙伴的依赖，公司如何防范其风险；**

公司业务的的主要交易对象主要是国内各大型电视机厂商，不存在依赖性。

**16. 公司内部各项决策是否独立于控股股东。**

公司内部各项决策能够做到独立于控股股东。董事会是公司的常设决策机构，向股东大会负责。董事会对公司经营活动中的重大决策进行审议，并提交股东大会审议批准。

**四、公司透明度情况**

**1. 公司是否按照《上市公司信息披露管理办法》建立信息披露事务管理制度，是否得到执行。**

公司已按照《上市公司信息披露管理办法》的规定修订了《信息披露管理办法》和《重大信息内部报告制度》，在信息披露过程中公司能够严格按照制度规定进行信息披露。

**2. 公司是否制定了定期报告的编制、审议、披露程序，执行情况，公司近年来定期报告是否及时披露，有无推迟的情况，年度财务报告是否有被出具非标准无保留意见，其涉及事项影响是否消除；**

公司制定了《信息披露管理办法》，办法中规定了公司定期报告的编制、审议、披露程序。公司定期报告的编制、审议、披露严格按照交易所的相关要求和公司《信息披露管理办法》执行。公司近年来定期报告均保证了及时披露，没有推迟的情况，公司年度财务报告没有被出具非标准无保留意见。

**3. 上市公司是否制定了重大事件的报告、传递、审核、披露程序，落实情况如何；**

公司根据有关规定制定了《重大信息内部报告制度》，公司各项重大事件的报告、传递、审核、披露按照该制度和《信息披露管理办法》的相关规定执行。

**4. 董事会秘书权限如何，其知情权和信息披露建议权是否得到保障；**

董事会秘书是公司高级管理人员，是公司与证券交易所之间的指定联络人。

（一）负责公司和相关当事人与证券交易所及其他证券监管机构之间的及时

沟通和联络。

（二）负责处理公司信息披露事务，督促公司制定并执行信息披露管理制度和重大信息的内部报告制度，促使公司和相关当事人依法履行信息披露义务，并按规定向证券交易所办理定期报告和临时报告的披露工作。

（三）协调公司与投资者关系，接待投资者来访，回答投资者咨询，向投资者提供公司已披露的资料。

（四）按照法定程序筹备董事会会议和股东大会，准备和提交拟审议的董事会和股东大会的文件。

（五）参加董事会会议，制作会议记录并签字。

（六）负责与公司信息披露有关的保密工作，制订保密措施，促使公司董事会全体成员及相关知情人在有关信息正式披露前保守秘密，并在内幕信息泄露时，及时采取补救措施并向证券交易所报告。

（七）负责保管公司股东名册、董事名册、大股东及董事、监事、高级管理人员持有公司股票的资料，以及董事会、股东大会的会议文件和会议记录等。

（八）协助董事、监事和高级管理人员了解信息披露相关法律、法规、规章、证券交易所股票上市规则及证券交易所的他规定和公司章程，以及上市协议对其设定的责任。

（九）促使董事会依法行使职权；在董事会拟作出的决议违反法律、法规、规章、证券交易所股票上市规则及证券交易所其他规定和公司章程时，应当提醒与会董事，并提请列席会议的监事就此发表意见；如果董事会坚持作出上述决议，董事会秘书应将有关监事和其个人的意见记载于会议记录上，并立即向证券交易所报告。

**5. 信息披露工作保密机制是否完善，是否发生泄漏事件或发现内幕交易行为。**

公司信息披露工作保密机制完善，公司信息披露的义务人和信息知晓人，对其知晓的未公开披露的信息负有保密的责任。公司信息披露的义务人应采取必要的措施，在信息公开披露之前，将信息知情者控制在最小范围。公司聘请的顾问、中介机构、关联人若擅自披露公司信息，给公司造成损失的，公司保留追究其责任的权利。

截止目前，没有发生泄漏事件或发现内幕交易行为。

**6. 是否发生过信息披露"打补丁"情况，原因是什么，如何防止类似情况；**

根据中国证监会《公开发行证券的公司信息披露内容与格式准则第 2 号-年度报告的内容与格式》(2005 年修订)和上海证券交易所的相关要求,公司对 2005 年报"第七章　董事会报告"之"(二)对公司未来发展的展望"部分进行了修改和补充公告。今后公司将严格按照《公开发行证券的公司信息披露内容与格式准则》的要求，编制和披露公司各类临时报告和定期报告。

**7. 公司近年来是否接受过监管部门的现场检查，或其他因信息披露不规范而被处理的情形，如存在信息披露不规范、不充分等情况，公司是否按整改意见进行了相应的整改；**

(1)中国证监会陕西监管局于 2004 年 10 月 25 日至 29 日对公司进行了巡检，并于 2005 年 2 月 18 日下发了陕证监函字[2005]41 号《关于对彩虹显示器件股份有限公司 2004 年度巡检发现问题及整改要求的通报》,指出了公司规范化运作、财务内控制度、证券投资核算等方面的问题。公司已根据通报的要求,制订了整改方案和整改措施，按照监管部门的要求及时认真地完成了整改工作。

(2)中国证监会陕西监管局于 2005 年 8 月 24 日至 9 月 25 日对公司进行了专项核查,并于 2005 年 10 月 21 日向公司下发了《限期整改通知书》(陕证监发[2005]69 号),指出了本公司在短期投资、财务管理、关联交易等方面存在的问题。针对《限期整改通知》中提出的问题,公司逐项进行了责任分解，提出了切实可行的整改措施。公司已按照监管部门的要求及时认真地完成了整改工作。

**8. 公司是否存在因信息披露问题被交易所实施批评、谴责等惩戒措施；**

公司没有因信息披露问题被交易所实施批评、谴责的情况。

**9. 公司主动信息披露的意识如何。**

除按照相关要求履行信息披露义务外,公司始终保持日常主动信息披露的自觉性。公司还通过多种方式组织董事、监事及高管人员学习上市公司规范运做的相关法律法规,提高信息披露意识。公司及有关信息披露义务人主动信息披露的意识在不断地加强。

**五、公司治理创新情况及综合评价。**

**1.公司召开股东大会时，是否采取过网络投票形式，其参与程度如何；(不**

**包括股权分置改革过程中召开的相关股东会议。)**

公司除股权分置改革过程中召开的相关股东会议采取了网络投票的方式外,股东大会（年度和临时股东大会）未采取网络投票形式召开。

**2. 公司召开股东大会时,是否发生过征集投票权的情形;（不包括股权分置改革过程中召开的相关股东会议。)**

公司召开股东大会时,没有发生过征集投票权的情形。

**3. 公司在选举董事、监事时是否采用了累积投票制;**

公司在选举第五届董事会董事、监事会监事时采用了累积投票制。

**4. 公司是否积极开展投资者关系管理工作,是否制定投资者关系管理工作制度,具体措施有哪些;**

公司一直积极开展投资者关系管理工作,并在监管部门的指引下逐步规范此项工作。公司制定了《投资者关系管理制度》,从投资者关系管理的目的、原则和内容、投资者关系活动、投资者关系工作的组织和实施等方面对开展投资者关系工作进行了规范,确保投资者关系管理工作的合规性和有效性。公司指定专人负责投资者关系管理,并安排专人做好投资者来访接待工作。公司通过召开接待投资者来访、电话咨询、邮寄资料或发送电子邮件、现场参观、一对一沟通、媒体采访和报道等多种形式与投资者交流与沟通。

**5. 公司是否注重企业文化建设,主要有哪些措施;**

公司一贯注重企业文化建设,建立并完善了人员培训、人才引进和激励机制,以良好的工作氛围和发展机遇吸引并留住人才,建立能够适应企业现代化管理和公司未来发展需要的高素质员工队伍。

**6. 公司是否建立合理的绩效评价体系,是否实施股权激励机制,公司实施股权激励机制是否符合法律、法规要求,股权激励的效果如何;**

公司已经建立了合理的绩效评价体系,但尚未实施股权激励机制。

**7. 公司是否采取其他公司治理创新措施,实施效果如何,对完善公司治理制度有何启示;**

为提高公司治理水平,公司于 2002 年率先在公司董事会成员中增加了独立董事的人选;公司还设立了董事会各专业委员会,其中薪酬与考核委员会在每年

度末召开会议，听取每一位高管人员对上一年度的工作述职，并根据工作绩效给予考评。我们还将在以后的工作中不断探讨更好的公司治理制度。

**8. 公司对完善公司治理结构和相关法规建设有何意见建议。**

完善上市公司治理结构是规范上市公司运作、提升上市公司质量的基础，做好这项工作对于实现建立现代企业制度的目标，进一步规范和发展资本市场都是十分必要和有意义的。上市公司应进一步加强董事会专业委员会建设，强化专业部门的职能，建立健全各项管理制度，进一步提高公司科学决策能力和风险防范能力；同时加强监事会的监督职能和权限，提升监事会的地位，不仅仅就财务方面进行监督，更需要全面地监督公司的运作。

**彩虹显示器件股份有限公司**

**二○○七年八月十五日**

# EXHIBIT 4

**[Document Submitted Under Seal]**

# EXHIBIT 5



STATE of NEW YORK      )
                       )          ss:
COUNTY of NEW YORK     )

### *CERTIFICATE OF ACCURACY*

This is to certify that the attached document, *"IRI-CRT-00001026 – IRI-CRT-00001067"*, originally written in *Chinese,* is to the best of our knowledge and belief, a true, accurate and complete translation into *English.*

Dated: September 21, 2018

Seth Wargo
Consortra Translations

Sworn to and signed before ME this
 21st  day of  September,
2018.

Notary Public

JAMES G. MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified In New York County
My Comm. Expires Dec. 4, 2018

Your
legal
translation
partner

D☐P☐ Exhibit 8416
Deponent  Wang
Date 3|7|19 Rptr BW

# IRICO Display Devices Co., Ltd.
# Articles of Association

Adopted by the Inaugural General Assembly on 28 December 1992

Amended by the 6th General Meeting of Shareholders on June 26, 1998

Amended by the 2nd Extraordinary General Meeting of Shareholders of 1999, September 20, 1999

Amended by the 1st Extraordinary General Meeting of Shareholders of 2001, June 29, 2001

Amended by the 2nd Extraordinary General Meeting of Shareholders of 2001, 07 September 2001

Amended by the 10th General Meeting of Shareholders on June 27, 2002

Amended by the 1st Extraordinary General Meeting of Shareholders of 2018, October 18, 2002

Amended by the 1st Extraordinary General Meeting of Shareholders of 2004, September 29, 2004

Amended by the 1st Extraordinary General Meeting of Shareholders of 2005, February 25, 2005

Amended by the 13th General Meeting of Shareholders on May 27, 2005

Amended by the 14th General Meeting of Shareholders on June 27, 2006

# Table of Contents

**Chapter I General Provisions**

**Chapter II Business Goals and Scope**

**Chapter III Shares**

Section I Issuance of Shares

Section II Increase, Decrease and Repurchase of shares

Section III Transfer of Shares

**Chapter IV Shareholders**

Section I General Provisions

Section II Rights and Obligations of Shareholders

Section III Controlling Shareholders and Actual Controllers

Section IV Related Party Transactions

**Chapter V General Meeting of Shareholders**

Section I General Provisions

Section II Annual General Meeting of Shareholders

Section III Extraordinary General Meeting of Shareholders

Section IV. Convening of General Meeting of Shareholders

Section V Proposal of General Meeting of Shareholders

Section VI Convening of General Meeting of Shareholders

Section VII. Voting Procedure of General Meeting of Shareholders

Section VIII Resolution of General Meeting of Shareholders

Section IX Election Procedures of Directors and Supervisors

Section X Minutes of General Meeting of Shareholders

Section XI Authorisation of the Board of Directors by the General Meeting of Shareholders

**Chapter VI. Directors and Boards of Directors**

Section 1 Directors

Section II Independent Directors

Section III. Board of Directors

Section IV. Authorization of Chairman by the Board of Directors

Section V Secretary of the Board of Directors

Section VI Special Committee of the Board of Directors

**Chapter VII Supervisors and Board of Supervisors**

Section 1 Supervisor

Section II Board of Supervisors

**Chapter VIII Managers**

**Chapter IX Performance Evaluation and Incentive and Restraint Mechanism**

Section 1 Performance Evaluation of Directors, Supervisors and Managers

Section II Incentive and Restraint Mechanism of Managers

**Chapter X Financial Accounting system, Profit Distribution and Audit**

Section 1 Financial Accounting System

Section II Internal Audit

Section III Appointment of Accounting Firms

**Chapter XI Continuous Information Disclosure**

**Chapter XII Stakeholders**

**Chapter XIII Merger, Spinning Off, Dissolution and Liquidation**

Section 1. Merger or Spinning Off

Section II Dissolution and Liquidation

**Chapter XIV Amendment to the Articles of Association**

**Chapter XV Supplementary Provisions**

IRI-CRT-00001027 - Translation

## Chapter I General Provisions

**Article 1** In order to safeguard the legitimate rights and interests of IRICO Display Devices Co., Ltd (hereinafter referred to as "the Company"), its shareholders and creditors, standardize the organization and conduct of the Company, these Articles of Association are formulated in accordance with the Company Law of the People's Republic of China (hereinafter referred to as the Company Law), the Securities Law of the People's Republic of China and other relevant provisions.

**Article 2** the Company (hereinafter referred to as the "Company") is a company limited by shares established in accordance with the normative opinions of the Company Limited and other relevant provisions.

the Company was approved by Shaanxi Provincial Economic System Reform Commission (1992) Document No.34, and set up by means of directed placement; it has registered in Shaanxi Provincial Administration for Industry and Commerce, and obtained business license.

Upon the approval of the Shaanxi Provincial Economic System Reform Commission Shaan Gai Fa (1996) No.109 document, the Company has been standardized in accordance with the "Company Law", and has completed the re-registration formalities according to the law.

**Article 3** On August 11, 1992, the Company issued 300 million common shares denominated in RMB by way of directed placement, upon approval by Shaanxi Branch of People's Bank of China, Shaan Yin Fu (1992) No.54 Document. All the shares were domestic shares subscribed in RMB by domestic investors and were listed on the Shanghai Stock Exchange on May 20, 1996.

**Article 4** The registered name of a company:          Chinese: 彩虹显示器件股份有限公司.

English: **IRICO DISPLAY DEVICES CO., LTD**

**Article 5** Domicile of the Company: Xi'an Hi-tech Industrial Development Zone, Shaanxi Province

Zip Code: 710075

**Article 6** Registered capital of the Company: RMB 421.1488 Million

**Article 7** The Company shall be a limited liability company with permanent existence.

**Article 8** The chairman of the Board of Directors shall be the legal representative of the Company.

**Article 9** The total assets of the Company shall be divided into equal shares, and the shareholders shall be held liable to the Company to the extent of the shares held by them, and the Company shall be liable to its debts with all its assets.

**Article 10** The Articles of Association of the Company shall become legally binding documents regulating the organization and conduct of the Company, the rights and obligations between the Company and the shareholders, and between shareholders and shareholders from the effective date as from the date of the entry into force of the Articles of Association and shall be legally binding on the Company, shareholders, directors, supervisors and senior management personnel. According to the Articles of Association, shareholders may sue shareholders; shareholders may sue directors, supervisors, managers and other senior managers of the Company; shareholders may sue the Company; the Company may sue shareholders, directors, supervisors, managers and other senior managers.

**Article 11** The term "other senior managers" as mentioned in these Articles of Association refers to the secretary of the Board of Directors and the person in charge of the finance of the Company.

## Chapter II Business Goals and Scope

**Article 12** The goals of the Company: to focus on customer demand, provide high-quality products and services with excellent technology and management.

**Article 13** Upon examination and approval by the Company registration authority, the business scope of the Company is as follows: production, development and operation of colour display devices, electronic products and components and raw materials; self-support and acting for the import and export business of all kinds of commodities and technologies; lease in kind, undertaking of "processing and compensation trade" and so on.

## Chapter III Shares

### Section 1 Issuance of Shares

**Article 14** The shares of the Company shall be in the form of stocks.

**Article 15** The principles of openness, fairness and impartiality shall be applied in the issuance of shares of the Company, and each share of the same class shall have the same rights.

Shares of the same class issued at the same time shall be issued under the same conditions and at the same price per share; shares subscribed for by any organization or individual shall pay the same amount of price for each share.

**Article 16** The nominal value of shares issued by the Company shall be denominated in RMB.

**Article 17** The shares issued by the Company shall be collectively deposited in the Shanghai Branch of the China Securities Registration and Clearing Co., Ltd.

**Article 18** The approved total number of common shares issued by the Company is 300 million. At the time of its establishment, it has issued 66 million shares to the sponsor IRICO Group,54 million shares to the Shaanxi Trust and Investment Corporation of the Industrial and Commercial Bank of China, and 30 million shares to China Construction Bank Shaanxi Trust and Investment Company, totalling 150 million shares and accounting for 50% of the total number of common shares issued by the Company.

The above funds were fully paid in on 31 August 1992.

**Article 19** The share capital structure of the Company shall be as follows: 421.1488 million shares of common share, of which 240.16 million shares are held by sponsors and 180.9888 million shares are held by other domestic equity shareholders.

**Article 20** The Company or any of its subsidiary (including any of its affiliates) shall not provide any financial assistance to any person who purchases or intends to purchase shares of the Company in the form of gifts, advances, guarantees, compensation or loans.

### Section II Increase, Decrease and Repurchase of Shares

**Article 21** In accordance with the needs of operation and development and in accordance with the provisions of laws and regulations, the Company may increase its capital by the following means, upon respective resolution of the General Meeting of Shareholders.

(1) shares issued publicly;

(2) shares issued not publicly;

(3) distributing dividend shares to existing shareholders;

(4) converting provident fund into share capital;

(5) other means approved by the provisions of laws and administrative regulations and the securities authority under the State Council.

**Article 22** the Company may reduce its registered capital. The reduction of the registered capital of the Company shall be handled in accordance with the procedures set forth in the Company Law and other relevant provisions and procedures stipulated in the Articles of Association.

**Article 23** Under the following circumstances, the Company may repurchase its shares after adopting the procedures stipulated in the Articles of Association and submitting them to the state competent authorities for approval:

(1) reducing the registered capital of the Company;

(2) merging with other companies that hold shares of the Company;

(3) rewarding the shares to the employees of the Company;

(4) where a shareholder requests the Company to acquire its shares because of his objection to the resolution on merger or division made by the General Meeting of Shareholders

Except in the above circumstances, the Company shall not engage in the trading of its shares.

**Article 24** A company may repurchase shares in any of the following ways:

(1) centralized bidding on the stock exchange;

(2) offer;

(3) other means approved by the CSRC.

**Article 25** Where the Company acquires shares in the Company for the reasons mentioned in Section 1 to 3 of Article 23, a resolution shall be made by the General Meeting of Shareholders. In case the Company acquires its shares in accordance with Article 23, it shall cancel within 10 days from the date of the acquisition; in the case of Section 2 and 4, it shall transfer or cancel within six months.

IRI-CRT-00001029 - Translation

The shares acquired by the Company in accordance with Section 3 of Article 23 shall not exceed 5% of the total shares issued by the Company; the funds used for the acquisition shall be paid out of the Company's after-tax profits; the shares acquired shall be transferred to the employees within 1 year.

## Section III Transfer of Shares

**Article 26** The shares of the Company may be transferred according to law.

**Article 27** The Company shall not accept targets which have shares of the Company as pledge.

**Article 28** The directors, supervisors, managers and other senior managers shall, during their term of office, regularly report to the Company their holdings of company shares (including the newly added shares due to the distribution of dividends, the conversion of provident fund, the exercise of convertible corporate bonds, newly added shares by means of purchase and inheritance) and the changes thereof; The shares transferred each year during their term of office shall not exceed 25% of the total number of shares held by them; the Company shares held by them shall not be transferred within one year from the date of the listing of the shares of the Company. The said personnel shall not transfer their shares in the Company within six months after resignation.

**Article 29** Where the directors, supervisors, senior management personnel of the Company and shareholders who hold more than 5% of the Company sell the shares held by them within 6 months from the date of purchase or purchase them again within 6 months from the date of the sale, the proceeds thus obtained shall belong to the Company. The Board of Directors of the Company will recoup his/her earnings. However, securities companies which hold more than 5% of the shares by underwriting and purchasing the remaining shares after sale, the sale of the shares shall not be subject to the time limit of six months.

If the Board of Directors of the Company fails to execute in accordance with the provisions of the preceding paragraphs, the shareholders shall have the right to require the Board of Directors to execute within 30 days. If the Board of Directors of the Company fails to execute within the abovementioned time limit, the shareholders shall have the right to file a lawsuit directly in the people's court in their own name for the benefit of the Company. If the Board of Directors of the Company fails to execute in accordance with the provisions of Paragraph 1, the responsible director shall bear joint and several liability according to law.

## Chapter IV Shareholders

### Section I General Provisions

**Article 30** The shareholders of the Company shall be those who hold shares in the Company according to law.

**Article 31** The register of shareholders shall be sufficient evidence to prove that the shareholders hold shares in the Company.

**Article 32** The Company shall sign a share custody agreement with the securities registration institution and establish a register of shareholders on the basis of the certificate provided by the securities registration authority. the Company shall regularly inquire about the information of the major shareholders and the changes of the major shareholders' shareholdings (including the pledge of the shares) to grasp the ownership structure of the Company in a timely manner.

**Article 33** When a company convenes a General Meeting of Shareholders, distributes dividends, liquidates or engages in other conducts requiring the identity confirmation of shareholders, the Board of Directors or the convenor of the General Meeting of Shareholders shall determine the date of registration of equity, and the shareholders registered after the date of equity registration shall be the shareholders who enjoy the relevant rights and interests.

### Section II Rights and Obligations of Shareholders

**Article 34** As the owner of the Company, the shareholders shall enjoy all the legal rights stipulated in the laws, administrative regulations and the Articles of Association.

**Article 35** Shareholders shall have rights and undertake obligations according to the type of shares they hold; shareholders who hold shares of the same type shall have the same rights and undertake the same obligations.

**Article 36** The shareholders of the Company shall have the following rights:

(1) to obtain dividends and other forms of benefit distribution in accordance with the shares held by them;

(2) to request, convene, chair, participate in or appoint a shareholder's proxy to attend the shareholders' meeting in accordance with the law;

(3) to exercise voting rights in accordance with the shares held by them;

(4) to supervise the Company's business practices and offer suggestions or inquiries;

(5) to transfer, grant or pledge the shares held by them in accordance with the provisions of the laws, administrative regulations and Articles of Association of the Company;

3

(6) to inspect the Articles of Association of the Company, the register of shareholders, the counterfoil of the Company bond, the minutes of General Meeting of Shareholders, the resolutions of meeting of Board of Supervisors, and financial and accounting reports;

(7) to participate in the distribution of the remaining assets of the Company according the shares held by them when the Company terminates or liquidates;

(8) to require the Company to acquire the shares of shareholders who object to the resolution on merger or division made by the General Meeting of Shareholders;

(9) other rights conferred by laws, administrative regulations and Articles of Association of the Company.

**Article 37** Where a shareholder proposes to peruse the relevant information mentioned in the preceding article or to request information, he/she shall provide the Company with a written document certifying the type and number of shares held by him/her, and the Company shall provide the information in accordance with the requirements of the shareholder after verifying his/her identity.

**Article 38** Where the resolution of General Meeting of Shareholders or the Board of Directors of the Company violates laws and administrative regulations, the shareholders shall have the right to request the people's court to determine its invalidity.

Where the procedure for convening a General Meeting of Shareholders or the Board of Directors, and the method of voting may in violation of the laws, administrative regulations or the Articles of Association, or the contents of the resolution may violate the Articles of Association, the shareholders shall have the right to apply to the people's court for revocation within 60 days from the date of the resolution.

**Article 39** Where a director or senior manager may violate the provisions of the law, administrative regulations or the Articles of Association in the performance of his/her duties of the Company and causes losses to the Company, shareholders holding more than 1% of the shares of the Company individually or jointly for 180 consecutive days shall have the right to request in writing the Board of Supervisors to initiate a legal proceeding in the people's court; where the Board of Supervisors violates the provisions of the law, administrative regulations or the Articles of Association when performing its duties and causes losses to the Company, the shareholders may request the Board of Directors to file a lawsuit to the people's court in writing.

In case the Board of Supervisors or the Board of Directors refuse to bring a lawsuit upon receipt of the written request of the shareholders specified in the preceding paragraph, or fails, within 30 days from the date of receipt of the request, to bring a lawsuit, or where an urgent case or failure to bring a lawsuit would immediately cause irreparable harm to the interests of the Company, the shareholders specified in the preceding paragraph shall have the right to bring a lawsuit directly to the people's court in their own name for the benefit of the Company.

Where another person infringes upon the lawful rights and interests of the Company and causes losses to the Company, the shareholders specified in the preceding paragraph of this article may bring a lawsuit to a people's court in accordance with the provisions of the preceding two paragraphs.

**Article 40** Where a director or senior manager violates the provisions of laws, administrative regulations or the Articles of Association and damages the interests of shareholders, the shareholders may bring a lawsuit to a people's court.

**Article 41** The shareholders of the Company shall undertake the following obligations:

(1) to abide by laws, administrative regulations and the Articles of Association;

(2) to pay a share fee in accordance with the shares they have subscribed for and the manner in which they become shareholders;

(3) to not withdraw shares except in the circumstances prescribed by laws and regulations;

(4) the rights of shareholders shall not be abused to harm the interests of the Company or other shareholders; the independent status of the Company as a legal person and the limited liability of shareholders shall not be abused to harm the interests of the creditors of the Company.

Where the shareholders of the Company abuse their rights to cause losses to the Company or other shareholders, they shall bear the liability for compensation according to law.

Where the shareholders of the Company abuse their independent status as a legal person of the Company and their limited liability, evade the debts and seriously damage the interests of the creditors of the Company, they shall bear joint and several liability for the Company's debts.

(5) other obligations assumed by laws, administrative regulations and Articles of Association of the Company.

**Article 42** In case the shareholders hold 5% of the shares issued by the Company, a written report shall be made to the Company from the date on which that percentage is reached.

**Article 43** Shareholders holding more than 5% voting shares of the Company shall make a written report to the Company from the date of the occurrence of such facts when any of the following circumstances occur.

(1) when the increase or decrease of his/her holding shares is more than 5%;

(2) when the shares held by him/her are pledged;

(3) when the shares held by him/her are subject to the judiciary freezing.

4

## Section III Controlling Shareholders and Actual Controllers

**Article 44** The controlling shareholders and the actual controllers shall bear the obligation of good faith to the Company and other shareholders of the Company.

When exercising the right to vote, the controlling shareholders shall not make a decision that would be detrimental to the legitimate rights and interests of the Company and other shareholders of the Company.

**Article 45** The controlling shareholders and the actual controllers shall not use their related relations to harm the interests of the Company. Those who violate the regulations and cause losses to the Company shall be liable for compensation.

The controlling shareholders shall strictly exercise the rights of the investor in accordance with the law, and the controlling shareholders and the actual controllers shall not interfere directly or indirectly with the Company's decision-making and the production and business activities carried out in accordance with the law beyond the statutory procedures. They shall not use their special status to obtain additional benefits, nor shall they harm the legitimate rights and interests of the Company and other shareholders of the Company by means of related party transactions, profit distribution, asset restructuring, external investment, capital occupation, loan guarantee, etc., nor shall they use their controlling position to damage the interests of the Company and other shareholders of the Company.

**Article 46** The controlling shareholders and the Company shall ensure the independence of their personnel, assets and financial affairs, with independent institutions and businesses, independent accounting, responsibilities and risks.

**Article 47** The personnel of the Company shall be independent of the controlling shareholders. The manager, the financial officer, the marketing chief and the secretary of the Board of Directors of the Company shall not hold any positions other than a director in the controlling shareholders. Where the senior management of the controlling shareholder also serves as a director of the Company, he/she shall ensure that he has sufficient time and energy to undertake the work of the listed company.

**Article 48** The assets invested by the controlling shareholders in the Company shall be independent and complete with clear ownership. Where the controlling shareholder contributes capital with non-monetary assets, he/she shall go through the formalities of property right change and clearly define the scope of the asset. the Company shall independently register, establish, account and manage the assets. The controlling shareholders shall not occupy or dispose of the assets or interfere with the operation and management of the assets by the Company.

**Article 49** the Company shall establish sound financial and accounting management systems and conduct independent accounting in accordance with the requirements of relevant laws and regulations. The controlling shareholders shall respect the financial independence of the Company and shall not interfere in the financial and accounting activities of the Company.

**Article 50** The Board of Directors, the Board of Supervisors and other internal institutions of the Company shall operate independently. There is no hierarchical relationship between controlling shareholders and their functional departments and companies and their functional departments. The controlling shareholders and their subordinate bodies shall not issue to the Company and its subsidiaries any plans and instructions concerning the operation of the Company, nor shall they in any other way affect the independence of its operation and management.

**Article 51** The nomination of candidates for directors and supervisors by controlling shareholders shall strictly follow the conditions and procedures prescribed by laws, regulations and the Articles of Association. Candidates for directorship and supervisor role nominated by controlling shareholders shall have relevant professional knowledge and the ability to make decisions and supervise. The controlling shareholder shall not perform any approval procedures for the resolution on personnel election of the General Meeting of Shareholders and the resolution on the appointment of personnel of the Board of Directors; and shall not appoint or remove senior managers of the Company beyond the General Meeting of Shareholders or the Board of Directors.

**Article 52** The controlling shareholders shall not engage in any business operations which constitute direct or indirect competition with the Company.

## Section IV Related Party Transactions

**Article 53** A written agreement shall be signed between the Company and the affiliated party for related party transactions. The signing of the agreement should follow the principles of equality, voluntariness, equivalence and compensation, and the content of the agreement should be clear and specific. the Company shall disclose the conclusion, alteration, termination and performance of the agreement in accordance with the relevant provisions.

**Article 54** the Company shall take effective measures to prevent the related parties from interfering in the operation of the Company by monopolizing the channels of procurement and sales, thereby harming the interests of the Company. The related party transaction should follow the commercial principle and the price of the related party transaction should not deviate from the price or charging standard of the independent third party in the market in principle. The Company shall fully disclose the pricing basis of related party transactions.

**Article 55** When the General Meeting of Shareholders deliberates on related party transactions, the associated shareholders shall relinquish their voting rights over the motion (proposal) and the shares held (represented) by them shall not be counted into the total number of valid casts in the voting.

**Article 56** the Company shall strictly abide by the procedures stipulated in the laws, regulations and normative documents and the Articles of Association when considering related party transactions.

**Article 57** In considering related party transactions, the Board of Directors shall, unless the associated director has disclosed it to the Board of Directors in accordance with the Articles of Association, and the Board of Directors does not count it as a quorum and does not participate in the voting, the Company shall have the right to cancel the contract, transaction or arrangement unless the other party is a bona fide third party.

5

**Article 58** Where a director has a connection with an enterprise involved in the resolution of a board meeting, he/she shall not exercise the right to vote on the resolution, nor shall he/she exercise voting rights on behalf of any other director. The meeting of the Board of Directors may be held in the presence of a majority of the non-affiliated directors, and the resolution of the meeting of the directors shall be approved by a majority of the directors. In case the number of unaffiliated directors present at the Board of Directors is less than three, the matter shall be referred to the General Meeting of Shareholders for deliberation.

**Article 59** When deliberating related party transactions, the Board of Directors shall pay attention to the necessity and fairness of the transaction, and the possibility of harming the interests of non-affiliated shareholders, and, if necessary, shall employ a professional institution to issue a special report.

**Article 60** the Company shall take effective measures to prevent shareholders and their affiliated parties from occupying or transferring the Company's funds, assets and other resources in various forms.

**Article 61** The Board of Directors shall, in addition to the timely and full disclosure of related party transactions in accordance with relevant laws, regulations and normative documents, report on the implementation at the Annual General Meeting.

### Chapter V General Meeting of Shareholders
### Section I General Provisions

**Article 62** The General Meeting of Shareholders of a company shall be composed of all shareholders.

**Article 63** The General Meeting of Shareholders shall be the authority of the Company and shall exercise the following functions and powers according to law:

(1) to decide on the Company's business policy and investment plan;

(2) to elect and replace directors and decide on matters relating to the remuneration of directors;

(3) to elect and replace independent directors and decide on the allowances of independent directors;

(4) to elect and replace the supervisors appointed by the representatives of the shareholders and to decide on matters relating to the remuneration of the supervisors;

(5) to review and approve the report of the Board of Directors;

(6) to review and approve the report of the Board of Supervisors;

(7) to review and approve the Company's annual financial budget and final accounts;

(8) to review and approve the Company's profit distribution plan and loss compensation plan ;

(9) to consider and approve major related party transactions;

(10) to make a resolution on the increase or reduction of the registered capital of the Company;

(11) to make a resolution on the issuance of corporate bonds;

(12) to make a resolution on the investment projects funded by the Company;

(13) to make resolutions on matters such as merger, division, dissolution and liquidation of the Company;

(14) to amend the Articles of Association of the Company;

(15) to make a resolution on the employment or dismissal of an accounting firm by the company;

(16) to review the proposal of shareholders holding more than 3% of the total number of voting shares issued on behalf of the Company;

(17) to consider proposals submitted by independent directors;

(18) to review the proposals submitted by the Board of Supervisors of the Company;

(19) to review and approve the matters of external guarantee as provided for in the Articles of Association;

(20) to review matters in which the purchase and sale of material assets by the Company within one year exceeds 30% of its total audited assets in the latest period;

(21) to review equity incentive plans;

(22) to review other matters that shall be decided upon by the General Meeting of Shareholders in accordance with the laws, regulations and the Articles of Association.

The functions and powers of the above-mentioned General Meeting of Shareholders shall not be exercised by the Board of Directors or other institutions and individuals in the form of authorization.

**Article 64** The following acts of external guarantee of the Company shall be resolved and approved by the General Meeting of Shareholders.

(1) any guarantees after the total amount of external guarantees of the Company and its controlling subsidiaries reach or exceed 50% of its latest audited net assets

(2) any guarantee after the total amount of the Company's external guarantee reaches or exceeds 30% of the total audited assets in the latest period;

6

(3) guarantees provided for guaranteed subjects whose asset-liability ratio exceeds 70%;

(4) single guarantee which accounts for more than 10% of the latest audited net assets;

(5) guarantees provided to shareholders, actual controllers and their related parties.

**Article 65** The General Meeting of Shareholders shall exercise its functions and powers within the scope prescribed by laws and regulations and shall not interfere with the disposition of shareholders' rights.

**Article 66** General meetings shall be divided into annual general meeting and extraordinary general meeting.

Unless otherwise stated, the term "general meeting" in the Articles of Association includes the annual general meeting and the extraordinary general meeting.

**Article 67** Shareholders may attend the general meeting in person or entrust a proxy to attend and vote on their behalf. Shareholders' proxy does not have to be a shareholder of the Company.

Unless otherwise stated, the term "shareholder" in the following articles of this section includes a shareholder's proxy.

**Article 68** Shareholders present at the general meeting shall enjoy the right to be informed, speak, inquire and vote according to law.

Shareholders who meet the conditions stipulated in the Articles of Association shall have the right to submit shareholder proposals in accordance with the procedures prescribed in the Articles of Association.

**Article 69** The location in which the general meeting of the Company would be held shall be the city where the Company is located.

**Article 70** The General Meeting of Shareholders may, in addition to setting up a venue and holding it in the form of an on-site meeting, upon the decision of the convenor, also provide a form of online voting to facilitate the participation of shareholders in the meeting. Shareholders who vote through the internet shall be deemed to be present at the general meeting.

**Article 71** When the General Meeting of Shareholders adopts the form of online voting, the means of confirming the identity of the shareholders shall be set out in the notice of the meeting.

**Article 72** The convenor and moderator of the general meeting shall conscientiously and responsibly arrange the matters for deliberation at the meeting and shall give each motion or proposal a reasonable time for discussion.

**Article 73** The Board of Directors of a company shall appoint a lawyer to attend the general meeting and issue opinions and public announcements on the following issues:

(1) whether the convening and convening procedures of the General Meeting of Shareholders are in conformity with the provisions of the laws, administrative regulations, and the Articles of Association;

(2) whether the qualifications of the persons attending the meeting and the conveners are legal and valid;

(3) whether the voting procedure of the general meeting of shareholder and the result of the voting are legal and valid;

(4) legal opinions issued at the request of the Company on other issues.

**Article 74** the Company holding a general meeting shall adhere to the principle of simplicity and shall not grant additional economic benefits to shareholders present at the meeting.

**Article 75** The shareholders attending the General Meeting of Shareholders shall abide by the provisions of relevant laws, regulations, normative documents and Articles of Association of the Company, conscientiously maintain the order of the meeting, and shall not infringe upon the legitimate rights and interests of other shareholders.

### Section II Annual General Meeting of Shareholders

**Article 76** The annual general meeting shall be convened once a year and shall be convened within six months after the end of the previous fiscal year.

If the Company is unable to convene an annual general meeting within the period mentioned above, it shall report to the stock exchange, explain the reasons and make a public announcement.

**Article 77** The agenda of the Annual General Meeting shall include the following:

(1) to review and approve the report of the Board of Directors;

(2) to review and approve the report of the Board of Supervisors;

(3) to review and approve the Company's annual financial budget and final accounts;

(4) to review and approve the Company's profit distribution plan and loss compensation plan ;

(5) to make resolutions on the employment or dismissal of an accounting firm employed by the Company.

IRI-CRT-00001034 - Translation

Articles of Association - IRICO Display Devices Co. Ltd.

### Section III Extraordinary General Meeting of Shareholders

**Article 78** An Extraordinary General Meeting shall be convened within two months from the date of the occurrence if one of the following circumstances occurs:

(1) when the number of directors is less than five;

(2) when the uncompensated loss of the Company amounts to one third of the total share capital;

(3) when the shareholders holding more than 10% of the total voting shares of the Company individually or jointly request in writing;

(4) when the Board of Directors deems it necessary;

(5) when the Board of Supervisors proposes to convene;

(6) other circumstances stipulated in the Articles of Association.

The number of shares held in paragraph 3 above shall be calculated on the date of written request by the shareholders.

### Section IV. Convening of General Meeting of Shareholders

**Article 79** The General Meeting of Shareholders shall be convened by the Board of Directors according to law.

Where the Board of Directors is unable to perform its duties or fails to convene an annual general meeting without reasonable reasons, other qualified convenors shall have the right to convene the Annual General Meeting.

**Article 80** Independent director shall have the right to propose to the Board of Directors the convening of an Extraordinary General Meeting. The Board of Directors shall, in accordance with the provisions of the laws, administrative regulations and the Articles of Association, provide written feedback for approval or disapproval of the convening of the Extraordinary General Meeting within 10 days after the receipt of the proposal.

In case the Board of Directors agrees to convene an Extraordinary General Meeting, it shall, within five days after making the resolution of the Board of Directors, issue a notice of the convening of the General Meeting of Shareholders; in case the Board of Directors does not agree to the convening of the Extraordinary General Meeting, it shall state the reasons and make an announcement.

**Article 81** The Board of Supervisors shall have the right to propose to the Board of Directors the convening of an Extraordinary General Meeting, and shall submit it in writing to the Board of Directors. The Board of Directors shall, in accordance with the provisions of the laws, administrative regulations and the Articles of Association, within 10 days after receiving the proposal, provide written feedback for approval or disapproval of the convening of the Extraordinary General Meeting.

In case the Board of Directors agrees to convene an Extraordinary General Meeting, it shall, within five days after the resolution of the Board of Directors, issue a notice of convening the General Meeting of Shareholders. The notice shall seek the consent of the Board of Supervisors for the change originally proposed.

In case the Board of Directors does not agree to the convening of an Extraordinary General Meeting or fails to provide feedback within 10 days after receiving the proposal, it shall be deemed that the Board of Directors is unable or fails to perform its duty of convening a general meeting of shareholders, and the Board of Supervisors may convene and preside over the meeting on its own.

**Article 82** Shareholders who individually or collectively hold more than 10% of the shares of the Company shall have the right to request the Board of Directors to convene an Extraordinary General Meeting and shall submit it in writing to the Board of Directors. The Board of Directors shall, in accordance with the provisions of the laws, administrative regulations and the Articles of Association, within 10 days after receipt of the request, provide written feedback for approval or disapproval of the convening of the Extraordinary General Meeting.

In case the Board of Directors agrees to convene an Extraordinary General Meeting, it shall, within five days after the resolution of the Board of Directors, issue a notice of convening the General Meeting of Shareholders. The notice shall seek the consent of the relevant shareholders for the change of the original request.

In case the Board of Directors does not agree to convene an Extraordinary General Meeting, or fails to provide feedback within 10 days after receiving the request, the shareholders who individually or collectively hold more than 10% of the shares of the Company shall have the right to propose to the Board of Supervisors the convening of the Extraordinary General Meeting, and shall submit a request in writing to the Board of Supervisors.

Where the Board of Supervisors agrees to convene an Extraordinary General Meeting, it shall, within five days of receiving the request, issue a notice of convening the General Meeting of Shareholders. The relevant shareholders' consent shall be sought for the change of the original proposal in the notice.

In case the Board of Supervisors fails to issue a notice of the convening of General Meeting of Shareholders within the prescribed time limit, it shall be deemed that the Board of Supervisors shall not convene or preside over the general meeting, and shareholders who hold more than 10% of the shares of the Company individually or collectively for more than 90 consecutive days may convene and preside over the meeting themselves.

**Article 83** Where the Board of Supervisors or the shareholders decide to convene a general meeting of shareholder on their own, they shall notify the Board of Directors in writing, and at the same time report to local office of CSRC offices and stock exchange for the record.

The proportion of the shared held by convening shareholders shall not be less than 10% before the announcement of the resolution of the General Meeting of Shareholders.

8

When issuing the notice and resolution announcement of the General Meeting of Shareholders, the convening shareholders shall submit relevant certificate materials to the local office of CSRC and the stock exchange where the Company is located.

**Article 84** The Board of Directors and the secretary of the Board of Directors shall cooperate with the General Meeting of Shareholders convened by the Board of Supervisors or the shareholders themselves. The Board of Directors shall provide register of shareholders on the date of equity registration.

**Article 85** the expenses necessary for the meeting of shareholders convened by the Board of Supervisors or the shareholders themselves shall be borne by the Company.

### Section V Notice of General Meeting of Shareholders

**Article 86** When a company holds an Annual General Meeting, the convenor shall notify the shareholders of the Company by public announcement 20 days before the meeting; when the Company shall convene an Extraordinary General Meeting, the convenor shall notify the shareholders by public announcement 15 days before the meeting. The date of the meeting shall not be included in the calculation of the time limit for the commencement of the notice of the said meeting.

Once the notice of the meeting is announced, all relevant persons shall be deemed to have received the notice.

**Article 87** The notice of convening the General Meeting of Shareholders shall include the following contents:

(1) the convenor, time, location, manner and duration of the meeting;

(2) matters to be review by the meeting;

(3) the voting procedure (applicable to online voting);

(4) to state in obvious terms that all shareholders shall have the right to attend the General Meeting of Shareholders, and may entrust a proxy to attend the meeting and vote, and the proxy of the shareholder need not be a shareholder of the Company;

(5) the date of equity registration for shareholders entitled to attend the general meeting ;

(6) the time and place of service of the proxy letter;

(7) the name and contact information of the permanent contact person for the meeting;

(8) the date, location and manner of registration of the meeting.

The interval between the date of equity registration and the date of the General Meeting of Shareholders set by the Company shall not be more than 7 working days. Once confirmed, the date of equity registration shall not change.

**Article 88** Upon issuing notice of convening the General Meeting of Shareholders, the convenor shall, within the prescribed time, provide full and complete disclosure of all the proposals to be reviewed at the meeting on the designated website, and for the matters to be discussed that shall require the opinions of the independent directors, the opinions and reasons of the independent director shall be disclosed at the same time when issuing the notice or supplementary notice of the General Meeting of Shareholders.

**Article 89** Upon the notice of convening the General Meeting of Shareholders, except for the reasons of force majeure or other unexpected events, the general meeting shall not be postponed or cancelled, and the proposal specified in the notice shall not be cancelled. In the event of an extension or cancellation, the convenor shall announce and explain the reasons at least two working days before the scheduled date.

### Section VI Proposal of General Meeting of Shareholders

**Article 90** When the Company convenes General Meeting of Shareholders, the Board of Directors, the Board of Supervisors and the shareholders who individually or collectively hold more than 3% of the shares of the Company shall have the right to submit proposals to the Company.

**Article 91** A proposal for the General Meeting of Shareholders shall meet the following conditions:

(I) there shall be clear topics;

(2) the content of the proposal shall be specific and complete;

(3) the contents of the proposal shall not conflict with the provisions of the laws, regulations and the Articles of Association and falls within the scope of business of the Company and the scope of responsibilities of the general meeting;

(4) submitted to or served on the Board of Directors in writing.

**Article 92** Shareholders who, individually or collectively, hold more than 3% of the shares of the Company may, within 10 days before the convening of the General Meeting of Shareholders, submit an interim proposal and submit it in writing to the convenor. The convenor shall, within two days after receiving the proposal, issue a supplementary notice to the general meeting and announce the contents of the interim proposal. Except in the circumstances specified in the preceding paragraph, the convenor may not, after issuing a notice to the General Meeting of Shareholders, amend the proposal already listed in the notice of the general meeting or add new proposals. In case a proposal is not specified in the notice of the general meeting or does not meet the requirements of the proposal of the general meeting under Article 91 of the Articles of Association, the General Meeting of Shareholders shall not vote and make a resolution.

### Section VII Convening of General Meeting of Shareholders

**Article 93** The Board of Directors and other convenors shall take necessary measures to ensure the normal order of the General Meeting of Shareholders. For acts such as interference with the general meeting, trouble causing and infringement upon

9

the legitimate rights and interests of shareholders, measures shall be taken to stop them and report to the relevant departments for investigation in a timely manner.

**Article 94** All shareholders or their proxies registered on the date of equity registration shall have the right to attend the General Meeting of Shareholders and exercise voting rights in accordance with relevant laws and regulations and the Articles of Association.

**Article 95** The attendance of shareholders at the general meeting shall be registered at the time specified in the notice of the meeting. Registration of the meeting may be registered by shareholders in the registry or by fax or letter.

**Article 96** The shareholders shall separately provide the following documents for registration of the meeting:

(1) corporate shareholders: photocopies of business licenses of legal persons, certificates of legal representatives or letter of authorisation and certificates of identity of attendees;

(2) individual shareholders: personal identification certificate and stock account card; if an entrusted proxy is present, a copy of the identity certificate of the individual shareholder shall be provided; the stock account card; the letter of authorisation; and the identity certificate of the proxy.

The above identity certificates refer to legally valid identity documents within the territory of China, including, but not limited to, resident identity cards and passports of the People's Republic of China.

**Article 97** When a shareholder entrusts a proxy to attend the meeting on his/her behalf, the number of proxies shall not exceed two. Where the principal is a corporate shareholder, its legal representative or the person authorised by the resolution of the Board of Directors or other decision-making bodies shall attend the meeting as a representative.

**Article 98** A shareholder shall entrust a proxy in writing, either signed by the principal or by the proxy in writing; where the principal is a corporate shareholder, either stamped with the seal of the corporate shareholder or signed by its duly entrusted proxy.

Where the letter of authorisation is signed by another person authorised by the principal, the letter of authorisation or other authorisation document shall be notarized.

**Article 99** The letter of authorisation issued by a shareholder to entrust another person to attend a General Meeting of Shareholders shall contain the following contents:

(a) the name of the proxy;

(II) whether he/she has the right to vote;

(3) instructions to vote for, against or abstain from voting separately on each matter on the agenda of the general meeting;

(4) Specific instructions on whether or not to vote on the provisional proposal that may be included in the agenda of the general meeting, and what type of voting rights shall be exercised if voting rights are available;

(5) the date of issuance and the period of validity of the letter of authorisation;

(6) the signature (or seal) of the principal, and in the case of the principal being a corporate shareholder, the seal of the legal entity shall be affixed.

The letter of authorisation shall indicate whether the proxy may vote according to his/her own will if the principal does not give specific instructions.

When there are two proxies entrusted by the shareholder, the voting right shall be expressly granted to one of them.

**Article 100** The proxy for voting shall be prepared at least 24 hours before the convening of the General Meeting of Shareholders at the Company's domicile or in such other places as may be designated in the notice of convening the meeting.

**Article 101** The persons attending the General Meeting of Shareholders shall go through the formalities of sign-in.

The sign-in register shall be made by the Company. The name of the person attending the meeting (or the name of the unit), his/her identification number, the name of the principal and the amount of shares holding or representing voting rights shall be stated in the register.

**Article 102** Where an individual shareholder attends the general meeting in person, he/she shall present his/her identity certificate and stock ownership certificate. Where a proxy entrusted by an individual shareholder attends the shareholders' general meeting, he/she shall present a letter of authorisation, a certificate of ownership of the shareholder and a personal identity certificate.

**Article 103** The corporate shareholder shall be represented at the shareholders' general meeting by the its legal representative or a proxy entrusted by the legal representative. In case the legal representative attends the shareholders' general meeting, he shall present the certificate of legal entity, the certificate capable of proving his/her qualification of the legal representative, the certificate of stock ownership and the identity certificate of his or her own.

Where a proxy entrusted by a corporate shareholder attends the shareholders' general meeting, he/she shall present his/her own identity certificate, the certificate of proof of the legal entity of corporate shareholder, the letter of authorisation issued by the legal representative of the legal entity of the corporate shareholder and the certificate of stock ownership.

**Article 104** The convenor and the lawyer employed by the Company shall jointly verify the legitimacy of the qualification of shareholders according to the register of shareholders provided by the securities registration and settlement institution, and shall register the names (or title) of shareholders and the number of shares holding voting rights. The registration of the meeting shall be terminated prior to the announcement by the moderator of the meeting of the number of shareholders and proxies present at the meeting and the total number of shares holding voting rights.

IRI-CRT-00001037 - Translation

**Article 105** The Board of Directors of the Company, independent directors and shareholders who meet the relevant conditions may solicit the voting rights from the shareholders of the Company at the shareholders' general meeting.

The solicitation of voting rights shall be conducted on a pro bono basis and the information shall be fully disclosed to the solicited persons.

**Article 106** When the General Meeting of Shareholders is convened, all the directors, supervisors and secretaries of the Board of Directors of the Company shall be present, and the manager and other senior managerial personnel shall attend as non-voting delegates.

**Article 107** The General Meeting of Shareholders convened by the Board of Directors shall be presided over by the chairman of the Board of Directors. In case the chairman is unable to perform his/her duties for some reasons, the vice-chairman shall preside; in case the vice-chairman is unable to perform his/her duties or fails to perform his/her duties, a director elected jointly by more than half of the directors shall preside.

The General Meeting of Shareholders convened by the Board of Supervisors shall be presided over by the chairman of the Board of Supervisors. In case the chairman of the Board of Supervisors is unable to perform his/her duties or fails to perform his/her duties, a supervisor elected jointly by more than half of the supervisors shall preside.

The General Meeting of Shareholders convened by the shareholders themselves shall be presided over by a representative nominated by the convenor.

When convening the General Meeting of Shareholders, in case the moderator of the meeting violates the rules of procedure and prevents the meeting from continuing, the general meeting may, with the consent of more than half of the shareholders present at the meeting, elect a person to act as the moderator and continue.

**Article 108** At the Annual General Meeting, the Board of Directors and the Board of Supervisors shall report to the general meeting on their work in the past year. Each independent director shall also make a debriefing report.

**Article 109** The chairman, directors, supervisors or general managers and other senior management personnel of the Company shall, at the General Meeting of Shareholders, provide explanations and demonstrations to the questions and suggestions of the shareholders, except for the following circumstances:

(1) the question is not related to the subject of the meeting;

(B) the matters involved in the question has yet to be ascertained;

(3) the question relates to the Company's trade secrets;

(4) answering the question will lead to a violation of the obligation of fair information disclosure;

(5) other reasonable reasons.

### Section 8. Voting Procedure of General Meeting of Shareholders

**Article 110** The shareholders shall exercise their voting rights by the number of voting shares they represent, and each share shall have one vote.

All shareholders or their proxies registered at the date of shareholder registration shall have the right to attend the General Meeting of Shareholders and exercise voting rights in accordance with relevant laws and regulations and the Articles of Association.

**Article 111** The General Meeting of Shareholders shall vote item by item on the reports, motions and proposals included in the agenda of the meeting by secret ballot, and shall not suspend or not vote on them for any reason.

Where the General Meeting of Shareholders has different proposals regarding the same matter, the voting shall be held in the order of time in which the proposals are put forward.

**Article 112** The convenor shall ensure that the general meeting of shareholders is held continuously until a final resolution is reached. Where the general meeting may be suspended or unable to make a resolution due to force majeure and other special reasons, necessary measures shall be taken to resume the convening of the general meeting or directly terminate it as soon as possible, with timely announcement to be made. At the same time, the convenor shall report to the local office of the CSRC and the stock exchange where the Company is located.

**Article 113** The moderator of the meeting shall, before voting, announce the number of shareholders and proxies present at the meeting and the total number of voting shares. The number of shareholders and proxies present at the meeting and the total number of voting shares shall be subject to the registration of the meeting.

**Article 114** the Company may, in addition to on-site voting , provide a voting platform to shareholders through a network system or other means in accordance with the provisions of the CSRC, so as to facilitate the shareholders to exercise their voting rights.

**Article 115** All shareholders registered on the registration date of the General Meeting of Shareholders shall have the right to exercise their voting rights through the voting system of the general meeting network, However, the same voting right can only be selected by one of the on-site voting, online voting or other voting methods that meet the requirements. The result of the first ballot shall prevail in the event of repeated voting on the same voting right.

**Article 116** Before voting on a proposal, the General Meeting of Shareholders shall elect two shareholder representatives and a supervisor as the scrutineers to scrutinize the voting process and the counting of votes.

Shareholders who have an interest in deliberating matters shall not act as scrutineers and participate in the scrutinizing and counting of votes.

11

The witness lawyers employed by the Company and the scrutineers shall be jointly responsible for the scrutinizing and counting of the votes.

Shareholders who vote online or otherwise have the right to check their voting results through the corresponding voting system.

**Article 117** The closing time of the site of the General Meeting of Shareholders shall not be earlier than that of the network or any other means. The moderator of the meeting shall announce the voting situation and result of each proposal and, based on the result of the voting, announce whether the proposal is adopted or not. Before the official announcement of the voting results, the listed companies, tellers, scrutineers, major shareholders, network service parties and other relevant parties involved on the site, network and other voting methods of the general meeting shall have the obligation to keep the voting information confidential.

**Article 118** The shareholders present at the General Meeting of Shareholders shall express one of the following views on the proposal submitted to the vote: consent, opposition or abstention.

An unfilled, misfilled, illegible voting vote, or a non-voting vote, shall be deemed as a waiver of the voting right of the voter, and the voting result of the number of shares held by him/she shall be counted as "abstention".

**Article 119** The voting results shall be announced on the site after the voting votes have been counted by the scrutineers, and the voting results of the resolutions shall be recorded in the minutes of the meeting.

The scrutineers shall sign the voting statistics, and the voting votes and the voting statistics shall be filed together.

**Article 120** Where the moderator of the meeting has any doubt about the voting results, he/she may count the number of votes cast; where the moderator of the meeting does not count the votes, and the shareholders present at the meeting shall object to the voting results announced by the moderator, they shall have the right to demand the counting of the votes immediately after the announcement of the voting results, and the moderator shall count the votes immediately.

### Section IX Resolution of General Meeting of Shareholders

**Article 121** Resolutions of General Meeting of Shareholders are divided into ordinary resolutions and special resolutions.

**Article 122** The ordinary resolution of the General Meeting of Shareholders shall be approved by more than half of the voting rights held by the shareholders participating in the meeting.

The special resolution shall be approved by more than two-thirds of the voting rights held by the shareholders participating in the meeting.

**Article 123** The following matters shall be approved by ordinary resolution of the General Meeting of Shareholders:

(1) work report of the Board of Directors and the Board of Supervisors;

(2) profit distribution plan and loss compensation plan drawn up by the Board of Directors;

(3) the appointment and dismissal of members of the Board of Directors and the Board of Supervisors, their remuneration and methods of payment;

(4) the Company's annual budget plan and final accounts plan;

(5) the annual report of the Company;

(6) other matters that should be approved by special resolutions in accordance with the provisions of laws, administrative regulations or the Articles of Association.

**Article 124** the following matters shall be approved by special resolutions of the General Meeting of Shareholders:

(1) the Company increases or decreases its registered capital;

(2) the division, merger, dissolution and liquidation of the Company;

(3) the amendment of the Articles of Association of the Company;

(4) in case the Company purchases or sells major assets or guarantee more than 30% of its total assets audited in the latest period;

(5) equity incentive plan;

(6) any other matters that need to be approved by special resolutions in accordance with the provisions of the laws, administrative regulations, normative documents and the Articles of Association, as well as those identified by ordinary resolution of the general meeting of shareholder as having a significant impact on the Company that needs to be approved by special resolutions.

**Article 125** Where the General Meeting of Shareholders of the Company approves proposals on cash distribution, transfer of shares or conversion of capital provident fund into shares, the Board of Directors of the Company shall, within two months after the conclusion of the General Meeting of Shareholders, implement a specific plan.

**Article 126** Unless the Company is in a crisis or under other special circumstances, without being approved by a special resolution of the General Meeting of Shareholders, the Company shall not enter into a contract with any person other than directors, managers or other senior management personnel to hand over the management of all or important business of the Company to that person.

**Article 127** The moderator of the meeting shall announce whether or not the resolution of the General Meeting of Shareholders shall be approved according to the voting results.

IRI-CRT-00001039 - Translation

The resolution shall take effect after the signature of the directors and the secretary of the Board of Directors present at the meeting.

In case all the directors of the Board of Directors of the Company fail to attend the General Meeting of Shareholders, the signature of all the shareholders present at the meeting shall prevail.

**Article 128** The resolution of the General Meeting of Shareholders shall be announced in a timely manner, and the announcement shall set out the number of shareholders and proxies present at the meeting, the total number of voting shares and the proportion of voting shares in the total number of voting shares of the Company, the manner of voting, the voting results of each proposal and the details of the resolutions approved.

**Article 129** The proposal shall not be amended by the General Meeting of Shareholders when it is examined. Otherwise, the relevant amendment shall be regarded as a new proposal and shall not be voted upon at the current meeting.

**Article 130** In case a proposal has not been approved or the resolution of the previous meeting has been amended at the current General Meeting of Shareholders, special prompts shall be made in the announcement of the resolution of the current meeting.

### Section X Election Procedures of Directors and Supervisors

**Article 131** The directors and supervisors elected by the General Meeting of Shareholders shall, individually or jointly, nominate candidates who hold more than 3% of the shares of the Company and submit them to the General Meeting of Shareholders for voting in the form of proposals.

**Article 132** The independent directors shall be nominated by the Board of Directors of the Company, the Board of Supervisors, and the shareholders who hold more than 1% of the shares of the Company individually or collectively, and shall be elected by the General Meeting of Shareholders.

**Article 133** When shareholders nominate candidates for directors, independent directors or supervisors, they shall submit to the Board of Directors the proposal for nomination, the details of the candidates nominated, the statement of the candidates or the letter of commitment 10 days before the General Meeting of Shareholders.

**Article 134** The Board of Directors shall, in the notice of the General Meeting of Shareholders, fully disclose the details of the candidates for directors, independent directors and supervisors, including at least the following:

(1) personal information such as educational background, work experience, part-time work, etc.;

(2) whether there is an association with the Company or the controlling shareholder and the actual controller of the Company;

(3) disclosure of the amount of shares held by them in the Company;

(4) whether or not they have been punished by the CSRC and other relevant departments and punished by the stock exchange.

**Article 135** Candidates for directors, independent directors and supervisors shall, prior to the General Meeting of Shareholders, issue a written undertaking to accept nominations, promise that the personal data publicly disclosed shall be true and complete and ensure that they would perform their duties effectively after being elected.

**Article 136** A cumulative voting system shall be adopted in the election of directors by the General Meeting of Shareholders.

**Article 137** the system of cumulative voting shall be implemented as follows:

(I) Method of calculating cumulative votes

(a) the number of voting shares held by each shareholder multiplied by the number of directors to be elected at this General Meeting of Shareholders shall be the cumulative number of votes cast by that shareholder in this voting.

(B) in the event of a multi-round election at a General Meeting of Shareholders, the cumulative voting votes of the shareholders shall be recalculated according to the number of directors to be elected in each round.

(C) the secretary of the Board of Directors of the Company shall announce the cumulative votes of each shareholder before each cumulative vote, and any shareholder, independent director, supervisor, scrutineer, witness lawyer or notary of the notary office who has any objection to the announcement of the result shall check immediately.

(II) Method of voting

Each shareholder may, in accordance with his/her own will (the proxy shall comply with the instructions of the principal's letter of authorisation), cast the cumulative votes separately or exclusively on any director candidate, and in case if the shareholder votes on two or more director candidates, the votes shall not have to be equally distributed, but the sum of the respective votes shall be equal to or less than the number of votes accumulated by them, otherwise the voting shall be invalid.

(III) Election of directors

1. Equal elections

(A) a director candidate shall be elected when the number of votes obtained exceeds 1/2 of the number of shares validly cast at a meeting; if

(B) the number of elected directors is less than the number of directors to be elected, but the number of elected directors exceeds 2/3 or more of the board members as stipulated in the Articles of Association, the vacancy shall be filled at the next general meeting of the shareholders; if

13

(C)the number of elected directors is less than the number of directors to be elected and, as a result, the members of the Board of Directors are less than 2/3 or more as stipulated in the Articles of Association, a second round of election shall be held for the unelected candidates for directors; if

(D) the requirements of the preceding paragraph have not been met in the second round of election, a further General Meeting of Shareholders shall be convened within two months after the conclusion of the current general meeting to elect the vacant directors.

2. Differential elections

(A) if the candidates for directors have obtained more than 1/2 votes in excess of the number of shares valid for voting at the meeting and the number of such candidates is equal to or less than the number of directors to be elected, such candidates shall be elected; if

(B) more than 1/2 votes have been cast in excess of the number of valid shares cast at the meeting, the number of directors to be elected shall be more than the number of directors to be elected, and those who have obtained more votes shall be elected in the order of the number of votes obtained; if

(C) a second round of elections shall be held for two or more candidates who are unable to decide which of them to be elected because they have the same number of votes; if

(D) if the second round of the election still fails to decide on the final candidate, another election shall be held at the next General Meeting of Shareholders; if

(E) the members of the Board of Directors are less than 2/3 specified in the Articles of Association, the next General Meeting of Shareholders shall be held within two months after the conclusion of the current meeting.

**Article 138** When the General Meeting of Shareholders elects the supervisors of shareholders, the voting method shall be the same as that of the directors.

**Article 139** Once elected, directors and supervisors of the shareholders shall assume their duties immediately.

### Section XI Minutes of General Meeting of Shareholders

**Article 140** Minutes of the General Meeting of Shareholders shall be made by the secretary of the Board of Directors. The minutes shall contain the following:

(1) the number of voting shares at the meeting and the proportion in the total number of shares of the Company;

(2) the date, location, agenda and name of the convener of the meeting;

(3) the names of the moderator and the directors, supervisors, managers and other senior managerial personnel present at the meeting;

(4) the review of each proposal, the main points of speech and the result of the voting;

(5) the voting results of each voting matter (including the results of the on-site voting, online voting and other voting methods; the voting results of the non-circulating shareholders and the circulating shareholders, respectively);

(6) the inquiry opinions and suggestions of the shareholders and the replies or explanations from the Board of Directors and the Board of Supervisors;

(7) the names of lawyers, tellers and scrutineers;

(8) other contents that should be included in the minutes in the consideration of the General Meeting of Shareholders or stipulated in the provisions of the Articles of Association.

Article 141 The convenor shall ensure that the contents of the minutes of the meeting are true, accurate and complete. The directors, supervisors, secretaries of the Board of Directors, convenors or their representatives, and the moderator of the meeting shall sign the minutes of the meeting. The minutes of the meeting shall be kept together with the signature book of the shareholders present on the site, the letter of authorisation and the valid information of online and other means of voting, for a period of not less than 10 years.

Article 142 Matters such as the number of participants in the General Meeting of Shareholders, the number of shares held by the shareholders present at the meeting, the letter of authorisation, the voting results of each voting matter, the minutes of the meeting, the legitimacy of the meeting procedure, etc., may be notarized.

### Section XII. Authorization of the Board of Directors by the General Meeting of Shareholders

**Article 143** The authority of the Board of Directors to decide on matters of foreign investment shall be as follows: a single project shall not exceed 15% of the net audited asset value in the latest period; and the annual cumulative investment project shall not exceed 50% of the net asset value of the Company audited in the latest period.

**Article 144** The authority of Board of Directors to decide on the acquisition or sale of assets shall be as follows: the cumulative amount of a single project or annual project shall not exceed 30% of the total assets audited in the latest period; the assets shall be purchased or sold to the same party not more than three times in 12 consecutive months;

the Board of Directors shall have the right to decide on asset mortgage projects whose annual accumulated amount does not exceed 50% of the last audited net asset value.

**Article 145** The Board of Directors shall have the right to determine the amount of transactions under a single contract or related party transactions in which the amount of the same subject matter within 12 consecutive months shall not exceed 5% of the absolute value of the last audited net assets of the Company.

14

## Chapter VI. Directors and Boards of Directors

### Section 1 Directors

**Article 146** A director of the Company shall be a natural person and not be required to hold shares in the Company.

**Article 147** A director of the Company may not be appointed under any of the following circumstances.

(1) having no civil capacity or limited civil capacity;

(2) being sentenced to punishment for corruption, bribery, embezzlement of asset, misappropriation of asset or disruption of the order of the socialist market economy, and it has been less than 5 years since the execution completes; or being deprived of political rights because of a crime, and it has been less than 5 years since the execution completes;

(3) serving as the director or manager of the Company or enterprise in bankruptcy liquidation and bearing personal responsibility for the bankruptcy of the Company or enterprise, and it has been less than 3 years from the date of the completion of the bankruptcy liquidation of the Company or enterprise;

(4) serving as the legal representative of a company or an enterprise whose business license has been revoked or ordered to be closed down for violation of the law, and being personally liable, and it has been less than 3 years from the date of the revocation of the business license of the Company or enterprise;

(5) the outstanding debts due to the individual in a relatively large amount;

(6) imposed by the China Securities Regulatory Commission (CSRC) on the prohibition of entry into the securities market, and the time limit has not expired;

(7) other contents prescribed by laws, administrative regulations or departmental regulations.

The election of a director in contravention of this section shall be null and void.

In case of any of the above situation occurs to the serving directors, the Board of Directors shall immediately stop the directors concerned from performing their duties and request the General Meeting of Shareholders to replace them as soon as it becomes aware of the occurrence of such circumstances.

**Article 148** The directors shall be elected or replaced by the General Meeting of Shareholders for a term of three years. Upon the expiration of the directors' term of office, they may be re-elected. Before the expiration of their term of office, the General Meeting of Shareholders shall not dismiss them without reason.

The term of office of a director shall be counted from the date of approval of the resolution of the General Meeting of Shareholders until the expiration of the term of office of the current Board of Directors. If a director's term of office expires without timely re-election, the original director shall still perform his/her duties as a director in accordance with the laws, administrative regulations, departmental regulations and the provisions of the Articles of Association before the re-elected director takes up his/her position.

**Article 149** The directors shall abide by the provisions of the laws, administrative regulations and the Articles of Association and shall bear the following obligations of loyalty to the Company:

(1) they shall not abuse their power to accept bribes or other illegal income, and may not encroach on company assets;

(2) they shall not misappropriate company funds;

(3) the assets or funds of the Company shall not be kept in an account in their own name or in the name of any other individual;

(4) they shall not, in violation of the provisions of the Articles of Association, lend the Company funds to others or provide guarantees for others with the Company assets without the consent of the General Meeting of Shareholders or the Board of Directors;

(5) no contract or transaction with the Company shall be entered into without the consent of the General Meeting of Shareholders or in violation of the provisions of the Articles of Association;

(6) they shall not, without the consent of the General Meeting of Shareholders, abuse their duties to seek for themselves or others business opportunities that should belong to the Company, to run their own business on their own or for others in the same business as the Company;

(7) they shall not accept the commission on transactions with the Company as their own;

(8) they shall not disclose company secrets without authorisation;

(9) they shall not abuse their associated relationship to harm the interests of the Company;

(10) other obligations of loyalty stipulated in laws, administrative regulations, departmental regulations and the Articles of Association.

The income earned by the directors in violation of the provisions of this article shall be attributable to the Company; if losses are caused to the Company, the directors shall be liable for compensation.

**Article 150** the Company shall sign an appointment contract with its directors and clarify the rights and obligations between the Company and the directors, the term of office of the directors, the liability of the directors for violating laws and regulations and the Articles of Association, and the compensation from the Company's earlier cancellation of the contract for reasons.

**Article 151** The directors shall abide by the laws, administrative regulations and the Articles of Association and shall bear the following obligations of diligence to the Company:

(1) they shall exercise with care, seriousness and diligence the rights conferred on them by the Company to ensure that its business practices are in conformity with national laws, administrative regulations and various national economic policies, and that its business activities shall not exceed the scope of business stipulated in the business license;

(2) all shareholders shall be treated fairly;

(3) they shall keep abreast of the situation of the Company's business operation and management in a timely manner;

(4) A written confirmation opinion shall be signed on the Company's periodic report. To ensure that the information disclosed by the Company is true, accurate and complete;

(5) they shall truthfully provide relevant information and materials to the Board of Supervisors, and shall not hinder the Board of Supervisors or supervisors from exercising their functions and powers;

(6) other obligations of diligence as stipulated in laws, administrative regulations, departmental regulations and the Articles of Association.

**Article 152** No director may act on behalf of the Company or the Board of Directors in his/her personal capacity without the provisions of the Articles of Association or the lawful authorisation of the Board of Directors. When a director acts in his/her own capacity, if the third party reasonably believes that the director is acting on behalf of the Company or the Board of Directors, the director shall declare his/her position and identity in advance.

**Article 153** Where the individual director or any other enterprise in which he/she holds position is directly or indirectly associated with existing or planned contract, transaction or arrangement of the Company, (other than an employment contract), the nature and extent of the relationship shall be disclosed to the Board of Directors as soon as possible, regardless of whether the relevant matter generally requires the approval or consent of the Board of Directors.

**Article 154** Where a director of the Company notifies the Board of Directors in writing before the Company first considers entering into the relevant contract, transaction or arrangement, and declares that company's future contracts, transactions and arrangement are of interest to the Company due to the contents listed in the notice, the relevant director shall be deemed to have made disclosure stipulated in the preceding article of the Articles of Association.

**Article 155** Where a director fails to attend the Board of Directors' meeting in person for two consecutive times and does not entrust other directors to attend the meeting, he/she shall be deemed unable to perform his/her duties, and the Board of Directors shall recommend that he/she be replaced by the General Meeting of Shareholders.

**Article 156** A director may resign before the expiration of his/her term of office. He/she shall submit a written resignation report to the Board of Directors.

**Article 157** Where the resignation of a director results in fewer than 5 members of the Board of Directors of the Company, the resignation of the director shall not take effect until the next director has filled the vacancy arising from his/her resignation.

The remaining directors shall, as soon as possible, convene an Extraordinary General Meeting to elect the directors to fill the vacancy arising from the resignation of the director. Before the General Meeting of Shareholders has made a resolution on the election of director, the functions and powers of the resigning director and the remaining directors shall be subject to reasonable restrictions.

Except in the circumstances listed in the preceding paragraph, the resignation report submitted by a director shall take effect when it is delivered to the Board of Directors.

**Article 158** Where a director proposes to resign or his/her term of office expires, his/her obligations to the Company and the shareholders shall remain valid within one year after the his/her resignation report takes effect or the his/her term of office expires.

**Article 159** A director who has not completed his/her term of office shall be liable for any losses caused to the Company as a result of his/her unauthorized departure.

**Article 160** the Company shall not pay taxes for its directors in any form.

**Article 161** Where a resolution of the Board of Directors violates laws, administrative regulations or the Articles of Association and causes the Company to suffer losses, the directors participating in the resolution shall be liable for compensation to the Company. A director may, however, be exempt from liability if it proves that an objection was made at the time of the voting and recorded in the minutes of the meeting.

**Article 162** A director who, in the course of performing his/her duties, violates the provisions of laws, administrative regulations, departmental regulations or the Articles of Association and causes losses to the Company shall be liable for compensation.

**Article 163** Upon the approval of the General Meeting of Shareholders, the Company may purchase liability insurance for the directors. Except for the liability of directors resulting from the violation of laws, administrative regulations and the provisions of the Articles of Association.

### Section II Independent Directors

**Article 164** the Company shall have three independent directors, of whom there shall be no less than one accounting practitioner with a senior professional title or a certified public accountant qualification.

**Article 165** The independent directors shall be nominated by the Company's Board of Directors, Board of Supervisors and shareholders holding more than 1% of shares of the Company individually or collectively, and shall be elected or replaced by the General Meeting of Shareholders.

IRI-CRT-00001043 - Translation

**Article 166** Before the election of independent directors at the General Meeting of Shareholders, the Company shall submit the relevant materials (including, but not limited to, statements of nominators, statements of candidates and biographical records of independent directors) of the candidates for independent directors to the local office of CSRC and the stock exchanges where the Company is located.

If the Board of Directors objects to the relevant information of the nominees, it shall submit the its written opinions at the same time.

**Article 167** Where a stock exchange objects to the qualifications or independence of the candidate for an independent director, the candidate may not be elected as an independent director, but may, with the consent of the nominator, stand for election as a director candidate.

When an independent director shall be elected at the General Meeting of Shareholders, the Board of Directors shall provide an explanation as to whether the candidate for independent director has been challenged by the stock exchange.

**Article 168** The nominator of an independent director shall obtain the consent of the nominee before his/or nomination. The nominator shall have a full understanding of the nominees' occupation, educational background, title, detailed work experience and all part-time jobs, and shall make a statement on his/her qualifications and independence as an independent director.

**Article 169** Upon acceptance of a nomination, an independent director shall issue a public statement concerning the absence of any relationship between himself/herself and the Company that may affect his/her independent and objective judgment.

**Article 170** The term of office of an independent director shall be the same as that of the other members of the current Board of Directors.

Independent directors may be re-elected for a term not exceeding six years.

**Article 171** the Company shall pay an appropriate allowance to the independent directors.

The allowance of an independent director shall be prepared by the Board of Directors, submitted to the General Meeting of Shareholders for review and approval, and disclosed in the annual report of the Company.

In addition to the above allowances, the independent directors shall not derive additional undisclosed benefits from the Company and its major shareholders or interested institutions and personnel.

**Article 172** The independent director shall be responsible to all the shareholders of the Company, but when the interests of the shareholders are not consistent, they shall pay more attention to the interests of the minority shareholders.

**Article 173** An independent director shall meet the following basic conditions for his/her appointment, which shall be appropriate for him/her to exercise functions and powers:

(1) to be qualified as a director of a listed company in accordance with laws, administrative regulations and other relevant provisions;

(2) having the independence required by the normative documents of the securities regulatory authority;

(3) having basic knowledge of the operation of a listed company and being familiar with relevant laws, administrative regulations, rules and regulations;

(4) having at least five years of legal, economic or other work experience necessary for the performance of the duties of independent director;

(5) other conditions stipulated in the Articles of Association of the Company.

**Article 174** The following persons shall not serve as independent directors:

(1) persons employed in the Company or its subsidiaries or branches, and their immediate relatives and main social relations;

(2) the natural person shareholders who directly or indirectly hold more than 1% shares issued outside the Company or are among the top 10 shareholders of the Company, and their immediate relatives and main social relations;

(3) persons employed ,in the units holding more than 5% shares issued outside the Company directly or indirectly or among the top 5 shareholders of the Company, and their immediate family members and main social relations;

(4) any person who has had the circumstances listed in the preceding three paragraphs in the last year;

(5) persons who have an interest relationship with the Company, its affiliates or the Company's management personnel;

(6) persons employed in institutions that have direct or indirect business relations or interests with the Company;

(7) persons who provide financial, legal or advisory services to the Company or its subsidiaries or branch companies, or other persons employed in such institutions;

(8) persons employed in securities regulatory authorities, securities institutions and securities investment funds;

(9) any person who may not be allowed to serve as a director of a company as stipulated in the Company Law or other relevant laws or administrative regulations;

(10) persons who have been identified by the CSRC as being prohibited from entering the market and whose prohibition have not yet been lifted.

(11) other persons between the companies who may affect their independent and objective judgements.

(12) other persons identified by the CSRC.

The above immediate family members refer to the spouses, parents, children and so on; the main social relations refer to brothers and sisters, mother/father-in-law, daughter/son-in-law, the spouses of brothers and sisters, brothers and sisters of the spouses, etc.

**Article 175** The independent director shall perform the duty of due diligence in good faith as stipulated in the laws, regulations, normative documents and the Articles of Association.

**Article 176** In addition to the general functions and powers of directors, an independent director shall have the following special functions and powers:

(1) A major related party transaction (which refers to a related party transaction in which the total amount of the Company's proposed agreement with the associated party exceeds 3 million yuan or more than 5% of the Company's latest audited net asset value) shall be submitted to the Board of Directors for discussion only after the receipt of prior consent from the independent directors; before making judgment, the independent director may appoint an intermediary institution to issue an independent financial advisory report as the basis for his/her judgment;

(2) to propose to the Board of Directors the employment or dismissal of an accounting firm;

(3) to request the Board of Directors to convene an Extraordinary General Meeting;

(4) to propose the convening of a meeting of Board of Directors;

(5) before making a resolution, the Board of Directors shall adopt the proposal to suspend voting if the independent director considers that the information or argumentation of the matter under review is insufficient;

(6) to solicit the voting rights publicly from the shareholders before the convening of General Meeting of Shareholders;

(7) to hire an external audit institution or an advisory body independently.

In case that the above proposal is not accept or the above functions and powers could not be exercised normally, the Company shall disclose the relevant information.

**Article 177** An independent director shall express independent opinion on the following matters:

(1) to nominate, appoint or dismiss directors;

(2) to appoint or dismiss senior management personnel;

(3) the remuneration of directors and senior management personnel of the Company;

(4) the financial report of the Company;

(5) when cash dividends are not included in the profits distribution plans made by the Board of Directors;

(6) the Company's plan for issuing new shares;

(7) loans or other financial transactions involving shareholders, actual controllers and their associated enterprises of the Company whose total amount of existing or newly occurring amounts is more than 3 million yuan or more than 5% of the Company's latest audited net asset value, and whether the Company has taken effective measures to recover the arrears;

(8) plans for asset replacement, acquisition or sale that account for more than 30% of the Company's latest audited total assets;

(9) plans for venture investment, guarantee and asset loss that accounts for more than 10% of the Company's latest audited net assets;

(10) to issue a special statement of the Company's accumulated and current external guarantee situation, and issue independent opinions in the annual report of the Company;

(11) matters on which independent directors are required to express their opinions by the securities regulatory authorities and stock exchanges;

(12) matters in which laws, regulations and normative documents require independent directors to express their opinions;

(13) matters which, in the opinion of the independent directors, may impair the rights and interests of the minority shareholders;

(14) such other matters as the independent directors deem necessary.

**Article 178** The independent director shall express independent opinion in one of the following ways:

(I) consent;

(II) reservations and the reasons;

(III) objections and the reasons;

(IV) inability to express opinions and obstacles thereto.

**Article 179** Where the relevant matters need to be disclosed involves disclosure, the Company shall announce the opinions of the independent directors. In the event that the independent directors are unable to reach an agreement on their differences of opinions, the Board of Directors shall disclose their opinions separately.

**Article 180** In order to ensure the effective exercise of the functions and powers of the independent directors, the Company shall provide the necessary conditions for the independent directors:

(1) the Company shall ensure that independent directors enjoy the same right to know as other directors. Where decisions shall be made by the Board of Directors, the Company must notify the independent directors in advance within the prescribed time limit and provide sufficient information at the same time. If the information is deemed insufficient by the independent directors, they may request additional information.

(2) the Company shall provide such working conditions as necessary for the independent directors to perform their duties (including, but not limited to, providing documents, materials, office space, means of transportation and communications, and access to and from production and business premises).

(3) the secretary of company's Board of Directors shall actively provide assistance to the independent directors in the performance of their duties, such as briefings, materials, etc. Where an independent opinion, proposal or written statement issued by an independent director should be made public, the secretary of the Board of Directors shall go to the stock exchange to proceed with the announcement in time.

(4) when independent directors exercise their functions and powers, the relevant personnel of the Company shall cooperate actively, shall not refuse, obstruct or conceal, and shall not interfere with their independent exercise of functions and powers.

**Article 181** The independent directors shall submit the annual report of all independent directors to the Company's Annual General Meeting, explaining the performance of their duties.

**Article 182** the Company may establish a necessary system of liability insurance for independent directors in order to reduce the risks that may arise from the normal performance of their duties.

**Article 183** The information provided by the Company to the independent directors shall be kept by the Company and the independent directors themselves for at least five years.

**Article 184** If an independent director fails to attend the Board of Directors' meeting in person for three consecutive times, the Board of Directors shall submit his/her removal and replacement to the General Meeting of Shareholders.

Unless otherwise provided in laws, regulations, normative documents and the Articles of Association, an independent director shall not be removed from position without reason before the expiration of his/her term of office. In case that the removal is necessary, the Company shall disclose it as a special disclosure, and the removed independent director may issue a public statement if he/she considers that the reasons for the removal provided by the Company are improper.

**Article 185** The independent director may resign before the expiration of his/her term of office.

The resignation of the independent director shall be submitted to the Board of Directors in writing with a description of any circumstances relating to his/her resignation or which he/she deems necessary to bring to the attention of the shareholders and stakeholders of the Company. If the resignation of an independent director results in the number of members of the independent director or Board of Directors being lower than the statutory or minimum number specified in the Articles of Association, the Board of Directors shall convene a General Meeting of Shareholders to elect additional independent directors within 60 days from the date of receipt of the resignation report. Before the by-elected independent director assumes office, the resigned independent director shall still perform his/her duties in accordance with the provisions of the laws, administrative regulations and the Articles of Association. If an independent director has not been elected within the time limit, the resigned independent director may cease to perform his duties any longer.

**Article 186** In the event that an independent director fails to perform his/her duties or commits serious dereliction of duty, the Board of Directors or the Board of Supervisors shall request the General Meeting of Shareholders to remove or replace him/her.

When the Board of Directors or the Board of Supervisors makes such a resolution, the director or supervisor who holds the dissenting opinion shall have the right to require a public announcement of his/her opinion.

### Section III. Board of Directors

**Article 187** the Company shall have a Board of Directors and be responsible to the General Meeting of Shareholders.

**Article 188** The Board of Directors shall consist of seven directors (including three independent directors).

**Article 189** The Board of Directors shall exercise the following functions and powers:

(1) to be responsible for the convening of the General Meeting of Shareholders and to report to the meeting;

(2) to implement the resolutions of the General Meeting of Shareholders;

IRI-CRT-00001046 - Translation

(3) to decide on the Company's business plan and investment plan;

(4) to formulate the annual financial budget and final accounts plan of the Company;

(5) to formulate the profit distribution plan and the plan for making up the losses of the Company;

(6) to formulate plans for the Company to increase or reduce its registered capital, issue bonds or other securities, and list its shares;

(7) to draw up plans for the material acquisition or repurchase of the Company's shares or for the merger, division, dissolution and alteration of the Company;

(8) to decide, within the scope of authorisation of the General Meeting of Shareholders, on the Company's foreign investment, acquisition and sale of assets, asset mortgage, entrustment of financial management, related party transactions, and so on;

(9) matters relating to security other than decisions to be reviewed and approved by the General Meeting of Shareholders;

(10) to decide on the establishment of the Company's internal administrative bodies;

(11) to appoint or dismiss the Company's general manager or secretary of the Board of Directors; to appoint or dismiss senior managerial personnel, such as the deputy general manager and the person in charge of the Company's finance, upon the nomination of the general manager; and to decide on the matters of remuneration, rewards and punishments of these personnel;

(12) to formulate the basic management system of the Company;

(13) to formulate the amendment plan for the Company's Articles of Association ;

(14) to manage the disclosure of company information;

(15) to apply to the General Meeting of Shareholders for the appointment or replacement of the accounting firm audited by the Company;

(16) to listen to the general manager's work report and review his/her work;

(17) other functions and powers stipulated in the provisions of laws, regulations or Articles of Association of the Company, as well as conferred by the General Meeting of Shareholders.

**Article 190** the Company shall have a chairman who shall be elected and removed by a majority of all the directors.

**Article 191** The chairman of the Board of Directors shall exercise the following functions and powers:

(1) to preside over the General Meeting of Shareholders and to convene and preside over the meeting of the Board of Directors;

(2) to supervise and inspect the implementation of the resolutions of the Board of Directors;

(3) to sign shares, bonds and other marketable securities of the Company;

(4) to sign important documents of the Board of Directors and other documents which should be signed by the legal representative of the Company;

(5) to exercise the functions and powers as the legal representative;

(6) in the event of force majeure such as exceptional natural disasters, to exercise the power of special disposal of the affairs of the Company in conformity with the provisions of the law and the interests of the Company, and to report to the Company's Board of Directors and the General Meeting of Shareholders afterwards;

(7) other functions and powers conferred by the Board of Directors.

**Article 192** In case that the chairman of the Board of Directors is unable to perform his/her duties, he/she shall appoint a director to perform the duties on his/her behalf. If the chairman is unable to perform his/her duties, nor has he/she appointed a director to perform duties on his/her behalf, one director shall be nominated by more than 1/2 directors to perform his/her duties.

**Article 193** the Company's Board of Directors of a company shall explain to the General Meeting of Shareholders the non-standard audit report issued by the certified public accountant on the Company's financial report.

**Article 194** All directors of the Company shall treat the external guaranty with caution and strictly control the debt risk arising from the external guarantee.

**Article 195** The Board of Directors shall formulate an System of Investor Relation Management, actively carry out investor relations management work, and actively strengthen communication and exchanges with investors, especially social and public investors, through various forms, set up special investor consultation hotline, set up investor relationship column on the Company website, hold regular meetings with public investors, and respond to public investors' concerns in time. The secretary of the Board of Directors shall be responsible for the Company's management of the investor relations of the Company.

### Section IV. Authorization of the Board of Directors to the Chairman

Article 196 During the intersessional period of the Board of Directors, the chairman shall have the right to decide on and sign a single bank loan contract not exceeding RMB 50 million yuan.

The decision made by the chairman shall be in the best interests of the Company and shall be reported to the next meeting of Board of Directors.

### Section V Secretary of the Board of Directors

**Article 197** The Board of Directors shall have a secretary.

The secretary of the Board of Directors shall be senior managerial personnel of the Company, nominated by the chairman of the Board of Directors, and appointed by the Board of Directors to be responsible to the Company and the Board of Directors.

The secretary of the Board of Directors shall be the designated liaison between the Company and the stock exchange.

**Article 198** The secretary of the Board of Directors shall have the necessary professional knowledge and experience.

Qualifications of the secretary of the Board of Directors:

(1) with a college degree or above and having been engaged in secretarial or economic management or equity affairs for not less than three years;

(2) with good knowledge of law, finance, securities and enterprise management, and having good personal qualities and professional skills and strictly abiding by laws, regulations, rules, and can faithfully perform his/her duties with good ability to handle public affairs.

(3) obtaining the certificate of qualification for the training of the secretary of the Board of Directors issued by the stock exchange.

**Article 199** A person may not serve as secretary of the Board of Directors under any of the following circumstances:

(1) subject to one of the circumstances provided for in Article 147 of the Company Law;

(2) having been less than 3 years since the last administrative punishment of the CSRC;

(3) having been publicly condemned by the stock exchange or criticized by three or more circulars in the past 3 years;

(4) being the Company's current supervisor;

(5) other circumstances in which the stock exchange determines that he/she is not suitable to serve as secretary to the Board of Directors

**Article 200** The secretary of the Board of Directors shall perform the following duties:

(1) to be responsible for timely communication and liaison between the Company and the relevant parties and the stock exchange and other securities regulatory bodies so as to ensure that the stock exchange can obtain working contacts with him/her at any time;

(2) to be responsible for handling the Company's information disclosure affairs, to urge the Company to formulate and implement the information disclosure management system and the internal reporting system for major information, and to urge the Company and the relevant parties to fulfil their information disclosure obligations in accordance with the law, And shall handle the disclosure of periodic and interim reports to the stock exchanges in accordance with the relevant provisions;

(3) to coordinate the relations between the Company and its investors, receive visits from the investors, answer the investors' inquiries, and provide the investors with the information disclosed by the Company;

(4) to prepare the meeting of the Board of Directors and the General Meeting of Shareholders, and prepare and submit the document to be reviewed by these meetings, in accordance with the legal procedures;

(5) to attend the meeting of the Board of Directors, make minutes of the meeting and sign the minutes;

(6) to be responsible for the confidentiality work related to the disclosure of information of the Company, formulate confidential measures, urge all members of the Company's Board of Directors and relevant insiders to keep secrets before the official disclosure of the relevant information, and take timely remedial measures and report to the stock exchange when the inside information is disclosed;

(7) to be responsible for the custody of the register of the Company's shareholders, the register of directors, the information of major shareholders and directors, supervisors and senior managers holding shares of the Company, as well as the documents and minutes of meetings of the Board of Directors and the General Meeting of Shareholders;

(8) to assist directors, supervisors and senior managers to understand the relevant laws, regulations, rules and regulations on information disclosure, the stock exchange's listing rules , and its other regulations and the Articles of Association, as well as the responsibilities to which the listing agreement shall be established;

(9) to urge the Board of Directors to exercise its functions and powers in accordance with the law; to remind the director present at the meeting and request the supervisor who attends the meeting as nonvoting delegate to express their opinions when a resolution to be made by the Board of Directors violates the laws, regulations, rules governing the listing of stocks of the stock exchange, other provisions of the stock exchange and the Company's Articles of Association if the Board of Directors insists on making such a resolution, the secretary shall record in the meeting minutes of the opinion of the supervisor concerned and his / her personal opinion, and report immediately to the stock exchange;

IRI-CRT-00001048 - Translation

(10) other duties required by the stock exchange.

**Article 201** The company's directors or other senior managerial personnel may concurrently serve as the secretary of the Board of Directors of the Company. The certified public accountants of the counting firm and the lawyers of the law firms employed by the Company may not concurrently serve as its secretary of the Board of Directors.

**Article 202** The secretary of the Board of Directors shall be nominated by the chairman and appointed or dismissed by the Board of Directors. Where a director concurrently serves as secretary of the Board of Directors, he/she shall not do so in a dual capacity if an act is required to be done separately by the director and the secretary of the Board of Directors.

**Article 203** the Company shall provide convenient conditions for the secretary of the Board of Directors to perform his/her duties, and the directors, supervisors, senior managerial personnel and relevant personnel of the Company shall support and cooperate with the work of the secretary.

In order to perform his/her duties, the secretary of the Board of Directors shall have the right to know the financial and business situation of the Company, attend relevant meetings concerning information disclosure, review all documents relating to the disclosure of information, and require relevant departments and personnel of the Company to provide relevant materials and information in a timely manner.

The secretary of the Board of Directors may report directly to the stock exchange when he/she is unduly obstructed or seriously obstructed in the course of performing his/her duties.

**Article 204** the Company shall dismiss the secretary of the Board of Directors for good reasons and shall not dismiss him without cause.

When the secretary of the Board of Directors is dismissed or resigns, the Company shall promptly report to the stock exchange where its stock is listed, explain the reasons and issue a public announcement.

The secretary of the Board of Directors shall have the right to submit a personal statement report to the stock exchange where the Company shares are listed in the case of improper dismissal by the Company or in connection with its resignation.

**Article 205** In case that the secretary of the Board of Directors has any of the following circumstances, the Company shall, within one month from the date of the occurrence of the facts, dismiss him/her:

(1) ceasing to be qualified as secretary of the Board of Directors;

(2) unable to perform his/her duties for more than three consecutive months;

(3) making major mistakes or omissions in the course of performing his/her duties, which causes heavy losses to the investors;

(4) violating state laws, regulations, rules, these rules, other provisions of the exchange and the Articles of Association of the Company, which causes heavy losses to investors.

**Article 206** the Company shall, when appointing a secretary of the Board of Directors, sign a confidentiality agreement with him/her requiring him/her to undertake to perform the confidentiality obligations continuously during his/her term of office and after leaving the position until the relevant information is disclosed, except for information relating to the violation of laws and regulations by the Company.

Before leaving the position, the secretary of the Board of Directors shall be subject to the departure review of the Board of Directors and the Board of Supervisors, and hand over relevant archives and documents, and matters being handled or pending under the supervision of the Company's Board of Supervisors.

**Article 207** During the vacancy of the secretary, the Board of Directors shall appoint director or senior managerial personnel to act as the secretary and report to the stock exchange for the record, and at the same time, determine the candidate for the secretary as soon as possible The chairman shall act as the secretary before the Company appoints one.

The chairman shall act as the secretary after a vacancy period of more than three months, until the Company formally appoints one.

**Article 208** the Company shall, while appointing a secretary of the Board of Directors, also appoint a representative of securities affairs to assist the secretary in performing his/her duties; if the secretary is unable to perform his/her duties, the securities representative shall exercise the rights and perform the duties on his/her behalf. In the meantime, the secretary shall not necessarily be exempt from the responsibility of the Company's information disclosure.

The securities representative shall obtain the certificate of secretary of the Board of Directors issued by the stock exchange.

### Section VI Special Committee of the Board of Directors

**Article 209** the Company's Board of Directors may, in accordance with the relevant resolutions of the General Meeting of Shareholders, establish special committees on strategies, audits, nominations, remuneration and appraise. The members of the special committees are all directors, among whom the independent directors in the audit committee, the nomination committee, the remuneration and appraisal committee shall be the majority and act as convenor, and at least one independent director in the audit committee shall have accounting professional background.

**Article 210** The main responsibility of the Strategy Committee shall be to study and make suggestion the Company's long-term development strategy and major investment decisions

**Article 211** The main responsibilities of the Audit Committee are as follows:

(I) to propose the hiring or replacement of an external audit institution;

(2) to supervise the Company's internal audit system and its implementation;

(III) to be responsible for the communication between internal audit and external audit;

(4) to examine and verify the Company's financial information and its disclosure;

(5) to review the Company's internal control system of the Company.

**Article 212** The main responsibilities of the Nomination Committee are as follows:

(1) to study the criteria and procedures for the selection of directors and managers and make recommendations;

(2) to extensively search for qualified candidates for directors and managers;

(3) to review and make suggestions on the selection of candidates and managers for directors.

**Article 213** the main responsibilities of the Remuneration and Appraisal Committee are as follows:

(1) to study the criteria for the assessment of directors and managers, conduct the assessment and make suggestions;

(2) to study and review the remuneration policies and plans of directors and senior managerial personnel.

**Article 214** Each special committee may employ an intermediary to provide professional advice, and the relevant expenses shall be borne by the Company.

**Article 215** Each special committee shall be responsible to the Board of Directors, and the proposals of each special committee shall be submitted to the Board of Directors for review and approval.

### Chapter VII Supervisors and Boards of Supervisors

#### Section 1 Supervisors

**Article 216** The supervisors shall be the representatives of the Company's shareholders and employees. The number of supervisors served by the Company's employee representatives shall not be less than 1/3 of the total number of supervisors.

**Article 217** Directors, managers and other senior managerial personnel may not concurrently act as supervisors. Article 147 of the Articles of Association shall apply to the supervisor under the circumstances that he/she shall not serve as a director.

In the event of the occurrence of the circumstances stipulated in Article 147, the Board of Supervisors shall immediately stop the relevant supervisor from performing his/her duties as soon as it is aware of the occurrence of such circumstances, and shall report to the General Meeting of Shareholders or the general meeting of employees (representatives) to dismiss and replace him/her.

**Article 218** Supervisors shall abide by laws, administrative regulations and the Articles of Association, bear the duty of loyalty and diligence to the Company, not abuse their powers to accept bribes or other illegal income, and not encroach on the property of the Company.

**Article 219** Supervisors shall serve for a term of three years. The supervisors served by shareholders shall be elected or replaced by the General Meeting of Shareholders, and the supervisors served by employees shall be democratically elected or replaced by company's employees. The supervisor shall be eligible for re-election. Before the supervisor's term of office expires, the General Meeting of Shareholders shall not dismiss him/her from his/her duties without reason. The term of office of the supervisors shall be calculated from the date of the approval of the resolution of the General Meeting of Shareholders and expire at the end of the term of the current Board of Supervisors.

**Article 220** If a supervisor fails to be re-elected at the end of his/her term of office, or if the member of the Board of Supervisors is less than a quorum as a result of the resignation of the supervisor during his/her term of office, before the re-elected supervisor takes up position, the former supervisor shall still perform his/her duties in accordance with the provisions of the laws, administrative regulations and the Articles of Association.

**Article 221** The supervisor shall ensure that the information disclosed by the Company shall be true, accurate and complete.

IRI-CRT-00001050 - Translation

**Article 222** The supervisor may attend the meeting of the Board of Directors as nonvoting delegate and put forward questions or suggestions on matters decided by the Board of Directors.

**Article 223** The supervisor shall not use his/her associated relationship to harm the interests of the Company, and if losses have been caused to the Company, he/she shall bear the liability for compensation.

**Article 224** The supervisor who, in the course of performing his/her duties, violates the provisions of laws, administrative regulations, departmental regulations or the Articles of Association and causes losses to the Company shall be liable for compensation.

**Article 225** Supervisors shall have legal or accounting expertise and working experience.

**Article 226** Supervisors shall have the right to know the Company's operating conditions and bear the corresponding obligation of confidentiality. The Board of Supervisors may independently employ an intermediary to provide professional advice.

**Article 227** The Company shall take measures to ensure the supervisors' right to know and provide necessary assistance for the supervisors to perform their duties normally without any interference or obstruction.

the Company shall bear the reasonable expenses required by the supervisors for the performance of their duties.

**Article 228** If a supervisor fails to attend the meeting of the Board of Supervisors in person for two consecutive times, he/she shall be deemed unable to perform his/her duties and shall be replaced by the General Meeting of Shareholders or the general meeting of employees.

**Article 229** The remuneration of supervisors shall be determined by the General Meeting of Shareholders.

**Article 230** the Company shall not pay taxes for its supervisors in any form.

**Article 231** A supervisor may resign before the expiration of his/her term of office. The provisions of Chapter VI of the Articles of Association concerning the resignation of a director shall apply to the supervisor.

**Article 232** Supervisors shall abide by the provisions of laws, administrative regulations and the Articles of Association of the Company, and fulfil the obligations of good faith and diligence.

## Section II Board of Supervisors

**Article 233** A Board of Supervisors shall be set up. The Board of Supervisors is a permanent supervisory body of the Company and shall be responsible to the Shareholder Meeting. The Board of Supervisors shall be composed of 3 supervisors, 2 of whom represent shareholders and 1 represents employees of the Company.

The Board of Supervisors shall have a chairman who shall be appointed by the supervisor and be elected or removed by a majority of all supervisors.

If the chairman of the Board of Supervisors is unable to perform his/her functions and powers, he/she shall appoint a supervisor to perform the functions and powers on his/her behalf.

**Article 234** The Board of Supervisors shall exercise the following functions and powers:

(1) to review the Company's periodic reports prepared by the Board of Directors and provide opinion in writing;

(2) to inspect the financial affairs of the Company;

(3) to supervise the acts of directors and senior managerial personnel in the performance of company duties, and make proposals on the removal of directors and senior managerial personnel who violate laws, administrative regulations, the Articles of Association or resolutions of the General Meeting of Shareholders;

(4) to require the directors and senior managerial personnel to correct their acts found to be harmful to the interests of the Company;

(5) to propose the convening of an Extraordinary General Meeting and convene and preside over the meeting when the Board of Directors fails to perform its duties of convening and presiding over the meeting as stipulated in the Company Law;

(6) to submit proposal to the General Meeting of Shareholders;

(7) to initiate legal proceedings against directors and senior managerial personnel in accordance with the provisions of Article 152 of the Company Law;

(8) to conduct investigation if it finds abnormalities in the Company's business; if necessary, it may employ accounting firms, law firms and other professional institutions to assist it in its work, and the expenses shall be borne by the Company.

(9) other functions and powers conferred by the provisions of the Articles of Association or the General Meeting of Shareholders.

**Article 235** When exercising its functions and powers, the Board of Supervisors may, if necessary, employ law firms, accounting firms and other professional institutions to offer assistance, and the expenses incurred therefrom shall be borne by the Company.

IRI-CRT-00001051 - Translation

## Chapter VIII Manager

**Article 236** the Company shall have managers, of whom a general manager and a number of deputy general managers appointed or dismissed by the Board of Directors. A director may be appointed concurrently as general manager, deputy general manager or other senior management personnel, provided that the director who concurrently holds the post of general manager, deputy general manager or other senior management shall not exceed 1/2 of the total number of directors of the Company.

**Article 237** The circumstances stipulated in Article 147 of the Articles of Association under which a director may not be appointed shall apply to senior managerial personnel.

In the event of the occurrence of the circumstances specified in Article 147 to the incumbent manager, the Board of Directors shall, as soon as it becomes aware of the occurrence of the situation, immediately stop him/her to perform his/her duties and convene a meeting to perform the dismissal procedure.

The provisions of the Articles of Association relating to the director's duty of loyalty and Article 151 (4)-(6) relating to the duty of diligence shall apply to senior managerial personnel as well.

**Article 238** Persons holding positions other than director in entities of the Company's controlling shareholders or actual controllers shall not serve as senior managerial personnel of the Company.

**Article 239** The term of office of a manager shall be three years, who may be re-appointed for a second term.

**Article 240** The appointment of the Company's managers shall be carried out in strict accordance with the relevant laws and regulations and the provisions of the Articles of Association. No organization or individual may interfere with the normal procedures for selecting and appointing managers of the Company.

**Article 241** the Company shall sign an employment contract with the manager and clarify the rights and obligations of both parties.

**Article 242** The general manager shall be responsible to the Board of Directors and exercise the following functions and powers:

(1) to take charge of the production, operation and management of the Company and report to the Board of Directors;

(2) to organize and implement resolutions of the Board of Directors, annual plans and investment plans of the Company;

(3) to draw up plans for the establishment of internal management bodies of the Company;

(4) to formulate the basic management system of the Company;

(v) to formulate specific rules and regulations of the Company;

(6) to request the Board of Directors to appoint or dismiss the Company's deputy general manager and the person in charge of financial affairs;

(7) to appoint or dismiss managerial personnel other than those who should be appointed or dismissed by the Board of Directors;

(8) to draw up the wages, benefits, rewards and punishments of the Company's employees of the Company, and decide on the employment and dismissal of these employees;

(9) to propose the convening of an interim meeting of the Board of Directors;

(10) other powers and powers conferred by the Articles of Association or the Board of Directors.

**Article 243** The general manager shall attend the meeting of Board of Directors as nonvoting delegate.

The non-managing director does not have the right to vote on the Board of Directors.

**Article 244** The manager shall, at the request of the Board of Directors or the Board of Supervisors, report to the Board of Directors or the Board of Supervisors on the signing and implementation of major contracts, utilization of funds and profit and loss of major contracts of the Company. The manager must guarantee the authenticity of the report.

**Article 245** When drawing up policies relating to wages, welfare, safety in production, labour protection, labour insurance, labour contracts or other issues concerning the vital interests of the employees, the manager shall listen to the opinions of the trade unions or the employee representatives in advance.

**Article 246** The general manager shall formulate detailed rules for the work of manager, which shall be implemented after the approval of the Board of Directors.

**Article 247** the detailed rules of the work of manager shall include the following:

(1) the conditions, procedures and participants of the manager's meeting;

(2) the specific duties and responsibilities of the general manager, the deputy general manager and other senior managerial personnel and their division of labour;

(3) the use of the Company's funds and assets, the authority to sign major contracts, and the reporting system to the Board of Directors and the Board of Supervisors;

(4) other matters the Board of Directors deems necessary.

**Article 248** The manager shall abide by the provisions of the laws, administrative regulations and Articles of Association, and perform the obligations of good faith and diligence.

**Article 249** The manager may resign before the expiration of his/her term of office. The specific procedures and measures for the manager's resignation shall be stipulated in the employment contract signed between the manager and the Company.

**Article 250** The appointment and dismissal of a manager shall follow statutory procedures and be publicly announced.

## Chapter IX Performance Evaluation and Incentive and Restraint Mechanism
### Section 1 Performance Evaluation of Directors, Supervisors and Managers

**Article 251** the Company shall establish fair and transparent performance evaluation standards and procedures for directors, supervisors and managers.

**Article 252** The performance evaluation of directors and managers shall be organized by the Board of Directors or the remuneration and appraisal committee established thereunder. The evaluation of independent directors and supervisors should be carried out by combining self-evaluation with mutual evaluation.

**Article 253** The amount and payment method of directors' remuneration shall be submitted by the Board of Directors to the General Meeting of Shareholders for approval. When a director is evaluated or his/her remuneration is discussed by the Board of Directors or the remuneration and appraisal committee, the director shall withdraw.

**Article 254** The Board of Directors and the Board of Supervisors shall report to the General Meeting of Shareholders on the performance of the duties of the directors and supervisors, the results of the performance evaluation and the remuneration thereof, and shall disclose them.

### Section II Incentive and Restraint Mechanism of Managers

**Article 255** the Company shall establish an incentive mechanism in which the remuneration of its managers is linked to their individual performance in order to attract talents and maintain the stability of the managers.

**Article 256** the Company's performance evaluation of managers shall be the basis for determining the compensation of managers and other incentives.

**Article 257** The manager's salary distribution plan shall be approved by the Board of Directors, explained to the General Meeting of Shareholders and disclosed.

**Article 258** Where the managers violate the laws, administrative regulations and the Articles of Association and causes losses to the Company, the Company's Board of Directors shall actively take measures to investigate their legal liability.

## Chapter X Financial Accounting System, Profit Distribution and Audit
### Section 1 Financial Accounting System

**Article 259** the Company shall formulate its financial accounting system in accordance with the laws, administrative regulations and provisions of relevant state departments.

**Article 260** the Company shall submit its annual financial and accounting reports to the CSRC and the stock exchange within 4 months from the end of each fiscal year, , submit semi-annual financial and accounting reports to the local office of the CSRC and the Stock Exchange within 2 months from the end of the first six months of each fiscal year, and submit the quarterly financial and accounting reports to the local office of the CSRC and the Stock Exchange within 1 month from the end of the first 3 months and the first 9 months of each fiscal year.

The above-mentioned financial and accounting reports shall be compiled in accordance with the provisions of relevant laws, administrative regulations and departmental regulations.

**Article 261** the Company's annual financial report and the interim financial report for the distribution of interim profits shall include the following:

(1) balance sheet;

(2) income statement;

(3) statement of profit distribution;

(4) statement of cash flows;

(5) notes to the accounting statements.

When the Company does not distribute interim profits, the interim financial report includes the above financial statements and notes other than item (3) .

IRI-CRT-00001053 - Translation

**Article 262** the Company's financial and accounting reports in its annual report must be audited by an accounting firm qualified to carry out securities and futures-related business.

the Company's financial and accounting reports in its semi-annual report may not be audited, but shall be audited under any of the following circumstances:

(1) to intend to distribute profits, convert provident funds into shares or make up for losses in the second half of the year;

(2) to intends to apply for refinancing such as issuing new shares or convertible corporate bonds in the second half of the year, if deemed necessary to be audited in accordance with relevant provisions;

(3) to apply for resumption of the listing of shares after suspension, if deemed necessary to be audited as required;

(4) other circumstances under which the CSRC or the Stock Exchange deems that an audit should be conducted.

The financial information contained in the quarterly report of the Company shall not be subject to audit except as otherwise stipulated by the CSRC or the Stock Exchange.

**Article 263** the Company shall not keep separate accounting books other than the statutory one. the Company assets shall not be deposited in an account opened in the name of any individual.

**Article 264** When the Company distributes after-tax profits in the current year, it shall draw 10% of the profits to be included in its statutory provident fund. If the accumulative amount of the Company's statutory accumulation fund is more than 50% of its registered capital, it may no longer be withdrawn.

If the Company's statutory provident fund is not sufficient to make up for the losses of the previous year, it shall, before drawing up the statutory accumulation fund in accordance with the provisions of the preceding paragraph, make up the loss with the current year's profits.

After drawing up the legal accumulation fund from the after-tax profit, upon the resolution of the general meeting of shareholders, the Company could also draw up any accumulation fund from its after-tax profit.

The residual after-tax profits of the Company after making up the losses and withdrawing the accumulation fund shall be distributed in proportion to the shares held by the shareholders, except for those which shall not be allocated according to the proportion of the shares held in these Articles of Association.

Where the General Meeting of Shareholders, in violation of the provisions of the preceding paragraph, distributes profits to the shareholders before the Company makes up the losses and draws the statutory provident fund, the shareholders must return the profits distributed in violation of the Company regulations.

The shares held by the Company shall not be included in the distribution of profits.

**Article 265** the Company's provident fund shall be used to make up for the Company's losses, expand the Company's production and operation, or increase the Company's capital. However, the capital accumulation fund will not be used to cover the Company's losses.

When the statutory provident fund is converted to capital, the retained reserve fund shall not be less than 25% of the Company's registered capital before the conversion.

**Article 266** Upon the resolution made by the Company's General Meeting of Shareholders on the profit distribution plan, its Board of Directors shall complete the distribution of dividends (or shares) within two months after the convening of the General Meeting of Shareholders.

**Article 267** the Company's profit distribution policy in the current year shall be formulated and announced by the Board of Directors before the convening of the Annual General Meeting.

**Article 268** the Company shall distribute dividends by way of cash or shares.

**Article 269** Where a shareholder illegally occupies the company's funds, the Company shall deduct the cash dividend allocated by the shareholder in order to repay the funds occupied.

### Section II Internal Audit

**Article 270** the Company shall implement an internal audit system with full-time auditors to supervise its financial revenues and expenditures and economic activities.

**Article 271** The Company's internal audit system and duties of the auditors shall be implemented upon the approval of the Board of Directors. The chief auditor shall be responsible to the Board of Directors and report on his work.

### Section III Employment of Accounting Firms

**Article 272** The accounting firm hired by the Company which has obtained "qualification for securities and futures related business" shall be engaged in accounting statement audit, net asset verification and other related consulting services for a term of one year and may be re-appointed.

**Article 273** The employment of an accounting firm by the Company must be decided by the General Meeting of Shareholders, and the Board of Directors may not appoint an accounting firm before the decision has been made by the meeting.

IRI-CRT-00001054 - Translation

**Article 274** the Company shall undertake to provide true and complete accounting vouchers, accounting books, financial and accounting reports and other accounting materials to the accounting firm that it employs, and shall not refuse, conceal or falsely report .

**Article 275** The audit fee of an accounting firm shall be determined by the General Meeting of Shareholders.

**Article 276** The accounting firm employed by the Company shall have the following rights:

(1) to review the financial statements, records and vouchers of the Company and have the right to require the Company's directors, managers or other senior managerial personnel to provide relevant information and explanations;

(2) to require the Company to provide information and descriptions of its subsidiaries necessary for the accounting firm to perform its functions;

(3) to attend the General Meeting of Shareholders as nonvoting delegate, obtain notice of the general meeting or other related information, and speak at the general meeting on matters concerning it as the accounting firm employed by the Company.

**Article 277** The decision of the General Meeting of Shareholders on the dismissal of an accounting firm by the Company shall be disclosed in the China Securities News and the Shanghai Securities News, and the reasons for the replacement shall be stated if necessary and also be reported to the CSRC and the China Institute of Certified Public Accountants for the record.

**Article 278** When the Company dismisses or does not renew its employment of an accounting firm, it shall notify the firm 30 days in advance, and the firm shall have the right to state its views to the General Meeting of Shareholders. If an accounting firm considers that the Company has improper reasons for its dismissal or non-renewal of its employment, it may lodge a complaint with the CSRC and the China Institute of Certified Public Accountants. If an accounting firm offers to resign, it shall explain to the General Meeting of Shareholders whether the Company has any improper circumstances.


### Chapter XI Continuous Information Disclosure


**Article 279** the Company shall formulate a management system of information disclosure, strictly in accordance with the provisions of laws, regulations, normative documents and the Articles of Association, disclose in a timely and fair manner all information that may have a greater impact on the trading price of the Company's shares and their derivatives, and submit the announcements and relevant reference documents to the Stock Exchange at the soonest.

**Article 280** the Company and its directors shall ensure that the information disclosed is true, accurate and complete, and that there are no false records, misleading statements or material omissions.

**Article 281** The information disclosed by the Company shall be easy to understand. Companies should ensure that users of information have access to the information in an economical and convenient way such as the Internet.

**Article 282** The secretary of the Board of Directors of the Company shall be responsible for the disclosure of information, including establishing the information disclosure system, receiving visits, answering inquiries, contacting shareholders, and providing investors with the information disclosed publicly by the Company. The Board of Directors and managers shall actively support the work of the secretary. No institution or individual shall interfere with the work of the secretary.

**Article 283** the Company designates the China Securities News and the Shanghai Securities News as newspapers that publish company announcements and other information to be disclosed.

### Chapter XII Stakeholders

**Article 284** the Company shall respect the legitimate rights of banks and other stakeholders such as creditors, employees, consumers, suppliers and communities.

**Article 285** the Company shall actively cooperate with stakeholders to jointly promote its sustained and healthy development.

**Article 286** the Company shall provide the necessary conditions for safeguarding the rights and interests of the stakeholders. When their legitimate rights and interests are infringed upon, the stakeholders shall have the opportunity and the means to obtain compensation.

**Article 287** the Company shall provide the banks and other creditors with the necessary information to enable them to make judgments and decisions on the Company's operating and financial situation.

**Article 288** the Company shall encourage its employees to share their opinions on the Company's operation, financial situation and major decisions concerning their interests through direct communication and exchange with the Board of Directors, the Board of Supervisors and the managers.

IRI-CRT-00001055 - Translation

**Article 289** While maintaining the sustainable development of the Company and maximizing the interests of its shareholders, the Company should pay attention to the welfare, environmental protection, public welfare and other issues in the community, and attach importance to the its social responsibility.

### Chapter XIII Merger, Spinning Off, Dissolution and Liquidation
#### Section 1. Merger or Spinning Off

**Article 290** the Company may be merged or spun off according to law.

The merger of companies may take two forms: merger by consolidation and merger by the establishment of a new company.

**Article 291** The merger or spinning off of a company shall be handled in accordance with the following procedures:

(1) the Board of Directors shall formulate a plan for merger or spinning off;

(2) the General Meeting of Shareholders shall make a resolution in accordance with the provisions of the Articles of Association;

(3) the parties sign a merger or spinning off contract;

(4) to go through the relevant review and approval formalities according to law;

(5) to deal with the credits, debts and other matters related to the merger or spinning off;

(6) to go through the registration of dissolution or alteration.

**Article 292** The merger of a company shall be concluded by the parties to the merger and a balance sheet and a list of assets shall be drawn up. the Company shall notify the creditors within 10 days from the date of the decision of General Meeting of Shareholders on the merger, and shall issue a public announcement in the China Securities News and the Shanghai Securities News within 30 days.

**Article 293** The creditor shall have the right to require the Company to pay off its debts or provide corresponding guarantee within 30 days from the date of receipt of the notice or within 45 days from the date of the announcement if the notice has not been received.

**Article 294** When the Company is merged, the creditor's rights and debts of the parties to the merger shall be inherited by the surviving company or the newly established company after the merger.

**Article 295** When the Company is spun off, its property shall be separated accordingly.

When the Company is spun off, a balance sheet and a list of assets shall be drawn up. the Company shall notify the creditors within 10 days from the date of the resolution of division, and issue an announcement in the China Securities News and the Shanghai Securities News within 30 days.

**Article 296** The debts of the Company before spinning off shall be jointly and severally liable by the Company after the division, unless otherwise agreed upon by the Company and the creditors in writing in respect of the settlement of the debt prior to the spinning off.

**Article 297** When company needs to reduce its registered capital, it must draw up a balance sheet and a list of assets.

The Company shall notify the creditors within 10 days from the date of making the resolution to reduce the registered capital, and issue an announcement in the China Securities News and the Shanghai Securities News within 30 days. The creditor shall have the right to require the Company to pay off its debts or provide corresponding guarantee within 30 days from the date of receipt of the notice or 45 days from the date of the announcement if the notice has not been received.

The Company's registered capital after capital reduction shall not to be below the legal minimum.

**Article 298** Where the registered items are altered due to the merger or spinning off of the Company, the alteration shall be registered with the Company registration authority in accordance with law; if the Company is dissolved, it shall be cancelled from registration according to law; if a new company shall be established, its establishment shall be registered in accordance with the law. If the Company increases or decreases its registered capital, it shall, in accordance with the law, go through the registration of alteration with the Company registration authority.

#### Section II Dissolution and Liquidation

**Article 299** Under any of the following circumstances, the Company shall dissolve and liquidate in accordance with the law:

(1) dissolution as a result of merger or division;

(2) dissolution upon resolution of the General Meeting of Shareholders;

(3) having its business license revoked, ordered to close down or be revoked according to law;

(4) if serious difficulties arise in the operation and management of the Company and the interests of the shareholders will suffer heavy losses as a result of its continued existence, shareholders holding more than 10% of the voting rights of all shareholders of the Company may request the people's court to dissolve the Company if it cannot be solved by other means.

**Article 306** If the Company is dissolved in accordance with items (2), (3) and (4) of **Article 306** of the Articles of Association, a liquidation team shall be set up within 15 days from the date of the occurrence of the cause of dissolution and liquidation shall begin. The liquidation team shall be composed of such persons as may be determined by the directors or the General Meeting of Shareholders. If a liquidation team is not established within the time limit, the creditors may apply to the people's court to appoint relevant persons to form a liquidation team for liquidation.

**Article 301** The liquidation team shall exercise the following functions and powers during liquidation:

(1) to issue notice or announcement to the creditors;

(2) to settle the Company's assets and to compile a balance sheet and a list of assets;

(3) to handle the outstanding business of the Company;

(4) to settle the taxes payable and the taxes incurred in the course of liquidation;

(5) to settle claims and debts;

(6) to dispose of the residual assets after the Company has discharged its debts;

(7) to participate in civil litigation on behalf of the Company.

**Article 302** The liquidation team shall notify the creditors within 10 days from the date of its establishment and issue public announcements in the China Securities News and the Shanghai Securities News within 60 days.

**Article 303** The creditors shall, within 30 days from the date of receipt of the notice, or within 45 days from the date of the announcement if the notice has not been received, file their claims to the liquidation team. When filing their claims, they shall explain the relevant items of the claims and provide supporting materials. The liquidation team shall register the claims.

During the period of filing claims, the liquidation team shall not pay off the creditors.

**Article 304** After settling the Company's assets, and drawing up a balance sheet and a list of assets, the liquidation team shall formulate a liquidation plan and report it to the General Meeting of Shareholders or the people's court for confirmation.

the Company's assets shall be allocated in proportion to the shares held by the shareholders in the payment of liquidation expenses, the wages of employees, the social insurance expenses and the statutory compensation, the payment of the taxes owed, and the settlement of the remaining property after the Company's debts have been paid.

During liquidation, the Company survives, but cannot engage in business activities unrelated to liquidation. The assets of the Company will not be distributed to the shareholders until they have been liquidated in accordance with the provisions of the preceding paragraph.

**Article 305** After settling the Company's assets and drawing up a balance sheet and a list of assets, the liquidation team shall apply to the people's court for bankruptcy if it considers that the Company's assets are insufficient to pay off its debts.

After the Company has been declared bankrupt by a people's court, the liquidation team shall hand over the liquidation affairs to the people's court.

**Article 306** After liquidation, the liquidation team shall prepare a liquidation report, report it to the General Meeting of Shareholders or the people's court for confirmation, submit it to the Company registration authority, apply for cancellation of the Company's registration, and announce the termination of the Company.

**Article 307** The members of the liquidation team shall be faithful to their duties, perform their liquidation obligations according to law, not abuse their functions and powers to accept bribes or other illegal income, and not encroach on the assets of the Company.

Any member of the liquidation team who has caused losses to the Company or the creditors as a result of intentional or gross negligence shall be liable for compensation.

**Article 308** Where the Company is declared bankrupt according to law, bankruptcy liquidation shall be carried out in accordance with the law on enterprise bankruptcy.

### Chapter XIV Amendment to the Articles of Association

**Article 309** The Company shall amend its Articles of Association under any of the following circumstances:

(1) after the amendment of the Company Law or relevant laws or administrative regulations, the matters stipulated in the Articles of Association are in conflict with the provisions of the amended laws and administrative regulations;

(2) the circumstances of the Company have changed and are inconsistent with the items recorded in the Articles of Association;

(3) the General Meeting of Shareholders decides to amend the Articles of Association.

**Article 310** Where the amendment to the Articles of Association approved by the resolution of the General Meeting of Shareholders shall be subject to review and approval by the competent authority, it shall be submitted to the competent authority for review and approval; where company registration is involved, the alteration shall be registered according to law.

**Article 311** The Board of Directors shall amend the Articles of Association in accordance with the resolution of the General Meeting of Shareholders and approval opinions of the relevant competent authorities.

**Article 312** The amendment to the Articles of Association which belong to the information required by laws and regulations to be disclosed shall be publicized in accordance with the relevant provisions.

IRI-CRT-00001057 - Translation

## Chapter XV Supplementary Provisions

### Article 313 Interpretation

(1) A controlling shareholder refers to a shareholder whose shares account for more than 50% of the total share capital of the Company;

Although less than 50 per cent, the voting rights based on the shares held by them are sufficient to have a significant impact on the decisions of the shareholders' general meeting

Shareholder

(2) Actual controller refers to someone who, though not a shareholder of the Company, can actually control the Company's behaviour through investment relations, agreements or other arrangements.

(3) Associated relationship refers to the relationship between the controlling shareholders, actual controllers, directors, supervisors and senior managerial personnel of the Company and the enterprises directly or indirectly controlled by the Company, as well as other relationships that may lead to the transfer of the Company's interest. However, the state-controlled enterprises are not only to be related to each other because they are controlled by the state.

(4) The definitions of associated parties, related party transactions and major related party transactions are the same as those in the Stock Listing Rules revised from time to time by the Shanghai Stock Exchange

**Article 314** The Board of Directors may, in accordance with the provisions of the Articles of Association, formulate detailed Articles of Association which shall not be in conflict with provision of the Articles of Association

**Article 315** The Articles of Association are written in Chinese, and in case there is any discrepancy between the Articles of Association in any other language or version, the Chinese version approved and registered at the Shaanxi Provincial Administration for Industry and Commerce shall prevail.

**Article 316** The terms "above", "within", "below" and "not exceeding" as mentioned in the Articles of Association include the base number; "other than", "below", "more than", "over" does not include the base number.

**Article 317** The Articles of Association shall be interpreted by the Board of Directors of the Company.

**Article 318** The annexes to the Articles of Association include the rules of procedure of the Board of Directors and the rules of procedure of the Board of Supervisors.

IRI-CRT-00001058 - Translation

Annex

# IRICO Display Devices Co., Ltd.
## Rules of Procedure of the Board of Directors

### Article 1 Purpose

In order to further standardize the deliberations and decision-making procedures of the Board of Directors of IRICO Display Devices Co., Ltd. (hereinafter referred to as "the Company"), urge the directors and the Board of Directors to perform their duties effectively, and improve the standard operation and scientific decision-making level of the Board of Directors, these rules are formulated in accordance with the Company Law, Securities Law, Governance Standards for Listed Companies, Rules Governing the Listing of Stocks on Shanghai Stock Exchange and other relevant provisions.

### Article 2 Office of Board of Directors

The Board of Directors shall have an office to handle its daily affairs.

### Article 3 Regular Meetings

Board meetings are divided into regular meetings and interim meetings.

The Board of Directors shall convene regularly meetings at least once a year in the first and second half of the year.

### Article 4 Proposals for Regular Meetings

Before issuing the notice of convening regular meeting of the Board of Directors, the office of the Board of Directors shall fully solicit the opinions of the directors and submit the proposal to the chairman of the Board of Directors for drafting after preliminary formation of the meeting proposal.

The chairman shall consult the manager and other senior managerial personnel as necessary before drawing up a proposal.

### Article 5 Interim Meeting

The Board of Directors shall convene an interim meeting under any of the following circumstances:

(1) proposed by shareholders representing more than 1/10 of the voting rights;

(2) jointly proposed by more than 1/3 of the directors;(3) proposed by the Board of Supervisors;

(4) the chairman of the board deems it necessary;

(5) proposed by more than 1/2 of the independent directors;

(6) proposed by the manager;

(7) required by the securities regulatory authority;

(8) other circumstances stipulated in the Company's Articles of Association.

### Article 6 Proposal Procedures for Interim Meeting

Where an interim meeting of the Board of Directors is proposed in accordance with the provisions of the preceding article, a written proposal signed (sealed) by the proposer shall be submitted either through the office of the Board of Directors or directly to the chairman. The written proposal shall contain the following:

(1) the name of the proposer;

(2) the reasons for the proposal or the objective cause on which the proposal is based;

(3) the proposed time or time limit, venue and manner of the meeting;

(4) clear and specific proposals;

(5) the contact information of the proposer and the date of the proposal, etc.

The contents of the proposal shall be within the scope of competence of the Board of Directors as stipulated in the Articles of Association of the Company, and the materials relating to the proposal shall be submitted together.

32

The office of the Board of Directors shall, upon receipt of the above written proposals and relevant materials, transfer them to the chairman of the Board of Directors on the same day. If the chairman considers that the contents of the proposal are not clear or specific or that the relevant materials are not sufficient, he/she may request the proposer to amend or supplement the proposal.

The chairman shall, within 10 days after receiving the proposal or the request of the securities regulatory authority, convene a meeting of the Board of Directors and preside over it.

### Article 7 Convening and Presiding Over Meetings

The meeting of the Board of Directors shall be convened and presided over by the chairman of the Board of Directors; if the chairman is unable or fails to perform his duties, the vice-chairman shall convene and preside over the meeting. If there is no vice-chairman or the vice-chairman is unable or fails to perform his duties, a director nominated by more than half of the directors shall convene and preside over it.

### Article 8 Notice of Meeting

In convening regular and interim meetings of the Board of Directors, the office of the Board of Directors shall issue a notice of the meeting in writing with the seal of the office of the Board of Directors and submit it to all directors and supervisors as well as the manager and secretary of the Board of Directors 10 and 5 days in advance by direct service, fax, e-mail or other means. If the notice is not delivered directly, it shall also be confirmed by telephone and recorded accordingly.

In case of an urgency to convene an interim meeting of the Board of Directors as soon as possible, a notice of the meeting may be sent at any time by telephone or other oral means, provided that the convenor shall provide an explanation at the meeting.

### Article 9 Contents of the Notice of Meeting

The written notice of the meeting shall include at least the following contents:

(1) the time and place of the meeting;

(2) the manner of convening the meeting;

(3) matters to be reviewed (meeting proposals);

(4) convenor and moderator of the meeting, proposer of the interim meeting and their written proposals;

(5) the meeting materials necessary for the voting of the directors;

(6) the requirement that the directors shall attend the meeting in person or entrust other directors to attend the meeting on their behalf;

(7) contacts and contact information.

The oral notice of the meeting shall include, at a minimum, the contents in above item (1) and (2) , as well as a statement of the urgency for the convening of an interim meeting of the Board of Directors as soon as possible.

### Article 10 Delivery Time of the Notice of Meeting:

(1) when delivered directly, the time of service shall be taken as the time when it is signed by the addressee or the recipient entrusted by the addressee;

(2) in the case of service by fax, the time when the fax is sent shall be the time of service, provided that the fax number shall be confirmed by the addressee;

(3) when served by email, the time of delivery shall be the time of service, provided that the e-mail address shall be confirmed by the addressee.

If the meeting notice was not sent to someone entitled to be notified or such person did not receive the notice due to accidental omission, the meeting and the resolution made at the meeting should not therefore be null and void.

### Article 11 Change of Notice of Meeting

After the written notice of the regular meeting of the Board of Directors is issued, in case of a need to change the time and place of the meeting or add, change or cancel the proposals for the meeting, a written notice of change shall be issued three days before the original meeting to provide an explanation and relevant contents and materials of the new proposal. In case of less than three days to issue a notice of change, meeting shall be delayed accordingly or convened on schedule upon the approval of all attending directors.

After the notice of the meeting of the extraordinary meeting of the board of directors is issued, if you want to change the daytime, place, etc. of the meeting, or add, change, or eliminate the meeting, you should obtain the 4th meeting of the meeting and make a corresponding record.

33

### Article 12 Convening of Meeting

The meeting of the Board of Directors shall be convened only if a majority of the directors are present. If the director concerned refuses to attend or fails to attend the meeting and thus fails to meet the minimum number requirements for the meeting, the chairman and the secretary of the Board of Directors shall promptly report to the regulatory authority.

The supervisors may attend the meeting of the Board of Directors as nonvoting delegates; if the manager and the secretary of the Board of Directors do not concurrently serve as directors, they shall attend the meeting as nonvoting delegates. If the moderator of the meeting deems it necessary, he/she may notify other relevant persons concerned to attend the meeting.

### Article 13 Personal and Entrusted Attendance

The director shall in principle attend the meeting of Board of Directors in person. If, for any reason, he/she is unable to attend the meeting, he/she shall review the meeting materials in advance to form a clear opinion, and entrust other directors in writing to attend the meeting on his/her behalf.

The of authorisation shall state:

(1) the name of the principal and the trustee;

(2) the principal's brief comments on each proposal;

(3) the scope of the principal's authorization and instructions on the intention to vote on the proposal;

(4) the signature, date, etc of the principal.

Where another director is entrusted with signing a written confirmation opinion on behalf of the regular report, a special authorization shall be given in the letter of authorisation.

The entrusted director shall submit a written letter of authorisation to the meeting moderator stating the entrusted attendance on the signing book of the meeting.

### Article 14 Restrictions on Proxies

The following principles shall be followed for the entrusted attendance:

(1) when reviewing related party transactions, a non-affiliated director may not entrust an affiliated director to attend on his/her behalf; nor may the affiliated director accept the entrustment of the non-affiliated director;

(2) the independent director shall not entrust a non-independent director to attend on his/her behalf, nor shall the non-independent director accept the entrustment of the independent director;

(3) the directors shall not, without stating their personal opinions and voting intentions on the proposal, entrust any other directors to attend on their behalf, nor shall the directors concerned accept full entrustment and the entrustment without clear authorization.

(4) A director shall not accept the entrustment of more than two directors, nor shall the director entrust a director who has been entrusted by two other directors to attend on his/her behalf.

### Article 15 Manners of Convening Meeting

The meeting of the Board of Directors shall be convened on-site. If necessary, with the consent of the convenor (moderator) and the proposer, the meeting may, on the premise of ensuring that the directors fully express their opinions, also be convened by video, telephone, fax or e-mail. The meeting may also be convened on-site and in any other ways simultaneously.

In the case that the meeting is not held on-site, the number of directors attending the meeting shall be and shows by video the directors present, the directors who express their opinions in the teleconference, and the effective voting votes, such as faxes or e-mails, are actually received within the prescribed time limit, The number of directors attending the meeting is calculated, such as a written confirmation letter submitted by the director after the meeting.

### Article 16 Review Procedures of the Meeting

The moderator of the meeting shall invite the directors present at the meeting of Board of Directors to express their clear views on various proposals.

For a proposal requiring prior approval by the independent director in accordance with the provisions, the moderator of the meeting shall, before discussing the proposal concerned, appoint an independent director to read out the written approval opinion reached by the independent directors.

Where a director obstructs the normal conduct of the meeting or affects other directors to speak, the moderator of the meeting shall promptly stop it.

Except with the unanimous consent of all the directors present at the meeting, the meeting of the Board of Directors shall not vote on a proposal not included in the notice of the meeting. Where a director accepts the entrustment of other directors to attend the meeting , he/she may not vote on behalf of other directors on a proposal not included in the notice of the meeting.

IRI-CRT-00001061 - Translation

### Article 17 Expressing Opinions

The directors shall carefully read the relevant meeting materials and express their views independently and prudently on the basis of a full understanding of the situation.

The directors may, prior to the meeting, consult the office of the Board of Directors, the convenor of the meeting, the manager and other senior managerial personnel, specialized committees, accounting firms, law firms, and other relevant personnel and institutions about the information needed for decision-making, and may also suggest to the moderator during the meeting that representatives of the above-mentioned persons and institutions be invited to explain the situation.

### Article 18 Voting at the Meeting

After each proposal has been fully discussed, the moderator shall, in due course, submit it to the directors present at the meeting for a vote.

The voting shall be conducted by the means of one person being represented by one vote, and in the form of registration and in writing.

The voting may also be taken by show of hands upon the decision of the moderator.

The voting intentions of the directors are divided into consent, objection and abstention. The directors present at the meeting shall choose one of the above-mentioned intentions. If no choice has been made or two or more intentions are chosen at the same time, the moderator shall request the director concerned to choose again, and if he/she refuses to do so, it shall be deemed to as abstention; if he leaves the meeting without a vote, its shall be deemed abstention.

### Article 19 Statistics of the Voting Results

After the voting of the present directors has been completed, the representatives of securities affairs and the relevant staff members in the office of the Board of Directors shall promptly collect the voting votes of the directors and hand them over to the secretary of the Board of Directors for statistics under the supervision of a supervisor or an independent director.

When the voting is taken by show of hands, the secretary of the Board of Directors shall count the results of the voting and announce it on-site.

If the meeting is held on-site, the moderator of the meeting shall announce the statistical results on-site; in other cases, the moderator shall require the secretary of the Board of Directors to notify the director of the voting results one working day before the expiration of the prescribed time limit for voting.

If a director votes after the moderator has announced the voting results or after the expiration of the prescribed time limit for voting, the voting shall not be counted.

### Article 20 Formation of Resolutions

Except as provided in **Article 21** of these rules, for the Board of Directors to consider and approve a proposal of the meeting and forms a relevant resolution, more than half of the Company's directors must vote in favour of the proposal. Where laws, administrative regulations and the Articles of Association of Company stipulate that a resolution of the Board of Directors shall obtain the consent of more directors, such provisions shall prevail.

In accordance with the provisions of the Company's Articles of Association, for the Board of Directors, within its limits of authority, to make a resolution on the matters of guarantee, it shall be subject to the consent of more than 2/3 of the directors present at the meeting, in addition to the consent of more than half of all the directors of the Company. In case of any conflict between different resolutions in terms of content and meaning, the resolution after the time of formation shall prevail.

### Article 21 Withdrawal of Voting

Under the following circumstances, the directors shall withdraw from voting on the relevant proposal:

(1) the circumstances stipulated in Listing Rules of Shanghai Stock Exchange that require the directors to withdraw;

(2) the circumstances in which the directors themselves think they should withdraw;

(3) any other circumstances specified in the Articles of Association of the Company that need to be avoided because of the association between the directors and the enterprises involved in the meeting proposal.

In the case of a director's withdrawal from voting, the meeting of the Board of Directors concerned shall be attended by more than half of the unrelated directors, and the resolution shall be approved by a majority of these directors. If the number of unrelated directors present at the meeting is less than three, the relevant proposal may not be voted on, but the matter shall be referred to the General Meeting of Shareholders for consideration.

### Article 22 No Overstepping of Authority

The Board of Directors shall act strictly in accordance with the authorisation of the General Meeting of Shareholders and the Company's Articles of Association, and shall not exceed its authority to form a resolution.

### Article 23. Special Provisions on the Distribution of Profits

If the meeting of Board of Directors needs to make a resolution on the Company's profits distribution, it may first notify the certified public accountant of the preliminary distribution plan to be submitted to the Board of Directors for consideration and request a draft audit report accordingly (all financial data other than those related to distribution had been established). After the Board of Directors has made a resolution on allocation, it shall require the certified public accountant to issue a formal audit report, and then, on the basis of the formal audit report, make a resolution on other relevant matters concerning the periodic report.

IRI-CRT-00001062 - Translation

### Article 24 Disposition of Unapproved Proposals

If a proposal has not been approved, the meeting of Board of Directors shall not, within one month, review any proposal of the same content in the absence of any significant change in the relevant conditions and factors.

### Article 25 Suspension of Voting

If more than 1/2 of the attending directors or more than two independent directors consider that the proposal is not clear or specific, or that they are unable to make a judgment on the relevant matter due to insufficient meeting materials and other reasons, the moderator of the meeting shall request a suspension of voting on the subject at the meeting.

The director who proposes to suspend the voting shall make a clear request as to the conditions to be met for the proposal to be resubmitted for consideration.

### Article 26 Recording of Meetings

The meetings of Board of Directors convened on-site or by video telephone or other means may be recorded throughout the course as necessary.

### Article 27 Record of Meetings

The secretary of the Board of Directors shall arrange the staff of the office of the Board of Directors to keep record of the meeting of the Board of Directors. Minutes of meetings should include the following:

(1) the session and the time, place and manner of the meeting;

(2) the issuance of notice of the meeting;

(3) convenor and moderator of the meeting;

(4) the personal attendance and the entrusted attendance of the directors;

(5) the proposals reviewed by the meeting, the main points and main comments of each director on relevant matters, and the voting intention on the proposals;

(6) the manner in which each proposal is to be voted on and the voting results (indicating the specific number of consent, objection, abstention);

(7) such other matters as the directors at the meeting believe should be recorded.

### Article 28 Minutes of Meetings and Records of Resolutions

In addition to the minutes of the meeting, the secretary of the Board of Directors may, as necessary, arrange the staff of the office of the Board of Directors to make a concise summary of the meeting, and make separate records of the resolutions resulting from the meeting based on the results of the statistical voting.

### Article 29 Signature of Directors

The directors present at the meeting shall sign and confirm the minutes of the meeting and the records of the resolutions on their own behalf and on behalf of the directors entrusted by them to attend the meeting. Where a director has different opinions on the minutes of the meeting or the record of the resolution, he/she may, at the time of signature, provide a written explanation. If necessary, he/she shall report to the regulatory authorities in a timely manner and may also issue a public statement.

A director who neither signs for confirmation as provided in the preceding paragraph nor provides a written explanation of his/her dissenting opinion or reports to the regulatory authorities or issue a public statement shall be deemed to fully agree with the contents of the minutes of the meeting and the records of the resolutions.

### Article 30 Announcement of Resolutions

The secretary of the Board of Directors shall act in accordance with the relevant provisions of Rules for Stock Listing on the Shanghai Stock Exchange.

### Article 31 Confidentiality System

Persons attending and sitting in the meeting of the Board of Directors and relevant staff shall have the obligation to keep confidential the contents of the meetings. No one shall make use of the insider information of the meeting for the benefits of their own or others.

Without the approval of the chairman of the Board of Directors, the attending directors and the persons sitting in at the meeting shall not take away the informal documents and materials provided by the meeting.

IRI-CRT-00001063 - Translation

Except for directors, supervisors, accountants and lawyers employed by the Company, no one may review the minutes of the meeting of the Board of Directors without the authorization of the Board of Directors or the approval of the chairman .

The directors and nonvoting attendees shall be responsible for the careful custody of the documents and materials provided to them, and shall report to the chairman of the and the secretary of the Board of Directors in case of loss.

The documents of the Board of Directors shall be kept by the secretary of the Board of Directors.

When the secretary of the Board of Directors leaves office, he/she shall, under the supervision of the Board of Supervisors of the Company, hand over to the designated person the Company's files, documents and materials in his/her custody.

Without the approval of the Board of Directors, no recording or videotaping of the meeting shall be made by the attending directors or those nonvoting attendees.

The meeting of the Board of Directors and its resolutions shall be disclosed by the secretary of the Board of Directors in accordance with relevant provisions. The directors and nonvoting attendees present at the meeting shall not disclose the information of the meeting in any form unless authorized by the chairman or the information of the meeting has been made public.

The secretary of the Board of Directors shall be responsible for the confidentiality of the information of the Board of Directors. The secretary shall promptly take remedial measures when the information is leaked.

### Article 32 Implementation of Resolutions

The chairman of the Board of Directors shall urge relevant personnel to implement the resolutions of the Board of Directors, check the implementation of the resolutions, and report the implementation of the resolutions that have been formed at future meeting of the Board of Directors.

### Article 33 Preservation of Meeting Archives

The secretary of the Board of Directors shall be responsible for the preservation of archives of the meeting of Board of Directors, including the meeting's notice and materials, signature book, letter of authorisation for the entrusted director to attend the meeting, recordings of the meeting, voting vote, minutes of the meeting, records of the resolution, announcement of the resolution, etc., signed and confirmed by the attending directors, etc. The preservation term of these archives shall be not less than ten years.

### Article 34 Supplementary Provisions

In these rules, "above" includes the base number.

These rules shall come into effect after being been formulated by the Board of Directors and submitted to the General Meeting of Shareholders for approval, and shall be amended in the same way.

These rules shall be interpreted by the Board of Directors.

IRI-CRT-00001064 - Translation

## IRICO Display Devices Co., Ltd.
## Rules of Procedures of the Board of Supervisors

### Article 1. Purpose

In order to further standardize the proceedings and voting procedures of the Board of Supervisors of IRICO Display Devices Co., Ltd (hereinafter referred to as "the Company"), urge the supervisors and the Board of Supervisors to perform their supervisory duties effectively, and improve the corporate governance structure of the Company, these rules are formulated in accordance with the Company Law, the Securities Law, Governance Standards of Listed Company, Rules Governing the Listing of Stocks on Shanghai Stock Exchange, a series of normative documents issued by the CSRC and the Articles of Association of the Company.

### Article 2. Office of the Board of Supervisors

The Board of Supervisors may set up an office to handle its daily affairs.

The chairman of the Board of Supervisors shall also be responsible for the office of the Board of Supervisors and shall keep its seal.

The chairman may request the representative of the securities affairs of the Company or other personnel to assist him in handling the day-to-day affairs of the Board of Supervisors.

### Article 3. Regular and Interim Meetings of the Board of Supervisors

The meetings of the Board of Supervisors are divided into regular meetings and interim meetings.

The regular meeting shall be convened every six months. Under any of the following circumstances, the Board of Supervisors shall convene an interim meeting within 10 days:

(1) proposed by any supervisor;

(2) the General Meeting of Shareholders or the meeting of the Board of Directors approves a resolution that violates the laws, regulations, rules and regulations, various regulations and requirements of the regulatory authorities, the Articles of Association of the Company, the resolution of the general meeting of shareholders of the Company and other relevant provisions;

(3) the misconduct of directors and senior managerial personnel may cause significant harm to the Company or adversely affect the Company in the market;

(4) the Company, or any of its directors, supervisors and senior managerial personnel is sued by a shareholder;

(5) the Company, or any of its directors, supervisors and senior managerial personnel is punished by the securities regulatory authorities or publicly condemned by the Shanghai Stock Exchange;

(6) the securities regulatory authorities request the convening of the meeting;

(7) other circumstances stipulated in the Articles of Association of the Company.

### Article 4. Proposals for Regular Meetings

Before issuing the notice of convening a regular meeting of the Board of Supervisors, the office of the Board of Supervisors shall solicit proposals for the meeting from all the supervisors and shall spend at least two days to solicit the opinions of the employees of the Company. When soliciting proposals and opinions, the office of the Board of Supervisors shall explain that the Board of Supervisors shall focus on the supervision of the Company's normative operation and the duties of directors and senior managerial personnel, rather than on the decision-making of the Company's operation and management.

### Article 5. Proposal Procedures for Interim Meetings

Where a supervisor proposes to convene an interim meeting of the Board of Supervisors, he/she shall submit to the chairman of the Board of Supervisors, through the office of the Board of Supervisors or directly to the chairman, a written proposal signed by the proposed supervisor. The written proposal shall contain the following:

(1) the name of the proposed supervisor;

(2) the reasons for the proposal or the objective cause on which the proposal is based;

(3) the proposed time or time limit, venue and modalities for the convening of the meeting;

(4) clear and specific proposals;

(5) the contact details of the proposed supervisor and the date of the proposal.

Within three days after the receipt of a written proposal by the supervisor or the chairman of the Board of Supervisors, the office of the Board of Supervisors shall issue a notice of convening an interim meeting of the Board of Supervisors.

IRI-CRT-00001065 - Translation

If the office of the Board of Supervisors is delayed in issuing the notice of the meeting, the proposed supervisor should report to the regulatory authority in a timely manner.

### Article 6 Convening and Presiding Over Meetings

The meeting of the Board of Supervisors shall be convened and presided over by the chairman of the Board of Supervisors; if the chairman is unable to or fails to perform his duties, a supervisor jointly nominated by more than half of the supervisors shall convene and preside over the meeting.

### Article 7 Notice of Meeting

In convening regular and interim meetings of the Board of Supervisors, the office of the Board of Supervisors shall notify the meeting in writing with the seal of the Board of Supervisors 10 and 5 days in advance, respectively, and submit the notice to all supervisors by direct service, fax, e-mail or other means. If the service is not direct, it shall also be confirmed by telephone and recorded accordingly.

In the case of an urgency to convene an interim meeting of the Board of Supervisors as soon as possible, the notice of the meeting may be given orally or by other means such as telephone at any time , but the convenor shall provide an explanation at the meeting.

### Article 8 Contents of the Notice of Meeting

The written notice of the meeting shall include at least the following:

(1) the time and place of the meeting;

(2) matters to be reviewed (meeting proposals);

(3) convenor and moderator of the meeting, proposer of the interim meeting and his/her written proposals;

(4) the meeting materials necessary for the voting of the supervisors;

(5) requirement that the supervisor shall attend the meeting in person;

(6) contacts and contact information.

The oral notice of the meeting shall include at least the contents of items (1) and (2) above, as well as an explanation of the urgency to convene the interim meeting as soon as possible.

### Article 9 Delivery Time of Notice of Meeting:

(1) when served directly, the time of service shall be taken as the time when it is signed by the addressee or the recipient entrusted by the addressee;

(2) in the case of service by fax, the time when the fax is sent shall be the time of service, provided that the fax number shall be confirmed by the addressee;

(3) when served by e-mail, the time of delivery shall be the time of service, provided that the e-mail address shall be confirmed by the addressee.

If the meeting notice was not sent to someone entitled to be notified or such person did not receive the notice due to accidental omission, the meeting and the resolution made at the meeting shall not therefor be null and void.

### Article 10 The Manner of Convening Meetings

The meeting of the Board of Supervisors shall be held on-site.

In case of emergency, the meeting of supervisors may vote by means of communication, but the convenor of the Board of Supervisors (the moderator of the meeting) shall explain the specific emergency situation to the supervisors attending the meeting. During the voting of the communication, the supervisors shall fax their written opinions and voting intention on the matter under consideration to the office of the Board of Supervisors after the signature has been confirmed. The supervisors shall not merely state the opinions of the voting without expressing their written opinion or the reasons for the voting.

### Article 11 Convening of Meetings

The meeting of the Board of Supervisors shall be convened only if more than half of the supervisors are present. If the relevant supervisor refuses to attend the meeting or his/her delay in attending the meeting results in the number of attendees is below the the minimum requirements for the meeting, other supervisors shall report to the regulatory authority in a timely manner.

The secretary of the Board of Directors and the representative of securities affairs shall attend the meeting as nonvoting delegates.

### Article 12 Review Procedure of Meetings

The moderator of the meeting shall call upon the attending supervisors to express their clear opinions on various proposals.

The moderator shall, on the basis of the proposal of the supervisor, require the directors, senior managerial personnel, other employees of the Company or the business personnel of relevant intermediary institutions to attend the meeting for questioning.

### Article 13 Resolution of the Board of Supervisors

The voting of the meeting of the Board of Supervisors shall be conducted by means of one person being represented by one vote, and in the form of registration and in writing.

The voting may also be taken by show of hands upon the decision of the moderator.

IRI-CRT-00001066 - Translation

The voting intentions of the supervisor is divided into consent, objection and abstention. The supervisors participating in the meeting shall choose one of the above-mentioned intentions. If no choice is made or two or more intentions are chosen at the same time, the moderator of the meeting shall ask the supervisor to choose again, and if he/she refuses to choose, it shall be deemed as an abstention; if he/she leaves the meeting halfway, it shall be deemed as an abstention.

A resolution of the Board of Supervisors shall be approved by a majority of all supervisors.

### Article 14 Audio Recordings of Meetings

The meeting of the Board of Supervisors can be recorded as needed.

### Article 15 Minutes of Meetings

The staff of the office of the Board of Supervisors shall keep records of the on-site meeting. The minutes of the meeting shall include the following:

(1) the session and the time, place and manner of the meeting;

(2) the issuance of notice of the meeting;

(3) convenor and moderator of the meeting;

(4) attendance at the meeting;

(5) the proposals reviewed by the meeting, the main points and main comments of each supervisor on relevant matters, and the voting intention on the proposals;

(6) the manner in which each proposal is to be voted on and the voting results (indicating the specific number of consent, objection, abstention);

(7) such other matters as the attending supervisors deem appropriate to record.

For the meeting of the Board of Supervisors convened by means of communication, the office of the Board of Supervisors shall, with reference to the above provisions, collate the minutes of the meetings.

### Article 16 Signature of the Supervisor

The supervisors attending the meeting shall sign and confirm the minutes of the meeting. Where the supervisor has different opinions on the minutes of the meeting, he/she may make a written statement at the time of signature. If necessary, he/she shall report to the regulatory authorities in a timely manner and may also issue a public statement.

If the supervisor does not sign for confirmation in accordance with the provisions of the preceding paragraph, nor does he/she provide a written explanation of his/her dissenting opinion or report to the regulatory authorities or issue a public statement, he/she shall be deemed to agree fully with the contents of the minutes of the meeting.

### Article 17 Announcement of Resolutions

The secretary of the Board of Directors shall be responsible for the announcement of the resolution of the Board of Supervisors in accordance with the relevant provisions of Rules Governing the Listing of Stocks on Shanghai Stock Exchange.

### Article 18 Implementation of Resolutions

The supervisors shall urge relevant personnel to implement the resolutions of the Board of Supervisors. The chairman of the Board of Supervisors shall report on the implementation of the resolutions that have been formed at future meetings.

### Article 19 Preservation of the Meeting Archives

The archives of the meeting of the Board of Supervisors, including the meeting notice and meeting materials, the meeting check-in book, the sound recording materials, the voting votes, the meeting minutes confirmed by the meeting supervisors' signature, the announcement of the resolution, etc., shall be kept by a special person appointed by the chairman of the Board of Supervisors.

The preservation term of the materials of the meeting of the Board of Supervisors shall be not less than ten years.

### Article 20 Supplementary Provisions

Matters not covered in these rules shall be subject to the relevant provisions of the Rules of Procedures of the Board of Directors of the Company.

In these rules, "above" includes the base number.

These rules shall come into effect after being formulated by the Board of Supervisors and submitted to the General Meeting of Shareholders for approval, and shall be amended in the same way.

These rules shall be interpreted by the Board of Supervisors.

IRI-CRT-00001067 - Translation

# 彩虹显示器件股份有限公司
# 章程

经 1992 年 12 月 28 日创立大会通过

经 1998 年 06 月 26 日第六次股东大会修改

经 1999 年 09 月 20 日 1999 年度第二次临时股东大会修改

经 2001 年 06 月 29 日 2001 年度第一次临时股东大会修改

经 2001 年 09 月 07 日 2001 年度第二次临时股东大会修改

经 2002 年 06 月 27 日第十股东大会修改

经 2002 年 10 月 18 日 2002 年度第一次临时股东大会修改

经 2004 年 09 月 29 日 2004 年度第一次临时股东大会修改

经 2005 年 02 月 25 日 2005 年度第一次临时股东大会修改

经 2005 年 05 月 27 日第十三次股东大会修改

经 2006 年 06 月 27 日第十四次股东大会修改

IRI-CRT-00001026

# 目　录

**第一章　总则**

**第二章　经营宗旨和范围**

**第三章　股份**

第一节　股份发行

第二节　股份增减和回购

第三节　股份转让

**第四章　股东**

第一节　一般规定

第二节　股东的权利和义务

第三节　控股股东和实际控制人

第四节　关联交易

**第五章　股东大会**

第一节　一般规定

第二节　年度股东大会

第三节　临时股东大会

第四节　股东大会的召集

第五节　股东大会提案

第六节　股东大会的召开

第七节　股东大会表决程序

第八节　股东大会决议

第九节　董事、监事选举程序

第十节　股东大会会议记录

第十一节股东大会对董事会的授权

**第六章　董事和董事会**

第一节　董事

第二节　独立董事

第三节　董事会

第四节　董事会对董事长的授权

第五节　董事会秘书

第六节　董事会专门委员会

**第七章　监事和监事会**

第一节　监事

第二节　监事会

**第八章　经理**

**第九章　绩效评价与激励约束机制**

第一节　董事、监事、经理人员的绩效评价

第二节　经理人员的激励与约束机制

**第十章　财务会计制度、利润分配和审计**

第一节　财务会计制度

第二节　内部审计

第三节　会计师事务所的聘任

**第十一章　持续信息披露**

**第十二章　利益相关者**

**第十三章　合并、分立、解散和清算**

第一节　合并或分立

第二节　解散和清算

**第十四章　修改章程**

**第十五章　附则**

0

IRI-CRT-00001027

彩虹显示器件股份有限公司章程

## 第一章　总则

**第一条**　为维护彩虹显示器件股份有限公司（以下简称"公司"）、股东和债权人的合法权益，规范公司的组织和行为，根据《中华人民共和国公司法》（以下简称《公司法》）、《中华人民共和国证券法》和其他有关规定，制订本章程。

**第二条**　公司系依照《股份有限公司规范意见》和其他有关规定成立的股份有限公司(以下简称"公司"）。

公司经陕西省经济体制改革委员会陕改发(1992)34 号文件批准，以定向募集方式设立；在陕西省工商行政管理局注册登记，取得营业执照。

经陕西省经济体制改革委员会陕改发(1996)109 号文件批复，公司已依照《公司法》进行了规范，并依法履行了重新登记手续。

**第三条**　公司于 1992 年 8 月 11 日经中国人民银行陕西省分行陕银复(1992)54 号文件批准，首次以定向募集方式发行人民币普通股 30000 万股。全部为境内投资人以人民币认购的内资股。于 1996 年 5 月 20 日在上海证券交易所上市。

**第四条**　公司注册名称：中文：彩虹显示器件股份有限公司

英文：**IRICO  DISPLAY  DEVICES  CO.,  LTD**

**第五条**　公司住所：陕西省西安市高新技术产业开发区

邮政编码：710075

**第六条**　公司注册资本为人民币：42114.88 万元

**第七条**　公司为永久存续的股份有限公司。

**第八条**　董事长为公司的法定代表人。

**第九条**　公司全部资产分为等额股份，股东以其所持股份为限对公司承担责任，公司以其全部资产对公司的债务承担责任。

**第十条**　本公司章程自生效之日起，即成为规范公司的组织与行为、公司与股东、股东与股东之间权利义务关系的具有法律约束力的文件，对公司、股东、董事、监事、高级管理人员具有法律约束力。依据公司章程，股东可以起诉股东；股东可以起诉公司董事、监事、经理和其他高级管理人员；股东可以起诉公司；公司可以起诉股东、董事、监事、经理和其他高级管理人员。

**第十一条**　本章程所称其他高级管理人员是指公司的董事会秘书、财务负责人。

## 第二章　经营宗旨和范围

**第十二条**　公司的经营宗旨：以客户需求为中心，用卓越的技术和管理，不断提供高品质的产品与服务。

**第十三条**　经公司登记机关核准，公司经营范围是：彩色显示器件、电子产品及零部件、原材料的生产、开发、经营；自营和代理各类商品及技术的进出口业务；实物租赁、承办"三来一补"业务等。

## 第三章　股份

### 第一节　股份发行

**第十四条**　公司的股份采取股票的形式。

1

IRI-CRT-00001028

彩虹显示器件股份有限公司章程

**第十五条**　公司股份的发行，实行公开、公平、公正的原则，同种类的每一股份应当具有同等权利。

同次发行的同种类股票，每股的发行条件和价格应当相同；任何单位或者个人所认购的股份、每股应当支付相同价额。

**第十六条**　公司发行的股票，以人民币标明面值。

**第十七条**　公司的发行的股票，在中国证券登记结算有限责任公司上海分公司集中存管。

**第十八条**　公司经批准发行的普通股总数为 30000 万股，成立时向发起人彩虹集团公司发行 6600 万股，中国工商银行陕西省信托投资公司 5400 万股，中国建设银行陕西省信托投资公司 3000 万股，共计发行 15000 万股，占公司发行普通股总数的 50%。

上述资金已于 1992 年 8 月 31 日全部到位。

**第十九条**　公司的股本结构为：普通股 42114.88 万股，其中发起人持有 24016 万股，其他内资股股东持有 18098.88 万股。

**第二十条**　公司或公司的子公司(包括公司的附属企业)不以赠与、垫资、担保、补偿或贷款等形式，对购买或者拟购买公司股份的人提供任何资助。

### 第二节　股份增减和回购

**第二十一条**　公司根据经营和发展的需要，依照法律、法规的规定，经股东大会分别作出决议，可以采用下列方式增加资本。

（一）公开发行的股份；

（二）非公开发行的股份；

（三）向现有股东派送红股；

（四）以公积金转增股本；

（五）法律、行政法规规定以及国务院证券主管部门批准的其他方式。

**第二十二条**　公司可以减少注册资本。公司减少注册资本，按照《公司法》以及其他有关规定和本章程规定的程序办理。

**第二十三条**　公司在下列情况下，经本章程规定的程序通过，并报国家有关主管机构批准后，可以购回本公司的股票：

（一）减少公司注册资本；

（二）与持有本公司股票的其他公司合并；

（三）将股份奖励给本公司职工；

（四）股东因对股东大会作出的合并、分立决议持异议，要求公司收购其股份的。

除上述情形外，公司不进行买卖本公司股票的活动。

**第二十四条**　公司购回股份，可以下列方式之一进行：

（一）证券交易所集中竞价交易方式；

（二）要约方式；

（三）中国证监会认可的其他方式。

**第二十五条**　公司因本章程第二十三条第（一）项至第（三）项的原因收购本公司股份的，应当经股东大会决议。公司依照第二十三条规定收购本公司股份后，属于第（一）项情形的，应当自收购之日起 10 日内注销；属于第（二）项、第（四）项情形的，应当在 6 个月内转让或者注销。

IRI-CRT-00001029

彩虹显示器件股份有限公司章程

公司依照第二十三条第（三）项规定收购的本公司股份，将不超过本公司已发行股份总额的 5%；用于收购的资金应当从公司的税后利润中支出；所收购的股份应当 1 年内转让给职工。

### 第三节　股份转让

**第二十六条**　公司的股份可以依法转让。

**第二十七条**　公司不接受本公司的股票作为质押权的标的。

**第二十八条**　董事、监事、经理以及其他高级管理人员在其任职期间内，应当定期向公司申报其所持有的本公司股份（包括因公司派发股份股利、公积金转增股本、行使可转换公司债券的转股权、购买、继承等新增加的股份）及其变动情况；在其任职期间每年转让的股份不得超过其所持有本公司股份总数的 25%；所持本公司股份自公司股票上市交易之日起 1 年内不得转让。上述人员离职后六个月内不得转让其所持有的本公司的股份。

**第二十九条**　公司董事、监事、高级管理人员、持有公司 5%以上的股东，将其所持有的公司股票在买入之日起 6 个月以内卖出，或者在卖出之日起 6 个月以内又买入的，由此所得收益归公司所有。但时，证券公司因包销购入售后剩余股票而持有 5%以上股份的，卖出该股票不受 6 个月时间限制。

公司董事会不按照前款规定执行的，股东有权要求董事会在 30 日内执行。公司董事会未在上述期限内执行的，股东有权为了公司的利益以自己的名义直接向人民法院提起诉讼。公司董事会不按照第 1 款的规定执行的，负有责任的董事依法承担连带责任。

### 第四章　股东

#### 第一节　一般规定

**第三十条**　公司股东为依法持有公司股份的人。

**第三十一条**　股东名册是证明股东持有公司股份的充分证据。

**第三十二条**　公司应当与证券登记机构签订股份保管协议，依据证券登记机构提供的凭证建立股东名册。公司应定期查询主要股东资料及主要股东的持股变更（包括股权的出质）情况，及时掌握公司的股权结构。

**第三十三条**　公司召开股东大会、分配股利、清算及从事其他需要确认股东身份的行为时，由董事会或股东大会召集人确定股权登记日，股权登记日收市后登记在册的股东为享有相关权益的股东。

#### 第二节　股东的权利和义务

**第三十四条**　股东作为公司的所有者，享有法律、行政法规和本章程规定的各项合法权利。

**第三十五条**　股东按其所持有股份的种类享有权利，承担义务；持有同一种类股份的股东享有同等权利，承担同种义务。

**第三十六条**　公司股东享有下列权利：

（一）依照其所持有的股份份额获得股利和其他形式的利益分配；

（二）依法请求、召集、主持、参加或者委派股东代理人参加股东会议；

（三）依照其所持有的股份份额行使表决权；

（四）对公司的经营行为进行监督，提出建议或者质询；

（五）依照法律、行政法规及公司章程的规定转让、赠与或质押其所持有股份；

3

IRI-CRT-00001030

彩虹显示器件股份有限公司章程

（六）查阅公司章程、股东名册、公司债券存根、股东大会会议记录、董事会会议决议、监事会会议决议、财务会计报告；

（七）公司终止或者清算时，按其所持有的股份份额参加公司剩余财产的分配；

（八）对股东大会作出的合并、分立决议持异议的股东，要求公司收购其股份；

（九）法律、行政法规及公司章程所赋予的其他权利。

**第三十七条**　股东提出查阅前条所述有关信息或者索取资料的，应当向公司提供证明其持有公司股份的种类以及持股数量的书面文件，公司经核实股东身份后按照股东的要求予以提供。

**第三十八条**　公司股东大会、董事会决议内容违反法律、行政法规的，股东有权请求人民法院认定无效。

股东大会、董事会的会议召集程序、表决方式违反法律、行政法规或者本章程，或者决议内容违反本章程的，股东有权自决议作出之日起 60 日内，请求人民法院撤销。

**第三十九条**　董事、高级管理人员执行公司职务时违反法律、行政法规或者本章程的规定，给公司造成损失的，连续 180 日以上单独或合并持有公司 1%以上股份的股东有权书面请求监事会向人民法院提起诉讼；监事会执行公司职务时违反法律、行政法规或者本章程的规定，给公司造成损失的，股东可以书面请求董事会向人民法院提起诉讼。

监事会、董事会收到前款规定的股东书面请求后拒绝提起诉讼，或者自收到请求之日起 30 日内未提起诉讼，或者情况紧急、不立即提起诉讼将会使公司利益受到难以弥补的损害的，前款规定的股东有权为了公司的利益以自己的名义直接向人民法院提起诉讼。

他人侵犯公司合法权益，给公司造成损失的，本条第一款规定的股东可以依照前两款的规定向人民法院提起诉讼。

**第四十条**　董事、高级管理人员违反法律、行政法规或者本章程的规定，损害股东利益的，股东可以向人民法院提起诉讼。

**第四十一条**　公司股东承担下列义务：

（一）遵守法律、行政法规和公司章程；

（二）依其所认购的股份和入股方式缴纳股金；

（三）除法律、法规规定的情形外，不得退股；

（四）不得滥用股东权利损害公司或者其他股东的利益；不得滥用公司法人独立地位和股东有限责任损害公司债权人的利益。

公司股东滥用股东权利给公司或者其他股东造成损失的，应当依法承担赔偿责任。

公司股东滥用公司法人独立地位和股东有限责任，逃避债务，严重损害公司债权人利益的，应当对公司债务承担连带责任。

（五）法律、行政法规及公司章程规定应当承担的其他义务。

**第四十二条**　股东持有公司已发行的股份达到百分之五时，应当自达到该比例之日向公司作出书面报告。

**第四十三条**　持有公司百分之五以上有表决权股份的股东，发生下列情形之一时，应当自该事实发生之日向公司作出书面报告。

（一）其持有股份增减变化达百分之五以上时；

（二）其持有股份进行质押时；

（三）其持有股份被司法冻结时。

4

IRI-CRT-00001031

彩虹显示器件股份有限公司章程

### 第三节 控股股东及实际控制人

**第四十四条** 控股股东及实际控制人对公司和公司其他股东负有诚信义务。

控股股东在行使表决权时，不得作出有损于公司和公司其他股东合法权益的决定。

**第四十五条** 控股股东、实际控制人不得利用其关联关系损害公司利益。违反规定的，给公司造成损失的，应当承担赔偿责任。

控股股东应严格依法行使出资人的权利，控股股东及实际控制人不得超越法定程序直接或者间接干预公司的决策及依法开展的生产经营活动，不得利用其特殊地位谋取额外的利益，不得利用关联交易、利润分配、资产重组、对外投资、资金占用、借款担保等方式损害公司和公司其他股东的合法权益，不得利用其控制地位损害公司和公司其他股东的利益。

**第四十六条** 控股股东与公司应实行人员、资产、财务分开，机构、业务独立，各自独立核算、独立承担责任和风险。

**第四十七条** 公司人员应独立于控股股东。公司的经理人员、财务负责人、营销负责人和董事会秘书在控股股东单位不得担任除董事以外的其他职务。控股股东高级管理人员兼任公司董事的，应保证有足够的时间和精力承担上市公司的工作。

**第四十八条** 控股股东投入公司的资产应独立完整、权属清晰。控股股东以非货币性资产出资的，应办理产权变更手续，明确界定该资产的范围。公司应当对该资产独立登记、建帐、核算、管理。控股股东不得占用、支配该资产或干预公司对该资产的经营管理。

**第四十九条** 公司应按照有关法律、法规的要求建立健全的财务、会计管理制度，独立核算。控股股东应尊重公司财务的独立性，不得干预公司的财务、会计活动。

**第五十条** 公司的董事会、监事会及其他内部机构应独立运作。控股股东及其职能部门与公司及其职能部门之间没有上下级关系。控股股东及其下属机构不得向公司及其下属机构下达任何有关公司经营的计划和指令，也不得以其他任何形式影响其经营管理的独立性。

**第五十一条** 控股股东对公司董事、监事候选人的提名，应严格遵循法律、法规和本章程规定的条件和程序。控股股东提名的董事、监事候选人应当具备相关专业知识和决策、监督能力。控股股东不得对股东大会选举决议和董事会人事聘任决议履行任何批准手续；不得越过股东大会、董事会任免公司的高级管理人员。

**第五十二条** 控股股东不应当从事与公司构成直接或者间接竞争的经营业务。

### 第四节 关联交易

**第五十三条** 公司与关联人之间的关联交易应签订书面协议。协议的签订应当遵循平等、自愿、等价、有偿的原则，协议内容应明确、具体。公司应将该协议的订立、变更、终止及履行情况等事项按照有关规定予以披露。

**第五十四条** 公司应采取有效措施防止关联人以垄断采购和销售业务渠道等方式干预公司的经营，损害公司利益。关联交易活动应遵循商业原则，关联交易的价格原则上应不偏离市场独立第三方的价格或收费的标准。公司应对关联交易的定价依据予以充分披露。

**第五十五条** 股东大会审议关联交易事项时，关联股东应当放弃对该项议案（提案）的表决权，且其持有（代表）的股份不计入该项表决的有效表决票总数。

**第五十六条** 公司审议关联交易事项时，应当严格遵守法律、法规和规范性文件及本章程规定的程序。

**第五十七条** 董事会审议关联交易事项时，除非有关联关系的董事按照本章程的要求向董事会作了披露，并且董事会在不将其计入法定人数，该董事亦未参加表决的会议上批准了该事项，公司有权撤销该合同、交易或者安排，但在对方是善意第三人的情况下除外。

**第五十八条** 董事与董事会会议决议事项所涉及的企业有关联关系的，不得对该项决议

5

IRI-CRT-00001032

彩虹显示器件股份有限公司章程

行使表决权,也不得代理其他董事行使表决权。该董事会会议由过半数的无关联关系董事出席即可举行,董事会会议所作决议须经无关联关系董事过半数通过。出席董事会的无关联董事人数不足 3 人的,应将该事项提交股东大会审议。

**第五十九条** 董事会审议关联交易事项时,应当关注交易的必要性和公允性,应当关注是否可能损害非关联股东的利益,必要时应当聘请专业机构出具专项报告。

**第六十条** 公司应采取有效措施防止股东及其关联方以各种形式占用或者转移公司的资金、资产及其他资源。

**第六十一条** 董事会对于关联交易事项,除应当依照有关法律、法规和规范性文件及时充分披露外,还应当在年度股东大会上就执行情况作出报告。

## 第五章 股东大会
### 第一节 一般规定

**第六十二条** 公司股东大会由全体股东组成。

**第六十三条** 股东大会是公司的权力机构,依法行使下列职权:

(一)决定公司经营方针和投资计划;

(二)选举和更换董事,决定有关董事的报酬事项;

(三)选举和更换独立董事,决定独立董事的津贴;

(四)选举和更换由股东代表出任的监事,决定有关监事的报酬事项;

(五)审议批准董事会的报告;

(六)审议批准监事会的报告;

(七)审议批准公司的年度财务预算方案、决算方案;

(八)审议批准公司的利润分配方案和弥补亏损方案;

(九)审议批准重大关联交易事项;

(十)对公司增加或者减少注册资本作出决议;

(十一)对发行公司债券作出决议;

(十二)对公司募集资金投资项目作出决议;

(十三)对公司合并、分立、解散和清算等事项作出决议;

(十四)修改公司章程;

(十五)对公司聘用、解聘会计师事务所作出决议;

(十六)审议代表公司发行在外有表决权股份总数的 3%以上的股东的提案;

(十七)审议独立董事提出的提案;

(十八)审议公司监事会提出的提案;

(十九)审议批准本章程规定的对外担保事项;

(二十)审议公司一年内购买、出售重大资产超过公司最近一期经审计总资产 30%的事项;

(二十一)审议股权激励计划;

(二十二)审议法律、法规和本章程规定应当由股东大会决定的其他事项。

上述股东大会的职权不得通过授权的形式由董事会或其他机构和个人代为行使。

**第六十四条** 公司下列对外担保行为,须经股东大会审议通过。

(一)本公司及本公司控股子公司的对外担保总额,达到或超过最近一期经审计净资产的 50%以后提供的任何担保;

(二)公司的对外担保总额,达到或超过最近一期经审计总资产的 30%以后提供的任何

6

IRI-CRT-00001033

彩虹显示器件股份有限公司章程

担保；

（三）为资产负债率超过 70%的担保对象提供的担保；

（四）单笔担保额超过最近一期经审计净资产 10%的担保；

（五）对股东、实际控制人及其关联方提供的担保。

**第六十五条** 股东大会应当在法律、法规规定的范围内行使职权，不得干涉股东对自身权利的处分。

**第六十六条** 股东大会分为年度股东大会和临时股东大会。

除非另有说明，本章程所称股东大会包括年度股东大会和临时股东大会。

**第六十七条** 股东可以亲自出席股东大会，也可以委托代理人代为出席和表决。

股东代理人不必是公司的股东。

除非另有说明，本章以下各条所称股东均包括股东代理人。

**第六十八条** 股东出席股东大会，依法享有知情权、发言权、质询权和表决权。

符合本章程规定条件的股东，有权依照本章程规定的程序提交股东提案。

**第六十九条** 公司召开股东大会的地点为公司所在地城市。

**第七十条** 股东大会除设置会场、以现场会议形式召开外，经召集人决定，还可以提供网络投票形式，为股东参加股东大会提供便利条件。

股东通过网络方式投票表决的，视为出席股东大会。

**第七十一条** 股东大会采用网络投票形式时，确认股东身份的方式在会议通知公告中列明。

**第七十二条** 股东大会的召集者和主持人应认真、负责地安排股东大会审议事项，应给予每项议案或者提案合理的讨论时间。

**第七十三条** 公司董事会应当聘请律师出席股东大会，对以下问题出具意见并公告：

（一）股东大会的召集、召开程序是否符合法律、行政法规的规定，是否符合本章程；

（二）出席会议人员的资格、召集人资格是否合法有效；

（三）股东大会的表决程序、表决结果是否合法有效；

（四）应公司要求对其他问题出具的法律意见。

**第七十四条** 公司召开股东大会应坚持从简原则，不得给予出席会议股东额外的经济利益。

**第七十五条** 股东出席股东大会应当遵守有关法律、法规、规范性文件及公司章程之规定，自觉维护会议秩序，不得侵犯其他股东的合法权益。

### 第二节 年度股东大会

**第七十六条** 年度股东大会每年召开一次，应于上一会计年度完结之后的 6 个月之内举行。

公司在上述期限内因故不能召开年度股东大会，应该报告证券交易所，说明原因并公告。

**第七十七条** 年度股东大会会议议程应当包括下列内容：

（一） 审议批准董事会的报告；

（二） 审议批准监事会的报告；

（三） 审议批准公司年度财务预算方案、决算方案；

（四） 审议批准公司的利润分配方案和弥补亏损方案；

（五） 对公司聘用、解聘会计师事务所作出决议。

7

IRI-CRT-00001034

彩虹显示器件股份有限公司章程

### 第三节  临时股东大会

**第七十八条**  临时股东大会不定期召开，出现下列情形之一的，公司在事实发生之日起两个月以内召开临时股东大会：

（一）董事人数不足五人时；

（二）公司未弥补的亏损额达股本总额的 1/3 时；

（三）单独或者合并持有公司有表决权股份总数 10%以上的股东书面请求时；

（四）董事会认为必要时；

（五）监事会提议召开时；

（六）本章程规定的其他情形。

前述第（三）项持股股数按股东提出书面要求日计算。

### 第四节  股东大会的召集

**第七十九条**  股东大会会议由董事会依法召集。

董事会不能履行职责或无合理理由而不召开年度股东大会时，其他具有资格的召集人有权召集年度股东大会。

**第八十条**  独立董事有权向董事会提议召开临时股东大会。对独立董事要求召开临时股东大会的提议，董事会应当根据法律、行政法规和本章程的规定，在收到提议后 10 日内提出同意或不同意召开临时股东大会的书面反馈意见。

董事会同意召开临时股东大会的，将在作出董事会决议后的 5 日内发出召开股东大会的通知；董事会不同意召开临时股东大会的，将说明理由并公告。

**第八十一条**  监事会有权向董事会提议召开临时股东大会，并应当以书面形式向董事会提出。董事会应当根据法律、行政法规和本章程的规定，在收到提案后 10 日内提出同意或不同意召开临时股东大会的书面反馈意见。

董事会同意召开临时股东大会的，将在作出董事会决议后的 5 日内发出召开股东大会的通知，通知中对原提议的变更，应征得监事会的同意。

董事会不同意召开临时股东大会，或者在收到提案后 10 日内未作出反馈的，视为董事会不能履行或者不履行召集股东大会会议职责，监事会可以自行召集和主持。

**第八十二条**  单独或者合计持有公司 10%以上股份的股东有权向董事会请求召开临时股东大会，并应当以书面形式向董事会提出。董事会应当根据法律、行政法规和本章程的规定，在收到请求后 10 日内提出同意或不同意召开临时股东大会的书面反馈意见。

董事会同意召开临时股东大会的，应当在作出董事会决议后的 5 日内发出召开股东大会的通知，通知中对原请求的变更，应当征得相关股东的同意。

董事会不同意召开临时股东大会，或者在收到请求后 10 日内未作出反馈的，单独或者合计持有公司 10%以上股份的股东有权向监事会提议召开临时股东大会，并应当以书面形式向监事会提出请求。

监事会同意召开临时股东大会的，应在收到请求 5 日内发出召开股东大会的通知，通知中对原提案的变更，应当征得相关股东的同意。

监事会未在规定期限内发出股东大会通知的，视为监事会不召集和主持股东大会，连续90 日以上单独或者合计持有公司 10%以上股份的股东可以自行召集和主持。

**第八十三条**  监事会或股东决定自行召集股东大会的，须书面通知董事会，同时向公司所在地中国证监会派出机构和证券交易所备案。

在股东大会决议公告前，召集股东持股比例不得低于 10%。

召集股东应在发出股东大会通知及股东大会决议公告时，向公司所在地中国证监会派出机构和证券交易所提交有关证明材料。

8

IRI-CRT-00001035

彩虹显示器件股份有限公司章程

**第八十四条**  对于监事会或股东自行召集的股东大会，董事会和董事会秘书将予配合。董事会应当提供股权登记日的股东名册。

**第八十五条**  监事会或股东自行召集的股东大会，会议所必需的费用由本公司承担。

### 第五节  股东大会的通知

**第八十六条**  公司召开年度股东大会，召集人应当在会议召开 20 日之前以公告方式通知公司股东；公司召开临时股东大会，召集人应当在会议召开 15 日之前以公告方式通知各股东。计算上述会议通知起始期限时，不应当包括会议召开当日。

会议通知一经公告，视为所有相关人员收到通知。

**第八十七条**  召开股东大会的通知包括以下内容：

（一）会议的召集人、会议时间、地点、方式和会议期限；

（二）会议审议的事项；

（三）投票程序（适用于网络方式投票）；

（四）以明显的文字说明：全体股东均有权出席股东大会，并可以委托代理人出席会议和参加表决，该股东代理人不必是公司的股东；

（五）有权出席股东大会股东的股权登记日；

（六）投票代理委托书的送达时间和地点；

（七）会务常设联系人姓名、联系方式；

（八）会议登记日期、地点、方式。

公司召开股东大会确定的股权登记日与股东大会会议日期之间的间隔应当不多于 7 个工作日。股权登记日一旦确认，不得变更。

**第八十八条**  召集人发出召开股东大会的通知后，应当在规定的时间内将该次会议拟审议的所有提案在指定网站上充分、完整的披露，拟讨论的事项需要独立董事发表意见的，发布股东大会通知或补充通知时应当同时披露独立董事的意见及理由。

**第八十九条**  召开股东大会的会议通知发出后，除有不可抗力或者其它意外事件等原因，股东大会不应延期或取消，股东大会通知中列明的提案不应取消。一旦出现延期或取消的情形，召集人应当在原定召开日前至少 2 个工作日公告并说明原因。

### 第六节  股东大会提案

**第九十条**  公司召开股东大会，董事会、监事会以及单独或者合并持有公司 3%以上股份的股东，有权向公司提出提案。

**第九十一条**  股东大会提案应当符合下列条件：

（一）有明确议题；

（二）提案内容具体、完整；

（三）提案内容与法律、法规和本章程的规定不相抵触，并且属于公司经营范围和股东大会职责范围；

（四）以书面形式提交或送达董事会。

**第九十二条**  单独或者合计持有公司 3%以上股份的股东，可以在股东大会召开 10 日前提出临时提案并书面提交召集人。召集人应当在收到提案后 2 日内发出股东大会补充通知，公告临时提案的内容。

除前款规定的情形外，召集人在发出股东大会通知公告后，不得修改股东大会通知中已列明的提案或增加新的提案。

股东大会通知中未列明或不符合本章程第九十一条股东大会提案条件的提案，股东大会不得进行表决并作出决议。

### 第七节  股东大会的召开

**第九十三条**  董事会和其他召集人应采取必要措施，保证股东大会的正常秩序。对于干扰股东大会、寻衅滋事和侵犯股东合法权益的行为，将采取措施加以制止并及时报告有关部

9

IRI-CRT-00001036

彩虹显示器件股份有限公司章程

门查处。

**第九十四条**　股权登记日登记在册的所有股东或其代理人，均有权出席股东大会，并依照有关法律、法规及本章程行使表决权。

**第九十五条**　股东出席股东大会应按会议通知规定的时间进行登记。

会议登记可以由股东到登记处登记，也可以采用传真、信函方式登记。

**第九十六条**　股东进行会议登记应当分别提供下列文件：

（一）法人股东：法人营业执照复印件、法定代表人证明书或授权委托书及出席人身份证明；

（二）个人股东：本人身份证明、股票账户卡；如委托代理人出席，则应提供个人股东身份证明复印件、股票账户卡；授权委托书；代理人身份证明。

上述身份证明指在中国境内具有法律效力的身份证明文件，包括但不限于中华人民共和国居民身份证和护照。

**第九十七条**　股东委托代理人代为出席会议时，委托代理人以不超过二人为限。

委托人为法人的，由其法定代表人或者董事会、其他决策机构决议授权的人作为代表出席会议。

**第九十八条**　股东应当以书面形式委托代理人，由委托人签署或者由其以书面形式委托的代理人签署：委托人为法人的，应当加盖法人印章或者由其正式委托的代理人签署。

委托书由委托人授权他人签署的，授权签署的授权书或者其他授权文件应当经过公证。

**第九十九条**　股东出具的委托他人出席股东大会的授权委托书应当载明下列内容：

（一）代理人的姓名；

（二）是否具有表决权；

（三）分别对列入股东大会议程的每一审议事项投赞成、反对或弃权票的指示；

（四）对可能纳入股东大会议程的临时提案是否有表决权，如果有表决权应行使何种表决权的具体指示；

（五）委托书签发日期和有效期限；

（六）委托人签名（或盖章），委托人为法人的，应加盖法人单位印章。

委托书应当注明如果委托人不作具体指示，代理人是否可以按自己的意思表决。

股东委托的代理人为二人时，应当明确地将投票表决权授予其中一人。

**第一百条**　投票代理委托书至少应当在股东大会召开前二十四小时备置于公司住所，或者召集会议的通知中指定的其他地方。

**第一百零一条**　出席股东大会的人员应当履行签到手续。

签到名册由公司负责制作。签到名册载明参加会议人员姓名（或单位名称）、身份证明号码、委托人姓名（或名称）、持有或代表有表决权的股份数额等事项。

**第一百零二条**　个人股东亲自出席股东大会的，应当出示本人身份证明和持股凭证。

个人股东委托的代理人出席股东大会的，应当出示授权委托书，股东持股凭证和本人身份证明。

**第一百零三条**　法人股东应由法定代表人或者法定代表人委托的代理人出席股东大会。

法定代表人出席股东大会的，应当出示法人单位证明文件、能够证明其具有法定代表人资格的证明、持股凭证和本人身份证明。

法人股东委托的代理人出席股东大会的，应当出示本人身份证明、法人股东单位证明文件，法人股东单位的法定代表人出具的授权委托书及持股凭证。

**第一百零四条**　召集人和公司聘请的律师将依据证券登记结算机构提供的股东名册共同对股东资格的合法性进行验证，并登记股东姓名（或名称）及其所持有表决权的股份数。在会议主持人宣布现场出席会议的股东和代理人人数及所持有表决权的股份总数之前，会议登记应当终止。

10

IRI-CRT-00001037

彩虹显示器件股份有限公司章程

**第一百零五条** 公司董事会、独立董事和符合有关条件的股东可以向公司股东征集其在股东大会上的投票权。

投票权征集应采取无偿的方式进行，并应向被征集人充分披露信息。

**第一百零六条** 股东大会召开时，本公司全体董事、监事和董事会秘书应当出席会议，经理和其他高级管理人员应当列席会议。

**第一百零七条** 由董事会召集的股东大会由董事长主持。董事长因故不能履行职务时，由副董事长主持；副董事长不能履行职务或者不履行职务时，由半数以上董事共同推举的一名董事主持。

由监事会自行召集的股东大会，会议由监事会主席主持。监事会主席不能履行职务或不履行职务时，由半数以上监事共同推举的一名监事主持。

由股东自行召集的股东大会，会议由召集人推举代表主持。

召开股东大会时，会议主持人违反议事规则使股东大会无法继续进行的，经现场出席股东大会有表决权过半数的股东同意，股东大会可推举一人担任会议主持人，继续开会。

**第一百零八条** 在年度股东大会上，董事、监事会应当就其过去一年的工作向股东大会作出报告。每名独立董事也应作出述职报告。

**第一百零九条** 公司的董事长、董事、监事或总经理及其他高级管理人员在股东大会上应当就股东的质询和建议作出解释和说明，但存在下列情形的除外：

（一）质询问题与会议议题无关；

（二）质询问题涉及事项尚待查实；

（三）质询问题涉及公司商业秘密；

（四）回答质询问题将导致违反公平信息披露义务；

（五）其他合理的事由。

## 第八节 股东大会表决程序

**第一百一十条** 股东以其所代表的有表决权的股份数额行使表决权，每一股份享有一票表决权。

股东登记日登记在册的所有股东或其代理人，均有权出席股东大会。并依照有关法律、法规及本章程行使表决权。

**第一百一十一条** 股东大会对列入会议议程的各项报告、议案、提案应当采用记名投票方式逐项进行表决，不得以任何理由搁置或不予表决。

股东大会对同一事项有不同提案的，应以提案提出的时间顺序进行表决。

**第一百一十二条** 召集人应当保证股东大会连续举行，直至形成最终决议。因不可抗力等特殊原因导致股东大会中止或不能作出决议的，应采取必要措施尽快恢复召开股东大会或直接终止本次股东大会，并及时公告。同时，召集人应向公司所在地中国证监会派出机构及证券交易所报告。

**第一百一十三条** 会议主持人应当在表决前宣布现场出席会议的股东和代理人人数及所持有表决权的股份总数，现场出席会议的股东和代理人人数及所持有表决权的股份总数以会议登记为准。

**第一百一十四条** 公司召开股东大会除现场表决外，可以利用符合中国证监会规定的网络系统或者其他方式向股东提供投票平台，以方便股东行使表决权。

**第一百一十五条** 股东大会股权登记日登记在册的所有股东，均有权通过股东大会网络投票系统行使表决权，但同一表决权只能选择现场投票、网络投票或符合规定的其他投票方式中的一种表决方式。同一表决权出现重复表决的以第一次投票结果为准。

**第一百一十六条** 股东大会对提案进行表决前，应当推举两名股东代表和一名监事为监票人，负责监督投票过程和计票工作。

与审议事项与股东有利害关系的股东，不得出任监票人，参加监票、计票工作。

IRI-CRT-00001038

公司聘请的见证律师与监票人共同负责监票、计票工作。

通过网络或其他方式投票的股东，有权通过相应的投票系统查验自己的投票结果。

**第一百一十七条**　股东大会现场结束时间不得早于网络或现场方式，会议主持人应当宣布每一提案的表决情况和结果，并根据表决结果宣布提案是否通过。

在正式公布表决结果前，股东大会现场、网络及其他表决方式中所涉及的上市公司、计票人、监票人、主要股东、网络服务方等相关各方对表决情况均负有保密义务。

**第一百一十八条**　出席股东大会的股东，应当对提交表决的提案发表以下意见之一：同意、反对或弃权。

未填、错填、字迹无法辨认的表决票、未投的表决票均视为投票人放弃表决权利，其所持股份数的表决结果应计为"弃权"。

**第一百一十九条**　表决票经监票人统计后当场公布表决结果，决议的表决结果载入会议记录。

监票人应当在表决统计表上签名，表决票和表决统计表应当一并存档。

**第一百二十条**　会议主持人如果对表决结果有任何怀疑，可以对所投股票进行点算；如果会议主持人未进行点算，出席会议的股东对会议主持人宣布的表决结果有异议时，有权在宣布表决结果后要求立即点算，会议主持人应当即时点票。

### 第九节　股东大会决议

**第一百二十一条**　股东大会决议分为普通决议和特别决议。

**第一百二十二条**　股东大会作出普通决议，应当由参加股东大会投票表决的股东所持表决权的1/2以上通过。

股东大会作出特别决议，应当由参加股东大会投票表决的股东所持表决权的2/3以上通过。

**第一百二十三条**　下列事项由股东大会以普通决议通过：

（一）董事会和监事会的工作报告；

（二）董事会拟定的利润分配方案和弥补亏损方案；

（三）董事会和监事会成员的任免及其报酬和支付方法；

（四）公司年度预算方案、决算方案；

（五）公司年度报告；

（六）除法律、行政法规规定或者本章程规定应当以特别决议通过以外的其他事项。

**第一百二十四条**　下列事项由股东大会以特别决议通过：

（一）公司增加或者减少注册资本；

（二）公司的分立、合并、解散和清算；

（三）公司章程的修改；

（四）公司在一年内购买、出售重大资产或者担保金额超过公司最近一期经审计总资产30%的；

（五）股权激励计划；

（六）法律、行政法规、规范性文件及本章程规定的，以及股东大会以普通决议认定会对公司产生重大影响的、需要以特别决议通过的其他事项。

**第一百二十五条**　公司股东大会通过有关派现、送股或资本公积金转增股东提案的，公司董事会应在股东大会结束后两个月内实施具体方案

**第一百二十六条**　除公司处于危机等特殊情况外，非经股东大会以特别决议批准，公司将不与董事、经理和其它高级管理人员以外的人订立将公司全部或者重要业务的管理交予该人负责的合同。

**第一百二十七条**　会议主持人根据表决结果宣布股东大会的决议是否通过。

IRI-CRT-00001039

彩虹显示器件股份有限公司章程

股东大会决议由出席会议的公司董事和董事会秘书签字后生效。

公司董事会全体董事均未出席股东大会时，由出席会议现场的全部股东签字后生效。

**第一百二十八条** 股东大会决议应当及时公告，公告中应列明出席会议的股东和代理人人数、所持有表决权的股份总数及占公司有表决权股份总数的比例、表决方式、每项议案的表决结果和通过的各项决议的详细内容。

**第一百二十九条** 股东大会审议提案时，不得对提案进行修改，否则，有关变更应当被视为一个新的提案，不得在本次股东大会上进行表决。

**第一百三十条** 提案未获通过，或者本次股东大会变更前次股东大会决议的，应当在股东大会决议公告中作特别提示。

### 第十节　董事、监事选举程序

**第一百三十一条** 董事和由股东人会选举产生的监事，单独或者合并持有公司股份 3%以上的股东提名候选人，以提案形式提交股东大会表决。

**第一百三十二条** 独立董事由公司董事会、监事会、单独或者合并持有公司股份 1%以上的股东提名，由股东大会选举决定。

**第一百三十三条** 股东提名董事、独立董事或者监事候选人时，应当在股东大会召开十日之前，将提名提案、提名候选人的详细资料、候选人的声明或承诺函提交董事会。

**第一百三十四条** 董事会应在股东大会通知中充分披露董事、独立董事、监事候选人的详细资料，至少包括以下内容：

（一）教育背景、工作经历、兼职等个人情况；

（二）与本公司或本公司的控股股东及实际控制人是否存在关联关系；

（三）披露持有本公司股份数量；

（四）是否受过中国证监会及其他有关部门的处罚和证券交易所惩戒。

**第一百三十五条** 董事、独立董事、监事候选人应在股东大会召开之前作出书面承诺，同意接受提名，承诺公开披露的个人资料真实、完整并保证当选后切实履行职责。

**第一百三十六条** 股东大会选举董事进行表决时，采用累积投票制。

**第一百三十七条** 累积投票制实施办法如下：

（一）累积表决票数计算办法

（甲）每位股东持有的有表决权的股份乘以本次股东大会应选举董事人数之积，即为该股东本次表决累积表决票数。

（乙）股东大会进行多轮选举时，应当根据每轮选举应当选董事人数重新计算股东累积表决票数。

（丙）公司董事会秘书应当在每轮累积投票表决前宣布每位股东的累积表决票数，任何股东、公司独立董事、公司监事、本次股东大会监票人、见证律师或公证处公证员对宣布结果有异议时，应当立即进行核对。

（二）投票办法

每位股东均可以按照自己的意愿（代理人应遵守委托人授权书指示），将累积表决票数分别或全部集中投向任一董事候选人，如果股东投票于两名以上董事候选人时，不必平均分配票数，但其分别投票数之和只能等于或者小于其累积表决票数，否则，其该项表决无效。

（三）董事当选

1. 等额选举

（甲）董事候选人获取选票数超过参加会议有效表决股份数二分之一以上时即为当选；若

（乙）当选董事人数少于应选董事，但已当选董事人数超过本章程规定的董事会成员三分之二以上时，则缺额应在下次股东大会上填补；若

IRI-CRT-00001040

彩虹显示器件股份有限公司章程

（丙）当选董事人数少于应选董事，且由此导致董事会成员不足本章程规定的三分之二以上时，则应当对未当选的董事候选人进行第二轮选举；若

（丁）第二轮选举仍未能满足上款要求时，则应当在本次股东大会结束之后的二个月内再次召开股东大会对缺额董事进行选举。

2．差额选举

（甲）董事候选人获取选票超过参加会议有效表决股份数二分之一以上，且该等人数等于或者小于应当选董事人数时，该等候选人即为当选；若

（乙）获取超过参加会议有效表决股份数二分之一以上的选票的董事候选人多于应当选董事人数时，则按得票多少排序，取得票较多者当选；若

（丙）因两名及其以上的候选人得票相同而不能决定其中当选者时，则对该等候选人进行第二轮选举；若

（丁）第二轮选举仍未能决定当选者时，则应在下次股东大会另行选举；若

（戊）由此导致董事会成员不足本章程规定的三分之二以上时，则下次股东大会应当在本次股东大会结束后的一个月以内召开。

第一百三十八条　股东大会选举股东监事时，表决方法与选举董事相同。

第一百三十九条　董事、股东监事一经当选，立即就任。

### 第十一节　股东大会会议记录

第一百四十条　召开股东大会应当由董事会秘书作出会议记录。会议记录记载以下内容：

（一）出席股东大会有表决权的股份数和占公司股份总数的比例；

（二）召开会议的日期、地点、议程和召集人姓名或名称；

（三）会议主持人以及出席或列席会议的董事、监事、经理和其他高级管理人员姓名；

（四）对每一提案的审议经过、发言要点和表决结果；

（五）每一表决事项的表决结果（包括现场表决、网络表决和其他方式表决的结果；非流通股东和流通股东分别统计的表决结果）；

（六）股东的质询意见、建议及董事会、监事会的答复或说明等内容；

（七）律师及计票人、监票人姓名；

（八）股东大会认为和本章程规定应当载入会议记录的其他内容。

第一百四十一条　召集人应当保证会议记录内容真实、准确和完整。出席会议的董事、监事、董事会秘书、召集人或其代表、会议主持人应当在会议记录上签名。会议记录应当与现场出席股东的签名册及代理出席的委托书、网络及其他方式表决情况的有效资料一并保存，保存期限不少于 10 年。

第一百四十二条　对股东大会到会人数、参会股东持有的股份数额、授权委托书、每一表决事项的表决结果、会议记录、会议程序的合法性等事项，可以进行公证。

### 第十二节　股东大会对董事会的授权

第一百四十三条　董事会决定对外投资事项的权限为：单个项目不超过最近一期经审计净资产值的 15%；年度累计投资项目不超过公司最近一期经审计净资产值的 50%。

第一百四十四条　董事会决定收购或出售资产事项的权限为：单个项目或年度累计不超过最近一期经审计总资产的 30%。连续 12 个月内向同一当事人收购或出售资产不超过三次；

董事会有权决定年度累计金额不超过最近一期经审计净资产值 50%的资产抵押项目。

第一百四十五条　董事会有权决定单一合同交易金额或连续 12 月内同类标的交易金额不超过公司最近一期经审计净资产绝对值 5%以下的关联交易事项。

14

IRI-CRT-00001041

彩虹显示器件股份有限公司章程

## 第六章　董事和董事会
### 第一节　董事

**第一百四十六条**　公司董事为自然人，董事无需持有公司股份。

**第一百四十七条**　有下列情形之一的，不能担任公司的董事：

（一）无民事行为能力或者限制民事行为能力；

（二）因贪污、贿赂、侵占财产、挪用财产或者破坏社会主义市场经济秩序，被判处刑罚，执行期满未逾 5 年，或者因犯罪被剥夺政治权利，执行期满未逾 5 年；

（三）担任破产清算的公司、企业的董事或者厂长、经理，对该公司、企业的破产负有个人责任的，自该公司、企业破产清算完结之日起未逾 3 年；

（四）担任因违法被吊销营业执照、责令关闭的公司、企业的法定代表人，并负有个人责任的，自该公司、企业被吊销营业执照之日起未逾 3 年；

（五）个人所负数额较大的债务到期未清偿；

（六）被中国证监会处以证券市场禁入处罚，期限未满的；

（七）法律、行政法规或部门规章规定的其他内容。

违反本条规定选举董事的，该项选举无效。

在任董事出现上述情形时，董事会应当自知道该情况发生之日起，立即停止有关董事履行职责，并提请股东大会予以撤换。

**第一百四十八条**　董事由股东大会选举或更换，任期三年。董事任期届满，连选可以连任。董事在任期届满以前，股东大会不得无故解除其职务。

董事任期从股东大会决议通过之日起计算，至本届董事会任期届满时为止。董事任期届满未及时改选，在改选出的董事就任前，原董事仍应当依照法律、行政法规、部门规章和本章程的规定，履行董事职务。

**第一百四十九条**　董事应当遵守法律、行政法规和本章程的规定，对公司负有下列忠实义务：

（一）不得利用职权收受贿赂或者其他非法收入，不得侵占公司的财产；

（二）不得挪用公司资金；

（三）不得将公司资产或者资金以其个人名义或者其他个人名义开立账户存储；

（四）不得违反本章程的规定，未经股东大会或董事会同意，将公司资金借贷给他人或者以公司财产为他人提供担保；

（五）不得违反本章程的规定或未经股东大会同意，与本公司订立合同或者进行交易；

（六）未经股东大会同意，不得利用职务便利，为自己或他人谋取本应属于公司的商业机会，自营或者为他人经营与本公司同类的业务；

（七）不得接受与公司交易的佣金归为己有；

（八）不得擅自披露公司秘密；

（九）不得利用其关联关系损害公司利益；

（十）法律、行政法规、部门规章及本章程规定的其他忠实义务。

董事违反本条规定所得的收入，应当归公司所有；给公司造成损失的，应当承担赔偿责任。

**第一百五十条**　公司应与董事签订聘任合同，明确公司和董事之间的权利义务、董事的任期、董事违反法律法规和本章程的责任以及公司因故提前解除合同的补偿等内容。

**第一百五十一条**　董事应当遵守法律、行政法规和本章程，对公司负有下列勤勉义务：

（一）应谨慎、认真、勤勉地行使公司赋予的权利，以保证公司的商业行为符合国家法律、行政法规以及国家各项经济政策的要求，商业活动不超过营业执照规定的业务范围；

（二）应公平对待所有股东；

（三）及时了解公司业务经营管理状况；

15

IRI-CRT-00001042

彩虹显示器件股份有限公司章程

（四）应当对公司定期报告签署书面确认意见。保证公司所披露的信息真实、准确、完整；

（五）应当如实向监事会提供有关情况和资料，不得妨碍监事会或者监事行使职权；

（六）法律、行政法规、部门规章及本章程规定的其他勤勉义务。

**第一百五十二条** 未经本章程规定或者董事会的合法授权，任何董事不得以个人名义代表公司或者董事会行事。董事以其个人名义行事时，在第三方会合理地认为该董事在代表公司或者董事会行事的情况下，该董事应当事先声明其立场和身份。

**第一百五十三条** 董事个人或者其所任职的其他企业直接或者间接与公司已有的或者计划中的合同、交易、安排有关联关系时（聘任合同除外），不论有关事项在一般情况下是否需要董事会批准同意，均应当尽快向董事会披露其关联关系的性质和程度。

**第一百五十四条** 如果公司董事在公司首次考虑订立有关合同、交易、安排前以书面形式通知董事会，声明自于通知所列的内容，公司日后达成的合同、交易、安排与其有利益关系，则在通知阐明的范围内，视为有关董事做了本章程前条所规定的披露。

**第一百五十五条** 董事连续两次未能亲自出席，也不委托其他董事出席董事会会议，视为不能履行职责，董事会应当建议股东人会予以撤换。

**第一百五十六条** 董事可以在任期届满以前提出辞职。董事辞职应当向董事会提交书面辞职报告。

**第一百五十七条** 如因董事的辞职导致公司董事会少于 5 人时，该董事的辞职报告应当在下任董事填补因其辞职产生的缺额后方能生效。

余任董事应当尽快召集临时股东大会选举董事，填补因董事辞职产生的空缺，在股东大会未就董事选举作出决议以前，该提出辞职的董事以及余任董事的职权应当受到合理的限制。

除前款所列情形外，董事辞职报告送达董事会时生效。

**第一百五十八条** 董事提出辞职或者任期届满，其对公司和股东负有的义务在其辞职报告生效后或者任期届满后的一年内仍然有效。

**第一百五十九条** 任职尚未结束的董事，对因其擅自离职使公司造成的损失，应当承担赔偿责任。

**第一百六十条** 公司不以任何形式为董事纳税。

**第一百六十一条** 董事会决议违反法律、行政法规或者本章程，致使公司遭受损失的，参与决议的董事对公司负赔偿责任。但经证明在表决时曾表明异议并记载于会议记录的，董事可以免除责任。

**第一百六十二条** 董事执行公司职务时违反法律、行政法规、部门规章或本章程的规定，给公司造成损失的，应当承担赔偿责任。

**第一百六十三条** 经股东大会批准，公司可以为董事购买责任保险。但董事因违反法律、行政法规和本章程规定而导致的责任除外。

### 第二节 独立董事

**第一百六十四条** 公司设独立董事三名，其中具有高级职称或注册会计师资格的会计从业人员不少于一名。

**第一百六十五条** 独立董事由公司董事会、监事会、单独或合并持有公司股份百分之一以上的股东提名，由股东大会选举或更换。

**第一百六十六条** 在选举独立董事的股东大会召开前，公司应当将独立董事候选人的有

IRI-CRT-00001043

彩虹显示器件股份有限公司章程

关材料（包括但不限于提名人声明、候选人声明、独立董事履历表）报送公司所在地中国证监会派出机构和证券交易所。

董事会对被提名人的有关情况有异议的，应同时报送董事会的书面意见。

**第一百六十七条**　证券交易所对独立董事候选人的任职资格或者独立性提出异议时，该候选人不得作为独立董事当选，但经提名人同意，可作为董事候选人参加选举。

股东大会选举独立董事时，董事会应对独立董事候选人是否被证券交易所提出异议的情况作出说明。

**第一百六十八条**　独立董事的提名人在提名前应当征得被提名人的同意。提名人应当充分了解被提名人职业、学历、职称、详细的工作经历、全部兼职等情况，并对其担任独立董事的资格和独立性发表声明。

**第一百六十九条**　独立董事接受提名后，应当就其本人与公司之间不存在任何影响其独立客观判断的关系发表公开声明。

**第一百七十条**　独立董事的任期与本届董事会其他董事任期一致。

独立董事连选可以连任，但是连任时间不得超过六年。

**第一百七十一条**　公司应当给予独立董事适当的津贴。

独立董事的津贴由董事会拟定预案，提请股东大会审议批准，并在公司年报中披露。

除上述津贴外，独立董事不应从公司及其主要股东或有利害关系的机构和人员处取得额外的、未予披露的其他利益。

**第一百七十二条**　独立董事对公司全体股东负责，但当股东利益不一致时，应当重点关注中小股东的利益不受损害。

**第一百七十三条**　独立董事应当具备与其行使职权相适应的任职条件，担任独立董事应当符合下列基本条件：

（一）根据法律、行政法规及其他有关规定，具备担任上市公司董事的资格；

（二）具有证券监管部门规范性文件要求的独立性；

（三）具备上市公司运作的基本知识，熟悉相关法律、行政法规、规章及规则；

（四）具有五年以上法律、经济或者其他履行独立董事职责所必需的工作经验；

（五）公司章程规定的其他条件。

**第一百七十四条**　下列人员不得担任独立董事：

（一）在公司或公司的子公司、分公司任职的人员及其直系亲属、主要社会关系；

（二）直接或间接持有公司发行在外股份百分之一以上或者位居公司前十名股东中的自然人股东及其直系亲属、主要社会关系；

（三）在直接或间接持有公司发行在外股份百分之五以上或者位居公司前五名股东中的单位任职的人员及其直系亲属、主要社会关系；

（四）最近一年内曾经具有前三项所列举情形的人员；

（五）与公司、公司关联人或公司管理层人士有利益关系的人员；

（六）在直接或间接地与公司存在业务联系或利益关系的机构任职的人员；

（七）为公司或者公司的子公司、分公司提供财务、法律、咨询等服务的人员或者在该等机构中任职的其他人员；

（八）在证券监管部门、证券经营机构、证券投资基金任职的人员；

（九）《公司法》或其他相关法律、行政法规规定不得担任公司董事的人员；

（十）被中国证监会认定为市场禁入者且禁入尚未解除的人员。

17

IRI-CRT-00001044

彩虹显示器件股份有限公司章程

（十一）　公司之间存在其他任何可能影响其作出独立客观判断的关系的人员。

（十二）　中国证监会认定的其他人员。

上述直系亲属是指配偶、父母、子女等；主要社会关系是指兄弟姐妹、岳父母、儿媳、女婿、兄弟姐妹的配偶、配偶的兄弟姐妹等。

**第一百七十五条**　独立董事应当履行法律、法规、规范性文件及本章程规定的诚信尽责义务。

**第一百七十六条**　独立董事除具有董事的一般职权外，还具有下列特别职权：

（一）重大关联交易（指公司拟与关联人达成的总额高于 300 万元或高于公司最近经审计净资产值的 5%的关联交易）应由独立董事事前同意后，方可提交董事会讨论；独立董事作出判断前，可以聘请中介机构出具独立财务顾问报告，作为其判断的依据；

（二）向董事会提议聘用或解聘会计师事务所；

（三）向董事会提请召开临时股东大会；

（四）提议召开董事会；

（五）董事会作出决议前，独立董事认为审议事项资料或论证不充分，提议暂缓表决时，董事会应予以采纳；

（六）可以在股东大会召开前公开向股东征集投票权；

（七）独立聘请外部审计机构或者咨询机构。

如上述提议未被采纳或上述职权不能正常行使，公司应将有关情况予以披露。

**第一百七十七条**　独立董事应当对下列事项发表独立意见：

（一）提名、任免董事；

（二）聘任或解聘高级管理人员；

（三）公司董事、高级管理人员的薪酬；

（四）公司财务报告；

（五）董事会作出的利润分配预案中不含现金派息时；

（六）公司发行新股的方案；

（七）公司的股东、实际控制人及其关联企业对公司现有或新发生的总额高于 300 万元或高于公司最近经审计净资产值 5%以上的借款或其他资金往来，以及公司是否采取有效措施回收欠款；

（八）占公司最近经审计后总资产百分之三十以上的资产置换、收购或出售方案；

（九）占公司最近经审计后净资产百分之十以上的风险投资、担保及财产损失方案；

（十）在公司年度报告中，对公司累计和当期对外担保情况进行专项说明，并发表独立意见；

（十一）证券监管部门、证券交易所要求独立董事发表意见的事项；

（十二）法律、法规及规范性文件要求独立董事发表意见的事项；

（十三）独立董事认为可能损害中小股东权益的事项；

（十四）独立董事认为必要的其他事项。

**第一百七十八条**　独立董事发表独立意见应采用下列方式之一：

（一）同意；

（二）保留意见及其理由；

（三）反对意见及其理由；

（四）无法发表意见及其障碍。

18

IRI-CRT-00001045

彩虹显示器件股份有限公司章程

**第一百七十九条**　如有关事项涉及需要披露时，公司应当将独立董事的意见予以公告，独立董事出现意见分歧无法达成一致时，董事会应将各独立董事的意见分别披露。

**第一百八十条**　为保证独立董事有效行使职权，公司应当为独立董事提供必要的条件：

（一）公司应当保证独立董事享有与其他董事同等的知情权。凡须经董事会决策的事项，公司必须在规定的时限内提前通知独立董事并同时提供足够的资料，独立董事认为资料不充分的，可以要求补充。

（二）公司应提供独立董事履行职责所必需的工作条件（包括但不限于提供文件、资料、办公场所、交通和通信工具及出入生产经营场所的便利条件）。

（三）公司董事会秘书应积极为独立董事履行职责提供协助，如介绍情况、提供材料等。独立董事发表的独立意见、提案及书面说明应当公告的，董事会秘书应及时到证券交易所办理公告事宜。

（四）独立董事行使职权时，公司有关人员应当积极配合，不得拒绝、阻碍或隐瞒，不得干预其独立行使职权。

**第一百八十一条**　独立董事应当向公司年度股东大会提交全体独立董事年度报告书，对其履行职责的情况进行说明。

**第一百八十二条**　公司可以建立必要的独立董事责任保险制度，以降低独立董事正常履行职责可能引致的风险。

**第一百八十三条**　公司向独立董事提供的资料，公司及独立董事本人应当至少保存五年。

**第一百八十四条**　独立董事连续三次未亲自出席董事会会议的，由董事会提请股东大会予以撤换。

除非法律、法规、规范性文件及本章程另有规定外，独立董事任期届满前不得无故被免职。如果必须免职时，公司应将其作为特别披露事项予以披露，被免职的独立董事认为公司免职理由不正当的，可以作出公开声明。

**第一百八十五条**　独立董事在任期届满前可以提出辞职。

独立董事辞职应向董事会递交书面辞职报告，并对任何与其辞职有关或其认为有必要引起公司股东和利益相关者注意的情况进行说明。

独立董事辞职导致独立董事成员或董事会成员低于法定或本章程规定的最低人数时，董事会应当在自接到辞职报告之日起的60日内召集股东大会补选独立董事。在补选的独立董事就任前，该等辞职独立董事仍应当按照法律、行政法规及本章程的规定履行职务。逾期未补选独立董事时，该等辞职独立董事可以不再履行职务。

**第一百八十六条**　独立董事不能履行职责或发生严重失职行为时，由董事会或监事会提请股东人会予以撤换。

董事会或监事会作出上述决议时，持反对意见的董事或监事有权要求对其意见进行公告。

### 第三节　董事会

**第一百八十七条**　公司设董事会，对股东大会负责。

**第一百八十八条**　董事会由七名董事（包括三名独立董事）组成。

**第一百八十九条**　董事会行使下列职权：

（一）负责召集股东大会，并向大会报告工作；

（二）执行股东大会的决议；

19

IRI-CRT-00001046

彩虹显示器件股份有限公司章程

（三）决定公司的经营计划和投资方案；

（四）制订公司的年度财务预算方案、决算方案；

（五）制订公司的利润分配方案和弥补亏损方案；

（六）制订公司增加或者减少注册资本、发行债券或其他证券及上市方案；

（七）拟订公司重大收购、回购本公司股票或者合并、分立和解散及变更公司形式的方案；

（八）在股东大会授权范围内，决定公司的对外投资、收购出售资产、资产抵押及委托理财、关联交易等事项；

（九）决定须经过股东大会审议通过之外的对担保事项；

（十）决定公司内部管理机构的设置；

（十一）聘任或者解聘公司总经理、董事会秘书；根据总经理的提名，聘任或者解聘公司副总经理、财务负责人等高级管理人员，并决定其报酬事项和奖惩事项；

（十二）制订公司的基本管理制度；

（十三）制订公司章程的修改方案；

（十四）管理公司信息披露事项；

（十五）向股东大会提请聘请或更换为公司审计的会计师事务所；

（十六）听取公司总经理的工作汇报并检查总经理的工作；

（十七）法律、法规或公司章程规定，以及股东大会授予的其他职权。

**第一百九十条** 公司设董事长一人。以全体董事的过半数选举产生和罢免。

**第一百九十一条** 董事长行使下列职权：

（一）主持股东大会和召集、主持董事会会议；

（二）督促、检查董事会决议的执行；

（三）签署公司股票、公司债券及其他有价证券；

（四）签署董事会重要文件和其他应由公司法定代表人签署的其他文件；

（五）行使法定代表人的职权；

（六）在发生特大自然灾害等不可抗力的紧急情况下，对公司事务行使符合法律规定和公司利益的特别处置权，并在事后向公司董事会和股东大会报告；

（七）董事会授予的其他职权。

**第一百九十二条** 董事长不能履行职责时，应当指定一名董事代其履行职责，董事长不能履行职责，亦未指定董事代其行使职责时，由二分之一以上的董事共同推举一名董事履行职责。

**第一百九十三条** 公司董事会应当就注册会计师对公司财务报告出具的非标准的审计报告向股东大会作出说明。

**第一百九十四条** 公司全体董事应当审慎对待对外担保，严格控制对外担保产生的债务风险。

**第一百九十五条** 董事会应当制定《投资者关系管理工作制度》，积极开展投资者关系管理工作，通过多种形式主动加强与投资者特别是社会公众投资者的沟通和交流，设立专门的投资者咨询电话，在公司网站开设投资者关系专栏，定期举行与公众投资者见面活动，及时答复公众投资者关心的问题。公司董事会秘书具体负责公司投资者关系管理工作。

### 第四节 董事会对董事长的授权

**第一百九十六条** 董事会闭会期间，董事长有权决定并签署单笔金额不超过人民币5000万元的银行借款合同。

IRI-CRT-00001047

彩虹显示器件股份有限公司章程

董事长做出的上述决定应符合公司的最大利益，并在下次董事会上进行报告。

### 第五节  董事会秘书

**第一百九十七条**  董事会设董事会秘书一人。

董事会秘书是公司高级管理人员，由董事长提名，经董事会聘任对公司和董事会负责。

董事会秘书是公司与证券交易所之间的指定联络人。

**第一百九十八条**  董事会秘书应当具有必备的专业知识和经验。

董事会秘书的任职资格：

（一）具有大学专科以上学历，从事秘书或经济管理、股权事务等工作不少于三年；

（二）掌握法律、财务、证券、企业管理等方面的知识，具有良好的个人品质和职业道德，严格遵守法律、法规、规章，能够忠诚地履行职责，并具有良好的处理公共事务的能力。

（三）取得证券交易所颁发的董事会秘书培训合格证书。

**第一百九十九条**  具有下列情形之一的人士不得担任董事会秘书：

（一）有《公司法》第 147 条规定情形之一的；

（二）自受到中国证监会最近一次行政处罚未满三年的；

（三）最近三年受到证券交易所公开谴责或三次以上通报批评的；

（四）本公司现任监事；

（五）证券交易所认定不适合担任董事会秘书的其他情形

**第二百条**  董事会秘书的应当履行如下职责：

（一）负责公司和相关当事人与证券交易所及其他证券监管机构之间的及时沟通和联络，保证证券交易所可以随时与其取得工作联系；

（二）负责处理公司信息披露事务，督促公司制定并执行信息披露管理制度和重大信息的内部报告制度，促使公司和相关当事人依法履行信息披露义务，并按规定向证券交易所办理定期报告和临时报告的披露工作；

（三）协调公司与投资者关系，接待投资者来访，回答投资者咨询，向投资者提供公司已披露的资料；

（四）按照法定程序筹备董事会会议和股东大会，准备和提交拟审议的董事会和股东大会的文件；

（五）参加董事会会议，制作会议记录并签字；

（六）负责与公司信息披露有关的保密工作，制订保密措施，促使公司董事会全体成员及相关知情人在有关信息正式披露前保守秘密，并在内幕信息泄露时，及时采取补救措施并向证券交易所报告；

（七）负责保管公司股东名册、董事名册、大股东及董事、监事、高级管理人员持有公司股票的资料，以及董事会、股东大会的会议文件和会议记录等；

（八）协助董事、监事和高级管理人员了解信息披露相关法律、法规、规章、证券交易所股票上市规则及证券交易所的他规定和公司章程，以及上市协议对其设定的责任；

（九）促使董事会依法行使职权；在董事会拟作出的决议违反法律、法规、规章、证券交易所股票上市规则及证券交易所其他规定和公司章程时，应当提醒与会董事，并提请列席会议的监事就此发表意见；如果董事会坚持作出上述决议，董事会秘书应将有关监事和其个

21

IRI-CRT-00001048

彩虹显示器件股份有限公司章程

人的意见记载于会议记录上，并立即向证券交易所报告；

（十）证券交易所要求履行的其他职责。

**第二百零一条** 公司董事或者其他高级管理人员可以兼任公司董事会秘书。公司聘请的会计师事务所的注册会计师和律师事务所的律师不得兼任公司董事会秘书。

**第二百零二条** 董事会秘书由董事长提名，经董事会聘任或者解聘。董事兼任董事会秘书的，如某一行为需由董事、董事会秘书分别作出时，则该兼任董事及公司董事会秘书的人不得以双重身份作出。

**第二百零三条** 公司应当为董事会秘书履行职责提供便利条件，董事、监事、高级管理人员及公司有关人员应当支持、配合董事会秘书的工作。

董事会秘书为履行职责有权了解公司的财务和经营情况，参加涉及信息披露的有关会议，查阅涉及信息披露的所有文件，并要求公司有关部门和人员及时提供相关资料和信息。

董事会秘书在履行职责过程中受到不当妨碍和严重阻挠时，可以直接向证券交易所报告。

**第二百零四条** 公司解聘董事会秘书应当具有充分理由，不得无故将其解聘。

董事会秘书被解聘或者辞职时，公司应当及时向股票上市地证券交易所报告，说明原因并公告。

董事会秘书有权就被公司不当解聘或者与辞职有关的情况，向公司股票上市地证券交易所提交个人陈述报告。

**第二百零五条** 董事会秘书有以下情形之一的，公司应当自事实发生之日起在一个月内解聘其董事会秘书职务：

（一）不再具备担任董事会秘书资格；

（二）连续三个月以上不能履行职责；

（三）在执行职务时出现重大错误或疏漏，给投资者造成重大损失；

（四）违反国家法律、法规、规章、本规则、本所其他规定和公司章程，给投资者造成重大损失。

**第二百零六条** 公司应当在聘任董事会秘书时与其签订保密协议，要求其承诺在任职期间以及在离任后持续履行保密义务直至有关信息披露为止，但涉及公司违法违规的信息除外。

董事会秘书离任前，应当接受董事会、监事会的离任审查，在公司监事会的监督下移交有关档案文件、正在办理或待办理事项。

**第二百零七条** 公司董事会秘书空缺期间，董事会应当指定一名董事或高级管理人员代行董事会秘书的职责，并报证券交易所备案，同时尽快确定董事会秘书人选。公司指定代行董事会秘书职责的人员之前，由董事长代行董事会秘书职责。

董事会秘书空缺期间超过三个月之后，董事长应当代行董事会秘书职责，直至公司正式聘任董事会秘书。

**第二百零八条** 公司在聘任董事会秘书的同时，还应当聘任证券事务代表，协助董事会秘书履行职责；在董事会秘书不能履行职责时，由证券事务代表行使其权利并履行其职责。在此期间，并不当然免除董事会秘书对公司信息披露事务所负有的责任。

证券事务代表应当取得证券交易所颁发的董事会秘书证书。

IRI-CRT-00001049

彩虹显示器件股份有限公司章程

### 第六节　董事会专门委员会

**第二百零九条**　公司董事会可以按照股东大会的有关决议，设立战略、审计、提名、薪酬与考核等专门委员会。专门委员会成员全部由董事组成，其中审计委员会、提名委员会、薪酬与考核委员会中独立董事应占多数并担任召集人，审计委员会中至少应有一名独立董事具有会计专业背景。

**第二百一十条**　战略委员会的主要职责是对公司长期发展战略和重大投资决策进行研究并提出建议。

**第二百一十一条**　审计委员会的主要职责是：

（一）提议聘请或更换外部审计机构；

（二）监督公司的内部审计制度及其实施；

（三）负责内部审计与外部审计之间的沟通；

（四）审核公司的财务信息及其披露；

（五）审查公司的内控制度。

**第二百一十二条**　提名委员会的主要职责是：

（一）研究董事、经理人员的选择标准和程序并提出建议；

（二）广泛搜寻合格的董事和经理人员的人选；

（三）对董事候选人和经理人选进行审查并提出建议。

**第二百一十三条**　薪酬与考核委员会的主要职责是：

（一）研究董事与经理人员考核的标准，进行考核并提出建议；

（二）研究和审查董事、高级管理人员的薪酬政策与方案。

**第二百一十四条**　各专门委员会可以聘请中介机构提供专业意见，有关费用由公司承担。

**第二百一十五条**　各专门委员会对董事会负责，各专门委员会的提案应提交董事会审查决定。

### 第七章　监事和监事会

#### 第一节　监事

**第二百一十六条**　监事由股东代表和公司职工代表担任。公司职工代表担任的监事不得少于监事人数的1/3。

**第二百一十七条**　董事、经理和其他高级管理人员不得兼任监事。

本章程第147条规定不得担任董事的情形适用于监事。

在任监事出现第147条规定的情形时，监事会应当自知道该情形发生之日起，立即停止有关监事履行职责，并提请股东大会或职工（代表）大会予以撤换。

**第二百一十八条**　监事应当遵守法律、行政法规和本章程，对公司负有忠实义务和勤勉义务，不得利用职权收受贿赂或者其他非法收入，不得侵占公司的财产。

**第二百一十九条**　监事每届任期三年。股东担任的监事由股东大会选举或更换，职工担任的监事由公司职工民主选举产生或更换。监事连选可以连任。

监事在任期届满以前，股东大会不得无故解除其职务。

监事任期自股东大会决议通过之日起计算，至本届监事会任期届满时为止。

**第二百二十条**　监事任期届满未及时改选，或者监事在任期内辞职导致监事会成员低于法定人数的，在改选出的监事就任前，原监事仍应当依照法律、行政法规和本章程的规定，履行监事职务。

**第二百二十一条**　监事应当保证公司披露的信息真实、准确、完整。

IRI-CRT-00001050

彩虹显示器件股份有限公司章程

第二百二十二条　监事可以列席董事会会议，并对董事会决议事项提出质询或者建议。

第二百二十三条　监事不得利用其关联关系损害公司利益，若给公司造成损失的，应当承担赔偿责任。

第二百二十四条　监事执行公司职务时违反法律、行政法规、部门规章或本章程的规定，给公司造成损失的，应当承担赔偿责任。

第二百二十五条　监事应具有法律或者会计方面的专业知识及工作经验。

第二百二十六条　监事有了解公司经营情况的权利，并承担相应的保密义务。监事会可以独立聘请中介机构提供专业意见。

第二百二十七条　公司应采取措施保障监事的知情权，为监事正常履行职责提供必要的协助，任何人不得干预、阻挠。

监事履行职责所需的合理费用应由公司承担。

第二百二十八条　监事连续两次不能亲自出席监事会会议的，视为不能履行职责，股东大会或职工代表大会应予以撤换。

第二百二十九条　监事的薪酬由股东大会决定。

第二百三十条　公司不以任何形式为监事纳税。

第二百三十一条　监事可以在任期届满以前提出辞职，本章程第六章有关董事辞职的规定，适用于监事。

第二百三十二条　监事应当遵守法律、行政法规和公司章程的规定，履行诚信和勤勉的义务。

### 第二节　监事会

第二百三十三条　公司设监事会。监事会是公司常设的监督机构，对股东大会负责。监事会由三名监事组成。其中股东代表二人，公司职工代表一人。

监事会设主席一名，由监事担任，以全体监事的过半数选举产生或者罢免。

监事会主席不能履行职权时，由主席指定一名监事代行其职权。

第二百三十四条　监事会行使下列职权：

（一）应当对董事会编制的公司定期报告进行审核并提出书面审核意见；

（二）检查公司财务；

（三）对董事、高级管理人员执行公司职务的行为进行监督，对违反法律、行政法规、本章程或者股东大会决议的董事、高级管理人员提出罢免的建议；

（四）当董事、高级管理人员的行为损害公司的利益时，要求董事、高级管理人员予以纠正；

（五）提议召开临时股东大会，在董事会不履行《公司法》规定的召集和主持股东大会职责时召集和主持股东大会；

（六）向股东大会提出提案；

（七）依照《公司法》第 152 条的规定，对董事、高级管理人员提起诉讼；

（八）发现公司经营情况异常，可以进行调查；必要时，可以聘请会计师事务所、律师事务所等专业机构协助其工作，费用由公司承担。

（九）本章程规定或股东大会授予的其他职权。

第二百三十五条　监事会行使职权，必要时可以聘请律师事务所、会计师事务所等专业性机构给予帮助，由此发生的费用由公司承担。

IRI-CRT-00001051

彩虹显示器件股份有限公司章程

### 第八章 经理

**第二百三十六条** 公司设经理，其中总经理一名，副总经理若干名，由董事会聘任或解聘。董事可受聘兼任总经理、副总经理或者其他高级管理人员，但兼任总经理、副总经理或者其他高级管理人员的董事不得超过公司董事总数的二分之一。

**第二百三十七条** 本章程第 147 条规定的不得担任董事的情形适用于高级管理人员。

在任经理出现第 147 条规定的情形时，董事会应当自知道该情况发生之日起，立即停止其履行职责，并召开董事会履行解聘程序。

本章程关于董事的第 149 条忠实义务和第 151 条（四）-（六）关于勤勉义务的规定，同时适用于高级管理人员。

**第二百三十八条** 在公司控股股东、实际控制人单位担任除董事以外其他职务的人员，不得担任公司的高级管理人员。

**第二百三十九条** 经理每届任期三年，经理连聘可以连任。

**第二百四十条** 公司经理人员的聘任，应严格按照有关法律、法规和本章程的规定进行。任何组织和个人不得干预公司经理人员的正常选聘程序。

**第二百四十一条** 公司应和经理人员签订聘任合同，明确双方的权利义务关系。

**第二百四十二条** 总经理对董事会负责，行使下列职权：

（一）主持公司的生产经营管理工作，并向董事会报告工作；

（二）组织实施董事会决议、公司年度计划和投资方案；

（三）拟订公司内部管理机构设置方案；

（四）拟订公司的基本管理制度；

（五）制订公司的具体规章；

（六）提请董事会聘任或者解聘公司副总经理、财务负责人；

（七）聘任或者解聘除应由董事会聘任或者解聘以外的管理人员；

（八）拟定公司职工的工资、福利、奖惩，决定公司职工的聘用和解聘；

（九）提议召开董事会临时会议；

（十）本章程或董事会授予的其他职权。

**第二百四十三条** 总经理列席董事会会议。

非董事总经理在董事会上没有表决权。

**第二百四十四条** 经理应当根据董事会或者监事会的要求，向董事会或者监事会报告公司重大合同的签订、执行情况、资金运用情况和盈亏情况。经理必须保证该报告的真实性。

**第二百四十五条** 经理拟定有关职工工资、福利、安全生产以及劳动保护、劳动保险、劳动合同等涉及职工切身利益的问题时，应当事先听取工会或职代会的意见。

**第二百四十六条** 总经理应制订经理工作细则，报董事会批准后实施。

**第二百四十七条** 经理工作细则包括下列内容：

（一）经理会议召开的条件、程序和参加的人员；

（二）总经理、副总经理及其他高级管理人员各自具体的职责及其分工；

（三）公司资金、资产运用，签订重大合同的权限，以及向董事会、监事会的报告制度；

（四）董事会认为必要的其他事项。

**第二百四十八条** 公司经理应当遵守法律、行政法规和公司章程的规定，履行诚信和勤勉的义务。

**第二百四十九条** 经理可以在任期届满以前提出辞职。有关经理辞职的具体程序和办法

IRI-CRT-00001052

彩虹显示器件股份有限公司章程

由经理与公司签订的聘任合同规定。

第二百五十条  经理的任免应履行法定的程序，并予以公告。

## 第九章  绩效评价与激励约束机制
### 第一节  董事、监事、经理人员的绩效评价

第二百五十一条  公司应建立公正透明的董事、监事和经理人员的绩效评价标准和程序。

第二百五十二条  董事和经理人员的绩效评价由董事会或其下设的薪酬与考核委员会负责组织。独立董事、监事的评价应采取自我评价与相互评价相结合的方式进行。

第二百五十三条  董事薪酬的数额和方式由董事会提出方案报请股东大会决定。在董事会或薪酬与考核委员会对董事个人进行评价或讨论其报酬时，该董事应当回避。

第二百五十四条  董事会、监事会应当向股东大会报告董事、监事履行职责的情况、绩效评价结果及其薪酬情况，并予以披露。

### 第二节  经理人员的激励与约束机制

第二百五十五条  公司应建立经理人员的薪酬与公司绩效和个人业绩相联系的激励机制，以吸引人才，保持经理人员的稳定。

第二百五十六条  公司对经理人员的绩效评价应当成为确定经理人员薪酬以及其它激励方式的依据。

第二百五十七条  经理人员的薪酬分配方案应获得董事会的批准，向股东大会说明，并予以披露。

第二百五十八条  经理人员违反法律、行政法规和本章程规定，致使公司遭受损失的，公司董事会应积极采取措施追究其法律责任。

## 第十章  财务会计制度、利润分配和审计
### 第一节  财务会计制度

第二百五十九条  公司依照法律、行政法规和国家有关部门的规定，制定公司的财务会计制度。

第二百六十条  公司在每一会计年度结束之日起 4 个月内向中国证监会和证券交易所报送年度财务会计报告，在每一会计年度前 6 个月结束之日起 2 个月内向中国证监会派出机构和证券交易所报送半年度财务会计报告，在每一会计年度前 3 个月和前 9 个月结束之日起的 1 个月内向中国证监会派出机构和证券交易所报送季度财务会计报告。

上述财务会计报告按照有关法律、行政法规及部门规章的规定进行编制。

第二百六十一条  公司年度财务报告以及进行中期利润分配的中期财务报告，包括下列内容：

（一）资产负债表；

（二）利润表；

（三）利润分配表；

（四）现金流量表；

（五）会计报表附注。

公司不进行中期利润分配时，中期财务报告包括上列除第（三）项以外的会计报表及

26

彩虹显示器件股份有限公司章程

附注。

**第二百六十二条** 公司年度报告中的财务会计报告必须经具有执行证券、期货相关业务资格的会计师事务所进行审计。

公司半年度报告中的财务会计报告可以不经审计,但有下列情形之一的,应当进行审计:

(一) 拟在下半年进行利润分配、公积金转增股本或弥补亏损的;

(二) 拟在下半年申请发行新股或可转换公司债券等再融资事宜,根据有关规定需要进行审计的;

(三) 股票被暂停上市后申请恢复上市按要求需要进行审计的;

(四) 中国证监会或证券交易所认为应当进行审计的其他情形。

公司季度报告中的财务资料无须审计,但中国证监会或证券交易所另有规定的除外。

**第二百六十三条** 公司除法定的会计账册外,不另立会计账簿。公司的资产,不以任何个人名义开立账户存储。

**第二百六十四条** 公司分配当年税后利润时,应当提取利润的 10%列入公司法定公积金。公司法定公积金累计额为公司注册资本的50%以上的,可以不再提取。

公司的法定公积金不足以弥补以前年度亏损的,在依照前款规定提取法定公积金之前,应当先用当年利润弥补亏损。

公司从税后利润中提取法定公积金后,经股东大会决议,还可以从税后利润中提取任意公积金。

公司弥补亏损和提取公积金后所余税后利润,按照股东持有的股份比例分配,但本章程规定不按持股比例分配的除外。

股东大会违反前款规定,在公司弥补亏损和提取法定公积金之前向股东分配利润的,股东必须将违反规定分配的利润退还公司。

公司持有的本公司股份不参与分配利润。

**第二百六十五条** 公司的公积金用于弥补公司的亏损、扩大公司生产经营或者转为增加公司资本。但是,资本公积金将不用于弥补公司的亏损。

法定公积金转为资本时,所留存的该项公积金将不少于转增前公司注册资本的25%。

**第二百六十六条** 公司股东大会对利润分配方案作出决议后,公司董事会须在股东大会召开后两个月内完成股利(或股份)的派送事项。

**第二百六十七条** 公司当年利润分配政策由董事会在年度股东大会召开前制定并予以公告。

**第二百六十八条** 公司分配股利采取现金或者股票方式。

**第二百六十九条** 股东违规占有公司资金的,公司应当扣减该股东所分配的现金红利,以偿还其占用的资金。

### 第二节 内部审计

**第二百七十条** 公司实行内部审计制度,配备专职审计人员,对公司财务收支和经济活动进行内部审计监督。

**第二百七十一条** 公司内部审计制度和审计人员的职责,应当经董事会批准后实施。审计负责人向董事会负责并报告工作。

### 第三节 会计师事务所的聘任

**第二百七十二条** 公司聘用取得"从事证券、期货相关业务资格"的会计师事务所进行会计报表审计、净资产验证及其他相关的咨询服务等业务,聘期1年,可以续聘。

**第二百七十三条** 公司聘用会计师事务所必须由股东大会决定,董事会不得在股东大会

27

IRI-CRT-00001054

彩虹显示器件股份有限公司章程

决定前委任会计师事务所。

第二百七十四条　公司保证向聘用的会计师事务所提供真实、完整的会计凭证、会计账簿、财务会计报告及其他会计资料，不得拒绝、隐匿、谎报。

第二百七十五条　会计师事务所的审计费用由股东大会决定。

第二百七十六条　经公司聘用的会计师事务所享有下列权利：

（一）查阅公司财务报表、记录和凭证，并有权要求公司的董事、经理或者其他高级管理人员提供有关的资料和说明；

（二）要求公司提供为会计师事务所履行职务所必需的其子公司的资料和说明；

（三）列席股东大会，获得股东大会的通知或者与股东大会有关的其他信息，在股东大会上就涉及其作为公司聘用的会计师事务所的事宜发言。

第二百七十七条　公司解聘会计师事务所由股东大会作出决定，并在《中国证券报》和《上海证券报》上予以披露，必要时说明更换原因，并报中国证监会和中国注册会计师协会备案。

第二百七十八条　公司解聘或者不再续聘会计师事务所时，提前三十天通知会计师事务所，会计师事务所有权向股东大会陈述意见。会计师事务所认为公司对其解聘或者不再续聘理由不当的，可以向中国证监会和中国注册会计师协会提出申诉。会计师事务所提出辞聘的，应当向股东大会说明公司有无不当情事。

## 第十一章　持续信息披露

第二百七十九条　公司应当制定信息披露管理制度，严格按照法律、法规、规范性文件和本章程的规定，及时、公平地披露所有对公司股票及其衍生品种交易价格可能产生较大影响的信息，并将公告和相关备查文件在第一时间报送证券交易所。

第二百八十条　公司及董事应当保证信息披露内容的真实、准确、完整，无虚假记载、误导性陈述或重大遗漏。

第二百八十一条　公司披露的信息应当便于理解。公司应保证信息使用者能够通过经济、便捷的方式（如互联网）获得信息。

第二百八十二条　公司董事会秘书负责信息披露事项，包括建立信息披露制度、接待来访、回答咨询、联系股东，向投资者提供公司公开披露的资料等。董事会及经理人员应对董事会秘书的工作予以积极支持。任何机构及个人不得干预董事会秘书的工作。

第二百八十三条　公司指定《中国证券报》、《上海证券报》为刊登公司公告和其他需要披露信息的报刊。

## 第十二章　利益相关者

第二百八十四条　公司应尊重银行及其它债权人、职工、消费者、供应商、社区等利益相关者的合法权利。

第二百八十五条　公司应与利益相关者积极合作，共同推动公司持续、健康地发展。

第二百八十六条　公司应为维护利益相关者的权益提供必要的条件，当其合法权益受到侵害时，利益相关者应有机会和途径获得赔偿。

第二百八十七条　公司应向银行及其它债权人提供必要的信息，以便其对公司的经营状况和财务状况作出判断和进行决策。

第二百八十八条　公司应鼓励职工通过与董事会、监事会和经理人员的直接沟通和交

IRI-CRT-00001055

彩虹显示器件股份有限公司章程

流，反映职工对公司经营、财务状况以及涉及职工利益的重大决策的意见。

**第二百八十九条** 公司在保持公司持续发展、实现股东利益最大化的同时，应关注所在社区的福利、环境保护、公益事业等问题，重视公司的社会责任。

## 第十三章  合并、分立、解散和清算
### 第一节  合并或分立

**第二百九十条** 公司可以依法进行合并或者分立。

公司合并可以采取吸收合并和新设合并两种形式。

**第二百九十一条** 公司合并或者分立，按照下列程序办理：

（一）董事会拟订合并或者分立方案；

（二）股东大会依照章程的规定作出决议；

（三）各方当事人签订合并或者分立合同；

（四）依法办理有关审批手续；

（五）处理债权、债务等各项合并或者分立事宜；

（六）办理解散登记或者变更登记。

**第二百九十二条** 公司合并应由合并各方签订合并协议，并编制资产负债表和财产清单。公司应当自股东大会作出合并决议之日起10日内通知债权人，并于30日内在《中国证券报》和《上海证券报》上公告。

**第二百九十三条** 债权人自接到通知书之日起30日内，未接到通知书的自公告之日起四十五日内，有权要求公司清偿债务或者提供相应的担保。

**第二百九十四条** 公司合并时，合并各方的债权、债务，由合并后存续的公司或者新设的公司承继。

**第二百九十五条** 公司分立，其财产作相应的分割。

公司分立，应当编制资产负债表及财产清单。公司应当自作出分立决议之日起10日内通知债权人，并于30日内在《中国证券报》和《上海证券报》上公告。

**第二百九十六条** 公司分立前的债务由分立后的公司承担连带责任。但是，公司在分立前与债权人就债务清偿达成的书面协议另有约定的除外。

**第二百九十七条** 公司需要减少注册资本时，必须编制资产负债表及财产清单。

公司应当自作出减少注册资本决议之日起10日内通知债权人，并于30日内在《中国证券报》和《上海证券报》上公告。债权人自接到通知书之日起30日内，未接到通知书的自公告之日起45日内，有权要求公司清偿债务或者提供相应的担保。

公司减资后的注册资本不得低于法定的最低限额。

**第二百九十八条** 公司合并或者分立，登记事项发生变更的，依法向公司登记机关办理变更登记；公司解散的，依法办理公司注销登记；设立新公司的，依法办理公司设立登记。

公司增加或者减少注册资本，应当依法向公司登记机关办理变更登记。

### 第二节  解散和清算

**第二百九十九条** 有下列情形之一时，公司应当解散并依法进行清算：

（一）因合并或者分立而解散；

（二）股东大会决议解散；

（三）依法被吊销营业执照、责令关闭或者被撤销；

（四）公司经营管理发生严重困难，继续存续会使股东利益受到重大损失，通过其他途径不能解决的，持有公司全部股东表决权10%以上的股东，可以请求人民法院解散公司。

IRI-CRT-00001056

彩虹显示器件股份有限公司章程

**第三百条** 公司本章程第三百零六条第（二）项、第（三）项和第（四）项规定而解散的，应当在解散事由出现之日起 15 日内成立清算组，开始清算。清算组由董事或者股东大会确定的人员组成。逾期不成立清算组进行清算的，债权人可以申请人民法院指定有关人员组成清算组进行清算。

**第三百零一条** 清算组在清算期间行使下列职权：

（一）通知或者公告债权人；

（二）清理公司财产、编制资产负债表和财产清单；

（三）处理公司未了结的业务；

（四）清缴所欠税款以及清算过程中产生的税款；

（五）清理债权、债务；

（六）处理公司清偿债务后的剩余财产；

（七）代表公司参与民事诉讼活动。

**第三百零二条** 清算组应当自成立之日起 10 日内通知债权人，并于 60 日内在《中国证券报》和《上海证券报》上公告。

**第三百零三条** 债权人应当自接到通知书之日起 30 日内，未接到通知书的自公告之日起 45 日内，向清算组申报其债权。债权人申报债权时，应当说明债权的有关事项，并提供证明材料。清算组应当对债权进行登记。

在申报债权期间，清算组不得对债权人进行清偿。

**第三百零四条** 清算组在清理公司财产、编制资产负债表和财产清单后，应当制定清算方案，并报股东大会或者人民法院确认。

公司财产在分别支付清算费用、职工的工资、社会保险费用和法定补偿金，缴纳所欠税款，清偿公司债务后的剩余财产，公司按照股东持有的股份比例分配。

清算期间，公司存续，但不能开展与清算无关的经营活动。公司财产在未按前款规定清偿前，将不会分配给股东。

**第三百零五条** 清算组在清理公司财产、编制资产负债表和财产清单后，认为公司财产不足清偿债务的，应当向人民法院申请宣告破产。

公司经人民法院宣告破产后，清算组应当将清算事务移交给人民法院。

**第三百零六条** 清算结束后，清算组应当制作清算报告，报股东大会或者人民法院确认，并报送公司登记机关，申请注销公司登记，公告公司终止。

**第三百零七条** 清算组人员应当忠于职守，依法履行清算义务，不得利用职权收受贿赂或者其他非法收入，不得侵占公司财产。

清算组人员因故意或者重大过失给公司或者债权人造成损失的，应当承担赔偿责任。

**第三百零八条** 公司被依法宣告破产的，依照有关企业破产的法律实施破产清算。

**第十四章　修改章程**

**第三百零九条** 有下列情形之一的，公司应当修改章程：

（一）《公司法》或有关法律、行政法规修改后，章程规定的事项与修改后的法律、行政法规的规定相抵触；

（二）公司的情况发生变化，与章程记载的事项不一致；

（三）股东大会决定修改章程。

**第三百一十条** 股东大会决议通过的章程修改事项应经主管机关审批的，须报原审批的主管机关批准；涉及公司登记事项的，依法办理变更登记。

**第三百一十一条** 董事会依照股东大会修改章程的决议和有关主管机关的审批意见修改公司章程。

**第三百一十二条** 章程修改事项属于法律、法规要求披露的信息，按规定予以公告。

IRI-CRT-00001057

彩虹显示器件股份有限公司章程

## 第十五章　附则

**第三百一十三条**　　释义

（一）控股股东，是指其持有的股份占公司股本总额 50%以上的股东；持有股份的比例虽然不足 50%，但依其持有的股份所享有的表决权已足以对股东大会的决议产生重大影响的股东。

（二）实际控制人，是指虽不是公司的股东，但通过投资关系、协议或者其他安排，能够实际支配公司行为的人。

（三）关联关系，是指公司控股股东、实际控制人、董事、监事、高级管理人员与其直接或者间接控制的企业之间的关系，以及可能导致公司利益转移的其他关系。但是，国家控股的企业之间不仅因为同受国家控股而具有关联关系。

（四）关联人、关联交易、重大关联交易，其定义与上海证券交易所不时修订的《股票上市规则》中的定义相同。

**第三百一十四条**　董事会可依照本章程的规定，制订章程细则，章程细则不得与章程的规定相抵触。

**第三百一十五条**　本章程以中文书写，其他任何语种或不同版本的章程与本章程有歧义时，以在陕西省工商行政管理局最近一次核准登记后的中文版章程为准。

**第三百一十六条**　本章程所称"以上"、"以内"、"以下"、"不超过"都含本数；"不满"、"以外"、"低于"、"多于"、"超过"不含本数。

**第三百一十七条**　本章程由公司董事会负责解释。

**第三百一十八条**　本章程附件包括董事会议事规则和监事会议事规则。

IRI-CRT-00001058

彩虹显示器件股份有限公司章程

附件

# 彩虹显示器件股份有限公司
# 董事会议事规则

### 第一条　宗旨

为了进一步规范彩虹显示器件股份有限公司（以下简称"公司"）董事会的议事方式和决策程序，促使董事和董事会有效地履行其职责，提高董事会规范运作和科学决策水平，根据《公司法》、《证券法》、《上市公司治理准则》、《上海证券交易所股票上市规则》等有关规定，制订本规则。

### 第二条　董事会办公室

董事会下设董事会办公室，处理董事会日常事务。

### 第三条　定期会议

董事会会议分为定期会议和临时会议。

董事会每年应当至少在上下两个半年度各召开一次定期会议。

### 第四条　定期会议的提案

在发出召开董事会定期会议的通知前，董事会办公室应当充分征求各董事的意见，初步形成会议提案后交董事长拟定。

董事长在拟定提案前，应当视需要征求经理和其他高级管理人员的意见。

### 第五条　临时会议

有下列情形之一的，董事会应当召开临时会议：

（一）代表十分之一以上表决权的股东提议时；

（二）三分之一以上董事联名提议时；

（三）监事会提议时；

（四）董事长认为必要时；

（五）二分之一以上独立董事提议时；

（六）经理提议时；

（七）证券监管部门要求召开时；

（八）本公司《公司章程》规定的其他情形。

### 第六条　临时会议的提议程序

按照前条规定提议召开董事会临时会议的，应当通过董事会办公室或者直接向董事长提交经提议人签字（盖章）的书面提议。书面提议中应当载明下列事项：

（一）提议人的姓名或者名称；

（二）提议理由或者提议所基于的客观事由；

（三）提议会议召开的时间或者时限、地点和方式；

（四）明确和具体的提案；

（五）提议人的联系方式和提议日期等。

提案内容应当属于本公司《公司章程》规定的董事会职权范围内的事项，与提案有关的

32

IRI-CRT-00001059

彩虹显示器件股份有限公司章程

材料应当一并提交。

董事会办公室在收到上述书面提议和有关材料后，应当于当日转交董事长。董事长认为提案内容不明确、具体或者有关材料不充分的，可以要求提案人修改或者补充。

董事长应当自接到提议或者证券监管部门的要求后十日内，召集董事会会议并主持会议。

**第七条　会议的召集和主持**

董事会会议由董事长召集和主持；董事长不能履行职务或者不履行职务的，由副董事长召集和主持；未设副董事长、副董事长不能履行职务或者不履行职务的，由半数以上董事共同推举一名董事召集和主持。

**第八条　会议通知**

召开董事会定期会议和临时会议，董事会办公室应当分别提前十日和五日将盖有董事会办公室印章的书面会议通知，通过直接送达、传真、电子邮件或者其他方式，提交全体董事和监事以及经理、董事会秘书。非直接送达的，还应当通过电话进行确认并做相应记录。

情况紧急，需要尽快召开董事会临时会议的，可以随时通过电话或者其他口头方式发出会议通知，但召集人应当在会议上作出说明。

**第九条　会议通知的内容**

书面会议通知应当至少包括以下内容：

（一）会议的时间、地点；

（二）会议的召开方式；

（三）拟审议的事项（会议提案）；

（四）会议召集人和主持人、临时会议的提议人及其书面提议；

（五）董事表决所必需的会议材料；

（六）董事应当亲自出席或者委托其他董事代为出席会议的要求；

（七）联系人和联系方式。

口头会议通知至少应包括上述第（一）、（二）项内容，以及情况紧急需要尽快召开董事会临时会议的说明。

**第十条　会议通知的送达时间：**

（一）直接送达时，以面交收件人或收件人委托的代收人签收的时间为送达时间；

（二）以传真方式送达时，以发出传真的时间为送达时间，但传真号码应经收件人确认；

（三）以电子邮件方式送达时，以发出的时间为送达时间，但电子邮箱应经收件人确认。

因意外遗漏未向某有权得到通知的人送出会议通知或者该等人没有收到会议通知，会议及会议作出的决议并不因此无效。

**第十一条　会议通知的变更**

董事会定期会议的书面会议通知发出后，如果需要变更会议的时间、地点等事项或者增加、变更、取消会议提案的，应当在原定会议召开日之前三日发出书面变更通知，说明情况和新提案的有关内容及相关材料。不足三日的，会议日期应当相应顺延或者取得全体与会董事的认可后按期召开。

董事会临时会议的会议通知发出后，如果需要变更会议的时间、地点等事项或者增加、变更、取消会议提案的，应当事先取得全体与会董事的认可并做好相应记录。

IRI-CRT-00001060

彩虹显示器件股份有限公司章程

### 第十二条 会议的召开

董事会会议应当有过半数的董事出席方可举行。有关董事否不出席或者怠于出席会议导致无法满足会议召开的最低人数要求时，董事长和董事会秘书应当及时向监管部门报告。

监事可以列席董事会会议；经理和董事会秘书未兼任董事的，应当列席董事会会议。会议主持人认为有必要的，可以通知其他有关人员列席董事会会议。

### 第十三条 亲自出席和委托出席

董事原则上应当亲自出席董事会会议。因故不能出席会议的，应当事先审阅会议材料，形成明确的意见，书面委托其他董事代为出席。

委托书应当载明：

（一）委托人和受托人的姓名；

（二）委托人对每项提案的简要意见；

（三）委托人的授权范围和对提案表决意向的指示；

（四）委托人的签字、日期等。

委托其他董事对定期报告代为签署书面确认意见的，应当在委托书中进行专门授权。

受托董事应当向会议主持人提交书面委托书，在会议签到簿上说明受托出席的情况。

### 第十四条 关于委托出席的限制

委托和受托出席董事会会议应当遵循以下原则：

（一）在审议关联交易事项时，非关联董事不得委托关联董事代为出席；关联董事也不得接受非关联董事的委托；

（二）独立董事不得委托非独立董事代为出席，非独立董事也不得接受独立董事的委托；

（三）董事不得在未说明其本人对提案的个人意见和表决意向的情况下全权委托其他董事代为出席，有关董事也不得接受全权委托和授权不明确的委托。

（四）一名董事不得接受超过两名董事的委托，董事也不得委托已经接受两名其他董事委托的董事代为出席。

### 第十五条 会议召开方式

董事会会议以现场召开为原则。必要时，在保障董事充分表达意见的前提下，经召集人（主持人）、提议人同意，也可以通过视频、电话、传真或者电子邮件表决等方式召开。董事会会议也可以采取现场与其他方式同时进行的方式召开。

非以现场方式召开的，以视频显示在场的董事、在电话会议中发表意见的董事、规定期限内实际收到传真或者电子邮件等有效表决票，或者董事事后提交的曾参加会议的书面确认函等计算出席会议的董事人数。

### 第十六条 会议审议程序

会议主持人应当提请出席董事会会议的董事对各项提案发表明确的意见。

对于根据规定需要独立董事事前认可的提案，会议主持人应当在讨论有关提案前，指定一名独立董事宣读独立董事达成的书面认可意见。

董事阻碍会议正常进行或者影响其他董事发言的，会议主持人应当及时制止。

除征得全体与会董事的一致同意外，董事会会议不得就未包括在会议通知中的提案进行表决。董事接受其他董事委托代为出席董事会会议的，不得代表其他董事对未包括在会议通知中的提案进行表决。

IRI-CRT-00001061

彩虹显示器件股份有限公司章程

**第十七条　发表意见**

董事应当认真阅读有关会议材料，在充分了解情况的基础上独立、审慎地发表意见。

董事可以在会前向董事会办公室、会议召集人、经理和其他高级管理人员、各专门委员会、会计师事务所和律师事务所等有关人员和机构了解决策所需要的信息，也可以在会议进行中间主持人建议请上述人员和机构代表与会解释有关情况。

**第十八条　会议表决**

每项提案经过充分讨论后，主持人应当适时提请与会董事进行表决。

会议表决实行一人一票，以记名和书面等方式进行。

经会议主持人决定，也可采用举手表决方式进行表决。

董事的表决意向分为同意、反对和弃权。与会董事应当从上述意向中选择其一，未做选择或者同时选择两个以上意向的，会议主持人应当要求有关董事重新选择，拒不选择的，视为弃权；中途离开会场未进行表决的，视为弃权。

**第十九条　表决结果的统计**

与会董事表决完成后，证券事务代表和董事会办公室有关工作人员应当及时收集董事的表决票，交董事会秘书在一名监事或者独立董事的监督下进行统计。

采用举手方式进行表决时，由董事会秘书当场统计表决结果并予以宣布。

现场召开会议的，会议主持人应当当场宣布统计结果；其他情况下，会议主持人应当要求董事会秘书在规定的表决时限结束后下一工作日之前，通知董事表决结果。

董事在会议主持人宣布表决结果后或者规定的表决时限结束后进行表决的，其表决情况不予统计。

**第二十条　决议的形成**

除本规则第二十一条规定的情形外，董事会审议通过会议提案并形成相关决议，必须有超过公司全体董事人数之半数的董事对该提案投赞成票。法律、行政法规和本公司《公司章程》规定董事会形成决议应当取得更多董事同意的，从其规定。

董事会根据本公司《公司章程》的规定，在其权限范围内对担保事项作出决议，除公司全体董事过半数同意外，还必须经出席会议的三分之二以上董事的同意。

不同决议在内容和含义上出现矛盾的，以形成时间在后的决议为准。

**第二十一条　回避表决**

出现下述情形的，董事应当对有关提案回避表决：

（一）《上海证券交易所股票上市规则》规定董事应当回避的情形；

（二）董事本人认为应当回避的情形；

（三）本公司《公司章程》规定的因董事与会议提案所涉及的企业有关联关系而须回避的其他情形。

在董事回避表决的情况下，有关董事会会议由过半数的无关联关系董事出席即可举行，形成决议须经无关联关系董事过半数通过。出席会议的无关联关系董事人数不足三人的，不得对有关提案进行表决，而应当将该事项提交股东大会审议。

**第二十二条　不得越权**

董事会应当严格按照股东大会和本公司《公司章程》的授权行事，不得越权形成决议。

**第二十三条　关于利润分配的特别规定**

董事会会议需要就公司利润分配事宜作出决议的，可以先将拟提交董事会审议的分配预

35

IRI-CRT-00001062

彩虹显示器件股份有限公司章程

案通知注册会计师，并要求其据此出具审计报告草案（除涉及分配之外的其他财务数据均已确定）。董事会作出分配的决议后，应当要求注册会计师出具正式的审计报告，董事会再根据注册会计师出具的正式审计报告对定期报告的其他相关事项作出决议。

**第二十四条　提案未获通过的处理**

提案未获通过的，在有关条件和因素未发生重大变化的情况下，董事会会议在一个月内不应当再审议内容相同的提案。

**第二十五条　暂缓表决**

二分之一以上的与会董事或两名以上独立董事认为提案不明确、不具体，或者因会议材料不充分等其他事由导致其无法对有关事项作出判断时，会议主持人应当要求会议对该议题进行暂缓表决。

提议暂缓表决的董事应当对提案再次提交审议应满足的条件提出明确要求。

**第二十六条　会议录音**

现场召开和以视频、电话等方式召开的董事会会议，可以视需要进行全程录音。

**第二十七条　会议记录**

董事会秘书应当安排董事会办公室工作人员对董事会会议做好记录。会议记录应当包括以下内容：

（一）会议届次和召开的时间、地点、方式；

（二）会议通知的发出情况；

（三）会议召集人和主持人；

（四）董事亲自出席和受托出席的情况；

（五）会议审议的提案、每位董事对有关事项的发言要点和主要意见、对提案的表决意向；

（六）每项提案的表决方式和表决结果（说明具体的同意、反对、弃权票数）；

（七）与会董事认为应当记载的其他事项。

**第二十八条　会议纪要和决议记录**

除会议记录外，董事会秘书还可以视需要安排董事会办公室工作人员对会议召开情况作成简明扼要的会议纪要，根据统计的表决结果就会议所形成的决议制作单独的决议记录。

**第二十九条　董事签字**

与会董事应当代表其本人和委托其代为出席会议的董事对会议记录和决议记录进行签字确认。董事对会议记录或者决议记录有不同意见的，可以在签字时作出书面说明。必要时，应当及时向监管部门报告，也可以发表公开声明。

董事既不按前款规定进行签字确认，又不对其不同意见作出书面说明或者向监管部门报告、发表公开声明的，视为完全同意会议记录、和决议记录的内容。

**第三十条　决议公告**

董事会决议公告事宜，由董事会秘书根据《上海证券交易所股票上市规则》的有关规定办理。

**第三十一条　保密制度**

出席和列席董事会会议的人员及相关工作人员对于会议内容负有保密义务。任何人不得利用会议内幕信息为自己或他人谋取利益。

非经董事长批准，出席会议的董事及列席人员不得将会议提供的非正式文件、资料带离

IRI-CRT-00001063

会场。

除公司董事、监事、公司聘请的会计师和律师之外，其他人士非经董事会授权或董事长批准，不得查阅董事会会议记录。

董事及列席人员有责任认真保管其所持有的会议文件、资料，如有遗失，应及时报告董事长及董事会秘书。

董事会文件由董事会秘书妥善保存。

董事会秘书离任时，在公司监事会的监督下向指定人员移交其保管的公司档案、文件、资料。

非经董事会批准，出席会议的董事及列席人员不得对会议情况录音、录像。

董事会会议召开情况及决议，由董事会秘书根据相关规定予以披露。除非董事长授权或该次会议信息已经公开，出席会议的董事及列席人员不得以任何形式公开会议信息。

董事会秘书负责董事会信息保密工作。当董事会会议信息泄露时，董事会秘书应当及时采取补救措施。

### 第三十二条  决议的执行

董事长应当督促有关人员落实董事会决议，检查决议的实施情况，并在以后的董事会会议上通报已经形成的决议的执行情况。

### 第三十三条  会议档案的保存

董事会会议档案，包括会议通知和会议材料、会议签到簿、董事代为出席的授权委托书、会议录音资料、表决票、经与会董事签字确认的会议记录、会议纪要、决议记录、决议公告等，由董事会秘书负责保存。

董事会会议档案的保存期限为十年以上。

### 第三十四条  附则

在本规则中，"以上"包括本数。

本规则由董事会制订报股东大会批准后生效，修改时亦同。

本规则由董事会解释。

IRI-CRT-00001064

彩虹显示器件股份有限公司章程

# 彩虹显示器件股份有限公司
# 监事会议事规则

### 第一条 宗旨

为了进一步规范彩虹显示器件股份有限公司（以下简称"公司"）监事会的议事方式和表决程序，促使监事和监事会有效地履行监督职责，完善公司法人治理结构，根据《公司法》、《证券法》、《上市公司治理准则》、《上海证券交易所股票上市规则》、中国证监会发布的一系列规范性文件及《公司章程》，制订本规则。

### 第二条 监事会办公室

监事会可以设监事会办公室，处理监事会日常事务。

监事会主席兼任监事会办公室负责人，保管监事会印章。监事会主席可以要求公司证券事务代表或者其他人员协助其处理监事会日常事务。

### 第三条 监事会定期会议和临时会议

监事会会议分为定期会议和临时会议。

监事会定期会议应当每六个月召开一次。出现下列情况之一的，监事会应当在十日内召开临时会议：

（一）任何监事提议召开时；

（二）股东大会、董事会会议通过了违反法律、法规、规章、监管部门的各种规定和要求、公司章程、公司股东大会决议和其他有关规定的决议时；

（三）董事和高级管理人员的不当行为可能给公司造成重大损害或者在市场中造成恶劣影响时；

（四）公司、董事、监事、高级管理人员被股东提起诉讼时；

（五）公司、董事、监事、高级管理人员受到证券监管部门处罚或者被上海证券交易所公开谴责时；

（六）证券监管部门要求召开时；

（七）本《公司章程》规定的其他情形。

### 第四条 定期会议的提案

在发出召开监事会定期会议的通知之前，监事会办公室应当向全体监事征集会议提案，并至少用两天的时间向公司员工征求意见。在征集提案和征求意见时，监事会办公室应当说明监事会重在对公司规范运作和董事、高级管理人员职务行为的监督而非公司经营管理的决策。

### 第五条 临时会议的提议程序

监事提议召开监事会临时会议的，应当通过监事会办公室或者直接向监事会主席提交经提议监事签字的书面提议。书面提议中应当载明下列事项：

（一）提议监事的姓名；

（二）提议理由或者提议所基于的客观事由；

（三）提议会议召开的时间或者时限、地点和方式；

（四）明确和具体的提案；

（五）提议监事的联系方式和提议日期等。

在监事会办公室或者监事会主席收到监事的书面提议后三日内，监事会办公室应当发出召开监事会临时会议的通知。

38

IRI-CRT-00001065

彩虹显示器件股份有限公司章程

监事会办公室怠于发出会议通知的，提议监事应当及时向监管部门报告。

### 第六条　会议的召集和主持

监事会会议由监事会主席召集和主持；监事会主席不能履行职务或者不履行职务的，由半数以上监事共同推举一名监事召集和主持。

### 第七条　会议通知

召开监事会定期会议和临时会议，监事会办公室应当分别提前十日和五日将盖有监事会印章的书面会议通知，通过直接送达、传真、电子邮件或者其他方式，提交全体监事。非直接送达的，还应当通过电话进行确认并做相应记录。

情况紧急，需要尽快召开监事会临时会议的，可以随时通过口头或者电话等方式发出会议通知，但召集人应当在会议上作出说明。

### 第八条　会议通知的内容

书面会议通知应当至少包括以下内容：

（一）会议的时间、地点；

（二）拟审议的事项（会议提案）；

（三）会议召集人和主持人、临时会议的提议人及其书面提议；

（四）监事表决所必需的会议材料；

（五）监事应当亲自出席会议的要求；

（六）联系人和联系方式。

口头会议通知至少应包括上述第（一）、（二）项内容，以及情况紧急需要尽快召开监事会临时会议的说明。

### 第九条　会议通知的送达时间：

（一）直接送达时，以面交收件人或收件人委托的代收人签收的时间为送达时间；

（二）以传真方式送达时，以发出传真的时间为送达时间，但传真号码应经收件人确认；

（三）以电子邮件方式送达时，以发出的时间为送达时间，但电子邮箱应经收件人确认。

因意外遗漏未向某有权得到通知的人送出会议通知或者该等人没有收到会议通知，会议及会议作出的决议并不因此无效。

### 第十条　会议召开方式

监事会会议应当以现场方式召开。

紧急情况下，监事会会议可以通讯方式进行表决，但监事会召集人（会议主持人）应当向与会监事说明具体的紧急情况。在通讯表决时，监事应当将其对审议事项的书面意见和投票意向在签字确认后传真至监事会办公室。监事不应当只写明投票意见而不表达其书面意见或者投票理由。

### 第十一条　会议的召开

监事会会议应当有过半数的监事出席方可举行。相关监事拒不出席或者怠于出席会议导致无法满足会议召开的最低人数要求的，其他监事应当及时向监管部门报告。

董事会秘书和证券事务代表应当列席监事会会议。

### 第十二条　会议审议程序

会议主持人应当提请与会监事对各项提案发表明确的意见。

会议主持人应当根据监事的提议，要求董事、高级管理人员、公司其他员工或者相关中介机构业务人员到会接受质询。

### 第十三条　监事会决议

监事会会议的表决实行一人一票，以记名和书面等方式进行。

经会议主持人决定，也可采用举手表决方式进行表决。

IRI-CRT-00001066

彩虹显示器件股份有限公司章程

　　监事的表决意向分为同意、反对和弃权。与会监事应当从上述意向中选择其一，未做选择或者同时选择两个以上意向的，会议主持人应当要求该监事重新选择，拒不选择的，视为弃权；中途离开会场未进行表决的，视为弃权。

　　监事会形成决议应当全体监事过半数同意。

### 第十四条　会议录音

　　召开监事会会议，可以视需要进行全程录音。

### 第十五条　会议记录

　　监事会办公室工作人员应当对现场会议做好记录。会议记录应当包括以下内容：

　　（一）会议届次和召开的时间、地点、方式；

　　（二）会议通知的发出情况；

　　（三）会议召集人和主持人；

　　（四）会议出席情况；

　　（五）会议审议的提案、每位监事对有关事项的发言要点和主要意见、对提案的表决意向；

　　（六）每项提案的表决方式和表决结果（说明具体的同意、反对、弃权票数）；

　　（七）与会监事认为应当记载的其他事项。

　　对于通讯方式召开的监事会会议，监事会办公室应当参照上述规定，整理会议记录。

### 第十六条　监事签字

　　与会监事应当对会议记录进行签字确认。监事对会议记录有不同意见的，可以在签字时作出书面说明。必要时，应当及时向监管部门报告，也可以发表公开声明。

　　监事既不按前款规定进行签字确认，又不对其不同意见作出书面说明或者向监管部门报告、发表公开声明的，视为完全同意会议记录的内容。

### 第十七条　决议公告

　　监事会决议公告事宜，由董事会秘书根据《上海证券交易所股票上市规则》的有关规定办理。

### 第十八条　决议的执行

　　监事应当督促有关人员落实监事会决议。监事会主席应当在以后的监事会会议上通报已经形成的决议的执行情况。

### 第十九条　会议档案的保存

　　监事会会议档案，包括会议通知和会议材料、会议签到簿、会议录音资料、表决票、经与会监事签字确认的会议记录、决议公告等，由监事会主席指定专人负责保管。

　　监事会会议资料的保存期限为十年以上。

### 第二十条　附则

　　本规则未尽事宜，参照本公司《董事会议事规则》有关规定执行。

　　在本规则中，"以上"包括本数。

　　本规则由监事会制订报股东大会批准后生效，修改时亦同。

　　本规则由监事会解释。

IRI-CRT-00001067

# EXHIBIT 6

简体版



中国证券监督管理委员会
CHINA SECURITIES REGULATORY COMMISSION

Maintain a transparent, fair and equitable market
Strengthen the protection of investors, small investors in particular
Facilitate the sound development of the capital market

Home     About     News     Policies     Statistics     International Affairs     Market Entry     Enforcement     Mutual Fund     Service

Home > Laws & Regulations > Laws&Regulations on Securities and Futures > State Laws

Input the Keywords...          Advanced Search

## Companies Law of the People's Republic of China

27-10-2005

Order of the President of the People's Republic of China

No. 42

The Companies Law of the People's Republic of China has been revised and adopted at the 18th Meeting of the Standing Committee of the Tenth National People's Congress of the People's Republic of China on October 27, 2005, and its revised version is hereby promulgated and shall go into effect as of January 1, 2006.

Hu Jintao

President of the People's Republic of China

October 27, 2005

### Companies Law of the People's Republic of China

*(Adopted at the 5th Meeting of the Standing Committee of the Eighth National People's Congress on December 29, 1993; amended for the first time in accordance with the Decision on Revision of the Company Law of the People's Republic of China made at the 13th Meeting of the Standing Committee of the Ninth National People's Congress on December 25, 1999; amended for the second time in accordance with the Decision on Revision of the Company Law of the People's Republic of China made at the 11th Meeting of the Standing Committee of the Tenth National People's Congress on August 28, 2004; and revised at the 18th Meeting of the Standing Committee of the Tenth National People's Congress on October 27, 2005)*

**Contents**

Chapter I General Provisions

Chapter II Incorporation and Organizational Structure of a Company with Limited Liability

D☐P☐ Exhibit 8414
Deponent Wang
Date 3/7/19  Rptr JW

Section 1 Incorporation

Section 2 Organizational Structure

Section 3 Special Provisions on One-person Companies with Limited Liability

Section 4 Special Provisions on Wholly Stated-owned Companies

Chapter III Equity Transfer of Companies with Limited Liability

Chapter IV Incorporation and Organizational Structure of a Company Limited by Shares

Section 1 Incorporation

Section 2 Shareholders General Assembly

Section 3 Board of Directors, and the Manager

Section 4 Board of Supervisors

Section 5 Special Provisions on Organizational Structure of Listed Companies

Chapter V Issue and Transfer of Shares of Companies Limited by Shares

Section 1 Issue of Shares

Section 2 Transfer of Shares

Chapter VI Qualifications and Obligations of Directors, Supervisors and Senior Managers of Companies

Chapter VII Corporate Bonds

Chapter VIII Financial Affairs and Accounting of Companies

Chapter IX Merger and Division of Companies, Increase and Reduction of Capital

Chapter X Dissolution and Liquidation of Companies

Chapter XI Branches of Foreign Companies

Chapter XII Legal Responsibility

Chapter XIII Supplementary Provisions

**Chapter I General Provisions**

Article 1 This Law is enacted in order to standardize the organization and behavior of companies, to protect the legitimate

CHINA SECURITIES REGULATORY COMMISSION - Companies Law of the People's Republic of China

rights and interests of companies, shareholders and creditors, to maintain the socio-economic order and to promote the development of the socialist market economy.

Article 2 For the purposes of this Law, the term company refers to a company with limited liability or a company limited by shares incorporated within the territory of the People's Republic of China in accordance with this Law.

Article 3 A company is an enterprise legal person, which has independent property of a legal person and enjoys the property rights of a legal person. The company shall be liable for its debts to the extent of its entire property.

Shareholders of a company with limited liability shall assume liability towards the company to the extent of the capital contributions subscribed respectively by them; and the shareholders of a company limited by shares shall assume liability towards the company to the extent of the shares subscribed respectively by them.

Article 4 The shareholders of a company shall, in accordance with law, enjoy such rights as benefiting from the assets of the company, participation in making major decisions and selection of managerial personnel.

Article 5 In its operational activities, a company shall abide by laws and administrative regulations, observe social morals and commercial ethics, persist in honesty and good faith, accept supervision by the government and the public, and assume social responsibility.

The legitimate rights and interests of companies shall be protected by law, and shall be inviolable.

Article 6 Where an entity intends to incorporate a company, it shall, in accordance with law, apply to a company registration authority for registration of such incorporation. Where the conditions for incorporation provided for by this Law are met, the company registration authority shall have the company registered as a company with limited liability or a company limited by shares; and where the said conditions are not met, the company shall not be registered as one with limited liability or as one limited by shares.

Where laws or administrative regulations provide that approval is required for incorporation of a company, the procedures of approval shall be completed according to law prior to registration of the company.

The public may apply to the company registration authority for inquiry about the items registered by a company, and the authority shall provide services for such inquiry.

Article 7 The company registration authority shall issue a business license to a company incorporated according to law. The date on which the business license is issued shall be the date on which a company is incorporated.

In the business license of a company shall clearly be stated such items as the name, domicile, registered capital, actually received capital, scope of business and name of the legal representative of the company.

Where the items stated in the business license of a company are altered, the company shall have the alterations registered according to law, and the company registration authority shall renew its business license.

Article 8 A company with limited liability incorporated according to this Law shall have the words "company with limited liability" or "limited company" indicated in its name.

A company limited by shares incorporated according to this Law shall have the words "company limited by shares" or "company by shares" indicated in its name.

Article 9 Where a company with limited liability is to be changed into a company limited by shares, it shall meet the conditions of a company limited by shares provided for by this Law. Where a company limited by shares is to be changed into a company

with limited liability, it shall meet the conditions of a company with limited liability provided for by this Law.

Where a company with limited liability is changed into a company limited by shares, or a company limited by shares is changed into a company with limited liability, the rights of credit and the debts of the company prior to the change shall be inherited by the company after the change.

Article 10 The domicile of a company shall be the place where its main administrative organization is located.

Article 11 Articles of association shall be formulated according to law when a company is incorporated. The articles of association of a company shall have binding force on the company, its shareholders, directors, supervisors and senior managers.

Article 12 The business scope of a company shall be defined in the company's articles of association, and shall be registered according to law. A company may revise its articles of association and alter its scope of business, but shall have such revision and alteration registered.

The items within the scope of business of a company that are subject to approval as provided for by laws and administrative regulations shall be submitted for approval according to law.

Article 13 The chairman of the board of directors, the executive director or the manager shall, in accordance with the provisions of a company's articles of association, serve as the legal representative of the company, which shall be registered according to law. Where the legal representative of a company is replaced, the company shall have such replacement registered.

Article 14 A company may establish branches. Where a company intends to establish a branch, it shall apply for registration to the company registration authority, in order to obtain a business license for the branch. However, such a branch shall not possess the status of a legal person, and its civil liabilities shall be borne by the company.

A company may establish subsidiaries, which shall possess the status of legal persons, and shall independently bear civil liabilities according to law.

Article 15 A company may invest in other enterprises; however, it shall not become the investor that assumes joint and several liability for the debts of the enterprises in which it invests, except where otherwise provided for by law.

Article 16 Where a company intends to invest in another enterprise or provide guarantee for another entity, the matter shall, in accordance with the provisions of the company's articles of association, be subject to a resolution adopted by the board of directors or the shareholders assembly or the shareholders general assembly; and where norms for the gross amount of investments or guarantees and for the amount of a single investment or guarantee are specified in the company's articles of association, such norms shall not be exceeded.

Where a company intends to provide a guarantee for its shareholder or its actual controller, the matter shall be subject to a resolution adopted by its shareholders assembly or shareholders general assembly.

The shareholder specified in the preceding paragraph or the shareholder dominated by the actual controller specified in the preceding paragraph shall not participate in the vote on the matter specified in the preceding paragraph. The resolution on such matter shall be adopted if it is voted for by other shareholders present at the meeting who hold more than half of the voting rights.

Article 17 Companies shall protect the lawful rights and interests of their staff and workers, sign labor contracts with them

according to law, participate in social insurance, and improve occupational protection so as to achieve safety in production. Companies shall, in various forms, improve vocational education and on-the-job training among their staff and workers so as to enhance their quality.

Article 18 The staff and workers of a company shall, in accordance with the Trade Union Law of the People's Republic of China, organize a trade union to carry out trade union activities and protect the lawful rights and interests of the staff and workers. The company shall provide the trade union of the company with the conditions necessary for carrying out its activities. The trade union of a company shall represent the staff and workers to sign with the company collective contracts on such items as the payment for work done, working hours, welfare and insurance benefits as well as occupational safety and health of the staff and workers according to law.

Companies shall, through the conference of the representatives of the staff and workers or other forms, carry out democratic management in accordance with the provisions of the Constitution and relevant laws.

When a company discusses to make decisions on structural reform or on major issues in business operation, or formulate important rules and regulations, it shall listen to the opinions of the trade union, and shall listen to the opinions and proposals of the staff and workers through the conference of the representatives of staff and workers or other forms.

Article 19 In companies, Communist Party organizations shall, in accordance with the provisions of the Constitution of the Communist Party of China, be set up to carry out activities of the Party. Companies shall provide the necessary conditions for the Party organizations to carry out their activities.

Article 20 The shareholder of a company shall observe laws, administrative regulations and the company's articles of association, exercise the rights of a shareholder according to law, and shall not abuse his rights to damage the interests of the company or other shareholders; and he shall not abuse the independent status of the company as a legal person or the limited liability of shareholders to damage the interests of the creditors of the company.

Where the shareholder of a company abuses the rights of shareholders and thus causes losses to the company or other shareholders, he shall be liable for compensation according to law.

Where the shareholder of a company abuses the independent status of the company as a legal person or the limited liability of shareholders, evades debts and thus seriously damages the interests of the creditors of the company, he shall assume joint and several liability for the debts of the company.

Article 21 Proprietary shareholders, the actual controllers, directors, supervisors and senior managers of a company shall not take advantage of their affiliated relations to damage the interests of the company.

A person who, in violation of the provisions of the preceding paragraph, causes losses to a company shall be liable for compensation.

Article 22 The resolution adopted by the shareholders assembly or the shareholders general assembly or the board of directors of a company, which in content violates laws or administrative regulations, shall be invalid.

Where the procedures for convening the meeting of the shareholders assembly or the shareholders general assembly, or the board of directors, or the voting formulas are against laws, administrative regulations or the articles of association of a company, or the content of the resolution adopted is against the company's articles of association, the shareholders may, within 60 days from the date the resolution is adopted, request the people's court to rescind the resolution.

Where shareholders take legal proceedings in accordance with the provisions of the preceding paragraph, the people's court may, upon request of the company, demand the shareholders to provide appropriate guarantee.

Where a company has registered for alteration in accordance with the resolution adopted by the shareholders assembly, the

shareholders general assembly or the board of directors, and the people's court declares the resolution invalid or rescinds it, the company shall apply for cancellation of the registration for such alteration.

## Chapter II Incorporation and Organizational Structure of a Company with Limited Liability

Section 1 Incorporation

Article 23 The following conditions shall be met for the incorporation of a company with limited liability:

(1) The number of shareholders conforms to the statutory number;

(2) The capital contributions of the shareholders reach the statutory minimum amount of capital;

(3) The shareholders have jointly formulated the articles of association;

(4) The company has its name and has established an organizational structure in conformity with the requirements for a company with limited liability; and

(5) The company has its own domicile.

Article 24 A company with limited liability shall be jointly invested in and incorporated by not more than 50 shareholders.

Article 25 The articles of association of a company with limited liability shall specify the following items:

(1) the name and domicile of the company;

(2) the scope of business of the company;

(3) the registered capital of the company;

(4) the names or titles of the shareholders;

(5) the forms of capital contributions, the amounts and dates of capital contributions made by shareholders;

(6) the bodies of the company, and the measures for their establishment, their functions and powers, as well as the rules of procedure;

(7) the legal representative of the company; and

(8) other items which the shareholders assembly deems necessary to be specified.

The shareholders shall sign their names on and affix their seals to the company's articles of association.

Article 26 The registered capital of a company with limited liability shall be the amount of capital contributions subscribed for by all of its shareholders, as is registered with the company registration authority. The amount of the initial capital contributions made by all of the shareholders of the company shall be not less than 20 percent of the company's registered capital, or not less than the statutory minimum amount of the registered capital either, and the remainder shall be paid for in full by the shareholders within two years from the date the company is established; and in the case of an investment company, it may pay for the remainder in full within five years.

The minimum amount of the registered capital of a company with limited liability shall be RMB 30,000 yuan. Where a greater amount is provided for by laws or administrative regulations, such provision shall prevail.

Article 27 A shareholder may make his capital contributions in currency or do so by contributing such non-currency property as material objects, intellectual property rights and land-use rights that can be evaluated in currency and can be transferred according to law, except for the property that is not allowed to be used as capital contributions, as is provided for by laws or administrative regulations.

Non-currency property used for capital contributions shall be evaluated and verified, and shall not be overvalued or undervalued. Where laws or administrative regulations provide otherwise, those provisions shall prevail.

The amount of capital contributions made by all of the shareholders in currency shall not be less than 30 percent of the registered capital of a company with limited liability.

Article 28 A shareholder shall pay, on schedule and in full, the amount of the capital contributions subscribed for in accordance with the provisions of the articles of association of a company. Where a shareholder makes capital contributions in currency, he shall deposit the full amount of such capital contributions in currency in the bank account opened by the company with limited liability; and where a shareholder makes capital contributions with non-currency property, he shall, according to law, go through the formalities for the transfer of his property rights.

Where a shareholder fails to make capital contributions in accordance with the provisions of the preceding paragraph, in addition to paying to the company of his portion of the capital contributions in full, he shall be liable for breach of contract towards the shareholders who have, on schedule and in full, made their capital contributions.

Article 29 After the shareholders have made their capital contributions, such capital contributions shall be subject to capital verification by a capital verification authority set up according to law, which shall issue capital verification certificates.

Article 30 After the initial capital contributions made by shareholders have been verified by a capital verification authority set up according to law, a representative designated by all the shareholders or a proxy jointly entrusted by them shall submit to the company registration authority such documents as a written application for registration of the company, the company's articles of association and the capital verification certificates, in order to apply for registration of the incorporation of the company.

Article 31 Where after the incorporation of a company with limited liability, it is discovered that the actual amount of the value of the non-currency property used as capital contributions for the incorporation of the company is obviously less than the amount of the value prescribed in the company's articles of association, the shareholders that made such contributions shall make up the difference; and the others who are shareholders at the time of the incorporation of the company shall bear joint and several liability therefor.

Article 32 After a company with limited liability is incorporated, it shall issue investment certificates to its shareholders.

In an investment certificate the following items shall be specified:

(1) the name of the company;

(2) the date on which the company is incorporated;

(3) the registered capital of the company;

(4) the name or title of the shareholder, the amount and date of capital contributions; and

(5) the serial number of the investment certificate and the date of its verification and issue.

An investment certificate shall bear the seal of the company.

Article 33 A company with limited liability shall prepare a roster of its shareholders in which the following items shall be recorded:

(1) the names or titles and domiciles of the shareholders;

(2) the amounts of the capital contributions made by the shareholders; and

(3) the serial numbers of their investment certificates.

The shareholders recorded in the roster of the shareholders may claim to exercise their rights in such capacity on the basis of the said roster.

The company shall register with a company registration authority the names or titles of its shareholders and the amount of

their capital contributions; and where items of registration are altered, it shall have the registration altered accordingly. Without registration or without registration for alteration, the company shall not act against the third party.

Article 34 A shareholder shall have the right to consult and duplicate the company's articles of association, the minutes of the meeting of the shareholders assembly, the resolutions of the board of directors, the resolutions of the board of supervisors, and the financial and accounting reports of the company.

A shareholder may request to consult the accounting books of the company. To do that, the shareholder shall submit a written request to the company and explain his purposes. Where the company deems, on reasonable grounds, that it is for illegitimate purposes that the shareholder requests to consult its accounting books, which may damage the lawful interests of the company, the company may refuse to provide its accounting books for the shareholder to consult, and shall, within 15 days from the date the shareholder submits the written request, give a written reply to the shareholder and state its reasons. Where the company refuses to provide its accounting books, the shareholder may request the people's court to demand the company to provide such books.

Article 35 Shareholders shall draw dividends in proportion to the capital contributions they made; and when a company increases its capital, its shareholders shall have the right of first refusal to make their subscriptions in proportion to the capital contributions they made, except where all the shareholders have agreed to draw the dividends not in proportion to their capital contributions or to do without the right of first refusal in proportion to their capital contributions when making subscriptions.

Article 36 Once a company is incorporated, its shareholders shall not secretly withdraw their capital contributions.

Section 2 Organizational Structure

Article 37 The shareholders assembly of a company with limited liability shall be composed of all of its shareholders. The shareholders assembly is the organ of power of the company and shall exercise its functions and powers in accordance with this Law.

Article 38 The shareholders assembly shall exercise the following functions and powers:

(1) to decide on the operational policy and investment plan of the company;

(2) to elect or replace directors and supervisors who are not representatives of the staff and workers, and to decide on matters concerning the remuneration of the directors and supervisors;

(3) to examine and approve reports of the board of directors;

(4) to examine and approve reports of the board of supervisors or the supervisors;

(5) to examine and approve the annual financial budget plan and final accounts plan of the company;

(6) to examine and approve the company's plans for profit distribution and for making up losses;

(7) to adopt resolutions on the increase or reduction of the registered capital of the company;

(8) to adopt resolutions on the issue of corporate bonds;

(9) to adopt resolutions on the merger, division, dissolution, liquidation or transformation of the company;

(10) to amend the articles of association of the company; and

(11) other functions and powers provided for in the company's articles of association.

Where the shareholders express, in writing, their unanimous agreement on the matters specified in the preceding paragraph, they may directly make a decision without convening a meeting of the shareholders assembly, and all the shareholders shall sign their names on and affix their seals to the documents of the decision.

Article 39 The first meeting of the shareholders assembly of a company shall be convened and presided over by the shareholder who has made the greatest capital contributions to the company, and he shall exercise the functions and powers in accordance with the provisions of this Law.

Article 40 The meetings of the shareholders assembly shall be divided into regular meetings and interim meetings.

Regular meetings shall be convened on schedule as specified by the provisions of the company's articles of association. An interim meeting shall be convened when it is proposed by shareholders representing one-tenth or more of the voting rights, by one-third or more of the directors, by the board of supervisors, or by the supervisors of a company without a board of supervisors.

Article 41 Where a board of directors is set up in a company with limited liability, the meeting of the shareholders assembly shall be convened by the board of directors and presided over by the chairman of the board of directors; where the chairman of the board cannot perform such function or fails to do so, the meeting shall be presided over by the vice-chairman of the board; and where the vice-chairman cannot perform the function or fails to do so, the meeting shall be presided over by a director jointly elected by half and more of the directors.

Where no board of directors is set up in a company with limited liability, the meeting of the shareholders assembly shall be convened and presided over by the executive director.

Where a board of directors or the executive director cannot perform or fails to perform the duty of convening a meeting the shareholders assembly, such a meeting shall be convened and presided over by a board of supervisors or the supervisor of a company where no board of supervisors is set up; and where the board of supervisors or the supervisor fails to convene and preside over the meeting, the shareholder representing one-tenth or more of the voting rights may convene and preside over such a meeting on his own.

Article 42 All the shareholders shall be notified 15 days prior to the convening of a meeting of the shareholders assembly, except where otherwise provided for by the company's articles of association or agreed upon by all of the shareholders.

The shareholders assembly shall keep minutes of the decisions that are made on the matters discussed at the meeting, and the shareholders present at the meeting shall sign the minutes.

Article 43 Shareholders shall exercise their voting rights at a meeting of the shareholders assembly in proportion to their respective capital contributions, except where otherwise provided for by the company's articles of association.

Article 44 The modes of meeting and voting procedures of the shareholders assembly shall, in addition to what is provided for in this Law, be stipulated by the company's articles of association.

Resolutions made at a meeting of the shareholders assembly on amendment to the company's articles of association, the increase or reduction of the registered capital, or on the merger, division, dissolution or transformation of the company shall be subject to adoption by the shareholders representing two-thirds or more of the voting rights.

Article 45 A company with limited liability shall set up a board of directors, which shall be composed of 3 to 13 members, except where otherwise provided for by Article 51 of this Law.

The members of the board of directors of a company with limited liability that is incorporated with the investment of two or more State-owned enterprises or two or more State-owned investment entities shall include representatives of the staff and workers of the company; and the members of the board of directors of other companies with limited liability may include representatives of the staff and workers of the companies. The representatives of the staff and workers on the board of

directors shall be democratically elected by the staff and workers of the company through the conference of the representatives of the staff and workers, the general meeting of the staff and workers, or through other forms.

A board of directors shall have a chairman and may have a vice-chairman. The measures for the election of the chairman and vice-chairman of the board shall be stipulated by the company's articles of association.

Article 46 The term of office of a director shall be stipulated by the company's articles of association, but each term of office shall not exceed three years. A director may, if reelected upon expiration of his term of office, serve consecutive terms.

Where no election is conducted in time before the expiration of the term of office of a director, or the number of the directors is less than the statutory number due to the resignation of a director within his term of office, the existing director shall, before the director-elect takes office, continue to perform his duty as a director in accordance with the provisions of laws, administrative regulations or the company's articles of association.

Article 47 The board of directors shall be accountable to the shareholders assembly and exercise the following functions and powers:

(1) to convene the meeting of the shareholders assembly, and to report on its work to the board;

(2) to implement the resolutions adopted by the shareholders assembly;

(3) to decide on the operational plans and investment plans of the company;

(4) to draw up the annual financial budget plan and final accounts plan of the company;

(5) to draw up plans for profit distribution and plans for making up losses of the company;

(6) to draw up plans for the increase or reduction of the registered capital and the issue of corporate bonds of the company;

(7) to draw up plans for the merger, division, dissolution and transformation of the company;

(8) to decide on the establishment of the internal administrative bodies of the company;

(9) to decide on the appointment or dismissal of the manager of the company and the matters concerning his remuneration, and upon recommendation of the manager, decide on the appointment or dismissal of the deputy manager(s) and persons in charge of the financial affairs of the company, and on the matters concerning their remuneration;

(10) to formulate the basic management system of the company; and

(11) to exercise other functions and powers stipulated by the company's articles of association.

Article 48 The meeting of a board of directors shall be convened and presided over by the chairman of the board; where the chairman of the board cannot perform such functions or fails to do so, the meeting shall be convened and presided over by the vice-chairman of the board; and where the vice-chairman cannot perform such functions or fails to do so, the meeting shall be convened and presided over by a director jointly elected by half and more of the directors.

Article 49 The modes of meeting and voting procedures of a board of directors shall, in addition to the provisions of this Law, be stipulated by a company's articles of association.

The board of directors shall keep minutes of the decisions that are made on the matters discussed at the meeting, and the directors present at the meeting shall sign the minutes.

The one-person one-vote system shall be practiced for voting on resolutions of the board of directors.

Article 50 A company with limited liability may have a manager, who shall be engaged or dismissed by decision of the board of directors. The manager shall be accountable to the board of directors and shall exercise the following functions and powers:

(1) to take charge of production, operation and management of the company and organize implementation of the resolutions of the board of directors;

(2) to organize implementation of the annual operational plan and the investment plan of the company;

CHINA SECURITIES REGULATORY COMMISSION - Companies Law of the People's Republic of China

(3) to draw up plans for establishment of the internal administrative bodies of the company;

(4) to draw up the basic management system of the company;

(5) to formulate the specific rules of the company;

(6) to recommend the engagement or dismissal of the deputy manager(s) and of the persons in charge of financial affairs of the company;

(7) to decide on the engagement or dismissal of the persons in charge of management other than the ones the engagement or dismissal of whom is to be decided by the board of directors; and

(8) to exercise other functions and powers granted by the board of directors.

Where the articles of association of a company provide otherwise for the functions and powers of the manager, the provisions there shall prevail.

The manager shall attend meetings of the board of directors as a non-voting attendant.

Article 51 Where a company with limited liability has a relatively small number of shareholders and is relatively small in scale, it may have an executive director instead of a board of directors. The executive director may concurrently serve as the manager of the company.

The functions and powers of an executive director shall be stipulated by the company's articles of association.

Article 52 A company with limited liability shall have a board of supervisors, which shall be composed of not less than three members. Where a company with limited liability has a relatively small number of shareholders and is relatively small in scale, it may have one or two supervisors instead of a board of supervisors.

A board of supervisors shall be composed of representatives of the shareholders and an appropriate proportion of representatives of the staff and workers of the company, namely, not less than one-third of the number of the board of supervisors. The specific proportion shall be stipulated by the company's articles of association. The representatives of the staff and workers on the board of supervisors shall be democratically elected by the staff and workers of the company through the conference of the representatives of the staff and workers, or the general meeting of the staff and workers, or through other forms.

The board of supervisors shall have one chairman, who shall be elected by more than half of all the supervisors. The chairman of the board of supervisors shall convene and preside over the meeting of the board of supervisors; and where the chairman of the board of supervisors cannot perform such functions or fails to do so, a supervisor jointly elected by more than half of the supervisors shall convene and preside over the meeting of the board of supervisors.

Directors and senior managers shall not concurrently serve as supervisors.

Article 53 The term of office of a supervisor shall be three years. A supervisor may, if reelected upon expiration of the term of office, serve consecutive terms.

Where no election is conducted in time before the expiration of the term of office of a supervisor, or the number of the supervisors is less than the statutory number due to the resignation of a supervisor within his term of office, the existing supervisor shall, before the supervisor-elect takes office, continue to perform his duty as a supervisor in accordance with the provisions of laws, administrative regulations or the company's articles of association.

Article 54 The board of supervisors and the supervisor of a company without a board of supervisors shall exercise the following functions and powers:

(1) to examine the financial affairs of the company;

(2) to supervise the acts of the directors and senior managers in respect of the performance of their duties assigned by the company, and put forward proposals for removal of the directors or senior managers who violate laws, administrative regulations or the company's articles of association, or the resolutions adopted by the shareholders assembly;

(3) to demand directors or senior managers to rectify when their acts damage the interests of the company;

(4) to propose convening an interim meeting of the shareholders assembly and to convene and preside over the meeting when the board of directors fails to perform the duty of convening and presiding over such meeting as provided for by this Law;

(5) to put forth motions at the meeting of the shareholders assembly;

(6) to take legal proceedings against directors or senior managers in accordance with the provisions of Article 152 of this Law; and

(7) to exercise other functions and powers stipulated by the company's articles of association.

Article 55 A supervisor may attend meetings of the board of directors as a non-voting participant, and may inquire about or put forth proposals on matters on which resolutions have been or are to be adopted by the board of directors.

When the board of supervisors or the supervisor of a company without a board of supervisors discovers something unusual in the operation of the company, it/he may conduct investigation into the operating situation; and when necessary, it/he may engage an accounting firm or other such services to assist in the work, and the expenses entailed shall be paid by the company.

Article 56 A board of supervisors shall convene at least one meeting in each year. Supervisors may propose convening an interim meeting of the board of supervisors.

The mode of the meeting shall, in addition to the provisions of this Law, be stipulated by the company's articles of association. Resolutions of the board of supervisors shall be subject to adoption by half and more of the supervisors.

The board of supervisors shall keep minutes of the decisions made on matters discussed at a meeting, and the supervisors present at the meeting shall sign the minutes.

Article 57 The expenses needed to exercise the functions and powers by the board of supervisors or the supervisor of a company without such a board shall be paid by the company.

Section 3 Special Provisions on One-person Companies with Limited Liability

Article 58 The provisions of this Section are applicable to the incorporation and the organizational structure of a one-person company with limited liability; and where no provisions are stipulated in this Section on such company, the provisions of Sections 1 and 2 of this Chapter shall be applicable.

For the purposes of this Law, the one-person company with limited liability means a company with limited liability where there is only one shareholder who is a natural person or a legal person.

Article 59 The minimum amount of the registered capital for a one-person company with limited liability is 100,000 yuan. The shareholder shall make the capital contributions in one lump sum as stipulated by the articles of association of the company.

A natural person may only make investment for the incorporation of one one-person company with limited liability. Such a company may not make investment for the incorporation of a new one-person company with limited liability.

Article 60 A one-person company with limited liability shall clearly indicate whether it is of the sole investment of a natural person or of a legal person in its registration, and shall have it stated clearly as such in its business license.

Article 61 The articles of association of a one-person company with limited liability shall be formulated by the shareholder.

Article 62 No shareholders assembly shall be set up in a one-person company with limited liability. When the shareholder makes a decision on the matters specified in the first paragraph of Article 38 of this Law, he shall do so in written form and sign it before keeping it for the record in the company.

Article 63 A one-person company with limited liability shall, at the end of each fiscal year, draw up its financial and accounting report and have it audited by an accounting firm.

Article 64 Where the shareholder of a one-person company with limited liability cannot prove that the property of the company is independent of his own property, he shall assume the joint and several liability for the debts of the company.

Section 4 Special Provisions on Wholly Stated-owned Companies

Article 65 The provisions of this Section shall be applicable to the incorporation and the organizational structure of wholly Stated-owned companies; and where no provisions are stipulated on such company in this Section, the provisions of Sections 1 and 2 of this Chapter shall be applicable.

For the purposes of this law, a wholly Stated-owned companies is one with limited liability which is solely invested in by the State and for which the State Council or the local people's government authorizes the State-owned assets regulatory institution under the people's government at the corresponding level to perform the duties of an investor.

Article 66 The articles of association of a wholly Stated-owned company shall be formulated by the State-owned assets regulatory institution, or shall be formulated by its board of directors and submitted to the said institution for approval.

Article 67 No shareholders assembly shall be set up in a wholly Stated-owned company, and the functions and powers of such board shall be exercised by the State-owned assets regulatory institution. The said institution may authorize the company's board of directors to exercise part of the functions and powers of the shareholders assembly and to make decisions on important matters of the company; however, matters on the merger, division and dissolution of the company, on the increase and reduction of the registered capital and the issue of corporate bonds shall be subject to decision by the State-owned assets regulatory institution; and among such matters, the merger, division, dissolution and application for bankruptcy of important wholly Stated-owned companies shall, after examination and verification by the said institution, be submitted to the people's government at the corresponding level for approval.

The important wholly Stated-owned companies mentioned in the preceding paragraph shall be defined in accordance with the regulations of the State Council.

Article 68 A wholly Stated-owned company shall have a board of directors, which shall exercise its functions and powers in accordance with the provisions of Articles 47 and 67 of this Law. The term of office of a director shall not exceed three years. On the board of directors, there shall be representatives of the staff and workers of the company.

The members of the board of directors shall be appointed by the State-owned assets regulatory institution; but the representatives of the staff and workers among such members shall be elected by the conference of the representatives of the staff and workers of the company.

The board of directors shall have one chairman and may have a vice-chairman. The chairman and vice-chairman shall be designated by the State-owned assets regulatory institution from among the members of the board of directors.

Article 69 A wholly Stated-owned company shall have a manager, who shall be engaged or dismissed by the board of

directors. The manager shall exercise his functions and powers in accordance with the provisions of Article 50 of this Law. Upon consent of the State-owned assets regulatory institution, a member of the board of directors may concurrently serve as manager.

Article 70 Without the consent of the State-owned assets regulatory institution, the chairman or vice-chairman of the board of directors or the director or senior manager of a wholly Stated-owned company shall not hold a post concurrently in another company with limited liability, company limited by shares or economic organization.

Article 71 There shall be not less than five persons on the board of supervisors of a wholly State-owned company, and among them, the proportion of the representatives of the staff and workers shall not be less than one-third. The specific proportion shall be stipulated by the company's articles of association.

The members of a board of supervisors shall be appointed by the State-owned assets regulatory institution; but the representatives of the staff and workers among the members on the board of supervisors shall be elected by the conference of the representatives of the staff and workers of the company. The chairman of the board of supervisors shall be designated by the State-owned assets regulatory institution from among the members on the board of supervisors.

The board of supervisors shall exercise the functions and powers stipulated by Subparagraphs (1), (2) and (3) in Article 54 of this Law and the other functions and powers prescribed by the State Council.

### Chapter III Equity Transfer of Companies with Limited Liability

Article 72 Shareholders of a company with limited liability may mutually transfer all or a part of their equity to each other.

Where a shareholder intends to transfer his equity to a person other than a shareholder, the matter shall be subject to consent by more than half of the other shareholders. The shareholder shall inform, in writing, the other shareholders of his intention to transfer his equity in order to seek their consent. Where the other shareholders give no reply at the expiration of 30 days from the date they receive the written information, it shall be regarded as their consent to the transfer. Where half or more of the other shareholders do not give their consent to the transfer, they shall buy such equity; and the ones who do not do so shall be deemed as giving their consent to the transfer.

With regard to the equity the transfer of which is consented to by the shareholders, all the other shareholders shall have the right of first refusal under equal conditions. Where two or more shareholders claim to exercise the right of first refusal, they shall determine, through consultation, the proportions of the equity to be purchased by them respectively; and where consultation fails, they shall exercise the right of first refusal on the basis of the proportions of their respective capital contributions at the time when the equity is transferred.

Where the articles of association of a company stipulate otherwise on equity transfer, such stipulations shall prevail.

Article 73 When a people's court transfers the equity of a shareholder in accordance with the procedures of compulsory execution as provided for by law, it shall notify the company and all the shareholders of the matter, and notify that the other shareholders shall have the right of first refusal under equal conditions. When at the expiration of 20 days from the date the other shareholders receive the notification from the people's court, they have not exercised their right of first refusal, they shall be regarded as waiving such right.

Article 74 After the transfer of the equity in accordance with the provisions of Articles 72 and 73 of this Law, the company shall cancel the investment certificate of the original shareholder and issue an investment certificate to the new shareholder, and shall accordingly revise the records regarding the shareholders and their capital contributions in the company's articles of association and in the roster of the shareholders. Such revisions made in the company's articles of association need not be voted by the shareholders assembly.

Article 75 Under one of the following circumstances, where a shareholder votes against the resolution adopted by the shareholders assembly, he may request the company to purchase his equity at a reasonable price:

(1) The company fails to distribute its profits to the shareholders for five consecutive years, when it has been making profits for five years running and meets the conditions for distributing profits as is provided for by this Law;

(2) The company is to be merged or divided, or the principal part of its property is to be transferred; or

(3) When the period of business stipulated by the company's articles of association expires or other situations originating the dissolution stipulated by the said articles of association arise, a resolution is adopted by the shareholders assembly to revise the articles of association for continued existence of the company.

Where a shareholder fails to reach an agreement on the equity purchase with the company within 60 days from the date the resolution is adopted by the shareholders assembly, he may bring a suit before a people's court within 90 days from the date the resolution is adopted by the shareholders assembly.

Article 76 After the death of a shareholder, who is a natural person, his legal heir may inherit his qualification, except where otherwise provided for by the company's articles of association.

### Chapter IV Incorporation and Organizational Structure of a Company Limited by Shares

Section 1 Incorporation

Article 77 The following conditions shall be met if a company limited by shares is to be incorporated:

(1) The number of promoters conforms to the statutory number;

(2) The share capital subscribed for and raised by promoters reaches the statutory minimum amount of capital;

(3) The issue of shares and the preparations made for incorporation conform to the provisions of law;

(4) The company's articles of association are formulated by the promoters, and such articles of association of a company incorporated by means of share offer are adopted at the inaugural meeting;

(5) The company has its name, and its organizational structure conforms to the requirements for a company limited by shares; and

(6) The company has its domicile.

Article 78 A company limited by shares may be incorporated by means of promotion or by means of share offer.

A company incorporated by means of promotion is one incorporated by the promoters subscribing for all the shares to be issued by the company.

A company incorporated by means of share offer is one incorporated by the promoters subscribing for a portion of the shares to be issued by the company, with the rest offered to the general public or to specific quarters.

Article 79 To incorporate a company limited by shares, there shall be not less than 2 but not more than 200 promoters, more than half of whom shall have their domiciles within the territory of the People's Republic of China.

Article 80 The promoters of a company limited by shares shall undertake the matters concerning the preparation for incorporation of the company.

The promoters shall sign a promoters' agreement, in which to define their respective rights and obligations in the process of the incorporation of the company.

Article 81 Where a company limited by shares is incorporated by means of promotion, its registered capital shall be the total amount of the share capital subscribed for by all the promoters, as is registered with the company registration authority. The initial capital subscriptions by all the promoters of the company shall be not less than 20 percent of the registered capital and the remainder shall be paid in full by the promoters within two years from the date the company is incorporated; in the case of an investment company, it may do so within five years. Before the money is furnished in full, the company shall not offer shares to others.

Where a company limited by shares is incorporated by means of share offer, its registered capital shall be the total amount of the actually received share capital as is registered with the company registration authority.

The minimum amount of the registered capital of a company limited by shares shall be 5,000,000 yuan. Where the minimum amount of the registered capital of a company limited by shares is greater than the said amount, as is stipulated by laws or administrative regulations, the provisions there shall prevail.

Article 82 The articles of association of a company limited by shares shall specify the following items:

(1) the name and domicile of the company;

(2) the scope of business of the company;

(3) the means of incorporation of the company;

(4) the total number of shares, the par value for each share and the registered capital of the company;

(5) the names or titles of the promoters, the number of shares subscribed for by them, or the forms and dates of their contributions;

(6) the composition, functions and powers of the board of directors and its rules of procedure;

(7) the legal representative of the company;

(8) the composition, functions and powers of the board of supervisors and its rules of procedure;

(9) methods for distribution of the company's profits;

(10) the reasons for dissolution of the company and its liquidation methods;

(11) methods for notices and announcements of the company; and

(12) other items that the shareholders general assembly deems necessary to be specified.

Article 83 The provisions of Article 27 of this Law shall be applicable to the forms of contributions made by the promoters.

Article 84 Where a company limited by shares is incorporated by means of promotion, each of the promoters shall, in writing, subscribe for the full portion of the shares to be subscribed for by him as stipulated by the company's articles of association; if a promoter offers to pay the subscriptions in a lump sum, he shall do so immediately; and if a promoter offers to pay the subscriptions by installments, he shall immediately pay for the first installment. Where a promoter invests with non-currency property, he shall go through the formalities for the transfer of his property rights according to law.

Where a promoter fails to pay the subscriptions in accordance with the provisions of the preceding paragraph, he shall be liable for the default in accordance with the promoters' agreement.

After the initial payment of the subscriptions by the promoters, the board of directors and the board of supervisors shall be elected. The board of directors shall submit to the company registration authority the company's articles of association, the capital verification certificate issued by the capital verification authority, which is set up according to law, and the other documents specified by laws or administrative regulations, in order to apply for registration of the incorporation of the company.

Article 85 Where a company limited by shares is incorporated by means of share offer, the shares subscribed for by the

promoters shall be not less than 35 percent of the total number of the shares issued by the company; where laws or administrative regulations provide otherwise, the provisions there shall prevail.

Article 86 Where shares are to be offered to the general public, the promoters shall publish the prospectus of the company, and prepare subscription forms. In a subscription form shall clearly be stated the items specified by Article 87 of this Law, and the subscriber shall fill in the number of the shares subscribed for, the amount of money involved and his domicile, and shall sign and seal the form. The subscriber shall pay money for the number of the shares he subscribes for.

Article 87 The company's articles of association formulated by the promoters shall be attached to a prospectus, in which the following items shall clearly be stated: (1) the number of shares subscribed for by the promoters;

(2) the par value and the issue price of each share;

(3) the total number of bearer shares issued;

(4) the purpose of the funds to be raised;

(5) the rights and obligations of the subscribers; and

(6) the dates of start and end for the share offer and a statement to the effect that subscribers may withdraw their share subscriptions when the shares are not fully subscribed for at the expiration of the time limit.

Article 88 Where promoters offer shares to the general public, the shares shall be underwritten by the securities company established according to law, and an underwriting agreement shall be concluded.

Article 89 Where promoters offer shares to the general public, they shall enter into an agreement with a bank on the collection of subscription moneys on their behalf.

The bank entrusted with collecting the subscription moneys shall, in accordance with the agreement, collect and keep the said moneys, issue receipts to the subscribers for their payments, and bear the obligation to issue certificates of receipt of moneys to relevant departments.

Article 90 After payment in full of the subscription moneys for the shares issued, such moneys shall be subject to verification by the capital verification authority established according to law, which shall produce a capital verification certificate. The promoters shall, within 30 days from the date the subscription moneys are paid in full, convene and preside over an inauguration assembly. An inauguration assembly shall be composed of all the promoters and subscribers.

Where the shares issued are not fully subscribed for at the date of expiration as specified in the prospectus, or the promoters fail to convene an inaugural meeting within 30 days from the date the subscription moneys for the shares issued are paid in full, the subscribers may claim refund from the promoters of their subscription moneys paid for the shares, plus their bank deposit interest calculated for the same period.

Article 91 The promoters shall notify each subscriber of the date of the inauguration assembly or make an announcement of such meeting 15 days prior to its convention. The inauguration assembly shall be convened only if the promoters and subscribers representing more than half of the total shares issued are present.

An inauguration assembly shall exercise the following functions and powers:

(1) to examine the promoters' report on the preparations for the incorporation of the company;

(2) to adopt the articles of association of the company;

(3) to elect members of the board of directors;

(4) to elect the members of the board of supervisors;

(5) to examine and verify the expenses incurred for the incorporation of the company;

(6) to examine and verify the evaluation of the property used by the promoters to pay subscription moneys; and

(7) to adopt a resolution against the incorporation of the company in the event that a force majeure occurs or a major change takes place in the operational conditions, which directly affects the incorporation of the company.

A resolution adopted at the inaugural meeting on the items specified in the preceding paragraph shall be subject to adoption by the subscribers attending the meeting who have more than half of the voting rights.

Article 92 After payment of their subscription moneys or making their capital contributions as substitutes for their share subscriptions, the promoters and subscribers shall not withdraw their share capital except where the shares issued are not fully subscribed for within the time limit, or the promoters fail to convene an inaugural meeting on schedule, or a resolution against the incorporation of the company is adopted at the inaugural meeting.

Article 93 The board of directors shall, within 30 days from the date the inaugural meeting is closed, submit the following documents to the company registration authority to apply for registration of the incorporation of the company:

(1) the written application for registration of the company;

(2) the minutes of the inaugural meeting;

(3) the articles of association of the company;

(4) the capital verification certificate;

(5) the appointment documents and identification certificates of the legal representative, directors and supervisors;

(6) the qualification certificate of the promoter as a legal person or his identification certificate as a natural person; and

(7) the certificate of the domicile of the company.

In the case of a company limited by shares incorporated by means of share offer which publicly issues its shares, it shall, in addition, submit to the company registration authority the approval document issued by the securities regulatory authority under the State Council.

Article 94 Where after the incorporation of a company limited by shares, a promoter fails to pay in full the subscription moneys in accordance with the provisions of the company's articles of association, he shall pay them in full; and the other promoters shall bear joint and several liability.

Where after the incorporation of a company limited by shares, it is discovered that the actual evaluation of the non-currency property used as capital contributions for the incorporation of the company is obviously less than the evaluation prescribed by the company' articles of association, the promoters making such contributions shall make up the difference; and the other promoters shall bear joint and several liability.

Article 95 The promoters of a company limited by shares shall bear the following liabilities:

(1) Where the company cannot be incorporated, they shall bear the joint and several liability for all the debts and expenses incurred in the act of incorporation;

(2) Where the company cannot be incorporated, they shall bear the joint and several liability for refunding the subscription moneys paid by the subscribers, plus their bank deposit interest calculated for the same period of time; and

(3) Where the interests of the company are impaired due to the fault committed by the promoters in the process of the incorporation of the company, they shall bear the liability to pay compensation to the company.

Article 96 Where a company with limited liability is converted into a company limited by shares, the total amount of the actually received share capital to be converted shall not be greater than the amount of its net assets. Where a company with limited liability that is converted into a company limited by shares publicly issues shares for the purpose of increasing its capital, it shall do so according to law.

Article 97 A company limited by shares shall have its articles of association, the roster of the shareholders, the stubs of

corporate bonds, the minutes of the meetings of the shareholders general assembly, the minutes of the meetings of the board of directors and of the board of supervisors, and the financial and accounting reports kept at the company.

Article 98 Shareholders shall have the right to consult the company's articles of association, the roster of the shareholders, the stubs of corporate bonds, the minutes of the meetings of the shareholders general assembly, the resolutions adopted at the meetings of the board of directors and of the board of supervisors, and the financial and accounting reports, and shall have the right to put forward proposals on or to make inquiries about the business operation of the company.

Section 2 Shareholders General Assembly

Article 99 The shareholders general assembly of a company limited by shares shall be composed of all the shareholders. The shareholders general assembly is the organ of power of the company and shall exercise its functions and powers according to this Law.

Article 100 The provisions of the first paragraph of Article 38 of this Law on the functions and powers of the shareholders assembly of a company with limited liability shall be applicable to the shareholders asembly of a company limited by shares.

Article 101 The annual meeting of the shareholders general assembly shall be convened once a year. An interim meeting shareholders general assembly shall be convened within two months where one of the following situations occurs:
(1) When the number of directors is less than the number prescribed by this Law, or less than two-thirds of the number required by the company's articles of association;
(2) When the amount of the losses that the company has left unrecouped reaches one-third of the total share capital actually received;
(3) When a shareholder individually holding, or the shareholders together holding, more than 10 percent of the company's shares request(s) to convene such a meeting;
(4) When the board of directors deems it necessary;
(5) When the board of supervisors proposes to convene such a meeting; or
(6) When other situations stipulated by the company's articles of association occur.

Article 102 A meeting of the shareholders general assembly shall be convened by the board of directors and presided over by the chairman of the board; where the chairman cannot perform the function or fails to do so, the vice-chairman shall preside over such a meeting; and where the vice-chairman cannot perform the function or fails to do so, a director jointly elected by more than half of the directors shall preside over it.
Where the board of directors cannot perform or fails to perform the duty of convening a meeting of the shareholders general assembly, the board of supervisors shall, in time, convene and preside over such a meeting; and where the board of supervisors fails to convene and preside over the meeting, the shareholder individually holding, or the shareholders together holding, more than 10 percent of the company's shares for 90 or more consecutive days may convene and preside over the meeting of his or their own accord.

Article 103 Where a meeting of the shareholders general assembly is to be convened, the shareholders shall, 20 days prior to the convening of such a meeting, be notified of the time and place of the meeting to be convened and of the matters to be deliberated at the meeting; where an interim meeting of the shareholders general assembly is to be convened, the shareholders shall be notified of it 15 days prior to the convening of the meeting; and where bearer shares are to be issued, an announcement of the time and place of the meeting to be convened and the matters to be deliberated at the meeting shall

be made 30 days prior to its convention.

A shareholder individually holding, or the shareholders together holding, more than three percent of the shares of the company may make provisional proposals and submit them in writing to the board of directors 10 days prior to the convening of the meeting of the shareholders general assembly; and the board of directors shall notify the other shareholders of such proposals within two days from the date it receives the proposals and shall submit them to the shareholders general assembly for deliberation. The content of the provisional proposals shall be kept within the scope of the functions and powers of the shareholders general assembly, and the proposals shall contain explicit subjects for discussion and specific matters for resolution.

No resolutions on matters not clearly stated in the notifications mentioned in the preceding two paragraphs shall be adopted at a meeting of the shareholders general assembly.

Where holders of bearer shares intend to attend a meeting of the shareholders general assembly, they shall deposit their share certificates with the company for a period beginning from five days prior to the convening of the meeting to the end of the meeting.

Article 104 Shareholders attending a meeting of the shareholders general assembly shall have the right to one vote for each share held, but the company itself shall have no right to vote for the shares held.

A resolution to be made by the shareholders general assembly shall be subject to adoption by more than half of the voting rights held by the shareholders present at the meeting. But resolutions to be made by the shareholders general assembly on revision of the company's articles of association, on increase or reduction of the registered capital, on merger, division, dissolution or transformation of the company shall be subject to adoption by more than two-thirds of the voting rights held by the shareholders present at the meeting.

Article 105 With regard to such matters as transfer and assignment of major assets of a company and provision of guarantee for another entity which are subject to resolution by the shareholders general assembly, as prescribed by this Law and the company's articles of association, the board of directors shall, in a timely manner, convene a meeting of the shareholders general assembly, at which to hold a vote on the matters mentioned above.

Article 106 For election of directors or supervisors by the shareholders general assembly, the system of cumulative voting may be practiced in accordance with the provisions of the company's articles of association or the resolution adopted by the shareholders general assembly.

For the purposes of this Law, the system of cumulative voting means that for election of directors or supervisors by the shareholders general assembly, the number of voting rights allocated to each share is equal to the number of directors or supervisors to be elected and such voting rights held by the shareholders may be pooled.

Article 107 A shareholder may entrust a proxy to attend a meeting of the shareholders general assembly. The proxy shall present the shareholder's power of attorney to the company, and shall exercise the voting rights within the scope of authorization.

Article 108 Decisions on matters discussed at a meeting of the shareholders general assembly shall be minuted down, and the chairperson and the directors present at the meeting shall sign the minutes. The minutes of the meeting shall be kept together with the roster of the signatures of the shareholders attending the meeting and the powers of attorney of the proxies attending the meeting.

Section 3 Board of Directors, and the Manager

Article 109 A company limited by shares shall have a board of directors composed of 5 to 19 members.

The board of directors may, among the members, have representatives from among the staff and workers of the company. Such representatives on a board of directors shall be democratically elected by the staff and workers of the company through the conference of the representatives of the staff and workers, the general meeting of the staff and workers, or through other forms.

The provisions in Article 46 of this Law on the term of office of a director of a company with limited liability shall be applicable to the director of a company limited by shares.

The provisions in Article 47 of this Law on the functions and powers of the board of directors of a company with limited liability shall be applicable to the board of directors of a company limited by shares.

Article 110 A board of directors shall have one chairman and may have a vice-chairman. The chairman and vice-chairman of the board of directors shall be elected by more than half of all the directors.

The chairman of the board of directors shall convene and preside over the meetings of the board, and shall inspect the implementation of the resolutions adopted by the board of directors. The vice-chairman of the board of directors shall assist the chairman in his work. Where the chairman cannot perform the functions or fails to do so, the vice-chairman shall perform the functions; and where the vice-chairman cannot perform the functions or fails to do so, a director jointly elected by more than half of the directors shall perform the functions.

Article 111 The meeting of the board of directors shall be convened at least twice a year. All the directors and supervisors shall be notified of such a meeting 10 days prior to its convention.

Shareholders representing more than one-tenth of the voting rights, more than one-third of the directors, or the board of supervisors may propose to convene an interim meeting of the board of directors. The chairman of the board shall convene and preside over such a meeting within 10 days from the date he receives the proposal.

The form of notification and the time limit for notification in respect of the convening of an interim meeting of the board of directors may be separately prescribed.

Article 112 A meeting of the board of directors shall be held only if more than half of all the directors are present. Any of the resolutions made by the board shall be subject to adoption by more than half of all the directors.

The one-person one-vote system shall be practiced when resolutions of the board of directors are put to the vote.

Article 113 Meetings of the board of directors shall be attended by the directors in person. If a director cannot attend a meeting of the board for one reason or another, he may, in writing, entrust another director with attending the meeting on his behalf, and in the power of attorney shall clearly indicate the scope of authorization.

Decisions on matters discussed at a meeting of the board of directors shall be minuted down, and the minutes of the meeting shall be signed by the directors present.

Directors shall be liable for the resolutions adopted by the board of directors. Where a resolution of the board violates laws, administrative regulations, or the company's articles of association, or the resolutions of the shareholders general assembly, and thus causes serious losses to the company, the directors participating in the adoption of such a resolution shall be liable for compensation to the company. However, where a director is proved to have expressed his objection to such a resolution when it was put to the vote and his objection was recorded in the minutes of the meeting, he may be exempted from such liability.

Article 114 A company limited by shares shall have a manager, who shall be engaged or dismissed by decision of the board of directors.

The provisions in Article 50 of this Law on the functions and powers of the manager of a company with limited liability shall be applicable to the manager of a company limited by shares.

Article 115 The board of directors may decide that one of its members shall concurrently serve as the manager of the company.

Article 116 A company shall not provide loans, directly or through its subsidiary, to its directors, supervisors or senior managers.

Article 117 A company shall regularly disclose to its shareholders information about the remunerations obtained by the directors, supervisors and senior managers from the company.

Section 4 Board of supervisors

Article 118 A company limited by shares shall have a board of supervisors, which shall be composed of not less than three members.

A board of supervisors shall include representatives of shareholders, and representatives of the staff and workers of the company in an appropriate proportion, which shall be not less than one-third of the total number of members on the board of supervisors. The specific proportion shall be prescribed by the company's articles of association. The representatives of the staff and workers on the board of supervisors shall be democratically elected by the staff and workers of the company through the conference of the representatives of the staff and workers, or the general meeting of the staff and workers, or through other forms.

The board of supervisors shall have one chairman and may have one vice-chairman. Both shall be elected by more than half of all the supervisors. The chairman of the board of supervisors shall convene and preside over the meeting of the board; where the chairman of the board of supervisors cannot perform the functions or fails to do so, the vice-chairman shall convene and preside over the meeting of the board; and where the vice-chairman cannot perform the functions or fails to do so, a supervisor jointly elected by half or more of the supervisors shall convene and preside over the meeting of the board.

A director or senior manager shall not concurrently serve as supervisor.

The provisions in Article 53 of this Law on the term of office of a supervisor of a company with limited liability shall be applicable to the supervisor of a company limited by shares.

Article 119 The provisions in Articles 54 and 55 of this Law on the functions and powers of the board of supervisors of a company with limited liability shall be applicable to the board of supervisors of a company limited by shares.

The expenses necessary for the exercise of the functions and powers of the board of supervisors shall be borne by the company.

Article 120 The board of supervisors shall convene a meeting at least once every six months. Supervisors may propose to convene an interim meeting of the board of supervisors.

The mode of the meeting and the voting procedure of the board of supervisors shall, in addition to the provisions of this Law, be stipulated by the company's articles of association.

A resolution made by the board of supervisors shall be subject to adoption by more than half of the supervisors.

Decisions on matters discussed at a meeting of the board of supervisors shall be minuted down, and the minutes of the meeting shall be signed by all the supervisors present.

Section 5 Special Provisions on Organizational Structure of Listed Companies

Article 121 For the purposes of this Law, a listed company means a company limited by shares which has its shares listed and traded at stock exchanges.

Article 122 Where a listed company purchases or sells major assets within one year, or the amount of guarantee exceeds 30 percent of its total assets, the matter shall be subject to resolution by the shareholders general assembly, which shall be subject to adoption by the shareholders present who hold two-thirds or more of the voting rights.

Article 123 A listed company shall have independent directors. The specific measures in this regard shall be formulated by the State Council.

Article 124 A listed company shall have a secretary of the board of directors, who shall be in charge of such matters as preparation for the meetings of the shareholders general assembly and of the board of directors of the company, safekeeping of documents, management of data on the company's shareholders and disclosure of information.

Article 125 Where the director of a listed company is affiliated with an enterprise that is involved in the matters on which a resolution is to be made at a meeting of the board of directors, he shall not exercise his voting right on such resolution, nor shall he exercise the voting right on behalf of another director. Such a meeting of the board of directors may be held with the attendance of more than half of the directors who are not affiliated with the enterprise, and the resolution made at the meeting of the board shall be subject to adoption by more than half of the unaffiliated directors. Where the number of unaffiliated directors present at the meeting of the board is less than three persons, the matters shall be submitted to the shareholders general assembly of the listed company for deliberation.

**Chapter V Issue and Transfer of Shares of Companies Limited by Shares**

Section 1 Issue of Shares

Article 126 The capital of a company limited by shares shall be divided into shares of equal value.
The shares of the company shall take the form of share certificates, which are vouchers issued by the company to certify the shares held by its shareholders.

Article 127 The shares shall be issued in compliance with the principles of fairness and impartiality. The shares of the same class must carry the same rights.
Shares of the same class issued at the same time shall be issued on the same conditions and at the same price. All units and individuals shall pay the same price for each of the share they subscribe for.

Article 128 Shares may be issued at or above their par value, but shall not be issued below their par value.

Article 129 Share certificates may be in paper form or in other forms as prescribed by the securities regulatory authority under the State Council.
The following main items shall clearly be indicated on a share certificate:

(1) the name of the company;

(2) the date of the company's incorporation;

(3) the class of the shares, the par value and the number of shares represented by the certificate; and

(4) the serial number of the share certificate.

A share certificate shall be signed by the legal representative and sealed by the company.

The words promoter's share certificate shall clearly be indicated on the share certificates issued to promoters.

Article 130 Shares issued by a company may be either registered shares or bearer shares.

Shares issued by a company to promoters and legal persons shall be registered shares, on which shall be indicated the titles or names of the promoters or legal persons. Such shares shall not be registered in other names or names of their representatives.

Article 131 Where registered shares are issued, the company shall prepare a roster of the shareholders, in which the following items shall be recorded:

(1) the titles or names, and domiciles of the shareholders;

(2) the number of shares held by each shareholder;

(3) the serial numbers of the share certificates held by each shareholder; and

(4) the date on which each shareholder obtains his shares.

Where bearer shares are issued, the company shall keep a record of the number, the serial numbers and the issue date of the share certificates.

Article 132 The State Council may formulate separate regulations on the shares of other classes issued by companies, which are not provided for in this Law.

Article 133 A company limited by shares shall formally deliver its share certificates to the shareholders immediately after its incorporation. The company shall not deliver its share certificates to the shareholders prior to its incorporation.

Article 134 Where a company issues new shares, a resolution on the following matters shall be adopted by the shareholders general assembly:

(1) the class and number of the new shares;

(2) the issue price of the new shares;

(3) the opening and closing dates for the issue of the new shares; and

(4) the class and number of the new shares issued to the existing shareholders.

Article 135 When a company publicly issues new shares upon verification and approval by the securities regulatory authority under the State Council, it shall announce its prospectus on the new share offer and its financial reports, and shall prepare subscription application forms.

The provisions of Articles 88 and 89 of this Law shall be applicable to the issue of new shares by a company to the public.

Article 136 Where a company issues new shares, it may, on the basis of its operational and financial conditions, decide on a proposal on the price of the new shares.

Article 137 Where the new shares issued by a company are fully subscribed for, the company shall apply to the company registration authority for the registration of modification in its capital and shall make an announcement thereafter.

Section 2 Transfer of Shares

Article 138 Shares held by shareholders may be transferred in accordance with law.

Article 139 Shareholders shall transfer their shares through stock exchanges established in accordance with law or through other forms prescribed by the State Council.

Article 140 Registered shares shall be transferred by means of endorsement by shareholders or by such other means as provided for by laws or administrative regulations; and after such transfer, the company shall register the names or titles and domiciles of the transferees in its roster of shareholders.

No registration of modification to the roster of shareholders as stipulated by the preceding paragraph shall be made within the period of 20 days prior to the convening of a meeting of the shareholders general assembly or within the period of 5 days prior to the date of record on which the company decides to distribute dividends. However, where laws provide otherwise in respect of registration of modification made to the roster of the shareholders of listed companies, the provisions there shall prevail.

Article 141 Transfer of bearer shares shall become effective immediately after a shareholder delivers such share certificates to a transferee.

Article 142 Shares held by the promoters of a company shall not be transferred within one year from the date the company is incorporated. Shares issued prior to the public issue by a company shall not be transferred within one year from the date the shares of the company are listed and traded at stock exchanges.

Directors, supervisors and senior managers of a company shall declare to the company the numbers of the company's shares held by them and the changes of the shares they hold, and the number of the company's shares annually transferred by each of them during their term of office shall not exceed 25 percent of the total number of the company's shares held by them respectively; and the company's shares held by them shall not be transferred within one year from the date the shares of the company are listed and traded. The company's shares held by the persons mentioned above shall not be transferred within six months after they leave office. The company's articles of association may stipulate other restrictive provisions on the transfer of the company's shares held by the directors, supervisors and senior managers of the company.

Article 143 A company shall not purchase its own shares, except where:

(1) It reduces its registered capital;

(2) It merges with another company that holds its shares;

(3) It rewards the staff and workers of the company with its shares; or

(4) A shareholder requests the company to purchase his shares because he holds objections to the resolution on the merger or division of the company adopted by the shareholders general assembly.

Purchase of its own shares by a company due to the reasons specified in Subparagraph (1), (2) or (3) of the preceding paragraph shall be subject to resolution adopted by the shareholders general assembly. Where a company purchases its own shares on grounds of Subparagraph (1) as specified in the preceding paragraph, such shares shall be cancelled within 10 days from the date it purchases them; and where the shares are purchased on grounds of Subparagraph (2) or (4), such shares shall be transferred or cancelled within six months.

The number of its own shares purchased by a company in accordance with the provisions of Subparagraph (3) of the first paragraph shall not exceed five percent of the total number of the shares issued by the company; the funds used for such purchase shall be allotted from the after-tax profits of the company; and the shares purchased shall be transferred to its staff

and workers within one year.

A company shall not accept its own shares as the subject matter of a mortgage.

Article 144 Where registered share certificates are stolen, lost or destroyed, the shareholder may, in accordance with the procedure for public notice for assertion of claims provided for in the Civil Procedure Law of the People's Republic of China, request a people's court to declare such share certificates void. After the people's court has declared the said share certificates void, the shareholder may apply to the company for replacement of such share certificates.

Article 145 A listed company shall have its shares listed and traded in accordance with relevant laws, administrative regulations and the rules of stock exchanges governing transactions.

Article 146 A listed company shall, in accordance with the provisions of laws and administrative regulations, disclose its financial and business situations and its major litigations, and shall publicize its financial reports every six months of each fiscal year.

### Chapter VI Qualifications and Obligations of Directors, Supervisors and Senior Managers of Companies

Article 147 None of the following persons shall serve as a director, supervisor, or senior manager of a company:

(1) a person who has no or limited capacity for civil conduct;

(2) a person who was sentenced to criminal punishment for embezzlement, bribery, seizure of property or misappropriation of property or for sabotage of the socialist market economic order, where less than five years have elapsed after the expiration of the period of execution; or a person who was deprived of his political rights for the commission of a crime, where less than five years have elapsed after the expiration of the period of execution;

(3) a person who, being a director or the head or manager of a company or enterprise that went into bankruptcy and liquidation, was personally liable for the bankruptcy of the said company or enterprise, where less than three years have elapsed from the date liquidation of the company or enterprise is completed;

(4) a person who, being the legal representative of a company or an enterprise, the business license of which was revoked for violation of law and which was ordered to close down, was personally liable for the above, where less than three years have elapsed from the date the business license of the company or enterprise is revoked; or

(5) a person who fails to liquidate a relatively large amount of personal debts when they are due.

Where a company elects or appoints its directors or supervisors, or engages its senior managers in violation of the provisions of the preceding paragraph, such election, appointment or engagement shall be invalid.

Where, during his term of office, a director, supervisor or senior manager is found to be a person as specified in the first paragraph of this Article, the company shall remove him from office.

Article 148 Directors, supervisors and senior managers of a company shall observe laws, administrative regulations and the company's articles of association and shall assume the duties of loyalty and diligence to the company.

Directors, supervisors and senior managers of a company shall not take advantage of their functions and powers to accept bribes or collect other illicit earnings, and shall not take illegal possession of the property of the company.

Article 149 A director or senior manager shall not commit the following acts:

(1) misappropriating the funds of the company;

(2) opening an account in his own name or in the name of another person to deposit the funds of the company;

(3) in violation of the stipulations of the company's articles of association or without the consent of the shareholders assembly,

the shareholders general assembly or the board of directors, loaning the funds of the company to another person or using the property of the company to provide guarantee for another person;

(4) in violation of the stipulations of the company's articles of association or without the consent of the shareholders assembly or the shareholders general assembly, entering into a contract or conducting transactions with the company;

(5) without the consent of the shareholders assembly or the shareholders general assembly, taking advantage of his position to seek commercial opportunities, which belong to the company, for himself or for another person, or operating for himself or for another person the same kind of business as that of the company where he is holding a post;

(6) taking into his own possession the commissions from transactions conducted by another person with the company;

(7) disclosing secrets of the company without authorization; or

(8) other acts committed in violation of the duty of loyalty to the company.

All earnings derived by the directors or senior managers in violation of the provisions in the preceding paragraph shall be returned to the company.


Article 150 Where a director, supervisor or senior manager violates laws, administrative regulations or the company's articles of association in performance of his duties for the company, and thus causes losses to the company, he shall be liable for compensation.


Article 151 Where the shareholders assembly or the shareholders general assembly requests directors, supervisors or senior managers to be present at its meeting, the latter shall attend the meeting as non-voting participants and subject themselves to inquires by the shareholders.

Directors or senior managers shall truthfully provide relevant information and data to the board of supervisors or the supervisors of a company with limited liability where there is no such board of supervisors, and shall not hinder the exercise of the functions and powers by the board of supervisors or the supervisors.


Article 152 Where a director or senior manager causes losses to the company, as specified in Article 150 of this Law, the shareholders of a company with limited liability, or the shareholders of a company limited by shares individually or jointly holding one percent or more of its shares for 180 or more consecutive days may request, in writing, the board of supervisors or the supervisors of the company with limited liability where there is no such board to bring a lawsuit to a people's court; and where a supervisor causes losses to the company, as specified in Article 150 of this Law, the shareholders mentioned above may request, in writing, the board of directors or the executive director of a company with limited liability where there is no such board to bring a lawsuit to a people's court.

Where the board of supervisors or the supervisor of a company with limited liability where there is no such board, or the board of directors, or the executive director refuses to take legal proceedings after receiving the written request from the shareholders as specified in the preceding paragraph, or fails to take legal proceedings within 30 days from the date it/he receives such request, or under emergency situations, failure to take legal proceedings immediately results in irreparable damage to the interests of the company, the shareholders specified in the preceding paragraph shall have the right, in their own names, directly to bring a lawsuit to a people's court in the interests of the company.

Where another person infringes upon the lawful rights and interests of a company and thus causes losses to the company, the shareholders specified in the first paragraph of this Article may bring a lawsuit to a people's court in accordance with the provisions of the preceding two paragraphs.


Article 153 Where a director or senior manager violates the provisions of laws, administrative regulations or the company's articles of association and thus damages the interests of the shareholders, the shareholders may bring a lawsuit to a people's court.

### Chapter VII Corporate Bonds

Article 154 For the purposes of this Law, corporate bonds mean negotiable instruments issued by a company in accordance with the statutory procedures and with an agreement reached on the repayment of the principal and the payment of the interests within a given period of time.

To issue corporate bonds, a company shall meet the requirements for such issue as provided for by the Securities Law of the People's Republic of China.

Article 155 After an application for the issue of corporate bonds is verified and approved by the department authorized by the State Council, the company shall announce the method of offer of the corporate bonds.

The following main items shall be specified in the method for offer of the corporate bonds:

(1) the name of the company;

(2) the purpose of use of the funds raised in bond form;

(3) the total amount of the bonds and their par value;

(4) the method of determining the interest rate of the bonds;

(5) the time limit for and the method of repaying the principal and paying the interest;

(6) security for the bonds;

(7) the issue price of the bonds and the beginning and ending dates for bond issue;

(8) the net assets value of the company;

(9) the total amount of the undue bonds issued by the company; and

(10) the underwriting agency of the corporate bonds.

Article 156 Where a company issues its bonds in the form of certificate, such certificate shall clearly carry thereon items such as the name of the company, the par value, the interest rate, and the time limit for repayment, and shall be signed by the legal representative and sealed by the company.

Article 157 Corporate bonds may be registered bonds and may also be bearer bonds.

Article 158 To issue corporate bonds, the company shall prepare the counterfoils of such bonds.

Where registered corporate bonds are issued, the following items shall be specified in the counterfoils of the corporate bonds:

(1) the name or title and domicile of the bondholder;

(2) the date on which the bondholder acquired the bonds and their serial numbers;

(3) the total amount of the bonds, the par value of the bonds, the interest rate and the time limit for and the method of repayment of the principal and payment of interest; and

(4) the issue date of the bonds.

Where bearer corporate bonds are issued, the total amount of the bonds, the interest rate, the time limit for and the method of repayment, the issue date and the serial numbers of the bonds shall be specified in the stubs of the corporate bonds.

Article 159 The registration and clearing institution of registered corporate bonds shall establish systems relating to registration and custody of bonds, interest payment, encashment, etc.

Article 160 Corporate bonds may be transferred, and the price for the transfer shall be agreed upon by the transferor and transferee.

Where corporate bonds are listed and traded at stock exchanges, their transfer shall be conducted in accordance with the rules of the stock exchanges governing transactions.

Article 161 Registered corporate bonds shall be transferred by means of endorsement by the bondholders or by other means as provided for by laws or administrative regulations; and after such transfer, the company shall record the name or title and the domicile of the transferee in the stub of the corporate bonds.

Where bearer corporate bonds are transferred, the transfer shall become effective immediately after a bondholder delivers such bonds to a transferee.

Article 162 Upon resolution adopted by its shareholders general assembly, a listed company may issue corporate bonds that can be converted into shares. The specific measures for conversion shall be stipulated in the method of offer of the corporate bonds. The issue of such convertible corporate bonds by a listed company shall be subject to verification and approval by the securities regulatory authority under the State Council.

Where corporate bonds convertible into shares are issued, the words convertible corporate bond shall be clearly indicated on such bonds, and the amount of the convertible corporate bonds shall be recorded in the stubs of such bonds.

Article 163 A company that issues corporate bonds convertible into shares shall convert the bonds of the bondholders into shares in accordance with the conversion measures. However, the bondholders shall have the option whether or not to convert their bonds into shares.

### Chapter VIII Financial Affairs and Accounting of Companies

Article 164 A company shall establish its financial and accounting system in accordance with the provisions of laws, administrative regulations and the rules of the finance department under the State Council.

Article 165 At the end of each fiscal year, a company shall prepare its financial reports, which shall be audited by an accounting firm according to law.

Financial reports shall be prepared in accordance with the provisions of laws, administrative regulations and the rules of the finance department under the State Council.

Article 166 A company with limited liability shall send its financial report to each of its shareholders within the time limit stipulated in its articles of association.

A company limited by shares shall, 20 days prior to the convening of the annual meeting of the shareholders general assembly, make the financial report available at the company for examination by its shareholders; and a company limited by shares that publicly issues its shares shall publicize its financial report.

Article 167 Where a company distributes the annual after-tax profits, it shall allocate 10 percent of its profits for the statutory surplus fund. Where the accumulated amount of the statutory surplus fund of the company exceeds 50 percent of its registered capital, further allocation may be dispensed with.

Where the statutory surplus fund of a company is insufficient to make up the company's losses of the previous year, the company shall, first of all, apply its annual profits to making up its losses prior to allocation for the statutory surplus fund in accordance with the provisions of the preceding paragraph.

After allocating after-tax profits for the surplus fund, a company may, upon resolution adopted by the shareholders assembly or the shareholders general assembly, allocate after-tax profits for its discretionary surplus fund.

After making up its losses and making allocations for its surplus fund, a company with limited liability shall distribute the remaining after-tax profits in accordance with the provisions of Article 35 of this Law; and a company limited by shares shall distribute them to its shareholders in proportion to the shares held by each shareholder, except where the articles of association of the company limited by shares stipulate that such profits shall not be distributed in proportion to the shares held.

Where the shareholders assembly, the shareholders general assembly or the board of directors, in violation of the provisions of the preceding paragraph, distributes profits to the shareholders before the company makes up its losses and makes allocation for the statutory surplus fund, the shareholders shall return to the company the profits distributed to them in violation of the provisions.

No profits shall be distributed to a company for its own shares.

Article 168 The premium income derived from the shares issued above par value by a company limited by shares, and other income which, according to the rules set by the finance department under the State Council, should be enlisted into the capital surplus fund shall be put into the capital surplus fund of the company.

Article 169 The surplus fund of a company shall be used to make up for the company's losses or to expand production and operation of the company, or shall be converted into an increase in the company's capital. However, the capital surplus fund shall not be used for making up the losses of the company.

Where the statutory surplus fund is converted capital, the remaining amount of such surplus fund shall not be less than 25 percent of the registered capital prior to such conversion.

Article 170 Appointment or dismissal of an accounting firm in charge of the auditing business of a company shall be subject to decision by the shareholders assembly, the shareholders general assembly or the board of directors in accordance with the provisions of the company's articles of association.

Where the shareholders assembly, the shareholders general assembly or the board of directors of a company votes on the dismissal of an accounting firm, it shall allow the accounting firm to state its opinions.

Article 171 A company shall provide authentic and complete accounting vouchers, accounting books, financial and accounting reports and other accounting data to the accounting firm it appoints, and shall not refuse to do so, or conceal the facts or make false reports about them.

Article 172 A company shall not have any other accounting books in addition to the statutory accounting books.

No accounts shall be opened in the name of any individual for deposit of the assets of a company.

**Chapter IX Merger and Division of Companies, Increase and Reduction of Capital**

Article 173 Merger of companies may take the form of merger by amalgamation or merger by new establishment.

When a company has another company amalgamated with it, it is merger by amalgamation, and the amalgamated company shall be dissolved. When two or more companies merge to establish a new company, it is merger for new establishment, and all parties being merged shall be dissolved.

Article 174 When companies merge, the parties to the merger shall sign a merger agreement, and draw up a balance sheet and a detailed inventory of assets. The companies shall, within 10 days from the date the resolution on such merger is adopted, notify their creditors of the intended merger, and make an announcement about it in the newspaper within 30 days

therefrom. The creditors may, within 30 days from the date they receive the written notice, or within 45 days from the date the announcement is made in case of those who have not received the written notice, claim full repayment of their debts or provision of a corresponding guarantee from the companies.

Article 175 When companies merge, the claims and debts of all the parties to the merger shall be succeeded to by the company that continues to exist after the merger or by the newly established company.

Article 176 Where a company proceeds into a division, its assets shall be divided appropriately.

When a company intends to divide itself, it shall draw up a balance sheet and a detailed inventory of assets. The company shall, within 10 days from the date the resolution on such division is adopted, notify its creditors of the intended division, and make an announcement about it in the newspaper within 30 days therefrom.

Article 177 The companies after the division shall assume joint and several liability for the debts prior to the division, except where the company before the division and its creditors have otherwise reached a written agreement on repayment of the debts.

Article 178 Where a company needs to reduce its registered capital, it shall draw up a balance sheet and a detailed inventory of assets.

The company shall, within 10 days from the date a resolution on reduction of its registered capital is adopted, notify its creditors of such resolution, and shall make an announcement in the newspaper within 30 days therefrom. The creditors shall, within 30 days from the date they receive the written notice, or within 45 days from the date the announcement is made in the case of those who have not received such written notice, have the right to claim full repayment of their debts or provision of a corresponding guarantee from the company.

After reduction of the capital, the amount of the company's registered capital shall not be less than the statutory minimum.

Article 179 Where a company with limited liability increases its registered capital, the capital contributions to newly increased shares subscribed for by the shareholders shall be governed by the relevant provisions of this Law on payment of capital contributions in connection with the incorporation of a company with limited liability.

Where a company limited by shares issues new shares to increase its registered capital, subscription for new shares by the shareholders shall be governed by the relevant provisions of this Law on payment of share subscriptions in connection with the incorporation of a company limited by shares.

Article 180 Where the merger or division of a company involves changes in the registered items, such changes shall, in accordance with law, be registered with the company registration authority; where a company is dissolved, it shall apply for cancellation of its registration according to law; and where a new company is incorporated, it shall have its incorporation registered according to law.

Where a company increases or reduces its registered capital, it shall apply to the company registration authority for registration of such change according to law.

**Chapter X Dissolution and Liquidation of Companies**

Article 181 A company shall be dissolved for one of the following reasons:

(1) Where the term of business operation as stipulated in the company's articles of association expires or other causes for dissolution as stipulated in the articles of association occur;

(2) Where a resolution on dissolution is adopted by the shareholders assembly or the shareholders general assembly;

(3) Where merger or division of the company necessitates its dissolution;

(4) Where the business license of the company is revoked, or the company is ordered to close down, or its registration is cancelled, according to law; or

(5) Where the people's court has the company dissolved in accordance with the provisions of

Article 183 of this Law.

Article 182 Where a company finds itself in the conditions as prescribed in Subparagraph (1) of

Article 181 of this Law, it may continue to exist through revision of its articles of association.

In the case of a company with limited liability, revision of the articles of association in accordance with the provisions of the preceding paragraph shall be subject to adoption by the shareholders who hold more than two-thirds of the voting rights; and in the case of a company limited by shares, such a revision shall be subject to adoption by the shareholders present at the meeting of the shareholders general assembly, who hold more than two-thirds of the voting rights.

Article 183 Where a company is confronted with serious difficulties in operation and management, its continued existence may cause grievous losses to the interests of its shareholders and the difficulties cannot be surmounted through other channels, the shareholders holding more than 10 percent of the total number of the voting rights held by all the shareholders of the company may request a people's court to dissolve the company.

Article 184 Where a company is dissolved because of the reasons specified in Subparagraph (1), (2), (4) or (5) of Article 181 of this Law, it shall, within 15 days from the date the reasons for dissolution prevail, set up a liquidation team to begin liquidation. The liquidation team of a company with limited liability shall be composed of its shareholders; and the liquidation team of a company limited by shares shall be composed of its directors or the persons decided on by the shareholders general assembly. Where a company fails to set up a liquidation team to conduct liquidation at the expiration of the prescribed time limit, its creditors may apply to a people's court for designating relevant persons to form a liquidation team for liquidation. The people's court shall accept the application and shall, in a timely manner, organize a liquidation team to conduct liquidation.

Article 185 During the period of liquidation, a liquidation team shall exercise the following functions and powers:

(1) to check up on the property of the company and draw up a balance sheet and an inventory of its assets separately;

(2) to notify the creditors by notice or announcement;

(3) to dispose of and liquidate the company's unfinished business;

(4) to pay off the tax arrears and the taxes generated in the process of liquidation;

(5) to clear up claims and debts;

(6) to dispose of the property remaining after the company pays off its debts; and

(7) to participate in civil lawsuits on behalf of the company.

Article 186 A liquidation team shall, within 10 days from the date it is established, notify the creditors of its establishment and make an announcement in the newspaper within 60 days therefrom. The creditors shall declare their claims to the liquidation team within 30 days from the date they receive the written notice, or within 45 days from the date the announcement is made, in the case of those who have not received such notice.

When declaring his claims, a creditor shall specify the matters in respect of each claim, and provide supporting materials. The

liquidation team shall register the claims.

During the period when creditors declare their claims, the liquidation team shall not pay off the debts to them.

Article 187 After the liquidation team has checked up on the property of a company and drawn up the balance sheet and the inventory of assets, it shall work out a liquidation plan and submit the plan to the shareholders assembly, the shareholders general assembly or a people's court for confirmation.

After a company pays off respectively the liquidation expenses, the wages of its staff and workers, the social insurance premiums and the statutory compensations, pays its tax arrears and clears up its debts, the remaining property of a company with limited liability shall be distributed in proportion to the capital contributions made by its shareholders; and the remaining property of a company limited by shares shall be distributed in proportion to the shares held by its shareholders.

During the period of liquidation, the company shall continue to exist, but it shall not engage in any operational activities not related to liquidation. The property of the company shall not be distributed to its shareholders before it has made the payments as specified in the provisions of the preceding paragraph.

Article 188 If, after checking up on the property of a company and drawing up the balance sheet and the inventory of its property, a liquidation team discovers that the property of the company is insufficient to pay off its debts, it shall, in accordance with law, apply to a people's court for declaration of bankruptcy of the company.

After the people's court has ruled to declare the company bankrupt, the liquidation team shall turn the liquidation matters over to the people's court.

Article 189 After the liquidation of a company is completed, the liquidation team shall prepare a liquidation report and submit the report to the shareholders assembly, the shareholders general assembly or the people's court for confirmation, and shall submit it to the company registration authority in order to apply for cancellation of the registration of the company and shall announce termination of the company.

Article 190 Members of a liquidation team shall be devoted to their duties and perform their liquidation obligations according to law.

Members of a liquidation team shall not take advantage of their functions and powers to accept bribes or other illegal income, or to take illegal possession of the property of the company.

Where a member of the liquidation team causes losses to the company or its creditors intentionally or through gross negligence, he shall be liable for compensation.

Article 191 Where a company is declared bankrupt according to law, bankruptcy liquidation shall be conducted in accordance with the law on enterprise bankruptcy.

**Chapter XI Branches of Foreign Companies**

Article 192 For the purposes of this Law, a foreign company is one that is incorporated outside the territory of the People's Republic of China in accordance with the law of a foreign country.

Article 193 Where a foreign company intends to establish a branch within the territory of the People's Republic of China, it shall submit an application to the competent authority in China together with such relevant documents as its articles of association and the company's registration certificate issued by its country. Upon approval, it shall, according to law, apply to the company registration authority for registration before obtaining a business license for its branch.

Measures for examining and approving the establishment of branches of foreign companies shall be separately formulated by the State Council.

Article 194 Where a foreign company intends to establish a branch within the territory of the People's Republic of China, it shall designate its representative or agent within the territory of the People's Republic of China to take charge of the branch and shall allocate to the branch funds commensurate with the operational activities the branch is engaged in.

Where a minimum amount of operational funds for a branch of a foreign company is required to be prescribed, the State Council shall separately prescribe such amount.

Article 195 The branch of a foreign company shall clearly indicate in its name the nationality and the form of liability of the foreign company.

The branch of a foreign company shall keep at its office a copy of the articles of association of the foreign company.

Article 196 The branch established by a foreign company within the territory of the People's Republic of China shall not have the status of a Chinese legal person.

A foreign company shall bear civil liability for the operational activities engaged in by its branch within the territory of the People's Republic of China.

Article 197 In its business activities conducted within the territory of the People's Republic of China, the branch of a foreign company established upon approval shall observe Chinese laws and shall not impair the public interests of China. The lawful rights and interests of such branch shall be protected by Chinese laws.

Article 198 Where a foreign company intends to dissolve its branch established within the territory of the People's Republic of China, it shall pay off all the debts of the branch according to law and carry out liquidation in accordance with the provisions of this Law on the procedures of company liquidation. It shall not have the property of the branch transferred out of the territory of the People's Republic of China prior to the payment of all its debts.

**Chapter XII Legal Responsibility**

Article 199 Where a company, in violation of the provisions of this Law, obtains its registration by making a false report on its registered capital, submitting falsified materials or concealing important facts by other fraudulent means, the company registration authority shall order it to rectify; in the case of a company that makes a false report on its registered capital, it shall be fined not less than 5 percent but not more than 15 percent of the registered capital falsely reported; in the case of a company that submits falsified materials or conceals important facts by other fraudulent means, it shall be fined not less than 50,000 yuan but not more than 500,000 yuan; and if the circumstances are serious, the registration of the company shall be cancelled or its business license shall be revoked.

Article 200 Where a promoter or a shareholder of a company makes a false capital contribution by failing to deliver, or failing to deliver on schedule, his capital contribution in currency or non-currency property, the company registration authority shall order him to rectify, and shall impose on him a fine of not less than 5 percent but not more than 15 percent of the amount of such false capital contribution.

Article 201 Where a promoter or a shareholder of a company secretly withdraws his capital contribution after the incorporation

of the company, the company registration authority shall order him to rectify, and shall impose on him a fine of not less than 5 percent but not more than 15 percent of the amount of the capital contribution secretly withdrawn.

Article 202 Where a company, in violation of the provisions of this Law, keep other accounting books in addition to the statutory accounting books, the finance department under the people's government at or above the county level shall order it to rectify, and shall impose on it a fine of not less than 50,000 yuan but not more than 500,000 yuan.

Article 203 Where a company makes false records or conceals important facts in such materials as its financial reports submitted to the relevant competent department according to law, the said department shall impose a fine of not less than 30,000 yuan but not more than 300,000 yuan on each of the persons directly in charge of the company and of the other persons directly responsible.

Article 204 Where a company fails to allocate the statutory surplus fund in accordance with the provisions of this Law, the finance department under the people's government at or above the county level shall order it make up the amount in full, and may impose on the company a fine of not more than 200,000 yuan.

Article 205 Where a company fails to notify its creditors of its decision to merge, divide, reduce its registered capital or go into liquidation or announce such decision to them, as is required by the provisions of this Law, the company registration authority shall order it to rectify, and shall impose on it a fine of not less than 10,000 yuan but not more than 100,000 yuan.

Where a company, in the process of liquidation, conceals its property, records false information in the balance sheet or the inventory of its property, or distributes its property prior to the payment of all its debts, the company registration authority shall order it to rectify, and shall impose on it a fine of not less than 5 percent but not more than 10 percent of the value of the concealed property or of the amount of the property distributed prior to the payment of all its debts; and the other persons directly in charge and other persons directly responsible shall each be fined not less than 10,000 yuan but not more than 100,000 yuan.

Article 206 Where, during the period of liquidation, a company conducts operational activities not related to liquidation, the company registration authority shall give it a warning and confiscate its unlawful gains.

Article 207 Where a liquidation team fails to submit its liquidation report to the company registration authority in accordance with the provisions of this Law, or conceals or omits important facts in the liquidation report submitted, the company registration authority shall order it to rectify.

Where a member of the liquidation team takes advantage of his functions and powers to engage in malpractices for personal gain or to seek unlawful income, or takes illegal possession of the property of the company, the company registration authority shall order him to return the property to the company and confiscate his unlawful gains, and may impose on him a fine of not less than the amount of the unlawful gains but not more than five times that amount.

Article 208 Where an institution in charge of assets assessment, capital verification or certificate verification provides false information, the company registration authority shall confiscate its unlawful gains and impose on it a fine of not less than the amount of the unlawful gains but not more than five times that amount, and the department in charge may, in accordance with law, order the institution to suspend business, revoke the qualification certificate of the person directly responsible, or revoke the institution's business license.

Where an institution in charge of assets assessment, capital verification or certificate verification provides, due to negligence, a report with major omissions, the company registration authority shall order it to rectify; and if the circumstances are relatively

serious, a fine of not less than the amount of its gains derived therefrom but not more than five times that amount shall be imposed on it, and the department in charge may, in accordance with law, order the institution to suspend business, revoke the qualification certificate of the person directly responsible, or revoke the institution's business license.

Where losses are caused to the creditors of a company due to the misrepresentation of the assessment result, capital verification or certificate verification prepared by an institution in charge of assets assessment, capital verification or certificate verification, the institution shall be liable for compensation within the amount of the misrepresented assessment or verification, except where it can prove itself faultless.

Article 209 Where the company registration authority approves an application for registration which does not meet the conditions for registration as stipulated by this Law, or does not approve an application for registration which meets the conditions for registration as stipulated by this Law, the persons directly in charge and the other persons directly responsible shall be given administrative sanctions according to law.

Article 210 Where a department at a higher level peremptorily orders a company registration authority to have registered with it a company whose application for registration does not meet the requirements for registration as stipulated by this Law, or not to have registered with it a company whose application for registration meets the requirements for registration as stipulated by this Law, or covers up an illegal registration, the persons directly in charge and the other persons directly responsible shall be given administrative sanctions according to law.

Article 211 Where an entity that has not registered according to law as a company with limited liability or a company limited by shares assumes the name of such company, or where an entity that has not registered according to law as the branch of a company with limited liability or of a company limited by shares assumes the name of such branch, the company registration authority shall order it to rectify or have it banned and may, in addition, impose on it a fine of not more than 100,000 yuan.

Article 212 Where a company, without justifiable reasons, fails to commence business for more than six months after its incorporation, or after commencement of business it suspends business operation of its own accord for six or more consecutive months, the company registration authority may revoke its business license.

Where a company fails to apply for registration of alterations in accordance with the provisions of this Law when items of company registration are altered, the company registration authority shall order it to have the alterations registered within a specified time limit; and if it fails to comply at the expiration of the time limit, it shall be fined not less than 10,000 yuan but not more than 100,000 yuan.

Article 213 Where a foreign company, in violation of the provisions of this Law, establishes a branch within the territory of the People's Republic of China, the company registration authority shall order it to rectify or to close the branch, and may, in addition, impose on the foreign company a fine of not less than 50,000 yuan but not more than 200,000 yuan.

Article 214 Where a company takes advantage of the name of the company to engage in serious illegal activities which endanger State security or harm public interests, the business license of the company shall be revoked.

Article 215 Where a company, for violation of the provisions of this Law, should assume civil liability for compensation and pay fines or penalties but its property is insufficient to make such payment, it shall assume the civil liability for compensation first.

Article 216 Where a crime is constituted due to violation of the provisions of this Law, criminal responsibility shall be investigated according to law.

## Chapter XIII Supplementary Provisions

Article 217 The following terms used in this Law mean:

(1) Senior managers include the manager, deputy manager and the person in charge of financial affairs of a company, and the secretary of a board of directors of a listed company and the other persons specified in a company's articles of association.

(2) A proprietary shareholder means a shareholder whose capital contribution accounts for more than 50 percent of the total capital of a company with limited liability or the amount of the shares who holds accounts for more than 50 percent of the total amount of the shares of a company limited by shares; and a shareholder, although the amount of his capital contribution or the proportion of the shares he holds is less than 50 percent, whose voting rights enjoyed on the basis of the amount of capital contribution made or the number of shares held are enough to have a vital bearing on the resolutions of a shareholders assembly or a shareholders general assembly.

(3) An actual controller means a person who is able practically to govern the behavior of a company through investment relations, agreements or other arrangements, although the person is not a shareholder of the company.

(4) Affiliated relations mean the relations between the proprietary shareholder, actual controller, director, supervisor and senior manager of a company with the enterprises which are directly or indirectly under their control, and other relations which may lead to transfer of the company's interests. However, affiliated relations do not exist among the holding companies of the State although their shares are held by the State in common.

Article 218 This Law shall be applicable to foreign-invested companies with limited liability and such companies limited by shares; and where laws on foreign investments provide otherwise, the provisions there shall be applicable.

Article 219 This Law shall go into effect as of January 1, 2006.

© 2008 China Securities Regulatory Commission All Rights Reserved
Best viewed at 1024*768 screen resolution with Internet Explorer 6.0

2/27/2019                                          中华人民共和国公司法

简体版 | English                                                   站内搜索：本站点检索                   高级

首页        政      信息公开   政策法规   新闻发布      服      办事指南  在线申报  监管对象      互      公众留言  信访专栏  举报专栏
HOME       务      信息披露   统计数据   人事招聘      务      业务资格  人员资格  投资者保护      动      在线访谈  征求意见  廉政评议

⌂   您的位置：首页  >  法律部  >  法律法规  >  国家法律

# 中华人民共和国公司法

中国证监会 www.csrc.gov.cn      时间：2005-10-27      来源：

（1993年12月29日第八届全国人民代表大会常务委员会第五次会议通过  根据1999年12月25日第九届全国人民代表大会常务委员会第十三次会议
《关于修改〈中华人民共和国公司法〉的决定》第一次修正根据2004年8月28日第十届全国人民代表大会常务委员会第十一次会议《关于修改〈中
华人民共和国公司法〉的决定》第二次修正2005年10月27日第十届全国人民代表大会常务委员会第十八次会议修订）

第一章   总  则

第二章   有限责任公司的设立和组织机构

第一节   设  立

第二节   组织机构

第三节   一人有限责任公司的

第四节   国有独资公司的

第三章   有限责任公司的股权转让

第四章   股份有限公司的设立和组织机构

第一节   设  立

第二节   股东大会

第三节   董事会、经理

第四节   监  事  会

第五节   上市公司组织机构的

第五章   股份有限公司的股份发行和转让

第一节   股份发行

第二节   股份转让

第六章   公司董事、监事、高级管理人员的资格和义务

第七章   公司债券

第八章   公司财务、会计

第九章   公司合并、分立、增资、减资

第十章   公司解散和清算

第十一章  外国公司的分支机构

2/27/2019 中华人民共和国公司法

第十二章 法律责任

第十三章 附 则

第一章 总 则

第一条 为了规范公司的组织和行为,保护公司、股东和债权人的合法权益,维护社会经济秩序,促进社会主义市场经济的发展,制定本法。

第二条 本法所称公司是指依照本法在中国境内设立的有限责任公司和股份有限公司。

第三条 公司是企业法人,有独立的法人财产,享有法人财产权。公司以其全部财产对公司的债务承担责任。

有限责任公司的股东以其认缴的出资额为限对公司承担责任;股份有限公司的股东以其认购的股份为限对公司承担责任。

第四条 公司股东依法享有资产收益、参与重大决策和选择管理者等权利。

第五条 公司从事经营活动,必须遵守法律、行政法规,遵守社会公德、商业道德,诚实守信,接受政府和社会公众的监督,承担社会责任。

公司的合法权益受法律保护,不受侵犯。

第六条 设立公司,应当依法向公司登记机关申请设立登记,符合本法规定的设立条件的,由公司登记机关分别登记为有限责任公司或者股份有限公司;不符合本法规定的设立条件的,不得登记为有限责任公司或者股份有限公司。

法律、行政法规规定设立公司必须报经批准的,应当在公司登记前依法办理批准手续。

公众可以向公司登记机关申请查询公司登记事项,公司登记机关应当提供查询服务。

第七条 依法设立的公司,由公司登记机关发给公司营业执照。公司营业执照签发日期为公司成立日期。

公司营业执照应当载明公司的名称、住所、注册资本、实收资本、经营范围、法定代表人姓名等事项。

公司营业执照记载的事项发生变更的,公司应当依法办理变更登记,由公司登记机关换发营业执照。

第八条 依照本法设立的有限责任公司,必须在公司名称中标明有限责任公司或者有限公司字样。

依照本法设立的股份有限公司,必须在公司名称中标明股份有限公司或者股份公司字样。

第九条 有限责任公司变更为股份有限公司,应当符合本法规定的股份有限公司的条件。股份有限公司变更为有限责任公司,应当符合本法规定的有限责任公司的条件。

有限责任公司变更为股份有限公司的,或者股份有限公司变更为有限责任公司的,公司变更前的债权、债务由变更后的公司承继。

第十条 公司以其主要办事机构所在地为住所。

第十一条 设立公司必须依法制定公司章程。公司章程对公司、股东、董事、监事、高级管理人员具有约束力。

第十二条 公司的经营范围由公司章程规定,并依法登记。公司可以修改公司章程,改变经营范围,但是应当办理变更登记。

公司的经营范围中属于法律、行政法规规定须经批准的项目,应当依法经过批准。

第十三条 公司法定代表人依照公司章程的规定,由董事长、执行董事或者经理担任,并依法登记。公司法定代表人变更,应当办理变更登记。

第十四条 公司可以设立分公司。设立分公司,应当向公司登记机关申请登记,领取营业执照。分公司不具有法人资格,其民事责任由公司承担。

公司可以设立子公司,子公司具有法人资格,依法独立承担民事责任。

第十五条 公司可以向其他企业投资;但是,除法律另有规定外,不得成为对所投资企业的债务承担连带责任的出资人。

第十六条 公司向其他企业投资或者为他人提供担保,依照公司章程的规定,由董事会或者股东会、股东大会决议;公司章程对投资或者担保的总额及单项投资或者担保的数额有限额规定的,不得超过规定的限额。

公司为公司股东或者实际控制人提供担保的,必须经股东会或者股东大会决议。

前款规定的股东或者受前款规定的实际控制人支配的股东,不得参加前款规定事项的表决。该项表决由出席会议的其他股东所持表决权的过半数通过。

2/27/2019 中华人民共和国公司法

第十七条 公司必须保护职工的合法权益，依法与职工签订劳动合同，参加社会保险，加强劳动保护，实现安全生产。

公司应当采用多种形式，加强公司职工的职业教育和岗位培训，提高职工素质。

第十八条 公司职工依照《中华人民共和国工会法》组织工会，开展工会活动，维护职工合法权益。公司应当为本公司工会提供必要的活动条件。公司工会代表职工就职工的劳动报酬、工作时间、福利、保险和劳动安全卫生等事项依法与公司签订集体合同。

公司依照宪法和有关法律的规定，通过职工代表大会或者其他形式，实行民主管理。

公司研究决定改制以及经营方面的重大问题、制定重要的规章制度时，应当听取公司工会的意见，并通过职工代表大会或者其他形式听取职工的意见和建议。

第十九条 在公司中，根据中国共产党章程的规定，设立中国共产党的组织，开展党的活动。公司应当为党组织的活动提供必要条件。

第二十条 公司股东应当遵守法律、行政法规和公司章程，依法行使股东权利，不得滥用股东权利损害公司或者其他股东的利益；不得滥用公司法人独立地位和股东有限责任损害公司债权人的利益。

公司股东滥用股东权利给公司或者其他股东造成损失的，应当依法承担赔偿责任。

公司股东滥用公司法人独立地位和股东有限责任，逃避债务，严重损害公司债权人利益的，应当对公司债务承担连带责任。

第二十一条 公司的控股股东、实际控制人、董事、监事、高级管理人员不得利用其关联关系损害公司利益。

违反前款规定，给公司造成损失的，应当承担赔偿责任。

第二十二条 公司股东会或者股东大会、董事会的决议内容违反法律、行政法规的无效。

股东会或者股东大会、董事会的会议召集程序、表决方式违反法律、行政法规或者公司章程，或者决议内容违反公司章程的，股东可以自决议作出之日起六十日内，请求人民法院撤销。

股东依照前款规定提起诉讼的，人民法院可以应公司的请求，要求股东提供相应担保。

公司根据股东会或者股东大会、董事会决议已办理变更登记的，人民法院宣告该决议无效或者撤销该决议后，公司应当向公司登记机关申请撤销变更登记。

## 第二章 有限责任公司的设立和组织机构

### 第一节 设 立

第二十三条 设立有限责任公司，应当具备下列条件：

（一）股东符合法定人数；

（二）股东出资达到法定资本最低限额；

（三）股东共同制定公司章程；

（四）有公司名称，建立符合有限责任公司要求的组织机构；

（五）有公司住所。

第二十四条 有限责任公司由五十个以下股东出资设立。

第二十五条 有限责任公司章程应当载明下列事项：

（一）公司名称和住所；

（二）公司经营范围；

（三）公司注册资本；

（四）股东的姓名或者名称；

（五）股东的出资方式、出资额和出资时间；

（六）公司的机构及其产生办法、职权、议事规则；

2/27/2019                                   中华人民共和国公司法

（七）公司法定代表人；

（八）股东会会议认为需要规定的其他事项。

股东应当在公司章程上签名、盖章。

第二十六条　有限责任公司的注册资本为在公司登记机关登记的全体股东认缴的出资额。公司全体股东的首次出资额不得低于注册资本的百分之二十，也不得低于法定的注册资本最低限额，其余部分由股东自公司成立之日起两年内缴足；其中，投资公司可以在五年内缴足。

有限责任公司注册资本的最低限额为人民币三万元。法律、行政法规对有限责任公司注册资本的最低限额有较高规定的，从其规定。

第二十七条　股东可以用货币出资，也可以用实物、知识产权、土地使用权等可以用货币估价并可以依法转让的非货币财产作价出资；但是，法律、行政法规规定不得作为出资的财产除外。

对作为出资的非货币财产应当评估作价，核实财产，不得高估或者低估作价。法律、行政法规对评估作价有规定的，从其规定。

全体股东的货币出资金额不得低于有限责任公司注册资本的百分之三十。

第二十八条　股东应当按期足额缴纳公司章程中规定的各自所认缴的出资额。股东以货币出资的，应当将货币出资足额存入有限责任公司在银行开设的账户；以非货币财产出资的，应当依法办理其财产权的转移手续。

股东不按照前款规定缴纳出资的，除应当向公司足额缴纳外，还应当向已按期足额缴纳出资的股东承担违约责任。

第二十九条　股东缴纳出资后，必须经依法设立的验资机构验资并出具证明。

第三十条　股东的首次出资经依法设立的验资机构验资后，由全体股东指定的代表或者共同委托的代理人向公司登记机关报送公司登记申请书、公司章程、验资证明等文件，申请设立登记。

第三十一条　有限责任公司成立后，发现作为设立公司出资的非货币财产的实际价额显著低于公司章程所定价额的，应当由交付该出资的股东补足其差额；公司设立时的其他股东承担连带责任。

第三十二条　有限责任公司成立后，应当向股东签发出资证明书。

出资证明书应当载明下列事项：

（一）公司名称；

（二）公司成立日期；

（三）公司注册资本；

（四）股东的姓名或者名称、缴纳的出资额和出资日期；

（五）出资证明书的编号和核发日期。

出资证明书由公司盖章。

第三十三条　有限责任公司应当置备股东名册，记载下列事项：

（一）股东的姓名或者名称及住所；

（二）股东的出资额；

（三）出资证明书编号。

记载于股东名册的股东，可以依股东名册主张行使股东权利。

公司应当将股东的姓名或者名称及其出资额向公司登记机关登记；登记事项发生变更的，应当办理变更登记。未经登记或者变更登记的，不得对抗第三人。

第三十四条　股东有权查阅、复制公司章程、股东会会议记录、董事会会议决议、监事会会议决议和财务会计报告。

股东可以要求查阅公司会计账簿。股东要求查阅公司会计账簿的，应当向公司提出书面请求，说明目的。公司有合理根据认为股东查阅会计账簿有不正当目的，可能损害公司合法利益的，可以拒绝提供查阅，并应当自股东提出书面请求之日起十五日内书面答复股东并说明理由。公司拒绝提供查阅的，股东可以请求人民法院要求公司提供查阅。

第三十五条　股东按照实缴的出资比例分取红利；公司新增资本时，股东有权优先按照实缴的出资比例认缴出资。但是，全体股东约定不按照出资比例分取红利或者不按照出资比例优先认缴出资的除外。

第三十六条　公司成立后，股东不得抽逃出资。

## 第二节　组织机构

第三十七条　有限责任公司股东会由全体股东组成。股东会是公司的权力机构，依照本法行使职权。

第三十八条　股东会行使下列职权：

（一）决定公司的经营方针和投资计划；

（二）选举和更换非由职工代表担任的董事、监事，决定有关董事、监事的报酬事项；

（三）审议批准董事会的报告；

（四）审议批准监事会或者监事的报告；

（五）审议批准公司的年度财务预算方案、决算方案；

（六）审议批准公司的利润分配方案和弥补亏损方案；

（七）对公司增加或者减少注册资本作出决议；

（八）对发行公司债券作出决议；

（九）对公司合并、分立、解散、清算或者变更公司形式作出决议；

（十）修改公司章程；

（十一）公司章程规定的其他职权。

对前款所列事项股东以书面形式一致表示同意的，可以不召开股东会会议，直接作出决定，并由全体股东在决定文件上签名、盖章。

第三十九条　首次股东会会议由出资最多的股东召集和主持，依照本法规定行使职权。

第四十条　股东会会议分为定期会议和临时会议。

定期会议应当依照公司章程的规定按时召开。代表十分之一以上表决权的股东，三分之一以上的董事，监事会或者不设监事会的公司的监事提议召开临时会议的，应当召开临时会议。

第四十一条　有限责任公司设立董事会的，股东会会议由董事会召集，董事长主持；董事长不能履行职务或者不履行职务的，由副董事长主持；副董事长不能履行职务或者不履行职务的，由半数以上董事共同推举一名董事主持。

有限责任公司不设董事会的，股东会会议由执行董事召集和主持。

董事会或者执行董事不能履行或者不履行召集股东会会议职责的，由监事会或者不设监事会的公司的监事召集和主持；监事会或者监事不召集和主持的，代表十分之一以上表决权的股东可以自行召集和主持。

第四十二条　召开股东会会议，应当于会议召开十五日前通知全体股东；但是，公司章程另有规定或者全体股东另有约定的除外。

股东会应当对所议事项的决定作成会议记录，出席会议的股东应当在会议记录上签名。

第四十三条　股东会会议由股东按照出资比例行使表决权；但是，公司章程另有规定的除外。

第四十四条　股东会的议事方式和表决程序，除本法有规定的外，由公司章程规定。

股东会会议作出修改公司章程、增加或者减少注册资本的决议，以及公司合并、分立、解散或者变更公司形式的决议，必须经代表三分之二以上表决权的股东通过。

第四十五条　有限责任公司设置董事会，其成员为三人至十三人；但是本法第五十一条另有规定的除外。

两个以上的国有企业或者两个以上的其他国有投资主体投资设立的有限责任公司，其董事会成员中应当有公司职工代表；其他有限责任公司董事会成员中可以有公司职工代表。董事会中的职工代表由公司职工通过职工代表大会、职工大会或者其他形式民主选举产生。

中华人民共和国公司法

董事会设董事长一人，可以设副董事长。董事长、副董事长的产生办法由公司章程规定。

第四十六条　董事任期由公司章程规定，但每届任期不得超过三年。董事任期届满，连选可以连任。

董事任期届满未及时改选，或者董事在任期内辞职导致董事会成员低于法定人数的，在改选出的董事就任前，原董事仍应当依照法律、行政法规和公司章程的规定，履行董事职务。

第四十七条　董事会对股东会负责，行使下列职权：

（一）召集股东会会议，并向股东会报告工作；

（二）执行股东会的决议；

（三）决定公司的经营计划和投资方案；

（四）制订公司的年度财务预算方案、决算方案；

（五）制订公司的利润分配方案和弥补亏损方案；

（六）制订公司增加或者减少注册资本以及发行公司债券的方案；

（七）制订公司合并、分立、解散或者变更公司形式的方案；

（八）决定公司内部管理机构的设置；

（九）决定聘任或者解聘公司经理及其报酬事项，并根据经理的提名决定聘任或者解聘公司副经理、财务负责人及其报酬事项；

（十）制定公司的基本管理制度；

（十一）公司章程规定的其他职权。

第四十八条　董事会会议由董事长召集和主持；董事长不能履行职务或者不履行职务的，由副董事长召集和主持；副董事长不能履行职务或者不履行职务的，由半数以上董事共同推举一名董事召集和主持。

第四十九条　董事会的议事方式和表决程序，除本法有规定的外，由公司章程规定。

董事会应当对所议事项的决定作成会议记录，出席会议的董事应当在会议记录上签名。

董事会议的表决，实行一人一票。

第五十条　有限责任公司可以设经理，由董事会决定聘任或者解聘。经理对董事会负责，行使下列职权：

（一）主持公司的生产经营管理工作，组织实施董事会决议；

（二）组织实施公司年度经营计划和投资方案；

（三）拟订公司内部管理机构设置方案；

（四）拟订公司的基本管理制度；

（五）制定公司的具体规章；

（六）提请聘任或者解聘公司副经理、财务负责人；

（七）决定聘任或者解聘除应由董事会决定聘任或者解聘以外的负责管理人员；

（八）董事会授予的其他职权。

公司章程对经理职权另有规定的，从其规定。

经理列席董事会会议。

第五十一条　股东人数较少或者规模较小的有限责任公司，可以设一名执行董事，不设董事会。执行董事可以兼任公司经理。

执行董事的职权由公司章程规定。

第五十二条　有限责任公司设监事会，其成员不得少于三人。股东人数较少或者规模较小的有限责任公司，可以设一至二名监事，不设监事会。

中华人民共和国公司法

监事会应当包括股东代表和适当比例的公司职工代表，其中职工代表的比例不得低于三分之一，具体比例由公司章程规定。监事会中的职工代表由公司职工通过职工代表大会、职工大会或者其他形式民主选举产生。

监事会设主席一人，由全体监事过半数选举产生。监事会主席召集和主持监事会会议；监事会主席不能履行职务或者不履行职务的，由半数以上监事共同推举一名监事召集和主持监事会会议。

董事、高级管理人员不得兼任监事。

第五十三条　监事的任期每届为三年。监事任期届满，连选可以连任。

监事任期届满未及时改选，或者监事在任期内辞职导致监事会成员低于法定人数的，在改选出的监事就任前，原监事仍应当依照法律、行政法规和公司章程的规定，履行监事职务。

第五十四条　监事会、不设监事会的公司的监事行使下列职权：

（一）检查公司财务；

（二）对董事、高级管理人员执行公司职务的行为进行监督，对违反法律、行政法规、公司章程或者股东会决议的董事、高级管理人员提出罢免的建议；

（三）当董事、高级管理人员的行为损害公司的利益时，要求董事、高级管理人员予以纠正；

（四）提议召开临时股东会会议，在董事会不履行本法规定的召集和主持股东会会议职责时召集和主持股东会会议；

（五）向股东会会议提出提案；

（六）依照本法第一百五十二条的规定，对董事、高级管理人员提起诉讼；

（七）公司章程规定的其他职权。

第五十五条　监事可以列席董事会会议，并对董事会决议事项提出质询或者建议。

监事会、不设监事会的公司的监事发现公司经营情况异常，可以进行调查；必要时，可以聘请会计师事务所等协助其工作，费用由公司承担。

第五十六条　监事会每年度至少召开一次会议，监事可以提议召开临时监事会会议。

监事会的议事方式和表决程序，除本法有规定的外，由公司章程规定。

监事会决议应当经半数以上监事通过。

监事会应当对所议事项的决定作成会议记录，出席会议的监事应当在会议记录上签名。

第五十七条　监事会、不设监事会的公司的监事行使职权所必需的费用，由公司承担。

第三节　一人有限责任公司的特别规定

第五十八条　一人有限责任公司的设立和组织机构，适用本节规定；本节没有规定的，适用本章第一节、第二节的规定。

本法所称一人有限责任公司，是指只有一个自然人股东或者一个法人股东的有限责任公司。

第五十九条　一人有限责任公司的注册资本最低限额为人民币十万元。股东应当一次足额缴纳公司章程规定的出资额。

一个自然人只能投资设立一个一人有限责任公司。该一人有限责任公司不能投资设立新的一人有限责任公司。

第六十条　一人有限责任公司应当在公司登记中注明自然人独资或者法人独资，并在公司营业执照中载明。

第六十一条　一人有限责任公司章程由股东制定。

第六十二条　一人有限责任公司不设股东会。股东作出本法第三十八条第一款所列决议时，应当采用书面形式，并由股东签名后置备于公司。

第六十三条　一人有限责任公司应当在每一会计年度终了时编制财务会计报告，并经会计师事务所审计。

第六十四条　一人有限责任公司的股东不能证明公司财产独立于股东自己的财产的，应当对公司债务承担连带责任。

第四节　国有独资公司的特别规定

第六十五条　国有独资公司的设立和组织机构，适用本节规定；本节没有规定的，适用本章第一节、第二节的规定。

中华人民共和国公司法

本法所称国有独资公司，是指国家单独出资、由国务院或者地方人民政府授权本级人民政府国有资产监督管理机构履行出资人职责的有限责任公司。

第六十六条 国有独资公司章程由国有资产监督管理机构制定，或者由董事会制订报国有资产监督管理机构批准。

第六十七条 国有独资公司不设股东会，由国有资产监督管理机构行使股东会职权。国有资产监督管理机构可以授权公司董事会行使股东会的部分职权，决定公司的重大事项，但公司的合并、分立、解散、增加或者减少注册资本和发行公司债券，必须由国有资产监督管理机构决定；其中，重要的国有独资公司合并、分立、解散、申请破产的，应当由国有资产监督管理机构审核后，报本级人民政府批准。

前款所称重要的国有独资公司，按照国务院的规定确定。

第六十八条 国有独资公司设董事会，依照本法第四十七条、第六十七条的规定行使职权。董事每届任期不得超过三年。董事会成员中应当有公司职工代表。

董事会成员由国有资产监督管理机构委派；但是，董事会成员中的职工代表由公司职工代表大会选举产生。

董事会设董事长一人，可以设副董事长。董事长、副董事长由国有资产监督管理机构从董事会成员中指定。

第六十九条 国有独资公司设经理，由董事会聘任或者解聘。经理依照本法第五十条规定行使职权。

经国有资产监督管理机构同意，董事会成员可以兼任经理。

第七十条 国有独资公司的董事长、副董事长、董事、高级管理人员，未经国有资产监督管理机构同意，不得在其他有限责任公司、股份有限公司或者其他经济组织兼职。

第七十一条 国有独资公司监事会成员不得少于五人，其中职工代表的比例不得低于三分之一，具体比例由公司章程规定。

监事会成员由国有资产监督管理机构委派；但是，监事会成员中的职工代表由公司职工代表大会选举产生，监事会主席由国有资产监督管理机构从监事会成员中指定。

监事会行使本法第五十四条第（一）项至第（三）项规定的职权和国务院规定的其他职权。

### 第三章 有限责任公司的股权转让

第七十二条 有限责任公司的股东之间可以相互转让其全部或者部分股权。

股东向股东以外的人转让股权，应当经其他股东过半数同意。股东应就其股权转让事项书面通知其他股东征求同意，其他股东自接到书面通知之日起满三十日未答复的，视为同意转让。其他股东半数以上不同意转让的，不同意的股东应当购买该转让的股权；不购买的，视为同意转让。

经股东同意转让的股权，在同等条件下，其他股东有优先购买权。两个以上股东主张行使优先购买权的，协商确定各自的购买比例；协商不成的，按照转让时各自的出资比例行使优先购买权。

公司章程对股权转让另有规定的，从其规定。

第七十三条 人民法院依照法律规定的强制执行程序转让股东的股权时，应当通知公司及全体股东，其他股东在同等条件下有优先购买权。其他股东自人民法院通知之日起满二十日不行使优先购买权的，视为放弃优先购买权。

第七十四条 依照本法第七十二条、第七十三条转让股权后，公司应当注销原股东的出资证明书，向新股东签发出资证明书，并相应修改公司章程和股东名册中有关股东及其出资额的记载。对公司章程的该项修改不需再由股东会表决。

第七十五条 有下列情形之一的，对股东会该项决议投反对票的股东可以请求公司按照合理的价格收购其股权：

（一）公司连续五年不向股东分配利润，而公司该五年连续盈利，并且符合本法规定的分配利润条件的；

（二）公司合并、分立、转让主要财产的；

（三）公司章程规定的营业期限届满或者章程规定的其他解散事由出现，股东会会议通过决议修改章程使公司存续的。

自股东会会议决议通过之日起六十日内，股东与公司不能达成股权收购协议的，股东可以自股东会会议决议通过之日起九十日内向人民法院提起诉讼。

第七十六条 自然人股东死亡后，其合法继承人可以继承股东资格；但是，公司章程另有规定的除外。

### 第四章 股份有限公司的设立和组织机构

　　　　　　　　　　　　　　　中华人民共和国公司法

第一节　设　立

第七十七条　设立股份有限公司，应当具备下列条件：

（一）发起人符合法定人数；

（二）发起人认购和募集的股本达到法定资本最低限额；

（三）股份发行、筹办事项符合法律规定；

（四）发起人制订公司章程，采用募集方式设立的经创立大会通过；

（五）有公司名称，建立符合股份有限公司要求的组织机构；

（六）有公司住所。

第七十八条　股份有限公司的设立，可以采取发起设立或者募集设立的方式。

发起设立，是指由发起人认购公司应发行的全部股份而设立公司。

募集设立，是指由发起人认购公司应发行股份的一部分，其余股份向社会公开募集或者向特定对象募集而设立公司。

第七十九条　设立股份有限公司，应当有二人以上二百人以下为发起人，其中须有半数以上的发起人在中国境内有住所。

第八十条　股份有限公司发起人承担公司筹办事务。

发起人应当签订发起人协议，明确各自在公司设立过程中的权利和义务。

第八十一　条　股份有限公司采取发起设立方式设立的，注册资本为在公司登记机关登记的全体发起人认购的股本总额。公司全体发起人的首次出资额不得低于注册资本的百分之二十，其余部分由发起人自公司成立之日起两年内缴足；其中，投资公司可以在五年内缴足。在缴足前，不得向他人募集股份。

股份有限公司采取募集方式设立的，注册资本为在公司登记机关登记的实收股本总额。

股份有限公司注册资本的最低限额为人民币五百万元。法律、行政法规对股份有限公司注册资本的最低限额有较高规定的，从其规定。

第八十二条　股份有限公司章程应当载明下列事项：

（一）公司名称和住所；

（二）公司经营范围；

（三）公司设立方式；

（四）公司股份总数、每股金额和注册资本；

（五）发起人的姓名或者名称、认购的股份数、出资方式和出资时间；

（六）董事会的组成、职权和议事规则；

（七）公司法定代表人；

（八）监事会的组成、职权和议事规则；

（九）公司利润分配办法；

（十）公司的解散事由与清算办法；

（十一）公司的通知和公告办法；

（十二）股东大会会议认为需要规定的其他事项。

第八十三条　发起人的出资方式，适用本法第二十七条的规定。

第八十四条　以发起设立方式设立股份有限公司的，发起人应当书面认足公司章程规定其认购的股份；一次缴纳的，应即缴纳全部出资；分期缴纳的，应即缴纳首期出资。以非货币财产出资的，应当依法办理其财产权的转移手续。

中华人民共和国公司法

发起人不依照前款规定缴纳出资的，应当按照发起人协议承担违约责任。

发起人首次缴纳的出资后，应当选举董事会和监事会，由董事会向公司登记机关报送公司章程、由依法设立的验资机构出具的验资证明以及法律、行政法规规定的其他文件，申请设立登记。

第八十五条　以募集设立方式设立股份有限公司的，发起人认购的股份不得少于公司股份总数的百分之三十五；但是，法律、行政法规另有规定的，从其规定。

第八十六条　发起人向社会公开募集股份，必须公告招股说明书，并制作认股书。认股书应当载明本法第八十七条所列事项，由认股人填写认购股数、金额、住所，并签名、盖章。认股人按照所认购股数缴纳股款。

第八十七条　招股说明书应当附有发起人制订的公司章程，并载明下列事项：

（一）发起人认购的股份数；

（二）每股的票面金额和发行价格；

（三）无记名股票的发行总数；

（四）募集资金的用途；

（五）认股人的权利、义务；

（六）本次募股的起止期限及逾期未募足时认股人可以撤回所认股份的说明。

第八十八条　发起人向社会公开募集股份，应当由依法设立的证券公司承销，签订承销协议。

第八十九条　发起人向社会公开募集股份，应当同银行签订代收股款协议。

代收股款的银行应当按照协议代收和保存股款，向缴纳股款的认股人出具收款单据，并负有向有关部门出具收款证明的义务。

第九十条　发行股份的股款缴足后，必须经依法设立的验资机构验资并出具证明。发起人应当自股款缴足之日起三十日内主持召开公司创立大会。创立大会由发起人、认股人组成。

发行的股份超过招股说明书规定的截止期限尚未募足的，或者发行股份的股款缴足后，发起人在三十日内未召开创立大会的，认股人可以按照所缴股款并加算银行同期存款利息，要求发起人返还。

第九十一条　发起人应当在创立大会召开十五日前将会议日期通知各认股人或者予以公告。创立大会应有代表股份总数过半数的发起人、认股人出席，方可举行。

创立大会行使下列职权：

（一）审议发起人关于公司筹办情况的报告；

（二）通过公司章程；

（三）选举董事会成员；

（四）选举监事会成员；

（五）对公司的设立费用进行审核；

（六）对发起人用于抵作股款的财产的作价进行审核；

（七）发生不可抗力或者经营条件发生重大变化直接影响公司设立的，可以作出不设立公司的决议。

创立大会对前款所列事项作出决议，必须经出席会议的认股人所持表决权过半数通过。

第九十二条　发起人、认股人缴纳股款或者交付抵作股款的出资后，除未按期募足股份、发起人未按期召开创立大会或者创立大会决议不设立公司的情形外，不得抽回其股本。

第九十三条　董事会应于创立大会结束后三十日内，向公司登记机关报送下列文件，申请设立登记：

（一）公司登记申请书；

（二）创立大会的会议记录；

（三）公司章程；

（四）验资证明；

（五）法定代表人、董事、监事的任职文件及其身份证明；

（六）发起人的法人资格证明或者自然人身份证明；

（七）公司住所证明。

以募集方式设立股份有限公司公开发行股票的，还应当向公司登记机关报送国务院证券监督管理机构的核准文件。

第九十四条　股份有限公司成立后，发起人未按照公司章程的规定缴足出资的，应当补缴；其他发起人承担连带责任。

股份有限公司成立后，发现作为设立公司出资的非货币财产的实际价额显著低于公司章程所定价额的，应当由交付该出资的发起人补足其差额；其他发起人承担连带责任。

第九十五条　股份有限公司的发起人应当承担下列责任：

（一）公司不能成立时，对设立行为所产生的债务和费用负连带责任；

（二）公司不能成立时，对认股人已缴纳的股款，负返还股款并加算银行同期存款利息的连带责任；

（三）在公司设立过程中，由于发起人的过失致使公司利益受到损害的，应当对公司承担赔偿责任。

第九十六条　有限责任公司变更为股份有限公司时，折合的实收股本总额不得高于公司净资产额。有限责任公司变更为股份有限公司，为增加资本公开发行股份时，应当依法办理。

第九十七条　股份有限公司应当将公司章程、股东名册、公司债券存根、股东大会会议记录、董事会会议记录、监事会会议记录、财务会计报告置备于本公司。

第九十八条　股东有权查阅公司章程、股东名册、公司债券存根、股东大会会议记录、董事会会议决议、监事会会议决议、财务会计报告，对公司的经营提出建议或者质询。

第二节　股东大会

第九十九条　股份有限公司股东大会由全体股东组成。股东大会是公司的权力机构，依照本法行使职权。

第一百条　本法第三十八条第一款关于有限责任公司股东会职权的规定，适用于股份有限公司股东大会。

第一百零一条　股东大会应当每年召开一次年会。有下列情形之一的，应当在两个月内召开临时股东大会：

（一）董事人数不足本法规定人数或者公司章程所定人数的三分之二时；

（二）公司未弥补的亏损达实收股本总额三分之一时；

（三）单独或者合计持有公司百分之十以上股份的股东请求时；

（四）董事会认为必要时；

（五）监事会提议召开时；

（六）公司章程规定的其他情形。

第一百零二条　股东大会会议由董事会召集，董事长主持；董事长不能履行职务或者不履行职务的，由副董事长主持；副董事长不能履行职务或者不履行职务的，由半数以上董事共同推举一名董事主持。

董事会不能履行或者不履行召集股东大会会议职责的，监事会应当及时召集和主持；监事会不召集和主持的，连续九十日以上单独或者合计持有公司百分之十以上股份的股东可以自行召集和主持。

第一百零三条　召开股东大会会议，应当将会议召开的时间、地点和审议的事项于会议召开二十日前通知各股东；临时股东大会应当于会议召开十五日前通知各股东；发行无记名股票的，应当于会议召开三十日前公告会议召开的时间、地点和审议事项。

2/27/2019                                          中华人民共和国公司法

单独或者合计持有公司百分之三以上股份的股东，可以在股东大会召开十日前提出临时提案并书面提交董事会；董事会应当在收到提案后二日内通知其他股东，并将该临时提案提交股东大会审议。临时提案的内容应当属于股东大会职权范围，并有明确议题和具体决议事项。

股东大会不得对前两款通知中未列明的事项作出决议。

无记名股票持有人出席股东大会会议的，应当于会议召开五日前至股东大会闭会时将股票交存于公司。

第一百零四条　股东出席股东大会会议，所持每一股份有一表决权。但是，公司持有的本公司股份没有表决权。

股东大会作出决议，必须经出席会议的股东所持表决权过半数通过。但是，股东大会作出修改公司章程、增加或者减少注册资本的决议，以及公司合并、分立、解散或者变更公司形式的决议，必须经出席会议的股东所持表决权的三分之二以上通过。

第一百零五条　本法和公司章程规定公司转让、受让重大资产或者对外提供担保等事项必须经股东大会作出决议的，董事会应当及时召集股东大会会议，由股东大会就上述事项进行表决。

第一百零六条　股东大会选举董事、监事，可以依照公司章程的规定或者股东大会的决议，实行累积投票制。

本法所称累积投票制，是指股东大会选举董事或者监事时，每一股份拥有与应选董事或者监事人数相同的表决权，股东拥有的表决权可以集中使用。

第一百零七条　股东可以委托代理人出席股东大会会议，代理人应当向公司提交股东授权委托书，并在授权范围内行使表决权。

第一百零八条　股东大会应当对所议事项的决定作成会议记录，主持人、出席会议的董事应当在会议记录上签名。会议记录应当与出席股东的签名册及代理出席的委托书一并保存。

### 第三节　董事会、经理

第一百零九条　股份有限公司设董事会，其成员为五人至十九人。

董事会成员中可以有公司职工代表。董事会中的职工代表由公司职工通过职工代表大会、职工大会或者其他形式民主选举产生。

本法第四十六条关于有限责任公司董事任期的规定，适用于股份有限公司董事。

本法第四十七条关于有限责任公司董事职权的规定，适用于股份有限公司董事会。

第一百一十条　董事会设董事长一人，可以设副董事长。董事长和副董事长由董事会以全体董事的过半数选举产生。

董事长召集和主持董事会会议，检查董事会决议的实施情况。副董事长协助董事长工作，董事长不能履行职务或者不履行职务的，由副董事长履行职务；副董事长不能履行职务或者不履行职务的，由半数以上董事共同推举一名董事履行职务。

第一百一十一条　董事会每年度至少召开两次会议，每次会议应当于会议召开十日前通知全体董事和监事。

代表十分之一以上表决权的股东、三分之一以上董事或者监事会，可以提议召开董事会临时会议。董事长应当自接到提议后十日内，召集和主持董事会会议。

董事会召开临时会议，可以另定召集董事会的通知方式和通知时限。

第一百一十二条　董事会会议应有过半数的董事出席方可举行。董事会作出决议，必须经全体董事的过半数通过。

董事会决议的表决，实行一人一票。

第一百一十三条　董事会会议，应由董事本人出席；董事因故不能出席，可以书面委托其他董事代为出席，委托书中应载明授权范围。

董事会应当对会议所议事项的决定作成会议记录，出席会议的董事应当在会议记录上签名。

董事应当对董事会的决议承担责任。董事会的决议违反法律、行政法规或者公司章程、股东大会决议，致使公司遭受严重损失的，参与决议的董事对公司负赔偿责任。但经证明在表决时曾表明异议并记载于会议记录的，该董事可以免除责任。

第一百一十四条　股份有限公司设经理，由董事会决定聘任或者解聘。

本法第五十条关于有限责任公司经理职权的规定，适用于股份有限公司经理。

第一百一十五条　公司董事会可以决定由董事会成员兼任经理。

第一百一十六条　公司不得直接或者通过子公司向董事、监事、高级管理人员提供借款。

中华人民共和国公司法

第一百一十七条  公司应当定期向股东披露董事、监事、高级管理人员从公司获得报酬的情况。

## 第四节  监 事 会

第一百一十八条  股份有限公司设监事会，其成员不得少于三人。

监事会应当包括股东代表和适当比例的公司职工代表，其中职工代表的比例不得低于三分之一，具体比例由公司章程规定。监事会中的职工代表由公司职工通过职工代表大会、职工大会或者其他形式民主选举产生。

监事会设主席一人，可以设副主席。监事会主席和副主席由全体监事过半数选举产生。监事会主席召集和主持监事会会议；监事会主席不能履行职务或者不履行职务的，由监事会副主席召集和主持监事会会议；监事会副主席不能履行职务或者不履行职务的，由半数以上监事共同推举一名监事召集和主持监事会会议。

董事、高级管理人员不得兼任监事。

本法第五十三条关于有限责任公司监事任期的规定，适用于股份有限公司监事。

第一百一十九条  本法第五十四条、第五十五条关于有限责任公司监事会职权的规定，适用于股份有限公司监事会。

监事会行使职权所必需的费用，由公司承担。

第一百二十条  监事会每六个月至少召开一次会议。监事可以提议召开临时监事会会议。

监事会的议事方式和表决程序，除本法有规定的外，由公司章程规定。

监事会决议应当经半数以上监事通过。

监事会应当对所议事项的决定作成会议记录，出席会议的监事应当在会议记录上签名。

## 第五节  上市公司组织机构的

特别规定  第一百二十一条  本法所称上市公司，是指其股票在证券交易所上市交易的股份有限公司。

第一百二十二条  上市公司在一年内购买、出售重大资产或者担保金额超过公司资产总额百分之三十的，应当由股东大会作出决议，并经出席会议的股东所持表决权的三分之二以上通过。

第一百二十三条  上市公司设独立董事，其具体办法由国务院规定。

第一百二十四条  上市公司设置董事会秘书，负责公司股东大会和董事会会议的筹备、文件保管以及公司股东资料的管理，办理信息披露事务等事宜。

第一百二十五条  上市公司董事与董事会会议决议事项所涉及的企业有关联关系的，不得对该项决议行使表决权，也不得代理其他董事行使表决权。该董事会会议由过半数的无关联关系董事出席即可举行，董事会会议所作决议须经无关联关系董事过半数通过。出席董事会的无关联关系董事人数不足三人的，应将该事项提交上市公司股东大会审议。

## 第五章  股份有限公司的股份发行和转让

### 第一节  股份发行

第一百二十六条  股份有限公司的资本划分为股份，每一股的金额相等。

公司的股份采取股票的形式。股票是公司签发的证明股东所持股份的凭证。

第一百二十七条  股份的发行，实行公平、公正的原则，同种类的每一股份应当具有同等权利。

同次发行的同种类股份，每股的发行条件和价格应当相同；任何单位或者个人所认购的股份，每股应当支付相同价额。

第一百二十八条  股票发行价格可以按票面金额，也可以超过票面金额，但不得低于票面金额。

第一百二十九条  股票采用纸面形式或者国务院证券监督管理机构规定的其他形式。

股票应当载明下列主要事项：

（一）公司名称；

中华人民共和国公司法

（二）公司成立日期；

（三）股票种类、票面金额及代表的股份数；

（四）股票的编号。

股票由法定代表人签名，公司盖章。

发起人的股票，应当标明发起人股票字样。

第一百三十条　公司发行的股票，可以为记名股票，也可以为无记名股票。

公司向发起人、法人发行的股票，应当为记名股票，并应当记载该发起人、法人的名称或者姓名，不得另立户名或者以代表人姓名记名。

第一百三十一条　公司发行记名股票的，应当置备股东名册，记载下列事项：

（一）股东的姓名或者名称及住所；

（二）各股东所持股份数；

（三）各股东所持股票的编号；

（四）各股东取得股份的日期。

发行无记名股票的，公司应当记载其股票数量、编号及发行日期。

第一百三十二条　国务院可以对公司发行本法规定以外的其他种类的股份，另行作出规定。

第一百三十三条　股份有限公司成立后，即向股东正式交付股票。公司成立前不得向股东交付股票。

第一百三十四条　公司发行新股，股东大会应当对下列事项作出决议：

（一）新股种类及数额；

（二）新股发行价格；

（三）新股发行的起止日期；

（四）向原有股东发行新股的种类及数额。

第一百三十五条　公司经国务院证券监督管理机构核准公开发行新股时，必须公告新股招股说明书和财务会计报告，并制作认股书。

本法第八十八条、第八十九条的规定适用于公司公开发行新股。

第一百三十六条　公司发行新股，可以根据公司经营情况和财务状况，确定其作价方案。

第一百三十七条　公司发行新股募足股款后，必须向公司登记机关办理变更登记，并公告。

## 第二节　股份转让

第一百三十八条　股东持有的股份可以依法转让。

第一百三十九条　股东转让其股份，应当在依法设立的证券交易所进行或者按照国务院规定的其他方式进行。

第一百四十条　记名股票，由股东以背书方式或者法律、行政法规规定的其他方式转让；转让后由公司将受让人的姓名或者名称及住所记载于股东名册。

股东大会召开前二十日内或者公司决定分配股利的基准日前五日内，不得进行前款规定的股东名册的变更登记。但是，法律对上市公司股东名册变更登记另有规定的，从其规定。

第一百四十一条　无记名股票的转让，由股东将该股票交付给受让人后即发生转让的效力。

第一百四十二条　发起人持有的本公司股份，自公司成立之日起一年内不得转让。公司公开发行股份前已发行的股份，自公司股票在证券交易所上市交易之日起一年内不得转让。

公司董事、监事、高级管理人员应当向公司申报所持有的本公司的股份及其变动情况，在任职期间每年转让的股份不得超过其所持有本公司股份总数的百分之二十五；所持本公司股份自公司股票上市交易之日起一年内不得转让。上述人员离职后半年内，不得转让其所持有的本公司股份。

公司章程可以对公司董事、监事、高级管理人员转让其所持有的本公司股份作出其他限制性规定。

第一百四十二条　公司不得收购本公司股份。但是，有下列情形之一的除外：

（一）减少公司注册资本；

（二）与持有本公司股份的其他公司合并；

（三）将股份奖励给本公司职工；

（四）股东因对股东大会作出的公司合并、分立决议持异议，要求公司收购其股份的。

公司因前款第（一）项至第（三）项的原因收购本公司股份的，应当经股东大会决议。公司依照前款规定收购本公司股份后，属于第（一）项情形的，应当自收购之日起十日内注销；属于第（二）项、第（四）项情形的，应当在六个月内转让或者注销。

公司依照第一款第（三）项规定收购的本公司股份，不得超过本公司已发行股份总额的百分之五；用于收购的资金应当从公司的税后利润中支出；所收购的股份应当在一年内转让给职工。

公司不得接受本公司的股票作为质押权的标的。

第一百四十四条　记名股票被盗、遗失或者灭失，股东可以依照《中华人民共和国民事诉讼法》规定的公示催告程序，请求人民法院宣告该股票失效。人民法院宣告该股票失效后，股东可以向公司申请补发股票。

第一百四十五条　上市公司的股票，依照有关法律、行政法规及证券交易所交易规则上市交易。

第一百四十六条　上市公司必须依照法律、行政法规的规定，公开其财务状况、经营情况及重大诉讼，在每会计年度内半年公布一次财务会计报告。

### 第六章　公司董事、监事、高级管理人员的资格和义务

第一百四十七条　有下列情形之一的，不得担任公司的董事、监事、高级管理人员：

（一）无民事行为能力或者限制民事行为能力；

（二）因贪污、贿赂、侵占财产、挪用财产或者破坏社会主义市场经济秩序，被判处刑罚，执行期满未逾五年，或者因犯罪被剥夺政治权利，执行期满未逾五年；

（三）担任破产清算的公司、企业的董事或者厂长、经理，对该公司、企业的破产负有个人责任的，自该公司、企业破产清算完结之日起未逾三年；

（四）担任因违法被吊销营业执照、责令关闭的公司、企业的法定代表人，并负有个人责任的，自该公司、企业被吊销营业执照之日起未逾三年；

（五）个人所负数额较大的债务到期未清偿。

公司违反前款规定选举、委派董事、监事或者聘任高级管理人员的，该选举、委派或者聘任无效。

董事、监事、高级管理人员在任职期间出现本条第一款所列情形的，公司应当解除其职务。

第一百四十八条　董事、监事、高级管理人员应当遵守法律、行政法规和公司章程，对公司负有忠实义务和勤勉义务。

董事、监事、高级管理人员不得利用职权收受贿赂或者其他非法收入，不得侵占公司的财产。

第一百四十九条　董事、高级管理人员不得有下列行为：

（一）挪用公司资金；

（二）将公司资金以其个人名义或者以其他个人名义开立账户存储；

（三）违反公司章程的规定，未经股东会、股东大会或者董事会同意，将公司资金借贷给他人或者以公司财产为他人提供担保；

（四）违反公司章程的规定或者未经股东会、股东大会同意，与本公司订立合同或者进行交易；

（五）未经股东会或者股东大会同意，利用职务便利为自己或者他人谋取属于公司的商业机会，自营或者为他人经营与所任职公司同类的业务；

（六）接受他人与公司交易的佣金归为己有；

2/27/2019                                                                中华人民共和国公司法

（七）擅自披露公司秘密；

（八）违反对公司忠实义务的其他行为。

董事、高级管理人员违反前款规定所得的收入应当归公司所有。

第一百五十条　董事、监事、高级管理人员执行公司职务时违反法律、行政法规或者公司章程的规定，给公司造成损失的，应当承担赔偿责任。

第一百五十一条　股东会或者股东大会要求董事、监事、高级管理人员列席会议的，董事、监事、高级管理人员应当列席并接受股东的质询。

董事、高级管理人员应当如实向监事会或者不设监事会的有限责任公司的监事提供有关情况和资料，不得妨碍监事会或者监事行使职权。

第一百五十二条　董事、高级管理人员有本法第一百五十条规定的情形的，有限责任公司的股东、股份有限公司连续一百八十日以上单独或者合计持有公司百分之一以上股份的股东，可以书面请求监事会或者不设监事会的有限责任公司的监事向人民法院提起诉讼；监事有本法第一百五十条规定的情形的，前述股东可以书面请求董事会或者不设董事会的有限责任公司的执行董事向人民法院提起诉讼。

监事会、不设监事会的有限责任公司的监事，或者董事会、执行董事收到前款规定的股东书面请求后拒绝提起诉讼，或者自收到请求之日起三十日内未提起诉讼，或者情况紧急、不立即提起诉讼将会使公司利益受到难以弥补的损害的，前款规定的股东有权为了公司的利益以自己的名义直接向人民法院提起诉讼。

他人侵犯公司合法权益，给公司造成损失的，本条第一款规定的股东可以依照前两款的规定向人民法院提起诉讼。

第一百五十三条　董事、高级管理人员违反法律、行政法规或者公司章程的规定，损害股东利益的，股东可以向人民法院提起诉讼。

## 第七章　公司债券

第一百五十四条　本法所称公司债券，是指公司依照法定程序发行、约定在一定期限还本付息的有价证券。

公司发行公司债券应当符合《中华人民共和国证券法》规定的发行条件。

第一百五十五条　发行公司债券的申请经国务院授权的部门核准后，应当公告公司债券募集办法。

公司债券募集办法中应当载明下列主要事项：

（一）公司名称；

（二）债券募集资金的用途；

（三）债券总额和债券的票面金额；

（四）债券利率的确定方式；

（五）还本付息的期限和方式；

（六）债券担保情况；

（七）债券的发行价格、发行的起止日期；

（八）公司净资产额；

（九）已发行的尚未到期的公司债券总额；

（十）公司债券的承销机构。

第一百五十六条　公司以实物券方式发行公司债券的，必须在债券上载明公司名称、债券票面金额、利率、偿还期限等事项，并由法定代表人签名，公司盖章。

第一百五十七条　公司债券，可以为记名债券，也可以为无记名债券。

第一百五十八条　公司发行公司债券应当置备公司债券存根簿。

发行记名公司债券的，应当在公司债券存根簿上载明下列事项：

（一）债券持有人的姓名或者名称及住所；

（二）债券持有人取得债券的日期及债券的编号；

（三）债券总额、债券的票面金额、利率、还本付息的期限和方式；

（四）债券的发行日期。

发行无记名公司债券的，应当在公司债券存根簿上载明债券总额、利率、偿还期限和方式、发行日期及债券的编号。

第一百五十九条　记名公司债券的登记结算机构应当建立债券登记、存管、付息、兑付等相关制度。

第一百六十条　公司债券可以转让，转让价格由转让人与受让人约定。

公司债券在证券交易所上市交易的，按照证券交易所的交易规则转让。

第一百六十一条　记名公司债券，由债券持有人以背书方式或者法律、行政法规规定的其他方式转让；转让后由公司将受让人的姓名或者名称及住所记载于公司债券存根簿。

无记名公司债券的转让，由债券持有人将该债券交付给受让人后即发生转让的效力。

第一百六十二条　上市公司经股东大会决议可以发行可转换为股票的公司债券，并在公司债券募集办法中规定具体的转换办法。上市公司发行可转换为股票的公司债券，应当报国务院证券监督管理机构核准。

发行可转换为股票的公司债券，应当在债券上标明可转换公司债券字样，并在公司债券存根簿上载明可转换公司债券的数额。

第一百六十三条　发行可转换为股票的公司债券的，公司应当按照其转换办法向债券持有人换发股票，但债券持有人对转换股票或者不转换股票有选择权。

## 第八章　公司财务、会计

第一百六十四条　公司应当依照法律、行政法规和国务院财政部门的规定建立本公司的财务、会计制度。

第一百六十五条　公司应当在每一会计年度终了时编制财务会计报告，并依法经会计师事务所审计。

财务会计报告应当依照法律、行政法规和国务院财政部门的规定制作。

第一百六十六条　有限责任公司应当依照公司章程规定的期限将财务会计报告送交各股东。

股份有限公司的财务会计报告应当在召开股东大会年会的二十日前置备于本公司，供股东查阅；公开发行股票的股份有限公司必须公告其财务会计报告。

第一百六十七条　公司分配当年税后利润时，应当提取利润的百分之十列入公司法定公积金。公司法定公积金累计额为公司注册资本的百分之五十以上的，可以不再提取。

公司的法定公积金不足以弥补以前年度亏损的，在依照前款规定提取法定公积金之前，应当先用当年利润弥补亏损。

公司从税后利润中提取法定公积金后，经股东会或者股东大会决议，还可以从税后利润中提取任意公积金。

公司弥补亏损和提取公积金后所余税后利润，有限责任公司依照本法第三十五条的规定分配；股份有限公司按照股东持有的股份比例分配，但股份有限公司章程规定不按持股比例分配的除外。

股东会、股东大会或者董事会违反前款规定，在公司弥补亏损和提取法定公积金之前向股东分配利润的，股东必须将违反规定分配的利润退还公司。

公司持有的本公司股份不得分配利润。

第一百六十八条　股份有限公司以超过股票票面金额的发行价格发行股份所得的溢价款以及国务院财政部门规定列入资本公积金的其他收入，应当列为公司资本公积金。

第一百六十九条　公司的公积金用于弥补公司的亏损、扩大公司生产经营或者转为增加公司资本。但是，资本公积金不得用于弥补公司的亏损。

法定公积金转为资本时，所留存的该项公积金不得少于转增前公司注册资本的百分之二十五。

第一百七十条　公司聘用、解聘承办公司审计业务的会计师事务所，依照公司章程的规定，由股东会、股东大会或者董事会决定。

公司股东会、股东大会或者董事会就解聘会计师事务所进行表决时，应当允许会计师事务所陈述意见。

2/27/2019 中华人民共和国公司法

第一百七十一条　公司应当向聘用的会计师事务所提供真实、完整的会计凭证、会计账簿、财务会计报告及其他会计资料，不得拒绝、隐匿、谎报。

第一百七十二条　公司除法定的会计账簿外，不得另立会计账簿。

对公司资产，不得以任何个人名义开立账户存储。

## 第九章　公司合并、分立、增资、减资

第一百七十三条　公司合并可以采取吸收合并或者新设合并。

一个公司吸收其他公司为吸收合并，被吸收的公司解散。两个以上公司合并设立一个新的公司为新设合并，合并各方解散。

第一百七十四条　公司合并，应当由各方签订合并协议，并编制资产负债表及财产清单。公司应当自作出合并决议之日起十日内通知债权人，并于三十日内在报纸上公告。债权人自接到通知书之日起三十日内，未接到通知书的自公告之日起四十五日内，可以要求公司清偿债务或者提供相应的担保。

第一百七十五条　公司合并时，合并各方的债权、债务，应当由合并后存续的公司或者新设的公司承继。

第一百七十六条　公司分立，其财产作相应的分割。

公司分立，应当编制资产负债表及财产清单。公司应当自作出分立决议之日起十日内通知债权人，并于三十日内在报纸上公告。

第一百七十七条　公司分立前的债务由分立后的公司承担连带责任。但是，公司在分立前与债权人就债务清偿达成的书面协议另有约定的除外。

第一百七十八条　公司需要减少注册资本时，必须编制资产负债表及财产清单。

公司应当自作出减少注册资本决议之日起十日内通知债权人，并于三十日内在报纸上公告。债权人自接到通知书之日起三十日内，未接到通知书的自公告之日起四十五日内，有权要求公司清偿债务或者提供相应的担保。

公司减资后的注册资本不得低于法定的最低限额。

第一百七十九条　有限责任公司增加注册资本时，股东认缴新增资本的出资，依照本法设立有限责任公司缴纳出资的有关规定执行。

股份有限公司为增加注册资本发行新股时，股东认购新股，依照本法设立股份有限公司缴纳股款的有关规定执行。

第一百八十条　公司合并或者分立，登记事项发生变更的，应当依法向公司登记机关办理变更登记；公司解散的，应当依法办理公司注销登记；设立新公司的，应当依法办理公司设立登记。

公司增加或者减少注册资本，应当依法向公司登记机关办理变更登记。

## 第十章　公司解散和清算

第一百八十一条　公司因下列原因解散：

（一）公司章程规定的营业期限届满或者公司章程规定的其他解散事由出现；

（二）股东会或者股东大会决议解散；

（三）因公司合并或者分立需要解散；

（四）依法被吊销营业执照、责令关闭或者被撤销；

（五）人民法院依照本法第一百八十三条的规定予以解散。

第一百八十二条　公司有本法第一百八十一条第（一）项情形的，可以通过修改公司章程而存续。

依照前款规定修改公司章程，有限责任公司须经持有三分之二以上表决权的股东通过，股份有限公司须经出席股东大会会议的股东所持表决权的三分之二以上通过。

第一百八十三条　公司经营管理发生严重困难，继续存续会使股东利益受到重大损失，通过其他途径不能解决的，持有公司全部股东表决权百分之十以上的股东，可以请求人民法院解散公司。

第一百八十四条　公司因本法第一百八十一条第（一）项、第（二）项、第（四）项、第（五）项规定而解散的，应当在解散事由出现之日起十五日内成立清算组，开始清算。有限责任公司的清算组由股东组成，股份有限公司的清算组由董事或者股东大会确定的人员组成。逾期不成立清

2/27/2019                                                                中华人民共和国公司法

算组进行清算，债权人可以申请人民法院指定有关人员组成清算组进行清算。人民法院应当受理该申请，并及时组织清算组进行清算。

第一百八十五条　清算组在清算期间行使下列职权：

（一）清理公司财产，分别编制资产负债表和财产清单；

（二）通知、公告债权人；

（三）处理与清算有关的公司未了结的业务；

（四）清缴所欠税款以及清算过程中产生的税款；

（五）清理债权、债务；

（六）处理公司清偿债务后的剩余财产；

（七）代表公司参与民事诉讼活动。

第一百八十六条　清算组应当自成立之日起十日内通知债权人，并于六十日内在报纸上公告。债权人应当自接到通知书之日起三十日内，未接到通知书的自公告之日起四十五日内，向清算组申报其债权。

债权人申报债权，应当说明债权的有关事项，并提供证明材料。清算组应当对债权进行登记。

在申报债权期间，清算组不得对债权人进行清偿。

第一百八十七条　清算组在清理公司财产、编制资产负债表和财产清单后，应当制定清算方案，并报股东会、股东大会或者人民法院确认。

公司财产在分别支付清算费用、职工的工资、社会保险费用和法定补偿金，缴纳所欠税款，清偿公司债务后的剩余财产，有限责任公司按照股东的出资比例分配，股份有限公司按照股东持有的股份比例分配。

清算期间，公司存续，但不得开展与清算无关的经营活动。公司财产在未依照前款规定清偿前，不得分配给股东。

第一百八十八条　清算组在清理公司财产、编制资产负债表和财产清单后，发现公司财产不足清偿债务的，应当依法向人民法院申请宣告破产。

公司经人民法院裁定宣告破产后，清算组应当将清算事务移交给人民法院。

第一百八十九条　公司清算结束后，清算组应当制作清算报告，报股东会、股东大会或者人民法院确认，并报送公司登记机关，申请注销公司登记，公告公司终止。

第一百九十条　清算组成员应当忠于职守，依法履行清算义务。

清算组成员不得利用职权收受贿赂或者其他非法收入，不得侵占公司财产。

清算组成员因故意或者重大过失给公司或者债权人造成损失的，应当承担赔偿责任。

第一百九十一条　公司被依法宣告破产的，依照有关企业破产的法律实施破产清算。

<h3 style="text-align:center">第十一章　外国公司的分支机构</h3>

第一百九十二条　本法所称外国公司是指依照外国法律在中国境外设立的公司。

第一百九十三条　外国公司在中国境内设立分支机构，必须向中国主管机关提出申请，并提交其公司章程、所属国的公司登记证书等有关文件，经批准后，向公司登记机关依法办理登记，领取营业执照。

外国公司分支机构的审批办法由国务院另行规定。

第一百九十四条　外国公司在中国境内设立分支机构，必须在中国境内指定负责该分支机构的代表人或者代理人，并向该分支机构拨付与其所从事的经营活动相适应的资金。

对外国公司分支机构的经营资金需要规定最低限额的，由国务院另行规定。

第一百九十五条　外国公司的分支机构应当在其名称中标明该外国公司的国籍及责任形式。

外国公司的分支机构应当在本机构中置备该外国公司章程。

第一百九十六条　外国公司在中国境内设立的分支机构不具有中国法人资格。

外国公司对其分支机构在中国境内进行经营活动承担民事责任。

第一百九十七条　经批准设立的外国公司分支机构，在中国境内从事业务活动，必须遵守中国的法律，不得损害中国的社会公共利益，其合法权益受中国法律保护。

第一百九十八条　外国公司撤销其在中国境内的分支机构时，必须依法清偿债务，依照本法有关公司清算程序的规定进行清算。未清偿债务之前，不得将其分支机构的财产移至中国境外。

## 第十二章　法律责任

第一百九十九条　违反本法规定，虚报注册资本、提交虚假材料或者采取其他欺诈手段隐瞒重要事实取得公司登记的，由公司登记机关责令改正，对虚报注册资本的公司，处以虚报注册资本金额百分之五以上百分之十五以下的罚款；对提交虚假材料或者采取其他欺诈手段隐瞒重要事实的公司，处以五万元以上五十万元以下的罚款；情节严重的，撤销公司登记或者吊销营业执照。

第二百条　公司的发起人、股东虚假出资，未交付或者未按期交付作为出资的货币或者非货币财产的，由公司登记机关责令改正，处以虚假出资金额百分之五以上百分之十五以下的罚款。

第二百零一条　公司的发起人、股东在公司成立后，抽逃其出资的，由公司登记机关责令改正，处以所抽逃出资金额百分之五以上百分之十五以下的罚款。

第二百零二条　公司违反本法规定，在法定的会计账簿以外另立会计账簿的，由县级以上人民政府财政部门责令改正，处以五万元以上五十万元以下的罚款。

第二百零三条　公司在依法向有关主管部门提供的财务会计报告等材料上作虚假记载或者隐瞒重要事实的，由有关主管部门对直接负责的主管人员和其他直接责任人员处以三万元以上三十万元以下的罚款。

第二百零四条　公司不依照本法规定提取法定公积金的，由县级以上人民政府财政部门责令如数补足应当提取的金额，可以对公司处以二十万元以下的罚款。

第二百零五条　公司在合并、分立、减少注册资本或者进行清算时，不依照本法规定通知或者公告债权人的，由公司登记机关责令改正，对公司处以一万元以上十万元以下的罚款。

公司在进行清算时，隐匿财产，对资产负债表或者财产清单作虚假记载或者在未清偿债务前分配公司财产的，由公司登记机关责令改正，对公司处以隐匿财产或者未清偿债务前分配公司财产金额百分之五以上百分之十以下的罚款；对直接负责的主管人员和其他直接责任人员处以一万元以上十万元以下的罚款。

第二百零六条　公司在清算期间开展与清算无关的经营活动的，由公司登记机关予以警告，没收违法所得。

第二百零七条　清算组不依照本法规定向公司登记机关报送清算报告，或者报送清算报告隐瞒重要事实或者有重大遗漏的，由公司登记机关责令改正。

清算组成员利用职权徇私舞弊、谋取非法收入或者侵占公司财产的，由公司登记机关责令退还公司财产，没收违法所得，并可以处以违法所得一倍以上五倍以下的罚款。

第二百零八条　承担资产评估、验资或者验证的机构提供虚假材料的，由公司登记机关没收违法所得，处以违法所得一倍以上五倍以下的罚款，并可以由有关主管部门依法责令该机构停业、吊销直接责任人员的资格证书，吊销营业执照。

承担资产评估、验资或者验证的机构因过失提供有重大遗漏的报告的，由公司登记机关责令改正，情节较重的，处以所得收入一倍以上五倍以下的罚款，并可以由有关主管部门依法责令该机构停业、吊销直接责任人员的资格证书，吊销营业执照。

承担资产评估、验资或者验证的机构因其出具的评估结果、验资或者验证证明不实，给公司债权人造成损失的，除能够证明自己没有过错的外，在其评估或者证明不实的金额范围内承担赔偿责任。

第二百零九条　公司登记机关对不符合本法规定条件的登记申请予以登记，或者对符合本法规定条件的登记申请不予登记的，对直接负责的主管人员和其他直接责任人员，依法给予行政处分。

第二百一十条　公司登记机关的上级部门强令公司登记机关对不符合本法规定条件的登记申请予以登记，或者对符合本法规定条件的登记申请不予登记的，或者对违法登记进行包庇的，对直接负责的主管人员和其他直接责任人员依法给予行政处分。

2/27/2019 中华人民共和国公司法

第二百一十一条　未依法登记为有限责任公司或者股份有限公司，而冒用有限责任公司或者股份有限公司名义的，或者未依法登记为有限责任公司或者股份有限公司的分公司，而冒用有限责任公司或者股份有限公司的分公司名义的，由公司登记机关责令改正或者予以取缔，可以并处十万元以下的罚款。

第二百一十二条　公司成立后无正当理由超过六个月未开业的，或者开业后自行停业连续六个月以上的，可以由公司登记机关吊销营业执照。

公司登记事项发生变更时，未依照本法规定办理有关变更登记的，由公司登记机关责令限期登记；逾期不登记的，处以一万元以上十万元以下的罚款。

第二百一十三条　外国公司违反本法规定，擅自在中国境内设立分支机构的，由公司登记机关责令改正或者关闭，可以并处五万元以上二十万元以下的罚款。

第二百一十四条　利用公司名义从事危害国家安全、社会公共利益的严重违法行为的，吊销营业执照。

第二百一十五条　公司违反本法规定，应当承担民事赔偿责任和缴纳罚款、罚金的，其财产不足以支付时，先承担民事赔偿责任。

第二百一十六条　违反本法规定，构成犯罪的，依法追究刑事责任。

## 第十三章　附　则

第二百一十七条　本法下列用语的含义：

（一）高级管理人员，是指公司的经理、副经理、财务负责人，上市公司董事会秘书和公司章程规定的其他人员。

（二）控股股东，是指其出资额占有限责任公司资本总额百分之五十以上或者其持有的股份占股份有限公司股本总额百分之五十以上的股东；出资额或者持有股份的比例虽然不足百分之五十，但依其出资额或者持有的股份所享有的表决权已足以对股东会、股东大会的决议产生重大影响的股东。

（三）实际控制人，是指虽不是公司的股东，但通过投资关系、协议或者其他安排，能够实际支配公司行为的人。

（四）关联关系，是指公司控股股东、实际控制人、董事、监事、高级管理人员与其直接或者间接控制的企业之间的关系，以及可能导致公司利益转移的其他关系。但是，国家控股的企业之间不仅因为同受国家控股而具有关联关系。

第二百一十八条　外商投资的有限责任公司和股份有限公司适用本法；有关外商投资的法律另有规定的，适用其规定。

第二百一十九条　本法自2006年1月1日起施行。

关于我们 ｜ 联系我们　法律声明

版权所有：中国证券监督管理委员会 京ICP备 05035542号

# EXHIBIT 7

**Please note: <u>Chinese version</u> is binding**

**This translation is furnished for information purposes only, and the original Chinese text is binding in all respects.**

Code of Corporate Governance for Listed Companies

Preface

In accordance with the basic principles of the Company Law, the Securities Law and other relevant laws and regulations, as well as the commonly accepted standards in international corporate governance, the Code of Corporate Governance for Listed Companies (hereinafter referred to as "the Code") is formulated to promote the establishment and improvement of modern enterprise system by listed companies, to standardize the operation of listed companies and to bring forward the healthy development of the securities market of our country.

The Code sets forth, among other things, the basic principles for corporate governance of listed companies in our country, the means for the protection of investors' interests and rights, the basic behavior rules and moral standards for directors, supervisors, managers and other senior management members of listed companies.

The Code is applicable to all listed companies within the boundary of the People's Republic of China. Listed companies shall act in the spirit of the Code in their efforts to improve corporate governance. Requirements of the Code shall be embodied when listed companies formulate or amend their articles of association or rules of governance. The Code is the major measuring standard for evaluating whether a listed company has a good corporate governance structure, and if major problems exist with the corporate governance structure of a listed company, the securities supervision and regulation authorities may instruct the company to make corrections in accordance with the Code.

Chapter 1. Shareholders and Shareholders' Meetings

(1) Rights of Shareholders

1. As the owner of a company, the shareholders shall enjoy the legal rights stipulated by laws, administrative regulations and the company's articles of association. A listed company shall establish a corporate governance structure sufficient for ensuring the full exercise of shareholders' rights.

1

D☐P☐ Exhibit 8415
Deponent  Wang
Date 3/7/19  Rptr BW

2. The corporate governance structure of a company shall ensure fair treatment toward all shareholders, especially minority shareholders. All shareholders are to enjoy equal rights and to bear the corresponding duties based on the shares they hold.

3. Shareholders shall have the right to know about and the right to participate in major matters of the company set forth in the laws, administrative regulations and articles of association. A listed company shall establish efficient channels of communication with its shareholders.

4. Shareholders shall have the right to protect their interests and rights through civil litigation or other legal means in accordance with laws and administrative regulations. In the event the resolutions of shareholders' meetings or the resolutions of the board of directors are in breach of laws and administrative regulations or infringe on shareholders' legal interests and rights, the shareholders shall have the right to initiate litigation to stop such breach or infringement. The directors, supervisors and managers of the company shall bear the liability of compensation in cases where they violate laws, administrative regulations or articles of association and cause damages to the company during the performance of their duties. Shareholders shall have the right to request the company to sue for such compensation in accordance with law.

(2) Rules for Shareholders' Meetings

5. A listed company shall set out convening and voting procedures for shareholders' meetings in its articles of association, including rules governing such matters as notification, registration, review of proposals, voting, counting of votes, announcement of voting results, formulation of resolutions, recording of minutes and signatories, public announcement, etc.

6. The board of directors shall earnestly study and arrange the agenda for a shareholders' meeting. During a shareholders' meeting, each item on the agenda shall be given a reasonable amount of time for discussion.

7. A listed company shall state in its articles of association the principles for the shareholders' meeting to grant authorization to the board of directors. The content of such authorization shall be explicit and concrete.

8. Besides ensuring that shareholders' meetings proceed legally and effectively, a listed company shall make every effort, including fully utilizing modern information technology means, to increase the number of shareholders attending the shareholders' meetings. The time and location of the shareholders' meetings shall be set so as to allow the maximum number of

shareholders to participate.

9. The shareholders can either be present at the shareholders' meetings in person or they may appoint a proxy to vote on their behalf, and both means of voting possess the same legal effect.

10. The board of directors, independent directors and qualified shareholders of a listed company may solicit for the shareholders' right to vote in a shareholders' meeting. No payments shall be made to the shareholders for such solicitation, and sufficient information shall be provided to persons whose voting rights are being solicited.

11. Institutional investors shall play a role in the appointment of company directors, the compensation and supervision of management and major decision-making processes.

(3) Related Party Transactions

12. Written agreements shall be entered into for related party transactions among a listed company and its related parties. Such agreements shall observe principles of equality, voluntarity, and making compensation for equal value. The contents of such agreements shall be specific and concrete. Matters such as the signing, amendment, termination and execution of such agreements shall be disclosed by the listed company in accordance with relevant regulations.

13. Efficient measures shall be adopted by a listed company to prevent its related parties from interfering with the operation of the company and damaging the company's interests by monopolizing purchase or sales channels. Related party transactions shall observe commercial principles. In principle, the prices for related party transactions shall not deviate from an independent third party's market price or charging standard. The company shall fully disclose the basis for pricing for related party transactions.

14. The assets of a listed company belong to the company. The company shall adopt efficient measures to prevent its shareholders and their affiliates from misappropriating or transferring the capital, assets or other resources of the company through various means. A listed company shall not provide financial guarantees for its shareholders or their related parties.

Chapter 2. Listed Company and Its Controlling Shareholders

(1) Behavior Rules for Controlling Shareholders

15. During the restructuring and reorganization of a company that plans to list, the controlling shareholders shall observe the principle of "first restructuring, then listing", and shall emphasize the establishment of a reasonable shareholding structure that has checks and balances.

16. During the restructuring and reorganization of a company that plans to list, the controlling shareholders shall sever the company's social functions and strip out non-operational assets. Non-operational institutions, welfare institutions and their facilities shall not be included in the listed company.

17. Controlling shareholders' remaining enterprises or institutions that provide services for the major business of the listed company may be restructured into specialized companies in accordance with the principles of specialization and market practice, and may enter into relevant agreements with the listed company in accordance with commercial principles. Remaining enterprises engaged in other businesses shall increase their capability of independent development. Remaining enterprises not capable to continue operation shall exit the market, through such channels as bankruptcy, in accordance with relevant laws and regulations. Enterprises meeting certain requirements during restructuring may sever all their social functions and disperse surplus employees at one time and keep no remaining enterprises.

18. The controlling shareholders shall support the listed company to further reform labor, personnel and distribution systems, to transform operational and managerial mechanisms, and to establish such systems as: management selection through bidding and competition, with the chance for both promotion and demotion; employment of employees on the basis of competitive selection, with the chance for both employment and termination of employment; income distribution scheme that provides sufficient incentive, with the chance to both increase and decrease the remuneration; etc.

19. The controlling shareholders owe a duty of good faith toward the listed company and other shareholders. The controlling shareholders of a listed company shall strictly comply with laws and regulations while exercising their rights as investors, and shall be prevented from damaging the listed company's or other shareholders' legal rights and interests, through means such as assets restructuring, or from taking advantage of their privileged position to gain additional benefit.

20. The controlling shareholders shall nominate the candidates for directors and supervisors in strict compliance with the terms and procedures provided for by laws, regulations and the company's articles of association. The nominated candidates shall possess certain relevant professional knowledge and the capability to make decisions or supervise. The resolutions

4

made by the shareholders' meetings electing personnel or the board of directors' resolutions appointing personnel shall not be subject to approval procedures by the controlling shareholders. The controlling shareholders are forbidden to appoint senior management personnel by circumventing the shareholders' meetings or the board of directors.

21. The important decisions of a listed company shall be made through a shareholders' meeting or board of directors' meeting in accordance with law. The controlling shareholders shall not directly or indirectly interfere with the company's decisions or business activities conducted in accordance with laws; nor shall they impair the listed company's or other shareholders' rights and interests.

(2) Independence of Listed Company

22. A listed company shall be separated from its controlling shareholders in such aspects as personnel, assets and financial affairs, shall be independent in institution and business, shall practice independent business accounting, and shall independently bear risks and obligations.

23. The personnel of a listed company shall be independent from the controlling shareholders. The management, financial officers, sales officers and secretary of the board of directors of the listed company shall not take posts other than as a director in a controlling shareholder's entities. In the case where a member of a controlling shareholder's senior management concurrently holds the position of director of the listed company, such member shall ensure adequate time and energy to perform the work for the listed company.

24. The assets invested by a controlling shareholder in a listed company shall be independent, complete and with clear indication of ownership. Where controlling shareholders invest non-cash assets into a listed company, ownership transfer procedures shall be completed and explicit boundaries for such assets shall be clarified. The listed company shall independently register such assets, set up independent account for such assets, and carry out independent business accounting and management for such assets. The controlling shareholders shall not misappropriate or control such assets or interfere with the listed company's management of such assets.

25. A listed company shall establish sound financial and accounting management systems in accordance with laws and regulations and shall conduct independent business accounting. Controlling shareholders shall respect the financial independence of the company and shall not interfere with the financial and accounting activities of the company.

5

26. The board of directors, the supervisory committee and other internal offices of a listed company shall operate in an independent manner. There shall be no subordination relationship between, on the one hand, a listed company or its internal offices and, on the other hand, the company's controlling shareholders or their internal offices, and the latter shall not give plans or instructions concerning the listed company's business operation to the former, nor shall the latter interfere with the independent operation of the former in any other manner.

27. A listed company's business shall be completely independent from that of its controlling shareholders. Controlling shareholders and their subsidiaries shall not engage in the same or similar business as that of the listed company. Controlling shareholders shall adopt efficient measures to avoid horizontal competition with the listed company.

## Chapter 3. Directors and Board of Directors

### (1) Election Procedures for Directors

28. A company shall establish a standardized and transparent procedure for director election in its articles of association, so as to ensure the openness, fairness, impartialness and independence of the election.

29. Detailed information regarding the candidates for directorship shall be disclosed prior to the convening of the shareholders' meeting to ensure adequate understanding of the candidates by the shareholders at the time of voting.

30. Candidates for directorship shall give written undertakings to accept their nomination, to warrant the truthfulness and completeness of the candidate's information that has been publicly disclosed and to promise to earnestly perform their duties once elected.

31. The election of directors shall fully reflect the opinions of minority shareholders. A cumulative voting system shall be earnestly advanced in shareholders' meetings for the election of directors. Listed companies that are more than 30% owned by controlling shareholders shall adopt a cumulative voting system, and the companies that do adopt such a system shall stipulate the implementing rules for such cumulative voting system in their articles of association.

32. Appointment agreements shall be entered into by a listed company and its directors to clarify such matters as the rights and obligations between the company and the director, the term of the directorship, the director's

6

liabilities in case of breach of laws, regulations or articles of association, and the compensation from the company in case of early termination of the appointment agreement for cause by the company.

(2) The Duties and Responsibilities of Directors

33. Directors shall faithfully, honestly and diligently perform their duties for the best interests of the company and all the shareholders.

34. Directors shall ensure adequate time and energy for the performance of their duties.

35. Directors shall attend the board of directors meetings in a diligent and responsible manner, and shall express their clear opinions on the topics discussed. When unable to attend a board of directors meeting, a director may authorize another director in writing to vote on his behalf and the director who makes such authorization shall be responsible for the vote.

36. The board of directors shall abide by relevant laws, regulations, rules and the company's articles of association, and shall strictly fulfill the undertakings they made publicly.

37. Directors shall earnestly attend relevant trainings to learn about the rights, obligations and duties of a director, to familiarize themselves with relevant laws and regulations and to master relevant knowledge necessary for acting as directors.

38. In cases where the resolutions of board of directors violate laws or regulations or a listed company's articles of association and cause losses to the listed company, directors responsible for making such resolutions shall be liable for compensation, except those proved to have objected and the objections of whom have been recorded in the minutes.

39. After approval by the shareholders' meeting, a listed company may purchase liability insurance for directors. Such insurance shall not cover the liabilities arising in connection with directors' violation of laws, regulations or the company's articles of association.

(3) Duties and Composition of the Board of Directors

40. The number of directors and the structure of the board of directors shall be in compliance with laws and regulations and shall ensure the effective discussion and efficient, timely and prudent decision-making process of the board of directors.

7

41. The board of directors shall possess proper professional background. The directors shall possess adequate knowledge, skills and qualities to perform their duties.

42. The board of directors shall be made accountable to shareholders. A listed company's corporate governance framework shall ensure that the board of directors can exercise its power in accordance with laws, administrative regulations and the company's articles of association.

43. The board of directors shall earnestly perform its duties as stipulated by laws, regulations and the company's articles of association, shall ensure that the company complies with laws, regulations and its articles of association, shall treat all the shareholders equally and shall be concerned with the interests of stakeholders.

(4) Rules and Procedure of the Board of Directors

44. A listed company shall formulate standardized rules of procedure for its board of directors in its articles of association to ensure the board of directors' efficient function and rational decisions.

45. The board of directors shall meet periodically and shall convene interim meetings in a timely manner when necessary. Each board of directors' meeting shall have a pre-decided agenda.

46. The meetings of the board of directors of a listed company shall be conducted in strict compliance with prescribed procedures. The board of directors shall send notice to all directors in advance, at the stipulated time, and shall provide sufficient materials, including relevant background materials for the items on the agenda and other information and data that may assist the directors in their understanding of the company's business development. When two or more independent directors deem the materials inadequate or unclear, they may jointly submit a written request to postpone the meeting or to postpone the discussion of the related matter, which shall be granted by the board of directors.

47. The minutes of the board of directors' meetings shall be complete and accurate. The secretary of the board of directors shall carefully organize the minutes and the records of discussed matters. Directors that have attended the meetings and the person who drafted the minutes shall sign the minutes. The minutes of the board of directors' meetings shall be properly maintained and stored as important records of the company, and may be used as an important basis for clarifying responsibilities of individual directors in the future.

48. In the case of authorization to the chairman of the board of directors to exercise part of the board of directors' power of office when the board of directors is not in session, clear rules and principles for such authorization shall be stated in the articles of association of the listed company. The content of such authorization shall be clear and specific. All matters related to material interests of the company shall be submitted to the board of directors for collective decision.

(5) Independent Directors

49. A listed company shall introduce independent directors to its board of directors in accordance with relevant regulations. Independent directors shall be independent from the listed company that employs them and the company's major shareholders. An independent director may not hold any other position apart from independent director in the listed company.

50. The independent directors shall bear the duties of good faith and due diligence toward the listed company and all the shareholders. They shall earnestly perform their duties in accordance with laws, regulations and the company's articles of association, shall protect the overall interests of the company, and shall be especially concerned with protecting the interests of minority shareholders from being infringed. Independent directors shall carry out their duties independently and shall not subject themselves to the influence of the company's major shareholders, actual controllers, or other entities or persons who are interested parties of the listed company.

51. Relevant laws and regulations shall be complied with for matters such as the qualifications, procedure of election and replacement, and duties of independent directors.

(6) Specialized Committees of the Board of Directors

52. The board of directors of a listed company may establish a corporate strategy committee, an audit committee, a nomination committee, a remuneration and appraisal committee and other special committees in accordance with the resolutions of the shareholders' meetings. All committees shall be composed solely of directors. The audit committee, the nomination committee and the remuneration and appraisal committee shall be chaired by an independent director, and independent directors shall constitute the majority of the committees. At least one independent director from the audit committee shall be an accounting professional.

53. The main duties of the corporate strategy committee shall be to conduct research and make recommendations on the long-term strategic

9

development plans and major investment decisions of the company.

54. The main duties of the audit committee are (1) to recommend the engagement or replacement of the company's external auditing institutions; (2) to review the internal audit system and its execution; (3) to oversee the interaction between the company's internal and external auditing institutions; (4) to inspect the company's financial information and its disclosure; and (5) to monitor the company's internal control system.

55. The main duties of the nomination committee are (1) to formulate standards and procedures for the election of directors and managers and make recommendations; (2) to extensively seek qualified candidates for directorship and management; and (3) to review the candidates for directorship and management and make recommendations.

56. The main duties of the remuneration and appraisal committee are (1) to study the appraisal standard for directors and management personnel, to conduct appraisal and to make recommendations; and (2) to study and review the remuneration policies and schemes for directors and senior management personnel.

57. Each specialized committee may engage intermediary institutions to provide professional opinions, the relevant expenses to be borne by the company.

58. Each specialized committee shall be accountable to the board of directors. All proposals by specialized committees shall be submitted to the board of directors for review and approval.

Chapter 4. The Supervisors and the Supervisory Board

(1) Duties and Responsibilities of the Supervisory Board

59. The supervisory board of a listed company shall be accountable to all shareholders. The supervisory board shall supervise the corporate finance, the compliance and legitimacy of directors, managers and other senior management personnel's performance of duties, and shall protect the company's and the shareholders' legitimate rights and interests.

60. Supervisors shall have the right to learn about the operating status of the listed company and shall have the corresponding obligation of confidentiality. The supervisory board may independently hire intermediary institutions to provide professional opinions.

61. A listed company shall adopt measures to ensure supervisors' right to learn about company's matters and shall provide necessary assistance to supervisors for their normal performance of duties. No one shall interfere with or obstruct supervisors' work. A supervisor's reasonable expenses necessary to perform their duties shall be borne by the listed company.

62. The record of the supervisory committee's supervision as well as the results of financial or other specific investigations shall be used as an important basis for performance assessment of directors, managers and other senior management personnel.

63. The supervisory board may report directly to securities regulatory authorities and other related authorities as well as reporting to the board of directors and the shareholders' meetings when the supervisory board learns of any violation of laws, regulations or the company's articles of association by directors, managers or other senior management personnel.

(2) The Composition and Steering of the Supervisory Board

64. Supervisors shall have professional knowledge or work experience in such areas as law and accounting. The members and the structure of the supervisory board shall ensure its capability to independently and efficiently conduct its supervision and inspection of directors, managers and other senior management personnel and to supervise and examine the company's financial matters.

65. A listed company shall formulate in its articles of association standardized rules and procedures governing the steering of the supervisory board. The supervisory board's meetings shall be convened in strict compliance with the rules and procedures.

66. The supervisory board shall meet periodically and shall convene interim meetings in a timely manner when necessary. If for any reason a supervisory board meeting cannot be convened as scheduled, an explanation shall be publicly announced.

67. The supervisory board may ask directors, managers and other senior management personnel, internal auditing personnel and external auditing personnel to attend the meetings of supervisory board and to answer the questions that the supervisory board is concerned with.

68. Minutes shall be drafted for the meetings of the supervisory board, which shall be signed by the supervisors that attended the meetings and the person who drafted the minutes. The supervisors shall have the right to

11

request to record in the minutes explanatory notes to their statements in the meetings. Minutes of the meetings of the supervisory board shall be properly maintained and stored as important records of the company.

## Chapter 5. Performance Assessments and Incentive and Disciplinary Systems

(1) Performance Assessment for Directors, Supervisors and Management Personnel

69. A listed company shall establish fair and transparent standards and procedures for the assessment of the performance of directors, supervisors and management personnel.

70. The performance assessment of the directors and management personnel shall be conducted by the board of directors or by the remuneration and appraisal committee of the board of directors. The evaluation of the performance of independent directors and supervisors shall be conducted through a combination of self-review and peer review.

71. The board of directors shall propose a scheme for the amount and method of compensation for directors to the shareholders' meeting for approval. When the board of directors or the remuneration and appraisal committee reviews the performance of or discusses the compensation for a certain director, such director shall withdraw.

72. The board of directors and the supervisory board shall report to the shareholder meetings the performance of the directors and the supervisors, the results of the assessment of their work and their compensation, and shall disclose such information.

(2) Selection of Management Personnel

73. The recruiting of management personnel of a listed company shall be conducted in strict observation with relevant laws and regulations and the company's articles of association. No institution or individual shall interfere with a listed company's normal recruiting procedure for management personnel.

74. The recruiting of management personnel of a listed company shall, to the extent possible, be carried out in a fair and transparent manner, through domestic and international markets for professional management, making full use of intermediary agencies.

75. Employment agreements shall be entered into by a listed company and its management personnel to clarify each party's rights and obligations.

76. The appointment and removal of managers shall be in compliance with legal procedure and shall be publicly announced.

(3) Incentive and Disciplinary Systems for Management

77. To attract qualified personnel and to maintain the stability of management, a listed company shall establish rewarding systems that link the compensation for management personnel to the company's performance and to the individual's work performance.

78. The performance assessment for management personnel shall become a basis for determining the compensation and other rewarding arrangements for the person reviewed.

79. The results of the performance assessment shall be approved by the board of directors, explained at the shareholders' meetings and disclosed.

80. A listed company shall specify management personnel's duties and responsibilities in its articles of association. If management personnel violate laws, regulations or the company's articles of association and cause damages to the company, the board of directors of the company shall actively investigate and pursue such personnel's legal liabilities.

Chapter 6. Stakeholders

81. A listed company shall respect the legitimate rights of banks and other creditors, employees, consumers, suppliers, the community and other stakeholders.

82. A listed company shall actively cooperate with its stakeholders and jointly advance the company's sustained and healthy development.

83. A company shall provide the necessary conditions to ensure the legitimate rights of stakeholders. Stakeholders shall have opportunities and channels for redress for infringement of rights.

84. A company shall provide necessary information to banks and other creditors to enable them to make judgments and decisions about the company's operating and financial situation.

85. A company shall encourage employees' feedback regarding the

company's operating and financial situations and important decisions affecting employee's benefits through direct communications with the board of directors, the supervisory board and the management personnel.

86. While maintaining the listed company's development and maximizing the benefits of shareholders, the company shall be concerned with the welfare, environmental protection and public interests of the community in which it resides, and shall pay attention to the company's social responsibilities.

Chapter 7. Information Disclosure and Transparency

(1) Listed Companies' Ongoing Information Disclosure

87. Information disclosure is an ongoing responsibility of listed companies. A listed company shall truthfully, accurately, completely and timely disclose information as required by laws, regulations and the company's articles of association.

88. In addition to disclosing mandatory information, a company shall also voluntarily and timely disclose all other information that may have a material effect on the decisions of shareholders and stakeholders, and shall ensure equal access to information for all shareholders.

89. Disclosed information by a listed company shall be easily comprehensible. Companies shall ensure economical, convenient and speedy access to information through various means (such as the Internet).

90. The secretary of the board of directors shall be in charge of information disclosure, including formulating rules for information disclosure, receiving visits, providing consultation, contacting shareholders and providing publicly disclosed information about the company to investors. The board of directors and the management shall actively support the secretary's work. No institutions or individuals shall interfere with the secretary's work.

(2) Disclosure of Information Regarding Corporate Governance

91. A listed company shall disclose information regarding its corporate governance in accordance with laws, regulations and other relevant rules, including but not limited to: (1) the members and structure of the board of directors and the supervisory board; (2) the performance and evaluation of the board of directors and the supervisory board; (3) the performance and evaluation of the independent directors, including their attendance at board of directors' meetings, their issuance of independent opinions and their opinions regarding related party transactions and appointment and removal of directors

14

and senior management personnel; (4) the composition and work of the specialized committees of the board of directors; (5) the actual state of corporate governance of the company, the gap between the company's corporate governance and the Code, and the reasons for the gap; and (6) specific plans and measures to improve corporate governance.

### (3) Disclosure of Shareholder's Rights and Interests

92. A company shall timely disclose detailed information about each shareholder who owns a comparatively large percentage of shares of the company, the shareholders who actually control the company when acting in concert and the company's actual controllers in accordance with relevant regulations.

93. A listed company shall learn about and disclose in a timely manner, changes in the shareholding of the company and other important matters that may cause changes in the shareholding of the company.

94. When controlling shareholders increase or decrease their shareholding or pledge the company's shares, or when the actual control of the company transfers, the company and its controlling shareholders shall timely and accurately disclose relevant information to all shareholders.

### Chapter 8. Supplementary Article

95. This Code shall come into effect on the date of issuance.

15

　　　　　　　　　　　　上市公司治理准则

繁體版 | English　　　　　　　　　　　　　　　　　　　　站内搜索: 本站点检索　　　高级

中国证券监督管理委员会
CHINA SECURITIES REGULATORY COMMISSION

维护市场公开、公平、公正
维护投资者特别是中小投资者合法权益
促进资本市场健康发展

首页　政　信息公开　政策法规　新闻发布　服　办事指南　在线申报　监管对象　互　公众留言　信访专栏　举报专栏
HOME　务　信息披露　统计数据　人事招聘　务　业务资格　人员资格　投资者保护　动　在线访谈　征求意见　廉政评议

您的位置: 首页 ＞ 法律部 ＞ 法律法规 ＞ 规范性文件 ＞ 上市公司类 ＞ 公司治理与内部控制

# 上市公司治理准则

中国证监会 www.csrc.gov.cn　　时间: 2002-01-07　　来源:

证监发[2002]1号

各上市公司:

为推动上市公司建立和完善现代企业制度,规范上市公司运作,促进我国证券市场健康发展,现发布《上市公司治理准则》,请遵照执行。

中国证券监督管理委员会

国家经济贸易委员会

二〇〇二年一月七日

## 导 言

为推动上市公司建立和完善现代企业制度,规范上市公司运作,促进我国证券市场健康发展,根据《公司法》、《证券法》及其它相关法律、法规确定的基本原则,并参照国外公司治理实践中普遍认同的标准,制订本准则。

本准则阐明了我国上市公司治理的基本原则、投资者权利保护的实现方式,以及上市公司董事、监事、经理等高级管理人员所应当遵循的基本的行为准则和职业道德等内容。

本准则适用于中国境内的上市公司。上市公司改善公司治理,应当贯彻本准则所阐述的精神。上市公司制定或者修改公司章程及治理细则,应当体现本准则所列明的内容。本准则是评判上市公司是否具有良好的公司治理结构的主要衡量标准,对公司治理存在重大问题的上市公司,证券监管机构将责令其按照本准则的要求进行整改。

## 第一章　股东与股东大会

### 第一节　股东权利

第一条　股东作为公司的所有者,享有法律、行政法规和公司章程规定的合法权利。上市公司应当建立能够确保股东充分行使权利的公司治理结构。

第二条　上市公司的治理结构应当确保所有股东,特别是中小股东享有平等地位。股东按其持有的股份享有平等的权利,并承担相应的义务。

第三条　股东对法律、行政法规和公司章程规定的公司重大事项，享有知情权和参与权。上市公司应建立和股东沟通的有效渠道。

第四条　股东有权按照法律、行政法规的规定，通过民事诉讼或其他法律手段保护其合法权利。股东大会、董事会的决议违反法律、行政法规的规定，侵犯股东合法权益，股东有权依法提起要求停止上述违法行为或侵害行为的诉讼。董事、监事、经理执行职务时违反法律、行政法规或者公司章程的规定，给公司造成损害的，应承担赔偿责任。股东有权要求公司依法提起要求赔偿的诉讼。

第二节　股东大会的规范

第五条　上市公司应在公司章程中规定股东大会的召开和表决程序，包括通知、登记、提案的审议、投票、计票、表决结果的宣布、会议决议的形成、会议记录及其签署、公告等。

第六条　董事会应认真审议并安排股东大会审议事项，股东大会应给予每个提案合理的讨论时间。

第七条　上市公司应在公司章程中规定股东大会对董事会的授权原则，授权内容应明确具体。

第八条　上市公司应在保证股东大会合法、有效的前提下，通过各种方式和途径，包括充分运用现代信息技术手段，扩大股东参与股东大会的比例。股东大会时间、地点的选择应有利于让尽可能多的股东参加会议。

第九条　股东既可以亲自到股东大会现场投票，也可以委托代理人代为投票，两者具有同样的法律效力。

第十条　上市公司董事会、独立董事和符合有关条件的股东可向上市公司股东征集其在股东大会上的投票权。投票权征集应采取无偿的方式进行，并应向被征集人充分披露信息。

第十一条　机构投资者应在公司董事选任、经营者激励与监督、重大事项决策等方面发挥作用。

第三节　关联交易

第十二条　上市公司与关联人之间的关联交易应签订书面协议。协议的签订应当遵循平等、自愿、等价、有偿的原则，协议内容应明确、具体。公司应将协议的订立、变更、终止及履行情况等事项按照有关规定予以披露。

第十三条　上市公司应采取有效措施防止关联人以垄断采购和销售业务渠道等方式干预公司的经营，损害公司利益。关联交易活动应遵循商业原则，关联交易的价格原则上应不偏离市场独立第三方的价格或收费的标准。公司应对关联交易的定价依据予以充分披露。

第十四条　上市公司的资产属于公司所有。上市公司应采取有效措施防止股东及其关联方以各种形式占用或转移公司的资金、资产及其他资源，上市公司不得为股东及其关联方提供担保。

第二章　控股股东与上市公司

第一节　控股股东行为的规范

第十五条　控股股东对拟上市公司改制重组时应遵循先改制、后上市的原则，并注重建立合理制衡的股权结构。

第十六条　控股股东对拟上市公司改制重组时应分离其社会职能，剥离非经营性资产、非经营性机构、福利性机构及其设施不得进入上市公司。

第十七条　控股股东为上市公司主业服务的存续企业或机构可以按照专业化、市场化的原则改组为专业化公司，并根据商业原则与上市公司签订有关协议。从事其他业务的存续企业应增强其独立发展的能力。无继续经营能力的存续企业，应按有关法律、法规的规定，通过实施破产等途径退出市场。企业重组时具备一定条件的，可以一次性分离其社会职能及分流富余人员，不保留存续企业。

第十八条　控股股东应支持上市公司深化劳动、人事、分配制度改革，转换经营管理机制，建立管理人员竞聘上岗、能上能下，职工择优录用、能进能出，收入分配能增能减、有效激励的各项制度。

第十九条  控股股东对上市公司及其他股东负有诚信义务。控股股东对其所控股的上市公司应严格格遵循依法行使出资人的权利，控股股东不得利用资产重组等方式损害上市公司和其他股东的合法权益，不得利用其特殊地位攫取额外的利益。

第二十条  控股股东对上市公司董事、监事候选人的提名，应严格遵循法律、法规和公司章程规定的条件和程序。控股股东提名的董事、监事候选人应当具备相关专业知识和决策、监督能力。控股股东不得对股东大会人事选举决议和董事会人事聘任决议履行任何批准手续；不得越过股东大会、董事会任免上市公司的高级管理人员。

第二十一条  上市公司的重大决策应由股东大会和董事会依法作出。控股股东不得直接或间接干预公司的决策及依法开展的生产经营活动，损害公司及其他股东的权益。

<br>

### 第二节  上市公司的独立性

<br>

第二十二条  控股股东与上市公司应实行人员、资产、财务分开，机构、业务独立，各自独立核算、独立承担责任和风险。

第二十三条  上市公司人员应独立于控股股东。上市公司的经理人员、财务负责人、营销负责人和董事会秘书在控股股东单位不得担任除董事以外的其他职务。控股股东高级管理人员兼任上市公司董事的，应保证有足够的时间和精力承担上市公司的工作。

第二十四条  控股股东投入上市公司的资产应独立完整、权属清晰。控股股东以非货币性资产出资的，应办理产权变更手续，明确界定该资产的范围。上市公司应当对该资产独立登记、建帐、核算、管理。控股股东不得占用、支配该资产或干预上市公司对该资产的经营管理。

第二十五条  上市公司应按照有关法律、法规的要求建立健全的财务、会计管理制度，独立核算。控股股东应尊重公司财务的独立性，不得干预公司的财务、会计活动。

第二十六条  上市公司的董事会、监事会及其他内部机构应独立运作。控股股东及其职能部门与上市公司及其职能部门之间没有上下级关系。控股股东及其下属机构不得向上市公司及其下属机构下达任何有关上市公司经营的计划和指令，也不得以其他任何形式影响其经营管理的独立性。

第二十七条  上市公司业务应完全独立于控股股东。控股股东及其下属的其他单位不应从事与上市公司相同或相近的业务。控股股东应采取有效措施避免同业竞争。

<br>

### 第三章  董事与董事会

<br>

### 第一节  董事的选聘程序

<br>

第二十八条  上市公司应在公司章程中规定规范、透明的董事选聘程序，保证董事选聘公开、公平、公正、独立。

第二十九条  上市公司应在股东大会召开前披露董事候选人的详细资料，保证股东在投票时对候选人有足够的了解。

第三十条  董事候选人应在股东大会召开之前作出书面承诺，同意接受提名，承诺公开披露的董事候选人的资料真实、完整并保证当选后切实履行董事职责。

第三十一条  在董事的选举过程中，应充分反映中小股东的意见。股东大会在董事选举中应积极推行累积投票制度。控股股东控股比例在30%以上的上市公司，应当采用累积投票制度。采用累积投票制度的上市公司应在公司章程里规定该制度的实施细则。

第三十二条  上市公司应与董事签订聘任合同，明确公司和董事之间的权利义务、董事的任期、董事违反法律法规和公司章程的责任以及公司因故提前解除合同的补偿等内容。

<br>

### 第二节  董事的义务

<br>

第三十三条  董事应根据公司和全体股东的最大利益、忠实、诚信、勤勉地履行职责。

第三十四条 董事应保证有足够的时间和精力履行其应尽的职责。

第三十五条 董事应以认真负责的态度出席董事会，对所议事项表达明确的意见。董事确实无法亲自出席董事会的，可以书面形式委托其他董事按委托人的意愿代为投票，委托人应承担法律责任。

第三十六条 董事应遵守有关法律、法规及公司章程的规定，严格遵守其公开作出的承诺。

第三十七条 董事应积极参加有关培训，以了解作为董事的权利、义务和责任，熟悉有关法律法规，掌握作为董事应具备的相关知识。

第三十八条 董事会决议违反法律、法规和公司章程的规定，致使公司遭受损失的，参与决议的董事对公司承担赔偿责任。但经证明在表决时曾表明异议并记载于会议记录的董事除外。

第三十九条 经股东大会批准，上市公司可以为董事购买责任保险。但董事因违反法律法规和公司章程规定而导致的责任除外。

### 第三节 董事会的构成和职责

第四十条 董事会的人数及人员构成应符合有关法律、法规的要求，确保董事会能够进行富有成效的讨论，作出科学、迅速和谨慎的决策。

第四十一条 董事会应具备合理的专业结构，其成员应具备履行职务所必需的知识、技能和素质。

第四十二条 董事会向股东大会负责。上市公司应合理结构应确保董事会能够按照法律、法规和公司章程的规定行使职权。

第四十三条 董事会应认真履行有关法律、法规和公司章程规定的职责，确保公司遵守法律、法规和公司章程的规定，公平对待所有股东，并关注其他利益相关者的利益。

### 第四节 董事会议事规则

第四十四条 上市公司应在公司章程中规定规范的董事会议事规则，确保董事会高效运作和科学决策。

第四十五条 董事会应定期召开会议，并根据需要及时召开临时会议。董事会会议应有事先拟定的议题。

第四十六条 上市公司董事会会议应严格按照规定的程序进行。董事会应按规定的时间事先通知到所有董事，并提供足够的资料，包括会议议题的相关背景材料和有助于董事理解公司业务进展的信息和数据。当2名或以上独立董事认为资料不充分或论证不明确时，可联名以书面形式向董事会提出延期召开董事会会议或延期审议该事项，董事会应予以采纳。

第四十七条 董事会会议记录应完整、真实。董事会秘书对会议所议事项要认真组织记录和整理。出席会议的董事、董事会秘书和记录人应在会议记录上签名。董事会会议记录应作为公司重要档案妥善保存，以作为日后明确董事责任的重要依据。

第四十八条 董事会授权董事长在董事会闭会期间行使董事会部分职权的，上市公司应在公司章程中明确规定授权原则和授权内容，授权内容应当明确、具体。凡涉及公司重大利益的事项应由董事会集体决策。

### 第五节 独立董事制度

第四十九条 上市公司应按照有关规定建立独立董事制度。独立董事应独立于所受聘的公司及其主要股东。独立董事不得在上市公司担任除独立董事外的其他任何职务。

第五十条 独立董事对公司及全体股东负有诚信与勤勉义务。独立董事应按照相关法律、法规、公司章程的要求，认真履行职责，维护公司整体利益，尤其要关注中小股东的合法权益不受损害。独立董事应独立履行职责，不受公司主要股东、实际控制人、以及其他与上市公司存在利害关系的单位或个人的影响。

第五十一条 独立董事的任职条件、选举更换程序、职责等，应符合有关规定。

第六节　董事会专门委员会

第五十二条　上市公司董事会可以按照股东大会的有关决议，设立战略、审计、提名、薪酬与考核等专门委员会。专门委员会成员全部由董事组成，其中审计委员会、提名委员会、薪酬与考核委员会中独立董事应占多数并担任召集人，审计委员会中至少应有一名独立董事是会计专业人士。

第五十三条　战略委员会的主要职责是对公司长期发展战略和重大投资决策进行研究并提出建议。

第五十四条　审计委员会的主要职责是：（1）提议聘请或更换外部审计机构；（2）监督公司的内部审计制度及其实施；（3）负责内部审计与外部审计之间的沟通；（4）审核公司的财务信息及其披露；（5）审查公司的内控制度。

第五十五条　提名委员会的主要职责是：（1）研究董事、经理人员的选择标准和程序并提出建议；（2）广泛搜寻合格的董事和经理人员的人选；（3）对董事候选人和经理人选进行审查并提出建议。

第五十六条　薪酬与考核委员会的主要职责是：（1）研究董事与经理人员考核的标准，进行考核并提出建议；（2）研究和审查董事、高级管理人员的薪酬政策与方案。

第五十七条　各专门委员会可以聘请中介机构提供专业意见，有关费用由公司承担。

第五十八条　各专门委员会对董事会负责，各专门委员会的提案应提交董事会审查决定。

第四章　监事与监事会

第一节　监事会的职责

第五十九条　上市公司监事会应向全体股东负责，对公司财务以及公司董事、经理和其他高级管理人员履行职责的合法合规性进行监督，维护公司及股东的合法权益。

第六十条　监事有了解公司经营情况的权利，并承担相应的保密义务。监事会可以独立聘请中介机构提供专业意见。

第六十一条　上市公司应采取措施保障监事的知情权，为监事正常履行职责提供必要的协助，任何人不得干预、阻挠。监事履行职责所需的合理费用应由公司承担。

第六十二条　监事会的监督记录以及进行财务或专项检查的结果应成为对董事、经理和其他高级管理人员绩效评价的重要依据。

第六十三条　监事会发现董事、经理和其他高级管理人员存在违反法律、法规或公司章程的行为，可以向董事会、股东大会反映，也可以直接向证券监管机构及其他有关部门报告。

第二节　监事会的构成和议事规则

第六十四条　监事应具有法律、会计等方面的专业知识或工作经验。监事会的人员和结构应确保监事会能够独立有效地行使对董事、经理和其他高级管理人员及公司财务的监督和检查。

第六十五条　上市公司应在公司章程中规定规范的监事会议事规则。监事会会议应严格按规定程序进行。

第六十六条　监事会应定期召开会议，并根据需要及时召开临时会议。监事会会议因故不能如期召开，应公告说明原因。

第六十七条　监事会可要求公司董事、经理及其他高级管理人员、内部及外部审计人员出席监事会会议，回答所关注的问题。

第六十八条　监事会会议应有记录，出席会议的监事和记录人应当在会议记录上签字。监事有权要求在记录上对其在会议上的发言作出某种说明性记载。监事会会议记录应作为公司重要档案妥善保存。

上市公司治理准则

## 第五章　绩效评价与激励约束机制

### 第一节　董事、监事、经理人员的绩效评价

第六十九条　上市公司应建立公正透明的董事、监事和经理人员的绩效评价标准和程序。

第七十条　董事和经理人员的绩效评价由董事会或其下设的薪酬与考核委员会负责组织。独立董事、监事的评价应采取自我评价与相互评价相结合的方式进行。

第七十一条　董事报酬的数额和方式由董事会提出方案报请股东大会决定。在董事会或薪酬与考核委员会对董事个人进行评价或讨论其报酬时，该董事应当回避。

第七十二条　董事会、监事会应当向股东大会报告董事、监事履行职责的情况、绩效评价结果及其薪酬情况，并予以披露。

### 第二节　经理人员的聘任

第七十三条　上市公司经理人员的聘任，应严格按照有关法律、法规和公司章程的规定进行。任何组织和个人不得干预公司经理人员的正常选聘程序。

第七十四条　上市公司应尽可能采取公开、透明的方式，从境内外人才市场选聘经理人员，并充分发挥中介机构的作用。

第七十五条　上市公司应和经理人员签订聘任合同，明确双方的权利义务关系。

第七十六条　经理的任免应履行法定的程序，并向社会公告。

### 第三节　经理人员的激励与约束机制

第七十七条　上市公司应建立经理人员的薪酬与公司绩效和个人业绩相联系的激励机制，以吸引人才，保持经理人员的稳定。

第七十八条　上市公司对经理人员的绩效评价应当成为确定经理人员薪酬以及其它激励方式的依据。

第七十九条　经理人员的薪酬分配方案应获得董事会的批准，向股东大会说明，并予以披露。

第八十条　上市公司应在公司章程中明确经理人员的职责。经理人员违反法律、法规和公司章程规定，致使公司遭受损失的，公司董事会应积极采取措施追究其法律责任。

## 第六章　利益相关者

第八十一条　上市公司应尊重银行及其它债权人、职工、消费者、供应商、社区等利益相关者的合法权利。

第八十二条　上市公司应与利益相关者积极合作，共同推动公司持续、健康地发展。

第八十三条　上市公司应为维护利益相关者的权益提供必要的条件，当其合法权益受到侵害时，利益相关者应有机会和途径获得赔偿。

第八十四条　上市公司应向银行及其它债权人提供必要的信息，以便其对公司的经营状况和财务状况作出判断和进行决策。

第八十五条　上市公司应鼓励职工通过与董事会、监事会和经理人员的直接沟通和交流，反映职工对公司经营、财务状况以及涉及职工利益的重大决策的意见。

第八十六条　上市公司在保持公司持续发展、实现股东利益最大化的同时，应关注所在社区的福利、环境保护、公益事业等问题，重视公司的社会责任。

2/25/2019 上市公司治理准则

# 第七章 信息披露与透明度

## 第一节 上市公司的持续信息披露

第八十七条 持续信息披露是上市公司的责任。上市公司应严格按照法律、法规和公司章程的规定，真实、准确、完整、及时地披露信息。

第八十八条 上市公司除按照强制性规定披露信息外，应主动、及时地披露所有可能对股东和其它利益相关者决策产生实质性影响的信息，并保证所有股东有平等的机会获得信息。

第八十九条 上市公司披露的信息应当便于理解。上市公司应保证使用者能够通过经济、便捷的方式（如互联网）获得信息。

第九十条 上市公司董事会秘书负责信息披露事项，包括建立信息披露制度、接待来访、回答咨询、联系股东，向投资者提供公司公开披露的资料等。董事会及经理人员应对董事会秘书的工作予以积极支持。任何机构及个人不得干预董事会秘书的工作。

## 第二节 公司治理信息的披露

第九十一条 上市公司应按照法律、法规及其他有关规定，披露公司治理的有关信息，包括但不限于：（1）董事会、监事会的人员及构成；（2）董事会、监事会的工作及评价；（3）独立董事工作情况及评价，包括独立董事出席董事会的情况、发表独立意见的情况及对关联交易、董事及高级管理人员的任免等事项的意见；（4）各专门委员会的组成及工作情况；（5）公司治理的实际状况，及与本准则存在的差异及其原因；（6）改进公司治理的具体计划和措施。

## 第三节 股东权益的披露

第九十二条 上市公司应按照有关规定，及时披露持有公司股份比例较大的股东以及一致行动时可以实际控制公司的股东或实际控制人的详细资料。

第九十三条 上市公司应及时了解并披露公司股份变动的情况以及其它可能引起股份变动的重要事项。

第九十四条 当上市公司控股股东增持、减持或质押公司股份，或上市公司控制权发生转移时，上市公司及其控股股东应及时、准确地向全体股东披露有关信息。

# 第八章 附则

第九十五条 本准则自发布之日起施行。

关于我们 ｜ 联系我们 ｜ 法律声明

版权所有：中国证券监督管理委员会 京ICP备 05035542号

# EXHIBIT 8

John Taladay (*pro hac vice*)
john.taladay@bakerbotts.com
Erik Koons (*pro hac vice*)
erik.koons@bakerbotts.com
BAKER BOTTS LLP
1299 Pennsylvania Ave. NW
Washington, D.C. 20004
Telephone:  202.639.7700
Facsimile:   202.639.7890

Stuart C. Plunkett (State Bar No. 187971)
stuart.plunkett@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

*Attorneys for Defendants*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | Case No. 3:07-cv-05944-JST |
| | MDL No.: 1917 |
| THIS DOCUMENT RELATES TO: | **IRICO DEFENDANTS' OBJECTIONS TO PLAINTIFFS' NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)** |
| *ALL DIRECT AND INDIRECT PURCHASER ACTIONS* | |

Irico Group Corporation and Irico Display Devices Co, Ltd. (collectively, "Irico" or "Irico Defendants") hereby serve the following objections to the Notice of Depositions of Defendants Irico Group Corporation and Irico Display Devices Co., Ltd. Pursuant to Fed. R. Civ. P. 30(b)(6), served on February 5, 2019 (the "Notice").

## GENERAL OBJECTIONS

Irico makes the following General Objections to the Notice:

1.      These objections are based upon information available to and located by Irico as of the date of service of these objections.

2.      No express, incidental, or implied admissions are intended by these objections and should not be read or construed as such.

3.      Irico does not intend, and its objections should not be construed as, an agreement or acquiescence with any characterization of fact, assumption, or conclusion of law contained in or implied by the Notice.

4.      To the extent that Irico's response to the Notice suggests Irico will produce or make available for examination responsive information or documents, Irico does not represent that any such information or documents exist.

5.      Irico objects to the Notice to the extent the examination topics are overly broad, unduly burdensome, oppressive, and duplicative to the extent that they seek information or documents that are already in the possession, custody, or control of Plaintiffs.

6.      Irico objects to the Notice to the extent that it seeks to impose obligations on Irico beyond those of the Federal Rules of Civil Procedure, the Local Rules, or any Order of this Court.

7.      Irico objects to the Notice to the extent it seeks information or documents that are not relevant to jurisdictional issues or disproportionate to the needs of the case in resolving such jurisdictional issues.

8.      Irico objects to the Notice to the extent the examination topics are not described with reasonable particularity, vague, ambiguous, or susceptible to more than one interpretation. Irico shall attempt to construe such vague or ambiguous topics so as to provide responsive

information that is proportionate to the needs of the case. If Plaintiffs subsequently asserts an interpretation of any topic that differs from Irico's understanding, Irico reserves the right to supplement or amend its objections.

9.      Irico objects to the Notice to the extent the examination topics contain terms that are insufficiently or imprecisely defined. Irico shall attempt to construe such vague or ambiguous topics so as to provide responsive information that is proportionate to the needs of the case.

10.      Irico objects to the Notice to the extent the examination topics seek information that is protected from disclosure by the attorney-client privilege, work product doctrine, joint defense or common interest privilege, self-evaluative privilege, or any other applicable privilege or immunity. Irico will provide only information that it believes to be non-privileged and otherwise properly discoverable. None of Irico's responses is intended nor should be construed as a waiver of any such privilege or immunity. The inadvertent or mistaken provision of any information subject to any such doctrine, privilege, protection or immunity from production shall not constitute a general, inadvertent, implicit, subject-matter, separate, independent or other waiver of such doctrine, privilege, protection or immunity from production.

11.      Irico objects to the Notice to the extent that the examination topics call for information that is not in the possession, custody, or control of Irico. Irico also objects to the extent that any of the topics seek information from non-parties or third parties, including but not limited to any of Irico's subsidiary or affiliated companies.

12.      Irico objects to the Notice to the extent that responding would require Irico to violate the privacy and/or confidentiality of a third party or confidentiality agreement with a third party.

13.      Irico objects to the Notice to the extent the examination topics seek information that is publicly available, already in Plaintiffs' possession, custody, or control, or more readily available from other sources.

14.      Irico objects to the Notice to the extent the examination topics seek information

concerning transactions outside the United States. Such topics are unduly burdensome and irrelevant because they do not relate to actions by Irico in or causing a direct effect in the United States.  Such topics are also unduly burdensome and irrelevant to this pending action as Plaintiffs' class definitions are confined to "all persons . . . who directly purchased a Cathode Ray Tube Product . . . in the United States" (see Direct Purchaser Plaintiffs' Consolidated Amended Complaint) and "individuals and entities that indirectly purchased Cathode Ray Tube Products . . . in the United States" (see Indirect Purchaser Plaintiffs' Fourth Consolidated Amended Complaint).

15.    Irico objects to the Notice to the extent that compliance would require Irico to violate the laws, regulations, procedures, or orders of a judicial or regulatory body of foreign jurisdictions.

16.    Irico's responses, whether now or in the future, pursuant to the Notice should not be construed as either (i) a waiver of any of Irico's general or specific objections or (ii) an admission that such information or documents are either relevant or admissible as evidence.

17.    Irico objects to the Notice to the extent that compliance would require Irico to seek information stored on backup or archived databases or other systems that are not readily accessible or otherwise no longer active.

18.    Irico objects to the Notice to the extent that any examination topic states and/or calls for legal conclusions.

19.    Irico objects to the Notice to the extent that any examination topic contains express or implied assumptions of fact or law with respect to the matters at issue in this case.

20.    Irico objects to the Notice to the extent the examination topics seek documents that cannot be removed or transmitted outside China without violating the laws and regulations of that country, including but not limited to restrictions on the transmission of state secrets or trade secrets as those terms are defined under Chinese law.

21.    Irico reserves the right to assert additional General and Specific Objections as appropriate.

**GENERAL OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.     Irico objects to the definitions of "You" and "Your" (Definition No. 6) to the extent that Plaintiffs define those terms to include the Irico's "predecessors, successors, subsidiaries, departments, divisions, and/or affiliates." This definition is legally incorrect, overbroad, unduly burdensome, vague, and ambiguous. Irico also objects to the inclusion of "all present and former directors, officers, Employees, agents, representatives or any Persons acting or purporting to act on behalf of" Irico within this definition to the extent it purports to encompass information that is protected by attorney-client privilege, work product protection or any other applicable doctrine, privilege, protection or immunity or otherwise calls for a legal conclusion.

2.     Irico objects to the definition of "Document" (Definition No. 8) to the extent it seeks to impose requirements that are beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules, or any other applicable laws.

3.     Irico objects to the definition of "Employee" (Definition No. 9) on the grounds that it calls for a legal conclusion and is otherwise vague, ambiguous, and overly broad. Irico further objects to this definition to the extent that it attempts to impose burdens on Irico beyond those imposed by the Federal Rules of Civil Procedure. Irico further objects to this definition to the extent that it seeks information protected by the attorney client or other applicable privilege, attorney work product doctrine, or otherwise seeks to violate rights of privacy under U.S. or foreign law.

4.     Irico objects to the definitions of "CRT" and "CRT Products" (Definitions No. 10 and 11) on the grounds that they are vague, ambiguous and overly broad. Irico further objects to the use of the term "CRT Products" to the extent that it is inconsistent with the definition of "CRT Products" as set forth in Plaintiffs' pleadings.

5.     Irico objects to the definition of the "Relevant Time Period" (Definition No. 13) as overbroad, unduly burdensome, beyond the applicable statute of limitations, and beyond the relevant time period for determining jurisdictional issues.

6.     Irico objects to the definition of "Communication" (Definition No. 14) on the

grounds that it is vague, ambiguous, and overly broad. Irico further objects to this definition to the extent that it attempts to impose burdens on Irico beyond those imposed by the Federal Rules of Civil Procedure.

7.      Irico objects to the definition of "Meeting" (Definition No. 16) on the grounds that it is vague, ambiguous, and overly broad. Irico further objects to this definition to the extent that it attempts to impose burdens on Irico beyond those imposed by the Federal Rules of Civil Procedure.

## OBJECTIONS TO TOPICS FOR EXAMINATION

**TOPIC 1:**  The corporate formation, ownership, and purpose of Group and Display, including any basis for any contention by Irico that Group and Display engage in a public activity, and including any changes in status.

**OBJECTION TO TOPIC 1**:

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this topic is not described with reasonable particularity.  Irico also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues. Irico also objects that this topic seeks to unreasonably require preparation of a witness on an extremely broad range of information, including "any basis for any contention" relating to numerous facts, events and corporate changes over nearly two decades.  Irico also objects that this topic seeks information that is publicly available, more easily available from third parties, or already known to Plaintiff, including from Irico's responses to DPPs' Interrogatory Nos. 1 through 5 and Irico's various document productions.  Irico also objects that the terms "purpose," "public activity," and "status" are vague, ambiguous, unintelligible, and subject to multiple interpretations.  Irico will attempt to construe this vague and ambiguous language so as to provide responsive information that is proportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects that this topic calls for legal argument or a legal conclusion.

Subject to and without waiving the objections stated above, Irico will designate Mengquan Guo to discuss in general terms the formation, ownership, and purpose of Group and Display.

**TOPIC 2:**  Supervision of either Group or Display by officials of the People's Republic of China, including any specific instances of supervision or control that Irico contends are relevant to alleged organ status of Display.

**OBJECTION TO TOPIC 2:**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this topic is not described with reasonable particularity.  Irico also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects that this topic seeks to unreasonably require preparation of a witness on an extremely broad range of information, including decades-old "specific instances of supervision or control" over a period of thirteen years.  Irico also objects that this topic seeks information that is publicly available, more easily available from third parties, or already known to Plaintiff, including from Irico's responses to DPPs' Interrogatory Nos. 5 through 7 and Irico's various document productions.  Irico also objects that the terms "supervision," "control," and "organ status" are vague, ambiguous, unintelligible, and subject to multiple interpretations.  Irico will attempt to construe this vague and ambiguous language so as to provide responsive information that is proportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects that this topic calls for legal argument or a legal conclusion.

Subject to and without waiving the objections stated above, Irico will designate Mengquan Guo to discuss in general terms the supervision or control of Group and Display by the government of China.

**TOPIC 3:**  The inter-defendant Communications identified in Exhibit 11 to the Saveri Declaration or in the Leitzinger Report involving Irico, including any related internal Communications on or about the same Dates.

**OBJECTION TO TOPIC 3**:

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this topic is not described with reasonable particularity.  Irico also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects that this topic seeks to unreasonably require preparation of a witness on decades-old alleged events of which Irico has no record and for which the circumstances cannot be determined.  Irico also objects that this topic seeks information that is publicly available, more easily available from third parties, or already known to Plaintiffs, including from Irico's responses to DPPs' Request for Production No. 10.

Subject to and without waiving the objections stated above, Irico will designate Zhaojie Wang to discuss the information, if any, found by Irico regarding the meetings described in this topic.

**TOPIC 4:**  Any sales, attempted sales, or contemplated sales by Irico, directly or indirectly, to the United States during the Class Period, including, but not limited to, sales through China National Electronics Imp. & Exp. Caihong Co., Irico Group Electronics Co. Ltd., Xian Irico Display Technology Co., Ltd., Irico (USA) Inc., and/or the Irico HuangQi Company.

**OBJECTION TO TOPIC 4**:

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this topic is not described with reasonable particularity.  Irico also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects that this topic seeks to unreasonably require preparation of a witness on an extremely broad range of information, including "any sales, attempted sales, or contemplated sales" over a 13-year period reaching back over two decades.  Irico also objects that this topic seeks information that is publicly available, more easily available from third parties, or already known to Plaintiff, including from Irico's responses to DPPs' Interrogatory No. 20 and Irico's various document productions.  Irico also objects that the terms "attempted sales,"

"contemplated sales," "indirectly," and "through" are vague, ambiguous, unintelligible, and subject to multiple interpretations.  Irico will attempt to construe this vague and ambiguous language so as to provide responsive information that is proportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects that this topic calls for legal argument or a legal conclusion.

Subject to and without waiving the objections stated above, Irico will designate Zhaojie Wang to discuss in general terms the information known to Irico regarding the sales, or lack thereof, of its CRTs into the United States.

**TOPIC 5:**  All Documents and Communications that Wenkei Zhang reviewed or relied on in preparing his Declaration.

**OBJECTION TO TOPIC 5**:

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this topic is not described with reasonable particularity.  Irico also objects that this topic seeks information beyond the scope of what is relevant to resolving jurisdictional issues.  Irico also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects that this topic seeks information that is publicly available, more easily available from third parties, or already known to Plaintiff, including from Irico's responses to DPPs' Interrogatory No. 9 and Irico's various document productions.  Irico also objects that this topic calls for information that is privileged under the attorney-client, work product, or any other applicable privilege or immunity.

Subject to and without waiving the objections stated above, Irico will designate Wenkai Zhang to discuss the documents and information he received for the preparation of his Declaration.

**TOPIC 6:**  The preservation, or not, of evidence by Group and/or Display relevant to their FSIA defenses or the merits of this case, from 2008 to present.

**OBJECTION TO TOPIC 6:**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above. Irico further objects that this topic is not described with reasonable particularity. Irico also objects that this topic seeks information beyond the scope of what is relevant to resolving jurisdictional issues as the "merits of this case" are not within the scope of current discovery. Irico also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues. Irico also objects that this topic seeks information that is publicly available, more easily available from third parties, or already known to Plaintiff. Irico also objects that this topic calls for legal argument or a legal conclusion. Irico also objects that this topic calls for information that is privileged under the attorney-client, work product, or any other applicable privilege or immunity.

Subject to and without waiving the objections stated above, Irico will designate Wenkai Zhang to discuss in general terms Irico's preservation of documents and other information.

**TOPIC 7:** The activities of Irico (USA) Inc. related to CRTs or CRT Products.

**OBJECTION TO TOPIC 7:**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above. Irico further objects that this topic is not described with reasonable particularity. Irico also objects that this topic seeks information beyond the scope of what is relevant to resolving jurisdictional issues, as it relates to an entity that is not a defendant in this case and has not been alleged to be a participant in any CRT-related conspiracy. Irico also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues. Irico also objects that this topic seeks information that is publicly available, more easily available from third parties, or already known to Plaintiff, including from Irico's responses to IPPs' Interrogatory No. 4 (Second Set) and Irico's various document productions. Irico also objects that Irico (USA) Inc. had no affiliation with Irico for a portion of the Relevant Time Period and so Irico cannot provide any information regarding activities of Irico (USA) Inc. during those years.

Irico also objects that the term "related to" is vague, ambiguous, unintelligible, and subject to multiple interpretations.  Irico will attempt to construe this vague and ambiguous language so as to provide responsive information that is proportionate to the needs of the case in resolving jurisdictional issues.

Subject to and without waiving the objections stated above, Irico will designate Mengquan Guo to discuss in general terms the information known to Irico regarding the CRT-related activities of Irico (USA) Inc.

**TOPIC 8:**  Any status, obligations, or privileges that Group or Display had under the law of the People's Republic of China during the period from 2006 to 2008.

**OBJECTION TO TOPIC 8:**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this topic is not described with reasonable particularity.  Irico also objects that this topic seeks information beyond the scope of what is relevant to resolving jurisdictional issues.  Irico also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects that this topic seeks information that is publicly available, more easily available from third parties, or already known to Plaintiff, including from Irico's responses to DPPs' Interrogatory No. 5 and Irico's various document productions.  Irico also objects that the terms "status," "obligations," and "privileges" are vague, ambiguous, unintelligible, and subject to multiple interpretations.  Irico will attempt to construe this vague and ambiguous language so as to provide responsive information that is proportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects that this topic calls for legal argument or a legal conclusion.

Subject to and without waiving the objections stated above, Irico will designate Mengquan Guo to discuss in general terms the status of Group and Display under Chinese law as of November 26, 2007.

**TOPIC 9:**  The basis for the statement in the Zhang Declaration that "Irico declined to answer [the DPP's complaint] because it believed that Irico Group and Irico Display were immune from suit in the United States."

**OBJECTION TO TOPIC 9:**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this topic is not described with reasonable particularity.  Irico also objects that this topic seeks information irrelevant to resolving jurisdictional issues.  Irico also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues. Irico also objects that this topic calls for legal argument or a legal conclusion.  Irico also objects that this topic calls for information that is privileged under the attorney-client, work product, or any other applicable privilege or immunity.

Subject to and without waiving the objections stated above, Irico will designate Wenkai Zhang to discuss statements made in his Declaration.

**TOPIC 10:**  A complete description of Your transactional sales files for CRTs and/or CRT Products, including the transactional data for CRT and/or CRT Product sales produced by You in this action and the information contained in such data.

**OBJECTION TO TOPIC 10:**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this topic is not described with reasonable particularity.  Irico also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues. Irico also objects that this topic seeks to unreasonably require preparation of a witness on decades-old defunct databases for which information is largely unavailable.  Irico also objects that this topic seeks information that is publicly available, more easily available from third parties, or already known to Plaintiff, including from Irico's various document productions.

1    Subject to and without waiving the objections stated above, Irico will designate Wenkai

2    Zhang to discuss in general terms the information contained in the sales data files that Irico has

3    produced.

4    **TOPIC 11:** Group's and/or Display's monitoring of consumer market for CRT Products

5    during the Class Period, including the use of market data, reports, studies or analyses generated

6    internally or obtained from third parties.

7    **OBJECTION TO TOPIC 11**:

8    Irico reasserts and incorporates each of the General Objections and Objections to the

9    Definitions and Instructions set forth above.  Irico further objects that this topic is not described

10   with reasonable particularity.  Irico also objects that this topic seeks information irrelevant to

11   resolving jurisdictional issues, including information that is immaterial to any alleged direct

12   effect in the United States.  Irico also objects that this topic seeks to unreasonably require

13   preparation of a witness on an extremely broad range of information, including "market data,

14   reports, studies, or analysis" used over a 13-year period reaching back over two decades.  Irico

15   also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs

16   of the case in resolving jurisdictional issues.  Irico also objects that the terms "monitoring of

17   consumer market," "reports," "studies," and "analyses" are vague, ambiguous, unintelligible,

18   and subject to multiple interpretations.

19   **TOPIC 12:** Group's and/or Display's sales of CRTs to the following entities, including sales

20   to related entities that manufactured and sold CRT Products during the Class Period:

21   Changhong, Konka, TCL, Skyworth, Hisense, Haier, XOCECO (厦门华侨电子), Soyea (数源

22   科技), Yisheng (深圳溢胜), LG Electronics (Shenyang), Hangzhou Jinlipu (杭州金利普),

23   Shenzhen Techtop, Suntrue, Starlight (or Starlite), Hangzhou Huashan, Suzhou Youshida (苏州

24   优视达), and China National Electronics Import & Export Caihong Co. (中国电子进出口彩虹

25   公司).

26   **OBJECTION TO TOPIC 12**:

27   Irico reasserts and incorporates each of the General Objections and Objections to the

28   Definitions and Instructions set forth above.  Irico further objects that this topic is not described

IRICO DEFS OBJECTIONS TO PLAINTIFFS'          12          CASE NO. 3:07-cv-05944-JST
30(b)(6) NOTICE OF DEPOSITION                                MDL No. 1917

with reasonable particularity.  Irico also objects that this topic seeks information irrelevant to resolving jurisdictional issues, as the listed companies are all based in China.  Irico also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects that this topic seeks information that is more easily available from third parties or already known to Plaintiff, and such information is fully set out in Irico's responses to IPPs' Interrogatory No. 3 (Second Set).  Irico also objects that this topic seeks to unreasonably require a witness to memorize the sales information already produced in response to IPPs' Interrogatory No. 3 (Second Set).

**TOPIC 13:**  Any Communications that Group and/or Display or any affiliate of Group and/or Display had with customers concerning any sales, contemplated sales, pricing, or shipment to the United States during the Class Period.

**OBJECTION TO TOPIC 13**:

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this topic is not described with reasonable particularity.  Irico also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues. Irico also objects that, as described in Irico's responses to DPPs' Interrogatory No. 20 and Request for Production No. 9 and IPPs' Interrogatory No. 17 (First Set), no responsive information on this topic has been found after an extensive search of all physical and electronic sources within Irico's possession, custody, or control.

**TOPIC 14:**  Knowledge of Group and/or Display or any affiliate of Group and/or Display regarding customers' sale of CRT Products to the United States during the Class Period.

**OBJECTION TO TOPIC 14**:

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this topic is not described with reasonable particularity.  Irico also objects that this topic seeks information beyond the scope of what is relevant to resolving jurisdictional issues, including sales by entities with no affiliation to Irico.  Irico also objects that this topic is overbroad, unduly burdensome, and

disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects that this topic seeks information that is more easily available from third parties or already known to Plaintiff, including from Irico's responses to DPPs' Interrogatory No. 20 and IPPs' Interrogatory No. 17 (First Set).

Subject to and without waiving the objections stated above, Irico will designate Zhaojie Wang to discuss in general terms Irico's knowledge, if any, of Irico's customers sales of CRT Products containing Irico CRTs to the United States.

**TOPIC 15:**  The worldwide market share of Group and/or Display for CRTs or CRT Products during the Class Period.

**OBJECTION TO TOPIC 15**:

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this topic is not described with reasonable particularity.  Irico also objects that this topic seeks information beyond the scope of what is relevant to resolving jurisdictional issues.  Irico also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects that this topic seeks information that is publicly available, more easily available from third parties, or already known to Plaintiff.

Subject to and without waiving the objections stated above, Irico will designate Mengquan Guo to discuss in general terms Irico's knowledge of its worldwide CRT market share, to the extent Irico has any such information.

**TOPIC 16:**  The relationship, including any direct or indirect ownership and/or control, between China National Electronics Imp. & Exp. Caihong, Co., Xian Irico Display Technology Co., Ltd., Irico (USA) Inc., and/or the Irico HuangQi Company on the one hand, and Group and/or Display on the other.

**OBJECTION TO TOPIC 16**:

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this topic is not described with reasonable particularity.  Irico also objects that this topic seeks information beyond the

scope of what is relevant to resolving jurisdictional issues, as it relates to entities that are not defendants in this case and have not been alleged to be a participant in any CRT-related conspiracy.  Irico also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects that this topic seeks information that is publicly available, more easily available from third parties, or already known to Plaintiff, including from Irico's responses to DPPs' Interrogatory No. 20, IPPs' Interrogatory No. 4 (Second Set) and Irico's various document productions.

Subject to and without waiving the objections stated above, Irico will designate Mengquan Guo to discuss in general terms the relationship between Irico Group and Display and the entities named in this topic.

**TOPIC 17:**  The ownership of Irico (USA) Inc., including any direct or indirect ownership and/or control, by China National Electronics Imp. & Exp. Caihong, Co., Group and/or Display.

**OBJECTION TO TOPIC 17**:

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this topic is not described with reasonable particularity.  Irico also objects that this topic seeks information beyond the scope of what is relevant to resolving jurisdictional issues, as it relates to entities that are not defendants in this case and have not been alleged to be a participant in any CRT-related conspiracy.  Irico also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects that this topic seeks information that is publicly available, more easily available from third parties, or already known to Plaintiff, including from Irico's responses to DPPs' Interrogatory No. 20, IPPs' Interrogatory No. 4 (Second Set) and Irico's various document productions.

Subject to and without waiving the objections stated above, Irico will designate Mengquan Guo to discuss in general terms the relationship between Irico Group and Display and the entities named in this topic.

**TOPIC 18:**  The nature and extent of the search for Documents and/or information by Group and Display in response to Plaintiffs' discovery requests.

**OBJECTION TO TOPIC 18:**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this topic is not described with reasonable particularity.  Irico also objects that this topic seeks information beyond the scope of what is relevant to resolving jurisdictional issues as the "merits of this case" are not within the scope of current discovery.  Irico also objects that this topic is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving jurisdictional issues.  Irico also objects that this topic seeks information that is already known to Plaintiff, including from Irico's responses to DPPs' Request for Production No. 9 and IPPs' Request for Production No. 18 (First Set).  Irico also objects that this topic calls for information that is privileged under the attorney-client, work product, or any other applicable privilege or immunity.

Subject to and without waiving the objections stated above, Irico will designate Wenkai Zhang to discuss in general terms the extent of Irico's discovery efforts.

Dated:  February 13, 2019

*/s/ Stuart C. Plunkett*

John Taladay (*pro hac vice*)
john.taladay@bakerbotts.com
Erik Koons (*pro hac vice*)
erik.koons@bakerbotts.com
1299 Pennsylvania Ave.,NW
Washington, D.C. 20004
Telephone:  202.639.7700
Facsimile:   202.639.7890

Stuart C. Plunkett (State Bar No. 187971)
stuart.plunkett@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

*Attorneys for Defendants*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

**In re: Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917**

I declare that I am employed in Washington, District of Columbia.  I am over the age of eighteen years and not a party to the within case; my business address is: Baker Botts L.L.P., 1299 Pennsylvania Avenue, Washington, DC 20004.

On February 13, 2019, I served the following document(s) described as:

**IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.'S OBJECTIONS TO PLAINTIFFS' NOTICE OF DEPOSITION OF IRICO DEFENDANTS PURSUANT TO FED. R. CIV. P. 30(b)(6)**

on the following interested parties in this action:

Guido Saveri (guido@saveri.com)
R. Alexander Saveri (rick@saveri.com)
Geoffrey C. Rushing (grushing@saveri.com)
Cadio Zirpoli (cadio@saveri.com)
Matthew D. Heaphy (mheaphy@saveri.com)
SAVERI & SAVERI, INC.
706 Sansome St # 200,
San Francisco, CA 94111

*Lead Counsel for the Direct Purchaser Plaintiffs*

Mario N. Alioto (malioto@tatp.com)
Lauren C. Capurro (laurenrussell@tatp.com)
Joseph M. Patane (jpatane@tatp.com)
TRUMP ALIOTO TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123

*Lead Counsel for the Indirect Purchaser Plaintiffs*

Christopher Micheletti
(cmicheletti@zelle.com)
Qianwei Fu (qfu@zelle.com)
ZELLE LLP
44 Montgomery Street, Suite 3400
San Francisco, CA 94104-4807
D (415) 633-1912

*Lead Counsel for the Indirect Purchaser Plaintiffs*

[X]     (BY ELECTRONIC MAIL) I caused such documents to be sent to the persons at the email addressed listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on February 13, 2019, 2012 at Washington, District of Columbia.

*/s/ Thomas Carter*
Thomas Carter

# EXHIBIT 9

**Matthew Heaphy**

| | |
|---|---|
| **From:** | Tom.Carter@BakerBotts.com |
| **Sent:** | Monday, February 25, 2019 1:31 PM |
| **To:** | stuart.plunkett@bakerbotts.com; LaurenRussell@TATP.com |
| **Cc:** | Matthew Heaphy; john.taladay@bakerbotts.com; erik.koons@bakerbotts.com; kaylee.yang@bakerbotts.com; malioto@tatp.com; jpatane@tatp.com; CMicheletti@zelle.com; QFu@zelle.com; Rick Saveri; Geoff Rushing; Cadio Zirpoli; drew.lucarelli@bakerbotts.com; brian.jacobsmeyer@BakerBotts.com |
| **Subject:** | RE: In re Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917, Master File No. 07-CV-5944-JST |

Counsel:

Irico will designate witnesses for the 30(b)(6) topics originally assigned to Mr. Guo as follows:

- Topic 1: Zhaojie Wang
- Topic 2: Zhaojie Wang
- Topic 7: Wenkai Zhang
- Topic 8: Zhaojie Wang
- Topic 15: Zhaojie Wang
- Topic 16: Wenkai Zhang
- Topic 17: Wenkai Zhang

Thank you,
Tom Carter

---

**From:** Plunkett, Stuart
**Sent:** Monday, February 25, 2019 2:01 PM
**To:** Lauren Capurro <LaurenRussell@TATP.com>
**Cc:** mheaphy@saveri.com; Taladay, John <john.taladay@bakerbotts.com>; Koons, Erik <erik.koons@bakerbotts.com>; Carter, Tom <Tom.Carter@BakerBotts.com>; Yang, Kaylee <kaylee.yang@bakerbotts.com>; malioto@tatp.com; jpatane@tatp.com; CMicheletti@zelle.com; QFu@zelle.com; Rick@saveri.com; Geoff@saveri.com; cadio@saveri.com; Lucarelli, Drew <drew.lucarelli@bakerbotts.com>; Jacobsmeyer, Brian <brian.jacobsmeyer@BakerBotts.com>
**Subject:** RE: In re Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917, Master File No. 07-CV-5944-JST

All:

In advance of our call this morning, I wanted to let you know that we just received word that Mr. Guo will be unable to travel to Hong Kong due to health issues.  The Rule 30(b)(6) topics that Mr. Guo was preparing for will be reassigned to Mr. Zhang and Mr. Wang.  We will send you those details.  Mr. Zhang will sit for deposition Monday and Tuesday and Mr. Wang will go Wednesday, Thursday, and Friday.

Regards,

Stuart

**Stuart C. Plunkett**
Partner, San Francisco Office
stuart.plunkett@bakerbotts.com

T +1.415.291.6203
C +1.415.608.8165

---

**From:** Lauren Capurro <LaurenRussell@TATP.com>
**Sent:** Sunday, February 24, 2019 9:52 PM
**To:** Plunkett, Stuart <stuart.plunkett@bakerbotts.com>
**Cc:** mheaphy@saveri.com; Taladay, John <john.taladay@bakerbotts.com>; Koons, Erik <erik.koons@bakerbotts.com>; Carter, Tom <Tom.Carter@BakerBotts.com>; Yang, Kaylee <kaylee.yang@bakerbotts.com>; malioto@tatp.com; jpatane@tatp.com; CMicheletti@zelle.com; QFu@zelle.com; Rick@saveri.com; Geoff@saveri.com; cadio@saveri.com; Lucarelli, Drew <drew.lucarelli@bakerbotts.com>; Jacobsmeyer, Brian <brian.jacobsmeyer@BakerBotts.com>
**Subject:** Re: In re Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917, Master File No. 07-CV-5944-JST

Stuart:

We would like to talk tomorrow regarding the deposition topics. Does 11.30 am Pacific still work for everyone?

If we are unable to resolve this ourselves, we propose contacting Judge Walker tomorrow to request an expedited/modified briefing schedule on our motion to compel. We would propose simultaneous letter briefs to be submitted on Tuesday so that Walker can rule before the depositions.

Regards,

Lauren

Sent from my iPhone

On Feb 22, 2019, at 9:53 AM, <stuart.plunkett@bakerbotts.com> <stuart.plunkett@bakerbotts.com> wrote:

> Lauren,
>
> Please see attached correspondence.  We can be available Monday anytime between 11:30 a.m. and 4 p.m. if you want to discuss any of these topics.
>
> Regards,
>
> Stuart
>
> **Stuart C. Plunkett**
> Partner, San Francisco Office
> stuart.plunkett@bakerbotts.com
> T +1.415.291.6203
> C +1.415.608.8165

---

**From:** Lauren Capurro (Russell) <LaurenRussell@TATP.com>
**Sent:** Tuesday, February 19, 2019 11:07 AM
**To:** Plunkett, Stuart <stuart.plunkett@bakerbotts.com>; mheaphy@saveri.com; Taladay, John <john.taladay@bakerbotts.com>; Koons, Erik <erik.koons@bakerbotts.com>; Carter, Tom <Tom.Carter@BakerBotts.com>; Yang, Kaylee <kaylee.yang@bakerbotts.com>; malioto@tatp.com; jpatane@tatp.com; CMicheletti@zelle.com; QFu@zelle.com
**Cc:** Rick@saveri.com; Geoff@saveri.com; cadio@saveri.com; Lucarelli, Drew <drew.lucarelli@bakerbotts.com>; Jacobsmeyer, Brian <brian.jacobsmeyer@BakerBotts.com>

**Subject:** RE: In re Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917, Master File No. 07-CV-5944-JST

Stuart,

Please see the attached letter regarding Irico's objections to Plaintiffs' Rule 30(b)(6) topics.

Best,

Lauren

Lauren C. Capurro (Russell)
Attorney at Law
Trump, Alioto, Trump & Prescott, LLP
2280 Union Street
San Francisco, CA 94123
Tel: (415) 563-7200
Direct line: (415) 447-1496
Cell: (415) 860-5051
Fax: (415) 346-0679
E-mail: laurenrussell@tatp.com

This message is sent by a law firm and may contain information that is privileged or confidential.  If you received this transmission in error, please notify the sender by email and delete the message and any attachments.

---

**From:** stuart.plunkett@bakerbotts.com [mailto:stuart.plunkett@bakerbotts.com]
**Sent:** Tuesday, February 19, 2019 10:40 AM
**To:** mheaphy@saveri.com; john.taladay@bakerbotts.com; erik.koons@bakerbotts.com; Tom.Carter@BakerBotts.com; kaylee.yang@bakerbotts.com; malioto@tatp.com; jpatane@tatp.com; LaurenRussell@TATP.com; CMicheletti@zelle.com; QFu@zelle.com
**Cc:** Rick@saveri.com; Geoff@saveri.com; cadio@saveri.com; drew.lucarelli@bakerbotts.com; brian.jacobsmeyer@BakerBotts.com
**Subject:** RE: In re Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917, Master File No. 07-CV-5944-JST

Matt,

Thanks for this information.  Yes, we will provide an interpreter for the depositions.

Stuart

**Stuart C. Plunkett**
Partner, San Francisco Office
stuart.plunkett@bakerbotts.com
T +1.415.291.6203
C +1.415.608.8165

---

**From:** Matthew Heaphy <mheaphy@saveri.com>
**Sent:** Tuesday, February 19, 2019 10:15 AM
**To:** Plunkett, Stuart <stuart.plunkett@bakerbotts.com>; Taladay, John <john.taladay@bakerbotts.com>;

Koons, Erik <erik.koons@bakerbotts.com>; Carter, Tom <Tom.Carter@Baker Botts.com>; Yang, Kaylee <kaylee.yang@bakerbotts.com>; malioto@tatp.com; jpatane@tatp.com; LaurenRussell@TATP.com; CMicheletti@zelle.com; QFu@zelle.com
**Cc:** Rick Saveri <Rick@saveri.com>; Geoff Rushing <Geoff@saveri.com>; Cadio Zirpoli <cadio@saveri.com>; Lucarelli, Drew <drew.lucarelli@bakerbotts.com>; Jacobsmeyer, Brian <brian.jacobsmeyer@BakerBotts.com>
**Subject:** RE: In re Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917, Master File No. 07-CV-5944-JST

Stuart:

Thank you for letting us know about the witnesses' schedules. We will confer internally and determine whether it will be possible for us to extend the depositions after business hours.

Our understanding of the deposition protocol is that Irico is responsible for providing the interpreter and that Plaintiffs may have check interpreters. Please confirm that you will make the arrangements for the interpreter.

The location for the depositions will be:

Kobre & Kim LLP
ICBC Tower, 6th Floor
3 Garden Road
Central, Hong Kong

Best,
Matt

Matthew Heaphy
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, CA 94111
mheaphy@saveri.com
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

---

**From:** stuart.plunkett@bakerbotts.com [mailto:stuart.plunkett@bakerbotts.com]
**Sent:** Friday, February 15, 2019 5:00 PM
**To:** Matthew Heaphy; john.taladay@bakerbotts.com; erik.koons@bakerbotts.com; Tom.Carter@BakerBotts.com; kaylee.yang@bakerbotts.com; malioto@tatp.com; jpatane@tatp.com; LaurenRussell@TATP.com; CMicheletti@zelle.com; QFu@zelle.com
**Cc:** Rick Saveri; Geoff Rushing; Cadio Zirpoli; drew.lucarelli@bakerbotts.com; brian.jacobsmeyer@BakerBotts.com
**Subject:** RE: In re Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917, Master File No. 07-CV-5944-JST

Matt,

I write to follow up on a few items we have discussed regarding the upcoming depositions.  I have confirmed that our witnesses will not be able to arrange for flexible travel schedules that

would allow the deposition days to slip and ultimately go into Saturday.  We will need to all work efficiently and potentially go longer on certain days if necessary.  Regarding translators, we discussed that Irico would provide a translator for the deposition and that plaintiffs would have the option of also bringing a check translator.  Is that consistent with your understanding?  Finally, have you secured a location for the depositions?  We are anxious to know the location as it could impact our travel arrangements.

Thanks much,

Stuart

**Stuart C. Plunkett**
Partner, San Francisco Office
stuart.plunkett@bakerbotts.com
T +1.415.291.6203
C +1.415.608.8165

---

**From:** Matthew Heaphy <mheaphy@saveri.com>
**Sent:** Tuesday, February 5, 2019 1:19 PM
**To:** Taladay, John <john.taladay@bakerbotts.com>; Koons, Erik <erik.koons@bakerbotts.com>; Plunkett, Stuart <stuart.plunkett@bakerbotts.com>; Carter, Tom <Tom.Carter@BakerBotts.com>; Eickhof, Ashley <Ashley.Eickhof@BakerBotts.com>; Yang, Kaylee <kaylee.yang@bakerbotts.com>; malioto@tatp.com; jpatane@tatp.com; LaurenRussell@TATP.com; CMicheletti@zelle.com; QFu@zelle.com
**Cc:** Rick Saveri <Rick@saveri.com>; Geoff Rushing <Geoff@saveri.com>; Cadio Zirpoli <cadio@saveri.com>
**Subject:** In re Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917, Master File No. 07-CV-5944-JST

Counsel:

Please find attached the deposition notices for the upcoming depositions in Hong Kong:

- AMENDED NOTICE OF DEPOSITION OF DEFENDANTS IRICO GROUP CORPORATION AND IRICO DISPLAY DEVICES CO., LTD. PURSUANT TO FED. R. CIV. P. 30(b)(6);
- AMENDED NOTICE OF DEPOSITION OF MENGQUAN GUO;
- AMENDED NOTICE OF DEPOSITION OF ZHAOJIE WANG;
- AMENDED NOTICE OF DEPOSITION OF WENKAI ZHANG; and
- CERTIFICATE OF SERVICE.

We are working on securing a location and will inform you of it as soon as we have done so.

Best,

Matthew Heaphy
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, CA 94111
mheaphy@saveri.com
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

**Confidentiality Notice:**

The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.

<3128_001.pdf>

# EXHIBIT 10



info@certifiedtranslate.com | 2425 Olympic Blvd., Suite 4000W | usa  1-888-856-2228
www.certifiedtranslate.com | Santa Monica, CA 90404 | int  +1-310-684-3153
| | fax  +1-310-564-1944

## CERTIFIED TRANSLATION



A member of the American
Translators Association
ATA Member Number: 248719

*Documents Translated For:*

| Name: | **David Y. Hwu** | Street Address: **706 Sansome Street** |
|---|---|---|
| Firm: | **Saveri & Saveri, Inc.** | City/State/Zip: **San Francisco / CA / 94111** |

*Description of Document(s):*

| |
|---|
| |
| **IDD 2007-8-30E** |
| |
| |

| Source Language: | **SIMPLIFIED CHINESE** | Target Language: | **ENGLISH** |
|---|---|---|---|

WITH REFERENCE TO THE ABOVE MENTIONED MATERIALS/DOCUMENTS, we at Language Fish LLC (doing business as www.certifiedtranslate.com), a professional document translation company, attest that the language translation completed by Language Fish's certified professional translators, represents, to the best of our judgment, an accurate and correct interpretation of the terminology/content of the source document(s). **This is to certify the correctness of the translation only.** We do not guarantee that the original is a genuine document or that the statements contained in the original document(s) are true.

IN WITNESS WHEREOF, Language Fish LLC has caused the Certificate to be signed by its duly authorized officer(s).

**By:**   Sean Kirschenstein, Director          **Date:**   September 25, 2018

A copy of the translated version(s) is attached to this statement of certification.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles

On _Sep. 25, 2018_ before me, ___Kristin Gail Chamberlain___, Notary Public, appeared ___Sean Kirschenstein___, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Kristi Clli_



KRISTIN GAIL CHAMBERLAIN
Commission # 2141880
Notary Public - California
Los Angeles County
My Comm. Expires Feb 7, 2020

# Irico Display Devices Co., Ltd.
# Independent Directors System

(Considered and passed at the fourteenth meeting of the fifth board of directors on August 28, 2007)

## Chapter 1 General Provisions

**Section 1.**　This System is formulated to improve the corporate governance structure of Irico Display Devices Co., Ltd. (the "Company"), promote standardized operations and ensure the conscientious performance of duties by independent directors, and is formulated in accordance with the *Company Law*, the *Guiding Opinions for Establishing Independent Director Systems in Listed Companies* (the "*Guiding Opinions*") and the *Code of Corporate Governance for Listed Companies* issued by the China Securities Regulatory Commission (the "CSRC"), the *Shares Listing Rules* of the Shanghai Stock Exchange, and the *Articles of Associations of Irico Display Devices Co., Ltd.* (the "*Articles of Association*").

**Section 2.**　Independent directors refers to directors who do not hold any positions except for directors in the Company and who do not have any relationship with the Company and its major shareholders that may hinder their independent and objective judgment.

**Section 3.**　The Company shall have three independent directors, including at least one accounting professional.

The term "accounting professional" as mentioned in this section refers to a person with a senior accounting title or who is a certified public accountant.

**Section 4.**　Independent directors and prospective independent directors shall, in accordance with the requirements of the CSRC, participate in trainings organized by the CSRC and its authorized institutions.

**Section 5.**　The provisions concerning directors in the *Articles of Association* shall apply to independent directors, except as otherwise provided in this System.

## Chapter 2 Qualifications of Independent Directors

**Section 6.**　Independent directors shall meet the following basic requirements:

(1) being qualified as a director of a listed company in accordance with laws, administrative regulations and other relevant provisions;

(2) being independent as required by the *Guiding Opinions*, not holding any post other than a director and having no relationship with the Company and its major shareholders that may hinder his or her independent and objective judgment;

(3) having basic knowledge of how listed companies operate and familiarity with relevant laws,

1

administrative regulations, rules and regulations;

(4)  having at least five years of legal, economic or other work experience necessary to perform the duties of an independent director;

(5)   other qualifications stipulated in the *Articles of Association*.

**Section 7.**     The following persons shall not be independent directors:

(1)  Persons working for the Company or the Company's subsidiaries or branch companies, and their immediate relatives and main social relations.

(2)  Natural person shareholders who are directly or indirectly holding one percent or more of the outstanding shares issued by the Company or who are among the top ten shareholders of the Company, and their immediate relatives and main social relations;

(3)  Persons serving in entities that are directly or indirectly holding 5% or more of the outstanding shares issued by the Company or that are among the top five shareholders of the Company, and their immediate relatives and main social relations;

(4)  Persons who fit one of the above three descriptions in the past year;

(5)  Persons having a relationship with the Company, a Company affiliate or Company management in which they are an interested party;

(6)  Persons serving in an institution that has a relationship with the Company in which it is directly or indirectly an interested party;

(7)  Persons providing financial, legal or advisory services to the Company or its subsidiaries or branches, or other personnel who serve in institutions that provide such services;

(8)  Persons serving in securities regulatory departments;

(9)  Persons who are not allowed to serve as directors of a company as stipulated in the *Company Law* or other relevant laws and administrative regulations;

(10)     Persons who have been identified by the CSRC as being prohibited from entering the market and for whom such prohibition has not been removed;

(11)     Any other persons having relations with the Company that may hinder their independent and objective judgment;

(12)     Other persons identified by the CSRC.

The above-mentioned immediate relatives refers to, among others, spouse, parents, and children; main social relations refers to, among others, brothers and sisters, parents-in-law, daughters-in-law, sons-in-law, spouses of brothers and sisters, and spouses' brothers and sisters.

### Chapter 3 Nomination, Election and Replacement of Independent Directors

**Section 8.**     The Company's board of directors, board of supervisors, and shareholders having a single or combined holding of 1% or more of the Company's issued shares may nominate candidates for independent directors to be elected and decided upon at a general shareholders meeting.

**Section 9.**   The nominator of an independent director shall obtain the consent of the nominee before making the nomination. The nominator shall be fully aware of the nominee's occupation, educational background, professional title, detailed work experience, all part-time jobs, etc. and issue his or her opinions on the qualifications and independence of such independent director. The nominee shall make a public statement that there is no relationship between him or her and the Company that may affect his or her independent and objective judgement.

Before a general shareholders meeting to elect independent directors, the Company's board of directors shall publish the above information in accordance with the provisions.

**Section 10.**  Before a general shareholders meeting for the election of independent directors is convened, the Company shall submit relevant materials for all the nominees to the CSRC, the local agency of the CSRC, and the Shanghai Stock Exchange. If the board of directors has any objection to relevant circumstances concerning a nominee, it shall submit its opinion in writing at the same time.

A nominee that the stock exchange objects to may be a candidate for a director of the Company, but not an independent director. When a general shareholders meeting is held to elect independent directors, the board of directors of the Company shall explain whether the candidates for independent directors have met with objection from the stock exchange.

**Section 11.**  In accordance with the provisions of the *Articles of Association*, the cumulative voting system shall be used to elect independent directors at a general shareholders meeting.

**Section 12.**  The term of office of an independent director is the same as that of other directors of the Company. When his or term of office expires, an independent director may be re-elected, but the new term shall not exceed six years.

**Section 13.**  Where an independent director fails to attend a board meeting in person on three consecutive occasions, the board of directors shall request his or her replacement at a general shareholders meeting.

**Section 14.**  Except as otherwise stipulated in laws, regulations, normative documents or the *Articles of Association*, an independent director may not be removed without reason before his or her term of office expires. If removal is necessary, the Company shall disclose it as a special disclosure matter. If the independent director who was removed considers that the Company's reason for the removal is improper, he or she may make a public statement.

**Section 15.**  Independent directors may resign before their term of office expires.

A resigning independent director shall submit a written letter of resignation to the board of directors and shall state any circumstances relating to his resignation or circumstances which he or she considers are necessary to bring to the attention of the shareholders and stakeholders of the Company.

If the resignation of an independent director results in the number of independent directors or board members to be lower than the legal minimum number or the minimum number stipulated in the *Articles of Association*, the board of directors shall, within 60 days of receiving the resignation letter, convene a general meeting of shareholders to elect a replacement independent director. Before the replacement independent director assumes his/her post, the resigning independent director shall still perform his or her

duties in accordance with laws, administrative regulations and the *Articles of Association*. If the election of such replacement independent director is overdue, the resigning independent director may stop performing his or her duties.

The Company shall fill all independent director slots in accordance with the provisions of the *Guiding Opinions*.

**Section 16.**  Where an independent director is unable to perform his or her duties or commits a serious dereliction of duty, the board of directors or the board of supervisors shall request his or her replacement at a general shareholders meeting.

When the board of directors or the board of supervisors adopts the above-mentioned resolution, directors or supervisors who oppose the resolution have the right to request the opportunity to announce their opinions.

**Section 17.**  A shareholder having a single or combined holding of 1% or more of the Company's shares may propose to the board of directors of the Company that an independent director be challenged or removed if he or she is unqualified or incapable of being an independent director, is failing to perform his or her duties independently or is failing to safeguard the legal rights and interests of the Company and small and medium-sized investors. The independent director being questioned shall explain and disclose the questioned matters in a timely manner. The board of directors of the Company shall hold a special meeting for discussion in a timely manner after receiving the challenge or removal proposal and disclose the results of the discussion.

## Chapter 4 Functions and Powers of Independent Directors

**Section 18.**  In order to fully carry out their role as independent directors, the Company grants independent directors the following special powers in addition to the powers granted them by the *Company Law* and other relevant laws and regulations:

(1)  Significant affiliated transactions (namely, affiliated transactions with a total value of more than 3 million yuan or higher than 5% of the Company's most recently audited net asset value that the Company wants to enter into with an affiliate) shall be submitted to the board of directors for discussion only with the prior consent of the independent directors; before the independent directors issue a judgment, they may employ an intermediary to produce an independent professional report to serve as the basis for their judgement.

(2)  To propose to the board of directors the engagement or dismissal of accounting firms;

(3)  To request the board to convene a provisional general shareholders meeting;

(4)  To propose to convene a board meeting;

(5)  Before the board of directors formulates a resolution, if an independent director considers that the information or arguments on the matter under consideration is insufficient, he or she may propose to postpone the voting, and the board of directors shall adopt such proposal;

(6)  To independently engage an external auditing or consulting agency to conduct audits or provide consultations on specific Company matters, and the relevant expenses shall be borne by the Company;

(7) To publicly solicit votes from shareholders before a general meeting of shareholders is convened.

If the above proposals are not adopted or if the above powers cannot be exercised properly, the Company shall disclose the relevant facts and circumstances.

**Section 19.**   In addition to performing the above duties, independent directors shall also express their independent opinions on the following matters to the board of directors or at general meetings of shareholders:

(1)  Nomination, appointment and removal of directors;

(2)  Appointment or dismissal of senior management;

(3)  Remuneration of directors and senior managers of the Company;

(4)  Company's annual financial report;

(5)  Absence of cash distributions in profit distribution plans from the board of directors,

(6)  Schemes for issuing new shares;

(7)  Shareholders, the actual controller and their affiliated enterprises having existing or new loans from the Company or other financial dealings with the Company totaling more than 3 million yuan or higher than 5% of the Company's most recently audited net asset value, and whether the Company has taken effective measures to recover the owed payments;

(8)  Plans for the swap, purchase or sale of assets that account for 30% or more of the Company's most recently audited total assets;

(9)  Venture capital, security and property loss schemes that account for 10% or more of the Company's most recently audited net assets;

(10)    Providing special explanations and independent opinions on the Company's cumulative and current-period external guarantees in the Company's annual reports:

(11)    Matters on which the securities regulatory authority and stock exchange require independent directors to express their opinions;

(12)    Matters on which laws, regulations and normative documents require independent directors to express their opinions;

(13)    Matters that the independent directors believe may damage the rights and interests of minority shareholders;

(14)    Other matters deemed necessary by the independent directors.

**Section 20.**   Independent directors should use one of the following ways to express their independent opinions:

(1)  consent;

(2)  withhold comment and the reason for it;

(3)  object and the reason for it;

(4)  unable to express opinion and the obstacle barring such expression.

**Section 21.**   If a matter involves needed disclosures, the Company shall announce the independent directors' opinion on it, and if the independent directors have differing opinions and are unable to reach consensus, the board of directors shall disclose the opinions of the independent directors separately.

## Chapter 5 Obligations of Independent Directors

**Section 22.**   It is the duty of independent directors to demonstrate integrity, diligence and a sense of responsibility toward the Company and all shareholders. Independent directors shall, in accordance with relevant laws and regulations, the *Guiding Opinions* and the *Articles of Association*, diligently perform their duties, safeguard the interests of the Company and pay special attention to protecting the legal rights and interests of public shareholders.

**Section 23.**   Independent directors shall perform their duties independently and shall not be affected by the major shareholders, the actual controller, or entities or individuals that have an interest in the Company and its major shareholders or actual controller.

**Section 24.**   Independent directors shall, in principle, serve concurrently as independent directors in no more than five listed companies, and shall ensure that they have sufficient time and energy to perform their duties effectively.

**Section 25.**   Independent directors shall attend meetings of the board of directors on time, understand the Company's production work, business, and operations, conduct investigations on their own initiative and obtain the information and materials needed for making decisions.

The information provided by the Company to an independent director shall be kept for at least five years by the Company and the independent director himself or herself.

**Section 26.**   If something causes an independent director to be unable to attend a meeting, he or she may entrust another independent director in writing to attend on his or her behalf.

The power of attorney shall specify the name of the entrusted agent, the matters entrusted to him or her, the powers granted and the validity period of the power of attorney, and shall be signed or sealed by the principal.

An independent director who is entrusted to attend a meeting of the board of directors shall exercise the rights of an independent director within his or her scope of authorization. If an independent director fails to attend a board meeting and also fails to entrust another independent director to attend on his or her behalf, he or she shall be deemed to have waived his or her right to vote at the meeting.

**Section 27.**   An independent director shall submit an annual report on his or her work to the annual general meeting of Company shareholders explaining the performance of his or her duties.

## Chapter 6 Working Conditions of Independent Directors

**Section 28.**   The Company shall ensure that independent directors have access to the same information as other directors. The Company must give independent directors statutory advance notice of any matters requiring decision-making by the board of directors and at the same time provide sufficient information on such matters. If an independent director considers that the information is insufficient, he or she may ask for supplementary information. When two or more independent directors consider that the information is insufficient or the argument is unclear, they may jointly submit a written proposal to the board of directors to postpone the meeting of the board of directors or to postpone the consideration of the matter, and the board of directors shall accept the proposal.

**Section 29.**   The Company shall provide the working conditions necessary for an independent director to perform his duties (including but not limited to providing documents, information, office space, means of transportation and telecommunication, and convenient access to production and business premises).

**Section 30.**   The secretary of the board of directors of the Company shall actively assist the independent directors in performing their duties, such as by giving them an introduction to matters of relevance, providing materials, regularly informing them of Company operations, and organizing field visits by the independent directors if necessary. Where the independent opinions, proposals and written statements issued by the independent directors should be announced, the secretary of the board of directors shall handle the announcement in a timely manner.

**Section 31.**   When an independent director is exercising his functions and powers, relevant Company personnel shall actively cooperate with him or her, and shall not refuse to cooperate, hinder him or her, conceal matters from him or her, or interfere with his or her independent exercising of his functions and powers.

**Section 32.**   The expenses incurred by an independent director in hiring an intermediary institution and other expenses required for exercising his or her functions and powers shall be borne by the Company.

**Section 33.**   The Company shall give independent directors an appropriate allowance. The allowance standard shall be formulated by the board of directors, examined and approved at a general meeting of shareholders and disclosed in the Company's annual report.

Besides the above-mentioned allowance, independent directors shall not receive any additional undisclosed benefits from the Company, its major shareholders or institutions or personnel that have interests in the Company.

**Section 34.**   The Company may establish a necessary liability insurance system for independent directors in order to reduce the risks that may arise from the normal performance of duties by independent directors.

### Chapter 7 Supplementary Provisions

**Section 35.**   The terms "or more" and "or less" in this System are inclusive of the specified number, while the terms "more than," "higher than," "less than" and "lower than" are not inclusive of the specified number.

**Section 36.**   Matters not covered in this System shall be implemented in accordance with relevant national laws, regulations, rules and regulations and the relevant provisions of the Company's *Articles of Association*.

**Section 37.**   This System shall be interpreted by the board of directors.

**Section 38.**   This System shall come into force as of the date on which it is passed by the board of directors.

# 彩虹显示器件股份公司
# 独立董事制度

(2007 年 8 月 28 日第五届董事会第十四次会议审议通过)

## 第一章 总 则

**第一条** 为了进一步完善彩虹显示器件股份有限公司（以下简称"公司"）的治理结构，促进公司规范运作，确保独立董事认真履行职责，根据《公司法》、中国证监会发布的《关于在上市公司建立独立董事制度的指导意见》（以下简称"《指导意见》"）和《上市公司治理准则》、上海证券交易所《股票上市规则》及《彩虹显示器件股份有限公司章程》（以下简称"《公司章程》"）的有关规定，特制定本制度。

**第二条** 独立董事是指不在公司担任除董事外的其他职务，并与公司及公司主要股东不存在可能妨碍其进行独立客观判断关系的董事。

**第三条** 公司设独立董事三名，其中至少包括一名会计专业人士。

本条所称会计专业人士是指具有高级职称或注册会计师资格的人士。

**第四条** 独立董事及拟担任独立董事的人士应当按照中国证监会的要求，参加中国证监会及其授权机构组织的培训。

**第五条** 《公司章程》中关于董事的规定适用于独立董事，本制度另有规定的除外。

## 第二章 独立董事的任职条件

**第六条** 担任公司独立董事应当符合下列基本条件：

（一）根据法律、行政法规及其他有关规定，具备担任上市公司董事的资格；

（二）具有《指导意见》所要求的独立性，必须不在公司担任除董事外的其他职务，并与公司及其主要股东不存在可能妨碍其进行独立客观判断的关系；

（三）具备上市公司运作基本知识，熟悉相关法律、行政法规、规章及规则；

（四）具有五年以上法律、经济或其他履行独立董事职责所必需的工作经验；

（五）《公司章程》规定的其他条件。

**第七条** 下列人员不得担任独立董事：

（一）在公司或公司的子公司、分公司任职的人员及其直系亲属、主要社会关系；

（二）直接或间接持有公司发行在外股份百分之一以上或者居公司前十名股东中的自然人股东及其直系亲属、主要社会关系；

（三）在直接或间接持有公司发行在外股份百分之五以上或者居公司前五名股东中的单位任职的人员及其直系亲属、主要社会关系；

（四）最近一年内曾经具有前三项所列举情形的人员；

（五）与公司、公司关联人或公司管理层人士有利益关系的人员；

（六）在直接或间接地与公司存在业务联系或利益关系的机构任职的人员；

（七）为公司或者公司的子公司、分公司提供财务、法律、咨询等服务的人员或者在该等机构中任职的其他人员；

（八）在证券监管部门任职的人员；

（九）《公司法》或其他相关法律、行政法规规定不得担任公司董事的人员；

（十）被中国证监会认定为市场禁入者且禁入尚未解除的人员；

（十一）与公司之间存在其他任何可能影响其作出独立客观判断的关系的人员；

（十二）中国证监会认定的其他人员。

上述直系亲属是指配偶、父母、子女等；主要社会关系是指兄弟姐妹、岳父母、儿媳、女婿、兄弟姐妹的配偶、配偶的兄弟姐妹等。


**第三章 独立董事的提名、选举和更换**

**第八条** 公司董事会、监事会、单独或者合并持有公司已发行股份 1%以上

的股东可以提名独立董事候选人，并经股东大会选举决定。

**第九条** 独立董事的提名人在提名前应当征得被提名人的同意。提名人应当充分了解被提名人职业、学历、职称、详细的工作经历、全部兼职等情况，并对其担任独立董事的资格和独立性发表意见，被提名人应当就其本人与公司之间不存在任何影响其独立客观判断的关系发表公开声明。

在选举独立董事的股东大会召开前，公司董事会应当按照规定公布上述内容。

**第十条** 在选举独立董事的股东大会召开前，公司应将所有被提名人的有关材料报送中国证监会、公司所在地中国证监会派出机构和上海证券交易所。公司董事会对被提名人的有关情况有异议的，应同时报送董事会的书面意见。

对证券交易所持有异议的被提名人，可作为公司董事候选人，但不作为独立董事候选人。在召开股东大会选举独立董事时，公司董事会应对独立董事候选人是否被证券交易所提出异议的情况进行说明。

**第十一条** 股东大会就选举独立董事进行表决时，根据《公司章程》的规定，采用累积投票制。

**第十二条** 独立董事每届任期与公司其他董事任期相同，任期届满，连选可以连任，但是连任时间不得超过六年。

**第十三条** 独立董事连续 3 次未亲自出席董事会会议的，由董事会提请股东大会予以撤换。

**第十四条** 除非法律、法规、规范性文件及《公司章程》另有规定外，独立董事任期届满前不得无故被免职。如果必须免职时，公司应将其作为特别披露事项予以披露，被免职的独立董事认为公司的免职理由不当的，可以作出公开的声明。

**第十五条** 独立董事在任期届满前可以提出辞职。

独立董事辞职应向董事会递交书面辞职报告，并对任何与其辞职有关或其认为有必要引起公司股东和利益相关者注意的情况进行说明。

独立董事辞职导致独立董事成员或董事会成员低于法定或《公司章程》规定的最低人数时，董事会应当在自接到辞职报告之日起的六十日内召集股东大会补选独立董事。在补选的独立董事就任前，该等辞职独立董事仍应当按照法律、行

政法规及《公司章程》的规定履行职务。逾期未补选独立董事时，该等辞职独立董事可以不再履行职务。

公司应当按照《指导意见》的规定补足独立董事人数。

**第十六条**　独立董事不能履行职责或发生严重失职行为时，由董事会或监事会提请股东大会予以撤换。

董事会或监事会作出上述决议时，持反对意见的董事或监事有权要求对其意见进行公告。

**第十七条**　对于不具备独立董事资格或能力、未能独立履行职责、或未能维护公司和中小投资者合法权益的独立董事，单独或者合计持有公司 1%以上股份的股东可以向公司董事会提出对独立董事的质疑或罢免提议。被质疑的独立董事应及时解释质疑事项并予以披露。公司董事会应在收到相关质疑或罢免提议后及时召开专项会议进行讨论，并将讨论结果予以披露。


## 第四章　独立董事的职权

**第十八条**　为了充分发挥独立董事的作用，独立董事除应当具有《公司法》和其他相关法律、法规赋予董事的职权外，公司还赋予独立董事以下特别职权：

（一）重大关联交易（指公司拟与关联人达成的总额高于 300 万元或高于公司最近经审计净资产值的 5%的关联交易）应由独立董事事前同意后，方可提交董事会讨论；独立董事作出判断前，可以聘请中介机构出具独立专业报告，作为其判断的依据；

（二）向董事会提议聘用或解聘会计师事务所；

（三）向董事会提请召开临时股东大会；

（四）提议召开董事会；

（五）董事会作出决议前，独立董事认为审议事项资料或论证不充分，提议暂缓表决时，董事会应予以采纳；

（六）独立聘请外部审计机构和咨询机构，对公司的具体事项进行审计和咨询，相关费用由公司承担；

（七）可以在股东大会召开前公开向股东征集投票权。

如上述提议未被采纳或上述职权不能正常行使，公司应将有关情况予以披露。

**第十九条**　独立董事除履行上述职责外，还应当对以下事项向董事会或股东大会发表独立意见：

（一）提名、任免董事；

（二）聘任或解聘高级管理人员；

（三）公司董事、高级管理人员的薪酬；

（四）公司年度财务报告；

（五）董事会作出的利润分配预案中不含现金派息时；

（六）公司发行新股的方案；

（七）公司的股东、实际控制人及其关联企业对公司现有或新发生的总额高于 300 万元或高于公司最近经审计净资产值 5%以上的借款或其他资金往来，以及公司是否采取有效措施回收欠款；

（八）占公司最近经审计后总资产百分之三十以上的资产置换、收购或出售方案；

（九）占公司最近经审计后净资产百分之十以上的风险投资、担保及财产损失方案；

（十）在公司年度报告中，对公司累计和当期对外担保情况进行专项说明，并发表独立意见；

（十一）证券监管部门、证券交易所要求独立董事发表意见的事项；

（十二）法律、法规及规范性文件要求独立董事发表意见的事项；

（十三）独立董事认为可能损害中小股东权益的事项；

（十四）独立董事认为必要的其他事项。

**第二十条**　独立董事发表独立意见应采用下列方式之一：

（一）同意；

（二）保留意见及其理由；

（三）反对意见及其理由；

（四）无法发表意见及其障碍。

第二十一条　如有关事项涉及需要披露时，公司应当将独立董事的意见予以公告，独立董事出现意见分歧无法达成一致时，董事会应将各独立董事的意见分别披露。

## 第五章　独立董事的义务

第二十二条　独立董事对公司及全体股东负有诚信、勤勉、尽责义务。独立董事应当按照相关法律法规、《指导意见》和《公司章程》的要求，认真履行职责，维护公司利益，尤其要关注社会公众股股东的合法权益不受损害。

第二十三条　独立董事应当独立履行职责，不受公司主要股东、实际控制人、或者与公司及其主要股东、实际控制人存在利害关系的单位或个人的影响。

第二十四条　独立董事原则上最多在 5 家上市公司兼任独立董事，并确保有足够的时间和精力有效地履行独立董事的职责。

第二十五条　独立董事应当按时出席董事会会议，了解公司的生产经营和运作情况，主动进行调查，获取做出决策所需要的情况和资料。

公司向独立董事提供的资料，公司及独立董事本人应当至少保存五年。

第二十六条　独立董事因故不能出席的，可以书面委托其他独立董事代为出席。

委托书应当载明代理人的姓名、代理事项和权限、有效期限，并由委托人签名或盖章。

代为出席董事会会议的独立董事应当在授权范围内行使独立董事的权利。独立董事未出席董事会会议，亦未委托其他独立董事代表出席的，视为放弃在该次会议上的投票权。

第二十七条　独立董事应当向公司年度股东大会提交年度述职报告，对其履行职责的情况进行说明。

## 第六章　独立董事的工作条件

　　**第二十八条**　公司应当保证独立董事享有与其他董事同等的知情权。凡须经董事会决策的事项，公司必须按法定的时间提前通知独立董事并同时提供足够的资料，独立董事认为资料不充分的，可以要求补充。当2名或2名以上独立董事认为资料不充分或论证不明确时，可联名书面向董事会提出延期召开董事会会议或延期审议该事项，董事会应予以采纳。

　　**第二十九条**　公司应提供独立董事履行职责所必需的工作条件（包括但不限于提供文件、资料、办公场所、交通和通信工具及出入生产经营场所的便利条件）。

　　**第三十条**　公司董事会秘书应积极为独立董事履行职责提供协助，如介绍情况、提供材料、定期通报公司运营情况，必要时可组织独立董事实地考察等。独立董事发表的独立意见、提案及书面说明应当公告的，董事会秘书应及时办理公告事宜。

　　**第三十一条**　独立董事行使职权时，公司有关人员应当积极配合，不得拒绝、阻碍或隐瞒，不得干预其独立行使职权。

　　**第三十二条**　独立董事聘请中介机构的费用及其他行使职权时所需的费用由公司承担。

　　**第三十三条**　公司应当给予独立董事适当的津贴。津贴的标准应当由董事会制订预案，股东大会审议通过，并在公司年报中进行披露。

　　除上述津贴外，独立董事不应从公司及其主要股东或有利害关系的机构和人员取得额外的、未予披露的其他利益。

　　**第三十四条**　公司可以建立必要的独立董事责任保险制度，以降低独立董事正常履行职责可能引致的风险。


## 第七章　附则

　　**第三十五条**　本制度所称"以上"、"以下"均含本数；"高于"、"低于"均不含本数。

　　**第三十六条**　本制度未尽事宜，依照国家有关法律、法规、规章和《公司章程》的有关规定执行。

　　**第三十七条**　本制度由公司董事会负责解释。

　　**第三十八条**　本制度自董事会通过之日起实施。

# EXHIBIT 11



**certified**translate
A LANGUAGE FISH LLC COMPANY

info@certifiedtranslate.com | 2425 Olympic Blvd., Suite 4000W | usa 1-888-856-2228
www.certifiedtranslate.com | Santa Monica, CA 90404 | int +1-310-684-3153
| | fax +1-310-564-1944

## CERTIFIED TRANSLATION



A member of the American
Translators Association
ATA Member Number: 248719

*Documents Translated For:*

| Name: | **David Y. Hwu** | Street Address: **706 Sansome Street** |
|---|---|---|
| Firm: | **Saveri & Saveri, Inc.** | City/State/Zip: **San Francisco / CA / 94111** |

*Description of Document(s):*

| |
|---|
| |
| **IDD 2007-8-30E** |
| |
| |

| Source Language: | **SIMPLIFIED CHINESE** | Target Language: | **ENGLISH** |
|---|---|---|---|

WITH REFERENCE TO THE ABOVE MENTIONED MATERIALS/DOCUMENTS, we at Language Fish LLC (doing business as www.certifiedtranslate.com), a professional document translation company, attest that the language translation completed by Language Fish's certified professional translators, represents, to the best of our judgment, an accurate and correct interpretation of the terminology/content of the source document(s). **This is to certify the correctness of the translation only.** We do not guarantee that the original is a genuine document or that the statements contained in the original document(s) are true.

IN WITNESS WHEREOF, Language Fish LLC has caused the Certificate to be signed by its duly authorized officer(s).

**By:** Sean Kirschenstein, Director          **Date:** September 25, 2018

A copy of the translated version(s) is attached to this statement of certification.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles

On _Spt. 25, 2018_ before me, ____Kristin Gail Chamberlain____, Notary Public, appeared ____Sean Kirschenstein____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Kristi Chm_



KRISTIN GAIL CHAMBERLAIN
Commission # 2141860
Notary Public - California
Los Angeles County
My Comm. Expires Feb 7, 2020

# Irico Display Devices Co., Ltd.

# Work Rules of Nominating Committee of Board of Directors

(Considered and passed at the fourteenth meeting of the fifth board of directors on August 28, 2007)

## Chapter 1 General Provisions

**Section 1.**  These Work Rules are formulated to meet the development needs of Irico Display Devices Co., Ltd. (the "Company"), improve corporate governance, attract talented people from far and wide and achieve sustainable development, and are formulated in accordance with the *Company Law*, *Code of Corporate Governance for Listed Companies*, the *Articles of Association* and other applicable provisions.

**Section 2.**  The Nominating Committee is a special work unit under the board of directors mainly responsible for selecting appropriate directors and senior managers to meet the Company's development needs.

**Section 3.**  Directors as referred to in these Work Rules include internal directors and external directors.

Senior managers as referred to in these Work Rules refer to the Company's senior managers engaged by the board of directors, including the general manager, deputy general manager, chief accountant, board secretary and other senior managers as recognized by the Company.

## Chapter 2 Makeup of the Personnel

**Section 4.**  The Nominating Committee is comprised of five directors, no less than half of whom shall be independent directors.

**Section 5.**  The members of the Nominating Committee shall be appointed by the board of directors.

**Section 6.**  The Nominating Committee shall have one chairman, who shall be an independent director and shall be responsible for presiding over the Committee's work.

**Section 7.**  The term of office of Nominating Committee members shall be the same as that of the concurrent board of directors. If a member is no longer a director of the Company during the term of office, such member shall automatically lose his or her qualification to be a Committee member.

When the board of directors begins a new session, continuing board members may continue to be Nominating Committee members.

**Section 8.**  The Company's board office shall assist with the work of the Nominating Committee.

## Chapter 3 Duties and Responsibilities

**Section 9.**  The key duties and responsibilities of the Nominating Committee are:

(1)      Study and formulate the selection standards and procedures for directors and senior managers;

(2)      Widely search for qualified candidates for directors and senior managers;

(3)      Review the qualifications of proposed directors and senior managers and put forward suggestions.

## Chapter 4 Procedural Rules

**Section 10.** The Nominating Committee shall send out a meeting notice at least five days in advance of a meeting.

**Section 11.** The chairman of the Nominating Committee shall preside over the Committee's meetings.

**Section 12.** All Committee members must be present for a Nominating Committee meeting to proceed.

**Section 13.** The Nominating Committee may invite the Company's chairman, supervisors, and board secretary as well as professional consultants and legal advisors to attend the meeting as nonvoting delegates.

**Section 14.** Voting in the Nominating Committee shall be done by a show of hands. Each member has one vote.

There shall be two types of votes in the Nominating Committee: for or against.

**Section 15.** Resolutions by the Nominating Committee shall be passed upon approval by two-thirds or more of the members.

**Section 16.** All matters subject to resolution by the Nominating Committee, no matter if such resolution is passed by the Committee, shall be submitted to the board of directors for consideration. Members who object to a resolution have the right to make a statement at the board meeting.

**Section 17.** Minutes shall be taken at Nominating Committee meetings and signed by the members who attended the meetings.

**Section 18.** Nomination Committee meeting minutes are confidential Company documents and shall be kept by the board secretary for at least ten years.

**Section 19.** All persons attending Nominating Committee meetings shall be obliged to maintain confidentiality and shall not disclose information about the meetings without the authorization of the Company's chairman or the board of directors.

## Chapter 5 Supplementary Provisions

**Section 20.** These Work Rules are formulated and revised by the board of directors.

**Section 21.** These Work Rules shall be interpreted by the board of directors.

**Section 22.** These Work Rules shall come into force as of the date on which they are passed by the board of directors.

# 彩虹显示器件股份有限公司
# 董事会提名委员会工作细则

(2007 年 8 月 28 日第五届董事会第十四次会议审议通过)

## 第一章   总则

**第一条**   为了适应彩虹显示器件股份有限公司（以下简称"公司"）发展需要，完善公司治理，广泛吸纳人才，实现可持续发展，根据《公司法》、《上市公司治理准则》、《公司章程》及其他有关规定，制定本工作细则。

**第二条**   提名委员会是董事会下设的专门工作机构，主要负责选择适合公司发展需要的董事、高层管理人员。

**第三条**   本细则所称董事包括内部董事和外部董事。

本细则所称高层管理人员指由董事会聘任的公司高级管理人员，包括总经理、副总经理、总会计师和董事会秘书及其公司认定的高级管理人员。

## 第二章   人员组成

**第四条**   提名委员会成员由五名董事组成，其中独立董事人数不少于二分之一。

**第五条**   提名委员会委员由董事会委任。

**第六条**   提名委员会设主任委员一名，由独立董事担任，负责主持委员会工作。

**第七条**   提名委员会委员任期与同届董事会任期一致。委员在任期内不再担任公司董事职务，即自动失去委员资格。

董事会换届后，连任董事可以连任提名委员会委员。

**第八条**   公司董事会办公室协助提名委员会工作。

## 第三章   工作职责

**第九条**   提名委员会的主要职责：

（1）研究制订董事和高管人员的选择标准和程序；

1

（2）广泛搜寻合格的董事、高管人员的人选；

（3）对拟任董事和高管人员的资格进行审查并提出建议。

## 第四章    议事规则

**第十条**　提名委员会召开会议，至少应当提前五日发出会议通知。

**第十一条**　提名委员会会议由主任委员主持。

**第十二条**　提名委员会会议应当由全体委员出席方可召开。

**第十三条**　提名委员会召开会议时，可以邀请公司董事长、监事、董事会秘书及专业咨询顾问、法律顾问列席会议。

**第十四条**　提名委员会采用举手方式进行表决，每一名委员有一票表决权。

提名委员会表决意见分为同意、反对两种。

**第十五条**　提名委员会作出决议须经三分之二以上委员通过。

**第十六条**　需经提名委员会作出决议的事项，无论是否获得会议通过，均应呈报董事会审议，持有反对意见的委员有权在董事会会议上进行陈述。

**第十七条**　提名委员会会议应当制作会议记录，出席会议的委员应当在会议记录上签名。

**第十八条**　提名委员会会议记录属于公司机密文件。会议记录由公司董事会秘书保存，保存期不少于十年。

**第十九条**　参加提名委员会会议的人员均负有保密义务，非经公司董事长或董事会授权，不得擅自披露会议有关信息。

## 第五章    附则

**第二十条**　本工作细则由董事会制订并修改。

**第二十一条**　本工作细则由董事会解释。

**第二十二条**　本工作细则自董事会通过之日起实施。

# EXHIBIT 12

**[Document Submitted Under Seal]**

# EXHIBIT 13
## [Document Submitted Under Seal]

# EXHIBIT 14



info@certifiedtranslate.com | 2425 Olympic Blvd., Suite 4000W | usa 1-888-856-2228
www.certifiedtranslate.com | Santa Monica, CA 90404 | int +1-310-684-3153
| | fax +1-310-564-1944

## CERTIFIED TRANSLATION

A member of the American
Translators Association
ATA Member Number: 248719

*Documents Translated For:*

| Name: | **David Y. Hwu** | Street Address: **706 Sansome Street** |
|---|---|---|
| Firm: | **Saveri & Saveri, Inc.** | City/State/Zip: **San Francisco / CA / 94111** |

*Description of Document(s):*

| |
|---|
| |
| **IRI-CRT-00001154E** |
| |
| |

| Source Language: | **SIMPLIFIED CHINESE** | Target Language: | **ENGLISH** |
|---|---|---|---|

WITH REFERENCE TO THE ABOVE MENTIONED MATERIALS/DOCUMENTS, we at Language Fish LLC (doing business as www.certifiedtranslate.com), a professional document translation company, attest that the language translation completed by Language Fish's certified professional translators, represents, to the best of our judgment, an accurate and correct interpretation of the terminology/content of the source document(s). **This is to certify the correctness of the translation only.** We do not guarantee that the original is a genuine document or that the statements contained in the original document(s) are true.

IN WITNESS WHEREOF, Language Fish LLC has caused the Certificate to be signed by its duly authorized officer(s).

**By:** Sean Kirschenstein, Director          **Date:** September 25, 2018

A copy of the translated version(s) is attached to this statement of certification.

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles

On _Sep. 25, 2018_ before me, ___Kristin Gail Chamberlain___, Notary Public, appeared ___Sean Kirschenstein___, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ___Kristi Cllli___



KRISTIN GAIL CHAMBERLAIN
Commission # 2114880
Notary Public - California
Los Angeles County
My Comm. Expires Feb 7, 2020

# Purchase and Sales Contract for Industrial and Mineral Products

Supplier: IRICO Display Device Co., Ltd.

Purchaser: China National Electronics Import and Export Caihong Company

Contract Number: CHGF0207173

Place of signing: Xianyan, Shaanxi

Date of signing: June 26, 2002

I. Product name, trademark, model and quantity:

| Product Name | Trademark | Specification | Unit of Measure | Quantity | Price (yuan / unit) | Sum (yuan) | Delivery Date and Quantity |
|---|---|---|---|---|---|---|---|
| | | | | | | | July |
| Color tubes | Caihong | 21" | Unit | 4848 | 450.45 | 2183781.6 | |
| Color tubes | Caihong | 21" | Unit | 18112 | 377.91 | 6844705.92 | |
| Color tubes | Caihong | 25" | Unit | 1 | 530 | 530 | |
| Total amount (in words): nine million, twenty-nine thousand, seventeen yuan and fifty-two hundredths. | | | | | | | |

II. Quality requirements, technical standards, quality responsibility conditions and deadline for the supplier: implemented based on the technical specifications of the supplier.

III. Delivery / pickup location and method: warehouse of the supplier.

IV. Method of transportation, arrival station port and cost sharing: the buyer shall take care of transportation and freight.

V. Packing standards and supply and recovery of wrapping materials: use the original package of the supplier (plastic film packing), without recovering packing materials.

VI. Method and deadline of settlement: delivery upon payment.

VII. Liability for violation of contract: settlement negotiated by the two parties

VIII. Method to resolve contract disputes: in case of disputes during the execution of the contract, the two parties involved shall seek a negotiated settlement. If no agreement is reached through negotiation, they can file a suit at the people's court in the place of signing.

IX. Other agreed terms:

The purchaser shall notify the supplier in written form in advance of the specifications of the supplies and the parameters of the magnetic field of the color tubes.

X. This contract has four copies of the same format (the supplier retains two copies, and the purchaser retains two copies). The contract shall enter into effect upon being signed and stamped with the contract seal by both parties.

| Supplier | Purchaser |
|---|---|
| Company name (seal): IRICO Display Device Co., Ltd. | Company name (seal): |
|    IRICO Display Device Co., Ltd. |    IRICO Group Co., Ltd. |
|    Special seal for contract use (2) [seal] |    IRICO Import and Export Company [seal] |
| Company address: West Zone of High Tech Development Zone, Xi'an City, Shaanxi Province | Company address: |
| Legal representative: Wang Guojun [signature] | Legal representative: |
| Entrusted agent: | Entrusted agent: Gao Rongguo [signature] |
| Telephone: | Telephone: |
| Bank of deposit: Caihong Branch of Industrial and Commercial Bank of China in Xianyang City | Bank of deposit: |
| Account number: 2604020909022108284 | Account number: |
| Postal code: 712021 | Postal code:     Xu Haiyan [signature] |

Effective period: June 26, 2002 to July 28, 2002

# 工矿产品购销合同

供方：彩虹显示器件股份有限公司　　　　　　合同编号：CHGF0207173
需方：中国电子进出口彩虹公司　　　　　　　签订地点：陕西咸阳
　　　　　　　　　　　　　　　　　　　　　签订时间：2002 年 6 月 26 日

一、产品名称、商标、型号、数量：

| 产 品<br>名 称 | 商标 | 规格 | 计量<br>单位 | 数量 | 价格<br>(元/只) | 金额<br>(元) | 交货日期及数量 |
|---|---|---|---|---|---|---|---|
| 彩管 | 彩虹 | 21″ | 只 | 4848 | 450.45 | 2183781.6 | 7月 |
| 彩管 | 彩虹 | 21″ | 只 | 18112 | 377.91 | 6844705.92 | |
| 彩管 | 彩虹 | 25″ | 只 | 1 | 530 | 530 | |
| 合计金额（大写）：玖佰零贰万玖仟零壹拾柒元伍角贰分. | | | | | | | |

二、质量要求、技术标准、供方对质量负责的条件和期限：__按供方技术规格书标准执行.__

三、交（提）货地点、方式：__供方仓库.__

四、运输方式及到达站港和费用负担：__需方负责运输，运费由需方支付.__

五、包装标准、包装物供应及回收：__供方原包装（塑膜包装），包装物不回收.__

六、结算方式及期限：__款到发货.__

七、违约责任：__由双方协商解决.__

八、解决合同纠纷的方式：本合同在履行过程中发生争议，由当事人双方协商解决。协商不成，可向签
　　订地人民法院起诉。

九、其它约定事项：
　　　　　　__具体供货规格及彩管磁场参数由需方提前书面通知供方.__

十、本合同一式四份（供方两份、需方两份），双方代表签字并加盖合同章后本合同生效。

| 供　　　　　方 | 需　　　　　方 |
|---|---|
| 单位名称（章）：彩虹显示器件股份有限公司 | 单位名称（章） |
| 单位地址：陕西省西安市高新开发区西区 | 单位地址： |
| 法定代表人： | 法定代表人： |
| 委托代理人： | 委托代理人： |
| 电话： | 电话： |
| 开户行：咸阳市工行彩虹分理处 | 开户行： |
| 帐号：2604020909022108284 | 帐号： |
| 邮政编码：712021 | 邮政编码： |
| | 有效期限：2002 年 6 月 26 日至 2002 年 7 月 28 日 |

IRI-CRT-00001154

# EXHIBIT 15

**[Document Submitted Under Seal]**

# EXHIBIT 16

**[Document Submitted Under Seal]**

# EXHIBIT 17

## [Document Submitted Under Seal]

# EXHIBIT 18

## [Document Submitted Under Seal]

# EXHIBIT 19

**[Document Submitted Under Seal]**

# EXHIBIT 20
**[Document Submitted Under Seal]**

# EXHIBIT 21
**[Document Submitted Under Seal]**

# EXHIBIT 22

**[Document Submitted Under Seal]**

# EXHIBIT 23



**State-owned Assets Supervision and Administration Commission of the State Council**

中文   Contact Us   Search...

HOME        ABOUT US        LATEST        SPECIALS        DIRECTORY        RESOURCES        VIDEOS

Home > Laws and Regulations

# Interim Regulations on Supervision and Management

Updated: 2003-11-24        (en.sasac.gov.cn)

Decree of the State Council of the People's Republic of China

No. 378

Interim Regulations on Supervision and Management of State-owned Assets of Enterprises, adopted at the Eighth Executive Meeting of the State Council on May 13, 2003, are hereby promulgated and shall be effective as of the date of promulgation.

Premier: Wen Jiabao

May 27, 2003

Interim Regulations on Supervision and Management of State-owned Assets of Enterprises

Chapter I General Provisions

Article 1 These Regulations are formulated to establish a State-owned assets supervision and management system that suits the needs of socialist market economy, better run State-owned enterprises, push forward the strategic adjustment to the layout and structure of the State economy, develop and expand the State economy, and realize the preservation of and increase in the value of State-owned assets.

Article 2 These Regulations are applicable to the supervision and management of State-owned assets of State-owned enterprises, State-owned holding enterprises and enterprises with State-owned equity.

These Regulations are not applicable to the supervision and management of State-owned assets of financial institutions.

Article 3 For purposes of these Regulations, the term "State-owned assets of enterprises" refers to all forms of State investments in enterprises and the equities generated therefrom, as well as otherequitieswhich are legally determined to be owned by the State.

Article 4 State-owned assets of enterprises are owned by the State. The State exercises a State-owned assets management system under which the State Council and local people's governments perform the responsibilities of investor on behalf of the State respectively, enjoying owner's equity, combining rights with obligations and duties, and administering assets, personnel and other affairs.



STATE-OWNED ASSETS SUPERVISION AND ADMINISTRATION COMMISSION OF THE STATE COUNCIL

## Specials



DEDICATED SOE PERSONNEL *in the B&R projects*



CENTRAL SOES and POVERTY ALLEVIATION

Article 5 The State Council represents the State in performing the responsibilities of investor in large State-owned enterprises, State-owned holding enterprises and enterprises with State-owned equity, which have a vital bearing on the lifeline of the national economy and State security, and in large State-owned enterprises, State-owned holding enterprises and enterprises with State-owned equity within such sectors as important infrastructure and natural resources. Enterprises in which the State Council performs the responsibilities of investor are to be determined and announced by the State Council.

The people's government of a province, autonomous region or municipality directly under the Central Government, the people's government at the level of city divided into districts or of autonomous prefecture shall respectively represent the State in performing the responsibilities of investor in State-owned enterprises, State-owned holding enterprises and enterprises with State-owned equity other than those in which the State Council performs the responsibilities of investor. Enterprises in which the people's government of the province, autonomous region or municipality directly under the Central Government performs the responsibilities of investor are to be determined and announced by the people's government of such province, autonomous region or municipality directly under the Central Government, and be reported for the record to the State-owned assets supervision and administration authority of the State Council. Other enterprises in which the people's government at the level of city divided into districts or of autonomous prefecture performs the responsibilities of investor are to be determined and announced by the people's government at the level of city divided into districts or of autonomous prefecture, and be reported for the record to the State-owned assets supervision and administration authority of the people's government of the province, autonomous region or municipalities directly under the Central Government.

Enterprises in which the State Council, the people's government of a province, autonomous region or municipality directly under the Central Government, or the people's government at the level of city divided into districts or of autonomous prefecture performs the responsibilities of investor are hereinafter collectively referred to as the invested enterprises.

Article 6 The State Council, the people's government of a province, autonomous region or municipality directly under the Central Government, the people's government at the level of city divided into districts or of autonomous prefecture shall establish a State-owned assets supervision and administration authority respectively. The State-owned assets supervision and administration authority shall, under the authorization, perform the responsibilities of investor according to law, supervise and administer State-owned assets of enterprises according to law.

Subject to the approval of the people's government of a province, autonomous region or municipality directly under the Central Government, a city divided into districts or autonomous prefecture where State-owned assets form a smaller part of the total assets of enterprises need not establish a separate State-owned assets supervision and administration authority.

Article 7 People's governments at all levels shall strictly abide by the laws and regulations on State-owned assets management, persist in the separation of government functions of social and public administration from the functions of investor of State-owned assets, persist in the separation of government functions from enterprise management and separation of ownership from management.

The State-owned assets supervision and administration authority shall not perform the functions of social and public administration assumed by the government. Other institutions and departments under the government shall not perform the responsibilities of investor of State-owned assets of enterprises.

Article 8 The State-owned assets supervision and administration authority shall, in accordance with these Regulations and other related laws and administrative regulations, establish and improve its internal supervision systems and strictly abide by the laws and administrative regulations.

Article 9 In the event of wars, serious natural calamities or other major and emergent situations, the State may, in accordance with the law, uniformly reallocate and dispose State-owned assets of enterprises.

Article 10 The invested enterprises and the enterprises set up with the investment of such invested enterprises enjoy autonomy in their operation as provided by the relevant laws and administrative regulations.

The State-owned assets supervision and administration authority shall support the independent operation of enterprises according to law, and shall not interfere in their production and operation activities, apart from performing the responsibilities of investor.

Article 11 The invested enterprises shall make efforts to increase economic efficiency and bear the responsibility of preserving and increasing the value of State-owned assets operated and managed by them.

The invested enterprises shall accept the supervision and administration conducted by the State-owned assets supervision and administration authority according to law, and shall not harm the legitimate rights and interests enjoyed by the owner of State-owned assets of enterprises and other investors.

Chapter II State-owned Assets Supervision and Administration Authorities

Article 12 The State-owned assets supervision and administration authority of the State Council is a specially established authority directly subordinated to the State Council which, on behalf of the State Council, performs the responsibilities of investor, supervises and manages State-owned assets of enterprises.

The State-owned assets supervision and administration authority of the people's government of a province, autonomous region or municipality directly under the Central Government, or the State-owned assets supervision and administration authority of the people's government at the level of city divided into districts or of autonomous prefecture, is a specially established authority directly subordinated to the respective people's government which, on behalf of the government at the same level, performs the responsibilities of investor, supervises and manages State-owned assets of enterprises.

The State-owned assets supervision and administration authority of the government at a higher level guides and supervises according to law the management work of State-owned assets supervision and administration of the government at a lower level.

Article 13 The main responsibilities of a State-owned assets supervision and administration authority are as follows:

(1) perform the responsibilities of investor for the invested enterprises in accordance with the Company Law of the People's Republic of China and other related laws and regulations, and safeguard the rights and interests of the owner;

(2) guide and push forward the reform and restructuring of State-owned enterprises and State-owned holding enterprises;

(3) dispatch supervisory panels to the invested enterprises pursuant to the relevant regulations;

(4) appoint or remove the responsible persons of the invested enterprises and evaluate their performance in accordance with the statutory procedures, and grant rewards or impose punishments based on the evaluation results;

(5) supervise and administer the preservation of and increase in the value of State-owned assets of enterprises by means of statistics or auditing;

(6) perform other responsibilities of investor and undertake other tasks assigned thereto by the government at the corresponding level.

Besides the responsibilities set forth in the preceding paragraph, the State-owned assets supervision and administration authority of the State Council may formulate rules and systems on State-owned assets supervision and administration of enterprises.

Article 14 The main obligations of a State-owned assets supervision and administration authority are as follows:

(1) promote the reasonable flow and optimized allocation of State-owned assets, and propel the adjustment of the layout and structure of the State economy;

(2) maintain and improve the controlling power and competitive power of the State economy in areas which have a vital bearing on the lifeline of the national economy and State security, and improve the overall quality of the State economy;

(3) explore effective systems and ways for the management of State-owned assets of enterprises, enhance the work of supervision and management of State-owned assets of enterprises, promote the preservation of and increase in the value of State-owned assets of enterprises, and prevent the loss of State-owned assets of enterprises;

(4) guide and promote the establishment of modern enterprise system in State-owned enterprises and State-owned holding enterprises, improve corporate governance, and advance the modernization of management;

(5) respect and safeguard the operational autonomy of State-owned enterprises and State-owned holding enterprises, safeguard the legitimate rights and interests of enterprises according to law, impel enterprises to operate and manage according to law, and strengthen their competitive power;

(6) offer guidance and coordination to State-owned enterprises and State-owned holding enterprises in overcoming difficulties and solving problems in the process of their reform and development.

Article 15 The State-owned assets supervision and administration authority shall report to the government at the corresponding level about the supervision and management work of State-owned assets of enterprises, the preservation of and increase in the value of State-owned assets and other major matters.

Chapter III Administration of Responsible Persons of Enterprises

Article 16 The State-owned assets supervision and administration authority shall establish and improve the mechanism for selecting and appointing the responsible persons of enterprises and the mechanism of incentives and restraints that meet the requirements of modern enterprise system.

Article 17 The State-owned assets supervision and administration authority appoints or removes, or makes a proposal to appoint or remove, the responsible persons of its invested enterprises in accordance with the relevant provisions:

(1) appoint or remove the general manager, deputy general manager, chief accountant or other responsible persons of a wholly State-owned enterprise;

(2) appoint or remove the chairman, vice chairman, or director of the board of a wholly State-owned company, and make a proposal to the company for the appointment or removal of the general manager, deputy general manager, or chief accountant, etc.;

(3) nominate the candidate for the director of the board or supervisor to be dispatched to a State-owned holding company according to the company's articles of association, recommend the candidate for the chairman or vice-chairman of the board, or the chairman of the supervisory panel of a State-owned holding company, and make a proposal to the company on the candidate for the general manager, deputy general manager, or chief accountant;

(4) nominate the candidate for the director of the board or supervisor to be dispatched to a company with State-owned equity according to the company's articles of association.

Where the State Council, the people's government of a province, autonomous region, or municipality directly under the Central Government, or the people's government at the level of city or autonomous prefecture provides otherwise

on the appointment or removal of the responsible persons of the invested enterprises, such provisions shall prevail.

Article 18 The State-owned assets supervision and administration authority shall establish a system for evaluating the performance of the responsible persons of enterprises, sign performance contracts with the responsible persons of enterprises appointed by it, and conduct annual and office-term evaluation of the responsible persons according to the performance contracts.

Article 19 The State-owned assets supervision and administration authority shall, in accordance with the relevant provisions, determine the remuneration of the responsible persons of wholly State-owned enterprises and wholly State-owned companies among the invested enterprises, and grant rewards to or impose punishments upon the responsible persons of the invested enterprises based on the evaluation results.

Chapter IV Administration of Major Matters of Enterprises

Article 20 The State-owned assets supervision and administration authority is responsible for directing State-owned enterprises and State-owned holding enterprises to establish a modern enterprise system, reviewing and approving the restructuring plans or joint-stock transforming plans of the wholly State-owned enterprises or wholly State-owned companies among the invested enterprises, and reviewing and approving the articles of association of the wholly State-owned companies among the invested enterprises.

Article 21 The State-owned assets supervision and administration authority decides, in accordance with the statutory procedures, on such major matters as the division，merger, bankruptcy, dissolution, capital increase or decrease, or issue of company bonds of wholly State-owned enterprises or wholly State-owned companies among the invested enterprises. The division, merger, bankruptcy or dissolution of key wholly State-owned enterprises or wholly State-owned companies shall, upon the review by the State-owned assets supervision and administration authority, be reported for approval to the people's government at the corresponding level.

When reviewing and deciding on major matters of wholly State-owned enterprises or wholly State-owned companies among the invested enterprises in the field of science, technology and industry for national defense in accordance with the statutory procedures, the State-owned assets supervision and administration authority shall comply with the relevant laws and provisions of the State.

Article 22 The State-owned assets supervision and administration authority shall, in accordance with the provisions of the Company Law, appoint representatives of shareholders to the shareholders' meeting, or directors to the board of directors, of State-owned holding companies or companies with State-owned equity.

When the shareholder's meeting or the board of directors of a State-owned holding company or company with State-owned equity decides on such major matters as division，merger, bankruptcy, dissolution, capital increase or decrease, issue of company bonds, or appointment or removal of the responsible persons, the representatives of shareholders or the directors appointed thereto by the State-owned assets supervision and administration authority shall voice their opinions and exercise the right to vote according to the instructions of the State-owned assets supervision and administration authority.

The representatives of shareholders or the directors appointed by the State-owned assets supervision and administration authority shall report to the said authority in due time about their performance of responsibilities.

Article 23 The State-owned assets supervision and administration authority decides on the transfer of State-owned equity of its invested enterprises. The transfer of whole or part of the State-owned equity which may result in the loss of holding position of the State in the invested enterprises shall be reported for approval to the people's government at the corresponding level.

Article 24 Where any major matters of the important subsidiary enterprises established with the investment of the invested enterprises need to be reported by the invested enterprises to the State-owned assets supervision and

administration authority for approval, the management measures therefor shall be separately formulated by the State-owned assets supervision and administration authority of the State Council and submitted to the State Council for approval.

Article 25 The State-owned assets supervision and administration authority shall, in accordance with the relevant provisions of the State, organize and coordinate the work concerning the merger and bankruptcy of wholly State-owned enterprises and wholly State-owned companies among the invested enterprises, and cooperate with the relevant departments to make arrangements for settling laid-off workers.

Article 26 The State-owned assets supervision and administration authority shall, in accordance with the relevant provisions of the State, work out the guideline for the remuneration system reform of its invested enterprises, and regulate and control the overall level of the allocation of remuneration of its invested enterprises.

Article 27 Subject to the approval of the State Council, wholly State-owned enterprises and wholly State-owned companies among the invested enterprises may enjoy the rights prescribed in Article 12 of the Company Law as investment companies or holding companies as specified by the State Council, and may enjoy the rights prescribed in Article 20 of the Company Law as State-authorized investment institutions.

Article 28 The State-owned assets supervision and administration authority may authorize qualified wholly State-owned enterprises and wholly State-owned companies among the invested enterprises to engage in authorized operation of State-owned assets.

The authorized wholly State-owned enterprises and wholly State-owned companies shall operate, manage and supervise according to law the State-owned assets generated from State investment in their wholly owned enterprises, holding enterprises or enterprises with equity.

Article 29 The authorized wholly State-owned enterprises and wholly State-owned companies shall establish and improve a modern enterprise system, and be liable to preserve and increase the value of State-owned assets of enterprises.

Chapter V Management of State-owned Assets of Enterprises

Article 30The State-owned assets supervision and administration authority shall, in accordance with the relevant provisions of the State, be responsible for the basic management work, such as the definition and registration of property rights, the supervision and management of assets appraisal, the making of inventory of assets and liabilities, assets statistics, and overall assessment of State-owned assets.

The State-owned assets supervision and administration authority shall coordinate the settlement of disputes over property rights of State-owned assets among its invested enterprises.

Article 31 The State-owned assets supervision and administration authority shall establish a system for the supervision and management of property rights trading of State-owned assets of enterprises, reinforce the supervision and management of property rights trading of State-owned assets of enterprises, promote the reasonable flow of State-owned assets of enterprises, and prevent the loss of State-owned assets of enterprises.

Article 32 The State-owned assets supervision and administration authority shall perform the responsibilities of investor for the returns on the State-owned assets of the invested enterprises in accordance with law, and for any major investment and financing plan, development strategy and planning in accordance with the development plan and industrial policies of the State.

Article 33 Where the disposal of any major assets of wholly State-owned enterprises and wholly State-owned companies among the invested enterprises is subject to the approval of the State-owned assets supervision and administration authority, the matter shall be dealt with in accordance with the relevant provisions.

Chapter VI Supervision of State-owned Assets of Enterprises

Article 34 The State-owned assets supervision and administration authority of the State Council shall, on behalf of the State Council, dispatch supervisory panels to wholly State-owned enterprises and wholly State-owned companies among the invested enterprises. The composition, powers and ethics of conducts of a supervisory panel shall be in compliance with the Interim Regulations on Supervisory Panels of State-owned Enterprises.

The dispatch of supervisory panels to wholly State-owned enterprises and wholly State-owned companies among the invested enterprises by the State-owned assets supervision and administration authority of the local people's government on behalf of the people's government at the corresponding level shall be conducted with reference to the provisions of the Interim Regulations on Supervisory Panels of State-owned Enterprises.

Article 35 The State-owned assets supervision and administration authority shall supervise the financial situations of its invested enterprises in accordance with law, establish and improve the index system for the preservation of and increase in the value of State-owned assets, and safeguard the rights and interests of the investor of State-owned assets.

Article 36 Wholly State-owned enterprises and State-holding enterprises shall strengthen their internal supervision and risk control, establish and improve the systems of finance, audit, corporate legal counsel, and democratic supervision by staff members and workers in accordance with the relevant provisions of the State.

Article 37 Wholly State-owned enterprises and wholly State-owned companies among the invested enterprises shall, in accordance with the relevant provisions, regularly report to the State-owned assets supervision and administration authority about the situations of their finance, production and operation, as well as the preservation of and increase in State-owned assets.

Chapter VII Legal Liability

Article 38 Where, in violation of the relevant provisions, the State-owned assets supervision and administration authority appoints or removes the responsible persons of its invested enterprises, or makes a proposal to appoint or remove the responsible persons of its invested enterprises, or illegally interferes in the production and operation of the invested enterprises and infringes upon their legitimate rights and interests, thereby causing loss of State-owned assets of the enterprises or other serious results, the person directly in charge and other persons directly responsible therefor shall be given an administrative sanction in accordance with law. If a crime is constituted, criminal liability shall be investigated in accordance with law.

Article 39 Where, in violation of the relevant provisions, a wholly State-owned enterprise or wholly State-owned company among the invested enterprises fails to report to the State-owned assets supervision and administration authority about the situations of its finance, production and operation, or the preservation of and increase in the value of State-owned assets, it shall be given a warning; if the circumstances are serious, the person directly in charge and other persons directly responsible therefor shall be given a disciplinary sanction in accordance with law.

Article 40 Where the responsible person of a State-owned enterprise or State-holding enterprise abuses his power or neglects his duty, thus causing loss of State-owned assets of the enterprise, such person shall take the liability of compensation and be given a disciplinary sanction in accordance with law; if a crime is constituted, criminal liability shall be investigated in accordance with law.

Article 41 The responsible person of a State-owned enterprise or State-holding enterprise who is liable for the loss of State-owned assets of the enterprise, and therefore given a disciplinary sanction of removal from office or heavier, shall not take the office of responsible person of any State-owned enterprise or State-holding enterprise within five years; and the responsible person who causes heavy loss of State-owned assets of the enterprise or is imposed upon criminal penalty shall not take the office of responsible person of any State-owned enterprise or State-holding enterprise for life.

Chapter VIII Supplementary Provisions

Article 42 The organizational form, organizational structure, rights and obligations of State-owned enterprises, State-holding enterprises and enterprises with State-owned equity shall be governed by the Company Law of the People's Republic of China and other laws, administrative regulations as well as these Regulations.

Article 43 The build-up of primary organizations of the Communist Party of China, the development of socialist ideological and cultural progress, the improvement of the Party's work style and the build-up of clean government in State-owned enterprises, State-holding enterprises and enterprises with State-owned equity shall be conducted pursuant to the Constitution of Communist Party of China and other relevant provisions.

Trade unions in State-owned enterprises, State-holding enterprises and enterprises with State-owned equity shall be organized pursuant to the relevant provisions of the Trade Union Law of the People's Republic of China and the Constitution of Trade Unions of China.

Article 44 The State-owned assets supervision and administration authority of the State Council, the people's government of a province, autonomous region or municipality directly under the Central Government may formulate implementing measures in accordance with these Regulations.

Article 45 Where there is any discrepancy between these Regulations and the administrative regulations on the supervision and administration of State-owned assets formulated before the effectiveness of these Regulations, these Regulations shall prevail.

Article 46 Units that have not had their government functions separated from enterprise management shall, in accordance with the provisions of the State Council, accelerate the reform to separate government functions from enterprise management. After the accomplishment of the separation of government functions from enterprise management, the State-owned assets supervision and administration authority shall perform the responsibilities of investor and conduct the supervision and management of State-owned assets of the enterprise according to law.

Article 47 These Regulations shall be effective as of the date of promulgation.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Translated by:Xu Aibo        Ye Meng        Zhang Nengzi

Proofread and corrected by: Wang Shanchuan        Xu Aibo

Examined and verified by: Yan Xiaofeng        Wang Shanchuan

Examined and approved by: Legislative Affairs Office of the State Council, PRC

ABOUT US        LATEST        SPECIALS        DIRECTORY        RESOURCES        VIDEOS

| What we do | SASAC News | Statistics |
| Leadership | SOEs News | Laws and Regulations |
| Bureaux | | FAQs |

Copyright © 2019 State-owned Assets Supervision and Administration Commission of the State Council All rights reserved.
Presented by China Daily

# EXHIBIT 24

*Hong Kong Exchanges and Clearing Limited and The Stock Exchange of Hong Kong Limited take no responsibility for the contents of this announcement, make no representation as to its accuracy or completeness and expressly disclaim any liability whatsoever for any loss howsoever arising from or in reliance upon the whole or any part of the contents of this announcement.*



# 彩 虹 集 團 電 子 股 份 有 限 公 司
# IRICO GROUP ELECTRONICS COMPANY LIMITED*

*(A joint stock company incorporated in the People's Republic of China with limited liability)*

(Stock Code: 0438)

**ANNOUNCEMENT
RELATING TO
VERY SUBSTANTIAL DISPOSAL AND CONNECTED TRANSACTIONS
AND
VERY SUBSTANTIAL ACQUISITION AND CONNECTED
TRANSACTIONS INVOLVING:
(A) INITIAL CAPITAL INJECTION TRANSACTIONS COMPRISING:
(1) THE FIRST CAPITAL INJECTION INTO IRICO GLASS
BY A SHARE COMPANY;
(2) THE FIRST CAPITAL INJECTION INTO IRICO (ZHANGJIAGANG)
AND IRICO (HEFEI) BY IRICO GLASS;
(B) A SHARE ISSUE AND RELATED TRANSACTIONS COMPRISING:
(1) THE ISSUE OF NEW A SHARES BY A SHARE COMPANY;
(2) THE SECOND CAPITAL INJECTION INTO IRICO GLASS
BY A SHARE COMPANY; AND
(3) THE SECOND CAPITAL INJECTION INTO IRICO (ZHANGJIAGANG)
AND IRICO (HEFEI) BY IRICO GLASS
AND
RESUMPTION OF TRADING**

## SUMMARY

## INITIAL CAPITAL INJECTION TRANSACTIONS

### First IRICO Glass Capital Injection

On 17 September 2009, the Company, A Share Company and the other existing shareholders of IRICO Glass entered into the First IRICO Glass Registered Capital Increase Agreement, pursuant to which A Share Company has agreed to inject RMB475 million in cash into IRICO Glass, a subsidiary of the Company. The Company and the other existing shareholders of IRICO Glass will not inject any capital into IRICO Glass pursuant to the First IRICO Glass Registered Capital Increase Agreement.

### First IRICO (Zhangjiagang) Capital Injection and First IRICO (Hefei) Capital Injection

On 17 September 2009, IRICO Group, Zhangjiagang Industry Corporation and IRICO Glass entered into the First IRICO (Zhangjiagang) Registered Capital Increase Agreement, pursuant to which IRICO Glass has agreed to inject RMB500 million in cash into IRICO (Zhangjiagang), an associate of IRICO Group (the controlling shareholder of the Company). IRICO Group and Zhangjiagang Industry Corporation will not inject any capital into IRICO (Zhangjiagang) pursuant to the First IRICO (Zhangjiagang) Registered Capital Increase Agreement.

On 17 September 2009, IRICO Group and IRICO Glass entered into the First IRICO (Hefei) Registered Capital Increase Agreement, pursuant to which IRICO Glass has agreed to inject RMB15 million in cash into IRICO (Hefei), an associate of IRICO Group (the controlling shareholder of the Company). IRICO Group will not inject any capital into IRICO (Hefei) pursuant to the First IRICO (Hefei) Registered Capital Increase Agreement.

The Initial Capital Injection Transactions are independent of and not conditional upon the completion of the A Share Issue.

## A SHARE ISSUE AND RELATED TRANSACTIONS

### A Share Issue

A Share Company proposes to issue new A Shares, by way of non-public offering, to not more than 10 specific investors, including IRICO Group and Zhangjiagang Industry Corporation. The number of new A Shares proposed to be issued pursuant to the A Share Issue will not exceed 540 million A Shares. The net proceeds (after deducting the related expenses) of the A Share Issue to be received by A Share Company is expected to be not more than RMB3.5 billion.

### Second IRICO Glass Capital Injection

On 17 September 2009, the Company, A Share Company and the other existing shareholders of IRICO Glass entered into the Second IRICO Glass Registered Capital Increase Agreement, pursuant to which the A Share Company has agreed to further inject RMB3.5 billion (such amount may be adjusted depending on the amount of the A Share Issue Proceeds) in cash raised from the A Share Issue into IRICO Glass. The Company and the other existing shareholders of IRICO Glass will not inject any capital into IRICO Glass pursuant to the Second IRICO Glass Registered Capital Increase Agreement.

### Second IRICO (Zhangjiagang) Capital Injection and Second IRICO (Hefei) Capital Injection

On 17 September 2009, IRICO Group, Zhangjiagang Industry Corporation and IRICO Glass entered into the Second IRICO (Zhangjiagang) Registered Capital Increase Agreement, pursuant to which IRICO Glass has agreed to further inject RMB500 million (it is the parties' understanding that such amount may be adjusted depending on the amount of the A Share Issue Proceeds) in cash into IRICO (Zhangjiagang). IRICO Group and Zhangjiagang Industry Corporation will not inject any capital into IRICO (Zhangjiagang) pursuant to the Second IRICO (Zhangjiagang) Registered Capital Increase Agreement.

On 17 September 2009, IRICO Group and IRICO Glass entered into the Second IRICO (Hefei) Registered Capital Increase Agreement, pursuant to which IRICO Glass has agreed to inject RMB1.8 billion (it is the parties' understanding that such amount may be adjusted depending on the amount of the A Share Issue Proceeds) in cash into IRICO (Hefei). IRICO Group will not inject any capital into IRICO (Hefei) pursuant to the Second IRICO (Hefei) Registered Capital Increase Agreement.

The First IRICO Glass Capital Injection, the A Share Issue and the Second IRICO Glass Capital Injection constitute a very substantial disposal under Chapter 14 of the Listing Rules and a connected transaction under Chapter 14A of the Listing Rules for the Company, and therefore are subject to relevant reporting, announcement and independent shareholders' approval requirements under Chapters 14 and 14A of the Listing Rules.

The First IRICO (Zhangjiagang) Capital Injection, the First IRICO (Hefei) Capital Injection, the Second IRICO (Zhangjiagang) Capital Injection and the Second IRICO (Hefei) Capital Injection constitute a very substantial acquisition under Chapter 14 of the Listing Rules and a connected transaction under Chapter 14A of the Listing Rules for the Company, and therefore are subject to relevant reporting, announcement and independent shareholders' approval requirements under Chapters 14 and 14A of the Listing Rules.

At the request of the Company, trading in the H Shares of the Company on the Stock Exchange has been suspended with effect from 14 September 2009 pending the release of this announcement. Application has been made by the Company to the Stock Exchange for the resumption of trading in the H Shares with effect from 9:30 a.m. on 21 September 2009.

## A.   INITIAL CAPITAL INJECTION TRANSACTIONS

## 1.   FIRST IRICO GLASS CAPITAL INJECTION

On 17 September 2009, the Company, A Share Company and the other existing shareholders of IRICO Glass entered into the First IRICO Glass Registered Capital Increase Agreement, pursuant to which A Share Company has agreed to inject RMB475 million in cash into IRICO Glass, a subsidiary of the Company. The Company and the other existing shareholders of IRICO Glass will not inject any capital into IRICO Glass pursuant to the First IRICO Glass Registered Capital Increase Agreement.

### (a)   First IRICO Glass Registered Capital Increase Agreement

*Parties*

(1)   The Company;

(2)   A Share Company; and

(3)   The other existing shareholders of IRICO Glass, who are Independent Third Parties

*First IRICO Glass Capital Injection*

Pursuant to the First IRICO Glass Registered Capital Increase Agreement, A Share Company has agreed to inject RMB475 million in cash into IRICO Glass, a subsidiary of the Company. The registered capital to be injected by A Share Company in respect of the First IRICO Glass Capital Injection will be determined with reference to the appraised asset value of IRICO Glass as of 31 August 2009, which is not yet available as at the date of this announcement. After the appraised asset value of IRICO Glass as of 31 August 2009 is determined, the Company, A Share Company and the other existing shareholders of IRICO Glass will enter into a separate supplemental agreement to agree the amount of registered capital to be acquired by A Share Company in respect of the First IRICO Glass Capital Injection based on the appraised results. The Company will make further announcement on such supplemental agreement if and when appropriate. Assuming the First IRICO Glass Capital Injection is made at par, immediately following the completion of the First IRICO Glass Capital Injection, the total registered capital of IRICO Glass will increase from RMB390 million (as of the date hereof) to RMB865 million. The Company considers it appropriate to assume that registered capital in the amount of RMB475 million in IRICO Glass will be acquired by A Share Company pursuant to the First IRICO Glass Capital Injection for the purpose of illustration in this announcement.

*Payment terms*

A Share Company is required to pay the amount for the First IRICO Glass Capital Injection to the designated account of IRICO Glass within 60 business days after the effective date of the First IRICO Glass Registered Capital Increase Agreement.

*Conditions precedent*

The First IRICO Glass Registered Capital Increase Agreement will take effect upon the satisfaction of all of the following conditions:

1.   the First IRICO Glass Capital Injection and its use of proceeds having been approved by the shareholders of the Company; and

2.   the First IRICO Glass Registered Capital Increase Agreement having been approved in the shareholders' meeting of A Share Company.

**Shareholding structure of IRICO Glass**

As at the date of this announcement, the shareholding structure of IRICO Glass is as follows:



Assuming the First IRICO Glass Capital Injection is made at par, immediately following the completion of the First IRICO Glass Capital Injection, the shareholding structure of IRICO Glass will be as follows:



The Company considers that immediately following the completion of the First IRICO Glass Capital Injection, IRICO Glass will continue to be a subsidiary of the Company.

**Use of proceeds**

The proceeds in the aggregate amount of approximately RMB475 million to be received by IRICO Glass from the First IRICO Glass Capital Injection is currently intended to be used in the following manners:

1.   RMB460 million for the First IRICO (Zhangjiagang) Capital Injection; and

2.   RMB15 million for the First IRICO (Hefei) Capital Injection.

**Source of funding**

In order to finance the First IRICO Glass Capital Injection, on 17 September 2009, A Share Company entered into the Loan Agreement with IRICO Group, pursuant to which IRICO Group has agreed to make a loan in the amount of RMB400 million to A Share Company, of which RMB200 million for a term of 1 year at an interest rate of 5.31% per annum and the remaining RMB200 million for a term of 1.5 year at an interest rate of 5.4% per annum. The remaining RMB75 million to be injected by A Share Company to IRICO Glass pursuant to the First IRICO Glass Capital Injection will be funded by A Share Company's internal resources. The First IRICO Glass Capital Injection is independent of and not conditional upon the completion of the A Share Issue.

**Implications under the Listing Rules**

***First IRICO Glass Capital Injection***

As at the date of this announcement, the Company is the holder of RMB271.17 million of the registered capital in IRICO Glass, representing approximately 69.53% of the existing registered capital of IRICO Glass. Immediately following the completion of the First IRICO Glass Capital Injection, assuming that the First IRICO Glass Capital Injection will be made at par, the direct shareholding percentage of the Company in IRICO Glass will be diluted down to 31.35% and the shareholding percentage of A Share Company in IRICO Glass will be 54.91%. Assuming that the shareholding percentage of the Company in A Share Company does not change before the completion of the First IRICO Glass Capital Injection, the total effective shareholding of the Company (directly and indirectly through A Share Company) in IRICO Glass will be 53.58%, representing a reduction of 15.95% from its shareholding percentage in IRICO Glass immediately prior to the First IRICO Glass Capital Injection. Such reduction of effective shareholding percentage will constitute a deemed disposal under Chapter 14 of the Listing Rules.

Having considered the implications of Rules 14.22 and 14.23 of the Listing Rules, the Company aggregates the impact of the Initial Capital Injection Transactions with the A Share Issue and Related Transactions for the purpose of classifying the First IRICO Glass Capital Injection under Chapters 14 and 14A of the Listing Rules. As the highest percentage ratio among all the relevant percentage ratios (as defined in Rule 14.07 of the Listing Rules), calculated on an aggregate basis, for the deemed disposal is more than 75%, the First IRICO Glass Capital Injection is considered as a very substantial disposal under Chapter 14 of the Listing Rules.

As at the date of this announcement, to the best of the Directors' knowledge, information and belief having made all reasonable enquiry, no connected person of the Company (other than at the level of its subsidiaries) as defined under Rules 14A.11(1) to (4) is or are (individually or together) entitled to exercise, or control the exercise of 10% or more of the voting power at any general meeting of A Share Company, a non-wholly owned subsidiary of the Company, other than through the Company. Therefore A Share Company is not a connected person of the Company as of the date of this announcement. However, as the proceeds received by IRICO Glass from the First IRICO Glass Capital Injection would be used for the First IRICO (Zhangjiagang) Capital Injection and the First IRICO (Hefei) Capital Injection, which would constitute connected transactions, the Company considers it appropriate to also classify the First IRICO Glass Capital Injection as a connected transaction. As the highest of its applicable percentage ratios is more than 2.5%, the deemed disposal resulting from the First IRICO Glass Capital Injection is considered to be a very substantial disposal and connected transaction, and therefore should be subject to the relevant reporting, announcement and independent shareholders' approval requirements under Chapters 14 and 14A of the Listing Rules.

### *Loan Agreement*

IRICO Group, being the controlling shareholder of the Company, is a connected person of the Company. However, as the Company considers that the loan under the Loan Agreement is made by IRICO Group for the benefit of A Share Company on normal commercial terms (or better to A Share Company) and no security over the assets of A Share Company is required to be granted by A Share Company in favour of IRICO Group in respect of such loan, pursuant to Rule 14A.65(4) of the Listing Rules, the Loan Agreement and the transactions contemplated thereunder should be exempt from the reporting, announcement and independent shareholders' approval requirements under Chapter 14A of the Listing Rules.

**Expected gain or loss of the Company**

Since there will be no transfer of assets or equity interests owned by the Company in IRICO Glass pursuant to the First IRICO Glass Capital Injection and there will be no proceeds receivable by the Company from the deemed disposal resulting from the First IRICO Glass Capital Injection, there will be no significant gain or loss arising from such deemed disposal by the Company of interests in IRICO Glass to be reported in the next financial statements of the Company.

## 2.  FIRST IRICO (ZHANGJIAGANG) CAPITAL INJECTION AND FIRST IRICO (HEFEI) CAPITAL INJECTION

**First IRICO (Zhangjiagang) Capital Injection**

On 17 September 2009, IRICO Group, Zhangjiagang Industry Corporation and IRICO Glass entered into the First IRICO (Zhangjiagang) Registered Capital Increase Agreement, pursuant to which IRICO Glass has agreed to inject RMB500 million in cash into IRICO (Zhangjiagang), which is owned as to 60% by IRICO Group and 40% by Zhangjiagang Industry Corporation and therefore an associate of IRICO Group. IRICO Group and Zhangjiagang Industry Corporation will not inject any capital into IRICO (Zhangjiagang) pursuant to the First IRICO (Zhangjiagang) Registered Capital Increase Agreement.

**(a)  First IRICO (Zhangjiagang) Registered Capital Increase Agreement**

*Parties*

(1)   IRICO Group;

(2)   Zhangjiagang Industry Corporation, who is an Independent Third Party; and

(3)   IRICO Glass

*First IRICO (Zhangjiagang) Capital Injection*

Pursuant to the First IRICO (Zhangjiagang) Registered Capital Increase Agreement, IRICO Glass has agreed to inject RMB500 million in cash into IRICO (Zhangjiagang). The registered capital to be acquired by IRICO Glass in respect of the First IRICO (Zhangjiagang) Capital Injection is determined with reference to the appraised value of the equity holders' interest of IRICO (Zhangjiagang) as of 31 August 2009. Such valuation is made based on the cost method and the registered capital is to be acquired by IRICO Glass at par in respect of the amount of the First IRICO (Zhangjiagang) Capital Injection. Immediately following the completion of the First IRICO (Zhangjiagang) Capital Injection, the total registered capital of IRICO (Zhangjiagang) will increase from RMB23 million to RMB523 million, and IRICO Glass will be interested in approximately 95.60% of the registered capital of IRICO (Zhangjiagang).

*Payment terms*

IRICO Glass is required to pay the amounts for the First IRICO (Zhangjiagang) Capital Injection to the designated account of IRICO (Zhangjiagang) within 30 business days after the effective date of the First IRICO (Zhangjiagang) Registered Capital Increase Agreement.

*Conditions precedent*

The First IRICO (Zhangjiagang) Registered Capital Increase Agreement will take effect upon the satisfaction of all of the following conditions precedent:

1.  the First IRICO (Zhangjiagang) Capital Injection having been approved in the shareholders' meeting of A Share Company;

2.  the First IRICO (Zhangjiagang) Capital Injection having been approved in the shareholders' meeting of the Company;

3.  the First IRICO Glass Capital Injection having been approved in the shareholders' meeting of the Company; and

4.    the First IRICO Glass Capital Injection having been approved in the shareholders' meeting of A Share Company.

**Shareholding structure of IRICO (Zhangjiagang)**

As at the date of this announcement, the shareholding structure of IRICO (Zhangjiagang) is as follows:



Immediately following the completion of the First IRICO Glass Capital Injection and the First IRICO (Zhangjiagang) Capital Injection, the shareholding structure of IRICO (Zhangjiagang) will be as follows:



The Company considers that immediately following the completion of the First IRICO (Zhangjiagang) Capital Injection, IRICO (Zhangjiagang) will become a subsidiary of the Company.

**Use of proceeds**

The proceeds in the amount of approximately RMB500 million to be received by IRICO (Zhangjiagang) from the First IRICO (Zhangjiagang) Capital Injection is currently intended to be used for the construction of the advanced TFT-LCD glass substrate production line project.

**Source of funding**

The capital injection in the amount of RMB500 million required to be injected by IRICO Glass to IRICO (Zhangjiagang) pursuant to the First IRICO (Zhangjiagang) Capital Injection will be funded, as to RMB460 million, by part of the proceeds from the First IRICO Glass Capital Injection and the remaining RMB40 million by IRICO Glass' internal resources. The First IRICO (Zhangjiagang) Capital Injection is independent of and not conditional upon the completion of the A Share Issue.

## FIRST IRICO (HEFEI) CAPITAL INJECTION

On 17 September 2009, IRICO Group and IRICO Glass entered into the First IRICO (Hefei) Registered Capital Increase Agreement, pursuant to which IRICO Glass has agreed to inject RMB15 million in cash into IRICO (Hefei), which is wholly-owned by IRICO Group and therefore an associate of IRICO Group (the controlling shareholder of the Company). IRICO Group will not inject any capital into IRICO (Hefei) pursuant to the First IRICO (Hefei) Registered Capital Increase Agreement.

**(b)   First IRICO (Hefei) Registered Capital Increase Agreement**

*Parties*

(1)   IRICO Group; and

(2)   IRICO Glass

*First IRICO (Hefei) Capital Injection*

Pursuant to the First IRICO (Hefei) Registered Capital Increase Agreement, IRICO Glass has agreed to inject RMB15 million in cash into IRICO (Hefei). The registered capital to be injected by IRICO Glass in respect of the First IRICO (Hefei) Capital Injection is determined with reference to the appraised value of the equity holders' interest of IRICO (Hefei) as of 31 August 2009. Such valuation is made based on the asset base method and the registered capital is to be acquired by IRICO (Glass) at par in respect of the amount of the First IRICO (Hefei) Capital Injection. Immediately following the completion of the First IRICO (Hefei) Capital Injection, the total registered capital of IRICO (Hefei) will increase from RMB5 million to RMB20 million, and IRICO Glass will be interested in 75% of the registered capital of IRICO (Hefei).

*Payment terms*

IRICO Glass is required to pay the amount for the First IRICO (Hefei) Capital Injection to the designated account of IRICO (Hefei) within 30 business days after the effective date of the First IRICO (Hefei) Registered Capital Increase Agreement.

*Conditions precedent*

The First IRICO (Hefei) Registered Capital Increase Agreement will take effect upon the satisfaction of all of the following conditions precedent:

1.  the First IRICO (Hefei) Capital Injection having been approved in the shareholders' meeting of A Share Company;

2.  the First IRICO (Hefei) Capital Injection having been approved in shareholders' meeting of the Company;

3.  the First IRICO Glass Capital Injection having been approved in the shareholders' meeting of the Company; and

4.  the First IRICO Glass Capital Injection having been approved in the shareholders' meeting of the A Share Company.

**Shareholding structure of IRICO (Hefei)**

As at the date of this announcement, the shareholding structure of IRICO (Hefei) is as follows:



Immediately following the completion of the First IRICO Glass Capital Injection and the First IRICO (Hefei) Capital Injection, the shareholding structure of IRICO (Hefei) will be as follows:



The Company considers that immediately following the completion of the First IRICO (Hefei) Capital Injection, IRICO (Hefei) will become a subsidiary of the Company.

**Use of proceeds**

The proceeds in the aggregate amount of approximately RMB15 million to be received by IRICO (Hefei) from the First IRICO Glass Capital Injection is currently intended to be used primarily for the day-to-day operation, project research and other preparation work for IRICO (Hefei).

**Source of funding**

It is the current intention of IRICO Glass that the RMB15 million required to be injected by IRICO Glass to IRICO (Hefei) pursuant to the First IRICO (Hefei) Capital Injection will be funded by part of the proceeds from the First IRICO Glass Capital Injection. The First IRICO (Hefei) Capital Injection is independent of and not conditional upon the completion of the A Share Issue.

**Implications relating to the First IRICO (Zhangjiagang) Capital Injection and the First IRICO (Hefei) Capital Injection under the Listing Rules**

Given that the First IRICO (Zhangjiagang) Capital Injection and the First IRICO (Hefei) Capital Injection are relating to the same line of business of the Group, the Company considers it appropriate to aggregate the two transactions for the purpose of calculating the relevant percentage ratios (as defined in Rule 14.07 of the Listing Rules) in accordance with Chapters 14 and 14A of the Listing Rules.

The First IRICO (Zhangjiagang) Capital Injection and the First IRICO (Hefei) Capital Injection will constitute acquisitions under Chapter 14 of the Listing Rules. Having considered the implications of Rules 14.22 and 14.23 of the Listing Rules, the Company aggregates the impact of the Initial Capital Injection Transactions with the A Share Issue and Related Transactions for the purpose of classifying the First IRICO (Zhangjiagang) Capital Injection and the First IRICO (Hefei) Capital Injection under Chapters 14 and 14A of the Listing Rules. As the highest percentage ratio among all the relevant percentage ratios (as defined in Rule 14.07 of the Listing Rules) for the acquisitions in respect of the First IRICO (Zhangjiagang) Capital Injection and First IRICO (Hefei) Capital Injection, calculated on an aggregate basis, is more than 100%, such transactions constitute a very substantial acquisition under Chapter 14 of the Listing Rules. Further, as each of IRICO (Zhangjiagang) and IRICO (Hefei) is an associate of IRICO Group as at the date of this announcement, the First IRICO (Zhangjiagang) Capital Injection and the First IRICO (Hefei) Capital Injection together also constitute a connected transaction of the Company under Chapter 14A of the Listing Rules. Therefore, the First IRICO (Zhangjiagang) Capital Injection and the First IRICO (Hefei) Capital Injection together are considered to be a very substantial acquisition and connected transaction, and therefore are subject to the relevant reporting, announcement and independent shareholders' approval requirements under Chapters 14 and 14A of the Listing Rules.

## 3.   REASONS FOR AND BENEFIT RELATING TO INITIAL CAPITAL INJECTION TRANSACTIONS

With the fast growing market demand in the flat panel display industry, particularly in respect of the liquid crystal television sets and other display devices in the PRC, the Group proposes to utilise its patent, technology and superiority in related resources to accelerate the expansion of production scale in producing TFT-LCD glass substrate, so as to increase its market share at a relatively early stage, to establish and maintain a pioneer position in the industry within the PRC. Coupled with the current capital status of the Company, the capital injection from A Share Company, a subsidiary of the Company, to IRICO Glass, and then from IRICO Glass to IRICO (Zhangjjiagang) and IRICO (Hefei), would help prepare the Group for the standardization of glass substrate development, so as to expedite the development in the construction of glass substrate projects and strategic transformation of the Group.

The Directors believe that the terms of the Initial Capital Injection Transactions are fair and reasonable and the transactions contemplated thereunder are in the interests of the Company and its shareholders as a whole.

The Initial Capital Injection Transactions are independent of and not conditional upon the completion of the A Share Issue.

## B.   A SHARE ISSUE AND RELATED TRANSACTIONS

### 1.   A SHARE ISSUE

A Share Company proposes to issue new A Shares, by way of non-public offering, to not more than 10 specific investors, including IRICO Group and Zhangjiagang Industry Corporation. The number of new A Shares proposed to be issued pursuant to the A Share Issue will not exceed 540 million A Shares, and the final number of A Shares to be issued will be agreed between the board of directors of A Share Company and the relevant underwriter(s). The net proceeds (after deducting related expenses) of the A Share Issue to be received by A Share Company is expected to be not more than RMB3.5 billion. IRICO Group has agreed to subscribe for the new A Shares to be issued pursuant to the A Share Issue with an amount of not less than RMB1 billion. Zhangjiagang Industry Corporation has also agreed to subscribe for the new A Shares to be issued pursuant to the A Share Issue with an amount of not less than RMB500 million. Each specific investor, other than IRICO Group and Zhangjiagang Industry Corporation, together with its related parties should not subscribe for more than 150 million A Shares pursuant to the A Share Issue. The new A Shares to be issued pursuant to the A Share Issue, when fully paid, will rank pari passu in all material respects with the A Shares in issue as at the date of this announcement.

**Subscription price**

Each of the specific investors, including IRICO Group and Zhangjiagang Industry Corporation, will subscribe for new A Shares pursuant to the A Share Issue at the same subscription price.

The subscription price will not be lower than RMB6.6 per A Share, being 90% of the average trading price of the A Shares during the 20 trading days prior to the date on which the A Share Issue was approved in the board meeting of A Share Company. Such minimum subscription price may be adjusted in the event that any dividend, bonus shares or capitalization issue are declared or made by A Share Company prior to the completion of the A Share Issue.

As required by the applicable rules and regulations in the PRC and provided in the IRICO Group Subscription Agreement and the Zhangjiagang Industry Corporation Subscription Agreement, the final subscription price will be determined by the board of directors of A Share Company and the relevant underwriter(s) based on a price sounding-out process among the specific investors other than IRICO Group and Zhangjiagang Industry Corporation.

The Company considers it appropriate to assume that the final subscription price will be equal to the minimum subscription price of RMB6.6 per A Share, the maximum number of new A Shares, i.e., 540 million A Shares, will be issued pursuant to the A Share Issue and the A Share Issue Proceeds will be in the amount of RMB3.5 billion for the purpose of illustration in this announcement.

**Lock-up arrangement**

Unless otherwise provided by laws, regulations or standardized documents, the new A Shares to be subscribed for by IRICO Group and Zhangjiagang Industry Corporation shall not be disposed of within 36 months from the date of the issue of such new A Shares, and the new A Shares to be subscribed for by the other specific investors shall not be disposed of within 12 months from the date of the issue of the respective new A Shares, and thereafter subject to the relevant regulations of CSRC and the Shanghai Stock Exchange.

**(a)   IRICO Group Subscription Agreement**

On 17 September 2009, A Share Company and IRICO Group entered into the IRICO Group Subscription Agreement pursuant to which IRICO Group has agreed, as one of the specific investors, to subscribe for the new A Shares pursuant to the A Share Issue in the amount of not less than RMB1 billion.

*Parties*

(1)   A Share Company as the issuer; and

(2)   IRICO Group as the subscriber.

*Subscription price payable by IRICO Group*

IRICO Group, as one of the specific investors under the A Share Issue, will subscribe for the new A Shares pursuant to the A Share Issue at the same subscription price as described in the sub-section headed "Subscription price" above for details.

— 18 —

*Payment terms*

IRICO Group is required to pay the subscription amount for the A Share Issue in accordance with a payment notice to be issued by A Share Company and the relevant underwriter(s).

### Conditions Precedent and Termination

The IRICO Group Subscription Agreement will take effect upon the satisfaction of all of the following conditions precedent:

1.  the A Share Issue and its related matters having been approved by the board of directors and in the shareholders' meeting of A Share Company;

2.  the A Share Issue and its related matters having been approved by the board of directors and in the shareholders' meeting of the Company;

3.  the A Share Issue having been approved by CSRC; and

4.  the subscription of the new A Shares to be issued pursuant to the A Share Issue by IRICO Group having been approved by SASAC.

The IRICO Group Subscription Agreement will terminate automatically if the above conditions precedent cannot be fulfilled.

Upon the occurrence of a force majeure event unforeseen or unavoidable by A Share Company or IRICO Group, resulting in the IRICO Group Subscription Agreement becoming unable, impossible or unnecessary to be performed, such agreement may be terminated by agreement between the parties.

**(b)   Zhangjiagang Industry Corporation Subscription Agreement**

On 17 September 2009, A Share Company and Zhangjiagang Industry Corporation entered into the Zhangjiagang Industry Corporation Subscription Agreement pursuant to which Zhangjiagang Industry Corporation Subscription Agreement has agreed, as one of the specific investors, to subscribe for the new A Shares pursuant to the A Share Issue in the amount of not less than RMB500 million.

*Parties*

(1)   A Share Company as the issuer; and

(2)   Zhangjiagang Industry Corporation as the subscriber.

*Subscription price payable by Zhangjiagang Industry Corporation*

Zhangjiagang Industry Corporation, as one of the specific investors under the A Share Issue, will subscribe for the new A Shares pursuant to the A Share Issue at the final subscription price as described in the sub-section headed "Subscription price" above for details.

*Payment terms*

Zhangjiagang Industry Corporation is required to pay the subscription amount for the A Share Issue in accordance with a payment notice to be issued by A Share Company and the relevant underwriter(s).

*Conditions Precedent and Termination*

The Zhangjiagang Industry Corporation Subscription Agreement will take effect upon the satisfaction of all of the following conditions precedent:

1.  the A Share Issue and its related matters having been approved by the board of directors and in the shareholders' meeting of A Share Company;

2.  the A Share Issue and its related matters having been approved by the board of directors and in the shareholders' meeting of the Company; and

3.  the A Share Issue having been approved by CSRC.

The Zhangjiagang Industry Corporation Subscription Agreement will terminate automatically if the above conditions precedent cannot be fulfilled.

Upon the occurrence of force majeure events unforeseen or unavoidable by A Share Company or Zhangjiagang Industry Corporation, resulting in the Zhangjiagang Industry Corporation Subscription Agreement becoming unable, impossible or unnecessary to be performed, such agreement may be terminated by agreement between the parties.

**(c)  Other specific investors under the A Share Issue**

As of the date of this announcement, the specific investors under the A Share Issue, other than IRICO Group and Zhangjiagang Industry Corporation, are not yet determined. Once the identities of such other specific investors have been determined, the Company will make disclosure under the Listing Rules where necessary. It is the current intention of A Share Company that such other specific investors would be Independent Third Parties. However, if it turns out that any of such other specific investors is a connected person of the Company, the Company would make further announcement in such regard and, if the identity of such connected person is not disclosed to the shareholders of the Company according to the Listing Rules before the EGM, no A Shares would be issued to such connected person under the A Share Issue until such connected transaction has been approved by the Independent Shareholders according to the Listing Rules, where necessary.

**Shareholding structure of A Share Company**

As at the date of this announcement, the shareholding structure of A Share Company is as follows:



Assuming that the final subscription price will be equal to the minimum subscription price of RMB6.6 per A Share and the maximum number of A Shares will be issued pursuant to the A Share Issue, immediately following the completion of the A Share Issue, the shareholding structure of A Share Company will be as follows:



#   including Zhangjiagang Industry Corporation

##   excluding the specific investors

The Company considers that immediately following the completion of the A Share Issue, A Share Company will continue to be a subsidiary of the Company.

— 22 —

**Use of proceeds**

It is expected that the net proceeds raised from the A Share Issue, after deducting the related expenses, will not exceed RMB3.5 billion. The entire amount of the A Share Issue Proceeds is proposed to be used for the Second IRICO Glass Capital Injection, and IRICO Glass will apply such capital received in the following projects:

| Project | Required capital for the project (RMB'000,000) | The amount of A Share Issue Proceeds proposed to be applied to the project (RMB'000,000) |
|---|---|---|
| 1  the research and development of the advanced TFT-LCD glass substrate production line(s) and the construction of phase II expansion project of TFT-LCD glass substrate production line(s) by IRICO Glass in Xianyang, the PRC *(Note 1)* | 1,700 | 900 |
| 2  the Second IRICO (Hefei) Capital Injection for the construction of the advanced TFT-LCD glass substrate production line by IRICO (Hefei) *(Note 2)* | 2,435 | 1,800 |
| 3  the Second IRICO (Zhangjiagang) Capital Injection for the construction of the advanced TFT-LCD glass substrate production line by IRICO (Zhangjiagang) *(Note 3)* | 1,780 | 500 |
| 4  The additional working capital for IRICO Glass *(Note 4)* | 300 | 300 |
| Total | 6,215 | 3,500 |

*Note (1):*   IRICO Glass proposed to invest RMB1.7 billion on phase II of the expansion project of TFT-LCD glass substrate production line(s), of which RMB900 million would be funded by the capital raised pursuant to the A Share Issue.

*Note (2):*   It is proposed that IRICO (Hefei) would invest RMB2.435 billion to establish two fifth generation and two sixth generation glass substrate production lines, of which RMB1.8 billion would be funded by the capital raised pursuant to the A Share Issue. Such capital would be injected into IRICO Glass by A Share Company, following which the same will be injected into IRICO (Hefei) by IRICO Glass.

*Note (3):*   It is proposed that IRICO (Zhangjiagang) would invest RMB1.78 billion for the construction of three fifth generation glass substrate production lines, of which RMB500 million would be funded by the capital raised pursuant to the A Share Issue. Such capital would be injected into IRICO Glass by A Share Company, following which the same would be injected into IRICO (Zhangjiagang) by IRICO Glass.

*Note (4):*   The portion of the capital received from the A Share Issue in the amount of RMB300 million would be used by A Share Company to make capital injection into IRICO Glass to provide additional working capital for IRICO Glass.

In the event that the actual amount of A Share Issue Proceeds received by A Share Company is lower than RMB3.5 billion, the board of directors of A Share Company may, having taken into account the actual circumstance and without altering the projects, adjust the amounts of the A Share Issue Proceeds to be applied to different projects and the priority thereof. Pending the completion of the A Share Issue, the relevant member of the Group may, having taken into account the actual progress of the relevant projects, apply any other funds available to them to the projects, while such funds may subsequently be substituted by the relevant amounts of A Share Issue Proceeds after completion of the A Share Issue.

**Implications under the Listing Rules relating to the A Share Issue**

Assuming that the final subscription price will be equal to the minimum subscription price of RMB6.6 per A Share and the maximum number of A Shares will be issued pursuant to the A Share Issue, the shareholding percentage of the Company in A Share Company will be diluted and reduced from approximately 40.49% to approximately 18.16%, which reduction of shareholding percentage will constitute a deemed disposal under Chapter 14 of the Listing Rules.

Having considered the implications of Rules 14.22 and 14.23 of the Listing Rules, the Company aggregates the impact of the Initial Capital Injection Transactions with the A Share Issue and Related Transactions for the purpose of classifying the A Share Issue under Chapters 14 and 14A of the Listing Rules. As the highest percentage ratio among all the relevant percentage ratios (as defined in Rule 14.07 of the Listing Rules), calculated on an aggregate basis, for such deemed disposal is more than 75%, such deemed disposal constitutes a very substantial disposal under Chapter 14 of the Listing Rules. In addition, as a substantial portion of the A Shares issuable under the A Share Issue would be subscribed by IRICO Group, the Company considers it appropriate to also classify the A Share Issue as a connected transaction under Chapter 14A of the Listing Rules. Therefore, the A Share Issue, including the respective transactions contemplated under the IRICO Group Subscription Agreement and the Zhangjiagang Industry Corporation Subscription Agreement, should be considered as a very substantial disposal and connected transactions and therefore subject to the relevant reporting, announcement and independent shareholders' approval requirements under Chapter 14 and Chapter 14A of the Listing Rules.

**Expected gain or loss of the Company**

Since there will be no transfer of assets or equity interests held by the Company in A Share Company pursuant to the A Share Issue and there will be no proceeds receivable by the Company from the deemed disposal resulting from the A Share Issue, there will be no significant gain or loss arising from such deemed disposal by the Company of interests in A Share Company to be reported in the next financial statements of the Company.

**2.  SECOND IRICO GLASS CAPITAL INJECTION**

On 17 September 2009, the Company, A Share Company and the other existing shareholders of IRICO Glass entered into the Second IRICO Glass Registered Capital Increase Agreement, pursuant to which the A Share Company has agreed to further inject RMB3.5 billion (such amount may be adjusted depending on the amount of the A Share Issue Proceeds) in cash raised from the A Share Issue into IRICO Glass. The Company and the other existing shareholders of IRICO Glass will not inject any capital into IRICO Glass pursuant to the Second IRICO Glass Registered Capital Increase Agreement.

**(a)  Second IRICO Glass Registered Capital Increase Agreement**

*Parties*

(1)   The Company;

(2)   A Share Company; and

(3)   The other existing shareholders of IRICO Glass, who are Independent Third Parties

*Second IRICO Glass Capital Injection*

Pursuant to the Second IRICO Glass Registered Capital Increase Agreement, A Share Company has agreed to further inject RMB3.5 billion (such amount may be adjusted depending on the amount of the A Share Issue Proceeds) in cash raised from the A Share Issue into IRICO Glass, a subsidiary of the Company. The registered capital to be injected by A Share Company in respect of the Second IRICO Glass Capital Injection will be determined with reference to the appraised asset value of IRICO Glass as of 31 August 2009, which is not yet available as at the date of this announcement. After the appraised asset value of IRICO Glass as of 31 August 2009 is determined, the Company, A Share Company and the other existing shareholders of IRICO Glass will enter into a separate supplemental agreement to agree the amount of registered capital to be acquired by A Share Company in respect of the Second IRICO Glass Capital Injection based on the appraised results. The Company will make further announcement on such supplemental agreement if and when appropriate. Assuming the First IRICO Glass Capital Injection and the Second IRICO Glass Capital Injection are made at par, immediately following the completion of the First IRICO Glass Capital Injection and the Second IRICO Glass Capital Injection, the total registered capital of IRICO Glass will increase, on an aggregate

basis, from RMB390 million (as of today) to RMB4.365 billion (immediately following the completion of the First IRICO Glass Capital Injection and the Second IRICO Glass Capital Injection). The Company considers it appropriate to assume that registered capital in the amount of RMB475 million and RMB3.5 billion will be acquired by A Share Company pursuant to the First IRICO Glass Capital Injection and the Second IRICO Glass Capital Injection, respectively, for the purpose of illustration in this announcement.

*Payment terms*

A Share Company is required to pay the amounts for the Second IRICO Glass Capital Injection to the designated account of IRICO Glass within 12 months after the effective date of the Second IRICO Glass Registered Capital Agreement.

*Conditions precedent*

The Second IRICO Glass Registered Capital Increase Agreement will take effect on such date as shall be further agreed between the parties within 1 year after the satisfaction of all of the following conditions:

1.  the A Share Issue having been approved by law and the capital raised thereunder has been completed;

2.  the A Share Issue having been approved in the shareholders' meeting of A Share Company; and

3.  the A Share Issue having been approved in the shareholders' meeting of the Company.

**Shareholding structure of IRICO Glass**

As at the date of this announcement, the shareholding structure of IRICO Glass is as follows:



Assuming the First IRICO Glass Capital Injection and the Second IRICO Glass Capital Injection are made at par, immediately following the completion of the First IRICO Glass Capital Injection, the A Share Issue and the Second IRICO Glass Capital Injection, the shareholding structure of IRICO Glass will be as follows:



The Company considers that immediately following the completion of the Second IRICO Glass Capital Injection, IRICO Glass will continue to be a subsidiary of the Company.

**Use of proceeds**

The proceeds in the aggregate amount of approximately RMB3.5 billion to be received by IRICO Glass from the Second IRICO Glass Capital Injection is currently intended to be used in the manner as provided in the sub-section headed "Use of Proceeds" under the section headed "A Share Issue" above.

**Implications under the Listing Rules**

As at the date of this announcement, the Company is the holder of RMB271,170,000 of the registered capital in IRICO Glass, representing approximately 69.53% of the existing registered capital of IRICO Glass. Immediately following the completion of the First IRICO Glass Capital Injection and the Second IRICO Glass Injection, assuming that the First IRICO Glass Capital Injection and the Second IRICO Glass Capital Injection will be made at par, the total effective shareholding of the Company (directly and indirectly through A Share Company) in IRICO Glass will be 22.51%, representing a reduction of 47.02% from its shareholding percentage in IRICO Glass as of the date of this announcement. Such reduction of effective shareholding percentage resulting from the First IRICO Capital Injection and the Second IRICO Capital Injection, on an aggregate basis, will constitute a deemed disposal under Chapter 14 of the Listing Rules.

Having considered the implications of Rules 14.22 and 14.23 of the Listing Rules, the Company aggregates the impact of the Initial Capital Injection Transactions with the A Share Issue and Related Transactions for the purpose of classifying the Second IRICO Glass Capital Injection under Chapters 14 and 14A of the Listing Rules. As the highest percentage ratio among all the relevant percentage ratios (as defined in Rule 14.07 of the Listing Rules), calculated on an aggregate basis, for the deemed disposal is more than 75%, the Second IRICO Glass Capital Injection constitutes a very substantial disposal under Chapter 14 of the Listing Rules.

As at the date of this announcement, to the best of the Directors' knowledge, information and belief having made all reasonable enquiry, no connected person of the Company (other than at the level of its subsidiaries) as defined under Rules 14A.11(1) to (4) is or are (individually or together) entitled to exercise, or control the exercise of 10% or more of the voting power at any general meeting of A Share Company, a non-wholly owned subsidiary of the Company, other than through the Company. Therefore A Share Company is not a connected person of the Company as of the date of this announcement. However, as the proceeds received by IRICO Glass from the Second IRICO Glass Capital Injection would be used for the Second IRICO (Zhangjiagang) Capital Injection and the Second IRICO (Hefei) Capital Injection, which would constitute connected transactions, the Company considers it appropriate to also classify the Second IRICO Glass Capital Injection as a connected transaction. As the highest of its applicable percentage ratios is more than 2.5%, the deemed disposal resulting from the Second IRICO Glass Capital Injection should be considered as a very substantial disposal and connected transaction and therefore subject to the relevant reporting, announcement and independent shareholders' approval requirements under Chapters 14 and 14A of the Listing Rules.

**Expected gain or loss of the Company**

Since there will be no transfer of assets or equity interests owned by the Company in IRICO Glass pursuant to the Second IRICO Glass Capital Injection and there will be no proceeds receivable by the Company from the deemed disposal resulting from the Second IRICO Glass Capital Injection, there will be no significant gain or loss arising from such deemed disposal by the Company of interests in IRICO Glass to be reported in the next financial statements of the Company.

**3.    SECOND IRICO (ZHANGJIAGANG) CAPITAL INJECTION AND SECOND IRICO (HEFEI) CAPITAL INJECTION**

**SECOND IRICO (ZHANGJIAGANG) CAPITAL INJECTION**

On 17 September 2009, IRICO Group, Zhangjiagang Industry Corporation and IRICO Glass entered into the Second IRICO (Zhangjiagang) Registered Capital Increase Agreement, pursuant to which IRICO Glass has agreed to further inject RMB500 million (it is the parties' understanding that such amount may be adjusted depending on the amount of the A Share Issue Proceeds) in cash into IRICO (Zhangjiagang). IRICO Group and Zhangjiagang Industry Corporation will not inject any capital into IRICO (Zhangjiagang) pursuant to the Second IRICO (Zhangjiagang) Registered Capital Increase Agreement.

**(a)    Second IRICO (Zhangjiagang) Registered Capital Increase Agreement**

*Parties*

(1)    IRICO Group;

(2)    Zhangjiagang Industry Corporation, who is an Independent Third Party; and

(3)    IRICO Glass

*Second IRICO (Zhangjiagang) Capital Injection*

Pursuant to the Second IRICO (Zhangjiagang) Registered Capital Increase Agreement, IRICO Glass has agreed to further inject RMB500 million (it is the parties' understanding that such amount may be adjusted depending on the amount of the A Share Issue Proceeds) in cash into IRICO (Zhangjiagang). The registered capital to be injected by IRICO Glass in respect of the Second IRICO (Zhangjiagang) Capital Injection is determined with reference to the appraised value of the equity holders' interest of IRICO (Zhangjiagang) as of 31 August 2009. Such valuation is made based on the cost method and the registered capital is to be acquired by IRICO Glass at par in respect of the amount of the Second IRICO (Zhangjiagang) Capital Injection. Immediately following the completion of the First IRICO (Zhangjiagang) Capital Injection and the Second IRICO (Zhangjiagang) Capital Injection, it is expected that the total registered capital of IRICO (Zhangjiagang) will increase to RMB1.023 billion, and IRICO Glass will be interested in approximately 97.75% of the registered capital of IRICO (Zhangjiagang).

*Payment terms*

IRICO Glass is required to pay the amounts for the Second IRICO (Zhangjiagang) Capital Injection to the designated account of IRICO (Zhangjiagang) within 12 months after the effective date of the Second IRICO (Zhangjiagang) Registered Capital Increase Agreement.

*Conditions precedent*

The Second IRICO (Zhangjiagang) Registered Capital Increase Agreement will take effect upon the satisfaction of all of the following conditions precedent:

1.   the A Share Issue having been approved in the shareholders' meeting of A Share Company;

2.   the A Share Issue having been approved in shareholders' meeting of the Company;

3.   the A Share Issue having been approved by law and the capital raised thereunder has been completed; and

4.   the Second IRICO (Zhangjiagang) Capital Injection having been approved in the shareholders' meeting of the Company.

**Shareholding structure of IRICO (Zhangjiagang)**

As at the date of this announcement, the shareholding structure of IRICO (Zhangjiagang) is as follows:



Immediately following the completion of the First IRICO (Zhangjiagang) Capital Injection, the A Share Issue and the Second IRICO (Zhangjiagang) Capital Injection, the shareholding structure of IRICO (Zhangjiagang) will be as follows:



The Company considers that immediately following the completion of the Second IRICO (Zhangjiagang) Capital Injection, IRICO (Zhangjiagang) will continue to be a subsidiary of the Company.

**Use of proceeds**

The proceeds in the amount of approximately RMB500 million to be received by IRICO (Zhangjiagang) from the Second IRICO (Zhangjiagang) Capital Injection is currently intended to be used by IRICO (Zhangjiagang) for the construction of the advanced TFT-LCD glass substrate production line project.

## SECOND IRICO (HEFEI) CAPITAL INJECTION

On 17 September 2009, IRICO Group and IRICO Glass entered into the Second IRICO (Hefei) Registered Capital Increase Agreement, pursuant to which IRICO Glass has agreed to inject RMB1.8 billion (it is the parties' understanding that such amount may be adjusted depending on the amount of the A Share Issue Proceeds) in cash into IRICO (Hefei). IRICO Group will not inject any capital into IRICO (Hefei) pursuant to the Second IRICO (Hefei) Registered Capital Increase Agreement.

**(b)   Second IRICO (Hefei) Registered Capital Increase Agreement**

*Parties*

(1)   IRICO Group; and

(2)   IRICO Glass

*IRICO (Hefei) Capital Injection*

Pursuant to the Second IRICO (Hefei) Registered Capital Increase Agreement, IRICO Glass has agreed to inject RMB1.8 billion (it is the parties' understanding that such amount may be adjusted depending on the amount of the A Share Issue Proceeds) in cash into IRICO (Hefei). The registered capital to be injected by IRICO Glass in respect of the Second IRICO (Hefei) Capital Injection is determined with reference to the appraised value of the equity holders' interest of IRICO (Hefei) as of 31 August 2009. Such valuation is made based on the asset base method and the registered capital is to be acquired by IRICO Glass at par in respect of the amount of the Second IRICO (Hefei) Capital Injection. Immediately following the completion of the First IRICO (Hefei) Capital Injection and the Second IRICO (Hefei) Capital Injection, the total registered capital of IRICO (Hefei) will increase to RMB1.82 billion, and IRICO Glass will be interested in approximately 99.73% of the registered capital of IRICO (Hefei).

*Payment terms*

IRICO Glass is required to pay the amounts for the Second IRICO (Hefei) Capital Injection to the designated account of IRICO (Hefei) within 12 months after the effective date of the Second IRICO (Hefei) Registered Capital Increase Agreement.

*Conditions precedent*

The Second IRICO (Hefei) Registered Capital Increase Agreement will take effect upon the satisfaction of all of the following conditions precedent:

1. the A Share Issue and related matters having been approved in the shareholders' meeting of A Share Company;

2. the A Share Issue and related matters having been approved in shareholders' meeting of the Company;

3. the A Share Issue having been approved by law and the capital raised thereunder has been completed; and

4. the Second IRICO (Hefei) Registered Capital Increase Agreement having been approved in the shareholders' meeting of the Company.

**Shareholding structure of IRICO (Hefei)**

As at the date of this announcement, the shareholding structure of IRICO (Hefei) is as follows:



Immediately following the completion of the First IRICO (Hefei) Capital Injection, the A Share Issue and the Second IRICO (Hefei) Capital Injection, the shareholding structure of IRICO (Hefei) will be as follows:



The Company considers that immediately following the completion of the Second IRICO (Hefei) Capital Injection, IRICO (Hefei) will continue to be a subsidiary of the Company.

**Use of proceeds**

The proceeds in the aggregate amount of approximately RMB1.8 billion to be received by IRICO (Hefei) from the Second IRICO (Hefei) Capital Injection is currently intended to be used by IRICO (Hefei) for the construction of the advance TFT-LCD glass substrate production line.

**Implications relating to the Second IRICO (Zhangjiagang) Capital Injection and the Second IRICO (Hefei) Capital Injection under the Listing Rules**

Given that the Second IRICO (Zhangjiagang) Capital Injection and the Second IRICO (Hefei) Capital Injection are relating to the same line of business of the Group, the Company considers it appropriate to aggregate the two transactions for the purpose of calculating the relevant percentage ratios (as defined in Rule 14.07 of the Listing Rules) in accordance with Chapters 14 and 14A of the Listing Rules.

The Second IRICO (Zhangjiagang) Capital Injection and the Second IRICO (Hefei) Capital Injection will constitute acquisitions under Chapter 14 of the Listing Rules. Having considered the implications of Rules 14.22 and 14.23 of the Listing Rules, the Company aggregates the impact of the Initial Capital Injection Transactions with the A Share Issue and Related Transactions for the purpose of classifying the Second IRICO (Zhangjiagang) Capital Injection and the Second IRICO (Hefei) Capital Injection under Chapters 14 and 14A of the Listing Rules. As the highest percentage ratio among all the relevant percentage ratios (as defined in Rule 14.07 of the Listing Rules), calculated on an aggregate basis, for such transactions is more than 100%, such transactions constitute a very substantial acquisition under Chapter 14 of the Listing Rules. Further, as each of IRICO (Zhangjiagang) and IRICO (Hefei) is a connected person of the Company as at the date of this announcement, the Second IRICO (Zhangjiagang) Capital Injection and the Second IRICO (Hefei) Capital Injection together also constitute a connected transaction of the Company under Chapter 14A of the Listing Rules. Therefore the Second IRICO (Zhangjiagang) Capital Injection and the Second IRICO (Hefei) Capital Injection together should be considered as a very substantial acquisition and connected transaction, and therefore are subject to the relevant reporting, announcement and independent shareholders' approval requirements under Chapters 14 and 14A of the Listing Rules.

**4.   REASONS FOR AND BENEFIT RELATING TO A SHARE ISSUE AND RELATED TRANSACTIONS**

The first domestic fifth generation liquid crystal glass substrate production line whose intellectual property rights are owned by the Company had commenced production in October 2008. With the fast growing market demand in the flat panel display industry, particularly in respect of the liquid crystal television sets and other display devices in the PRC, the Company considers that it must grasp the opportunity for the development in the industry, promptly increase the intensity of its investment and realise the fast expansion of the production capacity of liquid crystal glass substrate. Under the present conditions, the Company proposes to fully utilise the financing platform of its subsidiary, A Share Company, to raise the necessary capital for the development of the liquid crystal glass substrate production business through the A Share Issue. After the capital raised pursuant to the A Share Issue has been completed, A Share Company proposes to make capital injection into IRICO Glass in the amount of RMB3.5 billion. IRICO Glass in turn proposes to inject such amount into IRICO (Zhangjiagang) and IRICO (Hefei) in the amount of RMB1.8 billion and 500 million, respectively, for the construction of the advanced TFT-LCD glass substrate production line project. The remaining RMB300 million and RMB900 million of the A Share Issue Proceeds will be used as additional working capital and for the research and development of the advanced TFT-LCD glass substrate production line(s) and the construction of phase II expansion project of TFT-LCD glass substrate production line(s) by IRICO Glass, respectively. The Group believes that there is a prospect for the development in the advanced TFT-LCD glass substrate production line project, the completion of which will expedite the development in the construction of the glass substrate project and strategic transformation of the Group. It is expected that the overall operation results of the Group will be improved.

The Directors believe that the terms of the A Share Issue and Related Transactions are fair and reasonable and the transactions contemplated thereunder are in the interests of the Company and its shareholders as a whole.

## C.   EGM

The board of Directors will convene an EGM for the Independent Shareholders to consider, if appropriate, approve the Initial Capital Injection Transactions and the A Share Issue and Related Transactions, respectively, as separate transactions.

An independent board committee comprising the independent non-executive Directors will be formed to advise the Independent Shareholders on the Initial Capital Injection Transactions and the A Share Issue and Related Transactions. An independent financial adviser will, in accordance with the Listing Rules, be appointed to advise the independent board committee and the Independent Shareholders on the same.

Since a substantial portion of the A Shares issuable under the A Share Issue will be subscribed by IRICO Group and each of IRICO (Zhangjiagang) and IRICO (Hefei) is an associate of IRICO Group, IRICO Group will abstain from voting in connection with the Initial Capital Injection Transactions and the A Share Issue and Related Transactions in the EGM.

A circular of the Company containing, among other matters, further details of the Initial Capital Injection Transactions and the A Share Issue and Related Transactions, the recommendation of the independent board committee and the advice of an independent financial adviser on the relevant transactions, a notice of the EGM and any other information as required by the Listing Rules will be despatched to the shareholders of the Company as soon as practicable.

## D.   NON-EXEMPT CONTINUING CONNECTED TRANSACTIONS

As the shareholding percentage of IRICO Group in A Share Company may exceed 10% immediately following the completion of the A Share Issue, A Share Company (being a subsidiary of the Company) may become a connected person of the Company. The Company considers that certain non-exempt continuing connected transactions may arise thereafter and such transactions may be subject to the relevant reporting, announcement and independent shareholders' approval requirements under Chapter 14A of the Listing Rules. An announcement of the Company, containing details of such transactions will be made if and when appropriate.

## E.   INFORMATION ON THE RELEVANT PARTIES

**The Company**

The Company is principally engaged in the production and sales of display devices (colour picture tubes and flat panel display devices) and its components, electronic glass, phosphor materials and metallic products.

**IRICO Group**

IRICO Group is a wholly state-owned enterprise and the controlling shareholder of the Company holding approximately 75% of its issued share capital. IRICO Group, in addition to operating businesses through the Company, is principally engaged in the research and development, production and trading of businesses relating to colour picture tubes, display panels and their components, colour television sets and electronic products.

**A Share Company**

A Share Company is principally engaged in the production, development and operation of colour display devices, electronic products and components and raw materials.

|  | For the year ended 31 December 2007 | For the year ended 31 December 2008 |
|---|---|---|
| Profit/(loss) before taxation and extraordinary items of A Share Company | RMB(57,026,235.56) | RMB30,325,400.64 |
| Profit/(loss) after taxation and extraordinary items of A Share Company | RMB(27,486,120.42) | RMB30,396,079.08 |

The audited net asset value of A Share Company, based on PRC GAAP, as at 31 December 2008 was RMB1,959,257,940.32.

**IRICO Glass**

IRICO Glass is principally engaged in the production and operation of electronic glass products and outbound trading (except those restricted by the PRC government)

|  | For the year ended 31 December 2007 | For the year ended 31 December 2008 |
| --- | --- | --- |
| Profit/(loss) before taxation and extraordinary items of IRICO Glass | RMB0 | RMB(6,792,872.73) |
| Profit/(loss) after taxation and extraordinary items of IRICO Glass | RMB0 | RMB(6,792,872.73) |

The audited net asset value of IRICO Glass, based on PRC GAAP, as at 31 December 2008 was RMB383,207,127.27. As at the date of this announcement, the existing shareholders of IRICO Glass are the Company, Sichuan Changhong, Heibei Dongxu and 41 natural person shareholders.

Sichuan Changhong's principal businesses include household appliances; electronic products and parts; communication devices; computers and other electronic equipment; electronic and electrical machinery special equipment; electrical machinery and equipment; battery products; medical electronic products; power equipment; digital surveillance products; metal products; equipment instruments; office machinery; education and sports supplies; manufacturing, retailing and repairing furniture, kitchen cabinet and gas appliances; leasing houses and equipment; packaging and technical services; road transport, storage and portage; e-commerce; software development, retail and services; enterprise management consultation and services; investing in high-tech projects and other businesses allowed by the state; developing and managing real estate; and recycling abandoned electrical and electronic devices.

Hebei Dongxu is principally engaged in the production and design of non-standardized facilities and components; sale of the processing of the components of electronic products for grinding materials (except in relation to cars); import and export business of various self-made and licensed products and technology.

The Company confirms that the existing shareholders of IRICO Glass other than the Company are Independent Third Parties.

**IRICO (Zhangjiagang)**

IRICO (Zhangjiagang) is a company incorporated in the PRC on 28 October 2008 and is principally engaged in the research and development, manufacturing and sales of TFT-LCD panels, module and their accessories; the import and export business of various self-made and licensed products and technology (except those prohibited for operation or restricted for trading by the PRC government). The Company understands from IRICO (Zhangjiagang) that no profit or loss was recorded by IRICO (Zhangjiagang) for the period from 28 October 2008 (date of incorporation) to 31 August 2009.

The audited values of total assets, total liabilities and net assets of IRICO (Zhangjiagang), based on PRC GAAP, as at 31 August 2009 are set out as follows:

|  | As at 31 August 2009 |
| --- | --- |
|  | *(RMB)* |
| Total assets | 24,064,894.77 |
| Total liabilities | 1,064,894.77 |
| Net assets | 23,000,000 |

**Zhangjiagang Industry Corporation**

Zhangjiagang Industry Corporation's principal businesses include investment and management of land development projects and the trading of metal materials, chemical fiber, wool, timber, hardware, AC power, electrical products, construction materials, textile products, rubber products, industrial chemicals (except for hazardous goods), agricultural by-products. The Company confirms that Zhangjiagang Industry Corporation is an Independent Third Party.

**IRICO (Hefei)**

IRICO (Hefei) is a company incorporated in the PRC on 26 August 2009 and is principally engaged in the investment, construction, development, manufacturing and sales of glass substrates for liquid crystal, other glass and related products and trading (except those prohibited for operation or restricted for trading by the PRC government). The Company understands from IRICO (Hefei) that no profit or loss was recorded by IRICO (Hefei) for the period from 26 August 2009 (date of incorporation) to 31 August 2009.

The audited values of total assets, total liabilities and net assets of IRICO (Hefei), based on PRC GAAP, as at 31 August 2009 are set out as follows:

|  | **As at 31 August 2009** |
| --- | --- |
|  | *(RMB)* |
| Total assets | 5,000,000 |
| Total liabilities | 0 |
| Net assets | 5,000,000 |

## F.  SUSPENDING AND RESUMPTION OF TRADING

At the request of the Company, the trading in the H shares of the Company on the Stock Exchange has been suspended with effect from 14 September 2009 pending the release of this announcement. The Company has already applied to the Stock Exchange for the resumption of trading of its H shares with effect from 9:30 a.m. on 21 September 2009.

## G.   DEFINITIONS

In this announcement, unless the context otherwise requires, the following terms shall have the following meanings:

| | |
|---|---|
| "A Share Company" | IRICO Display Device Co., Ltd. (彩虹顯示器件有限公司), a subsidiary of the Company and a company listed on the Shanghai Stock Exchange |
| "A Share Issue and Related Transactions" | the A Share Issue, the Second IRICO Glass Capital Injection, the Second IRICO (Zhangjiagang) Capital Injection and the Second IRICO (Hefei) Capital Injection |
| "A Share Issue" | the proposed issue of new A Shares, by way of non-public offering, by A Share Company to not more than 10 specific investors, including IRICO Group and Zhangjiagang Industry Corporation, subject to certain terms and conditions, including the respective transactions contemplated under the IRICO Group Subscription Agreement and the Zhangjiagang Industry Corporation Subscription Agreement |
| "A Share Issue Proceeds" | the net proceeds to be received by A Share Company pursuant to the A Share Issue |
| "A Shares" | ordinary shares issued by the Company of RMB1.00 each, which are subscribed for and paid up in RMB and are listed on the Shanghai Stock Exchange |
| "associate" | has the meaning as defined in Rule 1.01 of the Listing Rules |
| "Company" | IRICO Group Electronics Company Limited (彩虹集團電子股份有限公司), a joint stock limited company established in the PRC with limited liability, whose H shares are listed on the Stock Exchange |
| "connected person" | has the meaning as defined in Rule 1.01 of the Listing Rules |
| "controlling shareholder" | has the meaning as defined in Rule 1.01 of the Listing Rules |

| | |
|---|---|
| "CSRC" | China Securities Regulatory Commission（中國證券監督管理委員會）, a regulatory body responsible for the supervision and regulation of the securities market of the PRC |
| "Director(s)" | director(s) of the Company |
| "EGM" | an extraordinary general meeting to be held by the Company relating to the approval of, among other matters, the Initial Capital Injection Transactions and/or the A Share Issue and Related Transactions |
| "First IRICO (Hefei) Capital Injection" | the proposed injection of capital into IRICO (Hefei) by IRICO Glass pursuant to the First IRICO (Hefei) Registered Capital Increase Agreement |
| "First IRICO (Hefei) Registered Capital Increase Agreement" | the registered capital increase agreement entered into between IRICO Group and IRICO Glass on 17 September 2009 in respect of the First IRICO (Hefei) Capital Injection |
| "First IRICO (Zhangjiagang) Capital Injection" | the proposed injection of capital into IRICO (Zhangjiagang) by IRICO Glass pursuant to the First IRICO (Zhangjiagang) Registered Capital Increase Agreement |
| "First IRICO (Zhangjiagang) Registered Capital Increase Agreement" | the registered capital increase agreement entered into between IRICO Group, Zhangjiagang Industry Corporation and IRICO Glass on 17 September 2009 in respect of the First IRICO (Zhangjiagang) Capital Injection |
| "First IRICO Glass Capital Injection" | the proposed injection of capital into IRICO Glass by A Share Company pursuant to the First IRICO Glass Registered Capital Increase Agreement |
| "First IRICO Glass Registered Capital Increase Agreement" | the registered capital increase agreement entered into between the Company, A Share Company and the other existing shareholders of IRICO Glass on 17 September 2009 in respect of the First IRICO Glass Capital Injection |

— 45 —

| | |
|---|---|
| "Group" | the Company and its subsidiaries |
| "Hebei Dongxu" | Hebei Dongxu Machinery Co., Ltd.（河北東旭機械設備有限公司）, a limited liability company incorporated in the PRC |
| "Independent Shareholders" | the shareholders of the Company, other than IRICO Group and its associates |
| "Independent Third Parties" | a party or parties who, to the best of the Directors' knowledge, information and belief and having made all reasonable enquiries, is/are third party(ies) independent of the Company and connected persons of the Company as at the date of this announcement |
| "Initial Capital Injection Transactions" | the First IRICO Glass Capital Injection, the First IRICO (Zhangjiagang) Capital Injection and the First IRICO (Hefei) Capital Injection |
| "IRICO (Hefei)" | IRICO (Hefei) LCD Glass Company Limited（彩虹（合肥）液晶玻璃有限公司）, a limited liability company established in the PRC |
| "IRICO (Zhangjiagang)" | IRICO (Zhangjiagang) Flat Panel Display Co., Ltd.（彩虹（張家港）平板顯示有限公司）, a limited liability company established in the PRC |
| "IRICO Glass" | Shaanxi IRICO Electronics Glass Company Limited（陝西彩虹電子玻璃有限公司）, a limited liability company established in the PRC |
| "IRICO Group Subscription Agreement" | the subscription agreement entered into between IRICO Group and A Share Company on 17 September 2009 in respect of the subscription of new A Shares by IRICO Group pursuant to the A Share Issue |

| | |
|---|---|
| "IRICO Group" | IRICO Group Corporation（彩虹集團公司）, a wholly state-owned enterprise and the controlling shareholder of the Company holding 75% of its issued share capital |
| "Listing Rules" | The Rules Governing the Listing of Securities on The Stock Exchange of Hong Kong Limited |
| "Loan Agreement" | the loan agreement entered into between A Share Company and IRICO Group on 17 September 2009 in respect of a loan in the amount of RMB400 million |
| "PRC GAAP" | the Accounting Standards for Business Enterprises published by the Ministry of Finance of the PRC from time to time and other relevant rules |
| "PRC" | the People's Republic of China |
| "RMB" | Renminbi, the lawful currency of the PRC |
| "SASAC" | the state-owned Assets Supervision and Administration Commission of the State Council of the PRC（中國國務院國有資產監督管理委員會） |
| "Second IRICO (Hefei) Capital Injection" | the proposed further injection of capital into IRICO (Hefei) by IRICO Glass pursuant to the Second IRICO (Hefei) Registered Capital Increase Agreement |
| "Second IRICO (Hefei) Registered Capital Increase Agreement" | the registered capital increase agreement entered into between IRICO Group and IRICO Glass on 17 September 2009 in respect of the Second IRICO (Hefei) Capital Injection |

| | |
|---|---|
| "Second IRICO (Zhangjiagang) Capital Injection" | the proposed further injection of capital into IRICO (Zhangjiagang) by IRICO Glass pursuant to the Second IRICO (Zhangjiagang) Registered Capital Increase Agreement |
| "Second IRICO (Zhangjiagang) Registered Capital Increase Agreement" | the registered capital increase agreement entered into between IRICO Group, Zhangjiagang Industry Corporation and IRICO Glass on 17 September 2009 in respect of the Second IRICO (Zhangjiagang) Capital Injection |
| "Second IRICO Glass Capital Injection" | the proposed further injection of capital into IRICO Glass by A Share Company pursuant to the Second IRICO Glass Registered Capital Increase Agreement |
| "Second IRICO Glass Registered Capital Increase Agreement" | the registered capital increase agreement entered into between the Company, A Share Company and the other existing shareholders of IRICO Glass on 17 September 2009 in respect of the Second IRICO Glass Capital Injection |
| "Sichuan Changhong" | Sichuan Changhong Electronics Co., Ltd. (四川長虹電器股份有限公司), a limited liability company incorporated in the PRC |
| "Stock Exchange" | The Stock Exchange of Hong Kong Limited |
| "subsidiary(ies)" | has the meaning ascribed to it under Rule 1.01 of the Listing Rules |
| "TFT-LCD" | thin film transistor liquid crystal display |
| "Zhangjiagang Industry Corporation" | Jiangsu Province Zhangjiagang Economic Development Zone Industry Corporation (江蘇省張家港經濟開發區實業總公司), a limited company incorporated in the PRC |

"Zhangjiagang Industry Corporation Subscription Agreement"

the subscription agreement entered into between Zhangjiagang Industry Corporation and A Share Company on 17 September 2009 in respect of the subscription of new A Shares by Zhangjiagang Industry Corporation pursuant to the A Share Issue

By order of the board of Directors

**IRICO Group Electronics Company Limited**

**Xing Daoqin**

*Chairman*

Shaanxi Province, the PRC

18 September 2009

*As at the date of this announcement, the Board consists of Mr. Xing Daoqin, Mr. Tao Kui and Mr. Zhang Junhua as executive Directors, Mr. Guo Mengquan, Mr. Niu Xinan, Mr. Fu Jiuquan and Mr. Zhang Weichuan as non-executive Directors, and Mr. Xu Xinzhong, Mr. Feng Bing, Mr. Wang Jialu, Mr. Lv Hua, and Mr. Zhong Pengrong as independent non-executive Directors.*

\*   *For identification purposes only*

# EXHIBIT 25



# CONTENT

| | | |
|---|---|---|
| 1. | Corporate Profile | 2 |
| 2. | Financial Highlights | 5 |
| 3. | Chairman's Statement | 7 |
| 4. | Management Discussion and Analysis | 11 |
| 5. | Profiles of Directors, Supervisors and Senior Management | 25 |
| 6. | Report of the Directors | 33 |
| 7. | Report of the Supervisory Committee | 47 |
| 8. | Corporate Governance Report | 48 |
| 9. | Report of the Auditors | 66 |
| 10. | Consolidated Balance Sheet | 67 |
| 11. | Balance Sheet | 69 |
| 12. | Consolidated Income Statement | 71 |
| 13. | Consolidated Statement of Changes in Equity | 72 |
| 14. | Consolidated Cash Flow Statement | 73 |
| 15. | Notes to the Financial Statements | 74 |
| 16. | Five Year Financial Summary | 134 |

D☐P☐ Exhibit 8402
Deponent Lang
Date 5/6/19 Rptr BW



# Corporate Profile

## 1. Introduction

IRICO Group Electronics Company Limited (the "Company") was incorporated in Xianyang, Shaanxi Province, the People's Republic of China (the "PRC" or "China") on 10 September 2004. It was established with the contribution made by IRICO Group Corporation, the controlling shareholder and sole promoter of the Company, in respect of its assets of production and sales of color picture tubes ("CPTs") in its related core businesses and, the equity interests in its eight subsidiaries engaged in related operations. The Company's H Shares were successfully listed on the main board of The Stock Exchange of Hong Kong Limited (the "Stock Exchange") on 20 December 2004.

The Company and its subsidiaries (the "Group") are the largest CPTs manufacturer in China and one of the world's major CPTs and CPT components manufacturers. We also have the longest operating history amongst all CPTs manufacturers in China, with over 20 years of experience in CPTs production.

Major customers of the Group include TCL, Changhong, Hisense, Konka and Skyworth, which are major television producers in China.



## 2.    Corporate information

### Executive Directors

| | |
|---|---|
| Xing Daoqin | Chairman |
| Tao Kui | Vice Chairman |
| Guo Mengquan | President |
| Zhang Shaowen | |
| Yun Dajun | Chief Financial Controller |

### Non-executive Director

Zhang Xingxi

### Independent non-executive Directors

Feng Fei
Xu Xinzhong
Feng Bing
Wang Jialu
Zha Jianqiu

### Audit committee

Zha Jianqiu
Feng Bing
Feng Fei
Xu Xinzhong
Zhang Xingxi

### Joint Company secretaries

Zhang Chunning
Ng Yuk Keung

### Qualified accountant

Ng Yuk Keung

### Authorised representative

Yun Dajun
Zhang Chunning

# Corporate Profile *(Continued)*

## 2. Corporate information *(continued)*

### Legal address in the PRC
No. 1 Caihong Road
Xianyang, Shaanxi Province
The People's Republic of China
Postal code: 712021

### Place of business in Hong Kong
Room 3103, 31st Floor
Convention Tower, 1 Wanchai Road
Hong Kong

### Company website
www.irico.com.cn

### Legal adviser
Baker & McKenzie
14th Floor, Hutchison House
10 Harcourt Road
Hong Kong

### Auditors
PricewaterhouseCoopers
22nd Floor
Prince's Building
Central
Hong Kong

### Principal bankers
Industrial and Commercial Bank of China (Xianyang Branch)
Construction Bank of China (Xianyang Branch)
Industrial and Commercial Bank of China (Xi'an Advanced Technology Development Zone Branch)
Industrial and Commercial Bank of China (Xi'an Branch)

### Registrar of H Shares
Computershare Hong Kong Investor Services Limited
Room 1712 - 1716, 17th Floor, Hopewell Center
183 Queen's Road East
Hong Kong

### Investor and media relations
Wonderful Sky Public Relations and Financial Consultant Company Limited
Unit 3103, 31st Floor, Office Tower
Convention Plaza,1 Harbour Road
Hong Kong

# Report of the Auditors

## PRICEWATERHOUSECOOPERS ®

羅兵咸永道會計師事務所

**PricewaterhouseCoopers**
22nd Floor Prince's Building
Central, Hong Kong

**TO THE EQUITY HOLDERS OF**
**IRICO GROUP ELECTRONICS COMPANY LIMITED**
(A joint stock company incorporated in the People's Republic of China with limited liability)

We have audited the financial statements on pages 67 to 133 which have been prepared in accordance with accounting principles generally accepted in Hong Kong.

## Respective responsibilities of directors and auditors

The Company's directors are responsible to prepare financial statements which give a true and fair view. In preparing financial statements which give a true and fair view it is fundamental that appropriate accounting policies are selected and applied consistently.

It is our responsibility to form an independent opinion, based on our audit, on those financial statements and to report our opinion solely to you, as a body, and for no other purpose. We do not assume responsibility towards or accept liability to any other person for the contents of this report.

## Basis of opinion

We conducted our audit in accordance with Hong Kong Standards on Auditing issued by the Hong Kong Institute of Certified Public Accountants. An audit includes examination, on a test basis, of evidence relevant to the amounts and disclosures in the financial statements. It also includes an assessment of the significant estimates and judgements made by the directors in the preparation of the financial statements, and of whether the accounting policies are appropriate to the circumstances of the Company and the Group, consistently applied and adequately disclosed.

We planned and performed our audit so as to obtain all the information and explanations which we considered necessary in order to provide us with sufficient evidence to give reasonable assurance as to whether the financial statements are free from material misstatement. In forming our opinion we also evaluated the overall adequacy of the presentation of information in the financial statements. We believe that our audit provides a reasonable basis for our opinion.

## Opinion

In our opinion the financial statements give a true and fair view of the state of affairs of the Company and of the Group as at 31st December 2005 and of the Group's loss and cash flows for the year then ended and have been properly prepared in accordance with the disclosure requirements of Hong Kong Companies Ordinance.

**PricewaterhouseCoopers**
Certified Public Accountants

Hong Kong, 24th April 2006

## Notes to the Financial Statements
For the year ended 31st December 2005
(All amounts in RMB thousand unless otherwise stated)

## 35. Related-party transactions

The Group is controlled by IRICO Group Corporation (incorporated in the PRC), which owns 75% of the Company's shares. The remaining 25% of the shares are widely held.

Related parties include IRICO Group Corporation and its subsidiaries (other than the Group), associates and jointly controlled entities (hereinafter collectively refered to the "IRICO Group"), corporations in which the Company is able to control, jointly control or exercise significant influence, key management personnel of the Company and IRICO Group Corporation and their close family members. IRICO Group Corporation does not produce financial statements available for public use.

IRICO Group Corporation is controlled by PRC government. In accordance with HKAS 24 "Related Party Disclosures", other state-owned enterprises and their subsidiaries, directly or indirectly controlled by the PRC government are also regarded as related parities of the Group and defined as "Other state controlled enterprise". For purpose of related transaction disclosure, the Group has in place procedures to assist the identification of the immediate ownership structure of its customers and suppliers as to whether they are state-owned companies. Many state-owned enterprises have multi-layered corporate structure and the ownership structures change over time as a result of transfers and privatization programs. Nevertheless, in the opinions of directors, the majority of the Group's activities have been conducted with other state controlled enterprises in the Group's ordinary course of business. In the meantime, the meaningful information relating to related party transactions has been adequately disclosed.

The following transactions were carried out with related parties:

### (a) Sales of goods and provision of services

|  | 2005 | 2004 |
|---|---|---|
| Sales of goods (Note (i)): |  |  |
| The IRICO Group |  |  |
| —Shenzhen Hongyang Industry & Trade Company | 29,022 | 32,920 |
| —the utilities plant of the ultimate holding company | 14,791 | 32,248 |
| —Rui Bo Electronics (HK) Limited | 9,050 | — |
| —Caihong Labour Services Company | 1,283 | 154 |
| —Shaanxi IRICO General Service Corporation | 429 | 592 |
| —Shaanxi IRICO Construction Engineering Co., Ltd. | 11 | — |
| —Xian IRICO Electric Co., Ltd. | 3 | 109 |
| —China National Electronics Imp. & Exp. Caihong Company (note (ii)) | — | 347,015 |
| —Shenzhen IRICO-ROYAL Info-Electronics Ltd. | — | 585 |
| —Shenzhen IRICO Electronics Co. Ltd. (note (iii)) | — | 58 |
|  | 54,589 | 413,681 |
| Other state controlled enterprises | 1,882,563 | 3,099,464 |
| Provision of services |  |  |
| —Management fee from the ultimate holding company (Note (iv)) | — | 8,172 |

**Notes to the Financial Statements**
For the year ended 31st December 2005
All amounts in RMB thousands unless otherwise stated

## 35. Related-party transactions (*continued*)

### (a) Sales of goods and provision of services (*continued*)

Notes:

(i)   Sales to related parties were conducted at prices not less than cost and with terms mutually agreed by both contract parties.

(ii)  Sales to and purchase from China National Electronics Imp. & Exp. Caihong Company were discontinued before the listing of the Company.

(iii) As at 19th May 2005, Shenzhen IRICO Electronics Co. Ltd. reformed to be a private owned company, thus it is not related party of the Group after the reform. There is no remaining balance due to / from this company, and the purchase amount in note b) only represents the first half year of 2005.

(iv)  In 2004, the management fee received/receivable from the utilities plant of the ultimate holding company, was levied based on 3% of the sales amount of the utilties plant of the ultimate holding company for financing and management service provided by the Group as agreed by the parties involved. This transaction was discontinued upon the incorporation of the Company.

### (b) Purchases of goods and provision of services

|  | 2005 | 2004 |
|---|---|---|
| Purchases of goods (Note (i)): | | |
| The IRICO Group | | |
| —Caihong Labour Services Company | 81,862 | 103,447 |
| —Shaanxi IRICO General Service Corporation | 47,341 | 50,082 |
| —Xianyang Cailian Packaging Materials Co., Ltd. | 37,311 | 26,416 |
| —Xian Caihong Plastic Co., Ltd. | 12,159 | 11,731 |
| —Shenzhen IRICO Electronics Co., Ltd. | 4,958 | 12,874 |
| —Xianyang Caihong Adhesive Belt Co., Ltd. | 4,530 | 5,242 |
| —Shenzhen Hongyang Industry & Trade Company | 2,407 | 1,621 |
| —China National Electronics Imp. & Exp. Caihong Company (Note (ii)) | — | 246,526 |
| | 190,568 | 457,939 |
| Other state controlled enterprises | 923,179 | 1,532,381 |
| Purchases of property, plant and equipments: | | |
| The IRICO Group | | |
| —Xian Guangxin Electronics Co., Ltd. (Note (iii)) | 639 | — |
| Other state controlled enterprises | 68,816 | 491,201 |

Notes to the Financial Statements
For the year ended 31st December, 2005
(All amounts in RMB thousand unless otherwise stated)

## 35. Related-party transactions (*continued*)

(e) Year-end balances arising from sales/purchases of goods/provision of services

| | Group | | Company | |
|---|---|---|---|---|
| | 2005 | 2004 | 2005 | 2004 |
| Trade receivables from related parties (Note): | | | | |
| The IRICO Group | | | | |
| — Shenzhen Hongyang Industry & Trade Company | 4,206 | 7,949 | — | — |
| — Shenzhen IRICO-ROYAL Info-Electronics Ltd. | 3,421 | 3,421 | 3,421 | 3,421 |
| — The Utilities Plant of the ultimate holding company | 49 | — | 49 | — |
| — Shenzhen IRICO Electronics Co., Ltd. | — | 30 | — | — |
| | 7,676 | 11,400 | 3,470 | 3,421 |
| Other state controlled enterprises | 872,282 | 939,046 | 226,234 | 267,256 |
| | 879,958 | 950,446 | 229,704 | 270,677 |
| Represnsing: | | | | |
| Trade receivables (Note 12) | 243,694 | 489,710 | 48,798 | 169,408 |
| Trade bills receivable (Note 12) | 636,264 | 460,736 | 180,906 | 101,269 |
| | 879,958 | 950,446 | 229,704 | 270,677 |



# 目 錄

| | | |
|---|---|---|
| 1. | 公司簡介 | 2 |
| 2. | 財務概要 | 5 |
| 3. | 董事長報告 | 7 |
| 4. | 管理層討論與分析 | 11 |
| 5. | 董事、監事及高級管理人員簡歷 | 25 |
| 6. | 董事會報告 | 33 |
| 7. | 監事會報告 | 47 |
| 8. | 企業管治報告 | 48 |
| 9. | 核數師報告 | 66 |
| 10. | 綜合資產負債表 | 67 |
| 11. | 資產負債表 | 69 |
| 12. | 綜合利潤表 | 71 |
| 13. | 綜合股東權益變動表 | 72 |
| 14. | 綜合現金流量報表 | 73 |
| 15. | 財務報表附註 | 74 |
| 16. | 五年財務資料概要 | 134 |



公司簡介

## 1. 概況

彩虹集團電子股份有限公司（「本公司」）於2004年9月10日在中華人民共和國（「中華人民共和國」或「中國」）陝西省咸陽市註冊成立，是由控股股東及本公司唯一一發起人彩虹集團公司以與生產、銷售彩色顯像管（「彩管」）之核心業務相關之資產，以及從事相關業務之8家子公司之股權作價出資設立。本公司之H股股票於2004年12月20日在香港聯合交易所有限公司（「聯交所」）主板掛牌交易。

本公司及其附屬公司（「本集團」）是中國最大之彩色顯像管生產商及全球主要之彩色顯像管及配件製造商之一，亦是所有中國彩色顯像管生產商中經營歷史最悠久之一家，在彩色顯像管生產方面有逾20年經驗。

本集團之主要客戶中包括TCL、長虹、海信、康佳和創維，是中國主要之電視機生產商。



公司簡介 *(續)*

## 2. 公司資料

### 執行董事

| | |
|---|---|
| 邢道欽 | 董事長 |
| 陶 魁 | 副董事長 |
| 郭盟權 | 總裁 |
| 張少文 | |
| 雲大俊 | 財務總監 |

### 非執行董事
仉興喜

### 獨立非執行董事
馮 飛
徐信忠
馮 兵
王家路
查劍秋

### 審計委員會
查劍秋
馮 兵
馮 飛
徐信忠
仉興喜

### 公司聯席秘書
張春寧
吳育強

### 合資格會計師
吳育強

### 授權代表
雲大俊
張春寧

公司簡介 *(續)*

## 2.   公司資料 *(續)*

**中國法定地址**
中華人民共和國陝西省咸陽市彩虹路1號
郵編：712021

**香港營業地點**
香港灣仔道1號會展辦公大樓31樓3103室

**公司網址**
www.irico.com.cn

**法律顧問**
貝克‧麥堅時律師事務所
香港夏慤道10號和記大廈14樓

**核數師**
羅兵咸永道會計師事務所
香港中環
太子大廈22樓

**主要往來銀行**
中國工商銀行(咸陽分行)
中國建設銀行(咸陽分行)
中國工商銀行(西安市高新開發區支行)
中國工商銀行(西安市支行)

**香港H股過戶登記處**
香港中央證券登記有限公司
香港皇后大道東183號
合和中心17樓1712 - 1716室

**投資者及傳媒關係**
皓天公關財經顧問有限公司
香港灣仔港灣道1號
會展辦公大樓
31樓3103室

核數師報告

**PRICEWATERHOUSECOOPERS** ⓟ

羅兵咸永道會計師事務所

**羅兵咸永道會計師事務所**
香港中環
太子大廈 22 樓

**致彩虹集團電子股份有限公司全體股東**
*(於中華人民共和國註冊成立之股份有限公司)*

本核數師已完成審核第67頁至第133頁之財務報表,該等財務報表乃按照香港普遍採納之會計原則編製。

# 董事及核數師各自之責任

編製真實兼公平之財務報表乃貴公司董事之責任。在編製該等真實兼公平之財務報表時,董事必須採用適當之會計政策,並且貫徹應用該等會計政策。

本核數師之責任是根據審核之結果,對該等財務報表作出獨立意見,並僅向整體股東報告,除此之外本報告別無其他目的。本核數師不會就報告的內容向任何其他人士負上或承擔任何責任。

# 意見之基礎

本核數師已按照香港會計師公會所頒佈之香港審計準則進行審核工作。審核範圍包括以抽查方式查核與財務報表所載數額及披露事項有關之憑證,亦包括評審董事於編製財務報表時所作之重大估計和判斷,所採用之會計政策是否適合貴公司與貴集團之具體情況,及有否貫徹應用並足夠披露該等會計政策。

本核數師在策劃和進行審核工作時,均以取得所有本核數師認為必需之數據及解釋為目標,以便獲得充分憑證,就該等財務報表是否存有重大錯誤陳述,作出合理之確定。在作出意見時,本核數師亦已評估該等財務報表所載之數據在整體上是否足夠。本核數師相信我們之審核工作已為下列意見提供合理之基礎。

# 意見

本核數師認為,上述財務報表足以真實兼公平地顯示貴公司與貴集團於2005年12月31日結算時之財政狀況,及貴集團截至該日止年度之虧損及現金流量,並按照《香港公司條例》之披露規定妥為編製。

**羅兵咸永道會計師事務所**
香港執業會計師

香港,2006年4月24日

## 35. 關聯方交易

本集團控股公司為彩虹集團公司(於中國註冊成立)，擁有本公司75%的股份。其餘25%的股份為分散持有。

關聯方包括彩虹集團公司及其子公司(不含本集團)，聯營公司及合資公司(此後統稱彩虹集團)、本公司有能力控制或共同控制或對其具重大影響的公司，以及本公司及彩虹集團公司主要管理人員及其家庭成員。彩虹集團公司並無編製公開的財務報表。

彩虹集團公司由中國政府控制。根據香港會計準則第24號「關聯方披露」，其餘亦由中國政府直接或間接控制的國有企業及其子公司(被定義為「其他國有控股企業」)均被視為本集團之關聯方。就關連交易的披露而言，本集團已設立相關程序，幫助辨識客戶及供應商的直接所有權結構是否屬國有企業。許多國有企業有多層產權結構，其所有權結構隨所有權轉讓及私有化活動而不時發生變動。儘管如此，本公司董事認為，本集團乃依照本集團的正常業務過程與其他國家控股企業開展大部分業務。同時，對關聯方交易有關的資料均已作充分披露。

本公司與關聯方進行了如下交易：

### (a) 銷售貨物及提供服務

| | 2005年 | 2004年 |
|---|---|---|
| 銷售貨物(附註(i)) | | |
| 彩虹集團 | | |
| －深圳虹陽工貿公司 | **29,022** | 32,920 |
| －最終控股公司所有之彩虹動力廠 | **14,791** | 32,248 |
| －瑞博電子(香港)有限公司 | **9,050** | － |
| －彩虹勞動服務公司 | **1,283** | 154 |
| －陝西彩虹三產總公司 | **429** | 592 |
| －陝西彩虹建築工程公司 | **11** | － |
| －西安彩虹電器公司 | **3** | 109 |
| －中國電子進出口彩虹公司(附註(ii)) | **－** | 347,015 |
| －深圳彩虹皇旗電子信息有限公司 | **－** | 585 |
| －深圳彩虹電子有限公司(附註(iii)) | **－** | 58 |
| | **54,589** | 413,681 |
| 其他國有控股企業 | **1,882,563** | 3,099,464 |
| 提供服務 | | |
| －自最終控股公司獲取之管理費(附註(iv)) | **—** | 8,172 |

# 財務報表附註

截至2005年12月31日止年度
(除另有標明外，否則所有金額以人民幣千元列示)

## 35. 關聯方交易 *(續)*

### (a) 銷售貨物及提供服務 *(續)*

(i)  對關聯方之銷售以不低於成本價及按訂約雙方所協議之條款進行。

(ii)  對中國國家電子進出口彩虹公司的銷售及採購於本公司上市前已中止。

(iii)  於2005年5月19日，深圳彩虹電子有限公司改制為私有制企業，因此其改制後不再是本集團關聯方。本集團已不存在該公司的應收／應付餘額，上述採購額僅代表2005年上半年的發生額(附註(b))。

(iv)  2004年，經有關各方達成協議，本集團就提供財務及管理服務向最終控股公司所有之彩虹動力廠收取／應收的管理費，以彩虹動力廠銷售額3%計算。該交易於本公司成立時終止。

### (b) 購買貨物及接受服務

| | 2005年 | 2004年 |
|---|---|---|
| 購買貨物(附註(i))： | | |
| 彩虹集團 | | |
| 　－彩虹勞動服務公司 | 81,862 | 103,447 |
| 　－陝西彩虹三產總公司 | 47,341 | 50,082 |
| 　－咸陽彩虹電子包裝材料有限公司 | 37,311 | 26,416 |
| 　－西安彩虹塑業有限公司 | 12,159 | 11,731 |
| 　－深圳彩虹電子有限公司 | 4,958 | 12,874 |
| 　－咸陽彩虹膠帶有限責任公司 | 4,530 | 5,242 |
| 　－深圳虹陽工貿公司 | 2,407 | 1,621 |
| 　－中國電子進出口彩虹公司(附註(ii)) | — | 246,526 |
| | 190,568 | 457,939 |
| 其他國有控股企業 | 923,179 | 1,532,381 |
| 購買物業、廠房及設備： | | |
| 彩虹集團 | | |
| 　－西安廣信電子有限公司(附註(iii)) | 639 | — |
| 其他國有控股企業 | 68,816 | 491,201 |

# 財務報表附註

截至2005年12月31日止年度
（除另有指明外，所有數額以人民幣千元為單位）

## 35. 關聯方交易 (續)

### (e) 銷售／採購貨物／提供服務產生之年末結餘

| | 本集團 | | 本公司 | |
|---|---|---|---|---|
| | **2005年** | 2004年 | **2005年** | 2004年 |
| 關聯方應收貿易賬款(附註)： | | | | |
| 彩虹集團 | | | | |
| 一深圳虹陽工貿公司 | **4,206** | 7,949 | **—** | — |
| 一深圳彩虹皇旗電子信息有限公司 | **3,421** | 3,421 | **3,421** | 3,421 |
| 一最終控股公司所有之彩虹動力廠 | **49** | — | **49** | — |
| 一深圳彩虹電子有限公司 | **—** | 30 | **—** | — |
| | **7,676** | 11,400 | **3,470** | 3,421 |
| 其他國有控股企業 | **872,282** | 939,046 | **226,234** | 267,256 |
| | **879,958** | 950,446 | **229,704** | 270,677 |
| 應收貿易賬款(附註12) | **243,694** | 489,710 | **48,798** | 169,408 |
| 應收貿易票據(附註12) | **636,264** | 460,736 | **180,906** | 101,269 |
| | **879,958** | 950,446 | **229,704** | 270,677 |

# EXHIBIT 26

**[Document Submitted Under Seal]**

# EXHIBIT 27
## [Document Submitted Under Seal]

# EXHIBIT 28

**[Document Submitted Under Seal]**

# EXHIBIT 29

**[Document Submitted Under Seal]**

# EXHIBIT 30
## [Document Submitted Under Seal]

# EXHIBIT 31

**[Document Submitted Under Seal]**

# EXHIBIT 32

# BAKER BOTTS LLP

| | | |
|---|---|---|
| 101 CALIFORNIA ST.<br>SUITE 3600<br>SAN FRANCISCO, CALIFORNIA<br>94111<br><br>TEL  +1.415.291.6200<br>FAX  +1.415.291.6300<br>BakerBotts.com | AUSTIN<br>BEIJING<br>BRUSSELS<br>DALLAS<br>DUBAI<br>HONG KONG<br>HOUSTON | LONDON<br>MOSCOW<br>NEW YORK<br>PALO ALTO<br>RIYADH<br>**SAN FRANCISCO**<br>WASHINGTON |

Stuart C. Plunkett
TEL: 415.291.6203
FAX: 415.291.6303
stuart.plunkett@bakerbotts.com

September 14, 2018

*VIA E-MAIL*

R. Alexander Saveri (E-mail: rick@saveri.com)
Geoffrey C. Rushing (E-mail: grushing@saveri.com)
Cadio Zirpoli (E-mail: cadio@saveri.com)
Matthew D. Heaphy (E-mail: mheaphy@saveri.com)
SAVERI & SAVERI, INC.
706 Sansome St # 200
San Francisco, CA 94111

Re:     In re: Cathode Ray Tube (CRT) Antitrust Litigation -
Master File No. 3:07-cv05944-SC; MDL No. 1917

Counsel:

Irico Defendants are electronically producing documents Bates labeled IRI-CRT-00001199 through -3489, which can be downloaded at the following link:

Link: https://bbmft.bakerbotts.com/pkg?token=3ca2579a-0f78-40bc-a306-da7a42e71c45

Passwords to access the download link and extract the files will be sent under separate cover.  Irico Defendants designate this submission as "Confidential" pursuant to the Stipulated Protective Order.

This production contains additional nonprivileged electronic documents located by Irico that are responsive to Plaintiffs' discovery requests, including:

1. Reports, requests for approval, and other communications with Chinese government entities and related internal communications;

2. Directives from Chinese government entities and related internal communications;

3. Agendas and summaries of internal meetings, shareholder meetings, and meetings with Chinese government officials;

4. Organizational charts;

Active 38595917.1

5.   Internal planning and strategy documents;

6.   Documents related to restructuring of Irico entities; and

7.   Records of remarks given by Irico management and Chinese government officials.

Irico did not locate any responsive, nonprivileged documents in its electronic files relating to alleged conspiratorial meetings or sales of Irico CRT products to the United States (by Irico entities or third parties).

If you have any questions or have difficulty accessing these documents, please do not hesitate to contact me.

Sincerely,

Stuart C. Plunkett

cc:   Mario N. Alioto (malioto@tatp.com)
      Lauren C. Capurro (laurenrussell@tatp.com)
      Joseph M. Patane (jpatane@tatp.com)
      Christopher Micheletti (cmicheletti@zelle.com)

# EXHIBIT 33

## Matthew Heaphy

| | |
|---|---|
| **From:** | reilly.stoler@bakerbotts.com |
| **Sent:** | Monday, October 15, 2018 6:08 PM |
| **To:** | Guido Saveri; Rick Saveri; Geoff Rushing; Cadio Zirpoli; Matthew Heaphy; qfu@zelle.com; cmicheletti@zelle.com; jpatane@tatp.com; malioto@tatp.com; laurenrussell@tatp.com |
| **Cc:** | Tom.Carter@BakerBotts.com; erik.koons@bakerbotts.com; stuart.plunkett@bakerbotts.com; john.taladay@bakerbotts.com; kaylee.yang@bakerbotts.com; brian.jacobsmeyer@BakerBotts.com |
| **Subject:** | In re CRT, Case No. 3:07-cv-05944, MDL No. 1917 - 2018.10.15 Production of Documents |
| **Attachments:** | IRI-CRT007 .zip |

Counsel,
Irico hereby produces the attached documents, bates ranges IRI-CRT-00003490-3517.
These documents are responsive to Request No. 9 of DPPs First Set of Requests for Production, and Request No. 1 of IPPs Second Set of Interrogatories.

**Reilly Stoler**
Baker Botts L.L.P.
reilly.stoler@bakerbotts.com
T +1.415.291.6223
101 California Street , Suite 3600
San Francisco, CA 94111



**BAKER BOTTS**

**Confidentiality Notice:**

The information contained in this email and any attachments is intended only for the recipient[s] listed above and may be privileged and confidential. Any dissemination, copying, or use of or reliance upon such information by or to anyone other than the recipient[s] listed above is prohibited. If you have received this message in error, please notify the sender immediately at the email address above and destroy any and all copies of this message.

# EXHIBIT 34

# BAKER BOTTS LLP

| | | |
|---|---|---|
| 101 CALIFORNIA ST. | AUSTIN | LONDON |
| SUITE 3600 | BEIJING | MOSCOW |
| SAN FRANCISCO, CALIFORNIA | BRUSSELS | NEW YORK |
| 94111 | DALLAS | PALO ALTO |
| | DUBAI | RIYADH |
| TEL +1.415.291.6200 | HONG KONG | **SAN FRANCISCO** |
| FAX +1.415.291.6300 | HOUSTON | WASHINGTON |
| BakerBotts.com | | |

Stuart C. Plunkett
TEL: 415.291.6203
FAX: 415.291.6303
stuart.plunkett@bakerbotts.com

February 6, 2019

*Via E-Mail*

R. Alexander Saveri (E-mail: rick@saveri.com)
Geoffrey C. Rushing (E-mail: grushing@saveri.com)
Cadio Zirpoli (E-mail: cadio@saveri.com)
Matthew D. Heaphy (E-mail: mheaphy@saveri.com)
SAVERI & SAVERI, INC.
706 Sansome St # 200
San Francisco, CA 94111

Mario N. Alioto (malioto@tatp.com)
Lauren C. Capurro (laurenrussell@tatp.com)
Joseph M. Patane (jpatane@tatp.com)
Trump, Alioto, Trump & Prescott, LLP
2280 Union Street
San Francisco, CA 94123

Christopher Micheletti (cmicheletti@zelle.com)
44 Montgomery Street
Suite 3400
San Francisco CA 94104

Re:   In re: Cathode Ray Tube (CRT) Antitrust Litigation -
Master File No. 3:07-cv-05944-SC; MDL No. 1917

Counsel:

Irico Defendants are electronically producing documents Bates labeled IRI-CRT-00003646 through -4168, which can be downloaded at in the link included in the cover email. Passwords to access the download link and extract the files will be sent under separate cover. Irico Defendants designate this submission as "Confidential" pursuant to the Stipulated Protective Order.

This production contains all responsive materials found in the boxes of hard copy documents collected from China National Electronics Import & Export Caihong Co., as discussed on our January 23, 2019 meet and confer call.

Active 39542961.1

If you have any questions, please do not hesitate to contact me.

Sincerely,

Stuart C. Plunkett