Pages 1 - 34

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JON S. TIGAR, JUDGE

IN RE: CATHODE RAY TUBE (CRT) )
ANTITRUST LITIGATION            ) Master File No. 07-CV-5944-JST
_____) MDL No. 1917

San Francisco, California
Tuesday, April 9, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Indirect Purchaser Plaintiffs:
                        TRUMP ALIOTO TRUMP & PRESCOTT LLP
                        2280 Union Street
                        San Francisco, California 94123
        BY: **MARIO NUNZIO ALIOTO, ESQ.**
            **LAUREN CLARE CAPURRO, ESQ.**

                        LAW OFFICES OF FRANCIS O. SCARPULLA
                        456 Montgomery Street, 17th Floor
                        San Francisco, California 94104
        BY: **FRANCIS ONOFREI SCARPULLA, ESQ.**
            **PATRICK B. CLAYTON, ESQ.**

For Defendant Mitsubishi Electric Corporation:
                        JENNER & BLOCK LLP
                        353 North Clark Street
                        Chicago, Illinois 60654-3456
        BY: **MICHAEL T. BRODY, ESQ.**

For Philips Defendants:
                        BAKER BOTTS LLP
                        1299 Pennsylvania Ave., N.W.
                        Washington, DC 20004-2402
        BY: **ERIK T. KOONS, ESQ.**
            **JOHN M. TALADAY, ESQ.**

(Appearances continued on next page)

Reported By:   Katherine Powell Sullivan, CSR #5812, RMR, CRR
                 Official Reporter - U.S. District Court

**<u>APPEARANCES (CONTINUED):</u>**

For Objector/Class Member Eleanor Lewis:
                           COOPER & KIRKHAM, P.C.
                           357 Tehama Street, Second Floor
                           San Francisco, California 94103
                  **BY:  TRACY R. KIRKHAM, ESQ.**
                       **JOHN DMITRY BOGDANOV, ESQ.**

For the Gianasca Appellants:
                           BONSIGNORE TRIAL LAWYERS, PLLC
                           2513 Morocco Avenue
                           Las Vegas, Nevada 89031
                  **BY:  ROBERT J. BONSIGNORE, ESQ.**

For Objector Appellants:
                           LAW OFFICES OF THERESA D. MOORE
                           One Sansome Street, 35th Floor
                           San Francisco, California 94104
                  **BY:  THERESA D. MOORE, ESQ.**

(Additional appearances of counsel as reflected in the minutes under ECF Docket No. 5426.)

<u>**Tuesday - April 9, 2019**</u>                    <u>**10:06 a.m.**</u>

<u>**P R O C E E D I N G S**</u>

**---000---**

**THE CLERK:** Calling civil case 07-5944, MDL number 1917, In Re CRT Antitrust Litigation.

Your Honor, appearances will be recorded in the minutes.

**THE COURT:** Thank you.

Good morning.

(Counsel greet the Court.)

**THE COURT:** Let's see how much we can get done this morning. I thought I would make some preliminary comments about what I think the state of affairs is in this case, and then I'll find out who wants to speak to the Court.

It's 10:07. I intend to get off the bench by noon. So please bear in mind, if you're at the microphone you're using an extremely scarce resource and you're using other people's time.

I think my preliminary comments would be as follows:

First, I read the case management statement very carefully. If I don't bring something up this morning it's because our time is limited and I don't think discussion of that particular proposal is going to be productive.

For example, we're not going to have new hearings on the adequacy of the amount of the settlement, as the objector suggests. That's not going to happen in this case. It might

1    happen if someone files a motion and they persuade me, but it's

2    not going to happen because of anything I read in the case

3    management statement.  And I'm not going to be entertaining any

4    argument on that point today.

5        I don't intend to appoint new lead counsel or appoint new

6    class counsel.  So that goes to, among other things, the motion

7    for intervention that was filed.

8        I have made comments in writing, which I stand by, that I

9    have some concerns about the adequacy of class counsel, but

10   those concerns relate only to indirect purchaser plaintiffs in

11   the omitted repealer states.

12       I don't see, and there is not described in that motion for

13   intervention, anything that would form the basis of the

14   conclusion that there is any divergence of interest between

15   class counsel and the remainder of the IPP plaintiffs.

16       Since I perceive that the point of that motion is that the

17   lawyers who filed it want to take over the case, that motion is

18   unlikely to be granted as framed.

19       I do intend to appoint separate counsel for the omitted

20   repealer states, plaintiffs in those states.  Everyone seems to

21   agree that's a good thing to do.  Or at least they can tell

22   that I'm definitely going to do it and so they all agree.

23       No one has proposed any mechanism for identifying who

24   those lawyers will be or who the subclass representative will

25   be.  And I'm not going to do it *sua sponte* from the bench this

1    morning, so we need to make some progress on that.

2         Everybody wants to keep all the parts of the existing

3    settlement that are good for them.  So, for example, in the

4    case management statement the defendants say, You can do

5    whatever you want, but we don't want to pay any more money and

6    we don't want to give up any releases.  I express no opinion

7    about any of those things today.

8         As I'll say in a second, I think we need to get counsel

9    for the omitted repealer state plaintiffs; and we need to get

10   everybody to somebody like Judge Corley; and we need to set a

11   schedule in the case so that the case can finally move to

12   completion.  But before anything else can happen, really, I

13   have to get counsel for this subclass.

14        In short, most of the issues are not going to be

15   relitigated in this case.  That's not to the benefit of this

16   very old case.  It's not to the benefit of class members.  It's

17   really not to anyone's benefit.

18        So my goal is to identify the things that haven't been

19   done, that need to be done; to identify the things that really

20   do need to be done over, and do those things over; and then

21   proceed from there.

22        So let's talk, first -- well, I'll come back to the

23   appointment of a subclass and representative.

24        There's a request in the case management statement that I

25   appoint Magistrate Judge Jacqueline Corley as a special master.

1          The special master orders in this case are flawed.   They

2     were signed before I took this case over.   And I don't intend

3     to be appointing any more special masters.

4          And to the extent that I can avoid using the special

5     master orders in this case, I intend to do that too.

6          Among other things, everything that goes through a special

7     master in this case is subject to *de novo* review.   What an

8     anchor that's been in this case.

9          Fortunately, I don't need to appoint Magistrate Judge

10    Corley as a special master.   I can simply refer the matter to

11    her for settlement using a form order that we have in the

12    district.   And unless somebody objects this morning, and

13    assuming that she says she's willing to do it, I intend to sign

14    that order.

15         The parties described various paths forward for the case:

16    The omitted repealer plaintiffs can -- the defendants can give

17    up their releases; we can pay the plaintiffs from this pot of

18    money, et cetera.

19         As I said before, all these paths affect a subclass that I

20    think needs new counsel.   So I don't intend to express -- I

21    don't know I would ever express any opinion on those

22    possibilities because I'm not sure how it works for class

23    settlement.

24         I think you bring me a settlement.   I don't tell you

25    what's supposed to be in it.   You bring me one and then I

1    decide whether it passes muster or not.  But I don't actually

2    need to express a final opinion on that because those

3    plaintiffs don't have lawyers right now.  Or they do have

4    lawyers, but I intend to get them new lawyers.

5         So any discussion about which path forward makes sense I

6    think is premature.

7         We're going to be setting deadlines for class a

8    certification motion and trial.  And we're going to do it

9    today, so start thinking about that.

10        "Mitsubishi Electric and the IPPs intend to renew their

11   motion for preliminary approval of their settlement on a

12   schedule acceptable to the Court."  That's a sentence that

13   appears in the statement.  They should propose one.  That would

14   be great.

15        For the most part, the comments of objectors were not

16   helpful to the Court.  They did make one suggestion that I

17   thought might be useful.  They asked the Court to vacate the

18   October 26, 2010, stipulation and order wherein class counsel

19   dismissed and agreed not to allege claims on behalf of indirect

20   purchasers in omitted repealer states.  I want to know if

21   anyone objects to my doing that.

22        I intend to solicit briefing regarding the appropriate

23   percentage of any settlement that is finally reached, whether

24   it's the same as the one that was already reached or different,

25   to be awarded to class counsel as fees.  But I don't intend to

 1    solicit briefing regarding other aspects of the fee award as

 2    objectors suggest.

 3        FRS wants me to clarify something about the filing of late

 4    claims.  And if we have time, we can talk about that.  That

 5    strikes me as not an urgent issue because we have some other

 6    structural issues to deal with first.

 7        Are there any other issues that anybody wants to discuss

 8    today?  And at this point I'm just making a list of what we

 9    need to talk about as opposed to actually taking argument.

10        Yes.  Would you stand up, state your name, please.

11        MS. KIRKHAM:  Tracy Kirkham, representing class member

12    Eleanor Lewis.  I believe that -- I'll come forward.

13        Your Honor, the reason that the question of the release

14    going to --

15        THE COURT:  Just say the issue.  We're not going to

16    talk about the issue yet.  I'm going to find out what we need

17    to talk about so we can use our time.  What's the issue?

18        MS. KIRKHAM:  I believe that the nonrepealer states

19    need to be at the table with separate counsel.  And I believe

20    that the ruling of the Ninth Circuit supports that position.

21        THE COURT:  I agree with that.  That's the first thing

22    I said.

23        MS. KIRKHAM:  I thought you said just the omitted

24    repealer states.

25        THE COURT:  Oh, I see.  The nonrepealer states.

1      **MS. KIRKHAM:**  The reason that the nonrepealer states

2  weren't discussed by the merits panel, when it disapproved the

3  idea of releasing people's claims without compensation --

4      **THE COURT:**  Hold on.  Now I have the issue.  Would you

5  sit down, please.

6      **MS. KIRKHAM:**  All right.

7      **THE COURT:**  Other issues for discussion today?  Yes.

8      **MR. BONSIGNORE:**  Robert Bonsignore.  I represent

9  Gianasc, Massachusetts; Craig, New Hampshire; Ashkannejhad from

10  Missouri.

11      **THE COURT:**  This is the group described in the case

12  management -- excuse me, let's not talk at the same time -- as

13  the Gianasca appellants?

14      **MR. BONSIGNORE:**  Yes.

15      **THE COURT:**  Okay.

16      **MR. BONSIGNORE:**  One item that I would like to add to

17  the agenda, as you refine your thought process, is the

18  potential to litigate the allocation.

19      **THE COURT:**  What does that mean --

20      **MR. BONSIGNORE:**  That means --

21      **THE COURT:**  -- "to litigate the allocation"?  If

22  there's a settlement, then nothing is litigated.  It either

23  gets approved or it doesn't.  Tell me what that means.

24      **MR. BONSIGNORE:**  I'm not sure we'll get to a

25  settlement.  If we don't get to a settlement, then that's

1   something we can about within the schedule --

2         **THE COURT:**  Well, then we'll have a trial.  And that

3   will be super interesting, and I'll enjoy every moment of it.

4   And after there is a decision in the trial, then we'll figure

5   out allocation.

6         **MR. BONSIGNORE:**  Thank you.

7         **THE COURT:**  Okay.

8      Other issues for discussion this morning?

9      Okay.  Ms. Kirkham, you can have the microphone back if

10  you want it.

11        **MS. KIRKHAM:**  I was only going to say, Your Honor,

12  that the reason that the nonrepealer states were not before the

13  merits panel is that class counsel made a motion to dismiss

14  that appeal.  And the grounds upon which that motion was

15  granted was that our -- my class representative was from

16  California and did not have standing to object that these other

17  people were getting a raw deal.

18     The problem is that there was no one representing those

19  other people when the deal was negotiated.  It was negotiated

20  completely by repealer state class reps and their counsel.

21     So if in the view of the Ninth Circuit those people didn't

22  have standing to object that the deal was a raw deal, they

23  didn't have standing to create the raw deal in the first place.

24     So I believe that the -- sort of the feeling that these

25  individual groups need to be at the table with their own

1  counsel extends to that group of people because they are

2  likely, like the omitted repealer states, giving up claims

3  without any compensation, without having been represented at

4  the table when that deal was struck.

5        THE COURT:  Indirect purchasers in nonrepealer states

6  gave releases as part of the settlement?

7        MS. KIRKHAM:  Yes, that's the settlement class.  The

8  settlement class is a nationwide class, every state in the

9  Union.

10        THE COURT:  Would you be able to identify a case in

11  which a plaintiff in a nonrepealer state, who was an indirect

12  purchaser, was able to recover anything?

13        MS. KIRKHAM:  *DRAM*.  There's a case pending in New

14  Jersey right now, *In re Parking Heaters*, where their claims are

15  included in the settlement.

16        THE COURT:  Are there cases in which defendants -- I

17  mean people got money --

18        MS. KIRKHAM:  Yeah, this is cases where the defendants

19  settled those claims for money.

20        THE COURT:  Let's only talk one at a time.  I know I

21  am moving kind of quickly --

22        MS. KIRKHAM:  That's okay.

23        THE COURT:  -- but Ms. Sullivan has got a hard --

24        MS. KIRKHAM:  In the Northern District of California

25  it happened in the *DRAM* litigation, Judge Hamilton's case.

1          **THE COURT:**  These are cases in which as part of

2    settlement, a nonlitigated settlement, defendants voluntarily

3    provided compensation?

4          **MS. KIRKHAM:**  Yes.

5          **THE COURT:**  My question is whether you're aware of an

6    indirect purchaser plaintiff in a nonrepealer state ever

7    prevailing on a litigated claim.

8          **MS. KIRKHAM:**  No.  No.  In both -- all the cases I can

9    think of, the claims were settled.

10         **THE COURT:**  Well, it's not a frivolous point that

11   you're making.  It exists on the border of the thing about the

12   settlement I approved, that I dislike the most, and the part of

13   my approval order that actually has some merit.  And the things

14   are in conflict.

15       Those claims strike me as actually worthless.  And the

16   fact that someone -- but this gets back to what I said in my

17   November order.  But, on the other hand, people are giving

18   releases.

19         **MS. KIRKHAM:**  That's the point.  And the question

20   about how worthless they are, I believe that we didn't, in this

21   case -- how do I put this?

22       Special Master Quinn, I think, would be the first person

23   to tell you that he's not an antitrust expert.  And he was the

24   person who ended up having the decision about the value of

25   those claims.

1    I believe it's worth a second look by Your Honor, not

2  looking at whether Special Master Quinn did the right or wrong

3  thing, which is sort of where we were before, but truly taking

4  another look at this issue.

5    I truly don't believe the claims are worthless, and I've

6  made defendants pay for them in other cases.  So one would say

7  that I have some evidence that they're not worthless.

8    **THE COURT:**  Thanks.

9    Okay.  Let's talk about the appointment of a subclass

10  representative and counsel for the omitted repealer states

11  plaintiffs.

12    I didn't see in the case management statement a suggestion

13  with regard to a mechanism for identifying both counsel and a

14  subclass representative.  And so this morning my thought was to

15  see if anybody wanted to submit a brief on that topic, just how

16  the Court would go about doing that.

17    I did spend some time on Westlaw trying to find an order

18  from one of my learned colleagues, but I was not successful.

19    Would anyone like to volunteer to submit a brief on that

20  subject?  And I'll take more than one brief.

21    Mr. Bonsignore raised his hand up.

22    **MR. SCARPULLA:**  Good morning, Your Honor.  Francis

23  Scarpulla appearing on behalf of indirects.

24    We did not think it would be -- we thought it would be

25  presumptuous of us in the case management statement to tell you

1   who we thought should be appointed, and would respectfully

2   request that Your Honor permit us to file the necessary briefs

3   on that subject.

4          **THE COURT:**  And would the point of the brief be to

5   explain to me what I should do to find such a lawyer or to ask

6   that you be the lawyer?

7          **MR. SCARPULLA:**  To ask that whoever wants to be that

8   lawyer --

9          **THE COURT:**  Do you want to be the lawyer?

10         **MR. SCARPULLA:**  I do.

11         **THE COURT:**  Okay.

12      And, Mr. Bonsignore, I take it you want the same.

13         **MR. BONSIGNORE:**  Yes, Your Honor.

14         **THE COURT:**  I'm guessing that your goals are similar

15   to Mr. Scarpulla's.

16         **MR. BONSIGNORE:**  Yes, Your Honor.

17      If I may, from the beginning we've tried to do the best we

18   could for Massachusetts, New Hampshire, and Missouri.  I think

19   perhaps we can get together and try to submit something

20   jointly, if you would prefer that.

21         **THE COURT:**  Would counsel at the table come to the

22   microphone, please.  You also had your hand up.

23         **MS. MOORE:**  Good morning, Your Honor.  Theresa Moore

24   on behalf of objector appellants.

25      And, we have discussed this matter before.  We're all

1    familiar with the issues.  And we didn't think today would be

2    an appropriate place to give you a written motion.  We felt

3    perhaps you would have to deal with the conflict issue first.

4    But we're happy that you feel that these states need that, and

5    we would be willing to work together and present you with a

6    motion.

7          **THE COURT:**  Unless somebody says otherwise this

8    morning, my guess is I don't need to actually make a finding of

9    a conflict.

10         There seems to be an agreement among the parties that

11   there's an adequacy of counsel issue which is different but

12   also sufficient to require the appointment of separate counsel.

13   So for a variety of reasons, I don't feel the need to issue an

14   order saying that anybody had a conflict of interest.

15         **MS. MOORE:**  All right.  Your Honor, if the Court is

16   willing to do it orally today, I would be willing to do so.  I

17   have the experience and the background --

18         **THE COURT:**  Appoint a lawyer on an oral motion at a

19   microphone?  No, that's not going to happen.

20         **MS. MOORE:**  Okay.  So that's what I'm saying.  If you

21   don't want to do that, Your Honor, we will be happy to present

22   you with a motion.  And I think that we will be the three who

23   mostly want to seek this position because we're extremely

24   familiar with the issues --

25         **THE COURT:**  I see.

1        **MS. MOORE:**  -- and the clients.

2        **THE COURT:**  I should have seen that coming.

3    Does anybody else want to be heard?

4        **MR. ALIOTO:**  Yes, Your Honor.  Good morning.  Mario

5    Alioto on behalf of the indirect purchasers.

6        This is Your Honor's issue obviously, the appointment of

7    counsel, and we don't have a big interest one way or the other.

8    But in order to protect our interests and the class interests

9    we would like to at least reserve the right to file something

10   on this issue.

11       I'm not sure we are or we're not, but I would like to

12   reserve the right to say something about the appointment of

13   counsel and how many are appointed and what we think would be

14   efficient and so on and so forth.

15       **THE COURT:**  Do you want the right to contest whether

16   separate counsel needs to be appointed in the first instance?

17       **MR. ALIOTO:**  No, Your Honor.

18       **THE COURT:**  Okay.  Well, it sounds like we're sneaking

19   up on an approach that will solve this problem, and that is

20   that lawyers in the case will file a motion.

21       The parties having all agreed and the Court having

22   indicated that separate counsel for the subclass needed to be

23   appointed, and everybody agreeing on what the contours of the

24   subclass are, lawyers who are in the courtroom want to file a

25   motion to be those lawyers, and then we'll just set a briefing

 1   schedule.

 2        And then if you would like an opportunity to file an

 3   opposition or otherwise weigh in, or anybody in the room would,

 4   who has standing on that issue -- I'm not sure the lawyers on

 5   my left do -- but, anyway, they could do that.

 6             **MR. ALIOTO:**  Thank you, Your Honor.

 7             **THE COURT:**  Does someone want to propose a schedule?

 8   Could you get something on file by a week from Friday?

 9             **MR. BONSIGNORE:**  That's the schedule I was going to

10   suggest.

11             **THE COURT:**  Okay.  And then -- well, get to that in a

12   moment.

13        Ms. Kirkham.

14        **MS. KIRKHAM:**  I just wanted to ask a clarifying

15   question because we seem to have gone back to your soliciting

16   only a motion from the omitted repealer states.

17        Am I free to file a motion on behalf of the nationwide

18   class members who are neither repealer state members nor

19   omitted repealer state members?

20             **THE COURT:**  Yes.

21             **MS. KIRKHAM:**  Thank you.

22             **THE COURT:**  As I said, that group of persons exists at

23   the place of greatest tension between the part of my approval

24   order that talked about claims that have no merit and the, I

25   think, unarguable point that releases have value.

1          If releases didn't have value, the defendants would simply

2     give them up.  That's how we know they have value.

3          So I would welcome such a motion because I think it might

4     shed some light on what I do about that tension.

5          Yes, Mr. Bonsignore.

6          **MR. BONSIGNORE:**  Could you please include in your

7     order restrictions on the briefing so we don't worry about

8     putting in things that you don't care about and we'll know

9     precisely what you want?

10         **THE COURT:**  I don't know what I want.

11         **MR. BONSIGNORE:**  Okay.  Then we'll do what we think is

12    right.

13         **THE COURT:**  I would say that in this case there has

14    been on more than one occasion a lack of consideration for the

15    opportunity cost of time.  I don't know what more to say beyond

16    that.  I mean, people spend a lot of time addressing issues

17    that are irrelevant or talking about how wonderful they've been

18    in the case or making comments about things that simply are not

19    germane to whatever decision is in front of me, but that sort

20    of goes with the territory.  I don't know what I don't know.

21         **MR. BONSIGNORE:**  Thank you.

22         **THE COURT:**  I wish I could be more helpful.

23         We're going to hear that motion or motions, since there

24    may be more than one filed, on June 6th, at 2:00 p.m.

25         Ms. Kirkham, your motion will also need to set out the

1    need for appointment, make the case for a need for the

2    separation of that subclass and the appointment of separate

3    counsel.

4        The motion regarding the omitted repealer states does not

5    need to make that case because everybody agrees.

6        And with regard to the opposition and reply briefs, those

7    can just be set on a schedule dictated by our local rules.

8        Okay.  I would like to send this case to Judge Corley.  I

9    have not had a chance to talk to her about this.  I think

10   there's a pretty good chance she will want to do it.  And so

11   assuming that that's true, does anybody want to object to my

12   referring this case to Judge Corley for settlement?

13       Not hearing any objection, I will do that.

14       Would Mitsubishi Electric and the IPPs like to propose a

15   schedule for their settlement?

16       **MR. BRODY:**  Good morning, Your Honor.  Michael Brody

17   from Mitsubishi Electric.

18       Yes, Your Honor, we would like to file a motion for

19   preliminary approval.  I just briefly spoke with counsel.

20   Maybe file it in 30 or 60 days.

21       We would, however, like to hold -- assuming Your Honor

22   were to grant it, we would like to hold notice to see what

23   happens in the other settlement so we can piggyback on a single

24   set of notice if that's permissible.

25       **THE COURT:**  That makes sense.  That's what I expected.

```
 1         Given that, I think either of the timelines you proposed
 2    is fine.
 3              MR. ALIOTO:  We --
 4              MR. BRODY:  Go ahead.
 5              MR. ALIOTO:  Mario Alioto, Your Honor.
 6         We have a few other matters being briefed in this case,
 7    Your Honor.  As you know, it's ongoing as to other defendants.
 8    I like the 60-day timetable a little better, if that's okay
 9    with counsel.
10              MR. BRODY:  That's fine.  I'm sorry, Your Honor.  It's
11    fine with me, if I have a say.
12              THE COURT:  That's fine.  June 14th.
13              MR. ALIOTO:  Thank you.
14              MR. BRODY:  Thank you, Judge.
15              THE COURT:  The objectors suggested that I vacate the
16    October 26, 2010, stipulation and order regarding the dismissal
17    of claims on behalf of indirect purchasers.  Does anyone want
18    to be heard on that issue?
19         Mr. Alioto.
20              MR. ALIOTO:  Thank you, Your Honor.
21         The objectors contend that that stipulation was an
22    agreement or a -- prevented the filing of claims on behalf of
23    the claimants in any other states.  They have read that
24    stipulation that way, that it was a -- it's hard to paraphrase
25    their argument because it's just divorced from what was going
```

1    on.

2         That was a simple procedural stipulation to file some new

3    claims.  The stipulation did not bar the filing of any future

4    claims on behalf of claimants in any other states.  So to the

5    extent there's some -- there's some view that that was a bar,

6    it's just not the case.

7         So if Your Honor wants to make it clear on the record that

8    that stipulation did not bar the filing of claims, we're in

9    agreement with that.  We've said that all along.  That was not

10   the intent of the stipulation.

11        The plaintiffs have never interpreted it that way or

12   advocated it that way.  The defendants don't understand it that

13   way.  So I just want to make the record clear that the

14   stipulation was not intended to bar claims.

15        And to the extent Your Honor is now saying you want to

16   vacate it and you don't want any suggestion that it barred

17   claims, that's absolutely consistent with what the parties

18   believe.  So I guess that's a long way of saying we don't

19   oppose that, but I did want to make that clear.

20        The stipulation was important because it allowed claims to

21   be raised in the third amended complaint.  It was a streamlined

22   procedure to put new claims in subject to adding claims in the

23   future if they arose.  That's what that stipulation was

24   designed to do.

25        So we have no objection.  And I'll state it on the record

```
 1   that that did not bar claims.  We've never asserted that it
 2   did.  And to the extent Your Honor wants that concession or
 3   wants a statement to that effect, it's on the record now.
 4          THE COURT:  I raised the point because it was in the
 5   case management statement.
 6      I have no desire one way or another regarding what happens
 7   with this prior stipulation and order.  I didn't even read it
 8   yet.  I mean, I just brought it up on the screen so I could
 9   read it because I wasn't able to follow your comments.
10      Just so everyone understands, I'm not asking anybody to do
11   anything.
12          MR. ALIOTO:  Very good, Your Honor.
13          THE COURT:  I'm not negotiating a settlement from the
14   bench.
15          MR. ALIOTO:  Let me just put it this way.  That is a
16   nonissue as far as the plaintiffs and, I think, the defendants
17   are concerned.  And if it becomes an issue, we can brief it or
18   we can bring it up with Magistrate Corley.
19      But I don't know that the proper way to handle that would
20   be to vacate the stipulation and order.  It was an order that
21   allowed for the filing of claims in the third amended
22   complaint.  And I have a little reluctance about vacating it.
23   It suggests that there was something improper at the time or
24   that it wasn't -- shouldn't have been done.  That's not the
25   case at all.
```

1          **THE COURT:**  So I now have the stipulation and order on

2     my screen.

3          **MR. ALIOTO:**  Yes, sir.

4          **THE COURT:**  And, among other things, it dismisses or

5     it approves the dismissal of claims under Illinois and Maine

6     law.  Is that the point of this case management statement

7     request, is those claims, or is it something else?

8          **MR. ALIOTO:**  It's something else, as I understand what

9     the defendants are saying.

10         The defendants are saying that I entered into a

11    stipulation where I traded off the right to bring future claims

12    so that I could bring those additional claims in the third

13    amended complaint.

14         **THE COURT:**  I see.  So it's the portion of the order

15    that says "The only amendments allowed in the third

16    consolidated amended complaint shall be" --

17         **MR. ALIOTO:**  Yes, sir.

18         **THE COURT:**  -- and so forth?

19         **MR. ALIOTO:**  Yes, Your Honor.

20         **THE COURT:**  And so the argument is that was a bar on

21    your bringing these other claims that are by the plaintiffs in

22    the omitted repealer states.

23         **MR. ALIOTO:**  Yes.  And that was not the intent of the

24    stipulation.  As a matter of fact, after the stipulation we

25    moved to add other claims to a new complaint.  It was

1    completely inconsistent with the interpretation by the

2    objectors.  And, most tellingly, when we did that there was no

3    objection by the defendants.  They didn't say, well, wait a

4    minute, Mr. Alioto, you agreed not to bring any more claims.

5         It was clear that that was for the purposes just of that

6    third amended complaint.  We were trying to get the pleadings

7    in order by stipulation at the time, not waiving future claims

8    in the case that might or might not come up, Your Honor.

9              THE COURT:  Does anybody else want to be heard on this

10   issue?

11        Counsel here has been waiting patiently.  Go ahead.

12             MR. KOONS:  Erik Koons for the Philips defendants but

13   speaking for the defendants.

14        Just briefly, Your Honor, one clarification.  I think

15   Mr. Alioto misspoke and said that the defendants had taken

16   positions that he had been waiving claims.  I think he

17   misspoke.  That was the objectors.

18        But, more fundamentally, Your Honor, we would recommend

19   that to the extent that any party here or a group that wants to

20   be a party would like to vacate that order that they be

21   required to submit a brief on it such that we could consider it

22   and oppose it.

23             THE COURT:  So ordered.  Fine.

24        This is a case management conference.  So if everyone

25   says, "We agree that's a stipulation," I can issue an order.

1    Things that are not stipulated are not going to be the subject

2    of an order.   That sounds right.

3             **MR. KOONS:**   Thank you.

4             **THE COURT:**   Yes.

5             **MS. MOORE:**   Your Honor, Theresa Moore.   With regard to

6    the stipulation, it's something that occurred in 2010.   And,

7    basically, also in the stipulation they agreed not to add any

8    more states.   So it effectively destroyed the claims of nine

9    states because it's objector and appellants' view that counsel

10   still represented these putative class and the statute of

11   limitations was tolled.   But they are now arguing, the IPPs and

12   the defendants, that the statute of limitations has passed on

13   all those claims.

14            **THE COURT:**   They didn't say that in a motion.   They

15   said that back in that thing they filed in the fall to try to

16   get me to work on the case while it was still pending before

17   the Ninth Circuit.

18       It was a stray comment, and I took as much advantage of it

19   as I could to express my pique in the order that I issued in

20   November.   But I don't know that they've really taken that

21   position in any meaningful way.

22            **MS. MOORE:**   They've taken it on appeal.   They've

23   briefed it.   They've discussed it in negotiations.   They're

24   using that to their advantage, saying there's no value.

25       And it's objectors' opinion and view and argument in the

1  briefing that the statute of limitations was tolled.  And

2  they're arguing the opposite, essentially, against what amounts

3  to nine repealer states, which is almost one-third of the

4  repealer states.  They are saying they have no value.

5         **THE COURT:**  Stop moving your head so much when you

6  don't like what counsel is doing.  I'm trying to ignore it.

7  It's so distracting.

8         **MS. MOORE:**  Are you referring to me?

9         **THE COURT:**  I'm not.  I'm talking to a gentleman

10 behind you.

11        **MS. MOORE:**  Thank you.

12        **THE COURT:**  Go ahead.

13        **MS. MOORE:**  So it is an important issue, Your Honor.

14 And it's objector-appellants' view that essentially because of

15 this stipulation, IPPs are trying to say or they did, in fact,

16 we think, abandon nine states.

17    They were the putative class counsel.  They were the ones

18 who could only file motions on behalf of the class.  They were

19 the ones who were tasked with getting the plaintiffs, with

20 getting the complaint in order.  And in the stipulation they

21 agreed to not file on behalf of any more states.

22        **THE COURT:**  So, Ms. Moore, one of the reasons I took

23 the bench in the way I did and said all the things I said, and

24 said them in a slightly grumpy way, was that I thought -- I had

25 two concerns.  One is, we're never going to get through.  If I

let everyone talk about all the things in the case management

statement, we would never get to the things that I was hopeful

we would get to.  We've actually already done that, I think, so

that's good.

    The other concern I had was that the lawyers writ large

would use the comments in my November order and the uncertainty

around the settlement to try to reopen every aspect of the case

they could for their personal advantage.  And the reason I felt

that way is because the case management statement is pretty

good evidence that's happening.

    So I'm actually not grumpy about it.  I like the case.  I

mean, I wish I could figure how to finish it.  But I do have

this concern about, sort of, everybody trying to get into the

case to relitigate things that I don't really see as being

problematic.

    So with that background, my question for you is, what are

the other six states that you're talking about besides the

three omitted repealer states?  You said nine states.

    **MS. MOORE:**  There are nine states.  I have them listed

in my papers back at the desk, Your Honor.  And I understand

you're concerned.

    **THE COURT:**  Here's my question, because I don't

remember, is the issue -- forget what's the six states.  Let's

say there's six of them.  Was this issue already litigated at

the approval stage?

1    **MS. MOORE:**  It was never litigated.  It talked

2    about -- that was part of our main objection, Your Honor, is

3    that these -- there was no compensation and no consideration

4    for all of these omitted repealer states.  And it was part

5    because they intentionally did that in the stipulation to not

6    pursue these nine states.

7        I understand that you don't want anybody to relitigate

8    issues, and that's not the intent here to just do something.

9    It goes back to adequacy of counsel.

10       If, in fact, the Court were to find --

11           **THE COURT:**  You indicated you're one of the three

12   lawyers who wants to file a motion to represent the omitted

13   repealer states.

14           **MS. MOORE:**  Correct, Your Honor.

15           **THE COURT:**  So are you intending, in that motion, to

16   make the pitch that it's really nine states not three?

17           **MS. MOORE:**  Yes.

18           **THE COURT:**  Okay.  Then somebody will oppose you if

19   they don't agree with you.

20           **MS. MOORE:**  All right.

21           **THE COURT:**  And then I'll make a decision.

22           **MS. MOORE:**  Thank you, Your Honor.

23           **THE COURT:**  Yeah.

24       Mr. Bonsignore.

25           **MR. BONSIGNORE:**  Briefly.  The 2010 stipulation is,

from my perspective and some others, the largest impediment to getting this case resolved.  We're all trying to get on the same page and work through the problems and come up with a resolution.

The 2010 stipulation should be carefully looked at.  It was extensively briefed and it was also brought -- it's such a large issue, it was brought to the appeals court's attention. And that puts it in context.  In Massachusetts --

THE COURT:  If someone thinks there's a legal basis for my undoing that stipulation, which is a court order, they could file a motion and persuade me.  And if someone disagreed with that, they could file an opposition.  Right now I can't do anything about it.

MR. BONSIGNORE:  So briefing --

THE COURT:  I'm not telling you to do that.  I'm just saying some concerns have been expressed about the stipulation. People feel it's an impediment to achieving closure in the case.

I can't -- or even if I could I don't intend to -- make an order *sua sponte* from the bench undoing an order from the case. So if someone wants that, they should just file a motion.

MR. BONSIGNORE:  Fair enough.

THE COURT:  If someone thinks that that should happen sooner rather than later, they should propose right now what the deadline for filing that motion is, and then everyone can

1  set their expectations.

2      **MR. BONSIGNORE:**  Could we propose to get that motion

3  in within 21 days?  Or would you like it sooner?

4      **THE COURT:**  I have no particular desires.  Lots of

5  work here.  Twenty-one days sounds fine.

6      **MR. BONSIGNORE:**  Thank you.  I was concerned you were

7  going to make the order from the bench, and that's why I got up

8  and took your time.

9      **THE COURT:**  Everyone likes Fridays.  Let's make it

10  May 3rd.

11      **MR. BONSIGNORE:**  Thank you, Your Honor.

12      **THE COURT:**  Now, I'm relaxed about time.  We talked

13  about all the things I wanted to talk about, and it's only so

14  10:45.  What else can we do?

15      We have a tremendous percentage of the nation's antitrust

16  bar here.

17      (Laughter)

18      **THE COURT:**  There must be something you'd like to talk

19  about.  With a few exceptions, it actually looks like a Men's

20  Wearhouse commercial.

21      (Laughter)

22      **THE COURT:**  Anything else?  Really.

23      Okay.  Let me go through my notes before I let you go.

24      I am going to set a deadline for class certification and

25  trial.  I'm not going to do it from the bench right now because

1    I want you to look at your calendars and I want you to talk.

2          Here's what's going to happen:  You're going to submit a

3    joint proposal or competing proposals for those deadlines by

4    April 19th.  If you submit competing proposals, I'll try really

5    hard to just pick one of them in its entirety.  Baseball

6    arbitration style.

7          I will be looking for the proposal that gives you enough

8    time to do what you need to do with Judge Corley and not one

9    week more.  So be fair to yourselves but not unduly generous,

10   because you don't want me picking those deadlines.

11         I don't know what your calendars are.  I don't know what

12   your competing obligations are.  I don't know how far in

13   advance it takes to rent a war room in San Francisco for a

14   multi-week trial.  I just don't know all that stuff.  So you

15   pick the deadline that meets those metrics.  That would be

16   great.

17         And I think I said this before, but as the parties

18   undertake their negotiations, I think that's probably the best

19   place to address this question that Financial Recovery Services

20   is asking about late claims and all that.  I don't have any

21   opinion about that yet in the first instance.  I'll see how all

22   that plays out.

23         Okay.  Anything else?

24         **MR. ALIOTO:**  No, Your Honor.

25         **MR. BONSIGNORE:**  I just wanted to bring to the Court's

1    attention one more matter.  You've put us on multiple tracks,

2    and one of them is settlement.  And so in order to negotiate a

3    settlement, it's best to be in the most knowledgeable position

4    you can be.

5        We've asked class counsel to share the -- I have an

6    appearance in the case.  I've been in it from the beginning.

7    We've asked them to share certain information that was all

8    delineated probably in too much length in the suggestion I've

9    made, and he's refused until new counsel is appointed.  If

10   that's -- that will just slow things down by a couple -- by a

11   month, maybe, or a little bit more than a month.  I just want

12   to bring it to your attention.

13       I would prefer to have access to the information now.  I'm

14   sure that the other lawyers who are interested in being

15   appointed would also.  We'll be, no doubt, involved in the

16   settlement negotiations, so I don't think it's a negative.  But

17   it's not going to happen without a court order.  That's my

18   preference.  I'm happy to follow whatever you order.

19       Thank you.

20           THE COURT:  You're referring to Mr. Alioto?

21       MR. BONSIGNORE:  Yes.

22           THE COURT:  You asked him for some things, and he

23   didn't give it to you?

24       MR. BONSIGNORE:  Yes.

25           THE COURT:  Okay.  You have to file a motion because

```
 1   he still doesn't agree.  I can just tell by looking at him he
 2   doesn't agree.
 3        (Laughter)
 4        THE COURT:  You have to file a motion.  I don't know
 5   what to tell you.
 6        MR. BONSIGNORE:  Okay.
 7        THE COURT:  Thank you.
 8        MR. KOONS:  Your Honor, one clarification.
 9        THE COURT:  You only have an hour and 11 minutes.  Go
10   ahead.
11        (Laughter)
12        MR. KOONS:  I'll soak it all up.  You mentioned the
13   schedule related to the trial, Your Honor, and also class
14   certification.
15        Are we right to understand that the trial that we are
16   scoping out for scheduling purposes would relate to just the
17   three states and/or the six or the nine states rather than the
18   whole -- you know, all the different states that are part of
19   the class?
20        THE COURT:  No.  The whole case is going to go to
21   trial.
22        MR. KOONS:  Okay.
23        THE COURT:  I have not issued an order undoing a
24   settlement.  But people are talking about taking money from
25   that settlement and using it to pay other people.  And as far
```

1    as I'm concerned right now, you have an open antitrust case.

2    And I could be persuaded otherwise.  You could file briefs that

3    say, "Look, there's really nothing about what the Ninth Circuit

4    did or anything you said that unsettles these prior claims."

5         But let me put it this way:  I approved a settlement that

6    went up to the Ninth Circuit.  The Ninth Circuit raised some

7    questions about the settlement.  And I shared at least some of

8    their concerns.  And they sent the settlement back to me to fix

9    it.  So I think if they thought that that settlement was

10   complete in all respects, they would not have done that.

11        So since there is at least a question about whether that

12   settlement is complete in all respects, we need a trial date.

13             **MR. KOONS:**  Understood.  Thank you.

14             **THE COURT:**  Thank you.  The court is in recess.

15        (At 10:51 a.m. the proceedings were adjourned.)

16                         -   -   -   -

17                    CERTIFICATE OF REPORTER

18        I certify that the foregoing is a correct transcript

19   from the record of proceedings in the above-entitled matter.

20   DATE:    Thursday, April 11, 2019

21

22

23                   _Katherine Sullivan_

24        _____

25        Katherine Powell Sullivan, CSR #5812, RMR, CRR
                      U.S. Court Reporter