Tracy R. Kirkham (69912)
John D. Bogdanov (215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA 94103
Telephone: (415) 788-3030
Facsimile: (415) 882-7040
Email: trk@coopkirk.com
       jdb@coopkirk.com

*Counsel for Class Representative Steven Ganz and Class Member Eleanor Lewis*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 3:07-cv-5944-JST <br><br> MDL No. 1917 |
| This Document Relates to: <br><br> All Indirect Purchaser Actions | **NOTICE OF MOTION AND MOTION OF COOPER & KIRKHAM, P.C., FOR APPOINTMENT AS LEAD COUNSEL FOR INDIRECT-PURCHASER PLAINTIFFS WITH CLAIMS IN NON-REPEALER STATES** <br><br> Hearing Date: June 6, 2019 <br> Time: 2:00 p.m. <br> Judge: Honorable Jon S. Tigar <br> Courtroom: 9, 19th Floor |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................................2

I.  INTRODUCTION ...........................................................................................................2

II. THE EQUITABLE CLAIMS OF THE NON-REPEALER STATE CLASS MEMBERS ARE LEGALLY VIABLE AND DESERVE SEPARATE REPRESENTATION, ESPECIALLY AT THE UPCOMING SETTLEMENT NEGOTIATIONS ...................................................................................................4

III. COOPER & KIRKHAM HAS TAKEN THE LEAD IN ADVOCATING FOR THE INTERESTS OF NON-REPEALER STATE CLASS MEMBERS AND SHOULD BE APPPOINTED LEAD COUNSEL .................................................................................10

IV. COOPER & KIRKHAM IS QUALIFIED TO SERVE AS LEAD COUNSEL REPRESENTING NON-REPEALER STATE PLAINTIFFS ........................................12

    A. Cooper & Kirkham Has Taken the Lead in the Identification and Investigation of Potential Claims for the Indirect-Purchaser Non-Repealer State Plaintiffs. ....................................................................12

    B. Cooper & Kirkham Has Substantial Experience in Complex Litigation and Will Efficiently Prosecute This Matter ................................................12

    C. Cooper & Kirkham is Knowledgeable Concerning the Applicable Law ...........................................................................................13

    D. Cooper & Kirkham Has the Resources Necessary to Prosecute this Litigation .........................................................................14

V.  CONCLUSION..............................................................................................................14

ii

MOTION OF COOPER & KIRKHAM, P.C., FOR APPOINTMENT AS LEAD COUNSEL FOR INDIRECT-PURCHASER PLAINTIFFS WITH CLAIMS IN NON-REPEALER STATES
Case No. 3:07-cv-5944, MDL No. 1917

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Brown v. Swann*,
    35 U.S. [10 Pet.] 497 (1836) ...................................................................................................5

*California v. American Stores Co.*,
    595 U.S. 271 (1990) ...................................................................................................4, 5, 6, 8

*California v. ARC America Corp.*,
    490 U.S. 93 (1979) ....................................................................................................................9

*Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*,
    754 F.2d 404 (1st Cir. 1985) ...................................................................................................5

*Illinois Brick v. Illinois*,
    431 U.S. 720 (1977) ........................................................................................................ passim

*In re "Agent Orange" Prod. Liability Litig.*,
    818 F.2d 179 (2d Cir. 1987) ...................................................................................................3

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    Master File No. M-02-1486-PJH (MDL No. 1486),
    2013 U.S. Dist. LEXIS 188116 (N.D. Cal. Jan. 8, 2013) ...................................................13

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    11 MDL No. 2262, 2014 U.S. Dist. LEXIS 153634 (S.D.N.Y. Oct. 14, 2014) .................12

*Kansas v. Nebraska*,
    135 S. Ct. 1042 (2015) .............................................................................................................6

*Local No. 93, Int'l Assoc. of Firefighters v. City of Cleveland*,
    478 U.S. 501 (1986) .................................................................................................................3

*Midwest Paper Prods. Co. v. Cont'l Group*,
    596 F.2d 573 (3d Cir. 1979) ...................................................................................................8

*Oregon v. AU Optronics Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.)*,
    MDL No. 1827, No. C 10-4346 SI,
    2011 U.S. Dist. LEXIS 76562, (N.D. Cal. July 11, 2011) .................................................6, 7

*Pac. R.R. v. Ketchum*,
    101 U.S. 289 (1879) .................................................................................................................3

*Porter v. Warner Holding Co.*,
    328 U.S. 395 (1946) ...................................................................................................4, 5, 6, 8

*Sansom Comm. by Cook v. Lynn*,
    735 F.2d 1535 (3d Cir. 1984) .................................................................................................3

*Sullivan v. DB Investment, Inc.*,
    613 F.3d 134 (3d Cir. 2010),
    reh'g en banc granted and vacated by
    *Sullivan v. DB Investments, Inc.*, 619 F.3d 287 (3d Cir. 2010) .........................................3

iii

MOTION OF COOPER & KIRKHAM, P.C., FOR APPOINTMENT AS LEAD COUNSEL FOR INDIRECT-
PURCHASER PLAINTIFFS WITH CLAIMS IN NON-REPEALER STATES
Case No. 3:07-cv-5944, MDL No. 1917

*Sullivan v. DB Investment, Inc.*,
    667 F.3d 273 (3d Cir. 2011) (*en banc*),
    *cert. denied, sub nom., Murray v. Sullivan,* 566 U.S. 923 (2012) .................................3, 8

*United States v. Keyspan Corp.*,
    763 F. Supp. 2d 633 (S.D.N.Y. 2011)..............................................................................6, 7

**STATUTES**

15 U.S.C. § 16................................................................................................................2, 5, 8

**RULES**

Fed. R. Civ. P. 11.....................................................................................................................2

Fed. R. Civ. P. 23(g) ..........................................................................................................1, 12

Fed. R. Civ. P. 23(g)(1)(A) .....................................................................................................12

Fed. R. Civ. P. 23(g)(1)(B) .....................................................................................................12

iv

MOTION OF COOPER & KIRKHAM, P.C., FOR APPOINTMENT AS LEAD COUNSEL FOR INDIRECT-PURCHASER PLAINTIFFS WITH CLAIMS IN NON-REPEALER STATES
Case No. 3:07-cv-5944, MDL No. 1917

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on June 6, 2019, at 2:00 p.m., or as soon thereafter as the matter can be heard before the Honorable Jon S. Tigar, United States District Court for the Northern District of California, located at 455 Golden Gate Avenue, San Francisco, California, 94102, Cooper & Kirkham, P.C., counsel for Class Representative Steven Ganz and Class Member Eleanor Lewis, will, and hereby does, move the Court pursuant to Rule 23(g) of the Federal Rules of Civil Procedure and L.R. 7-2 for an order appointing it as Lead Counsel for Indirect-Purchaser Plaintiffs and putative class members who purchased CRT Products in Non-Repealer States.

This motion is based on this Notice, the accompanying Declaration of Tracy R. Kirkham in Support, the accompanying Memorandum of Points and Authorities, any arguments and evidence that may be presented at any hearing before the Court on this motion, all transcripts of prior proceedings before this Court and on all other pleadings and papers on file in this action.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

1

MOTION OF COOPER & KIRKHAM, P.C., FOR APPOINTMENT AS LEAD COUNSEL FOR INDIRECT-PURCHASER PLAINTIFFS WITH CLAIMS IN NON-REPEALER STATES
Case No. 3:07-cv-5944, MDL No. 1917

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

The purchasers of CRT products in the "Non-Repealer" States deserve vigorous representation and a place at the table for the up-coming settlement conferences before Magistrate Judge Corley.[1]  They are entitled to representation because claims for equitable relief were filed on their behalf in the original complaints and in each successive consolidated complaint.  It is for this reason that they could be included in the Nationwide Settlement Class releases offered in the prior settlements.  Non-Repealer State purchasers are entitled to representation because they were injured by the defendants' alleged illegal inflation of the prices of CRT products throughout the United States.  The dichotomy between "Repealer" and "Non-Repealer" States is not a demographic that affects how goods and services flow through interstate commerce.  Finally, and most importantly, they are entitled to representation because the defendants are demanding that they surrender their claims as part of a global settlement of the litigation.

The Non-Repealer State putative class members do not have to earn separate and adequate representation by making a threshold demonstration that their claims have sufficient merit to survive a motion to dismiss.  Rather, their right to press for settlement consideration in exchange for their releases arises from the same constitutional threshold that enabled Class Counsel to offer up their releases in the prior global settlements -- their claims fall within the general scope of the case made out herein by the pleadings.  As such, Non-Repealer State claims need only satisfy the standard for viability set out in Rule 11, Federal Rules of Civil Procedure.  Rule 11 provides that a claim is viable if it has a basis in fact, and is "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Beyond that threshold standard, a district court should not prejudge the settlement value of a claim.

---

[1] Although it is a shifting landscape, the states of Alabama, Alaska, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Indiana, Kentucky, Louisiana, Maryland, New Jersey, Ohio, Oklahoma, Pennsylvania, Texas, Virginia, Washington, and Wyoming are generally considered to be "Non-Repealer" States whose courts follow *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977).

The Third Circuit recognized this in its *en banc* decision in *Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 317 (3d Cir. 2011), *cert. denied, sub nom, Murray v. Sullivan,* 566 U.S. 923 (2012) ("*Sullivan*") when it vacated a Panel decision that had reversed district court approval of a settlement because it had included compensation for class members in Non-Repealer States.  The Panel had held that these claims could not be settled because *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), had conclusively eliminated any claims for damages, and De Beers' having already amended its marketing practices prevented any award of equitable relief.  *Sullivan v. DB Investments, Inc*., 613 F.3d 134 (3d Cir. 2010), *reh'g en banc granted and vacated by Sullivan v. DB Investments, Inc*., 619 F.3d 287 (3d Cir. 2010).  *See also*, discussion of Panel Opinion in *Sullivan*, *supra*, 667 F.3d at 293-295.

In addition to clarifying the panel's mistaken views on the reach of *Illinois Brick,* the *en banc* majority held that there is no test of merit that a claim needs to satisfy in order to be settled.  *Id.* at 310-13 and 317.  Stated simply, the best metric of the value of a claim is the consideration a defendant will give for its release.  It does not matter that in another context, the claim might not produce the relief afforded by a settlement agreement since "[a]s the Supreme Court has recognized, a district court may 'provide broader relief in an action that is resolved before trial than the court could have awarded after a trial.'"  *In re "Agent Orange" Prod. Liability Litig.,* 818 F.2d 179, 185 (2d Cir. 1987) (quoting *Local No. 93, Int'l Assoc. of Firefighters v. City of Cleveland,* 478 U.S. 501, 525, 106 S. Ct. 3063, 92 L. Ed. 2d 405 (1986)) (alterations omitted).

Indeed, this Court's observations about the claims released in the prior settlement agreements by class members in the Omitted Repealer States apply with equal force to class members in Non-Repealer States: "The fact that the claims were required to be released meant that they had value."  ECF No. 5362 at 1.  This Court further noted that during Lead Counsel's oral argument before the Ninth Circuit, he "suggested that they needed to include a release of some class members' claims to get compensation for other class members," and that Lead Counsel never explained how "negotiating a release of those class members' claims can be squared with the duty of zealous advocacy to all members of the class."  *Id.* at 2.

Putative class members in the Non-Repealer States clearly did not have a zealous advocate at the settlement table the last time around. That situation needs to be remedied now. Cooper & Kirkham, P.C. ("C&K") is uniquely qualified to be that advocate, and should be appointed Lead Counsel for the Non-Repealer State putative class members.

## II. THE EQUITABLE CLAIMS OF THE NON-REPEALER STATE CLASS MEMBERS ARE LEGALLY VIABLE AND DESERVE SEPARATE REPRESENTATION, ESPECIALLY AT THE UPCOMING SETTLEMENT NEGOTIATIONS

The law is well settled that all federal courts are empowered with the discretion to do equity by employing the full scope of traditional common law injunctive remedies, including disgorgement and restitution, unless Congress specifically limits that power by statute. *Porter v. Warner Holding Co.*, 328 U.S. 395 (U.S. 1946) ("*Porter*"). Accordingly, Non-Repealer State class members have the right to advocate for these remedies unless this Court rules that it lacks the power even to consider whether disgorgement or restitution of illegally obtained funds is an appropriate equitable response in the event plaintiffs prevail at trial. The United States Supreme Court's decision in *Porter* provides the seminal guidance for such a determination, and, along with *California v. American Stores Co.*, 595 U.S. 271 (U.S. 1990) ("*American Stores*"), compels the conclusion that disgorgement and restitution do indeed fall within the scope of this Court's power in private actions to address violations of the antitrust laws.

*Porter* concerned an action brought by the Administrator of the Office of Price Administration to enjoin a landlord, who allegedly violated a World War II federal rent control law, from charging future rents in excess of the permitted maximum. *Id.* at 396. The statute under which the action was initiated provided that "the Administrator . . . may make application . . . for an order enjoining such acts or practices [in violation of the Emergency Price Control Act of 1942]." *Id* at 397. In addition to an injunction prohibiting future illegal rent charges, the Administrator sought an order requiring the defendant to disgorge the illegal rents it had already collected.

The Supreme Court agreed that a disgorgement order was within the scope of the District Courts' equitable powers, despite the fact that the remedy was not explicitly called out in the Price

4

MOTION OF COOPER & KIRKHAM, P.C., FOR APPOINTMENT AS LEAD COUNSEL FOR INDIRECT-PURCHASER PLAINTIFFS WITH CLAIMS IN NON-REPEALER STATES
Case No. 3:07-cv-5944, MDL No. 1917

Control Act. *Id.* at 387-98. The Court held that "[u]nless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of [equitable] jurisdiction." *Id.* at 398. Further, the *Porter* Court reaffirmed that it takes an unambiguous statement of congressional intent to limit a federal court's general equitable powers: "*Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.* 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.' *Brown v. Swann*, 10 Pet. 497, 503." *Id.* at 399 (emphasis added).

*Porter* is not an antitrust case. However, its rules of common law equity and statutory construction unquestionable apply to Section 16 of the Clayton Act (as well as to all other federal statutes). Indeed, the Supreme Court relied on *Porter* and its progeny forty-four years later when confronted in *American Stores*, *supra,* 595 U.S. 271, with the question of whether the remedy of divestiture for an anticompetitive merger was available to private parties under the general language of Section 16. In holding that a federal court sitting in equity could order divestiture, the Supreme Court found that "§16 '*states no restrictions or exceptions to the forms of injunctive relief a private plaintiff may seek*, or that a court may order . . . . Rather, the statutory language indicates that Congress' intention that traditional principles of equity govern the grant of injunctive relief.' [*Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*,] 754 F.2d [404] at 416." *American Stores*, 595 U.S. at 281 (emphasis added). Further, the Supreme Court found that "a fair reading of the entire legislative history supports the conclusion that §16 means exactly what it says when it endorses the 'conditions and principles' governing injunctive relief in courts of equity: that the provision should be construed generously and flexibly pursuant to principles of equity." *Id*. at 295.

Section 16 of the Clayton Act provides for the award of general injunctive relief directed to preventing future anticompetitive harm. The remedies of disgorgement and restitution plainly act as a deterrent against future illegal conduct. This is known intuitively by every parent who has ever confiscated a piece of shoplifted candy from their child's hot little hand and insisted that it be returned to the owner of the corner store from whence it came. Not surprisingly, the United States

MOTION OF COOPER & KIRKHAM, P.C., FOR APPOINTMENT AS LEAD COUNSEL FOR INDIRECT-PURCHASER PLAINTIFFS WITH CLAIMS IN NON-REPEALER STATES
Case No. 3:07-cv-5944, MDL No. 1917

Supreme Court has also affirmed this basic truth. Confronted in *Porter, supra*, 328 U.S. at 400, with the argument that restitution and disgorgement are punitive rather than deterrent remedies, the Court held that providing for these remedies "may be considered as an order appropriate and necessary to enforce compliance," stating the obvious that "[f]uture compliance may be more definitely assured if one is compelled to restore one's illegal gains." More recently, the Supreme Court reaffirmed this view in *Kansas v. Nebraska*, 135 S. Ct. 1042, 1058 (2015) ("disgorgement will serve to stabilize a compact by conveying an effective message to the breaching party that it must work hard to meet its future obligations").

This case law is more than sufficient authority to establish that the Non-Repealer State class members' claims for monetary equitable relief are warranted by existing law, even if they are considered to be novel or grounded in an extension of existing law. Thus, they are legally viable, and hence, valuable.

At the April 9, 2019 hearing, this Court asked a question that the undersigned construed as essentially inquiring whether disgorgement or restitution has ever been afforded to a private antitrust indirect purchaser plaintiff outside of the context of a settlement. That has not yet happened, and considering how rarely private antitrust cases are tried to verdict, it may be a very long time before it does happen. However, that does not mean that there is no authority for recognizing the viability of such claims in a contested setting. Judge Susan Illston of this District ruled on a contested motion, that disgorgement and restitution are equitable remedies available to an indirect purchaser in a private antitrust action. *Oregon v. AU Optronics Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.),* MDL No. 1827, No. C 10-4346 SI, 2011 U.S. Dist. LEXIS 76562 (N.D. Cal. July 11, 2011) ("*TFT-LCD*"). Although Judge Illston was affirming equitable claims brought under the Oregon Antitrust Act, her decision was grounded first on a "determin[ation] that federal courts retain the power to order disgorgement under the Sherman Act," and then extended to the Oregon Antitrust Statue's similarly expansive grant of authority. *Id.* at *61. Earlier in 2011, the District Court for the Southern District of New York in *United States v. Keyspan Corp.*, 763 F. Supp. 2d 633, 639 (S.D.N.Y. 2011), relying on *Porter* and its progeny to interpret the scope of its

equitable powers to "prevent and restrain" violations of the antitrust laws, did order disgorgement as a remedy in an government enforcement action.

Special Master Quinn's treatment of these authorities in his recommendation to approve the release of the Non-Repealer State class members' claims was superficial and grounded on a distinction that is both factually and legally erroneous. He simply ignored the *Porter* test, and distinguished and dismissed *TFT-LCD* and *Keyspan* on the grounds that they were government enforcement efforts. In other words, he found that releasing those claims was of no consequence because the remedies of disgorgement and restitution are not available in private actions. However, while *Keyspan* was an enforcement action, *TFT-LCD* was not. The State of Oregon was not exercising its police powers, but was in federal court as a private plaintiff.[2] Therefore, if something beyond *Porter* and *American Stores* is needed, the *TFT-LCD* decision is authority for the availability of the remedies in private actions.

The Special Master was also incorrect as a matter of law in viewing the availability of equitable monetary relief under Section 16 as turning on the particularity of the plaintiff. The *Porter* rule is that a federal court has the ability to order a traditional equitable remedy in any and all cases unless Congress explicitly takes that ability away. Whether a court actually orders disgorgement or restitution may be informed by the identity of the plaintiff, just as any determination to employ an equitable remedy is informed by a myriad of considerations, some of which, like unclean hands or waiver, are particular to the plaintiff. However, that is a merits decision separate from the question of whether the Non-Repealer State class members have pled a viable right to *ask* this Court for disgorgement or restitution.

Further as to Oregon being somehow distinguishable even as a private party, the Clayton Act applies the same standards to state governments seeking damages or equitable relief for their own injuries that is applicable to all other private litigants. Therefore, when the State of California

---

[2] As the *TFT-LCD* Court noted, ""[t]he State of Oregon ("Oregon") filed this antitrust action in 2010, seeking to recover for damages . . . . Oregon brought suit on behalf of itself, 'its agencies, political subdivisions, and local governments, and all natural persons residing in Oregon who were indirect purchasers of . . . products containing LCD panels . . . .' See Complaint, ¶1." *TFT-LCD (Flat Panel) Antitrust Litig.*, *supra*, 2011 U.S. Dist. LEXIS 76562 at *52.

sought divestiture in *American Stores* pursuant to Section 16, it was treated like any private citizen. Indeed, the central question in *American Stores* was the split in the circuits as to whether divestiture was an available remedy in a private action. Accordingly, the Special Master's reasoning for dismissing the *Keyspan* and *TFT-LCD* decisions as support for the Non-Repealer State claims here was facially flawed. The Supreme Court has found that Section 16 "states no restrictions or exceptions to the forms of injunctive relief *a private plaintiff* may seek or that a court may order." *American Stores, supra*, 495 U.S. at 281, emphasis added.

Finally, there is the argument that monetary equitable relief for people in Non-Repealer States is an "end-run" around *Illinois Brick*. However, the case management considerations of *Illinois Brick* are not relevant to the question of whether Congress has removed equitable monetary relief from the traditional scope of a federal court's powers in antitrust cases. The answer to that question is narrowly defined in *Porter* and *American Stores* as a search for an unambiguous statement of Congressional legislative intent, and, as the *American Stores* Court recognized, some thirteen years after *Illinois Brick*, such a statement as to Section 16 is demonstrably absent.

*Illinois Brick* is neither a Congressional legislative act, nor a case construing legislative intent. It is a case in which the Supreme Court essentially exercised its procedural rulemaking authority, and held that evidence of antitrust injury would no longer be admissible in federal courts if it consisted of proof that a price fixed product was resold to the plaintiff by a third party. *See*, analysis of *Illinois Brick* by the Third Circuit, sitting *en banc*, in *Sullivan v. DB Investments, Inc.*, *supra*, 667 F.3d at 313-14. Because proof of pass-on overcharges is not required to prevail on an equitable claim, *Illinois Brick* does not impair the ability of indirect purchasers to sue for injunctive relief under §16. This question has been settled since 1979, when the Third Circuit decided *Midwest Paper Prods. Co. v. Cont'l Group*, 596 F.2d 573, 591, 594 (3d Cir. 1979), shortly after the *Illinois Brick* decision came down. The issue has never gone to the Supreme Court because no other circuit court has ever disagreed. Thus, *Illinois Brick* has absolutely no relevance to the analysis of whether the Non-Repealer State class members have made a viable claim for injunctive relief and may therefore ask for disgorgement and restitution.

Assuming this case ever reaches the posture where this Court is actually deciding whether or not to award a monetary equitable remedy, and assuming that *Illinois Brick* is still with us when that happens, defendants will undoubtedly raise the "end run" argument. All that needs to be said now is that this argument assumes that *Illinois Brick*, a case grounded in trial management concerns, should be construed as an articulation of a broad public policy that money should never be paid to indirect purchasers. In reality, *Illinois Brick* contains no such overt prohibition. Nor does it articulate a public policy of protecting antitrust violators from duplicative recovery by eliminating any claim that could lead to a monetary payment for indirect purchasers. In fact, only two years after deciding *Illinois Brick*, the Supreme Court dismissed duplicative recovery fears and allowed the biggest *Illinois Brick* end-run possible when it ruled that the states were free to make their own rules about the admissibility of pass-on evidence in *California v. ARC America Corp.,* 490 U.S. 93 (1979). More than half the country has now run that play, which coupled with the Class Action Fairness Act, has made federal court adjudication of pass-on damage claims by indirect purchasers ubiquitous.

The United States Supreme Court now has before it an *Amici* brief authored by the Attorneys General of Texas (a Non-Repealer State) and Iowa (a Repealer State) and filed by an additional twenty-nine states, asking the Court to use the opportunity presented by *Apple, Inc. v. Pepper*, No. 17-204, to overturn *Illinois Brick*.[3] As the *Amici* brief points out, the *Illinois Brick* prohibition on pass-on damage evidence has not proved necessary, useful, practical, nor particularly in keeping with antitrust policy. There is at least the possibility that the Supreme Court will overturn *Illinois Brick* before this litigation is resolved, and depending upon how the ruling would be applied to pending actions, the Non-Repealer State class members may well possess federal damage claims which would very likely be found to be included within the scope of the existing pleadings, or at a minimum, relate back to the pleaded claims. Even this possibility,

---

[3] For the Court's convenience, a copy of the *Amici* brief is attached as Exhibit 3 to the "Declaration of Tracy R. Kirkham in Support of Plaintiffs' Motion Re: Appointment as Lead Counsel for Indirect Purchaser Plaintiffs in Non-Repealer States ("Kirkham Declaration") filed concurrently with this motion.

however remote, may have settlement value.

On March 8, 2016, the Attorneys General for the States of Alabama, Arkansas, Colorado, Connecticut, Delaware, Georgia, Kentucky, Louisiana, Maryland, Ohio, Oklahoma, Pennsylvania, and Virginia filed a joint Statement of Interest in connection with the CAFA Notice of the prior settlement, opposing the release of their states' residents' claims for no consideration.  ECF No. 4462.  On the same day, Attorneys General for Massachusetts and Missouri filed a similar Statement of Interest that also questioned the propriety of releasing the nationwide Settlement Class' claims.  ECF No. 4463.  It is apparent that the claims of these class members cannot simply be "thrown in" to a global settlement in order to facilitate other class members receiving payment for their claims.  Accordingly, for all of the above-stated reasons, the claims of the Non-Repealer State class members deserve separate representation, especially in connection with the upcoming settlement negotiations.

### III. COOPER & KIRKHAM HAS TAKEN THE LEAD IN ADVOCATING FOR THE INTERESTS OF NON-REPEALER STATE CLASS MEMBERS AND SHOULD BE APPPOINTED LEAD COUNSEL

C&K has participated in this litigation virtually from its inception and is counsel of record on the operative consolidated complaint.  In 2013, C&K's initial client, Steven Ganz, was designated a representative of the statewide California Damage Class certified for litigation purposes.[4]  *See* ECF Nos. 1742 at 48; 1950.  Subsequently, Mr. Ganz, along with all of the other representatives of the litigation damages classes, was designated a representative for the nationwide Settlement Class, including the Non-Repealer State class members.  ECF No. 3906 at ¶6.  C&K was deeply involved in discovery and trial preparation, and has the sixth (6th) largest lodestar of the forty-nine (49) firms who submitted time for compensation to the Special Master.  ECF No. 4073 and Kirkham Declaration at ¶ 2.  In 2019, C&K entered an appearance for class member Eleanor Lewis, a resident of Ohio, who purchased CRT Products in Ohio during the period covered by the complaints.  ECF No. 5397.  Steven Ganz has consented to C&K's

---

[4] C&K is not counsel of record for Mr. Ganz in the later-filed *Mitsubishi* action (*Luscher v. Mitsubishi Electric Corporation,* Case No. 3:17-cv-04067, (see ECF No. 1, ¶ 245).  There, Mr. Ganz is represented by Gross Belsky Alonso LLP.  Kirkham Declaration at ¶ 3.

1   representation of Ms. Lewis, as well as to the making of this application to be appointed Lead
2   Counsel for the Non-Repealer State class members.  See, Kirkham Declaration at ¶ 3.

3        This is the third time that the question of C&K's becoming Co-Lead Counsel in this matter
4   has been before the Court.  The first time was in December 2014, when the Honorable Vaughn
5   Walker, acting as a Special Master, filed a recommendation that Josef Cooper be appointed Co-
6   Lead Counsel for settlement purposes.  ECF No. 3200 at 6.  That recommendation remained
7   pending for nearly a year while Lead Counsel Alioto negotiated the prior global settlements, and
8   was disposed of in October, 2015, in a housekeeping order that deemed the recommendation to
9   have been mooted by the settlements.  ECF No. 4153.

10       Despite not having a role in the settlement process, prior to the time for objections to the
11  prior settlements, C&K sent a letter to Mr. Alioto and defendants' counsel advising them that
12  C&K believed that the proposed settlements were unfair, unreasonable and inadequate as to the
13  putative nationwide Settlement Class members in Non-Repealer States who were releasing viable
14  claims for no consideration.  *See* ECF No. 4116-1, Exhibit B.  Subsequently, C&K filed a timely
15  objection to the approval of the settlement and argued before Special Master Martin Quinn that the
16  scope of the release was improper.  *See* ECF Nos. 4116; 4437 at 1-9.

17       On December 11, 2015, during the pendency of the proceedings before the Special Master,
18  C&K moved this Court to appoint Josef Cooper as Co-Lead Counsel for the Non-Repealer State
19  members of the proposed nationwide Settlement Class.  ECF No. 4241.  The Court denied the
20  request on the grounds that it saw no reason "why appointment as co-lead counsel would enable
21  [Mr. Cooper] to argue on behalf of certain class members more effectively or persuasively than
22  simply objecting to the settlement would."  ECF No. 4377 at 1.  The Court stated: "Any argument
23  that could [be] made in the capacity of co-lead counsel can be made equally well in the capacity of
24  objector."  *Id.* at 2.

25       Now that the posture of this litigation has changed again, and settlement negotiations are
26  about to resume, it is apparent that Non-Repealer State class members need an advocate.  C&K,
27  with its proven track record of zealously advancing their claims, is the obvious choice.
28

### IV. COOPER & KIRKHAM IS QUALIFIED TO SERVE AS LEAD COUNSEL REPRESENTING NON-REPEALER STATE PLAINTIFFS

Rule 23(g) of the Federal Rules of Civil Procedure requires four factors to be considered when selecting Lead Counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law and the field at issue; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A); *In re LIBOR-Based Fin. Instruments Antitrust Litig.,* 11 MDL No. 2262, 2014 U.S. Dist. LEXIS 153634, at *71 (S.D.N.Y. Oct. 14, 2014). No single factor is determinative; all factors should be considered. *See* Fed. R. Civ. P. 23 advisory committee notes (2003 amendments); Fed. R. Civ. P. 23(g)(1)(B) (court may consider any other pertinent matter).

#### A. Cooper & Kirkham Has Taken the Lead in the Identification and Investigation of Potential Claims for the Indirect-Purchaser Non-Repealer State Plaintiffs.

As discussed in Section III, above, C&K has been the primary advocate on behalf of class members in Non-Repealer States throughout the settlement phase of this litigation and represents a putative class member in Ohio, a non-repealer state.

#### B. Cooper & Kirkham Has Substantial Experience in Complex Litigation and Will Efficiently Prosecute This Matter.

The Kirkham Declaration establishes that C&K has more than sufficient experience in complex antitrust litigation to be appointed Lead Counsel for Indirect-Purchaser Non-Repealer State Plaintiffs. Ms. Kirkham and members of her firm have held the position of Lead Counsel and other leadership roles in antitrust actions involving claims of indirect purchasers at multiple levels along a product's chain of distribution, beginning for Mr. Cooper before *Illinois Brick* was decided, and continuing for Ms. Kirkham into the present in such actions as *Sullivan v. D.B. Investments, supra; In re Dynamic Random Access Memory (DRAM) Antitrust Litigation,* Master File No. M-02-1486-PJH (MDL No. 1486) (N.D. Cal.) ("*DRAM*"); *In re TFT-LCD Flat Panel Antitrust Litigation,* Master Docket No. 07-m-1827 SI (MDL No. 1827) (N.D. Cal.); *and In re*

1  *Parking Heaters Antitrust Litigation*, Consol. Case No. 15-MC-0940 (DLI) (JO) (E.D.N.Y.)
2  ("*Parking Heaters*").  *See* Kirkham Declaration at ¶¶ 4-5 and Exhibit 1.

3          **C.**      **Cooper & Kirkham is Knowledgeable Concerning the Applicable Law.**

4          Cooper & Kirkham is nationally recognized as experts in antitrust class action litigation, in
5  general, and, in particular, in litigation advancing and settling the still novel theory that indirect
6  purchasers possess federal equitable claims for disgorgement and restitution.  In fact, C&K is Co-
7  Lead Counsel in the two cases in which this theory of recovery was explicitly argued, briefed and
8  settled – *DRAM,* Master File No. M-02-1486-PJH (MDL No. 1486), 2013 U.S. Dist. LEXIS
9  188116 (N.D. Cal. Jan. 8, 2013) and *Parking Heaters*, Case No. 15-MC-0940 (DLI) (JO)
10  (E.D.N.Y.).  Kirkham Declaration at ¶¶ 6-7.

11          The firm has participated in the litigation of many of the nation's major antitrust cases that,
12  in addition to recovering billions of dollars for class members, have added to the seminal precedent
13  in this area of the law.  Although until his death in November 2018, Josef Cooper was the senior
14  partner and largely the face of C&K, Ms. Kirkham has over twenty-five years experience
15  prosecuting antitrust cases by his side, and her work is highly regarded by the judges before whom
16  she has appeared.  *See, e.g.,* the letter from Judge Charles B. Renfrew, attached as Exhibit 2 to the
17  Kirkham Declaration.  In fact, in both the *DRAM* and *Parking Heaters* litigation, C&K (as opposed
18  to Mr. Cooper) was designated Co-Lead Counsel, which has enabled the firm to carryout its duties
19  in those matters without interruption despite Mr. Cooper's untimely passing.  Kirkham Declaration
20  at ¶ 4.

21          Ms. Kirkham was the lead drafter of the petition for rehearing *en banc*, and subsequently,
22  the briefing on rehearing *en banc* in *Sullivan*, *supra*, 667 F.3d 273, a decision that is widely
23  regarded as one of the most complete expositions extant of the law and policy underlying the
24  settlement of antitrust class actions.  Kirkham Decl. ¶ 4.  More recently, Ms. Kirkham, along with
25  a representative of a committee of thirty-three state Attorneys General, provided substantial
26  drafting assistance to the Honorable Charles B. Renfrew in preparing the three part, 295-page
27  Special Master's Report covering the issues, *inter alia,* of nationwide class certification and the
28

13
MOTION OF COOPER & KIRKHAM, P.C., FOR APPOINTMENT AS LEAD COUNSEL FOR INDIRECT-
PURCHASER PLAINTIFFS WITH CLAIMS IN NON-REPEALER STATES
Case No. 3:07-cv-5944, MDL No. 1917

selection of notice procedures, and a plan of allocation and distribution of the settlement funds in the *DRAM* litigation. *Id*.

### D. Cooper & Kirkham Has the Resources Necessary to Prosecute this Litigation.

C&K possesses the experience to manage the expenditure of resources to ensure that the litigation on behalf of Indirect-Purchaser Non-Repealer State class members is prosecuted in the most expeditious and cost-effective manner practicable. C&K has to date contributed to the common fund and incurred out of pocket expenses over $100,000 in this litigation, and is prepared, to advance further necessary costs of litigation. Kirkham Decl., ¶ 9.

## V. CONCLUSION

For all of the above reasons, this Court should appoint C&K as Lead Counsel for the Non-Repealer State class members.

Dated: April 18, 2019                             Respectfully submitted,

        /s/ *Tracy R. Kirkham*
Tracy R. Kirkham

Tracy R. Kirkham (69912)
John D. Bogdanov (215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA 94103
Telephone: (415) 788-3030
Facsimile: (415) 882-7040
Email:  trk@coopkirk.com
       jdb@coopkirk.com

*Counsel for Class Representative Steven Ganz and Class Member Eleanor Lewis*

---

14

MOTION OF COOPER & KIRKHAM, P.C., FOR APPOINTMENT AS LEAD COUNSEL FOR INDIRECT-PURCHASER PLAINTIFFS WITH CLAIMS IN NON-REPEALER STATES
Case No. 3:07-cv-5944, MDL No. 1917