Robert Bonsignore appearing *pro hac vice*
Bonsignore Trial Lawyers, PLLC
23 Forest Street
Medford, MA  02155
Office Phone: (781) 350-0000
Cell Phone: (781) 856-7650
Facsimile: (702) 852-5726
Email: rbonsignore@classactions.us

*Counsel for Appellants Gianasca, Comeaux,
Ashkannejhad, Speaect, Ciccone, and Craig*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 3:07-cv-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **DECLARATION OF ROBERT J BONSIGNORE IN SUPPORT OF MOTION FOR APPOINTMENT OF BONSIGNORE TRIAL LAWYERS, PLLC AS INTERIM CO-LEAD CLASS COUNSEL FOR THE INDIRECT-PURCHASER OMITTED REPEALER STATE CLASSES** |
| All Indirect-Purchaser Actions | |
| | Hearing Date:  June 6, 2019 |
| | Time:             2:00 p.m. |
| | Judge:            The Honorable Jon S. Tigar |
| | Courtroom:     9, 19th Floor |

I, Robert Bonsignore, under oath, swear and depose the following:

1.      I submit this declaration in furtherance and in support of the Motion for Appointment of Bonsignore Trial Lawyers, PLLC as Interim Co-Lead Class Counsel for the Indirect-Purchaser Omitted Repealer State Classes, submitted pursuant to the request of this Honorable Court for motions to be filed for consideration of the appointment of class counsel to represent the interests of the members of the putative Indirect-Purchaser Omitted Repealer State Classes.

2.      I am managing partner of Bonsignore Trial Lawyers, PLLC ("BTL").  Attachment A hereto is a true and accurate copy of our firm resume.

3.      I am an attorney licensed to practice before the courts of New Hampshire and Massachusetts, as well as federal courts throughout the country.   I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them.   I make this declaration in support of my firm's motion for appointment as interim co-lead counsel for the Omitted Repealer States (the "ORS").

**<u>Work Performed Identifying And Investigating Potential Claims In This Action</u>**

4.      Throughout the quest by the MDL 1917 ORS class members to recoup the economic losses they are entitled to receive, BTL has represented Indirect End Use Plaintiffs that resided full time in the three omitted repealer states that were the catalyst and drive central to the Ninth Circuit Court of Appeals recent remand, as well as Rhode Island.  Specifically, BTL has represented named appellant and end-use indirect purchaser ORS Plaintiffs Anthony Gianasca (Massachusetts), Jeff Craig (New Hampshire), and Mina Ashkannejhad individually or as Administrator of the Estate of the Late R. Deryl Edwards, Jr. (Missouri) (collectively, the "Gianasca Appellants").

1

5.      The Gianasca Appellants first raised the issues that prevailed on appeal by filing the opening appellate brief - with no extension - months before all other appellants.  In the process leading up to and within that filing, the Gianasca Appellants were required to, and did, thoroughly identify, research and evaluate the potential claims and defenses.

6.      The Gianasca Appellants raised the overriding issue that ultimately resulted in remand, and, in that process, were required to support the claims the ORS must now advance in these proceedings.  Those Appellants had a real interest and stake in the outcome of the litigation which were vigorously pursued on appeal.  It is well known that the number of cases which are successful on appeal are miniscule.  Under my direction and with my active and deep involvement, BTL put forward the extraordinary effort required under the circumstances to fully and thoroughly investigate all potential claims and obtain the in depth knowledge of the applicable law needed to advance a successful appeal on behalf of the ORS.

7.      In addition to the foregoing, I have been intimately familiar with the applicable laws of New Hampshire and Massachusetts and their potential claims for many years as a duly licensed lawyer in both states with a practice concentrated in complex litigation, class actions and antitrust law.

8.      I also identified and investigated the claims of a Missouri IPP in this specific litigation.  I have represented Mina Ashkannejhad throughout these proceedings, and she has already been subjected to a related deposition, emerging unchallenged.  The process of preparing her and defending her deposition provided a fine edge to my knowledge and experience relating to the applicable law as applied to Missouri.

9.      In addition, I havethoroughly and extensively researched the claims of the other ORS that were recently included in this MDL's Mitsubishi settlement by indirect purchaser plaintiff ("IPP") Interim Lead Counsel Mario Alioto.  Of note, while IPP Counsel saw fit to include the Arkansas, Montana, Oregon, Rhode Island, South Carolina, and Utah in their most

MOTION RE: APPOINTMENT OF CO-LEAD CLASS COUNSEL; Case No. 3:07-cv-5944, MDL No. 1917

recent settlement as repealer states, they were excluded from prior settlements as were Massachusetts, Missouri and New Hampshire.  I have also researched the procedural history of the claims advanced on their behalf in the instant litigation.

10.    I have previously represented victims from each of those states on multiple occasions and presently have multiple existing clients from eight (8) of the nine (9) so-called "new states."

11.    In the zealous pursuit of the rights and claims of the ORS members, I have already reached out to existing clients and have their agreement to serve as additional putative class representatives and am still in the process of vetting them to identify the best class representatives. They, and BTL, stand ready to serve as this Court's rulings may allow.

12.    The claim for economic relief held by the putative Massachusetts IPP class members falls exclusively under Massachusetts General Laws ("MGL") c. 93A.

13.    I have been duly licensed to practice law in the Commonwealth of Massachusetts since 1985 and have served as Lead Counsel in over ten (10) certified M.G.L. c.93A price-fixing cases.  One of them, the Massachusetts *Smokeless Tobacco Litigation*, created new law expanding the rights of indirect end use purchasers in the Commonwealth.

14.    Moreover, in addition to the procedural history of the claims of the ORS, I am intimately familiar with equitable tolling and fraudulent concealment theories.  I have successfully argued these theories in the setting of the IPP's claims that are central to this litigation.

15.    As Lead Counsel in other MDL class actions and non-MDL state court-based antitrust (and other) matters, I have primarily argued each certification, dispositive motion and discovery related hearing.  I have taken depositions, propounded discovery and responded to discovery.  There is nothing associated with the litigation and trial of an IPP antitrust case or an MGL c. 93A case with which I am not intimately familiar and comfortable.

16.    I have also lectured on MGL c. 93A for a variety of continuing legal education

MOTION RE: APPOINTMENT OF CO-LEAD CLASS COUNSEL; Case No. 3:07-cv-5944, MDL No. 1917

service providers.

17.    I am duly licensed to practice law in the State of New Hampshire and served as Lead Counsel in the certified IPP price-fixing case that, like the Massachusetts case referenced above, first created the right of New Hampshire indirect end use purchasers to advance claims seeking an economic recovery for antitrust violations.  The law created in the New Hampshire *Smokeless Tobacco Litigation* was later codified.

<u>**Experience In Handling Class Actions, Other Complex Litigation,**</u>
<u>**And The Types Of Claims Asserted In The Action**</u>

18.    The above-referenced statements evidencing my experience in handling class actions, complex litigation, and the types of claims asserted in the action are incorporated by reference herein.

19.    I also incorporate by reference my firm resume (Attachment A).  BTL has specialized in class actions, complex litigation and the antitrust-related claims at the center of the ORS claims for almost two decades.  We have served as lead counsel in precedent-setting IPP antitrust cases as well as other complex litigation that includes international defendants, international price-fixing defendants and exceedingly complex financial causes of action against highly sophisticated defendants.  We have won both in the trial courts and  on appeal.  We are as comfortable in taking depositions and serving and responding to discovery as we are drafting and arguing briefs.

20.    We are also well-known and respected as team and consensus builders.  While we know what it takes to dig in and get the job done, we fully recognize, appreciate and are expert at cooperatively working with others during litigation in leadership roles.  We are result driven, not time and billing driven.

<u>**Counsel's Knowledge Of The Applicable Law**</u>

21.    To avoid repetition, I incorporate the above statements made under oath which well

4

1  establishes my knowledge of the applicable law.

2  **The Resources That Counsel Will Commit To Representing The Class**

3    22.    I and my law firm possess and are prepared to commit the resources necessary to

4  the representation of class members from ORS who were excluded from an economic recovery in

5  the settlement remanded back to this Court.  We have already spent $40,000 on related expert fees,

6  traveled to mediation multiple times on short notice following remand, flew to the home office of

7  defense counsel following an unsuccessful mediation in hopes of bridging the gap and narrowing

8  issues in contention; and fully funded the appeal, including the voluminous appellate record.

9

10  **Other Matters Pertinent To Counsel's Ability To Fairly And Adequately Represent The Interests Of The Class**

11    23.    I have written the chapter on Examination of Lay Witnesses for Thomson Reuters

12  and am in the process of adding a subsection addressing the examination of lay witnesses in an

13  indirect purchaser antitrust action during discovery and trial.

14    24.    I have been a member of the Board of the American Antitrust Institute for almost a

15  decade.

16    25.    At the request of the City of Providence, Rhode Island, I wrote the first draft of

17  legislation that would eventually be signed into Rhode Island law as its Illinois Brick "repealer"

18  statute.

19    26.    I will personally serve and perform all functions related to the position of lead

20  counsel and not delegate or designate others to carry out those duties for me.

21  **Counsel Will Fairly And Adequately Represent The Interests Of The Class**

22    27.    I believe that it can be objectively inferred that I, in large part, have led the ORS's

23  quest to be granted an economic recovery from the point that they were first noted to be excluded

24  from the economic recovery.  For example, BTL was a major contributor to the creation the record

25  that supported the order of remand.  Prior to the successful appeal, I zealously represented the

5

1   putative ORS class members during the hearings before the Special Master, and later, in the review

2   carried out by this Honorable Court.

3       28.    I represented specific class members who possessed an actual stake in the litigation

4   from included repealer states (Nevada and South Dakota) and omitted repealer states

5   (Massachusetts, Missouri, New Hampshire) throughout the process that brings this matter back to

6   this Court for final resolution.

7       29.    At all times, I have done my best to bring this matter to finality in the most

8   aggressive and expeditious way available.  An example of my dedication and diligence lies in my

9   handling of the appeal where I sought no delays.  Instead, I drafted and filed the first opening brief

10   in the Ninth Circuit Court of Appeals targeting the issue[1] that eventually supported the remand

11   many months before the next brief was filed.  I also argued the matter before the Ninth Circuit.

12       I declare under penalty of perjury under the laws of the United States and the State of

13   Nevada that the foregoing is true and correct.

14       Signed this 19th day of April in Las Vegas, Nevada.

15

16                   /s/Robert J Bonsignore
17                   Robert J. Bonsignore

18

19

20

21

22

23

24

---

25   [1] BTL also raised the other issues that were addressed by the Ninth Circuit at oral argument.  Also,
26   it is the obligation of BTL to take exception to this Court's ruling at the CMC that it will not
     consider the removal of Lead Counsel Alioto.  While BTL understands that settlement of this
27   sprawling controversy is in the best interest of all concerned, based on uncontroverted facts taken
     together with the content of the Flamm Affidavit, BTL is ethically obligated at this time to
28   preserve the related rights of the putative class members of the ORS by objecting to Lead
     Counsel's continued representation.

MOTION RE: APPOINTMENT OF CO-LEAD CLASS COUNSEL; Case No. 3:07-cv-5944, MDL No. 1917

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DECLARATION OF ROBERT J BONSIGNORE IN SUPPORT OF MOTION FOR APPOINTMENT OF BONSIGNORE TRIAL LAWYERS, PLLC AS INTERIM CO-LEAD CLASS COUNSEL FOR THE INDIRECT-PURCHASER OMITTED REPEALER STATE CLASSES was filed *via* CM/ECF on April 19, 2019, and as a result has been served on all counsel of record *via* transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Francis O. Scarpulla
Francis O. Scarpulla

MOTION RE: APPOINTMENT OF CO-LEAD CLASS COUNSEL; Case No. 3:07-cv-5944, MDL No. 1917

# EXHIBIT 1

# BONSIGNORE TRIAL LAWYERS, PLLC

**www.classactions.us**

**BONSIGNORE TRAL LAWYERS, PLLC ("BTL")** are highly successful and experienced trial lawyers who limit their practice to complex litigation, class actions, and cases involving significant economic loss or public policy.  BTL attorneys have represented businesses, governmental entities, consumers, and unions in federal and state courts across the United States.

We have learned through experience that the best way to achieve the most favorable outcome for our clients, whether through the formal litigation process or settlement, is to prepare each case to win at trial.  BTL has earned a national and international reputation for its professional integrity, competence and an aggressive approach to case prosecution.  BTL is capable of litigating any case in any jurisdiction.

The firm concentrates in the practice areas of antitrust, consumer protection, employee rights, business-to-business wrongs, catastrophic personal injury, and mass tort litigation.  Over the years, BTL has successfully recovered hundreds of millions of dollars for their clients.  In actions where BTL has served as Lead Trial Counsel, the firm has been involved in obtaining jury verdicts that exceeded $350 million.

The BTL's appellate briefing team of Lisa Sleboda and Robert Bonsignore has written multiple precedent setting and exemplary legal briefs.  Robert Bonsignore co-authored the New Hampshire Supreme Court brief in *LaChance v Smokeless Tobacco* which extended to consumers, small businesses, and governmental entities the right to sue antitrust violators.  Most recently, Robert Bonsignore and Lisa Sleboda successful persuaded the Ninth Circuit Court of Appeals to set aside a $577 million-dollar settlement of antitrust and price-fixing claims that improperly excluded governmental entities, consumers, and small businesses from any share in the economic recovery provided for in the settlement agreement.  The oral argument before the circuit court may be found at
https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000013465.  Other recent successes include two additional Ninth Circuit Court of Appeals cases relating to wage and hours claims against Wal-Mart and music royalty claims by legacy musicians against EMI Group Limited.  Each is detailed below.

BTL and its principal have been appointed to serve in leadership roles in many complex and multi-district actions.  For example:

1. BTL presently represents the majority of counties in New Hampshire in the Opioid Taxpayer Recoupment Litigation.  BTL also represents additional cities, towns and counties in New Hampshire and Massachusetts;

2. BTL served as a lead appellate counsel in MDL 1811, *In re: CRT Antitrust Litigation*.  Lisa Sleboda and Robert Bonsignore authored the lead appellate brief in MDL 1811, and Robert

Bonsignore argued the appeal before the Ninth Circuit, which resulted in the overturning of a $577 million-dollar settlement that wrongly excluded end-use consumers in three states from a share in the settlement agreement's economic recovery.  Mr. Bonsignore subsequently served as Co-Lead mediator for the excluded states as the parties attempted to reach resolution though alternative dispute resolution;

3. Robert Bonsignore was Co-Lead Counsel in MDL 1735, the largest certified wage and hour case in United States history with over 2.5 million class members.  Lisa Sleboda and Robert Bonsignore authored the lead appellate brief in MDL 1735, and Robert Bonsignore argued the appeal before the Ninth Circuit and won the leading case on the rights of parties to arbitration to further review;

4. Robert Bonsignore was appointed Lead Counsel in MDL 1631, *In re: Publication Paper Antitrust Litigation* which advanced and resolved the claims of all end-use consumers of publication paper against international conspirators; and

5. Robert Bonsignore was appointed and is currently serving as Lead Counsel in MDL 2566, *In re: TelexFree Securities Litigation*, (the largest pyramid scheme in United States history) which advances the rights of over 750,000 class members and involves over $4 billion dollars of projected loss.

## EXEMPLAR REPRESENTATIVE CASES BY PRACTICE AREA

### Exemplar Antitrust - Protection of Businesses

*In re: Automotive Parts Antitrust Litigation (MDL 2311) (USDC Eastern District of Michigan Southern Division)* - BTL filed among the first 4 cases in one of the largest private antitrust litigation in United States history on behalf of a domestic wire harness manufacturer headquartered in Virginia.  In the originally-filed complaint, Plaintiffs alleged that the Defendant foreign suppliers engaged in a conspiracy over a 10-year period to illegally increase the price of "Wire Harness Systems Products," which include wire harnesses, electrical wiring, lead wire assemblies, cable bond, wiring connectors, wiring terminals, electronic control units, fuse boxes, relay boxes, junction blocks, and power distributors.  Notably, in a separate governmental investigation, two of the named Defendants, Furukawa Electric Co., Ltd. and Yazaki Corporation, as well as some of their executives, pleaded guilty for their involvement in the conspiracy and agreed to pay nearly $700 million in criminal fines and serve prison sentences. Other guilty pleas have been entered as to other automotive suppliers.  Since the cases' filing, the number of parts involved in the litigation has increased with an additional 200 plus automotive parts anticipated to be added to the list. This litigation has largely been resolved through settlements.

*In re: Lithium Ion Batteries Antitrust Litigation (MDL 2420) (USDC Northern District of California)* - BTL filed the second case nationally and represents direct purchasers of Lithium Ion Batteries.  The complaint alleges that several of the largest lithium-ion battery producers, including LG Chem, Ltd., Panasonic Corporation, Sanyo Corporation, Sony Corp., Samsung

SDI, Hitachi, Ltd. and Maxell Corporation of America collectively controlled between 60 to 90 percent of the market for lithium-ion batteries between 2000 and 2011 and unlawfully conspired to fix and artificially increase the price of the batteries, inflating the cost of notebooks and other portable computers paid by consumers.  The complaint also alleges that battery prices fell by nearly 50 percent when several Korean companies entered the market in the early 2000s and that, in response, the Japanese companies who had long controlled the market entered into an illegal price-fixing agreement, resulting in a stabilization of prices that lasted until 2008.  The lawsuit claims that in 2008 the Defendants received notice that they were being investigated for price-fixing activities by both American and European regulators.  Almost immediately after the investigations were disclosed, prices began to fall again, about 10 percent in three months.  This litigation has been resolved.

***In re: After Market Filters Antitrust Litigation (MDL 1957) (USDC Northern District of Illinois)*** – BTL represented direct purchasers of replacement automobile air and oil filters in this nationwide, antitrust price fixing case.  This case has been settled.

***In re: Optical Disc Drive Litigation (MDL 2143) (USDC Northern District of California)*** - BTL represents direct purchasers in an antitrust action challenging the price fixing of optical disc drives in this international antitrust case.  This case is being litigated.

***In re: Employee Benefit Insurance Brokerage Litigation* (MDL 1663)** (***USDC New Jersey***) – BTL filed one of the first bid-rigging class actions in the country on behalf of a large upstate New York employer and major plastics manufacturer.  The lawsuit alleged that insurance companies and brokers conspired with one another to allocate customers and markets and initiated kickbacks ("contingent commissions") with certain insurance companies.  It alleges that the kickback agreements were used to obtain inflated or false price quotes that the Defendants then used to steer their customers into purchasing higher priced insurance policies issued by the insurance companies that paid the brokers the highest kickbacks.  BTL served as Class Counsel and was assigned to the Discovery and Class Certification Committees in the multi-district action pending in New Jersey.  Robert J. Bonsignore was responsible for taking numerous depositions of the Defendants' corporate officers and other firm members carried out numerous massive document review projects.  The Class Plaintiffs have settled with the Zurich, Gallagher and Marsh Defendant groups for an aggregate amount in excess of $218 million.  This case has been settled.

***In re: Cement Antitrust Litigation 1:05 cv 979 (USDC Southern District of Indiana)*** – BTL represented a direct purchaser (business) in an antitrust action challenging the price fixing of cement in the mid-west United States.  The firm served as Class Counsel in the multi-district litigation that settled in the United States District Court for the District of Indiana. This litigation has been resolved.

***SKYVA International v. ABB (Privately Settled)*** – This was a complex matter involving arbitration, mediation, litigation and negotiation of multiple disputes revolving around a $600 million contract and related business relationships and pending relationships with and between

Microsoft, IBM, Adjenture, ABB and SKYVA.  Choice of law issues involving this product technology included Swiss, New York, Delaware and Massachusetts law.  This case has been settled.

***In re: Polyester Staple Antitrust Litigation (MDL 1516) (USDC North Carolina)*** – BTL filed one of the first direct purchaser (business) cases in the country representing Malden Mills, a major textile manufacturing firm.  The firm represented direct purchasers of polyester staple alleging a single, nationwide conspiracy among Defendants to fix, raise, maintain and/or stabilize the price of, and/or allocate markets and customers for, polyester staple in the United States in violation of Section 1 of the Sherman Act, 15 U.S. C. § 1.  The claims brought on behalf of Plaintiffs further alleged that, as a result of the unlawful conspiracy, they and other purchasers paid more for polyester staple than they would have paid absent the conspiracy.  Defendants named in the Complaints included Wellman, Inc., Nan Ya Plastics Corporation; Nan Ya Plastics Corporation, America; E.I. DuPont de Nemours and Company; DAK Americas LLC; DAK Fibers LLC.; Arteva Specialties LLC d/b/a KoSa and now named INVISTA S.ar.l.; Arteva Specialties S.ar.l.; and Koch Industries.  This litigation has been resolved.

***In re: Vehicle Carrier Services Antitrust Litigation (MDL No. 2471) (USDC North Carolina)*** – BTL filed one of the first cases in the country representing indirect purchasers of vehicle carrier services.  Vehicle carriers transport large numbers of cars, trucks or other automotive vehicles including agriculture and construction equipment across large bodies of water using specialized cargo ships known as roll on/roll off vessels.   The litigation alleges a conspiracy among certain vehicle carriers, between January 1, 2008 and May 24, 2013, to fix, raise, maintain and/or stabilize prices, and allocate the market and customers in the United States for, vehicle carrier services in violation of certain state and federal laws. This case is being litigated.

***In re: Aluminum Warehousing Antitrust Litigation (MDL No. 2481) (USDC Southern District of New York)*** – BTL filed a claim on behalf of an aluminum and precious metals company claiming that they overpaid for aluminum and other precious metals.  Facts alleged in support included allegations that Defendants hoarded, stockpiled and manipulated the supply of physical aluminum stored in their warehouses in Detroit; Defendants hold 1.5 million tons of raw aluminum in 29 industrial warehouses throughout the Detroit-metro area; Defendants made illicit payments to potential customers to secure aluminum for storage in Detroit to further their scheme; Defendants shuttled 3,000 tons of aluminum per day from one Detroit area warehouse to another to further their scheme; and Defendants agreed to charge three times the market rate for storage in the Detroit warehouses.  Branch offs of this case are being litigated.

***In re: Dynamic Random Access Memory 2 Antitrust Litigation (MDL TBD) (USDC Northern District of California)*** -  BTL recently filed among the first class action complaints advanced on behalf of all persons and entities in the United States who purchased Dynamic Random Access Memory ("DRAM") directly from manufacturers between June 1, 2016 through February 1, 2018.  The complaint alleges that the officers, directors, employees, agents, or other representatives entered into a continuing contract, combination, or conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. and through their unlawful conspiracy, artificially raised, inflated and maintained the market price of

4

DRAM.  This litigation is being litigated.

### Exemplar Consumer Protection, Securities Litigation & Consumer-Based Antitrust Litigation

***In re Apple Securities Litigation*** (**Superior Court of California**) – BTL filed on behalf of Apple shareholders claims that an exclusive group of tech elites created and/or ratified policies and protocols that suppressed innovation for ten years. The case asserted that Apple's co-founder and former CEO, Steve Jobs, and executives entered into illegal non-solicitation agreements with executives at other companies, such as Adobe Systems, Google, Inc., and Intel Corporation, with whom they had professional and personal relationships.  These agreements provided that Apple and other companies would not recruit each other's employees, thus regulating the competition for talent and suppressing job mobility.  "Silicon Valley's vast wealth and warped sense of entitlement led to an audacious conspiracy to suppress salaries," *Bloomberg Businessweek* had reported.  Those agreements effectively stunted the success of the Bay Area's innovation which was based on the frequent turnover of employees to diffuse information and spur innovation.

***Dale Bozzio/Missing Persons v. EMI Group Limited et al (USDC Northern District of California Oakland Division and Ninth Circuit Court of Appeals #13-15685)*** - BTL filed a lawsuit in the Northern District of California, that arose from the widespread and systematic breach of recording contracts involving legacy musicians.  The complaint was brought on behalf of a nationwide class for breach of contract and statutory violations of California law against Defendants EMI Group Limited; Capitol Records, LLC; EMI North America, LLC; EMI Recorded Music; and EMI Marketing (collectively referred to herein as "EMI").  The complaint alleged that EMI's failure to properly account for and pay its recording artists and music producers for income it received and continues to receive, from the licensees of its recorded music catalog for the sale of digital downloads, ringtones and streaming music (collectively, "digital content").  The Standard EMI Recording Agreement typically sets forth payments to EMI's recording artists and producers for licensing of masters at 50% of the receipts of EMI, rather than a lesser percentage (typically 12% to 20%) as a royalty paid to the artist or producer based on the price of each unit sold. The Ninth Circuit overturned the USDC dismissal of the action as to Bozzio on the basis of standing.  BTL was co-author of the successful appellate briefing.  This case has been resolved.

***In re Contact Lens (MDL 2626) (USDC Middle District of Florida)* -** BTL co-filed a class action lawsuit on behalf its clients in sixteen states, and the District of Columbia. The complaint alleges a conspiracy among four manufacturers and the largest distributor of contact lenses in the United States (CooperVision, Inc., Alcon Laboratories, Inc., Bausch & Lomb  Incorporated, and Johnson & Johnson Vision Care, Inc.) to eliminate discounting among retailers of contact lenses and to artificially fix, raise, maintain and/or stabilize the prices charged to consumers.  Plaintiffs allege that they were subject to price floor policies during the period from and including June 1, 2013 through such time as the anticompetitive effects of Defendants' unlawful conduct ceases.  As of mid-2014, nearly 40 million Americans wore contact lenses and spent $4.2 billion on them annually. The manufacturer Defendants dominate and collectively control over 97% of the contact lens market in the United States.  Plaintiffs allege that the Defendants set a minimum price below which no reseller could advertise or sell a particular line of contact lenses.  This case is being litigated.

*In re TelexFree Securities Litigation (MDL 2566) (USDC District of Massachusetts)* -
TelexFree was a sprawling international pyramid scheme, the largest in United States history,
that affected nearly a million victims and resulted in an estimated $4 billion dollars in damages.
BTL filed against TelexFree, banks, pay processors, financial institutions, licensed professional,
its owners and founders, insider promoters, and others for violations of state law, including the
unregistered sale of securities, deceptive trade practices statutes, fraud, aiding and abetting and
conspiracy. . With the case eventually being given MDL status, Mr. Bonsignore was appointed
and is acting Lead Counsel.  This case is being litigated.

*In re: Vehicle Carrier Services Antitrust Litigation (MDL 2471) (USDC District of New
Jersey)* **-** BTL represented indirect purchasers of vehicle carrier services in eleven states.
Vehicle carriers transport large numbers of cars, trucks or other automotive vehicles including
agriculture and construction equipment across large bodies of water using specialized cargo ships
known as roll on/roll off vessels.  The complaint alleges violations of certain state and federal
laws as a direct result of a conspiracy among certain vehicle carriers, between January 1, 2008
and May 24, 2013, to fix, raise, maintain and/or stabilize prices, and allocate the market and
customers in the United States for, vehicle carrier services.  This case is on appeal.

*In re: Hyundai and Kia Fuel Economy Litigation* (*MDL 2424*) (*USDC Central District of
California*) - BTL filed a putative class-action lawsuit against Hyundai Motor America, Hyundai
Motor Company of Korea, Kia Motors America, and Kia Motor Company of Korea as a result of
their admission that they overstated the fuel economy for many vehicles they sold in the United
States after independent tests by the Environmental Protection Agency (EPA) showed a
discrepancy.  The multi-district class action lawsuit in the District of Central California was
brought on behalf all consumers who own or lease Hyundai and Kia vehicles whose EPA fuel
economy ratings were less than the fuel economy rating produced by the applicable federal test
in that model's year.  BTL and others ("Non-Settling Parties") tested the sufficiency of a
proposed settlement.  BTL was requested to and played a major role in the related litigation
advanced by the Non-Settling Parties and as a result the original settlement was greatly
improved.  Bonsignore LLC supports the current settlement that is pending final approval.
Hyundai will lower fuel-consumption estimates on most Hyundai and Kia models produced in
2012 and 2013.  This case is on appeal.

*In re: (CRT) Antitrust Litigation (MDL 1917) (USDC Northern District of California)* **-** BTL
filed one of the first indirect purchaser cases in the country and coordinated the filing of 12 other
cases.  The nationwide action alleges a price-fixing conspiracy in the CRT industry.  Bonsignore
waived a fee of over one million dollars to object to the settlement and now represents indirect
end users from New Hampshire, Massachusetts, and Missouri who were excluded from the
settlement.  After BTL filed the lead appellate briefs, Mr. Bonsignore was selected to serve as
lead off counsel at oral argument.  Following oral argument, the Ninth Circuit ordered the parties
to mediation.  Mr. Bonsignore later served as co-lead negotiator for the appellants.  The Ninth
Circuit remanded the case to the district court, overturning a settlement of over $500 million.

*In re: Publication Paper Antitrust Litigation (M.D.L.1631) (USDC Connecticut)* - Robert

6

Bonsignore served as Lead Counsel in MDL 1631 for all Indirect End Use Purchasers. This action focused on alleged national and international price fixing of certain types of publication grade paper during certain time periods.  Final approval of a class action settlement against the last remaining Defendants was approved. This litigation is resolved.

***In re: Massachusetts Smokeless Tobacco Litigation (Massachusetts Superior Court Business Litigation Session) -*** Robert Bonsignore was appointed as Co-Lead Counsel by the Chief Justice of the Business Litigation Session for the Commonwealth of Massachusetts.  This action was fiercely litigated for 7 years.  Notably, this was the first contested indirect purchaser class action in the Commonwealth of Massachusetts to be certified.  The action sought economic damages for consumers and alleged that U.S. Smokeless unlawfully created and maintained an unlawful monopoly and artificially inflated prices.  The action was also noteworthy because Mr. Bonsignore certified a fifteen-year class period by successfully establishing that fraudulent concealment of the bad acts was included in the questioned conduct.  The all-cash settlement provided the greatest recovery per consumer (consumer class members were eligible to receive up $700 cash) in any price-fixing action brought against the manufacturers of moist smokeless tobacco.  This case has been settled.

***In re: New Hampshire Smokeless Tobacco Litigation (New Hampshire Superior Court) -*** Robert Bonsignore served as Lead Counsel.  Notably, this was the first contested indirect purchaser class action in the state of New Hampshire.  The cause made its way to the New Hampshire Supreme Court who extended its narrow interpretation of consumer protection statutes and allowed the Plaintiffs' claims to proceed.  This successfully created new common law right of end-use indirect purchasers to bring an action to recover economic loss was later codified.  The action was also noteworthy because Mr. Bonsignore again certified a fifteen-year class period by successfully establishing that fraudulent concealment of the bad acts was included in the questioned conduct.  This case has been settled.

***In re: California Vitamin Cases* (San Francisco Superior Court)** – Robert Bonsignore served on the Executive Committee in *In re: Vitamin Cases* which was settled on behalf of California indirect purchasers.  This action advanced antitrust claims against an international cartel of vitamin manufacturers accused of fixing prices and allocating markets in every level of the chain of distribution.  The court granted final approval of a settlement with certain vitamin manufacturers in a class action alleging that these and other manufacturers engaged in price fixing of particular vitamins.  This case has been settled.

***In re: Dynamic Random Access Memory Antitrust Litigation (MDL 1486) (USDC Northern District of California)* –** Robert Bonsignore filed one of the first indirect purchaser DRAM cases in the country.  Bonsignore was selected to serve as a member of the Executive Committee.  Subsequent to filing, BTL coordinated the consolidation and coordination of like cases in 48 states.  The nationwide action alleged a price-fixing conspiracy in the DRAM industry.  Robert Bonsignore was appointed by the USDC to serve as interim lead counsel of a related putative class, later absorbed into MDL 1486.  This case has been settled.

*In re: Chocolate Antitrust Litigation (MDL 1935) (USDC Middle District of Pennsylvania)* - BTL represented indirect end use purchasers of chocolate in 14 of 29 states involved in the litigation.  The action alleged an international price-fixing conspiracy in the chocolate industry.  Robert Bonsignore was responsible for taking numerous depositions of the Defendant's corporate officers, engaged in corporate document discovery, and was designated to serve as the discovery liaison with the largest purchaser of chocolate in the United States.  Mr. Bonsignore also served on the 5-person Plaintiffs' Settlement Negotiation team and the expert witness and class certifications teams.  Other firm members carried out numerous massive document review projects. This case was dismissed.

## Employment

*In re: Wal-Mart Wage and Hour Practices Litigation (MDL 1735) (USDC District of Nevada and Ninth Circuit Court of Appeals)* **-** This successfully and finally resolved multi–district class action is the largest certified class in a wage and hour case in United States history.  The filing, coordination and prosecution of coordinated proceedings in 39 states were found to have been the brainchild of Robert Bonsignore.  Bonsignore first successfully argued that the litigation should be granted MDL status and coordinated for all pre-trial proceedings.  Mr. Bonsignore was then appointed to serve as national Co-Lead Counsel in this multi-district litigation and fully litigated the action.  This action focused on allegations that Wal-Mart systematically failed to pay its hourly employees for all time worked, including supplemental benefits.  The action settled for $85 million dollars plus injunctive relief designed to prevent the alleged violations from occurring again.  After the settlement received final approval a law firm that entered the case one-month prior to the execution of the Settlement Agreement purchased an interest in the attorney fees award ("Objector").  After allocation of the attorney fees was arbitrated, the Objector filed an federal Arbitration Act appeal of the arbitration award. The district court rejected that appeal in a lengthy opinion, finding the challenge to be meritless.  The Objector appealed to the Ninth Circuit Court of Appeals.  On December 18, 2013, nearly 10 years after the litigation was filed the Ninth Circuit found the appeal to be meritless and affirmed the district court's ruling.  Robert Bonsignore briefed and argued all appeals.  Mr. Bonsignore's oral argument before the Ninth Circuit Court of Appeals can be heard at http://www.ca9.uscourts.gov/media/view.php?pk_id=0000011351. (*Carolyn Burton, et al. v. Class Counsel and Party to Arb, et al.,* No.  11-17718).  This case has been settled.

*In re: Wal-Mart Massachusetts Wage and Hour Litigation-* Bonsignore served as Class Counsel in *Salvas v. Wal-Mart Stores, Inc.,* a certified Massachusetts class action of 67,000 hourly employees alleging wage and hour violations against Wal-Mart occurring in the Commonwealth of Massachusetts.  This action is the largest certified employment class in Massachusetts state history.  Notably, rulings and bodies of evidence obtained in this action have been relied upon in other employment litigation around the country. Attorney Robert Bonsignore successfully convinced the Massachusetts Supreme Judicial Court to reverse a trial court decision decertifying the class.  The argument, which is the second most watched archived SJC argument, set numerous precedents that have been frequently cited in numerous decisions.  This case has been settled.

## Exemplar Products Liability & Mass Tort Cases

***In re: Zofran (Ondansetron) Products Liability Litigation - (MDL 2657) (Pending)*** – BTL filed the second Zofran-related civil action in the country and has subsequently filed others. Zofran is a powerful drug developed by GSK to treat only those patients who were afflicted with the most severe nausea, for example nausea associated with cancer treatment such as radiation or chemotherapy. The U.S. Food and Drug Administration ("FDA") approved Zofran in 1991 for use in cancer patients who required chemotherapy or radiation therapy.  Although the only FDA approval for this drug was for seriously ill, badly suffering cancer patients, GSK marketed Zofran "off label" as a safe and effective treatment for the very common side effect of a normal pregnancy:  pregnancy-related nausea and vomiting ("Morning Sickness").  Plaintiffs allege that the use of Zofran by women who are pregnant increases the risk of birth defects and that prior to marketing Zofran as an off-label treatment for Morning Sickness between 1991 and 2011, GSK had the duty at all times to eliminate, minimize or warn of the risk of birth defects. This case is being litigated.

***In r: Hernia Mesh (Diverse Jurisdictions)*** – Hernia mesh is an unnecessary product that was created as a profit center by unscrupulous medical device companies who then compounded their misconduct through a series of marketing ploys from medically unsound fish oil to bold, yet unsupported claims of efficacy.  BTL so successfully litigated a claim on behalf of an individual mesh recipient that it was requested to create the consolidated litigation.  The Hernia Mesh complaints advance claims that focus on a number of theories, some specific to a particular product.  They include defective design, manufacture, production, testing, study, research, training, inspection, labeling, marketing, advertising, sales, promotion, and/or distribution of the hernia mesh products.   BTL represents approximately 300 mesh clients.  The litigation is spread out across the country.

***In re Amiodarone*** -  BTL represents victims who were prescribed, purchased, and ingested the drug commonly referred to as Amiodarone and subsequently developed amiodarone-induced pulmonary fibrosis, a life-threatening and debilitating condition.  Amiodarone-induced pulmonary fibrosis victims are diagnosed as suffering from atrial fibrillation ("A-fib"), which is a rhythm condition of the atrial chambers of the heart.  At the time Amiodarone was prescribed, the victims received no warning about the potential life-threatening complications. Additionally, the victims did not receive the FDA-mandated Medication Guide to be distributed with each prescription of Amiodarone that warns the user of the extremely dangerous, potentially life-threatening complications associated with Amiodarone.

***In re: Silicone Gel Breast Implant Product Liability Litigation (MDL 926) (USDC Northern District of Alabama and USDC Eastern District of Michigan)*** – Bonsignore represented over 400 pre-1991 recipients of saline and silicone breast implants.  During the multi-district litigation, Bonsignore served as Co-Counsel and on the Discovery Committee and was part of the discovery team.  A $2.35 billion fund was created in one of the largest class action settlements in U.S. history.  This case has been settled. Mr. Bonsignore resolved the claims of 2500 breast implant claimants.

9

***In re: Mercury Vaccine Litigation*** (multiple jurisdictions) – Bonsignore filed several of the first consumer protection class action cases in the country alleging that the toxic levels of mercury coupled with the increased number of vaccinations poisoned infants and directly caused their learning disabilities and autism. The action sought medical monitoring, a public release of related studies and data that could be used in diagnosis and treatment, and reimbursement of families as well as local and federal government for the staggering costs associated with the treatment of the affected children. The firm helped spearhead a collective group of North America's best trial lawyers and significantly contributed to this national litigation. Bonsignore served on the Executive, Science, Expert, Class Certification, State Coordination and Discovery Committees. The related claims gained no traction because the science relied upon were compromised when a researcher exaggerated his findings. The sudden and continuing spike in the rate of autism remains stunning and unexplained. This case was dismissed.

***In re: Rezulin Products Liability Litigation*** (**MDL 1348**) (*USDC Southern District of New York*) **-** Bonsignore filed one of the first wrongful death, liver failure and consumer protection class action cases in the country. The action alleged that the makers of the diabetes drug did not adequately test its safety and efficacy prior to mass marketing it to consumers. On March 21, 2000, per the FDA's request, Warner-Lambert finally issued the Rezulin recall after its controversial run on the U.S. market. Robert Bonsignore's early aggressive discovery led to the key admission that Warner Lambert had health department reviewers of the drug on its payroll at the time it was approved. Bonsignore served on the Science, Expert, Class Certification, State Coordination and Discovery Committees in the multi-district action. In addition, Bonsignore was selected to take critical depositions. Mr. Bonsignore secured the largest single award in an individual action, obtaining a $3.75 million-dollar recovery for his client. This case has been settled.

***In re: Sulzer Orthopedics, Inc., Hip Prothesis and Knee Prothesis Product Liability Litigation*** (**MDL 1410**) (*USDC Northern District of Ohio*) **-** Bonsignore filed one of the first hip failure consumer protection class actions cases in the country. Bonsignore took and attended the first depositions obtaining key admissions. The aggressive discovery conducted by Bonsignore resulted in key admissions by one of its chief worldwide recall investigators. The multi-district class action alleged that the makers of hip and knee prostheses negligently coated these medical devices with commercial grade motor oil and did not adequately test safety and efficacy prior to mass marketing to consumers. The related products were recalled from the United States market. A settlement was reached approximating $1 billion. This case has been settled.

***In re: Lead Paint*** – Bonsignore represented the City of Providence Rhode Island in an action seeking to have the manufacturers of lead paint pay for its removal and to pay for the costs absorbed by the city for the health care and special education of children who suffered from lead paint poisoning.

**PRINCIPAL**

**ROBERT J. BONSIGNORE**. Mr. Bonsignore began his career in the Office of the District Attorney for Middlesex County, Massachusetts. Since 1990 when he began his own law firm specializing in complex litigation and trial work, he has been lead trial counsel in cases with jury

10

verdicts totaling in excess of $350 million dollars.  Mr. Bonsignore is AV rated by Martindale Hubbell and was awarded Diplomat status by the National College of Advocacy.  Mr. Bonsignore is frequently requested to speak at Continuing Legal Education seminars across the country.  He has lectured on topics ranging from antitrust to consumer advocacy and from trial techniques to ethics.  He has co-authored a trial technique treatise on Direct Examination for Lexus/Nexus.

Mr. Bonsignore has extensive experience in antitrust, consumer protection, complex litigation, class actions, multi-district litigation, Judicial Panel on Multi-District Litigation proceedings, and commercial cases.  He also has received significant jury verdicts in wrongful death and catastrophic injury cases.

Between 2001 and 2004, Mr. Bonsignore was appointed Lead Counsel in five separate certified class actions by the Chief Justice of the Business Litigation Session for the Commonwealth of Massachusetts advancing claims raised pursuant to the Massachusetts Consumer Protection statute - Massachusetts General Law 93A.  All were finally approved without appeal.  Mr. Bonsignore was also appointed Lead or Co-Lead counsel in four other certified and class actions that were finally approved.  Mr. Bonsignore successfully argued the re-certification of the largest employment class action in Massachusetts' history at the Supreme Judicial Court level.  At the trial court level, Mr. Bonsignore presented the oral argument at the first contested end use consumer indirect purchaser monopolization class action to be certified pursuant to Mass. General Laws Chapter 93A.

Mr. Bonsignore is frequently called upon to serve as counsel in team approach litigation because of his decades-long experience and proven track record in multi-district litigation.  After establishing himself as a trial lawyer and working cooperatively in the Silicon Breast Implant Litigation in 2000, Mr. Bonsignore was selected as the firm representative of Robinson, Calcagnie & Robinson to the "megafirm" of Herman, Middleton, Casey, Kitchens & Robinson ("HMCKR").  HMCKR formally brought together nationally top-ranked law firms to jointly prosecute MDL actions (multi-district class actions) and other complex litigation involving antitrust, unfair competition, and pharmaceutical matters.  Other mega-firm members selected Mr. Bonsignore based on his skill, experience, work ethic accomplishment, and demonstrated ability to work cooperatively with co-counsel and opposing counsel on a multitude of projects.

Mr. Bonsignore was extensively involved in trial preparation in cases against tobacco manufacturers brought by public entities as well as private attorneys general and was counsel of record for the former Governor of California as well as Orange and Los Angeles counties. He is presently retained by the majority of counties in New Hampshire to represent them in the Opioid Litigation.  He also advises them on antitrust litigation.  Mr. Bonsignore first drafted the State of Rhode Island's indirect end use purchaser antitrust laws and advised the City of Providence, Rhode Island throughout the legislative process.

In cases pending in United States federal courts, Mr. Bonsignore has been appointed lead counsel in 3 cases assigned Multi-District Litigation status by the Judicial Panel on Multi-District Litigation.  MDL 1631 consolidated all indirect purchaser anti-trust actions filed nationwide

addressing price fixing in the publication paper industry. MDL 1735 consolidated cases nationwide addressing wage and our violations by Wal-Mart Inc. Both actions in which Mr. Bonsignore was appointed Lead Counsel were settled after being aggressively litigated and received final approval. Mr. Bonsignore presently serves as Lead Counsel in MDL 2566, *In re TelexFree Securities Litigation*.

Mr. Bonsignore has served as a member of the American Antitrust Institute's Board of Directors since 2009. The American Trial Lawyers Association has selected him as a peer reviewed "Top Trial Lawyer" each year since 2007. In 2010, he received the Outstanding Public Service Award from the Ipswich River Foundation. He is a 2010 graduate of the Trial Lawyers College. Mr. Bonsignore served as antitrust advisor to the Chief Counsel for the City of Providence, Rhode Island. Legislation Mr. Bonsignore initially drafted that provided for municipalities and school districts to bring an indirect purchaser antitrust case was eventually signed into law in 2013.

Mr. Bonsignore has successfully tried to verdict several high-profile cases including cases selected by the Association of Trial Lawyers of America (ATLA) as the most outstanding jury verdicts of the year. Legal publications have featured Mr. Bonsignore's success in first obtaining admissions of payoffs to medical reviewers in the Rezulin litigation. Mr. Bonsignore's finding of Sulzer's document destruction in the hip replacement litigation was publicized in the United States and Europe. His work on Sulzer hip litigation also merited a feature story in the European news magazine FACTS, where he was headlined as the "American Killer Lawyer."

Mr. Bonsignore is a past recipient of the F. Scott Baldwin Most Outstanding Young Trial Lawyer in America Award that he received in 1997. He also is a seven-time recipient of the prestigious Wiedemann-Wysocki Citation of Excellence Award that is awarded by the trial bar to the most outstanding members of its ranks. In 1994, he received the Massachusetts Junior Chamber of Commerce Most Outstanding Young Leader Award, and in 1997 he was honored by the Massachusetts Bar Association with the Most Outstanding Young Lawyer Award. In 2005, Mr. Bonsignore was presented with the Joseph Tonihill award that is recognized as the most prestigious award presented by the Association of Trial Lawyers of America for consumer advocacy.

As a past Chair of the Association of Trial Lawyers of America, Young Lawyers Division, Mr. Bonsignore was credited with creating the practice of appointing one man and one woman representative wherever possible in each representative member state, province or country for the purpose of representing the interests of young lawyers to the bar. He created and instituted a program promoting local public service by young lawyers. In recognition of the nature and scope of this undertaking and before its demise, the Association of Trial Lawyers of America Young Lawyers Division, presented the Robert J. Bonsignore Public Service Award to a representative bar group that performs the most outstanding acts of public service.

Mr. Bonsignore previously served on the Boards of the non-profit Trial Lawyers for Public Justice and was a national officer for the Civil Justice Foundation. Mr. Bonsignore is a Life Member of the National Conference of Bar Presidents of the American Bar Association and has served on the Articles and Bylaws Committee since 1999. Mr. Bonsignore has previously served

as a Consumer Advisory Commissioner for the Office of the Attorney General for the Commonwealth of Massachusetts and as an Assistant District Attorney for Middlesex County. Forbes Sky Radio selected Mr. Bonsignore as one of America's Best Lawyers.

**The *Curriculum Vitae* of each lawyer in the firm is available upon request. All inquiries should be directed to:**

**Robert J. Bonsignore**
**Bonsignore Trial Lawyers, PLLC**
**3771 Meadowcrest Drive**
**Las Vegas, NV 89121**
**Telephone:  (781) 856-7650**
**Office: (781) 350-0000**
**Fax: (702) 852-5726**
**E-mail:  rbonsignore@classactions.us**