# Exhibit G

```
 1                UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3                   SAN FRANCISCO DIVISION

 4   - - - - - - - - - - - - - - - - -x

 5   IN RE:  CATHODE RAY TUBE (CRT)   :  MASTER FILE NO.:
     ANTITRUST LITIGATION                07-CV-5944-JST
 6                                    :  MDL NO.: 1917

 7   - - - - - - - - - - - - - - - - -x

 8


 9


10              VIDEOTAPED DEPOSITION OF:

11                DONALD C. CLARK, PH.D.

12                   Washington, D.C.

13                    March 26, 2019

14


15


16


17


18   Reported by:
     Misty Klapper, CRR, RMR
19   Job No.: 265384

20


21


22


23


24


25
```

Case 4:07-cv-05944-JST   Document 5480-8   Filed 05/13/19   Page 3 of 15
Donald Clark, et al.
March 26, 2019                                                                  2

```
 1

 2
                         March 26, 2019
 3                         9:36 a.m.

 4


 5


 6   Held at the offices of:

 7        BAKER BOTTS, LLP
          1299 Pennsylvania Avenue, N.W.
 8        Suite 1000
          Washington, D.C.  20006-6801
 9

10

11

12

13

14

15

16

17

18

19        Taken pursuant to notice, before Misty

20   Klapper, Registered Professional Reporter, Certified

21   Realtime Reporter, and Notary Public in and for the

22   District of Columbia.

23

24

25
```

```
 1    APPEARANCES:

 2          GEOFFREY C. RUSHING, ESQ.
            SAVERI & SAVERI
 3          706 Sansome Street
            San Francisco, California  94111
 4          (415) 217-6810
            E-mail:  grushing@saveri.com
 5                AND
            ROBERT KLIPPER, ESQ.
 6          KELLOGG, HANSEN
            1615 M Street, N.W.
 7          Suite 400
            Washington, D.C.  20036
 8          (202) 326-7936
            E-mail:  rklipper@kellogghansen.com
 9          COUNSEL FOR THE DIRECT PURCHASER
            PLAINTIFFS
10

11          MARK SCHIRMER, ESQ.
            STRAUS & BOIES, LLP
12          4041 University Drive
            Fifth Floor
13          Fairfax, Virginia  22030
            (901) 230-4697
14          E-mail:  mschirmer@straus-boies.com
            COUNSEL FOR THE INDIRECT PURCHASER
15          PLAINTIFFS

16

17          PETER HUSTON, ESQ.
            BAKER BOTTS, LLP
18          101 California Street
            Suite 3600
19          San Francisco, California  94111
            (415) 291-6211
20          E-mail:  peter.huston@bakerbotts.com
            COUNSEL FOR THE DEFENDANT
21    ALSO PRESENT:

22          CHARLIE WIDNER, VIDEO OPERATOR

23

24

25
```

C O N T E N T S

| WITNESS: | EXAMINATION BY: | PAGE: |
|---|---|---|
| Donald C. Clarke | Mr. Rushing | 6 |
| | Mr. Schirmer | 158 |

E X H I B I T S

| NO.: | DESCRIPTION: | PAGE: |
|---|---|---|
| 8426 | Declaration of Donald Clarke | 9 |
| 8427 | Plunkett Ex. 32 | 37 |
| 8428 | Accounting Standards for Enterprise No. 33 | 61 |
| 8429 | Plunkett E. 11 | 65 |
| 8430 | Plunkett Ex. 3 | 85 |
| 8431 | Plunkett Ex. 55 | 91 |
| 8432 | Plunkett Ex. 33 | 118 |
| 8433 | Plunkett Ex. 1 | 133 |
| 8434 | Ministry of Finance Letter | 136 |

*Exhibits marked and attached.

              1                    P-R-O-C-E-E-D-I-N-G-S
              2                    VIDEO OPERATOR:  This is the
              3       videotaped deposition of Donald Clarke, taken
              4       in the matter of in re: Cathode Ray Tube, CRT
              5       Antitrust Litigation, MDL Number 1917, filed
              6       in the United States District Court for the
              7       Northern District of California, San Francisco
              8       Division, Case Number 3:07-CV-05944-JST.
              9                    This deposition is being held at
             10       Baker Botts on March 26th 2019.  My name is
             11       Charlie Widner from U.S. Legal Support and I'm
             12       the video specialist.  The Court Reporter
             13       today is Misty Klapper, also from U.S. Legal
             14       Support.
             15                    We're going on the record at
             16       9:36 a.m.  Counsel has been previously noted
             17       on stenographic record.  The Court Reporter
             18       may now swear in the witness.
             19                    DONALD CLARKE,
             20          The Witness herein, called for
             21    examination by counsel for the Direct Purchaser
             22    Plaintiffs, having been duly sworn, was examined and
             23    testified as follows:
             24
             25

1              EXAMINATION BY COUNSEL FOR THE DIRECT
2              PURCHASER PLAINTIFFS
3              BY MR. RUSHING:
4                  Q.    Good morning, Professor Clarke.
5                  A.    Good morning.
6                  Q.    Is that the way you like to be
7         addressed?
8                  A.    I don't care.
9                  Q.    Okay.  My name is Geoff Rushing.
10        I'm with the law firm of Saveri & Saveri, Inc.
11        I represent, along with others, the Direct
12        Purchaser Plaintiffs class in this case.
13                  Robert Klipper is here with me
14        from the firm -- from the Kellogg Hansen firm
15        and Mark Schirmer is here representing the
16        Indirect Purchaser Plaintiffs class.
17                  Can you please state your full
18        name and spell it?
19                  A.    Donald Clary Clarke,
20        D-O-N-A-L-D, middle name C-L-A-R-Y, last name
21        C-L-A-R-K-E.
22                  Q.    Thank you.
23                  I believe you've had your
24        deposition taken before, so I'm going to run
25        through the rules of the road quickly here.

1         the top of another document, for example, an
2         audited financial report?
3                A.    I could not say.
4                Q.    In paragraph 30 of your
5         declaration you're referring to this exhibit
6         and you say, The document itself is labeled
7         printed by the State-owned Asset Supervision
8         and Administration Commission, indicating
9         SASAC's close connection with Irico Display,
10        not just its grandparent, Irico Group.
11                     Do you see that?
12               A.    Yes.
13               Q.    How -- how does that indicate a
14        close -- a close connection between SASAC and
15        Irico Display?
16               A.    Well, to me, I drew that -- I
17        guess I characterized it as indicating a close
18        connection simply because, you know, for --
19        for the fact that I stated that SASAC is, you
20        know, printing up the form for Irico Display
21        to be using.
22                     And, you know, SASAC does not,
23        to the best of my knowledge, you know, print
24        up the forms for audit reports for enterprises
25        that have nothing to do with the state.

1        documents from the late '90s to show, at least

2        not enough documents that I saw.

3               Q.    Okay.  But my question is, did

4        you in -- in -- if you look at subparagraph

5        D --

6               A.    Yes.

7               Q.    -- the two thousand -- the

8        November 2007 recommendation, which is

9        Irico -- it's the last page of the exhibit --

10              A.    Yes.

11              Q.    -- the document refers to -- I

12       mean, the language in the translation it uses

13       anyway is that the individuals are recommended

14       to be candidates for the various offices.

15                    Do you see that?

16              A.    Yes.

17              Q.    But then later in that paragraph

18       you characterize the recommendations as, in

19       fact, instructions.

20                    Do you see that?

21              A.    Yes.

22              Q.    And the inference -- you -- you

23       infer that they were, in fact, instructions

24       based on the fact that -- that they were

25       all -- they all assumed the positions to which

1    they had been nominated, correct?
2           A.   Yeah, that that, you know, kind
3    of makes it evident that they were
4    instructions.
5           Q.   Right.  And that's -- and -- and
6    that opinion is based solely on the fact that
7    they eventually were listed as having those
8    jobs in the annual report you referred to?
9           A.   I wouldn't say based solely,
10   because, I mean, you're -- you're correct that
11   for the '90s I don't have a piece of evidence
12   that shows these instructions or these
13   nominations were ever, you know, actually
14   effectuated.
15                    But I would be extremely
16   surprised if they had not been because, you
17   know, just from, you know, what we know about
18   Irico Group's relationship with -- sorry,
19   Irico Display's relationship with -- with
20   Irico Group and just, you know, frankly, you
21   know, what -- what I know about corporate
22   governance in general.
23                    So for -- let me give you an
24   example.  Probably maybe about ten years ago
25   there were -- the -- the state decided to do

1       some reorganizing of China's mobile telephone
2       industry.  And I think there were about three
3       companies in that industry, all of which were
4       publicly listed companies.
5                 And they did a -- a kind of a
6       musical chairs where the head of company A
7       went to B and B went to C and I think C went
8       over to A.  And, you know, that was all done
9       very clearly pursuant to a state policy.
10                You know, relevant instructions
11      were given.  I'm sorry to use the passive
12      rather than the active, because I don't know
13      who actually gave them, but, you know,
14      instructions were given that this is going to
15      happen.  Board of directors votes were made to
16      make these appointments happen.
17                You know, and everybody kind of
18      understands that in a state, you know,
19      controlled corporation like that, even if it's
20      publicly listed, you know, when you get
21      instructions from -- you know, that have been
22      clearly -- you know, by senior management that
23      come from the party personnel department, that
24      this is what you do.
25           Q.   Okay.

         1               A.      So that's just kind of the
         2       background from which I'm working when I look
         3       at these documents and see these things.  And
         4       that's kind of the background, you know,
         5       knowledge that I'm bringing to it.
         6               Q.      But you have no -- there's no
         7       evidence to suggest that these people were not
         8       qualified for the jobs they were nominated to,
         9       correct?
        10               A.      Correct.
        11               Q.      And did you inquire -- did you
        12       make -- and -- and -- strike that.
        13                       And did you inquire as to
        14       whether the proper corporate procedures were
        15       followed as specified, for example, in the
        16       Articles of Association as to this appointment
        17       in November of 2007?
        18               A.      November 2007.  No, I assume
        19       that the proper procedures were followed and
        20       the shareholders voted as they were supposed
        21       to vote or the directors voted as they were
        22       supposed to vote.
        23                       You know, people not following
        24       instructions is very rare.  I mean, everybody
        25       kind of understands what you're supposed to

```
 1       do.
 2               Q.    Okay.  All right.  I understand
 3       that, but -- but in terms of these specific
 4       appointments to Display --
 5               A.    Right.
 6               Q.    -- the people nominated were --
 7       strike that.
 8                     Do you have any evidence that as
 9       to these specific people appointed or --
10       strike that.
11                     As to these individuals
12       nominated in November 2007, do you have any
13       specific evidence that they were not legally
14       appointed to their positions pursuant to the
15       company law and the Articles of Association of
16       Display?
17               A.    No, I -- I don't think so.
18       That's not my kind of claim at all, that there
19       was something illegal about it.
20                     So, for example, if we look at
21       paragraph D, we see Irico Group, which is at
22       that time, I think, the grandfather in a
23       sense, not the direct parent, but the parent's
24       parent, of Irico Display saying here's the
25       person we think should be general manager,
```

1       here's the person we think should be deputy
2       general manager.  Those are board
3       appointments.
4                       So, you know, who -- who is
5       reading this document?  The person that's
6       reading this document are the members of the
7       board of Irico Display, you know, who are
8       basically appointed, again, by Irico Group.
9       And they see these instructions and these are
10      what their superiors are telling them to do
11      and -- and then they do it.
12                      And the way they obey the
13      instruction is to cast the necessary vote.
14      You know, they have a board meeting and they
15      say okay, so we've been told to appoint this
16      guy as general manager, this guy as deputy
17      general manager, this person as chief
18      financial officer, you know, everybody in
19      favor, raise their hand.  And they'll all
20      raise their hand.  That is how I picture the
21      process going.
22                      Irico Group cannot, you know,
23      simply by issuing a document, you know, put
24      this manager on the payroll, you know.  That
25      has to be -- you know, there has to be the

```
 1      formal board resolution, especially because
 2      it's a listed company.
 3           Q.    Right.  And so it's your
 4      expectation that the proper procedures were
 5      followed in this case?
 6                 MR. HUSTON:  Objection, asked
 7      and answered.
 8                 THE WITNESS:  Yes, I -- I think
 9      it's very likely the proper procedures, you
10      know, the formal procedures were followed.
11           BY MR. RUSHING:
12           Q.    Okay.  Did you review the
13      Articles of -- strike that.
14                 Have you reviewed -- strike
15      that.
16                 Did you review the Display
17      Articles of Association as part of your work
18      in preparing this declaration?
19           A.    Yeah, my recollection is that
20      I -- I looked at some of it, some of the
21      Articles.  I believe I had that document
22      available to me in Chinese in any case.
23      That's my recollection.  I -- I don't think I
24      cite it in my declaration, so that's why I
25      can't recall for sure.
```