Pages 1 - 55

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JON S. TIGAR, JUDGE

IN RE: CATHODE RAY TUBE (CRT) )
ANTITRUST LITIGATION          ) Master File No. 07-CV-5944-JST
_____) MDL No. 1917

                                San Francisco, California
                                Thursday, June 6, 2019

### TRANSCRIPT OF PROCEEDINGS

**APPEARANCES**:

For Indirect Purchaser Plaintiffs:
                        TRUMP ALIOTO TRUMP & PRESCOTT LLP
                        2280 Union Street
                        San Francisco, California 94123
                BY:  **MARIO NUNZIO ALIOTO, ESQ.**
                     **JOSEPH MARIO PATANE, ESQ.**

                        LAW OFFICES OF FRANCIS O. SCARPULLA
                        456 Montgomery Street, 17th Floor
                        San Francisco, California 94104
                BY:  **FRANCIS ONOFREI SCARPULLA, ESQ.**
                     **PATRICK B. CLAYTON, ESQ.**

For Objectors Rockhurst University, Harry Garavanian, and Gary
Talewsky:
                        LAW OFFICES OF THERESA D. MOORE
                        One Sansome Street, 35th Floor
                        San Francisco, California 94104
                BY:  **THERESA D. MOORE, ESQ.**

                        NEDEAU LAW GROUP
                        154 Baker Street
                        San Francisco, California 94117-2111
                BY:  **CHRISTOPHER A. NEDEAU, ESQ.**

(Appearances continued on next page)

Reported By:   Katherine Powell Sullivan, CSR #5812, CRR, RMR
               Official Reporter - U.S. District Court

**APPEARANCES:**

For Objector/Class Member Eleanor Lewis:
      COOPER & KIRKHAM, P.C.
      357 Tehama Street, Second Floor
      San Francisco, California 94103
   BY:  **TRACY R. KIRKHAM, ESQ.**
      **JOHN DMITRY BOGDANOV, ESQ.**

For the Omitted Indirect Purchasers:
      BONSIGNORE TRIAL LAWYERS, PLLC
      3771 Meadowcrest Drive
      Las Vegas, Nevada 89121
   BY:  **ROBERT J. BONSIGNORE, ESQ.**

For Indirect Purchaser Plaintiffs:
      BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER
      2125 Oak Grove Road, Suite 120
      Walnut Creek, California CA 9459
   BY:  **DANIEL E. BIRKHAEUSER, ESQ.**

Co-Counsel for Objector Dan L. Williams & Co.:
      CRABTREE & AUSLANDER
      240 Crandon Blvd., Suite 101
      Key Biscayne, Florida 33149
   BY:  **JOHN G. CRABTREE, ESQ.**

      SHEFTALL AND TORRES, P.A.
      One S.E. Third Avenue, Suite 3000
      Miami, Florida 33131
   BY:  **BRIAN MICHAEL TORRES, ESQ.**

Attorney for Indirect Purchaser Plaintiffs:
      KIRBY MCINERNEY LLP
      600 B Street, Suite 2110
      San Diego, California 92101.
   BY:  **ROBERT J. GRALEWSKI, JR., ESQ.**

Attorney for Indirect Purchaser Plaintiffs:
      FREEDMAN BOYD HOLLANDER GOLDBERG URIAS
       & WARD PA
      20 First Plaza, N.W., Suite 700
      Albuquerque, New Mexico 87102
   BY:  **JOSEPH GOLDBERG, ESQ.**

**APPEARANCES:**

For Samsung SDI Defendants:

                ALLEN & OVERY LLP
                1221 Avenue of the Americas
                New York, New York 10020
        **BY:  ANDREW RHYS DAVIES, ESQ.**

For the Panasonic Defendants:

                WINSTON & STRAWN LLP
                1700 K Street, N.W.
                Washington, D.C. 20006
        **BY:  KEVIN B. GOLDSTEIN, ESQ.**

For to Toshiba Defendants:

                WHITE & CASE LLP
                701 Thirteenth Street
                N.W.Washington, DC  20005
        **BY:  CHRISTOPHER M. CURRAN, ESQ.**
              **MATTHEW N. FRUTIG, ESQ.**

For Defendant Mitsubishi Electric Corporation:

                JENNER & BLOCK LLP
                353 North Clark Street
                Chicago, Illinois 60654-3456
        **BY:  MICHAEL T. BRODY, ESQ.**

For Philips Defendants:

                BAKER BOTTS LLP
                1299 Pennsylvania Ave., N.W.
                Washington, DC 20004-2402
        **BY:  ERIK T. KOONS, ESQ.**

For Defendants Thomson SA and Thomson Consumer Electronics, Inc.:

                FAEGRE BAKER DANIELS LLP
                300 N. Meridian Street, Suite 2700
                Indianapolis, Indiana 46204
        **BY:  KATHY L. OSBORN, ESQ.**

For Hitachi Defendants:

                KIRKLAND & ELLIS LLP
                555 California Street, 27th Floor
                San Francisco, California 94104
        **BY:  ELIOT A. ADELSON, ESQ.**

**<u>APPEARANCES:</u>**

For Defendant Technologies Displays Americas LLC:
                           SQUIRE PATTON BOGGS (US) LLP
                           275 Battery Street, Suite 2600
                           San Francisco, California  94111
                  BY:  **DONALD A. WALL, ESQ.**

**Thursday - June 6, 2019**                                    **2:02 p.m.**

**P R O C E E D I N G S**

---000---

**THE CLERK:**  Your Honor, now calling Case Number 07-5944, MDL number 1917, in regards to Cathode Ray Tube Antitrust Litigation.

If counsel could please come forward and state your appearances.

**THE COURT:**  Oh, my goodness, no, we'll be here all day.  Let's just have the record reflect counsels' appearances.

Good afternoon, everybody.  We have a lot to talk about today.  And I'm going proceed in a way that's slightly different than I've done before.

I'm going to ask you in just a second to confirm just a fact that I think is correct, that bears on some of the motions this afternoon, and then I'm going to read a tentative ruling.

The tentative ruling is going to take a little while, but I think it's worth it because it will frame this afternoon's discussion.

It has sometimes been my experience, not just in this case but in other cases that had very many counsel, all of whom want to be heard, and there are a lot of moving parts, the time evaporates, and I find that many of the questions that were important to me in making a decision have not been discussed, much less answered.  And I would like to avoid that today.

1    Following my reading of the tentative ruling, I will

2    invite the parties to make argument, and I'll divide up the

3    time.

4    The most tentative thing that I'll say is the division of

5    time because I won't know until after I've finished my

6    tentative ruling which parts folks don't have much of a problem

7    with and which part they take strenuous objection to.

8    But, tentatively, I would hear argument first on the

9    Scarpulla group's -- what I'll call the Scarpulla group's

10   motion to represent the omitted repealer states.  And then I

11   would take argument on the Kirkham motion to represent the

12   non-repealer states.  And then I would take argument on the

13   motion to set aside the 2010 stipulation.

14   I would give ten minutes to the moving party and ten

15   minutes to the defendants on the first motion, also on the

16   second motion, and then 15 minutes to the Scarpulla group and

17   15 minutes to the defendants on the last motion.

18   I'm aware that other persons or other parties, besides

19   those that I've identified, filed papers in connection with

20   these motions.  But as I think you'll see from the tentative

21   comments, the tentative ruling, it won't be necessary for those

22   parties, I don't think, to make argument today.

23   That will leave a little bit of time for additional

24   argument, but not that much.  So I anticipate there will be

25   some wiggle room to accommodate requests for argument other

1  than what I've identified, but, as I say, not much.

2       Here's the factual question:  Am I correct that there are

3  not class representative for the six new omitted repealer

4  states and the 20-some non-repealer states?

5       That's factually correct, isn't it?

6            MR. BONSIGNORE:  No, there are.  They've been waiting

7  in the wings.

8            THE COURT:  Would you say your name, please.  I know

9  your name, but say it for the record.

10            MR. BONSIGNORE:  Oh, I'm sorry.  Robert Bonsignore.

11            THE COURT:  While they're waiting in the wings,

12  they're not -- they're far enough in the wings that they're not

13  presented in the papers in front of me, true?

14            MR. SCARPULLA:  Correct.

15            MR. BONSIGNORE:  I believe that's correct.

16            THE COURT:  Okay.  That's the question.

17            MS. KIRKHAM:  Your Honor, you asked about the 22

18  non-repealer states?

19            THE COURT:  I did.

20            MS. KIRKHAM:  Yes, there is a class rep, Eleanor

21  Lewis.

22            THE COURT:  I'll address that.

23            MS. KIRKHAM:  That group are not -- they're a federal

24  court -- I mean, a federal law group.  They're not like the

25  state law people.  There are no --

1          **THE COURT:**  Ma'am -- ma'am, you're arguing the point.

2          **MS. KIRKHAM:**  I'm just saying that there only needs --

3          **THE COURT:**  Stop.

4          **MS. KIRKHAM:**  -- to be one rep.

5          **THE COURT:**  Please sit down.  Please sit down.

6      That's Ms. Kirkham.

7      All right.  I apologize in advance for the length of these

8  remarks.  I hope they'll have the effect of framing our

9  discussion.

10     Anyone who agrees with the tentative rulings I'm about to

11 express doesn't need to make any argument today.  Anyone who

12 does make argument today should address the tentative or

13 explain why there is a material argument that I've not

14 addressed.

15     If I adopt this tentative ruling, then the transcript of

16 today's proceedings will serve as the record for the Court's

17 reasons, and the rulings will be set forth in extremely short

18 form on the docket.

19     There are three motions before me today.  First, the

20 Scarpulla firm, Theresa Moore, and Robert Bonsignore move for

21 appointment as interim co-lead counsel for the so-called

22 indirect purchaser omitted repealer states.

23     Second is Tracy Kirkham and Cooper & Kirkham's motion to

24 serve as interim co-lead counsel for the so-called non-repealer

25 states.

1    Last is the motion of the Scarpulla group to vacate or

2    clarify the 2010 stipulation and order that appears at docket

3    number 799.

4    Turning first to the motion regarding the omitted repealer

5    states, the motion seeks to appoint counsel not only for the

6    three repealer states that were the subject of the appeal to

7    the Ninth Circuit, which is Massachusetts, New Hampshire, and

8    Missouri, but also six additional states, Arkansas, Montana,

9    Oregon, Rhode Island, South Carolina, and Vermont.  I'll refer

10   to those as the six new states.

11   Repealer states are states that have passed statutes

12   permitting indirect purchasers to sue for damages under state

13   antitrust laws.  Those states are also called *Illinois Brick*

14   repealer states in reference to the Supreme Court decision

15   establishing indirect purchasers may not sue under the federal

16   antitrust laws.

17   Certain objections and caveats are asserted in response to

18   this motion.  Defendants request that such appointment, if

19   made, extend only to the claims against the defendants that

20   were included in the settlement, meaning the defendants that

21   were included in the settlement that was appealed to the Ninth

22   Circuit.

23   This would preclude, for example, appointment in either

24   the Luscher matter, which is case number 17-CV-04067, or with

25   regard to the already-completed Chunghwa settlement.

1      Defendants also object to any appointment for counsel

2   related to claims in the six new states, contending that such

3   appointment would exceed the scope of the Ninth Circuit's

4   mandate.

5      No one appears to oppose the limitation of any

6   appointment -- excuse me.

7      No one appears to oppose the appointment as counsel for

8   residents of Massachusetts, New Hampshire, or Missouri, as to

9   claims against the defendants whose claims were resolved by the

10  IPP settlement.  And the Court would make that appointment and

11  would adopt that limitation in its order.

12     However, the Court rejects the argument regarding the

13  Ninth Circuit's mandate.  That argument is a technical argument

14  that is factually wrong in its reading of the mandate and

15  legally wrong in its understanding of class action law.

16     It is factually wrong because the Ninth Circuit did not

17  remand the case solely for this Court to consider the

18  settlement as it pertains to the so-called omitted repealer

19  states.

20     It remanded the case, as it said plainly on page 11 of its

21  remand order, so that the District Court may reconsider its

22  approval of the settlement.

23     It meant the entire settlement, not only because that is

24  the most obvious meaning of the Ninth Circuit's language, but

25  also because -- and this is why I say the defendants' argument

1    is legally wrong -- the Court cannot enforce only those aspects

2    of a class settlement that it likes or refuse to enforce the

3    parts it doesn't like.  It can only approve or disapprove the

4    settlement in toto.

5        The fact that no class member from any of the six new

6    states, the six new non-repealer states, objected to the prior

7    settlement, as noted by the defendants, is no longer relevant

8    once that settlement is no longer under consideration.

9        If the Court disapproves the settlement, it must identify

10   the parts that are objectionable.  But the settlement rises and

11   falls as a whole.

12       Similarly, the defendants' citation to *Reyn's Pasta Bella*,

13   442 F.3d 741, a Ninth Circuit case from 2006, is not helpful.

14   That court held that the settlement of a separate case

15   involving certain claims extinguished -- involving separate

16   claims extinguished similar claims in a later case.

17       That case has no application to the situation here, which

18   involves a settlement in the same case, which settlement is

19   about to be vacated, probably.

20       Thus, if this Court withdraws its approval of the IPP

21   settlement, as it probably will, then every indirect purchaser

22   claim against the defendant parties to that settlement that

23   would otherwise have been extinguished by the settlement will

24   then be revived.

25       If claims on behalf of the residents of the six new states

were alive in the case prior to the IPP settlement, then those

residents need to be represented.  If the IPP settlement

released their claims without compensation, then they need to

be represented by counsel other than lead counsel for the

indirect purchaser plaintiffs.

We know from the Second Circuit's opinion in *In Re Payment

Card Interchange Fee and Merchant Discount Antitrust

Litigation*, 827 F.3d 223 at 231, as well as "The Manual for

Complex Litigation, Fourth," at Section 21.23, that when

subclasses have sufficiently different and antagonistic

interests in the litigation, they cannot be represented by the

same counsel.

Such is the case here.  Because defendants care only about

the total amount to be paid in settlement, as any defendant

would, and because the three categories of claimants here --

repealer states, omitted repealer states, and non-repealer

states -- have claims of such potentially different values,

they need separate representation.

There is, however, an additional impediment to the

appointment of counsel in the six new states; that is, proposed

interim class counsel has not identified class representatives.

In 1990, someone named Jean Wegman Burns wrote an article

for the "Hastings Law Review" suggesting that we do away with

the need for class representatives.  But other than that

article, which only makes a suggestion, I'm not aware of any

1   authority permitting the appointment of class counsel alone

2   without a client acting as a proposed class representative.

3        The Scarpulla firm and the group that has been put

4   together is qualified to represent the proposed subclass.  No

5   one argues otherwise.  I don't think there's much doubt of

6   that.  But I conclude, nonetheless, the motion has to be denied

7   without prejudice as to the six new states.  It can be granted

8   as to the three -- I don't want to say old states, but you know

9   what I mean.

10       Next is Tracy Kirkham and Cooper & Kirkham's motion to

11   represent a subclass of so-called non-repealer states.  These

12   are states that have not passed statutes permitting indirect

13   purchasers to sue for violation of state antitrust laws.

14       Ms. Kirkham, a moment ago, on the record, stated that this

15   is a federal class.

16          **MS. KIRKHAM:**  (Inaudible.)

17          **THE COURT:**  I don't know that I am able to address

18   that point this afternoon.

19       But in Footnote 1 of her motion, she identifies the

20   relevant states as Alabama, Alaska, Colorado, Connecticut,

21   Delaware, Georgia, Idaho, Illinois, Indiana, Kentucky,

22   Louisiana, Maryland, New Jersey, Ohio, Oklahoma, Pennsylvania,

23   Texas, Virginia, Washington, and Wyoming.

24       Ms. Kirkham and her firm already represent Steven Ganz,

25   who is a resident of California.  California is a repealer

state whose residents can sue as indirect purchasers for the violation of state antitrust laws.

On March 11 of this year, Ms. Kirkham entered an appearance for Eleanor Lewis, an indirect purchaser from the state of Ohio.  The motion presents three issues, and that is Ms. Kirkham's motion:

First, do these states need representation at all?

Secondly, would Ms. Kirkham be adequate counsel for these states?

And, third, is the Court limited in its consideration of her motion to the mandate issued by the Ninth Circuit as the defendants urge?

The first and third questions are related.  As I said before, the defendants' mandate argument is not persuasive or, in my view, even particularly well-grounded in the law or the facts.

Thus, as I said before, if this Court withdraws its approval of the IPP settlement, every indirect purchaser claim against the defendant parties to that settlement that would otherwise have been extinguished by the settlement will then be revived.

If claims on behalf of the residents of non-repealer states were alive in the case prior to the IPP settlement -- "alive" meaning someone was asserting those claims -- then those residents need to be represented.

1    As with the other set of claims I discussed a moment ago,

2  if the IPP settlement released the repealer state claims

3  without compensation, then they need to be represented by

4  counsel other than current lead counsel for the indirect

5  purchaser plaintiffs for the reasons I explained a moment ago.

6    Let me be very clear -- departing from my own script --

7  I've said from the bench before, I don't think non-repealer

8  state claims have value, myself.  And by that, what I have

9  meant to say before is, without reaching any final opinion on

10  the point, based on the understanding that I do have, if the

11  claims were tried to conclusion, I don't think the plaintiffs

12  would prevail.

13    But that is a separate question from the question of

14  whether a claim that is released has value.  And I continue to

15  feel, as I stated in the order that led to the mandate, that

16  where the defendants insist on release as a condition of

17  settlement, it has value in an amount that only the parties can

18  ascertain.

19    And to the extent that I have said otherwise in a prior

20  order with regard to any of these claims, and that is that they

21  have no value under any circumstances, I again disavow that

22  ruling.

23    Which brings me to the question of whether Ms. Kirkham is

24  an appropriate representative for this class.  I conclude she

25  is not for two reasons:

1        First, she has a conflict.

2        If the reason I believe separate counsel is appropriate is

3    because the claims of residents in repealer states are

4    fundamentally different from those in non-repealer states, I

5    don't see -- and I didn't see it explained in writing; although

6    perhaps Ms. Kirkham will explain it this afternoon -- how she

7    can square her representation of Mr. Ganz, who lives in a

8    repealer state, with her representation of a resident of

9    non-repealer states.

10        In settlement negotiations with defendants who intend to

11    pay a single sum, those two claims are in conflict.

12        That Mr. Ganz may have purported to waive any conflict is

13    not relevant to that analysis.  It might be relevant, but it's

14    certainly not dispositive.

15        Second, putting the conflict problem to one side -- and

16    this is probably more of a question than a conclusion -- I'm

17    not sure whether Ms. Lewis is an adequate representative of the

18    claimants of every state, although I suppose she might be.  But

19    that doesn't change my first point about the existence of a

20    conflict.

21        So for those reasons, that motion would be denied without

22    prejudice either to Ms. Kirkham or somebody bringing a motion

23    to represent the non-repealer states.

24        The last motion is to vacate or clarify the 2010

25    stipulation and order that appears at docket number 799.

1    Defendants make the same argument regarding the scope of

2    the Ninth Circuit's remand.  I don't have anything more to say

3    about that except that that is not an impediment to my

4    considering that motion.

5    I've not been called upon to decide a question like this

6    before, but I conclude that I do have the authority to vacate

7    the stipulation and order for good cause, citing *City of*

8    *Los Angeles Harbor Division versus Santa Monica Bay Keeper*, 254

9    F.3d 882 at 885.

10   I wondered to myself whether the fact that the order was

11   entered pursuant to a stipulation might affect my authority,

12   because the stipulation is in the nature of a contract between

13   the parties.  And I wondered if concepts such as "bargained

14   for" a "consideration" might be relevant.

15   These topics are not addressed in the papers.  And my

16   research into the question was superficial, but, ultimately, I

17   concluded that the fact that the order arose from the

18   stipulation was not an impediment.

19   I'm getting a little ahead of myself.

20   Before I can reach that point, I need to answer the

21   question posed by the *City of Los Angeles* case as to whether

22   there's good cause.  And I conclude that there is.

23   Because no class had yet been certified at the time that

24   the order was entered, the stipulation could not bind any

25   absent class member.  Everyone agrees on this point.  People

1    are falling all over themselves in the papers to amplify this

2    point.

3        But, nonetheless, the stipulation had the apparent effect

4    of weakening the settlement position of certain states leading

5    up to the IPP settlement.  In order to avoid a repetition of

6    that result, I think the stipulation has to be vacated.

7        Returning to the question of whether the fact that the

8    order arose from a stipulation diminishes the Court's power to

9    set the order aside, I would cite the Ninth Circuit's decision

10   in *Mathison* -- M-a-t-h-i-s-o-n -- *versus Hill Haven*

11   *Corporation*, 895 F.2d 1417, 1990, in which the Ninth Circuit

12   quoted the Seventh Circuit to the effect that although

13   stipulations are to be encouraged in order to economize on the

14   cost of litigation, the judge has the power to relieve a party

15   from a stipulation when it is reasonable to do so.

16       And this reflects decisions in the D.C. Circuit and the

17   Seventh Circuit.

18       Both the Scarpulla group and the defendants urge the

19   Court, if it sets the 2010 stipulation and order to one side,

20   to make various predictions about whether the Scarpulla group

21   or other plaintiffs will or will not be successful in bringing

22   additional claims in the future because of statute of

23   limitations or other concerns.

24       To make any comment or ruling about whether any class

25   member could bring additional claims at this point would be an

1    advisory ruling, which I will not provide.

2          But ruling on the sole question before me, I would grant

3    the motion and set the 2010 stipulation and order to one side.

4          That concludes the Court's tentative ruling.

5          Would anyone like to request that the Court adjust the

6    time limits that I stated earlier?

7          All right.  Ms. Moore, will you be arguing on behalf of

8    the Scarpulla group with regard to the appointment of co-lead

9    counsel for the omitted repealer states?

10         **MS. MOORE:**  I think Mr. Scarpulla will start with that

11   argument, Your Honor.

12         **THE COURT:**  All right.  Mr. Scarpulla, I invite you to

13   the microphone.

14         **MR. SCARPULLA:**  Yes, Your Honor.

15         The only thing I wanted to suggest to Your Honor was that

16   for the six states, we have retainer agreements for four of

17   them and anticipate that we will have the other two by the end

18   of this week.  And then we'll file notices of appearance for

19   all of the repealer states.

20         **THE COURT:**  Do you think it's relevant to the Court's

21   consideration whether to appoint lawyers as interim co-lead

22   counsel that the Court have any facts about the proposed

23   putative class representatives before it makes that order?  Do

24   you think I need that information or should have it?

25         **MR. SCARPULLA:**  I do not think so, Your Honor, because

1   there are a number of cases which hold that at the beginning of

2   the process it is not necessary to have a class representative

3   for each state in order to survive a motion -- a 12(b)(6)

4   motion to dismiss, but rather at the time of certification then

5   you're required to have a -- a class representative for each of

6   the repealer states.

7        That was until -- and I haven't read it carefully

8   enough -- until the Ninth Circuit decided this morning the

9   *Hyundai* case, where they held that it was appropriate to

10   certify a nationwide class for different states with different

11   laws under the law of the state of California.

12        So I respectfully request that we be permitted to review

13   that carefully.  As I say, I skimmed it because it's a very

14   long opinion.  I just got it.

15        But I don't think it's necessary for Your Honor to have a

16   class -- a named class representative for each of the states.

17        **THE COURT:**  The objection to the lack of named class

18   representatives was made in opposition to your motion, was it

19   not?

20        **MR. SCARPULLA:**  Yes.

21        **THE COURT:**  And you've indicated a moment ago there is

22   authority that says that that concern should not trouble the

23   Court; right?

24        **MR. SCARPULLA:**  Correct.

25        **THE COURT:**  Did you cite that authority in your reply

brief?

     **MR. SCARPULLA:**  We didn't, Your Honor, because it -- I don't believe we did.  We didn't think that was a real serious issue.

  But there are a number of cases.  I think the latest one is from the Court in Philadelphia, in the --

     **THE COURT:**  I don't dispute the point.

     **MR. SCARPULLA:**  Oh, okay.

     **THE COURT:**  I'm just telling you that I'm hearing it -- I just want to make sure I'm hearing it for the first time.  That's all.

     **MR. SCARPULLA:**  Yes.

     **THE COURT:**  I'm not taking a position.

     **MR. SCARPULLA:**  Right.  Okay.

     **THE COURT:**  Okay.

     **MR. SCARPULLA:**  Thank you, Your Honor.

     **THE COURT:**  Defendants want to be heard?

     **MR. DAVIES:**  Thank you, Your Honor.

  Andrew Rhys Davies representing the Samsung SDI defendants and speaking for all the defendants this afternoon.

  To address the point that was discussed just a moment ago, we do think that there has to be a class representative for each state.  And that is the law of this case, in fact.  It was decided in 2010 in the context of the motion to dismiss the second amended complaint.

1        Judge, I would like to address the tentative ruling with

2   respect to the rule of mandate issue.

3            **THE COURT:**  Yes.

4        **MR. DAVIES:**  Judge, no one from any of the six new

5   states objected and filed an appeal from the settlement

6   approval order.

7        There was an appeal from a resident of Rhode Island, but

8   her appeal was not effected.  She abandoned it.

9            **THE COURT:**  Yes.

10           **MR. DAVIES:**  The movant said it right in their papers.

11  We are here on limited remand from the Ninth Circuit.

12           **THE COURT:**  May I ask you a question?

13           **MR. DAVIES:**  Yes, Your Honor.

14           **THE COURT:**  What legal effect does the lack of

15  objection have?  Are they now bound by that settlement?

16           **MR. DAVIES:**  Yes, they are, Your Honor, as the --

17           **THE COURT:**  How is that possible?  I'm going to vacate

18  that settlement.  They're going to be the only ones bound by

19  it?

20           **MR. DAVIES:**  Well, Your Honor, I would like to get to

21  that point --

22           **THE COURT:**  I'll let you do that.

23           **MR. DAVIES:**  -- because my argument, it's not going to

24  surprise you, is that you should not vacate the settlement in

25  its entirety.

1    And so the first point, there not having been an appeal

2    from any of the purchasers in these six states, is that the

3    court of appeals could not have extended appellate relief to

4    anyone in those states, cannot extend appellate relief to

5    someone who does not appeal that.

6         **THE COURT:**  That point is uncontroversial.

7         **MR. DAVIES:**  And then we look at what the Ninth

8    Circuit actually said.

9         These appellants, the three appellants from the three

10   admitted repealer states, certainly asked the Ninth Circuit to

11   vacate the settlement approval order in its entirety.  The

12   Ninth Circuit didn't do that.

13        **THE COURT:**  The Ninth Circuit hasn't done anything.

14        **MR. DAVIES:**  Well, Your Honor, there was a request --

15        **THE COURT:**  Some of the judges made comments -- I will

16   try to limit my interruptions, but I -- in fact, actually, I

17   won't make any interruptions.  I'm going to allow you to finish

18   your argument.

19        I just need to tell you that from the inception of this

20   portion of the case, and that is from the moment it came back

21   to me on remand, there have been many suggestions by the

22   defendants that there are parts of the settlement that they

23   wanted to keep and parts of the settlement they thought could

24   be reopened.

25        And that is just so diametrically at odds with my

1   understanding of how class action settlements work and what my

2   authority is, that it would behoove you to explain to me, if

3   that's where you're going, how that's possible.

4           **MR. DAVIES:**  Yes, Your Honor --

5           **THE COURT:**  And I'll let you finish.

6           **MR. DAVIES:**  I'll do that right now.

7       Your Honor, the objectors have pointed to language in the

8   settlement agreement that says that the settlement isn't final

9   unless it's approved in its entirety.

10      And they've also suggested, based on this

11  stand-or-fall-in-its-entirety language in the Ninth Circuit

12  cases that the Court has a choice, a binary choice.  It's

13  approve the entire thing or reject the entire thing.  I think

14  that is not right.

15      The Court has the authority, with the agreement of the

16  settling parties, if need be, to narrow the release to address

17  the discrete issue that has been identified by Your Honor

18  regarding the three omitted repealer states.

19      It is true that the defendants have an option to terminate

20  the settlement in its entirety if there is not a complete

21  approval.  The defendants have not exercised that option.

22      And we think that the appropriate course at this point, if

23  we could suggest to Your Honor, is to appoint counsel for the

24  three omitted repealer states, then to order those counsel, the

25  newly appointed counsel, and the defendants and the IPPs to

mediate before Judge Corley to see whether there can be a

resolution to that three-state issue.

And if that's where we end up, the next step is to set a

deadline for the newly appointed counsel to move to intervene

and to move to amend the complaint.

But we think the Court does not have just that binary

choice, approve or disapprove.  The settlement can be salvaged,

and it should be, for the benefit of the purchasers in the 22

states who are not being paid while all this goes on.

And, Your Honor, I think I was not being persuasive, but

if I could just finish the point I was making about the scope

of the Ninth Circuit's mandate.

As I said, the appellants from the three omitted repealer

states asked the court of appeals to vacate the settlement

approval order in its entirety.

What the Ninth Circuit wrote in its order is:  "We do not

vacate the order at this time."  Instead, what the Ninth

Circuit did was to refer to Your Honor's comments about the

fact that Massachusetts, Missouri, and New Hampshire were being

released without compensation.  Then they said:  "We,

therefore, remand for reconsideration of the settlement

approval order."

So we have a wherefore, the three states, and we have a

therefore, the remand for reconsideration of the settlement

approval order.

1      And in addition to that, Your Honor, what the panel did

2  was to send the appellants from the three states and the

3  defendants and the IPPs to mediate.  That would have made

4  absolutely no sense if what the court of appeals thought needed

5  to happen was the entire settlement needed to go away.

6      What that shows is that the Ninth Circuit was focused on a

7  three-state solution for a three-state problem.

8      Thank you, Judge.

9          **THE COURT:**  Let me ask you a couple of questions.

10          **MR. DAVIES:**  Yes, Judge.

11          **THE COURT:**  You used the phrase "settling parties."

12  Do you remember?

13          **MR. DAVIES:**  Yes, Your Honor.

14          **THE COURT:**  To whom does that phrase refer?

15          **MR. DAVIES:**  In the context of the settlement

16  agreement, which is when I think I used it, it means the

17  defendants and the IPPs.

18          **THE COURT:**  Does it mean anybody whose claims were

19  released by the settlement?  Is that party a settling party?

20          **MR. DAVIES:**  Uhm, I think what it means is lead

21  counsel for these purposes.

22      What I have in mind, Your Honor --

23          **THE COURT:**  "Settling parties" means lead counsel?

24          **MR. DAVIES:**  Well, I'm talking about the people who

25  entered into that settlement agreement, which is lead counsel

1    and the defendants -- lead counsel on behalf of the class.

2         And so what I have in mind is the possibility, Your Honor,

3    that we could come to an agreement -- I mean, perhaps there

4    will be a global settlement.

5         Leaving aside that possibility, what we could have is an

6    agreement to carve out the three omitted repealer states in

7    exchange for a payment back to the defendants that would then

8    leave those states free to move to intervene and to file an

9    amended complaint.  That is what I have in mind.

10        There would be no effect on the other parties to the

11   settlement because nothing will be changing.  All that will be

12   happening is that the three states that said they wanted out of

13   the release will be getting out of the release.

14        **THE COURT:**  I'm familiar with the law that says that

15   when certain parties to a class action settlement agreement

16   want to modify the agreement in a way that affects their own

17   rights and obligations but leaves the rights and obligations of

18   remaining class members or other parties intact, that that is

19   permissible.  I am aware of that law.

20        You also noted that the Ninth Circuit, in its remand

21   order, said that it did not vacate the Court's approval order

22   at this time --

23        **MR. DAVIES:**  Correct.

24        **THE COURT:**  -- which is what it did say on page 12.

25        What do you think the Ninth Circuit meant by the phrase

1   "at this time"?

2       **MR. DAVIES:**  I think that the Ninth Circuit was

3   sending this back to Your Honor to deal with the three-state

4   issue that Your Honor identified and that the Ninth Circuit

5   referenced in its order.

6       And if that three-state issue cannot be resolved, then

7   perhaps the Ninth Circuit was telegraphing that perhaps at some

8   point it might be necessary to rescind the entire settlement

9   approval order.

10      But that's not where we are yet, and that's not where we

11   should be, because we should be making every effort to preserve

12   the settlement for the 22 states and to see whether there is

13   some way to come up with a three-state solution for the

14   three-state problem.

15       **THE COURT:**  I think the Ninth Circuit used the phrase

16   "at this time" to make it plain that it was not foreclosing the

17   possibility that it might simply vacate this Court's settlement

18   approval order.

19       **MR. DAVIES:**  And, Judge, perhaps we could get there

20   under certain circumstances, but we're not there yet.  There is

21   no need to get there.  There's no basis to get there under the

22   mandate.

23      And we should be making every effort to preserve the

24   settlement, if that can be done.  And that could be done,

25   perhaps, if we were to go to mediate before Judge Corley as

1  Your Honor has ordered.

2          **THE COURT:**  Thank you.

3          **MR. DAVIES:**  Thank you, Judge.

4          **THE COURT:**  Ms. Kirkham.

5          **MS. KIRKHAM:**  Thank you, Your Honor.

6      The non-repealer state class members are here not under

7  any of their individual state laws.  They're here only under

8  the Clayton Act.  They're here under the injunctive relief,

9  equitable relief provisions of the Clayton Act.

10      Those claims were pled for a nationwide class.  So they

11  were pled for Mr. Ganz and they were pled for Ms. Lewis.  The

12  claims are identical vis-a-vis the defendants' --

13          **THE COURT:**  Your argument this afternoon -- I beg your

14  pardon, but this is very important.

15      Your claim this afternoon is that the claims of

16  residents -- the claims of a resident of a repealer state are

17  the same as the claims of a resident of a non-repealer state?

18          **MS. KIRKHAM:**  For equitable relief under the Clayton

19  Act, yes.

20      Now, wait a minute.  You're thinking of the practical

21  difference, but let's just look for a moment at the legal issue

22  of the claims being advanced against the defendants.

23      What's been pled in the complaint is that every indirect

24  purchaser in the United States has a federal claim to come into

25  this court, and if they can prove the antitrust violation, they

can ask you for equitable relief.  We have some issue about
what the equitable relief is.

    Now, that claim, as a practical matter, may be much more
valuable to Ms. Lewis than it was for Mr. Ganz.

        **THE COURT:**  Have you read the *Interchange Fee* case
that I referenced a moment ago?  Do you know what it's about?

        **MS. KIRKHAM:**  I haven't read it recently.  I am
familiar with it.

        **THE COURT:**  Well, let me do sort of a mediocre job of
summarizing what happened in that case.

    The case involved the two largest credit card issuers in
the world, Visa and MasterCard.  And, to be honest, it's been a
little while since I read the case, too, although I looked up
the citation before I got on the bench this afternoon.

    Anyway, the case involved the two largest credit card
issuers in the world who charge merchants fees for the
privilege of processing those merchants' payments, and who also
have other rules that merchants have to abide by in order to
retain their membership in the Visa and MasterCard merchant
program.

    Visa and MasterCard were sued in relation to their
merchant services and the fees that were charged for those
services, and ultimately the claim settled.

    But there were two categories of merchants.  There were
merchants who, under the settlement, would receive damages

because of fees that they -- for fees that they had paid in the
past that they contended they shouldn't have had to pay.  And
then there were merchants who weren't going to get any money
but they would receive the benefit of rules changes that the
credit card issuers would make in the future that would make it
more advantageous to be a merchant participating in the credit
card issuers' program.

And I'm sure, in an august room such as this, there are
many of you who know the facts better than I do.  And I thank
you for your silence, but I would invite you to correct me in a
moment if I've gotten this very wrong.

Anyway, the same lawyers represented both groups of
merchants.  And that settlement was vacated because of the
inherent tension that would arise during the settlement
negotiations.

And that is that the credit card issuers would be willing
to make changes to their rules, but there would be a certain
business cost to that.  And they also would be willing to pay
money in the settlement, but they would be interested in
minimizing the total cost of the settlement, including both of
those things together.

So that as they made additional rules changes, they
probably would be willing to pay less money.  And as they paid
more money, they would presumably or probably be less willing
to make rules changes.

1       And because of the conflicts that would arise, therefore,

2   in valuing the claims of these two groups, the Second Circuit

3   said we need to have separate counsel.

4       So you said to me a moment ago, well, maybe as a practical

5   matter there might be a conflict, but the legal claims are the

6   same.

7       I don't dispute that the legal claims for equitable relief

8   are the same.  But as a practical matter -- to say as a

9   practical matter doesn't dispense with the problem; it

10  highlights the problem.  The problem is a practical problem.

11      **MS. KIRKHAM:**  And, Your Honor, Mr. Ganz has

12  independent counsel in the Mitsubishi case.  And I'm sure that

13  Mr. Ganz would agree to have that counsel represent him in this

14  case.  And I will substitute out, in recognition of the

15  practical problem, and represent only Ms. Lewis.

16      The uniformity of the claim also goes to the question of

17  do there need to be 22 class representatives?  And, no, on this

18  equitable claim there don't need to be 22 class representatives

19  because we're not under 22 state laws.

20      Where those multiple representatives came from was the

21  fact that damage cases in indirect purchaser actions are

22  aggregations of individual state law cases that are here

23  essentially on diversity or CAFA.  That's not true for the

24  equitable claims.

25      So a single plaintiff, Ms. Lewis, could represent a class

1    of plaintiffs seeking relief under the equitable claims and

2    seeking to be compensated for the release of those claims.

3         So you've said that it's denied without prejudice.  I will

4    file a new motion.  I will ask the counsel that are

5    representing Mr. Ganz in the Mitsubishi action.  I'm sure

6    Mr. Ganz will agree to it.

7         And that will eliminate the practical problem of the fact

8    that Mr. Ganz would be more willing to give away his equitable

9    claim than Ms. Lewis would be willing to give away her

10   equitable claim.  I'm not -- I do understand that.

11        That's really why I'm here is that's what happened the

12   last round was that when they went to the table it was only

13   repealer state representatives that were doing the deal.

14             **THE COURT:**  Thank you.

15        Defendants want to be heard with regard to this motion?

16             **MR. DAVIES:**  Yes.  Thank you, Judge.

17        Judge, Ms. Kirkham's conflict is not the only problem

18   here.  Your Honor heard my argument on the rule of mandate, and

19   it applies fully to this motion too.  I won't repeat it again

20   unless Your Honor wants to hear anymore about that argument.

21        But the other problem with this motion is that there is no

22   colorable claim for monetary relief here.  It's very clear,

23   under Ninth Circuit law, that Section 16 doesn't allow monetary

24   relief for past harms.

25             **THE COURT:**  You already know I agree with you.  Right?

1   Didn't I just say that?

2         MR. DAVIES:  Absolutely, Judge.

3     But it's also the law that it's not unreasonable to limit

4   compensation to those who have viable claims for monetary

5   relief.  And that's clear from --

6         THE COURT:  Can you cite me a case in which a court

7   was asked to appoint interim class counsel and the Court said,

8   well, I have the legal authority to do that, but I'm not going

9   to because the claims are not very good?

10        MR. DAVIES:  I can't cite a case that says that, Your

11  Honor, but I have cited cases for the proposition that the role

12  of counsel is to represent the interests of class members.

13    And here class members have no interest that needs

14  representing.  It's clear that they have no colorable claim for

15  monetary relief.  It's also clear that a settlement allocation

16  plan is not unreasonable if it allocates compensation to people

17  who actually have viable claims for monetary relief.

18        THE COURT:  And I said that in my settlement approval

19  order; correct?

20        MR. DAVIES:  Yes, Your Honor.

21        THE COURT:  And you understand that I now feel

22  differently on that point.

23    I mean, you can use your 10 minutes however you want.  But

24  if you can hear a tone of frustration in my voice, it's because

25  I'm frustrated.

1    (Laughter)

2    **THE COURT:**  And I have never, in 17 and a half years,

3    done an about-face of the kind that I did in this case.  It

4    isn't fun to do.  I don't like reading about it.  I thought

5    long and hard before I did it.  And I did it because I was

6    really convinced I was wrong.

7    So, as I said a minute ago, I don't want to interfere with

8    your advocacy.  If you think it's going to work, you can cite

9    to me the part of my settlement order I'm walking away from.

10   But I just feel strongly about it.

11   **MR. DAVIES:**  Judge, on this point, Ninth Circuit law

12   is clear that it is not unreasonable not to allocate

13   compensation to people who don't have colorable claims for

14   monetary relief.

15   And it's one thing to appoint counsel for people who

16   arguably might have had claims under other circumstances, if

17   there'd been a class representative, if the claim had been

18   brought in a timely fashion.

19   But to appoint counsel for people who do not have and

20   never have had any colorable monetary claim is something quite

21   different.  You're going to appoint counsel for people who just

22   don't have claims.

23   **THE COURT:**  Are you scared to beat them on the merits?

24   You're not going to be able to keep this other settlement.

25   And that's going to put you to the same choice that every

1   defendant is in every case.  You can just win.

2       And it's got to be probably a pretty rare day for you

3   when, in the middle of the case, the judge in your case says, I

4   sort of agree with you about the value of these claims.

5           **MR. DAVIES:**  Judge, the point is only that we have

6   resolved these once.  And there was an opportunity to object

7   and appeal; it wasn't taken by these people.

8       Thank you, Judge.

9           **THE COURT:**  Thank you.

10      Who will argue the 2010 stipulation motion?

11          **MS. MOORE:**  I will, Your Honor, but I'll submit it on

12  the papers --

13          **THE COURT:**  Thank you.

14          **MS. MOORE:**  -- and on your tentative ruling.

15      Thank you.

16          **THE COURT:**  Defendants want to be heard?

17      Would anyone like to be heard on that motion?

18          **MR. DAVIES:**  Thank you, Judge.

19      Judge, the motion to vacate the 2010 stipulation just

20  fails on its own terms.  As the movants concede, it didn't

21  dismiss, extinguish, or waive anything.  And so the two

22  arguments that they have made in support of vacatur are just

23  inapplicable.

24          **THE COURT:**  Given what you've just said, what injury

25  does vacatur work to your client?

1      **MR. DAVIES:**  Judge, with respect, I think that has the

2   question the wrong way around.

3      **THE COURT:**  Well, nonetheless, you're stuck with the

4   judge, and that's the question he asked you.

5      (Laughter)

6      **MR. DAVIES:**  But, Judge, an order shouldn't be vacated

7   without good reason.  And, actually, let me back up here

8   because there is a rule of mandate issue here, too.  And I

9   won't repeat what I've said before because I think Your Honor

10  has expressed views about that argument.

11     But, really, what the Ninth Circuit sent back to Your

12  Honor was a concern about how the three states had fared in the

13  settlement process, particularly in the process of the plan of

14  allocation.  So this really is far outside the scope of the

15  remand.

16     But leaving that aside, just on its own terms, this

17  stipulation --

18     **THE COURT:**  Let me ask you a question.  I'll take the

19  bait.

20     Whether or not I continue to use this language going

21  forward, let's talk about adequacy of counsel for a moment.

22  Because when I used that language in my order that led to the

23  remand, I wasn't referring to Rule 23.  I was referring to

24  something else.  I'm not sure that I need to continue to use

25  that language because I think I can rely on this reasoning from

the *Interchange Fee* case, anyway.

But let's come back to that for a moment, the concern I expressed with regard to adequacy of counsel.  Do you think, on the facts, that that concern was or should have been limited to the residents of the three omitted repealer states that are identified in the remand order?

Or do you think that concern spreads beyond any -- the residents of any additional states?

**MR. DAVIES:**  Judge, I'd be happy to talk about the other states.  We have a chart that we put together to try to condense, sort of, the epic procedural history here.

Could I hand it up to Your Honor, please?

**THE COURT:**  Yes.  Have you given it to opposing counsel.

**MR. DAVIES:**  We have copies for counsel.

So, Judge, for the three omitted repealer states we know that the reason that those claims weren't asserted is because no viable representative was available.  That's what the special master found, and that's reflected in the settlement approval order.

So then that takes us down to Arkansas, which is on the bottom of the first page of this chart.  State law claims, damages claims, were asserted in the second amended complaint. They were dismissed in 2010 on the basis that state law doesn't actually allow IPPs a damages claim.  And there was no appeal

1   from that.

2       It's the same story for Montana.  They were dismissed on

3   the basis that there is no remedy under Montana law for IPPs.

4       The same under Rhode Island.  So there was an attempt to

5   assert those and they were dismissed.

6       For Oregon, those were never asserted in this action

7   because the Oregon Attorney General asserted the exclusive

8   right to bring those claims.  The Oregon Attorney General

9   brought those claims against all of the defendants, against

10  Thomson, and they've been settled.

11      There were no claims ever asserted for South Carolina or

12  Utah purchasers.  We don't know why because, of course, we have

13  no insight into the decisions that lead counsel makes in terms

14  of bringing or not bringing claims.  We could speculate as to

15  why.  We know, for example, that under South Carolina law the

16  statute has a no-class-action provision.

17          **THE COURT:**  Were claims of South Carolina residents

18  released by the settlement?

19          **MR. DAVIES:**  They were, Your Honor.  Yes.

20          **THE COURT:**  I thought you said no claims were brought?

21          **MR. DAVIES:**  Well, no state law damages claims were

22  brought.

23          **THE COURT:**  I see.

24          **MR. DAVIES:**  They were part of a federal class.  And

25  under *City of Portland*, all related claims arising out of the

1  identical factual pattern can be released.

2          **THE COURT:**  I see.  Okay.

3          **MR. DAVIES:**  And so we don't know, but it could be the

4  fact that you can't bring a state law damages claim under South

5  Carolina law as a class action.  Or some courts have held that.

6  That could be why they weren't brought.  We just don't know.

7  But there's nothing on the face of it that suggests inadequate

8  representation.

9          That just leaves Utah.  Apparently, there was never a

10  class representative here.  We don't know why those claims

11  weren't brought.

12          So there is nothing on the face of this that suggests that

13  any of these claims suffer from inadequate representation.

14          **THE COURT:**  Okay.

15          **MR. DAVIES:**  And so given that that is the purported

16  basis for the motion to vacate the 2010 stipulation, we think

17  the motion just fails on its own terms and so should be denied.

18          **THE COURT:**  I'm going to give you one more chance --

19          **MR. DAVIES:**  Yes, Judge.

20          **THE COURT:**  -- now that you have made your argument.

21          And assuming that I thought it were relevant, what

22  prejudice is there to your clients from an vacatur of the 2010

23  order in light of what you've told me about the effect of that

24  order?

25          **MR. DAVIES:**  Your Honor, I think the prejudice is that

there is -- that the lawyers who are making this motion are

clearly doing it because they have some argument in mind about

what the effect of vacating it would be.

We think that vacating it does not allow them to plead

viable claims, but clearly that is why they are doing this and

what they have in mind.  And under those circumstances, we

think, given that there's no proper basis to vacate it, it

shouldn't be vacated.

**THE COURT:**  Thank you.

We have some time remaining.  Provided that we have sort

of an honor system on people's using their time productively,

anyone else who wants to make argument to the Court can do so.

Mr. Alioto.

**MR. ALIOTO:**  Thank you, Your Honor.  I didn't reserve

any time, but I thought I might just make one comment --

**THE COURT:**  Please.

**MR. ALIOTO:**  -- if Your Honor please.

We really have no objection to Your Honor's ruling on this

stipulation to the extent that we agreed that it was not

binding on other plaintiffs, just as Your Honor indicated in

the tentative ruling.

There is one little issue here; and that is, this

stipulation and order did something that was beneficial to our

case.  Or to use Your Honor's words, what is prejudicial in

this vacation to us?

1          This order allowed us to bring a Maine claim.  We took

2     issue with the special master's ruling.  The special master

3     indicated that his ruling was binding, was binding on other

4     plaintiffs.  We took issue with that.

5          And as part of the stipulation, we wanted to make it clear

6     that we had the right to bring claims for other plaintiffs,

7     very similar to what Your Honor is ruling right now.

8          So with that clarification that by vacating this order we

9     still would get the benefit of that order, and the stipulation

10    to the extent that it allowed us to bring a Maine claim, a

11    claim for a Maine resident, I just don't want that to get lost

12    in the shuffle here and be prejudiced in some way by that.

13    That's a beneficial part of this order for our claims, Your

14    Honor.

15         **THE COURT:**  I appreciate your making those comments.

16    I read the 2010 order, and then I read the underlying order by

17    Special Master Legge, which is also in the docket, that led to

18    the 2010 order.

19         As you all know, these events occurred before my time

20    presiding over this case, and so I didn't have the background

21    that led to either Judge Legge's report and recommendation or

22    the 2010 order.

23         There also were certain requests made, I want to say, of

24    Judge Legge.  It's referred to in the moving papers.  In

25    between the issuance of his report and recommendation and then

1  the issuance of the 2010 order, those requests are somewhere,

2  but they're not on the docket.  I tried to find those.

3      I was aware, as I took the bench this afternoon, as I was

4  preparing for the hearing, that I did not necessarily

5  understand the full effects, in all of its various

6  permutations, of the 2010 order given this prior history that I

7  was not involved in.

8      So I was hoping this afternoon, Mr. Alioto, that if there

9  were unintended consequences, to use that phrase, that people

10  would bring them -- the lawyers would bring them to my

11  attention.  So I appreciate your doing that.

12      And I would say to anybody else in the room, if you think

13  I'm missing something about the 2010 order, I'm happy to hear

14  it.

15      **MR. ALIOTO:**  That's exactly what I wanted to

16  articulate, that there are some unintended consequences.  I'm

17  just wondering out loud --

18      **THE COURT:**  May I ask you something?  Because I think

19  this might solve your problem.

20      What if I were to invite Ms. Moore to write an order that

21  said simply, for the reasons stated on the record, the motion

22  is granted, save and except, and then she would write a clause

23  in the order.

24      It would have to be circulated to all parties, not just

25  you, but to you that attempted to deal with this concern.

1            **MR. ALIOTO:**  That would be one approach.

2        May I suggest something else?

3            **THE COURT:**  Please do.

4            **MR. ALIOTO:**  And I'm going to tread very lightly here

5   in light of Your Honor's comments here today.

6        Perhaps, perhaps the way to do this is to rule, as Your

7   Honor indicated, that this order is not, in fact, binding on

8   other parties, and leave it at that without actually vacating

9   the stipulation.

10       And let me tell you why --

11           **THE COURT:**  Well, you know, I thought about that.  I

12  have the same concerns that all of you have about this case.

13  It's just that most of you only have some of the concerns, and

14  I have all of the concerns.

15       This case was filed in 2007, and it got stuck in some

16  ways.  At the time I took the case over, there were 29 motions

17  for summary judgment that were ripe and that had not been ruled

18  on.  So it took some work to kind of get the ship back upright.

19       Any one of you individually is probably smarter than I am.

20  Collectively, the delta is enormous.  If you wanted to, you

21  could keep this case going forever.  I'll be right there with

22  you every step of the way.

23       Justice Breyer was at Stanford several years ago.  He said

24  Supreme Court justices -- I can't remember the order.  I think

25  he said "They never die and they rarely retire," something like

that.  Well, the same thing is true of most federal judges.

I have a lot of runway left, so if we want to keep doing this forever, let's do it.  The concern is -- that I'm articulating is not responsive to what you just said, Mr. Alioto.  This is really for the room.

Want to have all these fights piecemeal?  Let's have them.

I was not moved today at all by the defendants' argument on the mandate.  I'm exactly where I started at the beginning of the hearing on that point.

So I wish there was some way I could inspire in all of you a feeling of deep pragmatism.  For those of you whose fees are being paid by the hour, I would hope that, notwithstanding the time cost of money and that sort of thing, your clients would see that bringing this whole thing to a conclusion sooner rather than later is in everybody's interest.  Maybe it's not. I don't know.

But if there ever was a case in which pragmatism was called for, it's this case.  And if ever a time had arisen for pragmatism to be on the table, it's now.

Mr. Alioto, coming back to your point, I thought about saying that.  I thought about simply agreeing, as the motion invited me to do, that the stipulation doesn't have any effect on absent class members.

And that would have been uncontroversial.  I think everyone would have just stood up and said, Well, we'll submit

 1   on that.

 2        So why didn't I?  Because I think it's an advisory ruling.

 3   The only way I can know what the effect of the order is if that

 4   issue later gets litigated.

 5        If I say, well, the only effect is on absent class

 6   members, then someone tries to do something in the case.  I

 7   don't even know what that is.  I can't think of all the

 8   possibilities.  And someone says, well, you can't do that; 2010

 9   order.  The other party says, oh, no, no, Judge Tigar resolved

10   this.

11        How could I have resolved it?  I don't even know what the

12   situation is going to be.

13        Am I making any sense?

14        **MR. ALIOTO:**  You're making perfect sense, Your Honor.

15        **THE COURT:**  I wish I could give that ruling, but I

16   didn't think I could.

17        **MR. ALIOTO:**  Then let me just do what I think is my

18   job here, which is to say that there may be some unintended

19   consequences with respect to the Maine claim.

20        I think we have the right to bring that claim.  We did

21   bring that claim.  We're going to continue to press that claim.

22   And I would just say for the record that I don't think there's

23   anything in Your Honor's ruling that's going to prevent us from

24   doing that.

25        But if the issue does come up down the road, I wanted to

1   be on the record as anticipating and bringing it to Your

2   Honor's attention.

3         THE COURT:  In addition to whatever objections have

4   already been made to the motions as a whole, is there anyone

5   present who would object to the entry of a modified order of

6   the kind that I discussed with Mr. Alioto at the beginning of

7   his remark?

8      The record will reflect that the room remained silent.

9         MS. MOORE:  I think it's better, as you suggested,

10  Your Honor, if it's vacated and it's clean.

11     I agree with Mr. Alioto regarding the Maine claim, but in

12  my opinion that would be the -- I think the easier, cleanest,

13  and my preference, even though I know our motion gave you an

14  option.

15        THE COURT:  I understand that Mr. Alioto -- we may be

16  saying the same thing.  I understand Mr. Alioto not to be

17  asking me to say -- what I understand him to be asking me to do

18  is to issue an order that says I am not vacating a portion of

19  the 2010 order that permitted him to bring a Maine claim.

20     I'm not expressing a view about any claim that might be

21  made in the future.  Does that distinction make sense?

22        MS. MOORE:  Yes, it does.

23        THE COURT:  Do you disagree with that request as I've

24  phrased it?

25        MS. MOORE:  No.  That's all right, Your Honor.

1          **THE COURT:**  Mr. Rhys Davies.

2          **MR. DAVIES:**  Yes, Your Honor.

3          **THE COURT:**  It looked like you want to be heard.

4    Please come to the microphone.

5          **MR. DAVIES:**  Your Honor, the problem with simply

6    vacating that 2010 order is that it did a number of things.

7    One of the things it did was to adopt the special master's

8    recommendations on dismissal of certain class reps' claims.

9          For example, there were Arkansas, Montana, Massachusetts

10   class reps.  Vacating the order shouldn't resurrect those

11   claims at this point.

12         So there are real problems around what the meaning is of

13   vacating this 2010 order that perhaps we need to work out and

14   submit to Your Honor, because I think Your Honor has indicated

15   what the purpose of the relief you're suggesting would be.

16         But I don't think it would be appropriate to be almost

17   reinstating claims that were dismissed a decade ago.

18         **THE COURT:**  How confident are you the parties could

19   reach an agreement on that point?

20         **MR. DAVIES:**  We would certainly try from the defense

21   side, Judge.

22         **THE COURT:**  All right.  Anything further on the third

23   motion?

24         Please.  State your name, please.

25         **MR. GOLDSTEIN:**  Kevin Goldstein for the Panasonic

1  defendants, Your Honor.

2      I would suggest that some of the comments Your Honor

3  raised about the potential unintended consequences of vacating

4  the stipulation and the potential effects on absent parties

5  could be better addressed at a later time, when those issues do

6  come before the Court, and that the better course here would be

7  to deny the motion without prejudice at this point.

8      And if we get to a later point where somebody is moving

9  for leave to amend the complaint and these issues do come up,

10  Your Honor could address it in full context at that point.

11      **THE COURT:**  Then my concern would be that the parties

12  would be negotiating with the Court.  There's already enough of

13  that happening, people taking certain positions because they're

14  trying to achieve financial or other litigation objectives.

15      I mean, the interesting thing about this proceeding is

16  that, actually, people are pretty candid about it.  So instead

17  of saying, you know, here's the legal rule, they say, well, but

18  if you rule this way, this is what's going to happen to my

19  claim.

20      And so I just think either there's good cause or there's

21  not.  I mean, that's the test.  And you all know this.  You've

22  read the papers.  I'm sure you've read more cases than I have.

23      There is a lot of discretion and not a lot of guidance to

24  a district court that wants to vacate an interlocutory order

25  like this.

1     Maybe I should just do this, which is to say that if

2    there -- well, first of all, let me back up.

3     I think, with regard to what we're calling unintended

4    consequences, there are at least two categories.  One is

5    consequences that can be perceived now.  Mr. -- where is

6    he? --Alioto just identified one such consequence.  Okay.

7    That's one thing.  We can guard against those.

8     Now, maybe the parties can't reach agreement and I am left

9    to my own devices, and I will issue whatever order I think is

10    appropriate.

11     But I could give the parties time, not much time -- I'm

12    talking about days here -- to negotiate an order that resolves

13    this or not.  And it requires everybody's signing on.

14     And if there's some horse trading on the side that I don't

15    know about that gets everybody to a blue ink signature, fine.

16    I don't care.  I just want to resolve these issues so we can

17    keep moving forward.

18     The second category is, you know, in the sort of "I don't

19    know what I don't know" box in the decision matrix, what about

20    the unintended consequences that we can't think of?  Well, I

21    don't know what.  I don't have any way of dealing with that.  I

22    just have to decide if there's good cause or not.

23     Does that make sense?

24     Was there more you wanted to tell me?  I just did most of

25    the talking.

1           **MR. GOLDSTEIN:**  Well, Your Honor, I think we're going,

2    then, to a situation where everybody is just disputing what the

3    consequences of the vacation of the -- the vacatur of the order

4    was, and may still have the same types of disputes coming

5    before Your Honor.

6           **THE COURT:**  Well, here's the good news --

7           **MR. GOLDSTEIN:**  So maybe just to address them in

8    context.

9           **THE COURT:**  -- I'm not going to invite further

10   argument.  I'm just going to set a deadline.  And I'll either

11   get a stipulated order or I won't.

12       And when that day comes, I'll look at the Post-It that I

13   will have put on my computer screen and I'll decide it's time

14   to issue an order.  And I'll just reread the arguments or

15   reconsider or have already considered the arguments that were

16   made to that point.

17       Anything further from anybody with regard to any of these

18   three motions?

19       Mr. Alioto.

20          **MR. ALIOTO:**  Yes.  I'm sorry, Your Honor, but did Your

21   Honor say then as part of your order that you would -- I think

22   there is agreement on trying to craft an order to get around

23   these problems.

24       Is Your Honor contemplating --

25          **THE COURT:**  I am.  I am contemplating that.  And I

1  wanted to make sure I heard from everybody in the room before I

2  came back to it.

3       But my thought is that -- what's today?  It's a Thursday.

4  If I could just have, by a week from Friday, an order that

5  says -- and I nominated Ms. Moore as the draftsperson, because

6  she's the one who stood up when I called this motion, and I

7  suspect she's the one that wrote it anyway, to be in charge of

8  that order.

9       And it would just say for the reasons stated on the

10  record, the Court grants the motion to vacate -- you know,

11  grants the motion and -- because it was framed in the

12  alternative -- vacates the 2010 order, except the following

13  provisions of that order.  Or language to that effect.

14       If I got an order by close of business a week from Friday,

15  and everybody had signed off on it, probably I'd just sign it.

16  If I didn't, I'd just decide the motion as I'm supposed to.

17            **MR. DAVIES:**  Very good, Your Honor.  Thank you.

18            **THE COURT:**  Yeah.

19       Does anyone else want to be heard?

20            **MS. OSBORN:**  Your Honor, I'm Kathy Osborn.  I

21  represent the Thomson and Technicolor defendants.

22       I just wanted to make a comment in this area of unintended

23  consequences as it relates to your decision to vacate the

24  approval of the settlement agreement in general.

25       I understand that that appears to be the decision that you

1   have made, but for the record I think --

2          **THE COURT:**  Are you from the Munger firm?

3          **MS. OSBORN:**  Pardon me?

4          **THE COURT:**  Are you from the Munger firm?

5          **MS. OSBORN:**  No.  Faegre Baker Daniels.

6          **THE COURT:**  Did Munger represent the Thomson

7   defendants before?

8          **MS. OSBORN:**  No.

9          **THE COURT:**  I'm thinking of someone else.

10         **MS. OSBORN:**  Munger was with Samsung?  LG.  Sorry.

11         **THE COURT:**  Oh, that's right.

12         **MS. OSBORN:**  Yes.

13         **THE COURT:**  Thomson is a smaller player.

14         **MS. OSBORN:**  Well, it is, Your Honor.

15      As you might recall, and this gets to one of the points I

16   wanted to make is, when you approved Thomson Technicolor's

17   settlement several years ago, you, in part, approved that

18   $13.7 million settlement based on their financial situation,

19   judgment enforcement issues with a French company, and the fact

20   that it had just emerged from bankruptcy.

21      At that time its stock value was at 5 to 6 Euros per

22   share.  Today I looked at it.  It's at .82 Euros per share.

23      As you know, Your Honor, defendants rely on IPP class

24   counsel all the time to make decisions, once a settlement

25   amount has been agreed to, as to the relative value of the

1   class members they represent.

2       And settlement defendants and their boards rely on and

3   agree to these large settlements to get complete closure.

4   Because you're not going to have defendants who can settle for

5   millions and millions of dollars knowing that there's one or

6   two claims out here in an antitrust case that could still

7   suscept them to multibillion-dollar judgments.

8       And so one unintended consequence that could happen in

9   this situation, by vacating the entire settlement order, is

10  that a company like Thomson, Technicolor now, gets back its

11  $13.75 million, and in its current financial situation that

12  money doesn't show up in the class ever, at all, again.

13      And I, as an antitrust attorney, relish the opportunity to

14  defend these issues on the merits.  Thomson has very strong

15  statute of limitations arguments.  It was never named as a

16  defendant in the various amended complaints, so there's no

17  relation back to that.

18      But I've got a client who has already spent hundreds of

19  thousands, millions of dollars defending these cases, who's in

20  a difficult financial situation, and now we essentially have to

21  start all over again.

22      And I just wanted to make that point for the record, Your

23  Honor.

24          **THE COURT:**  I'm sure plaintiffs' counsel have taken

25  note of some of the arguments that you'll make in any later

1    negotiations.

2            **MS. OSBORN:**  Thank you.

3            **THE COURT:**  To be clear, the question of whether to

4    vacate the prior settlement isn't presently before me.  It's

5    not before me today.  So many of my comments were hortatory,

6    for whatever that's worth.

7        You can tell the Thomson board that the judge in your case

8    wished he had the strength of his convictions about releases in

9    exchange for no compensation at the time he originally

10   considered the question.  And if they're entitled to be

11   disappointed with anybody, it's that judge.

12       Other comments?

13       Thank you.  Court's in recess.

14       (Counsel thank the Court.)

15       (At 3:12 p.m. the proceedings were adjourned.)

16                         - - - - -

17              <u>**CERTIFICATE OF REPORTER**</u>

18       I certify that the foregoing is a correct transcript

19   from the record of proceedings in the above-entitled matter.

20   DATE: Friday, June 7, 2019

21

22

23              *Katherine Sullivan*

24   _____

25       Katherine Powell Sullivan, CSR #5812, RMR, CRR
                   U.S. Court Reporter