1  Jeffrey L. Kessler (*pro hac vice*)
   jkessler@winston.com
2  Eva Cole (*pro hac vice*)
   ewcole@winston.com
3  WINSTON & STRAWN LLP
   200 Park Avenue
4  New York, NY 10166-4193
   Telephone:  (212) 294-6700
5  Facsimile:   (212) 294-4700

6  David L. Yohai (*pro hac vice*)
   david.yohai@weil.com
7  WEIL, GOTSHAL & MANGES LLP
   767 Fifth Avenue
8  New York, New York 10153-0119
   Telephone:  (212) 310-8000
9  Facsimile:   (212) 310-8007

10
   *Attorneys for Defendants Panasonic Corporation,*
11 *Panasonic Corporation of North America, and MT Picture Display Co., Ltd.*

12 Additional Parties and Counsel Listed on Signature Pages

13           **UNITED STATES DISTRICT COURT**
           **NORTHERN DISTRICT OF CALIFORNIA**
14             **SAN FRANCISCO DIVISION**

15 | | |
   |---|---|
16 | **IN RE CATHODE RAY TUBE (CRT)** | Case No. 3:07-cv-5944-JST |
   | **ANTITRUST LITIGATION** | MDL No. 1917 |
17 | | |
   | | **DEFENDANTS' OPPOSITION TO** |
18 | This Document Relates to: | **INDIRECT PURCHASER PLAINTIFFS'** |
   | | **MOTION TO SET TRIAL DATE** |
19 | ALL INDIRECT PURCHASER ACTIONS | |
   | | Date:    August 8, 2019 |
20 | | Time:    2:00 p.m. |
   | | Place:   Courtroom 9, 19th Floor |
21 | | 450 Golden Gate Avenue |
   | | San Francisco, CA 94102 |

22

23

24

25

26

27

28

1    **I.      INTRODUCTION**

2            Defendants oppose the motion of the Indirect Purchaser Plaintiffs representing the 22 certified

3    state classes ("22 States") to set a separate pretrial and trial schedule for their claims.

4            Just three months ago, Defendants and IPP Lead Counsel agreed upon and submitted a joint

5    scheduling proposal to the Court that—in the event a mediated solution cannot be reached—would

6    put all IPP cases, including the 22 States and any "New States," on a single schedule.  The Court

7    ultimately decided it was premature to enter a trial schedule until counsel was appointed for the New

8    States and pleadings were filed on behalf of those plaintiffs.  Defendants agreed then, and agree now,

9    that setting a trial schedule is premature but, if and when a trial schedule is set, judicial economy,

10   efficiency, and the avoidance of prejudice dictate proceeding toward a single trial with all IPPs.

11           Progress has been made with the New States over the past three months.  Now that the Court

12   has recently resolved the appointment motions and appointed counsel for the ORS and NRS

13   Subclasses,[1] there is greater certainty about who can speak for each IPP group and the parties are in a

14   better position to effectively mediate.  But that mediation has not yet had an opportunity to occur and

15   it should be given the chance to succeed.  While mediation takes place, the parties can and should

16   continue to advance the case to resolve the viability of claims from the ORS and NRS Subclasses.

17   That way, if mediation ultimately proves unsuccessful, the case has still progressed.  This effort is

18   already underway as it is expected that at least the ORS Subclass will seek to file a new pleading on

19   behalf of those plaintiffs soon.

20           In the event that it does become necessary to resume active litigation, it would be massively

21   inefficient to hold multiple trials with different IPP state subclasses, proceeding on separate schedules

22   with separate counsel.  What the parties previously proposed was a relatively quick schedule to catch

23   up the New States and proceed toward a single trial for all IPP cases—about 10 months from the

24   resolution of the pleadings to a trial of all IPP claims, if needed.  By adding just a few more months to

25   resolve the viability of any new pleadings, the Court and the parties could have greater clarity on

26   whether any further proceedings are needed at all and, if they are, proceed on an efficient, unified

27   ───────────────
     [1] "ORS Subclass" and "NRS Subclass" are used as the Court defined them in its order appointing
28   counsel.  ECF No. 5518.

1    schedule toward a single trial for all IPP claims.

2         What has not changed in these past months is that Defendants and IPPs are still bound by

3    executed and finally approved settlement agreements that provide over a half-billion dollars to the

4    IPPs.[2]  There is no question that adequate compensation was provided in the settlements—neither IPP

5    Lead Counsel, this Court, nor the Ninth Circuit have ever said otherwise.  As prior filings with the

6    Court and Ninth Circuit make clear, IPP Lead Counsel and Defendants have sought ways to amend

7    the existing settlements without diminishing the recovery of 22 State class members in any way, and

8    instead making any new re-allocations solely out of IPP counsel's fee award.  Resuming litigation puts

9    at risk the funds the 22 States currently have in-hand.  IPP Lead Counsel argues only that setting a

10   quick trial schedule may result in a quick resolution of the 22 States' claims, but the nature of that

11   resolution is uncertain and could be no recovery at all.

12        The Court should stay the course it set in its April scheduling order, recognizing that it is

13   premature to set a trial schedule until New States plaintiffs have filed a pleading.  Mediation with

14   Magistrate Judge Corley should also be given a chance to succeed.  In a few more months, it will be

15   clearer what, if anything, needs to be litigated going forward.  At that time, if further litigation is

16   necessary, the Court could set a unified schedule working toward a single trial on all IPP claims,

17   thereby avoiding the unnecessarily duplicative proceedings and wasted judicial and party resources

18   that would come with setting a wholly separate schedule for just the 22 States.

19   **II.    BACKGROUND**

20        As recently as April 2019, after the Court solicited scheduling proposals, IPP Lead Counsel

21   joined with Defendants in proposing a unified case schedule that would resolve the viability of any

22   ORS and NRS Subclass claims and—if necessary—work toward a single trial in August 2020

23   including all IPP claims, from all states.  ECF No. 5452.  All three of the now-appointed interim co-

24   lead counsel for the ORS Subclass also proposed schedules leading to a single trial of all IPPs claims.

25   ECF Nos. 5453, 5454.  The NRS Subclass counsel made no proposal.

26

27   [2] Although the Court has stated that it might vacate its final approval order and has the power to do
     so, the Ninth Circuit expressly avoided doing this and the Court has likewise not yet taken that
28   dramatic action or received briefing on the subject.

1   After considering the parties' submissions, the Court concluded that it was premature to set a

2   full case schedule or a trial date, until the Court first determined who would represent the New States

3   and a pleading was filed on behalf of those plaintiffs.  ECF No. 5459.  At that time, all parties

4   understood that counsel appointments would not be determined until at least after June 11, 2019, when

5   the Court set a hearing on appointment motions.

6   In the time since the Court entered that April 2019 scheduling order, progress has been made

7   toward the milestones that the Court identified.  On July 3, 2019, the Court issued its decision

8   appointing counsel for the ORS Subclass and NRS Subclass.  ECF No. 5518.  And ORS Subclass

9   counsel has been in discussion with Defendants regarding the parties' proposed schedule for seeking

10  to present any new claims in the coming weeks.  Magistrate Judge Corley has been appointed

11  settlement mediator (ECF No. 5427) and brought up to speed on the issues.  A mediation session has

12  now been set for July 26, 2019 with the 22 States (ECF No. 5523) and additional sessions are expected

13  to be held with the ORS Subclass and NRS Subclass.

14  Notwithstanding this progress, barely two hours after the Court entered its July 3 order on

15  appointments, IPP Lead Counsel filed the motion at hand.  ECF No. 5519 ("Mot.").  IPP Lead Counsel

16  now asks the Court to set an expedited, bifurcated trial schedule for just the 22 States in March 2020—

17  more than five months earlier than their previous proposal.  ECF Nos. 5452, 5519.

18  **III.   LEGAL STANDARD**

19  The 22 States move to bifurcate pretrial proceedings and, under Rule 42(b) of the Federal Rules

20  of Civil Procedure, to bifurcate trial on the IPP claims, trying the 22 States as soon as possible, while

21  leaving behind the potential claims by the ORS and NRS Subclasses.  *See* Mot. at 5, 6.  When deciding

22  a motion under Rule 42(b), "[i]t is the interest of efficient judicial administration that is to be

23  controlling under the rule, rather than the wishes of the parties."  9A Charles Alan Wright & Arthur

24  R. Miller, *Federal Practice and Procedure* § 2388 (3d ed. 2019).  The moving party has the "burden

25  of proving that the bifurcation will promote judicial economy and avoid inconvenience or prejudice

26  to the parties." *Spectra-Physics Lasers, Inc. v. Uniphase Corp.,* 144 F.R.D. 99, 101 (N.D. Cal. 1992).

27  The 22 States have failed to meet this burden.

28

## IV.   ARGUMENT:  The 22 States Cannot Meet Their Burden to Demonstrate that Separate Trials Would Benefit Judicial Economy or Convenience

The 22 States' motion should be denied because separate trials would not serve the interest of judicial efficiency.  "Bifurcation ... is the exception rather than the rule of normal trial procedure." *Clark v. I.R.S.*, 772 F. Supp. 2d 1265, 1269 (D. Haw. 2009) (citing *Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1021 (9th Cir. 2004)); see also Wright, *supra*, § 2388 ("[T]he repetitive trial of the same issue in severed claims is not to be the usual course.  Thus, Rule 42(b) should be resorted to only as the result of the exercise of informed discretion when the district judge believes that separation will achieve the purposes of the separate trial rule.").  Here, the 22 States have not shown why an exception to the rule is warranted.

Even if a bifurcated trial could make sense under Rule 42(b) (which it does not), the 22 States' motion should still be denied because it seeks bifurcated pretrial proceedings, which goes beyond Rule 42 and undermines the MDL's fundamental purpose of having coordinated pretrial proceedings.  28 U.S.C. § 1407(a).  This may necessitate the re-litigation of both non-dispositive and dispositive pretrial motions by Defendants and indirect purchaser claimants from the New States, utterly defeating the purpose of coordinated pretrial proceedings.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 536 F. Supp. 2d 1364 (J.P.M.L. Feb. 15, 2008) (ordering coordinated or consolidated pretrial proceedings to prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary).  IPP Lead Counsel's proposal is hardly efficient; it is the exact opposite.

As an initial matter, the IPPs' claims against the Defendants remain currently settled, so setting a trial date for those claims is premature and unwarranted at this time.  Although this Court might overturn its final approval order, the settlement agreements remain in force and the parties are still actively mediating in an effort to salvage them.  Moreover, while the mediation and party negotiation has not yet produced a resolution, those discussions had previously been complicated by the uncertainties about the scope of IPP Lead Counsel's representation and disputes over who was authorized to negotiate on behalf of the states other than the 22 States.  Now that the Court has resolved this uncertainty and appointed counsel for the ORS and NRS Subclasses, Defendants believe that a more productive mediation is possible.

Even if the mediation is unsuccessful or the Court vacates the settlement approval order, it is far more efficient to wait for the potential new states to catch up and have one consolidated pretrial schedule and trial of all IPP claims, as previously contemplated by all parties (s*ee* ECF Nos. 5452, 5453, 5454).  IPPs in the 22 States, the ORS Subclass,[3] and the NRS Subclass make the same basic antitrust allegations: that Defendants and various co-conspirators participated in a global conspiracy to fix the prices of CRTs, resulting in U.S. consumers paying higher prices for TVs and computer monitors containing CRTs.  While there are undoubtedly some significant legal and factual differences relevant to the IPPs' various state-law claims, the factual overlap between the various IPP claims are far greater than the differences.  Further, all IPPs nationwide have a common federal law claim for equitable relief.  Accordingly, in both trials the evidence would be overwhelmingly devoted to (1) demonstrating that all of the alleged conspirator manufacturers participated in the conspiracy, and (2) showing, through expert testimony, that the conspiracy resulted in overcharges on CRTs that were passed on to end-user consumers.  Consequently, separating trials would save little (if any) time in any one trial, while forcing the Court to conduct two almost-identical trials.  And these are not short or simple trials; previous estimates have been that approximately 20 trial days would be necessary for each trial.  Holding two such lengthy and complex trials would also put an unnecessary and avoidable burden on witnesses (both party and non-party, many of which would be required to travel internationally), jury time and resources, and judicial time and resources.

The 22 States assert that bifurcation is nonetheless necessary because waiting for the potential new states to catch up to the 22 States would subject the 22 States' cases "to significant, prejudicial delay." Mot. at 6.  This assertion is surprising, given that, just three months ago, the parties—*including IPPs representing the 22 States*—jointly proposed to the Court a case schedule that contemplated an August 24, 2020 trial date and corresponding pretrial dates that *included any New States*.  *See* ECF No. 5452.  The 22 States now attempt to justify their abandonment of their previously-proposed schedule by claiming they assumed that the New States would file a new complaint on July 1, 2019 and it was unforeseen that the ORS Subclass might seek to file an amended pleading.  *See* Mot. at 3

---

[3] While the ORS Subclass states have not sought to bring any claims yet, it is expected that they will soon seek to file a pleading and will allege the same conduct violating antitrust laws as other IPPs.

n.3.  But the 22 States offer no explanation for why, only two days after July 1, it suddenly became necessary to bifurcate all proceedings and move trial five months earlier than they previously proposed.  Moreover, it is nonsense for IPP Lead Counsel to feign surprise that the ORS Subclass may seek to style their pleading as an amended complaint.  In addition to certain ORS Subclass counsel stating this in their recent proposed schedule (ECF No. 5453 at 2), Objectors raised this possibility in briefing their appeal to the Ninth Circuit; indeed, IPP Lead Counsel devoted a section of his appeal brief to addressing a hypothetical future "motion to amend to add new plaintiffs and claims" postulated by the Objector that Ms. Moore represented.  *See* Answering Brief for Appellee IPPs at 77-88, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 16-16368 (9th Cir.), ECF No. 93.  These are not new developments.  They do not change the efficiencies of having consolidated pre-trial proceedings and a single consolidated trial.  If the 22 States were previously fine waiting until at least August 2020 for a trial, it is unclear why a trial after March 2020 would now be so unduly prejudicial.

Defendants recognize that resolving whether the New States' claims are viable and, if so, catching the New States up to the 22 States will take some time.  But it is Defendants, not IPPs, who face prejudice in potentially having to defend themselves against brand new claims that were not asserted over the 12-year course of this litigation and allege conduct going back to 1995.  Bifurcating proceedings would only compound that prejudice by adding the prospect of more duplicative proceedings and expenses, and exposing Defendants to the possibility of inconsistent results if the cases proceed to trial.  All of this would likewise require additional expenditure of judicial resources because double-tracking the IPP claims would almost certainly result in the Court having to decide additional motions, hold additional hearings, and would be tremendously inefficient at trial.

Although the 22 States are certainly farther along than the potential New State claims, they are far from trial-ready.  As the 22 States propose, there would be renewed summary judgment and other dispositive motion briefing, *de novo* pretrial exchanges, designations and objections, and renewed *limine* motions.  That the New States are "at a nascent stage" (Mot. at 6) is insufficient to warrant bifurcation, particularly in light of all of the collateral inefficiencies that would result from such bifurcation.  The 22 States' citation to *In re Ampicillin Antitrust Litigation*, 88 F.R.D. 174 (D.D.C. 1980), in support of their proposition that different levels of trial readiness is a justification for

bifurcation is disingenuous, at best.  Mot. at 6-7.  The court in *Ampicillin* did not order separate trials because the civil and government antitrust cases had different levels of trial readiness—as the 22 States' parenthetical suggests.  The court ordered bifurcated trials because the government antitrust case involved claims that were not alleged in the civil action and the "respective theories underlying" the Sherman Act, Section 1 claims alleged by the Government and the civil plaintiffs, respectively, were "quite different" and were likely to "call for different proof."  88 F.R.D. at 177.  The fact that one case was more advanced than the other only influenced the "order of [the] separate trials," not the decision to separate them in the first place.  *Id*. at 178.[4]

IPP Lead Counsel also asserts that separate trials of the 22 States and the New States are not likely to consume "substantially more judicial resources than a single trial for all classes."  Mot. at 7. That is wrong.  It is very likely that much of the same evidence presented in a potential 22 States trial would have to be presented again in the subsequent trial for the New States.  It thus appears just as likely, or perhaps even more likely, that the result of bifurcation would be a significant waste of judicial resources.  The 22 States maintain that such duplication is not necessary because "any defensive issues submitted to the jury could reduce the scope of any subsequent trials for the New States." Mot. at 7.  But as the court in *Eastman Kodak Co.* (a case cited by IPPs, *see* Mot. at 7) makes clear, "the trial court may only invoke offensive collateral estoppel when the plaintiff could not have easily joined in the prior action."  *GAF Corp. v. Eastman Kodak Co.,* 519 F. Supp. 1203, 1212 (S.D.N.Y. 1981).[5]  Here, the New States seek to join in the action and, if their claims are found viable, could certainly join in a trial as contemplated under the original trial schedule proposed by all parties.

The 22 States point to the fact that the Court previously ordered separate trials in CRT as to the direct purchaser class case (against the Mitsubishi defendants), the Sharp case, and the Sears/Kmart

---

[4] The 22 States' citation to *In re Plastics Additives Antitrust Litigation* also fails to support their argument, as the court explicitly refrained from addressing the question at issue here—namely the "propriety of severance or bifurcation." No. 03-CV-2038, 2006 WL 6172033, at *3 (E.D. Pa. Dec. 20, 2006).

[5] *SEC v. Alexander* is inapposite, as the court there applied non-mutual collateral estoppel to prevent a defendant from denying liability in a civil action based on defendant's previous criminal conviction. 115 F. Supp. 3d 1071, 1081 (N.D. Cal. 2015).

1    case.  But "[a] decision ordering bifurcation is dependent on the facts and circumstances of each

2    case." *Green v. Baca,* 226 F.R.D. 624, 630 (C.D. Cal. 2005).  And none of the rulings that the 22 States

3    cite support bifurcation here because the facts are readily distinguishable. Bifurcation can be

4    appropriate where there are insufficient common issues of law and fact between various cases or when

5    different plaintiffs are pursuing different claims against different defendants. *Ampicillin*, 88 F.R.D. at

6    177.  When the DPP and the two opt-out cases were bifurcated, it was because the DPPs were only

7    going to trial against the Mitsubishi Electric Defendants (*see* CMC statement, ECF No. 3939), having

8    settled with all other defendants by that time.  Moreover, the Sharp and Sears/Kmart cases were

9    separated because Sharp was asserting claims based on direct purchases of standalone CRT tubes,

10   whereas Sears/Kmart was asserting indirect claims based on purchases of finished products containing

11   CRTs.  *See* ECF No. 3969, at 12:4-9.  But in this case, at this time, it is not convenient, expeditious,

12   or economical to plan for two antitrust jury trials against the same group of defendants, splitting IPPs

13   in some states into one trial and other states into a separate trial.  Here, the distinction between the 22

14   States and the New States is not based on any distinction in triable issues or facts.  Rather, the

15   distinction is based on questions about whether the New States have viable, timely claims and whether

16   they are appropriate for class certification—questions that will be addressed by the Court well before

17   trial.

18        Lastly, IPP Lead Counsel takes liberties by relying on case history to assert that setting a trial

19   date "may focus settlement discussions."  Mot. at 7.  It is true that the parties reached settlements in

20   2015, but the March 2015 trial date proved more often to impede, rather than facilitate, IPPs' ability

21   to negotiate.  Indeed, many of the settlements were reached after the trial date was vacated and

22   indefinitely postponed.  A December 2014 Report and Recommendation prepared by Special Master

23   Walker more accurately captures the dynamic in 2015.  In that report, Special Master Walker stated

24   that "fast approaching pretrial and trial dates . . . are usually conducive to settlements" but "IPP lead

25   counsel has made little progress in the face of these looming deadlines."  Special Master's R&R re

26   Settlement, ECF No. 3200 at 4.  Special Master Walker also noted that IPP Lead Counsel did not

27   engage in "settlement discussions . . . with the degree of earnestness required to produce results" and

28   attributed that to being "understaffed in the face of the demands of getting ready for trial."  *Id.*  The

1    IPPs' documented difficulties in balancing the rigors of settlement and trial preparation do not support

2    returning to that dynamic again, but endorse allowing the mediation to proceed as the Court originally

3    planned.

4         IPP Lead Counsel has failed to meet his burden of demonstrating that bifurcation is warranted

5    based on the particular facts and circumstances of this case.  A single trial will avoid the duplication

6    and expense of having to call witnesses twice (many of whom reside abroad), avoid contradictory

7    results, and promote efficiency.  It will be more efficient to determine the viability of the New States

8    promptly, while continuing mediation efforts.  After mediation and a pleading is filed on behalf of the

9    New States, if necessary, a new schedule can be set that promotes efficiencies across all of the cases.

10   Defendants' proposal is not only consistent with the parties' previously agreed scheduling proposal,

11   but also with this Court's previous scheduling order, declining to set a trial date until "a pleading [is]

12   filed on behalf of [the New States]."  ECF No. 5459.

13   **V.    CONCLUSION**

14        For these reasons, the Court should deny the 22 States' Motion to Set Trial Date.

15

16    Dated: July 17, 2019                          Respectfully submitted,

17
                                                    */s/ Jeffrey L. Kessler*
18                                                  WINSTON & STRAWN LLP
                                                    JEFFREY L. KESSLER
19                                                  jkessler@winston.com
                                                    EVA W. COLE
20                                                  ewcole@winston.com
                                                    SOFIA ARGUELLO
21                                                  sarguello@winston.com
                                                    200 Park Avenue
22                                                  New York, NY 10166-4193
                                                    Telephone:     (212) 294-6700
23                                                  Facsimile:     (212) 294-4700

24                                                  KEVIN B. GOLDSTEIN
                                                    kbgoldstein@winston.com
25                                                  35 W. Wacker Drive
                                                    Chicago, IL 60601-9703
26                                                  Telephone:     (312) 558-5600
                                                    Facsimile:     (312) 558-5700
27
                                                    WEIL, GOTSHAL & MANGES LLP
28                                                  DAVID L. YOHAI

1          david.yohai@weil.com
         ADAM C. HEMLOCK
2          adam.hemlock@weil.com
         DAVID YOLKUT
3          david.yolkut@weil.com
         767 Fifth Avenue
4          New York, NY 10153-0119
         Telephone:     (212) 310-8000
5          Facsimile:      (212) 310-8007

6          *Attorneys for Defendants Panasonic*
         *Corporation, Panasonic Corporation of North*
7          *America, and MT Picture Display Co., Ltd.[6]*

8          */s/ Christopher M. Curran*
         WHITE & CASE LLP
9          CHRISTOPHER M. CURRAN
         ccurran@whitecase.com
10         LUCIUS B. LAU
         alau@whitecase.com
11         DANA E. FOSTER
         defoster@whitecase.com
12         701 Thirteenth Street, N.W.
         Washington, DC  20005
13         Telephone:   (202) 626-3600
         Facsimile:    (202) 639-9355

14  

15         *Attorneys for Defendants Toshiba Corporation,*
         *Toshiba America, Inc., Toshiba America*
         *Information Systems, Inc., Toshiba America*
16         *Consumer Products, L.L.C., and Toshiba*
         *America Electronic Components, Inc.*

17  

18         */s/ Andrew Rhys Davies*
         ALLEN & OVERY LLP
19         MICHAEL S. FELDBERG
         michael.feldberg@allenovery.com
20         ANDREW RHYS DAVIES
         andrewrhys.davies@allenovery.com
21         1221 Avenue of the Americas
         New York, NY 10020
22         Telephone:  (212) 610-6300
         Facsimile:  (212) 610-6399

23         JOHN ROBERTI
         john.roberti@allenovery.com
24         ALLEN & OVERY LLP
         1101 New York Avenue NW
25         Washington, DC 20005
         Telephone:  (202) 683-3800
26         Facsimile:  (212) 610-6399

27

---

[6] MT Picture Display Co., Ltd. has been dissolved and completed final liquidation proceedings in Japan on May 23, 2019.

28

*Attorneys for Defendants Samsung SDI Co.,
Ltd.; Samsung SDI America, Inc.; Samsung SDI
Mexico S.A. De C.V.; Samsung SDI Brasil
Ltda.; Shenzhen Samsung SDI Co., Ltd.; Tianjin
Samsung SDI Co., Ltd.; and Samsung SDI
(Malaysia) Sdn. Bhd.*

*/s/ John M. Taladay*
BAKER BOTTS LLP
JOHN M. TALADAY
john.taladay@bakerbotts.com
ERIK T. KOONS
erik.koons@bakerbotts.com
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2400
Telephone:   (202) 639-7700
Facsimile:   (202) 639-7890

*Attorneys for Defendants Koninklijke Philips,
N.V., Philips North America Corporation,
Philips Taiwan Limited, and Philips do Brasil,
Ltda*

*/s/ Kathy L. Osborn*
FAEGRE BAKER DANIELS LLP
KATHY L. OSBORN
Email: kathy.osborn@FaegreBD.com
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000

JEFFREY S. ROBERTS
Email: jeff.roberts@FaegreBD.com
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
Telephone: (303) 607-3500
Facsimile: (303) 607-3600

*Attorneys for Defendants Thomson SA and
Thomson Consumer Electronics, Inc.*

*/s/ Donald A. Wall*
SQUIRE PATTON BOGGS (US) LLC
DONALD A. WALL
Email: donald.wall@squirepb.com
1 East Washington Street, Suite 2700
Phoenix, AZ 85004
Telephone: (602) 528-4005
Facsimile: (602) 253-8129

*Attorneys for Defendant Technologies
Display Americas LLC*

11

1

2
　　　　　　　　　　　　　　　　　/s/ Eliot A. Adelson
　　　　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP

3
　　　　　　　　　　　　　　　　　ELIOT A. ADELSON
　　　　　　　　　　　　　　　　　Email: eadelson@kirkland.com
　　　　　　　　　　　　　　　　　555 California Street, 27th Floor

4
　　　　　　　　　　　　　　　　　San Francisco, CA 94104
　　　　　　　　　　　　　　　　　Telephone: (415) 439-1413

5
　　　　　　　　　　　　　　　　　Facsimile: (415) 439-1500

6
　　　　　　　　　　　　　　　　　*Attorneys for Defendants Hitachi Ltd., Hitachi*
　　　　　　　　　　　　　　　　　*Displays, Ltd. (n/k/a Japan Display, Inc.),*

7
　　　　　　　　　　　　　　　　　*Hitachi Asia, Ltd., Hitachi America, Ltd., and*
　　　　　　　　　　　　　　　　　*Hitachi Electronic Devices (USA), Inc.*

8

9
　　　　　Pursuant to Civil L.R. 5-1(i)(3), the filer attests that concurrence in the filing of this

10
document has been obtained from each of the other signatories.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Opposition to IPPs' Motion to Set Trial Date
MDL No. 1917 – Case No. 3:07-cv-5944-JST