MARIO N. ALIOTO (SBN 56433)
JOSEPH M. PATANE (SBN 72202)
LAUREN C. CAPURRO (SBN 241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
Email: malioto@tatp.com; jpatane@tatp.com;
laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-5944-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>*ALL INDIRECT PURCHASER ACTIONS* | **INDIRECT PURCHASER PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO SET TRIAL DATE**<br><br>Date:      August 8, 2019<br>Time:     2:00 p.m.<br>Judge:    Honorable Jon S. Tigar<br>Courtroom: 9 |

1

## I. INTRODUCTION.

Indirect Purchaser Plaintiffs representing the 22 certified state classes ("IPPs") submit this Reply in Support of their Motion for an Order setting a trial date (ECF No. 5519).

Philips, Panasonic, Hitachi, Toshiba, Samsung SDI and Thomson/TDA Defendants (the "Defendants") and indirect purchasers in new states represented by separate counsel ("New States") oppose the motion on the grounds that setting a trial date for the IPPs now would be inefficient and prejudicial. ECF No. 5525 ("Defs. Opp."); ECF No. 5524 ("NS Opp."). Defendants' and the New States' oppositions are without merit.

*First*, Defendants and the New States fail to address the fundamental premise of IPPs' motion—namely, the prejudicial delay to IPPs if they are forced to wait for the New States to catch up. Indeed, while the Defendants and the New States suggest that the IPPs' and New States' cases should be tried together, neither proposes any schedule setting a trial date— expedited or otherwise—to get the New States' claims "at issue." Both seem unfocused on moving the New States' claims forward. In essence, they are proposing an indefinite stay of the IPP action without any showing of the need for that stay, without any regard to the prejudice to IPPs, and without any attempt to mitigate that prejudice.

*Second*, IPPs do not seek "bifurcation" here. The New States' claims have not yet been filed and as a result are not consolidated with IPPs' claims. Neither Defendants nor New States can dispute the advanced stage of the IPPs' case or the embryonic stage of the New States' case. New States have not commenced their proceedings, and when they will do so is unknown. These contrasting procedural postures amply justify a separate IPP trial.

*Third*, potential mediation before Magistrate Judge Corley provides no reason to delay setting a trial date. There is no reason why mediation with Magistrate Judge Corley cannot continue apace while the IPPs move toward trial. Granting IPPs' Motion and setting a trial date simply ensures that, if the mediation is unsuccessful, no additional time is lost.

*Finally*, Defendants and New States ignore the practical reality that (assuming the New States survive the pleading stage) the resolution of dispositive motions and trial of the IPP case

will facilitate settlement for the New States, whether or not collateral estoppel applies. Thus, setting the IPP case for trial in March 2020 and moving both the IPPs' and the New States' claims forward will help focus the parties on resolving this matter sooner rather than later.

## II. ARGUMENT.

### A. IPPs Will Be Prejudiced by Delaying a Trial Setting.

IPPs' opening papers show that the IPP case has been pending for almost 12 years, involves claims dating back more than 24 years, and can be ready for trial by March 2020. A March 2020 trial date for the IPPs' claims is thus appropriate, and further delay would be prejudicial to the members of the 22 certified classes. At the same time, IPPs emphasized their continuing desire to preserve the existing settlements for the benefit of the 22 certified classes and agree that mediation before Judge Corley should continue. IPPs submit that this two-path approach to advancing the IPPs' litigation will best "secure the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. Pro. 1.

Defendants and the New States oppose IPPs' motion to set a March 2020 trial date for IPPs on the grounds that separate trials would not be efficient or convenient. Both apparently want the IPPs to wait 18 - 24 months or more—on top of the 12 years of litigation to date—to try their claims should the mediation fail. Their arguments lack merit.

In their opposition, the Defendants assert that "it is expected that that [New States] will seek to file a new pleading on behalf of those plaintiffs soon" (Defs.' Opp. at 1) and speculate that only a "few more months" would be needed to resolve the viability of the New States' claims. But, Defendants fail to explain why waiting for resolution of the viability of the New States' claims accomplishes anything. If this Court were to determine that the New States' claims are not viable, the delay in setting a trial date for the IPPs' claims will have accomplished nothing but delay. If this Court determines that the New States' claims are viable, the basis for

IPP's motion for trial date remains, as neither Defendants nor New States dispute IPPs' estimate that it will take 18 months or more for the New States to get past class certification.[1]

Moreover, rather than filing a motion to intervene or a motion to amend the complaint to allege their claims, or otherwise moving their claims forward, the New States on July 19th filed a motion to vacate the settlements. *See* ECF No. 5527.[2] The New States' focus on ending efforts to renegotiate or amend the settlements, as opposed to filing their claims, litigating their viability, and quickly moving to discovery and class certification, foreshadows the slow pace and unnecessary delays IPPs will face if they are forced to wait for the New States to be trial-ready. During the years it will likely take the New States and Defendants to proceed through pleading motions, class certification and any needed discovery, witnesses (and class members) may die or otherwise become unavailable, memories will continue to fade, Defendants' financial statuses may change, and compensation to class members in the 22 certified classes for injuries incurred up to 24 years ago will be further delayed. The present posture of this case provides meaning to the legal maxim that "justice delayed is justice denied."

Defendants' self-serving assertion that IPPs are "far from trial-ready" is also incorrect. Defendants do not dispute that IPPs and Defendants have already completed all discovery, briefed dispositive motions (several of which have since been decided in the Direct Action Plaintiffs' cases), exchanged expert reports, trial exhibits, deposition and witness lists, negotiated jury instructions, and filed motions in limine. IPPs and Defendants have already taken their case about as far as parties can without commencing trial. The New States are at the opposite end of the spectrum—they have not even filed their claims and there is no schedule for them to do so.

---

[1] Indeed, this Court's determination of whether the New States' claims are viable may not end the inquiry or the delay, as a statutes of limitations ruling will likely be appealed, either as of right by the New States or permissively by Defendants. The median time from notice of appeal to decision in the Ninth Circuit is 22.8 months. *See* https://www.uscourts.gov/statistics/table/b-4a/judicial-business/2017/09/30.

[2] After IPPs filed the instant motion, New States' counsel provided Class Counsel with a schedule for filing and litigating the validity of an "amended pleading." The schedule apparently was also sent to Defendants. It is unknown if Defendants are amenable to permitting an "amended pleading" or the schedule generally.

The contrasting procedural posture of the IPPs' case and that of the New States weighs strongly in favor of setting a near-term trial date for the IPPs. *See Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984) ("In the present case the claims against the trustees were ready for trial whereas the third party claims were still early in discovery; indeed, not all of the third parties had been served, much less deposed or subjected to discovery requests. Thus, it was not an abuse of discretion for the court to sever those claims from the instant action.").

### B. IPPs Do Not Seek "Bifurcation" Under Rule 42(b).

Both Defendants and New States also dispute the propriety of setting separate trials under Rule 42(b). Their arguments mischaracterize the facts and the law.

First, Defendants' argument that IPPs improperly seek "bifurcation" of the New States claims mischaracterizes the procedural posture of the New States' claims. Because the New States' claims are unfiled, there is no consolidation of the IPPs' case and any New States claims under Rule 42. Defendants acknowledge as much when they assert that "it is premature to set a trial schedule until New States have filed a pleading." Opp. at 2. Thus, because the cases are not consolidated, there is no "bifurcation," and Rule 42 is not yet directly applicable here. In fact, courts have refused to consolidate cases for purposes of trial under Rule 42 where—as here—one case was far more procedurally advanced and trial-ready than the other. *See St. Bernard General Hosp., Inc. v. Hospital Service Assoc. of New Orleans*, 712 F.2d 978, 989-90 (5th Cir. 1983) (upholding district court denial of consolidation where "cases were at different stages of preparedness for trial"); *Prudential Ins. Co. of America v. Marine Nat. Exchange Bank*, 55 F.R.D. 436, 437 (E.D. Wis. 1972) (denying consolidation where "consolidation would further prevent the setting of a trial date for action that is ready for disposition" notwithstanding common questions of law in both cases). Similar considerations apply here.

Second, this is not a situation where, as in the cases cited by Defendants, a party seeks to carve out the trial of discrete sub-issues in its own case. *See, e.g.*, *Clark v. I.R.S.*, 772 F. Supp. 2d 1265, 1267-69 (D. Haw. 2009) (rejecting plaintiff's request to separately try liability and damages phases of case); *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 100

(N.D. Cal. 1992) (rejecting defendant's request "to have the issues of validity, infringement, marking and notice of infringement tried separately from and before the issues of willful infringement and damages"). Rather, here, IPPs and Defendants have advanced their litigation to near-completion, and the New States' claims have not even been filed and will not be trial-ready (if ever) for years to come. It is also possible that some or all of the New States' claims may not survive a motion to dismiss. Thus, delaying IPPs' case could be for naught.

### C. Overall Case Efficiencies Support IPPs' Request for a Trial Date.

Defendants and New States also cannot overcome the efficiencies that will be gained from IPPs trying their case first. New States do not dispute the advantages of offensive collateral estoppel that will be available to them on all motion practice and trial proceedings on which IPPs prevail. Indeed, New States may commence trial several years from now with nothing more to prove than the amount of damages.[3]

Defendants' only response is that offensive collateral estoppel may not apply because the court in *GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203, 1212 (S.D.N.Y. 1981) indicated that such collateral estoppel may only be invoked "when the plaintiff could not have easily joined in the prior action." Def. Opp. at 7. The latter consideration stems from commentary in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), in which the Court "cautioned that the policies of judicial economy could be frustrated by the application of offensive collateral estoppel in instances in which the plaintiff could easily join in an earlier action, but instead adopts a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment." *See Eastman Kodak*, 519 F. Supp. at 1214 (quoting *Parklane Hosiery,* 439 U.S. at 330). Here, counsel for the New States were just recently appointed and even if they were supremely diligent, it would be virtually impossible for them to be trial ready by March

---

[3] New States' assertion that IPPs' request would result in two "virtually identical" (NS Opp. at 1) trials fails to consider the availability of offensive collateral estoppel to preclude re-litigation of the existence of a conspiracy and impact to consumers, among other issues. *SEC v. Alexander,* 115 F. Supp. 3d 1071, 1081 (N.D. Cal. 2015) (plaintiff granted summary judgment on defendants' liability based on prior jury verdict against defendants). Moreover, an early trial of IPPs' claims would not prejudice the New States; rather, it would be a benefit to them.

2020. Thus, the New States are not the "wait and see" plaintiffs against which *Parklane Hosiery* cautioned.

Additionally, in the event that the IPPs do not prevail at summary judgment or trial, and collateral estoppel efficiencies are unavailable to the New States, Defendants can obtain efficiencies by asking this Court to follow its prior rulings on summary judgment or at trial. Such rulings would also meaningfully inform the parties' subsequent efforts to resolve the case. Indeed, regardless of whether the IPPs prevail at trial or not, their earlier trial could function as a "bellwether trial" and promote settlement "by giving the [Defendants and New States] an early understanding of the strengths and weaknesses of each party's position and a sense of the value of [the New States' claims]." *See Bellwether Trials in MDL Proceedings, A Guide for Transferee Judges*, p. 4, Federal Judicial Center and Judicial Panel on Multidistrict Litigation (2019). Lastly, with the same court handling both the IPPs' and New States' claims, any risk of inconsistent rulings should be *de minimis*.

Defendants make much of the joint scheduling proposal submitted by IPPs and Defendants in April. But as IPPs explained in the Motion, circumstances have changed since that filing, prompting IPP's motion. New States do not appear focused on moving their case forward expeditiously, but instead appear focused on seeking to preclude negotiation of amended or revised settlements with the Defendants. *See* ECF No. 5527. Significantly, New States say nothing in their opposition about IPPs/Defendants' prior scheduling proposal, or about their prior commitment to a class hearing on January 16, 2020 and an August 24, 2020 trial date. *See* ECF Nos. 5453, 5454. Perhaps they recognize that, given their inaction on intervention and/or filing a pleading, the latter dates are not realistic.[4] But one thing is certain: simply getting the New States' claims "at issue" is a long way off, and necessitates that IPPs expeditiously move forward on their own toward a near-term trial.

---

[4] It is also notable that Judge Corley is now separately tracking the IPPs' and New States' mediations with Defendants. *See* ECF No. 5523.

1  Finally, Defendants' assertion that setting a trial date will not focus settlement
2  discussions because "many of the settlements were reached [in 2015] after the trial date was
3  vacated," is false.  At the time the Court vacated the trial date on February 8, 2015, IPPs had
4  settlements in principle with four out of the five then-remaining defendants, with all of those
5  settlements having been reached within the preceding few months. *See* ECF No. 4071-1, ¶¶ 107-
6  109, 111.[5]  Thus, the impending March 2015 trial date clearly focused the parties' settlement
7  discussions and will do so again now.

**III.  CONCLUSION**.

For eight years, from 2007 to 2015, IPPs engaged in a litigation marathon heading toward trial on behalf of the 22 certified states they now represent.  At the time these cases settled, IPPs were nearing the finish line.  By their oppositions to IPPs' motion, Defendants now want the IPPs to stop at mile 25 and wait for the New States to catch up, so they can cross the finish line together.  But with no pleading on file, the New States have not even reached the starting line, and it is unknown how many of their claims will survive Defendants' anticipated pleading motions.  Moreover, even if some of the New States' claims survive, it is clear that those claims will be mired in discovery, class certification and motion practice for years to come.  For all of the above reasons, IPPs' case should be set for trial in March 2020.

Dated:  July 24, 2019                              Respectfully submitted,

 */s/ Mario N. Alioto*
Mario N. Alioto (56433)
malioto@tatp.com
Joseph M. Patane (72202)
jpatane@tatp.com
Lauren C. Capurro (241151)
laurenrussell@tatp.com
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123

---

[5] IPPs settled with the fifth defendant (Toshiba) in early March 2015.  *Id*. ¶ 110.  Thomson and TDA were not defendants in the IPP case at that time.  *See* ECF No. 3875 at 1, n. 2.  IPPs later added Thomson/TDA as defendants in a separate but related action (*Luscher v. Videocon Industries, Ltd., et al.*, 13-cv-03234-JST, ECF No. 25) and entered into a settlement in June 2015.  ECF No. 4071-1, ¶ 112.

7

|    |    |
|----|----|
| 1  | Telephone: 415-563-7200 |
| 2  | Facsimile: 415-346-0679 |
| 3  | *Lead Class Counsel for Indirect Purchaser Plaintiffs* |
| 4  |    |
| 5  |    |
| 6  |    |
| 7  |    |
| 8  |    |
| 9  |    |
| 10 |    |
| 11 |    |
| 12 |    |
| 13 |    |
| 14 |    |
| 15 |    |
| 16 |    |
| 17 |    |
| 18 |    |
| 19 |    |
| 20 |    |
| 21 |    |
| 22 |    |
| 23 |    |
| 24 |    |
| 25 |    |
| 26 |    |
| 27 |    |
| 28 |    |