Pages 1 - 38

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JON S. TIGAR

```
IN RE:  CATHODE RAY TUBE (CRT)    )
ANTITRUST LITIGATION              )
                                  ) No. C 07-5944 JST
                                  ) MDL No. 1917
                                  )
                                  )  San Francisco, California
                                  )  Thursday
                                  )  August 8, 2019
_____   )  2:00 p.m.
```

**APPEARANCES**:

**For Class Plaintiffs:**

FREEDMAN BOYD HOLLANDER GOLDBERG URIAS
 & WARD, PA
20 First Plaza N.W.
Suite 700
Albuquerque, New Mexico 87102
BY: **JOSEPH GOLDBERG, ESQ.**


KIRBY MCINERNEY, LLP
600 B Street
Suite 2110
San Diego, California 92101
BY: **ROBERT J. GRALEWSKI, ESQ.**


CRABTREE & AUSLANDER
240 Crandon Boulevard
Suite 101
Key Biscayne, Florida 33149
BY: **JOHN GRANVILLE CRABTREE, ESQ.**


**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


Reported By:   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
          *Official Reporter - US District Court*
          *Computerized Transcription By Eclipse*

```
 1   APPEARANCES:   (CONTINUED)

 2   For Indirect Purchaser Plaintiffs:
                         TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
 3                       2280 Union Street
                         San Francisco, California 94123
 4                 BY:   MARIO ALIOTO, ESQ.
                         LAUREN CAPURRO, ESQ.
 5                       JOSEPH M. PATANE, ESQ.

 6

 7   For Non-Repealer States:
                         COOPER & KIRKHAM, P.C.
 8                       357 Tehama Street
                         Second Floor
 9                       San Francisco, California 94103
                   BY:   JOHN DMITRY BOGDANOV, ESQ.
10                       TRACY R. KIRKHAM, ESQ.

11

12   For Omitted Repealer States:
                         BONSIGNORE TRIAL LAWYERS, PLLC
13                       2513 Morocco Avenue
                         Las Vegas, Nevada 89031
14                 BY:   ROBERT J. BONSIGNORE, ESQ.

15

16                       LAW OFFICES OF FRANCIS O. SCARPULLA
                         456 Montgomery Street
17                       17th Floor
                         San Francisco, California 94104
18                 BY:   FRANCIS ONOFREI SCARPULLA, ESQ.
                         PATRICK BRADFORD CLAYTON, ESQ.
19

20                       LAW OFFICES OF THERESA D. MOORE
21                       One Sansome Street
                         35th Floor
22                       San Francisco, California 94104
                   BY:   THERESA D. MOORE, ESQ.
23

24          (APPEARANCES CONTINUED ON FOLLOWING PAGE)

25
```

```
 1   APPEARANCES:   (CONTINUED)

 2   For the Government of Puerto Rico:
                          BECKER VISSEPO, PSC
 3                        PO Box 9023914
                          SAN JUAN, Puerto Rico 00902
 4              BY:  JANE AMY BECKER WHITAKER, ESQ.

 5

 6   For EPPS:
                          ZELLE, LLP
 7                        44 Montgomery Street.
                          Suite 3400
 8                        San Francisco, California 94104
                BY:  CRISTOPHER MICHELETTI, ESQ,
 9

10

11   For Defendant Mitsubishi Electric:
                          JENNER & BLOCK, LLP
                          353 North Clark Street
12                        Chicago, Illinois 60654
                BY:  MICHAEL T. BRODY, ESQ.
13

14

15   For Defendant Toshiba:
                          WHITE & CASE, LLP
                          701 Thirteenth Street, NW
16                        Washington, DC 20005
                BY:  CHRISTOPHER M. CURRAN, ESQ.
17                   MATTHEW FRUTIG, ESQ.

18

19   For Defendant Hitachi, Ltd.:
                          KIRKLAND & ELLIS, LLP
20                        555 California Street
                          27th Floor
21                        San Francisco, California 94104
                BY:  ELIOT A. ADELSON, ESQ.
22

23

24            (APPEARANCES CONTINUED ON FOLLOWING PAGE)

25
```

**APPEARANCES:   (CONTINUED)**

**For Defendant Philips Electronics:**
                        BAKER BOTTS, LLP
                        1299 Pennsylvania Avenue, NW
                        Washington, DC 20004
                   BY:  **JOHN M. TALADAY, ESQ.**


**For Defendant Panasonic Corporation:**
                        WINSTON & Strawn, LLP
                        35 W. Wacker Drive
                        Chicago, Illinois 60601
                   BY:  **KEVIN B. GOLDSTEIN**


                        WINSTON & STRAWN, LLP
                        200 Park Avenue
                        New York, New York 10166
                   BY:  **JEFFREY L. KESSLER, ESQ.**


**For Defendants Thomson/Technicolor:**
                        FAEGRE BAKER DANIELS
                        1144 15th Street
                        Suite 3400
                        Denver, Colorado 80202
                   BY:  **JEFFREY SCOTT ROBERTS, ESQ.**


**For Defendants Samsung SDI:**
                        ALLEN & OVERY, LLP
                        1221 Avenue of the Americas
                        New York, New York 10010
                   BY:  **ANDREW RHYS DAVIES, ESQ.**


**For Defendant Financial Recovery Services:**
                        ROSEN BIEN GALVAN & GRUNFELD, LLP
                        101 Mission Street.
                        Sixth Floor
                        San Francisco, California 94105
                   BY:  **VAN SWEARINGEN, ESQ.**

                        -   -   -

<u>**Thursday - August 8, 2019**</u>                          <u>**2:06 p.m.**</u>

P R O C E E D I N G S

---oOo---

        **THE CLERK:**  Your Honor, now calling Civil Matter

07-5944, MDL No. 1917, Regarding Cathode Ray Tube Antitrust

Litigation.

        If counsel could please come forward and state your

appearances.

        **THE COURT:**  Their appearances have all been noted for

the record, so we'll get right to it.  If your appearance

hasn't been noted for the record, at some point before you

leave make sure you check-in with Ms. Lee.

        All right.  Before we get going, what I thought I would do

is just lay out the issues as I understand them and then give

anybody who wants to a chance to respond.

        I often am able to set this case by itself and today that

isn't true.  I have two very weighty motions behind you, so

please bear that in mind.

        These are in no particular order.  I think the most

important question I had was a scheduling question.  I asked

the parties to put in a whole variety of dates, and you did

that, and I appreciate that.  I have the sense that the

negotiations between these parties on these issues are not as

fluid as they might be.  I expect that will change with time.

        The defendants, for their part, make the suggestion that I

 1   not set a schedule much past or past the Motion to Intervene,

 2   motion to amend the Complaint schedule.  I wrestled with that a

 3   little bit, but tentatively I think that's correct.  I don't

 4   know how I could set a class certification schedule when I

 5   don't even know what the operative pleadings are or who the --

 6   who the parties are or what the claims are at issue in the

 7   case.

 8        I had to wrestle with that only because, of course, I very

 9   badly want to set as many deadlines as I possibly can in this

10   case because I think it suffers from -- because I'm worried

11   that it will -- that it might otherwise drift.  But having

12   thought that through, that's where I am right now.

13        I do understand that after we get that sorted, that the

14   defendants will have the opportunity to engage in some motion

15   practice.  This case has been over-litigated, as I've said

16   before.

17        I will say this now.  I would expect that summary judgment

18   would be sought only on grounds that are unique to these

19   subclasses or on issues as to which there had been a change in

20   controlling authority.  I'm not interested in having a look at

21   what might have been happening in another circuit or somebody's

22   novel ideas about what we -- what other considerations might

23   apply.

24        We had a summary judgment deadline in this case.  I had

25   the opportunity to resolve many summary judgment motions, all

1   of which were filed before I took the case over.  And I think

2   there has been -- for the most part people have received the

3   process that they were due on that point.

4        There was a letter filed on July 31 by Mr. Scarpulla in

5   which he objects to not having been included in some settlement

6   negotiations that took place.  That letter was signed not only

7   by Mr. Scarpulla, but also by Mr. Bonsignore and Ms. Moore.

8   What I would say to that is I'm not involved in that.  I don't

9   tell people who to settle with.

10       I was asked vehemently -- well, vehemently.  I was asked

11  with great conviction if I would please appoint separate

12  lawyers for these subclasses because I was told:  We wish to

13  fight.  Good, fight.  But please don't tell me to tell some

14  party that wants to settle with fewer than everybody that they

15  have to talk only to everybody.  I just don't think that's the

16  way it works.

17       I don't have an opinion about whether there needs to be a

18  Motion to Intervene.  That's one of those things I can't know,

19  unfortunately, until I have all the briefing in front of me.

20  Then I'll know.

21       I'm told some people think there needs to be a Motion to

22  Intervene.  I take the request -- I take that statement as

23  having been made in good faith.  I take it at face value.  I

24  will read these motions when they come in carefully.

25       One thing that did catch my eye is the argument that some

1    defendants might ask for a motion to amend to be denied on

2    grounds of futility.  In a case called *Henderson versus Muniz*,

3    M-U-N-I-Z, which was not reported, which appears at 2018 WL

4    6331008, I said:

5              "Denial of a motion for leave to amend on the

6         ground of futility is rare, and Courts generally defer

7         consideration of challenges to the merits of a

8         proposed amended pleading until after leave to

9         amendment is granted and the amended leave -- excuse

10        me, and the amended pleading is filed."

11   I was quoting the other case in part when I said that.

12        Anybody who wants to make an argument in opposition to a

13   motion to amend that amendment would be futile is asked to read

14   that case, as well as the following cases, which I also issued

15   orders in.

16   *Slavkov versus Fast Water Heater Partners*, 2015 WL

17   5071933.

18   LiveCareer, Limited versus Su Jia Technologies, Limited,

19   2015 WL 4089800.

20   *Todd versus Tempur Sealy International, Inc.*, 2015 WL

21   5064076.

22   *Allen versus Bayshore Mall*, 2013 WL 6441504.

23   MagTarget LLC versus Saldana, 2019 WL 1904205.

24   DPIX LLC versus Yieldboost Technologies, Incorporated,

25   2015 WL 5158534.

1      *Walintukan*, W-A-L-I-N-T-U-K-A-N, *versus SBE Entertainment*

2    *Group*, 2017 WL 635278.

3      Oracle America, Inc. versus Hewlett Packard Enterprise

4    Company, 2017 WL 3149297.

5      And *Pineda versus Lee*, 2014 WL 2927160.

6      It occurred to me that the person that put that in the

7    case management statement might not have had the benefit of

8    reading those cases, and so I thought that perhaps those

9    references might be helpful.

10     On the subject of the *Luscher* -- Madam Reporter,

11   L-U-S-C-H-E-R -- *versus Mitsubishi* case, at the request of the

12   parties I administratively terminated a motion for approval

13   back in August of last year.  In that order I said:

14        "Once the IPPs request a ruling or the Court

15        issues a further order, the Court will rule on the

16        motion without need for action by any party unless

17        otherwise ordered."

18     I read the status update that was put in by the Mitsubishi

19   folks.  I did not take that as a request.  I took that just as

20   a status update.  I didn't take it as a request to consider

21   approval of the settlement.  I just wanted to make sure that my

22   understanding in that regard was correct.

23     Obviously, folks are here today and if they think that

24   it's time to start the clock again on that settlement, you can

25   tell me.

 1          I welcome the Commonwealth of Puerto Rico to this case.  I

 2     fear that perhaps getting stuck in an elevator was a metaphor

 3     for you.

 4          (Laughter.)

 5          There is a reason this case has a 2007 case number.  But I

 6     welcome you to the case.  If there is anything that you want me

 7     to know about your case while you're here today, please tell

 8     me.  I'm always looking for additional good case management

 9     ideas and if you have any, I'm all ears.

10          But for now, I'll just note that I saw the notice of a

11     potential tag-along case, and I did see that counsel for that

12     party, Ms. Whitaker, had entered an appearance today.

13          I have a strong interest in getting immediately to a place

14     of resolution on the question of how these new subclasses,

15     which is what I'll call them for now, get ahold of the

16     discovery from the IPPs.  I understand -- none of the issues

17     that are identified in the case management statements on that

18     subject are surprising to me.  There will have to be some

19     negotiations.

20          But given the at least mildly frictive relationship

21     between those parties to this point and not having a tremendous

22     amount of data in favor of the idea that unassisted negotiation

23     will produce results, I would like to -- I wonder whether

24     facilitated negotiation would be helpful; and if it would be,

25     who should do the facilitating.  Judge Walker seems to me like

```
 1   an excellent choice, but I'm all ears.  But I do think we need
 2   to appoint somebody.
 3        Let me raise this now.  I might not resolve it today, but
 4   I want to put this in your thinking caps.
 5        Judge Conti issued two orders appointing Special Masters
 6   and he provided for complete de novo review of everything they
 7   did.  What an albatross.  I'm not saying that Special Masters
 8   are invariably right.  I am just saying that I don't think that
 9   de novo review is the right standard for every single question
10   that they might be asked to resolve.
11        I think this case could really benefit from continued
12   discovery work by Judge Walker, for example, should the need
13   arise.  I would ask the parties to consider -- let me finish
14   that sentence.  But I am considering sua sponte vacating the
15   order of appointment, because it just doesn't help me if
16   anybody can come to the Court and ask me to do the work all
17   over again.  There is enough work in this case.
18        So I would be interested in knowing on a non-binding
19   basis, because all this has to be done in writing and so forth,
20   whether the parties would object to an order that looked much
21   more like the standard of review that magistrate judges enjoy.
22   So for discovery more discretion, that sort of thing.
23        On the -- coming back to the -- I'm sorry this list is so
24   long, but there are so many of you, you know.  There is a
25   relationship here between these things.
```

1          On the subject of this discovery that the IPPs have, how

2   long do subclass counsel think realistically it will take to

3   review and analyze that discovery?  If you even know how much

4   of it there is.

5       Mr. Bonsignore, why are you standing up?

6          **MR. BONSIGNORE:**  Oh, I thought you were asking a

7   question.

8          **THE COURT:**  I'm just running a list.  Thank you.

9          I have been asked by the defendants to appoint one liaison

10  counsel for the admitted repealer state plaintiffs.  And *sotto*

11  *voce*, I assume they mean also one for the NRS plaintiffs.  I

12  intend to grant that request.

13         I'll give you your right to respond if you want to, but

14  I'm almost certain to grant the request.  So the real issue for

15  today's purposes is who is that person.

16         I note that the settling parties will propose amendments

17  to the existing settlement.  This is the recent IPP tentative

18  resettlement.  I don't have any opinion about whether that's

19  the best way of doing it or not.  As with these other motions,

20  I just need to see the papers.  It does seem to me that we need

21  a deadline for submission.  Anything reasonable is fine with

22  me, but I would like to set a deadline today.

23         That's my list.  Who wants to go first?

24         Mr. Scarpulla.

25         **MR. SCARPULLA:**  Yes, Your Honor.

1      On the question of filing a Motion to Intervene and/or for

2  amendment, I assume we're going to do that before we do

3  anything else in accordance with what Your Honor was talking

4  about.

5          THE COURT:  Yes.  That's the standing.

6          MR. SCARPULLA:  Correct.  I agree with you.

7      The reason why we had this big list here is because Your

8  Honor's order said give me all the dates and all the things you

9  need to do, so...

10         THE COURT:  No question.

11         MR. SCARPULLA:  Oh, okay.

12         THE COURT:  I just felt that I -- I was just

13  surprised that -- I was surprised at myself that I just kept

14  talking and talking and talking.  How could there be so many

15  open things?

16      No.  Parties were incredibly responsive --

17         MR. SCARPULLA:  Okay.  Okay.

18         THE COURT:  -- to my --

19         MR. SCARPULLA:  So what I would -- what I would

20  respectfully suggest is that the plaintiff group file a Motion

21  to Intervene and to amend on the same day, August 23rd, which

22  we agreed to, and then we can set a schedule.

23         THE COURT:  Everyone seems to agree to that, the

24  first part.

25         MR. SCARPULLA:  Correct.

```
 1              THE COURT:  Everyone seems to agree that on
 2   August 23rd --
 3              MR. SCARPULLA:  We should file something.
 4              THE COURT:  So that would be a component of the order
 5   I issue today.
 6              MR. SCARPULLA:  Correct.
 7              THE COURT:  Following up on that.  I would like to
 8   propose a schedule, which solely for reasons having to do with
 9   my own calendar, sort of strikes a middle path between the two
10   schedules that everyone proposed.  It seems to me like about
11   the right time and it would fit into my own Chambers workflow.
12        And that is a filing date of August 23rd.  An opposition
13   date of September 20.  A reply date of October 4.  And a
14   hearing take it of October 23.
15        Absent objection from anybody today, that will be the
16   Court's schedule.
17              MR. SCARPULLA:  That's fine with us, Your Honor.
18              THE COURT:  All right.  Very good.
19        Yes.
20              THE COURT REPORTER:  Counsel, your name, please.
21              MR. RHYS DAVIES:  Andrew Rhys Davies, representing
22   the Samsung SDI defendants.
23              MR. SCARPULLA:  And then, Your Honor, I take it that
24   what Your Honor plans to do is once there is a ruling on the
25   Motion to Intervene and/or -- and to amend, if Your Honor
```

 1  grants both of those motions, then we'll set a schedule for the

 2  12(b)(6) motion.  Those kinds of things.

 3          **THE COURT:**  Exactly.  Exactly right.

 4          **MR. SCARPULLA:**  Okay fine.

 5          **THE COURT:**  12(b)(6).  I would like to figure out at

 6  that time at least where certification is going to be.

 7          **MR. SCARPULLA:**  Correct.

 8          **THE COURT:**  Yeah.  So that would be the goal.

 9          **MR. SCARPULLA:**  Okay.

10          **THE COURT:**  And by that time I'm going to have to

11  hear from IPPs and defendants about when they think they can

12  get their things on file, but we should know more about that,

13  too.

14          **MR. SCARPULLA:**  Correct.  Okay.

15          **THE COURT:**  That's the idea.

16          **MR. SCARPULLA:**  Thank you, Your Honor.

17          **THE COURT REPORTER:**  Counsel, your name, please.

18          **MS. WHITAKER:**  Jane Becker Whitaker on representation

19  of the Government of Puerto Rico.

20          **THE COURT:**  Ms. Whitaker, welcome.

21          **MS. WHITAKER:**  Thank you, Your Honor.

22      And I agree with you about the metaphor because Puerto

23  Rico survives and we made it here.

24      I just want to say that given the 15-year statute of

25  limitations on unjust enrichment claims for -- in Puerto Rico,

 1    the Government filed these claims in Puerto Rico.   Defendants

 2    removed.   And given what's happened here, we filed our notice

 3    of tag-along.

 4              THE COURT:   Yes.

 5              MS. WHITAKER:   We're in agreement completely with the

 6    deadlines suggested by the other counsel, and we don't see a

 7    problem with the trial date, given the -- given that we

 8    understand there will be cooperation with discovery.

 9              THE COURT:   I'm interested in setting a trial date as

10    soon as I can, although for reasons I expressed a second ago, I

11    don't think I can do it today.

12        Where do you think Puerto Rico is going to -- I mean,

13    there has recently come to pass an unusual Balkanization of the

14    indirect purchaser class.   I gather your client is asserting

15    indirect purchaser claims?

16              MS. WHITAKER:   Right, on behalf of the consumers of

17    Puerto Rico.

18              THE COURT:   Do you have any thought at this point as

19    to where your clients' claims fit in the firmament of the case?

20    Do you want to...

21              MS. WHITAKER:   Your Honor, I believe they are akin to

22    the claims of the repealer states that were not included.   Even

23    though Puerto Rico is not a repealer state, the unjust

24    enrichment claims and because of the long statute of

25    limitations permit us to become involved here.

```
 1          We filed in 2018 in the Superior Court of San Juan and
 2    then it was removed to District Court in San Juan.
 3          THE COURT:  And do you think -- I mean, you can just
 4    wait until August 23 and surprise me if you want, but do you
 5    think that your claims will be asserted jointly with those of
 6    the admitted repealer states in the pleading that I expect
 7    Mr. Scarpulla and his group to file or how will those claims --
 8    will you be standing your own?  How will those claims be
 9    asserted, do you think?
10          MS. WHITAKER:  Well, I think we'll file our own
11    Motion to Intervene and Amended Complaint.
12          THE COURT:  Okay.
13          MS. WHITAKER:  If that's the question.
14          THE COURT:  Very good.  Well, welcome.  Where is your
15    office?
16          MS. WHITAKER:  In San Juan.
17          THE COURT:  Long trip.
18          MS. WHITAKER:  Yeah, after the first one exploded
19    after the hurricane, but we're back.
20          THE COURT:  Well, welcome.
21       Okay.  Would anyone like to address this question of how
22    do we get the existing discovery into the NRS and ORS
23    plaintiffs' hands?  And if they get it, how long will it take
24    to review it?
25          THE COURT REPORTER:  Counsel, your name, please?
```

```
1              MR. ALIOTO:   Mario Alioto, lead counsel for the

2     indirect purchasers.   Good afternoon, Your Honor.

3         I think one of your remarks or one of your indicated

4     rulings that you were going to appoint a liaison counsel --

5              THE COURT:   I intend to do that.

6              MR. ALIOTO:   -- that actually would, I think, solve

7     some of our problems on this exchange of information, getting

8     this information that we've developed and getting it over to

9     the -- to these new lawyers.

10        I think if we -- that's been part of the problem here.  We

11    haven't had continuity and we haven't had a clear line of

12    authority on the other side.   Not to cast dispersions at

13    anyone, but it would be very helpful now if we have this point

14    person, I think we can move this process along.

15        There is some very interesting issues and some very

16    challenging issues, but we've taken the mindset that we would

17    rather not present these interesting issues to Your Honor.  We

18    would, I guess the phrase is, err on the side of just getting

19    the information out there to the extent we can.

20        There is some, you know, absolutely privileged work,

21    opinion work product and things like that.   I mean, we can't

22    just do a wholesale turnover.   And will is some cost issues and

23    some -- it's quite a bit of information.   There is eight years,

24    eight, nine years' worth of information.   But our mindset is to

25    get it out of our hands and into the new counsel's hands.
```

```
 1          I think if we get a liaison counsel, we could make
 2   substantial progress and to the extent we can't, I -- we can go
 3   to a mediator or settlement master then.  But I would like to
 4   give it a shot, your Honor.
 5          THE COURT:  You notice I didn't say -- when I took
 6   the bench, I didn't look over at you and say:  Why haven't you
 7   given them this discovery?
 8          I understand it's complicated.  I assume there's work
 9   product in there.  I know that it was expensive discovery.
10   Some of it was expensive discovery to acquire.
11          So I'm not under the illusion that all the issues are
12   simple.  I just want to provide the most effective mechanism
13   for helping the parties resolve that.
14          MR. ALIOTO:  Okay.
15          THE COURT:  And I -- it's my -- tell me what your
16   instinct is, but mine is that having this just set up as a --
17   where a neutral would only resolve disputes is not the most
18   effective way.  I think facilitated discussion and mediation
19   might cause people to be able to weed out some of the easier
20   stuff first.
21          What do you think?
22          MR. ALIOTO:  Well, we -- although there are -- there
23   are actually some issues on the so-called easier stuff.  We've
24   made a decision on our side that we don't want to be presenting
25   these issues to Your Honor, and we've decided -- I mean, what
```

```
 1   is the downside?  If we have some information that's easily

 2   accessible to us, doesn't require a lot of effort, a lot of

 3   expense on our end, rather than noodle it and rather than think

 4   about all these questions, we'll just turn it over.  That's our

 5   mindset.  But there are some wrinkles and some complicated

 6   questions.

 7        Maybe when the -- these new folks, these new lawyers hear

 8   where we're coming from on that, we may be able to bring them

 9   around because I think our position is sound on some of these

10   issues.

11           THE COURT:  Have you participated in discovery

12   disputes involving Judge Walker previously?

13           MR. ALIOTO:  Yes, for approximately eight years.

14           THE COURT:  It's completely fair game, by the way,

15   for everyone to remind me how long the case has been pending,

16   too.

17        So does he ever -- is it the culture of the case that he

18   will ever try to engage the parties in some mediation-like

19   discussion first, or does he only rule in a more formal way on

20   discovery disputes?

21           MR. ALIOTO:  As to discovery, Your Honor, it has been

22   formal.  It has been formal.

23           THE COURT:  Okay.  That is what I thought you might

24   say.

25        Judge Corley has been helping the parties, all of the
```

```
 1   parties throughout this case with settlement discussions.

 2   Might she be a good choice to facilitate this discovery work?

 3            MR. ALIOTO:  These types of issues and the

 4   discussions we're having, she would be the ideal fit in my

 5   view, Your Honor.

 6            THE COURT:  Mr. Scarpulla, I know you haven't been

 7   appointed anything yet, but I want your opinion.

 8        Would Judge Corley be effective and viewed by everyone as

 9   an honest broker on this issue?

10            MR. SCARPULLA:  I believe so.  I have not appeared in

11   front of her, but from her reputation I'm sure she would be.

12            THE COURT:  She's one of my absolute favorites.  She

13   is so good at this kind of thing.

14            MR. SCARPULLA:  I've done a lot of work with Judge

15   Walker and if you ask him to do the mediation-type work first,

16   he'll do that.

17            THE COURT:  I appreciate that.

18            MR. SCARPULLA:  Judge Corley is fine, Your Honor.

19            THE COURT:  If the judge who appointed him asked him

20   do something, of course he will do it.  But sometimes the

21   credibility of the decider comes from not trying to mediate

22   first and just, you know, calling balls and strikes.

23            MR. SCARPULLA:  Right.  But Judge Corley is fine,

24   Your Honor.

25            THE COURT:  Does anyone want to be heard on the
```

1   question of whom should be appointed as liaison counsel for the

2   admitted repealer states and whom should be appointed -- does

3   anyone think anyone other than Ms. Kirkham should be appointed

4   as that person for the non-repeater states?

5             **MS. KIRKHAM:**  There is no other person here for the

6   non-repeater states.

7             **THE COURT:**  Oh, I know.  This is just how due process

8   works.  Okay.  Ms. Kirkham, you're appointed.

9        Let's turn to be this other question of the admitted

10  repeater states.

11       Mr. Bonsignore, did you want to address that question?

12            **MR. BONSIGNORE:**  I was going back a question.  I

13  would prefer that -- I know that this is throwing water on the

14  fire and I understand that negotiations are often favored, but

15  I have been negotiating with Mr. Alioto.  We have been going

16  over these issues.  I've spent at least six meet-and-confers.

17  We've set out specific items that we want.  Those items were

18  gathered together as a consensus with those who will try the

19  case, Joseph Alioto, myself, and a trial team with the

20  consultation of the other lead counsels.  We had a

21  meet-and-confer scheduled for a day or two ago.  Mr. Alioto

22  just decided not to participate in it.

23       As much as I hear him say that he would like to produce it

24  and get it going and all this cheerleading, I've heard that for

25  two years.  His position has been:  Yes, we'll get it to you,

1    as we heard today.  No, we absolutely won't.  And then the

2    third position was:  We'll get it to you once a lead counsel is

3    appointed.

4         So if we are going to go to mediation, I'm not going to

5    say, you know, that you're wrong.  That would be reckless.  But

6    I would ask that we put a briefing schedule in order at the

7    same time because eventually I know what his positions are on

8    these matters and he's -- you can hear him hedging on certain

9    things.  He's not going to give up.  And they are going to come

10   before you anyway.

11        And I also heard you say that you want to move this case

12   along.  And the fastest way to move this case along is to get

13   this issue decided.  Because in order to try the case, we need

14   to know what the evidence is.  We have no idea what they

15   actually have or we've asked for general descriptions.

16        Actually, with one defendant --

17            **THE COURT:**  Mr. Bonsignore.

18            **MR. BONSIGNORE:**  Yes.

19            **THE COURT:**  I have been not been wanting to interrupt

20   you.  I'm not going to decide the dispute today.

21            **MR. BONSIGNORE:**  I'm not going to ask you --

22            **THE COURT:**  Please let me.

23        And your characterizations of what the other side has done

24   or not done and whether they are willing to play ball and that

25   sort of thing is not helpful because as they are sitting there

```
 1   listening to you say that, then they feel, well, now I must get
 2   up to the microphone, and I have to defend myself, and I have
 3   to tell Judge Tigar that it's actually Mr. Bonsignore who
 4   hasn't been playing ball, or whatever they want to say.  None
 5   of which is helpful to what I need to do today.  I need to
 6   figure out how am I going to decide the dispute.
 7        Now, on that score you told me something that I thought
 8   was useful, which is:  Judge, if you want to send us to
 9   mediation, fine.
10        And by the way, I don't mind being told that something
11   that I've proposed is not useful.  Actually, if it's not going
12   to be useful, I wish people would tell me that.  But you want
13   to send us to mediation, that's fine.  Please set some briefing
14   deadlines so if mediation doesn't work, we can get it resolved.
15   I 100 percent agree with it and I'm going to do it.
16             MR. BONSIGNORE:  Thank you.
17             THE COURT:  On the question of liaison counsel for
18   the admitted repealer states the question is still on the
19   floor.
20        Mr. Scarpulla.
21             MR. SCARPULLA:  Yes.
22             THE COURT:  You were presumptively nominated by the
23   defendants I think.
24             MR. SCARPULLA:  I think so, Your Honor.  And I'm
25   willing to do it if Your Honor wants me to, but I think both
```

 1  Mr. Bonsignore and Ms. Moore want to do it, too.

 2            THE COURT:  Very well.

 3       Would either Ms. Moore or Mr. Bonsignore like to come to

 4  the microphone?

 5            MS. MOORE:  Yes, Your Honor.

 6            THE COURT REPORTER:  Counsel, your name, please?

 7            MS. MOORE:  Theresa Moore, one of the co-lead counsel

 8  for the admitted repealer states.

 9       Your Honor, I think I would be fine.  I get along with

10  everybody.  If the -- if the defendants and Mr. Scarpulla feel

11  comfortable doing it too, that's fine.

12       I think Mr. Bonsignore is knee deep in discovery, which is

13  what we've asked him to do.

14       So I'm fine with either, Your Honor.

15            THE COURT:  Very well.  Thank you, Ms. Moore.

16       Mr. Bonsignore.

17            MR. BONSIGNORE:  I would prefer to stick with the

18  discovery and the trial prep and so we can just end that.

19       Mr. Scarpulla can speak to the defendants and, as I

20  understand it, we'll be allowed to get the case ready for

21  trial, which is what you would like, too.

22            THE COURT:  Liaison counsel -- I'm doing this on a

23  pop quiz basis.  This might not be exactly right.  But, in

24  essence, liaison counsel becomes the principal spokesperson for

25  that group in dealings with the Court and, should the need

1  arise in the sense that other lines of communication are not

2  effective, in communication with other parties in the case.  So

3  that is the role whomever I appoint would play.

4      And I say that only because it's slightly different from

5  what you said.  But if your position remains the same, then

6  I'll go ahead and appoint Mr. Scarpulla.  It's ordered.

7      So let's go ahead and set a few more deadlines.  What is a

8  sensible deadline for the filing of briefs with regard to this

9  discovery issue on the plaintiffs' side?  There will be some

10 novel issues in there, I would think.

11     Anyway, what is a sensible deadline?  Is a joint discovery

12 letter the right way of doing that?  Should there be competing

13 briefs?  Who wants to address that issue?

14     **MS. KIRKHAM:**  I would like to just caution us against

15 going headlong into the Balkanization of this case.  I have

16 been in a lot of cases that have had a class and subclasses and

17 we have had not had this kind of dispute about whose discovery

18 it was.

19     My firm has the fifth largest lodestar in the IPP case to

20 date.  Almost all of that was incurred taking discovery.  So

21 it's my work product I'm about to negotiate to purchase or

22 whatever we're doing.  We need to try to really damp down.

23     So I would suggest letters.  I would suggest anything that

24 doesn't continue to formalize the idea that the non-repealer

25 states are a side, and the repealer states are a -- a side, and

 1  the omitted repealer states are a third side, and I guess the

 2  commonwealth of Puerto Rico is a fourth side.  That we really

 3  are -- there is a lot of common interest and I would just

 4  encourage us to look at procedures as far as possible.  Maybe

 5  that's going out to someone who --

 6          THE COURT:  What specifically are you asking that I

 7  do?

 8          MS. KIRKHAM:  Well, how about starting with either

 9  suggesting or ordering us to go either to Judge Walker, who I

10  think would actually be fine, because the discovery disputes

11  that Judge Walker was dealing with in the past when he was

12  acting more formally were truly discovery disputes between two

13  different sides in the case, the plaintiffs and the defendants.

14     Now we have something that's really very different here.

15  We really have discovery taken in the name of the nationwide

16  class and to what degree do subclasses have access to that

17  discovery.

18     And so I really think that -- that the fact that it was

19  done formally with Judge Walker.  So I think Judge Walker would

20  be great.  I do not know -- you know, I think almost any third

21  party that could get in here with us and help us to deconstruct

22  kind of some of the animosity that has taken over would be

23  helpful.

24          THE COURT:  Right.  I think I said I'm going to send

25  people to mediation.

1          **MS. KIRKHAM:**  And then I think a quick schedule with

2     letter briefs, I think, would be the appropriate way to handle

3     anything that has to come to Your Honor.  With luck, maybe

4     there will be nothing that would have to come to you.

5          **MR. BONSIGNORE:**  I agree that -- with Ms. Kirkham

6     that we should try to work this out and that --

7          **THE COURT:**  Do you have a deadline in mind?

8          **MR. BONSIGNORE:**  Yes.

9          **THE COURT:**  We all agree we should try to work it

10    out.

11         **MR. BONSIGNORE:**  Within 30 days we get the mediation

12    done.  If we don't get it done, then it's no longer a peace and

13    love and we need to fully brief to preserve the issues for

14    appeal.  Letter briefs might be too short.

15         As they have said, there are complicated issues.  I don't

16    see them, but maybe I don't see what Mr. Alioto sees.

17         **THE COURT:**  Right.  What are you proposing exactly?

18         **MR. BONSIGNORE:**  Just regular briefing.  So within 30

19    days we complete the mediation process.

20         **THE COURT:**  Yes.

21         **MR. BONSIGNORE:**  And then after that we would file --

22         **THE COURT:**  I hear you saying letter briefs are fine.

23         **MR. BONSIGNORE:**  No.  I'm saying regular briefs, yes.

24         **THE COURT:**  Regular briefs?

25         **MR. BONSIGNORE:**  Yes.

```
 1            THE COURT:  Who is the moving party?  You?  Your
 2   group?
 3            MR. BONSIGNORE:  Yes.  And perhaps Puerto Rico and
 4   I'm sure Ms. Kirkham.  They would also want the same
 5   information.
 6            THE COURT:  So giving people a week to actually write
 7   their briefs, moving briefs in something like 37 days, and then
 8   a regular briefing schedule thereafter?
 9            MR. BONSIGNORE:  I think we would need more than
10   seven days, only because if we are going to give the mediation
11   a full effort, we're not going to be invested in the briefing.
12            THE COURT:  Forty-four days?  Order of magnitude?
13            MR. BONSIGNORE:  Yes.
14            THE COURT:  All right.  Anybody else want to be heard
15   on this issue?
16       (No response.)
17            THE COURT:  I'm actually sort of optimistic, and not
18   just because Mr. Alioto says I should be optimistic, but
19   because I think the incentives line up.  Honestly.
20       The reason that I take Mr. Alioto's point to be that it's
21   just easier for them and they think they have peace now.  Why
22   do they want to fight about this?  At some point that fight
23   becomes a drag on the overall progress of the resolution of
24   their case.
25       So there may be some -- I'm not saying that nothing would
```

```
 1    be in dispute, but I have a feeling that the disputes will be
 2    surmountable, and if not surmountable, readily resolvable.
 3          Okay.  So we have a motion to amend and intervene
 4    schedule.
 5          We have the outlines of a mechanism for resolving disputes
 6    about what I'll call IPP side discovery.  And that is roughly
 7    30 days to mediate.  Briefs due roughly two weeks after that.
 8    I might accelerate the briefing schedule a little bit in front
 9    of the 35 days.  It seems a little long for a discovery fight.
10    But I might leave it the way it is.  But in any event, letter
11    briefs and then the hearing date.
12          Let's turn to the question of the IPP -- shall I call that
13    the non-omitted repealer states?  The NORS.  Anyway, the IPP
14    settlement with the defendants.  What's a good deadline for a
15    motion for preliminary approval, or whatever it is, whatever
16    vehicle you'll need at this point.
17          MR. ALIOTO:  Yes, Your Honor.  Thank you, Your Honor.
18    Mario Alioto.
19          The good news is that the process is moving along.
20    There's two steps to the process.  We have to amend the six
21    settlement agreements, which we have been working on and which
22    we hope to furnish to the defendants tomorrow, the amended
23    agreements for their approval.  After we -- I suspect there may
24    be a little moving some words on around on that.
25          After that, we will -- we've given some thought to this
```

1    already, but we can't get to it in earnest until we get the

2    approval of the amended settlement agreements, but after that

3    we would be drafting our papers.  It's very difficult to

4    predict because we don't know what the reaction from the

5    defendants is going to be and this is a somewhat novel

6    situation.

7              THE COURT:  Is it your prediction that the amendments

8    to the settlement agreement will not require further notice?

9              MR. ALIOTO:  We think a very, very good argument

10   could be made that there is not going to be a need for further

11   notice.  We are working to not -- in other words, what the

12   class was anticipated together, it was contemplated to get the

13   first time around, we're trying to get this up so they get

14   exactly the same thing.

15             THE COURT:  I thought you might say that.

16             MR. ALIOTO:  Yes.  Yes, Your Honor.

17             THE COURT:  Okay.

18             MR. ALIOTO:  And it's not that we want to avoid

19   notice.  It's just that we don't think it's necessary to the

20   extent their interest is not being affected or diluted.

21        And we want to keep this, if we can, simple.  We would

22   like to get back up to the Ninth Circuit.  They gave us a job

23   to do.  Your Honor gave us a job to do.  We think we've done

24   that job and we want to make this as simple as possible,

25   keeping in mind the due process rights of the class.

1          We're not trying to ramrod something or push something

2     through.  It's better for the class to get this done sooner

3     rather than later and that's what we're contemplating doing.

4          So the answer to your question is yes, Your Honor.  We

5     believe there's substantial basis not to give further notice.

6          **THE COURT:**  Thank you.

7          I've not heard anybody propose a deadline yet.  I'm not

8     saying it has to be soon, but I'm not comfortable -- I'm being

9     asked simultaneously to please do all the following things:

10         Don't vacate the prior settlement.

11         Don't give us a trial date.

12         Don't hurry -- oh, here is one, this one.  Don't give the

13    ORS and NORS people too generous a briefing schedule, but also

14    don't hurry them up for trial.

15         These are all the requests that are being made of me.  So

16    to that I would say, just let me give you at least a deadline

17    for preliminary approval.  And I'm not going to be stingy about

18    it.  I just need a deadline.

19         **MR. RHYS DAVIES:**  Judge, could I be heard?

20         **THE COURT:**  Mr. Rhys Davies.

21         **MR. RHYS DAVIES:**  Yes.  Thank you, your Honor.

22         We have agreement to seek to submit approval papers to the

23    Court by August 21, and that's a date that we think the Court

24    can order.

25         Then the Defendant's proposal would be that that motion be

 1   briefed under the default schedule because it really is in

 2   everyone's interest for that to be briefed and decided as soon

 3   as it can be.

 4            THE COURT:  Right.  And how will that be framed?

 5   Will it be a preliminary approval motion, but not seeking

 6   notice?  How will that work?

 7            MR. ALIOTO:  Well, that's a very good point, Your

 8   Honor.  It could be a preliminary approval notice -- motion

 9   without notice or it could be a -- seeking Your Honor to

10   finally approve the settlement as amended.  Because, really,

11   the -- there is -- the major change in the settlement is that

12   the releases for those persons, for those indirect purchasers

13   who were not receiving any compensation, those releases will be

14   relinquished under the terms of the settlement.  I mean, that's

15   what we've stated in our papers.

16            THE COURT:  Your worthy adversary has asked that I

17   set a deadline of August 21.  Given that we don't -- that his

18   client has not yet seen your proposed amendments, and we don't

19   know what the form of the motion is going to be, I'm wondering

20   if August 30th might not be a more sensible deadline.

21            MR. ALIOTO:  That would certainly be better for us,

22   Your Honor.

23        I will say because of these issues that we're trying to

24   work through, the -- Mr. Davis is correct.  There is a -- we

25   had discussed this August 21 date, but it is a -- parties will

```
 1    use their best efforts to file by August 21.  That's slightly
 2    different, and that's recognizes that we're grappling with some
 3    of these questions and we want to get this right.  So we don't
 4    want to rush into this headlong.
 5          But August 30th would be fine, Your Honor, with the caveat
 6    that this is a cooperative process.  It's not completely under
 7    the control of the plaintiffs.  It's with the cooperation of
 8    the defendants.
 9          So to the extent we propose something or submit something
10    to them, we can't just say:  Well, you know, the heck with you,
11    we're going off on our own.  It's collaborative.  Cooperative.
12          THE COURT:  I haven't thought this through, but there
13    might be some relationship between your motion and the state of
14    the pleadings.  I wish I could say more about that.  I haven't
15    thought about it much.  Well, I don't have anything more to
16    say.
17          MR. RHYS DAVIES:  Your Honor, could I make another
18    proposal in connection with the schedule that I think you're
19    about to set for approval of the amended settlement?
20          THE COURT:  Please.
21          MR. RHYS DAVIES:  Your Honor might consider taking
22    off the hearing that's currently on for September 4th, to
23    vacate the prior settlement approval order, because actually
24    your ruling on this anticipated motion could obviate the need
25    to deal with that issue.
```

```
 1              THE COURT:  I forget.  Who is the moving party?
 2   Mr. Scarpulla, did your office file that?
 3              MR. SCARPULLA:  No.  The -- the --
 4              THE COURT:  Your group, I should say?
 5              MR. SCARPULLA:  The group filed it yes, your Honor.
 6              THE COURT:  I have been asked to vacate the hearing
 7   on your motion.  How do you feel about that?
 8              MR. SCARPULLA:  How about if we continue to it a
 9   period of time after they get whatever they have to do?  So we
10   don't have to refile it, if necessary.
11              THE COURT:  Oh, I could just administratively
12   terminate it and then you could reactivate it with an email.
13              MR. SCARPULLA:  Oh, okay, fine.  Okay, fine.
14              THE COURT:  That's fine.
15         And if I didn't get the vocabulary right on that, my law
16   clerks will tell me the vocabulary I should use.
17              MR. SCARPULLA:  Okay, that's fine.
18              THE COURT:  But we can sort of put that motion in
19   deep storage and then you can pull it out whenever you want to
20   just by filing a one-page notice.
21              MR. SCARPULLA:  That's fine.
22              THE COURT:  We'll do that.  Thank you.
23         Mr. Alioto.
24              MR. ALIOTO:  I'm sorry, Your Honor.
25         Your Honor's contemplation is then to set a firm date,
```

 1   which we're certainly in agreement with.  It sounds like Your

 2   Honor may be leaning towards August 30th, which is --

 3          THE COURT:  To be clear, I only say that because

 4   August 21 seemed to me to be unnecessarily ambitious, to use

 5   counsel's word.  Unnecessarily ambitious.

 6      And if you had given -- if someone had proposed a deadline

 7   that was further out, I probably would have taken that.  I just

 8   want -- I want a deadline, but I'm not -- I want a deadline

 9   everybody can comply with.

10          MR. ALIOTO:  We can live with the August 30th, Your

11   Honor.  I just want to -- first of all, we're motivated to get

12   this done.  This is in our interest to get this done.

13      By the same token, this is not a routine motion.  There is

14   a lot of water under the bridge, a lot of money involved, and

15   we want to get it right.

16      So with those remarks, we could live with Your Honor's

17   suggestion of August 30th.

18          THE COURT:  I will set that deadline then.

19          MR. ALIOTO:  Thank you.

20          THE COURT:  We'll call it a motion for preliminary

21   approval, understanding that the name is a placeholder and that

22   it may take a different form.

23      What else have I missed?

24          MR. RHYS DAVIES:  Your Honor, the Puerto Rico case.

25   We heard what counsel said and I think that what counsel said

1   was that's a separate case, and that's right.

2       And so it's not immediately clear to the defendants why

3   there would need to be a Motion to Intervene from the

4   Commonwealth.

5       Obviously, counsel will file whatever motion she thinks is

6   appropriate and we'll respond as necessary, but it strikes us

7   that if the MDL panel transfers that case to this Court, the

8   next step could really be just a Motion to Dismiss.

9       **THE COURT:**  Could be.  I have no opinion.

10      Counsel came to the microphone and told me about some

11  plans she had for her case, and now you've told me some plans

12  that you have for her case.  So we'll just see how that plays

13  out.

14      **MR. RHYS DAVIES:**  Thank you judge.

15      **THE COURT:**  Thank you.

16      Other matters before the Court today?

17      **MR. ALIOTO:**  Mario Alioto, Your Honor.

18      In response to your question about the *Luscher* case.

19      **THE COURT:**  Thank you.

20      **MR. ALIOTO:**  I think Your Honor said there is no need

21  to do anything on that unless you hear otherwise from the

22  parties.

23      **THE COURT:**  That's what the order said.

24      **MR. ALIOTO:**  And that's correct.  We are working that

25  up as well.  We intend to do something with that

```
1    simultaneously, but it's slightly behind these other

2    settlements.

3        So we don't feel that there is any need to set any

4    schedule on that just yet, Your Honor.

5            THE COURT:  My assumption was that Mitsubishi would

6    very much rather wait until all these obstacles have been

7    cleared out of the road so that their settlement could just

8    breeze through.

9            MR. ALIOTO:  Yes, Your Honor.

10           THE COURT:  Okay.  Very good.

11       Anything else I could be doing today for anyone?

12       (No response.)

13           THE COURT:  Going once.  Sold.

14       Thank you.  Court is in recess.

15       (Proceedings adjourned.)

16

17

18

19

20

21

22

23

24

25
```

<u>**CERTIFICATE OF OFFICIAL REPORTER**</u>

     I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Wednesday, August 14, 2019