Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
1144 15th Street, Suite 3400
Denver, CO  80203
Telephone: +1-303-607-3500
Facsimile:  +1-303-607-3600
jeff.roberts@FaegreBD.com

***Attorneys for Defendants Thomson SA and
Thomson Consumer Electronics, Inc.***

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | Case No. 07-cv-5944-SC |
| | MDL No. 1917 |
| This Document Relates to: | |
| All Indirect-Purchaser Actions | **THOMSON DEFENDANTS' OPPOSITION TO (1) MOTION TO INTERVENE AND AMEND COMPLAINT TO ALLEGE STATE LAW CLAIMS FOR THE OTHER REPEALER STATES (EFF No. 5567); AND (2) MOTION OF NON-REPEALER SUBCLASS MEMBER ELEANOR LEWIS FOR LEAVE TO FILE AMENDED COMPLAINT TO ADD ADDITIONAL, OR IN THE ALTERNATIVE, TO INTERVENE AND AMEND (ECF No. 5565)** |
| | Date: Oct. 23, 2019<br>Time: 2:00 pm<br>Courtroom: 6, 2nd Floor<br>Judge: Honorable Jon S. Tigar |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

I.        INTRODUCTION.................................................................................................. 1

II.       FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

    A.    The Consolidated Amended Complaints ................................................ 2

    B.    The Settlement and Resulting Complaint Against Thomson ..................... 4

    C.    The Proposed Sixth Consolidated Amended Complaint ........................... 4

III.      ARGUMENT .......................................................................................................... 5

    A.    Intervention Should Be Denied Due to Movants' Repeated, Decade-Long, Prejudicial Delay in Moving to Intervene to Assert Claims Against Thomson.......................................................................................... 5

    B.    Leave to Amend to Add Thomson as a Defendant to the Sixth CAC Should Be Denied Because Thomson Would Be Prejudiced by Its Late Addition to the Litigation. ........................................................................... 7

    C.    Leave To Amend Should Be Denied As To Thomson Because the Potential Claims Against It Do Not Relate Back To Any Complaint Against Thomson And Thus Are Untimely. ................................................ 9

IV.      CONCLUSION...................................................................................................... 13

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4
*Bailey v. N. Ind. Pub. Serv. Co.*,
   910 F.2d 406 (7th Cir. 1990)...................................................................11

5

6
*Becherer v. Merrill Lynch, Pierce, Fenner & Smith*,
   43 F.3d 1054 (6th Cir. 1995).....................................................................8

7
*Cabrera v. Lawlor*,
   252 F.R.D. 120 (D. Conn. 2008)..............................................................12

8

9
*California Dep't of Toxic Substances Control v. Commercial Reality Projects, Inc.*,
   309 F.3d 1113 (9th Cir. 2002).....................................................................5

10

11
*City of L.A. v. San Pedro Boat Works*,
   635 F.3d 440 (9th Cir. 2011).................................................................8, 9

12

13
*Coleman v. Pacific Gas & Electric Co.*,
   79 F.3d 1152, 1996 WL 118518 (9th Cir. Mar. 18, 1996)........................11

14
*DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987).....................................................................7

15

16
*Ganz v. Chungwha*,
   4:08-cv-01721-JST (N.D. Cal. March 31, 2008) ......................................3

17

18
*In re ATM Fee Antitrust Litig.*,
   768 F. Supp. 2d 984 (N.D. Cal. 2009) .....................................................11

19

20
*In re Broiler Chicken Antitrust Litig.*,
   290 F. Supp. 3d 772 (N.D. Ill. 2017) .......................................................13

21
*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   536 F. Supp. 2d 1364 (J.P.M.L. 2008)......................................................2

22

23
*In re Comm. Bank of N. Va.*,
   467 F. Supp. 2d 466 (W.D. Pa. 2006) ......................................................11

24
*In re CRT Antitrust Litigation*,
   27 F. Supp. 3d 1015 (N.D. Cal. 2014) .....................................................10

25

26
*In re Generic Pharms. Pricing Antitrust Litig.*,
   368 F. Supp. 3d 814 (E.D. Pa. 2019) .......................................................13

27

28
*In re Graphics Processing Units Antitrust Litig.*,
   527 F. Supp. 2d 1011 (N.D. Cal. 2007) ...................................................13

*In re Graphics Processing Units Antitrust Litig.*,
   540 F. Supp. 2d 1085 (N.D. Cal. 2007) ........................................................................13

*In re Lidoderm Antitrust Litig.*,
   103 F. Supp. 3d 1155 (N.D. Cal. 2015) ........................................................................13

*In re Static Random Access Memory Antitrust Litig. (SRAM)*,
   2010 U.S. Dist. LEXIS 131002 (N.D. Cal. Dec. 8, 2010) ........................................13

*In re TFT-LCD Antitrust Litig.*,
   787 F. Supp. 2d 1036 (N.D. Cal. 2011) ........................................................................13

*Jackson v. Bank of Hawaii*,
   902 F.2d 1385 (9th Cir. 1990) ..................................................................................7, 9

*Kilkenny v. Arco Marine, Inc.*,
   800 F.2d 853 (9th Cir. 1986) ......................................................................................12

*Krupski v. Costa Crociere S. p. A.*,
   560 U.S. 538 (2010) ....................................................................................................12

*La.-Pac. Corp. v. ASARCO, Inc.*,
   5 F.3d 431 (9th Cir. 1993) ..........................................................................................12

*League of United Latin Am. Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997) ......................................................................................5

*Lockheed Martin Corp. v. Network Sols., Inc.*,
   194 F.3d 980 (9th Cir. 1999) ....................................................................................8, 9

*Longtale, Ltd. v. IKOR, Inc.*,
   No. C-11-05452 (EDL), 2014 WL 1478901 (N.D. Cal. Apr. 14, 2014) ...................8, 9

*Luscher v. Videocon Indus. Ltd., et al.*,
   No. CV-13-03234 (N.D. Cal.) ......................................................................................4

*Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc.*,
   406 F.3d 1052 (8th Cir. 2005) ..................................................................................8, 9

*Percy v. S.F. Gen. Hosp.*,
   841 F.2d 975 (9th Cir. 1988) ......................................................................................11

*Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*,
   No. CIV 09-1397-HA, 2010 WL 4812860 (D. Or. Nov. 19, 2010) ...........................11

*Stack v. Chunghwa*,
   4:08-cv-01319-JST (N.D. Cal. March 7, 2008) ......................................................3, 11

*SurvJustice Inc. v. DeVos*,
   No. 18-cv-535-JSC, 2019 WL 1427447 (N.D. Cal. Mar. 29, 2019) ........................5, 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Taylor v. Shippers Transport Exp., Inc.,* 2014 WL 12561079
(C.D. Cal. Apr. 18, 2014).................................................................................................8

*Willner v. Manpower, Inc.,*
    No. 11-cv-02846-JST, 2014 WL 2939732 (N.D. Cal. Jun. 30, 2014) ......................................10

*Zepeda v. PayPal, Inc.,*
    No. 10-cv-02500-SBA (JCS), 2014 WL 1653246 (N.D. Cal. Apr. 23, 2014),
    *objections overruled,* 2014 WL 4354386 (N.D. Cal. Sept. 2, 2014) .........................................7

**STATE STATUTES**

MONT. CODE ANN. § 27-2-211 (2019) .........................................................................................10

N.H. REV. STAT. ANN. 358-A:3(IV-a).........................................................................................10

S.C. CODE ANN. § 39-5-150 .........................................................................................................10

# I.    INTRODUCTION

Thomson SA and Thomson Consumer Electronics, Inc. (collectively, "Thomson") join and incorporate by reference Defendants response opposing the motions for leave to intervene and file a proposed Sixth Consolidated Amended Complaint ("Sixth CAC") filed by the omitted "repealer" state ("ORS") movants and non-repealer states ("NRS") subclass member Eleanor Lewis ("Defendants' Response"). But Thomson files a separate brief to address a critical fact unique to Thomson that Movants entirely disregard: by seeking leave to intervene and amend the complaint to add Thomson to the Sixth CAC almost 12 years after this litigation began, Movants are attempting to add a defendant that was not a named party in any of the previously filed consolidated amended complaints.

The fact that Thomson was not named in any previous consolidated amended complaint distinguishes Thomson from the other Defendants and raises unique legal questions under Ninth Circuit law. While the motions should be denied for all of the reasons stated in Defendants' Response, Movants' attempt to intervene and amend to add Thomson as a defendant should be denied for several additional reasons.

First, Movants have known since March 2009 when the First Consolidated Amended Complaint ("First CAC") was filed that Lead Counsel for the indirect purchaser plaintiffs ("IPPs") was not prosecuting state-law damages claims against Thomson on behalf of ORS or equitable damages claims on behalf of NRS. The intervention clock began running at that time and no legal authority supports permitting intervention after a more than ten-year delay. Movants have been able to file separate lawsuits over the past decade, notwithstanding Mario Alioto's appointment as Lead Counsel for IPPs, yet opted not to do so. Second, permitting Movants to intervene and file the Sixth CAC to add Thomson as a defendant over a decade late and at this very advanced stage in the proceedings would be unfair and unduly prejudicial. Movants had ample opportunity to name Thomson in any of the first four previous consolidated amended complaints but made the intentional, strategic choice not to do so. Movants' delay has caused Thomson substantial prejudice, including, without limitation, preventing it from participating in dozens of depositions that would have been critical to its defense. Third, the motions for leave to

amend are futile.[1] ORS Movants' claims are facially time-barred and, as they implicitly acknowledge, the only way their claims against Thomson could be timely is if the Sixth CAC relates back to a timely complaint. But because Thomson is a new defendant and was not previously named as a defendant in any prior consolidated amended complaint, Movants cannot meet the standard for relation back. Thomson was not on notice that "the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). Thomson was not omitted from the first four amended consolidated complaints— and nearly a decade of substantive litigation—based on "mistake," much less a "mistake concerning the proper party's identity." To the contrary, Movants and/or Lead Counsel for IPPs knew of Thomson's identity, even alleged that it was a "non-party conspirator" in the Fourth CAC but opted not to sue Thomson solely for strategic reasons. Under binding U.S. Supreme Court and Ninth Circuit law, an omission for strategic reasons cannot give rise to relation back. Accordingly, even if the motions for leave to intervene and amend as to all other Defendants are not denied—they should be—the motions should be denied with respect to Thomson for the additional reasons described below.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Consolidated Amended Complaints

In February 2008, the Judicial Panel on Multidistrict Litigation ordered the centralization of actions alleging that certain Defendants conspired to fix prices of CRTs. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 536 F. Supp. 2d 1364 (J.P.M.L. 2008). Among the cases ultimately transferred to the Northern District of California were two complaints brought by certain indirect-purchaser plaintiffs that named Thomson SA, but not Thomson Consumer Electronics, Inc., as a

---

[1] Thomson recognizes that the Court prefers to address whether claims are barred by the applicable statutes of limitations on a motion to dismiss, but as explained in Defendants' Opposition, Movants refused to enter into a stipulation that would permit intervention, amendment and Rule 12 issues to be briefed and argued together. Accordingly, Thomson respectfully responds to Movants' relation-back arguments now to ensure its arguments have been preserved and that the Court is apprised of why ORS Movants' proposed claims against Thomson fail as a matter of law.

1   defendant: *Stack v. Chunghwa*, 4:08-cv-01319-JST (N.D. Cal. March 7, 2008), brought on behalf

2   of a putative subclass of Tennessee residents; and *Ganz v. Chungwha*, 4:08-cv-01721-JST (N.D.

3   Cal. March 31, 2008), brought on behalf of a putative subclass of California residents. The *Stack*

4   complaint listed Mr. Francis O. Scarpulla, ORS Movants' current liaison counsel, as the lead

5   attorney for the plaintiffs who filed that complaint. The Court ordered the consolidation of all

6   transferred actions for pretrial purposes. (*See* Pretrial Order No. 1, Dkt. 230.)

7        On March 16, 2009, the First CAC was filed and became the operative complaint. (Dkt.

8   437.) The First CAC did not assert claims against any Thomson entity, even though it mentioned

9   the alleged participation of a Thomson entity in alleged anticompetitive conduct, and even though

10  it listed the named plaintiff in *Ganz* as a named plaintiff. Just over a year later, on May 10, 2010,

11  the Second CAC was filed, and it also failed to name Thomson as a defendant. (Dkt. 716.) The

12  Third CAC, filed on December 11, 2010, also did not assert claims against Thomson. (Dkt. 827.)

13  On November 6, 2011, Thomson and Lead Counsel for IPPs entered into a Tolling Agreement

14  that tolled the statute of limitations on potential claims against Thomson. (Dkt. 3875 at 2-3.)

15       In short, Thomson was not a defendant in or party to the IPP litigation. And the parties

16  acted consistently with that understanding. For example, when Lead Counsel for IPPs gave notice

17  that they intended to move for leave to file a Fourth CAC, Thomson sought to intervene so that it

18  could oppose the motion. (*See* Dkt. 1350.) Lead Counsel and Thomson ultimately stipulated to

19  permit Thomson to oppose the motion, stating that Thomson and another entity were "***not parties***

20  ***to [the IPP] case***." (Dkt. 1343 at 2; *see also* Dkt. 1444 (order granting motion to intervene).)

21  Lead Counsel and Thomson then stipulated that the IPPs "will not seek to add Thomson as a

22  defendant in this Action." (Dkt. 1423 at 2.) On January 10, 2013, the Fourth FAC was filed. (Dkt.

23  1526). As promised, the complaint did not name Thomson as a defendant, instead alleging merely

24  that Thomson was a non-party "co-conspirator." (*Id.*)

25       Each time a consolidated amended complaint was filed that did <u>not</u> name Thomson as a

26  defendant Movants knew or should have known that the interests they now claim justify their

27  intervention were not being asserted by Lead Counsel for IPPs. Yet, for over a decade, they sat on

28  their hands and did not seek to intervene to attempt to assert claims against Thomson.

**B.     The Settlement and Resulting Complaint Against Thomson**

After IPP Lead Counsel filed the Fourth CAC, Thomson remained a non-party to the IPP litigation for another two-and-a-half years. The Tolling Agreement between Lead Counsel for IPPs and Thomson terminated effective June 7, 2015. *See* **Ex. 1**. Three days later, on June 10, 2015, Thomson agreed to settle with the IPPs for a total payment of $13.75 million. (Dkt. 3875 at 2-3.) On June 11, 2015, Lead Counsel for IPPs brought nationwide putative class claims against Thomson solely to effectuate the pending settlement between the parties. *See Luscher v. Videocon Indus. Ltd., et al.*, No. CV-13-03234 (N.D. Cal.) (Dkt. 25.) Lead Counsel did not bring a proposed Fifth CAC naming Thomson in this action. Instead, Lead Counsel amended a separate class-action complaint that previously had named parties other than Thomson. *Id.*

Because the separate amended complaint against Thomson was for settlement purposes only, Thomson has never previously litigated ***any*** IPP action against ***any*** named indirect purchaser plaintiff in any meaningful sense. Nearly 12 years after IPP actions were first filed, Thomson has never served discovery regarding any IPP action, filed any dispositive motion against an IPP, or engaged any expert witnesses to defend against any IPP claim. Unlike the other Defendants here, Thomson has not previously litigated against any IPPs so it has not been required to develop, prepare or implement a legal strategy to defend against any IPP claim. Instead, for more than a decade, Thomson was not named as a defendant in the operative consolidated amended complaints.

**C.     The Proposed Sixth Consolidated Amended Complaint**

Movants now seek to add Thomson as a defendant to the Sixth CAC. In their motions, however, Movants never explain why, after they repeatedly failed since 2009 to intervene to add Thomson as a defendant to any of the first four consolidated amended complaints, Thomson would not be severely prejudiced by their attempt to add Thomson as a defendant now. Nor do Movants explain why their attempt to add Thomson as a defendant to the Sixth CAC satisfies the requirements of Rule 15(c)(1), such that their claims against it might, even conceivably, be timely. Instead, they pretend as if, like the other Defendants, Thomson has been actively litigating against IPPs for over a decade and the first four consolidated amended complaints also asserted

1  claims against Thomson.

2       Because Thomson will be prejudiced by Movants' decade-late attempt to intervene and

3  amend to assert claims against it, and because the claims asserted against Thomson would be

4  futile in any event, their motions for leave to intervene and file the Sixth CAC adding Thomson

5  as a defendant should be denied.

6                              **III.    ARGUMENT**

7  **A.    Intervention Should Be Denied Due to Movants' Repeated, Decade-Long, Prejudicial**

8         **Delay in Moving to Intervene to Assert Claims Against Thomson.**

9       An untimely motion to intervene must be denied. *League of United Latin Am. Citizens v.*

10 *Wilson,* 131 F.3d 1297, 1302, 1308 (9th Cir. 1997). Timeliness is evaluated in relation to (1) the

11 length of and reason for the delay; (2) the stage of the proceeding, and (3) the prejudice to other

12 parties. *Id.* Moreover, "the timeliness clock begins ticking from the time a proposed intervenor

13 should have been aware its interests would no longer be protected adequately by the parties". *Id.*

14 at 1307.

15      Here, Movants have known since the First CAC was filed in March 2009 that Lead

16 Counsel for IPPs was not asserting ORS or federal equitable damages claims against Thomson,

17 but waited for over ten years to attempt to assert such claims. Movants were reminded of this fact

18 all four times a new consolidated amended complaint was filed that did not name Thomson as a

19 defendant. Each time they knew or had reason to know that their interests in relation to Thomson

20 might be adversely affected by the ongoing IPP litigation. *See California Dep't of Toxic*

21 *Substances Control v. Commercial Reality Projects, Inc.,* 309 F.3d 1113, 1120 (9th Cir. 2002)

22 (noting that movant "should have known that the risks of waiting included possible denial of their

23 motions to intervene as untimely"); *SurvJustice Inc. v. DeVos*, No. 18-cv-535-JSC, 2019 WL

24 1427447, at *4 (N.D. Cal. Mar. 29, 2019) (rejecting intervention where movant knew its legal

25 theories were not being pursued but delayed intervening "in the hopes that Plaintiffs would

26 amend their complaint to advance [those] legal theories"). But they did nothing. Movants' lengthy

27 and wholly unjustified delay weighs heavily against intervention.

28      The stage-of-proceedings and prejudice factors also mandate denying Movants leave to

1    intervene to attempt to add claims against Thomson. As Defendants explain in their response, this

2    MDL proceeding has been pending for nearly 12 years, has yielded nearly two million pages of

3    documents, and spawned more than one hundred depositions. Dozens of the most critical

4    depositions, including those of Chunghwa representatives who are alleged to have organized and

5    led the Asian Glass Meetings at the heart of the alleged conspiracy, were conducted in Asia

6    before Thomson was sued in March 2013 by certain Direct-Action Plaintiffs. (*See* Dkt. 2981 at 4-

7    8.). The evidence establishes that no Thomson representative attended any Asian Glass Meeting

8    and, in fact if plaintiffs' own allegations regarding these meetings are accepted as true,

9    Thomson's television manufacturing plant in Thailand would have been a direct target of those

10   alleged meetings. (*Id*. at 6.) However, because Thomson was not sued by Lead Counsel for IPPs

11   (or any Movant) until after these critical depositions had occurred, Thomson did not (indeed

12   could not) participate in dozens of depositions during which it could have established its key

13   defense that it did not participate in and, as per plaintiffs' claims, was in fact a victim of the Asian

14   Glass Meetings at the center of the alleged conspiracy. (*See e.g. id*. at **Exs**. 3 & 29.) If Movants

15   are permitted to intervene and file amended complaints asserting claims against Thomson, there is

16   no prospect that these myriad foreign depositions will be conducted again. Accordingly, Thomson

17   would be severely prejudiced if Movants were permitted to intervene to assert their proposed

18   claims against Thomson at this very advanced stage of the proceedings. (*See also* Defs.' Resp. at

19   7-10.)

20        In short, Movants' suggestion that their intervention with respect to Thomson is timely

21   because it occurred after the Ninth Circuit's February 2019 remand order and this Court's July

22   2019 order appointing separate counsel for the ORS is legally wrong and should be rejected. The

23   "timeliness clock" with respect to Thomson began running no later than March 2009 when the

24   First CAC was filed. Thomson is aware of no case that has granted a party leave to intervene after

25   it failed on multiple occasions over a ten-year period to assert its interests. Substantial policy

26   interests weigh against allowing Movants to do so here. Movants' motions to intervene to attempt

27   to assert claims against Thomson should be denied.

28

1    **B.      Leave to Amend to Add Thomson as a Defendant to the Sixth CAC Should Be**

2            **Denied Because Thomson Would Be Prejudiced by Its Late Addition to the**

3            **Litigation.**

4            ORS Movants argue that leave to amend should be granted under the factors this Court

5    uses to assess such motions under Federal Rule of Civil Procedure 15(a)(2).[2] But while they

6    rightly note that prejudice to the opposing party is "the most important factor," *see Jackson v.*

7    *Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990), they fail to apply that factor properly to

8    Thomson's unique procedural history.

9            ORS Movants suggest, for example, that prejudice is absent because Defendants have

10   been litigating indirect purchaser claims and defenses for years. (ORS Br. 15.) While that may be

11   true as to other Defendants named in the Sixth CAC, it is not true as to Thomson, which has never

12   been a "party" to any of the consolidated amended complaints. Contrary to Movants' assertions,

13   they seek to add not only new damages claims, but also a new defendant—Thomson. This fact is

14   relevant because, as the Ninth Circuit recognizes, "[a]mending a complaint to add a party poses

15   an ***especially acute threat*** of prejudice to the entering party," and thus "avoiding prejudice to the

16   party to be added becomes [the court's] major objective." *DCD Programs, Ltd. v. Leighton*, 833

17   F.2d 183, 188 (9th Cir. 1987).

18           The threat of prejudice to Thomson is "especially acute" here. Thomson has never been

19   substantively involved as a party in any IPP litigation. Thomson has not (1) participated in or

20   pursued any discovery regarding any IPP claims, (2) engaged any experts, (3) filed any

21   dispositive motions, (4) had the opportunity to challenge certification of any IPP class or

22   (5) developed and implemented a legal strategy to defend against any IPP claims. Allowing

23   Movants to file the Sixth CAC to add claims against Thomson would severely prejudice it. Not

24   only would it be required to attempt to "catch up" to the other Defendants who have actively

25   _____

26   [2] Because ORS Movants cannot intervene, they also are "not plaintiffs and they may not file an
     amended complaint". *Zepeda v. PayPal, Inc.,* No. 10-cv-02500-SBA (JCS), 2014 WL 1653246,

27   at *9 (N.D. Cal. Apr. 23, 2014), *objections overruled,* 2014 WL 4354386 (N.D. Cal. Sept. 2,
     2014).

28

1   litigated against IPPs for nearly a decade, but it would also be required to attempt to overcome the

2   prejudice arising from not having previously participated in any fact or expert discovery against

3   the IPPs that has already taken place in the litigation, such as the critical depositions of numerous

4   alleged participants in the Asian Glass Meetings noted above. *See supra* at 6. This is exactly the

5   kind of prejudice the Ninth Circuit has held warrants denying motions to amend. *See City of L.A.*

6   *v. San Pedro Boat Works*, 635 F.3d 440, 454 (9th Cir. 2011) (affirming denial of motion for leave

7   to amend where undue prejudice would arise from forcing defendant "to revisit extensive

8   discovery"); *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("A

9   need to reopen discovery and therefore delay the proceedings supports a district court's finding of

10  prejudice from a delayed motion to amend the complaint."); (noting that a court "must consider"

11  whether adding the proposed defendants would "require the opponent to expend significant

12  additional resources to conduct discovery and prepare for trial," and rejecting leave to amend);

13  *accord Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1066 (8th

14  Cir. 2005) (rejecting attempt to add new defendants where adding defendants would "impose

15  additional discovery requirements" and "further delay the conclusion of the case").

16       Moreover, the fact that Thomson knew of the litigation does not help Movants here. As

17  one California court has noted, "Although the proposed new defendants may have been aware of

18  this litigation since its inception, this does not mean that they would not be prejudiced by being

19  joined as parties now." *Longtale, Ltd. v. IKOR, Inc.*, No. C-11-05452 (EDL), 2014 WL 1478901,

20  at *4 (N.D. Cal. Apr. 14, 2014); *see also Taylor v. Shippers Transport Exp., Inc.*, No. CV 13-

21  02092-BRO-(PLAx), 2014 WL 12561079, at *4 (C.D. Cal. Apr. 18, 2014) (holding that, while

22  the new defendant "has had knowledge of the litigation since 2012, he was not informed that he

23  would become a Defendant until March 2014," and thus prejudice "will likely be inflicted upon

24  [him] should he be added as a Defendant"). Indeed, for all the reasons above, "[s]imply acting as

25  an observer and monitor would not have prepared [Thomson] to jump into complicated

26  commercial litigation at this late stage in the proceedings." *Becherer v. Merrill Lynch, Pierce,*

27  *Fenner & Smith*, 43 F.3d 1054, 1069 (6th Cir. 1995).

28       The prejudice to Thomson is particularly unfair because there is no good reason for

1   Movants' undue delay. *Lockheed Martin*, 194 F.3d at 986. (noting that "delay is not a dispositive

2   factor in the amendment analysis," but "it is relevant," especially "when no reason is given for the

3   delay"). "Relevant to evaluating the delay issue is whether the moving party knew or should have

4   known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902

5   F.2d at 1388. Movants here have known of their potential claims against Thomson for over a

6   decade: Thomson was a party to two state IPP complaints in 2008, one of which was filed by

7   Liaison Counsel for the ORS Movants, Mr. Scarpulla. ORS Movants and their counsel fail to

8   explain why, having known about their potential damages claims against Thomson since at least

9   2008, they waited over 11 years to attempt to bring damages claims against Thomson under the

10  laws of any of the nine ORS. They have no good excuse for trying to shoehorn Thomson into the

11  litigation now, when they had numerous opportunities to do so over the last decade and

12  intentionally decided against it. *See San Pedro Boat Works*, 635 F.3d at 454 (affirming denial of

13  motion for leave to amend where plaintiff had no excuse for three-year delay); *Longtale*, 2014

14  WL 1478901, at *3 (rejecting leave to amend where plaintiff was "aware of the involvement of

15  the proposed new defendants long before it moved for leave to amend"); *see also Moses.com*, 406

16  F.3d at 1066 (rejecting attempt to add new defendants where plaintiff "had been aware of the

17  existence of the companies" from the outset of the litigation).

18  **C.    Leave To Amend Should Be Denied As To Thomson Because the Potential Claims**

19  **Against It Do Not Relate Back To Any Complaint Against Thomson And Thus Are**

20  **Untimely.**

21     Not only do Movants' requests for leave to amend fail Rule 15(a)'s "prejudice" and undue

22  delay tests, they also fail its "futility" test because the claims they seek leave to plead are

23  untimely and, especially as to Thomson, do not relate back to any timely filed complaint. Again,

24  Thomson is aware the Court has expressed it is not inclined to deny leave to amend on futility

25  grounds where a defendant asserts that the amendment is futile because the claims are time-

26  barred. But because ORS Movants have raised the Rule 15(c) relation-back issue Thomson

27  addresses the issue here.

28     The first step is to assess whether the proposed claims are time-barred absent the

1  application of relation-back principles under Rule 15(c). *See, e.g.*, *Willner v. Manpower, Inc.*, No.

2  11-cv-02846-JST, 2014 WL 2939732, at *2–3 (N.D. Cal. Jun. 30, 2014) (assessing whether

3  claims were untimely, then whether they related back to previous complaint). The claims

4  undoubtedly are time-barred. As this Court has previously held, Movants had actual or inquiry

5  notice of their potential claims against Thomson by no later than November 14, 2007. *See In re*

6  *CRT Antitrust Litigation*, 27 F. Supp. 3d 1015, 1020 (N.D. Cal. 2014) (dismissing certain state

7  law claims alleged by direct action plaintiffs as time-barred). The statutes of limitation on

8  Movants claims against Thomson then ran until November 6, 2011, the effective date of the

9  Tolling Agreement IPPs entered with Thomson. Accordingly, the limitation period ran

10  uninterrupted for at least three years and 357 days. Thomson terminated the Tolling Agreement

11  effective June 7, 2015, at which time any limitation period resumed running. (**Ex. 1**.) Thus, the

12  limitation period has now been running, at a minimum, for over eight years. Moreover, because

13  no plaintiff from any ORS has ever previously asserted damages claims against Thomson and

14  *American Pipe* tolling does not apply "to a later filed claim that was not identical to the earlier-

15  filed class claims," no ORS Movant from any state may rely upon *American Pipe* to toll the

16  expiration of the statutes of limitation during this over eight-year period. *See In re CRT Antitrust*

17  *Litigation*, 27 F. Supp. 3d at 1020.

18     The limitations period for ORS Movants' potential claims under Montana law is two

19  years, and three years under the laws of New Hampshire and South Carolina. *See* MONT. CODE

20  ANN. § 27-2-211 (2019); N.H. REV. STAT. ANN. 358-A:3(IV-a); S.C. CODE ANN. § 39-5-150. The

21  limitations period on ORS Movants' damages claims against Thomson ran for ***over three years***

22  ***and eleven months*** before Thomson entered into a Tolling Agreement with Lead Counsel for

23  IPPs. Therefore, the potential claims against Thomson under Montana, New Hampshire and

24  South Carolina are indisputably time-barred and would fail as a matter of law.

25     With respect to the potential claims under the laws of states where the relevant limitations

26  period is four or five years (Arkansas, Massachusetts, Missouri, Oregon, and Utah) the claims are

27  also time-barred. In their motion, ORS Movants suggest that the claims asserted in the proposed

28  complaint under the laws of these states are timely because they relate back to claims asserted

1    against Defendants in prior consolidated amended complaints. Further, they suggest that because

2    they only seek leave to amend to add new plaintiffs, they are only required to satisfy the "test for

3    when the [relation-back] doctrine applies to the addition of a plaintiff." (ORS Mem. at 17.) Not

4    so. As noted above, the Sixth CAC seeks to add Thomson as a new defendant. And under Rule

5    15(c), any new claims against Thomson in the Sixth CAC might relate back to an original

6    pleading *only* if (1) the claim arose out of the same conduct, transaction, or occurrence;

7    (2) Thomson received sufficient notice of the original action within 120 days so as not to be

8    prejudiced in defending on the merits; and (3) Thomson knew or should have known that the

9    complaint would have included it "***but for a mistake concerning the proper party's identity.***" *See*

10   *In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d 984, 1000 (N.D. Cal. 2009), citing *Percy v. S.F.*

11   *Gen. Hosp.*, 841 F.2d 975, 978, (9th Cir. 1988) (emphasis added).

12         With respect to Thomson, Movants cannot satisfy the third prong of this test because they

13   cannot show that Thomson was on notice that its omission from the first four consolidated

14   amended complaints was due to "a mistake" about the "proper party's identity."[3] At the time the

15   Fourth CAC was filed, Thomson already had been named in two state IPP complaints that IPPs

16   abandoned in favor of the First CAC that did not name Thomson—it was no stranger to Movants.

17   Indeed, Liaison counsel for the ORS Plaintiffs, Mr. Scarpulla, had filed the *Stack* complaint

18   against Thomson SA in 2008. As such, Movants were clearly on notice that Thomson was a

19

20   [3] Nor can Movants bootstrap their proposed Sixth CAC to the separate amended complaint that
     named Thomson in June 2015, because "Rule 15(c) does not permit a complaint filed in one civil
21   action to relate back to a complaint filed in a separate civil action." *In re Comm. Bank of N. Va.*,
     467 F. Supp. 2d 466, 478 (W.D. Pa. 2006). The Ninth Circuit applies the same principle, *see*
22   *Coleman v. Pacific Gas & Electric Co.*, 79 F.3d 1152, 1996 WL 118518, at *2 (9th Cir. Mar. 18,
     1996) (rejecting relation back because plaintiff's "amended" complaint "was not an amended
23   pleading offered in an existing action, but rather a second separate complaint"), and so does
     "every other court of appeals that has addressed the issue," *see In re Comm. Bank*, 467 F. Supp.
24   2d at 478: *see also Bailey v. N. Ind. Pub. Serv. Co.*, 910 F.2d 406, 413 (7th Cir. 1990) ("Rule
     15(c), by its terms, only applies to amended pleadings in the same action as the original, timely
25   complaint"); *Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*, No.
     CIV 09-1397-HA, 2010 WL 4812860, at *9 (D. Or. Nov. 19, 2010) ("The plain language of
26   FRCP 15(c) provides that only amendments to pleadings can relate back to the original
27   complaint.").

28

1    potential defendant. Lead Counsel for IPPs threatened to add Thomson as a defendant to the

2    Fourth CAC, but ultimately decided merely to allege it was a so-called "co-conspirator". This is

3    conclusive proof that no relevant party ever labored under a "mistake" about Thomson's

4    "identity," and Thomson was not on notice to the contrary.

5            In fact, this case presents the "antithesis" of a "mistake" under Rule 15(c): "a deliberate

6    choice to sue one party instead of another while fully understanding the factual and legal

7    differences between the two parties." *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549

8    (2010). As *Krupski* noted, when "the original complaint and the plaintiff's conduct compel the

9    conclusion that the failure to name the prospective defendant in the original complaint was the

10   result of a ***fully informed decision*** as opposed to a mistake concerning the proper defendant's

11   identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." *Id.* at 552. The Ninth Circuit has

12   consistently enforced the same standard. *See e.g.*, *La.-Pac. Corp. v. ASARCO, Inc.*, 5 F.3d 431,

13   434 (9th Cir. 1993) (rejecting relation back where "[t]here was no mistake of identity, but rather a

14   conscious choice of whom to sue"; the "mistake under Rule 15(c) has to be as to identity");

15   *Kilkenny v. Arco Marine, Inc.*, 800 F.2d 853, 857-58 (9th Cir. 1986) ("Rule 15(c) was never

16   intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a

17   potential party, nor was it intended to permit a plaintiff to engage in piecemeal litigation."). As

18   one court has put it, "a plaintiff cannot satisfy the mistake requirement of Rule 15(c)(1)(C)(ii)

19   where the plaintiff knows the identities of potential tortfeasors, includes details of their

20   misconduct in the original pleading, but fails to name them as defendants in the original

21   complaint." *Cabrera v. Lawlor*, 252 F.R.D. 120, 123 (D. Conn. 2008). But that is exactly what

22   happened here with respect to Thomson. Because the decision not to name Thomson was a

23   strategic choice, not a "mistake" as to "identity," Movants cannot establish that their proposed

24   claims against Thomson relate back to any timely complaint. Accordingly, ORS Movants'

25

26

27

28

1  damages claims against Thomson under the state laws of Arkansas, Massachusetts, Missouri,

2  Oregon, and Utah are untimely and would fail as a matter of law.[4]

3         Finally, ORS Plaintiffs' potential claims against Thomson under Rhode Island law are

4  frivolous and it also would be futile to grant ORS Plaintiffs leave to amend to assert them. Rhode

5  Island's *Illinois Brick* repealer statute took effect on June 15, 2013. *See In re Generic Pharms.*

6  *Pricing Antitrust Litig.,* 368 F. Supp. 3d 814, 838 (E.D. Pa. 2019). As every court that has

7  examined the issue has held, Rhode Island's repealer statute applies to permit damages claims

8  based **only** upon alleged conduct that occurred **after** the statute took effect. *Id.* (dismissing

9  damages claims under Rhode Island antirust statute for overcharges allegedly incurred before

10  *Illinois Brick* repealer statute took effect on July 15, 2013) (collecting cases); *see also In re*

11  *Broiler Chicken Antitrust Litig.,* 290 F. Supp. 3d 772, 812 (N.D. Ill. 2017) (noting that no court

12  has applied Rhode Island's repealer statute retroactively) (collecting cases). ORS Movants do not

13  allege that any Defendant engaged in any anticompetitive conduct after 2007, so the potential

14  damages claims under Rhode Island law would be futile.

15  **IV.   CONCLUSION**

16         For the foregoing reasons, the Court should deny the motions to intervene and for leave to

17  amend to add claims against Thomson.

18

19

20

---

[4] Movants' claims against Thomson fail as a matter of law for other reasons. For example, and
without limitation, courts in this district have held that indirect purchaser plaintiffs may not
maintain damages claims premised upon an alleged price-fixing conspiracy under the Arkansas
Deceptive Trade Practices Act, the Arkansas statute ORS Plaintiffs attempt to rely upon in the
Sixth CAC. *See e.g. In re TFT-LCD Antitrust Litig.*, 787 F. Supp. 2d 1036, 1042 (N.D. Cal.
2011); *In re Static Random Access Memory Antitrust Litig. (SRAM),* 2010 U.S. Dist. LEXIS
131002, *51  (N.D. Cal. Dec. 8, 2010); *In re Graphics Processing Units Antitrust Litig.,* 527 F.
Supp. 2d 1011, 1029-30 (N.D. Cal. 2007); *see also In re Graphics Processing Units Antitrust*
*Litig.*, 540 F. Supp. 2d 1085, 1101 (N.D. Cal. 2007); *In re Lidoderm Antitrust Litig.*, 103 F. Supp.
3d 1155, 1166-1167 (N.D. Cal. 2015). Lewis's claims for equitable monetary damages are
completely baseless and also fail as a matter of law for the reasons expressed in Defendants'
Response. (*See* Defs.' Resp. at 20-21.)

1

Dated:  September 20, 2019                     Respectfully submitted,

2

FAEGRE BAKER DANIELS LLP

3

4

*/s/ Jeffrey S. Roberts*
Kathy L. Osborn (*pro hac vice*)

5

Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP

6

300 N. Meridian Street, Suite 2500
Indianapolis, IN  46204

7

Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000

8

kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

9

Jeffrey S. Roberts (*pro hac vice*)

10

Faegre Baker Daniels LLP
1144 15th Street, Suite 3400

11

Denver, CO  80203
Telephone: +1-303-607-3500

12

Facsimile:  +1-303-607-3600
jeff.roberts@FaegreBD.com

13

14

***Attorneys for Defendants Thomson SA and
Thomson Consumer Electronics, Inc.***

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

On September 20, 2019, I caused a copy of **THOMSON DEFENDANTS'
OPPOSITION TO (1) MOTION TO INTERVENE AND AMEND COMPLAINT TO
ALLEGE STATE LAW CLAIMS FOR THE OTHER REPEALER STATES (EFF No.
5567); AND (2) MOTION OF NON-REPEALER SUBCLASS MEMBER ELEANOR
LEWIS FOR LEAVE TO FILE AMENDED COMPLAINT TO ADD ADDITIONAL, OR
IN THE ALTERNATIVE, TO INTERVENE AND AMEND (ECF No. 5565)** to be
electronically filed via the Court's Electronic Case Filing System, which constitutes service in
this action pursuant to the Court's order of September 2, 2008.


*s/ Jeffrey S. Roberts*