# EXHIBIT 3

JOSEF D. COOPER (53015)
TRACY R. KIRKHAM (69912)
JOHN D. BOGDANOV (215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA  94103
Telephone:  (415) 788-3030
Facsimile:  (415) 882-7040
E-mail:  jdc@coopkirk.com
Co-Lead Counsel for Indirect-Purchaser Plaintiffs

KAMALA D. HARRIS
Attorney General of the State of California
KATHLEEN FOOTE (65819)
Senior Assistant Attorney General
EMILIO E. VARANINI (163952)
455 Golden Gate Avenue, Ste. 11000
San Francisco, CA 94102
Telephone: (415) 703-5908
Facsimile:  (415) 703-5480
E-mail:  Emilio.Varanini@doj.ca.gov
Attorneys for the State of California On Behalf of All Attorneys General

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION | Case No. M-02-1486-PJH<br>MDL No. 1486 |
| This Document Relates to: | **INDIRECT PURCHASER PLAINTIFFS AND ATTORNEYS GENERAL'S JOINT NOTICE OF MOTION AND MOTION TO DISTRIBUTE SETTLEMENT FUNDS** |
| ALL INDIRECT PURCHASER ACTIONS | |
| and | |
| *State of California et al. v. Infineon Technologies AG, et al.* | Hearing Date:  May 18, 2016<br>Time:  9:00 a.m.<br>Courtoom:  3, 3rd Floor<br>The Honorable Phyllis J. Hamilton |
| *State of New York v. Micron Technology Inc., et al.* | |
| *State of California et al. v. Samsung Electronics Co., Ltd., et al.* | Case No. C 06-4333 PJH |
| *State of California et al. v. Winbond Electronics Co.* | Case No. C 06-6436 PJH<br>Case No. C 07-1347 PJH |
| *Petro Computer Systems, Inc. v. Hitachi, Ltd.* | Case No. C 07-2589 PJH |
| *Petro Computer Systems, Inc. v. Mitsubishi Electric Corporation, et. al.* | Case No. C 12-5213 PJH<br>Case No. C 12-5214 PJH |
| *Petro Computer Systems, Inc. v. Toshiba* | |

**Exhibit 3, Pg. 2**

JOINT MOTION TO DISTRIBUTE SETTLEMENT FUNDS – CASE NO. M-02-1486-PJH

*Corporation, et. al.*                     )   Case No. C 12-5215 PJH

*State of California et*                    )   Case No. C 12-5230 PJH
*al., v. Toshiba Corporation et al.,*      )   Case No. C 12-5229 PJH

*State of California et*                    )   Case No. C 12-5231 PJH
*al., v.  Mitsubishi Electric Corporation, et. al.*   )

*State of California et*                    )
*al., v.  Hitachi, Ltd.*                    )
                                            )
                                            )
                                            )
                                            )

**Exhibit 3, Pg. 3**

**TABLE OF CONTENTS**                                                          <u>Page</u>

NOTICE OF MOTION AND MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      INTRODUCTION AND SUMMARY OF DISTRIBUTION PROTOCOLS . . . . . . . 2

II.     THE COURT'S PRIOR ORDERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      Indirect Purchaser Settlement Class Plan of Distribution . . . . . . . . . . . . . . . . .5

        B.      Government Purchaser Settlement Classes Plan of Distribution . . . . . . . . . . 6

III.    THE SETTLEMENT FUND ACCOUNTING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

IV.     PROTOCOLS FOR THE PAYMENT OF THE INDIRECT PURCHASER
        SETTLEMENT CLASS'S CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.      Payment of Claims Administration Expenses and
                Establishment of Reserve. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.      Deduction of Attorneys' Fees, Expenses and Incentive Awards . . . . . . . . . . .9

        C.      Claims Auditing and Processing for the Indirect Purchaser
                Settlement Class. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

                1.   Claims-Filing Deadline for the Indirect Purchaser Settlement Class . . . . . 10

                2.   Audit Process to Identify Claims Eligible for Payment . . . . . . . . . . . . . . . 11

                3.   Claim Value Computation for Eligible Claims . . . . . . . . . . . . . . . . . . . . . .12

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Exhibit 3, Pg. 4**

**TABLE OF AUTHORITIES**                                          **Page**

Cases

*In re Elec. Carbon Prods. Antitrust Litig.*
        622 F. Supp. 2d 144, 155 (D.N.J. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*In re Gypsum Antitrust Cases*
        565 F.2d 1123, 1128 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Welch & Forbes Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.)*
        233 F.3d 188, 194-197 (3d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Exhibit 3, Pg. 5**

JOINT MOTION TO DISTRIBUTE SETTLEMENT FUNDS – CASE NO. M-02-1486-PJH

## <u>NOTICE OF MOTION AND MOTION</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on May 18, 2016, at 9:00 a.m. or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Phyllis J. Hamilton of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, the Indirect Purchaser Plaintiffs and Attorneys General will and hereby do move for entry of an Order appointing Rust Consulting, Inc. ("Rust") as the Settlement Fund Administrator, and authorizing distribution of the Settlement Fund in accordance with the Court's previous orders and the protocols set forth in this motion.

This Joint Motion is based upon this Notice, the included Memorandum of Points and Authorities, the Declaration of Amy Lake of Rust; the Declaration of Juan Riveros; the Declaration of Josef D. Cooper; the Declaration of Terry Gross, any arguments and evidence that may be presented at any hearing before the Court on this motion, and on all other pleadings and papers on file in this action.

**Exhibit 3, Pg. 6**

JOINT MOTION TO DISTRIBUTE SETTLEMENT FUNDS – CASE NO. M-02-1486-PJH

## MEMORANDUM OF POINTS & AUTHORITIES

## I.     INTRODUCTION AND SUMMARY OF DISTRIBUTION PROTOCOLS

On June 27, 2014, this Court granted final approval of global settlements that provided injunctive relief and payments totaling $310,720,000.  The Court also approved awards of attorneys' fees and expenses, and incentive awards to the named plaintiffs and class representatives, as well as general plans of distribution for the net settlement proceeds to members of the Indirect Purchaser Settlement Class and the Government Purchaser Settlement Classes.  All appeals from the Court's settlement approval order, its fee, expense and incentive awards, and the plans of distribution of the settlement proceeds to the Indirect Purchaser Settlement Class have been dismissed, and these orders are final.  The settlement payments, with one exception, have been received and placed in interest-earning escrow accounts.  Pursuant to the Court-ordered Notice of the settlements, settlement class members' claims for a payment from the settlement proceeds have been received and audited.

The plan for the allocation and distribution of the settlement funds to the Indirect Purchaser Settlement Class provides for all cash payments, except that under certain specified contingencies, a *cy pres* distribution of a portion of the settlement proceeds would occur.  These contingencies were: (1) if there were more than 5 million claims from a defined group of claimants, referred to as "Small Claims;" or (2) if the payment at single damages of all *bona fide* Small Claims were less than $25 million.  *See* Report and Recommendations of Special Master, Part I (Dkt. 2132) ("R&R Part I") at ¶24.  The claims auditing has been completed, and it has been confirmed that neither of the two *cy pres* contingencies has been triggered.  Accordingly, there is no *cy pres* element in the protocols proposed for this distribution to the Indirect Purchaser Settlement Class.

In order to effectuate the distribution of the settlement funds to the Settlement Classes, Co-Lead Counsel and the Attorneys General (hereinafter collectively referred to as "the Settling

**Exhibit 3, Pg. 7**

Plaintiffs") intend to appoint Rust Consulting, Inc. ("Rust") as the Fund Administrator authorized to make the Court-awarded payments to Co-Lead Counsel, the Attorneys General, the private plaintiffs and class representatives, and to distribute the settlement proceeds in accordance with the Court's prior Orders, and pursuant to the following protocols:

- All claims from members of the Indirect Purchaser Settlement Class submitted on or before July 1, 2015 are to be considered timely.

- The Escrow Accounts at Union Bank, N.A. will be closed and the funds therein will be transferred into an account at Huntington National Bank for the purpose of being disbursed by Rust pursuant to the Court's Orders and awards.

- Rust's invoices for claims auditing and processing costs incurred to date will be paid pursuant to the Order of the Court and the provisions for various defendants' contributions in the settlement agreements.

- A reserve fund of $1,250,000 will be established and maintained by Huntington Bank for the purpose of paying future claims disbursement and other expenses.

- Rust has identified those claims from members of the Indirect Purchaser Settlement Class that pursuant to the Plan of Distribution should be classified as "Small Claimants" and paid from the $25 million allocation of settlement funds to Small Claims.[1]  In addition, Rust identified 18,753 claims not classified as Small Claimants that (as Large Claimants) would receive settlement payments less than if they had claimed fewer DRAM modules and/or DRAM-containing products and

---

[1]  The Plan of Distribution defines a "Small Claim" as any claim that in a first pass calculation of a *pro rata* distribution to all approved claimants would receive less than $10.00, and a "Small Claimant" as a person and entity with a "Small Claim."  Although the Plan does not specifically define claims that result in a payment of $10.00 or more, for ease of discussion, all such claims will be referred to herein as, "Large Claims," and "Large Claimants" are persons and entities with "Large Claims."

**Exhibit 3, Pg. 8**

JOINT MOTION TO DISTRIBUTE SETTLEMENT FUNDS – CASE NO. M-02-1486-PJH

been classified as Small Claimants. However, if these claims were reclassified as

Small Claims by reducing the amount of the DRAM and/or DRAM-containing

products they claim, this inequity can be avoided.  The Settling Plaintiffs submit that

logic dictates that all of these claimants would elect to reduce the number of

products claimed in return for a higher total settlement payment.  Accordingly, the

Settling Plaintiffs have instructed Rust, pending confirmation from this Court, to

reduce the DRAM and/or DRAM-containing products sufficiently to reclassify these

claims as Small Claims.

- In all other respects, disbursements and distributions of the settlement funds to members of the Indirect Purchaser Settlement Class and the Government Purchaser Settlement Classes will follow the previously approved Plans of Distribution and this Court's prior Orders.

## II.     THE COURT'S PRIOR ORDERS

On June 27, 2014, the Court granted final approval of settlements with Samsung, Winbond,

Infineon, Elpida, NEC, Micron, Mosel, Hynix, Nanya, Toshiba, Hitachi and Mitsubishi, certified an

Indirect Purchaser Settlement Class and Government Purchaser Settlement Classes, approved plans

of distribution, and entered final judgment in these actions.[2]  It also awarded attorneys' fees and

expenses to counsel for the Indirect Purchaser Plaintiffs and the Attorneys General, and gave

incentive awards to the private plaintiffs and class representatives.[3]

---

[2] *See* Order Granting Final Approval Of Settlements, Plans Of Distribution And Claims Protocols, Certifying Settlement Classes, Finally Adopting Special Master's Report And Recommendations, Parts I And II; Final Judgment Of Dismissal With Prejudice (Dkt. 2235).

[3] *See* Order Granting Award Of Attorneys' Fees, Reimbursement Of Expenses And Incentive Awards To Plaintiffs; Finally Adopting Special Master's Report And Recommendations, Part III; Final Judgment (Dkt. 2234).

**Exhibit 3, Pg. 9**

4

**A.  Indirect Purchaser Settlement Class Plan of Distribution**

Under the plan of distribution for the Indirect Purchaser Settlement Class, individuals and

entities nationwide, who were indirect purchasers of DRAM, were eligible to submit claims

through a dedicated website (http://www.dramclaims.com/) or by mail, for purchases of DRAM

and products containing DRAM between 1998 and 2002.  Subject to the two *cy pres* contingencies

noted above, the settlement proceeds are to be distributed as cash payments *pro rata* to class

members with approved claims.  *See* R&R Part I at ¶27.  Specifically, the plan of distribution

provides that:

- A *pro rata* recovery amount will be calculated for each claimant on the basis of the amount of DRAM modules and DRAM-containing product purchases each made, according to a formula that weights the DRAM content of the various categories of DRAM-containing products and converts all purchases to a common unit of measure. The "value" of the DRAM in computers and other categories of DRAM-containing products will be determined from available data.

- All small claimants (resellers and end users), defined as those claimants whose *pro rata* recovery amount is less than $10, will have their recovery raised to that amount.

- The total amount of recoveries to small claimants will be capped at $50 million. If the total dollar amount of all small claimant recovery, after each claimant is raised to $10, exceeds $50 million, no distribution of individual checks will be made to this group. Rather, $40 million will be distributed *cy pres* to the benefit of small claimants. [As stated above, this contingency has not been triggered and small claimants will be receiving checks.]

- In the event that the number of small claims received is such that the total small claimants' recovery (after enhancement to the $10 minimum described above) does not exceed $25 million, the difference between the amount being paid directly to small claimants and $25 million will be distributed as follows: (1) first, the amount of the small claimants' checks will be increased *pro rata* above $10, up to a the estimated single damages suffered by each claimant as a result of his/her/its claimed purchases, until the available funds up to such $25 million are exhausted; or (2) if this procedure for increasing small claimants' checks does not exhaust the available funds up to such $25 million, any remainder will be distributed *cy pres*.  [This contingency has not been triggered and no *cy pres* distribution of the $25 million for small claimants is being proposed.]

- In the event that the *pro rata* distribution share of any claimant whose *pro rata* share would be greater than $10 would exceed the estimated single damages suffered by

**Exhibit 3, Pg. 10**

JOINT MOTION TO DISTRIBUTE SETTLEMENT FUNDS – CASE NO. M-02-1486-PJH

him/her/it as a result of their claimed purchases, their recoveries will be limited to their estimated single damages. Any excess would be distributed *cy pres*.

R&R Part I at ¶24.

### B.   Government Purchaser Settlement Classes Plan of Distribution

The plans of allocation and distribution for the Government Purchaser Settlement Classes were the product of an agreement between the Attorneys General of Class and Non-Class States. Although members of the Government Purchaser Settlement Classes were not eligible to file claims with the Claims Administrator under the terms of the settlement agreements, members of the Government Purchaser Settlement Classes are to receive their share of the 1/9 of the net settlement funds reserved for government entities to compensate such entities for their purchases of DRAM and DRAM- containing products.  See, *e.g.,* Dkt. 2234 at ¶ 69.

### III.   THE SETTLEMENT FUND ACCOUNTING

The settlement funds are currently held by the Escrow Agent, Union Bank, N.A. ("Union Bank") in multiple defendant-specific accounts.  These accounts contain all of the payments that defendants were obligated to make pursuant to the settlement agreements with two exceptions. First, defendant Samsung is obligated to make an additional maximum payment of $919,125 for claims processing costs.  Second, as previously reported to the Court, defendant Mosel Vitelic encountered financial difficulties and was unable to pay its $2,778,900 settlement obligation. Mosel entered into a payment plan which requires it to make quarterly payments of $104,208.75 until April 2019, and to pay 50% of all moneys it is able to collect, up to $694,725, from a Hong Kong arbitral award it obtained against a Chinese manufacturer.  *See* June 23, 2014 Letter to the Court (Dkt. 2227).  To date, Mosel has paid $913,670, leaving approximately $1,865,230 to be paid in the future.[4]

---

[4]   "Declaration of Josef D. Cooper in Support of Motion to Distribute Settlement Funds," filed concurrently

**Exhibit 3, Pg. 11**

The Union Bank Escrow Accounts have been invested in instruments backed by the full faith and credit of the United States Treasury (*i.e.*, T-Bills and T-Notes).  These investments have yielded interest at various rates over the years, which interest has added to the principal.  In addition, some of the defendants elected to make payments, with interest, over time.  Expenses, including the Escrow Agent's fees, and the costs of preparing tax returns for the funds have been deducted from the Escrow Accounts.

Attached as Exhibit A to the Cooper Declaration is a reconciliation of the deposits, interest earned and disbursements made from the funds in the Union Bank Escrow Accounts through April 30, 2016.  The most significant deductions made to date are the Court-approved payments for notice costs disbursed to Kinsella Media, Inc. and the fees and expenses paid to the Hon. Charles B. Renfrew for his services as Special Master. [5]

The remaining significant payments to be made from the Escrow Accounts are the Court-awarded attorneys' fees and expenses, the incentive awards to the private named plaintiffs, and the payments owed to Rust for claims auditing and processing.  In addition, as discussed below, a portion of the settlement funds needs to be reserved to pay certain costs incurred and to be incurred in the future in connection with the distribution of the settlement funds to claimants.  Further, the settlement funds will need to be divided between the Indirect Purchaser Settlement Class and the Governmental Entities, who are entitled to 1/9th of the net settlement proceeds.  After the subtraction of Court-awarded fees and expenses, the payment of all current claims auditing and processing expenses, the division of the funds with the Attorneys General, and the establishment of

---

herewith, at ¶ 4.

[5]  See Stipulation and Order to Release Funds from Escrow Accounts to Pay Notice Costs, Dkt. 2180. Paragraph 7 of the November 30, 2007 Order appointing Judge Renfrew (Dkt. 1788) and paragraph 6 of each of the subsequent Orders continuing/expanding that appointment (Dkts. 2099, 2102 and 2126) all provide that "[a]ll payments to the Special Master [for his services] shall be made from the settlement funds and be allocated pursuant to the agreement of the parties . . . ."

**Exhibit 3, Pg. 12**

a reserve for future expenses, the funds available for distribution to the Indirect Purchaser

Settlement Class as of April 30, 2016, was $ 191,195,595.  *See* Exhibit B to the Cooper Declaration

for this computation.[6]

## IV.   PROTOCOLS FOR THE PAYMENT OF THE INDIRECT PURCHASER SETTLEMENT CLASS'S CLAIMS

### A.  Payment of Claims Administration Expenses and Establishment of Reserve

Co-Lead Counsel and the Attorneys General retained Rust, which in turn retained economic

consultants at Nathan Associates Inc. ("Nathan"), to perform claims processing and auditing and to

provide economic and statistical guidance in the application of the Court-approved Indirect

Purchaser Settlement Class Plan of Distribution to the claims experience.  To date, Rust and Nathan

have incurred $1,787,071 in unpaid time and expenses.[7]   After carefully checking those invoices,

the Settling Plaintiffs request the Court to authorize payment of $1,7878,071 for claims

administration expenses, principally audit-related costs, reasonably incurred to date.  *Id.* [8]

Counsel intend to use Rust as the disbursing agent to process payments to class members

with approved claims.[9]  Accordingly, as an element of approval of the protocols for distribution,

Counsel request the Court to authorize the transfer of the funds in the settlement Escrow Accounts

---

[6]  Given the low rate of interest currently afforded by government securities, this number is not expected to change significantly before the distribution to claimants.

[7]  "Declaration of Amy L. Lake of Rust Consulting, Inc., Notice and Claims Administrator," filed concurrently herewith, at  ¶ 32.

[8]  Under the terms of its settlement agreement, Samsung is required to separately pay its *pro rata* share of the notice and claims expenses, up to $2,500,000.  *See* Samsung Settlement Agreement, ¶¶ 11, 20, 24, attached as Exhibit 7 to the "Appendix to Report and Recommendations of Special Master," filed January 8, 2013 (Dkt. 2135).  Samsung has paid $1,580,874.05 toward notice expenses.  Samsung's counsel is currently reviewing the Rust statements prefatory to making its contribution to these claims expenses..

[9]   Co-Lead Counsel believe that Rust was used in this capacity by the Direct Purchaser Plaintiffs in this litigation.

**Exhibit 3, Pg. 13**

JOINT MOTION TO DISTRIBUTE SETTLEMENT FUNDS – CASE NO. M-02-1486-PJH

to an account at Huntington Bank to be established by Rust for disbursement of the funds in accordance with the Orders of this Court.  This account will be established as a Qualified Settlement Fund ("QSF") and administered by Rust under Counsel's supervision.  Union Bank will transfer to Rust the "administrator" role in accordance with Section 468B of the Internal Revenue Code (26 U.S.C. § 468B) for the QSF, as outlined in the Escrow Agreements.  Union Bank has agreed to cooperate with Counsel and Rust in this transition.

Based on extensive experience with settlement distributions of similar magnitude, Rust estimates that the cost of issuing distribution checks to the almost 400,000 Indirect Purchaser Settlement Class members with approved claims, plus the anticipated level of class member inquiry regarding the distribution process itself, as well as follow up regarding the distribution (*e.g.*, questions about the amounts received, issues with changes of address, lost payments, uncashed checks etc.) could be as much as $1,173,754.  *See* Lake Decl. at ¶ 33.

Plaintiffs suggest that a $1.25 million reserve be established before distribution to class members to pay all future expenses incurred in the distribution of the settlement funds. [10]  In addition, Co-Lead Counsel have identified certain litigation expenses, which are detailed in the Declaration of Terry Gross filed concurrently herewith, that need to be presented to the Court for payment.  The reserve will provide a source of payment for these expenses as well.

**B.  Deduction of Attorneys' Fees, Expenses and Incentive Awards**

The Court's judgment awarding attorneys' fees in the amount of 25.2% of the gross Settlement Fund ($78,333,002), plus interest thereon, is now final.  This award includes aggregate

---

[10]   Co-Lead Counsel believe that this reserve will be adequate for future expenses in light of Samsung's obligation to make a further contribution to these costs.  For example, Samsung's contribution to Rust's estimated $1,173,754 future claims administration expenses would be $280,248, with the reserve paying the balance of $893,506.  That would leave a little more than $356,000 in the reserve for other miscellaneous expenses.

**Exhibit 3, Pg. 14**

fees for all Indirect Purchaser Plaintiffs' Counsel and the Attorneys General, as well as specific awards totaling $653,002.00 to Berman DeValerio, the law firm appointed by the Special Master to advocate for the interests of resellers, and Susman, Godfrey LLP, counsel for reseller Celestica, who was invited by the Special Master to participate in the allocation process.  As of April 20, 2016, the fees awarded have earned $1,413,982 in interest.  See Cooper Decl. Exhibit B.  Pursuant to the agreement of Co-Lead Counsel and the Attorneys General, after payment by Rust, of the specific awards to Berman DeValerio and Susman Godfrey, Co-Lead Counsel for the Indirect Purchaser Settlement Class will receive 80.8% of the attorneys' fee award and the Attorneys' General will receive 19.2%.  *Id.*

Cost and expense reimbursements in the amounts of $5,685,230.00 and $5,483,468.63, respectively, have been awarded to Counsel for the Indirect Purchaser Settlement Class and the Attorneys General, and incentive awards totaling $120,000 have been awarded to the private plaintiffs and the Indirect Purchaser Settlement Class representatives.  *Id.*  Following transfer of the escrowed funds into the disbursement account, Rust will also make these payments.

## C.  Claims Auditing and Processing for the Indirect Purchaser Settlement Class

### 1.  Claims-Filing Deadline for the Indirect Purchaser Settlement Class

The Court set a claims-filing deadline of August 1, 2014,[11] although the Claims Administrator continued to receive and process claims from members of the Indirect Purchaser Settlement Class after that date.  These claimants were advised that the Settling Plaintiffs would determine whether to request that the Court approve their late claims, but that payment was not guaranteed.  Lake Decl. at ¶ 7.  After almost a year of collecting late claims, Co-Lead Counsel instructed Rust to alert claimants that after July 1, 2015, late claims would no longer be

---

[11] *See* Order Granting Preliminary Approval (Dkt. 2174).

**Exhibit 3, Pg. 15**

recommended for payment, and a posting on the settlement website stated that "[t]he deadline to submit claims has passed…. Counsel will recommend to the Court that claims submitted after July 1, 2015 not be accepted." *Id.*

In the interest of increasing the participation of class members in the settlement distribution, Co-Lead Counsel and the Attorneys General recommend that the Court authorize payments to all class members whose claims were filed by July 1, 2015, and were deemed eligible for payment after conclusion of the audit process by Rust.  Although the initial claims deadline was August 1, 2014, the distribution has not been delayed by the additional claims filed between August 1, 2014 and July 1, 2015, and considerations of overall fairness to the Settlement Class outweigh any prejudice to those class members who filed in the "first wave" of claims by August 1, 2014. However, the Settling Plaintiffs recommend that all claims filed after July 1, 2015 should be denied as untimely.  These potential claimants were notified on the dramclaims.com website that claims filed after July 1, 2015 would not be accepted (which date was nearly one year after the original cut-off date).  Accepting claims filed after July 1, 2015, would add yet another round of claims processing and would unnecessarily delay distribution to class members.  *Id.* at ¶¶ 7, 10.

The Court has inherent discretion to allow or disallow "late filed" claims.  *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977) (district court has discretion with respect to the disallowance of late claims); *Welch & Forbes Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.)*, 233 F.3d 188, 194-197 (3d Cir. 2000) (until the fund created by settlement is actually distributed, the court retains its traditional equity powers to protect unnamed but interested persons; a court may assert this power to allow late-filed claims); *In re Elec. Carbon Prods. Antitrust Litig.*, 622 F. Supp. 2d 144, 155 (D.N.J. 2007) (permitting late claimants to share in settlement proceeds).

## 2.  Audit Process to Identify Claims Eligible for Payment

Rust received 449,979 claims through the original August 1, 2014 deadline.  Lake Decl. at ¶

**Exhibit 3, Pg. 16**

11

6.  Rust received an additional 19,508 claims between August 1, 2014 and July 1, 2015.  *Id*. at ¶¶ 6, 9.  All claims received by July 1, 2015 have been audited and/or processed.  *Id.* at ¶ 7.  All claims were standardized by converting the different types of DRAM-containing products claimed by class members into a common measure, called a computer equivalent unit or CEU.  Cooper Decl. at ¶15. The 68 claims received after July 1, 2015, represent 316,400 CEUs, and have not been audited and are not recommended for payment.  Lake Decl..at ¶ 10.

Following an extensive claims analysis and auditing process (described in the Lake Decl. at ¶¶ 12 – 25), Rust, with the assistance of Dr. Juan Riveros, determined that a total of 445,553 of the 469,487 claims received before July 1, 2015 were *bona fide* claims, which, if all were considered timely, would be eligible to participate in the distribution of the Settlement Funds.  *Id*. at ¶¶9, 26. Since Co-Lead Counsel and the Attorneys General are requesting that the Court consider these claims as timely received, they are encompassed within the claims referred to collectively as "Eligible Claims."  Based upon this analysis and calculations, the total Eligible Claims represent 217,387,799 CEUs.  *Id.* at ¶27.[12]

### 3.  Claim Value Computation for Eligible Claims

The plan of distribution provides that as an initial matter, a purely *pro rata* division of the funds available for distribution be made in order to identify and categorize the Eligible Claims into two groups: (1) "Small Claims" and all other claims, which for ease of identification are referred to as, "Large Claims."  "Small Claims" are those where the recovery in this initial computation would be less than $10.00.  After the deductions of all amounts currently payable from the settlement funds and the establishment of the reserve from future expenses, there is approximately $191.2

---

[12]  *See also*, "Declaration of Juan F. Riveros," filed concurrently herewith, at ¶9.  The number of CEUs used for the final distribution calculations will be about 300,000 less due to the withdrawal of products from the 18,753 Large Claims that benefit from being reduced to Small Claim status.  *See*, Section IV.B.3, below.

**Exhibit 3, Pg. 17**

JOINT MOTION TO DISTRIBUTE SETTLEMENT FUNDS – CASE NO. M-02-1486-PJH

million available for distribution to members of the Indirect Purchaser Settlement Class with Eligible Claims.  Riveros Decl. at ¶9.  Dr. Riveros computed that any claim for fewer than 11.37 CEUs would have a *pro rata* payment amount of less than $10.00, and thus would qualify as a "Small Claim."  *Id.*  This meant that "Large Claims," i.e., those with a recovery of at least $10.00, began at a threshold of 11.37 CEUs.  *Id.*

The central concept of the Plan of Distribution adopted by the Court was that the amount of settlement recovery going to each claimant would be proportionate to the amount of price-fixed DRAM purchased during the conspiracy period, and thus, proportionate to the amount of the claimant's injury.  The Plan also provided that a minimum benefit of $25 million would flow to Small Claimants, either directly in monetary payments, or indirectly in the form of a hybrid direct and *cy pres* distribution if the payment of all Small Claims at full single damages did not exhaust the $25 million.  However, application of the language used in the Plan as a mathematical formula to the actual claims experience resulted in an unintended and demonstratively unfair result.  When the $25 million allocated to Small Claims was divided *pro rata* among claimants with less than 11.37 CEUs, the resulting settlement payment for "Small Claims" of approximately 11 CEUs was around $200.00.  Riveros Decl. at ¶10.  The problem was that the recovery for the smallest "Large Claim" at approximately 12 CEUs remained unchanged and was still around $10.00.  *Id.*

That Small Claimants with just under 11.37 CEUs would receive substantially higher individual settlement payments than Large Claimants who were just above the 11.37 CEU cut-off would not only be patently unfair, it would also be in conflict with the central concept of an "injury dependent" distribution of the settlement proceeds.  Accordingly, Co-Lead Counsel asked Dr. Riveros to determine the number and identity of those Large Claimants who would receive more money if their claims were adjusted so that they would fall below the top of the Small Claims threshold.  Dr. Riveros identified 18,753 such claims.  *Id.*  Based on the assumption that no

**Exhibit 3, Pg. 18**

13

claimant, if given the election, would refuse to reduce the number of DRAM modules and/or DRAM-containing products claimed in return for an increased settlement payment, Co-Lead Counsel and the Attorneys General directed Dr. Riveros to make this adjustment and reduce all 18,753 of these Large Claims to the Small Claims threshold. *Id.*

The next step was to determine if the entire $25 million allocated to Small Claims can be distributed without reaching the single damages cap and triggering the need for a *cy pres* distribution.   Dr. Riveros relied on the overcharge computations made by Dr. Paul Liu, the expert economist retained by the Direct Purchaser Plaintiffs in this litigation, and other data to calculate that single damages per CEU were between $17 and $19.  *Id* at ¶12-13.  With the above adjustment, there are 443,321 Small Claims representing a total of 1,564,951 CEUs, which results in a settlement recovery of approximately $15.97 per CEU – or less than full single damages.  Riveros Decl. at ¶11.  Accordingly, the *cy pres* provision in the Plan of Distribution for distribution of the $25 million to Small Claimants is not triggered.  Small Claimants will receive an average recovery of $56 per claimant.  *Id* at ¶13.  Lake Decl. at ¶ 29.

All funds in excess of the $25 million specified for the payment of Small Claims, approximately $166.2 million, will be distributed *pro rata* to Large Claimants.  Riveros Decl. at ¶14.  There are 2,232 claims in this pool (after the above-described adjustment), but they represent 215,822,847 CEUs, a significantly larger total than that encompassed by Small Claims.  *Id.*  Each claimant will receive approximately $0.77 per CEU, although the average recovery in the Large Claims pool is $74,460, significantly more than the average recovery of claimants in the Small Claims pool.  *Id.*  See also, Lake Decl. at ¶30.

For both administrative reasons, *e.g.*, the much smaller number in the Large Claimant pool, and equitable reasons, *e.g.*, the much lower recovery rate per CEU for this group, Co-Lead Counsel and the Attorneys General have agreed to recommend that settlement fund payments still to be

**Exhibit 3, Pg. 19**

JOINT MOTION TO DISTRIBUTE SETTLEMENT FUNDS – CASE NO. M-02-1486-PJH

received from Mosel should be distributed *pro rata* to Large Claimants in a single supplemental

future distribution

## V.   **CONCLUSION**

For the foregoing reasons, Counsel respectfully request the Court authorize distribution of

the settlement funds in accordance with the [Proposed] Order filed herewith.

Dated: May 4, 2016                           COOPER & KIRKHAM, P.C.

                                             By: */s/  Josef D. Cooper*
                                                 Josef D. Cooper

                                             Josef D. Cooper (53015)
                                             Tracy R. Kirkham (69913)
                                             John D. Bogdanov (215830)
                                             COOPER & KIRKHAM, P.C.
                                             357 Tehama Street, Second Floor
                                             San Francisco, CA 94103
                                             Telephone:  (415) 788-3030
                                             Facsimile:   (415) 882-7040
                                             jdc@coopkirk.com

                                             Timothy D. Battin
                                             Christopher V. Le
                                             STRAUS & BOIES, LLP
                                             4041 University Drive
                                             Fifth Floor
                                             Fairfax, VA 22030
                                             Telephone: (703) 764-8700
                                             Facsimile: (703) 764-8704
                                             tbattin@straus-boies.com

                                             Daniel J. Mogin (95624)
                                             THE MOGIN LAW FIRM, P.C.
                                             707 Broadway
                                             Suite 1000
                                             San Diego, California 92101
                                             Telephone: (619) 687-6611
                                             Facsimile:  (619) 687-6610
                                             dan@moginlaw.com

                                             Daniel E. Gustafson
                                             Daniel C. Hedlund
                                             GUSTAFSON GLUEK PLLC
                                             Canadian Pacific Plaza
                                             120 South Sixth Street, Suite 2600
                                             Minneapolis, MN 55402
                                             Telephone: (612) 333-8844
                                             Facsimile: (612) 339-6622

**Exhibit 3, Pg. 20**

1

dgustafson@gustafsongluek.com

2

*Co-Lead Class Counsel for Indirect-Purchaser*
*Plaintiffs*

3

4

Francis O. Scarpulla (41059)
LAW OFFICES OF FRANCIS O. SCARPULLA

5

456 Montgomery Street, 17th Floor
San Francisco, CA 94104

6

Telephone:  (415) 788-7210
Facsimile:  (415) 788-0706

7

fos@scarpullalaw.com

8

*Liaison Counsel, Indirect Purchaser Plaintiffs*

9

Terry Gross (103878)
GROSS BELSKY ALONSO LLP

10

One Sansome Street, Suite 3670
San Francisco, California 94104

11

Telephone:     (415) 544-0200
Facsimile:     (415) 544-0201

12

terry@gba-law.com

13

*Chair, Indirect Purchaser Plaintiffs' Executive*
*Committee*

14

15

Dated: May 4, 2016

KAMALA D. HARRIS
Attorney General of California

16

17

By: */s/  Emilio E. Varanini*
          Emilio E. Varanini

18

Kathleen Foote
Emilio E. Varanini

19

Deputy Attorney General
Office of the Attorney General

20

455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-3664

21

22

*Attorneys for the State of California as Liaison*
*Counsel On Behalf of All Attorneys General*

23

24

25

26

27

28

**Exhibit 3, Pg. 21**

JOINT MOTION TO DISTRIBUTE SETTLEMENT FUNDS – CASE NO. M-02-1486-PJH

## **ATTESTATION**

     Pursuant to Civil L.R. 5-1(i)(3), I hereby attest that I have obtained concurrence in the service and filing of this document with electronic signatures from all counsel of the parties listed above.

Dated:   May 4, 2016

                                         */s/ Josef D. Cooper*
                                            Josef D. Cooper

**Exhibit 3, Pg. 22**

JOINT MOTION TO DISTRIBUTE SETTLEMENT FUNDS – CASE NO. M-02-1486-PJH