# EXHIBIT 5

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Joshua P. Davis (State Bar No. 193254)
Nicomedes S. Herrera (State Bar No. 275332)
Demetrius X. Lambrinos (State Bar No. 246027)
James G. Dallal (State Bar No. 277826)
V Chai Oliver Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:     jsaveri@saverilawfirm.com
           swilliams@saverilawfirm.com
           nherrera@saverilawfirm.com
           dlambrinos@saverilawfirm.com
           jdallal@saverilawfirm.com
           vprentice@saverilawfirm.com

*Interim Class Counsel for Direct Purchaser Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CAPACITORS ANTITRUST LITIGATION | Master File No. 3:17-md-02801-JD<br>Civil Action No. 3:14-cv-03264-JD |
| | **DIRECT PURCHASER PLAINTIFFS' MOTION FOR AN ORDER AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS FOR SECOND ROUND SETTLEMENTS WITH HITACHI CHEMICAL AND SOSHIN** |
| THIS DOCUMENT RELATES TO:<br><br>ALL DIRECT PURCHASER ACTIONS | Date:       December 13, 2018<br>Time:       10:00 am<br>Courtroom:  11, 19th Floor |

**Exhibit 5, Pg. 2**

# TABLE OF CONTENTS

Page(s)

NOTICE OF MOTION AND MOTION ....................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

INTRODUCTION ....................................................................................................1

ARGUMENT ............................................................................................................4

I.      THE COURT SHOULD APPROVE DISTRIBUTION OF SETTLEMENT FUNDS ............ 4

        A.      The Claims Administration and Audit Process Was Fair and Reasonable. ....................... 5

        B.      Availability and Proposed Distribution Schedule of Settlement Funds. ........................... 6

        C.      Late Claims Should Be Approved and Paid. ................................................................. 7

        D.      Class Counsel Should Pay the Direct Purchaser That Submitted Claims For Qualifying Purchases Even if an Indirect Purchaser Claims Assignment of Rights to Those Same Purchases. ................................................................................................................... 7

        E.      The Court Should Approve Payment of Outstanding Claims Administration Expenses.. 8

II.     THE COURT SHOULD APPROVE THE CREATION OF A HOLD-BACK FUND............. 8

III.    CONCLUSION ................................................................................................ 8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Orthopedic Bone Screw Prods. Liab. Litig.*
    246 F.3d 315 (3d Cir. 2001) ............................................................................................ 7

**Other Authorities**

Fed. R. Civ. P. 23 ...................................................................................................................... 3

Fed. R. Civ. P. 53 ...................................................................................................................... 3

Manual for Complex Litigation (Fourth) § 21.66 (2004) ........................................................ 4

**Exhibit 5, Pg. 4**

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 13, 2018 at 10:00 a.m., before the Honorable James Donato, plaintiffs Chip-Tech, Ltd., Dependable Component Supply Corp., eIQ Energy, Inc., and Walker Component Group, Inc., on behalf of themselves and the Direct Purchaser Plaintiff Settlement Class ("DPPs"), will move the Court for an order authorizing the distribution of settlement funds.

DPPs' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of Nicomedes Sy Herrera dated November 8, 2018 (the "Herrera Decl."), the Court's files and records in this matter, and such other matters as the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

DPPs have entered Settlements with defendants Hitachi Chemical Co., Ltd., Hitachi AIC, Inc., and Hitachi Chemical Co. America, Ltd. (collectively, "Hitachi Chemical"); and Soshin Electric Co., Ltd. and Soshin Electronics of America Inc. (collectively, "Soshin") (all Hitachi Chemical and Soshin entities together, the "Settling Defendants"). (Dkt. 172) The Settlements total $66,900,000 (the "Settlement Funds") and include other valuable non-cash consideration.[1] (Dkt. No. 172, at 6)

After conducting a fairness hearing, the Court entered an order on June 28, 2018 granting final approval of the Settlements with respect to the Settling Defendants (the "Final Approval Order"). (Dkt. 249) The Court also granted DPPs' motion for attorneys' fees and costs. (Dkt. 332) There were no appeals, and the Settlements are now final. (Herrera Decl., at ¶ 7)

Pursuant to the Court's order, the notice plan has been completed. Members of the Settlement Class, as defined in the Final Approval Order (Dkt. 249, at ¶ 4), have submitted claims to share in the Settlement Funds. The claims administrator has reviewed, analyzed, audited, and processed the submitted claim forms. (Herrera Decl., at ¶ 4)

---

[1] Pursuant to the Settlements, Hitachi Chemical agreed to pay $63,000,000 and Soshin agreed to pay $3,900,000.

**Exhibit 5, Pg. 5**

DPPs therefore request that the Court approve distribution of the Settlement Funds with all accrued interest (subject to the creation of the "Hold Back Fund" described below), less attorneys' fees and reimbursement of costs and expenses approved by the Court. DPPs propose following procedures similar to what the Court approved in its June 27, 2018 Order Authorizing Distribution of Settlement Funds for the first round of DPP settlements (the "First Round Settlements") (Dkt. 248). In particular, DPPs recommend that the Court: (1) order the immediate payment of Settlement Funds to Settlement Class members whose claims have met the audit standards described below; and (2) authorize the creation of a "Hold Back Fund" for those that wish to dispute the audit results.

As instructed by the Court, Settlement Class members were provided pre-populated claim forms using the sales data produced by Defendants listing direct purchases of aluminum, tantalum, or film capacitors from Defendants during the relevant settlement class period (*i.e.,* January 1, 2002 through July 22, 2015). To participate in the Settlements, Settlement Class members were required to return signed claim forms on or before April 23, 2018.[2] Settlement Class members were provided the opportunity to supplement their claims with additional purchases of capacitors and supporting documentation.

Under the supervision of Interim Lead Class Counsel ("Class Counsel") for the Settlement Class, the claims administrator, Rust Consulting, Inc. ("Rust" or the "Claims Administrator"), has conducted a thorough review and audit of all claims submitted. Rust reviewed all submissions and notified claimants in writing of any denials or adjustment to the submitted claims. Rust also provided every claimant with an opportunity to dispute any denials or adjustments. (Herrera Decl., at ¶ 10)

In conducting the audit, Class Counsel and Rust applied fair and objective criteria in evaluating all Settlement Class member submissions that claimed purchases in excess of the pre-populated amounts. The criteria applied by Class Counsel in performing its audit (described below and in the accompanying Herrera Declaration) were uniformly applied to ensure Settlement Funds would be distributed to verified Settlement Class members.

---

[2] As noted below, Class Counsel recommends the payment of 39 late claims seeking distributions totaling less than 3% of the timely claims submitted.

**Exhibit 5, Pg. 6**

There are a few Settlement Class members who submitted supplemental claims. With respect to some of these additional claims, Class Counsel denied the submission or requested additional information relating to the additional claimed purchases.[3] Some of these Settlement Class members have indicated they intend to challenge those audit decisions (the "Requesting Members"). Rather than denying supplemental claims outright, Class Counsel believes it is fair and reasonable to provide them with an opportunity to present proof of qualifying purchases to a special master to be recommended by Class Counsel and Requesting Members and appointed by the Court pursuant to Fed. R. Civ. P. 53.[4]

At the same time, it is in the interests of the Settlement Class members that they receive prompt distribution of Settlement Funds due to them. It would be unfair and inconsistent with Fed. R. Civ. P. 23 and the interests of justice to delay distribution of Settlement Funds to Settlement Class members that have submitted valid claims. *See also* Herrera Decl., ¶¶ 11(a)-(e). Therefore, Class Counsel requests that the Court authorize distribution of Settlement Funds to all Settlement Class members that have submitted valid and approved claims.

With respect to disputed claims, Class Counsel proposes to hold back the amounts that would be paid to Requesting Members if their claims pass audit (the "Hold-Back Funds"). Should those claims, or a portion of them, be subsequently approved, payments will be released at that time. The remainder

---

[3] To date, the Claims Administrator received 681 claim forms. Of these, 387 have been deemed valid and have passed audit as required. The Claims Administrator rejected 83 duplicates; 110 which claimed $0 in purchases and failed to respond to any inquiries for further information; and 46 that had no purchase history and were submitted by third-parties that failed to provide authorization for submitting them. (Herrera Decl., at ¶ 12) A total of 50 entities submitted claims requesting distributions greater than $1,000 above the allocable amount as calculated from the purchases listed in the pre-populated claim forms (and which had not already passed audit for the first round DPP settlements). (*Id*.) Two of these entities have passed audit. The Claims Administrator has determined, and Class Counsel agrees, that the remaining 48 of these entities have not satisfied the audit standards, and the claims should be reduced. (*Id*.) The remaining submissions have been denied for other reasons, such as withdrawn claims. (*Id*.)

Class Counsel is prepared to provide the list of Requesting Members and their claimed purchases to the Court upon request. To protect the confidentiality of Requesting Members, Class Counsel have not identified them in this public document.

[4] Appointment of a special master would expedite the proceedings, reduce costs, and avoid undue burden on the Court.

**Exhibit 5, Pg. 7**

of the Hold-Back Funds will be distributed *pro rata* to all Settlement Class members based on all valid commerce.

Finally, DPPs request that the Court authorize payment of the Claims Administrator's outstanding invoices of $158,415.23 for administration fees and $71,472.00 in expenses for publication notice ordered by the Court, for a total amount of $229,887.23. (Herrera Decl., ¶ 20) Class Counsel has reviewed the invoices and recommends them for payment. (*Id.*)

ARGUMENT

## I.   THE COURT SHOULD APPROVE DISTRIBUTION OF SETTLEMENT FUNDS

The Court has approved the allocation plan for distributing the Settlement Funds (the "Allocation Plan"). (Dkt. 249, at ¶ 12) The Allocation Plan provides that Settlement Funds should be distributed based on each claimant's *pro rata* share of Capacitors directly purchased from Defendants during the relevant time period. (Dkt. 172, at 19-20; Dkt. 1989 of 14-cv-03264, at 23-24) In so doing, the Claims Administrator will "calculate the dollar value of each Settlement Class member's claim in proportion to the total claims submitted." (*Id*, at 24.)

The Claims Administrator has complied with the Allocation Plan, and Class Counsel has secured from the Settlement Defendants all Settlement Funds. (Herrera Decl., at ¶ 6).

Under the supervision of Class Counsel, the Claims Administrator analyzed, processed, and completed an initial audit of the Claim Forms submitted by members of the Settlement Class to ensure that they were properly submitted in accordance with the Court's orders and the settlement notices approved by the Court. (Herrera Decl., ¶ 4) The Court has entered final judgments with respect to each of the Settling Defendants (Dkts. 330-331) and entered an order granting counsel's application for payment of attorneys' fees and costs (Dkt. 332). The time for appeal has expired, and the Settlements are now final. (Herrera Decl., ¶ 7) The Court should therefore approve the distribution of available Settlement Funds to the Settlement Class members that have submitted valid claim forms.

**Exhibit 5, Pg. 8**

**A.      The Claims Administration and Audit Process Was Fair and Reasonable.**

The audit process uniformly applied the following audit standards[5]:

a.    Rust checked whether Claim Forms were timely submitted and ensured that they were signed by an appropriate representative.

b.    If a submitted Claim Form accepted the amount of U.S. purchases that were pre-populated in the claim form based on Defendants' transactional data (or was based on submitted commerce that had already passed audit for the First Round Settlements), the reported amount was used in calculating the submitting Settlement Class member's distribution under the Allocation Plan.

c.    If a submitting Settlement Class member claimed purchases in excess of the amount reported in Defendants' transactional data (or the amount that passed audit in the First Round Settlements), and such increase would have resulted in an increased distribution from the Settlement Fund less than $1,000, the Claims Administrator required before accepting the claim a (i) summary report from the Settlement Class members' business records and (ii) certification that the claimed transactions related to direct purchases of aluminum, tantalum or film capacitors ("Capacitors") from Defendants that were shipped to or invoiced to an address in the United States from January 1, 2002 through July 22, 2015 (the "Settlement Class Period").

d.    If a submitting Settlement Class member claimed purchases in excess of the amount reported in Defendants' transactional data (or the amount that passed audit in the First Round Settlements), and such increase would have resulted in an increased distribution from the Settlement Fund greater than $1,000, then in addition to the report and certification required under paragraph (c) above, the

---

[5] Class Counsel established the audit standards based on the recommendations set forth in the Manual for Complex Litigation (Fourth) § 21.66 (2004). Class Counsel previously set forth the audit standards in DPPs' motion requesting distribution of settlement funds for the First Round Settlements. (Dkts. 149, 149-1) The audit standards described herein are materially similar to the standards applied in the First Round Settlements but have been updated to approve claims that previously passed audit.

**Exhibit 3, Pg. 9**

Claims Administrator and/or Class Counsel requested relevant back-up (such as invoices, purchaser orders, payment receipts, or screenshots from the company's accounting or purchasing software) for a random sampling of the reported transactions. For each of these claims, Class Counsel reviewed the randomly selected back-up to (i) verify the integrity of the submitting Class Member's business report and (ii) confirm that the reported transactions related only to direct purchases of Capacitors from Defendants that were shipped to or invoiced to an address in the United States during the Settlement Class Period. In addition, Class Counsel reviewed certain back-up submitted by Settlement Class Members to double-check the work performed by the Claims Administrator to ensure accuracy and compliance.

e. If a submitting Settlement Class member provides satisfactory proof or a sworn declaration that: (i) documentary evidence or business records substantiating qualifying purchases of Capacitors have been destroyed for prior years (the "Gap Period"); (ii) there is a reasonable explanation for such destruction; and (iii) the Settlement Class member made qualifying purchases of Capacitors during the Gap Period reasonably consistent with the volume of purchases made during the closes years where documentary evidence of qualifying purchases are available, then a reasonable extrapolation for purchases during the Gap Period will be permitted based on the average qualifying purchases for the closest years with documented qualifying purchases.

(Herrera Decl., ¶ 11)

**B.    Availability and Proposed Distribution Schedule of Settlement Funds.**

After deducting attorneys' fees and costs awarded by the Court (Dkt. 332), there will be $43,485,000 (plus accrued interest totaling $164,280.19 as of October 31, 2018 and less bank charges) available for distribution to the Settlement Class in the escrow accounts. (Herrera Decl., at ¶ 16)

Class Counsel recommends that the available Settlement Funds should be distributed now to all Settlement Class members whose claims have satisfied the audit standards.

**Exhibit 5, Pg. 10**

**C.     Late Claims Should Be Approved and Paid.**

Rust recommends, and Class Counsel agree, that the Court should approve payment of certain late-submitted claims that are otherwise valid and eligible for payment. (Herrera Decl., at ¶ 17.)

A total of 39 claimants submitted claims that were otherwise eligible for payment after the April 23, 2018 filing deadline set by the Court in its March 2, 2018 Preliminary Approval Order (and allowing for one week for mail delivery) (Dkt. 98, at ¶ 16). (Herrera Decl. at ¶ 18) The amount of valid commerce represented by the late claims is less than 3% of the commerce represented by timely claims. Because the claims represent valid purchases, it is in the interests of justice to pay them. *See, e.g., In re Orthopedic Bone Screw Prods. Liab. Litig.* 246 F.3d 315, 316-317 (3d Cir. 2001). Accordingly, Class Counsel recommends that the Court approve distribution of the settlement fund to all authorized claimants that have satisfied the audit standards, including those who submitted claims after the April 23, 2018 deadline.

**D.     Class Counsel Should Pay the Direct Purchaser That Submitted Claims For Qualifying Purchases Even if an Indirect Purchaser Claims Assignment of Rights to Those Same Purchases.**

The Claims Administrator reports that it has received one claim from a company that indirectly purchased capacitors (the "Indirect Purchaser Claimant") from other Settlement Class members. (Herrera Decl., at ¶ 19) Those other Settlement Class members either submitted valid Claim Forms or requested exclusion from the Settlements. (*Id.*) The Indirect Purchaser Claimant states that it obtained direct purchaser rights by assignment, but it did not identify the specific transactions which it claims were assigned. (*Id.*)

Because those other Settlement Class members have *already* submitted valid claims for what appears to be the same transactions (or are now litigating the opt-out claims directly), the Claims Administrator recommends denying the Indirect Purchaser Claimant's submission. (*Id.*) It would be difficult and impractical to ensure that the same transaction is not compensated twice (or is otherwise subject to an opt-out direct action) without additional proof. (*Id.*)

Class Counsel agrees with the Claims Administrator's recommendation. If the Indirect Purchaser Claimant claims to have direct purchaser assignments, then it should request payment from the direct purchasers that supposedly assigned those rights. The claims administration process should

**Exhibit 5, Pg. 11**

not be misused by indirect purchasers to sort out which transactions are subject to side-deals between or among Settlement Class members and third-parties, particularly since neither of those parties have specifically identified which transactions are subject to any purported assignments.

**E.    The Court Should Approve Payment of Outstanding Claims Administration Expenses.**

The Claims Administrator has provided Class Counsel with invoices in the amount of $158,415.23 for administration fees and $71,472.00 in expenses for publication notice ordered by the Court. The fees include fees the Claims Administrator has incurred to date in effectuating the Court-approved notice plan; processing, analyzing, and auditing submitted claim forms; calculating distributions to Settlement Class members in accordance with the Allocation Plan; and taking the necessary steps to disburse settlement proceeds to each member of the Settlement Class that has submitted a valid claim form. It also includes a negotiated set fee for future work in administering the settlement fund to completion, including sending payment to class members. (Herrera Decl., at ¶ 20 & Ex. A) The amount requested by the Claims Administrator is less than the $250,000 that the claims administrator estimated, and which Class Counsel disclosed in DPPs' motion for preliminary approval of the settlements. (Dkt. 1989 of 3:14-cv-03264, at 24)

**II.    THE COURT SHOULD APPROVE THE CREATION OF A HOLD-BACK FUND**

Class Counsel recommends that the Court authorize the creation of a Hold-Back Fund similar to that which the Court approved for the First Round Settlements. (Dkt. 248, ¶ 3). The Hold-Back Fund will be used to retain settlement proceeds that would be paid to Requesting Members should their claims be approved. The creation of a Hold-Back Fund here serves the interests of justice, because it will allow for the immediate distribution of Settlement Funds to Settlement Class members that have submitted valid claims while allowing Requesting Members to submit their dispute to a special master. There will be no undue prejudice to any Settlement Class members, because the remainder of the Hold-Back Funds not released to Requesting Members will be distributed *pro rata* to all Settlement Class members based on valid purchases.

**III.    CONCLUSION**

For the foregoing reasons, DPPs respectfully request that the Court grant this motion.

**Exhibit 5, Pg. 12**

Dated: November 8, 2018

Respectfully Submitted,

JOSEPH SAVERI LAW FIRM, INC.

By:     /s/ Joseph R. Saveri
            Joseph R. Saveri

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489
Joshua P. Davis (State Bar No. 193254)
Nicomedes S. Herrera (State Bar No. 275332)
Demetrius X. Lambrinos (State Bar No. 246027)
James G. Dallal (State Bar No. 277826)
V Chai Oliver Prentice (State Bar No. 309807)
JOSEPH SAVERI LAW FIRM, INC.
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940

*Interim Class Counsel for Direct Purchaser Plaintiffs*

**Exhibit 5, Pg. 13**