# EXHIBIT 17

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MYLAN PHARMACEUTICALS, INC., et al. | : |
| Plaintiffs, | : Civ. No. 12-3824 |
| v. | : CONSOLIDATED |
| | : Relates to: Indirect Purchaser Action |
| WARNER CHILCOTT PUBLIC LIMITED COMPANY, et al., | : |
| Defendants. | : |

**DECLARATION OF JENNIFER M. KEOUGH
REGARDING DISTRIBUTION OF NET SETTLEMENT FUND**

I, JENNIFER M. KEOUGH, pursuant to 28 U.S.C. §1746, declare as follows:

1. I am Chief Operating Officer of the Garden City Group, LLC[1] ("GCG"). The following statements are based on my personal knowledge and information provided by other GCG employees working under my supervision and, if called on to do so, I could and would testify competently thereto.

2. GCG was retained by counsel for the Indirect Purchaser Plaintiffs in the above-captioned action (the "Action") and appointed to serve as the Claims Administrator pursuant to Section IV of the Court's September 4, 2014, Order (the "Preliminary Approval Order").[2] As Claims Administrator, GCG has implemented the terms of the Settlement, by, among other things: (i) mailing the Notice of Proposed Class Action Settlement (the "Notice") and the Proof

---

[1] Please note that The Garden City Group, Inc. is now Garden City Group, LLC.
[2] Unless otherwise defined herein, all capitalized terms shall have the same meaning as set forth in the Settlement Agreement, Plan of Allocation, and/or the Preliminary Approval Order.

**Exhibit 17, Pg. 2**

1

of Claim and Release form (the "Proof of Claim" and, together with the Notice, the "Notice Packet"); (ii) creating and maintaining a toll-free hotline and case-specific website, and updating each during the course of the administration; (iii) causing the Summary Notice to be published in print media and a press release; (iv) conducting an internet advertising campaign; (v) supplementing the media program with direct mail efforts to dermatologists and third party payors; (vi) receiving any requests for exclusion; and (vii) receiving and processing Proofs of Claim.

3.  On July 11, 2014, as set forth in the Settlement Agreement, Plaintiffs reached a complete settlement of this Action for $8 million. GCG has completed the processing of the Proofs of Claim in accordance with the terms of the Settlement Agreements and the Court-approved Plan of Allocation and hereby submits its administrative determinations accepting and rejecting the Proofs of Claim in preparation for a distribution of the Net Settlement Fund to Authorized Consumer Claimants and Authorized Third-Party Payor ("TPP") Claimants. GCG also presents this Declaration in support of Plaintiffs' Motion for Distribution of Net Settlement Fund.

## DISSEMINATION OF THE NOTICE

4.  As more fully described in my Declaration Regarding Notice Mailing and Publication, dated November 6, 2014, and the Declaration of Lael Dowd Concerning Implementation of Notice Program, dated December 2, 2014, pursuant to the Preliminarily Approval Order, GCG caused the Notice Packet to be mailed to potential TTP Claimants. The Notice Packet was also available on the settlement website (www.doryxindirectsettlement.com) and via the toll-free hotline established for this Settlement.

**PROCEDURES FOLLOWED IN PROCESSING PROOFS OF CLAIM**

5. Under the terms of the Preliminary Approval Order and as set forth in the Notice, each Class Member who wished to participate in the Settlement was required to complete and submit to GCG a properly executed Proof of Claim postmarked no later than March 30, 2015, together with acceptable supporting documentation, if necessary. To date, GCG has received and processed 570 Proofs of Claim.

6. In preparation for receiving and processing Proofs of Claim, GCG: (i) conferred with Class Counsel to define the project guidelines for processing Proofs of Claim; (ii) created a unique database to store Proofs of Claim detail and images of Proofs of Claim and supporting documentation; (iii) trained staff in the specifics of the project so that Proofs of Claim would be properly processed; (iv) formulated a system so that telephone inquiries would be properly responded to; and (v) developed various computer programs and screens for entry of Class Members' identifying information, as well as their Calculated Claim Total.

7. Class Members seeking to share in the Net Settlement Fund were directed in the Notice to submit their Proofs of Claim to a post office box address specifically designated for the Settlement. GCG sorted incoming mail into Proofs of Claim and administrative mail.[3] Notice Packets that were returned by the Post Office as undeliverable were reviewed for updated addresses and, where available, new addresses were entered into the database and new Notice Packets were mailed to the updated addresses. Administrative mail was reviewed and, where necessary, appropriate responses were provided to the senders.

---

[3] Administrative mail includes all mail other than Proofs of Claim, supporting documentation, and responses to notices of claim rejection (i.e. administrative mail includes requests for Proofs of Claim, requests for change of address, and questions regarding the administration process or status of the administration).

3

**Exhibit 17, Pg. 4**

## PROCESSING PROOFS OF CLAIM

8. Once received, Proofs of Claim were opened and prepared for scanning. This process included unfolding documents, removing staples, copying non-conforming sized documents, sorting documents, preparing electronic data, and, where claimant identification information was not provided on the Proof of Claim, copying and sorting the envelope with the return address. This manual task of preparing the Proofs of Claim is very laborious and time-intensive. Once prepared, Proofs of Claim were scanned into a database created for this Settlement; documentation that was submitted, printed and/or electronic, was stored and prepared for review. Subsequently, each Proof of Claim was assigned a unique Proof of Claim number if it did not already have a pre-assigned Proof of Claim number. Once scanned, the Class Member or agent information from each Proof of Claim, including the name, address, telephone number and the Taxpayer I.D., Social Security Number or FEIN of the claimant, and any unreimbursed purchase amount reported by the Class Member or agent on the Proof of Claim ("Calculated Claim Total"), was entered into a database developed by GCG to process Proofs of Claim submitted for the Settlement.

9. In order to accurately process Proofs of Claim, GCG utilized dozens of internal codes (also known as "message codes") to identify and classify types of claims and any deficiency or ineligibility conditions that existed within those claims. The appropriate message codes were assigned to the claims as they were processed. For example, where a claimant submitted, but did not sign the Proof of Claim, that claim would receive a Proof of Claim-level message code that denoted ineligibility. Similar "Proof of Claim-level" ineligible message codes were used to denote other ineligible conditions, such as no documentation provided. These message codes would indicate to GCG that the claimant is not eligible to receive any payment

from the Net Settlement Fund with respect to that Proof of Claim unless the deficiency was cured. Examples of "Proof of Claim-level" message codes are as follows:

> 003     Claim was submitted without signature
> T37     Documentation provided to support TPP claim was inadequate
> TCT     No Calculated Claim Total provided for TPP claim

## THE DEFICIENCY PROCESS

10. A total of 266, or approximately 47%, of the Proofs of Claim submitted were not signed, did not include the required supporting documentation, included in their dataset drug codes for drugs other than branded Doryx, or submitted claims that were otherwise deficient. GCG provided these claimants sufficient opportunity to cure these deficiencies in their Proofs of Claim. The deficiency process involved letters, emails and telephone calls to encourage claimants to rectify their otherwise deficient submissions in order to participate in the Settlement.

11. As described above, GCG utilized internal Proof of Claim codes to identify and classify types of Proofs of Claim and conditions that existed within them. If a Proof of Claim was determined to be deficient (for example, if the claimant did not sign the Proof of Claim, or did not provide adequate documentation), GCG mailed or emailed a notification of deficiency. This notification described to the claimant the deficiency(ies) in his, her or its Proof of Claim and what, if anything, was necessary to cure the Proof of Claim. The letter required a submission of the appropriate information and/or documentary evidence to complete the Proof of Claim within 20 days from the date of the letter or the Proof of Claim could be recommended for rejection in its entirety. After accounting for duplicate submissions and deficiencies otherwise resolved by the claimant without outreach, GCG provided deficiency notifications in connection with 236 unique claims during the administration of the Settlement.

12. Attached hereto as Exhibit A is an exemplar of the letter sent to notify claimants of the deficiencies in, or the ineligibility of, their Proofs of Claim. Each letter explained that this deficiency process was the claimant's only opportunity to cure the deficiencies in his or her Proof of Claim.

13. Claimants' responses to these letters were scanned into GCG's database and associated with related Proofs of Claim. These responses were then carefully reviewed and evaluated by GCG's trained processors. If a claimant's response corrected the deficiency(ies), GCG updated the database to reflect the changes in status of the Proof of Claim.

14. As a result of our outreach, GCG received 168 responses, including many new or revised datasets. Over the life of the case, GCG received and reviewed over 472 datasets, and many were resubmitted and re-reviewed during the deficiency process. The datasets were to be provided electronically, and were to include several pieces of data, with one row per reimbursed prescription showing, among other things, the NDC (drug) code, fill date, and net payment. Each dataset was reviewed to verify that the transactions concerned only branded Doryx, that the fill dates were within the Class Period, and that the dataset corroborated the Calculated Claim Total, as well as other reviews. By way of example, some datasets included over 100,000 entries. Further, the datasets were submitted via memory stick, CD, email, and secure websites, among other methods, and many were encrypted in varying formats, and some were long printed documents, all of which were processed, reviewed, and associated with the corresponding claim(s).

## LATE, BUT OTHERWISE ELIGIBLE, PROOFS OF CLAIM

15. Through November 3, 2015, GCG received 13 Proofs of Claim that were postmarked after the March 30, 2015, submission deadline established by the Court. GCG processed all late Proofs of Claim, and 11 have been found to be otherwise eligible (the "Late, but Otherwise Eligible, Claims"). The aggregate Calculated Claim Total for the Late, but Otherwise Eligible, Claims represent approximately a quarter of one percent (0.25%) of the aggregate Calculated Claim Total of all Authorized Claimants. GCG has not rejected any Proof of Claim solely based on its late submission, and GCG believes no delay has resulted from the provisional acceptance of these Late, but Otherwise Eligible, Claims.

16. However, there must be a final cut-off date after which no more Proofs of Claim will be processed so that there may be a proportional distribution of the Net Settlement Fund. The processing of any Proof of Claim received after preparation of this application would necessarily require a delay in the distribution. Accordingly, it is also respectfully requested that this Court order that no Proof of Claim received after November 3, 2015, be eligible for payment for any reason whatsoever.

## QUALITY ASSURANCE

17. An integral part of all of GCG's settlement administration projects is our Quality Assurance review. GCG's personnel worked throughout the entire administration process to ensure that Proofs of Claim were processed properly; that deficiency and ineligibility message codes were properly applied to claims; that deficiency letters were mailed to the appropriate claimants; and that GCG's computer programs were operating properly.

18. In connection with the Quality Assurance wrap-up of the Settlement administration, GCG: (i) confirmed that valid Proofs of Claim have no messages denoting

ineligibility; (ii) confirmed that Proofs of Claim that are ineligible have messages denoting ineligibility; (iii) confirmed that all Proofs of Claim requiring deficiency notifications were provided such notification; and (iv) performed a sample review of deficient and ineligible Proofs of Claim.

19. In support of the work described above, GCG's computer staff designed, implemented and tested, the following programs for this administration: (i) data entry screens that store Proof of Claim information and attach message codes and, where necessary, text to denote conditions existing within the Proof of Claim; (ii) programs to generate various reports throughout and at the conclusion of the administration, including lists of all eligible and ineligible Proofs of Claim; and (iii) programs that calculate each Authorized Claimant's award amount by determining the proration factor for the Classes, and applying it against the Calculated Claim Total.

## DISPOSITION OF PROOFS OF CLAIM

20. GCG has completed processing the 570 Proofs of Claim that were received in connection with the Settlement along with the corresponding data submitted in support thereof as well as the updates thereto received as a result of GCG's deficiency outreach process. GCG has determined that 483 are acceptable and that 87 should be rejected because they are ineligible or they have unresolved fatal deficiencies. The 87 wholly rejected Proofs of Claim are recommended for rejection by the Court for the following reasons:

**Summary of Rejected Proofs of Claim**

| Reason for Rejection | Number of Proofs of Claim |
|---|---|
| Deficient Proof of Claim Never Cured | 65 |
| Total Unreimbursed Expenditure Reported is Below $100[4] | 2 |
| Duplicate Proof of Claim | 6 |
| Claim Withdrawn | 14 |
| **TOTAL** | **87** |

21. A list of the Proofs of Claim submitted and their ultimate disposition is contained in the Administrator's Report attached hereto as Exhibit B. Exhibit B-1, entitled "Timely Eligible Claims," lists all timely filed, provisionally accepted Proofs of Claim, and states their Calculated Claim Totals. Exhibit B-2, entitled "Late, but Otherwise Eligible, Claims," lists all late filed, provisionally accepted Proofs of Claim, and states their Calculated Claim Totals. Exhibit B-3, entitled "Rejected or Ineligible Claims," lists all wholly rejected or ineligible Proofs of Claim, and states the reason for their rejection or ineligibility. For privacy reasons, Exhibit B provides only the claimant's claim number and Calculated Claim Total or reason for ineligibility (no names, addresses, or Taxpayer Identification Numbers are disclosed).

22. GCG has determined that 483 claims representing an aggregate Calculated Claim Total of $417,247,190.47 (including $416,226,879.57 from 472 Timely Claims, and $1,020,310.90 from 11 claims submitted after the filing deadline) should be accepted.

23. In accordance with the Court-approved Plan of Allocation, after the Administration Expenses and the Fee and Expense Award are deducted from the Settlement Fund, the Net Settlement Fund will be allocated *pro rata* to each Authorized Consumer Claimant and Authorized TPP Claimant by multiplying the Net Settlement Fund by the amount of the

---

[4] Pursuant to Section 2(c) of the Plan of Allocation, Claims will only be allowed if the total unreimbursed expenditure reported by the Claimant is $100 or more.

Authorized Consumer Claimant's or Authorized TPP Claimant's claim and then dividing by the aggregate amount of all eligible claims. Upon approval by the Court, GCG will prepare and mail checks to Authorized Claimants for their *pro rata* share of the Net Settlement Fund.

## FEES AND DISBURSEMENTS

24. GCG agreed to be the Claims Administrator in exchange for payment of its fees and out-of-pocket expenses. Class Counsel received regular reports of all of the work GCG performed with respect to the administration of the Settlement and authorized the claims administration work performed herein. Attached hereto as Exhibit C are copies of GCG's invoices for its work performed on behalf of the Class through October, 2015, as well as estimates for the work that will be performed and the costs that will be incurred in connection with the distribution. To date, GCG has received payment of its fees and out-of-pocket expenses in the amount of $380,428.92. Accordingly, there is an outstanding balance of $4,564.35 payable to GCG, which amount includes GCG's anticipated fees and expenses for the distribution.

## DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

25. Should the Court concur with GCG's determinations concerning the provisionally accepted and rejected claims, including the Late, but Otherwise Eligible, Claims, GCG recommends the following distribution plan:

a. GCG will calculate award amounts to all Authorized Claimants as if the entire Net Settlement Fund was to be distributed now by calculating their *pro rata* share of the fund in accordance with the Court-approved Plan of Allocation (the Claimant's "Distribution Amount"). Pursuant to Paragraph 2(c) of the Court-approved Plan of Allocation, Claims will

only be allowed if the total unreimbursed expenditure reported by the Claimant is $100 or more.

  b. If it please the Court, to reduce administrative costs and to avoid mailing checks on Claims where the costs thereof may exceed the value of the check, GCG recommends that it eliminate from the distribution list any Authorized Claimant whose Distribution Amount calculates to less than $10.00. Such Claimants will not receive any distribution from the Net Settlement Fund.

  c. After eliminating Claimants who would have received less than $10.00 from the distribution list, GCG will recalculate the distribution amounts for Authorized Claimants who would have received $10.00 or more pursuant to the calculations described in subparagraph b. above.

  d. In order to encourage Authorized Claimants to promptly cash their Distribution checks, and to avoid or reduce future expenses relating to unpaid Distribution checks, all Distribution checks will bear a notation, "CASH PROMPTLY; VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED 90 DAYS AFTER ISSUE DATE." [5]

---

[5] In an effort to have as many Authorized Claimants as possible cash their checks, GCG will perform extensive follow-up with those Authorized Claimants whose checks are initially uncashed, either because they are returned to us as undeliverable or because the Authorized Claimant simply did not cash the check after a period of time elapses. For Authorized Claimants whose checks are returned as undeliverable, GCG will endeavor to locate new addresses by running the undeliverable addresses through the USPS National Change of Address database and, where appropriate, via Internet search techniques and by calling the Authorized Claimants. Where a new address is located, GCG will update the database accordingly and re-issue a distribution check to the Authorized Claimant at the new address. For many Authorized Claimants whose distributions are not returned, but who simply do not cash their checks, GCG will use a mix of automated and personalized telephone calls to urge such Authorized Claimants to cash their distribution checks. In the event an Authorized Claimant loses or damages his, her or its check, or otherwise requires a new check, GCG will issue replacements. Distribution re-

e. Authorized Claimants who do not cash their initial Distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement. The funds allocated to all such stale-dated checks will be available in any re-distribution to other Authorized Claimants.

f. If any funds remain in the Net Settlement Fund after the initial Distribution because of uncashed checks or other reasons, then, after GCG has made reasonable and diligent efforts to have Authorized Claimants cash their initial Distribution checks, and if cost effective, not less than six months after the initial Distribution is conducted, GCG will conduct a second distribution of the Net Settlement Fund, pursuant to which all funds remaining in the Net Settlement Fund, after payment of any unpaid expenses or fees incurred or to be incurred in connection with administering the subsequent distributions from the Net Settlement Fund, and after the payment of any estimated escrow fees or taxes and the costs of preparing appropriate tax returns, shall be distributed to Authorized Claimants who cashed their initial Distribution checks and who would receive at least $10.00 in such further distribution.

g. If such a second distribution is not cost-effective, and if any funds remain in the Net Settlement Fund six (6) months after the initial or any subsequent distribution, then such

---

issues will be undertaken only upon written instructions from the Authorized Claimant, provided that the Authorized Claimant returns the first check, where appropriate. If a distribution is deemed lost, we will void the initial payment check prior to re-issuing a payment. In addition, and to maximize our efforts to have all distributions cashed, GCG has trained the staff at our Call Center to handle the various issues that likely will arise during the distribution of the Net Settlement Fund. Typically, the Call Center receives calls with respect to the calculation of Proofs of Claim, distribution amounts, and the timing of the distribution and any future distributions. We expect a high call volume during the weeks immediately following dissemination of the payments. Requests for reissued checks in connection with the re-distribution will be handled in the same manner.

**Exhibit 17, Pg. 13**

funds, after payment of any further Notice and Administration Costs and Taxes and Tax Expenses, will be distributed to a non-profit charitable organization selected by Lead Plaintiff in consultation with Defendants and approved by the Court, or as otherwise directed by the Court.

      h. In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, GCG agrees with Class Counsel's request that the Court bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of such involvement.

      i. No Proof of Claim received after November 3, 2015, may be accepted for payment, and no further adjustments to Proofs of Claim may be made for any reason after November 3, 2015.

      j. Unless otherwise ordered by the Court, one year after a final distribution, GCG may destroy the paper copies of the Proofs of Claim and all supporting documentation, and three years after the Distribution, GCG may destroy electronic copies of the same.

## CONCLUSION

26. GCG respectfully requests that the Court enter an Order approving our administrative determinations accepting and rejecting the Proofs of Claim submitted herein received on or before November 3, 2015, and approving the distribution plan proposed by Class Counsel. GCG further respectfully submits that the balance of its fees and expenses, as reflected on the invoices attached hereto as Exhibit C, should be approved for payment from the Settlement Fund.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 5th day of November, 2015, at Seattle, Washington.

Jennifer M. Keough