MICHAEL W. BIEN – 096891
JEFFREY L. BORNSTEIN – 099358
JENNY S. YELIN – 273601
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104
Email:        mbien@rbgg.com
              jbornstein@rbgg.com
              jyelin@rbgg.com

Attorneys for Non-Party
FINANCIAL RECOVERY SERVICES. INC.,
d/b/a FINANCIAL RECOVERY STRATEGIES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | Master File No. CV-07-5944-JST<br>MDL No. 1917<br><br>**CLASS ACTION**<br><br>**RESPONSE OF FINANCIAL RECOVERY STRATEGIES TO INDIRECT PURCHASER PLAINTIFFS' MOTION TO AMEND FINAL APPROVAL ORDER, FINAL JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)** |
| This Document Relates to:<br><br>INDIRECT PURCHASER ACTIONS FOR THE 22 STATES | Judge:   Hon. Jon S. Tigar<br>Date:    October 23, 2019<br>Time:    2:00 p.m.<br>Crtrm.:  6, 2nd Floor (Oakland) |

Case No. CV-07-5944-JST

[3444427.7]

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 5

I.     IPP COUNSEL'S FAILURE TO ADVOCATE FOR ACCEPTANCE OF LATE CLAIMS CONSTITUTES A BREACH OF THEIR FIDUCIARY DUTY TO LATE CLAIMANTS. ..................................................................... 5

II.    THERE IS NO BASIS FOR AN EXCUSABLE NEGLECT ANALYSIS FOR ALL CLAIMS FILED AND PROCESSED TO DATE. ............................... 10

     A.    In Similar Cases, Courts, Without Considering Excusable Neglect, Have Accepted Late Claims Filed While Timely Claims Were Still Being Processed. ........................................................................................ 10

     B.    The Cases Cited by Spectrum Do Not Support an Excusable Neglect Analysis Under the Circumstances of this Case. ....................................... 13

     C.    Even if the Court Were Inclined to Consider Excusable Neglect Under the Circumstances of this Case, the Court has the Discretion to Accept All Otherwise Eligible Late Claims. ...................................................... 15

     D.    Spectrum Ignores that this Court Has the Discretion Under the Circumstances of this Case to Accept All Otherwise Eligible Late Claims. ........................................................................................................ 16

III.   THE REST OF SPECTRUM'S ARGUMENTS ARE UNSUPPORTED OR IRRELEVANT. ...................................................................................................... 19

     A.    There Are No Due Process Issues. ...................................................... 19

     B.    The Court's Prior Orders Do Not Prevent the Acceptance of Late Claims. ............................................................................................... 21

CONCLUSION ................................................................................................................. 23

RESPONSE OF FINANCIAL RECOVERY STRATEGIES TO INDIRECT PURCHASER PLAINTIFFS' MOTION
TO AMEND FINAL APPROVAL ORDER, FINAL JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)

[3444427.7]

1

**TABLE OF AUTHORITIES**

2

**Page**

3

<u>**CASES**</u>

4

5    *Allen v. Bedolla*,
        787 F.3d 1218 (9th Cir. 2015) ...................................................................... 7

6    *CME Grp. Inc. v. Chicago Bd. Options Exch., Inc.*,
        CIV.A. 2369-VCN, 2009 WL 1856693 (Del. Ch. June 25, 2009) ......................... 11
7

8    *Eggleston v. Chicago Journeymen. Plumbers' Local U.*,
        657 F.2d 890 (7th Cir. 1981) ...................................................................... 20

9    *In re "Agent Orange" Prod. Liab. Litig.*,
        611 F. Supp. 1396 (E.D.N.Y. 1985) .......................................................... 11, 17
10

11   *In re "Agent Orange" Prod. Liab. Litig.*,
        689 F. Supp. 1250 (E.D.N.Y. 1988) .......................................................... 11, 17

12   *In re Authentidate Hldg. Corp. Sec. Litig.*,
        Master File No. 05 Civ. 5323, 2013 WL 324153 (Jan. 25, 2013) ......................... 14
13

14   *In re Bank of Am. Corp. Sec., Deriv & ERISA Litig.*,
        Master File No. 09 MD 2058 (PKC) .......................................................... 21

15   *In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA Litig.*,
        297 F.R.D. 90 (S.D.N.Y. 2013) .......................................................... 12, 18
16

17   *In re Cathode Ray Tube (CRT) Antitrust Litig.*,
        Case No. C-07-5944, 2016 WL 3648478 (July 7, 2016) ................................. 21

18   *In re Crazy Eddie Securities Litig.*,
        906 F. Supp. 840 (E.D.N.Y. 1995) .......................................................... 15
19

20   *In re Elec. Carbon Prods. Antitrust Litig.*,
        622 F. Supp.2d 144 (D.N.J. 2007) .................................................. 14, 17, 19

21   *In re Gypsum Antitrust Cases*,
        565 F.2d 1123 (9th Cir.1977) ...................................................................... 11
22

23   *In re Lithium Ion Batteries Antitrust Litig.*,
        MDL No. 2420 (N.D. Cal.) .......................................................... 4, 9, 12

24   *In re Nuvelo, Inc. Sec. Litig.*,
        2011 WL 13152868 (N.D. Cal. Mar. 24, 2011) ......................................... 12
25

26   *In re Nuvelo, Inc. Sec. Litig.*,
        Master File No. 07-CV-04056-CRB, 2012 WL 12920613 (N.D. Cal. July 16,
        2012) ...................................................................................................... 12
27

28   *In re Optical Disk Drive Prods. Antitrust Litig.*,
        Case No. 3:10-md-02143-RS (N.D. Cal.) ......................................... 1, 4, 9, 12

ii

Case No. CV-07-5944-JST

RESPONSE OF FINANCIAL RECOVERY STRATEGIES TO INDIRECT PURCHASER PLAINTIFFS' MOTION
TO AMEND FINAL APPROVAL ORDER, FINAL JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)

[3444427.7]

*In re Orthopedic Bone Screw Prods. Liab. Litig.,*
    246 F.3d 315 (3d Cir. 2001) ................................................................. 10, 11, 14, 18

*In re Tyco Int'l, Ltd. Sec. Litig.,*
    MDL Dkt. No. 02-1335-PB ............................................................................ 22

*In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prod. Liab. Litig.,*
    895 F.3d 597 (9th Cir. 2018) ............................................................................ 7

*In re: Dynamic Random Memory (DRAM) Antitrust Litig.,*
    MDL No. 1486 (C.D. Cal.) .................................................................... passim

*In re: TFT-LCD (Flat Panel) Antitrust Litig.,*
    MDL No. 1827 (N.D. Cal.) ................................................................... passim

*Intellectual Ventures I LLC v. Symantec Corp.,*
    838 F.3d 1307 (Fed. Cir. 2016) ....................................................................... 17

*Mendez v. Knowles,*
    556 F.3d 757 (9th Cir. 2009) ........................................................................... 16

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.,*
    20 Cal. 4th 1135 (1999) .................................................................................... 5

*Pincay v. Andrews,*
    389 F.3d 853 (9th Cir. 2004) ..................................................................... 15, 16

*Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,*
    507 U.S. 380 (1993) ........................................................................................ 15

*State Comp. Ins. Fund v. Drobot,*
    192 F. Supp. 3d 1080 (C.D. Cal. 2016) ............................................................ 5

*Sullivan v. DB Invs., Inc.,*
    667 F.3d 273 (3d Cir. 2011) .............................................................................. 7

*Weber v. GEICO,*
    Civil No. 07-1332, 2009 WL 2496811 (D.N.J. Aug. 11, 2009) ................... 2, 19, 22

*Zients v. LaMorte,*
    459 F.2d 628 (2d Cir. 1972) ............................................................................ 18

## RULES

Fed. R. Civ. P. 23 ............................................................................................... 10

iii

Case No. CV-07-5944-JST

RESPONSE OF FINANCIAL RECOVERY STRATEGIES TO INDIRECT PURCHASER PLAINTIFFS' MOTION
TO AMEND FINAL APPROVAL ORDER, FINAL JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)

[3444427.7]

**INTRODUCTION**

Financial Recovery Services, Inc. d/b/a Financial Recovery Strategies ("FRS") submits this response to Indirect Purchaser Plaintiffs' Motion Pursuant to Ninth Circuit Mandate to Reconsider and Amend Final Approval Order, Final Judgment and Fee Order, ECF No. 5587 (the "IPP Motion").  Specifically, the Court should accept all otherwise eligible proofs of claim ("Late Claims") that members of the Settlement Class ("Late Claimants") submitted after the December 7, 2015 deadline, but while claims submitted before that date ("Timely Claims") were being processed.[1]

FRS agrees with Spectrum that this issue is ripe for consideration now.  It is not the case, as Spectrum argues, however, that the Court either **must** conduct a claim-by-claim excusable neglect analysis for all 4,607 Late Claims, *see* Spectrum Ltr. at 11-14, or **must** reopen the claims filing period, *see id.* at 10-11.  There are no legal or equitable obstacles to accepting, without considering excusable neglect, all otherwise eligible Late Claims that were submitted while Timely Claims were still being processed.  Accordingly, the Court should so order.  If the Court determines that reopening the claims period would be preferable given the already extensive delay and the certainty of a claims process for the Mitsubishi settlement, not to mention a third one for any settlements that the ORS or NRS may reach, FRS has no objection to that approach.[2]

---

[1] This Response also addresses the arguments in the letter brief filed one day after the IPP Motion by Spectrum Settlement Recovery, LLC ("Spectrum"), ECF No. 5588.

[2] Indirect Purchaser Plaintiffs ("IPPs") have not addressed the practical considerations of claims administration, nor has Spectrum offered any insight.  If the Court grants the IPP Motion as to the 22 Indirect Purchaser Classes, only limited notice has been proposed.  *See* IPP Motion at 29:17-30:19.  If the Court then grants preliminary approval to the Mitsubishi settlement, which, as currently formulated, includes all 30 repealer states and Washington D.C., notice to the entire Settlement Class would then be required, as would a new claims period; the same is true for any settlements reached by the ORS, for 9 repealer states, or the NRS, for 20 non-repealer states.  FRS had proposed that all settlements should be combined so that only one notice and one additional claims period would be required, *see, e.g.*, FRS Letter Obj. Mitsubishi Elec. Settle. ECF No. 5252, at 8 (Feb. 26, 2018), which is exactly what, in similar circumstances in *In re Optical Disk Drive Prods. Antitrust Litig.*, Case No. 3:10-md-02143-RS (N.D. Cal.) ("*ODD*"), class counsel recommended, *see* IPPs' Mot. Prelim. App. Samsung & Toshiba Settles., ECF No. 2852 ("*ODD* Prelim. App. Mot."), at 1:6-9; 1:14-17 & n.2 (Aug. 23, 2018), and the court approved, *see* Order Grant. Prelim. App. Samsung & Toshiba Settles., ECF No. 2860 ("*ODD* Prelim. App. Order")

Case No. CV-07-5944-JST

RESPONSE OF FINANCIAL RECOVERY STRATEGIES TO INDIRECT PURCHASER PLAINTIFFS' MOTION TO AMEND FINAL APPROVAL ORDER, FINAL JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)

If the Court is not inclined to reopen the claims period, there simply is no precedent for an excusable neglect inquiry here.  Far from being the quick and efficient process that Spectrum suggests, *see* Spectrum Ltr. at 4, such an undertaking would require the massive expenditure of time by IPP Counsel, by the Settlement Administrator, by Late Claimants and any representatives they have retained, by parties like Spectrum that may seek to disqualify as many Late Claims as possible to protect their own economic interests, and by the Court and any arbiter it may select, to establish the parameters of such a review, conduct it and address all appeals from its results for each of the more than 4,600 Late Claims that have now been processed.  This likely would take more time and resources— in particular, those of the Court—than would reopening the claims filing period.

While Spectrum argues that "the general rule in class actions [is that] late filed claims should be allowed only upon an individualized showing of 'excusable neglect,'" Spectrum Ltr. at 11, it has not identified any case that has so held.[3]  Rather, courts

_____

(Sept. 18, 2018).  Should the Court reopen the claims period only for the modified settlements, that effort would not be as burdensome as Spectrum asserts.  *See* Spectrum Ltr. at 2-3, 11.  For example, all Late Claims received through October 1, 2018 have been processed, *see* Decl. Jos. Fisher Re: Amend. Settles., ECF No. 5587-2 ("Fisher Decl.") at ¶ 6 (Sept. 16, 2019), and the new claims period could run concurrently with the time, currently 45 days, that IPP Counsel have requested for consideration of the modified settlements, *see* IPP Motion at 30:3-6.  The relatively low costs of reinstating the proof of claim on the website and of providing notice to all members of the Settlement Class would be justified.  *See, e.g., Weber v. GEICO*, Civil No. 07-1332, 2009 WL 2496811, at *4 (D.N.J. Aug. 11, 2009) ("In light of the Court's 'responsibility for the protection of class members,' and the multimillion dollar value of the settlement herein, the Court finds that the comparatively minor expense of providing additional notice and the short-term adjournment of the Fairness Hearing are easily justified by the importance of affording non-responding class members the opportunity to file claims and participate in the settlement, or decline to do so.") (quotation omitted; cited by Spectrum, *see* Spectrum Ltr. at 11).

[3] Spectrum, has submitted late claims in many (if not all) of the other settlements in which it filed claims for its clients, including in *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.) ("*LCDI*") and *In re: Dynamic Random Memory (DRAM) Antitrust Litig.*, MDL No. 1486 (C.D. Cal.) ("*DRAM*"), both cases Spectrum relies upon in its letter brief.  However, Spectrum did not in *LCDI, DRAM* or, to FRS's knowledge, in any other settlement, ever advocate either for an excusable neglect analysis or for reopening the claims period to protect the due process rights of class members that did not file late claims.  On its website, for example, Spectrum boasted, with respect to *DRAM* and another settlement, about its advocacy for late claimants:

The deadline to file a claim has passed, though it may be possible to file a

2

throughout the United States that have overseen the administration of non-reversionary settlements of indirect purchaser class actions like this one, have, always at the request of class counsel, including at the request of the same law firms that are IPP Counsel here,[4] either extended the deadline or, in granting motions for distribution, accepted late claims on equitable grounds without any consideration of excusable neglect.

In its attempt to avoid that result here, Spectrum claims that it is seeking to vindicate the rights of small claimants that did not file claims after the original deadline. *See* Spectrum Ltr. at 10-11. Yet, Spectrum's brief fails to acknowledge that Late Claimants' substantive claims are identical to those of Settlement Class members that submitted Timely Claims ("Timely Claimants"), and therefore that Late Claimants have the same rights to recover as do Timely Claimants. Further, while Spectrum states that this claims administration has been "unusually taxing" and includes an "extraordinary number of Late Claims," Spectrum Ltr. at 8, assertions that are demonstrably inaccurate,[5] its letter

_____

late claim and have it accepted. We cannot, at this point, guarantee a claim will be accepted by the Claims Administrator, **but we will provide our best effort to get a claim approved and accepted**.

http://spectrumsettlement.com/active-cases/ (emphasis added); *see also* http://spectrumsettlement.com/what-we-do/, http://spectrumsettlement.com/our-advocacy/ (last visited Oct. 2, 2019). While it is true that, if the Court accepts Late Claims, FRS will receive fees as a result; it is equally true that Spectrum's fees will increase as a result of every Late Claim that is rejected. The difference is that FRS is attempting to include in the recovery as many class members as possible. As demonstrated by FRS's advocacy and by Spectrum's advocacy in other settlements, filing claims in class actions and having them accepted is the *raison d'être* of a class action claims consultant. Spectrum's choice in this case only to solicit "2,300 large companies," Spectrum Ltr. at 14 n.44, and not to file Late Claims, *see id.* at 9 n.30. does not justify taking a position that, though in Spectrum's financial interests, is diametrically opposed to the one that it has taken in every other case in which it submitted late claims and that, in its efforts to obtain business, it boasts about.

[4] "IPP Counsel" are Trump, Alioto, Trump & Prescott LLP ("TAT&P"); Zelle LLP ("Zelle"); and Straus & Boies, LLP ("S&B").

[5] For example, in *LCDI*, there were 6,018,427,186 panel equivalents included in the 249,633 claims filed; of the 233,473 claims that were accepted, which included 16,212,036 panel equivalents, 18,078, which included 5,956,723 panel equivalents, or 36.7% of the total accepted panel equivalents, were late. *See* Ex. A, Claim Summary, Decl. Robin M. Niemiec, …. Notice & Claims Admin. Supp. IPPs' Mot. Auth. Dist. Settle. Fund, ECF No. 9217-2, at 2 (Sept. 12, 2014). In *DRAM*, there were 469,487 claims filed; of that amount, 445,553, which included 217,387,799 Computer Equivalent Units, were accepted. *See* Decl. Amy L. Lake …, Notice & Claims Admin., ECF No. 2273-2, at ¶¶ 26-27 (May 4, 2016). Of those accepted claims, 19,508 were late. *Id.* at ¶ 9. In *In re Lithium*

[3444427.7]

1   brief ignores that Late Claims and Timely Claims received through October 1, 2018 have

2   now been processed, *see* Fisher Decl. at ¶ 6, that processing on all claims remains ongoing,

3   *see id.* at ¶ 5 n.3 (Timely Claims) & ¶ 6 n.4 (Late Claims), and that the goal of every class

4   action settlement is to compensate as many class members as possible.

5            There is no equitable or legal basis to reject these claims.  The deadline was set at a

6   time when the Court assumed that a timely resolution of this case would be forthcoming.

7   That such a resolution did not occur was through no fault of Late Claimants.  The deadline

8   became arbitrary solely as a result of the nearly four-year delay caused by IPP Counsel's

9   failure to include in the Settlement Class residents of all *Illinois Brick* repealer states,[6] not

10  due to any action or inaction by Late Claimants.  The Court should accept, without the

11  need for a costly and time-consuming excusable neglect analysis, all Late Claims

12  submitted while Timely Claims are still being processed.

13

14  _____

15  *Ion Batteries Antitrust Litig.*, MDL No. 2420 (N.D. Cal.) ("*LIB*"), as of July 9, 2019,
    1,027,423 claims, which included 53,210,874 devices, have been submitted.  *See* 5th Rpt.

16  Claims Status, ECF No. 2506 (July 12, 2019).  Of those, at least 194,443, which included
    43,222,504 devices, were submitted after the original September 30, 2017 deadline but

17  before the most recent extended deadline.  *See* Rpt. Claims Status & Req. Ext. Claims
    Deadline, ECF No. 2026, at 1:15-21 (Nov. 15, 2017).  As a result of those post-original

18  deadline claims being accepted, the combined per device value was reduced by $9.12, or
    84%, from $10.86 to $1.74.  And in *ODD*, 3,312 claims were submitted after the

19  October 30, 2017 deadline but accepted.  *See ODD* Prelim. App. Mot. Spectrum also
    asserts that "[a]ccording to the Settlement Administrator,"  FRS filed "thousands of late

20  duplicate claims."  Spectrum Ltr. at 8.  However, as of June 6, 2018, the last
    communication that FRS received from the Settlement Administrator, FRS submitted a

21  total of 3,285 claims, 1,500 of which were submitted during the extensive delay since the
    December 7, 2015 deadline; of those 1,500 Late Claims, 175, not "thousands," have not

22  been accepted, and not all of those claims were declined because they were duplicates.

23  [6] *See, e.g.*, Order Den. IPPs' Mot. Indic. Ruling …, ECF No. 5362, at 1-2 (Nov. 8, 2018)
    ("[H]aving now concluded that it erred in approving a settlement that provided no recovery

24  to class members in the [ORS], the Court has concerns about the adequacy of the counsel
    who negotiated that settlement or whether they may have faced a conflict of interest;

25  Order, Case 16-16368, Dkt. 238 at 10-11 (9th Cir. Feb. 13, 2019) ("the district court recog-
    nized that [the parties' original settlement] should have provided recovery to class mem-

26  bers in the [ORS], which necessarily affects the remaining issues on appeal … ."); CMC
    Tr. at 34:5-10 (Apr. 9, 2019) ("I approved a settlement that went up to the Ninth Circuit.

27  The Ninth Circuit raised some questions about the settlement.  And I shared at least some
    of their concerns.  And they sent the settlement back to me to fix it. So I think if they

28  thought that the settlement was complete in all respects, they would not have done that.").

[3444427.7]

1

**ARGUMENT**

2

**I.   IPP COUNSEL'S FAILURE TO ADVOCATE FOR ACCEPTANCE OF
LATE CLAIMS CONSTITUTES A BREACH OF THEIR FIDUCIARY
DUTY TO LATE CLAIMANTS.**

3

4       IPP Counsel have again shirked the fiduciary duty they owe to Late Claimants.  In

5   prior pleadings, they affirmatively argued against the acceptance of Late Claims.  *See, e.g.*,

6   IPPs' Mem. Rep. FRS's Obj. … Settle. Def. Mitsubishi Elec. Corp., ECF No. 5255 ("IPP

7   Mitsubishi Reply"), at 8:16-15:7 (Mar. 7, 2018).[7]  Now, even though all Late Claims

8   received through October 1, 2018 have already been processed, *see* Fisher Decl. at ¶ 6, and

9   even though no distribution could have been conducted during the almost four years that

10  have elapsed since the December 7, 2015 deadline, IPP Counsel, by leaving that deadline

11  intact, failed to advocate for the acceptance of Late Claims submitted while Timely Claims

12  were still being processed.  IPP Counsel, by choosing to benefit Timely Claimants at the

13  expense of Late Claimants, have violated their "duty to maintain undivided loyalty to their

14  clients to avoid undermining public confidence in the legal profession and the judicial

15  process."  *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th

16  1135, 1146 (1999), *quoted with approval in State Comp. Ins. Fund v. Drobot*, 192 F. Supp.

17  3d 1080, 1088 (C.D. Cal. 2016) ("The paramount concern must be to preserve public trust

18  in the scrupulous administration of justice and the integrity of the bar.").  IPP Counsel have

19  breached their duty of loyalty to thousands Late Claimants that are a part of the class that

20  this Court appointed them to represent.

21

22  ─────────────────────
[7] IPP Counsel's breaches of their fiduciary duty have included contriving a conflict –

23  recoveries to Late Claimants would reduce those of Timely Claimants, *see* IPP Reply at
14:3-11—even though, as IPP Counsel themselves have advocated in other cases, such a

24  reduction to Timely Claimants' recoveries is not prejudicial; ignoring the extensive delay
and that Late Claims were still being processed to argue, even though they have never

25  done so before, that an excusable neglect analysis, the sole purpose of which would be to
cause the rejection of Late Claims, is required, *see id.* at 13:1-27; arguing that this Court

26  had already rejected Late Claims, and, therefore, that IPP Counsel may not advocate for
their acceptance, *see id.* at 12:25-26; and even though they acknowledged that "[i]t is well

27  recognized that the Court has discretion to grant or deny late claims in class action
settlements," *id.* at 13:1-3, IPP Counsel usurped this Court's authority by, among other

28  things, publishing their November 15, 2017 advisory and removing the proof of claim
form from the website even though no distribution was imminent.

[3444427.7]

1    IPP Counsel's failure to represent Late Claimants, even though IPP Counsel

2  previously acknowledged in this action that they "have a fiduciary duty to protect the

3  interests of *all* class members, and cannot be seen to favor [one group of them] over class

4  members in other [groups]."  IPP's Obj. Spec. Master's R&R re: Cal. AG's Req. Ext. Claim

5  Sub. Deadline, ECF No. 4292, at 7:14-15 (Jan. 12, 2106), is in stark contrast to their

6  advocacy in *LCDI* and *DRAM*, 2 similar class action settlements in which these same firms

7  acknowledged their fiduciary duties to late claimants and advocated ***for*** the acceptance of

8  late claims.  In *LCDI* and *DRAM*, IPP Counsel argued (among other things) that:

9         (a)     because timely claimants and late claimants have been injured as a result of

10                the same alleged wrongful conduct, the former do not have a better right than

11                the latter to recover;

12        (b)     because no delay in the distribution has been caused by processing late

13                claims, timely claimants have no greater entitlement to recover more per unit

14                than the last claim processed before the distribution motion has been filed;

15        (c)     because the "whole point" of initiating and prosecuting indirect purchaser

16                class actions is to compensate as many injured claimants as possible, late

17                claims should be accepted; and

18        (d)     because considerations of overall fairness to the settlement class outweigh

19                any prejudice to timely claimants, late claims should be accepted.

20        In *LCDI*, in which Zelle was co-lead class counsel; TAT&P was counsel for 18

21  plaintiffs, including 2 class representatives; and S&B was counsel of record and

22  represented 2 named plaintiffs, these same firms now serving as IPP Counsel explicitly

23  argued that late claims should be accepted and explicitly acknowledged their obligation to

24  compensate as many victims as possible:

25             The distribution has not been delayed as a result of any late-filed
       claims.  Moreover, ***those claimants, like all other claimants, have been***
26     ***injured as a result of the same alleged wrongful conduct. … Additionally,***
       ***because all claimants are similarly situated, none of them has a better right***
27     ***to recover than any other claimant; in other words, because no distribution***
       ***delay has been occasioned by the processing of those claims, the first-filed***
28     ***claim is no more entitled to recover or to recover more per unit than the***

RESPONSE OF FINANCIAL RECOVERY STRATEGIES TO INDIRECT PURCHASER PLAINTIFFS' MOTION
TO AMEND FINAL APPROVAL ORDER, FINAL JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)

[3444427.7]

1    *last claim received and processed before the distribution motion is filed.*

2           ***The whole point of these actions was to compensate as many injured
     claimants as possible***.  Class Counsel have already recommended, and the
3    Court indicated its agreement, that claims submitted after the December 6,
     2012 claims deadline be included in the distribution. (See Apr. 3, 2013
4    Order, Dkt. No. 7697, at 6 n.4.). …

5    IPP's & Settling States' Jt. … Mot. to … Dist. Settle. Fund, *LCDI*, ECF No. 9217 ("*LCDI*

6    Dist. Mot."), at 7:25-8:1 (emphasis added).[8]  Here, IPP Counsel recognize that "given the

7    pending appeal of the Prior Settlements, distribution of funds now is not possible," IPP's

8    Reply to FRS' Obj. Prop. Dist. Plan, ECF No. 5255 ("IPP Reply"), at 14:26-27, and,

9    therefore, acknowledge that, until the appeals are resolved and claims administration is

10   completed, no distribution is possible let alone imminent.  Nevertheless, they are not

11   advocating for the acceptance of Late Claims.

12          In *DRAM*, in which S&B and Zelle were co-lead counsel, and, as a member of the

13   Plaintiffs' Steering Committee, TAT&P's work included the investigation, prosecution,

14   and settlement of claims, current IPP Counsel again explicitly acknowledged the goal of

15   increasing participation to argue in favor of accepting late claims:

16          ***In the interest of increasing the participation of class members in the
     settlement distribution***, Co-Lead Counsel and the Attorneys General
17   recommend that the Court authorize payments to all class members whose

18   ─────────────────────────────
     [8] Spectrum argues that *LCDI* is distinguishable because there was no challenge to the
19   acceptance of late claims in that case and because, "even with inclusion of the late filers,
     class members recovered more than their actual damages; the inclusion of late filers
20   merely reduced the excess that class members received over their actual damages."
     Spectrum Ltr. at 13 n.42.  Spectrum's assertion about the *LCDI* recovery is both irrelevant,
21   and, more importantly, not true:  The over $1 billion recovery in *LCDI* "represent[ed]
     approximately half of the potential single damages as estimated by the IPPs' experts."
22   *LCDI* Dist. Mot. at 18:3-5.

23          As for the lack of challenge, the Ninth Circuit held in *Volkswagen*, every court that
     oversees a class action settlement has a fiduciary duty to absent class members:
24
            Because of "the inherent tensions among class representation, defendant's
25          interests in minimizing the cost of the total settlement package, and class
            counsel's interest in fees," we impose upon district courts "a fiduciary duty
26          to look after the interests of … absent class members."

     *In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prod. Liab. Litig.*, 895 F.3d 597,
27   610 (9th Cir. 2018) (citations and quotation omitted); *accord Allen v. Bedolla*, 787 F.3d
     1218, 1223 (9th Cir. 2015); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 319 (3d Cir. 2011),
28   *cited in Allen*, 787 F.3d at 1223.  That fiduciary duty exists whether or not there is a
     challenge to the acceptance of late claims.

RESPONSE OF FINANCIAL RECOVERY STRATEGIES TO INDIRECT PURCHASER PLAINTIFFS' MOTION
TO AMEND FINAL APPROVAL ORDER, FINAL JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)

[3444427.7]

claims were filed by July 1, 2015, and were deemed eligible for payment after conclusion of the audit process by Rust.  Although the initial claims deadline was August 1, 2014, **the distribution has not been delayed by the additional claims filed between August 1, 2014 and July 1, 2015, and considerations of overall fairness to the Settlement Class outweigh any prejudice to those class members who filed in the "first wave" of claims** by August 1, 2014.  However, the Settling Plaintiffs recommend that all claims filed after July 1, 2015 should be denied as untimely. …

Jt. Mot. to Dist. Settle. Funds ("*DRAM* Dist. Mot."), *DRAM*, ECF No. 2273, at 11:4-17 (emphasis added).

In other currently pending indirect purchaser antitrust actions in which distributions have been delayed as a result of pending appeals, counsel fulfilled their fiduciary duties by advocating for the inclusion of all claims filed after the initial deadlines.  In *LIB*, for example, in which the distribution has been subjected to lengthy delays as a result of appeals, class counsel acknowledged their fiduciary duty "to maximize the number of claims" by seeking extensions several times until the appeals are resolved:

> The distribution of the settlement corpus will be impossible while the appeals remain pending—which will likely be a minimum of twelve months.  ***Consequently, no purpose is served by ending the claims period while the appeals are pending.***

*LIB*, 2d Rpt. on Claims Status & Req. Ext., ECF No. 2120, at 2:4-14 (Jan. 5, 2018) (emphasis added) (extending deadline, which was Sept. 30, 2017 to Jan. 19, 2018); *accord* 3d Rpt. on Claims Status & Req. Ext., ECF No. 2350, at 2:13-23 (July 6, 2018) (further extending deadline to Jan. 18, 2019); 4th Rpt. on Claims Status & Req. Ext., ECF No. 2452, at 2:12-24 (Jan. 11, 2019) (further extending deadline to July 12, 2019).[9]  In *ODD*, in which the distribution for 7 settlements totaling $180 million has been delayed as

---

[9] Spectrum argues that it was FRS's responsibility to object to the deadline and to seek an extension.  *See* Spectrum Ltr. at 8, 10 n.37.  FRS did not challenge the deadline during the final approval phase because the deadline was not objectionable.  Nor was it FRS's responsibility to seek an extension or to consider any class members other than its clients.  That responsibility falls squarely on the shoulders of IPP Counsel, which is why FRS, when it learned that IPP Counsel—without seeking approval from this Court—had directed the Settlement Administrator not to process claims submitted after the deadline, wrote to IPP Counsel on February 8, 2017 to request that they submit a motion pursuant to Federal Rule of Civil Procedure 6(b) either to obtain an extension of the deadline or to obtain approval for the acceptance of Late Claims.

[3444427.7]

a result of pending appeals, and as with the $33 million Mitsubishi settlement in this case, another settlement worth $25 million was obtained after the October 30, 2017 claims deadline for those 7 prior settlements, *see ODD* Prelim. App. Mot. at 1:6-9; 1:14-17 & n.2, lead counsel asked the court to combine all 8 settlements into one distribution:  "Although class members will be able to make claims on the settlement, ***IPPs propose to combine the $25 million from the Toshiba/Samsung settlement with the $180 million already recovered on behalf of the class and distribute at the same time***.  *Id.* at 2:9-15 (emphasis added).[10]  The Court in that case granted preliminary approval to the new settlement, and in doing so, approved the acceptance of claims filed late in the prior settlements.  *See ODD* Prelim App. Order.

As these four settlement administrations demonstrate, class counsel owe a fiduciary duty to late claimants, and must fairly compensate as many class members as possible. Whether they (a) recommend that a court accept otherwise eligible late claims submitted while the appeals were pending (*LCDI* and *DRAM*), (b) seek an extension of the deadline until the appeals are resolved (*LIB*), or (c) reopen a prior claims filing period to combine a new settlement reached while appeals were pending (*ODD*), class counsel in those similar cases fulfilled (or are fulfilling) that duty.  In contrast, because no distribution could have taken place during the extensive pendency of the appeals in this case, IPP Counsel's failure to advocate for the acceptance of Late Claims received and processed while Timely Claims were still being processed is inexplicable, as is IPP Counsel's failure to oppose Spectrum's proposed excusable neglect analysis.  IPP Counsel are charged with faithfully representing the interests of ***all*** class members; by failing to advocate for the acceptance of Late Claims,

---

[10] *See id.* at 5:3-4 ("For ease of administration, the claims period for the prior seven settlements (which closed on October 30, 2017) will be re-opened, so that if a new claim is submitted by a class member they will recover from all eight settlements ($205 million)); *id.* at 5:6-8 ("All late claims will be honored; this includes a total of 3,312 late claims (3,055 individuals, 210 businesses, and 47 claims submitted through third party filers), submitted after the claims period for the prior settlements closed on October 30, 2017. IPPs will apply the same auditing and fraud review to these late claims as will be applied to timely claims.").  Although FRS proposed this same solution for the Mitsubishi settlement, IPP Counsel and Spectrum opposed it.  *See* IPP Reply at 9:21-10:14; Spectrum Mitsubishi Ltr., ECF No. 5256, at 5 (Mar. 9, 2018).

1  they are shirking that mandate.

2  **II.    THERE IS NO BASIS FOR AN EXCUSABLE NEGLECT ANALYSIS FOR
        ALL CLAIMS FILED AND PROCESSED TO DATE.**

3

4        Late claims are a normal part of the class action settlement process.  Throughout the

5  country, district courts overseeing the administration of indirect purchaser and similar class

6  actions resolved via a non-reversionary common fund nearly universally approve the

7  acceptance of otherwise eligible late claims.  Importantly, class counsel in such cases,

8  including IPP Counsel, nearly universally request their acceptance.  Because both the court

9  and class counsel have a fiduciary duty to the class as a whole, accepting claims that, but

10 for the date on which they were filed, are identical to all other claims, promotes equity and

11 the fair compensation of as many injured class members as possible.

12      **A.    In Similar Cases, Courts, Without Considering Excusable Neglect, Have
              Accepted Late Claims Filed While Timely Claims Were Still Being
              Processed.**

13

14       In *Orthopedic Bone Screw*, which involved a mandatory non-opt-out class under

15 Fed. R. Civ. P. 23(b)(1), and in which the district court had extended the registration

16 deadline once and the claims deadline twice, only the late registration received after the

17 extended deadline was subjected to an excusable neglect analysis.[11]  The Third Circuit held

18 that timely claimants were no more deserving of a recovery than late claimants, and that

19 the district court's failure to include late claims was an abuse of discretion that would

20 provide timely claimants with a "windfall":

21           ***It cannot be maintained that timely registrants are more deserving of
              remedy***, …. By excluding … late registrants from the class, ***the timely
              registrants would receive what is essentially a "windfall,"*** comprised of
22           some portion of the recovery that would be owed to the otherwise deserving
              late registrants …. ***[T]he loss of a windfall is not prejudicial.***
23

24

25

---

26 [11] Additionally, the district court "was unequivocal in its statement of the consequence of a
   failure to file timely both forms.  'Settlement Class Members who … do not timely
27 Register and submit Claims Forms are not entitled to share in the AcroMed Settlement
   Fund, [and] are … barred and enjoined from asserting Settled Claims.'"  *In re Orthopedic
28 Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 318 (3d Cir. 2001).

[3444427.7]

*Id.* at 324 (emphasis added).[12]  In reversing the district court, the Third Circuit went on to hold that, while deadlines are important to case management, the slavish adherence to those deadlines without consideration of the relevant facts and circumstances is antithetical to equity, as well as to the court's fiduciary obligations:

> We recognize that deadlines are an integral component of effective consolidation and management of the modern mass tort class action. ***Yet rigid and unquestioned adherence to such limitations belies principles of equity and the court's role as a fiduciary in class actions when allowing a claimant participation in a settlement works no harm on the conduct of the proceedings and does not significantly prejudice the interests of the parties***.

*Id.* at 316-17 (emphasis added) (citing *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir.1977)).

In *Agent Orange*, in which the court had, over three years earlier, extended the claim deadline twice and accepted all 12,000 claims submitted after the deadlines,[13] and even though "the distribution of the settlement fund [was] at hand" three years later after the resolution of appeals, Judge Weinstein accepted all approximately 3,500 additional late claims, holding that, because late claimants and timely claimants stood on equal footing, and because timely claimants had no right to any particular recovery amount, timely claimants would not be prejudiced thereby:

> ***There can, therefore, be little prejudice to the claimants whose claims were timely filed by admission of these claimants to the class for consideration on an equal footing.***  Moreover, since no payments have yet been made to any claimants, earlier estimates of possible payment amounts did not confer on the early claimants any right to those particular amounts.

*In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1263 (E.D.N.Y. 1988) (emphasis added; citations and internal quotes omitted).

_____

[12] *See CME Grp. Inc. v. Chicago Bd. Options Exch., Inc.*, CIV.A. 2369-VCN, 2009 WL 1856693, at *3 (Del. Ch. June 25, 2009) ("Even though other Group A Member distributions will be diminished somewhat …, ***the additional proceeds from the settlement pool they would receive if late filers were excluded is simply a windfall***.") (emphasis added).

[13] *See In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1401 (E.D.N.Y. 1985); *id.* at 1417 ("Accordingly, all claims filed by the date of this opinion will be considered timely.  No further consideration of claims filed late will be made unless the court determines that good and special reason exists for failure to meet the deadline.").

Case No. CV-07-5944-JST

RESPONSE OF FINANCIAL RECOVERY STRATEGIES TO INDIRECT PURCHASER PLAINTIFFS' MOTION TO AMEND FINAL APPROVAL ORDER, FINAL JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)

1    In *Bear Stearns*, the court, in connection with the first distribution of 90% of the net

2    settlement fund, extended the deadline and, at the request of counsel, which had not

3    distinguished "between late claimants who had a 'good reason' for being late and those

4    who did not," accepted all late claims.  *In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA*

5    *Litig.*, 297 F.R.D. 90, 95-96 (S.D.N.Y. 2013) (Sweet, J.).  The court then again later

6    accepted another later filed claim, holding that "timely-filed claimants have no justifiable

7    expectation of any particular payout."  *Id.* at 96.[14]

8    As those and a legion of other cases—including *LCDI*, *DRAM*, *LIB* and *ODD*—

9    demonstrate, an excusable neglect analysis is not required or even suggested for late

10   claims, as is the case here, that are submitted while timely claims are being processed.

11   *See, e.g.*, *In re Nuvelo, Inc. Sec. Litig.*, Master File No. 07-CV-04056-CRB, 2012 WL

12   12920613, at *1 (N.D. Cal. July 16, 2012) (Breyer, J.) (At distribution, the Court

13   "approve[d] the valid, documented claims … .  These claims include fully and partially

14   valid claims, as well as late-filed but otherwise valid claims, of Class Members"); *id.* at *2

15   ("If any valid claims are filed between the date of this Order and the date of Distribution,

16   or any adjustments to already-filed Proofs of Claim are made prior to the date of

17   Distribution, Plaintiffs' Lead Counsel may request the Court to amend the Order to permit

18   such adjustment or additional distribution."); *accord In re Nuvelo, Inc. Sec. Litig.*, 2011

19   WL 13152868, at *3 (N.D. Cal. Mar. 24, 2011) (Breyer, J.) ("Notwithstanding the

20   foregoing [deadline], Lead Counsel shall have the discretion to accept late-submitted

21   claims for processing by the Claims Administrator so long as distribution of the Net

22   Settlement Fund is not materially delayed.").  In each of these cases, the courts either had

23   already accepted late claims or had extended the claim filing deadline before undertaking

24   an excusable neglect analysis only for claims submitted thereafter, a situation clearly not

25

26   ———————————————
     [14] *See also id.* at 95 (in an earlier distribution, the court allowed late claims that were
27   "disproportionately large"; "Counsel argued [in connection therewith] that 'it would be
     unfair to deny payment of an otherwise eligible claim received while claims were still
28   being processed because it was submitted after the Court-approved claims filing
     deadline.'").

[3444427.7]

1  presented here.

2     **B.     The Cases Cited by Spectrum Do Not Support an Excusable Neglect**
      **Analysis Under the Circumstances of this Case.**

3

4        In support of its position that the Court must require an excusable neglect analysis

5  in order to allow any late claims to be included in the settlement, Spectrum cites 4 cases.

6  None, however, support Spectrum's argument:

7        In *DRAM*, which involved non-reversionary settlements of an indirect purchaser

8  action, the court, at the request of the Attorneys General and Co-Lead Counsel, which

9  included Straus & Boies, LLP, accepted *en masse* all otherwise eligible late claims

10  received after the August 1, 2014 court-ordered filing deadline but before July 1, 2015:

11        In the interest of increasing the participation of class members in the
      settlement distribution, Co-Lead Counsel and the Attorneys General

12        recommend that the Court authorize payments to *all* class members whose
      claims were filed by July 1, 2015, and were deemed eligible for payment

13        after conclusion of the audit process by Rust.  Although the initial claims
      deadline was August 1, 2014, the distribution has not been delayed by the

14        additional claims filed between August 1, 2014 and July 1, 2015, and
      considerations of overall fairness to the Settlement Class outweigh any

15        prejudice to those class members who filed in the "first wave" of claims by
      August 1, 2014.

16

17  *DRAM* Dist. Mot. at 11:4-17 (N.D. Cal. May 4, 2016) (emphasis added); *DRAM*, Dist.

18  Order, Dkt. 2283 at ¶ 11 (May 19, 2016) ("The Court hereby approves for payment *all*

19  claims received from members of the Indirect Purchaser Settlement Class that were filed

20  on or before July 1, 2015, and which are identified as Eligible Claims … .") (emphasis

21  added). Contrary to Spectrum's assertions, Spectrum Ltr. at 13, the term "excusable

22  neglect" did not appear either in counsel's motion or in the court's order, and the limitation

23  to uncashed funds was not applied to late claims received on or before July 1, 2015; rather,

24  it was applied only to late claims received after July 1, 2015.  *DRAM* Dist. Order at ¶ 12.

25        In *Authentidate*, which involved the non-reversionary settlement of a securities

26  fraud class action, the court, at the request of class counsel, accepted all eligible claims

27  filed after the deadline but before the distribution motion was submitted:

28        [T]he administration of the Settlement was not delayed as a result of the late-

> filed Claims. … [A]llowing Class Members who filed the late Claims to participate in the Settlement is an equitable determination that is within the Court's discretion.  Because the equities favor including the valid late Claims in the Settlement, Lead Plaintiff and Lead Counsel respectfully request that the Court treat the valid Late Claims as Authorized Claims."

*In re Authentidate Hldg. Corp. Sec. Litig.*, Master File No. 05 Civ. 5323, Mem. Supp. Lead Pls.' Mot. Dist. …, ECF No. 115, at 7-8 (S.D.N.Y. May 7, 2012); *accord* Order Grant. Lead Pls.' Mot. Dist. …, ECF No. 117, at ¶ 3.a (S.D.N.Y. July 3, 2012).  An excusable neglect analysis was conducted only on the 3 claims submitted after class counsel submitted its distribution motion.  *See id.*, 2013 WL 324153, at *1 (Jan. 25, 2013).

In *Elec. Carbon*, which, unlike this case, involved settlements of a direct purchaser action in which notice, which "emphasized [that] 'Any Class Member who does not complete and timely return the Claim Form will not be entitled to share in the Net Settlement Fund,'" *In re Elec. Carbon Prods. Antitrust Litig.*, 622 F. Supp.2d 144, 149 (D.N.J. 2007), was mailed via first class mail to all approximately 5,000 members of the class, *see id.* at 151, the court, in ruling on class counsel's motion to distribute the settlement proceeds, held that "[a]ll legitimate members of the class are normally presumed equally entitled to share in recovery," that "despite the significant value of the late claims, there is no fatal prejudice," and that "the Court has an obligation not to elevate the claims of any class member over the claims of other class members, no matter how large a class member's stake in the case might be." *Id.* at 154, 156-57 ("All legitimate class members should, if equitable, be permitted to share in the settlement.").[15]

---

[15] Spectrum attributes to the court in *Elec. Carbon*, a quote that late claims must be rejected "absent extraordinary circumstances."  Spectrum Ltr. at 8 (quoting 622 F. Supp.2d at 153 n.15).  But that quote was not a statement by the *Elec. Carbon* court.  Rather, the portion of the footnote quoted by Spectrum was the court's own quotation of the position expressed by Crowell & Moring, which, like Spectrum here, stood to gain from the rejection of late claims.  The quoted passage actually begins with the following introduction:  "[T]he Crowell & Moring Plaintiffs briefly argued orally that the Court must reject the late claimants' participation in the distribution of funds absent extraordinary circumstances."  The court rejected Crowell's position.  *Id.*  On the same page as the quoted footnote, the court made the following observation:  "[R]igid and unquestioned adherence to such limitations belies principles of equity and the court's role as a fiduciary in class actions when allowing a claimant participation in a settlement works no harm on the conduct of the proceedings and does not significantly prejudice the interests of the parties."  *Id.* at 153 (quoting *Orthopedic Bone Screw*, 246 F.3d at 316-17).

[3444427.7]

1   In *Crazy Eddie*, which, also unlike this case, involved a securities fraud class action

2   that was settled via a reversionary fund—that is, "[a]ny amount not distributed would

3   revert to the settling defendants"—the court held that there was "no compelling reason for

4   observing a strict deadline on the facts of this case.  The equities weigh substantially in

5   favor of leniency in allowing late claims …." *In re Crazy Eddie Securities Litig.*, 906 F.

6   Supp. 840, 843, 846 (E.D.N.Y. 1995) (with a deadline of March 30, 1993, court allowed

7   late claims mailed on or before September 30, 1993).

8   In fact, Spectrum has not cited, nor has FRS found, any case that, in connection

9   with a non-reversionary settlement of an indirect purchaser class action, a court determined

10  that it was required to conduct an excusable neglect analysis before it could accept late

11  claims.  Perhaps that is because, as the Ninth Circuit noted in *Pincay*, "*Pioneer* cautioned

12  against 'erecting a rigid barrier ***against late filings*** attributable in any degree to the

13  movant's negligence.  There should similarly be no rigid legal rule ***against*** late filings

14  attributable to any particular type of negligence." *Pincay v. Andrews*, 389 F.3d 853, 860

15  (9th Cir. 2004) (en banc) (emphasis added) (citing *Pioneer Investment Services Co. v.*

16  *Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 n.14 (1993)).[16]  The *Pincay*

17  court held that "the weighing of *Pioneer's* equitable factors [must be within] the discretion

18  of the district court in every case." *Id.*

19  **C.   Even if the Court Were Inclined to Consider Excusable Neglect Under**

20  **the Circumstances of this Case, the Court has the Discretion to Accept**
    **All Otherwise Eligible Late Claims.**

21  As the Ninth Circuit held in Pincay, "*Pioneer* itself instructs courts to determine the

22  issue of excusable neglect within the context of the particular case, a context with which

23

---

24  [16] Spectrum argues that FRS should have complied with the Settlement Administrator's
    request for information relevant to excusable neglect.  *See* Spectrum Ltr. at 9 n.25.

25  However, even Spectrum recognizes that neither the Settlement Administrator nor IPP
    Counsel have the power to dictate whether an excusable neglect analysis is required or, if it

26  is, its parameters, especially given the inapplicability of excusable neglect here; that
    authority rests solely in the Court.  *See id.* 14-15 ("And as IPP Counsel recognizes, the

27  determination of exceptions to the Court-ordered claims-filing deadline, must be made by
    the Court, likely through the Special Master, rather than by IPP Counsel or the Settlement

28  Administrator.").

1  the trial court is most familiar."  389 F.3d at 859.  In her concurring opinion in *Pincay*,

2  Judge Berzon explained that no one factor is deserving of more weight than any other

3  factor:  "*Pioneer* portends a balancing test, and does not ascribe determinative significance

4  to *any* single factor."  *Id.* at 860 (Berzon, J., concurring).  In *Mendez v. Knowles*, the Ninth

5  Circuit expounded on Judge Berzon's *Pincay* concurrence:

> The Warden next argues that the most important *Pioneer* factor is the third—
> the reason for delay—and that the district court did not give this factor suf-
> ficient weight.  But in *Pincay* we declined to give primary weight to any one
> of the *Pioneer* factors, concluding that "the weighing of *Pioneer*'s equitable
> factors" must be left "to the discretion of the district court in every case."

9  556 F.3d 757, 765 (9th Cir. 2009) (quoting *Pincay*, 389 F.3d at 860).  The *Mendez* Court

10  also determined that district courts must consider the prejudice to the late filer:  "While

11  prejudice to the party seeking an extension is not one of the *Pioneer* factors, it is clear from

12  *Pincay* that a district court is not limited in its analysis of a motion for extension of time to

13  those four factors."  *Id.* at 765 n.2 (citing *Pincay*, 389 F.3d at 859, for the proposition "that

14  a district court can consider 'the likelihood of injustice if the appeal was not allowed.'").

15  Given the number of otherwise similarly situated claimants who would be harmed here,

16  there is no rationale for rejecting Late Claims that have already been submitted and

17  processed.

**D.**  **Spectrum Ignores that this Court Has the Discretion Under the Circumstances of this Case to Accept All Otherwise Eligible Late Claims.**

20  Spectrum, ignoring that the delay in this case was both substantial and not caused

21  by Late Claimants, also ignores that, as a result, the Court has the discretion to fashion its

22  consideration of excusable neglect to fit the circumstance.

23  First, Spectrum focuses on the "reason for delay" prong of the test, but does not

24  explain why that prong should compel the rejection of Late Claims.[17]  The Court has the

---

[17] Instead, Spectrum argues that members of the Settlement Class likely had notice of the deadline as a result of its sales activities.  *See* Spectrum Ltr. at 15 & n.44.  But Spectrum's sales activities are irrelevant.  Correspondence from an unfamiliar source addressed to the attention of unnamed executives at "large companies" who receive large volumes of mail every day are the business equivalent of mail delivered to a residence addressed to

1  discretion to consider the "reason for the delay" prong satisfied here, given that all Late

2  Claims were processed at the same time as Timely Claims; given that the distribution has

3  been delayed for four years as a result of the Ninth Circuit appeal, not by the actions of any

4  Late Claimant; and given that Late Claimants and Timely Claimants have the same

5  substantive claims, and therefore, the same right to recover from the settlements.

6      Second, Spectrum argues that the reduction in the recoveries for Timely Claimants

7  that would result from accepting Late Claims constitutes prejudice, and, therefore that Late

8  Claims must be rejected.  *See, e.g.*, Spectrum Ltr. at 2, 4-5, 12 & n.39.  But Spectrum does

9  not cite a case, nor has FRS found one, in which a court, after finding that late claims did

10 not cause the delay in distribution, rejected them nevertheless because of their financial

11 impact on timely claims.  *See, e.g.*, *Elec. Carbon*, 622 F. Supp.2d at 156 ("despite the

12 significant value of the late claims, there is no fatal prejudice … with regard to the mere

13 diminution of the expected recovery of the earlier claimants. … [T]he Court has an

14 obligation not to elevate the claims of any class member over [others], no matter how large

15 a class member's stake in the case might be.").  In each of the cases that Spectrum cites,

16 the court accepted late claims without relying on their small impact on timely claims.

17      •   In *Agent Orange*, the court allowed—without even mentioning the financial

18 impact of those claims—all 12,000 late claims that had been filed as of the date of its

19 opinion.  *See* 611 F. Supp. at 1401 1417.  Spectrum cites the post-appeal opinion, which

20 addressed only late claims filed after May 28, 1985.  *See* 689 F. Supp. at 1262.  Judge

21 Weinstein, after observing the small impact on timely claims, accepted all 3,500 claims

22 filed before January 1, 1989, over 4 years after the original deadline, because timely

23 claimants did not have "any right to those particular amounts" and "[t]he equities require

24 that the qualifying late claimants … be permitted to participate in the fund."  *Id.* at 1263

25

26 ―――――――――――
   "Occupant."  And like those latter unwelcome solicitations and other junk mail, often are
27 discarded.  *See, e.g.*, *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307,
   1314 & n.6 (Fed. Cir. 2016) ("[I]t was long-prevalent practice for people receiving paper
28 mail to look at an envelope and discard certain letters, without opening them, from sources
   from which they did not wish to receive mail based on characteristics of the mail.").

RESPONSE OF FINANCIAL RECOVERY STRATEGIES TO INDIRECT PURCHASER PLAINTIFFS' MOTION
TO AMEND FINAL APPROVAL ORDER, FINAL JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)

[3444427.7]

1   (citation omitted).

2   • In *Orthopedic Bone Screw*, the Third Circuit held, without reference to the

3   financial impact that late registrants would have on timely ones, that by excluding late

4   registrants, "the timely registrants would receive what is essentially a 'windfall,'

5   comprised of some portion of the recovery that would be owed to the otherwise deserving

6   late registrants. … [T]he loss of a windfall is not prejudicial."  246 F.3d at 324.  The

7   "miniscule fraction" passage quoted by Spectrum, which appears immediately after the

8   foregoing quoted language, begins with the phrase, "Even if we were to assume, *arguendo*,

9   Sambolin's recovery prejudices other class members."  *Id.*

10   • In *Bear Stearns*, though it observed that timely claimants "may recover

11   incrementally less money" if the late claim is allowed, the court held that "the class

12   members are not prejudiced since they are obligated to share a fixed recovery with other

13   equally entitled claimants and timely-filed claimants have no justifiable expectation of any

14   particular payout."  297 F.R.D. at 96.

15   • In *Zients v. LaMorte*, in which the Second Circuit reversed on equitable

16   grounds the district court's denial of the 5 late claims because the district court "concluded

17   that [it] did not have discretion to direct the[] acceptance and allowance," even though

18   their acceptance was unopposed.  459 F.2d 628, 630 (2d Cir. 1972).  As an additional basis

19   for its reversal, the Court of Appeals also noted the small financial impact of accepting the

20   late claims.  *Id.*

21   Third and last, Spectrum also argues that the Court must consider the degree of

22   lateness.  *See* Spectrum Ltr. at 4, 12 n.40.  But none of the cases cited by Spectrum

23   approaches the circumstances present here.  As the court in *Elec. Carbon* held, the length

24   of the delay must be considered under the circumstances of each case:

25   Considering that the settlement funds could not be distributed until the
     Crowell & Moring Plaintiffs substantiated their claims, there is only some

26   incremental delay on the judicial proceedings. … [T]here has been no
     showing that accepting [late claims] when filed would have impacted the

27   litigation in any way.  All the claimants filed their claims by the time the
     Court approved the class settlement … .

28

1   622 F.Supp.2d at 158.

2        Under the circumstances of this case, there is no rational or equitable basis to

3 require the undertaking of a claim-by-claim excusable neglect analysis for the 4,607

4 existing Late Claims, or for the departure from the universally accepted legal principles

5 and practice supporting the acceptance of otherwise eligible Late Claims submitted while

6 timely claims are being processed.  Accordingly, all Late Claims that are otherwise eligible

7 and that have been filed to date or are filed while the Settlement Administrator is still

8 processing Timely Claims should be treated the same as Timely Claims.

## III.   THE REST OF SPECTRUM'S ARGUMENTS ARE UNSUPPORTED OR IRRELEVANT.

11        Spectrum argues—without any support—that due process issues prevent the

12 acceptance of Late Claims, and that, because the Court has already addressed extensions to

13 the claim filing deadline, the Court should reject Late Claims now.

### A.    There Are No Due Process Issues.

15        Spectrum mentions the term "due process" 13 times to argue that if the Court

16 accepts Late Claims without conducting a claim-by-claim excusable neglect analysis, the

17 rights of those members of the Settlement Class that did not file Late Claims because they

18 believed that no claims may be filed after the deadline will be violated.[18] Spectrum has in

19 *LCDI*, *DRAM* and in other cases accepted distributions for late claimants without any

20 concern about the rights of class members that have yet to file claims.  Accordingly, the

21 Court should be skeptical of Spectrum's expressed concern here.  Like a class action

22 defendant that "prefer[s] not to be successfully sued by anyone[] who supposedly

23 undertakes to assist the court in determining whether a putative class should be certified,"

---

[18] Spectrum also argues that accepting Late Claims would be prejudicial because it would render the notice "impermissibly misleading."  *See* Spectrum Ltr. at 11.  Spectrum only cited *Weber v. GEICO* in support, but that court extended the deadline only out of "concern[] that the importance of the [claim deadline] may not have been sufficiently apparent to class members in the original notification materials."  No. 07-1332, 2009 WL 2496811, at *4 (D.N.J. Aug. 11, 2009) (citing small response rate and "the documents that were included in the notifications that were mailed to class members.").

[3444427.7]

1  crediting Spectrum, which would prefer that no Late Claims are accepted, "is a bit like

2  permitting a fox, although with a pious countenance, to take charge of the chicken house."

3  *See Eggleston v. Chicago Journeymen. Plumbers' Local U.*, 657 F.2d 890, 895 (7th Cir.

4  1981).

5      Should the Court decide to accept otherwise eligible Late Claims without reopening

6  the claims filing period, the Court would not be treating class members disparately.  Just

7  because each member of a class does not possess the same resources, the same knowledge

8  or the same ability does not mean that the due process afforded to all of them is

9  insufficient.  Here, *every* member of the Settlement Class had the *same* access to the *same*

10  publicly available information.  *Every* class member could have filed a claim through

11  November 15, 2017 by using the proof of claim form that, until then, remained available

12  on the website.  *Every* member of the Settlement Class could have sought an extension or

13  inquired of the Settlement Administrator, of IPP Class Counsel, or of the Court.  And *every*

14  member of the Settlement Class could have filed a late claim; in fact, 4,473 as of June 6,

15  2018, a "large number" according to Spectrum, Spectrum Ltr. at 4, did just that, and of

16  those, 2,920, or over 65%, were not filed by FRS, Crowell & Moring LLP, or Spectrum.

17      Spectrum also posits that, had class members been notified that late claims may be

18  accepted, "there is no doubt that some class members would have submitted claims after

19  the deadline."  *Id.* 3.[19]  But Spectrum has no knowledge of why anyone did not file a claim.

20

21  [19] Spectrum also claims, without any evidence, that class members "were instructed via the
official case website that they could ***not*** file claims after the deadline."  *Id.* 10 (emphasis

22  added).  In fact, the opposite is true, as shown in IPP Counsel's response to Manor
Venture's request for an extension:  IPP Counsel "encourage[d Manor Ventures] to file

23  [its] claims by December 7, 2015," but does not instruct Manor that it may not file its
claims after that deadline.  *See* ECF No. 4235-1, at 2 (Dec. 10, 2015).  Putting to the side

24  that IPP Counsel did not have the authority to stop processing claims, to remove the proof
of claim from the website or to publish its November 15, 2017 notification, *e.g.*, Final J.

25  Dismiss Prej. Philips, Panasonic, … Defs., ECF. No. 4717, at ¶ 10 (July 14, 2016) ("this
Court hereby retains continuing and exclusive jurisdiction over … implementation of these

26  settlements and any distribution to Class Members pursuant to further orders of this
Court;"), it stands to reason that claims submitted before that date would be processed:

27  When the term "no longer" is used to refer to "late claims," there is but one acceptable
meaning:  Late Claims submitted before the notice was published would be processed.

28  Although Spectrum claims that the proof of claim form was removed from the website

[3444427.7]

1    Contrary to Spectrum's speculation, it is entirely possible that class members did not file

2    late because, "[a]s Lead Counsel argued and the Special Master found, 'the claims period

3    in this case stretches back 20 year[s] and the product is obsolete.'" *In re Cathode Ray*

4    *Tube (CRT) Antitrust Litig.*, Case No. C-07-5944, 2016 WL 3648478, at *21 (July 7,

5    2016).  As a result, this Court, in rejecting challenges to the notice, determined that "[i]t is

6    therefore not hard to imagine that many CRT indirect purchasers either did not remember

7    what CRT-containing products they purchased or were not motivated to claim a percentage

8    of the settlement fund." *Id.*; *see also id.*  ("[T]he Court agrees with Lead Counsel that

9    'claimants [often have] difficulty remembering how many qualifying products they [have]

10   purchased and, accordingly, [are] hesitant to file claims without being sure.'  ECF No.

11   4459 at 6.  The staleness of the claims at issue here exacerbates this problem.").

12   **B.    The Court's Prior Orders Do Not Prevent the Acceptance of Late
        Claims.**

13

14       Spectrum argues that, because the Court has already addressed extensions of the

15   claim filing deadline, the Court should now reject "the mass and indiscriminate inclusion"

16   of Late Claims.  *See, e.g.*, Spectrum Ltr. at 8, 3, 6-7, 13 & n.42.  FRS is not seeking the

17   "indiscriminate inclusion" of all Late Claims"; rather, FRS seeks the inclusion only of

18   those Late Claims that have already been filed and that are otherwise eligible.

19       Spectrum also argues, as did IPP Counsel, *see* IPP Reply at 12:25-26, that it is

20   unheard of for a court, having set a deadline, to reconsider it.  *See* Spectrum Ltr. at 14 n.42.

21   Even when an order has been entered setting a "hard" deadline for claims filing, courts,

22   when equity has required, have nevertheless accepted claims submitted after that deadline.

23   For example, in *In re Bank of Am. Corp. Sec., Deriv & ERISA Litig.*, even though the

24   court's prior "Distribution Order provide[d] that no further Proofs of Claim may be

25   accepted," Master File No. 09 MD 2058 (PKC), Mem. in Supp. of Lead Pls' Mot. for …

26   Mod. of Dist. Order …, ECF No. 1024, at 5 n.7 (S.D.N.Y. Nov. 14, 2016), co-lead

27   _____

28   "after the official deadline passed," that form remained available on the website until
     November 15, 2017.

RESPONSE OF FINANCIAL RECOVERY STRATEGIES TO INDIRECT PURCHASER PLAINTIFFS' MOTION
TO AMEND FINAL APPROVAL ORDER, FINAL JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)

1  counsel, expressly eschewing any individualized evaluation of late claims, recommended

2  the later acceptance of up to 13,524 late claims. *Id.* at 13-14.  The court granted that

3  recommendation.  Order Re: … Mod. of Dist. Order to Allow … Late Claims, ECF

4  No. 1027 ¶ 3(i) (Dec. 21, 2016).  In *In re Tyco Int'l, Ltd. Sec. Litig.*, the court, even though

5  its Initial Distribution Order authorized the processing of late claims only through

6  February 20, 2009, accepted late claims submitted through June 30, 2010 and ordered that

7  they "shall be paid from the Settlement Fund amounts equivalent to the amounts paid to

8  accepted claimants in the initial distribution."  MDL Dkt. No. 02-1335-PB, Order Re:

9  Final Class Dist. of Settle. Funds, ECF No. 1677, at 4 (D.N.H. July 22, 2010).  In *Weber*,

10 although the court preliminarily approved a settlement that eliminated the recovery for any

11 class member that failed to submit a timely claim, the court extended the claims period

12 because of concern that class members did not understand the significance of the

13 mandatory deadline.  *See* 2009 WL 2496811, at *1, 3-4.

14      The Court has acknowledged that it has not made any final determinations on late

15 claims.  *See* CMC Tr. at 31:17-22 (Apr. 9, 2019) ("I don't have any opinion about that yet

16 in the first instance.  I'll see how all that plays out.").  That position makes perfect sense

17 given that, at the time that the Court's prior orders were entered, the Court did not know

18 that there would be a four-year delay that would have nothing do with the filing of any

19 Late Claims.

20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

[3444427.7]

1

**CONCLUSION**

2        For the reasons set forth above, and to fairly compensate as many victims as

3   possible, the Court should accept all otherwise eligible Late Claims filed while Timely

4   Claims are still being processed.

5

6   DATED:  October 3, 2019                    Respectfully submitted,

7                                             ROSEN BIEN GALVAN & GRUNFELD LLP

8                                             By: */s/ Jeffrey L. Bornstein*

9                                                 Jeffrey L. Bornstein

10                                            Attorneys for Non-Party

11                                            FINANCIAL RECOVERY SERVICES. INC., d/b/a
                                              FINANCIAL RECOVERY STRATEGIES
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[3444427.7]

RESPONSE OF FINANCIAL RECOVERY STRATEGIES TO INDIRECT PURCHASER PLAINTIFFS' MOTION
TO AMEND FINAL APPROVAL ORDER, FINAL JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)