Tracy R. Kirkham (69912)
John D. Bogdanov (215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA 94103
Telephone: (415) 788-3030
Facsimile: (415) 882-7040
Email: trk@coopkirk.com
        jdb@coopkirk.com

*Interim Lead Counsel for the Non-Repealer
State Subclass*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 4:07-cv-5944-JST |
| | MDL No. 1917 |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **REPLY IN SUPPORT OF MOTION OF NON-REPEALER STATE SUBCLASS MEMBER ELEANOR LEWIS FOR LEAVE TO FILE AMENDED COMPLAINT TO ADD AN ADDITIONAL PARTY, OR IN THE ALTERNATIVE, TO INTERVENE AND AMEND**<br><br>Hearing Date: October 23, 2019<br>Time:         2:00 p.m.<br>Judge:        Honorable Jon S. Tigar<br>Courtroom:  6, 2nd Floor |

1    Defendants' opposition to NRS Subclass member Eleanor Lewis's Motion for Leave to

2    Amend or in the Alternative to Intervene obfuscates the straightforward practicalities of this case

3    and ignores the totality of the circumstances.  *See also* ORS Reply at 1-4.  Simply put, Ms. Lewis

4    has always been either a putative or certified member of a Nationwide Class of indirect purchasers

5    of CRT products, which class has alleged federal equitable antitrust claims since at least the First

6    Consolidated Amended Complaint.  This Nationwide Class was certified by this Court for

7    settlement purposes in 2016, and both the class,[1] and its equitable relief claims, are pending to this

8    day.  All that Ms. Lewis seeks to do is change her status from class member to named plaintiff, and

9    note the existence of the NRS Subclass within the Nationwide Class.[2]

10    Defendants first argue that Ms. Lewis's motion is untimely and prejudicial for the same

11    reasons advanced against the amendments proposed by the ORS Subclass.  Defs. Opp. at 19.

12    These arguments fail.  *See also* ORS Reply at 5-7.  Only after remand by the Ninth Circuit in

13    February 2019, did this Court, on July 3, 2019, appoint the undersigned as interim lead counsel for

14    the NRS Subclass.  However, there is no named plaintiff who is a member of that subclass.

15    Pursuant to the August 9, 2019 Case Management Order, Ms. Lewis filed her motion in order to

16    pick up the mantle and press forward the still-pending federal equitable claims of the NRS

17    subclass within the existing Nationwide Class.  *See* NRS Motion, ECF No. 5565 at 10-12.

18    Defendants also contend that the timeliness clock for Lewis to intervene started in October

19    2012, when Lead IPP Counsel Mario Alioto elected not to file a motion for certification of the

20    nationwide federal-law equitable-relief class along with the motions he filed to certify 22 state-law

21    subclasses.  Defs. Opp. at 19-20.  This argument relies upon the premise that Lead Counsel's

22    action constituted the abandonment of the federal equitable claims, which event Ms. Lewis

---

[1] Ms. Lewis is also a member of the nationwide settlement class derived from the *Luscher v. Videocon Indus.,* No. CV-13-03234 (N.D. Cal.) Complaint.

[2] Despite the limited nature of the particular changes necessary to accomplish Ms. Lewis' specific objective of joining this litigation as a named party, Ms. Lewis proposed the filing of her amendments in a consolidated pleading with the ORS Subclass, whose claims necessitate additional amendments, and which also names the Thomson Defendants for both the ORS and Nationwide Class claims.  In addition, Defendants' opposition brief frequently conflates issues that concern both the ORS and NRS into a discussion referencing solely the ORS.  Accordingly, Lewis adopts the arguments in the ORS Reply, ECF No. 5611, other than those going specifically to their damages issues.

1

1   presumably should have divined since she was given no notice at that time that her claims were

2   being abandoned. Nonetheless, apparently according to Defendants, she should have realized back

3   in 2012 that she needed to intervene to protect her equitable claims and those of the rest of the

4   Nationwide Class. Since she did not, and Defendants have had the benefit of that abandonment for

5   the last seven years, they say that it would prejudice them if Ms. Lewis were to be permitted to

6   revive those claims now by becoming a plaintiff.

7       Defendants ignore the fact that motions for the certification of discrete subclasses are a

8   valuable litigation management technique that has no effect on the viability of other claims or

9   subclasses. No court has ever recognized a "presumption of abandonment" of claims or class

10  members unless all possible class certification motions are filed simultaneously. Clearly, Lead

11  Counsel's 2012 motion for certification of the state law damages subclasses did not waive his right

12  or hinder his ability to prosecute the equitable claims in the amended complaints. As noted above,

13  a putative Nationwide Class of all indirect purchasers of CRT products alleging federal equitable

14  claims was conditionally certified for settlement purposes three years later in 2015. Further, even

15  if Lead Counsel intended to abandon the Nationwide Class's interests in 2012, he failed to give

16  Ms. Lewis notice of that fact, which would have been required for due process since she had been

17  informed in a prior class notice that equitable claims were being advanced on her behalf herein.[3]

18      It is not enough for Defendants to assert that Ms. Lewis should have intervened as far back

19  as 2012. They must also demonstrate that she either knew or should have known back then that

20  she needed to intervene to protect her interests. *Smith v. L.A. Unified School District,* 830 F.3d

21  843, 854 (9th Cir. 2016) (courts evaluate the "totality of the circumstances facing would be

22  intervenors," and not merely the lapse of time between the motion for intervention and the

23  initiation of the action).

24      Defendants' arguments concerning prejudice actually bolster Ms. Lewis's case. *See also*

25  ORS Reply at 7-8. Of the discovery produced in this case that is presently known to Ms. Lewis,

26

27  [3] Given the dire implications of this argument for Lead Counsel's adequacy of representation, we
    assume that Mr. Alioto does not agree with Defendants' characterization of the effect of his
28  decision in 2012 to move for litigation certification of the damages subclasses before and separate
    from the equitable relief class.

2

REPLY IN SUPPORT OF MOTION OF NON-REPEALER STATE SUBCLASS MEMBER ELEANOR LEWIS
FOR LEAVE TO FILE AMENDED COMPLAINT OR TO INTERVENE - Case No. 4:07-cv-5944, MDL No. 1917

1   most of it is directly relevant to the claims of the NRS subclass, so it should not need to be

2   duplicated in further proceedings.  The Court's rulings concerning the damage subclass

3   certification, and many of the motions for summary judgment and motions *in limine* also

4   indisputably intersect with the issues facing the NRS subclass, ensuring that Defendants are fully

5   apprised of the issues in the equitable aspects of this case and will not have to expend additional

6   resources to defend against them.  For example, all parties are aware that in this Court's orders

7   granting IPPs class certification and denying Defendants' motion to strike the IPP expert report,

8   evidence was presented that the NRS subclass members where targeted and harmed by the

9   Defendants.  The expert report that was found to be reliable to support IPPs' contention that

10  antitrust impact could be proven on a classwide basis for each of the 22 damages classes was

11  grounded in the demonstration that Defendants' pricing policies were based on the knowledge that

12  these price increases would be passed on uniformly to all indirect purchasers in the United States.

13  ECF No. 1950 at 6, 8 (adopting ECF Nos. 1742 and 1743).  The report makes clear that its

14  underlying economic analysis applies to both "the nationwide and state classes", noting that

15  "[w]hile Plaintiffs seek damages only for the Indirect Purchaser State Classes, the analysis of the

16  existence of common impact and common, formulaic methods for calculating damages are equally

17  applicable to the Nationwide Class."  ECF No. 1531-1, ECF p. 9 & n.5.

18      Moreover, the Court described the following expert report findings: (1) Defendants had a

19  ninety-percent market share, and alternative CRT sources were essentially unavailable; (2) barriers

20  to entry for the CRT market are high; (3) Defendants met and exchanged price-fixing information,

21  and policed cheating among themselves through checkups, punishments, and most-favored-

22  customers agreements; (4) Defendants' meeting documents state the prices that Defendants wanted

23  to set (the "target prices"), and that based on the available data, Defendants were generally able to

24  charge prices "at least 95 percent as high as the target price 63 percent of the time, and only 13

25  percent of the sales were more than 15 percent below the cartel's target price"; (5) it is more

26  probable than not that the cartel's price increases impacted all, or nearly all, direct purchasers in a

27  common way; and (6) that Defendants could and did pass on price increases to all indirect

28  purchasers.  ECF No. 1950 at 6-8 (citations to reports omitted from quoted material); *see also* ECF

No. 1531-1, ECF pp. 113-114 (expert report summary of conclusions).  Ms. Lewis's litigating the claims of the NRS subclass holds no surprises for the Defendants here.  Defendants have utterly failed to make a showing of prejudice adding her as a plaintiff.

Defendants also oppose Ms. Lewis's becoming a plaintiff on grounds of futility.  To begin, Ms. Lewis takes this Court at its word (and citations) that it does not make rulings on important merits issues in the truncated setting of a motion to intervene or amend, and therefore, will not rule on a matter of law as important as the scope of equitable relief available under the federal antitrust laws "without the benefit of formal briefing on the … issue."  *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984-JST, 2015 U.S. Dist. LEXIS 114116, at *12 (N.D. Cal. Aug. 26, 2015).  See also, the Court's statement that "[d]enial of a motion for leave to amend on the ground of futility is rare, and Courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend[] is granted and the amended ... pleading is filed."  August 8, 2019 Transcript of Hearing at 8:5-10 (quoting *Henderson v. Muniz,* No. 14-cv-01857-JST, 2018 U.S. Dist. LEXIS 205350, at *8-9 (N.D. Cal. Dec. 4, 2018) (additional citations omitted)).  *Accord* Defs. Opp. at 2 (noting "the Court's stated preference to address any merits arguments against the proposed amended complaints in a Rule 12 motion"); Thomson Opp. at 2, n.1.[4]

Notwithstanding, Defendants argue that "there is no colorable argument that Lewis's request for equitable monetary relief is protected by any statute" (Defs. Opp. at 20-21) and that Lewis's proposed amendment is "made in bad faith."  *Id.* at 23.  Neither is the case, as will be discussed briefly below.  However, first it should be noted that as is clear from Defendants own words, their arguments are not directed to the *claim* that Ms. Lewis is advancing – a claim for equitable relief under the Clayton Act for violations of the Sherman Act – but to some aspect of the equitable remedies that she has indicated she will seek should she prevail on her claim.  Asking for an amendment to be denied on grounds of futility is essentially a request for a preemptive ruling that the amendment fails to plead facts upon which any relief can be granted.  Here, Ms.

---

[4] Defendants' statement that "given Lewis's position that her request for equitable monetary relief is not susceptible to a Rule 12 motion, see NRS Mem., at 6-7, she can hardly object to the Court addressing the viability and propriety of that claim in the context of this motion" (Def. Opp. at 23) is puzzling in light of the above.

1   Lewis has not offered any amendment to her equitable claim.  It was well-pleaded in the original

2   consolidated complaint that started this litigation and in every consolidated amended complaint

3   since, and has never been the subject of a Rule 12 motion.  Accordingly, adding Ms. Lewis as a

4   named plaintiff cannot be denied on grounds of futility.

5          The following is just a brief word about the substance of Defendants' futility argument.

6   The scope of equitable relief potentially available in a federal antitrust case is governed by two

7   controlling United States Supreme Court decisions, neither of which do the Defendants discuss in

8   their opposition.  Those cases are *Porter v. Warner Holding Co*., 328 U.S. 395 (1946) and

9   *California v. American Stores Co*., 595 U.S. 271 (1990).  As *Porter* and *American Stores* make

10  clear, the threshold question of whether a species of equitable relief is available – in other words,

11  is it a type of relief that may be requested by a plaintiff suing under a particular statute – is distinct

12  from whether that relief will be or should be granted by a court.  The threshold question of

13  availability is answered by looking solely to whether Congress unequivocally removed a specific

14  type of equitable remedy from the district court's authority.  The law is well settled that all federal

15  courts are empowered with the discretion to do equity by employing the full scope of traditional

16  common law injunctive remedies unless Congress specifically limits that power by statute.  *Porter,*

17  *supra,* 328 U.S. at 395-99.  Only a Congressional act, not a Supreme Court decision, can limit this

18  authority.  In *American Stores, supra*, 595 U.S. at 281 and 295, the Supreme Court performed that

19  inquiry and found absolutely no act, statement or indication of Congressional intent to constrain

20  the full range of equitable remedies available in private antitrust actions.  This compels the

21  conclusion that disgorgement and restitution do indeed fall within the scope of this Court's power

22  to address violations of the antitrust laws.

23         Virtually all of the cases cited by Defendants involve courts applying the prohibition

24  against indirect purchaser pass-on damage proof enunciated in *Illinois Brick Co. v. Illinois,* 431

25  U.S. 720 (1977), to deny monetary equitable relief to indirect purchasers (although these remedies

26  presumably are available to direct purchasers).  None of these cases acknowledge the existence of

27  the *Porter* test, which is not surprising since it would preclude consideration of *Illinois Brick,* a

28  case grounded not in construction of Congressional intent regarding equitable remedies, but rather

5

1    in the Court's procedural and rule making authority to control the evidence admissible in federal

2    actions.

3    　　　　The proper place for the issue of whether any aspect of *Illinois Brick* should operate to

4    make restitution or disgorgement to indirect purchasers inequitable is after the indirect purchaser

5    has proved an antitrust violation, and the trial court is actually fashioning the appropriate response.

6    The question then is not whether the court has the power to order the remedy, but whether the

7    requested remedy is equitable given all of the circumstances of the case, which could include

8    consideration of the direct- or indirect-purchaser status of the prevailing party.

9    　　　　Obviously, both the issue of the availability of monetary equitable relief in antitrust

10   actions, as well as the question of whether courts should be persuaded by *Illinois Brick* to deny

11   such awards to indirect purchasers on equitable grounds are merits decisions that cannot be

12   resolved within the context of a motion to intervene or amend a complaint to add a plaintiff.

13   　　　　For all of the above reasons, this Court should grant Ms. Lewis's motion to amend the

14   complaint or in the alternative to intervene in this action to amend the complaint.

15   Dated:  October 4, 2019                    Respectfully Submitted,

16   　　　　　　　　　　　　　　　　　　　　　　　　　___/s/ *Tracy R. Kirkham*_____

17   　　　　　　　　　　　　　　　　　　　　　　　　Tracy R. Kirkham

18   　　　　　　　　　　　　　　　　　　　　　　Tracy R. Kirkham (69912)
     　　　　　　　　　　　　　　　　　　　　　　John D. Bogdanov (215830)

19   　　　　　　　　　　　　　　　　　　　　　　COOPER & KIRKHAM, P.C.
     　　　　　　　　　　　　　　　　　　　　　　357 Tehama Street, Second Floor

20   　　　　　　　　　　　　　　　　　　　　　　San Francisco, CA 94103
     　　　　　　　　　　　　　　　　　　　　　　Telephone: (415) 788-3030

21   　　　　　　　　　　　　　　　　　　　　　　Facsimile: (415) 882-7040
     　　　　　　　　　　　　　　　　　　　　　　Email:  trk@coopkirk.com

22   　　　　　　　　　　　　　　　　　　　　　　　　　　jdb@coopkirk.com

23   　　　　　　　　　　　　　　　　　　　　　　*Interim Lead Counsel for the Non-Repealer
     　　　　　　　　　　　　　　　　　　　　　　State Subclass*

24

25

26

27

28