Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

***Lead Counsel for the Indirect***
***Purchaser Plaintiffs for the 22 States***

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>INDIRECT PURCHASER ACTIONS FOR THE 22 STATES | MASTER FILE NO. 4:07-cv-5944 JST<br>Case No. 13-cv-03234-JST<br><br>MDL NO. 1917<br><br>**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION PURSUANT TO NINTH CIRCUIT MANDATE TO RECONSIDER AND AMEND FINAL APPROVAL ORDER, FINAL JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)**<br><br>Hearing Date: October 23, 2019<br>Time:          2:00 p.m.<br>Courtroom:   6, 2nd Fl. (Oakland)<br>Judge:         Hon. Jon S. Tigar |

# TABLE OF CONTENTS

INTRODUCTION...............................................................................................................1

ARGUMENT 2

I.  THE ORS/NRS PLAINTIFFS LACK STANDING TO OBJECT TO THE AMENDMENTS TO THE SETTLEMENTS AND THE ATTORNEYS' FEES........................................................................................................... 2

II.  THE AMENDMENTS DO NOT PREJUDICE THE ORS/NRS PLAINTIFFS................................................................................................ 3

    A.  The Amendments Allow The ORS/NRS Plaintiffs To Pursue Their Claims.................................................................................................. 4

    B.  The Amendments Resolve Any Adequacy Of Representation Concerns Because The ORS/NRS Plaintiffs Are Not Class Members And Have Separate Counsel........................................................... 5

    C.  IPP Counsel Did Not Negotiate The Value Of The ORS/NRS Claims...................................................................................................... 6

    D.  The IPP And ORS/NRS Claims Need Not Be Settled Simultaneously ........................................................................................ 7

    E.  The ORS/NRS Plaintiffs' Authorities Are Inapposite ................................. 9

    F.  The ORS/NRS Plaintiffs Will Benefit Substantially From The Amendments.............................................................................................. 10

III.  THE NINTH CIRCUIT'S MANDATE GIVES THIS COURT BROAD DISCRETION TO RECONSIDER SETTLEMENT APPROVAL AND FEES........................................................................................................ 11

    A.  This Court Has Broad Discretion To Reconsider And Amend Its Prior Orders ............................................................................................. 11

    B.  Vacating The Court's Prior Orders And Restarting The Rule 23 Approval Process Would Be Wasteful And Unnecessary.......................... 14

    C.  The Court Has Jurisdiction Over The Fee Order ....................................... 15

IV.  ORS/NRS PLAINTIFFS FAIL TO REBUT IPPS' SHOWING THAT FULL NOTICE UNDER RULE 23(e) IS NOT NECESSARY ............................ 17

V.  THE PARTIES SHOULD MEDIATE LATE CLAIMS ....................................... 20

CONCLUSION ................................................................................................................ 20

1

<b>TABLE OF AUTHORITIES</b>

2 **CASES**

3 *In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013) ................................................................... 19
4

*In re Bank Am. Wage & Hour Empl. Litig.*,
5 740 F. Supp. 2d 1207 (D. Kan. 2010) ......................................................... 9

6 *Belew v. Brink's, Inc.*,
721 Fed. Appx. 734 (9th Cir. 2018) ......................................................... 14
7

*Betts v. Reliable Collection Agency, Ltd.*,
8 659 F.2d 1000 (9th Cir. 1981) ................................................................... 8

9 *B-K Lighting, Inc. v. Vision3 Lighting*,
930 F. Supp. 2d 1102 (C.D. Cal. 2013) ................................................... 12
10

*Gallagher v. San Diego Unified Port Dist.*,
11 14 F. Supp. 3d 1380 (S.D. Cal. 2014) ..................................................... 12

12 *In re General Motors Corp. Engine Interchange Litig.*,
594 F.2d 1106 (7th Cir. 1979) ............................................................. 8, 10
13

*Giroux v. Essex Property Trust, Inc.*,
14 Case No. 16-cv-01722-HSG, 2019 WL 2106587 (N.D. Cal. May 14, 2019) ..................... 14

15 *Hall v. City of Los Angeles*,
697 F.3d 1059 (9th Cir. 2012) ................................................................. 12
16

*Hanlon v. Chrysler Corp.*,
17 150 F.3d 1011 (9th Cir. 1998) ................................................................. 18

18 *Hendricks v. Starkist Co.*,
No. 13-cv-00729, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016), *aff'd sub nom*
19 *Hendricks v. Ference*, 754 Fed. Appx. 510 (9th Cir. 2018) ................................. 18

20 *Keepseagle v. Vilsack*,
102 F. Supp. 3d 306 (D.D.C. 2015) ................................................... 18, 19
21

*Knisley v. Network Associates, Inc.*,
22 312 F.3d 1123 (9th Cir. 2002) ................................................................... 3

23 *Moore v. Verizon Commc'ns Inc.*,
No. C 09-1823 SBA, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ......................... 14
24

*New Breed Leasing Corp. v. National Labor Relations Bd.*,
25 111 F3d 1460 (9th Cir. 1997) ................................................................. 12

26 *Nguyen v. U.S.*,
792 F.2d 1500 (9th Cir. 1986) ................................................................. 12

27

28

ii

*Pauma Band of Luiseno Mission Indians of the Pauma & Yuima Reservation v. California*,
    343 F. Supp. 3d 952 (S.D. Cal. 2018) ................................................................ 9

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    827 F.3d 223 (2d Cir. 2016) ................................................................... 7, 8

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................ 7

*Pearl v. Allied Corp.*,
    102 F.R.D. 921 (E.D. Pa. 1984) ............................................................. 9

*Pearson v. Target Corp.*,
    893 F.3d 980 (7th Cir. 2018) ................................................................. 19

*Petersen v. Costco Wholesale Co. Inc.*,
    No. SA CV 13-1292-DOC(JCGx), 2019 WL 1715485 (C.D. Cal. Jan. 17, 2019) .............. 8

*Shaffer v. Continental Cas. Co.*,
    362 Fed. Appx. 627 (9th Cir. 2010) ......................................................... 18

*Smith v. Sprint Communications Co., LP*,
    387 F.3d 612 (7th Cir. 2004) ................................................................. 9

*In re TracFone Unlimited Serv. Plan Litig.*,
    112 F. Supp. 3d 993 (N.D. Cal. 2015), *reconsideration denied*, No. C-13-3440 EMC,
    2015 WL 4735521 (N.D. Cal. Aug. 10, 2015) ............................................. 2, 3

*U.S. ex rel. Lujan v. Hughes Aircraft Co.*,
    243 F.3d 1181 (9th Cir. 2001) ............................................................... 12

*U.S. v. Kellington*,
    217 F.3d 1084 (9th Cir. 2000) ............................................................... 12

*U.S. v. Miller*,
    822 F.2d 828 (9th Cir. 1987) ................................................................. 12

*Underwriters at Lloyds v. Denali Seafoods, Inc.*,
    927 F.2d 459 (9th Cir. 1991) ................................................................. 4

*Yankee Atomic Electric Co. v. U.S.*,
    679 F.3d 1354 (Fed. Cir. 2012) .............................................................. 12

*Zamora v. Ryder Integrated Logistics, Inc.*,
    No. 13CV2679-CAB BGS, 2014 WL 9872803 (S.D. Cal. Dec. 23, 2014) ...................... 14

**STATUTES**

Class Action Fairness Act, 28 U.S.C. § 1715 ..................................................... 19

1 **RULES**

2 Fed. R. Civ. P. 23

3       Rule 23(a) ................................................................................................... 15

4       Rule 23(b)(2) ................................................................................................. 7

5       Rule 23(b)(3) ............................................................................................. 7, 15

6       Rule 23(c)(5) .................................................................................................. 8

7       Rule 23(e) ............................................................................................. passim

8       Rule 23(e)(1) ................................................................................................ 18

9 Fed. R. Civ. P. 54

10       Rule 54(b) .............................................................................................. 7, 8, 9

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION PURSUANT TO
NINTH CIRCUIT MANDATE TO RECONSIDER AND AMEND FINAL APPROVAL ORDER, FINAL
JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)

# INTRODUCTION

IPPs have moved the Court to reconsider and amend the Final Approval Order, Final Judgment and the Fee Order (the "Final Orders") in light of their agreement with the Defendants to (1) narrow the settlement class to include only the 22 Indirect Purchaser State Classes[1]; (2) reduce the settlement amounts by $29,000,000; and (3) reduce IPP Counsel's attorney fee award by $29,000,000 to offset the reduction in the settlement amounts (the "Amendments").  All other settlement terms remain the same.  Third-party aggregators representing approximately 80% of the amended settlement class have received notice of the Amendments and this Motion, and have either filed briefs in support of the Amendments, or have not objected thereto.[2]  Yet, the ORS/NRS Plaintiffs—none of whom have standing to object to the Amendments because they are no longer class members—oppose IPPs' Motion and the Amendments on multiple procedural and substantive grounds.

Without citation to authority, the ORS/NRS Plaintiffs argue that the Ninth Circuit's mandate limits this Court to either affirming or vacating its Final Orders, and that proceeding by amendment is somehow improper.  In addition, despite the fact that the only substantive change to the settlements is the narrowing of the settlement class (leaving the ORS/NRS Plaintiffs free to prosecute their claims), they argue that the Amendments are "unfair" to the ORS/NRS.  They also insist—contrary to this Court's recent statements and again without citation to authority—that the Court should vacate the Final Orders and require the parties to restart the Rule 23 approval process from scratch.[3]

---

[1] Sometimes referred to herein as the "22 States."

[2] ECF Nos. 5595, 5608, 5609.

[3] ORS/NRS Plaintiffs also attempt to reinstate the ORS Motion to Vacate Orders and Judgment Certifying Settlement Class, Approving Settlement and Awarding Attorneys' Fees (ECF No. 5527).  But they fail to comply with the Court's August 9, 2019 Case Management Order (ECF No. 5551), which requires them to file a "notice of motion incorporating their memorandum of points and authorities by reference."  *Id.* at 2.  Accordingly, IPPs do not respond to the Motion to Vacate in this Reply.  IPPs submit, however, that since the ORS Motion to Vacate will be (footnote continued)

The ORS/NRS Plaintiffs' lack of standing is fatal to their objections to the Amendments. Moreover, their objections lack any factual or legal basis.  They are nothing more than a transparent attempt to further delay and obstruct IPPs' efforts to bring their case to a close in the hopes that the ORS/NRS Plaintiffs can leverage the claims of the 22 States to assist in the prosecution of their case.  As this Court recently noted, the ORS/NRS Plaintiffs have repeatedly claimed that they wish to fight.[4]  The Amendments to IPPs' settlements give them an opportunity to fight.  They need to step up and seize that opportunity rather than continuing to stand in the way of the 22 States' right to settle their case.

## ARGUMENT

## I.   THE ORS/NRS PLAINTIFFS LACK STANDING TO OBJECT TO THE AMENDMENTS TO THE SETTLEMENTS AND THE ATTORNEYS' FEES

The ORS/NRS Plaintiffs lack Article III standing to object to the Amendments and the reduced attorney fee request because they are not members of the amended settlement class, separate counsel is representing their interests, and the Amendments do not prejudice them in any way.

Consistent with well-settled law and fundamental Article III standing principles, this Court has already concluded that only aggrieved class members may object to class action settlements.[5] The Ninth Circuit likewise concluded that Cooper & Kirkham P.C. lacked standing to appeal because it was not a member of the class, and did not appeal on behalf of a class member.[6]

---

rendered moot if the Court grants IPPs' motion to amend the Court's Final Orders, the Motion to Vacate should not be reinstated until this Motion is resolved.

[4] August 8, 2019 Case Management Conference ("CMC") Tr., 7:8-16.

[5] *See* ECF No. 4712 ("Final Approval Order") at 35 (Scarpulla and Cooper & Kirkham P.C. lacked standing to object to the settlements because "they [did] not advance their objections on behalf of an aggrieved class member, and they [did] not claim to be class members themselves, much less aggrieved class members.") (citing *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1008 (N.D. Cal. 2015) (Chen, J.) (collecting cases), *reconsideration denied*, No. C-13-3440 EMC, 2015 WL 4735521 (N.D. Cal. Aug. 10, 2015)).

[6] *See* Order dated March 2, 2017, Appeal No. 16-16395, ECF No. 66 at 7.

MDL NO. 1917
INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION PURSUANT TO NINTH CIRCUIT MANDATE TO RECONSIDER AND AMEND FINAL APPROVAL ORDER, FINAL JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)

Here, IPPs' opening brief and the Amendments to the settlements make abundantly clear that the amended settlement class only includes members of the 22 Indirect Purchaser State Classes. None of the ORS/NRS Plaintiffs are members of the 22 Indirect Purchaser State Classes and they are not bound in any way by the amended settlements. They are therefore not class members, much less aggrieved class members. Accordingly, the ORS/NRS Plaintiffs lack Article III standing to object to either the Amendments or IPPs' requested attorney fee award.[7]

Moreover, even if the ORS/NRS Plaintiffs were still members of the "Nationwide Class" previously certified for settlement purposes, they would not be "aggrieved" by the amended settlements because they are not bound by them, and are not otherwise prejudiced by them, as further explained below. They are also represented by separate counsel who is pursuing their claims. The ORS/NRS Plaintiffs therefore still lack standing to object to the Amendments. *See* Final Approval Order at 35 ("'Simply being a member of a class is not enough to establish standing. One must be an aggrieved class member.' One who 'suffered no injury likely to be redressed by a favorable decision' lacks standing." (internal citations omitted)).

Thus, the Court can reject the ORS/NRS Plaintiffs' objections to the Amendments on standing grounds alone.

## II. THE AMENDMENTS DO NOT PREJUDICE THE ORS/NRS PLAINTIFFS

The ORS/NRS Plaintiffs contend that IPPs' amended settlements with the Defendants "severely prejudice" them because the Amendments "jettison" them, leaving them "to fend for themselves," and "[f]orc[e] [them] to continue to litigate."[8] Among other things, they complain that they were somehow improperly excluded from the settlement negotiations (even though they

---

[7] *See TracFone*, 112 F. Supp. 3d at 1008 ("Birner lacks standing to object to the proposed settlement because he is not a class member, and certainly is not an aggrieved class member"); *Knisley v. Network Associates, Inc.*, 312 F.3d 1123, 1126 (9th Cir. 2002) (holding that even class members lack Article III standing to object to an attorney fee award if they fail to submit a claim because a reduced fee award will not benefit them).

[8] ORS and NRS Plaintiffs' Opposition, ECF No. 5607 ("Opp."), at 3, 6.

1   were conducted by a Magistrate Judge pursuant to Court Order), and criticize IPP Counsel's

2   failure to recover anything for purchasers in the ORS/NRS (even though IPP Counsel no longer

3   had any authority to negotiate for them).  Contrary to their contentions, the Amendments do not

4   prejudice the ORS/NRS Plaintiffs in any way.

5   **A.  The Amendments Allow The ORS/NRS Plaintiffs To Pursue Their Claims**

6   The Amendments provide that the claims of the ORS/NRS Plaintiffs and the purchasers

7   they purport to represent are not released by the IPPs' amended settlements, and they are not

8   bound by the amended settlements in any way.  Nor are the ORS/NRS Plaintiffs' relation back

9   arguments prejudiced by IPPs settlement of the claims of the 22 States.[9]  IPPs have not eliminated

10  the nationwide injunctive relief claim from the operative complaint, and nothing in the

11  Amendments requires further amendments to the complaint beyond those already made.[10]  The

12  Amendments simply return the ORS/NRS Plaintiffs to the same position they would have been in

13  had they never been included in the settlements.

14  As ORS/NRS Plaintiffs acknowledge, they are now free to prosecute their claims and are

15  separately represented by counsel who are actively asserting those claims—which is exactly what

16  they have claimed to want all along.[11]  That they no longer want to litigate their claims if they

17  have to do so without IPP Counsel's help is irrelevant.  Allowing objectors who demanded

18  separate counsel to actually litigate their claims with separate counsel is not prejudice.

19

20  _____

21  [9] *See* Opp. at 6 (speculating that IPPs may amend the complaint and drop the "federal antitrust claims[,]" which "Defendants would use . . . as ammunition" against ORS/NRS Plaintiffs).

22  ORS/NRS Plaintiffs' speculation is insufficient to establish prejudice. *Underwriters at Lloyds v. Denali Seafoods, Inc.*, 927 F.2d 459, 464 (9th Cir. 1991).

23  [10] *See* IPPs Fifth Consolidated Amended Complaint filed on September 19, 2019 in connection

24  with the Amendments.  ECF No. 5589, ¶ 243.  For the reasons stated in IPPs' response to the ORS/NRS Plaintiffs' motion for leave to amend the complaint, however, the ORS/NRS Plaintiffs

25  should not be permitted to amend IPPs' operative complaint.  *See* ECF No. 5593.

26  [11] *See, e.g.*, ECF No. 5416 at 19-31 (advocating that the Court vacate settlement approval, appoint

27  separate counsel and set deadlines for class certification and trial).

28

**B.  The Amendments Resolve Any Adequacy Of Representation Concerns Because The ORS/NRS Plaintiffs Are Not Class Members And Have Separate Counsel**

The ORS/NRS Plaintiffs argue that adequacy of representation problems persist because they are still members of the nationwide class entitled to equal treatment by IPP Counsel, and excluding them from the amended settlements denies them equal treatment.  Opp. at 5.  But this Court has already rejected any notion that IPPs must include the ORS Plaintiffs' claims in the amended settlements:

> "I don't tell people who to settle with.  I was asked vehemently -- well, vehemently. I was asked with great conviction if I would please appoint separate lawyers for these subclasses because I was told: We wish to fight. Good, fight. But please don't tell me to tell some party that wants to settle with fewer than everybody that they have to talk only to everybody. I just don't think that's the way it works."[12]

Moreover, under the amended settlements—the ORS/NRS Plaintiffs are no longer class members.  They are also no longer represented by IPP Counsel.[13]  Thus, any adequacy of representation/conflict of interest concerns have been addressed.  The cases cited by ORS/NRS Plaintiffs (Opp. at 5 & n. 5)—all of which involve the same class counsel representing a single class or subclasses—are therefore inapposite.

In addition, the ORS/NRS Plaintiffs are not similarly-situated to IPPs, which is in large part why they are now separately represented.  The claims of the ORS Plaintiffs were either never part of this litigation prior to the settlements, or were alleged and dismissed for various reasons.[14]  Likewise, although alleged, IPPs did not prosecute and did not seek certification of the NRS Plaintiffs' injunctive relief claim because none of the Defendants was making CRTs anymore and were unlikely to do so in the future.  IPPs also never sought equitable monetary relief as the NRS Plaintiffs purport to do.[15]  As a result, the ORS/NRS claims have not been tested; subclasses have

---

[12] August 8, 2019 CMC Tr., 7:8-16.

[13] *See* ECF No. 5518 (Order dated July 3, 2019 appointing separate counsel for the ORS/NRS).

[14] *See* ECF No. 5486 at 2-8 (explaining procedural history).

[15] *See* ECF No. 5593 at 6-7 (explaining why IPPs did not pursue equitable monetary relief).

1  not been certified; the ORS/NRS Plaintiffs and their counsel are not prepared for trial; and they

2  face unique defenses not applicable to those of the 22 States.  In fact, the ORS/NRS Plaintiffs are

3  not even in Court yet, and Defendants have opposed their motions to intervene and amend the

4  complaint.[16]  Notably, they would be in exactly the same situation if the Court vacates the

5  settlements, as they have repeatedly requested.

6          In contrast, the claims of the 22 States have survived two rounds of motions to dismiss;

7  have been certified as statewide damages classes following a vigorously-contested class

8  certification motion; have survived summary judgment; and are close to being fully prepared for

9  trial.  The ORS/NRS Plaintiffs' continued assertion that their claims—in their current posture—

10  are equal to those of the 22 States, ignores this reality and provides some insight into why the

11  parties' attempts to settle the ORS claims were unsuccessful.  The ORS/NRS Plaintiffs' claims

12  must be successfully litigated by their separate counsel before they can be similarly-situated to

13  those of the 22 States.  Making them do so is not prejudice.

14          **C.  IPP Counsel Did Not Negotiate The Value Of The ORS/NRS Claims**

15          IPP Counsel did not, as ORS/NRS Plaintiffs speculate, negotiate a "baseline" for the value

16  of the ORS/NRS claims.[17]  IPP Counsel negotiated reduced settlement amounts based on the value

17  of the releases by the 22 States.  There is no basis to suggest that the $29 million reduction

18  somehow limits any future settlement on behalf of the ORS/NRS.

19          ORS/NRS Plaintiffs and their counsel are free to negotiate settlements of more or less than

20  $29 million with Defendants or choose to go to trial, depending on their assessment of the risks of

21  continued prosecution.  The amended settlements neither extinguish nor prejudice the value of

22  their claims in the slightest—indeed, as further described below, they enhance the value of the

23

24

25

26  [16] ECF Nos. 5591, 5592.

27  [17] Opp. at 6-7.

28

1    ORS/NRS claims.  Thus, there was no conflict of interest and no harm done to the interests of the

2    ORS/NRS by IPP Counsel's negotiation of reduced settlement amounts for the 22 States.

3              **D.  The IPP And ORS/NRS Claims Need Not Be Settled Simultaneously**

4              Relatedly, the ORS/NRS Plaintiffs also criticize what they term "the piecemeal settlement"

5    of the nationwide class's claims, suggesting that IPPs cannot settle on behalf of the 22 States

6    without the ORS/NRS. Opp. at 4, 7.  Other than sweeping pronouncements that a partial

7    settlement would be "unprecedented in over 50 years of class action jurisprudence" (*id*. at 7), and

8    vague assertions that Rule 54(b) will prevent the entry of final judgment on the claims of the 22

9    States, ORS/NRS Plaintiffs again cite no authority for their position.

10             On the contrary, there is no requirement that the claims of the 22 States and the ORS/NRS

11   Plaintiffs be settled simultaneously as part of a global settlement.  Such a requirement would give

12   the ORS/NRS Plaintiffs and their counsel veto power over the settlement rights of class members

13   in the 22 States, and would prejudice the 22 States by forcing them to litigate or stay their case

14   indefinitely while the ORS/NRS attempt to catch up.

15             Two recent cases demonstrate that subclasses within the same case can settle separately.

16   In *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 827 F.3d 223 (2d

17   Cir. 2016), the Second Circuit vacated the district court's approval of a settlement where the

18   settlement class was comprised of a damages subclass and an injunctive relief subclass, and the

19   two classes were represented by the same counsel.  *Id.* at 227, 229.  On remand, the district court

20   appointed separate counsel for the Rule 23(b)(3) damages class and the Rule 23(b)(2) injunctive

21   relief class.  Thereafter, counsel for the two classes filed two separate complaints and the Rule

22   23(b)(3) damages class subsequently re-negotiated amended settlements with the defendants.[18]

23   The Rule 23(b)(2) class continues to litigate.

24   _____

25   [18] *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D.

26   11, 23 (E.D.N.Y. 2019) (order granting preliminary approval of amended settlements between
     Rule 23(b)(3) class and defendants, and describing proceedings in district court after remand).

27

1    Similarly, in *Petersen v. Costco Wholesale Co. Inc.*, No. SA CV 13-1292-DOC(JCGx), the

2  Court granted preliminary approval to the settlement of a California subclass settlement agreement

3  (ECF No. 402), while eight other state subclasses with claims against the same defendants based

4  on the same conduct (but facing different defenses) continued to litigate. *See* 2019 WL 1715485,

5  at *2 (C.D. Cal. Jan. 17, 2019).  There is no reason why this case cannot proceed in the same

6  manner as *In re Payment Card* and *Petersen*.

7    Nor does Rule 54(b) prevent the settlement of the 22 States' claims from becoming final,

8  as ORS/NRS Plaintiffs suggest.  Under FRCP 23(c)(5), "a class may be divided into subclasses

9  that are each treated as a class under [Rule 23]."  Since each subclass must independently meet the

10  requirements of Rule 23 in order to be maintained as a class action, it is consistent with the spirit

11  of the rule to treat each subclass action as a separate action for all purposes.  *See Betts v. Reliable*

12  *Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981) ("As a practical matter, the litigation

13  as to each subclass is treated as a separate law suit [sic]") (citing *In re Gen. Motors Corp. Engine*

14  *Interchange Litig.*, 594 F.2d 1106, 1118 n.11 (7th Cir. 1979)).[19]

15    Here, the settlement class is comprised of the 22 Indirect Purchaser State Classes, and the

16  releases in the amended settlements are directly linked to the relief sought by the 22 certified

17

---

18  [19] *In re Gen. Motors*, cited by ORS/NRS, supports treating subclasses as separate actions.  As the

19  Seventh Circuit explained:

20    There is considerable doubt whether Fed. R. Civ. P. 54(b) was intended to
       govern the situation when two distinct subclasses are created from a single

21    class and one subclass' right to recover under a settlement neither affects
       nor is affected by the merits of the other subclass' claim. Aside from the

22    difficulty of construing "multiple parties" to encompass separate subclasses,
       the settlement of one subclass' suit arguably should be treated as a separate

23    lawsuit outside the ambit of Rule 54(b). . . . Each subclass must
       independently meet the requirements of Rule 23 in order to be maintained

24    as a class action, 7A C. Wright & A. Miller, Federal Practice and Procedure
       s 1790 at 191-92 (1972), and therefore it seems consistent with the spirit of

25    the rules to treat each subclass action as a separate action for all purposes.

26  594 F.2d at 1117 n.11.

27

28

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION PURSUANT TO
NINTH CIRCUIT MANDATE TO RECONSIDER AND AMEND FINAL APPROVAL ORDER, FINAL
JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)

classes during the litigation.  Indeed, there is little doubt that, had the 22 litigation-certified classes proceeded to trial and verdict, an appealable judgment would have been entered.  Because the settlement class at issue here is properly treated as a "separate action for all purposes," Rule 54(b) should not apply.

Even assuming, *arguendo*, that Rule 54(b) does apply, the Court may address it by directing entry of judgment and determining there is "no just reason for delay."  *Pauma Band of Luiseno Mission Indians of the Pauma & Yuima Reservation v. California*, 343 F. Supp. 3d 952, 986 (S.D. Cal. 2018).  Because the 22 States' claims were proceeding independently at the time the settlements were entered in 2015, and the propriety of the amended settlements can be finally resolved on appeal, there are no judicial administrative interests that weigh against entering judgment here.  *See id.* at 987.  Additionally, given that the amended settlements will finally resolve all claims of the settlement class against seven defendants and facilitate distribution of settlements funds forthwith, and given the length of time these cases have been pending, there is clearly no just reason for further delay.

### E.  The ORS/NRS Plaintiffs' Authorities Are Inapposite

The ORS/NRS Plaintiffs' authorities are inapposite.  Most of them involve settlements in which the settlement attempted to resolve and release claims alleged in competing class actions.[20] But here, the amended settlements do no such thing; ORS/NRS Plaintiffs remain free to pursue the claims of the ORS/NRS purchasers, and may settle these claims (or not) at *whatever* value they determine (with this Court's approval).

---

[20] *See, e.g.*, *Smith v. Sprint Communications Co., LP*, 387 F.3d 612 (7th Cir. 2004); *In re Bank Am. Wage & Hour Empl. Litig.*, 740 F. Supp. 2d 1207 (D. Kan. 2010).  In *Pearl v. Allied Corp.*, 102 F.R.D. 921, 924 (E.D. Pa. 1984), the court denied class certification because class counsel had abandoned several claims and "the plaintiffs may find themselves precluded by the doctrine of *res judicata* from asserting those claims in subsequent actions."  Since the Amendments specifically provide that the claims of the ORS/NRS are not released, this case is likewise inapposite.

1    *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106 (7th Cir. 1979), is a

2    40-year old, out-of-circuit case involving a settlement that resolved class claims by the Illinois

3    Attorney General who had <u>not</u> been appointed as class counsel by the court, and who engaged in

4    unauthorized settlement negotiations "in violation of the trial court's pretrial order." *Id.* at 1125-

5    28.  That situation flatly does not exist here.  Here, IPP Counsel engaged in settlement

6    negotiations with the Defendants pursuant to Court Order, *after* the Court's appointment of

7    separate counsel for the ORS/NRS, and the negotiations were mediated by a Magistrate Judge

8    specifically appointed for settlement purposes.

9        In addition, unlike here, the proposed settlement class in *General Motors* was narrower

10   than the certified class and the Attorney General only negotiated a settlement for part of the

11   certified class, yet the settlement obligated the Attorney General to seek settlement of the entire

12   class action.  *Id.* at 1128-29.  In this case, the scope of the amended settlements aligns with the

13   scope of the 22 statewide classes certified during the litigation.  Moreover, *General Motors*

14   expressly holds that any effect of such a settlement on related, non-released claims does not itself

15   justify disapproval of a settlement if the terms of that settlement to the settling class are, as here,

16   fair and reasonable. *Id.* at 1131-32.

17       **F.  The ORS/NRS Plaintiffs Will Benefit Substantially From The Amendments**

18       Finally, far from being prejudiced, the ORS/NRS Plaintiffs and the CRT purchasers they

19   seek to represent will benefit from the Amendments to IPPs' settlements.  As detailed above, they

20   are no longer releasing any claims, and are now free to make any and all available arguments that

21   they have pleaded valid claims.  Moreover, in making those claims, they will benefit substantially

22   from IPPs' successful litigation of the case to date, including, *inter alia* (1) IPPs' briefing, exhibits

23   and expert report in support of class certification, and the order granting class certification of the

24   22 statewide classes; (2) transcripts of hundreds of depositions and the exhibits thereto (including

25   certified translations), as well as designations of those transcripts prepared for trial; (3) fully

26   briefed oppositions to motions for summary judgment containing analysis of the best evidence in

27   the case; (4) IPPs' damage study that can be easily adapted to present damages for the ORS/NRS

28

1  Plaintiffs; and (5) a list of trial exhibits culled from millions of pages of documents, as well as
2  other trial materials.

3       Yet, this is not enough.  The ORS/NRS Plaintiffs not only want the benefits of all of the
4  work performed by the IPPs and their counsel, they also want IPPs and their counsel to stay in the
5  case and negotiate a settlement on their behalf.  This directly contradicts the ORS/NRS counsel's
6  position for the past four years; namely, that the IPPs and IPP Counsel are conflicted or are
7  otherwise inadequate to represent the ORS/NRS or negotiate on their behalf.[21]

8       In sum, having received the separate representation the ORS/NRS Plaintiffs have been
9  demanding, as well as the ability to direct their own litigation and settlement strategy, they do not
10  want it.  However, the ORS/NRS Plaintiffs cannot turn back the clock; rather, they need to step
11  up, litigate their claims, and seize the opportunity that has been given to them.

12  **III.  THE NINTH CIRCUIT'S MANDATE GIVES THIS COURT BROAD**
13       **DISCRETION TO RECONSIDER SETTLEMENT APPROVAL AND FEES**

14       **A.  This Court Has Broad Discretion To Reconsider And Amend Its Prior Orders**

15       The ORS/NRS Plaintiffs assert that this Court cannot consider IPP's motion to reconsider
16  and amend the Final Approval Order, Final Judgment and Fee Order in light of the Amendments
17  to the settlements because this Court is barred from doing so by the Ninth Circuit's mandate.  Opp.
18  at 3.  The ORS/NRS Plaintiffs argue—without explanation, reasoning or citation to authority—
19  that because the Orders appealed from "resolved the entire case . . . [a] reconsideration of those
20  Orders would require the Court either to approve them, thereby placing them back in the record as
21  originally entered, or vacate them in their entirety, allowing the case to proceed forward to trial or
22  to new settlements."  *Id.*  ORS/NRS Plaintiffs' extreme, inflexible and mechanical application of
23  the "rule of mandate" is contrary to black-letter law, as recognized by numerous controlling
24  decisions.

25  _____

26  [21] *See, e.g.*, ECF No. 5416 at 19-32 (advocating that the Court vacate settlement approval, appoint
    separate counsel for the ORS/NRS, and set the case for trial).
27

28
**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION PURSUANT TO**
**NINTH CIRCUIT MANDATE TO RECONSIDER AND AMEND FINAL APPROVAL ORDER, FINAL**
**JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)**

1    The "rule of mandate" requires only that the district court on remand not take any action

2    inconsistent with a holding "actually decided" by the appellate court.  *See Hall v. City of Los*

3    *Angeles,* 697 F.3d 1059, 1067 (9th Cir. 2012) ("the rule of mandate allows a lower court to decide

4    anything not foreclosed by the mandate").[22]  Thus, "[w]hile a mandate is controlling as to matters

5    within its compass, on the remand a lower court is free as to other issues." *Nguyen v. U.S.*, 792

6    F.2d 1500, 1502 (9th Cir. 1986) (allowing parties on remand to "file additional pleadings, [and]

7    vary or expand the issues"); *U.S. ex rel. Lujan v. Hughes Aircraft Co*., 243 F.3d 1181, 1186-87

8    (9th Cir. 2001) (under rule of mandate a court in a subsequent proceeding is free to consider any

9    matter not expressly or impliedly decided by the previous disposition).

10    In *Gallagher v. San Diego Unified Port Dist.,* 14 F. Supp. 3d 1380, 1389 (S.D. Cal. 2014),

11    the district court emphasized the need for flexibility on remand:

12    > Importantly though, there is some flexibility with respect to the law of the case and
13    > rule of mandate. Indeed, the Ninth Circuit "cases make clear that the rule of
> mandate is designed to permit flexibility where necessary, *not* to prohibit it." *U.S.
14    > v. Kellington,* 217 F.3d 1084, 1095 n. 12 (9th Cir. 2000) (emphasis added). The
> Ninth Circuit likewise recognizes that "[l]aw of the case should not be applied
15    > woodenly in a way inconsistent with substantial justice." *U.S. v. Miller,* 822 F.2d
> 828, 832–33 (9th Cir. 1987); *see also Yankee Atomic Electric Co. v. U.S.,* 679 F.3d
16    > 1354, 1360 (Fed. Cir. 2012) ("An appellate mandate does not turn a district judge
> into a robot, mechanically carrying out orders that become inappropriate in light of
17    > subsequent factual discoveries or changes in the law.").

18    The *Gallagher* court further noted that "a court has the *discretion* to depart from the law of the

19    case if: (1) The first decision was clearly erroneous; (2) an intervening change in the law has

20    occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances

21    exist; or (5) a manifest injustice would otherwise result." *Id.* (emphasis in original).[23]

22    _____

23    [22] *See also B-K Lighting, Inc. v. Vision3 Lighting,* 930 F. Supp. 2d 1102, 1114 (C.D. Cal. 2013)
("The mandate rule provides that a district court is foreclosed from considering further issues
24    actually decided on appeal."); *New Breed Leasing Corp. v. National Labor Relations Bd.*, 111 F3d
1460, 1467 (9th Cir. 1997) ("The law of the case doctrine applies only to issues considered and
25    *actually decided* by the first panel.") (Emphasis in original).

26    [23] *See also U.S. v. Kellington*, 217 F.3d 1084, 1092-93 (9th Cir. 2000) ("According to the rule of
mandate, although lower courts are obliged to execute the terms of a mandate, they are free as to
27    (footnote continued)

28

1    In this case, the Amendments constitute a change in circumstances.  Moreover, neither the

2 language of the Ninth Circuit mandate nor its order explaining the remand of "this case" limits this

3 Court's discretion to "reconsider" and amend the orders relating to settlement approval in light of

4 the Amendments.[24]  The Mandate itself is unqualified, simply remanding the case to this Court.[25]

5 The language from the Ninth Circuit's Order that ORS/NRS Plaintiffs quote undermines rather

6 than supports their argument.  It simply instructs this Court "to reconsider" the relevant orders;

7 there is no indication that this Court is limited to the "all or nothing" options insisted upon by the

8 ORS/NRS Plaintiffs.[26]

9    In short, the Amendments to the settlements and IPPs' motion to reconsider and amend the

10 Final Orders are fully consistent with the spirit of the Ninth Circuit's order and mandate—which

11 specifically did not vacate the Final Orders in order to allow for a mediated solution.[27]  It is

12 ORS/NRS Plaintiffs' inflexible "all or nothing" approach that is inconsistent with both the

13 expressions and conduct of the Ninth Circuit, which clearly evince a willingness to provide the

14

15 ─────────────────────

16 'anything not foreclosed by the mandate,' and, under certain circumstances, '[a]n order issued
   after remand may deviate from the mandate . . . if it is not counter to the spirit of the circuit court's
17 decision . . . .'" (internal citations omitted).

18 [24] ECF No. 5404 (Ninth Circuit mandate); Order, ECF No. 239, *IPPs, et al. v. Toshiba Corp., et al.,* No. 16-16368 (9th Cir. Feb. 13, 2019) ("Remand Order") at 11, 12.

19 [25] ECF No. 5404.

20 [26] Indeed, the entire premise of their argument—that "[t]he Orders to be reconsidered resolved the
   entire case" (Opp. at 3)—is wrong.  They ignore (i) the Chunghwa and LG settlements finally
21 approved in 2013 and 2014, respectively, and not subject to the instant appeal and remand; (ii) the
   pending settlement with Mitsubishi Electric Corp.; and (iii) the ongoing litigation against the Irico
22 defendants.  Thus, the orders on appeal did not "resolve[] the entire case."  Accordingly,
   reconsidering and amending the Final Orders as requested by IPPs is not inconsistent with those
23 Final Orders.  Finally, amending the Final Orders will finally resolve the case as to class members
24 in the 22 States to whom those settlements apply.

25 [27] *See* Remand Order at 12; *see also, e.g.¸* June 6, 2019 Hearing Transcript, 10:20-22; 27:14-28:18
   (explaining that the Ninth Circuit "remanded the case . . . so that the District Court may reconsider
26 its approval of the settlement" and recognizing that the Ninth Circuit had not vacated the Court's
   final approval order).

27

28                                              13                          MDL NO. 1917

opportunity to preserve the settlements.[28]  IPPs' motion to reconsider and amend the Final Orders is not barred by the Ninth Circuit's mandate.

### B.  Vacating The Court's Prior Orders And Restarting The Rule 23 Approval Process Would Be Wasteful And Unnecessary

The ORS/NRS Plaintiffs also incorrectly contend that the "two-step" settlement approval process of preliminary and final approval "must be adhered to if changes are to be made to the certified settlement class (including decertification) or to the settlements themselves."  Opp. at 4. Again, they cite no authority for this statement.  This is unsurprising given that numerous cases approve modifications to class settlements without restarting the Rule 23 approval process— particularly where, as here, the modification narrows the settlement class and the release.[29] ORS/NRS Plaintiffs also ignore that this Court has discretion under the Ninth Circuit's broad mandate to reconsider and amend its prior orders rather than vacating them and starting over, as explained above.

---

[28] During the Ninth Circuit oral argument, Judge Clifton noted that Defendants "could solve the problem" by waiving the releases for Massachusetts, Missouri and New Hampshire. *See* ECF No. 5335-1 (Hearing Tr.) at 61:15-19.  That is precisely what Defendants have done.  In addition, rather than vacate the Final Orders, as demanded by appellants, the panel ordered the parties to mediation.  *See* Appeal No. 16-16368, ECF No. 210.

[29] *See, e.g., Giroux v. Essex Property Trust, Inc.*, Case No. 16-cv-01722-HSG, 2019 WL 2106587, at *2 (N.D. Cal. May 14, 2019) (approving stipulated amendments to class settlement after final approval and incorporating "prior analysis under Rules 23(a) and (b)" by reference because "no facts that would affect these requirements have changed since the Court preliminarily approved the class. . ."); *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *4, 13-15 (N.D. Cal. Aug. 28, 2013) (granting final approval where the parties stipulated to several modifications of the settlements and the release after preliminary approval and notice; parties not required to restart Rule 23 approval process); *Zamora v. Ryder Integrated Logistics, Inc.*, No. 13CV2679-CAB BGS, 2014 WL 9872803, at *3 (S.D. Cal. Dec. 23, 2014) (granting final approval to a settlement including the release without requiring that the parties restart the approval process as the modifications did not "broaden the release being provided"); *Belew v. Brink's, Inc.*, 721 Fed. Appx. 734, 735 (9th Cir. 2018) (ordering district court to remove certain claims from the settlement class and the release and otherwise affirming approval of the settlement; on remand, the district court severed the claims from the settlement's release and finally approved the settlement without further approval proceedings under Rule 23(e) (*see* Order Spreading Mandate dated July 6, 2018, ECF No. 60, Case No. 3:14-cv-01748-JAH-JLB (S.D. Cal.)).

1   Repeating the full Rule 23 review and approval process would be wasteful and

2   unnecessary here given that the amendments to the settlements are minor, class members are not

3   adversely affected, and the Court's previous findings on settlement class certification and

4   settlement approval for the 22 States are unaffected by those amendments.[30]  ORS/NRS Plaintiffs'

5   bare assertion that the "'amended' settlements bear little to no resemblance to the previously-

6   approved settlements," (Opp. at 4) fails to rebut IPPs' comprehensive showing to the contrary.

7   In any event, IPPs are in fact proposing a two-step procedure for reconsideration and

8   amendment of the Court's Final Orders, and it differs only slightly from the procedure demanded

9   by the ORS/NRS Plaintiffs (*i.e.* preliminary approval, full notice, and final approval after a Rule

10  23(e) hearing).  Moreover, IPPs' opening brief addressed all of the factors necessary for

11  preliminary and final approval.  *See* IPP Opening Br., 14-25.

12  There will still be a two-step procedure, notice will be provided to those whose legal rights

13  are potentially affected by the amendments, and the Court will still consider the relevant factors

14  and conduct a final hearing.  Thus, there is no basis for ORS/NRS Plaintiffs' assertion that IPPs

15  are attempting to "sidestep Rule 23's mandatory review."  Opp. at 4.  IPPs merely seek to avoid

16  briefing matters that have already been decided and are not impacted by the Amendments, and

17  avoid unnecessarily prolonging this "over-litigated" case.[31]

18  **C.  The Court Has Jurisdiction Over The Fee Order**

19  ORS/NRS Plaintiffs argue that this Court lacks jurisdiction to consider IPP's motion as it

20  relates to the Fee Order because amending the Fee Order (in order to effectuate the Amendments)

21  would be "in direct conflict" with this Court's order allocating the fee award among counsel (ECF

22  No. 5122), which is still on appeal.  Opp. at 9-10.  As the ORS/NRS Plaintiffs recognize, however,

23

---

24  [30] *See* IPPs' Opening Br. at 14-25 (addressing each of the factors relevant to class certification
25  under Rule 23(a) and Rule 23(b)(3), as well as the factors relevant to settlement approval under
    amended Rule 23(e)).

26  [31] *See* August 8, 2019 CMC Tr., 6:15-16 ("This case has been over-litigated, as I've said before.").

27

1    the Fee Order is wholly separate from the fee allocation order.[32]  The Ninth Circuit remanded the

2    consolidated appeals (addressing both the approval of the settlements and the aggregate fee award)

3    to this Court in February 2019.[33]  Thus, while the appeals from the fee allocation order are still

4    pending, the appeals from the wholly separate Fee Order were remanded to this Court with the

5    appeals from the settlement approval, and are therefore subject to this Court's jurisdiction.

6        Reconsidering (and amending) the Fee Order is not "inconsistent with" the order allocating

7    fees, and cannot limit the Ninth Circuit's mandate—which remanded the Fee Order for

8    "reconsideration" to this Court.  If this Court does amend the Fee Order, this will likely render

9    moot the pending appeals of the fee allocation order.  But rendering the fee allocation appeals

10   moot does not in any way alter or interfere with the jurisdiction of the appellate court.  The Ninth

11   Circuit will determine whether the appeals of the fee allocation award are mooted.

12       Finally, ORS/NRS Plaintiffs' assertion that IPP Counsel are somehow attempting to avoid

13   a complete examination of their attorney fee request strains credulity.  IPP Counsel's original

14   motion for attorneys' fees was subjected to multiple rounds of briefing spanning a seven-month

15   period, and their time records were thoroughly examined by Special Master Quinn, adverse parties

16   and this Court.  Recognizing this, the Court specifically stated it would only "solicit briefing

17   regarding the appropriate percentage of any settlement . . . to be awarded to class counsel as

18   fees[,]" and not regarding other aspects of the fee award.[34]

19

20

---

21   [32] There were eleven separate appeals taken from this Court's Final Approval Order, Final
22   Judgment and Fee Order. *See* ECF Nos. 4741, 4743, 4744, 4745, 4746, 4747, 4749, 4751, 4753,
     4756, 4757.  Each appeal was separately docketed in the Court of Appeals and subsequently
23   consolidated.  *See* Appeal No. 16-16368, ECF No. 41.  Approximately seven months after the
     original appeals, three appeals were taken from this Court's order allocating the attorney fee award
24   among counsel. *See* ECF Nos. 5129, 5131, 5132.  These three appeals were separately docketed
25   and subsequently consolidated with each other, and they remain pending in the Court of Appeals.

     [33] *See* Remand Order.
26
     [34] April 9, 2019 Hearing Tr., 7:22 – 8:2.
27

28                                       16                          MDL NO. 1917
     INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION PURSUANT TO
     NINTH CIRCUIT MANDATE TO RECONSIDER AND AMEND FINAL APPROVAL ORDER, FINAL
     JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)

1   IPP Counsel are now requesting almost 20% less than the Court previously awarded to

2   them, amounting to 23.66% of the new total settlement fund.  Consistent with this Court's

3   statements, IPPs expected the appropriateness of the requested percentage-of-the-fund to be

4   litigated as part of this motion.  Yet, the ORS/NRS Plaintiffs fail to make any argument in

5   opposition to the requested percentage.  They merely assert—without examples or support—that

6   "certain aspects of the prior fee award" should be reconsidered "as well."  Opp. at 9.  But they

7   never say which aspects, much less explain why they should be reconsidered.  This motion for

8   reconsideration is the ORS/NRS Plaintiffs' opportunity to argue which aspects of the Fee Order

9   should be reconsidered.  Thus, in addition to lacking standing to object to IPP Counsel's fee

10   award, they have also waived any right they may have had to contest the fee award.

## IV.   ORS/NRS PLAINTIFFS FAIL TO REBUT IPPS' SHOWING THAT FULL NOTICE UNDER RULE 23(e) IS NOT NECESSARY

13   IPPs' opening brief cited numerous authorities in support of their position that notice of the

14   Amendments under Fed. R. Civ. Pro. 23(e) is not required because neither narrowing the

15   settlement class nor reducing the attorneys' fee award adversely affects class members.[35]

16   Nevertheless, IPPs propose a limited notice to claimants and those who previously objected to or

17   opted out of the settlements.

18   In opposing IPPs' notice proposal, ORS/NRS Plaintiffs ignore IPPs' authorities entirely

19   much less make any effort to distinguish them.  Rather, they rely upon inapposite authorities to

20   assert—incorrectly—that by narrowing the settlement class, IPPs are "taking away [ORS/NRS]

21   class member's [sic] long-pending claims without notice," and that this is a "material alteration" to

22   the settlement requiring notice to purchasers of CRTs in the ORS/NRS.  Opp. at 10.

23   Rule 23(e) and subsection (1) provide that "Notice to the Class" must be provided where

24   "the claims, issues or defenses of . . . a class proposed to be certified for purposes of settlement—

25   may be settled, voluntarily dismissed or compromised . . . [,]" and that "[t]he court must direct

---

[35] IPP Opening Brief at 25-30.

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION PURSUANT TO
NINTH CIRCUIT MANDATE TO RECONSIDER AND AMEND FINAL APPROVAL ORDER, FINAL
JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)

1  notice in a reasonable manner to *all class members who would be bound by the proposal . . . .*"

2  Rule 23(e)(1) (emphasis added).  "Consistent with Rule 23's concern for the legal rights of absent

3  class members, then, the touchstone for Rule 23(e) is whether the proposal would bind class

4  members."[36]

5       As already explained, the Amendments to the settlements do not bind ORS/NRS

6  purchasers or "take away" their claims; their claims are not "settled, voluntarily dismissed, or

7  compromised" by the amended settlements, as contemplated by Rule 23(e).  The Amendments

8  merely narrow the settlement class and the scope of the release to the 22 States, leaving the

9  ORS/NRS Plaintiffs and their Court-appointed counsel free to allege their claims in an amended or

10 new complaint (which they have now done).  Accordingly, there is no reason to require notice of

11 the Amendments to purchasers in the ORS/NRS under Rule 23(e)(1).

12      Moreover, the Ninth Circuit has held that where, as here, the settlement class and the scope

13 of the release are narrowed, new notice is not required.  *See Shaffer v. Continental Cas. Co.*, 362

14 Fed. Appx. 627, 631 (9th Cir. 2010) ("Although changes were made to the release after potential

15 class members received the notice, the changes did not render the notice inadequate because they

16 narrowed the scope of the release.").[37]  The ORS/NRS Plaintiffs fail to address these authorities or

17 otherwise explain why a different standard should apply here.  None of their authorities even

18 involve a narrowed release much less support ORS/NRS Plaintiffs' position that non-class

19 members must receive notice of the narrowed release.[38]

20  _____

21 [36] *Keepseagle v. Vilsack*, 102 F. Supp. 3d 306, 312 (D.D.C. 2015).

22 [37] *See also Hendricks v. Starkist Co.*, No. 13-cv-00729, 2016 WL 5462423, at *4 (N.D. Cal. Sept.
23 29, 2016), *aff'd sub nom Hendricks v. Ference*, 754 Fed. Appx. 510 (9th Cir. 2018) ("Because the
   parties have removed the language discharging federal and state antitrust claims from the release
24 and because the latest release narrows the scope of claims discharged, there is no longer a risk that
   class members have relinquished rights without knowledge of new claims. Thus, additional notice
25 was not required.").

26 [38] *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) (Opp. at 10) merely stands for the
   general proposition that adequate notice *to class members* is required. *Id.* at 1025.  The ORS/NRS
27 are not class members.  Moreover, *Hanlon* addresses neither supplemental notice of an amended
   (footnote continued)

28

1       The ORS/NRS Plaintiffs' reliance upon *Keepseagle,* 102 F. Supp. 3d at 314 (Opp. at 10) is

2   also misplaced because that case supports IPPs' limited notice proposal.  *Keepseagle* holds that

3   "an amendment [to a class settlement] requires supplemental notice only when 'it would have a

4   material adverse effect on the rights of class members.'" *Id.* at 313 (collecting cases); *see also id.*

5   at 314 ("[A]n amendment that neither adds to the res judicata effect of a judgment by expanding

6   the scope of covered claims nor otherwise limits any legal right held by a class member need not

7   be subject to a renewed Rule 23(e) process.").  *Keepseagle* concludes that although supplemental

8   notice was not required in that case because the settlement modification did not affect class

9   members' legal rights, a limited notice was appropriate in order to "fairly conduct the action," and

10  keep class members fully informed about the pending proceedings.  *Id.* at 316.  The same is true

11  here.

12      Finally, IPPs note that each of the seven settling Defendants has served a comprehensive

13  notice of the Amendments to the settlements on the Attorneys General of all 50 States—including

14  the Attorneys General of the ORS/NRS—pursuant to the Class Action Fairness Act, 28 U.S.C. §

15  1715.[39]

16      In sum, ORS/NRS Plaintiffs fail to show that narrowing the settlement class and the

17  release to include only the claims of class members in the 22 States has a "material adverse effect"

18  on purchasers in the ORS/NRS.  Full Rule 23(e) notice to purchasers in the ORS/NRS, whose

19  claims are not being settled or otherwise resolved, is therefore not required.

20

21  —————————————————

22  settlement nor a narrowed release.  Similarly, *Pearson v. Target Corp.,* 893 F.3d 980, 986 (7th
    Cir. 2018), does not involve supplemental notice of a narrowed release.  *Pearson* involved a

23  stipulated "Post-Appeal Judgment" that "constructively revised the settlement agreement[,]"
    because the court lost jurisdiction to "enforce the injunctive relief embodied in the settlement

24  agreement or resolve issues with common fund distributions."  *Id.*  The 7th Circuit concluded that
    this was a material alteration to a class settlement that required "a new round of notice *to the class*

25  and a new Rule 23(e) hearing." *Id.* (emphasis added) (citing *In re Baby Prods. Antitrust Litig.*, 708
    F.3d 163, 175 & n.10 (3d Cir. 2013)).  Thus, *Pearson* is also inapposite.

26  [39] ECF Nos. 5601, 5604, 5606.

27

28                                                    19
    INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION PURSUANT TO
    NINTH CIRCUIT MANDATE TO RECONSIDER AND AMEND FINAL APPROVAL ORDER, FINAL
    JUDGMENT AND FEE ORDER (ECF Nos. 4712, 4717, 4740)

1    **V.     THE PARTIES SHOULD MEDIATE LATE CLAIMS**

2         Three third-party claims aggregators (Spectrum Settlement Recovery, LLC ("Spectrum"),

3    Crowell & Moring ("Crowell") and Financial Recovery Services, Inc. ("FRS")) have raised issues

4    regarding the potential payment of late claims.[40]  These claims aggregators represent a very high

5    percentage of the total value of the claims in this case.  Spectrum and Crowell support the

6    amended settlements.  FRS has not explicitly supported the amended settlements, but appears to

7    favor them.

8         Lead Counsel proposes that the parties attempt to resolve the late claims issues in

9    mediation and report back to the Court on the progress of their discussions.  If they are not able to

10   resolve these issues, then the Court should set a schedule for further submissions and decide the

11   matter.

12                              **CONCLUSION**

13         For all the foregoing reasons, the Court should reconsider and approve the amended

14   settlements under Rule 23(e); order notice to be given; and amend the Final Approval Order, the

15   Final Judgment, and the Fee Order, after a final hearing.

16

17   Dated: October 7, 2019              Respectfully submitted,

18                                By:   */s/ Mario N. Alioto*

19                                      MARIO N. ALIOTO (56433)
                                        LAUREN C. CAPURRO (241151)
20                                      **TRUMP, ALIOTO, TRUMP &
                                        PRESCOTT, LLP**
21                                      2280 Union Street
22                                      San Francisco, California 94123
                                        Telephone: (415) 563-7200
23                                      Facsimile: (415) 346-0679

24                                      ***Lead Counsel for the Indirect
25                                      Purchaser Plaintiffs for the 22 States***

26   [40] ECF Nos. 5595, 5608, 5609.

27

28                                        20