

Kassra P. Nassiri
NASSIRI & JUNG LLP
1700 Montgomery Street, Suite 207
San Francisco, CA 94111

(t) 415 762 3100 | (f) 415 534 3200
kass@njfirm.com | www.njfirm.com

October 9, 2019

*Via E-Filing*

Honorable Judge Jon S. Tigar
U.S. District Court for the Northern District of California, Oakland Courthouse
1301 Clay Street
Oakland, California 94612

**Re:   In re: Cathode Ray Tube (CRT) Antitrust Litigation, Indirect Purchaser Actions MDL No. 1917, Case No. C-07-5944-JST (N.D. Cal.)**

Dear Judge Tigar:

      Spectrum Settlement Recovery, LLC ("Spectrum") writes in response to Indirect Purchaser Plaintiffs' Reply in Support of Motion Pursuant to Ninth Circuit Mandate to Reconsider and Amend Final Approval Order Final Judgement and Fee Order (the "Reply"), filed on October 7, 2019. (ECF No. 5616.)

      In the Reply (at 20), IPP Counsel ". . . proposes that the parties attempt to resolve the late claims issues in mediation and report back to the Court on the progress of their discussions. If they are not able to resolve these issues, then the Court should set a schedule for further submissions and decide the matter."

      Spectrum restates its support for the Amendments and is in favor of anything likely to expedite payment to claimants. Nonetheless, and notwithstanding that Spectrum will adhere to any guidance from the Court, Spectrum is skeptical that mediation will be productive.

      When ordered to mediation by this Court in 2018, Spectrum complied not only in form but in spirit as well. After providing the mediator with a confidential mediation statement (which was later shared with the other participants as a show of good faith after Financial Recovery Services ("FRS") inadvertently shared its mediation statement with Spectrum), Spectrum participated in a more than 10-hour long session during which it advanced a series of proposed compromises. As IPP Counsel notes, the three interested parties attending the 2018 mediation (Spectrum, FRS and Crowell & Moring, LLP) represent more than 80% of all claims when measured by units filed. Ultimately, while Spectrum's proposed compromises gained some support from the interested parties, none garnered unanimity and, after a long, hot day, the mediation was abandoned.

*In re: Cathode Ray Tube (CRT) Antitrust Litig., Indirect Purchaser Actions*
October 9, 2019
Page 2 of 3

Nothing has transpired in the interim that suggests that the prior intransigence has changed. Spectrum has been in ongoing contact with IPP Counsel and with the other interested parties, both directly and through IPP Counsel. As recently as last week, Spectrum offered a new, rational approach to resolving the issue, but it was rejected out of hand by FRS. The only idea "floating in the air" now is no comprise at all, as it would allow substantially all late claims to be admitted without further review or consideration.

If the Court is inclined to order mediation, it is Spectrum's view that this would require additional groundwork for it to be a useful exercise. There is a broad expanse of information missing from the record which is required—not just by Spectrum but by all parties—in order to proceed in a productive fashion. Specifically, Spectrum asks that concurrent with any mediation, the Settlement Administrator should provide the parties with the following information:[1]

1. An updated claims report containing data on late claims to date, ideally broken down by month. A full understanding of the scope and character of late claims would be critical to any resolution.

2. A detailed explanation from the Settlement Administrator as to why in its declaration submitted with the Motion to Amend (ECF No. 5587-2), there was such a profound drop in the number of approved weighted CRT units—15%—from the previous report provided by the Settlement Administrator in connection with the 2018 mediation. Notably, timely claims decreased by 10%, which alone is surprising this late into the process, and late claims were reduced by a massive 35%. This change may be indicative of the problems associated with late claims and the further confusion that would likely ensue if an additional filing period were ordered. Understanding the reason for these drastic changes may prove critical in an evaluation of excusable neglect (as was applied in both *In re Elec. Carbon Prods. Antitrust Litig.*, 622 F. Supp. 2d 144 (D.N.J. 2007) and *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315 (3d Cir. 2001)) since misconduct (including but not limited to duplicate claims, fraudulent submissions, etc.) might render a claimant unworthy of the Court's exercise of its equitable powers based on the unclean hands doctrine.

3. A clarification as to when the claim form was removed from the settlement website. FRS has contended that the claim form remained available until November 2017. Spectrum believes this is incorrect and has no understanding of the basis for FRS's claim. Based on Spectrum's research and its recollections of what happened in real-time, the Settlement Administrator took down the claim form while it updated the settlement website to say that "Claim forms are no longer being accepted." Spectrum believes this occurred not in

---

[1] Spectrum notes that this request to produce relevant data closely mirrors its approach to the 2018 mediation. At that time, Spectrum requested that the mediating parties receive an updated claims report containing additional data on late claims, and a limited report was provided by the Settlement Administrator in connection with the mediation. While that report was not as fulsome as Spectrum would have liked, it played a central role in the discussions and whatever progress was made towards a negotiated resolution.

*In re: Cathode Ray Tube (CRT) Antitrust Litig., Indirect Purchaser Actions*
October 9, 2019
Page 3 of 3

    November 2017 but rather no later than February 2017, and more likely in late 2016. Spectrum posits that a clarification of this objective fact is another important point of information which the parties will rely upon in reaching any resolution.

    Unlike in 2018, when Spectrum believed that consideration of late claims was premature and inappropriate, there does seem to be a consensus now that the matter is ripe for resolution, making it is all the more important that any mediation is conducted with a complete set of relevant facts. Given the possibility that the mediating parties will not reach a resolution, and the importance of having a final determination from this Court (whether informed by consensual resolution at mediation or by motion practice should the mediation fail) that coincides with any final approval order, if there is a mediation, it should be expedited. Spectrum believes that the above-referenced data could and should be provided by the Settlement Administrator, mediation statements drafted, and a mediation conducted before Thanksgiving. By moving forward quickly, the issue of late claims could remain on track with the Court's consideration of the approval of the Amendments, regardless of the outcome of the mediation.

    As discussed, while Spectrum supports a prompt, fair conclusion of the late claims issue, it remains dubious that mediation will advance that goal. However, should the Court see merit in having the parties come together to see if they can reach agreement on a proposed resolution, Spectrum would be amenable to participate in an expedited manner after having been provided the relevant information referenced above. Should such a mediation prove unsuccessful, Spectrum agrees with IPP Counsel that "[T]he Court should set a schedule for further submissions and decide the matter." (Reply at 20.) Any motion practice would ideally be synchronized with the consideration of the Amendments so that all issues would be queued up for simultaneous appeals, should any be taken.

    Finally, Spectrum restates its request to be heard at the October 23, 2019 hearing to present its arguments regarding why this issue ought to be decided now, and why a hearing schedule synchronized to any hearing on final approval would be appropriate. Spectrum will limit its arguments to the need for the Court to address this issue contemporaneously with the Amendments and will not—unless otherwise requested by the Court—address the legal and factual issues surrounding the adjudication of late claims.

Respectfully submitted,

NASSIRI & JUNG LLP

*/s/ Kassra P. Nassiri*

Kassra P. Nassiri
Attorneys for Spectrum Settlement Recovery, LLC