# Exhibit 5

1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA

2
   - - - - - - - - - - - - - - - - - - -
3  IN RE:                              )
                                       )
4  CATHODE RAY TUBE (CRT)              )
   ANTITRUST LITIGATION                )Master File No.:
5                                      )07-CV-5944-JST
                                       )
6                                      )MDL No. 1917
                                       )
7                                      )
                                       )
8  - - - - - - - - - - - - - - - - - - -

9          VIDEOTAPED DEPOSITION OF ZHANG WENKAI

10                  HIGHLY CONFIDENTIAL

11                      VOLUME I

12                 MONDAY, MARCH 4, 2019

13                  AT:  09.00 a.m.

14                    Taken at:

15                  Kobre & Kim
                   6/F ICBC Tower
16                 3 Garden Road
                      Central
17                  Hong Kong

18

19 Court Reporter:

20 Amanda Tolton
   Accredited Real-time Reporter
21

22

23

24

25

1  documents I have reviewed.  Irico USA is managed or

2  controlled by a person whose name is Liu Feng, L-I-U

3  F-E-N-G.  I was told Mr. Liu Feng is a government

4  officer from Ministry of Finance.  He is the actual

5  person who managed Irico USA.  So, as a result, the

6  Irico Group have no access to manage Irico USA.  As a

7  result, in the end, Irico USA was illegally

8  transferred by Mr. Liu Feng.  And then, in the

9  meantime, Irico Group can do nothing.  That's roughly

10  about the background.

11      Q.  What is the relationship between Irico USA

12  Inc. and Irico Display?

13      A.  They have no relationship at all.

14      Q.  Mr. Zhang, Irico Group was an initial

15  investor in Irico USA, correct?

16      A.  What time frame are you referring to?

17      Q.  1995 and 1996.

18      A.  Are you asking that in between 1995 and 1996

19  whether Irico Group have a -- has a share of Irico

20  USA?

21      Q.  Yes.

22      A.  From the auditing report we have reviewed,

23  the answer is, "yes."

24      Q.  Mr. Zhang, you're familiar with CNEIECC, the

25  China National Electronics Import & Export Caihong

 1   Company, correct?

 2        A.  What do you mean, "familiar"?  In which

 3   regard, when you are saying "familiar"?

 4        Q.  I'm talking about the relationship between

 5   the companies, which is Topic 16 of the 30(b)(6)

 6   notice.

 7            What is CNEIECC's relationship with

 8   Irico Group?

 9        A.  In what time frame were you referring to?

10        Q.  During the class period.

11        A.  During that period, these are the two

12   totally independent legal person or legal institute.

13   CNEIECC's shareholder is hold by the

14   China National Electronics Import & Export Company.

15   And the whole shareholder or the only investors is

16   the people -- the department, State Department of the

17   People's Republic of China.

18            CHECK INTERPRETER:  It should be "state

19   counsel."

20            INTERPRETER:  State counsel.

21            MR. HWU:  Can I ask the interpreter --

22            COURT REPORTER:  You need to use the

23   microphone.

24            VIDEOGRAPHER:  You need to speak up, please.

25            MR. HWU:  Can I ask the interpreter to try

```
 1   that again?  Thank you.

 2       A.  Okay.  And then the only shareholder from --

 3   the only shareholder --

 4           INTERPRETER:  Oh, okay.

 5       A.  The only investor for Irico Group is the

 6   state counsel of People's Republic of China.

 7   BY MR. BENZ:

 8       Q.  Okay.  And what is CNEIECC's relationship

 9   with Display?

10       A.  Just the buyer and the seller.  No, it's

11   not -- no shares involved between these two company.

12       Q.  Mr. Zhang, is it fair to say that Irico USA

13   Inc. was a joint venture by Group and CNEICCC?

14           MR. HWU:  Can I try -- can I ask the

15   interpreter to try again.

16           INTERPRETER:  Sure.

17           VIDEOGRAPHER:  You need to speak up.

18           MR. HWU:  Can I ask the interpreter to

19   render that one more time?

20           INTERPRETER:  Sure.

21           MR. HWU:  Thank you.

22               (Interpreter re-translates.)

23           MR. HWU:  CNEICCC should be (Chinese

24   spoken.)

25           INTERPRETER:  Oh, yes, yes.
```

```
 1              (Interpreter re-translates.)

 2      A.  I'm not aware that Irico USA's joint

 3  venture, because all the knowledge regarding Irico

 4  USA was from the auditing document I have reviewed

 5  and none of those document mentioned this issue.

 6  Because all the knowledge I have obtained were from

 7  those auditing report.

 8              MR. BENZ:  Drew, why don't we take a break,

 9  and then we'll do another stretch before lunch?

10              MR. LUCARELLI:  Okay, sounds good.  Thanks.

11              VIDEOGRAPHER:  One second, please.  This

12  marks the end of Media No. 3 in the deposition of

13  Zhang Wenkai.  Going off the record.  The time is

14  11.19.

15  (11.19 a.m.)

16                   (Break taken.)

17  (11.32 a.m.)

18              VIDEOGRAPHER:  We are back on the record.

19  Here begins Media No. 4 in the deposition of

20  Zhang Wenkai.  The time is 11:32.

21  BY MR. BENZ:

22      Q.  Mr. Zhang, we're still on Topic 16.

23              Do you have an understanding as to why

24  CNEIECC was created?

25      A.  CNEIECC?  I'm not quite sure.  I don't know.
```

 1      A.  So there is no option.  We have to follow

 2  every act stated by the government.

 3  BY MS. FU:

 4      Q.  So with regard to the types of documents

 5  that Irico -- strike that.

 6          Without limiting to the 1995 through 2008

 7  time period, does Irico transfer documents or records

 8  to the government?

 9          MR. LUCARELLI:  Object to form.

10          INTERPRETER:  The witness is asking the

11  interpreter to repeat the question.

12              (Interpreter re-translates.)

13      A.  I'm not quite sure regarding documents or

14  records, but I'm pretty positive sure that we never

15  transfer our financial document to the government, or

16  financial receipts.

17  BY MS. FU:

18      Q.  Without limiting to the 1995 through 2008

19  time period, does Irico transfer its document to any

20  third parties?

21      A.  The same as the previous question:  I'm not

22  quite sure we have ever transferred those documents

23  or record to the third party, but I'm quite sure that

24  we never transferred those original financial record

25  to the third party.

March 04, 2019                                84

1      Q.  So we talk about this retention policy with

2   regard to hard documents for the time period from

3   1995 to 2008.  Does Irico have a document retention

4   policy today?

5      A.  It is the document retention system I

6   mentioned.

7      Q.  Is the document retention policy that Irico

8   has today the same as when it had during 1995 to

9   2008?

10     A.  I don't know.

11     Q.  In connection with this litigation, did

12  Irico issue a litigation hold notice requesting its

13  employees do not destroy any potentially discoverable

14  documents or data?

15     A.  In what time frame are you referring to

16  regarding this notice?

17     Q.  I'm referring to when Irico was served with

18  the plaintiff's complaints.

19     A.  We did not aware that it is something we

20  need to do.

21     Q.  When did Irico know it was a party to this

22  lawsuit?

23     A.  I don't remember the exact date, but maybe

24  around 2007 or 2008.

25     Q.  So is it your testimony today that from

1   around 2007 to 2008 until present Irico never issued

2   a written notice to its employees requesting them not

3   destroy any potentially discovery documents or data?

4           MR. LUCARELLI:  Object to form.

5       A.  Should I answer?  Yes.  Because I involve

6   this -- this case since 2017.  So back in 2007 and

7   2000 -- or 2008, whether we have issued such notice,

8   I have no knowledge about it.  So based on my

9   understanding, after I joined the case from 2017, we

10  never issue an official notice with that regard.

11  However, in various meeting, we did mention something

12  like that.

13  BY MS. FU:

14      Q.  Mr. Zhang, I'm not asking about your

15  personal knowledge.  I'm asking:  Has Irico ever

16  issued a written policy -- strike that.

17          I'm asking:  Has Irico ever issued a written

18  legal notice requesting its employees not destroy any

19  potential discovery documents or data?

20      A.  Let me think about it.  I'm not quite sure

21  with regard to whether we issued such as a notice

22  back in 2007or 2008.

23      Q.  Did you have any discussion with internal

24  employees about this topic?

25      A.  You mean not to destroy those potential

1   documents?

2        Q.  Correct.

3        A.  Yeah, we did mention that during the

4   meeting.

5        Q.  What was discussed?

6        A.  That is ask everybody to maintain the

7   existing document and cannot amend or modify or

8   delete those documents.

9        Q.  When was that meeting held?

10       A.  Should be early September 2017.  On the

11  first floor in our Group building or Group office.

12       Q.  Are you aware of any prior discussions

13  before that meeting?

14           MR. LUCARELLI:  Object to form.

15       A.  I don't know.

16           Can we take a break?

17  BY MS. FU:

18       Q.  No.  How about in ten minutes; is that okay?

19       A.  Okay.

20       Q.  Mr. Zhang, do you understand that as part of

21  this litigation, plaintiffs have served a

22  jurisdictional discovery request to Group and

23  Display?

24           Check interpreter.

25           Let me repeat that question.  Do you

1   understand, as part of this litigation, plaintiffs

2   have served jurisdictional discovery requests to

3   Group and Display?

4              INTERPRETER:  The witness is asking the

5   interpreter to repeat the question.

6              (Interpreter re-translates.)

7      A.  Yes, I do aware.

8   BY MS. FU:

9      Q.  Do you have an understanding of the attempts

10  Irico made to locate documents responsive to

11  plaintiff's discovery request?

12     A.  I'm not quite sure I follow your question.

13  Are you asking me how I search those documents?

14     Q.  Do you understand that in response to

15  plaintiff's discovery request, Irico has produced

16  documents and provided information in this case?

17     A.  I do aware that Irico is supposed to

18  provide -- I do aware that Irico is supposed to

19  provide relevant information based on the reasonable

20  and the legitimate request from the plaintiff.

21     Q.  And is it your understanding that Irico has

22  produced certain documents and provided certain

23  information responsive to plaintiff's discovery

24  requests?

25             MR. LUCARELLI:  Object to form.

1              CERTIFICATE OF COURT REPORTER

2

3    I, Amanda Tolton, an Accredited Real-time Reporter,

4    hereby certify that the testimony of the witness

5    Zhang Wenkai in the foregoing transcript, numbered

6    pages 1 through 116, taken on this 4th day of March,

7    2019 was recorded by me in machine shorthand and was

8    thereafter transcribed by me; and that the foregoing

9    transcript is a true and accurate verbatim record of

10   the said testimony.

11

12   I further certify that I am not a relative, employee,

13   counsel or financially involved with any of the

14   parties to the within cause, nor am I an employee or

15   relative of any counsel for the parties, nor am I in

16   any way interested in the outcome of the within

17   cause.

18

19

20   Signed:   *Amanda Tolton*

21   Name:   Amanda Tolton

22   Date:   .......................

23

24

25

# Exhibit 6

1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
2                    San Francisco Division

3      - - - - - - - - - - - - - - - - - -
       IN RE:                           )
4                                        )
       CATHODE RAY TUBE (CRT)            )Master File No.
5      ANTITRUST LITIGATION              )07-CV-5944-JST
                                         )
6                                        )MDL No. 1917
                                         )
7                                        )
                                         )
8      - - - - - - - - - - - - - - - - - -

9                   DEPOSITION OF ZHANG WENKAI

10                    HIGHLY CONFIDENTIAL

11                        VOLUME II

12                  Tuesday, March 5th, 2019

13                     AT:  9.05 am

14                      Taken at:

15                    Kobre & Kim
                     6/F ICBC Tower
16                   3 Garden Road
                       Central
17                    Hong Kong

18

19

20

21

22

23     Court Reporter:

24     Bron Williams
       Accredited Real-time Reporter
25

1    look like that.  I did find some former CNEICC employees who

2    switched job and worked for Irico.  Because what they told

3    me is that CNEICC not only purchased products from Irico and

4    export to overseas, but also import some raw materials for

5    Irico.  On top of that they also conduct other trading

6    business as well.

7     BY MS. FU:

8              Q.  What other trading business?  Can you

9    describe?

10             A.  He was not quite sure, but he did mention the

11   CNEICC's import certain audio equipment.

12             Q.  Who was this employee you talked to?

13             A.  Mr. Hao Xiao Jin.

14             INTERPRETER:  H-A-O X-I-A-O J-I-N.

15             A.  It is a female.  Ms. Hao Xiao Jin.

16    BY MS. FU:

17             Q.  Did you talk to any other former CNEICC

18   employees?

19             A.  This is the only person I found and connected.

20             Q.  Why does the company CNEICC's name have

21   Irico's trademark Caihong in it?

22             A.  I'm not quite sure about that, but the fact is

23   that the Caihong, this name in China is very popular.  You

24   can find this in the market place, in shopping mall, in the

25   food court.  This is a very popular name.  So I really don't

1    know.  Why --

2            Q.  Are you saying it is a coincidence that the

3    name CNEICC has Irico's trademark Caihong in it?

4            MR. LUCARELLI:  Object to form.

5            A.  I didn't say it is a coincidence.  Could be,

6    or could be not, but the Chinese characters are identical.

7    Just that.  There are several bridges called Caihong, or an

8    Irico bridge.  So we don't have any ownership of those

9    bridges.

10           Q.  During what time period did CNEICC handle

11   Irico's import and export business?

12           A.  The establishment of CNEICC is not solely for

13   the Irico's import and export business.  They would do the

14   business based on their business plan.  And also the fact is

15   that during the class period, we have no control of CNEICC

16   at all.  So I really cannot answer in what period they

17   handled the Irico import and export.

18           Q.  Are you aware that your attorneys have told us

19   that CNEICC handled all Irico's export and import until

20   September 2004?

21           MR. LUCARELLI:  Object to form.

22           INTERPRETER:  Can I clarify?  Did you say 2014, or

23   2004?

24    BY MS. FU:

25           Q.  2004.

```
 1              INTERPRETER:  (Chinese spoken).

 2              A.  In what form did our attorney inform you

 3  regarding that?

 4   BY MS. FU:

 5              Q.  Through discovery responses.

 6              A.  First of all, I really don't know where -- in

 7  what form our attorney informed you that, and the fact is

 8  that I was not there when our attorney informed you this

 9  information.

10              Then if our attorney did produce that information,

11  plus the fact that the information came from my position,

12  then it is a fact.

13              Correction, is --

14              (Chinese spoken) --

15              MR. HWU:  One moment.  I want to make the record

16  that the witness has just corrected the interpreter's

17  translation, and directed him to redo it.

18              You may continue.

19              INTERPRETER:  Correction --

20              A.  It is not the fact -- well, if our attorney

21  did produce that information, then it is information, as he

22  said.

23   BY MS. FU:

24              Q.  You are the company's designee for those

25  topics you are designated to testify about, right?
```

 1   business.

 2    BY MS. FU:

 3           Q.  Is it your testimony today that Irico never

 4   tried to export its products?

 5           MR. LUCARELLI:  Objection, misstates testimony.

 6           A.  Well, what I mean is that there is no actual

 7   export action or complete export action happen.  With regard

 8   to the plan or idea or concept, either in written or in

 9   somebody's mind or somebody's brain, I have no idea.  In

10   People's Republic of China the law only asks us to

11   responsible, or response to our actions.  You don't -- you

12   are not responsible or liable to your idea or concepts.  The

13   law doesn't reach your heart.  So if we go back to

14   2,000 years ago, then we are responsible for our mind or our

15   ideas.

16    BY MS. FU:

17           Q.  I would like to strike the answer as

18   non-responsive.

19           MR. HWU:  Interpreter, please ...

20           INTERPRETER:  (Chinese spoken).

21    BY MS. FU:

22           Q.  So CNEICC was independently negotiating

23   contracts for the sales of CRTs -- strike that.

24           CNEICC never kept records for how much it

25   exported?

```
 1              MR. LUCARELLI:  Object to form.

 2              MS. FU:  Strike that question.

 3          Q.  Irico never kept records of how much it

 4  exported?

 5          A.  (Chinese spoken).

 6              MR. LUCARELLI:  Object to form.

 7          A.  Are you saying Irico kept record of export?

 8   BY MS. FU:

 9          Q.  Irico exported CRTs through CNEICC, correct?

10              MR. LUCARELLI:  Object to form.

11          A.  As I mentioned earlier, Irico is

12  a manufacturer, but back in the days where trading or export

13  is restricted, we cannot export our products.  With regard

14  to our client, for example, CNEICC is one of our key

15  clients, based on their own individual demand, for example

16  they want to conduct export, they will come to us and

17  purchase our product for export.  So the statement does not

18  stand for, like, when you say we export our product through

19  CNEICC.

20   BY MS. FU:

21          Q.  So it is your testimony on behalf of Irico

22  that Irico did not keep track of exports?

23              MR. LUCARELLI:  Objection, misstates testimony.

24          A.  I don't think I made that statement.  My

25  statement is that as a manufacturer, Irico never export our
```

 1  products, or we never conduct export business.

 2   BY MS. FU:

 3          Q.  Is it your testimony today that, on behalf of

 4  Irico, that Irico never conducted export business?

 5          A.  Well, before the government released the

 6  restriction on the international trading, no, we didn't

 7  conduct any export business.

 8          Q.  When did the government release the

 9  restriction on the international trading?

10          A.  Yes, I did look for that answer.  It is

11  a progress.  It is not one order and everything changed

12  overnight.  It is a progress and gradual change for over 10

13  to 20 years.  It is a gradually, a slow transition based on

14  different industry, as well as different regions.  So

15  I really don't know when we can conduct the trading business

16  by ourselves.

17          Q.  When did Irico start to conduct export

18  business?

19          A.  Perhaps it is after 2004, or after 2005, we

20  did have some export business.

21          Q.  Which Irico company conducted export business

22  on behalf of Irico around after 2004/2005?

23          MR. LUCARELLI:  Object to form.

24          A.  There were many.  For example Xian Cairui,

25  and -- Xian Cairui.

 1              INTERPRETER:  X-I-A-N C-A-I-R-U-I.

 2         A.  There is another company like Xian Export and

 3  Process Company, I don't recall the exact name.

 4   BY MS. FU:

 5         Q.  Did all these companies export CRTs or CRT

 6  products on behalf of Irico after 2004 or 2005?

 7              MR. LUCARELLI:  Object to form.

 8         A.  No, based on our understanding, they basically

 9  are selling the fluorescent powders or the raw materials

10  only.  The reason I have that information is because

11  I searched some of the data from the Customs.

12              I remember those export orders files follow the

13  number 09, and then I asked the Customs officers, 09

14  represents kilograms.

15              So as a result of that, obviously it is not

16  something like CRT.  Because CRT's unit is by pieces, not by

17  kilogram.

18              And also the fact that the products Irico produced

19  cannot satisfy the demand in domestic market.

20              So our primary market is domestic market.  If

21  there are any export, the amount should be very, very small,

22  or even none.  The best source is the accounting or finance

23  record.

24              MR. LUCARELLI:  Counsel, we have been going almost

25  an hour and a half.  Can we take a break now?

 1    left CNEICC then she joined Irico.  I do not remember the

 2    exact date when she left CNEICC.

 3              Q.  So it is your understanding that Liang Yuan

 4    was never employed by Irico before 2004?

 5              MR. LUCARELLI:  Object to form.

 6              A.  To my impression, yes, that's a fact.  But we

 7    should refer to her profile.

 8     BY MS. FU:

 9              Q.  Who created those profiles?

10              A.  Ling Shaobao.

11              Q.  What was his job position?

12              A.  He left the company at the end of 2018.

13              Q.  What was his job position?

14              A.  He was one of the business directors at the

15    department of human resources.

16              Q.  Do you know what he did to prepare those

17    profiles?

18              MR. LUCARELLI:  Object to form.

19              A.  I don't know.  He just passed me the

20    information he has compiled.

21     BY MS. FU:

22              Q.  So your knowledge about Liang Yuan's work

23    history was entirely based on those profiles that Mr. Lian

24    Shaobao created, correct?

25              MR. LUCARELLI:  Object to form.

```
 1              A.  Yes.

 2     BY MS. FU:

 3              Q.  So you mentioned Mr. Lian Shaobao left Irico

 4     at the end of 2018.  Do you know where he is now?

 5              A.  I don't know the exact agency or institute.

 6              Q.  Going back to Exhibit 8397, the contract shows

 7     Irico sold 5,040 pieces of 14-inch CPTs, and 800 pieces of

 8     21-inch CPTs to CNEICC.  Do you see that?

 9              A.  Yes.

10              Q.  Did Irico -- strike that.

11              Irico sold these CPTs to CNEICC for export,

12     correct?

13              MR. LUCARELLI:  Object to form.

14              A.  No.

15     BY MS. FU:

16              Q.  Can you explain?

17              A.  Because we have no knowledge regarding what

18     this trading company or import/export company is going to do

19     with the products they bought.

20              Q.  So you don't know what CNEICC -- strike that.

21              So you don't know what Caihong National

22     Electronics Import and Export Company did with the tubes it

23     bought from Irico?

24              MR. LUCARELLI:  Object to form.

25              A.  Yes, we don't know.
```

 1    BY MS. FU:

 2            Q.  Can you describe how a contract like this was

 3    negotiated between Irico and CNEICC?

 4            MR. LUCARELLI:  Object to form.  This is a sales

 5    contract.  This is outside the scope we have designated

 6    Mr. Zhang for.

 7            MS. FU:  This goes to the relationship between

 8    Irico and CNEICC.

 9            A.  Could you please repeat your question one more

10    time.

11    BY MS. FU:

12            Q.  Can you describe how a contract like this was

13    negotiated between Irico and CNEICC?

14            MR. LUCARELLI:  Same objection.

15            A.  I don't know how they negotiate.

16    BY MS. FU:

17            Q.  But you testified earlier that their

18    relationship was completely customer and seller, correct?

19            A.  Yes.

20            MS. FU:  We can take a quick break.

21            VIDEOGRAPHER:  This marks the end of media number

22    6 in the deposition of Zhang Wenkai volume II.  Going off

23    the record, the time is 2.13.

24                        (Break taken.)

25            VIDEOGRAPHER:  We are back on the record.  Here

1                    CERTIFICATE OF COURT REPORTER

2

3    I, Bron Williams, an Accredited Real-time Reporter, hereby

4    certify that the testimony of the witness ZHANG WENKAI in

5    the foregoing transcript, numbered pages 1 through 64, taken

6    on this 5th day of March, 2019 was recorded by me in machine

7    shorthand and was thereafter transcribed by me; and that the

8    foregoing transcript is a true and accurate verbatim record

9    of the said testimony.

10

11

12   I further certify that I am not a relative, employee,

13   counsel or financially involved with any of the parties to

14   the within cause, nor am I an employee or relative of any

15   counsel for the parties, nor am I in any way interested in

16   the outcome of the within cause.

17

18

19   Signed:   *Bron Williams*

20   Name:    Bron Williams

21   Date:    ........................

22

23

24

25

# Exhibit 7

```
 1              IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
 2                   San Francisco Division

 3   - - - - - - - - - - - - - - - - - -
     IN RE:                             )
 4                                      )
     CATHODE RAY TUBE (CRT)             )Master File No.
 5   ANTITRUST LITIGATION               )07-CV-5944-JST
                                        )
 6                                      )MDL No. 1917
                                        )
 7                                      )
                                        )
 8   - - - - - - - - - - - - - - - - - -

 9              DEPOSITION OF WANG ZHAOJIE

10                 HIGHLY CONFIDENTIAL

11                      VOLUME I

12              Wednesday, March 6th, 2019

13                   AT:  9.08 am

14                    Taken at:

15                  Kobre & Kim
                    6/F ICBC Tower
16                  3 Garden Road
                       Central
17                   Hong Kong

18

19

20

21

22

23   Court Reporter:

24   Bron Williams
     Accredited Real-time Reporter
25
```

1           Q.  Since July 2013, you have been general manager

2    of Irico Smart Lighting Company, correct?

3           A.  Yes.

4           Q.  Okay.  Do you know the company Hefei Rainbow

5    Blu-ray Technology Company?

6           MS. FU:  (Chinese spoken).

7           A.  Yes.

8     BY MR. BENZ:

9           Q.  What is it?

10          A.  A company produce LD.

11          Q.  What is LD?  Liquid display?

12          A.  No.

13          Q.  What is LD?

14          A.  LED.

15          Q.  LED what?

16          A.  The chip for LED.

17          Q.  Okay.  Does Hefei Rainbow Blu-ray Technology

18   Company have any relationship with Irico Display?

19          A.  No.

20          MR. PLUNKETT:  Objection, vague.

21    BY MR. BENZ:

22          Q.  Mr. Wang, have you had any other job titles

23   since July 2013?

24          A.  After July 2013, I work at Hefei for a while,

25   before I joined this -- the smart lighting company.

1          Q.  What was your position at Hefei?

2          A.  Deputy general manager of the company.

3          Q.  What year was that?  Or what time period?

4          A.  I joined Hefei at July 2013, and then I was

5   transferred to Smart Lighting Company.

6          Q.  Have you ever worked at Irico Display?

7          A.  No.

8          Q.  Okay.

9          MR. BENZ:  This is a good time for a quick break.

10  We have been going for an hour.

11         MR. PLUNKETT:  Sure.

12         VIDEOGRAPHER:  This marks the end of the media

13  number 3 in the deposition of Wang Zhaojie.  The time is

14  11.17.

15                      (Break taken.)

16         VIDEOGRAPHER:  We are back on the record.  Here

17  begins media number 4 in the deposition of Wang Zhaojie.

18  The time is 11.38.

19   BY MR. BENZ:

20         Q.  Mr. Wang, until 2004, CNEICC was responsible

21  for all of Irico's exports, correct?

22         MR. PLUNKETT:  Objection, vague.

23         INTERPRETER:  Excuse me I didn't --

24         A.  (Chinese spoken).

25         MS. FU:  I would like the translator to

 1   retranslate that question.  The translation of "CNEICC."

 2              A.  (Chinese spoken) --

 3              MS. FU:  I would like the interpreter to

 4   retranslate the word CNEICC.  It should be (Chinese spoken).

 5              INTERPRETER:  Okay.

 6              (Chinese spoken).

 7              A.  I don't know about this company.

 8    BY MR. BENZ:

 9              Q.  I'll re-ask the question.  Mr. Wang, until

10   2004, the China National Electronics Import and Export

11   Caihong Company was responsible for all of Irico's exports,

12   correct?

13              MR. PLUNKETT:  Objection, vague.

14              A.  I'm not very clear, I don't know much about

15   this company.

16    BY MR. BENZ:

17              Q.  Mr. Wang, can you please refer to the 30(b)(6)

18   notice which is Exhibit number 8390.

19              Please look at topic 4 on page 6.

20              A.  I need a Chinese version.

21              Q.  Mr. Wang, we have been informed by your

22   counsel that you are the designated witness for topic

23   number 4.

24              A.  I need to understand what is the question on

25   number 4.

1            Q.  I'm going to read topic number 4 in English,

2    and ask the translator to translate.

3            Topic number 4 is:

4            "Any sales, attempted sales or contemplated sales

5    by Irico, directly or indirectly, to the United States

6    during the Class period, including, but not limited to,

7    sales through China National Electronics [Import and Export]

8    Caihong [Company], Irico Group Electronics Co Ltd, Xian

9    Irico Display Technology Co Ltd, Irico  (USA)

10   [Incorporated], and/or the Irico HuangQi Company."

11           A.  I need to put my jacket on.

12           (Chinese spoken).

13           Q.  Mr. Wang, you understand that you are here on

14   behalf of your company --

15           INTERPRETER:  Mr. Counsel, I have not finished my

16   interpretation.  He asked me to write it down so I can read

17   it.  Sorry.  It will take a couple of minutes only.

18           I'm ready.

19           (Chinese spoken).

20           A.  (Chinese spoken).

21           INTERPRETER:  (Chinese spoken).

22           A.  So then what is your question?

23    BY MR. BENZ:

24           Q.  Mr. Wang, you understand you have been

25   designated by Irico Group and Irico Display to testify as to

```
 1                    CERTIFICATE OF COURT REPORTER

 2

 3    I, Bron Williams, an Accredited Real-time Reporter, hereby

 4    certify that the testimony of the witness Wang Zhaojie in

 5    the foregoing transcript, numbered pages 1 through 115,

 6    taken on this 6th day of March, 2019 was recorded by me in

 7    machine shorthand and was thereafter transcribed by me; and

 8    that the foregoing transcript is a true and accurate

 9    verbatim record of the said testimony.

10

11

12    I further certify that I am not a relative, employee,

13    counsel or financially involved with any of the parties to

14    the within cause, nor am I an employee or relative of any

15    counsel for the parties, nor am I in any way interested in

16    the outcome of the within cause.

17

18

19    Signed:   Bron Williams

20    Name:   Bron Williams

21    Date:   ........................

22

23

24

25
```

# Exhibit 8

Case 4:07-cv-05944-JST Document 5641-2 Filed 11/05/19 Page 34 of 123
Wang Zhaojie - highly confidential
March 07, 2019                                              1

1                 IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
2                       San Francisco Division

3     - - - - - - - - - - - - - - - - - -
      IN RE:                            )
4                                       )
      CATHODE RAY TUBE (CRT)            )Master File No.
5     ANTITRUST LITIGATION              )07-CV-5944-JST
                                        )
6                                       )MDL No. 1917
                                        )
7                                       )
                                        )
8     - - - - - - - - - - - - - - - - - -

9                    DEPOSITION OF WANG ZHAOJIE

10                     HIGHLY CONFIDENTIAL

11                          VOLUME II

12                   Thursday, March 7th, 2019

13                      AT:  9.02 am

14                      Taken at:

15                    Kobre & Kim
                      6/F ICBC Tower
16                    3 Garden Road
                        Central
17                     Hong Kong

18

19

20

21

22

23   Court Reporter:

24   Bron Williams
     Accredited Real-time Reporter

25

1    itself.  I really don't know how to answer that.  Because

2    I consider your question is too broad, it is not very

3    precise.  So I don't know how to answer it.

4     BY MR. BENZ:

5            Q.  Are you aware that Irico Display ever violated

6    its own articles of association?

7            MR. JACOBSMEYER:  Object to the form.

8            A.  Based on my understanding, no.

9     BY MR. BENZ:

10           Q.  Are you aware whether any of Irico Display's

11   shareholders ever violating their articles of association?

12           A.  I don't know.

13           Q.  If you look at article 12, Mr. Wang, article

14   12 reads:

15           "The goals of the Company:  To focus on customer

16   demand, provide high-quality products and services with

17   excellent technology and management."

18           Do you see that?

19           A.  Yes.

20           Q.  Does article 12 accurately describe the goals

21   of Irico Display?

22           MR. JACOBSMEYER:  Object to the form.

23           A.  The document speaks for itself.

24    BY MR. BENZ:

25           Q.  If you look at article 46, please.  Article 46

 1    reads:

 2              "The controlling shareholders [of] the Company

 3    shall ensure the independence of their personnel, assets,

 4    and financial affairs, with independent institutions and

 5    businesses, independent accounting, responsibilities and

 6    risks."

 7              MR. JACOBSMEYER:  Objection, mischaracterizes the

 8    document.

 9              MR. BENZ:  Stop for a second.  Did I read it

10    incorrectly?

11              MR. JACOBSMEYER:  "The controlling shareholders of

12    the company", it reads "the controlling shareholders and the

13    company."

14              MR. BENZ:  Thank you.  I'll re-read it.

15              "The controlling shareholders and the Company

16    shall ensure the independence of their personnel, assets and

17    financial affairs, with independent institutions and

18    businesses, independent accounting, responsibilities and

19    risks."

20              Do you see that?

21              A.  Yes.

22              Q.  As you sit here today are you aware of any

23    instance in which Irico Display and its shareholders did not

24    comply with article 46?

25              A.  Based on my understanding, no.

```
 1            VIDEOGRAPHER:  This marks the end of volume --

 2    media number 2 in the deposition of Wang Zhaojie volume II.

 3    Going off the record, the time is 11.10.

 4                       (Break taken.)

 5            VIDEOGRAPHER:  We are back on the record.  Here

 6    begins media number 3 in the deposition of Wang Zhaojie,

 7    volume II.  The time is 11.24.

 8     BY MR. BENZ:

 9            Q.  Mr. Wang, did Irico Display conduct regular

10    board meetings during the relevant time frame?

11            A.  I'm not clear regarding the detailed

12    information.

13            MS. FU:  I would like to make a correction.

14    "I don't know the detailed information."

15     BY MR. BENZ:

16            Q.  But it is your understanding that board

17    meetings were conducted by Irico Display?

18            A.  Yes.

19            Q.  Did Chinese government officials attend Irico

20    Display's board meetings?

21            A.  Because I didn't attend the board meetings, so

22    I don't know that.

23            MS. FU:  I would like to make a correction.

24    "I have never attended board meetings so I don't know that."

25
```

1    BY MR. BENZ:

2           Q.  If you could turn back to Exhibit 8416.

3           Mr. Wang, could you turn to article 240?

4           A.  Okay.

5           Q.  Mr. Wang, if you could please read article 240

6    in Chinese, and I would like the translator to translate it

7    into English for me.

8           A.  "(Chinese spoken)."

9           INTERPRETER:  Can I correct one character?

10   (Chinese spoken).

11          A.  (Chinese spoken).

12          INTERPRETER:  Just one character.

13          "'Article 240:

14          The appointment of the Company's managers should

15   be carried out in strict accordance with the relevant laws

16   and regulations and the provisions of the Articles of

17   Association.  No organization or individual may interfere

18   with the normal procedures for selecting and appointing

19   managers of the Company.'"

20   BY MR. BENZ:

21          Q.  Mr. Wang, are you aware of any instance in

22   which an organization or individual interfered with the

23   normal procedures for selecting and appointing managers of

24   Irico Display?

25          A.  Based on my understanding, no.

1   company law and securities law of the People's Republic of

2   China, the code of corporate governance for listed company

3   in China, and in the company's articles of associations.

4   The company has established a relatively robust corporate

5   governance structure, and has basically achieved compliance

6   with relevant corporate governance requirements for listed

7   companies, mainly in the following aspects."

8           MR. JACOBSMEYER:  Counsel, can the record show it

9   is unclear if the translator is translating the witness's

10  statements rather than just reading the English language

11  translation?

12          MR. BENZ:  I asked the translator to read from

13  Mr. Wang's testimony.  So I don't know if anything is clear,

14  but that's what I requested.

15          INTERPRETER:  (Chinese spoken).

16   BY MR. BENZ:

17          Q.  So Mr. Wang, my question is:  The

18  representation in the Irico report that "since the company

19  was listed its applications have been managed in strict

20  accordance with applicable laws, regulations in the rules,

21  including the company law and the security law of the

22  People's Republic of China", is correct?

23          A.  This is an announcement issued by Irico

24  Display Device Corporate Limited.  With regard to

25  announcement of the self inspection report and rectification

1    plan concerning the campaigns to strengthen corporate

2    governance of the listed company.  The document speaks for

3    itself.

4            MS. FU:  Correction to the witness's last

5    sentence.  The literal translation should be "whatever is

6    written here, that's how it is."

7            INTERPRETER:  Okay.

8     BY MR. BENZ:

9            Q.  I'm working off the English translation.  If

10   we could turn to the third page, heading 6.  Where it reads:

11           "The company situation re:  'Three separates, two

12   independents' with the controlling shareholder."

13           Under the header "In business operations,"

14   the report reads:

15           "The Company's business is independent from

16   the controlling shareholder."

17           Do you see that?

18           A.  Yes.

19           Q.  Is it correct that Electronics was the

20   controlling shareholder?

21           MR. JACOBSMEYER:  Object to form.

22           A.  What this announcement is written, it is

23   written.

24    BY MR. BENZ:

25           Q.  Do you know who the controlling shareholder is

Wang Chuan Jie - Highly Confidential

March 07, 2019                                    41

1    in Display?

2              A.   Are you referring Irico Display?

3              Q.   Yes.

4              A.   Irico Group.  It is actual controlling group.

5              Q.   Turn to -- it is page 10 of the English

6    translation.  At the bottom there is a heading, 3, whether

7    review of proposals at the general meetings of shareholders

8    are in line with the procedures and whether the right of

9    minority shareholders is protected.

10             Do you see that?

11             A.   Yes.

12             Q.   Okay.  The second sentence of that paragraph

13   reads:

14             "At the general meetings of shareholders, all

15   shareholders have been treated equally and facilitated to

16   exercise their rights as shareholders, and the right of

17   speech of minority shareholders has been ensured."

18             Do you see that?

19             A.   Yes, I saw it.

20             Q.   Is it correct that at Display's general

21   meetings of shareholders, all shareholders have been treated

22   equally and facilitated to exercise their rights as

23   shareholders?

24             A.   What the announcement reflects it is what it

25   reflects.

1          MS. FU:  Objection to the translation.  The

2   literal translation should be "what the announcement

3   reflects, that's how it is."

4          INTERPRETER:  Yes, "that's how it is," yes.

5    BY MR. BENZ:

6          Q.  Who is the controlling shareholder of Irico

7   Display?

8          MR. JACOBSMEYER:  Object to the form.

9          A.  I'm not quite sure the time frame you are

10  referring, because this question is not precise, and plus

11  the fact in -- during the period there is a so-called

12  shareholders change.

13   BY MR. BENZ:

14         Q.  Mm-hmm.

15         In 2007, Mr. Wang, isn't it correct that

16  Electronics owned shares of Display, but Group did not?

17         A.  I don't recall the detailed information.

18         MS. FU:  I would like to correct the translation.

19  "I don't know the detailed information."

20         INTERPRETER:  (Chinese spoken).

21         A.  I'm not very clear regarding that particular

22  -- regarding this issue on that particular period.

23         MR. BENZ:  It is noon, I think this would probably

24  be a good place to break for lunch.  I have one more exhibit

25  after lunch, but it will take a while.  So why don't we

 1   That's all.

 2            A.  Give me a few minutes.

 3            MR. JACOBSMEYER:  Counsel, we would like to inform

 4   the interpreter that the page numbering may not match up for

 5   the English and the Chinese version.

 6            A.  I will just read the Chinese version.

 7            MR. BENZ:  It did on the first few pages, but you

 8   may be right.  So fair enough.

 9            A.  I will just read the Chinese version.

10    BY MR. BENZ:

11            Q.  Okay.

12            A.  Yes I have read all those four pages.

13            Q.  Okay.  Mr. Wang, have you seen Exhibit 8418

14   before?

15            A.  Yes, I have read it before.

16            Q.  Did you review it in preparation for your

17   deposition here today?

18            A.  Yes.

19            Q.  When Irico Display's board of directors met,

20   do you know if the board ever referred to the articles of

21   association?

22            MR. JACOBSMEYER:  Object as to form.

23            A.  Because I'm not a member of the board of

24   directors, so I don't know the case.

25

Case 4:07-cv-05944-JST Document 5641-2 Filed 11/05/19 Page 44 of 123
Wang Zhengfeng, Highly Confidential, attorneys' eyes only
March 07, 2019                                   46

1           Q.  The English translation here says corporate

2   bylaws, but I've been told the Chinese characters mean

3   articles of association.  Is that correct?

4           A.  I didn't follow your questions.

5           Q.  Is the corporate bylaws the same thing as

6   articles of association?

7           A.  I don't know.

8           Q.  Further down on page 12, there is a section 1,

9   "Shareholders and shareholder meetings."  Do you see that?

10          A.  Yes.

11          Q.  In the second sentence it reads:

12          "The convocation and voting procedures of the

13  company's shareholder meetings are standardized, and all

14  shareholder meetings are witnessed by lawyers."

15          Do you see that?

16          A.  You mean this sentence?

17          Q.  Yes.

18          A.  Yes.

19          Q.  Is it correct that all Display shareholder

20  meetings are witnessed by lawyers?

21          MR. JACOBSMEYER:  Object to form.

22          A.  I'm not a board member of the Display, so I'm

23  not clear with regard to the board meeting.

24   BY MR. BENZ:

25          Q.  This is about shareholder meetings, Mr. Wang.

 1              A.  I never participate at the shareholders

 2    meeting, so I don't know.

 3              Q.  Under the next heading, number 2, it reads

 4    "Controlling shareholders in listed companies."  Do you see

 5    that?

 6              A.  Yes.

 7              Q.  The report then states:

 8              "Separation and independence from the company's

 9    controlling shareholders is implemented in the five areas of

10    business, personnel, assets, institutions and finance."

11              Do you see that?

12              A.  Yes.

13              Q.  Is that statement correct?

14              MR. JACOBSMEYER:  Object to the form.

15              MR. BENZ:  What is the basis for your objection,

16    besides coaching the witness?

17              A.  (Chinese spoken).

18              MS. FU:  I would like the interpreter to translate

19    counsel's objection.

20              MR. JACOBSMEYER:  That the question is vague as to

21    time.

22              MR. BENZ:  Let me re-ask the question, Mr. Wang.

23              Q.  In 2007, is it correct that all Display

24    shareholder meetings are witnessed by lawyers?

25              A.  I'm not a shareholder, so I don't know the

1   situation.

2           Q.  Reading to the next sentence, as of 2007, is

3   it correct that the statement that -- sorry.  I'll start

4   over on this sentence.  The report goes on to state:

5           "Separation and independence from the company's

6   controlling shareholders is implemented in the five areas of

7   business, personnel, assets, institutions and finance."

8           Do you see that?

9           A.  Yes.

10          Q.  In 2007, was that statement correct?

11          A.  This is the Irico Display company issues, I --

12  personally I have no comment.

13          Q.  Mr. Wang, you are representing Irico Display

14  here today, correct?

15          A.  Yes.

16          Q.  So I'm asking you, on behalf of Irico Display,

17  is this statement correct as of 2007?

18          MR. JACOBSMEYER:  Objection, beyond the scope.

19          MR. BENZ:  These are topics 1 and 2.  Do you still

20  maintain your objection?  Got to make the record.

21          MR. JACOBSMEYER:  Same objection.

22          MR. BENZ:  Topics 1 and 2.  Alright.

23   BY MR. BENZ:

24          Q.  Can you answer my question, Mr. Wang?

25          A.  I don't know myself.

1    BY MR. BENZ:

2              Q.  Do you know on behalf of Irico Display whether

3    this is a correct statement as of 2007?

4              A.  Personally, I don't know.

5              Q.  Mr. Wang, is it not true that for topic 1 you

6    prepared to talk about the corporate formation, ownership

7    and purpose of Group and Display?

8              MR. JACOBSMEYER:  Objection, beyond the scope.

9              A.  I don't know.

10             MR. BENZ:  That's fine.  We will go ahead and make

11   our transcript.

12             The next sentence reads:

13             "The company's board of directors and board of

14   supervisors maintain independent operation, ensuring

15   independence in the company's major decisions."

16             Do you see that?

17             A.  Where is it?

18             Is it on page 12?

19             Q.  Yes.

20             A.  Which subtitle?

21             Q.  2.

22             A.  Yes, I saw it.

23             Q.  Mr. Wang, as Irico Display's corporate

24   designee for topic 1, is that a correct statement as of

25   2007?

1            A.  The document speaks for itself.  What is said

2    there is what is said.

3            MS. FU:  I would like to correct the translation.

4    The literal translation is "whatever is written here that's

5    how it is."

6            INTERPRETER:  Okay.

7     BY MR. BENZ:

8            Q.  If you could turn to page 13, Mr. Wang.  At

9    the bottom of page 13 the second sentence from the bottom

10   reads:

11           "The company has independent purchasing and sales

12   systems."

13           Do you see that?

14           A.  Yes, I saw it.

15           Q.  Okay.  As the corporate designee for Irico

16   Display on topics 1 and 2, is that a correct statement as of

17   2007?

18           MR. JACOBSMEYER:  Object to the form.

19           MR. BENZ:  What is the basis for your objection?

20           MR. JACOBSMEYER:  This is beyond the scope of

21   topics 1 or 2.

22           MR. BENZ:  I absolutely disagree with you, so we

23   will make our record.

24           Q.  Mr. Wang, can you answer my question please?

25           A.  What has been written on this report is what

 1    is written.

 2            MS. FU:  Like to make an objection to the literal

 3    translation.  It should be "whatever it is written here,

 4    that's how it is."

 5     BY MR. BENZ:

 6            Q.  Mr. Wang, can you turn to page 14.  At the top

 7    of page 14 there is a number 2 and the heading "Personnel

 8    aspect."  Do you see that?

 9            A.  Yes.

10            Q.  And then the second sentence of that paragraph

11    reads:

12            "The company's general manager is employed

13    full-time, and the general manager and other senior

14    executives receive no pay from controlling shareholders'

15    units."

16            Do you see that?

17            A.  Yes.

18            Q.  As Irico's corporate designee for topics 1 and

19    2, is that statement correct for Irico Display as of 2007?

20            A.  I don't remember.

21            Q.  Mr. Wang, in 2007, did executives of Display

22    receive pay from any other Irico company?

23            A.  I don't know.

24            Q.  Moving down to number 5, the heading is

25    "Finance aspect."  Do you see that?

1                  CERTIFICATE OF COURT REPORTER

2

3   I, Bron Williams, an Accredited Real-time Reporter, hereby

4   certify that the testimony of the witness WANG ZHAOJIE in

5   the foregoing transcript, numbered pages 1 through 111,

6   taken on this 7th day of March, 2019 was recorded by me in

7   machine shorthand and was thereafter transcribed by me; and

8   that the foregoing transcript is a true and accurate

9   verbatim record of the said testimony.

10

11

12  I further certify that I am not a relative, employee,

13  counsel or financially involved with any of the parties to

14  the within cause, nor am I an employee or relative of any

15  counsel for the parties, nor am I in any way interested in

16  the outcome of the within cause.

17

18

19  Signed:   *Bron Williams*

20  Name:    Bron Williams

21  Date:    ........................

22

23

24

25

# Exhibit 9

```
 1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
 2                   San Francisco Division

 3    - - - - - - - - - - - - - - - - - -
      IN RE:                         )
 4                                   )
      CATHODE RAY TUBE (CRT)         )Master File No.
 5    ANTITRUST LITIGATION           )07-CV-5944-JST
                                     )
 6                                   )MDL No. 1917
                                     )
 7                                   )
                                     )
 8    - - - - - - - - - - - - - - - - - -

 9              DEPOSITION OF WANG ZHAOJIE

10                 HIGHLY CONFIDENTIAL

11                    VOLUME III

12              Friday, March 8th, 2019

13                  AT:  9.05 am

14                  Taken at:

15                Kobre & Kim
                  6/F ICBC Tower
16                3 Garden Road
                     Central
17                  Hong Kong

18

19

20

21

22

23    Court Reporter:

24    Bron Williams
      Accredited Real-time Reporter
25
```

 1              MS. FU:  I would like to make a correction.

 2   (Chinese spoken).

 3              A.  (Chinese spoken).

 4              INTERPRETER:  (Chinese spoken).

 5              A.  (Chinese spoken).

 6              MS. FU:  CRT.  (Chinese spoken).

 7              INTERPRETER:  CRT.  (Chinese spoken).

 8              A.  CRT (Chinese spoken).

 9              MS. FU:  I would like to re-render that again.

10              INTERPRETER:  (Chinese spoken).

11              A.  I still don't follow the question.

12              MS. FU:  Let me try, and you can tell me if you

13   disagree, or agree.  (Chinese spoken).

14              INTERPRETER:  I agree.

15              A.  Although I don't think I quite -- I'm not

16   quite clear about the question, but I think as long as it is

17   a major component, it should be relevant.

18    BY MS. CAPURRO:

19              Q.  So Irico would have had to be informed

20   regarding the consumer market for CRT televisions, correct?

21              MR. PLUNKETT:  Object to the form, argumentative.

22              A.  (Chinese spoken).

23              INTERPRETER:  The witness asked me to repeat the

24   question.

25              MS. CAPURRO:  Okay.

```
 1              INTERPRETER:  (Chinese spoken).

 2              A.   Could you rephrase your question?

 3    BY MS. CAPURRO:

 4              Q.   Irico was informed by the market for CRT

 5    televisions in China, correct?

 6              MR. PLUNKETT:  Object to the form.

 7              A.   (Chinese spoken).

 8              INTERPRETER:  (Chinese spoken).

 9              A.   This question is very vague.

10    BY MS. CAPURRO:

11              Q.   I think there was a problem with the original

12    -- Irico Group and Irico Display's business was informed by

13    the market for CRT televisions and computer monitors,

14    correct?

15              MR. PLUNKETT:  Object to the form.

16              A.   I didn't follow the point of your question.

17    Could you repeat the question one more time?

18    BY MS. CAPURRO:

19              Q.   The demand for monitors and televisions in

20    China directly affected Irico's business, correct?

21              MR. PLUNKETT:  Object to the form.

22              A.   The customers in China, their demand for the

23    color tube will have some impact to our business.

24              Q.   Directing your attention to the last sentence

25    on page 2, it says:
```

 1              "Major customers of the group include TCL,

 2    Skyworth, Konka, Chang Hong and Hisense, which are major

 3    television producers in China."

 4              Do you see that?

 5              A.  Yes.

 6              Q.  Is that an accurate statement?

 7              MR. PLUNKETT:  Object to the form.

 8              A.  Whatever is written here, that's how it is.

 9     BY MS. CAPURRO:

10              Q.  Okay.  Turn to the next page.  Page 8 of the

11    report.  It is the next page in the excerpt.  Bates stamped

12    AE-CRT-CE-001829.

13              MR. PLUNKETT:  Is that a Bates stamp?

14              MS. CAPURRO:  It is.

15              A.  I didn't see that Bates in the Chinese

16    version.

17              MS. CAPURRO:  It is only on the English version

18    apparently, I apologize.

19              MR. PLUNKETT:  Counsel, do you know who produced

20    this?

21              MS. CAPURRO:  It was included as an exhibit by the

22    expert for the indirect purchaser plaintiffs.  It was an

23    exhibit to their report in support of class certification,

24    I believe.

25              Directing your attention to page 8 of the report,

 1   and the paragraph under "Future prospects."  Do you see

 2   that?

 3            A.  (Chinese spoken).

 4            Q.  The sentence beginning:

 5            "As production lines of CRT television sets and

 6   CPTs in Europe and America shut down and the trend of moving

 7   such production lines to developing countries such as the

 8   PRC continues, the PRC's role as the centre for

 9   manufacturing of color television sets in the world will be

10   further enhanced.  The PRC's status as a global

11   manufacturing center for color television sets and color

12   CPTs will be further strengthened.  The export of color

13   television sets and CPTs in the PRC will keep growing fast

14   and the Group has excellent prospects for future

15   development."

16            Do you see that?

17            A.  Which paragraph?  Yes.  Paragraph 1, right?

18   Yes, I saw it.

19            Q.  Do you agree with that statement?

20            MR. PLUNKETT:  Object to the form.  I reiterate my

21   objection that this is beyond the scope.

22            A.  You just read paragraph 1, right?

23            I think this is just a future prospect.  Whatever

24   written there, that is how it is.

25

 1              Q.  You can set that document aside.

 2              (Exhibit 8423  marked for identification)

 3              Q.  Mr. Wang, the court reporter has handed you

 4    the next document that has been marked as an exhibit as

 5    Exhibit number 8423.  Please take a minute to review the

 6    document and let me know when you are ready.

 7              A.  Yes, I have read it.

 8              Q.  See at the top of the page the date says

 9    May 24th, 1999?

10              A.  Yes.

11              Q.  I will refer you back to the previous exhibit.

12    CHU000029191, and the date there was May 20th, 1999.

13    Correct?

14              A.  Yes.

15              Q.  These are notes of Chunghwa's Lu Jing-Song.

16    Do you know Lu Jing-Song?

17              MR. PLUNKETT:  Object to the form.

18              A.  I wouldn't say I know this person, but

19    I thought I met him before.

20     BY MS. CAPURRO:

21              Q.  Directing your attention to the first

22    paragraph, it's:

23              "Just contacted Irico's Vice-President Wei by

24    phone. (Manager Lee is unable to be contacted because he is

25    on a flight from Beijing back to Xian now.)  I explained

1   that we hoped that IRICO could cooperate with us to increase

2   the 14-inch CPT sales price starting July 1.  IRICO

3   basically agreed."

4             Do you see that?

5             A.  Yes.

6             Q.  Did Vice President Wei or Manager Lee ever

7   inform you regarding this call from Jing-Song Lu to them?

8             MR. PLUNKETT:  Object to the form, lacks

9   foundation.

10            A.  I can tell right now, no I don't have any

11  impression.

12   BY MS. CAPURRO:

13            Q.  Do you recall where you met Mr. Lu?

14            A.  I don't have a very good strong impression

15  about this person.  When I saw this name and also I realized

16  he is from CPT, so I suppose I have met this person before.

17  With regard to when I met this person, I cannot remember.

18            Q.  Do you recall whether Mr. Lu attended meetings

19  -- strike that.  Do you recall whether you attended meetings

20  of your competitors at which Mr. Lu was also there?

21            A.  With regard to this type of meeting, I have

22  attended many, many such meetings, plus it was very long

23  ago, so if he was there, then I have met him.  If he was not

24  then I have not.  I really don't remember.

25            Q.  Okay.  You can set that document aside.

```
 1              MS. CAPURRO:  Take a break.  Let's go off the

 2    record.

 3              VIDEOGRAPHER:  This marks the end of media number

 4    8 in the deposition of Wang Zhaojie, volume III.  Going off

 5    the record, the time is 4.39.

 6                        (Break taken.)

 7              VIDEOGRAPHER:  We are back on the record.  Here

 8    marks the beginning of media number 9 in the deposition of

 9    Wang Zhaojie, volume II.  The time is 5.08.

10              MS. CAPURRO:  We are going to mark the next

11    exhibit in order.

12              (Exhibit 8424 marked for identification)

13              MS. CAPURRO:  The court reporter has handed you

14    what has been marked as Exhibit 8424.  This is a document

15    that was produced by defendant Chunghwa in this litigation.

16    Please take a minute to review the document and let me know

17    when you are ready.

18              A.  Okay, I have read it.

19              Q.  Have you seen this document before, Mr. Wang?

20

21              A.  Yes.

22              Q.  Directing your attention to the first page of

23    the document CHU00030679.  The date of the meeting is

24    indicated as October 9th, 1998.  Do you see that?

25              MR. PLUNKETT:  Object to the form.
```

 1   PHS."

 2           Do you see that?

 3           A.  Yes, I saw it.

 4           Q.  Directing your attention to the middle of that

 5   paragraph it says:

 6           "also MONITOR customers (especially IN USA) are

 7   quite sensitive to 'price monopolies'.  Unless customers

 8   require a written statement, it should be handled with the

 9   utmost caution.  However, the resolutions from headquarters

10   will surely be followed.  Verbally, all determined to

11   announce the price increase to customers."

12           Do you see that?

13           A.  Yes.

14           Q.  What is your interpretation of that statement?

15           MR. PLUNKETT:  Object to the form, lacks

16   foundation.  Calls for speculation.

17           A.  First of all, this document is created by CPT,

18   so they have their own meaning and functions.  Secondly, we

19   are only target for the domestic market, we are not

20   interested in this issues, so I don't understand why they

21   say that.

22    BY MS. CAPURRO:

23           Q.  Mr. Wang, you previously relied on a passage

24   of this document to opine that the figures here are

25   exaggerated, correct?

```
 1            MR. PLUNKETT:  Object to the form, lacks

 2   foundation.

 3            A.  Your question is not very clear.

 4    BY MS. CAPURRO:

 5            Q.  You previously reviewed a passage of this in

 6   this document, and opined that the production figures in the

 7   document are exaggerated.  Correct?

 8            MR. PLUNKETT:   Object to the form, lacks

 9   foundation.

10            A.  Like I said, even I didn't participate this

11   particular meeting, however I did participate or attend many

12   similar meetings.  This is just a meeting to exchange market

13   informations.  None of the competitors or no company will

14   reveal the true figures, even CPT indicate they will have

15   some reservations.

16    BY MS. CAPURRO:

17            Q.  Mr. Wang, are you aware that Chunghwa is

18   cooperating with the Department of Justice in investigating

19   this price fixing conspiracy?

20            MR. PLUNKETT:  Object to the form.  Lacks

21   foundation.

22            A.  Your question ... I only know CPT is -- has

23   involved this litigation, but I don't know the legal

24   background or detail of this information.

25
```

1    BY MS. CAPURRO:

2           Q.  Mr. Wang, do you believe the portion of

3    Chunghwa's report when it says it reserved some of its

4    figures?

5           MR. PLUNKETT:  Object to the form, lacks

6    foundation.

7           A.  I just quote what the document said.  This is

8    the document created by CPT.  Under the explanation of major

9    points they stated that they have some price -- some

10   reservations about the figure.  I didn't say that.  One more

11   comment.

12          I cannot judge whether the statement is true and

13   fact.  I just quote the statement under explanation of major

14   points, under (a) it said they have figures -- the figures

15   have been withheld.

16   BY MS. CAPURRO:

17          Q.  So you also cannot judge whether these

18   statements are accurate, correct?

19          MR. PLUNKETT:  Object to the form.  Lacks

20   foundation.

21          A.  What statement, could you be more specific?

22   BY MS. CAPURRO:

23          Q.  The paragraph we have been discussing, the one

24   beginning "CPTF challenges PHS", and in the body of that

25   paragraph it says:

Case 4:07-cv-05944-JST Document 5641-2 Filed 11/05/19 Page 63 of 123
Wang Zhengzhong highly confidential
March 08, 2019                                    101

1          "However, the resolutions from headquarters will

2    surely be followed.  Verbally, all determined to announce

3    the price increase to customers."

4          MR. PLUNKETT:  To the extent there is a question

5    pending, object to the form, lacks foundation.

6     BY MS. CAPURRO:

7          Q.  I will ask another question.  Do you have any

8    basis to doubt the accuracy of that statement?

9          MR. PLUNKETT:  Object to the form, lacks

10   foundation.

11         A.  Which statement?  I'm not quite sure you

12   followed by meaning, or followed my answer.

13         I only want to quote this, under this table's

14   explanation of major points, the CPT state that the figures

15   had been withheld.  That's it.  I don't want to comment on

16   other things.  Could you be more specific regarding your

17   question?

18         MR. PLUNKETT:  Counsel, I'll just tell you, I do

19   not believe the witness is looking at the part of the

20   document you are asking questions about.

21         MS. CAPURRO:  Okay.

22         Mr. Wang, directing your attention back to

23   CHU000030681, do you see the bullet "CPTF challenges PHS"?

24         A.  Yes, I saw it.

25         Q.  And in the middle of that paragraph it states:

1          "However, the resolutions from headquarters will

2   surely be followed.  Verbally, all determined to announce

3   the price increase to customers."

4          Do you see that?

5          A.  Yes.

6          Q.  Do you ever recall Mr. Wei telling you he

7   agreed to increase prices for CDTs at a meeting in the fall

8   of 1998?

9          MR. PLUNKETT:  Object to the form, lacks

10  foundation.

11         A.  No.

12   BY MS. CAPURRO:

13         Q.  You have no basis to doubt the accuracy of

14  this meeting report, correct?

15         MR. PLUNKETT:  Object to the form, lacks

16  foundation.

17         A.  I have no doubt about this report.

18   BY MS. CAPURRO:

19         Q.  Thank you, that's all I have.

20         A.  Can I make one more comment?  I just want to

21  say that I indicate that I have no doubt about the truth of

22  this document.  However, I have no comment regarding the

23  content of this report.

24         Mr. Wang, we are still on deposition topic

25  number 3.  As Irico's topic 3 designee, when Irico Group

 1    employees met with competitors, were you always present?

 2              MR. PLUNKETT:  Object to the form, lacks

 3    foundation.

 4              A.  (Chinese spoken).

 5              INTERPRETER:  Witness asked me to repeat the

 6    question.

 7              (Chinese spoken).

 8              A.  No.

 9     BY MS. CAPURRO:

10              Q.  When you spoke with Irico -- other Irico

11    employees to prepare for this deposition, which of them told

12    you that they met with Irico's competitors during the class

13    period?

14              MR. PLUNKETT:  Object to the form.

15              A.  (Chinese spoken).

16              INTERPRETER:  The witness asked me to repeat the

17    question.

18              MS. FU:  I would translate that as -- sorry.

19              INTERPRETER:  (Chinese spoken).

20              MS. FU:  (Chinese spoken).  "Met."

21              INTERPRETER:  (Chinese spoken).

22              A.  Are you referring the class period?

23     BY MS. CAPURRO:

24              Q.  Yes.

25              A.  I don't remember.

1                    CERTIFICATE OF COURT REPORTER

2

3    I, Bron Williams, an Accredited Real-time Reporter, hereby

4    certify that the testimony of the witness Wang Zhaojie in

5    the foregoing transcript, numbered pages 1 through 115,

6    taken on this 8th day of March, 2018 was recorded by me in

7    machine shorthand and was thereafter transcribed by me; and

8    that the foregoing transcript is a true and accurate

9    verbatim record of the said testimony.

10

11

12   I further certify that I am not a relative, employee,

13   counsel or financially involved with any of the parties to

14   the within cause, nor am I an employee or relative of any

15   counsel for the parties, nor am I in any way interested in

16   the outcome of the within cause.

17

18

19   Signed:    *Bron Williams*

20   Name:    Bron Williams

21   Date:    .......................

22

23

24

25

# Exhibit 10

John Taladay (*pro hac vice*)
john.taladay@bakerbotts.com
Erik Koons (*pro hac vice*)
erik.koons@bakerbotts.com
BAKER BOTTS LLP
1299 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone: (202)-639-7700
Facsimile: (202)-639-7890

Stuart C. Plunkett (State Bar No. 187971)
stuart.plunkett@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

*Attorneys for Defendants*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-05944-JST (N.D. Cal.) |
| | MDL No. 1917 |
| This Document Relates to: | **IRICO DEFENDANTS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO INDIRECT PURCHASER PLAINTIFFS' SECOND SET OF INTERROGATORIES** |
| ALL INDIRECT PURCHASER ACTIONS | |

PROPOUNDING PARTY:        Indirect Purchaser Plaintiffs

RESPONDING PARTIES:        Irico Group Corporation
                                          Irico Display Devices Co., Ltd.

SET NUMBER:                       Two

1    Pursuant to Federal Rules of Civil Procedure 26 and 33, Irico Group Corporation and Irico

2    Display Devices Co, Ltd. (collectively, "Irico" or "Irico Defendants") hereby supplement their

3    responses to the Indirect Purchaser Plaintiffs' ("Plaintiff") Second Set of Interrogatories

4    ("Interrogatories"). Irico reserves the right to amend or supplement these Objections and

5    Responses (the "Responses") to the extent allowed by the Federal Rules of Civil Procedure and

6    the Local Rules of Practice in Civil Proceedings before the United States District Court for the

7    Northern District of California ("Local Rules"). Subject to and without waiving any of Irico's

8    General and Specific Objections as set forth below, Irico is willing to meet and confer with

9    Plaintiff regarding such General and Specific Objections.

10    The following Responses are made only for purposes of this case. The Responses are

11    subject to all objections as to relevance, materiality and admissibility, and to any and all

12    objections on any ground that would require exclusion of any response if it were introduced in

13    court. All evidentiary objections and grounds are expressly reserved.

14    These Responses are subject to the provisions of the Stipulated Protective Order that the

15    Court issued on June 18, 2008 ("Protective Order"). Irico's Responses are hereby designated

16    "Confidential" in accordance with the provisions of the Protective Order.

## GENERAL OBJECTIONS

18    Irico makes the following General Objections to Plaintiff's Interrogatories:

19    1.    Irico's Responses are based upon information available to and located by Irico as

20    of the date of service of these Responses. In responding to Plaintiff's Interrogatories, Irico states

21    that it has conducted, or will conduct, a diligent search, reasonable in scope, of those files and

22    records in its possession, custody, or control believed to likely contain information responsive to

23    Plaintiff's Interrogatories.

24    2.    No express, incidental, or implied admissions are intended by these Responses and

25    should not be read or construed as such.

26    3.    Irico does not intend, and its Responses should not be construed as, an agreement

27    or acquiescence with any characterization of fact, assumption, or conclusion of law contained in

28

---

IRICO'S SUPPLEMENTAL OBJECTIONS                    1                    Master File No. 3:07-cv-05944-JST
AND RESPONSES TO IPP'S SECOND SET OF                                                      MDL No. 1917
INTERROGATORIES

1   or implied by the Interrogatories.

2       4.    To the extent that Irico responds to Plaintiff's Interrogatories by stating that Irico

3   will produce or make available for examination responsive information or documents, Irico does

4   not represent that any such information or documents exist. Irico will make a good faith and

5   reasonable attempt to ascertain whether information responsive to Plaintiff's Interrogatories exists

6   and is properly producible, and will produce or make available for examination non-privileged

7   responsive materials to the extent any are located during the course of a reasonable search.

8       5.    Irico objects to Plaintiff's Interrogatories to the extent that they are overly broad,

9   unduly burdensome, oppressive, and duplicative to the extent that they seek information or

10  documents that are already in the possession, custody, or control of Plaintiff.

11      6.    Irico objects to Plaintiff's Interrogatories to the extent that they seek to impose

12  obligations on Irico beyond those of the Federal Rules of Civil Procedure, the Local Rules, or any

13  Order of this Court.

14      7.    Irico objects to Plaintiff's Interrogatories to the extent they seek information that is

15  not relevant to jurisdictional issues or disproportionate to the needs of the case in resolving such

16  jurisdictional issues.

17      8.    Irico objects to Plaintiff's Interrogatories to the extent that they are vague,

18  ambiguous, or susceptible to more than one interpretation. Irico shall attempt to construe such

19  vague or ambiguous Interrogatories so as to provide for the production of responsive information

20  that is proportionate to the needs of the case. If Plaintiff subsequently asserts an interpretation of

21  any Interrogatory that differs from Irico's understanding, Irico reserves the right to supplement or

22  amend its Responses.

23      9.    Irico objects to Plaintiff's Interrogatories to the extent that they contain terms that

24  are insufficiently or imprecisely defined. Irico shall attempt to construe such vague or ambiguous

25  Interrogatories so as to provide for the production of responsive information that is proportionate

26  to the needs of the case.

27      10.    Irico objects to Plaintiff's Interrogatories to the extent that they seek information

28

---

IRICO'S SUPPLEMENTAL OBJECTIONS         2          Master File No. 3:07-cv-05944-JST
AND RESPONSES TO IPP'S SECOND SET OF                        MDL No. 1917
INTERROGATORIES

1   that is protected from disclosure by the attorney-client privilege, work product doctrine, joint

2   defense or common interest privilege, self-evaluative privilege, or any other applicable privilege

3   or immunity. Irico will provide only information that it believes to be non-privileged and

4   otherwise properly discoverable. None of Irico's responses is intended nor should be construed as

5   a waiver of any such privilege or immunity. The inadvertent or mistaken provision of any

6   information or responsive documents subject to any such doctrine, privilege, protection or

7   immunity from production shall not constitute a general, inadvertent, implicit, subject-matter,

8   separate, independent or other waiver of such doctrine, privilege, protection or immunity from

9   production.

10          11.     Irico objects to Plaintiff's Interrogatories to the extent that they call for

11   information that is not in the possession, custody, or control of Irico. Irico also objects to the

12   extent that any of Plaintiff's Interrogatories seek information from non-parties or third parties,

13   including but not limited to any of Irico's subsidiary or affiliated companies.

14          12.     Irico objects to Plaintiff's Interrogatories to the extent that responding would

15   require Irico to violate the privacy and/or confidentiality of a third party or confidentiality

16   agreement with a third party.

17          13.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information

18   that is publicly available, already in Plaintiffs' possession, custody, or control, or more readily

19   available from other sources.

20          14.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information

21   or documents concerning transactions outside the United States. Such Interrogatories are unduly

22   burdensome and irrelevant because they do not relate to actions by Irico in or causing a direct

23   effect in the United States.  Such Interrogatories are also unduly burdensome and irrelevant to this

24   pending action as Plaintiffs' class definition is confined to "individuals and entities that indirectly

25   purchased Cathode Ray Tube Products . . . in the United States" (see Indirect Purchaser Plaintiffs'

26   Fourth Consolidated Amended Complaint).

27          15.     Irico objects to Plaintiff's Interrogatories to the extent that compliance would

28

---

IRICO'S SUPPLEMENTAL OBJECTIONS            3            Master File No. 3:07-cv-05944-JST
AND RESPONSES TO IPP'S SECOND SET OF                   MDL No. 1917
INTERROGATORIES

1  require Irico to violate the laws, regulations, procedures, or orders of a judicial or regulatory body

2  of foreign jurisdictions.

3       16.    Irico's responses, whether now or in the future, pursuant to Plaintiff's

4  Interrogatories should not be construed as either (i) a waiver of any of Irico's general or specific

5  objections or (ii) an admission that such information or documents are either relevant or

6  admissible as evidence.

7       17.    Irico objects to Plaintiff's Interrogatories to the extent that compliance would

8  require Irico to seek information stored on backup or archived databases or other systems that are

9  not readily accessible or otherwise no longer active.

10       18.    Irico objects to Plaintiff's Interrogatories to the extent that they are compound

11  and/or contain discrete subparts in violation of Federal Rule of Civil Procedure 33(a)(1).

12       19.    Irico objects to Plaintiff's Interrogatories to the extent that they state and/or call for

13  legal conclusions.

14       20.    Irico objects to the Interrogatories to the extent that they contain express or

15  implied assumptions of fact or law with respect to the matters at issue in this case.

16       21.    Irico objects that Plaintiff's Interrogatories are irrelevant and premature because

17  the Court has not set a schedule for jurisdictional discovery or briefing that applies to Plaintiff.

18       22.    Irico reserves the right to assert additional General and Specific Objections as

19  appropriate to supplement these Responses.

20      These General Objections apply to each Interrogatory as though restated in full in the

21  responses thereto. The failure to mention any of the foregoing General Objections in the specific

22  responses set forth below shall not be deemed as a waiver of such objections or limitations.

23  **GENERAL OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

24       1.    Irico objects to the definitions of "You" and "Your" to the extent that Plaintiff

25  defines those terms to include the Irico's "present and former members, officer, agents,

26  employees, and all other persons acting or purporting to act on their behalf." This definition is

27  legally incorrect, overbroad, unduly burdensome, vague, and ambiguous. Irico also objects to the

28

IRICO'S SUPPLEMENTAL OBJECTIONS      4      Master File No. 3:07-cv-05944-JST
AND RESPONSES TO IPP'S SECOND SET OF           MDL No. 1917
INTERROGATORIES

1   inclusion of "all present and former directors, officers, Employees, agents, representatives or any

2   Persons acting or purporting to act on behalf of" Irico within this definition to the extent it

3   purports to encompass information that is protected by attorney-client privilege, work product

4   protection or any other applicable doctrine, privilege, protection or immunity or otherwise calls

5   for a legal conclusion.

6        2.      Irico objects to the definition of "Affiliate" as overbroad, unduly burdensome,

7   vague, and ambiguous. Irico further objects to the definition because it includes entities that are

8   not, or were not during the relevant time period, affiliates of Irico.

9        3.      Irico objects to the definitions of "CRT" and "CRT Products" (Definitions No. 6

10  and 7) on the grounds that they are vague, ambiguous and overly broad. Irico further objects to

11  the use of the term "CRT Products" to the extent that it is inconsistent with the definition of

12  "CRT Products" as set forth in Plaintiff's pleadings.

13       4.      Irico objects to the Instructions to the extent they purport to impose burdens or

14  obligations broader than, inconsistent with, or not authorized under the Federal Rules of Civil

15  Procedure or other applicable rule or Order of this Court.

16                    **SPECIFIC RESPONSES TO INTERROGATORIES**

17  **INTERROGATORY NO. 1**

18       State by year how many Irico CRTs and/or CRT Products (in both number of units and

19  revenue in U.S. dollars) You or Your Affiliates: (a) billed to and shipped to the United States,

20  (b) billed to an address in the United States, but shipped to a location outside of the United States;

21  (c) shipped to an address in the United States, but billed to a location outside of the United States,

22  and (d) shipped and billed to a location outside of the United States.

23  **RESPONSE TO INTERROGATORY NO. 1**

24       Irico reasserts and incorporates each of the General Objections and Objections to the

25  Definitions and Instructions set forth above.  Irico also objects that this interrogatory is

26  overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving

27  jurisdictional issues.  Irico further objects that this interrogatory seeks information beyond the

28

1 | scope of what is relevant to resolving jurisdictional issues.

2 |       Subject to and without waiving the objections stated above, Irico responds that its

3 | investigation regarding this interrogatory is ongoing and it intends to supplement this response.

4 | **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1**

5 |       Irico objects to the characterization of CNEIECC as an affiliate of Irico during the

6 | relevant time period.  CNEIECC was an independent entity during this period, but Irico provides

7 | this information where available.  Subject to and without waiving the objections stated above,

8 | Irico responds as follows:

9 |       **Irico and Affiliates**

10 |       Between 1995 and 2007, neither Irico nor its affiliates shipped or billed any Irico CRTs

11 | and/or CRT Products to an address in the United States.

12 |       In 1995, Irico and its affiliates shipped and billed 5,646,188 CRTs to a location outside of

13 | the United States.  In 1996, Irico and its affiliates shipped and billed 5,901,003 CRTs to a

14 | location outside of the United States.  In 1997, Irico and its affiliates shipped and billed 5,505,890 CRTs

15 | to a location outside of the United States.  In 1998, Irico and its affiliates shipped and billed

16 | 7,600,915 CRTs to a location outside of the United States.  In 1999, Irico and its affiliates shipped

17 | and billed 8,313,689 CRTs to a location outside of the United States.  In 2000, Irico and its

18 | affiliates shipped and billed 8,224,450 CRTs to a location outside of the United States.  In 2001,

19 | Irico and its affiliates shipped and billed 7,719,123 CRTs to a location outside of the United

20 | States.  In 2002, Irico and its affiliates shipped and billed 9,568,256 CRTs to a location outside of

21 | the United States.  In 2003, Irico and its affiliates shipped and billed 11,602,780 CRTs to a

22 | location outside of the United States.  In 2004, Irico and its affiliates shipped and billed

23 | 13,512,246 CRTs to a location outside of the United States.  In 2005, Irico and its affiliates

24 | shipped and billed 13,497,899 CRTs to a location outside of the United States.  In 2006, Irico and

25 | its affiliates shipped and billed 14,888,294 CRTs to a location outside of the United States.  In

26 | 2007, Irico and its affiliates shipped and billed 15,250,376 CRTs to a location outside of the

27 | United States.

28 |

IRICO'S SUPPLEMENTAL OBJECTIONS     6     Master File No. 3:07-cv-05944-JST
AND RESPONSES TO IPP'S SECOND SET OF     MDL No. 1917
INTERROGATORIES

**CNEIECC**

(a)    CNEIECC billed to and shipped CRTs and/or CRT Products to the United States in three years during the relevant period.

- In 1997, CNEIECC billed and shipped three CRTs to the United States.
- In 1998, CNEIECC billed and shipped 35 CRTs to the United States.
- In 2002, CNEIECC billed and shipped 2018 CRTs to the United States.

(b)    CNEIECC billed CRTs and/or CRT Products to an address in the United States, but shipped to a location outside of the United States in two years during the relevant period:

- In 1995, CNEIECC billed 2,520 CRTs to the United States, but shipped to a location outside of the United States.
- In 1999, CNEIECC billed 20,664 CRTs to the United States, but shipped to a location outside of the United States.

(c)    CNEIECC CRTs and/or CRT Products shipped to an address in the United States, but billed to a location outside of the United States, and

- In 1996, CNEIECC shipped 2016 CRTs to the United States, but billed to a location outside of the United States.

Irico further responds that its investigation regarding (1) the units shipped and billed to a location outside of the United States by CNEIECC during the relevant period; and (2) the revenue attendant to the above listed sales remains ongoing and it intends to supplement this response.

**INTERROGATORY NO. 2**

State by year how many Irico CRTs (in both number of units and revenue in U.S. dollars) You or Your Affiliates shipped to and/or billed to an original equipment manufacturer (OEM), electronic manufacturing service (EMS), original design manufacturer (ODM), or system integrator (SI) which You believed or had reason to believe would be incorporated into CRT Products to be sold in the United States.

**RESPONSE TO INTERROGATORY NO. 2**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico also objects that this interrogatory is overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving

1  jurisdictional issues.  Irico further objects that this interrogatory seeks information beyond the

2  scope of what is relevant to resolving jurisdictional issues.  Irico further objects that the phrase

3  "or had reason to believe" renders this interrogatory vague and ambiguous.

4     Subject to and without waiving the objections stated above, Irico responds that its

5  investigation regarding this interrogatory is ongoing and it intends to supplement this response.

6  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2**

7     Subject to and without waiving the objections stated above, Irico responds that neither

8  Irico nor its affiliates shipped CRTs to and/or billed to an original equipment manufacturer

9  (OEM), electronic manufacturing service (EMS), original design manufacturer (ODM), or system

10  integrator (SI) which it believed or had reason to believe would be incorporated into CRT

11  Products to be sold in the United States.

12  **INTERROGATORY NO. 3**

13     State by year and by size and type how many Irico CRTs and/or CRT Products (in both

14  number of units and revenue in U.S. dollars) were sold by You or Your Affiliates to the following

15  entities:

16     (1) Sichuan Changhong Electric Co., Ltd.;

17     (2) Konka Group Co. Ltd.;

18     (3) TCL Corporation;

19     (4) Skyworth Group Co., Ltd.;

20     (5) Hisense Electric Co. Ltd. Qingdao, China;

21     (6) Haier Electrical Appliances Co., Ltd.;

22     (7) Xiamen Overseas Chinese Electronic Co., Ltd.;

23     (8) Soyea Technology Co., Ltd.;

24     (9) Yisheng Technology Co., Ltd.;

25     (10) LG Electronics (Shenyang) Inc.;

26     (11) Hangzhou Jinlipu Electrical Co., Ltd.;

27     (12) Shenzhen Techtop Industrial Co., Ltd

28

1       (13) Suntrue International

2       (14) Starlight Marketing Macao Commercial Offshore, Ltd.; and

3       (15) Hangzhou Huashan Electric Co., Ltd

4   **RESPONSE TO INTERROGATORY NO. 3**

5       Irico reasserts and incorporates each of the General Objections and Objections to the

6   Definitions and Instructions set forth above.  Irico also objects that this interrogatory is

7   overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving

8   jurisdictional issues.  Irico further objects that this interrogatory seeks information beyond the

9   scope of what is relevant to resolving jurisdictional issues.

10      Subject to and without waiving the objections stated above, Irico responds that its

11  investigation regarding this interrogatory is ongoing and it intends to supplement this response.

12  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3**

13      Subject to and without waiving the objections stated above, Irico provides the information

14  in Attachment 1.  Irico further responds that its investigation regarding this interrogatory is

15  ongoing and it intends to supplement this response.

16  **INTERROGATORY NO. 4**

17      Describe the corporate and/or business relationship between You and Irico (USA) Inc.,

18  Including (i) any ownership interest You or any of Your Affiliates held in Irico (USA) Inc.; (ii)

19  the organizational and ownership structure of Irico (USA) Inc.; (iii) the purpose(s) and scope of

20  business of Irico (USA); and (iv) any activities conducted by Irico (USA) Inc. relating to the

21  manufacture, marketing, sale or distribution of CRTs or CRT Products.

22  **RESPONSE TO INTERROGATORY NO. 4**

23      Irico reasserts and incorporates each of the General Objections and Objections to the

24  Definitions and Instructions set forth above.  Irico also objects that this interrogatory is

25  overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving

26  jurisdictional issues.  Irico further objects that this interrogatory seeks information beyond the

27  scope of what is relevant to resolving jurisdictional issues.

28

---

IRICO'S SUPPLEMENTAL OBJECTIONS          9          Master File No. 3:07-cv-05944-JST
AND RESPONSES TO IPP'S SECOND SET OF                MDL No. 1917
INTERROGATORIES

1    Subject to and without waiving the objections stated above, Irico responds that its

2    investigation regarding this interrogatory is ongoing and it intends to supplement this response.

3    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4**

4    **(a)    Ownership and ownership structure of Irico (USA) Inc.**

5    Irico USA Inc. ("Irico USA") was a joint venture company established by capital

6    contributions from Irico Group, CNEIECC, and American citizens Huang Xueli and Huang

7    Maike.  Irico USA was incorporated in Fremont, California on July 5, 1995.  At the time Irico

8    USA was established, Irico and CNEIECC respectively held 45.7% and 34.3% shares in the

9    company.

10    On February 26, 1998, Huang Xueli and Huang Maike divested from Irico USA and sold

11    its shares Irico.  In 1999, CNEIECC also sold its shares to Irico, leaving Irico as the sole

12    shareholder.  At this point, Irico USA was run entirely by Irico's representative, General Manger

13    Liu Feng.

14    On April 10, 2001, Liu Feng sold Irico USA to another California company, called INB

15    Co., for $1,000,000.  This sale was not authorized by Irico.  At the time of the transaction, Liu

16    Feng was listed as the operator of INB Co.  Then, on May 7, 2001, shortly after the transfer, Sun

17    Xiaolin replaced Liu Feng as the registered operator of INB Co.  On February 3, 2003, Irico USA

18    was dissolved.

19    **(b)    Purpose and scope of business of Irico USA**

20    According to the Shaanxi Province People's Government decree establishing Irico USA,

21    the purpose of establishing Irico USA was to expand provincial exports of electromechanical

22    products to North America and to develop trade, investment, and cooperation between China and

23    the United States.  IRI-CRT-00003498.

24    **(c)    Activities conducted by Irico (USA) Inc. relating to the manufacture,
        marketing, sale or distribution of CRTs or CRT Products.**

25

26    Irico has not recovered any evidence that Irico USA ever manufactured, marketed, sold or

27    distributed any CRTs or CRT Products in the United States.  In 2001, after Liu Feng improperly

28

IRICO'S SUPPLEMENTAL OBJECTIONS                    10                    Master File No. 3:07-cv-05944-JST
AND RESPONSES TO IPP'S SECOND SET OF                                    MDL No. 1917
INTERROGATORIES

1   sold Irico's shares of Irico USA, Irico conducted an audit.  The resulting audit report revealed that

2   the only records kept of Irico USA's activities between 1995 and 2001 were (1) check stubs and

3   partial bank statements dating from between 1998 and 2001; and (2) the contract transferring

4   Irico USA to INB Co.  The detailing of that evidence did not indicate that Irico USA ever

5   manufactured, marketed, sold or distributed any CRTs or CRT Products in the United States.

6

7   Dated:  November 2, 2018                    BAKER BOTTS LLP

8

9                                              */s/ Stuart C. Plunkett*
                                               Stuart C. Plunkett
10                                             Email:  stuart.plunkett@bakerbotts.com
                                               BAKER BOTTS L.L.P.
11                                             101 California Street, Suite 3600
                                               San Francisco, CA94111
12                                             Telephone: (415) 291 6203
                                               Facsimile: (415) 291 6303
13
                                               John Taladay (*pro hac vice*)
14                                             john.taladay@bakerbotts.com
                                               Erik Koons (*pro hac vice*)
15                                             erik.koons@bakerbotts.com
                                               BAKER BOTTS LLP
16                                             1299 Pennsylvania Ave., NW
                                               Washington, D.C. 20004
17                                             Telephone: (202)-639-7700
                                               Facsimile: (202)-639-7890
18
                                               *Attorneys for Defendants*
19                                             *IRICO GROUP CORP. and*
                                               *IRICO DISPLAY DEVICES CO., LTD.*
20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

**In re: Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917**

3

      I declare that I am employed in the County of San Francisco, California.  I am over the

4

age of eighteen years and not a party to the within case; my business address is: Baker Botts LLP,

5

101 California Street, Suite 3600, San Francisco, CA 94111.

6

      On November 2, 2018, I served the following document(s) described as:

7

**IRICO DEFENDANTS' SUPPLEMENTAL OBJECTIONS AND RESPONSES**

8

**TO INDIRECT PURCHASER PLAINTIFFS'
SECOND SET OF INTERROGATORIES**

9

on the following interested parties in this action:

10

11

Guido Saveri (guido@saveri.com)
R. Alexander Saveri (rick@saveri.com)
Geoffrey C. Rushing (grushing@saveri.com)
Cadio Zirpoli (cadio@saveri.com)
Matthew D. Heaphy (mheaphy@saveri.com)
SAVERI & SAVERI, INC.
706 Sansome St # 200,
San Francisco, CA 94111

12

13

14

Mario N. Alioto (malioto@tatp.com)
Lauren C. Capurro (laurenrussell@tatp.com)
Joseph M. Patane (jpatane@tatp.com)
TRUMP ALIOTO TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123

15

*Lead Counsel for the Direct Purchaser
Plaintiffs*

*Lead Counsel for the Indirect Purchaser
Plaintiffs*

16

17

[X]    (BY ELECTRONIC MAIL) I caused such documents to be sent to the persons at the email addressed listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

18

19

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on November 2, 2018 in San Francisco, California.

20

21

                */s/ Reilly Stoler*

22

                     Reilly Stoler

23

24

25

26

27

28

ATTACHMENT 1

# Irico Group CRT Sales – 1995-2004

| Irico Group CRT Sales to Sichuan Changhong Electric Co., Ltd. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 14" | 18" | 21" | 14" (.28 Tube) | 14" (.31 Tube) | 15" Pure Flat | 15" Pure Flat | 21" Pure Flat | |
| 1995 | | | | | | | | | |
| 1996 | 20,162 | 190,400 | 685,731 | | 1,008 | | | | |
| 1997 | | | 1,556,376 | | | | | | |
| 1998 | | | 985,307 | | | | | | |
| 1999 | 168 | | 365,860 | | | | | | |
| 2000 | 58,590 | | 110,000 | | | | | | |
| 2001 | 247,932 | | | | | | | | |
| 2002 | 630,206 | | | | | | | | |
| 2003 | 270,968 | | | | | 47,640 | 72,744 | 85,280 | |
| 2004 | 291,784 | | | | | | 33,264 | 90,440 | |
| Irico Electronics CRT Sales to Sichuan Changhong Electric Co., Ltd. | | | | | | | | | |
| | 14" | 18" | 21" | 14" (.28 Tube) | 14" (.31 Tube) | 15" Pure Flat | 15" Pure Flat | 21" Pure Flat | |
| 1995 | 30,241 | 376,050 | 699,411 | | | | | | |
| 1996 | | 16,000 | 55,269 | 2 | | | | | |
| 1997-2004 | | | | | | | | | |

| Irico Group CRT Sales to Konka Group Co. Ltd | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 14" | 18" | 21" | 21" PF Pure Flat | 15" Pure Flat | 21" Pure Flat | | | |
| 1995 | | | | | | | | | |
| 1996 | 17,536 | 23,148 | 90,323 | | | | | | |
| 1997 | 20,120 | | 231,140 | | | | | | |
| 1998 | 9,072 | | 256,567 | | | | | | |
| 1999 | 257,472 | | 639,539 | | | | | | |
| 2000 | 314,565 | | 140,000 | | | | | | |
| 2001 | 91,191 | | | | | | | | |
| 2002 | 170,640 | | | | | | | | |
| 2003 | 133,298 | | | 4,232 | 3,024 | 105,000 | | | |
| 2004 | 97,920 | | | | 35,384 | 150,000 | | | |

| Irico Electronics CRT Sales to Konka Group Co. Ltd | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 14" | 18" | 21" | 14" (.28 Tube) | 14" (.31 Tube) | 15" Pure Flat | 15" Pure Flat | 21" Pure Flat | |
| 1995 | 48,386 | 17,010 | 31,400 | | | | | | |
| 1996 | 4,032 | 5,000 | 15,856 | | | | | | |
| 1997-2004 | | | | | | | | | |

| Irico Group CRT Sales to TCL Corporation | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 14" | 21" | 15" | 21" PF Pure Flat | 15" Pure Flat | 21" Pure Flat | | |
| 1995 | | | | | | | | |
| 1996 | | | | | | | | |
| 1997 | 31,392 | 57,610 | | | | | | |
| 1998 | 3,024 | 51,098 | | | | | | |
| 1999 | 16,464 | 608,119 | | | | | | |
| 2000 | 252 | 199,670 | | | | | | |
| 2001 | | | | | | | | |
| 2002 | 46,552 | | 11,260 | | | | | |
| 2003 | 17,136 | | | 119,592 | | 216,639 | | |
| 2004 | 74,352 | 5,080 | | | 840 | 392,200 | | |

3

| Irico Group CRT Sales to Skyworth Group Co., Ltd. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 14" | 18" | 21" | 15" | 21"Pure Flat | 21" Flat TV | | | |
| 1995 | | | | | | | | | |
| 1996 | | | | | | | | | |
| 1997 | 3,024 | | 10,120 | | | | | | |
| 1998 | 7,140 | | | | | | | | |
| 1999 | 924 | | 70,256 | 6 | | | | | |
| 2000 | 12,096 | | | | | | | | |
| 2001 | 24,864 | | | | | | | | |
| 2002 | 18,144 | | | | | | | | |
| 2003 | 10,992 | | 10,000 | | 41,480 | 171,480 | | | |
| 2004 | 38,352 | 200 | | | | 313,680 | | | |
| Irico Electronics CRT Sales to Skyworth Group Co., Ltd. | | | | | | | | | |
| | 14" | 18" | 21" | 15" | 21" Pure | 21" Flat TV | | | |
| 1995 | 12,600 | | | | | | | | |
| 1996 | | | | | | | | | |
| 1997-2004 | | | | | | | | | |

4

| Irico Group CRT Sales to Hisense Electric Co. Ltd. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 14" | 18" | 21" | 21" CRT 700 Line | 14"  B Tube | 21"PF Pure Flat | 15" Pure Flat | 21" Pure Flat | |
| 1995 | | | | | | | | | |
| 1996 | 5,548 | 16,200 | 87,820 | | | | | | |
| 1997 | 4,200 | 8,401 | 171,161 | 3 | | | | | |
| 1998 | 36 | | 238,931 | | | | | | |
| 1999 | 4,200 | 2,000 | 285,617 | | 9,996 | | | | |
| 2000 | 31,284 | | 120,960 | | | | | | |
| 2001 | 2,035 | 10,000 | | | | | | | |
| 2002 | 32,112 | 8,020 | | | | | | | |
| 2003 | 108,796 | | | | | 17,258 | 2 | 50,480 | |
| 2004 | 119,453 | | 12,600 | | | | 792 | 108,184 | |
| Irico Electronics CRT Sales to Hisense Electric Co. Ltd. | | | | | | | | | |
| | 14" | 18" | 21" | 21" CRT 700 Line | 14" B Tube | 21" PF Pure Flat | 15" Pure Flat | 21" Pure Flat | |
| 1995 | 2,185 | 37,470 | 42,180 | | | | | | |
| 1996 | | 100 | 3,041 | | | | | | |
| 1997-2004 | | | | | | | | | |

| Irico Group CRT Sales to Haier Electrical Appliances Co., Ltd. | | | | | | | | | |
|------|--------|--------|-------------|---------------------|-----------------|------------------|---|---|---|
|      | 14"    | 21"    | 21" B Tube  | 15" PF Pure Flat    | 15" Pure Flat   | 21" Pure Flat    |   |   |   |
| 1995 |        |        |             |                     |                 |                  |   |   |   |
| 1996 |        |        |             |                     |                 |                  |   |   |   |
| 1997 |        |        |             |                     |                 |                  |   |   |   |
| 1998 | 2,214  | 9,000  |             |                     |                 |                  |   |   |   |
| 1999 | 1,044  | 43,904 | 4,654       |                     |                 |                  |   |   |   |
| 2000 | 34,814 | 8,164  |             |                     |                 |                  |   |   |   |
| 2001 | 86,573 |        |             |                     |                 |                  |   |   |   |
| 2002 | 273,204|        |             | 452                 |                 |                  |   |   |   |
| 2003 | 55,426 |        |             |                     | 1,248           | 62,848           |   |   |   |
| 2004 | 145,754| 216    |             |                     | 26,450          | 86,240           |   |   |   |

6

| Irico Group CRT Sales to Xiamen Overseas Chinese Electronic Co., Ltd. | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 14" | 14" 0.28 Tube | 21" | .39 Tube | 15" | 15" Monitor | 15PF 15" Pure Flat | 21PF 21" Pure Flat | 15" Pure Flat | 21" Pure Flat |
| 1995 | | | | | | | | | | |
| 1996 | | | | | | | | | | |
| 1997 | | | 82,929 | | | | | | | |
| 1998 | 9,072 | | 66,200 | | | | | | | |
| 1999 | 76,832 | | 110,560 | | | | | | | |
| 2000 | 20,496 | | 15,120 | | 24,276 | 17,136 | | | 17,136 | |
| 2001 | 4,368 | | | | 5,040 | | | | | |
| 2002 | 122,112 | | | | | | | | | |
| 2003 | 52,164 | | | | | | 4,048 | 16 | | 17,160 |
| 2004 | 5,952 | | | | | | | | 2,352 | 61,193 |

| Irico Electronics CRT Sales to Xiamen Overseas Chinese Electronic Co., Ltd. | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 14" | 18" | 21" | 14" High Definition | 14" Medium Definition | | | | | |
| 1995 | 43,347 | | 34,002 | 1,010 | 4,538 | | | | | |
| 1996 | | | | | | | | | | |
| 1997-2004 | | | | | | | | | | |

| Irico Group CRT Sales to Soyea Technology Co., Ltd. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
|  | 14" | 21" | 21" Pure Flat | 21"PF Pure Flat |  |  |  |  |  |
| 1995 |  |  |  |  |  |  |  |  |  |
| 1996 |  |  |  |  |  |  |  |  |  |
| 1997 |  |  |  |  |  |  |  |  |  |
| 1998 |  |  |  |  |  |  |  |  |  |
| 1999 |  | 41,200 |  |  |  |  |  |  |  |
| 2000 |  |  |  |  |  |  |  |  |  |
| 2001 | 72 |  |  |  |  |  |  |  |  |
| 2002 | 32,040 |  |  |  |  |  |  |  |  |
| 2003 | 12,984 |  | 5,824 | 2,884 |  |  |  |  |  |
| 2004 | 8,804 |  | 1,123 |  |  |  |  |  |  |

| Irico Group CRT Sales to LG Electronics (Shenyang) Inc. | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
|  | 15" |  |  |  |  |  |  |  |
| 1995 |  |  |  |  |  |  |  |  |
| 1996 |  |  |  |  |  |  |  |  |
| 1997 |  |  |  |  |  |  |  |  |
| 1998 |  |  |  |  |  |  |  |  |
| 1999 |  |  |  |  |  |  |  |  |
| 2000 | 27,288 |  |  |  |  |  |  |  |
| 2001 | 115,409 |  |  |  |  |  |  |  |
| 2002 | 120 |  |  |  |  |  |  |  |
| 2003 |  |  |  |  |  |  |  |  |
| 2004 |  |  |  |  |  |  |  |  |

| Irico Group CRT Sales to Hangzhou Jinlipu Electrical Co., Ltd. | | | | | | | | | |
|------|------|------|------------|------|---------------------------|--|--|--|--|
|      | 14"  | 21"  | 14" B Tube | 15"  | 15" CD Electronic Gun     |  |  |  |  |
| 1995 |      |      |            |      |                           |  |  |  |  |
| 1996 |      |      |            |      |                           |  |  |  |  |
| 1997 |      |      |            |      |                           |  |  |  |  |
| 1998 |      |      |            |      | 38                        |  |  |  |  |
| 1999 | 5,040 | 4,480 | 2,352    |      |                           |  |  |  |  |
| 2000 |      |      |            |      |                           |  |  |  |  |
| 2001 |      |      |            | 1,008 |                          |  |  |  |  |
| 2002 |      |      |            |      |                           |  |  |  |  |
| 2003 |      |      | 2,688      |      |                           |  |  |  |  |
| 2004 |      |      |            |      |                           |  |  |  |  |

# Irico Display CRT Sales – 2004-2007

| Irico Display CRT Sales to Sichuan Changhong Electric Co., Ltd. | | |
|---|---|---|
| **Year** | **Type** | **Quantity** |
| 2004 | 21" Flat | 652520 |
| 2004 | 25" Flat | 161136 |
| 2004 | 25" Pure Flat | 101032 |
| 2004 | 29" High Definition | 4832 |
| 2004 | 29" Detail Spacer | 2048 |
| | | |
| 2005 | 21" Flat | 519481 |
| 2005 | 25" Flat | 180859 |
| 2005 | 25" Pure Flat | 94041 |
| | | |
| 2006 | 21" Flat | 959270 |
| 2006 | 25" Flat | 298702 |
| 2006 | 25" Pure Flat | 179830 |
| | | |
| 2007 | 21" Flat | 377368 |
| 2007 | 21" PF Pure Flat | 9696 |
| 2007 | 25" Flat | 132698 |
| 2007 | 25" Pure Flat | 81784 |
| 2007 | 29" Pure Flat | 78643 |

| Irico Display CRT Sales to Konka Group Co. Ltd. | | |
|---|---|---|
| **Year** | **Type** | **Quantity** |
| 2004 | 21" Flat | 519592 |
| 2004 | 21" Thick Tube | 232 |
| 2004 | 25" Pure Flat | 262000 |
| 2004 | 25" Flat | 272480 |
| 2004 | 29" Pure Flat | 15668 |
| | | |
| 2005 | 21" Flat | 247818 |
| 2005 | 25" Pure Flat | 107480 |
| 2005 | 25" Flat | 176292 |
| | | |
| 2006 | 21" Flat | 543148 |
| 2006 | 25" Pure Flat | 302044 |
| 2006 | 25" Flat | 198801 |
| 2006 | 29" Pure Flat | 112 |
| | | |
| 2007 | 21" Flat | 583457 |
| 2007 | 25" Pure Flat | 158896 |
| 2007 | 25" Flat | 166546 |
| 2007 | 29" Pure Flat | 71344 |

| Irico Display CRT Sales to TCL Corporation | | |
|---|---|---|
| Year | Type | Quantity |
| 2004 | 21" Flat | 1063013 |
| 2004 | 25" Pure Flat | 291275 |
| 2004 | 25" Flat | 185376 |
| 2004 | 29" High Definition Tube | 22336 |
| | | |
| 2005 | 25"PF Pure Flat | 5751 |
| 2005 | 21" Flat | 234282 |
| 2005 | 25" Pure Flat | 269126 |
| 2005 | 25" Flat | 85412 |
| 2005 | 29" Pure Flat | 1920 |
| 2005 | 29" High Definition Tube | 13696 |
| | | |
| 2006 | 21" Flat | 19200 |
| 2006 | 25" Pure Flat | 33816 |
| 2006 | 25" PF Pure Flat | 4752 |
| 2006 | 25" PF Pure Flat | 15672 |
| 2006 | 25" FS | 1152 |
| 2006 | 21" FS | 1056 |
| 2006 | 21" Flat | 504836 |
| 2006 | 25" Pure Flat | 202672 |
| 2006 | 25" Flat | 19324 |
| | | |
| 2007 | 21" Pure Flat | 129024 |
| 2007 | 25" Pure Flat | 12096 |
| 2007 | 21" Flat | 709072 |
| 2007 | 25" Pure Flat | 304272 |
| 2007 | 25" Flat | 40250 |
| 2007 | 29" Pure Flat | 72048 |

13

| Irico Display CRT Sales to Skyworth Group Co., Ltd. | | |
|---|---|---|
| **Year** | **Type** | **Quantity** |
| 2005 | 21" Flat | 5632 |
| 2005 | 25" Pure Flat | 2000 |
| 2005 | 25" Flat | 20000 |
| | | |
| 2006 | 21" Flat | 60960 |
| 2006 | 25" Pure Flat | 37040 |
| 2006 | 25" Flat | 150560 |
| | | |
| 2007 | 21" Flat | 169776 |
| 2007 | 25" Pure Flat | 3120 |
| 2007 | 25" Flat | 45240 |

| Irico Display CRT Sales to Hisense Electric Co. Ltd. | | |
|---|---|---|
| **Year** | **Type** | **Quantity** |
| 2004 | 21" Flat | 571976 |
| 2004 | 25" Flat | 294167 |
| 2004 | 25" Pure Flat | 22856 |
| 2004 | 29" Pure Flat | 1320 |
| | | |
| 2005 | 21" Flat | 331132 |
| 2005 | 25" Flat | 236906 |
| 2005 | 25" Pure Flat | 54954 |
| 2005 | 29" Pure Flat | 328 |
| | | |
| 2006 | 21" | 40822 |
| 2006 | 21" Flat | 464273 |
| 2006 | 25" Flat | 294454 |
| 2006 | 25" Pure Flat | 19560 |
| | | |
| 2007 | 21" PF Pure Flat | 1600 |
| 2007 | 21" Flat | 368714 |
| 2007 | 25" Flat | 83267 |
| 2007 | 25" Pure Flat | 14298 |
| 2007 | 29" Pure Flat | 19438 |

| Irico Display CRT Sales to Haier Electrical Appliances Co., Ltd. | | |
|---|---|---|
| **Year** | **Type** | **Quantity** |
| 2004 | 21" Flat | 140108 |
| 2004 | 25" Pure Flat | 135280 |
| 2004 | 25" Flat | 112031 |
| 2004 | 29" | 1600 |
|  |  |  |
| 2005 | 21" Flat | 30200 |
| 2005 | 25" Pure Flat | 45375 |
| 2005 | 25" Flat | 117851 |
| 2005 | 29" | 848 |
|  |  |  |
| 2006 | 25" Flat | 12696 |
|  |  |  |
| 2007 | 21" Flat | 100224 |
| 2007 | 25" Flat | 24616 |

| Irico Display CRT Sales to Xiamen Overseas Chinese Electronic Co., Ltd. | | |
|---|---|---|
| **Year** | **Type** | **Quantity** |
| 2004 | 21" Flat | 125840 |
| 2004 | 25" Flat | 77728 |
| 2004 | 25" Pure Flat | 8672 |
| | | |
| 2005 | 21" Flat | 90775 |
| 2005 | 25" Flat | 63136 |
| 2005 | 25" Pure Flat | 30760 |
| | | |
| 2006 | 21" Flat | 206640 |
| 2006 | 25" Flat | 207256 |
| 2006 | 25" Pure Flat | 41900 |
| | | |
| 2007 | 21" Flat | 816 |
| 2007 | 25" Flat | 25920 |
| 2007 | 25" Pure Flat | 10400 |

| Irico Display CRT Sales to Soyea Technology Co., Ltd. | | |
|---|---|---|
| **Year** | **Type** | **Quantity** |
| 2004 | 21" Flat | 70504 |
| 2004 | 25" Flat | 2400 |
| 2004 | 25" Pure Flat | 17620 |
| 2004 | 29" | 64 |
| | | |
| 2005 | 21" Flat | 13720 |
| 2005 | 25" Flat | 2840 |
| 2005 | 25" Pure Flat | 15866 |
| | | |
| 2006 | 21" Flat | 57344 |
| 2006 | 25" Flat | 31504 |
| 2006 | 25" Pure Flat | 26800 |
| | | |
| 2007 | 21" Flat | 8544 |
| 2007 | 25" Flat | 3000 |
| 2007 | 25" Pure Flat | 104 |
| 2007 | 29" | 1104 |

| Irico Display CRT Sales to Yisheng Technology Co., Ltd. | | |
|---|---|---|
| **Year** | **Type** | **Quantity** |
| 2005 | 21" Flat | 17912 |
| 2005 | 25" Flat | 10360 |
| 2005 | 25" Pure Flat | 2489 |
| 2005 | 29" Pure Flat | 1216 |
| | | |
| 2006 | 21" Flat | 37770 |
| 2006 | 25" Flat | 23759 |
| 2006 | 25" Pure Flat | 19665 |
| 2006 | 29" Pure Flat | 384 |
| | | |
| 2007 | 21" Flat | 158124 |
| 2007 | 25" Flat | 10916 |
| 2007 | 25" Pure Flat | 3125 |
| 2007 | 29" Pure Flat | 1920 |

| Irico Display CRT Sales to LG Electronics (Shenyang) Inc. | | |
|---|---|---|
| **Year** | **Type** | **Quantity** |
| 2007 | 21" FS | 253 |
| 2007 | 29" Pure Flat | 117 |
| 2007 | 14" | 9600 |

| Irico Display CRT Sales to Hangzhou Jinlipu Electrical Co., Ltd. | | |
|---|---|---|
| **Year** | **Type** | **Quantity** |
| 2004 | 21" Flat | 4160 |
| 2004 | 25" Flat | 66310 |
| | | |
| 2005 | 21" Flat | 61456 |
| 2005 | 25" Flat | 1696 |
| | | |
| 2006 | 21" Flat | 29952 |
| 2006 | 25" Flat | 5280 |
| | | |
| 2007 | 21" Flat | 27616 |
| 2007 | 25" Pure Flat | 1000 |
| 2007 | 25" Flat | 4640 |
| 2007 | 29" | 1022 |

| Irico Display CRT Sales to Shenzhen Techtop Industrial Co., Ltd. | | |
|---|---|---|
| Year | Type | Quantity |
| 2005 | 21" Flat | 432 |
| 2005 | 25" Flat | 608 |
| 2005 | 29" | 96 |
| | | |
| 2006 | 25" Flat | 5280 |
| | | |
| 2007 | 21" Flat | 2682 |
| 2007 | 25" Flat | 15256 |
| 2007 | 29" | 2134 |

| Irico Display CRT Sales to Hangzhou Huashan Electric Co., Ltd. | | |
|---|---|---|
| Year | Type | Quantity |
| 2007 | 25" Flat | 1200 |

# Exhibit 11

1   John Taladay (*pro hac vice*)
    john.taladay@bakerbotts.com
2   BAKER BOTTS LLP
    1299 Pennsylvania Ave., NW
3   Washington, D.C. 20004
    Telephone: (202)-639-7700
4   Facsimile: (202)-639-7890

5   Stuart C. Plunkett (State Bar No. 187971)
    stuart.plunkett@bakerbotts.com
6   Peter Huston (State Bar No. 150058)
    peter.huston@bakerbotts.com
7   BAKER BOTTS LLP
    101 California Street, Suite 3600
8   San Francisco, California 94111
    Telephone: (415) 291-6200
9   Facsimile: (415) 291-6300

10
    *Attorneys for Defendants*
11  *IRICO GROUP CORP. and*
    *IRICO DISPLAY DEVICES CO., LTD.*
12

13              **UNITED STATES DISTRICT COURT**

14             **NORTHERN DISTRICT OF CALIFORNIA**

15                **SAN FRANCISCO DIVISION**

16

17  IN RE: CATHODE RAY TUBE (CRT)          Master File No. 3:07-cv-05944-JST
    ANTITRUST LITIGATION                   (N.D. Cal.)
18
                                           MDL No. 1917
19  ────────────────────────────────
                                           **IRICO DEFENDANTS' CORRECTED**
20  This Document Relates to:              **SUPPLEMENTAL OBJECTIONS AND**
                                           **RESPONSES TO INDIRECT**
    ALL INDIRECT PURCHASER ACTIONS         **PURCHASER PLAINTIFFS' SECOND**
21                                         **SET OF INTERROGATORIES**
22

23

24  PROPOUNDING PARTY:        Indirect Purchaser Plaintiffs

25  RESPONDING PARTIES:       Irico Group Corporation
                              Irico Display Devices Co., Ltd.
26
    SET NUMBER:               Two
27

28  ────────────────────────────────────────────────────────────────────
    IRICO'S CORRECTED SUPPLEMENTAL                    Master File No. 3:07-cv-05944-JST
    OBJECTIONS AND RESPONSES TO IPP'S                              MDL No. 1917
    SECOND SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, Irico Group Corporation and Irico Display Devices Co, Ltd. (collectively, "Irico" or "Irico Defendants") hereby correct their responses to the Indirect Purchaser Plaintiffs' ("Plaintiff") Second Set of Interrogatories ("Interrogatories"). Irico reserves the right to amend or supplement these Objections and Responses (the "Responses") to the extent allowed by the Federal Rules of Civil Procedure and the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California ("Local Rules"). Subject to and without waiving any of Irico's General and Specific Objections as set forth below, Irico is willing to meet and confer with Plaintiff regarding such General and Specific Objections.

The following Responses are made only for purposes of this case. The Responses are subject to all objections as to relevance, materiality and admissibility, and to any and all objections on any ground that would require exclusion of any response if it were introduced in court. All evidentiary objections and grounds are expressly reserved.

These Responses are subject to the provisions of the Stipulated Protective Order that the Court issued on June 18, 2008 ("Protective Order"). Irico's Responses are hereby designated "Confidential" in accordance with the provisions of the Protective Order.

## **GENERAL OBJECTIONS**

Irico makes the following General Objections to Plaintiff's Interrogatories:

1.      Irico's Responses are based upon information available to and located by Irico as of the date of service of these Responses. In responding to Plaintiff's Interrogatories, Irico states that it has conducted, or will conduct, a diligent search, reasonable in scope, of those files and records in its possession, custody, or control believed to likely contain information responsive to Plaintiff's Interrogatories.

2.      No express, incidental, or implied admissions are intended by these Responses and should not be read or construed as such.

3.      Irico does not intend, and its Responses should not be construed as, an agreement or acquiescence with any characterization of fact, assumption, or conclusion of law contained in

1    or implied by the Interrogatories.

2          4.      To the extent that Irico responds to Plaintiff's Interrogatories by stating that Irico

3    will produce or make available for examination responsive information or documents, Irico does

4    not represent that any such information or documents exist. Irico will make a good faith and

5    reasonable attempt to ascertain whether information responsive to Plaintiff's Interrogatories exists

6    and is properly producible, and will produce or make available for examination non-privileged

7    responsive materials to the extent any are located during the course of a reasonable search.

8          5.      Irico objects to Plaintiff's Interrogatories to the extent that they are overly broad,

9    unduly burdensome, oppressive, and duplicative to the extent that they seek information or

10   documents that are already in the possession, custody, or control of Plaintiff.

11         6.      Irico objects to Plaintiff's Interrogatories to the extent that they seek to impose

12   obligations on Irico beyond those of the Federal Rules of Civil Procedure, the Local Rules, or any

13   Order of this Court.

14         7.      Irico objects to Plaintiff's Interrogatories to the extent they seek information that is

15   not relevant to jurisdictional issues or disproportionate to the needs of the case in resolving such

16   jurisdictional issues.

17         8.      Irico objects to Plaintiff's Interrogatories to the extent that they are vague,

18   ambiguous, or susceptible to more than one interpretation. Irico shall attempt to construe such

19   vague or ambiguous Interrogatories so as to provide for the production of responsive information

20   that is proportionate to the needs of the case. If Plaintiff subsequently asserts an interpretation of

21   any Interrogatory that differs from Irico's understanding, Irico reserves the right to supplement or

22   amend its Responses.

23         9.      Irico objects to Plaintiff's Interrogatories to the extent that they contain terms that

24   are insufficiently or imprecisely defined. Irico shall attempt to construe such vague or ambiguous

25   Interrogatories so as to provide for the production of responsive information that is proportionate

26   to the needs of the case.

27         10.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information

28

that is protected from disclosure by the attorney-client privilege, work product doctrine, joint defense or common interest privilege, self-evaluative privilege, or any other applicable privilege or immunity. Irico will provide only information that it believes to be non-privileged and otherwise properly discoverable. None of Irico's responses is intended nor should be construed as a waiver of any such privilege or immunity. The inadvertent or mistaken provision of any information or responsive documents subject to any such doctrine, privilege, protection or immunity from production shall not constitute a general, inadvertent, implicit, subject-matter, separate, independent or other waiver of such doctrine, privilege, protection or immunity from production.

11.     Irico objects to Plaintiff's Interrogatories to the extent that they call for information that is not in the possession, custody, or control of Irico. Irico also objects to the extent that any of Plaintiff's Interrogatories seek information from non-parties or third parties, including but not limited to any of Irico's subsidiary or affiliated companies.

12.     Irico objects to Plaintiff's Interrogatories to the extent that responding would require Irico to violate the privacy and/or confidentiality of a third party or confidentiality agreement with a third party.

13.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information that is publicly available, already in Plaintiffs' possession, custody, or control, or more readily available from other sources.

14.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information or documents concerning transactions outside the United States. Such Interrogatories are unduly burdensome and irrelevant because they do not relate to actions by Irico in or causing a direct effect in the United States.  Such Interrogatories are also unduly burdensome and irrelevant to this pending action as Plaintiffs' class definition is confined to "individuals and entities that indirectly purchased Cathode Ray Tube Products . . . in the United States" (see Indirect Purchaser Plaintiffs' Fourth Consolidated Amended Complaint).

15.     Irico objects to Plaintiff's Interrogatories to the extent that compliance would

require Irico to violate the laws, regulations, procedures, or orders of a judicial or regulatory body of foreign jurisdictions.

16.     Irico's responses, whether now or in the future, pursuant to Plaintiff's Interrogatories should not be construed as either (i) a waiver of any of Irico's general or specific objections or (ii) an admission that such information or documents are either relevant or admissible as evidence.

17.     Irico objects to Plaintiff's Interrogatories to the extent that compliance would require Irico to seek information stored on backup or archived databases or other systems that are not readily accessible or otherwise no longer active.

18.     Irico objects to Plaintiff's Interrogatories to the extent that they are compound and/or contain discrete subparts in violation of Federal Rule of Civil Procedure 33(a)(1).

19.     Irico objects to Plaintiff's Interrogatories to the extent that they state and/or call for legal conclusions.

20.     Irico objects to the Interrogatories to the extent that they contain express or implied assumptions of fact or law with respect to the matters at issue in this case.

21.     Irico objects that Plaintiff's Interrogatories are irrelevant and premature because the Court has not set a schedule for jurisdictional discovery or briefing that applies to Plaintiff.

22.     Irico reserves the right to assert additional General and Specific Objections as appropriate to supplement these Responses.

These General Objections apply to each Interrogatory as though restated in full in the responses thereto. The failure to mention any of the foregoing General Objections in the specific responses set forth below shall not be deemed as a waiver of such objections or limitations.

## **GENERAL OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.     Irico objects to the definitions of "You" and "Your" to the extent that Plaintiff defines those terms to include the Irico's "present and former members, officer, agents, employees, and all other persons acting or purporting to act on their behalf." This definition is legally incorrect, overbroad, unduly burdensome, vague, and ambiguous. Irico also objects to the

inclusion of "all present and former directors, officers, Employees, agents, representatives or any Persons acting or purporting to act on behalf of" Irico within this definition to the extent it purports to encompass information that is protected by attorney-client privilege, work product protection or any other applicable doctrine, privilege, protection or immunity or otherwise calls for a legal conclusion.

2.      Irico objects to the definition of "Affiliate" as overbroad, unduly burdensome, vague, and ambiguous. Irico further objects to the definition because it includes entities that are not, or were not during the relevant time period, affiliates of Irico.

3.      Irico objects to the definitions of "CRT" and "CRT Products" (Definitions No. 6 and 7) on the grounds that they are vague, ambiguous and overly broad. Irico further objects to the use of the term "CRT Products" to the extent that it is inconsistent with the definition of "CRT Products" as set forth in Plaintiff's pleadings.

4.      Irico objects to the Instructions to the extent they purport to impose burdens or obligations broader than, inconsistent with, or not authorized under the Federal Rules of Civil Procedure or other applicable rule or Order of this Court.

## SPECIFIC RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 3

State by year and by size and type how many Irico CRTs and/or CRT Products (in both number of units and revenue in U.S. dollars) were sold by You or Your Affiliates to the following entities:

(1) Sichuan Changhong Electric Co., Ltd.;

(2) Konka Group Co. Ltd.;

(3) TCL Corporation;

(4) Skyworth Group Co., Ltd.;

(5) Hisense Electric Co. Ltd. Qingdao, China;

(6) Haier Electrical Appliances Co., Ltd.;

(7) Xiamen Overseas Chinese Electronic Co., Ltd.;

1    (8) Soyea Technology Co., Ltd.;

2    (9) Yisheng Technology Co., Ltd.;

3    (10) LG Electronics (Shenyang) Inc.;

4    (11) Hangzhou Jinlipu Electrical Co., Ltd.;

5    (12) Shenzhen Techtop Industrial Co., Ltd

6    (13) Suntrue International

7    (14) Starlight Marketing Macao Commercial Offshore, Ltd.; and

8    (15) Hangzhou Huashan Electric Co., Ltd

9    **RESPONSE TO INTERROGATORY NO. 3**

10    Irico reasserts and incorporates each of the General Objections and Objections to the

11    Definitions and Instructions set forth above.  Irico also objects that this interrogatory is

12    overbroad, unduly burdensome, and disproportionate to the needs of the case in resolving

13    jurisdictional issues.  Irico further objects that this interrogatory seeks information beyond the

14    scope of what is relevant to resolving jurisdictional issues.

15    Subject to and without waiving the objections stated above, Irico responds that its

16    investigation regarding this interrogatory is ongoing and it intends to supplement this response.

17    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3**

18    Subject to and without waiving the objections stated above, Irico provides the information

19    in Attachment 1.  Irico further responds that its investigation regarding this interrogatory is

20    ongoing and it intends to supplement this response.

21    **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3**

22    Subject to and without waiving the objections stated above, Irico provides the information

23    in Attachment 2.  Irico further responds that its investigation regarding this interrogatory is

24    ongoing and it intends to supplement this response.

25    **THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3**

26    Subject to and without waiving the objections stated above and pursuant to IPPs' January

27    16th request, Irico provides the information in Attachment 4.

28

---

IRICO'S CORRECTED SUPPLEMENTAL            6            Master File No. 3:07-cv-05944-JST
OBJECTIONS AND RESPONSES TO IPP'S                      MDL No. 1917
SECOND SET OF INTERROGATORIES

1    **CORRECTED SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3**

2          Irico has identified mathematical errors that resulted in incorrect revenue information

3    contained in Attachment 2 regarding Irico Display's revenues from sales of CRTs to Sichuan

4    Changhong Electric Co., Ltd. and TCL Corporation.  Subject to and without waiving the

5    objections stated above, Irico hereby provides a corrected Attachment 2.

6

7

8    Dated:  April 11, 2019                    BAKER BOTTS LLP

9
                                               */s/ Stuart C. Plunkett*
10                                             Stuart C. Plunkett
                                               Email:  stuart.plunkett@bakerbotts.com
11                                             Peter Huston
                                               peter.huston@bakerbotts.com
12                                             BAKER BOTTS L.L.P.
                                               101 California Street, Suite 3600
13                                             San Francisco, CA94111
                                               Telephone: (415) 291 6203
14                                             Facsimile: (415) 291 6303

15                                             John Taladay (*pro hac vice*)
                                               john.taladay@bakerbotts.com
16                                             BAKER BOTTS LLP
                                               1299 Pennsylvania Ave., NW
17                                             Washington, D.C. 20004
                                               Telephone: (202)-639-7700
18                                             Facsimile: (202)-639-7890

19                                             *Attorneys for Defendants*
                                               *IRICO GROUP CORP. and*
20                                             *IRICO DISPLAY DEVICES CO., LTD.*

21

22

23

24

25

26

27

28

---

IRICO'S CORRECTED SUPPLEMENTAL              7              Master File No. 3:07-cv-05944-JST
OBJECTIONS AND RESPONSES TO IPP'S                                        MDL No. 1917
SECOND SET OF INTERROGATORIES

1

## <u>CERTIFICATE OF SERVICE</u>

2

**In re: Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917**

3

I declare that I am employed in Washington, District of Columbia.  I am over the age of

4

eighteen years and not a party to the within case; my business address is: Baker Botts L.L.P.,

5

1299 Pennsylvania Avenue, Washington, DC 20004.

6

On April 11, 2019, I served the following document(s) described as:

7

**IRICO DEFENDANTS' CORRECTED SUPPLEMENTAL OBJECTIONS AND
RESPONSES TO INDIRECT PURCHASER PLAINTIFFS'**

8

**SECOND SET OF INTERROGATORIES**

9

on the following interested parties in this action:

10

11
12
13
14

Guido Saveri (guido@saveri.com)
R. Alexander Saveri (rick@saveri.com)
Geoffrey C. Rushing (grushing@saveri.com)
Cadio Zirpoli (cadio@saveri.com)
Matthew D. Heaphy (mheaphy@saveri.com)
SAVERI & SAVERI, INC.
706 Sansome St # 200,
San Francisco, CA 94111

Mario N. Alioto (malioto@tatp.com)
Lauren C. Capurro (laurenrussell@tatp.com)
Joseph M. Patane (jpatane@tatp.com)
TRUMP ALIOTO TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123

15

*Lead Counsel for the Direct Purchaser
Plaintiffs*

*Lead Counsel for the Indirect Purchaser
Plaintiffs*

16

17

[X]     (BY ELECTRONIC MAIL) I caused such documents to be sent to the persons at the
email addressed listed above.  I did not receive, within a reasonable time after the transmission,

18

any electronic message or other indication that the transmission was unsuccessful.

19

I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.  Executed on April 11, 2019 in Washington, District of Columbia.

20

21

*/s/ Thomas Carter*

22

Thomas Carter

23

24

25

26

27

28

# ATTACHMENT 2

(CORRECTED)

## Irico Group CRT Sales 1995-2004

**Irico Group CRT Sales to Sichuan Changhong Electric Co., Ltd.**

| Year | Annual Revenue (in RMB) |
|------|-------------------------|
| 1995 | 858,559,800 |
| 1996 | 700,069,860 |
| 1997 | 870,033,102 |
| 1998 | 436,229,630 |
| 1999 | 146,136,763 |
| 2000 | 61,870,953 |
| 2001 | 54,500,741 |
| 2002 | 124,523,818 |
| 2003 | 122,382,064 |
| 2004 | 99,291,088 |

**Irico Group CRT Sales to Konka Group Co. Ltd.**

| 1995 | 58,176,714 |
|------|------------|
| 1996 | 121,803,006 |
| 1997 | 148,306,895 |
| 1998 | 118,022,318 |
| 1999 | 350,819,262 |
| 2000 | 98,848,261 |
| 2001 | 22,108,068 |
| 2002 | 36,227,484 |
| 2003 | 90,466,477 |
| 2004 | 88,541,342 |

**Irico Group CRT Sales to TCL Corporation**

| 1995 | - |
|------|------------|
| 1996 | - |
| 1997 | 40,056,832 |
| 1998 | 24,304,026 |
| 1999 | 280,119,603 |
| 2000 | 82,989,692 |
| 2001 | - |
| 2002 | 13,519,368 |
| 2003 | 148,046,615 |
| 2004 | 143,262,496 |

**Irico Group CRT Sales to Skyworth Group Co., Ltd.**

| 1995 | 5,279,400 |
|------|-----------|
| 1996 | - |

| | |
|---|---|
| 1997 | 5,730,974 |
| 1998 | 1,922,308 |
| 1999 | 31,987,015 |
| 2000 | 3,532,308 |
| 2001 | 5,993,436 |
| 2002 | 3,944,410 |
| 2003 | 95,013,567 |
| 2004 | 134,696,231 |

**Irico Group CRT Sales to Hisense Electric Co. Ltd. Qingdao, China**

| | |
|---|---|
| 1995 | 34,323,197 |
| 1996 | 77,759,816 |
| 1997 | 104,972,990 |
| 1998 | 112,497,778 |
| 1999 | 138,228,288 |
| 2000 | 59,596,581 |
| 2001 | 3,694,833 |
| 2002 | 9,638,735 |
| 2003 | 51,702,624 |
| 2004 | 71,213,145 |

**Irico Group CRT Sales to Haier Electrical Appliances Co., Ltd.**

| | |
|---|---|
| 1995 | - |
| 1996 | - |
| 1997 | - |
| 1998 | 4,766,162 |
| 1999 | 22,710,274 |
| 2000 | 13,657,577 |
| 2001 | 20,242,874 |
| 2002 | 59,231,683 |
| 2003 | 38,800,272 |
| 2004 | 70,633,152 |

**Irico Group CRT Sales to Xiamen Overseas Chinese Electronic Co., Ltd.**

| | |
|---|---|
| 1995 | 50,227,441 |
| 1996 | 46,514,214 |
| 1997 | 51,910,862 |
| 1998 | 33,893,778 |
| 1999 | 75,527,293 |
| 2000 | 34,252,702 |
| 2001 | 3,454,771 |
| 2002 | 26,755,501 |
| 2003 | 19,537,911 |
| 2004 | 26,312,325 |

**Irico Group CRT Sales to Soyea Technology Co., Ltd.**

| Year | Amount |
|------|-------:|
| 1995 | - |
| 1996 | - |
| 1997 | - |
| 1998 | - |
| 1999 | 19,340,855 |
| 2000 | - |
| 2001 | 18,462 |
| 2002 | 6,974,215 |
| 2003 | 6,554,082 |
| 2004 | 2,186,615 |

**Irico Group CRT Sales to LG Electronics (Shenyang) Inc.**

| Year | Amount |
|------|-------:|
| 1995 | - |
| 1996 | - |
| 1997 | - |
| 1998 | - |
| 1999 | - |
| 2000 | 14,439,127 |
| 2001 | 48,442,431 |
| 2002 | 41,026 |
| 2003 | - |
| 2004 | - |

**Irico Group CRT Sales to Hangzhou Jinlipu Electrical Co., Ltd.**

| Year | Amount |
|------|-------:|
| 1995 | - |
| 1996 | - |
| 1997 | - |
| 1998 | 17,863 |
| 1999 | 3,910,427 |
| 2000 | - |
| 2001 | 370,462 |
| 2002 | - |
| 2003 | 448,000 |
| 2004 | - |

**Irico Display CRT Sales 1995-2007**

**Irico Display CRT Sales to Sichuan Changhong Electric Co., Ltd.**

| Year | Annual Revenue (in RMB) |
|------|-------------------------|
| 1995 | 227,706,900 |
| 1996 | 551,131,400 |
| 1997 | 454,016,800 |
| 1998 | 420,617,900 |
| 1999 | 143,262,000 |
| 2000 | 329,579,500 |
| 2001 | 507,579,000 |
| 2002 | 492,712,800 |
| 2003 | 402,227,400 |
| 2004 | 368,406,100 |
| 2005 | 230,071,000 |
| 2006 | 344,879,900 |
| 2007 | 155,011,200 |

**Irico Display CRT Sales to Konka Group Co. Ltd.**

| Year | Annual Revenue (in RMB) |
|------|-------------------------|
| 1995 | 2,762,700 |
| 1996 | 97,588,900 |
| 1997 | 12,754,200 |
| 1998 | 218,267,800 |
| 1999 | 1,833,196,400 |
| 2000 | 327,381,200 |
| 2001 | 213,080,500 |
| 2002 | 482,104,200 |
| 2003 | 461,363,000 |
| 2004 | 463,421,800 |
| 2005 | 170,487,200 |
| 2006 | 303,186,500 |
| 2007 | 242,497,300 |

**Irico Display CRT Sales to TCL Corporation**

| Year | Annual Revenue (in RMB) |
|------|-------------------------|
| 1995 | - |
| 1996 | 3,500,900 |
| 1997 | - |
| 1998 | - |
| 1999 | 26,232,100 |
| 2000 | 180,190,200 |
| 2001 | 344,030,400 |
| 2002 | 544,187,900 |
| 2003 | 494,380,600 |

| | |
|---|---|
| 2004 | 690,334,900 |
| 2005 | 236,950,500 |
| 2006 | 201,086,700 |
| 2007 | 271,950,900 |

**Irico Display CRT Sales to Skyworth Group Co., Ltd.**

| Year | Annual Revenue (in RMB) |
|---|---|
| 1995 | - |
| 1996 | - |
| 1997 | - |
| 1998 | - |
| 1999 | - |
| 2000 | - |
| 2001 | - |
| 2002 | - |
| 2003 | - |
| 2004 | - |
| 2005 | 6,892,000 |
| 2006 | 64,955,100 |
| 2007 | 45,276,300 |

**Irico Display CRT Sales to Hisense Electric Co. Ltd. Qingdao, China**

| Year | Annual Revenue (in RMB) |
|---|---|
| 1995 | 6,845,500 |
| 1996 | 32,851,400 |
| 1997 | 26,468,700 |
| 1998 | 60,841,100 |
| 1999 | 65,057,400 |
| 2000 | 326,827,600 |
| 2001 | 396,683,300 |
| 2002 | 417,686,900 |
| 2003 | 325,748,200 |
| 2004 | 321,908,700 |
| 2005 | 178,289,700 |
| 2006 | 161,369,800 |
| 2007 | 54,062,700 |

**Irico Display CRT Sales to Haier Electrical Appliances Co., Ltd.**

| Year | Annual Revenue (in RMB) |
|---|---|
| 1995 | - |
| 1996 | - |
| 1997 | - |
| 1998 | - |
| 1999 | - |
| 2000 | 90,348,500 |

| | |
|---|---|
| 2001 | 586,380,500 |
| 2002 | 255,612,100 |
| 2003 | 252,054,000 |
| 2004 | 184,260,400 |
| 2005 | 75,545,000 |
| 2006 | 3,760,900 |
| 2007 | 24,730,600 |

**Irico Display CRT Sales to Xiamen Overseas Chinese Electronic Co., Ltd.**

| Year | Annual Revenue (in RMB) |
|---|---|
| 1995 | 19,453,900 |
| 1996 | 11,440,600 |
| 1997 | 16,884,800 |
| 1998 | 21,348,000 |
| 1999 | 62,778,000 |
| 2000 | 86,063,500 |
| 2001 | 83,823,400 |
| 2002 | 137,457,500 |
| 2003 | 106,081,600 |
| 2004 | 78,593,300 |
| 2005 | 55,923,300 |
| 2006 | 132,492,500 |
| 2007 | 11,533,000 |

**Irico Display CRT Sales to Soyea Technology Co., Ltd.**

| Year | Annual Revenue (in RMB) |
|---|---|
| 1995 | - |
| 1996 | - |
| 1997 | - |
| 1998 | - |
| 1999 | 19,773,200 |
| 2000 | 29,739,300 |
| 2001 | 26,952,900 |
| 2002 | 70,213,100 |
| 2003 | 87,400,400 |
| 2004 | 33,034,000 |
| 2005 | 12,072,500 |
| 2006 | 32,530,100 |
| 2007 | 3,081,500 |

**Irico Display CRT Sales to Yisheng Technology Co., Ltd.**

| Year | Annual Revenue (in RMB) |
|---|---|
| 1995 | - |
| 1996 | - |
| 1997 | - |

| | |
|---|---|
| 1998 | - |
| 1999 | - |
| 2000 | - |
| 2001 | - |
| 2002 | - |
| 2003 | - |
| 2004 | - |
| 2005 | 7,906,900 |
| 2006 | 21,573,600 |
| 2007 | 31,662,400 |

**Irico Display CRT Sales to LG Electronics (Shenyang) Inc.**

| Year | Annual Revenue (in RMB) |
|---|---|
| 1995 | - |
| 1996 | - |
| 1997 | - |
| 1998 | - |
| 1999 | - |
| 2000 | - |
| 2001 | - |
| 2002 | - |
| 2003 | - |
| 2004 | - |
| 2005 | - |
| 2006 | - |
| 2007 | 156,800 |

**Irico Display CRT Sales to Hangzhou Jinlipu Electrical Co., Ltd.**

| Year | Annual Revenue (in RMB) |
|---|---|
| 1995 | - |
| 1996 | - |
| 1997 | - |
| 1998 | 1,344,300 |
| 1999 | - |
| 2000 | - |
| 2001 | - |
| 2002 | 1,456,100 |
| 2003 | 9,047,900 |
| 2004 | 28,571,100 |
| 2005 | 14,742,600 |
| 2006 | 8,508,000 |
| 2007 | 7,411,000 |

**Irico Display CRT Sales to Shenzhen Techtop Industrial Co., Ltd**

| Year | Annual Revenue (in RMB) |
|---|---|

| 1995 | - |
|------|---|
| 1996 | - |
| 1997 | - |
| 1998 | - |
| 1999 | - |
| 2000 | - |
| 2001 | - |
| 2002 | - |
| 2003 | - |
| 2004 | - |
| 2005 | 313,000 |
| 2006 | 6,020,000 |
| 2007 | 6,370,500 |

**Irico Display CRT Sales to Hangzhou Huashan Electric Co., Ltd**

| Year | Annual Revenue (in RMB) |
|------|-------------------------|
| 1995 | - |
| 1996 | - |
| 1997 | - |
| 1998 | - |
| 1999 | - |
| 2000 | - |
| 2001 | - |
| 2002 | - |
| 2003 | - |
| 2004 | - |
| 2005 | - |
| 2006 | - |
| 2007 | 317,900 |