1  Guido Saveri (22349)
       *guido@saveri.com*
2  R. Alexander Saveri (173102)
       *rick@saveri.com*
3  Geoffrey C. Rushing (126910)
       *grushing@saveri.com*
4  Cadio Zirpoli (179108)
       *cadio@saveri.com*
5  Matthew D. Heaphy (227224)
       *mheaphy@saveri.com*
6  SAVERI & SAVERI, INC.
   706 Sansome Street
7  San Francisco, CA 94111
   Telephone: (415) 217-6810
8  Facsimile: (415) 217-6813

9  *Lead Counsel for Direct Purchaser Plaintiffs*

10

11                **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13                      **OAKLAND DIVISION**

| | |
|---|---|
| 14  IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST |
| 15  | MDL No. 1917 |
| 16  This Document Relates to: | **DIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR** |
| 17  *ALL DIRECT PURCHASER ACTIONS* | ***CHUMAN* CERTIFICATION OF THE IRICO DEFENDANTS' APPEAL** |
| 18  | |
| 19  | Date:        February 5, 2020 |
| 20  | Time:        2:00 p.m.<br>Judge:       Honorable Jon S. Tigar<br>Courtroom:  6 - 2nd Floor |

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................i

TABLE OF AUTHORITIES.............................................................................................ii

NOTICE OF MOTION AND MOTION...........................................................................1

ISSUE TO BE DECIDED ................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF FACTS ...................................................................................4

       A.    The Irico Defendants Delayed the Case by Disappearing from It and Waiting Nine Years to Assert Their FSIA Defense. ............................................................4

       B.    The Irico Defendants Further Delayed the Case by Representing that New Evidence Would Demonstrate Their Immunity. ...............................................................5

       C.    The Irico Defendants Harmed DPPs by Delaying the Case. ........................................8

       D.    The Irico Defendants Appeal and Move for a Stay..........................................................9

III.   ARGUMENT .........................................................................................................9

       A.    Legal Standard..............................................................................................................9

       B.    The Court Should Certify that Irico's Appeal Is Forfeited and Retain Jurisdiction Pending Appeal. ...............................................................................................13

       C.    Certification of the Appeals as Forfeited Is Consistent with the Default Order. ........15

       D.    The Court Should Order the Irico Defendants to Answer the Complaint and Respond to Written Discovery Served in 2010 and 2011. ..........................................18

IV.    CONCLUSION .....................................................................................................18

# TABLE OF AUTHORITIES

Cases

*Apostol v. Gallion*,
  870 F.2d 1335 (7th Cir. 1989) ............................................................ 2, 9, 10, 11, 12, 14

*Cassirer v. Kingdom of Spain*,
  616 F.3d 1019 (9th Cir. 2010) .......................................................................................... 2, 9

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
  862 F.3d 951 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1992 (2018) ............................ 10

*Chuman v. Wright*,
  960 F.2d 104 (9th Cir. 1992)          1, 2, 9, 10, 18

*Davis v. White*,
  Nos. 7:17-cv-01533-LSC, 7:17-cv-01534-LSC, 7:17-cv-01535-LSC, 2019 WL 5081074 (N.D.
  Ala. Oct. 10, 2019) .......................................................................................................... 12, 13

*Falk v. Allen*,
  739 F.2d 461 (9th Cir. 1984) ............................................................................................... 17

*Gregorian v. Izvestia*,
  871 F.2d 1515 (9th Cir. 1989) ............................................................................................. 17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  MDL No. 1917, Case No. C-07-5944 JST, 2018 WL 659084 (N.D. Cal. Feb. 1, 2018) ...............
  ................................................................................................. 2, 3, 4, 5, 6, 8, 14, 15, 16, 17

*Kennedy v. City of Cleveland*,
  797 F.2d 297 (6th Cir. 1986) ............................................................................................... 12

*M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*,
  No. C-08-02658-RMW, 2014 WL 2216253 (N.D. Cal. May 29, 2014) .............................. 10, 15

*Marks v. Clarke*,
  102 F.3d 1012 (9th Cir. 1996), *as amended on denial of reh'g* (Feb. 26, 1997)................ 2, 9, 16

*Microsoft Corp. v. Commonwealth Sci. & Indus. Research Organisation*,
  No. C 05-01894 MJJ, 2005 WL 8165886 (N.D. Cal. Nov. 14, 2005) ........................................ 13

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) ....................................................................................................... 11, 14

*Siderman de Blake v. Republic of Argentina*,
  965 F.2d 699 (9th Cir. 1992) ............................................................................................... 15

*Stewart v. Donges*,
  915 F.2d 572 (10th Cir. 1990) ...................................................................................... 10, 12, 16

*Todd v. LaMarque*,
  No. C 03-3995 SBA, 2008 WL 205591 (N.D. Cal. Jan. 24, 2008) ............................................ 13

*United States v. LaMere*,
  951 F.2d 1106 (9th Cir. 1991) ............................................................................................. 10

*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*,
  615 F.3d 1085, 1092 (9th Cir. 2010) ............................................................................... 15, 16

*Yates v. City of Cleveland*,
  941 F.2d 444 (6th Cir. 1991) ................................................................ 10, 11, 12, 13, 14, 16, 18

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 5, 2020, at 2:00 p.m., or as soon thereafter as this matter may be heard, before the Honorable Jon S. Tigar, United States District Judge of the Northern District of California, Oakland Courthouse, Courtroom 6 - 2nd Floor, 1301 Clay Street, Oakland, California, Direct Purchaser Plaintiffs will move this Court for an order certifying that Defendants Irico Group Corporation and Irico Display Devices Co., Ltd. have forfeited any right they may have to an immediate appeal of this Court's order denying their motions to dismiss on the grounds that they are immune from suit under the Foreign Sovereign Immunities Act ("FSIA").

This Motion is made on the grounds that Defendants Irico Group Corporation and Irico Display Devices Co., Ltd.'s assertion of their potential defenses under the FSIA was dilatory—it was first raised over nine years after they first appeared in the case.

This Motion is based on this Notice; the following Memorandum of Points and Authorities; the accompanying Declaration of R. Alexander Saveri; the proposed order submitted herewith; other records, pleadings, and papers filed in this action; and upon such argument and further pleadings as may be presented to the Court at the hearing on this Motion.

## ISSUE TO BE DECIDED

Whether the Court should certify in writing, pursuant to *Chuman v. Wright*, 960 F.2d 104 (9th Cir. 1992), that the Irico Defendants have forfeited their right to an immediate appeal of the Court's denial of sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA") through, among other conduct, their dilatory assertion of their FSIA defense.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Irico Defendants[1] have engaged in deliberate, and successful, efforts to delay this case. By simply disappearing from the case in 2010, and then reappearing to assert a defense under the Foreign Sovereign Immunities Act ("FSIA") just weeks before Direct Purchaser Plaintiffs'

---

[1] Defendants Irico Group Corporation ("Group") and Irico Display Devices Co., Ltd. ("Display") (together, "Irico" or the "Irico Defendants").

("DPPs") Application for Default Judgment was to be heard, they have avoided meaningful inquiry into their participation in the CRT conspiracy for almost twelve years. And, if the Irico Defendants are to be believed, all documents relating to their many meetings with their alleged co-conspirators may have been lost or destroyed.

Now, after the Court has twice rejected their assertions of sovereign immunity, the Irico Defendants have appealed the Court's recent order rejecting their immunity claims and assert that all activity in this Court must stop for potentially several more years while their appeal is resolved. *See* Irico Group Corp. and Irico Display Devices Co., Ltd.'s Mot. to Stay Proceedings Pending Appeal of the Court's Order Den. Mots. to Dismiss, ECF No. 5651 (Nov. 22, 2019).

The Irico Defendants would normally be entitled to an immediate appeal under the collateral order doctrine. *See, e.g., Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1022 (9th Cir. 2010). Here, however, because they have "use[d] claims of immunity in a manipulative fashion"— i.e. to needlessly delay this case—they have "surrender[ed] any entitlement to obtain an appellate decision before trial." *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989). DPPs therefore move for an order **certifying** that the Irico Defendants have forfeited any right to an immediate appeal. *See Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992); *Marks v. Clarke*, 102 F.3d 1012, 1017 n.8 (9th Cir. 1996), *as amended on denial of reh'g* (Feb. 26, 1997).

The Irico Defendants' dilatory conduct is clear from the record. First, the Irico Defendants disappeared from the case in 2010 without asserting their FSIA defense. They waited until DPPs had filed a motion for entry of a default judgment to reappear and assert that they were immune from suit. As the Court has already found, "by refusing to appear and litigate the case, the Irico Defendants have delayed resolution of the jurisdictional question for ten years." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, Case No. C-07-5944 JST, 2018 WL 659084, at *8 (N.D. Cal. Feb. 1, 2018) ("Default Order").

Second, the Irico Defendants have also unnecessarily delayed the resolution of their FSIA defense since they reappeared. While the Court lifted the default against them, it found—based on the record before it—that the FSIA did not protect them. However, the Irico Defendants asserted that new facts and argument would dictate a different result on the immunity question. This

necessitated further discovery and another round of briefing. In the end, the Irico Defendants did not back up their representations: they presented no material new facts or arguments in their second motion which would shield them from liability. Instead, they ignored the Court's first order rejecting their claims of immunity and—as to the dispositive issue of whether the commercial exception to the FSIA applied—simply reasserted their previous arguments. As the Court observed, it did not invite "a belated motion for reconsideration." Order Regarding Motions to Dismiss for Lack of Jurisdiction at 12, ECF No. 5637 (Oct. 28, 2019) ("Second FSIA Order"). The more than eighteen months of jurisdictional discovery and motion practice following the Court's initial ruling were therefore also unnecessary.

In addition, the Irico Defendants delayed the resolution of their second motion through dilatory and incomplete responses to jurisdictional discovery. DPPs, along with Indirect Purchaser Plaintiffs ("IPPs"), were required to obtain three Court orders compelling such discovery, including one compelling compliance with a Court order. *See* ECF Nos. 5320, 5331, 5332. The Irico Defendants' conduct also repeatedly delayed the depositions of their witnesses.

Finally, while not essential to the certification DPPs seek, DPPs have been prejudiced by the Irico Defendants' delaying tactics. Again, the Court has already so found: "After the passage of so much time, it is likely that documents and data have been lost, that witnesses have become unavailable, or that important details have been forgotten." Default Order, 2018 WL 659084, at *8. Indeed, the Irico Defendants' own discovery responses indicate that evidence in their possession relating to their participation in the alleged conspiracy may already have been lost or destroyed. In addition, important witnesses have become unavailable. Further delay of this case will likely ensure that whatever important evidence may still be in the Irico Defendants' possession will disappear, and the few potentially available witnesses will become unavailable.

In the face of such dilatory tactics, the Court has—and should use—authority to insist that this case must move forward. DPPs respectfully request that the Court certify that the Irico Defendants have forfeited their entitlement to an immediate interlocutory appeal.

## II.    STATEMENT OF FACTS

### A.    The Irico Defendants Delayed the Case by Disappearing from It and Waiting Nine Years to Assert Their FSIA Defense.

It is undisputed that the Irico Defendants appeared in this action at its outset, participated in various pretrial activities, and joined in Defendants' motion to dismiss. *See* ECF No. 479; *see also* ECF No. 5191 at 4–5; Default Order, 2018 WL 659084, at *1.

In May 2009, after the motions to dismiss were briefed but before the Court had ruled, Irico directed its attorneys, Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"), to stop their representation. *See* ECF Nos. 729 ¶ 1, 730 ¶ 2. Pillsbury so informed the Court on June 23, 2010. *Id.* The Irico Defendants' intent appears to have been to participate at little cost in the other defendants' attempts to dismiss the case, but to refuse to participate in the evidence gathering (or any other) part of the proceeding.

As the Court has already found, at no point during their initial appearance did the Irico Defendants assert a defense under the FSIA, despite "many opportunities to do so." Default Order, 2018 WL 659084, at *7.

After the Court denied the motions to dismiss, Order Approving and Adopting Special Master's Report, Recommendations and Tentative Rulings re: Defendants' Motions to Dismiss, ECF No. 665 (Mar. 30, 2010), Pillsbury made a motion to withdraw, which the Court granted on June 24, 2010. Order Granting Pillsbury's Mot. for Leave to Withdraw, ECF No. 732 ("Pillsbury Withdrawal Order").[2]

After this, nothing was heard from or on behalf of the Irico Defendants for over seven years. In the interim, the litigation continued. Scores of depositions were taken, millions of pages of documents were produced and analyzed by the parties, the class was certified, expert reports were completed, the Court resolved numerous dispositive motions, and DPPs obtained settlements from all other defendants. *See, e.g.,* ECF No. 5191 at 2–3. As DPPs have explained, the discovery

---

[2] The Court also required Pillsbury to "continue to accept service of papers for the Irico Entities for forwarding purposes until substitute counsel appears on behalf of the Irico Entities." Pillsbury Withdrawal Order at 2.

process produced overwhelming evidence of the Irico Defendants' participation in the alleged conspiracy. *See id.* at 8–11; ECF No. 5228 ("Set Aside Opposition") at 3–4.

In July 2016, DPPs obtained an entry of default against the Irico Defendants. ECF No. 4727. Over a year later, in August 2017, DPPs filed an application for the entry of a default judgment. ECF Nos. 5182-3, 5183; publicly refiled as ECF No. 5191 ("Default Judgment Application"). It was set for hearing on September 12, 2017.[3]

On September 7, 2017, the Irico Defendants contacted DPPs through new counsel requesting a delay in the briefing schedule on the Default Judgment Application. Declaration of R. Alexander Saveri in Support of DPPs' Motion for *Chuman* Certification of the Irico Defendants' Appeal ("Saveri Decl."), Ex. 1. The next day new counsel substituted into the case. ECF No. 5200. On September 28, 2017, present counsel for the Irico Defendants substituted into the case. ECF No. 5209. In October, 2017, the Irico Defendants informed DPPs for the first time that it was their position that they were immune under the FSIA. ECF No. 5228-1 ¶ 2.

On October 25, 2017, the Irico Defendants filed an opposition to the Default Judgment Application, ECF No. 5214, and moved to set aside the default. ECF No. 5215. Irico's motion sought alternatively to dismiss DPPs' complaint against them on the grounds that they were immune from suit under the FSIA, or to lift the default. *Id.* at 14.

All told, the Irico Defendants waited over nine years to assert defenses under the FSIA.

**B.     The Irico Defendants Further Delayed the Case by Representing that New Evidence Would Demonstrate Their Immunity.**

On February 1, 2018, the Court entered the Default Order granting Irico's motion to lift the default and denying DPPs' application for default judgment. 2018 WL 659084, at *7–11.

The Court also ruled that the Irico Defendants were not immune under the FSIA and that, therefore, the Court had jurisdiction. Although Group was an instrumentality of the Chinese Government, the conduct at issue fell within the commercial activity exception to the FSIA, so that Group was not immune from suit. *Id.* at *4–6. Display was not protected by the FSIA because it

---

[3] The Court modified the briefing schedule and vacated the hearing date on August 22, 2019. ECF No. 5196. The hearing was ultimately reset to January 11, 2018. ECF No. 5218.

1   was not an instrumentality, agent or organ of the Chinese government; and even if it was, its

2   conduct also fell within the commercial activity exception. *Id.*

3       The Irico Defendants also argued that under the different legal standards pertaining to

4   lifting defaults, their FSIA defense constituted a potentially "meritorious defense," and that they

5   could produce additional evidence supporting their position. ECF No. 5229 at 3–10; Default Hr'g

6   Tr. 18:25–19:2 ("MR. TALADAY: Your Honor, first, I don't think it's necessary that the Court be

7   convinced it's the case. I think the question is whether it's [the FSIA is] a meritorious defense.");

8   41:4–18 ("MR. TALADAY: . . . This was not our motion for summary judgment on the FSIA. And

9   the burden on a motion for setting aside default is quite a different burden."); 43:6–22 ("MR.

10   PLUNKETT: . . . On Display, we agree that we could make a more complete showing, and we're

11   prepared to do that. . . . And we are prepared to make a more fulsome showing and to provide

12   additional information about where Mr. Zhang got this information."), Jan. 11, 2018, ECF No.

13   5237. Based on these arguments, and despite its ruling that the FSIA did not immunize them, the

14   Court also ruled that the Irico Defendants should be allowed a second chance to demonstrate FSIA

15   immunity. *See* Default Order, 2018 WL 659084, at *10. The Court also ordered that DPPs could

16   conduct jurisdictional discovery. *Id.* at *11.

17       When the time came to renew their motion, the Irico Defendants did not follow through on

18   their claims that additional evidence would establish their FSIA defense. As the Court explained:

19
20
21
22
23
> As a preliminary matter, the Court notes that many of Group and Display's
> arguments are ones the Court has already considered and rejected in connection with
> the prior motions to dismiss. Thus, the Court is not beginning with a clean slate.
> However, even considering Irico's repeated arguments de novo, and in light of the
> new evidence presented by the parties after further jurisdictional discovery, has not
> convinced the Court to depart from its earlier rulings. The Court addresses Irico's
> renewed arguments only briefly.

24   Second FSIA Order at 7.

25       As to the critical issue of whether the commercial exception to FSIA immunity applies, the

26   Court emphasized that the Irico Defendants had nothing new to say:

27
28
> These arguments seemingly ignore the Court's prior order. ECF No. 5240. There,
> the Court held that a direct effect is shown when a foreign price-fixing conspiracy
> for a product raises the worldwide price of that product. *Id.* at 10-11. The Court

further held that "the DPPs have sufficiently alleged facts showing that the anticompetitive behavior of the Irico Defendants, as part of the broader conspiracy, had a direct effect on prices of CRTs in the United States," relying in part on "evidence that Irico participated in a conspiracy, including an industry report and emails showing that it attended 'over 70 conspiratorial meetings,'" *id.* at 11 (citing ECF No. 5228 at 20) and that "the DPPs' expert report by economist Dr. Leizinger [sic] showed that the U.S. was the second largest market for CRTs at 18% of the market, *id.* (citing ECF No. 5191-2 at 160-162). The Court noted that the same report "shows that the conspiracy resulted in higher prices, including in the United States, because the CRT accounted for up to 50 percent of the cost of manufacturing a television or computer monitor." *Id.* (citation omitted). "These facts," the Court concluded, "support a finding that the Irico Defendant's commercial activities had a direct effect in the United States." *Id.*

Nothing the parties have presented in the current round of briefing changes these underlying facts or, by extension, the Court's conclusion. Nonetheless, Group wishes away the Court's prior order, stating baldly that "the law squarely rejects any claim that Irico Group's alleged participation in a global conspiracy qualifies as a "direct effect" that would defeat the presumption of immunity." ECF No. 5409 at 8. The Court invited jurisdictional discovery, not a belated motion for reconsideration.

Second FSIA Order at 12.[4]

The Irico Defendants also were dilatory with regard to jurisdictional discovery. Among other things, the Irico Defendants failed to respond to written discovery in a timely fashion. As the Special Master found and the Court confirmed, on two occasions, the Irico Defendants refused to provide full responses to interrogatories and document requests. *See* ECF Nos. 5320 (adopted by ECF No. 5324), 5332 (adopted by ECF No. 5353). Moreover, a third motion was required to compel compliance with one of the Court's previous orders. *See* ECF No. 5331 (adopted by ECF No. 5352).

In addition, the Irico Defendants delayed the depositions of their witnesses for six months. The depositions were originally scheduled for September 24, 2018. Saveri Decl. ¶ 5, Ex. 3. However, ten days before the depositions, the Irico Defendants unexpectedly produced an additional 2000 pages of Chinese language documents on which they intended to rely. *See id.* ¶ 6, Ex. 4. Because there was no realistic way in which DPPs (and IPPs) could review, translate, and

---

[4] The Irico Defendants did submit some new evidence in support of their argument that Display was a state organ, however, all of this evidence could have been presented in support of their first motion.

analyze those documents in ten days, the depositions were rescheduled to November 5, 2018. *See id.* ¶ 6.

The same depositions then had to be put off again—to March 4, 2019—because the Irico Defendants represented that they could not comply with the Court's orders compelling discovery before the initial rescheduled date. *Id.* ¶ 7, Ex. 5.

### C.    The Irico Defendants Harmed DPPs by Delaying the Case.

Finally, the delays occasioned by the Irico Defendants' belated assertion of immunity harmed the DPPs. Again, the Court has already so found:

> The Court concludes that the DPPs make out a strong case of prejudice. The DPPs were inarguably prejudiced by the Irico Defendants' decision to disappear from the case for ten years. The Irico Defendants could have raised their FSIA defense at the outset, and the Court would have then assessed whether it had jurisdiction over the case. Instead, by refusing to appear and litigate the case, the Irico Defendants have delayed resolution of the jurisdictional question for ten years. After the passage of so much time, it is likely that documents and data have been lost, that witnesses have become unavailable, or that important details have been forgotten.
>
> Furthermore, while the Court focuses, as it must, [on] the effects of the Irico Defendants' absence on future discovery the DPPs might conduct, it notes that contemporaneous discovery against multiple defendants in an antitrust conspiracy case benefits plaintiffs who can then use discovery taken from one defendant to show the culpability of another. Now, not only will discovery of documents and witnesses from the Irico Defendants be hampered by the lengthy passage of time, but discovery against the remaining defendants which would likely benefit the DPPs' case against the Irico Defendants—to the extent it is even possible—will be hindered by the same memory and data loss.

Default Order, 2018 WL 659084, at *8 (citations omitted).

In addition, the loss of documents and unavailability of witnesses has been confirmed. For example, DPPs made a request for production of documents relating to twenty-six competitor meetings attended by Irico personnel documented in meeting notes or other documents produced by other defendants. *See* ECF No. 5320 at 5 (quoting RFP No. 10).[5] Despite two Court orders to

---

[5] Meeting notes and other documents produced by other defendants relating to these meetings are summarized in Exhibit 11 to the Declaration of R. Alexander Saveri dated December 7, 2017 (ECF No. 5228-1) attached as exhibits thereto as well as to the Declaration of R. Alexander Saveri dated August 3, 2017 (ECF No. 5191-1). They are described at pp. 8–11 of the Default Judgment Application and at pp. 3–4 of the Set Aside Opposition.

produce such documents, the Irico Defendants produced **nothing,** insisting that no such documents remained in their possession. Saveri Decl., Ex. 2 (Irico declaration that it "has completed its search for documents responsive to Request No. 10 . . . [and] has not located any responsive documents").

Similarly, the documents of other defendants identify a dozen Irico officers or employees as having attended meetings with competitors. As of April 2018, there are only two who remain alive and employed by Irico, and therefore, could be compelled to attend a deposition. *See* Saveri Decl. ¶ 8, Ex. 6.

### D.    The Irico Defendants Appeal and Move for a Stay.

The Court entered its Second FSIA Order on October 28, 2019. ECF No. 5637. The Irico Defendants filed a notice of appeal from the Second FSIA Order on November 22, 2019. ECF No. 5650. They filed their motion for a stay on the same day. ECF No. 5651.

## III.    ARGUMENT

### A.    Legal Standard.

An "order denying the motions to dismiss for lack of subject matter jurisdiction based on sovereign immunity" is among "a small category of collateral orders" that may be appealed before final judgment. *See, e.g., Cassirer*, 616 F.3d at 1022. The general rule in the Ninth Circuit is that where an "interlocutory claim [based on qualified immunity] is immediately appealable, its filing divests the district court of jurisdiction to proceed with trial." *Chuman*, 960 F.2d at 105. However, there is an exception to this rule when the district court certifies "in writing, that defendants have forfeited their right to pretrial appeal." *Id.* As the Ninth Circuit explained in *Marks*:

> In *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir.1992), we recognized an exception to the general rule that a valid notice of appeal divests the district court of jurisdiction over all but tangential matters. This exception applies in cases in which the district court certifies that the defendant's interlocutory appeal is "frivolous" or "forfeited." *See Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir.1989) (explaining that a frivolous qualified immunity claim is one that is unfounded, "so baseless that it does not invoke appellate jurisdiction" and that a forfeited qualified immunity claim is one that is untimely or dilatory).

102 F.3d at 1017 n.8.

*Chuman* was an appeal from the district court's denial of the defendants' motion for summary judgment based on qualified immunity. *Chuman*, 960 F.2d at 104–05. After filing a

9

notice of appeal, the defendants moved for a stay of proceedings in the district court which was

denied. *Id.* The defendants then moved for a stay in the court of appeals. *Id.* at 105. After noting

that the question of whether an interlocutory appeal of an order rejecting a claim of qualified

immunity "divests the district court of jurisdiction to proceed with trial" had not been addressed in

this Circuit, the court noted the rule in other circuits that "a frivolous or forfeited appeal does not

automatically divest the district court of jurisdiction." *Id.* (citing *Apostol*, 870 F.2d at 1339; *Yates v.*

*City of Cleveland*, 941 F.2d 444, 449 (6th Cir. 1991); and *Stewart v. Donges*, 915 F.2d 572, 576–78

(10th Cir. 1990)). The court also reviewed *United States v. LaMere*, 951 F.2d 1106 (9th Cir. 1991),

in which the Ninth Circuit applied the same rule in a criminal case to a frivolous appeal of a denial

of a motion for summary judgment on double jeopardy grounds. *Chuman*, 960 F.2d at 105. The

court then held:

> This court now adopts the rule set forth in *LaMere* in the context of interlocutory
> qualified immunity appeals. Should the district court find that the defendants' claim
> of qualified immunity is frivolous or has been waived, the district court may certify,
> in writing, that defendants have forfeited their right to pretrial appeal, and may
> proceed with trial. In the absence of such certification, the district court is
> automatically divested of jurisdiction to proceed with trial pending appeal.

*Id.* Citing *Apostol,* the court noted that where a district court certifies a pretrial appeal as forfeited,

the defendants "may then apply to this court for a discretionary stay." *Id.* at 105 n.1. Because the

district court had not certified the appeal as "frivolous or forfeited," the court held that the district

court lacked jurisdiction and granted the stay. *Id.* at 105.

Courts have applied the *Chuman* rule in the sovereign immunity context. *See, e.g., Cassirer*

*v. Thyssen-Bornemisza Collection Found.*, 862 F.3d 951, 958 (9th Cir. 2017), *cert. denied*, 138 S.

Ct. 1992 (2018) (district court retained jurisdiction pursuant to *Chuman* upon finding that the

"attempted interlocutory appeal was frivolous and/or waived"); *see also M.A. Mobile Ltd. v. Indian*

*Inst. of Tech. Kharagpur*, No. C-08-02658-RMW, 2014 WL 2216253, at *2 (N.D. Cal. May 29,

2014) (declining to certify appeal as frivolous).

The rationale for the exception is explained in *Apostol* and *Yates*. *Apostol* involved several

cases in which the defendants sought to delay their trials until the court of appeals reviewed the

denials of their summary judgment motions for qualified immunity. 870 F.2d at 1337. The Court

10

1    explained that an exception to the normal rule that an interlocutory appeal divests the district court

2    of jurisdiction was necessary to protect the courts and litigants against injury:

3        Although this approach [divesting the district court of jurisdiction] protects the
         interests of the defendants claiming qualified immunity, it may injure the legitimate
4        interests of other litigants and the judicial system. During the appeal memories fade,
         attorneys' meters tick, judges' schedules become chaotic (to the detriment of
5        litigants in other cases). Plaintiffs' entitlements may be lost or undermined. Most
         deferments will be unnecessary. The majority of [*Mitchell v.*] *Forsyth*[, 472 U.S.
6        511 (1985)] appeals—like the bulk of all appeals—end in affirmance. Defendants
         may seek to stall because they gain from delay at plaintiffs' expense, an incentive
7        yielding unjustified appeals.

8

9    870 F.2d at 1338. Consistent with its concerns about the harm to litigants and the litigation process

10   it causes, the court emphasized that delay could be a basis for a certification that a defendant has

11   forfeited the entitlement to a pre-trial appeal:

12       Frivolousness is not the only reason a notice of appeal may be ineffectual.
         Defendants may waive or forfeit their right not to be tried. If they wait too long after
13       the denial of summary judgment, or if they use claims of immunity in a
         manipulative fashion, they surrender any entitlement to obtain an appellate decision
14       before trial. . . . ***We have no doubt . . . that defendants who play games with the
         district court's schedule forfeit their entitlement to a pre-trial appeal.*** A district
15       court may certify that a defendant has surrendered the entitlement to a pre-trial
         appeal and proceed with trial.
16

17   *Id.* at 1339 (emphasis added).

18       Similarly, in *Yates,* the court also emphasized that unreasonable delay is a proper basis to

19   deny a pretrial appeal. In that case, the defendant police officer Currie sought dismissal of

20   excessive force claims on the basis of qualified immunity, however, he waited to raise the defense

21   for five years. 941 F.2d at 445, 448. As the court explained:

22       The Supreme Court has clearly emphasized that "qualified immunity questions
         should be resolved at the earliest possible stage of a litigation." We find
23       considerable support in the record for the view that Currie has employed the
         qualified immunity defense and the privilege of instituting a *Forsyth* appeal in a
24       dilatory fashion. Currie did not raise the qualified immunity defense until a full five
         years after the filing of the complaint, and days before the trial was scheduled to
25       commence. During this time, Yates engaged in extensive discovery and invested,
         one would imagine, a considerable amount in time, money, and energy. Although
26       Currie may pursue any appropriate defense strategies, the presentation of a qualified
         immunity defense on the eve of trial, five years after the initial filing, must be
27       examined critically. By moving for summary judgment based on qualified immunity
28

11

> and bringing this interlocutory appeal, Currie has succeeded in delaying the trial for
> nearly a year. As this court stated in *Kennedy,* a defendant's right to bring an
> interlocutory appeal under *Forsyth* brings with it a concomitant responsibility on the
> part of the defendant to exercise "a reasonable modicum of diligence in the exercise
> of that right."

941 F.2d at 449 (citations omitted). *See also Kennedy v. City of Cleveland*, 797 F.2d 297, 298 (6th

Cir. 1986) (right to take interlocutory appeal "subject to waiver for noncompliance with reasonable

temporal limitations placed by the district court upon the filing of motions seeking immunity");

*Stewart*, 915 F.2d at 573 ("the filing of an interlocutory appeal from the denial of defendant's

motion for summary judgment based on qualified immunity divests the district court of jurisdiction

in the absence of a determination by the district court that the appeal is either frivolous or

dilatory").

District courts have followed these cases in denying interlocutory appeals based on

improper delay. In *Davis v. White*, Nos. 7:17-cv-01533-LSC, 7:17-cv-01534-LSC, 7:17-cv-01535-

LSC, 2019 WL 5081074 (N.D. Ala. Oct. 10, 2019), the Court held that where certain defendants

delayed two years before asserting that an arbitration clause applied to plaintiffs' claims, they

forfeited their right to an immediate appeal of the court's denial of their petition to compel

arbitration. *Id.* at *8. The court described the behavior of this defendant group, Serma, as follows:

> Through their delay and opportunism, Serma Defendants have used their rights to
> compel arbitration in a manipulative fashion throughout this case. For over 500
> days, they acted in a manner consistent with the intent to litigate the case in federal
> court. They participated in discovery. They made every effort to have the district
> court dismiss Plaintiffs' claims. And all the while, they kept their arbitration rights
> tucked away for a rainy day. In so doing, Serma Defendants "play[ed] games with
> the district court's schedule." Now, they seek to play further games, demanding a
> stay of the proceedings while their frivolous appeal makes its way through the
> Eleventh Circuit. But, due in part to their efforts, this case has already been pending
> for over two years. To grant their proposed stay would "injure the legitimate
> interests of other litigants and the judicial system." [*Apostol*, 870 F.2d at 1338].

*Davis*, 2019 WL 5081074, at *8 (concluding that "[f]orfeiture of a right to a stay pending appeal is

thus an appropriate response to parties 'who play games with the district court's schedule'" and

"that Serma Defendants' behavior in these proceedings is inconsistent with the right to a pretrial

appeal").

In this District, in *Todd v. LaMarque*, No. C 03-3995 SBA, 2008 WL 205591 (N.D. Cal. Jan. 24, 2008), Judge Armstrong certified the defendant's interlocutory appeal of qualified immunity as frivolous finding that "the resort to official immunity appeal is highly suspect given its timing and the overall circumstances of this action." *Id.* at *3. The appeal followed the denial of two summary judgment motions—one of which contained "a serious misrepresentation of disputed facts"—and a finding by Magistrate Judge Zimmerman that the defendant failed to comply with a discovery order. *Id.* at *1–2. Judge Armstrong also authorized "any further discovery the Magistrate Judge may allow or order." *Id.* at *4. *Cf. Microsoft Corp. v. Commonwealth Sci. & Indus. Research Organisation*, No. C 05-01894 MJJ, 2005 WL 8165886, at *2–3 (N.D. Cal. Nov. 14, 2005) (denying certification of FSIA appeal for frivolity, but noting "[a] party waives, or forfeits, a qualified immunity claim when it is 'untimely' or 'dilatory'").

**B.    The Court Should Certify that Irico's Appeal Is Forfeited and Retain Jurisdiction Pending Appeal.**

The Court should certify that the Irico Defendants have forfeited their entitlement to an interlocutory appeal based on the delays in this case occasioned by their delay in asserting their immunity defense, and their unnecessary reassertion of matters already resolved by the Court.

First, the Irico Defendants' delay of nine years and four months[6] in asserting their FSIA defense is manifestly dilatory and alone supports a finding that they have forfeited an immediate appeal. It almost doubles the five-year delay that the court in *Yates* made clear would support a forfeiture certification. 941 F.2d at 448. It is many times longer than the 500 day delay condemned by the Court in *Davis*. 2019 WL 5081074 at *8. As in *Davis*, moreover, the Irico Defendants "acted in a manner consistent with the intent to litigate the case in federal court. They participated in discovery. They made every effort to have the district court dismiss Plaintiffs' claims. And all the while, they kept their [FSIA defense] tucked away for a rainy day." *Id.* Not only is the conclusion that the Irico Defendants have failed to exercise "a reasonable modicum of diligence" with regard to the assertion of their FSIA defense inescapable, it is clear that delay of this action was intended. *See Yates*, 941 F.2d at 449 ("a defendant's right to bring an interlocutory appeal

---

[6] Measured from service of the complaint on June 3, 2008. *See* ECF No. 336.

under *Forsyth* brings with it a concomitant responsibility on the part of the defendant to exercise "'a reasonable modicum of diligence in the exercise of that right'").

Second, the additional delay of more than eighteen months caused by the Irico Defendants' improper relitigation of their commercial exception arguments is also a sufficient basis for a forfeiture certification. As the Court stated, the Irico Defendants filed what amounted to an improper and untimely motion for reconsideration, at least as to the commercial exception. *See* Second FSIA Order at 12. If the commercial exception applies, there is no basis to stay or otherwise delay DPPs' prosecution of their case against the Irico Defendants. This is true regardless of whether Display qualifies as an organ of the state. The Irico Defendants must certainly have known that they did not plan to submit any relevant new evidence through the entire jurisdictional discovery process. It is accordingly reasonable to treat their second motions to dismiss as dilatory and as an additional basis for a forfeiture certification.

It is also clear that the delaying conduct of the Irico Defendants has "injure[d] the legitimate interests of other litigants and the judicial system" in this case. *Apostol,* 870 F.2d at 1338. Again, the Court has already found that DPPs have suffered the very types of harm that motivated the exception for frivolous or dilatory assertions of immunity defenses. *See* Default Order, 2018 WL 659084, at *8; *see also Apostol,* 870 F.2d at 1338; *Yates,* 941 F.2d at 448–49. And, as noted above, the Irico Defendants have confirmed that important documentary evidence relating to their participation in the conspiracy has been lost. *See* Saveri Decl., Ex. 2. There can be no question that the Irico Defendants have "gain[ed] from delay at [DPPs'] expense," *Apostol,* 870 F.2d at 1338, including the initial delay in asserting their defense and the additional delay from their second jurisdictional motion. They now seek to augment those gains by staying the case based on an asserted right to an "immediate appeal[ ]," *Forysth*, 472 U.S. at 526—even though their conduct shows that an immediate resolution of their FSIA defense has been the last thing the Irico Defendants have desired.

These circumstances warrant a certification by the Court that the Irico Defendants have forfeited their entitlement to an interlocutory appeal by virtue of their dilatory assertion of their FSIA defense. The Irico Defendants have "manipulated" the Court's schedule to their advantage

14

and DPPs' disadvantage via their failure to assert their FSIA defense at the beginning of the case, their disappearance from the case for over seven years, and their dilatory behavior after they reappeared in the case. To rule that this behavior has no consequences would encourage other litigants with dubious claims to foreign sovereign immunity to follow the Irico playbook.

Finally, *M.A. Mobile*, relied upon by the Irico Defendants, is inapposite. In that case, Judge Whyte declined to certify an appeal of denial of sovereign immunity as frivolous. 2014 WL 2216253, at \*2. The plaintiffs' chief argument was that the defendants' appeal was untimely because they did not appeal the first of two orders denying the immunity claim. *Id.* at \*1. The court held that the two orders were based on different complaints, *inter alia,* and, therefore, an appeal from the second order was proper. *Id.* at \*1–2. Here, the complaint did not change, and the Court has already found that the Irico Defendants failed to present anything new on their second motion with respect to the key commercial-activity exception.

### C.     Certification of the Appeals as Forfeited Is Consistent with the Default Order.

An order certifying that the Irico Defendants have forfeited their entitlement to an immediate appeal is consistent with the Court's Default Order.

First, the Court's holding that the Irico Defendants had not waived their FSIA defense under the standard of *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 720–21 (9th Cir. 1992) has no application here. DPPs argued that the Irico Defendants had waived any FSIA defense by 1) failing to disclose the defense under the terms of a stipulation (and order) they did not sign but joined in 2008, ECF Nos. 5228 at 6–7, 5228-3, Exs 1–3; and 2) failing to include the defense in their motion to dismiss. ECF No. 5228 at 4, 7; Default Order, 2018 WL 659084, at \*7. The Court held that 1) the terms of the stipulation did not support waiver; and 2) the motion to dismiss did not constitute a "responsive pleading" as required by *Siderman de Blake*, 965 F.2d at 720–21. Default Order, 2018 WL 659084, at \*7. Neither finding is inconsistent with the certification DPPs seek here.

Second, the Court's finding that the Irico Defendants were not "culpable" as defined in *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2010) is also no bar to the relief DPPs seek because the legal standard applicable on a default

motion is materially different than the standard here and because this motion is based on additional

facts. The Court quoted the *Signed Pers. Check No. 730 of Yubran S. Mesle* case to explain the

standard:

> [A] defendant's conduct is culpable if he has received actual or constructive notice
> of the filing of the action and intentionally failed to answer. . . . [I]n this context the
> term "intentionally" means that a movant cannot be treated as culpable simply for
> having made a conscious choice not to answer; rather, to treat a failure to answer as
> culpable, the movant must have acted with bad faith, such as an intention to take
> advantage of the opposing party, interfere with judicial decisionmaking, or
> otherwise manipulate the legal process. We have typically held that a defendant's
> conduct was culpable . . . where there is *no* explanation of the default inconsistent
> with a devious, deliberate, willful, or bad faith failure to respond.

Default Order, 2018 WL 659084, at *9. As the quoted language explains, in the default context,

"intentional" does not have its normal meaning. Culpability requires something in addition to

regular intentional conduct. It "typically" requires "devious, deliberate, willful, or bad faith"

conduct. *Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d at 1092. In addition, the

standard of proof requires that there be no other explanation. *Id.* For these reasons. the Court's

finding that the law does not support a finding of bad faith sufficient to merit upholding the default

is different from the finding DPPs ask for here.

Here, the standard is materially lower. As the discussion above demonstrates, intentional

delay of the case without more supports a determination of forfeiture. *Marks*, 102 F.3d at 1017 n.8

("untimely or dilatory"); *Yates*, 941 F.2d at 449 (five year delay "dilatory"); *Stewart*, 915 F.2d at

577–78 ("dilatory"). *See also* § III.A, *supra*. In *Yates*, the court explained that the standard also

requires the exercise of diligence. 941 F.2d at 449 (entitlement to immediate appeal imposes

"concomitant responsibility on the part of the defendant to exercise 'a reasonable modicum of

diligence in the exercise of that right'"). Additionally, the Court's consideration of the culpability

factor was not in itself dispositive. It was one factor among others—e.g., the size of the potential

default and concern that the Irico Defendants might have a meritorious defense—the Court

weighed in an exercise of discretion. Default Order, 2018 WL 659084, at *10.

The standards are different because the policies underlying the standards are different. In

the default context, there is an overriding policy for judgment on the merits. As the Court

16

emphasized in the Default Order, "'judgment by default is a drastic step appropriate only in extreme circumstances; [and] a case should, whenever possible, be decided on the merits.'" 2018 WL 659084, at *9 (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)). *See also Gregorian v. Izvestia*, 871 F.2d 1515, 1523 (9th Cir. 1989) (default judgments disfavored; doubts should be resolved in favor of setting aside the judgment). There is no similar policy favoring interlocutory appeals—instead, the appeal granted purportedly sovereign defendants is a special exception to the general rule that appellate review should await a final judgment. Here, by contrast, the underlying policy is one of expeditious resolution of litigation. *See* § III.A, *supra*.

In addition, the record before the Court is different from the record on the Default Order. As explained above, and as the Court has noted, the Irico Defendants argued that they could provide additional evidence to support their FSIA defense, but ultimately submitted what amounted to "a belated motion for reconsideration" on the dispositive issue. Their responses to discovery were also dilatory.

Finally, the Court's statement that "the DPPs' prejudice argument is substantially undercut by their own delay in seeking entry of default," Default Order, 2018 WL 659084, at *8, is also not pertinent here because there is nothing to show that it affected the Irico Defendants' behavior. DPPs requested that the Clerk enter the Irico Defendants' default on July 18, 2016. *See* ECF No. 4724. It was filed on ECF and, if Pillsbury fulfilled its Court-ordered obligations, *see* Pillsbury Withdrawal Order at 2, it forwarded it to the Irico Defendants at that time. *See* ECF Nos. 4681 at 1 (June 23, 2016 Pillsbury representation that it fulfilled forwarding service for previous six years), 4683 ¶ 2 (declaration of legal secretary confirming transmission of all papers filed in the case to the Irico Defendants); *see also* ECF Nos. 5003 (November 7, 2016 order terminating Pillsbury's obligation to forward pleadings to the Irico Defendants), 5192 (August 15, 2017 order requiring Pillsbury to forward DPPs' Default Judgment Application to the Irico Defendants).

The Irico Defendants did nothing in response to the entry of default by the Clerk. Nothing happened until DPPs filed their Default Judgment Application on August 3, 2017. ECF Nos. 5182-3, 5183; publicly refiled as ECF No. 5191. The Irico Defendants appeared five weeks later and immediately asked for a delay of the schedule—confirming that the filing of the Default Judgment

17

Application was the triggering event. *See* Saveri Decl., Ex. 1. Indeed, that they waited until DPPs applied for a default judgment—the analog for a trial here—is one of the striking similarities in this case to *Yates. See Yates*, 941 F.2d at 449.

Even after the default, the Irico Defendants still delayed over thirteen months to reappear in the case. *See* ECF No. 4727 (July 20, 2016 entry of default). This thirteen month delay, in addition to the twenty-four months they litigated without raising their FSIA defense, is sufficient by itself to justify the certification DPPs seek. This is especially true when the Irico Defendants' additional dilatory conduct after their reappearance is considered. *See* § II.C, *supra*.

**D.     The Court Should Order the Irico Defendants to Answer the Complaint and Respond to Written Discovery Served in 2010 and 2011.**

If the Court certifies the Irico Defendants' appeals are forfeited, DPPs respectfully submit that the Court should also order the Irico Defendants to answer the complaint, and to respond to the written discovery DPPs served in 2010 and 2011. *See* ECF No. 5266. In addition, DPPs request that the Court schedule a Case Management Conference in the near future to discuss a pretrial and trial schedule.

DPPs also request that the Court order the Irico Defendants to move for a stay in the Court of Appeals within fourteen days of the Court's order hereon, if they intend to do so.

**IV.     CONCLUSION**

For the foregoing reasons, the Court should certify in writing, pursuant to *Chuman v. Wright*, 960 F.2d 104 (9th Cir. 1992), that the Irico Defendants have forfeited their right to appeal the Second FSIA Order and thereby retain jurisdiction.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1  Dated: November 27, 2019                    Respectfully submitted,

2

3                                              /s/ R. Alexander Saveri
                                               Guido Saveri (22349)
4                                              R. Alexander Saveri (173102)
                                               Geoffrey C. Rushing (126910)
5                                              Cadio Zirpoli (179108)
                                               Matthew D. Heaphy (227224)
6                                              SAVERI & SAVERI, INC.
                                               706 Sansome Street
7                                              San Francisco, CA 94111
                                               Telephone: (415) 217-6810
8                                              Facsimile: (415) 217-6813

9                                              Lead Counsel for Direct Purchaser Plaintiffs

10                                             Joseph W. Cotchett
                                               Adam J. Zapala
11                                             Michael Montaño
                                               COTCHETT, PITRE & McCARTHY, LLP
12                                             840 Malcolm Road
                                               Burlingame, CA 94010
13                                             Telephone: (650) 697-6000
                                               Facsimile: (650) 697-0577

14                                             Steven F. Benz
                                               Gregory G. Rapawy
15                                             KELLOGG, HANSEN, TODD, FIGEL &
                                                  FREDERICK, P.L.L.C.
16                                             1615 M Street, N.W., Suite 400
                                               Washington, DC 20036
17                                             Telephone: (202) 326-7900
                                               Facsimile: (202) 326-7999

18
                                               Attorneys for Direct Purchaser Plaintiffs
19

20

21

22

23

24

25

26

27

28