Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
1144 15th Street, Suite 3400
Denver, CO 80203
Telephone: +1-303-607-3500
Facsimile: +1-303-607-3600
jeff.roberts@FaegreBD.com

*Attorneys for Defendants Thomson SA and Thomson Consumer Electronics, Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | Case No. 07-cv-5944-SC<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>All Indirect-Purchaser Actions | **THOMSON DEFENDANTS' OPPOSITION TO (1) RENEWED MOTION TO INTERVENE AND FILE SEVERED COMPLAINT TO ADD STATE LAW CLAIMS FOR THE OTHER REPEALER STATES (ECF No. 5645); AND (2) RENEWED MOTION OF NON-REPEALER STATE SUBCLASS MEMBER ELEANOR LEWIS TO INTERVENE (ECF No. 5643)**<br><br>Date: February 12, 2020<br>Time: 2:00 pm<br>Courtroom: 6, 2nd Floor<br>Judge: Honorable Jon S. Tigar |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.   INTRODUCTION ................................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

    A.   The Consolidated Amended Complaints ...................................................... 2

    B.   The Settlement and Resulting Complaint Against Thomson ....................... 4

    C.   The New Complaint ..................................................................................... 4

III. ARGUMENT ............................................................................................................ 5

    A.   **Intervention Should Be Denied Due to Movants' Repeated, Decade-Long, Prejudicial Delay in Moving to Intervene to Assert Claims Against Thomson.** ......................................................................................... 5

    B.   **Leave to Amend to Add Thomson as a Defendant Should Be Denied Because Thomson Would Be Prejudiced by Its Late Addition to the Litigation.** ........................................................................... 7

    C.   **Leave to Amend Should Be Denied as to Thomson Because the Claims Against It Do Not Relate Back to Any Complaint Against Thomson and Thus Are Untimely.** .............................................................. 9

IV.  CONCLUSION ...................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Aaron v. Andrew, Inc. v. Sears Holdings Management Corp.*,
    2017 WL 3449597 (C.D. Cal. 2017) ................................................................................ 8

*Bailey v. N. Ind. Pub. Serv. Co.*,
    910 F.2d 406 (7th Cir. 1990) .......................................................................................... 12

*Becherer v. Merrill Lynch, Pierce, Fenner & Smith*,
    43 F.3d 1054 (6th Cir. 1995) ............................................................................................ 9

*Cabrera v. Lawlor*,
    252 F.R.D. 120 (D. Conn. 2008) .................................................................................... 13

*California Dep't of Toxic Substances Control v. Commercial Reality Projects, Inc.*,
    309 F.3d 1113 (9th Cir. 2002) .......................................................................................... 5

*City of L.A. v. San Pedro Boat Works*,
    635 F.3d 440 (9th Cir. 2011) ........................................................................................ 8, 9

*Coleman v. Pacific Gas & Electric Co.*,
    79 F.3d 1152, 1996 WL 118518 (9th Cir. Mar. 18, 1996) ............................................. 12

*DCD Programs, Ltd. v. Leighton*,
    833 F.2d 183 (9th Cir. 1987) ............................................................................................ 7

*Ganz v. Chungwha*,
    4:08-cv-01721-JST (N.D. Cal. March 31, 2008) ............................................................. 3

*In re ATM Fee Antitrust Litig.*,
    768 F. Supp. 2d 984 (N.D. Cal. 2009) ........................................................................... 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    536 F. Supp. 2d 1364 (J.P.M.L. 2008) ............................................................................. 2

*In re Comm. Bank of N. Va.*,
    467 F. Supp. 2d 466 (W.D. Pa. 2006) ............................................................................ 12

*In re CRT Antitrust Litigation*,
    27 F. Supp. 3d 1015 (N.D. Cal. 2014) ...................................................................... 10, 11

*In re Graphics Processing Units Antitrust Litig.*,
    527 F. Supp. 2d 1011 (N.D. Cal. 2007) ......................................................................... 13

*In re Graphics Processing Units Antitrust Litig.*,
  540 F. Supp. 2d 1085 (N.D. Cal. 2007) ................................................................................ 13

*In re Lidoderm Antitrust Litig.*,
  103 F. Supp. 3d 1155 (N.D. Cal. 2015) ................................................................................ 13

*In re Static Random Access Memory Antitrust Litig. (SRAM)*,
  2010 U.S. Dist. LEXIS 131002 (N.D. Cal. Dec. 8, 2010) .................................................... 13

*In re TFT-LCD Antitrust Litig.*,
  787 F. Supp. 2d 1036 (N.D. Cal. 2011) ................................................................................ 13

*Jackson v. Bank of Hawaii*,
  902 F.2d 1385 (9th Cir. 1990) ............................................................................................ 7, 9

*Kilkenny v. Arco Marine, Inc.*,
  800 F.2d 853 (9th Cir. 1986) ................................................................................................ 13

*Krupski v. Costa Crociere S.P.A.*,
  560 U.S. 538 (2010) .............................................................................................................. 12

*La.-Pac. Corp. v. ASARCO, Inc.*,
  5 F.3d 431 (9th Cir. 1993) .................................................................................................... 12

*League of United Latin Am. Citizens v. Wilson*,
  131 F.3d 1297 (9th Cir. 1997) ................................................................................................ 5

*Lockheed Martin Corp. v. Network Sols., Inc.*,
  194 F.3d 980 (9th Cir. 1999) ............................................................................................. 8, 9

*Longtale, Ltd. v. IKOR, Inc.*,
  No. C-11-05452 (EDL), 2014 WL 1478901 (N.D. Cal. Apr. 14, 2014) ................................ 9

*Luscher v. Videocon Indus. Ltd., et al.*,
  No. CV-13-03234 (N.D. Cal.) ..................................................................................... 4, 7, 12

*Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc.*,
  406 F.3d 1052 (8th Cir. 2005) ............................................................................................ 8, 9

*Percy v. S.F. Gen. Hosp.*,
  841 F.2d 975 (9th Cir. 1988) ................................................................................................ 11

*Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*,
  No. CIV 09-1397-HA, 2010 WL 4812860 (D. Or. Nov. 19, 2010) ..................................... 12

*Stack v. Chunghwa*,
  4:08-cv-01319-JST (N.D. Cal. March 7, 2008) ................................................................ 3, 12

*SurvJustice Inc. v. DeVos*,
  No. 18-cv-535-JSC, 2019 WL 1427447 (N.D. Cal. Mar. 29, 2019) ...................................... 6

*Taylor v. Shippers Transport Exp., Inc.*,
  No. CV 13-02092-BRO-(PLAx), 2014 WL 12561079 (C.D. Cal. Apr. 18, 2014) .................. 9

*Willner v. Manpower, Inc.*,
  No. 11-cv-02846-JST, 2014 WL 2939732 (N.D. Cal. Jun. 30, 2014) ................................... 10

*Zepeda v. PayPal, Inc.*,
  No. 10-cv-02500-SBA (JCS), 2014 WL 1653246 (N.D. Cal. Apr. 23, 2014),
  *objections overruled,* 2014 WL 4354386 (N.D. Cal. Sept. 2, 2014) ........................................ 7

**STATE STATUTES**

Arkansas Deceptive Trade Practices Act ...................................................................................... 13

MONT. CODE ANN. § 27-2-211 (2019) ........................................................................................ 11

N.H. REV. STAT. ANN. 358-A:3(IV-a) ............................................................................................ 11

R.I. Gen. Laws § 6-13.1 *et seq.*................................................................................................... 13

S.C. CODE ANN. § 39-5-150 ........................................................................................................ 11

**RULES**

Rule 15(a) ................................................................................................................................ 7, 10

Rule 15(c) ............................................................................................................ 2, 5, 10, 11, 12, 13

Rule 15(c)(1) ................................................................................................................................. 5

# I. INTRODUCTION

Thomson SA and Thomson Consumer Electronics, Inc. (collectively, "Thomson") join and incorporate by reference Defendants' response ("Defendants' Response") opposing the motions to intervene filed by the other "repealer" state ("ORS") movants and non-repealer states ("NRS) subclass member Eleanor Lewis (collectively, "Movants"). But Thomson files a separate brief to address a fact unique to Thomson that the Movants entirely disregard: by seeking leave to intervene and add Thomson to a new proposed complaint almost 12 years after this litigation began, Movants are attempting to add a defendant that was not a named party in any of the previously filed consolidated amended complaints in this case.

The fact that Thomson was not named in any previous consolidated amended complaint distinguishes Thomson from the other Defendants and raises unique legal questions under Ninth Circuit law. While the motions should be denied for all the reasons stated in Defendants' Response, Movants' attempt to intervene and amend to add Thomson as a defendant should be denied for several additional reasons.

First, Movants have known since March 2009 when the First Consolidated Amended Complaint ("First CAC") was filed that Lead Counsel for the indirect purchaser plaintiffs ("IPPs") was not prosecuting state-law damages claims against Thomson on behalf of ORS or equitable damages claims on behalf of NRS. The intervention clock began running at that time and no legal authority supports permitting intervention after a more than ten-year delay. Movants could have filed separate lawsuits over the past decade, notwithstanding Mario Alioto's appointment as Lead Counsel for IPPs, yet opted not to do so. Second, permitting Movants to intervene and file a complaint adding Thomson as a defendant over a decade late and at this very advanced stage in the proceedings would be unfair and unduly prejudicial. Movants had ample opportunity to name Thomson in any of the first four previous consolidated amended complaints but made the intentional, strategic choice not to do so. Movants' delay has caused Thomson substantial prejudice, including, without limitation, preventing it from participating in dozens of depositions that would have been critical to its defense. Third, the motions for leave to amend are futile. ORS Movants' claims are facially time-barred and, as they implicitly acknowledge, the only way their claims

against Thomson could be timely is if their new complaint relates back to a timely complaint. But as explained further in Defendants' Response, relation back is not available where, like here, a plaintiff files a *new* complaint—a complaint that the ORS Movants mischaracterize as a "severed" complaint and the NRS Movant more accurately describes as a "separate" complaint. Movants also cannot meet the standard for relation back for the independent reason that Thomson is a new defendant and was not previously named as a defendant in any prior consolidated amended complaint. Thomson was not on notice that "the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). Thomson was not omitted from the first four amended consolidated complaints—and nearly a decade of substantive litigation—based on "mistake," much less a "mistake concerning the proper party's identity." To the contrary, Movants and/or Lead Counsel for IPPs knew of Thomson's identity and even alleged that it was a "non-party conspirator" in the Fourth CAC, but opted not to sue Thomson solely for strategic reasons. Under binding U.S. Supreme Court and Ninth Circuit law, an omission for strategic reasons cannot give rise to relation back. Accordingly, even if the motions for leave to intervene and amend as to all other Defendants are not denied—they should be—the motions should be denied with respect to Thomson for the reasons described below.[1]

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Consolidated Amended Complaints

In February 2008, the Judicial Panel on Multidistrict Litigation ordered the centralization of actions alleging that certain Defendants conspired to fix prices of CRTs. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 536 F. Supp. 2d 1364 (J.P.M.L. 2008). Among the cases ultimately transferred to the Northern District of California were two complaints brought by certain indirect-purchaser plaintiffs that named Thomson SA, but not Thomson Consumer Electronics, Inc., as a

---

[1] Thomson recognizes that the Court prefers to address whether claims are barred by the applicable statutes of limitations on a motion to dismiss, but as explained in Defendants' Response, Movants refused to enter into a stipulation that would permit intervention, amendment and Rule 12 issues to be briefed and argued together. Accordingly, Thomson respectfully responds to Movants' relation-back arguments now to ensure its arguments have been preserved and that the Court is apprised of why ORS Movants' proposed claims against Thomson fail as a matter of law.

1    defendant: *Stack v. Chunghwa*, 4:08-cv-01319-JST (N.D. Cal. March 7, 2008), brought on behalf
2    of a putative subclass of Tennessee residents; and *Ganz v. Chungwha*, 4:08-cv-01721-JST (N.D.
3    Cal. March 31, 2008), brought on behalf of a putative subclass of California residents. The *Stack*
4    complaint listed Mr. Francis O. Scarpulla, ORS Movants' current liaison counsel, as the lead
5    attorney for the plaintiffs who filed that complaint. The Court ordered the consolidation of all
6    transferred actions for pretrial purposes. (*See* Pretrial Order No. 1, Dkt. 230.)

7    On March 16, 2009, the First CAC was filed and became the operative complaint. (Dkt.
8    437.) The First CAC did not assert claims against any Thomson entity, even though it mentioned
9    the alleged participation of a Thomson entity in alleged anticompetitive conduct, and even though
10   it listed the named plaintiff in *Ganz* as a named plaintiff. Just over a year later, on May 10, 2010,
11   the Second CAC was filed, and it also failed to name Thomson as a defendant. (Dkt. 716.) The
12   Third CAC, filed on December 11, 2010, also did not assert claims against Thomson. (Dkt. 827.)
13   On November 6, 2011, Thomson and Lead Counsel for IPPs entered into a Tolling Agreement that
14   tolled the statute of limitations on potential claims against Thomson. (Dkt. 3875 at 2-3.)

15   In short, Thomson was not a defendant in or party to the IPP litigation. And the parties acted
16   consistently with that understanding. For example, when Lead Counsel for IPPs gave notice that
17   they intended to move for leave to file a Fourth CAC, Thomson sought to intervene so that it could
18   oppose the motion. (*See* Dkt. 1350.) Lead Counsel and Thomson ultimately stipulated to permit
19   Thomson to oppose the motion, stating that Thomson and another entity were "***not parties to [the***
20   ***IPP] case***." (Dkt. 1343 at 2; *see also* Dkt. 1444 (order granting motion to intervene).) Lead Counsel
21   and Thomson then stipulated that the IPPs "will not seek to add Thomson as a defendant in this
22   Action." (Dkt. 1423 at 2.) On January 10, 2013, the Fourth FAC was filed. (Dkt. 1526). As
23   promised, the complaint did not name Thomson as a defendant, instead alleging merely that
24   Thomson was a non-party "co-conspirator." (*Id.)*

25   Each time a consolidated amended complaint was filed that did <u>not</u> name Thomson as a
26   defendant, Movants knew or should have known that the interests they now claim justify their
27   intervention were not being asserted by Lead Counsel for IPPs. Yet, for over a decade, they sat on
28   their hands and did not seek to intervene to attempt to assert claims against Thomson.

THOMSON DEFENDANTS' OPPOSITION TO MOTIONS TO INTERVENE     3     No. 07-5944-JST; MDL No. 1917

**B.     The Settlement and Resulting Complaint Against Thomson**

After IPP Lead Counsel filed the Fourth CAC, Thomson remained a non-party to the IPP litigation for another two-and-a-half years. The Tolling Agreement between Lead Counsel for IPPs and Thomson terminated effective June 7, 2015. *See* **Ex. 1**. Three days later, on June 10, 2015, Thomson agreed to settle with the IPPs for a total payment of $13.75 million. (Dkt. 3875 at 2-3.) On June 11, 2015, Lead Counsel for IPPs brought nationwide putative class claims against Thomson solely to effectuate the pending settlement between the parties. *See Luscher v. Videocon Indus. Ltd., et al.*, No. CV-13-03234 (N.D. Cal.) (Dkt. 25.) Lead Counsel did not bring a proposed Fifth CAC naming Thomson in this action. Instead, Lead Counsel amended a separate class-action complaint that previously had named parties other than Thomson.[2] *Id.*

Because the separate amended complaint against Thomson was for settlement purposes only, Thomson has never previously litigated ***any*** IPP action against ***any*** named indirect purchaser plaintiff in any meaningful sense. Nearly 12 years after IPP actions were first filed, Thomson has never served discovery regarding any IPP action, filed any dispositive motion against an IPP, or engaged any expert witnesses to defend against any IPP claim. Unlike the other Defendants here, Thomson has not previously litigated against any IPPs, so it has not been required to develop, prepare or implement a legal strategy to defend against any IPP claim. Instead, for more than a decade, Thomson was not named as a defendant in the operative consolidated amended complaints.

**C.     The New Complaint**

Nearly five months ago, Movants sought to add Thomson as a defendant to a proposed Fifth (and ultimately Sixth) CAC. (*See* Dkts. 5565, 5567.) All Defendants opposed the motions. (*See* Dkts. 5591, 5592.) On October 15, 2019, the Court denied the motions and required Movants to file a separate pleading asserting their proposed claims against Defendants. (*See* Dkts. 5626, 5628.)

Now, Movants seek to add Thomson as a defendant to a new complaint separate from any of the CACs filed so far in this case. In their motions, however, Movants never explain why, after

---

[2] The IPPs have filed a Second CAC in the *Luscher* action, dated September 26, 2019 (*see* Dkt. 5600), but the Second CAC has no effect on and is unrelated to the issues presented by these motions.

1    they repeatedly failed since 2009 to intervene to add Thomson as a defendant to any of the CACs,
2    Thomson would not be severely prejudiced by their attempt to add Thomson as a defendant to an
3    entirely new complaint now. Nor do Movants explain why their attempt to add Thomson as a
4    defendant now satisfies the requirements of Rule 15(c)(1), such that their claims against it might,
5    even conceivably, be timely. Instead, they pretend as if, like the other Defendants, Thomson has
6    been actively litigating against IPPs for over a decade.

7    Because Thomson will be prejudiced by Movants' decade-late attempt to intervene and
8    amend to assert claims against it, and because the claims asserted against Thomson would be futile
9    in any event, their motions for leave to intervene and add Thomson as a defendant should be denied.

10                             **III.    ARGUMENT**

11   **A.    Intervention Should Be Denied Due to Movants' Repeated, Decade-Long, Prejudicial**
12         **Delay in Moving to Intervene to Assert Claims Against Thomson.**

13   An untimely motion to intervene must be denied. *League of United Latin Am. Citizens v.*
14   *Wilson,* 131 F.3d 1297, 1302, 1308 (9th Cir. 1997). Timeliness is evaluated in relation to (1) the
15   length of and reason for the delay; (2) the stage of the proceeding, and (3) the prejudice to other
16   parties. *Id*. Moreover, "the timeliness clock begins ticking from the time a proposed intervenor
17   should have been aware its interests would no longer be protected adequately by the parties." *Id*. at
18   1307.

19   Here, Movants have known since the First CAC was filed in March 2009 that Lead Counsel
20   for IPPs was not asserting ORS or federal equitable damages claims against Thomson but waited
21   for over ten years to attempt to assert such claims. Movants were reminded of this fact all four times
22   a new consolidated amended complaint was filed that did not name Thomson as a defendant. Each
23   time they knew or had reason to know that their interests in relation to Thomson might be adversely
24   affected by the ongoing IPP litigation. *See California Dep't of Toxic Substances Control v.*
25   *Commercial Reality Projects, Inc.,* 309 F.3d 1113, 1120 (9th Cir. 2002) (noting that movant "should
26   have known that the risks of waiting included possible denial of their motions to intervene as
27   untimely"); *SurvJustice Inc. v. DeVos*, No. 18-cv-535-JSC, 2019 WL 1427447, at *4 (N.D. Cal.
28   Mar. 29, 2019) (rejecting intervention where movant knew its legal theories were not being pursued

1  but delayed intervening "in the hopes that Plaintiffs would amend their complaint to advance
2  [those] legal theories"). But they did nothing. Movants' lengthy and wholly unjustified delay
3  weighs heavily against intervention.

4        The stage-of-proceedings and prejudice factors also mandate denying Movants leave to
5  intervene to add claims against Thomson. This MDL proceeding has been pending for nearly 12
6  years, has yielded nearly two million pages of documents, and spawned more than one hundred
7  depositions. Dozens of the most critical depositions, including those of Chunghwa representatives
8  who are alleged to have organized and led the Asian Glass Meetings at the heart of the alleged
9  conspiracy, were conducted in Asia before Thomson was sued in March 2013 by certain Direct-
10 Action Plaintiffs. (*See* Dkt. 2981 at 4-8.). The evidence establishes that no Thomson representative
11 attended any Asian Glass Meeting and, in fact if plaintiffs' own allegations regarding these
12 meetings are accepted as true, Thomson's television manufacturing plant in Thailand would have
13 been a direct target of those alleged meetings. (*Id*. at 6.) However, because Thomson was not sued
14 by Lead Counsel for IPPs (or any Movant) until after these critical depositions had occurred,
15 Thomson did not (indeed could not) participate in dozens of depositions during which it could have
16 established its key defense that it did not participate in and, as per plaintiffs' claims, was in fact a
17 victim of the Asian Glass Meetings. (*See e.g. id*. at Exs. 3 & 29.) If Movants are permitted to
18 intervene and assert claims against Thomson, there is no prospect that these myriad foreign
19 depositions will be conducted again. Accordingly, Thomson would be severely prejudiced if
20 Movants were permitted to intervene to assert their proposed claims against Thomson at this very
21 advanced stage of the proceedings. (*See also* Defs.' Resp. at 7-10.)

22       Movants' suggestion that their intervention with respect to Thomson is timely because it
23 occurred after the Ninth Circuit's February 2019 remand order and this Court's July 2019 order
24 appointing separate counsel for the ORS is legally wrong and should be rejected. The "timeliness
25 clock" with respect to Thomson began running no later than March 2009 when the First CAC was
26 filed. Thomson is aware of no case that has granted a party leave to intervene after it failed on
27 multiple occasions over a ten-year period to assert its interests. Substantial policy interests weigh
28 against allowing Movants to do so here. Movants' motions to intervene to attempt to assert claims

against Thomson should be denied.

**B.     Leave to Amend to Add Thomson as a Defendant Should Be Denied Because Thomson Would Be Prejudiced by Its Late Addition to the Litigation.**

ORS Movants argue that leave to amend should be granted under the factors this Court uses to assess such motions under Federal Rule of Civil Procedure 15(a)(2).[3] But while they rightly note that prejudice to the opposing party is "the most important factor," *see Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990), they fail to apply that factor properly to Thomson's unique procedural history.

ORS Movants suggest, for example, that prejudice is absent because Defendants have been litigating indirect purchaser claims and defenses for years. (ORS Mem. at 15–16.) While that may be true as to other Defendants, it is not true as to Thomson, which has never been a "party" to any of the consolidated amended complaints, and which was a party to the *Luscher* matter solely for the purpose of effectuating a negotiated settlement. Thus, contrary to Movants' assertions, the proposed complaints seek to add not only new damages claims, but also a new defendant— Thomson. This fact is relevant because, as the Ninth Circuit recognizes, "[a]mending a complaint to add a party poses an ***especially acute threat*** of prejudice to the entering party," and thus "avoiding prejudice to the party to be added becomes [the court's] major objective." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) (emphasis added).

The threat of prejudice to Thomson is "especially acute" here. Thomson has never been substantively involved as a party in any IPP litigation. Thomson has not (1) participated in or pursued any discovery regarding any IPP claims, (2) engaged any experts, (3) filed any dispositive motions, (4) had the opportunity to challenge certification of any IPP class or (5) developed and implemented a legal strategy to defend against any IPP claims. Allowing Movants to add claims against Thomson now would severely prejudice Thomson. Not only would it be required to attempt

---

[3] Because ORS Movants cannot intervene, they also are "not plaintiffs and they may not file an amended complaint." *Zepeda v. PayPal, Inc.,* No. 10-cv-02500-SBA (JCS), 2014 WL 1653246, at *9 (N.D. Cal. Apr. 23, 2014), *objections overruled,* 2014 WL 4354386 (N.D. Cal. Sept. 2, 2014).

1   to "catch up" to the other Defendants who have actively litigated against IPPs for nearly a decade,
2   it would also be required to attempt to overcome the prejudice arising from not having previously
3   participated in any fact or expert discovery against the IPPs that has already taken place in the
4   litigation, such as the critical depositions of numerous alleged participants in the Asian Glass
5   Meetings noted above. *See supra* at 8. This is exactly the kind of prejudice the Ninth Circuit has
6   held warrants denying motions to amend. *See City of L.A. v. San Pedro Boat Works*, 635 F.3d 440,
7   454 (9th Cir. 2011) (affirming denial of motion for leave to amend where undue prejudice from a
8   three-year delay would arise by forcing defendant "to revisit extensive discovery"); *Lockheed*
9   *Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (noting that "[a] need to
10  reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice
11  from a delayed motion to amend the complaint," and denying leave to amend after a months-long
12  delay); *Aaron v. Andrew, Inc. v. Sears Holdings Management Corp.*, 2017 WL 3449597, at *5–6
13  (C.D. Cal. 2017) (noting that a court "must consider" whether adding the proposed defendants
14  would "require the opponent to expend significant additional resources to conduct discovery and
15  prepare for trial," and rejecting leave to amend where action had been pending for three years and
16  plaintiff had delayed up to a year); *accord Moses.com Secs., Inc. v. Comprehensive Software Sys.,*
17  *Inc.*, 406 F.3d 1052, 1066 (8th Cir. 2005) (rejecting attempt to add new defendants after three-year
18  delay where adding defendants would "impose additional discovery requirements" and "further
19  delay the conclusion of the case").

20  Moreover, the fact that Thomson knew of the litigation does not help Movants here. As one
21  California court has noted, "Although the proposed new defendants may have been aware of this
22  litigation since its inception, this does not mean that they would not be prejudiced by being joined
23  as parties now." *Longtale, Ltd. v. IKOR, Inc.*, No. C-11-05452 (EDL), 2014 WL 1478901, at *4
24  (N.D. Cal. Apr. 14, 2014); *see also Taylor v. Shippers Transport Exp., Inc.*, No. CV 13-02092-
25  BRO-(PLAx), 2014 WL 12561079, at *4 (C.D. Cal. Apr. 18, 2014) (holding that, while the new
26  defendant "has had knowledge of the litigation since 2012, he was not informed that he would
27  become a Defendant until March 2014," and thus prejudice "will likely be inflicted upon [him]
28  should he be added as a Defendant"). Indeed, for all the reasons above, "[s]imply acting as an

THOMSON DEFENDANTS' OPPOSITION TO MOTIONS TO INTERVENE          8          No. 07-5944-JST; MDL No. 1917

1 observer and monitor would not have prepared [Thomson] to jump into complicated commercial
2 litigation at this late stage in the proceedings." *Becherer v. Merrill Lynch, Pierce, Fenner & Smith*,
3 43 F.3d 1054, 1069 (6th Cir. 1995).

4       The prejudice to Thomson is particularly unfair because there is no good reason for
5 Movants' undue delay. *Lockheed Martin*, 194 F.3d at 986 (noting that "delay is not a dispositive
6 factor in the amendment analysis," but "it is relevant," especially "when no reason is given for the
7 delay"). "Relevant to evaluating the delay issue is whether the moving party knew or should have
8 known the facts and theories raised by the amendment in the original pleading." *Jackson*, 902 F.2d
9 at 1388. Movants have known of their potential claims against Thomson for over a decade:
10 Thomson was a party to two state IPP complaints in 2008, one of which was filed by Liaison
11 Counsel for the ORS Movants, Mr. Scarpulla. ORS Movants and their counsel fail to explain why,
12 having known about their potential damages claims against Thomson since at least 2008, they
13 waited over 11 years to attempt to bring damages claims against Thomson under the laws of any of
14 the nine ORS. They have no good excuse for trying to shoehorn Thomson into the litigation now,
15 when they had numerous opportunities to do so over the last decade and intentionally decided
16 against it. *See San Pedro Boat Works*, 635 F.3d at 454 (affirming denial of motion for leave to
17 amend where plaintiff had no excuse for three-year delay); *Longtale*, 2014 WL 1478901, at *3
18 (rejecting leave to amend where plaintiff was "aware of the involvement of the proposed new
19 defendants long before it moved for leave to amend"); *see also Moses.com*, 406 F.3d at 1066
20 (rejecting attempt to add new defendants where plaintiff "had been aware of the existence of the
21 companies" from the outset of the litigation).

22 **C.    Leave to Amend Should Be Denied as to Thomson Because the Claims Against It Do**
23        **Not Relate Back to Any Complaint Against Thomson and Thus Are Untimely.**

24       Not only do Movants' requests to intervene and file a new complaint fail Rule 15(a)'s
25 "prejudice" and "undue delay" tests, they also fail its "futility" test because the claims they seek
26 leave to plead are untimely and, especially as to Thomson, do not relate back to any timely filed
27
28

complaint.[4]

As an initial matter, Movants cannot file new complaints—which the NRS Movant rightly calls a "separate" complaint and the ORS Movants wrongly call a "severed" complaint—directly in this MDL, for all the reasons described (and incorporated by reference here) in Defendants' Response. (*See* Defs.' Resp. at 22-23.) But even if Movants' filing of new complaints were appropriate, their claims still do not satisfy Rule 15(a)'s relation-back test and are untimely.

The first step is to assess whether the proposed claims are time-barred absent the application of relation-back principles under Rule 15(c). *See, e.g.*, *Willner v. Manpower, Inc.*, No. 11-cv-02846-JST, 2014 WL 2939732, at *2–3 (N.D. Cal. Jun. 30, 2014) (assessing whether claims were untimely, then whether they related back to previous complaint). The claims undoubtedly are time-barred. As this Court has previously held, Movants had actual or inquiry notice of their potential claims against Thomson by no later than November 14, 2007. *See In re CRT Antitrust Litigation*, 27 F. Supp. 3d 1015, 1020 (N.D. Cal. 2014) (dismissing certain state law claims alleged by direct action plaintiffs as time-barred). The statutes of limitation on Movants claims against Thomson then ran until November 6, 2011, the effective date of the Tolling Agreement IPPs entered with Thomson. Accordingly, the limitation period ran uninterrupted for at least three years and 357 days. Thomson terminated the Tolling Agreement effective June 7, 2015, at which time any limitation period resumed running. (**Ex**. **1**.) Thus, the limitation period has now been running, at a minimum, for over eight years. Moreover, because no plaintiff from any ORS has ever previously asserted damages claims against Thomson and *American Pipe* tolling does not apply "to a later filed claim that was not identical to the earlier-filed class claims," no ORS Movant from any state may rely upon *American Pipe* to toll the expiration of the statutes of limitation during this over eight-year period. *See In re CRT Antitrust Litigation*, 27 F. Supp. 3d at 1020.

The limitations period for ORS Movants' potential claims under Montana law is two years,

---

[4] Again, Thomson is aware the Court has expressed it is not inclined to deny leave to amend on futility grounds where a defendant asserts that the amendment is futile because the claims are time-barred. But because ORS Movants have raised the Rule 15(c) relation-back issue Thomson addresses the issue here.

and three years under the laws of New Hampshire and South Carolina. *See* MONT. CODE ANN. § 27-2-211 (2019); N.H. REV. STAT. ANN. 358-A:3(IV-a); S.C. CODE ANN. § 39-5-150. The limitations period on ORS Movants' damages claims against Thomson ran for ***over three years and eleven months*** before Thomson entered into a Tolling Agreement with Lead Counsel for IPPs. Therefore, the potential claims against Thomson under Montana, New Hampshire and South Carolina are indisputably time-barred and would fail as a matter of law.

With respect to the potential claims under the laws of states where the relevant limitations period is four or five years (Arkansas, Massachusetts, Missouri, Oregon, Rhode Island, and Utah) the claims are also time-barred. In their motion, ORS Movants suggest that the claims asserted in the proposed complaint under the laws of these states are timely because they relate back to claims asserted against Defendants in prior consolidated amended complaints. Further, they suggest that because they only seek leave to amend to add new plaintiffs, they are only required to satisfy the "test for when the [relation-back] doctrine applies to the addition of a plaintiff." (ORS Mem. at 17.) Not so. As noted above, the proposed new complaints seek to add Thomson as a new defendant. And under Rule 15(c), any new claims against Thomson in the new complaints might relate back to an original pleading ***only*** if (1) the claim arose out of the same conduct, transaction, or occurrence; (2) Thomson received sufficient notice of the original action within 120 days so as not to be prejudiced in defending on the merits; and (3) Thomson knew or should have known that the complaint would have included it "***but for a mistake concerning the proper party's identity.***" *See In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d 984, 1000 (N.D. Cal. 2009), citing *Percy v. S.F. Gen. Hosp.*, 841 F.2d 975, 978, (9th Cir. 1988) (emphasis added).

With respect to Thomson, Movants cannot satisfy the third prong of this test because they cannot show that Thomson was on notice that its omission from the first four consolidated amended complaints was due to "a mistake" about the "proper party's identity."[5] At the time the Fourth CAC

---

[5] Similarly, while the NRS Movant focuses on Thomson's inclusion in the *Luscher* First Amended Complaint in June 2015 (*see* NRS Mem. at 5), Movants cannot bootstrap their new proposed complaints to that complaint because their new complaints are not "an amended pleading … in an existing action, but rather a second separate complaint." *Coleman v. Pacific Gas & Electric Co.*, 79 F.3d 1152, 1996 WL 118518, at *2 (9th Cir. Mar. 18, 1996) (rejecting relation back); *see also*

1  was filed, Thomson was no stranger to Movants—Thomson already had been named in two state
2  IPP complaints that IPPs abandoned in favor of the multiple consolidated complaints that did not
3  name Thomson. Indeed, Liaison counsel for the ORS Plaintiffs, Mr. Scarpulla, had filed the *Stack*
4  complaint against Thomson SA in 2008. As such, Movants were clearly on notice that Thomson
5  was a potential defendant. Lead Counsel for IPPs threatened to add Thomson as a defendant to the
6  Fourth CAC, but ultimately decided merely to allege it was a so-called "co-conspirator." This is
7  conclusive proof that no relevant party ever labored under a "mistake" about Thomson's "identity,"
8  and Thomson was not on notice to the contrary.

9  In fact, this case presents the "antithesis" of a "mistake" under Rule 15(c): "a deliberate
10  choice to sue one party instead of another while fully understanding the factual and legal differences
11  between the two parties." *See Krupski v. Costa Crociere S.P.A.*, 560 U.S. 538, 549 (2010). As
12  *Krupski* noted, when "the original complaint and the plaintiff's conduct compel the conclusion that
13  the failure to name the prospective defendant in the original complaint was the result of a ***fully
14  informed decision*** as opposed to a mistake concerning the proper defendant's identity, the
15  requirements of Rule 15(c)(1)(C)(ii) are not met." *Id.* at 552 (emphasis added). The Ninth Circuit
16  has consistently enforced the same standard. *See e.g.*, *La.-Pac. Corp. v. ASARCO, Inc.*, 5 F.3d 431,
17  434 (9th Cir. 1993) (rejecting relation back where "[t]here was no mistake of identity, but rather a
18  conscious choice of whom to sue"; the "mistake under Rule 15(c) has to be as to identity"); *Kilkenny
19  v. Arco Marine, Inc.*, 800 F.2d 853, 857-58 (9th Cir. 1986) ("Rule 15(c) was never intended to
20  assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential
21  party, nor was it intended to permit a plaintiff to engage in piecemeal litigation."). As one court has
22  put it, "a plaintiff cannot satisfy the mistake requirement of Rule 15(c)(1)(C)(ii) where the plaintiff

---

*Bailey v. N. Ind. Pub. Serv. Co.*, 910 F.2d 406, 413 (7th Cir. 1990) ("Rule 15(c), by its terms, only applies to amended pleadings in the same action as the original, timely complaint"); *Rubicon Glob. Ventures, Inc. v. Chongqing Zongshen Grp. Imp./Exp. Corp.*, No. CIV 09-1397-HA, 2010 WL 4812860, at *9 (D. Or. Nov. 19, 2010) ("The plain language of FRCP 15(c) provides that only amendments to pleadings can relate back to the original complaint."); *In re Comm. Bank of N. Va.*, 467 F. Supp. 2d 466, 478 (W.D. Pa. 2006) (noting the same holding in "every other court of appeals that has addressed the issue"). Movants have filed a new pleading, not amended an old one, and to the extent they are trying to yoke their new "separate" complaints to *Luscher*, black-letter law precludes them from obtaining relation back on this procedural posture.

knows the identities of potential tortfeasors, includes details of their misconduct in the original pleading, but fails to name them as defendants in the original complaint." *Cabrera v. Lawlor*, 252 F.R.D. 120, 123 (D. Conn. 2008). But that is exactly what happened here with respect to Thomson. Because the decision not to name Thomson was a strategic choice, not a "mistake" as to "identity," Movants cannot establish that their proposed claims against Thomson relate back to any timely complaint. Accordingly, ORS Movants' damages claims against Thomson under the state laws of Arkansas, Massachusetts, Missouri, Oregon, Rhode Island, and Utah are untimely and would fail as a matter of law.[6]

Finally, ORS Plaintiffs' potential claims against Thomson under Rhode Island's Unfair Trade Practices Act, R.I. Gen. Laws § 6-13.1 *et seq.* are frivolous and it also would be futile to grant ORS Plaintiffs leave to amend to assert them. Such claims have already been dismissed by this Court. *See* ECF No. 597 at 30-31 (finding that Rhode Island's Unfair Trade Practices Act does not allow for indirect purchaser price-fixing claims).

### IV.   CONCLUSION

For the foregoing reasons, the Court should deny the motions to intervene to add claims against Thomson.

---

[6] Movants' claims against Thomson fail as a matter of law for other reasons. For example, and without limitation, courts in this district have held that indirect purchaser plaintiffs may not maintain damages claims premised upon an alleged price-fixing conspiracy under the Arkansas Deceptive Trade Practices Act, the Arkansas statute ORS Movants attempt to rely upon in the proposed new complaint. *See e.g. In re TFT-LCD Antitrust Litig.*, 787 F. Supp. 2d 1036, 1042 (N.D. Cal. 2011); *In re Static Random Access Memory Antitrust Litig. (SRAM),* 2010 U.S. Dist. LEXIS 131002, *51  (N.D. Cal. Dec. 8, 2010); *In re Graphics Processing Units Antitrust Litig.,* 527 F. Supp. 2d 1011, 1029-30 (N.D. Cal. 2007); *see also In re Graphics Processing Units Antitrust Litig.*, 540 F. Supp. 2d 1085, 1101 (N.D. Cal. 2007); *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1166-1167 (N.D. Cal. 2015). Lewis's claims for equitable monetary damages are completely baseless and also fail as a matter of law for the reasons expressed in Defendants' Response. (*See* Defs.' Resp. at 30-31.)

| | | |
|---|---|---|
|1| | |
|2|Dated: December 12, 2019|Respectfully submitted,|
|3| |FAEGRE BAKER DANIELS LLP|

*/s/ Jeffrey S. Roberts*
Kathy L. Osborn (*pro hac vice*)
Ryan M. Hurley (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN  46204
Telephone: +1-317-237-0300
Facsimile: +1-317-237-1000
kathy.osborn@FaegreBD.com
ryan.hurley@FaegreBD.com

Jeffrey S. Roberts (*pro hac vice*)
Faegre Baker Daniels LLP
1144 15th Street, Suite 3400
Denver, CO  80203
Telephone: +1-303-607-3500
Facsimile:  +1-303-607-3600
jeff.roberts@FaegreBD.com

***Attorneys for Defendants Thomson SA and Thomson Consumer Electronics, Inc.***

**CERTIFICATE OF SERVICE**

On December 12, 2019, I caused a copy of **THOMSON DEFENDANTS' OPPOSITION TO (1) RENEWED MOTION TO INTERVENE AND FILE SEVERED COMPLAINT TO ADD STATE LAW CLAIMS FOR THE OTHER REPEALER STATES (ECF No. 5645); AND (2) RENEWED MOTION OF NON-REPEALER STATE SUBCLASS MEMBER ELEANOR LEWIS TO INTERVENE (ECF No. 5643)** to be electronically filed via the Court's Electronic Case Filing System, which constitutes service in this action pursuant to the Court's order of September 2, 2008.

*s/* _____