Guido Saveri (22349)
    guido@saveri.com
R. Alexander Saveri (173102)
    rick@saveri.com
Geoffrey C. Rushing (126910)
    grushing@saveri.com
Cadio Zirpoli (179108)
    cadio@saveri.com
Matthew D. Heaphy (227224)
    mheaphy@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST |
|---|---|
| | MDL No. 1917 |
| This Document Relates to: | **DIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR *CHUMAN* CERTIFICATION OF THE IRICO DEFENDANTS' APPEAL** |
| *ALL DIRECT PURCHASER ACTIONS* | Date:         February 5, 2020 |
| | Time:         2:00 p.m. |
| | Judge:        Honorable Jon S. Tigar |
| | Courtroom:  6 - 2nd Floor |

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

ISSUE TO BE DECIDED .........................................................................................................1

REPLY BRIEF ...........................................................................................................................1

I.      INTRODUCTION ..........................................................................................................1

II.     ARGUMENT .................................................................................................................3

       A.      Irico Misreads the Law. ...............................................................................3

       B.      The Irico Defendants' Delay of over Nine Years to Assert Their FSIA Defense And/Or Their Dilatory Conduct Since Their Reappearance in This Case Amply Support a Forfeiture Certification. ........................................................................4

           1.      The Irico Defendants Concede Nine Years of Intentional Delay. ...................4

           2.      Irico Concedes Dilatory Conduct Since Its Reappearance. .............................6

           3.      The Irico Defendants' Attempts to Distinguish This Case Fail. ....................7

       C.      Certification Is Not A Drastic Remedy. ...................................................11

III.    CONCLUSION ...........................................................................................................12

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Apostol v. Gallion*,
  870 F.2d 1335 (7th Cir. 1989) ..................................................... 2, 3, 5, 10, 11

4

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,

5

  137 S. Ct. 1312 (2017) ...................................................................................... 12

6

*California ex rel. Lockyer v. Mirant Corp.*,
  266 F. Supp. 2d 1046 (N.D. Cal. 2003), *aff'd sub nom. California ex rel. Lockyer v. Dynegy,*

7

  *Inc.*, 375 F.3d 831 (9th Cir. 2004), *opinion amended on denial of reh'g*, 387 F.3d 966 (9th Cir.
  2004), *and aff'd sub nom. California ex rel. Lockyer v. Dynegy, Inc.*, 387 F.3d 966 (9th Cir.

8

  2004)....................................................................................................................... 4

9

*Chuman v. Wright*,
  960 F.2d 104 (9th Cir. 1992) ........................................................... 1, 3, 11, 12

10

*Davis v. White*,
  Nos. 7:17-cv-01533-LSC, 7:17-cv-01534-LSC, 7:17-cv-01535-LSC, 2019 WL 5081074 (N.D.

11

  Ala. Oct. 10, 2019) ............................................................................................... 4

12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  MDL No. 1917, No. C-07-5944 JST, 2018 WL 659084 (N.D. Cal. Feb. 1, 2018)................. 5, 12

13

*Kennedy v. City of Cleveland*,

14

  797 F.2d 297 (6th Cir. 1986) ............................................................................ 5

15

*Kickapoo Tribe of Indians, of the Kickapoo Reservation in Kansas v. State of Kansas*,
  No. 92-4233-SAC, 1993 WL 192795 (D. Kan. May 19, 1993)........................... 8, 9, 10

16

*Landis v. North American Co.*,

17

  299 U.S. 248 (1936) ............................................................................................ 2

18

*M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*,
  No. C-08-02658-RMW, 2014 WL 2216253 (N.D. Cal. May 29, 2014) ........................ 3

19

*Marks v. Clarke*,

20

  102 F.3d 1012 (9th Cir. 1996), *as amended on denial of reh'g* (Feb. 26, 1997)................... 1, 3, 4

21

*Microsoft Corp. v. Commonwealth Sci. & Indus. Research Organisation*,
  No. C 05-01894 MJJ, 2005 WL 8165886 (N.D. Cal. Nov. 14, 2005) ........................ 3

22

*Stewart v. Donges*,

23

  915 F.2d 572 (10th Cir. 1990) ...................................................................... 3, 4

24

*Stout St. Funding LLC v. Johnson*,
  873 F. Supp. 2d 632 (E.D. Pa. 2012)....................................................................... 8

25

*Todd v. LaMarque*,
  No. C 03-3995 SBA, 2008 WL 205591 (N.D. Cal. Jan. 24, 2008)............................ 3

26

*Yates v. City of Cleveland*,

27

  941 F.2d 444 (6th Cir. 1991) ......................................................... 3, 4, 5, 10

28

ii

**ISSUE TO BE DECIDED**

Whether the Court should certify in writing, pursuant to *Chuman v. Wright*, 960 F.2d 104 (9th Cir. 1992), that the Irico Defendants[1] forfeited their right to a pretrial appeal of the Court's denial of sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA") through, *inter alia*, their dilatory assertion of their FSIA defense.

**REPLY BRIEF**

**I.      INTRODUCTION**

Direct Purchaser Plaintiffs ("DPPs") submit this reply brief in support of their motion for *Chuman* certification of the Irico Defendants' interlocutory appeal of the Court's ruling that they are not immune under the Foreign Sovereign Immunities Act ("FSIA"). *See* ECF No. 5653. The Irico Defendants fail to show that DPPs' motion should not be granted.

*First*, the Court has the power to certify that the Irico Defendants have forfeited their entitlement to a pretrial appeal through their dilatory assertion of an FSIA defense and misleading representation that new evidence would demonstrate their immunity. The Irico Defendants' claim that dilatory conduct cannot be the basis for a *Chuman* certification ignores the express language of *Marks v. Clarke*, 102 F.3d 1012, 1017 n.8 (9th Cir. 1996), *as amended on denial of reh'g* (Feb. 26, 1997), and misreads *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992).

*Second*, the facts are not materially in dispute. The Irico Defendants concede that they made no mention of their FSIA defense during their initial two years of participation in this case, or that they intentionally delayed this case when they "ceased participation" in it for over seven years only to reappear just before the default judgment hearing. *See* Irico Group Corporation's Amended Motion to Dismiss Claims of Indirect Purchaser Plaintiffs for Lack of Subject Matter Jurisdiction at 2, ECF No. 5409 (Mar. 19, 2019). Nor do they deny that DPPs' case has been harmed by the loss or destruction of documents in their possession relating to their participation in the alleged conspiracy and the growing unavailability of witnesses. They offer no evidence—for example, declarations from Irico personnel—to explain or excuse their conduct.

---

[1] Defendants Irico Group Corporation ("Group") and Irico Display Devices Co., Ltd. ("Display") (together, "Irico" or the "Irico Defendants").

*Third*, the Irico Defendants' defense of their dilatory conduct since their reappearance in the case also lacks merit. Again they concede the principal facts: they do not deny that they represented to the Court and DPPs that they would present different and more substantial arguments to support their FSIA defense in their second motion to dismiss or that they failed to do so. This alone justifies a finding that the Irico Defendants have used their FSIA defense in a "manipulative" fashion. *See Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989). Denying that their responses to document requests and interrogatories and their production of witnesses during jurisdictional discovery were not dilatory ignores the Court's contrary rulings.

*Fourth*, the Irico Defendants' argument that a *Chuman* certification will deprive them of important rights is incorrect. Thiis argument depends entirely on the improbable assumption that the Court of Appeals will determine that the Irico Defendants are immune from suit. Indeed, in their motion to stay, the Irico Defendants have notably declined to assert that their appeals are likely to succeed. *See* Irico Group Corp. and Irico Display Devices Co., Ltd.'s Motion to Stay Proceedings Pending Appeal of the Court's Order Denying Motions to Dismiss at 3–4, ECF No. 5651 (Nov. 22, 2019) (discussing the "more liberal" *Landis v. North American Co.*, 299 U.S. 248 (1936) standard for granting a stay, emphasizing cases that do "'not require' a showing of 'strong likelihood of success on the merits of the appeal [or] irreparable injury if a stay is not issued.'").

The main issue on this motion is whether the Court may retain jurisdiction. Even if the Court does so, the Irico Defendants' appeal will continue. What this Court does with its jurisdiction is a separate question. As DPPs have explained, the Irico Defendants should answer the complaint, provide responses to DPPs' interrogatories and document requests served in 2010 and 2011, respond to discovery relating to their affirmative defenses, and make witnesses available for deposition before they become unavailable. This will ensure that new evidence is not lost. If reasonably possible, the case should be made ready for trial. None of this should be unduly burdensome in that since their reappearance in the case in September 2017 the Irico Defendants have presumably conducted their investigation into the events at issue, and that the number of potential witnesses appears to be few.

1  **II.     ARGUMENT**

2       **A.     Irico Misreads the Law.**

3       The Irico Defendants' apparent assertion that *Chuman* certifications may not be based on

4  the dilatory assertion of an immunity defense—*i.e.*, are limited to appeals that are "frivolous or

5  waived"—is incorrect. *See* Opp. at 4:12; *see also id.* at 4 (asserting that certification is limited to "a

6  narrow sub-category of such appeals, those that are wholly without merit"). As DPPs explained in

7  their opening brief, Mot. at 9–13, the Ninth Circuit has expressly stated that a pretrial appeal may

8  be "forfeited" under *Chuman* by virtue of intentional delay: "a forfeited qualified immunity claim

9  is one that is untimely or dilatory." *Marks,* 102 F.3d at 1017 n.8 (citing *Apostol*, 870 F.2d at 1339.

10  Further, as DPPs also explained, each of the out-of-circuit cases the *Chuman* court relied on makes

11  clear that such delay may support a forfeiture certification. *See Chuman*, 960 F.2d at 105

12  (discussing *Apostol*, *Yates*, and *Stewart*); *Apostol*, 870 F.2d at 1339 (forfeiture "if [defendants] use

13  claims of immunity in a manipulative fashion"); *Yates v. City of Cleveland*, 941 F.2d 444, 449 (6th

14  Cir. 1991) ("presentation of a qualified immunity defense on the eve of trial, five years after the

15  initial filing, must be examined critically"); *Stewart v. Donges*, 915 F.2d 572, 577 (10th Cir. 1990)

16  (discussing *Apostol*; court may retain jurisdiction if appeal is frivolous or dilatory).

17       Other cases in this District, as DPPs have also explained, are in accord. *See, e.g., Microsoft*

18  *Corp. v. Commonwealth Sci. & Indus. Research Organisation*, No. C 05-01894 MJJ, 2005 WL

19  8165886, at *2–3 (N.D. Cal. Nov. 14, 2005) ("[a] party waives, or forfeits, a qualified immunity

20  claim when it is 'untimely' or 'dilatory'"); *Todd v. LaMarque*, No. C 03-3995 SBA, 2008 WL

21  205591, at *3 (N.D. Cal. Jan. 24, 2008) ("the resort to official immunity appeal is highly suspect

22  given its timing and the overall circumstances of this action"). These courts and others in the Ninth

23  Circuit, following *Chuman,* also have relied on the three out-of-circuit cases cited in *Chuman*. *See*

24  *Marks*, 102 F.3d at 1017 n.8 (citing *Apostol*); *Microsoft*, 2005 WL 8165886, at *2 (citing *Apostol*);

25  *Todd*, 2008 WL 205591, at *3 (citing *Yates*); *M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*,

26  No. C-08-02658-RMW, 2014 WL 2216253, at *1 (N.D. Cal. May 29, 2014) (citing *Yates,*

27  *Stewart*); *California ex rel. Lockyer v. Mirant Corp.*, 266 F. Supp. 2d 1046, 1052 (N.D. Cal. 2003),

28  *aff'd sub nom. California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831 (9th Cir. 2004), *opinion*

1  *amended on denial of reh'g*, 387 F.3d 966 (9th Cir. 2004), *and aff'd sub nom. California ex rel.*

2  *Lockyer v. Dynegy, Inc.*, 387 F.3d 966 (9th Cir. 2004) (citing *Apostol*).

3        The Irico Defendants do not meaningfully address any of the foregoing authorities. Their

4  assertion that the *Marks*, *Yates* and *Stewart* courts did not find or affirm "a *Chuman*-like

5  certification on *any* grounds," Opp. at 7 (emphasis in original), ignores the procedural context of

6  each case. In *Marks*, the Ninth Circuit appeared to approve the district court's frivolity certification

7  but recognized that a recent Supreme Court opinion invalidated the particular ground—inapposite

8  here—on which the district court's certification rested. *See* 102 F.3d at 1017 n.8. In *Yates*, the

9  appellate court did not "dispose of this appeal on waiver grounds" because the district court made

10  no findings of frivolousness or waiver. *Yates*, 941 F.2d at 449. Instead, the Court rejected the

11  defendants' appeal on the merits. *Id.* In *Stewart*, the Tenth Circuit found that the district court

12  lacked jurisdiction to proceed with trial because plaintiffs did not formally move for certification,

13  thus the district court did not directly address the issue. *Stewart*, 915 F.2d at 578–79. The Irico

14  Defendants cannot deny that these cases followed or adopted the standards on which DPPs rely.

15      **B.**    **The Irico Defendants' Delay of over Nine Years to Assert Their FSIA Defense**
           **And/Or Their Dilatory Conduct Since Their Reappearance in This Case Amply**
16             **Support a Forfeiture Certification.**

17         **1.**    **The Irico Defendants Concede Nine Years of Intentional Delay.**

18        As DPPs' opening brief explains, the Irico Defendants' extraordinary delay strongly

19  supports the Court's certification of the Irico Defendants' forfeiture of their right to a pretrial

20  appeal. Their nine year and four month delay vastly exceeds the delays condemned in *Yates*, 941

21  F.2d at 449 (five year delay), and *Davis v. White*, Nos. 7:17-cv-01533-LSC, 7:17-cv-01534-LSC,

22  7:17-cv-01535-LSC, 2019 WL 5081074, at *8 (N.D. Ala. Oct. 10, 2019) (over 500 day delay), and

23  was plainly dilatory. Here, the Irico Defendants waited until the last possible moment to assert their

24  FSIA defense, burdened the Court with duplicative motion practice, and caused the loss of

25  important evidence. As noted above, the Irico Defendants concede the factual basis for DPPs'

26  present motion. They do not deny that the delay was intentional. They do not argue that they

27  exercised any diligence with regard to asserting their FSIA defense, much less a "reasonable

28

modicum of diligence." *See Yates*, 941 F.2d at 449 (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 301 (6th Cir. 1986)). They offer no evidence in defense or explanation of their actions at all.

The Irico Defendants also fail to deny that their disappearance from the case has caused significant evidentiary problems. Instead, they attempt to elide the issue by asserting that it is irrelevant and that "Plaintiffs offer no evidence that document preservation will be problematic," Opp. at 9 n.3. Both assertions are incorrect.

*First*, the primary reason the *Chuman* certification rule exists is to prevent the loss of evidence that results from dilatory conduct and delay. *See, e.g., Apostol,* 870 F.2d at 1338 ("During the appeal memories fade . . . Plaintiffs' entitlements may be lost or undermined"). *Second*, the evidence that the Irico Defendants destroyed, failed to preserve evidence, or both is substantial and undeniable. As DPPs' opening brief notes, this Court has already found that evidence has been lost. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, No. C-07-5944 JST, 2018 WL 659084, at *8 (N.D. Cal. Feb. 1, 2018) ("Default Order"). Since then, the Irico Defendants have confirmed that all documents relating to twenty-six well-documented meetings with competitors attended by Irico personnel have been lost or destroyed. Mot. at 8–9. Indeed they admit it. *See* ECF No. 5440-15 (Alioto Decl., Ex. 39) (Irico Defendants' Third Suppl. Objs. and Resps. to Indirect Purchasers' First Set of Requests for Production of Documents, Supp. Resp. to RFP No. 18, ECF No. 5440-15 (Apr. 12, 2019) (current and former employees had "discarded" old computers in 2012 and otherwise failed to retain documents from the relevant period)). *See also* Indirect Purchaser Plaintiffs' Joinder in Direct Purchaser Plaintiffs' Motion for *Chuman* Certification of the Irico Defendants' Appeal (ECF No. 5653); Opposition to Irico Group Corporation's and Irico Display Devices Co. Ltd.'s Motion to Stay Proceedings Pending Appeal of the Court's Order Denying Motions to Dismiss at 3–4 & nn.12–14, ECF No. 5657 (Dec. 6, 2019).

In short, it is clear that the Irico Defendants intentionally delayed the assertion their FSIA defenses and thereby caused the very sorts of harm the certification rule is meant to address. Therefore, the Court should certify that the Irico Defendants have forfeited their right to a pretrial appeal based on this conduct alone.

1

**2.     Irico Concedes Dilatory Conduct Since Its Reappearance.**

2      The Irico Defendants also fail to explain their dilatory conduct since their reappearance in

3   the case. Again, they concede the essential facts. They do not deny that they represented to the

4   Court and DPPs that their second motion to dismiss would present substantial new facts or

5   argument. They do not contradict the Court's observation that their second motion amounted to a

6   "belated motion for reconsideration." Order Regarding Motions to Dismiss for Lack of Jurisdiction

7   at 12, ECF No. 5637 (Oct. 28, 2019) ("Second FSIA Order"). And while they claim to have

8   presented new evidence regarding the commercial exception to FSIA immunity, they fail to

9   identify such purported evidence or explain why it was material.

10      Similarly, the Irico Defendants do not explain their failures to provide jurisdictional

11   discovery in a timely fashion. They blame the delays on the Court's orders compelling responses to

12   "extensive document demands, searches[,] and reviews" but fail to acknowledge that those orders

13   were necessitated by their refusals to make timely discovery in the first instance and to comply

14   with the Court's orders. *See* Opp. at 9–10. For example, the Irico Defendants refused to produce

15   documents relating to the sales of their products in the United States, insisting instead that plaintiffs

16   travel to China to search through millions of pages of Chinese language invoices stored in at least

17   two different locations. *See* Order Granting DPPs' Motion to Compel Compliance with 8/2/2018

18   Order Re Jurisdictional Discovery at 3, ECF No. 5352 (Oct. 16, 2018) ("Second Discovery

19   Order"). Even after the Court granted DPPs' motion to compel, the Irico Defendants continued to

20   refuse to produce sales records, necessitating another motion to compel. *See id.* at 5–6, 10. *See also*

21   *id.* at 6 ("In light of the 8/2/2018 Order requiring production of responsive documents, electronic

22   copies of all responsive documents should have been produced promptly to the DPPs."), 7 ("Here,

23   the 8/2/2018 Order expressly requires Irico to produce the documents—not to make the documents

24   available for inspection."). Similarly, the Irico Defendants also refused to identify the documents

25   supporting Wenkai Zhang's incorrect assertion that the Irico Defendants had made no "direct or

26   indirect" sales in the United States. *See* Order Adopting Special Master's Order Re DPPs' Motion

27   for Jurisdictional Discovery at 4, ECF No. 5324 (Aug. 20, 2018). Again, they failed to comply with

28   the Court's first order: their supplemental response stated only that Mr. Zhang could not remember.

6

*See* Second Discovery Order at 10 ("The undersigned agrees that Irico's supplemental response is not fully responsive and fails to comply with the order. A witness' failure to remember is not an adequate response.").

In short, the record clearly establishes that the Irico Defendants' refusal to make proper discovery also substantially delayed the hearing on their second motion. This dilatory conduct is also sufficient to support a *Chuman* certification.

### 3.    The Irico Defendants' Attempts to Distinguish This Case Fail.

The Irico Defendants' few arguments against certification lack merit.

*First*, the Irico Defendants' attempt to distinguish *Yates* and *Davis* fail. They assert that the facts before the Court are materially different because, when the default against them was entered, "there was no discovery produced by Irico (nor any effort by Plaintiffs to compel such discovery) and Plaintiffs engaged in no motion practice specific to the Irico Defendants . . . ." Opp. at 8. They also claim to have taken no "actions inconsistent with foreign sovereign immunity." *Id.* These supposed differences, however, are false or lack substance.

The reason Irico had produced no discovery is because it disappeared from the case. DPPs served document requests and interrogatories on the Irico Defendants before and after their disappearance and received no responses. ECF No. 5266-1 ¶¶ 2–3, Exs. 1–7. The Irico Defendants offer nothing to suggest that a motion to compel would not have been futile. DPPs opposed the motion to dismiss filed by the Irico Defendants along with the other defendants. ECF No. 531. DPPs also opposed the Pillsbury firm's motion to withdraw as counsel, ECF No. 731, and obtained an order which ensured that the Irico Defendants were served with every document served or filed in the case. *See* Order Granting Pillsbury's Motion for Leave to Withdraw, ECF No. 732 (June 24, 2010). Most importantly, DPPs did all the work necessary to develop their case against the Irico Defendants and the other defendants and to ready their case for trial. *See, e.g.,* ECF No. 5191 at 7–11. DPPs completed their final damages study and other expert reports in September 2016. ECF No. 5191-1 ¶¶ 2, 7, Exs. A, E.

In this context, it is clear that the Irico Defendants' assertion that "by all indications Plaintiffs simply forgot that the Irico Defendants existed" is false. Opp. at 8. In any event, it does

7

not excuse the delayed assertion of their FSIA defense or their dilatory conduct after their

reappearance. In short, there is no material difference between the facts of this case and those of

*Yates* or *Davis.*

*Second*, the Irico Defendants' bare assertion that DPPs' delay in taking their default should

result in denial of this motion lacks merit. As DPPs' opening brief explains, the timing of the entry

of default did not affect the Irico Defendants' behavior. They waited until the last moment to

reappear in the case and assert their FSIA defense, *i.e.*, until DPPs' Application for Default

Judgment was pending, a delay of over three years even if their "disappearance" is excluded. *See*

Mot. at 2, 17–18. The Irico Defendants do not contradict any of this. And as DPPs have explained,

the Application for Default Judgment had to wait not only until the case was concluded against the

other defendants, but also until discovery was concluded and their damage study and other expert

reports were complete. Direct Purchaser Plaintiffs' Response to Court's Order Regarding Irico

Entities at 1–2, ECF No. 4705 (July 5, 2016) ("court may not enter a default judgment against one

of several defendants when: (1) the theory of recovery rests on joint liability . . .") (citing *Stout St.*

*Funding LLC v. Johnson*, 873 F. Supp. 2d 632, 649 (E.D. Pa. 2012). Whatever fault may be

attributable to DPPs for taking the default when they did in no way affected or excuses the dilatory

conduct of the Irico Defendants.

*Third*, the Irico Defendants' assertion that the Court's ruling in the Default Order that they

had not waived their FSIA defense precludes a *Chuman* certification lacks merit. Opp. at 8. As

DPPs explained in their opening brief, the Court's waiver ruling presented a different issue and

turned on different facts. Mot. at 15–18. Again, the Irico Defendants fail to address these

arguments. Further, their repeated mischaracterizations of DPPs' argument as one of "waiver" miss

the point. *See, e.g.*, Opp. at 1, 5, 9. DPPs do not argue that the Irico Defendants have waived their

FSIA defense. DPPs contend that the Irico Defendants have forfeited their entitlement to delay

proceedings in this Court while their FSIA appeal is heard.

*Fourth*, the Irico Defendants' reliance on *Kickapoo Tribe of Indians, of the Kickapoo*

*Reservation in Kansas v. State of Kansas*, No. 92-4233-SAC, 1993 WL 192795 (D. Kan. May 19,

1993) ("*Kickapoo Tribe*") is unavailing. That case is inapposite because it did not involve the

dilatory assertion of an immunity defense. The Court's statement of the law is also consistent with DPPs' arguments.

*Kickapoo Tribe* involved a dispute between two Indian tribes and the State of Kansas regarding gaming on the tribes' reservations. *Id.* at *1. The lawsuit was preceded by several months of dispute and negotiation between the tribes and the Kansas state authorities, including, apparently, the Kansas State Legislature. *Id.* at *1, *6. After settlement discussions failed, the tribes brought suit. *Id.* at *1. The District Court set a schedule requiring briefing of 1) motions to dismiss based on jurisdiction; and 2) the merits. *Id.* Kansas timely filed a motion to dismiss based on immunity under the Eleventh Amendment, which the Court denied before briefing on the merits was due and the State immediately appealed. *Id.* The tribes then sought a *Chuman*-like certification on the grounds that "defendant's appeal is frivolous and a dilatory tactic" which the court declined to make. *Id.* at *1, *6–7.

Contrary the Irico Defendants' argument, the *Kickapoo Tribe* court did not disregard "the exact arguments that Plaintiffs argue here . . . ." Opp. at 6. Indeed, as the court expressly noted, the tribes did not assert—and the Court did not consider—any argument that Kansas had improperly delayed the assertion of its immunity defense. *Kickapoo Tribe*, 1993 WL 192795, at *6. As the court explained, Kansas raised its Eleventh Amendment immunity defense in accordance with the briefing schedule set by the court; in fact, it filed its brief a week early. *Id.* at *1. The delays identified by plaintiffs in support of certification were a result of a mutual agreement to stay discovery, both parties' efforts towards settlement, and politics. *Id.* at *1, *6 (Plaintiffs "focus on the extensive efforts by all towards settlement, the Tribes' compromises during compact negotiations, and the Kansas Legislature's obstructive conduct. They allege the Legislature insisted that the Attorney General appeal immediately the district court's Eleventh Amendment ruling. They accuse the Senate leadership of then acting on the delay due to this appeal by forcing the Attorney General to file an original action in the Kansas Supreme Court, by referring the compacts to the Legislature without the Joint Committee's recommendation of approval, and by ultimately rejecting the compacts on the Senate floor."). The Irico Defendants' assertion that the nine plus

year delay at issue here is comparable to the "general accusations of bad faith and delay during jurisdictional discovery" made by the plaintiffs in *Kickapoo Tribe*, Opp. at 7, is patently incorrect.

In addition, again contrary to the Irico Defendants' assertions, the court's explication of the law in *Kickapoo Tribe* is consistent with DPPs' arguments. In particular, the court specifically noted that delay in asserting an immunity defense, as here, is a potential ground for a *Chuman*-like certification:

> Consequently, there must be a sufficient basis for the court to infer that the principal reason for the defendant's appeal is to manipulate the court's schedule. This can come from the fact that the appeal is frivolous or ***because the defendant waited to raise the defense*** or to appeal the unfavorable ruling ***until it was most advantageous to the defendant or most disadvantageous to the plaintiff***.

*Kickapoo Tribe*, 1993 WL 192795, at *6 (emphases added).

The court's footnote stating that it "does not believe" that *Apostol, Kennedy* and *Stewart* "actually contemplated a separate exception for dilatory tactics or manipulation of the court's schedule" is not to the contrary. *Kickapoo Tribe*, 1993 WL 192795, at *5 n.1. Again, the court appears to acknowledge that delayed assertion of a defense may be a basis for certification. *See id.* ("The taking of a frivolous appeal or waiting to raise the immunity defense or to appeal the ruling on it until the delay and inconvenience most harms the plaintiff or most benefits the defendant evidences a dilatory tactic which the district court should guard against."). To the extent it suggests the contrary, it misreads the circuit court cases, and contradicts its own statement of the law quoted above. In any event, *Kickapoo Tribe* did not involve the extraordinary situation before the Court here.

*Fifth*, the Irico Defendants' argument that their appeal is timely also misses the point. Again, the basis for DPPs' motion is the Irico Defendants' delay in asserting and litigating their FSIA defense. While intentional delay of an appeal may also justify a *Chuman* certification, the timeliness of an appeal does not preclude one. *See Apostol*, 870 F.2d at 1339; *Yates*, 941 F.2d at 449.

*Sixth*, whether the Court must exercise "restraint" is not outcome determinative here. While courts have discussed that their power to issue a *Chuman* certification should be used with

10

1   restraint, they have equally emphasized that such "restraint" is not a reason to refuse a certification

2   when circumstances warrant. *See Apostol*, 870 F.2d 1339 ("Such a power must be used with

3   restraint, just as the power to dismiss a complaint for lack of jurisdiction because it is frivolous is

4   anomalous and must be used with restraint. But it is there, and it may be valuable in cutting short

5   the deleterious effects of unfounded appeals."). Here, circumstances weigh heavily in favor of a

6   *Chuman* certification.

7              **C.      Certification Is Not A Drastic Remedy.**

8              The Irico Defendants' argument that a certification that they have forfeited their right to a

9   pretrial appeal will deprive them of the right "to vindicate [their] FSIA defense on appeal," Opp. at

10  11, is overstated. The certification DPPs seek will not terminate the Irico Defendants' appeal. The

11  practical effect of certification would be for this Court to retain jurisdiction to proceed with trial.

12  *Chuman,* 960 F.2d at 105. As explained in *Chuman*, this would create "dual jurisdiction" with

13  appellate and district court proceedings continuing concurrently. *Id.* The Irico Defendants share

14  this understanding: "Plaintiffs now seek the extraordinary step of . . . proceeding immediately with

15  costly merits discovery and other pretrial practice." Opp. at 1.

16             Further, while this Court could hold a trial before the appeal is resolved—because the Irico

17  Defendants will have forfeited their entitlement to a "pretrial" appeal—it need not do so. As DPPs

18  have explained, the Irico Defendants should answer the complaint, provide answers and documents

19  in response to DPPs' previously served discovery, provide discovery relating to their affirmative

20  defenses, and make witnesses available for deposition before they become unavailable—all

21  necessary steps to prevent further loss of evidence and to minimize the Irico Defendants' harmful

22  delay. To the extent possible, the case should be made ready for trial. None of this should be

23  unduly burdensome in that the Irico Defendants, presumably, have conducted their investigation

24  into the events at issue, including collecting what documents remain, since their reappearance in

25  the case in September 2017. The number of potential witnesses also appears to be few.

26             In any event, however, the Court will retain its power to manage pretrial proceedings as it

27  sees fit. If the Court believes certain proceedings should wait until the appeal is resolved, it may

28  make an appropriate order.

1  For these reasons, the certification DPPs seek is a reasonable remedy to the Irico

2  Defendants dilatory gamesmanship. The burdens of discovery and whatever other proceedings the

3  Court allows will be fair in light of the Irico Defendants' conduct. After all, the Irico Defendants

4  are the parties responsible for the delay in the determination of their immunity defenses, which

5  should be promptly raised at the outset of a case. Default Order, 2018 WL 659084, at *11 (the

6  "court should normally resolve those factual disputes . . . as near to the outset of the case as is

7  reasonably possible") (citing *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling*

8  *Co.*, 137 S. Ct. 1312, 1317 (2017)). The FSIA policies protecting defendants from litigation,

9  moreover, will be implicated only if the Court of Appeal reverses this Court's Second FSIA Order,

10  which DPPs submit is unlikely.

11  **III.  CONCLUSION**

12  For the foregoing reasons, the Court should certify in writing, pursuant to *Chuman v.*

13  *Wright*, 960 F.2d 104 (9th Cir. 1992), that the Irico Defendants have forfeited their right to a

14  pretrial appeal of the Court's Second FSIA Order.   This will not terminate the Irico Defendants

15  appeal, but will allow the Court to retain jurisdiction until the appeal is finally resolved. [2]

16  DPPs also request that the Court schedule a case management conference to discuss the

17  next steps in this litigation.

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24

25  [2] According to one source, the resolution of an appeal to the Ninth Circuit generally takes between fifteen and twenty-four months. This does not include petitions for rehearing or rehearing *en banc*,

26  or petitions for certiorari to the U.S. Supreme Court. *See, e.g., The Appellate Lawyers Representatives' Guide to Practice in the United States Court of Appeals for the Ninth Circuit* 17–

27  18 (Nov. 2019), available at https://cdn.ca9.uscourts.gov/datastore/uploads/guides/AppellatePracticeGuide.pdf. It also does not

28  take into account delays in briefing.

Dated: December 18, 2019

Respectfully submitted,

/s/ *R. Alexander Saveri*
Guido Saveri (22349)
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Cadio Zirpoli (179108)
Matthew D. Heaphy (227224)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*

Joseph W. Cotchett
Adam J. Zapala
Michael Montaño
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Steven F. Benz
Gregory G. Rapawy
KELLOGG, HANSEN, TODD, FIGEL &
   FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, DC 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999

*Attorneys for Direct Purchaser Plaintiffs*