Tracy R. Kirkham (69912)
John D. Bogdanov (215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA 94103
Telephone: (415) 788-3030
Facsimile: (415) 882-7040
Email: trk@coopkirk.com
       jdb@coopkirk.com

*Interim Lead Counsel for the Non-Repealer State Subclass*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 4:07-cv-5944-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **REPLY IN SUPPORT OF RENEWED MOTION OF NON-REPEALER STATE SUBCLASS MEMBER ELEANOR LEWIS TO INTERVENE**<br><br>Hearing Date: February 12, 2020<br>Time: 2:00 p.m.<br>Judge: Honorable Jon S. Tigar<br>Courtroom: 6, 2nd Floor |

Defendants' opposition to NRS Subclass member Eleanor Lewis's Renewed Motion to Intervene obfuscates the straightforward practicalities of this case and ignores the totality of the circumstances. Simply put, Ms. Lewis has always been either a putative or certified member of a Nationwide Class of indirect purchasers of CRT products, which class has alleged federal equitable antitrust claims since at least the First Consolidated Amended Complaint. This Nationwide Class was certified by this Court for settlement purposes in 2016, and both the class,[1] and its equitable relief claims, are pending to this day. All that Ms. Lewis seeks to do is change her status from class member to named plaintiff, and note the existence of the NRS Subclass within the Nationwide Class.[2]

Defendants first argue that Ms. Lewis's motion is untimely and prejudicial for the same reasons advanced against the ORS Subclass. Defs. Opp., ECF No. 5663 at 27. These arguments fail. *See also* ORS Reply at 2-6. Only after remand by the Ninth Circuit in February 2019, did this Court, on July 3, 2019, appoint the undersigned as interim lead counsel for the NRS Subclass. However, there is no named plaintiff who is a member of that subclass. Pursuant to the August 9, 2019 Case Management Order, Ms. Lewis filed her motion in order to pick up the mantle and press forward the still-pending federal equitable claims of the NRS subclass within the existing Nationwide Class. *See* First NRS Motion, ECF No. 5565 at 10-12.

Defendants also contend that the timeliness clock for Lewis to intervene started in October 2012, when Lead IPP Counsel Mario Alioto elected not to file a motion for certification of the nationwide federal-law equitable-relief class at the same time that he filed motions to certify 22 state-law subclasses. Defs. Opp. at 27-28. This argument relies upon the premise that Lead Counsel's action constituted the abandonment of the federal equitable claims, which event Ms. Lewis was given no notice of at that time that her claims allegedly were being abandoned. Nonetheless, according to Defendants, she should have realized back in 2012 that she needed to

---

[1] Ms. Lewis is also a member of the nationwide settlement class derived from the *Luscher v. Videocon Indus.,* No. CV-13-03234 (N.D. Cal.) Complaint.

[2] Defendants' opposition brief frequently conflates issues that concern both the ORS and NRS into a discussion referencing solely the ORS. Accordingly, Lewis adopts the arguments in the ORS Reply in Support of Renewed Motion to Intervene, other than those going specifically to their damages issues.

1  intervene to protect her equitable claims and those of the rest of the Nationwide Class.  Since she
2  did not, and Defendants have had the benefit of that abandonment for the last seven years, they say
3  that it would prejudice them if Ms. Lewis were to be permitted to revive those claims now by
4  becoming a plaintiff.  Defendants cite no authority for the proposition that moving to certify the
5  claims of a subclass or seeking certification for less than all of the specific claims alleged on
6  behalf of a class constitutes the *de facto* dismissal of all other claims asserted in an action.
7  Defendants' argument ignores the fact that motions for the certification of discrete subclasses are a
8  valuable litigation management technique that has no effect on the viability of other claims or
9  subclasses.  No court has ever recognized a "presumption of abandonment" of claims or class
10 members unless all possible class certification motions are filed simultaneously.  Indeed, various
11 aspects of Rule 23 of the Federal Rules of Civil Procedure ("Rule") imply or state the potential for
12 the certification of discreet claims to be considered *seriatim*.  *See, e.g.*, Fed. R. Civ. P. 23(c)(1)(B)
13 and (C), and 23(c)(3) & (4).  Clearly, Lead Counsel's 2012 motion for certification of the state law
14 damages subclasses did not waive his right or hinder his ability to prosecute the federal equitable
15 claims in the amended complaints.  Further, had it been so construed by the Court, notice to the
16 Nationwide Class would have been required under Rule 23(d)(1)(B)(i) and (iii), since notice had
17 previously been given in connection with the Chunghwa and LG settlements, telling all class
18 members that their interests in federal equitable claims were being advanced and protected.

19        Defendants raise the issue of a scheduling order which included a timetable for class
20 certification motion practice in support of their argument that Lead Counsel's failure to move for
21 certification of a nationwide class at the same time as the state damage subclasses abandoned the
22 equitable claims.  Defs. Opp. at 28.  But nothing in that order precluded the possibility of ever
23 filing a separate class certification motion if deemed necessary later in the case.  Nor would the
24 Federal Rules of Civil Procedure prohibit a future class certification (or *de*certification) motion
25 after 2012.  Indeed, the Rules specifically permit such motions.  *See, e.g.,* Fed. R. Civ. P.
26 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before
27 final judgment."); Fed. R. Civ. P. 23(c)(5) ("a class may be divided into subclasses that are each
28 treated as a class under this rule"); Fed. R. Civ. P. 23(d)(2) (procedural orders "may be altered or

amended from time to time").  Finally, there has never been a ruling of this Court denying class certification of the putative NRS subclass which would arguably restart the statute of limitations for the NRS equitable claim.  In fact, a putative Nationwide Class of all indirect purchasers of CRT products alleging federal equitable claims *was conditionally certified* for settlement purposes four years later in 2016.

It is not enough for Defendants to assert that Ms. Lewis should have intervened as far back as 2012.  They must also demonstrate that she either knew or should have known back then that she needed to intervene to protect her interests.  *Smith v. L.A. Unified School District,* 830 F.3d 843, 854 (9th Cir. 2016) (courts evaluate the "totality of the circumstances facing would be intervenors," and not merely the lapse of time between the motion for intervention and the initiation of the action).  Defendants' argument that Lewis should have been monitoring PACER from the time notice was given of the Chunghwa settlement so that she would have been aware that Lead Counsel's moving for certification of the 22 state damages subclasses restarted the statute of limitations for the NRS subclass, would impose an unheard-of burden on absent class members that directly conflicts with Rule 23.  Instead, Rule 23 puts the burden on class counsel and the courts to notify putative class members when events occur in the litigation that affects their rights and interests.  *See* Fed. R. Civ. P. 23(d)(1)(B)(i) and (iii).

Defendants next argue that Ms. Lewis cannot file a "separate" complaint in this MDL because Ms. Lewis "has never filed an action."  Defs. Opp. at 31.  But Ms. Lewis has always been either a putative or certified member of a Nationwide Class of indirect purchasers of CRT products, which class has alleged federal equitable antitrust claims since at least the First Consolidated Amended Complaint.  Hence the "action" in which she has been a putative class member has been pending in this MDL since at least that time.  She is not seeking to start new litigation.  She is seeking to intervene to become a party in existing litigation in which she has been a putative, and later, certified class member for a decade.  Indeed, this is the very definition of the intervention provided for in Rule 23(d)(1)(B)(iii) (stating that the court may permit a class member to intervene to "present claims").

|   |   |
|---|---|
| 1 | Defendants also assert that "this Court lacks authority to permit any of the movants to file a |
| 2 | complaint asserting new claims in this MDL proceeding." Defs. Opp. at 22. This argument is |

Defendants also assert that "this Court lacks authority to permit any of the movants to file a complaint asserting new claims in this MDL proceeding." Defs. Opp. at 22. This argument is wrong on both the law and facts. Even if Ms. Lewis's complaint were interpreted as the commencement of a new action, Defendants are incorrect that she would have to move the Panel on Multidistrict Litigation for consolidation and assignment to this Court. Her complaint in intervention alleges that the defendants have sufficient contacts with this District for proper venue pursuant to 28 U.S.C. Sections 1391(b)(2) and (b)(3) and 1391(c)(2), (c)(3) and (d). *See* ECF No. 5643-1, ¶7. Rule 7.2(a) of the Rules of Procedure of the U. S. Judicial Panel on Multidistrict Litigation, provides that "actions filed in the transferee district do not require Panel action". Rather, "[a] party should request assignment of such actions to the Section 1407 transferee judge in accordance with applicable local rules."

Further, as stated on multiple occasions, and as clearly demonstrated by a comparison of her complaint in intervention with the operative Consolidated Amended Complaint, Ms. Lewis is not seeking to assert new claims since a claim for equitable relief on her behalf has been pending in this MDL proceeding since at the First Consolidated Amended Complaint. There is simply no basis in Multidistrict jurisprudence for opposing the addition of Ms. Lewis as a plaintiff so that she can represent the interests of her subclass. Indeed, as exemplified in *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.,* 330 F.R.D. 11 (E.D.N.Y. 2019) *("Payment Card")*, after the reversal of the district court's settlement approval and remand of the action by the Second Circuit in 2016, the district court appointed separate counsel for damages and injunctive relief classes, and counsel for the two classes filed complaints directly onto the MDL docket in 2017 – 12 years after the inception of that litigation. *Id.* at 23; *see also* IPP Statement, ECF No. 5664 at 2-3. In an Order granting in part and denying in part various motions to amend plaintiffs' complaints subsequent to the Second Circuit's remand in *Payment Card*, the district court further explained: "The appointment of new interim co-lead counsel to represent the interests of different putative classes, necessitated by the circuit court's decision that unified class counsel had labored under an inherent conflict of interest, *naturally required each newly defined group of*

*putative class plaintiffs to file a new pleading.* The Equitable Relief Class did so on March 31, 2017. [ECF No.] 6892." *Payment Card,* ECF No. 7076 pp. 6-7 (emphasis added).[3]

Defendants' penchant for throwing up procedural road blocks to Ms. Lewis's simple request to become a named plaintiff instead of a class member appears to be endless, for next, they argue that filing a separate pleading in intervention somehow contravenes this Court's order regarding Ms. Lewis's original motion. Defs. Opp. at 31. Ms. Lewis originally sought leave to amend the operative Consolidated Amended Complaint in conjunction with the ORS Subclass to add her as a named plaintiff. ECF No. 5565 at 2. In its Order denying Ms. Lewis's motion without prejudice, the Court first pointed out that "Lewis's motion to intervene is not accompanied by a pleading." *Id.* at 2. Ms. Lewis was instead instructed that "the Court **requires** Lewis 'to **file a separate pleading** to fully apprise defendant[s] and the court of the basis for her claims in intervention'" (*id.* at 3 (emphasis added, citation omitted)), and that the motion would be denied "without prejudice to a renewed motion accompanied by a separate pleading." *Id.* Accordingly, Ms. Lewis included a "separate pleading" with her renewed motion, precisely as directed by the Court (ECF No. 5643-1), and contemplated by Rule 24(c). The idea that filing a complaint in intervention is grounds for denying the motion to intervene is the very definition of a Catch-22. Not surprisingly, this is another section of Defendants' opposition that is devoid of citations.

Ms. Lewis suggested in her renewed motion, that the Court order all plaintiffs to construct a single consolidated amended complaint. While not opposing Ms. Lewis's intervention, Lead Counsel for the state damage subclasses apparently believes the filing of a single consolidated amended complaint would somehow hinder his ability to separately settle the damage subclass claims. Ms. Lewis disagrees, and the cases Lead Counsel cites with the exception of *Payment Card* concerning direct and indirect purchasers, opt-out plaintiffs, and consumers and resellers with questions concerning pass-on at different levels of the chain of distribution, are inapposite because Ms. Lewis is a member of the same Nationwide Class to which members of damage subclasses belong. However, that matter does not need to be decided now, and the Court clearly

---

[3] A true and correct copy of this docket entry is attached hereto as Exhibit 1 to the Declaration of John D. Bogdanov in Support of Request for Judicial Notice, filed herewith.

has the discretion to chart a course between Defendants' opposition to a separate complaint for the federal equitable claims and Lead Counsel Alioto's opposition to a consolidated complaint for all plaintiffs that does not impair the protection of any members of the Nationwide Class that has always been a part of this litigation.

Defendants' arguments concerning prejudice actually bolster Ms. Lewis's case. *See also* ORS Reply at 8-9. Of the discovery produced in this case that is presently known to Ms. Lewis, most of it is directly relevant to the claims of the NRS subclass, so it should not need to be duplicated in further proceedings. The Court's rulings concerning the damage subclass certification, and many of the motions for summary judgment and motions *in limine* also indisputably intersect with the issues facing the NRS subclass, ensuring that Defendants are fully apprised of the issues in the equitable aspects of this case and will not have to expend additional resources to defend against them. For example, all parties are aware that in this Court's orders granting IPPs class certification and denying Defendants' motion to strike the IPP expert report, evidence was presented that the NRS subclass members where targeted and harmed by the Defendants. The expert report that was found to be reliable to support IPPs' contention that antitrust impact could be proven on a classwide basis for each of the 22 damages classes was grounded in the demonstration that Defendants' pricing policies were based on the knowledge that these price increases would be passed on uniformly to all indirect purchasers in the United States. ECF No. 1950 at 6, 8 (adopting ECF Nos. 1742 and 1743). The report makes clear that its underlying economic analysis applies to both "the nationwide and state classes", noting that "[w]hile Plaintiffs seek damages only for the Indirect Purchaser State Classes, the analysis of the existence of common impact and common, formulaic methods for calculating damages are equally applicable to the Nationwide Class." ECF No. 1531-1, ECF p. 9 & n.5.

Moreover, the Court described the following expert report findings: (1) Defendants had a ninety-percent market share, and alternative CRT sources were essentially unavailable; (2) barriers to entry for the CRT market are high; (3) Defendants met and exchanged price-fixing information, and policed cheating among themselves through checkups, punishments, and most-favored-customers agreements; (4) Defendants' meeting documents state the prices that Defendants wanted

6

REPLY IN SUPPORT OF RENEWED MOTION OF NON-REPEALER STATE SUBCLASS MEMBER ELEANOR LEWIS TO INTERVENE - Case No. 4:07-cv-5944, MDL No. 1917

1  to set (the "target prices"), and that based on the available data, Defendants were generally able to
2  charge prices "at least 95 percent as high as the target price 63 percent of the time, and only 13
3  percent of the sales were more than 15 percent below the cartel's target price"; (5) it is more
4  probable than not that the cartel's price increases impacted all, or nearly all, direct purchasers in a
5  common way; and (6) that Defendants could and did pass on price increases to all indirect
6  purchasers.  ECF No. 1950 at 6-8 (citations to reports omitted from quoted material); *see also* ECF
7  No. 1531-1, ECF pp. 113-114 (expert report summary of conclusions).  Ms. Lewis's litigating the
8  claims of the NRS subclass holds no surprises for the Defendants here.  Defendants have utterly
9  failed to make a showing of prejudice adding her as a plaintiff.

10  Defendants also oppose Ms. Lewis's becoming a plaintiff on grounds of futility.  To begin,
11  Ms. Lewis takes this Court at its word (and citations) that it does not make rulings on important
12  merits issues in the truncated setting of a motion to intervene or amend, and therefore, will not rule
13  on a matter of law as important as the scope of equitable relief available under the federal antitrust
14  laws "without the benefit of formal briefing on the … issue." *Todd v. Tempur-Sealy Int'l, Inc.,*
15  No. 13-cv-04984-JST, 2015 U.S. Dist. LEXIS 114116, at *12 (N.D. Cal. Aug. 26, 2015).  See
16  also, the Court's statement that "[d]enial of a motion for leave to amend on the ground of futility is
17  rare, and Courts generally defer consideration of challenges to the merits of a proposed amended
18  pleading until after leave to amend[] is granted and the amended ... pleading is filed." August 8,
19  2019 Transcript of Hearing at 8:5-10 (quoting *Henderson v. Muniz,* No. 14-cv-01857-JST, 2018
20  U.S. Dist. LEXIS 205350, at *8-9 (N.D. Cal. Dec. 4, 2018) (additional citations omitted)).  *Accord*
21  Defs. Opp. at 3 (noting "the Court's stated preference to address any merits arguments against the
22  proposed amended complaints in a Rule 12 motion"); Thomson Opp. at 2, n.1.

23  Notwithstanding, Defendants argue that "there is no colorable argument that Lewis's
24  request for equitable monetary relief is protected by any statute" (Defs. Opp. at 30) and that
25  Lewis's proposed amendment is "futile to the point of bad faith." *Id.* at 32.  Neither is the case, as
26  will be discussed briefly below.  However, first it should be noted that as is clear from Defendants
27  own words, their arguments are not directed to the *claim* that Ms. Lewis is advancing – a claim for
28  equitable relief under the Clayton Act for violations of the Sherman Act – but to some aspect of

the equitable remedies that she has indicated she will seek should she prevail on her claim. Asking for an amendment to be denied on grounds of futility is essentially a request for a preemptive ruling that the amendment fails to plead facts upon which any relief can be granted. Here, Ms. Lewis has not offered any amendment to her equitable claim. It was well-pleaded in the original consolidated complaint at the start of this multidistrict litigation and in every consolidated amended complaint since, and has never been the subject of a Rule 12 motion. Accordingly, adding Ms. Lewis as a named plaintiff cannot be denied on grounds of futility.

The following is just a brief word about the substance of Defendants' futility argument. The scope of equitable relief potentially available in a federal antitrust case is governed by two controlling United States Supreme Court decisions, neither of which do the Defendants discuss in any detail in their opposition.[4] Those cases are *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946) and *California v. American Stores Co.*, 595 U.S. 271 (1990). As *Porter* and *American Stores* make clear, the threshold question of whether a species of equitable relief is available – in other words, is it a type of relief that may be requested by a plaintiff suing under a particular statute – is distinct from whether that relief will be or should be granted by a court. The threshold question of availability is answered by looking solely to whether Congress unequivocally removed a specific type of equitable remedy from the district court's authority. The law is well settled that all federal courts are empowered with the discretion to do equity by employing the full scope of traditional common law injunctive remedies unless Congress specifically limits that power by statute. *Porter, supra,* 328 U.S. at 395-99. Only a Congressional act, not a Supreme Court decision, can limit this authority. In *American Stores, supra*, 595 U.S. at 281 and 295, the Supreme Court performed that inquiry and found absolutely no act, statement or indication of Congressional intent to constrain the full range of equitable remedies available in private antitrust actions. This compels the conclusion that disgorgement and restitution do indeed fall within the

---

[4] Defendants' renewed opposition at p. 30 now cites this Court's Order (ECF No. 4712) as having rejected Lewis's reliance on *Porter*. But there, the Court was ultimately concerned, in the context of final approval of the settlements, with whether "Lead Counsel's valuation of the injunctive relief claims by class members in non-repealer states . . . was not unreasonable." ECF No. 4712 at 21. Likewise, Defendants added a two-sentence footnote concerning *American Stores* that is also not dispositive of the issue regarding equitable monetary relief under the Sherman Act.

1  scope of this Court's power to address violations of the antitrust laws.  Defendants' continued
2  reliance on *In re Multidistrict Vehicle Air Pollution Litig.,* 538 F.2d 231 (9th Cir. 1976) is
3  unavailing.  *Vehicle Air Pollution* preceded *American Stores* by 14 years and did not perform the
4  correct analysis for determining the scope of equitable remedies available for a Sherman Act
5  violation.  Indeed, the basis for the ruling there was that the plaintiffs were not even seeking to
6  remedy a wrong "intended by the drafters of th[e antitrust] law." *Id*. at 237.  Here, the violation—
7  price-fixing—is clearly a wrong for which the antitrust laws were enacted to remedy and prevent.
8  The *Vehicle Air Pollution* Court noted that the plaintiffs there were seeking restitution from
9  defendants to whom they had paid no money, whereas here, there is evidence that the defendants
10 indeed possess profits taken as illegal overcharges from CRT purchasers in non-repealer states.

      None of the cases cited by Defendants acknowledge the existence of the *Porter* test, which is not surprising since it precludes consideration of *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977), to define the scope of equitable relief available to indirect purchasers.  *Illinois Brick* is a case grounded not in construction of Congressional intent regarding equitable remedies, but rather in the Court's procedural and rule making authority to control the evidence admissible in federal actions.  The proper place for the issue of whether any aspect of *Illinois Brick* should operate to make restitution or disgorgement to indirect purchasers inequitable is after the indirect purchaser has proved an antitrust violation, and the trial court is actually fashioning the appropriate response. The question then is not whether the court has the power to order the remedy, but whether the requested remedy is equitable given all of the circumstances of the case, which could include consideration of the direct- or indirect-purchaser status of the prevailing party.

      Obviously, both the issue of the availability of monetary equitable relief in antitrust actions, as well as the question of whether courts should be persuaded by *Illinois Brick* to deny such awards to indirect purchasers on equitable grounds are merits decisions that cannot be resolved within the context of a motion to intervene.

//
//
//

For all of the above reasons, this Court should grant Ms. Lewis's renewed motion to intervene in this action to file a Complaint.

Dated:  January 9, 2020                           Respectfully Submitted,

                                                /s/ *Tracy R. Kirkham*
                                                 Tracy R. Kirkham

Tracy R. Kirkham (69912)
John D. Bogdanov (215830)
COOPER & KIRKHAM, P.C.
357 Tehama Street, Second Floor
San Francisco, CA 94103
Telephone: (415) 788-3030
Facsimile: (415) 882-7040
Email:  trk@coopkirk.com
            jdb@coopkirk.com

*Interim Lead Counsel for the Non-Repealer State Subclass*