# ATTACHMENT C

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Case No. 4:07-cv-5944-JST<br>MDL No. 1917<br><br>**DECLARATION OF RICHARD E. FLAMM IN SUPPORT OF OPPOSITION TO INDIRECT PURCHASER PLAINTIFFS' MOTION TO STRIKE AND FOR SANCTIONS**<br><br>Hearing Date:  August 12, 2020<br>Time:  2:00 p.m.<br>Judge:  Honorable Jon S. Tigar<br>Courtroom 6, 2nd Floor |

I, Richard E. Flamm, declare:

1.      I am an attorney at law, duly licensed to practice before the state courts of California, as well as many federal courts, including the United States Supreme Court.

2.      I have been a practicing attorney for 38 years and have had my own practice since 1995.  In my practice I concentrate on matters of matters of legal and judicial ethics.  I have served as an expert witness with respect to dozens of such matters – typically, but not always, ones involving claims of conflicted representation – both in California courts and in other states. Often my testimony has been by way of affidavit or declaration, but I have also testified as an ethics expert at depositions, at court hearings, and at trial; and, in December of 2009, I was invited to and did testify before Congress regarding the subject of judicial disqualification.

3.      I have taught the subject of Professional Responsibility as an Adjunct Professor at both the University of California at Berkeley (Boalt Hall) and Golden Gate University in San

Francisco.  In addition, I have frequently lectured on conflicts of interest and other ethical topics, both at private law firm seminars and at public functions throughout the United States.

      4.      As I noted in an affidavit that I submitted in this case in 2018, I am the author of several nationwide treatises.  Of perhaps most relevance to the my qualifications to give an expert opinion with regards to the matters IPP Class Counsel ("IPPCC") raised in its "Motion to Strike and for Sanctions" – which, on its face, appears to be two motions that were improperly conjoined – I am the author of Conflicts of Interest in the Practice of Law: *Causes and Cures*.

      5.      From 2000 until 2002 I served as Chair of San Francisco Bar Association's Legal Ethics Committee.  I have also acted as a member of the Advisory Council for the American Bar Association's Commission on Evaluation of Rules of Professional Conduct ("Ethics 2000"), as Chair of Alameda County Bar Association's Ethics and Professionalism Committee, and as Secretary and Vice-Chair of San Francisco Bar Association's Legal Ethics Committee.

      6.      Robert J. Bonsignore recently informed me that IPPCC filed a motion in which it asked the court to sanction him for having belatedly filed a Supplemental Brief; and that it had sought to justify its request for what is, in effect, a further fee award by arguing that various things it claims he has done in conjunction with the filing of that brief, and in the case generally, manifest "vexatious" behavior, or objective "bad faith" on his part.  He thereupon asked whether I would be willing be to review certain documents and provide the Court with my opinion regarding the ethical contentions made by IPPCC in its two-pronged "motion."  I agreed to do so.

      7.      In order to be in a position to opine about this subject in a way that may be helpful to the Court I reviewed several documents in addition to IPPCC's "motion" itself.  These include, but are not limited to, the Declaration of Lauren Capurro (a/k/a Russell), which appears to be the only document IPPCC submitted as "evidentiary support" for its "motion." After

reviewing these documents, I formed two opinions.  First, IPPCC counsel has adduced no evidence that Mr. Bonsignore improperly engaged in conflicted representation in this case, or committed other malfeasance that would warrant a finding that he has engaged in objective "bad faith."  Second, assuming arguendo that IPPCC would have standing to raise concerns about Mr. Bonsignore's representation of his clients, IPPCC is in an exceedingly poor position to do so.

8.        In my prior affidavit I expressed concern about the possibility that IPPCC, by seemingly intentionally misciting Fed. R. Civ. P. 62.1, may have run afoul of § 6068(d) of the California Business and Professions Code, which provides that it is the duty of an attorney to "employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law."  IPPCC's current motion would appear to raise similar concerns.  Specifically, while Rule 7.8(a) of the Local Rules of this Court obliges attorneys not to combine a motion for sanctions with any other type of motion, IPPCC appears to have blatantly violated that rule by filing a single "Motion to Strike and For Sanctions;" and, for the reasons set forth by the IPP Objectors in their Opposition, this does not seem to have been inadvertent.

9.        From my perspective, however, what may be more significant is how IPPCC reacted when Mr. Bonsignore brought its rule violation to its attention.  Instead of informing him that it would immediately advise the Court that it had filed a procedurally deficient motion that it would immediately withdraw in its entirety – as one would expect it to do if the decision to file the "motion" had, in fact, been a "mistake" – IPPCC told Mr. Bonsignore that it only intended to drop only those aspects of its "motion" that asked the court to strike certain filings.

10.     As far as the "facts" IPPCC has set forth which, it says, support its rebranded motion, I note that IPPCC asks the Court to impose sanctions on Mr. Bonsignore not pursuant to Rule 11 of Federal Rules of Civil Procedure, which would have required notice to him (and which would, therefore, have all but precluded any possibility that IPPCC could have gotten its "bad faith" allegations before the Court prior to the Final Approval Hearing), but "pursuant to 28 U.S.C. § 1927" and the court's "inherent powers."  IPPCC claims that it is entitled to fees for its "time spent reviewing his unauthorized sur-reply" – which, in the Court's telling, was a Supplemental Brief, not a Sur-reply (which I understand to be a document that has been filed after the party who made a motion has filed a "Reply" to an opposition brief) – as well as for the considerable time that two seasoned attorneys purportedly spent "drafting and filing" the instant "motion."

11.     Putting aside for the moment question of why IPPCC expects the Court to compensate it for time it supposedly spent preparing a motion that was filed in derogation of this Court's Rules – as well as questions regarding such matters as how much time could possibly have been spent "filing," as opposed to "researching" or "drafting" such a motion; why Ms. Capurro testified upon "information and belief" as to the hours Ms. Kern supposedly spent working on IPPCC's "motion," out of her "law firm" in Montana, instead of allowing Ms. Kern to testify herself about that work; why IPPCC submitted no time records to support its claims as to the amount of hours that were purportedly expended which would allow the Court to assure itself that the time was actually spent on matters involving Mr. Bonsignore (as opposed to actions that were taken by objectors on their own accord or by an attorney Mr. Bonsignore is not affiliated with); as well, of course, as why IPPCC elected to combine two motions into one and only withdraw one of them upon being advised of the motion's deficiency – is the fact that

several of the claims IPPCC has made as to which it has said there "no doubt," are not only debatable claims which have been disputed by Mr. Bonsignore, but ones that were not supported by any evidence at all.

12.     By way of example, IPPCC counsel says that there is "no doubt that Mr. Bonsignore deliberately timed his sur-reply to leave IPPs little time to respond, and to maximize the disruption to IPP Counsel's preparation for the hearing." *See* Dkt. 5781 at 8.  However, in the Capurro Declaration which accompanied IPPCC's "motion" – which appears to contain the only "evidence" IPPCC counsel has submitted in support of its "motion" – there is not even a contention that Mr. Bonsignore "deliberately timed his sur-reply" or intentionally engaged in any of the other supposed misconduct IPPCC accuses him of – much less any evidentiary showing that he did so or why he did.  While IPPCC seem to be of the impression that the conclusory opinions it offers the Court in an unsworn brief constitute "evidence" of its claims, one would expect counsel that is billing $600 - $850 an hour for its time to know that such is not the case.

13.     In the same vein, while IPPCC inexplicably contends that Mr. Bonsignore's alleged "disregard" for this Court's "professional rules of conduct" is "reckless," no evidence of Mr. Bonsignore supposed disregard of any "professional rules of conduct" appears anywhere in Ms. Capurro's declaration.  The fact is, too, that if by "this Court's professional rules of conduct" IPPCC is referring to the California Rules of Professional Conduct, IPPCC has failed to identify a single Rule of Professional Conduct that Mr. Bonsignore has even allegedly "disregarded."

14.     According to IPPCC, another reason the Court should give it more fees is that Mr. Bonsignore purported "to represent 14 individual members of the 22 State amended settlement class while simultaneously acting as Court-appointed Interim Co-Lead Counsel for the ORS and pursuing an appeal on their behalf."  Cite.  I have construed this statement as a claim that Mr.

Bonsignore's representation of certain objectors who purchased CRT in the 22 states for purposes of filing objections with the Court, while concurrently serving as co-Lead Counsel for the ORS, constitutes an impermissible conflict of interest.

15.     As to this claim, I agree that there is a *potential* for conflict inherent in that dual representation – just as there is virtually any time a lawyer undertakes to represent more than one party in conjunction with the same litigation.  In my opinion, however, IPPCC has neither shown that there is an actual conflict at this time, nor that such a serious potential for conflict exists as to warrant precluding Mr. Bonsignore from concurrently representing both sets of objectors – much less for sanctioning him for having done so in "bad faith."  This is so for two reasons.

16.     First, as I mentioned in my prior affidavit, it has long been recognized that conflicts of interest that arise in the course of class action litigation cannot be treated in the exact same way as those that arise in other types of litigation.  For one thing, while all members of a class are similarly situated to some degree, because of the large number of class members it is virtually inevitable that the interests of at least some of them will, at some point, diverge; and, while, in other types of cases, a material divergence between the interests of a firm's jointly represented clients would oblige it to obtain the informed consent of each affected client or withdraw, in class actions full disclosure of the nature and ramifications of all potential for conflict is often infeasible, and obtaining the requisite consent of all affected class members impossible.

17.     As I also explained, because of the enhanced prospect for conflicts that exists in the class situation – as well as the diminished potential for acquiring informed consent to proceed with the representation in spite of those conflicts – it has long been recognized that if courts were to automatically transpose the conflicts of interest rules to the class action scenario

the result would be a significant reduction in the effectiveness of the class action device.  It has been said, in fact, that strict application of conflicts rules in the class action context might, in some cases, make the device unworkable; which would be highly undesirable from a public policy point of view, because in many cases each class member's claims would be too small to justify the expense of a separate suit.  Thus, without a class action there would be no available relief for any of them, however meritorious their claims.  Because class action suits promote the interests of those whose rights might not otherwise be protected, many courts have held or implied that, when it comes to class actions, the conflict rules cannot be applied mechanically applied.  Courts have, instead, been exhorted to take a "flexible" approach to evaluating conflicts.

18.     In this case, at this juncture, the interests of IPP Objectors in the 22 states do not appear to be opposed to the interests of the ORS subclass.  On the contrary, because both groups perceive that the amended settlements that were reached by IPPCC and the attorney fee award it secured for itself are unfair – and since both groups would like to see the Final Approval Order reversed and a new settlement, which addresses their concerns, be negotiated – their interests at this point would appear to be perfectly aligned.  It is true that if the Ninth Circuit were to once again send the matter back down to this Court – and if, after that, a new settlement which would include members of both sets of objectors was on the table – the interests of the two sets of objectors might one day actually come into conflict; and, at that point, it would be necessary for Mr. Bonsignore to withdraw from representing one set of objectors or both.  That, however, is not the case now.  As matters stand, were it not for Mr. Bonsignore representing them the IPP Objectors would likely have had no one to help them in conjunction with their objections, and nothing about his having done so would appear to be contrary to the interests of the ORS class.

19.     It bears mentioning, finally, that in my prior affidavit I testified as to the many –
and very serious – conflicts of interests that have appeared to beset IPPCC's representation of the
class in this case, and both this Court and the Ninth Circuit have alluded to possible inadequacies
in that representation.  It would appear to follow that if a claim that a lawyer or law firm has
engaged in conflicted representation could be used to establish the type of "vexatious" and "bad
faith" course of conduct that would warrant a court in sanctioning counsel under 28 U.S.C.
§ 1927 for having improperly filed documents with the Court, IPPCC – having seemingly filed
its conjoined motion in intentional violation of this Court's Local Rules – is living in the type of
"glass house" that would make "throwing stones" at other attorneys extremely inadvisable.


        I declare under penalty of perjury under the laws of the United States and the State of
California that the foregoing is true and correct.


Executed on this 21st day of July, 2020, in Los Angeles, California.


Richard E. Flamm

8