1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER BOTTS LLP
John M. Taladay (*pro hac vice*)
Erik T. Koons (*pro hac vice*)
700 K Street, N.W.
Washington, D.C. 20001
202.639.7700
202.639.7890 (fax)
Email: john.taladay@bakerbotts.com
        erik.koons@bakerbotts.com

*Attorneys for Defendant*
*Philips North America LLC*

[Additional Responding Parties and Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No.: 4:07-cv-05944 JST |
| | MDL No. 1917 |
| This document relates to: | **DEFENDANTS' RESPONSE TO THE GOVERNMENT OF PUERTO RICO'S MOTION TO SERVE FOREIGN DEFENDANTS THROUGH THEIR UNITED STATES-BASED COUNSEL UNDER FEDERAL RULE CIVIL PROCEDURE 4(f)(3) (ECF No. 5783)** |
| Government of Puerto Rico, et al., | |
|         Plaintiff, | |
| v. | |
| Panasonic Corp. of North America, et al., | Date:      Sept. 2, 2020 |
|         Defendants. | Time:      2:00 p.m. |
| | Judge:     Hon. Jon S. Tigar |
| | Courtroom: 6, 2nd Floor |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................3

ARGUMENT ...............................................................................................................5

I.     Puerto Rico Has Failed To Establish Why Service By Court Order Is Appropriate Given The Facts And Circumstances Of This Case.........................................................5

     A.     Courts Routinely Deny Rule 4(f)(3) Motions Where, As Here, Plaintiff Fails To Show That It Has Made Good Faith Efforts To Effect Service Through Other Means.........................................................................................5

     B.     It Is Demonstrably Incorrect That All Unserved Foreign Defendants Already Appeared In The MDL Or Are "Affiliates" Of Already Appearing Defendants .........................................................................................10

     C.     There Is No Urgent Need For Service And, Even If There Were Any Urgency, It Is The Predictable Result Of Plaintiff's Chronic Inaction..................12

II.     Plaintiff Has Not Even Served A Number of Domestic Defendants, Provides No Proposal How It Will Do So, And Cannot Do So Under Rule 4(f)(3) ..............................13

III.     The Court Should Dismiss All Unserved Defendants Pursuant To Rule 4(m) Of The Federal Rules .......................................................................................................14

     A.     Dismissal is Appropriate When A Plaintiff Fails To Diligently Pursue Service.........................................................................................14

     B.     Plaintiff Cannot Show Good Cause Justifying Additional Time For Service .......16

CONCLUSION.........................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Assef v. Doe*,
No. 15-cv-01960-MEJ, 2016 WL 1191683 (N.D. Cal. Mar. 28, 2016) ...................................7

*Bronstein v. U.S. Customs & Border Prot.*,
No. 15-CV-02399-JST, 2016 WL 861102 (N.D. Cal. Mar. 7, 2016) (Tigar, J.) ....................16

*Cal. Beach Co., LLC v. Exqline, Inc.*,
No. 3:20-cv-01994-TSH, slip op. (N.D. Cal. July 7, 2020)........................................................8

*Cal. Bd. Sports, Inc. v. G.H. Dijkmans Beheer B.V.*,
No. 09cv1855-L(RBB), 2009 WL 3448456 (S.D. Cal. Oct. 21, 2009) ....................................6

*Carrico v. Samsung Electronics Co., Ltd.*,
No. 15-cv-02087-DMR, 2016 WL 2654392 (N.D. Cal. May 10, 2016) ..................................9

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
27 F.Supp.3d 1002 (N.D. Cal. 2014) .......................................................................................9

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
No. 4:07-cv-05944-JST, 2008 WL 4104341 (N.D. Cal. Sept. 3, 2008) ..................................9

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
No. 4:07-cv-5944-JST, 2014 WL 581525 (N.D. Cal. June 9, 2014).........................................9

*CJ E&M Am., Inc. v. IQuiyi, Inc.*,
No. 18-5771-PA-JEMx, 2018 WL 6380751 (C.D. Cal. Aug. 13, 2018) ...............................13

*Craigslist, Inc. v. Meyer*,
No. C 09-4739 SI, 2010 WL 2975938 (N.D. Cal. July 26, 2010) ...........................................8

*Efaw v. Williams*,
473 F.3d 1038 (9th Cir. 2007) ...............................................................................................16

*Facebook, Inc. v. Banana Ads., LLC*,
No. C–11–3619 YGR, 2012 WL 1038752 (N.D. Cal. Mar. 27, 2012).....................................8

*Feliz v. MacNeill*,
493 F. App'x 128 (1st Cir. 2012)......................................................................................15, 16

*Fujitsu Ltd. v. Belkin Int'l, Inc.*,
782 F. Supp. 2d 868 (N.D. Cal. 2011) ...........................................................................5, 6, 12

*Gines Dominguez v. Osorio*,
    No. CV 16-689 PSG, 2018 WL 7458522 (C.D. Cal. Oct. 18, 2018)......................................15

*Ho v. Pinsukanjana*,
    No. 17-CV-06520-PJH, 2019 WL 2415456 (N.D. Cal. June 7, 2019)....................................15

*Hopscotch Adoptions, Inc. v. Kachadurian*,
    No. 09-CV-2101, 2010 WL 5313514 (E.D. Cal. Dec. 20, 2010) ............................................17

*Int'l Metaphysical Ministry, Inc. v. Schaefer*,
    No. C 18-4524 SBA, 2018 WL 10560778 (N.D. Cal. Nov. 21, 2018)...................................15

*Jimena v. UBS AG Bank*,
    No. CV-F-07-367, 2010 WL 2465333 (E.D. Cal. June 10, 2010)...........................................12

*Keck v. Alibaba.com, Inc.*,
    330 F.R.D. 255 (N.D. Cal. 2018)......................................................................5, 6, 7, 12

*Keck v. Alibaba.com, Inc.*,
    No. 17-cv-05672-BLF, 2017 WL 10820533 (N.D. Cal. Dec. 20, 2017)..................................6

*Lemoge v. United States*,
    587 F.3d 1188 (9th Cir. 2009) ..............................................................................................16

*Mayorga v. Ronaldo*,
    No. 2:19-CV-168, 2019 WL 1532861 (D. Nev. Apr. 8, 2019)..............................................17

*Plantation Gen. Hosp., L.P. v. Cayman Islands*,
    No. 09-CV-60884, 2010 WL 731853 (S.D. Fla. Feb. 26, 2010) ............................................16

*Richmond Techs., Inc. v. Aumtech Bus. Sols.*,
    No. 11–CV–02460–LHK, 2011 WL 2607158 (N.D. Cal. July 1, 2011) .................................13

*Rio Props. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ...................................................................................... *passim*

*S.E.C. v. Nagaicevs*,
    No. 12-cv-00413-JST, 2013 WL 3730578 (N.D. Cal. July 12, 2013) (Tigar, J.)....................8

*Serenium, Inc. v. Zhou*,
    No. 5:20-cv-02132-BLF, slip op. (N.D. Cal. May 29, 2020) ...................................................7

*In re Sheehan*,
    253 F.3d 507 (9th Cir. 2001) ................................................................................................16

*Tevra Brands v. Bayer Healthcare LLC*,
    No. 19-cv-04312-BLF, 2020 WL 3432700 (N.D. Cal. June 23, 2020) ..........................5, 6, 12

*U.S. ex rel. Thomas v. Siemens AG*,
    708 F. Supp. 2d 505 (E.D. Pa. 2010) ...................................................................................16

*Townsel v. Contra Costa Cnty., Cal.*,
    820 F.2d 319 (9th Cir. 1987) ...................................................................................16, 17

*Whidbee v. Pierce Cty.*,
    857 F.3d 1019 (9th Cir. 2017) ...............................................................................14

*White v. Cinemark USA, Inc.*,
    No. CIV.S-04-397 GEB KJM, 2004 WL 3743135 (E.D. Cal. July 2, 2004) ..........................17

**Other Authorities**

4B Wright & Miller, Fed. Prac. & Proc. Civ. § 1137 (4th ed.)...............................................16, 17

Fed. R. Civ. P. 4 ...............................................................................................................14, 16

Manual for Complex Litigation § 20.132 (4th ed.).........................................................................4

Defendants Philips North America LLC (f/k/a Philips Electronics North America Corporation), Panasonic Corporation of North America, Hitachi America, Ltd., and LG Electronics USA, Inc. respectfully request that the Court deny Plaintiff's motion for alternative service under Rule 4(f)(3) and dismiss unserved Defendants under Rule 4(m).  A proposed order pursuant to LR 7-3(a) is attached.

## PRELIMINARY STATEMENT

On December 17, 2018, Plaintiff, the Government of Puerto Rico ("Plaintiff"), filed its Complaint against 43 Defendant entities.[1]  571 days later—and after doing next to nothing to serve the Foreign Defendants at issue—Plaintiff moved this Court to undertake the routine but vital task that it inexplicably did not perform—proper service.  Given Plaintiff's dilatory conduct and the availability of several service options under Rule 4, Plaintiff cannot demonstrate that the necessary "facts and circumstances" exist to justify the Court ordering alternative service.  *Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015, 1016 (9th Cir. 2002) ("*Rio*").  The Court should thus deny Plaintiff's motion.

Plaintiff's motion fails on a number of substantive and procedural grounds.  *First,* Plaintiff has failed to establish that it has made any real effort to serve any of the Foreign Defendants.  Courts routinely deny Rule 4(f)(3) service even in cases where plaintiffs had taken far greater efforts at service than Plaintiff has undertaken here.  Apart from preparing a few translations of its own Complaint, Plaintiff has done nothing to advance service on the Foreign Defendants *in over 18 months*.  Plaintiff can point to no case where a plaintiff's utter lack of diligence in attempting service was rewarded with a shortcut around traditional service methods.

*Second*, Court ordered service is typically reserved as a means to bring to heel defendants, unlike those at issue here, that are either affirmatively seeking to evade service of process or where the defendant, for example a foreign internet company, maintains no physical address where process can be served.  Foreign Defendant entities here, including Hitachi, Ltd., LG Electronics, Inc., Panasonic Corporation, Philips do Brasil Ltda., Samsung SDI Co., and Toshiba Corporation,

---

[1]  Plaintiff incorrectly states that it filed the Complaint in 2019. Mot. at 1.  *See* ECF No. 1-3 (3:19 cv-1246-ADC) (Complaint filed on Dec.17, 2018).

are hardly difficult to find—each maintains large, physical, corporate office complexes that are easily located and where service can be perfected by those who simply try.

*Third*, Plaintiff's cited authorities establish that, under Rule 4(f)(3), courts must conduct an *individualized* analysis of the "facts and circumstances" surrounding *each* unserved defendant and the plaintiff's attempts (or lack thereof) to serve each such defendant. *Rio Props.*, 284 F.3d at 1007, 1015, 1016. Plaintiff's blunderbuss approach here, seeking approval to serve *30* disparately situated Foreign Defendants located in 15 different countries across the globe ignores this Circuit law. Plaintiff can point to no case holding that, in the absence of such an individualized, defendant-specific inquiry, a court has simply ordered service on dozens of differently situated defendants.

*Fourth,* the Court should reject Plaintiff's newfound sense of urgency as a basis for its alternative service request. There is no urgency here and, even if there were, it would be of Plaintiff's own creation. Incredibly, Plaintiff has attempted service on *only 2 of 30 Foreign Defendants in the year and a half since filing its Complaint*, and even more confoundingly, has only attempted service on *6 of 11* domestic Defendants.[2] As demonstrated below, courts hold plaintiffs—not defendants—responsible for a plaintiff's self-inflicted service delays, and the Court should do so here as well.[3]

---

[2] Two defendant entities named in the complaint, Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEAI") were later dismissed by Plaintiff. *See infra* § I.B. Plaintiff claims to have served 7 of 12 domestic Defendants, Mot. at 1, but it is apparently including SEAI in that calculation.

[3] In addition to its substantive shortcomings, Plaintiff's Motion is procedurally flawed. *First*, Plaintiff failed to provide a proposed order pursuant to LR 7-2. *See* LR 7-2(c). *Second*, the Motion fails to cite with specificity the relief Plaintiff seeks. *See* LR 7-2(b)(3). For example, while the Motion requests "permission to serve certain foreign Defendants through their respective U.S. counsel," it does not identify with sufficient specificity which Foreign Defendants it is asking the Court to permit service upon via appearing U.S. counsel or which U.S. counsel can purportedly accept service on behalf of which unidentified foreign defendants. *See* Mot. at ii. Notably, and as explained in greater detail below (*infra* § I.B), several of the entities Plaintiff includes within its definition of "Foreign Defendants" have never appeared in the MDL and/or have never been represented by U.S. counsel in any MDL case. And, with respect to at least one Foreign Defendant (SEC), Plaintiff already dismissed that entity voluntarily in October 2019.

Separate and apart from its request for alternative service under Rule 4(f)(3), Plaintiff has plainly failed to comply with Rule 4(m), which requires service within 90 days for domestic parties and within a reasonable period for Foreign Defendants.  Despite being directed by the Court during the June 24, 2020 Case Management Conference to address the timeliness of service under Rule 4(m), Plaintiff wholly ignored these issues in its briefing.  Nowhere in its motion does Plaintiff come close to providing a rational basis for its delay in attempting service, let alone meet the "good cause" standard required to excuse such prolonged delays in service.  Defendants thus respectfully request dismissal of all unserved domestic and Foreign Defendants.

<u>**STATEMENT OF FACTS**</u>

Plaintiff filed its Complaint in the Commonwealth of Puerto Rico's Court of First Instance, Superior Court of San Juan, on December 17, 2018.  *See Gov't. of Puerto Rico v. LG Electronics, Inc.*, Case No. 3:19-cv-01246-ADC ECF No. 1-3 (D.P.R. Mar. 19, 2019).  Plaintiff purports to have served certain Defendants on February 14, 2019.[4]  *See* ECF No. 1 at 3 (3:19-cv-1246-ADC). Plaintiff then purportedly served one foreign defendant, Samsung SDI Mexico SA De CV, on March 5, 2019.[5]  Decl. of Jane Becker (ECF No. 5783-1) ("Becker Decl.") at 1 (¶ 6), Ex. 5. Defendants removed the case to the United States District Court for Puerto Rico on March 18, 2019.  *See* ECF No. 1 at 2 (3:19-cv-1246-ADC).  Plaintiff made its last attempt at service, over 14 months ago, on May 16, 2019, this time on foreign defendant Koninklijke Philips N.V. ("KPNV"). Becker Decl. (¶ 6) at 1, Ex. 5 (noting unavailability of documentation supporting proof of service). Plaintiff made no attempt at service on any Defendant, foreign or domestic, since May 2019.  *See* Becker Decl. (¶ 8) at 1; Ex. 5.

On February 11, 2020, the case was transferred by order of the JPML to this Court.  ECF No. 59 (3:19-cv-1246-ADC).  Plaintiff then did nothing for more than three months before, on May 26, 2020, moving the Court to schedule a Case Management Conference ("CMC").  ECF No. 5729.  Defendants opposed the motion arguing, among other issues, that Plaintiff should be

---

[4] For the purposes of this motion, Defendants take no position regarding whether Plaintiff's service was proper and reserve all arguments regarding same.

[5] Upon information and belief, Samsung SDI Mexico S.A. De C.V. was dissolved over a year before the alleged service.

required to serve all Defendants before a CMC was necessary or a case schedule was appropriate. ECF No. 5730. The Court scheduled a CMC for June 24, 2020, and ordered the parties to submit a Joint Case Management Statement ("Joint Statement"). Order, ECF No. 5737. The parties submitted the Joint Statement on June 17, 2020, wherein Defendants again argued that Plaintiff had failed to serve a substantial majority of Defendants and that Plaintiff should be required to complete service attempts before the case should proceed further. Joint Statement, ECF No. 5763, at 1-2. While Plaintiff represented to the Court in the Joint Statement that its service effort "is a work in progress," Plaintiff in fact cannot point to a single effort it took to attempt service in the 14 months leading up to the CMC. Even after the Court expressed concern during the June 24, 2020 CMC regarding Plaintiff's lack of progress in serving the Defendants, Plaintiff did nothing to try to serve any additional Defendant—domestic or foreign—in the month between the CMC and the filing of this Motion.

During the June 2020 CMC, the Court noted that Plaintiff was "way past [the time limits for service under] Rule 4(m)" and afforded Plaintiff an opportunity to address through its motion whether there was good cause for Plaintiff's delay. Hr'g Tr. dated June 24, 2020 at 8:16-9:5, ECF No. 5795. Plaintiff ignored this and chose not to address any Rule 4(m)-related issues in its Motion. Defendants address the 4(m) issues raised by the Court herein.

Plaintiff and the appearing Defendants entered into a stipulation staying the deadline for Defendants to answer or otherwise respond to the Complaint until 60 days from the date on which Plaintiff served the last Defendant. ECF No. 5 (3:19-cv-01246-ADC). That stipulation was issued as an order by the transferor court over 15 months ago (ECF No. 18 (Apr. 1, 2019)) and remains in effect. *See* Manual for Complex Litigation (fourth) § 20.132 (orders issued by transferor court remain in effect unless altered or amended by transferee court). The Court has not set a case schedule for this case, including any date for trial. There are thus no impending case deadlines. Puerto Rico had urged that its action be transferred into this MDL so that "Judge Tigar will be able to streamline discovery and motion practice in this action; the Non-Repealer States' action; and the Omitted Repealer States' action." MDL No. 1917, ECF No. 128-1, at 4. Both the NRS and ORS

actions are on appeal before the Ninth Circuit for the foreseeable future.  Case Nos. 20-15697 and 20-15704 (9th Cir.).

## ARGUMENT

## I.   Puerto Rico Has Failed To Establish Why Service By Court Order Is Appropriate Given The Facts And Circumstances Of This Case

Through its Motion, Plaintiff is effectively asking the Court to do what Plaintiff itself has been unwilling to do for over a year and a half—serve the Foreign Defendants.  Plaintiff has provided no valid explanation for its lack of diligence and, while it is true that the Court has the power to authorize service under Rule 4(f)(3) under certain circumstances not present here, Plaintiff invites the Court to misinterpret the case law underpinning such service.

### A.   Courts Routinely Deny Rule 4(f)(3) Motions Where, As Here, Plaintiff Fails To Show That It Has Made Good Faith Efforts To Effect Service Through Other Means.

While it is true that there is no hierarchy of service options under Rule 4(f), Mot. at 6, Plaintiff omits the critical portion of the analysis from what it cites as the "seminal case" on 4(f)(3) service—**that a plaintiff "need[s] to demonstrate that *the facts and circumstances of the present case necessitate[] the [] court's intervention*."** *Rio Props*, 284 F.3d at 1016 (emphasis added).  This is the linchpin of this Circuit's analysis, without which service under Rule 4(f)(3) could easily swallow all other methods of service and encourage plaintiffs to routinely burden courts with motions for alternative means of service as a plaintiff's first choice.  Applying this "facts and circumstances" analysis, courts routinely deny motions for Rule 4(f)(3) service where, like here, the plaintiff has proffered insufficient evidence of at least some attempts to serve each defendant through alternative methods.  *See Keck v. Alibaba.com, Inc.*, 330 F.R.D. 255, 259-60 (N.D. Cal. 2018) ("*Alibaba II*") (finding plaintiff had not demonstrated that the facts and circumstances necessitated 4(f)(3) service, despite having granted 4(f)(3) service as to other differently situated defendants in prior decision); *Tevra Brands v. Bayer Healthcare LLC,* No. 19-cv-04312-BLF, 2020 WL 3432700, at *5 (N.D. Cal. June 23, 2020) (denying 4(f)(3) service where plaintiff had not established that service under the Hague Convention was suffering from delays); *Fujitsu Ltd. v. Belkin Int'l, Inc.,* 782 F. Supp. 2d 868, 880 (N.D. Cal. 2011) (denying 4(f)(3)

service where plaintiff had not shown "the circumstances at issue" justified intervention by the court despite ineffective personal service on two Taiwanese corporate defendants); *Cal. Bd. Sports, Inc. v. G.H. Dijkmans Beheer B.V.*, No. 09cv1855-L(RBB), 2009 WL 3448456, at *2 (S.D. Cal. Oct. 21, 2009) (holding "the facts and circumstances of this case do not necessitate [] intervention" where plaintiff attempted service by international mail).  The law is clear: a plaintiff must engage in good faith efforts to serve each remaining defendant to establish the facts and circumstances necessary to justify Rule 4(f)(3) service.

For example, in *Tevra*, decided just last month in this District, the plaintiff made three separate-but-ultimately-flawed attempts at serving two defendant entities based in Germany under the Hague Convention.  *Tevra*, 2020 WL 3432700, at *1.  Following these unsuccessful attempts, plaintiff attempted to serve the German defendants through the U.S. counsel of their co-defendant, a U.S. subsidiary of the German defendants, but the attorneys refused to accept process.  *Id.* at *2.  With their Hague Convention service undelivered and citing delays due to COVID-19, plaintiff moved for service under Rule 4(f)(3).  *Id.*  Even under these circumstances, where the plaintiff had expended at least some effort at service, the Court denied plaintiff's motion, holding that the "circumstances at bar do not necessitate intervention."  *Id.*  The Court found that the delays in service under the Hague Convention were due to plaintiff's own lack of diligence.  *Id.* at *4.  With trial over a year away, the court determined there was, as is the case here, "more than enough time for Tevra to serve the German defendants and litigate its case."  *Id.* at *5.

The decisions in *Alibaba I* and *Alibaba II* are also instructive.  Both *Alibaba* cases involved motions by plaintiff Keck, a professional artist, for Rule 4(f)(3) service on Chinese online merchants selling Keck's art to U.S. buyers without authorization.  *Keck*, 330 F.R.D. at 256.  In *Alibaba I,* the Court granted Keck's motion to serve the defendants by email under Rule 4(f)(3) but only after Keck demonstrated to the court that: (i) Keck had already successfully served a number of foreign defendants; and (ii) despite having hired private investigators in China and Hong Kong to identify addresses for service on the only remaining defendants, Keck was unable to locate physical addresses at which she could complete service.  *Keck v. Alibaba.com, Inc.*, No. 17-cv-05672-BLF, 2017 WL 10820533, at *1 (N.D. Cal. Dec. 20, 2017) ("*Alibaba I*").  When Keck

moved for email service against yet another group of defendants the next year, the court in *Alibaba II* reached a different result. Although Keck argued that the defendants at issue in *Alibaba II* were "in a similar situation as those [defendants in *Alibaba I*]," the Court held that Keck had failed to verify that physical locations for the new defendants were unascertainable. *Keck*, 330 F.R.D. at 258. The Court denied Keck's second motion, noting that "the circumstances are different here from when Keck sought to serve the [defendants in *Alibaba I*.]" *Id*. Unlike in Keck's initial 4(f)(3) motion where she showed that diligent efforts demonstrated that email service was the best method to serve the defendants at issue, "Keck has not shown that such considerations are present here." *Id*.[6]

Plaintiff's own authorities show that it has not and cannot demonstrate that the facts and circumstances of this case warrant service through U.S. counsel under Rule 4(f)(3). In *Rio*, which Plaintiff relies upon heavily, the court granted service by email only after the plaintiff demonstrated that it was "[u]able to serve [defendant] by conventional means." *Rio Props.*, 284 F.3d at 1013. There, plaintiff attempted to serve defendant, a Costa Rican entity, at a Florida address that the defendant had claimed as its location in legal documents it filed registering the allegedly infringing domain names at issue in that case. *Id*. "As it turned out, however, that address housed only [defendant's] international courier, IEC, which was not authorized to accept service on [defendant's] behalf." *Id*. Plaintiff also retained a private investigator to locate the defendant in Costa Rica but was unable to locate the defendant. *Id*. Recognizing these efforts, the Ninth Circuit held that, because "RIO presented the district court with its inability to serve an elusive international defendant, striving to evade service of process, the district court properly exercised its discretionary powers to craft an alternative means of service." *Rio Props.,* 284 F.3d at 1015.

---

[6] *See also Assef v. Doe*, No. 15-cv-01960-MEJ, 2016 WL 1191683, at *3 (N.D. Cal. Mar. 28, 2016) (granting 4(f)(3) service where plaintiff's "only means of contacting Defendants" is by email); *Serenium, Inc. v. Zhou*, No. 5:20-cv-02132-BLF, slip op. at 6 (N.D. Cal. May 29, 2020) (ordering service by email after court concluded "it appears that Defendants may be deliberately evading service of process").

Other cases cited by Plaintiff demonstrate that courts grant Rule 4(f)(3) service only after plaintiff demonstrates diligence including attempted service by other means. *See Craigslist, Inc. v. Meyer*, No. C 09-4739 SI, 2010 WL 2975938, at *1-2 (N.D. Cal. July 26, 2010) (ordering service by email on Thai defendant after plaintiff made more than *ten* attempts to serve); *Cal. Beach Co., LLC v. Exqline, Inc.,* No. 3:20-cv-01994-TSH, slip op. at 6-7 (N.D. Cal. July 7, 2020) (ordering service by email after plaintiff made multiple attempts to serve Chinese defendant via personal service and email); *Facebook, Inc. v. Banana Ads., LLC*, No. C–11–3619 YGR, 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012) (allowing service by email after plaintiff "demonstrated that it has made repeated efforts to serve Defendants at physical addresses that proved unsuitable for service"); *S.E.C. v. Nagaicevs*, No. 12-cv-00413-JST, 2013 WL 3730578, at *2 (N.D. Cal. July 12, 2013) (Tigar, J.) (ordering service by email and international mail after the SEC made a showing of attempted service by Hague Convention).

Plaintiff here, by sharp contrast, has made no effort to serve the Foreign Defendants. Indeed, Plaintiff concedes that, "[w]hen the case was removed to the United States District Court for the District of Puerto Rico and Plaintiff then sought to enter the MDL, Plaintiff held off from requesting Letters Rogatory for the foreign Defendants for which the letters were necessary and stopped its activities with its process server until the forum became final." *See* Becker Decl., ¶ 8. It provides no justification for these stunning concessions. Plaintiff also conceded in its Motion that somehow, when the case was transferred to the MDL, "circumstances . . . changed," causing Plaintiff to make the strategic decision to stop service efforts. Mot. at 3. What Plaintiff seems to be arguing is that, with its claim now in federal court, it can simply do nothing and bank on the fact that the Court will grant alternative service under Rule 4(f)(3). The law of this Circuit demands more of Plaintiff and thus the Court should deny Plaintiff's motion.

Plaintiff's attempt to invoke prior decisions in this MDL regarding 4(f)(3) service on targeted sets of foreign defendants fares no better. *See* Mot. at 1-2. Contrary to Plaintiff's position, in those instances, Judge Conti analyzed the particular facts and circumstances of the specific defendant(s) before him. Those facts and circumstances are markedly different than those here. For instance, in the 2008 IPP Order, the IPPs were only seeking to serve Toshiba Corp. and

KPNV under Rule 4(f)(3). *See In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. 4:07-cv-05944-JST, 2008 WL 4104341, at *1 (N.D. Cal. Sept. 3, 2008). Similarly, in their 2014 motion against Beijing-Matsushita Color CRT Company ("BMCC"), the DAPs were seeking to serve a lone foreign defendant with U.S. counsel already representing its interests. *See In re Cathode Ray Tube (CRT) Antitrust Litigation*, 27 F.Supp.3d 1002 at *1 (N.D. Cal. 2014) (analyzing the fact and circumstances of BMCC with respect to DAP actions brought by Best Buy, Costco, Target Corp., and Tech Data in 2014). By contrast, Plaintiff here is seeking to serve 30 unserved Foreign Defendants, including numerous entities that: (i) never appeared in any MDL case; (ii) are not affiliates to any party that has appeared in this litigation; (iii) were dismissed from this MDL long ago; and/or (iv) are not represented by U.S. counsel. *See infra* § I.B. Moreover, in the IPP matter that Plaintiff repeatedly cites (Mot. at ii, 2, 12), aside from KPNV and Toshiba Corp., all other foreign defendants waived service. Here, no Foreign Defendant has waived service. That distinction is important because, in the IPP matter, the case was poised to proceed against some defendants and not others, which could have significant case management implications, especially, as here, at motion to dismiss stage. And, unlike here, the IPPs did not seek to justify court intervention by citing its own self-inflicted delay.[7] Finally, Plaintiff makes no argument as to how the facts specific to IPPs efforts to serve certain Philips Foreign Defendants excuse Plaintiff's lack of service here. *See In re Cathode Ray Tube (CRT) Antitrust Litigation*, No. 4:07-cv-5944-JST, 2014 WL 581525, at *1-2 (N.D. Cal. June 9, 2014). Moreover, that decision considered waiver arguments that Plaintiff has not and cannot assert here.

---

[7] Plaintiff represented during the June 24, 2020 CMC that this Court had the authority to grant the relief requested in its Motion based on a prior ruling of this Court, citing *Carrico v. Samsung Electronics Co., Ltd.*, No. 15-cv-02087-DMR, 2016 WL 2654392 (N.D. Cal. May 10, 2016). *See* H'rg Tr. dated June 24, 2020 at 7:25-8:6, ECF No. 5795. As is evident from the case, the matter was in fact decided by Magistrate Judge Ryu (not Your Honor) and, although the Court granted service through defendant's attorney under Rule 4(f)(3), it was only after concluding that plaintiffs attempted service through Hague Convention procedures as well as through the defendant's employer, which refused to accept service. This case reinforces Defendants' argument that Rule 4(f)(3) service is appropriate only *after* a plaintiff has made some effort at serving the defendants.

### B. It Is Demonstrably Incorrect That All Unserved Foreign Defendants Already Appeared In The MDL Or Are "Affiliates" Of Already Appearing Defendants

Even if Plaintiff had been diligent in attempting service on each of the Foreign Defendants and thus qualified for service under Rule 4(f)(3), it is a legal impossibility for Plaintiff to properly serve all Foreign Defendants, as it suggests, through U.S.-based defense counsel.

The very premise of Plaintiff's Motion—that *all* unserved Foreign Defendants have their own counsel or are "affiliated" with a Defendant that has already been served—is riddled with legal and factual error. Mot. at 9 ("Service through U.S.-based counsel would apprise the Foreign Defendants here as they already know about this case because of this long-pending MDL, they have already secured U.S. counsel (or are affiliated with a Defendant that has), and are affiliated with a Defendant that has already been served."); *see also id.* at 10 (relief appropriate because "the Foreign Defendants know about this case from a variety of sources…[and] [m]ost have their own counsel in this case, and those that do not are affiliated with other Defendants who do."). The numerous examples below amply demonstrate that Plaintiff cannot properly effect wholesale service on U.S.-based counsel:

- **Toshiba Display Devices (Thailand) Co., Ltd. (TDDT) and P.T. Tosummit Electronic Devices Indonesia (TEDI).** Despite characterizing TDDT and TEDI as "Toshiba entities" that the Court can permit Plaintiff to serve via U.S. counsel, both entities are long defunct and neither has been a "Toshiba entity" since, at latest, 2003. Neither TDDT nor TEDI have ever appeared in the MDL.[8] Plaintiff concedes that no counsel has ever represented TDDT or TEDI who could accept service here. Mot. at 4 ("two Toshiba entities are unrepresented"). If Plaintiff is nonetheless arguing that White & Case, counsel for certain other Toshiba entities, could somehow accept service on behalf of TDDT or TEDI, it is incorrect as a matter of law.

- **Matsushita Electronic Corporation (Malaysia) SDN Bhd. (MEC).** MEC has never appeared in any of the MDL proceedings, and no longer exists. By Puerto Rico's own allegations in the Complaint, this Malaysian entity was legally renamed and

---

[8] IPPs and DPPs voluntarily dismissed TDDT as a Defendant in 2009. *See* IPPs' Notice of Dismissal, May 15, 2009, ECF No. 459; DPPs' Notice of Dismissal, May 18, 2009, ECF No. 462.

subsequently closed in 2006. Compl. ¶ 171. Plaintiff represents that Dewey & Leboeuf LLP appeared for Matsushita Malaysia on July 28, 2008. *See* Becker Decl., Ex. 5. This is false. Dewey & Leboeuf filed an appearance on that date, ECF No. 342, but it was for "Matsushita Electric Industrial Co., Ltd.," a separate and distinct Japanese entity that was later renamed and is now called Panasonic Corporation. *See* ECF No. 393 (notice of change of party name). There is no U.S.-based counsel in the MDL that could accept service on behalf of MEC.

- **Samsung Electronics Co., Ltd. (SEC).** Plaintiff voluntarily dismissed SEC in October 2019 (along with U.S.-based defendant SEAI). ECF No. 52 (3:19-cv-1246-ADC). As a dismissed entity, it is unclear why Plaintiff would include this Foreign Defendant in its Rule 4(f)(3) request for alternative service.

- **LP Displays International, Ltd.** Cleary Gottlieb Steen & Hamilton LLP withdrew as counsel for LP Displays International, Ltd. in 2009. ECF No. 422. There is no U.S. counsel who could accept service on behalf of this entity.

- **Samtel Color, Ltd.** McDermott Will & Emery LLP withdrew as counsel for Samtel Color, Ltd. in 2010. ECF No. 664. In the motion for withdrawal, McDermott stated that Samtel had never been properly served and did not waive service of process objections. ECF No. 658 at ¶ 4. Again, it would be impossible to serve this Defendant through any U.S. counsel.

- **Thai CRT Co., Ltd.** Plaintiff acknowledges that Thai CRT Co., Ltd. has never appeared in the MDL and is unrepresented. Mot. at 3, 11. Despite Plaintiff's inclusion of Thai CRT in its list of Foreign Defendants, service on this entity through U.S.-based counsel is a legal impossibility.

- **LG Electronics, Inc. (LGE)** and **LG Electronics Taiwan Taipei Co., Ltd. (LGETT).** All LG entities were dismissed with prejudice from MDL No. 1917 over 6 years ago on April 18, 2014, ECF No. 2523. Although Plaintiff's Complaint names LGE, LGETT, and LG Electronics USA, Inc. (LGEUS) as defendants, LGEUS is the only LG entity that Plaintiff has bothered to serve.

The foregoing underscores just some of the flaws in Plaintiff's request for leave to serve 30 distinctly situated Foreign Defendants and Plaintiff's failure to "demonstrate that the facts and circumstances of the present case necessitate[] the [] court's intervention." *Rio Props.*, 284 F.3d at 1016.  Without articulating the individualized, defendant-by-defendant analysis demanded by the law, Plaintiff simply cannot support blanket service under Rule 4(f)(3).[9]

### C.   There Is No Urgent Need For Service And, Even If There Were Any Urgency, It Is The Predictable Result Of Plaintiff's Chronic Inaction.

After waiting 11 years after this MDL began to file a complaint, and then largely ignoring its need to serve Defendants for the first eighteen months of its case, Plaintiff now tells the Court that "there is no reason to delay the case." Mot. at 4, 10.  There is no urgency to complete service here.  Plaintiff does not argue as much.  Nor could it, given that there is no trial date, no case schedule, and thus no approaching deadlines.

Even if there were some sense of urgency, it would be the product of Plaintiff's own inaction and should not weigh in favor of granting Plaintiff's motion.  Courts hold plaintiffs accountable when delays in service are attributable to their own conduct.  *Tevra*, 2020 WL 3432700, at *4-5.  Moreover, "a plaintiff's request to use Rule 4(f)(3) because 'it will be much faster . . . by itself is not sufficient justification to authorize service by alternative method.'" *Keck*, 330 F.R.D. at 259 (quoting *Jimena v. UBS AG Bank*, No. CV-F-07-367, 2010 WL 2465333, at *10 (E.D. Cal. June 10, 2010)); *Fujitsu*, 782 F. Supp. at 779-80 (denying 4(f)(3) service even where service of letters rogatory would cause "significant[] delay" as to certain foreign defendants and prohibit coordinated discovery).

---

[9] Exhibit 5 to Plaintiff's Motion is riddled with factual errors and thus cannot constitute the individualized, defendant-specific factual analysis required here. *See* Becker Declaration, Ex. 5. These factual errors include: (a) not including at least one Defendant named in the Complaint (Irico Display Devices Co., Ltd., ECF No. 1-3 (3:19-cv-1246-ADC) at 28); (b) including Defendants who have been dismissed from the Complaint; (c) adding Defendants not named in the Complaint (*see* ECF No. 1-3 (3:19-cv-1246-ADC) at 13 ("LG PHILIPS DISPLAYS LTD" is not a named Defendant); (d) incorrectly listing LP Displays International, Ltd. as a "Philips Entity" on the Exhibit; (e) listing law firms that no longer exist (*e.g.*, Howrey LLP and Dewey & Leboeuf LLP); and, (f) listing counsel that no longer represent the corresponding Defendant entity (e.g., Gibson Dunn for the Chunghwa entities; Cleary Gottlieb for Samtel).

Plaintiff does not and cannot argue that it is suffering any ongoing harm as a result of its failure to perfect service.  The absence of any prejudice to Plaintiff weighs strongly against granting Plaintiff's motion.  *See Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11–CV–02460–LHK, 2011 WL 2607158, at *13, *23 (N.D. Cal. July 1, 2011) (granting 4(f)(3) service where "Plaintiff's claims of urgency have merit" and also granting a TRO against defendants to prevent ongoing harm to plaintiff); *CJ E&M Am., Inc. v. IQuiyi, Inc.*, No. 18-5771-PA-JEMx, 2018 WL 6380751, at *3 (C.D. Cal. Aug. 13, 2018) (finding 4(f)(3) service appropriate where defendant could continue to infringe on plaintiff's intellectual property during pendency of service under the Hague Convention).

The evidence of Plaintiff's tardiness at every turn weighs heavily against Plaintiff's argument of any urgency or any suggestion that Plaintiff could be prejudiced by being required to perfect service through traditional means.  Plaintiff waited over a decade to file its Complaint. *Compare*, ECF No. 1 (filed Nov. 26, 2007) with Plaintiff's Complaint, ECF No. 1-3 (3:19-cv-1246-ADC) (filed on Dec. 16, 2018).  Plaintiff's Complaint also came over 5 years after it received the LG Defendants' notice of settlement and dismissal with prejudice of the claims of the citizens of Puerto Rico pursuant to the Class Action Fairness Act.  ECF No. 1944, at 2-3 (letter notice sent to Puerto Rico's Secretary of Justice on Sept. 18, 2013).  The alleged conduct ended, at latest, in 2007 and thus Plaintiff cannot argue that any alleged conduct continues to inflict injury on Plaintiff today.  As detailed above and by Plaintiff's own admission, Plaintiff took no action related to service for over a year.  And even after this case was transferred to this Court in February 2020, Plaintiff made the calculated decision to abandon all efforts at service.  Finally, Plaintiff proffers no serious argument that it could somehow be harmed by having to follow the foreign service procedures under Rules 4(f)(1) or (2).  Any unserved Foreign Defendants should not be prejudiced because Plaintiff effectively sat on its hands at every stage.

## II.   Plaintiff Has Not Even Served A Number of Domestic Defendants, Provides No Proposal How It Will Do So, And Cannot Do So Under Rule 4(f)(3)

Plaintiff mentions in passing that it has not completed service on several domestic Defendants but does not discuss how it intends to complete service on those entities.  Mot. at 4,

n.12 (conceding that it attempted service on a "Toshiba entity" at the wrong address).  Plaintiff cannot complete service on domestic Defendants under Rule 4(f)(3).  *See* Fed. R. Civ. P. 4 (Rule 4(f)(3) reserved for "serv[ice] at a place not within any judicial district of the United States.").  As such, it remains unclear how (or whether) Plaintiff intends to complete service on these remaining U.S. entities.  This is significant given the Court's intention to require completion of service on all remaining Defendants such that Defendants can file a single motion under Rule 12 on all common issues.  The Court's approach to service is entirely consistent with the parties' stipulation providing that Defendants need not respond to the Complaint until 60 days after Plaintiff completes service on the last Defendant.  Plaintiff's failure to address service issues with respect to *all* unserved Defendants further underscores Plaintiff's haphazard litigation approach.  It also highlights that, even if Plaintiff's unsupported Rule 4(f)(3) motion is granted, there would still be more complications and delays arising from Plaintiff's inaction.

## III.   The Court Should Dismiss All Unserved Defendants Pursuant To Rule 4(m) Of The Federal Rules

### A.   Dismissal is Appropriate When A Plaintiff Fails To Diligently Pursue Service

Rule 4(m) of the Federal Rules of Civil Procedure provides that, for service within the United States, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—***must*** dismiss the action without prejudice against that defendant or order that service be made within a specified time." (emphasis added). If a case is removed to federal court—as this case was in March 2019—Rule 4(m)'s time limit begins upon removal for any Defendants not yet served.  *See Whidbee v. Pierce Cty.*, 857 F.3d 1019, 1023 (9th Cir. 2017).

As noted above, Plaintiff concedes that it has not served at least 5 of the 11 U.S.-based Defendants named in this action, more than 15 months after certain Defendants removed the action to the District of Puerto Rico.  *See* Mot. at 1; ECF No. 1 (3:19-cv-1246-ADC).

At the June 24, 2020, CMC, the Court put Plaintiff on notice that Plaintiff was significantly past the time limits contained in Rule 4(m), and afforded Plaintiff an opportunity to address any good cause for its delay in its Motion.  Hr'g Tr. dated June 24, 2020 at 8:16-9:5, ECF No. 5795

("Well, we are way past Rule 4(m) . . . Rule 4(m) asks the Court to find or not find good cause after a certain amount of time has elapsed and service has not been effected."). Even after having been given notice and an opportunity to respond, Plaintiff's brief never explains, let alone justifies, its failure to comply with Rule 4(m)'s clear deadline. At a minimum, therefore, the Court should dismiss the five unserved U.S.-based Defendants.[10]

Similarly, the Court should dismiss the unserved Foreign Defendants. While Rule 4(m)'s strict 90-day deadline does not apply to service in foreign countries, it also does not permit a plaintiff to take no meaningful action for well over a year, as here, without consequence. Indeed, several courts within the Ninth Circuit have held that, despite Rule 4(m)'s foreign service exception, "a plaintiff's time to serve a defendant residing in a foreign country is not unlimited and a court may dismiss a defendant if plaintiff does not pursue service in *a 'diligent fashion.'*" *Ho v. Pinsukanjana*, No. 17-CV-06520-PJH, 2019 WL 2415456, at *4 (N.D. Cal. June 7, 2019) (emphasis added) (dismissing foreign counter-defendant under Rule 4(m) because counter-plaintiffs failed to effect service for 15 months, and "failed to provide a coherent explanation [for the delay], much less show that service had been pursued diligently"); *accord Int'l Metaphysical Ministry, Inc. v. Schaefer*, No. C 18-4524 SBA, 2018 WL 10560778, at *2 (N.D. Cal. Nov. 21, 2018) ("[T]he lack of an explicit deadline under Rule 4(f) to complete service does not mean that a plaintiff has an unlimited amount of time to serve a foreign defendant . . . . As a matter of its inherent authority to manage cases on its docket, a district court may set 'a reasonable time limit for service in a foreign country'" (citation omitted)); *Gines Dominguez v. Osorio*, No. CV 16-689 PSG (GJSX), 2018 WL 7458522, at *5 (C.D. Cal. Oct. 18, 2018) (dismissing defendants located in Mexico under Rule 4(m) where plaintiffs only attempted to serve them by mail—which failed to comply with the Hague Convention—during the "long time [that] has passed since the filing of the complaint."). Other courts throughout the country are in accord. *See, e.g.*, *Feliz v. MacNeill*, 493 F. App'x 128, 131 (1st Cir. 2012) (affirming dismissal under Rule 4(m), stating that "[t]he federal

---

[10] Rule 4(m) allows for dismissal by the Court on its own motion, even if the unserved Defendants have not themselves moved for such relief.

1  rules give no specific time limit on service outside of the United States, . . . but courts have leave

2  to dismiss for failure to serve abroad when a plaintiff is dilatory").[11]

### B.  Plaintiff Cannot Show Good Cause Justifying Additional Time For Service

Plaintiff cannot justify an extension of time to serve the remaining unserved Defendants under Rule 4(m).  Rule 4(m) requires the Court to extend the time for service "for an appropriate period" if the plaintiff makes a showing of "good cause" for why service was not completed within the required time. Fed. R. Civ. P. 4.  But "if a plaintiff fails to show good cause for why service was not made, a court should dismiss the defendant without prejudice."  *Bronstein v. U.S. Customs & Border Prot.*, No. 15-CV-02399-JST, 2016 WL 861102, at *7 (N.D. Cal. Mar. 7, 2016) (Tigar, J.); *accord Townsel v. Contra Costa Cnty., Cal.*, 820 F.2d 319, 320 (9th Cir. 1987) (dismissal not abuse of discretion where plaintiff did not show good cause).[12]

"Good cause" is a fact-specific inquiry that considers a variety of factors, including whether the Plaintiff would be "severely prejudiced if his complaint were dismissed," and whether defendants took any action to "frustrate service."  *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001); *see also* 4B Wright & Miller, Fed. Prac. & Proc. Civ. § 1137 (4th ed.) (enumerating factors in the "good cause" inquiry, including whether "the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances," and whether "the plaintiff is

---

[11] *See also, e.g.*, *Plantation Gen. Hosp., L.P. v. Cayman Islands*, No. 09-CV-60884, 2010 WL 731853, at *1 (S.D. Fla. Feb. 26, 2010) (dismissing case in which plaintiff only attempted non-Hague Convention-compliant service by mail to a foreign country during the approximately eight months the case had been pending, since "a plaintiff does not have an unlimited amount of time to serve a foreign country defendant" and "is required to take efforts to attempt service within a reasonable amount of time."); *U.S. ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505, 522 (E.D. Pa. 2010) (dismissing case in which plaintiff failed in his initial attempt to comply with the Hague Convention and did not correct the error thereafter).

[12] While a court may exercise its discretion to extend the deadline for service in certain circumstances even in the absence of good cause, its discretion is not "limitless."  *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007) (reversing district court's discretionary extension of time for service). Such discretionary extensions may be justified if the party seeking an extension shows excusable neglect, or if the balance of prejudices weighs in favor of extension. *See Lemoge v. United States*, 587 F.3d 1188, 1198 (9th Cir. 2009) (finding discretionary extension appropriate where plaintiffs' counsel had been hospitalized and so was not aware service had not been completed, and where the statute of limitations would bar re-filing).

proceeding *pro se* or *in forma pauperis*.").  Among other factors, "'good cause' encompasses a showing that reasonable and diligent efforts have been expended to effect service on a defendant." *White v. Cinemark USA, Inc.*, No. CIV.S-04-397 GEB KJM, 2004 WL 3743135, at *1 (E.D. Cal. July 2, 2004) (extension was not warranted where plaintiff's counsel failed to provide "a sufficient explanation for Plaintiff's failure to effect service").

As shown above, Plaintiff cannot show any basis for an extension. Its failure to serve the remaining Defendants is not attributable to any evasion or misleading conduct by Defendants. Rather, Plaintiff's failure to complete timely service is entirely attributable to its own lack of diligence over the past year and a half.[13]  Based upon Plaintiff's lack of diligence, and lack of any justification for its delay in even attempting to effectuate service, the unserved Defendants should be dismissed under Rule 4(m).

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion in its entirety and dismiss all unserved domestic and Foreign Defendants.

---

[13] *Compare Mayorga v. Ronaldo*, No. 2:19-CV-168, 2019 WL 1532861, at *2 (D. Nev. Apr. 8, 2019) (denying motion to permit alternative service on foreign defendant through U.S. counsel, but finding good cause for extension of service deadline where plaintiff made multiple attempts to serve defendants in Italy but were unable to find a correct address, and thereafter properly initiated service through Italy's Central Authority as required by the Hague Convention); *and Hopscotch Adoptions, Inc. v. Kachadurian*, No. 09-CV-2101, 2010 WL 5313514, at *2-3 (E.D. Cal. Dec. 20, 2010) (good cause found where plaintiff made five attempts to serve defendant at her home and then served the defendant's father personally and by mail after learning that defendant frequently received mail at her father's home, and where the statute of limitations had expired since the complaint was filed); *with Townsel*, 820 F.2d at 320 (affirming dismissal, holding that counsel's ignorance of, or inadvertent failure to note, the deadline under the precursor to Rule 4(m) did not constitute good cause for extension of time to serve U.S. defendant, even though the statute of limitations had since expired); *and White*, No. CIV.S-04-397 GEB KJM, 2004 WL 3743135, at *1 (no good cause shown where plaintiff attempted service on a U.S. defendant at two incorrect addresses and later learned the correct address, but provided no explanation as to why the correct address could not have been learned before Rule 4(m)'s deadline).

Dated: July 24, 2020

Respectfully submitted,

/s/  *John M. Taladay*
BAKER BOTTS LLP
JOHN M. TALADAY
ERIK T. KOONS
700 K Street, N.W.
Washington, D.C. 20001
202.639.7700
202.639.7890 (fax)
Email: john.taladay@bakerbotts.com
          erik.koons@bakerbotts.com

*Attorneys for Philips North America LLC*

/s/  *Jeffrey L. Kessler*
WINSTON & STRAWN LLP
JEFFREY L. KESSLER
jkessler@winston.com
EVA W. COLE
ewcole@winston.com
200 Park Avenue
New York, NY 10166
Telephone:     (212) 294-6700
Facsimile:      (212) 294-4700

KEVIN B. GOLDSTEIN
kbgoldstein@winston.com
35 W. Wacker Drive
Chicago, IL 60622
Telephone:     (312) 558-5600
Facsimile:      (312) 558-5700

WEIL, GOTSHAL & MANGES LLP
DAVID L. YOHAI
david.yohai@weil.com
ADAM C. HEMLOCK
adam.hemlock@weil.com
DAVID YOLKUT
david.yolkut@weil.com
767 Fifth Avenue
New York, NY 10153-0119
Telephone:     (212) 310-8000
Facsimile:      (212) 310-8007

*Attorneys for Defendant Panasonic Corporation of North America*

1

/s/ *Eliot A. Adelson*
MORRISON & FOERSTER LLP

2

ELIOT A. ADELSON
Email: eadelson@mofo.com

3

425 Market Street
San Francisco, CA 94105

4

Telephone: (415) 268-7000
Facsimile: (415) 268-7522

5

6

KIRKLAND & ELLIS LLP
JAMES H. MUTCHNIK (pro hac vice)

7

Email: james.mutchnik@kirkland.com
300 North LaSalle Street

8

Chicago, IL  60654
Telephone: (312) 862-2000

9

Facsimile: (312) 862-2200

10

*Attorneys for Defendant Hitachi America, Ltd.*

11

/s/  *Nathan P. Eimer*
EIMER STAHL LLP

12

NATHAN P. EIMER (pro hac vice)
neimer@eimerstahl.com

13

VANESSA G. JACOBSEN (pro hac vice)
vjacobsen@eimerstahl.com

14

224 South Michigan Avenue, Suite 1100
Chicago, IL  60604

15

Telephone: (312) 660-7600
Facsimile: (312) 692-1718

16

17

BRIAN Y. CHANG (SBN 287757)
bchang@eimerstahl.com

18

99 South Almaden Boulevard, Suite 662
San Jose, CA  95113

19

Telephone: (669) 231-8755

20

*Attorneys for Defendant LG Electronics USA, Inc.*

21

22

23

24

25

26

27

28