1  Mario N. Alioto (56433)
2  Joseph M. Patane (72202)
   Lauren C. Capurro (241151)
3  TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
   2280 Union Street
4  San Francisco, CA 94123
   Telephone: 415-563-7200
5  Facsimile: 415- 346-0679
   Email: malioto@tatp.com
6  jpatane@tatp.com
   laurenrussell@tatp.com
7

8  ***Lead Counsel for the Indirect Purchaser
   Plaintiffs for the 22 States***

9
                **UNITED STATES DISTRICT COURT**
10
                **NORTHERN DISTRICT OF CALIFORNIA**
11
                        **OAKLAND DIVISION**
12

13
   IN RE: CATHODE RAY TUBE (CRT)          Master File No. 4:07-cv-05944-JST
14 ANTITRUST LITIGATION                    Case No. 4:13-cv-03234-JST

15                                         MDL No. 1917

16 This Document Relates to:               **SUPPLEMENTAL DECLARATION OF**
                                           **LAUREN C. CAPURRO IN SUPPORT OF**
17 INDIRECT PURCHASER ACTIONS              **INDIRECT PURCHASER PLAINTIFFS'**
   FOR THE 22 STATES                       **MOTION TO STRIKE AND FOR**
18                                         **SANCTIONS**

19                                         Hearing Date: August 12, 2020
                                           Time: 2:00 p.m.
20                                         Courtroom: 6, 2nd Floor (Oakland)
                                           Judge:  Honorable Jon S. Tigar
21

22

23

24

25

26

27

28

I, Lauren C. Capurro, declare:

1.     I am an attorney duly licensed by the State of California and am admitted to practice before this Court. I am a partner with the law firm Trump, Alioto, Trump & Prescott, LLP and my firm serves as the Court-appointed Lead Counsel for the Indirect Purchaser Plaintiffs ("IPPs") for the 22 States in the above-captioned action. I submit this Supplemental Declaration in support of the Reply Re: IPPs' Motion to Strike and For Sanctions, filed herewith. The matters set forth herein are within my personal knowledge except as to those statements that are expressly made on information and belief. If called upon and sworn as a witness I could competently testify regarding the matters set forth in this declaration.

2.     Attached hereto as Exhibit 1 is a true and correct copy of the "Joinder and Reply In Support of Objection to Proposed Class Action Settlement and Motion for Attorneys' Fees" and the Declaration of Robert J. Bonsignore in support of thereof, filed by Mr. Bonsignore on the JAMS Case Anywhere e-filing system on December 15, 2015. I have not included all of the exhibits to Mr. Bonsignore's Declaration because they are very voluminous.

3.     Attached hereto as Exhibit 2 is a true and correct copy of the IPPs' Opposition to Robert Bonsignore's Motion for Permission to File Reply In Support of Objections; Request to Strike, which was filed on the JAMS Case Anywhere e-filing system on December 18, 2015.

4.     Attached hereto as Exhibit 3 is a true and correct copy of the letter dated July 16, 2020 from Robert Bonsignore to Mario N. Alioto, copying me and other IPP Counsel.

5.     I spent 1.8 hours on July 21, 2020 reviewing Mr. Bonsignore's Opposition to IPPs' Motion to Strike and For Sanctions and researching the cases cited therein. On July 22, 2020, I spent 1.2 hours conducting further research and conferring with my co-counsel Mr. Alioto and Sylvie Kern regarding the reply brief. On July 23, 2020, I spent 1.3 hours drafting an outline for the reply brief, reviewing Mr. Alioto's notes regarding the reply brief, and conferring with him by telephone regarding the reply brief. On July 24, 2020, I spent 1.9 hours drafting the reply brief. On July 27, 2020, I spent 7.7 hours drafting the reply brief and conducting further research. On July 28, 2020, I spent 4.6 hours reviewing, editing and finalizing IPPs' reply in

support of the Motion to Strike and For Sanctions and my supporting declaration. In total, I spent 18.5 hours on IPPs' reply brief and supporting documents.

6.      In total, I spent 41.7 hours on the Motion to Strike and for Sanctions. At my hourly rate of $600, my total lodestar is $25,020.

7.      Together with Ms. Kern's lodestar of $5,950 for seven hours of work, IPP Counsels' total lodestar is $30,970. IPPs seek only the originally requested $15,620. Thus, the blended hourly rate for this time is $321 ($15,620/48.7 hours = $321).

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 28th day of July, 2020 at San Francisco, California.

/s/ Lauren C. Capurro
Lauren C. Capurro

**Counsel for the Indirect Purchaser Plaintiffs for the 22 States**

SUPPL. DECLARATION OF LAUREN C. CAPURRO IN SUPPORT OF MOTION TO STRIKE AND FOR SANCTIONS; Master File No. 07-cv-05944-JST; MDL No. 1917

# EXHIBIT 1

**Robert J. Bonsignore, Esq.**
**BONSIGNORE TRIAL LAWYERS, PLLC**
**3771 Meadowcrest Drive**
**Las Vegas, NV 89121**
**Phone: 781-856-7650**
**Email: rbonsignore@classactions.us**

*Counsel for Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Case No. 3:07-cv-5944<br>MDL No. 1917 |
| | **CLASS ACTION** |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **JOINDER AND REPLY IN SUPPORT OF OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES**<br><br>Hearing: 2:00 P.M., March 15, 2016<br>Judge: Hon. Jon S. Tigar<br>Courtroom: 9, 19th Floor<br>Special Master: Martin Quinn, JAMS |

This Joinder and Reply Memorandum is submitted by class members and indirect purchasers of Cathode Ray Tube, Anthony Gianasca, Gloria Comeaux, Mina Ashkannejhad individually and/or as Administrator of the Estate of the Late R. Deryl Edwards, Jr., Jeffrey Speaect, Rosemary Ciccone and Jeff Craig (the "Excluded Plaintiffs"), through their counsel Bonsignore Trial Lawyers, PLLC, and in support of their objection to the proposed Settlement Agreement and Lead Counsel's Motion for Attorneys' Fees.

## ARGUMENT

As detailed in their prior filings (MDL Doc. Nos. 4119, 4144), the Excluded Plaintiffs object to the proposed settlement agreement (the "Settlement Agreement") as it will, *inter alia*, strip indirect purchasers in the states of Massachusetts, Missouri, and New Hampshire of any rights to recovery against the Defendants without giving them anything in exchange. The Excluded Plaintiffs further have objected to the Motion for Attorneys' Fees submitted by Lead Counsel as inappropriate. (MDL Doc. Nos. 4119, 4144). The Excluded Plaintiffs have reviewed the reply briefs filed in this action and agree and support the matters set forth therein.[1] For this reason and in the interest of avoiding overburdening the Court with repetitive filings, the Excluded Plaintiffs join in, and hereby incorporate by reference, the arguments made in those Replies. Nevertheless, several matters merit highlighting.

In its Motion for Final Approval, rather than address the substantive shortcomings in the Settlement Agreement identified by the Excluded Plaintiffs which bar its final approval, Lead Counsel for the Indirect Purchaser Plaintiffs ("IPPs") engages in a campaign to condemn the

---

[1] In particular, the Excluded Plaintiffs join in and incorporate by reference (1) Reply Brief in Support of Objections to Final Approval of Settlements filed by Cooper & Kirkham, P.C. and the Law Offices of Francis O. Scarpulla, dated December 9, 2015; (2) the Reply Brief in Support of Objections to Indirect-Purchaser Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Incentive Rewards to Class Representatives, filed by the Law Offices of Francis O. Scarpulla and Cooper & Kirkham, P.C., dated December 9, 2015; and (3) the Reply in Support of Objection to the Proposed Class Action Settlement Agreement and Motion for Attorney Fees by Objector Rockhurst University, Objector Gary Talewsky, and Objector Harry Garavanian, Filed by Theresa D. Moore, dated December 9, 2015 (collectively, the "Replies").

1   Excluded Plaintiffs individuals, to which he owed a fiduciary duty, and to malign those Plaintiffs'

2   attorneys' personal integrity.  The objections advanced are not personal. Indirect purchasers who

3   were involved in the litigation have found themselves and others similarly situated excluded. They

4   are fighting to participate in a settlement they should not have been excluded from.

5           Setting aside Lead Counsel's diversionary tactics, the fact remains that he has offered no

6   valid support for his abandonment of those victims of the Defendants' wrongful conduct, the cost

7   of which the Settlement Agreement itself values at over half a billion dollars, who have the

8   misfortune of residing in states whose claims Lead Counsel did not choose to vigorously pursue.

9           It is beyond cavil that Lead Counsel in a nationwide class action is obligated to represent

10  the interests of all class plaintiffs, including the named and unnamed plaintiffs in each and every

11  state encompassed within the class he or she has undertaken to represent.  *See Radcliffe v.*

12  *Experian Info. Sols. Inc.*, 715 F.3d 1157, 1167 (9th Cir. 2013) (citation omitted).  Lead Counsel

13  did not do so here.  All of his baseless finger pointing does not override his failure to satisfy those

14  duties.  The sacrificed plaintiffs should not be forced to forfeit their valid rights for the benefit of

15  Lead Counsel's chosen minority.  Because the Settlement Agreement does so, it is not fair and

16  does not merit final approval as detailed in the Replies.  In addition, in arguing specifically that the

17  Excluded Plaintiffs residing in Massachusetts, Missouri and New Hampshire were not wrongly

18  excluded, Lead Counsel Mario Alioto attempts to shift responsibility for his failure to file claims

19  on their behalf to, *inter alia*, the Excluded Plaintiffs' attorney, Robert Bonsignore.  His efforts are

20  futile. While there if no debate that he excluded Mr. Bonsignore from leadership after being

21  appointed lead, the fact is that he was Lead Counsel and possessed sole authority to direct the

22  course of the litigation and sole authority to enter into settlement agreements.

23          As Lead Counsel, Mr. Alioto had a duty to vigorously pursue all class members' claims,

24  including those class members residing in Massachusetts, Missouri and New Hampshire.  *See*

25  *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010) ("Class representation is inadequate if the

26  named plaintiff fails to prosecute the action vigorously on behalf of the entire class or has an

27  insurmountable conflict of interest with other class members.").  His attempt to sidestep

28  responsibility to those class members by claiming it was Mr. Bonsignore's job to file claims for

2

1   them are thus irrelevant. As previously objectively evidenced, Lead Counsel Alioto was provided

2   with the names and supporting documents of the putative Massachusetts, Missouri and New

3   Hampshire class representatives. *See* Declaration of Robert J. Bonsignore, dated December 15,

4   2015, filed herewith, attaching and addressing Attachments 12; 3A and 4 to the Supplemental

5   Objection (Doc. 4144).

6       Second, the documentary evidence submitted with the Excluded Plaintiffs' Supplemental

7   Objection flatly contradict his protestations that he did not know of any plaintiffs from those states

8   and that Mr. Bonsignore never informed him of them. *Id.* Mr. Alioto was well aware of plaintiffs

9   in those states who were vetted and willing to serve as named plaintiffs and assured Mr.

10  Bonsignore that he had the matter in hand. In fact, Mr. Gianasca personally retained Mr. Alioto

11  and his feeble attempt to deny a duty to zealously represent his client bizarre. *See,* December 15,

12  2015 Declaration Of Robert J. Bonsignore Attachment 1 – Gianasca Retention Agreement dated

13  March 20, 2008. Thus, Mr. Alioto's attempts to cast the blame for the non-filing of suits onto Mr.

14  Bonsignore are not supported by the facts. Moreover, Mr. Alioto asked Mr. Bonsignore to do him

15  a favor and put his name on the Massachusetts client's retainer.

16      Third, Lead Counsel incorrectly touts the statutes of limitations as barring suits in

17  Massachusetts, Missouri and New Hampshire and thus absolving him from his duty to pursue

18  them. *See* Motion for Final Approval at 34, 37-38. Any addition of state law claims would have

19  related back to the filing of the class complaint. *See Crown, Cork Seal Company, Inc v. Parker*,

20  462 U.S. 345, 350 (1983) ("[t]he filing of a class action tolls the statute of limitations 'as to all

21  asserted members of the class'") (citation omitted). In addition, Mr. Alioto himself relied upon a

22  fraudulent concealment tolling argument, which could have been relied upon in connection with

23  those claims.

24      Fourth, Mr. Alioto's attempts to convert these proceedings into a personal stone-throwing

25  contest are indefensible and low browed. In his Motion for Final Approval, Mr. Alioto slips in a

26  reference to a proceeding in the California courts that he alleges Mr. Bonsignore failed to reveal to

27  this Court and that allegedly establish Mr. Bonsignore was sanctioned there. This thinly veiled

28  attempt to discredit Mr. Bonsignore is incomplete and misleading. As described in his declaration

3

attached hereto, Mr. Bonsignore was the victim of malpractice in that proceeding and Mr. Alioto's below-the-belt strikes attempt to victimize Mr. Bonsignore once again and do not serve the interests of Mr. Alioto's unnamed clients, the Excluded Plaintiffs.[2]

Finally, in the event that the Court rejects the Settlement Agreement, it would be unnecessary for it to address the Motion for Attorneys' Fee at this time.  *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 779 (3d Cir. 1995).

Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement.  Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.  *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).  When evaluating a settlement class, "[c]ourts must be alert for "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947.  Although the benefits of allowing settlement classes are well-documented, "their use has not been problem-free, provoking a barrage of criticism that the device is a vehicle for collusive settlements that primarily serve the interests of defendants—by granting expansive protection from law suits—and of plaintiffs' counsel—by generating large fees gladly paid by defendants as a quid pro quo for finally disposing of many troublesome claims." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 778 (3d Cir.) (disparity in treatment of settlement classes implicated adequacy of counsel and approval rejected), *cert. denied*, 516 U.S. 824 (1995).  The Settlement Agreement is the result of these feared abuses.

Here, Lead Counsel violated his duties and obligations by entering into an agreement by which the Excluded State Plaintiffs claims have been abandoned in favor of his favored State Class Plaintiffs.  Indeed, "a settlement that offers considerably more value to one class of plaintiffs than to another may be trading the claims of the latter group away in order to enrich the former group."

---

[2] Indeed, Alioto's credibility is subject to scrutiny in view of his past fee-related behavior. See

*Id.* at 797 (setting aside settlement not meeting adequacy of representation standards).  "The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel."  *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) (citation omitted).

## CONCLUSION

The Settlement Agreement is patently unfair and Lead Counsel has not performed adequately his fiduciary duties.  Accordingly, the Motions for Final Approval and for Attorneys Fees should be denied.  Wherefore in addition to the other relief requested, demand is made that the Agreement's Economic Class be redefined, notice be re-given, Lead Counsel have his lodestar and expenses opened for scrutiny, and that his firm be denied a multiplier.


Dated:  December 15, 2015                    Robert J. Bonsignore



                                             /s/ Robert J. Bonsignore
                                             Robert J. Bonsignore (NH No. 21241)
                                             Bonsignore Trial Lawyers, PLLC
                                             3771 Meadowcrest Drive
                                             Las Vegas, NV 89121
                                             Telephone:  (781) 856-7650
                                             rbonsignore@class-actions.us

December 15, 2015 Declaration of Robert J Bonsignore - Attachments 2-6.

1

2

### <u>CERTIFICATE OF SERVICE</u>

3

    I, Robert J. Bonsignore, hereby certify that on this 15th day of December 2015, I caused the

4

foregoing to be electronically filed with the JAMS Electronic Filing ("JAMS") System, which will

5

send a notice of electronic filing to all parties registered with the JAMS system in the above-

6

7

captioned matter.  A copy will be forwarded via first class mail, postage prepaid, to those parties

8

not electronically registered.

9

10

                                     */s/ Robert J. Bonsignore*
                                     Robert J. Bonsignore

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Robert J. Bonsignore, Esq.**
**BONSIGNORE TRIAL LAWYERS, PLLC**
**3771 Meadowcrest Drive**
**Las Vegas, NV 89121**
**Phone: 781-856-7650**
**Email: rbonsignore@classactions.us**

*Counsel for Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Case No. 3:07-cv-5944 <br> MDL No. 1917 <br><br> **CLASS ACTION** <br><br> **DECLARATION OF ROBERT J. BONSIGNORE IN SUPPORT OF JOINDER AND REPLY OF OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES** <br><br> Judge: Honorable Samuel Conti <br> Courtroom One, 17th Floor |
| This Document Relates to: <br><br> All Indirect Purchaser Actions | |

I, Robert J. Bonsignore, declare as follows:

1.    I am an attorney licensed to practice before the courts of New Hampshire and Massachusetts, as well as federal courts throughout the country. I am a partner in the law firm BONSIGNORE TRIAL LAWYERS, PLLC and have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them.  I make this declaration in support of my firm's Joinder and Reply in Support of Objection to Proposed Class Action Settlement and Motion for Attorneys' Fees.

2.    My firm is counsel of record in this case, and represents named plaintiff(s) Gloria Comeaux, Jeff Speaect, Rosemary Ciccone, Anthony Gianasca, Jeff Craig, and Mina Ashkannejhad individually and/or as Administrator of the Estate of the Late R. Deryl Edwards, Jr. The following are true and accurate copies that were kept in the ordinary course of business:

3.    Attachment 1 – A Gianasca Retention Agreement dated March 20, 2008. Mr. Alioto asked at the time for me to "do him a favor" and add his name to the retention agreement, which I did without hesitation.

4.    Attachment 2 – *Fulton, Mehring & Hauser Co., Inc., et al. v. The Stanley Works, et al.,* Case No. 90-0987-C(5), Memorandum of Points and Authorities in Opposition to the Motion of Trump, Alioto & Trump for an Order Requiring Meet and Confer of Plaintiffs' Counsel and for other Relief.

5.    Attachment 3 – *In Re California Indirect-Purchaser X-Ray Film Antitrust Litigation*, Master File No. 960886, Memorandum of Points and Authorities in Opposition to Trump, Alioto, Trump & Prescott's Motion for an Accounting and Reallocation of Attorneys Fees.

6.    Attachment 4 – *Ernest M. Thayer et al, v. Wells Fargo Bank, N.A.*, Case No. A090429, Case Summary.

7.    Attachment 5 – *Eric Livingston and Stephen Grosse, et al. v. Toyota Motor Sales USA, Inc., et a.*, Case No. C-94-1377-MHP, *Nancy Wolf v. Toyota Motor Sales USA, Inc., et al.*, Case No. C-94-1359 MHP and *Shellie Hackworth v. Toyota Motor Sales USA, Inc. et al.*, Case No. C-94-1960 MHP, Order of Special Master Awarding Attorneys' Fees and Costs.

8.      Attachment 6 – Coordination Proceeding Special Title (Rule 1550 (b)), Minute Order, Master File No. 39693, JCCP No. 3261.

9.      Attachment 7 (a)-(g) – Pages 21-24, 29-30, 34-35, 37-38, 46-48, 52, 59, 60, 63, 65, and Attachments 4 of the November 3, 2015 Deposition of Massachusetts Putative Class Representative Anthony Gianasca.[1]

10.     Attachment 8 – Chain of emails between Bonsignore and Alioto dated March 1, 2012.

11.     Attachment 9 Photographs of CRT devices produced by the estate of the Late Deryl Edwards thus far by the Estate of the Late Deryl Edwards evidencing his purchases. The estate has advised me that although much has been thrown out, a dusty warehouse can be searched for more purchases. Although her deposition has not been provided to her, his widow, Mina Ashkannejhad testified at deposition that Mr. Edwards spoke of the CRT case and made related purchases.

12.     Attachment 10 (a)-(c) – Email to Lead Counsel Alioto dated November 9, 2015 and photos of a Gianasca TV.

13.     Attachment 11 – Email to Lead Counsel Alioto dated December 15, 2015.

14.     Attachment 12 – Exhibit 3A and Attachment 4 to the Supplemental Objection (Doc. 4144).

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 15th day of December 15, 2015, in Las Vegas, Nevada.

*/s/ Robert J. Bonsignore*
Robert J. Bonsignore, Esq.

---

[1] The attachments to the Gianasca deposition were incomplete. Bonsignore PLLC still has not received the deposition transcript or attachments for the Putative Missouri class Representative Mina Ashkannejhad individually and/or as Administrator of the Estate of the Late R. Deryl Edwards, Jr. This attachment will be filed separately.  As of today, neither the Plaintiff nor the counsel has received the deposition transcripts and/or exhibits.  Despite the fact that it has been requested several times and it has been over two months since the deposition was taken.

DECLARATION OF ROBERT J. BONSIGNORE IN SUPPORT OF JOINDER AND REPLY OF OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FESS
Case No. 3:07-cv-5944 SC, MDL No. 1917

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Robert J. Bonsignore, hereby certify that on this 15th day of December 2015, I caused the foregoing to be electronically filed with the JAMS Electronic Filing ("JAMS") System, which will send a notice of electronic filing to all parties registered with the JAMS system in the above-captioned matter.  A copy will be forwarded via first class mail, postage prepaid, to those parties not electronically registered.

*/s/ Robert J. Bonsignore*
Robert J. Bonsignore

DECLARATION OF ROBERT J. BONSIGNORE IN SUPPORT OF JOINDER AND REPLY OF OBJECTION TO
PROPOSED CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FESS
Case No. 3:07-cv-5944 SC, MDL No. 1917

# EXHIBIT 2

1

KIRBY McINERNEY, LLP
Robert J. Gralewski, Jr. (196410)

2

600 B Street, Suite 1900
San Diego, CA 92101

3

Tel: (619) 398-4340
bgralewski@kmllp.com

4

5

*Counsel for Kerry Lee Hall, Daniel Riebow and the
Certified Class of Indirect Purchaser Plaintiffs*

6

7

8

**UNITED STATES DISTRICT COURT**

9

**NORTHERN DISTRICT OF CALIFORNIA**

10

**SAN FRANCISCO DIVISION**

11

12

**IN RE: CATHODE TUBE (CRT)
ANTITRUST LITIGATION**

Case No. CV-07-5944-JST
MDL No. 1917

13

14

This Document Relates to:
All Indirect Purchaser Actions

**CLASS ACTION**

**INDIRECT PURCHASER
PLAINTIFFS' OPPOSITION TO
ROBERT BONSIGNORE'S MOTION
FOR PERMISSION TO FILE REPLY
IN SUPPORT OF OBJECTIONS;
REQUEST TO STRIKE**

15

16

17

18

Hearing Date:
Time:

19

Judge: Honorable Jon S. Tigar
Court: Courtroom 9, 19th Floor

20

Special Master: Martin Quinn, JAMS

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

On December 15, 2015, six days after reply briefs were due to be filed on December 9, 2015 by objectors, Robert Bonsignore ("Bonsignore") sought permission to file his Late Joinder and Reply in Support of Objection To Proposed Class Action Settlement And Motion For Attorneys' Fees (the "Late Reply") along with a 150-page Declaration in Support (the "Late Declaration") (collectively, the "Late Filings").  The **only** attempt Bonsignore makes to demonstrate "excusable neglect" to support his request for permission to file his Late Reply and Late Declaration is a claim that he was "not timely provided with copies of" the transcripts of depositions of his clients taken on October 29, 2015 and November 3, 2015.  *See* Motion For Permission To File Reply In Support Of Objections To Lead Counsel's Motion For Final Approval And Attorneys' Fees ("Motion for Permission") at 1.

Several facts undermine Bonsignore's attempted showing, including:

- The transcripts were available, had Bonsignore cared to pay for and receive them, from the court reporting agency on November 11, 2015 and November 17, 2015, respectively;

- At the very latest, Bonsignore should have known the final transcripts were available on November 20, 2015 when Indirect Purchaser Plaintiffs ("IPPs") filed their papers responding to the objections and cited the October 29, 2015 and November 3, 2015 transcripts and attached excerpts of them;[1]

- Bonsignore never requested – on the record, as required by FRCP 30(e)(1) – to be provided copies of either the October 29, 2015 or the November 3, 2015 transcripts to review and sign; and

- **The Late Reply is in no way based on anything in the October 29, 2015 or the November 3, 2015 transcripts.  Indeed, the Late Reply does not make one reference to or cite either deposition transcript.**

---

[1] After IPPs' November 20, 2015 filings, Bonsignore never asked any IPP lawyer to send him copies of the transcripts at issue.

1    Although the Special Master's analysis could and should end here, there are other reasons

2 to deny Bonsignore permission to file his Late Reply and Late Declaration.  For example, allowing

3 the Late Filings would: (a) interfere with the schedule the Special Master just modified on

4 December 14, 2015; (b) reward Bonsignore for sandbagging and not filing things he has had access

5 to for years with his opening papers as he should have; and (c) prejudice IPPs who would be

6 effectively precluded from deposing Bonsignore's clients about materials that should have been

7 produced in advance of their depositions.

8    For all of these reasons and as IPPs explain more fully below, the Special Master should

9 deny Bonsignore's Motion for Permission and should instead strike the Late Filings.

10 **II.  ARGUMENT**

11    **A.  Bonsignore Cannot Demonstrate Excusable Neglect**

12    Excusable neglect is not easily demonstrated, nor was it intended to be.  *U.S. v. Merrill*, 258

13 F.R.D. 302, 310 n.6 (E.D.N.C. 2009).  Generally, "excusable neglect" requires a demonstration of

14 good faith on the part of the party seeking an extension of time and some reasonable basis for

15 noncompliance within the time specified in the rules.  Thus, the fact that Bonsignore did not

16 request an extension before the December 9, 2015 deadline itself dooms his current request for

17 permission.  *See Sullivan v. Mitchell*, 151 F.R.D. 331 (N.D. Ill. 1993) (noting that plaintiff's failure

18 to move for Rule 6(b) extension of time was evidence of plaintiff's lack of diligence).  *See also*

19 *Tenenbaum v. Williams*, 907 F. Supp. 606 (E.D.N.Y. 1995) (fact that defense counsel was required

20 to receive authorization from two municipal officials prior to filing motion for reargument did not

21 make failure to file timely motion excusable neglect when defense counsel easily could have

22 requested additional time prior to deadline for filing motion and offered no explanation for failing

23 to do so); *Key v. Robertson*, 626 F. Supp. 2d 566, 576 (E.D. Va. 2009) ("The court … not[es] that

24 such motions [to enlarge time to respond] are "looked upon with disfavor" even when timely filed.

25 Needless to say, such disfavor can only increase when such a motion is itself not timely filed.").

26    Indeed, this is not the first time Bonsignore has filed pleadings after a deadline in this case.

27 For example, Bonsignore filed a "Supplemental Objection" on October 26, 2015, which was filed

28

1   two and a half weeks after the October 8, 2015 objection deadline.  Accordingly, his recidivism is

2   an additional reason to deny Bonsignore's current request.  *See Molina v. Potter*, 2011 WL

3   1261547 at *3 (S.D. Cal. 2011) (motion for extension of time because of excusable neglect denied

4   when plaintiff's counsel had history of failing to comply with deadlines).

5      Bonsignore also suggests, "as an aside," that the fact that one of his clients was hired as an

6   electrician for a Ben Affleck movie apparently demonstrates excusable neglect on Bonsignore's

7   part because some vaguely defined "discrepancies" "took time to work out."[2]  This argument is

8   legally insufficient as well.  *See Marshall v. Gates*, 812 F. Supp. 1050 (C.D. Cal. 1993) (attorney's

9   engagement in another trial and client's incarceration do not constitute excusable neglect for

10  untimely filing of papers in opposition to summary judgment motion), *rev'd* on other grounds.

11      **B.      Allowing Bonsignore's Late Filings Would Interfere With the Schedule the**

12          **Special Master Just Revised on December 14, 2015**

13      Four days ago and before Bonsignore's Late Filings, the Special Master entered a

14  scheduling order regarding further briefing and setting a hearing.   The Special Master was

15  "reluctant to extend the briefing period" but did permit Lead Counsel to file a 20-page brief (due in

16  five days) on certain, delineated matters.   Permitting Bonsignore's Late Filings would require the

17  Special Master to revisit this scheduling order, at the very least to consider amending it to allow

18  Lead Counsel to address matters in Bonsignore's Late Filings that are raised for the first time or are

19  now mentioned more thoroughly than in Bonsignore's original Objection.  *See e.g.* § II. C. *infra*

20  (discussing fee-related papers from the late 1990s and early 2000s now attached to the Late

21  Declaration).   And permitting the Late Filings could delay the entire schedule because Lead

22  Counsel would consider making a motion to re-open the November 3, 2015 deposition to ask

23  Bonsignore's client about a retainer agreement that is attached to the Late Declaration but was

24  never produced to IPPs.  *See* § II. D. *infra*.  Thus, because of the impact on an already tight

25  schedule - a schedule previously amended to take into account Bonsignore's wishes and a schedule

26

27  [2] Declaration of Robert J. Bonsignore  In Support of Motion For Permission To File Reply In
    Support Of Objections To Lead Counsel's Motions For Final Approval And Attorneys' fees at ¶4.

28  _____
    INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO ROBERT BONSIGNORE'S MOTION FOR PERMISSION TO FILE
    REPLY IN SUPPORT OF OBJECTIONS; REQUEST TO STRIKE
    Case No. 3:07-cv-5944,  MDL No. 1917

1  he has clearly known about – permission to file the Late Reply and Late Declaration should not be

2  granted.  *See Molina,* 2011 WL 1261547 at *2 (denying request based on excusable neglect where

3  delay would have negative impact on proceedings).

4  **C.    Bonsignore Could Have and Should Have Filed Most of What He Seeks To File**

5  **Now With His Original Objection on October 8, 2015**

6  Bonsignore's original Objection (filed on October 8, 2015) certainly took issue with Lead

7  Counsel's fee-related behavior.  *See e.g.* Bonsignore's Original Objection at 7 (asserting that the

8  fee review process in this case allowed Lead Counsel's firm to escape scrutiny).  The Late Reply

9  seeks to do the same thing.  *See e.g.* Late Reply at 4 n.2 (questioning Lead Counsel's credibility

10  with respect to fees).   But now, in further support of the same attack on Lead Counsel and in an

11  attempt to do so more thoroughly, Bonsignore attaches several fee-related documents to his Late

12  Declaration from the late 1990s and early 2000s.  Had Bonsignore wanted these documents to be

13  properly part of the record, he could have and should have filed them as part of his original

14  Objection.  Indeed, he offers no reason to justify why he could not have or did not.[3]

15  **D.    IPPs Would Be Prejudiced By The Late Filings Because They Would Be**

16  **Precluded From Conducting Relevant Discovery**

17  Bonsignore attaches a retainer agreement and photographs of CRT products to his 150-page

18  Late Declaration.  The retainer agreement (dated March 20, 2008 and presumably in Bonsignore's

19  possession since then) purports to show that Mario Alioto represents Anthony Gianasca

20  (Bonsignore's client who lives in Massachusetts), and the photos purport to establish one of

21  Bonsignore's client's (Mr. Edwards) standing.   IPPs demanded all of these materials in their

22  subpoenas, and the materials should have been produced in advance of the depositions that took

23  place in this case.[4]

24  _____

25  [3] The Late Declaration also attempts to attach several different emails from 2012.

26  [4] IPPs repeatedly asked for these materials both before, during, and after the depositions in
    question.  See e.g. October 21, 2015 email from Gralewski to Bonsignore ("I would like you to
    produce all responsive documents called for in the subpoena at least 48 hours before [the]

27  deposition."); October 26, 2015 email from Gralewski to Bonsignore (same); November 16, 2015
    email from Gralewski to Bonsignore ("At the deposition in Idaho, I understand that you agreed to

28
    _____
    4
    INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO ROBERT BONSIGNORE'S MOTION FOR PERMISSION TO FILE
    REPLY IN SUPPORT OF OBJECTIONS; REQUEST TO STRIKE
    Case No. 3:07-cv-5944,  MDL No. 1917

However, Bonsignore did not produce the photos until after the deposition of Mr. Edwards' widow (herself an objector who lacks standing), and he did not make the Gianasca retainer agreement available **until he attached it to his Late Declaration**. These tactics amount to classic sandbagging and are highly prejudicial to IPPs.  For example, IPPs were precluded from asking Mr. Gianasca at his November 3, 2015 deposition when he signed his retainer agreement, what his understanding of his retainer agreement was at the time he signed it, whether he knew Mr. Alioto, whether he had ever spoken with Mr. Alioto, or whether he considered Mr. Alioto his lawyer.[5] Similarly, with respect to the photos, IPPs are now precluded from even minimally testing if the products pictured did in fact belong to Mr. Edwards.  This serious prejudice, especially with respect to the Gianasca retainer agreement, militates against a finding of excusable neglect.  *See Hassaine v. Home Depot*, U.S.A., Inc., 2011 WL 1213094 (S.D. Cal. 2011) (excusable neglect not found when extension would delay resolution of case and where there was significant danger of prejudice to the opposing party).

provide Ms. Ashkannejhad's retainer agreement, but we haven't received it yet."); and December 9, 2015 email from Gralewski to Bonsignore ("I am writing to meet and confer regarding . . . [the production of] Mr. Gianasca's unredacted retainer agreement.").

[5] IPPs are considering filing a motion to re-open Mr. Gianasca's deposition if Bonsignore is given permission to file the Late Declaration.

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO ROBERT BONSIGNORE'S MOTION FOR PERMISSION TO FILE REPLY IN SUPPORT OF OBJECTIONS; REQUEST TO STRIKE

Case No. 3:07-cv-5944,  MDL No. 1917

## III.   CONCLUSION

For all of the above-stated reasons, the Special Master should deny Bonsignore's Motion for Permission.  Instead, the Special Master should strike the Late Filings.

Dated: December 18, 2015                     KIRBY McINERNEY LLP


By   __/s/ Robert J. Gralewski, Jr.____
         Robert J. Gralewski, Jr.

KIRBY MCINERNEY LLP
Robert J. Gralewski, Jr. (196410)
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: 619.398.4340

*Counsel for Kerry Lee Hall, Daniel Riebow and the Certified Class of Indirect Purchaser Plaintiffs*

INDIRECT PURCHASER PLAINTIFFS' OPPOSITION TO ROBERT BONSIGNORE'S MOTION FOR PERMISSION TO FILE REPLY IN SUPPORT OF OBJECTIONS; REQUEST TO STRIKE
Case No. 3:07-cv-5944,  MDL No. 1917

# EXHIBIT 3



### BONSIGNORE, PLLC.
#### TRIAL LAWYERS
RBONSIGNORE@CLASSACTIONS.US
23 FOREST STREET
MEDFORD, MASSACHUSETTS 02155
www.classactions.us

OFFICE: (781) 350-0000          CELL: (781) 856-7650          FACSIMILE (702) 852-5726

July 16, 2020

## VIA REGULAR MAIL:

By Email and Regular Mail
Mario N. Alioto, Esq.
Trump, Alioto, Trump & Prescott, LLP
2280 Union St.
San Francisco, CA 94123

Re: CRT Your Firm's Sanctions Motion

Dear Mario:

On July 7, 2020 you filed, on behalf of the Indirect Purchaser Plaintiffs ("IPP"), a "Notice of Motion and Motion to Strike and for Sanctions."  In our opinion, many of the claims that were made in that "motion" – which, as I will discuss, is actually two motions that were improperly rolled into one – were factually and/or legally unsupported and seem to have been made for purely tactical purposes.  Your motion also appears to be procedurally deficient in other respects.  Ordinarily we would be content to oppose it on that basis. We believe, however, that it would be in the best interests of all concerned for you to withdraw the motion before we are put to the considerable expense of doing so.

As a threshold matter, we are of the view that, even if your motion was not improper, it should be withdrawn.  This is so because much of the relief you claimed to be seeking in it has already been afforded by the court.  You asked, for example, that certain objections and the brief I filed on July 3, 2020 (which you inexplicably referred to as a "surreply") be struck.  In its Order Granting Final Approval the Court struck the objections [Order 10:21] and declined to consider my brief.  Order 7:28. It follows that some of the claims you made have been mooted by subsequent events.

There is an even more fundamental reason for withdrawing your client's "motion." As I will briefly explain, we believe that your Motion for Sanctions is itself sanctionable, pursuant to Rule 11 of the Federal Rules of Civil Procedure; and, unless you agree to withdraw it within the time allotted by that Rule, we intend to seek sanctions for your failure to do so.  In the same vein, while you did not identify any way in which the supplemental brief I filed could reasonably be construed to have "multiplied the

proceedings" – and, thereby, failed to establish the predicate for sanctions under 28 U.S.C. § 1927 – we are of the opinion that your refusal to withdraw your improperly filed Motion for Sanctions would, in fact, vexatiously multiply the proceedings by requiring us to file an Opposition (and, presumably, you to file a Reply) – not to mention the prospect that whichever party who did not prevail on the motion would be likely to appeal.

As for why we believe that your conduct in filing your sanctions motion itself warrants sanctions, I will not belabor this letter by drawing your attention to the myriad ways in which your Motion is deficient – or the considerable body of case law which supports our belief that it is. They are as easily available to you as they are to me and I must assume you carried out your due diligence research prior to filing  I will, however, take this opportunity to point out a few relevant facts.  First, and fundamentally, pursuant to Rule 7-8(a) of the Civil Local Rules of the District Court for the Northern District of California any "motion for sanctions, regardless of the sources of authority invoked, must…be separately filed…" As I am sure you were well aware at the time of the filing, by combining a Motion for Sanctions and Motion to Strike to from a single "Motion to Strike and For Sanctions" you violated L.R. 7-8(b), and your motion is subject to being rejected on that basis alone.

It appears, moreover, that the decision to improperly commingle a sanctions motion with another motion was not inadvertent.  You knew that while a Motion to Strike, to have its intended effect, had to be filed prior to the Final Approval Hearing, a sanctions motion need not be.  Indeed, in the ordinary situation in which a party who had decided to move to strike a document was considering lodging a motion for sanctions on the grounds that the document had been improperly filed it would be customary for that party to wait to see how the court ruled on its motion to strike before deciding whether to seek monetary sanctions against the attorneys who filed the document.  You also recognized, however, that, by conflating the contentions you made in support of the "strike" part of your motion with the litany of conclusory claims of misconduct you made in the "sanctions" part, you might be able to "poison the well" with the Court prior to the Hearing on Final Approval.  It appears, in short, that – despite knowing full well that to combine a sanctions motion with any other type of motion would violate the Northern District's Local Rules, you elected to turn a blind eye to the unambiguous express requirements of the those rules in an improper attempt to secure a strategic litigation advance.  It was, in other words, not I but you that has engaged in the subjective "bad faith" that is a condition precedent to a 28 U.S.C. § 1927 violation.

It bears mentioning, too, that while Rule 11(b)(1) of the Federal Rules of Civil Procedure allows sanctions to be sought when an attorney files "any paper" for "any improper purpose," such as to "harass, cause unnecessary delay" – and while, at several points in your sanctions motion you suggested that I filed my July 3, 2020 brief for just such an improper purpose – you chose not to file your motion for sanctions in accordance with that rule; but, instead, undertook to satisfy the "higher standard" imposed by 28 U.S.C. § 1927.  *See, e.g., China Healthways Inst., Inc. v. Hsin Ten Enter. USA, Inc.*, 2003 U.S. Dist. LEXIS 16286, at *35 (C.D. Cal. Mar. 13, 2003) ("The standard for imposing sanctions under Rule 11 is different from the standard for imposing sanctions § 1927.  Rule 11 sanctions are assessed under an objective standard…A violation of Rule 11 does not require subjective bad faith…By contrast, § 1927 sanctions are subject to a higher standard: § 1927 sanctions must be supported by a finding of subjective bad faith"). You did this, moreover, knowing that the

allegations you made in your sanctions motion – even if they had been sufficient to support a claim pursuant to Rule 11 – did not demonstrate that the filing of my supplemental brief caused any proceedings to be "multiplied," or that I had filed my supplemental brief in "bad faith."

Why would you forego a Rule 11 challenge that was consistent with the allegations you made in your motion in favor of seeking sanctions under the "higher," and therefore demonstrably harder to satisfy standard imposed by § 1927, knowing that I multiplied no proceedings and that there was no evidence of bad faith on my part? One obvious answer presents itself. You knew that, if your real goal had been to inhibit my supposed "misconduct" in purportedly taking steps to "maximize the disruption to IPP counsel" [Mn. 9:1]. or in "delaying the proceedings and wasting the time of IPP Counsel and the Court" [Mn. 9:9], the proper recourse would have been to wait until after the court's ruling on the Motion to Strike and then notice a Rule 11 motion. You also knew, however, that because of the "safe harbor" provisions embedded in that provision you would not have been able to file such a motion until after the Final Approval Hearing; and that filing at that time would not have advanced your true aim of poisoning the well. It appears, in other words, that you sought sanctions under § 1927, rather than Rule 11, not to deter my "misconduct," but because you wanted to file a sanctions motions at the time when such a filing could be expected to reap the maximum strategic advantage.

It would appear, moreover, that there were other improprieties with respect to the motion's filing. For example, as I am sure you realize, L.R. 7.4(a)(2) explicitly requires that "any brief or memorandum of points and authorities filed in support, opposition or reply to a motion," if in excess of 10 pages, must contain "a table of contents and a table of authorities." Your two motions, after having been improperly lumped into one, spanned 11 pages; yet, despite the inordinate amount of time that was allegedly spent "researching and drafting" the motion, it did not contain either of the required tables.

It should be noted that, just as there were irregularities in the brief you filed there would appear to be deficiencies in the declaration that was filed in support of it. By way of example, Northern District L.R. 7.5(b) provides that any statement in a declaration that is "made upon information or belief" must "specify the basis therefor." In paragraph 12 of her declaration Lauren Capurro contended that she spent a whopping 13.2 hours in a single day "researching and drafting" what she recognized to be not one, but two motions. In paragraph 13 she said that she was "informed and believes" that her co-counsel, Sylvie Kern, spent 2 additional hours "reviewing and editing" the same motions.

It is not entirely clear why a partner at a law firm who bills her time out at $600.00 an hour would, after having purportedly spent 23.2 hours researching and drafting two routine motions, need to have an attorney in Montana who bills at an even higher rate (and one that appears to have inexplicably gone up 20% since she moved to a state where the typical firm partner charges a third as much) spend two more hours "reviewing and editing" the same documents. For purposes of the applicable court rule, however, the important point is that while Ms. Capurro alleged "on information and belief" that Ms. Kern did this work, Ms. Capurro specified no basis for that belief. If Kern did the work Capurro said she did, Kern could have easily testified to that fact herself;

and, for reasons Capurro did not explain, time records for neither lawyer were attached to the motion.[1]

Still another curious aspect of your motion(s) is that it appears that you are seeking to sanction me for "misconduct" that was supposedly committed by others.  For example, a portion of your brief was devoted to arguing that my co-counsel, Theresa Moore, filed an "unauthorized and untimely" objection. Mn. 7:12-20.  You say that she "failed to request permission to make a supplement filing," and that she "made no attempt to show excusable neglect." Mn. 8:4. Yet, in your sanctions motion you did not seek to sanction Ms. Moore.  Rather, it appears that you are asking the court to order me to reimburse you for the time Ms. Capurro purported spent working on all aspects of the motion, including those which involved the supposed misconduct of Ms. Moore and others.

There is, finally, the fact that while no motion should ever be filed unless and until counsel has first made a reasonable factual investigation, you did not make even a cursory effort to confirm the suspicions which permeate your motion before filing it; as a result, it is replete with conclusory – and, in some instances, demonstrably false – claims about supposed matters of "fact."  For example, you alleged, as fact, without first asking me, that the "circumstances and substance of the objections" that were submitted by multiple objectors "demonstrate" that I "orchestrated them."  As I will explain in detail in the declaration which accompanies the Opposition to your Motion(s), if such an Opposition needs to be filed, this suspicious – although garbed as fact – is patently false. Jeff Speaect contacted me and asked if I would consider representing others. Thus, the accusations that you advanced and placed on file are false and unsupported and unsupportable.

For this and all of the foregoing reasons, I would respectfully request that you agree to withdraw your improperly filed motion(s), and that you advise me that you have done so by no later than close of business on Friday, July 17, 2020.  If you do so we will not seek sanctions against your firm for having filed its improperly conjoined motion.  If you have not so advised me by that time, we will have no choice but to go forward with our Opposition to those motions, and take whatever steps are necessary to preserve our rights. Finally, the Proposed Settlement has been stayed. I continue to remain open for a fair resolution and am available to discuss same 24/7/365

Very truly yours,
*/s/ Robert J Bonsignore*
Robert J. Bonsignore, Esq

R. Gralewski
L. Capurro

RJB/js
Enclosures

[1] Another point may bear mentioning.  In a brief you filed on June 12, 2020 you noted that "the Bonsignore Objectors speculate that IPP counsel will seek additional fees," but said that "IPP Counsel have not requested additional fees for work performed after they filed their original fee motion."  Response, 10:14-18.  It took less than a month for you to file your improperly conjoined motion, in which you specifically asked "that the Court order Mr. Bonsignore to pay IPP Counsel's fees for their times spent reviewing his unauthorized sur-reply and drafting and filing this motion."  Combined Motions 8:10-12.