# EXHIBIT B

Tenant's Initials: _____

1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 IN RE: CATHODE RAY TUBE (CRT)      Case No. 07-cv-05944-JST
ANTITRUST LITIGATION

8

9      **ORDER GRANTING FINAL APPROVAL**

10 This Document Relates to:

INDIRECT PURCHASER ACTIONS FOR      Re: ECF Nos. 5695, 5758
THE 22 STATES

11

12         Before the Court is Indirect Purchaser Plaintiffs' motion for final approval of amended

13 settlements pursuant to the Ninth Circuit mandate to reconsider and amend final approval order,

14 final judgment, and fee order.  ECF Nos. 5695, 5758.  The Court granted preliminary approval of

15 the amended settlements on March 11, 2020, ECF No. 5695, and held a final fairness hearing on

16 July 8, 2020, ECF No. 5782.  The Court will grant final approval, and will grant Plaintiffs' request

17 for attorney's fees, costs, and incentive awards.

18 **I.      BACKGROUND**

19      **A.      Original Settlement Agreements**

20         The factual history of this case is well known to the parties and is contained in the Court's

21 prior orders.  The case is predicated upon an alleged conspiracy to price-fix cathode ray tubes

22 ("CRTs"), a core component of tube-style screens for common devices including televisions and

23 computer monitors.  The conspiracy ran from March 1, 1995 to November 25, 2007, involved

24 many of the major companies that produced CRTs, and allegedly resulted in overcharges of

25 billions of U.S. dollars to domestic companies that purchased and sold CRTs or products

26 containing CRTs.  A civil suit was originally filed in 2007, ECF No. 1, consolidated by the Joint

27 Panel on Multidistrict Litigation ("JPML") shortly thereafter, *see* ECF No. 122, assigned as a

28

*United States District Court*
*Northern District of California*

1    Multidistrict Litigation case ("MDL") to Judge Samuel Conti, *see id.*, and ultimately transferred to

2    the undersigned in November 2015, *see* ECF No. 4162.

3            In 2015, one group of plaintiffs – the Indirect Purchaser Plaintiffs ("IPP Plaintiffs") –

4    reached class action settlements with six groups of corporate defendants: Phillips,[1] Panasonic,[2]

5    Hitachi,[3] Toshiba,[4] Samsung,[5] and Thomson/TDA.[6]  The settlements included a "Nationwide

6    Class" of "[a]ll persons and or entities who or which indirectly purchased in the United States for

7    their own use and not for resale, CRT Products manufactured and/or sold by the Defendants."  *See*

8    ECF No. 1526 at 59-60; ECF Nos. 3862-1, 3862-2, 3862-3, 3862-4, 3862-5; ECF No. 3876-1

9    (adopting the class definitions set forth in the operative complaint).  The agreements also included

10   Statewide Damages Classes of indirect purchasers of CRT products seeking money damages

11   under the laws of 21 states and the District of Columbia ("22 Indirect Purchaser State Classes").

12   *See id.*  The Court certified these classes for settlement purposes in its 2016 Final Approval Order.

13   *See* ECF No. 4712 at 7, 36 (adopting Special Master's report and recommendation, ECF No. 4351

14   at 22-29, and conditionally certifying the 22 Indirect Purchaser State Classes).

15           The proposed settlements resolved all federal and state-law claims brought by the IPP

16   Plaintiffs against the settling Defendants and obligated the Defendants to pay a total of

17

18   _____

19   [1] The Philips entities include Koninklijke Philips N.V., Philips Electronics North America
     Corporation, Philips Taiwan Limited, and Philips do Brasil, Ltda.  ECF No. 3862-1 at 2.

20
21   [2] The Panasonic entities include Panasonic Corporation, Panasonic Corporation of North America,
     and MT Picture Display Co. Ltd.  ECF No. 3862-2 at 2.

22   [3] The Hitachi entities include Hitachi, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi
     Electronics Devices (USA), Inc., and Hitachi Displays, Ltd.  ECF No. 3862-3 at 2.

23
24   [4] The Toshiba entities include Toshiba Corporation, Toshiba America, Inc., Toshiba America
     Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America
     Electronic Components, Inc.  ECF No. 3862-4 at 2.

25   [5] The Samsung entities include Samsung SDI Co. Ltd., Samsung SKI America, Inc., Samsung SDI
26   Brazil Ltd., Tianjin Samsung SDI Co. Ltd, Shenzhen Samsung SDI Co., Ltd., SKI Malaysia Sdn.
     Bhd., and SDI Mexico S.A. de C.V.  ECF No. 3862-5 at 2.

27   [6] The Thomson and TDA entities include Technicolor SA, Technicolor USA, Inc., and
28   Technologies Displays Americas LLC.  ECF No. 3876-1 at 2.

United States District Court
Northern District of California

$541,750,000.[7]  *See* ECF No. 3862-1 at 8; ECF No. 3862-2 at 8; ECF No. 3862-3 at 8; ECF No. 3862-4 at 8; ECF No. 3862-5 at 8; ECF No. 3876-1 at 9-10.  The settlements provided monetary compensation for class members in the 22 Indirect Purchaser State Classes but did not provide compensation for persons or entities in certain other states, which collectively are now denominated the Omitted Repealer State[8] subclass ("ORS Subclass").[9]  The settlement also provided no compensation to persons or entities in states whose laws do not provide for recovery to indirect purchasers ("non-repealer states"), now denominated the Non-Repealer State subclass ("NRS Subclass").[10]  *See* ECF Nos. 3862-1, 3862-2, 3862-3, 3862-4, 3862-5, 3876-1.  Even though they received no compensation, the settlements required members of the ORS and NRS Subclasses to release their claims for injunctive relief, equitable monetary relief, and damages.

The agreements proposed a distribution plan which included: (1) a "weighted pro-rata distribution to all members of the 22 Indirect Purchaser State Classes that filed valid claims," (2) a minimum payment of at least $25 per claimant, and (3) a maximum payment of "three times the estimated money damages per claimant."  ECF No. 5587 at 30; *see* ECF No. 3862 ¶¶ 43-50.  The

---

[7] Including the prior Chunghwa and LG settlements, the aggregate IPP settlement amount was $576,750,000.  ECF No. 4712 at 3.

[8] In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court held that only direct purchasers could recover damages for price-fixing under Section 4 of the Clayton Act.  *Id.* at 735.  As the Ninth Circuit has summarized, the Supreme Court "barred indirect purchasers' suits, and left the field of private antitrust enforcement to the direct purchasers."  *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323, 325 (9th Cir. 1980).  In response to the *Illinois Brick* decision, many states passed so-called "*Illinois Brick* repealer statutes," which give indirect purchasers the right to sue when firms violate analogous state antitrust laws.  *See, e.g.,* Robert H. Lande, New Options for State Indirect Purchaser Legislation: Protecting the Real Victims of Antitrust Violations, 61 Ala. L. Rev. 447, 448 (2010).  Such states are referred to a "repealer states."  A state which has not enacted such a statute is referred to as a "non-repealer state."

[9] The ORS Subclass in its current iteration consists of Indirect Purchaser Plaintiffs in the following states: Arkansas, Massachusetts, Missouri, Montana, New Hampshire, Oregon, Rhode Island, South Carolina, and Utah.  ECF No. 5518 at 1; ECF No. 5645 at 2.  The parties now use the "ORS" abbreviation to signify "other repealer states" rather than "omitted repealer states."  ECF No. 5645 at 1 n.1.

[10] The NRS Subclass consists of Indirect Purchaser Plaintiffs in the following Non-Repealer States: Alabama, Alaska, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Indiana, Kentucky, Louisiana, Maryland, New Jersey, Ohio, Oklahoma, Pennsylvania, Texas, Virginia, Washington, and Wyoming.  ECF No. 5518 at 2.

plan "assign[ed] different weights to different CRT products based on the overcharge evidence for each." ECF No. 5587 at 30; *see* ECF No. 3862 ¶¶ 44-49.

After this Court preliminarily approved the original settlements, the claims administrator carried out a notice plan which involved: (1) mail and email notices sent to 10,082,690 unique addresses, (2) publication of notice on the settlement website, (3) advertisements on Google, Facebook, and other popular websites, and (4) print and online publications throughout the United States, in both English and Spanish. *See* ECF No. 4071-1 ¶ 114; ECF No. 4371 ¶¶ 4-13. These notices directed class members to the settlement website. *See* ECF No. 4371 ¶¶ 9-13. They also advised class members of material settlement terms, the plan of distribution, and Class Counsel's intent to apply for an attorney fee award of up to one-third of the settlement fund. ECF No. 4071-1 ¶ 115.

On July 7, 2016, this Court granted final approval of the six settlement agreements ("Final Approval Order"). ECF No. 4712 at 1. On August 3, 2016, the Court issued a Fee Order approving an attorney's fees award of $158,606,250 to Class Counsel, an amount comprising 27.5% of the aggregate settlement fund. ECF No. 4740 at 2, 5-9. Two objectors appealed the settlement approval and fee award to the Ninth Circuit. ECF No. 4741.

On October 1, 2018, while the appeals were pending, the IPP Plaintiffs filed a Motion pursuant to Federal Rule of Civil Procedure 62.1 for an Indicative Ruling on Their Motion to Amend The IPP Fee Order and Amend the Plan of Distribution. ECF No. 5335. Counsel for the IPP Plaintiffs proposed to modify the earlier settlement by reducing the attorney's fees award by $6 million and using those funds to compensate plaintiffs in three states – Massachusetts, Missouri, and New Hampshire – that were omitted from the original settlement. *Id.* at 8.

The Court denied the motion on November 8, 2018. ECF No. 5362. The Court concluded that it had erred by approving the settlement in the first place, and that the IPP Plaintiffs' proposed modifications did not cure all the defects in the settlement. *Id.* The Court's primary concern was that the settlement required class members in the Omitted Repealer States to release their claims without compensation. *See* ECF No. 5362 at 1. The order also expressed "concerns about the adequacy of the counsel who negotiated that settlement or whether they may have faced a conflict

United States District Court
Northern District of California

of interest," given that they had released some clients' claims without compensation. *Id.* at 1. In response to the Court's order, the Ninth Circuit remanded "this case so that the district court [could] reconsider its approval of the settlement." *See In re Cathode Ray Tube Antitrust Litig.*, No. 16-16368 (9th Cir. Feb. 13, 2009), ECF No. 238 at 11. The Ninth Circuit did not vacate this Court's Final Approval, Final Judgement, or Fee Order. *Id.*

On remand, this Court confirmed the existing lead counsel for the IPP Plaintiffs and appointed separate counsel for the unnamed ORS and NRS Subclasses. ECF Nos. 5535, 5518. The Court then referred the matter to Magistrate Judge Corley for settlement. ECF No. 5427.

### B. Amended Settlement Agreements

After the Ninth Circuit remanded this case, counsel for IPP Plaintiffs[11] and the settling Defendants engaged in mediation sessions before Magistrate Judge Corley and agreed to amend the settlements. ECF No. 5531; ECF No. 5587-1 ¶¶ 2-3.

The amendments alter the settlements in three ways. First, they appoint new settlement class representatives for the states of Hawaii, Nevada, New Mexico, and South Dakota.[12] Second, they narrow the definition of "the Class" to include only the 22 Indirect Purchaser State Classes certified for settlement in the Court's 2016 Final Approval Order. ECF No. 5587-1 at 7, 13, 19, 25, 31, 38. The amended settlements no longer include a Nationwide Class. *See* ECF No. 5587 at 16; ECF No. 5587-1. Only members of the 22 Indirect Purchaser State Classes release their claims against Defendants. Third, the amendments reduce each Defendant's settlement contribution by approximately 5.35%, for a total reduction of $29,000,000. ECF No. 5587 at 17; *see* ECF No. 5587-1 at 7-8, 13-14, 19-20, 25-26, 31-32, 38-39. The amendments offset these

---

[11] Counsel for "IPP Plaintiffs" now only represents class members in the 22 Indirect Purchaser State Classes rather than all indirect purchasers in the Nationwide Class. *See* ECF Nos. 5535, 5518.

[12] On September 13, 2019, IPP Plaintiffs filed a stipulation amending their operative complaints to substitute Sandra Riebow for Daniel Riebow as the named plaintiff for the state of Hawaii; Gregory Painter for Gloria Comeaux as the named plaintiff for the state of Nevada; MaryAnn Stephenson for Craig Stephenson as the named plaintiff for the state of New Mexico; and Donna Ellingson-Mack for Jeffrey Speaect as the named plaintiff for South Dakota. ECF Nos. 5584-1, 5584-2. On September 16, 2019, the Court entered the Order. ECF No. 5585.

1    reductions in settlement amount by requesting that the Court reduce the attorney's fees previously

2    awarded by $29,000,000.  *See id.*  Interest earned on the original settlement funds since their 2015

3    deposit in an escrow account will remain in the fund, except that Class Counsel will still be

4    entitled to seek a share of the accrued interest proportionate to their fee and expense award.  ECF

5    No. 5587 at 17; *see* ECF No. 5587-1 at 7-8, 13-14, 19-20, 25-26, 31-32, 38-39.  All other terms of

6    the original settlement agreements and plan for distribution remain the same.  ECF No. 5587-1 at

7    8, 14, 20, 26, 33, 39.

8           **C.     Procedural History**

9           On September 16, 2019, the IPP Plaintiffs filed a motion for preliminary approval of the

10   amended settlements.[13]  ECF No. 5695.  The Court then issued an order which: (1) granted the

11   motion for preliminary approval, (2) provisionally certified the 22 Indirect Purchaser State Classes

12   for purposes of settlement, (3) authorized the IPP Plaintiffs to provide additional limited notice to

13   certain class members, and (4) set a deadline of May 29, 2020 for certain class members to object

14   ("Preliminary Approval Order").  *Id.* at 19.

15          Between August 2019 and February 2020, NRS Subclass member Eleanor Lewis and

16   several members of the ORS Subclass filed multiple motions to intervene in this MDL and file an

17   amended complaint.  ECF Nos. 5565, 5567, 5643, 5645, 5688, 5689.  The Court denied these

18   motions and directed movants to "file their claims in the appropriate forum(s) and seek transfer

19   from the JPML or, if properly filed in the Northern District of California, 'request assignment of

20   [their] actions to the Section 1407 transferee judge in accordance with applicable local rules.'"

21   ECF No. 5684 at 6 (quoting J.P.M.L. R. 7.2(a)); *see also* ECF No. 5626 at 3 (denying original

22   motions to intervene which "attempt[ed] to amend someone else's complaint"); ECF No. 5628 at 3

23   (same).

24

25

26   _____

27   [13] IPP Plaintiffs' filed a "motion pursuant to Ninth Circuit mandate to reconsider and amend final
     approval order, final judgment, and fee order," which the Court construed as a motion for
     preliminary approval given its requests that the Court "reconsider and approve the amended
28   settlements under Rule 23(e); order notice be given; and amend the Final Approval Order, the
     Final Judgment, and the Fee Order . . . after a final hearing."  ECF No. 5695 at 6.

United States District Court
Northern District of California

1    In April 2020, the ORS and NRS Subclasses appealed the Court's Preliminary Approval

2 Order and orders denying their motions to intervene to the Ninth Circuit.  ECF No. 5695.  The

3 subclasses then moved to stay "all proceedings concerning" the Preliminary Approval Order

4 pending resolution of their appeals.  ECF No. 5718, 5720.  On June 9, 2020, the Ninth Circuit

5 concluded that it lacked jurisdiction over the Preliminary Approval Order and dismissed that

6 portion of the appeal.  ECF No. 5738.  Thereafter, this Court denied the ORS and NRS

7 Subclasses' motion to stay.  ECF No. 5774.

8    On May 29, 2020, Lewis and some of the ORS purchasers ("ORS/NRS Objectors") filed

9 objections to the amended settlements.  ECF Nos. 5732, 5756.  On the same day, the Court also

10 received 15 separate but identical objections from purported members of the 22 Indirect Purchaser

11 State Classes.  ECF Nos. 5739-5752.  On June 12, 2020, the Court received a late-filed objection,

12 identical to those filed by other members of the 22 Indirect Purchaser State Classes.[14]  ECF No.

13 5755.[15]  On June 12, 2020, the IPP Plaintiffs and Samsung Defendants filed responses to these

14 objections.  ECF No. 5757, 5758.  The Court held a final fairness hearing on July 8, 2020.  ECF

15 No. 5782.

## II.    JURISDICTION

17    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

## III.    STANDING TO OBJECT

### A.    Legal Standard

20    A party seeking to invoke the Court's jurisdiction has the burden of establishing standing.

21 *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103-04 (1998);  *see In re Hydroxycut*

---

[14] All but three of the 16 objections filed by purported members of the 22 Indirect Purchaser State Classes identify Robert Bonsignore as counsel.  ECF Nos. 5739, 5740, 5742-5749, 575, 5752, 5755.  Robert Bonsignore also serves as the Court-appointed counsel for the ORS Subclass.  *See* ECF No. 5518.

[15] On July 3, 2020, five weeks after the deadline to file objections to the amended settlements, Counsel for the purported members of the 22 Indirect Purchaser State Classes filed a brief "in further support of their objections to the proposed amended settlement agreements."  ECF No. 5779.  In light of the facts that this supplemental brief was filed well after the deadline to object and these individuals already filed objections to the amended settlements, the Court declines to consider the supplemental brief.

United States District Court
Northern District of California

*Mktg. and Sales Practices Litig.*, No. 09md2087 BTM (KSC), 2013 WL 5275618, at *2 (S.D. Cal. Sept. 17, 2013) ("The party seeking to invoke the Court's jurisdiction—in this case, the Objectors—has the burden of establishing standing."). Non-class members generally "have no standing to object to the settlement of a class action." *San Francisco NAACP v. San Francisco Unified School Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) (citing *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989)); *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *9 (N.D. Cal. Aug. 28, 2013) ("[A] court need not consider the objections of nonclass members because they lack standing."); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 n.6 (N.D. Cal. 2018) (same); *see also In re Equity Funding Corp. of Am. Sec. Litig.,* 603 F.2d 1353, 1360-61 (9th Cir. 1979) (finding that non-class member "lack[ed] standing to object to, or to appeal from the [settlement's] Plan of Allocation or its approval").

A narrow "exception exists to this rule when [a] non-settling defendant can demonstrate that 'it will suffer some plain legal prejudice as a result' of the settlement." *Carillo v. Schneider Logistics Trans-Loading and Distrib., Inc.*, No. 2:11-cv-8557-CAS(DTBx), 2014 WL 688178, at *2 (C.D. Cal. Feb. 21, 2014) (quoting *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987)); *see Smith v. Arthur Andersen LLP*, 421 F.3d 989, 998 (9th Cir. 2005) (noting the "exception to the general principle barring objections by non-settling defendants to permit a non-settling defendant to object where it can demonstrate that it will sustain some formal legal prejudice as a result of the settlement" (citing *Waller*, 828 F.2d at 583)).[16] "Formal legal prejudice" sufficient to warrant the application of this exception exists where a settlement (1) "purports to strip [a non-settling defendant] of a legal claim or cause of action, an action for indemnity or contribution for example" or (2) "invalidates the contract rights of one not participating in the settlement." *Waller*, 828 F.2d at 583.

**B.    ORS/NRS Objections**

The ORS/NRS Objectors argue that the Court should not grant final approval of the

---

[16] ORS and NRS Objectors assert that the *Smith* court found that "objector-appellants had standing to object because they were 'potentially affected by the settlement.'" ECF No. 5732 at 7 (quoting *Smith*, 421 F.3d at 998). However, the Ninth Circuit opinion in *Smith* contains no such language.

amended settlements because: (1) "IPP Class Counsel has not provided adequate representation to the ORS and NRS Plaintiffs," (2) some of the 22 Indirect Purchaser State Classes "lack a representative who was properly added to the MDL," (3) "the settlements do not properly account for the value of the ORS and NRS claims," (4) "settlement notice has been constitutionally deficient," and (5) the "fee award should be reduced" or "delayed until the ORS and NRS can participate in negotiations regarding the value of their claims." ECF No. 5732 at 5-6. The IPP Plaintiffs and Samsung Defendants argue that the Court should disregard these objections because the ORS/NRS Objectors lack standing to object to the amended settlements. ECF No. 5757 at 6-14; ECF No. 5758 at 17-24. The Court agrees.

The amended settlements state that the "'Nationwide Class,' . . . and members thereof (except for members of the 22 Indirect Purchaser States Classes), are expressly excluded from 'the Class' and are not bound by the Agreement." *See* ECF No. 5587-1 at 7, 13, 19, 25, 31, 38. The ORS/NRS Subclasses are members of the "Nationwide Class" but are not members of the 22 Indirect Purchaser State Classes. ECF No. 5616 at 8; *see* ECF No. 1526 at 59-60; ECF Nos. 3862-1, 3862-2, 3862-3, 3862-4, 3862-5; ECF No. 3876-1. Therefore, the persons and entities in these subclasses are not members of the amended settlement Class and have no standing to object to the Court's final approval of these agreements. *See Kent v. Hewlett-Packard Co.*, No. 5:09-cv-05341-JF (HRL), 2011 WL 4403717, at *3 (N.D. Cal. Sept. 20, 2011) ("The [objectors] are excluded from the settlement. . . . Because they are not members of the class, [they] lack standing to object.").

The ORS/NRS Objectors argue that they may object as "non-parties" because their "rights *are* impacted" by the amended settlements. ECF No. 5732 at 7 (emphasis in original). In particular, they contend that (1) "if the settlements are approved . . ., ORS and NRS class members may lose the ability to intervene into this case as class members to assert their claims" and (2) "[o]nce the underlying litigation is dismissed following settlement approval, there may no longer be any action in which to intervene."[17] ECF No. 5732 at 8 (internal quotation mark,

---

[17] As the Court stated in its Order Denying Motion to Stay, "final approval of IPP Plaintiffs' amended settlements will not terminate the MDL." ECF No. 5774 at 6. The amended settlements

United States District Court
Northern District of California

United States District Court
Northern District of California

citation, and alteration omitted). According to ORS/NRS Objectors, this "threat of injury from the settlement, 'no matter how small,' suffices to create [] standing." *Id.* (quoting *Brandt v. Vill. Of Winnetka, Ill.*, 612 F.3d 647, 650 (7th Cir. 2010)). However, the single case that ORS/NRS Objectors cite in support of their "threat of injury" theory contains no discussion of *non-party* standing to object to a settlement. *See generally Brandt*, 612 F.3d 647. Instead, it addresses the requirements that a *plaintiff* must meet in order to establish Article III standing to bring an action in federal court. *See id.* at 649-50. In the context of non-party objections to settlements, "[m]ere allegations of injury in fact or tactical disadvantage as a result of a settlement simply do not rise to the level of plain legal prejudice." *Carillo*, 2014 WL 688178, at *2 (quoting *Argretti v. ANR Freight System, Inc.*, 982 F.2d 242, 247 (7th Cir. 1992)). Formal legal prejudice sufficient to create non-party standing exists only where a settlement purports to strip a non-settling defendant of a legal claim or cause of action or "invalidates the contract rights of one not participating in the settlement." *Waller*, 828 F.2d at 583. ORS/NRS Objectors' arguments show, "[a]t most, [that] the settlement puts [them] at something of a tactical disadvantage in the continuing litigation. Such an injury does not constitute plain legal prejudice." *Id.* at 584 (finding no standing to object where, as here, "[t]he settlement does not cut off or in anyway affect any of [the non-party's] claims; it only disposes of the claims of the classes against [the settling defendant]"). Thus, ORS/NRS have failed to establish any entitlement to raise non-party objections to the amended settlements. *In re Hydroxycut*, 2013 WL 5275618, at *2 ("The party seeking to invoke the Court's jurisdiction—in this case, the Objectors—has the burden of establishing standing."). The Court therefore strikes their objections. *See Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 WL 758094, at *10 (N.D. Cal. Feb. 20, 2015) ("The court [] finds that all three objectors lack standing and strikes their objections.").

---

resolve the actions between the 22 Indirect Purchaser State Classes and several groups corporate defendants. *Id.*; *see* ECF No. 5531; ECF No. 5587-1 ¶¶ 2-3. "The settlements do not release any of the ORS or NRS Subclasses' claims and do not resolve IPP Plaintiffs' claims against several remaining defendants within the MDL. As such, the underlying MDL will not be eliminated upon final approval of the proposed settlement between a particular subset of the classes and defendants contained therein." ECF No. 5774 at 6.

United States District Court
Northern District of California

## C.    Remaining Objections

The remaining 16 objections purport to be from members of the 22 Indirect Purchaser State Classes and present identical, generalized statements challenging the amended settlements' adequacy of representation, attorney's fees, fairness, and delay in receipt of settlement funds.  ECF Nos. 5739-5752, 5755.  For instance, the objections assert that: (1) "[t]he proposed settlement class should not be certified for lack of adequate representation" and "both Class Counsel and Class Representatives are inadequate representatives, and some should be conflicted out," (2) "[t]he proposed settlement is not fair, reasonable and adequate and was not negotiated at arm's length," and (3) "[t]he delay arising from Class Counsel's improper conduct cost me and all others similarly situated to lose more time and interest."  *Id.*  The IPP Plaintiffs argue that the Court should disregard these objections because they fail to "provide proof of class membership" and fail to comply with the requirements of Rule 23(e)(5).  ECF No. 5758 at 13-15.  The Court agrees.[18]

In its Preliminary Approval Order, the Court granted IPP Plaintiffs' request to send "limited notification [] to certain class members" to "advise recipients of their opportunities to object to the amendments, object to the requested fee award, and appear at the fairness hearing." ECF No. 5695 at 19.  In doing so, the Court approved the proposed Notice form, which permits any "member of the 22 Indirect Purchaser State Classes [who] submitted a claim in or objected to the 2016 Settlements" to "ask the Court to deny approval of the Settlements as amended by the Amendments or to the attorneys' fees request by filing objections with the Court."  ECF No. 5587-2 at 18; *see* ECF No. 5695 at 16 n.13, 19.  The Notice form requires that "objections *must* include . . . [p]roof of membership in one or more of the 22 Indirect Purchaser State Classes."  ECF No.

---

[18] The Court's order should not be read as holding that a receipt is required for proof of class membership in all cases.  The law is to the contrary.  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124-25 (9th Cir. 2017); *see also Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 236-40 (N.D. Cal. 2014) (rejecting ascertainability requirement).  However, the parties to a class action settlement are free to impose a receipt requirement as a condition of making a valid claim, separate and apart from the issue from class membership.  Here, objectors themselves acknowledge that "proof" in this case requires submission of a receipt.  *See, e.g.*, ECF No. 5741 at 2 ("Requiring that Class Members to submit a receipt for the purchase as a condition to object does not treat Class Members equitably relative to each other and is evidence of the inadequacy of the Class Representatives and Class Counsel.").

11

1    5587-2 at 18 (emphasis added).  However, the 16 objectors neither state that they "submitted a

2    claim in or objected to the 2016 Settlements" nor provide "[p]roof of membership in one or more

3    of the 22 Indirect Purchaser State Classes."  *See* ECF Nos. 5739-5752, 5755.  They have not

4    complied with the required "procedures and so have not established that they are actual class

5    members."  *Miller*, 2015 WL 758094, at *9-10.  As such "all [16] objectors have failed to

6    establish their standing to challenge the settlement."  *Id.* (finding that objectors failed to establish

7    standing to challenge a settlement where they had not complied with the requirement for objectors

8    to provide "documents or testimony sufficient to establish membership in the Settlement Class");

9    *see In re Hydroxycut*, 2013 WL 5275618, at *2 ("[B]ecause [the objector] has not established that

10   he in fact purchased a Hydroxycut Product, he has not carried his burden of proving standing as a

11   class member, and the Court strikes [his] objection."); *see also Nwabueze v. AT&T Inc.*, No. C 09-

12   01529 SI, 2013 WL 6199596, at *6-7 (N.D. Cal. Nov. 27, 2013) (overruling objection which

13   "failed to comply with the Court's procedural requirements for objecting to the Settlement").

14   "[O]n this basis alone, the Court may refuse to consider the objections at issue."  *Chavez v. PVH*

15   *Corp.*, No. 13-CV-01797-LHK, 2015 WL 9258144, at *3 (N.D. Cal. Dec. 18, 2015) (overruling

16   objections which were "procedurally improper" and "were made by individuals who [did] not

17   appear to be Class Members"); *see Miller*, 2015 WL 758094, at *10 (striking objections where

18   objectors did not state under oath what products they purchased).[19]

19        In addition, each of the 16 objections fails to comply with Rule 23.  Under Rule 23(e)(5), a

20   settlement "objection must state whether it applies only to the objector, to a specific subset of the

21   class, or to the entire class, and also state with specificity the grounds for the objection."  The

22   objections at issue, however, do not specify whether they apply "only to the objector, to a specific

---

[19] Each of the 16 objections states that "[r]equiring [] Class Members to submit a receipt for the purchase as a condition to object does not treat Class Members equitably relative to each other." ECF Nos. 5739-5752, 5755.  However, the Notice does not require Class Members to submit a receipt.  It requires objectors to provide "[p]roof of membership in one or more of the 22 Indirect Purchaser State Classes," such as a declaration under oath describing which CRT product(s) the objector purchased.  ECF No. 5587-2 at 18.  Such a requirement is consistent with those approved by other courts within the Ninth Circuit.  *See, e.g., Miller*, 2015 WL 758094, at *9-10 (striking objections which failed to provide "documents or testimony sufficient to establish membership in the Settlement Class"); *In re Hydroxycut*, 2013 WL 5275618, at *2 (striking objections where objectors did not provide evidence of their purchases, and therefore of class membership).

United States District Court
Northern District of California

subset of the class, or to the entire class." *See* ECF Nos. 5739-5752, 5755. Nor do they state the grounds for their objections "with specificity." *See id.* Instead, they offer vague assertions regarding "lack of adequate representation," "lawyers who made multiple errors," and a settlement agreement which "does not treat Class Members equitable relative to each other" and "is not fair, reasonable and adequate." *See id.* These assertions are not accompanied by any explanation or supporting facts to specify *how* members of the 22 Indirect Purchaser State Classes were inadequately represented and inequitably treated. *See id.* The objections also contain no detail as to which of the lawyers' "multiple errors" the objectors complain. *See id.* Accordingly, the Court strikes these objections "for failure to follow the objection procedures outlined in the Court–approved Class Notice" and failure to comply with Rule 23. *Kim v. Tinder, Inc.*, No. CV 18-3093-JFW(ASx), 2019 WL 2576367, at *10 (C.D. Cal. June 19, 2019) (overruling "boilerplate identical one page form objections" for failure to comply with Rule 23(e)).

## IV. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Legal Standard

"The claims, issues, or defenses of a certified class may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. To assess a settlement proposal, courts in the Ninth Circuit use a multi-factor test which balances the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

"Recent amendments to Rule 23 require the district court to consider a similar list of factors before approving a settlement." *Theodore Broomfield v. Craft Brew Alliance, Inc.*, No. 17-

13

cv-01027-BLF, 2020 WL 1972505, at *5-6 (N.D. Cal. Feb. 5, 2020). These factors include whether: (1) "the class representatives and class counsel have adequately represented the class;" (2) "the proposal was negotiated at arm's length;" (3) "the relief provided for the class is adequate;" and (4) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The "specific factors added to Rule 23(e)(2) are not intended to 'displace' any factors currently used by the courts, but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Theodore Broomfield*, 2020 WL 1972505, at *6 (quoting Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2)). "Accordingly, the Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent." *Id.*

Settlements that occur before formal class certification "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 458 (9th Cir. 2000). In reviewing such settlements, the court must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F. 3d 935, 946-47 (9th Cir. 2011).

## B. Adequacy of Notice

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F. 2d 615, 624 (9th Cir. 1982) (citation omitted). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 567 (9th Cir. 2019) (quoting *Churchill*, 361 F.3d at 575). If a fairness hearing leads to "substantial changes" in the settlement which "adversely affect[] some members of the class, additional notice, followed by an opportunity to be heard, might be necessary." *In re Anthem*, 327 F.R.D. at 330.

Class members of the 22 Indirect Purchaser States have already received "the best notice that is practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(B). After this Court

United States District Court
Northern District of California

preliminarily approved the original settlements, the claims administrator carried out a notice plan which included: (1) mail and email notices sent to 10,082,690 unique addresses, (2) publication of notice on the settlement website, (3) advertisements on Google, Facebook, and other popular websites, and (4) print and online publications throughout the United States, in both English and Spanish. *See* ECF No. 4071-1 ¶ 114; ECF No. 4371 ¶¶ 4-13. These notices directed recipients to the settlement website. *See* ECF No. 4371 ¶¶ 9-13. They also advised class members of material settlement terms, the plan of distribution, and Class Counsel's intent to apply for an attorney fee award of up to one-third of the settlement fund. ECF No. 4071-1 ¶ 115. As the Court found in its prior Final Approval Order, this plan "provided the best practicable notice to class members." ECF No. 4712 at 9.

The IPP Plaintiffs' amendments to the settlement agreements did not require additional notice. ECF No. 5695 at 18-19. As the Court noted in its Preliminary Approval Order, the amended settlements "provide the same benefits to the members of the 22 Indirect Purchaser State Classes." ECF No. 5587 at 32; *see* ECF No. 5587-1 at 7-8, 13-14, 19-20, 26-26, 31-33, 38-39. While the amendments reduce the gross settlement fund by $29,000,000, "that reduction is fully offset by a $29,000,000 reduction in Class Counsel's fee request." *Id.* Therefore, the settlement does not have a "material adverse effect on the rights of class members" and there is no reason to conclude that those class members who failed to object or opt out of the original agreements would now choose to do so. *See In re Anthem*, 327 F.R.D. at 330 (finding that, where amendment did not adversely affect class members, "there is no overriding reason to conclude that those Settlement Class Members who failed to opt out would now choose to do so"). The amendments also do not adversely affect the rights of the ORS and NRS Subclasses which were included in the original settlement. Because the amendments narrow the settlement Class, the release no longer applies to the ORS and NRS Subclasses. *See* ECF No. 5587-1 at 7, 13, 19, 25, 31, 38. These groups retain the claims that they previously possessed, if any, and they are free to pursue those claims against the Defendants.

Although not required, the Court granted the IPP Plaintiffs' request to provide additional notice to certain class members. ECF No. 5695 at 19. The settlement administrator, The Notice

United States District Court
Northern District of California

Company, Inc., carried out the limited notice procedure as outlined in the Preliminary Approval Order. ECF No. 5758-1. On March 27, 2020, the Notice Company updated the Settlement Website "to include a Detailed Notice concerning the Amendments to the Settlements." *Id.* ¶ 7. The Notice Company then sent an email notice to 92,170 class members and mailed Postcard Notices to 2,151 class members. *Id.* ¶ 5. During the initial dissemination of notices by email, 8,562 emails "bounced" and were not deliverable; consequently, a Postcard Notice was sent to the mailing address of those recipients. *Id.* During the initial dissemination of notice by mail, 711 Postcard Notices were returned as undeliverable. *Id.* The Notice Company then "conducted skip traces in an effort to obtain additional address information for recipients with undeliverable addresses, which resulted in remailing of the Postcard Notice to 378 recipients." *Id.* In sum, "direct notice was sent to 100% of the persons or entities on the Notice List but was not received by 0.7%, for an overall success rate of 99.3%." *Id.*

The notices "each (a) provided a summary of the Amendments to the Settlements and the reduced fee award, (b) stated that May 29, 2020, was the deadline for submitting objections or comments, (c) stated that the Fairness Hearing was scheduled for July 8, 2020, and (d) directed recipients to obtain the Detailed Notice and additional information at www.CRTclaims.com (the "Settlement Website")." *Id.* ¶ 6. Because "the amended settlements provide the same benefits to class members as were available in the original settlement, the Court [found] it unnecessary to provide opt-outs an opportunity to rejoin the settlement." ECF No. 5695 at 19.

Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). In light of the adequacy of the original notice plan and IPP Plaintiffs' provision of additional notice of settlement amendments, the Court finds that the parties have provided adequate notice to class members.

### C. Fairness, Adequacy, and Reasonableness

With the exception of the reaction of class members, the Court analyzed the necessary factors and found the settlement to be fair, adequate, and reasonable when it granted preliminary approval of the amended settlements. ECF No. 5695 at 13-17. The Court likewise found it proper

16

to conditionally certify the proposed settlement class. *Id.* at 8-11. IPP Plaintiffs have now

provided additional notice to class members who filed claims, objected, requested updates, or

requested exclusion from the original settlements. ECF No. 5758-1. Class members have also

been provided an opportunity to object to the amendments, object to the requested fee award, and

appear at the fairness hearing. The Court finds no reason to alter either of its conclusions now that

class members have been provided additional notice and an opportunity to be heard and the

amended settlements are before the Court for final approval.

### 1. Adequacy of Representation – Rule 23(e)(2)(A)

The Ninth Circuit has explained that "adequacy of representation ... requires that two

questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest

with other class members and (b) will the named plaintiffs and their counsel prosecute the action

vigorously on behalf of the class?" *In re Mego*, 213 F.3d at 462.

In its Preliminary Approval Order, the Court found that there was no evidence of a conflict

between either class representatives or Class Counsel and the rest of the settling class members.

ECF No. 5695 at 10. No contrary evidence has emerged.

The Court also found that IPP Plaintiffs' and Class Counsel have vigorously prosecuted

this action on behalf of the 22 Indirect Purchaser State Classes through extensive discovery and

participation in multiple formal mediation and negotiation sessions. *Id.* Discovery leading up to

the settlements has required production and review of millions of documents and the taking of

hundreds of depositions, all conducted over eight-plus years. *See* ECF No. 3862 ¶¶ 12, 15. IPP

Lead Counsel has "invested considerable time in this case and ha[s] substantial experience with

class action litigation." ECF No. 5695 at 10; ECF No. 4073-1 at 6-15. The Court therefore finds

that counsel "possessed 'sufficient information to make an informed decision about settlement.'"

*Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18,

2018) (quoting *In re Mego*, 213 F.3d at 459).

During the 2016 final approval process, several objectors argued that the absence of

recovery by the ORS and NRS Subclasses suggested a conflict of interest between the 22 Indirect

Purchaser State Classes and certain members of the Nationwide Class. *See, e.g.,* ECF No. 4113 at

17

8; ECF No. 4125 at 4-5; *see Ellis*, 657 F.3d at 985 ("To determine whether named plaintiffs will adequately represent a class, courts must resolve" whether "the named plaintiffs and their counsel have any conflict of interest with other class members."). The amended settlements eliminate these concerns. On remand, the Court appointed separate counsel to represent the ORS Subclass and NRS Subclass. ECF Nos. 5535, 5518; *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 819, 856 (1999) (discussing division of a class "into homogeneous subclasses . . . with separate representation to eliminate conflicting interests of counsel" when class members have divergent interests). Additionally, by narrowing the settlement Class to include only the 22 Indirect Purchaser State Classes, the amendments remove potential conflicts of interests that could result from differences in claims and relief sought by the 22 Indirect Purchaser State Classes verses the ORS and NRS Subclasses. *See Campbell v. Best Buy Stores, L.P.*, No. LA CV 12-07794 JAK (SHx), 2015 WL 12744268, at *5 (noting conflicts of interest that arise from "differences in the type of relief sought, the amount or seriousness of damages sought," and "the theories of law or fact that may benefit some class members"). Therefore, the amendments moot the adequacy-of-representation concerns expressed by objectors to the original settlement.

Accordingly, the Court concludes that this factor weighs in favor of approval.

### 2. Arm's Length Negotiations – Rule 23(e)(2)(B)

In its Preliminary Approval Order, the Court found that both the original and amended settlements were the product of arm's length negotiations. ECF No. 5695 at 14. Two former jurists "provided their experienced input into the parties' [original] settlement negotiations." ECF No. 4351 at 34; *see* Advisory Committee Notes, Fed. R. Civ. P. 23, subdiv. (e)(2) (2018) ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in [] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."). The amended settlements were a product of negotiations conducted during two mediation sessions supervised by Magistrate Judge Corley. ECF No. 5587-1 ¶¶ 2-3; *see Hefler*, 2018 WL 6619983, at *6 (noting mediation sessions supervised by former judge as an indication of arm's length negotiations).

The Court also "examine[d] the settlements for additional indicia of collusion that would

United States District Court
Northern District of California

undermine seemingly arm's length negotiations" and found "no indicia of collusion that would undermine the amended settlements." ECF No. 5695 at 14-15; *see In re Bluetooth*, 654 F.3d at 946 ("Prior to formal class certification, . . . agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest."). The amended settlements request an attorney fee award of 23.66 percent of the settlement fund. ECF No. 5587 at 29; *see* ECF No. 5587-1 at 7-8, 13-14, 19-20, 25-26, 31-32, 38-39; *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award."). The amended settlements also do not contain a reversion clause. ECF No. 4712 at 15. Although the agreements contain a "clear sailing" provision, the Court finds no cause for concern because Class Counsel's fee will be awarded from the same common fund as the recovery to the class. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009); *see also Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *7 (N.D. Cal. Apr. 15, 2015) ("[B]ecause any attorneys' fees award will come out of the common fund, there is no 'clear sailing' agreement here that would warrant against settlement approval."). The findings from the Court's Preliminary Approval order remain applicable. Further, as discussed in greater detail when evaluating the fees motion, the Court finds that the requested fees are in fact reasonable.

The Court therefore concludes that this factor weighs in favor or approval.

### 3.  Adequate Relief for the Class – Rule 23(e)(2)(C)

To determine whether the relief provided for the class is adequate, courts must consider: (a) the costs, risks, and delay of trial and appeal, (b) the effectiveness of any proposed method of distributing relief to the class, (c) the terms of any proposed award of attorney's fees, and (d) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C).

#### a.  Costs, Risks, and Delay

In its previous Final Approval Order, the Court found that the IPP Plaintiffs would have faced several hurdles in the absence of a settlement – hurdles that "weigh[ed] strongly in favor of approving the Proposed Settlements." ECF No. 4712 at 9. The Court noted that there was a "great risk to IPPs in continuing to pursue litigation, including both uncertainty over the results of pending motions and challenges (and delay) in collecting any winnings." *Id.* (internal quotation

19

marks omitted); *see also* ECF No. 4351 at 30-32. In light of these costs, risks, and potential delays, the Court determined that the settlements were "a good recovery and firmly in line with the recoveries in other cases." ECF No. 4712 at 10.

The Court need not revisit these findings. The proposed amended settlements reduce the amounts paid by each Defendant but fully offset these amounts by requested corresponding reductions in Class Counsel's attorney fee award. ECF No. 5587 at 17; *see* ECF No. 5587-1 at 7-8, 13-14, 19-20, 25-26, 31-32, 38-39. Because the net settlement fund available for distribution to class members remains the same, these settlements remain a "good recovery" in light of the costs, risks, and delay of trial and appeal. If anything, the litigation that has taken place since the Court's prior order, and the accompanying passage of time, serve to underscore the Court's findings about risk and delay.

### b.    Distribution Method

In the prior Final Approval Order, the Court examined and approved the settlements' proposed plan of distribution. ECF No. 26-29. This plan provides for (1) a "weighted pro-rata distribution to all members of the 22 Indirect Purchaser State Classes that filed valid claims," (2) a minimum payment of at least $25 per claimant, and (3) a maximum payment of "three times the estimated money damages per claimant." ECF No. 5587 at 30; *see* ECF No. 3862 ¶¶ 43-50. The amended settlements do not alter this proposed allocation plan, and the Court again approves it.

### c.    Attorney's Fees

Class Counsel request an award of attorneys' fees totaling 23.66 percent of the settlement fund along with expenses incurred during the litigation. *See In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award."). The Court previously awarded $158,606,250 in attorney's fees in connection with the prior IPP Settlement after considering counsels' motion for attorney's fees and any objections thereto. ECF No. 4740 at 2. Class Counsel request the Court to reduce that fee award by $29,000,000 to fully offset the reduction in the settlement amounts, and ensure that the reductions do not adversely affect the funds available for distribution to claimants. ECF No. 5587 at 17. In addition, all interest earned on the original settlement amounts from the date of deposit in 2015—

United States District Court
Northern District of California

approximately $13,000,000—will remain in the fund for the benefit of class members (except that Class Counsel shall still be entitled to seek a share of the accrued interest on the fund proportionate to their fee and expense award).[20]  *Id.*  Accordingly, the Court finds that this factor weighs in favor of approval.

### 4.    Equitable Treatment of Class Members – Rule 23(e)(2)(D)

Consistent with Rule 23's instruction to consider whether "the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(C)(i), the Court now considers whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

In the previous Final Approval Order, the Court examined and approved the allocation of settlement funds among the 22 Indirect Purchaser State Classes.  As noted above, the original settlement provided for (1) a "weighted pro-rata distribution to all members of the 22 Indirect Purchaser State Classes that filed valid claims," (2) a minimum payment of at least $25 per claimant, and (3) a maximum payment of "three times the estimated money damages per claimant."  ECF No. 5587 at 30; *see* ECF No. 3862 ¶¶ 43-50.  The plan "assign[ed] different weights to different CRT products based on the overcharge evidence for each."  ECF No. 5587 at 30; *see* ECF No. 3862 ¶¶ 44-49.  The amended settlements do not alter this proposed allocation.

As discussed in the prior Final Approval Order, "[i]t is reasonable to allocate the settlement funds to class members based on . . . the strength of their claims on the merits."  *In re Omnivision Techs., Inc.*, No. C-04-2297 SC, 2007 WL 4293467, at *7 (N.D. Cal. Dec. 6, 2007) (internal quotation marks and citations omitted).  Because "reimburs[ing] class members based on the extent of their injuries is generally reasonable," the Court finds that this factor weighs in favor of approval.  *See In re Oracle Sec. Litig.*, No. 90-cv-00931-VRW, 1994 WL 502054, at * 1 (N.D. Cal. June 18, 1994); *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal.

---

[20] By definition, that award will be lower both in absolute numbers and on an hourly basis than the award the Court approved in 2016 – particularly given that counsels' work in reaching the current agreement will not be separately compensated.

United States District Court
Northern District of California

2001) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable."); *In re Anthem*, 327 F.R.D. at 332 (same).

### 5. Reaction of the Class

Finally, the Court considers the reaction of class members to the amended settlements. In this case, the Court received 17 objections, consisting of one objection from the excluded ORS/NRS Subclasses and 16 identical objections from individuals who purport to be members of the 22 Indirect Purchaser State Classes. ECF Nos. 5739-5752, 5755, 5756, 5732. As discussed above, the Court strikes these objections because each objector has failed to carry its "burden of proving standing as a class member." *In re Hydroxycut*, 2013 WL 5275618, at *2; *see Moore*, 2013 WL 4610764, at *9 ("[A] court need not consider the objections of nonclass members because they lack standing.").

The Court has received no other objections to the amended settlements. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted).

After reviewing all of the required factors, the Court continues to find the amended settlements to be fair, reasonable, and adequate, and finds certification of the settlement class to be proper. As such, the Court grants final approval of the amended settlements.

## V. ATTORNEY'S FEES

### A. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. Courts have discretion to "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.* at 942.

For more than two decades, the Ninth Circuit has set the "benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund." *Williams*

United States District Court
Northern District of California

22

*v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Courts in the Ninth Circuit generally start with the 25 percent benchmark and adjust upward or downward depending on:

> the extent to which class counsel "achieved exceptional results for the class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash ... fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental*, 779 F.3d at 954-55 (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002)).

Courts often also cross-check the amount of fees against the lodestar. "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050.

**B.      Discussion**

In its prior Fee Order, the Court approved an attorney's fees award of $158,606,250 to Class Counsel, an amount which comprised 27.5% of the aggregate common fund.[21] ECF No. 4740 at 2, 5-9. In determining Class Counsel's entitlement to this fee award, the Court conducted a benchmark analysis by examining: "(1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience, and performance of counsel (both sides); (4) the contingent nature of the fee; and (5) fees awarded in comparable cases." *Id.* at 5-9; *see Vizcaino*, 290 F.3d at 1043; *see In re Bluetooth*, 654 F.3d at 941-42. The Court then "perform[ed] a lodestar cross-check to ensure the reasonableness of its selected percent-of-the-fund award." ECF No. 4740 at 10. The Court applied a "10 percent across-the-board reduction" to the lodestar and, thereby, "reduce[d] the lodestar from $90,075,076.90 to $81,067,569.20." *Id.* "Applying this lodestar to a 27.5 percent fee of $158,606,250 result[ed] in a multiplier of 1.96, which is well within the range of acceptable

---

[21] The aggregate common fund includes the $541,750,000 paid to resolve all claims brought by the Indirect Purchaser State Classes against the settling Defendants, as well as the amounts paid in the settlements between IPP Plaintiffs and the Chunghwa and LG defendants. *See* ECF No. 4712 at 3; ECF No. 4740 at 1.

multipliers." *Id.*

Class Counsel now request that the Court reconsider its prior Fee Award "in accordance with the Amendments to the settlement agreements" and "reduce the aggregate fee award to Class Counsel from $158,606,250 plus interest to $129,606,250 plus interest."[22] ECF No. 5587. This newly requested fee award comprises 23.66 percent of the aggregate settlement fund, which is below the Ninth Circuit's 25 percent benchmark for a reasonable fee award. *See In re Bluetooth*, 654 F.3d at 942. When the adjusted lodestar employed in its prior Fee Award – $81,067,569.20 – is applied to the 23.66 percent fee, this results in a multiplier of 1.6, which is well within the range of acceptable multipliers.

The ORS/NRS Objectors oppose the requested fee award on the basis that it "deducts an unduly small value for the ORS and NRS claims" and "should be reduced" or "delayed until the ORS and NRS can participate in negotiations regarding the value of their claims." ECF No. 5732 at 5-6. As discussed above, ORS/NRS Objectors are not members of the settlement class and, therefore, lack standing to object to the requested fee award. *Rodriguez v. Disner*, 688 F.3d 645, 660 n.11 (9th Cir. 2012) ("[O]bjectors who do not participate in a settlement lack standing to challenge class counsel's . . . fee award because, without a stake in the common fund pot, a favorable outcome would not redress their injury." (citation omitted)).

In addition, 16 objections assert that Class Counsel "will attempt to bill more for the resultant increased costs and time related to their negotiations and work that arise from their inadequate representation and errors."[23] ECF Nos. 5739-5752, 5755. As discussed above, the Court strikes these objections because the objectors have failed established that they purchased any CRT products and, thus, have not "carried [their] burden of proving standing as a class member." *In re Hydroxycut*, 2013 WL 5275618, at *2. The Court also notes that, even if it were to consider these objections, it would find that the "generalized" statements asserted therein "do

---

[22] As the Court noted in its Preliminary Approval Order, "[u]nder these circumstances, there [was] no need for class counsel to file a further motion for attorney's fees." ECF No. 5695 at 16 n.13.
[23] As the Court noted in its Preliminary Approval Order, Class Counsel does not request additional fees for work performed after the filing of the original fee motion. ECF No. 16 n.13 ("[C]ounsel's work in reaching the current agreement will not be separately compensated.").

not provide a basis to contravene the Court's benchmark analysis and lodestar cross-check." *Hefler*, 2018 WL 6619983, at *15 (citation omitted); *see Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV 13-02529 MMM (VBKx), 2015 WL 12732462, at *30 (C.D. Cal. May 29, 2015) (overruling objections that "conclusorily assert that the fees are too high as compared to the benefits class members will receive").

Because the Court has verified under both the lodestar method and the percentage-recovery method that the amount of requested fees is reasonable, the Court awards 23.66 percent of the $576,750,000 aggregate settlement amount, or $129,606,250, to Class Counsel.

## VI.     EXPENSES

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).  To support an expense award, Plaintiffs should file an itemized list of their expenses by category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), *supplemented*, No. 06-cv-05778-JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

In its prior Fee Order, the Court examined the "aggregate itemized claimed costs from the Litigation Expense Fund and the Future Expense Fund" and considered two objections related to the payment of these expenses.  ECF No. 4740 at 17.  The Court found "the expenses to be fair and reasonable." *Id.* at 18.  No contrary evidence has emerged.  As such, the Court adopts the findings of its prior Fee Order and "approves the $4,495,878.02 already paid from the Future Expense Fund, and grants the motion for the reimbursement in the reduced amount of $3,174,647.55." *Id.*

## VII.    INCENTIVE AWARDS

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe*, 715 F.3d 1157, 1163 (9th Cir. 2013).  "It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards." *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *31.

25

An incentive award of $5,000 is presumptively reasonable, and an award of $25,000 or even $10,000 is considered "quite high." *See Dyer v. Wells Fargo Bank*, 303 F.R.D. 326, 335 (N.D. Cal. 2014) (citing *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)).  Nonetheless, a higher award may be appropriate where class representatives expend significant time and effort on the litigation and face the risk of retaliation or other personal risks; where the class overall has greatly benefitted from the class representatives' efforts; and where the incentive awards represent an insignificant percentage of the overall recovery.  ECF No. 4399 at 4-5; *Wren*, 2011 WL 1230826, at *32.

In its prior Fee Order, the Court considered the factors set forth above and approved payments of "$15,000 for each of 25 Court-appointed class representatives and $5,000 for an additional 15 named plaintiffs not appointed by the court but who acted as state representatives for a period of time before being replaced."  ECF No. 4740 at 18.  No contrary evidence has emerged, and no one has objected to the requested incentive awards.  As such, the Court adopts the findings of its prior Fee Order and "authorizes total incentive payments of $450,000 as set forth above." *Id.* at 19.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.    For the reasons set forth in its March 11, 2020 Preliminary Approval Order, the Court confirms its certification of the class for settlement purposes only.

2.    The Court grants final approval of the proposed amended settlements and plans of allocation.

3.    The class members who made timely requests to opt out of the settlement are excluded from the class.

4.    The Court grants Class Counsel's request to reduce the aggregate fee award to $129,606,250 plus interest.

5.    For the reasons set forth in its August 3, 2016 Fee Order, the Court approves the $4,495,878.02 already paid from the Future Expense Fund, and grants the motion for reimbursement in the amount of $3,174,647.55.

6.      For the reasons set forth in its August 3, 2016 Fee Order, the Court authorizes total incentive payments of $450,000 as set forth above.

7.      The Court vacates its July 7, 2016 Final Approval Order, ECF No. 4712, and its August 3, 2016 Fee Order, ECF No. 4740.

8.      The Court vacates its July 14, 2016 Final Judgment of Dismissal with prejudice as to the Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson, and TDA Defendants, ECF No. 4717.

Plaintiffs shall submit a proposed form of judgment within seven days of this order.

**IT IS SO ORDERED.**

Dated:  July 13, 2020



JON S. TIGAR
United States District Judge