# EXHIBIT C

Tenant's Initials: _____

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 07-cv-05944-JST |
| | **ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL** |
| This Document Relates to: | Re: ECF No. 5587 |
| INDIRECT PURCHASER ACTIONS FOR THE 22 STATES | |

Before the Court is the Indirect Purchaser Plaintiffs' motion pursuant to Ninth Circuit mandate to reconsider and amend final approval order, final judgment, and fee order. ECF No. 5587. The Court construes the motion as one for preliminary approval and grants it.

## I.     BACKGROUND

### A.     Original Settlement Agreements

The factual history of this case is well known to the parties and is contained in the Court's prior orders. The case is predicated upon an alleged conspiracy to price-fix cathode ray tubes ("CRTs"), a core component of tube-style screens for common devices including televisions and computer monitors. The conspiracy ran from March 1, 1995 to November 25, 2007, involved many of the major companies that produced CRTs, and allegedly resulted in overcharges of billions of U.S. dollars to domestic companies that purchased and sold CRTs or products containing CRTs. A civil suit was originally filed in 2007, ECF No. 1, consolidated by the Joint Panel on Multidistrict Litigation shortly thereafter, *see* ECF No. 122, assigned as a Multidistrict Litigation case ("MDL") to Judge Samuel Conti, *see id.*, and ultimately transferred to the undersigned in November 2015, *see* ECF No. 4162.

United States District Court
Northern District of California

In 2015, one group of plaintiffs – the Indirect Purchaser Plaintiffs ("IPP Plaintiffs") – reached class action settlements with six groups of corporate defendants: Phillips,[1] Panasonic,[2] Hitachi,[3] Toshiba,[4] Samsung,[5] and Thomson/TDA.[6]  The settlements included a "Nationwide Class" of "[a]ll persons and or entities who or which indirectly purchased in the United States for their own use and not for resale, CRT Products manufactured and/or sold by the Defendants."  *See* ECF No. 1526 at 59-60; ECF Nos. 3862-1, 3862-2, 3862-3, 3862-4, 3862-5; ECF No. 3876-1 (adopting the class definitions set forth in the operative complaint).  The agreements also included Statewide Damages Classes of indirect purchasers of CRT products seeking money damages under the laws of 21 states and the District of Columbia ("22 Indirect Purchaser State Classes"). *See id.*  The Court certified these classes for settlement purposes in its 2016 Final Approval Order. *See* ECF No. 4712 at 7, 36 (adopting Special Master's report and recommendation, ECF No. 4351 at 22-29, and conditionally certifying the 22 Indirect Purchaser State Classes).

The proposed settlements resolved all federal and state-law claims brought by the IPP Plaintiffs against the settling Defendants and obligated the Defendants to pay a total of $541,750,000.  *See* ECF No. 3862-1 at 8; ECF No. 3862-2 at 8; ECF No. 3862-3 at 8; ECF No. 3862-4 at 8; ECF No. 3862-5 at 8; ECF No. 3876-1 at 9-10.  The settlements provided monetary compensation for class members in the 22 Indirect Purchaser State Classes but did not provide

---

[1] The Philips entities include Koninklijke Philips N.V., Philips Electronics North America Corporation, Philips Taiwan Limited, and Philips do Brasil, Ltda.  ECF No. 3862-1 at 2.

[2] The Panasonic entities include Panasonic Corporation, Panasonic Corporation of North America, and MT Picture Display Co. Ltd.  ECF No. 3862-2 at 2.

[3] The Hitachi entities include Hitachi, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi Electronics Devices (USA), Inc., and Hitachi Displays, Ltd.  ECF No. 3862-3 at 2.

[4] The Toshiba entities include Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc.  ECF No. 3862-4 at 2.

[5] The Samsung entities include Samsung SDI Co. Ltd., Samsung SKI America, Inc., Samsung SDI Brazil Ltd., Tianjin Samsung SDI Co. Ltd, Shenzhen Samsung SDI Co., Ltd., SKI Malaysia Sdn. Bhd., and SDI Mexico S.A. de C.V.  ECF No. 3862-5 at 2.

[6] The Thomson and TDA entities include Technicolor SA, Technicolor USA, Inc., and Technologies Displays Americas LLC.  ECF No. 3876-1 at 2.

United States District Court
Northern District of California

compensation for persons or entities in certain other states, which collectively are now denominated the Omitted Repealer[7] State subclass ("ORS Subclass").[8] The settlement also provided no compensation to persons or entities in states whose laws do not provide for recovery to indirect purchasers ("non-repealer states"), now denominated the Non-Repealer State subclass ("NRS Subclass").[9] *See* ECF Nos. 3862-1, 3862-2, 3862-3, 3862-4, 3862-5, 3876-1. Even though they received no compensation, the settlements required members of the ORS and NRS Subclasses to release their claims for injunctive relief, equitable monetary relief, and damages.

The agreements proposed a distribution plan which included: (1) a "weighted pro-rata distribution to all members of the 22 Indirect Purchaser State Classes that filed valid claims," (2) a minimum payment of at least $25 per claimant, and (3) a maximum payment of "three times the estimated money damages per claimant." ECF No. 5587 at 30; *see* ECF No. 3862 ¶¶ 43-50. The plan "assign[ed] different weights to different CRT products based on the overcharge evidence for each." ECF No. 5587 at 30; *see* ECF No. 3862 ¶¶ 44-49.

After this Court preliminarily approved the original settlements, the claims administrator carried out a notice plan which involved: (1) mail and email notices sent to 10,082,690 unique addresses, (2) publication of notice on the settlement website, (3) advertisements on Google,

---

[7] In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court held that only direct purchasers could recover damages for price-fixing under Section 4 of the Clayton Act. *Id.* at 735. As the Ninth Circuit has summarized, the Supreme Court "barred indirect purchasers' suits, and left the field of private antitrust enforcement to the direct purchasers." *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323, 325 (9th Cir. 1980). In response to the *Illinois Brick* decision, many states passed so-called "*Illinois Brick* repealer statutes," which give indirect purchasers the right to sue when firms violate analogous state antitrust laws. *See, e.g.,* Robert H. Lande, New Options for State Indirect Purchaser Legislation: Protecting the Real Victims of Antitrust Violations, 61 Ala. L. Rev. 447, 448 (2010). Such states are referred to a "repealer states." A state which has not enacted such a statute is referred to as a "non-repealer state."

[8] The ORS Subclass in its current iteration consists of Indirect Purchaser Plaintiffs in the following states: Arkansas, Massachusetts, Missouri, Montana, New Hampshire, Oregon, Rhode Island, South Carolina, and Utah. ECF No. 5518 at 1; ECF No. 5645 at 2. The parties now use the "ORS" abbreviation to signify "other repealer states" rather than "omitted repealer states." ECF No. 5645 at 1 n.1.

[9] The NRS Subclass consists of Indirect Purchaser Plaintiffs in the following Non-Repealer States: Alabama, Alaska, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Indiana, Kentucky, Louisiana, Maryland, New Jersey, Ohio, Oklahoma, Pennsylvania, Texas, Virginia, Washington, and Wyoming. ECF No. 5518 at 2.

1    Facebook, and other popular websites, and (4) print and online publications throughout the United

2    States, in both English and Spanish. *See* ECF No. 4071-1 ¶ 114; ECF No. 4371 ¶¶ 4-13. These

3    notices directed class members to the settlement website. *See* ECF No. 4371 ¶¶ 9-13. They also

4    advised class members of material settlement terms, the plan of distribution, and class counsel's

5    intent to apply for an attorney fee award of up to one-third of the settlement fund. ECF No.

6    4071-1 ¶ 115.

7    On July 7, 2016, this Court granted final approval of the six settlement agreements. ECF

8    No. 4712 at 1. On August 3, 2016, the Court issued a Fee Order approving an attorney's fees

9    award of $158,606,250 to class counsel, an amount comprising 27.5% of the settlement fund.

10   ECF No. 4740 at 2, 5-9. Two objectors appealed the settlement approval and fee award to the

11   Ninth Circuit. ECF No. 4741.

12   On October 1, 2018, while the appeals were pending, the IPP Plaintiffs filed a Motion

13   pursuant to Federal Rule of Civil Procedure 62.1 for an Indicative Ruling on Their Motion to

14   Amend The IPP Fee Order and Amend the Plan of Distribution. ECF No. 5335. Counsel for the

15   IPP Plaintiffs proposed to modify the earlier settlement by reducing the attorney's fees award by

16   $6 million and using those funds to compensate plaintiffs in three states – Massachusetts,

17   Missouri, and New Hampshire – that were omitted from the original settlement ("Omitted

18   Repealer States"). *Id.* at 8.

19   The Court denied the motion on November 8, 2018. ECF No. 5362. The Court concluded

20   that it had erred by approving the settlement in the first place, and that the IPP Plaintiffs' proposed

21   modifications did not cure all the defects in the settlement. *Id.* The Court's primary concern was

22   that the settlement required class members in the Omitted Repealer States to release their claims

23   without compensation. *See* ECF No. 5362 at 1. However, the order also expressed "concerns

24   about the adequacy of the counsel who negotiated that settlement or whether they may have faced

25   a conflict of interest," given that they had released some clients' claims without compensation. *Id.*

26   at 1. In response to the Court's order, the Ninth Circuit remanded "this case so that the district

27   court [could] reconsider its approval of the settlement." *See In re Cathode Ray Tube Antitrust*

28

United States District Court
Northern District of California

*Litig.*, No. 16-16368 (9th Cir. Feb. 13, 2009), ECF No. 238 at 11.  The Ninth Circuit did not vacate this Court's Final Approval, Final Judgement, or Fee Order.  *Id.*

On remand, this Court confirmed the existing lead counsel for the IPP Plaintiffs and appointed separate counsel for the ORS and NRS Subclasses.  ECF Nos. 5535, 5518.  The Court then referred the matter to Magistrate Judge Corley for settlement.  ECF No. 5427.

**B.  Amended Settlement Agreements**

After the Ninth Circuit remanded this case, counsel for IPP Plaintiffs[10] and seven Defendants engaged in mediation sessions before Magistrate Judge Corley and agreed to amend the settlements.  ECF No. 5531; ECF No. 5587-1 ¶¶ 2-3.

The amendments alter the settlements in three ways.  First, they appoint new settlement class representatives for the states of Hawaii, Nevada, New Mexico, and South Dakota.[11]  Second, they narrow the definition of "the Class" to include only the 22 Indirect Purchaser State Classes certified for settlement in the Court's 2016 Final Approval Order.  ECF No. 5587-1 at 7, 13, 19, 25, 31, 38.  The amended settlements no longer include a Nationwide Class.  *See* ECF No. 5587 at 16; ECF No. 5587-1.  Only members of the 22 Indirect Purchaser State Classes release their claims against Defendants.  Third, the amendments reduce each Defendant's settlement contribution by approximately 5.35%, for a total reduction of $29,000,000.  ECF No. 5587 at 17; *see* ECF No. 5587-1 at 7-8, 13-14, 19-20, 25-26, 31-32, 38-39.  The amendments offset these reductions in settlement amount by requesting that the Court reduce the attorney's fees previously awarded by $29,000,000.  *See id.*  Interest earned on the original settlement funds since their 2015 deposit in an escrow account will remain in the fund, except that class counsel will still be entitled to seek a share of the accrued interest proportionate to their fee and expense award.  ECF No. 5587

[10] On remand, the Court appointed separate counsel to represent the ORS and NRS Subclasses. ECF Nos. 5518, 5535.

[11] On September 13, 2019, IPP Plaintiffs filed a stipulation amending their operative complaints to substitute Sandra Riebow for Daniel Riebow as the named plaintiff for the state of Hawaii; Gregory Painter for Gloria Comeaux as the named plaintiff for the state of Nevada; MaryAnn Stephenson for Craig Stephenson as the named plaintiff for the state of New Mexico; and Donna Ellingson-Mack for Jeffrey Speaect as the named plaintiff for South Dakota.  ECF Nos. 5584-1, 5584-2.  On September 16, 2019, the Court entered the Order.  ECF No. 5585.

United States District Court
Northern District of California

at 17; *see* ECF No. 5587-1 at 7-8, 13-14, 19-20, 25-26, 31-32, 38-39. All other terms of the original settlement agreements and plan for distribution remain the same. ECF No. 5587-1 at 8, 14, 20, 26, 33, 39.

### C. Motion for Preliminary Approval

On September 16, 2019, the IPP Plaintiffs filed a "motion pursuant to Ninth Circuit mandate to reconsider and amend final approval order, final judgment, and fee order." ECF No. 5587. In their motion, IPP Plaintiffs request that the Court "reconsider and approve the amended settlements under Rule 23(e); order notice be given; and amend the Final Approval Order, the Final Judgment, and the Fee Order . . . after a final hearing." ECF No. 5587 at 37. The Court construes the motion as one for preliminary approval of the amended settlements between the 22 Indirect Purchaser State Classes and Defendants. The ORS Subclass and NRS Subclass oppose the motion. ECF No. 5607. The IPP Plaintiffs have filed a reply. ECF No. 5616.

## II. JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

## III. STANDING TO OBJECT

### A. Legal Standard

A party seeking to invoke the Court's jurisdiction has the burden of establishing standing. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103-04 (1998); *see In re Hydroxycut Marketing and Sales Practices Litig.*, No. 09md2087 BTM (KSC), 2013 WL 5275618, at *2 (S.D. Cal. Sept. 17, 2013) ("The party seeking to invoke the Court's jurisdiction—in this case, the Objectors—has the burden of establishing standing."). Under Federal Rule of Civil Procedure 23(e), "nonclass members have no standing to object to the settlement of a class action." *San Francisco NAACP v. San Francisco Unified School Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) (citing *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) ("The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals")).

### B. Discussion

The ORS and NRS Subclasses oppose the IPP Plaintiffs' motion for preliminary approval. ECF No. 5607. The IPP Plaintiffs ask the Court to disregard these objections because the

United States District Court
Northern District of California

"ORS/NRS Plaintiffs lack Article III standing to object to the Amendments . . . because they are not members of the amended settlement class." ECF No. 5616 at 7. The IPP Plaintiffs are correct.

The amended settlements state that the "'Nationwide Class,' . . . and members thereof (except for members of the 22 Indirect Purchaser States Classes), are expressly excluded from 'the Class' and are not bound by the Agreement." *See* ECF No. 5587-1 at 7, 13, 19, 25, 31, 38. The ORS/NRS Subclasses are members of the "Nationwide Class" but are not members of the 22 Indirect Purchaser State Classes. ECF No. 5616 at 8; *see* ECF No. 1526 at 59-60; ECF Nos. 3862-1, 3862-2, 3862-3, 3862-4, 3862-5; ECF No. 3876-1. Therefore, the persons and entities in these subclasses are not members of the amended settlement Class and have no standing to object to IPP Plaintiffs' motion for preliminary approval of the amended settlements. *See Kent v. Hewlett-Packard Co.*, No. 5:09-cv-05341-JF (HRL), 2011 WL 4403717, at *3 (N.D. Cal. Sept. 20, 2011) ("The Ziegenfelders are excluded from the settlement. . . . Because they are not members of the class, the Ziegenfelders lack standing to object."); *Hydroxycut*, 2013 WL 5275618, at *2 ("[N]either Mr. Blanchard nor Ms. McBean have satisfied their burden of establishing that they are class members and therefore have standing to object to the proposed settlement."). Accordingly, the Court strikes the objections of the ORS and NRS Subclasses. *See Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 WL 758094, at *10 (N.D. Cal. Feb. 20, 2015) ("The court [] finds that all three objectors lack standing and strikes their objections").

## IV. CLASS CERTIFICATION

### A. Legal Standard

Class certification under Federal Rule of Civil Procedure 23 is a two-step process. First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy. *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542-44 (9th Cir. 2013). "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." *Id.* (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 351).

Second, a plaintiff must establish that the action meets one of the bases for certification in Rule 23(b). IPP Plaintiffs rely on Rule 23(b)(3) and must therefore establish that "questions of law or fact common to class members predominate over any questions affecting only individual

1 members, and that a class action is superior to other available methods for fairly and efficiently

2 adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

3   When determining whether to certify a class for settlement purposes, a court must pay

4 "heightened" attention to the requirements of Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S.

5 591, 620 (1997). "Such attention is of vital importance, for a court asked to certify a settlement

6 class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the

7 proceedings as they unfold." *Id.*

8   **B.**   **Discussion**

9     **1.**   **Numerosity, Commonality, Predominance, and Superiority**

10   In its 2016 Final Approval Order, the Court made findings regarding numerosity,

11 commonality, predominance, and superiority. *See* ECF No. 4712 at 7, 36.

12   The Court found that the 22 Indirect Purchaser State Classes satisfied Rule 23(a)'s

13 numerosity and commonality requirements because: (1) "millions of people in the United States

14 purchased CRT products during the class period" and (2) there are "questions of law and fact

15 common to the Class, including whether the Defendants engaged in a price-fixing conspiracy that

16 injured Plaintiffs when they paid more for CRT Products than they would have absent the alleged

17 price-fixing conspiracy." ECF No. 4351 at 26; *see* ECF No. 4712 at 7 (adopting the Special

18 Master's Rule 23 analysis and incorporating it by reference in the Final Approval Order).

19   The Court also concluded that the classes satisfied Rule 23(b)(3)'s predominance and

20 superiority criteria because: (1) "all IPPs are alleged to have paid overcharges that were caused by

21 the defendants' alleged price-fixing activities" and (2) "the damages of most individual class

22 members are relatively small compared to the cost of the litigation, making it difficult for

23 individual class members to adjudicate their claims individually." *See* ECF No. 4712 at 7, 36

24 (adopting Special Master's report and recommendation, ECF No. 4351 at 22-29). Moreover, in

25 price-fixing cases, such as this, "courts repeatedly have held that the existence of the conspiracy is

26 the predominant issue and warrants certification even when significant individual issues are

27 present." *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*, 209

28

United States District Court
Northern District of California

F.R.D. 159, 167 (C.D. Cal. 2002) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 518 (S.D.N.Y.).

No parties objected to the Court's findings regarding the numerosity, commonality, predominance, and superiority of the 22 Indirect Purchaser State Classes in the original settlement. *See* ECF No. 4712 at 7. Because the amended settlements do not alter the composition of these classes, the Court adopts the reasoning from its previous Final Approval Order. *See Giroux v. Essex Property Trust, Inc.*, No. 16-cv-01722-HSG, 2019 WL 2106587, at *2 (N.D. Cal. May 14, 2019) (approving stipulated amendments to class settlement after final approval and "incorporat[ing] by reference prior analysis under Rules 23(a) and (b)" because "no facts that would affect these requirements have changed since the Court preliminarily approved the class").

### 2. Typicality – Rule 23(a)(3)

Under Rule 23(a)(3), "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (citations omitted). "Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks and citations omitted).

The Court finds that the claims of the representative parties are typical of the claims of the class. *See* Fed. R. Civ. P. 23(a)(3). In its previous Final Approval Order the Court found that "the claims of the representative Plaintiffs are typical of the claims of the class members because they all indirectly purchased CRT products at supra-competitive levels as a result of the alleged price-fixing conspiracy during the relevant time period." ECF No. 4351 at 26; *see* ECF No. 4712 at 7 (adopting the Special Master's Rule 23 analysis). The Court adopts this reasoning with respect to the representative plaintiffs common to the original and amended settlements.

The amended settlements appoint new class representatives for the states of Hawaii, Nevada, New Mexico, and South Dakota. These newly appointed class representatives also satisfy the Rule 23(a)(3) typicality requirement. Each representative "purchased CRT Products from one or more of the Defendants or their co-conspirators" during the Class Period. ECF No. 5589 ¶¶ 26,

United States District Court
Northern District of California

37, 38, 44. Moreover, each representative alleges that he/she suffered the same injury as other class members – being overcharged for CRT products as a result of the alleged CRT conspiracy. *See id*; ECF No. 5589 ¶¶ 225-242.

### 3. Adequacy of Representation – Rule 23(a)(4)

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4); *Nielson v. The Sports Authority*, No. C 11-4724 SBA, 2013 WL 3957764, at *6 (N.D. Cal. July 29, 2013). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholsale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).

At this stage, the Court is satisfied with IPP Plaintiffs' demonstration that the representative parties will fairly and adequately protect the interests of the class. "Given the identity of issues shared by the class and proposed class representatives, the named plaintiffs' interests are sufficiently aligned with those of the class." *See Bostick v. Herbalife Int'l of Am., Inc.*, No. CV 13-2488 BRO (SHx), 2015 WL 12731932, at *8 (C.D. Cal. May 14, 2015). Moreover, IPP Plaintiffs' and class counsel have vigorously prosecuted this action on behalf of the 22 Indirect Purchaser State Classes. *See id.* First, named plaintiffs and class counsel "conducted extensive discovery and engaged in multiple mediation and negotiation sessions before reaching" the original and amended settlements. *See id.* at *14; ECF No. 3862 ¶¶ 12, 15; ECF No. 5587-1 ¶¶ 2-3. Discovery leading up to the settlements has required production and review of millions of documents and the taking of hundreds of depositions, all conducted over eight-plus years. *See* ECF No. 3862 ¶¶ 12, 15. Second, IPP Lead Counsel has "invested considerable time in this case and ha[s] substantial experience with class action litigation." *See Bostick*, 2015 WL 12731932, at *14; ECF No. 4073-1 at 6-15. Third, the new named plaintiffs have affirmed their understandings of the allegations in the case and their genuine interest in this litigation. ECF No. 5587-1 ¶ 4. Each new named plaintiff has "reviewed the pleadings, the settlement agreements and the

United States District Court
Northern District of California

1    Amendments thereto, and, in consultation with their lawyers, have approved them on behalf of

2    their respective states." *Id.* "This is sufficient to demonstrate adequacy under Rule 23(a)." *See*

3    *Bostick*, 2015 WL 12731932, at *14.

4         During the 2016 final approval process, several objectors argued that the absence of

5    recovery by the ORS and NRS Subclasses suggested a conflict of interest between the 22 Indirect

6    Purchaser State Classes and certain members of the Nationwide Class. *See, e.g.,* ECF No. 4113 at

7    8; ECF No. 4125 at 4-5; *see Ellis*, 657 F.3d at 985 ("To determine whether named plaintiffs will

8    adequately represent a class, courts must resolve" whether "the named plaintiffs and their counsel

9    have any conflict of interest with other class members."). The amended settlements eliminate

10   these concerns. On remand, the Court appointed separate counsel to represent the ORS Subclass

11   and NRS Subclass. ECF Nos. 5535, 5518; *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 819, 856

12   (1999) (discussing division of a class "into homogeneous subclasses . . . with separate

13   representation to eliminate conflicting interests of counsel" when class members have divergent

14   interests). Additionally, by narrowing the settlement Class to include only the 22 Indirect

15   Purchaser State Classes, the amendments remove potential conflicts of interests that could result

16   from differences in claims and relief sought by the 22 Indirect Purchaser State Classes verses the

17   ORS and NRS Subclasses. *See Campbell v. Best Buy Stores, L.P.*, No. LA CV 12-07794 JAK

18   (SHx), 2015 WL 12744268, at *5 (noting conflicts of interest that arise from "differences in the

19   type of relief sought, the amount or seriousness of damages sought," and "the theories of law or

20   fact that may benefit some class members"). Therefore, the amendments moot the adequacy-of-

21   representation concerns expressed by objectors to the original settlement.

22        For the foregoing reasons, the Court concludes that provisional certification of the

23   proposed class is appropriate for the purposes of settlement.

24   **V.    PRELIMINARY APPROVAL**

25        The IPP Plaintiffs seek approval of their amended settlement agreements and an order

26   directing limited notice to the putative class and setting a fairness hearing. ECF No. 5587 at 37.

27   The Court finds that preliminary approval of the settlement is warranted and grants IPP Plaintiffs'

28   request for limited notice.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

**A.  Legal Standard**

2      The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class

3   actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  The proposed

4   settlement need not be ideal, but it must be fair, free of collusion, and consistent with counsel's

5   fiduciary obligations to the class.  *Hanlon*, 150 F.3d at 1027, *overruled on other grounds by*

6   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ("Settlement is the offspring of compromise;

7   the question we address is not whether the final product could be prettier, smarter or snazzier, but

8   whether it is fair, adequate and free from collusion.").  "The initial decision to approve or reject a

9   settlement proposal is committed to the sound discretion of the trial judge."  *City of Seattle*, 955

10  F.2d at 1276 (citation omitted).

11      Rule 23 requires courts to employ a two-step process in evaluating class action settlements.

12  First, courts preliminarily approve the settlement and authorize notice to the class.  *See Wilson v.*

13  *Tesla*, No. 17-cv-03763-JSC, 2019 WL 2929988, at *4 (N.D. Cal. July 8, 2019).  Second, courts

14  conduct a hearing to make a final determination of whether a settlement is "fair, reasonable, and

15  adequate."  Fed. R. Civ. P. 23(e)(2).

16      The court's task at the preliminary approval stage is to determine whether the settlement

17  falls "within the range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d

18  1078, 1079 (N.D. Cal. 2007) (citation omitted).  To guide this analysis, courts look to the four

19  overarching factors contained in recently-amended Rule 23(e)(2) and consider whether:

20      (A) the class representatives and class counsel have adequately represented the class;

21      (B) the proposal was negotiated at arm's length;

22      (C) the relief provided for the class is adequate; and

23      (D) the proposal treats class members equitably relative to each other.

24  *Shin v. Plantronics*, No. 18-cv-05626-NC, 2019 WL 2515827, at *4 (N.D. Cal. July 17, 2019); *see*

25  Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004) (explaining that courts

26  "must make a preliminary determination on the fairness, reasonableness, and adequacy of the

27  settlement terms").  The amendments to Rule 23 do "not 'displace any factor' previously

28

12

announced by the Ninth Circuit,[12] but instead 'focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Shin*, 2019 WL 2515827, at *4; *see* Advisory Committee Notes, Fed. R. Civ. P. 23, subdiv. (e)(2) (2018). Thus, courts may apply the framework set forth in Rule 23, "while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

Settlements that occur before formal class certification require a higher standard of fairness. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2011). "In reviewing such settlements, in addition to considering the above factors, the court also must ensure that 'the settlement is not the product of collusion among the negotiating parties.'" *Hefler*, 2018 WL 6619983, at *4 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*, 654 F.3d 935, 947 (9th Cir. 2011).

A proposed settlement must be "taken as a whole, rather than the individual component parts," in the examination for overall fairness. *Id.* at 948 (emphasis omitted). Courts do not have the ability to "delete, modify, or substitute certain provisions." *Id.* A settlement "must stand or fall in its entirety." *Id.* (citation and emphasis omitted).

### B. Discussion

#### 1. Adequacy of Representation – Rule 23(e)(2)(A)

Adequacy of representation requires that two questions be addressed: (1) "do the named plaintiffs and their counsel have any conflicts of interest with other class members" and (2) "will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

---

[12] Ninth Circuit precedent instructs district courts to balance the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026).

United States District Court
Northern District of California

*Hefler*, 2018 WL 6619983, at *6. As discussed above, IPP Plaintiffs have demonstrated that the representative parties and their counsel will fairly and adequately protect the interests of the 22 Indirect Purchaser State Classes. Moreover, the amended settlement eliminates the conflicts-of-interest concerns raised by objectors to the original settlement. Therefore, this factor weighs in favor of preliminary approval.

### 2. Arm's Length Negotiations – Rule 23(e)(2)(B)

Both the original and amended settlements were the product of arm's length negotiations. Two former jurists "provided their experienced input into the parties' [original] settlement negotiations." ECF No. 4351 at 34; *see* Advisory Committee Notes, Fed. R. Civ. P. 23, subdiv. (e)(2) (2018) ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in [] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."). The amended settlements were a product of negotiations conducted during two mediation sessions supervised by Magistrate Judge Corley. ECF No. 5587-1 ¶¶ 2-3; *see Hefler*, 2018 WL 6619983, at *6 (noting mediation sessions supervised by former judge as an indication of arm's length negotiations).

Pursuant to Ninth Circuit precedent, the Court must also examine the settlements for additional indicia of collusion that would undermine seemingly arm's length negotiations. *See In re Bluetooth*, 654 F.3d at 946 ("Prior to formal class certification, . . . agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest."). Signs of collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing provision"; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund. *Id.* at 947. If "multiple indicia of possible implicit collusion" are present, a district court has a "special 'obligat[ion] to assure itself that the fees awarded in the agreement were not unreasonably high.'" *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

The Court finds no indicia of collusion that would undermine the amended settlements. First, the amended settlements request an attorney fee award of 23.66% of the settlement fund. ECF No. 5587 at 29; *see* ECF No. 5587-1 at 7-8, 13-14, 19-20, 25-26, 31-32, 38-39; *In re*

*Bluetooth*, 654 F.3d at 941-42 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award."). Second, the amended settlements – like the original agreements – do not contain a reversion clause. ECF No. 4712 at 15. Although the agreements contain a "clear sailing" provision, the Court finds no cause for concern because Class Counsel's fee will be awarded from the same common fund as the recovery to the class. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009); *see also Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *7 (N.D. Cal. Apr. 15, 2015) ("[B]ecause any attorneys' fees award will come out of the common fund, there is no 'clear sailing' agreement here that would warrant against settlement approval.").

### 3. Adequate Relief for the Class – Rule 23(e)(2)(C)

To determine whether the relief provided for the class is adequate, courts must consider: (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, (iii) the terms of any proposed award of attorney's fees, and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C).

### a. Costs, Risks, and Delay

In the previous Final Approval Order, this Court found that the IPP Plaintiffs would have faced several hurdles in the absence of a settlement – hurdles that "weigh[ed] strongly in favor of approving the Proposed Settlements." ECF No. 4712 at 9. The Court noted that there was a "great risk to IPPs in continuing to pursue litigation, including both uncertainty over the results of pending motions and challenges (and delay) in collecting any winnings." *Id.* (internal quotation marks omitted); *see also* ECF No. 4351 at 30-32. In light of these costs, risks, and potential delays, the Court determined that the settlements were "a good recovery and firmly in line with the recoveries in other cases." ECF No. 4712 at 10.

The Court need not revisit these findings. The proposed amended settlements reduce the amounts paid by each Defendant but fully offset these amounts by requested corresponding reductions in class counsel's attorney fee award. ECF No. 5587 at 17; *see* ECF No. 5587-1 at 7-8, 13-14, 19-20, 25-26, 31-32, 38-39. Because the net settlement fund available for distribution to class members remains the same, these settlements remain a "good recovery" in light of the costs,

United States District Court
Northern District of California

risks, and delay of trial and appeal.

### b.     Distribution Method

In the prior Final Approval Order, the Court examined and approved the settlements' proposed plan of distribution.  ECF No. 26-29.  This plan provides for (1) a "weighted pro-rata distribution to all members of the 22 Indirect Purchaser State Classes that filed valid claims," (2) a minimum payment of at least $25 per claimant, and (3) a maximum payment of "three times the estimated money damages per claimant."  ECF No. 5587 at 30; *see* ECF No. 3862 ¶¶ 43-50.  The amended settlements do not alter this proposed allocation plan, and the Court again approves it.

### c.     Attorney's Fees

Class Counsel have stated that they intend to apply for an award of attorneys' fees totaling 23.66% of the settlement fund along with expenses incurred during the litigation.  The Court previously awarded $158,606,250 in attorney's fees in connection with the prior IPP Settlement after considering counsels' motion for attorney's fees and any objections thereto.  ECF No. 4740 at 2.  The proposed Amendments provide that Class Counsel will request the Court to reduce that fee award by $29,000,000 to fully offset the reduction in the settlement amounts, and ensure that the reductions do not adversely affect the funds available for distribution to claimants.  ECF No. 5587 at 17.  In addition, all interest earned on the original settlement amounts from the date of deposit in 2015—approximately $13,000,000—will remain in the fund for the benefit of class members (except that Class Counsel shall still be entitled to seek a share of the accrued interest on the fund proportionate to their fee and expense award).[13]  *Id.*

### 4.     Equitable Treatment of Class Members – Rule 23(e)(2)(D)

Consistent with Rule 23's instruction to consider whether "the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(C)(i), the Court now considers

---

[13] Any member of the 22 Indirect Purchaser State Classes who submitted a claim in or objected to the 2016 Settlements may now ask the Court to object to the attorney's fees award.  ECF No. 5587-2 at 18.  By definition, that award will be lower both in absolute numbers and on an hourly basis than the award the Court approved in 2016 – particularly given that counsels' work in reaching the current agreement will not be separately compensated.  Under these circumstances, there is no need for class counsel to file a further motion for attorney's fees, and the deadlines the Court has set do not provide for one.

United States District Court
Northern District of California

whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.

In the previous Final Approval Order, the Court examined and approved the allocation of settlement funds among the 22 Indirect Purchaser State Classes. As noted above, the original settlement provided for (1) a "weighted pro-rata distribution to all members of the 22 Indirect Purchaser State Classes that filed valid claims," (2) a minimum payment of at least $25 per claimant, and (3) a maximum payment of "three times the estimated money damages per claimant." ECF No. 5587 at 30; *see* ECF No. 3862 ¶¶ 43-50. The plan "assign[ed] different weights to different CRT products based on the overcharge evidence for each." ECF No. 5587 at 30; *see* ECF No. 3862 ¶¶ 44-49. The amended settlements do not alter this proposed allocation.

As discussed in the prior Final Approval Order, "[i]t is reasonable to allocate the settlement funds to class members based on . . . the strength of their claims on the merits." *In re Omnivision Techs., Inc.*, No. C-04-2297 SC, 2007 WL 4293467, at *7 (N.D. Cal. Dec. 6, 2007) (internal quotation marks and citations omitted). Because "reimburs[ing] class members based on the extent of their injuries is generally reasonable," the Court finds that this factor weighs in favor of preliminary approval. *See In re Oracle Sec. Litig.*, No. 90-cv-00931-VRW, 1994 WL 502054, at * 1 (N.D. Cal. June 18, 1994).

In sum, the Court finds that the Rule 23(e) factors will likely weigh in favor of granting final approval. Because the Court will likely find the amended settlements to be fair, reasonable, and adequate at the final approval stage, preliminary approval of the settlement is warranted.

### 5. Proposed Notice Plan

Before the district court approves a class settlement, "it is 'critical' that class members receive adequate notice." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 567 (9th Cir. 2019) (citing *Hanlon*, 150 F.3d at 1025). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Id.* (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). If a fairness hearing leads to "substantial changes" in the settlement which "adversely affect[] some members of the class, additional notice, followed by an opportunity to be

17

heard, might be necessary." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 330 (N.D. Cal. 2018). "The pertinent question here is whether the changes *adversely* affect the class members." *Id.* (emphasis in original).

### a. Original Notice Plan

Class members of the 22 Indirect Purchaser States have already received "the best notice that is practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(B). After this Court preliminarily approved the original settlements, the claims administrator carried out a notice plan which included: (1) mail and email notices sent to 10,082,690 unique addresses, (2) publication of notice on the settlement website, (3) advertisements on Google, Facebook, and other popular websites, and (4) print and online publications throughout the United States, in both English and Spanish. *See* ECF No. 4071-1 ¶ 114; ECF No. 4371 ¶¶ 4-13. These notices directed recipients to the settlement website. *See* ECF No. 4371 ¶¶ 9-13. They also advised class members of material settlement terms, the plan of distribution, and class counsel's intent to apply for an attorney fee award of up to one-third of the settlement fund. ECF No. 4071-1 ¶ 115. As the Court found in its prior Final Approval Order, this plan "provided the best practicable notice to class members." ECF No. 4712 at 9.

### b. Additional Notice

The IPP Plaintiffs' amendments to the settlement agreements do not require additional notice. The amended settlements "provide the same benefits to the members of the 22 Indirect Purchaser State Classes." ECF No. 5587 at 32; *see* ECF No. 5587-1 at 7-8, 13-14, 19-20, 26-26, 31-33, 38-39. While the amendments reduce the gross settlement fund by $29,000,000, "that reduction is fully offset by a $29,000,000 reduction in Class Counsel's fee request." *Id.* Therefore, the settlement does not have a "material adverse effect on the rights of class members" and there is no reason to conclude that those class members who failed to object or opt out would now choose to do so. *See Anthem*, 327 F.R.D. at 330 (finding that, where amendment did not adversely affect class members, "there is no overriding reason to conclude that those Settlement Class Members who failed to opt out would now choose to do so.").

The amendments also do not adversely affect the rights of the ORS and NRS Subclasses

18

which were included in the original settlement. Because the amendments narrow the settlement Class, the release no longer applies to the ORS and NRS Subclasses. *See* ECF No. 5587-1 at 7, 13, 19, 25, 31, 38. These groups retain any claims that they previously possessed, if any, and they are free to pursue those claims against the Defendants. Therefore, the parties need not provide any additional notice to members of the current or former settlement classes.

Although not required, the IPP Plaintiffs request that the court authorize that limited notification be sent to certain class members. In particular, they propose to send notification of settlement amendments to class members who filed claims, objected to the settlements, requested updates regarding the settlements, or requested exclusion from the settlement class. ECF No. 5587 at 34. These notices would advise recipients of their opportunities to object to the amendments, object to the requested fee award, and appear at the fairness hearing. *Id.* at 34-35; ECF No. 5587-3 at 5-18. They would not, however, enable recipients to exclude themselves or rejoin the settlement. ECF No. 5587-3 at 5-18. Some courts have given opt-outs an opportunity to rejoin a settlement when amended. *See Anthem*, 327 F.R.D. at 331 ("[T]he change to the Settlement could materially affect their decision to opt out. Thus, they deserved an opportunity to reconsider their decisions based on the terms of the amended Settlement."). Where, as here, the amended settlements provide the same benefits to class members as were available in the original settlement, the Court finds it unnecessary to provide opt-outs an opportunity to rejoin the settlement. Therefore, the Court grants IPP Plaintiffs' request to provide limited notice to certain class members.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IPP Plaintiffs' motion pursuant to Ninth Circuit mandate to reconsider. The proposed class is hereby provisionally certified for the purposes of settlement. The Court grants preliminary approval of the amended settlements and approves the proposed limited notice procedure and forms. The Court will hold a final approval hearing on July 8, 2020.

/ / /

/ / /

| DATE | EVENT |
|------|-------|
| March 27, 2020 | Notice Publication Date and Mailed/Emailed Notice to Commence |
| May 29, 2020 | Deadline for Class Members to Submit Objections |
| June 12, 2020 | Deadline for IPP Plaintiffs to File Responses to Objections |
| July 8, 2020 | Final Hearing |

Upon final approval, if any, of the pending settlement, the Court's approval of the prior settlement will be vacated. *See* ECF No. 5632.

**IT IS SO ORDERED.**

Dated: March 11, 2020



JON S. TIGAR
United States District Judge